PSJ3

Exhibit 57B

## PROFESSIONAL SERVICES AGREEMENT

Expense Code: C2

Abbott Laboratories ("Abbott") desires to retain Russell K. Portenoy, MD ("You"), with an address of 350 East 17th Street, New York, NY 10003 , and social security or tax I.D. number of 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 , as a consultant on the following terms and conditions.

1. Professional Services. As Abbott reasonably directs, You shall perform the activities set forth in Exhibit A (attached hereto and made a part hereof) and any applicable speaker addendum, which may be amended in writing by the parties at any time (the "Services"). In performance of the Services, You shall comply with all applicable federal, state and local laws, regulations and guidelines, as well as with Abbott's policies while performing these services.

2. Abbott Contact; Reports. Your Abbott contact will be Audrey Hsieh or Doug Geiger , or whomever Abbott may designate. As Abbott may reasonably request, You shall submit written reports on the progress of the Services.

3. Compensation. In consideration for Your performance of the obligations under this Agreement, Abbott shall pay You for the Services so provided the amount as described in Exhibit A, for an aggregate compensation during the term of the Agreement not to exceed ten thousand ($ 10,000.00 ). Abbott shall pay You for all reasonable and necessary out-of-pocket expenses incurred by You in performing the Services (upon presentation of appropriate receipts), including the costs of travel (coach class if by air, consistent with Abbott's travel policy), food, lodging, and telephone calls. In the event of premature termination of the Agreement by Abbott, Abbott shall pay You for Services performed on a prorated basis and for all reasonable and necessary out-of-pocket expenses incurred by You through the date of termination. Abbott shall pay You upon receipt of an invoice, in the form set forth in Exhibit B, containing reasonable documentation of Services performed by You.

4. Term and Termination. This Agreement shall be effective upon full execution and continue for a period of one year. Abbott may terminate this Agreement without cause upon giving You thirty (30) days prior written notice. Either party may terminate this Agreement immediately upon written notice to the other party in the event of a breach by the other party of a material provision of this Agreement that remains uncured thirty (30) days following receipt of notice of such breach from the non-breaching party. Termination or expiration of this Agreement shall not affect any rights or obligations which have accrued prior thereto or in connection therewith.

5. Confidential Information. During the term of this Agreement and for a period of seven (7) years thereafter, You shall not disclose or use Confidential Information except as permitted in this Agreement or in writing by Abbott. Confidential Information shall include all information concerning Abbott and the Services disclosed to You by or on behalf of Abbott, or developed as a result of Your performance of the Services, except any portion thereof which: (a) is known to You on a nonconfidential basis before receipt thereof under this Agreement, as evidenced by Your written records; (b) is disclosed to You after acceptance of this Agreement by a third party having a right to make such disclosure in a nonconfidential manner; or (c) is or becomes part of the public domain through no fault of Your own. You shall not disclose to Abbott any information which is confidential and/or proprietary to a third party without first obtaining the written consent of both such third party and Abbott. Upon the earlier of completion of the Services or termination or expiration of this Agreement, You shall return to Abbott all Confidential Information, data and materials provided to You by or on behalf of Abbott, or developed by You as a result of Your performance of the Services, as requested by Abbott. Nothing in this Agreement shall be construed to restrict either party from disclosing the other party's Confidential Information as required by law or court order or other governmental order, provided in each case the disclosing party shall timely inform the other party so that such other party may seek a protective order.

6. Deliverables and Work Product. All reports, communications, material, information, innovations, inventions or discoveries (whether or not patentable or copyrightable) conceived, reduced to practice, made or developed by You solely or jointly with others in connection with Your performance of the Services shall be promptly disclosed to and be the sole property of Abbott, and You hereby assign to Abbott all right, title and interest therein without any obligation on Abbott to pay royalties or other remuneration therefore. To the extent the foregoing is copyrightable (including, without limitation, computer programs, source code, object code and supporting documentation), it shall be deemed a Work Made for Hire or alternatively a Specially Commissioned Work under the Copyright Act of 1976 and shall become and remain the sole property of Abbott. To the extent any such material may not be a Work Made for Hire, You agree to assign and do hereby assign such material to Abbott. At Abbott's request and expense, You shall execute such documents and take such other actions as Abbott deems necessary or appropriate to obtain, record or enforce patents, copyrights or assignments thereof in Abbott's name. Notwithstanding the foregoing, Abbott shall not acquire ownership of any materials, information, know-how, tools, models, methodologies, techniques and/or other intellectual property owned by You prior to Your performance of Services under this Agreement or that is licensed by You from any third party (all of the foregoing, "Pre-existing Intellectual Property"). You hereby grant to Abbott a non-exclusive, irrevocable, royalty-free worldwide license to use, modify, and enhance such Preexisting Intellectual Property (including the right to sublicense) to the extent that such license is required to enable Abbott to make use of Your Services hereunder, including without limitation any deliverables and work product. For speaker training meetings, You agree to perform a minimum of three (3) speaking obligations at programs conducted by Abbott (i.e., does not include CME or third party programs) during the twelve (12) months following the execution of this Agreement. A Speaker Addendum or separate speaker agreement covering the actual speaking engagement must be signed for each program.

03/01/06

## CONFIDENTIAL

7.  <u>Presentations, Publications and Publicity</u>. You shall not present or publish, nor submit for publication, any work resulting from the Services without Abbott's prior written approval. You shall not use Abbott's name in any publicity, advertising or announcement, or disclose the existence or terms of this Agreement, without Abbott's prior written consent (which is in its sole discretion to grant or withhold).

8.  <u>Representation and Warranties</u>. Each party represents and warrants that (a) neither this Agreement, nor any payment hereunder, is in exchange for any explicit or implicit agreement or understanding that You purchase, lease, order, prescribe, recommend or otherwise arrange for, or provide formulary or other preferential or qualifying status for the use of Abbott products, and (b) the total payment for the Services represents the fair market value for the Services and has not been determined in any manner that takes into account the volume or value of any referrals or business between You and Abbott. You represent and warrant that if the scope of Services includes promotional speaking about Abbott's products, the contents of the presentation will be within approved product labeling. You represent and warrant that the terms of this Agreement are not inconsistent with any other contractual or legal obligations You may have or with the policies of any institution with which You are associated, and that You have obtained approval from the institution(s) with which You are associated for Your provision of the Services, including the compensation to be paid to You hereunder. If You are an employee or special employee of the federal, state, county or local government, You acknowledge that:

    a.  Abbott is not offering this compensation because of Your official position, or

    b.  Abbott is offering this compensation because of Your official position and You have received written authorization from Your agency's ethics official or an internal agency procedure exists authorizing acceptance of such compensation.

If b. above, attach authorization or copy of internal agency procedure, as applicable, to this document.

9.  <u>Debarment and Exclusion</u>. INSTITUTION represents and warrants that neither it, nor any of its employees or agents performing hereunder, have ever been, are currently, or are the subject of a proceeding that could lead to it or such employees or agents becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual. INSTITUTION further covenants, represents and warrants that if, during the term of this Agreement, it, or any of its employees or agents performing hereunder, become or are the subject of a proceeding that could lead to that party becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual, INSTITUTION shall immediately notify Abbott, and Abbott shall have the right to immediately terminate this Agreement. This provision shall survive termination or expiration of this Agreement. For purposes of this provision, the following definitions shall apply:

    a.  A "Debarred Individual" is an individual who has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from providing services in any capacity to a person that has an approved or pending drug product application.

    b.  A "Debarred Entity" is a corporation, partnership or association that has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from submitting or assisting in the submission of any abbreviated drug application, or a subsidiary or affiliate of a Debarred Entity.

    c.  An "Excluded Individual" or "Excluded Entity" is (i) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal health care programs such as Medicare or Medicaid by the Office of the Inspector General (OIG/HHS) of the U.S. Department of Health and Human Services, or (ii) is an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal procurement and non-procurement programs, including those produced by the U.S. General Services Administration (GSA).

    d.  A "Convicted Individual" or "Convicted Entity" is an individual or entity, as applicable, who has been convicted of a criminal offense that falls within the ambit of 21 U.S.C. §335a (a) or 42 U.S.C. §1320a - 7(a), but has not yet been excluded, debarred, suspended or otherwise declared ineligible.

10.  <u>Independent Contractor</u>. Your status under this Agreement is that of an independent contractor. You shall not be deemed an employee, agent, partner or joint venturer of Abbott for any purpose whatsoever, and You shall have no authority to bind or act on behalf of Abbott. This Agreement shall not entitle You to participate in any benefit plan or program of Abbott. You shall be responsible for, and agree to comply with, obligations under federal, state and local tax laws for payment of income and, if applicable, self-employment tax. You are not entitled to worker's compensation coverage by Abbott, and You hereby waive any and all rights You may have to be covered under Abbott's worker's compensation policies.

11.  <u>Miscellaneous</u>. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all previous agreements and undertakings with respect thereto. This Agreement may be modified only by written agreement signed by the parties. You may not assign this Agreement or any interest herein, or delegate any duty hereunder, to any third party without Abbott's prior written consent (which is in its sole discretion to grant or withhold). This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, excluding its conflicts of laws provisions.

AGREED:
ABBOTT LABORATORIES

By: _____
Name: <u>Audrey Hsieh</u>
Title: <u>Senior Manager, Abbott Pain Care Franchise</u>
Date: _____

AGREED:
ACCEPTED BY:
By: _____
Name: <u>Dr. Russell Portenoy</u>
Title: <u>Chairman, Dept. of Pain Med. & Palliative Care, Beth Israel</u>
Date: <u>4/28/06</u>

03/01/06

# CONFIDENTIAL

# EXHIBIT A

## Description of Professional Services

Describe the services to be performed:

Provide individual consulting services (including advice, insight, feedback, and ideas) to Abbott Pain Care Commercial Team on topics related to Vicodin CR, including, but not limited to:  commercial development plan; commercial aspects of risk management plan; commercial considerations in Phase IIIb/Phase IV/investigator-initiated studies; other pre-launch commercial programs.

Outside the scope of this agreement is Dr. Portenoy's participation in Vicodin CR group consulting programs such as advisory board and speaker training meetings.  Dr. Portenoy's participation in Vicodin CR advisory board and speaker training meetings is covered under agreements provided by Abbott's medical education vendors specific to those meetings.

Deliverables (if required):

To be determined as needed by Abbott Pain Care Commercial Team and Dr. Russell Portenoy.

a.   Cost estimates (invoice must be submitted with all requests for payment):

Rate honored (select appropriate payment terms):

- ☑ $ 500.00_____ per hour; maximum hours 20_____
- ☐ $_____ per day; maximum days _____
- ☐ $_____ per project; minimum hours _____
- ☐ $_____ per project; project deliverable _____

Travel costs:

Not applicable

Timelines/Due date(s):

To be determined as needed by Abbott Pain Care Commercial Team and Dr. Russell Portenoy.

03/01/06

# CONFIDENTIAL

RP_000282

## EXHIBIT B

Invoice # _____

Statement for Services Provided in Accordance with the Professional Services Agreement

Period of _____, 200_

to

_____, 200_

| **Number of Hours/Days Worked or Project Deliverable** | **Brief Description of Services Performed** |
| --- | --- |
| | |

AIRFARE
GROUND TRANSPORTATION
LODGING
MEALS
TELEPHONE

Total Costs _____

Individual certifies that the Services described above, as more fully set forth in the Agreement, have been provided. Additional details are provided on the attached pages.

Signature: _____

Tax I.D. # _____

Date: _____

03/01/06

**CONFIDENTIAL**

RP_000283

Abbott Pain Care          200 Abbott Park Road          t 847.938.6936
                          Dept. 096K, Building AP30-4    f 847.935.5050
                          Abbott Park, IL  60064-6182





May 9, 2006

Dr. Russell Portenoy
350 East 17th Street, 12th Floor
New York, NY  10003

Dear Dr. Portenoy,

Thank you so much for taking time out of your busy schedule last Tuesday to meet with me, Andrea, and Marissa about the risk management program we are developing for Vicodin CR.  Your feedback, insight, and advice were very helpful to us, and we will keep you updated on the status of our program.

Enclosed for your records is a copy of the professional services agreement that we signed.  This agreement is similar to the agreement that we already have on file for you from our December advisory meeting.  The difference is that this agreement covers our individual consulting meetings.

We look forward to meeting with you again soon.  In the meantime, we are in the process of planning for 2007.  If you are aware of national programs or medical conferences that Abbott should consider supporting, please don't hesitate to let me know.

Sincerely,

Audrey Hsieh

Audrey Hsieh
Senior Product Manager
Abbott Pain Care

CONFIDENTIAL

Abbott
A Promise for Life

## PROFESSIONAL SERVICES AGREEMENT

Expense Code: C2

Abbott Laboratories ("Abbott") desires to retain Russell K. Portenoy, MD                    ("You"), with an address of
350 East 17th Street, New York, NY 10003                         , and social security or tax I.D. number of
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                    , as a consultant on the following terms and conditions.

1.  <u>Professional Services</u>. As Abbott reasonably directs, You shall perform the activities set forth in Exhibit A (attached hereto and made a part hereof) and any applicable speaker addendum, which may be amended in writing by the parties at any time (the "Services"). In performance of the Services, You shall comply with all applicable federal, state and local laws, regulations and guidelines, as well as with Abbott's policies while performing these services.

2.  <u>Abbott Contact; Reports</u>. Your Abbott contact will be Audrey Hsieh or Doug Geiger                    , or whomever Abbott may designate. As Abbott may reasonably request, You shall submit written reports on the progress of the Services.

3.  <u>Compensation</u>. In consideration for Your performance of the obligations under this Agreement, Abbott shall pay You for the Services so provided the amount as described in Exhibit A, for an aggregate compensation during the term of the Agreement not to exceed ten thousand      ($ 10,000.00 ). Abbott shall pay You for all reasonable and necessary out-of-pocket expenses incurred by You in performing the Services (upon presentation of appropriate receipts), including the costs of travel (coach class if by air, consistent with Abbott's travel policy), food, lodging, and telephone calls. In the event of premature termination of the Agreement by Abbott, Abbott shall pay You for Services performed on a prorated basis and for all reasonable and necessary out-of-pocket expenses incurred by You through the date of termination. Abbott shall pay You upon receipt of an invoice, in the form set forth in Exhibit B, containing reasonable documentation of Services performed by You.

4.  <u>Term and Termination</u>. This Agreement shall be effective upon full execution and continue for a period of one year. Abbott may terminate this Agreement without cause upon giving You thirty (30) days prior written notice. Either party may terminate this Agreement immediately upon written notice to the other party in the event of a breach by the other party of a material provision of this Agreement that remains uncured thirty (30) days following receipt of notice of such breach from the non-breaching party. Termination or expiration of this Agreement shall not affect any rights or obligations which have accrued prior thereto or in connection therewith.

5.  <u>Confidential Information</u>. During the term of this Agreement and for a period of seven (7) years thereafter, You shall not disclose or use Confidential Information except as permitted in this Agreement or in writing by Abbott. Confidential Information shall include all information concerning Abbott and the Services disclosed to You by or on behalf of Abbott, or developed as a result of Your performance of the Services, except any portion thereof which: (a) is known to You on a nonconfidential basis before receipt thereof under this Agreement, as evidenced by Your written records; (b) is disclosed to You after acceptance of this Agreement by a third party having a right to make such disclosure in a nonconfidential manner; or (c) is or becomes part of the public domain through no fault of Your own. You shall not disclose to Abbott any information which is confidential and/or proprietary to a third party without first obtaining the written consent of both such third party and Abbott. Upon the earlier of completion of the Services or termination or expiration of this Agreement, You shall return to Abbott all Confidential Information, data and materials provided to You by or on behalf of Abbott, or developed by You as a result of Your performance of the Services, as requested by Abbott. Nothing in this Agreement shall be construed to restrict either party from disclosing the other party's Confidential Information as required by law or court order or other governmental order, provided in each case the disclosing party shall timely inform the other party so that such other party may seek a protective order.

6.  <u>Deliverables and Work Product</u>. All reports, communications, material, information, innovations, inventions or discoveries (whether or not patentable or copyrightable) conceived, reduced to practice, made or developed by You solely or jointly with others in connection with Your performance of the Services shall be promptly disclosed to and be the sole property of Abbott, and You hereby assign to Abbott all right, title and interest therein without any obligation on Abbott to pay royalties or other remuneration therefore. To the extent the foregoing is copyrightable (including, without limitation, computer programs, source code, object code and supporting documentation), it shall be deemed a Work Made for Hire or alternatively a Specially Commissioned Work under the Copyright Act of 1976 and shall become and remain the sole property of Abbott. To the extent any such material may not be a Work Made for Hire, You agree to assign and do hereby assign such material to Abbott. At Abbott's request and expense, You shall execute such documents and take such other actions as Abbott deems necessary or appropriate to obtain, record or enforce patents, copyrights or assignments thereof in Abbott's name. Notwithstanding the foregoing, Abbott shall not acquire ownership of any materials, information, know-how, tools, models, methodologies, techniques and/or other intellectual property owned by You prior to Your performance of Services under this Agreement or that is licensed by You from any third party (all of the foregoing, "Pre-existing Intellectual Property"). You hereby grant to Abbott a non-exclusive, irrevocable, royalty-free worldwide license to use, modify, and enhance such Preexisting Intellectual Property (including the right to sublicense) to the extent that such license is required to enable Abbott to make use of Your Services hereunder, including without limitation any deliverables and work product. For speaker training meetings, You agree to perform a minimum of three (3) speaking obligations at programs conducted by Abbott (i.e., does not include CME or third party programs) during the twelve (12) months following the execution of this Agreement. A Speaker Addendum or separate speaker agreement covering the actual speaking engagement must be signed for each program.

03/01/06

# CONFIDENTIAL

7. <u>Presentations, Publications and Publicity.</u> You shall not present or publish, nor submit for publication, any work resulting from the Services without Abbott's prior written approval. You shall not use Abbott's name in any publicity, advertising or announcement, or disclose the existence or terms of this Agreement, without Abbott's prior written consent (which is in its sole discretion to grant or withhold).

8. <u>Representation and Warranties.</u> Each party represents and warrants that (a) neither this Agreement, nor any payment hereunder, is in exchange for any explicit or implicit agreement or understanding that You purchase, lease, order, prescribe, recommend or otherwise arrange for, or provide formulary or other preferential or qualifying status for the use of Abbott products, and (b) the total payment for the Services represents the fair market value for the Services and has not been determined in any manner that takes into account the volume or value of any referrals or business between You and Abbott. You represent and warrant that if the scope of Services includes promotional speaking about Abbott's products, the contents of the presentation will be within approved product labeling. You represent and warrant that the terms of this Agreement are not inconsistent with any other contractual or legal obligations You may have or with the policies of any institution with which You are associated, and that You have obtained approval from the institution(s) with which You are associated for Your provision of the Services, including the compensation to be paid to You hereunder. If You are an employee or special employee of the federal, state, county or local government, You acknowledge that:

    a. Abbott is not offering this compensation because of Your official position, or

    b. Abbott is offering this compensation because of Your official position and You have received written authorization from Your agency's ethics official or an internal agency procedure exists authorizing acceptance of such compensation.

If b. above, attach authorization or copy of internal agency procedure, as applicable, to this document.

9. <u>Debarment and Exclusion.</u> INSTITUTION represents and warrants that neither it, nor any of its employees or agents performing hereunder, have ever been, are currently, or are the subject of a proceeding that could lead to it or such employees or agents becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual. INSTITUTION further covenants, represents and warrants that if, during the term of this Agreement, it, or any of its employees or agents performing hereunder, become or are the subject of a proceeding that could lead to that party becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual, INSTITUTION shall immediately notify Abbott, and Abbott shall have the right to immediately terminate this Agreement. This provision shall survive termination or expiration of this Agreement. For purposes of this provision, the following definitions shall apply:

    a. A "Debarred Individual" is an individual who has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from providing services in any capacity to a person that has an approved or pending drug product application.

    b. A "Debarred Entity" is a corporation, partnership or association that has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from submitting or assisting in the submission of any abbreviated drug application, or a subsidiary or affiliate of a Debarred Entity.

    c. An "Excluded Individual" or "Excluded Entity" is (i) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal health care programs such as Medicare or Medicaid by the Office of the Inspector General (OIG/HHS) of the U.S. Department of Health and Human Services, or (ii) is an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal procurement and non-procurement programs, including those produced by the U.S. General Services Administration (GSA).

    d. A "Convicted Individual" or "Convicted Entity" is an individual or entity, as applicable, who has been convicted of a criminal offense that falls within the ambit of 21 U.S.C. §335a (a) or 42 U.S.C. §1320a - 7(a), but has not yet been excluded, debarred, suspended or otherwise declared ineligible.

10. <u>Independent Contractor.</u> Your status under this Agreement is that of an independent contractor. You shall not be deemed an employee, agent, partner or joint venturer of Abbott for any purpose whatsoever, and You shall have no authority to bind or act on behalf of Abbott. This Agreement shall not entitle You to participate in any benefit plan or program of Abbott. You shall be responsible for, and agree to comply with, obligations under federal, state and local tax laws for payment of income and, if applicable, self-employment tax. You are not entitled to worker's compensation coverage by Abbott, and You hereby waive any and all rights You may have to be covered under Abbott's worker's compensation policies.

11. <u>Miscellaneous.</u> This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all previous agreements and undertakings with respect thereto. This Agreement may be modified only by written agreement signed by the parties. You may not assign this Agreement or any interest herein, or delegate any duty hereunder, to any third party without Abbott's prior written consent (which is in its sole discretion to grant or withhold). This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, excluding its conflicts of laws provisions.

AGREED:
ABBOTT LABORATORIES,
By: _Audrey Hsieh_
Name: Audrey Hsieh
Title: Senior Manager, Abbott Pain Care Franchise
Date: 5/1/06

AGREED:
ACCEPTED BY:
By: _____
Name: Dr. Russell Portenoy
Title: Chairman, Dept of Pain Med. & Palliative Care, Beth Israel
Date: 5/1/06

CONFIDENTIAL

## EXHIBIT A

<u>Description of Professional Services</u>

Describe the services to be performed:

- Provide individual consulting services (including advice, insight, feedback, and ideas) to Abbott Pain Care Commercial Team on topics related to Vicodin CR, including, but not limited to:  commercial development plan; commercial aspects of risk management plan; commercial considerations in Phase IIIb/Phase IV/investigator-initiated studies; other pre-launch commercial programs.
- Outside the scope of this agreement is Dr. Portenoy's participation in Vicodin CR group consulting programs such as advisory board and speaker training meetings.  Dr. Portenoy's participation in Vicodin CR advisory board and speaker training meetings is covered under agreements provided by Abbott's medical education vendors specific to those meetings.

Deliverables (if required):

To be determined as needed by Abbott Pain Care Commercial Team and Dr. Russell Portenoy.

a.  Cost estimates (invoice must be submitted with all requests for payment):

Rate honored (select appropriate payment terms):

☑ $ 500.00_____ per hour; maximum hours _20_____

❑ $_____ per day; maximum days _____

❑ $_____ per project; minimum hours _____

❑ $_____ per project; project deliverable _____

Travel costs:

Not applicable

Timelines/Due date(s):

To be determined as needed by Abbott Pain Care Commercial Team and Dr. Russell Portenoy.

# CONFIDENTIAL

03/01/06

RP_000287

EXHIBIT B

Invoice # 2006-01

Statement for Services Provided in Accordance with the Professional Services Agreement

Period of May 1 , 200 6

to

May 5 , 200 6

**Number of Hours/Days Worked or Project Deliverable**

**Brief Description of Services Performed**

2 Hours

Provided advice, insight, feedback, and ideas to Abbott Pain Care franchise regarding the development of educational tools for the Vicodin CR risk management plan.

AIRFARE
GROUND TRANSPORTATION
LODGING
MEALS
TELEPHONE

Total Costs $1,000 —

Individual certifies that the services described above, as more fully set forth in the Agreement, have been provided. Additional details are provided on the attached pages.

Signature:

Tax I.D. # 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

Date: 5/2/66

CONFIDENTIAL

03/01/06

## AMENDMENT TO THE
## PROFESSIONAL SERVICES AGREEMENT

December 29, 2006

Russell Portenoy, M.D.
First Avenue at 16th Street
Department of Pain Medicine & Palliative Care
Beth Israel Medical Center
New York, NY 10003

Re:  First Amendment (the "Amendment") to that certain Professional Services Agreement (the "Agreement") effective February 27, 2006 between Russell Portenoy, M.D. ("You") and Abbott Laboratories ("Abbott").

Dear Dr. Russell Portenoy:

Subject to the full execution of this Amendment, Abbott and You hereby agree to extend the term of the Agreement from February 27, 2007 through February 27, 2008.

Except as specifically amended by this Amendment, all other terms and conditions of the Agreement shall continue in full force and effect during the extended term of the Agreement.  A copy of the Agreement is attached for reference.

If the foregoing terms and conditions are acceptable, please sign and date both originals of this Amendment and return one (1) original to Abbott.

Very truly yours,

ABBOTT LABORATORIES

By: _Joseph M Behout_

Name: _Joseph M Behout_

Title: Manager, GPRD Outsourcing

Date: _3-Jan-2007_

ACCEPTED:

RUSSELL PORTENOY, M.D.

By: _____

Name: _R Portenoy MD_

Title: _Chair, DPMPC, BIMC_

Date: _1/9/07_

Attachment

Template: Amend to the PSA/Services Agmt. 05.10.2006
Document Title: 15109_FINAL.doc
Version: 12/29/2006 9:29 AM, 967

CONFIDENTIAL

⊿ **ABBOTT**

## Global Pharmaceutical Research and Development

Abbott Laboratories
100 Abbott Park Road
Abbott Park, Illinois 60064-3500

### PROFESSIONAL SERVICES AGREEMENT

Abbott Laboratories ("Abbott") desires to retain Russell Portenoy, MD ("You"), with an address of First Avenue at 16th Street, Department of Pain Medicine and Palliative Care, Beth Israel Medical Center, New York, NY 10003, and social security number 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, as a consultant on the following terms and conditions.

1.  <u>Professional Services</u>. As Abbott reasonably directs, You shall perform the activities set forth in Exhibit A (attached hereto and made a part hereof), which may be amended in writing by the parties at any time (the "Services"). As Abbott may reasonably request, You shall submit written reports on the progress of the Services.

2.  <u>Contacts</u>. Your Abbott contact will be Victor Jorden, MD, MPH, or whomever Abbott may designate. Abbott's contact with You will be Russell Portenoy, MD.

3.  <u>Compensation</u>. In consideration for Your performance of the Services described in this Agreement, Abbott shall pay You an amount not to exceed Twenty-Seven Thousand Dollars ($27,000.00) during the term of this Agreement, as described in Exhibit A.  This total compensation is inclusive of all reasonable and necessary travel (coach class if by air, consistent with Abbott's travel policy) and out-of-pocket expenses (food, telephone calls and lodging, where applicable) as authorized by Abbott and incurred by You in performing the Services.   In the event of premature termination of the Agreement by Abbott, Abbott shall pay You for Services performed on a prorated basis and for all reasonable and necessary out-of-pocket expenses incurred by You through the date of termination. Abbott shall pay You upon receipt and approval of an invoice and appropriate receipts, similar to the form as set forth in Exhibit B attached hereto, containing reasonable documentation of Services performed by You.

4.  <u>Compliance</u>. In performance of the Services, You shall comply with all applicable laws, regulations and guidance documents including but not limited to rules governing healthcare programs. In addition, while on Abbott's premises You shall comply with Abbott's policies.

5.  <u>Term and Termination</u>. This Agreement shall be effective upon full execution by the parties and shall be effective for a period of one (1) year thereafter. Abbott may immediately terminate this Agreement without cause upon notice to You. Either party may terminate this Agreement immediately upon written notice to the other party in the event of a breach by the other party of a material provision of this Agreement that remains uncured thirty (30) days following receipt of notice of such breach from the non-breaching party. Termination or expiration of this Agreement shall not affect any rights or obligations which have accrued prior thereto or in connection therewith, or any obligations hereunder which by their terms should survive termination or expiration.

6.  <u>Confidential Information</u>. During the term of this Agreement and for a period of seven (7) years thereafter, You shall not disclose or use Confidential Information except as permitted in this Agreement or in writing by Abbott. You agree that any of Your employees, agents or subcontractors having access to the Confidential Information under this Agreement shall abide by the confidentiality obligations set forth in this Agreement. "Confidential Information" shall mean all information, data and materials concerning Abbott and the Services disclosed to You by or on behalf of Abbott, or developed as a result of Your performance of the Services, including but not limited to any individually identifiable health information, except any portion thereof which: (a) is known to You on a non-confidential basis before receipt thereof under this Agreement, as evidenced by Your written records; (b) is disclosed to You after acceptance of this Agreement by a third party having a right to make such disclosure in a non-confidential manner; or (c) is or becomes part of the public domain through no fault of Your own. You shall not disclose to Abbott any information which is confidential and/or proprietary to a third party without first obtaining the written consent of both such third party and

CONFIDENTIAL

RP_000290



Russell Portenoy, MD
February 10, 2006

Abbott. Upon the earlier of completion of the Services or termination or expiration of this Agreement, You shall return to Abbott all Confidential Information provided to You by or on behalf of Abbott, or developed by You as a result of Your performance of the Services, as requested by Abbott. Nothing in this Agreement shall be construed to restrict You from disclosing Abbott's Confidential Information as required by law or court order or other governmental order, provided in each case that You shall timely inform Abbott so that Abbott may seek a protective order.

7.  <u>Deliverables and Work Product</u>. All reports, communications, material, information, innovations, inventions or discoveries (whether or not patentable or copyrightable) conceived, reduced to practice, made or developed by You solely or jointly with others in connection with Your performance of the Services shall be promptly disclosed to and be the sole property of Abbott, and You hereby assign to Abbott all right, title and interest therein without any obligation on Abbott to pay royalties or other remuneration therefore. To the extent the foregoing is copyrightable (including, without limitation, computer programs, source code, object code and supporting documentation), it shall be deemed a Work Made for Hire or alternatively a Specially Commissioned Work under the Copyright Act of 1976 and shall become and make the sole property of Abbott. To the extent any such material may not be a Work Made for Hire, You agree to assign and do hereby assign such material to Abbott. At Abbott's request and expense, You shall execute such documents and take such other actions, as Abbott deems necessary or appropriate, to obtain, record or enforce patents, copyrights or assignments thereof in Abbott's name. Notwithstanding the foregoing, Abbott shall not acquire ownership of any materials, information, know-how, tools, models, methodologies, techniques and/or other intellectual property owned by You prior to Your performance of Services under this Agreement or that is licensed by You from any third party (all of the foregoing, "Pre-existing Intellectual Property"). You hereby grant to Abbott a non-exclusive, irrevocable, royalty-free worldwide license to use, modify, and enhance such Pre-existing Intellectual Property (including the right to sublicense) to the extent that such license is required to enable Abbott to make use of Your Services hereunder, including without limitation any deliverables and work product.

8 .  <u>Presentations, Publications and Publicity</u>. If You prepare any presentation or publication related to the Services performed by You pursuant to this Agreement, You shall provide Abbott with a draft of the same at least forty-five (45) days prior to submission, presentation or announcement thereof to any third party, for Abbott's review and comment, which comments You will give due consideration. Abbott shall return comments to You within thirty (30) days after receipt of the draft from You. You agree to delete any Abbott Confidential Information contained in any such proposed presentation or publication. In the event that You and Abbott differ in their opinion or interpretation of data in the publication, the parties shall resolve such differences in good faith through appropriate scientific debate.  In addition, You shall delay any proposed publication/presentation an additional sixty (60) days in the event Abbott so requests to enable Abbott to secure patent or other proprietary protection. Neither party shall use the other party's name in any publicity, advertising or announcement, or disclose the existence or terms of this Agreement, without the other party's prior written consent (which is in such other party's sole discretion to grant or withhold).

9.  <u>Representation and Warranties</u>. Each party represents and warrants that: (a) neither this Agreement, nor any payment hereunder, is in exchange for any explicit or implicit agreement or understanding that You purchase, lease, order, prescribe, recommend or otherwise arrange for, or provide formulary or other preferential or qualifying status for the use of Abbott products; and (b) the total payment for the Services represents the fair market value for the Services and has not been determined in any manner that takes into account the volume or value of any referrals or business between You and Abbott. You represent and warrant that if the scope of Services includes promotional speaking about Abbott's products, the contents of the presentation will be within approved product labeling. You represent and warrant that the terms of this Agreement are not inconsistent with any other contractual or legal obligations You may have or with the policies of any institution with which You are associated, and that You have obtained approval from the institution(s) with which You are associated for Your provision of the Services, including the compensation to be paid to You hereunder. If You are an employee or special employee of any government, You acknowledge that:

a.  Abbott is not offering this compensation because of Your official position, or

CONFIDENTIAL

RP_000291



Russell Portenoy, MD
February 10, 2006

    b. Abbott is offering this compensation because of Your official position and You have received written authorization from Your agency's ethics official or an internal agency procedure exists authorizing acceptance of such compensation.

If b. above, attach authorization or copy of internal agency procedure, as applicable, to this document.

10. <u>Debarment and Exclusion</u>. You represent and warrant that neither You, nor any of Your employees or agents performing Services hereunder, have ever been, are currently, or are the subject of a proceeding that could lead to You or such employees or agents becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual. You further covenant, represent and warrant that if, during the term of this Agreement, You, or any of Your employees or agents performing Services hereunder, become or are the subject of a proceeding that could lead to that party becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual, You shall immediately notify Abbott, and Abbott shall have the right to immediately terminate this Agreement. This provision shall survive termination or expiration of this Agreement. For purposes of this provision, the following definitions shall apply:

    a. A "Debarred Individual" is an individual who has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from providing services in any capacity to a person that has an approved or pending drug product application.

    b. A "Debarred Entity" is a corporation, partnership or association that has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from submitting or assisting in the submission of any abbreviated drug application, or a subsidiary or affiliate of a Debarred Entity.

    c. An "Excluded Individual" or "Excluded Entity" is (i) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal health care programs such as Medicare or Medicaid by the Office of the Inspector General (OIG/HHS) of the U.S. Department of Health and Human Services, or (ii) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal procurement and non-procurement programs, including those produced by the U.S. General Services Administration (GSA).

    d. A "Convicted Individual" or "Convicted Entity" is an individual or entity, as applicable, who has been convicted of a criminal offense that falls within the ambit of 21 U.S.C. §335a(a) or 42 U.S.C. §1320a - 7(a), but has not yet been excluded, debarred, suspended or otherwise declared ineligible.

11. <u>Independent Contractor</u>. Your status under this Agreement is that of an independent contractor. You shall not be deemed an employee, agent, partner or joint venturer of Abbott for any purpose whatsoever, and You shall have no authority to bind or act on behalf of Abbott. This Agreement shall not entitle You to participate in any benefit plan or program of Abbott. You shall be responsible for, and agree to comply with, obligations under all applicable tax laws for payment of income and, if applicable, self-employment tax. You are not entitled to worker's compensation coverage by Abbott, and You hereby waive any and all rights You may have to be covered under Abbott's worker's compensation policies.

12. <u>Notices</u>. All notices hereunder shall be in writing and shall be either deposited in the United States mail, certified mail, return receipt requested with postage paid, or personally delivered by express courier or faxed as follows:

CONFIDENTIAL

RP_000292



Russell Portenoy, MD
February 10, 2006

If to You, address to:

Russell Portenoy, MD
Department of Pain Medicine and Palliative Care
First Avenue at 16th Street
New York, NY  10003

If to Abbott, address to:

Abbott Laboratories
Victor Jorden, MD, MPH
Medical Director
Dept. R440, Bldg. AP34
100 Abbott Park Road
Abbott Park, IL 60064-3500
Phone:  847-935-7775
Fax:  847-935-7633

With a copy to:
Abbott Laboratories
Divisional Vice President
PPG Global Legal Operations
D322, Bldg. AP6D
100 Abbott Park Road
Abbott Park, IL  60064
Fax: -847-938-1206

Invoices shall be sent to:

Abbott Laboratories
Victor Jorden, MD, MPH
Medical Director
Dept. R440, Bldg. AP34
100 Abbott Park Road
Abbott Park, IL 60064-3500

13. <u>Indemnification</u>. Abbott agrees to indemnify, defend and hold You and Beth Israel Medical Center ("Beth Israel"), and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including, but not limited to, settlement costs and reasonable legal fees) asserted against any of the Indemnified Parties relating directly or indirectly to the Services performed by You under or in connection with this Agreement, to the extent such claims, losses, damages, liabilities, suits, or judgments are not caused by Your negligence or willful misconduct.

14. <u>Insurance</u>: Abbott warrants that it maintains a policy or program of insurance or self-insurance at levels sufficient to support the indemnification obligations assumed herein.  Upon written request, ABBOTT will provide to You thirty (30) days prior written notice of cancellation of its coverage.

AGREED:
ABBOTT LABORATORIES

By: _____

Name: <u>Joseph m Bebart</u>

Title: <u>Manager, GPRD Outsourcing</u>

Date: <u>17-Feb-2006</u>

AGREED:
RUSSELL PORTENOY, MD

By: _____

Name: <u>R Portenoy MD</u>

Title: <u>Chair DPMPC</u>

Date: <u>2/27/06</u>

CONFIDENTIAL

RP_000293



Russell Portenoy, MD
February 10, 2006

## EXHIBIT A

### Description of Professional Services

1. Scope of Project (detailed description of Services to be performed):

   You will act as a medical consultant on an as-needed basis to Abbott's Pain Care Team. Working in this capacity, You may be asked to provide input based on your experience in and knowledge of analgesia clinical trials and analgesia drug development, including but not limited to the following:

   - Review of clinical research protocols, from conceptual basis to finished product
   - Overall assessment of clinical development program
   - Development of Phase III program
   - Life-cycle management
   - Attend meetings and/or conference calls as needed when requested by Abbott

2. Deliverables/Timelines/Payment Terms:

| Deliverable(s) | Due Date/ Timeline | Payment Terms | Total |
|---|---|---|---|
| Medical consulting on an as-needed basis. | Timelines for completion will be mutually agreed upon for each request at the time it is made. | $500.00/hr. for a total of 50 hours | $25,000.00 |
| | | | |

| | | |
|---|---|---|
| **Subtotal** | $25,000.00 |
| **Travel and out-of-pocket expenses** (not to exceed) | $2,000.00 |
| **Total Compensation (not to exceed)** | **$27,000.00** |

(Invoices must be submitted with all requests for payment)

Template: PSA 05.02.2005
Document Title: 12445 FINAL .doc

**CONFIDENTIAL**

File Version: 2/10/2006 5:09 PM, 14,187

CONFIDENTIAL

RP_000294

Russell Portenoy, MD
February 10, 2006

## EXHIBIT B

Invoice # _____

Statement for Services Provided in Accordance with the Professional Services Agreement

Period of _____, 200_

to

_____, 200_

| Number of Hours/Days Worked or Project Deliverable | Brief Description of Services Performed |
| --- | --- |
| | |
| | |
| | |
| | |
| | |
| | |
| AIRFARE | |
| GROUND TRANSPORTATION | |
| LODGING | |
| MEALS | |
| TELEPHONE | |

Total Costs: _____

Individual certifies that the Services described above, as more fully set forth in the Agreement, have been provided. Additional details and receipts are provided on the attached pages.

Signature: _____

Tax I.D. # _____

Date: _____

CONFIDENTIAL

RP_000295



**AMENDMENT TO THE**
**PROFESSIONAL SERVICES AGREEMENT**

December 29, 2006

Russell Portenoy, M.D.
First Avenue at 16th Street
Department of Pain Medicine & Palliative Care
Beth Israel Medical Center
New York, NY 10003

Re: First Amendment (the "Amendment") to that certain Professional Services Agreement (the "Agreement") effective February 27, 2006 between Russell Portenoy, M.D. ("You") and Abbott Laboratories ("Abbott").

Dear Dr. Russell Portenoy:

Subject to the full execution of this Amendment, Abbott and You hereby agree to extend the term of the Agreement from February 27, 2007 through February 27, 2008.

Except as specifically amended by this Amendment, all other terms and conditions of the Agreement shall continue in full force and effect during the extended term of the Agreement.  A copy of the Agreement is attached for reference.

If the foregoing terms and conditions are acceptable, please sign and date both originals of this Amendment and return one (1) original to Abbott.

Very truly yours,

ABBOTT LABORATORIES

By: *Joseph M Bebart*

Name: *Joseph M Bebart*

Title: Manager, GPRD Outsourcing

Date: *3-Jan-2007*

Attachment

ACCEPTED:

RUSSELL PORTENOY, M.D.

By: *[signature]*

Name: *R Portenoy MD*

Title: *Chair, DPMPC, BIMC*

Date: *1/9/07*

Template: Amend to the PSA/Services Agmt. 05.10.2006
Document Title: 15109_FINAL.doc
Version: 12/29/2006 9:29 AM, 967

**ABBOTT**

## Global Pharmaceutical Research and Development

Abbott Laboratories
100 Abbott Park Road
Abbott Park, Illinois 60064-3500

### PROFESSIONAL SERVICES AGREEMENT

Abbott Laboratories ("Abbott") desires to retain Russell Portenoy, MD ("You"), with an address of First Avenue at 16th Street, Department of Pain Medicine and Palliative Care, Beth Israel Medical Center, New York, NY 10003, and social security number 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, as a consultant on the following terms and conditions.

1. Professional Services. As Abbott reasonably directs, You shall perform the activities set forth in Exhibit A (attached hereto and made a part hereof), which may be amended in writing by the parties at any time (the "Services"). As Abbott may reasonably request, You shall submit written reports on the progress of the Services.

2. Contacts. Your Abbott contact will be Victor Jorden, MD, MPH, or whomever Abbott may designate. Abbott's contact with You will be Russell Portenoy, MD.

3. Compensation. In consideration for Your performance of the Services described in this Agreement, Abbott shall pay You an amount not to exceed Twenty-Seven Thousand Dollars ($27,000.00) during the term of this Agreement, as described in Exhibit A.  This total compensation is inclusive of all reasonable and necessary travel (coach class if by air, consistent with Abbott's travel policy) and out-of-pocket expenses (food, telephone calls and lodging, where applicable) as authorized by Abbott and incurred by You in performing the Services.  In the event of premature termination of the Agreement by Abbott, Abbott shall pay You for Services performed on a prorated basis and for all reasonable and necessary out-of-pocket expenses incurred by You through the date of termination. Abbott shall pay You upon receipt and approval of an invoice and appropriate receipts, similar to the form as set forth in Exhibit B attached hereto, containing reasonable documentation of Services performed by You.

4. Compliance. In performance of the Services, You shall comply with all applicable laws, regulations and guidance documents including but not limited to rules governing healthcare programs. In addition, while on Abbott's premises You shall comply with Abbott's policies.

5. Term and Termination. This Agreement shall be effective upon full execution by the parties and shall be effective for a period of one (1) year thereafter. Abbott may immediately terminate this Agreement without cause upon notice to You. Either party may terminate this Agreement immediately upon written notice to the other party in the event of a breach by the other party of a material provision of this Agreement that remains uncured thirty (30) days following receipt of notice of such breach from the non-breaching party. Termination or expiration of this Agreement shall not affect any rights or obligations which have accrued prior thereto or in connection therewith, or any obligations hereunder which by their terms should survive termination or expiration.

6. Confidential Information. During the term of this Agreement and for a period of seven (7) years thereafter, You shall not disclose or use Confidential Information except as permitted in this Agreement or in writing by Abbott. You agree that any of Your employees, agents or subcontractors having access to the Confidential Information under this Agreement shall abide by the confidentiality obligations set forth in this Agreement. "Confidential Information" shall mean all information, data and materials concerning Abbott and the Services disclosed to You by or on behalf of Abbott, or developed as a result of Your performance of the Services, including but not limited to any individually identifiable health information, except any portion thereof which: (a) is known to You on a non-confidential basis before receipt thereof under this Agreement, as evidenced by Your written records; (b) is disclosed to You after acceptance of this Agreement by a third party having a right to make such disclosure in a non-confidential manner; or (c) is or becomes part of the public domain through no fault of Your own. You shall not disclose to Abbott any information which is confidential and/or proprietary to a third party without first obtaining the written consent of both such third party and

CONFIDENTIAL

RP_000297

Russell Portenoy, MD
February 10, 2006

Abbott. Upon the earlier of completion of the Services or termination or expiration of this Agreement, You shall return to Abbott all Confidential Information provided to You by or on behalf of Abbott, or developed by You as a result of Your performance of the Services, as requested by Abbott. Nothing in this Agreement shall be construed to restrict You from disclosing Abbott's Confidential Information as required by law or court order or other governmental order, provided in each case that You shall timely inform Abbott so that Abbott may seek a protective order.

7. <u>Deliverables and Work Product</u>. All reports, communications, material, information, innovations, inventions or discoveries (whether or not patentable or copyrightable) conceived, reduced to practice, made or developed by You solely or jointly with others in connection with Your performance of the Services shall be promptly disclosed to and be the sole property of Abbott, and You hereby assign to Abbott all right, title and interest therein without any obligation on Abbott to pay royalties or other remuneration therefore. To the extent the foregoing is copyrightable (including, without limitation, computer programs, source code, object code and supporting documentation), it shall be deemed a Work Made for Hire or alternatively a Specially Commissioned Work under the Copyright Act of 1976 and shall become and remain the sole property of Abbott. To the extent any such material may not be a Work Made for Hire, You agree to assign and do hereby assign such material to Abbott. At Abbott's request and expense, You shall execute such documents and take such other actions, as Abbott deems necessary or appropriate, to obtain, record or enforce patents, copyrights or assignments thereof in Abbott's name. Notwithstanding the foregoing, Abbott shall not acquire ownership of any materials, information, know-how, tools, models, methodologies, techniques and/or other intellectual property owned by You prior to Your performance of Services under this Agreement or that is licensed by You from any third party (all of the foregoing, "Pre-existing Intellectual Property"). You hereby grant to Abbott a non-exclusive, irrevocable, royalty-free worldwide license to use, modify, and enhance such Pre-existing Intellectual Property (including the right to sublicense) to the extent that such license is required to enable Abbott to make use of Your Services hereunder, including without limitation any deliverables and work product.

8. <u>Presentations, Publications and Publicity</u>. If You prepare any presentation or publication related to the Services performed by You pursuant to this Agreement, You shall provide Abbott with a draft of the same at least forty-five (45) days prior to submission, presentation or announcement thereof to any third party, for Abbott's review and comment, which comments You will give due consideration. Abbott shall return comments to You within thirty (30) days after receipt of the draft from You. You agree to delete any Abbott Confidential Information contained in any such proposed presentation or publication. In the event that You and Abbott differ in their opinion or interpretation of data in the publication, the parties shall resolve such differences in good faith through appropriate scientific debate. In addition, You shall delay any proposed publication/presentation an additional sixty (60) days in the event Abbott so requests to enable Abbott to secure patent or other proprietary protection. Neither party shall use the other party's name in any publicity, advertising or announcement, or disclose the existence or terms of this Agreement, without the other party's prior written consent (which is in such other party's sole discretion to grant or withhold).

9. <u>Representation and Warranties</u>. Each party represents and warrants that: (a) neither this Agreement, nor any payment hereunder, is in exchange for any explicit or implicit agreement or understanding that You purchase, lease, order, prescribe, recommend or otherwise arrange for, or provide formulary or other preferential or qualifying status for the use of Abbott products; and (b) the total payment for the Services represents the fair market value for the Services and has not been determined in any manner that takes into account the volume or value of any referrals or business between You and Abbott. You represent and warrant that if the scope of Services includes promotional speaking about Abbott's products, the contents of the presentation will be within approved product labeling. You represent and warrant that the terms of this Agreement are not inconsistent with any other contractual or legal obligations You may have or with the policies of any institution with which You are associated, and that You have obtained approval from the institution(s) with which You are associated for Your provision of the Services, including the compensation to be paid to You hereunder. If You are an employee or special employee of any government, You acknowledge that:

    a.   Abbott is not offering this compensation because of Your official position, or

CONFIDENTIAL

RP_000298

Russell Portenoy, MD
February 10, 2006

    b.   Abbott is offering this compensation because of Your official position and You have received written authorization from Your agency's ethics official or an internal agency procedure exists authorizing acceptance of such compensation.

If b. above, attach authorization or copy of internal agency procedure, as applicable, to this document.

10. <u>Debarment and Exclusion</u>. You represent and warrant that neither You, nor any of Your employees or agents performing Services hereunder, have ever been, are currently, or are the subject of a proceeding that could lead to You or such employees or agents becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual. You further covenant, represent and warrant that if, during the term of this Agreement, You, or any of Your employees or agents performing Services hereunder, become or are the subject of a proceeding that could lead to that party becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual, You shall immediately notify Abbott, and Abbott shall have the right to immediately terminate this Agreement. This provision shall survive termination or expiration of this Agreement. For purposes of this provision, the following definitions shall apply:

    a.   A "Debarred Individual" is an individual who has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from providing services in any capacity to a person that has an approved or pending drug product application.

    b.   A "Debarred Entity" is a corporation, partnership or association that has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from submitting or assisting in the submission of any abbreviated drug application, or a subsidiary or affiliate of a Debarred Entity.

    c.   An "Excluded Individual" or "Excluded Entity" is (i) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal health care programs such as Medicare or Medicaid by the Office of the Inspector General (OIG/HHS) of the U.S. Department of Health and Human Services, or (ii) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal procurement and non-procurement programs, including those produced by the U.S. General Services Administration (GSA).

    d.   A "Convicted Individual" or "Convicted Entity" is an individual or entity, as applicable, who has been convicted of a criminal offense that falls within the ambit of 21 U.S.C. §335a(a) or 42 U.S.C. §1320a - 7(a), but has not yet been excluded, debarred, suspended or otherwise declared ineligible.

11. <u>Independent Contractor</u>. Your status under this Agreement is that of an independent contractor. You shall not be deemed an employee, agent, partner or joint venturer of Abbott for any purpose whatsoever, and You shall have no authority to bind or act on behalf of Abbott. This Agreement shall not entitle You to participate in any benefit plan or program of Abbott. You shall be responsible for, and agree to comply with, obligations under all applicable tax laws for payment of income and, if applicable, self-employment tax. You are not entitled to worker's compensation coverage by Abbott, and You hereby waive any and all rights You may have to be covered under Abbott's worker's compensation policies.

12. <u>Notices</u>. All notices hereunder shall be in writing and shall be either deposited in the United States mail, certified mail, return receipt requested with postage paid, or personally delivered by express courier or faxed as follows:

CONFIDENTIAL

RP_000299



Russell Portenoy, MD
February 10, 2006

If to You, address to:

Russell Portenoy, MD
Department of Pain Medicine and Palliative Care
First Avenue at 16th Street
New York, NY  10003

If to Abbott, address to:

Abbott Laboratories                          With a copy to:
Victor Jorden, MD, MPH                       Abbott Laboratories
Medical Director                             Divisional Vice President
Dept. R440, Bldg. AP34                       PPG Global Legal Operations
100 Abbott Park Road                         D322, Bldg. AP6D
Abbott Park, IL 60064-3500                   100 Abbott Park Road
Phone: 847-935-7775                          Abbott Park, IL  60064
Fax:  847-935-7633                           Fax: -847-938-1206

Invoices shall be sent to:

Abbott Laboratories
Victor Jorden, MD, MPH
Medical Director
Dept. R440, Bldg. AP34
100 Abbott Park Road
Abbott Park, IL 60064-3500

13. <u>Indemnification</u>. Abbott agrees to indemnify, defend and hold You and Beth Israel Medical Center ("Beth Israel"), and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including, but not limited to, settlement costs and reasonable legal fees) asserted against any of the Indemnified Parties relating directly or indirectly to the Services performed by You under or in connection with this Agreement, to the extent such claims, losses, damages, liabilities, suits, or judgments are not caused by Your negligence or willful misconduct.

14. <u>Insurance</u>: Abbott warrants that it maintains a policy or program of insurance or self-insurance at levels sufficient to support the indemnification obligations assumed herein.  Upon written request, ABBOTT will provide to You thirty (30) days prior written notice of cancellation of its coverage.

AGREED:                                      AGREED:
ABBOTT LABORATORIES                          RUSSELL PORTENOY, MD

By: _____               By: _____

Name: _____               Name: _____

Title: Manager, GPRD Outsourcing            Title: _____

Date: 17-Feb-2006                            Date: 2/27/06

CONFIDENTIAL

RP_000300

Russell Portenoy, MD
February 10, 2006

## EXHIBIT A

## Description of Professional Services

1.  Scope of Project (detailed description of Services to be performed):

    You will act as a medical consultant on an as-needed basis to Abbott's Pain Care Team. Working in this capacity, You may be asked to provide input based on your experience in and knowledge of analgesia clinical trials and analgesia drug development, including but not limited to the following:

    - Review of clinical research protocols, from conceptual basis to finished product
    - Overall assessment of clinical development program
    - Development of Phase III program
    - Life-cycle management
    - Attend meetings and/or conference calls as needed when requested by Abbott

2.  Deliverables/Timelines/Payment Terms:

| Deliverable(s) | Due Date/ Timeline | Payment Terms | Total |
|---|---|---|---|
| Medical consulting on an as-needed basis. | Timelines for completion will be mutually agreed upon for each request at the time it is made. | $500.00/hr. for a total of 50 hours | $25,000.00 |
| | | | |
| | | Subtotal | $25,000.00 |
| | | Travel and out-of-pocket expenses (not to exceed) | $2,000.00 |
| | | Total Compensation (not to exceed) | **$27,000.00** |

(Invoices must be submitted with all requests for payment)

CONFIDENTIAL

RP_000301

Russell Portenoy, MD
February 10, 2006

## EXHIBIT B

Invoice # _____

Statement for Services Provided in Accordance with the Professional Services Agreement

Period of _____, 200_

to

_____, 200_

| Number of Hours/Days Worked or Project Deliverable | Brief Description of Services Performed |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| AIRFARE | |
| GROUND TRANSPORTATION | |
| LODGING | |
| MEALS | |
| TELEPHONE | |

Total Costs: _____

Individual certifies that the Services described above, as more fully set forth in the Agreement, have been provided. Additional details and receipts are provided on the attached pages.

Signature: _____

Tax I.D. # _____

Date: _____

Template: PSA 05.02.2005
Document Title: 12445 FINAL .doc

**CONFIDENTIAL**

File Version: 2/10/2006 5:09 PM, 14,187

CONFIDENTIAL

RP_000302



**ABBOTT**

Global Pharmaceutical Research and Development

Abbott Laboratories
100 Abbott Park Road
Abbott Park, Illinois 60064-3500

## PROFESSIONAL SERVICES AGREEMENT

Abbott Laboratories ("Abbott") desires to retain Russell Portenoy, MD ("You"), with an address of First Avenue at 16th Street, Department of Pain Medicine and Palliative Care, Beth Israel Medical Center, New York, NY  10003, and social security number 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, as a consultant on the following terms and conditions.

1. <u>Professional Services</u>. As Abbott reasonably directs, You shall perform the activities set forth in Exhibit A (attached hereto and made a part hereof), which may be amended in writing by the parties at any time (the "Services"). As Abbott may reasonably request, You shall submit written reports on the progress of the Services.

2. <u>Contacts</u>. Your Abbott contact will be Victor Jorden, MD, MPH, or whomever Abbott may designate. Abbott's contact with You will be Russell Portenoy, MD.

3. <u>Compensation</u>. In consideration for Your performance of the Services described in this Agreement, Abbott shall pay You an amount not to exceed Twenty-Seven Thousand Dollars ($27,000.00) during the term of this Agreement, as described in Exhibit A.  This total compensation is inclusive of all reasonable and necessary travel (coach class if by air, consistent with Abbott's travel policy) and out-of-pocket expenses (food, telephone calls and lodging, where applicable) as authorized by Abbott and incurred by You in performing the Services.  In the event of premature termination of the Agreement by Abbott, Abbott shall pay You for Services performed on a prorated basis and for all reasonable and necessary out-of-pocket expenses incurred by You through the date of termination. Abbott shall pay You upon receipt and approval of an invoice and appropriate receipts, similar to the form as set forth in Exhibit B attached hereto, containing reasonable documentation of Services performed by You.

4. <u>Compliance</u>. In performance of the Services, You shall comply with all applicable laws, regulations and guidance documents including but not limited to rules governing healthcare programs. In addition, while on Abbott's premises You shall comply with Abbott's policies.

5. <u>Term and Termination</u>. This Agreement shall be effective upon full execution by the parties and shall be effective for a period of one (1) year thereafter. Abbott may immediately terminate this Agreement without cause upon notice to You. Either party may terminate this Agreement immediately upon written notice to the other party in the event of a breach by the other party of a material provision of this Agreement that remains uncured thirty (30) days following receipt of notice of such breach from the non-breaching party. Termination or expiration of this Agreement shall not affect any rights or obligations which have accrued prior thereto or in connection therewith, or any obligations hereunder which by their terms should survive termination or expiration.

6. <u>Confidential Information</u>. During the term of this Agreement and thereafter, You shall not disclose or use Confidential Information except as permitted in this Agreement or in writing by Abbott. You agree that any of Your employees, agents or subcontractors having access to the Confidential Information under this Agreement shall abide by the confidentiality obligations set forth in this Agreement. "Confidential Information" shall mean all information, data and materials concerning Abbott and the Services disclosed to You by or on behalf of Abbott, or developed as a result of Your performance of the Services, including but not limited to any individually identifiable health information, except any portion thereof which: (a) is known to You on a non-confidential basis before receipt thereof under this Agreement, as evidenced by Your written records; (b) is disclosed to You after acceptance of this Agreement by a third party having a right to make such disclosure in a non-confidential manner; or (c) is or becomes part of the public domain through no fault of Your own. You shall not disclose to Abbott any information which is confidential and/or proprietary to a third party without first obtaining the written consent of both such third party and Abbott. Upon the earlier of completion of the Services or termination or expiration of this Agreement, You shall return to Abbott all Confidential Information

CONFIDENTIAL

RP_000303



Portenoy, MD, Russell
January 4, 2006

provided to You by or on behalf of Abbott, or developed by You as a result of Your performance of the Services, as requested by Abbott. Nothing in this Agreement shall be construed to restrict You from disclosing Abbott's Confidential Information as required by law or court order or other governmental order, provided in each case that You shall timely inform Abbott so that Abbott may seek a protective order.

7.  <u>Deliverables and Work Product</u>. All reports, communications, material, information, innovations, inventions or discoveries (whether or not patentable or copyrightable) conceived, reduced to practice, made or developed by You solely or jointly with others in connection with Your performance of the Services shall be promptly disclosed to and be the sole property of Abbott, and You hereby assign to Abbott all right, title and interest therein without any obligation on Abbott to pay royalties or other remuneration therefore. To the extent the foregoing is copyrightable (including, without limitation, computer programs, source code, object code and supporting documentation), it shall be deemed a Work Made for Hire or alternatively a Specially Commissioned Work under the Copyright Act of 1976 and shall become and remain the sole property of Abbott. To the extent any such material may not be a Work Made for Hire, You agree to assign and do hereby assign such material to Abbott. At Abbott's request and expense, You shall execute such documents and take such other actions, as Abbott deems necessary or appropriate, to obtain, record or enforce patents, copyrights or assignments thereof in Abbott's name. Notwithstanding the foregoing, Abbott shall not acquire ownership of any materials, information, know-how, tools, models, methodologies, techniques and/or other intellectual property owned by You prior to Your performance of Services under this Agreement or that is licensed by You from any third party (all of the foregoing, "Pre-existing Intellectual Property"). You hereby grant to Abbott a non-exclusive, irrevocable, royalty-free worldwide license to use, modify, and enhance such Pre-existing Intellectual Property (including the right to sublicense) to the extent that such license is required to enable Abbott to make use of Your Services hereunder, including without limitation any deliverables and work product.

8.  <u>Presentations, Publications and Publicity</u>. You shall not present or publish, nor submit for publication, any work resulting from the Services without Abbott's prior written approval. You shall not use Abbott's name in any publicity, advertising or announcement, or disclose the existence or terms of this Agreement, without Abbott's prior written consent (which is in its sole discretion to grant or withhold).

9.  <u>Representation and Warranties</u>. Each party represents and warrants that: (a) neither this Agreement, nor any payment hereunder, is in exchange for any explicit or implicit agreement or understanding that You purchase, lease, order, prescribe, recommend or otherwise arrange for, or provide formulary or other preferential or qualifying status for the use of Abbott products; and (b) the total payment for the Services represents the fair market value for the Services and has not been determined in any manner that takes into account the volume or value of any referrals or business between You and Abbott. You represent and warrant that if the scope of Services includes promotional speaking about Abbott's products, the contents of the presentation will be within approved product labeling. You represent and warrant that the terms of this Agreement are not inconsistent with any other contractual or legal obligations You may have or with the policies of any institution with which You are associated, and that You have obtained approval from the institution(s) with which You are associated for Your provision of the Services, including the compensation to be paid to You hereunder. If You are an employee or special employee of any government, You acknowledge that:

   a.  Abbott is not offering this compensation because of Your official position, or

   b.  Abbott is offering this compensation because of Your official position and You have received written authorization from Your agency's ethics official or an internal agency procedure exists authorizing acceptance of such compensation.

   If b. above, attach authorization or copy of internal agency procedure, as applicable, to this document.



Portenoy, MD, Russell
January 4, 2006

10. <u>Debarment and Exclusion</u>. You represent and warrant that neither You, nor any of Your employees or agents performing Services hereunder, have ever been, are currently, or are the subject of a proceeding that could lead to You or such employees or agents becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual. You further covenant, represent and warrant that if, during the term of this Agreement, You, or any of Your employees or agents performing Services hereunder, become or are the subject of a proceeding that could lead to that party becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual, You shall immediately notify Abbott, and Abbott shall have the right to immediately terminate this Agreement. This provision shall survive termination or expiration of this Agreement. For purposes of this provision, the following definitions shall apply:

   a. A "Debarred Individual" is an individual who has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from providing services in any capacity to a person that has an approved or pending drug product application.

   b. A "Debarred Entity" is a corporation, partnership or association that has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from submitting or assisting in the submission of any abbreviated drug application, or a subsidiary or affiliate of a Debarred Entity.

   c. An "Excluded Individual" or "Excluded Entity" is (i) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal health care programs such as Medicare or Medicaid by the Office of the Inspector General (OIG/HHS) of the U.S. Department of Health and Human Services, or (ii) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal procurement and non-procurement programs, including those produced by the U.S. General Services Administration (GSA).

   d. A "Convicted Individual" or "Convicted Entity" is an individual or entity, as applicable, who has been convicted of a criminal offense that falls within the ambit of 21 U.S.C. §335a(a) or 42 U.S.C. §1320a - 7(a), but has not yet been excluded, debarred, suspended or otherwise declared ineligible.

11. <u>Independent Contractor</u>. Your status under this Agreement is that of an independent contractor. You shall not be deemed an employee, agent, partner or joint venturer of Abbott for any purpose whatsoever, and You shall have no authority to bind or act on behalf of Abbott. This Agreement shall not entitle You to participate in any benefit plan or program of Abbott. You shall be responsible for, and agree to comply with, obligations under all applicable tax laws for payment of income and, if applicable, self-employment tax. You are not entitled to worker's compensation coverage by Abbott, and You hereby waive any and all rights You may have to be covered under Abbott's worker's compensation policies.

12. <u>Notices</u>. All notices hereunder shall be in writing and shall be either deposited in the United States mail, certified mail, return receipt requested with postage paid, or personally delivered by express courier or faxed as follows:

   **If to You, address to:**

   Russell Portenoy, MD
   Department of Pain Medicine and Palliative Care
   First Avenue at 16th Street
   New York, NY 10003

CONFIDENTIAL

RP_000305



Portenoy, MD, Russell
January 4, 2006

**If to Abbott, address to:**

Abbott Laboratories
Victor Jorden, MD, MPH
Medical Director
Dept. R440, Bldg. AP34
100 Abbott Park Road
Abbott Park, IL 60064-3500
Phone: 847-935-7775
Fax:  847-935-7633

**With a copy to:**

Abbott Laboratories
Divisional Vice President
Domestic Legal Operations
D322, Bldg. AP6D
100 Abbott Park Road
Abbott Park, IL  60064
Fax: -847-938-1206

**Invoices shall be sent to:**

Abbott Laboratories
Victor Jorden, MD, MPH
Medical Director
Dept. R440, Bldg. AP34
100 Abbott Park Road
Abbott Park, IL 60064-3500

13. <u>Indemnification</u>.  You agree to indemnify Abbott and its affiliates, employees, directors, officers and agents and hold them harmless against any liability, judgment, demand, action, suit, loss, damage, cost and other expense (including but not limited to reasonable attorneys' fees and court costs) ("Liability") resulting from any third party claims made or proceedings brought against Abbott to the extent such Liability arises as a result of Your negligence, willful misconduct or breach of the representations and warranties set forth in this Agreement.

14. <u>Miscellaneous</u>. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all previous agreements and undertakings with respect thereto. This Agreement may be modified only by written agreement signed by the parties. You may not assign this Agreement or any interest herein, or delegate any duty hereunder, to any third party without Abbott's prior written consent (which is in its sole discretion to grant or withhold). This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, excluding its conflicts of laws provisions.

AGREED:

AGREED:

ABBOTT LABORATORIES

RUSSELL PORTENOY, MD

By: _Joseph M Behout_

By: _____

Name: _Joseph M Behout_

Name: _____

Title: GPRD Outsourcing Manager

Title: _____

Date: _05 - Jan - 2006_

Date: _____

CONFIDENTIAL



Portenoy, MD, Russell
January 4, 2006

## EXHIBIT A

### Description of Professional Services

1. Scope of Project (detailed description of Services to be performed):

   You will act as a medical consultant on an as-needed basis to Abbott's Pain Care Team. Working in this capacity, You may be asked to provide input based on your experience in and knowledge of analgesia clinical trials and analgesia drug development, including but not limited to the following:

   • Review of clinical research protocols, from conceptual basis to finished product

   • Overall assessment of clinical development program

   • Development of Phase III program

   • Life-cycle management

   • Attend meetings and/or conference calls as needed when requested by Abbott

2. Deliverables/Timelines/Payment Terms:

| Deliverable(s) | Due Date/ Timeline | Payment Terms | Total |
|---|---|---|---|
| Medical consulting on an as-needed basis. | Timelines for completion will be mutually agreed upon for each request at the time it is made. | $500.00/hr. for a total of 50 hours | $25,000.00 |
| | | | |
| | | Subtotal | $25,000.00 |
| | | Travel and out-of-pocket expenses (not to exceed) | $2,000.00 |
| | | Total Compensation (not to exceed) | **$27,000.00** |

(Invoices must be submitted with all requests for payment)



Portenoy, MD, Russell
January 4, 2006

## EXHIBIT B

Invoice # _____

Statement for Services Provided in Accordance with the Professional Services Agreement

Period of _____, 200_

to

_____, 200_

| Number of Hours/Days Worked or Project Deliverable | Brief Description of Services Performed |
| --- | --- |
| | |
| | |
| | |
| | |
| | |
| | |
| AIRFARE | |
| GROUND TRANSPORTATION | |
| LODGING | |
| MEALS | |
| TELEPHONE | |

Total Costs: _____

Individual certifies that the Services described above, as more fully set forth in the Agreement, have been provided. Additional details and receipts are provided on the attached pages.

Signature: _____

Tax I.D. # _____

Date: _____

Template: PSA 05.02.2005
Document Title: 12445 FINAL.doc

**CONFIDENTIAL**

File Version: 1/4/2006 5:48 PM, 13,579

CONFIDENTIAL

RP_000308

# ABBOTT

Global Pharmaceutical Research and Development

*enter into agreement with BIMC for services of its employee*

Abbott Laboratories
100 Abbott Park Road
Abbott Park, Illinois 60064-3500

## PROFESSIONAL SERVICES AGREEMENT

Abbott Laboratories ("Abbott") desires to ~~retain~~ Russell Portenoy, MD ("You"), with an address of First Avenue at 15th Street, Department of Pain Medicine and Palliative Care, Beth Israel Medical Center, New York, NY  10003, and social security number 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, ~~as a consultant on the~~ *under the* following terms and conditions.

1   Professional Services. As Abbott reasonably directs, You shall perform the activities set forth in Exhibit A (attached hereto and made a part hereof), which may be amended in writing by the parties at any time (the "Services"). As Abbott may reasonably request, You shall submit written reports on the progress of the Services.

2.   Contacts. Your Abbott contact will be Victor Jorden, MD, MPH, or whomever Abbott may designate. Abbott's contact with You will be Russell Portenoy, MD.

3.   Compensation. In consideration for Your performance of the Services described in this Agreement, Abbott shall pay You an amount not to exceed Twenty-Seven Thousand Dollars ($27,000.00) during the term of this Agreement, as described in Exhibit A.  This total compensation is inclusive of all reasonable and necessary travel (coach class if by air, consistent with Abbott's travel policy) and out-of-pocket expenses (food, telephone calls and lodging, where applicable) as authorized by Abbott and incurred by You in performing the Services.  In the event of premature termination of this Agreement by Abbott, Abbott shall pay You for Services performed on a prorated basis and for all reasonable and necessary out-of-pocket expenses incurred by You through the date of termination. Abbott shall pay You upon receipt and approval of an invoice and appropriate receipts, similar to the form as set forth in Exhibit B attached hereto, containing reasonable documentation of Services performed by You.

4.   Compliance. In performance of the Services, You shall comply with all applicable laws, regulations and guidance documents including but not limited to rules governing healthcare programs. In addition, while on Abbott's premises You shall comply with Abbott's policies.

5.   Term and Termination. This Agreement shall be effective upon full execution by the parties and shall be effective for a period of one (1) year thereafter. Abbott may immediately terminate this Agreement without cause upon notice to You. Either party may terminate this Agreement immediately upon written notice to the other party in the event of a breach by the other party of a material provision of this Agreement that remains uncured thirty (30) days following receipt of notice of such breach from the non-breaching party. Termination or expiration of this Agreement shall not affect any rights or obligations which have accrued prior thereto or in connection therewith, or any obligations hereunder which by their terms should survive termination or expiration.

6.   Confidential Information. During the term of this Agreement and thereafter *for 3 years* You shall not disclose or use Confidential Information except as permitted in this Agreement or in writing by Abbott. You agree that any of Your employees, agents or subcontractors having access to the Confidential Information under this Agreement shall abide by the confidentiality obligations set forth in this Agreement. "Confidential Information" shall mean all information, data and materials concerning Abbott and the Services disclosed to You by or on behalf of Abbott, or developed as a result of Your performance of the Services, including but not limited to any individually identifiable health information, except any portion thereof which: (a) is known to You on a non-confidential basis before receipt thereof under this Agreement, as evidenced by Your written records; (b) is disclosed to You after acceptance of this Agreement by a third party having a right to make such disclosure in a non-confidential manner; or (c) is or becomes part of the public domain through no fault of Your own. You shall not disclose to Abbott any information which is confidential and/or proprietary to a third party without first obtaining the written consent of both such third party and Abbott. Upon the earlier of completion of the Services or termination or expiration of this Agreement, You shall return to Abbott all Confidential Information



Portenoy, MD, Russell
January 4, 2006

provided to You by or on behalf of Abbott, or developed by You as a result of Your performance of the Services, as requested by Abbott. Nothing in this Agreement shall be construed to restrict You from disclosing Abbott's Confidential Information as required by law or court order or other governmental order, provided in each case that You shall timely inform Abbott so that Abbott may seek a protective order.

7. **Deliverables and Work Product**. All reports, communications, material, information, innovations, inventions or discoveries (whether or not patentable or copyrightable) conceived, reduced to practice, made or developed by You solely or jointly with others in connection with Your performance of the Services shall be promptly disclosed to and be the sole property of Abbott, and You hereby assign to Abbott all right, title and interest therein without any obligation on Abbott to pay royalties or other remuneration therefore. To the extent the foregoing is copyrightable (including, without limitation, computer programs, source code, object code and supporting documentation), it shall be deemed a Work Made for Hire or alternatively a Specially Commissioned Work under the Copyright Act of 1976 and shall become and remain the sole property of Abbott. To the extent any such material may not be a Work Made for Hire, You agree to assign and do hereby assign such material to Abbott. At Abbott's request and expense, You shall execute such documents and take such other actions, as Abbott deems necessary or appropriate, to obtain, record or enforce patents, copyrights or assignments thereof in Abbott's name. Notwithstanding the foregoing, Abbott shall not acquire ownership of any materials, information, know-how, tools, models, methodologies, techniques and/or other intellectual property owned by You prior to Your performance of Services under this Agreement or that is licensed by You from any third party (all of the foregoing, "Pre-existing Intellectual Property"). You hereby grant to Abbott a non-exclusive, irrevocable, royalty-free worldwide license to use, modify, and enhance such Pre-existing Intellectual Property (including the right to sublicense) to the extent that such license is required to enable Abbott to make use of Your Services hereunder, including without limitation any deliverables and work product.

8. **Presentations, Publications and Publicity**. You shall not present or publish, nor submit for publication, any work ~~directly~~ resulting from the Services without Abbott's prior written approval. You shall not use Abbott's name in any publicity, advertising or announcement, or disclose the existence or terms of this Agreement, without Abbott's prior written consent (which is in its sole discretion to grant or withhold).

9. **Representation and Warranties**. Each party represents and warrants that: (a) neither this Agreement, nor any payment hereunder, is in exchange for any explicit or implicit agreement or understanding that You purchase, lease, order, prescribe, recommend or otherwise arrange for, or provide formulary or other preferential or qualifying status for the use of Abbott products; and (b) the total payment for the Services represents the fair market value for the Services and has not been determined in any manner that takes into account the volume or value of any referrals or business between You and Abbott. You represent and warrant that if the scope of Services includes promotional speaking about Abbott's products, the contents of the presentation will be within approved product labeling. You represent and warrant that the terms of this Agreement are not inconsistent with any other contractual or legal obligations You may have or with the policies of any institution with which You are associated, and that You have obtained approval from the institution(s) with which You are associated for Your provision of the Services, including the compensation to be paid to You hereunder. If You are an employee or special employee of any government, You acknowledge that:

   a. Abbott is not offering this compensation because of Your official position, or

   b. Abbott is offering this compensation because of Your official position and You have received written authorization from Your agency's ethics official or an internal agency procedure exists authorizing acceptance of such compensation.

If b. above, attach authorization or copy of internal agency procedure, as applicable, to this document.

CONFIDENTIAL
RP_000310

JAN-23-2006  14:18                                                    P.04/07



Portenoy, MD, Russell
January 4, 2006

10. <u>Debarment and Exclusion</u>. You represent and warrant that neither You, nor any of Your employees or agents performing Services hereunder, have ever been, are currently, or are the subject of a proceeding that could lead to You or such employees or agents becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual. You further covenant, represent and warrant that if, during the term of this Agreement, You, or any of Your employees or agents performing Services hereunder, become or are the subject of a proceeding that could lead to that party becoming, as applicable, a Debarred Entity or Individual, an Excluded Entity or Individual or a Convicted Entity or Individual, You shall immediately notify Abbott, and Abbott shall have the right to immediately terminate this Agreement. This provision shall survive termination or expiration of this Agreement. For purposes of this provision, the following definitions shall apply:

   a. A "Debarred Individual" is an individual who has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from providing services in any capacity to a person that has an approved or pending drug product application.

   b. A "Debarred Entity" is a corporation, partnership or association that has been debarred by the FDA pursuant to 21 U.S.C. §335a (a) or (b) from submitting or assisting in the submission of any abbreviated drug application, or a subsidiary or affiliate of a Debarred Entity.

   c. An "Excluded Individual" or "Excluded Entity" is (i) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal health care programs such as Medicare or Medicaid by the Office of the Inspector General (OIG/HHS) of the U.S. Department of Health and Human Services, or (ii) an individual or entity, as applicable, who has been excluded, debarred, suspended or is otherwise ineligible to participate in federal procurement and non-procurement programs, including those produced by the U.S. General Services Administration (GSA).

   d. A "Convicted Individual" or "Convicted Entity" is an individual or entity, as applicable, who has been convicted of a criminal offense that falls within the ambit of 21 U.S.C. §335a(a) or 42 U.S.C. §1320a - 7(a), but has not yet been excluded, debarred, suspended or otherwise declared ineligible.

11. <u>Independent Contractor</u>. Your status under this Agreement is that of an independent contractor. You shall not be deemed an employee, agent, partner or joint venturer of Abbott for any purpose whatsoever, and You shall have no authority to bind or act on behalf of Abbott. This Agreement shall not entitle You to participate in any benefit plan or program of Abbott. You shall be responsible for, and agree to comply with, obligations under all applicable tax laws for payment of income and, if applicable, self-employment tax. You are not entitled to worker's compensation coverage by Abbott, and You hereby waive any and all rights You may have to be covered under Abbott's worker's compensation policies.

12. <u>Notices</u>. All notices hereunder shall be in writing and shall be either deposited in the United States mail, certified mail, return receipt requested with postage paid, or personally delivered by express courier or faxed as follows:

   If to You, address to:

   Russell Portenoy, MD
   Department of Pain Medicine and Palliative Care
   First Avenue at 16th Street
   New York, NY 10003

CONFIDENTIAL

RP_000311

Portenoy, MD, Russell
January 4, 2006

**If to Abbott, address to:**

Abbott Laboratories
Victor Jorden, MD, MPH
Medical Director
Dept. R440, Bldg. AP34
100 Abbott Park Road
Abbott Park, IL 60064-3500
Phone: 847-935-7775
Fax: 847-935-7633

**With a copy to:**

Abbott Laboratories
Divisional Vice President
Domestic Legal Operations
D322, Bldg. AP6D
100 Abbott Park Road
Abbott Park, IL 60064
Fax: -847-938-1206

**Invoices shall be sent to:**

Abbott Laboratories
Victor Jorden, MD, MPH
Medical Director
Dept. R440, Bldg. AP34
100 Abbott Park Road
Abbott Park, IL 60064-3500

13. <u>Indemnification.</u> You agree to indemnify Abbott and its affiliates, employees, directors, officers and agents and hold them harmless against any liability, judgment, demand, action, suit, loss, damage, cost and other expense (including but not limited to reasonable attorneys' fees and court costs) ("Liability") resulting from any third party claims made or proceedings brought against Abbott to the extent such Liability arises as a result of Your negligence, willful misconduct or breach of the representations and warranties set forth in this Agreement.

14. <u>Miscellaneous.</u> This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes all previous agreements and undertakings with respect thereto. This Agreement may be modified only by written agreement signed by the parties. You may not assign this Agreement or any interest herein, or delegate any duty hereunder, to any third party without Abbott's prior written consent (which is in its sole discretion to grant or withhold). This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, excluding its conflicts of laws provisions.

AGREED:

ABBOTT LABORATORIES

By: _Joseph M Bebaff_

Name: _Joseph M Bebaff_

Title: GPRD Outsourcing Manager

Date: _05 - Jan - 2006_

AGREED:

RUSSELL PORTENOY, MD

By: _____

Name: _____

Title: _____

Date: _____

CONFIDENTIAL

RP_000312


Portenoy, MD, Russell
January 4, 2006

## EXHIBIT A

### Description of Professional Services

1.  Scope of Project (detailed description of Services to be performed):

    You will act as a medical consultant on an as-needed basis to Abbott's Pain Care Team. Working in this capacity, You may be asked to provide input based on your experience in and knowledge of analgesia clinical trials and analgesia drug development, including but not limited to the following:

    - Review of clinical research protocols, from conceptual basis to finished product
    - Overall assessment of clinical development program
    - Development of Phase III program
    - Life-cycle management
    - Attend meetings and/or conference calls as needed when requested by Abbott

2.  Deliverables/Timelines/Payment Terms:

| Deliverable(s) | Due Date/ Timeline | Payment Terms | Total |
|---|---|---|---|
| Medical consulting on an as-needed basis. | Timelines for completion will be mutually agreed upon for each request at the time it is made. | $500.00/hr. for a total of 50 hours | $25,000.00 |
| | | Subtotal | $25,000.00 |
| | | Travel and out-of-pocket expenses (not to exceed) | $2,000.00 |
| | | Total Compensation (not to exceed) | $27,000.00 |

(Invoices must be submitted with all requests for payment)

Template: PSA 05.02.2005
Document Title: 12445 FINAL.doc

CONFIDENTIAL

File Version: 1/4/2006 5:43 PM, 13,579

## CONFIDENTIAL

RP_000313



Portenoy, MD, Russell
January 4, 2006

## EXHIBIT B

Invoice # _____

Statement for Services Provided in Accordance with the Professional Services Agreement

Period of _____, 200_

to

_____, 200_

| Number of Hours/Days Worked or Project Deliverable | Brief Description of Services Performed |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| AIRFARE | |
| GROUND TRANSPORTATION | |
| LODGING | |
| MEALS | |
| TELEPHONE | |

Total Costs: _____

Individual certifies that the Services described above, as more fully set forth in the Agreement, have been provided. Additional details and receipts are provided on the attached pages.

Signature: _____

Tax I.D. # _____

Date: _____

Template: PSA 05.02.2005
Document Title: 12445 FINAL.doc

CONFIDENTIAL

File Version: 1/4/2006 5:48 PM, 13,579

CONFIDENTIAL



Vital Issues in Medicine

A PDI Company

Montgomery Corporate Center
200 Dryden Road, Building #2
Suite 3100
Dresher, PA 19025
Tel: 800.225.5046  Fax: 215.283.2380

www.pdi-inc.com

May 23, 2007

Russell K. Portenoy, MD
Department of Pain Medicine and Palliative Care
Beth Israel Medical Center
First Avenue at 16th Street
New York, NY  10003

Dear Doctor Portenoy:

Enclosed please find your honorarium check in the amount of $2500 for your final draft of the CME Pain Management Medical Center Briefing slides.

Please let us know if there are any questions or concerns by contacting us at 1-888-837-8879 or e-mail at dwalker@vimcme.com.  Again, your time and expertise are greatly appreciated adding to the success of our activities.

Warm Regards,

Denise C. A. Walker
Expert Relations Specialist

Encl.

CONFIDENTIAL

### FIRST AMENDMENT TO THE CLINICAL TRIAL AGREEMENT
### BETWEEN ENDO PHARMACEUTICALS INC.,
### BETH ISRAEL MEDICAL CENTER
### and
### DR. RUSSELL PORTENOY
### Protocol: EN3267-005

**This First Amendment** to the Clinical Trial Agreement by and between Endo Pharmaceuticals Inc. ("Endo"), **Beth Israel Medical Center** ("Institution"), and **Dr. Russell Portenoy** ("Principal Investigator") is effective as of this 3rd day of January, 2007 (this "Amendment").

**WHEREAS**, Endo, Institution and Principal Investigator entered into an agreement dated the 13th day of March, 2006 (the "Agreement"), whereby Institution and Principal Investigator agreed to perform a clinical study on behalf of Endo as set forth therein; and

**WHEREAS**, Endo, Institution and Principal Investigator desire to amend Exhibit A and Exhibit B, Study Budget, Payment Schedule and Procedures.  Therefore, the Agreement shall be amended as set forth below.

**NOW THEREFORE**, for good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.  Unless set forth herein, the capitalized terms contained in this Amendment shall have the meanings set forth in the Agreement.

2.  Exhibit A of the Agreement shall be deleted and restated in its entirety as set forth in the amended Exhibit A attached hereto and made a part hereof.

3.  Exhibit B of the Agreement shall be deleted and restated in its entirety as set forth in the amended Exhibit B attached hereto and made a part hereof.

4.  Except as expressly provided herein, all other terms, provisions, conditions and covenants contained in the Agreement shall remain in full force and effect.

**IN WITNESS WHEREOF**, Endo, Institution and Principal Investigator have executed this Amendment as of the day and year first written above.

ENDO PHARMACEUTICALS INC.

By:_____
Roland Gerritsen van der Hoop, M.D., Ph.D.
Senior Vice President,
R&D and Regulatory Affairs

BETH ISRAEL MEDICAL CENTER

By: _____
Name: _____
Title: _____

PRINCIPAL INVESTIGATOR

By: _____
Name:  Dr. Russell Portenoy

# CONFIDENTIAL

**Exhibit A**

**Study Budget, Payment Schedule and Procedures**

Protocol Number: **EN3267-005**          Institution: **Beth Israel Medical Center**
Principal Investigator: **Russell Portenoy, M.D.**
Maximum Total Reimbursement: $17,159.00 per completed Subject

Institution acknowledges that the Study is part of a multi-center clinical trial, and agrees that when the enrollment goal for the clinical trial as a whole is reached, enrollment will be closed at all sites, including Institution, regardless of whether Institution or any other site has reached its individual enrollment goal. The anticipated screening/enrollment rate is approximately 1 Subject per month. It is also anticipated that each site will enroll a minimum 3.5 evaluable, eligible Subjects over a six (6) month enrollment period.

## Payments

I.      ADVANCE PAYMENT                    $5905.86 (to be paid)
                                          + $11253.14 (previously paid)
                                           $17,159.00 Advance Total Payment

Upon receipt and approval of all regulatory documents, receipt of this signed Clinical Trial Agreement, completion of the initiation visit and Institution's receipt of Study Drug, Endo or its designee shall forward a payment of $5905.86 to the representative below. This Advance Payment is a refundable advance payment for the first Subject enrolled and will be credited toward future payments made to Institution. If Institution does not enroll at least one (1) Subject into the Study within eight (8) weeks of the date of its receipt of the Study Drug, this Agreement may be immediately terminated by Endo and Institution shall refund to Endo or its designee the total $17,159.00 Advance Payment.

II.     PER SUBJECT PAYMENT                              up to $17,159.00

Per Subject payments shall be made for evaluable, eligible Subjects only. An eligible Subject is one who meets the inclusion/exclusion requirements of the Protocol, who was enrolled by Institution and from whom Informed Consent and HIPAA Authorization have been obtained. An evaluable Subject is one for whom all CRFs have been completed in accordance with the Protocol, who has completed the appropriate Study procedures as set forth in the Protocol and who has undergone the evaluations required by the Protocol for assessment of efficacy and safety.

Endo or its designee will review Institution's account on a monthly basis to determine if any per subject payments have been earned during the preceding month. Any such earned payments will be forwarded to Institution by Endo or its designee to the address below. Endo or its designee shall pay Institution the per subject payments for evaluable, eligible Subjects who have completed the milestones set forth below:

$3,525.00  upon completion of all Study related procedures for the Screening and Open Label Titration
             Visits (Visit 1 – Visit 3)

$1,720.00  upon completion of all Study related procedures for the Double Blind Treatment Phase
             (Visit 4 - Visit 5)

$3,034.00  upon completion of 3 months of treatment for an interim analysis of the data (Visit 6 – Visit 8)

$8,880.00  upon completion of all Study related procedures for the 12 Month Extension Phase and the
             final evaluations and procedures required to be performed during the End of Study/Early
             Termination visit (Visit 18/End of Study) in accordance with the protocol and upon Endo or its

# CONFIDENTIAL

RP_000317

designee's satisfactory review of all Study Documentation, including completed CRFs and close-out audits/procedures.  (Visit 9 – Visit 18)

No payment will be made for Subjects with unsatisfactory CRFs or unresolved data deficiencies in Study Documentation.  A completed CRF is one that is signed by the Principal Investigator when required and contains all completed verified information in accordance with the procedures and scheduled assessments as stated in the Protocol.  If it is determined that Endo or its designee has paid Institution for a Subject who is deemed non-evaluable during final data review, Endo or its designee will adjust the final payment to reflect such overpayment.  Institution agrees to refund any overpayments to Endo or its designee.

In the event a Subject does not complete the entire Study and is not a screen failure, Endo or its designee shall compensate Institution on a per-subject prorated basis based on visits completed in accordance with the Protocol (a schedule of visits are attached hereto as Exhibit B).

Endo or its designee will provide reimbursement for up to three (3) Screen Failures at Institution rate of $1,905.00 per Screen Failure once two (2) evaluable subjects have been enrolled.  Thereafter, reimbursement will be provided for three (3) additional Screen Failures for every five (5) evaluable subjects enrolled.  A Screen Failure is defined as a Subject who has signed the Informed Consent and HIPAA Authorization and who has undergone screening procedures to determine eligibility to participate and has undergone Baseline Phase Study procedures, but was not entered into the double blind phase of the study.  Any additional payments for screen failures will be at Endo's discretion.

III.     PAYMENT FOR IRB

Costs associated with submissions to Sterling IRB will be paid by Endo or its designee directly to the Sterling IRB on Institution's behalf upon receipt of a correct invoice from Sterling IRB.  If the Institution utilizes a Local IRB then the fees will be paid once the correct invoice is received from the Local IRB of the Institution.

IV.     NO PAYMENT PROVIDED

No payment will be provided in the event Subjects are:

- Lost to Follow Up
- Non-evaluable
- Protocol violators

due to the fault of Institution or Principal Investigator.

All payments required hereunder shall be made payable to **Beth Israel Medical Center**, Inc., Tax I.D. No. 13-5564934, and mailed to:

Beth Israel Medical Center
First Avenue at 16 Street
New York, NY 10003
Attention: Marisa Steffers, Administrator

CONFIDENTIAL

For Internal Use Only

# HONORARIUM AND EXPENSE REQUEST FORM

TO: Interactive Forums, Inc.
Attn: Elizabeth Ludwig, Project Manager
150 Monument Road, Suite 610
Bala Cynwyd, PA 19004

RE: **Russell Portenoy, MD**
Cancer Care Management Advisory Board
(GEN0023A)
Westin New York at Times Square
New York, NY
December 10, 2007

## List of reimbursable expenses:

Receipts must be submitted for all expenses (except mileage). Reimbursements will not be processed without applicable receipts. Sign below to verify the information is correct.

TRAVEL:

| | |
|---|---|
| Ground Transportation | $ 24 00 |
| Personal Auto @ $.485/mile | $_____ (no receipt required) |
| Parking | $_____ |
| Other* | $_____ |
| Honorarium | $_____ |
| **Total reimbursable expenses** | $_____ |

*Explanation/Detail:

## Check information: (please print clearly)

First Name: _Russell_     Last Name: _PORTENOY_

Degree(s): _MD_     Check payable to: _R Portenoy_

Mailing Address: ____ Home   ✓ Work

Address: _Dept of Pain Medicine and Palliative Care  Beth Israel Medical Ctr_

City: _First Ave at 16th St  New York_     State: _NY_   Zip Code: _10003_

Country: _USA_

Social Security Number (or Tax ID Number if corporate):     REDACTED

Signature: _____

E-Mail Address: _RPortenoy@chpnet.org_

interactive forums inc.

RP_000319

# EXPENSE REPORT

R·O·I
Media Group, Inc.

101 Washington Street, Ste. 110
Monroeville, PA 19067
Phone: 800-397-9774
Fax: 800-329-9755

NOTE: ATTACH RECEIPTS FOR ALL INDIVIDUAL EXPENSES OF $10.00 OR MORE & FAX TO ABOVE NUMBER LISTED.

Name: (Print or Type)

Fully Signature

Russell McKinney

Destination/Purpose

Date 6/26/07

ADJUSTMENTS

Mileage is calculated at $0.445/mile

| Date | Destination/Purpose | Miles | Amount | Tolls, Parking | Travel Taxi/ Rental Car | Airfare/ Rail | Telephone | Supplies | Meals | Lodging | Enter-tainment (explain below) | Other Expenses (Attachment A) | TOTAL |
|------|---------------------|-------|--------|---------------|------------------------|---------------|-----------|----------|-------|---------|------------------------------|-------------------------------|-------|
| | | | | | $51 | | | | B L D | | | | |
| | | | | | | | | | B L D | | | | |
| | | | | | | | | | B L D | | | | |
| | | | | | | | | | B L D | | | | |
| | | | | | | | | | B L D | | | | |
| | | | | | | | | | B L D | | | | |
| | | | | | | | | | B L D | | | | |
| TOTALS AMOUNTS | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

Personal Car

Client _____ ICPCD

Approval Signature

Job Number

No. of Meals   No. of Nights

Total Reimbursement Due

$51.?

TOTAL

Contact TLC Dial
3-1-1

I ♡ NEW YORK
MED #            3N80
DATE: 06-21-2007
START TIME 12:36
END TIME 13:08
TRIP #           94
RATE No.          1
MILES          12.54
FARE $         16.50

CONFIDENTIAL

RP_000320



January 3, 2007

<u>VIA FIRST CLASS MAIL</u>

Russell K. Portenoy, MD
Beth Israel Medical Center
First Ave. at 16th St.
New York, NY 10003

Dear Dr. Portenoy:

On behalf of Biovail and Clarus Health, I would like to thank you for participating in the advisory board, *Exploring New Treatment Options in Pain Management: A Multi-disciplinary Advisory Board.* We believe the meeting was very productive and you provided Biovail with valuable insight regarding emerging therapies in pain management.

For your preparation and participation, enclosed please find a consulting fee in the amount of $4,500. I am also enclosing an extra Expense Reimbursement Form.

Again, it was a pleasure working with you. We appreciate your contribution and would welcome the opportunity to work together again in the future.

Regards,

David Duvall
Partner

Enclosures

CONFIDENTIAL

Roseland, New Jersey 07068  973-830-8400  973-830-8484 fax  www.clarushealth.com



Dear Dr Portenoy:

On behalf of the Johns Hopkins University School of Medicine and Advanced Strategies in Medicine, we would like to thank you for your participation in the ***Breakthrough Pain Curriculum Development Workshop***, held on January 20, 2007, at The Ritz-Carlton New York, Central Park. The workshop was a great success, and we sincerely appreciate your contribution. We look forward to working with you again in the near future.

Enclosed is your honorarium in the amount of $3,000.00.

If you have any out-of-pocket expenses, please submit your reimbursement form by February 19, 2007 to:

Ethan Covey
Senior Account Executive
Advanced Strategies in Medicine
545 West 45th Street, 8th Floor
New York, NY
Fax: 212-957-7230

Should you have any questions, please feel free to contact me at 212-957-5300 x388 or at ecovey@mcmahonmed.com.

Best regards,

Ethan Covey
Senior Account Executive
Advanced Strategies in Medicine
*A McMahon Group Company*
545 West 45th Street, 8th Floor
New York, NY 10036
Phone: 212-957-5300 x388
Fax: 212-957-7230
ecovey@mcmahonmed.com

CONFIDENTIAL



January 12, 2007

Russell K. Portenoy, MD
Chairman, Department of Pain Medicine and Palliative Care
Beth Israel Hospital
1st Avenue At 16th Street
Dept Pain Med & Pltv Care
New York, NY 10003

Dear Dr. Portenoy:

On behalf of Alpharma Branded Products Division Inc., thank you for taking time out of your busy schedule to join us in Washington, DC, for the Advisory Board Meeting on Legal and Ethical Issues.

Enclosed is your honorarium and expense check in the amount of $3030.00 for attending the meeting.

It was a very productive meeting and we appreciate your participation and feedback on the legal, ethical, and societal ramifications of long-term treatment with opioid medications. Your involvement is important to Alpharma as they move forward in our goal of developing strategies that will help meet the rigorous ethical, legal, and regulatory standards of the current pain management environment, while maintaining appropriate access to pain medications to patients with chronic pain.

Again, thank you for your participation. We look forward to working with you again.

Kind regards,

Christopher Lewis
Senior Program Manager
Genesis Healthcare

Enclosure

CONFIDENTIAL

RP_000323



January 11, 2007

Russell K. Portenoy, MD
15 Glenn Place
Hastings on Hudson, NY 10706

Dear Dr. Portenoy:

Thank you for your valuable contributions as faculty of the NIDA Editorial Development Teleconference, "*Appropriate Use of Opioid Analgesics in Chronic Pain Management*". We are pleased to enclose check number 44265 in the amount of $750.00 representing your honorarium for the teleconference. There will be an additional $1500 honorarium for your help in editing the manuscript based on the teleconference.

It has been a pleasure to work with you on this program.

Best regards,

Dan Duch, PhD
Project Manager
E-mail: dduch@ascendmedia.com

Enclosure

cc:    A. Duncan (IMED)
       K. Hofbeck (IMED)

CONFIDENTIAL

RP_000324



Excellence in Medical Education Since 1984

405 Trimmer Rd.
PO Box 458
Califon, NJ 07830
Phone: 908-832-2247
Fax: 908-832-7098
www.synermed.com

June 25, 2007

Russell K. Portenoy, MD
Chair, Department of Pain Medicine and Pallative Care
Beth Israel Medical Center
First Avenue at 16th Street
New York, NY 10003

Dear Dr. Portenoy:

Thank you for your participation at the satellite symposium entitled *Chronic Pain, Addiction, and the Law* held in conjunction with the 7th International Conference on Pain and Chemical Dependency (ICPCD) Annual Meeting in New York, New York on June 23, 2007.

Enclosed please find check #49970 in the amount of $2,500 which is your honorarium check for your participation.

Best regards,

Kris Newman
Director
SynerMed® Communications
An Ascend Media Company

CONFIDENTIAL



October 23, 2007


Russell K. Portenoy, MD
Department of Pain Medicine
Beth Israel Medical Center
First Avenue at 16th Street
New York, NY   10003

CME Pain Initiative - Honorarium


Dear Dr. Portenoy,

Thank you very much for your active support of our CME Pain Initiative. Under
your course direction we have produced a well-received, multi-format education
series.

Enclosed please find your honorarium of $4,000. We appreciate the time and
expert guidance you have provided and look forward to working with you again
in the future.


Best regards,

*Mary*

Mary Clark
Director of Strategic and Client Services
Health Education Alliance, Inc


CONFIDENTIAL

**PROmedica Communications, Inc**
33 East 33rd Street
New York, New York 10016
ph (212) 835-2160  fax (212) 545-1378



October 9, 2007

Dear Dr. Portenoy,

On behalf of Auxilium Pharmaceuticals and PROmedica Communications Inc., I would like to thank you for attending the Chronic Pain Advisory Board Meeting which met at The Carlyle in August.

As a valued expert, we would like to continue our relationship with you and possibly work with you in future activities. We hope you'll welcome that opportunity.

Enclosed please find a check with your honorarium and reimbursement for the out-of-pocket expenses you incurred while in New York.  Please let me know if you have any questions.  It was a pleasure working with you.

We look forward to working with you again.

Sincerely,

Michelle Dien
Project Director
Tel: 646-383-1009
E-mail: mdien@fbhc.org

# CONFIDENTIAL



**ADVANCED
STRATEGIES
IN MEDICINE**
A McMahon Group Company

November 6, 2007

Russell K. Portenoy, MD
450 East 63rd Street
New York, NY 10021

Dear Dr. Portenoy:

On behalf of the Johns Hopkins University School of Medicine and Advanced Strategies in Medicine, I would like to thank you for participating in the CME program *Meet the Patients: Individualizing Therapy for Persistent and Breakthrough Pain.*

Enclosed is your honorarium in the amount of $2,000.00.

Should you have any questions, please feel free to contact me at 212-957-5300 x 290 or at ngallagher@mcmahonmed.com.

With warm regards,

Natalie M. Gallagher
Senior Account Executive
Advanced Strategies in Medicine
*A McMahon Group Company*

CONFIDENTIAL

RP_000328



**VIM®**

Vital Issues in Medicine

A PDI Company

Montgomery Corporate Center
200 Dryden Road, Building #2
Suite 3100
Dresher, PA 19025
Tel: 800.225.5846  Fax: 215.283.2380

www.pdi-inc.com

June 8, 2007

Russell K. Portenoy, MD
Department of Pain Medicine and Palliative Care
Beth Israel Medical Center
First Avenue at 16th Street
New York, NY  10003

Dear Doctor Portenoy:

Enclosed please find your honorarium check in the amount of $2000 for the development of the Journal Supplement for the CME Pain Management project.  Final payment will be sent once you have completed the Journal.

Please let us know if there are any questions or concerns by contacting us at 1-888-837-8879 or e-mail at dwalker@vimcme.com.  Again, your time and expertise are greatly appreciated adding to the success of our activities.

Warm Regards,

Denise C. A. Walker
Expert Relations Specialist

Encl.

CONFIDENTIAL

RP_000329



Excellence in Medical Education Since 1984

518 Route 513
PO Box 458
Califon, NJ 07830
Phone: 908-832-2247
Fax: 908-832-6912
www.synermed.com

August 23, 2007

Russell K. Portenoy, MD
Chair, Department of Pain Medicine and Pallative Care
Beth Israel Medical Center
First Avenue at 16th Street
New York, NY 10003

Dear Dr. Portenoy:

We wish to express our sincere appreciation to you for your time and dedication in authoring the ICPCD journal supplement *Chronic Pain, Addiction, and the Law*. This journal supplement is based on the proceedings from the satellite symposium held June 23, 2007, in conjunction with the 7th International Conference on Pain and Chemical Dependency. It will be published in the September issue as a dedicated journal supplement for *Practical Pain Management*.

We truly appreciate all your efforts and cooperation in maintaining an extremely difficult publication deadline, and we are very pleased to enclose your honorarium check #51628 in the amount of $2,500. Once again, thank you for your dedicated contribution toward this educational endeavor.

Best regards,

Lina Cresci
Assistant Project Manager
SynerMed® Communications
An Ascend Media Company

CONFIDENTIAL


**VIM** ®

Vital Issues in Medicine

A PDI Company

Montgomery Corporate Center
200 Dryden Road, Building #2
Suite 3100
Dresher, PA 19025
Tel: 800.225.5846  Fax: 215.283.2380

www.pdi-inc.com

December 12, 2007

Russell K. Portenoy, MD
Department of Pain Medicine and Palliative Care
Beth Israel Medical Center
First Avenue at 16th Street
New York, NY  10003

Dear Doctor Portenoy:

Enclosed please find your final honorarium check in the amount of $2000 for the
development of the Journal Supplement for the CME Pain Management project.

Please let us know if there are any questions or concerns by contacting us at
1-888-837-8879 or e-mail at dwalker@vimcme.com.  Again, your time and expertise are
greatly appreciated adding to the success of our activities.

Warm Regards,

Denise C. A. Walker
Expert Relations Specialist

Encl.

CONFIDENTIAL

RP_000331



**VIM** ®

Vital Issues in Medicine

A PDI Company

Montgomery Corporate Center
200 Dryden Road, Building #2
Suite 3100
Dresher, PA 19025
Tel: 800.225.5846 Fax: 215.283.2380

www.pdi-inc.com

March 9, 2007

Russell K. Portenoy, MD
Department of Pain Medicine and Palliative Care
Beth Israel Medical Center
First Avenue at 16th Street
New York, NY 10003

Dear Doctor Portenoy:

Enclosed please find your honorarium check in the amount of $2500 for your initial draft of the CME Pain Management slides. Again, final payment will be sent once you have completed the slides.

Please let us know if there are any questions or concerns by contacting us at 1-888-837-8879 or e-mail at dwalker@vimcme.com. Again, your time and expertise are greatly appreciated adding to the success of our activities.

Warm Regards,

Denise C. A. Walker
Expert Relations Specialist

Encl.

CONFIDENTIAL

## RUSSELL K. PORTENOY, M.D.
## CONFIDENTIALITY & CONSULTING AGREEMENT

This Consulting Agreement (the "Agreement") is entered into this 11th day of December, 2007 by and between King Pharmaceuticals, Inc., with an office located at 501 Fifth Street, Bristol, Tennessee 37620 (hereinafter referred to as "Company"), and Russell K. Portenoy, M.D., with an address of 15 Glenn Place, Hastings on Hudson, New York 10706 (hereinafter referred to as "Consultant").

**WHEREAS**, Company is interested in responses to the following questions: (1) Are the risks of misuse, abuse and diversion observed with Avinza® acceptable, and (2) Is the Avinza® Risk Management Program ("RMP") appropriate at this time?;

**WHEREAS**, Consultant is an individual who has extensive knowledge, experience and insight related to clinical issues related to pain management; and

**WHEREAS**, Company desires to obtain, and Consultant desires to provide, professional consulting services of the type described below.

**NOW, THEREFORE**, in consideration of the foregoing and the covenants contained herein, the parties hereto agree as follows:

I.    DUTIES OF CONSULTANT

A.    Services.  In consideration of the compensation provided to Consultant hereunder, Consultant agrees to perform the services listed in Exhibit A (the "Services"), which is attached hereto and made a part hereof as if set forth in full herein, as reasonably requested by Company.

B.    Representations and Warranties.  Consultant represents, warrants and covenants that:

1.    Consultant has extensive knowledge, experience and insight related to clinical issues replated to pain management within the scope of his/her licensure;

2.    Consultant is not subject to exclusion, suspension, or debarment from any federal or state program. Consultant shall immediately notify the Company if he/she becomes excluded, suspended or debarred or if exclusion, suspension or debarment is proposed during the term of the Agreement or any extension hereof;

3.    Consultant has not and is not subject to adverse action, suspension, revocation, termination or other similar action, whether taken or pending, by any state medical board (e.g., licensure), medical society, medical association or accrediting body. Consultant shall immediately notify the Company if such suspension, revocation or termination is proposed or taken during the term of the Agreement or any extension hereof;

CONFIDENTIAL

RP_000333

4.      Consultant has not been: (a) charged with; (b) convicted of; (c) or pleaded guilty; or (d) pleaded no contest to any criminal offense whether a felony or misdemeanor. Consultant shall immediately notify the Company if he/she is charged with, convicted, pleads guilty to, or pleads no contest to a criminal offense, whether or not related to the practice of medicine or this Agreement, during the term of the Agreement or any extension hereof;

5.      There are no pending or completed administrative agency, government, or court cases, decisions or judgments involving allegations that Consultant failed to comply with laws, statutes, regulations or other legal requirements that may be applicable to the practice of Consultant's profession or rendition of services to patients. Consultant shall immediately notify the Company in the event any such allegations are made during the term of the Agreement or any extension hereof;

6.      The rights and services covered by this Agreement are not in violation of any other agreement with any other party or of any other lawful restriction of any kind;

7.      Consultant shall observe and comply with all applicable laws and regulations pertaining to the Services to be rendered pursuant to this Agreement;

8.      Consultant is in full compliance with all applicable rules, regulations, policies and procedures of his/her employer, if any, including, but not limited to the governing ethics rules, regarding: (a) the provision of services to the Company pursuant to this Agreement; (b) acceptance of payment from the Company or its designee for the provision of services pursuant to this Agreement; (c) receipt of reimbursement for expenses incurred pursuant to this Agreement, if any; and (d) conflict of interest;

9.      Consultant has obtained any necessary approval of an appropriate ethics officer and, as necessary, supervisor, to enter into this Agreement;

10.      Consultant has and shall have the unrestricted right to disclose any information he/she submits to Company, free of all claims of third parties, and such disclosures do not and shall not breach or conflict with any confidentiality provisions of any agreement to which Consultant is a party; and

11.      Consultant is duly licensed and in good standing as a healthcare provider in the following states:

| State | Licensure (e.g., PA) | ME/Licensure/Registration # | UPIN# |
|---|---|---|---|
| New York | M.D. | 146475-1 | A97575 |

Consultant shall immediately notify the Company if, during the term of this Agreement, her/his licensure is suspended, revoked or terminated or if suspension, revocation, or termination is proposed during the term of the Agreement or any extension hereof.

2

CONFIDENTIAL

C.    Materials Produced Under Agreement.    Consultant agrees that all materials provided to, produced for, or at the request of Company under this Agreement, shall be considered works made for hire and the property of Company.  All materials provided to Consultant and/or produced under this Agreement shall be and remain the property of Company whether or not registered.

D.    Compliance with FDA Requirements.    If Consultant performs presentations for Company hereunder, Consultant agrees that such presentations shall be objective, balanced, scientifically rigorous and consistent with approved prescribing information for any Company products discussed.

1.    Consultant agrees not to initiate or encourage discussions regarding unapproved uses of Company' products, provided however, Consultant may, during his/her presentations, respond to unsolicited questions from the audience regarding such unapproved uses in a fair and balanced manner so long as Consultant mentions in his/her answer that the use (a) is not endorsed by the Company, and (b) has not been reviewed or approved by FDA; and keep the answer focused on the specific question asked (and not expand into a larger discussion of off-label uses in general).  Once the Consultant has addressed the question, the Consultant must return to the general (on-label) discussion contained in the approved slide deck.

2.    If Company provides Consultant with any materials, Consultant agrees not to alter the materials in any way without the prior written approval of Company.

3.    In all presentations made in respect of Company' products, whether or not such presentations are directly sponsored or funded by Company, Consultant agrees to disclose that he/she is a paid speaker for Company.

4.    For states that require lobbyist registration and/or disclosure requirements (e.g., Louisiana and Florida), if any, Consultant shall appropriately, accurately and timely complete and file the necessary registration and/or disclosure documents with the applicable authorities, agencies, and other such entities; and

5.    Consultant shall cooperate with the Company or its designee to perform all such tasks necessary to ensure appropriate, timely, and complete filing of such registration and/or disclosure documents as may be requested by the Company from time to time.

6.    Consultant hereby agrees to the use by Company or its designee, where applicable, if at all, of Consultant's name, photo, and biography for purposes of promoting an event at which the Consultant presents Company product information pursuant to this Agreement.

E.    Videotaping.    Consultant understands, agrees and acknowledges that in the course of the provision of Services hereunder, the Company may film, videotape, photograph, or otherwise memorialize the provision of Services hereunder. Consultant understands, agrees, acknowledges and consents to such filming, videotaping and photography of his participation and waives all publicity and privacy rights thereto. Consultant understands, agrees and

3

CONFIDENTIAL

acknowledges that he shall not receive any fee, royalty, payment or compensation, monetary or otherwise, now or in the future, for such filming, videotaping, photography, memorialization or the provision of Services hereunder, in any medium or in any form. Consultant understands, agrees and acknowledges that the Company shall own all rights of copyright to any such films, photographs, videotapes, memorializations, and reproductions.

## II.    COMPENSATION

A.    <u>Compensation</u>.  For Services provided by Consultant in accordance with this Agreement, Company or its designee shall pay Consultant, and Consultant shall accept as payment in full, the compensation set forth in <u>Exhibit B</u> attached hereto.  The parties agree and acknowledge that the compensation paid to Consultant hereunder constitutes fair market value and that the compensation:

1.    has not been determined in a manner that takes into account the volume or value of any orders, purchases or referrals made, or expected to be made, or business generated for Company or its affiliates' products by Consultant, by others under Consultant's direction or control, or by any institution with which Consultant is affiliated; and

2.    is not being given in exchange for any explicit or implicit agreement by Consultant, Consultant's business partners, others under Consultant's direction or control, or any institution with which Consultant is affiliated, to provide a favorable formulary or procurement decision with respect to Company or its affiliates products.

B.    <u>Expenses</u>.  Consultant understands and acknowledges that the payment set forth in <u>Exhibit B</u>, shall be the full and final payment for Services rendered and expenses incurred, including, but not limited to travel, lodging, and meals, in connection with the December 11, 2007 Avinza® Risk Management Program ("RMP") Teleconference.

C.    <u>Invoice</u>.  Upon completion of the Services, Consultant shall submit an invoice to Company or its designee along with the necessary documentation to support the reasonable, out-of-pocket expenses that are pre-approved by Company and actually incurred by Consultant.

D.    <u>Maximum</u>.  During the term of this Agreement, Consultant shall be limited to Fifty Thousand Dollars ($50,000).

## III.    TERM AND TERMINATION

A.    <u>Term</u>.  The term of this Agreement shall be one (1) year from the date first set forth above, unless sooner terminated as provided below.

B.    <u>Termination</u>.  Either party may terminate this Agreement at any time, for any reason, upon thirty (30) day's prior written notice.

CONFIDENTIAL

RP_000336

C.   <u>Effect of Termination</u>.   Upon termination or expiration of this Agreement, the respective rights and duties of the parties shall terminate; except that Consultant shall return to Company, promptly upon termination or expiration of this Agreement, any and all materials and other documents (including Confidential Information), and any equipment and materials, provided to Consultant, and the Company shall pay Consultant for all services rendered through the date of termination.

## IV.   CONFIDENTIAL INFORMATION

A.   <u>Confidential Information</u>.   Consultant acknowledges that, in the performance of the Services hereunder, Consultant may obtain access to Confidential Information of Company. As used herein, Confidential Information means all information that is disclosed to Consultant by or on behalf of Company or learned by Consultant pursuant to the Services hereunder relating in any way to Company' business or potential business operations or to Company' research and development activities (including but not limited to new pharmaceutical products).   Any reports prepared by Consultant for or on behalf of Company shall also be deemed Confidential Information.

B.   <u>Obligation of Confidentiality</u>.   Consultant agrees, during and after the term of this Agreement, unless specifically permitted in writing by Company, to:

1.   Retain in confidence and not disclose to any third party any such Confidential Information; and

2.   Use any such Confidential Information only for the purpose of carrying out the Services hereunder.

C.   <u>Return of Confidential Information</u>.   Upon completion of the Services hereunder or other termination of this Agreement, Consultant will return to Company all documents (including all copies thereof) and all tapes or other embodiments of information or data disclosed to, or generated by, Consultant in connection with this Agreement.

## V.   RELATIONSHIP OF THE PARTIES

A.   <u>Independent Contractor</u>.   Consultant is performing Services hereunder as an independent contractor and not as an employee or agent of Company.   Consultant will not participate in employee benefit plans.   Payments hereunder shall be without deduction for taxes of any kind.   Any taxes payable as a result of the compensation hereunder shall be entirely the responsibility of Consultant.   Neither party has the authority to bind the other without the express written authorization of the other party.

B.   <u>No Obligation.</u>   Nothing in this Agreement shall be deemed a requirement or an expectation that Consultant use or advocate the use of any products of Company or its affiliates for any given treatment. During the term of this Agreement, Company is not obligated to use the services of this Consultant, for any purpose, or at any time, other than as expressly set forth in <u>Exhibit A</u>.

CONFIDENTIAL

RP_000337

## VI.    NOTICE

All notices provided under this Agreement shall be in writing and shall be deemed to be properly given and to be effective on the date of delivery if delivered in person, by overnight mail through a recognized delivery service providing proof of delivery, or by registered or certified mail, return receipt requested, to the address set forth above.  Notices to Company shall be addressed to the General Counsel at:

King Pharmaceuticals, Inc.
400 Crossing Boulevard
Bridgewater, NJ 08807
(908) 429-6000
Attn: General Counsel

## VII.    MISCELLANEOUS

A.    This Agreement, including all Exhibits and other attachments hereto, constitutes the entire agreement between the parties relating to the subject matter hereof and supersedes all prior agreements, understandings, representations and statements regarding the subject matter contained herein.  This Agreement shall not be amended except by written agreement between the parties.  No oral waiver, amendment or modification shall be effective under any circumstances.  Any waiver by either party of any of this Agreement's terms and conditions or of a breach or failure to perform shall not constitute a general waiver of such term or condition or a waiver of any subsequent breach or failure to perform.

B.    It shall be the responsibility of the Consultant to ensure meaningful, clear and conspicuous disclosure of any relationship between the Consultant and the Company as applicable.

C.    This Agreement has been entered into in the State of New York, and shall be construed and interpreted in all respects in accordance with the laws thereof without giving effect to its principles or rules of conflict of laws to the extent such principles or rules would require or permit the application of the laws of another jurisdiction. Venue shall lie in New York, New York.

CONFIDENTIAL

RP_000338

D.     This Agreement may not be assigned by Consultant without the prior written consent of Company, and this Agreement may not be assigned by Company without the prior written consent of Consultant.

E.     Article I, Section E, and Articles IV and VI shall survive termination or expiration of this Agreement.

F.     Notwithstanding anything to the contrary, this Agreement shall be signed by Consultant on or before **December 11, 2007**, but if it is not signed by both parties by **December 18, 2007**, this document shall not be construed as a written or verbal offer to enter into any agreement or relationship and this document shall be null and void and of no effect.

G.     The following provisions run to the benefit, and are enforceable by Consultant and Consultant's employer, Beth Israel Medical Center ("Beth Israel"):

   i.     The Company agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

   ii.    The Company agrees to indemnify, defend and hold harmless Consultant and Beth Israel, and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including but not limited to settlement costs and reasonable legal fees) asserted against any of the Indemnified Parties relating directly or indirectly to the services performed by Consultant under or in connection with this Agreement.  This provision shall survive the termination of this Agreement.

   iii.   The Company shall provide and maintain at its own expense during this Agreement programs of insurance or self-insurance as it deems appropriate to protect its liabilities and contractual obligations hereunder.

IN WITNESS WHEREOF, Company and Consultant have duly caused this Agreement to be duly executed in their names and on their behalf as of the date first written above.

KING PHARMACEUTICALS, INC.                    RUSSELL K. PORTENOY, M.D.

By: _____                 _____

Name: _Linda Wase, MD_                         Name:  Russell K. Portenoy, M.D.

Title: _EVP, Medical Affairs_                  Title:   Chairman, Department of Pain
                                                        Medicine and Palliative Care
                                                        Beth Israel Medical Center

CONFIDENTIAL

RP_000339

Date: _12|11|07_                         Date: _12|11|07_

                                         Tel #:  (212) 844-1505

                                         E-Mail Address: rportenoy@chpnet.org

                                         REDACTED

CONFIDENTIAL                                                      RP_000340