PSJ3

Exhibit 57C

## EXHIBIT A

### SERVICES

At the December 11, 2007 Avinza® RMP Teleconference, Consultant should be prepared to discuss issues which include, but are not limited to, the following:

1.    Responses to the following questions:

      (a) Are the risks of misuse, abuse and diversion observed with Avinza® acceptable; and

      (b) Is the Avinza® RMP appropriate at this time?;

2.    Review the components of the Avinza® RMP and the results achieved to date; and

3.    Identify other initiatives, trends or factors that King should consider in the further prevention and management of Avinza® risk.

Consultant shall also chair the teleconference.

In addition to the services set forth above, Consultant may be asked by the Company to provide additional services to the Company or on behalf of the Company during the term of the Agreement. Each additional service/project shall be subject to written addendum between the parties.

The Company is not obligated to use the services of this Consultant for other consulting services but may elect to do so within its sole discretion subject to written addenda or other written agreements signed by both parties.

CONFIDENTIAL

RP_000341

## EXHIBIT B

## COMPENSATION

In consideration of Consultant's participation in the December 11, 2007 Avinza® RMP Teleconference, Consultant shall be eligible to receive a fee of One Thousand Two Hundred Dollars ($1,200.00) for such participation and time preparing for the teleconference.

In addition to such consulting fee, Consultant shall receive reimbursement for reasonable expenses arising from such participation in accordance with the requirements of Article II.

In addition to the compensation set forth above, in the event that the Company elects to further use the services of Consultant, consideration for Consultant's provision of additional services (other than those set forth in Exhibit A above) shall be set in advance, subject to a fair market value assessment.

10

CONFIDENTIAL

RP_000342

# CONFIDENTIAL DISCLOSURE AGREEMENT
## between
## Pfizer Inc
## and
## Dr. Russell K. Portenoy

This Confidential Disclosure Agreement ("Agreement"), between

> Pfizer Inc, a Delaware Corporation with an office of business at 235 East 42nd Street, New York, NY 10017 ("Pfizer"), and

> Dr. Russell K. Portenoy with an address at Beth Israel Medical Center, First Avenue at 16th Street, New York, NY 10003  ("Recipient"),

when signed by Recipient, is effective as of 17 October 2007 ("Effective Date").

Pfizer is willing to disclose certain information relating to the development of  the treatment of sleep disturbance and fibromyalgia and neuropathic pain with Lyrica (the "Field") to Recipient to allow Recipient to consider a possible research or business relationship with Pfizer. Some or all of the information that Pfizer will disclose is confidential.

1.　　　Confidential Information

　　　1.1　　Definition.  Except as specified in Section 1.2 (Exclusions), below, "Confidential Information" is any technical or business information in the Field that Pfizer transmits to Recipient in writing or other tangible form and marks as CONFIDENTIAL or that is disclosed orally and then summarized and confirmed in writing as CONFIDENTIAL within 30 days after the date of oral disclosure.  Also considered Confidential Information is anything that Recipient observes while on-site at a Pfizer facility, whether or not directly related to the Field.

　　　1.2　　Exclusions.  Confidential Information does not include information that

　　　　　a.　is known or open to the public or otherwise in the public domain at the time of disclosure,
　　　　　b.　becomes part of the public domain after disclosure by any means other than breach of this Agreement by Recipient,
　　　　　c.　is already known to Recipient at the time of disclosure and is free of any obligations of confidentiality, or
　　　　　d.　is obtained by Recipient, free of any obligations of confidentiality, from a third party who has a lawful right to disclose it.

1

00632  07/29/05

CONFIDENTIAL

2.    Obligations of Confidentiality

    2.1    Obligations.  Unless Pfizer provides prior written consent, Recipient will not

        a.   use Confidential Information for any purpose other than that authorized in this Agreement, or

        b.   disclose any Confidential Information to any third party other than contractors, agents, or affiliates who have a need to know in connection with the purpose of this Agreement and who are bound by obligations of confidentiality substantially similar to those in this Agreement.

    2.2    Liability.  Recipient is liable to Pfizer for any unauthorized use or disclosure of Confidential Information by any third party to whom Recipient discloses it under Section 2.1.b, above.

    2.3    Notification of Unauthorized Disclosure.  Recipient will notify Pfizer immediately if it becomes aware of any disclosure in breach of the obligations of this Agreement and will, at the request of Pfizer, take all such steps as are necessary to prevent further disclosure.

    2.4    Disclosure Required by Law.  If Recipient is required by law to disclose any Confidential Information during the term of this confidentiality obligation, such disclosure will not be considered a breach of this Agreement so long as Recipient

        a.   notifies Pfizer in writing as far as possible in advance of the disclosure so as to allow Pfizer to take legal action to protect its Confidential Information as appropriate,

        b.   discloses only that information required to comply with the legal requirement, and

        c.   continues to maintain the confidentiality of this Confidential Information with respect to all other third parties.

    2.5    Survival of Obligations.  The obligations of confidentiality in this Agreement will survive termination of the Agreement and will continue for a period of five years after termination.

3.    Return of Confidential Information

    3.1    Return.  If requested by Pfizer in writing, Recipient will return all Confidential Information. To the extent permitted by law or applicable regulation, Recipient will also destroy all documents prepared by Recipient that contain Pfizer's Confidential Information or redact all such Confidential Information from those documents.  However, Recipient may retain a single archival copy of the Confidential Information for the sole purpose of determining the scope of obligations incurred under this Agreement.

00632 07/29/05

**CONFIDENTIAL**

RP_000344

4.      Term and Termination

    4.1    Term. The term during which disclosures may be made and received under this Agreement will be one year from the Effective Date, at the end of which time the Agreement will terminate.

    4.2    Effect of Termination.  The confidentiality obligations in Section 2 (Obligations of Confidentiality) will survive termination of this Agreement and will continue for the time periods specified in those Sections.  All other provisions that by their nature and intent remain valid after the term of this Agreement will also survive termination.

5.      No Other Rights Granted.  This Agreement does not convey or imply a license or any other interest in any Pfizer intellectual property other than the right to use Confidential Information as authorized in this Agreement, nor does it obligate either party to enter into any further agreement with the other party.

6.      Amendment.  This Agreement may be modified only by a document signed by both parties and identified as an Amendment to this Agreement

7.      Affiliates.  As used in this Agreement, the term "affiliate" means any entity that directly or indirectly controls, is controlled by, or is under common control with the named party.

8.      Entire Agreement.  This Agreement represents the entire understanding between the parties relating to this subject matter.

Agreed to and Accepted by:

DR. RUSSELL K. PORTENOY

By: _____

Printed Name: _Russell K. Portenoy, MD_

Title: _Chairman, DEMPC_

Date: _10/18/07_

00632  07/29/05

**CONFIDENTIAL**

RP_000345



# ADVISORY BOARD AGREEMENT

This ADVISORY BOARD AGREEMENT (the "Agreement"), is entered into as of 15th May, 2007, by and among CEPHALON, INC., a Delaware corporation ("Cephalon") and Russell Portenoy, MD ("Consultant").

WHEREAS, Cephalon wishes to obtain the services of Consultant as chairperson of Cephalon's FENTORA® (Fentanyl Buccal Tablet) Publications  Advisory Board (the "Advisory Board") on May 18, 2007 at the Sofitel Hotel in New York, NY, and Consultant wishes to provide such services, all subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth, and intending to be legally bound hereby, Cephalon and Consultant hereby agree as follows:

1.  <u>Services to be Provided</u>.  During the term of this Agreement, Consultant shall be available to provide advice and assistance to Cephalon as a participant of the Advisory Board.   The services (the "Services") to be provided by Consultant in such capacity consist of the following:

    (a)  Required attendance and participation at the Advisory Board held on the agreed upon date for a duration of 1 day, during normal business hours, at a location designated by Cephalon; and

    (b)  Follow-up discussions with representatives of Cephalon and, if mutually agreeable, with third parties designated by Cephalon.

Any additional Services requested by Cephalon  must be mutually agreed to by Consultant and Cephalon in writing, in an amendment to this Agreement which describes the timing and scope of the additional Services and the monies payable by Cephalon for such Services.

2.  <u>Term</u>.  The initial term of this Agreement shall begin as of May 18, 2007, and shall continue until May 19, 2007, unless terminated prior thereto pursuant to Section 6 below.

3.  <u>Compensation</u>

    (a)  As compensation for Consultant's services as chairperson of the Advisory Board, Cephalon shall pay the following:

        i.  Three Thousand Five Hundred U.S. Dollars ($3,500.00) for a 1-day Advisory Board attended by Consultant, and the additional work after the Advisory Board.

        ii.  In addition, Cephalon shall reimburse Consultant for out-of-pocket travel, hotel and meal expenses reasonably incurred by Consultant for travel that was

1

CONFIDENTIAL

RP_000346



requested by Cephalon, as long as the expenses are incurred in accordance with Cephalon's reimbursement policies.

(b)    Consultant acknowledges that he/she is not an employee of Cephalon and will not be entitled to participate in or receive any benefit or right as a Cephalon employee under any Cephalon employee benefit and welfare plans, including, without limitation, employee insurance, pension, savings and security plans as a result of entering into this Agreement.

4.    Ownership of Results.

(a)    All findings, conclusions and data and all inventions, discoveries, trade secrets, techniques, processes and know-how, whether or not patentable, that are made by Consultant, either alone or with others, in the performance of the Services or which result, to any extent, from use of Cephalon's premises or property (collectively "Inventions") shall become the exclusive property of Cephalon.  Consultant hereby assigns, transfers and conveys all of his/her right, title and interest in and to any and all Inventions to Cephalon.

(b)    Upon the request and at the expense of Cephalon, Consultant will execute and deliver any and all instruments and documents and take such other acts as may be necessary or desirable to document such transfer or to enable Cephalon to apply for, prosecute and enforce patents, trademark registrations or copyrights in any jurisdiction with respect to any Inventions or to obtain any extension, validation, re-issue, continuance or renewal of any such intellectual property right.  Without limiting the foregoing, Consultant shall assign, grant and convey unto Cephalon all of his/her right, title and interest, now existing or that may exist in the future, in and to any copyrights in any findings, reports, data compilations and other information and material resulting from the performance of the Services.  Consultant shall not submit applications for copyright registration in any country for any information or materials created by Consultant pursuant to this Agreement.

(c)    The provisions of this Section 4 shall survive the expiration or termination of the term of this Agreement.

5.    Confidentiality.

(a)    Consultant will not, either during or for a period of three (3) years after the term of this Agreement, disclose to any third person or use the results of the Services or any confidential or proprietary information of Cephalon or its affiliates for any purpose other than the performance of the Services, without the prior written authorization of Cephalon.

2

CONFIDENTIAL

RP_000347



(b)     For purposes of this Section 5, "confidential or proprietary information" includes, without limitation, the results of the Services, technical data, know-how, unpublished findings, compounds, compositions, formulations, biomaterials, products, technologies, processes, patent applications, marketing methods and plans, pricing information, manufacturing information and other unpublished information related to the business or the financial condition of Cephalon and its affiliates and corporate collaborators, which has been or will be disclosed by Cephalon or its affiliates.

(c)     This obligation shall not apply to the following:

    i.   Information which, after disclosure, becomes available to the public by publication or otherwise, other than by breach of this Agreement by the Consultant;

    ii.   Information that the Consultant can establish by prior written record was already known to it or was in its possession at the time of disclosure and was not acquired, directly or indirectly, from Cephalon or its affiliates; or

    iii.   Information that the Consultant obtains from a third party; provided however, that such information was not obtained by said third party, directly or indirectly, from Cephalon or its affiliates under an obligation of confidentiality.

(d)     If Consultant is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation demand or similar process) to disclose any confidential or proprietary information, Consultant will provide prompt notice to Cephalon of such request, in advance of any such disclosure.

(e)     Consultant acknowledges that during the performance of this Agreement he or she may come into possession of certain material information about Cephalon or its affiliates that has not yet been disclosed to the public.  Consultant agrees to comply with the rules and regulations of the United States Securities and Exchange Commission ("SEC"), including those relating to insider trading for as long as Consultant is in the possession of such material, non-public, information about Cephalon or its affiliates.  Consultant is hereby notified that he or she should not trade in Cephalon securities on his or her own behalf or on the behalf of others while in possession of any such material, non-public information.

(f)     The provisions of this Section 5 shall survive the expiration or sooner termination of the term of this Agreement.

3

CONFIDENTIAL



6.   <u>Termination</u>.  Notwithstanding the provisions of Section 2, either party may terminate this Agreement for any reason whatsoever, upon thirty (30) days written notice to the other party.  In such event, Cephalon shall be responsible for any portion of the Funding and expenses owed to Consultant under Section 3 for any Services rendered prior to the effective date of such termination.

7.   <u>Return of Cephalon Property</u>.   Consultant will return to Cephalon any property of Cephalon in his/her possession, at any time when so requested by Cephalon and in any event upon termination or expiration of this Agreement.  Consultant will not remove any Cephalon property from Cephalon premises without written authorization from Cephalon.

8.   <u>No Conflicting Agreements</u>.  Consultant represents that Consultant is not a party to any existing agreement which would prevent Consultant from entering into and performing this Agreement.  Consultant will not enter into any other agreement that is in conflict with his/her obligations under this Agreement.  Consultant shall not seek funding to support the Project from any third party (including the United States Government), without the prior written consent of Cephalon.

9.   <u>Independent Contractor</u>.  Consultant is an independent contractor under this Agreement.  Neither party shall have the power to bind the other party to any agreement, contract, obligation or liability.

10.   <u>Entire Agreement, Amendment and Assignment</u>.  This Agreement is the sole agreement between Consultant and Cephalon with respect to the Services to be performed hereunder and it supersedes all prior agreements and understandings with respect thereto, whether oral or written.  No modification to any provision of this Agreement shall be binding unless in writing and signed by Consultant and a duly authorized representative of Cephalon.

11.   <u>Governing Law</u>.  This Agreement shall be governed by and interpreted in accordance with laws of the State of Delaware, without giving effect to any conflict of laws provisions.

12.   <u>Notices</u>.  All notices and other communications required or permitted hereunder or necessary or convenient in connection herewith shall be in writing and shall be deemed to have been given when hand delivered, sent by facsimile or mailed by registered or certified mail, as follows (provided that notice of change of address shall be deemed given only when received):

**CONFIDENTIAL**

RP_000349



If to Cephalon, then to:

      Cephalon, Inc.
      41 Moores Road
      Post Office Box 4011
      Frazer, PA  19355
      Attention: Mina Patel, PhD
      Telephone No: 610 738 6746
      Facsimile No: 610 883 5578
      With a copy to:  General Counsel

If to Consultant, then to:

      Russell Portenoy, MD
      Beth Israel Medical Center
      First Avenue at 16th Street
      New York, NY  10003
      Telephone No: (212) 844-1505
      Facsimile No.: (212) 844-1503

or to such other names or addresses as Cephalon or Consultant, as the case may be, shall designate by notice to each other person entitled to receive notices in the manner specified in this Section.

13.    <u>Counterparts</u>.  This Agreement shall become binding when any one or more counterparts hereof, individually or taken together, shall bear the signatures of Consultant and Cephalon.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, but all of which together shall constitute but one and the same instrument.

14.    <u>Severability</u>. If any provision of this Agreement is deemed to be invalid or unenforceable by a court of competent jurisdiction or in arbitration, the same shall be deemed severable from the remainder of this Agreement and shall not cause the invalidity or unenforceability of the remainder of the Agreement.

15.    <u>Further Action</u>.  Each party hereto shall take, or cause to be taken, all actions, and do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations (including, without limitation, those regulations promulgated by the United States Internal Revenue Service), and execute and deliver such further documents as may be reasonably requested by the other party in connection with the operation of this Agreement.

16.    <u>Compliance with Law</u>. Consultant agrees to comply with all applicable statutes and regulations relating to the performance of the Services.

CONFIDENTIAL

RP_000350



17.   Use of Cephalon's Name.  Consultant shall not use the name of Cephalon or any variant thereof, and/or the Cephalon logo in any advertising, publicity, patent application or other publication without the prior written permission of Cephalon.

18.   Other.

The following provisions run to the benefit, and are enforceable by Consultant :

a.  Cephalon agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

b.  Cephalon agrees to indemnify, defend and hold harmless Consultant from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including but not limited to settlement costs and reasonable legal fees) asserted against Consultant relating directly or indirectly to the services performed by Consultant under or in connection with this Agreement.  This provision shall survive the termination of this Agreement.

c.  Cephalon shall provide and maintain at its own expense during this Agreement the following insurance coverages with minimum limits of $1 million per occurrence and $3 million in the aggregate: comprehensive general liability, including products liability.  Cephalon shall endeavor to give Beth Israel thirty (30) days prior written notice of any changes in or cancellation of such insurance.

[ THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]

6

CONFIDENTIAL



IN WITNESS WHEREOF, the undersigned, intending to be legally bound, have duly executed, or caused to be duly executed, this Agreement as of the date first above written.

CEPHALON, INC.

APPROVED
FINANCE DEPT.

By: _____
Name:  Rod J Hughes
Title:    Vice President, Scientific Communications

CONSULTANT

APPROVED
LEGAL DEPT

By: _____
Name: Russell Portenoy, MD

7

CONFIDENTIAL



King Pharmaceuticals

King Pharmaceuticals® Inc.
501 Fifth Street
Bristol, TN 37620

## KING PHARMACEUTICALS, INC.
## SUPPLIER DIVERSITY PROGRAM

Date: 11/29/07

Pursuant to King Pharmaceutical's participation in the government's Small Business Programs, it is required that our suppliers furnish us with information verifying their status. Attached are complete classification definitions as defined by the Small Business Administration. Please select the all applicable status for your business, from the following section of definitions. If you are unsure about your company's status, please contact the nearest Small Business Administration Office for guidance. (Please Print)

**(\* means required field)**

\*~~Company~~ Name:  Russell K. Portenoy, M.D

REDACTED

\*Phone: 212-844-1505  \*Fax: 212-844-1505

\*Type of business or service rendering: _____

\*Number of employees: _____

\*Does your company meet the definition set forth by the Small Business Administration for a "Small Business Concern" (SMB)? **Yes or No**

"A Small Business is a business that is independently owned and operated and which is not dominant in its field and meets appropriate size standards corresponding to the supply or service it is providing."

\*If you answered "Yes" for above, your company may be a Small Diverse Business, **please check all that apply:** (Please see definitions below) (Please be advised that your business may not be a Small Diverse Business, but is a small business. Just circle "Yes" to Small Business above, if it meets the definition.)

____ Minority Owned (MBE) which group: _____
____ Women Owned (WBE)
____ Disabled Business Enterprise (DBE)
____ Veteran Owned (VBE)
____ Disabled Veteran Owned (DVBE)
____ Service-Disabled Veteran Owned (SDVBE)
____ Qualified HUBZone (HUB) (copy of certification required)
____ Black College or University or Minority Institute (BCU)

**Minority Business Enterprise (MBE):** A for profit enterprise presently located in the United States or its trust territories, and is at least 51% owned and operated by a U.S. citizen(s) who is a member of one of the following groups:

* **African American:** Black racial groups of Africa

* **Hispanic American:** Spanish or Portuguese speaking areas of Latin American or the following regions: Mexico, Central America, South America and the Caribbean basin

CONFIDENTIAL



Medical Communications, LLC.
501 Fifth Avenue, Suite 2003
New York, NY 10017

Phone: 212-661-7400
Fax: 212-661-2674

May 16, 2008

Russell Portenoy, MD, PhD
Department of Pain Medicine and Palliative Care
Beth Israel Medical Center
First Avenue at 16th Street
New York, NY 10003

Dear Dr. Portenoy,

Thank you for your participation in the advisory board meeting hosted by Endo
Pharmaceuticals on April 10, 2008 in New York.  Your comments and insights were
greatly appreciated by the Endo team.

Enclosed is a check in the amount of $2,528.00 for your honorarium of $2,500 and your
reimbursable travel expenses of $28.00.

On behalf of Endo Pharmaceuticals, thank you again.  We look forward to working with
you again in the future.

Sincerely,

Mia Diaz
Program Coordinator

enc.

CONFIDENTIAL

RP_000354

Russell Keith Portenoy
15 Glenn Place, Hastings on Hudson, NY  10706
Tax ID: 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
Passport: 214376183

Invoice no. 1/2008

Fecha: 18.11.2008

FERRER FARMA, S.A.
Av. Diagonal, 549 5ª planta
08029 BARCELONA
N.I.F.: A-08707234

Concepto:   Dirección, coordinación y participación en la reunión "Hot topics in pain management". Lisboa, Mayo 2008.

Honorarios.................................................   15.000 US$

Forma de pago: Cheque nominativo

CONFIDENTIAL

RP_000355



December 15, 2008

Dear Dr. Portenoy,

Thank you for presenting during the 8th International Conference on Pain and Chemical Dependency, October 30 – November 1, 2008.  The conference was a huge success because of your expertise and reputation within the pain and chemical dependency field and we look forward to working with you in the future.

Enclosed, please find the honorarium for your participation.

Sincerely,

Rose Ann Bankowski
Project Manager
ROI Media Group

CONFIDENTIAL

RP_000356



April 7, 2008

Russell Portenoy, MD
Chairman
Beth Israel Medical Center
New York, NY

Dear Dr. Portenoy:

On behalf of Katherine Beebe, PhD, of Titan Pharmaceuticals, and Interactive Forums, Inc., thank you for your participation in the Probuphine® Chronic Pain Clinical Advisory Board Meeting, held in New York, NY. Your thoughts, opinions, and insights are an invaluable part of the product development process.

Enclosed please find a check, which includes your honorarium as well as reimbursement for any expenses you may have submitted. Also enclosed is an executed copy of the advisor agreement for your records.

We appreciate your contributions, and look forward to working with you again in the near future.

Sincerely,

Stephen D. Lande, PhD
Executive Vice President
Interactive Forums, Inc.

Enclosure

150 Monument Road
Suite 610
Bala Cynwyd, PA 19004
610.660.9200 Phone
610.660.9199 Fax

CONFIDENTIAL



**ADVANCED STRATEGIES IN MEDICINE**

A McMahon Group Company

August 12, 2008

Russell K. Portenoy, MD
15 Glenn Place
Hastings on Hudson, NY 10706

Dear Dr. Portenoy,

Enclosed please find your honorarium in the amount of $3,000.00 for your participation in the SELECT Curriculum Development Workshop, held on Monday, June 30, 2008, in New York City. Thank you again for your contribution to the success of this program. Should you have any questions, please feel free to contact me at 212-957-5300 x 290 or at ngallagher@mcmahonmed.com.

Warm Regards,

Natalia M. Gallagher
Senior Account Executive
Advanced Strategies in Medicine
*A McMahon Group Company*

CONFIDENTIAL



ADVANCED
STRATEGIES
IN MEDICINE
A McMahon Group Company

April 4, 2008

Dear Dr. Portenoy,

On behalf of the Johns Hopkins University School of Medicine and Advanced Strategies in Medicine, we would like to thank you for your participation in the CME program **Opioid Analgesia in Chronic Pain: Balancing Risks and Benefits** held on Friday, April 4, 2008, at the Marriott Marquis Times Square, New York.

We sincerely appreciate your contribution and look forward to working with you again in the near future.

Enclosed is your honorarium in the amount of $2,500.00.

If you have any out-of-pocket expenses, please fill out the expense reimbursement form and submit to:

Katie Crosby
Account Coordinator
Advanced Strategies in Medicine
545 West 45th Street, 7th Floor
New York, NY
Fax: 212-957-7230

Should you have any questions, please feel free to contact me at 212-957-5300 x 117 or at kcrosby@mcmahonmed.com.

Kind Regards,

Katie Crosby
Account Coordinator
Advanced Strategies in Medicine
A McMahon Group Company
545 West 45th Street, 7th Floor
New York, NY 10036
Phone: 212-957-5300 x 117
Fax: 212-957-7230
kcrosby@mcmahonmed.com

CONFIDENTIAL



**ADVANCED
STRATEGIES
IN MEDICINE**

A McMahon Group Company

Reimbursement Form
**Opioid Analgesia in Chronic Pain: Balancing Risks and Benefits**
Held at the Marriott Marquis Times Square, New York

Please complete and return form along with **original receipts** to Advanced Strategies in Medicine **by April 30, 2008.**  Please allow 6 to 8 weeks for check disbursement.

Per IRS guidelines, if the Social Security number and original receipts and/or original airline ticket stubs (if applicable) are not included with this form, reimbursements will be treated as taxable income.

Reimbursements will be made payable to:

First Name, Last Name, Degree:_____

Social Security # or Tax ID#: *(Tax ID required if issued to a company):*_____

Address:_____

City:_____State:_____ZIP Code:_____

Telephone:_____ Fax: _____

<u>Description</u>                                                                                        <u>Amount</u>

**Air Travel:**                                                                                   $_____

**Mileage:** (*Number of round-trip miles driven* _____*x 0.505 per mile*)      $_____

**Tolls:** (*Attach receipts totaling more than $5.00*)                                $_____

**Parking:** (*Home city airport only*)                                                $_____

**Transfers:** (*Taxis to and/or from home city airport*)                              $_____

**Meals:**                                                                             $_____

**Other** (*Please list*): _____                           $_____

                                                    **TOTAL EXPENSES:**  $_____

Please mail or fax this form to the following address:

**Attn: Katie Crosby
Advanced Strategies in Medicine
545 West 45th Street, 7th Floor
New York, NY 10036**

**Reference #: 0909-C-KING-PA-SS-08006**
**Date Received Reimbursement Form:**_____

CONFIDENTIAL



University Hospital and
Manhattan Campus for
the Albert Einstein College
of Medicine

**Beth Israel Medical Center**
First Avenue at 16th Street
New York, NY 10003
Tel: 212 844 1505
Fax: 212 844 1503
E-mail: rportenoy@chpnet.org
(For Patient Appts 212 844 8930)

**Russell K. Portenoy, M.D.**
Chairman
Department of Pain Medicine and Palliative Care
Chief Medical Officer Continuum Hospice Care
Professor of Neurology and Anesthesiology
Albert Einstein College of Medicine

January 30, 2008

Marsha Stanton, MS, RN
Director of Scientific Communication
Alpharma Pharmaceuticals, LLC
4400 Sunfield Avenue
Long Beach, CA 90808

Dear Marsha:

I am writing to follow up, a little belatedly, on our delightful conversation in early January. Our whole team is very grateful to you for your support of our work and for allowing us to 'rename' this year's Alpharma Fellow upon Kerry Tobias's departure. We are deeply appreciative of Alpharma's ongoing commitment to funding our Fellowship Program in Pain Medicine and Palliative Care 'for the foreseeable future,' as you so aptly put it.

We have selected Marimie Rodriguez-Campos, MD, an outstanding young physician who has already proven to us and her patients that she deserves the honor of assuming the title of Alpharma Fellow. Dr. Rodriguez is a pain fellow with a strong interest in research and is grateful for this opportunity. We look forward to sending you further information about her clinical and research activities.

Again, many thanks.

Warm regards,

Russell K. Portenoy, MD

Enclosures

cc: Myra Glajchen, DSW
    Wini Schein

**Continuum** Health Partners, Inc.





CONFIDENTIAL

# MARIMIE RODRIGUEZ CAMPOS
REDACTED

REDACTED                                                                                            REDACTED

---

**EDUCATION:**

| | |
|---|---|
| 2007-2008 | BETH ISRAEL MEDICAL CENTER, ALBERT EINSTEIN COLLEGE OF MEDICINE<br>Pain Medicine Fellowship Program, New York, NY<br>Alpharma Fellowship in Pain Medicine and Palliative Care<br>**Expected graduation June 2008** |
| 2004-2007 | UNIVERSITY OF PUERTO RICO, RCM<br>San Juan, PR<br>**Physical Medicine and Rehabilitation Residency Program** |
| 2003-2004 | UNIVERSITY OF PUERTO RICO, RCM<br>Department of Anesthesiology, San Juan, PR<br>**Internship** |
| 1999-2003 | UNIVERSIDAD CENTRAL DEL CARIBE, SCHOOL OF MEDICINE<br>Bayamon, PR<br>**MD** |
| 1995-1999 | UNIVERSITY OF PUERTO RICO<br>Rio Piedras Campus, San Juan, PR<br>**BS General Science** |

**HONORS / AWARDS:**

| | |
|---|---|
| 2007 | **Carlos Benitez Award**, Academy Excellency, Physical Medicine Residency Program |
| 2003 | **Cum Laude**, MD degree, Universidad Central del Caribe |
| 1999 | **Magna Cum Laude**, BS degrees, University of Puerto Rico |
| 1996-1999 | **Dean's list**, University of Puerto Rico |
| 1996-1999 | **Natural Science Faculty Honor Roll**, University of Puerto Rico |
| 1997 | **Golden Key Honor Society**, University of Puerto Rico |
| 1995 | **High Honor Group Entry**, University of Puerto Rico |

**BOARDS / CERTIFICATIONS:**

| | |
|---|---|
| 2005 | **USMLE**, Step III Passed |
| 2002 | **USMLE**, Step II Passed |
| 2001 | **USMLE**, Step I Passed |
| 2007 | **ACLS/CPR**, Certification |

CONFIDENTIAL

**GRADUATE RESEARCH:**

2006-2007      UNIVERSITY OF PUERTO RICO, RCM
Medical Sciences Campus, San Juan, PR
**Principal Investigator**
Marimie Rodriguez, MD, Carmen E. Lopez, MD
*"Impact in quality of life in patients with Lymphedema of the upper extremity secondary to Breast Cancer"*

**UNDERGRADUATE REASEARCH:**

1998      UNIVERSITY OF PUERTO RICO, Natural Sciences
Rio Piedras Campus, PR
*"High levels of homocysteine in blood and their associated increase risk of coronary artery disease"*

**VOLUNTEER/COMMUNITY ACTIVITIES:**

2003-2004      **Life Link Volunteer**, Puerto Rico. As a volunteer I helped provide information about the process, recollection and legal issues in organ donation.

2002      **Volunteer** in Ciudad Dorada Nursing Home. As a participant I provided medical services and cancer screening education to elderly people.

1998      **Fund-Raiser**, Muscular Dystrophy Association, San Juan, PR
Identified and solicited funds to support research during annual drive.

**PROFESSIONAL MEMBERSHIPS:**

2006-Present      **American Pain Society**

2004-Present      **American Physiatrist Association**

**EXTRACURRICULAR ACTIVITIES:**

2006-2007      **Chief Resident**, Physical Medicine and Rehabilitation Residency Program
University of Puerto Rico, RCM, San Juan, PR

2006      **Participant**, Essentials of Pain Management: Principles and Practices course.
Annual Pain Convention, San Antonio, Texas

2004-2007      **Volleyball Intramural Team**, University of Puerto Rico, Residency Program.

**WORK EXPERIENCE:**

1999      UNIVERSITY OF PUERTO RICO, Department of Biology
Rio Piedras Campus, San Juan, PR
**Biology Science Tutor**
Assisted undergraduate students struggling with general biology

**PERSONAL:**      Bilingual- read, speak and write fluently in Spanish and English
Hobbies- volleyball, scuba diving (PDIC), swimming, and exercising

CONFIDENTIAL



July 10, 2008

Dr. Russell Portenoy
First Avenue at 16th Street
New York, NY 10003

Dear Dr. Portenoy:

This letter will confirm our arrangement for consulting services to be provided by you
("Consultant") to Alpharma Pharmaceuticals LLC (the "Company") in connection with the
Company's Advisory Board to be held on July 12, 2008 (the "Consulting Engagement"). You will
provide consulting services in the form of feedback, advice and/or other work product as request to
the Company on various issues relating to the Company's product, EMBEDA™ (the "Services") as
it relates or could relate to chronic pain management and potential reduction in abuse liability.
Scheduling, travel and lodging will be coordinated through Peloton Advantage only.

<u>Consulting Engagement.</u> Your engagement as a Consultant to the Company hereunder shall be
limited to the Services described herein. Consultant agrees that this Consulting Engagement is
subject to the Company's undertaking and review of a background check on Consultant if the
Company in its sole discretion determines such a check to be necessary.

<u>Consulting Fee.</u> Upon your provision of the Services described herein the Company agrees to pay
you a consulting fee of $4,000.00 for 1 day. The consulting fee and any actual out of pocket travel
expenses will be paid within thirty (30) days of your attendance, our receipt of your evaluation
form and itemized receipts for the travel expenses.

<u>Term.</u> This Agreement shall become effective on the date of the last signature (the "Effective
Date"), and shall terminate one year from that date (the "Expiration Date"), unless Consultant or
Company terminates it earlier, with or without cause, by first giving the other Party ten (10) days
prior written notice. If this Agreement is terminated or expires, Company shall be under no further
obligation to Consultant other than to pay any monies then due and owing for any Services properly
performed before the date of termination or Expiration Date, whichever is applicable. If this
Agreement is terminated prior to the Expiration Date, then during what would have been the
remaining term of this Agreement, Consultant and Company cannot enter into a new agreement for
the same or substantially similar Services, if the compensation set forth in the new agreement is any
different than the compensation set forth in this Agreement.

<u>Expenses.</u> Scheduling, travel and lodging will be coordinated through Peloton Advantage only and
costs will be direct billed to the Company. You will be reimbursed for laundry and valet only if the
Program requires you to be out of your home town for more than five (5) consecutive days. These
charges should appear on an itemized hotel bill. Incidental expenses must be related to the Program
to qualify for reimbursement.

Effective 060608                                   1

**CONFIDENTIAL**

Reimbursable incidentals do NOT include, but are not limited to:
* Personal services (eg, barber, manicurist, shoeshine, massage)
* In-room or in-flight movies
* Use of extra-cost facilities (eg, sauna, steam bath)
* Additional charges for room upgrades, pool-side rooms, or special floors
* Luggage carts and suitcases
* Baby sitting, house sitting, and pet boarding fees
* Clothing, toiletries, and related personal items
* Gifts
* Parking and traffic fines
* Contributions/donations
* Books and publications
* Personal sightseeing trips

Responsibilities of Consultant. Consultant shall use his/her best efforts to provide the Services in a professional manner to the best of his/her abilities in accordance with the terms hereof.

Compliance. Consultant acknowledges that the Company operates in a regulated industry and as such must adhere to certain regulations with regard to retaining consultants and agents. In that regard, Consultant covenants to comply with all applicable federal and state laws and regulations pertinent to the Services.

Recording. To accurately record Consultant feedback, an audio recording will be obtained. You consent to the recording and agree that the Company will be the absolute owners of the recording. You hereby assign to the Company, title and interest in the audio recording produced in accordance with this consent. Company may use the recording, or portions thereof, in any way it chooses, at any time for internal purposes or such other purposes as required by law or by order of any court or governmental authority.

Ownership. If, during the course of performing the Services, Consultant discloses to the Company any ideas, inventions or other similar innovation or information which may be patentable or copyrightable, Consultant agrees that such information will be the property of the Company and that, at the Company's request and cost, the Consultant will do (or cause to be done) whatever is reasonably necessary to secure the rights thereto by patent, copyright or otherwise to the Company.

Fair Market Value. The Parties acknowledge and agree that the compensation herein represents the fair market value of the Services and has not been determined in a manner which takes into account the volume or value of any referrals of business otherwise generated between the Company and Consultant.

Confidentiality. Consultant agrees that all business, technical and financial information (including, without limitation, the identity of any information relating to products, equipment, strategy, customers or employees) which Consultant develops, learns or obtains in connection with preparing for the Program and in performing the Services or that are received by or for Company in confidence, constitute "Confidential and Proprietary Information." Consultant will hold in confidence and not disclose or, except in performing the Services, use any of the Confidential and Proprietary Information. However, Consultant shall not be obligated under this paragraph with respect to information Consultant can document is or becomes readily publicly available without restriction through no fault of Consultant or was known to Consultant at time of disclosure or

Effective 060608                                        2

# CONFIDENTIAL

RP_000365

independently developed by Consultant. Upon termination and as otherwise requested by Company, Consultant will promptly return to Company all items and copies containing or embodying Confidential and Proprietary Information, except that Consultant may keep one personal copy of his/her compensation records and this Agreement. The terms and conditions of this Paragraph shall survive any termination of this Agreement for a period of five (5) years.

Cancellations.  Consultant understands and agrees that because Company cannot pay for Services not provided, in the event that the Consultant is unable to provide the Services as described above, the Consultant agrees that the Company shall not be obligated to pay the consulting fee. Likewise, in the event that the Company cancels the Consulting Engagement, the Consultant agrees that the Company shall not be obligated to pay the consulting fee, with the exception of payment for any Services requested by Company and rendered prior to the cancellation.

Conflict of Interest.  Consultant represents that Consultant is not now under any express or implied obligation to Consultant's employer or to a third party which in any way conflicts with any of Consultant's obligations under this Agreement.  Further, Consultant shall recuse himself/herself from any decision that may pose a Conflict of Interest because of the Services rendered by Consultant to Company pursuant to this Agreement.  Consultant represents that the information provided in Consultant's *Curriculum Vitae* (CV) is accurate.  In addition, Consultant agrees to notify Company immediately in the event that any information changes which could affect Consultant's ability to provide the Services under this Agreement.

Notice.  All amendments to this Agreement and notices under this Agreement must be in writing to be effective. Such notice may be delivered personally, sent by prepaid registered mail or sent by electronic mail (e-mail) to Alpharma Pharmaceuticals LLC, 440 Rt. 22 East, Bridgewater, NJ 08807 Attn:  Legal Department, Attn: Vice President and Associate General Counsel Legal Department, or to Russell K. Portenoy, MD, Chairman, Department of Pain Medicine and Palliative Care, Beth Israel Medical Center, First Avenue at 16th Street, New York, NY 10003.  Notice shall be deemed to have been given when actually received.

Debarment Certification:  By signing this Agreement, Consultant hereby represents and warrants that he/she:

(1) is not presently under any loss or restriction of any professional license, nor of any related certifications, rights or privileges, including, but not limited to, any exclusion or debarment pursuant to the Generic Drug Enforcement Act of 1992 (the FDA exclusion list) 21 U.S.C. § 335a(a) and (b), the Office of Inspector General of the Department of Health and Human Services' (OIG/HHS) List(s) of Excluded Individuals/Entities, the General Services Administration (GSA) List(s) of Parties excluded from Federal Procurement and Nonprocurement Programs, or any equivalent law or regulation applicable inside or outside the United States, nor is Consultant excluded from any federal or state health care program;

(2) is not under investigation by the Food and Drug Administration (FDA), or equivalent authority outside the United States, for debarment action; has not been convicted or indicted for a crime or otherwise engaged in conduct for which a person can be debarred, and agrees to notify Company immediately upon any inquiry concerning, or the commencement of any such proceeding concerning Consultant; and

**CONFIDENTIAL**

(3) has not been convicted or indicted for an offense, nor has Consultant otherwise engaged in conduct, which could lead to loss or restriction of his/her license or professional rights or privileges, or exclusion or debarment from any federal or state healthcare program. Consultant agrees to notify Company immediately upon becoming aware of any inquiry, or the commencement of any proceeding, concerning conduct, which could result in the loss or restriction of Consultant's professional licenses, certifications, rights or privileges, or which could result in exclusion, debarment, or similar action.

Please note that Alpharma reserves the right to check the GSA, OIG/HHS, and the FDA exclusion lists prior to Consultant's performance of the Services hereunder. If Consultant is confirmed to be on any of these exclusion lists, Consultant will be prohibited from performing such Services.

<u>Representation.</u> In entering into this Agreement, you represent and warrant that (a) the Services you perform and the work you create under this Agreement will not infringe the copyrights, patents, trade secrets or other rights of any third party; and (b) you will not use any of <u>your</u> own proprietary materials in the provision of the Services without the Company's prior written permission and an appropriate license to the Company.

<u>Government Employee Representation.</u> If you are a government employee, you further represent and warrant that you will comply with applicable government ethics rules and that you have secured any necessary approval of an appropriate ethics officer and, as necessary, supervisor, to enter into this Agreement and to be compensated for the provision of such Services.

<u>Relationship of the Parties.</u> Notwithstanding any provision hereof, for all purposes of this Agreement each party shall be and act as an independent contractor and not as partner, joint venturer, or agent of the other and shall not bind nor attempt to bind the other to any contract. Consultant is an independent contractor and is solely responsible for all taxes, withholdings, and other statutory or contractual obligations of any sort, including (but not limited to) Workers' Compensation Insurance. Consultant shall not be entitled to receive, nor shall such Services make Consultant eligible to participate in, any benefits or privileges give or extended to Company employees. Consultant agrees to defend, indemnify and hold Company harmless from any and all claims, damages, liability, attorneys' fees and expenses on account of an alleged failure by Consultant to satisfy any such obligations.

The following provisions run to the benefit, and are enforceable by Russell K. Portenoy, MD, ("Consultant") and Beth Israel Medical Center ("Beth Israel"):

a. The Company agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

b. The Company agrees to indemnify, defend and hold harmless Consultant and Beth Israel, and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all third party claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including but not limited to settlement costs and reasonable legal fees) (collectively "Liabilities") asserted against any of the Indemnified Parties relating directly or indirectly to the services performed by Consultant under or in connection with this Agreement except to the extent such Liabilities result from the negligence or willful misconduct of the Indemnified Parties. This provision shall survive the termination of this Agreement.

Effective 060608

**CONFIDENTIAL**

RP_000367

c. The Company shall provide and maintain at its own expense during this Agreement the following insurance coverages with such insurers as shall be acceptable to Beth Israel in minimum limits of $1 million per occurrence and $3 million in the aggregate:, comprehensive general liability, including products liability and contractual liability.  The Company shall give Beth Israel thirty (30) days prior written notice of any changes in or cancellation of such insurance.

d. Consultant agrees to maintain, for the length of this Agreement, professional errors and omissions (malpractice) insurance.

Assignment.  This Agreement and the services contemplated hereunder are personal to Consultant and Consultant shall not have the right or ability to assign, transfer, or subcontract any rights or obligations under this Agreement without the written consent of Company. Any attempt to do so shall be void.

Severability.  Each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

Entire Agreement.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior agreements between them.  This Agreement may be amended only in writing executed by the parties hereto affected by such amendment.

Governing Law.  This Agreement shall be governed by the laws of the State of New York, without giving effect to the conflicts of law principles thereof.

Acknowledgement.  Consultant acknowledges that the Company has not imposed any obligation on Consultant in connection with this Agreement, or otherwise, to purchase, prescribe or likewise support the Company's products.

If the foregoing accurately reflects your understanding of our arrangement, please execute and return one fully executed copy of this letter Agreement to the undersigned.

Respectfully yours,


Pamela Weir
Vice President, Marketing
Alpharma Pharmaceuticals LLC



ACCEPTED AND AGREED:

_____
Signature

Effective 060608                                    5

CONFIDENTIAL

Print Name: _____

SS# or Tax ID: __            REDACTED

Date: _____

**CONFIDENTIAL**

RP_000369

JAN-18-2008  11:03                                                                                          P.02

## CONSULTANT AGREEMENT

This Consulting Agreement (this "Agreement") is entered into by and between Insys Therapeutics, Inc. having a business address at 10220 South 51st St., Suite 2, Phoenix, AZ 85044, (the "Company"), and Russell Portenoy, having an address at Beth Israel Medical Center, First Avenue at 16th Street, New York, New York, 10003 (the "Consultant").

### WITNESSETH:

WHEREAS, the Company is engaged in the worldwide development, manufacturing, licensing and distribution of pharmaceutical products;

WHEREAS, the Company desires to retain the Consultant to provide consultation related to the Company's development of the cannabinoid and opioid drug products as well as selected combination products  (the "Programs");

WHEREAS, the Consultant is qualified and willing to provide expert advice, information and direction regarding the clinical development of the cannabinoid and opioid drug products and their combinations;

NOW THEREFORE, for and in consideration of the premises and the mutual convenants contained herein, the parties do agree as follows:

1.  **CONSULTANCY**.   The Company hereby retains the Consultant and the Consultant hereby accepts such retention and agrees to be reasonably available to perform the consulting services set forth herein.  Consultant hereby agrees that Russell Portenoy shall personally conduct the Services defined herein.

2.  **SCOPE OF THE SERVICES**.  During the term of this Agreement, the Consultant will use its reasonable best efforts and knowledge to provide the consulting services requested from time to time by the Company in any and all matters related to the development of the cannabinoid and opioid drug products (collectively referred to as the "Services").

3.  **COMPENSATION**.   In consideration of the Services to be performed, the Company shall pay Consultant a consulting fee at the rate of Five Hundred Dollars ($500.00) per hour, up to a maximum of $4,000.00 per day, and up to a maximum of ($20,000.00) for the one-year term of the Agreement, payable by the Company within thirty (30) days following the Company's receipt of monthly invoices submitted by the Consultant.  Additionally, the Company shall reimburse the Consultant for its reasonable and customary expenses incurred in providing the Services under this Agreement according to actual out of pocket expenses, as evidenced by written receipts, provided that any travel expenses shall be submitted to and pre-approved by the Company.

4.  **TERM AND TERMINATION**.  This Agreement shall continue for a term of one (1) year, beginning on the last date set forth below and may be extended for yearly periods thereafter based upon the mutual written agreement of the parties. Notwithstanding the above and foregoing, either party may terminate this Agreement at any time, for any reason, upon thirty (30) day's prior written notice., and the Consultant shall be reimbursed for all services and expenses reasonably incurred (in accordance with paragraph 3 above) through the effective date of termination.

CONFIDENTIAL

RP_000370

5.  RETURN OF PROPERTY.  Upon termination of this Agreement for any reason by any party, without regard to any claims, rights or remedies either party may have against the other under this Agreement, the Consultant agrees to return and deliver immediately to the Company all work product (including partial results, drafts and notes, in all tangible media, including but not limited to electronic format) created or worked on by the Consultant in providing the Services, together with any and all materials received from the Company or other sources in order for the Consultant to perform the Services, so that the pursuit of any such claims, rights and remedies shall not interfere with the timely development by the Company of any of its projects.

6.  CONFIDENTIALITY.  The Consultant acknowledges that it will be provided with developing confidential and or proprietary information relating to the Company and the Programs in the course of performance under this Agreement.  During the term of this Agreement and thereafter, the Consultant will not, directly or indirectly, use for the Consultant's own benefit or disclose to or use for the benefit of any person, company, or business any information respecting the Company (including without limitation information regarding research and development, regulatory matters, adverse incidence reporting, manufacturing, marketing, customers, suppliers, and other information relating to the financial and business operations of the Company) except to the extent that such information: (a) was published, known publicly or was otherwise in the public domain at the time the Consultant learned of such information; (b) is published or becomes known publicly or otherwise becomes part of the public domain through no fault of the Consultant, after the Consultant learns of such information; (c) is known to the Consultant prior to the time the Consultant learns of such information, as demonstrated by sufficient documentary evidence; or (d) has been disclosed to the Consultant in good faith by a third party who was not, or is not under any direct or indirect obligation of confidence or secrecy to the Company.  Additionally, the Consultant shall not reveal any information to the Company that is the confidential or proprietary information of his former clients or employers.  The Consultant agrees to execute (as a condition to continuation of the consultancy hereunder) such proprietary information and confidentiality agreements as the Company may reasonably request.

7.  INDEPENDENT CONTRACTOR.  The parties acknowledge and agree that subject to the terms and conditions contained in this Agreement, the Company shall have no authority to control the Consultant in the provision of the Services.  Nothing in this Agreement shall constitute the Consultant as an employee or agent of the Company and at all times the Consultant shall, for all purposes, be an independent contractor.  The Consultant shall not sign any agreements or make any commitments on behalf of the Company, or legally bind the Company in any way, without express written authorization from the Company.

8.  WORK PRODUCT AND INVENTIONS.  All work product provided or created or inventions invented by the Consultant relating to the Programs and the Services provided in the course of performance under this Agreement shall be and remain the property of the Company, which shall retain all intellectual property rights therein.

9.  ASSIGNMENT.  This Agreement is for the personal services of the Consultant and may not be assigned by the Consultant without the prior written consent of the Company, which consent may be reasonably or unreasonably withheld in its sole and absolute discretion.  The Company may assign this Agreement to any successor in interest to all or substantially all of its research and development operations.

2

CONFIDENTIAL

10.    **HEADINGS**.  The headings in this Agreement are for reference only and shall not limit or otherwise affect the meaning of the terms and conditions of this Agreement.

11.    **NOTICES**.  Any notices given under this Agreement will be written and personally delivered, sent by facsimile (with confirmation of receipt generated by the transmitting machine), or mailed by registered or certified mail or via a major recognized express courier service, postage prepaid and return receipt requested to the parties addressed as follows:

If to the Consultant:

Russell Portenoy, MD
Beth Israel Medical Center
First Avenue at 16th Street
New York, New York, 10003

Phone No. 212-844-1505
Fax No. 212-944-1503

If to the Company:

Ellen G. Feigal, M.D.
Insys Therapeutics
10220 S. 51st St., Suite 2
Phoenix, AZ 85044

Phone No. 602 653-6659
Fax No. 602 910-2627

All notices shall be effective upon the day of delivery, if personally delivered or faxed (with confirmation of receipt generated by the transmitting machine); the fifth (5th) business day following dispatch, if mailed.

12.    **NO WAIVER**.  Failure of any party herein to enforce any of the terms or provisions of this Agreement shall not constitute a waiver of any right to enforce that term or provision in the future.

13.    **SEVERABILITY**.  The parties agree that each of the provisions of this Agreement shall stand on its own, and in the event any portion of this Agreement is deemed invalid, unlawful, or unenforceable, the remainder of the Agreement shall remain in full force and effect, as though the invalid, unlawful, or unenforceable provision or provisions were originally deleted.

14.    **MODIFICATIONS**.  Neither this Agreement nor any provision herein shall be modified, waived, discharged, or terminated orally.  This Agreement may not be amended or supplemented in any way except by a written document signed by the party against whom such amendment or supplement is sought to be enforced.

15.    **GOVERNING LAW**.  The parties expressly agree that this Agreement shall be governed by, construed, interpreted and enforced under the laws of the State of New York, without regard to the conflicts of laws principles thereof.  The parties expressly agree on, and irrevocably submit to the subject matter and personal jurisdiction of the state courts sitting within New York County, New York, or the United States District Court for the Southern District of New York, for the resolution of any dispute concerning the enforcement, interpretation or validity of this Agreement.

16.    **ENTIRE AGREEMENT**.  This Agreement constitutes the entire agreement of the parties respecting the Services provided by the Consultant to the Company and supersedes any and all prior agreements, promises, negotiations, or representations, written or oral, between

3

CONFIDENTIAL

RP_000372

JAN-18-2008  11:04                                                                P.05

the parties relating thereto.  No representation, promise, or inducement has been made by either party that is not expressly set forth in this Agreement.

17.    **SURVIVAL**.  The rights and obligations of each of the parties hereto under any provisions of this Agreement, which are expressly or by implication intended to survive beyond the term of this Agreement, including but not limited to those provisions relating to CONFIDENTIALITY (paragraph 7) and WORK PRODUCT AND INVENTIONS (paragraph 9), shall continue notwithstanding the expiration or termination of this Agreement for any reason.

IN WITNESS WHEREOF, the parties have duly executed this Agreement on the dates set forth below.

Russell K. Portenoy, MD                              Ellen G. Feigal, M.D.

By: _____               By: _____

Title: Chairman, Dept. of Pain Medicine and    Title: Chief Medical Officer
Palliative Care_____

Date:____1/15/08_____               Date:___18 January 2008____

4

# CONFIDENTIAL

## Addendum to CONSULTING AGREEMENT

The following provisions run to the benefit, and are enforceable by Russell K. Portenoy, MD ("Consultant") and Beth Israel Medical Center ("Beth Israel"):

a. The Company agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

b. The Company agrees to indemnify, defend and hold harmless Consultant and Beth Israel, and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including but not limited to settlement costs and reasonable legal fees) asserted against any of the Indemnified Parties relating directly or indirectly to the services performed by Consultant under or in connection with this Agreement. This provision shall survive the termination of this Agreement.

c. The Company shall provide and maintain at its own expense during this Agreement the following insurance coverages with such insurers as shall be acceptable to Beth Israel in minimum limits of $1 million per occurrence and $3 million in the aggregate: professional liability, comprehensive general liability, including products liability, contractual liability and errors and omissions. The Company shall give Beth Israel thirty (30) days prior written notice of any changes in or cancellation of such insurance.

5

TOTAL P.06

CONFIDENTIAL

RP_000374

## SCIENTIFIC ADVISORY BOARD AGREEMENT

THIS ADVISORY BOARD AGREEMENT is entered into as of March 3, 2008, by and between **ENDO PHARMACEUTICALS INC.**, with offices at 100 Endo Boulevard, Chadds Ford, Pennsylvania 19317 ("Endo"), and **Russell Portenoy, MD**, an individual with an office at Beth Israel Medical Center, First Avenue at 16th Street, New York, NY 10003 ("Advisor").

### BACKGROUND

Endo wishes to retain Advisor to provide scientific advisory services to Endo with regards to Endo's products and Advisor wishes to provide such services, all subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth, and intending to be legally bound hereby, Endo and Advisor hereby agree as follows.

**1.**     <u>Services to be Provided.</u> During the term of this Agreement, Advisor shall provide Endo with advisory services relating to Endo's products as more fully set forth in project addendums to this Agreement, a sample of which is attached hereto as Exhibit A (the "Services").

**2.**     <u>Term.</u>  The initial term of this Agreement shall begin on the above written date and shall continue for a period of one year, unless terminated prior thereto pursuant to paragraph 6 below.  The initial term of this Agreement may be renewed upon mutual written agreement of the parties.

**3.**     <u>Honorarium.</u>     As full and final compensation for Advisor's performance of the Services, Endo shall pay Advisor an honorarium in the amount set forth on Attachment A hereto.  In accordance with the American Medical Association's Guidelines on Gifts to Physician's From Industry, the honorarium shall be reasonable honoraria in return for your services.  Endo will also reimburse you for reasonable travel, lodging, and meal expenses directly related to the Services provided under this agreement; however, please be aware that Endo does not pay for travel time, any first-class travel or for travel or subsistence expenses for spouses or family members.  Also, Endo does not provide reimbursement for incidentals such as personal items or movies and other forms of entertainment.

**4.**     <u>Independent Contractor; Performance.</u>

        (a)     <u>Independent Contractor Status.</u>  For purposes of this Agreement and all Services to be provided hereunder, Advisor shall not be considered a partner, co-venturer, agent, employee, or representative of Endo, but shall remain in all respects an independent contractor.  Neither party hereto shall have any right or authority to make or undertake any promise, warranty or representation, to execute any contract, or otherwise to assume any obligation or responsibility in the name of or on behalf of the other party.  As an independent contractor, Advisor shall not participate in any employee benefits provided by Endo to its employees, including worker's compensation insurance, disability, pension or other employee plans.  Advisor assumes full responsibility and liability for the payment of any taxes due on money received by Advisor hereunder.  In making payments to Advisor under this Agreement, Endo will not make any deductions for taxes.

        (b)     <u>Performance Warranties.</u>  Advisor shall perform all Services (i) in a professional manner, consistent with industry standards and (ii) in accordance with all applicable laws, rules and regulations.

**5.**     <u>Confidentiality.</u>

        (a)     <u>Endo Information.</u>  Advisor agrees at all times during the term of this Agreement and thereafter, to hold in strictest confidence, and not to use, except in connection with Advisor's performance of the Services, and not to disclose to any person or entity without prior written authorization of the Chairman of Endo, any Confidential Information of Endo.  As used herein, "Confidential Information" means any Endo proprietary or confidential information, technical data, trade secrets or know-how, including, but not limited to, research, product plans,

CONFIDENTIAL

products, services, customer lists and customers, software, developments, inventions, processes, formulas, technology, designs, drawings, marketing plans, distribution and sales methods and systems, sales and profit figures, finances and other business information learned by Advisor in the course of providing the Services or disclosed to Advisor by Endo, either directly or indirectly in writing, orally or by drawings or inspection of documents or other tangible property. The parties hereby agree that the following shall not be considered Confidential Information subject to this Agreement:

(i)     information which prior to the time of disclosure by Endo is in the public domain;

(ii)    information which, prior to the time of disclosure by Endo becomes part of the public domain by publication or otherwise, provided that such publication is not in violation of this Agreement or any other confidentiality agreement;

(iii)   information which Advisor can establish in writing was in Advisor's possession prior to the time of disclosure by Endo and was not acquired, directly or indirectly, from Endo.

(iv)   information which Advisor lawfully receives from a third party, provided, however, that such third party was not obligated to hold such information in confidence.

(v)    information which Advisor is compelled to disclose by a court or other tribunal of competent jurisdiction, provided however, that in such case Advisor shall immediately give notice to Endo to enable Endo to exercise its legal rights to prevent and/or limit such disclosure. In any event, Advisor shall disclose only that portion of the Confidential Information that, in the opinion of Endo's legal counsel, is legally required to be disclosed and will exercise reasonable efforts to ensure that any such information so disclosed will be accorded confidential treatment by said court or tribunal.

(b)    Advisor -Restricted Information. Advisor agrees that during the term of this Agreement Advisor will not improperly use or disclose any proprietary or confidential information or trade secrets of any person or entity with whom Advisor has an agreement or duty to keep such information or secrets confidential.

(c)    Returning Endo Documents. Advisor agrees that, upon written request by Endo, Advisor will deliver to Endo, at Endo's expense, (and will not keep in Advisor's possession or deliver to anyone else) any and all Confidential Information or reproductions thereof.

(d)    Survival. All Confidential Information of Endo shall remain subject to this Agreement for a period of five (5) years from the date of first disclosure to Advisor unless terminated by written notice from Endo.

6.    **Termination and Cancellation**.

(a)    Notwithstanding the provisions of paragraph 2, Endo reserves the right to terminate this Agreement whenever it shall determine that any such termination is in its best interest, and shall notify Advisor in writing of the date of such termination. In the case of termination by Endo, payment of honoraria and reimbursement of expenses will only be made in connection with Services actually performed by Advisor.

(b)    In the event that Advisor is unable to attend a meeting for any reason, he or she shall provide written notice to Endo as soon as practicable. Endo shall not pay any portion of the honorarium nor reimburse any expenses related to this Agreement for meetings in which Advisor was not in attendance.

7.    **No Conflicting Agreements; Nonexclusive Engagement; Representation**.

(a)    Advisor represents that Advisor is not a party to any existing agreement which would prevent Advisor from entering into and performing this Agreement. Advisor will not enter into any other agreement that is in conflict with Advisor's obligations under this Agreement. Subject to the foregoing, Advisor may from time to time act

CONFIDENTIAL

as a consultant to perform professional services, or to enter into agreements similar to this Agreement, with other persons or entities without the necessity of obtaining approval from Endo.

        (b)     Advisor represents and warrants to Endo that he is not now nor will he during the term of this Agreement be debarred by the United States Food and Drug Administration under the Generic Drug Enforcement Act of 1992 and that he has never been convicted of a felony under Federal law for conduct relating to the development or approval of a drug product and/or relating to a drug product.

**8.**    <u>**Entire Agreement, Amendment and Assignment**</u>.  This Agreement and the attached Exhibits are the entire agreement between Advisor and Endo with respect to the Services to be performed hereunder and it supersedes all prior and/or contemporaneous agreements and understandings with respect hereto, whether oral, written, or in any other medium, that might exist between the parties with relation to the subject matter hereof. No modification to any provision of this Agreement shall be binding unless in writing and signed by both Advisor and Endo. No waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective successors and assigns of the parties hereto, except that the duties and responsibilities of Advisor hereunder are of a personal nature and shall not be assignable or delegable in whole or in part by Advisor.

**9.**    <u>**Governing Law**</u>.  This Agreement shall be governed by and interpreted in accordance with laws of the Commonwealth of Pennsylvania, without giving effect to any of its conflict of laws provisions.

**10.**    <u>**Notices**</u>.  All notices and other communications required or permitted hereunder or necessary or convenient in connection herewith shall be in writing and shall be deemed to have been given when hand delivered or mailed by registered or certified United States mail, as follows (provided that notice of change of address shall be deemed given only when received):

    If to Endo, to:

        Endo Pharmaceuticals Inc.
        100 Endo Boulevard
        Chadds Ford, PA 19317
        Fax: 610.558.9684
        Attn: General Counsel

    If to Advisor, to:

        (Enter name or title of person to receive notices)
        (Enter Address of individual to receive notices)
        FAX: (Enter Fax number)

or to such other names or addresses as Endo or Advisor, as the case may be, shall designate by notice to the person entitled to receive notices in the manner specified in this paragraph.

**11.**    <u>**Counterparts**</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, but all of which together shall constitute but one and the same instrument.

**12.**    <u>**Severability**</u>.  If any provision of this Agreement or application thereof to anyone or under any circumstances is adjudicated to be invalid or unenforceable in any jurisdiction, such invalidity or unenforceability shall not affect any other provision or application of this Agreement which can be given effect without the invalid or unenforceable provision or application and shall not invalidate or render unenforceable such provision or application in any other jurisdiction.

CONFIDENTIAL

SCIENTIFIC ADVISORY BOARD AGREEMENT

IN WITNESS WHEREOF, the undersigned, intending to be legally bound, have duly executed this Agreement as of the date first above written.

ACCEPTED AND AGREED TO:                    ENDO PHARMACEUTICALS INC.


By: _____              By: _____
Russell Portenoy, MD                      Robert F. Reder, M.D.
(Enter individual's Social Security Number)   VP, Medical Department / Sr. Medical Officer

**CONFIDENTIAL**

RP_000378

SCIENTIFIC ADVISORY BOARD AGREEMENT

ATTACHMENT A

**Project Addendum**

This Project Addendum ("PA"), dated March 3, 2008, is subject to the terms of the Scientific Advisory Board Agreement dated March 3, 2008, (the "Agreement") between Endo Pharmaceuticals Inc. ("Endo") and Richard Rauck, MD ("Advisor").  Pursuant to the Agreement, Advisor has agreed to perform certain services in accordance with written PAs such as this one, entered into from time to time describing such services

The parties hereby agree as follows:

1.      Services to be Provided: Advisor will render such services as may be necessary to complete in a professional manner the project described below.  To the extent that the terms of this PA and the Agreement are inconsistent, the Agreement shall govern.

Review the Clinical Development Plan for EN3294 from a scientific, development, regulatory, and clinical perspective, during a half-day meeting (1 PM to 5 PM) on April 10, 2008 in New York, NY and prior to the meeting by reviewing materials that will be sent.

2.      Honorarium.

Endo shall pay Advisor an honorarium of $2,500 for Services performed hereunder:

**ACKNOWLEDGED, ACCEPTED AND AGREED TO:**

ACCEPTED AND AGREED TO:                         ENDO PHARMACEUTICALS INC.

By: _____              By: _____
Russell Portenoy, MD                                    (Enter name of person signing for Endo)
                                                                        (Enter title of person signing for Endo)

CONFIDENTIAL

RP_000379

**PRI·MED**
KNOWLEDGE THAT TOUCHES PATIENTS

Dear faculty member:

On behalf of Pri-Med Institute (PMI), it's our pleasure to welcome you as a speaker at our upcoming Pri-Med Updates meeting.  Pri-Med Updates is an interactive, continuing education program focused on clinically relevant and patient-care oriented issues. The attendees at this meeting are primary care providers actively engaged in patient care, and many are attending their second or third Updates program. They take voluminous notes during each session, and you can expect a lively question and answer period following your talk.

Following are logistic details related to your upcoming participation:

Program Dates:  **Thursday & Friday, October 29-30, 2009**

Venue & Hotel Information:
**New York Marriott at the Brooklyn Bridge
333 Adams Street
Brooklyn, NY  11201**

The names of the Speaker Ready Room and the General Session Room are confirmed as follows:

General Session Room:  **Grand Ballroom D-I**
Speaker Ready Room:  **Boardroom**

Please be prepared to arrive at the speaker ready room 90 minutes prior to the start of your session in order to review your slides with the speaker ready room person.

These locations will be clearly marked with signage on the day of the meeting.  If you have any difficulty locating these rooms, please consult the hotel concierge or front desk.

Please utilize the following cell phone numbers in the event that you encounter any travel or on-site related emergencies at this meeting:

Pri-Med Meeting Moderator: **Kristin Fludder (401) 447-8796**
Pri-Med Meeting Manager Contact: **Ann Marie Bell (857) 241-0161**

If you intend to receive credit as an attendee, please advise the moderator or SRR staff onsite so that they can provide you with the necessary forms.

We look forward to seeing you, and thank you in advance for your participation.

Sincerely,

Pri-Med Institute

CONFIDENTIAL

Faculty/Author/Teacher Agreement

Russell K. Portenoy
Department of Pain Medicine and Palliative Care
Beth Israel Medical Center
1st Avenue & 16th Street
New York, NY 10003

October 1, 2009

Dear Dr. **Portenoy,**

Thank you for agreeing to serve on our faculty for the upcoming continuing education activity entitled **Pri-Med Updates.** The details of this educational activity and your presentation(s), which should be taken into consideration during your preparation, are outlined on the following agreement form.

Please read the attached *Pri-Med Institute Content and Style Guide for Presenting Slide Presentations*, which will provide you with details both about Pri-Med Updates, our program set-up and about planning and presenting a CE presentation.

**ACCME Standards for Commercial Support and AANP CE Criteria**

Pri-Med Institute requires that speakers comply with the ACCME Standards for Commercial Support as well as the AANP's criteria for continuing education. We will be disclosing to our participants that this CME activity has been supported by an educational grant from **King Pharmaceuticals Inc., Purdue Pharma LP**. As our faculty, you are required to do the following:

- Disclose any significant financial interest or relationship that you may have with a commercial company or the manufacturer(s) of any commercial product/service that may influence the presentation
- Should it be determined that a conflict of interest exists as a result of a financial relationship you have disclosed, this conflict must be resolved prior to confirming your participation in the CME activity. *An explanation of a financial relationship is detailed in the faculty disclosure form.*
- Advise the audience of unlabeled or unapproved uses of drugs and/or devices that may be addressed in the presentation
- Design a presentation that is scientifically rigorous, free from commercial bias, and in the best interests of both Pri-Med Updates learners and their patients
- Contact Pri-Med Institute immediately if you are contacted by a representative of **King Pharmaceuticals Inc., Purdue Pharma LP** regarding this presentation
- Agree to complete the National Faculty Education Initiative, sponsored by the Alliance for Continuing Medical Education, on the difference between certified CME and promotional presentations. **(http://www.nfeinitiative.org)**

Toward these ends, we ask that you complete and sign both the Faculty Disclosure Statement and Faculty Agreement which are attached, and return them to our office no later than seven (7) weeks before the activity dates or within one (1) week of receipt of this letter, whichever is first.

Finally, please know that it is the policy of Pri-Med Institute to conduct post-session evaluations at each of its CE activities. These evaluations ask participants to indicate the applicability of the presentation content to their specific practices, if the presentations satisfied the stated learning objectives, if they were satisfied with the faculty presentations, and if there was any evidence of commercial bias in the presented content. The results of these evaluations are used to plan future CE activities and will be shared with you.

Once again, thank you for your willingness to participate in Pri-Med Updates. We consider you, our faculty, to be one of the program's greatest assets and look forward to working with you.

If we can be of any additional assistance, or can clarify any of the items included in the following agreement, please contact us.

Sincerely yours,
**Edi Johnson**
**Miller Medical Communications, LLC.**



CONFIDENTIAL



**Faculty Agreement**

**This Agreement** between **Russell K. Portenoy, MD,** hereinafter referred to as "Speaker", Pri-Med Institute hereinafter referred to as "Institute", and the **Miller Medical Communications, LLC.** hereinafter referred to as "Education Partner", and dated this **1** of **October 2009** shall reflect the terms and conditions of the engagement of the Speaker by the Institute and Education Partner for participation in **Pri-Med Updates** throughout 2009 and is set forth as follows:

- Speaker's session is entitled: **Opioid Therapy for Chronic Nonmalignant Pain, Screening for Opioid Misuse**

- Scheduled start and end time for presentation:  **12:45 PM - 2:15 PM**

- Your honorarium for this presentation is: $ **2,000.00** per activity plus expenses.

- Session learning objectives:

  - **Review risk assessment and risk management as it pertains to chronic non-cancer pain**
  - **Review guidelines for patient selection, drug administration and monitoring of pharmacologic outcomes when prescribing opioids for chronic non-cancer pain**

- The target audience for this activity is: **Primary Care Physicians**

- The commercial supporter for this activity is: **King Pharmaceuticals Inc, Purdue Pharma LP**

The honorarium is to be paid to the Speaker by the Education Partner.  In addition, the Education Partner will pay the following expenses:

Airfare: Round Trip in COACH class booked at least three weeks prior to the date of the meeting
Ground Transportation: Round trip taxi or shuttle between the Speaker's home or office, airport, and hotel which will be arranged by the Speaker
Hotel Accommodations: Maximum of two nights (booked by the Education Partner in same hotel in which the Update is taking place, whenever possible).
Miscellaneous Expenses: All food and any reasonable miscellaneous expenses (reimbursed at the IRS rate) incurred directly related to the meeting, not including telephone calls and incidentals, will be reimbursed upon submission to the Education Partner all original receipts (required by the IRS) attached to an original invoice within 30 days of submission to the Education Partner.

I have read this Agreement and I agree to its terms and conditions.

_____          _____
Signature of Speaker                                                            Date

Please print name: Russell K. Portenoy, MD

**CONFIDENTIAL**

<u>TERMS AND CONDITIONS:</u>

<u>Presentation Logistics:</u>  Speaker is required to arrive at least <u>two hours</u> prior to her/his presentation time, or the evening prior to the presentation in the event that the session is the first of the day.

- Content:  As outlined below, Pri-Med Institute and its advisory board and academic partner will review the content Speaker's presentation in advance of the activity(ies).  In order for presentation material to be reviewed, it is necessary for us to receive your presentation slides no later than **10/5/09**
- Attendee Handouts:  Pri-Med Institute will post presentation content online that will be made available to attendees prior to the conference.  In order to ensure there is adequate time for attendees to access the material, it will be necessary for us to receive your final slides no later than **10/9/09**
- Audiovisual Set-up:  Pri-Med Institute will provide professional audiovisual services at each *Pri-Med Updates* meeting.  All slides presentations will be pre-programmed and presented on professional audiovisual equipment. Sessions will be audio taped so that a permanent record of your presentation exists for accreditation purposes.  Audio tapes will be held in confidence and will not be repurposed or used for any commercial purposes.

<u>Travel Reservations:</u>  Speaker is responsible for arranging airfare and ground transportation reservations. Institute requires Speaker to arrive at the scheduled city location a minimum of 2 hours prior to the presentation. This may require that Speaker arrive the evening prior to the presentation. Education Partner will arrange air travel in the event Speaker has not provided any travel arrangements three weeks prior to the meeting.  Education Partner will book the most convenient flights which bring the Speaker to the meeting location within the 2-hour Institute guideline. Any changes to reservations and additional charges will be responsibility of the Speaker after the initial reservation is made by the Education Partner.  <u>Speaker's travel itinerary must be provided to the Education Partner and Institute three weeks prior to the date of the meeting.</u>

<u>Required Forms:</u>  Speaker is required sign this agreement as well as to complete and sign the following Faculty Disclosure form and return both by facsimile to the Education Partner no later than one week of receipt by the Speaker.  Speaker shall use a travel and expense form provided by the Education Partner to record expenses for submission under the terms of paragraph 2d.

<u>Presentations:</u>  A Pri-Med Institute Medical and Nursing Advisory Board member, as well as an expert reviewer at the University of Wisconsin Medical School (Pri-Med Institute's academic partner), in conjunction with appropriate Institute staff, will forward to Speaker (via the Education Partner) a review of the content of the presentation (proposed learning objectives and presentation material), and will also review and consult on presentation changes. Presentations will be developed in accordance with the *Pri-Med Institute Speaker Guide* and the *Pri-Med Institute Content and Style Guide for Developing Slide Presentations.*

<u>Other:</u>

- Speaker agrees to present <u>no more than one educational session</u> at each *Pri-Med Updates* venue.  By signing this Agreement the Speaker is committing to speak at the above mentioned educational presentation(s), and thereby will not present a coexisting presentation at the same *Pri-Med Updates* activity(ies) where s/he is committing to speak under this agreement.  Should Institute receive signed agreements from Speaker for more than one educational session at a single *Pri-Med Updates*, Institute will ask Speaker to choose a single session in which to participate.  Should Speaker not choose, Institute will honor the Agreement that is submitted first, and any and all other signed agreements will become void.

- Speaker agrees to notify Education Partner and Institute no later than one month prior to a scheduled presentation of his or her inability to fulfill the obligations of this Agreement.

- Speaker agrees to obtain all consents, authorizations, approvals, and releases which may be necessary for the production of Pri-Med Updates and any written materials related to the program.  Speaker agrees to indemnify PMI and Education Partner with respect to any

Page 3 of 4

CONFIDENTIAL

claims, actions or demands, including reasonable attorney's fees that may arise in any manner out of Speaker's failure to secure such consents, authorizations, approvals or releases.

- ⁂ Speaker consents to allow Institute to audiotape or videotape Speaker's presentation for use as an Internet-based CE activity on Pri-Med Online (http://www.pri-med.com) or in other Pri-Med branded CE materials. Institute will notify Speaker <u>in advance of the date of the presentation</u> when audiotaping or videotaping will be taking place, and will provide Speaker with the posting date of the activity as well as a URL link to the completed educational activity. In addition to the presentation, Speaker agrees to allow Institute to use her/his name, likeness, voice and biographical information in connection therewith. **This consent does not prevent Speaker from making full use of the materials or information contained in her/his presentation.**

- ⁂ In the event Speaker is unable to fulfill his or her obligations under the terms and conditions of this Agreement, Institute reserves the right to refuse making payment to Speaker for any expenses incurred by the Speaker related to that meeting and the Speaker will not receive his or her honorarium for that meeting.

**Please provide your contact information below. This information will NOT be released outside of Miller Medical Communications, LLC. or Pri-Med, and will be used to contact you for issues relating to the speaking engagement outlined in this agreement:**

<u>Title/Affiliation:</u>

<u>Address (please provide an address where you can receive overnight packages/fed exes):</u>

<u>Telephone Number:</u>

<u>Preferred email address:</u>

<u>Social security/tax ID number (required for payment of honorarium and reimbursement of expenses):</u>

<u>Administrative Assistant's (AA) Name:</u>

<u>AA Telephone:</u>

<u>AA email address:</u>

**Please keep a copy of this document for your records.**

Please sign and return all pages of required documents via fax to:

**Edi Johnson
Miller Medical Communications, LLC
501 Fifth Avenue, Suite 2002
New York, NY 10017
212-661-7400 x0 (phone)
212-661-2674 (fax)**

# CONFIDENTIAL

RP_000384

Donna Reid

| | |
|---|---|
| **From:** | Edi Johnson [edi.johnson@millermeded.com] |
| **Sent:** | Thursday, October 01, 2009 10:40 AM |
| **To:** | Marilynn Herleth |
| **Cc:** | Donna Reid |
| **Subject:** | RE: Portenoy Faculty/Author Training Attestation Form |
| **Attachments:** | Portenoy Faculty Agreement Updates.doc |

**Importance:**          High

Hi Marilynn,

I have been having serious computer issues for the past few days.  Finally, attached is the
form that I have updated.  Please return it to me by Monday morning if possible.

Thanks for all

Edi
Miller Medical Communications, LLC
212-661-7400 x0 (phone)
212-661-2674 (fax)
570-406-2132 (mobile)

-----Original Message-----
From: Marilynn Herleth [mailto:MHerleth@chpnet.org]
Sent: Monday, September 28, 2009 4:25 PM
To: edi.johnson@millermeded.com
Subject: Portenoy Faculty/Author Training Attestation Form

Hi Edi - here is the other form you needed.
Now we just have to send you the one you're updating, Once we get it.
Thanks,
Marilyn

-----Original Message-----
From: dpmpc-scanner@chpnet.org [mailto:dpmpc-scanner@chpnet.org]
Sent: Tuesday, December 30, 2003 1:18 PM
To: Marilynn Herleth
Subject: [Image File] Herleth,KMBT350, #761

 FROM:
Image data has been attached to
the E-Mail.
This message and any attachments are confidential and intended solely for the use of the
individual or entity to which they are addressed.  If you are not the intended recipient, you
are prohibited from printing, copying, forwarding, saving, or otherwise using or relying upon
them in any manner.  Please notify the sender immediately if you have received this message
by mistake and delete it from your system.

CONFIDENTIAL

RP_000385

**Donna Reid**

| | |
|---|---|
| **From:** | Edi Johnson [edi.johnson@millermeded.com] |
| **Sent:** | Tuesday, October 27, 2009 10:37 AM |
| **To:** | Russell Portenoy, MD |
| **Cc:** | Marilynn Herleth; Donna Reid ; 'Melanie Wright' |
| **Subject:** | Final Confirmation for the Primed Update Program (Brooklyn) Friday, October 30, 2009 |
| **Attachments:** | PMU Brooklyn Pre-Meeting Letter_2009.doc; Brooklyn Final Portenoy.ppt |

**Importance:** High

Dear Dr. Portenoy,

This is your final confirmation for the King Pharmaceuticals, Inc and Purdue Pharma L.P. supported Primed Update program entitled, **"When Opioids Are Indicated for Chronic Pain: How to Optimize Therapeutic Outcomes and Minimize Risk,"** to be held on Friday, October 30, 2009 at the New York Marriott at the Brooklyn Bridge, 333 Adams Street, Brooklyn, NY 11201, tel. (718) 246-7000.

Please note that your presentation slides as they currently stand are attached just for your reference. This final set of slides has been uploaded on the program computer for the live event. Also attached is a letter from Pri-Med.

On Friday, October 30 at 11:30 AM a driver from Valera Global, holding a sign with your name will meet you in front of Baird Hall 350 E. 17th Street, to drive you to the New York Marriott at the Brooklyn Bridge. If you need to get in touch with Valera Global, their phone number is (718) 433-11111 and your confirmation number is 1111605. You will be departing after the meeting at 2:15 PM. A driver from Valera Global, again holding a sign with your name, will be picking you up at the New York Marriott at the Brooklyn Bridge and driving you back to Baird Hall 350 E. 17th Street. Your confirmation number for this return pickup is 1111606.

On Friday, October 30, your part of the program will be held from **12:45 PM to 2:15 PM** in **Grand Ballrooms D-I on the lobby level (first floor)** of the New York Marriott at the Brooklyn Bridge. Primed is asking that you **arrive at least 45 minutes beforehand, at 12:00 noon, to the Speaker Ready Room (Boardroom)** also on the lobby level of the hotel, to go over slides and meet the Primed team/moderator before the program. Lunch will be available in the Speaker Ready Room.

If you need any assistance while you are there, please do not hesitate to contact Lyerka via cell phone at (203) 376-9299.

We are looking forward to an informative and successful program!

Edi Johnson
Program Coordinator
212-661-7400 x 0
212-661-2674 (fax)

1


CONFIDENTIAL

## MASTER HEALTH CARE PROFESSIONAL (HCP) CONSULTANT SERVICES AGREEMENT

This **MASTER HCP CONSULTANT SERVICES AGREEMENT** (the "Agreement") is made and entered into as of December 16, 2009 ("Effective Date") by and between **Purdue Pharma L.P.** ("Purdue") with principal offices at One Stamford Forum, Stamford, Connecticut 06901-3431 and **Russell K. Portenoy M.D.**, with principal place of employment at Department of Pain Medicine and Palliative Care, Beth Israel Medical Center, First Avenue at 16th Street, New York, NY 10003 ("Consultant").

1.    Engagement. Consultant is engaged by Purdue to provide consulting services ("services"), in each case as agreed upon by the parties in Statement(s) of Work, each of which will be in writing signed by both parties, will be made a part hereof and will include detailed information concerning the services to be performed. The primary contact at Purdue relating to the performance of services hereunder will be specified in each Statement of Work.

2.    Outside Employment. Purdue acknowledges that Consultant is an employee of Beth Israel Medical Center (the "Medical Center") and member of the faculty of Albert Einstein College of Medicine (the "University"), and as such may be subject to certain policies relating to faculty or employee independent consulting.  However, subject to such Medical Center and University policies, Consultant is being engaged hereunder, and will perform the services, in his individual capacity and outside the scope of his employment as a faculty member, employee, or otherwise related to his affiliation with the Medical Center or University.  In performing the services hereunder, Consultant shall not use the funds, facilities, equipment and/or materials owned or paid for by or through the Medical Center or University or as a result of his employment or participation in research at the Medical Center or University.

3.    Term and Termination.
      3.1  Term. The term of this Agreement will begin on the Effective Date and continue for two (2) years expiring December 31, 2011, and may be extended upon the written agreement of both parties pursuant to Section 17 hereof.
      3.2  Termination. This Agreement and any Statement of Work hereunder may be terminated by either party for any reason upon fourteen (14) days prior written notice to the other..  All undisputed invoices for work that has been performed by Consultant up to the time of termination shall be paid by Purdue as provided in Section 6 hereof.

4.    Compensation.  Consultant's fees for services will be detailed in each Statement of Work.

5.    Expenses.  Purdue will reimburse Consultant for reasonable travel, lodging and reasonable out-of-pocket expenses incurred in accordance with Exhibit A "Consultant Travel and Expenses" attached hereto and made a part hereof and any applicable Statement of Work, subject to the limitations set forth in each Statement of Work.  Consultant will obtain approval from Purdue prior to incurring any expenses associated with the performance of services hereunder.  Consultant will provide receipts and any other back-up documentation reasonably requested by Purdue ("Expense Documentation") for any expenses for which it seeks reimbursement hereunder and Consultant acknowledges and agrees Purdue will have no obligation to reimburse for expenses for which no Expense Documentation is provided.

6.    Payment Terms. Purdue will pay Consultant's fees for services and will reimburse Consultant for authorized expenses within forty five (45) days of receipt by Purdue of a correct and undisputed invoice from Consultant. Invoices will state in detail the deliverables and amounts due, including the Consultant's name, the work performed, the dates of performance, and when applicable, the time worked for each task. Invoices for allowable expenses incurred by Consultant will be itemized. All invoices submitted by Consultant will state amounts due in U.S. dollars and all payments made by Purdue will be in U.S. dollars and will be sent to the address set forth above, or to such other address as Purdue may subsequently designate by notice.

CONFIDENTIAL

RUSSELL PORTENOY MD / PURDUE PHARMA L.P.

7.  Confidentiality.

7.1 During the term of this Agreement, Consultant may receive, learn or have access to confidential information of Purdue, or third parties to whom Purdue has an obligation of confidentiality, including but not limited to Purdue's products or business plans. Consultant may also receive, learn or have access to additional confidential information of Purdue that is generated during the course of or as a result of performance of services hereunder. All such information will be deemed "Confidential Information". Such Confidential Information will not be subject to obligations of non-disclosure and non-use if it:

7.1.1  was already known to Consultant at the time of disclosure by or on behalf of Purdue as shown by prior written records; or

7.1.2  is already available or becomes available in print or other tangible form, to the public through no fault of Consultant; or

7.1.3  was received by Consultant from a third party who has the right to disclose it; and who did not receive it, directly or indirectly, from or on behalf of Purdue.

7.2 For a period of ten (10) years from the date of disclosure, Consultant will keep all Confidential Information in confidence, and will not disclose the Confidential Information to anyone (including through lecture, presentation, manuscript, abstract, poster or any other publication).

7.3 Further, Consultant will use the Confidential Information solely for the purpose of performing his obligations under this Agreement.

7.4 Consultant agrees to not make copies of any Confidential Information, aside from those copies required by Consultant for performing his obligations under this Agreement. At any time upon Purdue's demand or upon termination of this Agreement, Consultant will return to Purdue all such information, including any copies. It is also understood that any work product produced by Consultant pursuant to its engagement by Purdue will be the property of Purdue.

7.5 In the event that any Confidential Information is required to be disclosed pursuant to any judicial or government request, requirement or order, Consultant shall take reasonable steps to provide Purdue with sufficient prior notice in order to allow Purdue to contest such request, requirement or order. In such event, Consultant shall cooperate reasonably with Purdue, at Purdue's expense, in seeking confidential treatment of such requested or compelled disclosure.

The obligations and restrictions set forth in this Section 7 will survive the termination or expiration of this Agreement.

8.  Protection of Personal Information.  Performance under the Agreement may involve the exchange of certain information about individual persons including, without limitation, individually identifiable health information, employment information, insurance information, and family information ("Personal Information"). The parties will transmit, handle, store, maintain, use and destroy Personal Information in a manner that will preserve its confidentiality and will not use or disclose it for any purposes other then the performance of this Agreement. The obligations and restrictions set forth in this Section 8 will survive the termination or expiration of this Agreement.

9.  Inventions & Patents.

9.1 Any and all inventions, discoveries, trade secrets, know-how, improvements, copyrights or work product or other intellectual property which are conceived of or made as a result of any

CG-PORTENOY-HCP MCSA 121609

2

CONFIDENTIAL

RP_000388

RUSSELL PORTENOY MD / PURDUE PHARMA L.P.

work provided under this Agreement by Consultant, Purdue or a combination thereof, will be owned entirely and exclusively by Purdue ("Intellectual Property"). At Purdue's request and expense, Consultant shall immediately assign, and shall arrange for their employees to immediately assign, to Purdue, its designees, successors, legal representatives or assigns, Consultant's entire right, title and interest, if any, in and to the Intellectual Property.

9.2 Consultant agrees to assist in all necessary filings in the appropriate assertion of Purdue's interest in the Intellectual Property and will be compensated at fair market value for such activities.

9.3 Nothing in this Section 9 will be construed to grant either party any right of license under any patent or other intellectual property of the other party that existed prior to the Effective Date of this Agreement.

9.4 Pursuant to 21 U.S.C. Section 355 (b) and equivalent provisions of any other applicable jurisdiction, Consultant hereby grants to Purdue, and Purdue hereby retains, the exclusive right of reference to and use of any information, including data or results there from, in support of new drug applications submitted by or on behalf of Purdue to the United States Food and Drug Administration ("FDA") or to any other competent authority in any other jurisdiction to which drug applications may be submitted. Further, it is Purdue's exclusive right to grant third parties authorization to reference or use any information.

9.5 Purdue acknowledges that Consultant may have an obligation to report to the Medical Center or University certain intellectual property created in whole or in part by Consultant pursuant to this Agreement. Notwithstanding this obligation, Consultant agrees to provide written notice to Purdue if such a required reporting is made.

The rights and obligations set forth in this Section 9 will survive the termination or expiration of this Agreement.

10.  Liability Insurance. The Company shall provide and maintain at its own expense during this Agreement the following insurance coverage, with such insurers as shall be acceptable to the Medical Center and Consultant in minimum limits of $1 million per occurrence and $2 million in the aggregate ($1.75 million plus $250,000 in self insured retention): comprehensive general liability and products liability. The Company shall give the Medical Center thirty (30) days prior written notice of any changes in or cancellation of such insurance. The Medical Center shall provide and maintain at its own expense during this Agreement the following insurance coverage, with such insurers as shall be acceptable to Company, in minimum limits of $1 million per occurrence and $2 million in the aggregate: comprehensive general liability and professional liability. Each party shall give the other thirty (30) days prior written notice of any changes in or cancellation of such insurance.

11.  Publications. The Consultant shall not use any results generated pursuant to the performance of services for teaching, research, education, clinical or publication purposes without the prior written consent of Purdue. The obligations of this Section 11 will survive the termination or expiration of this Agreement.

12.  Standard of Performance and Adverse Event Reporting.  Consultant represents and warrants that he has the legal right and authority to enter into and perform his obligations under this Agreement. Consultant represents and warrants that all services will be performed in conformance with all applicable laws, regulations and rules governing the performance of services hereunder.  Consultant will perform all services in accordance with this Agreement and with a high degree of care, skill, diligence, professional knowledge, judgment and expertise according to generally accepted professional and industry standards,

3

CONFIDENTIAL

RUSSELL PORTENOY MD / PURDUE PHARMA L.P.

in a well-managed, organized, efficient and workmanlike manner and to the reasonable satisfaction of Purdue.

In addition, during the term of this Agreement, Consultant agrees to report to Purdue any Adverse Event (any unintended medical or physical condition that is evidenced during the use of a Purdue product) or any complaint about a Purdue product that comes to Consultant's attention. The requirements and procedures for the Consultant to report Adverse Events or Product Complaints are set forth in Exhibit B attached hereto.

13.     Notices. All legal notices or demands provided for by this Agreement will be in writing and will be deemed to have been given when delivered by certified mail, return receipt requested, or by overnight courier. All such communications should be addressed to the address of the respective party stated below or to such changed address as the party may have provided by notice:

To Purdue:                       Purdue Pharma L.P.
                                 201 Tresser Boulevard
                                 One Stamford Forum
                                 Stamford, CT 06901
                                 Attention: General Counsel

To Consultant:                   Dr. Russell K. Portenoy
                                 Department of Pain Medicine and Palliative Care
                                 Beth Israel Medical Center
                                 First Avenue at 16th Street
                                 New York, NY 10003

14.     Assignment. Neither party may subcontract or assign the services and/or his obligations under this Agreement in whole or in part without the other's prior written consent. No assignment will relieve either party of the performance of any accrued obligation that such party may have under this Agreement.

15.     Government Employment Status. Purdue is not permitted to retain individuals who work for, or provide services to, the federal government of the United States of America if such retention presents a real or apparent conflict of interest or if an honorarium or other compensation would constitute an unlawful gift or compensation to an employee of the federal government. If Consultant works for or provides services to the federal government of the United States of America, whether as full- or part-time employee or special employee or consultant, Consultant represents by signing this Agreement that no real or apparent conflict of interest exists by entering into this Agreement with Purdue.

16.     Applicable Law. This Agreement will in all respects be governed by, interpreted, construed and enforced in accordance with the laws of the State of New York, USA, applicable to contracts executed and to be fully performed therein. Except for actions seeking injunctive relief initiated by Purdue to protect Purdue Confidential Information which may be brought in any court of competent jurisdiction in the continental U.S., the parties agree that any action or proceeding arising out of or in connection with this Agreement will be in a federal or state court of appropriate venue and subject matter jurisdiction located in the State of New York, USA.

17.     Entire Agreement. This Agreement, together with appendices, attachments and/or exhibits, constitutes the entire agreement between the parties with respect to the subject matter contained herein, and this Agreement supersedes all prior understandings and agreements between the parties with respect to the subject matter contained herein. This Agreement and the rights and obligations hereunder may not be modified, amended or waived, whether in whole or in part, except by a writing signed by both parties.

P.05

JAN-21-2010  14:15

CONFIDENTIAL

RP_000390

RUSSELL PORTENOY MD / PURDUE PHARMA L.P.

18.   Independent Contractor/Subcontractor.  Consultant is and will be treated as an independent contractor and not an agent, employee, joint venturer or partner of Purdue.  Consultant represents and warrants that he will pay, when due, all applicable taxes in connection with the fees received for the provision of services hereunder. No life, casualty, or disability insurance, or health, retirement or any other employment benefits will be paid by Purdue to or for the benefit of Consultant, and Consultant waives any right to such insurance benefits.

19.   Waiver.  No waiver of any term, provision or condition of this Agreement whether by conduct or otherwise in any one or more instances will be deemed to be or construed as a further or continuing waiver of any such term, provision or condition, or of any other term, provision or condition of this Agreement.

20.   Modification.  This Agreement and the rights and obligations hereunder may not be modified, amended or waived, whether in whole or in part, except by a writing signed by authorized representatives of both parties.

21.   Invalidity. The terms of this Agreement will be severable so that if any term, clause, or provision hereof is deemed invalid or unenforceable for any reason, such invalidity or unenforceability will not affect the remaining terms, clauses and provisions hereof, which will continue with full force and effect to the maximum allowable extent under applicable law.

22.   Use of Name. Under no circumstances may one party use the name of the other party, or any of its personnel, in any publicity, promotional literature or advertising without the prior written permission and approval of the other party.

23.   Debarment.  Consultant represents that he is not and has never been (i) debarred under Section 306(a) or 306(b) of the United States Federal Food, Drug and Cosmetic Act, as may be amended and supplemented from time to time ("FDCA"); (ii) charged with, or convicted of, any felony or misdemeanor within the ambit of 42 U.S.C. §§ 1320a-7(a), 1320a-7(b)(1)-(3), or proposed for exclusion during the screened person's employment or contract term; or (iii) excluded, suspended or debarred from participation, or otherwise ineligible to participate, in any U.S. Federal or State health care programs (including convicted of a criminal offense that falls within the scope of 42 U.S.C. §1320a-7 but not yet excluded, debarred, suspended, or otherwise declared ineligible), or excluded, suspended or debarred from participation, or otherwise ineligible to participate, in any U.S. Federal procurement or nonprocurement programs.  Notwithstanding any provision in this Agreement to the contrary, Purdue may immediately terminate this Agreement if Consultant violates this Section.  Consultant will notify Purdue immediately, but in no event later than five (5) business days, after knowledge of any such exclusion, debarment, suspension or otherwise ineligibility occurring during the term of this Agreement, or if any action or investigation is pending.

24.   Force Majeure.  Neither party will be liable for any delay or failure to perform as required by this Agreement to the extent that such delay or failure to perform is caused by circumstances reasonably beyond either party's control, such as labor disputes, accidents, any law, order or requirement of any governmental agency or authority, civil disorders or commotions, acts of aggression, fire or other casualty, strikes, acts of God, explosions, or material shortages. Performance time will be considered extended for a period of time equivalent to the time lost because of any such delay or failure to perform; however, in any event, this extension of time will not exceed 15 days unless the parties otherwise agree in writing.

25.   Behavior of Consultant.  During the performance of services hereunder, neither party will commit any act of sexual harassment nor discriminate on the basis of sex, race, religion, national origin, disability, marital status, Veteran's status, age, and/or any other status protected by law.

P.06                                                                        JAN-21-2010  14:16

CONFIDENTIAL

RP_000391

RUSSELL PORTENOY MD / PURDUE PHARMA L.P.

26.   Non-Exclusivity. Consultant maintains the right, during or after the term of this Agreement and at Consultant's sole discretion, to render similar services and/or otherwise seek employment with other companies, so long as doing so does not create a conflict of interest with the services being performed by Consultant hereunder, and so long as Consultant does not breach his obligations under this Agreement, including without limitation those set forth in Sections 7, 8 and 9 of this Agreement.

27.   Transmission of Deliverables.   In the event that Consultant intends to transmit Confidential Information or Personal Information (as defined in Sections 7 and 8 hereof, respectively) to Purdue from a remote location by means of the Internet, Consultant will first obtain the permission of the Purdue Contact so identified in the applicable Statement of Work, and thereafter will transmit such Confidential Information or Personal Information (including, without limitation, draft and final documents) through Purdue's secure server or validated secure server, in accordance with instructions to be provided by Purdue at the request of Consultant. If Consultant is unable to access the server required for a particular transmission, Consultant will send the Confidential Information or Personal Information to Purdue on compact disks or by other electronic media approved by Purdue.

28.   Conflicts of Interest.   If Consultant is a member of a formulary-setting or clinical practice guideline development committee, Consultant agrees to disclose the committee(s) the existence and nature of this Agreement prior to the execution of this Agreement and for a two (2) year period subsequent to the termination of this Agreement.

29.   Compliance with FDA Regulations. Under the FDA Guidance on Industry-Supported Scientific and Educational Activities, if you are selected to speak in an independent educational program, you must disclose during the program any significant relationship between you and Purdue.  In accordance with this Agreement you agree to disclose to any program provider your relationship to Purdue so that a determination can be made as to whether a disclosure is necessary.

AGREED AND ACCEPTED as of the Effective Date set forth above.

PURDUE PHARMA L.P.

By:

Name: Robert Kaiko

Title: VP R&D PO Folio Dev.

CONSULTANT

By:
Russell K. Portenoy M.D.

CONFIDENTIAL

RP_000392

RUSSELL PORTENOY MD / PURDUE PHARMA L.P.

## EXHIBIT A
## CONSULTANT TRAVEL AND EXPENSES

### GENERAL

It is the policy of Purdue to reimburse only those approved expenses that are identified in this document. Purdue's travel agency (the "Travel Office") arranges for airline, car rental, hotel, and rail and must be used for all travel of this type unless otherwise approved by the Purdue in writing and in advance. Selection of all vendors is at the discretion of the Travel Office.

The Travel Office is open Monday through Friday from 8:00 a.m. – 6:00 p.m. Eastern Standard Time, and may be reached at (800) 253-2415. Calls to the Travel Office's Global services Center (after-hours service) is billable to the Purdue and will be the responsibility of the Consultant, unless traveler is stranded *en route* or unless otherwise approved by the Purdue.

A completed, approved "Non-Employee Notification of Travel" form must be submitted by a Purdue representative for each Consultant traveler who will be submitting expenses, prior to travel arrangements being made. The Consultant traveler must provide their credit card information for the billing of travel arrangements. Consultant traveler may also complete a traveler profile form for their convenience.

Original receipts for all expenses of $25 or greater must be submitted to the Purdue with expense submissions. Receipts for multiple persons must identify the name(s) of all persons in attendance, and the business purpose.

### AIR TRAVEL

All domestic and international air travel will be arranged in Coach Class, utilizing the lowest applicable airfare, unless otherwise authorized. E-tickets will be issued for domestic and international travel as applicable. Both the e-ticket/passenger receipt and travel agency itinerary/invoice must be submitted with expense submission. It is the Consultant's responsibility to notify the Travel Office of any cancellations. Any fees associated with cancellations that are not at the Purdue's request will be the responsibility of the Consultant. Reservations should be made 14 days in advance unless Purdue request is less than that time period. Air phone charges will not be reimbursed.

### AIRPORT PARKING

Parking on site at the airport will be reimbursed when travel is limited to two days or less. When travel exceeds two days the use of discount or offsite parking must be utilized.

### LODGING

Business Class and Limited Service hotel accommodations must be used when making hotel arrangements. Deluxe hotels will not be utilized. Deluxe chains include Four Seasons, JW Marriott Hotels & Resorts, Luxury Collection Starwood Hotels & Resorts, Mandarin Oriental, Orient Express and Ritz Carlton Hotels & Resorts. Additional charges for upgraded rooms to executive floors, concierge levels or suites will not be reimbursed.

Reasonable and necessary laundry and dry cleaning services will be reimbursed for trips of more than five business days. Charges for mini-bar, in-room movies and health club charges will not be reimbursed.

### GROUND TRANSPORTATION

CG-PORTENOY-HCP MCSA 121609

P.08

JAN-21-2010  14:17

CONFIDENTIAL

RP_000393

RUSSELL PORTENOY MD / PURDUE PHARMA L.P.

Travelers should use the most economical mode of transportation to and from airports, rail terminals, hotels and business destinations.

Mileage for personal car use will be reimbursed at the standard IRS rate that is in effect at the time of travel.

If approved by Purdue, travelers will have use of a rental automobile at their destination. Use of a rental automobile is in Purdue's sole discretion and is only approved when other forms of transportation are impractical, more expensive or not available, or if the destination is more than 200 miles round trip. Individuals will receive a mid-size car. Full size will be used if there are four (4) or more travelers riding together. Travelers are to return the rental car with a full tank of gas. Purdue does not reimburse for refueling charges by the car rental company. Purdue does not reimburse Consultant for Rental Car insurance coverage, and does not provide to Consultant or reimburse Consultant for any personal insurance coverage. Notwithstanding the foregoing, LDW (Loss Damage Waiver) and Accident Liability Insurance (minimum statutory limit) Rental Car Insurance covering third party bodily injury and third party property damage will be provided if the Travel Office is able to utilize Purdue's preferred rental car vendor and receive Purdue's corporate rate. It is the Consultant's sole responsibility to (1) verify if the rental car vendor is Purdue's preferred vendor and if so, that the car been reserved using the corporate rate, (2) decide the adequacy of any minimum statutory limit of LDW and Accident Liability Insurance provided and to pay for additional limits if deemed necessary in the Consultant's sole discretion. For all other occasions, it is recommended that Consultant purchase through the rental car vendor or otherwise arrange for, through a personal auto insurance policy, adequate limits of Accident Liability Insurance, as well as Collision, Comprehensive, Fire and Theft insurance coverage when renting a vehicle.

## MEALS

Purdue will reimburse for meal expenses (breakfast, lunch, and dinner) actually incurred during business travel. Meals should not exceed $50 per day, including gratuity. Room service may be used within these cost guidelines.

## CELLULAR PHONES

Reasonable and customary calls for Purdue business purposes will be reimbursed with submission of a cellular phone bill that shows both the account owner and the call detail.

CONFIDENTIAL

RP_000394

RUSSELL PORTENOY MD / PURDUE PHARMA L.P.

## EXHIBIT B
## ADVERSE EVENTS AND PRODUCT COMPLAINTS FOR PURDUE PRODUCTS

As part of doing business with Purdue, we require our vendors to assist us in ensuring that Adverse Events (AEs) and Product Complaints (PCs) involving our products are appropriately captured. Therefore, **we expect you to notify each of your employees who provide services to Purdue of this policy.** You are free to reproduce this document for the notification process.

It is Purdue's policy, as well as a legal obligation for Purdue, to report Adverse Events (AEs) that occur in anyone that is taking any of our medications or Product Complaints (PCs) involving our products.

- An Adverse Event (AE) is any unintended event associated with the use of the marketed product, whether or not considered related to that particular product. Unintended means any event which is not a purpose of the product (i.e., respiratory depression, nausea, constipation etc...)

- A Product Complaint (PC) is any complaint about the physical characteristics of a product.

- Reporting: **Any person who is engaged in any type of work for Purdue** who hears about an Adverse Event (AE) involving a person receiving a Purdue product or a product (brand name is not known) with the same active ingredient as the Purdue product or becomes aware of a Product Complaint (PC), must report the incident immediately (within 48 hours) to the Drug Safety and Pharmacovigilance Group (DSP), via

  | | |
  |---|---|
  | Fax: | (203) 588-6395 |
  | Phone: | 888-726-7535 prompt 2 (to report an illness) or prompt 3 (to report a product issue) |
  | E-mail: | "Drug Safety and Pharmacovigilance" or "AE Report" address in Outlook (or drugsafetyandpharmacovigilance@pharma.com) to report an illness, or "Product Complaints" address in Outlook (or productcomplaints@pharma.com) to report a product issue |

You must report this information within 48 hours even if you are unsure whether the Adverse Event was caused by, or related to, the Purdue product or whether the Product Complaint concerned a Purdue brand product (brand name unknown).

Thank you for your attention to this matter. If you have any questions about this policy, please contact the Drug Safety Product Monitor at 888-726-7535 prompt 2.

CG-PORTENOY-HCP MCSA 121609

P.10

JAN-21-2010  14:18

CONFIDENTIAL

RP_000395

## STATEMENT OF WORK #1 DATED DECEMBER 16, 2009

TO MASTER HCP CONSULTANT SERVICES AGREEMENT DATED DECEMBER 16, 2009
BETWEEN PURDUE PHARMA L.P. AND RUSSELL K. PORTENOY, M.D.

This **STATEMENT OF WORK #1** is made and entered into as of December 16, 2009
("Effective Date") by and between **Purdue Pharma L.P.** ("Purdue") with principal offices at
One Stamford Forum, Stamford, Connecticut 06901-3431 and **Russell K. Portenoy M.D.**, with
principal place of employment at Department of Pain Medicine and Palliative Care, Beth Israel
Medical Center, First Avenue at 16th Street, New York, NY 10003 ("Consultant").

**WHEREAS,** Purdue and Consultant have entered into a certain Master HCP Consultant Services
Agreement dated December 16, 2009 (the "Master Agreement"); and

**WHEREAS,** pursuant to the Master Agreement, Consultant has agreed to provide to Purdue
certain services in accordance with Statements of Work from time to time entered into by the
parties, and Purdue and Consultant now desire to enter into such a Statement of Work.

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein and intending
to be legally bound, the parties hereby agree as follows:

1. <u>Scope of Services</u>. Under this Statement of Work #1, Consultant shall provide to
   Purdue the following services related to Purdue's Analgesic Advisory Board
   ("Project"):

   * Provide expert opinion regarding:

     o New product opportunities that Purdue is in the process of
       evaluating;
     o Products currently under development by Purdue, as well as those
       already marketed by Purdue;
     o Areas of unmet medical need for which new treatments might be
       acquired and/or developed and applied;
     o The clinical application/implications of new Purdue products/agents.

   * Participate in teleconferences and onsite meetings as requested by Purdue, to
     discuss and/or perform the Project.

   * Perform other tasks as requested by Purdue, in order to satisfactorily complete
     the Project.

2. <u>Compensation</u>. Consultant's fees for performance of the Project will be Five
   Hundred Dollars (US $500.00) per hour, with time spent traveling in connection with
   performance of the Project billed at Two Hundred and Fifty Dollars ($250.00) per
   hour, subject to a maximum daily rate of Four Thousand Dollars (US $4,000.00)
   ("Maximum Daily Rate"). Purdue will not be liable for payment of any fees incurred
   in excess of the Maximum Daily Rate without Company's prior written approval.
   All figures are in United States dollars.

CG/PORTENOY-SOW #1 TO MCSA 121609

CONFIDENTIAL

RP_000396

TOTAL P.12

3. Expenses. Consistent with Purdue's policies and applicable state law, Purdue will cover/reimburse Consultant for reasonable travel, lodging and out-of-pocket expenses incurred in connection with performance of the Project in accordance with the terms of the Master Agreement.

4. Term and Termination. The term of this Statement of Work #1 shall commence on the Effective Date and shall continue through December 31, 2011; provided that this Statement of Work #1 may be terminated or extended in accordance with the terms of the Master Agreement.

5. Consultant Primary Contact. Consultant's primary contact with respect to this Project shall be Dr. Robert Kaiko, Vice President, Research and Development and Portfolio Development.

6. Incorporation by Reference; Conflict. The provisions of the Master Agreement are hereby expressly incorporated by reference into and made a part of this Statement of Work #1. In the event of a conflict between the terms and conditions of this Statement of Work #1 and those of the Master Agreement, the terms of the Master Agreement will take precedence and control over those in this Statement of Work #1.

**ACCEPTED AND AGREED**, the parties have caused this Statement of Work #1 to be duly executed as of the Effective Date written above.

**PURDUE PHARMA L.P.**

By: _____

Name: Robert Kaiko

Title: VP R+D Portfolio Dev.

**CONSULTANT**

By: _____
Russell K. Portenoy M.D.

CG/PORTENOY-SOW #1 TO MCSA 121609

JAN-21-2010  14:19

CONFIDENTIAL

RP_000397



| | | | | | Purchase order | | |
|---|---|---|---|---|---|---|---|

**Purchase order**

| PO No. 4500054755 | SAP Control Num | Page 1 of 2 |
|---|---|---|

This Purchase Order No. must appear on all invoices, packing lists, cartons and correspondence related to this order.

**Ship To:**
Purdue Pharma L.P. - Stamford
ATTENTION: Monica Leipold
201 Tresser Blvd
STAMFORD CT  06901

**SUPPLIER:**

PORTENOY RUSSELL K  MD
BETH ISRAEL MEDICAL CTR
FIRST AVE AT 16TH ST BAIRD HALL
NEW YORK NY  10003

**Bill To:**
**Purdue Pharma L.P.**
1 Stamford Forum / 201 Tresser Blvd.
Stamford, CT  06901
Attn: Accounts Payable

| Supplier 1023111 | Date of Order / Buyer 02/01/2010 Harding, Lisa | Revised Date / Buyer |
|---|---|---|
| Payment Terms Net 20 | Ship Via | F.O.B. |
| Freight Terms | Requestor / Deliver To LeipoldM | Phone / Buyer 203-588-8693 |

| Item | Part Number / Descr. | Delivery Date | Quantity | Unit | Unit Price | Extension | Tax |
|---|---|---|---|---|---|---|---|
| | *TERMS AND CONDITIONS:  As further set forth in STATEMENT OF WORK #1 effective 12/16/09 and MASTER CONSULTANT SERVICES AGREEMENT effective 12/16/09.* | | | | | | |
| | *AGREEMENT TERM: 12/16/09 - 12/31/11* | | | | | | |
| 0010 | PAAB Consulting Services and Fees | 12/31/2011 | 40,000 | EA | 1.00 USD | 40,000.00 | 0.00 |

| Purchase order number and supplier part number (if specified) must appear on the packaging slip and invoice. All  terms and conditions which print out  as the last page of this order are incorporated herein. | **Total $** | 40,000.00 |
|---|---|---|

PURCHASING

Authorized Signature _Lisa Harding_

# CONFIDENTIAL

RP_000398

# INVOICE

**Mail invoices to:**
**Purdue Pharma L.P.**
**One Stamford Forum**
**Stamford, CT  06901**
**ATTENTION:  Accounts Payable**

**Date of Invoice:** _____2/5/10_____

**Purdue Contact:** _____Cheryl Daly_____

**Cost Center:** _____  **P.O.**
_____4500054755_____

| Date | Description of Services or Expenses | Amount |
|---|---|---|
| 1/29/2010 | Meeting from 8:00-4:00 | $4000 |
| 1/29/2010 | Travel | $500 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **Total** | $4500 |

**Please attach itemized receipts for expenses.**

**Payments will be remitted to:**

| | |
|---|---|
| **Payee Name** | Russell Portenoy, MD |
| **Address** | Beth Israel Medical Center, Department of Pain Medicine and Palliative Care, First Ave at 16th St |
| **City** | New York |
| **State** | NY |
| **Zip Code** | 10003 |
| **Tax ID Number** | N/A |

CONFIDENTIAL