# PSJ3
# Exhibit 57H

**Russell Portenoy, MD**

| | |
|---|---|
| From: | Leveene, Stephanie, Springer US [Stephanie.Leveene@springer.com] |
| Sent: | Wednesday, July 13, 2011 10:21 AM |
| To: | Russell Portenoy, MD; Paul Christo |
| Subject: | RE: Revised patient vignettes for Opioid Resource |

Dear Dr. Portenoy and Dr. Christo,

I hope you are well.  I am writing to remind you that your comments on the revised patients vignettes are due today.  Could you please provide them at your earliest convenience?  Thank you very much.

Sincerely,


**Stephanie Leveene**
Springer Healthcare LLC
Medical Writer

233 Spring Street | New York | NY 10013 | USA
tel: +1 212 460 1555
fax:+1 212 620 8442
mobile: +1 646 546 2361
E-mail: stephanie.leveene@springer.com

www.springerhealthcare.com


**From:** Leveene, Stephanie, Springer US
**Sent:** Thursday, July 07, 2011 3:32 PM
**To:** Russell Portenoy, MD; Passik, Steven David; Paul Christo; ArGoff, Charles; Charles Argoff
**Subject:** Revised patient vignettes for Opioid Resource

Dear KTLs,

I wanted to thank you for providing excellent feedback on the ML comments on the Opioid Resource patient vignettes.  We have now revised them based on all the comments, and the latest versions are attached.  We hope that we have struck a good balance between idealistic and realistic scenarios.

We would like to provide these to Purdue soon, so could we please have your thoughts on these **no later than Wednesday, July 13th**?  Please let me know if you have any questions, and I look forward to hearing from you.

Sincerely,


**Stephanie Leveene**
Springer Healthcare LLC
Medical Writer

233 Spring Street | New York | NY 10013 | USA
tel: +1 212 460 1555
fax:+1 212 620 8442
mobile: +1 646 546 2361
E-mail: stephanie.leveene@springer.com

1

# CONFIDENTIAL

RP_000648

**Russell Portenoy, MD**

| | |
|---|---|
| From: | Leveene, Stephanie, Springer US [Stephanie.Leveene@springer.com] |
| Sent: | Thursday, July 21, 2011 8:22 AM |
| To: | Russell Portenoy, MD |
| Subject: | RE: Revised patient vignettes for Opioid Resource |

Dear Dr. Portenoy,

Thank you for your note.  I'm glad that you are pleased with the revised vignettes.  We will go ahead and make the change that you requested.

Sincerely,


**Stephanie Leveene**
Springer Healthcare LLC
Medical Writer

233 Spring Street | New York | NY 10013 | USA
tel: +1 212 460 1555
fax:+1 212 620 8442
mobile: +1 646 546 2361
E-mail: stephanie.leveene@springer.com

www.springerhealthcare.com


**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** Thursday, July 21, 2011 8:03 AM
**To:** Leveene, Stephanie, Springer US
**Subject:** RE: Revised patient vignettes for Opioid Resource

I am sorry for the delay in reviewing these.  I like them very much.

My only request is a tiny one, and a bit idiosyncratic.  This is to remove the word "clean" from the high risk vignette.  It is vaguely pejorative to people who have the disease of addiction.

Otherwise, it appears fine to me.

Russ Portenoy

**From:** Leveene, Stephanie, Springer US [mailto:Stephanie.Leveene@springer.com]
**Sent:** Monday, July 18, 2011 9:17 AM
**To:** Russell Portenoy, MD
**Subject:** FW: Revised patient vignettes for Opioid Resource
**Importance:** High

Dear Dr. Portenoy,

I wanted to follow up on my e-mail of last week regarding the revised patient vignettes.  We have received comments from the other thought leaders and are about ready to send the vignettes back to Purdue.  Do you have anything to add

1

CONFIDENTIAL

RP_000649

regarding the pieces?  (I've attached copies to this e-mail.)  If possible, please send us your thoughts by ~~Wednesday, July 20~~.  If we do not receive anything by then, we will assume that the vignettes are OK as is.

Again, thank you very much for all your help with this project.  I look forward to hearing from you.

Sincerely,


**Stephanie Leveene**
Springer Healthcare LLC
Medical Writer

233 Spring Street | New York | NY 10013 | USA
tel: +1 212 460 1555
fax:+1 212 620 8442
mobile: +1 646 546 2361
E-mail: stephanie.leveene@springer.com

www.springerhealthcare.com

---

**From:** Leveene, Stephanie, Springer US
**Sent:** Thursday, July 07, 2011 3:32 PM
**To:** Russell Portenoy, MD; Passik, Steven David; Paul Christo; ArGoff, Charles; Charles Argoff
**Subject:** Revised patient vignettes for Opioid Resource

Dear KTLs,

I wanted to thank you for providing excellent feedback on the ML comments on the Opioid Resource patient vignettes.  We have now revised them based on all the comments, and the latest versions are attached.  We hope that we have struck a good balance between idealistic and realistic scenarios.

We would like to provide these to Purdue soon, so could we please have your thoughts on these **no later than Wednesday, July 13th**?  Please let me know if you have any questions, and I look forward to hearing from you.

Sincerely,


**Stephanie Leveene**
Springer Healthcare LLC
Medical Writer

233 Spring Street | New York | NY 10013 | USA
tel: +1 212 460 1555
fax:+1 212 620 8442
mobile: +1 646 546 2361
E-mail: stephanie.leveene@springer.com

www.springerhealthcare.com


This message and any attachments are confidential and intended solely
for the use of the individual or entity to which they are addressed.  If


CONFIDENTIAL

RP_000650

**Russell Portenoy, MD**

| | |
|---|---|
| **From:** | Leveene, Stephanie, Springer US [Stephanie.Leveene@springer.com] |
| **Sent:** | Wednesday, August 24, 2011 10:07 AM |
| **To:** | Charles Argoff; ArGoff, Charles; Paul Christo; Passik, Steven David; Russell Portenoy, MD |
| **Cc:** | Etchells, Katy, Springer Healthcare; Braca, David, Springer US |
| **Subject:** | Status of PERFORM and revised photo request |

Dear PERFORM KOLs,

I hope you are all having a good August.  We had received additional, minor comments on the patient vignettes and revised them accordingly; those and all of the other pieces for the PERFORM resource are currently in the Purdue ML review system.  We hope to receive comments in a timely manner, but we are not certain when the reviews will be completed.  (Purdue is aware of the timelines.)

On another note, our designer has let us know that while the headshot photos of yourselves that you sent us are good for onscreen viewing, they are unfortunately too low-resolution for the printed binder piece.  I apologize for needing to ask this, but would it be possible for us to get a photo that is 300 dpi or greater, in either .tif or .jpg format?

Please let me know if you have any questions.  Thank you, and I look forward to hearing from you.

Sincerely,


**Stephanie Leveene**
Springer Healthcare LLC
Medical Writer

233 Spring Street | New York | NY 10013 | USA
tel: +1 212 460 1555
fax:+1 212 620 8442
mobile: +1 646 546 2361
E-mail: stephanie.leveene@springer.com

www.springerhealthcare.com

1

CONFIDENTIAL

**Russell Portenoy, MD**

| | |
|---|---|
| **From:** | Adams, Kate, Springer Healthcare [Kate.Adams@springer-sbm.com] |
| **Sent:** | Friday, July 09, 2010 12:04 PM |
| **To:** | Russell Portenoy, MD |
| **Cc:** | Donna Reid ; Leveene, Stephanie, Springer US; Braca, David, Springer US |
| **Subject:** | RE: Request for participation: Purdue Pharma Opioid Risk Assessment Resource |

Dear Dr Portenoy

Just a short note to let you know that the project is still very much going ahead, we have unfortunately had a little delay in finalising the consultancy agreement with the relevant legal persons due to the holidays.  We hope to send the agreement for your review in the next week or so.  At this point we will also look at rescheduling the teleconference.

Please be assured we are very keen to progress the project with your participation.  Many thanks for your understanding.

With best regards
Kate

---

**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** Thursday, July 01, 2010 10:28 AM
**To:** Adams, Kate, Springer Healthcare
**Cc:** Donna Reid ; Leveene, Stephanie, Springer US; Braca, David, Springer US
**Subject:** RE: Request for participation: Purdue Pharma Opioid Risk Assessment Resource

Thank you.  No, no long holidays for me till early November, and then I will be overseas for one week.

---

**From:** Adams, Kate, Springer Healthcare [mailto:Kate.Adams@springer-sbm.com]
**Sent:** Thursday, July 01, 2010 5:13 AM
**To:** Russell Portenoy, MD
**Cc:** Donna Reid ; Leveene, Stephanie, Springer US; Braca, David, Springer US
**Subject:** RE: Request for participation: Purdue Pharma Opioid Risk Assessment Resource

Dear Dr Portenoy

We are delighted that you accept!  We are very excited to have you involved in this project.

We will be in touch shortly to provide a consultancy agreement for your review and signature, and to arrange an initial teleconference to discuss the project.   Are there any periods during the next few months when you will be out of the office for a significant amount of time?

With best regards
Kate

**Kate Adams**
Springer Healthcare Ltd
Account Manager
---
Farside House | Nantwich Road | Tarporley | Cheshire | CW6 9UY | UK
Telephone: +44 (0)1829 731240

1

# CONFIDENTIAL

Fax: +44 (0)1829 732772
E-mail: kate.adams@springer.com
---
www.springerhealthcare.com

---

**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** Wednesday, June 30, 2010 9:44 PM
**To:** Adams, Kate, Springer Healthcare
**Cc:** doreido@chpnet.org; Leveene, Stephanie, Springer US; Braca, David, Springer US
**Subject:** RE: Request for participation: Purdue Pharma Opioid Risk Assessment Resource

Dear Kate,

I don't see any problems with my involvement.  I accept. Thank you.

Russ Portenoy

---

**From:** Adams, Kate, Springer Healthcare [mailto:Kate.Adams@springer-sbm.com]
**Sent:** Wednesday, June 30, 2010 7:09 AM
**To:** Russell Portenoy, MD
**Cc:** doreido@chpnet.org; Leveene, Stephanie, Springer US; Braca, David, Springer US
**Subject:** RE: Request for participation: Purdue Pharma Opioid Risk Assessment Resource

Dear Dr Portenoy

No problem at all about the delay in getting back to me, we appreciate you are very busy, and even more so with the additional pressures a change in job brings.

We are very glad that you are interested in the project.  Below I have provided further information to address your queries:

The key roles of yourself and Drs. Argoff, Christo, Passik will be:
- To serve on an Advisory Panel that will identify and review currently available resources, propose additional pieces as necessary, and provide guidance, council, and feedback during the assessment and development process of the Opioid Risk Assessment and Documentation Resource.
- To participate in teleconferences either individually or with the full panel.
- To provide other advisory services as necessary, including providing content and contributing to best practices as it relates to pain management in patients and the use of opioids. This includes your direct quotes, comments, or stories from our discussions into the content of this resource guide

The resource will contain approximately 30 resource pieces (references/resources/and example documents) with instructional/ tutorial editor's notes accompanying each module.   The initial print run will be for 10,000 hard copies of the resource (including key resource pieces available on a CD ROM).  The resource will be held in stock at Purdue's distribution center.  The resource can be obtained by HCPs through requesting a copy from Purdue various channels and will be used by the HCPs internally and may be also be distributed by HCPs to patients and patient's families.

This project is not funded via grant, but is funded through Purdue's medical education department as an unbranded educational resource tool for healthcare professionals and their patients.  To ensure this tool's market neutrality, no member of Purdue's brand or marketing team will have any role in its development.  In addition, to assure the integrity of this project, all content will be validated by this group of thought leaders and rigorously vetted through Purdue's medical and legal review process.

2

CONFIDENTIAL

RP_000653

I hope the above answers your queries, but please do let me know if you need anything further.

We look forward to hearing from you.

With kind regards
Kate

Kate Adams
Springer Healthcare Ltd
Account Manager
---
Farside House | Nantwich Road | Tarporley | Cheshire | CW6 9UY | UK
Telephone: +44 (0)1829 731240
Fax: +44 (0)1829 732772
E-mail: kate.adams@springer.com
---
www.springerhealthcare.com

---

**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** Tuesday, June 29, 2010 9:48 PM
**To:** Adams, Kate, Springer Healthcare; doreido@chpnet.org
**Cc:** Braca, David, Springer US; Leveene, Stephanie, Springer US
**Subject:** RE: Request for participation: Purdue Pharma Opioid Risk Assessment Resource

Dear Kate,

I am very sorry about the delay in getting back to you. There has been a recent change in my job, and with the transition issues, I could not keep up with email.

The project sounds interesting and in my purview, but I need to know how the deliverables will appear and to what purpose they will be applied. I gather from your email that I and my colleagues would be designated an Advisory panel for the project, and I assume that we would be linked to the product. Can you give me a bit more detail about its nature (e.g., on online compendium? An annotated list of existing resources? A case-based product?) and dissemination?

Thank you. Again my apologies.

Russell K. Portenoy MD
Chairman and
Gerald J. Friedman Chair in
   Pain Medicine and Palliative Care
Department of Pain Medicine and Palliative Care
Beth Israel Medical Center

Professor of Neurology and Anesthesiology
Albert Einstein College of Medicine

Chief Medical Officer
Metropolitan Jewish Hospice and Jacob Perlow Hospice

Contact:
Department of Pain Medicine and Palliative Care

CONFIDENTIAL

RP_000654

Beth Israel Medical Center
First Avenue at 16th Street
New York, N.Y. 10003
212-844-1505
fax 212-844-1503

---

**From:** Adams, Kate, Springer Healthcare [mailto:Kate.Adams@springer-sbm.com]
**Sent:** Monday, June 28, 2010 10:02 AM
**To:** doreido@chpnet.org
**Cc:** Braca, David, Springer US; Leveene, Stephanie, Springer US; Russell Portenoy, MD
**Subject:** RE: Request for participation: Purdue Pharma Opioid Risk Assessment Resource
**Importance:** High

Dear Donna

It was good to speak to you just now.

Below are the emails I have sent to Dr Portenoy. I would be most grateful for your help to confirm if Dr Portenoy would be interested in participating in the project.

If possible, could you please let me know by the end of this Wednesday (30th June)?

Of course if you or Dr Portenoy have any questions, I would be pleased to address them.

Many thanks and kind regards
Kate

**Kate Adams**
Springer Healthcare Ltd
Account Manager
---
Farside House | Nantwich Road | Tarporley | Cheshire | CW6 9UY | UK
Telephone: +44 (0)1829 731240
Fax: +44 (0)1829 732772
E-mail: kate.adams@springer.com
---
www.springerhealthcare.com

---

**From:** Adams, Kate, Springer Healthcare
**Sent:** Monday, June 21, 2010 5:06 PM
**To:** Adams, Kate, Springer Healthcare; 'rporteno@chpnet.org'
**Cc:** Braca, David, Springer US; Leveene, Stephanie, Springer US
**Subject:** RE: Request for participation: Purdue Pharma Opioid Risk Assessment Resource
**Importance:** High

Dear Dr. Portenoy

4

# CONFIDENTIAL

Further to my email below, please can I ask if you would be interested in participating in the project?

We are delighted to confirm that Drs Charles Argoff, Paul Christo and Steve Passik are all on board with the project. We can also confirm now that the honorarium is US$4,000.

If you have any queries I would be pleased to assist.

I hope to hear from you shortly.

With kind regards
Kate

---

**From:** Adams, Kate, Springer Healthcare
**Sent:** Tuesday, June 15, 2010 5:35 PM
**To:** 'rporteno@chpnet.org'
**Cc:** Braca, David, Springer US; Leveene, Stephanie, Springer US
**Subject:** Request for participation: Purdue Pharma Opioid Risk Assessment Resource
**Importance:** High

Dear Dr. Portenoy,

My name is Kate Adams, and I am an account manager with Springer Healthcare working with my colleagues in our New York office.  We have been asked by Purdue Pharma to develop an Opioid Risk Assessment Resource, which will be a compendium of risk assessment and stratification resources that can be used in clinical practice, including opioid risk screening tools, documentation tools, monitoring tools, etc.

Important in the development of this resource is input from an advisory panel of key thought leaders.  This panel would identify and review currently available resources, propose additional pieces as necessary, and provide guidance, council, and feedback during the assessment and development process.

We would like to invite you to serve on this panel of 3-4 thought leaders.  Your involvement would include the tasks mentioned above, as well as participation in 2-3 teleconferences with the full panel and Purdue Pharma. You would receive an honorarium and full recognition in the final materials.

Please let me know if you are interested in participating in this project, and if you have any questions.  Thank you, and I look forward to hearing from you.

Sincerely,

Kate

**Kate Adams**
Springer Healthcare Ltd
Account Manager
---
Farside House | Nantwich Road | Tarporley | Cheshire | CW6 9UY | UK
Telephone: +44 (0)1829 731240
Fax: +44 (0)1829 732772
E-mail: kate.adams@springer.com
---
www.springerhealthcare.com



RP_000656

## Russell Portenoy, MD

| | |
|---|---|
| **From:** | Adams, Kate, Springer Healthcare [Kate.Adams@springer-sbm.com] |
| **Sent:** | Tuesday, September 21, 2010 10:52 AM |
| **To:** | Russell Portenoy, MD |
| **Cc:** | Donna Reid ; Braca, David, Springer US; Leveene, Stephanie, Springer US; Bartlett, Iain |
| **Subject:** | RE: Purdue Pharma Opioid Risk Assessment Resource: Reconfirmation of TC today |

Dear Dr Portenoy

Just a quick note to reconfirm the TC for later today (Donna has already kindly confirmed, last week, that the invite was received and the time is OK).

The dial in details are:

Tuesday 21 September 12.00 – 1.00 pm EST

US number: 1-888-387-8559

Participant pass code: 3395048

Should you have any issues dialling into the call, please call my UK Blackberry (+44 7961 422621) or send me an email.

We look forward to speaking to you shortly, and are very excited to hear your feedback and thoughts.  Please can we ask that you have the review pack to hand so we can refer to it during the call.

Kind regards
Kate

---

**From:** Adams, Kate, Springer Healthcare
**Sent:** Friday, September 10, 2010 6:38 PM
**To:** Russell Portenoy, MD
**Cc:** Donna Reid ; Braca, David, Springer US; Leveene, Stephanie, Springer US; Bartlett, Iain
**Subject:** Purdue Pharma Opioid Risk Assessment Resource: Review Pack/Actions

Dear Dr Portenoy

We thank you again for your time on Tuesday and for the very insightful feedback you provided as well as your chapter you forwarded.

By now you should have received the review pack that Stephanie sent by FedEx to you on Monday.  We have received notification that is was signed for on Wednesday by a "B. Bartley".  Please do let me know if you have not received the pack.

Stephanie's cover note addressing the points that we would be grateful for your comments and actions on.  Donna has kindly scheduled a telecon for Tuesday 21 September at 12.00 EST.  Within this call we would like to discuss your comments and feedback, we would be most grateful if we could dedicate a good 45 minutes-1 hour for this call and that you have the review pack in front of you.  In addition, we would appreciate receiving your comments by email ahead of the call along with any case studies and additional information.

1

# CONFIDENTIAL

Your feedback and input at this stage is very important as we are also scheduling a group forum (via telecon) with all the experts, the structure of which will be based on the individual feedback each expert is currently providing.

Of course, if you have any questions please do not hesitate to contact Stephanie or I.

With our kind regards
Kate

**Kate Adams**
Springer Healthcare Ltd
Account Manager
---
Farside House | Nantwich Road | Tarporley | Cheshire | CW6 9UY | UK
Telephone: +44 (0)1829 731240
Mobile: +44 (0) 7961 422621
Fax: +44 (0)1829 732772
E-mail: kate.adams@springer.com
---
www.springerhealthcare.com

2

CONFIDENTIAL

## Russell Portenoy, MD

| | |
|---|---|
| **From:** | Adams, Kate, Springer Healthcare [Kate.Adams@springer-sbm.com] |
| **Sent:** | Thursday, September 30, 2010 1:00 PM |
| **To:** | pchristo@jhmi.edu; passiks@mskcc.org; ArGoffC@mail.amc.edu; Charles Argoff; Russell Portenoy, MD |
| **Cc:** | Donna Reid ; osir@MSKCC.ORG; Leveene, Stephanie, Springer US; Braca, David, Springer US |
| **Subject:** | RE: Purdue Pharma Opioid Risk Assessment Resource: Advisory Panel Virtual Roundtable: ACCESS/DIAL IN DETAILS |
| **Attachments:** | Attendee Login Information.docx |

Dear All

<<Attendee Login Information.docx>>

Please find attached the Web and Audio information to allow you to access the meeting from your desk via telephone and the web.  Via WebEx we will present a few slides and documents to add the flow of the meeting.

To avoid delay at the start of the meeting, we recommend that you take a couple of minutes ahead of the call tomorrow to perform the test on page 2 of the attached.  This will ensure your computer is compatible and has the appropriate software on it to access WebEx.

We also recommend that if possible you dial in and join the WebEx meeting a few minutes ahead of the start of the call – again to check for any technical anomalies.

**In the first instance, once you dial in to the call, at any point should you have technical issues with the WebEx please dial *0 for technical assistance.**

In an emergency if you are finding it impossible to access the dial in details, WebEx and *0 is not available please contact: david.braca@springer.com / cell: 212-365-8949.

With best regards

Kate

-----Original Appointment-----
**From:** Adams, Kate, Springer Healthcare
**Sent:** Thursday, September 23, 2010 2:18 PM
**To:** pchristo@jhmi.edu; passiks@mskcc.org; ArGoffC@mail.amc.edu; Charles Argoff; 'Russell Portenoy, MD'
**Cc:** DoReid@chpnet.org; osir@MSKCC.ORG
**Subject:** Purdue Pharma Opioid Risk Assessment Resource: Advisory Panel Virtual Roundtable
**When:** Friday, October 01, 2010 10:00 PM-11:30 PM (GMT) Greenwich Mean Time : Dublin, Edinburgh, Lisbon, London.
**Where:** N/A - Access/dial in details details to follow
**Importance:** High

Dear Advisory Panel members

Further to our individual email correspondence, please find below details of the Virtual Roundtable.  Many thanks to you all for your patience and flexibility in the scheduling of this important meeting.

1

# CONFIDENTIAL

RP_000659

**Purdue Pharma Opioid Risk Assessment Resource: Advisory Panel Virtual Roundtable**

**Friday 1 October**

**5.00 – 6.30 pm EDT Eastern Daylight Time**

The agenda and discussion points will follow early next week, as will the access details to allow you to participate.  In the meantime if you have any queries please do not hesitate to contact me.

With kind regards

Kate

**Kate Adams**

Springer Healthcare Ltd

Account Manager

---

Farside House | Nantwich Road | Tarporley | Cheshire | CW6 9UY | UK

Telephone: +44 (0)1829 731240

Mobile: +44 (0) 7961 422621

Fax: +44 (0)1829 732772
E-mail: kate.adams@springer.com

---

www.springerhealthcare.com

CONFIDENTIAL

RP_000660

**Russell Portenoy, MD**

| | |
|---|---|
| **From:** | Leveene, Stephanie, Springer US [Stephanie.Leveene@springer.com] |
| **Sent:** | Friday, October 15, 2010 10:00 AM |
| **To:** | Russell Portenoy, MD |
| **Cc:** | Adams, Kate, Springer Healthcare |
| **Subject:** | RE: Design concepts for Opioid Resource |

Dear Dr. Portenoy,

Thank you for your note.  I apologize for being a bit unclear as to what we're looking for with the case scenarios.  We'd like a kind of complete history of a sample low-risk patient and high-risk patient who you've seen in your practice.  This would include the initial evaluation (including any history of substance abuse), what their first course of treatment was (without getting into naming specific agents; i.e. "they were given an opioid" rather than "they were given Oxycontin"), what you found at follow-up, and what your course of action was for a patient who showed signs that they may have been abusing their opioids. The length should be no more than a page.

What we hope to achieve is that the user of this resource will look at the case scenario and hopefully identify with the type of patient ("Oh yes, this is just like what I went through with Mr. Thompson"). This will in turn give the doctor both ideas of both what to do next and how to use the tools with his/her different patients.

I hope that this is helpful.  Please don't hesitate to let me know if you have any other questions.

Sincerely,


**Stephanie Leveene**
Springer Healthcare LLC
Medical Writer

233 Spring Street | New York | NY 10013 | USA
tel: +1 212 460 1555
fax:+1 212 620 8442
mobile: +1 646 546 2361
E-mail: stephanie.leveene@springer.com

www.springerhealthcare.com


**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** Friday, October 15, 2010 8:45 AM
**To:** Leveene, Stephanie, Springer US
**Cc:** Adams, Kate, Springer Healthcare
**Subject:** RE: Design concepts for Opioid Resource

Dear Stephanie,

I would suggest that you offer a bit more structure to the various advisors offering case scenarios.  You just want clinical information, such as would be obtained from an initial evaluation?  The "plan" ends with a list that might include the need for more evaluation before long-term opioid therapy is needed?  No treatment course?

Or, are you talking about a narrative like a published case report that provide history and formulation, and then describes what happened.



RP_000661

And what should the length be.

Again, unless I missed it, none of us had guidelines about this, and it might be helpful.

Russ Portenoy

---

**From:** Leveene, Stephanie, Springer US [mailto:Stephanie.Leveene@springer.com]
**Sent:** Thursday, October 14, 2010 11:28 AM
**To:** Russell Portenoy, MD
**Cc:** Adams, Kate, Springer Healthcare
**Subject:** Design concepts for Opioid Resource

Dear Dr. Portenoy,

I hope you are well. Attached please find proposed designs for the Opioid Resource for your review. The first two were based on PERFORM; this is the title/concept that was the consensus of everyone at the roundtable. The last one is based on ARMOR; Purdue had asked that we develop a concept around this theme as well.

As a reminder, your case scenarios are due on **Tuesday, October 19th**. At that time, could you also please provide us with your thoughts on these designs? Thank you, and I look forward to hearing from you.

Sincerely,


**Stephanie Leveene**
Springer Healthcare LLC
Medical Writer

233 Spring Street | New York | NY 10013 | USA
tel: +1 212 460 1555
fax:+1 212 620 8442
mobile: +1 646 546 2361
E-mail: stephanie.leveene@springer.com

www.springerhealthcare.com


This message and any attachments are confidential and intended solely
for the use of the individual or entity to which they are addressed.  If
you are not the intended recipient, you are prohibited from printing,
copying, forwarding, saving, or otherwise using or relying upon them in
any manner.  Please notify the sender immediately if you have received
this message by mistake and delete it from your system.

CONFIDENTIAL

RP_000662

**Russell Portenoy, MD**

| | |
|---|---|
| **From:** | Leveene, Stephanie, Springer US [Stephanie.Leveene@springer.com] |
| **Sent:** | Monday, October 18, 2010 8:48 AM |
| **To:** | Russell Portenoy, MD |
| **Cc:** | Adams, Kate, Springer Healthcare |
| **Subject:** | RE: Design concepts for Opioid Resource |

Dear Dr. Portenoy,

Thank you for the sample cases.  I'm also glad that you like the design concepts.  Do you have a preference between the 2 PERFORM concepts?

Sincerely,


**Stephanie Leveene**
Springer Healthcare LLC
Medical Writer

233 Spring Street | New York | NY 10013 | USA
tel: +1 212 460 1555
fax:+1 212 620 8442
mobile: +1 646 546 2361
E-mail: stephanie.leveene@springer.com

www.springerhealthcare.com


**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** Sunday, October 17, 2010 12:39 PM
**To:** Leveene, Stephanie, Springer US
**Cc:** Adams, Kate, Springer Healthcare
**Subject:** RE: Design concepts for Opioid Resource

The design concept is fine with me. Thanks


**From:** Leveene, Stephanie, Springer US [mailto:Stephanie.Leveene@springer.com]
**Sent:** Thu 10/14/2010 11:28 AM
**To:** Russell Portenoy, MD
**Cc:** Adams, Kate, Springer Healthcare
**Subject:** Design concepts for Opioid Resource

Dear Dr. Portenoy,

I hope you are well.  Attached please find proposed designs for the Opioid Resource for your review.  The first two were based on PERFORM; this is the title/concept that was the consensus of everyone at the roundtable.  The last one is based on ARMOR; Purdue had asked that we develop a concept around this theme as well.

As a reminder, your case scenarios are due on **Tuesday, October 19th**.  At that time, could you also please provide us with your thoughts on these designs?  Thank you, and I look forward to hearing from you.

1

CONFIDENTIAL

RP_000663

Sincerely,


**Stephanie Leveene**
Springer Healthcare LLC
Medical Writer

233 Spring Street | New York | NY 10013 | USA
tel: +1 212 460 1555
fax:+1 212 620 8442
mobile: +1 646 546 2361
E-mail: stephanie.leveene@springer.com

www.springerhealthcare.com


```
This message and any attachments are confidential and intended solely
for the use of the individual or entity to which they are addressed.  If
you are not the intended recipient, you are prohibited from printing,
copying, forwarding, saving, or otherwise using or relying upon them in
any manner.  Please notify the sender immediately if you have received
this message by mistake and delete it from your system.
```

CONFIDENTIAL

RP_000664

**Russell Portenoy, MD**

| | |
|---|---|
| **From:** | Leveene, Stephanie, Springer US [Stephanie.Leveene@springer.com] |
| **Sent:** | Wednesday, November 10, 2010 11:50 AM |
| **To:** | ArGoff, Charles; Charles Argoff; Paul Christo; passiks@mskcc.org; Russell Portenoy, MD |
| **Subject:** | Use of the SOAPP-R in the Opioid Resource |

Dear Opioid Resource Thought Leaders,

We have been requesting permission to reprint the key risk and pain assessment tools, identified during the roundtable, in the opioid resource. For the SOAPP-R, Inflexxion, the copyright holder, will not grant permission to include the tool itself; they require a standard blurb about the tool and a link to where it can be found on Inflexxion's PainEdu Web site. We've brought this up with Purdue, and they have asked that if we can't have the actual SOAPP-R tool, then it shouldn't be mentioned or included at all. They feel that the resource will not be complete if all of the others tools are there except one, and they would prefer not to mention PainEdu.

Therefore, we will not be able to include SOAPP-R in the opioid resource, either in the list of risk assessment tools or in the case studies.  We will still have CAGE-AID and the Opioid Risk Tool   Is there an alternative tool that could be used instead, and if so, which would be best?

Thank you for your help with this.  I look forward to hearing from you.

Sincerely,


**Stephanie Leveene**
Springer Healthcare LLC
Medical Writer

233 Spring Street | New York | NY 10013 | USA
tel: +1 212 460 1555
fax:+1 212 620 8442
mobile: +1 646 546 2361
E-mail: stephanie.leveene@springer.com

www.springerhealthcare.com

1

CONFIDENTIAL

## Russell Portenoy, MD

| | |
|---|---|
| **From:** | Russell Portenoy, MD |
| **Sent:** | Friday, December 17, 2010 7:37 AM |
| **To:** | Adams, Kate, Springer Healthcare |
| **Cc:** | Donna Reid; Leveene, Stephanie, Springer US; Braca, David, Springer US |
| **Subject:** | RE: Purdue Opioid Resource project |

Dear Kate,
I have no questions at this point. I'll wait to see what exactly is proposed. Thanks.
Russ Portenoy

---

**From:** Adams, Kate, Springer Healthcare [mailto:Kate.Adams@springer-sbm.com]
**Sent:** Thursday, December 16, 2010 12:11 PM
**To:** Russell Portenoy, MD
**Cc:** Donna Reid; Leveene, Stephanie, Springer US; Braca, David, Springer US
**Subject:** Purdue Opioid Resource project

Dear Dr. Portenoy,

I am writing to update you on the status of the Purdue Opioid Resource project. Based on your feedback and discussions with Purdue, we have been given approval to proceed with an interactive CD-ROM and a companion print piece. The additional interactive features will be primarily the following:

- Several short videos (about 2 minutes each), explaining how to use each featured tool and discussing staff education and patient informed consent
- Narrated case studies, featuring a mixture of text, animation showing tools being filled out, and questions for the viewer

We would like you and the other KTLs to appear in these videos and narrate the case studies. While we understand that this is outside the original scope of work, we feel that your involvement on screen would add great value.

We anticipate sending the video scripts, case studies, and all of the additional text for the CD-ROM pages to be sent to you for your review by the middle of January.

One other item: we will be mailing you checks for half of your honoraria ($2000) in early January, to the address provided on your project agreements.

Please let me know if you have any questions. Happy holidays, and best wishes for 2011.


Kind regards
Kate

**Kate Adams**
Springer Healthcare Ltd
Account Manager
---
Farside House | Nantwich Road | Tarporley | Cheshire | CW6 9UY | UK
Telephone: +44 (0)1829 731240
Mobile: +44 (0) 7961 422621
Fax: +44 (0)1829 732772
E-mail: kate.adams@springer.com
---
www.springerhealthcare.com

CONFIDENTIAL

RP_000666



Springer Healthcare LLC
233 Spring Street | 6th Floor
New York | NY 10013 | USA

tel +1 212 / 460 15 00
fax +1 212 / 620 84 42
www.springerhealthcare.com

## PROJECT AGREEMENT
### August 15, 2010

**Project Name:** *Opioid Risk Assessment Resource Tool*

Springer has been retained by Purdue Pharma, L.P. ("Purdue") to develop an opioid risk assessment and documentation resource tool for healthcare professionals in the field of pain and pain management. Springer has been asked to work with healthcare professionals with expertise in the area of opioid risk management in its development. This resource may be used among healthcare professionals for internal purposes, or distributed by healthcare professionals to patients and their families.

**Specifications:**

Work in coordination with and under the direction of Springer Healthcare LLC's director and staff.

Duties include:

1. Serving on an Advisory Panel that will identify and review currently available resources, proposing additional resources as necessary, and providing guidance, counsel, and feedback during the assessment and development process of the Opioid Risk Assessment and Documentation Resource.

2. Participating in teleconferences, either individually or with the full panel.

3. Providing other advisory services as necessary, including supplying content and contributing to best practices as it relates to pain management in patients and specifically the use of opioids. This includes any direct quotes, comments or narrations taken from our discussions and used as content for this resource guide.

**Fee and Payment Terms:**

In consideration of your performance of the Services in accordance with the provisions of this Agreement, Springer will compensate you in the amount of four thousand dollars ($4,000). Payment will be made within sixty (60) days of receipt by Springer of a properly submitted invoice detailing the work you have performed, unless Springer disputes all or a portion of the invoice.



Springer Healthcare
is part of Springer Science Business Media

CONFIDENTIAL



Current Medicine Group
is part of Springer Healthcare

RP_000667



**Start Date:**

August 15, 2010

**Expected Conclusion Date:**

Per Section 20 of the Consultancy Agreement. The Term may be extended by written agreement of the parties.

Springer Healthcare, LLC

9|7|10
Date

Springer Science + Business Media, LLC

9 Sept '10
Date

Dr. Russell K. Portenoy

9|14|10
Date

# CONFIDENTIAL

RP_000668



**Springer** Healthcare

Springer Healthcare LLC
233 Spring Street | 6th Floor
New York | NY 10013 | USA

tel +1 212 / 460 15 00
fax +1 212 / 620 84 42
www.springerhealthcare.com

A G R E E M E N T

**AGREEMENT** made as of **August 15, 2010**, by and between **Springer Healthcare LLC** ("Springer"), 233 Spring Street, New York, NY 10013, and **Dr. Russell K. Portenoy** ("Consultant"), Department of Pain Medicine and Palliative Care, Beth Israel Medical Center, First Avenue at 16th Street, New York, NY 10003.

Springer has been retained by Purdue Pharma, L.P. ("Purdue") to develop an opioid risk assessment and documentation resource tool for healthcare professionals in the field of pain and pain management. Springer has been asked to work with healthcare professionals with expertise in the area of opioid risk management in its development. This resource may be used among healthcare professionals for internal purposes, or distributed by healthcare professionals to patients and their families.

1.  **Scope.** Springer retains Consultant on a non-exclusive basis to assist in developing an opioid risk assessment and documentation resource tool for healthcare professionals in the field of pain and pain management. For each such project, Springer and Consultant will, in a written project agreement ("Project Agreement"), agree to a project fee and specifications.

2.  **Responsibilities and expectations.**

    a.  Consultant represents that he has the professional skill, training and expertise necessary to perform, timely and proficiently, the projects (including all subtasks and milestones) he will undertake for Springer pursuant to this Agreement.

    b.  In the event Springer determines that Consultant has not met Springer's performance expectations under the terms of this Agreement or any Project Agreement, Springer shall so advise Consultant in writing.

3.  **Compensation.**

    a.  Springer shall pay Consultant for his services pursuant to each Project Agreement.

    b.  Springer's sole financial responsibility under this Agreement shall be the payment of the above compensation to Consultant.

    c.  Consultant shall be responsible for any and all expenses incurred as a result of its activities except those which Springer, in writing, has agreed to assume.

4.  **Independent Consultant.** Springer and Consultant acknowledge that the relationship created by this Agreement is that of principal and independent Consultant and not that of employer and employee. Nothing contained herein shall be construed to create a relationship of employer and employee between Springer and Consultant.

    a.  Consultant may engage in other business activities, provided such activities are not inconsistent with, and do not interfere with, the performance of Consultant's services for Springer pursuant to this Agreement.

Springer Healthcare
is part of Springer Science+Business Media

CONFIDENTIAL



Current Medicine Group
is part of Springer Healthcare
RP_000669



Springer
the language of science

    b.    The services called for by this Agreement shall be performed by Consultant only.

    c.    Consultant will not be entitled to any benefits provided by Springer to its employees (*e.g.*, group insurance, pension, *etc.*).

    d.    Consultant agrees that Consultant will not claim to be an employee of Springer for any purpose, and that any such claim will constitute a breach of this Agreement.

5.    **Compliance with laws.**  Consultant will comply with all applicable federal, state, county and local laws, ordinances, regulations and codes in the performance of its duties under this Agreement, including laws and executive orders relating to equal employment opportunity and nondiscrimination in employment.

Consultant: (i) has not been convicted of an offense related to any federal or state health care program; (ii) has not been debarred under the Federal Food, Drug and Cosmetic Act; or (iii) has not been excluded or is otherwise ineligible for federal or state health care program participation. No convicted, debarred, excluded or ineligible person will in the future be employed by the Consultant in connection with any work to be performed for or on behalf of Springer.

6.    **Indemnification.**  The following provisions run to the benefit, and are enforceable by Russell K. Portenoy, MD ("Consultant") and Beth Israel Medical Center ("Beth Israel"):
a. Springer agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.
b. Springer agrees to indemnify, defend and hold harmless Consultant and Beth Israel, and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including but not limited to settlement costs and reasonable legal fees) asserted against any of the Indemnified Parties relating directly or indirectly to the services performed by Consultant under or in connection with this Agreement, or for any errors or omissions introduced by Springer or Springer agents after approval of final material by Consultant.  This provision shall survive the termination of this Agreement.
c. Springer shall provide and maintain at its own expense during this Agreement the following insurance coverages with such insurers as shall be acceptable to Beth Israel in minimum limits of $1 million per occurrence and $3 million in the aggregate: professional liability, comprehensive general liability, including products liability, contractual liability and errors and omissions. Springer shall give Beth Israel thirty (30) days prior written notice of any changes in or cancellation of such insurance within 60 days of completion of Work.
d. Consultant shall indemnify Springer for, and hold Springer harmless from, any loss, damage, claim or expense, including interest, taxes, penalties, costs and attorneys' fees, resulting from the failure of Consultant to comply with any laws, ordinances, regulations and codes, or from a determination that Springer is liable for salaries, benefits and/or taxes with respect to Consultant.

7.    **Proprietary interest.**  Nothing contained herein shall be deemed or construed to create, or to have created, in Consultant any proprietary interest in Springer or in its business, including, by way of example and not of limitation, any copyrights, trademarks or trade names identifying Springer.

7a.    All data, information, writings and materials generated or made by Consultant, alone or together with one or more others, as a result of Consultant's performance of the Services, including, but not limited to, comments, production notes, product concepts, product or compound names, plans, proposals, outlines, design elements, forms, images, photos, sketches, drawings, text and any other work product of any kind, all edits and modifications to the foregoing and derivative works there from, and all elements contained therein, in any form whatsoever (collectively the "Works") will constitute "works made for hire" for Springer under the United States Copyright Act. After the Works are completed, Purdue will own all right, title and interest in all such Works. To the extent that any individual Work does not constitute a work made for hire, Consultant hereby assigns, grants and conveys, and agrees

# CONFIDENTIAL

RP_000670



to assign, grant and convey to Purdue all right, title and interest in and to any intellectual property rights, including any copyrights, trademarks and service marks, in each such Work. The foregoing intellectual property rights include, but are not limited to, (i) all rights to register, or to renew any registration(s) for, such intellectual property rights, (ii) all causes of action related to such intellectual property rights and (iii) any and all moral rights, so-called droits morals and rights of attribution. The Consultant hereby agrees to execute all documents reasonably deemed necessary or desirable by Purdue to perfect its ownership of such Works and any intellectual property rights in any Works. Without the written consent of Purdue, Consultant will not attempt to register any Work, or any part thereof, at the United States Copyright Office, the United States Patent and Trademark Office or any foreign counterpart of either of these offices. As used in this Agreement, terms such as "copyrights," "trademarks" and "service marks" include both United States and foreign copyrights, trademarks and service marks, respectively.

**7b.**     The Consultant will acquire no right, title or interest in or to any patents, trademarks, service marks or copyrights or other intellectual property belonging to Springer or any other party as a result of his performance of any Services or otherwise by virtue of this Agreement.

**8.**     **Non-disclosure of confidential information.**  Consultant will not at any time, whether during the term of this Agreement, following the termination of this Agreement, or forever hereafter, for any reason whatsoever, directly or indirectly disclose or furnish to any firm, corporation or person, except as otherwise required by law, any confidential or proprietary information of Springer with respect to any aspect of its operations or affairs.  "Confidential or proprietary information" shall mean information generally unknown to the public to which Consultant gained access by reason of its relationship with Springer pursuant to this Agreement and includes, but is not limited to, information relating to all present or potential customers, business and marketing plans, sales and financial data and strategies, technology, technical data, research and development programs, salaries and employment benefits, and operational costs.

**8a.**     The Consultant will not disclose, by publication or otherwise, or use for any purpose other than as contemplated by this Agreement, any information disclosed to and/or developed by Consultant, alone or together with one or more others, in connection with this Agreement (collectively "Information"). This obligation of non-disclosure and non-use will not apply to: (i) Information at or after such time that it is or becomes available to the public through no breach of this Agreement by Consultant; (ii) Information that is already independently known to Consultant as shown by prior written records; and (iii) Information at or after such time that it is disclosed to Consultant by a third party other than Springer and other than one who would be breaching a commitment of confidentiality or non-use to Springer or an affiliate of Springer by

disclosing the Information to Consultant. To the extent Consultant is required (whether by statute, regulation, law or order of a court of competent jurisdiction) to disclose any Information, Consultant will give Springer written notice of such requirement sufficiently prior to disclosing such Information in order to permit Springer to seek a  protective order or other appropriate remedy, and Consultant will disclose only that portion of Information that he is legally required to disclose. Upon the earlier of expiration or termination of this Agreement, Consultant will, if requested by Springer, return or destroy all Information, including writings such as documents and reports, whether in paper or electronic form, that contain or reflect any Information, without retaining any copy thereof.

**9.**     The Consultant will perform the Services in a professional manner, consistent with applicable industry standards and practices, and in compliance with all applicable local, state and federal laws and regulations. If Consultant, as a healthcare professional, currently or during the Term becomes a member of a committee that sets formularies of covered medicines or develops clinical practice guidelines, Consultant shall disclose to such committee that he provides consulting services to Springer related to: educational activities about risk assessment and stratification for the use of opioids in pain management.

# CONFIDENTIAL

RP_000671



The obligation to disclose to such committee as contemplated above shall extend for two (2) years beyond the termination or expiration of this Agreement. Springer acknowledges that Consultant may have obligations to follow the procedures of such committee; if doing so may conflict with any obligations Consultant has under this Agreement, Consultant agrees to discuss such potential conflict with Springer in advance in order that he may satisfy such obligations consistent with this Agreement.

10.   The Consultant warrants and represents that he is presently, and will remain for the Term (including any extension thereof), free from any commitments that would impair the accurate, honest and loyal performance of his obligations hereunder. In particular, Consultant hereby warrants and represents that he is not under any contractual or other obligation (such as, but not limited to, an employment agreement with, or an applicable policy of, a present or former employer) that conflicts with and/or that would interfere with and/or adversely impact upon his performance of his obligations under this Agreement. Consultant's approval of his current employer (hospital or academic institution), represented by a signature on the bottom of page 7, is required for this Agreement to take effect.

11.   **Arbitration.**

   a.   Any disagreement or controversy arising out of or relating to this Agreement shall be submitted for resolution to arbitration before three arbitrators in accordance with the then prevailing Commercial Rules of the American Arbitration Association.  The arbitration shall be held in the City of New York.  The award rendered in said proceeding shall be made in writing and shall be final and binding upon both parties and judgment upon the award may be entered in any court having jurisdiction thereof.  The arbitrators shall award reasonable attorneys' fees and costs to the prevailing party.

   b.   The arbitrators shall not have authority to amend, alter, modify, add to or subtract from the provisions of this Agreement.  The award of the arbitrators, in addition to granting the relief prescribed above and such other relief as the arbitrators may deem proper, may contain provisions commanding or restraining acts or conduct of the parties or their representatives and may further provide for the arbitrators to retain jurisdiction over the Agreement and the enforcement thereof.  If either party shall deliberately default in appearing before the arbitrators, the arbitrators are empowered, nonetheless, to take the proof of the party appearing and render an award thereon.  The arbitrators shall state in writing the reasons for their award.

   c.   The fees and expenses of the arbitrators, if any, shall be borne equally by the parties.

12.   **Third parties.**  This Agreement creates no rights in any person other than Springer and Consultant, and shall not be deemed to have created, or as having created, any rights against or interest in Springer by any other employer of Consultant.

13.   **No Waiver.**

   a.   The failure to put into effect, exercise or enforce (in a timely manner or otherwise) any term, condition or provision of this Agreement shall not be deemed to be a waiver of such term, condition or provision or the party's right to enforce it.

   b.   A termination of this Agreement by either party pursuant to Section 19 hereof shall not constitute a waiver by either party of any right, action or cause of action that a party may have against the other by reason of any breach or default in the performance of any duty or obligation arising from this Agreement.

CONFIDENTIAL



14.   **Effect of this agreement.**  No liability under this Agreement shall survive the termination of this Agreement unless accrued prior to its expiration.  This Agreement shall not inure to the benefit of either party's heirs, successors, administrators or assigns.

15.   **Notice.**  Any notice provided for in this Agreement shall be given in writing to Springer at 233 Spring Street, New York, NY 10013, and to Consultant at Department of Pain Medicine and Palliative Care, Beth Israel Medical Center, First Avenue at 16th Street, New York, NY 10003.

16.   **Savings.**  Should any part of this Agreement be rendered or declared illegal, legally invalid or unenforceable by a court of competent jurisdiction or by the decision of an authorized governmental agency, such invalidation of such part of this Agreement shall not invalidate the remaining portions thereof.

17.   **Complete agreement.**  This Agreement contains the entire agreement and understanding of the parties, and fully supersedes any and all prior agreements or understandings between the parties hereto pertaining to the subject matter hereof.  There have been no representations, inducements, promises or agreements of any kind which have been made by either party, or by any person acting on behalf of either party, which are not embodied within this Agreement.  This Agreement may not be changed or altered except in writing duly executed by Consultant and a duly authorized agent of Springer.

18.   **Applicable law.**  The interpretation and application of the terms of this Agreement shall be governed and construed in accordance with the laws of the State of New York excluding (to the greatest extent a New York court would permit) any rule of law that would cause application of the laws of any jurisdiction other than the State of New York.

19.   **Termination.**  Either party may immediately terminate this Agreement for cause.  Cause for termination includes, but is not limited to, a breach of any of the terms of this Agreement. Termination without cause must be given in writing at least thirty (30) days prior to the expiration of this agreement, as outlined in **Section 20**.

20.   **Term.**  This Agreement shall become effective upon signature, shall continue in full force and effect until midnight, **August 15, 2011**, unless notification of termination is given in writing by either party to the other by Federal Express or Certified Mail at least thirty (30) days prior to the expiration of this Agreement or any renewal thereof. The Term may be extended by written agreement of the parties. Notwithstanding the foregoing, in the event this Agreement is terminated for any reason, with or without cause, Consultant agrees that he shall take every reasonable step to facilitate an orderly transition of any of its activities to Springer's designee.

CONFIDENTIAL



Springer Healthcare, LLC

9/7/10

Date

Rick Werdann
Director, Pharma
Springer Healthcare, LLC

9 Sept '10

Date

*W F Curtis*

William F. Curtis, Ph.D.
President, Springer Science+Business Media, LLC

Consultant

9/14/10

Date

Dr. Russell K. Portenoy

Approval of hospital/institution
Beth Israel Medical Center

9/20/10

Date

Signatory Name
Signatory Title

# CONFIDENTIAL

RP_000674

Donna Reid

From:           Russell Portenoy, MD
Sent:           Thursday, August 04, 2011 4:39 PM
To:             'Semel, David'
Cc:             Donna Reid
Subject:        RE: Pfizer Medical Affairs

Dear Dave,

Thank you for reaching out. I am not sure if the time works. I will ask Donna Reid in my office to reply about this.

Russ Portenoy MD

**From:** Semel, David [mailto:david.semel@pfizer.com]
**Sent:** Thursday, August 04, 2011 3:36 PM
**To:** Russell Portenoy, MD
**Subject:** Pfizer Medical Affairs

Dr Portney
Hope this finds you doing well.

I assume you are aware of the recent changes that have taken place at Pfizer in medical affairs. Since Linda Scheer is no longer with the company I will be covering NY in the same roles that she did.

I would like to see if you had some time Monday Aug 8th anytime from 12noon or so that would work in your schedule since I will be in the city that day. I would like to discuss your interest and how we can work together.

Please provide me with a good time that would work with your schedule.

Thank you for your time
Dave

David Semel, Pharm.D
Sr. Director, Regional Medical Research Specialist
Pain
Pfizer Medical
570-460-5162
570-402-4047 (f)
david.semel@pfizer.com

1

CONFIDENTIAL

RP_000675

Donna Reid

| | |
|---|---|
| **From:** | Russell Portenoy, MD |
| **Sent:** | Thursday, February 24, 2011 12:50 PM |
| **To:** | 'linda.b.scheer@pfizer.com'; Donna Reid |
| **Subject:** | Re: |

Sure. Let me ask for Donna's help in my office.

---

**From:** Scheer, Linda B <linda.b.scheer@pfizer.com>
**To:** Russell Portenoy, MD
**Sent:** Thu Feb 24 12:41:13 2011
**Subject:**

Hi Russ-

I was hoping to set up some time to meet with you in the next few weeks.
Nothing urgent...at your convenience.

Please let me know if you think that would be possible.

Thanks
Linda

Linda B. Scheer, MD
*Pfizer, Inc*
Senior Director, Regional Medical & Research Specialists
Pain - NY, MA, VT, ME, NH
Tel:   201 656-2086
Fax:   201 656-2087

Where Science & Health Care Meet

1

CONFIDENTIAL

RP_000676

Russell Portenoy, MD

**From:** Russell Portenoy, MD
**Sent:** Wednesday, August 24, 2011 5:23 AM
**To:** 'Kaiko, Dr Robert'
**Subject:** RE: Health care grant application for Butrans study in cancer survivors

Thank you, Bob.  Our team is going to check it out.  There is a young and terrific oncologist here who wants to study pain and other symptoms (oncologist!), and for a number of reasons (weekly dosing, low neuroendocrine effects), I sense that the transdermal bup may be a good option.  The phase II type study is a first step for her, if we can make it happen.

**From:** Kaiko, Dr Robert [mailto:Dr.Robert.Kaiko@pharma.com]
**Sent:** Tuesday, August 23, 2011 4:17 PM
**To:** Russell Portenoy, MD
**Subject:** Health care grant application for Butrans study in cancer survivors

Russ

I have some bad news and some potentially good news.

The bad news is that, while we supported selected investigator initiated trials quite a few years ago, that fell by the way side with our down – sizing.  We still no longer support any of these but may do so in the future.

The good news is that there is another Purdue vehicle that might be appropriate  to support your proposed work, a health care grant.  For your purposes it will likely make little difference.

To apply to a health care grant please go to our website, www.PurduePharma.com
On the top, click on "Programs & Resources";
On the left, click on "Grants & Giving";
On the center/bottom, click on "click here";
In the center click on "click here to access our grant application system";
Register and access the application as instructed.

I'd be happy to support it's funding by the grants committee.

Hope this works,
bk

Robert F. Kaiko, Ph.D.
Vice President R&D Portfolio Development
Purdue Pharma
One Stamford Forum
Stamford, CT  06901-3431
203-588-7210
203-588-6106 (fax)
dr.robert.kaiko@pharma.com

1

CONFIDENTIAL

IMPORTANT NOTICE: This message is intended only for the use of the individual or entity to which it is addressed. The message may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited.

**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** Tuesday, August 23, 2011 10:55 AM
**To:** Kaiko, Dr Robert
**Subject:**

Dear Bob,

I hope that all is well.  I am writing to do a quick revisiting of a question left hanging several months ago:  Will the company be interested in any IIR studies of Butrans?  We still have interest at my place in a study of pain in cancer survivors.

Any thoughts?

Thanks!

Russ

This message and any attachments are confidential and intended solely for the use of the individual or entity to which they are addressed.  If you are not the intended recipient, you are prohibited from printing, copying, forwarding, saving, or otherwise using or relying upon them in any manner.  Please notify the sender immediately if you have received this message by mistake and delete it from your system.

CONFIDENTIAL

RP_000678



April 27, 2011


Russell Portenoy, MD
Beth Israel Medical Center
First Avenue at 16th Street
New York, NY  10003

Dear Dr. Portenoy:

Enclosed you will find your check in payment of your honoraria for attending the
Cephalon FENTORA Advisory Board meeting in New York City.

Thank you so much for your contributions to the meeting.

Kind regards,

L. Alyson Di Naples
Senior Administrative Assistant
Medical Affairs


encl.

CONFIDENTIAL

RP_000679

# ADVISORY BOARD AGREEMENT

This ADVISORY BOARD AGREEMENT (the "Agreement"), is entered into as of February 11, 2011 (the "Effective Date"), by and between CEPHALON, INC., a Delaware corporation ("Cephalon") and Russell Portenoy, located at Beth Israel Medical Center, First Avenue at 16th Street, New York, NY 10003, ("Consultant").

WHEREAS, Cephalon wishes to obtain feedback and advice from Consultant as a Member of Cephalon's Advisory Board entitled *Pain Franchise Medical Scientific Advisory Board* (the "Advisory Board") to be held on February 24 – 25, 2011 at the Millenium Hotel in New York, NY, and Consultant wishes to provide such services, all subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth, and intending to be legally bound hereby, Cephalon and Consultant hereby agree as follows:

1.  <u>Services to be Provided</u>.  Consultant agrees to provide advice and assistance to Cephalon as a participant of the Advisory Board.  The services (the "Services") to be provided by Consultant in such capacity consist of the following:

    (a)  Required attendance and participation at the Advisory Board held on the above-date for a duration of 1 day(s).

    (b)  Follow-up discussions, if requested by Cephalon, with representatives of Cephalon and/or, if mutually agreeable, with third parties designated by Cephalon.

    Any additional Services requested by Cephalon must be mutually agreed to by Consultant and Cephalon in writing, in an amendment to this Agreement which describes the timing and scope of the additional Services and the monies payable by Cephalon for such Services.

2.  <u>Term</u>.  The term of this Agreement shall begin on the Effective Date and shall continue for one year thereafter, unless terminated prior thereto pursuant to Section 6 below.

3.  <u>Compensation</u>

    (a)  As compensation for Consultant's Services under this Agreement as an Advisory Board Member, Cephalon shall pay the following:

    i.   $3,000/per day for one day's attendance at the 1.5 day Advisory Board and $500/hour for 2 hours of prep time for a total of four thousand U.S. Dollars ($ 4000.00).

    ii.  In addition, Cephalon shall reimburse Consultant for out-of-pocket travel, hotel and meal expenses reasonably incurred by Consultant for travel that was

**CONFIDENTIAL**

requested by Cephalon, as long as the expenses are incurred in accordance with Cephalon's reimbursement policies.

iii.   The parties agree that the compensation provided hereunder has been established pursuant to arms length negotiations between the parties and is consistent with the fair market value of the Services provided by Consultant under this Agreement and will not be based upon the volume or value of any business generated between Consultant and Cephalon with respect to Cephalon products.

iv.   Nothing herein shall be construed to require Consultant to purchase, order, recommend, or arrange for the purchase, order, or recommendation of any products manufactured and/or marketed by Cephalon.  The parties further acknowledge and agree that Consultant shall continue to make all decisions regarding treatment, prescribing, administration, or dispensing (including prescribing, administering or dispensing Cephalon products) solely in accordance with the independent judgment (including medical and clinical judgment, if applicable) of the Consultant, and that such decisions shall not be affected by this Agreement, the payments made hereunder or the relationship created hereby.

(b)   Consultant acknowledges that Consultant is not an employee of Cephalon and will not be entitled to participate in or receive any benefit or right as a Cephalon employee under any Cephalon employee benefit and welfare plans, including, without limitation, employee insurance, pension, savings and security plans as a result of entering into this Agreement.

4.   Ownership of Results.

(a)   All findings, conclusions and data and all inventions, discoveries, trade secrets, techniques, processes and know-how, whether or not patentable, that are made by Consultant, either alone or with others, in the performance of the Services or which result, to any extent, from use of Cephalon's premises or property (collectively "Inventions") shall become the exclusive property of Cephalon.  Consultant hereby assigns, transfers and conveys all of Consultant's right, title and interest in and to any and all Inventions to Cephalon.

(b)   Upon the request and at the expense of Cephalon, Consultant will execute and deliver any and all instruments and documents and take such other acts as may be necessary or desirable to document such transfer or to enable Cephalon to apply for, prosecute and enforce patents, trademark registrations or copyrights in any jurisdiction with respect to any Inventions or to obtain any extension, validation, re-issue, continuance or renewal of any such intellectual property right.  Without limiting the foregoing, Consultant shall assign, grant and

**CONFIDENTIAL**

convey unto Cephalon all of Consultant's right, title and interest, now existing or that may exist in the future, in and to any copyrights in any findings, reports, data compilations and other information and material resulting from the performance of the Services.  Consultant shall not submit applications for copyright registration in any country for any information or materials created by Consultant pursuant to this Agreement.

(c)     The provisions of this Section 4 shall survive the expiration or termination of the term of this Agreement.

5.    Confidentiality.

(a)     Consultant will not, either during or for a period of five (5) years after the term of this Agreement, disclose to any third person or use the results of the Services or any confidential or proprietary information of Cephalon or its affiliates for any purpose other than the performance of the Services, without the prior written authorization of Cephalon.

(b)     For purposes of this Section 5, "confidential or proprietary information" includes, without limitation, the results of the Services, technical data, know-how, unpublished findings, compounds, compositions, formulations, biomaterials, products, technologies, processes, patent applications, marketing methods and plans, pricing information, manufacturing information and other unpublished information related to the business or the financial condition of Cephalon and its affiliates and corporate collaborators, which has been or will be disclosed by Cephalon or its agents or affiliates.

(c)    This obligation shall not apply to the following:

i.  Information which, after disclosure, becomes available to the public by publication or otherwise, other than by breach of this Agreement by the Consultant;

ii.  Information that the Consultant can establish by prior written record was already known to it or was in its possession at the time of disclosure and was not acquired, directly or indirectly, from Cephalon or its affiliates; or

iii.  Information that the Consultant obtains from a third party; provided however, that such information was not obtained by said third party, directly or indirectly, from Cephalon or its affiliates under an obligation of confidentiality.

(d)     If Consultant is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation demand or similar process) to disclose any confidential or proprietary information,

CONFIDENTIAL

RP_000682

Consultant will provide prompt notice to Cephalon of such request, in advance of any such disclosure.

(e)    Consultant acknowledges that during the performance of this Agreement Consultant may come into possession of certain material information about Cephalon or its affiliates that has not yet been disclosed to the public. Consultant agrees to comply with the rules and regulations of the United States Securities and Exchange Commission ("SEC"), including those relating to insider trading for as long as Consultant is in the possession of such material, non-public, information about Cephalon or its affiliates.  Consultant is hereby notified that Consultant should not trade in Cephalon securities on Consultant's own behalf or on the behalf of others while in possession of any such material, non-public information.

(f)    The provisions of this Section 5 shall survive the expiration or sooner termination of the term of this Agreement.

6.    <u>Disclosure of Payment.</u>  Consultant acknowledges that Cephalon is required to publicly disclose certain terms of this Agreement, including the identity of Consultant, the nature of the services performed, and compensation paid to Consultant including reimbursement of expenses, and any other items of value given to Consultant under this Agreement.

7.    <u>Termination.</u>  Notwithstanding the provisions of Section 2, Cephalon may terminate this Agreement for any reason whatsoever, upon written notice to Consultant.  In such event, Cephalon shall be responsible for any portion of the fees and expenses owed to Consultant under Section 3 for any Services rendered prior to the effective date of such termination.

8.    <u>Return of Cephalon Property.</u>  Consultant will return to Cephalon any property of Cephalon in Consultant's possession, at any time when so requested by Cephalon and in any event upon termination or expiration of this Agreement.  Consultant will not remove any Cephalon property from Cephalon premises without written authorization from Cephalon.

9.    <u>No Conflicting Agreements.</u>  Consultant warrants and represents that Consultant has the full right and authority to enter into this Agreement and that Consultant has no obligations or commitments inconsistent with this Agreement and/or its performance hereunder.  Consultant represents that Consultant is not a party to any existing agreement which would prevent Consultant from entering into and performing this Agreement. Consultant will not enter into any other agreement that is in conflict with Consultant's obligations under this Agreement.

10.    <u>Independent Contractor.</u>  Consultant is an independent contractor under this Agreement. Neither party shall have the power to bind the other party to any agreement, contract, obligation or liability.

CONFIDENTIAL

11. <u>Entire Agreement, Amendment and Assignment</u>.  This Agreement is the sole agreement between Consultant and Cephalon with respect to the Services to be performed hereunder and it supersedes all prior agreements and understandings with respect thereto, whether oral or written.  No modification to any provision of this Agreement shall be binding unless in writing and signed by Consultant and a duly authorized representative of Cephalon.

12. <u>Governing Law</u>.  This Agreement shall be governed by and interpreted in accordance with laws of the State of Delaware, without giving effect to any conflict of laws provisions.

13. <u>Notices</u>.  All notices and other communications required or permitted hereunder or necessary or convenient in connection herewith shall be in writing and shall be deemed to have been given when hand delivered, sent by facsimile or mailed by registered or certified mail, as follows (provided that notice of change of address shall be deemed given only when received):

      If to Cephalon, then to:

          Cephalon, Inc.
          41 Moores Road
          Post Office Box 4011
          Frazer, PA  19355
          Attention:  Rob Kaper, MD, Vice President of Medical Affairs
          With a copy to:  General Counsel

      If to Consultant, then to:

| | |
|---|---|
| Name: | Russell Portenoy, MD |
| Address: | Beth Israel Medical Center |
| | First Avenue at 16th Street |
| | New York, NY 10003 |
| | |
| Telephone #: | (212) 844-1505 |
| Facsimile #: | (212) 844-1503 |

or to such other names or addresses as Cephalon or Consultant, as the case may be, shall designate by notice to each other person entitled to receive notices in the manner specified in this Section.

14. <u>Counterparts</u>.  This Agreement shall become binding when any one or more counterparts hereof, individually or taken together, shall bear the signatures of Consultant and Cephalon.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, but all of which together shall constitute but one and the same instrument.

# CONFIDENTIAL

15.  Severability. If any provision of this Agreement is deemed to be invalid or unenforceable by a court of competent jurisdiction or in arbitration, the same shall be deemed severable from the remainder of this Agreement and shall not cause the invalidity or unenforceability of the remainder of the Agreement.

16.  Further Action.  Each party hereto shall take, or cause to be taken, all actions, and do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations (including, without limitation, those regulations promulgated by the United States Internal Revenue Service), and execute and deliver such further documents as may be reasonably requested by the other party in connection with the operation of this Agreement.

17.  Compliance with Law. Consultant agrees to comply with all applicable statutes and regulations relating to the performance of the Services.

18.  Adverse Event Reporting and Product Complaints:  Consultant acknowledges that Cephalon is required to comply fully and promptly with all regulatory safety reporting requirements regarding its products.  In accordance with Cephalon's policies and procedures, Consultant agrees that if it receives information relating to adverse events (AE), product complaints (PC), and/or other Cephalon product-related safety information (e.g. special safety topics as communicated to Consultant through separate correspondence), Consultant will promptly notify Cephalon as follows:  all AE and PC information received by Consultant must be reported by Consultant within one business day by telephone to Cephalon's Medical Services Department (800-896-5855) or by email (usmedinfo@cephalon.com).  If AE/PC information is received by Consultant on a non-business day or after regular business hours of a business day, then Consultant must transmit the information by the end of the next business day.  However, if more than 3 non-business days occur in a row, it is the responsibility of Consultant to transmit the information by the end of day 3.  The time period to report any other special safety topics shall be specified by Cephalon in separate correspondence.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.
THE SIGNATURE PAGE FOLLOWS.]

CONFIDENTIAL

19.  <u>Debarment</u>.  Consultant  hereby certifies that Consultant has not been debarred under the Generic Drug Enforcement Act of 1992, 21 U.S.C. § 335a, or sanctioned by a Federal Health Care Program (as defined in 42 U.S.C. § 1320 a-7b(f)), including, but not limited to, the federal Medicare or a state Medicaid program, or debarred, suspended, or excluded from any Federal agency or program.  If during the term of this Agreement Consultant becomes debarred, suspended, excluded, or otherwise sanctioned, or receives notice of such action prior to the conduct of any agreed-upon interaction, Consultant will notify Cephalon immediately and all agreements and commitments regarding any future interactions shall terminate immediately whether or not Cephalon received timely notice.

20.  <u>Use of Cephalon's Name</u>.  Consultant shall not use the name of Cephalon or any variant thereof, and/or the Cephalon logo in any advertising, publicity, patent application or other publication without the prior written permission of Cephalon.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound, have duly executed, or caused to be duly executed, this Agreement as of the date first above written.

CEPHALON, INC.

By:
Name:  Rob Kaper, MD
Title:  Vice President, Medical Affairs
Date:  02 / 23 / 11

CONSULTANT

By:
Name:  Russell Portenoy, MD
Title:  Chair, VP
Date:  2 / 24 / 11

APPROVED
LEGAL DEPT

CONFIDENTIAL

7

**Addendum to CONSULTING AGREEMENT**

The following provisions run to the benefit, and are enforceable by Russell K. Portenoy, MD ("Consultant") and Beth Israel Medical Center ("Beth Israel"):

a. The Company agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

b. The Company agrees to indemnify, defend and hold harmless Consultant and Beth Israel, and Beth Israel's directors, officers, employees and agents (hereinafter the "Indemnified Parties"), from and against any and all claims, losses, damages, liabilities, suits, judgments, settlements and expenses howsoever arising (including but not limited to settlement costs and reasonable legal fees) asserted against any of the Indemnified Parties relating directly or indirectly to the services performed by Consultant under or in connection with this Agreement. This provision shall survive the termination of this Agreement.

c. The Company shall provide and maintain at its own expense during this Agreement the following insurance coverages with such insurers as shall be acceptable to Beth Israel in minimum limits of $1 million per occurrence and $3 million in the aggregate: comprehensive general liability, products liability, and contractual. The Company shall give Beth Israel thirty (30) days prior written notice of any changes in or cancellation of such insurance.

CONFIDENTIAL

Donna Reid

| | |
|---|---|
| **From:** | Kaiko, Dr Robert [Dr.Robert.Kaiko@pharma.com] |
| **Sent:** | Tuesday, May 15, 2012 10:09 AM |
| **To:** | Donna Reid |
| **Cc:** | Russell Portenoy, MD; Camp-Font, Nancy |
| **Subject:** | RE: May 23-25 1hr telecon Consultancy |

Russ

We'll need to reschedule this discussion when we have a better idea of when the information we wish you to weigh in on is ready.  It will not be ready this or next week.

Sorry for the inconvenience,
bk

Robert F. Kaiko, Ph.D.
Vice President R&D Portfolio Development
Purdue Pharma
One Stamford Forum
Stamford, CT  06901-3431
203-588-7210
203-588-6106 (fax)
dr.robert.kaiko@pharma.com

IMPORTANT NOTICE: This message is intended only for the use of the individual or entity to which it is addressed. The message may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited.

**From:** Donna Reid [mailto:DoReid@chpnet.org]
**Sent:** Wednesday, May 09, 2012 1:38 PM
**To:** Kaiko, Dr Robert
**Subject:** RE: May 23-25 1hr telecon Consultancy

Dr. Kaiko,

Dr. Portenoy is available May 24 at 1:00. Please confirm this works for you.

Donna Reid
Administrative Assistant II
Beth Israel Medical Center
First Ave at 16th St
New York, NY 10003
P: 212-844-1505
F: 212-844-1503
doreid@chpnet.org

1

CONFIDENTIAL

**From:** Kaiko, Dr Robert [mailto:Dr.Robert.Kaiko@pharma.com]
**Sent:** Tuesday, May 08, 2012 9:43 AM
**To:** Russell Portenoy, MD
**Cc:** Donna Reid
**Subject:** May 23-25 1hr telecon Consultancy

Russ
Might you be in a position to have an  hour conference call sometime between May 23rd and May 25th and reviewing a slide deck provided the previous week.   The call would involve a few Purdue people and  you.  It would be in respect to opioid abuse deterrent study outcomes and their interpretation.
Warmest,
bk


Robert F. Kaiko, Ph.D.
Vice President R&D Portfolio Development
Purdue Pharma
One Stamford Forum
Stamford, CT  06901-3431
203-588-7210
203-588-6106 (fax)
dr.robert.kaiko@pharma.com


IMPORTANT NOTICE: This message is intended only for the use of the individual or entity to which it is addressed. The message may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited.


**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** Monday, April 23, 2012 12:13 PM
**To:** Kaiko, Dr Robert
**Cc:** Donna Reid
**Subject:** RE: June 29 Consultancy

Bob,

Sorry, but I will be chairing a symposium at the MASCC 2012 conference.
Hope all is well.
Russ


**From:** Kaiko, Dr Robert [mailto:Dr.Robert.Kaiko@pharma.com]
**Sent:** Friday, April 20, 2012 1:43 PM
**To:** Russell Portenoy, MD; Russell Portenoy, MD; ssussmann@aol.com
**Subject:** June 29 Consultancy


Russ
Hope this note finds all well with  you.
Might  you be available for a June 29th day-long consultancy panel in Fairfield County regarding preparations for an NDA filing for an analgesic drug?
Thanks,

2

# CONFIDENTIAL

bk

Robert F. Kaiko, Ph.D.
Vice President R&D Portfolio Development
Purdue Pharma
One Stamford Forum
Stamford, CT  06901-3431
203-588-7210
203-588-6106 (fax)
dr.robert.kaiko@pharma.com

IMPORTANT NOTICE: This message is intended only for the use of the individual or entity to which it is addressed. The message may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited.

This message and any attachments are confidential and intended solely for the use of the individual or entity to which they are addressed.  If you are not the intended recipient, you are prohibited from printing, copying, forwarding, saving, or otherwise using or relying upon them in any manner.  Please notify the sender immediately if you have received this message by mistake and delete it from your system.

This message and any attachments are confidential and intended solely for the use of the individual or entity to which they are addressed.  If you are not the intended recipient, you are prohibited from printing, copying, forwarding, saving, or otherwise using or relying upon them in any manner.  Please notify the sender immediately if you have received this message by mistake and delete it from your system.

CONFIDENTIAL

RP_000690

Donna Reid

**From:** Donna Reid
**Sent:** Tuesday, January 03, 2012 10:05 AM
**To:** 'Etchells, Katy, Springer Healthcare'
**Subject:** RE: Purdue PERFORM Honoraria

Russell Portenoy, MD
Beth Israel Medical Center
Department of Pain Medicine and Palliative Care
First Avenue at 16th Street
New York, NY 10003

**Donna Reid**
**Administrative Assistant II**
**Beth Israel Medical Center**
**First Ave at 16th St**
**New York, NY 10003**
**P: 212-844-1505**
**F: 212-844-1503**
doreid@chpnet.org

**From:** Etchells, Katy, Springer Healthcare [mailto:Katy.Etchells@springer-sbm.com]
**Sent:** Tuesday, January 03, 2012 8:34 AM
**To:** Donna Reid
**Subject:** FW: Purdue PERFORM Honoraria

Donna,

Please can you confirm the correct address for us to send the check.

Many thanks
Katy

---
**Katy Etchells**
Springer Healthcare Ltd
Senior Account Manager
---
Farside House | Nantwich Road | Tarporley | Cheshire | CW6 9UY | UK
tel:  +44 (0)1829 731244
mobile: +44 (0)7917 451070
fax: +44 (0)1829 732772
---
233 Spring St | New York | NY | 10013 | USA
tel: +1 212 257 5212

E-mail: katy.etchells@springer.com
---
www.springerhealthcare.com

1

CONFIDENTIAL

RP_000691

**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** 03 January 2012 13:29
**To:** Etchells, Katy, Springer Healthcare
**Cc:** Donna Reid
**Subject:** RE: Purdue PERFORM Honoraria

Thank you.  A check is fine if acceptable to you.

Russ Portenoy MD

---

**From:** Etchells, Katy, Springer Healthcare [mailto:Katy.Etchells@springer-sbm.com]
**Sent:** Tuesday, January 03, 2012 6:52 AM
**To:** Russell Portenoy, MD
**Cc:** Donna Reid
**Subject:** Purdue PERFORM Honoraria

Dear Dr Portenoy,

Thank you once again for participating in the Purdue PERFORM filming schedule in December.

We would like process your final honoraria payment of $2,000. Please can you confirm if you require this to be paid by check or by bank transfer. If you require a bank transfer please can you provide the following details:

Account Holder Name:
Account Holder Address:
Bank Name:
Bank Address
IBAN/Account No:
Sort Code:
BIC/SWIFT:

Many thanks and kind regards
Katy

---
**Katy Etchells**
Springer Healthcare Ltd
Senior Account Manager
---
Farside House | Nantwich Road | Tarporley | Cheshire | CW6 9UY | UK
tel:  +44 (0)1829 731244
mobile: +44 (0)7917 451070
fax: +44 (0)1829 732772
---
233 Spring St | New York | NY | 10013 | USA
tel: +1 212 257 5212

E-mail: katy.etchells@springer.com
---
www.springerhealthcare.com

2

# CONFIDENTIAL

RP_000692

## HEALTHCARE PROFESSIONAL CONSULTANT AGREEMENT

### AVINZA Advisory Board

This Agreement (the "Agreement") is made and entered by and between Pfizer Inc ("Pfizer")  and Dr Russell Keith Portenoy, MD ("CONSULTANT"), a health care professional with offices at First Ave. at 16th Street, New York, NY 10003, and is effective as of the date of last signature below ("Effective Date").

WHEREAS, there are emerging trends in the treatment of diseases associated with the use of Pfizer products to review the components of AVINZA Risk Management Program (RMP) and the results achieved to date; and WHEREAS, CONSULTANT is a healthcare professional generally familiar with the patient care benefits associated with AVINZA  whose expertise would be valuable to Pfizer in the review of  the components of AVINZA Risk Management Program (RMP) and the results achieved , subject to the terms and conditions herein;

WHEREAS, Pfizer wishes to engage CONSULTANT to provide the services described herein, and CONSULTANT agrees to accept such engagement;

NOW, THEREFORE, in consideration of the above recitals, the terms and conditions hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  **TERM.**   The term of this Agreement shall begin on the Effective Date and shall continue until the later of the date on which all services hereunder have been fully performed or for a period of one (1) year ("Term").

2.  **CONSULTING SERVICES.**
    CONSULTANT shall provide advice to Pfizer regarding the review of the components of AVINZA Risk Management Program (RMP) and the results achieved to date, in conjunction with the AVINZA Risk Management Committee WebEx Meeting held in New York, NY via WebEx on March 22, 2012. Consulting Services shall include active participation in the meeting. The sole purpose of this meeting is to review the components of AVINZA Risk Management Program (RMP) and the results achieved to date.
    Consulting Services shall include the following pre- or post-meeting services: review slides. Pfizer, in its discretion, may issue separate or combined payment(s) for those portions of the Consulting Fee (defined in Section 4(a) below) attributable to event participation and to any authorized pre- or post-meeting services, upon confirmation of completion of services. In no event shall the total Consulting Fee exceed the sum set forth in Section 4(a).

3.  **INDEPENDENT CONTRACTOR.**   In the performance of Consulting Services pursuant to this Agreement, it is mutually understood and agreed that CONSULTANT is at all times acting and performing as an independent contractor for Pfizer and this Agreement shall not create any relationship of principal-agent, employer-employee, joint venture, co-partners or any other such relationship. CONSULTANT is further responsible for the payment of any taxes and the filing of any documents required by applicable law for independent contractors.  Pfizer will not withhold any federal, state, or local income tax or payroll tax of any kind on behalf of CONSULTANT.

CONFIDENTIAL

4.    COMPENSATION.

(a)    Consulting Fee

As consideration for CONSULTANT'S full provision of the Consulting Services described above, Pfizer shall pay CONSULTANT the sum of $1,000 USD ("Consulting Fee"). To the extent Consultant Services involve participation at a meeting or event, the Consulting Fee includes compensation for reasonable pre- and post-meeting activities required to conduct Consulting Services

(b)    Travel Expenses

If travel is required for the performance of the Consulting Services, shall provide CONSULTANT with associated travel and lodging accommodations in accordance with Pfizer's Travel and Expense Policy, attached hereto as Exhibit A. In no event shall Pfizer be obligated to pay CONSULTANT for expenses incurred outside of Pfizer's Travel and Expense Policy, without prior written consent of Pfizer. CONSULTANT may not seek compensation for time spent traveling in connection with Consulting Services.

(c)    Documents Required for Payment

CONSULTANT must provide any documentation required by Pfizer to process the Consulting Fee (or any portion thereof) within thirty (30) days of completion of Consulting Services. In addition, any Pfizer-approved reimbursable travel expenses must be submitted to Pfizer with supporting documentation within one (1) year of performance of Consulting Services. Pfizer shall not be obligated to pay invoices submitted by CONSULTANT more than one (1) year after completion of the applicable Consultant Services or the date that a reimbursable expense was incurred by CONSULTANT.

5.    MEALS. Consistent with Pfizer policy and state laws, Pfizer may cover and/or reimburse reasonable meal expenses that are necessarily incurred in the course of bona fide Consulting Services provided under this Agreement.

6.    CONFIDENTIALITY. In connection with CONSULTANT's performance of Consulting Services, CONSULTANT acknowledges that certain Confidential Information (as defined below) of Pfizer that is valuable and proprietary to Pfizer and its affiliates has been or may be disclosed to CONSULTANT. CONSULTANT agrees not to, directly or indirectly, use, publish, disseminate or disclose any Confidential Information of Pfizer without prior written consent of Pfizer. As used in the Agreement, the term "Confidential Information" shall mean all confidential and proprietary information of Pfizer and its affiliates, not otherwise publicly disclosed or generally available, including information entrusted to such party by others. Without limiting the foregoing, Confidential Information shall include information relating to Pfizer marketing or research and development plans or strategies. CONSULTANT shall not record any part or portion of any meeting in which CONSULTANT participates, unless specifically authorized to do so by Pfizer. CONSULTANT shall not duplicate any material containing Confidential Information and shall return all such information to Pfizer upon

Portenoy Revision.doc                                                                          2

RP_000694

CONSULTANT's completion of services under this Agreement or upon any earlier termination of this Agreement for any reason whatsoever. The provisions of this Section shall survive termination of this Agreement. Neither this Agreement, nor CONSULTANT's or Pfizer's performance under it, will transfer to CONSULTANT, or create in CONSULTANT, any proprietary right, title, interest or claim in or to any Confidential Information.

7.   **INTELLECTUAL PROPERTY.**  CONSULTANT will promptly disclose to Pfizer any invention, trademark, copyrightable material, or commercial idea or plan, arising from Consulting Services under this Agreement.  Pfizer will be or will be made the exclusive owner all inventions, developments, designs, processes, techniques, reports, documentation and other work product developed, authored or produced or acquired by CONSULTANT for Pfizer pursuant to this Agreement (the "Deliverables") which shall be considered works made for hire, and CONSULTANT hereby irrevocably assigns to Pfizer all rights, title and interest in an to the Deliverables, including, without limitation, all copyrights, patents, and any other intellectual property rights; no rights are reserved by CONSULTANT. CONSULTANT will execute such documents and take such other action, at Pfizer's expense, as may be necessary or appropriate to establish, register, record or otherwise document Pfizer's ownership therein in the United States and/or foreign countries. CONSULTANT will also secure assignments of such rights from any freelance non-employee it may engage with respect to Consulting Services under this Agreement, and shall reassign same to Pfizer.  CONSULTANT agrees to obtain Pfizer's prior written approval for any presentation or publication relating to Consulting Services provided to Pfizer hereunder or to information disclosed to CONSULTANT by Pfizer in connection with this Agreement, both as to content and time of publication or presentation. Pfizer, in its sole discretion, reserves the right to withhold or deny such approval of any presentation or publication relating to Consulting Services provided to Pfizer pursuant to this Agreement or to confidential information disclosed to CONSULTANT by Pfizer in connection with this Agreement.

a. The Company agrees that it will not use the name Beth Israel Medical Center, or any abbreviation, contraction or simulation thereof, in any publicity, advertising or promotional material of any nature, without the express prior written consent of Beth Israel.

8.   **REPRESENTATIONS AND WARRANTIES.**

CONSULTANT represents and warrants to Pfizer that:

(a) CONSULTANT will perform all services hereunder in a professional manner consistent with industry standards; in accordance with all applicable laws, regulations and other legal requirements; and in compliance with Pfizer policies provided to CONSULTANT;

(b) CONSULTANT has not agreed to accept or receive any money or anything of value directly or indirectly from Pfizer as an improper inducement for CONSULTANT to (i) approve, reimburse, prescribe, or purchase a Pfizer product, (ii) influence the outcome of a

Portenoy Revision.doc                                                            3

CONFIDENTIAL

clinical trial, (iii) improperly influence any government, government official or governmental entity, or (iv) otherwise improperly benefit Pfizer's business;

(c) CONSULTANT is a U.S. citizen or is authorized to work in the U.S., is not acting and will not act during the Term of this Agreement in violation of the Immigration Reform and Control Act of 1986, its amendments, and the regulations thereunder;

(d) CONSULTANT has been approved by CONSULTANT's employer to provide Consulting Services and, and where one is provided under Section 4, to accept a payment for those services;

(e) CONSULTANT is not excluded from participating in Federally-funded health care programs by the Office of the Inspector General of the Department of Health and Human Services and has not been debarred from providing services in any capacity to a person that has an approved or pending drug product application by the Food and Drug Administration or any other applicable governmental authority;

(f) CONSULTANT has not been and is not currently (i) subject to any pending or final adverse action, suspension, revocation, termination or other similar action by any medical board, medical society, medical association or licensing or accrediting body; (ii) subject to any pending or final decision or judgment by a court or administrative or governmental agency that alleges that CONSULTANT failed to comply with any law, regulation, rule, ordinance, order, or directive related to the practice of health care; or (iii) charged with, convicted of or pleaded guilty or no contest to any criminal offense whatsoever;

(g) CONSULTANT Deliverables will not infringe upon any patent, copyright, or other intellectual property rights of any third party; and

(h) CONSULTANT has the full power and authority to enter into this Agreement and to perform the obligations set forth herein.

CONSULTANT shall immediately notify Pfizer in writing at HCPConfirm@pfizer.com if any official actions are initiated or other events occur which affect the accuracy of CONSULTANT's representations and warranties in subsections (e) or (f) above.

Pfizer represents and warrants to CONSULTANT that its payment of any Consulting Fee set forth in Section 4 is made solely for the purposes set forth in Section 2 and not as an improper inducement for the CONSULTANT to (i) approve, reimburse, prescribe, or purchase a Pfizer product, (ii) influence the outcome of a clinical trial sponsored by Pfizer, (iii) improperly influence any government, government official or governmental entity, or (iv) otherwise improperly benefit Pfizer's business.

In addition to the parties' other rights to terminate this Agreement, each party may terminate this Agreement immediately by written notice if the other party breaches any of the representations, warranties and covenants set forth in this Section.

Portenoy Revision.doc                                                                               4

CONFIDENTIAL

9.  **TERMINATION WITHOUT CAUSE.**  Pfizer may terminate this Agreement at any time by giving CONSULTANT written notice of termination.  In the event of such early termination, Pfizer will reimburse CONSULTANT for any reasonable business expenses related to the Consulting Services incurred or irrevocably committed as of the date notice of termination is received by CONSULTANT.  Pfizer will not reimburse CONSULTANT for any personal expenses incurred that are unrelated to the Consulting Services described in Section 2.

In the event this Agreement is terminated by Pfizer on at least five (5) days' notice to CONSULTANT, Pfizer shall not pay the Consulting Fee outlined in Section 4.  In the event this Agreement is terminated by Pfizer with less than five (5) days' notice to CONSULTANT, or in the event the CONSULTANT cannot attend the meeting described in Section 2 due to travel delays outside the control of the CONSULTANT or Pfizer, Pfizer shall pay to CONSULTANT one-half of the Consulting Fee outlined in Section 4.

10.  **TERMINATION FOR CAUSE.**  In addition to any other rights or remedies available, Pfizer may terminate this Agreement immediately upon written notice if CONSULTANT breaches any of the Representations and Warranties in Section 8 or other material provisions of the Agreement or if Pfizer learns that improper payments are being or have been made to Government Officials by CONSULTANT with respect to Consulting Services performed on behalf of Pfizer or any other company.  Further, in the event of such termination, CONSULTANT shall not be entitled to any payment, regardless of any activities undertaken or agreements with additional third parties entered into prior to termination, and the CONSULTANT shall be liable for damages or remedies as provided by law.  For purposes of this Agreement, a "Government Official" includes: (i) any elected or appointed government official (e.g., a member of a ministry of health); (ii) any employee or person acting for or on behalf of a government official, agency, or enterprise performing a governmental function; (iii) any political party, office, employee, or person acting for or on behalf of a political party or candidate for public office; or (iv) an employee or person acting for or on behalf of a public international organization; where "government" is meant to include all levels and subdivisions of US or non-US governments.

11.  **DISCLOSURE BY CONSULTANT.**  CONSULTANT represents and warrants to Pfizer that if CONSULTANT is a member of any committee(s) that set formularies of covered medicines or develop clinical practice guidelines that may influence the prescribing of medicines, then CONSULTANT shall disclose to such committee(s) the existence and nature of his or her relationship(s) with Pfizer.  CONSULTANT also agrees to comply with any applicable disclosure requirements and disclose CONSULTANT'S relationship with Pfizer as required pursuant to any affiliation that CONSULTANT has with any health care institution, medical committee or other medical or scientific organization. The provisions of this Section shall extend for two years beyond the termination of this Agreement.

12.  **DISCLOSURE BY PFIZER**.  CONSULTANT gives Pfizer permission to publicly disclose in its discretion, and in accordance with the information maintained in Pfizer's

TOTAL  P.01

CONFIDENTIAL                                                                                            RP_000697

MAP-20-2012  09:35                                                                    P.07

internal business records, CONSULTANT'S name and certain information relating to this Agreement including, but not limited to, any financial and in-kind payments or items of value received under this Agreement, the nature of the engagement and any other payment or service related information as may be deemed appropriate by Pfizer or as may be dictated by law, regulation or regulatory guidance. Payments to institutions for work done by specified individuals may reference both the institution and the individual.

13. **NO ASSIGNMENT.** CONSULTANT acknowledges that this Agreement is for his/her personal services and CONSULTANT may not be assign, transfer or subcontract, in whole or in part, any of its rights or obligations under this Agreement without the prior written consent of Pfizer, which may be withheld at Pfizer's discretion. Any attempted assignment of this Agreement without such prior written consent of Pfizer shall be void and ineffective.

14. **GOVERNING LAW.** This Agreement shall, in all respects, be construed and governed by and under the laws of the State of New York, without giving effect to its conflict of laws provisions.

15. **ENTIRE AGREEMENT, AMENDMENTS.** This Agreement constitutes the entire agreement of the parties with respect to its subject matter and merges and supersedes any previous agreements or understandings, written or oral between the parties with respect thereto. This Agreement shall not be modified or amended except by a written document executed by both parties to this Agreement, and such written modification shall be attached hereto.

16. **COUNTERPARTS AND ELECTONIC SIGNATURES.** This Agreement and any amendments may be executed in counterparts which, taken together, shall be deemed to constitute one and the same instrument. Any counterpart signature delivered by facsimile or electronic format, including digital signatures captured through a Pfizer contract management system or portal, shall be given the same legal effect as an original signature.

By signing below, the parties attest to understanding and agreeing to the conditions listed above.

CONSULTANT: Dr Russell Keith Portenoy, MD

Signature: _____

Date: _____ 3/19/12 _____

PFIZER INC

Signature: _AnaMaria Jorga_

Name (printed): _ANA MARIA JORGA_

Title: _Medical Director_
Date: _3/19/12_
Portenoy Revision.doc

6

CONFIDENTIAL

RP_000698

MAR-20-2012  09:36                                                                    P.03

EXHIBIT A

## Consultant Travel & Expense Policy

### General Guidelines

It is recognized that Consultants occasionally need to travel for the performance of their work for Pfizer. Consultants are responsible for arriving at a scheduled engagement on time, and Consultants are responsible for ensuring that all required travel arrangements are made in a timely manner and in accordance with this Policy. All travel must be consistent with the needs of the business and in compliance with applicable laws.  Consultants will be reimbursed for all reasonable expenses actually incurred that are consistent with this Policy and necessary to perform services for Pfizer. Pfizer reserves the right to deny reimbursement for expenses incurred which are not reimbursable or deemed unreasonable by Pfizer pursuant to this Policy.

This Policy is intended to provide a clear understanding of acceptable reimbursable expenses. Overall, the application of sound business judgment should ensure that each person acts responsibly.  Additionally, Pfizer requires that Consultants use the most economical service available.

### Receipts

It is company policy to ensure that travel and entertainment expenses are subject to proper financial controls and that the incurring and reporting of such expenses are in compliance with applicable Internal Revenue Service regulations. All original receipts for incidental expenses must be submitted for reimbursement.

### Travel Agent

World Travel Partners (WTP/BCD Travel) is the designated company travel agent which Pfizer utilizes. Pfizer has negotiated rates through WTP with various airlines, hotels, and car rental agencies and, as such, to ensure that Pfizer receives the benefit of these discounts, Consultants must use a Pfizer authorized program coordinator for all Consultant travel reservations and ticketing, including airline, hotel, and car service reservations, unless otherwise instructed by Pfizer in writing. The program coordinator will book arrangements through WTP if possible.

### Airline/Train Tickets

All airline reservations for Pfizer business must be arranged through a Pfizer authorized program coordinator unless otherwise instructed by Pfizer in writing.  The Pfizer program coordinator will utilize WTP for booking airline tickets when possible. Pfizer, in conjunction with WTP, has specifically negotiated discounts on several major U.S. airlines. Therefore, Consultants are required to utilize these Pfizer-approved airlines (United Airlines, Delta Air Lines, and Continental Airlines) for their travel if available. In most cases, the rates on these airlines will be more competitive than the rates on other carriers. It is important to note that in some cases, although the ticket price may appear higher, Pfizer receives a periodic rebate from these airlines based on our volume of business. Unless unreasonable circumstances can be demonstrated (e.g., lowest-cost approved airline makes a connection with a lengthy stopover), the lowest-cost approved airline will be used by the Pfizer

Portenoy Revision.doc                                                                    7

CONFIDENTIAL

MAR-20-2012  09:37                                                                                    P.09

authorized program coordinator. WTP provides Pfizer with a monthly report detailing the instances in which the lowest-rate approved airlines were not used and why. Tickets should be purchased through the Pfizer authorized program coordinator well in advance of the speaking engagement to take advantage of normal airline discounts.  All air travel booked through the program coordinator will be billed directly to Pfizer.

WTP will furnish a full ticket package including a receipt for any flight reserved through their travel desk, which the Consultant will receive either directly from WTP or from the Pfizer authorized program coordinator. In the event any portion of a ticket is unused, it should be securely returned to the issuing agent as soon as possible.

## Private or Charter Aircraft

The use of private or charter aircraft to perform services for Pfizer is discouraged. If you decide to use your own or a charter aircraft against Pfizer's advice you do so at your own risk. By signing the Consultant Agreement to which this Policy is attached you thereby, freely and voluntarily, on behalf of yourself and your estate, release Pfizer, its affiliates, officers, directors, employees and agents from any and all liability in connection with your decision to use your own or a charter aircraft. In the event that you use your private aircraft or a charter aircraft, Pfizer will only reimburse you the cost of a coach class ticket on the lowest-cost approved airline.

## Air Class

Coach class is required for all flights less than five hours. Pfizer will not reimburse business and first-class upgrades. Business class is only permitted for travel on flights having a continuous duration over five hours. Any exceptions to the authorized class of service must be approved in advance by Pfizer senior management.

## Car Rental

Car rentals should be arranged through the Pfizer authorized program coordinator unless otherwise instructed by Pfizer in writing.  The Pfizer authorized coordinator will make arrangements through the designated company travel agent, WTP, when possible. Pfizer has negotiated corporate rates with Avis and, unless there is a specific need for a larger car, a midsized car should be utilized. If at all possible, before returning a rental car, the gasoline tank should be filled to avoid a premium refueling charge on the rental. Car rental services arranged through a Pfizer program coordinator will NOT be billed directly to Pfizer. Please be prepared to provide your credit card information to secure a car rental reservation.

CONFIDENTIAL

RP_000700

### Personal Vehicle Use/Car Service/Taxi

Use of your personal vehicle is encouraged and will be reimbursed as described below. Repair or maintenance expenses of any kind, however, are not reimbursable while driving your personal vehicle in connection with performing services for Pfizer. Use of reasonable and appropriate car service, defined as a standard four-door sedan, will be reimbursed and should be ordered through a Pfizer authorized program coordinator unless otherwise instructed by Pfizer in writing. Car service should not involve all day service or extended wait periods, unless traveling to a rural location where no alternate and more economical travel arrangements can be made. Use of taxis, where practical, is expected and will be reimbursed. Pfizer reserves the right to review all such expenses and deny those that Pfizer deems unreasonable or excessive.

### Mileage/Gas/Tolls

Consultants using a personal automobile for business purposes may expense the current rate determined by the IRS per mile for mileage incurred, which includes the cost of gas consumed on business-related travel. Consultants will not be reimbursed for any depreciation, repairs or maintenance of their personal car (i.e. gas, oils or flat tire etc.) even if these costs result from business travel. These costs are included in the mileage reimbursement. Damage to a personal automobile will not be reimbursed when it is used to perform services for Pfizer.

Consultants using a rental car may expense the cost of the rental car plus any gas used for business purposes. All tolls incurred during business travel are reimbursable. Consultants must submit receipts for reimbursement of automobile expenses.

### Personal Meals

Individual meals incurred while traveling overnight should be reasonable and in line with what the Consultant would normally incur on his or her own and should exceed not $75. The $75 limit is an appropriate level in major metropolitan areas such as Los Angeles, Chicago, New York, etc. Pfizer will only reimburse for Consultants' meals, and not for the meals of guests traveling or accompanying Consultants.

### Lodging

Hotel arrangements should be made through the Pfizer authorized program coordinator, unless otherwise instructed by Pfizer in writing. The Pfizer authorized program coordinator will book hotel accommodations through WTP. Larger chain hotels, such as Marriott or Sheraton, will be utilized when geographically permissible. Pfizer and WTP have negotiated rates with numerous hotel chains and independent establishments. Hotel accommodations arranged through the Pfizer authorized program coordinator will NOT be billed directly to Pfizer. For engagements involving a meeting, Pfizer will not cover the cost for extra nights in the meeting hotel before or after the meeting, with the exceptions of forced stopovers (attendees that are unable to return home on the day of the meeting close) when Pfizer permits and will pay for one extra night stay and instances in which Consultants are performing services for Pfizer before or after the meeting.

Portenoy Revision.doc                                                                                    9



CONFIDENTIAL

RP_000701

## Personal & Other Travel Expenses

- Pfizer will reimburse the cost of procuring a required visa for international travel
- Pfizer will reimburse the airline baggage fee for up to one checked bag.

## Non-reimbursable Expenses

Listed below are examples of business travel and entertainment expense that are not reimbursable

- Without exception, individual personal expenses for any reason will not be reimbursed including, but not limited to:
  - Dependent care expenses
  - Pet care
  - Traffic fines
  - Optional travel life/accident insurance
  - In-room movies
  - Photocopies
  - Candy
  - Dry Cleaning
  - Passport fees including expedited passport services
  - Toiletries

Portenoy Revision.doc

10

CONFIDENTIAL

RP_000702

## Donna Reid

| | |
|---|---|
| From: | Tive, Leslie [Leslie.Tive@pfizer.com] |
| Sent: | Tuesday, April 24, 2012 4:13 PM |
| To: | Donna Reid |
| Cc: | Park, Peter; Brodsky, Marina; Brodsky, Marina |
| Subject: | RE: Availability and Willingness to Consult with Pfizer on a Pain Narrative we are preparing |

Donna,

Thank you for your response. Just to confirm that Dr. Portenoy will be able to meet  with us for 2-3 hours on that day and time.

Let's put the time on the calendar. Paperwork to follow.

Best Regards,

Leslie Tive

**From:** Donna Reid [mailto:DoReid@chpnet.org]
**Sent:** Tuesday, April 24, 2012 4:05 PM
**To:** Tive, Leslie
**Subject:** RE: Availability and Willingness to Consult with Pfizer on a Pain Narrative we are preparing

Hello,

Dr. Portenoy is available may 29 at 2:00. Please confirm this works for you.


Donna Reid
Administrative Assistant II
Beth Israel Medical Center
First Ave at 16th St
New York, NY 10003
P: 212-844-1505
F: 212-844-1503
doreid@chpnet.org

**From:** Tive, Leslie [mailto:Leslie.Tive@pfizer.com]
**Sent:** Tuesday, April 24, 2012 9:00 AM
**To:** Russell Portenoy, MD
**Subject:** RE: Availability and Willingness to Consult with Pfizer on a Pain Narrative we are preparing

Russ,
Thanks for getting back to me. We are very flexible with the dates and would come to your office at a time that you are able to meet with us, so that should not be a problem. These will be one on one meetings not with a group that  we would have to schedule around. Thanks so much for your willingness to do this. We will be in touch with the follow up logistics.

Very best,

Leslie

1

# CONFIDENTIAL

RP_000703

**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** Tuesday, April 24, 2012 5:42 AM
**To:** Tive, Leslie
**Subject:** RE: Availability and Willingness to Consult with Pfizer on a Pain Narrative we are preparing

Dear Leslie,

I am pretty sure that I can find time like this in May, but I'll need to clarify the date to be sure.  I will be away several days.  If the time can be found, then I would be willing, yes.

Russ

**From:** Tive, Leslie [mailto:Leslie.Tive@pfizer.com]
**Sent:** Monday, April 23, 2012 4:02 PM
**To:** Russell Portenoy, MD
**Subject:** Availability and Willingness to Consult with Pfizer on a Pain Narrative we are preparing

Dr. Portenoy,

It has been a while since we last spoke.  I hope that you are doing well. I just spoke with Donna who told me that you are just back from vacation and I hope it was a good one.

I am writing to ask if you would be willing to consult with us on a Pain Narrative document that the Pain Cluster at Pfizer is developing as our overall position on pain. We would like to get your expert feedback on our pain narrative/storyboard prior to finalization. This would involve a face to face meeting with you in NY in the May time period. It should take no more than 3 hours total time, and we will compensate you for your time.

Please let me know if you would be interested in doing this and if you are, we will begin the requisite paper work and scheduling.

Very Best,

Leslie Tive

This message and any attachments are confidential and intended solely for the use of the individual or entity to which they are addressed.  If you are not the intended recipient, you are prohibited from printing, copying, forwarding, saving, or otherwise using or relying upon them in any manner.  Please notify the sender immediately if you have received this message by mistake and delete it from your system.

This message and any attachments are confidential and intended solely for the use of the individual or entity to which they are addressed.  If you are not the intended recipient, you are prohibited from printing, copying, forwarding, saving, or otherwise using or relying upon them in

CONFIDENTIAL

any manner.  Please notify the sender immediately if you have received this message by mistake and delete it from your system.

CONFIDENTIAL

RP_000705

Donna Reid

| | |
|---|---|
| **From:** | Tive, Leslie [Leslie.Tive@pfizer.com] |
| **Sent:** | Thursday, May 10, 2012 9:55 AM |
| **To:** | Russell Portenoy, MD; Donna Reid |
| **Cc:** | Park, Peter |
| **Subject:** | FW: Letter of Invitation - Expert review of Pfizer pain narrative |

Russ,

See e-mail trail below. Donna has already put us on your calendar for May 29th at 2:00 for this meeting. Perhaps you didn't realize that it was for the same engagement ?If it is still OK, we will be coming to your office. The letter below is just the paperwork so that we can compensate you for your time.

Very Best Regards,

Leslie Tive

**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** Thursday, May 10, 2012 6:17 AM
**To:** Tyson, Kristen
**Cc:** Park, Peter; HCPIndividualEngagements; Martin, Christa M
**Subject:** RE: Letter of Invitation - Expert review of Pfizer pain narrative

Thank you for this invitation. Unfortunately, I am overextended and will not be able to accept.

R. Portenoy MD

**From:** Kristen.Tyson@pfizer.com [mailto:Kristen.Tyson@pfizer.com]
**Sent:** Wednesday, May 09, 2012 4:41 PM
**To:** Russell Portenoy, MD
**Cc:** peter.park@pfizer.com; hcpindividualengagements@pfizer.com; christa.martin@pfizer.com
**Subject:** Letter of Invitation - Expert review of Pfizer pain narrative



## Letter of Invitation - Expert review of Pfizer pain narrative

Dear Dr. PORTENOY,

On behalf of Pfizer, we are pleased to invite you to participate in the Expert review of Pfizer pain narrative. The purpose of this consulting engagement is for the Pfizer Medical Affairs team in PCBU Pain/inflammation to seek expert KOL review of their Pain Narrative.

The engagement will be held on *May 29, 2012* in New York City.

1

CONFIDENTIAL

RP_000706

To ensure prompt payment upon completion of services, Pfizer requires all documentation listed below to be completed and received prior to the engagement start date.

Signed Consulting Agreement (all pages)
Completed ACH Details Form
Completed W9
Curriculum Vitae (CV)

Attached are the following documents:

Consulting Agreement
ACH Details Form (blank)
W9 (blank)

Please ensure that the required documentation is faxed to me at *484-865-8890* prior to *Monday, May 14, 2012.*

If you have any questions regarding this engagement, please reach out to me directly using the contact information below. I will be pleased to assist you.

Sincerely,

Kristen Tyson
Individual Engagement Specialist
HCPIndividualEngagements@pfizer.com
Phone: 484-865-8137
Fax: 484-865-8890
Compliant Meetings and Controls
Pfizer Inc



For informational purposes and internal use only. © 2012 Pfizer Inc.

Hello,

Dr. Portenoy is available may 29 at 2:00. Please confirm this works for you.

**Donna Reid**
**Administrative Assistant II**
**Beth Israel Medical Center**
**First Ave at 16th St**
**New York, NY 10003**
**P: 212-844-1505**
**F: 212-844-1503**
doreid@chpnet.org

**From:** Tive, Leslie [mailto:Leslie.Tive@pfizer.com]
**Sent:** Tuesday, April 24, 2012 9:00 AM
**To:** Russell Portenoy, MD
**Subject:** RE: Availability and Willingness to Consult with Pfizer on a Pain Narrative we are preparing

2

# CONFIDENTIAL

RP_000707

Russ,

Thanks for getting back to me. We are very flexible with the dates and would come to your office at a time that you are able to meet with us, so that should not be a problem. These will be one on one meetings not with a group that we would have to schedule around. Thanks so much for your willingness to do this. We will be in touch with the follow up logistics.

Very best,

Leslie


**From:** Russell Portenoy, MD [mailto:RPorteno@chpnet.org]
**Sent:** Tuesday, April 24, 2012 5:42 AM
**To:** Tive, Leslie
**Subject:** RE: Availability and Willingness to Consult with Pfizer on a Pain Narrative we are preparing

Dear Leslie,

I am pretty sure that I can find time like this in May, but I'll need to clarify the date to be sure.  I will be away several days.  If the time can be found, then I would be willing, yes.

Russ

**From:** Tive, Leslie [mailto:Leslie.Tive@pfizer.com]
**Sent:** Monday, April 23, 2012 4:02 PM
**To:** Russell Portenoy, MD
**Subject:** Availability and Willingness to Consult with Pfizer on a Pain Narrative we are preparing


Dr. Portenoy,

It has been a while since we last spoke.  I hope that you are doing well. I just spoke with Donna who told me that you are just back from vacation and I hope it was a good one.

 I am writing to ask if you would be willing to consult with us on a Pain Narrative document that the Pain Cluster at Pfizer is developing as our overall position on pain. We would like to get your expert feedback on our pain narrative/storyboard prior to finalization. This would involve a face to face meeting with you in NY in the May time period. It should take no more than 3 hours total time, and we will compensate you for your time.

Please let me know if you would be interested in doing this and if you are, we will begin the requisite paper work and scheduling.

Very Best,

Leslie Tive

CONFIDENTIAL

This message and any attachments are confidential and intended solely for the use of the individual or entity to which they are addressed.  If you are not the intended recipient, you are prohibited from printing, copying, forwarding, saving, or otherwise using or relying upon them in any manner.  Please notify the sender immediately if you have received this message by mistake and delete it from your system.

This message and any attachments are confidential and intended solely for the use of the individual or entity to which they are addressed.  If you are not the intended recipient, you are prohibited from printing, copying, forwarding, saving, or otherwise using or relying upon them in any manner.  Please notify the sender immediately if you have received this message by mistake and delete it from your system.

CONFIDENTIAL

RP_000709