PSJ3
Exhibit 158

## CONSULTING SERVICES AGREEMENT

THIS AGREEMENT, effective this 22nd day of June 2004, is by and between Purdue Pharma L.P., a limited partnership with offices located at One Stamford Forum, Stamford Connecticut 06901, ("Company") and James Campbell, MD, located at John Hopkins Hospital, Meyer 5-109, 600 N. Wolfe Street, Baltimore, MD 21287 ("Consultant").

Upon acceptance of this offer, Consultant and Company agree to the following terms:

1.      Term and Duties

Company hereby retains Consultant to perform, and Consultant hereby agrees to perform, during the period beginning on June 22, 2004 and ending on June 22, 2005, (the "Consultative Period", such consultative and advisory services ("Services") as described in one or more signed Attachments signed by both parties and attached hereto.

a.      Such Services shall be performed in such a place or places as Company and Consultant may from time to time agree to.

b.      Consultant shall devote the appropriate number of hours to complete agreed upon projects, as described in Attachments, during the Consultative Period;

c.      Consultant shall not be required to render Services during reasonable vacation periods, nor during periods of illness or other incapacity;

d.      There is no guarantee of any minimum amount to be paid under this Agreement;

e.      The principal Company contact(s) with the Consultant will be Terri Sears.

1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    PPLP003477687

2.    Compensation

    a.    Company hereby agrees to pay the Consultant for Services performed as outlined in signed Attachments hereto. As an independent contractor, Consultant shall be responsible for withholding and payment of all income taxes and social security, and other financial responsibilities arising out of Consultant's services, and is not covered by state or federal programs applicable to employees of the Company.

    b.    In addition to the foregoing, Company shall pay to the Consultant, upon submission of itemized invoices by the Consultant, all reasonable out-of-pocket expenses incurred by the Consultant in the furtherance of Company's business as requested by the Company, including but not limited to all reasonable meals, and automobile mileage travel expenses, at the rate per mile approved by the IRS as of the time of travel.  All hotel accommodations and air travel should be arranged through a Company approved travel agent. Although Consultant is not subject to management and control in the delivery of services, if services are to be provided by Consultant on Company property, Consultant must comply with requirements applicable to persons on Company property such as safety and security rules and practices.

       All itemized invoices shall be submitted by Consultant in monthly arrears, to the principal Company contact identified in Section 1e hereof at Purdue Pharma L.P., Stamford, Connecticut USA for review and approval.

3.    Non-Exclusivity

It is understood and agreed by and between Company and the Consultant that Consultant maintains the right, at his or her sole discretion, to render similar consulting services, and/or otherwise seek employment with other companies during the term of this Agreement, so long as the same does not create a conflict of interest with others including competitors of Company or interfere with the business of Company and the confidentiality of Company information is protected by Consultant.  All information imparted by the Consultant to the Company pursuant to this Agreement shall become the property of the Company.  All information disclosed to the Consultant by the Company, as well as that generated by the Consultant pursuant to the execution of services hereunder, shall be the property of the Company and

2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PPLP003477688

shall be maintained by the Consultant in strictest confidence.  Consultant and its employees shall avoid all circumstances and actions that would place the Consultant in a position of divided loyalty with regard to the obligations undertaken pursuant to this Agreement.

4.      Confidential Matters

    a.      The Consultant shall keep in strictest confidence all information relating to this Agreement which may be acquired in connection with or as a result of this Agreement.  During the term of this Agreement or at any time thereafter, without the prior written consent of Company, the Consultant shall not publish, communicate, divulge, disclose, or use any of such information which has been designated orally or in written as Company confidential or proprietary.  Upon termination or expiration of this Agreement, the Consultant shall deliver all records, data, information, and other documents and all copies thereof to Company and such shall remain the property of Company.

    b.      Nothing in this Article 4 shall be construed to impose a confidentiality obligation on the Consultant in connection with any information to the extent such information:

        i.      is at the time of disclosure already known to the Consultant (as clearly established by Consultant's records);

        ii.      is at the time of disclosure or subsequently becomes part of the public domain through no fault or act or omission by the Consultant;

        iii.      is subsequently disclosed to the Consultant by a third party whose receipt and disclosure of such information does not constitute a violation of any confidentiality obligation; or

        iv.      is independently developed by the Consultant.

5.      General

    a.      In all matters relating to this Agreement, the Consultant shall be acting as an independent contractor.  Neither the Consultant nor employees of the Consultant are employees of Company under the meaning or application of any federal or state unemployment or insurance laws or worker's compensation laws, or otherwise.  The Consultant shall assume all liabilities or obligations imposed by any one or more of such laws with respect to employees of the

3

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PPLP003477689

Consultant in their performance of this Agreement.  The Consultant shall not have any authority to assume or create any obligation, express or implied, on behalf of Company and the Consultant shall have no authority to represent itself as an agent, employee, or in any other capacity of Company.

b.   Company is not permitted to retain individuals who work for, or provide services to, the federal government if such retention presents a real or apparent conflict of interest or if the honorarium would constitute an unlawful gift or compensation to an employee of the federal government.  Consultant, whether a full or part time federal government employee or a "special" federal government consultant, represents by signing this Agreement that no real or apparent conflict of interest exists by entering into this Agreement with the Company.

c.   Consultant represents that he/she is not and has never been 1) convicted of a crime for which a person can be debarred, under Section 306(a) or 306(b) of the Generic Drug Enforcement Act of 1992 or under 42 U.S.C. section 1320-7, or 2) been sanctioned by, suspended, excluded or otherwise ineligible to participate in any federal health care program, including Medicare and Medicaid or in Federal procurement or non-procurement programs.

6.   Non-Assignability

In view of the personal nature of the services to be performed by the Consultant hereunder, Consultant shall not have the right to assign, subcontract or transfer any of its obligations, rights or benefits hereunder without the prior written consent of Company.

7.   Superseding Effect

This Agreement supersedes all prior oral or written agreements, if any, between the parties relating to the Services subject to this Agreement, and constitutes the entire agreement between the parties.  This Agreement may not be amended or supplemented except by a writing signed by each of the parties.

8.   Termination

Company and Consultant each reserves the right to cancel this Agreement for any reason upon thirty (30) days prior written notice to the other party.  If this Agreement is so terminated, Company shall be liable only for payment

4

PPLP003477690

for services performed and approved non-cancelable expenses incurred prior to the effective date of termination.

The obligations imposed on the Consultant by Section 4 shall survive any termination or expiration of this Agreement and the termination of Consultant's services hereunder.

9.   Applicable Law

Any controversy or claim arising out of or relating to this Agreement shall be governed by the law of the State of Connecticut.  The parties agree to the jurisdiction of the Connecticut courts, both state and federal.

IN WITNESS WHEREOF the parties hereto have set their respective hands and seals, as of the day and year first above-written.

Purdue Pharma L.P.                                James Campbell, MD

_____        _____
[signature]                                          [signature]

By: Mark Alfonso                          James Campbell
_____        _____
[print name]                                        [print name]

Vice President, Marketing             _____
_____        [print title]
[print title]

6/23/04                                            7/1/04
_____        _____
date                                                  date


**Payable Information:** Please Print Clearly (**CHOOSE ONE ONLY**)

SS# _Redacted-Privacy_____   OR TAX ID# _____
If using tax ID#, payable (organization) name must be given
James Campbell, The Johns Hopkins Hospital
Meyer Blg. 5-109     600 N. Wolfe St
Payable Address (Number & Street where checks and 1099 will be mailed)

Baltimore          MD        21287      (410) 614-3855
City                    State        Zip          Phone Number

                              LAW DEPT.
              5                  AC

                PPLP003477691

ATTACHMENT TO CONSULTING SERVICES AGREEMENT
DATED JUNE 22, 2004 ("CONSULTING AGREEMENT")
BETWEEN PURDUE PHARMA L.P. ("PURDUE") AND
JAMES CAMPBELL, MD, ("CONSULTANT")

1.  Date & Location:
    a.  Advisory session at Purdue Pharma, One Stamford Forum, Stamford,
        Connecticut on or about July 16, 2004
2.  Description of Services and Expected Deliverables:
    a.  Consultant shall provide feedback on the proposed limited rollout of
        Hydromorphone HCl Extended-Release Capsules;
    b.  Consultant shall provide feedback on the proposed national expert, local expert
        and healthcare practitioner product informational programs proposed for the
        launch of Hydromorphone HCl Extended-Release Capsules;
    c.  Consultant shall provide feedback on proposed responses to media questions
        surrounding Hydromorphone HCl Extended-Release Capsules;
    d.  Consultant shall, based on availability, grant interviews to the media to discuss
        the appropriate use of Hydromorphone HCl Extended-Release Capsules, the
        medical need for long-acting pain mediations and the importance of good pain
        management.

3.  Compensation:  For services rendered pursuant to this Agreement, $2,500. will be paid
    subsequent to the completion of the Services.

4.  Term:  This Attachment will be effective on or about July 14, 2004 and shall terminate
    on July 30, 2004, provided that either party may terminate this Attachment upon (7)
    days' prior written notice to the other party.

5.  Incorporation - Conflict:  The provisions of this Agreement are hereby expressly
    incorporated by reference into and made a part of the Consultant Agreement.  In the
    event of a conflict between the terms and conditions of this Attachment and those of
    the Consulting Agreement, the terms of the Consulting Agreement will take
    precedence and control over those of this Attachment.

**ACCEPTED AND AGREED:**

**PURDUE PHARMA L.P.**                    **JAMES CAMPBELL, MD**

By:_____              _____
    Vice President                        [Signature]

                        LAW DEPT.