PSJ3

Exhibit 169B

PUBLIC LAW 110–85—SEPT. 27, 2007       121 STAT. 877

include a timeframe for completing such studies), the applicant agrees to the request, such studies are completed using appropriate formulations for each age group for which the study is requested within any such timeframe, and the reports thereof are submitted and accepted in accordance with subsection (d)(3)—

"(A)(i)(I) the period referred to in subsection (c)(3)(E)(ii) of section 505, and in subsection (j)(5)(F)(ii) of such section, is deemed to be five years and six months rather than five years, and the references in subsections (c)(3)(E)(ii) and (j)(5)(F)(ii) of such section to four years, to forty-eight months, and to seven and one-half years are deemed to be four and one-half years, fifty-four months, and eight years, respectively; or

"(II) the period referred to in clauses (iii) and (iv) of subsection (c)(3)(E) of such section, and in clauses (iii) and (iv) of subsection (j)(5)(F) of such section, is deemed to be three years and six months rather than three years; and

"(ii) if the drug is designated under section 526 for a rare disease or condition, the period referred to in section 527(a) is deemed to be seven years and six months rather than seven years; and

"(B)(i) if the drug is the subject of—

"(I) a listed patent for which a certification has been submitted under subsection (b)(2)(A)(ii) or (j)(2)(A)(vii)(II) of section 505 and for which pediatric studies were submitted prior to the expiration of the patent (including any patent extensions); or

"(II) a listed patent for which a certification has been submitted under subsections (b)(2)(A)(iii) or (j)(2)(A)(vii)(III) of section 505,

the period during which an application may not be approved under section 505(c)(3) or section 505(j)(5)(B) shall be extended by a period of six months after the date the patent expires (including any patent extensions); or

"(ii) if the drug is the subject of a listed patent for which a certification has been submitted under subsection (b)(2)(A)(iv) or (j)(2)(A)(vii)(IV) of section 505, and in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved under section 505(c)(3) or section 505(j)(5)(B) shall be extended by a period of six months after the date the patent expires (including any patent extensions).

"(2) EXCEPTION.—The Secretary shall not extend the period referred to in paragraph (1)(A) or (1)(B) if the determination made under subsection (d)(3) is made later than 9 months prior to the expiration of such period.

"(c) MARKET EXCLUSIVITY FOR ALREADY-MARKETED DRUGS.—

"(1) IN GENERAL.—Except as provided in paragraph (2), if the Secretary determines that information relating to the use of an approved drug in the pediatric population may produce health benefits in that population and makes a written request to the holder of an approved application under section

505(b)(1) for pediatric studies (which shall include a timeframe for completing such studies), the holder agrees to the request, such studies are completed using appropriate formulations for each age group for which the study is requested within any such timeframe, and the reports thereof are submitted and accepted in accordance with subsection (d)(3)—

"(A)(i)(I) the period referred to in subsection (c)(3)(E)(ii) of section 505, and in subsection (j)(5)(F)(ii) of such section, is deemed to be five years and six months rather than five years, and the references in subsections (c)(3)(E)(ii) and (j)(5)(F)(ii) of such section to four years, to forty-eight months, and to seven and one-half years are deemed to be four and one-half years, fifty-four months, and eight years, respectively; or

"(II) the period referred to in clauses (iii) and (iv) of subsection (c)(3)(D) of such section, and in clauses (iii) and (iv) of subsection (j)(5)(F) of such section, is deemed to be three years and six months rather than three years; and

"(ii) if the drug is designated under section 526 for a rare disease or condition, the period referred to in section 527(a) is deemed to be seven years and six months rather than seven years; and

"(B)(i) if the drug is the subject of—

"(I) a listed patent for which a certification has been submitted under subsection (b)(2)(A)(ii) or (j)(2)(A)(vii)(II) of section 505 and for which pediatric studies were submitted prior to the expiration of the patent (including any patent extensions); or

"(II) a listed patent for which a certification has been submitted under subsection (b)(2)(A)(iii) or (j)(2)(A)(vii)(III) of section 505,

the period during which an application may not be approved under section 505(c)(3) or section 505(j)(5)(B)(ii) shall be extended by a period of six months after the date the patent expires (including any patent extensions); or

"(ii) if the drug is the subject of a listed patent for which a certification has been submitted under subsection (b)(2)(A)(iv) or (j)(2)(A)(vii)(IV) of section 505, and in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved under section 505(c)(3) or section 505(j)(5)(B) shall be extended by a period of six months after the date the patent expires (including any patent extensions).

Deadline.

"(2) EXCEPTION.—The Secretary shall not extend the period referred to in paragraph (1)(A) or (1)(B) if the determination made under subsection (d)(3) is made later than 9 months prior to the expiration of such period.

"(d) CONDUCT OF PEDIATRIC STUDIES.—

"(1) REQUEST FOR STUDIES.—

"(A) IN GENERAL.—The Secretary may, after consultation with the sponsor of an application for an investigational new drug under section 505(i), the sponsor of an application for a new drug under section 505(b)(1), or the

PPLPC051000064132

PUBLIC LAW 110–85—SEPT. 27, 2007     121 STAT. 879

holder of an approved application for a drug under section 505(b)(1), issue to the sponsor or holder a written request for the conduct of pediatric studies for such drug. In issuing such request, the Secretary shall take into account adequate representation of children of ethnic and racial minorities. Such request to conduct pediatric studies shall be in writing and shall include a timeframe for such studies and a request to the sponsor or holder to propose pediatric labeling resulting from such studies.

*Minorities.*

*Timeframe.*

"(B) SINGLE WRITTEN REQUEST.—A single written request—

"(i) may relate to more than one use of a drug; and

"(ii) may include uses that are both approved and unapproved.

"(2) WRITTEN REQUEST FOR PEDIATRIC STUDIES.—

"(A) REQUEST AND RESPONSE.—

"(i) IN GENERAL.—If the Secretary makes a written request for pediatric studies (including neonates, as appropriate) under subsection (b) or (c), the applicant or holder, not later than 180 days after receiving the written request, shall respond to the Secretary as to the intention of the applicant or holder to act on the request by—

"(I) indicating when the pediatric studies will be initiated, if the applicant or holder agrees to the request; or

"(II) indicating that the applicant or holder does not agree to the request and stating the reasons for declining the request.

"(ii) DISAGREE WITH REQUEST.—If, on or after the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, the applicant or holder does not agree to the request on the grounds that it is not possible to develop the appropriate pediatric formulation, the applicant or holder shall submit to the Secretary the reasons such pediatric formulation cannot be developed.

"(B) ADVERSE EVENT REPORTS.—An applicant or holder that, on or after the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, agrees to the request for such studies shall provide the Secretary, at the same time as the submission of the reports of such studies, with all postmarket adverse event reports regarding the drug that is the subject of such studies and are available prior to submission of such reports.

"(3) MEETING THE STUDIES REQUIREMENT.—Not later than 180 days after the submission of the reports of the studies, the Secretary shall accept or reject such reports and so notify the sponsor or holder. The Secretary's only responsibility in accepting or rejecting the reports shall be to determine, within the 180-day period, whether the studies fairly respond to the written request, have been conducted in accordance with commonly accepted scientific principles and protocols, and have been reported in accordance with the requirements of the Secretary for filing.

*Deadline.*
*Notification.*

121 STAT. 880          PUBLIC LAW 110–85—SEPT. 27, 2007

"(4) EFFECT OF SUBSECTION.—Nothing in this subsection alters or amends section 301(j) of this Act or section 552 of title 5 or section 1905 of title 18, United States Code.

"(e) NOTICE OF DETERMINATIONS ON STUDIES REQUIREMENT.—

Publication.

"(1) IN GENERAL.—The Secretary shall publish a notice of any determination, made on or after the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, that the requirements of subsection (d) have been met and that submissions and approvals under subsection (b)(2) or (j) of section 505 for a drug will be subject to the provisions of this section. Such notice shall be published not later than 30 days after the date of the Secretary's determination regarding market exclusivity and shall include a copy of the written request made under subsection (b) or (c).

Deadline.
Records.

Publication.

"(2) IDENTIFICATION OF CERTAIN DRUGS.—The Secretary shall publish a notice identifying any drug for which, on or after the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, a pediatric formulation was developed, studied, and found to be safe and effective in the pediatric population (or specified subpopulation) if the pediatric formulation for such drug is not introduced onto the market within one year after the date that the Secretary publishes the notice described in paragraph (1). Such notice identifying such drug shall be published not later than 30 days after the date of the expiration of such one year period.

Deadline.

"(f) INTERNAL REVIEW OF WRITTEN REQUESTS AND PEDIATRIC STUDIES.—

"(1) INTERNAL REVIEW.—The Secretary shall utilize the internal review committee established under section 505C to review all written requests issued on or after the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, in accordance with paragraph (2).

"(2) REVIEW OF WRITTEN REQUESTS.—The committee referred to in paragraph (1) shall review all written requests issued pursuant to this section prior to being issued.

"(3) REVIEW OF PEDIATRIC STUDIES.—The committee referred to in paragraph (1) may review studies conducted pursuant to this section to make a recommendation to the Secretary whether to accept or reject such reports under subsection (d)(3).

"(4) ACTIVITY BY COMMITTEE.—The committee referred to in paragraph (1) may operate using appropriate members of such committee and need not convene all members of the committee.

"(5) DOCUMENTATION OF COMMITTEE ACTION.—For each drug, the committee referred to in paragraph (1) shall document, for each activity described in paragraph (2) or (3), which members of the committee participated in such activity.

Public information.
Website.

"(6) TRACKING PEDIATRIC STUDIES AND LABELING CHANGES.—The Secretary, in consultation with the committee referred to in paragraph (1), shall track and make available to the public, in an easily accessible manner, including through posting on the Web site of the Food and Drug Administration—

"(A) the number of studies conducted under this section and under section 409I of the Public Health Service Act;

"(B) the specific drugs and drug uses, including labeled and off-labeled indications, studied under such sections;

PPLPC051000064134

"(C) the types of studies conducted under such sections, including trial design, the number of pediatric patients studied, and the number of centers and countries involved;

"(D) the number of pediatric formulations developed and the number of pediatric formulations not developed and the reasons such formulations were not developed;

"(E) the labeling changes made as a result of studies conducted under such sections;

"(F) an annual summary of labeling changes made as a result of studies conducted under such sections for distribution pursuant to subsection (k)(2); and

"(G) information regarding reports submitted on or after the date of the enactment of the Best Pharmaceuticals for Children Act of 2007.

"(g) LIMITATIONS.—Notwithstanding subsection (c)(2), a drug to which the six-month period under subsection (b) or (c) has already been applied—

"(1) may receive an additional six-month period under subsection (c)(1)(A)(i)(II) for a supplemental application if all other requirements under this section are satisfied, except that such drug may not receive any additional such period under subsection (c)(1)(B); and

"(2) may not receive any additional such period under subsection (c)(1)(A)(ii).

"(h) RELATIONSHIP TO PEDIATRIC RESEARCH REQUIREMENTS.— Notwithstanding any other provision of law, if any pediatric study is required by a provision of law (including a regulation) other than this section and such study meets the completeness, timeliness, and other requirements of this section, such study shall be deemed to satisfy the requirement for market exclusivity pursuant to this section.

"(i) LABELING CHANGES.—

"(1) PRIORITY STATUS FOR PEDIATRIC APPLICATIONS AND SUPPLEMENTS.—Any application or supplement to an application under section 505 proposing a labeling change as a result of any pediatric study conducted pursuant to this section—

"(A) shall be considered to be a priority application or supplement; and

"(B) shall be subject to the performance goals established by the Commissioner for priority drugs.

"(2) DISPUTE RESOLUTION.—

"(A) REQUEST FOR LABELING CHANGE AND FAILURE TO AGREE.—If, on or after the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, the Commissioner determines that the sponsor and the Commissioner have been unable to reach agreement on appropriate changes to the labeling for the drug that is the subject of the application, not later than 180 days after the date of submission of the application— *Deadline.*

"(i) the Commissioner shall request that the sponsor of the application make any labeling change that the Commissioner determines to be appropriate; and

"(ii) if the sponsor of the application does not agree within 30 days after the Commissioner's request to *Deadline.*

Case: 1:17-md-02804-DAP  Doc #: 2347-12  Filed:  08/14/19  7 of 51.  PageID #: 377955

make a labeling change requested by the Commissioner, the Commissioner shall refer the matter to the Pediatric Advisory Committee.

Deadline.

"(B) ACTION BY THE PEDIATRIC ADVISORY COMMITTEE.— Not later than 90 days after receiving a referral under subparagraph (A)(ii), the Pediatric Advisory Committee shall—

"(i) review the pediatric study reports; and

"(ii) make a recommendation to the Commissioner concerning appropriate labeling changes, if any.

Deadline.

"(C) CONSIDERATION OF RECOMMENDATIONS.—The Commissioner shall consider the recommendations of the Pediatric Advisory Committee and, if appropriate, not later than 30 days after receiving the recommendation, make a request to the sponsor of the application to make any labeling change that the Commissioner determines to be appropriate.

Deadline.

"(D) MISBRANDING.—If the sponsor of the application, within 30 days after receiving a request under subparagraph (C), does not agree to make a labeling change requested by the Commissioner, the Commissioner may deem the drug that is the subject of the application to be misbranded.

"(E) NO EFFECT ON AUTHORITY.—Nothing in this subsection limits the authority of the United States to bring an enforcement action under this Act when a drug lacks appropriate pediatric labeling. Neither course of action (the Pediatric Advisory Committee process or an enforcement action referred to in the preceding sentence) shall preclude, delay, or serve as the basis to stay the other course of action.

"(j) OTHER LABELING CHANGES.—If, on or after the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, the Secretary determines that a pediatric study conducted under this section does or does not demonstrate that the drug that is the subject of the study is safe and effective, including whether such study results are inconclusive, in pediatric populations or subpopulations, the Secretary shall order the labeling of such product to include information about the results of the study and a statement of the Secretary's determination.

"(k) DISSEMINATION OF PEDIATRIC INFORMATION.—

Deadline.
Public
information.

"(1) IN GENERAL.—Not later than 210 days after the date of submission of a report on a pediatric study under this section, the Secretary shall make available to the public the medical, statistical, and clinical pharmacology reviews of pediatric studies conducted under subsection (b) or (c).

"(2) DISSEMINATION OF INFORMATION REGARDING LABELING CHANGES.—Beginning on the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, the Secretary shall include as a requirement of a written request that the sponsors of the studies that result in labeling changes that are reflected in the annual summary developed pursuant to subsection (f)(3)(F) distribute, at least annually (or more frequently if the Secretary determines that it would be beneficial to the public health), such information to physicians and other health care providers.

PPLPC051000064136

PUBLIC LAW 110–85—SEPT. 27, 2007        121 STAT. 883

"(3) EFFECT OF SUBSECTION.—Nothing in this subsection alters or amends section 301(j) of this Act or section 552 of title 5 or section 1905 of title 18, United States Code.

"(l) ADVERSE EVENT REPORTING.—

"(1) REPORTING IN YEAR ONE.—Beginning on the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, during the one-year period beginning on the date a labeling change is approved pursuant to subsection (i), the Secretary shall ensure that all adverse event reports that have been received for such drug (regardless of when such report was received) are referred to the Office of Pediatric Therapeutics established under section 6 of the Best Pharmaceuticals for Children Act (Public Law 107–109). In considering the reports, the Director of such Office shall provide for the review of the reports by the Pediatric Advisory Committee, including obtaining any recommendations of such Committee regarding whether the Secretary should take action under this Act in response to such reports.    *Effective date.*

"(2) REPORTING IN SUBSEQUENT YEARS.—Following the one-year period described in paragraph (1), the Secretary shall, as appropriate, refer to the Office of Pediatric Therapeutics all pediatric adverse event reports for a drug for which a pediatric study was conducted under this section. In considering such reports, the Director of such Office may provide for the review of such reports by the Pediatric Advisory Committee, including obtaining any recommendation of such Committee regarding whether the Secretary should take action in response to such reports.

"(3) EFFECT.—The requirements of this subsection shall supplement, not supplant, other review of such adverse event reports by the Secretary.

"(m) CLARIFICATION OF INTERACTION OF MARKET EXCLUSIVITY UNDER THIS SECTION AND MARKET EXCLUSIVITY AWARDED TO AN APPLICANT FOR APPROVAL OF A DRUG UNDER SECTION 505(j).— If a 180-day period under section 505(j)(5)(B)(iv) overlaps with a 6-month exclusivity period under this section, so that the applicant for approval of a drug under section 505(j) entitled to the 180-day period under that section loses a portion of the 180-day period to which the applicant is entitled for the drug, the 180-day period shall be extended from—

"(1) the date on which the 180-day period would have expired by the number of days of the overlap, if the 180-day period would, but for the application of this subsection, expire after the 6-month exclusivity period; or

"(2) the date on which the 6-month exclusivity period expires, by the number of days of the overlap if the 180-day period would, but for the application of this subsection, expire during the six-month exclusivity period.

"(n) REFERRAL IF PEDIATRIC STUDIES NOT COMPLETED.—

"(1) IN GENERAL.—Beginning on the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, if pediatric studies of a drug have not been completed under subsection (d) and if the Secretary, through the committee established under section 505C, determines that there is a continuing need for information relating to the use of the drug in the pediatric population (including neonates, as appropriate), the Secretary shall carry out the following:    *Effective date.*

121 STAT. 884          PUBLIC LAW 110–85—SEPT. 27, 2007

Deadline.
Certification.

"(A) For a drug for which a listed patent has not expired, make a determination regarding whether an assessment shall be required to be submitted under section 505B(b). Prior to making such a determination, the Secretary may not take more than 30 days to certify whether the Foundation for the National Institutes of Health has sufficient funding at the time of such certification to initiate and fund all of the studies in the written request in their entirety within the timeframes specified within the written request. Only if the Secretary makes such certification in the affirmative, the Secretary shall refer all pediatric studies in the written request to the Foundation for the National Institutes of Health for the conduct of such studies, and such Foundation shall fund such studies. If no certification has been made at the end of the 30-day period, or if the Secretary certifies that funds are not sufficient to initiate and fund all the studies in their entirety, the Secretary shall consider whether assessments shall be required under section 505B(b) for such drug.

"(B) For a drug that has no listed patents or has 1 or more listed patents that have expired, the Secretary shall refer the drug for inclusion on the list established under section 409I of the Public Health Service Act for the conduct of studies.

"(2) PUBLIC NOTICE.—The Secretary shall give the public notice of a decision under paragraph (1)(A) not to require an assessment under section 505B and the basis for such decision.

"(3) EFFECT OF SUBSECTION.—Nothing in this subsection alters or amends section 301(j) of this Act or section 552 of title 5 or section 1905 of title 18, United States Code.

"(o) PROMPT APPROVAL OF DRUGS UNDER SECTION 505(j) WHEN PEDIATRIC INFORMATION IS ADDED TO LABELING.—

"(1) GENERAL RULE.—A drug for which an application has been submitted or approved under section 505(j) shall not be considered ineligible for approval under that section or misbranded under section 502 on the basis that the labeling of the drug omits a pediatric indication or any other aspect of labeling pertaining to pediatric use when the omitted indication or other aspect is protected by patent or by exclusivity under clause (iii) or (iv) of section 505(j)(5)(F).

"(2) LABELING.—Notwithstanding clauses (iii) and (iv) of section 505(j)(5)(F), the Secretary may require that the labeling of a drug approved under section 505(j) that omits a pediatric indication or other aspect of labeling as described in paragraph (1) include—

"(A) a statement that, because of marketing exclusivity for a manufacturer—

"(i) the drug is not labeled for pediatric use; or

"(ii) in the case of a drug for which there is an additional pediatric use not referred to in paragraph (1), the drug is not labeled for the pediatric use under paragraph (1); and

"(B) a statement of any appropriate pediatric contra-indications, warnings, or precautions that the Secretary considers necessary.

"(3) PRESERVATION OF PEDIATRIC EXCLUSIVITY AND OTHER PROVISIONS.—This subsection does not affect—

PUBLIC LAW 110–85—SEPT. 27, 2007    121 STAT. 885

"(A) the availability or scope of exclusivity under this section;

"(B) the availability or scope of exclusivity under section 505 for pediatric formulations;

"(C) the question of the eligibility for approval of any application under section 505(j) that omits any other conditions of approval entitled to exclusivity under clause (iii) or (iv) of section 505(j)(5)(F); or

"(D) except as expressly provided in paragraphs (1) and (2), the operation of section 505.

"(p) INSTITUTE OF MEDICINE STUDY.—Not later than 3 years after the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, the Secretary shall enter into a contract with the Institute of Medicine to conduct a study and report to Congress regarding the written requests made and the studies conducted pursuant to this section. The Institute of Medicine may devise an appropriate mechanism to review a representative sample of requests made and studies conducted pursuant to this section in order to conduct such study. Such study shall— *(margin: Deadline. Contracts. Reports.)*

"(1) review such representative written requests issued by the Secretary since 1997 under subsections (b) and (c);

"(2) review and assess such representative pediatric studies conducted under subsections (b) and (c) since 1997 and labeling changes made as a result of such studies;

"(3) review the use of extrapolation for pediatric subpopulations, the use of alternative endpoints for pediatric populations, neonatal assessment tools, and ethical issues in pediatric clinical trials;

"(4) review and assess the pediatric studies of biological products as required under subsections (a) and (b) of section 505B; and

"(5) make recommendations regarding appropriate incentives for encouraging pediatric studies of biologics.

"(q) SUNSET.—A drug may not receive any 6-month period under subsection (b) or (c) unless—

"(1) on or before October 1, 2012, the Secretary makes a written request for pediatric studies of the drug; *(margin: Deadline.)*

"(2) on or before October 1, 2012, an application for the drug is accepted for filing under section 505(b); and *(margin: Deadline.)*

"(3) all requirements of this section are met.".

(2) APPLICABILITY.— *(margin: 21 USC 355a note.)*

(A) IN GENERAL.—The amendment made by this subsection shall apply to written requests under section 505A of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355a) issued on or after the date of the enactment of this Act.

(B) CERTAIN WRITTEN REQUESTS.—A written request issued under section 505A of the Federal Food, Drug, and Cosmetic Act, as in effect on the day before the date of the enactment of this Act, which has been accepted and for which no determination under subsection (d)(2) of such section has been made before such date of enactment, shall be subject to such section 505A, except that such written requests shall be subject to subsections (d)(2)(A)(ii), (e)(1) and (2), (f), (i)(2)(A), (j), (k)(1), (l)(1), and (n) of section 505A of the Federal Food, Drug, and Cosmetic Act, as

in effect on or after the date of the enactment of this Act.

(b) PROGRAM FOR PEDIATRIC STUDIES OF DRUGS.—Section 409I of the Public Health Service Act (42 U.S.C. 284m) is amended to read as follows:

**"SEC. 409I. PROGRAM FOR PEDIATRIC STUDIES OF DRUGS.**

"(a) LIST OF PRIORITY ISSUES IN PEDIATRIC THERAPEUTICS.—

Deadline.
Publication.

"(1) IN GENERAL.—Not later than one year after the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, the Secretary, acting through the Director of the National Institutes of Health and in consultation with the Commissioner of Food and Drugs and experts in pediatric research, shall develop and publish a priority list of needs in pediatric therapeutics, including drugs or indications that require study. The list shall be revised every three years.

"(2) CONSIDERATION OF AVAILABLE INFORMATION.—In developing and prioritizing the list under paragraph (1), the Secretary shall consider—

"(A) therapeutic gaps in pediatrics that may include developmental pharmacology, pharmacogenetic determinants of drug response, metabolism of drugs and biologics in children, and pediatric clinical trials;

"(B) particular pediatric diseases, disorders or conditions where more complete knowledge and testing of therapeutics, including drugs and biologics, may be beneficial in pediatric populations; and

"(C) the adequacy of necessary infrastructure to conduct pediatric pharmacological research, including research networks and trained pediatric investigators.

"(b) PEDIATRIC STUDIES AND RESEARCH.—The Secretary, acting through the National Institutes of Health, shall award funds to entities that have the expertise to conduct pediatric clinical trials or other research (including qualified universities, hospitals, laboratories, contract research organizations, practice groups, federally funded programs such as pediatric pharmacology research units, other public or private institutions, or individuals) to enable the entities to conduct the drug studies or other research on the issues described in subsection (a). The Secretary may use contracts, grants, or other appropriate funding mechanisms to award funds under this subsection.

"(c) PROCESS FOR PROPOSED PEDIATRIC STUDY REQUESTS AND LABELING CHANGES.—

"(1) SUBMISSION OF PROPOSED PEDIATRIC STUDY REQUEST.—The Director of the National Institutes of Health shall, as appropriate, submit proposed pediatric study requests for consideration by the Commissioner of Food and Drugs for pediatric studies of a specific pediatric indication identified under subsection (a). Such a proposed pediatric study request shall be made in a manner equivalent to a written request made under subsection (b) or (c) of section 505A of the Federal Food, Drug, and Cosmetic Act, including with respect to the information provided on the pediatric studies to be conducted pursuant to the request. The Director of the National Institutes of Health may submit a proposed pediatric study request for a drug for which—

PPLPC051000064140

PUBLIC LAW 110–85—SEPT. 27, 2007          121 STAT. 887

"(A)(i) there is an approved application under section 505(j) of the Federal Food, Drug, and Cosmetic Act; or

"(ii) there is a submitted application that could be approved under the criteria of such section; and

"(B) there is no patent protection or market exclusivity protection for at least one form of the drug under the Federal Food, Drug, and Cosmetic Act; and

"(C) additional studies are needed to assess the safety and effectiveness of the use of the drug in the pediatric population.

"(2) WRITTEN REQUEST TO HOLDERS OF APPROVED APPLICA-TIONS FOR DRUGS LACKING EXCLUSIVITY.—The Commissioner of Food and Drugs, in consultation with the Director of the National Institutes of Health, may issue a written request based on the proposed pediatric study request for the indication or indications submitted pursuant to paragraph (1) (which shall include a timeframe for negotiations for an agreement) for pediatric studies concerning a drug identified under subsection (a) to all holders of an approved application for the drug under section 505 of the Federal Food, Drug, and Cosmetic Act. Such a written request shall be made in a manner equivalent to the manner in which a written request is made under sub-section (b) or (c) of section 505A of such Act, including with respect to information provided on the pediatric studies to be conducted pursuant to the request and using appropriate formulations for each age group for which the study is requested.

"(3) REQUESTS FOR PROPOSALS.—If the Commissioner of Food and Drugs does not receive a response to a written request issued under paragraph (2) not later than 30 days after the date on which a request was issued, the Secretary, acting through the Director of the National Institutes of Health and in consultation with the Commissioner of Food and Drugs, shall publish a request for proposals to conduct the pediatric studies described in the written request in accordance with subsection (b).

Deadline.
Publication.

"(4) DISQUALIFICATION.—A holder that receives a first right of refusal shall not be entitled to respond to a request for proposals under paragraph (3).

"(5) CONTRACTS, GRANTS, OR OTHER FUNDING MECHA-NISMS.—A contract, grant, or other funding may be awarded under this section only if a proposal is submitted to the Sec-retary in such form and manner, and containing such agree-ments, assurances, and information as the Secretary determines to be necessary to carry out this section.

"(6) REPORTING OF STUDIES.—

"(A) IN GENERAL.—On completion of a pediatric study in accordance with an award under this section, a report concerning the study shall be submitted to the Director of the National Institutes of Health and the Commissioner of Food and Drugs. The report shall include all data gen-erated in connection with the study, including a written request if issued.

"(B) AVAILABILITY OF REPORTS.—Each report submitted under subparagraph (A) shall be considered to be in the public domain (subject to section 505A(d)(4) of the Federal Food, Drug, and Cosmetic Act) and shall be assigned a

PPLPC051000064141

docket number by the Commissioner of Food and Drugs. An interested person may submit written comments concerning such pediatric studies to the Commissioner of Food and Drugs, and the written comments shall become part of the docket file with respect to each of the drugs.

"(C) ACTION BY COMMISSIONER.—The Commissioner of Food and Drugs shall take appropriate action in response to the reports submitted under subparagraph (A) in accordance with paragraph (7).

"(7) REQUESTS FOR LABELING CHANGE.—During the 180-day period after the date on which a report is submitted under paragraph (6)(A), the Commissioner of Food and Drugs shall—

"(A) review the report and such other data as are available concerning the safe and effective use in the pediatric population of the drug studied;

"(B) negotiate with the holders of approved applications for the drug studied for any labeling changes that the Commissioner of Food and Drugs determines to be appropriate and requests the holders to make; and

"(C)(i) place in the public docket file a copy of the report and of any requested labeling changes; and

Federal Register, publication. Website.

"(ii) publish in the Federal Register and through a posting on the Web site of the Food and Drug Administration a summary of the report and a copy of any requested labeling changes.

"(8) DISPUTE RESOLUTION.—

"(A) REFERRAL TO PEDIATRIC ADVISORY COMMITTEE.—

Deadline.

If, not later than the end of the 180-day period specified in paragraph (7), the holder of an approved application for the drug involved does not agree to any labeling change requested by the Commissioner of Food and Drugs under that paragraph, the Commissioner of Food and Drugs shall refer the request to the Pediatric Advisory Committee.

"(B) ACTION BY THE PEDIATRIC ADVISORY COMMITTEE.—

Deadline.

Not later than 90 days after receiving a referral under subparagraph (A), the Pediatric Advisory Committee shall—

"(i) review the available information on the safe and effective use of the drug in the pediatric population, including study reports submitted under this section; and

Recommendations.

"(ii) make a recommendation to the Commissioner of Food and Drugs as to appropriate labeling changes, if any.

Deadline.

"(9) FDA DETERMINATION.—Not later than 30 days after receiving a recommendation from the Pediatric Advisory Committee under paragraph (8)(B)(ii) with respect to a drug, the Commissioner of Food and Drugs shall consider the recommendation and, if appropriate, make a request to the holders of approved applications for the drug to make any labeling change that the Commissioner of Food and Drugs determines to be appropriate.

Deadline.

"(10) FAILURE TO AGREE.—If a holder of an approved application for a drug, within 30 days after receiving a request to make a labeling change under paragraph (9), does not agree to make a requested labeling change, the Commissioner of

PUBLIC LAW 110–85—SEPT. 27, 2007     121 STAT. 889

Food and Drugs may deem the drug to be misbranded under the Federal Food, Drug, and Cosmetic Act.

"(11) NO EFFECT ON AUTHORITY.—Nothing in this subsection limits the authority of the United States to bring an enforcement action under the Federal Food, Drug, and Cosmetic Act when a drug lacks appropriate pediatric labeling. Neither course of action (the Pediatric Advisory Committee process or an enforcement action referred to in the preceding sentence) shall preclude, delay, or serve as the basis to stay the other course of action.

"(d) DISSEMINATION OF PEDIATRIC INFORMATION.—Not later than one year after the date of the enactment of the Best Pharmaceuticals for Children Act of 2007, the Secretary, acting through the Director of the National Institutes of Health, shall study the feasibility of establishing a compilation of information on pediatric drug use and report the findings to Congress.

Deadline.
Reports.

"(e) AUTHORIZATION OF APPROPRIATIONS.—

"(1) IN GENERAL.—There are authorized to be appropriated to carry out this section—

"(A) $200,000,000 for fiscal year 2008; and

"(B) such sums as are necessary for each of the four succeeding fiscal years.

"(2) AVAILABILITY.—Any amount appropriated under paragraph (1) shall remain available to carry out this section until expended.".

(c) FOUNDATION FOR THE NATIONAL INSTITUTES OF HEALTH.—Section 499(c)(1)(C) of the Public Health Service Act (42 U.S.C. 290b(c)(1)(C)) is amended by striking "and studies listed by the Secretary pursuant to section 409I(a)(1)(A) of this Act and referred under section 505A(d)(4)(C) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 355(a)(d)(4)(C)'" and inserting "and studies for which the Secretary issues a certification in the affirmative under section 505A(n)(1)(A) of the Federal Food, Drug, and Cosmetic Act".

(d) CONTINUATION OF OPERATION OF COMMITTEE.—Section 14 of the Best Pharmaceuticals for Children Act (42 U.S.C. 284m note) is amended by adding at the end the following new subsection:

"(d) CONTINUATION OF OPERATION OF COMMITTEE.—Notwithstanding section 14 of the Federal Advisory Committee Act, the advisory committee shall continue to operate during the five-year period beginning on the date of the enactment of the Best Pharmaceuticals for Children Act of 2007.".

(e) PEDIATRIC SUBCOMMITTEE OF THE ONCOLOGIC DRUGS ADVISORY COMMITTEE.—Section 15 of the Best Pharmaceuticals for Children Act (42 U.S.C. 284m note) is amended—

(1) in subsection (a)—

(A) in paragraph (1)—

(i) in subparagraph (B), by striking "and" after the semicolon;

(ii) in subparagraph (C), by striking the period at the end and inserting "; and"; and

(iii) by adding at the end the following new subparagraph:

"(D) provide recommendations to the internal review committee created under section 505B(f) of the Federal Food, Drug, and Cosmetic Act regarding the implementation of amendments to sections 505A and 505B of the

PPLPC051000064143

Federal Food, Drug, and Cosmetic Act with respect to the treatment of pediatric cancers."; and

(B) by adding at the end the following new paragraph:

"(3) CONTINUATION OF OPERATION OF SUBCOMMITTEE.—Notwithstanding section 14 of the Federal Advisory Committee Act, the Subcommittee shall continue to operate during the five-year period beginning on the date of the enactment of the Best Pharmaceuticals for Children Act of 2007."; and

(2) in subsection (d), by striking "2003" and inserting "2009".

(f) EFFECTIVE DATE AND LIMITATION FOR RULE RELATING TO TOLL-FREE NUMBER FOR ADVERSE EVENTS ON LABELING FOR HUMAN DRUG PRODUCTS.—

(1) IN GENERAL.—Notwithstanding subchapter II of chapter 5, and chapter 7, of title 5, United States Code (commonly known as the "Administrative Procedure Act") and any other provision of law, the proposed rule issued by the Commissioner of Food and Drugs entitled "Toll-Free Number for Reporting Adverse Events on Labeling for Human Drug Products," 69 Fed. Reg. 21778, (April 22, 2004) shall take effect on January 1, 2008, unless such Commissioner issues the final rule before such date.

(2) LIMITATION.—The proposed rule that takes effect under subsection (a), or the final rule described under subsection (a), shall, notwithstanding section 17(a) of the Best Pharmaceuticals for Children Act (21 U.S.C. 355b(a)), not apply to a drug—

(A) for which an application is approved under section 505 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355);

(B) that is not described under section 503(b)(1) of such Act (21 U.S.C. 353(b)(1)); and

(C) the packaging of which includes a toll-free number through which consumers can report complaints to the manufacturer or distributor of the drug.

**SEC. 503. TRAINING OF PEDIATRIC PHARMACOLOGISTS.**

(a) INVESTMENT IN TOMORROW'S PEDIATRIC RESEARCHERS.—Section 452G(2) of the Public Health Service Act (42 U.S.C. 285g–10(2)) is amended by adding before the period at the end the following: ", including pediatric pharmacological research".

(b) PEDIATRIC RESEARCH LOAN REPAYMENT PROGRAM.—Section 487F(a)(1) of the Public Health Service Act (42 U.S.C. 288–6(a)(1)) is amended by inserting "including pediatric pharmacological research," after "pediatric research,".

# TITLE VI—REAGAN-UDALL FOUNDATION

**SEC. 601. THE REAGAN-UDALL FOUNDATION FOR THE FOOD AND DRUG ADMINISTRATION.**

(a) IN GENERAL.—Chapter VII of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 371 et seq.) is amended by adding at the end the following:

PUBLIC LAW 110–85—SEPT. 27, 2007          121 STAT. 891

**"Subchapter I—Reagan-Udall Foundation for the Food and Drug Administration**

**"SEC. 770. ESTABLISHMENT AND FUNCTIONS OF THE FOUNDATION.**          21 USC 379dd.

"(a) IN GENERAL.—A nonprofit corporation to be known as the Reagan-Udall Foundation for the Food and Drug Administration (referred to in this subchapter as the 'Foundation') shall be established in accordance with this section. The Foundation shall be headed by an Executive Director, appointed by the members of the Board of Directors under subsection (e). The Foundation shall not be an agency or instrumentality of the United States Government.

"(b) PURPOSE OF FOUNDATION.—The purpose of the Foundation is to advance the mission of the Food and Drug Administration to modernize medical, veterinary, food, food ingredient, and cosmetic product development, accelerate innovation, and enhance product safety.

"(c) DUTIES OF THE FOUNDATION.—The Foundation shall—

"(1) taking into consideration the Critical Path reports and priorities published by the Food and Drug Administration, identify unmet needs in the development, manufacture, and evaluation of the safety and effectiveness, including post-approval, of devices, including diagnostics, biologics, and drugs, and the safety of food, food ingredients, and cosmetics, and including the incorporation of more sensitive and predictive tools and devices to measure safety;

"(2) establish goals and priorities in order to meet the unmet needs identified in paragraph (1);

"(3) in consultation with the Secretary, identify existing and proposed Federal intramural and extramural research and development programs relating to the goals and priorities established under paragraph (2), coordinate Foundation activities with such programs, and minimize Foundation duplication of existing efforts;

"(4) award grants to, or enter into contracts, memoranda of understanding, or cooperative agreements with, scientists and entities, which may include the Food and Drug Administration, university consortia, public-private partnerships, institutions of higher education, entities described in section 501(c)(3) of the Internal Revenue Code (and exempt from tax under section 501(a) of such Code), and industry, to efficiently and effectively advance the goals and priorities established under paragraph (2);          Grants. Contracts. Memorandums.

"(5) recruit meeting participants and hold or sponsor (in whole or in part) meetings as appropriate to further the goals and priorities established under paragraph (2);

"(6) release and publish information and data and, to the extent practicable, license, distribute, and release material, reagents, and techniques to maximize, promote, and coordinate the availability of such material, reagents, and techniques for use by the Food and Drug Administration, nonprofit organizations, and academic and industrial researchers to further the goals and priorities established under paragraph (2);          Publication.

"(7) ensure that—

"(A) action is taken as necessary to obtain patents for inventions developed by the Foundation or with funds from the Foundation;

"(B) action is taken as necessary to enable the licensing of inventions developed by the Foundation or with funds from the Foundation; and

"(C) executed licenses, memoranda of understanding, material transfer agreements, contracts, and other such instruments, promote, to the maximum extent practicable, the broadest conversion to commercial and noncommercial applications of licensed and patented inventions of the Foundation to further the goals and priorities established under paragraph (2);

"(8) provide objective clinical and scientific information to the Food and Drug Administration and, upon request, to other Federal agencies to assist in agency determinations of how to ensure that regulatory policy accommodates scientific advances and meets the agency's public health mission;

"(9) conduct annual assessments of the unmet needs identified in paragraph (1); and

"(10) carry out such other activities consistent with the purposes of the Foundation as the Board determines appropriate.

"(d) BOARD OF DIRECTORS.—

"(1) ESTABLISHMENT.—

"(A) IN GENERAL.—The Foundation shall have a Board of Directors (referred to in this subchapter as the 'Board'), which shall be composed of ex officio and appointed members in accordance with this subsection. All appointed members of the Board shall be voting members.

"(B) EX OFFICIO MEMBERS.—The ex officio members of the Board shall be the following individuals or their designees:

"(i) The Commissioner.

"(ii) The Director of the National Institutes of Health.

"(iii) The Director of the Centers for Disease Control and Prevention.

"(iv) The Director of the Agency for Healthcare Research and Quality.

"(C) APPOINTED MEMBERS.—

"(i) IN GENERAL.—The ex officio members of the Board under subparagraph (B) shall, by majority vote, appoint to the Board 14 individuals, of which 9 shall be from a list of candidates to be provided by the National Academy of Sciences and 5 shall be from lists of candidates provided by patient and consumer advocacy groups, professional scientific and medical societies, and industry trade organizations. Of such appointed members—

"(I) 4 shall be representatives of the general pharmaceutical, device, food, cosmetic, and bio-technology industries;

"(II) 3 shall be representatives of academic research organizations;

"(III) 2 shall be representatives of patient or consumer advocacy organizations;

"(IV) 1 shall be a representative of health care providers; and

PUBLIC LAW 110–85—SEPT. 27, 2007          121 STAT. 893

"(V) 4 shall be at-large members with expertise or experience relevant to the purpose of the Foundation.

"(ii) REQUIREMENTS.—

"(I) EXPERTISE.—The ex officio members shall ensure the Board membership includes individuals with expertise in areas including the sciences of developing, manufacturing, and evaluating the safety and effectiveness of devices, including diagnostics, biologics, and drugs, and the safety of food, food ingredients, and cosmetics.

"(II) FEDERAL EMPLOYEES.—No employee of the Federal Government shall be appointed as a member of the Board under this subparagraph or under paragraph (3)(B).

"(D) INITIAL MEETING.—

"(i) IN GENERAL.—Not later than 30 days after the date of the enactment of this subchapter, the Secretary shall convene a meeting of the ex officio members of the Board to— *Deadline.*

"(I) incorporate the Foundation; and

"(II) appoint the members of the Board in accordance with subparagraph (C).

"(ii) SERVICE OF EX OFFICIO MEMBERS.—Upon the appointment of the members of the Board under clause (i)(II)—

"(I) the terms of service of the Director of the Centers for Disease Control and Prevention and of the Director of the Agency for Healthcare Research and Quality as ex officio members of the Board shall terminate; and

"(II) the Commissioner and the Director of the National Institutes of Health shall continue to serve as ex officio members of the Board, but shall be nonvoting members.

"(iii) CHAIR.—The ex officio members of the Board under subparagraph (B) shall designate an appointed member of the Board to serve as the Chair of the Board.

"(2) DUTIES OF BOARD.—The Board shall—

"(A) establish bylaws for the Foundation that—

"(i) are published in the Federal Register and available for public comment; *Federal Register, publication.*

"(ii) establish policies for the selection of the officers, employees, agents, and contractors of the Foundation;

"(iii) establish policies, including ethical standards, for the acceptance, solicitation, and disposition of donations and grants to the Foundation and for the disposition of the assets of the Foundation, including appropriate limits on the ability of donors to designate, by stipulation or restriction, the use or recipient of donated funds;

"(iv) establish policies that would subject all employees, fellows, and trainees of the Foundation to the conflict of interest standards under section 208 of title 18, United States Code;

121 STAT. 894          PUBLIC LAW 110–85—SEPT. 27, 2007

"(v) establish licensing, distribution, and publication policies that support the widest and least restrictive use by the public of information and inventions developed by the Foundation or with Foundation funds to carry out the duties described in paragraphs (6) and (7) of subsection (c), and may include charging cost-based fees for published material produced by the Foundation;

"(vi) specify principles for the review of proposals and awarding of grants and contracts that include peer review and that are consistent with those of the Foundation for the National Institutes of Health, to the extent determined practicable and appropriate by the Board;

"(vii) specify a cap on administrative expenses for recipients of a grant, contract, or cooperative agreement from the Foundation;

"(viii) establish policies for the execution of memoranda of understanding and cooperative agreements between the Foundation and other entities, including the Food and Drug Administration;

"(ix) establish policies for funding training fellowships, whether at the Foundation, academic or scientific institutions, or the Food and Drug Administration, for scientists, doctors, and other professionals who are not employees of regulated industry, to foster greater understanding of and expertise in new scientific tools, diagnostics, manufacturing techniques, and potential barriers to translating basic research into clinical and regulatory practice;

"(x) specify a process for annual Board review of the operations of the Foundation; and

"(xi) establish specific duties of the Executive Director;

"(B) prioritize and provide overall direction to the activities of the Foundation;

"(C) evaluate the performance of the Executive Director; and

"(D) carry out any other necessary activities regarding the functioning of the Foundation.

"(3) TERMS AND VACANCIES.—

"(A) TERM.—The term of office of each member of the Board appointed under paragraph (1)(C) shall be 4 years, except that the terms of offices for the initial appointed members of the Board shall expire on a staggered basis as determined by the ex officio members.

"(B) VACANCY.—Any vacancy in the membership of the Board—

"(i) shall not affect the power of the remaining members to execute the duties of the Board; and

"(ii) shall be filled by appointment by the appointed members described in paragraph (1)(C) by majority vote.

"(C) PARTIAL TERM.—If a member of the Board does not serve the full term applicable under subparagraph (A), the individual appointed under subparagraph (B) to fill

the resulting vacancy shall be appointed for the remainder of the term of the predecessor of the individual.

"(D) SERVING PAST TERM.—A member of the Board may continue to serve after the expiration of the term of the member until a successor is appointed.

"(4) COMPENSATION.—Members of the Board may not receive compensation for service on the Board. Such members may be reimbursed for travel, subsistence, and other necessary expenses incurred in carrying out the duties of the Board, as set forth in the bylaws issued by the Board.

"(e) INCORPORATION.—The ex officio members of the Board shall serve as incorporators and shall take whatever actions necessary to incorporate the Foundation.

"(f) NONPROFIT STATUS.—In carrying out subsection (b), the Board shall establish such policies and bylaws under subsection (d), and the Executive Director shall carry out such activities under subsection (g), as may be necessary to ensure that the Foundation maintains status as an organization that—

"(1) is described in subsection (c)(3) of section 501 of the Internal Revenue Code of 1986; and

"(2) is, under subsection (a) of such section, exempt from taxation.

"(g) EXECUTIVE DIRECTOR.—

"(1) IN GENERAL.—The Board shall appoint an Executive Director who shall serve at the pleasure of the Board. The Executive Director shall be responsible for the day-to-day operations of the Foundation and shall have such specific duties and responsibilities as the Board shall prescribe.

"(2) COMPENSATION.—The compensation of the Executive Director shall be fixed by the Board but shall not be greater than the compensation of the Commissioner.

"(h) ADMINISTRATIVE POWERS.—In carrying out this subchapter, the Board, acting through the Executive Director, may—

"(1) adopt, alter, and use a corporate seal, which shall be judicially noticed;

"(2) hire, promote, compensate, and discharge 1 or more officers, employees, and agents, as may be necessary, and define their duties;

"(3) prescribe the manner in which—

"(A) real or personal property of the Foundation is acquired, held, and transferred;

"(B) general operations of the Foundation are to be conducted; and

"(C) the privileges granted to the Board by law are exercised and enjoyed;

"(4) with the consent of the applicable executive department or independent agency, use the information, services, and facilities of such department or agencies in carrying out this section;

"(5) enter into contracts with public and private organizations for the writing, editing, printing, and publishing of books and other material;

"(6) hold, administer, invest, and spend any gift, devise, or bequest of real or personal property made to the Foundation under subsection (i);

"(7) enter into such other contracts, leases, cooperative agreements, and other transactions as the Board considers appropriate to conduct the activities of the Foundation;

Case: 1:17-md-02804-DAP  Doc #: 2347-12  Filed:  08/14/19  21 of 51.  PageID #: 377969

"(8) modify or consent to the modification of any contract or agreement to which it is a party or in which it has an interest under this subchapter;

"(9) take such action as may be necessary to obtain patents and licenses for devices and procedures developed by the Foundation and its employees;

"(10) sue and be sued in its corporate name, and complain and defend in courts of competent jurisdiction;

"(11) appoint other groups of advisors as may be determined necessary to carry out the functions of the Foundation; and

"(12) exercise other powers as set forth in this section, and such other incidental powers as are necessary to carry out its powers, duties, and functions in accordance with this subchapter.

"(i) ACCEPTANCE OF FUNDS FROM OTHER SOURCES.—The Executive Director may solicit and accept on behalf of the Foundation, any funds, gifts, grants, devises, or bequests of real or personal property made to the Foundation, including from private entities, for the purposes of carrying out the duties of the Foundation.

"(j) SERVICE OF FEDERAL EMPLOYEES.—Federal Government employees may serve on committees advisory to the Foundation and otherwise cooperate with and assist the Foundation in carrying out its functions, so long as such employees do not direct or control Foundation activities.

"(k) DETAIL OF GOVERNMENT EMPLOYEES; FELLOWSHIPS.—

"(1) DETAIL FROM FEDERAL AGENCIES.—Federal Government employees may be detailed from Federal agencies with or without reimbursement to those agencies to the Foundation at any time, and such detail shall be without interruption or loss of civil service status or privilege. Each such employee shall abide by the statutory, regulatory, ethical, and procedural standards applicable to the employees of the agency from which such employee is detailed and those of the Foundation.

"(2) VOLUNTARY SERVICE; ACCEPTANCE OF FEDERAL EMPLOYEES.—

"(A) FOUNDATION.—The Executive Director of the Foundation may accept the services of employees detailed from Federal agencies with or without reimbursement to those agencies.

"(B) FOOD AND DRUG ADMINISTRATION.—The Commissioner may accept the uncompensated services of Foundation fellows or trainees. Such services shall be considered to be undertaking an activity under contract with the Secretary as described in section 708.

"(l) ANNUAL REPORTS.—

"(1) REPORTS TO FOUNDATION.—Any recipient of a grant, contract, fellowship, memorandum of understanding, or cooperative agreement from the Foundation under this section shall submit to the Foundation a report on an annual basis for the duration of such grant, contract, fellowship, memorandum of understanding, or cooperative agreement, that describes the activities carried out under such grant, contract, fellowship, memorandum of understanding, or cooperative agreement.

"(2) REPORT TO CONGRESS AND THE FDA.—Beginning with fiscal year 2009, the Executive Director shall submit to Congress and the Commissioner an annual report that—

PUBLIC LAW 110–85—SEPT. 27, 2007     121 STAT. 897

"(A) describes the activities of the Foundation and the progress of the Foundation in furthering the goals and priorities established under subsection (c)(2), including the practical impact of the Foundation on regulated product development;

"(B) provides a specific accounting of the source and use of all funds used by the Foundation to carry out such activities; and

"(C) provides information on how the results of Foundation activities could be incorporated into the regulatory and product review activities of the Food and Drug Administration.

"(m) SEPARATION OF FUNDS.—The Executive Director shall ensure that the funds received from the Treasury are held in separate accounts from funds received from entities under subsection (i).

"(n) FUNDING.—From amounts appropriated to the Food and Drug Administration for each fiscal year, the Commissioner shall transfer not less than $500,000 and not more than $1,250,000, to the Foundation to carry out subsections (a), (b), and (d) through (m).".

(b) OTHER FOUNDATION PROVISIONS.—Chapter VII of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 371 et seq.) (as amended by subsection (a)) is amended by adding at the end the following:

**"SEC. 771. LOCATION OF FOUNDATION.**     21 USC 379dd–1.

"The Foundation shall, if practicable, be located not more than 20 miles from the District of Columbia.

**"SEC. 772. ACTIVITIES OF THE FOOD AND DRUG ADMINISTRATION.**     21 USC 379dd–2.

"(a) IN GENERAL.—The Commissioner shall receive and assess the report submitted to the Commissioner by the Executive Director of the Foundation under section 770(l)(2).

"(b) REPORT TO CONGRESS.—Beginning with fiscal year 2009, the Commissioner shall submit to Congress an annual report summarizing the incorporation of the information provided by the Foundation in the report described under section 770(l)(2) and by other recipients of grants, contracts, memoranda of understanding, or cooperative agreements into regulatory and product review activities of the Food and Drug Administration.

"(c) EXTRAMURAL GRANTS.—The provisions of this subchapter and section 566 shall have no effect on any grant, contract, memorandum of understanding, or cooperative agreement between the Food and Drug Administration and any other entity entered into before, on, or after the date of the enactment of this subchapter.".

(c) CONFORMING AMENDMENT.—Section 742(b) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 379l(b)) is amended by adding at the end the following: "Any such fellowships and training programs under this section or under section 770(d)(2)(A)(ix) may include provision by such scientists and physicians of services on a voluntary and uncompensated basis, as the Secretary determines appropriate. Such scientists and physicians shall be subject to all legal and ethical requirements otherwise applicable to officers or employees of the Department of Health and Human Services.".

**SEC. 602. OFFICE OF THE CHIEF SCIENTIST.**

Chapter IX of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 391 et seq.) is amended by adding at the end the following:

21 USC 399a.

**"SEC. 910. OFFICE OF THE CHIEF SCIENTIST.**

"(a) ESTABLISHMENT; APPOINTMENT.—The Secretary shall establish within the Office of the Commissioner an office to be known as the Office of the Chief Scientist. The Secretary shall appoint a Chief Scientist to lead such Office.

"(b) DUTIES OF THE OFFICE.—The Office of the Chief Scientist shall—

"(1) oversee, coordinate, and ensure quality and regulatory focus of the intramural research programs of the Food and Drug Administration;

"(2) track and, to the extent necessary, coordinate intramural research awards made by each center of the Administration or science-based office within the Office of the Commissioner, and ensure that there is no duplication of research efforts supported by the Reagan-Udall Foundation for the Food and Drug Administration;

"(3) develop and advocate for a budget to support intramural research;

"(4) develop a peer review process by which intramural research can be evaluated;

"(5) identify and solicit intramural research proposals from across the Food and Drug Administration through an advisory board composed of employees of the Administration that shall include—

"(A) representatives of each of the centers and the science-based offices within the Office of the Commissioner; and

"(B) experts on trial design, epidemiology, demographics, pharmacovigilance, basic science, and public health; and

"(6) develop postmarket safety performance measures that are as measurable and rigorous as the ones already developed for premarket review.".

**SEC. 603. CRITICAL PATH PUBLIC-PRIVATE PARTNERSHIPS.**

Subchapter E of chapter V of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360bbb et seq.) is amended by adding at the end the following:

21 USC 360bbb–5.

**"SEC. 566. CRITICAL PATH PUBLIC-PRIVATE PARTNERSHIPS.**

"(a) ESTABLISHMENT.—The Secretary, acting through the Commissioner of Food and Drugs, may enter into collaborative agreements, to be known as Critical Path Public-Private Partnerships, with one or more eligible entities to implement the Critical Path Initiative of the Food and Drug Administration by developing innovative, collaborative projects in research, education, and outreach for the purpose of fostering medical product innovation, enabling the acceleration of medical product development, manufacturing, and translational therapeutics, and enhancing medical product safety.

"(b) ELIGIBLE ENTITY.—In this section, the term 'eligible entity' means an entity that meets each of the following:

"(1) The entity is—

PPLPC051000064152

PUBLIC LAW 110–85—SEPT. 27, 2007          121 STAT. 899

"(A) an institution of higher education (as such term is defined in section 101 of the Higher Education Act of 1965) or a consortium of such institutions; or

"(B) an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from tax under section 501(a) of such Code.

"(2) The entity has experienced personnel and clinical and other technical expertise in the biomedical sciences, which may include graduate training programs in areas relevant to priorities of the Critical Path Initiative.

"(3) The entity demonstrates to the Secretary's satisfaction that the entity is capable of—

"(A) developing and critically evaluating tools, methods, and processes—

"(i) to increase efficiency, predictability, and productivity of medical product development; and

"(ii) to more accurately identify the benefits and risks of new and existing medical products;

"(B) establishing partnerships, consortia, and collaborations with health care practitioners and other providers of health care goods or services; pharmacists; pharmacy benefit managers and purchasers; health maintenance organizations and other managed health care organizations; health care insurers; government agencies; patients and consumers; manufacturers of prescription drugs, biological products, diagnostic technologies, and devices; and academic scientists; and

"(C) securing funding for the projects of a Critical Path Public-Private Partnership from Federal and non-federal governmental sources, foundations, and private individuals.

"(c) FUNDING.—The Secretary may not enter into a collaborative agreement under subsection (a) unless the eligible entity involved provides an assurance that the entity will not accept funding for a Critical Path Public-Private Partnership project from any organization that manufactures or distributes products regulated by the Food and Drug Administration unless the entity provides assurances in its agreement with the Food and Drug Administration that the results of the Critical Path Public-Private Partnership project will not be influenced by any source of funding.

"(d) ANNUAL REPORT.—Not later than 18 months after the date of the enactment of this section, and annually thereafter, the Secretary, in collaboration with the parties to each Critical Path Public-Private Partnership, shall submit a report to the Committee on Health, Education, Labor, and Pensions of the Senate and the Committee on Energy and Commerce of the House of Representatives—

"(1) reviewing the operations and activities of the Partnerships in the previous year; and

"(2) addressing such other issues relating to this section as the Secretary determines to be appropriate.

"(e) DEFINITION.—In this section, the term 'medical product' includes a drug, a biological product as defined in section 351 of the Public Health Service Act, a device, and any combination of such products.

"(f) AUTHORIZATION OF APPROPRIATIONS.—To carry out this section, there are authorized to be appropriated $5,000,000 for fiscal

PPLPC051000064153

year 2008 and such sums as may be necessary for each of fiscal years 2009 through 2012.".

# TITLE VII—CONFLICTS OF INTEREST

### SEC. 701. CONFLICTS OF INTEREST.

(a) IN GENERAL.—Subchapter A of chapter VII of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 371 et seq.) is amended by inserting at the end the following:

21 USC 379d–1.

"**SEC. 712. CONFLICTS OF INTEREST.**

"(a) DEFINITIONS.—For purposes of this section:

"(1) ADVISORY COMMITTEE.—The term 'advisory committee' means an advisory committee under the Federal Advisory Committee Act that provides advice or recommendations to the Secretary regarding activities of the Food and Drug Administration.

"(2) FINANCIAL INTEREST.—The term 'financial interest' means a financial interest under section 208(a) of title 18, United States Code.

"(b) APPOINTMENTS TO ADVISORY COMMITTEES.—

"(1) RECRUITMENT.—

"(A) IN GENERAL.—The Secretary shall—

"(i) develop and implement strategies on effective outreach to potential members of advisory committees at universities, colleges, other academic research centers, professional and medical societies, and patient and consumer groups;

"(ii) seek input from professional medical and scientific societies to determine the most effective informational and recruitment activities; and

"(iii) take into account the advisory committees with the greatest number of vacancies.

"(B) RECRUITMENT ACTIVITIES.—The recruitment activities under subparagraph (A) may include—

"(i) advertising the process for becoming an advisory committee member at medical and scientific society conferences;

"(ii) making widely available, including by using existing electronic communications channels, the contact information for the Food and Drug Administration point of contact regarding advisory committee nominations; and

"(iii) developing a method through which an entity receiving funding from the National Institutes of Health, the Agency for Healthcare Research and Quality, the Centers for Disease Control and Prevention, or the Veterans Health Administration can identify a person who the Food and Drug Administration can contact regarding the nomination of individuals to serve on advisory committees.

"(2) EVALUATION AND CRITERIA.—When considering a term appointment to an advisory committee, the Secretary shall review the expertise of the individual and the financial disclosure report filed by the individual pursuant to the Ethics in Government Act of 1978 for each individual under consideration

PUBLIC LAW 110–85—SEPT. 27, 2007        121 STAT. 901

for the appointment, so as to reduce the likelihood that an appointed individual will later require a written determination as referred to in section 208(b)(1) of title 18, United States Code, a written certification as referred to in section 208(b)(3) of title 18, United States Code, or a waiver as referred to in subsection (c)(2) of this section for service on the committee at a meeting of the committee.

"(c) DISCLOSURES; PROHIBITIONS ON PARTICIPATION; WAIVERS.—

"(1) DISCLOSURE OF FINANCIAL INTEREST.—Prior to a meeting of an advisory committee regarding a 'particular matter' (as that term is used in section 208 of title 18, United States Code), each member of the committee who is a full-time Government employee or special Government employee shall disclose to the Secretary financial interests in accordance with subsection (b) of such section 208.

"(2) PROHIBITIONS AND WAIVERS ON PARTICIPATION.—

"(A) IN GENERAL.—Except as provided under subparagraph (B), a member of an advisory committee may not participate with respect to a particular matter considered in an advisory committee meeting if such member (or an immediate family member of such member) has a financial interest that could be affected by the advice given to the Secretary with respect to such matter, excluding interests exempted in regulations issued by the Director of the Office of Government Ethics as too remote or inconsequential to affect the integrity of the services of the Government officers or employees to which such regulations apply.

"(B) WAIVER.—If the Secretary determines it necessary to afford the advisory committee essential expertise, the Secretary may grant a waiver of the prohibition in subparagraph (A) to permit a member described in such subparagraph to—

"(i) participate as a non-voting member with respect to a particular matter considered in a committee meeting; or

"(ii) participate as a voting member with respect to a particular matter considered in a committee meeting.

"(C) LIMITATION ON WAIVERS AND OTHER EXCEPTIONS.—

"(i) DEFINITION.—For purposes of this subparagraph, the term 'exception' means each of the following with respect to members of advisory committees:

"(I) A waiver under section 505(n)(4) (as in effect on the day before the date of the enactment of the Food and Drug Administration Amendments Act of 2007).

"(II) A written determination under section 208(b) of title 18, United States Code.

"(III) A written certification under section 208(b)(3) of such title.

"(ii) DETERMINATION OF TOTAL NUMBER OF MEMBERS SLOTS AND MEMBER EXCEPTIONS DURING FISCAL YEAR 2007.—The Secretary shall determine—

"(I)(aa) for each meeting held by any advisory committee during fiscal year 2007, the number of members who participated in the meeting; and

"(bb) the sum of the respective numbers determined under item (aa) (referred to in this subparagraph as the "total number of 2007 meeting slots"); and

"(II)(aa) for each meeting held by any advisory committee during fiscal year 2007, the number of members who received an exception for the meeting; and

"(bb) the sum of the respective numbers determined under item (aa) (referred to in this subparagraph as the "total number of 2007 meeting exceptions").

"(iii) DETERMINATION OF PERCENTAGE REGARDING EXCEPTIONS DURING FISCAL YEAR 2007.—The Secretary shall determine the percentage constituted by—

"(I) the total number of 2007 meeting exceptions; divided by

"(II) the total number of 2007 meeting slots.

"(iv) LIMITATION FOR FISCAL YEARS 2008 THROUGH 2012.—The number of exceptions at the Food and Drug Administration for members of advisory committees for a fiscal year may not exceed the following:

"(I) For fiscal year 2008, 95 percent of the percentage determined under clause (iii) (referred to in this clause as the "base percentage").

"(II) For fiscal year 2009, 90 percent of the base percentage.

"(III) For fiscal year 2010, 85 percent of the base percentage.

"(IV) For fiscal year 2011, 80 percent of the base percentage.

"(V) For fiscal year 2012, 75 percent of the base percentage.

"(v) ALLOCATION OF EXCEPTIONS.—The exceptions authorized under clause (iv) for a fiscal year may be allocated within the centers or other organizational units of the Food and Drug Administration as determined appropriate by the Secretary.

Applicability.
Website.

"(3) DISCLOSURE OF WAIVER.—Notwithstanding section 107(a)(2) of the Ethics in Government Act (5 U.S.C. App.), the following shall apply:

"(A) 15 OR MORE DAYS IN ADVANCE.—As soon as practicable, but (except as provided in subparagraph (B)) not later than 15 days prior to a meeting of an advisory committee to which a written determination as referred to in section 208(b)(1) of title 18, United States Code, a written certification as referred to in section 208(b)(3) of title 18, United States Code, or a waiver as referred to in paragraph (2)(B) applies, the Secretary shall disclose (other than information exempted from disclosure under section 552 of title 5, United States Code, and section 552a of title 5, United States Code (popularly known as the Freedom of Information Act and the Privacy Act of 1974, respectively)) on the Internet Web site of the Food and Drug Administration—

"(i) the type, nature, and magnitude of the financial interests of the advisory committee member to

which such determination, certification, or waiver applies; and

"(ii) the reasons of the Secretary for such determination, certification, or waiver.

"(B) LESS THAN 30 DAYS IN ADVANCE.—In the case of a financial interest that becomes known to the Secretary less than 30 days prior to a meeting of an advisory committee to which a written determination as referred to in section 208(b)(1) of title 18, United States Code, a written certification as referred to in section 208(b)(3) of title 18, United States Code, or a waiver as referred to in paragraph (2)(B) applies, the Secretary shall disclose (other than information exempted from disclosure under section 552 of title 5, United States Code, and section 552a of title 5, United States Code) on the Internet Web site of the Food and Drug Administration, the information described in clauses (i) and (ii) of subparagraph (A) as soon as practicable after the Secretary makes such determination, certification, or waiver, but in no case later than the date of such meeting.

"(d) PUBLIC RECORD.—The Secretary shall ensure that the public record and transcript of each meeting of an advisory committee includes the disclosure required under subsection (c)(3) (other than information exempted from disclosure under section 552 of title 5, United States Code, and section 552a of title 5, United States Code).

"(e) ANNUAL REPORT.—Not later than February 1 of each year, the Secretary shall submit to the Committee on Appropriations and the Committee on Health, Education, Labor, and Pensions of the Senate, and the Committee on Appropriations and the Committee on Energy and Commerce of the House of Representatives a report that describes—

"(1) with respect to the fiscal year that ended on September 30 of the previous year, the number of vacancies on each advisory committee, the number of nominees received for each committee, and the number of such nominees willing to serve;

"(2) with respect to such year, the aggregate number of disclosures required under subsection (c)(3) for each meeting of each advisory committee and the percentage of individuals to whom such disclosures did not apply who served on such committee for each such meeting;

"(3) with respect to such year, the number of times the disclosures required under subsection (c)(3) occurred under subparagraph (B) of such subsection; and

"(4) how the Secretary plans to reduce the number of vacancies reported under paragraph (1) during the fiscal year following such year, and mechanisms to encourage the nomination of individuals for service on an advisory committee, including those who are classified by the Food and Drug Administration as academicians or practitioners.

"(f) PERIODIC REVIEW OF GUIDANCE.—Not less than once every 5 years, the Secretary shall review guidance of the Food and Drug Administration regarding conflict of interest waiver determinations with respect to advisory committees and update such guidance as necessary.".

(b) CONFORMING AMENDMENTS.—Section 505(n) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355(n)) is amended by—

121 STAT. 904        PUBLIC LAW 110–85—SEPT. 27, 2007

(1) striking paragraph (4); and
(2) redesignating paragraphs (5), (6), (7), and (8) as paragraphs (4), (5), (6), and (7), respectively.

21 USC 355 note.        (c) EFFECTIVE DATE.—The amendments made by this section shall take effect on October 1, 2007.

# TITLE VIII—CLINICAL TRIAL DATABASES

### SEC. 801. EXPANDED CLINICAL TRIAL REGISTRY DATA BANK.

(a) IN GENERAL.—Section 402 of the Public Health Service Act (42 U.S.C. 282) is amended by—
(1) redesignating subsections (j) and (k) as subsections (k) and (l), respectively; and
(2) inserting after subsection (i) the following:
"(j) EXPANDED CLINICAL TRIAL REGISTRY DATA BANK.—
"(1) DEFINITIONS; REQUIREMENT.—
"(A) DEFINITIONS.—In this subsection:
"(i) APPLICABLE CLINICAL TRIAL.—The term 'applicable clinical trial' means an applicable device clinical trial or an applicable drug clinical trial.
"(ii) APPLICABLE DEVICE CLINICAL TRIAL.—The term 'applicable device clinical trial' means—
"(I) a prospective clinical study of health outcomes comparing an intervention with a device subject to section 510(k), 515, or 520(m) of the Federal Food, Drug, and Cosmetic Act against a control in human subjects (other than a small clinical trial to determine the feasibility of a device, or a clinical trial to test prototype devices where the primary outcome measure relates to feasibility and not to health outcomes); and
"(II) a pediatric postmarket surveillance as required under section 522 of the Federal Food, Drug, and Cosmetic Act.
"(iii) APPLICABLE DRUG CLINICAL TRIAL.—
"(I) IN GENERAL.—The term 'applicable drug clinical trial' means a controlled clinical investigation, other than a phase I clinical investigation, of a drug subject to section 505 of the Federal Food, Drug, and Cosmetic Act or to section 351 of this Act.
"(II) CLINICAL INVESTIGATION.—For purposes of subclause (I), the term 'clinical investigation' has the meaning given that term in section 312.3 of title 21, Code of Federal Regulations (or any successor regulation).
"(III) PHASE I.—For purposes of subclause (I), the term 'phase I' has the meaning given that term in section 312.21 of title 21, Code of Federal Regulations (or any successor regulation).
"(iv) CLINICAL TRIAL INFORMATION.—The term 'clinical trial information' means, with respect to an applicable clinical trial, those data elements that the responsible party is required to submit under paragraph (2) or under paragraph (3).

PUBLIC LAW 110–85—SEPT. 27, 2007          121 STAT. 905

"(v) COMPLETION DATE.—The term 'completion date' means, with respect to an applicable clinical trial, the date that the final subject was examined or received an intervention for the purposes of final collection of data for the primary outcome, whether the clinical trial concluded according to the prespecified protocol or was terminated.

"(vi) DEVICE.—The term 'device' means a device as defined in section 201(h) of the Federal Food, Drug, and Cosmetic Act.

"(vii) DRUG.—The term 'drug' means a drug as defined in section 201(g) of the Federal Food, Drug, and Cosmetic Act or a biological product as defined in section 351 of this Act.

"(viii) ONGOING.—The term 'ongoing' means, with respect to a clinical trial of a drug or a device and to a date, that—

"(I) 1 or more patients is enrolled in the clinical trial; and

"(II) the date is before the completion date of the clinical trial.

"(ix) RESPONSIBLE PARTY.—The term 'responsible party', with respect to a clinical trial of a drug or device, means—

"(I) the sponsor of the clinical trial (as defined in section 50.3 of title 21, Code of Federal Regulations (or any successor regulation)); or

"(II) the principal investigator of such clinical trial if so designated by a sponsor, grantee, contractor, or awardee, so long as the principal investigator is responsible for conducting the trial, has access to and control over the data from the clinical trial, has the right to publish the results of the trial, and has the ability to meet all of the requirements under this subsection for the submission of clinical trial information.

"(B) REQUIREMENT.—The Secretary shall develop a mechanism by which the responsible party for each applicable clinical trial shall submit the identity and contact information of such responsible party to the Secretary at the time of submission of clinical trial information under paragraph (2).

"(2) EXPANSION OF CLINICAL TRIAL REGISTRY DATA BANK WITH RESPECT TO CLINICAL TRIAL INFORMATION.—

"(A) IN GENERAL.—

"(i) EXPANSION OF DATA BANK.—To enhance patient enrollment and provide a mechanism to track subsequent progress of clinical trials, the Secretary, acting through the Director of NIH, shall expand, in accordance with this subsection, the clinical trials registry of the data bank described under subsection (i)(1) (referred to in this subsection as the 'registry data bank'). The Director of NIH shall ensure that the registry data bank is made publicly available through the Internet.

Public information. Internet.

121 STAT. 906          PUBLIC LAW 110–85—SEPT. 27, 2007

"(ii) CONTENT.—The clinical trial information required to be submitted under this paragraph for an applicable clinical trial shall include—

"(I) descriptive information, including—

"(aa) a brief title, intended for the lay public;

"(bb) a brief summary, intended for the lay public;

"(cc) the primary purpose;

"(dd) the study design;

"(ee) for an applicable drug clinical trial, the study phase;

"(ff) study type;

"(gg) the primary disease or condition being studied, or the focus of the study;

"(hh) the intervention name and intervention type;

"(ii) the study start date;

"(jj) the expected completion date;

"(kk) the target number of subjects; and

"(ll) outcomes, including primary and secondary outcome measures;

"(II) recruitment information, including—

"(aa) eligibility criteria;

"(bb) gender;

"(cc) age limits;

"(dd) whether the trial accepts healthy volunteers;

"(ee) overall recruitment status;

"(ff) individual site status; and

"(gg) in the case of an applicable drug clinical trial, if the drug is not approved under section 505 of the Federal Food, Drug, and Cosmetic Act or licensed under section 351 of this Act, specify whether or not there is expanded access to the drug under section 561 of the Federal Food, Drug, and Cosmetic Act for those who do not qualify for enrollment in the clinical trial and how to obtain information about such access;

"(III) location and contact information, including—

"(aa) the name of the sponsor;

"(bb) the responsible party, by official title; and

"(cc) the facility name and facility contact information (including the city, State, and zip code for each clinical trial location, or a toll-free number through which such location information may be accessed); and

"(IV) administrative data (which the Secretary may make publicly available as necessary), including—

"(aa) the unique protocol identification number;

"(bb) other protocol identification numbers, if any; and

PPLPC051000064160

PUBLIC LAW 110–85—SEPT. 27, 2007          121 STAT. 907

"(cc) the Food and Drug Administration IND/IDE protocol number and the record verification date.

"(iii) MODIFICATIONS.—The Secretary may by regulation modify the requirements for clinical trial information under this paragraph, if the Secretary provides a rationale for why such a modification improves and does not reduce such clinical trial information.

"(B) FORMAT AND STRUCTURE.—

"(i) SEARCHABLE CATEGORIES.—The Director of NIH shall ensure that the public may, in addition to keyword searching, search the entries in the registry data bank by 1 or more of the following criteria:

"(I) The disease or condition being studied in the clinical trial, using Medical Subject Headers (MeSH) descriptors.

"(II) The name of the intervention, including any drug or device being studied in the clinical trial.

"(III) The location of the clinical trial.

"(IV) The age group studied in the clinical trial, including pediatric subpopulations.

"(V) The study phase of the clinical trial.

"(VI) The sponsor of the clinical trial, which may be the National Institutes of Health or another Federal agency, a private industry source, or a university or other organization.

"(VII) The recruitment status of the clinical trial.

"(VIII) The National Clinical Trial number or other study identification for the clinical trial.

"(ii) ADDITIONAL SEARCHABLE CATEGORY.—Not later than 18 months after the date of the enactment of the Food and Drug Administration Amendments Act of 2007, the Director of NIH shall ensure that the public may search the entries of the registry data bank by the safety issue, if any, being studied in the clinical trial as a primary or secondary outcome. *Deadline.*

"(iii) OTHER ELEMENTS.—The Director of NIH shall also ensure that the public may search the entries of the registry data bank by such other elements as the Director deems necessary on an ongoing basis.

"(iv) FORMAT.—The Director of the NIH shall ensure that the registry data bank is easily used by the public, and that entries are easily compared.

"(C) DATA SUBMISSION.—The responsible party for an applicable clinical trial, including an applicable drug clinical trial for a serious or life-threatening disease or condition, that is initiated after, or is ongoing on the date that is 90 days after, the date of the enactment of the Food and Drug Administration Amendments Act of 2007, shall submit to the Director of NIH for inclusion in the registry data bank the clinical trial information described in of subparagraph (A)(ii) not later than the later of— *Deadlines.*

"(i) 90 days after such date of enactment;

"(ii) 21 days after the first patient is enrolled in such clinical trial; or

121 STAT. 908          PUBLIC LAW 110–85—SEPT. 27, 2007

"(iii) in the case of a clinical trial that is not for a serious or life-threatening disease or condition and that is ongoing on such date of enactment, 1 year after such date of enactment.

"(D) POSTING OF DATA.—

Deadlines.

"(i) APPLICABLE DRUG CLINICAL TRIAL.—The Director of NIH shall ensure that clinical trial information for an applicable drug clinical trial submitted in accordance with this paragraph is posted in the registry data bank not later than 30 days after such submission.

"(ii) APPLICABLE DEVICE CLINICAL TRIAL.—The Director of NIH shall ensure that clinical trial information for an applicable device clinical trial submitted in accordance with this paragraph is posted publicly in the registry data bank—

"(I) not earlier than the date of clearance under section 510(k) of the Federal Food, Drug, and Cosmetic Act, or approval under section 515 or 520(m) of such Act, as applicable, for a device that was not previously cleared or approved, and not later than 30 days after such date; or

"(II) for a device that was previously cleared or approved, not later than 30 days after the clinical trial information under paragraph (3)(C) is required to be posted by the Secretary.

"(3) EXPANSION OF REGISTRY DATA BANK TO INCLUDE RESULTS OF CLINICAL TRIALS.—

"(A) LINKING REGISTRY DATA BANK TO EXISTING RESULTS.—

Deadlines.

"(i) IN GENERAL.—Beginning not later than 90 days after the date of the enactment of the Food and Drug Administration Amendments Act of 2007, for those clinical trials that form the primary basis of an efficacy claim or are conducted after the drug involved is approved or after the device involved is cleared or approved, the Secretary shall ensure that the registry data bank includes links to results information as described in clause (ii) for such clinical trial—

"(I) not earlier than 30 days after the date of the approval of the drug involved or clearance or approval of the device involved; or

"(II) not later than 30 days after the results information described in clause (ii) becomes publicly available.

"(ii) REQUIRED INFORMATION.—

"(I) FDA INFORMATION.—The Secretary shall ensure that the registry data bank includes links to the following information:

"(aa) If an advisory committee considered at a meeting an applicable clinical trial, any posted Food and Drug Administration summary document regarding such applicable clinical trial.

"(bb) If an applicable drug clinical trial was conducted under section 505A or 505B of the Federal Food, Drug, and Cosmetic Act,

PUBLIC LAW 110–85—SEPT. 27, 2007        121 STAT. 909

a link to the posted Food and Drug Administration assessment of the results of such trial.

"(cc) Food and Drug Administration public health advisories regarding the drug or device that is the subject of the applicable clinical trial, if any.

"(dd) For an applicable drug clinical trial, the Food and Drug Administration action package for approval document required under section 505(l)(2) of the Federal Food, Drug, and Cosmetic Act.

"(ee) For an applicable device clinical trial, in the case of a premarket application under section 515 of the Federal Food, Drug, and Cosmetic Act, the detailed summary of information respecting the safety and effectiveness of the device required under section 520(h)(1) of such Act, or, in the case of a report under section 510(k) of such Act, the section 510(k) summary of the safety and effectiveness data required under section 807.95(d) of title 21, Code of Federal Regulations (or any successor regulation).

"(II) NIH INFORMATION.—The Secretary shall ensure that the registry data bank includes links to the following information:

"(aa) Medline citations to any publications focused on the results of an applicable clinical trial.

"(bb) The entry for the drug that is the subject of an applicable drug clinical trial in the National Library of Medicine database of structured product labels, if available.

"(iii) RESULTS FOR EXISTING DATA BANK ENTRIES.— The Secretary may include the links described in clause (ii) for data bank entries for clinical trials submitted to the data bank prior to enactment of the Food and Drug Administration Amendments Act of 2007, as available.

"(B) INCLUSION OF RESULTS.—The Secretary, acting through the Director of NIH, shall—

"(i) expand the registry data bank to include the results of applicable clinical trials (referred to in this subsection as the 'registry and results data bank');

"(ii) ensure that such results are made publicly available through the Internet;

"(iii) post publicly a glossary for the lay public explaining technical terms related to the results of clinical trials; and

"(iv) in consultation with experts on risk communication, provide information with the information included under subparagraph (C) in the registry and results data bank to help ensure that such information does not mislead the patients or the public.

"(C) BASIC RESULTS.—Not later than 1 year after the date of the enactment of the Food and Drug Administration Amendments Act of 2007, the Secretary shall include in

Public information. Internet.

Deadline.

the registry and results data bank the following elements for drugs that are approved under section 505 of the Federal Food, Drug, and Cosmetic Act or licensed under section 351 of this Act and devices that are cleared under section 510(k) of the Federal Food, Drug, and Cosmetic Act or approved under section 515 or 520(m) of such Act:

"(i) DEMOGRAPHIC AND BASELINE CHARACTERISTICS OF PATIENT SAMPLE.—A table of the demographic and baseline data collected overall and for each arm of the clinical trial to describe the patients who participated in the clinical trial, including the number of patients who dropped out of the clinical trial and the number of patients excluded from the analysis, if any.

"(ii) PRIMARY AND SECONDARY OUTCOMES.—The primary and secondary outcome measures as submitted under paragraph (2)(A)(ii)(I)(ll), and a table of values for each of the primary and secondary outcome measures for each arm of the clinical trial, including the results of scientifically appropriate tests of the statistical significance of such outcome measures.

"(iii) POINT OF CONTACT.—A point of contact for scientific information about the clinical trial results.

"(iv) CERTAIN AGREEMENTS.—Whether there exists an agreement (other than an agreement solely to comply with applicable provisions of law protecting the privacy of participants) between the sponsor or its agent and the principal investigator (unless the sponsor is an employer of the principal investigator) that restricts in any manner the ability of the principal investigator, after the completion date of the trial, to discuss the results of the trial at a scientific meeting or any other public or private forum, or to publish in a scientific or academic journal information concerning the results of the trial.

"(D) EXPANDED REGISTRY AND RESULTS DATA BANK.—

"(i) EXPANSION BY RULEMAKING.—To provide more complete results information and to enhance patient access to and understanding of the results of clinical trials, not later than 3 years after the date of the enactment of the Food and Drug Administration Amendments Act of 2007, the Secretary shall by regulation expand the registry and results data bank as provided under this subparagraph.

"(ii) CLINICAL TRIALS.—

"(I) APPROVED PRODUCTS.—The regulations under this subparagraph shall require the inclusion of the results information described in clause (iii) for—

"(aa) each applicable drug clinical trial for a drug that is approved under section 505 of the Federal Food, Drug, and Cosmetic Act or licensed under section 351 of this Act; and

"(bb) each applicable device clinical trial for a device that is cleared under section 510(k) of the Federal Food, Drug, and Cosmetic Act or approved under section 515 or 520(m) of such Act.

*Deadline.*

PUBLIC LAW 110–85—SEPT. 27, 2007          121 STAT. 911

"(II) UNAPPROVED PRODUCTS.—The regulations under this subparagraph shall establish whether or not the results information described in clause (iii) shall be required for—

"(aa) an applicable drug clinical trial for a drug that is not approved under section 505 of the Federal Food, Drug, and Cosmetic Act and not licensed under section 351 of this Act (whether approval or licensure was sought or not); and

"(bb) an applicable device clinical trial for a device that is not cleared under section 510(k) of the Federal Food, Drug, and Cosmetic Act and not approved under section 515 or section 520(m) of such Act (whether clearance or approval was sought or not).

"(iii) REQUIRED ELEMENTS.—The regulations under this subparagraph shall require, in addition to the elements described in subparagraph (C), information within each of the following categories:

"(I) A summary of the clinical trial and its results that is written in non-technical, understandable language for patients, if the Secretary determines that such types of summary can be included without being misleading or promotional.

"(II) A summary of the clinical trial and its results that is technical in nature, if the Secretary determines that such types of summary can be included without being misleading or promotional.

"(III) The full protocol or such information on the protocol for the trial as may be necessary to help to evaluate the results of the trial.

"(IV) Such other categories as the Secretary determines appropriate.

"(iv) RESULTS SUBMISSION.—The results information described in clause (iii) shall be submitted to the Director of NIH for inclusion in the registry and results data bank as provided by subparagraph (E), except that the Secretary shall by regulation determine—

"(I) whether the 1-year period for submission of clinical trial information described in subparagraph (E)(i) should be increased from 1 year to a period not to exceed 18 months;

"(II) whether the clinical trial information described in clause (iii) should be required to be submitted for an applicable clinical trial for which the clinical trial information described in subparagraph (C) is submitted to the registry and results data bank before the effective date of the regulations issued under this subparagraph; and

"(III) in the case when the clinical trial information described in clause (iii) is required to be submitted for the applicable clinical trials described in clause (ii)(II), the date by which such clinical trial information shall be required to be submitted, taking into account—

Regulations.

"(aa) the certification process under subparagraph (E)(iii) when approval, licensure, or clearance is sought; and

"(bb) whether there should be a delay of submission when approval, licensure, or clearance will not be sought.

"(v) ADDITIONAL PROVISIONS.—The regulations under this subparagraph shall also establish—

"(I) a standard format for the submission of clinical trial information under this paragraph to the registry and results data bank;

"(II) additional information on clinical trials and results that is written in nontechnical, understandable language for patients;

<p style="margin-left:0">Procedures.</p>

"(III) considering the experience under the pilot quality control project described in paragraph (5)(C), procedures for quality control, including using representative samples, with respect to completeness and content of clinical trial information under this subsection, to help ensure that data elements are not false or misleading and are non-promotional;

"(IV) the appropriate timing and requirements for updates of clinical trial information, and whether and, if so, how such updates should be tracked;

"(V) a statement to accompany the entry for an applicable clinical trial when the primary and secondary outcome measures for such clinical trial are submitted under paragraph (4)(A) after the date specified for the submission of such information in paragraph (2)(C); and

"(VI) additions or modifications to the manner of reporting of the data elements established under subparagraph (C).

"(vi) CONSIDERATION OF WORLD HEALTH ORGANIZATION DATA SET.—The Secretary shall consider the status of the consensus data elements set for reporting clinical trial results of the World Health Organization when issuing the regulations under this subparagraph.

Deadline.

"(vii) PUBLIC MEETING.—The Secretary shall hold a public meeting no later than 18 months after the date of the enactment of the Food and Drug Administration Amendments Act of 2007 to provide an opportunity for input from interested parties with regard to the regulations to be issued under this subparagraph.

"(E) SUBMISSION OF RESULTS INFORMATION.—

Deadline.

"(i) IN GENERAL.—Except as provided in clauses (iii), (iv), (v), and (vi) the responsible party for an applicable clinical trial that is described in clause (ii) shall submit to the Director of NIH for inclusion in the registry and results data bank the clinical trial information described in subparagraph (C) not later than 1 year, or such other period as may be provided by regulation under subparagraph (D), after the earlier of—

PPLPC051000064166

PUBLIC LAW 110–85—SEPT. 27, 2007          121 STAT. 913

"(I) the estimated completion date of the trial as described in paragraph (2)(A)(ii)(I)(jj)); or

"(II) the actual date of completion.

"(ii) CLINICAL TRIALS DESCRIBED.—An applicable clinical trial described in this clause is an applicable clinical trial subject to—

"(I) paragraph (2)(C); and

"(II)(aa) subparagraph (C); or

"(bb) the regulations issued under subparagraph (D).

"(iii) DELAYED SUBMISSION OF RESULTS WITH CERTIFICATION.—If the responsible party for an applicable clinical trial submits a certification that clause (iv) or (v) applies to such clinical trial, the responsible party shall submit to the Director of NIH for inclusion in the registry and results data bank the clinical trial information described in subparagraphs (C) and (D) as required under the applicable clause.

"(iv) SEEKING INITIAL APPROVAL OF A DRUG OR DEVICE.—With respect to an applicable clinical trial that is completed before the drug is initially approved under section 505 of the Federal Food, Drug, and Cosmetic Act or initially licensed under section 351 of this Act, or the device is initially cleared under section 510(k) or initially approved under section 515 or 520(m) of the Federal Food, Drug, and Cosmetic Act, the responsible party shall submit to the Director of NIH for inclusion in the registry and results data bank the clinical trial information described in subparagraphs (C) and (D) not later than 30 days after the drug or device is approved under such section 505, licensed under such section 351, cleared under such section 510(k), or approved under such section 515 or 520(m), as applicable.

Deadline.

"(v) SEEKING APPROVAL OF A NEW USE FOR THE DRUG OR DEVICE.—

"(I) IN GENERAL.—With respect to an applicable clinical trial where the manufacturer of the drug or device is the sponsor of an applicable clinical trial, and such manufacturer has filed, or will file within 1 year, an application seeking approval under section 505 of the Federal Food, Drug, and Cosmetic Act, licensing under section 351 of this Act, or clearance under section 510(k), or approval under section 515 or 520(m), of the Federal Food, Drug, and Cosmetic Act for the use studied in such clinical trial (which use is not included in the labeling of the approved drug or device), then the responsible party shall submit to the Director of NIH for inclusion in the registry and results data bank the clinical trial information described in subparagraphs (C) and (D) on the earlier of the date that is 30 days after the date—

Deadlines.

"(aa) the new use of the drug or device is approved under such section 505, licensed under such section 351, cleared under such

121 STAT. 914          PUBLIC LAW 110–85—SEPT. 27, 2007

section 510(k), or approved under such section 515 or 520(m);

"(bb) the Secretary issues a letter, such as a complete response letter, not approving the submission or not clearing the submission, a not approvable letter, or a not substantially equivalent letter for the new use of the drug or device under such section 505, 351, 510(k), 515, or 520(m); or

"(cc) except as provided in subclause (III), the application or premarket notification under such section 505, 351, 510(k), 515, or 520(m) is withdrawn without resubmission for no less than 210 days.

"(II) REQUIREMENT THAT EACH CLINICAL TRIAL IN APPLICATION BE TREATED THE SAME.—If a manufacturer makes a certification under clause (iii) that this clause applies with respect to a clinical trial, the manufacturer shall make such a certification with respect to each applicable clinical trial that is required to be submitted in an application or report for licensure, approval, or clearance (under section 351 of this Act or section 505, 510(k), 515, or 520(m) of the Federal Food, Drug, and Cosmetic Act, as applicable) of the use studied in the clinical trial.

"(III) TWO-YEAR LIMITATION.—The responsible party shall submit to the Director of NIH for inclusion in the registry and results data bank the clinical trial information subject to subclause (I) on the date that is 2 years after the date a certification under clause (iii) was made to the Director of NIH, if an action referred to in item (aa), (bb), or (cc) of subclause (I) has not occurred by such date.

"(vi) EXTENSIONS.—The Director of NIH may provide an extension of the deadline for submission of clinical trial information under clause (i) if the responsible party for the trial submits to the Director a written request that demonstrates good cause for the extension and provides an estimate of the date on which the information will be submitted. The Director of NIH may grant more than one such extension for a clinical trial.

Deadline.

"(F) NOTICE TO DIRECTOR OF NIH.—The Commissioner of Food and Drugs shall notify the Director of NIH when there is an action described in subparagraph (E)(iv) or item (aa), (bb), or (cc) of subparagraph (E)(v)(I) with respect to an application or a report that includes a certification required under paragraph (5)(B) of such action not later than 30 days after such action.

Public information. Deadline.

"(G) POSTING OF DATA.—The Director of NIH shall ensure that the clinical trial information described in subparagraphs (C) and (D) for an applicable clinical trial submitted in accordance with this paragraph is posted publicly in the registry and results database not later than 30 days after such submission.

PPLPC051000064168

PUBLIC LAW 110–85—SEPT. 27, 2007          121 STAT. 915

"(H) WAIVERS REGARDING CERTAIN CLINICAL TRIAL RESULTS.—The Secretary may waive any applicable requirements of this paragraph for an applicable clinical trial, upon a written request from the responsible party, if the Secretary determines that extraordinary circumstances justify the waiver and that providing the waiver is consistent with the protection of public health, or in the interest of national security. Not later than 30 days after any part of a waiver is granted, the Secretary shall notify, in writing, the appropriate committees of Congress of the waiver and provide an explanation for why the waiver was granted.

*Deadline.*
*Notification.*

"(I) ADVERSE EVENTS.—

"(i) REGULATIONS.—Not later than 18 months after the date of the enactment of the Food and Drug Administration Amendments Act of 2007, the Secretary shall by regulation determine the best method for including in the registry and results data bank appropriate results information on serious adverse and frequent adverse events for drugs described in subparagraph (C) in a manner and form that is useful and not misleading to patients, physicians, and scientists.

*Deadline.*

"(ii) DEFAULT.—If the Secretary fails to issue the regulation required by clause (i) by the date that is 24 months after the date of the enactment of the Food and Drug Administration Amendments Act of 2007, clause (iii) shall take effect.

*Effective date.*

"(iii) ADDITIONAL ELEMENTS.—Upon the application of clause (ii), the Secretary shall include in the registry and results data bank for drugs described in subparagraph (C), in addition to the clinical trial information described in subparagraph (C), the following elements:

"(I) SERIOUS ADVERSE EVENTS.—A table of anticipated and unanticipated serious adverse events grouped by organ system, with number and frequency of such event in each arm of the clinical trial.

"(II) FREQUENT ADVERSE EVENTS.—A table of anticipated and unanticipated adverse events that are not included in the table described in subclause (I) that exceed a frequency of 5 percent within any arm of the clinical trial, grouped by organ system, with number and frequency of such event in each arm of the clinical trial.

"(iv) POSTING OF OTHER INFORMATION.—In carrying out clause (iii), the Secretary shall, in consultation with experts in risk communication, post with the tables information to enhance patient understanding and to ensure such tables do not mislead patients or the lay public.

"(v) RELATION TO SUBPARAGRAPH (C).—Clinical trial information included in the registry and results data bank pursuant to this subparagraph is deemed to be clinical trial information included in such data bank pursuant to subparagraph (C).

"(4) ADDITIONAL SUBMISSIONS OF CLINICAL TRIAL INFORMATION.—

Case: 1:17-md-02804-DAP Doc #: 2347-12 Filed: 08/14/19 41 of 51. PageID #: 377989

"(A) VOLUNTARY SUBMISSIONS.—A responsible party for a clinical trial that is not an applicable clinical trial, or that is an applicable clinical trial that is not subject to paragraph (2)(C), may submit complete clinical trial information described in paragraph (2) or paragraph (3) provided the responsible party submits clinical trial information for each applicable clinical trial that is required to be submitted under section 351 or under section 505, 510(k), 515, or 520(m) of the Federal Food, Drug, and Cosmetic Act in an application or report for licensure, approval, or clearance of the drug or device for the use studied in the clinical trial.

"(B) REQUIRED SUBMISSIONS.—

"(i) IN GENERAL.—Notwithstanding paragraphs (2) and (3) and subparagraph (A), in any case in which the Secretary determines for a specific clinical trial described in clause (ii) that posting in the registry and results data bank of clinical trial information for such clinical trial is necessary to protect the public health—

"(I) the Secretary may require by notification that such information be submitted to the Secretary in accordance with paragraphs (2) and (3) except with regard to timing of submission;

Deadline.

"(II) unless the responsible party submits a certification under paragraph (3)(E)(iii), such information shall be submitted not later than 30 days after the date specified by the Secretary in the notification; and

"(III) failure to comply with the requirements under subclauses (I) and (II) shall be treated as a violation of the corresponding requirement of such paragraphs.

"(ii) CLINICAL TRIALS DESCRIBED.—A clinical trial described in this clause is—

"(I) an applicable clinical trial for a drug that is approved under section 505 of the Federal Food, Drug, and Cosmetic Act or licensed under section 351 of this Act or for a device that is cleared under section 510(k) of the Federal Food, Drug, and Cosmetic Act or approved under section 515 or section 520(m) of such Act, whose completion date is on or after the date 10 years before the date of the enactment of the Food and Drug Administration Amendments Act of 2007; or

"(II) an applicable clinical trial that is described by both by paragraph (2)(C) and paragraph (3)(D)(ii)(II)).

"(C) UPDATES TO CLINICAL TRIAL DATA BANK.—

Deadlines.

"(i) SUBMISSION OF UPDATES.—The responsible party for an applicable clinical trial shall submit to the Director of NIH for inclusion in the registry and results data bank updates to reflect changes to the clinical trial information submitted under paragraph (2). Such updates—

"(I) shall be provided not less than once every 12 months, unless there were no changes to the

PUBLIC LAW 110–85—SEPT. 27, 2007     121 STAT. 917

clinical trial information during the preceding 12-month period;

"(II) shall include identification of the dates of any such changes;

"(III) not later than 30 days after the recruitment status of such clinical trial changes, shall include an update of the recruitment status; and

"(IV) not later than 30 days after the completion date of the clinical trial, shall include notification to the Director that such clinical trial is complete.

"(ii) PUBLIC AVAILABILITY OF UPDATES.—The Director of NIH shall make updates submitted under clause (i) publicly available in the registry data bank. Except with regard to overall recruitment status, individual site status, location, and contact information, the Director of NIH shall ensure that updates to elements required under subclauses (I) to (V) of paragraph (2)(A)(ii) do not result in the removal of any information from the original submissions or any preceding updates, and information in such databases is presented in a manner that enables users to readily access each original element submission and to track the changes made by the updates. The Director of NIH shall provide a link from the table of primary and secondary outcomes required under paragraph (3)(C)(ii) to the tracked history required under this clause of the primary and secondary outcome measures submitted under paragraph (2)(A)(ii)(I)(ll).

"(5) COORDINATION AND COMPLIANCE.—

"(A) CLINICAL TRIALS SUPPORTED BY GRANTS FROM FEDERAL AGENCIES.—

"(i) GRANTS FROM CERTAIN FEDERAL AGENCIES.— If an applicable clinical trial is funded in whole or in part by a grant from any agency of the Department of Health and Human Services, including the Food and Drug Administration, the National Institutes of Health, or the Agency for Healthcare Research and Quality, any grant or progress report forms required under such grant shall include a certification that the responsible party has made all required submissions to the Director of NIH under paragraphs (2) and (3). *Certification.*

"(ii) VERIFICATION BY FEDERAL AGENCIES.—The heads of the agencies referred to in clause (i), as applicable, shall verify that the clinical trial information for each applicable clinical trial for which a grantee is the responsible party has been submitted under paragraphs (2) and (3) before releasing any remaining funding for a grant or funding for a future grant to such grantee.

"(iii) NOTICE AND OPPORTUNITY TO REMEDY.—If the head of an agency referred to in clause (i), as applicable, verifies that a grantee has not submitted clinical trial information as described in clause (ii), such agency head shall provide notice to such grantee of such non-compliance and allow such grantee 30 days *Deadline.*

121 STAT. 918          PUBLIC LAW 110–85—SEPT. 27, 2007

to correct such non-compliance and submit the required clinical trial information.

"(iv) CONSULTATION WITH OTHER FEDERAL AGENCIES.—The Secretary shall—

"(I) consult with other agencies that conduct research involving human subjects in accordance with any section of part 46 of title 45, Code of Federal Regulations (or any successor regulations), to determine if any such research is an applicable clinical trial; and

*Procedures.*

"(II) develop with such agencies procedures comparable to those described in clauses (i), (ii), and (iii) to ensure that clinical trial information for such applicable clinical trial is submitted under paragraphs (2) and (3).

"(B) CERTIFICATION TO ACCOMPANY DRUG, BIOLOGICAL PRODUCT, AND DEVICE SUBMISSIONS.—At the time of submission of an application under section 505 of the Federal Food, Drug, and Cosmetic Act, section 515 of such Act, section 520(m) of such Act, or section 351 of this Act, or submission of a report under section 510(k) of such Act, such application or submission shall be accompanied by a certification that all applicable requirements of this subsection have been met. Where available, such certification shall include the appropriate National Clinical Trial control numbers.

"(C) QUALITY CONTROL.—

"(i) PILOT QUALITY CONTROL PROJECT.—Until the effective date of the regulations issued under paragraph (3)(D), the Secretary, acting through the Director of NIH and the Commissioner of Food and Drugs, shall conduct a pilot project to determine the optimal method of verification to help to ensure that the clinical trial information submitted under paragraph (3)(C) is non-promotional and is not false or misleading in any particular under subparagraph (D). The Secretary shall use the publicly available information described in paragraph (3)(A) and any other information available to the Secretary about applicable clinical trials to verify the accuracy of the clinical trial information submitted under paragraph (3)(C).

*Deadline.*

"(ii) NOTICE OF COMPLIANCE.—If the Secretary determines that any clinical trial information was not submitted as required under this subsection, or was submitted but is false or misleading in any particular, the Secretary shall notify the responsible party and give such party an opportunity to remedy such non-compliance by submitting the required revised clinical trial information not later than 30 days after such notification.

"(D) TRUTHFUL CLINICAL TRIAL INFORMATION.—

"(i) IN GENERAL.—The clinical trial information submitted by a responsible party under this subsection shall not be false or misleading in any particular.

"(ii) EFFECT.—Clause (i) shall not have the effect of—

Case: 1:17-md-02804-DAP  Doc #: 2347-12  Filed:  08/14/19  44 of 51.  PageID #: 377992

"(I) requiring clinical trial information with respect to an applicable clinical trial to include information from any source other than such clinical trial involved; or

"(II) requiring clinical trial information described in paragraph (3)(D) to be submitted for purposes of paragraph (3)(C).

"(E) PUBLIC NOTICES.—

"(i) NOTICE OF VIOLATIONS.—If the responsible party for an applicable clinical trial fails to submit clinical trial information for such clinical trial as required under paragraphs (2) or (3), the Director of NIH shall include in the registry and results data bank entry for such clinical trial a notice—

"(I) that the responsible party is not in compliance with this Act by—

"(aa) failing to submit required clinical trial information; or

"(bb) submitting false or misleading clinical trial information;

"(II) of the penalties imposed for the violation, if any; and

"(III) whether the responsible party has corrected the clinical trial information in the registry and results data bank.

"(ii) NOTICE OF FAILURE TO SUBMIT PRIMARY AND SECONDARY OUTCOMES.—If the responsible party for an applicable clinical trial fails to submit the primary and secondary outcomes as required under section 2(A)(ii)(I)(ll), the Director of NIH shall include in the registry and results data bank entry for such clinical trial a notice that the responsible party is not in compliance by failing to register the primary and secondary outcomes in accordance with this act, and that the primary and secondary outcomes were not publicly disclosed in the database before conducting the clinical trial.

"(iii) FAILURE TO SUBMIT STATEMENT.—The notice under clause (i) for a violation described in clause (i)(I)(aa) shall include the following statement: 'The entry for this clinical trial was not complete at the time of submission, as required by law. This may or may not have any bearing on the accuracy of the information in the entry.'.

"(iv) SUBMISSION OF FALSE INFORMATION STATEMENT.—The notice under clause (i) for a violation described in clause (i)(I)(bb) shall include the following statement: 'The entry for this clinical trial was found to be false or misleading and therefore not in compliance with the law.'.

"(v) NON-SUBMISSION OF STATEMENT.—The notice under clause (ii) for a violation described in clause (ii) shall include the following statement: 'The entry for this clinical trial did not contain information on the primary and secondary outcomes at the time of submission, as required by law. This may or may not

PPLPC051000064173

Case: 1:17-md-02804-DAP  Doc #: 2347-12  Filed:  08/14/19  45 of 51.  PageID #: 377993

have any bearing on the accuracy of the information in the entry.'.

"(vi) COMPLIANCE SEARCHES.—The Director of NIH shall provide that the public may easily search the registry and results data bank for entries that include notices required under this subparagraph.

"(6) LIMITATION ON DISCLOSURE OF CLINICAL TRIAL INFORMATION.—

"(A) IN GENERAL.—Nothing in this subsection (or under section 552 of title 5, United States Code) shall require the Secretary to publicly disclose, by any means other than the registry and results data bank, information described in subparagraph (B).

"(B) INFORMATION DESCRIBED.—Information described in this subparagraph is—

"(i) information submitted to the Director of NIH under this subsection, or information of the same general nature as (or integrally associated with) the information so submitted; and

"(ii) information not otherwise publicly available, including because it is protected from disclosure under section 552 of title 5, United States Code.

"(7) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated to carry out this subsection $10,000,000 for each fiscal year.".

(b) CONFORMING AMENDMENTS.—

(1) PROHIBITED ACTS.—Section 301 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 331) is amended by adding at the end the following:

"(jj)(1) The failure to submit the certification required by section 402(j)(5)(B) of the Public Health Service Act, or knowingly submitting a false certification under such section.

"(2) The failure to submit clinical trial information required under subsection (j) of section 402 of the Public Health Service Act.

"(3) The submission of clinical trial information under subsection (j) of section 402 of the Public Health Service Act that is false or misleading in any particular under paragraph (5)(D) of such subsection (j).".

(2) CIVIL MONEY PENALTIES.—Subsection (f) of section 303 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 333), as redesignated by section 226, is amended—

(A) by redesignating paragraphs (3), (4), and (5) as paragraphs (5), (6), and (7), respectively;

(B) by inserting after paragraph (2) the following:

Penalties.

"(3)(A) Any person who violates section 301(jj) shall be subject to a civil monetary penalty of not more than $10,000 for all violations adjudicated in a single proceeding.

Deadline.

"(B) If a violation of section 301(jj) is not corrected within the 30-day period following notification under section 402(j)(5)(C)(ii), the person shall, in addition to any penalty under subparagraph (A), be subject to a civil monetary penalty of not more than $10,000 for each day of the violation after such period until the violation is corrected.";

(C) in paragraph (2)(C), by striking "paragraph (3)(A)" and inserting "paragraph (5)(A)";

PUBLIC LAW 110–85—SEPT. 27, 2007          121 STAT. 921

(D) in paragraph (5), as so redesignated, by striking "paragraph (1) or (2)" each place it appears and inserting "paragraph (1), (2), or (3)";

(E) in paragraph (6), as so redesignated, by striking "paragraph (3)(A)" and inserting "paragraph (5)(A)"; and

(F) in paragraph (7), as so redesignated, by striking "paragraph (4)" each place it appears and inserting "paragraph (6)".

(3) NEW DRUGS AND DEVICES.—                                          Certification.

(A) INVESTIGATIONAL NEW DRUGS.—Section 505(i) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355(i)) is amended in paragraph (4), by adding at the end the following: "The Secretary shall update such regulations    Regulations. to require inclusion in the informed consent documents and process a statement that clinical trial information for such clinical investigation has been or will be submitted for inclusion in the registry data bank pursuant to subsection (j) of section 402 of the Public Health Service Act.".

(B) NEW DRUG APPLICATIONS.—Section 505(b) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355(b)) is amended by adding at the end the following:

"(6) An application submitted under this subsection shall be accompanied by the certification required under section 402(j)(5)(B) of the Public Health Service Act. Such certification shall not be considered an element of such application.".

(C) DEVICE REPORTS UNDER SECTION 510(k).—Section 510(k) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360(k)) is amended by adding at the end the following:

"A notification submitted under this subsection that contains clinical trial data for an applicable device clinical trial (as defined in section 402(j)(1) of the Public Health Service Act) shall be accompanied by the certification required under section 402(j)(5)(B) of such Act. Such certification shall not be considered an element of such notification.".

(D) DEVICE PREMARKET APPROVAL APPLICATION.—Section 515(c)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360e(c)(1)) is amended—

(i) in subparagraph (F), by striking "; and" and inserting a semicolon;

(ii) by redesignating subparagraph (G) as subparagraph (H); and

(iii) by inserting after subparagraph (F) the following:

"(G) the certification required under section 402(j)(5)(B) of the Public Health Service Act (which shall not be considered an element of such application); and".

(E) HUMANITARIAN DEVICE EXEMPTION.—Section 520(m)(2) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360e(c)) is amended in the first sentence in    21 USC 360j. the matter following subparagraph (C), by inserting at the end before the period "and such application shall include the certification required under section 402(j)(5)(B) of the Public Health Service Act (which shall not be considered an element of such application)".

(c) SURVEILLANCES.—Not later than 12 months after the date    Deadline. of the enactment of this Act, the Secretary of Health and Human    Guidance.
42 USC 282 note.

121 STAT. 922        PUBLIC LAW 110–85—SEPT. 27, 2007

Services shall issue guidance on how the requirements of section 402(j) of the Public Health Service Act, as added by this section, apply to a pediatric postmarket surveillance described in paragraph (1)(A)(ii)(II) of such section 402(j) that is not a clinical trial.

42 USC 282 note.

(d) PREEMPTION.—

(1) IN GENERAL.—Upon the expansion of the registry and results data bank under section 402(j)(3)(D) of the Public Health Service Act, as added by this section, no State or political subdivision of a State may establish or continue in effect any requirement for the registration of clinical trials or for the inclusion of information relating to the results of clinical trials in a database.

(2) RULE OF CONSTRUCTION.—The fact of submission of clinical trial information, if submitted in compliance with subsection (j) of section 402 of the Public Health Service Act (as amended by this section), that relates to a use of a drug or device not included in the official labeling of the approved drug or device shall not be construed by the Secretary of Health and Human Services or in any administrative or judicial proceeding, as evidence of a new intended use of the drug or device that is different from the intended use of the drug or device set forth in the official labeling of the drug or device. The availability of clinical trial information through the registry and results data bank under such subsection (j), if submitted in compliance with such subsection, shall not be considered as labeling, adulteration, or misbranding of the drug or device under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.).

# TITLE IX—ENHANCED AUTHORITIES REGARDING POSTMARKET SAFETY OF DRUGS

## Subtitle A—Postmarket Studies and Surveillance

### SEC. 901. POSTMARKET STUDIES AND CLINICAL TRIALS REGARDING HUMAN DRUGS; RISK EVALUATION AND MITIGATION STRATEGIES.

(a) IN GENERAL.—Section 505 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355) is amended by adding at the end the following subsections:

"(o) POSTMARKET STUDIES AND CLINICAL TRIALS; LABELING.—

"(1) IN GENERAL.—A responsible person may not introduce or deliver for introduction into interstate commerce the new drug involved if the person is in violation of a requirement established under paragraph (3) or (4) with respect to the drug.

"(2) DEFINITIONS.—For purposes of this subsection:

"(A) RESPONSIBLE PERSON.—The term 'responsible person' means a person who—

"(i) has submitted to the Secretary a covered application that is pending; or

PPLPC051000064176

PUBLIC LAW 110–85—SEPT. 27, 2007          121 STAT. 923

"(ii) is the holder of an approved covered application.

"(B) COVERED APPLICATION.—The term 'covered application' means—

"(i) an application under subsection (b) for a drug that is subject to section 503(b); and

"(ii) an application under section 351 of the Public Health Service Act.

"(C) NEW SAFETY INFORMATION; SERIOUS RISK.—The terms 'new safety information', 'serious risk', and 'signal of a serious risk' have the meanings given such terms in section 505–1(b).

"(3) STUDIES AND CLINICAL TRIALS.—

"(A) IN GENERAL.—For any or all of the purposes specified in subparagraph (B), the Secretary may, subject to subparagraph (D), require a responsible person for a drug to conduct a postapproval study or studies of the drug, or a postapproval clinical trial or trials of the drug, on the basis of scientific data deemed appropriate by the Secretary, including information regarding chemically-related or pharmacologically-related drugs.

"(B) PURPOSES OF STUDY OR CLINICAL TRIAL.—The purposes referred to in this subparagraph with respect to a postapproval study or postapproval clinical trial are the following:

"(i) To assess a known serious risk related to the use of the drug involved.

"(ii) To assess signals of serious risk related to the use of the drug.

"(iii) To identify an unexpected serious risk when available data indicates the potential for a serious risk.

"(C) ESTABLISHMENT OF REQUIREMENT AFTER APPROVAL OF COVERED APPLICATION.—The Secretary may require a postapproval study or studies or postapproval clinical trial or trials for a drug for which an approved covered application is in effect as of the date on which the Secretary seeks to establish such requirement only if the Secretary becomes aware of new safety information.

"(D) DETERMINATION BY SECRETARY.—

"(i) POSTAPPROVAL STUDIES.—The Secretary may not require the responsible person to conduct a study under this paragraph, unless the Secretary makes a determination that the reports under subsection (k)(1) and the active postmarket risk identification and analysis system as available under subsection (k)(3) will not be sufficient to meet the purposes set forth in subparagraph (B).

"(ii) POSTAPPROVAL CLINICAL TRIALS.—The Secretary may not require the responsible person to conduct a clinical trial under this paragraph, unless the Secretary makes a determination that a postapproval study or studies will not be sufficient to meet the purposes set forth in subparagraph (B).

"(E) NOTIFICATION; TIMETABLES; PERIODIC REPORTS.—

"(i) NOTIFICATION.—The Secretary shall notify the responsible person regarding a requirement under this

paragraph to conduct a postapproval study or clinical trial by the target dates for communication of feedback from the review team to the responsible person regarding proposed labeling and postmarketing study commitments as set forth in the letters described in section 101(c) of the Food and Drug Administration Amendments Act of 2007.

"(ii) TIMETABLE; PERIODIC REPORTS.—For each study or clinical trial required to be conducted under this paragraph, the Secretary shall require that the responsible person submit a timetable for completion of the study or clinical trial. With respect to each study required to be conducted under this paragraph or otherwise undertaken by the responsible person to investigate a safety issue, the Secretary shall require the responsible person to periodically report to the Secretary on the status of such study including whether any difficulties in completing the study have been encountered. With respect to each clinical trial required to be conducted under this paragraph or otherwise undertaken by the responsible person to investigate a safety issue, the Secretary shall require the responsible person to periodically report to the Secretary on the status of such clinical trial including whether enrollment has begun, the number of participants enrolled, the expected completion date, whether any difficulties completing the clinical trial have been encountered, and registration information with respect to the requirements under section 402(j) of the Public Health Service Act. If the responsible person fails to comply with such timetable or violates any other requirement of this subparagraph, the responsible person shall be considered in violation of this subsection, unless the responsible person demonstrates good cause for such noncompliance or such other violation. The Secretary shall determine what constitutes good cause under the preceding sentence.

"(F) DISPUTE RESOLUTION.—The responsible person may appeal a requirement to conduct a study or clinical trial under this paragraph using dispute resolution procedures established by the Secretary in regulation and guidance.

Deadlines.

"(4) SAFETY LABELING CHANGES REQUESTED BY SECRETARY.—

Notification.

"(A) NEW SAFETY INFORMATION.—If the Secretary becomes aware of new safety information that the Secretary believes should be included in the labeling of the drug, the Secretary shall promptly notify the responsible person or, if the same drug approved under section 505(b) is not currently marketed, the holder of an approved application under 505(j).

"(B) RESPONSE TO NOTIFICATION.—Following notification pursuant to subparagraph (A), the responsible person or the holder of the approved application under section 505(j) shall within 30 days—

"(i) submit a supplement proposing changes to the approved labeling to reflect the new safety information,

PUBLIC LAW 110–85—SEPT. 27, 2007      121 STAT. 925

including changes to boxed warnings, contraindications, warnings, precautions, or adverse reactions; or

"(ii) notify the Secretary that the responsible person or the holder of the approved application under section 505(j) does not believe a labeling change is warranted and submit a statement detailing the reasons why such a change is not warranted.

Notification.

"(C) REVIEW.—Upon receipt of such supplement, the Secretary shall promptly review and act upon such supplement. If the Secretary disagrees with the proposed changes in the supplement or with the statement setting forth the reasons why no labeling change is necessary, the Secretary shall initiate discussions to reach agreement on whether the labeling for the drug should be modified to reflect the new safety information, and if so, the contents of such labeling changes.

"(D) DISCUSSIONS.—Such discussions shall not extend for more than 30 days after the response to the notification under subparagraph (B), unless the Secretary determines an extension of such discussion period is warranted.

"(E) ORDER.—Within 15 days of the conclusion of the discussions under subparagraph (D), the Secretary may issue an order directing the responsible person or the holder of the approved application under section 505(j) to make such a labeling change as the Secretary deems appropriate to address the new safety information. Within 15 days of such an order, the responsible person or the holder of the approved application under section 505(j) shall submit a supplement containing the labeling change.

"(F) DISPUTE RESOLUTION.—Within 5 days of receiving an order under subparagraph (E), the responsible person or the holder of the approved application under section 505(j) may appeal using dispute resolution procedures established by the Secretary in regulation and guidance.

"(G) VIOLATION.—If the responsible person or the holder of the approved application under section 505(j) has not submitted a supplement within 15 days of the date of such order under subparagraph (E), and there is no appeal or dispute resolution proceeding pending, the responsible person or holder shall be considered to be in violation of this subsection. If at the conclusion of any dispute resolution procedures the Secretary determines that a supplement must be submitted and such a supplement is not submitted within 15 days of the date of that determination, the responsible person or holder shall be in violation of this subsection.

"(H) PUBLIC HEALTH THREAT.—Notwithstanding subparagraphs (A) through (F), if the Secretary concludes that such a labeling change is necessary to protect the public health, the Secretary may accelerate the timelines in such subparagraphs.

"(I) RULE OF CONSTRUCTION.—This paragraph shall not be construed to affect the responsibility of the responsible person or the holder of the approved application under section 505(j) to maintain its label in accordance with existing requirements, including subpart B of part 201

Case: 1:17-md-02804-DAP  Doc #: 2347-12  Filed:  08/14/19  51 of 51.  PageID #: 377999

and sections 314.70 and 601.12 of title 21, Code of Federal Regulations (or any successor regulations).

"(5) NON-DELEGATION.—Determinations by the Secretary under this subsection for a drug shall be made by individuals at or above the level of individuals empowered to approve a drug (such as division directors within the Center for Drug Evaluation and Research).

"(p) RISK EVALUATION AND MITIGATION STRATEGY.—

"(1) IN GENERAL.—A person may not introduce or deliver for introduction into interstate commerce a new drug if—

"(A)(i) the application for such drug is approved under subsection (b) or (j) and is subject to section 503(b); or

"(ii) the application for such drug is approved under section 351 of the Public Health Service Act; and

"(B) a risk evaluation and mitigation strategy is required under section 505–1 with respect to the drug and the person fails to maintain compliance with the requirements of the approved strategy or with other requirements under section 505–1, including requirements regarding assessments of approved strategies.

"(2) CERTAIN POSTMARKET STUDIES.—The failure to conduct a postmarket study under section 506, subpart H of part 314, or subpart E of part 601 of title 21, Code of Federal Regulations (or any successor regulations), is deemed to be a violation of paragraph (1).".

(b) REQUIREMENTS REGARDING STRATEGIES.—Chapter V of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 351 et seq.) is amended by inserting after section 505 the following section:

21 USC 355–1.     **"SEC. 505–1. RISK EVALUATION AND MITIGATION STRATEGIES.**

"(a) SUBMISSION OF PROPOSED STRATEGY.—

"(1) INITIAL APPROVAL.—If the Secretary, in consultation with the office responsible for reviewing the drug and the office responsible for postapproval safety with respect to the drug, determines that a risk evaluation and mitigation strategy is necessary to ensure that the benefits of the drug outweigh the risks of the drug, and informs the person who submits such application of such determination, then such person shall submit to the Secretary as part of such application a proposed risk evaluation and mitigation strategy. In making such a determination, the Secretary shall consider the following factors:

"(A) The estimated size of the population likely to use the drug involved.

"(B) The seriousness of the disease or condition that is to be treated with the drug.

"(C) The expected benefit of the drug with respect to such disease or condition.

"(D) The expected or actual duration of treatment with the drug.

"(E) The seriousness of any known or potential adverse events that may be related to the drug and the background incidence of such events in the population likely to use the drug.

"(F) Whether the drug is a new molecular entity.

"(2) POSTAPPROVAL REQUIREMENT.—

PPLPC051000064180