# PSJ3
# Exhibit 203B

PUBLIC LAW 104-237—OCT. 3, 1996          110 STAT. 3099

Public Law 104-237
104th Congress
S. 1965

# An Act

To prevent the illegal manufacturing and use of methamphetamine.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

## SECTION 1. SHORT TITLE AND TABLE OF CONTENTS.

(a) SHORT TITLE.—This Act may be cited as the "Comprehensive Methamphetamine Control Act of 1996".

(b) TABLE OF CONTENTS.—The table of contents for this Act is as follows:

Sec. 1. Short title and table of contents.
Sec. 2. Findings.

TITLE I—IMPORTATION OF METHAMPHETAMINE AND PRECURSOR CHEMICALS

Sec. 101. Support for international efforts to control drugs.
Sec. 102. Penalties for manufacture of listed chemicals outside the United States with intent to import them into the United States.

TITLE II—PROVISIONS TO CONTROL THE MANUFACTURE OF METHAMPHETAMINE

Sec. 201. Seizure and forfeiture of regulated chemicals.
Sec. 202. Study and report on measures to prevent sales of agents used in methamphetamine production.
Sec. 203. Increased penalties for manufacture and possession of equipment used to make controlled substances.
Sec. 204. Addition of iodine and hydrochloric gas to list II.
Sec. 205. Civil penalties for firms that supply precursor chemicals.
Sec. 206. Injunctive relief.
Sec. 207. Restitution for cleanup of clandestine laboratory sites.
Sec. 208. Record retention.
Sec. 209. Technical amendments.
Sec. 210. Withdrawal of regulations.

TITLE III—INCREASED PENALTIES FOR TRAFFICKING AND MANUFACTURE OF METHAMPHETAMINE AND PRECURSORS

Sec. 301. Penalty increases for trafficking in methamphetamine.
Sec. 302. Enhanced penalties for offenses involving certain listed chemicals.
Sec. 303. Enhanced penalty for dangerous handling of controlled substances: amendment of sentencing guidelines.

TITLE IV—LEGAL MANUFACTURE, DISTRIBUTION, AND SALE OF PRECURSOR CHEMICALS

Sec. 401. Diversion of certain precursor chemicals.
Sec. 402. Mail order restrictions.

TITLE V—EDUCATION AND RESEARCH

Sec. 501. Interagency methamphetamine task force.
Sec. 502. Public health monitoring.
Sec. 503. Public-private education program.
Sec. 504. Suspicious orders task force.

4205

CAH_MDL2804_02202039

PUBLIC LAW 104-237—OCT. 3, 1996

110 STAT. 3100

## SEC. 2. FINDINGS.

The Congress finds the following:

(1) Methamphetamine is a very dangerous and harmful drug. It is highly addictive and is associated with permanent brain damage in long-term users.

(2) The abuse of methamphetamine has increased dramatically since 1990. This increased use has led to devastating effects on individuals and the community, including—

(A) a dramatic increase in deaths associated with methamphetamine ingestion;

(B) an increase in the number of violent crimes associated with methamphetamine ingestion; and

(C) an increase in criminal activity associated with the illegal importation of methamphetamine and precursor compounds to support the growing appetite for this drug in the United States.

(3) Illegal methamphetamine manufacture and abuse presents an imminent public health threat that warrants aggressive law enforcement action, increased research on methamphetamine and other substance abuse, increased coordinated efforts to prevent methamphetamine abuse, and increased monitoring of the public health threat methamphetamine presents to the communities of the United States.

# TITLE I—IMPORTATION OF METHAMPHETAMINE AND PRECURSOR CHEMICALS

## SEC. 101. SUPPORT FOR INTERNATIONAL EFFORTS TO CONTROL DRUGS.

The Attorney General, in consultation with the Secretary of State, shall coordinate international drug enforcement efforts to decrease the movement of methamphetamine and methamphetamine precursors into the United States.

## SEC. 102. PENALTIES FOR MANUFACTURE OF LISTED CHEMICALS OUTSIDE THE UNITED STATES WITH INTENT TO IMPORT THEM INTO THE UNITED STATES.

(a) UNLAWFUL IMPORTATION.—Section 1009(a) of the Controlled Substances Import and Export Act (21 U.S.C. 959(a)) is amended—

(1) in the matter before paragraph (1), by inserting "or listed chemical" after "schedule I or II"; and

(2) in paragraphs (1) and (2), by inserting "or chemical" after "substance".

(b) UNLAWFUL MANUFACTURE OR DISTRIBUTION.—Paragraphs (1) and (2) of section 1009(b) of the Controlled Substances Import and Export Act (21 U.S.C. 959(b)) are amended by inserting "or listed chemical" after "controlled substance".

(c) PENALTIES.—Section 1010(d) of the Controlled Substances Import and Export Act (21 U.S.C. 960(d)) is amended—

(1) in paragraph (5), by striking "or" at the end;

(2) in paragraph (6), by striking the comma at the end and inserting "; or"; and

(3) by adding at the end the following:

4206

CAH_MDL2804_02202040

"(7) manufactures, possesses with intent to distribute, or distributes a listed chemical in violation of section 959 of this title.".

# TITLE II—PROVISIONS TO CONTROL THE MANUFACTURE OF METH-AMPHETAMINE

### SEC. 201. SEIZURE AND FORFEITURE OF REGULATED CHEMICALS.

(a) PENALTIES FOR SIMPLE POSSESSION.—Section 404 of the Controlled Substances Act (21 U.S.C. 844) is amended—

(1) in subsection (a)—

(A) by adding after the first sentence the following: "It shall be unlawful for any person knowingly or intentionally to possess any list I chemical obtained pursuant to or under authority of a registration issued to that person under section 303 of this title or section 1008 of title III if that registration has been revoked or suspended, if that registration has expired, or if the registrant has ceased to do business in the manner contemplated by his registration."; and

(B) by striking "drug or narcotic" and inserting "drug, narcotic, or chemical" each place it appears; and

(2) in subsection (c), by striking "drug or narcotic" and inserting "drug, narcotic, or chemical".

(b) FORFEITURES.—Section 511(a) of the Controlled Substances Act (21 U.S.C. 881(a)) is amended—

(1) in paragraphs (2) and (6), by inserting "or listed chemical" after "controlled substance" each place it appears; and

(2) in paragraph (9), by—

(A) inserting "dispensed, acquired," after "distributed," both places it appears; and

(B) striking "a felony provision of".

(c) SEIZURE.—Section 607 of the Tariff Act of 1930 (19 U.S.C. 1607) is amended—

(1) in subsection (a)(3), by inserting "or listed chemical" after "controlled substance"; and

(2) by amending subsection (b) to read as follows:

"(b) As used in this section, the terms 'controlled substance' and 'listed chemical' have the meaning given such terms in section 102 of the Controlled Substances Act (21 U.S.C. 802).".

### SEC. 202. STUDY AND REPORT ON MEASURES TO PREVENT SALES OF AGENTS USED IN METHAMPHETAMINE PRODUCTION.

(a) STUDY.—The Attorney General of the United States shall conduct a study on possible measures to effectively prevent the diversion of red phosphorous, iodine, hydrochloric gas, and other agents for use in the production of methamphetamine. Nothing in this section shall preclude the Attorney General from taking any action the Attorney General already is authorized to take with regard to the regulation of listed chemicals under current law.

(b) REPORT.—Not later than January 1, 1998, the Attorney General shall submit a report to the Congress of its findings pursu-

4207

CAH_MDL2804_02202041

ant to the study conducted under subsection (a) on the need for and advisability of preventive measures.

(c) CONSIDERATIONS.—In developing recommendations under subsection (b), the Attorney General shall consider—

(1) the use of red phosphorous, iodine, hydrochloric gas, and other agents in the illegal manufacture of methamphetamine;

(2) the use of red phosphorous, iodine, hydrochloric gas, and other agents for legitimate, legal purposes, and the impact any regulations may have on these legitimate purposes; and

(3) comments and recommendations from law enforcement, manufacturers of such chemicals, and the consumers of such chemicals for legitimate, legal purposes.

SEC. 203. INCREASED PENALTIES FOR MANUFACTURE AND POSSESSION OF EQUIPMENT USED TO MAKE CONTROLLED SUBSTANCES.

(a) IN GENERAL.—Section 403(d) of the Controlled Substances Act (21 U.S.C. 843(d)) is amended—

(1) by striking "(d) Any person" and inserting "(d)(1) Except as provided in paragraph (2), any person"; and

(2) by adding at the end the following:

"(2) Any person who, with the intent to manufacture or to facilitate the manufacture of methamphetamine, violates paragraph (6) or (7) of subsection (a), shall be sentenced to a term of imprisonment of not more than 10 years, a fine of not more than $30,000, or both; except that if any person commits such a violation after one or more prior convictions of that person—

"(A) for a violation of paragraph (6) or (7) of subsection (a);

"(B) for a felony under any other provision of this subchapter or subchapter II of this chapter; or

"(C) under any other law of the United States or any State relating to controlled substances or listed chemicals, has become final, such person shall be sentenced to a term of imprisonment of not more than 20 years, a fine of not more than $60,000, or both.".

(b) SENTENCING COMMISSION.—The United States Sentencing Commission shall amend the sentencing guidelines to ensure that the manufacture of methamphetamine in violation of section 403(d)(2) of the Controlled Substances Act, as added by subsection (a), is treated as a significant violation.

SEC. 204. ADDITION OF IODINE AND HYDROCHLORIC GAS TO LIST II.

(a) IN GENERAL.—Section 102(35) of the Controlled Substances Act (21 U.S.C. 802(35)) is amended by adding at the end the following:

"(I) Iodine.

"(J) Hydrochloric gas.".

(b) IMPORTATION AND EXPORTATION REQUIREMENTS.—(1) Iodine shall not be subject to the requirements for listed chemicals provided in section 1018 of the Controlled Substances Import and Export Act (21 U.S.C. 971).

(2) EFFECT OF EXCEPTION.—The exception made by paragraph (1) shall not limit the authority of the Attorney General to impose the requirements for listed chemicals provided in section 1018 of the Controlled Substances Import and Export Act (21 U.S.C. 971).

4208

CAH_MDL2804_02202042

PUBLIC LAW 104-237—OCT. 3, 1996

## SEC. 206. CIVIL PENALTIES FOR FIRMS THAT SUPPLY PRECURSOR CHEMICALS.

(a) OFFENSES.—Section 402(a) of the Controlled Substances Act (21 U.S.C. 842(a)) is amended—

(1) in paragraph (9), by striking "or" after the semicolon;

(2) in paragraph (10), by striking the period and inserting "; or"; and

(3) by adding at the end the following:

"(11) to distribute a laboratory supply to a person who uses, or attempts to use, that laboratory supply to manufacture a controlled substance or a listed chemical, in violation of this title or title III, with reckless disregard for the illegal uses to which such a laboratory supply will be put.

As used in paragraph (11), the term 'laboratory supply' means a listed chemical or any chemical, substance, or item on a special surveillance list published by the Attorney General, which contains chemicals, products, materials, or equipment used in the manufacture of controlled substances and listed chemicals. For purposes of paragraph (11), there is a rebuttable presumption of reckless disregard at trial if the Attorney General notifies a firm in writing that a laboratory supply sold by the firm, or any other person or firm, has been used by a customer of the notified firm, or distributed further by that customer, for the unlawful production of controlled substances or listed chemicals a firm distributes and 2 weeks or more after the notification the notified firm distributes a laboratory supply to the customer.".

(b) CIVIL PENALTY.—Section 402(c)(2) of the Controlled Substances Act (21 U.S.C. 842(c)(2)) is amended by adding at the end the following:

"(C) In addition to the penalties set forth elsewhere in this title and title III, any business that violates paragraph (11) of subsection (a) shall, with respect to the first such violation, be subject to a civil penalty of not more than $250,000, but shall not be subject to criminal penalties under this section, and shall, for any succeeding violation, be subject to a civil fine of not more than $250,000 or double the last previously imposed penalty, whichever is greater.".

## SEC. 206. INJUNCTIVE RELIEF.

(a) TEN-YEAR INJUNCTION MAJOR OFFENSES.—Section 401(f) of the Controlled Substances Act (21 U.S.C. 841(f)) is amended by—

(1) inserting "manufacture, exportation," after "distribution,"; and

(2) striking "regulated".

(b) TEN-YEAR INJUNCTION OTHER OFFENSES.—Section 403 of the Controlled Substances Act (21 U.S.C. 843) is amended—

(1) in subsection (e), by—

(A) inserting "manufacture, exportation," after "distribution,"; and

(B) striking "regulated"; and

(2) by adding at the end the following:

"(f) INJUNCTIONS.—(1) In addition to any penalty provided in this section, the Attorney General is authorized to commence a civil action for appropriate declaratory or injunctive relief relating to violations of this section or section 402.

4209

CAH_MDL2804_02202043

PUBLIC LAW 104-237--OCT. 3, 1996          110 STAT. 3104

"(2) Any action under this subsection may be brought in the district court of the United States for the district in which the defendant is located or resides or is doing business.

"(3) Any order or judgment issued by the court pursuant to this subsection shall be tailored to restrain violations of this section or section 402.

"(4) The court shall proceed as soon as practicable to the hearing and determination of such an action. An action under this subsection is governed by the Federal Rules of Civil Procedure except that, if an indictment has been returned against the respondent, discovery is governed by the Federal Rules of Criminal Procedure.".

### SEC. 207. RESTITUTION FOR CLEANUP OF CLANDESTINE LABORATORY SITES.

Section 413 of the Controlled Substances Act (21 U.S.C. 853) is amended by adding at the end the following:

"(q) The court, when sentencing a defendant convicted of an offense under this title or title III involving the manufacture of methamphetamine, may—

"(1) order restitution as provided in sections 3612 and 3664 of title 18, United States Code;

"(2) order the defendant to reimburse the United States for the costs incurred by the United States for the cleanup associated with the manufacture of methamphetamine by the defendant; and

"(3) order restitution to any person injured as a result of the offense as provided in section 3663 of title 18, United States Code.".

### SEC. 208. RECORD RETENTION.

Section 310(a)(1) of the Controlled Substances Act (21 U.S.C. 830(a)(1)) is amended by striking the dash after "transaction" and subparagraphs (A) and (B) and inserting "for two years after the date of the transaction.".

### SEC. 209. TECHNICAL AMENDMENTS.

Section 102 of the Controlled Substances Act (21 U.S.C. 802) is amended—

(1) in paragraph (34), by amending subparagraphs (P), (S), and (U) to read as follows:

"(P) Isosafrole.

"(S) N-Methylephedrine.

"(U) Hydriodic acid."; and

(2) in paragraph (35), by amending subparagraph (G) to read as follows:

"(G) 2-Butanone (or Methyl Ethyl Ketone).".

### SEC. 210. WITHDRAWAL OF REGULATIONS.

The final rule concerning removal of exemption for certain pseudoephedrine products marketed under the Federal Food, Drug, and Cosmetic Act published in the Federal Register of August 7, 1996 (61 FR 40981–40993) is null and void and of no force or effect.

4210

CAH_MDL2804_02202044

# TITLE III—INCREASED PENALTIES FOR TRAFFICKING AND MANUFACTURE OF METHAMPHETAMINE AND PRECURSORS

### SEC. 301. PENALTY INCREASES FOR TRAFFICKING IN METHAMPHETAMINE.

(a) DIRECTIVE TO THE UNITED STATES SENTENCING COMMISSION.—Pursuant to its authority under section 994 of title 28, United States Code, the United States Sentencing Commission shall review and amend its guidelines and its policy statements to provide for increased penalties for unlawful manufacturing, importing, exporting, and trafficking of methamphetamine, and other similar offenses, including unlawful possession with intent to commit any of those offenses, and attempt and conspiracy to commit any of those offenses. The Commission shall submit to Congress explanations therefor and any additional policy recommendations for combating methamphetamine offenses.

(b) IN GENERAL.—In carrying out this section, the Commission shall ensure that the sentencing guidelines and policy statements for offenders convicted of offenses described in subsection (a) and any recommendations submitted under such subsection reflect the heinous nature of such offenses, the need for aggressive law enforcement action to fight such offenses, and the extreme dangers associated with unlawful activity involving methamphetamine, including—

(1) the rapidly growing incidence of methamphetamine abuse and the threat to public safety such abuse poses;

(2) the high risk of methamphetamine addiction;

(3) the increased risk of violence associated with methamphetamine trafficking and abuse; and

(4) the recent increase in the illegal importation of methamphetamine and precursor chemicals.

### SEC. 302. ENHANCED PENALTIES FOR OFFENSES INVOLVING CERTAIN LISTED CHEMICALS.

(a) CONTROLLED SUBSTANCES ACT.—Section 401(d) of the Controlled Substances Act (21 U.S.C. 841(d)) is amended by striking "not more than 10 years," and inserting "not more than 20 years in the case of a violation of paragraph (1) or (2) involving a list I chemical or not more than 10 years in the case of a violation of this subsection other than a violation of paragraph (1) or (2) involving a list I chemical,".

(b) CONTROLLED SUBSTANCE IMPORT AND EXPORT ACT.—Section 1010(d) of the Controlled Substance Import and Export Act (21 U.S.C. 960(d)) is amended by striking "not more than 10 years," and inserting "not more than 20 years in the case of a violation of paragraph (1) or (3) involving a list I chemical or not more than 10 years in the case of a violation of this subsection other than a violation of paragraph (1) or (3) involving a list I chemical,".

(c) SENTENCING GUIDELINES.—

(1) IN GENERAL.—The United States Sentencing Commission shall, in accordance with the procedures set forth in section 21(a) of the Sentencing Act of 1987, as though the authority of that section had not expired, amend the sentencing guidelines

4211

CAH_MDL2804_02202045

PUBLIC LAW 104-237—OCT. 3, 1996            110 STAT. 3106

to increase by at least two levels the offense level for offenses involving list I chemicals under—

(A) section 401(d) (1) and (2) of the Controlled Substances Act (21 U.S.C 841(d) (1) and (2)); and

(B) section 1010(d) (1) and (3) of the Controlled Substance Import and Export Act (21 U.S.C. 960(d) (1) and (3)).

(2) REQUIREMENT.—In carrying out this subsection, the Commission shall ensure that the offense levels for offenses referred to in paragraph (1) are calculated proportionally on the basis of the quantity of controlled substance that reasonably could have been manufactured in a clandestine setting using the quantity of the list I chemical possessed, distributed, imported, or exported.

SEC. 303. ENHANCED PENALTY FOR DANGEROUS HANDLING OF CONTROLLED SUBSTANCES: AMENDMENT OF SENTENCING GUIDELINES.

(a) IN GENERAL.—Pursuant to its authority under section 994 of title 28, United States Code, the United States Sentencing Commission shall determine whether the Sentencing Guidelines adequately punish the offenses described in subsection (b) and, if not, promulgate guidelines or amend existing guidelines to provide an appropriate enhancement of the punishment for a defendant convicted of such an offense.

(b) OFFENSE.—The offense referred to in subsection (a) is a violation of section 401(d), 401(g)(1), 403(a)(6), or 403(a)(7) of the Controlled Substances Act (21 U.S.C. 841(d), 841(g)(1), 843(a)(6), and 843(a)(7)), in cases in which in the commission of the offense the defendant violated—

(1) subsection (d) or (e) of section 3008 of the Solid Waste Disposal Act (relating to handling hazardous waste in a manner inconsistent with Federal or applicable State law);

(2) section 103(b) of the Comprehensive Environmental Response, Compensation and Liability Act (relating to failure to notify as to the release of a reportable quantity of a hazardous substance into the environment);

(3) section 301(a), 307(d), 309(c)(2), 309(c)(3), 311(b)(3), or 311(b)(5) of the Federal Water Pollution Control Act (relating to the unlawful discharge of pollutants or hazardous substances, the operation of a source in violation of a pretreatment standard, and the failure to notify as to the release of a reportable quantity of a hazardous substance into the water); or

(4) section 5124 of title 49, United States Code (relating to violations of laws and regulations enforced by the Department of Transportation with respect to the transportation of hazardous material).

# TITLE IV—LEGAL MANUFACTURE, DISTRIBUTION, AND SALE OF PRECURSOR CHEMICALS

SEC. 401. DIVERSION OF CERTAIN PRECURSOR CHEMICALS.

(a) IN GENERAL.—Section 102(39) of the Controlled Substances Act (21 U.S.C. 802(39)) is amended—

4212

CAH_MDL2804_02202046

(1) in subparagraph (A)(iv)(I)(aa), by striking "as" through the semicolon and inserting ", pseudoephedrine or its salts, optical isomers, or salts of optical isomers, or phenylpropanolamine or its salts, optical isomers, or salts of optical isomers unless otherwise provided by regulation of the Attorney General issued pursuant to section 204(e) of this title;"; and

(2) in subparagraph (A)(iv)(II), by inserting ", pseudoephedrine, phenylpropanolamine," after "ephedrine".

(b) LEGITIMATE RETAILERS.—Section 102 of the Controlled Substances Act (21 U.S.C. 802) is amended—

(1) in paragraph (39)(A)(iv)(I)(aa), by adding before the semicolon the following: ", except that any sale of ordinary over-the-counter pseudoephedrine or phenylpropanolamine products by retail distributors shall not be a regulated transaction (except as provided in section 401(d) of the Comprehensive Methamphetamine Control Act of 1996)";

(2) in paragraph (39)(A)(iv)(II), by adding before the semicolon the following: ", except that the threshold for any sale of products containing pseudoephedrine or phenylpropanolamine products by retail distributors or by distributors required to submit reports by section 310(b)(3) of this title shall be 24 grams of pseudoephedrine or 24 grams of phenylpropanolamine in a single transaction";

(3) by redesignating paragraph (43) relating to felony drug offense as paragraph (44); and

(4) by adding at the end the following:

"(45) The term 'ordinary over-the-counter pseudoephedrine or phenylpropanolamine product' means any product containing pseudoephedrine or phenylpropanolamine that is—

"(A) regulated pursuant to this title; and

"(B)(i) except for liquids, sold in package sizes of not more than 3.0 grams of pseudoephedrine base or 3.0 grams of phenylpropanolamine base, and that is packaged in blister packs, each blister containing not more than two dosage units, or where the use of blister packs is technically infeasible, that is packaged in unit dose packets or pouches; and

"(ii) for liquids, sold in package sizes of not more than 3.0 grams of pseudoephedrine base or 3.0 grams of phenylpropanolamine base.

"(46)(A) The term 'retail distributor' means a grocery store, general merchandise store, drug store, or other entity or person whose activities as a distributor relating to pseudoephedrine or phenylpropanolamine products are limited almost exclusively to sales for personal use, both in number of sales and volume of sales, either directly to walk-in customers or in face-to-face transactions by direct sales.

"(B) For purposes of this paragraph, sale for personal use means the sale of below-threshold quantities in a single transaction to an individual for legitimate medical use.

"(C) For purposes of this paragraph, entities are defined by reference to the Standard Industrial Classification (SIC) code, as follows:

"(i) A grocery store is an entity within SIC code 5411.

"(ii) A general merchandise store is an entity within SIC codes 5300 through 5399 and 5499.

"(iii) A drug store is an entity within SIC code 5912.".

4213

CAH_MDL2804_02202047

PUBLIC LAW 104-237—OCT. 3, 1996          110 STAT. 3108

(c) REINSTATEMENT OF LEGAL DRUG EXEMPTION.—Section 204 of the Controlled Substances Act (21 U.S.C. 814) is amended by adding at the end the following new subsection:

"(e) REINSTATEMENT OF EXEMPTION WITH RESPECT TO EPHEDRINE, PSEUDOEPHEDRINE, AND PHENYLPROPANOLAMINE DRUG PRODUCTS.—Pursuant to subsection (d)(1), the Attorney General shall by regulation reinstate the exemption with respect to a particular ephedrine, pseudoephedrine, or phenylpropanolamine drug product if the Attorney General determines that the drug product is manufactured and distributed in a manner that prevents diversion. In making this determination the Attorney General shall consider the factors listed in subsection (d)(2). Any regulation issued pursuant to this subsection may be amended or revoked based on the factors listed in subsection (d)(4).".

(d) REGULATION OF RETAIL SALES.—
   (1) PSEUDOEPHEDRINE.—
      (A) LIMIT.—
         (i) IN GENERAL.—Not sooner than the effective date of this section and subject to the requirements of clause (ii), the Attorney General may establish by regulation a single-transaction limit of 24 grams of pseudoephedrine base for retail distributors. Notwithstanding any other provision of law, the single-transaction threshold quantity for pseudoephedrine-containing compounds may not be lowered beyond that established in this paragraph.
         (ii) CONDITIONS.—In order to establish a single-transaction limit of 24 grams of pseudoephedrine base, the Attorney General shall establish, following notice, comment, and an informal hearing that since the date of enactment of this Act there are a significant number of instances where ordinary over-the-counter pseudoephedrine products as established in paragraph (45) of section 102 of the Controlled Substances Act (21 U.S.C. 802(45)), as added by this Act, sold by retail distributors as established in paragraph (46) in section 102 of the Controlled Substances Act (21 U.S.C. 802(46)), are being widely used as a significant source of precursor chemicals for illegal manufacture of a controlled substance for distribution or sale.
      (B) VIOLATION.—Any individual or business that violates the thresholds established in this paragraph shall, with respect to the first such violation, receive a warning letter from the Attorney General and, if a business, the business shall be required to conduct mandatory education of the sales employees of the firm with regard to the legal sales of pseudoephedrine. For a second violation occurring within 2 years of the first violation, the business or individual shall be subject to a civil penalty of not more than $5,000. For any subsequent violation occurring within 2 years of the previous violation, the business or individual shall be subject to a civil penalty not to exceed the amount of the previous civil penalty plus $5,000.
   (2) PHENYLPROPANOLAMINE.—
      (A) LIMIT.—
         (i) IN GENERAL.—Not sooner than the effective date of this section and subject to the requirements of clause

4214

CAH_MDL2804_02202048

PUBLIC LAW 104-237--OCT. 3, 1996

(ii), the Attorney General may establish by regulation a single-transaction limit of 24 grams of phenylpropanolamine base for retail distributors. Notwithstanding any other provision of law, the single-transaction threshold quantity for phenylpropanolamine-containing compounds may not be lowered beyond that established in this paragraph.

(ii) CONDITIONS.—In order to establish a single-transaction limit of 24 grams of phenylpropanolamine base, the Attorney General shall establish, following notice, comment, and an informal hearing, that since the date of enactment of this Act there are a significant number of instances where ordinary over-the-counter phenylpropanolamine products as established in paragraph (45) of section 102 of the Controlled Substances Act (21 U.S.C. 802(45)), as added by this Act, sold by retail distributors as established in paragraph (46) in section 102 of the Controlled Substances Act (21 U.S.C. 802(46)), are being used as a significant source of precursor chemicals for illegal manufacture of a controlled substance in bulk.

(B) VIOLATION.—Any individual or business that violates the thresholds established in this paragraph shall, with respect to the first such violation, receive a warning letter from the Attorney General and, if a business, the business shall be required to conduct mandatory education of the, sales employees of the firm with regard to the legal sales of pseudoephedrine. For a second violation occurring within 2 years of the first violation, the business or individual shall be subject to a civil penalty of not more than $5,000. For any subsequent violation occurring within 2 years of the previous violation, the business or individual shall be subject to a civil penalty not to exceed the amount of the previous civil penalty plus $5,000.

(3) SIGNIFICANT NUMBER OF INSTANCES.—

(A) IN GENERAL.—For purposes of this subsection, isolated or infrequent use, or use in insubstantial quantities, of ordinary over-the-counter pseudoephedrine or phenylpropanolamine, as defined in section 102(45) of the Controlled Substances Act, as added by section 401(b) of this Act, and sold at the retail level for the illicit manufacture of methamphetamine or amphetamine may not be used by the Attorney General as the basis for establishing the conditions under paragraph (1)(A)(ii) of this subsection, with respect to pseudoephedrine, and paragraph (2)(A)(ii) of this subsection, with respect to phenylpropanolamine.

(B) CONSIDERATIONS AND REPORT.—The Attorney General shall—

(i) in establishing a finding under paragraph (1)(A)(ii) or (2)(A)(ii) of this subsection, consult with the Secretary of Health and Human Services in order to consider the effects on public health that would occur from the establishment of new single transaction limits as provided in such paragraph; and

(ii) upon establishing a finding, transmit a report to¹ the Committees on the Judiciary in both, respectively, the House of Representatives and the Senate

4215

CAH_MDL2804_02202049

PUBLIC LAW 104-237--OCT. 3, 1996

110 STAT. 3110

in which the Attorney General will provide the factual basis for establishing the new single transaction limits.

(4) DEFINITION OF BUSINESS.—For purposes of this subsection, the term "business" means the entity that makes the direct sale and does not include the parent company of a business not involved in a direct sale regulated by this subsection.

(5) JUDICIAL REVIEW.—Any regulation promulgated by the Attorney General under this section shall be subject to judicial review pursuant to section 507 of the Controlled Substances Act (21 U.S.C. 877).

(e) EFFECT ON THRESHOLDS.—Nothing in the amendments made by subsection (b) or the provisions of subsection (d) shall affect the authority of the Attorney General to modify thresholds (including cumulative thresholds) for retail distributors for products other than ordinary over-the-counter pseudoephedrine or phenylpropanolamine products (as defined in section 102(45) of the Controlled Substances Act, as added by this section) or for non-retail distributors, importers, or exporters.

(f) COMBINATION EPHEDRINE PRODUCTS.—

(1) IN GENERAL.—For the purposes of this section, combination ephedrine products shall be treated the same as pseudoephedrine products, except that—

(A) a single transaction limit of 24 grams shall be effective as of the date of enactment of this Act and shall apply to sales of all combination ephedrine products, notwithstanding the form in which those products are packaged, made by retail distributors or distributors required to submit a report under section 310(b)(3) of the Controlled Substances Act (as added by section 402 of this Act);

(B) for regulated transactions for combination ephedrine products other than sales described in subparagraph (A), the transaction limit shall be—

(i) 1 kilogram of ephedrine base, effective on the date of enactment of this Act; or

(ii) a threshold other than the threshold described in clause (i), if established by the Attorney General not earlier than 1 year after the date of enactment of this Act; and

(C) the penalties provided in subsection (d)(1)(B) of this section shall take effect on the date of enactment of this Act for any individual or business that violates the single transaction limit of 24 grams for combination ephedrine products.

(2) DEFINITION.—For the purposes of this section, the term "combination ephedrine product" means a drug product containing ephedrine or its salts, optical isomers, or salts of optical isomers and therapeutically significant quantities of another active medicinal ingredient.

(g) EFFECTIVE DATE OF THIS SECTION.—Notwithstanding any other provision of this Act, this section shall not apply to the sale of any pseudoephedrine or phenylpropanolamine product prior to 12 months after the date of enactment of this Act, except that, on application of a manufacturer of a particular pseudoephedrine or phenylpropanolamine drug product, the Attorney General may, in her sole discretion, extend such effective date up to an additional

4216

CAH_MDL2804_02202050

six months. Notwithstanding any other provision of law, the decision of the Attorney General on such an application shall not be subject to judicial review.

### SEC. 402. MAIL ORDER RESTRICTIONS.

Section 310(b) of the Controlled Substances Act (21 U.S.C. 830(b)) is amended by adding at the end the following:

"(3) MAIL ORDER REPORTING.—(A) Each regulated person who engages in a transaction with a nonregulated person which—

"(i) involves ephedrine, pseudoephedrine, or phenylpropanolamine (including drug products containing these chemicals); and

"(ii) uses or attempts to use the Postal Service or any private or commercial carrier;

shall, on a monthly basis, submit a report of each such transaction conducted during the previous month to the Attorney General in such form, containing such data, and at such times as the Attorney General shall establish by regulation.

"(B) The data required for such reports shall include—

"(i) the name of the purchaser;

"(ii) the quantity and form of the ephedrine, pseudoephedrine, or phenylpropanolamine purchased; and

"(iii) the address to which such ephedrine, pseudoephedrine, or phenylpropanolamine was sent.".

# TITLE V—EDUCATION AND RESEARCH

### SEC. 501. INTERAGENCY METHAMPHETAMINE TASK FORCE.

(a) ESTABLISHMENT.—There is established a "Methamphetamine Interagency Task Force" (referred to as the "interagency task force") which shall consist of the following members:

(1) The Attorney General, or a designee, who shall serve as chair.

(2) 2 representatives selected by the Attorney General.

(3) The Secretary of Education or a designee.

(4) The Secretary of Health and Human Services or a designee.

(5) 2 representatives of State and local law enforcement and regulatory agencies, to be selected by the Attorney General.

(6) 2 representatives selected by the Secretary of Health and Human Services.

(7) 5 nongovernmental experts in drug abuse prevention and treatment to be selected by the Attorney General.

(b) RESPONSIBILITIES.—The interagency task force shall be responsible for designing, implementing, and evaluating the education and prevention and treatment practices and strategies of the Federal Government with respect to methamphetamine and other synthetic stimulants.

(c) MEETINGS.—The interagency task force shall meet at least once every 6 months.

(d) FUNDING.—The administrative expenses of the interagency task force shall be paid out of existing Department of Justice appropriations.

(e) FACA.—The Federal Advisory Committee Act (5 U.S.C. App. 2) shall apply to the interagency task force.

42

CAH_MDL2804_02202051

PUBLIC LAW 104-237—OCT. 3, 1996

110 STAT. 3112

(f) TERMINATION.—The interagency task force shall terminate 4 years after the date of enactment of this Act.

## SEC. 502. PUBLIC HEALTH MONITORING.

The Secretary of Health and Human Services shall develop a public health monitoring program to monitor methamphetamine abuse in the United States. The program shall include the collection and dissemination of data related to methamphetamine abuse which can be used by public health officials in policy development.

## SEC. 503. PUBLIC-PRIVATE EDUCATION PROGRAM.

(a) ADVISORY PANEL.—The Attorney General shall establish an advisory panel consisting of an appropriate number of representatives from Federal, State, and local law enforcement and regulatory agencies with experience in investigating and prosecuting illegal transactions of precursor chemicals. The Attorney General shall convene the panel as often as necessary to develop and coordinate educational programs for wholesale and retail distributors of precursor chemicals and supplies.

(b) CONTINUATION OF CURRENT EFFORTS.—The Attorney General shall continue to—

(1) maintain an active program of seminars and training to educate wholesale and retail distributors of precursor chemicals and supplies regarding the identification of suspicious transactions and their responsibility to report such transactions; and

(2) provide assistance to State and local law enforcement and regulatory agencies to facilitate the establishment and maintenance of educational programs for distributors of precursor chemicals and supplies.

## SEC. 504. SUSPICIOUS ORDERS TASK FORCE.

(a) IN GENERAL.—The Attorney General shall establish a "Suspicious Orders Task Force" (the "Task Force") which shall consist of—

(1) appropriate personnel from the Drug Enforcement Administration (the "DEA") and other Federal, State, and local law enforcement and regulatory agencies with the experience in investigating and prosecuting illegal transactions of listed chemicals and supplies; and

(2) representatives from the chemical and pharmaceutical industry.

(b) RESPONSIBILITIES.—The Task Force shall be responsible for developing proposals to define suspicious orders of listed chemicals, and particularly to develop quantifiable parameters which can be used by registrants in determining if an order is a suspicious order which must be reported to DEA. The quantifiable parameters to be addressed will include frequency of orders, deviations from prior orders, and size of orders. The Task Force shall also recommend provisions as to what types of payment practices or unusual business practices shall constitute prima facie suspicious orders. In evaluating the proposals, the Task Force shall consider effectiveness, cost and feasibility for industry and government, and other relevant factors.

(c) MEETINGS.—The Task Force shall meet at least two times per year and at such other times as may be determined necessary by the Task Force.

4218

CAH_MDL2804_02202052

(d) REPORT.—The Task Force shall present a report to the Attorney General on its proposals with regard to suspicious orders and the electronic reporting of suspicious orders within one year of the date of enactment of this Act. Copies of the report shall be forwarded to the Committees of the Senate and House of Representatives having jurisdiction over the regulation of listed chemical and controlled substances.

(e) FUNDING.—The administrative expenses of the Task Force shall be paid out of existing Department of Justice funds or appropriations.

(f) FACA.—The Federal Advisory Committee Act (5 U.S.C. App. 2) shall apply to the Task Force.

(g) TERMINATION.—The Task Force shall terminate upon presentation of its report to the Attorney General, or two years after the date of enactment of this Act, whichever is sooner.

4219

CAH_MDL2804_02202053

**United States Department of Justice**
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



# Appendix D

## Suspicious Orders Task Force Operating Charter

CAH_MDL2804_02202054

## Advisory Committee Operating Charter
### Suspicious Orders Task Force
#### Comprehensive Methamphetamine Control Act of 1996

### I. Background

The Suspicious Orders Task Force (the "Task Force") was authorized under Section 504 of the Comprehensive Methamphetamine Control Act (the "MCA") of 1996. The MCA is one of the chemical control amendments to the Controlled Substances Act (the "CSA") of 1970. Further, the Task Force, as established by the MCA, must operate under The Federal Advisory Committee Act (the "Act") (5 U.S.C. App. 2).

### II. The Committee's Official Designation

This Advisory Committee shall be known as the Suspicious Orders Task Force. (Short form: the Task Force)

### III. Objectives and Scope of Activities

The Task Force shall be established to develop proposals to provide guidelines to distributors, at various levels, to assist in defining suspicious orders of listed chemicals ("suspicious orders"). Listed chemicals are defined as those 34 List I and List II substances defined in Section 802 of the CSA. Further, the Task Force will have a goal of recommending quantifiable parameters which can be used by registrants in judging if an order is a suspicious order which must be reported to the Drug Enforcement Administration (DEA). Additionally, the Task Force shall explore techniques of reporting the suspicious orders including the electronic transmittal of the information. The quantifiable parameters to be examined shall include, but not be limited to, frequency of orders, deviations from prior orders, and size of orders. The Task Force shall also recommend provisions as to what types of payment practices or unusual business practices shall contribute to the determination of suspicious orders. In evaluating the proposals, the Task Force shall consider effectiveness, cost, and feasibility for industry and government, and other relevant factors. The extent of consideration shall include impact on, and costs to, general business practices of the affected parties.

The Task Force shall limit its area of consideration to domestic issues regarding suspicious orders. The procedures in place to control imports and exports already have provisions for monitoring orders.

Suspicious Orders Task Force 1

2

CAH_MDL2804_02202055

# Advisory Committee Operating Charter
## Suspicious Orders Task Force
### Comprehensive Methamphetamine Control Act of 1996

## VIII. Operating Costs

The administrative expenses of the Task Force shall be paid out of existing Department of Justice funds, DEA Appropriations.  Annual expenses shall include, but not be limited to, the following:

1. Administrative costs.
2. Per Diem and travel expenses for Public Sector participants.
3. Consulting fees for such outside experts as deemed necessary by the Task Force.
4. Private Sector expenses will be borne by the participants and their respective employers.
5. The estimated work-years is three FTE at an annual cost of $6,000.

All per diem, travel expenses, other expenses, fees, and compensations shall be in accordance with the limitations outlined in the Act.  Further, all members of the Task Force serve at the discretion and pleasure of their respective employers.  No accommodations will be made for Task Force member's salaries.

## IX. Number of Meetings

The full Task Force shall hold a minimum of three meetings per year.  These meetings shall be in geographically diverse areas so as to allow interested public comment from those concerned with suspicious orders.  In accordance with the provisions of the FACA, all meetings will be open and accessible to the general public.

## X. Termination Date

The Charter shall terminate upon the Task Force's presentation of its final report to the Attorney General or two years after the date of enactment of the MCA (October 3, 1998), whichever is sooner.

## XI. Membership

The membership of the Task Force shall be in accordance with the provisions of the MCA.

Suspicious Orders Task Force 3

# Advisory Committee Operating Charter
### Suspicious Orders Task Force
Comprehensive Methamphetamine Control Act of 1996

## XII. Date of Charter

The date of this Charter is _August 10_, 1997.

## XIII. Signatories

Janet Reno
Attorney General of The United States
U.S. Department of Justice

Suspicious Orders Task Force 4

U.S. Department of Justice

Washington. D.C. 20530

SEP - 3 1997

The Honorable Orrin G. Hatch
Chairman
Committee on the Judiciary
United States Senate
Washington, DC  20510

Dear Mr. Chairman:

In accordance with Section 9 of the Federal Advisory Committee Act, 5 U.S.C. App. II, I am enclosing a copy of the Charter as filed with the Library of Congress to establish the Suspicious Orders Task Force.  The Task Force was authorized under Section 504 of the Comprehensive Methamphetamine Control Act of 1996 to define suspicious orders of chemicals and develop quantifiable parameters which can be used in determining if an order is a suspicious order which must be reported to the Drug Enforcement Administration.  If further information is required, please have a member of your staff contact Janet Dobbs on 514-6755.

Sincerely,

Stephen R. Colgate
Assistant Attorney General
  for Administration

Enclosure

CAH_MDL2804_02202058

U.S. Department of Justice

Washington, D.C. 20530

SEP - 3 1997

Mr. Kenneth Carter
Library of Congress
Exchange and Gift Division
Federal Advisory Committee Desk
Washington, DC  20540

Dear Mr. Carter:

In accordance with Section 9 of the Federal Advisory Committee
Act, 5 U.S.C. App. II, I am enclosing a copy of the Charter to
establish the Suspicious Orders Task Force.  The Task Force was
authorized under Section 504 of the Comprehensive Methamphetamine
Control Act of 1996 to define suspicious orders of chemicals and
develop quantifiable parameters which can be used in determining
if an order is a suspicious order which must be reported to the
Drug Enforcement Administration.  If further information is
required, please have a member of your staff contact Janet Dobbs
on 514-6755.

Sincerely,

Stephen R. Colgate
Assistant Attorney General
  for Administration

Enclosure

U.S. Department of Justice

Washington, D.C. 20530

SEP - 3 1997

The Honorable Henry J. Hyde
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, DC  20515

Dear Mr. Chairman:

In accordance with Section 9 of the Federal Advisory Committee Act, 5 U.S.C. App. II, I am enclosing a copy of the Charter as filed with the Library of Congress to establish the Suspicious Orders Task Force.  The Task Force was authorized under Section 504 of the Comprehensive Methamphetamine Control Act of 1996 to define suspicious orders of chemicals and develop quantifiable parameters which can be used in determining if an order is a suspicious order which must be reported to the Drug Enforcement Administration.  If further information is required, please have a member of your staff contact Janet Dobbs on 514-6755.

Sincerely,

Stephen R. Colgate
Assistant Attorney General
  for Administration

Enclosure

U.S. Department of Justice

_____

Washington, D.C. 20530

SEP - 3 1997

Mr. James Dean
Committee Management Secretariat
General Services Administration
18th and F Street, NW  Room 7110
Washington, DC  20006

Dear Mr. Dean:

In accordance with Section 9 of the Federal Advisory Committee
Act, 5 U.S.C. App. II, I am enclosing a copy of the Charter as
filed with the Library of Congress to establish the Suspicious
Orders Task Force.  The Task Force was authorized under Section
504 of the Comprehensive Methamphetamine Control Act of 1996 to
define suspicious orders of chemicals and develop quantifiable
parameters which can be used in determining if an order is a
suspicious order which must be reported to the Drug Enforcement
Administration.  If further information is required, please have
a member of your staff contact Janet Dobbs on 514-6755.

Sincerely,

Stephen R. Colgate
Assistant Attorney General
  for Administration

Enclosure

CAH_MDL2804_02202062

**United States Department of Justice**
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



# Appendix E

## Membership List

The members of the Suspicious Orders Task Force were selected by using the criteria outlined in Section 504 (a)(1) & (2) of the Comprehensive Methamphetamine Control Act of 1996 (Public Law 104-237 enacted October 3, 1996).  This composition was tempered with the Federal Advisory Committee Act (5 U.S.C. App. 2) requirement that "the representation be fair and equitable."  DEA, as the representative of the Department of Justice, selected various organizations which met the criteria outlined in the applicable statutes and asked them to nominate members to serve on the Task Force.  These nominees were then reviewed for appropriateness and sent letters of acceptance.  During the course of operation of the Task Force, Ms. Pam Kruger, nominated by the National Association of Drug Diversion Investigators (NADDI) was replaced by Mr. David Hammel at Ms. Kruger's request.  Additionally, Mr. Michael Stulberg, representing the American Wholesale Marketers' Association (AWMA), was added to the original twenty members of the Task Force.

CAH_MDL2804_02202063

United States Department of Justice
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



## Suspicious Orders Task Force Membership

**Public Sector Members**

Organization:  **Drug Enforcement Administration (DEA)**

S/A William J. Wolf, Jr., Chief   *(Chairman)*
Chemical Operations Section
DEA, Office of Diversion Control
600 Army Navy Drive
Arlington, VA   22202

Voice: 202-307-7204; Fax: 202-307-4702

David Walkup, Diversion Program Manager
DEA, St Louis Division
7911 Forsyth Blvd
Suite 500
Clayton, MO   63105

Voice: 314-425-3241; Fax: 314-425-3245

S/A Edward John Van Patten
Group Supervisor
DEA, Sacramento Resident Office
1860 Howe Ave, Suite 250
Sacramento, CA   95825

Voice: 916-566-7188; Fax: 916-566-7177

Organization:  **National Association of State Controlled Substances Authorities (NASCSA)**

David Hale, Agent in Charge
Oklahoma Bureau of Narcotics
3313 West 45th Street
Tulsa, OK   74107

Voice: 918-446-1616; Fax: 918-445-0724

CAH_MDL2804_02202064

United States Department of Justice
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



**Organization:** **Missouri State Highway Patrol**

    Capt James Keathley
    Missouri State Highway Patrol
    1510 East Elm
    PO Box 568
    Jefferson City, MO   65102

    Voice: 573-526-6122; Fax: 573-526-5577

**Organization:** **National Association of Drug Diversion Investigators (NADDI)**

    Det Pam Kruger

**Replaced By:**
    David Hammel
    Maryland State Police
    1253 Youngs Farm Road
    Annapolis, MD   21403

    Voice: 410-268-2447; Fax: 410-268-2431

**Organization:** **National Association of Boards of Pharmacy (NABP)**

    Richard "Mick" Markuson, Director
    Idaho State Board of Pharmacy
    280 N 8th Street, PO Box 83720
    Boise, ID   83720-0067

    Voice: 208-334-2356; Fax: 208-334-3536

**Organization:** **Missouri State's Attorney General's Office**

    Andrea Spillars, Assistant Attorney General
    PO Box 899
    221 W. High Street
    Jefferson City, MO   65102

    Voice: 573-751-4418; Fax: 573-751-5391

CAH_MDL2804_02202065

United States Department of Justice
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



Organization: **State of California Bureau of Narcotic Enforcement (CA/BNE)**

Katina Kypridakes, Manager
Precursor Compliance Program
California Department of Justice
Bureau of Narcotic Enforcement
4949 Broadway, Room B-238
Sacramento, CA   95820

Voice: 916-227-3231; Fax: 916-227-3945

Organization: **U.S. Attorney's Office, Southern District of California**

Laura Birkmeyer, Chief, Narcotics Enforcement Section
U.S. Attorney's Office, U.S. Dept. of Justice
880 Front Street, Room 6293
San Diego, CA   92101

Voice: 619-557-5481; Fax: 619-557-7053

Organization: **International Association of Chiefs of Police**

William Berger, Chief
North Miami Beach Police Department
16901 NE 19th Avenue
North Miami Beach, FL   33162

Voice: 305-948-2999; Fax: 305-787-6047

**Private Sector Members**

Organization: **National Community Pharmacist's Association (NCPA)**

Ms Sharlea Leatherwood
4260 N Oak Trfwy
PO Box 34655
Kansas City, MO   64116

Voice: 816-453-1050; Fax: 816-453-4055

CAH_MDL2804_02202066

United States Department of Justice
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



Organization: **Chemical Manufacturer's Association (CMA)**

John C Garvey, Manager, Regulatory Affairs
BASF Corporation
3000 Continental Drive - North
Mount Olive, NJ   07828-1234

Voice: 973-426-4843; Fax: 973-426-5315

Ms. Marybeth Kelliher, Senior Manager
Chemical Manufacturers' Association (CMA)
1300 Wilson Blvd
Arlington, VA   22209

Voice: 703-741-5923; Fax: 703-741-6923

Organization: **National Wholesale Druggists' Association (NWDA)**

Douglas Thompson, Sr, VP, Logistics
McKesson Corp
1 Post Street
36th Floor
San Francisco, CA   94104

Voice: 415-983-8532; Fax: 415-983-9272

Organization: **Food Marketing Institute (FMI)**

Mr. Gale Prince, Director
Regulatory Compliance
The Kroger Co.
1014 Vine Street
Cincinnati, OH   45202-1100

Voice:  513-762-4209; Fax:  513-762-4372

Organization: **National Association of Chemical Distributors (NACD)**

Mark Kramer, Exec Vice President
Ellis & Everard, Inc.
700 Galleria Parkway, Suite 350
Atlanta, GA   30339

Voice: 770-618-0751; Fax: 770-618-0770

CAH_MDL2804_02202067

United States Department of Justice
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



Peter Ramaley, Director,
Regulatory Affairs, SOCO Chemical Inc

UPS/FedEx: Pottsville Pike & Huller Lane
Reading, PA   19605

US Mail: PO Box 13786
Reading, PA   19612-3786

Voice: 610-926-6100; Fax: 610-926-3070

Organization: **National Association of Chain Drug Stores (NACDS)**

James Carter, Director
Loss Prevention & Regulatory Compliance
Eckert Corporation
8333 Bryan Dairy Road
Largo, FL   33777

Voice: 813-395-6300; Fax: 813-395-6314

Organization: **Nonprescription Drug Manufacturers Association (NDMA)**

Kevin Kraushaar, Associate General Counsel & Director State Government Relations
Nonprescription Drug Manufacturers Association (NDMA)
1150 Connecticut Ave NW, Suite 1200
Washington, D.C.   20036

Voice: 202-429-9260; Fax: 202-223-6835

Organization: **American Wholesale Marketers' Association (AWMA)**

Michael M. Stulberg, President
Somody Supply, Inc.
2701 4th Ave SW
PO Box 1338
Willmar, MN   56201

Voice: 320-235-2454; Fax: 320-235-1361

**United States Department of Justice**
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



# Appendix F

## Federal Register Notices

1) Formation of the Task Force
2) Announcement of the first meeting in Washington, D.C.
3) Announcement of the second meeting in San Diego, California
4) Announcement of the third meeting in St. Louis, Missouri
5) Announcement of the fourth meeting in San Antonio, Texas

CAH_MDL2804_02202069

United States Department of Justice
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



# Federal Register Notices
# Formation of the Task Force

DEPARTMENT OF JUSTICE
Drug Enforcement Administration

Task Force on Suspicious Orders

**AGENCY:** Drug Enforcement Administration (DEA), Justice

**ACTION:** Notice of establishment of Task Force on Suspicious Orders

**SUMMARY:** In accordance with the provisions of the Federal Advisory Committee Act, 5 U.S.C. App 2 (1972), and 41 CFR 101-6.1001-6.1035 (1992), the Administrator of the Drug Enforcement Administration (DEA), with the concurrence of the Attorney General, is establishing a Task Force on Suspicious Orders for the purpose of developing proposals to define suspicious orders of listed chemicals which can be used by registrants in determining if an order is a suspicious order which must be reported to the DEA.

The Task Force is authorized by Public Law 104-237, Section 504 of Subtitle V, Education and Research, the Comprehensive Methamphetamine Control Act of 1996 (the MCA). The specific provisions of the Act state that:

The Task Force shall be responsible for providing the Attorney General with recommendations, advice, and proposals for the establishment of such guidelines that will adequately define suspicious orders of listed chemicals. The Task Force shall limit its area of consideration to domestic issues regarding suspicious orders.

**DATES:** This Task Force is effective September 3, 1997.

**FOR FURTHER INFORMATION CONTACT:** Michael Leser, Program Analyst, Liaison and Policy Section, Office of Diversion Control, Drug Enforcement Administration, Washington, D.C. 20537, Telephone (202) 307-4026 or Facsimile (202) 307-8570.

**SUPPLEMENTARY INFORMATION:**

**SCOPE:** Regulated persons are required to report suspicious regulated transactions to DEA pursuant to 21 CFR Section 1310.05(a)(1) and 21 USC Section 830(b)(1)(A). In the past, DEA has had general guidelines which were published in the Chemical Handlers' Manual as

CAH_MDL2804_02202070

United States Department of Justice
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



to what constituted a suspicious chemical order.  The Comprehensive
Methamphetamine Control Act of 1996 (MCA) mandated the establishment
of the Suspicious Orders Task Force with the express purpose of
developing proposals that further define a suspicious order.  The
scope of discussion of this Task Force shall be limited to
enhancements and clarifications of what constitutes a suspicious
chemical order that needs to be reported to DEA.

**MEMBERSHIP:** In accordance with the provisions of the MCA, this Task
Force will be composed of appropriate personnel with experience in
investigating and prosecuting illegal transactions of listed
chemicals and supplies, and representatives from the chemical and
pharmaceutical industries.

The Task Force will consist of 20 members nominated by the
chairman of the Task Force from relevant industry/trade associations
and state and local law enforcement agencies.

The composition of the Task Force shall be:

    Two members from the DEA investigative workforce
    One member from the U.S. Attorney's Office,
    Southern District of California
    One member from the International Association of Chiefs of
    Police
    One member from The National Association of Diversion
    Investigators
    One member from the California Bureau of Narcotics
    Enforcement
    One member from the Missouri State Highway Patrol
    One member from the Missouri Attorney General's Office
    One member from the National Association of Boards of
    Pharmacy
    One member from the National Association of State Controlled
    Substances Authorities
    Two members from the Chemical Manufacturers Association
    Two members from the National Association of Chemical
    Distributors
    One member from the national Non-Prescription Drug
    Manufacturers' Association
    Four members from the wholesale and retail pharmaceutical
    marketing associations
    The chairman of the Task Force shall reserve the right to add
    up to two additional members to the Task Force as appropriate.

CAH_MDL2804_02202071

**United States Department of Justice**
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



In accordance with the Federal Advisory Committee Act, all meetings of the Task Force shall be open to the public with notice of times and locations appearing in the Federal Register.

Interested parties shall be permitted to attend meetings, appear before the Task Force and present limited verbal statements, and file written statements with Task Force members.  Written statements will be taken at any time during the meeting and distributed to the Task Force as soon as feasible.  Presenters of written statements are requested to provide 25 copies of the statement to expedite distribution to the Task Force members.  If the presenter does not/can not provide the requested copies, the Designated Federal Official (DFO) will make the copies and the Task Force will consider the statement when the copies are available.  Verbal comments may be limited in time by the DFO to insure adequate opportunity for testimony by as many presenters as possible.

The Task Force will be advisory only and will provide its report to the Attorney General.

John H. King
Deputy Assistant Administrator
Office of Diversion Control

CAH_MDL2804_02202072

**United States Department of Justice**
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



# Federal Register Notices
## Announcement of the first meeting in Washington, D.C.

DEPARTMENT OF JUSTICE
Drug Enforcement Administration

### Task Force on Suspicious Orders Meeting

**AGENCY:** Drug Enforcement Administration (DEA), Justice

**ACTION:** Notice of Meeting

**SUMMARY:** Pursuant to Section 10(a)(2) of the Federal Advisory Committee Act (Public Law 92-463), as amended, notice is hereby given that a meeting of the Suspicious Orders Task Force will be held on December 16-17, 1997.  The panel will meet from 9:00 a.m. to 5:00 p.m. both days at The Marriot Residence Inn, 550 Army Navy Drive, Arlington, Virginia  22202.

This meeting will be open to the public on a space available basis.  Any interested person may observe meetings or portions thereof and shall be permitted to participate in the discussions at the discretion of the meeting chairman and with the approval of the full-time Designated Federal Official (DFO) in attendance.

In addition to presenting limited verbal statements, interested parties shall be permitted to file written statements with Task Force members.  Written statements will be taken at any time during the meeting and distributed to the Task Force as soon as feasible. Presenters of written statements are requested to provide 25 copies of the statement to expedite distribution to the Task Force members. If the presenter does not/can not provide the requested copies, the DFO will make the copies and the Task Force will consider the statement when the copies are available.  Verbal comments may be limited in time by the DFO to insure adequate opportunity for testimony by as many presenters as possible.

**DATES:** December 16, 17, 1997.

**FOR FURTHER INFORMATION CONTACT:** Michael Leser, Program Analyst, Liaison and Policy Section, Office of Diversion Control, Drug Enforcement Administration, Washington, D.C. 20537, Telephone (202) 307-4026, Facsimile (202) 307-8570.

CAH_MDL2804_02202073

**United States Department of Justice**
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



**SUPPLEMENTARY INFORMATION:**

    If you need special accommodations due to a disability, please contact the Office of Diversion Control, Drug Enforcement Administration, 600 Army Navy Drive, Arlington, Virginia, 22202, (202) 307-4026 at least seven (7) days prior to the meeting.

                                John H. King
                                Deputy Assistant Administrator
                                Office of Diversion Control

CAH_MDL2804_02202074

United States Department of Justice
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



# Federal Register Notices
## Announcement of the second meeting in San Diego, California

DEPARTMENT OF JUSTICE
Drug Enforcement Administration

### Task Force on Suspicious Orders Meeting

**AGENCY:** Drug Enforcement Administration (DEA), Justice

**ACTION:** Notice of Meeting

**SUMMARY:** Pursuant to Section 10(a)(2) of the Federal Advisory Committee Act (Public Law 92-463), as amended, notice is hereby given that a meeting of the Suspicious Orders Task Force will be held on February 04-05, 1998.  The panel will meet from 9:00 a.m. to 5:00 p.m. both days at San Diego California Federal Building, 880 Front Street, San Diego California.  All proceedings will be held in the Sixth Floor Auditorium.

This meeting will be open to the public on a space available basis.  Any interested person may observe meetings or portions thereof and shall be permitted to participate in the discussions at the discretion of the meeting chairman and with the approval of the full-time Designated Federal Official (DFO) in attendance.

In addition to presenting limited verbal statements, interested parties shall be permitted to file written statements with Task Force members.  Written statements will be taken at any time during the meeting and distributed to the Task Force as soon as feasible. Presenters of written statements are requested to provide 25 copies of the statement to expedite distribution to the Task Force members. If the presenter does not/can not provide the requested copies, the DFO will arrange for the copies and the Task Force will consider the statement when the copies are available.  Verbal comments may be limited in time by the DFO to insure adequate opportunity for testimony by as many presenters as possible.  Any person wishing to submit agenda items or desiring to present formal testimony should contact the DFO at least ten (10) days prior to the meeting.

**DATES:** February 04, 05, 1998.

**FOR FURTHER INFORMATION CONTACT:** Michael Leser, Program Analyst, Liaison and Policy Section, Office of Diversion Control, Drug Enforcement Administration, Washington, D.C. 20537, Telephone (202) 307-4026, Facsimile (202) 307-8570.

CAH_MDL2804_02202075

**United States Department of Justice**
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



**SUPPLEMENTARY INFORMATION:**
    If you need special accommodations due to a disability, please
contact the Office of Diversion Control, Drug Enforcement
Administration, 600 Army Navy Drive, Arlington, Virginia, 22202,
(202) 307-4026 at least seven (7) days prior to the meeting.

                              John H. King
                              Deputy Assistant Administrator
                              Office of Diversion Control

CAH_MDL2804_02202076

United States Department of Justice
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



# Federal Register Notices
## Announcement of the third meeting in St. Louis, Missouri

DEPARTMENT OF JUSTICE
Drug Enforcement Administration

### Task Force on Suspicious Orders Meeting

**AGENCY:** Drug Enforcement Administration (DEA), Justice

**ACTION:** Notice of Meeting

**SUMMARY:** Pursuant to Section 10(a)(2) of the Federal Advisory Committee Act (Public Law 92-463), as amended, notice is hereby given that a meeting of the Suspicious Orders Task Force will be held on April 07-08, 1998.  The panel will meet from 9:00 a.m. to 5:00 p.m. both days at Adam's Mark Hotel, Fourth and Chestnut, St. Louis, Missouri  63102.

This meeting will be open to the public on a space available basis.  Any interested person may observe meetings or portions thereof and shall be permitted to participate in the discussions at the discretion of the meeting chairman and with the approval of the full-time Designated Federal Official (DFO) in attendance.

In addition to presenting limited verbal statements, interested parties shall be permitted to file written statements with Task Force members.  Written statements will be taken at any time during the meeting and distributed to the Task Force as soon as feasible.  Presenters of written statements are requested to provide 25 copies of the statement to expedite distribution to the Task Force members.  If the presenter does not/can not provide the requested copies, the DFO will arrange for the copies and the Task Force will consider the statement when the copies are available.  Verbal comments may be limited in time by the DFO to insure adequate opportunity for testimony by as many presenters as possible.  Any person wishing to submit agenda items or desiring to present formal testimony should contact the DFO at least ten (10) days prior to the meeting.  THIS WILL BE THE LAST OPPORTUNITY FOR THE PUBLIC TO PRESENT TESTIMONY BEFORE THE TASK FORCE.  ANY FUTURE MEETINGS WILL BE SOLELY FOR THE PURPOSE OF COMPOSING THE FINISHED REPORT TO BE SUBMITTED TO THE ATTORNEY GENERAL.

**DATES:** April 07, 08, 1998.

CAH_MDL2804_02202077

**United States Department of Justice**
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



**FOR FURTHER INFORMATION CONTACT:** Michael Leser, Program Analyst, Liaison and Policy Section, Office of Diversion Control, Drug Enforcement Administration, Washington, D.C. 20537, Telephone (202) 307-4026, Facsimile (202) 307-8570.

**SUPPLEMENTARY INFORMATION:**
  If you need special accommodations due to a disability, please contact the Office of Diversion Control, Drug Enforcement Administration, 600 Army Navy Drive, Arlington, Virginia, 22202, (202) 307-4026 at least seven (7) days prior to the meeting.

John H. King
Deputy Assistant Administrator
Office of Diversion Control

CAH_MDL2804_02202078

United States Department of Justice
Drug Enforcement Administration
*Office of Diversion Control*
Suspicious Orders Task Force



# Federal Register Notices
## Announcement of the fourth meeting in San Antonio, Texas

### DEPARTMENT OF JUSTICE
### Drug Enforcement Administration

### Task Force on Suspicious Orders Meeting

**AGENCY:** Drug Enforcement Administration (DEA), Justice

**ACTION:** Notice of Meeting

**SUMMARY:** Pursuant to Section 10(a)(2) of the Federal Advisory Committee Act (Public Law 92-463), as amended, notice is hereby given that a meeting of the Suspicious Orders Task Force (SOTF) will be held on May 19-20, 1998. The panel will meet from 9:00 a.m. to 5:00 p.m. both days at La Mansión del Rio, 112 College Street, San Antonio, Texas.

The purpose of this meeting is to compose the SOTF report that will be submitted to the Attorney General. The meeting will be open to the public on a first-come, first-seated basis. Interested persons are encouraged to attend. Members of the public may submit to the contact person, any time before or after the meeting, written statements to the Task Force. Written comments may be submitted by mail or facsimile, and should contain the writer's name, address and commercial, government, or organizational affiliation, if any.

**DATES:** May 19, 20, 1998.

**FOR FURTHER INFORMATION CONTACT:** Michael Leser, Program Analyst, Liaison and Policy Section, Office of Diversion Control, Drug Enforcement Administration, Washington, D.C. 20537, Telephone (202) 307-4026, Facsimile (202) 307-8570.

**SUPPLEMENTARY INFORMATION:**
If you need special accommodations due to a disability, please contact the Office of Diversion Control, Drug Enforcement Administration, 600 Army Navy Drive, Arlington, Virginia, 22202, (202) 307-4026 at least seven (7) days prior to the meeting.

John H. King
Deputy Assistant Administrator
Office of Diversion Control

SOTF Report Appendix G: 11

CAH_MDL2804_02202079