# PSJ3 Exhibit 259

Notes
MEETING BETWEEN THE
MCKESSON &
PURDUE PHARMA L.P.
March 9, 2010

Attendees:

*From McKesson*

Bill Mahoney, DRA**,** South Region and Dave Gustin DRA North Central

*From Purdue Pharma L.P.*

Jack Crowley, Executive Director, CSA Compliance

Purpose of the Meeting: to further the cooperation between our companies and to develop coordinated protocols for communication in the identification of patterns of interest etc

We engaged in an "open forum" type of discussion concerning each company's process
- Suspicious Order Monitoring (General)
- Purdue Order Monitoring System(OMS)
- McKesson SOM (CSMP) Program

We asked the question "What are we trying to accomplish with our monitoring systems"

- Compliance with DEA interpretations of the regulation (21 CFR 1301.74)
- Meet our DEA Responsibilities
- Prevent Diversion
- Assist our customers in meeting their obligations
- Deliver medication to our patients
- Do the right thing
- Do the Best We Can Do

McKesson Threshold:

| | | |
|---|---|---|
| Total Sales | Level 1 | Distribution Center (DC) Level |
| One Time Suspicious Order | Level 2 | Regulatory Visit |
| Referred by DRA | Level 3 | Don Walker (SVP) Level |

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER    PPLP004473318

McKesson does not use the word "suspicious", but rather questionable or (sometimes) noteworthy.

Level I - customer has reached its threshold and needs more.  The order is stopped temporarily, pending a discussion with the customer - Order Pending System.

Level II – folks at the D.C. are not sure and they buck it up to the DRA, who visits the customer with a sales rep or someone from operations.  They perform an in-depth due diligence.

Level III – Customer is suspended from all controls and there is a discussion with SF - leading to potential termination.  It's possible to accelerate from Level I to Level III very quickly.

"Discussion about "Doctor Pattern" - this is a delicate dance, so to speak - but basically McKesson will have conversation concerning a certain doctor or doctors, and they will (reserve the right to) not participate in that segment of the business!!.

Limited Resources – Electronic Reporting to DEA HQ (has been established) plus phone calls directly to Washington, DPM and G/S.

>     Subtle pharmacies are much more difficult to evaluate.

We reviewed the highlights of recent DEA directives and interpretations:

- It is not DEA's intent to negatively impact those pharmacies filling prescriptions for legitimate medical purposes.
- **Prevent Diversion - onus squarely on the registrant**
- can a prospective customer be trusted?
- exercise due diligence to avoid filling suspicious orders that might be diverted
- exercise due care in confirming the legitimacy of all orders prior to filling.
- Must conduct an **independent analysis of suspicious orders prior to completing a sale** to determine whether the controlled substances are likely to be diverted from legitimate channels. Distributors need to know to whom they are selling controlled substances, and clearly know their customers' business practices in order to determine whether or not to ship controlled substances.  The decision to ship controlled substances to a particular customer rests with the supplier.  The supplier must comply with the CSA and implementing regulations.
- Know your customers  -  don't rely on **rigid formulas**
- **(Do not) fill these (suspicious) orders without first determining that order is not being diverted into other than legitimate medical, scientific, and industrial channels**
- **Failure to maintain effective controls against diversion is inconsistent with the public interest** as that term is used in 21 USC 823 and 824, and may result in the revocation of the registrant's DEA Certificate of Registration.

2

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER               PPLP004473319

…Distributors must be vigilant in deciding whether a prospective customer can be trusted to deliver controlled substances only for lawful purposes.

……in addition to reporting all suspicious orders, a distributor has the statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate medical, scientific and industrial channels.  Failure to exercise such due diligence could, as circumstances warrant, provide a statutory basis for revocation or suspension of a distributor's registration.

…..given the requirement of 823(e) that a distributor maintain effective controls against diversion, <u>a distributor may not simply rely on the fact that the person placing the order is a DEA registrant and turn a blind eye to the suspicious circumstances.</u>  Again, to maintain effective controls against diversion………, the distributor <u>should exercise due care in confirming the legitimacy of all orders prior to filling.</u>

Registrants must conduct an **independent analysis of suspicious orders prior to completing a sale** to determine whether the controlled substances are likely to be diverted from legitimate channels.
> McKesson starts from scratch on any noteworthy order or an order that would catch someone's eye  -  even an obvious mistake.

Lastly, registrants that routinely report suspicious orders, **yet fill these orders without first determining that order is not being diverted into other than legitimate medical, scientific, and industrial channels**, may be failing to maintain effective controls against diversion.  **Failure to maintain effective controls against diversion is inconsistent with the public interest** as that term is used in 21 USC 823 and 824, and may result in the revocation of the registrant's DEA Certificate of Registration.

3

HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                                                                                PPLP004473320