PSJ3

Exhibit 311

**Mallinckrodt** 

## CONFIDENTIALITY and RESTRICTED USE AGREEMENT

This CONFIDENTIALITY and RESTRICTED USE AGREEMENT (this "Agreement") is entered into as of the 28th day of September, 2012 ("Effective Date"), by and between Mallinckrodt LLC (f/k/a Mallinckrodt Inc.) ("Mallinckrodt"), with its principal place of business at 675 James S. McDonnell Boulevard, Hazelwood, Missouri 63042, and Cardinal Health 110, Inc. ("Company"), with offices at 7000 Cardinal Place, Dublin, Ohio 43017.

### RECITALS

WHEREAS, Mallinckrodt manufactures and sells certain pharmaceuticals that are "controlled substances" under federal law (collectively, "Controlled Substances");

WHEREAS, Company is a distributor/wholesaler that purchases Controlled Substances from Mallinckrodt and sells them to its customers, including retail pharmacies ("Pharmacy Customers");

WHEREAS, Controlled Substances are subject to regulation by the U.S. Drug Enforcement Administration ("DEA");

WHEREAS, as DEA registrants, Mallinckrodt and Company are required by DEA to design and operate a system to report suspicious orders of controlled substances to DEA pursuant to 21 C.F.R. 1301.74(b);

WHEREAS, DEA has expressed concerns with the possible diversion and abuse of certain Controlled Substances;

WHEREAS, DEA has identified pharmacy customer purchases of Controlled Substances from multiple distributors as a sign indicative of possible diversion;

WHEREAS, Company is presently able to monitor its own sales of Controlled Substances to its Pharmacy Customers, but cannot monitor whether those Pharmacy Customers are purchasing the same Controlled Substances from other distributors/wholesalers and, if so, how much they are purchasing;

WHEREAS, DEA does not inform distributors/wholesalers whether their Pharmacy Customers are purchasing the same controlled substances from other distributors/wholesalers;

WHEREAS, Mallinckrodt, through its charge back system, can identify some of the Pharmacy Customers who are purchasing Controlled Substances from multiple distributors/wholesalers and the volumes the Pharmacy Customers are purchasing from each distributor/wholesaler;

CONFIDENTIAL

MAL-NY00014657

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

MNK-T1_0000574362

WHEREAS, Mallinckrodt has agreed to provide assistance to Company's suspicious order monitoring program and related anti-diversion programs or processes involving Controlled Substances (collectively "SOM Program") by providing Company with the total number of other distributors/wholesalers from which its Pharmacy Customers are purchasing certain Mallinckrodt Controlled Substances and the aggregate volume of those Mallinckrodt Controlled Substances the Pharmacy Customers are purchasing from all distributors/wholesalers;

WHEREAS, in an effort to enhance the effectiveness of Mallinckrodt's SOM Program and reduce the likelihood of diversion of its Controlled Substances, Mallinckrodt agrees to provide such information to Company solely for use in Company's SOM Program, on the terms and conditions set forth herein; and

WEHREAS, Company understands the commercially sensitive nature of the information Mallinckrodt will provide under this Agreement and agrees to receive such information and utilize it strictly in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the promises, covenants and representations of the parties set forth herein, and other good and sufficient consideration, receipt of which is hereby acknowledged, Company and Mallinckrodt agree as follows:

1. Mallinckrodt intends to disclose certain proprietary Confidential Information to Company in connection with its SOM Program. As a condition to Mallinckrodt agreeing to furnish the Confidential Information to Company, Company hereby agrees, as set forth below, to restrict the use of that information and to treat confidentially such information that Mallinckrodt furnishes to Company, whether furnished in writing, orally, electronically or by means of inspection (such information being collectively referred to herein as the "Confidential Information").

2. For purposes of this Agreement, "Confidential Information" means: (a) the total number of distributors from which a Pharmacy Customer purchased certain Mallinckrodt Controlled Substances during a designated period of time and (b) the total number of tablets, capsules or other units of the Mallinckrodt Controlled Substance purchased by the Pharmacy Customer during the designated period of time.

3. The term "Confidential Information" does not include any information that (a) was known to Company prior to receipt from Mallinckrodt as evidenced by tangible records; (b) has become available to the public through no fault of Company; (c) is disclosed to Company at any time by a third party having the right to make such disclosure to Company and without any obligation of confidence on the part of Company to such third party with respect to such disclosure; (d) is disclosed by Company with Mallinckrodt's prior written approval; or (e) is independently developed by the employees or representatives of Company without access to the Confidential Information as evidenced by tangible records.

CONFIDENTIAL

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

MAL-NY00014658

MNK-T1_0000574363

4. In the event that Company is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process, but excluding requests from regulatory agencies, which is addressed below) to disclose all or any part of the information contained in the Confidential Information, Company agrees to (a) promptly notify Mallinckrodt of the existence, terms and circumstances surrounding such a request prior to any disclosure occurring so that Mallinckrodt may, with Company's commercially reasonable cooperation, seek an appropriate protective order and/or waive Company's compliance with the provisions of this Agreement, and (b) if disclosure of such information is required, disclose only that portion of any requested information which Company is absolutely required to disclose and use commercially reasonable efforts to cooperate with Mallinckrodt in its efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to information that is disclosed. Notwithstanding the foregoing, Company shall notify Mallinckrodt of any request from any regulatory agency to inspect or otherwise gain access to Confidential Information then in the possession of or known to Company. Company shall notify Mallinckrodt of such requests prior to permitting any third party access unless prior notice is not possible or practical. If prior notice is not possible or practical, Company will contact Mallinckrodt within five (5) business days and provide copies of all documents disclosed.

5. Except as provided above, nothing herein or the act of making disclosures hereunder shall be deemed to grant Company any right, option, or license, directly or indirectly, under any intellectual property right in or to Confidential Information of Mallinckrodt.

6. ALL CONFIDENTIAL INFORMATION IS PROVIDED BY MALLINCKRODT TO COMPANY "AS IS." MALLINCKRODT MAKES NO WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING THE USE, ACCURACY, COMPLETENESS, SAFETY, PERFORMANCE OR NONINFRINGEMENT OF ANY THIRD PARTY INTELLECTUAL PROPERTY RIGHTS RELATING TO THE INFORMATION. ANY WARRANTIES PROVIDED BY LAW OR CUSTOM, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES ARE DISCLAIMED BY COMPANY.

7. Mallinckrodt may provide or refuse to provide the Confidential Information at any time in its sole and absolute discretion. Nothing in this Agreement shall be construed as obligating Mallinckrodt to provide Confidential Information to Company, however, requests for Confidential Information shall not be unreasonably withheld or denied by Mallinckrodt.

8. Nothing herein shall be construed as creating an agency, joint venture, partnership, employment or other formal business relationship or association between the parties hereto, or obligating either party to enter into any subsequent agreement or business arrangement or to purchase or sell or provide any goods or services.

9. Company shall use Confidential Information solely as part of its evaluation of its Pharmacy Customers under its SOM Program and for no other purpose. In no event shall Company use

CONFIDENTIAL MAL-NY00014659

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER MNK-T1_0000574364

    the Confidential Information to its commercial advantage, to gain an advantage over its competitors or for any other anti-competitive reason.

10. Mallinckrodt shall provide Confidential Information to the following person ("SOM Contact"):

Michael A. Moné,
VP Associate Counsel - Regulatory
Cardinal Health
7000 Cardinal Place
Dublin, Ohio 43017

11. Company shall provide the Confidential Information only to individual employees of the Company who are responsible for the operation and maintenance of Company's SOM Program and to no other persons. In no event shall Company disclose Confidential Information to: (a) employees involved in any manner in Company's commercial purchase of Controlled Substances or in the sale, marketing or pricing of Controlled Substances or (b) any third party.

12. IN NO EVENT SHALL MALLINCKRODT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES OF ANY NATURE INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS OR BUSINESS INTERRUPTION, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. This Agreement shall continue until terminated by either party upon thirty (30) days advance written notice to the other or superseded by a subsequent written agreement which explicitly sets forth the obligations of the parties with respect to Confidential Information. Company's obligations of confidentiality and non-use hereunder will survive any termination of this Agreement, and will expire five (5) years from the date of disclosure of the Confidential Information. Company's obligation under Section 12 of this Agreement will survive termination of this Agreement.

14. If Mallinckrodt requests that Company do so, Company shall promptly destroy/delete all written and/or electronic documentation or data containing Confidential Information and any other written, recorded or machine readable material containing or reflecting any information in the Confidential Information and certify to Mallinckrodt that it has done so, provided that Company is not required to destroy/delete Confidential Information in its possession which it is required to retain pursuant to legal or regulatory requirements, a government request or court order. Notwithstanding the foregoing, Company may retain one (1) copy of the Confidential Information for archival purposes within Company's in-house legal department and such copy shall remain subject to the provisions of this Agreement.

15. No failure or delay by Mallinckrodt in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any

CONFIDENTIAL    MAL-NY00014660

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER    MNK-T1_0000574365

other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

16. This Agreement may be modified or waived only by a separate writing between the parties expressly so modifying this Agreement. This Agreement represents the entire understanding and agreement of the parties with respect to the protection of Confidential Information and supersedes any and all prior agreements or understandings, whether written or oral, concerning its protection.

17. Company acknowledges and agrees that money damages would not be an adequate remedy for any breach of this Agreement by Company and that Mallinckrodt shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach in addition to any monetary damages that might be available. Such remedy shall not be deemed to be the exclusive remedy for breach of a provision of this Agreement, but shall be in addition to all other remedies available to law or equity to Mallinckrodt.

18. Company shall not assign this Agreement without the prior written consent of Mallinckrodt, except that Company may assign this Agreement, in whole or in part, to an affiliate or to the successor (including the surviving company in any consolidation, reorganization, merger or demerger) or assignee of all or substantially all of its business to which this Agreement pertains without the consent of, but upon notice to, Mallinckrodt.

19. This Agreement shall be enforced by, and construed in accordance with, the internal laws of the State of Missouri, without giving effect to the principles of conflict of laws thereof.

20. If any provision of this Agreement is determined to be invalid or unenforceable, then such invalidity or unenforceability shall not invalidate or render unenforceable the entire Agreement, but rather the entire Agreement shall be construed as if not containing the particular invalid or unenforceable provision or provisions, and the rights and obligations of the parties shall be construed and enforced accordingly, provided that this does not materially change the terms of this Agreement. In addition, the parties hereby agree to cooperate with each other to replace the invalid or unenforceable provision(s) with a valid and enforceable provision(s) which will achieve the same result (to the maximum legal extent) as the provision(s) determined to be invalid or unenforceable.

21. This Agreement may be executed by the exchange of faxed executed copies, certified electronic signatures or copies delivered by electronic mail in Adobe Portable Document Format or similar format, and any signature transmitted by such means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original as against any party whose signature appears thereon, but all of which together shall constitute one and the same instrument.

CONFIDENTIAL                                                                                                                MAL-NY00014661

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER                                              MNK-T1_0000574366

IN WITNESS HEREOF, Mallinckrodt and Company have caused their duly authorized representatives to enter into this Agreement effective as of the Effective Date.

| MALLINCKRODT LLC | Cardinal Health 110, Inc. |
|---|---|
| By: *[signature]* <br> Donald A. Lohman <br> Associate General Counsel | By: _____ <br><br> Name: _____ <br><br> Title: _____ |

6

CONFIDENTIAL

MAL-NY00014662

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

MNK-T1_0000574367

IN WITNESS HEREOF, Mallinckrodt and Company have caused their duly authorized representatives to enter into this Agreement effective as of the Effective Date.

| MALLINCKRODT LLC | Cardinal Health 110, Inc. |
|---|---|
| By: *[signature]*<br>Donald A. Lohman<br>Associate General Counsel | By: *[signature]*<br>Name: Todd Cameron<br>Title: VP, supply chain integrity |

6

CONFIDENTIAL

MAL-NY00014663

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

MNK-T1_0000574368