# PSJ3
# Exhibit 339D

# UNITED STATES DEPARTMENT OF JUSTICE

### DRUG ENFORCEMENT ADMINISTRATION

|  |  |
|---|---|
| In the Matter of | |
| **Walgreen Co.;** | **Docket No. 13-1** |
| **Walgreen Co.** <br> **d/b/a Walgreens #03629;** | **Docket No. 13-9** |
| **Walgreen Co.** <br> **d/b/a Walgreens #04727;** | **Docket No. 13-10** |
| **Walgreen Co.** <br> **d/b/a Walgreens #06977** | **Docket No. 13-11** |
| | **CHIEF ADMINISTRATIVE LAW JUDGE** <br> **JOHN J. MULROONEY, II** |

## SUPPLEMENTAL PREHEARING STATEMENT
## ON BEHALF OF THE GOVERNMENT

Scott Lawson
Robert Walker
Michelle Gillice
Jonathan P. Novak
Attorneys
Diversion and Regulatory Litigation
Office of Chief Counsel
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152
(202) 307-8010 (office)
(202) 307-4946 (facsimile)

Dated: February 8, 2013

CONFIDENTIAL

WAGMDL00387838

Pursuant to the Administrative Law Judge's January 24, 2013 Amended and Consolidated Pre-Hearing Ruling and Protective Order, the United States Department of Justice, Drug Enforcement Administration ("DEA" or "Government") by and through its undersigned counsel, hereby respectfully submits the following supplement to its January 9, 2013, pre-hearing statements:

## SUMMARY OF TESTIMONY

In addition to the summary of testimony provided in the Government's Prehearing Statements, the following witnesses will additionally testify as detailed below.

**Donna Richards, Diversion Investigator**

Diversion Investigator Donna Richards will testify to her further review of controlled substance prescriptions obtained from the Walgreens Corporation, specifically those dispensed by Walgreens #03629. She will testify that several of the seized prescriptions did not contain the full addresses of the patient as required by 21 C.F.R. § 1306.05(a); nevertheless, these prescriptions were filled by Walgreens #03629. She will testify to other violations noted in the manner in which prescriptions were issued by a practitioner and eventually filled by Walgreens #03629.

As noted in the Government's January 9, 2013 pre-hearing statement, Investigator Richards was expected to testify to her review of Walgreens #03629's dispensing logs which revealed that prescriptions were filled for physicians located significant distances from the pharmacy. Investigator Richards (or alternatively Investigator Flagg) will further testify to Walgreens #03629's dispensing pursuant to prescriptions issued by Miami-based physicians. These physicians issued prescriptions to patrons from distant locations like Ohio, Kentucky, Texas and Oklahoma. Investigator Richards will testify that what distinguished these out of state patrons from the "snowbirds" that typically

2

WAGMDL00387839

descend upon southern Florida was the unusual manner in which they obtained prescriptions from a physician in Miami, only to make the four and a half hour trip to Hudson, Florida to fill the prescriptions.  Prof. Doering will also weigh in on these anomalous events and further posit that they presented red flags to the pharmacists at Walgreens #03629 that could not be resolved.

**Peter Flagg, Diversion Investigator**

Diversion Investigator Peter Flagg will further testify to Walgreens #03629's dispensing of controlled substances to customers from distant locations within Florida, including, but not limited to, Pensacola (approximately 405 miles or a six and one half hours from Hudson, Florida), Miami (approximately 307 miles or a five hour drive from Hudson, Florida) and Fort Lauderdale (approximately 292 miles or a nearly five hour drive from Hudson, Florida).  Investigator Flagg will testify to his further review of Walgreens #03629's dispensing records, including those of December 2010, and corroborate testimony of TFO Pascalli that the pharmacy did not dispense controlled substances to James McCune when the latter attempted to pass a forged prescription on December 21, 2010.

Investigator Flagg (or alternatively Investigator Richards) will further testify to his review of dispensing logs of prescriptions issued by various practitioners, including those identified in the Government's January 9, 2013 pre-hearing statement, including, but not limited to, Drs. Abaunza, Wayne, Reppy, and McNichol.  Investigator Flagg will testify that in preparation for his testimony, several prescriptions issued by the above physician were randomly selected.  He will testify to some of his observations, including the distances travelled by pharmacy customers and identical prescriptions issued to persons residing in the same household.  Specifically, Investigator Flagg will testify to

3

WAGMDL00387840

oxycodone prescriptions issued by Ronald Heromin, M.D. (Dr. Heromin) of Miami, Florida to customers residing in Somerset and surrounding areas in Kentucky. These customers would then make the four and a half hour trip to Hudson, Florida where the prescriptions would be filled by Walgreens #03629. Investigator Flagg will further testify to his further review of prescriptions issued by Dr. Reppy where the dispensing label for several of his prescriptions identified the physician's practice as a "Pill Mill." At least one Walgreens #03629 dispensing label alternatively referred to Dr. Reppy as an "Internet MD." Prof. Doering is expected to weigh in on these red flags that were not resolved by pharmacists at Walgreens #03629.

Investigator Flagg will further testify regarding Walgreens #03629 customers James and Peggy Norris who in late 2010 travelled more than four hours from their residence in Springhill (Florida) to Miami to obtain oxycodone prescriptions from Dr. Abaunza; they then made the return trip to Hudson to fill the prescriptions at Walgreens #03629. During the same period and into 2011, James Norris apparently engaged in doctor-shopping by obtaining oxycodone prescriptions from the aforementioned Dr. Heromin and these prescriptions were also filled at Walgreens #03629. Investigator Flagg will also testify that between December 2010 and March 15, 2011, Walgreens #03629 customer William Padgett doctor-shopped between Drs. Abaunza and Heromin and obtained prescriptions for oxycodone from both physicians where they were filled at Walgreens #03629. He will testify regarding additional instances of doctor-shopping by customers of Walgreens #03629. Prof. Doering is expected to testify that Walgreens #03629 did not resolve these obvious red flags before filling prescriptions for the Misters Norris and Padgett.

4

CONFIDENTIAL

WAGMDL00387841

In addition, a cursory review of Walgreens #03629's dispensing spreadsheet and the pharmacy's dispensing label for an oxycodone prescription issued to James Norris on December 21, 2010 revealed discrepancies in the spelling of the customer's street address (*Tike* Avenue as opposed to the apparently correct address of *Pike* Avenue in Springhill, Florida). Investigator Flagg found the same issues with prescriptions dispensed for Blake Gumm, a then 22 year old individual who also obtained oxycodone prescriptions from Dr. Heromin and filled them at Walgreens #03629. The pharmacy's dispensing labels dated December 29, 2010 and January 8, 2011 (both for oxycodone 30mg.) revealed an Ocala, Florida address[1] for the customer. However, Walgreens #03629's dispensing log reveals a Somerset, Kentucky address for Blake Gumm. Investigator Flagg will testify that Walgreens #03629's failure to maintain a complete and accurate record of each controlled substance dispensed was in violation of 21 C.F.R. § 1304.21. Investigator Flagg will further testify that on July 31, 2010, Walgreens #03629 filled a prescription for oxycodone under the retired DEA registration number of Michael Romano in violation of 21 C.F.R. § 1306.03.

**Professor Paul Doering**

<u>Testimony pertaining to Walgreens 03629 (Hudson)</u>

Prof. Doering will testify regarding the large volume prescribing of oxycodone and other "cocktail" drugs by Michael Strobee, M.D. and Daniel Bender, M.D., in addition to practitioners outlined in the Government's January 9, 2013 pre-hearing statement. Prof. Doering will explain why he considers the above physicians as "suspect

---

[1] "Walgreen's # 03629 dispensing log reveals that this address in Ocala, Florida was the same address for an individual by the name of Robert Gumm, who also obtained prescriptions for oxycodone (80mg and 30mg) from Dr. Heromin and filled them at Walgreen's #03629 on January 7 and 8, 2011. It is unclear the relationship between Robert and Blake Gumm, however, Prof. Doering will testify that the circumstances of these prescriptions presented yet another red flag that was not resolved by Walgreen's #03629.

5

WAGMDL00387842

doctors," based in relevant part upon their large volume prescribing of oxycodone and other drugs of abuse.  Prof. Doering will testify that such large volume prescribing is yet another red flag to a pharmacist and because of the heightened scrutiny that should be given to these types of prescribers, pharmacies should exercise caution when filling their prescriptions.  Prof. Doering will testify that Walgreens #03629 did not resolve the red flags presented by the prescriptions issued by Drs. Strobee and Bender before filling prescriptions issued by these practitioners.

<u>Testimony pertaining to Walgreens 04727 (Fort Pierce)</u>

Prof. Doering will testify about oxycodone Respondent dispensed pursuant to prescriptions issued by Dr. Barry Schultz despite red flags notated by Walgreens employees.  Prof. Doering will also testify about two prescriptions for oxycodone that Respondent's pharmacists dispensed after Dr. Schultz's medical license was suspended by the State of Florida on April 13, 2011.  Prof. Doering will testify that one of the two oxycodone prescriptions, which was dispensed on April 19, 2011, includes the notation: "LIC SUSP'D 4.14.11" next to Dr. Schultz's address.  Prof. Doering will testify that the red flags presented by Dr. Schultz's prescriptions due to his medical license suspension were not resolved prior to dispensing controlled substances on April 18 and 19, 2011.

Prof. Doering will testify that pattern prescribing of controlled substances, particularly prescriptions for oxycodone and alprazolam, is a "red flag" indicating a risk of illegitimate prescriptions.  Prof. Doering will testify that physicians that prescribe large volumes of controlled substances whose training are in areas other than pain management, is a "red flag".

6

WAGMDL00387843

**Group Supervisor Gayle Lane[1]**

Through the testimony of GS Lane, the Government will introduce additional prescriptions obtained pursuant to the AIW at Respondent's pharmacy on April 4, 2012. GS Lane will introduce a prescription for oxycodone/acetaminophen prescribed by Michael Carpino on October 14, 2011 under DEA registration AD9312353. GS Lane will also introduce a prescription for oxycodone/acetaminophen prescribed by Peter Vo on October 27, 2011 under DEA registration number AF1972086.

Through the testimony of GS Lane, the Government will introduce emails pertaining to controlled substance dispensing at Walgreens 04727 produced by Respondent in response to an Administrative Subpoena dated March 19, 2012.

**George Corripio, Pharmacist**

Mr. Corripio will be asked to testify about Walgreens corporate and regional management oversight, guidance, and on-site visits pertaining to controlled substance dispensing at Walgreens 04727.

**Andrea Cohen, Pharmacy Manager**

Ms. Cohen will be asked to testify about red flags pertaining to additional prescriptions to which she initialed and signed her pharmacy license number including prescriptions issued by Drs. Ralph Miniet, Astrid Febre, Ramiro Abaunza, and Barry Schultz. Ms. Cohen will be asked to testify about Walgreens corporate and regional management oversight, guidance, and on-site visits pertaining to controlled substance dispensing at Walgreens 04727.

---

[1] Diversion Investigator Gonzales and DPM Susan Langston may testify to portions of GS Lane's proposed testimony, in lieu of GS Lane, as outlined below and in the Government's Prehearing Statement, Docket 13-10, dated January 9, 2013.

7

WAGMDL00387844

**Melissa Kayes, Pharmacy Technician**

Ms. Kayes will be asked to testify about Walgreens corporate and regional

management oversight, guidance, on-site visits pertaining to controlled substance

dispensing at Walgreens 04727.

**Wesley Rohn, Pharmacy District Supervisor**

Mr. Rohn will be asked to testify about guidance he provided to Walgreens 04727

as well as his oversight of the pharmacy and on-site visits to examine and monitor the

controlled substance dispensing.

## PROPOSED ADDITIONAL WITNESSES and TESTIMONY

30.   Domingo Gonzales, Diversion Investigator
      DEA Miami Field Division
      2100 North Commerce Parkway
      Weston, Florida  33326

31.   Timothy Martin
      Diversion Investigator
      DEA Tucson District Office
      6970 South Palo Verde Road
      Tucson, AZ  85756-5006

32.   Dwayne Pinon
      Senior Attorney
      Litigation and Regulatory Law
      Walgreen Co.
      104 Wilmot Rd., MS 1434
      Deerfield, IL  60015

**30.    Domingo Gonzales, Diversion Investigator**

Following testimony about his experience and qualifications as a Diversion

Investigator, DI Gonzales will testify as follows.

8

CONFIDENTIAL

WAGMDL00387845

Testimony pertaining to Walgreens # 04727 (Fort Pierce) [2]

DI Gonzales will introduce several spreadsheets which he excerpted from Respondent's electronic dispensing log for Walgreens 04727 which summarize dispensing to particular customers on May 4, June 1, June 28, July 26, and September 21, 2011, as well as dispensing pursuant to prescriptions issued by Dr. Ralph Miniet on August 10, 2011 and October 4, 2011.

DI Gonzales will also introduce spreadsheets he created from Respondent's electronic dispensing log for prescriptions issued by Drs. Barry Schultz, Ralph Miniet, Kenneth Pearlberg, and Alexandra Taylor. With respect to spreadsheets pertaining to prescriptions issued by Drs. Miniet, Pearlberg, and Taylor, DI Gonzales will testify as to how he calculated the percentage of "cocktail prescriptions" and oxycodone 30mg prescriptions paid for by cash (including payment through use of non-insurance discount cards.) [3]

More specifically, DI Gonzales will testify that between January 1, 2010 and March 21, 2012, Respondent dispensed 723 prescriptions for controlled substances prescribed by Dr. Kenneth Pearlberg, of which 523 prescriptions or 72 percent were for "cocktail" controlled substances (oxycodone, alprazolam, and carisprodol) which are highly sought for illicit use. DI Gonzales will testify that 62 percent of the prescriptions for oxycodone 30mg were paid for with cash (including use of non-insurance discount cards).

DI Gonzales will testify that between October 20, 2010 and October 31, 2011, Respondent dispensed 745 prescriptions for controlled substances prescribed by Dr.

---

[2] GS Lane may testify to portions of DI Gonzales testimony, in lieu of DI Gonzales, as outlined below.
[3] The proposed testimony pertaining to cocktail prescriptions and cash payments for prescriptions issued by Drs. Pearlberg, Miniet and Taylor revises the proposed testimony of GS Lane in the Government's Prehearing Statement Docket 13-10, at11-12.

9

CONFIDENTIAL

WAGMDL00387846

Ralph Miniet of which 542 or 73 percent were for "cocktail" controlled substances: oxycodone, alprazolam and carisoprodol.  DI Gonzales will testify that 86 percent of the prescriptions for oxycodone 30mg were paid for with cash (including use of non-insurance discount cards.)

DI Gonzales will testify that between March 30, 2010 and March 20, 2012, Respondent dispensed 657 prescriptions for controlled substances prescribed by Dr. Alexandra Taylor, of which 514 prescriptions or 78 percent were for "cocktail" controlled substances (oxycodone, alprazolam and carisoprodol).  DI Gonzales will testify that 82 percent of the prescriptions for oxycodone 30mg were paid for with cash (including use of non-insurance discount cards.)

Through the testimony of DI Gonzales, the Government will introduce a spreadsheet excerpted from Respondent's electronic dispensing log for dispensing events that correspond to controlled substance prescriptions issued by Drs. John Wolf, Astrid Febre, Barry Schultz, Ronald Heromin and Ramiro Abaunza in which pharmacists' warnings about the prescriber are printed on the prescription label.

Through the testimony of DI Gonzales, the Government will introduce professional licensure verification from the Florida Department of Health identifying Peter Vo and Michael Carpino as physician assistants.  DI Gonzales will introduce a summary chart he created from Respondent's dispensing log showing that on October 14, 2011, Respondent dispensed 90 dosage units of oxycodone/acetaminophen prescribed by Michael Carpino under DEA registration number AD9312353.  On October 27, 2011, Respondent dispensed 60 dosage units of oxycodone/acetaminophen prescribed by Peter Vo under DEA registration number AF1972086.  DI Gonzales will introduce DEA certificate of registration AD 9312353 identifying Richard Allen Dube, M.D., as the

CONFIDENTIAL

registrant and DEA certificate of registration AF1972086 identifying Gerard Quincy C Flores, M.D., as the registrant.

Testimony Pertaining to Walgreens #03629 (Hudson)

DI Gonzales will testify to his preparation of several spreadsheets excerpted from Walgreens #03629's electronic dispensing log. Specifically, he will testify to his preparation of spreadsheets of Walgreens #03629's dispensing pursuant to prescriptions issued by Michael Strobee, M.D., Daniel Bender, M.D., and Ronald Heromin, M.D., as well as Drs. Abaunza, Reppy, McNichol, Wayne, Wolffe, Legowik and Glusman.

Investigator Gonzales will further testify to his preparation of a chart showing the distances travelled by customers of Walgreens #03629. The distances measured and charted will not only cover travel from the practice locations of the prescribing physicians to Walgreens #03629, but the distances travelled by these customers from their residential locations to physician locations. In at least one instance, the distance travelled by a customer from his listed residence in Pensacola, Florida to his physician's office in Miami was approximately 674 miles or a nine hour drive. The above distance and travel times were calculated based on Walgreens #03629's dispensing and prescription data.

Investigator Gonzales will further testify to his preparation of spreadsheets showing Walgreen's #03629's Customer Dispensing History by Drug. The spreadsheets will show Walgreen's #03629's dispensing for Michael Strobee, M.D., Daniel Bender, M.D., and Ronald Heromin, M.D., as well as the aforementioned Drs. Abaunza, Reppy, McNichol, Wayne, Wolffe, Legowik and Glusman. The spreadsheets will provide a history of prescriptions issued by the above physicians. Investigator Gonzales will also identify instances where prescriptions issued by the above physicians included drug

11

WAGMDL00387848

cocktails consisting of oxycodone, alprazolam and/or carisoprodol.  Again, Investigator Gonzales will testify that these dispensing history spreadsheets were derived from Walgreens #03629 dispensing and prescription data.  Professor Paul Doering will also testify to these drug combinations and how they should inform a pharmacists' decision on whether or not such prescriptions should be filled.

**31.    Timothy Martin, Diversion Investigator**

DI Martin, after describing his training and experience, will testify about his investigation of the Walgreens Tempe Central Pharmacy Operations (Tempe CPO) facility at 8350 S. River Parkway, Tempe, AZ 85284. This facility is registered with DEA as Walgreen's Mail Service, Inc., under DEA number BW4197883.  The Tempe CPO facility performs central fill activities coincident to its registration as a retail chain pharmacy.

DI Martin will describe the basis for his investigation of this facility and the interviews he conducted while inspecting this registrant.  He will testify that in March 2011, he informed Matt Cook, the Pharmacy Operations Manager at the Tempe CPO, that a review of central fill prescription records at Walgreens retail pharmacy #4102 in Tucson revealed that the words "Central Fill" were not written on the face of prescriptions that pharmacy #4102 sent to the Tempe CPO for filling, in violation of 21 C.F.R. § 1306.27(a)(1).  DI Martin will testify that he has subsequently visited a number of Walgreens pharmacies in the Tucson area and confirmed that they also do not comply with the regulation when submitting prescriptions to the central-fill facility.

DI Martin (or alternatively DI Linda Stocum) will testify that since May of 2011, Mr. Cook has been the Pharmacy Operations Manager at the Orlando Central Fill facility

12

CONFIDENTIAL

WAGMDL00387849

that provides central-fill services for Walgreens Florida retail pharmacies, including each of the Respondent pharmacies in the consolidated hearing.

**32.  Dwayne Pinon, Senior Attorney, Walgreen Co.**

The Government requests to call Walgreens' attorney Dwayne Pinon as a witness. The basis for requesting Mr. Pinon as a substantive witness is as follows:

In the documents Respondent provided on February 1, 2013 pursuant to the Court's order concerning exchange of proposed exhibits for the pharmacy matters, Docket Nos. 13-9, 13-10, and 13-11, Respondent provided a number of proposed exhibits that relate not to pharmacy matters, but to the allegations concerning suspicious order reporting raised only in the original, Jupiter Distribution Center matter, Docket No. 13-1. Notwithstanding that additional documents for the distribution center matter were to be exchanged with Supplemental Prehearing Statements on December 7, 2012, Respondents Proposed Exhibits 295 – 300 are only relevant, if at all, to the suspicious order issue.

Surprisingly, a number of these documents are communications from attorney Dwayne Pinon and appear to be offered as evidence of the defense, previously raised in Respondent's Prehearing Statement, that their suspicious order reporting system is based on DEA's guidance for the reporting of suspicious List I chemical transactions.  (See Respondent's Prehearing Statement for Docket No. 13-1, Proposed Testimony of Denny Murray, p. 11.)  Respondent's Proposed Exhibit 298 purports to be a letter from Mr. Pinon to a DEA official in Detroit, in which he advises that Walgreens is revising its controlled substance suspicious order system in accordance with formulas taken from DEA's Chemical Handlers Manual, which itself is listed as Respondent's Proposed Exhibit 296.  In its Proposed Exhibit 299, Respondent offers an email sent by Mr. Pinon on March 26, 2008, in which he also discusses the propriety of using the chemical

13

WAGMDL00387850

suspicious order system for controlled substances.  Respondent has previously offered a similar email from Mr. Pinon as Proposed Exhibit 250.

By offering Exhibits 250, 298, and 299, communications from Mr. Pinon to DEA officials, as purported evidence of Walgreens' reliance on the chemical handlers program for designing its controlled substance suspicious orders program, Walgreens has made the reasonableness of any conclusions or advice drawn from these documents a matter in controversy.  Rather than accept the hearsay nature of these documents, the Government is entitled to elicit testimony from Mr. Pinon about his role in the development of Walgreens' suspicious order systems, the context of these communications, whether or not he made or received any other communications from DEA on this issue, and whether or not Mr. Pinon considered the ample countervailing sources of information that refute his supposition that the Chemical Program should be used as guidance for controlled substance suspicious order reporting.

Department of Justice policy requires approval of the Criminal Division prior to serving an attorney with a subpoena. See United States Attorney Manual, § 9-13.410. The Government has submitted the request seeking this approval through the Office of Enforcement Operations (OEO).   Attached hereto is a proposed subpoena for Mr. Pinon. The Government will not serve such unless and until OEO provides the necessary approval.

14

WAGMDL00387851

## OTHER MATTERS WHICH MAY AID IN THE EXPEDITIOUS DISPOSITION OF THE HEARING

The Government hereby notices this tribunal of its intent to offer the testimony of

TFO Janet Pascalli via VTC. The expected VTC location and contact information is as

follows:

> Drug Enforcement Administration
> Tampa District Office
> 4950 West Kennedy Blvd.
> Suite 400
> Tampa, Florida 33609
> Contact point: TDO Tech Ops Special Agent Ken Harris, (813) 287-4761.

## PROPOSED ADDITIONAL DOCUMENTARY EXHIBITS

Gov't. Ex. 177, James McCune prescription dated December 16, 2010

Gov't. Ex. 178, Pasco County Police report, continuation sheet and attached affidavit

Gov't. Ex. 96-101, 176, and 204-206, Excerpts - Walgreen's #03629's dispensing log of selected practitioners

Gov't. Ex. 109, 189-197, Copies of randomly selected prescriptions filled by Walgreens 03629

Gov't. Ex. 184, 185, Prescriptions issued by Michael E. Romano, M.D.

Gov't. Ex. 189-197, Walgreen's #03629 -- Customer Dispensing History by Drug

Gov't. Ex. 198, Chart – Customer Distance/Travel Time

Gov't. Ex. 200, Prescriptions - James and Peggy Norris

Gov't. Ex. 201, Robert Reppy, D.O. "Internet MD" prescription

Gov't. Ex. 202, Robert Reppy, D.O. "Pill Mill" prescriptions

Gov't. Ex. 203, Certified registration history -- Michael E. Romano, M.D. (retired DEA registration number FR0695722

Gov't. Ex. 207, Andrea Cohen DOH License Verification

Gov't. Ex. 208, DEA Certificate of Registration, No. AD9312353, Richard Allan

CONFIDENTIAL

WAGMDL00387852

Dube, M.D.

Gov't. Ex. 209, DEA Registration Certificate of Registration, No.AF1972086, Gerard Quincy Flores, M.D.

Gov't. Ex. 210, Walgreens 04727 Dispensing Log Excerpt Corresponding to Ex. 125 prescriptions

Gov't. Ex. 211, Physician Assistant Oxycodone Prescriptions

Respectfully submitted,

UNITED STATES DEPARTMENT OF JUSTICE
Drug Enforcement Administration

By: _____
Scott Lawson
Attorney
Office of Chief Counsel
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152

Dated: February 8, 2013

16

CONFIDENTIAL

WAGMDL00387853

## CERTIFICATE OF SERVICE

I hereby certify that on the date signed below, I caused the original and two copies of the foregoing SUPPLEMENTAL PREHEARING STATEMENT ON BEHALF OF THE GOVERNMENT to be hand delivered and faxed to the DEA Office of the Administrative Law Judges, and I caused a copy of the same to be sent *via e-mail* and first class mail to counsel for Respondent at the following address:

Phillip J. Perry
Nathan H. Selzer
Allen M. Gardner
Lantham & Watkins, LLP
555 Eleventh Street, NW
Suite 1000,
Washington, D.C. 20004
Email: Phi.Perry@lw.com
        Allen.Gardener@lw.com
        Nathan.Seltzer@lw.com

2/8/13

Scott Lawson

17

CONFIDENTIAL

WAGMDL00387854

[Page intentionally left blank]

CONFIDENTIAL

WAGMDL00387855

# UNITED STATES DEPARTMENT OF JUSTICE
## Drug Enforcement Administration

| | |
|---|---|
| IN THE MATTER OF | DOCKET NO. 13-1 |
| WALGREEN, CO. | |
| WALGREEN, CO. D/B/A WALGREENS #03629, | DOCKET NO. 13-9 |
| WALGREEN, CO. D/B/A WALGREENS #04727, | DOCKET NO. 13-10 |
| WALGREEN, CO. D/B/A WALGREENS #06997, | DOCKET NO. 13-11 |
| WALGREEN, CO. D/B/A WALGREENS #03836, | DOCKET NO. 13-16 |
| WALGREEN, CO. D/B/A WALGREENS #04391, | DOCKET NO. 13-18 |
| WALGREEN, CO. D/B/A WALGREENS #03099 | DOCKET NO. 13-20 |

## GOVERNMENT'S PREHEARING STATEMENT FOR
## WALGREENS #03836

FRANK W. MANN
Senior Attorney
Diversion and Regulatory Litigation
Office of Chief Counsel
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152
(202) 353-9647 (office)
(202) 307-4946 (facsimile)

Dated: March 8, 2013

CONFIDENTIAL

Pursuant to the February 12, 2013 Order for Prehearing Statements and the
February 27, 2013, Order Granting the Government's Unopposed Motion for
Enlargement of Prehearing Statement Deadlines in Docket No. 13-16 , the United States
Department of Justice, Drug Enforcement Administration (DEA or Government), hereby
submits its Prehearing Statement regarding Walgreens 03836.

## I. ISSUE

Whether DEA should revoke DEA Certificate of Registration AW8830247 issued
to Walgreen Co. 03836 ("Respondent"), pursuant to 21 U.S.C. §§ 824(a)(4) and 823(f)
and deny any pending applications for renewal or modification of such registration,
pursuant to 21 U.S.C. § 823(f).

## II. REQUESTED RELIEF

The Government requests a ruling by the Administrative Law Judge
recommending that the Respondent's Certificate of Registration AW8830247 be revoked,
and that any pending application for renewal or modification of such registration be
denied.

## III. PROPOSED STIPULATIONS OF FACT[1]

1.      Respondent is registered with DEA as a chain pharmacy authorized to handle
controlled substances in Schedules II-V under DEA registration number AW8830247 at
9332 U.S. Highway 19, Port Richey, Florida 34668.  DEA registration AW8830247
expires by its terms on May 31, 2013.

2.      Respondent is licensed by the Florida Department of Health as a pharmacy under
license number PH7367.

3.      Oxycodone is a Schedule II controlled substance pursuant to 21 C.F.R. § 1308.12(b)(1)(xiii).

---

[1] The Government anticipates discussing additional stipulations with Respondent.

2

CONFIDENTIAL

4.    Methadone is a Schedule II controlled substance pursuant to 21 C.F.R. § 1308.12(c)(15).

5.    Hydromorphone is a Schedule II controlled substance pursuant to 21 C.F.R. § 1308.12(b)(1)(vii).

6.    Alprazolam is a Schedule IV controlled substance pursuant to 21 C.F.R. § 1308.14(c)(1).

## IV. PROPOSED WITNESSES[2]

1. Susan Langston
   Diversion Program Manager
   DEA Miami Field Division
   2100 North Commerce Parkway
   Weston, Florida 33326

2. Gayle Lane
   Diversion Group Supervisor
   DEA Miami Field Division
   2100 North Commerce Parkway
   Weston, Florida 33326

3. Domingo Gonzales and/or Dianne Williams
   Diversion Investigator
   DEA Miami Field Division
   2100 North Commerce Parkway
   Weston, Florida 33326

4. Paul L. Doering, M.S.
   Distinguished Service Professor of Pharmacy Practice, Emeritus
   College of Pharmacy
   University of Florida
   101 South Newell Drive
   HPNP Bldg 212
   Room 3307
   Gainesville, Florida 32611

5. Cassie Mulvey
   2667 Sabal Springs Circle
   Apt 204
   Clearwater, FL 33761

6. Tara Karavicus
   8102 N. Sheldon Road
   Apt. 1008
   Tampa, FL 33615

---

[2] In addition to the witnesses identified below, DEA reserves the right to call any of the witnesses listed by Respondent on matters identified by Respondent.

3

CONFIDENTIAL

WAGMDL00387858

7. Shane Van Gordon
   11438 Rohrman Road
   Port Richey, FL 34668

8. Jade Leppi
   9118 Ruger Drive
   New Port Richey, FL 34655

9. Kate Wilson
   8851 Candlewick Lane
   Port Richey, FL 34668

10. Sanjay Patel
    1524 Stipule Court
    Trinity, FL 34655

11. Fred Casale
    1473 Mallard Flace
    Palm Harbor, FL 34683

12. Michael Nunez
    7815 Talisman Road
    Port Richey, FL 34668

13. Terrence Myers
    18511 US Highway 41 N
    Lutz, FL 33549

14. Dale Randall
    21216 Snow Hill Road
    Brooksville, FL 34601

15. Quang Tran
    2432 Mountain Ash Way
    New Port Richey, FL 34655

## V. SUMMARY OF TESTIMONY

1. **Susan Langston, Diversion Program Manager ("DPM"), Miami Field Division[3]**

   DPM Langston will testify to her background, education and training as a DEA

Diversion Investigator, Diversion Group Supervisor, and Diversion Program Manager.

---

[3] In the event DPM Langston is unable to testify, GS Lane will offer the proposed testimony set forth below.

CONFIDENTIAL

WAGMDL00387859

DPM Langston will testify about the problem of prescription painkiller diversion and abuse in Florida and the proliferation of "pill mills" employing unscrupulous doctors who prescribe controlled substances outside the usual course of professional practice or for other than legitimate medical purposes. DPM Langston will testify that since at least 2009, the State of Florida has been epicenter of a notorious, well-documented epidemic of prescription drug abuse. The controlled substances most commonly associated with this epidemic are Schedule II pain relievers such as oxycodone; Schedule IV benzodiazepines, such as alprazolam; and Schedule IV muscle relaxers, such as carisoprodol.

DPM Langston will testify that in response the prescription pill epidemic, in 2010, the Florida legislature passed a law in 2010 that restricted the ability of pain clinics to dispense controlled substances onsite. DPM Langston will testify that once illicit prescriptions could not be filled at the pain clinics, patients of the pain clinics had to go to pharmacies to have their prescriptions filled. DPM Langston will testify that with the new law came a wave of new pharmacy applicants for DEA registrations.

DPM Langston will testify that upon receiving applications from retail pharmacy owners in South Florida, DEA regularly conducts pre-registration interviews to discuss pharmaceutical drug diversion. In June 2011, Walgreens Co. submitted an application for a new pharmacy DEA registration in Miami. In response to Walgreen's new pharmacy application, DEA scheduled a meeting with Walgreens pharmacy representatives on August 19, 2011. DPM Langston will testify that in preparation for the meeting, DEA conducted a search of Walgreens Florida pharmacies' oxycodone purchases through DEA's Automation of Reports and Consolidated Orders System (ARCOS), which revealed that Respondent had significantly increased its oxycodone

5

WAGMDL00387860

CONFIDENTIAL

purchases between 2009 and 2011. DPM Langston will introduce an ARCOS report which shows that in 2010 Respondent had purchased a total of approximately 826,500 dosage units of oxycodone. For the first seven months of 2011, Respondent had purchased 1,284,200 dosage units of oxycodone. DPM Langston will introduce a chart prepared for the meeting with Walgreens entitled "2010 Top 100 Florida Walgreens Pharmacy Buyers of Oxycodone." The chart shows that by July 31, 2011, in just seven months, Respondent surpassed its 2010 oxycodone purchases, having purchased 1,284,200 dosage units of oxycodone. DPM Langston will testify that such a dramatic increase in oxycodone purchases is an indication to DEA investigators that pharmaceutical diversion might be occurring and, coupled with the timing of the state law changes regarding pill mill dispensing, should have been an indication or "red flag" to Respondent that it was likely dispensing oxycodone pursuant to illegitimate prescriptions.

DPM Langston will testify that at the August 19, 2011, meeting, DEA investigators met with Walgreen Co. officials to discuss Walgreens' oxycodone sales in Florida and oxycodone diversion in Florida. Present on behalf of Walgreen Co. were Dwayne Pinon (corporate in-house counsel), Ed Forbes (Market Loss Prevention Director), Wesley Rohn (Pharmacy District Supervisor), Joan Bustelo (Pharmacy District Supervisor), Anne-Marie Aldrick (Pharmacy District Supervisor), Cesar Cedeno (Pharmacy District Supervisor), Lakeisha Axem (Pharmacy Supervisor), Sandra Vazquesz (Pharmacy Supervisor), and Susan Thompson (Loss Prevention Manager).

DPM Langston will testify that she and Group Supervisor (GS) Gayle Lane discussed in detail suspicious activity or "red flags" indicating that a controlled substance prescription may have come from a rogue pain management clinic, may not have been issued for a legitimate medical purpose, and/or may have been issued outside the usual

6

CONFIDENTIAL

course of professional practice. DPM Langston will testify that she and GS Lane identified suspicious activity or red flags related to customers indicating a risk of diversion. Such red flags included the following: people from out-of-state using questionable Florida Identification Cards, groups of patients with the same prescriptions for the more common drugs of abuse (typically oxycodone 30mg, oxycodone 15mg, Alprazolam 2mg and Soma, and one or two non-controlled prescriptions), groups of patients receiving the same prescriptions and same diagnosis, patients between 22 and 45 years old, patients traveling significant distances to the pharmacy and/or to the pain management physician, and patients paying with cash. DPM Langston will testify that patients paying with non-insurance discount cards to pay for controlled substance prescriptions are considered the equivalent of cash payments.

DPM Langston will testify that DEA also discussed physician red flags, or suspicious conduct, indicating the prescriptions were issued outside the usual course of professional practice or for other than a legitimate medical purpose including: doctors writing prescriptions for the same common drugs of abuse; doctors using the same diagnosis for multiple prescriptions; and doctors whose specialties are unrelated to pain management (e.g., obstetrics, pediatrics, or ophthalmology) prescribing large quantities of Schedule II controlled substances.

DPM Langston will testify that she and GS Lane informed Walgreens representatives of information compiled by ARCOS pertaining to Respondent and other Walgreens pharmacies' purchases of oxycodone. DPM Langston will testify that Walgreens representatives were told that the average US pharmacy purchased 69,500 dosage units of oxycodone in 2010, whereas the average Florida pharmacy purchased 134,000 dosage units of oxycodone in 2010. DPM Langston will testify that the

7

CONFIDENTIAL

summary chart entitled "2010 Top 100 Florida Walgreens Pharmacy Buyers of Oxycodone" was discussed at the meeting and provided to Walgreens official Dwayne Pinon. DPM Langston will testify that Walgreens representatives were told that all of its pharmacies identified on the first page of the chart had, in the first seven months of 2011, ordered more than double the amount of oxycodone purchased by the average Florida pharmacy in 2010. Respondent was identified on the first page of the chart as having purchased 781,000 dosage units of oxycodone in the first seven months of 2011 and ranked #39 in the US for top purchasers of oxycodone. The ARCOS report will show that by the end of 2011, Respondent's oxycodone purchases increased to approximately 1,192,000 dosage units.

DPM Langston will also testify regarding an electronic disk that was provided by Walgreens Corporation that captured the dispensing records for Schedule II-V controlled substances from January 1, 2010, through April 4, 2012 ("03836 database"). DPM Langston will testify that Respondent represented the 03836 database to be a true and accurate documentation of controlled substances sold by Respondent during the above described time period.

## 2. Gayle Lane, Group Supervisor ("GS"), Miami Field Division[4]

Following testimony regarding her experience and qualifications as a Diversion Group Supervisor, GS Lane will testify to the background of the investigation into Respondent, which stemmed from Respondent and other Walgreens pharmacies' dramatic spike in oxycodone purchases.

---

[4] GS Lane may testify to portions of DPM Langston's testimony, in lieu of DPM Langston, as outlined above.

8

CONFIDENTIAL

Case: 1:17-md-02804-DAP  Doc #: 2357-3  Filed: 08/14/19  28 of 71.  PageID #: 381595

GS Lane will testify that on August 19, 2011, DEA met with Walgreens representatives.  GS Lane will testify that she and DPM Langston advised Walgreens of customer and physician specific red flags to look for prior to dispensing prescriptions for controlled substances.  These red flags pertained to both patient and physician conduct, including physicians (1) prescribing the same commonly abused controlled substances; (2) utilizing the same diagnosis; and (3) who were not certified in pain management and/or practicing outside their specialty.

GS Lane will testify that on April 4, 2012, an Administrative Inspection Warrant (AIW) was executed at Walgreens # 03836.  Pursuant to the AIW, investigators obtained inventory records, and prescriptions for all Schedule II controlled substances dispensed from January 1, 2010, through April 4, 2012, as well as DEA Forms 222, inventories, and copies of Schedule III-V prescriptions dispensed from January 1, 2010, though April 4, 2012.  GS Lane will also testify that on May 7, 2012, the Miami Diversion Group received an electronic disk ("03836 database") provided by the Walgreens Corporation which captures Respondent's dispensing records for Schedule II-V controlled substances from January 1, 2010, through April 4, 2012.  She will testify that a review of the data on the 03836 database revealed that Respondent dispensed 1,807,353 dosage units of oxycodone from January 1, 2010, through April 4, 2012, and dispensed 24,193 Schedule II prescriptions during that same time period.  Of the 24,193 Schedule II prescriptions, 1,449 were dispensed for oxycodone 15 mg, with a total dispensing of 165,020 dosage units.  The 03836 database also revealed that Respondent dispensed 9,043 prescriptions for oxycodone 30 mg, for a total of 1,642,333 dosage units.

GS Lane will introduce the 03836 database and summary charts which will show that Respondent dispensed controlled substances pursuant to prescriptions that presented

9

CONFIDENTIAL

obvious red flags. GS Lane will also testify that the 03836 database revealed that numerous prescriptions filled by Respondent were written by practitioners in South Florida. GS Layne will testify that these practitioners were located well outside reasonable commuting distances for customers utilizing Respondent's pharmacy. Based on the 03836 database and the prescriptions obtained pursuant to the AIW, GS Lane will testify that many of the customers appeared to frequent these practitioners as a group and had their prescriptions for controlled substances filled on the same date and around the same time as each other.

GS Lane will testify that Respondent's dispensing log reveals that it filled prescriptions issued by doctors who routinely prescribed oxycodone and alprazolam "cocktails" who practiced outside their specialties, who were located significant distances away from the pharmacy, and whose patients paid for their prescriptions with cash or were using non-insurance discount cards.

## 4.    Domingo Gonzales, Diversion Investigator[5]

Following testimony about his experience and qualifications as a Diversion Investigator, DI Gonzales will testify about his review of Respondent's prescription records, including the actual prescriptions and prescription labels, and the 03836 database. DI Gonzales will testify that these materials indicated that Respondent dispensed controlled substances on numerous occasions despite the existence of multiple red flags for diversion, including, but not limited to: (1) customers paying cash; (2) customers using cash discount cards; (3) customers presenting prescriptions for common drug "cocktails" such as oxycodone and alprazolam; hydrocodone and alprazolam;

---

[5] In the event DI Gonzales is unable to testify, DI Dianne Williams will offer the proposed testimony below.

10

CONFIDENTIAL

hydrocodone, oxycodone, and alprazolam; and oxycodone, alprazolam, and carisoprodol;

(4) customers obtaining prescriptions for controlled substances from physicians with

offices located outside reasonable commuting distances from Respondent's pharmacy

(5) customers residing outside reasonable commuting distances from their physicians'

offices and/or Respondent's pharmacy; (6) multiple customers obtaining identical or

nearly identical prescriptions for controlled substances from the same physician on the

same day and presenting those prescriptions to Respondent's pharmacy at the same time;

and (7) customers residing outside reasonable commuting distances from their physicians

and/or Respondent's pharmacy who reside at the same address; and (8) customers

presenting Florida identification cards.

DI Gonzales will testify that the 03836 database and prescriptions revealed the

following:

a.      From April 2011 through July 2011, Walgreens 03836 pharmacists and/or
pharmacy technicians Cassie Mulvey, Shane Van Gordon, Tara Karpavicus, Jade
Leppi, Kate Wilson, Sanjay Patal, and Fred Casale dispensed controlled
substances, including oxycodone, alprazolam, hydrocodone, and hydromorphone,
to persons residing in Pensacola, Florida, who had obtained their prescriptions for
controlled substances from Ramiro Abaunza, M.D., ("Dr. Abaunza"), a
practitioner practicing in Miami, Florida. DI Gonzales will testify that, in order to
obtain these prescriptions and have them filled at Walgreens 03836, customers
living in Pensacola, Florida, who obtained prescriptions from Dr. Abaunza would
have had to travel approximately 1397 miles roundtrip in order to get the
prescriptions filled at Walgreens 03836.[6] The persons who obtained the
controlled substances, the dates of dispensing, the controlled substances obtained,
and the Walgreens 03836 employee who dispensed the controlled substances are
as follows:

| Date | Customer | Residence | Controlled substances dispensed | Pharmacist/tech |
|------|----------|-----------|--------------------------------|-----------------|
|      |          |           |                                |                 |

---

[6]

The Government will seek to obtain a stipulation from Walgreens regarding the distances involved in the
various transactions noticed in this matter.

CONFIDENTIAL

WAGMDL00387866

| 4.9.11 | J.C. | Pensacola | Alprazolam, oxycodone, hydrocodone | Mulvey |
|--------|------|-----------|-----------------------------------|--------|
| 4.9.11 | M.S. | Pensacola | Alprazolam, oxycodone | Mulvey |
| 4.14.11 | J.M. | Pensacola | Oxycodone | Casale |
| 4.15.11 | H.R. | Pensacola | Alprazolam, hydromorphone | Van Gordon |
| 4.19.11 | H.N. | Pensacola | Alprazolam, hydrocodone | Van Gordon |
| 4.23.11 | V.J. | Pensacola | Oxycodone | Karpavicus |
| 4.23.11 | A.B. | Pensacola | Oxycodone | Karpavicus |
| 4.23.11 | J.M.-1 | Pensacola | Oxycodone | Karpavicus |
| 4.26.11 | J.B. | Pensacola | Oxycodone, alprazolam | Leppi, Van Gordon |
| 4.26.11 | M.J. | Pensacola | Oxycodone, alprazolam | Van Gordon |
| 4.26.11 | A.J. | Pensacola | Oxycodone, alprazolam, hydrocodone | Van Gordon |
| 4.28.11 | A.F. | Pensacola | Oxycodone, alprazolam | Wilson |
| 4.28.11 | D.D. | Pensacola | Oxycodone, alprazolam | Mulvey, Wilson |
| 4.28.11. | D.S. | Pensacola | Oxycodone, alprazolam | Mulvey |
| 5.2.11 | M.B. | Pensacola | Oxycodone, alprazolam, hydrocodone | Karpavicus |
| 5.4.11 | C.B. | Pensacola | Oxycodone, alprazolam | Wilson |
| 5.4.11 | Z.S. | Pensacola | Oxycodone, | Wilson |

12

CONFIDENTIAL

WAGMDL00387867

| | | | alprazolam | |
|---|---|---|---|---|
| 5.5.11 | C.J. | Pensacola | Oxycodone, alprazolam, hydrocodone | Mulvey |
| 5.7.11 | C.C. | Pensacola | Oxycodone | Leppi |
| 5.7.11 | S.C. | Pensacola | Oxycodone | Leppi |
| 5.7.11 | J.E. | Pensacola | Oxycodone | Leppi |
| 5.9.11 | J.M.-2 | Pensacola | Oxycodone, alprazolam | Karpavicus |
| 5.9.11 | C.T. | Pensacola | Oxycodone, alprazolam, hydrocodone | Mulvey |
| 5.11.11 | R.C. | Pensacola | Oxycodone, alprazolam, hydrocodone | Wilson |
| 5.11.11 | C.G. | Pensacola | Oxycodone, alprazolam, hydrocodone | Wilson |
| 5.11.11 | H.P. | Pensacola | Oxycodone, alprazolam, hydrocodone | Wilson |
| 5.11.11 | T.M. | Pensacola | Oxycodone, alprazolam, hydrocodone | Wilson |
| 5.23.11 | A.F. | Pensacola | Hydrocodone, alprazolam | Mulvey |
| 5.24.11 | A.J. | Pensacola | Hydrocodone, alprazolam | Patel |
| 5.24.11 | L.J. | Pensacola | Hydrocodone, alprazolam | Patel |
| 5.24.11 | C.S. | Pensacola | Hydrocodone, alprazolam | Patel |
| 6.21.11 | A.J. | Pensacola | Hydrocodone, | Van Gordon |

13

CONFIDENTIAL

WAGMDL00387868

| | | | alprazolam | |
|---|---|---|---|---|
| 6.21.11 | L.J. | Pensacola | Hydrocodone, alprazolam | Van Gordon |
| 6.21.11 | P.J. | Pensacola | Hydrocodone, alprazolam | Van Gordon |
| 7.18.11 | A.J. | Pensacola | Hydrocodone, alprazolam | Leppi, Van Gordon |
| 7.18.11 | L.J. | Pensacola | Hydrocodone, alprazolam | Van Gordon |

b.      Additionally, DI Gonzales will testify that the 03836 database/prescriptions revealed that on May 7, 2011, Jade Leppi dispensed thirty-milligram tablets of oxycodone to C.C. and S.C., both of whom lived at the same Pensacola, Florida, address and both of whom obtained the prescriptions from Dr. Abaunza on May 6, 2011.  DI Gonzales will testify that the 03836 database/prescriptions and the prescription labels show that both of these prescriptions were dispensed within a two minute period.

c.      DI Gonzales will testify that the 03836 database/prescriptions revealed that on June 21, 2011, Shane Van Gordon dispensed hydrocodone and identical amounts of alprazolam to L.J. and P.J., both of whom lived at the same Pensacola, Florida, address and both of whom obtained the prescriptions from Dr. Abaunza on June 20, 2011.  DI Gonzales will testify that the database/prescription labels show that all of these controlled substances were dispensed during a six minute period.

d.      DI Gonzales will testify that the 03836 database/prescriptions revealed that on April 29, 2011, two Walgreens 03836 pharmacists and/or pharmacy technicians dispensed oxycodone, hydrocodone, and alprazolam to J.A. and R.E., both of whom lived in Frankfort, Kentucky, and both of whom obtained their prescriptions from Dr. Abaunza on April 29, 2011.  Specifically, Michael Nunez dispensed hydrocodone to both J.A. and R.E. and alprazolam to J.A.  Jade Leppi dispensed oxycodone to J.A. and R.E. and alprazolam to R.E.  DI Gonzales will testify that the database/prescription labels show that the oxycodone prescriptions were dispensed to both J.A. and R.E. during a 3 minute period.  Additionally, on May 27, 2011, during a seven minute period, Shane Van Gordon dispensed hydrocodone and alprazolam to J.A. and R.E. who obtained their prescriptions from Dr. Abaunza on May 27, 2011.  DI Gonzales will testify that, in order to obtain these prescriptions from Dr. Abaunza and have them filled at Walgreens 03836, customers living in Frankfort, Kentucky would have to travel approximately 2242 miles roundtrip.

14

CONFIDENTIAL

e. DI Gonzales will testify that the 03836 database/prescriptions revealed that (1) from April 9, 2011, through May 13, 2011, a Walgreens 03836 pharmacist dispensed controlled substances to customers who lived in Decatur, Tennessee, and obtained their prescriptions for controlled substances from Dr. Abaunza in Miami, Florida; (2) on April 9, 2011, Cassie Mulvey dispensed oxycodone to S.M.; (3) on May 13, 2011, Shane Van Gordon dispensed alprazolam to S.M.; and (4) on April 12, 2011, Fred Casale dispensed oxycodone to J.M.. DI Gonzales will testify that the database/prescription labels show that on April 20, 2011, Shane Van Gordon, during a five minute period, dispensed hydrocodone and alprazolam to F.M. and A.R. DI Gonzale will testify that the 03836 database/prescriptions revealed that on April 23, 2011, (1) Jade Leppi dispensed oxycodone to Z.F.; (2) on April 30, 2011, Jade Leppi dispensed oxycodone to T.H.; and (3) on May 2, 2011, Jade Leppi dispensed oxycodone. hydrocodone, and alprazolam to M.M. DI Gonzales will testify that, in order to obtain these prescriptions from Dr. Abaunza and have them filled at Walgreens 03836, customers residing in Decatur, Tennessee, would have to travel approximately 1760 miles roundtrip.

f. DI Gonzales will testify that the 03836 database/prescriptions revealed that from April 12, 2011, through May 26, 2011, a Walgreens 03836 pharmacist dispensed controlled substances to customers who lived in Riceville, Tennessee, and obtained their prescriptions for controlled substances from Dr. Abaunza in Miami, Florida. On April 12 and May 9 of 2011, Fred Casale dispensed oxycodone to J.G. On May 9, 2011, Cassie Mulvey dispensed oxycodone to J.G. On May 3, 2011, Cassie Mulvey dispensed oxycodone to B.S. On May 26, 2011, Shane Van Gordon dispensed hydrocodone and alprazolam to B.S. DI Gonzales will testify that, in order to obtain these prescriptions from Dr. Abaunza and have them filled at Walgreens 03836, customers residing in Riceville, Tennessee, would have to travel approximately 1733 miles roundtrip.

g. DI Gonzales will testify that the 03836 database/prescriptions revealed that from April 12, 2011, through May 26, 2011, a Walgreens 03836 pharmacist dispensed controlled substances to customers who lived in Athens, Tennessee and obtained their prescriptions for controlled substances from Dr. Abaunza in Miami, Florida. On April 13, 2011, Tara Karpavicus dispensed oxycodone, hydrocodone, and alprazolam to K.I. and M.L., both of whom lived at the same address and obtained their prescriptions from Dr. Abaunza on the same day. According to the database/prescription labels, both prescriptions for oxycodone were dispensed during a four minute period and both prescriptions for alprazolam were dispensed during a ten minute period. On May 11, 2011, Michael Nunez dispensed hydrocodone and alprazolam to K.I. and Tara Karpavicus dispensed hydrocodone and alprazolam to M.L. According to the database/prescription labels, both the hydrocodone and alprazolam prescriptions were dispensed during a seven minute period. On May 4, 2011, Kate Wilson oxycodone and alprazolam to M.G. On May 9, 2011, Cassie Mulvey dispensed oxycodone to C.H. On May 26, 2011, Shane Van Gordon dispensed hydrocodone and alprazolam to M.K. DI Gonzales will testify that, in order to obtain these prescriptions from Dr. Abaunza

15

WAGMDL00387870

and have them filled at Walgreens 03836, customers residing in Athens, Tennessee, would have had to travel approximately 1750 miles roundtrip.

h.      DI Gonzales will testify that the 03836 database/prescriptions revealed that on April 15, 2011, Shane Van Gordon, during a seven minute period, dispensed hydrocodone and alprazolam to M.L. and C.P., both of whom resided at the same address in Etowah, Tennessee, and had obtained their prescriptions from Dr. Abaunza on the same day. The next day, Jade Leppi dispensed oxycodone to M.L. and C.P., both of whom obtained their prescriptions from Dr. Abaunza on the same day. DI Gonzales will testify that in order to obtain these prescriptions and have them filled at Walgreens 03836, customers residing in Etowah, Tennessee, would have to travel approximately 1688 miles roundtrip.

i.      DI Gonzales will testify that on or about April 23, 2011, Tara Karpavicus dispensed oxycodone, hydrocodone, and alprazolam to G.R., pursuant to prescriptions issued by Dr. Abaunza in Miami, Florida. At the time these controlled substances were distributed, G.R. resided in Spring City, Tennessee. DI Gonzales will testify that in order to obtain these prescriptions and have them filled at Walgreens 03836, G.R. would have had to travel approximately 1762 miles roundtrip.

j.      DI Gonzales will testify that on April 25, 2011, Kate Wilson dispensed oxycodone to J.M., pursuant to a prescription issued by Dr. Abaunza in Miami, Florida, and mislabeled the prescription by entering the wrong date on which the prescription was written by Dr. Abaunza. At the time these controlled substances were dispensed, J.M. resided in Elora, Tennessee. DI Gonzales will testify that in order to obtain this prescription and have it filled at Walgreens 03836, J.M. would have had to travel approximately 1829 miles roundtrip.

k.      DI Gonzales will testify that on or about April 30, 2011, Fred Casale dispensed oxycodone and Tara Karpavicus dispensed hydrocodone and alprazolam to L.S. According to dispensing records provided by Respondent, on or about May 4, 2011, Fred Casale dispensed oxycodone, alprazolam, and hydrocodone to J.S and oxycodone to L.S. At the time these controlled substances were distributed, both L.S. and J.S. resided in Sweetwater, Tennessee, and obtained their prescriptions from Dr. Abaunza in Miami, Florida. DI Gonzales will testify that in order to obtain these prescriptions and have them filled at Walgreens 03836, L.S. and J.S. would have had to travel approximately 1773 miles roundtrip.

l.      DI Gonzales will testify that on May 4, 2011, Kate Wilson dispensed oxycodone, hydrocodone, and alprazolam to R.D., a resident of Cleveland, Tennessee, pursuant to prescriptions issued by Dr. Abaunza in Miami, Florida. DI Gonzales will testify that in order to obtain these prescriptions and have them filled at Walgreens 03836, R.D. would have had to travel approximately 1665 miles roundtrip.

16

CONFIDENTIAL

Case: 1:17-md-02804-DAP Doc #: 2357-3 Filed: 08/14/19 36 of 71. PageID #: 381603

m. DI Gonzales will testify that according to the 03836 database, on April 26, 2011, Kate Wilson dispensed oxycodone, hydrocodone, and alprazolam to R.M., a resident of Cedartown, Georgia.[7] On May 19, 2011, Shane Van Gordon dispensed hydrocodone and alprazolam to R.M. The prescriptions for controlled substances were obtained from Dr. Abaunza in Miami, Florida. DI Gonzales will testify that in order to obtain these prescriptions and have them filled at Walgreens 03836, R.M. would have had to travel approximately 1544 miles roundtrip.

n. DI Gonzales will testify that, on April 30, 2011, Tara Karpavicus dispensed oxycodone and hydrocodone to C.G. On May 3, 2011, Fred Casale dispensed oxycodone and Kate Wilson dispensed hydrocodone to J.M. At the time these controlled substances were distributed, both C.G. and J.M. resided at the same address in Lilburn, Georgia, and obtained their prescriptions for controlled from Dr. Abaunza in Miami, Florida. DI Gonzales will testify that n order to obtain these prescriptions and have them filled at Walgreens 03836, these customers would have had to travel approximately 1457 miles roundtrip.

o. DI Gonzales will testify that, on May 2, 2011, Terrence Myers dispensed oxycodone and alprazolam and Tara Karpavicus dispensed hydrocodone to C.M. Also, on May 2, 2011, Terrence Myers dispensed oxycodone and Tara Karpavicus dispensed alprazolam and hydrocodone to K.S. According to the 03836 database/prescription labels, both oxycodone prescriptions were dispensed during a five minute period. According to the 03836 database, at the time the controlled substances were dispensed, both C.M. and K.S. were residents of Columbus, Ohio, who had obtained their prescriptions from Dr. Abaunza in Miami, Florida. DI Gonzales will testify that in order to obtain these prescriptions and have them filled at Walgreens 03836, C.M. and K.S. would have had to travel approximately 2490 miles roundtrip.

p. DI Gonzales will testify that on May 3, 2011, Shane Van Gordon dispensed oxycodone and Kate Wilson dispensed alprazolam to A.N. Also, on May 3, 2011, Shane Van Gordon dispensed oxycodone and Kate Wilson dispensed hydrocodone, and alprazolam to D.N. At the time these controlled substances were dispensed, both A.N. and D.N. resided at the same address in Hamersville, Ohio, and had obtained their prescriptions from Dr. Abaunza in Miami, Florida. According to the 03836 database/prescription labels, the prescriptions for oxycodone were filled in a six minute period and the prescriptions for alprazolam and hydrocodone were filled during a twenty minute period. DI Gonzales will testify that in order to obtain these prescriptions and have them filled at Walgreens 03836, A.N. and D.N. would have had to travel approximately 2390 miles roundtrip.

q. DI Gonzales will testify that on April 19, 2011, Shane Van Gordon dispensed hydrocodone and alprazolam to D.E., a resident of Dothan, Alabama.

---

[7] Prescription information indicates alprazolam and hydrocodone were dispensed on April 20, 2011.

17

CONFIDENTIAL

Case: 1:17-md-02804-DAP  Doc #: 2357-3  Filed: 08/14/19  37 of 71.  PageID #: 381604

On April 26, 2011, Kate Wilson dispensed oxycodone to D.E. The prescriptions for controlled substances were obtained from Dr. Abaunza in Miami, Florida. DI Gonzales will testify that, in order to obtain these prescriptions and have them filled at Walgreens 03836, D.E. would have had to travel approximately 1219 miles roundtrip.

r.    DI Gonzales will testify that, on April 21, 2011, Kate Wilson dispensed the following: (1) oxycodone (15mg), alprazolam, methadone, and carisoprodol to L.J.; (2) oxycodone (15mg), alprazolam, and carisoprodol to C.J.; (3) oxycodone (15mg) and alprazolam to J.W.; (4) oxycodone (15mg) to C.S.; (5) oxycodone (15mg) to D.S.; (6) oxycodone (15mg) and alprazolam to J.I.; and (7) oxycodone (15mg) and alprazolam to C.W. According to the prescriptions and/or the 03836 database, at the time these controlled substances were dispensed, L.J., C.J., J.W., C.S., D.S., J.I., and C.W. were residents of the State of Kentucky and L.J. and C.J. resided at the same address. Two days later, on April 23, 2011, Tara Karpavicus dispensed oxycodone (30mg) to L.J. and Jade Leppi dispensed oxycodone (30mg) to C.J., J.W., C.S., D.S., J.I., and C.W. DI Gonzales will testify that L.J., C.J., J.W., C.S., and D.S. obtained their prescriptions from Charles Kessler, M.D. ("Dr. Kessler"), who was practicing in Plantation, Florida. DI Gonzales will further testify that J.I. and C.W. obtained their prescriptions from Richard Vitalis, D.O. ("Dr. Vitalis"), who was practicing in North Lauderdale, Florida. The prescriptions issued by Dr. Kessler were all issued on the same day, April 20, 2011. The prescriptions issued by Dr. Vitalis were all issued on the same day, April 21, 2011. According to the 03836 database/prescription labels, the prescriptions for 15mg oxycodone issued by Dr. Kessler were all dispensed in a twenty-two minute period. The prescriptions for 15mg oxycodone issued by Dr. Vitalis were dispensed during a five minute period. All the prescriptions for 30mg oxycodone were dispensed between 10:59 and 1:15 on April 23, 2011. DI Gonzales will testify that in order to obtain these prescriptions and have them filled at Walgreens 03836, these seven individuals would have had to travel between approximately 1987 and 2189 miles roundtrip. Moreover, in order to return to Walgreens 03836 on April 23, 2011 and fill the prescriptions for the thirty-milligram tablets of oxycodone, these individuals would have had to stay in Port Richey, Florida, for two nights, or made a second trip from Kentucky to Respondent's location on April 23, 2011. The distance travelled for this trip would have been approximately an additional 1524 to 1724 miles roundtrip. DI Gonzales will also testify that on April 21 and April 23 of 2011, oxycodone was distributed to L.J. despite dispensing information possessed by Respondent that indicated L.J. was allergic to opioid analgesics

s.    DI Gonzales will testify that, on April 14, 2011, Fred Casale dispensed 210-thirty milligram and 120 fifteen-milligram tablets of oxycodone each to four individuals, M.C., C.D., K.J., and M.J, all of whom resided at the same address in Kissimmee, Florida. According to the database/prescription labels, the oxycodone prescriptions for M.C. and C.D. were dispensed within five minutes of each other and the oxycodone prescriptions for K.J. and M.J. were dispensed within ten minutes of each other. Also, on April 14, 2011, Michael Nunez

18

WAGMDL00387873

dispensed identical amounts of alprazolam and carisoprodol to K.J. and M.J. and Shane Van Gordon dispensed identical amounts of alprazolam to M.C. and C.D. These individuals obtained their prescriptions for controlled substances on the same day from Dr. Vitalis, whose office was located in North Lauderdale, Florida, approximately 288 miles from Walgreens 03836. DI Gonzales will testify that in order to obtain these prescriptions and have them filled at Walgreens 03836, these individuals would have had to travel approximately 578 miles roundtrip.

t.      DI Gonzales will testify that on April 28 and on or about May 5[8] of 2011, Walgreens 03836 pharmacists dispensed controlled substances in nearly identical amounts to four individuals, P.W., T.S., J.N., and L.B., all of whom were listed, according to the prescriptions, as residing at the same address in Kissimmee, Florida. Specifically, on April 28, 2011, Cassie Mulvey distributed fifteen-milligram tablets of oxycodone to P.W. and J.N. Also, on April 28, 2011, Kate Wilson dispensed alprazolam to P.W. According to the 03836 database/prescription labels, the prescriptions to P.W. and J.N. were all dispensed within six minutes of each other. On May 5, 2011, Kate Wilson dispensed fifteen and thirty-milligram tablets of oxycodone to L.B. and T.S., and also dispensed alprazolam to T.S. The oxycodone prescriptions were dispensed within eight minutes of each other. All of the prescriptions described in this paragraph were obtained from Dr. Vitalis in North Lauderdale, Florida, approximately 288 miles from Walgreens 03836. DI Gonzales will testify that in order to obtain these prescriptions and have them filled at Walgreens 03836, P.W., T.S., J.N., and L.B would have had to travel approximately 603 miles roundtrip. DI Gonzales will also testify that, according to the 03836 database, P.W. was listed as residing in Columbus, Ohio, at the time Cassie Mulvey and Kate Wilson provided him with oxycodone. The 03836 database also showed that L.B. and T.S. were living together at the same address in Tampa, Florida.

u.      DI Gonzales will testify that from April 12 through May 25, 2011, various Walgreens 03836 pharmacists and/or pharmacy technicians dispensed controlled substances to six individuals, B.M., J.W., B.T., J.G., D.S., and C.S., all of whom resided at the same address in Tampa, Florida, and all of whom obtained their prescriptions from either Dr. Kessler or Dr. Vitalis. Specifically, on April 12, 2011, Dale Randall dispensed oxycodone (30mg) and alprazolam to J.W. Also, on April 12, 2011, Cassie Mulvey dispensed oxycodone (15mg) to J.W. On April 18, 2011, Fred Casale dispensed two oxycodone prescriptions (15mg and 30mg) and a prescription for alprazolam to C.S. On April 21, 2011, Kate Wilson dispensed oxycodone and alprazolam to B.T. On April 23, 2011, Jade Leppi dispensed a second oxycodone prescription (30mg) to B.T. According to the 03836 database/prescriptions labels, on April 26 or 27 of 2011,[9] Kate Wilson dispensed two oxycodone prescriptions (15mg and 30mg) each to D.S. and J.G. within a two minute period and she also dispensed alprazolam to both D.S. and

[8] According to the 03836 database, prescriptions for T.S. were dispensed on May 6, 2011. However, the prescription labels indicate a dispensing date of May 5, 2011.
[9] According to the 03836 database, the dispensing date is April 27, 2011. However, the prescription labels generated by Respondent indicate the date is April 26, 2011.

19

CONFIDENTIAL

J.G. within a nine minute period. The oxycodone prescriptions for D.S. and J.G. were packaged in a container bearing an incorrect dispensing date in violation of 21 C.F.R. § 1306.14(a). On May 11, 2011, Michael Nunez dispensed oxycodone and alprazolam to J.W. On May 12, 2011, Fred Casale dispensed oxycodone, alprazolam, and carisoprodol to C.S., and Cassie Mulvey dispensed hydrocodone to C.S. On May 18, 2011, Kate Wilson dispensed oxycodone to B.M. On May 25, 2011, Kate Wilson dispensed oxycodone and alprazolam to J.G. Based on the 03836 database and the prescriptions, all of the customers referenced in this paragraph except J.G. obtained their prescriptions from Dr. Kessler in Plantation, Florida. J.G. obtained his prescriptions from Dr. Vitalis in North Lauderdale, Florida. DI Gonzales will testify that in order to obtain these prescriptions and have them filled at Walgreens 03836, these individuals would have had to travel between approximately 583 and 587 miles roundtrip.

v.      DI Gonzales will testify that he reviewed the 03836 database and the prescriptions obtained during the AIW and found that from April 9, 2011, through May 18, 2011, various Walgreens 03836 pharmacists dispensed approximately 62 prescriptions for oxycodone, 31 prescriptions for alprazolam, and 7 prescriptions for methadone to persons who obtained their prescriptions from Dr. Kessler and who were residing in the State of Kentucky. The individuals receiving oxycodone are: L.C. (four prescriptions); N.B. (four prescriptions); S.B. (four prescriptions); C.S. (five prescriptions); W.O. (three prescriptions); C.S.-1 (three prescriptions); L.J. (two prescriptions); C.J. (two prescriptions); J.W. (two prescriptions); C.S.-2 (two prescriptions); D.S. (two prescriptions); K.W. (one prescription); J.Q. (two prescriptions); J.C. (one prescriptions); A.H. (two prescriptions); F.S. (two prescriptions); W.M. (two prescriptions); J.H. (two prescriptions); P.W. (two prescriptions); S.B. (one prescription); M.L. (two prescriptions); M.K. (one prescription); E.C. (three prescriptions); M.P. (one prescription); J.H.-1 (two prescriptions); B.B. (one prescription); H.J. (one prescription); T.K. (one prescription); C.P. (one prescription); and P.V. (one prescription).

The individuals receiving alprazolam are: L.C. (two prescriptions); N.B. (two prescriptions); S.B. (two prescriptions); C.S. (two prescriptions); W.O. (two prescriptions); C.S.-1 (two prescriptions); L.J. (one prescription); C.J. (one prescription); J.W. (one prescription); J.Q. (one prescription); A.H. (one prescription); F.S. (one prescription); W.M. (one prescription); J.H. (one prescription); P.W. (one prescription); M.L. (one prescription); E.C. (one prescription); M.P. (one prescription); J.H.-1 (one prescription); B.B. (one prescription); H.J. (one prescription); C.P. (one prescription); P.V. (one prescription); J.M. (one prescription); and H.P. (one prescription).

The individuals receiving methadone are: M.P.; L.J.; W.M.; P.W.; E.C.; J.H.-1; and L.C.

DI Gonzales will further testify that on the same day (May 12, 2011), four different Walgreens 03836 pharmacists dispensed oxycodone to five Kentucky residents and two residents of Pensacola, Florida, all of whom obtained their

20

CONFIDENTIAL

WAGMDL00387875

Case: 1:17-md-02804-DAP  Doc #: 2357-3  Filed: 08/14/19  40 of 71.  PageID #: 381607

prescriptions from Dr. Kessler. Specifically, Fred Casale dispensed oxycodone,
hydrocodone, and alprazolam to C.S. Fred Casale dispensed oxycodone and
alprazolam and Cassie Mulvey dispensed hydrocodone to C.S.-1. Fred Casale
dispensed oxycodone and alprazolam to H.J. and dispensed oxycodone to T.K.
Tara Karparvicus dispensed oxycodone and alrprazolam to C.P. At the time these
controlled substances were dispensed, C.S., C-S -1, H.J., T.K. and C.P. were
listed as Kentucky residents who had obtained their prescriptions from Dr.
Kessler in Plantation, Florida. Also, on May 12, 2011, Kate Wilson dispensed
oxycodone and alprazolam to K.B. and D.M. At the time these controlled
substances were dispensed, K.B. and D.M. were listed as residing in Pensacola,
Florida, and had obtained their prescriptions from Dr. Kessler. Moreover, the
oxycodone prescriptions dispensed to C.S.-1, H.J., and T.K were dispensed within
seventeen minutes of each other by Fred Casale.

w.        DI Gonzales will testify that he reviewed the 03836 database and the
prescriptions obtained during the AIW and determined that 66 different customers
obtained prescriptions for controlled substances from Dr. Kessler and had them
filled at Walgreens 03836 during the period between April 9, 2011, and May 18,
2011. Based on his analysis, DI Gonzales found that only 27% of these customers
resided within 50 miles of Walgreens 03836. In addition, he found that
approximately 72% resided more than 250 miles from Walgreens 03836, 60%
resided more than 400 miles from Walgreens 03836, and 51% resided more than
700 miles from Walgreens 03836.

x.        DI Gonzales will testify that based on his analysis of the 03836 database
and the prescriptions obtained pursuant to the AIW that, from April 8, 2011,
through July 20, 2011, Walgreens 03836 pharmacists dispensed controlled
substances including, but not limited to, oxycodone, hydrocodone, and
alprazolam, on 55 occasions to persons who obtained their prescriptions from Dr.
Ronald Heromin, M.D. ("Dr. Heromin"). At the time these controlled substances
were distributed, Dr. Heromin was practicing at offices in Miami and Doral,
Florida. DI Gonzales will testify that of the 55 prescriptions dispensed, at least 16
prescriptions for Schedule II controlled substances contained no patient address in
violation of 21 C.F.R. §§ 1306.05(a) and 1306.11(a), as well as FLA. STAT. §
893.04(1)(c)(1). He also will testify that at least nine prescriptions for Schedule
IV controlled substances contained no patient address in violation of 21 C.F.R. §§
1306.05(a) and 1306.21(a), as well as FLA. STAT. § 893.04(1)(c)(1). DI
Gonzales will further testify that eleven unaddressed prescriptions for oxycodone
were issued to persons residing in Pensacola, Florida (J.A. D.B., B.C., J.F., M.H.
C.I., L.J., J.K., H.O., J.S., and J.W.) and filled by Walgreens 03836. Also, based
on his analysis, five unaddressed prescriptions for alprazolam were issued to
persons residing in Pensacola, Florida (to R.C., W.G., A.J., T.M., and L.S.) which
is approximately 412 miles from Walgreens 03836, and at least 670 miles from
either of Dr. Heromin's offices in Doral and Miami, Florida. Moreover, on April
30, 2011, Tara Karpavicus dispensed oxycodone (30 mg) pursuant to unaddressed
prescriptions issued to five individuals who obtained their prescriptions from Dr.
Heromin, four of whom were residing in Pensacola, Florida (J.A., J.F., H.O., and

21

WAGMDL00387876

J.S.) and one of whom was residing in Wetumkka, Alabama (D.G.). All five prescriptions were filled within a 12 minute period. DI Gonzales will testify that in order for the four Pensacola residents to obtain these prescriptions and have them filled at Walgreens 03836, they would have had to travel approximately 1388 miles roundtrip and the patient from Wetumpka, Alabama, would have had to travel approximately 1438 miles roundtrip.

y.      DI Gonzales will testify that from April 25, 2011, through November 5, 2011, various Walgreens 03836 pharmacists distributed controlled substances to E.P. and K.P., both of whom resided at the same address in Dothan, Alabama, and who obtained their prescriptions for controlled substances from a physician practicing in New Port Richey, Florida. Specifically, on April 25, 2011, Terrence Myers dispensed 60 tablets of Adderall to E.P. On May 25, 2011, Tara Karpavicus dispensed 180-ten milligram tablets of methadone to E.P. On April 27, 2011, Kate Wilson dispensed hydrocodone to K.P. On June 22, 2011, Michael Nunez dispensed hydrocodone to K.P. and dispensed Adderall and methadone to E.P. On August 19, 2011, Cassie Mulvey dispensed hydrocodone to K.P. and on October 10, 2011, and November 5, 2011, Sean Francisco dispensed Adderall to K.P. Of the prescriptions described in this paragraph, a: least five of them contained no patient address in violation of 21 C.F.R. §§ 1306.05(a) and 1306.11(a), as well as F.S.A. § 893.04(1)(c)(1). DI Gonzales will testify that, in order to obtain the above prescriptions and have them filled at Walgreens 03836, E.P. and K.P. would have had to travel approximately 653 miles roundtrip.

z.      DI Gonzales will testify that from April 9, 2011, through July 19, 2011, Walgreens 03836 pharmacists dispensed controlled substances including, but not limited to, oxycodone, hydrocodone, and alprazolam, pursuant to 138 different prescriptions issued to individuals residing in Pensacola, Florida. All but three of these prescriptions had been issued by physicians practicing in South Florida, including Drs. Abaunza, Kessler, Vitalis, and Heromin. In order to obtain these prescriptions and have them filled at Walgreens 03836, these individuals would have had to travel between approximately 1341 and 1397 miles roundtrip.

aa.     DI Gonzales will testify that from April 9, 2011, through February 28, 2012, Walgreens 03836 pharmacists dispensed approximately 81 prescriptions for controlled substances to individuals residing in Tennessee. The majority (68%) of those prescriptions were issued by physicians practicing in either Doral or Miami, Florida. DI Gonzales will testify that both of those cities are located more than 270 miles from Walgreens 03836.

bb.     DI Gonzales will testify that from April 9, 2011, through January 28, 2012, Walgreens 03836 pharmacists dispensed approximately 149 prescriptions for controlled substances to individuals residing in Kentucky. Approximately 92% of those prescriptions were issued by physicians practicing in South Florida cities which are located more than 250 miles from Walgreens 03836.

22

CONFIDENTIAL

Case: 1:17-md-02804-DAP  Doc #: 2357-3  Filed: 08/14/19  42 of 71.  PageID #: 381609

cc.    DI Gonzales will testify that on April 29, 2011, Kate Wilson dispensed 300 four-milligram tablets of hydromorphone to W.W.  On May 13, 2011, Kate Wilson dispensed hydromorphone to C.W. pursuant to a prescription written on April 12, 2011.  On June 1, 2011, Shane Van Gordon dispensed 1080 four-milligram tablets of hydromorphone and 300 forty-milligram tablets to oxycodone to C.W. All of the above described controlled substances in this paragraph were dispensed pursuant to prescriptions that contained no patient address in violation of 21 C.F.R. §§ 1306.05(a) and 1306.11(a), as well as FLA. STAT. § 893.04(1)(c)(1).  Additionally, the controlled substances provided to C.W. on May 13, 2011, were mislabeled insofar as they were listed as having been prescribed and dispensed on April 29, 2011.  DI Gonzales will testify that this violates 21 C.F.R. § 1306.14(a) and FLA. STAT. § 893.04(1)(e)(2).

dd.    DI Gonzales will testify that, in addition to the hydromorphone dispensed to W.W. on April 29, 2011, Kate Wilson dispensed hydromorphone to W.W. on July 27, 2011.  On January 12, 2012, also Kate Wilson dispensed 260 four-milligram tablets of hydromorphone and Michael Nunez dispensed 40 four-milligram tablets of hydromorphone to W.W.  At the time these controlled substances were dispensed, W.W. was listed as residing in Adams, Kentucky. Moreover, W.W. had been receiving controlled substances from Walgreens 03836 since at least January 18, 2010.  DI Gonzales will testify that, in order to obtain these prescriptions and have them filled at Walgreens 03836, W.W. would have had to travel approximately 1814 miles roundtrip.

DI Gonzales will also testify that many of the customers identified above who received controlled substances from Walgreens 03836 after presenting facially suspicious prescriptions also had a history of presenting equally suspicious prescriptions prior to the time periods described above.  Accordingly, DI Gonzales will testify that even after the execution of an Administrative Memorandum of Agreement between DEA and Walgreens Co.[10] regarding similar conduct at Walgreens Pharmacy 06094, Walgreens 03836 pharmacists and pharmacy technicians continued to dispense controlled substances when they knew or should have known that the prescriptions were issued for other than a legitimate medical purpose by a practitioner acting outside the usual course of professional practice.

## 14.    Paul Doering, M.S.

---

[10] Executed April 7, 2011.

23

CONFIDENTIAL

WAGMDL00387878

Professor Doering will testify regarding his education, background, training, and experience as a pharmacist. In this regard, among other matters, Prof. Doering will testify that he (1) is a registered pharmacist in the states of Florida and North Carolina, (2) is certified as a Consultant Pharmacist in Florida, (3) previously practiced in the community pharmacy setting, (4) has been a professor at the University of Florida's School of Pharmacy for the past 35 years, (5) currently serves at the University of Florida's College of Pharmacy as Distinguished Service Professor of Pharmacy Practice, Emeritus, and (6) for 28 years was either Director or Co-Director of the University of Florida's Drug Information and Pharmacy Resource Center, a telephone access service through which health professionals can obtain information about drugs or drug therapy. Prof. Doering will further testify about his experiences serving as an expert consultant and witness in a number of criminal, civil, and administrative proceedings. Prof. Doering will provide expert witness testimony as detailed below.

Prof. Doering will testify about the education and training pharmacists receive in pharmacy school, including learning the fundamentals of both state and federal pharmacy law as it relates to the filling and dispensing of prescription drugs in general, and controlled substances in particular. He will further testify about training pharmacists receive in the application of those laws to real life situations. He also will discuss the coverage of these topics in Florida's pharmacist licensing exam.

Prof. Doering will testify about the epidemic of prescription drug diversion and abuse in the state of Florida. He will discuss the State of Emergency declared by the Florida Surgeon General in 2011 which was issued in effort to prevent the many drug overdose deaths from controlled substances. The controlled substances commonly associated with this epidemic are Schedule II pain relievers, such as oxycodone; Schedule

24

CONFIDENTIAL

Case: 1:17-md-02804-DAP Doc #: 2357-3 Filed: 08/14/19 44 of 71. PageID #: 381611

IV benzodiazepines, such as alprazolam; and Schedule IV muscle relaxers, such as carisoprodol. Prof. Doering will testify about the overdose deaths due to oxycodone and benzodiazepines identified by the 2011 Florida Medical Examiners Report. He will testify that pharmacists are in a key position to reverse the trend of this epidemic.

Prof. Doering will further testify about the pharmacist's role in the distribution of prescription drugs that are controlled substances. He will testify about the dangerous propensities of certain controlled substances, in particular opiates and opioids, such as oxycodone, benzodiazepines, such as diazepam (Valium), and alprazolam (Xanax). Prof Doering will testify that when controlled release opiate products are prescribed correctly patients should not need to be on concurrent around the clock opiates for break through pain.

Prof. Doering will discuss the responsibilities of pharmacists in filling controlled substances prescriptions. Prof. Doering will testify about the review and analysis pharmacists should undertake before certifying any such prescription for release to the patient, including checking the licensing status of prescribers and evaluating whether the prescription presented to them is for a legitimate medical purpose and issued by a properly registered practitioner in the usual course of professional practice.

Moreover, Prof. Doering will testify about the "red flags," or, in other words, indicators of diversion and abuse used by pharmacists to detect drug diversion. Because of the enormous abuse and diversion associated with oxycodone, the mere fact that an oxycodone prescription is being presented should put the pharmacist on full-alert to ensure that the prescription is valid. He will testify that oxycodone prescribed in combination with alprazolam and/or with carisoprodol, a popular "cocktail" combination in illicit use, should raise even more scrutiny with a pharmacist.

25

CONFIDENTIAL

WAGMDL00387880

He will discuss certain patterns or circumstances that are consistent with drug diversion schemes that, in his opinion, a diligent pharmacist can observe, as well as the techniques that help the pharmacist detect drug diversion. Examples of such patterns or circumstances include, but are not limited to, patients who pay with cash, patients who are prescribed large quantities of controlled substances, patients who share the same address, patients who are prescribed the same numbers and types or combinations of drugs, and patients who live a distance from the prescribing practitioner and/or pharmacy, including out-of-state patients and/or practitioners. His testimony also will cover the criteria appearing in the 2010 Edition of the Drug Enforcement Administration's Pharmacist's Manual, which provided guidance to pharmacists of indicators that a prescription was not issued for a legitimate medical purpose. Prof. Doering will testify that these "red flags" signal that a prescription may have been issued outside the usual course or professional practice and/or for other than a legitimate medical purpose.

Additionally, Prof. Doering will testify about the information he was provided by the DEA to review and analyze concerning Respondent. This information included, but is not limited to: Respondent's dispensing log, copies of prescriptions and prescription labels for Schedule II-IV controlled substances dispensed by Respondent, and spreadsheets for prescription dispensing activity.

Prof. Doering will testify that based on his education, training, and experience as a pharmacist, his review and analysis of the DEA information he received shows that Respondent's pharmacists ignored readily apparent "red flags" of drug diversion or abuse, and filled prescriptions that were issued outside the usual course of medical practice without first conclusively resolving those red flags. He will testify that some, but not all, red flags can be resolved by a pharmacist. In those instances when red flags

26

CONFIDENTIAL

WAGMDL00387881

are unresolvable, a reasonable pharmacist exercising due care should and would refuse to fill the prescription.

Prof. Doering will discuss his analysis of Respondent's controlled substance dispensing between April 8, 2011 and April 4, 2012. Specifically, he will testify that with respect to prescriptions issued by Drs. Abaunza, Kessler, Vitalis, and Heromin, there was a distinct pattern of prescribing which is consistent with diversion. Prof. Doering will discuss how a various combination of factors, viewed collectively, created red flags for diversion that could not be resolved. For example, Prof. Doering will discuss how many of the patients described above (1) presented prescriptions for identical controlled substances in identical or similar amounts and dosages; (2) obtained their prescriptions from the same physician; (3) travelled long distances from their residences to a physician's office to obtain the prescriptions; and then (4) travelled long distances to Port Richey, Florida, to fill the prescriptions while bypassing many other pharmacies, including Walgreens pharmacies, that were located either closer to their physicians' offices, their residences, or were more aligned with the routes they travelled to obtain the prescriptions from their respective doctors. Prof. Doering will testify that with respect to customers who traveled well outside their reasonable commuting distances to obtain their prescriptions and then continued to travel outside their reasonable commuting distances to have them filled in Port Richey, no reasonable pharmacist would agree to fill the prescription absent a plausible explanation for the customer's unusual behavior. He will testify, for instance, that the existence of multiple patients travelling from places such as Pensacola, Florida,[11] to obtain prescriptions from a physician in Miami, and then heading

---

[11] This also includes customers residing in Kentucky, Ohio, Tennessee, Georgia, Alabama, or cities such as Kissimmee, Florida.

CONFIDENTIAL

WAGMDL00387882

Case: 1:17-md-02804-DAP  Doc #: 2357-3  Filed: 08/14/19  47 of 71.  PageID #: 381614

to Port Richey to have those prescription filled constitute "dealbreakers" that should

cause any reasonable pharmacist to refuse to fill those prescriptions. He will testify that

these situations, when combined with other "red flags" such as customers presenting

similar or identical prescriptions for the same controlled substances, or residing together

at the same address, simply increase the necessity for either refusing to serve the

customer or at least conducting a thorough investigation in an attempt to explain such

unusual behavior.

Prof. Doering will also testify regarding Walgreens 03836 failure to correctly

report the physician's instructions on some prescriptions. For instance, he will discuss

prescriptions J.A. on April 29, 2011, as described above in subparagraph d above.[12] Prof.

Doering will testify that the physician's instructions for hydrocone are incongruous

inasmuch as the customers is directed to take "as needed" for "baseline pain." Prof.

Doering will also testify that Walgreens 03836 personnel misrepresented these directions

when it created a label for the customer and incorrectly stated that the prescription was

for "bilateral pain."

Prof. Doering will testify, based on the evidence described in the proposed

testimony of DI Gonzales and DI Williams above, that subparagraphs a-dd all contain

evidence of red flags for diversion that were never adequately resolved. In fact, after

reviewing copies of the individual prescriptions and the 03836 database, Prof. Doering

will testify that there was little or no evidence of any attempt on the part of any

Walgreens 03836 employee to resolve the red flags summarized in subparagraphs a-dd.

**15-24. Cassie Mulvey**
    **Tara Kapavicus**
    **Shane Van Gordon**

---

[12] *See* proposed testimony of DI Gonzales and DI Williams.

28

CONFIDENTIAL

WAGMDL00387883

Case: 1:17-md-02804-DAP  Doc #: 2357-3  Filed: 08/14/19  48 of 71.  PageID #: 381615

> **Jade Leppi**
> **Kate Wilson**
> **Sanjay Patel**
> **Fred Casale**
> **Michael Nunez**
> **Terrence Myers**
> **Dale Randall**

All of these individuals in section 15-24 will be asked to testify regarding their specific experience and training in the field in pharmacy. They each will be asked to discuss the pharmacy's process and procedures for filling a controlled substance prescription. Each will be asked to testify about the specific dispensing of controlled substances which are attributed to them in the proposed testimony of DI Gonzales and DI Williams. Each will be asked to describe the role they played in each dispensing attributed to them, and to identify what "red flags" for diversion, if any, they noted prior to dispensing the controlled substances to the individual customer. Accordingly, each will be asked to describe the steps he or she took to resolve those red flags and to explain how, in the course of dispensing the controlled substances, they minimized the risk of diversion. They will also be asked about the pharmacy's process and procedures for ordering controlled substances from the distribution center and oversight of the process by pharmacy and corporate supervisors.

25.    Quang Tran

Quang Tran will be asked to testify regarding his role as the supervisor of those pharmacists and/or pharmacy technicians who dispensed the controlled substances described in the proposed testimony of DI Gonzales and DI Williams. Accordingly, he will be asked, with respect to any dispensing described above that he supervised and/or approved, to identify what red flags for diversion, if any, he noted prior to the dispensing

29

CONFIDENTIAL

and what steps, if any, he carried out or ordered to be carried out, to resolve those red

flags and minimize the risk of diversion.

## VI. PROPOSED DOCUMENTS

| Exhibit | Description | Approx. # Pages |
|---------|-------------|-----------------|
| 1 | DEA Certificate of Registration BW6561270 (attached hereto) | 1 |
| 2 | Respondent's Controlled Substances Dispensing Log, January 2010 – April 4, 2012. | (CD ROM) |
| 3 | Prescriptions issued by Ramiro Abaunza, M.D. (A-G) | 150 |
| 4 | Prescriptions issued by Ramiro Abaunza, M.D. (H-M) | 137 |
| 5 | Prescriptions issued by Ramiro Abaunza, M.D. (N-W) | 138 |
| 6 | 03836 Database printouts showing prescription history of: J.C., M.S., J.M., H.R., H.N., V.J., A.B., J.M.-1, J.B., M.J., A.J., A.F., D.D., D.S, M.B., C.B., Z.S., C.J., C.C., S.C, J.E., J.M.-2, C.T., R.C., C.G., H.P., T.M., A.F., A.J., L.J., C.S., and P.J | 36 |
| 7 | Map and mileage information re: Pensacola to Miami to Port Richey to Pensacola | 2-3 |
| 8 | 03836 Database printout showing prescription history for C.C. and S.C. on May 7, 2011 | 1 |
| 9 | Map and mileage information re: Pensacola address of C.C. and S.C. to Miami to Port Richey to Pensacola address of C.C. and S.C. | 2-3 |
| 10 | 03836 Database printout showing prescription history for L.J. and P.J. on June 21, 2011 | 1 |
| 11 | Map and mileage information re: Pensacola address of L.J. and P.J. to Miami to Port Richey to Pensacola address of L.J. and P.J. | 2-3 |
| 11 | 03836 Database printout showing prescription history for J.A. and R.E. on April 29, 2011,and May 27, 2011 | 1 |
| 12 | Map and mileage information re: Frankfort, Kentucky to to Miami to Port Richey to Frankfort, Kentucky | 2-3 |
| 10 | 03836 Database printout showing prescription history for S.M. on April 9, 2011, and May 13, 2011. | 1 |
| 11 | 03836 Database printout showing prescription history for J.M. on April 12, 2011 | 1 |
| 12 | 03836 Database printout showing prescription history for F.M. and A.R. on April 20, 2011 | 1 |
| 13 | 03836 Database printout showing prescription history for Z.F. on April 23, 2011 | 1 |
| 14 | 03836 Database printout showing prescription history for | 1 |

30

CONFIDENTIAL

| | | |
|---|---|---|
| | T.H. on April 30, 2011 | |
| 15 | 03836 Database printout showing prescription history for M.M. on May 2, 2011 | 1 |
| 16 | Map and mileage information re: Decatur, Tennessee to Miami to Port Richey to Decatur, Tennessee | 2-3 |
| 17 | 03836 Database printout showing prescription history for J.G. on April 12, 2011, and May 9, 2011 | 1 |
| 18 | 03836 Database printout showing prescription history for B.S. on May 3, 2011, and May 26, 2011 | 1 |
| 19 | Map and mileage information re: Riceville, Tennessee to to Miami to Port Richey to Riceville, Tennessee | 2-3 |
| 20 | 03836 Database printout showing prescription history for K.I. and M.L on April 13, 2011,and May 11, 2011 | 1 |
| 21 | 03836 Database printout showing prescription history for M.G. on May 4, 2011 | 1 |
| 22 | 03836 Database printout showing prescription history for C.H. on May 9, 2011 | 1 |
| 23 | 03836 Database printout showing prescription history for M.K. on May 26, 2011 | 1 |
| 24 | Map and mileage information re: Athens, Tennessee to Miami to Port Richey to Athens, Tennessee | 2-3 |
| 25 | 03836 Database printout showing prescription history for M.L. and C.P. on April 15-16, 2011 | 1 |
| 26 | Map and mileage information re: Etowah, Tennessee to Miami to Port Richey to Etowah, Tennessee | 2-3 |
| 27 | 03836 Database printout showing prescription history for G.R. on April 23, 2011 | 1 |
| 28 | Map and mileage information re: Spring City, Tennessee to Miami to Port Richey to Spring City, Tennessee | 1-3 |
| 29 | 03836 Database printout showing prescription history for J.M. on April 25, 2011 | 1 |
| 30 | Map and mileage information re: Elora, Tennessee to Miami to Port Richey to Elora, Tennessee | 1-3 |
| 31 | 03836 Database printout showing prescription history for L.S. and J.S. on April 30, 2011, and May 4, 2011 | 1 |
| 32 | Map and mileage information re: Sweetwater, Tennessee to Miami to Port Richey to Sweetwater, Tennessee | 1-3 |
| 33 | 03836 Database printout showing prescription history for R.D. on May 4, 2011 | 1 |
| 34 | Map and mileage information re: Cleveland, Tennessee to Miami to Port Richey to Cleveland, Tennessee | 1-3 |
| 35 | 03836 Database printout showing prescription history for R.M. for April 26, 2011, and May 19, 2011 | 1 |
| 36 | Map and mileage information re: Cedartown, Georgia to Miami to Port Richey to Cedartown, Georgia | 1-3 |
| 37 | 03836 Database printout showing prescription history for | 1 |

31

CONFIDENTIAL

WAGMDL00387886

| | C.G. and J.M. on April 30, 2011, and May 3, 2011 | |
|---|---|---|
| 38 | Map and mileage information re: Lilburn, Georgia to Miami to Port Richey to Lilburn, Georgia | 1-3 |
| 28 | 03836 Database printout showing prescription history for C.M. and K.S. on May 2, 2011 | 1 |
| 29 | Map and mileage information re: Columbus, Ohio to Miami to Port Richey to Columbus, Ohio | 1-3 |
| 30 | 03836 Database printout showing prescription history for A.N. and D.N. on May 3, 2011 | 1 |
| 31 | Map and mileage information re: Hamersville, Ohio to Miami to Port Richey to Hamersville, Ohio | 1-3 |
| 32 | 03836 Database printout showing prescription history for D.E. on April 19, 2011, and April 26, 2011 | 1 |
| 33 | Map and mileage information re: Dothan, Alabama to Miami to Port Richey to Dothan, Alabama | 1-3 |
| 34 | Prescriptions of Dr. Kessler A-L | 175 |
| 35 | Prescriptions of Dr. Kessler M-P | 57 |
| 36 | Prescriptions of Dr. Kessler Q-Z | 172 |
| 37 | Prescriptions of Dr. Vitalis | 116 |
| 38 | 03836 Database printout showing prescription history for L.J., C.J., J.W., C.S., D.S., J.I., and C.W. for April 21, 2011, and April 23, 2011 | 1-2 |
| 39 | Map and mileage information re: Frankfort, Kentucky to Plantation, Florida, to Port Richey to Frankfort, Kentucky (L.J., C.J., J.W., and D.S.) | 1-3 |
| 40 | Map and mileage information re: Stamping Ground, Kentucky to Plantation, Florida, to Port Richey to Stamping Ground Kentucky (C.S.) | 1-3 |
| 41 | Map and mileage information re: London, Kentucky to North Lauderdale, Florida, to Port Richey to London, Kentucky (J.I.) | 1-3 |
| 42 | Map and mileage information re: East Bernstadt, Kentucky to North Lauderdale, Florida, to Port Richey to East Bernstadt, Kentucky (C.W.) | 1-3 |
| 43 | 03836 Database printout showing prescription history for M.C., C.D., K.J., and M.J. for April 14, 2011 | 1-2 |
| 44 | Map and mileage information re: Kisseemmee, Florida to North Lauderdale, Florida, to Port Richey to Kisseemee, Florida | 1-3 |
| 45 | 03836 Database printout showing prescription history for P.W., T.S., J.N., and L.B. on April 28, 2011, and May 5-6, 2011 | 1-2 |
| 46 | Map and mileage information re: Columbus, Ohio, to North Lauderdale, Florida, to Port Richey to Columbus, Ohio (P.W.) | 1-3 |
| 47 | 03836 Database printout showing prescription history for | 2-3 |

CONFIDENTIAL

WAGMDL00387887

|    | B.M., J.W., B.T., J.G., D.S., and C.S. on April 12,18, 21, 23, and 26-27 of 2011, and May 11, 18, and 25 of 2011 |     |
|----|------------------------------------------------------------------------------------------------------------------|-----|
| 48 | Map and mileage information re: Tampa, Florida, to Plantation, Florida, to Port Richey to Tampa, Florida (B.M., J.W., B.T., D.S., and C.S.) | 1-3 |
| 49 | Map and mileage information re: Tampa, Florida, to North Lauderdale, Florida, to Port Richey, to Tampa, Florida (J.G.) | 1-3 |
| 50 | 03836 Database printout showing prescription history of Kentucky residents receiving prescriptions from Dr. Kessler | 1-2 |
| 51 | 03836 Database printout showing prescription history for C.S., C.S.-1, H.J., T.K., C.P., K.B. and D.M. on May 12, 2011 | 1-2 |
| 52 | Map and mileage information re: Glasgow, Kentucky to Plantation, Florida, to Port Richey to Glasgow, Kentucky (C.S.-1) | 1-3 |
| 53 | Map and mileage information re: Owenton, Kentucky to Plantation, Florida, to Port Richey to Owenton, Kentucky (H.J.) | 1-3 |
| 54 | Map and mileage information re: Pensacola, Florida, to Plantation, Florida, to Port Richey to Pensacola, Florida (K.B. and D.M.) | 1-3 |
| 55 | 03836 Database printout showing prescription history for individuals obtaining prescriptions from Dr. Kessler between April 9, 2011, and May 18, 2011 | 1-2 |
| 56 | Chart showing location of persons obtaining prescriptions from Dr. Kessler | 1-2 |
| 57 | Prescriptions of Dr. Heromin | 69 |
| 58 | Map and mileage information re: Pensacola, Florida to Doral, Florida, to Port Richey to Pensacola, Florida (Dr. Heromin) | 1-3 |
| 59 | Map and mileage information re: Pensacola, Florida to Miami, Florida, to Port Richey to Pensacola, Florida (Dr. Heromin) | 1-3 |
| 60 | Map and mileage information re: Wetumpka, Alabama to Doral, Florida, to Port Richey to Doral, Alabama | 1-3 |
| 61 | Map and mileage information re: Wetumpka, Alabama to Miami, Florida, to Port Richey to Wetumpka, Alabama | 1-3 |
| 62 | Prescriptions for K.P. and E.P. | 11 |
| 63 | 03836 Database printout showing prescription history for K.P. and E.P. | 1 |
| 64 | Map and mileage information re: Dothan, Alabama to New Port Richey, Florida, to Port Richey to Dothan, Alabama | 1-3 |
| 65 | 03836 Database printout showing prescription history for | 1-2 |

33

CONFIDENTIAL

WAGMDL00387888

|    | residents of Pensacola, Florida, who received controlled substances from April 9, 2011, through July 19, 2011 |     |
|----|---|-----|
| 66 | Map and mileage information re: Pensacola, Florida, to Miami, Florida, to Port Richey to Pensacola, Florida (Dr. Abaunza) | 1-3 |
| 67 | Map and mileage information re: Pensacola, Florida, to Plantation, Florida, to Port Richey to Pensacola, Florida (Dr. Kessler) | 1-3 |
| 68 | Map and mileage information re: Pensacola, Florida, to North Lauderdale, Florida, to Port Richey to Pensacola, Florida (Dr. Vitalis) | 1-3 |
| 69 | 03836 Database printout showing prescription history for residents of Tennessee who received controlled substances from April 9, 2011, through February 28, 2012 | 1-2 |
| 70 | 03836 Database printout showing prescription history for residents of Kentucky who received controlled substances from April 9, 2011, through January 28, 2012 | 1-2 |
| 71 | Prescriptions for W.W. and C.W. | 8 |
| 71 | 03836 Database printout showing prescription history for W.W. and C.W. | 1 |
| 72 | Map and mileage information re: Adams, Kentucky, to Odessa, Florida, to Port Richey to Adams, Kentucky (W.W.) | 2 |

34

CONFIDENTIAL

WAGMDL00387889

## VII. POSITION REGARDING HEARING SITUS

The Government requests to hold the hearing at the DEA Hearing Facility (DEAHF)

located at 1550 Crystal Drive, Suite 901, Arlington, Virginia.

## VIII. OTHER MATTERS

The Government reserves the opportunity to amend its instant pleading at a time

and date specified by the presiding Administrative Law Judge.  The Government requests

the issuance of a protective order to prevent disclosure of the identities of Responden's

customers wherever such names and records are used in this proceeding.

## IX. BEST ESTIMATE AS TO TIME REQUIRED TO PRESENT CASE

The Government anticipates requiring no more than three (3) days to present its

case-in-chief, exclusive of cross-examination and rebuttal.



Respectfully submitted,



FRANK W. MANN
SCOTT LAWSON
Attorneys
Diversion & Regulatory Litigation
Office of Chief Counsel
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152

Dated: March 8, 2013

CONFIDENTIAL

WAGMDL00387890

## CERTIFICATE OF SERVICE

I hereby certify that on the date signed below, I caused the original and nine copies of the foregoing **GOVERNMENT'S PREHEARING STATEMENT** to be hand delivered and one copy to be faxed to the DEA Office of the Administrative Law Judges, and I caused a copy of the same to be sent, *via e-mail* and first class mail to counsel for Respondent at the following addresses:

> Phil Perry
> Allen M. Gardner
> Nathan H. Seltzer
> Latham & Watkins LLP
> 555 Eleventh Street, NW
> Suite 1000
> Washington, DC 20004-2232
> Fax: 202.637.2201
> Email: Phil.Perry@lw.com
>         Allen.Gardener@lw.com
>         Nathan.Seltzer@lw.com


> Frank W. Mann
> Diversion & Regulatory Litigation
> Office of Chief Counsel
> Drug Enforcement Administration
> 8701 Morrissette Drive
> Springfield, Virginia 22152

36

CONFIDENTIAL

WAGMDL00387891





CONTROLLED SUBSTANCE REGISTRATION CERTIFICATE
UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION
WASHINGTON, D.C, 20537

| DEA REGISTRATION NUMBER | THIS REGISTRATION EXPIRES | FEE PAID |
|---|---|---|
| AW8830247 | 05-31-2013 | $551 |

| SCHEDULES | BUSINESS ACTIVITY | DATE ISSUED |
|---|---|---|
| 2,2N,3 3N,4,5 | CHAIN PHARMACY | 05-12-2010 |

WALGREEN CO.
DBA: WALGREENS # 03836
9332 US HIGHWAY 19
PORT RICHEY, FL 34668

Sections 304 and 1008 (21 U.S.C. 824 and 958) of the Controlled Substances Act of 1970, as amended, provide that the Attorney General may revoke or suspend a registration to manufacturer, distribute, dispense, import or export a controlled substance.

THIS CERTIFICATE IS NOT TRANSFERABLE ON CHANGE OF OWNERSHIP, CONTROL, LOCATION, OR BUSINESS ACTIVITY, AND IS NOT VALID AFTER THE EXPIRATION DATE.

[Page intentionally left blank]

CONFIDENTIAL

WAGMDL00387893

## UNITED STATES DEPARTMENT OF JUSTICE
### Drug Enforcement Administration

| | |
|---|---|
| IN THE MATTER OF | |
| WALGREEN, CO. | DOCKET NO. 13-1 |
| WALGREEN, CO.<br>D/B/A WALGREENS #03629, | DOCKET NO. 13-9 |
| WALGREEN, CO.<br>D/B/A WALGREENS #04727, | DOCKET NO. 13-10 |
| WALGREEN, CO.<br>D/B/A WALGREENS #06997, | DOCKET NO. 13-11 |
| WALGREEN, CO.<br>D/B/A WALGREENS #03836, | DOCKET NO. 13-16 |
| WALGREEN, CO.<br>D/B/A WALGREENS #04391, | DOCKET NO. 13-18 |
| WALGREEN, CO.<br>D/B/A WALGREENS #03099 | DOCKET NO. 13-20 |

## GOVERNMENT'S PREHEARING STATEMENT FOR
## WALGREENS #04391 & #03099

Michelle F. Gillice
Paul E. Soeffing
Senior Attorneys
Diversion and Regulatory Litigation
Office of Chief Counsel
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152
(202) 307-8010 (office)
(202) 307-4946 (facsimile)

Dated: March 1, 2013

CONFIDENTIAL

Pursuant to the Orders for Pre-hearing Statements dated February 14, 2013, and February 22, 2013, the the United States Department of Justice, Drug Enforcement Administration (DEA or Government), hereby submits its Prehearing Statement for Walgreens #04391 and Walgreens #03099.

## ISSUES

Whether DEA should revoke DEA Certificates of Registration BW5872494 and AW1366877, issued to Walgreen Co. d/b/a Walgreens #04391("Walgreens 04391") and Walgreen Co. d/b/a Walgreens #03099 ("Walgreens 03099), respectively, pursuant to 21 U.S.C. §§ 824(a)(4) and 823(f), and deny any pending applications for renewal or modification of such registrations, pursuant to 21 U.S.C. § 823(f).

## REQUESTED RELIEF

The Government requests a ruling by the Administrative Law Judge recommending the revocation of the Respondent's Certificates of Registration BW5872494 and AW1366877, and the denial of any pending application for renewal or modification of such registrations.

## PROPOSED STIPULATIONS OF FACT[1]

1. Respondent Walgreens 04391 is registered with DEA as a chain pharmacy authorized to handle controlled substances in Schedules II-V under DEA registration number BW5872492 at 2501 Virginia Avenue, Fort Pierce, Florida 34981.  This registration expires by its terms on May 31, 2013.

2. Respondent Walgreens 03099 is registered with DEA as a chain pharmacy authorized to handle controlled substances in Schedules II-V under DEA registration number AW1366877 at 1525 Colonial Blvd., Fort Myers, Florida  33907.  This registration expires by its terms on May 31, 2013.

---

[1] The Government anticipates discussing additional stipulations with Respondent.

2

WAGMDL00387895

3. Hydromorphone is a Schedule II controlled substance pursuant to 21 C.F.R.

§ 1308.12(b)(1)(vii).

4. Clonazepam is a Schedule IV controlled substance pursuant to 21 C.F.R. §

1308.14(c)(10).

## I. **WALGREENS #04391 (FORT PIERCE 2 PHARMACY)**

### PROPOSED WITNESSES[2]

1. Susan Langston
   Diversion Program Manager
   DEA Miami Field Division
   2100 North Commerce Parkway
   Weston, Florida 33326

2. Martin Ramirez
   Diversion Investigator
   DEA Miami Field Division
   Tallahassee Resident Office
   1510 Commonwealth Business Drive
   Tallahassee, Florida 32303

3. Linda Stocum, Diversion Investigator (or Group Supervisor Susan Slyker)
   DEA Orlando District Office
   300 International Parkway, Suite 424
   Heathrow, Florida 32746

4. Dianne Williams
   Diversion Investigator (or Diversion Investigator Alison King)
   DEA Miami Field Division
   2100 North Commerce Parkway
   Weston, Florida 33326

5. Marc Cohen, Pharm. CPh.
   Pharmacy Manager
   Walgreens 04391
   2501 Virginia Avenue,
   Fort Pierce, Florida 34981

6. Lloyd Wright, Pharmacist
   Walgreens 04391

---

[2] In addition to the witnesses identified below, DEA reserves the right to call any of the witnesses listed by Respondent on matters identified by Respondent.

CONFIDENTIAL

WAGMDL00387896

2501 Virginia Avenue,
Fort Pierce, Florida 34981

7. Wesley Rohn, Pharm. D.
   Pharmacy District Supervisor, Palm Beach North
   Walgreen Co.
   901 Northpoint Parkway, Suite 105
   West Palm Beach, Florida  33407

8. Ed Svihra, RPH, CHC
   Director, HealthCare Loss Prevention
   Walgreen Co.
   1411 Lake Cook Road, MS #413
   Deerfield, Illinois 60015

9. Doug Lemmons
   Director, Divisional Loss Prevention Operations
   Walgreen Co.
   200 Wilmot Road, 2nd Floor
   Deerfield, Illinois, 60015

10. Paul L. Doering, M.S.
    Distinguished Service Professor of Pharmacy Practice, Emeritus
    College of Pharmacy
    University of Florida
    101 South Newell Drive
    HPNP Bldg. 212
    Room 3307
    Gainesville, Florida 32611

## SUMMARY OF TESTIMONY

**1.    Susan Langston, Diversion Program Manager ("DPM"), Miami Field Division**

DPM Langston will testify to her background, education, and training as a DEA
Diversion Investigator, Diversion Group Supervisor, and Diversion Program Manager.
DPM Langston will testify about the problem of prescription painkiller diversion and
abuse in Florida, and the proliferation of "pill mills" employing unscrupulous doctors
who prescribe controlled substances outside the usual course of professional practice or
for other than legitimate medical purposes.  DPM Langston will testify that since at least

4

CONFIDENTIAL

WAGMDL00387897

2009, the State of Florida has been epicenter of a notorious, well-documented epidemic of prescription drug abuse. The controlled substances most commonly associated with this epidemic are Schedule II pain relievers, such as oxycodone, Schedule IV benzodiazepines, such as alprazolam, and Schedule IV muscle relaxers, such as carisoprodol.

DPM Langston will testify that in response to the prescription pill epidemic, the Florida legislature passed a law in 2010 that restricted the ability of pain clinics to dispense controlled substances on site. DPM Langston will testify that, as a result of the new law, illicit prescriptions could no longer be filled at pain clinics, and pain clinic patients now had to go to pharmacies to have their prescriptions filled. DPM Langston will testify that with the new law came a wave of new pharmacy applicants for DEA registrations.

DPM Langston will testify that upon receiving applications from retail pharmacy owners in South Florida, DEA regularly conducts pre-registration interviews with new applicants to discuss pharmaceutical drug diversion. In June 2011, Walgreens Co. submitted an application for a new pharmacy DEA registration in Miami. In response to Walgreen's new pharmacy application, DEA scheduled a meeting with Walgreens pharmacy representatives on August 19, 2011. DPM Langston will testify that in preparation for the meeting, DEA conducted a search of Walgreens Florida pharmacies' oxycodone purchases through DEA's Automation of Reports and Consolidated Orders System (ARCOS), which revealed that Walgreens 04391 had significantly increased its oxycodone purchases between 2006 and 2011. DPM Langston will introduce an ARCOS report which shows that in 2006, Respondent purchased a total of approximately 237,400 dosage units of oxycodone. By the end of 2010, Walgreens 04391 had increased it

5

WAGMDL00387898

oxycodone purchases to 881,000 dosage units.  By the end of 2011, Walgreens 04391 increased its oxycodone purchases to 1,329,600 dosage units.

DPM Langston will testify that at the August 19, 2011 meeting, DEA investigators met with Walgreen Co. officials to discuss, generally, oxycodone diversion in Florida, and specifically, Walgreens' oxycodone sales in Florida.  Present on behalf of Walgreen Co. were Dwayne Pinon (corporate in-house counsel), Ed Forbes (Market Loss Prevention Director), Wesley Rohn (Pharmacy District Supervisor), Joan Bustelo (Pharmacy District Supervisor), Anne-Marie Aldrick (Pharmacy District Supervisor), Cesar Cedeno (Pharmacy District Supervisor), Lakeisha Axem (Pharmacy Supervisor), Sandra Vazquesz (Pharmacy Supervisor), and Susan Thompson (Loss Prevention Manager).

DPM Langston will also introduce a chart prepared for the August 19, 2011 meeting with Walgreen Co. entitled "2010 Top 100 Florida Walgreens Pharmacy Buyers of Oxycodone."  The chart reveals that in the first seven months of 2011, Walgreens 04391 had already purchased at 802,500 dosage units for oxycodone, nearly matching the 881,000 dosage units of oxycodone purchased for the entire year of 2010.  DPM Langston will testify that such a dramatic increase in oxycodone purchases is an indication to DEA investigators that pharmaceutical diversion might be occurring and, coupled with the timing of the state law changes regarding pill mill dispensing, should have been an indication or "red flag" to Respondent that it was likely dispensing oxycodone pursuant to illegitimate prescriptions.  DPM Langston will testify that this chart was provided to Dwayne Pinon, Walgreen Co.'s counsel, at the meeting.

DPM Langston will testify that she and Group Supervisor ("GS") Gayle Lane detailed for Walgreens representatives at the meeting, suspicious activity or "red flags"

CONFIDENTIAL

WAGMDL00387899

indicating that a controlled substance prescription may have come from a rogue pain management clinic, may not have been issued for a legitimate medical purpose, and/or may have been issued outside the usual course of professional practice.  DPM Langston will testify that she and GS Lane identified suspicious activity or red flags related to customers indicating a risk of diversion.  Such red flags included the following: "cocktail" prescriptions or combinations of controlled substance prescriptions for oxycodone, alprazolam and carisoprodol; people from out-of-state using questionable Florida Identification Cards; groups of patients with the same prescriptions for the more common drugs of abuse (including oxycodone 30mg, oxycodone 15mg, Alprazolam 2mg and carisoprodol, and one or two non-controlled prescriptions); groups of patients receiving the same prescriptions and same diagnoses, patients between 22 and 45 years old; patients traveling significant distances to the pharmacy and/or to the physician; and patients paying with cash.  DPM Langston will testify that patients using non-insurance discount cards to pay for controlled substance prescriptions are considered the equivalent of cash payments.

DPM Langston will testify that she and GS Lane also informed Walgreen Co. representatives of physician red flags or suspicious conduct indicating that prescriptions were not issued for legitimate medical purposes or were issued outside the usual course of professional practice including: doctors writing prescriptions for the same common drugs of abuse; doctors using the same diagnoses for multiple prescriptions; and doctors whose specialties are unrelated to pain management (e.g., obstetrics, pediatrics, or ophthalmology) prescribing large quantities of Schedule II controlled substances.

DPM Langston will testify that on May 7, 2012, pursuant to an administrative subpoena, Walgreen Co. provided her with an electronic dispensing log of all Schedule

7

CONFIDENTIAL

II-IV controlled substances dispensed by Walgreen 04391 between January 1, 2010 and April 4, 2012.

## 2. Martin Ramirez, Diversion Investigator

Following testimony regarding his experience and qualifications as a Diversion Investigator, DI Ramirez will testify that on April 4, 2012, an Administrative Inspection Warrant (AIW) was executed at Walgreens 04391. Pursuant to the AIW, he and other DEA investigators conducted a closing inventory of all oxycodone products, obtained inventory records, and prescriptions of all Schedule II controlled substances dispensed between January 1, 2010 and April 4, 2012.[3]

DI Ramirez will testify that his review and analysis of Walgreens 04391's electronic dispensing log revealed that Walgreens 04391 routinely dispensed prescriptions issued by doctors for oxycodone and Schedule IV benzodiazepine "cocktails" in the face of "red flags" for risk of diversion or abuse, including customer doctor shopping, prescribers practicing outside their specialty, cash payments for oxycodone, and significant geographical distances between the physician and Walgreens 04391.[4]

### A. Prescriptions

DI Ramirez will testify that when Respondent's pharmacists dispense a controlled substance, they generate a label from the electronic dispensing log and attach it to the back of the prescription. DI Ramirez will testify that numerous labels generated from the dispensing log that were attached to oxycodone prescriptions dispensed by Walgreens

---

[3] DI Ramirez will testify that upon review of the prescriptions collected, he was not provided with any Schedule II prescriptions dispensed between May 1, 2011 and August 25, 2011.

[4] "Red Flags" for risk of diversion or abuse associated with the prescriptions introduced by DI Ramirez will be expanded upon through the proposed expert testimony of Prof. Paul Doering, M.S.

CONFIDENTIAL

WAGMDL00387901

04391 contain commentary about the prescriber indicating the pharmacy staff who received and processed the prescriptions for dispensing knew or should have known that the prescriptions were suspect. For example, DI Ramirez will introduce summary dispensing spreadsheets and several prescriptions issued by Dr. Dustin Lee, in which commentary under Dr. Lee's name on the label states, "FAKE CII DO NOT FILL CANDY DR***FAKE." DI Ramirez will introduce several prescriptions issued by Dr. Armando Falcon, in which the commentary under Dr. Falcon's name on the label states, "FAKE CII DO NOT FILL CANDY DR."

Through the testimony of DI Ramirez, the Government will introduce summary spreadsheets excerpted from Respondent's dispensing log showing Walgreens 04391's dispensing of cocktail prescriptions prescribed by Dr. Ralph Miniet, a pediatrics specialist located in Fort Lauderdale, Florida.[5] DI Ramirez will introduce prescriptions for oxycodone in which the label attached to the prescription describes Dr. Miniet's prescriptions as "PAY FOR PLAY."[6]

DI Ramirez will introduce a spreadsheet summarizing Respondent's controlled substance dispensing to eight customers (R.A., M.W., S.C., C.W., L.K., L.S., and P.L) on October 14, 2011. The evidence will show that on that date, Walgreens 04391 pharmacists filled oxycodone, hydromorphone, and other controlled substances for these customers, and that Dr. Miniet was the prescribing physician for each prescription. DI Ramirez will introduce evidence that on October 14, 2011, Respondent dispensed

---

[5] Either DI Ramirez or Miami Field Division, Diversion Group Supervisor Gayle Lane will introduce documents from the Florida Department of Health's medical license verification website showing that Dr. Miniet specializes in pediatrics. DI Ramirez will also testify that Fort Lauderdale is approximately 105 miles away from the pharmacy.

[6] The "PAY FOR PLAY" prescriptions were dispensed between November 2010 and January 2011. In light of the Court's February 14, 2013, Order Granting Respondent's Motion In Limine regarding the Memorandum of Agreement, these prescriptions are not offered as evidence of violative dispensing, but are rather offered to show what Walgreens 04391 pharmacists knew or should have known about the validity of Dr. Miniet's controlled substance prescriptions dispensed after April 7, 2011.

9

CONFIDENTIAL

WAGMDL00387902

customer L.S. a twenty-even year old residing in Port St. Lucie on October 14, 2011 for 180 dosage units of oxycodone 30 mg, 84 dosage units of hydromorphone 8mg, 28 dosage units of alprazolam 2mg, and 28 dosage units of carisprodol 350mg who paid cash for the drugs. DI Ramirez will introduce a map showing that after customer L.S. drove approximately 105 miles south to Fort Lauderdale to get her prescriptions, she drove at least 12 miles north of her home in Port St. Lucie to fill the prescriptions at Respondent's location.  Additionally, DI Ramirez will introduce documentation from the Florida Department of Health and Walgreens dispensing log identifying Walgreens 04391 pharmacist Gladys Murrow.  The evidence will show Ms. Murrow signed at least seven Schedule II controlled substance prescriptions (indicating she reviewed and filled the prescriptions) issued by Dr. Miniet which were filled on October 14, 2011.

The Government also will introduce through DI Ramirez, a spreadsheet summarizing the dispensing of controlled substances, almost exclusively combinations of oxycodone 30 mg and clonazepam 1mg or 2 mg, to male and female patients, pursuant to prescriptions issued by Dr. Ronald Thompson, a board certified obstetrician/gynecologist located in Miami, Florida. [7]  Pharmacy generated labels attached to multiple prescriptions issued by Dr. Thompson that were dispensed in December 2011 and January 2012 contain the following commentary below Dr. Thompson's name, "FAKE CII DO NOT FILL ANY CII CANDY DR."  DI Ramirez will also introduce documentation from the Florida Department of Health and Walgreens 04391 dispensing log identifying Walgreens pharmacist Lloyd Wright.  The evidence will show that Mr. Wright signed at least 7 oxycodone prescriptions (indicating he reviewed and filled the prescriptions)

---

[7] DI Ramirez will introduce documents from the Florida Department of Health's medical license verification website showing that Dr. Thompson is a board certified obstetrician/gynecologist.  He will also testify that Miami is approximately 114 miles away from the pharmacy.

10

WAGMDL00387903

issued by Dr. Thompson for customers who were also dispensed clonazepam between Dec 30, 2011 and January 18, 2012.

In addition, the Government will introduce through the testimony of DI Ramirez, prescriptions and a summary spreadsheet excerpted from Respondent's dispensing log showing oxycodone dispensed to customer A.R. between April 21, 2011 and March 22, 2012, pursuant to prescriptions issued by five different physicians. On April 21 and 29, 2012, Walgreens 04391 pharmacists dispensed 60 dosage units of Oxycontin 60 mg and 90 dosage units of oxycodone 30 mg, respectively, prescribed by Dr. John Spencer Archinihu, whose office was located in Kissimmee, Florida. On August 17, and August 25, 2011, Walgreens 04391 pharmacists dispensed 60 dosage units of Oxycontin 60 mg, 60 dosage units of Oxycontin 80 mg, and 150 dosage units of oxycodone 30 mg prescribed by Dr. Robert Besen, whose office was located in Miami, Florida. On September 27 and September 30, 2011, Walgreens 04391 pharmacists dispensed 60 dosage units of Oxycontin 60 mg and 150 dosage units of oxycodone 30 mg prescribed by Dr. Besen's colleague, Dr. Carmen Alfonso. On October 27, 2011, November 7, 2011, November 30, 2011, January 4, 2012, January 20, 2012, and February 28, 2012, Respondent dispensed prescriptions for Oxycontin 60 mg and oxycodone 30 mg to A.R. issued by Dr. Armando Falcon, whose office was located in Miami, Florida. The pharmacy labels attached to the prescription at the time of dispensing include the following warning underneath Dr. Falcon's name "FAKE CII DO NOT FILL CANDY DR."

On March 22, 2012, Respondent dispensed 180 dosage units of oxycodone-acetaminophen to A.R. prescribed by Dr. Dustin Lee, whose office was located in Miami Florida. DI Ramirez will testify that a Walgreens 04391 employee had attached a Florida

11

CONFIDENTIAL

Prescription Data Monitoring Program ("PDMP") patient history report for A.R. dated March 22, 2012. DI Ramirez will testify that the PDMP report reveals that during the same time period that customer A.R. was filling his oxycodone prescriptions at Walgreens 04391, he was also filling hydrocodone and carisoprodol prescriptions issued by a completely different physician at another pharmacy located in Fort Pierce.

DI Ramirez will introduce a summary spreadsheet and prescriptions dispensed by Walgreens 04391 to customer E.O., a resident of Port St. Lucie, Florida, which will show that between April 22, 2011 and February 3, 2012, Walgreens 04391 pharmacists dispensed oxycodone and alprazolam to E.O. issued by five different physicians. DI Ramirez will testify that E.O.'s residence in Port Saint Lucie is approximately 16 miles south of Walgreens 04391.[8] Additionally, the evidence will show that several of the oxycodone prescriptions dispensed to E.O. contain the following commentary on the label under Dr. Wolf's name, "DO NOT FILL ANY FILL ANY CII."

DI Ramirez will introduce prescriptions Walgreens 04391 filled for customer A.W. who resided in Port St. Lucie, Florida. The evidence will show that on November 9, 2011, Walgreens 04391 dispensed A.W. 180 dosage units of oxycodone 30 mg and 60 dosage units of alprazolam 2 mg, each of which were issued by Dr. Aaron Boorstein, whose office was located in Fort Lauderdale, Florida.[9] On November 23, 2011, Walgreens 04391 filled A.W.'s prescription for 60 dosage units of oxycodone 15 mg prescribed by Dr. Boorstein. One week later, on December 1, 2011, Walgreens 04391

---

[8] DI Ramirez will introduce documentation showing Walgreens has at least eight pharmacies located in Port St. Lucie. DI Ramirez will also introduce a map showing the approximate distance and route traveled by customer E.O. from Port St. Lucie to Miami area physicians, and back past Port St. Lucie to Respondent's location in Fort Pierce.
[9] DI Ramirez will also introduce a map showing the approximate distance and route traveled by customer A.W. from Port St. Lucie to Fort Lauderdale, and back past Port St. Lucie to Respondent's location approximately 11 miles north of her residence in Port St. Lucie.

12

CONFIDENTIAL

dispensed 20 dosage units of hydromorphone 2 mg to A.W. which had been prescribed by Dr. Gonzalo Oria, whose office was in Port St. Lucie, Florida. On December 6, 2011, five days after A.W. received hydromorphone, Walgreens 04391 filled a prescription for customer A.W. for 180 dosage units of oxycodone 30 mg issued by Dr. Boorstein.

**B. Interviews with Walgreens Pharmacists**

DI Ramirez will testify that on August 22, 2012, he and other DEA investigators interviewed Walgreens 04391 pharmacy manager Marc Cohen in the presence of DEA and Walgreens attorneys. At the interview, Mr. Cohen stated that he filled controlled substance prescriptions for "pain clinics" after validating the physician's DEA number in their system, checking customers' identification cards, calling doctor's offices and receiving a diagnosis code from a nurse. Mr. Cohen also stated that it was important to know the specialty of a physician writing prescriptions for oxycodone, to ensure they are not writing prescriptions which are out of the scope of their practices, however, he did not verify the prescribing physician's specialty/specialties prior to filing oxycodone prescriptions.

DI Ramirez will testify that when Mr. Cohen was questioned about the commentary regarding certain physicians which appears in Respondent's electronic dispensing log and on the labels attached to prescriptions, Mr. Cohen stated that he did not know how the remarks got into the dispensing log. Mr. Cohen further stated that he would not see these remarks unless he went into "another view" of the pharmacy data. Consequently, if the dispensing log included comments that a doctor's prescription pad was stolen, Mr. Cohen said he would not know to look out for customers attempting to use a stolen prescription pad. With respect to "red flags" of diversion or abuse, Mr. Cohen stated that amounts of controlled substances prescribed are not a "red flag," as

13

CONFIDENTIAL

WAGMDL00387906

there is no maximum dose that can be prescribed and that the elderly build up a tolerance to controlled substances.  DI Ramirez will testify that Mr. Cohen stated he did not fill any "cocktail" prescriptions although he also commented that was unfamiliar with the term "cocktail" prescriptions until a meeting with DEA.

DI Ramirez will testify that on August 23, 2012, he and other DEA investigators interviewed Walgreens 04391 pharmacist Lloyd Wright in the presence of DEA and Walgreens attorneys.  DI Ramirez will testify that Mr. Wright stated that 90% of the customers were from pain management clinics and the prescriptions were for controlled substance "cocktails."  Mr. Wright explained his procedure for filling controlled substance prescriptions for pain clinic customers consisted of validating the doctor's DEA registration, checking customer identification cards, and calling the doctor's office to obtain a diagnosis code from the nurse.  Mr. Wright stated that at some point he stopped filling for patients who lived out of the Ft. Pierce and Port St. Lucie area.  DI Ramirez asked Mr. Wright what his thoughts were as he looked back at the dispensing of controlled substances from Walgreens 04391.  Mr. Wright replied, "We should not have filled them."

### 4.      Linda Stocum, Diversion Investigator[10]

Following testimony about her experience and qualifications as a Diversion Investigator, DI Stocum, will testify about the investigation into controlled substance prescriptions filled by Walgreen Co.'s central fill  and mail order facility located in Orlando, Florida.  As part of the existing investigation into several Florida Walgreens pharmacies, including Respondent, and the Walgreens Distribution Center in Jupiter, Florida, DEA obtained hard copies of prescriptions filled at those pharmacies between

---

[10] In the event DI Stocum is unable to testify, GS Susan Slyker will offer the proposed testimony below.

14

CONFIDENTIAL

WAGMDL00387907