# PSJ3

# Exhibit 339E

January 2010 and April 2012. DEA also obtained controlled substances dispensing logs from the pharmacies. Based on a review of the documents obtained from the AIWs, as well as the continuing DEA investigation into Walgreens, DEA requested copies of all controlled substance prescriptions filled by the Walgreens Mail Order facility in Orlando, Florida. DEA obtained copies of all prescriptions filled by the Orlando facility between January 1, 2010, and April 2012.

After a review of the Mail Order prescriptions and a comparison to ARCOS information on controlled substance purchases made under the Mail Order facility's DEA registration, DEA contacted the facility to inquire about large discrepancies between controlled substances ordered and prescriptions filled. At this time, Walgreens informed DEA that in addition to operating a mail order facility, Walgreens also operates its central pharmacy operations ("Central Fill") out of the same Orlando facility.

DI Stocum and DI Deborah George conducted an on-site visit to the Central Fill facility on June 19 and June 21, 2012. DI Stocum will testify about the site visit and what she learned about the facility and operations at that time. She will testify that the Walgreens Central Fill staff provided verbal explanations of the operations conducted at the facility, but were unable to provide DEA with documentation regarding filled prescriptions. DI Stocum will explain how the Central Fill facility operates based on discussions with Walgreens pharmacy personnel. She will testify that Walgreens pharmacies will send certain prescriptions to the facility to be filled, and the facility will then send the filled prescription back to the pharmacy for dispensing to the ultimate customer.

DI Stocum will testify that pursuant to an administrative subpoena issued on July 27, 2012, on October 25, 2012, Walgreen Co. produced dispensing log spreadsheets from

15

WAGMDL00387908

Central Fill.  DI Stocum will introduce a summary spreadsheet of Central Fill's prescriptions filled for Walgreens 04391 between January 1, 2010 and June 12, 2012. The evidence will show that Central Fill filled 547 prescriptions in Schedules III-V for Respondent.

DI Stocum will testify that pharmacies sending prescriptions to a central fill facility must notate "CENTRAL FILL" on the face of the original prescriptions as required under 21 C.F.R. § 1306.27(a)(1).  DI Stocum will testify about the effect of non-compliance with this regulation, namely, the complications created in attempting to perform an audit or otherwise capture the full picture of tracking controlled substance distributions and dispensing.

### 5.    Dianne Williams, Diversion Investigator[11]

Following testimony about her experience and qualifications as a Diversion Investigator, DI Williams will testify that on October 30, 2012, she and DI Alison King visited Walgreens 04391 and presented a Notice of Inspection to Pharmacy Manger Marc Cohen.  DI Williams and DI King requested that Mr. Cohen provide approximately twenty-four (24) controlled substances prescriptions identified on a dispensing log spreadsheet provided by Respondent as prescriptions the Central Fill pharmacy filled for Walgreens 04391.  DI Williams will introduce copies of the twenty-four prescriptions and accompanying RX Views and Interstore Transfer Claims provided by Mr. Cohen. The documents will show that Respondent failed to write "CENTRAL FILL" on the face of any of the original prescriptions.  Also, on three of the interstore transfer claims, Walgreens 04391 failed to document a record of receipt of the filled prescription

---

[11] In the event DI Williams is unable to testify, DI Alison King will offer the proposed testimony below.

CONFIDENTIAL

WAGMDL00387909

including date of receipt, method of delivery, and name of retail pharmacy employee accepting delivery.

**6.     Lloyd Wright, Pharmacist**

Mr. Wright will be asked to testify about Walgreens 04391's dispensing of controlled substances, including oxycodone. Mr. Wright will testify about "red flags" for controlled substance diversion and abuse, and his process for resolving "red flags" prior to dispensing. Mr. Wright will testify about verification and processing procedures for oxycodone and other controlled substance prescriptions, as well as any changes or modifications to this process over the last two years. Mr. Wright will testify about prescriptions for controlled substances that he filled prescribed by Drs. Wolf, Miniet, Thompson, Falcon, and Boorstein. Also, Mr. Wright will testify about Walgreen Co.'s corporate and regional management oversight, guidance, and on-site visits pertaining to controlled substance dispensing at Walgreens.

**7.     Marc Cohen, Pharmacy Manager**

Mr. Cohen will be asked to testify about his training and experience as pharmacy manager, and his role in dispensing oxycodone and other controlled substances. He will also testify about his supervision of pharmacists and pharmacy technicians with respect to controlled substance dispensing. He will be asked about the increase in oxycodone ordering and dispensing while he was pharmacy manager at Respondent's location. Mr. Cohen will testify about verification and other procedures for dispensing oxycodone and other controlled substance prescriptions, as well as any changes or modifications to this process over the last two years. Mr. Cohen will testify about "red flags" for diversion and abuse and his process for resolving "red flags" prior to dispensing. He will be asked about the guidance he provided to other pharmacy staff on how to resolve "red flags"

17

WAGMDL00387910

pertaining to controlled substance prescriptions.  Mr. Cohen will testify about Walgreens

corporate and regional management oversight, guidance, and on-site visits pertaining to

controlled substance dispensing at Walgreens.

8.     **Wesley Rohn, Pharmacy District Supervisor**

Mr. Rohn will testify about controlled substance ordering and dispensing

guidance he provided to Walgreens 04391 pharmacists, as well as his oversight of the

pharmacy, and on-site visits to examine and monitor the controlled substance dispensing.

9.     **Edward Svihra, RPH, Health Care Loss Prevention Director**

Mr. Svihra will about his visits concerning "pain management" to Walgreens

pharmacies, and specifically, to Walgreens 04391, with Loss Prevention Operations

Director, Doug Lemmons, in early 2012.  Mr. Svihra will be asked to testify about

concerns that he, Doug Lemmons and Division Vice President of Loss Prevention,

Kenneth Amos, discussed in January 2011 regarding Respondent's oxycodone

dispensing.

10.     **Doug Lemmons, Loss Prevention Operations Director**

Mr. Lemmons will testify about his Florida pharmacy "pain management" visits

in early 2012 with Edward Svihra, and specifically, his visit to Respondent's store in

2012.  Mr. Lemmons will be asked to testify about concerns identified in January 2011

and discussed with Mr. Svihra and Mr. Amos regarding Respondent's oxycodone

dispensing.

11.     **Paul Doering, M.S.**

Professor Doering will testify regarding his education, background, training, and

experience as a pharmacist.  Prof. Doering will testify that he (1) is a registered

pharmacist in the states of Florida and North Carolina, (2) is certified as a Consultant

18

WAGMDL00387911

Pharmacist in Florida, (3) previously practiced in the community pharmacy setting, (4) has been a professor at the University of Florida's School of Pharmacy for the past 35 years, (5) currently serves at the University of Florida's College of Pharmacy as Distinguished Service Professor of Pharmacy Practice, Emeritus, and (6) for 28 years was either Director or Co-Director of the University of Florida's Drug Information and Pharmacy Resource Center, a telephone access service through which health professionals can obtain information about drugs or drug therapy.  Prof. Doering will further testify about his experiences serving as an expert consultant and witness in a number of criminal, civil, and administrative proceedings.  Prof. Doering will provide expert witness testimony as detailed below.

Prof. Doering will testify about the education and training pharmacists receive in pharmacy school, including learning the fundamentals of both state and federal pharmacy law as it relates to the filling and dispensing of prescription drugs in general, and controlled substances in particular.  He will further testify about training pharmacists receive in the application of those laws to real life situations.  He also will discuss the coverage of these topics in Florida's pharmacist licensing exam.

Prof. Doering will testify about the epidemic of prescription drug diversion and abuse in the state of Florida.  He will discuss the in 2011 State of Emergency declared by the Florida Surgeon General which was issued in effort to prevent the many drug overdose deaths from controlled substances.  The controlled substances commonly associated with this epidemic are Schedule II pain relievers such as oxycodone; Schedule IV benzodiazepines, such as alprazolam; and Schedule IV muscle relaxers, such as carisoprodol.  Prof. Doering will testify about the overdose deaths due to oxycodone and

19

CONFIDENTIAL

WAGMDL00387912

benzodiazepines identified by the 2011 Florida Medical Examiners Report. He will testify that pharmacists are in a key position to reverse the trend of this epidemic.

Prof. Doering will further testify about the pharmacist's role in the distribution of controlled substances. He will testify about the dangerous propensities of certain controlled substances, in particular opiates and opioids such as oxycodone and benzodiazepines such as diazepam (Valium), alprazolam (Xanax), and clonazepam (Klonopin.)

Prof. Doering will discuss the responsibilities of pharmacists in filling controlled substances prescriptions. He will testify about the review and analysis pharmacists should undertake before certifying any such prescription for release to the patient, including checking the licensing status of prescribers and evaluating whether the prescription presented to them is for a legitimate medical purpose and issued by a properly registered practitioner in the usual course of professional practice.

Moreover, Prof. Doering will testify about the "red flags," or, in other words, indicators of diversion and abuse, which are used by pharmacists to detect drug diversion. Because of the enormous abuse and diversion associated with oxycodone, the mere fact that an oxycodone prescription is being presented should put the pharmacist on full-alert to ensure that the prescription is valid. He will testify that oxycodone prescribed in combination with alprazolam, or other benzodiazepines, and/or with carisoprodol, is a popular "cocktail" combination in illicit use, and when presented together by a customer should cause a pharmacist to more closely scrutinize the prescriptions.

He will discuss certain patterns or circumstances that are consistent with drug diversion schemes that a diligent pharmacist should observe, as well as the techniques that help the pharmacist detect drug diversion. Examples of such patterns or

20

CONFIDENTIAL

WAGMDL00387913

circumstances include, but are not limited to, patients who share the same address, patients who are prescribed the same numbers and types or combinations of drugs, and patients who live a distance from the prescribing practitioner and/or pharmacy, including out-of-state patients and/or practitioners. His also will testify that the 2010 Edition of the Drug Enforcement Administration's Pharmacist's Manual, provides additional guidance to pharmacists of indicators that a prescription was not issued for a legitimate medical purpose. Prof. Doering will testify that when taken together, certain "red flags" create enough doubt about the validity of the prescription that a reasonable and prudent pharmacist would refuse to fill the prescription. Prof. Doering will also testify about the ways in which a reasonable pharmacist would attempt to conclusively resolve "red flags" of diversion or abuse.

Additionally, Prof. Doering will testify about the information he was provided by the DEA to review and analyze concerning Respondent. This information included, but is not limited to: Respondent's dispensing log, copies of prescriptions and prescription labels for Schedule II controlled substances dispensed by Respondent, specialty status for prescribers from the Florida Department of Health, spreadsheets for prescription dispensing activity, and copies of electronic mail messages dispatched to Respondent and other parties in the Walgreens organization.

Prof. Doering will testify that based on his education, training, and experience as a pharmacist, his review and analysis of the DEA information he received shows that Respondent's pharmacists filled prescriptions that contained one or more "red flags" of drug diversion and either did not or could not conclusively resolve those "red flags" before dispensing the drugs.

21

WAGMDL00387914

## A.  "Candy Doctor" Prescriptions

Prof. Doering will testify about oxycodone dispensed by Respondent pursuant to prescriptions which Walgreens 04391 pharmacy employees documented red flags by commenting on the legitimacy of the prescription and/or the prescriber.  Prof. Doering will discuss the red flag commentary in dispensing log and appearing on the prescription labels, including Dr. Dustin Lee, "FAKE CII DO NOT FILL CANDY DR***FAKE"; and Armando Falcon M.D., "FAKE CII DO NOT FILL CANDY DR."  Prof. Doering will testify that this type of commentary pertains to the conduct of the physician, and consequently, a pharmacist's call to the physician's office could not resolve this type of red flag.

## B.  Dr. Miniet's Prescriptions

Prof. Doering will testify that he reviewed the prescriptions and summary spreadsheets of Dr. Miniet's prescription dispensed by Walgreens 04391.  Prof. Doering will testify that the prescriptions with the commentary "PAY FOR PLAY" on the label indicate that pharmacists knew or should have known in early 2011 that Dr. Miniet's prescriptions may have been issued for other than legitimate medical purposes.  Prof. Doering will testify that Dr. Miniet's prescriptions posed multiple red flags for risk of diversion including cocktail prescribing, significant distances between patient, pharmacy and prescriber, cash payments for prescriptions, physician practicing outside his specialty, and young patients in their twenties.  Prof. Doering will testify about prescriptions issued by Dr. Miniet and filled by Walgreens 04391 on October 14, 2011 to customers R.A., M.W., S.C., C.W., L.K., P.L. and L.S.  Prof Doering will testify that these prescription presented several "red flags".  For example, Prof. Doering will testify about four prescriptions dispensed to customer L.S., a twenty-even year old residing in

22

CONFIDENTIAL

WAGMDL00387915

Port St. Lucie on October 14, 2011 for 180 dosage units of oxycodone 30 mg, 84 dosage units of hydromorphone 8mg, 28 dosage units of alprazolam 2mg, and 28 dosage units of carisprodol 350mg who paid cash for the drugs.  Prof Doering will also testify that it appears that many of the prescriptions dispensed on October 14, 2011were reviewed by the same pharmacist as indicated by the signature on the prescription.  Prof. Doering will testify that given the nature of the red flags associated with the prescriptions for L.S. and other customers, a pharmacist would not be able to resolve the red flags merely by verifying the patient's identification and calling the physician.

### C.  Dr. Thompson's Prescriptions

Prof Doering will testify about several controlled substances dispensed pursuant to prescriptions issued by Dr. Ronald Thompson, a board certified obstetrician/gynecologist.  Prof. Doering will discuss the multiple red flags associated with these prescriptions including: cocktail prescribing, male patients, significant distances between patient, pharmacy and prescriber, cash payments for prescriptions, physician practicing outside his specialty, and pharmacy commentary, "FAKE CII DO NOT FILL ANY CII CANDY DR".  Prof. Doering will testify that given the nature of the red flags associated with these prescriptions, a pharmacist would not be able to resolve the red flags merely by verifying the patient's identification and calling the physician.

### D.  Customer A.R.

Prof. Doering will testify about his review of prescriptions dispensed to customer A.R. between late April 2011 and March 2012.  Prof. Doering will testify that A.R.'s prescriptions presented multiple red flags for diversion including, frequent doctor changes, and multiple high volume, high strength oxycodone prescriptions.  Prof.

CONFIDENTIAL

WAGMDL00387916

Doering will discuss a Prescription Drug Monitoring Program (PDMP) report attached to a March 22, 2012 oxycodone prescription. The report revealed that for the past year, A.R. was doctor shopping, meant that he was filling prescriptions for hydrocodone and carisprodol prescribed by different physicians at different pharmacies. Prof. Doering will testify that Florida's PDMP was created to help pharmacists identify and prevent precisely this type of doctor shopping scenario. Prof. Doering will testify that the red flags associated with A.R.'s prescriptions should have prompted Walgreens 04391 pharmacists to run a PDMP report well before March 22, 2012. Had they done so, A.R.'s doctor shopping would have come to light much earlier. In addition, Prof. Doering will testify that even when Walgreens 04391 pharmacists did run the PDPM report, they still dispensed oxycodone to A.R. despite unresolved red flags indicating that A.R. was diverting or abusing the controlled substances.

### E. Customer E.O.

Prof. Doering will testify about "red flags" associated with prescriptions filled for customer E.O., a twenty-nine year old Port St. Lucie resident. These red flags include cash payments for oxycodone and benzodiazepine "cocktails," and distances traveled from his Port St. Lucie residence to several physicians in the Miami area, and frequent prescriber changes. Prof. Doering will testify that it is also a "red flag" that E.O. traveled out of his way to have the prescriptions filled approximately 16 miles north of his Port St. Lucie home at Walgreens 04391 in Fort Pierce. Prof Doering will testify that the commentary on labels attached to the prescriptions regarding Dr. Wolf is an additional "red flag". Prof. Doering will testify that given the multiple red flags associated with E.O.'s prescriptions, a pharmacist would not be able to resolve the "red flags" merely by verifying the patient's identification and calling the physician.

24

WAGMDL00387917

### F.  Customer A.W.

Prof Doering will testify about "red flags" associated with prescriptions filled for customer A.W., a twenty-three year old Port St Lucie resident, who traveled over 100 miles south to Fort Lauderdale to visit Dr. Boorstein and then filled her prescriptions over 11 miles north of her home in Port St. Lucie.  Prof. Doering will testify about a prescription dispensed to A.W. issued by Dr. Oria for hydromorphone 2mg on December 1, 2011, while she was also being prescribed oxycodone 15 mg and 30 mg by Dr. Boorstein.  Prof. Doering will testify that the hydromorphone prescription raises red flags of doctor shopping and health risks concerns due to multiple opioid prescriptions.  Prof. Doering will testify that it may have been possible for a pharmacist to resolve the this "red flag" by calling Dr. Oria to inquire whether or not he was aware of oxycodone prescriptions issued by Dr. Boorstein.  Prof. Doering will testify that there is no indication on the face of the prescription that a pharmacist contacted Dr. Oria to resolve the "red flags."  On December 6, 2011, five days after receiving hydromorphone, customer A.W. presented a prescription for 180 dosage units oxycodone 30 mg.  Prof. Doering will testify that there is no indication on the face of the prescription that a pharmacist contacted Dr. Boorstein to discuss the hydromorphone dispensed five days earlier.

Prof. Doering will testify that in his opinion, Respondent's pharmacists failed to exercise that degree of professional judgment that a reasonable and prudent pharmacist would have done in like or similar circumstances when dispensing controlled substances. He will opine that some red flags presented with prescriptions were unresolvable and that a prudent pharmacist would not have dispensed under those circumstances.  He will opine that Respondent's pharmacists failed to execute their duty to verify whether or not the

25

WAGMDL00387918

large number of prescriptions they dispensed were for a legitimate medical need, and that they demonstrated a reckless indifference for the consequences of their actions or inactions.

## PROPOSED DOCUMENTS

212. DEA Certificate of Registration BW5872494 (attached hereto), (1 page)

213. ARCOS Report of Walgreens 04391 Oxycodone purchases, 2006-2012, (2 pages)

214. Respondent's Dispensing Log, January 2010 – April 4, 2012, (6,740 pages)

215. Prescriptions with Label Commentary, (15 pages)

216. Summary Spreadsheet of Dispensing, Customer A.R., (2 pages)

217. Prescriptions for Customer A.R., (20 pages)

218. March 22, 2012 PDPM report for Customer A.R., (2 pages)

219. Summary Spreadsheet of Dispensing, Customer E.O., (3 pages)

220. Customer E.O. Travel Distance Map, (2 pages)

221. Prescription for Customer E.O., (13 pages)

222. Summary Spreadsheet of Dispensing, Customer A.W., (2 pages)

223. Customer A.W. Travel Distance Map, (2 pages)

224. Prescriptions for Customer, A.W., (6 pages)

225. Summary Spreadsheet of Dispensing, Dr. Dustin Lee, (3 pages)

226. Summary Spreadsheet of Dispensing, Dr. Armando Falcon, (16 pages)

227. Summary Spreadsheet of Dispensing, Dr. Ronald Thompson, (18 pages)

228. Prescriptions Issued by Dr. Thompson, filled December 2011 and January 2012, (30 pages)

229. Summary Spreadsheet of Dispensing, Dr. Ralph Miniet, (88 pages)

230. Summary Spreadsheet of Dispensing, October 14, 2011, Dr. Miniet, (3 pages)

231. Prescriptions filled on October 14, 2011, Dr. Miniet, (13 pages)

232. Customer L.S. Travel Distance Map, (2 pages)

233. Central Fill Dispensing Log for Walgreens 04391, (315 pages)

234. Notice of Inspection, October 30, 2012, (1 page)

235. Central Fill Prescriptions, RX View and CPO Interstore Transfer Claims,(120 pages)

CONFIDENTIAL

WAGMDL00387919

236.  Florida Department of Health, Pharmacist License Verification, Lloyd Wright, (2 pages)

237.  Florida Department of Health, Pharmacist License Verification, Gladys Murrow, (2 pages)

238.  Pharmacy- Physician Travel Distance Map, (1 page)

239.  Walgreens pharmacies located in Port St. Lucie, Florida, (1 page)

## II.  **WALGREENS #03099 (FORT MYERS PHARMACY)**
### PROPOSED WITNESSES[12]

1.  Susan Langston
    Diversion Program Manager
    DEA Miami Field Division
    2100 North Commerce Parkway
    Weston, Florida  33326

2.  Donna Richards
    Acting Diversion Group Supervisor
    DEA Miami Field Division
    2100 North Commerce Parkway
    Weston, Florida  33326

3.  Roberta Goralczyk
    Group Supervisor
    DEA Tampa District Office
    4950 West Kennedy Boulevard, Suite 400
    Tampa, Florida  33609

4.  Megan Owens
    Pharmacist
    21579 Bella Terra Boulevard
    Estero, Florida  33928

5.  Trudi-Ann Blackellar
    Pharmacist
    10200 Olivewood Way, #39
    Estero, Florida  33928

6.  Keri Kratofil
    District Pharmacy Supervisor

---

[12] In addition to the witnesses identified below, DEA reserves the right to call any of the witnesses listed by Respondent on matters identified by Respondent.

CONFIDENTIAL

WAGMDL00387920

22011 Bridge Run Court
Estero, Florida  33928

7. Professor Paul Doering, M.S.
   Consultant Pharmacist
   3723 SW 20th Street
   Gainesville, Florida  32608

## SUMMARY OF TESTIMONY

### 1. Diversion Program Manager Susan Langston

DPM Langston will testify regarding the nature of diversion of controlled substances in Florida including the link between unscrupulous doctors at pain clinics, who prescribe oxycodone and other highly abused drugs to drug seekers, and pharmacies who willingly fill such prescriptions without exercising their corresponding duty to prevent diversion.

DPM Langston will testify that on August 18, 2011, she and GS Gayle Lane and other DEA investigators met with representatives from Walgreens Corporation to discuss oxycodone diversion and abuse issues in Florida.  DPM Langston will testify that DEA investigators advised Walgreens about specific red flags for diversion related to patients, namely: out-of-state patients, questionable Florida identification cards, cocktail prescriptions for oxycodone 15 mg, oxycodone 30 mg, alprazolam 2 mg, and Soma (carisoprodol), patients under the age of 45 years old, and patients paying with cash. DPM Langston will testify that she discussed red flags or suspicious conduct to look for with respect to physicians:  doctors writing for the same drugs; prescriptions from multiple individuals containing the same diagnosis; and doctors writing for large quantities of Schedule II prescriptions who had specialties unrelated to pain management, such as obstetricians, pediatricians and ophthalmologists.

28

CONFIDENTIAL

WAGMDL00387921

**2. Diversion Investigator Donna Richards**

DI Richards will testify that on April 4, 2012, DEA executed an AIW at Walgreens 03099. During execution of the AIW, investigators obtained inventory records, copies of all Schedule II prescriptions and dispensing records for Schedule II-IV controlled substances dispensed between January 1, 2010 and April 4, 2012. DI Richards will testify that a review of the records revealed that Walgreens 03099 filled prescriptions that should have raised concerns or red flags of diversion to the pharmacists. Specifically, Walgreens 03099 filled prescriptions issued by doctors who: prescribed to patients who had travelled either from out-of-state or from great distances within Florida to see the doctor and then have their prescriptions filled at Respondent's pharmacy; engaged in "pattern prescribing" by prescribing the same drugs and dosage amounts to multiple individuals, including some who lived at the same address; practiced outside their specialty; and issued prescriptions for controlled substance "cocktails" including combinations of oxycodone, alprazolam and carisoprodol. She will also testify regarding police reports of Walgreens 03099 customers under the influence of drugs or engaging in drug sales with other individuals at Walgreens 03099. Despite this activity, Walgreens 03099 continued to dispense controlled substances to these customers after these incidents.

**3. Group Supervisor Roberta Goralczyk**

GS Goralczyk will testify regarding DEA's October 30, 2012, administrative inspection of Walgreens 03099 and the recordkeeping violations found during this inspection. Investigators found thirty-three prescriptions that lacked annotations that they were filled by Walgreens' central fill pharmacy, in violation of 21 C.F.R. § 1306.27(a), and that lacked the red "C" which is required when storing controlled substance

29

CONFIDENTIAL

WAGMDL00387922

prescriptions with non-controlled prescriptions, in violation of 21 C.F.R. § 1304.04(h)(4) (these thirty-three prescriptions were also not readily retrievable). Investigators also found three prescriptions that lacked the DEA registration number of the prescriber and eight "call-in" prescriptions that lacked the address of the patient and the DEA registration number of the prescriber, in violation of 21 C.F.R. §§ 1306.21(a), 1306.05(a) and 1306.27(a)(2).

### 4. Megan Owens, Pharmacist[13]

Ms. Owens will testify that she was employed as a pharmacist by Walgreens beginning in 2007 and became the Pharmacy Manager at Walgreens 03099 in March 2010. She held this position until February 2012 when she left her employment with Walgreens due to scheduling issues. She is currently the Pharmacy Manager at a CVS Pharmacy in Bonita Springs, Florida.

She will testify that Walgreens 03099 filled a high volume of oxycodone prescriptions because the pharmacy was surrounded by numerous pain clinics. She will testify that she had weekly phone calls with her District Manager, Keri Kratofil, but seldom met with her in person. During the weekly calls she was told to "follow the law" and sometimes "red flags" of diversion were discussed. She will testify that there was no Walgreens manual providing further guidance on this and that she would resolve red flags by calling the prescriber. Someone from Loss Prevention came to the store approximately four times per year.

Ms. Owens will testify that she would check the identification of customers filling controlled substance prescriptions, call the offices of prescribers to verify oxycodone

---

[13] In the event Ms. Owens does not testify, DEA will call either GS Donna Richards or DI Jennifer Jimenez to testify to the statements Ms. Owens made to investigators during her January 24, 2013, interview discussed below.

CONFIDENTIAL

WAGMDL00387923

prescriptions and obtain the patient's diagnosis, whether the patient was a regular patient and whether the patient had a recent MRI, and check Florida's prescription drug monitoring program (E-FORCSE) to identify doctor-shoppers. She would not otherwise look for indications of diversion and if the patient had identification, the doctor's office verified the prescription and she did not discover evidence of doctor-shopping from the PDMP, she would generally fill the prescription. She would not, however, fill prescriptions for customers or prescribers outside of the pharmacy's service area, which she defined as Lee and Collier Counties. If she was not able to verify a prescription she would not fill it and there were also occasions where she was unable to fill oxycodone prescriptions because the pharmacy had run out of oxycodone.

She will testify that the pain clinic customers came in with prescriptions for oxycodone 15 mg, oxycodone 30 mg, Xanax, occasionally Soma and quite a lot also had ibuprofen prescriptions. She will testify that she was not suspicious of customers getting oxycodone 15 mg and 30 mg together. She will testify that the customers told her that Publix would not fill their prescriptions because it couldn't get the medication. She received phone calls several times a week from people asking if Walgreens 03099 had oxycodone in stock, but she would not give out this information over the phone. Ms. Owens will be questioned regarding specific prescriptions that she filled that contained one or more red flags of diversion, including prescriptions she filled that were issued by Emiliya Hill, M.D.

She will testify as to the process by which Walgreens 03099 filled prescriptions, including whether a prescription would be filled on site or by the Central Fill Pharmacy. In the fall of 2010, Walgreens 03099 started using the Central Fill Pharmacy. She will testify that every prescription is scanned into the computer and a scanned image is sent to

31

WAGMDL00387924

the Central Fill Pharmacy for data entry.  The data entry person enters the information into the computer and the central fill pharmacist verifies that the information is correct.  She will testify that if the prescription is for a Schedule II medication or the customer is waiting for the medication, the prescription is released back to Walgreens 03099 to be filled.  The Central Fill Pharmacy fills all non-schedule II prescriptions, controlled and non-controlled, which are to be picked up the next day.  She will testify that there is no way to distinguish a prescription filled by Walgreens 03099 from one filled by the Central Fill Pharmacy except when packaged, the label, receipt and bag were different.  She will testify that the words "Central Fill" were not stamped on the prescriptions.  She will testify as to notations made on Schedule II prescriptions filled by Walgreens 03099, including the initials of staff responsible for: scanning the prescription into the computer; computer screen verification; counting the pills; and verifying the prescription.

She will also testify regarding Walgreens 03099's ordering system for controlled substances.  She will testify that orders were automatically generated by computer based on the previous weeks' usage, but that a pharmacist could change the order before it went through.  The change could be made on the original line, or the pharmacist could add a line.  She will testify that she was occasionally contacted about changing an order, but not routinely, and that she believes this was just protocol for Walgreens to call and check on the quantity.  She will testify that she was not aware of any limits on oxycodone that could be ordered and that the computer automatically generated an order on a specific day, weekly.  She will testify that she was not required to review the order and the distribution center never refused to send an order.  She will testify that orders could be supplemented with "PDQ orders" that could be placed anytime through the computer system.  She will testify that there were no limits placed on the PDQ orders and these

32

WAGMDL00387925

orders were never declined by the distribution center. She will testify that no one from the Walgreens distribution center had ever visited Walgreens 03099. She will testify that her annual bonuses during the years she worked for Walgreens ranged from approximately $4,000 to approximately $8,000 and were based on sales, number of prescriptions filled, which included all prescriptions, and management of inventory dollars.

### 5. Trudi-Ann Blackellar, Pharmacist

Ms. Blackellar will testify regarding her employment at Walgreens 03099 and the protocol she used to fill controlled substance prescriptions at Walgreens 03099. She will testify regarding specific controlled substance prescriptions that she filled, including whether she identified any red flags of diversion associated with those prescriptions, whether she took any actions to clear those red flags and why she ultimately filled the prescriptions.

### 6. Keri Kratofil, District Pharmacy Supervisor

Ms. Kratofil will testify regarding her employment as a Walgreens District Pharmacy Supervisor. She will testify regarding the substance of weekly conference calls she held with pharmacists at Walgreens pharmacies in her district. She will testify regarding any and all on-site visits she made to Walgreens pharmacies. She will testify regarding her knowledge of controlled substance prescriptions filled at Walgreens pharmacies in her district. She will testify regarding her knowledge of controlled substance orders placed by Walgreens 03099, including, but not limited to, orders for oxycodone. She will testify regarding how Walgreens 03099 received oxycodone products from the Walgreens distribution center both before and after October 2011. She will testify regarding when and why she made the decision to limit the supply of

33

CONFIDENTIAL

WAGMDL00387926

oxycodone products at Walgreens 03099.  Finally, she will testify regarding any and all communications she had with employees at Walgreens' distribution center regarding controlled substance orders by Walgreens 03099.

### 7.  Professor Paul Doering, M.S.

Professor Paul Doering, M.S., ("Prof. Doering") will testify about his background, training and experience.  He will then testify as a Florida pharmacy expert regarding the operations and procedures generally followed by pharmacies in Florida.  Prof. Doering will testify about activity indicative of diversion or "red flags" of diversion that should be recognized by pharmacists, as well as the steps a reasonable pharmacist must take to resolve such red flags prior to dispensing.  Prof. Doering will testify that some red flags cannot be resolved and that in those cases a pharmacist exercising his or her corresponding responsibility would not dispense controlled substances.

Prof. Doering will also testify about his review of prescriptions dispensed by Walgreens 03099 under suspicious circumstances including the following: multiple individuals presenting prescriptions for the same drugs in the same or similar quantities from the same doctor; individuals with the same address presenting substantially similar prescriptions; individuals presenting prescriptions for combinations of controlled substances known to be highly abused, such as oxycodone and alprazolam; individuals presenting prescriptions for controlled substances issued by practitioners with specialties unrelated to pain management or oncology; individuals presenting prescriptions for controlled substances issued by practitioners located long distances from the pharmacy; and individuals paying for prescriptions for controlled substances with cash and non-insurance discount cards.  Prof. Doering will testify that the combination of red flags associated with these prescriptions cannot be resolved such that a reasonable pharmacist,

34

CONFIDENTIAL

WAGMDL00387927

in the exercise of his or her corresponding responsibility, could dispense the controlled substances prescribed.

## PROPOSED DOCUMENTS

240. Copy of Walgreens #03099's DEA Certificate of Registration.[14] (1 page)

241. Administrative Inspection Warrant for Walgreens #03099 dated April 3, 2012. (2 pages)

242. Excerpts of Dispensing Log and Prescriptions for J.V.L. and L.V.L. dispensed by Walgreens #03099 pharmacists. (92 pages)

243. Excerpts of Dispensing Log and Prescriptions for G.G., R.T. and T.T. dispensed by Walgreens #03099 pharmacists. (58 pages)

244. Excerpts of Dispensing Log and Prescriptions for C.A. dispensed by Walgreens #03099 pharmacists. (60 pages)

245. Excerpts of Dispensing Log and Prescriptions for M.S. dispensed by Walgreens #03099 pharmacists. (44 pages)

246. Excerpts of Dispensing Log and Prescriptions for K.W. dispensed by Walgreens #03099 pharmacists. (6 pages)

247. Excerpts of Dispensing Log and Prescriptions for Y.H., V.H. and D.H. dispensed by Walgreens #03099 pharmacists. (92 pages)

248. Excerpts of Dispensing Log and Prescriptions for P.C. and M.C. dispensed by Walgreens #03099 pharmacists. (64 pages)

249. Excerpts of Dispensing Log and Prescriptions for T.T. and T.T. dispensed by Walgreens #03099 pharmacists. (82 pages)

250. Excerpts of Dispensing Log and Prescriptions for C.A., H.A. and T.W. dispensed by Walgreens #03099 pharmacists. (103 pages)

251. Excerpts of Dispensing Log for Prescriptions issued by Emiliya Hill, M.D., and dispensed by Walgreens #03099 pharmacists. (80 pages)

252. Bryon Wheeldon email chain dated 03/28/2011 re: "Fw: STORE 3099" [WAGS00001034-37]. (4 pages)

---

[14] A copy is attached hereto.

35

CONFIDENTIAL

WAGMDL00387928

253.  "Store Manager 03099" email to Keri Kratofil dated 10/13/2011 [WAG00000467]. (1 page)

254.  Emails from Matt McLaughlin dated 11/18/2011 and 11/21/2011 [WAG00000414-16]. (3 pages)

255.  Notice of Inspection for Walgreens #03099 dated October 30, 2012.  (1 page)

256.  Copies of documentation and prescriptions with central fill and other violations from DEA's October 30, 2012, inspection of Walgreens #03099.  (37 pages)

257.  Police Report from 9/27/10 regarding trespass warning to Walgreens customer M.L. and Excerpts of Dispensing Log and Prescriptions for M.L. dispensed by Walgreens #03099 pharmacists.  (15 pages)

258.  Police Report from 9/28/10 regarding drug deal by Walgreens customer C.M. and Excerpts of Dispensing Log and Prescriptions for C.M. dispensed by Walgreens #03099 pharmacists.  (8 pages)

## OTHER MATTERS

The Government reserves the right to supplement this Prehearing Statement upon receipt and review of Respondent's Prehearing Statement and documentary evidence and reserves the opportunity to amend its instant pleading at a time and date specified by the presiding Administrative Law Judge.

Additionally, the Government notifies the Court of its intent to submit a filing complying with the Courts order dated February 26, 2013 regarding the Government's documentary evidence.  Such filing will be submitted on or before the Court's deadline of March 15, 2013.

## BEST ESTIMATE AS TO TIME REQUIRED TO PRESENT CONSOLIDATED CASES, INCLUDING THIS MATTER

The Government anticipates that it will need seven days to present its case-in-chief, exclusive of cross-examination and rebuttal.

CONFIDENTIAL

WAGMDL00387929

Respectfully submitted,

MICHELLE F. GILLICE
PAUL E. SOEFFING
Senior Attorneys
Diversion & Regulatory Litigation
Office of Chief Counsel
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152

Dated: March 1, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on the date signed below, I caused the original and nine copies of the foregoing GOVERNMENT'S PREHEARING STATEMENT to be hand delivered and faxed to the DEA Office of the Administrative Law Judges, and I caused a copy of the same to be sent, *via first-class mail, and a courtesy copy via e-mail* to counsel for Respondent at the following addresses:

Phil Perry
Allen M. Gardner
Nathan H. Seltzer
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-2232
Fax: 202.637.2201
Email: Phil.Perry@lw.com
        Allen.Gardener@lw.com
        Nathan.Seltzer@lw.com

3/1/2013

Michelle F. Gillice
Diversion & Regulatory Litigation
Office of Chief Counsel
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152

37

CONFIDENTIAL

WAGMDL00387930



CONTROLLED SUBSTANCE REGISTRATION CERTIFICATE
UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION
WASHINGTON, D.C. 20537

| DEA REGISTRATION NUMBER | THIS REGISTRATION EXPIRES | FEE PAID |
|---|---|---|
| AW1366877 | 05-31-2013 | $551 |

| SCHEDULES | BUSINESS ACTIVITY | DATE ISSUED |
|---|---|---|
| 2,2N,3 3N,4,5 | CHAIN PHARMACY | 05-12-2010 |

WALGREEN CO.
DBA: WALGREENS # 03099
1525 COLONIAL BLVD
FT MYERS, FL 33907

Sections 304 and 1008 (21 U.S.C. 824 and 958) of the Controlled Substances Act of 1970, as amended, provide that the Attorney General may revoke or suspend a registration to manufacture, distribute, dispense, import or export a controlled substance.

THIS CERTIFICATE IS NOT TRANSFERABLE ON CHANGE OF OWNERSHIP, CONTROL, LOCATION, BUSINESS ACTIVITY, OR VALID AFTER THE EXPIRATION DATE.

Form DEA-223 (05/04)

WAGMDL00387931

Printable DEA Certificate

Page 1 of 1





https://www.deadiversion.usdoj.gov/webforms/dupeCertPrintCert.do

2/28/2013

CONFIDENTIAL

WAGMDL00387932

[Page intentionally left blank]

CONFIDENTIAL

WAGMDL00387933

# UNITED STATES DEPARTMENT OF JUSTICE

## DRUG ENFORCEMENT ADMINISTRATION

| | |
|---|---|
| IN THE MATTERS OF<br><br>WALGREEN CO. | DOCKET NOS. 13-1, 13-9, 13-10, 13-11, 13-16, 13-18, 13-20<br><br>ADMINISTRATIVE LAW JUDGE<br>JOHN J. MULROONEY, II |

## GOVERNMENT'S CONSOLIDATED SUPPLEMENTAL PREHEARING STATEMENT

The United States Department of Justice, Drug Enforcement Administration ("DEA" or "Government"), by and through its undersigned counsel, hereby files its Consolidated Supplemental Prehearing Statement.

### ADDITIONAL PROPOSED STIPULATIONS OF FACT

1. Walgreen Co. d/b/a Walgreens #04391 is registered with DEA as a chain pharmacy authorized to handle controlled substances in Schedules II-V under DEA registration number BW5872494 at 2501 Virginia Avenue, Fort Pierce, Florida 34981.  DEA registration BW5872494 expires by its terms on May 31, 2013.[1]

### PROPOSED WITNESSES

Filed separately is the Government's comprehensive Witness List that includes each of the witnesses the Government intends to introduce during its case-in-chief for all the consolidated matters, as well as the location from where each witness will be testifying.   In

---

[1] This proposed stipulation corrects Walgreens 04391's registration number which was misidentified in Government's Prehearing Statement filed on March 1, 2013.

1

WAGMDL00387934

addition to these witnesses, DEA reserves the right to call any of the witnesses listed by Respondent on matters identified by Respondent.

## SUMMARY OF TESTIMONY

### 1. DEA Diversion Investigator Martin Ramirez

In addition to the testimony previously noticed, Diversion Investigator Martin Ramirez will testify to his preparation of Google maps showing distances travelled by customers to obtain and fill prescriptions for oxycodone and other controlled substances at Walgreens 04391. Investigator Ramirez will further testify to his preparation of Google maps showing Walgreens pharmacies located in Port St. Lucie and Fort Pierce.  In addition, the Government will introduce through the testimony of Investigator Ramirez, summary spreadsheets excerpted from Respondent's dispensing log showing oxycodone and other controlled substances dispensed to customers R.B and L.S.

### 2. Lloyd Wright, Pharmacist (Walgreens #04391)

In addition to the testimony previously noticed, Mr. Wright will be asked to testify about his background and education.  He will also be questioned about orders for controlled substances he placed with the Jupiter Distribution Center for Walgreens 04391.  He will be asked about orders for controlled substances that Walgreens 04391 placed with the Jupiter Distribution Center that were reported to DEA as "suspicious orders."  Mr. Wright will be questioned regarding how and when he was informed by Walgreens management, including but not limited to pharmacy district supervisors, and representatives from the Jupiter Distribution Center and/or Loss Prevention, that orders for controlled substances placed by Walgreens 04391 had been reported to DEA as "suspicious orders," as well as any and all subsequent communications and/or interactions he had

2

CONFIDENTIAL

WAGMDL00387935

with the Walgreens corporate representatives concerning each order from Walgreens 04391 that Walgreens reported to DEA as suspicious.

### 3.  Marc Cohen, Pharmacy Manager (Walgreens #04391)

In addition to the testimony previously noticed, Mr. Cohen will be questioned about orders for controlled substances he or his pharmacy staff placed with the Jupiter Distribution Center for Walgreens 04391.  He will be asked about Walgreens 04391 orders Walgreens reported to DEA as "suspicious orders."  Mr. Cohen will be questioned regarding how and when he was informed by Walgreens corporate representatives, including but not limited to pharmacy district supervisors, and representatives from the Jupiter Distribution Center and/or Loss Prevention, that orders placed for Walgreens 04391 had been reported to DEA as "suspicious orders," as well as any and all subsequent communications and/or interactions he had with the Walgreens corporate representatives concerning each order from Walgreens 04391 that Walgreens reported to DEA as suspicious.

### 4.  Andrea Cohen, Pharmacy Manager (Walgreens #04727)

In addition to the testimony previously noticed, Ms. Cohen will be asked to testify about her background and education.  Ms. Cohen will be questioned about orders for controlled substances she or her pharmacy staff placed with the Jupiter Distribution Center for Walgreens 04727.  She will be asked about Walgreens 04727 orders that Walgreens subsequently reported to DEA as "suspicious orders." Ms. Cohen will be questioned regarding how and when she was informed by Walgreens corporate representatives, including but not limited to pharmacy district supervisors, and representatives from the Jupiter Distribution Center and/or Loss Prevention, that orders placed for Walgreens 04727 had been reported to DEA as "suspicious orders," as well as any and all subsequent communications and/or interactions she had with the Walgreens corporate

3

CONFIDENTIAL

WAGMDL00387936

representatives concerning each order from Walgreens 04727 that Walgreens reported to DEA as suspicious.

**5. Jorge Corripio, Pharmacist (Walgreens #04727)**

In addition to the testimony previously noticed, Mr. Corripio will be asked to testify about his background and education. Mr. Corripio will be questioned about orders for controlled substances he placed with the Jupiter Distribution Center for Walgreens 04727. He will be asked about Walgreens 04727 orders that Walgreens subsequently reported to DEA as "suspicious orders." Mr. Corripio will be questioned regarding how and when he was informed by Walgreens management, including but not limited to pharmacy district supervisors, and representatives from the Jupiter Distribution Center and/or Loss Prevention, that orders placed for Walgreens 04727 had been reported to DEA as "suspicious orders," as well as any and all subsequent communications and/or interactions he had with the Walgreens corporate representatives concerning each order from Walgreens 04727 that Walgreens reported to DEA as suspicious.

**6. Melissa Kayes, Pharmacy Technician (Walgreens #04727)**

In addition to testimony previously noticed, Ms. Kayes will be asked to testify about her background and education. Ms. Kayes will be questioned about orders for controlled substances that she placed with the Jupiter Distribution Center for Walgreens 04727. She will be asked about Walgreens 04727 orders that Walgreens subsequently reported to DEA as a "suspicious orders." Ms. Kayes will be questioned regarding how and when she was informed by Walgreens management, including but not limited to pharmacy district supervisors, and representatives from the Jupiter Distribution Center and/or Loss Prevention, that orders placed for Walgreens 04727 had been reported to DEA as "suspicious orders," as well as any and all subsequent

4

CONFIDENTIAL

WAGMDL00387937

communications and/or interactions she had with the Walgreens corporate representatives concerning each order from Walgreens 04727 that Walgreens reported to DEA as suspicious.

### 7. DEA Diversion Investigator Domingo Gonzales

In addition to testimony previously noticed, Diversion Investigator Domingo Gonzales will testify to a modified spreadsheet that he prepared showing the dispensing of controlled substance to customer "J.M." by Walgreens 03629.  The modified spreadsheet, submitted in lieu of Government Proposed Exhibit 104, will include the patient address, the cash amount paid for each prescription, and dispensing pharmacist.  He will further testify to his preparation of Google maps showing distances travelled by individuals while obtaining prescriptions for oxycodone and filling the prescriptions at Walgreens 03629.

### 8. Caren Cohalla, Pharmacy Manager (Walgreens #03629)

In addition to testimony previously noticed, Walgreens 03629 Pharmacy Manager Caren Cohalla will be asked to testify regarding her supervision of pharmacists and pharmacy technicians with respect to controlled substance dispensing.  Ms. Cohalla will be asked to testify regarding her background and training on detecting "red flags" and other suspicious indicators of controlled substance diversion.  She will also be asked to testify regarding similar training received by other pharmacists and pharmacy staff of Walgreens 03629 as well as guidance she provided to pharmacy staff on how to resolve "red flags" pertaining to controlled substance prescriptions.  Ms. Cohalla will be asked to testify regarding Walgreens' Good Faith Dispensing procedures, modifications to those procedures, and whether these procedures were helpful in informing the determinations of pharmacy staff to fill, or not fill, a prescription for a controlled substance.

She will be asked about the increase in oxycodone ordering and dispensing while she

CONFIDENTIAL

WAGMDL00387938

managed the Walgreens 03629 location. Specifically, Ms. Cohalla will be questioned about oxycodone orders placed for Walgreens 03629 with the Jupiter Distribution Center that Walgreens subsequently reported to DEA as "suspicious orders." Ms Cohalla will be questioned regarding how and when her pharmacy was informed by Walgreens corporate representatives, including but not limited to pharmacy district supervisors, and representatives from the Jupiter Distribution Center and/or Loss Prevention, that the orders placed by the pharmacy had been reported to DEA as a "suspicious order." She will also be asked to testify to any and all subsequent communications and/or interactions she had with the Walgreens corporate representatives concerning each order from Walgreens 03629 that was subsequently reported to DEA as suspicious by Walgreens.

Ms. Cohalla will be asked to testify about verification and other procedures for dispensing oxycodone and other controlled substance prescriptions, as well as any changes or modifications to this process over the last two years. She will further testify about Walgreens corporate and regional management oversight, guidance, and on-site visits pertaining to controlled substance dispensing at Walgreens 03629. Ms. Cohalla will also be asked to address apparent inconsistencies between the dispensing logs of Walgreens 03629 and corresponding prescriptions.

9. **Terry Collins, Walgreens District Pharmacy Supervisor, District 227 (Tampa North)**

Following testimony of his background and qualifications as Walgreens District Pharmacy Supervisor, District 227 (Tampa North), Terry Collins will be asked to testify about controlled substance ordering and dispensing guidance he provided to Walgreens 03629

CONFIDENTIAL

WAGMDL00387939

pharmacists, as well as his oversight of the pharmacy, and on-site visits to examine and monitor the controlled substance dispensing at that location.

Mr. Collins will be asked to address specific instances of controlled substance dispensing by Walgreens 03629.  Specifically, Mr. Collins will be questioned regarding oxycodone dispensed to individuals travelling great distances from their residential locations to the locations of their treating physician and ultimately to Walgreens 03629 where the oxycodone prescriptions were filled.  Mr. Collins will also be asked about Walgreens 03629's dispensing of controlled substances to customer "J.M." despite numerous red flags, and whether he or anyone affiliated with Walgreen corporate headquarters inquired about the dispensing of controlled substances to J.M. as well as other individuals.

Mr. Collins will be asked about the increase in oxycodone ordering and dispensing during his tenure as District Pharmacy Supervisor for District 227.   Specifically, Mr. Collins will be questioned about oxycodone orders placed for Walgreens 03629 with the Jupiter Distribution Center that Walgreens subsequently reported to DEA as "suspicious orders."  Mr. Collins will be questioned about whether he or representatives from the Jupiter Distribution Center and/or Loss Prevention ever informed pharmacy personnel at Walgreens 03629 that oxycodone orders placed by the pharmacy were reported to DEA as a "suspicious order."   Mr. Collins will be further questioned about any and all subsequent communications and/or interactions he had with Walgreens 03629 personnel concerning each order from the pharmacy that was subsequently reported to DEA as suspicious.

**10. Amy Spiehs-Hicks, Walgreens District Loss Prevention Manager, District 198 (Tampa West)**

7

CONFIDENTIAL

WAGMDL00387940

Following testimony of her background and qualifications as Walgreens District Loss Prevention Manager, District 198 (Tampa West), Amy Spiehs-Hicks will be asked to testify regarding any visits she made to Walgreens 03629 to discuss "pain management" issues and the filling of questionable prescriptions for oxycodone and other highly abused controlled substances.  Ms. Spiehs-Hicks will be asked about the increase in oxycodone ordering and dispensing during her tenure as Loss Prevention Manager for District 198.  Specifically, Ms. Spiehs-Hicks will be questioned about oxycodone orders placed for Walgreens 03629 with the Jupiter Distribution Center that Walgreens subsequently reported to DEA as "suspicious orders."  Ms. Spiehs-Hicks will be questioned about whether she or representatives from the Jupiter distribution facility and/or the District Pharmacy Supervisor ever informed pharmacy personnel at Walgreens 03629 that oxycodone orders placed by the pharmacy were reported to DEA as a "suspicious order."

**11. DEA Diversion Investigator Peter Flagg**

DEA Diversion Investigator Peter Flagg testify regarding his background, education, and training as a DEA Diversion Investigator.  Investigator Flagg will testify that, in the course of an investigation into Walgreens Mail Service, Inc., he obtained spreadsheets containing information about Schedule III through V controlled substances filled by Walgreens 03836 utilizing a central-fill pharmacy.  Investigator Flagg will testify that he was selected 25 prescriptions at from the spreadsheet pertaining to Walgreens 03836 and sought to obtain those prescriptions from Walgreens 03836, as well as the "CPO Fill Interstore Transfer Claim Form" and a copy of the computer screen printout of the "RX View" for each of the 25 prescriptions.

Investigator Flagg will testify that, on October 29, 2012, he travelled to Walgreens 03836 and presented the spreadsheet with 25 prescriptions highlighted to Pharmacist Smitha Mekala,

8

WAGMDL00387941

and Senior Pharmacy Technician Kate Wilson.  He then requested that Dr. Mekala and Ms. Wilson produce the prescriptions that were highlighted on the spreadsheet.  Investigator Flagg will testify that, on the following day, Walgreens 03836 Store Manager Michael DeMaro provided Investigator Flagg will the requested documents.

Investigator Flagg will testify that, after reviewing the documents and speaking with Dr. Mekala, Ms. Wilson, and Assistant Store Manager Eric Perkins, he concluded that, of the 25 prescriptions selected: (1) none of them had the words "Central Fill" written on the face of the original prescriptions; (2) at least eleven prescriptions did not include the full address of the patient on the face of prescription; and (3) at least eight prescriptions did not contain the DEA registration number of the practitioner on the face of the prescription.

Investigator Flagg will also testify that, based on his conversations with Ms. Wilson, Dr. Mekala, and Mr. Perkins, that Walgreens 03836 placed no labels or other markings on its prescriptions to designate the prescriptions that were filled at a central fill pharmacy, nor did Walgreens 03836 maintain central filled prescriptions separately from the prescriptions that were filled at the actual retail (Walgreens 03836) store.

### 12. Fred Casale, Pharmacy Manager (Walgreens #03836)

In addition to the testimony previously noticed, Mr. Casale will also testify regarding any prescriptions he filled for controlled substances for Walgreens 03836 (as described in the Government's summarized testimony of DEA Diversion Investigators Domingo Gonzales and Dianne Williams disclosed in the previous prehearing statement for Walgreens 03836).  Mr. Casale will be asked to explain the justification for filling each of the prescriptions attributed to him.  He will be asked to discuss the pharmacy's process and procedures for filling a controlled substance prescription, including identifying any potential "red flags" for diversion.   He will be

9

CONFIDENTIAL

WAGMDL00387942

asked to discuss the procedure(s) for resolving, or attempting to resolve, any red flags for diversion.

As a pharmacy manager for Walgreens 03836, Mr. Casale will be asked to identify whether he approved the dispensing of any of the controlled substances identified in the Government's previously disclosed summarized testimony of Investigators Gonzalez and/or Williams as it relates to Walgreens 03836.  To the extent that Mr. Casale approved the dispensing of these controlled substances, he will be asked to identify the specific steps he took to ensure that the prescriptions for controlled substances had been issued for a legitimate medical purpose within the usual course of professional practice.

With respect to prescriptions presented by customers who, in order to obtain the prescription and present it at Walgreens 03836, would have had to travel more than 100 miles roundtrip, [2, 3] Mr. Casale will be asked to identify what measures were taken to ensure that the prescriptions presented by these customers were for a legitimate medical purpose issued in the usual course of professional practice.

To the extent Mr. Casale was involved in the process of ordering controlled substances from a distributor, he will be questioned about orders placed for Walgreens 03836 with the Jupiter Distribution Center that Walgreens subsequently reported to DEA as "suspicious orders."  He will be questioned regarding how and when he was informed by Walgreens corporate representatives, including but not limited to pharmacy district supervisors and representatives from the Jupiter Distribution Center and/or Loss Prevention, that the orders he had placed had been reported to DEA as a "suspicious order," as well as any and all subsequent

---

[2] "Roundtrip" is defined as the distance travelled from the customer's residence (as listed on either on the prescription or in Walgreens 03836's dispensing logs) to the customer's physician's office, then to Walgreens 03836, and then back to the customer's residence.
[3] Based on the individual customer's home address listed either on the prescription and/or in the Walgreens 03836 dispensing log.

CONFIDENTIAL

WAGMDL00387943

communications and/or interactions he had with the Walgreens corporate representatives concerning each order from Walgreens 03836 that Walgreens reported to DEA as suspicious.

### 13. Peter Ventouris, Pharmacy Manager (Walgreens #03836)

Peter Ventouris will be asked to testify regarding his background, education and training as a pharmacist and pharmacy manager.  As a pharmacy manager for Walgreens 03836, Mr. Ventouris will be asked to identify whether he approved the dispensing of any of the controlled substances identified in the Government's previously disclosed summarized testimony of Investigators Gonzalez and/or Williams as it relates to Walgreens 03836.  To the extent that Mr. Ventouris approved the dispensing of these controlled substances, he will be asked to identify the specific steps he took to ensure that the prescriptions for controlled substances had been issued for a legitimate medical purpose within the usual course of professional practice.

With respect to prescriptions presented by customers who, in order to obtain the prescription and present it at Walgreens 03836, would have had to travel more than 100 miles round trip, Mr. Ventouris will be asked to explain why Walgreens pharmacists and/or pharmacy technicians under his supervision dispensed controlled substances to these customers and identify what measures were taken to ensure that the prescriptions presented by these customers were for a legitimate medical purpose issued in the usual course of professional practice.

To the extent Mr. Ventouris was involved in the process of ordering controlled substances from a distributor, he will be questioned about orders placed for Walgreens 03836 with the Jupiter Distribution Center that Walgreens subsequently reported to DEA as "suspicious orders." He will be questioned regarding how and when he was informed by Walgreens corporate representatives, including but not limited to pharmacy district supervisors, and representatives

11

WAGMDL00387944

from the Jupiter Distribution Center and/or Loss Prevention, that the orders he had placed had been reported to DEA as a "suspicious order," as well as any and all subsequent communications and/or interactions he had with the Walgreens corporate representatives concerning each order from Walgreens 03836 that Walgreens reported to DEA as suspicious.

### 14. Quang Tran, Pharmacy Supervisor (Walgreens #03836)

In addition to testimony previously disclosed, Mr. Tran will testify regarding prescriptions for controlled substances he filled at Walgreens 03836 (as described in the Government's previously disclosed summarized testimony of Investigators Gonzalez and/or Williams as it relates to Walgreens 03836).  Mr. Tran will be asked to explain the justification for filling each of the prescriptions attributed to him.  He will be asked to discuss the pharmacy's process and procedures for filling a controlled substance prescription, including identifying any potential "red flags" for diversion.   He will be asked to discuss the procedure(s) for resolving, or attempting to resolve, any red flags for diversion.

Mr. Tran will be asked to identify whether he approved the dispensing of any of the controlled substances identified in the Government's previously disclosed summarized testimony of Investigators Gonzalez and/or Williams as it relates to Walgreens 03836.  To the extent that Mr. Tran approved the dispensing of these controlled substances, he will be asked to identify the specific steps he took to ensure that the prescriptions for controlled substances had been issued for a legitimate medical purpose within the usual course of professional practice.

With respect to prescriptions presented by customers who, in order to obtain the prescription and present it at Walgreens 03836, would have had to travel more than 100 miles roundtrip,[4] Mr. Tran will be asked to explain why Walgreens pharmacists and/or pharmacy technicians

---

[4] Based on the individual customer's home address listed either on the prescription and/or in the Walgreens 03836 dispensing log.

CONFIDENTIAL

WAGMDL00387945

dispensed controlled substances to these customers and identify what measures were taken to ensure that the prescriptions presented by these customers were for a legitimate medical purpose issued in the usual course of professional practice.

To the extent Mr. Tran was involved in the process of ordering controlled substances from a distributor, he will be questioned about orders placed for Walgreens 03836 with the Jupiter Distribution Center that Walgreens subsequently reported to DEA as "suspicious orders." He will be questioned regarding how and when he was informed by Walgreens corporate representatives, including but not limited to pharmacy district supervisors and representatives from the Jupiter Distribution Center and/or Loss Prevention, that the orders he had placed had been reported to DEA as a "suspicious order," as well as any and all subsequent communications and/or interactions he had with the Walgreens corporate representatives concerning each order from Walgreens 03836 that Walgreens reported to DEA as suspicious.

**15. Tammy Benali**

Ms. Benali will be asked to testify regarding her background, education and training. She will be questioned about her role described in Government Exhibit 348 as "Product Verified User." Ms. Benali will be asked to describe in detail her duties as the "Product Verified User," and what role she played in ensuring that a prescription for a controlled substances was issued for a legitimate medical purpose and within the usual course of professional practice.

Specifically, Ms. Benali will be asked to discuss her role in approving and dispensing prescriptions for fifteen milligram tablets of oxycodone on April 21, 2011, to customers C.J. and L.J., both of whom resided at the same address in Frankfort, Kentucky, and obtained their prescriptions from a physician in Plantation, Florida. Ms. Benali will also be asked to discuss her role in approving the dispensing of thirty-milligram tablets of oxycodone to L.J. on April 23,

13

CONFIDENTIAL

WAGMDL00387946

2011, as well as the dispensing of alprazolam to A.J., a resident of Pensacola, Florida, on July 8, 2011.  She will also be asked to discuss her role in approving the dispensing of fifteen milligram tablets of oxycodone to B.J., a resident of Chillocothe, Ohio, who obtained his prescription from a physician in Doral, Florida (*see* Govt. Ex. 248).

With respect to the above prescriptions, Ms. Benali will be asked to describe what steps she took to ensure that these prescriptions were for issued for a legitimate medical purpose within the usual course of professional practice.

**16. Nancy Levi, RPh.**

Ms. Levi will be asked to testify regarding her background, education, and training.  She will be questioned about her role described in Government Exhibit 348 as "Product Verified User." Ms. Levi will be asked to describe in detail her duties as the "Product Verified User," and what role she played in ensuring that a prescription for a controlled substances was issued for a legitimate medical purpose and within the usual course of professional practice.

Specifically, Ms. Levi will be asked to discuss her role in approving and dispensing prescriptions for thirty milligram tablets of oxycodone on April 23, 2011, to customer J.W., a resident of Frankfort, Kentucky, who obtained his prescription from a physician in Plantation, Florida.  Ms. Levi will also be asked to discuss her role in approving the following additional prescriptions: (1) thirty-milligram oxycodone tablets to V.J., a resident of Pensacola, Florida, on April 23, 2011; (2) thirty-milligram oxycodone tablets to C.C., a resident of Pensacola, Florida, on May 7, 2011; (3) thirty-milligram tablets of oxycodone to E.C., a resident of Frankfort, Kentucky, on May 7, 2011; (4) thirty-milligram tablets of oxycodone to M.H, a resident of Pensacola, Florida, on May 7, 2011  (*see* Govt. Ex. 248).

14

CONFIDENTIAL

WAGMDL00387947

With respect to the above prescriptions, Ms. Levi will be asked to describe what steps she took to ensure that these prescriptions for issued for a legitimate medical purpose within the usual course of professional practice.

**17 – 25. Cassie Mulvey**
      **Tara Kapavicus**
      **Shane Van Gordon**
      **Jade Leppi**
      **Kate Wilson**
      **Sanjay Patel**
      **Michael Nunez**
      **Terrence Myers**
      **Dale Randall**

To the extent the above individuals have been identified as filling prescriptions and dispensing controlled substances for Walgreens 03836 (as described in the Government's previously disclosed summarized testimony of Investigators Gonzalez and/or Williams as it relates to Walgreens 03836), each of the above individuals will be asked to explain the justification for filling each of the prescriptions attributed to them.  They will each be asked to discuss the pharmacy's process and procedures for filling a controlled substance prescription, including identifying any potential "red flags" for diversion.   They will each be asked to discuss the procedure(s) for resolving, or attempting to resolve, any red flags for diversion.

With respect to prescriptions presented by customers who, in order to obtain the prescription and present it at Walgreens 03836, would have had to travel more than 100 miles roundtrip, each of the above individuals will be asked to explain why they dispensed controlled substances to these customers and identify what measures were taken to ensure that the prescriptions presented by these customers were for a legitimate medical purpose issued in the usual course of professional practice.

CONFIDENTIAL

WAGMDL00387948

To the extent any of the above individuals were involved in the process of ordering controlled substances from a distributor, he or she will be questioned about orders placed for Walgreens 03836 with the Jupiter Distribution Center that Walgreens subsequently reported to DEA as "suspicious orders."   The individual will be questioned regarding how and when he or she was informed by Walgreens corporate representatives, including but not limited to pharmacy district supervisors, and representatives from the Jupiter Distribution Center and/or Loss Prevention, that the orders he or she had placed had been reported to DEA as a "suspicious order," as well as any and all subsequent communications and/or interactions he or she had with the Walgreens corporate representatives concerning each order from Walgreens 03836 that Walgreens reported to DEA as suspicious.

### 26. Diversion Investigator Donna Richards

In addition to the testimony previously noticed in its earlier Prehearing Statements, the Government will introduce through DI Richards three spreadsheets that she created from the Walgreens dispensing log.  One of the spreadsheets will detail dispensings by store # 3099 pursuant to prescriptions issued by Dr. Lawrence Giventer.  The second spreadsheet will detail dispensing by # 3099 pursuant to prescriptions issued by Dr. Giventer and two other practitioners located at the same address as Dr. Giventer in Bonita Springs, Florida, namely, Drs. Connie Lee and Anthony Posca.  The Government also will introduce through DI Richards over 200 hundred prescriptions issued by Dr. Giventer that when filled by #3099 bore a sticker affixed by the pharmacy stating next to Dr. Giventer's street address, "ophthalmologist!!!," as well as prescriptions issued by Drs. Lee and Posca for individuals residing in Spring Hill, Bokeelia, Labelle, and Nokomis, Florida, all of which were filled by store #3099 in Ft. Myers.  In addition, the Government will introduce through DI Richards several maps that she created identifying (1)

16

CONFIDENTIAL

the number and locations of Walgreens pharmacies between Naples, Florida and Ft. Myers, Florida, (2) distances travelled by #3099 customers who obtained prescriptions from Drs. Giventer, Lee, and Posca in Bonita Springs, Florida, (3) the distance from Drs. Giventer, Lee, and Posca to three Walgreens pharmacies in Bonita Springs, Florida, and (4) several other Walgreens pharmacies located between Bonita Springs and Fort Myers that these customers bypassed to fill their prescriptions at #3099.

The Government also will introduce through DI Richards a third spreadsheet containing dispensing by store #3099 pursuant to prescriptions issued by Dr. Konstantine Yankopolus, who is identified on Walgreens' dispensing log as "OB/GYN."  The Government will link this evidence to an email from Keri Kratofil dated October 13, 2011, and sent to the manager of #3099, which states in part, that they will be telling customers that"this is the last month we will be accepting pain prescription from Dr. Yankopolus . . . due to him prescribing outside of his scope of practice."  Moreover, the Government will introduce through DI Richards a copy of Dr. Yankopolus prescriptions filled by #3099 subsequent to the above-referenced email and into 2012.

Furthermore, the Government will introduce through DI Richards license verification printouts from the Florida Department of Health website for Dr. Giventer and store # 3099 pharmacists Megan Owens and Trudi-Ann Blackellar.

### 27. Prof. Paul Doering

In addition to the testimony previously noticed in its earlier Prehearing Statement, Prof. Doering will testify about the red flags of diversion present in prescriptions issued by Drs. Giventer, Lee, Posca, and Yankopolus, including the nature of Drs. Giventer's and Yankopolus' practices which were identified by #3099 employees, and the distances travelled by individuals

17

CONFIDENTIAL

WAGMDL00387950

who received prescriptions from Drs. Giventer, Lee, and Posca and filled at # 3099.  Prof.
Doering will opine that the red flags were not conclusively resolved by #3099 pharmacists before
the controlled substances were dispensed.

### 28.  Megan Owens, pharmacist, store #3099

In addition to the testimony previously noticed in its earlier Prehearing Statement, Ms.
Owens will be questioned about her authority to place orders for controlled substances with the
Jupiter distributor facility, any such controlled substances orders she placed, and those orders
that Walgreens subsequently reported to DEA as a "suspicious order."  Also, she will be
questioned regarding how and when she was informed by Walgreens corporate representatives,
including but not limited to pharmacy District Supervisors and representatives from the Jupiter
distribution facility and Loss Prevention, that the orders she had placed had been reported to
DEA as a "suspicious order," as well as any and all subsequent communications and/or
interactions she had with the Walgreens corporate representatives concerning each order from
store #3099 that Walgreens reported to DEA as suspicious.

### 29.  Trudi-Ann Blackellar, pharmacist, store #3099

In addition to the testimony previously noticed in its earlier Prehearing Statement, Ms.
Blackellar will be questioned about her authority to place orders for controlled substances with
the Jupiter distributor facility, any such controlled substances orders she placed, and those orders
that Walgreens subsequently reported to DEA as a "suspicious order."  Also, she will be
questioned regarding how and when she was informed by Walgreens corporate representatives,
including but not limited to pharmacy District Supervisors and representatives from the Jupiter
distribution facility and Loss Prevention, that the orders she had placed had been reported to
DEA as a "suspicious order," as well as any and all subsequent communications and/or

18

CONFIDENTIAL

WAGMDL00387951

interactions she had with the Walgreens corporate representatives concerning each order from store #3099 that Walgreens reported to DEA as suspicious.

30. **Marcie Ranick**
Loss Prevention Department
Walgreen Co.
1417 Lake Cook Rd.
Deerfield, IL 60015

The government supplements its previously noted witnesses with Marcie Ranick.  Ms. Ranick is identified in Respondent's Proposed Exhibit 259-B as a Manager, Pharmacy Loss Prevention, at Respondent's corporate headquarters in Deerfield, Illinois.  She is also the author of the letters identified in Respondent's Proposed Exhibit 259-E, transmitting a CD of suspicious control drug orders reports to DEA's Miami Field Division in Weston, Florida, from January 2010 through January 2012. Ms. Ranick will be asked to explain how these reports were created and distributed, what guidance she relied on for creating them, and what follow-up Respondent took in response to the orders it labeled as suspicious.  She will be asked to explain her understanding of Respondent's suspicious order policies and the basis for any changes made to those policies from 2010 to the present.

## PROPOSED DOCUMENTS

Filed separately with the Court is the Government's comprehensive Exhibit List that includes each of the exhibits the Government intends to introduce during its case-in-chief for all the consolidated matters.   In the Record copy of exhibits to be produced to the Court, the Government will substitute unredacted exhibits 60 and 79 for the previously redacted copies provided to the Court during the pendency of the disputed privilege issue.

## OTHER MATTERS

19

CONFIDENTIAL

WAGMDL00387952

1. The Government has secured locations for witnesses to testify via video-teleconference (VTC).  The VTC locations have been provided on the consolidated Witness List filed separately with the Court.

**BEST ESTIMATE AS TO TIME REQUIRED TO PRESENT CONSOLIDATED CASES**

The Government anticipates that it will need approximately ten (10) days to present its case-in-chief for all of the consolidated matters, exclusive of cross examination and rebuttal.

Respectfully submitted,

SCOTT LAWSON
JONATHAN P. NOVAK
Attorneys
Diversion & Regulatory Litigation
Office of Chief Counsel

Date:  April 5, 2013

20

CONFIDENTIAL

WAGMDL00387953

## CERTIFICATE OF SERVICE

I hereby certify that on the date signed below, I caused the original and seven copies of the foregoing **GOVERNMENT'S CONSOLIDATED SUPPLEMENTAL PRHEARING STATEMENT**, to be hand delivered and faxed to the DEA Office of the Administrative Law Judges, and I caused a copy of the same to be sent, *via e-mail* to counsel for Respondent at the following addresses:

> Phil Perry
> Allen M. Gardner
> Nathan H. Seltzer
> Latham & Watkins LLP
> 555 Eleventh Street, NW
> Suite 1000
> Washington, DC 20004-2232
> Fax: 202.637.2201
> Email: Phil.Perry@lw.com
>            Allen.Gardener@lw.com
>            Nathan.Seltzer@lw.com

_____
Date

_____
Signature

21

WAGMDL00387954

[Page intentionally left blank]

CONFIDENTIAL

WAGMDL00387955

UNITED STATES DEPARTMENT OF JUSTICE

DRUG ENFORCEMENT ADMINISTRATION

| | |
|---|---|
| In the Matter of | |
| **Walgreen Co. ;**<br>**(Jupiter Distribution Facility)** | **Docket No. 13-1** |
| **Walgreen Co.**<br>**d/b/a Walgreens #03629;**<br>**(Hudson Pharmacy)** | **Docket No. 13-9** |
| **Walgreen Co.**<br>**d/b/a Walgreens #04727;**<br>**(Fort Pierce Pharmacy)** | **Docket No. 13-10** |
| **Walgreen Co.**<br>**d/b/a Walgreens #06997;**<br>**(Oviedo Pharmacy)** | **Docket No. 13-11** |
| **Walgreen Co.**<br>**d/b/a Walgreens #03836;**<br>**(Port Richey Pharmacy)** | **Docket No. 13-16** |
| **Walgreen Co.**<br>**d/b/a Walgreens  #04391;**<br>**(Fort Pierce 2 Pharmacy)** | **Docket No. 13-18** |
| **Walgreen Co.**<br>**d/b/a Walgreens #03099;**<br>**(Fort Meyers Pharmacy)** | **Docket No. 13-20** |

**CHIEF ADMINISTRATIVE LAW JUDGE**
**JOHN J. MULROONEY, II**

**GOVERNMENT'S CONSOLIDATED PROPOSED EXHIBITS LIST**

CONFIDENTIAL

Pursuant to the March 26, 2013, Second Amended Supplemental Prehearing Ruling, the United States Department of Justice, Drug Enforcement Administration (DEA or Government), hereby submits its Consolidated Proposed Exhibit List.

## I. PROPOSED EXHIBITS

| Exhibit | Description | # Pages |
|---|---|---|
| 1. | DEA Certificate of Registration RW0277752 | 1 |
| 2. | September 27, 2006 Guidance Letter From DEA Deputy Assistant Administrator Joseph T. Rannazzisi to Walgreen Co. | 8 |
| 3. | December 27, 2007 Guidance Letter From DEA Deputy Assistant Administrator Joseph T. Rannazzisi to Walgreen Co. | 4 |
| 4. | April 2011 Memorandum of Agreement Between Walgreen Co. and DEA | 7 |
| 5. | July 1, 2011 Florida State Department of Health Declaration of Public Health Emergency Regarding Prescription Drug Abuse Epidemic | 5 |
| 6. | October 17, 2008 Healthcare Distribution Management Association Guidance with Attached Letter for DEA Chief Counsel Wendy Goggin | 17 |
| 7. | February 15, 2005 Walgreens Policy: "Handling Suspicious Drug Orders" | 2 |
| 8. | Notes on Walgreens Proposed Suspicious Order Policy | 2 |
| 9. | April 4, 2012 Walgreens Policy: "Handling Suspicious Orders and Loss of Controlled Drugs" | 1 |
| 10. | April 4, 2012 Walgreens Policy: "Handling Suspicious Drug Orders" | 1 |
| 11. | Walgreens "Controlled Substance Threshold" Project P09002, February 2009 | 18 |
| 12. | December 2011 Walgreens Jupiter Distribution Center C2 Suspicious Order Report | 1626 |
| 13. | December 2011 Walgreens Jupiter Distribution Center C3-5 Suspicious Order Report | 384 |
| 14. | Excerpt of December 2011 Walgreens Jupiter Distribution Center C2 Suspicious Order Report | 25 |

CONFIDENTIAL

WAGMDL00387957

| Exhibit | Description | # Pages |
|---|---|---|
| 15. | Excerpt of August 2011 Walgreens Jupiter Distribution Center C2 Suspicious Order Report | 46 |
| 16. | Excerpt of July 2011 Walgreens Jupiter Distribution Center C2 Suspicious Order Report | 46 |
| 17. | Excerpt of June 2011 Walgreens Jupiter Distribution Center C2 Suspicious Order Report | 46 |
| 18. | Excerpt of December 2010 Walgreens Jupiter Distribution Center C2 Suspicious Order Report | 36 |
| 19. | Excerpt of Suspicious Orders for Walgreens #3099 | 14 |
| 20. | Excerpt of Suspicious Orders for Walgreens #3629 | 64 |
| 21. | Excerpt of Suspicious Orders for Walgreens #3836 | 49 |
| 22. | Excerpt of Suspicious Orders for Walgreens #4391 | 34 |
| 23. | Excerpt of Suspicious Orders for Walgreens #4727 | 19 |
| 24. | Excerpt of Suspicious Orders for Walgreens #6997 | 15 |
| 25. | Walgreens Ft. Pierce Comparison of ARCOS Data and Chart | 1 |
| 26. | Walgreens Oviedo Comparison of ARCOS Data and Chart | 1 |
| 27. | Walgreens Port Richey and Hudson Comparison of ARCOS Data and Chart | 1 |
| 28. | Walgreens Ft. Myers Comparison of ARCOS Data and Chart | 1 |
| 29. | Top 100 Walgreens Purchasers of Oxycodone from Jupiter Distribution Center | 3 |
| 30. | Yearly Sales of Oxycodone to Select Walgreens Pharmacies from All Sources, 2009-2011 | 1 |
| 31. | Orders for 30mg Oxycodone (100 count bottles) in 2012 Exceeding Walgreens 2012 "Trigger Amount" for Reporting Suspicious Transactions, with Attached DEA Forms 222 | 23 |
| 32. | Walgreens Ft. Pierce (#4391) ARCOS Reporting Discrepancies | 28 |
| 33. | Walgreens Ft. Pierce (#4727) ARCOS Reporting Discrepancies | 21 |
| 34. | Walgreens Ft. Meyers (#3099) ARCOS Reporting Discrepancies | 25 |
| 35. | Walgreens Hudson (#3629) ARCOS Reporting Discrepancies | 41 |
| 36. | Walgreens Oviedo (#6997) ARCOS Reporting Discrepancies | 22 |
| 37. | Walgreens Port Richey (#3836) ARCOS Reporting Discrepancies | 30 |
| 38. | Suspicious Order Report Discrepancies | 39 |
| 39. | DEA Guidance "A Pharmacist's Guide to Prescription Fraud" | 2 |
| 40. | September 27, 2010 Ft. Pierce Police Incident Report for Richard Frederick Hanson | 5 |

CONFIDENTIAL

| Exhibit | Description | # Pages |
|---------|-------------|---------|
| 41. | Copies of Prescriptions Filled for Richard Frederick Hanson by Walgreens #4727 | 10 |
| 42. | November 4, 2011 Ft. Pierce Police Incident Report from Walgreens #4727 | 6 |
| 43. | Copies of Prescriptions Filled for Carlo Pastor by Walgreens #4727 | 18 |
| 44. | December 24, 2010 Police Incident Report Regarding James McCune and Accompanying Prescriptions | 18 |
| 45. | Dispensing Log of Prescriptions Filled by Walgreens #3629 for James McCune | 1 |
| 46. | Letters sent from Oviedo Police Department to Walgreens | 16 |
| 47. | Will Not Be Used | |
| 48. | Will Not Be Used | |
| 49. | Will Not Be Used | |
| 50. | Will Not Be Used | |
| 51. | March 19, 2012 Administrative Subpoena for Walgreens Due Diligence Files | 2 |
| 52. | May 4, 2012 Letters from Walgreens Legal Counsel to DPM Susan Langston Outlining Walgreens' Response to DEA Due Diligence Subpoena | 6 |
| 53. | June 8, 2012 Letter from Walgreens Legal Counsel concerning final production of documents in response to subpoena | 3 |
| 54. | Email: FW: The Two Minute Oxy-Refusal [WAG00000368] | 2 |
| 55. | Email: re_oxycodone 30 mg [WAG00000460] | 2 |
| 56. | Email: Re_Please advise on Pain Manag [WAG00000462] | 2 |
| 57. | Email: Standards of Practice for the Disp [WAG00000464] | 2 |
| 58. | Email: Re_Handling Pain Management RX [WAG00000660] | 2 |
| 59. | Email: 0969_001a [WAG00000742] | 22 |
| 60. | Email: Fw_DEA issue at 6094 with attachment [WAG00000813]**** | 8 |
| 61. | Email: _ Oxycodone sales with attachment  [WAG00000829] | 12 |
| 62. | Email: District Notes and Focus Points [WAG00000845] | 1 |
| 63. | Email: Margate FL Schedule II limitations (Svihra) [WAG00000846] | 4 |
| 64. | Email: Re: High Quantity Stores 682971 [WAG00000869] | 11 |
| 65. | Email: Ft Pierce.msg 2 [WAG0000889] | 13 |

CONFIDENTIAL

| Exhibit | Description | # Pages |
|---|---|---|
| 66. | Email: Rx Numbers – Oviedo FL (Svihra) [WAG00000902] | 2 |
| 67. | Email: Oviedo FL (Stahmann) [WAG00000904] | 3 |
| 68. | Email: Re Fw 682971 - OXYCODONE HCL 30MG TAB [WAG0000908] | 11 |
| 69. | Email: Fw_3099 Oxycodone Issue [WAG00000919] | 2 |
| 70. | Email: Re Store #3836 [WAG00000921] | 4 |
| 71. | Email: Re Fw INC000002834005 Store #3836 WIC#682971 order qty 148 [WAG00000925] | 4 |
| 72. | Email: 1412 - CII Dispensing Action Plan [WAG00000929] | 1 |
| 73. | Email: 3525 - CII Dispensing Action Plan [WAG00000930] | 1 |
| 74. | Email: Fw_Stores with many adjustments [WAG00000948] | 2 |
| 75. | Email: STORE 3099 – RxS Due Diligence [WAG00001042] | 3 |
| 76. | Email: Re Store #06997 [WAG00001057] | 2 |
| 77. | Email: Re Fw Oxycontin question [WAG00001064] | 8 |
| 78. | Email: Re Fw CII Order [WAG00001087] | 17 |
| 79. | Email: Florida Focus on Profit (Svihra) [WAG00001107]  **** | 7 |
| 80. | Email: Store 4706 [WAG00001125] | 7 |
| 81. | Email: Dist #227 Oxycodone Memo August 2011 [WAG00001212] | 2 |
| 82. | Email: Store 3099 [WAG00001256] | 1 |
| 83. | Email: Re_3099 [WAG00001260] | 2 |
| 84. | Email: 1009_001 [WAG00001326] | 40 |
| 85. | Email: REQUEST REVIEW Florida Pain Management Visits (Merten) [WAG00001638] | 1 |
| 86. | Email:  Actions Taken in District 21 about CII Dispensing WAG0001740 | 2 |
| 87. | Email:  New Florida Prescribing Law | 3 |
| 88. | Email:  Focus on Compliance Survey | 6 |
| 89. | Focus on Compliance Survey Results – Excel Spreadsheet | 48 |
| 90. | List of items produced in response to Administrative Subpoena | 13 |
| 91. | Facsimile of DEA Certificate of Registration BW4713992 | 1 |
| 92. | Certified registration history for Walgreens #03629 | 2 |
| 93. | Certified registration histories – Drs. Abaunza, Reppy, Wayne, Legowick, Wolff, McNichol and Glusman | 11 |
| 94. | ARCOS Report of Walgreens #03629's Oxycodone Purchases, | 3 |

CONFIDENTIAL

| Exhibit | Description | # Pages |
|---|---|---|
| | 2006-2012 | |
| 95. | Not Used | |
| 96. | Prescription Printout Chart: Ramiro Abaunza, M.D. | 31 |
| 97. | Prescription Printout Chart: Paul J. Glusman, D.O. | 4 |
| 98. | Prescription Printout Chart: John T. Legowick, M.D. | 1 |
| 99. | Prescription Printout Chart: TJ McNichol, M.D. | 13 |
| 100. | Prescription Printout Chart: Christopher Wayne, M.D. | 2 |
| 101. | Prescription Printout Chart: Randall Wolff, M.D. | 2 |
| 102. | Will Not Be Used | |
| 103. | Prescriptions filled for James McCune | 14 |
| 104. | Will Not Be Used | |
| 105. | Copy of prescription issued by Dr. Reppy on November 2, 2011 and filled by Walgreens #03629 | 1 |
| 106. | Copy of prescription issued by Dr. Pritchard on November 3, 2011 | 1 |
| 107. | Copy of dispensing label dated November 3, 2011 for 60 dosage units of oxycodone (listing Dr. Reppy as prescribing physician) | 1 |
| 108. | Dispensing log of Walgreens #03629's central filled prescriptions and copies of selected centrally filled prescriptions | 59 |
| 109. | Selected prescriptions from Walgreens #03629 | 52 |
| 110. | DEA Certificate of Registration BW6561270 | 1 |
| 111. | Walgreens Attendee List, DEA Meeting on August 19, 2011 | 2 |
| 112. | Chart of Walgreens #04727's Oxycodone Sales & Ranking in 2010 and 2011 provided to Walgreens officials at August 19, 2011 DEA meeting | 3 |
| 113. | ARCOS Report of Walgreens #04727's Oxycodone Purchases, 2006-2012 | 8 |
| 114. | Copy of the Administrative Inspection Warrant dated April 3, 2012 | 2 |
| 115. | DEA Receipt for Cash and Other Items dated April 4, 2012 identifying receipt of 4 boxes of Schedule II prescriptions | 1 |
| 116. | Not Used | |
| 117. | Not Used | |
| 118. | Not Used | |
| 119. | Florida Department of Health, Physician Profiles for physicians Alexandra Taylor M.D., Kenneth Pearlberg, M.D., and Ralph Miniet, M.D. | 3 |

CONFIDENTIAL

| Exhibit | Description | # Pages |
|---|---|---|
| 120. | Summary Chart of Dr. Pearlberg's prescriptions | 55 |
| 121. | Summary Chart of Dr. Miniet's prescriptions | 58 |
| 122. | Summary Chart of Dr. Taylor's prescriptions | 52 |
| 123. | Dispensing Log Summary: Dr. Schultz | 6 |
| 124. | Florida Department of Health Emergency Suspension Order, Barry Schultz M.D., April 13, 2011 | 65 |
| 125. | Copies of Prescriptions[1] re: Candy Drs., etc. | 22 |
| 126. | Copies of Prescriptions issued by Barry Schultz M.D. | 4 |
| 127. | Prescription copies for B.A., J.B.,E.C.,N.C., M.H., and R.O. dispensed on May 4, 2011 | 28 |
| 128. | Prescription copies for B.A., J.B.,E.C., N.C., and R.O. dispensed on June 1, 2011 | 20 |
| 129. | Prescription copies for B.A., E.C., N.C., and J.B., dispensed on June 28, 2011 | 16 |
| 130. | Prescription copies for B.A., E.C., N.C., M.H., and R.O. dispensed on July 26, 2011 | 20 |
| 131. | Prescription copies for B.A., J.B., M.H., E.C. and N.C. dispensed on September 21, 2011 | 14 |
| 132. | Prescription copies for S.A., C.A., C.B., J.P, and R.B dispensed on August 10, 2011 | 20 |
| 133. | Prescription copies for S.A., C.A., C.B J.P., S.M., and M.L. , dispensed on October 4, 2011 | 22 |
| 134. | St. Lucie Country Sherriff Ken Mascara Letter to Respondent, dated October 28, 2011 | 1 |
| 135. | Administrative Subpoena issued July 27, 2012 | 6 |
| 136. | Central Fill CII Dispensing Log | 196 |
| 137. | Notice of Inspection, October 30, 2012 | 1 |
| 138. | Central Fill: 20 Prescription Copies, RX View, CPO Interstore Transfer Claims | 60 |
| 139. | Will Not Be Used | |
| 140. | Will Not Be Used | |
| 141. | Will Not Be Used | |
| 142. | Will Not Be Used | |
| 143. | Email from Ed Lanzetti dated May 19, 2011 re: "Focus on Profit | 3 |

---

[1] All copies of prescriptions identified as Exhibits include copies of the prescription label affixed to the back of the prescription by Respondent on date of dispensing.

CONFIDENTIAL

| Exhibit | Description | # Pages |
|---|---|---|
| | for Florida Market" with Attachment | |
| 144. | Will Not Be Used | |
| 145. | Will Not Be Used | |
| 146. | Will Not Be Used | |
| 147. | Will Not Be Used | |
| 148. | Chart of High Volume Prescribers | 2 |
| 149. | Summary Chart: Average Daily Dispensing of Controlled Substances, Six Month Increments (January 2010 – April 4, 2012) | 1 |
| 150. | Summary Charts of Dr. Miniet's Filled Prescriptions on August 10, 2011 and October 4, 2011 | 6 |
| 151. | Summary Charts Dispensing to 1205 Seaway Dr. Customers on May 4, June 1, June 28, July 26 and Sept 21, 2011 | 4 |
| 152. | Summary Chart of Dispensing by P.A.'s Michael Carpino and Peter Vo | 3 |
| 153. | Florida Department of Health Licensure Verification, Michael Carpino and Peter Vo | 8 |
| 154. | DEA Certificate of Registration BW8487438 | 1 |
| 155. | Will Not Be Used | |
| 156. | Administrative Inspection Warrant for Walgreens #06997 | 3 |
| 157. | Certification of Registration History for DEA Certificate of Registration BW7987184 | 2 |
| 158. | Certification of Registration History for DEA Certificate of Registration BL6686541 | 2 |
| 159. | Not Used | |
| 160. | Excerpts of Dispensing Log: Wicks | 8 |
| 161. | Excerpts of Dispensing Log: Cocktail | 20 |
| 162. | Excerpts of Dispensing Log: Distances Traveled | 12 |
| 163. | Excerpts of Dispensing Log: Customers Coming From the Same Address | 10 |
| 164. | Copies of prescriptions sent from Walgreens #06997 to the Walgreens Central Fill facility | 135 |
| 165. | Will Not Be Used | |
| 166. | Chudnow Desktop Notes | 2 |
| 167. | Brekke Dispensing Logs and Prescriptions | 29 |
| 168. | Starling Dispensing Logs and Prescriptions | 16 |
| 169. | Oviedo Police Department Surveillance Statistics | 2 |

CONFIDENTIAL

| Exhibit | Description | # Pages |
|---------|-------------|---------|
| 170. | Oviedo Police Department Arrest Statistics | 1 |
| 171. | Curriculum Vitae of Mary E. Chmielewski, Ph.D. | 5 |
| 172. | Comparison of Total Dosages of Oxycodone by Year: Walgreens #03629 | 2 |
| 173. | Comparison of Total Dosages of Oxycodone by Year: Walgreens #04727 | 2 |
| 174. | Comparison of Total Dosages of Oxycodone by Year: Walgreens #06997 | 2 |
| 175. | Curriculum Vitae of Professor Paul Doering | 31 |
| 176. | RX Printout Excerpt - Reppy | 60 |
| 177. | McCune Forged RX | 1 |
| 178. | Pasco County Continuation Sheet and Attached Affidavit | 8 |
| 179. | Spreadsheet for RX Under DEA # BH7849928 | 2 |
| 180. | RX# 1905003 | 2 |
| 181. | RX# 1905005 | 2 |
| 182. | RX# 1904633 | 2 |
| 183. | RX# 1904644 | 2 |
| 184. | Dr. M. Romano RX# 1791873 | 2 |
| 185. | Dr. M. Romano RX# 1769890 | 2 |
| 186. | 06997 Cocktail Prescriptions | 46 |
| 187. | 06997 Long Distances Prescriptions | 29 |
| 188. | 06997 Wicks and Lynch Prescriptions | 17 |
| 189. | Dispensing History: Glusman – Cocktail Drugs | 2 |
| 190. | Dispensing History: Abaunza | 16 |
| 191. | Dispensing History: Bender | 36 |
| 192. | Dispensing History: Heromin | 13 |
| 193. | Dispensing History: McNichol | 14 |
| 194. | Dispensing History: Strobee | 20 |
| 195. | Dispensing History: Wayne | 2 |
| 196. | Dispensing History: Wolff | 1 |
| 197. | Dispensing History: Reppy | 47 |
| 198. | Distance-Travel Time Chart | 1 |
| 199. | Heromin RX# 1841312-03629 to RX# 1860313-03629 | 14 |
| 200. | Norris RXs | 6 |

CONFIDENTIAL

| Exhibit | Description | # Pages |
|---|---|---|
| 201. | Reppy: Internet MD RX# 1859227-03629 | 2 |
| 202. | Reppy: Pill Mill RX# 1857824-03629 to RX# 1857810-03629 | 10 |
| 203. | Romano Certification | 2 |
| 204. | RX Printout excerpt – Bender | 82 |
| 205. | RX Printout excerpt – Heromin | 20 |
| 206. | RX Printout excerpt – Strobee | 102 |
| 207. | Andrea Cohen Department of Health License Verification | 1 |
| 208. | Copy of DEA Registration AD9312353 | 1 |
| 209. | Copy of DEA Registration AF1972086 | 1 |
| 210. | Dispensing Log  Excerpt,  Ex 125 Rx | 3 |
| 211. | Vo and Carpino oxycodone prescriptions | 4 |
| 212. | DEA Certificate of Registration BW5872494 | 1 |
| 213. | ARCOS Report of Walgreens 04391 Oxycodone purchases, 2006-2012 | 5 |
| 214. | Not Used | |
| 215. | Prescriptions with Label Commentary | 33 |
| 216. | Summary Spreadsheet of Dispensing, Customer A.R | 6 |
| 217. | Prescriptions for Customer A.R. | 20 |
| 218. | Prescription and attached PDPM report for Customer A.R. dated March 22, 2012 | 3 |
| 219. | Summary Spreadsheet of Dispensing, Customer E.O. | 3 |
| 220. | Customer E.O. Travel Distance Map | 3 |
| 221. | Prescriptions for Customer E.O. | 12 |
| 222. | Summary Spreadsheet of Dispensing, Customer A.W. | 6 |
| 223. | Customer A.W. Travel Distance Map | 5 |
| 224. | Prescriptions for Customer, A.W. | 3 |
| 225. | Summary Spreadsheet of Dispensing, Dr. Dustin Lee | 3 |
| 226. | Summary Spreadsheet of Dispensing, Dr. Armando Falcon | 9 |
| 227. | Summary Spreadsheet of Dispensing, Dr. Ronald Thompson | 24 |
| 228. | Prescriptions Issued by Dr. Thompson, filled December 2011 and January 2012 | 31 |
| 229. | Summary Spreadsheet of Dispensing, Dr. Ralph Miniet | 93 |
| 230. | Summary Spreadsheet of Dispensing, October 14, 2011, Dr. | 2 |

CONFIDENTIAL

WAGMDL00387965

| Exhibit | Description | # Pages |
|---|---|---|
| | Miniet | |
| 231. | Prescriptions filled on October 14, 2011, Dr. Miniet | 13 |
| 232. | Customer L.S. Travel Distance Map | 3 |
| 233. | Central Fill Dispensing Log for Walgreens 04391 | 312 |
| 234. | Notice of Inspection, October 30, 2012 | 1 |
| 235. | Central Fill Prescriptions, RX View and CPO Interstore Transfer Claims | 126 |
| 236. | Florida Department of Health, Pharmacist License Verification, Lloyd Wright | 1 |
| 237. | Florida Department of Health, Pharmacist License Verification, Gladys Murrow | 1 |
| 238. | Not Used | |
| 239. | Walgreens pharmacies located in Port St. Lucie, Florida | 3 |
| 240. | Copy of Walgreens #03099's DEA Certificate of Registration | 1 |
| 241. | Administrative Inspection Warrant for Walgreens #03099 dated April 3, 2012 | 2 |
| 242. | Excerpts of Dispensing Log and Prescriptions for J.V.L. and L.V.L. dispensed by Walgreens #03099 pharmacists | 49 |
| 243. | Excerpts of Dispensing Log and Prescriptions for G.G., R.T. and T.T. dispensed by Walgreens #03099 pharmacists | 32 |
| 244. | Excerpts of Dispensing Log and Prescriptions for C.A. dispensed by Walgreens #03099 pharmacists | 30 |
| 245. | Excerpts of Dispensing Log and Prescriptions for M.S. dispensed by Walgreens #03099 pharmacists | 22 |
| 246. | Excerpts of Dispensing Log and Prescriptions for K.W. dispensed by Walgreens #03099 pharmacists | 9 |
| 247. | Excerpts of Dispensing Log and Prescriptions for Y.H., V.H. and D.H. dispensed by Walgreens #03099 pharmacists | 49 |
| 248. | Excerpts of Dispensing Log and Prescriptions for P.C. and M.C. dispensed by Walgreens #03099 pharmacists | 34 |
| 249. | Excerpts of Dispensing Log and Prescriptions for T.T. and T.T. dispensed by Walgreens #03099 pharmacists | 43 |
| 250. | Excerpts of Dispensing Log and Prescriptions for C.A., H.A. and T.W. dispensed by Walgreens #03099 pharmacists | 54 |
| 251. | Excerpts of Dispensing Log for Prescriptions issued by Emiliya Hill, M.D., and dispensed by Walgreens #03099 pharmacists | 102 |
| 252. | Bryon Wheeldon email chain dated 03/28/2011 re: "Fw: STORE | 4 |

CONFIDENTIAL

WAGMDL00387966

| Exhibit | Description | # Pages |
|---|---|---|
| | 3099" [WAGS00001034-37] | |
| 253. | "Store Manager 03099" email to Keri Kratofil dated 10/13/2011 [WAG00000467] | 1 |
| 254. | Emails from Matt McLaughlin dated 11/18/2011 and 11/21/2011 [WAG00000414-16] | 3 |
| 255. | Notice of Inspection for Walgreens #03099 dated October 30, 2012 | 1 |
| 256. | Copies of documentation and prescriptions with central fill and other violations from DEA's October 30, 2012, inspection of Walgreens #03099 | 241 |
| 257. | Police Report from 9/27/10 regarding trespass warning to Walgreens customer M.L. and Excerpts of Dispensing Log and Prescriptions for M.L. dispensed by Walgreens #03099 pharmacists | 15 |
| 258. | Police Report from 9/28/10 regarding drug deal by Walgreens customer C.M. and Excerpts of Dispensing Log and Prescriptions for C.M. dispensed by Walgreens #03099 pharmacists | 9 |
| 259. | DEA Certificate of Registration AW8830247 | 1 |
| 260. | Prescriptions issued by Ramiro Abaunza, M.D. (A-G) | 150 |
| 261. | Prescriptions issued by Ramiro Abaunza, M.D. (H-M) | 137 |
| 262. | Prescriptions issued by Ramiro Abaunza, M.D. (N-W) | 138 |
| 263. | 03836 Database printout showing prescription history of:  J.C., M.S., J.M., H.R., H.N., V.J., A.B., J.M.-1, J.B., M.J., A.J., A.F., D.D., D.S, M.B., C.B., Z.S., C.J., C.C., S.C, J.E., J.M.-2, C.T., R.C., C.G., H.P., T.M., A.F., A.J., L.J., C.S., and P.J.  This includes (1) history for C.C. and S.C. on May 7, 2011 and (2) history for L.J. and P.J. on June 21, 2011.b | 2 |
| 264. | Map and mileage information re: Pensacola to Miami to Port Richey to Pensacola | 3 |
| 265. | Map and mileage information re: Pensacola address of C.C. and S.C. to Miami to Port Richey to Pensacola address of C.C. and S.C. | 3 |
| 266. | Map and mileage information re: Pensacola address of L.J. and P.J. to Miami to Port Richey to Pensacola address of L.J. and P.J. | 3 |
| 267. | 03836 Database printout showing prescription history for J.A. and R.E. on April 29, 2011, and May 27, 2011 | 1 |
| 268. | Map and mileage information re: Frankfort, Kentucky to Miami to Port Richey to Frankfort, Kentucky | 4 |

CONFIDENTIAL

| Exhibit | Description | # Pages |
|---|---|---|
| 269. | 03836 Database printout showing prescription history for (1) S.M. on April 9, 2011, and May 13, 2011; (2) J.M. on April 12, 2011; (3) F.M. and A.R. on April 20, 2011; (4) Z.F. on April 23, 2011: (5) T.H. on April 30, 2011; (6) M.M. on May 2, 2011; (7) J.G. on April 12, 2011, and May 9, 2011; (8) B.S. on May 3, 2011, and May 26, 2011; (9) K.I. and M.L on April 13, 2011,and May 11, 2011; (10) M.G. on May 4, 2011; (11) C.H. on May 9, 2011; (12) M.K. on May 26, 2011; (13) M.L-1. and C.P. on April 15-16, 2011: (14) G.R. on April 23, 2011; (15) J.M.-1 on April 25, 2011; (15) L.S. and J.S. on April 30, 2011, and May 4, 2011; (16) R.D. on May 4, 2011; | 1 |
| 270. | Map and mileage information re: Decatur, Tennessee to Miami to Port Richey to Decatur, Tennessee (SM, JM, FM, AR, ZF, TH, MM) | 3 |
| 271. | Map and mileage information re: Riceville, Tennessee to Miami to Port Richey to Riceville, Tennessee (JG, BS) | 3 |
| 272. | Map and mileage information re: Athens, Tennessee to Miami to Port Richey to Athens, Tennessee (KI, ML, MG, CH, MK) | 3 |
| 273. | Map and mileage information re: Etowah, Tennessee to Miami to Port Richey to Etowah, Tennessee (ML-1, CP) | 3 |
| 274. | Map and mileage information re: Spring City, Tennessee to Miami to Port Richey to Spring City, Tennessee (GR) | 3 |
| 275. | Map and mileage information re: Elora, Tennessee to Miami to Port Richey to Elora, Tennessee (J.M.-1) | 4 |
| 276. | Map and mileage information re: Sweetwater, Tennessee to Miami to Port Richey to Sweetwater, Tennessee (LS, JS) | 3 |
| 277. | Map and mileage information re: Cleveland, Tennessee to Miami to Port Richey to Cleveland, Tennessee (RD) | 3 |
| 278. | 03836 Database printout showing prescription history for (1) R.M. for April 26, 2011, and May 19, 2011; and (2) C.G. and J.M. on April 30, 2011, and May 3, 2011 | 1 |
| 279. | Map and mileage information re: Cedartown, Georgia to Miami to Port Richey to Cedartown, Georgia (RM) | 3 |
| 280. | Map and mileage information re: Lilburn, Georgia to Miami to Port Richey to Lilburn, Georgia (CG, JM) | 3 |
| 281. | 03836 Database printout showing prescription history 03836 customers residing in Ohio, including (1) C.M. and K.S. on May 2, 2011; and (2) A.N. and D.N. on May 3, 2011 | 3 |
| 282. | Map and mileage information re: Columbus, Ohio to Miami to Port Richey to Columbus, Ohio (CM, KS) | 3 |

CONFIDENTIAL

| Exhibit | Description | # Pages |
|---|---|---|
| 283. | Map and mileage information re: Hamersville, Ohio to Miami to Port Richey to Hamersville, Ohio (AN, DN) | 4 |
| 284. | 03836 Database printout showing prescription history for D.E. on April 19, 2011, and April 26, 2011 | 1 |
| 285. | Map and mileage information re: Dothan, Alabama to Miami to Port Richey to Dothan, Alabama | 3 |
| 286. | Prescriptions of Dr. Kessler A-L | 175 |
| 287. | Prescriptions of Dr. Kessler M-P | 160 |
| 288. | Prescriptions of Dr. Kessler Q-Z | 69 |
| 289. | 03836 Database printout showing prescription history for L.J., C.J., J.W., C.S., D.S., J.I., and C.W. for April 21, 2011, and April 23, 2011 | 1 |
| 290. | Map and mileage information re: Frankfort, Kentucky to Plantation, Florida, to Port Richey to Frankfort, Kentucky (L.J., C.J., J.W., and D.S.) | 12 |
| 291. | Map and mileage information re: Stamping Ground, Kentucky to Plantation, Florida, to Port Richey to Stamping Ground Kentucky (C.S.) | 4 |
| 292. | Map and mileage information re: London, Kentucky to North Lauderdale, Florida, to Port Richey to London, Kentucky (J.I.) | 4 |
| 293. | Map and mileage information re: East Bernstadt, Kentucky to North Lauderdale, Florida, to Port Richey to East Bernstadt, Kentucky (C.W.) | 4 |
| 294. | 03836 Database printout showing prescription history for M.C., C.D., K.J., and M.J. for April 14, 2011 | 1 |
| 295. | Map and mileage information re: Kissimmee, Florida to  North Lauderdale, Florida, to Port Richey to Kissimmee, Florida | 3 |
| 296. | 03836 Database printout showing prescription history for P.W., T.S., J.N., and L.B. on April 28, 2011, and May 5-6, 2011 | 1 |
| 297. | Map and mileage information re: Columbus, Ohio, to North Lauderdale, Florida, to Port Richey to Columbus, Ohio (P.W.) | 4 |
| 298. | 03836 Database printout showing prescription history for B.M., J.W., B.T., J.G., D.S., and C.S. on April 12,18, 21, 23, and 26-27 of 2011, and May 11, 18, and 25 of 2011 | 1 |
| 299. | Map and mileage information re: Tampa, Florida, to Plantation, Florida, to Port Richey to Tampa, Florida (B.M., J.W., B.T., D.S., and C.S.) | 3 |
| 300. | Map and mileage information re: Tampa, Florida, to North Lauderdale, Florida, to Port Richey, to Tampa, Florida (J.G.) | 3 |

CONFIDENTIAL

| Exhibit | Description | # Pages |
|---|---|---|
| 301. | 03836 Database printout showing prescription history for C.S., C.S.-1, H.J., T.K., C.P., K.B. and D.M.  on May 12, 2011 | 1 |
| 302. | Map and mileage information re: Glasgow, Kentucky to Plantation, Florida, to Port Richey to Glasgow, Kentucky (C.S.-1) | 5 |
| 303. | Map and mileage information re: Owenton, Kentucky to Plantation, Florida, to Port Richey to Owenton, Kentucky (H.J.) | 4 |
| 304. | Map and mileage information re: Pensacola, Florida, to Plantation, Florida, to Port Richey to Pensacola, Florida (K.B. and D.M.) | 6 |
| 305. | 03836 Database printout showing prescription history of Kentucky residents receiving prescriptions from Dr. Kessler filling prescriptions on May 12, 2011 | 1 |
| 306. | 03836 Database printout showing prescription history for individuals obtaining prescriptions from Dr. Kessler between April 9, 2011, and May 18, 2011 | 3 |
| 307. | Chart showing location of persons obtaining prescriptions from Dr. Kessler | 2 |
| 308. | Prescriptions of Dr. Heromin | 69 |
| 309. | 03836 Database printout showing prescription history for individuals obtaining prescriptions from Dr. Heromin between April 9, 2011, and September 18, 2011. | 1 |
| 310. | Map and mileage information re: Pensacola, Florida to Doral, Florida, to Port Richey to Pensacola, Florida (Dr. Heromin) | 3 |
| 311. | Map and mileage information re: Pensacola, Florida to Miami, Florida, to Port Richey to Pensacola, Florida (Dr. Heromin) | 3 |
| 312. | Map and mileage information re: Wetumpka, Alabama to Doral, Florida, to Port Richey to Doral, Alabama | 5 |
| 313. | Map and mileage information re: Wetumpka, Alabama to Miami, Florida, to Port Richey to Wetumpka, Alabama | 5 |
| 314. | Prescriptions for K.P. and E.P. | 11 |
| 315. | 03836 Database printout showing prescription history for K.P. and E.P. | 1 |
| 316. | Map and mileage information re: Dothan, Alabama to New Port Richey, Florida, to Port Richey to Dothan, Alabama | 3 |
| 317. | 03836 Database printout showing prescription history for residents of Pensacola, Florida, who received controlled substances from April 9, 2011, through July 19, 2011 | 2 |
| 318. | Map and mileage information re: Pensacola, Florida, to Miami, Florida, to Port Richey to Pensacola, Florida (Dr. Abaunza) | 3 |

CONFIDENTIAL

WAGMDL00387970

| Exhibit | Description | # Pages |
|---|---|---|
| 319. | Map and mileage information re: Pensacola, Florida, to Plantation, Florida, to Port Richey to Pensacola, Florida (Dr. Kessler) | 3 |
| 320. | Map and mileage information re: Pensacola, Florida, to North Lauderdale, Florida, to Port Richey to Pensacola, Florida (Dr. Vitalis) | 3 |
| 321. | 03836 Database printout showing prescription history for residents of Tennessee who received controlled substances from April 9, 2011, through February 28, 2012 | 2 |
| 322. | 03836 Database printout showing prescription history for residents of Kentucky who received controlled substances from April 9, 2011, through January 28, 2012 | 2 |
| 323. | Prescriptions for W.W. and C.W. | 8 |
| 324. | 03836 Database printout showing prescription history for W.W. and C.W. | 1 |
| 325. | Map and mileage information re: Adams, Kentucky, to Odessa, Florida, to Port Richey to Adams, Kentucky (W.W.) | 4 |
| 326. | Prescriptions issued by Dr. Vitalis | 116 |
| 327. | Mileage chart (03836 customers) | 1 |
| 328. | Chart showing Walgreens stores in selected counties | 1 |
| 329. | Prescriptions Showing Central Fill and Other Violations | 89 |
| 330. | Prescription History Prior to April 10, 2011: Dr. Abaunza | 2 |
| 331. | Prescription History Prior to April 10, 2011: Dr. Heromin | 5 |
| 332. | Prescription History Prior to April 10, 2011: Dr. Kessler | 2 |
| 333. | Prescription History Prior to April 10, 2011: Dr. Vitalis | 1 |
| 334. | Florida Department of Health Physician Profile: Ronald H. Thompson, M.D. | 4 |
| 335. | Summary Spreadsheet of Dispensing: Customer L.S. | 4 |
| 336. | Summary Spreadsheet of Dispensing: Customer R.B. | 2 |
| 337. | Florida Department of Health Pharmacist License Verification: Marc Ira Cohen | 2 |
| 338. | Prescription/dispensing label (Dr. Abaunza) filled on 4-15-11 | 16 |
| 339. | Prescription/dispensing label (Dr. Abaunza) filled on 4-19-11 | 10 |
| 340. | Prescription/dispensing label (Dr. Abaunza) filled on 4-25-11 | 8 |
| 341. | Prescription/dispensing label (Dr. Abaunza) filled on 5-12-11 and 5-13-11 | 18 |
| 342. | Prescription/dispensing label (Dr. Bender) for patient Marty Carmack | 10 |

CONFIDENTIAL

WAGMDL00387971

| Exhibit | Description | # Pages |
|---|---|---|
| 343. | Prescription/dispensing label (Dr. Heromin) filled between April and June 2011 | 8 |
| 344. | Prescription/dispensing label (Dr. McNichol) filled on 8-10-11 for patient Melissa Quincey | 2 |
| 345. | Prescription/dispensing label (Dr. Reppy) filled April and July, 2011 | 4 |
| 346. | Google Maps – Travel Distances | 51 |
| 347. | Dispensing excerpt (revised) – James McCune | 1 |
| 348. | Printouts for Pharmacists Ventouris, Benali, and Levi | 13 |
| 349. | Excerpt of Spreadsheet: Dr. Lawrence Giventer | 5 |
| 350. | Excerpt of Spreadsheet: Southwest Florida Medical Solutions practitioners | 52 |
| 351. | Prescriptions issued by Dr. Lawrence Giventer | 298 |
| 352. | Florida DOH License Verification and Physician Profile for Dr. Lawrence Giventer | 7 |
| 353. | Map of Walgreens pharmacies between Naples, Florida and Ft. Myers, Florida | 5 |
| 354. | Maps of distances traveled by 3099 customers | 22 |
| 355. | Florida DOH License Verification for Pharmacist Megan Owens | 1 |
| 356. | Florida DOH License Verification for Pharmacist Trudi-Ann Blackellar | 1 |
| 357. | Maps showing distances from Southwest Florida Medical Solutions to Walgreens pharmacies | 6 |
| 358. | Prescription Issued by Dr. Yankopolus | 12 |
| 359. | Map showing distance from #3099 to Southwest Florida Medical Solutions | 2 |
| 360. | Excerpt of Spreadsheet for Dr. Yankopolus | 15 |
| 361. | Prescriptions Filled For Labelle, Nokomis, St. James City, Spring Hill, and Bokeelia Florida Customers | 32 |

CONFIDENTIAL

Respectfully submitted,

SCOTT LAWSON
Attorney
Diversion & Regulatory Litigation
Office of Chief Counsel
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152

Dated: April 5, 2013

CONFIDENTIAL

WAGMDL00387973

## CERTIFICATE OF SERVICE

I hereby certify that on the date signed below, I caused the original and two copies of the foregoing **GOVERNMENT'S CONSOLIDATED PROPOSED EXHIBITS LIST** to be hand delivered and faxed to the DEA Office of the Administrative Law Judges, and I caused a copy of the same to be sent, *via e-mail* and first class mail to counsel for Respondent at the following addresses:

> Phil Perry
> Allen M. Gardner
> Nathan H. Seltzer
> Latham & Watkins LLP
> 555 Eleventh Street, NW
> Suite 1000
> Washington, DC 20004-2232
> Fax: 202.637.2201
> Email: Phil.Perry@lw.com
>       Allen.Gardener@lw.com
>       Nathan.Seltzer@lw.com

5 Apr 13
Date

Signature

CONFIDENTIAL