PSJ3

Exhibit 352

| | |
|---|---|
| **From:** | Gray, John <jgray@hdmanet.org> |
| **Sent:** | Monday, February 27, 2012 3:42 PM |
| **To:** | 'David Durkin' |
| **Subject:** | RE: Cardinal's Counsel's Comments on Amicus Brief |

> Redacted

---

**From:** David Durkin [mailto:ddurkin@ofwlaw.com]
**Sent:** Monday, February 27, 2012 10:18 AM
**To:** Kelly, Patrick; Gray, John
**Cc:** Richard Frank
**Subject:** Cardinal's Counsel's Comments on Amicus Brief
**Importance:** High

John & Patrick,

> Redacted

David L. Durkin
OFW Law
Olsson Frank Weeda Terman Matz, PC
The Watergate
600 New Hampshire Avenue, N.W.
Suite 500
Washington, D.C.  20037
202/789-1212 (main)
202/518-6313 (direct)
202/234-3550 (telecopy)
ddurkin@ofwlaw.com
http://www.ofwlaw.com

---

**From:** Douglas B. Farquhar [mailto:DFarquhar@hpm.com]
**Sent:** Friday, February 24, 2012 1:42 PM
**To:** David Durkin
**Cc:** D. Linden Barber (linden.barber@quarles.com); Delia A. Stubbs
**Subject:** Amicus brief

1

CONFIDENTIAL                                                                                                                                   HDA_MDL_000215970

David,

Linden Barber and I have reviewed the amicus brief and think it is really quite good. Cardinal Health does, in fact, authorize you to represent that we consent to your motion for leave to file. We make the following suggestions:

On page 8, we are concerned about the language where you characterize "DEA's view" as being that "the sheer volume of product reported to DEA under ARCOS should be indicative of diversion" and "The size of an order alone, whether or not it deviates from a normal pattern is enough to trigger the registrant's responsibility to report the order as suspicious." While size of an order alone can require additional inquiry, these kind of statements could play into DEA's hand. In reality, DEA has said that a suspicious order can be filled if the distributor investigates and determines that order is not likely to be diverted.

You later quote the *Gonzalez* language, which we think is quite helpful. But does it make sense to recharacterize DEA's earlier statements, saying something like "DEA pretends that the sheer volume . . . " or "DEA erroneously," and then juxtaposing the *Gonzalez* language right next to those erroneous statements?

Pp 8-9: "Moreover, the experience of many HDMA members is that even if they act to terminate accounts based upon suspicion, they apparently have guessed incorrectly because of the large number of terminated practitioners and pharmacies retain their DEA registration and state licenses."

However, we might clarify that distributors understand that possession of a DEA registration, although granted by DEA under the public interest standard, is not deemed by DEA to be a sufficient indicator that distributions to the customer are legitimate.

P. 11 - "However serious a problem that prescription drug abuse is, the control of it cannot rest alone on the wholesale distributor ~~alone~~ that has neither the ability nor opportunity to review the individual patient or the practitioner's and pharmacist's interaction with that patient."

Other points for your consideration:

I think there is a conflict between motion and brief. The Motion says that all HDMA members are DEA registrants. The brief says, I think, that "nearly all" HDMA members handle controlled substances.

Description of HDMA: I would add something about the percentage of prescription drugs that pass through the control of an HDMA member. My recollection is that it is well in excess of 90 percent.

Page 2: sentence that reads "The public health dangers associated with the diversion and abuse of controlled prescription drugs have been well-recognized over the years by Congress, the DEA, and public health authorities." I would add "HDMA," after "the DEA":

Page 9 – "because of the large number of terminated practitioners and pharmacies retain their DEA registration and state licenses" needs to have a "that" before "retain"

Page 9 – before the discussion of the pharmacist's corresponding responsibility (the brief does talk about the two learned intermediaries who handle controlled substances after they leave the

2

wholesaler's control), I would add the following sentence from Rannazzisi's testimony before Congress in 2010: "Only a DEA registered practitioner may make the determination if a controlled substance is medically necessary." March 24, 2010 testimony at 2.

Finally, John Gray reached out to Mike Kaufman at Cardinal Health, and the client has suggested that I speak directly with John Gray. Mindful of the fact that you represent HDMA, I should probably get your clearance before speaking to him. I have left him a message, but wanted to make sure you are okay with my talking to him directly.

Douglas B. Farquhar
Hyman, Phelps & McNamara, PC
700 13th Street, NW, Suite 1200
Washington, D.C. 20005
202-737-9624
(fax) 202-737-9329

> **From:** David Durkin [mailto:ddurkin@ofwlaw.com]
> **Sent:** Wednesday, February 22, 2012 1:40 PM
> **To:** Douglas B. Farquhar
> **Subject:** RE: Cardinal Health v. Holder Appearing Before Judge Walton
>
> Thank you very much for the transcripts. I agree with your view on Judge Walton's approach and have positioned our Motion for Leave accordingly.
>
>
> David L. Durkin
> OFW Law
> Olsson Frank Weeda Terman Matz, PC
> The Watergate
> 600 New Hampshire Avenue, N.W.
> Suite 500
> Washington, D.C.  20037
> 202/789-1212 (main)
> 202/518-6313 (direct)
> 202/234-3550 (telecopy)
> ddurkin@ofwlaw.com
> http://www.ofwlaw.com
>
>
>
> **From:** Douglas B. Farquhar [mailto:DFarquhar@hpm.com]
> **Sent:** Wednesday, February 22, 2012 1:38 PM
> **To:** David Durkin
> **Subject:** RE: Cardinal Health v. Holder Appearing Before Judge Walton
>
>
> Not really. I am sure you have read the orders, and if you haven't seen the transcripts of the hearings, I attach them. Judge Walton seems to be taking a course in which he is very tightly bound to the administrative record. Yet I think your amicus brief could be very helpful on the public interest and balance of hardships side, even though it would not be considered part of the administrative record.
>
> Douglas B. Farquhar
> Hyman, Phelps & McNamara, PC

3

CONFIDENTIAL
HDA_MDL_000215972

700 13th Street, NW, Suite 1200
Washington, D.C. 20005
202-737-9624
(fax) 202-737-9329

**From:** David Durkin [mailto:ddurkin@ofwlaw.com]
**Sent:** Wednesday, February 22, 2012 1:24 PM
**To:** Douglas B. Farquhar
**Subject:** Cardinal Health v. Holder Appearing Before Judge Walton

Doug,

Although we did not discuss it this morning, was there anything you wanted me to be aware of with regard to how Judge Walton is handling this matter?

David L. Durkin
OFW Law
Olsson Frank Weeda Terman Matz, PC
The Watergate
600 New Hampshire Avenue, N.W.
Suite 500
Washington, D.C. 20037
202/789-1212 (main)
202/518-6313 (direct)
202/234-3550 (telecopy)
ddurkin@ofwlaw.com
http://www.ofwlaw.com

****************************************************************
This e-mail is sent by a law firm and may contain information that is
privileged or confidential. If you are not the intended recipient, please
delete the e-mail and any attachments and notify us immediately.
****************************************************************
****************************************************************
This e-mail is sent by a law firm and may contain information that is
privileged or confidential. If you are not the intended recipient, please
delete the e-mail and any attachments and notify us immediately.
****************************************************************

4