PSJ3

Exhibit 487

# DECIPHERING THE COMPLIANCE PRESCRIPTION - Understanding RETAIL Pharmacy Compliance & Enforcement Risks

June 18, 2013
Eric Sitarchuk, Esq.
Howard J. Young, Esq.
Morgan, Lewis & Bockius LLP



1

# Today's Presentation

- ◉ Regulators' Expectations for Compliance Programs
- ◉ DOJ/OIG Focus on Management and Board
  - Criminal Prosecution:
    - ○ Company/Management
    - ○ Board and Compliance role to avoid prosecution
  - Exclusion from Federal Programs:
    - ○ Company/Management
  - Civil Liability
  - ◉ How to Deal with the Era of the Whistleblower
- ◉ Retail Pharmacy Compliance Risks
  - Anti-Kickback and False Claim
  - DEA/Drug Diversion
  - Other

Morgan Lewis
COUNSELORS AT LAW

2

# Regulators' Expectations for Compliance Programs

1. Policies and Procedures re: compliance expectations, program, and problems
2. Compliance Officer and Compliance Committee
3. Training and Education
4. Communication
5. Discipline
6. Auditing and Monitoring/Risk Area Identification
7. Reporting and Response
8. Non-Retaliation

Morgan Lewis
COUNSELORS AT LAW

3

# Regulators' Expectations –
# Well-Resourced and Proactive
# Compliance Programs

- ◉ Compliance resources should be commensurate with size/risk profile of company
- ◉ Be out in front of the risks:
  - Compliance work plans
  - Risk assessments
  - Monitor enforcement activity/OIG & Medicaid work plans
  - Compare best practices
- ◉ Proactive Auditing:
  - Test  and monitor risk areas
  - Audit programs
- ◉ Robust compliance program decreases risk/severity of civil/criminal enforcement:
  - Both for company and individuals
- ◉ Board committee reporting and oversight



4

# Regulators' Expectations – Management

- Establish compliance "tone from the top"

- Ingrain compliance into the "fabric" of the organization

- Set business goals that are achievable in a compliant manner

- Ensure that employees can report concerns free from fear of retaliation

- Provide sufficient resources to be both proactive and reactive

- Investigation followed by verified remediation

- Consistent and firm discipline



5

# Regulators' Expectations – Questions to Consider

⊙**Operational Questions:**
- Has the organization implemented policies and procedures that address compliance risk areas?
- Is management setting the appropriate tone?
- Is compliance embedded into operations?
- Is the importance of the Code of Conduct understood across the organization?
- Do employees feel free to raise compliance related concerns?
- Has management developed a system that establishes accountability for proper implementation of the compliance program?
- What is the scope and breadth of compliance related training?



# CRIMINAL PROSECUTIONS



7

# A Range of Risks
# Criminal Penalties - Federal

◉ **DOJ Targeting Management:**

- **Health Care Fraud (18 USC § 1347)**
  - ○ Up to 10 years imprisonment

- **False Statements (42 USC § 1320a-7b(a) / 18 U.S.C. § 1001)**
  - ○ § 1320a – Up to 5 years imprisonment
  - ○ § 1001 – Up to 5 years imprisonment

- **Anti-Kickback Act (42 USC § 1320a-7b(b))**
  - ○ Up to 5 years imprisonment

- **False Claims (18 USC § 287)**
  - ○ Up to 5 years imprisonment

◉ **Corporate Criminal Liability:**
  - Fines up to twice the gross gain or loss caused by offense

Morgan Lewis
COUNSELORS AT LAW

8

# A Range of Risks
# Criminal Penalties - State

⊡ **New York State Example (Aggressive AG and OMIG):**

■ **Health Care Fraud (PL § 177) -**
  □ Up to 8 1/3 to 25 years imprisment

■ **False Written Statements (PL § 175) -**
  □ Up to 1 1/3 to 4 years imprisment

■ **Insurance Fraud (PL § 176) - intentional filing of false insurance claims**
  □ Up to 8 1/3 to 25 years imprisment

■ **Grand Larceny (PL § 155) - intentional and fraudulent deprivation of property**
  □ Up to 8 1/3 to 25 years imprisment



9

# EXCLUSION FROM PARTICIPATION IN GOVERNMENT PROGRAMS

Morgan Lewis
COUNSELORS AT LAW

# A Range of Risks: Exclusion

▣ No payment will be made by health care program for items or services furnished or ordered by an excluded individual or entity

▣ Federal Exclusion (42 USC § 1320a-7):

- Grounds for exclusion include:

  □ Convictions related to heath care or controlled substances
  □ License revocation or suspension
  □ Claims for excessive charges/unnecessary services
  □ Fraud, kickbacks, other prohibited activities
  □ Entities controlled by a sanctioned individual
  □ HEAL loan default

- Federal exclusion = mandatory state exclusion

▣ State Exclusion (e.g. 18 NYCRR § 515.5)

▣ New Focus on Excluding Owners/Managers – not just pharmacists/techs

Morgan Lewis
COUNSELORS AT LAW

11

# CIVIL LIABILITY

Morgan Lewis
COUNSELORS AT LAW

12

# A Range of Risks: Civil Liability

- ☑ **Civil False Claims:**
  - FCA - originally signed into law by President Lincoln in 1863 to protect against fraud in government contracting during the Civil War
  - Covers knowing submission of false or fraudulent claims for payment to federal agencies, contractors or grantees
  - Numerous states also have False Claims Acts
  - Damages and $5,500 to $11,000 per claim penalties
- ☑ **Civil Monetary Penalties:**
  - For false claims/violations of AKS
  - For knowingly employing an excluded person
  - Varying penalties: $10,000 for false claim/$50,000 for each kickback violation



13

# Key Features of the False Claims Act

- ▣ Redresses fraud involving federal (state) government programs, including Part D
- ▣ Potential for enormous damages and penalties
- ▣ Duty to report and refund identified Medicare and Medicaid overpayments within 60 days; failure to do so may create "reverse false claim" liability

Morgan Lewis
COUNSELORS AT LAW

# Criminal/Civil Liability – Anti-Kickback Statute



It is illegal (a felony) to knowingly and willfully solicit, receive, offer, or pay anything of value to induce referrals of items or services payable by a Federal health care program (*e.g.*, Medicare, Medicaid)

# Dealing With Whistleblowers

- ▣ Understand and act on the unique risks posed by "whistleblower" complaints
  - ☐ How do mangers identify whistleblowers?
  - ☐ How protect confidential company information?
- ▣ Treat "whistleblower" complaints differently
  - ☐ Not as an HR problem, but as a legal problem
  - ☐ Use the privilege
- ▣ Conduct thorough and timely internal investigations
  - ☐ Be respectful of the "whistleblower"
    - ☐ Take and document corrective action
    - ☐ Thoroughly document all employment decisions
    - ☐ Be proactive with "whistleblower's" counsel



16

# ENFORCEMENT LANDSCAPE

Morgan Lewis
COUNSELORS AT LAW

# Enforcement Landscape

- ▣ FCA recoveries since 1986 are over $33 billion
  - ▪ Most from the healthcare industry
- ▣ For FY 2012, $4.959 billion was recovered, of which vast majority was from healthcare industry
  - ▪ 650 new qui tam cases filed in 2012 – a new record
- ▣ Nine and Ten Figure Settlements Not Uncommon
  - ▪ Huge amount of federal and state $$ in healthcare

Morgan Lewis
COUNSELORS AT LAW

18

# Examples of Recoveries in Health Care Fraud Cases

- GSK - $3 Billion
- Pfizer - $2.3 Billion
- Abbott Labs - $1.5 Billion
- Eli Lilly - $1.4 Billion
- Merck - $950 Million
- Amgen - $762 Million
- Serono - $704 Million
- Purdue-Pharma - $601 Million
- Allergen - $600 Million
- Bristol Meyers Squibb - $515 Million
- Senior Care Action Network - $324 Million
- Actavis - $203 Million
- Medco - $185 Million
- Caremark - $161 Million

Morgan Lewis
COUNSELORS AT LAW

# Pharmacy- Related False Claims Act Settlements

- 2002 - $5.8 Million (billing for services not provided)
- 2004 - $2.8 Million (billing for services not provided)
- 2004 - $7 Million (billing for services not provided)
- 2008 - $37 Million (unauthorized drug substitution)
- 2008 –$35 Million (unauthorized drug substitution)
- 2012 – $5.25 Million (false price marketing)
- 2012 – $7.9 Million (improper customer incentives)
- 2013 - $17.5 Million (overbilling Medicaid after first collecting from primary payer)
- 2011-13 – increasingly larger fines in DEA diversion matters



20

# RETAIL PHARMACY COMPLIANCE RISKS

Morgan Lewis
COUNSELORS AT LAW

# Compliance Risks

◉ Government Customers at the Pharmacy Counter:
  ○ Medicaid
  ○ Includes Medicaid HMOs
  ○ Medicare
  ○ Includes Part D Plan Sponsors; MA Plans; Part B Diabetic Supplies
  ○ TRICARE
  ○ FEHBP
  ○ Government Secondary Payors

◉ CS Security/Controls Against Diversion

◉ HIPAA Privacy

◉ Compounding/Repackaging

◉ Returns to Stock/Disposal of Returns

Morgan Lewis
COUNSELORS AT LAW

22

# Retail Pharmacy Compliance Risks – Some Examples

- ⦿ Accuracy in Billing
- ⦿ Obtaining and Maintaining Compliant Prescription Records
- ⦿ Customer Incentive Programs – Beneficiary Inducements
- ⦿ Patient Compliance Outreach Programs - Implications for AKS
- ⦿ Referral source relationships (e.g., LTC or first fill pharmacy   and nursing home/hospice)
- ⦿ Partial Fills/Will Call Delete
- ⦿ Impact of Discounting on Usual and Customary Pricing
- ⦿ Kickbacks for Drug Switching
- ⦿ REMs
- ⦿ Pseudoephedrine/Smurfing
- ⦿ Medication Disposal/Returns
- ⦿ DEA/Controlled Substances

Morgan Lewis
COUNSELORS AT LAW

23

# Retail Pharmacy Compliance Risks – Some Examples (cont.)

- ◉ Auto-Refill Programs and delivery
- ◉ Employment of Excluded Pharmacists/Techs
- ◉ Relationships with Distributors/Manufacturers
  - • purchase arrangements/discounts/rebates
  - • reverse purchases for data from retail pharmacies
- ◉ Compliance with Multitude of Potentially Applicable State Laws – insurance laws, pharmacy board regs, etc.

Morgan Lewis
COUNSELORS AT LAW

24

# DEA and Controlled Substances

▣ Know Your Customer/Physician

▣ Adequate Controls Against Diversion

▣ Medical Necessity

▣ Adequate and Accurate Record Keeping

▣ Manufacturers/Distributors

    □ Adequate controls against diversion

    □ Reporting suspicious orders

    □ Customer due diligence

Morgan Lewis
COUNSELORS AT LAW

25

# Retail Pharmacy Compliance
# Risks – NY OMIG Pharmacy Audit Experience

- ◉ **OMIG sought to recoup payments/threatened fraud actions for:**
  - Missing Prescriptions
  - Conflicts in records between Ordering Prescriber and Claim Prescriber
  - Prescriptions missing information such as signature, date, quantity
  - Prescriptions/Fiscal Orders refilled beyond 180 days of issuance
  - Billing for quantities in excess of prescribed quantity
  - Filling too far beyond date of issuance (for controlled and non-controlled substances)
  - Billing for product different than product ordered
  - Billing for different strength ordered
  - Prescriptions missing supervising MD information, when ordered by a Physician's Assistant
  - Prescriptions not written on an Official NYS Prescription Form

Morgan Lewis
COUNSELORS AT LAW

26

# Other Pharmacy Audit Activity

- ⦿ Diabetic supplies/strips and documentation
- ⦿ State Medicaid Programs spend a lot on Prescription Drugs and audit activity is increasing:
  - Medicaid requirements
  - drug utilization review (prospective and retrospective)
- ⦿ Part D versus hospice

# Retail Pharmacy Compliance
# Risks - Customer Incentive Programs

⦿ Customer Incentive Programs: giveaways, points, transfer offers, gift cards, co-pay waivers and other promotions

⦿ Implications for:

- Federal Anti-Kickback Statute and Beneficiary Inducement Law
- State Anti-Kickback Laws
  ○ Medicaid; State Health Plans; All Insurers/Payors

⦿ Considerations:

- Special Advisory Bulletin "Offering Gifts and Other Inducements to Beneficiaries" (Aug. 2002) ($10 Individually/$50 in aggregate annually)
- Affordable Care Act's CMP carve out for:
  ○ Coupons/rebates/other rewards from retailer
  ○ offered on equal terms to general public regardless of insurance
  ○ not tied to items/services reimbursed by Medicare/Medicaid

Morgan Lewis
COUNSELORS AT LAW

28

# Retail Pharmacy Compliance
# Risks - Customer Incentive Programs (cont.)

⊙ Need to Look at State Law:

- Examples of States with All Payors or Insurers Anti-kickback Laws: CA, Conn, Idaho, La, Mass, Mich, NV, N.J.

Morgan Lewis
COUNSELORS AT LAW

# Retail Pharmacy Compliance
# Risks – Arrangements with Referral Sources

⊙Retail medical clinics co-located:

- •Prescribing physicians and NPs

⊙Implications for:

- •Stark Anti-Physician Self-Referral Law
- • Anti-Kickback  Act
- • Civil Monetary Penalties
- • False Claims Act

⊙ Concurrent Exclusion Screening of Prescribers and Medicare Part D

Morgan Lewis
COUNSELORS AT LAW

30

# Retail Pharmacy Compliance Risks - Automatic Refill Programs

- ⊡ Such Programs Are Lawful When Properly Implemented
- ⊡ Customer notifications and consents
  - ☐ Obtained and adequately documented?
  - ☐ Medicare and auto-delivery programs
- ⊡ Consider Whether There Are Any Potential State Law Restrictions

Morgan Lewis
COUNSELORS AT LAW

31

# Retail Pharmacy Compliance Risks - Discount Programs Potentially Affecting U & C

- ⊡ **Requires Examination of Individual State Laws:**
  - ☐ States define U&C differently
- ⊡ **Recent Enforcement Action:**
  - ☐ False Claims Whistleblower case
  - ☐ Massachusetts U&C Municipality Workers
  - ☐ Compensation Settlements
  - ☐ Connecticut AG Actions

Morgan Lewis
COUNSELORS AT LAW

32

# HIPAA/HITECH

- ⦿ Robust systems required
- ⦿ Robust training
- ⦿ HHS OCR and penalties
  - ○ Pharmacies are by no means immune
  - ○ Almost every customer and payor transaction will contain PHI

Morgan Lewis
COUNSELORS AT LAW

33

esitarchuk@morganlewis.com
215 963 5840
hyoung@morganlewis.com
202 739 5461



Morgan Lewis
COUNSELORS AT LAW

34