# PSJ3 Exhibit 540

Message

| | |
|---|---|
| **From**: | Lyle, Don [/O=CAH/OU=CARDINAL HEALTH/CN=RECIPIENTS/CN=DON.LYLE] |
| **Sent**: | 3/28/2008 7:58:37 PM |
| **To**: | Lambo, Lou [Lou.Lambo@cardinalhealth.com]; Cameron, Todd [Todd.Cameron@cardinalhealth.com]; Burks, Law [Law.Burks@cardinalhealth.com]; Zimmermann, Halden [Halden.Zimmermann@cardinalhealth.com]; Cox, Lee [Lee.Cox@cardinalhealth.com]; Jackson, Brian L [Brian.L.Jackson@cardinalhealth.com]; Scaletta, Anthony [Anthony.Scaletta@cardinalhealth.com]; Mone, Michael [Michael.Mone@cardinalhealth.com] |
| **CC**: | Repasy, James [James.Repasy@cardinalhealth.com]; Yee, Ken [Ken.Yee@cardinalhealth.com]; Falardeau, Jeff [Jeff.Falardeau@cardinalhealth.com]; Lagrou, David [David.Lagrou@cardinalhealth.com] |
| **Subject**: | RE: Meeting Recap: 3/27 - 5/1 Threshold Changes for Large Chains and Managed Care |

All we have reviewed the PVA's for specific language in regards to notification. Most requirements for notification are specific to sections of the PVA i.e. "must notify customer 60 days in advance if changing returns good policy."  There is nothing that we could find that required certain number of day's notification as a general change to the PVA. There are two statements that are in the majority of the PVA's that could be brought up in regards to implementing the SOM.

1. No Modification or rescission of this Agreement shall be binding unless executed in writing by the parties.
2. Buyer and Cardinal Health shall comply with all federal, state laws, rules and regulations applicable to the storage, distribution purchase, sale and use of pharmaceutical products.

At this point I do know that we have communicated to Walgreen's and Kroger that there will be at least 30 day notice. We have communicated to Kerr and Winn Dixie there will be at least a 60 day notice.

Please let me know if you have any additional questions.

Thanks ………………… Don

Don Lyle
Vice President National Account Support
Cardinal Health Pharmaceutical Supply Chain
7000 Cardinal Place
Dublin, OH  43017
614-757-7782 Phone
614-757-8782 Fax
614-893-6234 Cell
don.lyle@cardinal.com

---

**From:** Lambo, Lou
**Sent:** Thursday, March 27, 2008 12:12 PM
**To:** Cameron, Todd; Lyle, Don; Burks, Law; Zimmermann, Halden; Cox, Lee; Jackson, Brian L; Scaletta, Anthony; Mone, Michael
**Cc:** Repasy, James; Yee, Ken; Falardeau, Jeff; Lagrou, David
**Subject:** Meeting Recap: 3/27 - 5/1 Threshold Changes for Large Chains and Managed Care

All,

I apologize to those of you who received the blank email that I inadvertently sent earlier. This is what I was planning to send. . . .

This meeting was scheduled by Dave Lagrou to update concerned parties on progress made since a prior meeting on this topic which was held on 3/20.  Dave asked me to conduct this meeting in his absence.

We discussed initial and ongoing communications with customers impacted by the planned changes.

The following points were raised and addressed by meeting participants:

1. Todd indicated that communications with customers regarding Suspicious Order Monitoring would vary by customer.  Specifics on this have not yet been determined and will be discussed in subsequent meetings.

2. Don indicated that the PVA we have with some customers mandates a 60 day advance notice of any changes to the service we provide. He observed that the 5/1 date planned for including chains in the monitoring process was less than 60 days away.
3. Todd offered to provide a list of chains where the 60 day notice is incorporated in their PVA.
4. Michael stated that decisions on which customers to monitor and when to begin monitoring would be determined by the Steering Committee. Others present mentioned that other individuals and teams may also participate in this process.

Meeting participants brought up the following points concerning the information needed from IT to accomplish this initiative:

1. Michael explained the method used to set up the initial threshold value that they will use for chain thresholds. He stated that they begin with Deloitte data and apply customer purchasing patterns to those numbers. He indicated that one month of sales data for all monitored items purchased by the customers would be required from Distrack to accomplish this.
2. Lee expressed concern that chain customer Wynn Dixie would reject Cardinal applying thresholds to purchases from their locations based on sales statistics from other businesses. Michael reviewed in detail that the threshold values QRA sets are personalized for each customer using their sales data.
3. Members of the group expressed concern that chains would have no tolerance for their orders being cut due to exceeding a threshold. Michael stated that he would initiate discussions with IT on creating a separate process or set of programs that handles chain locations differently than retail independents.
4. Don suggested that the use of "test runs" be considered to inform customers on how the SOM process would be employed for them.
5. Concern was expressed on how exceptional situations would be handled. Examples offered were new accounts and DEA number changes.

I informed the group that a subsequent meeting was scheduled for 3/31 with Todd, Michael and Dave.

If you have any questions concerning this message, please contact me.

**Lou Lambo**
Cardinal Health
Senior Business Analyst
Enterprise IT Solutions - Supply Chain
Office: 614-757-6705
lou.lambo@cardinalhealth.com