PSJ3

Exhibit 548



The purpose of the presentation is to provide the sales associate with a PowerPoint presentation to use in communications with their customers. This presentation reviews background on the regulatory requirements concerning controlled substances and Cardinal Health's position and program to support that requirement.

The notes should provide any additional information that may be helpful in discussions with your customer. The notes version should only be used by Cardinal Health employees and not distributed to any others.

If you have any feedback on the presentation or the notes, please forward to Mark Hartman. We appreciate any opportunity to improve this presentation.

This version was developed specifically for the NACDS meetings, Aug 2008.

CONFIDENTIAL     CAH_MDL2804_00825381



As an overview, this is a guiding statement about our industry's role in the effort towards "anti-diversion".

It is one that we, as an industry, need to take to heart and operationalize.

CONFIDENTIAL

CAH_MDL2804_00825382

## Why?

- Non-medical use of pharmaceutical products is now greater than the abuse of cocaine, hallucinogens or inhalants.

- Among adults 26 or older, 6.3 percent reported non-medical use of prescription medicines in 2005.

- In 2005, one of 20 high school seniors admit to abusing prescription pain killers such as hydrocodone and oxycodone.


CardinalHealth

To help level-set everyone, here are a few general statistics regarding the abuse of pharmaceutical products. And, the problem continues to grow. It touches all of us!

CONFIDENTIAL
CAH_MDL2804_00825383

# Supply Chain/Regulatory Involvement

- 2005 to 2006—the DEA began a series of informal discussions with the supply chain.
  - Message: anti-diversion is everyone's responsibility
  - Uptake of the message was not as rapid and robust as the Administration wanted
- 2006 to 2008—the DEA began a series of regulatory actions to promote change.
- Supply chain response has been a dramatic improvement in systems to identify, block and report suspicious orders of controlled substances.


CardinalHealth

---

The belief is that pharmaceuticals are "legitimate drugs" and perceived to be safer since they are prescribed (although, they are highly addictive)

More detail on regulatory action:
June 06—McKesson was issued a "show cause" by the DEA. There response was a legal one
April 07—ABC was issued a "show cause" and an "immediate suspension" in Lakewood, FL
November 07—CAH was issued a "show cause" and a "timed suspension—1 week notice for 3 Distribution Centers

Significant initial focus on internet pharmacies—no doctor, no prescription

## Impact to Cardinal Health

- Diversion is serious and affects *everyone* in the pharmaceutical industry.
- For Cardinal specifically—
  - DEA licenses were suspended at three Cardinal Health facilities. We self-imposed a restriction at a fourth facility relating to retail independent sales.
  - We are having regular communication with DEA. Both Cardinal Health and DEA need complete confidence the right controls are in place across the network before suspensions will be lifted.
  - Introduced Suspicious Order Monitoring program for retail independent customers with expansion to all classes of trade.
    - Electronic monitoring
    - Enhanced "Know Your Customer" education


CardinalHealth

The 3 Cardinal Health facilities affected in November 07 were Auburn, Lakeland, and Swedesboro. We voluntarily suspended controls to Retail Independents at the Houston Distribution Center. And we also suspended controlled substance sales from ParMed in February 08.

The requirement is to implement "Know Your Customer" and electronic monitoring on ALL classes of trade. The "Know Your Customer" requirement needs full cooperation/partnership with our customers. Remember, this is a requirement for all Distributors (and any DEA registrant).

CONFIDENTIAL
CAH_MDL2804_00825385

## DEA Regulations

- Registrant obligations
  - Section 1301.74 Code of Federal Regulations
    - Before distributing the registrant must make a good faith effort by contacting
      - DEA or state agency to determine that the customer is registered to possess controlled substances
    - The registrant must design and operate a system to disclose to the registrant suspicious orders of controlled substances.
    - The registrant shall inform the Field Division Office of the Administration in his area of suspicious orders *when discovered* by the registrant.
    - Suspicious orders include orders of
      - unusual size,
      - orders deviating substantially from a normal pattern,
      - and orders of unusual frequency


CardinalHealth

---

THIS IS THE LAW!!!

This is something that is not to be taken lightly. . .and in fact, has been receiving growing attention/scrutiny.

Suspicious orders need to be reported (every DC has a local DEA office)

Initially, DEA provided support for previous anti-diversion programs.  In December 07, the DEA issued a letter no longer supporting any previous systems.  There has been other proposals for anti-diversion approaches (i.e., HDMA proposal on best practices), but the DEA will not approve any single system.  As the law states, it is the sole responsibility of the DEA registrant to "design and operate" a system.  There can be many ways to do this, so the DEA is not going to endorse any system and still maintaining their administrative powers to cut when a registrant may not be meeting their responsibilities.

CONFIDENTIAL
CAH_MDL2804_00825386

## The Issues

- "Design and operate a system to disclose to the registrant suspicious orders of controlled substances."
  - The regulation clearly indicates that it is the sole responsibility of the registrant to design and operate such a system.
- The system must meet the criteria to identify, block and report suspicious orders.
- The registrant must work with and collaborate with customers to meet this obligation.
- Everyone will have one, it is a registrant responsibility.
- Components of a program include:
  - Know Your Customer
  - Electronic Monitoring


CardinalHealth

---

Any DEA registrant must design and operate a "suspicious orders" system

Any registrant must work with and collaborate with customers. Additionally, there has been DEA activity at the pharmacy/retail pharmacy level regarding the diversion of controlled substances.

Everyone will have a Suspicious Order Monitoring system to be compliant with the DEA. There are 2 major components—
"Know Your Customer" is to understand the customer's business model and history, and be able to develop a process to monitor for suspicious orders. Challenging in some channels due to the need for exchange of information and interfaces between Cardinal and the customer.
Electronic Monitoring is a systemic application to monitor, track, and identify any orders that are suspicious based on the descriptions provided by the DEA—unusual size, unusual pattern, unusual frequency

IN FACT, CUSTOMERS ARE STARTING TO APPROACH CARDINAL ABOUT IMPLEMENTING A SUSPICIOUS ORDER MONITORING PROGRAM TO ASSIST THEM IN THEIR EFFORTS (NOT TAKE OVER THE RESPONSILIBITY, BUT BE ANOTHER TOOL IN THEIR EFFORTS TO FIGHT ANTI-DIVERSION).

ADDITIONALLY, THERE ARE OTHER PHARMACEUTICALS (NOT CONTROLLED SUBSTANCES) THAT NEED TO BE MONITORED BASED ON STATE REQUIREMENTS. AND THERE IS DISCUSSION REGARDING OTHER PHARMACEUTICALS (i.e., LIFESTYLE DRUGS)

CONFIDENTIAL

## Know Your Customer

- **Questionnaire Key Information**
  - Ownership
    - Application to Board of Pharmacy
  - History of purchases and/or dispensing
    - 12 month history
  - Description of key prescribers in area
  - Compliance Representations & Warranties
- **Sales Representatives Responsibilities**
  - Understand diversion
  - Understand and use "red flag" identifiers
  - Routine onsite visits and CS sales data review


CardinalHealth

Critical information is dosage/usage data for the past 12 months

Important to include all other requested information—that helps establish a base of "OBJECTIVE EVIDENCE" that allows Cardinal to develop the appropriate thresholds. The more information, the more accurate the threshold and the more appropriate the process. And the more information we collect, the more we are able to support our sales to customers to any outside regulatory organization.

Know Your Customer (KYC) questionnaires are located on a website and accessible via the defined URL for the channel. IT IS EXTREMELY IMPORTANT THAT USAGE/DOSAGE INFORMATION AND ADDITIONAL "OBJECTIVE EVIDENCE" BE PROVIDED IN ADVANCE OF ROLL-OUT.  AND, CONTACT INFORMATION AND DESIRED PROCESS IS REQUIRED.

For Sales, it is critical to work with and follow-up with accounts to get the KYC questionnaire completed prior to start-up to have the most beneficial impact.  If not before, as soon as possible to help fine-tune thresholds.  If not, it will be required with the customer has it's first threshold event, and may add additional time to resolving the threshold event (waiting on customer information and reviewing the information)

There are other opportunities for Sales to monitor their customer base—the "highlight" report that looks at recent trends in purchasing by the customer; helpful "red flags"; recommendations for ordinary sales visits

CONFIDENTIAL

## Electronic Monitoring

- A tool to assist in evaluation
- Statistical formula(s) used to establish pharmacy thresholds
- Data mining for patterns and practices
- Continuous revision of parameters for each customer
  - Increase, decrease, or maintain thresholds
- Pharmacist conducts review and analysis



A "system" has been developed to support anti-diversion and the monitoring of orders

To feed the system with appropriate "thresholds", dosage/usage/purchasing information for the previous 12 months is used. Other objective evidence collected in the KYC questionnaire is used to provide additional insight in setting the thresholds.

As Cardinal is informed of changes in customer's business model (new contracts, new facility, closed facility, etc.) thresholds can be altered to better reflect the new model prior to threshold events.

If there is a threshold event, there is an investigation (collect information or, if necessary, site visit) to see if there is a reason for filling the blocked order and/or changing the thresholds (thresholds may not be changed even though an order is released).

## Establishing Thresholds

- Statistically validated (numerous methods).
- Grouped by active ingredient.
- Normalized customers into groups of similarly situated patterns & characteristics.
- Flexibility for customers to order within a range, and to permit growth of the pharmacy business with validation.
- Continually revised to meet current/changing patient care needs.
- Measure of documented patient care needs.


CardinalHealth

The historical information is most critical—dosage/usage is the BEST. If no information is provided, we will use Cardinal purchase data and provide tighter thresholds since we have limited usage information and/or objective information.

There are a few statistical analyses (from a basic historical analysis to more sophisticated models) that are completed to develop the "best" threshold for the customer. Those models are revisited as changes to a customer's business model happen and Cardinal is informed (the earlier, the better).

FOR CHAINS, THRESHOLDS ARE AS CUSTOMIZED AS POSSIBLE WITH THE DATA THAT IS AVAILABLE/PROVIDED.

CONFIDENTIAL



Analyze Historical Purchase Information – This process evaluates Cardinal Health historical controlled substance sales data per drug family, per month for Chain customers. The types of drugs purchased by each Chain, as well as additional background information such as whether or not the Chain has a Warehouse, are evaluated and incorporated into the adjustment of thresholds. Based on the background information evaluated, thresholds may be adjusted by DEA Schedule or Drug Family.

Evaluate Objective Evidence and Adjust Threshold Limits – This process evaluates the information provided by Chain customers included as part of the Know Your Customer (KYC) element. Each Chain is scored according to their Anti-Diversion program. Each score, or rating, has a corresponding % adjustment that all thresholds are increased by. For example, a Chain that is rated "Best in Class" would have all thresholds increased by X%.

Evaluate Exceptions and Make Adjustments to Threshold Limits – The adjusted baseline thresholds are then compared against the maximum amount the store purchased over the past 12 months, as well as the amount ordered during the pilot period. If the max month or July order accrual is equal to, or greater, than 75% of the threshold, then the store is considered an exception. A pharmacist on our team utilizes historical monthly purchase information, as well as dispense data (if provided), to evaluate each exception and make appropriate adjustments to the threshold limits.

CONFIDENTIAL
CAH_MDL2804_00825391

## What "threshold event" means.

- "Excess" order or intent to order
    - Held orders – quantity exceeds threshold
    - Invoice informs customer
        - Held Pending Regulatory Review
    - Anti Diversion Team Evaluation
        - Turnaround – usually one day, dependent on customer response



CardinalHealth

If there is a threshold event (the order line is more than the set threshold for a specific DEA drug family), that order line and any subsequent order for drugs within that family will be put on "hold". Any re-orders for drugs in that family will be put on hold. It is only after the order is released that it will be filled. Any other line items not hitting thresholds or not controlled substances will not be held.

To get an order released, the customer must provide information specific to the drug family via a one-page questionnaire (also located on the web). That information could enable the release of the order, and potentially, the changing of the threshold (though that will not happen all the time). An order could be release as a one-time event and the threshold not changed.

**This next section should be discussed only if there is a strong indication that the customer has sufficient "objective evidence" to support more of a proactive process to SOM. If you are unsure, please discuss with Michael Mone (QRA) before addressing with your customer. In some cases, with sufficient "objective evidence", Cardinal may be able to initiate dialogue and information requests prior to a threshold event so that the investigative work can be completed prior to a supply chain disruption. This "early dialogue" will happen in advance of a potential threshold event—how much in advance of a threshold event is dependent on the amount and quality of "objective evidence" that has been submitted for the specific customer. AGAIN, BE VERY CAREFUL—YOU DO NOT WANT TO OFFER "EARLY DIALOGUE" AND THEN HAVE TO TAKE IT AWAY IF THERE ISN'T SUFFICIENT "OBJECTIVE EVIDENCE."

## "Threshold event" actions

- Review of 12 month historical purchases
  - the accuracy analysis
- Questionnaire sent to inquire about order
  - the why
- Completed questionnaire sent to AD Team by customer
  - the plausibility evaluation
- Verification by site visit (if deemed necessary)
  - Sales
  - AD Team



CardinalHealth

The above actions are threshold event specific (which means that for each new event for drug family, additional data is required).

Once data is received, three things could happen—
Release the order, no change to threshold
Release the order and change the threshold to one supported by the "new" data
Hold the order and report as suspicious to the DEA

Once a threshold is changed, if it is surpassed again, additional data may be required to release the new order.

CONFIDENTIAL

CAH_MDL2804_00825393

## Communication

- Best method to avoid threshold event
- Alert Cardinal Health to changes in:
  - purchasing patterns
  - contractual obligations
  - employment of physicians
  - clinics instituted
- Key contact is the local Cardinal Health business partner.



To prevent/reduce threshold events, we need to partner with the customer to receive the requested information up front, and as things change, continually provide information to Cardinal QRA so that the customer-specific profile and thresholds can accurately represent the changes.  The more information that is provided early, the quicker we are able to re-evaluate thresholds and change thresholds prior to any supply chain disruption.

CONFIDENTIAL

CAH_MDL2804_00825394

## Timeline for Chains

| | |
|---|---|
| July 31 | "Notice" to Sales Executives |
| August 1 | Accumulator "turned-on" for internal pilot |
| w/o August 4 | Sales initiates conference calls and/or meetings |
| by August 22 | Contact customers; collect usage data, KYC questionnaires |
| w/o August 23 | NACDS—additional opportunity to review SOM needs with customers |
| September 1 | Start SOM implementation with Chain customers |
| September 30 | Complete SOM implementation with Chain customers |

CardinalHealth

We have turned on the order accumulator on August 1—this is purely an internal Cardinal exercise to have one more attempt at identifying any potential threshold events and resolving them prior to going "live". The customer will not experience any supply chain disruption during September, but may be asked for additional information on specific DEA #s and drug families.

Please provide dosage/usage information and any additional KYC information that you can share so that we can further fine-tune your thresholds. We will also need a contact to work any specific issues/threshold events (and if appropriate to the customer, "early dialogue")

We will stagger implementation throughout September (the earlier customers will have more "hands on deck" helping them through the process and resolving issues).



- Questions?

CONFIDENTIAL

CAH_MDL2804_00825396