# PSJ3 Exhibit 559

Message

| | |
|---|---|
| **From**: | Hartman, Mark [/O=CAH/OU=CARDINAL HEALTH/CN=RECIPIENTS/CN=MARK.HARTMAN] |
| **Sent**: | 5/2/2008 6:47:02 PM |
| **To**: | Caprio, Tony [Tony.Caprio@cardinalhealth.com] |
| **CC**: | LaNouette, Jill [Jill.LaNouette@cardinalhealth.com]; Niquette, Lisa [Lisa.Niquette@cardinalhealth.com]; Mone, Michael [Michael.Mone@cardinalhealth.com]; 'Deloso, Michael (US - Atlanta)' [mdeloso@deloitte.com] |
| **Subject**: | RE: Anti-Diversion Update: May 2 |

Tony,
How timely that you write me since I have a "to do" to reach out to you!

The law requires each registrant to have a Suspicious Order Monitoring system. That is typically implemented by having 2 components- electronic order monitoring (thresholds) and Know Your Customer. The law does not try to spell out how you achieve the system or the parts that have to be in place. So your comment about "each" company doing it differently is right; as long as it meets the intent of the law. That is where the DEA will scrutinize the various systems for a registrant and decide if they agree it serves the intent. If not, feedback/action is taken by the DEA.

I believe our system does meet the intent of the law as we've rolled out for Retail Independents. I think we can still refine our system (fewer threshold events monthly) to not impede the legitimate supply chain while finding the orders that need scrutiny. That analysis has been ongoing and adjustments are made as we determine ways to make the system better for the customer, Cardinal and meets our obligations.

That said, as we move across the rest of the class of trades, we'll need make adjustments that represent prudent refinements. For instance, we are collecting data (objective evidence) for each class of trade remaining so we can determine their place on the scale for risk of diversion. We assume that Hospitals are a very low risk of diversion because they have other controlling factors which prevent diversion activity. For instance, they may have SOP's concerning diversion, separate financial oversight, separate purchasing, separate receiving and distribution, accreditation from JACCO, follow ASHP best practices, ect which all contribute to showing why diversion is more broadly monitored and detected/deterred in the hospital setting. Some level of those kinds of controls (which we'll need to validate) would allow us to set thresholds based on their purchase history and probably have early dialog on potential threshold events. Since our sales representation is not like the retail independents, we have to rely on these classes of trade (like hospital and chain) to be a collaborative partner in the Know Your Customer piece. That would probably entail discussing with the customer why they were increasing their purchases prior to a threshold event. With the knowledge gained on that family of drugs, we'd make appropriate adjustments before their supply chain was unnecessarily impeded.
Sorry for the long answer but I wanted to qualify some differences we see for the classes of trade.

Mike Deloso, Deloitte, is working with me on our project plan to roll out our SOM across the remaining customers. Since Kennedy is out next week, he fingered you as the go to guy to get the detail for the project plan we'll need for hospital. Please try and meet with Mike so he can explain what we have going on.

Thanks Tony.. have great weekend!!!

Mark

---

**From:** Caprio, Tony
**Sent:** Friday, May 02, 2008 9:30 AM
**To:** Hartman, Mark
**Cc:** LaNouette, Jill; Niquette, Lisa
**Subject:** FW: Anti-Diversion Update: May 2

Mark....Hope this finds you well. A quick question: I was really surprised that the DEA allows each company to do SOM different ways. MCK gives the customer visibility to their thresholds and when the customer is getting close to hitting them, MCK provides the customer a warning that they are going to go over their limit.. Ours lets the customer go over them without warning, then cuts the order and asks for info to justify shipping any more. Shouldn't a regulatory agency be more prescriptive in their precise requirements for all players vrs allowing each company to make up their own rules of addressing the issue. McK approach certainly is more customer centric ...our is more punitive. I like our approach as it truly protects the Supply chain and the Public. Looks like we are truly policing the issue and MCK is just a radar detector.

Tony

**From:** SupplyChain
**Sent:** Friday, May 02, 2008 8:34 AM
**Subject:** Anti-Diversion Update: May 2

# Anti-diversion Update

## for Sales and Customer Service

CARDINAL HEALTH CONFIDENTIAL
FOR INTERNAL USE ONLY – DO NOT DISTRIBUTE

May 2, 2008

*The purpose of this document is to update Sales and Customer Service and other teams supporting the controlled products anti-diversion activities underway at Cardinal Health.* **Please use this document to familiarize yourselves with the status of our anti-diversion activities. Specific talking points have been developed for you to use with customers, should you be asked.**

### Background

Cardinal Health continues to take steps to fight the diversion of controlled substances, an issue that has received considerable attention and is one of the top issues facing all of us in the pharmaceutical industry. Over the past several months, we and others in the supply chain have been taking a close look at our practices at preventing diversion and determining if we are doing everything we can to stop it while also striving to meet the legitimate needs our customers have for these important medications.

In late 2007, the Drug Enforcement Administration (DEA) suspended our license to handle controlled substances at three of our 24 distribution centers: Auburn, Washington; Lakeland, Florida; and Swedesboro, New Jersey. We activated our business continuity plans and have continued to provide controlled substances to customers from other facilities in our network.

In February we self-imposed a restriction on our sales of controlled substances to retail independent customers from our Stafford, Texas, facility after our reviews revealed areas that required tighter controls.

Also in February we introduced an enhanced Suspicious Order Monitoring (SOM) program that flags and holds orders from retail independent pharmacies that warrant further inspection. It is based on electronic monitoring of orders and an improved education program to help our sales force "Know Your Customer." We are working around the clock to refine this program with carefully set thresholds before it is expanded into other classes of trade.
- We have an obligation to expand our SOM program to other classes of trade. We are beginning to have discussions with retail chain customers to determine how to do this in a collaborative way that supports their own anti-diversion programs and minimizes disruption to the legitimate need for medicines, while protecting the integrity of the pharmaceutical supply chain. Cardinal Health will conduct pilot projects with some retail chains before we fully implement Suspicious Order Monitoring in the retail channel. We will give our retail chain customers **60 days notice** before we implement the program.
- We will refine this program with retail chains before expanding it to hospitals or other classes of trade.

We are in regular communication with the DEA and are aligned with the DEA in ensuring that controlled substances are only getting to those with a legitimate prescription. We are working diligently to regain our reputation with the DEA and the confidence of our customers. **We do not have a date when we expect to have our DEA licenses reissued, however, and we cannot expect to until we and the DEA have complete confidence that we have the right controls in place, consistently, across the network.**

### Situation update

McKesson recently provided its customers with a letter outlining its Controlled Substances Monitoring Program, similar to our Suspicious Order Monitoring program. Unlike our program, however, McKesson's letter says it will warn pharmacy

customers that they are approaching their threshold so they can limit their purchases for the rest of the month. This early-warning feature is intended to help keep pharmacies from hitting their limit.

We're always looking for ways to improve our processes and controls against the diversion of controlled substances, including ways that lessen the burden of our anti-diversion efforts on the needs of legitimate pharmacy customers. **We believe our current system is consistent with current regulations and DEA** guidance but we have asked the DEA for further guidance on this issue.

As we've done to date, we'll continue to revisit this and other issues in the future to ensure our system is effective at detecting and preventing diversion while minimizing the burden on legitimate customers. In fact, as we have enhanced our knowledge of our customers and their business over the past several months, we have proactively adjusted thresholds for appropriate customers as they have approached their limit.

## What you can say to your customers, should they ask:

**About our thoughts on McKesson's controlled substances monitoring program:**

A comprehensive anti-diversion program includes many elements, all of which must work together to create an effective system. Cardinal Health does not have visibility to the other aspects of another distributor's system. It therefore would be inappropriate for us to comment on another company's system. That is the role of the DEA.

**About our willingness to work with customers compared to McKesson's statement:**

Cardinal Health is doing everything we can to work with our customers – to demonstrate our trust in their professionalism – while meeting our obligations. A few points I'd like to emphasize:

- We have carefully set threshold levels specific to our customers' business needs and monitor these thresholds continually, including proactively analyzing customers who are nearing thresholds to determine whether adjustments are warranted.

- We will adjust thresholds, as appropriate, such as when a customer is anticipating the need to place a large order.

- Finally, we strive to understand our customers' unique business needs and support the anti-diversion activities some customers currently have in place. Our goal is to ensure we are working together to protect the integrity of the pharmaceutical supply chain.

**About why there is confidentiality about customer thresholds:**

We're always looking for ways to improve our processes and controls against the diversion of controlled substances, including ways that lessen the burden of our anti-diversion efforts on the needs of legitimate pharmacy customers. We believe our current system is consistent with current regulations and DEA guidance but we have asked the DEA for further guidance on this issue. As greater guidance is given by the DEA on this and other aspects of anti-diversion systems, we will enhance our systems to guard against the diversion of controlled substances.

---

- For more information on **anti-diversion activities**, contact SVP of Supply Chain Integrity Mark Hartman, 614.757.5597.
- **Questions** or concerns relative to customer issues should be directed to Steve Lawrence, 614.553.3555.
- **Media** calls or questions should immediately be directed to Troy Kirkpatrick, 614-757.6225.
- **Additional questions or topics** you would like to see addressed in these Updates should be directed to Jill LaNouette, 614.757.7367.