PSJ3

Exhibit 561B

**APPENDIX F**

CAH_MDL2804_00641482

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between the United States Department of Justice, through the United States Attorney's Offices for the Districts of New Jersey, Middle Florida, Southern Texas, Western Washington, Colorado, Northern Georgia, and Central California ("United States") and Cardinal Health, Inc., for itself and on behalf of its subsidiary entities which hold the registrations listed in Attachment A to this agreement (collectively "Cardinal") (each a "Party" and collectively the "Parties").

## RECITALS

1.      Cardinal is in the business of distributing branded and generic prescription drugs, as well as over-the-counter medications, to retail pharmacies throughout the United States.  In furtherance of this business objective, Cardinal operates numerous distribution facilities in the United States, including the seven facilities more fully described in Attachment B to this Agreement ("the Seven Facilities").

2.      As described in Attachment A, Cardinal holds Certificates of Registration issued by the Drug Enforcement Administration ("DEA") authorizing it to distribute controlled substances from each of its distribution facilities that handle controlled substances, including the Seven Facilities described in Attachment B.

3.      Cardinal is required to operate the Seven Facilities in accordance with the statutory and regulatory provisions of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*  ("the CSA").

4.      Each of the Seven Facilities supplies prescription medications, including controlled substances, to retail pharmacies and other health care providers within the respective jurisdictions as stated in Paragraph 8.

CAH_MDL2804_00641483

5.      DEA is the Department of Justice component agency primarily responsible for

administering the CSA and is vested with the responsibility of investigating CSA violations.

6.      The Attorney General, through the United States Attorneys, has primary authority to

bring civil actions to enforce the CSA in the Districts noted above. *See* 21 U.S.C. § 871 *and*

28 C.F.R. § 0.55(c).

7.      Hydrocodone is a medication whose manufacture, distribution, sale and possession is

regulated by DEA under the CSA.  This includes a requirement to report customer orders for

controlled substances that are suspicious as the term is defined under 21 C.F.R. §1301.74(b).

8.      The "Covered Conduct" shall mean the following alleged conduct:

A.  Within the District of New Jersey: From January 2005 through August 2007,
Cardinal-Swedesboro sold more than 4.5 million dosage units of hydrocodone to three
pharmacies (IVRx Pharmacy in Springfield, New Jersey; Newcare Home Health Services
in Baltimore, Maryland; and Phamily Pharmacy in Washington, D.C.), and failed to
report these sales as suspicious orders to DEA when discovered, as required by and in
violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

B.  Within the Middle District of Florida:  From August 2005 through October 2007,
Cardinal-Lakeland sold more than 8 million dosage units of hydrocodone to ten
pharmacies in the Tampa area (Medipharm-Rx, Inc., DRM Enterprises, Inc., Jen-Mar
Pharmacy Services, Inc., Armenia Pharmacy, Inc., National Pharmacy, Inc., Parulmed
Corporation, Q-R-G-, Inc., RKR Holdings, Inc., United Prescription Services, Inc., and
Satellite Drug and Pharmacy) and failed to report these sales as suspicious orders  to
DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and
21 U.S.C. § 842(a)(5);

C.  Within the Southern District of Texas:  From March 2006 through September 2007,
Cardinal-Stafford sold more than 7.5 million dosage units of hydrocodone to fifteen
pharmacies in the Houston area (Richmond Pharmacy, AK Pharmacy, Farmacia de
Medica, Parkway Pharmacy, Farmacia del Pueblo, Magnum Road Pharmacy, Mastery
Pharmacy, Amex Pharmacy #3, Local Pharmacy, HP Pharmacy, I-10 East Pharmacy,
Xavier Pharmacy, TXRX Pharmacy, Park Place Pharmacy, and King's Pharmacy) and
failed to report these sales as suspicious orders to DEA when discovered, as required by
and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

D.  Within the Western District of Washington:  From March 2007 through November

CAH_MDL2804_00641484

2007, Cardinal-Auburn sold more than 900,000 dosage units of hydrocodone to Horen's Drugstore, Inc., in Burlington Washington and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

E. Within the District of Colorado: From January 2006 through February 2006, Cardinal-Denver sold large quantities of hydrocodone to Hometown Pharmacy in Trinidad, Colorado, and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

F. Within the Northern District of Georgia: From April 2007 through October 2007, Cardinal-McDonough sold large quantities of hydrocodone to Poly-Plex Pharmacy in Atlanta, Georgia, and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

G. Within the Central District of California: From September 2006 through January 2007, Cardinal-Valencia sold large quantities of hydrocodone to Boulevard Pharmacy in Sun Valley, California, and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5).

9.      By entering into this Agreement, Cardinal does not admit to the violations alleged as a result of any DEA investigation, or to any violation of law, liability, fault, misconduct, or wrongdoing.

10.      At all times relevant to the activity alleged in these Recitals and Attachments, the CSA (21 U.S.C. § 842(c)(1)) authorized the imposition of a civil penalty of up to $25,000 for most violations of Section 842 but, violations of § 842(a)(5) (record keeping and reporting violations) are subject to a civil penalty of up to $10,000 for each violation.

11.      To avoid the delay, expense, inconvenience, and uncertainty of litigation of these claims, the Parties agree to settle, compromise, and resolve all existing or potential claims for civil penalties the United States may have against Cardinal under § 842 of the CSA based on the Covered Conduct as further described in Paragraphs 13 and 14 below.

3 of 10

CAH_MDL2804_00641485

12.     This Agreement is neither an admission of liability by Cardinal nor a concession by the

United States that its claims are not well founded.  In consideration of the mutual promises,

covenants, and obligations set forth in this Agreement, the Parties agree as follows:

## TERMS AND CONDITIONS

13.     Cardinal shall pay to the United States the sum of Thirty-Four Million Dollars

($34,000,000) (the "Settlement Amount") within thirty (30) days of the effective date of this

Agreement, payable as follows:

> A. <u>For Conduct Alleged to have Occurred within the District of New Jersey:</u>  Cardinal
> shall pay the sum of Three Million Dollars ($3,000,000).  Payment shall be by electronic
> funds transfer to the United States Attorney's Office, District of New Jersey, pursuant to
> instructions provided by the United States.

> B. <u>For Conduct Alleged to have Occurred within the Middle District of Florida:</u>
> Cardinal shall pay the sum of Sixteen Million Dollars ($16,000,000).  Payment shall be
> by electronic funds transfer to the United States Attorney's Office, Middle District of
> Florida, pursuant to instructions provided by the United States.

> C. <u>For Conduct Alleged to have Occurred within the Southern District of Texas:</u>
> Cardinal shall pay the sum of Eight Million Dollars ($8,000,000).  Payment shall be by
> electronic funds transfer to the United States Attorney's Office, Southern District of
> Texas, pursuant to instructions provided by the United States.

> D. <u>For Conduct Alleged to have Occurred within the Western District of Washington:</u>
> Cardinal shall pay the sum of Three Million Five Hundred Thousand Dollars
> ($3,500,000).  Payment shall be by electronic funds transfer to the United States
> Attorney's Office, Western District of Washington, pursuant to instructions provided by
> the United States.

> E. <u>For Conduct Alleged to have Occurred within the District of Colorado:</u>  Cardinal shall
> pay the sum of One Million Dollars ($1,000,000).  Payment shall be by electronic funds
> transfer to the United States Attorney's Office, District of Colorado, pursuant to
> instructions provided by the United States.

> F. <u>For Conduct Alleged to have Occurred within the Northern District of Georgia:</u>
> Cardinal shall pay the sum of One Million Five Hundred Thousand Dollars ($1,500,000).
> Payment shall be by electronic funds transfer to the United States Attorney's Office,
> Northern District of Georgia, pursuant to instructions provided by the United States.

CAH_MDL2804_00641486

G. <u>For Conduct Alleged to have Occurred within the Central District of California:</u> Cardinal shall pay the sum of One Million Dollars ($1,000,000). Payment shall be by electronic funds transfer to the United States Attorney's Office, Central District of California, pursuant to instructions provided by the United States.

14.     In consideration of the undertakings by Cardinal, the United States agrees to settle and relinquish all claims for civil penalties it may have under 21 U.S.C. § 842 against Cardinal, its officers, directors, and employees for possible violations of the CSA, and the regulations promulgated thereunder, based on the Covered Conduct.

15.     Cardinal fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which it has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the investigation, prosecution and settlement of this matter.

16.     Notwithstanding any term of this Agreement, specifically reserved and excluded from its scope and terms as to any entity or person are the following:

A. Any potential criminal liability;

B. Any criminal, civil or administrative claims arising under Title 26, U.S. Code (Internal Revenue Service);

C. Any administrative liability, including mandatory exclusion from any federal programs;

D. Any liability to the United States for any conduct other than that covered by the release in Paragraph 14; and

E. Any claims based on such obligations as are created by this Agreement.

17.     Cardinal acknowledges that each of its DEA registered facilities is required to comply

CAH_MDL2804_00641487

with the controlled substance record keeping and reporting requirements of the CSA. Cardinal represents that it has taken good-faith actions to detect and prevent diversion including agreeing to implement the policies and procedures that are the subject of an administrative settlement agreement between it and DEA.

18. Cardinal agrees that any and all costs it has or will incur in connection with this matter -- including payment of the Settlement Amount under this Agreement, attorney's fees, costs of investigation, negotiation, and remedial action -- shall be unallowable costs for government contract accounting and for Medicare, Medicaid, TriCare, and FEHBP reimbursement purposes.

19. This Agreement is not intended by the Parties to be, and shall not be interpreted to constitute, a release of any person or entity not identified or referred to herein.

20. This Agreement shall be governed by the laws of the United States. If a dispute arises under this Agreement between Cardinal and an Office of the United States Attorney signing this Agreement, exclusive jurisdiction and venue shall lie in the federal judicial district of the Office with whom the dispute arose, and to the extent that state law applies to the dispute, the law of the State within the jurisdictional district shall apply. If a dispute arises under this Agreement between Cardinal and more than one of the United States Attorney's Office signing this Agreement, exclusive jurisdiction and venue shall lie in the District of New Jersey and to the extent that state law applies to the dispute, the law of the state of New Jersey shall apply.

21. The Parties agree that this Agreement does not constitute evidence or an admission by any person or entity, and shall not be construed as an admission by any person or entity, with respect to any issue of law or fact.

22. This Agreement constitutes the entire agreement between the Parties and cannot be

CAH_MDL2804_00641488

amended except in writing and when signed by all the Parties to this Agreement.

23.     Cardinal acknowledges that its authorized representatives have read this Agreement and understand that as of its effective date, it will be a matter of public record.

24.     Each person who signs this Agreement in a representative capacity warrants that he or she is fully authorized to do so.

25.     This Agreement shall become effective (i.e., final and binding) on the date of signing by the last signatory (the "Effective Date"). It may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one and the same agreement. The government agrees to notify Cardinal immediately when the final signatory has executed this Agreement.

CAH_MDL2804_00641489

On Behalf of Cardinal Health:

_____     9/30/2008
R. Kerry Clark                      Date
Chairman and Chief Executive Officer

_____     Sept. 30, 2008
Ivan K. Fong                        Date
Chief Legal Officer and Secretary

_____     09-30-08
                                    Date
John J. Carney, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza
11th Floor
New York, NY 10111
Counsel for Cardinal Health

_____     9/30/08
                                    Date
Jodi L. Avergun, Esq.
Cadwalader, Wickersham & Taft LLP
1201 F Street, NW
Washington, DC 20004
Counsel for Cardinal Health

CAH_MDL2804_00641490

On Behalf of the United States of America:

Christopher J. Christie
United States Attorney
District of New Jersey

By: Alex Kriegsman
Assistant United States Attorney

10/2/08
Date

Robert E. O'Neill
United States Attorney
Middle District of Florida

By: Javier Guzman
Assistant United States Attorney

9/30/08
Date

Donald J. DeGabrielle, Jr.,
United States Attorney
Southern District of Texas

By: Jill Venezia
Assistant United States Attorney

09/30/2008
Date

Jeffrey C. Sullivan
United States Attorney
Western District of Washington

By: Anastasia Bartlett
Assistant United States Attorney

9/30/2008
Date

CAH_MDL2804_00641491

Troy A. Eid
United States Attorney
District of Colorado

_Amanda Rocque_

By: Amanda Rocque
Assistant United States Attorney

9-29-08

Date

David E. Nahmias
United States Attorney
Northern District of Georgia

_Mina Rhee_

By: Mina Rhee
Assistant United States Attorney

9-29-08

Date

Thomas P. O'Brien
United States Attorney
Central District of California

_Shana Mintz_

By: Shana Mintz
Assistant United States Attorney

Sept. 29, 2008

Date

CAH_MDL2804_00641492

**ATTACHMENT A**

CAH_MDL2804_00641493

# ATTACHMENT A

## (Cardinal Facilities Referenced in Paragraph 1 of this Agreement)

1.     6012 Molloy Road, Syracuse, New York, operating under DEA registration number PC0003044.

2.     2045 Interstate Drive, Lakeland, Florida, operating under DEA registration number RC0182080.

3.     1240 Gluckstadt Road, Madison, Mississippi, operating under DEA registration number RC0221236.

4.     15 Ingram Boulevard, La Vergne, Tennessee, operating under DEA registration number RC0229965 (Specialty Pharmaceutical).

5.     2512 West Cott Boulevard, Knoxville, Tennessee, operating under DEA registration number RC0238104.

6.     500 Jerry Steele Lane, McDonough, Georgia, operating under DEA registration number RC0271267.

7.     14601 County Road 212, Findlay, Ohio, operating under DEA registration number RC0313940.

8.     5995 Commerce Center Drive, Groveport, Ohio, operating under DEA registration number RC0314891.

9.     13651 Dublin Court, Stafford, Texas, operating under DEA registration number RC0333524.

10.    850 Airpark Drive, Zanesville, Ohio, operating under DEA registration number RC0346658.

11.    6640 Echo Avenue, Suite D, Reno, Nevada, operating under DEA registration number RC0361206 (Specialty Pharmaceutical).

12.    11 Centennial Drive, Peabody, Massachusetts, operating under DEA registration number RD0108200.

13.    71 Mil-Acres Drive, Wheeling, West Virginia, operating under DEA registration number RO0153609.

CAH_MDL2804_00641494

14.  955 West 3100 South, South Salt Lake City, Utah, operating under DEA registration number RW0191419.

15.  801 C Street NW, Suite B, Auburn, Washington, operating under DEA registration number RW0191813.

16.  7601 N.E. Gardner Avenue, Kansas City, Missouri, operating under DEA registration number RW0191926.

17.  27680 Avenue Mentry, Valencia, California, operating under DEA registration number RW0216449.

18.  2353 Prospect Drive, Aurora, Illinois, operating under DEA registration number RW0231908.

19.  3238 Dwight Road, Elk Grove, California, operating under DEA registration number RW0236009.

20.  2901 Enloe Street, Hudson, Wisconsin, operating under DEA registration number RW0243725.

21.  4 Cardinal Cardinal Health Court, Greensboro, North Carolina, operating under DEA registration number RW0243903.

22.  600 N. 83rd Avenue, Tolleson, Arizona, operating under DEA registration number RW02630056.

23.  4875 Florence Street, Denver, Colorado, operating under DEA registration number RW0263549.

24.  1120 Commerce Boulevard, Swedesboro, New Jersey, operating under DEA registration number RW0269654.

25.  851 Henrietta Creek Road, Roanoke, Texas, operating under DEA registration number RW0279996.

26.  2840 Elm Point Industrial Drive, St. Charles, Missouri, operating under DEA registration number RW0283452.

27.  4220 Hyde Park Boulevard, Niagara Falls, New York, operating under DEA registration number RP0337370 (Parmed Pharmaceuticals).

CAH_MDL2804_00641495

**ATTACHMENT B**

CAH_MDL2804_00641496

# ATTACHMENT B

### (Seven Cardinal Facilities Referenced in Paragraph 1 of this Agreement)

1.    1120 Commerce Boulevard in Swedesboro, New Jersey ("Cardinal-Swedesboro"), located within the District of New Jersey and operating under DEA registration number RW0269654;

2.    2045 Interstate Drive in Lakeland, Florida ("Cardinal-Lakeland"), located within the Middle District of Florida and operating under DEA registration number RC0182080;

3.    13651 Dublin Court in Stafford, Texas ("Cardinal-Stafford"), located within the Southern District of Texas and operating under DEA registration number RC0333524;

4.    801 C Street NW, Suite B in Auburn, Washington ("Cardinal-Auburn"), located within the Western District of Washington and operating under DEA registration number RW0191813;

5.    4875 Florence Street in Denver, Colorado ("Cardinal-Denver"), located  within the District of Colorado and operating under DEA registration number RW0263549;

6.    500 Jerry Steele Lane in McDonough, Georgia ("Cardinal-McDonough"), located within the Northern District of Georgia and operating under DEA registration number RC0271267; and

7.    27680 Avenue Mentry in Valencia, California ("Cardinal-Valencia"), located within the Central District of California and operating under DEA registration number RW0216449.

1 of 1

CAH_MDL2804_00641497

# *Cardinal Health, Inc. v. Holder*

# *Attachment 13*
## *to*
# *Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction*

CAH_MDL2804_00641498

 **COVIDIEN**

September 16, 2011

*Via Email and Overnight Delivery*

<template letter sent to 43 Distributors 09/16 and 09/19/11>

Dear ▓▓▓▓▓

As you are aware, all U.S. Drug Enforcement Administration ("DEA") Registrants are required by law to have a Suspicious Order Monitoring ("SOM") Program in place to monitoring sales of controlled substances. As a DEA Registrant, Mallinckrodt LLC, a Covidien company ("Mallinckrodt"), has developed and maintains a comprehensive program that includes review of customer orders, IMS data and chargeback information and, where appropriate, subsequent audits of distributors' Suspicious Order Monitoring Programs.

Effective immediately, Mallinckrodt will no longer process charge backs from distributor sales of Mallinckrodt's products to the pharmacies identified on Attachment 1 hereto. We have made this decision based on our recent site visits to these locations. We suggest that if you have sold controlled substances to any of these pharmacies, you consider conducting an on-site audit as part of your SOM Program.

We look forward to working with you to ensure that the business we conduct together meets or exceeds DEA requirements.

Thank you for your time and consideration of our request. If you have any specific questions, please contact me at (314) 654-1868.

Sincerely,

*Karen Harper /s/pd*

Karen Harper
Senior Manager, Controlled Substance Compliance

675 McDONNELL BOULEVARD     314-654-2000 [T]
HAZELWOOD, MO
63042

CAH_MDL2804_00641499

Attachment 1 to Letter Dated September 16, 2011 to ████████████████████

AB SPECIALTY PHARMACY INC.
2311 SEVEN SPRINGS BLVD
NEW PORT RICHEY, FL 34655
DEA NO. FA0615205

MADABHUSHI PHARMACY SERVICES
14936 NORTH FLORIDA AVENUE
TAMPA, FL 33613
DEA NO. FM0698956

GULF COAST MEDICAL PHARMACY
13685 DOCTOR'S WAY
FORT MYERS, FL 33912
DEA NO. BG8830223

BELAVINASH INC. (NORTHDALE PHARMACY)
3851 NORTHDALE BLVD
NORTHDALE, FL 33624
DEA NO. FB0048341

CAH_MDL2804_00641500

| |
|---|
| Amerisourcebergen Progenerics |
| ANDA |
| Auburn Pharm |
| Bellco Drug |
| Bloodworth, Inc. |
| Burlington Drug |
| Capital Wholesale |
| Cardinal Healthcare |
| Cedardale Distributors |
| Cesar Castillo |
| Curascript Specialty Distribution |
| Dakota Drug |
| Masters Pharmaceuticals |
| DIK Drug |
| Associated Pharmacies, Inc. (API) |
| DMS Pharmaceuticals |
| Drogueria Betances Inc |
| Frank W. Kerr Wholesale |
| Generics of Puerto Rico |
| Genetco |
| Harvard Drug |
| HD Smith Wholesale |
| Henry Schein Inc. |
| KeySource Medical, Inc. |
| Kinray Wholesale |
| Lake Erie Medical, dba Quality Care Products L.L.C. |
| Lewis Drug |
| Louisiana Wholesale Drug |
| McKesson |
| Miami Luken |
| Morris Dickson |
| North Carolina Mutual (C.A.P.S.) |
| OptiSource LLC |
| PBA Health/TrueCare Pharmacy |
| The Premier Group |
| Prescription Supply |
| Quest Pharmaceutical |
| Rochester Drug |
| Richie Pharmacal |
| Smith Drug |
| Top Rx |
| Valley Wholesale Drug |
| Value Drug |

| |
|---|
| |

CAH_MDL2804_00641501

Case 1:12-cv-00185-RBW Document #: 17 Filed 02/10/12 Page 1 of 3

# *Cardinal Health, Inc. v. Holder*

# *Attachment 14*
# *to*
# *Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction*

CAH_MDL2804_00641502

Mallinckrodt LLC

Charge-back data on Oxycodone 30mg
for 2011YTD from specific Wholesale Distributors

Cardinal Health Florida 30 mg 2011 YTD

| Ship To Customer Number | Ship To Customer Name | Ship To Customer Address Line 1 | Ship To Customer Address Line 2 | Ship To Customer City | Ship To Customer State | Ship To Customer Postal Code | DEA Number | Sold Via Parent Customer Name | Gross Sales | Sales Qty Govt UOM |
|---|---|---|---|---|---|---|---|---|---|---|
| 52046386 | GULF COAST MEDICAL PHARMACY | 13685 DOCTOR'S WAY | | FORT MYERS | FL | 33912 | | CARDINAL HEALTH | $ 424,522.12 | 1,268,200 |
| 52036698 | BROOKS PHARMACY | 3501 HEALTH CENTER BLVD | | BONITA SPRINGS | FL | 34135 | BC7126457 | CARDINAL HEALTH | $ 199,226.88 | 595,200 |
| 52056802 | THE MEDICINE SHOPPE | 3796 HOWELL BRANCH RD. | | WINTER PARK | FL | 32792 | BM4362834 | CARDINAL HEALTH | $ 151,297.00 | 452,000 |
| 52034727 | CVS | 3798 ORLANDO DRIVE | | SANFORD | FL | 32773 | BC5289055 | CARDINAL HEALTH | $ 137,566.65 | 450,300 |
| 52036589 | CVS | 4639 W 1ST ST | | SANFORD | FL | 32771 | BC6988298 | CARDINAL HEALTH | $ 125,835.45 | 411,900 |
| 52005974 | BARCLAY PHARMACY, INC | 200 A N TAMIAMI TR | | VENICE | FL | 34285 | AB8689258 | CARDINAL HEALTH | $ 121,112.94 | 361,800 |
| 536048 | BELAVINASH INC NORTHDALE PHARMACY | 3851 NORTHDALE BLVD | | NORTHDALE | FL | 33624 | FB0048341 | CARDINAL HEALTH | $ 84,362.04 | 252,000 |
| 52057082 | MEDICINE SHOPPE  1441 PNT GRD | 615 CROSS ST. | | PUNTA GORDA | FL | 33950 | BM4917285 | CARDINAL HEALTH | $ 84,022.30 | 251,000 |
| 575451 | MADABHUSHI PHARMACY SERVICES | 14936 NORTH FLORIDA AVENUE | | TAMPA | FL | 33613 | FM0698956 | CARDINAL HEALTH | $ 82,758.00 | 247,200 |
| 52067861 | RANI, INC | 24718 STATE RD 54 | | LUTZ | FL | 33559 | BR7604730 | CARDINAL HEALTH | $ 75,888.25 | 226,700 |
| 563087 | SUPER DISCOUNT PHARMACY | 1423 SOUTH COLLINS STREET | | PLANT CITY | FL | 33566 | FS0487985 | CARDINAL HEALTH | $ 75,185.52 | 224,600 |
| 618086 | PHARMLAND LLC | AKA LIFECARE PHARMACY | 3426-13TH AVENUE NOR | SAINT PETERSBURG | FL | 33713 | FP1340126 | CARDINAL HEALTH | $ 73,916.04 | 220,800 |
| 52090799 | ISLAND DRUG | 1061 N COLLIER BLVD | | MARCO ISLAND | FL | 34145 | AH0192865 | CARDINAL HEALTH | $ 72,207.39 | 215,700 |
| 52034801 | CVS | 1599 PALM BAY RD NE | | PALM BAY | FL | 32901 | BC5290325 | CARDINAL HEALTH | $ 64,399.40 | 210,800 |
| 555137 | CAPE CORAL EXPRESS PHARMACY | 505 DEL PRADO BLVD NORTH | | CAPE CORAL | FL | 33909 | FC0096215 | CARDINAL HEALTH | $ 67,454.65 | 201,500 |
| 52045295 | GOLDEN GATE PHARMACY INC | 11669 COLLIER BLVD | | NAPLES | FL | 34116 | BG3157989 | CARDINAL HEALTH | $ 67,427.06 | 201,400 |
| 52021463 | S A S B INC | DBA OKEECHOBEE DISCOUNT DRUGS | 203 SOUTHWEST PARK S | OKEECHOBEE | FL | 34972 | AS2016219 | CARDINAL HEALTH | $ 66,692.68 | 199,200 |
| 52048795 | HAWA PHARMACY INC | DBA MEDICINE SHOPPE  0446 | 646 SOUTH DILLARD STR | WINTER GARDEN | FL | 34787 | BH7580992 | CARDINAL HEALTH | $ 61,866.00 | 184,800 |
| 52005845 | DAVIDS PHARMACY AND SURG | 1637 NE 36TH STREET | | POMPANO BEACH | FL | 33064 | AB7128487 | CARDINAL HEALTH | $ 60,681.18 | 181,300 |
| 52029197 | MEDICINE SHOPPE  1277 DUNEDIN | 938 PATRICIA AVE | | DUNEDIN | FL | 34698 | BA6658124 | CARDINAL HEALTH | $ 59,687.09 | 178,300 |

Cardinal Health All Other States 30 mg 2011 YTD

| Ship To Customer Number | Ship To Customer Name | Ship To Customer Address Line 1 | Ship To Customer Address Line 2 | Ship To Customer City | Ship To Customer State | Ship To Customer Postal Code | DEA Number | Sold Via Parent Customer Name | Gross Sales | Sales Qty Govt UOM |
|---|---|---|---|---|---|---|---|---|---|---|
| 52032469 | BER CORPORATION | 1700 LAS VEGAS BLVD SOUTH | | LAS VEGAS | NV | 89104 | BB8426264 | CARDINAL HEALTH | $ 362,908.68 | 1,084,100 |
| 515312 | DBA LAMS PHCY COFII | 2202 WEST CHARLESTON BLVD | SUITE 13 | LAS VEGAS | NV | 89102 | BD9670058 | CARDINAL HEALTH | $ 276,201.14 | 825,000 |
| 657451 | MEDICAL TOWERS PHARMACY | 17822 BEACH BLVD | | HUNTINGTON BEACH | CA | 92647 | FM2315186 | CARDINAL HEALTH | $ 235,424.40 | 703,300 |
| 649363 | METRO DRUGS | 6338 WEST SAHARA AVENUE | | LAS VEGAS | NV | 89146 | FM1850228 | CARDINAL HEALTH | $ 172,195.30 | 514,400 |
| 52091067 | LOWES DRUG INC | 1536 EAST BROADWAY | | MARYVILLE | TN | 37804 | AL2790182 | CARDINAL HEALTH | $ 144,338.39 | 431,200 |
| 606698 | LIFEFIRST PHARMACY LLC | 3233 WEST CHARLESTON BLVD | SUITE 204 | LAS VEGAS | NV | 89102 | FL1255492 | CARDINAL HEALTH | $ 136,708.20 | 408,300 |
| 52068530 | SOUTHWEST PHARMACIES INC | DBA THE PHARMACY SHOPPE | 3201 SOUTH 16TH STREE | MILWAUKEE | WI | 53215 | BS0926545 | CARDINAL HEALTH | $ 132,796.84 | 396,700 |
| 590355 | SPRING VALLEY PHARMACY | 2725 SOUTH JONES STREET | SUITE 101 | LAS VEGAS | NV | 89146 | FS0967692 | CARDINAL HEALTH | $ 120,743.79 | 360,700 |
| 659025 | HEALTH CENTER PHARMACY | 15418 CRENSHAW BLVD | | GARDENA | CA | 90249 | FH2162167 | CARDINAL HEALTH | $ 120,409.86 | 359,700 |
| 654913 | VILLAGE PHARMACY | 18590 HIGHWAY 16 | SUITE 1 | PORT VINCENT | LA | 70726 | FV2178879 | CARDINAL HEALTH | $ 105,062.33 | 313,900 |
| 614387 | DESERT SKY PHARMACY | 6750 WEST THUNDERBIRD ROAD | | PEORIA | AZ | 85381 | FD1234323 | CARDINAL HEALTH | $ 82,060.87 | 245,100 |
| 52056254 | MACS PHARMACY | 2419 WASHINGTON PIKE | | KNOXVILLE | TN | 37917 | BM3192767 | CARDINAL HEALTH | $ 73,645.13 | 220,000 |
| 622219 | PARADISE VALLEY PHARMACY | 3805 EAST BELL ROAD | SUITE 1900 | PHOENIX | AZ | 85032 | FP1538113 | CARDINAL HEALTH | $ 72,315.78 | 216,000 |
| 52020946 | RIGGS DRUG | 502 W CENTRAL AVE. | | LA FOLLETTE | TN | 37766 | AR9796105 | CARDINAL HEALTH | $ 71,203.29 | 212,700 |
| 622771 | RED MOUNTAIN PHARMACY | 6828 EAST BROWN ROAD | SUITE 101 | MESA | AZ | 85207 | FR1381362 | CARDINAL HEALTH | $ 70,770.21 | 211,400 |
| 562321 | FARMACIA DEL PUEBLO | 2123 CIVIC CENTER DRIVE | | NORTH LAS VEGAS | NV | 89030 | FF0465890 | CARDINAL HEALTH | $ 67,542.46 | 201,800 |
| 52057938 | MEDICAP PHARMACY 182 | 11460 12 MILE ROAD | | WARREN | MI | 48093 | BM6636611 | CARDINAL HEALTH | $ 65,010.36 | 194,200 |
| 52045694 | MCLAIR GRIFFIN PHCY DME | 860 MONTCLAIR RD. | | BIRMINGHAM | AL | 35213 | BG5506099 | CARDINAL HEALTH | $ 63,632.07 | 190,100 |

CAH_MDL2804_00641503

Contains Confidential and Proprietary Information

Mallinckrodt LLC

Charge-back data on Oxycodone 30mg
for 2011YTD from specific Wholesale Distributors

| 6512Z4 RIGGS DRUG | 604 EAST EMORY ROAD | FOWELL | TN | 37849 | FR2113Z65 | CARDINAL HEALTH | $ | 59,390.90 | 177,400 |
| 52063841 PROSPERITY PHARMACY | 8505 ARLINGTON BLVD. | FAIRFAX | VA | 22031 | BR815D063 | CARDINAL HEALTH | $ | 58,413.06 | 174,500 |

Contains Confidential and Proprietary Information

CAH_MDL2804_00641504

# *Cardinal Health, Inc. v. Holder*

# *Attachment 15*
# *to*
# *Defendants' Opposition to Plaintiff's*
# *Motion for Preliminary Injunction*

CAH_MDL2804_00641505



**U.S. Department of Justice**
Drug Enforcement Administration

---

*Office of the Administrator*                    *Springfield, Va 22152*

**FEB 0 2 2012**

IN THE MATTER OF

Cardinal Health
2045 Interstate Drive
Lakeland, Florida 33805

### ORDER TO SHOW CAUSE AND
### IMMEDIATE SUSPENSION OF REGISTRATION

  **PURSUANT** to Sections 303 and 304 of the Controlled Substances Act, Title 21, United States Code, Sections 823 and 824,

  **NOTICE** is hereby given to inform Cardinal Health ("Cardinal") of the immediate suspension of Drug Enforcement Administration ("DEA") Certificate of Registration RC0182080, pursuant to 21 U.S.C. § 824(d), because such registration constitutes an imminent danger to the public health and safety. Notice is also given to afford Cardinal an opportunity to show cause before DEA, at DEA Headquarters located at 600 Army Navy Drive, Arlington, Virginia, or a location designated by the Administrative Law Judge, on April 3, 2012 (if Cardinal requests such a hearing), as to why DEA should not revoke Cardinal's DEA Certificate of Registration RC0182080, pursuant to 21 U.S.C. § 824(a)(4), deny any pending applications for renewal or modification of such registration, and deny any applications for additional registration, pursuant to 21 U.S.C. § 823(f), because Cardinal's continued registration is inconsistent with the public interest, as that term is defined in 21 U.S.C. § 823(f). The basis for this Order to Show Cause and Immediate Suspension of Registration is set forth in the following non-exhaustive summary of facts.

  1. Cardinal is registered with DEA as a distributor in Schedules II-V pursuant to DEA Certificate of Registration RC0182080 at 2045 Interstate Drive, Lakeland, Florida 33805. DEA Certificate of Registration RC0182080 expires by its terms on August 31, 2012.

  2. On September 30, 2008, Cardinal entered into an Administrative Memorandum of Agreement (MOA) with DEA agreeing to "maintain a compliance program designed to detect and prevent diversion of controlled substances as required under the CSA and applicable DEA regulations." Furthermore, Cardinal "acknowledg[ed] and agree[d] that the obligations undertaken ... do not fulfill the totality of its obligations to maintain effective controls against the diversion of controlled substances or to detect and report to DEA suspicious orders for

CAH_MDL2804_00641506

controlled substances." MOA, at 3.

3. Despite the MOA, the specific guidance provided to Cardinal by DEA, and despite the public information readily available regarding the oxycodone epidemic in Florida, Cardinal has failed to maintain effective controls against the diversion of controlled substances into other than legitimate medical, scientific, and industrial channels, in violation of 21 U.S.C. §§ 823(b)(1) and (e)(1).

4. Since at least 2009, Cardinal's largest purchasers of oxycodone products have been retail pharmacies in the State of Florida engaged in a scheme to distribute controlled substances based on purported prescriptions that were issued for other than a legitimate medical purpose and outside the usual course of professional practice.

    a. From January 1, 2008 through December 31, 2011, Automation of Reports and Consolidated Orders System ("ARCOS") data shows that Cardinal's sales of oxycodone products to its top four retail pharmacy customers exceeded 12.9 million dosage units. In 2010 and 2011 alone, Cardinal sold 10.9 million dosage units of oxycodone to its top four customers. From 2008 to 2009, Cardinal's sales to its top four retail pharmacy customers increased approximately 803%. From 2009 to 2010, Cardinal's sales to its top four retail pharmacy customers increased approximately 162%.

    The egregious quantities of oxycodone distributed by Cardinal to its top four retail pharmacy customers well exceeded the amount of oxycodone distributed to Cardinal's Florida retail pharmacies, which received, on average, approximately 5,347 dosage units of oxycodone per month.

    b. From January 1, 2008 through December 31, 2011, Cardinal sold over 5 million dosage units of oxycodone to its top customer, Holiday CVS, L.L.C., d/b/a CVS/Pharmacy # 00219 ("CVS 219") (DEA Certificate of Registration BC5289055). On average, Cardinal sold CVS 219 approximately 137,994 dosage units of oxycodone per month during the same time period.

    c. From January 1, 2008 through September 30, 2011, Cardinal sold approximately 3.4 million dosage units of oxycodone to Gulf Coast Pharmacy (former DEA Certificate of Registration BG8830223). On average, Cardinal sold Gulf Coast Pharmacy approximately 96,664 dosage units of oxycodone per month during the same time period.

    d. From January 1, 2008 through December 31, 2011, Cardinal sold approximately 2.2 million dosage units of oxycodone to Holiday CVS, L.L.C., d/b/a CVS/Pharmacy #05195 ("CVS 5195") (DEA Certificate of Registration BC6988298). On average, Cardinal sold CVS 5195 approximately 58,223 dosage units of oxycodone per month during the same time period.

2

CAH_MDL2804_00641507

e. From January 1, 2008 through September 30, 2011, Cardinal sold approximately 2.1 million dosage units of oxycodone to Caremed Health Corporation, d/b/a Brooks Pharmacy ("Brooks Pharmacy") (former DEA Certificate of Registration BC7126457). On average, Cardinal sold Brooks Pharmacy approximately 59,264 dosage units of oxycodone per month during the same time period.

5. Notwithstanding the large quantities of controlled substances ordered by Cardinal's top retail pharmacy customers, Cardinal failed to conduct meaningful due diligence to ensure that the controlled substances were not diverted into other than legitimate channels, including Cardinal's failure to conduct due diligence of its retail pharmacy chain customers. Furthermore, Cardinal failed to detect and report suspicious orders of oxycodone products by its pharmacy customers, as required by 21 C.F.R. §1301.74(b). In addition, Cardinal's conduct described herein violated the provisions of the Administrative Memorandum of Agreement.

6. In addition to the legal authorities cited above, the following Final Order provides a summary of the legal basis for this action: *Southwood Pharmaceuticals, Inc.*, 72 Fed. Reg. 36,487 (2007).

IN view of the foregoing, and pursuant to 21 U.S.C. §§ 823(f) and 824(a)(4), it is my preliminary finding that Cardinal's continued registration is inconsistent with the public interest. Under the facts and circumstances described herein, it is my conclusion that Cardinal's continued registration while these proceedings are pending constitutes an imminent danger to the public health and safety. *See* 21 U.S.C. § 824(d). Accordingly, pursuant to the provisions of 21 U.S.C. § 824(d) and 21 C.F.R. § 1301.36(e), and the authority granted me under 28 C.F.R. § 0.100, DEA Certificate of Registration RC0182080 is hereby suspended, effective immediately. Such suspension shall remain in effect until a final determination is reached in these proceedings.

PURSUANT to 21 U.S.C. § 824(f) and 21 C.F.R. § 1301.36(f), the Special Agents and Diversion Investigators of the DEA who serve this Order to Show Cause and Immediate Suspension of Registration are authorized to place under seal or to remove for safekeeping all controlled substances that Cardinal possesses pursuant to the registration which I have herein suspended. The said Agents and Investigators are also directed to take into their possession Cardinal's DEA Certificate of Registration RC0182080 and any unused order forms.

THE following procedures are available to you in this matter:

1. Within 30 days after the date of receipt of this Order to Show Cause and Immediate Suspension of Registration, Cardinal may file with the DEA a written request for a hearing in the form set forth in 21 C.F.R. § 1316.47. *See* 21 C.F.R. § 1301.43(a). If Cardinal fails to file such a request, the hearing shall be cancelled in accordance with paragraph 3, below.

2. Within 30 days after the date of receipt of this Order to Show Cause and Immediate Suspension of Registration, Cardinal may file with the DEA a waiver of hearing together with a written statement regarding its respective positions on the matters of fact and law involved. *See* 21 C.F.R. § 1301.43(c).

3

CAH_MDL2804_00641508

3.  Should Cardinal decline to file a request for a hearing or, should Cardinal request a hearing and then fail to appear at the designated hearing, Cardinal shall be deemed to have waived the right to a hearing and the DEA may cancel such hearing, and I may enter my final order in this matter without a hearing based upon the evidence presented to me. *See* 21 C.F.R. §§ 1301.43(d) and 1301.43(e).

Correspondence concerning this matter, including requests referenced in paragraphs 1 and 2 above, should be addressed to the Hearing Clerk, Office of Administrative Law Judges, Drug Enforcement Administration, 8701 Morrissette Drive, Springfield, VA 22152. Matters are deemed filed upon receipt by the Hearing Clerk. *See* 21 C.F.R. § 1316.45. A copy of the same shall also be served on the Government counsel listed below and be addressed to the Office of Chief Counsel, Diversion and Regulatory Litigation, 8701 Morrissette Drive, Springfield, VA 22152.

Michele M. Leonhart
Administrator
Drug Enforcement Administration


cc:  Hearing Clerk, Office of Administrative Law Judges
     Dedra S. Curteman, Counsel for the Government
     Carrie A. Bland, Counsel for the Government

4

CAH_MDL2804_00641509

# REQUEST FOR HEARING

Any person desiring a hearing with regard to an Order to Show Cause must, within thirty (30) days from receipt of the Order to Show Cause, file a request for a hearing in the following format:

[DATE]

DEA Headquarters
Office of the Administrative Law Judges
Hearing Clerk
8701 Morrissette Drive
Springfield, Virginia 22152

Dear Madam:

The undersigned, [Name of person], hereby requests a hearing in the matter of [Identification of the proceeding].

(A) [State with particularity the interest of the person in the proceeding.]

(B) [State with particularity of the objections or issues, if any concerning which the person desires to be heard.]

(C) [State briefly the position of the person with regard to the particular objections or issues.]

(D) [Name (either registrant, applicant, or attorney), address (including street address, city, state, and zip code), and telephone number (including area code) of person to whom all subsequent notices or mailings in this proceeding should be sent.]

Respectfully yours,

[Signature of registrant, applicant or attorney]

Note: Pursuant to 21 CFR 1316.47(b), the Administrative Law Judge, upon request and showing of good cause, may grant a reasonable extension of time allowing for response to an Order to Show Cause.

# *Cardinal Health, Inc. v. Holder*

# *Attachment 16*
# *to*
# *Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction*

CAH_MDL2804_00641511

Comparison of Monthy Sales by Cardinal Health, DEA Number RC0182080 of Oxycodone
January 1, 2008 – October 31, 2011

| Years | Month | Oxycodone 30mg | | | Remaining Oxycodone Drug Strength (Excluding Oxycodone 30mg) | | | All Oxycodone | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Number of Pharmacies | Total Dosage Units | Average | Number of Pharmacies | Total Dosage Units | Average | Number of Pharmacies | Total Dosage Units | Average |
| 2008 | Oct | 6 | 3,800 | 633 | 16 | 13,600 | 850 | 16 | 17,400 | 1,088 |
| | Nov | 902 | 1,336,200 | 1,481 | 1,902 | 5,682,340 | 2,988 | 1,918 | 7,018,540 | 3,659 |
| | Dec | 1,152 | 1,789,600 | 1,553 | 2,002 | 7,161,120 | 3,577 | 2,019 | 8,950,720 | 4,433 |
| 2009 | Jan | 1,538 | 2,318,800 | 1,508 | 2,003 | 6,425,660 | 3,208 | 2,041 | 8,744,460 | 4,284 |
| | Feb | 1,504 | 2,308,900 | 1,535 | 1,948 | 4,946,440 | 2,539 | 2,023 | 7,255,340 | 3,586 |
| | Mar | 914 | 1,277,200 | 1,397 | 2,071 | 8,435,260 | 4,073 | 2,075 | 9,712,460 | 4,681 |
| | Apr | 1,023 | 1,974,400 | 1,930 | 2,053 | 7,609,420 | 3,706 | 2,059 | 9,583,820 | 4,655 |
| | May | 913 | 1,745,700 | 1,912 | 1,766 | 6,677,060 | 3,781 | 1,785 | 8,422,760 | 4,719 |
| | Jun | 910 | 1,757,600 | 1,931 | 1,904 | 6,810,340 | 3,577 | 1,916 | 8,567,940 | 4,472 |
| | Jul | 914 | 1,845,400 | 2,019 | 1,882 | 6,915,740 | 3,675 | 1,892 | 8,761,140 | 4,631 |
| | Aug | 1,165 | 2,017,300 | 1,732 | 1,848 | 6,281,020 | 3,399 | 1,927 | 8,298,320 | 4,306 |
| | Sep | 987 | 2,326,400 | 2,357 | 1,764 | 6,875,380 | 3,898 | 1,812 | 9,201,780 | 5,078 |
| | Oct | 974 | 2,275,700 | 2,336 | 1,801 | 6,845,880 | 3,801 | 1,828 | 9,121,580 | 4,990 |
| | Nov | 802 | 1,708,500 | 2,130 | 1,514 | 5,634,000 | 3,721 | 1,563 | 7,342,500 | 4,698 |
| | Dec | 893 | 2,217,300 | 2,483 | 1,591 | 6,685,440 | 4,202 | 1,620 | 8,902,740 | 5,496 |
| 2010 | Jan | 748 | 1,892,400 | 2,530 | 1,622 | 5,948,800 | 3,668 | 1,629 | 7,841,200 | 4,814 |
| | Feb | 899 | 1,956,600 | 2,176 | 1,522 | 5,773,220 | 3,793 | 1,587 | 7,729,820 | 4,871 |
| | Mar | 834 | 2,139,700 | 2,566 | 1,596 | 6,900,640 | 4,324 | 1,634 | 9,040,340 | 5,533 |
| | Apr | 835 | 2,042,200 | 2,446 | 1,636 | 6,472,320 | 3,956 | 1,659 | 8,514,520 | 5,132 |
| | May | 1,202 | 2,390,300 | 1,989 | 1,575 | 5,833,080 | 3,704 | 1,711 | 8,223,380 | 4,806 |
| | Jun | 1,086 | 2,830,300 | 2,606 | 1,543 | 6,635,360 | 4,300 | 1,650 | 9,465,660 | 5,737 |
| | Jul | 1,120 | 3,630,600 | 3,242 | 1,736 | 6,768,900 | 3,899 | 1,770 | 10,399,500 | 5,875 |
| | Aug | 926 | 3,835,900 | 4,142 | 1,603 | 6,883,460 | 4,294 | 1,637 | 10,719,360 | 6,548 |
| | Sep | 868 | 3,941,600 | 4,541 | 1,832 | 7,360,740 | 4,018 | 1,839 | 11,302,340 | 6,146 |
| | Oct | 849 | 3,703,600 | 4,362 | 1,575 | 6,477,740 | 4,113 | 1,583 | 10,181,340 | 6,432 |
| | Nov | 864 | 3,624,900 | 4,195 | 1,655 | 6,707,200 | 4,053 | 1,673 | 10,332,100 | 6,176 |
| | Dec | 1,115 | 4,285,100 | 3,843 | 1,708 | 7,145,680 | 4,184 | 1,776 | 11,430,780 | 6,436 |
| 2011 | Jan | 1,305 | 4,030,800 | 3,089 | 1,627 | 6,301,280 | 3,873 | 1,769 | 10,332,080 | 5,841 |
| | Feb | 1,347 | 4,189,600 | 3,110 | 1,675 | 5,851,760 | 3,494 | 1,822 | 10,041,360 | 5,511 |
| | Mar | 882 | 4,167,100 | 4,725 | 1,766 | 7,360,340 | 4,168 | 1,779 | 11,527,440 | 6,480 |
| | Apr | 889 | 4,148,500 | 4,666 | 1,701 | 6,141,140 | 3,610 | 1,711 | 10,289,640 | 6,014 |
| | May | 881 | 3,943,700 | 4,476 | 1,549 | 6,252,640 | 4,037 | 1,567 | 10,196,340 | 6,507 |
| | Jun | 950 | 4,337,100 | 4,565 | 1,685 | 6,990,760 | 4,149 | 1,720 | 11,327,860 | 6,586 |
| | Jul | 869 | 3,930,000 | 4,522 | 1,661 | 6,226,840 | 3,749 | 1,677 | 10,156,840 | 6,057 |
| | Aug | 889 | 4,191,120 | 4,714 | 1,517 | 6,623,920 | 4,366 | 1,536 | 10,815,040 | 7,041 |
| | Sep | 851 | 4,000,420 | 4,701 | 1,505 | 6,136,980 | 4,078 | 1,526 | 10,137,400 | 6,643 |
| | Oct | 862 | 3,243,800 | 3,763 | 1,608 | 5,743,920 | 3,572 | 1,634 | 8,987,720 | 5,500 |
| | Nov | 867 | 2,712,300 | 3,128 | 1,426 | 5,865,840 | 4,113 | 1,448 | 8,578,140 | 5,924 |
| | Dec | 826 | 2,231,700 | 2,702 | 1,429 | 5,828,440 | 4,079 | 1,455 | 8,060,140 | 5,540 |

Date Prepared: 12/14/2011
Drug Enforcement Administration, Office of Diversion Control, Pharmaceutical Investigations Section, Targeting and Analysis Unit
Source: ARCOS

CAH_MDL2804_00641512

Comparison of Monthly Sales by Cardinal Health, DEA Number RC0182080 of Oxycodone
January 1, 2008 — October 31, 2011

| Years | Month | Oxycodone 30mg | | | Remaining Oxycodone Drug Strength (Excluding Oxycodone 30mg) | | | All Oxycodone | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Number of Pharmacies | Total Dosage Units | Average | Number of Pharmacies | Total Dosage Units | Average | Number of Pharmacies | Total Dosage Units | Average |
| Grand Total | | 37,361 | 108,302,140 | 2,899 | 64,817 | 247,229,700 | 3,814 | 66,286 | 355,531,840 | 5,364 |

Date Prepared: 12/14/2011
Drug Enforcement Administration, Office of Diversion Control, Pharmaceutical Investigations Section, Targeting and Analysis Unit
Source: ARCOS

CAH_MDL2804_00641513

# *Cardinal Health, Inc. v. Holder*

# *Attachment 17*
# *to*
# *Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction*

CAH_MDL2804_00641514

2009 – 2011 Customers

AHSSHC, BA9842445

HOLIDAY CVS LLC #5195, BC6988298

AMTRAK STATION

WINN DIXIE, BW0911013

WALGREENS, FW1126994

WALGREEN'S STORE SANFORD, BW4293077

HOLIDAY CVS LLC #219,  BC5289055

WALGREEN'S STORE SANFORD, AW6330928

CVS/pharmacy      (1)

Walmart Supercenter    (2)

Walgreens Store Sanford    (3)

Publix Pharmacy   (4)

Rx Plus Pharmacy    (5)

Tru-Valu Drugs  (6)

Walgreens Store Sanford    (7)

Target Pharmacy    (8)

Walgreens Store Sanford    (9)

Central Florida Family Health Center  (10)

Winn-Dixie   (11)

Discount Rx   (12)

CVS/pharmacy   (13)

1601 Lake Markham Rd   (14)
Sanford, FL 32771

Walmart Pharmacy   (15)

Sam's Club   (16)

Amtrak (Auto Train) - SFA

Case 1:12-cv-00185-RBW   Document 14-20   Filed 02/10/12   Page 2 of 4

CAH_MDL2804_00641515

CAH_MDL2804_00641516

## Sales to Pharmacies in Sanford, Florida

| Pharmacy's DEA Number | Pharmacy's Name | City | Sales by Cardinal Health (RC0182080) | Sales by Remaining Suppliers | Dosages Units |
|---|---|---|---|---|---|
| BC5289055 | HOLIDAY CVS, L.L.C. | SANFORD | 1,258,600 | 0 | 1,258,600 |
| BV9473985 | VANDANA INC | SANFORD | 0 | 897,000 | 897,000 |
| AT8818467 | TRU-VALU DRUGS OF SANFORD | SANFORD | 0 | 580,700 | 580,700 |
| BW4293077 | WALGREEN CO. | SANFORD | 14,600 | 244,800 | 259,400 |
| BW0911013 | WINN DIXIE STORES, INC. | SANFORD | 206,800 | 8,000 | 214,800 |
| BA9842445 | AHSSHC | SANFORD | 125,900 | 0 | 125,900 |
| BC6988298 | HOLIDAY CVS, L.L.C. | SANFORD | 104,500 | 0 | 104,500 |
| BA6985850 | ALBERTSONS LLC #04471 | SANFORD | 0 | 104,300 | 104,300 |
| AW6330928 | WALGREEN CO. | SANFORD | 10,000 | 55,300 | 65,300 |
| FW1126994 | WALGREEN CO | SANFORD | 7,400 | 54,400 | 61,800 |
| BS7997666 | SAM'S PHARMACY 10-4785 | SANFORD | 0 | 48,200 | 48,200 |
| BW8619807 | WAL-MART PHARMACY 10-3207 | SANFORD | 0 | 43,900 | 43,900 |
| BP6561193 | PUBLIX SUPER MARKET | SANFORD | 0 | 40,000 | 40,000 |
| BW5455919 | WAL-MART PHARMACY 10-0857 | SANFORD | 0 | 38,900 | 38,900 |
| BT9112878 | TARGET STORES A DIV.OF TARGET CORP. | SANFORD | 0 | 37,900 | 37,900 |
| AS7962005 | CENTRAL FLA FAMILY HEALTH | SANFORD | 0 | 0 | 0 |
| BT9005720 | TEAMCARE INFUSION ORLANDO, INC | SANFORD | 0 | 0 | 0 |
| **2009 Total Dosage Units** | | | 1,727,800 | 2,153,400 | 3,881,200 |

| Pharmacy's DEA Number | Pharmacy's Name | City | Sales by Cardinal Health (RC0182080) | Sales by Remaining Suppliers | Dosages Units |
|---|---|---|---|---|---|
| BC5289055 | HOLIDAY CVS, L.L.C. | SANFORD | 2,048,100 | 0 | 2,048,100 |
| BV9473985 | VANDANA INC | SANFORD | 0 | 954,500 | 954,500 |
| BC6988298 | HOLIDAY CVS, L.L.C. | SANFORD | 885,900 | 0 | 885,900 |
| AT8818467 | TRU-VALU DRUGS OF SANFORD | SANFORD | 0 | 794,600 | 794,600 |
| BW4293077 | WALGREEN CO. | SANFORD | 13,800 | 371,200 | 385,000 |
| FW1126994 | WALGREEN CO | SANFORD | 5,400 | 162,300 | 167,700 |
| BA9842445 | AHSSHC | SANFORD | 147,420 | 0 | 147,420 |
| BS7997666 | SAM'S PHARMACY 10-4785 | SANFORD | 0 | 71,100 | 71,100 |
| BW8619807 | WAL-MART PHARMACY 10-3207 | SANFORD | 0 | 68,800 | 68,800 |
| BT9112878 | TARGET STORES A DIV.OF TARGET CORP. | SANFORD | 0 | 61,600 | 61,600 |
| AW6330928 | WALGREEN CO. | SANFORD | 900 | 48,200 | 49,100 |
| BP6561193 | PUBLIX SUPER MARKET | SANFORD | 0 | 33,500 | 33,500 |
| BW5455919 | WAL-MART PHARMACY 10-0857 | SANFORD | 0 | 30,500 | 30,500 |
| BW0911013 | WINN DIXIE STORES, INC. | SANFORD | 0 | 19,300 | 19,300 |
| BA6985850 | ALBERTSONS LLC #04471 | SANFORD | 0 | 4,500 | 4,500 |
| AS7962005 | CENTRAL FLA FAMILY HEALTH | SANFORD | 0 | 0 | 0 |
| BT9005720 | TEAMCARE INFUSION ORLANDO, INC | SANFORD | 0 | 0 | 0 |
| **2010 Total** | | | 3,101,520 | 2,620,100 | 5,721,620 |

| Sales to Pharmacies in Sanford, Florida | | | | | |
|---|---|---|---|---|---|
| Pharmacy's DEA Number | Pharmacy's Name | City | Sales by Cardinal Health (RC0182080) | Sales by Remaining Suppliers | Dosages Units |
| BC5289055 | HOLIDAY CVS, L.L.C. | SANFORD | 1,802,100 | 0 | 1,802,100 |
| BC6988298 | HOLIDAY CVS, L.L.C. | SANFORD | 1,210,400 | 0 | 1,210,400 |
| BW4293077 | WALGREEN CO. | SANFORD | 9,900 | 465,900 | 475,800 |
| AT8818467 | TRU-VALU DRUGS OF SANFORD | SANFORD | 0 | 449,360 | 449,360 |
| BV9473985 | VANDANA INC | SANFORD | 0 | 256,000 | 256,000 |
| FW1126994 | WALGREEN CO | SANFORD | 3,200 | 201,700 | 204,900 |
| AW6330928 | WALGREEN CO. | SANFORD | 2,600 | 173,900 | 176,500 |
| BA9842445 | AHSSHC | SANFORD | 115,920 | 41,700 | 157,620 |
| BT9112878 | TARGET STORES A DIV.OF TARGET CORP. | SANFORD | 0 | 100,200 | 100,200 |
| BW8619807 | WAL-MART PHARMACY 10-3207 | SANFORD | 0 | 99,200 | 99,200 |
| BS7997666 | SAM'S PHARMACY 10-4785 | SANFORD | 0 | 52,100 | 52,100 |
| BW5455919 | WAL-MART PHARMACY 10-0857 | SANFORD | 0 | 30,500 | 30,500 |
| BP6561193 | PUBLIX SUPER MARKET | SANFORD | 0 | 25,700 | 25,700 |
| BW0911013 | WINN DIXIE STORES, INC. | SANFORD | 0 | 14,800 | 14,800 |
| AS7962005 | CENTRAL FLA FAMILY HEALTH | SANFORD | 0 | 0 | 0 |
| BT9005720 | TEAMCARE INFUSION ORLANDO, INC | SANFORD | 0 | 0 | 0 |
| 2011 Total | | | 3,144,120 | 1,911,060 | 5,055,180 |

* There were Seven (7) Total Pharmacies in the City of Sanford, Florida that Purchased Oxycondone from Cardinal Health-Lakeland between 01/01/2009-12/31/2011

CAH_MDL2804_00641517

# Cardinal Health, Inc. v. Holder

## Attachment 18
## to
## Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

CAH_MDL2804_00641518



# *Cardinal Health, Inc. v. Holder*

# *Attachment 19*
# *to*
# *Defendants' Opposition to Plaintiff's*
# *Motion for Preliminary Injunction*

CAH_MDL2804_00641520



CAH_MDL2804_00641521

*Cardinal Health, Inc. v. Holder*

*Attachment 20*
*to*
*Defendants' Opposition to Plaintiff's*
*Motion for Preliminary Injunction*

CAH_MDL2804_00641522



Case: 1:18-cv-00185-RBW Document #: 23 Filed: 02/10/12 Page 2 of 5

| Document Title | | Issue Date | Document Number |
|---|---|---|---|
| **SALES – HIGHLIGHT REPORT** | | 01/07/10 | PDQRA-SAD-C006 |
| Org. Office | | Previous Issue | Page | Change Number |
| Pharmaceutical Distribution | | 06/09/09 | 1 of 4 | DCN-2523 |

**1.0 PURPOSE** The Federal Controlled Substances Act requires pharmaceutical wholesalers to maintain effective controls to guard against the diversion of controlled substances. As part of this requirement, Cardinal Health has developed a Suspicious Order Monitoring (SOM) program to identify orders of unusual size, pattern, and/or frequency. This policy provides process requirements for the use of the Highlight Report and any subsequent activities.

**2.0 SCOPE** This policy applies to Sales personnel and DC Compliance Officers.

**3.0 INCLUDED ATTACHMENTS AND FORMS** None

**4.0 POLICY** The Anti-Diversion team, within QRA, Supply Chain Integrity, is responsible for the continuous reporting of threshold events identified during the execution of the Suspicious Order Monitoring (SOM) program. The reporting encompasses two components: 1) Internal reports that assist in the evaluation of threshold events; and 2) communication of the threshold events to the Sales department.

**4.1 Definitions**

**Dialogue Event** Is a notification when a customer's order accrual for the month has reached a pre-determined percentage of their threshold. A customer's threshold number, or the pre-determined percentage at which notification is made are never shared with the customer. The dialogue event allows for the request and collection of necessary information that will help Cardinal understand whether a threshold needs to be altered or whether the customer's orders might be suspicious.

**Held Order** A held order occurs when a customer's accrual for a drug family in a given month surpasses the assigned QRA threshold limit. When this occurs, the order that exceeds the threshold limit is held pending Regulatory Review. Subsequent orders within the same drug family will be held as a continuation of the original event. These orders will not trigger a notification to sales but will appear as "held pending regulatory review" on customer invoice.

**Threshold Event** Is defined as the initial held order created by a DEA #, Base Code, Threshold Limit combination.

**DEA Limit Over Threshold Report** A report generated by members of IT that contains all threshold events from a specified date.

**Customer Profile** A report generated by QRA that contains various background, licensing, and analytical metrics relevant to the customer that assist in the evaluation of threshold events.

**Distrack Held Order Report** A report generated by QRA that contains all current orders held as a result of the customer's accrual for a drug family exceeding the assigned QRA threshold limit.

For Use by Pharmaceutical Distribution (excluding Pharmaceutical Repackaging, Specialty Pharmaceutical Services, Specialty Pharmaceutical Distribution, Specialty Scripts and Nuclear Pharmacy) This document contains proprietary information. It may not be reproduced or disclosed without prior written approval by the quality head of the business segment. Unofficial Copy if Printed.
**>>THE USER OF THIS DOCUMENT IS RESPONSIBLE FOR CHECKING THE CURRENT ISSUE DATE BEFORE USE<<**



| Document Title | Issue Date | Document Number |
|---|---|---|
| **SALES – HIGHLIGHT REPORT** | 01/07/10 | PDQRA-SAD-C006 |

| Org. Office | Previous Issue | Page | Change Number |
|---|---|---|---|
| Pharmaceutical Distribution | 06/09/09 | 2 of 4 | DCN-2523 |

## 4.2 Process Map



### 4.3 Procedures for Reporting

The following procedures outline the process for the Salesperson responding to the Highlight Report. Highlight Reports illustrate order history and is not related to Threshold Events.

#### 4.3.1 Highlight Report Monitoring

1. If the report does not highlight any particular customer for each respective salesperson, then the salesperson continues to monitor all customers for the Anti-Diversion alert signals

   a. **Anti-Diversion alert signals:**

   - Pharmacies with minimal or no front end merchandise.
   - Pharmacies with little or no walk-in business.
   - Pharmacies with primarily cash customers.
   - Pharmacies ordering a high percentage of controlled substances relative to non-controlled substances.
   - Pharmacies ordering excessive quantities of a limited variety of controlled substances.
   - One or more practitioners writing a disproportionate share of the prescriptions for controlled substances being filled;
   - The pharmacy solicits buyers of controlled substances via the Internet.

2. Threshold Events and Highlight Reports may not be related. Each highlighted customer will fall into one of two categories: red flag

For Use by Pharmaceutical Distribution (excluding Pharmaceutical Repackaging, Specialty Pharmaceutical Services, Specialty Pharmaceutical Distribution, Specialty Scripts and Nuclear Pharmacy) This document contains proprietary information. It may not be reproduced or disclosed without prior written approval by the quality head of the business segment. Unofficial Copy if Printed.
**>>THE USER OF THIS DOCUMENT IS RESPONSIBLE FOR CHECKING THE CURRENT ISSUE DATE BEFORE USE<<**

CAH_MDL2804_00641524



Case 1:18-cv-00785-RBW Document 23-17 Filed 02/10/12 Page 4 of 5

| Document Title | | Issue Date | Document Number |
|---|---|---|---|
| **SALES – HIGHLIGHT REPORT** | | 01/07/10 | PDQRA-SAD-C006 |
| Org. Office | | Previous Issue | Page | Change Number |
| Pharmaceutical Distribution | | 06/09/09 | 3 of 4 | DCN-2523 |

customers or yellow flag customers.

**4.3.2 Red Flag Customers**: 15% increase in sales (at least $10,000) and 20% or more increase in dosage units for controlled substance / List one chemical orders.

1. Salesperson must visit the customer within 30 days to investigate for potential diversion.

   - Customers appearing on multiple Red Flag reports within the same fiscal quarter will only require one site visit. Subsequent site visits within the same quarter are at the salesperson's discretion or at the specific request of QRA.

2. Salesperson must contact Corporate QRA and the respective DC Compliance Officer to report results of the visit if signs of diversion are present.

   - DC Compliance Officers will each attend up to three sales site visits per fiscal quarter with Sales

3. Salesperson must complete the online site visit survey following each visit: http://my.cardinalhealth.net/CustomerVisit

**4.3.3 Yellow Flag Customers**: 15% increase in sales (at least $10,000) and 10-19% increase in dosage units for controlled substance / List one chemical orders

1. Salesperson must contact the customer within 30 days to better understand the increased ordering trends and investigate for potential sigs of diversion, but a site visit is not required.

2. If the customer has been a yellow flag for consecutive months:

   - Salesperson must visit the customer within 30 days to investigate for potential diversion.
   - Salesperson will contact Corporate QRA and the respective DC Compliance Officer and report results of the visit if signs of diversion are present.
   - Salesperson must complete the online site visit survey for each visit: http://my.cardinalhealth.net/CustomerVisit.

**4.4 Responsibility** On an on-going, continuous basis, each individual Sales Representative is responsible for the execution of this SOP.

**5.0 APPLICABLE DOCUMENTS**

PDQRA-SAD-C005      Sales – Early Dialogue

Customer Visit Survey      http://my.cardinalhealth.net/CustomerVisit

For Use by Pharmaceutical Distribution (excluding Pharmaceutical Repackaging, Specialty Pharmaceutical Services, Specialty Pharmaceutical Distribution, Specialty Scripts and Nuclear Pharmacy) This document contains proprietary information. It may not be reproduced or disclosed without prior written approval by the quality head of the business segment. Unofficial Copy if Printed.
**>>THE USER OF THIS DOCUMENT IS RESPONSIBLE FOR CHECKING THE CURRENT ISSUE DATE BEFORE USE<<**


CardinalHealth

| Document Title | Issue Date | Document Number |
|---|---|---|
| **SALES – HIGHLIGHT REPORT** | 01/07/10 | PDQRA-SAD-C006 |

| Org. Office | Previous Issue | Page | Change Number |
|---|---|---|---|
| Pharmaceutical Distribution | 06/09/09 | 4 of 4 | DCN-2523 |

Approvals on file in the Pharmaceutical Distribution Document Center
Approvers:   Michael Mone'

Owner:   Nicholas Rausch
Doc Center:   Jason Paul Snouffer

Change History
DCN-2523   01/07/10   Revised section 4.3. Updated to conform to current Cardinal Health Pharmaceutical restructuring.
Updated document number from HSCSQRA-CAD-C006 to PDQRA-CAD-C006.
DCN-2422   06/09/09   Complete re-write of entire procedure to conform to existing Cardinal Health practices.
DCN-2291   12/22/08   Initial release of new procedure, HSCSQRA-SAD-C006.

For Use by Pharmaceutical Distribution (excluding Pharmaceutical Repackaging, Specialty Pharmaceutical Services, Specialty Pharmaceutical Distribution, Specialty Scripts and Nuclear Pharmacy) This document contains proprietary information.  It may not be reproduced or disclosed without prior written approval by the quality head of the business segment. Unofficial Copy if Printed.
>>THE USER OF THIS DOCUMENT IS RESPONSIBLE FOR CHECKING THE CURRENT ISSUE DATE BEFORE USE<<

CAH_MDL2804_00641526