# EXHIBIT 28

DEA / INTERNET PHARMACY TIME LINE

8-22-05    Reardon / Giacalone meet w/ DEA
           (NOTES)    CDEA: explains doctor-patient relationship;
                      Our responsibility to control diversion
                      will contact us if they see concern in ABCs

10-05      Implement program — ongoing investigation / policy development

11-05      Reardon works w/ Tampa DEA on suspect customers

12-05      policy draft / presentation

12-22-05   email to Mapes seeking clarification on doctor/patient
           relationship

1-3-06     Mapes email response

8-06       phone call from Kyle Wright (and email)
           re wesity and customers of concern

9-16-06    Wright e-mail listing customers

8-17-06    Reardon e-mail re customer status

8-06       Wright phone call — no need for meeting
           CAH IS OK

3-07       DEA inspection Lakeland

4-26-07    phone call w/ Wright Brantly + Reardon
           re ABC — CAH doing right things,
           ~~(took notes)~~

4-30-07    Reardon email summarizing Wright call
           includes Hamilton letter

4-27-07    Letter to Jen Hamilton Miami DEA - follow up
           to DEA inspection

9-14-07    Reardon email re Houston DEA conference
           and need to enhance program → ABC

(need IT meetings)

CONFIDENTIAL

CAH MDL2804 02102254

**Reardon, Steve**

---

**From:** Reardon, Steve
**Sent:** Wednesday, December 14, 2005 4:55 PM
**To:** Strizzi, Dave
**Cc:** Brantley, Eric
**Subject:** RE: Call with Chris Mead re: DOJ drug diversion trends



Anti-diversion
status.doc

            Dave,

Eric put together the attached status report.  Let us know if this works.

Steve


-----Original Message-----
From: Strizzi, Dave
Sent: Tuesday, December 13, 2005 6:54 PM
To: Reardon, Steve
Subject: Fw: Call with Chris Mead re: DOJ drug diversion trends


Steve
Need some help.  Could you provide a high level review of the roll out process and the
customer actions we've taken recently?  I figured we had some time.... What do I know?
Thanks
Dave


-----Original Message-----
From: Parrish, Mark <Mark.Parrish@cardinal.com>
To: Strizzi, Dave <Dave.Strizzi@cardinal.com>
CC: Kennedy, Michael <Michael.Kennedy@cardinal.com>
Sent: Tue Dec 13 18:30:39 2005
Subject: FW: Call with Chris Mead re: DOJ drug diversion trends

Dave,

Looks like there will be more scrutiny on the issue of anti-diversion.  I know that we're
pushing forward on the implementation of the policy, but I think it would be appropriate
to have a well documented trail of our training, certification and incident processes.  I
suspect you already have much of this, but please get me a brief update.

Mark

 -----Original Message-----
From:      Fong, Ivan
Sent: Monday, December 12, 2005 9:04 PM
To:     Parrish, Mark; Kennedy, Michael; Brantley, Eric
Cc:     Trull, Ethan E; Goldsand, Corey; Walsh, Dan
Subject:     Call with Chris Mead re: DOJ drug diversion trends
Sensitivity:      Confidential

PRIVILEGED AND CONFIDENTIAL

**Redacted - Privileged**

1

# Redacted - Privileged

CONFIDENTIAL

CAH_MDL2804_02102256

# Cardinal Health
# Anti-Diversion Program Status
### December 14, 2005

- The Cardinal Health Anti-Diversion Compliance Policy has been finalized.

- The Cardinal Health Anti-Diversion training module has been drafted and is currently being reviewed by Corey Goldsand and Jon Pickhardt, Wachtell, Lipton, Rosen, & Katz.
  o The training will be rolled out the first of the year.
  o RVPs, Operations Management, Sales Teams, Credit Management, Chargebacks, Contracts, and any Cardinal Health associate whose job relates in any way to the sale of drugs at contract pricing will be trained.

- Several entities have been investigated or are currently under investigation for suspected diversion. These entities are as follows:
  o **Coastal Pharmacy Services**, N. Charleston, SC. Coastal Pharmacy Services had a spike in purchases of Lifescan diabetic test-strips in August 2005 and has been purchasing large quantities every month since August. Sales of test-strips to Coastal have been suspended pending a site visit with full disclosure of purchasing and sales records of test-strips. If customer does not comply by January 1st, 2006, sales will be discontinued permanently.
  o **Compounding International,** Bellmore, NY. Compounding International had a spike in purchases of DuoNeb during October 2005. Dey Labs contacted customer, but did not get an explanation for the spike in purchases. Dey notified Cardinal Health that Compounding International was no longer able to buy DuoNeb at contract pricing. The account has been closed.
  o **Master Compounding,** Richmond Hill, NY. Master Compounding was brought to the attention of the Compliance Coordinator during the investigation of Compounding International. Master Compounding is currently under investigation.
  o **Villa View,** California. Villa View has not been a customer of Cardinal Health since 2003. Villa View is currently under investigation as a result of a Cardinal Health employee's questioning by two FBI agents.

- A monitoring system is under development that will identify monthly purchases of drugs by a customer at contract pricing that exceed the preceding 12 month average by a factor of 20 percent.

- A parallel policy is being drafted for internet pharmacies.

- Training will be conducted on customer approval and oversight procedures for internet pharmacies along with the Anti-Diversion compliance training.

CONFIDENTIAL

- Several investigations of suspected internet pharmacies have been conducted. The results of these investigations are as follows:
  - o **Vin-Kash** (closed door pharmacy), **Vin-Kash Mailorder**, and a **Medicine Shoppe**, all in Florida and under common ownership. The Vin-Kash mailorder account was closed due to extremely large purchases of Hydrocodone and suspected internet activity. The DEA later revoked the DEA license for the account. The Medicine Shoppe and closed door pharmacy accounts are being monitored for suspicious activity.
  - o **ASAP**, Pinellas Park, FL. Conducted an investigation as a result of contact from DEA. Did not find suspicious purchase activity. The purchases on account are being monitored for suspicious activity.
  - o **Medipharm Rx,** Tampa, FL. Conducted an investigation as a result of contact from DEA. Account purchased in excess of 122,000 dosage units of Hydrocodone per month during September and October. Purchases have been temporarily limited to 5,000 dosage units per month pending further investigation. Medipharm was visited by the Compliance Coordinator on December 13th, 2005.  Findings are being documented.
  - o **North American Pharmaceuticals**, Miami, FL. Conducted an investigation as a result of contact from DEA. Account was closed.
  - o **RKR Holdings**, Clearwater, FL. Conducted an investigation as a result of contact from DEA. RKR purchased 6,800 dosage units of Hydrocodone in October. The purchases on account are being monitored for suspicious activity.
  - o **Sunshine RX**, Tampa, FL. Account was closed in October.

- Cardinal Health Pharmaceutical Distribution Centers are reviewing monthly ingredient limit excessive purchase reports and reporting to Compliance Coordinator any customer who purchases in excess of:
  - o 3,000 dosage units of phentermine a month
  - o 5,000 dosage units of hydrocodone a month
  - o 5,000 dosage units of alprazolam a month

**Reardon, Steve**

| | |
|---|---|
| **From:** | Brantley, Eric |
| **Sent:** | Monday, December 19, 2005 3:24 PM |
| **To:** | Reardon, Steve |
| **Subject:** | internet policy |

Steve,

Attached is the first draft of the internet pharmacy policy.



INTERNET
policy.doc

Eric Brantley
Manager
Quality & Regulatory Affairs
Cardinal Health
614-757-5624
FAX 614-652-4628

1

CONFIDENTIAL

CAH_MDL2804_02102259

# INTERNET PHARMACIES

# Customer Approval and Oversight Policy

CONFIDENTIAL

# TABLE OF CONTENTS

I.      Introduction

II.     Customer Approval

III.    Oversight

IV.     Reporting

V.      Investigations

          CAH_MDL2804_02102261

**Introduction**

This internet pharmacy approval and oversight policy sets forth certain guidelines and procedures that Cardinal Health Inc. has adopted as part of its effort to identify and monitor the purchasing activity of internet pharmacies it sells prescription drug product. The policy is intended to ensure compliance with any applicable laws and regulations, contractual obligations, and prevailing industry standards concerning internet pharmacies. Cardinal Health requires that the guidelines and procedures described in the policy be followed by each of its officers, employees, agents and consultants in pharmaceutical distribution sales, operations management, finance management, credit management, and contract positions (collectively, "associates").

Any questions about the policy or its applicability to a particular situation should be directed to a member of the legal staff or the Anti-Diversion Compliance Coordinator, Eric Brantley.

**Customer Approval**

In addition to regular new account application requirements, the following information must be obtained:
- Does the pharmacy operate a website where customers can order prescription drugs via the internet?
- Does the pharmacy supply prescription drugs to customers of other internet pharmacy websites?

If the answer is yes to one or both of the above, please consult with Compliance Coordinator prior to signing customer. The Compliance Coordinator will conduct further research of the potential customer.

In addition, the salesperson must visit the customer's site prior to the customer being approved in order to evaluate whether the customer's profile is accurate. During visit, salesperson should document any evidence of a mail-order operation at the pharmacy.

**Oversight**

After an internet pharmacy has been approved, Cardinal Health will monitor the customer for signs of suspected diversion. Although no single factor will conclusively establish diversion, some of the significant factors include:
- Does the pharmacy accept walk-in customers?
- What percentage of the pharmacy's drug purchases are controlled substances?
- Does the pharmacy purchase a wide range of products?
- Is the pharmacy ordering more than 3,000 dosage units of phentermine a month?
- Is the pharmacy ordering more than 5,000 dosage units of hydrocodone a month?
- Is the pharmacy ordering more than 5,000 dosage units of alprazolam a month?
- Does the pharmacy pick up orders rather than having them delivered?

**Reporting**

Suspected diversion or mail-order activity identified during the screening of potential customers or monitoring of an existing customer must be reported to the Compliance Coordinator. Although no single factor will conclusively establish diversion, some of the significant factors include:

- **Inquiries from Governmental Regulators:** Occasionally, Cardinal Health receives inquiries from government regulators concerning particular customers. Those inquiries may sometime reflect suspected diversion on the part of the regulator; particularly controlled substances.
- **Excessive Purchases:** Ingredient Limit Reports are to be reviewed monthly by each division. Any excessive purchases of the above mentioned ingredients over the above mentioned allowable dosage units must be reported to the Compliance Coordinator.
- **Significant Changes in Purchasing Patterns:** A striking and unexplained increase in the purchases of certain products may warrant further inquiry.
- **Affiliations with Internet Pharmacies or Wholesalers:** Affiliation with an internet pharmacy or wholesaler may suggest the possibility of drugs being diverted through the affiliated operation.

**Investigations**

The Compliance Coordinator may receive reports regarding suspected diversion from a number of different sources including his or her own monitoring efforts. The Compliance Coordinator will conduct an initial assessment of each instance of suspected diversion, and if the initial assessment suggests that diversion may have occurred, the Compliance Coordinator will undertake a further review and investigation. Depending on the circumstances of each case, the investigation may include any or all of the following components:

1. Collecting and reviewing the history of purchases by the customer;
2. Collecting and reviewing the history of excessive purchases of hydrocodone, alprazolam, and phentermine by the customer;
3. Confirming pharmacy and/or wholesale licensure for the customer and its affiliates;
4. Collecting and reviewing customer files maintained at the distribution center servicing the customer;
5. Interviewing the sales director, manager, and/or consultant responsible for the customer account;
6. Where appropriate, requesting an explanation from the customer and/or conducting a site visit; and
7. Checking the pharmacy website for appropriate information.

At the conclusion of the investigation, the Compliance Coordinator will issue a report to Cardinal Health's Vice President of Quality and Regulatory Affairs, with a judgment as to whether diversion has occurred and the recommended corrective action.

CAH_MDL2804_02102263

**Reardon, Steve**

| | |
|---|---|
| **From:** | Brantley, Eric |
| **Sent:** | Tuesday, December 20, 2005 1:34 PM |
| **To:** | Reardon, Steve |
| **Subject:** | FW: internet presentation |

For your review.

-----Original Message-----
**From:**      Miller, Kristeen
**Sent:**      Wednesday, December 14, 2005 10:50 AM
**To:**        Brantley, Eric
**Subject:**   internet presentation



nternet Pharm - Eric
B.ppt

**Kristeen Nicholson-Miller**
Quality & Regulatory Affairs
Cardinal Health
614.757.7109 direct #
614.652.4396 fax #
kristeen.miller@cardinal.com

1

CONFIDENTIAL                                                    CAH_MDL2804_02102264



# Internet Pharmacy

Eric Brantley
Manager, Quality & Regulatory Affairs
Dec. 2005

CAH_MDL2804_02102265

CONFIDENTIAL

CAH_MDL2804_02102266

# Internet Pharmacies

- Related to an existing pharmacy
  - Walk-in patients with prescriptions
  - Some legitimate, some not

- Unrelated to brick and mortar pharmacy
  - No local patients or doctors
  - No walk-in business



CONFIDENTIAL

CAH_MDL2804_02102267

# **DEA Internet Policy**

- Prescriptions can only be issued by a doctor acting in the usual course of professional practice

- Prescription not issued in the usual course of professional practice is not valid

- An Internet questionnaire alone is not sufficient to legally prescribe controlled substances



3

CONFIDENTIAL

CAH_MDL2804_02102268

# **Issues to Consider**

- Frequency of orders
- Size of orders
- Range of products purchased
- Payment method
- Pharmacy location
- % controlled vs. % non-controlled
- Customer pick-up at distributor



CONFIDENTIAL

CAH_MDL2804_02102269

# Reporting Requirements

• Suspicious purchases

• Effective controls against diversion



CONFIDENTIAL

CAH_MDL2804_02102270

# Cardinal Policy

• Monitoring ingredient limit report

• Reporting to Compliance Coordinator



CONFIDENTIAL

**Reardon, Steve**

| | |
|---|---|
| **From:** | Michael.R.Mapes@usdoj.gov |
| **Sent:** | Thursday, December 22, 2005 1:42 PM |
| **To:** | Reardon, Steve |
| **Subject:** | Re: Internet Pharmacy Question |

Steve,

It is getting close,  I will discuss with legal and get back with you.

Thanks,

Mike

-----Original Message-----
From: Steve.Reardon@cardinal.com <Steve.Reardon@cardinal.com>
To: Mapes, Michael R. <Michael.R.Mapes@USDOJ.GOV>
Sent: Thu Dec 22 13:26:20 2005
Subject: Internet Pharmacy Question

Mike,

As we continue to address internet pharmacy issues we come up with different scenarios
regarding the doctor patient relationship.  Please review and advise as to whether or not
the internet pharmacy scenario described below meets the requirements for a valid doctor
patient relationship.

*       Patient goes online and fills out a questionnaire.
*       Questionnaire is reviewed by a doctor or a physician assistant contracted by the
pharmacy.
*       The doctor or physician assistant calls the patient for consultation.
*       Patient sends to the doctor a copy of their medical records with documentation of
physical exam and a copy of photo identification.
*       Prescription is written and sent to pharmacy.
*       Prescription is filled and mailed to patient.

Thank you for your time and assistance in this matter.
Steve


Stephen J. Reardon
Vice President
Quality & Regulatory Affairs
Cardinal Health
7000 Cardinal Place
Dublin, Ohio 43017
Tel        614-757-7101
Fax        614-652-4264
Cell       614-668-2044
steve.reardon@cardinal.com

1

CONFIDENTIAL

**Reardon, Steve**

| | |
|---|---|
| **From:** | Michael.R.Mapes@usdoj.gov |
| **Sent:** | Tuesday, January 03, 2006 7:56 AM |
| **To:** | Reardon, Steve |
| **Cc:** | Kyle.J.Wright@usdoj.gov |
| **Subject:** | RE: Internet Pharmacy Question |

Steve,

I discussed with legal counsel.  The determination is that the scenario described does not
meet the standard for legitimate doctor patient relationship.  There is not face to face
contact and examination between the patient and the prescribing doctor.

Let me know if you have any further questions,

Mike

-----Original Message-----
From: Steve.Reardon@cardinal.com [mailto:Steve.Reardon@cardinal.com]
Sent: Thursday, December 22, 2005 2:03 PM
To: Mapes, Michael R.
Subject: RE: Internet Pharmacy Question


Mike,

Thanks and have a great Holiday!

Steve

-----Original Message-----
From: Michael.R.Mapes@usdoj.gov [mailto:Michael.R.Mapes@usdoj.gov]
Sent: Thursday, December 22, 2005 1:42 PM
To: Reardon, Steve
Subject: Re: Internet Pharmacy Question


Steve,

It is getting close,  I will discuss with legal and get back with you.

Thanks,

Mike

-----Original Message-----
From: Steve.Reardon@cardinal.com <Steve.Reardon@cardinal.com>
To: Mapes, Michael R. <Michael.R.Mapes@USDOJ.GOV>
Sent: Thu Dec 22 13:26:20 2005
Subject: Internet Pharmacy Question

Mike,

As we continue to address internet pharmacy issues we come up with different scenarios
regarding the doctor patient relationship.  Please review and advise as to whether or not
the internet pharmacy scenario described below meets the requirements for a valid doctor
patient relationship.

*       Patient goes online and fills out a questionnaire.
*       Questionnaire is reviewed by a doctor or a physician assistant contracted by the
pharmacy.
*       The doctor or physician assistant calls the patient for consultation.
*       Patient sends to the doctor a copy of their medical records with documentation of

1

physical exam and a copy of photo identification.
*       Prescription is written and sent to pharmacy.
*       Prescription is filled and mailed to patient.

Thank you for your time and assistance in this matter.
Steve


Stephen J. Reardon
Vice President
Quality & Regulatory Affairs
Cardinal Health
7000 Cardinal Place
Dublin, Ohio 43017
Tel      614-757-7101
Fax      614-652-4264
Cell     614-668-2044
steve.reardon@cardinal.com

.

2

CAH_MDL2804_02102273

## ANTI-DIVERSION INVESTIGATION REPORT

December 6th, 2005

**Customer**

Vin-Kash Inc., Medicom Rx
5474 Williams Road, Suite 1A & 1B
Tampa, FL 33610

Vin-Kash Mail-order
5474 Williams Rd. Suite 19 & 16
Tampa, FL 33610

**Customer Profile**

- License(s):               Florida Pharmacy # PH21018 exp. 02/28/2007;
                            DEA# BV9045750, exp. 05/31/2007
                            Florida Pharmacy # PH21017 exp. 02/28/2007
                            DEA# BV9062097, exp. 05/31/2007
- Principal(s):             Vinesh Darji, owner
- Type of ownership:        Corporation
- Location(s):              Single location, Tampa, FL
- Affiliates:               None known
- Account History:          Cardinal customer for 15 mos. Mail-order since May 2005
- Servicing Division:       Lakeland, FL (11)
- Sales Contact:            Lenny Moro, Sales Representative
- Credit Limit:             Unknown
- Type of business:         Closed-door pharmacy; Mail order (internet pharmacy)
- Customer base:            Nursing Home & Assisted Living Facilities
- GPO contracts:            MHA Buying Group

**Issue**

Steve Reardon was contacted by the DEA regarding Vin-Kash on November 30th, 2005.
A look at six months of purchase history and excessive purchase reports reveal the
following:

### Vin-Kash Mail-order

Hydrocodone            DEA Limit is 5,000 dosage units

July 2005              12,000 dosage units
August 2005            9,400 dosage units
September 2005         11,400 dosage units
October 2005           122,000 dosage units

**Investigative Steps Completed**

1. Licensure was verified on December 1st, 2005

CONFIDENTIAL                                              CAH_MDL2804_02102274

2. 6 months sales history pulled on December 2nd, 2005 and reviewed.
3. Rob Betchley, Director of Operations at the Lakeland division was contacted on November 30th, 2005 and asked to provide information about the account. Copies of licenses and excessive purchase reports were received on December 1st, 2005 from Eileen Rizzo.
4. Lenny Moro, the Sales Representative responsible for the account was contacted on November 30th, 2005 and asked to provide information about the account.
5. Internet web searches were conducted of Vin-Kash and its owner on November 30th, 2005.

**Findings**

- A review of licensure confirmed that both Vin-Kash and Vin-Kash Mail-order are licensed as pharmacies in the state of Florida as well as with the DEA. Those licenses are current. Copies of State and DEA licenses are on file.
- The review of the last 6 months of Vin-Kash sales history and excessive purchase reports revealed excessive purchases of Hydrocodone starting in July 2005, especially in October 2005 (as shown in the above data). No significant spikes in the purchases of other products were noted.
- Lenny Moro, Sales Representative for the account, was interviewed on November 30th, 2005. Mr. Moro has been responsible for both Vin-Kash accounts from the beginning. Based on Mr. Moro's interview, the following findings are made:
  1. Mr. Darji informed Mr. Moro that he was selling via the internet through his mail-order account.
  2. Mr. Moro visited the Vin-Kash facility on October 21st, 2005. The facility houses both the closed door pharmacy and the mail-order business in adjoining suites.
  3. Mr. Moro has not observed any unusual or suspect activity by the Vin-Kash account.
- Lenny Moro visited the facility again on December 5th, 2005 and was told that the DEA had just shut down the mail-order business.

**Recommendation**

It has been determined that Vin-Kash mail-order is diverting Hydrocodone products purchased from Cardinal Health. This is based on the following factors, among others:

- Mr. Darji admitted to selling via the internet;
- Purchases of Hydrocodone products have exceeded the limits set by the DEA since July 2005 and purchases for October 2005 were extremely high.

It is the recommendation of the Compliance Coordinator that Cardinal Health notify Coastal Pharmacy that it intends to discontinue all sales to Vin-Kash mail-order, and the Vin-Kash closed door pharmacy account will be watched closely for possible diversion.

**Reardon, Steve**

| | |
|---|---|
| **From:** | Brantley, Eric |
| **Sent:** | Tuesday, December 06, 2005 2:03 PM |
| **To:** | Reardon, Steve |
| **Subject:** | Vin-Kash report |



Vin-Kash.doc

Eric Brantley
Manager
Quality & Regulatory Affairs
Cardinal Health
614-757-5624
FAX 614-652-4628

1

CONFIDENTIAL                                                                      CAH_MDL2804_02102276

CONFIDENTIAL



**Cardinal**Health

# Internet Pharmacy
## Approval and Oversight

Eric Brantley
Anti-Diversion Compliance Coordinator
April 2006

CAH_MDL2804_02102277

CAH_MDL2804_02102278

# **Introduction**

- August 22nd, 2005 meeting was held at DEA Headquarters to address internet pharmacies.

- Cardinal Health adopted certain guidelines and procedures as part of its effort to identify and monitor the purchasing activity of internet pharmacies it sells prescription drug product.



CONFIDENTIAL

CAH_MDL2804_02102279

# Introduction (cont'd)

- These guidelines are intended to ensure compliance with any applicable laws and regulations, contractual obligations, and prevailing industry standards concerning internet pharmacies.

- Cardinal Health requires that the guidelines and procedures be followed by each of its officers, employees, agents and consultants in pharmaceutical distribution sales, operations management, finance management, credit management and contract positions (collectively, "associates")



3

CONFIDENTIAL

CAH_MDL2804_02102280

# DEA Internet Policy

- Usual course of professional practice

  – Patient with a medical complaint

  – History

  – Physical examination

  – Nexus between complaint/history/exam and drug prescribed



CONFIDENTIAL

CAH_MDL2804_02102281

# DEA Internet Policy (cont'd)

- Prescriptions can only be issued by a doctor acting in the usual course of professional practice

- Prescription not issued in the usual course of professional practice is not valid

- Drugs dispensed pursuant to invalid prescriptions are not for legitimate medical purpose, the drugs are diverted



CardinalHealth

5

CONFIDENTIAL

# DEA Internet Policy (cont'd)

- 21 CFR 1301.74

- Requires that registrants design and operate system to identify suspicious orders.

- Report suspicious orders to DEA when discovered

- Reporting a suspicious order to DEA does not relieve the distributor of the responsibility to maintain effective controls against diversion


CardinalHealth

6

CAH_MDL2804_02102282

CONFIDENTIAL

CAH_MDL2804_02102283

# **DEA Internet Policy** (cont'd)

- The DEA registration of the distributor could be revoked under public interest grounds

- Any Distributor who is selling controlled substances that are being dispensed outside the course of professional practice must stop immediately



**Cardinal**Health

7

CONFIDENTIAL

CAH_MDL2804_02102284

# Customer Approval

- In addition to regular new account application requirements, the following information must be obtained:

  – Does the pharmacy operate a website where customers can order prescription drugs via the internet?

  – Does the pharmacy supply prescription drugs to customers of other internet pharmacy websites?

  If the answer is yes to one or both of the above, please consult with Compliance Coordinator prior to signing customer.



8

CONFIDENTIAL

CAH_MDL2804_02102285

# **Customer Approval** (cont'd)

- The Sales Consultant must visit the customer's site prior to the customer being approved in order to evaluate whether the customer's profile is accurate.

- During visit, Sales Consultant should document and report any evidence of a mail-order operation at the pharmacy.



CONFIDENTIAL

CAH_MDL2804_02102286

# Oversight

- After an internet pharmacy has been approved, Cardinal Health will monitor the customer for signs of suspected diversion. Although no single factor will conclusively establish diversion, some of the significant factors include:

    – Is the pharmacy ordering more than 3,000 dosage units of phentermine a month?

    – Is the pharmacy ordering more than 5,000 dosage units of hydrocodone a month?

    – Is the pharmacy ordering more than 5,000 dosage units of alprazolam a month?

    – What percentage of the pharmacy's drug purchases are controlled substances?



CONFIDENTIAL

# **Reporting**

- Suspected diversion identified during the screening of potential customers or monitoring of existing customers must be reported to the Compliance Coordinator.

  – Inquiries from Governmental Regulators

  – Excessive purchases

  – Significant changes in purchasing patterns

  – Affiliations with internet pharmacies or wholesalers


CardinalHealth

11

CAH_MDL2804_02102287

CONFIDENTIAL

# Investigations

- The Compliance Coordinator will conduct an initial assessment of each instance of suspected diversion. If the initial assessment suggests that diversion may have occurred, the Compliance Coordinator will undertake a further review and investigation.



CAH_MDL2804_02102288

CONFIDENTIAL

CAH_MDL2804_02102289

# Investigations (cont'd)

- The investigation may include any or all of the following components:

  - Collecting and reviewing purchase history of customer

  - Confirming licensure for the customer and its affiliates

  - Collecting and reviewing customer files maintained at the distribution center servicing customer

  - Interviewing the Sales Director, Manager, or Consultant responsible for the account

  - Where appropriate, requesting an explanation from customer and/or conducting a site visit


**Cardinal**Health

13

CONFIDENTIAL

CAH_MDL2804_02102290

# Company B

- Customer appeared on monthly ILR as purchasing large amounts of hydrocodone
- Company initiated investigation which revealed:
  - Spikes and significant purchases of hydrocodone during previous 6 months
  - Customer serviced long term care/assisted living facilities and also serviced an internet pharmacy – 40% of sales through internet
  - Drugs were purchased on GPO contract at discounted pricing and then sold through internet pharmacy
  - Facility was not licensed in states it shipped into
  - No legitimate prescription for internet sales



CardinalHealth

14

CONFIDENTIAL



# Questions?

CONFIDENTIAL

CAH_MDL2804_02102291

## Reardon, Steve

| | |
|---|---|
| **From:** | Brantley, Eric |
| **Sent:** | Monday, April 30, 2007 3:04 PM |
| **To:** | G-NSA-Retail VP's; G-NSA-Retail Directors; G-NSA-Retail Sales Managers; G-NSA-Retail Business Development Managers; G-NSA-Generic Market Managers; G-NSA-Market Development Managers; G-NSA-Retail Sales Support |
| **Cc:** | Reardon, Steve |
| **Subject:** | internet pharmacies |

All,

Please see the attachments regarding internet pharmacies and the suspension of AmeriSource Bergen's DEA Registration at their Orlando, Florida facility. A link has been provided to the Cardinal Health Internet Pharmacy Customer Approval and Oversight Policy. Please contact me if you have any questions.

http://internal.mps.cardinal.net/teams/qradocs/usdistribution/SOPs/FDA/FDA23.00.doc

Thank you,

Eric Brantley
Director, Quality & Regulatory Affairs
Cardinal Health
614-757-5624
FAX 614-652-4628

1/5/2008

CONFIDENTIAL