# EXHIBIT 43

# REDACTED



# McKesson Corporation

## Presentation to the U.S. Attorney's Office, Northern District of West Virginia and DEA

**March 12, 2014**

Confidential / Exempt from FOIA

For Settlement Purposes Only;  Subject to Fed.R.Evid. 408



HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409116



# AGENDA

- McKesson's Distribution Network

- McKesson's Regulatory Affairs Team

- Evolution of the CSMP Program in Light of DEA's Focus and the Growing Epidemic

- Next Steps

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# McKesson's Distribution Network

3

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409118



# McKesson's Distribution Network

- 28 customer facing distribution centers; 2 redistribution hubs

- Service approximately 25,000 pharmacies daily
  - Retail
  - Mail order
  - Hospital
  - Government

- Process 1.2 million order lines per night– electronic transmission from the customer

4

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# McKesson's Distribution Network



5

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# McKesson's Regulatory Affairs Team

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409121



# McKesson's Regulatory Affairs Team
## Pre-Settlement Discussions

- Don Walker, Senior Vice President Distribution Operations

- Bruce Russell, VP Regulatory Affairs

- Gary Hilliard, Director Regulatory Affairs

7

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409122



# McKesson's Regulatory Affairs Team
## 2007-2012

- Don Walker, Senior Vice President, Distribution Operations

- Bruce Russell, Senior Vice President, Operations

- Gary Hilliard, Director of Regulatory Affairs

- Tracy Jonas, Director of Regulatory Affairs (12/07)

- Regional Directors of Regulatory Affairs:
  - Tom McDonald- West Region (02/09)
  - Dave Gustin- North Central Region (12/07)
  - Michael Oriente- North East Region (12/07)
  - Bill de Gutierrez-Mahoney- South Region (12/07)
  - Linda Martin (Former DEA Investigator) – South Region (09/12)
  - Joe Lumpkin – North East Region (08/12)

8

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# McKesson's Regulatory Affairs Team
## Recent Additions

- Sr. Director Regulatory (East) - Gary Boggs (former DEA)

- Sr. Director Regulatory (West) - Lisa Young (former DEA)

- Sr. Director Regulatory (Nat'l Accts) - TBD

- Six Directors of Regulatory Affairs (three are former DEA)

- Two Analysts

- Ten Regulatory Affairs Managers

- Total full time resources - 30 employees

9

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409124



# Evolution of the CSMP Program in Light of DEA's Focus and the Growing Epidemic

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409125

**MCKESSON**

# 2007:  McKesson Launches LDMP



Dear Mr. Barber:

I have attached some important information on the progress of McKesson's implementation of the Lifestyle Drug Monitoring Program.  As I stated in our last conversation, McKesson has implemented this program "nationally" across its 30 distribution centers ("DC") throughout the country.

I have attached a copy of the following information:

- Amendment to the McKesson DC Operations Manual describing the standard operation procedures (SOPs) for the Lifestyle Drug Monitoring Program;
- PowerPoint presentation by Donald Walker, Senior Vice President of Distribution Operations, at McKesson's National Operations Conference in April 2007 (this included the entire distribution network leadership, managers and staff, 110 persons);



Confidential / Exempt from FOIA. Subject to FRE 408.                    MCK_WVA_000001

11



# 2007: McKesson Launches LDMP



HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409127



# September 19, 2007: Settlement Meeting

- Attendees for McKesson and DEA:
  - Don Walker and John Gilbert
  - Joe Rannazzisi, Linden Barber, Michael Mapes, Wayne Patrick and Gary Boggs

- Discussed revising suspicious order monitoring program
  - Prior DU-45 report
  - Modification to reports of excessive purchases

- Suspicious customers and the new focus: "Know your customer"

13



# DU-45 Report

```
PROGRAM DU45L600 VER 003                    MCKESSON CORPORATION                                           8813   PAGE   426
DATE 05/02/08  TIME 15:36:20    MONTHLY CONTROLLED SUBSTANCE SUSPICIOUS PURCHASE REPORT        REPORT DU45R05B
                                   SORTED BY DC, RETAIL ACCT MGR, GENERIC DESC
                                        PERIOD ENDING  04/08

ROUTE: 206    STOP: 005

FOUR SEASONS PHARMACY         RAM # 076   CUST # 401687
FOUR SEASONS PHARMACY         RAM # 076   CUST # 401687
300 MORRISON DRIVE                                                DC 813 - MCKESSON DRUG LANDOV
PRINCETON          WV    24740                                    7721 POLK AVE.
PHONE: 304-487-0015    DEA # BF6064769                            LANDOVER            MD    20785
                                                                  PHONE: 301-322-1100    DEA # PD0029567
DRUG ENFORCEMENT ADMINISTRATION
                                        (ADDRESS)                 (CITY, STATE)           (FAX NUMBER)
PURSUANT TO CFR21, S 1301.74(B), WE ARE SENDING A COPY OF THE MONTHLY CONTROLLED SUBSTANCE SUSPICIOUS PURCHASE REPORT FOR 04/08.
THIS REPORT REFLECTS PURCHASES FROM CUSTOMERS FOR SCHEDULES II-V CONTROLLED SUBSTANCES WHICH EXCEED THE ITEM MONTHLY AVERAGE FOR
THE CLASS OF TRADE. A LISTING OF THE PARAMETERS USED ARE AVAILABLE UPON REQUEST.
```

| INVOICE # | INV. DATE | ITEM # | NDC NUMBER | SELLING DESCRIPTION | GENERIC DESCRIPTION | UNIT | QTY | SCH |
|---|---|---|---|---|---|---|---|---|
| 56065 | 04/30/08 | 2793313 | 00591050305 | HYDROCOD+AP TB 10/650 WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |
| 47450 | 04/21/08 | 2793313 | 00591050305 | HYDROCOD+AP TB 10/650 WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |
| 96860 | 04/18/08 | 2793313 | 00591050305 | HYDROCOD+AP TB 10/650 WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |
| 51418 | 04/17/08 | 2793313 | 00591050305 | HYDROCOD+AP TB 10/650 WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 4 | III |
| 32624 | 04/11/08 | 2793313 | 00591050305 | HYDROCOD+AP TB 10/650 WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 2 | III |
| 38876 | 04/03/08 | 2793313 | 00591050305 | HYDROCOD+AP TB 10/650 WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |
| 97732 | 04/02/08 | 2793313 | 00591050305 | HYDROCOD+AP TB 10/650 WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |

```
                              ITEM MONTHLY AVG :      3.19174   FACTOR :  3.00    ITEM TOTAL :      11
                                                                                 ITEM LIMIT :    9.57
```

| 38876 | 04/03/08 | 2793313 | 00591050305 | HYDROCOD+AP TB 10/650 WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 2 | III |
| 97732 | 04/02/08 | 2793313 | 00591050305 | HYDROCOD+AP TB 10/650 WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |

```
                              ITEM MONTHLY AVG :      3.19174   FACTOR :  3.00    ITEM TOTAL :      11
                                                                                 ITEM LIMIT :    9.57
```

| INVOICE # | INV. DATE | ITEM # | NDC NUMBER | SELLING DESCRIPTION | GENERIC DESCRIPTION | UNIT | QTY | SCH |
|---|---|---|---|---|---|---|---|---|
| 56065 | 04/30/08 | 2793628 | 00591038505 | HYDROCOD+AP TB 7.5/5C WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |
| 99599 | 04/29/08 | 2793628 | 00591038505 | HYDROCOD+AP TB 7.5/5C WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |
| 94916 | 04/28/08 | 2793628 | 00591038505 | HYDROCOD+AP TB 7.5/5C WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |
| 94922 | 04/28/08 | 2793628 | 00591038505 | HYDROCOD+AP TB 7.5/5C WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 2 | III |
| 47625 | 04/25/08 | 2793628 | 00591038505 | HYDROCOD+AP TB 7.5/5C WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |
| 63910 | 04/25/08 | 2793628 | 00591038505 | HYDROCOD+AP TB 7.5/5C WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |
| 01701 | 04/24/08 | 2793628 | 00591038505 | HYDROCOD+AP TB 7.5/5C WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |
| 59760 | 04/23/08 | 2793628 | 00591038505 | HYDROCOD+AP TB 7.5/5C WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |
| 14969 | 04/22/08 | 2793628 | 00591038505 | HYDROCOD+AP TB 7.5/5C WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 2 | III |
| 47450 | 04/21/08 | 2793628 | 00591038505 | HYDROCOD+AP TB 7.5/5C WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 2 | III |
| 22749 | 04/18/08 | 2793628 | 00591038505 | HYDROCOD+AP TB 7.5/5C WAT 500@ | HYDROCODONE BIT/ACETAMINOPHEN | EA | 1 | III |

14



# 2008 Settlement Agreement

SETTLEMENT AND RELEASE AGREEMENT
AND
ADMINISTRATIVE MEMORANDUM OF AGREEMENT

This Settlement and Release Agreement and Administrative Memorandum of Agreement ("Agreement") is entered into on this 2nd day of May 2008, by and between the United States Department of Justice, Drug Enforcement Administration (hereinafter "DEA") and McKesson Corporation including facilities doing business as McKesson Pharmaceutical and McKesson Drug Company (hereinafter "McKesson") (each a "Party" and collectively the "Parties").

## APPLICABILITY

This Agreement shall be applicable to McKesson and all McKesson DEA registered facilities as identified in Appendix A.

## BACKGROUND

WHEREAS, on August 4, 2006, DEA, by its Deputy Assistant Administrator, Joseph T. Rannazzisi, issued an Order to Show Cause ("Order #1") to McKesson, with respect to its Lakeland distribution center located at 1515 West Bella Vista Street, Lakeland, Florida 33805 (the "Lakeland Facility"); and

WHEREAS, Order #1 alleged, among other things, that McKesson failed to maintain effective controls at the Lakeland Facility against diversion of particular controlled substances into other than legitimate medical, scientific and industrial channels by sales to certain customers of McKesson; and

WHEREAS, after service of Order #1 on McKesson, representatives of DEA and McKesson entered into discussions on how best to resolve the issues raised in the Order; and

WHEREAS, on November 1, 2007, DEA, by its Deputy Assistant Administrator, Joseph T. Rannazzisi, issued a second Order to Show Cause to McKesson ("Order #2," and "Orders" when jointly referring to Order #1 and Order #2), with respect to its Landover distribution center located at 7721 Polk Street, Landover, Maryland, 20785 (the "Landover Facility"); and

WHEREAS, Order #2 alleged, among other things, that McKesson failed to maintain effective controls at the Landover Facility against diversion of particular controlled substances into other than legitimate medical, scientific and industrial channels by sales to certain customers of McKesson; and

WHEREAS, DEA alleges that McKesson failed to maintain effective controls at its Conroe, Texas distribution center (the "Conroe Facility") against diversion of particular controlled substances into other than legitimate medical, scientific and industrial channels by sales to certain customers of McKesson; and

IN WITNESS WHEREOF, the Parties hereto have duly executed this Settlement and Release Agreement as of the date written above.

MCKESSON CORPORATION

By: _____ John H. Hammergren
President
McKesson Corporation

By: _____ Donald G. Walker
Senior Vice President
McKesson Corporation

Dated: April 28, 2008

Dated: April 30, 2008

THE UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION

By: _____ Michele M. Leonhart
Acting Administrator
Drug Enforcement Administration

By: _____ Wendy H. Goggin
Chief Counsel
Drug Enforcement Administration

Dated: May 2, 2008

Dated: May 1, 2008

10

15

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409130

**MCKESSON**

# 2008 Settlement Agreement

otherwise constitute the basis for McKesson's compliance with recordkeeping and reporting

(c) McKesson shall inform DEA of suspicious orders as required by 21 C.F.R. § 1301.74(b) in a format mutually and reasonably agreed upon by the Parties, except that contrary to DEA regulations, McKesson shall inform DEA Headquarters rather than the local DEA Field Office of suspicious orders, unless and until advised otherwise in writing by DEA Headquarters. DEA agrees to notify all of the DEA Field Offices within 30 days of the Effective Date of this Agreement that McKesson will no longer be required to provide suspicious order reports or any other type of reports regarding excessive purchases of controlled substances to the DEA Field Offices and that this Agreement shall supersede any DEA regulatory requirements to report suspicious orders to DEA. The obligations contained in this paragraph shall be and remain in full force and effect from the Effective Date of this Agreement, and thereafter shall remain in full force and effect unless terminated and revoked by DEA with thirty (30) days written notice.

hydrocodone and alprazolam exceeded the thresholds established in its compliance program. McKesson shall conduct an investigation and take appropriate action as required by this Agreement, DEA regulations and other procedures established under McKesson's compliance program including its Controlled Substance Monitoring Program (CSMP).

(g) McKesson's policy and procedure is to cooperate with the government in any investigation. McKesson agrees to reasonably cooperate with DEA, the United States Attorneys' Offices, and any other Federal, state, or local law enforcement agency investigating or prosecuting McKesson's customers for alleged violations or activities related to the Covered Conduct unless such matters would affect the rights or obligations of McKesson in regard to any

4

16

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409131

# 2008 Settlement Agreement

(e) Within 150 days of the Effective Date of this Agreement, but not earlier than 90 days after the Effective Date of this Agreement, DEA shall conduct reviews of the functionality of McKesson's diversion compliance program ("Compliance Reviews") at or at eight distinct

(e) Within 150 days of the Effective Date of this Agreement, but not earlier than 90 days

(f) The Compliance Reviews will be deemed satisfactory unless DEA determines that one or more of the facilities being inspected has (i) failed to maintain effective controls against diversion regarding the distribution of any controlled substance; (ii) failed to detect and report to DEA suspicious orders of controlled substances; or (iii) failed to meaningfully investigate new or existing customers regarding the customer's legitimate need to order or purchase controlled substances. The Compliance Reviews shall be deemed "not satisfactory" if DEA provides written notice with specificity to McKesson on or before 165 days from the Effective Date of Agreement, stating that McKesson failed to meet any of the requirements in either subsections II.2(f)(i), (ii), or (iii) of this Agreement. DEA shall not find a Compliance Review "not satisfactory" unless the failure(s) are sufficient to provide DEA with a factual and legal basis for issuing an Order to Show Cause under 21 U.S.C. § 824(a) against one or more of the inspected facilities. In the event that DEA provides such written notice of a Compliance Review Failure(s), DEA shall meet and confer with McKesson within 48 hours regarding such a finding. DEA shall consider remedial measures that McKesson has instituted in determining whether the Compliance Reviews are satisfactory. A finding of "satisfactory" does not otherwise express DEA's approval of the compliance program implemented at any particular distribution center.

McKesson agrees to a new period of suspension of the drugs codes at such facility until the matter is resolved by mutual agreement of the Parties or a final decision by the DEA Deputy Administrator. Notwithstanding, nothing in this Agreement shall prevent the Parties from agreeing to an extension or shortening of the suspension period for these drugs codes at the Lakeland and Conroe Facilities at any time during the course of this Agreement. DEA shall not be prevented from taking any action that would otherwise be available to the agency to pursue a new period of suspension of the drug codes at these facilities.

6

17



# Development of Electronic Reporting System

- <u>May 2, 2008</u>:  MOA signed

- <u>June 2008</u>:  McKesson and DEA representatives began discussing development of electronic reporting system

- <u>November 4, 2008</u>:  DEA provided detail on electronic reporting format for Suspicious Orders and Non-ARCOS data

- <u>January 22, 2009</u>:  McKesson discontinued DU-45 in consultation with DEA

18

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# Reporting Suspicious Customers

To:      Melton, Jenny[Jenny.Melton@McKesson.com]
From:  Walker, Donald
Sent:   Thur 7/24/2008 11:08:35 PM
Subject: Re: Daily & Suspicious Orders Electronic Reporting

It is not my understanding that we would transmit any suspicious orders. I will clarify next week

---

**To:**      Melton, Jenny[Jenny.Melton@McKesson.com]
**From:**  Walker, Donald
**Sent:**   Thur 7/24/2008 11:08:35 PM
**Subject:** Re: Daily & Suspicious Orders Electronic Reporting

It is not my understanding that we would transmit any suspicious orders. I will clarify next week

Don
----------------------------
Sent from my BlackBerry Wireless Handheld

---

916-732-3161 Cell Phone

Jenny.Melton@McKesson.com

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.

**From:** Goretsas, Noel D [mailto:Noel.D.Goretsas@usdoj.gov]
**Sent:** Thursday, July 24, 2008 1:08 PM
**To:** Melton, Jenny
**Cc:** Goretsas, Noel D
**Subject:** Daily & Suspicious Orders Electronic Reporting

Confidential / Exempt from FOIA. Subject to FRE 408.       MCK_WVA_000059

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER       MCKMDL00409134



# July 31, 2008:  Meeting with DEA

- <u>Attendees for McKesson</u>
  - Don Walker and John Gilbert

- <u>Attendees for DEA</u>
  - Maureen O'Keefe
  - Christopher Grush
  - Barbara Boockholdt
  - Kyle Wright
  - Jim Hambuechen
  - Frank Muero

20

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# July 31, 2008: Meeting with DEA



21

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409136



# July 31, 2008: Meeting with DEA

**MCKESSON**
*Empowering Healthcare*

## CSMP Components

I. Know the Customer – Establish thresholds

II. Monitor CS orders against thresholds

III. Block orders that exceed thresholds

IV. Review and escalation process

V. Suspicious order/sales reporting

VI. Analysis and reports

22

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409137

**MCKESSON**

# July 31, 2008:  Meeting with DEA

**MCKESSON**
Empowering Healthcare

## CSMP Development History

April 2007
- Implemented  Lifestyle  Drug  Monitoring  Program
  - First use of dose units by base code
  - Track monthly  sales
  - Review  and document
  - Hydrocodone, Oxycodone, Alprazolam, Phentermine
- Created a three tier review process
  - Included customer visits and documentation
- Detected and reported suspicious pharmacies

September  2007
- DEA Meeting triggered new development  – CSMP
- $1.5M in development  costs

April 2008
- Launched CSMP
- Customer  communications

23

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00409138

**MCKESSON**

# July 31, 2008: Meeting with DEA

## CSMP
**MCKESSON**
*Empowering Healthcare*

## I. Establish Customer Thresholds

▶ Established family codes
 – Default thresholds based on store volume

▶ Existing Customers
 – Analysis of 12 month purchase history
  • Set threshold if above family code default
  • Default if below
 – Conducting site visits to customers based on priority
  • Independents
  • Lifestyle Drugs
  • Dose units greater than 25K
 – Retail Chain – review with internal regulatory

24

MCKMDL00409139

**MCKESSON**

# July 31, 2008:  Meeting with DEA

## CSMP

**MCKESSON**
Empowering Healthcare

## Establish Customer Thresholds Cont.

- ▶ New Customers
  - Questionnaire – purchase history/business model
  - Regulatory Approval
- ▶ Adjusting  Thresholds
  - Requires  documentation
  - Regulatory approval
- ▶ Threshold  Database
  - 15,000+ family codes/threshold  baseline
  - Each customer threshold maintained  in  the customer  master

25

MCKMDL00409140



# July 31, 2008:  Meeting with DEA



HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409141



# July 31, 2008:  Meeting with DEA

## CSMP


## III.  Blocking Orders

- ► System Blocks Orders That Exceed Threshold
  - – Specific to that base code
  - – Specific to registrant
- ► No override
  - – Requires change in threshold
  - – Documented threshold change request required
- ► Customer Notification
  - – Alert customer approaching threshold
  - – Order entry systems alert customer
  - – Invoice notifies customer
- ► Audit conducted
  - – Since go live McKesson Internal Audit has conducted systems audit

27

# July 31, 2008: Meeting with DEA

## CSMP

*Empowering Healthcare*

## IV. Review and Escalation

Order Blocked
(Item)

▶ Level I Review

| *Actions* | *Outcome Alternatives* |
|---|---|
| – Direct contact customer | – No change in threshold item blocked |
| – Ascertain reason for exceeding | |
| – Conduct analysis as required | – Threshold adjusted |
|   • Escalating purchase pattern | – Escalation to Level II |
|   • Drug Type | |
| – Documentation | |

28



# July 31, 2008: Meeting with DEA

## CSMP
## IV.  Review and Escalation Cont.

**MCKESSON**
*Empowering Healthcare*

Level II Review

### Actions
▶ Conducted by Director of Regulatory Affairs
▶ Includes
- Customer interview/site visit
  - Observations of DRA
  - Clientele
  - Customer traffic
  - Source of scripts
- Local DEA input
- Analysis of purchases
  - Increases

### Outcome Alternatives
- Leave item blocked
- Adjust threshold
- Escalate to Level III

29

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409144



# July 31, 2008: Meeting with DEA

## CSMP
## IV.  Review and Escalation Cont.

McKESSON
*Empowering Healthcare*

Level III Review
► Escalated to SVP of Distribution and Region SVP
► Any customer escalated to Level III all controlled substances purchases blocked
► Reported to DEA as suspicious
► Review with McKesson Legal
► Provide DEA with data and findings

30

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409145



**MCKESSON**

# July 31, 2008: Meeting with DEA

## CSMP


## V. Suspicious Order/Sales Reporting

► McKesson is prepared to stop excessive purchases reporting to local field office

► Recent contact with DEA to determine format
 – Concern about format and process

► Need to create feedback process on those reported

31

**MCKESSON**

# July 31, 2008: Meeting with DEA

**MCKESSON**
Empowering Healthcare

## Where We Need Your Help

► Suspicious  Order Reporting
  – Process  and  format
► Investigative  Support
  – Mechanism  to discuss  customers  of interest
  – Feed back  that does  not compromise  investigation
  – Mutually  identifying  "script mills"
► Forum  to discuss  trends
  – E.g. Internet vs. Pain  Clinic

32

MCKMDL00409147



# Example of a Suspicious Customer Report

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**MCKESSON**

# Suspicious Customer Report

-----Original Message-----
**From:** Walker, Donald [mailto:Donald.Walker@McKesson.com]
**Sent:** Thursday, August 14, 2008 1:26 PM
**To:** Wright, Kyle J.
**Cc:** O'Keefe, Maureen E.; John A. Gilbert; Trugman, Ina; de Gutierrez-Mahoney, Bill; Frost, Gary
**Subject:** Notification of Suspicious Customer

Registrant: Advanced Doctors Prescription Pharmacy San Antonio, TX DEA# FA 0408167

McKesson Pharmaceutical has identified the above registrant as a Suspicious Customer and effective 8/12/08 ceased selling all controlled substances to this registrant. During the months of June and July the registrant made attempts to increase Alprazolam purchases. Those purchased were blocked by the Controlled Substance Monitoring Program and held to the 8,000 dose unit level until the end of the respective months. In July the dose unit limit was reached mid-month. As part of our SOP we initiated our level 1 review resulting in a site visit on 8/6. During that site visit irregularities were noted which included noting that a large percentage of the registrant's Alprazolam sales were cash. We escalated to a level 2 and notified the local field office of our interest in this registrant. On 8/8 the pharmacist was arrested by State and Federal authorities for Medicaid Fraud which we became aware of on 8/11.

Confidential / Exempt from FOIA. Subject to FRE 408.

MCK_WVA_000088

34

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409149



# DEA Inspections of Distribution Centers Pursuant to 2008 MOA

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# DEA Inspections of Distribution Centers

- 2008 MOA: DEA to conduct reviews of the "functionality" of McKesson's diversion compliance program at up to 8 DC's, including Landover, Lakeland and Conroe

- Compliance reviews deemed "satisfactory" unless:
  - Failed to maintain effective controls against diversion
  - Failed to detect and report to DEA suspicious orders
  - Failed to meaningfully investigate new or existing customers regarding the legitimate need to order controlled substances

- DEA inspected several facilities, including Landover

- During each inspection, DEA was told that McKesson would be reporting suspicious customers

- DEA determined McKesson's DC's were "satisfactory" per the MOA

36

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# DEA Inspections of Distribution Centers

To: Wright, Kyle J [Kyle.J.Wright@usdoj.gov]
From: Walker, Donald
Sent: Wed 10/15/2008 7:52:14 PM
Subject: Document

Kyle this is the template document that our DC's are using for the inspection orientation and will be the document we would use in our proactive discussion format.

**To:** Wright, Kyle J.[Kyle.J.Wright@usdoj.gov]
**From:** Walker, Donald
**Sent:** Wed 10/15/2008 7:52:14 PM
**Subject:** Document

Kyle this is the template document that our DC's are using for the inspection orientation and will be the document we would use in our proactive discussion format.

Also I forgot to ask you. Can you update as to when we can stop sending the monthly excessive order reports to the field offices. From our meeting I was waiting until I heard from you before we stopped sending those piles of paper.

Don Walker

Confidential / Exempt from FOIA. Subject to FRE 408.          MCK_WVA_000123

37

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00409152

**MSKESSON**

# DEA Inspections of Distribution Centers



38

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# DEA Inspections of Distribution Centers

## CSMP
## IV. Review and Escalation

**MCKESSON**
*Empowering Healthcare*

> Order Blocked
> (Item)

▸ Level I Review

| *Actions* | *Outcome Alternatives* |
|---|---|
| – Direct contact customer | – No change in threshold item blocked |
| – Ascertain reason for exceeding | |
| – Conduct analysis as required | – Threshold adjusted |
| • Escalating purchase pattern | – Escalation to Level II |
| • Drug Type | |
| – Documentation | |

2/10/2014          FOR INTERNAL USE ONLY/PROPRIETARY AND CONFIDENTIAL          10

39

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409154



# DEA Inspections of Distribution Centers

## CSMP
## IV. Review and Escalation Cont.

MCKESSON
*Empowering Healthcare*

Level II Review

| *Actions* | *Outcome Alternatives* |
|---|---|
| ▸ Conducted by Director of Regulatory Affairs<br>▸ Includes<br>   – Customer interview/site visit<br>     ▪ Observations of DRA<br>     ▪ Clientele<br>     ▪ Customer traffic<br>     ▪ Source of scripts<br>   – Local DEA input<br>   – Analysis of purchases<br>     ▪ Increases | – Leave item blocked<br>– Adjust threshold<br>– Escalate to Level III |

2/10/2014      FOR INTERNAL USE ONLY/PROPRIETARY AND CONFIDENTIAL      11

40



# DEA Inspections of Distribution Centers

## CSMP
## IV. Review and Escalation Cont.

**MCKESSON**
*Empowering Healthcare*

Level III Review
- Escalated to SVP of Distribution and Region SVP
- Any customer escalated to Level III all controlled substances purchases blocked
- Reported to DEA as suspicious
- Review with McKesson Legal
- Provide DEA with data and findings

2/10/2014 FOR INTERNAL USE ONLY/PROPRIETARY AND CONFIDENTIAL 12

41

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER MCKMDL00409156



# DEA Inspections of Distribution Centers

**To:** Trugman, Ina[Ina.Trugman@McKesson.com]; John A. Gilbert[]
**From:** Walker, Donald
**Sent:** Fri 11/21/2008 9:19:39 PM
**Subject:** DEA Inspection Results

I spoke with Christopher Grush at DEA today. He advised that the Investigations group has completed their review of inspections and concluded we have controls in place through our program. He has sent that information to Hambecheun. He suggested our counsel contact Jim to work through what needs to be done to lift the suspensions.

Can you follow-up with Hambecheun?

Don

Confidential / Exempt from FOIA. Subject to FRE 408.        MCK_WVA_000160

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER        MCKMDL00409157



# Reporting Suspicious Customers



HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409158



# Continued Development of Electronic Reporting System

- <u>March 4, 2009</u>: McKesson informed DEA that it will only report orders once it determines a customer is suspicious.

44



**MCKESSON**

# Development of Electronic Reporting System

To:       Walker, Donald[Donald Walker@Mc
Cc:       Melton, Jenny]Jenny Melton@McKe
From:     Melton, Jenny
Sent:     Thur 3/5/2009 4:24:08 PM
Subject:  FW: Recap of Suspicious Transactio

Don – I have had 2 conversations with Noel
the following recap.  I am waiting for him to co
forward to you and the DRAs.

The first couple sentences recap what we ser
breakdown of what was ordered versus what was filled but he told me that was not necessary.  I have
that information in a spread sheet and can send it if Maureen would like to have the information.

**From:** Melton, Jenny
**Sent:** Wednesday, March 04, 2009 8:56 AM
**To:** Goretsas, Noel D
**Cc:** Melton, Jenny
**Subject:** Recap of Suspicious Transaction Report Discussion

Report sent to DEA was the quantity that was filled.  For
port transactions for several days leading up to the date
ious and when we stopped doing business with the

For any future suspicious reports, McKesson will only report transactions from the date we determine the
customer is suspicious.  If the customer submits orders after that date McKesson will no longer fill those

> The quantity listed on first electronic Suspicious Report sent to DEA was the quantity that was filled.  For
> those two customers Don Walker asked us to report transactions for several days leading up to the date
> McKesson determined the customer was suspicious and when we stopped doing business with the
> customer.

Warehouse Management Solutions

415-983-8780 Telephone

916-752-5161 Cell Phone

Jenny.Melton@McKesson.com

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential
and/or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please
contact the sender by reply e-mail, delete this message and destroy all copies thereof.

**From:** Melton, Jenny
**Sent:** Wednesday, March 04, 2009 8:56 AM
**To:** Goretsas, Noel D
**Cc:** Melton, Jenny
**Subject:** Recap of Suspicious Transaction Report Discussion

thanks - - jenny

**Jenny Melton**

McKesson Corporation

Director of Business Projects

Warehouse Management Solutions

415-983-8780 Telephone

916-752-5161 Cell Phone

Jenny.Melton@McKesson.com

Confidential / Exempt from FOIA.  Subject to FRE 408.            MCK_WVA_000181

Confidential / Exempt from FOIA.  Subject to FRE 408.            MCK_WVA_000182

45

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                              MCKMDL00409160



# Continued Development of Electronic Reporting System

- <u>July – December 2009</u>:  McKesson coordinated with DEA on the continued development of the electronic reporting system

- <u>May 17, 2010</u>: McKesson rolled out a computer program used to identify omitted orders from suspicious customers for transmission to the DEA

- <u>May 14-25, 2010</u>:  McKesson and DEA jointly tested the process for electronically reporting suspicious orders

46

MCKMDL00409161



# January 26, 2012 Meeting with DEA

- Attendees for McKesson and DEA
  - Don Walker, Ina Trugman and John Gilbert
  - Larry Cote, Barbara Boockholdt and Mary Johnson-Rochee

- Update on the status of the CSMP program

- DEA asserts that McKesson made only two suspicious order reports for Landover during the period from May 2008 through January 2012

47

MCKMDL00409162

**MCKESSON**

# Reporting Suspicious Customers

**From:** Walker, Donald
**Sent:** Thursday, February 23, 2012 11:52 AM
**To:** barbara.j.boockholdt@usdoj.gov
**Cc:** Trugman, Ina; John A. Gilbert, Jr.
**Subject:** January 26 meeting Follow-up

Follow up items:

1. You indicated that DEA had received only two suspicious order reports from McKesson during the time since our May 2008 settlement agreement. I have attached a summary document that lists customers (registrants) that McKesson identified as suspicious and reported to DEA. I have also identified several potential customers that through our diligence we chose not to conduct business with due to regulatory concerns.

3. I have confirmed that McKesson transmits ARCOS reports monthly.
4. At the close of the meeting we reported to you the systems issue that resulted in archived CSOS C-II orders being released, filled and shipped. We have accounted for all product and either received a Form 222 from the customer or the product was returned to McKesson. We are in the process of conducting and compiling a detailed reconciliation, which when complete will be forwarded to Kyle Wright. We have verbally notified all field offices with responsibility for the impacted distribution centers, and in some instances have provided written notifications per their request.
5. As a result of our discussion, we initiated an updated review of all of chain drug pharmacies and worked with the appropriate representatives to reduce authorized purchase limits on Oxycodone similar to the actions we

Confidential / Exempt from FOIA. Subject to FRE 408.                    MCK_WVA_000230

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00409163



# Reporting Suspicious Customers

| Ceased Selling Controls - Reported as Suspicious | | | | |
|---|---|---|---|---|
| | | | | Date of Action |
| **Customer Name** | **DEA #** | **City** | **State** | **Date of Action (enter as mm/dd/yyyy)** |
| Herndon Pharmacy & Medic: | FH2358275 | Herndon | VA | 11/9/11 |
| Accokeek Pharmacy | BA6800216 | Accokeek | MD | 1/12/12 |
| Family Meds Pharmacy | FF1958719 | Waldorf | MD | 1/13/12 |
| Lansdowne Pharmacy | FL0306414 | Lansdowne | VA | 7/15/08 |
| Rockville Pharmacy | FR1486340 | Rockville | MD | 3/10/10 |

| | | | | |
|---|---|---|---|---|
| Welfcare II | FW1294898 | Las Vegas | NV | 10/1/11 |
| Castle Hill Drugs, Inc | FC0861345 | Bronx | NY | 11/8/11 |
| Herndon Pharmacy & Medic: | FH2358275 | Herndon | VA | 11/9/11 |
| Life Pharmacy | FL1001077 | New York | NY | 1/3/12 |
| Accokeek Pharmacy | BA6800216 | Accokeek | MD | 1/12/12 |
| Family Meds Pharmacy | FF1958719 | Waldorf | MD | 1/13/12 |
| Renaissance Pharmacy | FR0704040 | Claymont | DE | 2/9/09 |
| Northeast Pharmacy | FN0841418 | Philadelphia | PA | 1/8/00 |
| ATA Pharmacy | FA0680541 | Philadelphia | PA | |
| Just Here Pharmacy | FJ1209724 | Philadelphia | PA | |
| Lansdowne Pharmacy | FL0306414 | Lansdowne | VA | 7/15/08 |
| Rockville Pharmacy | FR1486340 | Rockville | MD | 3/10/10 |
| Castle Hill Drugs, Inc. | FC0861345 | New York | NY | 11/8/12 |

* Customer corrected processes and we resumed selling controlled substances at minimum levels. Local office notified of this action.

Confidential / Exempt from FOIA. Subject to FRE 408.

MCK_WVA_000232

49

MCKMDL00409164



# Reporting Suspicious Customers

McKesson Pharmaceutical
One Post Street
36th Floor
San Francisco, CA 94104
415.983.9060 Tel
415.983.7020 Fax

Donald G. Walker
Senior Vice President, Distribution Operations

**MCKESSON**
Empowering Healthcare

June 29, 2012

e. Given that Virginia, Pennsylvania, Maryland, and Delaware, in particular, appear to be areas of concern regarding prescription drug abuse, we are adding an additional Regulatory Director that will be based in our Virginia distribution center. When that individual is in place, I will insure that there is an introduction to Mary Johnson-Roche.

### A. Maryland/Virginia

    a. For all retail pharmacies in the market we established a maximum dosage threshold

### B. Network Wide Actions:

    a. We continue to have meetings and calls with our manufacturing partners. Specifically we have met with Mallinckrodt, Purdue and Activis. We share with them our controlled substance monitoring information and identify opportunities for collaboration. This has been very beneficial to all parties.

pharmacy site visits. We have instituted this policy nationally.

b. Through our revised analytics and due diligence requirements we identified the following pharmacies as having suspicious order patterns based on our established criteria. We ceased selling controlled substances and reported them to the appropriate field office and DEA headquarters.

    i. Herndon Pharmacy and Medical Supply    FH2358275
    ii. Accokeek Pharmacy    BA6800216
    iii. Family Meds Pharmacy    FF1958719
    iv. Drug City Pharmacy    AD2366183

c. We ceased warehousing and distributing controlled substances in Landover on April 6th after successfully transferring them to the Virginia facility. We surrendered our DEA license (PD0029567) for the Landover, MD distribution center on May 21, 2012 after month end ARCOS reconciliation and reporting.

d. Beginning April 1st we changed our sales compensation model. We eliminated all sales of Oxycodone and Hydrocodone from all compensation programs for our sales representatives nationally. While these drugs were very minimal contributors to any sales compensation program prior to this change, we felt that eliminating them entirely best served our collective interests.

January meeting. We have increased both our financial and human resource investment to better address specific geographic regions and provide improved analytical tools across the network.

I would welcome the opportunity to meet with you again in person or via a call to provide additional information or insights.

Regards,

Donald G. Walker

Cc: Mary Johnson- Roche- Department of Justice
Ina Tragman- McKesson Corporation
John Gilbert- Hyman Phelps & McNamara, PC

Confidential / Exempt from FOIA. Subject to FRE 408.    MCK_WVA_000235

Confidential / Exempt from FOIA. Subject to FRE 408.    MCK_WVA_000236

50

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER      MCKMDL00409165



# McKesson's Continuous Commitment to Combat Diversion

- Information exchange with manufacturers of controlled substances
  - Mallinckrodt
  - Purdue
  - Oxy 30mg threshold code

- Involvement in investigators' organizations to obtain information about current trends

- Ongoing efforts to learn more about DEA's experience and perspective

51

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# Enhanced CSMP Program

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# Enhanced CSMP Program

- Retained Larry Cote and Gary Boggs to assist with developing enhanced program

- Enhanced program initiated in June 2013

- Enhancements include:
    - Applied detailed analytics in evaluation of thresholds
    - Reviewed and reset thresholds
    - Reviewed and revised criteria for threshold adjustments
    - Refined suspicious order reporting

53

MCKMDL00409168

**MCKESSON**

# McKesson CSMP: Analytical Threshold Process



HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409169



# McKesson's Commitment to Combating Diversion

- McKesson is committed to continually improving its systems to help prevent diversion of controlled substances

- McKesson's Controlled Substances Monitoring Program has blocked thousands of orders for controlled substances

- McKesson's Controlled Substances Monitoring Program has reduced the amount of controlled substances shipped to independent pharmacies

55

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409170

Landover / Virginia Oxycodone Doses

Oxycodone Doses

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKESSON

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

57

Average Monthly Oxycodone Doses/Independent Retail Pharmacy
2010-2014 Landover-Virginia DCs

MCKESSON



# Next Steps

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00409173