# EXHIBIT 62

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202.739.3000
Fax: 202.739.3001
www.morganlewis.com



**Mark E. Matthews**
Partner
202.739.5655
mark.matthews@morganlewis.com

May 25, 2007

**VIA FACSIMILE**

Honorable Karen Tandy
Administrator
Drug Enforcement Administration
600 Army Navy Drive
Arlington, VA 22202

Dear Administrator Tandy:

Thank you so much for taking my telephone call yesterday. I have attached a copy of the letter I referred to in our conversation from John Chou, the General Counsel at AmerisourceBergen. As his letter indicates, notwithstanding what they believe is a stellar track record of cooperation with DEA anti-diversion programs (including development of control systems and substantial training and investigative cooperation), AmerisourceBergen received an Order to Show Cause and immediate license suspension of one of its distribution centers without any warning. This Order came despite prompt action by AmerisourceBergen to suspend shipments to all four pharmacies at issue. Perhaps most alarming to AmerisourceBergen at this point, however, is the apparent unwillingness of DEA to engage in further discussions seeking a resolution of the matter. It does not seem to be appropriate treatment of a compliant company with AmerisourceBergen's history of cooperation with DEA. Anything you can do to put discussions back on track would be most appreciated. Thank you very much for your attention to this matter.

Sincerely,

Mark E. Matthews
MEM/lmt

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ABDCMDL00398309



John G. Chou
Senior Vice President,
General Counsel & Secretary

AmerisourceBergen Corporation
1300 Morris Drive
Chesterbrook, PA 19087

May 25, 2007

610.727.7458 Phone
610.727.3612 Fax
www.amerisourcebergen.com

**VIA FACSIMILE**

Honorable Karen Tandy
Administrator
Drug Enforcement Administration
600 Army Navy Drive
Arlington, VA 22202

      Re:    <u>AmerisourceBergen Drug Corporation RA 0210409</u>

Dear Administrator Tandy:

      On April 24, 2007, Drug Enforcement Administration ("DEA") agents served AmerisourceBergen Drug Corporation ("AmerisourceBergen" or the "Company") with an Order to Show Cause and Immediate Suspension of Registration ("Order to Show Cause") of the Company's distribution center located in Orlando, Florida. Since service of the Order to Show Cause, AmerisourceBergen has attempted to work closely with attorneys in DEA's Office of Chief Counsel in an effort to promptly and fully resolve all outstanding issues raised by the Order to Show Cause. We believe that AmerisourceBergen has successfully addressed all operational issues raised in the Order. Unfortunately, dialogue on our attempt to reopen our distribution center, even on an interim basis and even though DEA's operational concerns have been satisfied, has essentially stopped. We are very concerned about what has happened here and hope that you will help move this process forward quickly.

      By way of background, AmerisourceBergen has always believed that it has had a very good working relationship with the DEA on several levels. We have always been advised that we are considered a compliant company with an exemplary track record with DEA and believe that senior DEA officials and lawyers would agree, if asked. As one of the top three pharmaceutical distributors in the world, the Company has taken its obligations under the Controlled Substances Act and corresponding DEA regulations very seriously. We believe that we have been a leader in the development and maintenance of diversion compliance programs. For example, in the mid-1990s, AmerisourceBergen developed a suspicious order monitoring program in conjunction with the DEA, and implemented it with the approval of the DEA. The DEA explicitly noted its appreciation for the efforts that AmerisourceBergen had undertaken to develop the program. Furthermore, starting in 2002, AmerisourceBergen participated in the industry task force that developed the Controlled Substance Ordering System software to support new DEA regulations.

      Over the years, AmerisourceBergen grew its relationship with DEA and assisted in many DEA investigations of specific customers (receiving a DEA Certificate of Appreciation in one

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER       ABDCMDL00398310

Honorable Karen Tandy
Drug Enforcement Administration
May 25, 2007
Page 2

such investigation). From 1999 through 2005, the Company also assisted DEA on multiple occasions in training DEA Diversion Investigators. AmerisourceBergen provided access to its distribution facilities and presented educational programs. In October 2004, the DEA awarded the Company a Certificate of Appreciation in recognition of its contribution to drug enforcement efforts and to DEA's training program. Further, AmerisourceBergen annually hosts DEA trainees from Quantico at its Richmond, Virginia facility to assist in the DEA agents' training. The Company also regularly invites senior DEA enforcement officers to conduct compliance training for the company's distribution center employees, including its Orlando distribution center.

In 2005, the Company collaborated with DEA to develop additional processes and controls to help identify potentially suspicious internet pharmacy orders. Steve Mays, AmerisourceBergen's Director of Corporate Security & Regulatory Affairs, worked with DEA enforcement directors to develop and implement "best practices" for volume distributors of pharmaceuticals and controlled substances. By late 2005, AmerisourceBergen implemented a new policy and procedures that included requiring customers to fill out DEA-approved forms attesting to the nature of their sales. As with its earlier policy, the Company sought and obtained DEA guidance for this program. The Company also conducted, on its own, more than one hundred investigations in the 18 months leading up to the issuance of the Order to Show Cause.

As the above demonstrates, AmerisourceBergen was proud of its relationship with DEA and its efforts to be an industry leader in terms of diversion compliance programs. Up until April 24, 2007, the Company had no reason to believe that it had at all conducted itself in ways that were inconsistent with the Statute, the regulations or with DEA direction. And the Company received no indication from the DEA to the contrary. Thus, the Order to Show Cause on April 24 came as a complete surprise. Furthermore, nothing in the Order to Show Cause seemed to justify such draconian action by the DEA, especially in light of the history described above and the lack of any previous warnings: Of the four pharmacies mentioned, AmerisourceBergen had ceased sales to three of the pharmacies months before the Order to Show Cause was issued. AmerisourceBergen ceased sales to one pharmacy without any notice from DEA; ceased sales to the second pharmacy after investigating them based on a tip from DEA; and ceased sales to the third pharmacy at the same time that DEA suspended that pharmacy's registration. AmerisourceBergen had previously investigated the fourth pharmacy and required it to sign a DEA approved "Internet / Mail Order Compliance Agreement." AmerisourceBergen ceased sales to this customer when served with the Order to Show Cause. To our knowledge, that pharmacy still has a valid DEA registration to dispense controlled substances.

Immediately after the Order to Show Cause, the Agency appeared willing to address the Company's concerns. For example, the Agency set up an April 25th Washington meeting with Company and Agency officials on just twenty-four hours notice. During that meeting, the parties

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ABDCMDL00398311

Honorable Karen Tandy
Drug Enforcement Administration
May 25, 2007
Page 3

pledged to work together to resolve all of the issues raised in the Order To Show Cause; just three days after the service of the Order to Show Cause, on April 27, 2007, the parties were able to agree to an interim Order of Special Dispensation and Agreement Between the Drug Enforcement Administration and AmerisourceBergen Drug Corporation ("the Interim Agreement"). One of the mutual obligations contained in that Interim Agreement required the DEA and AmerisourceBergen to "continue negotiating in good faith in an attempt to reach a settlement of the pending administrative matter prior to the administrative hearing that commences June 4, 2007."

AmerisourceBergen has continued to work in good faith with DEA counsel, especially regarding the DEA's concern about the Company's maintenance of effective controls against diversion of particular controlled substances, principally hydrocodone and substances containing hydrocodone. AmerisourceBergen also has implemented additional compliance measures and instituted additional controls, in consultation with DEA, to identify "suspicious" pharmaceutical orders as that term is used in 21 C.F.R. §1301.74(b), as a result of their size, pattern of purchase, and unusual frequency. AmerisourceBergen has supplemented its compliance efforts throughout its nationwide distribution network, and has also offered to set the compliance standard for the rest of the 800-plus distributors which DEA regulates throughout the United States.

We have received every indication from the DEA that we have resolved all the operational issues raised in the Order to Show Cause. Thus, there is no reason to continue the suspension, which works a grave hardship on the Company. We further believe that AmerisourceBergen's competitors have capitalized on the DEA's immediate suspension of the Orlando Distribution Center's registration to assume servicing the Company's existing customers. We doubt this was the DEA's intended consequence resulting from its Order to Show Cause. And, because the Orlando Distribution Facility has instituted additional compliance measures to prevent diversion, there is no further public interest served in preventing the opening of the facility.

Nevertheless, for over a week, DEA has appeared unwilling to address AmerisourceBergen's legitimate desire to lift the suspension of registration for the Orlando distribution center – even on an interim basis. We do not know why, but must emphasize that time is of the essence for us commercially and operationally.

AmerisourceBergen's goal is to continue to build a productive, cooperative relationship with DEA to meet the ongoing challenge of preventing and detecting unlawful diversion, especially by "rogue" internet pharmacies. Working together, we can achieve the goal of effectively fighting diversion, which, we submit, DEA cannot achieve working alone. Given that

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ABDCMDL00398312

Honorable Karen Tandy
Drug Enforcement Administration
May 25, 2007
Page 4

AmerisourceBergen has resolved the operational issues, there is no reason to continue the suspension.

For this reason, the Company has this week filed a letter with the Office of the Administrative Law Judge requesting a formal hearing pursuant to 21 U.S.C. §1301.43 *et seq.*, to pursue its administrative remedies. The Company does not wish to litigate this matter. Instead, it would like to continue to build on what we believe was an already very good relationship and resolve the remaining issues. AmerisourceBergen is a compliant company with DEA-approved measures to prevent diversion. It should be treated as such by the DEA.

We respectfully request that DEA resume settlement negotiations to achieve the goal of lifting the suspension order of the Orlando Distribution Facility's registration under circumstances acceptable to DEA and allow the company to resume its operation there. We would appreciate the opportunity for a face to face meeting with appropriate DEA officials to resolve this matter quickly.

I appreciate your attention to this matter.

Sincerely,

John G. Chou

cc: Wendy H. Goggin, Esq.
    Chief Counsel

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                ABDCMDL00398313