# EXHIBIT 75

# REDACTED

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     LEGAL REQUIREMENTS OF DISTRIBUTORS ..................................................... 1

III.    THE LEGACY DIVERSION CONTROL PROGRAM ............................................... 2

     A.     Policies and Procedures ................................................................................. 2

     B.     Training and Education .................................................................................. 2

     C.     New Customer Due Diligence ....................................................................... 2

     D.     Order Monitoring Program ............................................................................ 3

     E.     Resources and Oversight ............................................................................... 4

     F.     Ongoing Monitoring ..................................................................................... 5

     G.    External Review ............................................................................................ 5

IV.    THE CURRENT DIVERSION CONTROL PROGRAM ........................................... 7

     A.     Background ................................................................................................... 7

           1.     Formation of Project Management Office to Review and Recommend Enhancements to the Legacy Diversion Control Program ............... 7

           2.     Implementation of the OMP Enhancements ...................................... 8

     B.     Policies and Procedures ................................................................................. 8

     C.     Training and Education .................................................................................. 8

     D.     New Customer Due Diligence ....................................................................... 9

     E.     Order Monitoring Program .......................................................................... 10

           1.     The New Threshold System: Cumulative Volume and Order Size Parameters ...................................................................................... 11

               a)     Cumulative Volume Parameter ............................................. 11

               b)     Order Size Parameter ............................................................ 12

               c)     Identification of Orders and Customers for Review ............. 12

           2.     Calculation of Parameters ............................................................... 13

     F.     Annual Review and Refresh ........................................................................ 15

     G.    Resources and Oversight ............................................................................. 15

           1.     Diversion Control Internal and External Resources .......................... 15

           2.     The Diversion Control Advisory Committee .................................... 17

     H.     Investigation, Evaluation and Reporting of Orders ...................................... 18

     I.     Ongoing Monitoring ................................................................................... 19

     J.     On-Site Customer Investigation .................................................................. 19

     K.     Annual External Review ............................................................................. 20

-i-

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004578

**TABLE OF CONTENTS**
(continued)

Page

V.      CONCLUSION ..............................................................................................................23

-ii-

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0349

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004579

# I.    INTRODUCTION

AmerisourceBergen Drug Corporation ("ABDC" or the "Company") is committed to the safe and efficient delivery of medications to meet legitimate patient needs across the United States.  As a wholesale distributor registered with the United States Drug Enforcement Administration ("DEA"), ABDC is equally committed to complying with all regulatory requirements while carrying out this important work.  ABDC's Diversion Control Program is the means by which the Company monitors for suspicious orders and customers suspected of diverting (or tolerating others' diversion of) controlled substances and listed chemicals.   This program is a multi-faceted approach to awareness, monitoring, investigation, and reporting overseen by ABDC Corporate Security and Regulatory Affairs ("CSRA").

ABDC has had a program in place to monitor and report suspicious orders since at least the 1980s.  Then, in 2007, an improved diversion control program (the "Legacy Diversion Control Program") was created in consultation with the DEA.[1]  The Legacy Diversion Control Program consisted of policies and procedures dedicated to diversion control; a team of full-time diversion control employees; Know Your Customer Due Diligence; an Order Monitoring Program; ongoing monitoring and investigations; and training.  As part of this Legacy Diversion Control Program, certain criteria were established that would help in the identification of orders that varied in some significant way from the typical orders made by the customers of ABDC or received by the Company.

Although it had been reviewed and amended many times since its inception, beginning in 2014, ABDC undertook a comprehensive review of the Legacy Diversion Control Program.  The goal was to identify and implement improvements, while taking advantage of significant advancements in the use and efficacy of data-driven analytical tools.  This culminated in the roll-out of an enhanced diversion control and order monitoring program (the "Current Diversion Control Program") beginning in August 2015.

These enhancements were devised by a multi-functional team with a wide variety of experience and skill sets.  AmerisourceBergen Corporation's ("ABC") Board of Directors and executive team were kept fully informed of these efforts, and the full resources of the Company were brought to bear.  Based on the work that was done, the Company believes that the improvements created innovative new tools to assist in the partnership between industry and government in the fight against prescription drug diversion.

The details of both the Legacy Diversion Control Program and the Current Diversion Control Program are set forth below.

# II.    FEDERAL LEGAL REQUIREMENTS OF DISTRIBUTORS

The requirements that the Controlled Substances Act ("CSA") impose on distributors within the closed system of authorization, manufacture, distribution, and dispensing of controlled substances are

---

[1] On June 22, 2007 ABDC and the DEA entered into a Settlement and Release Agreement pursuant to which ABDC agreed to implement certain controls and reporting structures designed to prevent the diversion of controlled substances.  The Settlement and Release Agreement stemmed from the DEA's investigation of controls in place at ABDC's Orlando Distribution Center to prevent diversion of controlled substances by customers using various Internet websites.  The key facets of the Legacy Diversion Control Program were negotiated and a structure for the Legacy Diversion Control Program was agreed upon at that time.  As part of the Settlement and Release Agreement, ABDC expressly denied the DEA's allegations and paid no fine or penalty.

1

relatively circumscribed.  Distributors must obtain a DEA registration number, and the DEA imposes on them certain requirements as a condition of registration.

The only non-physical security requirements relevant to distributors are contained in § 1301.74 of the CSA.  This section provides, in part, that "the registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances."  Further, "[t]he registrant shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant."  Suspicious orders are defined to "include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency."  § 1301.74(b).  Neither the CSA nor the implementing regulations prescribe any particular form or content of the system identified in § 1301.74(b).  The DEA leaves the design of the system to the distributor's sole discretion.  Similarly, neither the regulations nor the CSA provide any definition of "unusual" or "substantially" in the context of determining what constitutes a suspicious order.

## III.  THE LEGACY DIVERSION CONTROL PROGRAM (2007-2015)

### A.  Policies and Procedures

The Legacy Diversion Control Program consisted of numerous policies and procedures dedicated to diversion control, which were updated and revised over time.  The policies and procedures addressed the following: (1) New Customer Due Diligence (New Retail Pharmacy Account Due Diligence; New Customer Account Due Diligence; and Customer DEA Registration Verification); (2) the OMP (Order Monitoring Program Policy; Excessive/Suspicious Order Investigation Program; Order Monitoring Verification/Investigation Program; Controlled Substance and Listed Chemical Order Monitoring Program; and DEA Daily Reporting); (3) Ongoing Customer Monitoring Activities (Retail Pharmacy Targeted Visits; and Distribution Center Audits); and (4) Training (Compliance Training Program).

### B.  Training and Education

As part of the implementation of the Legacy Diversion Control Program, ABDC compliance employees were trained on the intricacies of the program over a 6-hour session in ABDC's "Compliance Critical" training program.  Additionally, associates responsible for handling and/or record-keeping of controlled substances, or in a related position which had an impact on the handling or record-keeping of controlled substances, were required to take annual compliance training.  Further, employees within the Distribution Centers were given annual training to assist in the company's compliance obligations through education on identifying orders that diverged from established patterns or were otherwise out of the ordinary.  OMP training was also provided to the sales personnel, Customer CARE and Business Transformation team.

### C.  New Customer Due Diligence

ABDC's New Customer Due Diligence is the process by which new customers are assessed for suitability to purchase controlled substances and listed chemicals from ABDC.

Beginning in 2007, ABDC's New Customer Due Diligence of newly onboarded independent retail pharmacies generally required completion of ABDC's Retail Customer Questionnaire CSRA Form 590 ("Retail Customer Questionnaire").  The information requested on the questionnaire was the basis for ABDC's due diligence investigation and provided a baseline to measure the pharmacy's ordering habits

2

and to determine any deviation from expected purchasing practices.   The questionnaire provided significant information to ABDC regarding anticipated ordering practices, including, among other things, the amount of controlled substances ordered, the anticipated ratio of controlled substances purchased vs. total purchases, key prescribing doctors in the area utilizing the pharmacy, and the payment practices of the pharmacy's customers (*i.e.* cash, credit, insurance, etc.).  The questions on the questionnaire were based on guidance from the DEA.

After ABDC received the completed Retail Customer Questionnaire, it verified that the prospective account was not listed on ABDC's "Do Not Ship List."  That list provides a comprehensive record of all customers prohibited from purchasing controlled substances and listed chemicals from ABDC.  ABDC also verified that the pharmacy had a valid DEA registration and state licensure. ABDC's due diligence investigation on potential retail pharmacy customers generally also included site visits, a review of the information provided by the pharmacy, and online investigation (including internet licensing and disciplinary searches) for identified pharmacy, owner, pharmacist-in-charge, and any identified physicians.

D.      Order Monitoring Program

The OMP is the system designed by ABDC to meet its regulatory requirement to design and operate a system to disclose to the registrant suspicious orders of controlled substances.  It is one component of ABDC's broader diversion control program.

The Legacy Diversion Control Program established a system to compare the purchases by pharmacies and hospitals against those of their peers to identify orders that—based on the particular metrics established—appeared to be of unusual size, orders deviating substantially from a normal pattern, or orders of unusual frequency.

First, each customer was grouped by their DEA classification (hospital/clinic, retail pharmacy, practitioner, distributor, etc.).  Then within each group, the customer was classified according to its size (small, medium, large, or extra-large).  The size of the retail pharmacies was determined by the total dollar value of prescription sales, which included both controlled and non-controlled substances.  By grouping and comparing pharmacies with other like-sized pharmacies, the OMP was designed to ensure that a pharmacy could not avoid detection by increasing its purchases gradually, but significantly, over time.

For each category of customers, a threshold was established for each class of drug (as determined by the active ingredient).  For each drug family, ABC calculated a yearly average of the order volume. This average was multiplied by a factor to determine a threshold, which represented the amount of a drug family that a particular customer could order over the course of 30 days without orders being reviewed.

Orders that exceeded the 30-day threshold for that pharmacy's size grouping were placed on hold by ABDC's computer systems ("Orders of Interest").  A trained OMP reviewer at the Distribution Center that would fill the order initially reviewed the Order of Interest consistent with the "know your customer guidelines" established by the DEA.  "Know your customer" means knowing the customer type, whether it has a known legitimate and well-established need for high volumes of controlled substances and listed chemicals, and the typical ordering patterns for that customer.  There were three options for the OMP reviewer: 1) release the order and allow it to be filled; 2) cancel the order; and 3) escalate the order for CSRA review.

3

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

Generally, the OMP reviewers released Orders of Interest for hospitals and the Department of Defense. Those orders could be released by the OMP reviewers unless there were other factors that rendered those orders suspicious, in which case they were referred to CSRA for additional investigation. The OMP reviewer could cancel an Order of Interest if the review indicated that it was not suspicious but should be cancelled because, for example, the order quantity was obviously not correct based on prior purchases or the customer reported the order as mistakenly submitted. Orders by retail pharmacies that exceeded threshold and required further review were passed on to CSRA team's dedicated team of reviewers for a final determination.

When an Order of Interest was sent to CSRA for review, the CSRA representative for the particular customer's region undertook an analysis to determine if the order was suspicious. The CSRA representative could use the customer's sales history and purchase data as well as due diligence and investigative files. Among the factors that could be considered were: the size of the pharmacy; the ordering practices, purchase history, dollar volume and product mix; the percentage of controlled substance purchases; follow-up interviews with customer employees; rationale for order; and the time of the order within the month. At the conclusion of the CSRA analysis, the CSRA representative would make a determination of whether the order should be reported as suspicious to the DEA, rejected as placed in error, or released for shipment to the customer. ABDC's OMP, from 2007 to today, was designed such that orders reported as suspicious to the DEA were not shipped to the customer.

These controls were put in place to deter the possible diversion of controlled substances and listed chemicals. The CSRA team determined what further corrective action to take, if any, as a result any investigation. Available remedies included reduction of thresholds, withdrawal of ability to purchase particular controlled substances from ABDC, or withdrawal of ability to purchase all controlled substances from ABDC.

ABDC's Legacy Diversion Control Program was an evolving program that changed as new trends or information became available. For example, in May 2012, CSRA created a new drug family for oxycodone 30 mg immediate release formula, a formulation of the product that had been identified as particularly susceptible to abuse. The rationale was to rein in customers who primarily purchased the one strength of oxycodone while not punishing customers who had a more typical product mix.

E.     Resources and Oversight

In 2007, ABDC hired Edward Hazewski as part of its effort to bolster the Legacy Diversion Control Program. Mr. Hazewski had previously been a police officer for 20 years with the Wilmington, Delaware Police Department and a Special Investigator for five years with the Delaware State Attorney General's Office. Mr. Hazewski worked with Bruce Gundy, whom ABDC hired in December 2005 as Manager of Investigations. Prior to joining ABDC, Mr. Gundy was a police officer for Berks County, Pennsylvania for more than 25 years. In 2007, Mr. Gundy and Mr. Hazewski helped develop the guidelines for the Legacy Diversion Control Program and the diversion control team within CSRA.

The enhancements which populated the Legacy Diversion Control Program were reviewed with the DEA, including Michael Mapes, Chief, Regulatory Section, Office of Diversion Control, DEA, during negotiations leading to ABDC's June 22, 2007 Settlement and Release Agreement with the DEA. Following his retirement from the DEA, ABDC retained Mr. Mapes as a consultant under an exclusive retainer from approximately January 2008 through 2013, as discussed below.

4

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

F.     Ongoing Monitoring

In addition to the review of Orders of Interest, CSRA performed analyses of purchase data to identify orders and customers that diverged from customary purchasing.  CSRA personnel met on a monthly basis to discuss trends in ordering habits and other pertinent information to the compliance program.

One of the criteria measured by CSRA was a pharmacy's current ratio of controlled substances purchases as compared to total purchases from ABDC.  Customers with a particularly high percentage of controlled purchases attracted the attention of CSRA.  CSRA could then follow up with questions for the account manager, the Distribution Center, or the pharmacy itself to determine the reasoning behind this mix of products.  CSRA could review the files and purchase history for these customers for signals of possible diversion.  In addition to the product mix, CSRA performed a statistical analysis to identify customers who had significantly increased their volume of purchases of controlled substances.  Significant increases in volume during the period being reviewed could trigger an inquiry into the reason for such increases.  CSRA also evaluated the top purchasers in certain controlled substances families on an individual pharmacy basis.

In addition to statistical analyses and due diligence inquiries, CSRA performed targeted visits of certain retail pharmacy customers that were generally identified through review of Orders of Interest or other on-going monitoring.  These visits enabled CSRA to ensure that retail pharmacy customers had implemented their own policies and procedures to help prevent diversion of controlled substances.  CSRA could observe first hand and better appreciate the customer's size and volume of business as well as note any potential red flags suggesting the possibility of diversion.

G.     External Review

At the request of ABDC's in-house legal counsel, Mr. Mapes performed periodic audits of ABDC's OMP.  The audits were performed to ensure that the OMP was providing ABDC with an appropriate system to monitor orders for controlled substances to comply with the requirements of 21 CFR § 1301.74 (b) and ABDC's policies and procedures.  The audits generally included review of the default thresholds for each drug family and customer size, ABDC's "Do Not Ship List," several individual customer and drug reports, CSRA 590 forms, and completed CSRA files for 20-25 customers. He chose files for some new customers, customers he may have heard about or investigated, and the rest at random based on geography to ensure diversity.  Mr. Mapes submitted reports of his findings to ABDC's counsel.

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0354

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004584

EXHIBITS:

    A.  Sample diversion control policies and procedures

    B.  AmerisourceBergen, Security and Regulatory Compliance Program 2008-2009, Six Hour Compliance Training

    C.  Sample CSRA Form 590

    D.  Sample Trend Reports

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0355

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004585



7

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0356

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004586



8

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0357

ABDCMDL00004587



9

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0358

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004588



10

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0359

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004589



11

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0360

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004590



12

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0361

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004591



13

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0362

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004592



14

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0363

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004593



15

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0364

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004594



16

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0365

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004595



17

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0366

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004596



18

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0367

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004597



19

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0368

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004598



20

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0369

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004599



21

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0370

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004600



22

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0371

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004601

## V.      CONCLUSION

ABDC's Diversion Control Program aspires to meet or exceed all regulatory requirements and to maintain a dynamic approach to the ever-evolving challenges of protecting against diversion, while assuring the safe and secure delivery of needed medication for legitimate uses.  As such, the program will continue to evolve and change to meet new challenges, and to benefit from internal and external experience.

23

Business Confidential
SC FOIA Exempt

ABDC -SC Req.0372

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ABDCMDL00004602