# EXHIBIT 131



# Internal Audit Report

Date    July 27, 2007

Subject   DEA Compliance Review – Jupiter Distribution Center

From    L. Dettmer, Audit Department
        I. Lerin, Audit Department
        J. VanOverbake, Audit Department

To      Rob Varno, Manager – Jupiter Distribution Center

Cc      K. Amos, D. Boyajian, D. Coughlin, R. Delaney, D. Doyle, G. Hodge, B. Leander,
        R. Lewis, G. Peters, D. Pinon, R. Rogan, S. Stafford, S. Thoss, C. Young

**Conclusion**

In our opinion, with corrective action taken, the Jupiter Distribution Center (DC) will be in substantial compliance with Drug Enforcement Administration (DEA) regulations.  Instances of noted non-compliance were minor in nature. These matters, primarily related to deficiencies in employee documentation, record maintenance and controlled drug cage security, were reported to management with additional suggestions for improved security. Management has agreed to take appropriate action to resolve these deficiencies.

**Background**

Audit's regular examination for compliance with DEA regulations and company policies for the distribution of controlled substances was conducted July 23-27, 2007. The DEA last visited the Jupiter DC in May 2004.  Their review did not identify any issues.

The Jupiter DC is licensed to handle Scheduled II through V controlled substances.

**Objective**

The purpose of our review was to determine whether the Jupiter DC is in compliance with DEA regulations and Walgreens policies relating to controlled substances.

**Scope**

See Attachment A

**Findings**

Our review found compliance with DEA inventory maintenance, as well as, Walgreens internal controls over controlled substance receiving, shipping and losses - all of which are areas that have been consistently tested during previous DEA reviews of Walgreens DCs.

HIGHLY CONFIDENTIAL

WAGMDL00757549

Our review found non-compliance with certain DEA regulations.  The particular DEA regulations, found in Title 21 of the Federal Code of Regulations, are:

**Section 1301.93** – "DEA recommends that inquiries concerning employees' criminal records be made as follows: Local inquiries and DEA inquiries."  Our review noted that of the twenty-nine sampled employees with access to controlled substances, seven were missing Local Criminal Record checks and one did not sign the Controlled Substance Compliance Policy. **<Finding 1 >**

**Section 1304.22(b)** – Covers requirements for a variety of records, all of which must include "the name of finished form, number of commercial containers including the date and manner of distribution or disposal, the name, address, and registration number of the person to whom distributed, and the quantity in finished form distributed or disposed." It was noted that the vendor's shipping address was missing on the CII Receiving Reports (REPB307), a DEA required record. Additionally, documentation relating to a controlled substance return to the Windsor Rx Return Center did not include the Windsor or Jupiter DEA number. **<Finding 2 & 3>**

**Section 1301.72 (a) (3) (iv) and (b) (4) (v) -** The DEA requires that the controlled drug cage be "equipped with an alarm system which upon unauthorized entry shall transmit a signal directly to a central station protection agency or a local or state police agency, each having a legal duty to respond, or to a 24-hour control station operated by the registrant…." Our review found that the Jupiter DC's Asset Protection Office was not testing the backup cell phone used as a secondary means of communication.  **<Finding 4>**

**Section 1305.18** – The DEA requires unused DEA Forms 222 to be returned to the nearest Field Office if the purchaser (Store) registration has been terminated. Our review found the Jupiter DC had unused DEA 222 Forms for store 2715, which has been closed due to Hurricane Katrina damage. Redacted – Attorney Client Privileged

**Redacted – Attorney Client Privileged**

**Section 1305.72 (b) (3) (b) -** The DEA requires the combination to the CII vault "be limited to a minimum number of employees and can be changed upon termination of employment of an employee having knowledge of the combination". Our review found the Jupiter DC could not identify when the CII vault combination was changed. **<Finding 6>**

**Section 1305.05** – The DEA requires a Power of Attorney Letter to "authorize one or more individuals, whether or not located at his or her registered location, to issue orders for Schedule I and II controlled substances on the registrant's behalf by executing a power of attorney for each such individual, if the power of attorney is retained in the files, with executed Forms 222 where applicable, for the same period as any order bearing the signature of the attorney." Our review found Sheila Bennett, Corporate Purchasing, has retired and the DCs, chain-wide, have DEA 222 Forms signed on her behalf. Redacted – Attorney Client Privileged

**Redacted – Attorney Client Privileged**

The complete listing of Audit findings and recommendations are included in the following pages of this report. Findings have been reviewed with appropriate management and their comments are included in this report.

HIGHLY CONFIDENTIAL

WAGMDL00757550

**DEA Compliance Review – Jupiter Distribution Center**
**Detail of Findings - Index**

1.  **Documentation of Screening Test and Criminal Background Checks for All Employees Having Regular Access to Controlled Substance Areas**

2.  **Vendor Address Absent from CII Controlled Substance Receiving Report (REBP307)**

3.  **Windsor Rx Return Form**

4.  **Controlled Drug Cage Back up Cell Phone**

5.  **Closed Store with unused DEA Forms 222**

6.  **CII Vault Combination Change**

7.  **Power of Attorney Letter**

8.  **DEA 222 Form Accountability**

9.  **Control Drug Cage Layout Documentation**

10. **Controlled Substance Cage Camera Coverage**

11. **CII and CIII-V Control Drug Cage and Vault Alarm Test**

12. **Various S.A.I. L. Report Formats Used by Each DC**

13. **Threshold System Software Consistency and User Knowledge Level of Threshold Capabilities**

14. **Primary Records Maintenance**

15. **Damaged CII Cabinet Key Controls**

HIGHLY CONFIDENTIAL

WAGMDL00757551

## 1. Documentation of Screening Tests and Criminal Background Checks for All Employees Having Regular Access to the Controlled Substance Areas

**Background:** In accordance with section 1301.93, the DEA recommends that inquiries concerning employees' criminal records be made as follows: Local inquiries & DEA inquiries. The required records and reports should be complete and readily available upon request. Also, Walgreens requires that employees complete the Control Substance Policy and Employee Screening Questionnaire.

**Issue:** Our request for twenty-nine employees' required documentation and the review of same disclosed the following were missing:

- Seven Local Criminal Record Checks
- One Controlled Substance Policy Signature

A copy of our detailed list was left with DC management for their follow-up.

**Recommendation:** We recommend the Jupiter DC:

1) Take the necessary actions to update the employee personnel files for the missing documentation stated above.

2) On a quarterly basis, review and update the files of all employees having regular access to controlled substances to ensure that all screening tests for all required employees have been executed.

**Management Response:** Rob Varno, Jupiter DC Manager

1. This has been completed.

2. We agree with the recommendation and have highlighted this review as a key action item during quarterly audits.

**Estimate Completion Date:** Completed

HIGHLY CONFIDENTIAL

WAGMDL00757552

**2. Vendor Address Absent from Controlled Item Receipts (REBP307)**

**Background:** DEA regulations (Section: 1304.22 (b)) have requirements for a variety of records, all of which must include: "the name of finished form, number of commercial containers including the date and manner of distribution or disposal, the name, address, and DEA registration number of the person to whom distributed, and the quantity in finished form distributed or disposed." The Controlled Item Receipts Report – Detail, REPB 307, is the report given to the DEA to substantiate receipts of specific controlled substances over the period designated by the DEA.

**Issue:** The DC report REPB 307, used by Walgreens as the primary controlled substance receiving record, does not always include the vendor's actual shipping address, as required by DEA regulations.  The REPB 307 reports in our audit sample for CII controlled substances were missing the vendor shipping address.

This matter has been previously addressed with Logistics and Planning, after the discrepancy was initially identified during Audit's DEA Compliance Review of the Lehigh Valley DC in Fiscal Year 2000. Since the issue above was brought to management's attention, they have made a change (implemented 6/22/2006) to the Freight Bill screen that the DC's use to enter a vendor's shipping information.  In the past, a receiver/checker could enter any character in the zip code field when entering the vendor's shipping address from the shipping documentation.  After the change, the screen has input validation that reduces the opportunity for entry errors by checking for structural integrity in the zip code (e.g., no punctuation marks are allowed).  However, based on our review of the Orlando and Jupiter DC in fiscal year 2007, the report defect is still occurring.

**Risk:** Walgreens could be found in non-compliance with DEA regulation Section 1304.22 (b) regarding required information for records.

```
┌─────────────────────────────────────────────────────────────┐
│                                                               │
│        Redacted – Attorney Client Privileged                  │
│                                                               │
└─────────────────────────────────────────────────────────────┘
```

**Management Responses:** Jason Elliot, Manager, Flow, EDA, Inbound, Vendor Compliance

We made a change on 9/15/2007 to stop both Freight Bill signing and Load approvals without entering in a zip code that we have on the vendor shipping point file.  This will help ensure the data fed to the REPB 309 and REPB 307 reports have a valid address.

**Estimated Completion Date:** Completed

HIGHLY CONFIDENTIAL

WAGMDL00757553

### 3. Windsor Rx Return Missing Information

**Background:** When returning controlled substances to the Windsor Rx Return Center, Walgreens DCs must complete a return form, which contains the date shipped, the name and address of the party to whom the controlled substances are shipped, the DEA number of this party, the name of the substance, the form of the substance, the number of units or volume in the container, and the number of commercial containers.  The required information for the return of controlled substances is regulated under Section 1304.22 (b).

**Issue:** During our review at the Jupiter DC, Audit noted the Windsor Rx Return documentation for one controlled substance return did not include the Windsor or Jupiter DEA number, which is DEA required information. Additionally, Audit has received several inquires from the DCs, relating to what information should be included in the Windsor Rx Return documentation. Consequently, each DC has their own pre-printed form and process to use when sending controlled substances to the Windsor Rx Return Center.

**Risk:** If all DCs do not have proper direction how to fully complete the Windsor Rx Return documentation, required information may not be included, resulting in non-compliance with DEA regulations: Section 1304.22(b).

**Recommendation:** We recommend:

1.  The on-line Compliance Manual be updated to reflect a standard Windsor Rx Return policy and procedure, including where and how to send controlled substance returns (schedules II and III-V), the correct form(s) to use, and where to find these forms.

2. A standard Windsor Rx Return Form (Attachment B) be used by all DCs, which includes all DEA required information. The standard Windsor Rx Return Form was developed by Teresa Currier, from the Perrysburg DC.

**Management Response:** Dan Coughlin, Distribution Centers and Logistics Regional Vice President

The requested form, as detailed in Attachment B, is on-line and has been available since November 2007.  Per Audit's request, the following additional language will be added on-line: "When processing either damaged or returns to the Windsor DC Rx Return Center, follow the procedures detailed in "RxR DC Returns" from Windsor, and use the "Windsor Rx Return Claim Form (Form WRXClaim7)." The form for use is listed as "Windsor Rx Return Claim Form" under examples."

**Estimated Completion Date:** Completed

HIGHLY CONFIDENTIAL

WAGMDL00757554

**4. Controlled Drug Cage Back up Cell Phone**

**Background:** An objective of the controlled drug cage walkthrough was to test every alarm point in the controlled drug cage to ensure all were working and that they adequately cover all possible areas of employee activity in the cage. Secondary lines of communication are also tested to ensure, in the event of communication breakdown, central monitoring can be alerted.

**Issue:** The Jupiter DC's Asset Protection Management was unaware of the cell phone capability at the DC and F. E. Moran, thus no periodic tests were performed to ensure the cell phone was functioning correctly. During the review, Asset Protection had begun to take corrective action to update their control cage testing procedures and follow-up with F. E. Moran.

**Risk:** In the instance of communication loss, the DC is at risk of not having a secondary line of communication with Central Monitoring and non-compliance with DEA Regulations.

**Recommendation:** While the DC's Asset Protection Management acted immediately on the issue, we recommend:

1) Jupiter DC Asset Protection should continue to work with the central monitoring station to develop procedures to adequately test the back up cell phone.

2) Jupiter DC's Asset Protection personnel should test the back up cell phone during the control drug cage alarm testing and retain documentation from central monitoring that the device is functioning adequately.

**Management Response:** Rob Varno, Jupiter DC Manager

1. We are currently working with F.E. Moran to address and resolve this issue.

2. We agree with the recommendation and have highlighted this as an action item during the drug cage alarm testing.

**Estimated Completion Date:** Projected January 6, 2008

HIGHLY CONFIDENTIAL

WAGMDL00757555

**5. Closed Store with DEA 222 Forms On-hand**

**Background**: In accordance with DEA Regulation 1305.18, "If the registration of any purchaser terminates (because the purchaser dies, ceases legal existence, discontinues business or professional practice, or changes the name or address as shown on the purchaser's registration) or is suspended or revoked under Sec.  1301.36 of this chapter for all Schedule I and II controlled substances for which the purchaser is registered, the purchaser must return all unused DEA 222 Forms to the nearest office of the Administration."

**Issue:** Audit noted the Jupiter DC had unused DEA 222 Forms for store 2715, which has been closed due to Hurricane Katrina damage. Redacted – Attorney Client Privileged

# Redacted – Attorney Client Privileged

**Risk:** The Jupiter DC is in non-compliance with DEA Regulation 1305.18, which could lead to fines imposed by the DEA.

# Redacted – Attorney Client Privileged

**Management Response:** Rob Varno, Jupiter DC Manager

We agree with the recommendation. The Jupiter DC is compliant with this regulation and has highlighted this review as a key item on the quarterly audit.

**Estimated Date of Completion:** Completed

**Audit Note:** Audit will verify compliance with procedures and proper handling of DEA 222 Forms during our mini audit review in fiscal 2008.

HIGHLY CONFIDENTIAL                                                    WAGMDL00757556

## 6. CII Vault Combination Change

**Background:** DEA Regulation (1305.72 (b) (3) (b)) requires registrants using combination locks to change the combination "upon termination of employment of an employee having knowledge of the combination".  The Jupiter DC uses a combination lock for the CII controlled substance vault, located within the CII cage.

**Issue:** Discussions with the CII Manager indicated that the Jupiter DC could not recall the last time the CII vault combination was changed.

**Risk:** The Jupiter DC could be found in non-compliance with DEA Regulation 1305.72 (b) (3) (b), which could lead to fines imposed by the DEA.

**Recommendation:** We recommend the Jupiter DC develop a policy to change the CII vault combination periodically and when there is employee turnover. Furthermore, the Jupiter DC should develop a log to monitor/track when the lock combination is changed.

**Management Response:** Rob Varno, Jupiter DC Manager

We agree with the recommendation. The Jupiter DC will develop a scheduled event where the combination is changed as required.

**Estimated Completion Date:** January 6, 2008

HIGHLY CONFIDENTIAL

WAGMDL00757557

## 7. Power of Attorney Letter

**Background:** The DEA requires a Power of Attorney Letter to "authorize one or more individuals, whether or not located at his or her registered location, to issue orders for Schedule I and II controlled substances on the registrant's behalf by executing a power of attorney for each such individual, if the power of attorney is retained in the files, with executed Forms 222 where applicable, for the same period as any order bearing the signature of the attorney."

**Issue:** Our review found Sheila Bennett, Purchasing, has retired and the DCs, chain-wide, have DEA 222 Forms signed on her behalf. **Redacted – Attorney Client Privileged**

# Redacted – Attorney Client Privileged

**Risk:** Walgreens could be found in non-compliance with DEA Regulations relating to the Power of Attorney Letter for individuals executing DEA 222 forms, which could lead to fines.

# Redacted – Attorney Client Privileged

**Management Response:** William Groth, Divisional Merchandise Manager

Sheila Bennett's POA has been revoked.  We have copies of the revocation on file.  There are no pre-signed DEA Form 222s with Sheila's signature to void.

**Estimated Completion Date:** Completed

HIGHLY CONFIDENTIAL

WAGMDL00757558

## 8. DEA 222 Form Accountability

**Background:** Each registrant is required to sequentially account for all DEA 222 Forms issued to them (i.e. executed, not issued and voided).  To ensure the Jupiter DC was accounting for their DEA 222 Forms correctly, Audit randomly selected five stores to test if the unused DEA 222 Form serial numbers matched the next available DEA 222 Form serial numbers in SIMS.

**Issue:** Audit noted that store 9361 had voided DEA 222 Forms on-hand in the unused folder that were not voided in the system.

**Risk:** The Jupiter DC could potentially ship a CII controlled substance order on a voided DEA 222 Form and could be found in non-compliance with DEA Regulations for not maintaining accurate DEA Form 222 records, which could lead to fines.

**Recommendation:** We recommend the Jupiter DC strengthen their policies and procedures to ensure that all their DEA 222 Forms are properly accounted for. In addition, we recommend the Jupiter DC develop a quarterly review process to identify any voided DEA 222 Forms that are not in the stores' unused folders.

**Management Response:** Rob Varno, Jupiter DC Manager

We agree with the recommendation and will develop the recommended quarterly audit to strengthen our policies and procedures to ensure that all DEA 222 Forms are properly accounted for.

**Estimated Completion Date:** January 6, 2008

11

HIGHLY CONFIDENTIAL

WAGMDL00757559

## 9. Control Drug Cage Layout Documentation

**Background:**  In preparation for Audit's control drug cage and vault walkthrough, the cage and vault layout diagrams with numbered camera and motion detector locations were traced to Asset Protection's Alarm Testing Procedures, which is used to test the cage and vault on a monthly basis.

**Issue:**  The alarm point assignments on the Alarm Testing Procedures do not agree to the cage and vault layout diagrams.

**Risk:**  There is no assurance that Asset Protection can monitor and test all alarm points in the cages and vault.

**Recommendation:** We recommend the DC management and Asset Protection review the current adequacy of the Control Drug cage camera and motion detector locations and make the necessary updates to align with the cage and vault layout diagrams.

**Management Response:** Rob Varno, Jupiter DC Manager

This is currently underway with AP and F.E. Moran.  The only unknown at this point is the cost to comply with the recommendation.  As of 12/6/07, we are waiting for an analysis and price quote from F.E. Moran.

**Estimated Completion Date:** February 2008, depending on cost.

HIGHLY CONFIDENTIAL

WAGMDL00757560

## 10. Controlled Substance Cage Camera Coverage

**Background:** One objective of Audit's assessment of the CII and CIII-V controlled substance cages and vault was to determine if there is adequate sensor and camera coverage.

**Issue:** Audit noted several blind spots were identified in CIII-V controlled substance cage and not all motion detectors were activated during the walkthrough. Additionally, there was no camera coverage in the CII vault.

**Risk:** If both controlled substance cages and vault can not be monitored, there is an inability to identify or observe diversion of controlled substances.

**Recommendation:** We recommend Corporate Asset Protection work with the Jupiter DC to make the necessary modification(s) to existing camera positions to provide adequate coverage to every area within the controlled substance cages and vault and assess the need for additional cameras in the CII vault.

**Management's Response:** Brain Leander, Asset Protection Manager, and Rick Maier Jupiter DC Asset Protection Function Manager

The CIII-V cage has eight cameras currently in operation. These eight cameras allow coverage as needed to ensure that adequate video feeds are available for Asset Protection Officers to observe and detect unauthorized persons within the CIII-V cage area. The Controlled Substances Act of 1970 does provide a document titled "Additional Security Measures", which states that the additional measures are not specifically required but they are recommended. There are 23 recommendations. The Jupiter DC meets 17 of the 23 recommendations.

The Jupiter DC believes that adding or modifying cameras within the drug cages would enhance the ability to monitor more areas of the cages. However, the cameras currently allow monitoring of any approaches into the cages. While a person may be able to hide in a blind spot inside the cage, they must pass through areas that are monitored by the cameras. In addition the Jupiter DC believes that the electronic access system, auditing the personnel lists with access to the cages, random drug testing and providing monthly testing of the alarm systems place the Jupiter DC in "Substantial Compliance" as indicated in the Federal Code.

With respect to camera coverage in the CII vault, there are two cameras (Cameras 75 and 76) inside the CII vault and they monitor the approaches to the vault, again affording the officers the ability to monitor the areas inside the vault. However, the Jupiter DC does desire a camera for the pick lane of the CII cage, a switch that would allow testing inaccessible monitors on top of the CII vault and the emergency cell phone and a technician test of all the detectors. The Jupiter DC agrees to include that request in the next budget process.

**Estimated Completion Date:** With respect to camera coverage in the CIII-V controlled substance cage, no action is required. Estimated completion date for adding a camera in CII vault is June 2008.

HIGHLY CONFIDENTIAL

WAGMDL00757561

## 11. CII and CIII-V Control Drug Cage and Vault Alarm Test

**Background:** During the CII and CIII-V controlled drug cage and vault walkthrough, Audit attempted to trigger all motion sensors (alarm points). The results from the DC's Threshold Security System and F.E. Moran, the central monitoring station, are compared to the Alarm Point Assignment Report to ensure that what the DC's alarm system detected was also detected by F. E. Moran.

**Issue:** The results of the alarm test identified:

- Two alarm points were not on the DC's Alarm Point Assignment Report, but were activated during the test.
- Fourteen alarm points on the Alarm Point Assignment Report did not activate.
- Audit was unable to verify if all alarm points were monitored by the central monitoring station, as F.E. Moran's Alarm Monitoring Report did not list the alarm point assignment number.

**Risk:** The DC can not verify the adequacy of the alarm system if they can not identify which points are being activated and where. Additionally, the Central Monitoring Station can not effectively monitor the DC's alarm system if they do not have the correct alarm point assignments.

**Recommendation:** We recommend the Jupiter DC work with F. E. Moran and Corporate Asset Protection to ensure that all security points are documented correctly and the two monitoring systems correctly recognize all alarm points. Additionally, the DC should assess using an engineer to inspect the cages to identify all alarm points.

**Management Response:** Brain Leander, Asset Protection Manager, and Rick Maier Jupiter DC Asset Protection Function Manager

Jupiter DC agrees to review the alarm points and modify the alarm testing procedures SEC-004 and SEC 005 to account for the two points that annunciated.

Jupiter DC agrees to request the funds for an alarm technician to verify and document each alarm point as operable and/or disabled purposely due to false alarms arising from movement outside the secure areas.

Jupiter DC agrees to review the requirements of remote monitoring relative to the need for specific alarm points being necessary for adequate security of the cages.

**Estimated Completion Date:** June 2008

14

HIGHLY CONFIDENTIAL

WAGMDL00757562

## 12. Various S.A.I. L. Report Formats Used by Each DC

**Background:** In accordance with company policy (on-line Compliance Manual – Walnet), all controlled substance losses and thefts are to be recorded in a tracking system, know as the S.A.I.L Report, which tracks:  Inquiry number, Store identification number, Store number, Store address and phone number, Today's date, Store personnel, Invoice number, Trailer number, Driver's name, Nature of inquiry, S.A.I.L. Coordinator name, Results of investigation, with a report issued to the Asset Protection DC Manager to help track trends.

**Issue:** During our review, Audit noted the S.A.I.L Report format used by the Jupiter DC does not contain all of the required attributes involved with each theft or loss incident. Additionally, Audit has identified, through the Quarterly DEA Mini Audits, each DC has their own S.A.I.L Report format, where some DCs use an Excel spreadsheet and others use an Access database. Consequently, each S.A.I.L Report will have different attributes, making it difficult for DCs to track common issues found at other DCs.

**Risk:** Walgreens DCs may not be tracking the required attributes for controlled substance losses and thefts, making it difficult to compare common issues found at other DCs to limit the diversion of controlled substances.

**Recommendation:** We recommend the S.A.I.L. Report format be revisited to address what attributes all DCs should be tracking at a minimum for controlled substance theft and/or loss. The on-line Compliance Manual should also be updated to reflect the new format and standard.

**Management Response:** Dan Coughlin, Distribution Centers and Logistics Regional Vice President

Audrey Phillips, SAIL Coordinator of the Waxahachie DC, is heading a review and design committee to incorporate the requests listed above for inclusion to the on-line Compliance Manual.

**Expected Completion Date:** Targeting Completion on February 7, 2008.

HIGHLY CONFIDENTIAL

WAGMDL00757563

**13. Threshold System Software Consistency and User Knowledge Level of Threshold Capabilities**

**Background:** In addition to the Jupiter review, prior DC DEA Compliance reviews have noted different versions of Threshold Security with differing levels of Threshold Security software knowledge by the Asset Protection Teams. The Jupiter DC Asset Protection Team was able to develop highly effective and valuable reports, using the oldest version of the Threshold System, to monitor security access throughout the DC and Controlled Drug cages.

**Issue:** Older versions of Threshold Security together with inconsistent knowledge capabilities at the DCs, fails to maximize the reporting/usage capabilities of the system.

**Risk:** Multiple software versions and varying system knowledge levels by DC Asset Protection Teams cannot maximize the security value of the Threshold Security system.

**Recommendation:** We recommend:

1. Bringing all DCs up to the most current version of Threshold Security.

2. Once 1) has been accomplished, develop a DC-wide educational program to get one or more Asset Protection Team Members at every DC familiar with all of the system's capabilities, thus allowing all DC Asset Protection Teams to maximize DC security through better utilization of the system's reporting capabilities.

**Management Response:** Brain Leander, Asset Protection Manager, and Rick Maier Jupiter DC Asset Protection Function Manager

AP Management currently evaluates the need to upgrade the existing card access software on a DC by DC basis.  Currently, there are five DCs (Anderson, Windsor, Flagstaff, Perrysburg and Northeast Connecticut) using Pinnacle; however, there are no plans to upgrade all DCs to Pinnacle where the existing system is operational.

It is the responsibility of the APFM to fully train their APOs on the capabilities of the card access system, whether it has been upgraded to Pinnacle or not. Moving forward AP Managers will ensure that all APOs have been properly trained on the system

**Estimated Completion Date:** Card Access Training February 2008

HIGHLY CONFIDENTIAL

WAGMDL00757564

**14. Primary Records Maintenance**

**Background:** In accordance with Walgreens Policy, DCs are required to keep various records for a minimum of five years.

**Issue:** During our review at the Jupiter DC, Audit noted that the DC was not maintaining the CIII-V ARCOS inventory and the Suspicious Controlled Drug Order Report (SCDOR) for the required five year period.  Although, the DC is in compliance with DEA requirements for maintaining primary records for the two year period, the Company policy requires DCs to maintain the CIII-V ARCOS inventory and SCDOR for a minimum of five years.

**Risk:** The Jupiter DC is in non-compliance with Walgreens Policy.

**Recommendation:** We recommend the Jupiter DC review the current policy and procedure for maintaining primary records to ensure they are aligned with Walgreens policy and procedure.

**Management Response:** Rob Varno, Jupiter DC Manger

We agree with the recommendation and will maintain the primary records for 5 years.

**Estimated Completion Date:**  Completed

**Audit Note:** Audit will verify compliance with procedures for maintaining primary records during our mini audit review in fiscal 2008.

WAGMDL00757565

HIGHLY CONFIDENTIAL

## 15. Damaged CII Cabinet Key Controls

**Background:** At the Jupiter DC, damaged CII control substances are locked in a cabinet found in the CII vault before being shipped to be destroyed. For security purposes, the damaged CII cabinet should be locked at all times with key access limited to DC management or Asset Protection.

**Issue:** The keys for the damaged CII cabinet are not locked up and are accessible to anyone with CII Cage Access. Additionally, Audit noted during the CII vault walkthrough that there was no camera coverage in the CII vault, leaving the damaged CII cabinet exposed.

**Risk:** There is potential for diversion of controlled substances relating to the damaged CII cabinet, as the keys are not locked-up or checked in/out with Asset Protection. The risk is compounded by not having camera coverage in the CII vault to monitor the damaged CII cabinet.

**Recommendation:** We recommend the Jupiter DC develop a process for the damaged CII cabinet keys to be checked in/out with the Asset Protection Office when authorized personnel need to access the CII vault.

**Management Response:** Rob Varno, Jupiter DC Manger

We agree with the recommendation and will establish the key check-out process.

**Estimated Completion Date:** January 6, 2008

HIGHLY CONFIDENTIAL

WAGMDL00757566

**Attachment A**

Audit Scope Summary

Purpose

The purpose of our review was to determine if the Jupiter DC, which handles CII-CV controlled substances and List I chemicals, is in compliance with DEA regulations and Walgreens policies regarding controlled substances.

Scope:

1. Verify the facility's DEA license is current, has the proper address, and is for distribution of Scheduled III through V controlled substances. Determine whether controls are in place to ensure re-registration of the DEA license on a timely basis.

2. Verify the Jupiter DC is shipping controlled substances to only open DEA registered locations.

3. Assess the adequacy of the overall DC security for controlled substances with special emphasis on: The controlled substance cage, movement of controlled substances within the DC, effectiveness of the cameras and motion detectors providing cage surveillance, operation of the self-closing and self-locking doors of the cage, handling of damaged controlled substances, and key control for the rolling control substance cages.  Determine if physical changes were made to the controlled substance cage and if they were approved by the DEA.

4. Assess the adequacy of the overall DC security for List I chemicals with special emphasis on storage and accessibility of List I chemicals and the controls in place over the movement of these chemicals within the facility.

5. Ensure shipping containers released by the DC do not indicate that the contents are controlled substances.

6. Verify non-controlled substances are not kept in the controlled substance cage unless permission was received from the DEA.

7. Examine records to determine if all current employees working with controlled and List I substances have:

   - completed the DEA employee Screening Questionnaire,
   - a local criminal records check,
   - a national criminal records check conducted by the DEA, and
   - read, understood and signed the Walgreens Controlled Substance Policy.

19

HIGHLY CONFIDENTIAL

8. Verify the biennial and Automated Records and Consolidated Orders System (ARCOS) inventories were taken when required and were adequately documented. Verify that any controlled or List I substances, that has changed classification to a controlled substance or moved within the controlled categories, was properly inventoried and handled, if necessary.

9. Verify all required controlled substance records and reports have been kept for at least five years.

10. Take an inventory of two CII controlled substances and three CIII-V (two ARCOS and one non-ARCOS) controlled substances at the end of a business day.  Verify that the records from the December 29, 2006 ARCOS inventories and December 29, 2006 controlled substance biennial inventory support the balances on hand for these five controlled substances. Trace all movement of the ARCOS drugs to the monthly ARCOS reports. Physically observe List I substances within the DC and assesses security and record keeping procedures for List I chemicals.

11. Examine the DC's primary controlled and List I substance records to determine whether or not they meet all of the DEA record keeping requirements.

12. Verify any loss, theft, and destruction of controlled substances were handled properly and the proper DEA forms were filed.

13. Verify all controlled substance losses/thefts were maintained in a tracking system and forwarded to the Asset Protection DC Manager.

14. Determine the action taken, when daily/weekly physical inventory variations could not be resolved, was appropriate.

15. Verified that the unused DEA 222 Forms were secured and accounted for sequentially.

16. Determined that the Power of Attorney Letter for those employees who can execute Jupiter Distribution Center's DEA 222 Forms is on the file.  Also, noted that a Power of Attorney Letter for Jupiter DC employees, who can execute store DEA 222 Forms, is on file.

HIGHLY CONFIDENTIAL

WAGMDL00757568