# EXHIBIT 153

## Controlled Substance Prescriptions & Good Faith Dispensing Policy

The pharmacist **must** use the elements of Good Faith Dispensing in conjunction with state and federal controlled substance laws when filling **all** prescriptions.

Controlled substances may only be dispensed to patients who have a prescription for a valid medical purpose issued by a practitioner acting in the usual course of professional practice. A **corresponding responsibility** rests with the pharmacist to ensure that controlled substance prescriptions are issued for a legitimate medical purpose by an individual practitioner in the usual course of professional practice.

Any pharmacist who fails to meet his/her "corresponding responsibility" obligation when dispensing a prescription for a controlled substance, or does not follow the validation procedures outlined below, is subject to disciplinary action up to and including termination of employment.

## Prescription Validation Procedures for Good Faith Dispensing of Controlled Substances

Follow these procedures to validate a controlled substance prescription:

1. ***Identification***: If the pharmacist does not have an established relationship with the patient, ask for government issued identification and verify and document the identity of the patient or the person dropping off the prescription on the patient's behalf, including name and address on the prescription hard copy or scan and print a copy of the ID utilizing the manual fax process and attach it to the hard copy.

   → **NOTE: If your state prohibits the scanning and copying of an ID, follow your state's regulations.**

2. ***Prescriber***: Confirm that the prescriber has authority to prescribe controlled substances by verifying the validity of the prescriber's information including the DEA number and state license number.
   - StoreNet > Rx Ops > Pharmacy Policy and Procedures > Rx Integrity > DEA > DEA License Number Validation

3. ***Prescription Drug Monitoring Program (PDMP)***: If available in your state, use the PDMP to obtain additional information to help determine the validity and confirm the appropriateness of the prescription.
   - StoreNet > 3rd Party > Third Party Reference > State Specific Information > All States

4. ***Data/DUR Review***: Review the patient's profile to resolve and document any associated DURs appropriately. Confirm the written date on the prescription image matches the Date field in the Product section. If the prescriber indicates a future fill date or a "Do Not Dispense Until" or "Do Not Dispense Before" date, store the prescription and contact the patient to inform them of when their prescription can be filled.

5. ***Evaluate the Elements of Good Faith Dispensing***: Contact the prescriber's clinical staff for verification or to clarify the elements of good faith dispensing for the prescription. If the prescriber's clinical staff cannot be reached, do not dispense the prescription. Even if the prescriber's clinical staff verifies the prescription is valid; it is the pharmacist's responsibility to confirm that the elements of good faith dispensing are satisfied prior to dispensing.

→ **NOTE: For Hospice and Oncology Patients Only:**
If you are unable to reach the prescriber's clinical staff, the pharmacist may fill the prescription without verification provided the elements of Good Faith Dispensing are met.

The following are examples that should alert a pharmacist to questionable circumstances. This list is not intended to be all inclusive. A "yes" answer to any of the questions below does not necessarily equate to a refusal to fill. A "yes" answer means that the pharmacist has a responsibility to follow up with either the patient and/or prescriber's clinical staff for additional information to satisfy the good faith requirements. Pharmacists shall use their professional judgment when determining if the elements of good faith are present prior to dispensing controlled substance prescriptions.

***Usual Course of Professional Practice:***

- Is the controlled substance prescription written outside the usual course of the prescriber's professional practice or specialization, also known as their scope of practice?
    - For example: a pediatrician prescribing pain medications for an adult, or a pain clinic doctor prescribing the same medication regimen for all of his patients.
- Are there unusual geographical distances between the patient, pharmacist and/or prescriber that cannot be reasonably explained?
- Is there a lack of a consistent prescriber/patient relationship?
- Does the prescription appear to be issued pursuant to an online diagnosis questionnaire? For example, does the prescriber only list a website on the prescription which indicates that he/she has no physical office address where patients can be examined?

***Trends for Prescribers and Patients:***

Is there a noticeable trend in controlled substance prescribing by one prescriber or for a large number of patients such as:

- Unusual dosages, directions, or quantities beyond those normally prescribed?
- Dosages or directions that conflict with approved labeling?
- Frequent combination prescriptions for known drug "cocktails" such as a benzodiazepine, opioid and carisoprodol?
- Increased frequency of prescriptions for the same or similar controlled substances?

CONFIDENTIAL

### *Prescribers:*

**Is the prescriber:**
- Unwilling to provide the reason for prescribing the controlled substance in order for the pharmacist to confirm that it is for a legitimate medical purpose?
- Unwilling to partner with the pharmacist and provide necessary documentation such as diagnosis, previous therapies, expected length of therapy, etc.?
- Always difficult to reach and/or only willing to communicate through office staff?
- Abusive or threatening?

**Does the prescriber:**
- Consistently write prescriptions for controlled substances for the same patient or for several different patients?
- Frequently authorize early refills without explanation or documentation?

Does the prescriber's practice:
- Operate as a "cash only" business and not accept government or 3rd party insurance payment?
- Have a different phone number on the prescription than found using the "prescriber inquiry" function in Intercom Plus?

### *Patients:*

**Does the patient:**
- Consistently request early refills?
- Exhibit "drug seeking" type behaviors?
- Selectively fill only controlled substance prescriptions?
- Request to pay by cash or by using a cash discount card (in a possible attempt to circumvent third party billing restrictions)?
- Have controlled substance prescriptions from several different prescribers?
- Is the patient unable to provide a valid reason for taking the controlled substance (i.e. a valid diagnosis or legitimate medical purpose)?
- Is the patient or patient's agent unable to present a valid ID?
- Do multiple patients drop off prescriptions around the same time for the same medication from the same prescriber?
- Is the individual picking up controlled substance prescriptions on behalf of multiple patients? Do these individuals reside at different addresses or have no apparent relationship to each other?

CONFIDENTIAL
WAGMDL00005361

> **Prescriptions:**
>
> **Does the prescription:**
> - Appear to be altered or forged?
> - Contain misspellings?
> - Contain atypical abbreviations or none at all?
> - Have an unusual presentation – prescriber's handwriting is too legible, is written in different color inks, different handwriting, or with erasure marks?

6. ***Document***: It is imperative that pharmacists document all efforts used to validate good faith dispensing.
   - Prescriber information: If the prescriber's clinical staff confirms the validity of the prescription, document the date, name of the individual spoken to and any other pertinent information such as diagnosis, previous therapy, length of treatment, etc. on the prescription hard copy and/or annotate the image.
   - Patient information: If the patient provides an ID or other pertinent information such as medical history, health conditions, allergies, previous therapy, etc., annotate the image, and/or document the information on the prescription hard copy. Update the information in the patient profile or in comments as appropriate.
   - Elements of Good Faith: Document any information pertaining to the elements of good faith on the prescription hard copy and/or annotate the image.

7. ***Pharmacist Action***: After reviewing the elements of good faith and following the validation procedures, the pharmacist must use his or her professional judgment to determine how to proceed:

   - ***Dispense***: If the prescription is valid <u>and</u> meets the elements of Good Faith, process and dispense the prescription as usual.

   - ***Not Valid to Dispense***: If the prescriber indicates that the prescription is not valid, document the prescription with the following: "Rx not valid per prescriber" and do not dispense.

   - ***Refusal to Dispense***: If the prescriber informs the pharmacist that a prescription for a controlled substance is valid, but the pharmacist determines that the elements of good faith dispensing are not present, the pharmacist has a responsibility to refuse to dispense.

CONFIDENTIAL

WAGMDL00005362

> **NOTES:**
>
> - **If you are unable to satisfy the elements of good faith, inform the patient that you are unable to fill the prescription. Do not provide inaccurate information to the patient such as misrepresenting that you are out of stock or stating that the prescriber is under investigation. Any prescription for which the pharmacist is not satisfied that the elements of good faith are met can be refused based on the pharmacist's discretion.**
>
> - **Dispensing a prescription that the pharmacist knows is fraudulent is a violation of state and federal law. If asked by law enforcement to dispense a fraudulent prescription, do NOT dispense and inform law enforcement that this is a violation of state and federal law. Knowingly dispensing a prescription with anything other than what is written on the prescription (i.e., candy, OTC medication, etc.) is a violation of company policy. Violation of state and federal law and/or company policy will result in disciplinary action, up to and including termination of employment.**

8. ***Reporting Regulations (state specific)***: If your state has additional regulations for refused prescriptions, such as reporting to local law enforcement or documenting the refusal on the hard copy, follow your state's regulations.

## Roles and Responsibilities

Everyone in the pharmacy has a role in ensuring that the elements of Good Faith Dispensing are met. While <u>all</u> pharmacists and technicians have an obligation to assist with validation of Good Faith Dispensing requirements during the dispensing process, the **Product Review Pharmacist** has the ***ultimate responsibility*** for ensuring that the elements of Good Faith are present.

During the Product Review process, the pharmacist is attesting not only that the product is correct but also that Good Faith Dispensing guidelines have been validated and documented appropriately. The goal is that all elements of Good Faith Dispensing have been validated before getting to the Product Review Pharmacist. The Product Review Pharmacist should then be able to confirm the elements of Good Faith Dispensing have been met and continue with the dispensing process.

CONFIDENTIAL

## Summary of Good Faith Dispensing (GFD) Procedures By Role and Responsibility:



\*Use PDMP - if available in your state

\*\*Reporting Regulations - only if required by your state

\*\*\*Assign CAP/Patient Chart Consult - if patient consultation is deemed appropriate

→ **NOTE:** In stores that fill via the Retail Filling Process (RFP), only a pharmacist should perform the Product Review process for all controlled substances. Technicians should not perform Product Review on any controlled substances and must pass to a pharmacist to complete the Product Review process.

## Office-Use Prescriptions

Prescriptions must be issued for a specific patient. Prescriptions written for "office use" are not valid.

## Emergency Schedule II Dispensing

Notify your district manager if a prescriber fails to provide a hard copy for an emergency Schedule II telephone prescription within the legally required time period. The pharmacy supervisor will evaluate the situation and then contact the appropriate regulatory agencies, if necessary.

CONFIDENTIAL

WAGMDL00005364

Revised 5/8/2017
Revised 5/11/2016
Revised 2/21/2014
Revised 8/01/2013
Revised 6/11/2012
Revised 11/08/2011
Revised 7/17/2011
Revised 6/20/2011
Revised 3/28/2007
Revised 2/7/2007

CONFIDENTIAL

WAGMDL00005365