# PSJ2 Exh 67

**To:** Finnell, Dr. Deanna[/O=PURDUE/OU=PURDUE US/CN=Sales and Marketing - Field/cn=FinnellD]
**Cc:** Miller, Lisa Dr.[/O=PURDUE/OU=PURDUE US/CN=Sales and Marketing - Field/cn=MillerLi]
**From:** Plant, Dr. Ruth
**Sent:** Fri 2/20/2004 11:06:04 AM
**Subject:** RE: Compassionate Care Task Force: My recommendations for improving state law, from Dr. Eric Chevlen

Have you shared this with Brain Rosen- I think he would be interested.
Thanks


Ruth Plant, Pharm D
Area Director, Medical Liaisons
Purdue Pharma L.P.

Office 330-653-9109
Fax: 330-655-8933
*Obstacles are things a person sees when he takes his eyes off his goal.*

-----Original Message-----
**From:** Finnell, Dr. Deanna
**Sent:** Friday, February 20, 2004 7:51 AM
**To:** Plant, Dr. Ruth
**Subject:** FW: Compassionate Care Task Force: My recommendations for improving state law, from Dr. Eric Chevlen

fyi...
-----Original Message-----
**From:** Eric Chevlen [mailto:echevlen@neoucom.edu]
**Sent:** Thursday, February 19, 2004 2:57 AM
**To:** 'Virginia Haller'; Amjdgj@aol.com; hospiceoh@aol.com; Pattyda671@aol.com; Pvicente1@aol.com; Writerandy@aol.com; TBENEDICT@bop.state.oh.us; Gregory.Jewell@bwc.state.oh.us; GRETTET@ccf.org; STANTOM@ccf.org; weidn0@cchmc.org; sfriebert@chmca.org; corneliamanuel@fuse.net; rgregg@fuse.net; ccass@hospiceofdayton.org; haganoffice@maild.sen.state.oh.us; jjordan@mailr.sen.state.oh.us; kcoughli@mailr.sen.state.oh.us; msmith2@mco.edu; Tom.Dilling@med.state.oh.us; William.Schmidt@med.state.oh.us; margaret.kruckemeyer@med.va.gov; Veronica.Steffen@med.va.gov; Benedetti-1@medctr.osu.edu; PrattC@mh.state.oh.us; smilne@nur.state.oh.us; dfoley@ohiohealth.com; wwheeler@ohiohealth.com; marx@ohiou.edu; grauer@pccg.org; Jackson, Catherine; Finnell, Dr. Deanna; tvp@po.cwru.edu; OHPRO.BPILOUS@sdps.org; dstevenson@stateoftheheartcare.org; radwanys@summa-health.org; Amy.pettigrew@uc.edu; m.a.hobbs@usa.net; mcdonald@your-net.com
**Cc:** dheidrich@cinci.rr.com; ej@ejthomas.us; 'Debra Smith'; 'Gary Sieg'; life@ohiolife.org; BPILOUS.OHPRO@sdps.org; michelle@tompappas.com
**Subject:** Compassionate Care Task Force: My recommendations for improving state law, from Dr. Eric Chevlen

To my colleagues on the compassionate care task force,

We shall be meeting Friday to make conclusions about the recommendations that we shall be making to the legislature on how to improve the lot of pain patients in Ohio. In our discussions, I have heard a consensus that Ohio physicians are not practicing at a quality level commensurate with what has been discovered in clinical research.  In

CONFIDENTIAL
PPLPC023000040965

particular, their prescribing of opioids for chronic pain is repeatedly-and I think correctly-described as timid and inadequate.

Over the months since we began our meetings, I have made it my business to discuss opioid prescribing patterns with dozens, if not scores, of my colleagues, to learn why they treat pain so poorly. Almost always the reply is the same: "I'm not comfortable doing that." This is not the answer they would give if I were to ask them why they don't treat, say, lung cancer differently. To that question, they would answer, "I don't know enough about it."

The key point is this: *Ohio physicians avoid the proper prescribing of opioids for chronic pain, not because of ignorance, but because of fear.*

If this fear is not addressed, if it is not mitigated, all our educational efforts and model programs will have been for naught.

There is much the legislature can do to reduce the exaggerated, but not irrational, fear that physicians have in prescribing opioids.

1. Fear of <u>criminal</u> prosecution for questionable and even negligent clinical decisions must be eliminated. We physicians read how doctors in other states have been tried for the crime of homicide based on their prescribing of controlled substances. Some of these cases have involved prescribing of opioids. The worst of these cases may be appropriately punished by loss of licensure and civil law suit, but criminal prosecution in such cases is both unjust (because there was no criminal intent) and, more importantly, unwise because they create a deterrent to the proper prescribing of the drugs associated in the public mind with these cases.

2. Fear of lawsuit for secondary damage of prescribing must be eliminated. Under current law, a doctor prescribing medication for patient A may find himself sued by person B under the theory that patient A, intoxicated by a prescribed medicine, damaged person B. These lawsuits, too, are unjust, since the "deep pocket" target of the lawsuit is not in a position to prevent the damage that A does to B. Specific legislation precluding such lawsuits should be passed.

3. Most physicians (probably wrongfully) believe that they are at risk of censure or sanction from the state medical board, drug task force, or DEA if they unwittingly prescribe controlled substances that are abused or diverted by their patients. *Reassurances from the state medical board will not reduce this fear.* The legislature should pass positive legislation specifically precluding such action. Such a law would not prevent appropriate administrative action against corrupt practitioners who knowingly engage in criminal diversion of controlled substances.

In our discussions, we have together understood the key distinction between drug addiction and drug dependence. The Ohio Administrative Code section regulating the state medical board reveals an enlightened understanding of this distinction when it states (4731-21-04)

CONFIDENTIAL
PPLPC023000040966

(A) Physical dependence and tolerance by themselves do not indicate addiction.

(B) Physical dependence and tolerance are normal physiological consequences of extended opioid therapy, and do not, in the absence of other indicators of drug abuse or addiction, require reduction or cessation of opioid therapy.

Unfortunately, dentists and dental hygienists practicing in Ohio are in a quite different circumstance. Currently, such practitioners in Ohio are subject to loss of license if they have a painful condition requiring chronic opioid therapy. The Ohio Revised Code section on dentists and dental hygienists reads as follows:

> 4715.30 (A) The holder of a certificate or license issued under this chapter is subject to disciplinary action by the state dental board for any of the following reasons: ...(8) Inability to practice under accepted standards of the profession because of physical or mental disability, dependence on alcohol or other drugs, or excessive use of alcohol or other drugs.

This is not a theoretical problem. A patient in my practice is a dentist whose license has been suspended by the dental board for the sole reason that she is drug dependent on (but not addicted to!) oral morphine to control chronic pain from a failed surgery. It is important to note in this case that even the expert opinions solicited and selected by the dental board opine that the dentist has no impairment of her judgment or skills, and is not addicted to any drug. Surely the legislature should assure that no Ohioan is deprived of any civil liberty or privilege because of chronic pain or its treatment. Section 4715.30 of the Ohio Revised code should be amended to prevent such abuses.

It has been a privilege to work with all of you on this important project, and I look forward to seeing you on February 20.

Yours truly,
Eric Chevlen, MD

CONFIDENTIAL