# PSJ2 Exh 96

Highly Confidential - Subject to Further Confidentiality Review

```
  1                UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
  2                     EASTERN DIVISION
  3
        IN RE: NATIONAL          )
  4     PRESCRIPTION             )   MDL No. 2804
        OPIATE LITIGATION        )
  5     _____ )   Case No.
                                 )   1:17-MD-2804
  6                              )
        THIS DOCUMENT RELATES    )   Hon. Dan A.
  7     TO ALL CASES             )   Polster
  8
                    THURSDAY, JUNE 13, 2019
  9
         HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
 10                CONFIDENTIALITY REVIEW
 11                        - - -
 12           Videotaped deposition of Gerard
 13     Hevern, M.D., held at the offices of Dechert
 14     LLP, 100 Oliver Street, 40th Floor, Boston,
 15     Massachusetts, commencing at 9:04 a.m., on
 16     the above date, before Carrie A. Campbell,
 17     Registered Diplomate Reporter and Certified
 18     Realtime Reporter.
 19
 20
 21                         - - -
 22
                  GOLKOW LITIGATION SERVICES
 23         877.370.3377 ph | 917.591.5672 fax
                     deps@golkow.com
 24
 25
```

Golkow Litigation Services                                    Page 1

```
 1                   So there's many, many factors
 2         that are -- and that's what I tried to
 3         give in my report.
 4   QUESTIONS BY MS. GAFFNEY:
 5         Q.    And how does the need to
 6   address underlying chronic pain conditions as
 7   a result of medical problems factor into the
 8   development of the opioid crisis?
 9                   MR. BLANK:  Objection.
10                   THE WITNESS:  How does the
11         what?
12   QUESTIONS BY MS. GAFFNEY:
13         Q.    The first factor you listed was
14   the need to address underlying chronic pain
15   conditions as a result of medical problems.
16                   How does that factor into the
17   current opioid crisis?
18                   MR. BLANK:  Objection.
19                   THE WITNESS:  Well, there was a
20         problem identified in the late '90s
21         and early 2000s that physicians were
22         inadequately managing chronic pain.
23   QUESTIONS BY MS. GAFFNEY:
24         Q.    How does that relate to an
25   opioid crisis?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                MR. BLANK:  Objection.
 2                THE WITNESS:  The pressure was
 3        placed upon the hospitals and
 4        communities and physicians to address
 5        this issue, and one of those
 6        medications or a group of medications
 7        that could address that issue were
 8        opioids.
 9   QUESTIONS BY MS. GAFFNEY:
10        Q.    So if this group of medications
11   is being used to address a need that had been
12   identified of inadequately managed chronic
13   pain, how does that relate to development of
14   an opioid crisis?
15                MR. BLANK:  Objection.
16                THE WITNESS:  It's a factor
17        that contributes to medicines that
18        were available -- excuse me, that were
19        available to be diverted.
20   QUESTIONS BY MS. GAFFNEY:
21        Q.    So am I correct in
22   understanding what you're saying is that the
23   increased availability of prescription
24   opioids was a factor in the development of
25   the opioid crisis?
```

```
 1                MR. BLANK:  Objection.
 2                THE WITNESS:  What I'm saying
 3        is that the appropriate prescription
 4        of opioids to patients who needed them
 5        did not contribute to the problem, but
 6        there was diversion of medications
 7        that did occur.
 8   QUESTIONS BY MS. GAFFNEY:
 9        Q.    And what is your understanding
10   of the diversion of medications that did
11   occur?
12        A.    Medicines were taken or stolen
13   from people who were getting prescriptive
14   prescriptions, legitimate prescriptions, and
15   that was a source of diversion.
16        Q.    Is it your opinion that all of
17   the opioids that were prescribed for chronic
18   pain were, as you say, legitimate
19   prescriptions?
20                MR. BLANK:  Objection.
21                THE WITNESS:  As far as I would
22        determine, yes.
23   QUESTIONS BY MS. GAFFNEY:
24        Q.    And what's your basis for
25   saying that?
```

Highly Confidential - Subject to Further Confidentiality Review

 1      A.     My own personal experience and
 2   the experience of people that I met in
 3   different pain conferences that I went to and
 4   different -- that were supported by the
 5   American Pain Society, that there was a
 6   legitimate use for opioids.
 7      Q.     So just to understand, it's
 8   based on your own personal experience but
 9   also your knowledge of the prescribing
10   practices of other physicians?
11      A.     I don't have personal knowledge
12   of prescribing practices, but, again, it's
13   a -- it is knowledge arrived by conversation
14   with and attendance at educational lectures
15   that were geared toward informing physicians
16   who were managing chronic pain.
17      Q.     When you refer to educational
18   lectures, you mentioned a moment ago the
19   American Pain Society.
20             Are you referring to the same
21   thing?  Are these educational lectures
22   supported by the American Pain Society?
23      A.     There's -- yes.
24      Q.     And with this knowledge arrived
25   by a conversation with other physicians and

Highly Confidential - Subject to Further Confidentiality Review

 1    attendants at lectures such as these, did you
 2    see a change in prescribing practices over
 3    time with respect to opioids?
 4         A.    There was an increase in the
 5    prescriptive -- in prescribing opioids during
 6    the 20 years that I attended these lectures,
 7    yeah.
 8         Q.    Going back to what you said a
 9    moment ago about diversion and the medicines
10    being taken or stolen from people who were
11    getting legitimate prescriptions as a source
12    of diversion, what's the basis for your
13    saying that?
14         A.    Police reports.
15         Q.    Your review of police reports;
16    is that what you mean?
17         A.    Presentations on TV and radio.
18         Q.    In your practice, have any of
19    your patients ever experienced having their
20    prescriptions taken or stolen from them?
21         A.    Yes.
22         Q.    Are you familiar with the term
23    "pill mill"?
24         A.    Yes.
25         Q.    And what is your understanding