# PSJ6 NPS Opp Exh 4

# Summit County Drug Unit

Summit County, Ohio

*Drew Alexander, Sheriff*



## CONFIDENTIAL INVESTIGATIVE REPORT

### Investigative Case Number : [REDACTED]

| | | | |
|---|---|---|---|
| **From :** | Detective Susan M. Barker | **Date of Incident :** | 03/05/02 |
| **To :** | Captain Baker/Sgt. Johnston | **Date Investigated :** | 03/05/02 |
| **Subject (s) :** | Trafficking in Drugs (Oxycontin) | **Arrests :** | [REDACTED] |
| **Place of Occurrence :** | 532 East Market Street | | |
| | Akron, Ohio | | |

## SYNOPSIS :

On Tuesday, March 5, 2002, Detective Barker met with Source [REDACTED] at his/her residence, at which time the Source had several telephone conversations with [REDACTED] reference the purchase of twenty-five (25) 40mg Oxycontin tablets. The Source arranged to meet [REDACTED] at 1630 hrs in the Pizza Hut parking lot on Market Street. The Source then made a controlled narcotics purchase of twenty six (26) 40mg Oxycontin tablets, a Schedule II Controlled Substance, from [REDACTED] for $544.00 cash. The transaction took place at 532 East Market Street in the Pizza Hut parking lot.

## CHARGES :

[REDACTED]

Trafficking in Drugs (Oxycontin, Schedule II), ORC 2925.03, F3

## ACTION TAKEN :

1.  On Tuesday, March 5, 2002, at approximately 1100 hrs, Detective Barker met with Source [REDACTED] at his/her residence. The Source states he/she has purchased Oxycontin approximately 10 times over the past three months from [REDACTED]. On March 5, the Source had several telephone conversations with [REDACTED] regarding the purchase of (25) 40mg Oxycontin

*Participating Agencies: County of Summit Sheriff and Prosecutor, Akron & Barberton Police, Bureau of Alcohol Tobacco & Firearms, Cuyahoga Falls Police, Drug Enforcement Administration, Federal Bureau of Investigation, Internal Revenue Service, Ohio B C I & I, and Stow & Twinsburg Police.*

**Continuation of Confidential Investigative Report**
Page 2 of 5

tablets in the presence of Detective Barker. Detective Barker interviewed the Source regarding the conversations he/she had with ▆▆▆ The following is a summary of the statements made by the Source regarding the telephone conversations he/she had with ▆▆▆▆▆ on March 5, 2002.

> The Source stated ▆▆▆ originally had told ▆▆ the Oxycontin pills were $20.00 each. During one of the telephone conversations on March 5, 2002, ▆▆▆ stated she had raised the price $1.00 per pill, stating she could not continue to take a loss on the pills. The Source stated they then discussed how much it would cost to purchase 25 pills, at the new rate. ▆▆▆ replied it would cost $525.00 for (25) 40mg Oxycontins. During this telephone conversation, the Source stated ▆▆▆ asked ▆▆ whether ▆▆ was also interested in buying any Adipex, a Schedule IV controlled substance. The source replied ▆▆ was only interested in the Oxycontin but that if ▆▆ did change her mind, ▆▆ might want 5 or 10 of the Adipex. During the final telephone conversation, the Source arranged to meet ▆▆▆▆▆▆ at 1630 hrs in the Pizza Hut parking lot on East Market Street.

It was determined that the Source would make a controlled purchase of (25) 40mg Oxycontin tablets from ▆▆▆▆▆ on March 5, 2002.

2. At approximately 1530 hrs, members of the Summit County Drug Unit briefed at the Undercover location and the following assignments were made:

    | Captain Baker: | Supervisor/Surveillance |
    | Sgt. Johnston: | Supervisor/Surveillance |
    | Det. Gottas: | Monitor and Record transmitter |
    | Det. Harris: | Surveillance |
    | Det. Barker: | Case Officer/Monitor and record transmitter |
    | Det. Zimcosky: | Surveillance |
    | Det. Ingram: | Surveillance |

3. At approximately 1545 hrs, Det. Gottas and Det. Barker met with [ REDACTED ] at the CVS Pharmacy on East Market Street. At approximately 1550 hrs, the Source's vehicle and person were searched for contraband with none found.

4. At approximately 1600 hrs, the source was provided with $550.00 cash from the Summit County Drug Unit funds. The buy money was previously copied for the file.

5. At approximately 1610 hrs, the Source was provided with a transmitting device for the purpose of monitoring and recording the drug transaction. The device was tested and found to be operating properly by Det. Gottas.

6. At approximately 1625 hrs, the Source left the meet location followed by Det. Gottas and Det. Barker. At approximately 1627 hrs, the Source arrived at 532 East Market Street and parked in the back of the Pizza Hut parking lot. The other surveillance units were set up in the area.

**Continuation of Confidential Investigative Report**
Page 3 of 5

7. At approximately 1636 hrs, ▮▮▮▮▮ arrived driving a black, ▮▮▮▮▮ license plate ▮▮▮▮▮. At approximately 1637 hrs, the Source exited his/her vehicle and got into ▮▮▮▮▮'s vehicle.

8. At approximately 1638 hrs, ▮▮▮▮▮ told the Source it would be $525.00 for (25) Oxycontin. The Source then began counting out the money to ▮▮▮▮. The Source stated he/she had $550.00 and ▮▮▮▮ replied that she did not think she had the correct change. The Source asked for one more pill and ▮▮▮▮ stated that she would then owe her $6.00 in change. ▮▮▮▮ then gave the Source an additional pill and $6.00 in change. ▮▮▮▮ and the Source then discussed whether all the pills were there. ▮▮▮▮ repeatedly stated that there were absolutely 25 pills in the packet in addition to one added pill. ▮▮▮▮ told the Source that he/she could count them if he/she wanted to and the Source stated he/she was afraid he/she would spill them on the floor and did not count them. The Source then discussed calling her next week to purchase more pills.

9. At approximately 1641 hrs, the Source exited the ▮▮▮▮▮ and returned to his/her vehicle. He/She could be heard over the transmitter stating that he/she had purchased the Oxycontin from ▮▮▮▮. The Source drove out of the parking lot at Pizza Hut and was followed by Det. Gottas and Det. Barker back to the original meet site.

10. At approximately 1643 hrs, the Source returned to the CVS parking lot followed by Det. Gottas and Det. Barker. At approximately 1644 hrs, the Source handed Det. Gottas a folded piece of paper containing pills, one loose pill and $6.00. The Source was then debriefed by Det. Gottas and Det. Barker. The Source's vehicle and person were again searched for contraband with none found. The following is a summary of the debriefing statement made by the Source:

    > The Source stated he/she arrived in the Pizza Hut parking lot and parked his/her vehicle. He/she stated several minutes later ▮▮▮▮ arrived driving a ▮▮▮▮▮▮▮▮▮▮. The Source stated he/she then exited ▮▮ vehicle and got into ▮▮▮▮▮▮. The Source states ▮▮▮▮ then removed a folded piece of paper from her purse and said it would be $525.00. The Source states he/she then began counting the money and stated he/she had $550.00. The Source says ▮▮▮▮ then said she may not have the correct change, at this time the Source asked for an additional pill and ▮▮▮▮ removed it from her purse. The Source states they then had a conversation about how much change was due. The Source states ▮▮▮▮ said the change would be $6.00 and that she then handed him/her the change. At this time, the Source states they talked briefly about the Source calling her next week for some more pills. The Source states he/she then exited ▮▮▮▮'s vehicle and returned to his/her vehicle. The Source then drove back to the original meet site and met with Det. Gottas and Det. Barker.

11. At approximately 1648 hrs, Det. Harris advised over the radio that ▮▮▮▮▮ had been traffic stopped and taken into custody on Forge Street off of East Market Street.

**Continuation of Confidential Investigative Report**
Page 4 of 5

12. At approximately 1650 hrs, the debriefing of [REDACTED] was concluded and the Source left the scene. Det. Gottas and Det. Barker then drove to the location were ▮▮▮▮▮ was in custody.

13. At approximately 1700 hrs, the vehicle driven by ▮▮▮▮▮ during the controlled purchase was towed from the scene.

14. At approximately 1705 hrs, Det. Zimcosky transported ▮▮▮▮▮ to the Sheriff's Detective Bureau, followed by Det. Gottas, Det. Barker and Sgt. Johnston.

15. At approximately 1717 hrs, Det. Barker in the presence of Det. Gottas and Det. Zimcosky advised ▮▮▮▮▮ of her miranda rights. ▮▮▮▮▮ then verbally acknowledged that she understood her rights and agreed to make a statement without an attorney present. Det. Zimcosky in the presence of Det. Barker and Det. Gottas then interviewed ▮▮▮▮▮. The following is a summary of the statements made by ▮▮▮▮▮ during the interview.

> ▮▮▮▮▮ stated she had spoken with the Source several times on March 5, 2002. She stated she discussed selling the Oxycontin and possibly the Adipex with the Source during these telephone conversations. She stated she raised the price $1 per pill. ▮▮▮▮▮ stated she had a valid prescription for the Oxycontin and the Adipex. She stated she would sell half of the Oxycontin script amount (approximately 65 pills) each month. ▮▮▮▮▮ stated she left work on March 5, 2002, and met the Source in the parking lot of Pizza Hut. She states she was driving her black ▮▮▮▮▮. She stated she purchased the ▮▮▮▮▮ in 1997 through the Godard Leasing Co. and that the vehicle was almost paid off. She admitted to selling (26) 40mg Oxycontin tablets to the Source on the listed date and stated she was doing it to pay off her debt. She stated she charged the Source $21.00 per pill. ▮▮▮▮▮ stated when she ran out of pills and was unable to get a refill, she would purchase the pills from several people she knew. She stated she had purchased (50) 40mg Oxycontin on March 5, 2002, from a B/M she knew for $11.00 per pill, during her lunch break. ▮▮▮▮▮ stated she has sold Oxycontin to the Source several times. She also stated she has sold Oxycontin to other people. ▮▮▮▮▮ stated she knew it was wrong to sell the pills but needed the money.

17. It was determined that due to ▮▮▮▮▮'s cooperation and her lack of any criminal history, she would be released and allowed to return March 7, 2002, for processing.

18. On March 7, 2002, at approximately 1000 hrs, Det. Barker and Det. Zimcosky met with ▮▮▮▮▮ and her attorney Edward Webber at the Akron Police Department. ▮▮▮▮▮ was then charged with Trafficking in Drugs (Oxycontin, a Schedule II Controlled Substance) a Felony of the third degree. Det. Barker recommended that ▮▮▮▮▮ receive a signature bond with the condition she be booked into the Summit County Jail. The signature bond was granted by Judge Moore and ▮▮▮▮▮ was transported by Akron Police Officer Barclay to the Summit County Jail. ▮▮▮▮▮ was then booked into the Summit County Jail and later released on a signature bond.

**Continuation of Confidential Investigative Report**
Page 5 of 5

## EVIDENCE :

The following items were entered into Summit County Drug Unit Property by Det. Gottas, narcotics evidence to be submitted to Ohio BCI&I for analysis.

| | |
|---|---|
| DU-02-11750: | One audio cassette tape of recorded drug transaction between REDACTED and _____ for (26) 40mg Oxycontin tablets purchased for $544.00 |
| DU-02-11751 | One white paper towel package containing (25) 40mg Oxycontin tablets and (1) loose 40mg Oxycontin tablet purchased for $544.00 cash by REDACTED from _____ |
| DU-02-11752 | One plastic prescription bottle containing (94) 40mg Oxycontin tablets prescribed to _____ found in purse by Det. Harris |
| DU-02-11753 | One small white envelope containing (46) Adipex tablets found in purse by Det. Ingram |
| DU-02-11754 | $55.00 cash in US currency found in purse by Captain Baker |
| DU-02-11755 | Copy of buy money used to purchase (26) Oxycontins from _____ |

## PHYSICAL DESCRIPTION(S) :

| Name: ▇▇▇▇▇ | Race/Sex: W/F | Hgt : 5'01" |
|---|---|---|
| ▇▇▇▇▇ | DOB: ▇▇▇ | Wgt : 170 |
| Akron, Ohio 44313 | SSN: ▇▇▇ | Hair : Blonde |
| Telephone ▇▇▇ | Control #: 112482 | Eyes : Blue |

## VEHICLE DESCRIPTION(S) :

| Ohio Registration: ▇▇▇ | ▇▇▇ | ▇▇▇ |
|---|---|---|
| Godard Leasing Co. | ▇▇▇ Road | |
| | Akron, Ohio | |

Respectfully Submitted :

*Detective Susan M Barker*

3/07/02
Date