# PSJ2 Exh 120

Highly Confidential - Subject to Further Confidentiality Review

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION
 3    IN RE:  NATIONAL        :   MDL No. 2804
      PRESCRIPTION OPIATE     :
 4    LITIGATION              :   Case No. 17-md-2804
                              :
 5    APPLIES TO ALL CASES    :   Hon. Dan A. Polster
                              :
 6                            :
 7
 8                    HIGHLY CONFIDENTIAL
 9         SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
10
11                         - - - -
12                     JANUARY 4, 2019
13                         - - - -
14       VIDEOTAPED DEPOSITION OF ANTHONY MOLLICA,
15   taken pursuant to notice, was held at Marcus &
16   Shapira, One Oxford Center, 35th Floor, Pittsburgh,
17   Pennsylvania 15219, by and before Ann Medis,
18   Registered Professional Reporter and Notary Public in
19   and for the Commonwealth of Pennsylvania, on Friday,
20   January 4, 2019, commencing at 8:06 a.m.
21                         - - - -
22                GOLKOW LITIGATION SERVICES
            877.370.3377 phone | 917.591.5672 fax
23                     deps@golkow.com
24
25
```

1  of.

2  BY MR. HUDSON:

3      Q.   Mr. Mollica, my questions are going to

4  be focused on pages 4, 5, 6 and 7 of this

5  document.

6      A.   Are these numbers or numbered?

7      Q.   No, I'm sorry, I don't believe the pages

8  are numbered.

9      A.   You said 4?

10     Q.   Yeah, where it says Settlement Agreement

11 with the State Board of Pharmacy. Then underneath

12 that, Giant Eagle #4098.

13     Do you agree or do you see at the front that

14 these are minutes of the December 5 through 7,

15 2011 meeting of the Ohio State Board of Pharmacy?

16     A.   Yes.

17     Q.   And Giant Eagle operated retail

18 pharmacies in Ohio; correct?

19     A.   Yes.

20     Q.   And do you know Kelly Chappell?

21     A.   I'm familiar who she is.

22     Q.   Who is Kelly Chappell?

23     A.   A pharmacist.

24     Q.   And was she a pharmacist at a Giant

25 Eagle pharmacy in Ohio?

 1          A.    Yes.

 2          Q.    And do you see on the seventh page of

 3   this document -- I apologize it's two sided -- do

 4   you see the signature of Kelly Chappell there

 5   dated 11/11/2011?

 6          A.    I don't see a signature, no.  I'm sorry.

 7          Q.    No problem.

 8          A.    I see a line where it has her name on

 9   it, yes.

10          Q.    You see the S?

11          A.    Yes.  Thank you.

12          Q.    So it's an electronic signature.

13          A.    Understood.

14                MR. KOBRIN:  Ty, do you know if it's

15   related to the jurisdictional question?

16                MR. HUDSON:  I don't.

17   BY MR. HUDSON:

18          Q.    If you could, just take a moment to look

19   at the section of these minutes that start

20   Settlement Agreement with the State Board of

21   Pharmacy, Docket Number D-110714-197, that page

22   through the page which Ms. Chappell has signed.

23                MR. KOBRIN:  I have a standing objection

24   to this because I think this incident and

25   everything related to it occurred outside of the

Highly Confidential - Subject to Further Confidentiality Review

 1   City of Cleveland, County of Summit, County of
 2   Cuyahoga and any other jurisdiction relevant to
 3   this Track One case.  I'm not sure how this is
 4   relevant.
 5            (Witness reviewed the exhibit.)
 6            THE WITNESS:  I've read it.
 7   BY MR. HUDSON:
 8       Q.   Mr. Mollica, have you had a chance to
 9   review the settlement agreement between Giant
10   Eagle and the State Board of Pharmacy?
11       A.   The four pages that start on page 4 and
12   end with Kelly Chappell's signature, yes.
13       Q.   Yes.  If you see on the first page
14   there, I guess a third of the way down on page 4,
15   it starts out R2012-102 Settlement Agreement with
16   the State Board of Pharmacy.
17       A.   Yes.
18       Q.   And before coming here today, were you
19   aware that Giant Eagle pharmacy entered into a
20   settlement agreement with the State Board of
21   Pharmacy in Ohio?
22       A.   Yes.
23            MR. KOBRIN:  Objection.
24   BY MR. HUDSON:
25       Q.   You were aware of this particular

Highly Confidential - Subject to Further Confidentiality Review

 1   agreement?

 2       A.   I don't know the details of the

 3   agreement, but I'm aware there was a situation in

 4   that particular location and that we complied with

 5   whatever the state board pieces were.

 6            MR. KOBRIN:  Ty, do you consent to our

 7   standing objection on this being outside the

 8   jurisdiction?

 9            MR. HUDSON:  Yes.

10   BY MR. HUDSON:

11       Q.   Mr. Mollica, you've testified to your

12   knowledge, Giant Eagle always complied with the

13   law; right?

14       A.   That's correct.

15       Q.   But this would be an example where the

16   State of Ohio Board of Pharmacy charged Giant

17   Eagle with not complying with the law; correct?

18            MR. KOBRIN:  Object to form.

19            THE WITNESS:  That's actually not how

20   I'm reading it, no.

21   BY MR. HUDSON:

22       Q.   You don't read this as the State of Ohio

23   accusing Giant Eagle Pharmacy of not complying

24   with the law?

25            MR. KOBRIN:  Object to form.

Highly Confidential - Subject to Further Confidentiality Review

```
 1              THE WITNESS:  Could you direct me to a
 2    particular passage where it says that Giant Eagle
 3    was compliant with the law?
 4    BY MR. HUDSON:
 5         Q.   Was not compliant with the law?
 6         A.   Could you direct me to a part there?
 7         Q.   I'll just walk you through.  We'll go
 8    through numbers two, three.
 9              Number two says, "Giant Eagle Pharmacy #4098
10    did from May 1, 2009 through January 21, 2011 fail
11    to provide effective and approved controls and
12    procedures to deter and detect theft and diversion
13    of dangerous drugs, to wit:  The following
14    controlled substances and dangerous drugs where
15    stolen from the pharmacy, yet internal control
16    procedures failed to deter or detect the theft.
17    The drugs were stolen by an inadequately
18    supervised technician who admitted to a board
19    agent that the drugs were diverted to her addicted
20    husband and also sold to another individual."
21         A.   I see that line, but I don't see a
22    reference that it's not complying with the law.
23    It sounds like a criticism of the internal
24    control.
25         Q.   Who has the responsibility to create
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   internal controls?
 2          MR. KOBRIN:  Object to form.
 3          THE WITNESS:  Everyone including the
 4   pharmacist, the company, everybody.
 5   BY MR. HUDSON:
 6      Q.  Who is the named party in this action
 7   that's brought by the Ohio State Board of
 8   Pharmacy?
 9          MR. KOBRIN:  Object to form.
10          THE WITNESS:  I don't know how to read
11   the legal document.  Are you referring to Giant
12   Eagle 4098?
13   BY MR. HUDSON:
14      Q.  Yeah.  The legal entity is Giant Eagle;
15   right?
16      A.  Yeah.
17          MR. KOBRIN:  Object to form.
18      (HBC-Mollica Exhibits 6 - 7 were marked.)
19   BY MR. HUDSON:
20      Q.  As an example, I'll show you.  Let me
21   mark a couple more.  We can look at those and
22   compare those.  I hand you what I've marked
23   Exhibit 6.  We'll mark this one as Exhibit 7.
24      If we take a look here, Exhibit 5 are minutes
25   of the December 5 through 7, 2011 meeting of the
```

 1   supervised technician who admitted to a Board

 2   agent that the drugs were diverted to her addicted

 3   husband and also sold to another individual."

 4        Do you see that?

 5        A.   I see that.

 6        Q.   And then down below, it's got a list of

 7   drugs.  Do you see there a series of hydrocodone

 8   combination products?

 9        A.   Yes.

10        Q.   Of different strengths; correct?

11        A.   Yes.

12        Q.   Then underneath that, it says, "Such

13   conduct is in violation of Rule 4729-9-05 of the

14   Ohio Administrative Code."

15        A.   Yes.

16        Q.   And this document shows Giant Eagle

17   entering into a settlement of these accusations;

18   correct?

19             MR. KOBRIN:  Object to form.

20             THE WITNESS:  That's how I would

21   interpret it with the couple paragraphs I read.

22   BY MR. HUDSON:

23        Q.   Sure.  If Giant Eagle had the internal

24   control procedures in place like you talked about

25   that were tracking specifically each order as it

1      A.   Yes.

2      Q.   Number two is one of -- you understand

3  that number two then below is one of the

4  allegations or charges that was made by the state

5  Board of Pharmacy against this store?

6      A.   Yes.

7      Q.   And that is that Giant Eagle Pharmacy

8  #4098 did from May 1, 2009 through January 21,

9  2011 fail to provide effective and approved

10  controls and procedures to deter and detect theft

11  and diversion of dangerous drugs, to wit:  The

12  following controlled substances and dangerous

13  drugs where stolen from the pharmacy, yet internal

14  control procedures failed to deter or detect the

15  theft; correct?

16      A.   Yes.  That's what it says.

17      Q.   Then number three also describes the

18  same.  When it carries onto the next page, it

19  actually specifically lists the drugs that were

20  admitted by a technician to a Board agent that

21  that list of drugs were diverted to her addicted

22  husband and also sold to someone else; right?  Do

23  you understand that?

24      A.   Correct.

25      Q.   That are those are the facts being