# PSJ2 Exh 136

```
 1                UNITED STATES DISTRICT COURT
 2            FOR THE NORTHERN DISTRICT OF OHIO
 3                      EASTERN DIVISION
 4                           - - -
 5    IN RE:  NATIONAL              :
      PRESCRIPTION                  :   MDL No. 2804
 6    OPIATE LITIGATION             :
      _____ :   Case No.
 7                                  :   1:17-MD-2804
      THIS DOCUMENT RELATES         :
 8    TO ALL CASES                  :   Hon. Dan A. Polster
 9                           - - -
10                 Monday, January 7, 2019
11         HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
                    CONFIDENTIALITY REVIEW
12
                             - - -
13
14         Videotaped deposition of TOM NAMETH, held at
15    the offices of Cavitch, Familo & Durkin,
16    1300 East Ninth Street, Cleveland, Ohio, commencing at
17    9:03 a.m., on the above date, before Carol A. Kirk,
18    Registered Merit Reporter and Notary Public.
19
20                           - - -
21
22
23             GOLKOW LITIGATION SERVICES
           877.370.3377 ph | 917.591.5672 fax
24                   deps@golkow.com
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    DDM didn't identify suspicious orders or stop
 2    them before they went out, right?
 3              MR. JOHNSON:  Objection.
 4         Q.   So that it could stop them before
 5    they went out?
 6         A.   So that they could stop them
 7    before they went out?
 8         Q.   Correct.
 9         A.   Yeah.
10         Q.   Okay.  They didn't?
11         A.   They didn't what?
12         Q.   This is like a Monty Python movie,
13    right?  Sometimes.  Let me ask the question
14    again.
15              So your testimony is that you
16    don't know whether DDM had the tools necessary
17    to identify suspicious orders and stop them
18    before they went out, right?
19         A.   Correct.
20         Q.   Okay.  So you would also agree
21    that DDM did not identify suspicious orders in a
22    way that would allow them to stop them before
23    they went out, right?
24              MR. JOHNSON:  Objection.
```

```
 1          Q.    And I think you said yes?
 2          A.    Yes.
 3          Q.    Okay.  You would agree that DDM's
 4   in the best position to ensure that any
 5   suspicious orders placed within its business are
 6   reported to the Ohio State Board and the DEA,
 7   right?
 8          A.    Yes.
 9          Q.    Okay.  Do you know what the most
10   dispensed drug was at DDM pharmacies, let's say
11   in 2014?
12          A.    Offhand, no.
13          Q.    Okay.  Do you know what the most
14   dispensed controlled substance was?
15          A.    I would -- I would be guessing if
16   I gave you an answer.
17          Q.    Okay.  Do you have a couple that
18   might be in the running?
19          A.    Controlled drugs?
20          Q.    Yeah.
21          A.    It could have been a
22   codeine-containing cough syrup.  Could have been
23   Ambien.
24          Q.    Anything else?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   says -- are you pointing specifically to orders
 2   of unusual size, that particular aspect of it?
 3   We never identified suspicious orders, so ...
 4            Q.   Did you ever have an order of
 5   unusual size?
 6            A.   Yes.
 7            Q.   Okay.  Did you ever report those
 8   orders?
 9            A.   Not after we reviewed them, no.
10            Q.   The answer to that question is you
11   never reported them, right?
12            A.   We never reported a suspicious
13   order.
14            Q.   Okay.  So DDM had unusual --
15   orders of unusual size, right?
16            A.   In this definition, it doesn't say
17   what unusual size is.  Is unusual size 100
18   bottles in their definition or not?  I mean,
19   that's very -- you know, you can determine
20   however you want the number on that.  So ...
21            Q.   But DDM defined unusual size to
22   orders on its own with its report that you
23   reviewed, didn't it?
24            A.   We looked at higher than normal
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1            A.    On -- in a theft situation, we
 2   caught it after the fact.
 3            Q.    And DDM has never reported a
 4   single suspicious order to the DEA or the Ohio
 5   State Board, right?
 6            A.    Correct.
 7            Q.    And DDM has never identified or
 8   reported a single possible suspicious order
 9   either, correct?
10            A.    Correct.
11            Q.    Okay.  All right.  Let's look at
12   Exhibit -- I think we're on 5.
13                  MR. JOHNSON:  4 maybe.
14                  MR. MULLIGAN:  The last letter was
15            4.
16                  MR. JOHNSON: You're right.  I'm
17            sorry.
18                         - - -
19            (DDM-Nameth Exhibit 5 marked.)
20                         - - -
21   BY MR. MULLIGAN:
22            Q.    Okay.  So this is an e-mail with
23   an attachment.  The e-mail is DDM53874, and the
24   attached document is DDM53912.  And I'll just
```