# SUMMARY SHEET FOR MANUFACTURER DEFENDANTS' REPLY
# IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
# ON PLAINTIFFS' PUBLIC NUISANCE CLAIMS

Plaintiffs continue to assert that the "public nuisance" for which they seek to hold Manufacturer Defendants[1] liable is the "opioid crisis," which they now further describe in their opposition papers as an "epidemic of opioid availability and use."  Opp'n at 1.  Prescription opioid "availability" and "use" are not inherently harmful, however; indeed, these medications play a critical beneficial role in the health and lives of many patients.

Plaintiffs' "absolute public nuisance" claims thus cannot survive based merely on evidence that Manufacturer Defendants made prescription opioids available or that they were used.  Even assuming something as multifaceted as the "opioid crisis" could ever be a public nuisance, Plaintiffs can only succeed on their "absolute public nuisance" claims if they have evidence of each link in the required causal chain, which at a minimum consists of:  (1) a Manufacturer Defendant engaging in some intentionally *wrongful* conduct that (2) caused *improper* "opioid availability" resulting in *harmful* "use," (3) to such a degree as to constitute a "significant interference with the public health."  Restatement (Second) of Torts at § 821B(2)(a).  They do not have evidence of this causal chain, and nothing in their opposition brief changes that fact.

Indeed, Plaintiffs have not provided evidence of even a single example of *wrongful* conduct by a Manufacturer Defendant that *caused* any harm, let alone evidence of wrongful conduct that caused the "opioid crisis."  This lack of evidence cannot be overcome by pointing to purported "aggregate" data.  Plaintiffs supposed "aggregate proof" does not show that any wrongful conduct caused any harm (much less a public nuisance), because none of that aggregate analysis considers or isolates any *wrongful* conduct.  Rather, Plaintiffs' experts attempted to measure the aggregate effect of all prescription opioid promotion -- lawful or unlawful -- on all prescription opioid sales nationwide.  There is no way for a fact-finder to determine, based on any of Plaintiffs' analyses, for example, which doctors, if any, were actually misled by Manufacturer Defendants' purported fraudulent marketing and, as a result of that marketing (as opposed to other factors), wrote medically unnecessary or excess prescriptions.

Plaintiffs must not only establish causation (which they fail to do), but they also must prove Manufacturer Defendants "intended to bring about the conditions" of "the opioid epidemic."  *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 863-64 (N.D. Ohio 2017).  The record is devoid of any evidence of such *intentional* conduct.

Moreover, Plaintiffs have not established substantial interference with any "public right."  A "public right" is one that "is common to *all* members of the general public," and, contrary to Plaintiffs' assertions, merely invoking the term "public health" does not mean the rights at issue in a particular case are "public rights."

Finally, despite Plaintiffs' assertion that there is "undisputed evidence of the Manufacturer Defendants' repeated violations of the CSA" (Opp'n at 13), the evidence actually shows that Plaintiffs have failed to identify a single suspicious order shipped by a Manufacturer to any customer in the Plaintiff counties or any other more general violation of a CSA duty by any Manufacturer Defendant.  Plaintiffs' statutory public nuisance claim fails for this reason as well.

---

[1] The Manufacturer Defendants were identified in the moving papers.

Teva Pharmaceutical Industries Ltd., Allergan plc, and Mallinckrodt plc are respectively an Israeli corporation, Irish holding company, and an Irish company that are not subject to and contest personal jurisdiction for the reasons explained in their motions to dismiss for lack of personal jurisdiction; they are specially appearing to join this motion, and, thus, they do not waive and expressly preserve their personal jurisdiction challenges.