IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090<br><br>and<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-op-45004 | MDL No. 2804<br><br>Hon. Judge Dan A. Polster |

**SUMMARY SHEET FOR DISTRIBUTORS' AND MANUFACTURERS' REPLY IN SUPPORT OF PARTIAL <u>SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS GROUNDS</u>**

Plaintiffs' Opposition is striking for the evidence it does not dispute and the evidence it does not present.

Plaintiffs allege injury with two aspects.  They allege injury from the opioid addiction crisis itself and seek equitable relief.  And they also allege injury from the increased costs of providing public services and seek relief in the form of compensatory damages.  As to that aspect of their injury for which Plaintiffs seek equitable relief, they make no effort whatsoever to dispute the abundant evidence that officials at every level and in every office of county government knew beginning in the 1990s of that injury—the crisis of opioid addiction in its many manifestations.  And, as to the injury for which they seek compensatory damages, Plaintiffs cannot deny that, if they incurred excessive out-of-pocket costs, they had to know it—

just as, if they incurred "lost opportunity" costs because employees were overwhelmed with opioid-related work (as Plaintiffs claim), they and their supervisors had to know that, too.

Plaintiffs offer no counter-evidence, nor even nakedly dispute, that before October 2012 they (1) knew about scores of DEA enforcement actions against, as well as DEA settlements with, certain Defendants based on allegedly inadequate suspicious-order monitoring; (2) had access to and cited ARCOS data showing that the volume of pills distributed to Cuyahoga and Summit Counties increased every year from 2003 onward; (3) knew that the State of Ohio publicly blamed the epidemic, in part, on allegedly improper marketing by Manufacturers; and (4) and knew, too, that West Virginia had filed lawsuits against 14 distributors in mid-2012 for inadequate reporting of suspicious orders.  This undisputed evidence (and more) shows that, before October 27, 2012, Plaintiffs knew the facts allegedly supporting their present legal theories that Defendants' conduct was the cause of their alleged injury.

In opposition, Plaintiffs offer a rag-bag of flawed arguments.

(1) They say they could not have sued earlier because they did not have the ARCOS transactional data until 2018.  But Plaintiffs did sue nine Manufacturer groups and three Distributors before they had access to transaction-level ARCOS data (and roughly 600 other plaintiffs sued similar line-ups of these defendants).

(2) Plaintiffs say they could not have sued earlier because Defendants denied any wrongdoing. Defendants continue to deny wrongdoing to this day, of course, yet Plaintiffs sued in 2017.  Mere assertion, unsupported by any evidence, that Plaintiffs were lulled by two defendants' settlements with DEA into believing that all manufacturers and distributors were adequately monitoring suspicious orders cannot overcome the uncontroverted evidence that

Plaintiffs knew from 2003 on the volume of pills distributed to Cuyahoga and Summit pharmacies—an amount they claim raised high a "red flag" regarding diversion.

(3) Plaintiffs also claim they could not have sued earlier because they did not know the full extent of the opioid abuse crisis until 2016, when deaths from illicit drug overdose deaths spiked.  But the overwhelming evidence—undisputed in the Opposition—shows that Plaintiffs knew about their alleged injuries giving rise both to their equitable claims and compensatory damages long before 2012.  Governing law is clear, however:  Plaintiffs need have known only that they were injured in some respect; they need not have known every aspect and the full dimension of that injury.

(4) Plaintiffs invoke tolling doctrines to excuse their failure to sue earlier.  But neither equitable tolling nor fraudulent concealment can be invoked unless Plaintiffs present evidence of their due diligence.  The Opposition offers no evidence of their diligence.

(5) As for Plaintiffs' arguments that special accrual rules apply to the public nuisance, unjust enrichment, RICO-injunctive relief, and OCPA claims, Plaintiffs disregard or misread the applicable case law.

For these reasons, Plaintiffs' pre-October 27, 2012 claims are time-barred, and the Court should enter partial summary judgment to Defendants on those claims.[1]  This result is compelled

---

[1] This Reply, as did Defendants' opening brief, frames the arguments with respect to the earliest limitations date at issue (October 27, 2012, for Cuyahoga's OCPA claim).  But each claim has its own limitations period, and Plaintiffs sued different defendants at different times.  *See* Opening Combined Brief ("Br.") [Dkt. 1892] at 6–8, Tables 1–4.

Teva Pharmaceutical Industries Ltd., Allergan plc, and Mallinckrodt plc are respectively an Israeli corporation, Irish holding company, and an Irish company that are not subject to and contest personal jurisdiction for the reasons explained in their motions to dismiss for lack of personal jurisdiction; they are specially appearing to join this motion, and, thus, they do not waive and expressly preserve their personal jurisdiction challenges.

by the law. It also will have the salutary effect of streamlining the trial, precluding Plaintiffs from recovering substantial damages based on stale claims, and facilitating a resolution of these matters.