# EXHIBIT A

A1397044.1

# SUMMARY SHEET FOR HBC SERVICE COMPANY'S
# <u>MOTION FOR SUMMARY JUDGMENT</u>

Plaintiffs' opposition to HBC Service Company's ("Giant Eagle") motion for summary judgment is remarkable for what it does not do.  That opposition offers no evidence that Giant Eagle distributed any opioids into Cuyahoga and Summit Counties (the "Counties") that were diverted.  It does not identify a single order that Giant Eagle shipped from its warehouse to its pharmacies that was suspicious under 21 C.F.R. § 1301.74.  It does not offer any actual evidence (as lawyer argument does not count for summary judgment purposes) that Giant Eagle's extensive SOM and other security measures did not comply with DEA regulations.  It does not point to any fine or allegation by the DEA that Giant Eagle ever violated Section 1301.74.  And perhaps most remarkably, Plaintiffs' opposition fails to acknowledge what is plain to all—that, if the DEA determined during its many audits that Giant Eagle's SOM program did not comply with its regulations, the DEA would have mentioned that to Giant Eagle.

Rather than offer counterevidence, Plaintiffs offer only excuses for their complete failure of proof against Giant Eagle.  First, Plaintiffs ask this Court to believe that, despite relying heavily on expert testimony of purported non-compliance with the CSA against other Defendants in the bellwether cases, they can somehow get by without such testimony against Giant Eagle.  But expert testimony on DEA regulatory compliance is essential to all claims asserted against all Defendants—including Giant Eagle.  Whether an industry participant has complied with an arcane, ambiguous, and complex regulation like Section 1301.74 is, by definition, beyond the common knowledge and understanding of a lay juror.  Even Plaintiffs acknowledged this unassailable proposition when, in opposing *Daubert* attacks on their DEA regulatory compliance experts, they told this Court that expert testimony regarding suspicious order monitoring is necessary to "assist the jury by providing important background and context on the complex regulatory scheme applicable to opioid manufacturers and distributors, which is likely unfamiliar to a layperson." Whitelaw Opp. at 13-14 (Dkt. 2189/2221).

Plaintiffs next try to excuse their lack of evidence by pointing to isolated incidents that occurred at Giant Eagle's pharmacies.  But the employee theft Plaintiffs identify occurred *outside of the Counties*.  Plaintiffs' other so-called evidence of pharmacy diversion is not evidence at all, but rather, a citation to *United States v. Eppinger*, 2012 WL 6930580 (N.D. Ohio Mar 13, 2012), an indictment of a drug dealer who used a stolen prescription pad to forge opioid prescriptions.  Notably, the fraudulent prescriptions in Eppinger—like the prescriptions Plaintiffs erroneously identified during discovery—were for opioid products that Giant Eagle's HBC warehouse *never distributed*.  As Plaintiffs well know, they have targeted the HBC warehouse solely because it distributed a single opioid—HCPs—to Giant Eagle pharmacies in the Counties from November 2009 to October 2014.

Plaintiffs are, therefore, left with nothing to defeat Giant Eagle's motion for summary judgment.  As explained below, Giant Eagle is entitled to summary judgment not merely because it had a miniscule market share of prescription opioids sales (though it did), but rather, because there is no evidence that Giant Eagle did anything wrong.  As Giant Eagle has said all along, Plaintiffs should have never pulled it into this lawsuit in the first place.

A1397044.1