**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**IN RE: NATIONAL PRESCRIPTION
OPIATE LITIGATION**

This document relates to:

*The County of Summit, Ohio, et al. v.
Purdue Pharma L.P., et al.*
Case No. 1:18-op-45090 (N.D. Ohio)

*The County of Cuyahoga, Ohio, et al. v.
Purdue Pharma L.P., et al*.
Case No. 1:17-op-45004 (N.D. Ohio)

**MDL No. 2804
Case No. 17-md-2804
Judge Dan Aaron Polster**

**REPLY TO MEMORANDUM OF LAW IN SUPPORT OF
PHARMACY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON CAUSATION (ECF 1869 & 2203)**

**TABLE OF CONTENTS**

Introduction ...................................................................................................................... 1

I.    Plaintiffs Present No Evidence that Orders Flagged as Potentially Suspicious Would Have Been Found Suspicious After Investigation. .................................................................... 2

II.   Plaintiffs Present No Evidence of Diversion from Suspicious Orders. ............................ 3

III.  Plaintiffs Present No Evidence of Injury Caused by Diversion from Suspicious Orders... 4

IV.   Plaintiffs Cannot Use "Substantial Factor" Causation to Evade "But-For" Causation. ..... 5

Conclusion ....................................................................................................................... 6

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burnworth v. Harper*,
   672 N.E.2d 241 (Ohio App. 1996)...........................................................................................3

*Burrage v. United States*,
   571 U.S. 204 (2014).................................................................................................................6

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)...................................................................................................................5

## INTRODUCTION

Pharmacy Defendants'[1] motion for summary judgment on causation goes virtually overlooked and entirely unrebutted by Plaintiffs.  Their 82-page response includes only four references to Pharmacy Defendants' motion.  *See* Resp. at 38, 50 n.14, 60, 66 (ECF 2203).  And in Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motion to Exclude Craig McCann and James Rafalski, they withdraw the only "evidence" they attempted to identify as evidence of diversion, confirming that Plaintiffs cannot satisfy their causation burden.  ECF 2253.

Instead of answering Pharmacy Defendants' arguments, Plaintiffs attack strawmen.  Rather than respond to Pharmacy Defendants' arguments regarding the absence of evidence of diversion from suspicious orders, Plaintiffs discuss foreseeability.  *Compare* Mot. at 7 (ECF 1869) ("Plaintiffs lack evidence that any shipment of a suspicious order resulted in diversion.") *with* Resp. at 68 ("[I]t was simply foreseeable, and foreseen by Distributor Defendants, that shipping suspicious orders causes diversion.").

Pharmacy Defendant's motion noted the absence of evidence for each of three steps in Plaintiffs' causation chain: (1)  that orders flagged as potentially suspicious would have ultimately been found to be suspicious after investigation; (2)  that shipping such "suspicious" orders resulted in diversion (because, for example, the order was shipped to a pill mill); and (3)  that the resulting diversion of the Pharmacy Defendant's suspicious orders injured Plaintiffs.  Pharmacy Defendants also argued that Plaintiffs cannot prove causation in the aggregate and instead must prove causation for each defendant individually.  Mot at 3.

---

[1] "Pharmacy Defendants" are CVS Rx Services, Inc. and CVS Indiana, L.L.C. ("CVS Distributors"), Rite Aid of Maryland, Inc., d/b/a Mid-Atlantic Customer Support Center ("Rite Aid"), Walgreen Co. and Walgreen Eastern Co. ("Walgreens"), HBC Service Company, an unincorporated operating division of Giant Eagle, Inc. ("Giant Eagle"), Discount Drug Mart ("DDM"), and Walmart Inc. ("Walmart").

Plaintiffs do not dispute that they must satisfy this burden for all asserted causes of action. The sole issue, then, is whether Plaintiffs have produced evidence to satisfy each step.  Because they have not, Pharmacy Defendants' motion should be granted.

**I.      Plaintiffs Present No Evidence that Orders Flagged as Potentially Suspicious Would Have Been Found Suspicious After Investigation.**

As Pharmacy Defendants explained in their motion, Plaintiffs have failed to identify any evidence that any Pharmacy Defendant shipped an actually "suspicious" order.

Plaintiffs misstate the evidence when they assert that "Dr. McCann calculated the number of orders . . . that Defendants should have flagged as 'suspicious.'"  Resp. at 30.  To the contrary, McCann expressly disclaimed any opinion that the orders he flagged were "suspicious": "That's way beyond my report . . . .  I don't have an opinion one way or the other."  McCann Dep., Ex. B, Vol 1, 149:3-150:9 (ECF 1966-17).

Moreover, even if McCann's flagged orders were potentially suspicious, Plaintiffs have no evidence that these orders would have been determined to be truly suspicious after an investigation. And they apparently concede that they have no evidence that investigation of any order would have revealed it to be suspicious.  To the extent Plaintiffs respond to Pharmacy Defendants' argument, Plaintiffs suggest that it is irrelevant what an investigation would have determined: "Absent such controls to identify potentially suspicious orders and ensure each order's legitimacy, Distributors could not lawfully ship any of these orders."  Resp. at 60.

But that response concerns breach—the causation question is whether Plaintiffs would have suffered the same harms if Pharmacy Defendants had conducted the due diligence that Plaintiffs contend that they should have performed.  If a potentially-suspicious order would have been found to be legitimate after an investigation, then the order would have shipped even had

Pharmacy Defendants complied with the duties alleged by Plaintiffs and any breach of a duty to investigate could not have caused harm to Plaintiffs.

Ohio law makes clear that Plaintiffs, not Pharmacy Defendants, bear the burden to prove what any investigation of a potentially suspicious order would have uncovered.  Plaintiffs have no answer to *Burnworth v. Harper*, 672 N.E.2d 241 (Ohio App. 1996),[2] which Pharmacy Defendants cited in their motion.

Plaintiffs do not even purport to identify evidence that, after investigation, any flagged orders would have been determined to be suspicious.  Plaintiffs thus have no evidence that any Pharmacy Defendant shipped an order that would not have been shipped had Pharmacy Defendants complied with the alleged duty to conduct due diligence.

## II.    Plaintiffs Present No Evidence of Diversion from Suspicious Orders.

Nor do Plaintiffs have any evidence of diversion from suspicious orders shipped by Pharmacy Defendants.  Plaintiffs do not dispute that they bear this burden.  *See* Resp. at 36 ("[T]he failure to prevent diversion is deemed wrongful precisely because diversion is expected to cause serious harm to the general public.").

Presumably because they lack evidence of causation, Plaintiffs instead respond with arguments about foreseeability.  *See* Resp. at 68 ("Thus, it was simply foreseeable, and foreseen by Distributor Defendants, that shipping suspicious orders causes diversion.").  But Plaintiffs cannot evade their obligation to prove that diversion from suspicious orders occurred.

There is no such evidence.  Only one sentence of Plaintiffs' response purports to identify evidence of diversion from suspicious orders: "As expert Rafalski testified, it was probable (greater than 51% likelihood) that these 'suspicious' shipments were, in fact, diverted into an illicit

---

[2] Plaintiffs admit that the case "turned on factual causation."  Resp. at 50 n.14.

market." Resp. at 60.  But as Pharmacy Defendants explained in their motion, Rafalski repeatedly conceded that he had no opinion whether any order was diverted to an illegal channel.  Mot. at 8-9 ("[D]id not do any analysis to see whether any specific suspicious order caused the diversion of any specific pills for nonmedical use.").  No finder of fact could credit this speculation disguised as opinion, which is found nowhere in Rafalski's expert report.

Indeed, Plaintiffs expressly abandon this opinion in their Daubert Response: "Mr. Rafalski is not expressing an opinion on the number of suspicious orders that were actually diverted."  ECF 2253 at 23; *see also* ECF 2253 at 25 (describing the opinion above as "an opinion Mr. Rafalski has not given" and characterizing his testimony as concerning whether "diversion **could** occur" (emphasis added)).

Given the clarification of Rafalski's testimony in Plaintiffs' Daubert response, no witness has purported to identify any diversion from suspicious orders.  Nor have Plaintiffs proffered any other evidence to that effect.  And without evidence of diversion from suspicious orders, Plaintiffs have insufficient evidence of causation against the Pharmacy Defendants.  Summary judgment is warranted.

## III.    Plaintiffs Present No Evidence of Injury Caused by Diversion from Suspicious Orders.

Not only have Plaintiffs failed to proffer evidence that could lead a jury to conclude there were any suspicious orders to begin with, but Plaintiffs fail to identify evidence of injury caused by diversion from any such suspicious orders.  To the contrary, Plaintiffs' response makes clear that their evidence concerns **all** injuries allegedly caused by **all** orders, with no attempt to relate any injuries to diversion from suspicious orders.  *See, e.g.*, Resp at 29 (suggesting that "tens of thousands of suspicious orders . . . contributed to a public nuisance and caused Plaintiffs to suffer enormous harms"); Resp. at 29 (stating that Dr. Whitelaw "assesses the impact of . . . shipments

of orders"); Resp. at 31 (tracing harms to "the excess quantity of opioid pills").  Plaintiffs' experts analyze harms from "the share of prescription opioid shipments that would have been avoided." Resp. at 32; *see also* Resp. at 70-76 (alleging harms from an increased volume of shipments).

But this evidence is irrelevant to their claims against Pharmacy Defendants: "[A]ny model supporting a plaintiff's damages case must be consistent with its liability case."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).  Pharmacy Defendants have been sued for breaching an alleged duty to prevent diversion.  *Cf.* Resp. at 36 ("Here, the failure to prevent diversion is deemed wrongful precisely because diversion is expected to cause serious harm to the general public.").

Plaintiffs cannot simply connect their alleged injuries to the shipment of orders.  Plaintiffs' theory of liability requires them to connect their injuries to (1) diversion (2) from suspicious orders.  Plaintiffs' Daubert Response confirms the distinction between over-prescribed opioids and diverted opioids.  *See, e.g.*, ECF 2253 at 23 n.32 (arguing that "diverted opioids" cause greater harms than "over-prescribed opioids").  If a "suspicious order" was used to fill prescriptions (even over-prescriptions) and not diverted, then Plaintiffs have no grounds to recover against the distributor that shipped the order.

Because Plaintiffs have no evidence that they have been injured by diversions from suspicious orders, Pharmacy Defendants are entitled to summary judgment.

## IV.    Plaintiffs Cannot Use "Substantial Factor" Causation to Evade "But-For" Causation.

Unable to establish but-for causation, Plaintiffs suggest, without developing the argument fully, that "substantial factor" causation permits them to avoid it.  Resp. at 34-36 (citing, *inter alia*, Prosser and Keeton, Law of Torts § 41, p. 267 (5th ed. 1984)).

The Supreme Court has already rejected Plaintiffs' characterization of the standard, explaining that "no case has been found where the defendant's act could be called a substantial factor when the event would have occurred without it":

> [T]he authors of [the treatise Plaintiffs cite] acknowledge that, even in the tort context, "[e]xcept in the classes of cases indicated" (an apparent reference to the situation where each of two causes is independently effective) "no case has been found where the defendant's act could be called a substantial factor when the event would have occurred without it." [W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 41, p. 268 (5th ed. 1984)].  The authors go on to offer an alternative rule . . . that "[w]hen the conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a but-for cause of the event, and application of the but-for rule to them individually would absolve all of them, the conduct of each is a cause in fact of the event." *Ibid.*  Yet, as of 1984, "no judicial opinion ha[d] approved th[at] formulation." *Ibid.*, n.40.

*Burrage v. United States*, 571 U.S. 204, 215–16 (2014).  Nothing about the law of substantial factor causation has changed between 2014 and today.

The Supreme Court was correct: a defendant's act cannot be called a substantial factor when the event would have occurred without the act.  And Plaintiffs cannot establish causation in the aggregate: each defendant must be a substantial cause of the harm.  Plaintiffs cannot rely on "substantial factor" causation to overcome the absence of evidence of causation.

## CONCLUSION

In denying Pharmacy Defendants' motion to dismiss, this Court permitted Plaintiffs to pursue claims based on breach of an alleged duty to prevent diversion by failing to detect suspicious orders.  Plaintiffs' response to Pharmacy Defendants' motion confirms they have failed to develop evidence showing (1) that any Pharmacy Defendant shipped a suspicious order; (2) that any diversion from a suspicious order occurred; or (3) that Plaintiffs were injured by any diversion from a suspicious order.  Summary judgment should be granted in favor of Pharmacy Defendants.

Dated: August 16, 2019

Respectfully submitted,

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
*Counsel for Walgreen Co. and Walgreen Eastern Co.*

/s/ Tina M. Tabacchi
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
tmtabacchi@jonesday.com
tfumerton@jonesday.com
*Counsel for Walmart Inc.*

/s/ Kelly A. Moore
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
elisa.mcenroe@morganlewis.com
*Counsel for Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center*

s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
Phone: (202) 778-1800
Fax: (202) 822-8106
edelinsky@zuckerman.com
smiller@zuckerman.com
*Counsel for CVS Rx Services, Inc. and CVS Indiana, L.L.C.*

/s/ Timothy D. Johnson
Timothy D. Johnson
Gregory E. O'Brien
CAVITCH FAMILO & DURKIN, CO. LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, OH 44114
Phone: (216) 621-7860
Fax: (216) 621-3415
tjohnson@cavitch.com
gobrien@cavitch.com
*Counsel for Discount Drug Mart, Inc.*

/s/ Robert M. Barnes
Robert M. Barnes
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Center
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
rbarnes@marcus-shapira.com
kobrin@marchus-shapira.com
*Counsel for HBC Service Company*

7