IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THE COUNTY OF SUMMIT, OHIO, ET AL.,<br>*Plaintiffs*,<br>v.<br><br>PURDUE PHARMA LP, ET AL.,<br>*Defendant* | MDL NO. 2804<br><br>CASE NO. 17-MD-2804<br><br>JUDGE: DAN AARON POLSTER<br><br>**DEFENDANT DISCOUNT DRUG MART, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

All of Plaintiffs' claims against Defendant Discount Drug Mart, Inc. ("DDM") hinge on the faulty, unsupported, unproven contention that DDM shipments of Schedule III opioids to its own pharmacies through 2014 contributed to the "opioid crisis" in Cuyahoga County and Summit County. Unfortunately for Plaintiffs, huge gaps in the requisite causal chain make it impossible for Plaintiffs to prove their claims against DDM.

Plaintiffs recognize this fatal flaw. As a result, Plaintiffs are left with no choice but to make the more general assertion that DDM must have caused some injury and damages based *solely* on the fact that DDM distributed opioids to its pharmacies in Cuyahoga and Summit Counties through 2014.[1]

In doing so, Plaintiffs have not identified a *single order* that was actually "suspicious." Similarly, Plaintiffs have not identified a *single dosage unit* distributed by DDM that was, in fact, diverted. Plaintiffs' SOM expert did not even "look at any

---

[1] Despite taking this position, Plaintiffs acknowledged in a recent motion that: "while Plaintiffs' claims against [Defendants] arise from the opioids crisis generally, Plaintiffs will be required to prove their claims against each individual defendant based on each defendant's alleged wrongdoing." See Doc #: 2099, p. 2.

1

particular order to see whether it was diverted." Rafalski Tr. 508:1-12 (Dkt. 1969-19/1983-16).  "I don't have any direct knowledge of what happened to any of the drugs that were distributed to each of the pharmacies. I didn't conduct any analysis as of today that would give me that knowledge." *Id*. 582:9-19.

It is also uncontroverted that DDM has <u>not</u> been the subject of a DEA enforcement action associated with DDM's opioid distributions, nor has DDM ever been charged with, much less convicted of, any crimes relating to opioids.  Plaintiffs do not dispute this.

Plaintiffs also attempt to minimize the significance of the fact that DDM never distributed opioids to any third-parties. DEA officials have consistently and repeatedly identified "rogue" third-parties as being the primary source of opioid diversion. See, e.g., the depositions of Joseph Rannazzisi and Thomas Prevoznik.  In fact, Rannazzisi candidly acknowledged that none of the "chain pharmacies" were part of the "rogue" schemes.

The stark reality is that the only thing that Plaintiffs can prove is that DDM shipped orders to its own pharmacies to fill legitimate prescriptions at volumes DEA deemed appropriate. This is insufficient as a matter of law to demonstrate the requisite causal connection between DDM's shipments and Plaintiffs' damages. Instead, in order to accomplish this, Plaintiffs *must further prove that*:

- DDM's orders were actually "suspicious;"
- DDM's actual suspicious orders were diverted;
- These diverted DDM prescriptions led to opioid abuse and addiction by certain individuals in Cuyahoga and Summit Counties;

- The opioid addiction of these certain individuals (stemming from DDM distributed opioids) further led to illicit drug use (heroin, illicit fentanyl, etc.) by these same opioid-addicted individuals; and

- This use of illicit drugs by these opioid-addicted individuals caused damages to Cuyahoga and Summit Counties.[2]

Plaintiffs can point to absolutely no _evidence_ that satisfies any portion of this _requisite_ causal chain, much less the entire causal chain.

Plaintiffs are clearly cognizant of this fatal defect, and hope to bypass the traditional causation requirements by improperly contending that the perceived violations of the CSA satisfies Plaintiffs' burden of proof on causation – which it does not. For this reason, as well as those outlined above, DDM is entitled to judgment as a matter of law on all Plaintiffs' claims.

Respectfully submitted,

/s/ Timothy D. Johnson
Timothy D. Johnson (0006686)
CAVITCH FAMILO & DURKIN, CO. LPA
1300 East Ninth Street – 20th Fl.
Cleveland, Ohio  44114
(216)621-7860
 (216)621-3415 Fax
tjohnson@cavitch.com
_Attorney for Defendant Discount Drug Mart, Inc._

---

[2] Ohio law is clear that Plaintiffs must establish causation _separately for each defendant_. See _Sutowski v. Eli Lilly & Co._, 82 Ohio St.3d 347, 696 N.E.2d 187 (1998). Curiously, Plaintiffs failed to address this binding precedent cited by DDM.

3

## CERTIFICATE OF SERVICE

A copy of the foregoing **DEFENDANT DISCOUNT DRUG MART, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed this 23rd day of August, 2019 via the Court's electronic filing system.

/s/ Timothy D. Johnson
TIMOTHY D. JOHNSON
*Attorney for Defendant Discount Drug Mart, Inc.*
