# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.,*<br>Case No. 18-op-45090 (N.D. Ohio)<br><br>*The County of Cuyahoga, Ohio, et al. v. Purdue Pharma L.P., et al.,*<br>Case No. 17-op-45004 (N.D. Ohio) | **MDL No. 2804**<br>**Case No. 17-md-2804**<br>**Judge Dan Aaron Polster** |

# REPLY IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT
# <u>OF WALMART INC.</u>

# TABLE OF CONTENTS

                                                                            **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.      Walmart's SOM Program Was Compliant At All Times. .................................... 2

    II.     Plaintiffs Have No Evidence That Walmart Proximately Caused Their Injuries. ............. 4

    III.    Plaintiffs Cannot Establish The Elements Of Their Causes Of Action. ............................ 5

    IV.    Plaintiffs' Claim For Punitive Damages Is Devoid Of Support. ....................................... 8

CONCLUSION ........................................................................................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Calmes v. Goodyear Tire & Rubber Co.*,
  575 N.E.2d 416 (Ohio 1991) ...................................................................................................8

*City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*,
  863 F.3d 474 (6th Cir. 2017) ...................................................................................................6

*College Standard Magazine v. Student Ass'n of State Univ. of N.Y. at Albany*,
  610 F.3d 33 (2d Cir. 2010) ......................................................................................................5

*Jewell v. City of Columbus*,
  485 N.E.2d 266 (Ohio Ct. App. 1984) ..............................................................................6, 7

*Petre v. Norfolk S. Corp.*,
  260 F. App'x 756 (6th Cir. 2007) ...........................................................................................5

*Ramage v. Cent. Ohio Emergency Servs., Inc.*,
  592 N.E.2d 828 (Ohio 1992) ...................................................................................................2

*Sutowski v. Eli Lilly & Co.*,
  696 N.E.2d 187 (Ohio 1998) ...................................................................................................4

*Wright v. RL Liquor*,
  887 F.3d 361 (8th Cir. 2018) ...................................................................................................5

**STATUTES**

21 U.S.C. § 823 .................................................................................................................................2

Ohio Code § 2925.02 .......................................................................................................................7

**INTRODUCTION**

Walmart has presented uncontroverted evidence of all of the following:

- It never manufactured or marketed opioids and no longer distributes opioids or any controlled substances.

- When it did distribute, it distributed less than 1.3% of the opioids to Cuyahoga and Summit Counties. And it distributed only to its own pharmacies, not to rogue or internet pharmacies or to pill mills.

- It implemented anti-diversion controls, including a SOM program that Walmart's expert, a former DEA official, judged to be "sufficient and effective to detect and report suspicious orders" throughout the relevant time period—an expert whom Plaintiffs never even *mention*, let alone attempt to rebut with their own expert.

Nor do Plaintiffs allege any wrongdoing by Walmart's pharmacies.  At bottom, Plaintiffs offer no facts, and no viable theory, to support their position that Walmart failed to implement appropriate policies to prevent diversion.

Instead, Plaintiffs selectively focus on alleged, scattershot deficiencies in Walmart's SOM procedures, but their brief, Pls. Resp. Br. (Dkt. 2218) ("Resp."), is built on erroneous statements that create no material dispute.  Their oft-repeated claim that Walmart did not have a SOM program before 2011 is (1) irrelevant because it falls outside the limitations period and (2) a fabrication flatly contradicted by the record.  And their complaints about Walmart's systems after 2011 notably take no issue with the factual record, but rather seek to impose requirements found nowhere in the CSA.

Even if Plaintiffs could have raised a fact question about the adequacy of Walmart's SOM procedures (and they have not), Walmart would still be entitled to summary judgment.  Plaintiffs concede that Walmart can only be held liable if it *substantially* contributed to Plaintiffs' alleged injuries, but they offer no theory, much less a shred of record evidence, showing how Walmart could have been a substantial cause given its negligible market share.  Nor do Plaintiffs explain

1

why they are proper parties to enforce the CSA or how they remotely satisfy the elements of their various causes of action. The Court should enter summary judgment for Walmart on all of Plaintiffs' claims.

## ARGUMENT

### I. Walmart's SOM Program Was Compliant At All Times.

Plaintiffs stake their case on the argument that Walmart's SOM program was noncompliant, but Walmart has already offered uncontroverted evidence that its anti-diversion procedures were appropriately tailored to its business as a self-distributor. *See* Walmart MSJ 4-6 (Dkt. 1864-3) ("MSJ"); Defts. Resp. to CSA Compliance Br. 56-63 (Dkt. 2149) ("CSA Compliance Resp."). Walmart's expert, a former DEA official, testified that Walmart's procedures were sufficient and effective to prevent diversion. *See* Tongring Rpt. 1-2 (Dkt. 1936-32). That expert testimony stands unrebutted, and Plaintiffs' failure to offer any expert testimony on this issue requires summary judgment in Walmart's favor in and of itself. *See, e.g.*, *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 592 N.E.2d 828, 833 (Ohio 1992) (expert testimony necessary for matters outside lay comprehension). Moreover, Walmart's expert testimony is confirmed by the fact that DEA—which enforces its SOM regulation through the registration process, *see* 21 U.S.C. § 823(b)(1), (e)(1)—continually reviewed Walmart's SOM program and renewed its registration. *See* MSJ 6-7.[1] Plaintiffs have no authority to enforce the CSA in DEA's stead.

The centerpiece of Plaintiffs' argument is their repeated statement that Walmart had no SOM procedures before 2011, but that assertion is both outside the limitations period and demonstrably untrue. In testimony that remains unrebutted, many witnesses testified that, during

---

[1] Plaintiffs do not dispute that from the start of VAWD certification in 2007 and at all later times Walmart was VAWD-certified. That VAWD granted Walmart an extension to complete its renewal submission (which addressed a range of issues beyond SOM for controlled substances), *see* Resp. 8 n.6, does not change Walmart's certification status and is irrelevant.

2

that time period, Walmart's employees manually monitored orders, and the record contains monthly reports faxed to DEA. *See* CSA Compliance Resp. 62. Plaintiffs' false assertion rests entirely on a single citation: testimony from a Walmart employee who in fact stated that SOM procedures certainly existed—he just could not recall if they were *written*. Abernathy Dep. Tr. 42:25-43:5 (Dkt. 1974-1). No matter how often they repeat it, Plaintiffs' mischaracterization gets them nowhere for at least two reasons. First, DEA has made clear that a policy does not have to be in writing. *See* CSA Compliance Resp. 62-63. And second, the undisputed record shows that Walmart had robust SOM procedures in place, including various written policies. *See id.* at 56-63; *see also* Walmart Resp. to Pls. Combined Discovery Requests 5 (Dkt. 1864-6) (reflecting eight SOM policies from 2010-2017). Plaintiffs' distortions of the record have no basis in fact and create no material dispute.

After 2011, Plaintiffs primarily complain that Walmart's policy of flagging orders of 20 bottles or more meant that orders under 20 bottles generally would not be flagged. But Plaintiffs cherry-pick a single element of Walmart's policy at the time, and they offer *no* evidence—and cite no authority for the proposition—that a 20-bottle threshold was unreasonable for Walmart's self-distribution business. And they ignore the fact that *all* orders were subject to manual review. *See* CSA Compliance Resp. 58-59. Walmart also did not violate the CSA by capping orders at 50 bottles, as orders exceeding that 50-bottle limit were subject to SOM review. *Id.* at 60. Nor could Walmart's pharmacies evade SOM review by ordering through McKesson (which had its own SOM policy), because orders for Schedule II products were required to be placed with Walmart's central distribution facility and relayed to McKesson only if the product was not available through Walmart's own distribution system. *Id.* at 59-60. And Plaintiffs' claim that Walmart did not investigate or report orders finds zero record support. *See id.* at 60-61.

**II.     Plaintiffs Have No Evidence That Walmart Proximately Caused Their Injuries.**

Even if Plaintiffs could enforce DEA regulations (and they cannot, *see* CSA Compliance Resp. 12-14) or could raise a triable fact question about Walmart's SOM program (and they cannot), Walmart is entitled to summary judgment because Plaintiffs cite no record evidence showing that Walmart caused their alleged injuries.  Plaintiffs concede that they are "required to prove their claims against each individual defendant based on each defendant's alleged wrongdoing," Pls. Mot. Sever 2 (Dkt. 2099), and that *each defendant's* contribution to their injuries must be shown to be "substantial," Resp. 10; *see also Sutowski v. Eli Lilly & Co.*, 696 N.E.2d 187, 190 (Ohio 1998).  That showing is nonexistent.

Plaintiffs simply point to their omnibus causation brief addressing all defendants, but that brief identifies *no* theory of causation and no record evidence applicable *to Walmart*.  *See* Pls. Causation Resp. Br. (Dkt. 2204) ("Causation Resp.").  The bulk of the brief addresses Manufacturers' alleged marketing scheme—but Plaintiffs do not (and cannot) claim that Walmart marketed opioids.  MSJ at 3; Pls. Civil Conspiracy Resp. Br. 114 (Dkt. 2182) ("Conspiracy Resp.").[2]  With respect to distributors, the brief asserts that Plaintiff Counties were "flooded with diverted opioids," Causation Resp. 68, but offers no record evidence to show how Walmart substantially contributed to that "flood" with less than 1.3% of the relevant market (and by distributing only to its own pharmacies, which are not alleged to have done anything wrong).  The causation brief does not even mention Walmart, except to repeat in a single sentence the false claim that Walmart did not have a SOM system before 2011, and it ignores the reports that Walmart actually sent to DEA.  *Id.* at 24.  No record evidence supports the claim that Walmart's supposed

---

[2] In a footnote, Plaintiffs suggest that Walmart permitted Purdue to promote products to its own pharmacists under the guise of continuing education.  *See* Resp. 6 n.4.  Plaintiffs mischaracterize the referenced documents, which in any event are all from the 1990s and pre-date not only any possible applicable limitations period but also Walmart's role as a self-distributor.  *See* Pharmacy Defts. Conspiracy MSJ 9 (Dkt. 1875-3).

4

SOM violations substantially caused Plaintiffs' alleged injuries. *See Petre v. Norfolk S. Corp.*, 260 F. App'x 756, 761 (6th Cir. 2007) (applying Ohio law, awarding summary judgment where proof of a technical violation did not suffice to establish proximate cause).

In fact, the central theory of Plaintiffs' case is incompatible with the notion that Walmart was a substantial cause of Plaintiffs' alleged injuries. Plaintiffs claim that opioid distribution increased because Manufacturers' marketing led to a change in the prevailing "medical standard of care." Causation Resp. 3. That theory has nothing to do with Walmart. And Plaintiffs make clear that "[p]harmacy misconduct is not part of this case." Resp. 12. So they have offered no theory and no evidence linking their alleged injuries to Walmart's supposed SOM deficiencies.

## III. Plaintiffs Cannot Establish The Elements Of Their Causes Of Action.

Plaintiffs' theory rests on their apparent belief that Walmart can be held strictly liable for alleged SOM violations. Because that is wrong as a matter of both fact and law, Walmart is entitled to summary judgment on all claims.

**1. Statutory Nuisance (Count 5).** Plaintiffs argue that their statutory nuisance claim and other requests for injunctive relief are not moot because Walmart stopped self-distributing opioids "in response to the present litigation." Resp. 9 (citation omitted). But in fact Walmart began exiting the self-distribution business before Plaintiffs sued it. *See* Johnson Correspondence (Dkt. 1864-56). In any event, the voluntary cessation doctrine does not prevent mootness where, as here, there is no reasonable expectation that conduct will recur. This is not a case where Walmart may "capriciously reinstate" prior conduct, *Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018), because Walmart is no longer even registered as a distributor, *see, e.g.*, *College Standard Magazine v. Student Ass'n of State Univ. of N.Y. at Albany*, 610 F.3d 33, 35 (2d Cir. 2010) (formal adoption of new policies mooted challenge). What is more, Plaintiffs rely primarily on conduct that occurred before 2011 and do not raise *any* challenge to the independent third-party SOM system

5

that Walmart implemented in 2017. *See* Resp. 5-7. There is no reason to assume, or evidence to suggest, that Walmart would choose to resume self-distribution, much less reinstate legacy, pre-2017 SOM systems.

**2. Common Law Public Nuisance (Count 6).** "[N]ot every failure to comply with [a regulation] amounts to a public nuisance," and a plaintiff raising such a claim must show that the particular violation substantially interfered with public health and safety. *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 479 (6th Cir. 2017); *see* MSJ 13. Yet Plaintiffs do not even mention *Deutsche Bank*, much less attempt to explain how they could make this showing as to Walmart based on their SOM theory. *See* Resp. 11-12. Plaintiffs do not identify *any* impact on public health or safety that would have been ameliorated if Walmart had filed more reports with DEA about its self-distribution. They respond that "this is a case about the laws that Walmart chose to ignore," *id.* at 12, but that theory has two critical flaws. One, unrebutted expert testimony establishes that Walmart did not remotely "ignore" SOM regulations, let alone intentionally. *See* Tongring Rpt. 1-2. Two, this case is not "about" SOM regulations, as Plaintiffs have no right of action to enforce those provisions. *See* CSA Compliance Resp. 12-14.

**3. Negligence (Count 7).** Walmart's brief explained that, although this Court denied the motions to dismiss on the theory that Plaintiffs might show that defendants negligently "created an illegal, secondary opioid market," Plaintiffs have utterly failed to make such a showing through discovery. MSJ 14 (quoting Court Order 35 (Dkt. 1203)). Plaintiffs respond that Walmart can be found negligent "for the same reasons" that it supposedly created a public nuisance—that is, purported strict liability for alleged SOM violations. But no court, including this one, has ever approved such a *per se* theory of liability, *see* Court Order 35, and the law does not support it. SOM regulations do not give rise to a duty to anyone other than DEA. *See, e.g., Jewell v. City of*

6

*Columbus*, 485 N.E.2d 266, 268 (Ohio Ct. App. 1984) (reporting law did not support claim of negligence *per se*, as duty owed only to recipient of reports). Plaintiffs ignore this case law and instead suggest that Walmart's alleged SOM shortcomings create negligence liability because of the "extraordinarily high-risk activit[y]" of "failing to monitor its opioid distribution." Resp. 13. But the record shows that Walmart maintained a compliant SOM program, Tongring Rpt. 12-13, audited inventory for discrepancies between amounts ordered and dispensed, CSA Compliance Resp. 59, and generated internal reports identifying outlier orders and pharmacies for review and follow up as necessary, Tongring Rpt. 8-9. Plaintiffs cannot seriously maintain that Walmart's distribution of opioids to its own pharmacies was negligent.

**4. Injury Through Criminal Acts (Count 9).** The opening brief explained that Walmart cannot be held liable for injury through criminal acts because (among other things) the criminal law that Plaintiffs rely on, Ohio Code § 2925.02(B), immunizes the conduct of defendants who act pursuant to a valid state license. *See* MSJ 16 (citing *State v. McCarthy*, 605 N.E.2d 911, 913-14 (Ohio 1992)). Plaintiffs simply ignore this argument and the case that it relies on. *See* Resp. 13-14. But the Ohio Supreme Court's definitive interpretation of the law cannot be ignored, and Plaintiffs do not attempt to explain how their claims can be squared with its decision.

**5. Unjust Enrichment (Count 10).** The opening brief explained that Plaintiffs' claim for unjust enrichment fails because (among other things) there is no evidence that Plaintiffs conferred any benefit on Walmart. MSJ 17. Plaintiffs respond that a benefit can be found if a plaintiff "saves the other from expense or loss." Resp. 14 (citation omitted). But Plaintiffs still do not say what "expense or loss" they saved Walmart from incurring. Plaintiffs claim defendants "forced [them] to spend more on increased healthcare services," *id.*, but that is not a cost that Walmart otherwise would have had to bear. Plaintiffs also claim this Court already rejected this argument in ruling

7

on the motions to dismiss. *Id.*  But the suggestion that Plaintiffs *might* be able to show that they "conferred a benefit upon the Defendants," Court Order 37, does not excuse Plaintiffs from actually producing evidence of a "benefit" at the summary judgment stage.  Nor do Plaintiffs explain how Walmart's distribution of a *de minimis* amount of prescription opioids caused their alleged increased expenditures.

**6. Civil Conspiracy (Count 11).**  As explained in the contemporaneously filed reply in support of Pharmacy Defendants' motion for summary judgment on Plaintiffs' civil conspiracy claim, Plaintiffs also present no evidence that Walmart entered into a civil conspiracy.  Plaintiffs devote just two sentences of their 118-page conspiracy response to Walmart specifically, *see* Conspiracy Resp. 71, and the evidence they cite does not show any wrongdoing by Walmart, much less support an inference that Walmart entered into a sweeping industry-wide conspiracy.

**IV.   Plaintiffs' Claim For Punitive Damages Is Devoid Of Support.**

Plaintiffs claim Walmart's supposed lack of any SOM system would support an award of punitive damages, but they do not even attempt to argue that the violations involved "a great probability of causing substantial harm."  Resp. 15 (citation omitted).  This failure is fatal to Plaintiffs' claim, as punitive damages cannot be awarded absent such a showing. *See Calmes v. Goodyear Tire & Rubber Co.*, 575 N.E.2d 416, 419 (Ohio 1991).  Plaintiffs cannot show that Walmart's distribution to its own pharmacies caused any harm at all, much less a risk of harm that would warrant a punitive damages award.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Walmart on all of Plaintiffs' claims.

Dated: August 16, 2019          Respectfully submitted,

/s/  Tara A. Fumerton

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

Pursuant to Local Rule 7.1(f), I hereby certify that this Memorandum of Law is 8 pages in length and complies with this Court's orders regarding procedures for filing pretrial motions (*see* Dkt. 1709, 1813) and is within the page limit allotted for this motion.

/s/ Tara A. Fumerton

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com