## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) ) | **MDL 2804** |
| | ) | **Case No. 1:17-md-2804** |
| **THIS DOCUMENT RELATES TO:** | ) ) | |
| | ) | **Judge Dan Aaron Polster** |
| *Track One Cases* | ) ) | **ORDER** |

Before the Court is Defendants' Motion to Exclude Expert Testimony Purporting to Relate to Abatement Costs and Efforts ("Abatement Motion") (Doc. #: 1865).  After carefully considering Defendants' Motion, Plaintiffs' Response (Doc. #: 2175), and Defendants' Reply (NOS at Doc. #: 2443), the Court **DENIES** Defendants' Abatement Motion.

### I.

The Court hereby incorporates the legal standards set forth in the Court's Opinion and Order regarding Defendants' motion to exclude the opinion and testimony of Prof. Meredith Rosenthal, see Doc. #: 2495.

### II.

In their Abatement Motion, Defendants seek to exclude the opinions and testimony of six of Plaintiffs' experts. The Challenged Experts are Caleb Alexander, M.D., Jeffrey Liebman, Ph.D., Katherine Keyes, Ph.D., Scott Wexelblatt, M.D., Nancy Young, Ph.D., and Thomas McGuire, Ph.D. (collectively "Challenged Experts").  As an initial matter, Defendants do not assert any of the Challenged Experts are unqualified to provide opinions on methods or costs to abate the opioid crisis in Cuyahoga and Summit Counties.  Rather, Defendants assert the opinions of these six

experts are irrelevant and/or unreliable. The Court has reviewed the qualifications of the Challenged Experts and finds them qualified to testify on the topics regarding which they have opined.

Additionally, Defendants, Plaintiffs, and McGuire himself are all in agreement that McGuire's report does not "offer an opinion on the scope or costs of programs needed to abate this nuisance." McGuire Rep. at 5 n.6 (Doc. #: 1999-17); *see also* Defs. Mot. to Excl. Abate. Experts at 41 (Doc. #: 1865-1); Pls. Opp. Resp. re Abate. Experts at 53 (Doc. #: 2175).[1] Therefore, to the extent that Defendants' Abatement Motion seeks to exclude McGuire's opinions on that specific topic, that portion of Defendants' Motion is **DENIED AS MOOT**.

### III.

Having read the parties' briefs, the Court offers the following general observation on the relevance of the Challenged Experts' opinions. Defendants begin their Abatement Motion with their interpretation of "abatement law" in Ohio. In the very first paragraph, however, they appear to confuse the forward-looking, equitable remedy of abatement and the rearward-looking remedy of damages. In a traditional public nuisance case, a municipal entity who is harmed by the maintenance of a nuisance will give notice to and ask the offending party to abate the nuisance. If the offending party is unable or unwilling to abate, the harmed party can, when appropriate, abate the nuisance themselves or ask the court for the right to do so, and then seek compensation for the costs of abating the nuisance. This compensation is equitable in nature. The goal is not to compensate the harmed party for harms already caused by the nuisance. This would be an award of damages. Instead, an abatement remedy is intended to compensate the plaintiff for the costs of rectifying the nuisance, going forward.

---

[1] Page pincites in this Opinion and Order refer to the document page number in the documents' ECF docket header (styled "xx of yy").

The opioid crisis litigation is, as this Court has repeatedly stated, unlike any other case. One example is that the opioid crisis is so massive that Plaintiffs cannot possibly hope to remedy it on their own without additional, substantial financial resources. If Defendants are eventually found liable for creating the opioid crisis, there is no realistic way the Court could order either that: (1) Defendants abate the crisis themselves (Defendants do not have the requisite infrastructure), or (2) Plaintiffs abate the crisis and then order Defendants to pay Plaintiffs the costs incurred in doing so (Plaintiffs do not have the financial resources). Thus, the Court must, if Defendants are found liable, have some mechanism to predict and fairly award prospective future costs to abate the crisis.

In Ohio, "[w]hen a nuisance is established, the form and extent of the relief designed to abate the nuisance is within the discretion of the court." 72 Ohio Jur. 3d Nuisances § 49. Thus, the Court, exercising its equitable powers, has the discretion to craft a remedy that will require Defendants, if they are found liable, to pay the prospective costs that will allow Plaintiffs' to abate the opioid crisis. The issue, and thus the "pertinent inquiry" to which a "valid scientific connection" must be made under *Daubert*, will be to determine what is an appropriate remedy that will abate the opioid crisis, and what that remedy will cost. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).

Returning to the motion at hand, Plaintiffs' experts have relied on their training and expertise in various fields of epidemiology, pharmaco-epidemiology, economics, data analytics, medicine, and social work, to opine on what an abatement remedy might look like and what such a remedy will cost. That is, the Challenged Experts provide context that the Court believes will be helpful in ultimately crafting an abatement remedy should it be come necessary. Therefore, the Challenged Experts' opinions are, as described further below with respect to each expert, relevant

to the facts of this case. To the extent Defendants contend the Challenged Experts' assumptions and conclusions are wrong, the appropriate place to challenge them is on cross-examination. *See Burgett v. Troy–Bilt LLC*, 579 F. App'x 372, 377 (6th Cir.2014) (quoting *Daubert*, 509 U.S. at 596).

### A. Alexander and Liebman

Dr. Caleb Alexander is a practicing physician and Professor of Epidemiology and Medicine at Johns Hopkins Bloomberg School of Public Health. He is a pharmaco-epidemiologist who studies the uses and effects of drugs in well-defined populations. He researches the utilization, safety, effectiveness and regulation of prescription drugs, and has been studying and addressing the opioid epidemic specifically for the past eight years. *See* Alexander Rep. at 1 (Doc. #: 1999-1). Alexander was asked to "design[] and calculat[e] the cost of a *national* abatement plan." Pls. Opp. Resp. re Abate. Experts at 20 (Doc. #: 2175) (emphasis in original).

Dr. Jeffrey Liebman is a Professor of Public Policy at the Harvard Kennedy School, where he directs the Taubman Center for State and Local Government and the Government Performance Lab. He researches tax, budget, health policy, impact evaluations of social programs, and strategies for improving the efficiency of government social service agencies. He specializes in public finance and health economics and state and local government policies. *See* Liebman Rep. at 3-4 (1999-11). Liebman was asked to identify how Summit and Cuyahoga Counties could implement programs to abate the opioid crisis and to estimate the costs of these services. *Id.* at 2.

Defendants assert that Alexander's and Liebman's opinions are not relevant to the facts of this case because the experts failed to "distinguish between the effects of prescription opioid medications and illegal street drugs," failed to "exclude other sources of funding," and improperly relied on nationwide data. Defs. Mot. to Excl. Abate. Experts at 18-21 (Doc. #: 1865-1). Defendants argue at length that Plaintiffs' experts do not sufficiently address whether and to what

extent Plaintiffs' alleged nuisance was caused by Defendants' alleged misconduct. *See id.* at 18-19. Causation is a central issue in this trial, and one that Plaintiffs will have to prove. However, neither Plaintiffs nor their experts need to prove their causation theories *before* the trial in order to present evidence on what programs, policies, and procedures will abate the opioid crisis, and what those programs, policies, and procedures will cost. The Court will not exclude Plaintiffs' abatement experts simply because Plaintiffs *might* not be able to prove causation at trial.

As stated above, abatement is an equitable remedy. The Court agrees with Plaintiffs that testimony regarding the "full cost of abating the public nuisance" is relevant and will help the Court understand the scope of what it will take to remedy the opioid crisis.  To the extent the Court determines this scope is narrowed by other programs already in place in Summit and Cuyahoga County, and/or additional sources of funding that may exist, the Court can exercise its equitable powers to deviate from the full costs of abatement to a more just and appropriate amount. Thus, Plaintiffs' experts' failure to consider other sources of funding and their consideration of national data does not make their opinions any less relevant.

Regarding the reliability of Plaintiffs' experts opinions, the Court will keep in mind the above-discussed critical distinction between an award of *past* damages and an award of the *future* costs of abatement. Any time an expert is asked to make predictions about the future, those predictions necessarily include some degree of speculation. *Cf. Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 726 (6th Cir. 2012) (allowing that "predictions about future earning potential [to determine future economic damages] are necessarily somewhat speculative."). Thus, the question before the Court regarding the reliability of Plaintiffs' experts is: how much speculation is too much? The Sixth Circuit has provided that "[w]here an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony; but where the opinion has a

5

reasonable factual basis, it should not be excluded. *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993).

Defendants assert that "both [Alexander and Liebman] impermissibly rely upon speculation when calculating the potential cost of the abatement remedy." Defs. Mot. to Excl. Abate. Experts at 24 (Doc. #: 1865-1). Defendants cite a litany of assumptions and estimates made by Plaintiffs' experts in their reports and depositions that Defendants claim, taken together, amount to excessive speculation, resulting in unreliable conclusions. Plaintiffs concede their experts' models and methodologies require assumptions, but offer rational bases for each assumption challenged by Defendants. Without addressing each assumption, it is understood and accepted that "[t]rained experts commonly extrapolate from existing data." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The Court concludes that Alexander's and Liebman's opinions may have some flaws, but that "[t]he *Daubert* standard is liberal, and it does not require expert opinions to be bulletproof." *United States v. Lang*, 717 F. App'x 523, 534 (6th Cir. 2017), *cert. denied,* 138 S. Ct. 1179 (2018) (citing *Daubert*, 509 U.S. at 596).  Defendants are entitled to, and shall, have the opportunity to attack Plaintiffs' experts' assumptions at trial.  Each critical assumption has a reasonable basis and the sum of the assumptions do not render the experts' opinions so unreliable that they must be excluded.

Finally, Defendants highlight a statement from Alexander's deposition where he "agreed that 'the exact costs of abatement are difficult to estimate.'" Defs. Mot. to Excl. Abate. Experts at 37 (Doc. #: 1865-1). The Court agrees entirely – which is precisely why the Court concludes Alexander's and Liebman's opinions are relevant and sufficiently reliable to help the Court attempt to estimate those costs if necessary.

**B. Katherine Keyes**

Dr. Katherine Keyes is a Professor of Epidemiology at Columbia University. She specializes in drug substance use/abuse and substance use disorders and related comorbidity. Her research focuses on psychiatric disorders and consequences of substance use including intentional and unintentional injury. Her "expertise on opioid-related harm includes large scale survey data and vital statistics analyses." Keyes Rep. at 1 (Doc. #: 1999-9). Keyes' report, as it pertains to Defendant's Abatement Motion, "provide[s] an aggregate population-level analysis of the effectiveness and impact of three interventions to ameliorate the opioid epidemic in the Counties." Pls. Opp. Resp. re Abate. Experts at 40 (Doc. #: 2175).

Defendants first assert that Keyes' report is not relevant because she does not "offer in her report estimates of how much these [intervention] programs would cost to implement." Defs. Mot. to Excl. Abate. Experts at 37-38 (Doc. #: 1865-1). But Keyes is not required to show a link between the types of programs she believes are required to abate the opioid crisis, and what those programs will cost. Plaintiffs are entitled to utilize different experts to support different portions of their case. *See Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 425 (7th Cir. 2000) ("No one piece of evidence has to prove every element of the plaintiffs' case; it need only make the existence of '*any* fact that is of consequence' more or less probable.") (quoting Fed.R.Evid. 401) (emphasis in original).  Keyes' opinions are relevant even though they are not as broad in scope as Defendants insist they should be.  In their Reply, Defendants change tack and instead assert Keyes report is irrelevant because "the programs Keyes identifies were already identified by Liebman and Alexander." Defs. Reply re Abate. Experts at 18 (NOS at Doc. #: 2443). This argument is raised for the first time in Defendants' Reply instead of in their Abatement Motion, but even if the Court were to consider it, Defendants cite no authority that compels the Court to exclude allegedly

redundant evidence.  Moreover, the three experts' reports dovetail and are not so redundant that it would waste the Court's times to hear all of them.

Finally, Defendants also assert Keyes's opinions must be excluded because they are based largely upon unreliable data. As stated above, however, the appropriate place to challenge weak assumptions or underlying data is on cross-examination. That is, the reliability or lack thereof of underlying data generally goes to weight, not admissibility.  Having reviewed the data at issue and Keyes' analysis of it, the Court rejects Defendants' assertions that it is so unreliable that Keyes' methodology is fatally flawed or that her opinions are unreliable.

### C. Scott Wexelblatt and Nancy Young

Dr. Scott Wexelblatt is the Regional Medical Director of Newborn Services at Cincinnati Children's Hospital Medical Center and a Professor in the Department of Pediatrics, University of Cincinnati College of Medicine. His research focuses on improving perinatal health outcomes in regional populations. He helped establish a standardized protocol for Neonatal abstinence syndrome ("NAS"). He was asked to opine on the effects of opioid addiction on pregnant mothers and infants, with a focus on NAS and its impact on Cuyahoga and Summit Counties. *See* Wexelblatt Rep. at 3 (Doc. #: 1999-24).

Dr. Nancy Young "is co-Founder and Executive Director of Children and Family Futures, a non-profit organization with the mission of preventing child abuse and neglect, and improving safety, permanency, wellbeing, and recovery outcomes for children, parents, and families affected by trauma, substance use and mental health disorders." She was asked to give her opinion on the "impact of the opioid crisis on the child welfare system" and "on necessary and appropriate remedies in response to the opioid epidemic." Young Rep. at 1 (Doc. #: 1999-26).

Defendants do not assert Wexelblatt's or Young's reports are not reliable; only that they are not relevant. In that regard, Defendants make all the same arguments as with the previous Challenged Experts: that is, the experts fail to demonstrate that Defendants caused the crisis; they fail to offer opinions on how much their proposed plans would cost; they fail to incorporate programs and policies already in place, and the effectiveness and timeliness of those programs; and they failed to differentiate between opioid and non-opioid substance abuse.  The Court rejected all of these alleged failures above and Defendants identify no reasons that convince the Court to alter its analysis with respect to Wexelblatt or Young.  In sum, the Court concludes Wexelblatt's and Young's opinions are relevant to the inquiry of what programs, policies, and procedures could be used to abate the opioid crisis in Summit and Cuyahoga Counties, the opinions are not unacceptably redundant, and there is no basis to exclude them for lack of reliability or flawed methodology.

Accordingly, Defendants' Motion to Exclude Expert Testimony Purporting to Relate to Abatement Costs and Efforts, Defs. Mot. to Excl. Abate. Experts (Doc. #: 1865), is **DENIED**.

**IT IS SO ORDERED.**

  /s/Dan Aaron Polster *August 26, 2019*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

9