# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090<br><br>*The County of Cuyahoga, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 17-op-45004 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF THOMAS McGUIRE CONCERNING DAMAGES**

**TABLE OF CONTENTS**

I. McGUIRE DOES NOT CALCULATE LEGALLY COGNIZABLE DAMAGES. ............1

    A. McGuire's Damages Opinion Is Contrary to Ohio Law. .........................................1

    B. McGuire's Damages Opinion Is Contrary to Federal Law. .....................................5

    C. McGuire Does Not Tie His Calculations to Wrongful Conduct by Defendants. ..................................................................................................................6

II. McGUIRE'S CALCULATIONS ARE NOT RELIABLE .................................................6

CONCLUSION ................................................................................................................................7

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) .......................................................... 5

*Chronister Oil Co. v. Unocal Ref. & Mktg.*, 34 F.3d 462 (7th Cir. 1994) ...................................... 6

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008) ..................................................... 7

*Johnson v. Memphis Light Gas & Water Div.*, 695 F. App'x 131 (6th Cir. 2017) ......................... 6

*KCI USA, Inc. v. Healthcare Essentials, Inc.*, 2018 WL 4327802 (N.D. Ohio Sept. 10, 2018) ................................................................................................................................... 5

*S. Cal. Hous. Rights Ctr. v. Krug*, 564 F. Supp. 2d 1138 (C.D. Cal. 2007) .................................... 5

*Syngenta Crop Prot., LLC v. Willowood Azoxystrobin, LLC*, 267 F. Supp. 3d 649 (M.D.N.C. 2017) ..................................................................................................................... 7

*United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390 (4th Cir. 2013) .......................................................................................................................... 5

*United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158 (D.D.C. 2007) .......................... 5

*White v. Smith & Wesson Corp.*, 97 F. Supp. 2d 816 (N.D. Ohio 2000) ........................................ 2

## STATE CASES

*Cincinnati Gas & Electric Co. v. Brock*, 1983 WL 2375 (Ohio Ct. App. Dec. 21, 1983) ........................................................................................................................... 3, 4

*Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002) ................................................ 2

*City of Youngstown v. Cities Service Oil Co.*, 31 N.E.2d 876 (Ohio Ct. App. 1940) .............. 1, 2, 4

*Illuminating Co. v. Wiser*, 114 N.E.3d 240 (Ohio Ct. App. 2018) ................................................. 3

Plaintiffs' Opposition fails to grapple with the central flaw of their damages expert's opinion. Thomas McGuire does not consider whether Defendants' conduct caused the Counties to spend a single dollar more on opioid-related public services. He does not consider whether Defendants caused the Counties to hire one more person or pay a single additional hour of overtime. McGuire therefore fails to calculate legal damages. Under settled Ohio law, the government does not suffer an injury—much less incur cognizable damages—when it pays no more than it would have absent defendants' alleged misconduct. Br. (Dkt. 1911-1) 6–7.

Plaintiffs resist this commonsense rule, insisting that McGuire calculates what economists recognize as economic costs. But Ohio law—not the views of economists—determines what counts as legal injury and damages. And Ohio law is clear: when defendants' conduct does not result in any *increased* costs, a government plaintiff has not suffered any injury. For this reason, and additional reasons discussed below and in Defendants' opening brief, McGuire's damages opinion must be excluded.

**I.     McGUIRE DOES NOT CALCULATE LEGALLY COGNIZABLE DAMAGES.**

Plaintiffs argue that McGuire may offer a damages opinion even though he failed to identify any increased County expenses. They contend that the Counties incur legal damages whenever County employees spend time addressing opioid-related harms, even if the Counties hire no new employees and merely pay their existing employees the same salaries they would have received absent the opioid-related harms. Plaintiffs' arguments are contrary to governing Ohio and federal law. Because McGuire's "damages" calculations bear no relation to Plaintiffs' *legal* damages, they do not "fit" the issue of damages and must be excluded.

**A.     McGuire's Damages Opinion Is Contrary to Ohio Law.**

*City of Youngstown v. Cities Service Oil Co.*, 31 N.E.2d 876 (Ohio Ct. App. 1940), governs the availability of damages under Ohio law. That case held that a city could not recover its

1

firefighters' salaries from a defendant whose unlawful conduct prevented the firefighters from working because "the city paid no more for salaries than it would have paid if these men had not been injured." *Id.* at 878.  Plaintiffs argue that this Court should ignore *City of Youngstown* because it is too old, and because more recent cases undermine it.  But none of the cases Plaintiffs cite undercut *City of Youngstown*'s commonsense holding.  *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), addressed a city's claim for "***increased*** police, emergency, health, and corrections costs," not static costs, *id.* at 1140; *see also id.* at 1153 ("the city may suffer financial consequences, including ***increased*** costs for municipal services [and] ***increased*** tax burdens on taxpayers").  There is no conflict between *City of Youngstown* and *Beretta*.  Both recognize that a local government may recover damages when unlawful conduct imposes a financial burden on the city by causing it to incur ***additional*** costs.  Neither case supports McGuire's theory that a local government can recover damages even when it hires no new employees to address unlawful conduct, pays no overtime to existing employees to address unlawful conduct, and incurs no other additional expenses to address unlawful conduct.[1]

As for *White v. Smith & Wesson Corp.*, 97 F. Supp. 2d 816 (N.D. Ohio 2000), it addressed whether the "firefighter's rule" barred the city's recovery of the costs of providing public services, *id.* at 821–23, and did not consider *City of Youngstown* or the issue raised here, i.e., whether a government plaintiff may recover damages when it did not incur increased out-of-pocket costs.

Plaintiffs' claim that McGuire identifies "costs … that varied in response to the crisis," Opp. (Dkt. 2191) 7, is a sleight-of-hand.  McGuire admits that he identifies damages even when the Counties' "spending on" employees is "fixed."  McGuire Rep. (Dkt. 2000-17) ¶ 26.  McGuire's

---

[1] Nor does the *City of Youngstown* rule conflict with *Beretta*'s rejection of the municipal services doctrine, *contra* Opp. 10–11.  *Beretta* merely holds that a municipality that proves it has suffered damages is not barred from recovering those damages.  *See* 768 N.E.2d at 1149.  It does not exempt municipalities from proving that they suffered damages in the form of *increased* expenses.

2

"costs" are merely "reallocation[s] of … time," not out-of-pocket costs. *Id.* *City of Youngstown* makes clear that a government plaintiff incurs no damages when its employees' time is merely reallocated; it incurs damages only if it incurs out-of-pocket costs that were caused by defendants' misconduct. Just as the reallocation of employee time from providing firefighting services to providing no services at all was not an injury in *City of Youngstown*, the Counties' alleged reallocation of employee time from non-opioid-related services to opioid-related services is not an injury in this case.

Plaintiffs analogize McGuire's "costs" to out-of-pocket costs, but the analogy exposes the gulf between real and conceptual costs. Plaintiffs liken their costs to those of a patient who must pay $50,000 in medical bills. Opp. 9. But the patient's costs are critically different from the Counties' costs: the patient must write a check for $50,000 that he or she otherwise would not have written; at the end of the day, there is $50,000 less in the patient's bank account. McGuire, by contrast, opines that damages occur even if the Counties have not paid a dollar more—even if the same number of salaried County employees received the same salaries they would have received absent Defendants' alleged misconduct.

Plaintiffs also contend that cases involving private utilities' pole-repair costs support McGuire's theory. Those cases address the recoverability of "[i]ndirect costs … involved in running a ***business***," not governmental costs. Opp. 10 (quoting *Illuminating Co. v. Wiser*, 114 N.E.3d 240, 246 (Ohio Ct. App. 2018)). But, even if the utility-pole cases did apply, they would still require rejection of McGuire's damages theory. As the Ohio Court of Appeals explained in *Cincinnati Gas & Electric Co. v. Brock*, 1983 WL 2375 (Ohio Ct. App. Dec. 21, 1983), a utility has to "employ a certain number of persons and maintain a certain number of vehicles and tools just to replace worn[-]out poles and poles damaged by acts of nature," *id.* at *4. Therefore, a utility

3

may recover indirect costs only when it proves that such costs "are *increased*" by the need "to buy and maintain *additional* service vehicles or employ *additional* help in order to meet the increased demand for pole repairs caused by the tortious conduct." *Id.*  This Court applied this same principle in assessing Plaintiffs' RICO claims, ruling that "Plaintiffs may recover damages based on the provision of governmental services in their capacity as a sovereign to the extent they can prove the asserted costs ***go beyond the ordinary cost of providing those services***."  Dkt. 1203 at 20. McGuire, by contrast, contends that the Counties incur damages even if they suffered no increased expenses, bought no additional vehicles, and employed no additional help.

Defendants did not argue, as Plaintiffs contend, that McGuire must opine that the Counties' ***overall*** spending increased.  Opp. 9.  What Ohio law requires Plaintiffs to prove is that Defendants' alleged misconduct caused the Counties to increase spending on some line item in the budget— e.g., hiring a new sheriff's deputy (or paying existing sheriff's deputies overtime) to address opioid-related harms.  Such increased spending need not be in excess of the Counties' total budgets, but some component of the Counties' spending must be "more … than it would have" been absent the opioid-related harms.  *City of Youngstown*, 31 N.E.2d at 878.  McGuire does not make the requisite showing.[2]  Instead, he opines that if existing sheriff's deputies spend an increased share of their time addressing opioid-related harms, that share of their time is "damages," even though the Counties spend no more on their salaries and hire no new deputies because of the

---

[2] Plaintiffs attempt to shore up McGuire's opinions by citing four depositions (on which McGuire did not rely) wherein County officials describe employees spending time addressing opioid-related issues. Opp. 7–8.  But just one of the cited deposition excerpts refers to potential reallocation.  Hylton Baker stated that he got one person added to the Summit County Drug Unit, but provided no information about when that happened, whether and from where funding was reallocated to pay that person, or the amount of any expenditure.  Dkt. 1956-10, at 162:18–163:15.  It cannot be assumed that adding a person increased the County's costs; the Drug Unit is largely grant-funded.  Bialecki Rep. (Dkt. 1939-2) 107–08.  Plaintiffs also cite a 2017 email from the Cuyahoga County ADAMHS Board CFO claiming, without any supporting data, that during the "past two years … our expenses have exceeded revenues due to the opiate epidemic."  Opp. Ex. 1.  The accounting records, by contrast, show that the ADAHMS Board spent substantially less than its budget in 2015 and 2016.  Bialecki Rep. App'x 6.

4

existing deputies' changed workload.  McGuire's "damages" calculations bear no relation to the damages recoverable under Ohio law, and therefore must be excluded.[3]

### B. McGuire's Damages Opinion Is Contrary to Federal Law.

This Court has already held that, under RICO, the Counties "cannot recover ordinary costs of services" and may recover only "costs greatly in excess of the norm."  Dkt. 1203 at 19.  Because McGuire cannot point to any increased costs, he offers no opinion that Plaintiffs' costs go beyond the ordinary provision of services, and therefore fails to offer a valid opinion on RICO damages.

Plaintiffs resist this Court's holding, citing a slew of inapposite cases that they claim "recognize that opportunity costs represent compensable injuries" under RICO.  Opp. 12.  The first three cases cited by Plaintiffs are not RICO cases at all:  *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390 (4th Cir. 2013) (False Claims Act); *United States ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158 (D.D.C. 2007) (False Claims Act); *S. Cal. Hous. Rights Ctr. v. Krug*, 564 F. Supp. 2d 1138 (C.D. Cal. 2007) (Fair Housing Act).  The remaining two cases are RICO cases, but they involve private plaintiffs who alleged very different injuries than the "opportunity costs" that form the basis of McGuire's damages opinion.  In *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 649 (2008) the private plaintiffs "lost valuable liens they otherwise would have been awarded" but for defendants' fraud.  And in *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 2018 WL 4327802, at *5 (N.D. Ohio Sept. 10, 2018), defendants "stole Plaintiffs' property, rebranded it as their own, and sold and leased it to unwitting customers," which "cost Plaintiff … the opportunity to profit on that property over time."  McGuire's "opportunity costs"

---

[3] Plaintiffs claim that none of Defendants' experts have denied that McGuire's "opportunity costs" are damages.  Opp. 9.  Not so.  Matthew Bialecki explains at length why "opportunity cost, as defined above and utilized by McGuire, cannot be used to determine financial damages suffered by the Cuyahoga County and Summit County governments."  Bialecki Rep. 144–51.  Regardless, Defendants' experts had no duty to opine on this issue.

5

bear no relation to the denials of profitable returns on investments at issue in these cases.[4]

### C. McGuire Does Not Tie His Calculations to Wrongful Conduct by Defendants.

Defendants' opening brief argued that McGuire's damages calculations rely on analyses that fail to distinguish between lawful and unlawful manufacturer conduct. Br. 10. Plaintiffs' only response is to say that McGuire can rely on other experts' data and conclusions. Opp. 13. This is undoubtedly true as a general matter. But that does not mean McGuire can legitimately do what he did here—rely, in calculating damages, on analyses by Rosenthal that themselves fail to distinguish between lawful and unlawful conduct. Br. 10. Neither Cutler nor McGuire can transform Rosenthal's analyses—which unjustifiably assume all manufacturer marketing is unlawful—into a valid basis for assessing damages.

Defendants' opening brief also argued that McGuire failed to offer any opinion as to what damages are attributable to the alleged misconduct of the Distributors and Pharmacy Defendants. Br. 10–11. The Opposition does not appear to contest this point, merely stating, "Professor McGuire also described how damages scenarios could be applied to distributor defendants (or any one defendant)." Opp. 13. But an expert opinion is not admissible unless it "express[es] a probability, which is more than a mere possibility." *See Johnson v. Memphis Light Gas & Water Div.*, 695 F. App'x 131, 137 & n.7 (6th Cir. 2017). McGuire's description of how damages "could be" calculated expresses a "mere possibility" and therefore is not admissible damages testimony.

### II. McGUIRE'S CALCULATIONS ARE NOT RELIABLE

Plaintiffs do not contest that McGuire's method for identifying "affected costs" is

---

[4] As previously explained (Br. 8–9), even for claims for which "opportunity costs" are available, a plaintiff must prove (1) it "gave up" something as a result of defendants' wrongful conduct and (2) what it gave up "was something of value." *Chronister Oil Co. v. Unocal Ref. & Mktg.*, 34 F.3d 462, 465 (7th Cir. 1994). The two RICO cases discussed above meet those requirements: the *Bridge* plaintiffs lost valuable investments, and the *KCI* plaintiffs lost valuable use of their property. Here, McGuire says the Counties experience damages but does not show that they gave up anything at all, much less anything that would have put them in a better financial position.

6

untestable; they contend it need not be testable. Opp. 13–14. But the Sixth Circuit has said that "the key question" when evaluating the admissibility of a damages expert's opinion "is whether it can be (and has been) tested." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 531 (6th Cir. 2008). Thus, McGuire cannot rely solely on his subjective, non-replicable "judgment" to identify affected costs. Indeed, in the one case cited by Plaintiffs that admitted an economist's damages opinion, that opinion included numerous indicia of reliability that are absent here: that expert (i) analyzed budgets to identify a benchmark, (ii) provided numerous objective reasons why the benchmark was appropriate, and (iii) verified his calculations using objective metrics. *Syngenta Crop Prot., LLC v. Willowood Azoxystrobin, LLC*, 267 F. Supp. 3d 649, 657–58 (M.D.N.C. 2017). Here, by contrast, McGuire relied on his own "judgment," without identifying any objective criteria that guided his judgment, and received only "general confirmation" in conversations with unidentified County officials about unidentified expenditures. Br. 12–13.

Defendants do not question that McGuire understands the difference between the economic concepts of fixed cost and variable cost. But they do question whether he reliably differentiated such costs here. McGuire classified many thousands of independent expenditure and job categories by applying his own judgment to short titles/descriptions in expenditure data. McGuire's failure to provide any objective criteria governing these "affected costs" determinations renders his damages opinion unreliable and inadmissible.

## CONCLUSION

This Court should preclude McGuire from testifying concerning damages.[5]

---

[5] Because Special Master Cohen has stricken McGuire's Reply Declaration, this reply brief does not address it. Should Plaintiffs be allowed to use the Reply Declaration in the future, Defendants reserve the right to address it, including by filing additional briefing.

7

Dated: August 16, 2019  Respectfully submitted,

/s/ Mark S. Cheffo
Mark S. Cheffo
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Mark.Cheffo@dechert.com

*Counsel for Defendants Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company*

*Co-Liaison Counsel for the Manufacturer Defendants*[6]

/s/ Carole S. Rendon
Carole S. Rendon
BAKER & HOSTETLER LLP
Key Tower 127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: (216) 621- 0200
Fax: (216) 696-0740
crendon@bakerlaw.com

*Counsel for Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.; Par Pharmaceutical, Inc., and Par Pharmaceutical Companies, Inc.*

*Co-Liaison Counsel for the Manufacturer Defendants*

---

[6] Teva Pharmaceutical Industries Ltd., Allergan plc, and Mallinckrodt plc are respectively an Israeli corporation, Irish holding company, and an Irish company that are not subject to and contest personal jurisdiction for the reasons explained in their motions to dismiss for lack of personal jurisdiction; they are specially appearing to join this motion, and, thus, they do not waive and expressly preserve their personal jurisdiction challenges.

8

*/s/ Enu Mainigi*
WILLIAMS & CONNOLLY LLP
Enu Mainigi
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com

*Counsel for Defendant Cardinal Health, Inc.*

*Co-Liaison Counsel for the Distributor Defendants*


*/s/ Shannon E. McClure*
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone:  (215) 851-8100
Fax: (215) 851-1420
smcclure@reedsmith.com

*Counsel for Distributor Defendant*
*AmerisourceBergen Drug Corporation*

*Co-Liaison Counsel for the Distributor Defendants*


*/s/ Geoffrey Hobart*
Geoffrey Hobart
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
Telephone: (202) 662-5281
ghobart@cov.com

*Counsel for Distributor Defendant*
*McKesson Corporation*

*Co-Liaison Counsel for the Distributor Defendants*

*/s/ Kaspar Stoffelmayr*
Kaspar Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Telephone: (312) 494-4434
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for the Walgreens Defendants*

*Liaison Counsel for the Chain Pharmacy Defendants*

10

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document as served via the Court's ECF system to all counsel of record.

*/s/ Ashley W. Hardin*
Ashley W. Hardin