# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track One Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**REPLY IN SUPPORT OF MOTION OF PLAINTIFFS CUYAHOGA AND SUMMIT COUNTIES FOR PARTIAL SUMMARY ADJUDICATION OF THEIR EQUITABLE CLAIMS FOR ABATEMENT OF AN ABSOLUTE PUBLIC NUISANCE**

August 16, 2019

**TABLE OF CONTENTS**

**INTRODUCTION** ..................................................................................................................1

    **I.**    THERE IS NO GENUINE DISPUTE THAT A PUBLIC NUISANCE EXISTS.............................1

    **II.**   UNDER OHIO LAW, EACH DEFENDANT FOUND LIABLE FOR CREATING A PUBLIC NUISANCE IS JOINTLY AND SEVERALLY LIABLE FOR ABATING THE NUISANCE. ....................5

        **A.**    Ohio's Apportionment Statute Only Affects Joint and Several Liability in Actions Seeking Compensatory Damages. ........................................................................6

        **B.**    Under Long-Standing Ohio Law, Defendants are Jointly and Severally Liable for Abatement of a Public Nuisance. ........................................................................9

**CONCLUSION**............................................................................................................ 10

**INTRODUCTION**

Defendants do not dispute the *facts* regarding the existence of a public nuisance, and none of their legal arguments preclude partial summary adjudication on the issue of the existence of a nuisance. Furthermore, neither Ohio's Apportionment Statute nor the Restatement (Second) of Torts provide Defendants with a basis to apportion the costs of abatement among themselves (though Defendants may seek contribution from each other). Thus, the Court should grant the Motion of Plaintiffs Cuyahoga and Summit Counties for Partial Summary Adjudication of Their Equitable Claims for Abatement of an Absolute Public Nuisance (Dkt. # 1890).

**I.  THERE IS NO GENUINE DISPUTE THAT A PUBLIC NUISANCE EXISTS**

Plaintiffs have moved for partial summary adjudication concerning the existence of a public nuisance in Cuyahoga and Summit Counties. In response, Defendants do not actually dispute the existence of the nuisance, even conceding "there is general recognition that the country is experiencing a serious problem with opioid abuse." Defendants' Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Adjudication of Their Equitable Claims for Abatement of an Absolute Public Nuisance, Dkt. # 2163 ("Defs. Opp."), at 3. Instead, Defendants make two baseless *legal* arguments in their attempt to avoid summary judgment on the issue of the existence of the nuisance.

Defendants' primary argument is that: "The Court Cannot Conclude that a Public Nuisance Exists Without Consideration of Defendants' Conduct." Defs. Opp, at 3; *see also id*. at 4-5 ("[T]he two issues are intertwined and must be considered together to determine whether there is a public nuisance."); Pharmacy Defendants' Response to Plaintiffs' Motion for Partial Summary Adjudication of Their Equitable Claims for Abatement of an Absolute Public Nuisance, Dkt. # 2304 ("Pharm. Defs. Opp."), at 2 (arguing Plaintiffs must "define any alleged nuisance in terms of Defendants' conduct").

But the Restatement and the Ohio Supreme Court clearly reject this position. The Restatement states that a nuisance can exist even if no defendant is liable for creating it:

> [F]or a nuisance to exist there must be harm to another or the invasion of an interest, but there need not be liability for it. If the conduct of the defendant is not of a kind that subjects him to liability (see § 822), the nuisance exists, but he is not liable for it. In other words, as it is used in the Restatement, "nuisance" does not signify any particular kind of conduct on the part of the defendant.

Restatement (Second) of Torts § 821A, comment *c*.[1] Thus, under the Restatement, the issue of whether a nuisance exists is separate and distinct from the issue of whether a defendant is liable for creating the nuisance.

The Ohio Supreme Court adopted the Restatement's definition of a public nuisance in *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), and, previously, recognized a distinction between 1) the existence of a nuisance and 2) the conduct that created the nuisance: "The dangerous condition constitute[s] the nuisance. The action for damages is predicated upon carelessly or negligently allowing such condition to exist." *Rothfuss v. Hamilton Masonic Temple Co. of Hamilton,* 297 N.E.2d 105, 109 (Ohio 1973) (applying a negligence standard in the context of a qualified nuisance damages action).

In other words, under Ohio law, a nuisance is a harmful *condition*—not a defendant's *conduct*; and a defendant may or may not be liable for creating the nuisance, depending on the nature of its conduct. *See e.g., Angerman v. Burick*, 2003-Ohio-1469, ¶ 10 (Ohio Ct. App. 2003) (noting that a defendant can be liable for an absolute nuisance if it "intended to bring about the conditions which are in fact found to be a nuisance") (citing *Dingwell v. Litchfield*, 496 A.2d 213 (Conn.1985)).

Defendants rely heavily on *City of Cincinnati v. Deutsche Bank Natl. Tr. Co.,* 863 F.3d 474 (6th Cir.2017), but that case demonstrates Plaintiffs' point—the *condition*, not the *conduct*, is the nuisance. In

---

[1] The Manufacturer Defendants specifically cite and rely on the Restatement (Second) of Torts, § 821A, comment *c*, in defining a nuisance. *See* Manufacturer Defendants' Memorandum in Support of Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims, Dkt. # 1893-1, at 2.

2

that case, the city initially identified nine dilapidated properties in its complaint that constituted nuisances (the condition) and alleged the banks were liable for creating the nuisances because their policy was to not maintain the properties (the conduct). But those nine properties were deleted from the complaint after a settlement agreement was reached, and the city continued its lawsuit to recover for properties that would (in theory) become nuisances in the future. In affirming dismissal of the complaint, the Sixth Circuit stated the city "no longer identifies any nuisance properties" and that a "plaintiff may use nuisance law only to remedy an existing nuisance, not to sue someone who *may* one day own (or create) a nuisance property[.]" *Id.* at 479. Thus, the Sixth Circuit (in accord with the Restatement and Ohio Supreme Court precedent) clearly distinguished between the existence of the nuisance (the rundown properties) and the defendant's conduct that created the nuisance (the failure to maintain the properties).[2]

None of the Ohio or Sixth Circuit cases cited by Defendants stand for the proposition that a nuisance "must be defined by reference to the alleged wrongful conduct." Defs. Opp., at 6.[3] Worse, Defendants misrepresent the cases they cite by omitting key words from quoted language and substituting them with words favorable to their position.

For example, Defendants quote *City of Hamilton v. Dilley*, 165 N.E. 713 (Ohio 1929), a case in which a plaintiff crashed into an "unlighted platform" and sued the city under a statute which required

---

[2] Defendants also argue that, because a public nuisance must be defined in terms of a defendant's conduct, the opioid epidemic is too broad and "amorphous" to constitute a public nuisance. Defs. Opp., at 3. But, as demonstrated above, under Ohio law a nuisance is not defined in terms of a defendant's conduct. Furthermore, "[e]quity followed the law generally speaking in adopting a broad definition of what would constitute a public nuisance." *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 90, at 643 (5th ed. 1984) (hereinafter Prosser and Keeton); *see also Beretta*, 768 N.E.2d 1136, ¶ 8 ("The definition of 'public nuisance' in [the Restatement] is couched in broad language.").

[3] The Restatement recognizes there are three different ways in which courts use the word "nuisance," and states that "in each case its use must be examined to determine which of the three meanings is intended." Restatement (Second) of Torts § 821A, comment *c*. Thus, the Rhode Island and New Jersey cases cited by Defendants are irrelevant to the extent those courts use the word "nuisance" in a manner different from the way it is used by the Ohio Supreme Court and the Restatement.

3

the city to "keep its streets free from nuisance." *Id.* at syllabus.[4] The Ohio Supreme Court referred to the "unlighted platform" (the condition) as the nuisance, but Defendants altered the text to make it appear as though the court was referring to the defendant's conduct as the nuisance. The court stated:

> The issue made by the pleadings and the evidence was whether or not the **unlighted platform**, under all the circumstances of the case, constituted a public nuisance.

*City of Hamilton*, at 714 (bolded emphasis added). Defendants, however, represent the case as follows:

> "The issue made by the pleadings and the evidence [is] whether or not the" **alleged interference**, "under all the circumstances of the case, constituted a public nuisance."

Defs. Opp., at 6 (brackets in original, bolded emphasis added). This is a blatant and inexcusable attempt to mislead the Court.[5]

Defendants also argue that the opioid crisis does not affect a "public right," but the Court has already rejected this argument. *See* Opinion and Order, Dkt. # 1680, at 19 ("Thus, 'public health' has traditionally been considered a 'public right.'"). *See also* Report and Recommendation, Dkt. # 1499, at 60-61 ("These allegations sufficiently plead a right commonly held by Plaintiff's citizens to be free from a crisis of epidemic proportions that interferes with a general common right to public health, safety and welfare—a right exercised through the local government's provision of protective, preventative, and ameliorative services, which Plaintiff alleges are being consumed by the costs attending the opioid crisis."); *In re Opioid Litigation*, No. 400000/2017, 2018 WL 3115102, at *22 (N.Y. Sup. Ct. June 18, 2018); *In re Opioid Litigation*, 400000/2017, at 13 (N.Y. Sup. Ct. July 17, 2018); *State*

---

[4] The court expressly stated that, because of the statute, the case did not involve issues relating to "the existence or location or manner of erection of the platform[,]" or the city's "duty to place lights or other signals thereon as a warning to vehicular traffic[.]" *Id.* at 714. In other words, the city's conduct was not an issue in the case.

[5] Further examples include Defendants' citations to *Beretta*. The holding in *Beretta* was that "appellees can be held liable for creating the alleged nuisance." *Beretta,* 768 N.E.2d 1136, at ¶ 13. Thus, *Beretta* clearly maintains the Restatement's distinction between the nuisance on the one hand, and the conduct that created the nuisance on the other. Defendants quote the portions of *Beretta* in which the court is merely repeating the allegations in the complaint (compare Defendants' Response, at 5 and Beretta, at ¶ 7).

4

*of West Virginia, ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, 2014 WL 12814021, at *10 (Boone Cty. Cir. Ct., W. Va. Dec. 12, 2014).[6]

\* \* \*

Because there is no genuine dispute as to any material fact regarding the existence of a public nuisance, the Court should grant partial summary judgment on that issue. This will streamline the evidence at trial and allow the trier of fact to focus on whether each Defendant is legally responsible for creating the nuisance (*i.e.,* whether each Defendant's wrongful conduct had a more-than-negligible effect in bringing about the nuisance).[7]

## II. UNDER OHIO LAW, EACH DEFENDANT FOUND LIABLE FOR CREATING A PUBLIC NUISANCE IS JOINTLY AND SEVERALLY LIABLE FOR ABATING THE NUISANCE.

Plaintiffs also sought partial summary adjudication for the proposition that all Defendants found liable for contributing to the existence of the opioid crisis public nuisance shall be jointly and severally responsible for the costs of abating that nuisance. Defendants argue that both Ohio's Apportionment Statute and the Restatement of Torts require apportionment rather than joint and several liability. *See* Defs. Opp., at 9-14. However, as Plaintiffs already explained in their opening memorandum, Dkt. # 1890, at 22-26, neither the Apportionment Statute nor the Torts Restatement is applicable to an *equitable* claim for *abatement* of a public nuisance, the claim Plaintiffs bring here.

---

[6] The Pharmacy Defendants also attempt to avoid liability by claiming that their recent cessation of distributing opioids distinguishes them from the defendants in *Beretta*. They argue "the *Beretta* plaintiffs could plausibly allege ongoing control of the illegal secondary market for firearms only because of 'ongoing conduct[.]'" *See* Pharm. Opp., at 4. Notably, the Pharmacy Defendants do not cite *Beretta* (or any other case law) for this proposition. Indeed, *Beretta* does not require "ongoing control" of the harmful agent, and instead, expressly holds the opposite. *See Beretta*, at ¶ 12 ("[I] is not fatal to appellant's public nuisance claim that appellees did not control the actual firearms at the moment that harm occurred."). Thus, if the Pharmacy Defendants are found responsible for creating the nuisance, they are responsible for abating it.
[7] The standard for causation is set forth in Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motions for Summary Judgment on Proof of Causation, Dkt. # 2204, which is incorporated herein by reference.

### A. Ohio's Apportionment Statute Only Affects Joint and Several Liability in Actions Seeking Compensatory Damages.

The text of Ohio's Apportionment Statute is plain and unambiguous: It only applies to actions seeking the legal remedy of compensatory damages and does not apply to actions seeking the equitable remedy of abatement. A "tort action" is expressly defined as an action seeking compensatory damages—*i.e.*, it is defined in terms of the remedy sought. *See* R.C. § 2307.011(J) ("'Tort Action' means a civil action for damages for injury, death, or loss to person or property"); *see also* R.C. § 2307.22 (stating some defendants "shall be jointly and severally liable in tort for all compensatory damages representing economic loss" and others will only be liable for their "proportionate share of the compensatory damages representing economic loss").[8]

Defendants concede, as they must, that R.C. § 2307.22 only applies to actions seeking compensatory damages.[9] Recognizing this, Defendants change tack and ask the Court to hold that Plaintiffs' equitable claims for abatement and injunctive relief are, as a matter of law, legal actions seeking compensatory damages. Defendants simply ignore the significant differences between equitable remedies and legal remedies as well as the fact that equitable remedies often involve monetary payments by a defendant.

---

[8] The distinction between compensatory damages and equitable relief is well-recognized. *See* Opinion and Order, Dkt. # 1203, at 26 ("[A] claim seeking only equitable relief is not abrogated by the OPLA."). The Ohio Apportionment Statute defines the actions it covers in terms of the remedy sought, which is consistent with the other sections of R.C. § 2307. For example, as the Court previously held, Ohio's Product Liability Act (R.C. §§ 2307.71-80) "defin[es] a 'product liability claim' in terms of damages" and "does not provide for any form of equitable remedy." Opinion and Order, Dkt. # 1203, at 26. Indeed, abatement is not even an available remedy under tort law, and R.C. § 2307.24(A) expressly excludes all other non-tort actions from its purview: "Sections 2307.22 and 2307.23 of the Revised Code do not affect joint and several liability that is not based in tort." R.C. §2307.24(A).

[9] *See* Defs. Opp., at 10 (stating "[t]he relevant question in determining if Ohio's apportionment statute applies is whether Plaintiffs seek 'compensatory damages that represent economic loss' as that phrase is used in the statute[,]" and acknowledging that "the statute may not apply to a true 'summary proceeding' for equitable abatement"). Defendants, however, skip over analyzing the differences between compensatory damages and equitable relief. Instead, they focus on the definition of "economic loss." But that is the wrong level of analysis. "Economic loss" is simply a subset of compensatory damages. The issue is whether the remedy Plaintiffs seek is an equitable remedy for abatement/injunction or a legal remedy for compensatory damages.

6

The primary difference Defendants ignore is that compensatory damages are intended to compensate for harm already suffered, whereas an abatement remedy is intended to prevent further harm from occurring.

> The distinction between an abatement order and a damages award is stark. An abatement order is an equitable remedy, while damages are a legal remedy. An equitable remedy's sole purpose is to eliminate the hazard that is causing prospective harm to the plaintiff. An equitable remedy provides no compensation to a plaintiff for prior harm. Damages, on the other hand, are directed at compensating the plaintiff for prior accrued harm that has resulted from the defendant's wrongful conduct. *The distinction between these two types of remedies frequently arises in nuisance actions.*

*People v. ConAgra Grocery Products Co.*, 227 Cal.Rptr.3d 499, 569 (Cal.App.2017) (emphasis added), *reh'g denied* (Dec. 6, 2017), *review denied* (Feb. 14, 2018), *cert. denied sub nom. ConAgra Grocery Products Co. v. California*, 139 S.Ct. 377, 202 L.Ed.2d 288 (2018), and *cert. denied sub nom. Sherwin-Williams Co. v. California*, 139 S.Ct. 378, 202 L.Ed.2d 288 (2018). *See also Mugler v. Kansas*, 123 U.S. 623, 673, 8 S.Ct. 273, 303 (1887) ("[Courts of equity] cannot only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community."); *United States v. Price*, 688 F.2d 204, 212 (3d Cir.1982) ("Damages are awarded as a form of substitutional redress. They are intended to compensate a party for an injury suffered or other loss. A request for funds for a diagnostic study of the public health threat posed by the continuing contamination and its abatement is not, in any sense, a traditional form of damages. The funding of a diagnostic study in the present case, though it would require monetary payments, would be preventive rather than compensatory. The study is intended to be the first step in the remedial process of abating an existing but growing toxic hazard which, if left unchecked, will result in even graver future injury, *i.e.*, the contamination of Atlantic City's water supply.").

The equitable remedies of abatement and injunctive relief are commonly available in public nuisance actions. *See* Prosser and Keeton, § 90, at 643 (5th ed. 1984) ("The remedies usually available [for public nuisance actions] are those of criminal prosecution and abatement by way of an injunctive decree or order. . . . The equitable remedy of injunction to enjoin a public nuisance developed early in the history of the development of equity jurisprudence[.]"); *see also State ex rel. Miller v. Anthony*, 647 N.E.2d 1368, 1371 (Ohio 1995) ("Nuisance abatement actions seek injunctive relief and, as such, are governed by the same equitable principles that apply to injunctive actions generally."). Plaintiffs here have expressly limited their public nuisance claim to an equitable cause of action for abatement and disavowed any claim for compensatory damages.[10]

Furthermore, equitable remedies often require a defendant to make a monetary payment. The mere fact that the remedy is in the *form* of a monetary payment does not transform the *substance* of the remedy into one for compensatory damages. *See e.g.*, *State ex rel. Montgomery v. Portage Landfill & Dev. Co.,* 1999 WL 454623, *5 (Ohio Ct. App. 1999) ("Actions for injunctive relief and for the abatement of a nuisance are suits in equity[,]" and a "jury trial is not automatically required even though a given defendant may incur some monetary expense as a result of the equitable relief granted by the trial court.");[11] *ConAgra,* 17 Cal. App. 5th at 132 ("[T]he court's abatement order directed defendants to deposit funds in an abatement fund, which would be utilized to prospectively fund remediation of the public nuisance."); *Price*, 688 F.2d at 213 ("It is not unusual for a defendant in equity to expend money in order to obey or perform the act mandated by an injunction. Injunctions, which by their terms compel expenditures of money, may similarly be permissible forms of equitable relief."); *Penn Terra*

---

[10] *See* Plaintiffs' Omnibus Memorandum in Opposition to Defendants' Motions to Dismiss, Dkt. # 654, at 8, fn. 6 (Plaintiffs "herein assert only an equitable public nuisance claim brought in their representative capacity to abate a public health crisis."). Furthermore, Plaintiffs seek only to abate the nuisance as it exists in their jurisdictions. As this Court has already found, Cuyahoga and Summit Counties clearly have standing to bring this claim. *See* Opinion and Order, Dkt. # 1203; *see also* R.C. §§ 3767.03 (providing standing for Ohio counties to bring actions to abate a public nuisance).
[11] The court affirmed a joint and several judgment for a "multi-million dollar financial obligation." *Id.* at *3.

8

*Ltd. v. Dept. of Environmental Resources, Com. of Pa.*, 733 F.2d 267, 278 (3d Cir.1984) ("An injunction which does not compel some expenditure or loss of monies may often be an effective nullity.").

Here, Plaintiffs seek equitable remedies to abate the public nuisance and to prevent future harms (e.g., deaths, overdoses, etc.) from occurring.[12] Thus, Plaintiffs do not seek compensatory damages and Ohio's Apportionment Statute has no bearing on Defendants' joint and several liability for abatement of a public nuisance.

### B. Under Long-Standing Ohio Law, Defendants are Jointly and Severally Liable for Abatement of a Public Nuisance.

For over 100 years, Ohio courts have held defendants jointly and severally liable for abating a public nuisance. *City of Columbus v. Rohr*, 1907 WL 572, *2 (Ohio Ct. App. 1907); *State ex rel. Montgomery v. Portage Landfill & Dev. Co.,* 1999 WL 454623 (Ohio Ct. App. 1999) (affirming joint and several liability for abatement of a public nuisance, including the attendant multi-million dollar financial obligation); *cf.* Boston, *Apportionment of Harm in Tort Law: A Proposed Restatement*, 21 U. Dayton L. Rev. 267, 378 (1996) (noting that for private nuisances, historically, defendants were only severally liable, but that "a different rule governed in cases of public nuisances where joint liability was applied against each tortfeasor because of the public nature of the wrong") (citing J.G. Sutherland, Law of Damages § 1059, at 3939 (4th ed. 1916)).

Defendants argue that if the Ohio Apportionment Statute does not apply, they are nevertheless entitled to apportionment of the abatement costs under the Restatement (Second) of Torts and *Pang v. Minch*, 559 N.E.2d 1313 (Ohio 1990). However, this argument fails for the same reason the Ohio Apportionment Statute does not apply: The rules regarding apportionment set forth in the Restatement and adopted in *Pang* only apply to legal claims for compensatory damages, not to equitable claims for abatement. *See* Restatement (Second) of Torts § 821B, comment *i* (1979) ("There

---

[12] Plaintiffs' other claims (negligence, RICO, etc.) do seek recovery of compensatory damages, but the public nuisance claims seek only equitable relief to prevent future harm. *See* fn. 10, *supra*.

9

are numerous differences between an action for tort damages and an action for an injunction or abatement, and precedents for the two are by no means interchangeable. . . . *This Chapter is concerned primarily with rules governing actions for damages.*") (emphasis added). Defendants cite no authority for the proposition that their equitable liability for the costs of abatement should be several, not joint.[13]

Nothing in Ohio law or the Restatement would provide the Defendants with a basis on which to apportion abatement costs among themselves (though, of course, Defendants are free to seek contribution from each other). Thus, the Court should rule, as a matter of law, that any Defendant found liable for creating the public nuisance shall be jointly and severally liable for the costs of abating the nuisance.

## CONCLUSION

The Court should grant Motion of Plaintiffs Cuyahoga and Summit Counties for Partial Summary Adjudication of Their Equitable Claims for Abatement of an Absolute Public Nuisance.

Dated: August 16, 2019                     Respectfully submitted,

/s/*Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.

---

[13] Furthermore, Defendants have not produced any evidence to prove the abatement remedy is divisible under the Restatement. *See Pang,* 559 N.E.2d at 1324 (citations omitted) ("Thus, where a plaintiff suffers a single injury as a result of the tortious acts of multiple defendants, the burden of proof is upon the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm. Once this burden has been met, a prima facie evidentiary foundation has been established supporting joint and several judgments against the defendants. Thereafter, the burden of persuasion shifts to the defendants to demonstrate that the harm produced by their separate tortious acts is capable of apportionment."). Abatement costs by their nature are aggregate and forward-looking costs. "Unless sufficient evidence permits the factfinder to determine that damages are divisible, they are indivisible." Restatement (Third) of Torts: Apportionment Liab. § 26, comment *g* (2000). "The ultimate burden of proving divisibility is on the party invoking the doctrine." *U.S. Bank Nat. Ass'n v. U.S. E.P.A.,* 563 F.3d 199, 207 (6th Cir.2009) (citing *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1507 (6th Cir.1989)); *see also Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 589 (9th Cir. 2018) ("[T]he defendant asserting the divisibility defense bears the burden of proof.") (citing Restatement (Second) of Torts §433B). In practice, this burden has been very difficult for defendants to meet, and there is precedent in the Sixth Circuit for summary judgment being granted on the issue of joint and several liability (i.e., that the defendant failed to meet its burden to present evidence that the damages were divisible). *See e.g., U.S. Bank Nat. Ass'n v. U.S. E.P.A.,* 563 F.3d 199, 210 (6th Cir.2009) (affirming summary judgment because "U.S. Bank failed to introduce evidence sufficient to create a genuine issue of material fact as to whether the harm at the Olson Well is 'distinct' from that at the manufacturing facility or whether there is a 'reasonable basis' for apportioning liability between it and another party"); *United States v. Cantrell*, 92 F.Supp.2d 704, 718 (S.D. Ohio 2000) (granting partial summary judgment "because [defendant] has not put forward any affirmative evidence that the harm at the Site was divisible" and holding that defendant was "jointly and severally liable for the response costs incurred by the United States at the Site").

SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

/s/ Joseph F. Rice
Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

/s/ Paul T. Farrell
Paul T. Farrell, Jr., Esq.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Plaintiffs' Co-Lead Counsel*

s/Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

/s/ Hunter J. Shkolnik
Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017

11

(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

/s/ Linda Singer
Linda Singer
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
(202) 386-9626 x5626
(202) 386-9622 (Fax)
lsinger@motleyrice.com

*Counsel for Plaintiff Summit County, Ohi*

*On the Brief:*

Louis Bograd
MOTLEY RICE LLC

Dustin Herman
SPANGENBERG SHIBLEY & LIBER LLP

Jeremy Tor
SPANGENBERG SHIBLEY & LIBER LLP