# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| | ) | **5:14CR412** |
| Plaintiff, | ) | |
| v. | ) | CASE NO._____ |
| | ) | Title 21, §§ 841(a)(1), (b)(1)(C), |
| BRIAN HEIM, | ) | and 846, United States Code |
| | ) | |
| Defendant. | ) | |

**JUDGE POLSTER**

The United States Attorney charges:

**INTRODUCTION**

At all times material and relevant to this Information and with respect to each Count contained herein:

1. From on or about August 2011, and continuing through on or about October 12, 2012, defendant BRIAN HEIM, and others, agreed to illegally distribute thousands of doses of prescription painkillers to customers located in the Northern District of Ohio and elsewhere. They did so by using BRIAN HEIM's "medical" office located at 3562 Ridge Park Drive, Suite A, Akron, Ohio. BRIAN HEIM is registered with the State of Ohio Medical Board as a medical doctor. The medical board lists his specialties as Family Practice, Obstetrics and Gynecology.

1

## THE CONTROLLED SUBSTANCES ACT TERMINOLOGY

2. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions, the CSA made it "unlawful for any person knowingly or intentionally" to "distribute or dispense . . . controlled substances" or conspire to do so.

3. The term "controlled substance" meant a drug or other substance included in Schedules I, II, III, IV, and V of the CSA.

4. The term "dispense" meant to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner; it included the prescribing and administering of a controlled substance.

5. The term "distribute" meant to deliver (other than by administering or dispensing) a controlled substance.

6. The term "practitioner" meant a physician, pharmacy, or other person licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he or she practiced, to distribute or dispense a controlled substance in the course of professional practice.

7. Practitioners who want to distribute or dispense controlled substances in the course of professional practice were required to register with the Attorney General of the United States ("Attorney General") before they were legally authorized to do so. The DEA assigned such practitioners a registration number.

8. Practitioners who registered with the Attorney General were authorized under the CSA to dispense, administer and prescribe for, or to otherwise dispense, Schedule II, III, IV, and V controlled substances, so long as they complied with the requirements of their registrations.

2

9. BRIAN HEIM was registered with the Attorney General and DEA under registration number BH7542283.

10. For medical doctors, compliance with the terms of their registration meant that they could not issue a prescription unless it was "issued for a legitimate medical purpose by an individual practitioner acting in the course of his professional practice." 21 C.F.R. § 1306.04(a). A doctor violated the CSA and Code of Federal Regulations if he or she issued an order for a controlled substance outside the usual course of professional medical practice and not for a legitimate medical purpose. Such an order was "not a prescription within the meaning and intent of the CSA," and such knowing and intentional violations subjected the doctor to criminal liability under Section 841(a) of Title 21, United States Code. 21 C.F.R. § 1306.04(a).

## CHARGED CONTROLLED SUBSTANCES

11. The CSA's "scheduling" of controlled substances was based on their potential for abuse, among other considerations. There are five schedules of controlled substances: Schedules I, II, III, IV, and V. Drugs in Schedule I have no medical use. Drugs that had a high potential for abuse and could lead to severe psychological or physical dependence were classified as Schedule II controlled substances. Drugs that had a potential for abuse and could lead to moderate or low physical dependence, or high psychological dependence were classified as Schedule III controlled substances. Drugs that had a low potential for abuse and could lead to limited physical or psychological dependence were classified as Schedule IV controlled substances. 21 U.S.C. § 812.

12. Pursuant to the CSA and its implementing regulations, Oxycodone was classified as a Schedule II narcotic controlled substance based on its high potential for abuse and potential

3

for severe psychological and physical dependence. Oxycodone was sold under a variety of brand names, including Oxycontin, Percocet, and Endocet, as well as generic forms. Oxycodone was one of the strongest prescription painkilling substances approved for use in the United States, and it was very addictive. When abused, Oxycodone could be taken orally (in pill form), chewed, or crushed and snorted. Oxycodone caused euphoria and a high that persons with a dependency and no actual medical necessity would seek.

13. Pursuant to the CSA and its implementing regulations, oxymorphone was classified as a Schedule II narcotic controlled substance based on its high potential for abuse and potential for severe psychological and physical dependence. Oxymorphone was sold under a variety of brand names, including Opana, Opana ER ("Extended Release"), Numorphan, and Numorphone as well as generic forms. Oxymorphone was used to treat moderate to severe pain; after Oxycontin was reformulated, Opana became the drug of choice for abuse. In or around March 2012, Endo Pharmaceuticals released a reformulated version of Opana ER, which was designed to be more difficult to crush and dissolve.

**COUNT 1**
(Conspiracy to Distribute Controlled Substances,
21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 846)

14. From as early as August 2011, and continuing through October 12, 2012, in the Northern District of Ohio, Eastern Division and elsewhere, defendant BRIAN HEIM, and others, unlawfully, knowingly, and intentionally combined, conspired, confederated, and agreed together and with each other to dispense and distribute, and cause to be dispensed and distributed mixtures and substances containing a detectable amount of Oxycodone, Oxycontin, and Opana, Schedule II controlled substances, to various individuals, for a total of approximately 30,000 tablets of

Oxycodone, 60 tablets of Oxycontin, and 780 tablets of Opana, outside the usual course of professional medical practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), United States Code, and Title 21 C.F.R., Section 1306.04.

### Object of the Conspiracy

15. The object of the conspiracy was to make money by distributing Oxycodone, Oxycontin, and Opana, Schedule II controlled substances.

### Manner and Means

In order to obtain the object of the conspiracy, defendant BRIAN HEIM and others employed the following manner and means:

16. It was part of the conspiracy that defendant HEIM and others would, and did, knowingly open, use, operate and maintain a place of business located at 3562 Ridge Park Drive, Suite A, Akron, Ohio, for the purpose of unlawfully distributing and dispensing and causing the unlawful distribution and dispensing of controlled substances.

17. It was part of the conspiracy that defendant HEIM and others would, and did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, controlled substances not for a legitimate medical purpose and not in the usual course of professional practice in one or more of the following manners:

    (a)    Without adequate verification of the patient's identity or medical complaint;

    (b)    Without adequate and reliable patient medical history;

    (c)    Without performance of a complete or adequate mental or physical examination;

(d) Without establishment of a true diagnosis;

(e) Without the use of appropriate diagnostic or laboratory testing;

(f) Without sufficient dialogue with the patient regarding treatment options and risks and benefits of such treatments;

(g) Without establishment of a treatment plan;

(h) Without consideration of, or discussion with the patient, regarding alternatives to treatment other than narcotics;

(i) Without referral of patients to specialists in an effort to identify and correct the cause of pain;

(j) Without any assessment of risk of abuse for individual patients; and

(k) Without maintaining true, accurate and complete medical records that justified the course of treatment for each patient, including, but not limited to: medical history; physical examination results; diagnostic therapeutic and laboratory results; evaluations and consultations; treatment plans and objectives; discussions of risks and benefits; records of all medications prescribed, dispensed, or administered; instructions and agreements; and periodic reviews.

18. It was further part of the conspiracy that defendant HEIM and others would, and did knowingly and intentionally distribute and dispense controlled substances, and cause controlled substances to be distributed and dispensed to patients knowing that the patients were addicted to the controlled substances, were misusing or abusing the controlled substances, or were requesting additional quantities of controlled substances to support the patient's own addictions, or to divert the controlled substances to others.

19. It was further part of the conspiracy that defendant HEIM and others would, and did knowingly and intentionally distribute and dispense controlled substances, and cause controlled substances to be unlawfully distributed and dispensed to patients by using pre-signed blank prescription forms upon which HEIM's staff would fill in the controlled substance and dosage to

6

be prescribed.

20. It was further part of the conspiracy that defendant HEIM and others would, and did perform and cause to be performed acts, and make and cause to be made statements, to hide and conceal the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of Title 21, United States Code, Sections 846.

### Overt Acts

21. In furtherance of the conspiracy and to effect the object thereof, the following overt acts, among others, were committed in the Northern District of Ohio, Eastern Division:

(a) On or about the dates listed in Counts 2 through 21 below, in the Northern District of Ohio, Eastern Division, defendant BRIAN HEIM did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, a mixture or substance containing a detectable amount of Oxycodone, Oxycontin, and Opana, Schedule II controlled substances, outside the usual course of professional medical practice and not for a legitimate medical purpose, to the persons in the quantities set forth in Counts 2-21 below.

All in violation of Title 21, United States Code, Section 846.

### COUNTS 2-21
(Distribution of Controlled Substances,
21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

The United States Attorney further charges:

22. The allegations in paragraphs 1 through 21 set forth above are re-alleged and incorporated by reference in these counts, as though fully restated herein.

23. On or about the following dates in the Northern District of Ohio, Eastern Division, defendant BRIAN HEIM did knowingly and intentionally distribute and dispense

7

Oxycodone, Oxycontin, and Opana, Schedule II controlled substances, by dispensing prescriptions outside the usual course of professional practice and not for a legitimate medical purpose, as indicated below:

| COUNT | Date Rx Issued | Controlled Substance | Qty | Purported Customer |
|---|---|---|---|---|
| 2 | 8/30/2011 | Opana 40mg | 240 | K.A. |
| 3 | 6/20/2012 | Oxymorphone 10mg | 360 | K.A. |
| 4 | 8/22/2011 | Oxycodone 10/325mg | 240 | L.D. |
| 5 | 10/21/2011 | Oxycodone 5/325mg | 240 | L.D. |
| 6 | 1/13/2011 | Oxycodone 10/325mg | 180 | S.D. |
| 7 | 7/6/2012 | Oxycodone 10/325mg | 180 | S.D. |
| 8 | 1/6/2012 | Oxycodone 10/325mg | 240 | R.D. |
| 9 | 4/5/2012 | Oxycodone 10/325mg | 240 | R.D. |
| 10 | 5/3/2012 | Oxycodone 5/325mg | 360 | G.H. |
| 11 | 7/2/2012 | Oxycodone 5/325mg | 360 | G.H. |
| 12 | 10/25/2011 | Oxycodone 5/325mg | 120 | M.K. |
| 13 | 6/14/2012 | Oxycodone 5/325mg | 120 | M.K. |
| 14 | 10/6/2011 | Oxycodone 5/325mg | 280 | J.K. |
| 15 | 4/4/2012 | MS Contin 100mg | 120 | J.K. |
| 16 | 8/16/2012 | Oxycodone 30mg | 240 | N.K. |
| 17 | 9/14/2012 | Oxycodone 30mg | 240 | N.K. |
| 18 | 3/23/2012 | Oxycodone 5/325mg | 240 | C.W. |
| 19 | 9/6/2012 | Oxycodone 5/325mg | 240 | C.W. |
| 20 | 11/15/2011 | Oxycodone 5/325mg | 240 | S.W. |
| 21 | 8/17/2012 | Oxycodone 5/325mg | 240 | S.W. |

All in violation of Title 21, Sections 841(a)(1) and (b)(1)(C), United States Code.

**FORFEITURE**

The United States Attorney further charges:

For the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853, the allegations of Counts 1-21 are incorporated herein by reference. As a result of the foregoing offense, defendant BRIAN HEIM shall forfeit to the United States any and all property

8

constituting, or derived from, any proceeds they obtained, directly or indirectly, as the result of such violation; and any and all of his property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violation.

STEVEN M. DETTELBACH
United States Attorney

By: _____
JOSEPH M. PINJUH, Unit Chief
OCEDTF Unit