# DSJ1&2-PR Exh 583

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-MD-2804 |
| This document relates to: | Judge Dan Aaron Polster |
| *Track One Cases:* | |

## DEFENDANTS WALGREEN CO. AND WALGREEN EASTERN CO.'S SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFFS' "(FIRST) COMBINED DISCOVERY REQUESTS"

Defendants Walgreen Co. and Walgreen Eastern Co. ("Walgreens") hereby respond to "Plaintiffs' (First) Combined Discovery Requests to the National Retail Pharmacies Defendants" in accordance with the Federal Rules of Civil Procedure 26 and 34, the Local Rules of the Northern District of Ohio, and the Case Management Orders and Rulings entered to date.

## GENERAL OBJECTIONS

1.      Walgreens objects to providing these responses because they exceed the number of discovery requests Plaintiffs were permitted to serve on the pharmacy defendants under the Court's Case Management Order No. 1.

2.      Walgreens objects to providing these responses because Plaintiffs have repeatedly explained that these discovery requests were never intended to be "additional written discovery that requires a response," but instead were meant to "tailor" their prior discovery requests, to which Walgreens has already responded.

3.      Walgreens objects to providing these responses because the Special Master directed the parties on July 30, 2018 that "defendants should read Plaintiffs 'additional requests'

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

as prioritization of existing requests – that is, as a request for production of certain documents first."

4.      Walgreens objects to providing these responses because, in light of the Special Master's ruling, Walgreens advised plaintiffs that it would treat the requests at issue as efforts to prioritize existing requests, but not as new requests that required separate answers.

5.      Walgreens objects to providing these responses because at no time during the many meet-and-confer emails and discussions relating to Walgreens' discovery responses that took place of the ensuing four months did Plaintiffs ever express any disagreement with this approach.

6.      Walgreens objects to providing these responses because, in an off-the-record Court hearing on November 20, 2018, Judge Polster directed plaintiffs and the pharmacy defendants to raise the issue separately with Special Master Cohen, plaintiffs' counsel asked for an opportunity to do so the following week, and Judge Polster granted that request. Nevertheless, following that hearing, which included minimal argument and no transcript, an order was issued requiring Walgreens to respond to these Requests within 10 days that spanned the Thanksgiving holiday.

7.      Walgreens objects to providing these responses because fact discovery is not yet closed.  All parties continue to make document productions resulting from privilege review, late-added categories of documents by Plaintiffs, and from custodians whose files were recently requested by Plaintiffs.  Walgreens may produce additional documents responsive to the Requests below, and reserves all rights to rely on those documents for any purpose in this litigation.

8.      Walgreens objects to these Requests because they are not proportional to the needs of these cases, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

proposed discovery outweighs its likely benefit, and to the extent the Requests otherwise go beyond the scope of permissible discovery at this stage of these proceedings.

9.      Walgreens objects to providing these responses because the burden to do so is extreme within the timeframe given and not proportional to the needs of these cases.  As a result of the compressed timeframe, Walgreens will respond to the best of its ability.  Failure to identify a document, or to respond to the interrogatory portion of any request, is not an admission that the document or information does not exist or was not produced.

10.     These responses are made solely for the purpose of this multidistrict litigation. By responding to these Requests, Walgreens does not waive any objections that it may have to the admission into evidence of these responses, or any documents or things produced in response to these Requests, on any applicable grounds.  Walgreens reserves the right to object on any ground at any time to a request for further responses to these Requests, as well as the right to revise, correct, add to, supplement, or clarify any of the objections or responses contained herein at any time.

11.     Any production of documents provided in response to these Requests is subject to the Protective Order (Doc. 441).

12.     Walgreens objects that no Definitions and Instructions are included in these Requests.  Walgreens will comply with the Discovery Rules, but assumes no further obligations in responding to these Requests.

13.     Walgreens objects to these Requests to the extent that they seek discovery that is not relevant to any party's claims or defenses.

14.     Walgreens objects to these requests because they seek discovery that is not relevant to the three Track One Cases under Case Management Order One, i.e., *The County of Cuyahoga, Ohio, et al. v. Purdue Pharma L.P., et. al.,* Case No. 17-OP-45004 (N.D. Ohio); *The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.,* Case No. 18-op-45090 (N.D. Ohio); and *The City of Cleveland Ohio v. Purdue Pharma L.P., et al.,* Case No. 18-OP-45132 (N.D. Ohio) (referred to herein as "Track One Cases").  As appropriate, Walgreens will limit its

3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

responses to information and documents that relate to the two counties (Cuyahoga County, Ohio and Summit County, Ohio) at issue in the Track One Cases.

15. Walgreens objects to these Requests to the extent that they include multiple subparts and therefore far exceed the total number of requests for production and interrogatories permitted by the Court for the Track One cases. Walgreens further objects to these Requests on the grounds that they are individually and collectively overly broad and unduly burdensome and seek discovery that is not relevant to any party's claims or defenses and not proportional to the needs of these cases.

16. Walgreens objects to these Requests to the extent that they seek information or documents that are protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other applicable privilege or protection ("privileged information"). The inadvertent disclosure of privileged information or documents in response to these Requests shall not be deemed a waiver of any privilege or right as to the privileged information inadvertently disclosed or any other information or documents relating to the subject matter of any inadvertently-disclosed privileged information.

17. Walgreens objects to these Requests to the extent that any Request seeks disclosure of information protected by any confidentiality obligation owed to a third party. Walgreens will not disclose or produce such information or documents absent notice to and, if required, consent of the third party or entry of a court order compelling production.

18. Walgreens objects to these Requests to the extent that they seek documents or information that: (a) are in Plaintiffs' possession, custody, or control; (b) are not in Walgreens' possession, custody, or control; (c) are equally or more readily available from sources other than Walgreens; (d) Plaintiffs can obtain from other sources that are more convenient, less burdensome, and/or less expensive than requiring Walgreens to provide the information; (e) are not reasonably accessible to Walgreens; and/or (f) are publicly available to Plaintiffs. With regard to any response that Walgreens provides, Walgreens' response will be limited to relevant,

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

responsive, and non-privileged information or documents in its possession, custody, or control located after a reasonable search that is proportional to the needs of these cases.

19.     Walgreens objects to the Requests to the extent that they contain terms that are not defined or terms that are defined in a vague, ambiguous, or unintelligible manner.

20.     Walgreens objects to the Requests to the extent that any Request: (a) is unduly burdensome, oppressive, overly broad, ambiguous, confusing, or vague; (b) is duplicative or unreasonably cumulative of other discovery in this investigation; or (c) calls for Walgreens to draw a legal conclusion in order to respond.

21.     Walgreens objects to the Requests to the extent that any Request assumes facts and events or includes characterizations that are assumed to be accurate, and contains legal conclusions.  By providing responses to these Requests, Walgreens does not admit or concede that any assumed fact, event, characterization, or legal conclusion is correct or accurate, and Walgreens expressly reserves the right to contest any and all assumed facts, events, characterizations, and legal conclusions.

22.     Walgreens objects to each Request that purports to require that Walgreens identify and provide discovery with regard to "each," "all," "any," or similar all-encompassing wording, on the grounds that such Requests are overly broad, unduly burdensome, seek discovery that is not relevant to any party's claims or defenses, not proportional to the needs of these cases, and beyond the scope of permissible discovery.

23.     Walgreens objects to each Request in this set to the extent that it seeks premature expert discovery or disclosure of expert opinions and goes beyond the scope of permissible expert discovery under the Discovery Rules.  Walgreens will provide expert discovery and disclosures on the dates set by the Court in compliance with the Discovery Rules, but assumes no further obligation in responding to these Requests.

24.     Walgreens' investigation and discovery are ongoing as to all matters referred to in these objections and responses to Plaintiffs' Requests.  Walgreens' responses are based upon information that has been collected and reviewed to date for the purpose of responding to these

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Requests, and they are not prepared from the personal knowledge of any single individual. Walgreens reserves the right to amend and supplement these responses as discovery and this litigation proceed.

## RESPONSES TO COMBINED DISCOVERY REQUESTS

### REQUEST NO. 2:

Please produce each of your **Suspicious Order Monitoring System (SOMS)** policies and procedures since January 1, 2006 and identify the Bates stamp range for each; please identify the effective date(s) each was in force and effect.

### RESPONSE:

Walgreens incorporates its general objections above, including without limitation that this constitutes an improper discovery request beyond the number allowed under CMO 1. Walgreens objects to this request because it provides no definition of "Suspicious Order Monitoring System (SOMS) policies." Walgreens further objects to this request to the extent it requires it to identify "each" of the undefined Suspicious Order Monitoring Systems policies. Walgreens will identify policies that it has been able to locate after a reasonable search. Walgreens may rely on additional documents contained it in its production – including without limitation documents describing the technical aspects of its programs – as well as witness testimony and publicly-available materials to reflect the policies and practices in place at Walgreens regarding the distribution of prescription opioids into the Track One jurisdictions for the relevant time frame.

Subject and without waiving these objections, Walgreens responds that it has produced policies and procedures – as well as additional documents identifying such policies and procedures – identified to date following a reasonable search. Walgreens further responds that any identifying date information is available from the documents themselves. *See* WAGFLDEA00001854; WAGMDL00395965; WAGMDL00387625; WAGMDL00395923;

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

WAGMDL00624503; WAGMDL00492132; WAGMDL00387638; WAGMDL00395937;

WAGMDL00400342; WAGFLDEA00000027; WAGFLDEA00000028; WAGMDL00395957.

Walgreens reserves the right to supplement this response with additional information.

**SECOND SUPPLEMENTAL RESPONSE:**

Walgreens incorporates by reference its objections and response to this Request as set

forth above.  Subject to and without waiving these objections, Walgreens supplements that

response as follows:

To the extent that such information still exists and could be found following a reasonable

search, Walgreens has produced its written policies and procedures, and related documents,

describing its monitoring of controlled substances over time.  *See* WAGFLDEA00001856;

WAGMDL00077046; WAGMDL00133969; WAGMDL00133974; WAGMDL00133985;

WAGMDL00133996; WAGMDL00134004; WAGMDL00134007; WAGMDL00134013,

WAGMDL00134021, WAGMDL00134029, WAGMDL00134037, WAGMDL00134038,

WAGMDL00325128, WAGMDL00379438, WAGMDL00491191, WAGMDL00491200,

WAGMDL00491208, WAGMDL00491213, WAGMDL00491218, WAGMDL00491228,

WAGMDL00491236; WAGMDL00491246; WAGMDL00491251; WAGMDL00491259;

WAGMDL00491267; WAGMDL00491268; WAGMDL00491271; WAGMDL00491273;

WAGMDL00491277; WAGMDL00491280; WAGMDL00491282; WAGMDL00491285;

WAGMDL00491287; WAGMDL00491290; WAGMDL00491292; WAGMDL00491295;

WAGMDL00491296; WAGMDL00491299; WAGMDL00491302; WAGMDL00491305;

WAGMDL00491307; WAGMDL00491311; WAGMDL00491316; WAGMDL00491317;

WAGMDL00491318; WAGMDL00491319; WAGMDL00491320; WAGMDL00491327;

WAGMDL00491334; WAGMDL00491338; WAGMDL00491339; WAGMDL00491341;

WAGMDL00491342; WAGMDL00491343; WAGMDL00491345; WAGMDL00491348;

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

WAGMDL00491349; WAGMDL00491352; WAGMDL00491362; WAGMDL00491374;

WAGMDL00491383; WAGMDL00491401; WAGMDL00491410; WAGMDL00491416;

WAGMDL00491417; WAGMDL00491418; WAGMDL00491421;WAGMDL00491424;

WAGMDL00491425; WAGMDL00491441; WAGMDL00491457; WAGMDL00491473;

WAGMDL00491489; WAGMDL00491506; WAGMDL00491523; WAGMDL00491524;

WAGMDL00491540; WAGMDL00491556; WAGMDL00491572; WAGMDL00491592;

WAGMDL00491593; WAGMDL00491604; WAGMDL00491614; WAGMDL00491625;

WAGMDL00491636; WAGMDL00491637; WAGMDL00491651; WAGMDL00491664;

WAGMDL00491676; WAGMDL00491677; WAGMDL00491692; WAGMDL00491707;

WAGMDL00491723; WAGMDL00491739; WAGMDL00491755; WAGMDL00491771;

WAGMDL00491787; WAGMDL00491788; WAGMDL00491799; WAGMDL00491809;

WAGMDL00624476; WAGMDL00624487; WAGMDL00491820; WAGMDL00491832;

WAGMDL00491836; WAGMDL00491837; WAGMDL00491839; WAGMDL00491845;

WAGMDL00491847; WAGMDL00491851; WAGMDL00491854; WAGMDL00491857;

WAGMDL00491859; WAGMDL00491861; WAGMDL00491863; WAGMDL00491878;

WAGMDL00491896; WAGMDL00491913; WAGMDL00491918; WAGMDL00491924;

WAGMDL00491928; WAGMDL00491937; WAGMDL00491943; WAGMDL00491947;

WAGMDL00491951; WAGMDL00491956; WAGMDL00624498; WAGMDL00491961;

WAGMDL00491967; WAGMDL00491970; WAGMDL00491974; WAGMDL00491979;

WAGMDL00491984; WAGMDL00491985; WAGMDL00491987; WAGMDL00491988;

WAGMDL00491989; WAGMDL00491990; WAGMDL00491993; WAGMDL00491998;

WAGMDL00492001; WAGMDL00492005; WAGMDL00492009; WAGMDL00492011;

WAGMDL00492013; WAGMDL00492014; WAGMDL00492015; WAGMDL00492017;

WAGMDL00492019; WAGMDL00492021; WAGMDL00624503; WAGMDL00492025;

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

WAGMDL00492027; WAGMDL00492030; WAGMDL00492032; WAGMDL00492038;

WAGMDL00492044; WAGMDL00492047; WAGMDL00492051; WAGMDL00492056;

WAGMDL00492061; WAGMDL00492062; WAGMDL00492064; WAGMDL00492065;

WAGMDL00492066; WAGMDL00492067; WAGMDL00492070; WAGMDL00492073;

WAGMDL00492076; WAGMDL00492082; WAGMDL00492086; WAGMDL00492089;

WAGMDL00492092; WAGMDL00492093; WAGMDL00492096; WAGMDL00492102;

WAGMDL00492105; WAGMDL00492108; WAGMDL00492111; WAGMDL00492112;

WAGMDL00492113; WAGMDL00492116; WAGMDL00492122; WAGMDL00492126;

WAGMDL00492128; WAGMDL00492130; WAGMDL00492132; WAGMDL00492150;

WAGMDL00492153; WAGMDL00492154; WAGMDL00492158; WAGMDL00492160;

WAGMDL00492164; WAGMDL00492165; WAGMDL00624510; WAGMDL00492168;

WAGMDL00492169; WAGMDL00624511; WAGMDL00624512; WAGMDL00624513;

WAGMDL00624514; WAGMDL00492170; WAGMDL00492171; WAGMDL00492172;

WAGMDL00492173; WAGMDL00492178; WAGMDL00492179; WAGMDL00492184;

WAGMDL00492187; WAGMDL00492191; WAGMDL00492195; WAGMDL00492198;

WAGMDL00492202; WAGMDL00492206; WAGMDL00492209; WAGMDL00492212;

WAGMDL00492213; WAGMDL00492214; WAGMDL00492216; WAGMDL00492221;

WAGMDL00492225; WAGMDL00492230; WAGMDL00492234; WAGMDL00492238;

WAGMDL00492241; WAGMDL00492247; WAGMDL00492251; WAGMDL00492256;

WAGMDL00492261; WAGMDL00492266; WAGMDL00492271; WAGMDL00492275;

WAGMDL00492279; WAGMDL00492284; WAGMDL00492288; WAGMDL00492292;

WAGMDL00492295; WAGMDL00492301; WAGMDL00492304; WAGMDL00492308;

WAGMDL00492311; WAGMDL00492315; WAGMDL00492319; WAGMDL00492322;

WAGMDL00492326; WAGMDL00492330; WAGMDL00492333; WAGMDL00492336;

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

WAGMDL00492340; WAGMDL00492344; WAGMDL00492348; WAGMDL00492351;

WAGMDL00492354; WAGMDL00492358; WAGMDL00492361; WAGMDL00492364;

WAGMDL00492368; WAGMDL00492374; WAGMDL00492375; WAGMDL00492377;

WAGMDL00492378; WAGMDL00624515; WAGMDL00492381; WAGMDL00492384;

WAGMDL00492387; WAGMDL00492388; WAGMDL00624518; WAGMDL00492390;

WAGMDL00492391; WAGMDL00492392; WAGMDL00492393; WAGMDL00492397;

WAGMDL00492400; WAGMDL00492401; WAGMDL00492402; WAGMDL00492417;

WAGMDL00492422; WAGMDL00492423; WAGMDL00492487; WAGMDL00492488;

WAGMDL00492489; WAGMDL00492491; WAGMDL00492494; WAGMDL00492497;

WAGMDL00492501; WAGMDL00492504; WAGMDL00492513; WAGMDL00492517;

WAGMDL00492520; WAGMDL00492525; WAGMDL00492528; WAGMDL00492533;

WAGMDL00492538; WAGMDL00492543; WAGMDL00492548; WAGMDL00492553;

WAGMDL00492559; WAGMDL00492560; WAGMDL00492561; WAGMDL00492562;

WAGMDL00492575; WAGMDL00492580; WAGMDL00492581; WAGMDL00492585;

WAGMDL00492586; WAGMDL00492587; WAGMDL00609410; WAGMDL00609419;

WAGMDL00609421; WAGMDL00624334; WAGMDL00624348; WAGMDL00624358;

WAGMDL00624370; WAGMDL00624381; WAGMDL00624392; WAGMDL00624403;

WAGMDL00624415; WAGMDL00624428; WAGMDL00624441; WAGMDL00624452;

WAGMDL00624465;  WAGMDL00624521; WAGMDL00624524; WAGMDL00658782;

WAGMDL00673723; WAGMDL00673724; WAGMDL00673726; WAGMDL00673729;

WAGMDL00673734; WAGMDL00673735; WAGMDL00673737; WAGMDL00673738;

WAGMDL00673742; WAGMDL00673749; WAGMDL00673750; WAGMDL00673752;

WAGMDL00673753; WAGMDL00673769; WAGMDL00673785; WAGMDL00673801;

WAGMDL00673815; WAGMDL00673816; WAGMDL00673827; WAGMDL00673835;

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

WAGMDL00673846; WAGMDL00673871; WAGMDL00673885; WAGMDL00673886;

WAGMDL00673887; WAGMDL00673888; WAGMDL00673894; WAGMDL00673898;

WAGMDL00673903; WAGMDL00673904; WAGMDL00673905; WAGMDL00673934;

WAGMDL00673940; WAGMDL00673956; WAGMDL00673963; WAGMDL00673976;

WAGMDL00673983; WAGMDL00673992; WAGMDL00674000; WAGMDL00674014;

WAGMDL00674015; WAGMDL00674044; WAGMDL00674050; WAGMDL00674066;

WAGMDL00674073; WAGMDL00674086; WAGMDL00674093; WAGMDL00674102;

WAGMDL00674110; WAGMDL00674124; WAGMDL00674125; WAGMDL00674266;

WAGMDL00674267; WAGMDL00674268; WAGMDL00674269; WAGMDL00674270;

WAGMDL00674271; WAGMDL00674272; WAGMDL00674273; WAGMDL00674274;

WAGMDL00674275; WAGMDL00674276; WAGMDL00749381; WAGMDL00751822;

WAGMDL00044765; WAGMDL00489370; WAGMDL00317093; WAGMDL00311411;

WAGMDL00757172; WAGMDL00752212; WAGMDL00757788.

Walgreens produced the first set of such documents on June 11, 2018, and has continued to produce additional relevant documents on a rolling basis.  Walgreens has also provided Rule 30(b)(6) testimony describing its SOMS policies and procedures dating back to at least 2006. *See generally* 12/16/18 Bratton 30(b)(6) Tr.

In addition to the documents and testimony identified above, Walgreens has also produced the following documents related to its policies and procedures:

WAGFLDEA00000206; WAGFLDEA00000471; WAGFLDEA00001746;

WAGMDL00000360; WAGMDL00005359; WAGMDL00005369; WAGMDL00006890;

WAGMDL00007981; WAGMDL00008078; WAGMDL00008085; WAGMDL00008093;

WAGMDL00008100; WAGMDL00008102; WAGMDL00008104; WAGMDL00008110;

WAGMDL00008112; WAGMDL00008119; WAGMDL00008128; WAGMDL00077016;

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

WAGMDL00101703; WAGMDL00108983; WAGMDL00128847; WAGMDL00129432;

WAGMDL00245867; WAGMDL00289026; WAGMDL00289031; WAGMDL00289436;

WAGMDL00289440; WAGMDL00289045; WAGMDL00289450; WAGMDL00289054;

WAGMDL00303383; WAGMDL00308327; WAGMDL00311411; WAGMDL00325172;

WAGMDL00325187; WAGMDL00371292; WAGMDL00387635; WAGMDL00387641;

WAGMDL00387642; WAGMDL00387651; WAGMDL00400357; WAGMDL00400358;

WAGMDL00400359; WAGMDL00400360; WAGMDL00400361; WAGMDL00400365;

WAGMDL00528179; WAGMDL00589682; WAGMDL00589684; WAGMDL00624527;

WAGMDL00657563; WAGMDL00659828; WAGMDL00660331; WAGMDL00667936;

WAGMDL00667938.

### REQUEST NO. 3:

Please identify and describe each **suspicious order** your Suspicious Order Monitoring System (SOMS) identified since January 1; 2006 and produce all documents related thereto; please identify the Bates stamp range for each related to *Case Track One.*

### RESPONSE:

Walgreens incorporates its general objections above, including without limitation that

this constitutes an improper discovery request beyond the number allowed under CMO 1.

Walgreens objects to this request because it provides no definition of "Suspicious Order

Monitoring System (SOMS)."  Walgreens further objects to this request to the extent it requires

Walgreens to "describe" suspicious orders.  Walgreens' produced documents speak for

themselves.  Walgreens further objects to this request to the extent it requires Walgreens to

identify and describe "each" suspicious order identified under the undefined Suspicious Order

Monitoring Systems policies.  Walgreens will identify certain representative documents that it

has been able to locate after a reasonable search.  Walgreens may rely on additional documents

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

contained it in its production to reflect the suspicious orders Walgreens identified regarding prescription opioids in the Track One jurisdiction for the relevant time frame.

Subject to and without waiving these objections, Walgreens responds that it has produced over 5,000 Suspicious Control Drug Orders (i.e. Suspicious Order Reports) for the Track One jurisdictions. *See* WAGMDL00390035-WAGMDL00395922; WAGMDL00396034-WAGMDL00400341. Walgreens further responds that additional Suspicious Order Reports can be found in its custodial files. Walgreens will supplement this response with additional information as required.

**SECOND SUPPLEMENTAL RESPONSE:**

Walgreens incorporates by reference its objections and response to this Request as set forth above. Walgreens further objects to this Request because it does not, in fact, seek a description of the operation and evolution of Walgreens' suspicious order monitoring program, even though Plaintiffs represented to Judge Polster on November 20, 2018, that it did, in a hearing that was not on the record. Walgreens has produced a significant volume of information regarding its policies and procedures for suspicious order monitoring, and how those policies and procedures have evolved over time in response to changing guidance from DEA. *See supra*, Response to Request No. 2, including Supplemental Responses. That information includes not just documentary evidence of Walgreens' SOMS policies and procedures, but also 30(b)(6) testimony from Walgreens' corporate designee, Ed Bratton, on December 16, 2018, as well as testimony from other witnesses knowledgeable about Walgreens' SOMS policies over time.

Subject to and without waiving these objections, Walgreens supplements its response to Request No. 3 as follows:

Walgreens has always complied with relevant statutes, regulations, and its best understanding of DEA guidance regarding the identification and reporting of potentially

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

suspicious orders.  Walgreens' methodology for reporting potentially suspicious orders to DEA has evolved over time to reflect DEA's changing guidance and Walgreens' changing understanding of DEA's expectations.  Walgreens has always worked to strike the right balance between (a) providing patients with FDA-approved medications pursuant to prescriptions written for a legitimate medical purpose and (b) preventing suspicious orders from being filled and shipped to Walgreens pharmacies.

During the period when Walgreens distributed opioids to its pharmacies, federal regulations required Walgreens to report "suspicious orders" to the DEA, meaning "orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency."  21 CFR § 1301.74(b).  As DEA acknowledged to Walgreens in 2007, "the controlled substance suspicious order regulation does not provide detailed, specific guidance…" WAGMDL00387635.

In 2006, the Detroit DEA Field Office admonished Walgreens for not basing its reporting of potentially suspicious orders on the "voluntary formula" found in Appendix E-3 of the Chemical Handler's Manual.  *See, e.g.*, WAGMDL00709507, at 9510; WAGMDL00387635, at 7636; WAGMDL00395965, at 6010.  Thereafter, Walgreens pursued the necessary programming to modify its reporting in accordance with the formula described in Appendix E-3. *See, e.g.*, WAGMDL00387642; WAGMDL00400357.  Between 2006 and 2008, Walgreens repeatedly informed DEA that its reporting of potentially suspicious orders was based on this guidance, which was also available on DEA's website.  *See* WAGMDL00387642; WAGMDL00387635, at 7636; WAGMDL00387651; *see also* WAGMDL00395965; WAGMDL00400361.

The DEA's Appendix E-3 formula calculates the quantity which, if exceeded in one month, constitutes an order which "**may** be considered excessive or suspicious and therefore

14

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

require reporting to DEA."  WAGMDL00395965, at WAGMDL00396010 (emphasis in

original); *see also* WAGMDL00400361, at WAGMDL00400363 (emphasis in original).  The

DEA formula is based on a DEA factor, multiplied by an average order for customers of a given

distribution center.  *See id.* at WAGMDL00400364.  The DEA factor "equals 3" for both

Schedule II controlled substances, and Schedule III controlled substances containing List 1

chemicals.  *Id.*  DEA's guidance instructs distributors to transmit reports based on this formula

"[a]t the end of each month."  *Id.*  DEA described this formula as intended to apply to "all

aspects of commercial chemical manufacturing and distribution."  *Id.* at WAGMDL00400361.

DEA explained, "Using a computer to manage and report on high volume transaction business

activities with extremely short order cycle times (receipt to delivery) is the only viable, cost

effective methodology for the reporting of orders which may be considered excessive or

suspicious."  *Id.* at WAGMDL00400364.

Based on DEA's guidance, Walgreens reported potentially suspicious orders—i.e., orders

that "**may** be considered excessive or suspicious"—to the DEA (Suspicious Control Drug Order

reports) using this DEA formula until 2012.  *See* WAGMDL00387635; WAGMDL00387642;

WAGMDL00387651; WAGMDL00400357.  Walgreens has also provided Rule 30(b)(6)

testimony describing these reports to the DEA of potentially suspicious orders.  *See* 12/16/18

Bratton 30(b)(6) Tr. 60:21-63:10; *see also generally id*.

In addition, Walgreens used "line limits" to identify and stop potentially suspicious

orders at various points in time.  The line limit was a hard stop for certain products that could not

be exceeded.  *See* 12/16/18 Bratton 30(b)(6) Tr. 191:24-193:10; *see also, e.g.*,

WAGMDL00077016; WAGMDL00659828 at WAGMDL00659845.

Starting in 2008, Walgreens began development of a new suspicious order monitoring

system (SOMS) that, ultimately, led to a new method of reporting suspicious orders to the DEA.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Beginning in 2009, Walgreens' new SOMS identified flagged orders of controlled substances based on algorithms for "tolerance" (i.e., limits on the size of an individual store order for an individual drug) and "frequency" (limits on the frequency with which a particular product could be ordered).  *See* WAGMDL00624527; WAGMDL00492132; WAGMDL00667938; WAGMDL00658782; *see also generally* Supplemental Response to Request No. 2, *supra*. Phase I of this new system was launched in August 2009.  *See* WAGMDL00667938, at WAGMDL00667940.  Starting in Phase II, which launched in September 2010, Walgreens' suspicious order monitoring system automatically reduced orders that exceeded the SOMS tolerance threshold.  *See id*.  Phases III and IV entailed enhancements to the system that rolled out in 2012.  *See id.*

In late 2012, Walgreens replaced the frequency algorithm with an algorithm that flags orders based on "ceiling limits" (i.e., limits on the overall quantity of an individual drug that a single store could purchase over a specified time period).  *See* WAGMDL00667938; WAGMDL00658782; WAGMDL00007981; *see also generally* Supplemental Response to Request No. 2, *supra*.

Also in 2012, Walgreens changed its method of reporting suspicious orders to the DEA, based on its enhanced SOMS, as well as changes in DEA guidance and industry practice. Walgreens performed diligence on orders that flagged on a tolerance or ceiling limit and reported to the DEA any such flagged orders that could not be justified based on the store's legitimate needs and were therefore deemed to be suspicious.  Walgreens has also provided 30(b)(6) testimony on these changes in Walgreens' methods of identifying potentially suspicious orders and reporting suspicious orders.  *See* 12/16/18 Bratton 30(b)(6) Tr. 62:9-20; 149:22-150:17; 151:17-152:7; 227:1-13.

16

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Walgreens reported suspicious orders to the DEA using this SOMS methodology until Walgreens stopped distributing controlled substances to its pharmacies.  Walgreens conducted a diligent search but did not identify any reports to the DEA of suspicious orders of opioids, using this SOMS methodology, from Walgreens stores in the Track One jurisdictions.

**REQUEST NO. 4:**

Please identify each suspicious order you *reported* to the DEA since January 1, 1996 and produce all documents related thereto; please identify the Bates stamp range for each related to *Case Track One*.

**RESPONSE:**

Walgreens incorporates its general objections above, including without limitation that this constitutes an improper discovery request beyond the number allowed under CMO 1. Walgreens objects to this request because it provides no definition of "suspicious order." Walgreens further objects to this request to the extent it requires Walgreens to identify "each" suspicious order reported to the DEA over more than two decades, and is therefore overly broad, unduly burdensome, and well outside the bounds of the Federal Rules' requirement that discovery be proportional to the needs of the case.  Walgreens will identify documents that it has been able to locate after a reasonable search.  Walgreens may rely on additional documents contained it in its production to reflect the suspicious orders Walgreens identified regarding prescription opioids in the Track One jurisdiction for the relevant time frame.

Subject to and without waiving these objections, Walgreens incorporates by reference its response to Request No. 3 and will supplement this response with additional information as required.

**SUPPLEMENTAL RESPONSE:**

Walgreens incorporates by reference its objections and response to this Request as set forth above.  Subject to and without waiving these objections, Walgreens supplements that

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

response as follows:  Walgreens incorporates by reference its supplemental response to Request

No. 3.

### REQUEST NO. 5:

For each suspicious order you identified but did not report to the DEA since January 1, 2006, please describe in as much detail as possible the reasons and produce all documents related thereto; please identify the Bates stamp range for each related to *Case Track One.*

### RESPONSE:

Walgreens incorporates its general objections above, including without limitation that

this constitutes an improper discovery request beyond the number allowed under CMO 1 and that

the burden of responding to this request on an order-by-order basis, for a period of 12 years, far

outweighs any possible benefit to Plaintiffs.

Subject to and without waiving these objections, Walgreens incorporates by reference

its response to Request No. 3.  Walgreens further incorporates its document productions to date

and will supplement this response with additional information if required.

### SECOND SUPPLEMENTAL RESPONSE:

Walgreens incorporates by reference its objections and response to this Request as set

forth above.  Subject to and without waiving these objections, Walgreens supplements that

response as follows:

Walgreens has always followed the law, regulations, and its best understanding of DEA's

guidance on monitoring and reporting of potentially suspicious orders, as that guidance has

changed over time and as reflected in Walgreens' responses to Requests No. 2, 3, and 4 above.

Walgreens is unaware of any suspicious orders that were identified but not reported to DEA

using one of the reporting methodologies described in those responses above.

### REQUEST NO. 6:

For each suspicious order you reported to the DEA since January 1, 2006, please identify whether you ***declined*** the order or ***shipped*** the order and produce all documents related thereto; please identify the Bates stamp range for each related to *Case Track One.*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**RESPONSE:**

Walgreens incorporates its general objections above, including without limitation that this constitutes an improper discovery request beyond the number allowed under CMO 1 and that the burden of responding to this request on an order-by-order basis, for a period of 12 years, far outweighs any possible benefit to Plaintiffs.

Subject to and without waiving these objections, Walgreens incorporates by reference its response to Request No. 2.  Walgreens further incorporates its document productions to date and will supplement this response with additional information as required.

**SECOND SUPPLEMENTAL RESPONSE:**

Walgreens incorporates by reference its objections and response to this Request as set forth above.  Subject to and without waiving these objections, Walgreens supplements that response as follows:

Walgreens has always followed the law, regulations, and its best understanding of DEA's guidance on monitoring and reporting of potentially suspicious orders, as that guidance has changed over time and as reflected in Walgreens' responses to Requests No. 2, 3, and 4 above. Walgreens is unaware of any suspicious orders that it shipped to Walgreens stores.

**REQUEST NO. 7:**

For each suspicious order you reported and then shipped since January 1, 2006, please produce all documents related to your "***due diligence***" for each; please identify the Bates stamp range for each related to *Case Track One.*

**RESPONSE:**

Walgreens incorporates its general objections above, including without limitation that this constitutes an improper discovery request beyond the number allowed under CMO 1 and that the burden of responding to this request on an order-by-order basis, for a 12-year period, far outweighs any possible benefit to Plaintiffs.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Subject to and without waiving these objections, Walgreens incorporates by reference its response to Request No. 6.  Walgreens further directs Plaintiffs to its production, including without limitation its custodial files and WAGMDL00400358; WAGMDL00400359; WAGMDL00400360, and will supplement this response with additional information as required.

**SECOND SUPPLEMENTAL RESPONSE:**

Walgreens incorporates by reference its objections and response to this Request as set forth above.  Subject to and without waiving these objections, Walgreens supplements that response as follows:

Walgreens has always followed the law, regulations, and its best understanding of DEA's guidance on monitoring and reporting of potentially suspicious orders, as that guidance has changed over time and as reflected in Walgreens' responses to Requests No. 2, 3, and 4 above.  Walgreens is unaware of any suspicious orders that were shipped without due diligence to confirm that such orders were not actually suspicious.  Walgreens has engaged in a variety of practices for monitoring, and conducting diligence on, potentially suspicious orders over time.

For example, from 2006 until Walgreens stopped distributing controlled substances, Walgreens' distribution center personnel in the computer room and the "SAIL" department used a computerized query to identify orders of product from Walgreens' pharmacies that exceeded a particular quantity.  Orders greater than the set threshold quantity were flagged for further investigation, e.g., by calling the store to assess why the order quantity had been placed and whether the quantity was actually needed, before shipping the order.  *See, e.g.*, 12/16/18 Bratton 30(b)(6) Tr. 82:17-84:17; 86:12-89:11; 91:16-92:16; 102:8-103:8; 104:18-22; 106:10-23; 108:13-109:23; Bish Tr. 61:7-63:19; 479:21-485:15; Diebert Tr. 35:17-37:5; Peterson Tr. 21:7-21, 309:16-310:1, ; *see also, e.g.*, WAGMDL00749381; WAGMDL00751822.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Distribution center personnel also played additional roles with respect to due diligence on orders in the 2006-2014 timeframe.  First, the "pickers" who worked in the controlled substances vault, and were tasked with picking product from the vault to fill orders from Walgreens pharmacies, evaluated the quantities of such orders based on their knowledge and experience of what was customary.  Second, the "auditors" who reviewed totes of controlled substance orders before those orders were placed on trucks for shipment, also evaluated those orders for excessive quantities.  The pickers and the auditors escalated orders of unusual size for review by the distribution center's function manager.  *See* Bish Tr. 483:11-24, 484:2-24; 12/16/18 Bratton 30(b)(6) Tr. 109:24-114:10.

The function manager then investigated those orders by calling the store to inquire about the reasons for the order and whether the quantity was actually needed.  *See* Bish Tr. 482:4-484:8; *see also id.* 484:9-24 (function manager explaining that she also had an outside phone line put inside the C2 vault at Walgreens' Perrysburg distribution center, so that she could call stores directly from the vault to inquire about unusually large orders).

From time to time, the distribution centers' function managers also sought input from personnel in Rx Inventory, who, upon request, reviewed sales history, order history, and item movement for individual stores, to determine whether orders were in line with a store's history or were unusual.  *See, e.g.*, Martin Tr. 336:24-338:9; Martin Dep. Ex. 30 (WAGFLDEA00000846); WAGFLDEA00000852; Bish Tr. 63:12-16, 89:15-23, 485:1-19.

Starting in around 2009, Walgreens' personnel in Rx Inventory and Loss Prevention conducted additional due diligence on potentially suspicious orders, by reviewing reports of orders hitting on the SOMS threshold limits for tolerance and frequency.  *See* Martin Tr. 23:20-24:11, 170:5-14, 328:5-329:7; *see also* Martin Dep. Ex. 2 (WAGMDL00674550).  Again, personnel in Rx Inventory also reviewed sales and order history and item movement for

21

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

individual stores, to determine whether orders were in line with a store's history or were unusual. *See* Martin Tr. 328:5-329:7, 336:24-338:9; Martin Dep. Ex. 30 (WAGFLDEA00000846); WAGFLDEA00000852; Bish Tr. 63:12-19, 89:15-23, 485:1-19.  Based on these reviews, members of the Rx Inventory and Loss Prevention teams provided input on adjusting the SOMS parameters, as well as guidance to distribution center personnel on further diligence that needed to be performed on individual orders before those orders were shipped.  *See, e.g.*, *id.*; *see also* Martin Tr. 23:20-24:11; 12/16/18 Bratton 30(b)(6) Tr. 160:1-161:7; 163:9-21; 210:12-211:24.

In 2012, Walgreens deployed SOMS Phase V, which replaced frequency limits with ceiling limits (i.e., limits based on accumulated receipts from a store over a specified time period).  *See, e.g.*, WAGMDL00667938; WAGMDL00658782; 12/16/18 Bratton 30(b)(6) Tr. 271:24-272:12.  Walgreens also launched the Pharmaceutical Integrity department in 2012, which, among other things, was charged with monitoring orders from Walgreens' pharmacies.  If a store tried to place an order exceeding its tolerance or ceiling limit, the order was canceled (set to zero quantity).  *See, e.g.*, Merritello Tr. 108:7-20; 12/16/18 Bratton 30(b)(6) Tr. 272:13-273:10; 11/30/18 Bratton Tr. 323:13-324:17.  Stores seeking quantities above their tolerance or ceiling limit were required to submit a controlled substances override form that was reviewed first by the store's field leadership (i.e., the district manager or healthcare supervisor, formerly the pharmacy supervisor) and then, if approved, by the Pharmaceutical Integrity department. *See, e.g.*, 12/16/18 Bratton 30(b)(6) Tr. 268:14-22; 272:13-273:24.

In response to a controlled substance override request, the Pharmaceutical Integrity department sought additional information from the store about why it had requested the additional quantity, e.g., to determine if the store had a new patient with a prescription for a drug that was rarely carried by the store, or if a hospice had opened down the street, or another nearby pharmacy had closed.  *See, e.g.*, 11/30/18 Bratton Tr. 324:18-325:8, 325:22-327:6.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

In addition, Pharmaceutical Integrity ensured that Walgreens' pharmacists were trained and followed Walgreens' Good Faith Dispensing Policy and its Target Drug Good Faith Dispensing Policy, and that pharmacists properly used Walgreens' Target Drug Checklist.  *See, e.g.*, 11/30/18 Bratton Tr. 137:17-138:8; Polster Tr. 93:13-96:10.  Pharmaceutical Integrity was also responsible for ensuring that pharmacists followed other rules and regulations regarding such things as recordkeeping and ensuring that prescribers had valid DEA registration numbers. Pharmaceutical Integrity also sometimes reviewed a store's sales and order history to help determine whether a request for additional quantities was justified.

If the Pharmaceutical Integrity department could not determine that a request for additional quantities was justified, the request was denied.  During the timeframe from 2012 until Walgreens stopped distributing opioids to its stores, Pharmaceutical Integrity also reported such orders to the DEA.  *See, e.g.*, 12/16/18 Bratton 30(b)(6) Tr. 274:1-6.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Dated: February 19, 2019

Respectfully submitted,

WALGREEN CO. AND WALGREEN EASTERN CO.

By:   */s/ Kaspar Stoffelmayr*
Kaspar J. Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 W. Hubbard Street
Chicago, IL 60654
Phone: 312-494-4400
kaspar.stoffelmayr@bartlitbeck.com
kate.swift@bartlitbeck.com

*Attorneys for Walgreen Co. and Walgreen Eastern Co.*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February, 2019, the foregoing has been served via email to the following:

**Plaintiffs' Co-Liaison Counsel**
Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside avenue East, Suite 1700
Cleveland, OH 44114
pweinberger@spanglaw.com

Steven J. Skikos
SKIKOS CRAWFORD SKIKOS & JOSEPH
One Sansome Street, Suite 2830
San Francisco, CA 94104
(415) 546-7300
sskikos@skikoscrawford.com

Troy A. Rafferty
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
(805) 435-7000
trafferty@levinlaw.com

**Defense Liaison Counsel**
Mark Cheffo, Esq.
Dechert LLP
Three Bryant Park, 1095 Avenue of the Americas
New York, NY 10036-6797
mark.cheffo@dechert.com

Carol Rendon, Esq.
Baker Hostetler
Key Tower, 127 Public Square
Cleveland, OH 44114
crendon@bakerlaw.com

Enu Mainigi, Esq.
Williams & Connolly
725 Twelfth Street, NW.
Washington, DC 20005
emainigi@wc.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Shannon McClure, Esq.
ReedSmith
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA  19103
smcclure@reedsmith.com

Geoffrey E. Hobart, Esq.
Covington & Burling
Once City Center
850 Tenth Street, NW.
Washington, DC  20001
ghobart@cov.com

Tina Tabacchi, Esq.
Jones Day
77 West Wacker Drive
Chicago, IL  60601
tmtabacchi@jonesday.com

Tyler Tarney, Esq.
Gordon & Rees
41 S. High Street, Suite 2495
Columbus, OH  43215
ttarney@grsm.com

mdl2804discovery@motleyrice.com

xALLDEFENDANTS-MDL2804-Service@arnoldporter.com

/s/ Kaspar Stoffelmayr
Kaspar J. Stoffelmayr
Katherine M. Swift
Bartlit Beck LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Phone: 312-494-4400
kaspar.stoffelmayr@bartlitbeck.com
kate.swift@bartlitbeck.com

Attorneys for Walgreen Co. and Walgreen Eastern Co.