# DSJ1&2-PR Exh 598



To:       John Parker
From:     GMMB
Date:     June 19, 2015
RE:       Strategy to Turn the Tide in West Virginia

---

Below is a revised strategy for HDMA and its members to turn the tide of imbalanced media coverage and public perception about healthcare distributors' role in painkiller abuse in West Virginia and beyond.

**The Situation**
During the past three years, a state lawsuit against healthcare distributors has put the blame of painkiller abuse squarely on the shoulders of healthcare distributors. It asserts that these companies flooded the state with more than 200 million painkillers over a four- to five-year period which, in turn, fueled the rampant prescription drug abuse problem in the state. Yet, the reality is a far cry from the imbalanced picture painted by reporters, particularly Eric Eyre of The Charleston Gazette.

Healthcare distributors provide a much needed service and fulfill the needs of licensed pharmacies and doctors who provide care for their patients. There are multiple parties responsible for drug diversion and painkiller abuse—pill mills, unsuspecting pharmacists and doctors who comply with patient requests, pharmaceutical companies that heavily market the drugs and the abusers themselves. The state asserts that the distributors should have known that they were sending too many pills into the market. Yet the only party that had the aggregate view of the problem was the DEA. Distributors, like all business competitors, do not share sales data with their competitors.

The fact is that 200 million pills over a four-year period is a significant problem. The story is made worse given the following:
- The distributors do not want to make their sales data public, while Sen. Manchin makes a very public appeal to get this data.
- Attorney General Morrissey has ties to HDMA and has been accused of ignoring this lawsuit and having a conflict of interest in the case.
- Past and future settlements with the U.S. Department of Justice continue to make news.
- While patient access issues can help support the need for distributors, they can also turn against distributors, as these companies must self-monitor and restrict the supply of medicines to protect their ability to continue serving the needs of doctors, pharmacists and their patients.

While the current situation positions HDMA and its members in a negative light, there are several steps you can take to turn the tide. But if action is not taken by HDMA and its members, you risk:
- The credibility and reputation of the industry,
- More litigation across the country,
- Patient access to much needed medicines,
- Possible disruption to the passage of Senate Bill 483[i] (S. 483) that could make a difference in the problem,
- Additional state or federal regulation that could negatively impact HDMA member companies,
- Potential business and financial losses,

Page | 1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                              ABDCMDL00269293

- Your customers' ability to deliver on their mission, and
- Your ability to deliver on your mission.

**Keys to Success in Turning the Tide**
1. You must respond to the accusations. Otherwise, inaction or lack of voice damages the industry's image while letting others characterize HDMA and its actions in a negative light.
2. HDMA needs to reframe the issue by telling the rest of the complex story and demonstrating the valuable role of distributors in the healthcare ecosystem.
3. HDMA and its members need to commit to a proactive strategy that all parties agree to and support.
4. HDMA should take real actions that are genuine, forthright and transparent. Anything short of this will be seen as a simple public relations stunt with no merit.
5. HDMA should continue to publicly support and amplify existing anti-prescription drug abuse and misuse campaigns, voluntarily and/or by working with partners.
6. While taking steps in West Virginia, HDMA needs to inoculate the industry against future flare-ups of the issue, in the state and beyond.

**Target Audiences**
Your target audiences should include:
- Key stakeholders
    - HDMA members
    - State Boards of Pharmacy
    - Pharmaceutical companies
    - Drug stores
    - Patient advocates (see third parties)
- Media (West Virginia and national)
- Regulators and law enforcement
- Federal and state legislators and state leaders (i.e., Governor)
- Third parties that can support the cause (for a preliminary list of targets, see pp. 7-8.)

**Key Messages**
Below are topline messages on this issue. We would work with HDMA to further refine and broaden the messages and develop a series of materials that support the effort.
- Our mission is to protect patient safety and patient access to medicines through a safe and efficient distribution network.
- We don't license, prescribe or dispense drugs. Pinning the responsibility solely on distributors is blaming the messenger.
- The rampant abuse of prescription painkillers in West Virginia is unacceptable and stems from a complex situation that involves many different players.
- Pharmaceutical distributors can play a unique role in bringing stakeholders across the supply chain together to develop strategies to tackle this complex national crisis.
- That's why we are bringing together the key stakeholders—law enforcement, FDA, DEA and others—to find solutions that will make a difference in the war against prescription painkiller abuse.
- This is a problem that simply can't be solved by one action or group alone. Distributors need other key players on this issue to come together with them to find a solution.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                              ABDCMDL00269294

**Recommended Strategy**
To turn the tide in West Virginia and begin the process of inoculating against further flare-ups of this issue, we recommend a five-part strategy, to include: strong support of S. 483, development of materials to effectively communicate with various audiences on the issue, outreach to third parties, media engagement and convening a summit on the issue. These recommendations and their tactics are outlined below.

1. **Strong public support of S. 483:** It is clear that HDMA has been publicly supportive of the companion House bill; similar positioning should be pursued for S. 483 to demonstrate that HDMA and its members are working hand-in-hand with members of Congress and other stakeholders to solve the problem. Suggested tactics include:
   a. Continue to respond to announcements on the bill with statements to the press.
   b. Leverage news on the issue (e.g., another state grappling with the same problem) to write letters to the editor or op-eds reinforcing the need for the passage of S. 483.

2. **Develop materials to effectively communicate with various audiences:** Whether communicating to Members of Congress, patient advocates, the public or the media, clear and compelling communications are necessary to persuade your audience. HDMA should refresh its messaging, fact sheets, tough Q&A, infographics and backgrounds on the issue and create template versions that can be customized for state and third party use. In addition, specific materials like template blog posts, op-eds and statements should be created to support third party efforts.

3. **Outreach to third parties:** HDMA and its members need others to help tell the broader, complex story. Outreach should begin with groups HDMA has a history of past and current collaboration such as NACDS, NCPA and APAM. It should be broadened to include patient advocacy groups (see p. 7 for a target list). The outreach and activities would include:
   a. Initial emails/calls to key targets to arrange meetings to discuss the issue and HDMA's position.
   b. Invite third parties to the summit and brief them on the summit objectives.
   c. Provide third parties with toolkits they can use to support their own post-summit communications with key constituents and the media.
   d. Identify and co-author op-eds with HDMA and key third parties to submit to key media outlets following summit.
   e. Ongoing collaboration with third parties as the issue ebbs and flows.

4. **Media outreach:** For your side of the story to be included in news coverage, HDMA needs to conduct outreach to key reporters in West Virginia and at a national level to brief them on the issue. This outreach can be enhanced by third party media outreach as well. There are several tactics we recommend.
   a. <u>Desk-side briefings</u>: In July, conduct desk-side briefings with key West Virginia reporters to introduce the organization to the reporters and provide clear background materials that lay out the industry and the bigger picture of the diversion problem. We would include Eric Eyre in this group and would carefully prep any spokesperson in advance of speaking to him.
   b. <u>Post-summit outreach</u>: After the summit is another opportunity to conduct media outreach. To provide a "carrot" to Eyre, we recommend offering him the first post-summit interview with one or two key spokespeople from the event. This would be

Page | 3

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
ABDCMDL00269295

  followed by a press release distribution, a reporter conference call to a wider group and individual follow-up calls to reporters. The summit also offers an opportunity to submit a joint op-ed and/or public writings locally and nationally with key summit participants on the outcomes of the discussion.

  c. <u>Ongoing rapid response and proactive outreach</u>: As news stories about the issue arise, HDMA should evaluate the stories and respond as appropriate to clarify any inaccuracies and to provide your position. In addition, there will be news events that we can prepare for. As an example, HHS's Substance Abuse and Mental Health Services Administration issues annual statistics on drug use in America. They typically release the data in September. This is an ideal moment in time to proactively reach out to the media with the steps your members are taking to curb the problem and to paint the wider picture. Another opportunity, should HDMA and its members agree, is to pursue reinstatement of the National Prescription Drug Take Back Day and promote your efforts to do so.

5. **Convene a summit:** HDMA can show proactive leadership and help change public attention on prescription drug abuse by convening a summit to address the problem with key stakeholders. The summit would:
   a. Be a half-day, closed-door summit in West Virginia.
   b. Be hosted in September (as schedules permit) allowing Sen. Manchin to participate and help set the stage for more proactive media outreach post-summit.
   c. Allow stakeholders to have a frank, off-the-record conversation.
   d. Address three main topics or answer three main questions (determined by HDMA and/or other stakeholders) on what needs to be done to better prevent abuse and diversion.
   e. Include topics that are wide enough in scope so that key stakeholders have a reason to participate, but focused enough to end up with specific, tangible solutions.
   f. As mentioned in the media outreach section, offer Eric Eyre the first post-summit interview with one to two key spokespeople from the event, issue a press release on the topline outcomes of the summit, host a reporter conference call to a wider group and include follow-up calls to individual reporters.
   g. Compile the recommendations from the summit to produce a comprehensive, public report that could be used by policymakers, patient advocates and other stakeholders as a forward-looking solution. Note that providing the report to Eric Eyre exclusively or in advance would also provide an additional "carrot" and help expand HDMA's relationship with him.
   h. Include a joint op-ed and/or public writings locally and nationally with summit participants on the outcome of the discussion and/or the finding in the report.

A major component of S. 483 directs "the Department of Health and Human Services, acting through the Food and Drug Administration and the Centers for Disease Control and Prevention, to submit a report identifying…how collaboration between federal, state, local, and tribal law enforcement agencies and the pharmaceutical industry can benefit patients and prevent diversion and abuse of controlled substances." Hosting the summit would pre-empt S. 483 in a way that would help position HDMA as a leader, frame its member companies as being part of the solution rather than the problem and offer a tangible outcome that would benefit all stakeholders. Issuing the summit report would go beyond federal legislation in a way that is led by HDMA and the industry.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER  ABDCMDL00269296

**Timeline**
Below is a proposed timeline for the strategy and tactics outlined above.

| HDMA: West Virginia Communications Strategy Timeline ||
|---|---|
| **JUNE** ||
| Week of July 1 | HDMA provides final input on strategic recommendations<br>GMMB refines drafts messages<br>GMMB researches and develops list of potential third party partner organizations<br>GMMB drafts third party outreach strategy memo; HDMA provides feedback |
| Week of July 6 | HDMA provides feedback on messages and 3rd party strategy and list<br>GMMB revises and finalizes messages and list<br>GMMB develops list of target reporters in West Virginia<br>GMMB begins media monitoring and rapid response (ongoing)HDMA and GMMB begin third party outreach calls; GMMB supports outreach to up to 10 partners (ongoing through August) |
| Week of July 13 | GMMB begins drafting public letter of support<br>GMMB/HDMA collect testimonials for story bank (ongoing)<br>GMMB drafts op-eds/letters to the editor for placement at key moments in time (ongoing)<br>GMMB provides strategic counsel on summit timing and location (ongoing through August) |
| Week of July 20 | GMMB continues drafting public letter of support; HDMA provides feedback<br>GMMB drafts backgrounder and fact sheet; HDMA provides feedback<br>GMMB/HDMA begin outreach to target reporters to set up desk-side chats/meetings (ongoing through September) |
| Week of July 27 | HDMA provides feedback on backgrounder and fact sheet; GMMB revises and finalizes<br>GMMB begins developing infographics |

Page | 5

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ABDCMDL00269297

| AUGUST | |
|---|---|
| **Week of Aug. 3** | GMMB continues infographic development<br>GMMB develops reporter backgrounders for HDMA desk-side meetings (ongoing) |
| **Week of Aug. 10** | HDMA provides feedback on infographics<br>HDMA finalizes summit time and location |
| **Week of Aug. 17** | GMMB revises and finalizes infographics<br>GMMB begins development of third party toolkit<br>GMMB drafts summit run of show |
| **Week of Aug. 24** | GMMB develops third party toolkit; HDMA provides feedback<br>HDMA provides feedback on summit run of show<br>GMMB develops summit speakers guide/briefing materials/talking points |
| **SEPTEMBER** | *Note: Summit dates to be revised once a firm date is set.* |
| **Week of Sept. 1** | HDMA provides feedback on third party toolkit materials<br>GMMB revises and finalizes summit run of show<br>GMMB drafts summit press release<br>GMMB revises and finalizes speakers guide/briefing materials/talking points<br>GMMB conducts media training for up to two HDMA spokespeople |
| **Week of Sept. 7** | HDMA distributes toolkit to third party partner organizations<br>HDMA provides feedback on summit press release; GMMB revises and finalizes |
| **Week of Sept. 14 or Sept. 21** | GMMB distributes press release the day of the summit (TBD)<br>GMMB provides on-site support at summit from two staff members<br>GMMB drafts post-summit statement; HDMA/partners provide feedback; GMMB revises and finalizes<br>HDMA prepares post-summit report<br>GMMB conducts follow up pitching to West Virginia media |
| **Week of Sept. 21 or Sept. 28** | HDMA issues post-summit report and statement<br>GMMB conducts follow up pitching to West Virginia media |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                                      ABDCMDL00269298

Addendum

**Media Targets**
*Please note that this is a preliminary list.*
- West Virginia media
    - Eric Eyre, The Charleston Gazette and The Gazette editorial board
    - Dorothy Abernathy, Associated Press Mid-Atlantic Bureau Chief
    - Steve McMillan, Associated Press News Editor, Virginia and West Virginia
    - Chris Dickerson and/or Kyla Asbury, The West Virginia Record
    - Scott Finn and/or Ashton Marra, West Virginia Public Broadcasting
    - Curtis Johnson, Jean Tarbett Hardiman and/or Taylor Stuck and editorial board members from The Herald Dispatch
    - Broadcast media throughout the state
    - Community papers throughout the state
- National media that have covered the topic or would like to cover the legislation
    - Antoinette Alexander, Drug Store News
    - Jeffrey Woldt, Chain Drug Review
    - Rob Eder, The Hill
    - Selected DC outlets (e.g., Washington Post, Politico, The Pink Sheet)

**Other Outreach Targets**
- Regulators and law enforcement
    - DEA
    - FDA
    - CMS
    - West Virginia State Police
    - Various West Virginia county sheriff's departments and municipal police departments
- State leaders
    - Sen. Manchin
    - Gov. Ray Tomblin
    - Sen. Shelley Capito
    - Rep. David McKinley
    - Rep. Alex Mooney
    - Rep. Evan Jenkins
- Third parties
    - Industry groups
        - NACDS (National Association of Chain Drug Stores)
        - NCPA (National Community Pharmacists Association)
        - APAM (Alliance to Prevent the Abuse of Medicines)
        - NABP (National Association of Boards of Pharmacy)
    - Patient advocacy groups
        - West Virginia Society of Oncology
        - AARP West Virginia Chapters (locations in areas around Huntington, Kanawha Valley, Fayette County, etc.)
        - West Virginia Society of Interventional Pain Physicians
        - Hospice Council of West Virginia

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                                    ABDCMDL00269299

- National Fibromyalgia and Chronic Pain Association—local affiliate support groups (WV FM Angels, Family Care Fibromyalgia Self-help Group, West Virginia Fibromyalgia and Chronic Pain Network grassroots volunteer group)
- American Cancer Society West Virginia Action Center (local grassroots managers)
  - Existing HDMA partners with ties or knowledge of the prescription drug abuse epidemic in West Virginia
    - The National Governors' Association
    - The Partnership for Safe Medicines
    - The Partnership for Drug-Free Kids
    - National Association of Attorney Generals

---

[i] *Senate bill 483 clarifies "consistent with the public health and safety" and "imminent danger" in the Controlled Substances Act to improve the ability of the DEA to work collaboratively with distributors and other stakeholders to prevent drug diversion; allows CSA registrants who face having their registration revoked or suspended to submit a corrective action plan; and requires the Secretary of HHS and Administrator of the DEA to submit a report to Congress assessing how enforcement activities may impact patient access and identify how collaboration between agencies and stakeholders can benefit patients and prevent prescription drug abuse.*

*S. 483 was **introduced by Sen. Orrin Hatch (R-Utah) in February 2015** and was referred to the Committee on the Judiciary. It is co-sponsored by Sens. Sheldon Whitehouse (D-R.I.); Marco Rubio (R-Fla.), David Vitter (R-La.) and Bill Cassidy (R-La.).*

Page | 8

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ABDCMDL00269300