# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 )  |
| | ) Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) |
| | ) Judge Dan Aaron Polster |
| *Track One Cases* | ) |
| | ) **ORDER DENYING SMALL** |
| | ) **DISTRIBUTORS' MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |

Before the Court is Non-RICO Small Distributors' Motion for Summary Judgment Based on Their *De Minimis* Status. (Doc. #: 1878). For the reasons explained below, the Motion is **DENIED**.

### I. Legal Standard.

The Court hereby incorporates the legal standards set forth in the Court's Opinion and Order regarding Plaintiffs' Summary Judgment Motions Addressing the Controlled Substances Act. (Doc. #: 2483).

### II. Overview.

As an initial matter, the Court notes that the only small distributor defendant Plaintiffs have not severed from the upcoming Track One trial is Henry Schein, Inc. and its affiliate, Henry Schein Medical Systems, Inc. ("Schein"), and that Plaintiffs name Schein as a defendant only in the

Summit County action.  Additionally, this Motion seeks summary judgment only as to Plaintiffs' public nuisance claims.[1]

Schein is "one of the largest direct sellers of products (including controlled substances) to dental, orthodontic, and primary care physicians in the United States," with net sales globally of $12.5 billion in 2017.  Opp. at 8 (Doc. #: 2201).  Schein sells opioids directly to doctors and dental practitioners in Summit County.  *Id.*

Schein seeks summary judgment with respect to Plaintiffs' public nuisance claims, asserting that "even if this Court finds that there is a dispute of material fact as to whether distributors, generally, are 'direct causes' of the opioid epidemic in Plaintiffs' communities, [Schein] cannot be considered to have caused the epidemic because [it] is *de minimis*."  Motion at 2 (Doc. #: 1878).

### III.   Analysis.

Schein argues that, because of its *de minimis* sales of opioids in the Summit County, it cannot be held responsible under Plaintiffs' nuisance theory.  Schein explains that the "roots of the *de minimis* doctrine stretch to ancient soil." *id.* at 3, and cite Black's Law Dictionary's definition of the term as meaning "trifling, minimal, or something 'so insignificant that a court may overlook it in deciding an issue or case.'"  *Id.*; *Black's Law Dictionary* at 464 (8th ed. 2004).  Specifically, Schein asserts that its "*de minimis* conduct cannot be a but-for cause of a 'significant interference'

---

[1] Anda, Inc., H.D. Smith, LLC, and Prescription Supply Inc. are the other moving defendants, but they have each been severed from the first trial.  The Motion also seeks summary judgment as to three other claims, none of which Plaintiffs are pursuing at trial.

with a public right, as required to prove a nuisance claim. *Baker v. Chevron U.S.A., Inc.*, 533 F. App'x 509, 524 (6th Cir. 2013).

Schein relies primarily on its apparently small market share in Summit County, emphasizing that only 0.03% of opioids sold in Summit County between 2006 and 2014 originated from Schein. Motion at 5 (Doc. #: 1878).[2] Schein observes that, using "Plaintiffs' metrics, no Small Distributor had more than 0.57% of the 'flagged orders' in Summit County,"[3] and that it received no suspicious orders at all there. *Id.* at 16. Schein adds that "Plaintiffs do not dispute what the pertinent ARCOS data reflects – between 2006 and 2014, Schein shipped a total of 115 orders of opioids to Summit County; none of these orders exceeded 1500 dosage units; and the resulting sales totaled merely $24,405 over 13 [*sic*] years." Reply at 4 (Doc. #: 2543).[4] Schein further asserts that Plaintiffs' own experts support Schein's argument, observing that some of Plaintiffs' diversion experts "largely ignore the Small Distributors" and Plaintiffs' expert McCann conceded that Schein's ".03% market share for Summit is *de minimis*." Motion at 6 (Doc. #: 1878).

\* \* \*

In response, Plaintiffs cite their own statistics, stressing the quantities of opioids Schein shipped and the harms that resulted, rather than Schein's market share. Plaintiffs present evidence indicating Schein shipped 81,170 doses of opioids into Summit County between 2006-2014. Opp. at 8 (Doc. #: 2201). Plaintiffs also cite evidence concerning one of Schein's largest opioid customers, Dr. Brian Heim, who in 1998 pled guilty to felony drug theft and had his medical

---

[2] Elsewhere, Schein states it sold "just 0.008 percent (in MMEs) of the opioids in Summit." Reply at 4 (Doc. #: 2543). The two statements concerning market share in Summit conflict, but both statistics are small.
[3] By "flagged orders," Schein refers to the metric used by Plaintiffs' expert McCann in his analysis of orders that various defendants ought to have identified as suspicious. Motion at 7 (Doc. #: 1878).
[4] Schein also reports statistics regarding "total sales in Summit," reply at 5 (Doc. #: 2543), but these figures appear to discuss sales of *all* products Schein sells, not just opioids, and are therefore not relevant.

license suspended until 2005. Opp. at 10 (Doc. #: 2201); Exh. 34 (Doc. #: 2307-4). Plaintiffs assert Schein supplied Dr. Heim with 11,500 hydrocodone tablets from August 2011 through June 2012, a period of time during which Schein appears not to have reported any hyrodocodone sales to the Ohio Board of Pharmacy. Def's Reply Exh. 1 (Doc. # 2543-2); Opp. at 10 (Doc. #: 2201). Plaintiffs' evidence indicates Dr. Heim was under indictment in Ohio for drug trafficking and evidence tampering during that period. Motion at 10 (Doc. #: 2201); Abreu Dep. at 373 (Doc. #: 1974-2).

In addition to these statistics and references to the harmful consequences of the diversion of Schein's opioids, Plaintiffs point to expert deposition testimony concerning the poor quality of Schein's suspicious order monitoring systems, including a 2012 letter from Schein to the Ohio Board of Pharmacy in which Schein "admitted to under reporting sales of controlled substances (including a failure to report any sales of hydrocodone) in Ohio from at least 2010 to 2012, in violation of state law." *Id.* at 8-9; Exh. 30 (Doc. #: 2302-29); Exh. 32 (Doc. #: 2307-2). Furthermore, Plaintiffs point to evidence that "between 2009 and July 2019, [Schein] never reported any suspicious orders in Summit County to the DEA." Opp. at 9 (Doc. #: 2201); Rafalski Rep. at 143 (Doc. #: 2000-22). Plaintiffs also cite their own interrogatory response in which they identify fourteen suspicious orders Schein shipped to Dr. Heim. Opp. at 10 (Doc. #: 2201); Exh. 15 at 34-35 (Doc. #: 2306-14). Plaintiffs maintain this evidence is sufficient to create a triable question of fact as to whether Schein's opioid-related activities in Summit County were, in fact, *de minimis. Id.* at 8-11.

* * *

Although Schein couches some of its arguments in terms of but-for and proximate causation and the "substantial interference" element of the public nuisance causes of action, the

4

Court construes this Motion as resting fundamentally on the question of whether Schein's market activities in Summit County were so insignificant as to be unworthy of the court's or a jury's attention and resources in the Track One trial. Accordingly, the Court addresses only the sufficiency of the evidence related to that question.

The Court notes that case law provides no hard and fast mechanical rule for assessing whether a particular input is *de minimis*. In general, that is a determination for the trier of fact. *Brennan v. Arctic Fur Co.*, No. C 1 74-198., 1975 WL 1168 at *1 (S.D. Ohio Jan. 22, 1975) (denying summary judgment because whether an activity is "*de minimis* is a question of fact"); *Rudner v. Abbott Labs., Inc.*, 664 F. Supp. 1100, 1107 (N.D. Ohio 1987) (noting whether sales were *de minimis* is a fact question); *Hanna v. Redlin Rubbish Removal, Inc.*, C.A. NO. 15280, 1992 Ohio App. LEXIS 1773, at *6 (Ct. App. Apr. 1, 1992) (noting that even a "*de minimis*" error may have a "substantial impact."). Nor does the Court look to the deposition testimony of Plaintiffs' experts for the final word on whether Schein's opioid sales were *de minimis*, as Schein would have it do. The Court also observes that even a very small proportional contribution by one of numerous defendants could equate with a rather large and substantial absolute quantity, both in monetary terms and in terms of the consequent harms.

The Court has reviewed all of the evidence related to Schein carefully, construing, as it must, the conflicting evidence in the light most favorable to Plaintiffs, and concludes that the evidence presents contested issue of fact that must be resolved by the trier of fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). In light of the evidence with respect to shipments to Dr. Heim, the Court is unable to conclude that no reasonable jury could find that Schein's market activities were *de minimis*. *Baynes v. Cleland*, 799 F.3d 600, 606 (6th Cir. 2015) ("[I]f a reasonable jury could return a verdict for the nonmoving

party, summary judgment for the moving party is inappropriate.") (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

IV. Conclusion

Accordingly, the Motion is **DENIED**.

**IT IS SO ORDERED.**

        <u>/s/ Dan Aaron Polster *September 3, 2019*</u>
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**