UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 ) |
| | ) Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) |
| | ) Judge Dan Aaron Polster |
| *Track One Cases* | ) |
| | ) **OPINION AND ORDER DENYING** |
| | ) **TEVA AND ACTAVIS GENERIC** |
| | ) **DEFENDANTS' MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |

Before the Court is the Teva and Actavis Generic Defendants' Motion for Summary Judgment (**Doc. #: 1891**).  For the reasons set forth below, the Motion is **DENIED**.

\* \* \* \* \*

Against Teva and Actavis Generic (the "Teva Defendants"[1]), Plaintiffs assert claims based on two factual theories: (1) fraudulent marketing; and (2) failure to maintain effective controls against diversion.  The Teva Defendants seek summary judgment on all claims,[2] asserting

---

[1] "Teva" includes: Cephalon and Teva USA.  "Actavis Generic" includes: Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc.; Warner Chilcott Company, LLC; Actavis South Atlantic LLC; Actavis Elizabeth LLC; Actavis Mid Atlantic LLC; Actavis Totowa LLC; Actavis Kadian LLC; Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City; and Actavis Laboratories FL, Inc. f/k/a Watson Laboratories, Inc.-Florida.  As in the Teva Defendants' Motion, the Court refers to these companies collectively and does not delineate between the conduct of individual companies within this group.  *See* Teva Mem. at 1-17 (Doc. #: 1891-2).

[2] Plaintiffs' remaining claims in this case are: (1) public nuisance based on Ohio statutory law; (2) public nuisance based on Ohio common law, styled "absolute public nuisance;" (3) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (4) violation of the Ohio Corrupt Practices Act; and (5) civil conspiracy under Ohio common law.

Plaintiffs do not have sufficient evidence to show: (1) the Teva Defendants engaged in the allegedly wrongful conduct; or (2) any such conduct caused cognizable harm to Plaintiffs. The Court addresses these arguments below.

**I.    Legal Standard.**

The Court hereby incorporates the legal standards set forth in the Court's Opinion and Order regarding Plaintiffs' Summary Judgment Motions Addressing the Controlled Substances Act, see Doc. #: 2483.

**II.   Analysis.**

    **A.    Fraudulent Marketing.**

        **1.    Evidence to Support Claims.**

The Teva Defendants assert that, as a matter of law, Plaintiffs cannot show they engaged in fraudulent marketing activity within the statute of limitations period, *i.e.* after October of 2012.[3] Plaintiffs respond that, after 2012, the Teva Defendants engaged in indirect fraudulent marketing activities, such as funding front groups, sponsoring a book ghostwritten by the American Pain Foundation, and other promotional endeavors.[4] *See* Pls. Opp. at 14-15 (Doc. #: 2220).

---

[3] Whether the doctrine of equitable tolling applies to the limitations period is the subject of another motion for summary judgment that is currently pending before the Court. *See* Doc. #: 1896. For purposes of deciding the current motion filed by the Teva Defendants, the Court relies on alleged conduct that occurred within the agreed limitations period, *i.e.* after October of 2012.

[4] Plaintiffs contend that, before 2012, the Teva Defendants engaged in direct fraudulent marketing activities, including those for which they have been subject to criminal prosecution and other corrective actions by the Federal Drug Administration ("FDA"). *See, e.g.,* Pls. Opp. at 5-13 (Doc. #: 2220); Pls. Ex. 32 (Doc. #: 2236-16) (2008 guilty plea agreement by

For example, Plaintiffs point to evidence that, in 2015, Teva sponsored a "Pain Matters" program that featured doctors discussing "Evolving Roles, Same Goals: The Changing Landscape of Pain Management." Pls. Ex. 109 at ECF pp. 2-3 (Doc. #: 2257-7). One of the doctors, Jeff Gudin, noted that the "progressive" increase in opioid prescriptions, from 1991 to 2013, was the result of "improved abilities [by doctors] to assess pain," and their "willingness to treat chronic pain with a treatment regimen that includes opioids." *Id.* at ECF p. 7. Gudin recognized this greater volume had also resulted in issues related to misuse, abuse, and diversion, which he said highlighted "the need to develop strategies to prevent prescription opioid misuse and abuse." *Id.* Next, Gudin cited a study which he said found: "*only 3.27 percent* of patients being treated with chronic opioid therapy had a high likelihood of abuse or addiction . . . and a *25 times lower rate* of abuse or addiction in patients who didn't have a prior history of abuse or addiction." *Id.* at ECF p. 8 (emphasis added). Gudin opined that it was "important" to "recognize that the *risk is . . . relatively low* for patients with chronic non-malignant pain who don't have a previous history of addiction." *Id.* (emphasis added).

Plaintiffs' expert, on the other hand, has opined that the rates of opioid misuse following medical use range from *21 to 29 percent*, with opioid addiction risk ranging from eight to 12 percent, *with even higher rates* for individuals who are on high doses of opioids for long periods of time. *See* Keyes Rpt. at 11-16 (Doc. #: 1868-4) (expert report of epidemiologist, Katherine Keyes). In light of conflicting evidence like this, which suggests the rate of addiction is actually much higher than that conveyed by the Teva Defendants' spokesperson,[5] the record presents

---

Cephalon for marketing activities regarding Actiq); Pls. Ex. 82 (Doc. #: 2247-3) (2009 letter informing Cephalon about FDA violations regarding promotional materials for Fentora).

   [5]   The Court rejects the Teva Defendants' argument that Plaintiffs cannot show an agency relationship existed between the Teva Defendants and the third parties they "partially"

3

genuine issues of material fact regarding whether the Teva Defendants engaged in misleading promotional activities after 2012.  Accordingly, summary judgment is not warranted on this ground.

### 2.  Causation of Harm.

The Teva Defendants assert Plaintiffs cannot show their marketing activities caused harm in the *Track One* Counties.  *See* Teva Mem. at 12-15 (Doc. #: 1891-2).  More specifically, the Teva Defendants contend Plaintiffs cannot: (1) identify a single prescriber in Ohio who relied on their allegedly false marketing; or (2) show any such prescription actually caused the harms for which Plaintiffs seek relief.  *See* Teva Mem. at 13-15 (Doc. #: 1891-2).

As discussed more fully in the Court's Order Denying Defendants' Motion for Summary Judgment on Causation (Doc. #: 2561), Plaintiffs have presented sufficient evidence upon which a factfinder could reasonably conclude that Defendants' misleading marketing activities resulted in a substantial increase in the supply of prescription opioids, which, in turn, proximately caused harm to Plaintiffs.  *See* Order at 3-6 (Doc. #: 2561).  This same analysis applies to the Teva Defendants.[6]  *See id.; see also* Doc. #: 2421-3 (Teva's marketing plan, noting consultant meetings and medical education programs proved incredibly effective in driving prescription growth).  In

---

funded.  Teva Mem. at 11-12 (Doc. #1891-2).  In the "Pain Matters" presentation, Gudin told the audience: "this program was developed by Teva Pharmaceuticals, . . . the three of us are presenting on behalf of Teva, and . . . we've been compensated by Teva to give this presentation."  Pls. Ex. 109 at ECF pp. 3 (Doc. #: 2257-7).  Clearly, material fact issues exist in this regard.

[6]  The Court rejects the Teva Defendants' assertion that, as a matter of law, a prescriber could not have been misled because he or she was required to pass an FDA-approved test on the safety risks and efficacy of Actiq and/or Fentora.  *See* Teva Mem. at 13 (Doc. #: 1891-2).  Whether doctors were misled by the allegedly misleading marketing materials is a question of fact for the jury.

other words, construing the evidence in a light most favorable to Plaintiffs, the record supports an inference that the Teva Defendants' alleged promotional misconduct was a substantial factor in producing the harm allegedly suffered by Plaintiffs. *See* Order at 5-7 (Doc. #: 2561) (citing *Pang v. Minch*, 53 Ohio St. 3d 186, 559 N.E.2d 1313, 1324 (Ohio 1990) and *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 758 (7th Cir. 2011)). Accordingly, the Teva Defendants are not entitled to summary judgment on this ground.

### B. Failure to Maintain Effective Controls.

The Teva Defendants assert Plaintiffs cannot show: (1) they failed to maintain effective controls against diversion; or (2) any such failure proximately caused harm to Plaintiffs. *See* Teva Mem. at 15-17 (Doc. #: 1891-2). As noted in the Court's previous order, Plaintiffs have produced evidence upon which a jury could reasonably conclude: (1) each Manufacturer, including these Defendants, failed to maintain effective controls against diversion; and (2) these failures were a substantial factor in producing the alleged harm suffered by Plaintiffs. *See* Order at 8 (Doc. #: 2561); *see also* Rafalski Rpt. at ECF pp. 178-185 (Doc. #: 1999-21) (detailing deficiencies in Teva's suspicious order monitoring and due diligence procedures); Pls. Opp. at 17-18 (Doc. #: 2220) (same). For the same reasons, the Teva Defendants are not entitled to summary judgment on this ground.

5

## III. Conclusion.

For the reasons stated above, the Court **DENIES** the Teva and Actavis Generic Defendants' Motion for Summary Judgment (**Doc. #: 1891**).

**IT IS SO ORDERED.**

                                       /s/ Dan Aaron Polster  *Sept. 3, 2019*
                                       **DAN AARON POLSTER**
                                       **UNITED STATES DISTRICT JUDGE**