# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 ) |
| | ) Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) |
| | ) Judge Dan Aaron Polster |
| *Track One Cases* | ) |
| | ) **OPINION AND ORDER** |
| | ) |
| | ) |

Before the Court is the Motion of Plaintiffs Cuyahoga and Summit Counties for Partial Summary Adjudication of their Equitable Claims for Abatement of an Absolute Public Nuisance (Doc. #: 1890). Upon careful consideration of the parties' respective arguments[1] and for the reasons stated below, the motion is **DENIED.**

\* \* \* \* \*

Plaintiffs move for an order ruling as a matter of law that: (i) the opioid crisis constitutes a public nuisance, an essential element of their claim of absolute public nuisance; and (ii) upon a finding of nuisance liability, Defendants will be jointly and severally responsible for the equitable abatement of the alleged public nuisance, and may not rely on their affirmative defenses to the contrary.

---

[1] Motion of Plaintiffs Cuyahoga and Summit Counties for Partial Summary Adjudication of their Equitable Claims for Abatement of An Absolute Public Nuisance (Doc. #: 1890); Defendants' Memorandum in Opposition to Track One Plaintiffs' Motion for Partial Summary Adjudication of their Equitable Claims for Abatement of an Absolute Public Nuisance (Doc. #: 2163); Pharmacy Defendants" Response to Plaintiffs' Partial Motion for Summary Judgment on Abatement of an Absolute Public Nuisance (Doc. #: 2304); and Reply in Support of Motion of Plaintiffs Cuyahoga and Summit Counties for Partial Summary Adjudication of their Equitable Claims for Abatement of an Absolute Public Nuisance (Doc. #: 2540).

**I.     The Existence of a Public Nuisance.**

Plaintiffs assert the "opioid epidemic constitutes an ongoing public nuisance under Ohio law" and that no reasonable fact-finder could determine otherwise.  They ask the Court to award partial summary judgment declaring that the opioid crisis significantly interferes with public health and therefore establishes the existence of a nuisance.[2]  (Doc. #: 1890 at 2-4, 22).

Under Ohio law, "it is the province of the court to define a nuisance and the province of the [finder of fact] to determine whether the circumstances of the particular case come within the definition of a nuisance."  *City of Hamilton v. Dilley*, 165 N.E. 713, 714 (Ohio 1929); *City of Toledo v. Gorney*, 1988 WL 128304, at *3 (Ohio Ct. App. Dec. 2, 1988) (same).  Ohio follows the Restatement of the Law (Second) Torts, which broadly defines public nuisance as "an unreasonable interference with a right common to the general public."  *Cincinnati v. Beretta U.S.A.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (quoting Restatement § 821B(1)).  The Ohio Supreme Court has explained:

> "Unreasonable interference" *includes those acts* that significantly interfere with public health, safety, peace, comfort, or convenience, conduct that is contrary to a statute, ordinance, or regulation, or conduct that is of a continuing nature or one which has produced a permanent or long-lasting effect upon the public right, an effect of which the actor is aware or should be aware. Id., Section 821B(2).

*Id.* (emphasis added).  To prove an absolute public nuisance cause of action, evidence must establish: (1) intentional or unlawful conduct or omission by the defendant; (2) that unreasonably interferes with a right common to the general public; and (3) a causal relationship between a

---

[2] Plaintiffs explain that, while their motion is confined to the issue of significant interference with public health, they expressly reserve the right to assert at trial other potential bases for public nuisance, *e.g.* conduct that interferes with public safety, peace, and comfort, unlawful conduct, or conduct of a continuing nature or that produces a permanent or long lasting effect that defendants knew or should have known significantly affected a public right. (Doc. #: 1890 at n.1).

2

defendant's conduct and a plaintiff's injury. *See, e.g., id.* at 1141- 1144; *City of Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *3 -*4 (Ohio Ct. App. March 21, 2013).

To support their position, Plaintiffs cite statistics and testimony pertaining to the types and extent of harm attributable to opioid-related problems in each of the Counties (Doc. 1890 at 4-14 and referenced exhibits). Plaintiffs contend that statements by certain Defendants acknowledging the existence of an "opioid epidemic" and "public health crisis," demonstrate the absence of any dispute as to whether the burden to prove the existence of a nuisance is satisfied. (*Id.* at 14-22 and referenced exhibits).

Responding, Defendants maintain the existence of an opioid crisis in and of itself does not constitute a public nuisance because the analysis must also consider the conduct allegedly creating the nuisance. Specifically, they assert that "the existence of an 'unreasonable interference' requires an assessment of the effect of the alleged wrongful conduct;" therefore, the first and second elements of the claim should be determined together. (Doc. #: 2163 at 4-5; Doc. #: 2304 at 2).[3] Plaintiffs reply that "a nuisance is a harmful condition – not a defendant's conduct." (Doc. #: 2540 at 2).

Plaintiffs fail to persuade the Court that separate adjudication of the closely connected harm and conduct elements is either useful or advisable. The interrelated nature of these elements is evident in the Restatement's use of the phrase "unreasonable interference" to define both cognizable harm and actionable conduct. *See* Restatement § 821B(1)-(2); *Cincinnati v. Beretta,* 768 N.E.2d at 1142. The Court finds the two elements to be intertwined and not independently

---

[3] As additional grounds for denying Plaintiffs' motion, Defendants argue that the opioid crisis implicates private individual rights and not a public right to public health. (*See* Doc. #: 2163 at 1-2). This argument ignores the Restatement's express inclusion of "significant interference with the public health" as one of the "(c)ircumstances that may sustain a holding that an interference with a public right is unreasonable." Restatement 821B(2)(a); *see also* Opinion and Order (Blackfeet Tribe and Muscogee (Creek) Nation) (Doc. #: 1680 at 18-19) adopting Report and Recommendation (Doc #: 1499 at 60-61, Doc. #: 1500 at 28-30).

3

determinable as a matter of law in these actions.  Whether the opioid crisis constitutes a public nuisance is a question that must await full airing of the facts at trial.

Accordingly, Plaintiffs motion is denied to the extent it seeks summary adjudication of the existence of a public nuisance.

## II. Joint and Several Liability.

Plaintiffs move to strike Defendants' affirmative defenses that assert they are not jointly and severally liable for abatement of the alleged public nuisance.  Plaintiffs ask the Court to rule now that any Defendant found responsible for creating or maintaining the public nuisance will be held jointly and severally liable for its abatement.  Plaintiffs contend this ruling regarding liability for the equitable relief they seek is not barred by Ohio's apportionment statute and is available under Ohio common law. (Doc. #: 1890 at 22-26; Doc. #: 2540 at 6-10).

### A. Ohio Statutory Law.

Plaintiffs assert that joint and several liability for their public nuisance claims is not barred by the Ohio apportionment statute, which provides,

> In a tort action . . . in which the trier of fact determines that more than fifty percent of the tortious conduct is attributable to one defendant, that defendant shall be jointly and severally liable in tort for all compensatory damages that represent economic loss.
>
> If division (A)(1) of this section is applicable, each defendant . . . to whom fifty percent or less of the tortious conduct is attributable shall be liable to the plaintiff only for that defendant's proportionate share of the compensatory damages that represent economic loss.

Ohio Rev. Code ("O.R.C.") § 2307.22(a)(1)-(2).  Plaintiffs argue the statute by its terms applies only to tort claims seeking "compensatory damages that represent economic loss," and is therefore inapplicable to their equitable abatement claims.  (Doc. #: 1890 at 24-25).

4

Defendants respond that the statute does bar joint and several liability. Defendants note that nuisance actions *are* tort claims. (Doc. 2163 at 9-10). However, the fact that "nuisance" is sometimes characterized as a variety of "tort" does not change the fact that an equitable claim to abate a nuisance is not a tort claim seeking compensatory damages. Defendants also argue that what Plaintiffs' label as a claim for "abatement costs" is in fact a "claim for damages." (*See* Doc. #: 2540 at 8-9). This point is not well-taken for the reasons explained in the Court's recent Order denying Defendants' motion to exclude Plaintiffs' abatement experts.[4] Unlike tort damages that compensate an injured party for past harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance.

Nor does Ohio's statutory definition of "economic loss" bar a judgment of joint and several liability for abating a nuisance.[5] The statutory definition encompasses compensation for future medical and rehabilitation expenses of an injured person who is the subject of a tort. (Doc. #: 2163 at 9-12; Doc. #: 2304 at 4-6). Defendants note that certain components of the abatement relief Plaintiffs seek relate to medical care and argue that, therefore, it is really "economic loss." (Doc. #: 2163 at 11). But the fact that abatement relief may encompass medical care does not alter the fact that the only recovery limited by the apportionment statute is "compensatory damages," and that is not what Plaintiffs are seeking.

---

[4] *See* Order dated August 26, 2019 denying Defendants' Motion to Exclude Expert Testimony Purporting to Relate to Abatement Costs and Effects. (Doc. #: 2519 at 2-3). *See also Hamilton v. Ebbing,* 2012 WL 1825268, at *4 (Ohio Ct. App. May 12, 2012) ("Both the United States Supreme Court and the Supreme Court of Ohio have found that an abatement action is not a common law action, but rather a suit in equity." (citing *Cameron v. United States*, 148 U.S. 301, 304 (1893) and *State ex rel. Miller v. Anthony*, 647 N.E.2d 1368 (Ohio 1995)); *Veda, Inc. v. U.S. Dep't of the Air Force*, 111 F.3d 37, 40 (6th Cir. 1997) ("The fact that a judicial remedy may require one party to pay money to another is not sufficient reason to characterize the relief as 'money damages.").

[5] The statute defines "economic loss" to include "[a]ll expenditures for medical care or treatment, rehabilitation services, or other care, treatment, services, products, or accommodations incurred as a result of an injury, death, or loss" including "expenditures for those purposes that, in the determination of the trier of fact, will be incurred in the future because of the injury, whether paid by the injured person or by another person on behalf of the injured person." Ohio Rev. Code Ann. § 2307.011(C)(2).

Accordingly, the Court finds that O.R.C. § 2703.22 does not bar joint and several liability for abatement of a nuisance. Put differently, there is nothing in this statute that precludes application of the doctrine of joint and several liablity on Defendants. As discussed below, however, neither does the statute bar Defendants from arguing at trial that the fault of any Defendants found liable for creating the nuisance should be determined on a proportional basis.

**B.     Ohio Common Law.**

Plaintiffs assert that under Ohio common law, where a nuisance is caused by the conduct of multiple parties acting either independently or in concert, all are jointly and severally liable for abating the nuisance. (Doc. #: 1890 at 22-23; Doc. #: 2540 at 9). But the authority on which Plaintiffs rely does not support a conclusion that nuisance liability is *necessarily* joint and several as a matter of law. Plaintiffs cite only weak *dicta* from a decision distinguishing the damages action at issue from equitable suits, where culpable defendants are "generally" jointly liable for abating the nuisance. *See City of Columbus v. Rohr,* 1907 WL 572, *2 (Ohio 1907). *State ex rel. Montgomery v. Portage Landfill & Dev. Co.* is similarly unpersuasive. *See* 1999 WL 454623, at *3, *6 (Ohio Ct. App. June 30, 1999) (affirming trial court's finding that there was no right to a jury trial of equitable claims, therefore affirming the *unappealed* judgment that held defendants jointly and severally liable).

Defendants contend that an apportionment of harm at this stage of the litigation is premature. (Doc. #: 2163 at 12-14; Doc#: 2304 at 5-6). The Court agrees that any apportionment decision depends on factual issues to be determined at trial, including: (1) whether the alleged wrongful conduct by each Defendant was a substantial factor in creating the claimed nuisance; and, (2) if so, whether the resulting harm can be ascertained on a proportional basis or is indivisible. *See Pang v. Minch,* 559 N.E.2d 1313, 1323-1324 (Ohio 1990) (determining whether harm is

6

capable of apportionment is "judicial function" but "it would be error to conclude, prior to trial, that such apportionment was possible").

The framework articulated in *Pang v. Minch,* cited by Defendants, provides a useful procedural guide:

> where a plaintiff suffers a single injury as a result of the tortious acts of multiple defendants, the burden of proof is upon the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm….Once this burden has been met, a prima facie evidentiary foundation has been established supporting joint and several judgments against the defendants. Thereafter, the burden of persuasion shifts to the defendants to demonstrate that the harm produced by their separate tortious acts is capable of apportionment.

559 N.E.2d 1313, 1323-1324 (Ohio 1990); *see also* Restatement § 433A, cmt.i ("Where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm.").[6]

Because the material questions of fact in this litigation must be resolved at trial prior to any apportionment ruling, the Court (i) denies Plaintiffs' motion to the extent it seeks a ruling that public nuisance liability is joint and several as a matter of law, and (ii) denies Plaintiffs' request to strike Defendants' affirmative defenses to such liability.

---

[6] Caselaw cited by Plaintiffs accords with this reasoning. *See People v. ConAgra Grocery Prod. Co.*, 227 Cal. Rptr. 3d 499, 557 (Ct. App. 2017), *cert. denied* 139 S. Ct. 377 (2018) ("Since defendants failed to show that the public nuisance was divisible, we uphold the trial court's imposition of joint and several liability for the nuisance created by defendants' conduct."); *Schindler v. Standard Oil Co.,* 143 N.E.2d 133, 134 (Ohio 1957) (where the acts of multiple persons combine to create a public nuisance and it is "impossible to measure or ascertain the amount of damage created by any one of the persons, such persons, as jointly and severally liable, may be joined as defendants"). (Doc. #: 1890 at 23).

### III. Conclusion.

Based on the foregoing, the Motion of Plaintiffs Cuyahoga and Summit Counties for Partial Summary Adjudication of their Equitable Claims for Abatement of an Absolute Public Nuisance, (Doc. #: 1890), is **DENIED.**

       **IT IS SO ORDERED.**

                            **/s/ Dan Aaron Polster** *September 4, 2019*
                            **DAN AARON POLSTER**
                            **UNITED STATES DISTRICT JUDGE**