UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Track One Cases* | MDL 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster<br><br>**OPINION AND ORDER DENYING MANUFACTURER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' PUBLIC NUISANCE CLAIMS** |

Before the Court is the Manufacturer Defendants' Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims **(Doc. #: 1893)**. Upon careful consideration of the parties' respective arguments[1] and for the reasons stated below, the motion is **DENIED**.

\* \* \* \* \*

The Manufacturer Defendants ("Manufacturers") move the Court for an order dismissing Plaintiffs' common law absolute public nuisance and statutory public nuisance claims, as a matter of law, based on failure to define sufficiently the alleged nuisance, and an absence of evidence supporting essential elements of the claims.

**I. Sufficiency of the nuisance definition.**

Manufacturers contend that the nuisance allegedly attributable to their conduct

---

[1] Manufacturer Defendants' Memorandum in Support of Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims (Doc. #: 1893-1); Plaintiffs' Memorandum in Opposition to Manufacturer Defendants' Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims (Doc. #: 2170); Manufacturer Defendants' Reply Brief in Support of Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims (Doc. #: 2445).

encompasses adverse conditions so unspecified and broad that they are deprived of a fair and "reasonable opportunity to know the claims of the opposing party." (Doc. #: 1893-1 at 2-4) (citing *In re Paradyne Corp.,* 803 F.2d 604, 612 (11th Cir. 1986)).[2] This argument is amply contradicted, however, by the extensive specific details regarding the conditions comprising the multifaceted nuisance alleged in Plaintiffs' complaints. And these allegations are now further developed through discovery, as well as motion practice, during which Defendants vigorously challenged each claim. Plaintiffs contend correctly that Manufacturers' argument is irreconcilable with the fact that the public nuisance claims withstood Rule 12(b)(6) dismissal, where the Court was required to determine whether the complaint "contain[ed] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face," citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). (Doc. #: 2170-1 at 1-2).[3]

The Ohio Supreme Court has expressly recognized the breadth of the absolute public nuisance cause of action, finding that "under the Restatement's broad definition, a public-nuisance action can be maintained" where the facts establish that the "design, manufacturing, marketing or sale of [a] product unreasonably interferes with a right common to the general public." *Cincinnati v. Beretta, U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002). Plaintiffs' absolute public nuisance claims fit within that framework. Accordingly, dismissal of the Plaintiffs' public nuisance causes

---

[2] *In re Paradyne Corp.*, concerning a mandamus petition, concluded that excluding criminal defendants from hearings and information concerning disqualification of their counsel would violate 6th amendment rights.

[3] The Court denied motions to dismiss substantially similar public nuisance claims filed by the Muscogee (Creek) Nation (Doc. #: 713), and the Blackfeet Tribe of the Blackfeet Indian Reservation (Doc. #: 892). The Court's Order on motions to dismiss those complaints ("Muscogee and Blackfeet Order") is Doc. #: 1680, and the Report and Recommendations it adopted (except for recommendations as to negligence per se) are Doc. #: 1499 (Muscogee) and Doc. #: 1500 (Blackfeet).

of action because the Manufacturers find them "breathtakingly broad" is unwarranted.[4]

## II. Sufficiency of evidence supporting essential elements.

### A. Violation of a public right.

Manufacturers contend that Plaintiffs fail to identify any violation of a public right.[5] (Doc. #: 1893-1 at 407; Doc. #: 2445 at 7-8). The Court has previously rejected arguments that: (i) Plaintiffs' claims rely on an aggregation of individual rights, as opposed to rights commonly held by the public; and (ii) none of the allegedly interfered-with rights constitute public rights. (*See* Doc. #: 1680 at 18-19 (Muscogee and Blackfeet Order)) adopting (Doc. #: 1499 at 58-61 (Muscogee) and Doc. #: 1500 at 28-34 (Blackfeet)). There is no need to reiterate that analysis here.

Plaintiffs introduce fact and expert evidence demonstrating material factual issues regarding interference with public health and public safety interests. (Doc. #: 1890 at 4-14).[6] *See Cincinnati v. Beretta,* 768 N.E.2d at 1142 ("A public nuisance is an unreasonable interference with a right common to the general public," and unreasonable interference includes acts that

---

[4] Nor does the caselaw cited by Manufacturers persuade a different conclusion. *See Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *3 (dismissing nuisance claim for failure to plead a causal relationship between the alleged conduct and harm, stating, "the tort of public nuisance only reaches so far. Ohio remains a notice pleading state, but the complaint must still advance a rational basis for holding a defendant liable"); *In re Lead Paint Litig.*, 924 A.2d 484, 503, 505 (N.J. 2007) (finding nuisance causes at issue were cognizable only as product liability claims and remarking, "[a]lthough there may be room, in other circumstances, for an expanded definition of the tort of public nuisance, we find no basis in this record to conclude that these plaintiffs have stated such a claim"); *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 650 (D.C. 2005) ("In keeping with our own decisions and others we have found persuasive, we decline to relax the common-law limitations of duty, foreseeability, and direct causation so as to recognize the broad claim of public nuisance the District has alleged."). All of these cases are distinguishable.

[5] Because numerous issues raised in these motions have been determined by other decisions in this litigation, the Court incorporates the following: Opinion and Order Regarding Defendants' Summary Judgment Motions on Causation (Doc. #: 2561 ("Causation Order")); Order Regarding Plaintiffs' Summary Judgment Motions Addressing the Controlled Substances Acts (Doc. #: 2483 ("CSA Order"); and the Muscogee and Blackfeet Order (Doc. #: 1680), and the Reports and Recommendations it adopted in relevant part (Doc. #: 1499 (Muscogee) and Doc. #: 1500 (Blackfeet)).

[6] Plaintiffs refer to evidence recited in the memorandum supporting their Motion for Partial Summary Adjudication of their Equitable Claims for Abatement of An Absolute Public Nuisance. (Doc. #: 1890).

"significantly interfere with public health, safety, peace, comfort or convenience") (internal quotation marks and citations omitted).  Plaintiffs cite statistics showing an unprecedented opioid-related increase in, for example, overdose deaths over the last decade (Report of Katherine Keyes at 23-24, Exh. 104; Doc. #: 1890, Exh. 5); instances of neonatal abstinence syndrome (Keyes Rpt. at 23-24; Report of Scott Wexelblatt at 5; Doc. #: 1890, Exh. 6); overdose hospital admissions and emergency room visits (Doc. #: 1890, Exhs. 8, 45); crisis center detoxifications (*Id.* Exh. 8); and hepatitis diagnoses (*Id.* Exh. 9).  They also identify evidence they contend will demonstrate that the Manufacturers' conduct interfered with the right to public safety.  For example, Plaintiffs point to: a nalaxone administration rate in Summit County that was among the highest in Ohio (Doc. #: 1890, Exhs. 12-13, 55-57); a growing need for foster care placements for children who lost parents to overdoses or incarceration (*Id.*, Exhs. 14-19); and increases in drug-related arrests and prosecutions.  (*Id.* at Exhs. 14, 57-58).

A factfinder could reasonably conclude that this evidence demonstrates an interference with public health and public safety rights.

**B. Evidence of proximate cause.**

The Manufacturers contend Plaintiffs are unable to establish, as a matter of law, that the Manufacturers conduct proximately caused the claimed nuisance.  Manufacturers first assert there is no evidence demonstrating they exercised any control over illegal drugs.  As the Court previously observed, however, that argument is premised on a misconception of Plaintiffs' theory of nuisance liability.  (Doc. #: 1680 at 19-20 (Muscogee and Blackfeet Order) adopting the analyses set forth in Reports and Recommendation, Doc. #: 1499 at 57 (Muscogee) and Report and Recommendation, Doc. #: 1500 at 31 (Blackfeet)).  Plaintiffs do not allege the claimed nuisance is the consequence of use or misuse of the opioid medication itself, but rather is the result

of Defendants' business conduct: "Defendants had control over the instrumentality of the nuisance by virtue of their control over their own opioid marketing, distribution, or dispensing practices." (*Id.*).

The Manufacturers also contend that an absence of evidence linking their alleged misconduct to harms Plaintiff seeks to remedy defeats the absolute nuisance claims.  (Doc. #: 1893-1 at 8-9; Doc. #: 2445 at 1-6).  Plaintiffs respond that evidence to the contrary identified in their opposition to Defendants Motion for Summary Judgment on Proof of Causation, (Doc. #: 2204), raises genuine issues of material fact regarding causation. (Doc. #: 7120 at 5-7).  Ruling on that Motion, the Court concluded summary judgment was unwarranted because Plaintiffs presented fact and expert evidence showing the injuries alleged are of the sort that would be an expected consequence of Manufacturers' alleged misleading marketing activities and failures to maintain anti-diversion controls.  (*Id*).  (*See* Doc. #: 2561 at 2-8 (Causation Order)).  That conclusion applies here for the same reasons.

### C. Evidence of intentional and unlawful conduct.

Manufacturers also insist that the element of intent fails for lack of evidentiary support. (Doc. # 1893-1 at 10-11; Doc. #: 2445 at 6-7).  The parties agree that "Intentional, in this context [of absolute public nuisance], means not that a wrong or the existence of a nuisance was intended but that the creator of it intended to bring about the conditions which are in fact found to be a nuisance." *See Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859 at 863 *(*N.D. Ohio 2017) (citing *Angerman v. Burick*, 2003 WL 1524505, at *2 (Ohio Ct. App. March 26, 2003).  (Doc. #: 1893-1 at 10; Doc. #: 2170 at 6-7).  Stated otherwise,  "Where the harm and resulting damage are the necessary consequences of just what the defendant is doing, or is incident to the activity itself or the manner in which it is conducted, *** the rule of absolute liability applies." *Taylor v. City of Cincinnati*, 55 N.E.2d 724, 727 (Ohio 1944).

Plaintiffs assert the testimonial evidence of Dr. Russell Portenoy, one of the key opinion leaders funded by the Manufacturers, demonstrates the Manufacturers intentionally misrepresented the risks attending opioid use for the purpose of increasing prescription opioid sales.  For example, Dr. Portenoy states that his work "at various times emphasized the potential benefits (that I believe could be achieved by a subgroup of patients), and deemphasized the risks that are always present when opioids are administered."  He further stated that drug companies used his work to support a "strongly positive message about opioids" that "lacked context and warning," and the ultimate "effect was to promote opioid therapy to prescribers." (Doc. #: 2170-1 at ¶ 41 (Declaration of Russel K. Portenoy)).  Other evidence of intent includes testimony and documents indicating Purdue falsely represented OxyContin as weaker than morphine (even though it was twice as potent) for the purpose of neutralizing any impression that the drug was dangerous and should be reserved only for severe pain; the alleged purpose of this false representation was to avoid "a negative effect on [sales to] the much larger non-cancer pain market."  (*See* Doc. #: 2170-2 (Deposition of Richard Sackler) at 394:3-396:20, 399:14-406:17, 411:13-413:13).  Plaintiffs also point to training materials for sales representatives allegedly showing deliberate misrepresentation of the risks attending opioid use, particularly the risk of addiction. (Doc. 2170 at 8-11).  The Court agrees with Plaintiffs that this evidence creates material issues of fact regarding Manufacturers' intent.

As to the intent to bring about the conditions creating the alleged nuisance, the Court recently determined that factfinders could reasonably infer that Manufacturers' fraudulent marketing and failures to maintain anti-diversion controls were substantial factors in producing the alleged harm suffered by Plaintiffs.  The Court concluded: "Because Plaintiffs have presented evidence that shows they have suffered the sort of injury that would be an expected consequence of the alleged wrongful conduct, Plaintiffs have made a sufficient showing to withstand summary judgement" on the causation

issues.  (Doc. #: 2561 at 6, 8 (Causation Order)).  The same conclusion applies here.[7]

Plaintiffs also rely on unlawful conduct to support their absolute nuisance claim, and argue that evidence of federal Controlled Substances Act violations by the Manufacturers is undisputed.  They incorporate the arguments and evidence asserted in their Motion seeking partial summary adjudication based on those violations.  (Doc. #: 2107 at 12, referring to Doc. #: 2483 at 13014, 26-68).  The Court recently ruled on that motion, finding the record "replete with disputes of material fact as to whether each Defendant complied with its obligations under the CSA, which preclude summary judgment."  (Doc. *#:* 2483 at 19-27 (CSA Order)).

The evidence Plaintiffs introduce is sufficient to raise material issues of disputed facts regarding each essential element of their nuisance claims and therefore summary judgment is unwarranted.

### III. Statutory public nuisance

Manufacturers contend Plaintiffs' statutory nuisance claims are defeated by an absence of evidence demonstrating actionable conduct.  (Doc. #: 1893-1 at 11-12).  Ohio Rev. Code ("O.R.C.") 4729.35.  For nuisance liability to attach, the statute requires a plaintiff to demonstrate "[t]he violation by a pharmacist or other person of any laws of Ohio or the United States of America . . . or of any rule of the board of pharmacy controlling the distribution of a drug of abuse" . . . .[8]  Defendants maintain Plaintiffs have not identified specific conduct constituting the predicate acts for a statutory nuisance claim, but rather rely only on "general assertions that Manufacturer Defendants turned a blind eye to suspicious order monitoring requirements."  (Doc. #: 1893-1 at

---

[7] Defendants also argue Plaintiffs cannot prove they are strictly liable for the alleged wrongful conduct. Plaintiffs, however, do not allege strict liability.

[8] Opioids are a "drug of abuse" under O.R.C. §§ 3719.011(A), 3719.01(C).

11-12; Doc. #: 2445 at 8).  Plaintiffs counter that their complaints specifically allege violations of, *inter alia,* the federal Controlled Substance Act (Doc. #: 1466 at ⁋ 985 and Doc. #: 1631 at ⁋ 1026), and that this issue was already addressed by the parties in motion practice and the Report and Recommendation on those motions (Doc. #: 2701 at 13 referring to Doc. #: 1025 at 70-72).

As stated above, the Court recently determined that the record demonstrates material issues of fact as to whether each Defendant complied with CSA obligations, and that conclusion applies here.  (*See* Doc. #: 2483 at 19-27 (CSA Order)).  Manufacturers' contention that no violation supporting the statutory nuisance claim has been identified in this litigation is without merit and does not warrant summary judgment.

**IV.  Conclusion.**

Based on the foregoing, the Manufacturer Defendants' Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims (Doc. #: 1893), is **DENIED**.

　　**IT IS SO ORDERED.**


　　　　　　　　　　　　　　　　　　　　　　　　　 **/s/ Dan Aaron Polster  *September 9, 2019***
　　　　　　　　　　　　　　　　　　　　　　　　　**DAN AARON POLSTER**
　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**