# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Cases* | MDL 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster<br><br>**OPINION AND ORDER REGARDING DEFENDANTS' SUMMARY JUDGMENT MOTIONS ON RICO AND OCPA** |

Before the Court are two related motions for summary judgment filed by Defendants regarding Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act 18 U.S.C. § 1961 *et seq.* and Ohio's Corrupt Practices Act (OCPA),[1] Ohio Rev. Code § 2923.31 *et seq.*.  They are: (1) Distributors' Motion for summary judgment on Plaintiffs' RICO and OCPA Claims, (**Doc. #: 1921**); and (2) Manufacturers' Motion for summary judgment on Plaintiffs' RICO, OCPA, and Conspiracy Claims. (**Doc. #: 1930**). Only the RICO and OCPA portions of these motions are addressed in this opinion and order.[2] Plaintiffs filed an omnibus response (Doc. #: 2182) and Manufacturers and Distributors each filed a Reply (Doc. ##: 2533 and 2547, respectively).  Plaintiffs', with leave of the Court, filed a Sur-Reply (Doc. #: 2500). For the reasons set forth below, Defendants' summary judgment motions are **DENIED**.

---

[1] "Ohio's RICO statute, O.R.C. § 2923.31 et seq., is patterned after the federal RICO statute. Thus, courts "have found that the elements for an [Ohio RICO] violation are the same as those for a [federal] RICO claim*." Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 651 (N.D. Ohio 2012) (citing *Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783, 811 (S.D.Ohio 2006)).

[2] The Manufacturers' arguments regarding Civil Conspiracy are addressed in a separate opinion. (Doc. #: 2562).

## I.

The Court hereby incorporates the legal standards set forth in the Court's Opinion and Order regarding Plaintiffs' Summary Judgment Motions Addressing the Controlled Substances Act, *see* Doc. #: 2483.

## II.

Under the RICO statute, it is "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C.A. § 1962. Defendants articulate two principal arguments for summary judgment on Plaintiffs' RICO and OCPA claims: (1) no evidence of any enterprise and (2) no evidence of causation. Distributors also advance a threshold argument regarding their alleged racketeering activity, which the Court addresses first below.

The RICO statute expressly lists those violations that constitute predicate acts of racketeering activity. *See* 18 U.S.C.A. § 1961(1). Distributors assert, in a footnote,[3] that the Magistrate Judge's Report & Recommendation—finding that a violation of 21 U.S.C. § 843(A)(4)(a) can constitute a predicate act—is "wrong as a matter of law." Dist. MSJ on RICO at 16 n.14 (Doc. #: 1921-1). No party objected to the Magistrate's finding and it was subsequently adopted by the Court. *See* Dec. 19, 2018 Order re MTD Summit (Doc. #: 1203). Although the Magistrate Judge expressed that "whether § 842, § 843, or neither was violated is ultimately an issue of fact that cannot be resolved on a motion to dismiss," Summit R&R at 46-47 (Doc. #: 1025), Distributors here do not meaningfully develop any factual bases that convince the Court either to conclude as a matter of law that Distributors did not violate § 843, or to revisit its

---

[3] It appears that Distributors only raise this argument in a footnote as an aside to their primary argument that, to the extent their alleged failure to report suspicious orders constitutes a racketeering activity, it did not cause Plaintiffs' injuries. The broader causation elements of Distributors' argument are addressed further below.

2

prior legal conclusion (that such a violation, if committed, can constitute racketeering activity). In fact, Distributors acknowledge they drafted their summary judgment motion based on the assumption that "the failure to report a suspicious order *can* constitute a predicate act of racketeering for purposes of RICO and the OCPA." Dist. MSJ on RICO at 16 n.14 (Doc. #: 1921-1) (emphasis added). Thus, the Court reaffirms its legal conclusion that a violation of 21 U.S.C. § 843(A)(4)(a) can constitute a predicate act under 18 U.S.C. § 1961(1)(D); and the Court further concludes that, at a minimum, Distributors have failed to demonstrate there is no genuine dispute of material fact regarding whether they violated § 842, § 843.

Distributors also imply for the first time in their reply brief that, because Plaintiffs argue in opposition to summary judgment that "Distributor Defendants flatly failed in their obligation *not to ship* suspicious orders" pursuant to 21 U.S.C. § 823(b), that Plaintiffs abandoned their prior assertions of various categories of racketeering activity including mail fraud, wire fraud, and *failure to report* suspicious orders (as a potential violation of § 843). Pls. Opp. Resp. re RICO & Civ. Con. at 114 (Doc. #: 2182) (emphasis in original). As stated above in footnote 3, Distributors' arguments regarding the viability of Plaintiffs' assertions of predicate acts was made in the broader context of their proximate causation arguments. Thus, Plaintiffs response, which was intended to address proximate cause and not predicate acts, was appropriate under the circumstances. The Court does not construe Plaintiffs' opposition response as disclaiming any assertion of predicate acts previously made and argued.

**A. The Existence of An Enterprise**

"[A]n association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. United States*, 556 U.S. 938, 946 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). To satisfy the enterprise requirement, "an association-in-fact enterprise must have at least three structural features: a

3

purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* The concept of an enterprise is intended to be broad and "[s]uch a group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods." Summit R&R at 36 (Doc. #: 1025) (citing *Boyle*, 556 U.S. at 944). The Court has previously observed that "[a]n enterprise includes any group of individuals associated together for a common purpose of engaging in a course of unlawful conduct." *Robins*, 838 F. Supp. 2d at 651.

Of course, just because an enterprise's common purpose may *include* unlawful conduct does not mean the enterprise's common purpose must be unlawful. In fact, both the Supreme Court and the Sixth Circuit have made clear that the purpose of the enterprise need only be common to its members, and "must be separate from the pattern of racketeering activity in which it engages." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993) (citing *Turkette*, 452 U.S. at 583). That is, if a group of individuals associate together for the common purpose of committing a series of unlawful acts (and those unlawful acts are also RICO predicate acts), the common purpose is not separate from the pattern of racketeering activity, and there is no RICO violation (there is likely just a conspiracy to commit a crime). If, however, the series of unlawful acts is not the ultimate goal of the group of individuals, but instead merely an unlawful method to achieve that goal, then the enterprise can be described as "separate from the pattern of racketeering activity in which it engages," and may constitute a RICO violation. *Id.* There is no requirement, however, that the ultimate goal also be unlawful.

Defendants assert there is no evidence of coordination sufficient to form an association in fact. The Court has already concluded, however, that Plaintiffs have produced sufficient evidence for a reasonable jury to conclude that all Defendants, which includes RICO Marketing Enterprise

Defendants and RICO Supply Chain Enterprise Defendants, associated together for the common purpose of expanding the prescription opioid market. *See* Order Re Civ. Con. (Doc. #: 2562). Plaintiffs have produced evidence to raise genuine issues regarding whether and to what extent the various Defendants coordinated (relationship prong) with one another to expand the opioid market and protect the supply chain (common purpose prong), and that it has been going on long enough to pursue the common purpose (longevity prong). *Id.* at 6-10. Thus, Defendants have not shown an absence of any essential element as described in *Turkette* and *Boyle* such that no reasonable jury could find the existence of an enterprise.

Defendants also assert there is no evidence that they directed or controlled the enterprise. The Supreme Court has said that, "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The Sixth Circuit further clarified that, "[a]lthough *Reves* does not explain what it means to have some part in directing the enterprise's affairs, subsequent decisions from our sister circuits have persuasively explained that it can be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out." *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008). Thus, in order to show that a Defendant "conduct[s] or participate[s], directly or indirectly, in the conduct of such enterprise's affairs," Plaintiffs must show that Defendants made decisions or knowingly carried out acts that helped to further the common purpose of the enterprise. 18 U.S.C.A. § 1962(c).

In its September 3, 2019 Opinion and Order regarding Civil Conspiracy, the Court reviewed the evidence produced by Plaintiffs and determined that various decisions made and actions taken by Manufacturers and Distributors – which, again, include the Marketing Enterprise and Supply Chain Defendants – are sufficient to create a genuine issue of material fact as to

5

whether these Defendants conspired with one another to expand the opioid market and protect the opioid supply chain. *See* Order re Civ. Con. at 6-10 (Doc. #: 2562). The Court now concludes that these same facts create a genuine issue as to whether Marketing Enterprise and Supply Chain Enterprise Defendants participated in the conduct of these enterprises' affairs. Defendants have failed to demonstrate that no reasonable juror could conclude, based on the evidence, that they did not.

### B. Causation

Defendants also assert Plaintiffs have produced no evidence that the alleged predicate acts are causally tied to Plaintiffs alleged RICO injuries. The Court has addressed Defendants causation arguments at some length. *See* Summit R&R at 24-36 (Doc. #: 1025); Order re MTD Summit at 7-10 (Doc. #: 1203); Order re Causation (Doc. #: 2561). In all instances, the Court has concluded that Plaintiffs will be allowed to test their aggregate theory of causation and have produced enough evidence to raise a genuine dispute of material fact. *See generally*, Order re Causation (Doc. #: 2561).

### C. Other Arguments

Manufacturers also assert that RICO damages are not available, as a matter of law, for the marketing of their branded products. Manufacturers assert their marketing was independent, competitive behavior and not the conduct of the enterprise. This argument appears to confuse the alleged common purpose of the enterprise with the alleged pattern of racketeering activity. Plaintiffs have alleged that the purpose of the Marketing Enterprise was to expand the opioid market and that the pattern of racketeering activity by which they accomplished this goal was the use of mail and wire communications in the fraudulent marketing of prescription opioids. Defendants' argue that their alleged unlawful conduct (fraudulent marketing of opioids), cannot— at the same time—benefit both them individually (increasing market share) and the enterprise

collectively (expanding the opioid market). Defendants, however, cite no case law that persuades the Court that racketeering conduct cannot serve both the member and the enterprise at the same time.

Finally, Manufacturers assert Plaintiffs have not done enough to demonstrate that their alleged RICO damages do not flow from the personal injuries of their citizens.  In its Opinion and Order adopting the Magistrate Judge's R&R on the motions to dismiss, the Court concluded that Plaintiffs had sufficiently alleged "categories of costs . . . that cannot be said to arise directly out of Plaintiffs' residents' personal injuries." Order re MTD Summit at 16-17 (Doc. #: 1203). Defendants' argument now urges the Court to reconsider its supposedly too-broad application of *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013).[4] The Court declines to do so.

Accordingly, Distributors' Motion for summary judgment on Plaintiffs' RICO and OCPA Claims, (**Doc. #: 1921**); and Manufacturers' Motion for summary judgment on Plaintiffs' RICO, OCPA, and Conspiracy Claims (**Doc. #: 1930**) are both **DENIED**.

    **IT IS SO ORDERED.**

    /s/Dan Aaron Polster  *September 10, 2019*
    **DAN AARON POLSTER**
    **UNITED STATES DISTRICT JUDGE**

---

[4] Notably, Manufacturers do not assert that the Court's application is incorrect; merely that it is broad. *See* Man. MSJ on RICO & Civ. Con. at 27 (Doc. #: 1930-1).