# EXHIBIT K



**Portfolio Media. Inc.** | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Meet The Judge Who's Steering The Epic Opioid MDL

By **Emily Field and Jeff Overley**

Law360, New York (January 30, 2018, 6:56 PM EST) -- U.S. District Judge Dan Aaron Polster has a lofty goal for historic litigation over the opioid crisis — a fast and dramatic reduction of narcotic painkiller sales — that reflects his penchant for brokering salutary settlements that don't require years of drawn-out legal maneuvering.

Judge Polster, who's been on the federal bench in Ohio since 1998, is known for a hands-on approach aimed at rapidly resolving lawsuits, attorneys and former colleagues say. In this litigation, which alleges reckless opioid sales, Judge Polster's urgency stems from the severity of the opioid epidemic, which claimed 42,000 lives in 2016.

The Judicial Panel on Multidistrict Litigation has tasked Judge Polster with shepherding more than 250 lawsuits that augur a potential day of reckoning for the pharmaceutical industry. The JPML **cited his experience with huge cases,** as well as the opioid epidemic's impact on Ohio, where 3,500 residents died of opioid overdoses in 2016 — more than 8 percent of the national toll in a state with less than 4 percent of the U.S. population.

"I doubt there's anyone in Ohio who doesn't have a family member, a friend, a child of a friend or the parent of a friend who hasn't been somehow impacted," Judge Polster, a Cleveland native, told Law360.

According to the Centers for Disease Control and Prevention, the opioid epidemic caused average U.S. life expectancy to drop in 2015 and 2016 — the first back-to-back annual decline since the early 1960s. If the CDC finds that another decline occurred in 2017, it will be the longest streak since life expectancy dropped from 1916 through 1918, Judge Polster noted.

In the opioid MDL, part of Judge Polster's challenge is logistical. While MDLs are always large, they often feature a homogeneous pack



## Judge Dan Aaron Polster

**Career**
» U.S. District Judge, Northern Ohio (1998-present)
» Assistant U.S. Attorney, Economic Crimes Division, Northern Ohio (1982-98)
» Trial Attorney, U.S. Department of

of plaintiffs targeting one corporation. By contrast, the opioid lawsuits have been filed by a diverse cast that includes local governments, hospitals, unions and Native American tribes. They are targeting numerous companies with different business models, including drugmakers, wholesale distributors and pharmacies.

Cathy Yanni, one of three special masters in the opioid MDL, told Law360 that Judge Polster will bring vim and vigor to the case. Yanni worked with Judge Polster — who rides his bike to court when weather permits — in a previous MDL involving medical contrast agents, and she suggested that he brought an Energizer Bunny-like devotion to the litigation.

Justice, Antitrust, Cleveland, Ohio (1976-82)

**Notable Cases**
» In Re: Gadolinium-based Contrast Agents Products Liability Litigation
» Federal Trade Commission v. Steris Corp.
» Unique Product Solutions Ltd. v. Hy-Grade Valve Inc.

**Education**
» Harvard Law School, J.D. (1976)
» Harvard College, A.B. (1972)

"I got texts, emails, phone calls every day of the week," Yanni told Law360.

At one point, Judge Polster took a vacation to the Galapagos Islands, which she thought would be a respite. Not so, it turned out.

"He was texting me from Ecuador, from the boat — he doesn't quit," Yanni said. "He's a man with endless energy."

Judge Polster readily concedes that the opioid MDL is "an incredibly complex case." It will be difficult enough to supervise the litigation, to say nothing of steering the litigation toward settlements that save lives.

"That's always one of the challenges of an [MDL], is how to structure it and how to manage it," the judge said.

He added that "some of the best lawyers in the country" are involved and that he is "always open to suggestions from the lawyers and the parties on how to manage the case."

Another challenge for Judge Polster is the sheer intractability of the opioid crisis. It remains to be seen whether Judge Polster — who **recently declared** that other branches of government "have punted" on the issue — can guide the litigants toward settlements that actually make a difference.

But there are signs that his ambitious goal of sharply reducing opioid prescriptions is in fact realistic. For example, the CDC last year reported that the amount of opioids prescribed in the U.S. dropped 18 percent from 2010 to 2015.

The first glimmers of whether quick settlements are possible in the opioid MDL may be seen at a closed-door hearing set for Wednesday in Judge Polster's courtroom. The full-day hearing will be devoted entirely to "preliminary settlement discussions," according to a court order.

Asked about the MDL's significance, Judge Polster said: "I consider it an incredible honor that my colleagues on the [JPML] felt that they could entrust these cases to me because of the complexity and the importance to our country. I can't envision a higher or more somber responsibility."

Before taking the bench, Judge Polster was a federal prosecutor focused on economic

crimes and antitrust enforcement. His former colleague Ann Rowland, who recently retired from the U.S. attorney's office in northern Ohio, said that Polster's wide-ranging community involvement — including years of tutoring a local youth — affords the judge a firsthand look at the crisis.

"He understands — on perhaps a visceral level — the impact of the opioid epidemic on the community," Rowland said.

> # I consider it an incredible honor that my colleagues felt that they could entrust these cases to me.
>
> *— Judge Dan Polster*

The opioid lawsuits allege that drugmakers exaggerated painkiller benefits and downplayed their risks and that drug distributors turned a blind eye to suspicious orders that flooded communities with highly addictive pills. Damages related to health care and law enforcement could rival the $200 billion tobacco settlement of the late 1990s, **plaintiffs lawyers say**.

The explosive allegations and huge financial stakes provide all the ingredients for a chaotic, never-ending battle royal in the courtroom. But Judge Polster will likely be undaunted, said Patrick McLaughlin, who was the U.S. attorney for northern Ohio when Judge Polster was a prosecutor.

"Because of the numbers of litigants, it's a monster case," McLaughlin said. "But his approach to trying to resolve the case as early as possible is consistent [with his approach] since he first took the federal bench."

"He can be very aggressive with all the parties in seeing that they all work hard to achieve a resolution short of full-blown litigation," McLaughlin added.

During the past five years, Judge Polster dispensed with 165 product liability cases on his docket, while just one reached trial, court records show. The trial occurred in an MDL involving gadolinium-based contrast dyes used in medical procedures, and the JPML singled out that MDL in shipping the opioid litigation to Judge Polster.

The gadolinium case provided Judge Polster with "valuable insight into the management of complex, multidistrict litigation," and "we have no doubt that Judge Polster will steer this litigation on a prudent course," the JPML wrote.

> # He understands — on perhaps a visceral level — the impact of the opioid epidemic on the community.
>
> *— Ann Rowland*
> *Former assistant U.S. attorney*

Peter Burg of Burg Simpson Eldredge Hersh & Jardine PC, a plaintiffs lawyer in the gadolinium litigation, described the judge as "scholarly" in his legal analysis and "compassionate in terms of his desire ultimately to get to a result that will do some good."

"He was certainly participatory in trying to help the parties and their legal counsel get to a settlement resolution," Burg said. "I've been in MDLs where the judges have a very hands-off approach to the settlement dynamics — that was not Judge Polster."

Like the opioid MDL, the gadolinium MDL was complicated by the presence of multiple defendants — including GE Healthcare Inc., Bayer Healthcare Pharmaceuticals Inc. and Mallinckrodt PLC. Nonetheless, the vast majority of roughly 1,000 cases in the gadolinium MDL **were settled**, with only one case going to trial, resulting in **a $5 million verdict** for a patient and his wife.

But past performance is no guarantee of future results, Judge Polster said. The opioid MDL has hundreds of litigants with varied and competing interests, and the guy with the gavel can only do so much.

"I don't want [the litigation] to drag out for years and years. … But ultimately, it's not up to me," Judge Polster said. "I can't control what happens — control the lawyers or the parties. I can make suggestions. I can try and influence things. But I'm just one person."

--Editing by Christine Chun and Kelly Duncan.

---

All Content © 2003-2018, Portfolio Media, Inc.