# EXHIBIT O

# BARRON'S

HEALTH

# A Court Hearing This Week Could Be a Step Toward a National Opioid Settlement

By Josh Nathan-Kazis  Aug. 4, 2019 9:30 am ET



Oxycodone pain pills Photograph by John Moore/Getty Images

One big question has weighed on the stocks of pharmaceutical companies, generic drug manufacturers, and drug distributors alike since opioid lawsuits against these companies ballooned: How many billions?

How many billions of dollars, that is, could the companies that made, delivered, and sold prescription opioids end up paying to the thousands of states, cities, counties, and Native American tribes that seek to hold them responsible for the opioid crisis?

A hearing in a federal courthouse in Ohio early next week may offer important clues about how soon we could have an answer.

In the courtroom of Judge Dan Polster, lawyers representing cities and counties that brought opioid lawsuits will be asking the judge to let them try out a novel legal procedure that they say may make it possible to reach a settlement.

The details are enormously complex; the sort of thing that thrills only law professors. But investors should pay attention, because what comes out of the hearing will be key to understanding just how close the litigation is to a resolution.

Underlying the unusual proposal is the understanding that Polster, who has been placed in charge of the so-called multidistrict litigation, which groups together nearly 2,000 opioid lawsuits, wants to settle the case fast, given the magnitude of the health crisis.

"Judge Polster has always from the outset had settlement on his mind," said Andrew Pollis, a professor of law at Case Western University. "We have seen indications from Judge Polster that his desire to settle this case is often more of a priority for him than some of the niceties you might normally see play out in ordinary one-off litigation that does not carry with it the same level of magnitude or burden."

Progress toward a settlement could also help ease the pressure on the stocks of some of the defendants.

Shares of Teva Pharmaceutical Industries (ticker: TEVA) are down 66% over the past 12 months; Endo International (ENDP) is down 74%.

At the hearing, scheduled for Tuesday morning, the judge will hear arguments about a proposal meant to get around a sticky problem. While hundreds of cities and counties have already sued, tens of thousands more could still sue, which makes arriving at a settlement agreement hard.

"The defendants are facing not only the 2,000 lawsuits pending," said Abbe Gluck, a law professor at Yale University. "There are potentially thousands of more future lawsuits... If you're a defendant, you need to figure out, how am I going to settle and know that tomorrow I'm not going to wake up with the exact same, if not more, liability?"

In June, plaintiff's lawyers proposed the formation of what they called a "negotiation class," which would include all counties and municipalities in the U.S., whether or not they had brought an opioid lawsuit. A committee would negotiate with the defendants on behalf of the group. Unlike in a conventional class action, in this scenario the whole group would vote on whether to accept any proposed settlement.

Boosters say the proposal is a creative solution to a difficult problem. Critics say it isn't going to help. "It takes what already is a four-dimensional Rubik's cube of a problem and adds another layer of complexity," Pollis said.

Responses to the proposal from the parties in the suit been mixed. A group of defendants that includes drug distributors AmerisourceBergen (ABC) and McKesson (MCK) is against the proposal; drugmaker defendants, including Teva and Endo, filed a motion that neither supported nor opposed it.

The real opposition has come from a group that is not involved in the multidistrict litigation at all: state attorneys general, who have savaged the proposal in court filings. State attorneys general have brought their own opioid cases in state court. The attorneys general say the proposed class, which doesn't include them, is a challenge to their authority.

"For the state attorneys general, this is about more than just the opioid litigation," Gluck said. "This is a much bigger principle for them about who gets to negotiate on behalf of entities within the state."

In a letter on July 23, state attorneys general said that the negotiation class would make a resolution of the litigation harder, not easier to achieve. They argued that the novel nature of the procedure would lead to legal challenges, which would slow up any settlement. And they said that it would have the effect of encroaching on each state's sovereignty.

The lawyers proposing the class slapped back on July 30, noting that the attorneys general are "not even parties" to the multidistrict litigation.

At the hearing on Tuesday, Polster will hear arguments for and against the negotiation class. If he says no, the next step is a "bellwether" trial, scheduled for October, which will test arguments of the plaintiffs and defendants in the multidistrict litigation.

If he says yes, it will rekindle hopes of a settlement, and a near-term answer to the billion-dollar question.

**Write to** Josh Nathan-Kazis at josh.nathan-kazis@barrons.com

---

MORE FROM NEWS CORP