# EXHIBIT Q

1,601 views   |   May 10, 2018, 11:54am

# Judge Sees Litigation As Only An `Aid In Settlement Discussions' For Opioid Lawsuits



**Legal Newsline** Former Contributor ⓘ
Policy
*We cover issues that affect businesses in state and federal courts*

POST WRITTEN BY

**Daniel Fisher**

I am a writer and communications consultant and former senior editor with Forbes magazine.





The Carl B. Stokes United States Court House in Cleveland, where federal lawsuits over the opioid epidemic have be consolidated. (Photo By Raymond Boyd/Getty Images)

The judge overseeing hundreds of lawsuits against the opioid industry that have been consolidated in federal court said some trials may occur but that litigation is "not a substitute or replacement" for his preferred goal of a comprehensive settlement.

In a public hearing Thursday before an overflow crowd in his Cleveland courtroom, U.S. District Judge Dan Aaron Polster said he doesn't think traditional litigation is the means for resolving the lawsuits by cities, counties, states and Native American tribes that have been directed to his court for pretrial procedures. In an unusually blunt opening statement to the parties in January, Polster said "people aren't interested in depositions and discovery, and trials."

Judge Polster was forced to backtrack from that position after lawyers for plaintiffs and defendants failed to bridge key points of disagreement, including who will bear the most financial liability for opioid-related costs and the fundamental legal question of whether public nuisance law can be used to punish companies that sell a legal and heavily regulated product. Last month, he ordered a trio of bellwether trials to begin in 2019 to resolve some of those disputes.

Today In: Business

In Thursday's hearing, Polster seemed slightly peeved as he discussed the "litigation track" that the parties are preparing for next year even as they engage in settlement discussions.

"It's necessary to do it, and we're doing it, but it's not a substitute or replacement in any way" for settlement, the judge said. "I still am resolved to be the catalyst to do something to take some steps this year to turn the trajectory of this epidemic down and not up, up, up."

As the judge in charge of multidistrict litigation, Judge Polster theoretically only has authority over the coordination of pretrial activities, including document discovery and depositions. Once that work is done, the MDL judge is supposed to return lawsuits to the federal courts where they were filed. In practice, the vast majority of MDLs result in settlement without cases being remanded. Polster seems to have taken his role even further, by pushing the parties to settle before serious litigation begins.

That puzzles University of Georgia Law School Professor Elizabeth Chamblee Burch, who has written extensively about the MDL process.

She said one of the main reasons for litigation is to bring out facts bearing on the case, especially information the defendants would prefer to remain secret. But in the opioid litigation, Polster has sworn both sides to secrecy and many documents remain sealed, including the complaints.

"Litigation is supposed to generate information production," Burch said. "How can you hammer out a settlement if you don't have all the information you need? How can you know it's the right deal?"

The sprawling nature of the opioid litigation, with hundreds of plaintiffs and a still-expanding roster of defendants, has made it particularly challenging to contain within traditional legal procedures. Judge Polster has assigned three special masters to work with the parties and in Thursday's hearing one of them, David Cohen, called it "obviously one of the most, if not the most, complex pieces of litigation that the federal court system has seen."

In addition to their municipal clients, plaintiff lawyers are seeking class action status for lawsuits over infants with an addiction-related syndrome and increased health insurance premiums. Opioid defendants also face parallel litigation in state courts. The proliferation of lawsuits will make it difficult to negotiate a settlement that protects the defendants against future liability, one of the crucial aspects of the 1998 master tobacco settlement that many observers see as the model for opioid litigation.

The parties have "explored a variety of compromises and have had what I consider to be in my experience very fruitful, very open, very cooperative discussions," said Francis McGovern, another special master.

Plaintiffs and defendants are "discussing prospective injunctive relief," he said, to resolve some aspects of the opioid epidemic. Further negotiating meetings are scheduled later this month, June, July and August, and the July meeting will include representatives of the healthcare industry to discuss "the opioid crisis in a non-litigation context."

There was no discussion of Judge Polster's recent order limiting the number of plaintiff attorneys who can be paid from any litigation proceeds and requiring them to watch costs and fly coach. The judge also recently ordered plaintiff attorneys to inform him of any contracts they have with third-party litigation funders, to make sure they can't exercise any control over the litigation.

The judge said he won't make those agreements public, however, except under "extraordinary circumstances." This contrasts with defendant insurance coverage, which under the Federal Rules of Civil Procedure must be disclosed at the onset of litigation so that plaintiffs can know the extent and limits of coverage.

Attorney Joe Rice, who is on the plaintiffs' executive committee, also complained that other plaintiff lawyers are pestering his committee for access to so-called ARCOS data, database compiled by the Drug Enforcement Administration tracking the path of every single opioid pill from manufacturing floor to pharmacy.

Both the plaintiff attorneys and Judge Polster fought hard to get the information from the government and see it as critical to determining liability and uncovering new defendants.

Plaintiff lawyers who aren't on the executive committee have been demanding the data so they can add defendants to their complaints before the statute of limitations runs out Rice said. He asked the judge for another 35-40 days to analyze the information "and no have people bombarding us for data." The judge told Rice he doesn't need to respond to demands for the data.

In a January hearing, Judge Polster declared his intention "to do something meaningfu to abate this crisis and do it in 2018." That objective appears to be out of reach now, but he reiterated in today's hearing his distaste for resolving the dispute over who caused the opioid epidemic in open court.

Judge Jack Weinstein in Brooklyn took a similar approach with Agent Orange litigation in the early 1980s, Burch said, traveling the country to listen to veterans who claimed exposure to the chemical and driving the parties to settlement even in the absence of clear scientific evidence of harm.

The risk in reaching settlement early, without trials, Burch said, is "you're settling with blinders on. You can't see what's at stake."

 **Legal Newsline**

We went online in 2006 with a focus on state attorneys general and state supreme courts and their impact on America's businesses. Through the years, we have expanded the… **Read More**