UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br>*This document relates to:*<br>All Cases | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY PURSUANT TO 28 U.S.C. § 455(A)**

September 16, 2019

# TABLE OF CONTENTS

*Page*

INTRODUCTION ..................................................................................................................................1

ARGUMENT ........................................................................................................................................1

I. DEFENDANTS WAIVED ANY OBJECTIONS TO THE MATTERS SET FORTH IN THEIR MOTION ..................................................................................................................1

II. DEFENDANTS PROVIDE NO OBJECTIVE BASIS TO QUESTION THE COURT'S IMPARTIALITY ........................................................................................................5

CONCLUSION ...................................................................................................................................10

## INTRODUCTION

Twenty months into this MDL, after the Defendants submitted and entrusted the Court to rule on 41 *Daubert* and summary judgment motions, and with trial fast approaching, they assert that the Court's impartiality is subject to question.  They do so based on statements made in January 2018, news articles published beginning more than a year ago, and a course of settlement conduct to which Defendants have consistently and repeatedly acquiesced.  If there had ever been a basis for disqualification, Defendants long ago waived it.  And no such basis ever existed: The Court's long-standing and often-expressed preference for settlement does not reflect partiality, nor would an objective person reasonably perceive it as such. Defendants' contention that the Court has expressed improper and biased views regarding their liability is also unfounded, for two separate reasons. First, as discussed below, certain statements the Defendants complain about are simply invented; offered without citation, these purported expressions of prejudgment and bias were never made and indeed in many instances are contradicted by statements the Court did make. Second, none of the statements the Court actually made reflect prejudgment about the liability of any party, but rather are general statements about the tragedy of the opioid crisis.  None of this provides a basis for disqualification. As the Supreme Court has reminded, "the recusal statute was never intended to enable a discontented litigant to oust a judge because of adverse rulings made. . . ."  *Liteky v. U.S.*, 510 U.S 540, 550 (1994).  Defendants' motion should be denied in its entirety.

## ARGUMENT

### I. DEFENDANTS WAIVED ANY OBJECTIONS TO THE MATTERS SET FORTH IN THEIR MOTION

Defendants waived any objection they might have had to the matters set forth in their motion by failing promptly to seek disqualification in January 2018 (or at any time since then) when, as Defendants now complain, the Court announced a preference for settlement over litigation.  If these Defendants really thought recusal was necessary, they were required to raise the issue sooner—much sooner. By waiting so long—a year and eight months after the January 2018 hearing,

1

which appears to be their primary piece of evidence, and more than a year after the news articles on which they rely were published—and by actively participating in this litigation (filing motions, engaging in discovery, getting ready for trial, and participating in settlement discussions) all without a peep about any supposed "appearance of impropriety," they have waived their right to seek disqualification.

A party waives its right to seek disqualification under 28 U.S.C. § 455(a) by failing to timely raise the issue after having full knowledge of the pertinent facts. *See* 28 U.S.C. § 455(e) ("Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification."). This is the rule throughout the federal judiciary, including the Sixth Circuit. *See Goward v. U.S.*, 569 Fed. Appx. 408, 410-411 (6th Cir. 2014) (disqualification under § 455(a) was waived because the party seeking disqualification failed to timely raise the issue after the evidence became a matter of public record.); Wright & Miller, *Waiver of Disqualification*, 13D Fed. Prac. & Proc. Juris. § 3552 (3d ed.) (citing *Goward* as exemplifying the waiver rule). *See also In re Triple S Restaurants, Inc.*, 131 F. App'x 486, 487 (6th Cir. 2005) ("[T]he defendants' motion to recuse was untimely and was therefore properly denied."); *McKibben v. Hamilton Cty.*, 215 F.3d 1327, at *6 (6th Cir. 2000) (finding recusal motion untimely where the party's "attorney knew of the basis for the recusal motion for almost 11 months" but "nevertheless proceeded with the case, filed an amended complaint, and waited until the defendants filed their summary judgment motion before moving for recusal"); *In re City of Detroit*, 828 F.2d 1160, 1167 (6th Cir. 1987) ("Both § 144 and § 455 require that disqualification motions be timely[.]"); *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 503 F. Supp. 368, 380 (N.D. Ohio 1980) ("The law is well settled that one must raise the disqualification of the judge at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.").[1]

---

[1] Courts outside the Sixth Circuit agree. *See LoCascio v. United States*, 473 F.3d 493, 497 (2d Cir. 2007) ("[R]ecusal motions are to be made at the earliest possible moment after obtaining knowledge of

2

The requirement that disqualification be timely sought is aimed at the very sin the Defendants' motion commits. As the Second Circuit has recently explained:

> It is important to present recusal applications promptly for at least two reasons. First, a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take. Second, a prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters.

*United States v. Burke*, 756 F. App'x 93, 94 (2d Cir. 2019); *see also In re Kensington Intern. Ltd.*, 368 F.3d 289, 294 (3d Cir. 2004) (noting that the "evil that a timeliness requirement is intended to prevent" is "holding in reserve a recusal demand until such time that a party perceives a strategic advantage."); *Bosley v. 21 WFMJ Television, Inc.*, 245 F. App'x 445, 455 (6th Cir. 2007) ("Timeliness is a factor that obviously merits consideration by a court that is trying to determine whether a judge is truly biased or a litigant is merely trying to avoid an . . . adverse decision."); *In re Lupron Marketing and Sales Practices Litigation*, 677 F.3d 21, 37 (1st Cir. 2012) ("Litigants must raise a claim for disqualification of a district court judge after learning of the grounds for disqualification, and certainly may not wait and see how the court rules before acting."); *United States v. York*, 888 F.2d 1050, 1055 (5th Cir. 1989) ("A timeliness requirement forces the parties to raise the disqualification issue at a reasonable time in the litigation. It prohibits knowing concealment of an ethical issue for strategic purposes."). Of course, the "purpose of the recusal statute is not to enable an unhappy litigant to judge-shop until he finds a judge" who "rules in his favor." *Twist v. U.S. Dept. of Justice*, 344 F. Supp. 2d 137, 142 (D.D.C. 2004), *aff'd*, 171 Fed. Appx. 855 (D.C. Cir. 2005). The Defendants' disappointment with

---

facts demonstrating the basis for such a claim."); *Kolon Industries Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 171 (4th Cir. 2014) (rejecting recusal argument because "Kolon knew every fact that eventually predicated its recusal motion almost a year before it first suggested recusal might be appropriate, in July 2011, and over a year before it finally filed its first recusal motion, in November 2011."); *Scott v. Rubio*, 516 Fed. Appx. 718, 723 (10th Cir. 2013) ("[T]he Scotts did not timely seek recusal. Much of the conduct of which they have complained throughout these proceedings occurred more than five months before they sought recusal.").

3

specific rulings, or with the outcome to date of the resolution track, or most centrally that a trial is imminent, is therefore no basis for recusal, especially in the absence of any timely attempt to raise or resolve the issue.

Nor is Defendants' waiver a simple matter of timeliness only.  That is, it is not simply that Defendants took no action during all this time that they have been aware of the grounds put forth in their motion for disqualification.  On the contrary, Defendants have been active participants in the settlement/mediation process.  They have participated with the Court and the Special Master without objection. Indeed, counsel for AmerisourceBergen Corporation, Alvin Emch, stated on the record in February 2018 his appreciation for and approval of the Court's approach:

> [Mr. Emch:] Litigation is about blame and fault and liability and pointing fingers. Your Honor saw that from the very beginning. Resolution, trying to do things that are helpful, is about entities that accept some level of responsibility for the role that they play, but are talking cooperatively about what may be done…The goals of this Court are our goals, too.

February 26, 2018, Hearing Tr., p. 33, 38.  Defendants have also paid half of the compensation of the Special Masters in this case, including the cost of the Special Master appointed specifically to explore settlement.  *See* Appointment Order, Doc. #69 (January 11, 2018).  Thus, Defendants have expressed their approval of the settlement process with their money, as well as with their participation and their failure to object. *See* Manual for Complex Litigation, Fourth, § 13.11, p. 168 ("Occasionally, the parties request that the assigned judge participate in settlement discussions, waiving the right to seek recusal.").[2]

---

[2] Defendants' belated motion also flies in the face of another goal underlying the waiver rule—"to conserve judicial resources." *Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997) ("The policy considerations supporting a timeliness requirement are…to conserve judicial resources and prevent a litigant from waiting until an adverse decision has been handed down before moving to disqualify the judge."). *See also York*, 888 F.2d at 1055 ("The motivation behind a timeliness requirement is also to a large extent one of judicial economy[.]"). The threat to judicial economy posed by the Defendants' eleventh-hour motion is especially acute given the monumental amount of time and energy spent on this MDL over the past year and eight months, during which the parties, their counsel, and the Court have devoted thousands of hours to the resolution process—all without any objection to any of the established case management tools used by the Court, including the

4

Defendants waived their right to seek recusal by failing to timely raise the issue after having full knowledge of the facts on which their recusal request relies. Their last-ditch recusal request, is being misused for improper strategic purposes, undermines the integrity of the judicial process, and should not be countenanced. *See S.E.C. v. Loving Spirit Found. Inc.,* 392 F.3d 486, 492 (D.C. Cir. 2004) (ordering the attorneys "to show cause why they should not be sanctioned or otherwise disciplined" in part for filing a "blatantly" untimely motion to recuse).[3]

## II. DEFENDANTS PROVIDE NO OBJECTIVE BASIS TO QUESTION THE COURT'S IMPARTIALITY

Defendants' motion also fails on the merits. Defendants do not argue that the Court "actually harbors bias or prejudice," *see* Memo in Support, p. 19; they couldn't, as there is no evidence to support such an allegation. They instead rely on a supposed "appearance of prejudice or bias," Mtn, p. 1; Memo in Support, p. 1, but they cannot meet this standard, either.

Disqualification under § 455(a) is "not based on the subjective view of a party." *Burley v. Gagacki*, 834 F.3d 606, 615-16 (6th Cir. 2016). Rather, it "imposes an objective standard: a judge must disqualify himself where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Id.* at 616. The burden is on the moving party to justify disqualification. *Id.* Indeed, "a judge is presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise….The burden is not on the judge to prove that he is impartial." *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir.

---

appointment and utilization of discovery and settlement Special Masters, and the involvement of the Court itself on parallel litigation and settlement tracks.

[3] To the extent the Defendants may argue the disqualification issue did not ripen until they knew the nuisance claim would be tried by the Court, the argument fails for two reasons. First, the Defendants have known—or at least should have known—since their motion to dismiss the nuisance claim was denied last year that the Plaintiffs are seeking an equitable remedy that would be decided by the Court. Second, the Defendants do not merely seek to disqualify the Court from acting as trier of fact on the equitable remedy but instead seek to disqualify the Court from the entire MDL. Mtn., p.1.

2007). A judge's decision on a motion to disqualify is reviewed under the "abuse of discretion" standard. *Burley,* 834 F.3d at 616.

The Supreme Court's opinion in *Liteky* elucidates the exacting standard governing disqualification under 28 U.S.C. § 455(a), which the Defendants are unable to satisfy. The Supreme Court explained:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.*

510 U.S. at 555 (1994) (emphasis added).[4]

The requirements of extra-judicial sources or a high-degree of favoritism are necessary to ensure that the disqualification statute does not prevent judges from doing what their job requires—forming judgments:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. . . . If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions.

*Liteky,* 510 U.S. at 550-51.

---

[4] The Supreme Court in *Liteky* offered as an illustration of the type of judicial comment that would warrant disqualification under this standard "the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German–American defendants." *Id.* In that case, the judge said: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans because their hearts are reeking with disloyalty." 510 U.S. at 555. It contrasted that by noting that "[o]ne would not say, for example, that world opinion is biased or prejudiced against Adolf Hitler." *Id.* at 550.

Defendants have submitted no facts to meet their burden that a reasonable person would question this Court's impartiality.[5] The statements with which the Defendants in this case take issue and on which they hang their entire motion do not demonstrate "such a high degree of favoritism or antagonism as to make fair judgment impossible," as required by *Liteky*. And they come nowhere near the deep-seated ethnic hostility exemplified by the comments made by the judge in *Berger*.

In order to manufacture an appearance of partiality that the record does not support, Defendants misrepresent some of the Court's statements. They claim, for instance, that the Court said, "all Defendants, regardless of their role in the supply chain and the particulars of their conduct (i.e., culpability), should pay money in settlement." Memo in Support, p. 9. The Court never said that, which is why the Defendants don't cite anything to substantiate it. The Defendants also claim the Court said, "where large numbers of opioid pills had been prescribed and supplied, liability is a given." *Id.* The Court never said, "liability is a given." Rather, the Court said the presence of "hundreds and thousands of pills per person, per year, for every man, woman, and child" "was wrong" and "shouldn't have happened." February 26, 2018, Hearing Tr., p. 11. The Court did not indicate who, if anyone, engaged in wrongdoing or should be liable, it at all, for the outsized volume of pills. Thus, although the Court has repeatedly expressed concerns about the opioid epidemic, and a desire to assist in abating it, the Court has at no time expressed improper or biased views about the liability of any defendant, much less views based on extra-judicial sources.

Moreover, the Defendants do not identify a single ruling made by the Court that shows any bias or prejudice for or against any party in this litigation. All of the major rulings in this case have in fact been fully explained on the record by the Court. This leaves the Defendants with nothing more than their "own speculation" that the Court harbors "such a high degree of favoritism or

---

[5] This is not the first time the Defendants have made serious, but unsupported, allegations against the Court. *See In re: National Prescription Opiate Litigation*, No. 19-3682, 2019 WL 3819637 (6th Cir. Aug. 15, 2019) (noting lack of merit to Defendants' "serious allegation" about the Court).

7

antagonism as to make fair judgment impossible." *Id.* at 540; *Bosley v. 21 WFMJ Television, Inc.*, 245 F. App'x 445, 453–54 (6th Cir. 2007) (rejecting a disqualification argument that was based on the defendants' "own speculation," and holding: "In the absence of any evidence to suggest that Judge Gwin was incapable of impartially adjudicating the case before him, the mere fact that the defendants believe that Judge Gwin has some interest in seeing Bosley's action succeed does nothing to advance their argument that Judge Gwin erred in refusing to recuse himself.").

Finally, these Defendants are sophisticated parties represented by sophisticated counsel. They understand full well that judges are expected, and in complex litigation encouraged, to engage the parties in settlement discussions early and often. *See generally* Manual for Complex Litigation, Fourth, § 13. And when parties agree to have the judge involved in settlement discussions, they waive their right to later seek recusal. *Id.*, § 13.11, p. 168 ("Occasionally, the parties request that the assigned judge participate in settlement discussions, waiving the right to seek recusal."). That is the only sensible approach; otherwise, a party could engage in the very evil the waiver rule is designed to prevent: holding in one's back pocket a recusal demand based on the judge's involvement in settlement only to unfurl it after the judge makes an adverse ruling.

This Court has experience balancing the role of adjudication and encouraging settlement, as exemplified by its *sua sponte* decision to recuse itself from deciding a post-trial motion in the last MDL it presided over: *In re Gadolinium Based Contrast Agents Product Liability Litigation*, (MDL No. 1909). The motion, filed by the plaintiff, sought prejudgment interest based on the claim that the defendant had not made a good faith effort to settle the case before trial. *Decker v. GE Healthcare Inc.*, 770 F.3d 378 (6th Cir. 2014). The Court, on its own initiative, recused itself from deciding the motion given its involvement in pretrial settlement discussions: "Judge Polster explained that he 'was so heavily involved in mediating a resolution of this case that [he] would likely [have been] a witness to a litigated dispute involving the parties' settlement efforts' and that he was 'not allowed to

8

act as both a judge and a witness.'" *Id.* at 387–88. The Sixth Circuit approved the Court's limited recusal. *Id.* at 390.

Similarly in this MDL, the Court has taken appropriate steps to facilitate settlement without compromising its ability to serve as a factfinder (or its traditional adjudicative role), including enlisting Special Masters to lead the settlement discussions, which is a well-recognized and well-regarded technique to promote settlement. *See* Manual for Complex Litigation, Fourth, § 13.13, pp. 168–70 (recommending "techniques" that "have proven successful in promoting settlement," including using special masters, referring matters to magistrate judges, and setting a firm trial date).[6] The Court has put this MDL on two tracks—litigation and settlement—and has implemented a structure to achieve the best of both worlds: meaningful settlement discussions in parallel with prompt and fair adjudication.

The Judicial Panel on Multidistrict Litigation entrusted this high profile, complex, and challenging case to this Court, because it recognized the Court's unique experience, insights, and abilities:

> Judge Dan A. Polster is an experienced transferee judge who presides over several opiate cases. Judge Polster's previous MDL experience, particularly MDL No. 1909 – *In re: Gadolinium Contrast Dyes Products Liability Litigation*, which involved several hundred cases, has provided him valuable insight into the management of complex, multidistrict litigation. We have no doubt that Judge Polster will steer this litigation on a prudent course.

Doc. 1, Transfer Order, p. 4. As have other MDL judges who were assigned similarly challenging cases in recent years, this Court charted a clear course of dual litigation and resolution tracks—and kept on course. The course was announced to all at the outset, was never deviated from, and was never objected to by any party. Case management has been active and consistent, with multiple weekly conferences, and over 270 orders issued to date—myriad opportunities for the parties to

---

[6] This is exactly what the Court has done in this MDL. The Manual also encourages creativity, noting that "creativity in this aspect of the litigation has few risks." *See* Manual for Complex Litigation, Fourth, § 13.13, pp. 169.

articulate positions and voice any concerns. No issue regarding disqualification was ever raised, despite the fact that the events now complained of occurred openly. Nor would any objection have been warranted.

## CONCLUSION

The Motion to Disqualify fails both procedurally and substantively and should be denied.

Dated: September 16, 2019                    Respectfully submitted,


        Paul J. Hanly, Jr.
        SIMMONS HANLY CONROY
        112 Madison Avenue, 7th Floor
        New York, NY 10016
        (212) 784-6400
        (212) 213-5949 (fax)
        phanly@simmonsfirm.com

        Joseph F. Rice
        MOTLEY RICE
        28 Bridgeside Blvd.
        Mt. Pleasant, SC  29464
        (843) 216-9000
        (843) 216-9290 (Fax)
        jrice@motleyrice.com

        Paul T. Farrell, Jr., Esq.
        GREENE KETCHUM, LLP
        419 Eleventh Street
        Huntington, WV 25701
        (304) 525-9115
        (800) 479-0053
        (304) 529-3284 (Fax)
        paul@greeneketchum.com

        *Plaintiffs' Co-Lead Counsel*

>*s/Peter H. Weinberger*
>Peter H. Weinberger (0022076)
>SPANGENBERG SHIBLEY & LIBER
>1001 Lakeside Avenue East, Suite 1700
>Cleveland, OH  44114
>(216) 696-3232
>(216) 696-3924 (Fax)
>pweinberger@spanglaw.com
>
>*Plaintiffs' Liaison Counsel*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 16, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. The Court's electronic filing system will send notice of this filing to all parties. Parties may access this filing through the CM/ECF System.

>*s/Peter H. Weinberger*
>Peter H. Weinberger
>*Plaintiffs' Liaison Counsel*