# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL CASES | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

### REPLY IN SUPPORT OF
### MOTION TO DISQUALIFY PURSUANT TO 28 U.S.C. § 455(a)

Plaintiffs' Opposition is notable for what it does not say and what it does not attempt to defend.

Plaintiffs do not cite any cases or any other authority concerning judicial conduct approving the Court's actions.  They do not acknowledge the Court's numerous media interviews and other public comments, much less claim they were appropriate.  Instead, they lead with the argument that Defendants waived any right to object to the appearance of partiality.  Their waiver argument, however, ignores the reality that Defendants' decision to file this motion—a decision they did not take lightly—was based on an accumulation of statements made and actions taken by the Court over time, including the Court's recent decisions to certify a novel "negotiation class" and to take on the role of finder of fact in any remedial phase of the nuisance case.  Plaintiffs also ignore that the motion concerns not just the upcoming two trial cases, but the more than 2000 cases pending in the MDL.  This is not "a desperate move on the eve of trial," as Plaintiffs' attorneys were quoted as saying to the press on Saturday.  The motion affects parties not involved in the October trial, and implicates more than 2000 pending MDL cases that have no trial setting and have not even begun discovery.  Finally, Plaintiffs' assertion that

Defendants "simply invented" the Court's statements,[1] is false.  The motion directly quotes the Court's own language, with citations.

Defendants' motion does not seek disqualification because the Court's rulings "show[] any bias or prejudice"[2] or because the Court "announce[d] a preference for settlement."[3]  On its face and as applied by the courts, 28 U.S.C. § 455(a) requires disqualification whenever a reasonable person would question the Court's impartiality—i.e., based on an *appearance* of partiality.  Here, a reasonable person would question the Court's impartiality because:  (1) the Court has said—both in and out of court—that the litigation affords it a personal opportunity to "do something meaningful" to help solve the opioid crisis, and (2) the Court, by numerous media interviews and public appearances, and the specific comments about the litigation made in those interviews and appearances, has conveyed what could be perceived as a lack of objectivity and pre-judgment of critical issues in the case.  Apart from these public appearances, the Court's deep involvement in settlement discussions prevents it from being a factfinder in any trial and requires its recusal.

The Third Circuit's two *Antar* decisions held that disqualification was required where a judge announced at the beginning of sentencing that it had been his personal objective from "day one" to get money from the defendant and return it to defrauded consumers.  The Court of Appeals found it "difficult to imagine a starker example" of the appearance of partiality—unless it was a judge making the same comment about his objective "at the beginning of trial."[4]  The

---

[1] Plaintiffs' Mem. in Opp. to Defendants' Motion to Disqualify Pursuant to 28 U.S.C. § 455(a), ECF 2603-1 ("Opposition"), at 1.

[2] *Id*. at 7.

[3] *Id*. at 1.

[4] *United States v. Antar*, 53 F.3d 568, 576 (3d Cir. 1995).

2

Opposition does not deny that this is exactly what the Court did here when it declared at the very first MDL hearing that (1) "everyone shares some of the responsibility, and no one has done enough to abate it" and (2) "[m]y objective is to do something meaningful to abate this crisis and to do it in 2018," where the Court said that doing "something meaningful" meant "dramatically reduc[ing] the number of opioids that are being disseminated, manufactured and distributed … and [assuring] that we get some amount of money to the government agencies for treatment"—money that, of necessity, would have to come from Defendants.[5]  Nor does the Opposition deny that the Court has made the same or similar statements in subsequent public interviews and appearances.

The First, Second and Tenth Circuits have disqualified district judges on the basis of far fewer public comments than this Court's seven interviews, several panel discussions or presentations in Cleveland and across the country, and closed-door meeting at a conference of attorneys general.  The First Circuit held that disqualification was required because of a single letter-to-the-editor and follow-up interview in which the judge said only that the pending case was "more complex" than a previous case.[6]  The Second Circuit disqualified a judge because she gave three interviews, in none of which did she mention the litigation but said, "I know I'm not their favorite judge" (referring to the government).[7]  The Tenth Circuit reached a similar conclusion when a judge gave a single television interview.[8]  The Opposition does not mention these cases, does not consider the examples they present, and does not risk a comparison of the conduct of those disqualified judges with the Court here.  Notably, the Opposition does not

---

[5]   ECF 58 at 9.

[6]   *See In re Boston's Children First*, 244 F.3d 164, 168-69 (1st Cir. 2001).

[7]   *See In re Reassignment of Cases*, 736 F.3d 118, 127 (2d Cir. 2013).

[8]   *See United States v. Cooley*, 1 F.3d 985, 995 (10th Cir. 1993)

contest that the Court gave the interviews cited, appeared at the public appearances noted, and made the comments quoted about the Court's personal role and objective, the necessary components of a settlement, and his belief that defendants must pay a substantial sum.

The motion for disqualification may be unique in one respect. It does not simply contend that reasonable persons would question the Court's impartiality; it shows that reasonable persons have, in fact, questioned the Court's impartiality—among them, law professors, the Ohio Attorney General, and a panel of the Sixth Circuit. The Opposition is silent on this fact.

When the Opposition takes issues with the motion, it quibbles. "The Court did not indicate who, if anyone, engaged in wrongdoing or should be liable … for the outsized volume of pills," Plaintiffs argue. Opp. 7. But the very point is that the Court, like Plaintiffs in the Opposition, has taken as "given" that the volume of pills delivered to the counties was "outsized" and reflects wrongdoing. The Court said, in the passage quoted in the motion, "There are certain areas of the country where there are hundreds of thousands of pills per person, per year, for every man, woman, and child. ***Everyone knows that was wrong*** …. ***The only question is whose pills***."[9] That statement constitutes a prejudgment that the volume of pills reflects liability, the only question left being who sold the pills. The Opposition also disputes that the Court has ever said that all defendants should pay money in settlement. Opp. 7. But a reasonable observer could certainly conclude otherwise when the Court said that "everyone shares some of the responsibility"[10] and that he "would look for both financial and systemic … change on the part

---

[9]  ECF 156 at 11.

[10]  ECF 58 at 4.

4

of Defendants in any settlement," with "all of the money" going into "[t]he big bucket" of recovery.[11]

Finally, the Opposition argues incorrectly that the motion is untimely.  Recent developments in the litigation have made it impossible to overlook the Court's comments in the hope that they merely reflect a general preference for the amicable resolution of legal disputes.  Just weeks ago, the Court announced that it intends to act as the finder of fact on important and disputed factual issues.  And the Court's very recent "negotiation class" certification ruling creates an unmistakable impression that the Court will let its apparent "unusual level of commitment" to settlement influence the analysis of contested legal issues.  The Court held that it would read Rule 23 to permit certification of an entirely novel "negotiation class" because, among other things, it will remove "an obstacle to settlement," which would "expedite relief to communities so they can better address this devastating national health crisis."

Beyond all that, even if the motion were untimely as to the Track One cases (and it is not), that would do nothing to erase the appearance of partiality with respect to every other case pending in the MDL.  This litigation is undoubtedly in the public eye, and public confidence in the impartial administration of justice is paramount.  For the more than 2000 cases in which all activity has been stayed, the motion is not untimely by any reckoning; they are no further advanced than the newly-transferred cases listed in CTO-110 on September 16.  If disqualification is required for those 2000 cases, as it surely is, then there can be no reason rooted in § 455(a) to exempt the two bellwether cases.

 Dated:  September 16, 2019                         Respectfully submitted,

---

[11]  Ex. M.

5

         */s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation and AmerisourceBergen Corporation*

  */s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com

*Counsel for Defendant Cardinal Health*

  */s/ Geoffrey Hobart*
Geoffrey E. Hobart
Mark H. Lynch
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com

*Counsel for Defendant McKesson Corporation*

 /s/   Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
**ZUCKERMAN SPAEDER LLP**
1800 M Street, NW
Suite 1000
Washington, DC  20036
Tel.: (202) 778-1800
Fax: (202) 822-8106
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Rx Services, Inc., CVS Indiana, L.L.C., CVS Tennessee Distribution, L.L.C., CVS Pharmacy, Inc., West Virginia CVS Pharmacy, L.L.C., Caremark Rx, L.L.C.*

 /s/ Kelly A. Moore
Kelly A. Moore
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6612
Fax: (212) 309-6001
kelly.moore@morganlewis.com

Elisa P. McEnroe
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5917
Fax: (215) 963-5001
elisa.mcenroe@morganlewis.com

*Counsel for Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center*

 /s/ John P. McDonald
John P. McDonald
C. Scott Jones
**LOCKE LORD LLP**
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
Tel:  (214) 740-8000
Fax:  (214) 756-8758
jpmcdonald@lockelord.com
sjones@lockelord.com

*Counsel for Henry Schein, Inc. and Henry Schein Medical Systems, Inc.*

 /s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
Tel.: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

/s/ Tina M. Tabacchi
Tina M. Tabacchi
Tara A. Fumerton
**JONES DAY**
77 West Wacker
Chicago, IL 60601
Tel.: (312) 269-4335
Fax: (312) 782-8585
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record on September 17, 2019.

> */s/ Geoffrey Hobart*
> Geoffrey E. Hobart
> Mark H. Lynch
> COVINGTON & BURLING LLP
> One CityCenter
> 850 Tenth Street NW
> Washington, DC 20001
> Tel: (202) 662-5281
> ghobart@cov.com
> mlynch@cov.com
>
> *Counsel for McKesson Corporation*