# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** )<br>)<br>)<br>This document relates to: )<br>)<br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.* )<br>Case No. 18-op-45090 )<br>)<br>and )<br>)<br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.* )<br>Case No. 1:18-op-45004 )<br>) | **MDL No. 2804**<br>**Case No. 17-md-2804**<br>**Hon. Judge Dan A. Polster** |

## JANSSEN DEFENDANTS' SUPPLEMENTAL MEMORANDUM ON PUBLIC NUISANCE JURY-TRIAL ISSUES

I.  **INTRODUCTION**

Pursuant to the Court's September 17, 2019 minute order, Defendants Johnson & Johnson, Janssen Pharmaceuticals Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. (collectively, "Janssen") submit this brief in response to the Court's proposal to let a jury decide the issue of liability for creating a public nuisance and to submit the remedies for public nuisance to the Court. Controlling precedent and the danger of undue prejudice require the Court to try the public nuisance claims in full rather than divide the issues as it has proposed.[1] The Court would commit legal error by holding a jury trial on the public nuisance claims, as Supreme Court and Sixth Circuit authority confirm that public nuisance claims, properly confined to seek only injunctive remedies, are equitable in nature and therefore must be tried by the Court. And adding sweeping, prejudicial public nuisance evidence and difficult public nuisance legal issues to already challenging RICO and conspiracy claims would both prejudice the jury against Defendants and guarantee juror confusion, mandating reversal on appeal. In addition, adhering to the correct procedure for adjudicating equitable claims would pose no risk of inconsistent determinations. For these reasons, the Court, not a jury, must decide the public nuisance claim in its entirety.

II. **THE COURT MUST DECIDE LIABILITY FOR PUBLIC NUISANCE**

Public nuisance claims center on questions of equity that only the Court can decide. Allowing a jury to determine the existence and causes of a public nuisance under the Ohio law applicable in this case would constitute legal error.

---

[1] Janssen does not waive its argument, as stated in its September 13, 2019 position paper, that Plaintiffs' public-nuisance claims fail as a matter of law because they seek monetary damages, not equitable relief. *See* Doc. No. 2597 at 1-2. But to the extent Plaintiffs' public nuisance claims are confined to permissible equitable remedies—that is, those that do not seek a monetary recovery—the Court, rather than a jury, is the proper finder of fact.

Both the Supreme Court and the Sixth Circuit have concluded that public nuisance claims are equitable in nature. In *Tull v. United States*, the Supreme Court explained the distinction between legal claims reserved for juries and equitable claims that must be tried to courts, and held out public nuisance as a textbook example of the latter, focusing on the fact that such claims afford a right only to injunctive relief: "A public nuisance action was a classic example of the kind of suit that relied on the injunctive relief provided by courts in equity." 481 U.S. 412, 423 (1987). Consistent with *Tull*, the Sixth Circuit held that a plaintiff had no right to a jury trial on a public nuisance claim brought under a federal statute that gave courts the power to abate a nuisance. *Kling v. United States*, 8 F.2d 730, 731 (6th Cir. 1925). The Sixth Circuit concluded that conferring such power on courts in public nuisance actions was "in harmony with the settled principles of equity jurisprudence." *Id.* (collecting cases). Bound by this controlling precedent, the Court here must conclude that Plaintiffs' public nuisance claims are equitable in nature.

The Court cannot, then, submit these equitable claims to a jury; instead, the Court itself must determine all aspects of nuisance liability. "[W]hether the Seventh Amendment provides for a jury trial in a specific case depends on the nature of the issue to be tried rather than the character of the overall action." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (internal quotation marks omitted). The authority to decide issues on claims that are "equitable in nature" "rest[s] *exclusively* with the court." *Id.* at 911 (emphasis added); *see id.* at 910-11 ("Because Plaintiffs requested only injunctive and declaratory relief … we must consider these claims equitable in nature, and thus the remaining decisions in this case *rest exclusively with the court* rather than a jury." (emphasis added)); Barbara J. Van Arsdale, et al., Federal Procedure, Lawyers Edition § 3:839 (noting that "issues in an equity matter should not be submitted to a jury").

Plaintiffs have no right to a jury trial on their equitable public nuisance claims, as properly confined to relief available under governing law, and so the Court would commit legal error by submitting the claims to a jury without the parties' consent. *See Whitson v. Knox Cty. Bd. of Educ.*, 468 F. App'x 532, 538 (6th Cir. 2012) (holding that it was "error" to try equitable claim to a jury); Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2887 (3d ed.) (explaining that if a trial court uses a jury "because it mistakenly supposed a right to jury trial existed, and thus felt itself bound to follow the jury verdict as against its own appraisal of the evidence, that action is error"). While parties may consent to a jury trial in "an action not triable of right by a jury," Fed. R. Civ. P. 39(c)(2), not all parties have done so here, so the Court would err by holding a jury trial on any aspect of the public nuisance claim. *See Whitson*, 468 F. App'x at 538 ("Because this action was 'not triable of right by a jury' the court needed [all parties'] consent to send the case to a jury; clearly the court lacked that consent."). The Court must try the public nuisance claim itself.

### III. PRESENTING NUISANCE LIABILITY ISSUES TO THE JURY WOULD PREJUDICE DEFENDANTS

Because submitting public nuisance liability to the jury would contravene controlling authority, this Court cannot do so—no analysis into prejudice is necessary. But make no mistake: The error of trying equitable claims to the jury would substantially prejudice Defendants.

Already, jurors will have to consider evidence about the alleged economic injuries at issue in Plaintiffs' RICO, OCPA, and conspiracy claims, which encompass increased spending by specific government programs. *See* Dkt. 1865-14, McGuire Expert Rep. at 5-7 (summarizing damages methodology). Intentional public nuisance, by contrast, goes far beyond government expenditures: It is defined broadly as an "an unreasonable interference with a right common to

3

the general public." Restatement (Second) of Torts § 821B(1); *see also Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (definition of public nuisance is "broad"). Plaintiffs allege that the entire opioid abuse crisis is a public nuisance. *See* Summit TAC ¶ 167; Cuyahoga TAC ¶ 155. To prove that broad claim, they will present evidence about social harms with no conceivable relevance to their legal claims—for example, "loss of a sense of community" and an "overwhelming sense of hopelessness" in the Counties. *See* Dkt. 1890, Pls.' Mot. Summ. Adj. on Nuisance Claims at 10. But these attempts to pin deep-seated social problems on Defendants have nothing to do with Plaintiffs' RICO, OCPA, and conspiracy claims: They do not speak to whether Defendants engaged in a scheme to commit mail or wire fraud, committed federal controlled substance offenses, or conspired with one another, and are not at issue in the increased government expenditures Plaintiffs claim as damages for their legal claims. Yet Plaintiffs' public nuisance claims would place this and other emotionally charged and prejudicial evidence before the same jury tasked with deciding the narrower legal claims. Doing so would only inflame jurors against Defendants and increase the chances of unjustified, emotionally driven liability determinations on the RICO and conspiracy claims.

In addition, adding nuisance issues to the jury's plate would guarantee juror confusion. As the Court has acknowledged, the RICO analysis "is complicated" and involves overlapping issues of standing and proximate cause. Dkt. 1203 at 6. Indeed, the causal chain in this case spans decades, and resolving the RICO claims will involve the application of complicated factual issues. The nuisance claims are just as complex; Ohio courts have referred to nuisance as an "impenetrable jungle." *See Brown v. Scioto Cty. Bd. of Comm'rs*, 622 N.E.2d 1153, 1158 (Ohio App. 1993) ("There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.'"). Submitting nuisance claims to the jury would only serve to add complex facts and theories to already complicated issues, creating a real risk of unfair prejudice from juror confusion.

4

## IV. THE COURT'S CONCERN THAT INCONSISTENT FINDINGS COULD RESULT FROM A BENCH TRIAL ON NUISANCE IS MISTAKEN

There is no risk of inconsistent verdicts when legal claims are given to a jury while overlapping equitable claims are reserved for a court. Rather, where "issues of fact are common to both the legal and equitable claims and a jury has been demanded on the issues material to the legal claim, a jury *must* be permitted to determine these issues *prior to* decision of the equitable claim." Wright & Miller, *supra*, § 2338 (emphasis added). When the court subsequently rules on the equitable claims, it "is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim." *In re Lewis*, 845 F.2d 624, 629 (6th Cir. 1988). There accordingly is no risk of inconsistent determinations here—the jury's findings on legal issues would dictate the Court's resolution of any overlapping equitable issues. *See id.*

In fact, the scenario most likely to create inconsistent determinations is the Court's proposal: Submitting all liability determinations to the jury would vastly increase the chances of inconsistent jury findings. The jury would be faced with the daunting task of sorting through the complex legal issues underlying the RICO and conspiracy claims against multiple defendants while also navigating the "impenetrable jungle" of nuisance liability. Facing such complex claims, the jury runs the risk of returning inconsistent findings on issues that may overlap across claims, such as proximate cause. *See City of Cleveland v. Ameriquest Mortg. Secs.*, 615 F.3d 496, 502-6 (6th Cir. 2010) (applying same proximate cause analysis to RICO and public nuisance claims). The Court can avoid that outcome if it follows the settled procedure of trying the equitable public nuisance claims after the jury hears the RICO, OCPA, and civil conspiracy claims. Not only would this course avoid the legal and prejudicial error of submitting both equitable and legal claims to the jury, but it also would eliminate the risk of inconsistent findings

given that the Court would be bound to follow any applicable jury findings in determining nuisance liability.  *See In re Lewis*, 845 F.2d at 629.

The Court, and the Court alone, must decide liability for the creation of the alleged public nuisance.  Passing that question to the jury would unduly prejudice Janssen and the other Defendants, warrant reversal on appeal, and likely lead to inconsistent jury findings.  To avoid the risk of prejudicial error and inconsistent findings, the Court should determine public nuisance liability after the jury determines liability on the RICO, OCPA, and civil conspiracy claims.

| | |
|---|---|
| Dated: September 19, 2019 | BY:   */s/* Charlie C. Lifland<br>Charles C. Lifland<br>Sabrina H. Strong<br>O'MELVENY & MYERS LLP<br>400 S. Hope Street<br>Los Angeles, CA 90071<br>Tel: (213) 430-6000<br>clifland@omm.com<br>sstrong@omm.com<br><br>Daniel M. Petrocelli<br>O'MELVENY & MYERS LLP<br>1999 Avenue of the Stars, 8th Floor<br>Los Angeles, CA 90067-6035<br>Tel: (310) 553-6700<br>dpetrocelli@omm.com<br><br>*Attorneys for Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.* |