UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br>THIS DOCUMENT RELATES TO:<br>*Track One Cases* | ) ) ) ) ) ) ) ) ) ) ) ) | MDL 2804<br>Case No. 1:17-md-2804<br>Judge Dan Aaron Polster<br><br>OPINION AND ORDER REGARDING ADJUDICATION OF PLAINTIFFS' <u>PUBLIC NUISANCE CLAIMS</u> |

Before the Court is the question of whether the Court or the jury will adjudicate the public nuisance claims asserted by Plaintiffs under Ohio law. For the reasons that follow, the Court concludes that public nuisance *liability* will be determined by the jury. If liability attaches, the Court will separately fashion remedies.

\* \* \* \* \* \*

Several weeks ago, one of the defendants stated to Special Master Cohen that it believed *all* aspects of the plaintiffs' public nuisance claims – including not only (1) whether there exists a public nuisance caused by any defendant (liability), but also (2) what any abatement remedies should be – must be decided by a jury, not the Court. The Court asked the parties to submit memoranda stating their positions regarding a Seventh Amendment right to a jury trial of the Ohio public nuisance claims. *See* Doc. ##: 2597, 2599, 2600, 2601, 2602. Following consideration of these memoranda, the Court convened a conference to discuss the issues with the parties and stated it intended to allow a jury to decide liability, and the Court would then decide abatement remedies

in a subsequent proceeding, if necessary. The Court invited submission of supplemental memoranda if any party believed this approach would be error.

Plaintiffs did not file any supplemental position paper, indicating acquiescence with the Court's intended approach. Numerous defendants submitted a position paper explicitly consenting to a two-phase trial, where (i) the jury will determine nuisance liability and (ii) the Court will determine remedies, if any. Doc. #: 2620. The only objection to this trial method is asserted by Janssen,[1] which opposes determination of liability by the jury, even if it is acting only in an advisory capacity. Doc. #: 2619 at 1-3. None of the parties now object to a subsequent proceeding with the Court deciding remedies, if necessary.

I. **Trial by Jury or the Court.**

Janssen asserts that, "to the extent Plaintiffs seek equitable public nuisance abatement remedies, the public nuisance claims must be tried in their entirety to the Court, rather than a jury." Doc. #: 2597 at 1, 3. Supreme Court cases cited by defendants conclude the Seventh Amendment guarantees the right to a jury where, as here, equitable and legal issues are joined in the same action. *See, e.g., Tull v. United States,* 481 U.S. 412, 422-425 (1963) ("I]f a 'legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought.'") *(quoting Curtis v. Loether*, 415 U.S. 189, 196, n. 11 (1974).[2]

---

[1] "Janssen" refers to related entities Johnson & Johnson, Janssen Pharmaceuticals Inc., Ortho-McNeil-Janssen Pharmaceuticals Inc., and Janssen Pharmaceutica, Inc. (*See* Doc. #: 2619 at 2).

[2] *See also Ross v. Bernhard*, 396 U.S. 531, 539 (1970) ("If [a shareholder derivative action] presents a legal issue, one entitling the corporation to a jury trial under the Seventh Amendment, the right to a jury is not forfeited merely because the stockholder's right to sue must first be adjudicated as an equitable issue triable to the court. Beacon and Dairy Queen require no less."). Janssen also cites *Kling v. United States,* 8 F.2d 730, 731 (6th Cir. 1925) to support

Preserving the right to a jury, however, is not the issue before this Court.  The decision to have the jury decide nuisance liability, generally considered an equitable issue, does not implicate the Seventh Amendment right.  As the Supreme Court has noted, "the right to jury trial is a constitutional one, however, [] no similar requirement protects trials by the court …." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959).  "The Seventh Amendment provides that in suits at common law the right of trial by jury 'shall be preserved.' It does not say that it shall not be extended to cases not covered by the Seventh Amendment, and neither this amendment, nor any other provision of the Constitution, preserves any right to a trial *without* a jury in proceedings that were not suits at common law.  There is some authority in the states for refusing to allow the extension of jury trial to matters that historically were equitable, but this never has been the rule in the federal courts." Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2317 (emphasis added).

*Leary v. Daeschner*, cited by Janssen, does not alter that conclusion.  *See* 349 F.3d 888 (6th Cir. 2003).  There, the Sixth Circuit found that, after dismissal of all of plaintiffs' legal claims at the summary judgment stage, leaving only equitable claims, the district court was not required to impanel a jury and "did not err when it failed to grant Plaintiffs' motion for a jury trial." *Id.* at 910-11 (concluding that the decisions regarding claims seeking declaratory and injunctive relief "rest exclusively with the court rather than the jury").  The circumstances in the *Track One* cases differ: a jury as of right will determine plaintiffs' still-viable legal claims.  The Court will then render any decisions regarding equitable nuisance remedies, as agreed to by all parties.

---

its argument that controlling precedent characterizes nuisance claims as equitable and therefore "the Court itself must determine all aspects of nuisance liability." Doc #: 2619 at 2.  *Kling* did not announce that holding.  Rather, the Sixth Circuit affirmed a decision granting an injunction against unlawful sales of intoxicating beverages under the National Prohibition Act, concluding that the court's exercise of statutorily conferred equity power did not deprive defendants of the constitutional right to a jury trial. *Id.*

Furthermore, Supreme Court authority holds that the first step in deciding whether there is a right to a jury in an action is to determine whether it is more similar to English pre-merger actions that were tried in courts of law than to suits in equity. *See, e.g., Tull,* 481 U.S. at 417-418. Those cases demonstrate that, historically, nuisance actions had a legal component. *See Atty. Gen. ex rel. Rothschild v. Kingdom Electric Telegraph Co.,* 54 Eng. Rep. 899, 901 (1861) ("[T]he Court does not interfere to abate or to prevent the continuance of a nuisance, unless it is clearly shewn that there is an injury to the public, which is not done here, and in that case the Court leaves the party complaining to establish the fact that the act done is a nuisance at law before it gives its aid by way of injunction."); *Anon.,* 26 E.R. 1230 (Court of Chancery1752) (refusing to grant injunction where plaintiff had not established a nuisance at law, stating: "A bill in this court to restrain nuisances extends to such only as are nuisances at law"). Treatises of the time instructed that "the question of nuisance or not must, in cases of doubt, be tried by a jury." *See* 2 Joseph Story, *Commentaries on Equity Jurisprudence, as Administered in England and America* § 923, at 203 (1st ed. 1836).

Moreover, to the extent there is reasonable doubt regarding whether nuisance liability is an issue for a jury or for the Court, case law counsels in favor of permitting a jury trial. *See. e.g. City of New York v. Beretta, U.S.A. Corp.*, 312 F. Supp. 2d 411 (E.D.N.Y. 2004) ("One guiding beacon has been lit by the Supreme Court: when in doubt, grant a jury trial.") (citing *Dairy Queen, Inc. v. Wood,* 369 U.S. 469 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500 (1959)); *see also* Wright & Miller*,* 9 Fed. Prac. & Proc. Civ. § 2302.1 (3rd ed.) ("[Supreme Court] decisions recognize that there is a strong federal policy favoring trial by jury of issues of fact. The strength of this policy in itself may provide the answer in cases in which the historical test gives no clear guidance.").

**II.     Facts Common to Plaintiffs' Legal and Equitable Issues**.

Also supporting the decision to try nuisance liability to the jury is Supreme Court authority holding clearly that all facts found by a jury in adjudicating legal claims, which are also relevant to the plaintiffs' equitable claims, are binding on a court's subsequent determination of those equitable claims. *See*, *e.g.*, *Tull*, 481 U.S. at 425 ("[I]f a 'legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'"); *In re Lewis*, 845 F.2d 624, 629 (6th Cir. 1988) ("[W]hen a party has a right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim."); 9 *Fed. Prac. & Proc.* § 2302.1 ("The sequence of the trial must be so arranged that any issues common to both the legal and equitable claims are tried to the jury before the court decides the equitable aspects of the action without the jury.").  The parties agree on this point.

In the first bellwether trial, the great majority of facts the jury will need to find to decide plaintiffs' legal claims (federal RICO, Ohio Corrupt Practices Act, and civil conspiracy) are the same as those any finder of fact would have to determine to decide the nuisance claims.[3]  For example: (i) facts regarding the existence of conditions that generated the alleged extraordinary municipal costs (*e.g.,* the alleged fraudulent marketing practices, inadequate diversion controls, and oversupply of opioids into the Plaintiff Counties) are also relevant to determining the conditions constituting the alleged nuisance; (ii) facts relating to alleged intentional or unlawful conduct resulting in liability under the legal claims also inform the decision as to whether that conduct unreasonably interferes with a commonly-held public right; and (iii) determining whether

---

[3]  Plaintiffs' Complaints allege hundreds of paragraphs of "Facts Common to All Claims."  *See* Doc. #: 1631 at ¶¶112-857 (Cuyahoga County Third Amended Complaint); Doc. #: 1466 at ¶¶ 124-814 (Summit County Third Amended Complaint).

5

a causal link is established between the alleged conduct and injury will involve facts common to all of plaintiffs' claims.

### III. Risk of Prejudice.

Janssen voices a concern that juror confusion and substantial prejudice will result if jurors tasked with determining legal claims measured by municipal costs also hear "emotionally charged" evidence of societal harms relating to interference with broadly-defined public rights. Doc. #: 2619 at 3-4. Evidence about public nuisance, Janssen contends, would "inflame jurors against Defendants and increase the chances of unjustified, emotionally driven liability determinations on the RICO and conspiracy claims." *Id.* at 3-4.

The court concludes this concern is overblown. As an initial matter, Janssen is alone among the bellwether trial defendants in its objection to a jury determination of nuisance liability, even though the alleged "juror confusion" would also affect the other defendants. Furthermore, Janssen, like all of the parties, is free to invoke Fed. R. Evid. 403 at trial with respect to any particular evidence it believes threatens excessive prejudice or juror confusion. Janssen's blanket assertion that a jury will be confused by any and all evidence related to nuisance liability ignores the tailoring that Rule 403 allows, especially when joined by a limiting instruction, if appropriate. Finally, the Court expects it and the parties will together craft jury instructions and interrogatories to guide the jury's verdict and ensure the jury considers each type of evidence only for appropriate purposes, thereby addressing the risk of prejudice or confusion. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."); *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 794 (6th Cir. 2002), *cert. denied*, 537 U.S. 1148 (2003) ("The jury was instructed that it could not award damages for injuries caused by other factors. As juries are

6

presumed to follow the instructions given, we reject [defendant's] argument that [plaintiff] failed to disaggregate the injury caused by [defendant] as opposed to that caused by other factors.").

### IV. Jurisprudential Considerations.

In reaching the decision to submit nuisance liability to the jury, the Court is also persuaded by the careful and lengthy analysis of the Honorable Jack B. Weinstein in *City of New York v. Beretta U.S.A*, which presented circumstances and considerations analogous to those involved here.  In *Beretta*, the court denied the defendants' motion to strike the city's demand for a jury in an action claiming abatement of a public nuisance and seeking an injunction only.  *Id.* at 413.  The court's reasoning is worth quoting at length:

> Even in bread and butter equity matters, "a chancery court could order that an issue be tried at law 'for the better information and guiding the conscience of the court.'" 2 *The Law Practice of Alexander Hamilton* 78–79 (Julius Goebel Jr. ed., Columbia Univ. Press 1969) (citation omitted). Power of the federal judge to deny what would be a proper bench trial and to utilize juries as triers of the facts in equity cases is carried forward in modern federal practice. *See Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) ("[T]he right to jury trial is a constitutional one ... while no similar requirement protects trials by the court ..."); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2317 (2d ed.1995); Note, *The Right to a Nonjury Trial,* 74 Harv. L.Rev. 1176 (1961).
>
> * * * *
>
> Without once again rehearsing the less than limpid historical precedents, it can be said that, viewed through the foggy two century old lens of Seventh Amendment culture, guidance of long dead chancellors on important issues of jury use is delphic at best. *Cf. Brown v. Board of Education,* 347 U.S. 483, 492, 74 S.Ct. 686, 98 L.Ed. 873 (1954) ("We cannot turn the clock back."). One guiding beacon has been lit by the Supreme Court: when in doubt, grant a jury trial. *See, e.g., Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). That advice is useful in the current case.

7

> Of more than passing interest in guiding decision on the issue in the current case is the fact that the plaintiff in the *NAACP* gun case was a private party. Here, one of the world's great cities is challenging the international handgun industry's practices that are alleged to put at unnecessary risk millions of urban residents. The precedential value and impact of such a case is likely to be substantial. A jury is likely to enhance the sense of parties and public that justice has been served—providing the litigation with greater moral as well as legal force. No suggestion has been offered that a jury representative of the citizens of this district would be unqualified to fairly try the issues.
>
> Whether a 1791 chancellor awakened from a Rip Van Winkle over two-hundred-year nap would have utilized any particular form of jury in managing the present case in our current legal system and culture—so different from the one he knew—is necessarily somewhat speculative. Speculation yielding to practicality, the following procedure seems best designed to protect the rights of all parties to a fair, affordable and prompt resolution: A Seventh Amendment jury will be empaneled to try the case. It will be conducted using evidentiary and procedural norms as in a law case. On appeal, if the appellate court desires findings of fact and law by the bench, the trial court can readily prepare them on remand. With these precautions, a new trial merely on the ground of mischaracterization of the case as legal or equitable seems unlikely.

*Id.* at 413-15.[4]

Judge Weinstein's reasoning applies to this litigation with particular force.  Here, thousands of governmental entities are challenging the conduct of the prescription opioid industry, alleging it created "the worst man-made epidemic in modern medical history." Doc. #: 1631 at ¶2 (Cuyahoga County Third Amended Complaint); Doc. #: 1466 at ¶2 (Summit County Third Amended Complaint).  Defendants deny responsibility for this alleged outcome.  While a bench trial may insulate litigants from the inflamed passions of a jury, there is also great virtue in

---

[4]  Judge Weinstein's decision on this issue was not appealed.  Defendants later moved to dismiss the action under the newly-enacted Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7903 ("PLCAA"), which required immediate dismissal of claims falling within its purview.  The district court denied the motion but certified the decision for immediate interlocutory appeal.  The Sixth Circuit reversed and remanded the case to the district court "with instructions to enter judgment dismissing the case as barred by the PLCAA," *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 398-404 (2nd Cir. 2008), so the jury never considered plaintiff's nuisance claim.

entrusting the judgment of any case – especially one with such broad social significance – to the collective deliberation of twelve citizens representing a cross-section of society, properly instructed by the Court, rather than reposing the entire responsibility in the mind and sensibilities of just one individual.  The risks attendant in leaving nuisance liability to the jury, mitigated as they will be through attentive oversight by the Court, are "a price . . . worth paying for the jury system, which is enshrined in the Bill of Rights and sanctified by centuries of history.  When questions of fact are involved, common sense is usually more important than technical knowledge, and twelve heads are better than one." *Dace v. ACF Industries, Inc.*, 722 F.2d 374, 377 (8th Cir. 1983).

Furthermore, if the Sixth Circuit later concludes the Court should have made its own findings of fact and conclusions of law regarding nuisance liability, the Court could prepare them expeditiously on remand without any need for a new trial.  *See Beretta,* 312 F. Supp. 2d at 414-15; *accord* Wright & Miller, 11 Fed. Prac. & Proc. § 2887 ("The mere fact that a jury is used when it need not have been is not error at all, since in any case the trial court may make use of an advisory jury. But if the court employed a jury because it mistakenly supposed a right to jury trial existed, and thus felt itself bound to follow the jury verdict as against its own appraisal of the evidence, that action is error. It is, however, usually harmless error . . . ."); *Whitson v. Knox Cty. Bd. of Educ.*, 468 F. App'x 532, 538 (6th Cir. 2012) (finding non-prejudicial harmless error in the district court's decision to hold a jury trial in an action not triable of right by a jury, where all parties did not consent to such a trial).

## V. Conclusion

Based on the foregoing, the jury that will be empaneled to render a verdict on plaintiffs' federal RICO, Ohio Corrupt Practices Act, and civil conspiracy claims will also determine nuisance liability. Thereafter, if necessary, the Court will try all aspects of equitable remedies for any nuisance liability, bound by the jury's findings of relevant facts.

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster  Sept. 24, 2019*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**