# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*Track One Cases* | MDL NO. 2804<br><br>Civ. No. 1:17-md-02804-DAP<br><br>HON. JUDGE DAN A. POLSTER |

# OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF JANSSEN AND JOHNSON & JOHNSON DEFENDANTS' MOTIONS IN LIMINE

Defendants Janssen Pharmaceuticals, Inc. ("Janssen") and Johnson & Johnson ("J&J"), move this Court for an order excluding from trial several categories of information that are irrelevant to the issues to be decided at trial, would grossly mischaracterize the evidence, and would unfairly prejudice the jury against Janssen and J&J.  Fed. R. Evid. 403.

      **A.**      **Janssen MIL No. 1: The Court should preclude any reference to or discussion of Noramco, Inc. and Tasmanian Alkaloids Pty. Ltd. and their manufacture and sale of opioid raw materials and active pharmaceutical ingredients.**

Evidence and argument referencing the manufacture and sale of opioid raw materials and active pharmaceutical ingredients ("APIs") by severed party Noramco, Inc. and non-party Tasmanian Alkaloids Pty. Ltd is irrelevant, unduly prejudicial, and should be excluded. Noramco manufactures and sells active pharmaceutical ingredients—APIs—that "are used in the manufacture of prescription opioid drugs."  Dkt. 2399 at 3-4.  Noramco ceased being a J&J subsidiary in 2016.  *See* J&J Second Quarter 2016 10-Q at 24.  Tasmanian Alkaloids, an Australian corporation and former subsidiary of J&J, manufactures narcotic raw material and poppy straw that in turn are used to make APIs for opioid medications.[1]  Neither Noramco nor Tasmanian Alkaloids are parties to the forthcoming trial.  The Court already severed Noramco from the Track One trial because Plaintiffs "made a tactical decision not to pursue discovery against Noramco," Dkt. 2399 at 4, and have not sued Tasmanian Alkaloids.  Plaintiffs nevertheless seek to introduce evidence of Noramco and Tasmanian Alkaloids to establish Janssen and J&J's liability.  The Court should not permit Plaintiffs to do so.

*First*, Plaintiffs are judicially estopped from introducing evidence and argument of Noramco.  Plaintiffs previously represented to the Court that "Noramco is unique among the Defendants in that it alone is not a manufacturer, distributor, or retail pharmacy seller of prescription opioids; rather, it is a supplier to manufacturers of the active pharmaceutical

---

[1] *Tasmanian Alkaloids*, available at skcapitalpartners.com/portfolio/tasmanian-alkaloids/.

1

ingredient used in prescription opioid drugs." Dkt. 2158 at 3-4. Plaintiffs argued "[t]hus, Noramco's presence in a bellwether trial would distract from the trial's primary focus on issues of more general relevance to the main categories of Defendants in this MDL." *Id*. at 4; *see also* Dkt. 2399 at 4. Plaintiffs may not now reverse course to obtain what they believe to be a different tactical benefit against Janssen at trial. *See, e.g.*, *Warda v. C.I.R.*, 15 F.3d 533, 539 (6th Cir. 1994) (plaintiff was judicially estopped from "advanc[ing] her new theory" where she previously had benefitted from an inconsistent theory). Similarly, as a result of Plaintiffs' "tactical decision" not to seek discovery from Noramco and Tasmanian Alkaloids, Dkt. 2399 at 4, Janssen and J&J did not seek defensive discovery from either company. At this late juncture, any attempt by Plaintiffs to prove their case using evidence of Noramco and Tasmanian Alkaloids' conduct would severely prejudice Janssen and J&J, and all such evidence should be excluded. *See* Fed. R. Evid. 403.

*Second*, there is a well-established "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation … is not liable for the acts of its subsidiaries" unless a Plaintiff pleads and proves alter ego liability. *U.S. v. Best Foods*, 524 U.S. 51, 61 (1998).[2] Plaintiffs, however, have asserted no such theory to disregard corporate separateness in their Third Amended Complaints, because no evidence exists to support it. There is no evidence that Noramco or Tasmanian Alkaloids lacked a "separate mind, will, or existence," or that they were controlled by Janssen and J&J to perpetuate a fraud or illegal act. Because Plaintiffs never pleaded or attempted to prove any basis to pierce the corporate veils,

---

[2] To pierce Janssen and J&J's corporate veil and attempt to hold them liable for Noramco and Tasmanian Alkaloids' business operations, Plaintiffs must prove that (1) J&J and Janssen's control over Noramco and Tasmanian Alkaloid "was so complete that [they] ha[ve] no separate mind, will, or existence of [their] own," (2) "control over [them] by [J&J and Janssen] was exercised in such a manner as to commit fraud or an illegal act against the person[s] seeking to disregard the corporate entity," and (3) "injury or unjust loss resulted to the plaintiff[s] from such control and wrong." *Belvedere Condo. Unit Owners' Ass'n. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 289 (1993).

2

evidence regarding Noramco and Tasmanian Alkaloids must be excluded. *See Best Foods*, 524 U.S. at 61; Fed. R. Evid. 402, 403.

*Third*, all evidence related to Noramco and Tasmanian Alkaloids is irrelevant to any issue in the case, because their conduct was lawful as a matter of Ohio law, under which a supplier cannot be held liable unless it "either participated in the design of the allegedly [harmful product] or assembled the final, integrated product." *Roberts v. Performance Site Mgmt., Inc.*, No. 03AP-784, 2004 WL 1196140, at *5 (Oh. Ct. App. June 1, 2004); *Wells v. Komatsu Am. Int'l. Co.*, 162 Ohio App. 3d 827, 832 (2005) (component-part manufacturer was not liable where it did not participate in the design or assembly of the final product). The manufacturers that bought API from Noramco and Tasmanian Alkaloids incorporated them into pharmaceuticals, but neither supplier had any role in that manufacturing. Their activities are therefore non-tortious as a matter of Ohio law and should be excluded. *See* Fed. R. Evid. 402, 403.

*Finally*, because Noramco's and Tasmanian Alkaloids acted pursuant to a federal statutory scheme, the raw-material sales are lawful as a matter of federal law. The Controlled Substances Act ("CSA") affirmatively authorized Noramco and Tasmanian Alkaloid's sales of raw materials and APIs to manufacturers. The DEA sets annual quotas for the production and purchase of the raw and active ingredients for opioid medications produced by Noramco and Tasmanian Alkaloids. *See* 21 C.F.R. §§ 1303.11–1303.12, 1303.21–1303.27; 21 C.F.R. §§ 1303.21–1303.27; 21 C.F.R. § 1304.31 (2018). Accordingly, evidence about those sales cannot support liability and should be excluded. *See* Fed. R. Evid. 402, 403.

    **B.**    **Janssen MIL No. 2:  The Court should exclude evidence of or reference to the FDA's March 1998 and March 2000 Untitled Letters, and September 2004 Warning Letter.**

Plaintiffs likely will attempt to introduce the FDA's March 1998 and March 2000 Untitled Letters, and a September 2004 Warning Letter (the "FDA letters") to suggest that

3

Janssen falsely marketed Duragesic.  But these letters are informal and advisory only.  The Court should not allow Plaintiffs to confuse and mislead the jury by suggesting that the FDA found Janssen's marketing misleading.  In any case, the letters are inadmissible hearsay.

*The FDA Letters.* On March 5, 1998, the FDA's Division of Drug Marketing, Advertising, and Communications ("DDMAC") sent Janssen an Untitled Letter claiming that statements in Duragesic convention posters were false or misleading.  Dkt. 2389-22.  Janssen modified the statements to address the concerns.  On March 30, 2000, DDMAC sent Janssen another Untitled Letter noting that statements in promotional materials created by sales representatives were false or misleading.  Dkt. 2389-23.  Janssen did not sanction these materials and only a limited number were disseminated in Georgia and Florida.  And on September 2, 2004, DDMAC sent Janssen a Warning Letter that challenged statements in an informational card used by sales representatives in 2003 and 2004.  Dkt. 2389-24.  Janssen provided extensive support for its statements, but also retired the card.

*The FDA Letters Are Not Final Agency Action and Would Be Unfairly Prejudicial.* Introduction of the FDA letters would result in unfair prejudice to Janssen, confusion of the issues, misleading of the jury, and delay.  Fed. R. Evid. 403.  They would incorrectly suggest to the jury that the FDA *concluded* that Janssen had falsely marketed Duragesic—when in truth the letters communicated no conclusions.[3]  In addition, the letters merely reflected DDMAC's observations that there was not "substantial evidence" for the statements made, not that Janssen

---

[3] A "Warning Letter is informal and advisory" and "does not commit FDA to taking enforcement action."  FDA Reg. Proc. Manual § 4.1-1-1 (Sept. 2018), https://www.fda.gov/downloads/ICECI/ComplianceManuals/Regulatory ProceduresManual/UCM074330.pdf (accessed Sept. 23, 2019); *see State ex rel. McGraw v. Johnson & Johnson*, 704 S.E. 2d 677, 688 (W. Va. 2010) (same language in 2004 version).  The "FDA is under no legal obligation" to issue Warning Letters, which are not final agency actions.  *Id.*; 21 C.F.R. § 10.65(a).  Untitled Letters are even more informal—they address issues that "do not meet the threshold for significance" for a Warning Letter.  FDA Reg. Proc. Manual § 4.2-1.

4

made actual false or misleading statements.[4]  Jurors would struggle to appreciate the difference between false or misleading statements under DDMAC's "substantial evidence" standard and actual false or misleading statements.  Courts have excluded similar evidence of preliminary agency actions because their prejudicial effect outweighs their limited probative value.[5]  Admitting the letters would also waste time litigating the nature of FDA correspondence.

**The FDA Letters Are Inadmissible Hearsay.**  The letters also are inadmissible hearsay—they are out-of-court statements that Plaintiffs will seek to admit for their truth.  Fed. R. Evid. 801(c).  The letters are subject to no exception, including the public-records exception.  *First*, the FDA letters do not set out any "matter(s) observed while under a legal duty to report," because the FDA was under no legal duty to issue the letters.  *Second*, the letters are not "factual findings from a legally authorized investigation."  *See* Fed. R. Evid. 803(8).  Warning and Untitled Letters are issued prior to official enforcement actions and are not formal findings of regulatory violations.  Courts have refused to find that non-final, interim agency reports—including Warning Letters—qualify as "factual findings."[6]  *Finally,* the letters are not trustworthy.  Not only are they all informal by nature, but Janssen rebutted the 2004 Warning Letter with significant scientific evidence, and the 2000 Untitled Letter concerned materials that were not

---

[4] *See, e.g.*, Dkt. 2389-22, 1998 Untitled Letter ("Promotional materials are false or misleading if they contain representations or suggestions that a drug's safety or effectiveness is comparable or superior to another drug when such has not been demonstrated by substantial evidence.").

[5] *See, e.g., Johnson v. Ford Motor Co.*, 988 F.2d 573, 580 (5th Cir. 1993) (affirming exclusion of NHTSA correspondence in part because "the 'official' nature of the inquires could have misled the jury"); *Ortho-McNeil-Janssen Pharm., Inc. v. Arkansas*, 432 S.W.3d 563, 579 (Ark. 2014) (citation omitted) (admission of FDA warning letter was unduly prejudicial because "[r]eports issued by governmental agencies" "may well carry inordinate weight" due to "their 'official' nature").

[6] *See Newman ex rel. Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 4460011, at *17 (N.D. Ill. Mar. 29, 2013) (FDA Warning Letter was not admissible as a public record because such letters are "informal and advisory" and not "final agency action," and the FDA was "under no legal obligation" to issue the letter); *City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) (interim recommendation by transit authority staff member to transit authority administrator was not a factual finding under Rule 803(8) because it only encompassed the "tentative results of an incomplete staff investigation")

distributed in Ohio or sanctioned by Janssen.  *See* Fed. R. Evid. 803(B).[7]

### C. Janssen MIL No. 3: The Court should not permit reference to unimplemented marketing.

Plaintiffs base their case against Janssen and J&J in part on the theory that Defendants exacerbated the opioid epidemic by promoting prescription opioids in false and misleading ways. Per Plaintiffs' theory, ***this promotion then caused*** prescribers to overprescribe the opioid medications, which led to ensuing abuse of the medications and other illegal opioids, with led to Plaintiffs alleged harms.  This theory is thus premised on Janssen and J&J marketing that *actually* occurred—any marketing that Janssen or J&J considered but never executed could not have caused Plaintiffs' alleged harm and is irrelevant to Plaintiffs' claims.  Fed. R. Evid. 403.

Plaintiffs point to marketing proposals that were never implemented and then assert without basis that the Manufacturer Defendants "wanted" to implement them.[8]  But Defendants' alleged "wants" are irrelevant: all that matters is whether Defendants' ***actions*** caused harm. Thus, all such discussion of marketing J&J and Janssen considered but never implemented should be excluded from the jury's consideration.

### D. Janssen MIL No. 4: The Court should exclude evidence of Tylenol with codeine or tramadol-based Janssen medicines Ultram, Ultram ER, and Ultracet that are not at issue in this case.

Plaintiffs have structured their case against Janssen and J&J around three prescription opioid medicines that the DEA classifies as Schedule II drugs: Duragesic, Nucynta, and Nucynta

---

[7] There is some authority finding that Warning Letters qualified for the public-records hearsay exception. *See In Re: Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 1109554, at *4 (D. Ariz. Mar. 1, 2018); *Sadler v. Advanced Bionics, Inc.*, No. 3:11-CV-00450-H, 2013 WL 1311148, at *1-2 (W.D. Ky. Mar. 26, 2013).  But these cases do not consider the informal and advisory nature of such letters, nor do they appear to concern letters that showed indicia of untrustworthiness, like the letters here.

[8] *See, e.g.*, Ex. 1, SUMMIT_002054174-4209, Portnoy Decl. ¶ 46; Dkt. # 2000-8/1999-8, Kessler Rep. ¶ 286; Dkt. #2182, at 9; *see also* Ex. 2, Kuntz Tr. 85:17-93:4 (J&J product and new business development director Ron Kuntz describing internal discussions about co-promotion and concluding that "it never happened"); Dkt. #2182, at 9 ("the Manufacturer Defendants ***wanted*** to be able to spin a positive story about the use of opioids in the face of abuse") (emphasis added).

ER.  Evidence mentioning or discussing different *Schedule III or IV* Janssen medicines with the active ingredients Tylenol with codeine or tramadol (Ultram, Ultram ER, and Ultracet) should be excluded.  The Special Master has already recognized the irrelevance of these by denying discovery into any opioid product that is not a Schedule II substance because "low-potency products that were launched decades before there was any "opioid crisis . . . are at best barely relevant to plaintiffs' claims." Dkt. 693 at 3.  The Court should do the same here.

Moreover, medicines containing tramadol are not mentioned once in Plaintiffs complaints and were not even federally scheduled during the vast majority of the time period relevant to this litigation.  When they finally were scheduled in 2014, they were classified as Schedule IV medications, which have a "low potential for abuse relative to the drugs or other substances in schedule III," which in turn have a "potential for abuse less than the drugs or other substances in schedules I and II." 21 U.S.C. § 812(b)(3)-(4) (2018).

Such evidence would add nothing to Plaintiffs' case and represent a waste of the Court's and the litigants' time.  *See* Fed. R. Evid. 403.  If the Court were to admit evidence and argument about Tylenol with codeine, Ultram, Ultram ER, and Ultracet, Janssen and J&J would need to present rebuttal evidence.  The Court should not waste time on extraneous matters.  *See* Fed. R. Evid. 403; *Glaros v. HH Robertson Co.,* 797 F.2d 1564, 1572-73 (Fed. Cir. 1986).

### E.    Janssen MIL No. 5:  The Court should exclude references to and discussion of plaintiffs' case against J&J and Janssen in Oklahoma State Court

Finally, the Court should exclude any references Plaintiffs might make to the Oklahoma litigation brought by separate plaintiffs against Janssen and J&J.[9]  Any references to or discussion of that litigation, including but not limited to the Oklahoma plaintiffs' allegations, legal claims, the fact and merits of the judgment, the amount of judgment, or issues related to

---

[9] *State ex rel. Hunter v. Purdue Pharma, L.P.*, No. CJ-2017-816 (Okla. Dist. Ct.).

7

appeal are not relevant to the matters before the Court in the Track One jurisdictions. Plaintiffs' attempted use of such information through cherry-picking elements most useful to their case here would solely serve to prejudice jurors against Janssen and J&J and must be excluded under Fed. R. Evid. 403. To the extent Plaintiffs seek to cross-examine any witness with the use of a transcript from that litigation, the Court should likewise limit counsel's reference to "testimony the witness previously gave" without specifying the case.

### F. Stipulated Janssen MIL No. 6: Reference to or discussion of alleged "other wrongs" involving Janssen and/or J&J that are unrelated to this case.

Plaintiffs and Janssen have agreed that Plaintiffs will not attempt to introduce any reference to or discussion of alleged "other wrongs" involving Janssen and/or J&J that are unrelated to this litigation, including but not limited to discussion of talcum powder, antipsychotic drugs, pelvic mesh, or any of Janssen or J&J's numerous other non-opioid products. In reliance on such agreement, Janssen & J&J have not included the issue in this brief, but request that the Court enter an order memorializing the parties' stipulation.

Dated: September 25, 2019           Respectfully Submitted,

       /s/ Charles C. Lifland
Charles C. Lifland
Sabrina H. Strong
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
clifland@omm.com
sstrong@omm.com

Daniel M. Petrocelli
Amy R. Lucas
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067-6035
Tel: (310) 553-6700
dpetrocelli@omm.com
alucas@omm.com

*Counsel for Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

## **CERTIFICATE OF SERVICE**

I, Charles C. Lifland, hereby certify that the foregoing document was served on September 25, 2019 via electronic transfer to all counsel of record, consistent with the Court's order.

.

*/s/ Charles C. Lifland*
Charles C. Lifland
