**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

IN RE: NATIONAL PRESCRIPTION
OPIATE LITIGATION

THIS DOCUMENT RELATES TO:

    *The County of Summit, Ohio, et al. v.*
*Purdue Pharma L.P., et al.*,
Case No. 18-op-45090

    *The County of Cuyahoga, Ohio, et al. v.*
*Purdue Pharma L.P., et al.*,
Case No. 17-op-45004

MDL No. 2804

Case No. 1:17-md-2804

Judge Dan Aaron Polster

**WALGREENS' TRIAL BRIEF**

    Defendants Walgreen Co. and Walgreen Eastern Co. (together, "Walgreens") submit this trial brief to outline the evidence that Walgreens intends to offer at trial and some of the most significant evidentiary issues that Walgreens anticipates the Court will need to address during the course of the trial.

    Pursuant to the Court's instructions, this brief does not revisit the legal issues addressed in briefing to the Court on motions to dismiss, motions for summary judgment, and motions to exclude certain expert testimony. Walgreens does, however, anticipate advancing many of those arguments (and others) in a Rule 50 motion at the close of Plaintiffs' case and, if necessary, in Rule 50 and Rule 59 motions after trial.

    Walgreens does not intend for the description of its defense offered in this trial brief to be binding. It submits this brief without prejudice to its right to revise its trial presentation and offer different or additional evidence at trial as the needs of the case develop and in light of Plaintiffs' evidence and arguments.

**Plaintiffs' Claims Against Walgreens**

Plaintiffs Cuyahoga County and Summit County have never asserted either federal or state RICO claims against Walgreens, unlike almost all of the other Defendants who will be at trial.  In addition, Plaintiffs have now dismissed all causes of action against Walgreens other than claims for civil conspiracy and public nuisance.  As to the remaining claims against Walgreens, they are limited to Walgreens' activities as a distributor of controlled substances to Walgreens' own pharmacies in Ohio before 2014, when Walgreens ceased distributing controlled substances like prescription opioid medications.

Thus, Plaintiffs have conceded, and the Court's rulings reflect, that Plaintiffs are not asserting any claims against Walgreens in these cases based on the dispensing of prescription opioid medications by Walgreens pharmacists.  In particular, there is no claim that a Walgreens pharmacist in either Cuyahoga County or Summit County ever dispensed any prescription opioid medication other than to fill a valid prescription that the pharmacist had no reason to doubt was written for a legitimate medical purpose by a prescriber who had both a license to practice medicine issued by the State of Ohio and a registration to prescribe controlled substances issued by DEA.  This concession is critical.  Walgreens cannot, even in theory, be held liable based on shipments from its distribution centers to its own pharmacies—even shipments that Plaintiffs and their experts would characterize as "suspicious"—*unless* Plaintiffs can *also* show that the medications were then used for some purpose other than to fill legitimate prescriptions.

Moreover, while Plaintiffs and their experts say that pharmaceutical manufacturers' marketing efforts persuaded competent and well-meaning doctors to write an excessive number of legitimate prescriptions for prescription opioid medications, that is no basis for faulting the pharmacists who complied with their professional obligations to fill prescriptions written by

2

doctors acting in the usual course of their medical practice.  Plaintiffs have never claimed—and there is no evidence even to suggest, much less to prove—that any Walgreens pharmacy in Cuyahoga County or Summit County (or anywhere else) operated as a "pill mill" like the rogue pharmacies alleged to have routinely dispensed controlled substances based on clearly improper prescriptions or even without any prescription at all.

Nevertheless, Walgreens assumes that Plaintiffs will attempt to prove at trial, in broad strokes: (1) that there were deficiencies in Walgreens' suspicious order monitoring programs at its distribution centers; (2) that, as a result of those alleged deficiencies, Walgreens shipped greater volumes of prescription opioid medications to its pharmacies than it otherwise would have; (3) that these medications that otherwise would not have been shipped were, somehow, subsequently diverted to the illicit market and contributed to opioids crisis; and (4) that this alleged Walgreens-specific contribution to the crisis caused some quantifiable harm to Plaintiffs.

**Walgreens' Defense at Trial**

Walgreens will demonstrate at trial that Plaintiffs cannot make any of these showings, although the specific evidence that Walgreens will present in support of its defense will necessarily depend on what evidence and theories Plaintiffs eventually decide to pursue before the jury.

For the reasons set forth in detail in the parties' summary judgment briefing, Plaintiffs cannot show that any conduct by Walgreens resulted in the diversion of prescription opioid medications that could have caused the harms that Plaintiffs allege.  While the Court concluded that the inferences offered by Plaintiffs as evidence of causation were sufficient to avoid summary judgment, Walgreens will show at trial that the proffered inferences are unsupported (in fact, contradicted) by the actual evidence and insufficient to carry Plaintiffs' burden of proof.

Among other things, Walgreens will show that its distribution centers always followed appropriate protocols for monitoring suspicious orders, reporting them to DEA, and evaluating whether they should be shipped—even when DEA officials could not agree among themselves what was required of Walgreens and gave Walgreens self-contradictory direction.  It is no surprise, then, that the Walgreens shipments that Plaintiffs and their experts have identified as suspicious are, for the most part, not even unusual.  They are certainly not "suspicious."  And prior submissions in this litigation have confirmed that Plaintiffs' attempt to prove diversion is no stronger than an insistence that the fact of a large shipment, regardless of how busy the receiving pharmacy may have been serving legitimate patients, permits an inference of diversion. Plaintiffs' theory is belied by the testimony of their own experts and every DEA and law enforcement witness in the case, as well as by Plaintiffs' concession that they do not assert any violation by Walgreens employees of the rules that govern the dispensing of controlled substances.

### **Key Evidentiary Issues**

Walgreens anticipates that the most important evidentiary issues for Court during trial may include the following:

- Improper efforts by Plaintiffs to describe as "the law" or otherwise reflective of legal obligations what are in fact non-binding and sub-regulatory guidance documents by DEA employees that are inconsistent with other guidance offered by different employees of the same agency.

- Efforts by Plaintiffs to block the presentation of evidence regarding the actual causes of the opioids crisis in Cuyahoga County and Summit County—which are many-faceted and complex; which in many instances do not reflect well on Plaintiffs and

4

other government bodies and agencies; and which involve innumerable actors not before the Court, ranging all the way from well-intentioned prescribing doctors to criminal drug dealers and heroin traffickers, to say nothing of the former parties against whom Plaintiffs have lodged the most incendiary allegations of wrongdoing.

• Plaintiffs' attempts to conflate the evidence regarding different Defendants and to try an improper composite case against a non-existent "industry" composed of very differently situated Defendants.  Far from being monolithic, Defendants operated entirely different businesses occupying different parts of the supply chain.  And the facts vary enormously with respect to each Defendant's actual conduct, each Defendant's alleged contributions to the opioids crisis, and each Defendant's compliance with the relevant legal requirements, among many other topics.

• Impermissible arguments by Plaintiffs that attempted collective proof—for example, of causation—can serve as evidence against each individual Defendant, despite the inapplicability of any variety of market-share liability under Ohio law.

• Attempts by Plaintiffs to overcome their lack of evidence regarding any alleged conduct touching either Cuyahoga County or Summit County with inflammatory claims based on enforcement actions and settlements in other jurisdictions.  Plaintiffs' summary judgment briefing reveals that essentially their *entire* case against Walgreens rests on allegations that DEA made against the company in 2012 regarding one distribution center and six pharmacies in Florida.  These allegations were never tested before any court or even a neutral administrative adjudicator.  Walgreens has asked the Court to exclude such evidence *in limine* as both irrelevant and unduly prejudicial.  If the Court does not exclude this evidence as a general matter, then it

will need to address at trial the scope of the specific evidence that can fairly be admitted before a jury.  And it will need to rule on what inferences from such evidence counsel will be permitted to argue in an attempt to link untested allegations regarding events in Florida to northern Ohio.  Depending on the Court's rulings, Walgreens anticipates that significant trial time may be devoted to factual disputes that do not concern anything that actually happened in Cuyahoga County or Summit County.

## Conclusion

Walgreens looks forward to addressing these issues further with the Court at trial.

Dated: September 25, 2019

Respectfully submitted,

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Matthew W. Brewer
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
Email: kaspar.stoffelmayr@bartlitbeck.com
Email: brian.swanson@bartlitbeck.com
Email: kate.swift@bartlitbeck.com
Email: matthew.brewer@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Phone: (303) 592-3100
Fax: (303) 592-3140
Email: alex.harris@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of September, 2019, a notice of the foregoing has

been served via CM/ECF to all counsel of record.

> */s/ Kaspar J. Stoffelmayr*
> Kaspar J. Stoffelmayr
>
> *Counsel for Walgreen Co. and Walgreen*
> *Eastern Co.*