# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track One Cases | MDL 2804<br><br>Case No. 17-d-2804<br><br>Hon. Dan Aaron Polster |

## WALGREENS' MOTIONS *IN LIMINE*

Walgreen Co. and Walgreen Eastern Co. ("Walgreens") hereby submit the following three motions *in limine*.[1]

## I. Motion No. W-1: To preclude evidence or argument about Walgreens' ownership interest in AmerisourceBergen

Walgreens moves *in limine* to preclude plaintiffs from offering evidence or argument about Walgreens' equity ownership interest in AmerisourceBergen (ABDC).

Plaintiffs bring claims against Walgreens based solely on allegedly improper distribution of prescription opioid medications. Walgreens has not distributed prescription opioid medications into the Track One counties since 2014. More recently, Walgreens has relied on ABDC as its distributor for controlled substances.

In summary judgment briefing, plaintiffs argued for the first time that Walgreens' "malfeasance" continued beyond 2014 through a "partnership" with ABDC because Walgreens owns "more than 26%" of ABDC's stock and is considered "a related party" under SEC rules. Dkt. No. 2190/2205 at 12-13. Walgreens anticipates that plaintiffs will suggest at trial that Walgreens exerts control or influence over ABDC, and is therefore responsible for ABDC's distribution conduct, by virtue of that ownership interest. Any such suggestion would not be merely misleading; it would be demonstrably false. It would also be unduly prejudicial and confusing to the jury, and would necessarily lead to a time-consuming side show on collateral issues. The Court should exclude it under Rules 402 and 403.

---

[1] To distinguish its motions from those filed by other defendants, Walgreens has numbered its motions W-1, W-2, and W-3. Walgreens also joins the following MILs submitted by the distributor defendants: D-2, D-3, D-4, D-5, D-6, and D-8.

1

*First*, evidence of ownership is irrelevant and misleading because under the terms of the agreements pursuant to which Walgreens acquired its interest in ABDC, Walgreens is prohibited from exercising any control over ABDC.  The Framework Agreement executed between Walgreens and ABDC expressly states that ABDC is *not* an "affiliate" of Walgreens—defined as a "person . . . that directly or indirectly . . . Controls, is Controlled by, or is under common Control with" another person.  **Exhibit A** at 33.  Control is defined as "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of securities, by contract, management control, or otherwise."  *Id.* at 34.  Likewise, the AmerisourceBergen Shareholders Agreement, which resulted in Walgreens acquiring an equity stake in ABDC, contains strict Standstill Provisions that provide that Walgreens "shall not, directly or indirectly, . . . act, alone or in concert with others, to seek to Control or influence the management or the policies of the Company (for the avoidance of doubt, excluding any such act to the extent in its capacity as a commercial counterparty, customer, supplier, industry participant or the like)."  **Exhibit B** at 12-14.

*Second,* evidence of ownership is irrelevant because the *only* claims against Walgreens are based on Walgreens' role as a distributor and *not* in any other capacity.  In ruling on defendants' motions to dismiss, this Court noted that "Plaintiffs have disclaimed any cause of action against Retail Pharmacies in their capacity as retailers or dispensers of opioids" and held that "the Retail Pharmacies may only be held liable as distributors."  Dkt. No. 1203 at 2.  Since Walgreens transitioned distribution of controlled substances to ABDC as its third-party vendor, any alleged "malfeasance" arising out of Walgreens' equity ownership in ABDC would go solely to distribution claims against ABDC and cannot possibly give rise to any claim against Walgreens.  The Court should preclude any effort by Plaintiffs to confuse the jury on this issue.  *See Sanco, Inc. v. Ford Motor Co.*, 771 F.2d 1081, 1087 (7th Cir. 1985) (affirming exclusion of

evidence that only supported a theory plaintiffs did not assert at trial); *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1217 (D. Kan. 2008), *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (admissibility requires showing that evidence relates "to the plaintiff's circumstances and theory of the case").

*Third*, allowing plaintiffs to offer evidence and argument about Walgreens' ownership interest in ABDC would be unfairly prejudicial to Walgreens and will lead to jury confusion by suggesting that Walgreens somehow bears (or shares) responsibility for the distribution conduct of another defendant. This would warrant exclusion even if Walgreens *did* control ABDC. *See U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."). The risk of prejudice and confusion is far greater where Walgreens' ownership does not involve any control.

*Finally*, if such evidence and argument is not excluded, Walgreens will be forced to rebut any inference of control or influence by presenting evidence and testimony about the Framework Agreement, Shareholders Agreement, and Standstill Provisions. Such a distraction from the actual issues in these cases would be a manifest waste of the jury's limited time to consider and absorb an enormous evidentiary record in a matter of virtually unprecedented complexity. In addition, the Court has allotted defendants only 100 hours—just 12.5 hours to each of the remaining eight defendant families—for their *entire* defense, Dkt. No. 2594 at 1-2, leaving no time to waste on collateral issues like ABDC's corporate governance measures with respect to Walgreens' equity interest.

For all of these reasons, the Court should exclude any reference to Walgreens' equity ownership interest in ABDC.

## II. Motion No. W-2: To preclude evidence or argument about Walgreens' Florida DEA enforcement action and related settlement

Walgreens moves *in limine* to preclude plaintiffs from offering evidence or argument about a DEA enforcement action and administrative settlement agreement involving a single Walgreens distribution center in Florida that last shipped controlled substances to Ohio in 2007. Walgreens also moves to exclude reference to the $80 million Walgreens paid to the DEA to settle the DEA's allegations while litigation was pending and before any adjudication of the allegations by a court or other factfinder.

Plaintiffs allege that Walgreens improperly distributed prescription opioid medication to its retail pharmacy stores in Cuyahoga and Summit Counties and thereby contributed to an oversupply of opioids that caused them harm. Given their near-exclusive reliance in their complaint and summary judgment papers on allegations specific to Florida, it is apparent that plaintiffs intend to argue that the unproven (and disputed) allegations in an Order to Show Cause/Immediate Suspension Order issued to a Walgreens distribution center in Jupiter, Florida ("Florida OTSC") somehow show that Walgreens improperly distributed prescription opioid medications in Ohio.[2] Walgreens further anticipates that plaintiffs will suggest—and the jury may infer—that Walgreens' settlement of DEA's allegations is an admission of fault. Any such evidence or argument would be irrelevant and improper. Allowing plaintiffs to inject it into the trial would be unfairly prejudicial to Walgreens and confusing to the jury. It will lead to a

---

[2] Walgreens also moves to exclude evidence or argument about (1) Orders to Show Cause issued by DEA to six Walgreens pharmacies in Florida for alleged dispensing violations and (2) a 2011 settlement agreement involving alleged dispensing violations at a Walgreens pharmacy in California. In addition to the other arguments set forth in this motion, plaintiffs do not assert any *dispensing* claims against Walgreens in Track One, further eliminating any relevance and dramatically increasing the risk of unfair prejudice and confusion.

lengthy trial-within-a-trial about issues that have nothing to do with plaintiffs' Ohio distribution claims.  The Court should exclude it under Rules 402, 403, and 408.

*First*, this is exactly the kind of evidence that courts routinely reject under Rules 408 and 403.  Rule 408 directly "bars the admission of settlement agreements when offered 'to prove or disprove the validity . . . of a disputed claim.'"  *United States v. Tevis*, 593 F. App'x 473, 476 (6th Cir. 2014) (quoting Fed. R. Evid. 408).  Under Rule 408, evidence of both the existence and content of prior settlement agreements is inadmissible to prove liability on a later civil claim.  In *Hobart Corp. v. Dayton Power & Light Co.*, the court rejected plaintiffs' attempt to establish that the defendant had assumed certain liabilities because its corporate predecessor had made "admission[s]" in a settlement agreement resolving a separate case involving a different site.  2017 WL 5956911, *19-20 (S.D. Ohio Nov. 29, 2017).  Because plaintiffs were "attempting to use evidence of a prior settlement agreement to establish . . . liability and prove the validity of a disputed . . . claim," the evidence was "inadmissible under Rule 408."  *Id.* at *21.  As the court explained, "making the content of prior settlement agreements available for use in related litigation contravenes the very purpose of Rule 408."  *Id.*[3]

Evidence about settlement agreements is likewise inadmissible under Rule 403 as unduly prejudicial.  As the Sixth Circuit has recognized, "the potential impact of evidence regarding a settlement agreement with regard to a determination of liability is profound."  *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 800 (6th Cir. 2007).  The same is true here.  Were evidence of Walgreens' settlement with DEA admitted, the jury would likely conclude that

---

[3] Rule 408's clear bar on settlement evidence also serves to prevent the introduction of irrelevant evidence under Rule 402, since "disputes are often settled for reasons having nothing to do with the merits of a claim."  *Korn, Womack, Stern & Assocs., Inc. v. Fireman's Fund Ins. Co.*, 27 F.3d 566, 1994 WL 264263, at *6 (6th Cir. 1994); *see also Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 480 (6th Cir. 2007) ("[A] settlement offer or the fact of settlement negotiations is not direct evidence regarding the factual issues in a case.").

5

Walgreens must have acted improperly if it paid a significant sum of money to resolve DEA's allegations, without ever determining whether plaintiffs have proved their actual claims in this case.  No limiting instruction is sufficient to cure the resulting prejudice.  *Id.* at 805 (rejecting the proposition "that any amount of evidence supporting liability, . . . coupled with a limiting instruction . . . is sufficient to cure the wrongful admission" of settlement evidence).

The Florida OTSC is similarly inadmissible.  The document contains preliminary unproven allegations and improper legal conclusions, about a single distribution center in Florida, that were never tested in adversarial proceedings before an administrative law judge.  These very same characteristics have led courts to reject the suggestion that government "investigation[s]" or "sanctions" against one member of a corporate family are "indicative of [wrongdoing] on a company-wide scale," *Loos v. Immersion Corp.*, 762 F.3d 880, 889 (9th Cir. 2014), and to hold that "an SEC enforcement action" is "not evidence of fraud, or even negligence or mistake," *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2016 WL 7117455, at *11 (M.D. Pa. Dec. 7, 2016).  The Florida OTSC "do[es] not prove that any of the conduct described therein actually occurred or, if it did occur, the conduct was [unlawful]." *Chen v. Mayflower Transit, Inc.*, 315 F. Supp. 2d 886, 923 (N.D. Ill. 2004).  As for the Florida OTSC's legal opinions, "questions of law are not a proper subject for evidentiary proof."  *Id.*; *see also* Dkt. No. 2494 (granting in part defendants' motion to exclude opinions of James Rafalski as legal conclusions).

*Second,* the Florida OTSC and settlement agreement are irrelevant and misleading for a separate reason: plaintiffs have not established any evidentiary nexus, through expert testimony or otherwise, between distribution activity in Florida and either of the Track One counties.  It is not disputed that the distribution center in Florida that was the subject of the Florida OTSC did not distribute any controlled substances to Ohio after January 2007—years before any of the

6

events in Florida that led to the Florida OTSC.  Unsurprisingly, Plaintiffs and their experts do not identify a single allegedly "suspicious order" shipped from Florida into either Cuyahoga or Summit County.  Even if they had, Plaintiffs have never identified any even remotely similar issues involving Walgreens stores in Cuyahoga or Summit County, much less in the relevant time period.  Any hypothetical connection is attenuated beyond the point of speculation.

Whether the policies and procedures at the distribution center in Florida were the same as at other Walgreens distribution centers does not change the analysis.  Plaintiffs will have to prove at trial what the systems were at the relevant distribution centers that shipped prescription opioid medications to Walgreens pharmacies in Track One during the relevant time period.  They will also have to demonstrate that the systems at the relevant distribution centers did not comply with the law.  The DEA's disputed opinions about whether the systems at a Florida distribution center violated the law—at a time when that distribution center was not shipping to the Track One counties—are neither relevant nor proper.  *See Chen*, 315 F. Supp. 2d at 923.

*Finally*, if the Court were to permit evidence and argument regarding the Florida OTSC and subsequent settlement, Walgreens would be forced to introduce the evidence necessary to rebut the DEA's allegations, requiring a whole trial in itself.  In fact, prior to settlement, the allegations in the Florida OTSC were set to be tried *for 18 days* in a hearing before an administrative law judge in agency proceedings with hundreds of exhibits and dozens of fact and expert witnesses specific to the circumstances in Florida.  *See* **Exhibit C** (Notice of Hearing in DEA ALJ Proceedings); *see also* **Exhibit D** (Government Prehearing Statement); **Exhibit E** (Walgreens Prehearing Statement).  To litigate these factual disputes now, years later, would be a massive distraction and misuse of the jury's time.  Moreover, with eight defendants remaining in the Track One trial, and only 100 hours for all defendants to put on their defense, Dkt. No. 2594 at 1-2, there is simply no time for evidence related to collateral issues in other states.

7

The Court should exclude all evidence and argument relating to DEA's OTSC and Walgreens' subsequent settlement agreement.

### III.     Motion No. W-3: To preclude, e.g., evidence or argument referring to DEA witness Joseph Rannazzisi as the "60 Minute Man"

Walgreens moves *in limine* to preclude evidence or argument suggesting that former DEA Deputy Administrator Joseph Rannazzisi's credibility or character is bolstered by the fact of his appearance on 60 Minutes, in articles published by the Washington Post, or in reporting by any other news organization.  At deposition, plaintiffs' counsel repeatedly referred to Mr. Rannazzisi as the "60 Minute Man," going so far as to create a hand-drawn demonstrative "Roadmap" that started on "60 Minute Man Road," and continued from there to focus extensively on Mr. Rannazzisi's appearance on the television news program, as well as his interviews in the Washington Post.  *E.g.*, **Exhibit F**, Rannazzisi Dep. 376:19-377:9; 396:11-399:6.

Walgreens anticipates that plaintiffs may seek to paint Mr. Rannazzisi as an honest whistleblower by virtue of these news appearances, including in opening statement.  Such references would trade on the credibility of respected news organizations—and those organizations' purported commitment to finding and reporting the truth—to suggest that Mr. Rannazzisi is also credible by virtue of the fact that these organizations reported what he said.  (By the same token, the fact that 60 Minutes or any news article criticized a company or individual should not be used to impeach that person.)  That improperly invades the jury's role as factfinder to weigh the strength of the evidence.  It also threatens to mislead and confuse the jury in a way that is prejudicial to Walgreens and other defendants.  Any such evidence or argument should be excluded under Rule 403.

8

Dated: September 25, 2019

Respectfully Submitted,

 */s/ Kaspar Stoffelmayr*
Kaspar Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Matthew W. Brewer
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
matthew.brewer@bartlitbeck.com

Alex J. Harris
**BARTLIT BECK LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of September, 2019, the foregoing has been served via CM/ECF to all counsel of record.

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr

*Counsel for Walgreen Co. and Walgreen Eastern Co.*