# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

## HENRY SCHEIN, INC. AND HENRY SCHEIN MEDICAL SYSTEMS, INC.'S TRIAL BRIEF

This trial brief is intended to address the evidence and arguments that Henry Schein, Inc. ("HSI") and Henry Schein Medical Systems, Inc. ("HSMS") (HSI and HSMS collectively are referred to as the "Schein Defendants") anticipate Plaintiffs will attempt to present at trial. The Schein Defendants do not have the burden of proof of Plaintiff's allegations and reserve their rights to present or seek to exclude any evidence whether referenced or excluded in this trial brief based on and in light of the evidence, allegations, and arguments offered by Plaintiff.

HSI and HSMS are named defendants in the Summit County litigation only. Neither is named in the Cuyahoga County litigation. Significantly, HSMS is a medical technology company, which neither distributes nor sells medications (opioids or otherwise). While HSI distributes opioids, it does not market such medications other than to include them in HSI's product and pricing catalogues and lists – along with thousands of other products.

For the 2006 – 2018 time period, HSI sent 227 opioid orders[1] to customers located in Summit County. This distribution over the span of 13 years was limited to 33 individual

---

[1] Here, an "order" refers to a unique line item, even if purchased as part of the same shipment as another unique line item. Schein sent 212 shipments of opioids to customers located in Summit County.

prescribers (*i.e.*, physicians and dentists) and consisted of $24,405 in total sales.  To put this in perspective, HSI's *total* opioid sales into Summit County for the referenced 13-year period is *less than* some distributors' sales for *one month* to a *single Summit County pharmacy*.  Since 2013, HSI has not sold more than $239 worth of opioids into Summit County in any given year.  At no time during the relevant time period did HSI distribute opioids to retail or chain pharmacies, Internet pharmacies, or "pill mills."  From 2006 through 2014, HSI's market share of opioids sold into Summit County was 0.034% of opioid Dosage Units, or 0.008% of opioid Morphine Milligram Equivalents ("MMEs").[2]  Not surprisingly, Plaintiff's own experts have characterized HSI's limited distribution of opioids into Summit County as "*de minimis*," a point on which reasonable minds cannot differ.

      Plaintiff complains that of the 227 opioid orders that HSI shipped to Summit County, it reported no suspicious orders to DEA.  However, Plaintiff's own experts – who analyzed DEA's ARCOS data and did so at Plaintiff's counsel's direction to identify potentially problematic transactions – also did not identify a single suspicious order that HSI shipped to Summit County.  Nor could Plaintiff's experts identify a single pill distributed by HSI that was diverted.  Instead, Plaintiff contends in conclusory fashion (through its own, unverified interrogatory answer) that all of the 14 opioid orders that HSI shipped to a single doctor – Dr. Brian Heim – between August 2011 and June 2012 constitute "suspicious orders."  The Court noted in its order denying HSI's motion for summary judgment (Doc #2559) that Plaintiff's evidence "indicates Dr. Heim was

---

[2] In its order denying HSI's de minimis summary judgment motion (Doc #2559), the Court noted an apparent inconsistency between HSI's market share numbers pertaining to Dosage Units (0.034%) and MMEs (0.008%).  This apparent "discrepancy" is because and evidence of the fact that HSI's distribution of opioids consists primarily of opioids with low morphine concentrations – i.e., shipments of hydrocodone (a Schedule III CS until 2014) rather than shipments of Oxycodone or Fentanyl.

under indictment in Ohio for drug trafficking and evidence tampering *during that period*."  [Id. at 4 (emphasis added)].  That is not accurate.

First and foremost, HSI did not begin shipping orders of hydrocodone to Dr. Heim until *after* the Ohio Board of Pharmacy determined on its own initiative that Dr. Heim's medical license should be reinstated and Dr. Heim's DEA registration had been restored following a 1998 plea deal whereby Dr. Heim received medical care in lieu of incarceration.  Second, the time period during which HSI shipped opioids (limited to hydrocodone only) to Dr. Heim while he was under subsequent indictment amounted to less than 3 weeks – Dr. Heim was indicted on May 18, 2012 and HSI's last shipment of opioids to him was on June 5, 2012.  Third, Dr. Heim's indictment had nothing whatsoever to do with his use or misuse of opioid medications.  Fourth, Dr. Heim notably was not convicted of the crimes for which he was indicted.  Rather, he pled guilty to "Obstructing Official Business," which is a misdemeanor.  All of the other charges were summarily dismissed.  Finally, HSI cooperated fully with DEA in connection with its investigation of Dr. Heim.  DEA advised HSI in an email that, rather than withhold any future shipments of controlled substances to Dr. Heim, HSI was to *call* DEA should Dr. Heim attempt to place further orders.  Indeed, following Dr. Heim's indictment, DEA never commented on nor admonished HSI for any of its opioid shipments to Dr. Heim or its SOMs system.

The other prescriber to whom HSI distributed opioid medications and about whom Plaintiff complains is Dr. Adolph Harper.  Dr. Harper was convicted and sentenced for illegally distributing drugs to his purported "patients" by "using his DEA registration number and disguis[ing] these distributions as prescriptions."  To be clear, Dr. Harper's crimes involved fraudulent *prescriptions* and not the diversion of pills he received from HSI.  Notably, HSI had ceased distributing opioid

3

medications to Dr. Harper months before he began engaging in the illicit misconduct for which he was ultimately convicted.

In contrast to other defendants, no later than 1998, HSI adopted, implemented, and followed a general practice of "pending" or holding and not shipping potentially suspicious orders while conducting its due diligence investigation. This represents HSI's general practice for the past 21 years. The significance and commendability of HSI's longstanding and documented commitment to monitoring, reporting, and withholding shipment of suspicious orders is further underscored by the minuscule nature of HSI's opioid distribution business. Indeed, HSI's investment in its SOMs system is demonstrably robust when juxtaposed with having had less than $25,000 in total opioid sales in Summit County since 2006.

HSI's dedication to implementing an effective SOMs practice is further illustrated by its longstanding practice of delivering to DEA monthly excessive order reports and cancelled order reports continuously from the late 1990s until April 2015 when DEA advised HSI that it no longer wanted to receive the monthly excessive order reports. While Plaintiff complains that HSI's monthly cancelled order reports should have been submitted more promptly and/or when such orders were "discovered," this Court has already acknowledged that there is a reasonable difference of opinion as to what "when discovered" means, or what legal obligation(s) that phrase imposes.

Subject to and depending on the evidence presented by Plaintiff at trial, the Schein Defendants reserve their right to offer other and additional evidence and argument at trial not referenced herein.

Dated:  September 25, 2019

    Respectfully Submitted,

    */s/ John P. McDonald*
    John P. McDonald
    C. Scott Jones
    Lauren M. Fincher
    Brandan J. Montminy
    **LOCKE LORD LLP**
    2200 Ross Avenue, Suite 2800
    Dallas, TX 75201
    Tel: (214) 740-8000
    Fax: (214) 756-8758
    jpmcdonald@lockelord.com
    sjones@lockelord.com
    lfincher@lockelord.com
    brandan.montminy@lockelord.com

    *Counsel for Henry Schein, Inc. and Henry Schein Medical Systems, Inc.*

## **CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

    */s/ John P. McDonald*
    John P. McDonald