# Exhibit 6

```
 1          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF OHIO
 2                    EASTERN DIVISION
                       -  -  -
 3    IN RE:  NATIONAL            :  HON. DAN A.
      PRESCRIPTION OPIATE         :  POLSTER
 4    LITIGATION                  :  MDL NO. 2804
                                  :
 5    This document relates to:   :  Case No. 17-MD-2804
                                  :
 6    The County of Summit, Ohio  :
      Ohio et al. v. Purdue Pharma:
 7    L.P., et al., Case No.      :
      17-OP-45004                 :
 8                                :
      The County of Cuyahoga v.   :
 9    Purdue Pharma Purdue Pharma :
      L.P., et al., Case No.      :
10    18-OP-45090                 :
11                       -  -  -
12           - HIGHLY CONFIDENTIAL -
      SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
13
                       VOLUME I
14                       -  -  -
                    May 9, 2019
15
16           Videotaped deposition of
      CRAIG J. McCANN, Ph.D., CFA, taken
17    pursuant to notice, was held at the law
      offices of Morgan Lewis & Bockius, LLP,
18    1111 Pennsylvania Avenue, NW, Washington,
      D.C., beginning at 10:03 a.m., on the
19    above date, before Michelle L. Gray, a
      Registered Professional Reporter,
20    Certified Shorthand Reporter, Certified
      Realtime Reporter, and Notary Public.
21
                       -  -  -
22
           GOLKOW LITIGATION SERVICES
23     877.370.3377 ph | 917.591.5672 fax
                deps@golkow.com
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1            Q.     And, in fact, the data that
 2    you looked at for Cardinal went back
 3    farther in time than the data that you
 4    had for any other defendant, right?
 5            A.     Yes.
 6            Q.     Earlier today you've given
 7    testimony and it's set forth in your
 8    report, that whenever one of your methods
 9    flagged a transaction, then you would
10    flag every subsequent transaction from
11    that date going forward, correct?
12            A.     Yes.
13            Q.     And that flagging for
14    subsequent transactions was automatic,
15    right?
16            A.     Yes.
17            Q.     In other words, you didn't
18    do any further analysis of the subsequent
19    transactions to measure them in any way.
20    They were automatically flagged, right?
21            A.     Yes.
22            Q.     Given your use of this "flag
23    every subsequent transaction" approach,
24    the question of how far back in time
```

Highly Confidential - Subject to Further Confidentiality Review

 1   you're looking at a particular
 2   distributor's transactional data could
 3   have significant implications in terms of
 4   the total numbers of orders that are
 5   getting flagged under your methodologies,
 6   correct?
 7           A.    It's a little bit more
 8   subtle than that.  But I agree with the
 9   general implication, yes, that the
10   further back in time you go, if there's a
11   big increase over time in shipments,
12   you're flagging more orders for the
13   distributors that you go back further in
14   time with.
15           Q.    So if you're going back in
16   time all the way to 1996 for one
17   distributor, but you're only going back
18   in time to 2004 or 2005 or 2006 for
19   another distributor, you would expect
20   that under your approach where you're
21   flagging everything subsequent to a first
22   flagged transaction, that for the
23   distributor where you are going back
24   farther in time, under your

Highly Confidential - Subject to Further Confidentiality Review

```
 1   methodologies, you are going to end up
 2   flagging more transactions, right?
 3        A.   Again, it's a little bit
 4   more complicated, because it depends on
 5   the pharmacy turnover, you know, how long
 6   the relationship lasts between a
 7   distributor and a pharmacy.  And it
 8   depends on the general trend, up or down,
 9   in the data.  But in this application, I
10   think in general what you're saying is
11   correct.
12        Q.   And why is what -- to
13   anybody who may not be in the weeds of
14   this as much as we are, explain why what
15   I'm saying in general is correct?
16        A.   Well, as I've presented the
17   stylized fact, the amount of prescription
18   opioids increases significantly from 1997
19   to 2010 or '11.  We saw that in Section
20   10 of my report.
21             And if Cardinal Health, for
22   instance, and some other distributor,
23   Distributor B, both were shipping from
24   1997, but for some reason Distributor B
```

 1  only produced data from 2002 in
 2  discovery, we would start observing
 3  Distributor B's data at a higher level
 4  than the levels we first were observing
 5  Cardinal Health's shipments.
 6          And so the Cardinal Health
 7  shipments obviously before the
 8  Distributor B's data is produced, none of
 9  those get flagged, because there is no
10  data produced by Distributor B; whereas,
11  given my stylized hypothetical, a bunch
12  of the Cardinal Health shipments may be
13  flagged.
14          And then separate and apart
15  from that, because some of these
16  thresholds, at least with respect to the
17  first -- it doesn't have any impact on
18  two, three, four or five, I don't think.
19  But with respect to the first one, the
20  relationship, the first six months for
21  Cardinal Health and a pharmacy, is at a
22  lower level.  And so more of the
23  subsequent orders get flagged.
24       Q.    So it's fair to say that