**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br>*This document relates to:*<br>Track One Cases | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster |

# PLAINTIFFS' TRIAL BRIEF

## INTRODUCTION

Plaintiffs here present the Court with their "roadmap" for the trial, succinctly setting forth the claims Plaintiffs plan to try and the remedies they will seek. These remedies include past damages, future damages, and abatement, all of which Plaintiffs intend to provide through the testimony of County employees with knowledge of the Counties' damages and expert witnesses who have provided expert reports. As described below, *see* Point II, the Court's order separating the evidentiary proceeding on nuisance abatement from the jury trial on Plaintiffs' damages claims has altered the way Plaintiffs can present their damages evidence. Plaintiffs therefore plan to provide the Defendants and the Court with amended/supplemental expert reports reflecting the altered structured of the trial no later than the close of business on Monday, September 30. These amended/supplemental reports, and such supplemental depositions of the experts involved as may be appropriate, will allow Plaintiffs to present to the jury evidence of future damages without including the costs of a full abatement plan, while still presenting to the Court a complete plan to abate the opioid epidemic through an equitable abatement remedy.

## I. PLAINTIFFS' CLAIMS TO BE TRIED

At trial, Plaintiffs will proceed on six of the claims for relief set forth in their Complaints: (1) common-law absolute public nuisance; (2) federal RICO with respect to the Opioid Marketing

1

Enterprise; (3) federal RICO with respect to the Opioid Supply-Chain Enterprise; (4) Ohio Corrupt Practices Act ("OCPA") with respect to the Opioid Marketing Enterprise; (5) OCPA with respect to the Opioid Supply-Chain Enterprise; and (6) civil conspiracy under Ohio law.

On their nuisance claim, Plaintiffs will show that the opioid epidemic in Summit and Cuyahoga Counties constitutes an unreasonable interference with public health, public safety, public peace or public comfort and, in particular, that the interference is unreasonable because it is significant, or is of a continuing nature or has produced a permanent or long-lasting effect upon the public right, or that the underlying conduct giving rise to is contrary to law. *See Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480, ¶ 8, 95 Ohio St. 3d 416, 419 (Ohio 2002); Restatement (Second) of Torts § 821B (1979). Plaintiffs will also show that Defendants' conduct was intentional and that it was a "substantial factor" in bringing about or maintaining the nuisance and not a remote cause. *See Pang v. Minch*, 53 Ohio St.3d 186 (1990); *Halloran v. Barnard*, 2017-Ohio-1069, ¶ 5. Plaintiffs note that, in its rulings on the parties' motions for summary judgment, this Court identified as disputed issues of fact for trial (1) whether a public nuisance exists, *see* Doc. #2672 at 4; (2) whether the opioid epidemic interferes with public health and public safety rights, *see* Doc. #2578 at 4; (3) whether Defendants' conduct proximately caused Plaintiffs' injuries, *see id.* at 5; and (4) whether Defendants' conduct was intentional, *id.* at 5-7.

With respect to each of their federal RICO claims, Plaintiffs will proceed under both 18 U.S.C. § 1962(c), which makes it unlawful to "conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity," and under 18 U.S.C. § 1962(d), which makes it unlawful to conspire to violate any of the other subsections of § 1962. With respect to the Opioid Marketing Enterprise, Plaintiffs will rely on predicate acts of mail fraud and wire fraud to establish a "pattern of racketeering." With respect to the Opioid Supply Chain Enterprise, Plaintiffs will again rely on predicate acts of mail fraud and wire fraud, and will also rely on violations of the Controlled Substances Act. Plaintiffs will also establish that the Defendants' conduct proximately

caused them to suffer injury in their business or property. *See* 18 U.S.C. § 1964(c). Plaintiffs' OCPA claims parallel their RICO claims and Plaintiff intend to rely on the same proof for the RICO and OCPA claims. This Court denied Defendants' motions for summary judgment on these claims and held that Plaintiffs' evidence creates disputed issues of fact for trial. *See* Doc. #2580.

On their civil conspiracy claim, Plaintiffs will show that Defendants participated in a malicious combination, one result of which was the commission of one or more a wrongful or unlawful acts that damaged the Plaintiffs. *See Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415; *LeFort v. Century 21-Maitland Realty Co.* (1987), 32 Ohio St.3d 121. In denying Defendants' motions for summary judgment on this claim, the Court found that Plaintiffs submitted sufficient evidence that a reasonable juror could conclude that Defendants had engaged in "a conspiratorial agreement or malicious combination." *See* Doc. #2562.

## II.  REMEDIES

With respect to their RICO, OCPA, and Ohio civil conspiracy claims, Plaintiffs seek, and will introduce evidence to support, an award of damages, which includes both past damages and future damages. With respect to their nuisance claim, Plaintiffs seek an equitable abatement remedy, pursuant to which Defendants will be required to fund the implementation of an abatement plan to be approved and supervised by the Court. In support of this plan, Plaintiffs previously provided the expert report and proposed testimony of Prof. Jeffrey Liebman.

With respect to the amount of past damages suffered by Summit and Cuyahoga Counties, Plaintiffs will offer expert testimony from Prof. Thomas McGuire, who performed an analysis of the dollar value of the harms suffered by the Plaintiffs as a result of Defendants' conduct, as well as the testimony of County employees with knowledge of those harms.[1]

---

[1] Plaintiffs' evidence of past damages builds on the causation opinions offered by Prof. Meredith Rosenthal, Prof. Jonathan Gruber, and Prof. David Cutler, which together quantify the extent to which Plaintiffs' past expenditures were the result of Defendants' unlawful conduct. Once Plaintiffs have established that Defendants' conduct caused these harms, no separate proof of causation is necessary for future damages; as discussed below, Plaintiffs need only show that they are

3

Plaintiffs' injuries on their RICO, OCPA, and civil conspiracy claims, however, also include ongoing damages that arise from the existing harms but, particularly in the absence of abatement, will be incurred in the future.  Such damages are available in connection with Plaintiffs' legal claims.  Where a RICO plaintiff "has already suffered injury and will continue to suffer that same injury in the future, an award of past and future damages may be entirely appropriate, subject of course to the normal standards governing such awards." *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1103 (2nd Cir. 1988).  In this regard, "'future damages arising from defendants' conduct are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable.'" *Id.* at 1104; *see also* Federal Jury Practice and Instructions § 161.90 (August 2018 Update) ("future damages established with reasonable certainty" are recoverable under a civil RICO claim).  The same is true under Ohio law. *See Galayda v. Lake Hosp. Sys., Inc.*, 1994-Ohio-64, 71 Ohio St. 3d 421, 425 ("In Ohio, a plaintiff is entitled to an award of damages to compensate him for losses which he is reasonably certain to incur in the future."); *Daniels v. Northcoast Anesthesia Providers, Inc.*, 2018-Ohio-3562, ¶ 57 (Ct. App. 2018).

Plaintiffs' future damages overlap with, but are separately quantifiable from, the funds needed to pay for an abatement plan (although a set-off may be necessary to avoid double-recovery).[2] Because Plaintiffs expected to try their legal claims together with their equitable abatement claim, however, Plaintiffs did not separate out the portion of their future expenditures that constitute future damages.  On September 16, the Court suggested that it might bifurcate the trial and hear evidence pertaining to nuisance abatement in a separate proceeding from the trial in which Plaintiffs will present their damages evidence.  On September 24, 2019, the Court ordered such bifurcation. *See* Doc. #2629.

---

reasonably like to incur future damages from the same harms they have proven, and that the amount of such future damages is reasonably certain.

[2] Although there is some overlap between future damages and abatement, the two remedies are analytically and quantitatively different.  The analytic distinction is easily seen in the context of nuisances involving toxic exposures such as air pollution or water pollution. In that context, future damages represent the ongoing costs of treating persons exposed, including both new exposures (if the pollution is ongoing) as well as continuing treatment for chronic conditions caused by previous exposure.  By contrast, abatement costs would represent the costs of removing the toxic substance to stop future exposure.  This case is not perfectly analogous, but the distinction between responding to problems as they arise and comprehensively addressing the underlying source of the problem is useful to bear in mind.

Prior to September 16, Plaintiffs had no notice that the Court intended to hear evidence pertaining to legal remedies separately from evidence pertaining to equitable abatement and had not planned to separate the evidence pertaining to those remedies.

Because Plaintiffs' legal damages must now be presented in a separate proceeding from their equitable abatement plan, Plaintiffs will submit one or more amended/supplemental expert reports no later than the close of business on Monday, September 30. The purpose of such supplemental reports will be separately quantify costs already identified in Plaintiffs' abatement plan and/or damages report that also constitute future damages and to explain a methodology for distinguishing between the two. Plaintiffs thereafter will make available for additional deposition time any expert whose report is amended or supplemented.[3] This will allow Plaintiffs to present their evidence in accordance with the bifurcated structure established by the Court.

The need to separate the future damages from the abatement plan for presentation at separate proceedings arises because of the overlapping nature of Plaintiffs' future costs as damages and in abatement.  As the Court well knows, and as the testimony of Prof. McGuire and of witnesses from Summit and Cuyahoga Counties will establish, the Counties have incurred costs in responding to the opioid epidemic.  Plaintiffs believe – and the evidence at trial will show – that this responsive approach is not enough.  Unless Plaintiffs can go further, and address the ongoing causes of the epidemic, take proactive measures with respect to drug treatment and harm reduction, and otherwise put into place a comprehensive program to treat patients with opioid use disorder and to support communities affected by the crisis, opioid misuse and addiction will continue to plague the Counties at unprecedented levels and with tragic consequences, and continue to cause quantifiable harm to them. Some measures are both ongoing future damages (because Plaintiffs will have to pay for them in any event) and part of any comprehensive plan to abate the problems of opioid addiction (because they

---

[3] Plaintiffs will not offer reports or testimony from new experts, but rather amended/supplemental reports from previously identified experts limited to the issue of parsing future damages from equitable abatement.

5

will assist in abating the epidemic). Other measures, however may be part of an abatement plan, because they are required for a truly effective redress of the problem, but cannot be considered future damages because the Counties will not be in a positon to provide these measures outside the context of an abatement remedy. It is for this reason (among others) that legal damages are inadequate and Plaintiffs seek equitable relief in the form of abatement. *See People v. ConAgra Grocery Products Co.*, 17 Cal.App.5th 51 (2017) (differentiating nuisance damages from an abatement fund), *reh'g denied* (Dec. 6, 2017), *review denied* (Feb. 14, 2018), *cert. denied*, 139 S. Ct. 377 (2018), and c*ert. denied sub nom. Sherwin-Williams Co. v. California*, 139 S. Ct. 378 (2018); *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982) (funding for part of a remedial program of abatement distinguished from damages).

Nonetheless, although Plaintiffs' legal remedy is inadequate, it is not non-existent. This is as true for a limited category of future damages as it is for past damages. That is, in the absence of a true abatement plan, Plaintiffs will continue to incur costs of addressing the epidemic, just as they have in the past. Unless the problem is addressed proactively and comprehensively (as Plaintiffs' abatement plan proposes to do), individuals will continue to misuse and become addicted to opioids at historically high levels, opioid users will continue to overdose and die at unprecedented rates, and opioid orphans will continue to require unprecedented levels of social services. Abatement will be *more* effective in combating the problem, because it will aid in preventing new cases of addiction, in preventing overdoses, and preventing deaths, and treat more addicts, but in its absence, ongoing services will be needed to address the problem that already exists.

Plaintiffs' existing expert reports identify the kinds of costs Plaintiffs have incurred in the past and identify and describe an abatement plan for the future. That abatement plan necessarily includes items that would also be incurred as damages. What the reports do not do is separate the future damages from the abatement plan. Plaintiffs' amended/supplemental expert reports will separate these costs in a manner suitable for presentation in separate proceedings, allowing the jury to hear

evidence pertaining only to future damages, and the Court to hear evidence concerning the full abatement plan.

Dated:  September 25, 2019

                                                Respectfully submitted,

                                                /s/Paul J. Hanly, Jr.
                                                Paul J. Hanly, Jr.
                                                SIMMONS HANLY CONROY
                                                112 Madison Avenue, 7th Floor
                                                New York, NY 10016
                                                (212) 784-6400
                                                (212) 213-5949 (fax)
                                                phanly@simmonsfirm.com

                                                Joseph F. Rice
                                                MOTLEY RICE
                                                28 Bridgeside Blvd.
                                                Mt. Pleasant, SC  29464
                                                (843) 216-9000
                                                (843) 216-9290 (Fax)
                                                jrice@motleyrice.com

                                                Paul T. Farrell, Jr., Esq.
                                                GREENE KETCHUM, LLP
                                                419 Eleventh Street
                                                Huntington, WV 25701
                                                (304) 525-9115
                                                (800) 479-0053
                                                (304) 529-3284 (Fax)
                                                paul@greeneketchum.com

                                                *Plaintiffs' Co-Lead Counsel*

                                                /s/ Peter H. Weinberger
                                                Peter H. Weinberger (0022076)
                                                SPANGENBERG SHIBLEY & LIBER
                                                1001 Lakeside Avenue East, Suite 1700
                                                Cleveland, OH  44114
                                                (216) 696-3232
                                                (216) 696-3924 (Fax)
                                                pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX 77069-3804
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Lead Trial Counsel*

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

Linda Singer
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
(202) 386-9626 x5626
(202) 386-9622 (Fax)
lsinger@motleyrice.com

*Counsel for Plaintiff Summit County, Ohio*