# **EXHIBIT 8**

Highly Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF OHIO
 2                    EASTERN DIVISION
 3
     IN RE: NATIONAL           )
 4   PRESCRIPTION              )  MDL No. 2804
     OPIATE LITIGATION         )
 5   _____   )  Case No.
                               )  1:17-MD-2804
 6                             )
     THIS DOCUMENT RELATES     )  Hon. Dan A.
 7   TO ALL CASES              )  Polster
 8
                   FRIDAY, JULY 12, 2019
 9
       HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
10                CONFIDENTIALITY REVIEW
11                      VOLUME II
                          - - -
12
13          Videotaped deposition of Michael
14   Mapes, held at the offices of The Mining
15   Exchange, A Wyndham Grand Hotel & Spa, 8
16   South Nevada Avenue, Colorado Springs,
17   Colorado, commencing at 8:01 a.m., on the
18   above date, before Carrie A. Campbell,
19   Registered Diplomate Reporter and Certified
20   Realtime Reporter.
21
22
23                        - - -
              GOLKOW LITIGATION SERVICES
24        877.370.3377 ph | 917.591.5672 fax
                   deps@golkow.com
25
```

```
 1    lawyer had you tell the jury that you'd never
 2    met her before, the truth of the matter is
 3    you've been working with their lawyers,
 4    haven't you?
 5               MS. MCCLURE:  Form.
 6               THE WITNESS:  Yes.
 7    QUESTIONS BY MR. LANIER:
 8         Q.    So you may not have met that
 9    lawyer for AmerisourceBergen, but you were
10    working for other lawyers, weren't you?
11         A.    Yes.
12         Q.    And that's all part of what you
13    did with the company as their man helping
14    them with the diversion control program,
15    right?
16               MS. MCCLURE:  Form.
17               THE WITNESS:  That's correct.
18    QUESTIONS BY MR. LANIER:
19         Q.    Well, we'll get into that in a
20    little bit, but I want to start out with a
21    roadmap and show you what I plan on asking
22    you today.
23               Okay?
24         A.    Okay.
25         Q.    I call your roadmap -- that's
```

```
 1    you, right there, Michael Mapes, right?
 2         A.    Yes.
 3         Q.    Tried to get a good picture.
 4               You okay with that picture?
 5         A.    It is what it is.
 6         Q.    Oh, it's not bad.
 7               How old do you think that
 8    picture is?
 9         A.    Three years maybe.
10         Q.    Okay.  You shaved for that
11    picture.  You didn't shave for the jury
12    today, did you?
13         A.    I did not.
14         Q.    That's all right.
15               U-turn road.
16               Your career has taken a lot of
17    twists and turns, hasn't it?
18               MS. MCCLURE:  Form.
19               THE WITNESS:  In what regard?
20    QUESTIONS BY MR. LANIER:
21         Q.    Well, I mean, you're all over
22    the map.  You've done work for the
23    government.  You've done work for industry,
24    lots of different parts of industry.  You've
25    got companies that you've kind of helped
```

1  start and help get off the ground.  You've

2  got -- you claim expertise in a lot of

3  different areas, right?

4              MS. MCCLURE:  Form.  Compound.

5       Characterization.

6              THE WITNESS:  I have experience

7       in a lot of areas, yes.

8  QUESTIONS BY MR. LANIER:

9       Q.     And so here's what I'd like to

10 do.  I'd like to look at this road, and I'd

11 like to consider your personal background

12 first.  We'll make a stop there.

13             Then we're going to make a stop

14 at your time with the DEA, and then we're

15 going to make a stop at your time doing work

16 for industry.

17             And let's see if maybe your

18 testimony kind of rotates around based upon

19 where you are and who you're working for.

20             Okay?

21      A.     Okay.

22             MR. BENNETT:  Objection.

23 QUESTIONS BY MR. LANIER:

24      Q.     Now, in that regard, the first

25 stop we're going to make is personal

```
 1    background.  And I'm going to keep a sheet of
 2    your personal background, and we're going to
 3    mark these documents that I'm showing to the
 4    jury as an exhibit so that both sides have
 5    them and we've got the benefit of them as a
 6    demonstrative exhibit for the jury.
 7              Your personal background, you
 8    gave us a lot of it yesterday, but what I'd
 9    like to do is sort of go in and look at you
10    from another angle.
11              Are you familiar with the
12    concern that has been expressed about a
13    revolving door between government and
14    industry?
15         A.   Yes.
16         Q.   And a revolving door -- you
17    know, most doors are just a door that's, you
18    know, this, with a doorknob.  But a revolving
19    door is one of those doors that tends to
20    revolve around, such that you've got an
21    ability to go in one way and out the other.
22              Do you follow me?
23         A.   Yes.
24         Q.   And the concern has been one
25    because there seem to be people who work for
```

```
 1     the DEA and spend their time making
 2     connections, learning the ins and outs,
 3     learning the niceties of how things work, but
 4     then they'll retire or take their pension
 5     from the DEA and go to work for industry, the
 6     very companies that they were supposed to be
 7     looking over, right?
 8                MS. MCCLURE:  Form.
 9                MR. EPPICH:  Objection.
10           Argumentative.
11                THE WITNESS:  And could you
12           restate the question again?
13     QUESTIONS BY MR. LANIER:
14           Q.    Sure.
15                 The reason the revolving door
16     is a concern is because there seems to be a
17     pattern of folks working for the DEA who then
18     go to work for the very industries they were
19     supposed to be overseeing, correct?
20                MS. MCCLURE:  Form.
21           Argumentative.
22                THE WITNESS:  Yes, I went to
23           work with the industries after
24           retiring from DEA.
25
```

```
 1     going to work for industry, didn't you?
 2              MS. MCCLURE:  Form.
 3              THE WITNESS:  Yes, I did work
 4     for industry.
 5   QUESTIONS BY MR. LANIER:
 6       Q.     In fact, there's an expression
 7   that y'all use; you were hired up --
 8              MS. MCCLURE:  Form.
 9   QUESTIONS BY MR. LANIER:
10       Q.     -- by industry, weren't you?
11              MS. MCCLURE:  Foundation.
12              THE WITNESS:  I haven't heard
13     that expression.
14   QUESTIONS BY MR LANIER:
15       Q.     You've never heard the
16   expression "hired up"?
17       A.     No, I haven't.
18       Q.     Okay.
19              MS. MCCLURE:  Mr. Lanier,
20     consistent with the practice during
21     the Rannazzisi deposition, I do note
22     that you are writing information on
23     the sheet of paper you have in front
24     of me in advance of asking the witness
25     the question and in advance of the
```

```
 1        witness confirming that yes or no he's
 2        familiar with the concept of "hired
 3        up."
 4                So I would request, again, that
 5        you refrain from writing information
 6        on the sheet which suggests that it
 7        is, in fact, information obtained from
 8        Mr. Mapes until Mr. Mapes has, in
 9        fact, provided you with that
10        information.
11                MR. LANIER:  I'm allowed --
12        he's an adverse witness.  I'm allowed
13        to lead him, so I'm allowed to write
14        questions that may be leading in that
15        way.
16                I'm also allowed to write any
17        note I want to in terms of "look at
18        this, please, and tell me if you agree
19        with that statement."
20                You show him a document; I show
21        him a demonstrative.  Nobody, no
22        lawyer in any trial I've ever been in,
23        has to ask questions before they use a
24        demonstrative or show a demonstrative
25        to a witness, and this is no
```

```
 1           different.
 2                    MS. MCCLURE:  I continue to
 3           maintain my objection.
 4                    MR. LANIER:  Okay.
 5    QUESTIONS BY MR. LANIER:
 6           Q.       So you've not heard that
 7    expression "hired up" by industry?
 8           A.       No, I have not.
 9           Q.       All right.  Let's see if we can
10    find some of where it may come from.
11                    You read the New York -- I mean
12    the Washington Post ever?
13           A.       I have in the past.
14           Q.       Are you familiar with the
15    article "The Drug Industry's Triumph Over the
16    DEA"?  I'm going to mark it as Exhibit
17    Number 21.
18                    (Mapes Exhibit 21 marked for
19           identification.)
20    QUESTIONS BY MR. LANIER:
21           Q.       Put it up here for the jury to
22    see.
23                    Are you familiar with this
24    article, sir?
25                    MS. MCCLURE:  Mr. Lanier, while
```

```
 1     Marino Bill?
 2              MS. MCCLURE:  Vague.
 3              THE WITNESS:  No.
 4     QUESTIONS BY MR. LANIER:
 5         Q.   It was subject to that article
 6     that we looked at earlier that had the yellow
 7     dots, the Marino Bill -- I think there's just
 8     one N in Marino -- that took away some of the
 9     powers of the DEA.
10              You're not familiar with that?
11              MS. MCCLURE:  Form.
12          Foundation.  Mischaracterizes.
13              THE WITNESS:  I had not heard
14          of that name, but I've heard of a bill
15          that has different requirements than
16          they had in the past.
17     QUESTIONS BY MR. LANIER:
18         Q.   So you don't have any knowledge
19     of whether or not the DEA still has today all
20     of the same tools at its disposal that it had
21     when you were there?
22         A.   No, I don't know.
23              MR. LANIER: Okay.  Brings me
24          to the end of the road.  I'll pass the
25          witness.
```

```
 1                  MS. MCCLURE:  Off the record.
 2                  VIDEOGRAPHER:  We're going off
 3         record.  The time is 11:36.
 4                  (Mapes Exhibit 32 marked for
 5         identification.)
 6                  (Off the record at 11:36 a.m.)
 7                  VIDEOGRAPHER:  We're going back
 8         on the record.  Beginning of Media
 9         File Number 6.  The time is 12:59.
10                       RE-EXAMINATION
11   QUESTIONS BY MS. MCCLURE:
12         Q.     Good afternoon, Mr. Mapes.
13         A.     Good afternoon.
14         Q.     Just a reminder, my name is
15   Shannon McClure.  I represent
16   AmerisourceBergen Drug Corporation.  I just
17   have a few follow-up questions for you today.
18                  I'm going to be talking about
19   certain things that Mr. Lanier talked to you
20   about, so it may seem less like the roadmap
21   that Mr. Lanier had and a little more
22   scattershot.  So if at any time you'd like me
23   to clarify a little bit more about where I
24   am, that's the nature of conducting this part
25   of the examination, which is a response to
```

```
 1                  (Mapes Exhibit 35 marked for
 2          identification.)
 3                  VIDEOGRAPHER:  Going off record
 4          at 1:40.
 5             (Off the record at 1:40 p.m.)
 6                  VIDEOGRAPHER:  We're going back
 7          on record.  Beginning Media File 8.
 8          The time is 1:59.
 9                  RE-EXAMINATION
10   QUESTIONS BY MS. FITZPATRICK:
11          Q.    Good afternoon, Mr. Mapes.  We
12   met briefly yesterday, but my name is Laura
13   Fitzpatrick, and I'm here on behalf of the
14   plaintiffs, and I'm going to take over for
15   Mr. Lanier for a little bit.
16                  I want to just kind of reorient
17   you and the jury here.  I'd like to talk --
18   just a second.
19                  I'd like to kind of redirect
20   us, call this my redirect roadmap that
21   Ms. Lanier made for me here.
22                  I'd like to take us from the
23   muddy waters that you were brought into over
24   the last, I think, 45 minutes or so, back on
25   to what I'm going to call clarity road.
```

```
 1                    Okay?
 2           A.       Okay.
 3           Q.       All right.  Now, you were shown
 4   by the ABDC lawyer the document that we've
 5   referred to as the methamphetamine document,
 6   and there were some suggestions that ABDC had
 7   a policy that the DEA approved of.
 8                    Do you recall that?
 9                    MS. MCCLURE:  Form.
10                    THE WITNESS:  Yes.
11   QUESTIONS BY MS. FITZPATRICK:
12           Q.       Okay.  Now, would you agree
13   with me that a policy is no good if a company
14   doesn't follow it?
15           A.       Yes.
16           Q.       And would you agree that if
17   someone doesn't put their seat belt on and
18   they get into a car wreck, they may not be
19   protected by the seat belt?
20                    MS. MCCLURE:  Form.
21                    THE WITNESS:  Correct.
22   QUESTIONS BY MS. FITZPATRICK:
23           Q.       Okay.  Thank you.
24                    Now, with respect to
25   Ms. McClure's questions to you about the ABDC
```