**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track One Cases | |

# PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR ACCESS TO JURY SELECTION RECORDS AND INFORMATION

September 25, 2019

Plaintiffs submit this response in opposition to Defendants' Motion for Access to Jury Selection Records and Information (ECF No. 2623).

## ARGUMENT

The Court should reject Defendants' sweeping demand for access to jury selection records and information, including completed questionnaires, either in its entirety or else in substantial part. The general rule is that the "contents of records or papers used by the jury commission or clerk in connection with the jury selection process **shall not be disclosed** . . . until after . . . all persons selected to serve as jurors before the master wheel was emptied have completed such service." 28 U.S.C. § 1867(f) (emphasis added).

This rule has two exceptions, permitting disclosure only "pursuant to the district court [jury selection] plan or as may be necessary to the preparation or presentation of a motion under subsection (a), (b), or (c) of this section[.]" *Id.* Defendants rely only upon the second exception, asserting that they anticipate filing a motion under subsection (c), which permits a civil litigant to "move to stay proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the petit jury." 28 U.S.C. § 1867(c). This assertion, however, is completely baseless and should be rejected.

Defendants assert that a motion for failure to comply with statutory juror selection procedures is warranted in this case because, they allege, the Jury Department has sent out 1,000 pre-screening questionnaires, of which approximately 725 were returned, of which approximately 500 potential jurors have been excused. *See* Motion at 2. Nothing in this description suggests a violation, particularly in the circumstances of this case involving a seven-week jury trial.

The Jury Selection and Service Act (JSSA), 28 U.S.C. §§ 1861-68, provides that "any person summoned for jury service may be . . . excused by the court, or by the clerk, under supervision of the court, if the court's jury selection plan so authorizes, upon a showing of undue hardship or

1

extreme inconvenience . . . ."  28 U.S.C. § 1866(c)(1).  This Court's Juror Selection Plan likewise provides that "temporary excuses on the grounds of undue hardship or extreme inconvenience may be granted by the court, and, under the court's supervision, by the clerk of court."  U.S.D.C. N.D. Ohio Juror Selection Plan, § O.  Here, it is to be expected that a significant majority of potential jurors would invoke this process and be excused by the Court from a seven-week trial for the undue hardship or extreme inconvenience this extended service would cause them.

This is precisely what occurred in *United States v. Barnette*, 800 F.2d 1558 (11th Cir. 1986).  In *Barnette*, the district court had to seat a jury for a three-month criminal trial of seven defendants charged with conspiracy to defraud the United States Army and Navy and other related crimes.  *See id.* at 1559-60.  The district court clerk followed a process whereby "400 prospective jurors [were] summoned[;] 360 responded to the questionnaire; 249 requested pre-trial excusals due to hardship; [and] the court granted 245 of these requests."  *Id.* at 1567.  Even though nearly 70% of those responding (and 98% of those requesting) were excused, the Eleventh Circuit held that there was no impropriety because the district court had individually considered and ruled upon each hardship request.  *See id.* at 1568.  Here, too, there is no reason to believe based on the strikingly similar facts presented (as to both trial-length and excuse-rate) that anything different has occurred.[1]

Even if there were, and some disclosure of potential juror selection information were warranted, Defendants' motion still would sweep far too broadly.  Defendants demand production of Court records related to the initial potential juror selection process, a list of names selected and extensive demographic information for each, all correspondence with prospective jurors, all completed and returned pre-qualification forms and/or questionnaires, all documents related to

---

[1]  It also is notable that Defendants, who here complain of an allegedly insufficient jury pool that was caused by the hardships of service in a seven-week trial, have previously moved the Court for *even more* trial time.  *See* Motion for Additional Trial Time (ECF No. 2133) at 1-2 ("[T]he Court has reserved seven weeks for trial.  Respectfully, if any portion of this case remains after summary judgment, that is not enough time for a fair presentation of the evidence.").  One wonders if there is any trial structure that would satisfy Defendants' conceptions of their own due process rights.

decisions to excuse prospective jurors, all documents reflecting the Court's juror selection policies and procedures, and all other records used in connection with the jury selection process in this case. *See* Motion at 3-4 (items (a)-(l)). The cases Defendants cite, however, provide for access to no more than jury lists and related demographic information.

In *Test v. United States*, 420 U.S. 28 (1975), the Supreme Court addressed a motion "requesting permission to inspect and copy the jury lists pertaining to the grand and petit juries in the instant indictment." *Id.* at 29 (internal quotation marks omitted). The defendant's right to access the jury lists was not disputed in the Supreme Court. *See id.* ("In its brief and oral argument before this Court, the United States has agreed that petitioner was erroneously denied access to the lists and urges us to remand the case."). In ordering that the defendant be given access to the jury lists on remand, the Court recognized that "a litigant has essentially an *unqualified* right to inspect jury lists." *Id.* at 30 (emphasis in original). The Court thus addressed no type of records other than jury lists because no other type of record was sought.[2]

The Sixth Circuit and other courts since have held that the "*unqualified* right" recognized in *Test* is a right solely for access to jury lists and related demographic information and not to any other records or information. In *United States v. McLernon*, 746 F.2d 1098 (6th Cir. 1984), the Sixth Circuit addressed several defendants' contention that "the district court erred in denying their motion to inspect and copy the names, addresses and questionnaires of the grand jurors who returned the indictments against them." *Id.* at 1122. The Court rejected this argument, holding that the defendants' "unqualified right to inspection was satisfied by disclosure of the Master Lists and the

---

[2] Defendants also cite *United States v. Royal*, 100 F.3d 1019 (1st Cir. 1996), which echoes *Test* in recognizing an "'unqualified right to inspect jury lists.'" *Id.* at 1025 (quoting *Test*, *supra*). The First Circuit also held in *Royal* that the remedy for a district court's erroneous denial of access is not reversal of a conviction or judgment and a new trial, but rather remand with instructions to allow access to the records sought in order to support a possible motion to strike the jury venire. *See id.* at 1025-26.

relevant demographic data about the general pool from which the grand jurors were selected." *Id.* at 1123; *see also United States v. Wickline*, 2008 U.S. Dist. LEXIS 122158, at *6-7 (S.D. Ohio May 20, 2008) ("In the Sixth Circuit, disclosure of the 'Master Lists and the relevant demographic data about the *general pool* from which the specific grand jurors were selected' is generally sufficient.  But the names, addresses, [and] demographics of specific jurors who returned the indictment, as well as the transcript of the grand jury selection proceedings, are not necessary to determine whether the grand jury was selected at random from a fair cross-section of the community.") (quoting *McLernon*, *supra*) (emphasis in citing opinion); *United States v. Montini*, 2003 U.S. Dist. LEXIS 28554, at *24 (E.D. Mich. June 10, 2003) ("The Court does not agree with Defendants' assertion that they have an unqualified right to any and all records in the Court's possession.").

In *United States v. Davenport*, 824 F.2d 1511 (7th Cir. 1987), the Seventh Circuit similarly rejected a defendant's demand for "the completed Juror Qualification Questionnaires so that a meaningful review of the potential jurors can be conducted by the Defendant." *Id.* at 1514 (internal quotation marks omitted).  The court held that these were outside the "*unqualified* right" recognized by the Supreme Court in *Test*, *supra*, because "[n]o documents were involved in *Test* other than jury lists." *Id.*  The Seventh Circuit then held that "the contents of records or papers used by the clerk shall not be disclosed unless those records' contents are shown to be "necessary" for the preparation of a motion" under 28 U.S.C. § 1867, and found that the defendant had not shown "why the statutory prohibition of disclosure needs to be breached" for the completed questionnaires. *Id.* at 1515.  Finally, the Court explained why disclosure of the completed questionnaires not only was unauthorized, but also would be harmful both to prospective jurors and to the fairness of the proceedings in which these records were sought:

> What defendant really desires, and what he particularly asked for in his motion, were the juror questionnaires completed and returned to the clerk.  Those questionnaires contain prospective jurors' home addresses and other personal information.  To give the defendant an absolute right of routine access to all materials would be an

4

amendment of the [JSSA].  The defendant may be seeking those forms as an aid for voir dire examination purposes, but that is not the purpose of the questionnaires.  If these completed judicial jury forms were released to defendants generally there would exist the possibility of substantial abuse of the information the forms contain, which could have serious consequences for individual jurors and the system.

*Id.*

In sum, Defendants have not demonstrated entitlement to *any* prospective juror selection records or information, or else at most may obtain disclosure only of the master list of prospective jurors and related demographic information about the jury pool.

## CONCLUSION

For all of the reasons set forth, Defendants' Motion for Access to Jury Selection Records and Information should be denied.

Dated:  September 25, 2019

Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

/s/ Joseph F. Rice
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115

5

(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Plaintiffs' Co-Lead Counsel*


/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*


Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY  10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*


Linda Singer
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
(202) 386-9626 x5626
(202) 386-9622 (Fax)
lsinger@motleyrice.com

*Counsel for Plaintiff Summit County, Ohio*