# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090<br><br>and<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-op-45004 | MDL No. 2804<br><br>Hon. Judge Dan A. Polster |

## DEFENDANTS' OBJECTIONS TO COURT'S ORDER REGARDING TRIAL MATTERS (ECF NO. 2594)

On September 12, 2019, this Court issued an Order Regarding Trial Matters ("the Order"). ECF No. 2594. Defendants had no notice of that Order and no opportunity in advance to address the issues covered by that Order, which included matters like trial time limitations, the number of permitted peremptory challenges, and exceptions to the completeness rule for presentation of videotaped deposition testimony. *Id.* at 1–2. For the reasons set forth below, Defendants object to the limitations imposed by the Order with respect to Defendants' allocated trial time, the number of permitted peremptory challenges, limitations on voir dire, and the ruling on defense video depositions. Defendants also seek clarification of the Court's Order regarding video depositions and witness and exhibit disclosures.

I.  **The 100-Hour Combined Limit for Defendants' Presentation of Evidence Is Unreasonable.**

The Order states that the presentation of evidence at trial will be limited to 221 total hours, to be split 50/50 between Plaintiffs and the Defendants, amounting to "about 100 hours of time for presentation of evidence for each side." ECF No. 2594 at 1–2 & n.2. Although the parties did not have an opportunity to brief the issues addressed by the Order, Defendants moved on August 5 for additional time to try their case. ECF No. 2133 at 9 ("Defendants' Motion for Additional Trial Time and For Timely Election by Plaintiffs of Claims and Defendants They Seek to Pursue at Trial"). Defendants' August 5 motion seeks critical relief — and the issues it presents remain just as important today.[1] While Plaintiffs have settled with certain Defendants, they are still pursuing a range of complex claims — including RICO, civil conspiracy, and public nuisance claims — against the twenty-two remaining Defendants. *See* ECF No. 2487. Given the scope of the relief Plaintiffs seek and with the continued complexity of this case, Defendants still need additional time as requested in their August 5 motion. The recent September 12 Order has the opposite effect, further limiting Defendants' time.

Although the Court has discretion to manage its docket, that discretion is cabined by the imperative demanding "respect for the requirements necessary to achieve a fair trial." *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996). A trial court abuses that discretion when it truncates the trial time so that there is an inadequate opportunity to present probative non-cumulative evidence. *See Johnson v. Ashby*, 808 F.2d 676, 678 (8th Cir. 1987). Ensuring presentation of all probative evidence should drive a trial-length determination. *See Duquesne*

---

[1] As set forth in Defendants' Supplemental Memorandum in Support of Motion for Additional Trial Time, filed contemporaneously with these objections, Plaintiffs have waived any opposition to Defendants' requested relief by failing to respond. *See, e.g.*, *Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008).

2

*Light Co. v. Westinghouse*, 66 F.3d 604, 610 (3d Cir. 1995) ("A district court should impose time limits only when necessary, after making an informed analysis based on a review of the parties' proposed witness lists and proffered testimony, as well as their estimates of trial time."). This is why courts have cautioned against strict time limits at trial.  *See, e.g., Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1508 (9th Cir. 1995) ("Generally, courts look upon rigid hour limits for trials with disfavor."); *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 473 (7th Cir. 1984) (rigid hour limits on a trial "engender[s] an unhealthy preoccupation with the clock" and the computation of time was "almost as complicated as in a professional football game").

It bears noting that the 100-hour limit is not based on specific information regarding the parties' proposed witness lists and proffered testimony,[2] and is inconsistent with both Plaintiffs' and Defendants' consistently held and expressed position that the appropriate length of a trial of this size and complexity case is much longer.  The 100-hour limit imposed by the Court's Order precludes a fair defense, in large part because the pro rata share of time allocated to each Defendant will be insufficient for any individualized defense.[3]  The Court's limit provides each remaining Defendant *less than 5 hours* of time and each Defendant group *less than 15 hours* of time (while providing the two Plaintiffs 50 hours each).  Further exacerbating this issue, the 5 hours allotted to each Defendant must be split between presenting an affirmative case and cross-examining Plaintiffs' witnesses.  While Defendants intend to coordinate examinations of certain Plaintiff

---

[2] Witness lists were filed after the Order on September 25. The deposition designation process is far from concluded.

[3] One example of the inadequacy of the division of time ordered by the Court is the situation faced by Cardinal Health. Plaintiffs have made crystal clear that they intend to call multiple Cardinal witnesses live, given that Cardinal happens to be headquartered in Ohio. If time was split 50/50 between plaintiffs and defendants and then split evenly amongst defendants, Cardinal would be at a severe disadvantage in defending itself at trial.

witnesses where possible,[4] and certain Defendants intend to jointly offer certain expert testimony (on topics like causation and damages), it is plainly unfair to provide each Defendant only a few hours to present evidence to defend itself against the Plaintiffs' novel, sweeping claims. The time allotted is particularly insufficient given that Plaintiffs have put at issue each Defendant's alleged conduct over a more-than-two-decade span and based on two entirely different theories—marketing to doctors and shipping to customers—that require entirely different evidence. Each Defendant also has individual defenses that turn on facts specific to that Defendant, such as specific communications with relevant regulators (FDA and/or DEA) and different activities in the Plaintiff counties.

The jury must be given the opportunity to assess these legal and factual differences to reach a verdict on each element of each claim by each Plaintiff as to each Defendant separately. Differences permeate the case.  Plaintiffs have unique theories of recovery as to each group of Defendants that will be met by different defenses.  And even within a Defendant group, there are significant differences in Plaintiffs' case regarding alleged wrongful conduct, causation, and damages.  The fact that there are two Track One Plaintiff counties further complicates the defense, requiring different proof about each Plaintiff's knowledge[5] and alleged damages.  Each Defendant must be given a separate opportunity to rebut Plaintiffs' claims.

The severance and settlement of various parties does not cure the inadequate trial time allotted to Defendants.  To the contrary, settlement of other parties actually exacerbates the inequality that results from an "even" split with the Plaintiffs.  When the Court originally limited

---

[4] There are practical limits to how much Defendants can coordinate even on common witnesses, and they of course have the right to present different defenses to the jury.

[5] The Court denied summary judgment on the applicable statute of limitations and held that the date of accrual for each county's claim is an issue for trial, requiring independent proof of the counties specific knowledge.  *See* ECF No. 2568 at 2–3.

trial to seven-weeks over Defendants' objections and provided less than half the trial time Plaintiffs believed was necessary, Plaintiffs had the obligation to present their case against 22 Defendant "groups" and 45 individual Defendants.  As the number of Defendants has shrunk, Plaintiffs' task has shrunk as well, but Defendants' has grown.  The vast majority of Plaintiffs' complaints, and much of Plaintiffs' expert reports and summary judgment briefing, was focused on Plaintiffs' allegations that companies who are no longer part of the Track 1 trial are allegedly to blame for the problem of opioid abuse and misuse in the Counties.  Plaintiffs may have "severed" or settled with certain parties, but the remaining Defendants must now put forward evidence demonstrating the role of severed and settled parties, including when it comes to the change in the standard of care.  It is not possible to do so in the allotted time and the inability to do so will prejudice remaining Defendants.

In short, whether each Defendant receives a fair trial is to be determined by whether that particular Defendant was provided enough time for it to present its individual defenses against each of Plaintiff's individual claims.  *See Sparshott v. Feld Entm't, Inc.*, 311 F.3d 425, 433 (D.C. Cir. 2002) ("[I]n a case involving multiple defendants . . . a district court might reasonably conclude that overlap between defense theories warrants giving each defendant a smaller amount of time.  But the court cannot make such a decision without considering how much overlap there is between defense theories and what are the likely time needs of all the parties."); *United States v. Gallo*, 668 F. Supp. 736, 756 (E.D.N.Y. 1987) (concluding in a RICO case that "[t]he agreement to participate takes many diverse and unrelated forms among the participants.  Proof against each of them is hardly duplicitous.").  The Order further impairs Defendants' fair trial rights in this regard.

5

The same time-allocation issues apply to opening and closing statements.  The Court has previously indicated that it expects Defendants to coordinate opening statements such that only one Defendant speaks on certain key issues that all Defendants might wish to address.  While Defendants share the Court's desire to avoid an overlap in the presentation of argument and evidence where possible,[6] any requirement that the Defendants speak for one another at opening or closing is unduly prejudicial.  To avoid jury confusion and unfair prejudice, the Court should not require Defendants represent each other at any phase of the trial and should clarify its Order to that effect.

## II.     The Court's Order Unreasonably Limits the Number of Peremptory Challenges.

The Court's Order limits the number of peremptory challenges to essentially one for each Defendant.  ECF No. 2594 at 1.  Defendants object to this allocation for the same core reason described above: Defendants are not a single, monolithic entity. They are *individual* companies facing *different* claims and *different* evidence and need to mount *distinct, individualized* defenses.  The reasons for exercising peremptory challenges are equally unique and each Defendant must be afforded a fair opportunity to exercise such challenges.

There is no reason to afford each Plaintiff more peremptory challenges than each Defendant. ECF No. 2594 at 1.  Basic fairness dictates that each party should receive the same number of peremptory challenges.  *See, e.g.*, *Tidemann v. Nadler Golf Car Sales, Inc.*, 224 F.3d 719, 725 (7th Cir. 2000) (trial court properly allocated six peremptory challenges to two co-defendants (three each) and three challenges to the plaintiff).

---

[6] Defendants may be able to present common evidence at certain times, *see supra* at 4, such as select expert witnesses, and will endeavor to do so whenever possible, but no Defendant can be fairly be *required* to do so when it would prejudice or harm their individual defenses, including on the absence of proof of any conspiracy or enterprise.

6

**III. The Court's Order Unreasonably Limits Voir Dire Questioning.**

The Court's Order also limits the entire group of Defendants to a collective 20 minutes of follow-up voir dire questioning. ECF No. 2594 at 1. Defendants object to this allocation for the same reasons explained above: Defendants are sufficiently distinct and differently situated in terms of claims and evidence that denying each of them a fair opportunity to question potential jurors is patently unfair. And, as above, the Court's Order affords each Plaintiff a greater opportunity to question potential jurors than each Defendant. To be fair, every party must have an equal amount of time to conduct individual voir dire. *See, e.g.*, *Businelle v. Meadowcraft, Inc.*, No. 1:05-CV-554, 2007 WL 9711631, at *9 (N.D. Ala. May 24, 2007) (allotting two defendants ten more minutes of voir dire than the single plaintiff).

At minimum, Defendants request a conference with the Court prior to jury selection in order to discuss the mechanics of the voir dire process.

**IV. The Court's Order Improperly Permits Livestream Testimony from One Distant Witness per Defendant.**

The Court's Order permits Plaintiffs to select a single distant witness per Defendant for "livestreaming" via remote video connection. ECF No. 2594 at 3. This ruling is unsupported by the referenced citation, Fed. R. Civ. P. 43. As argued in Defendants' July 17, 2019 letter to Special Master Cohen, Rule 43(a) does not permit a court to compel testimony beyond the geographical reach of the Court's subpoena power under Rule 45. Indeed, Rule 43(a) concerns only the manner of taking testimony—any order compelling remote transmission of testimony must still meet the requirements of Rule 45. *See, e.g., Balsley v. LFP, Inc.*, No. 1:08-CV-491, 2010 WL 11561883, at *3 (N.D. Ohio Jan. 26, 2010).

Application of Rule 43(a) "presupposes a witness willing or compelled to testify at trial." *Roundtree v. Chase Bank USA, N.A.*, No. 13-239, 2014 WL 2480259, at *1 (W.D. Wash. June 3,

7

2014). Accordingly, the Rule "does not operate to extend the range or requirements of a subpoena." *Lin v. Horan Capital Mgmt., LLC*, No. 14-CV-5202, 2014 WL 3974585, at *1 (S.D.N.Y. Aug. 13, 2014); *see also, e.g., Lea v. Wyeth LLC*, No. 1:03-CV-1339, 2011 WL 13195950, at *1 (E.D. Tex. Nov. 22, 2011) ("There is nothing in the language of Rule 43(a) that permits this court to compel the testimony of an individual who is indisputably outside the reach of its subpoena power."). The Court should therefore clarify its Order to hold that Plaintiffs may only procure live-stream testimony for witnesses subject to the Court's subpoena power under Rule 45.

## V. The Court Should Clarify Its Order With Respect to Video Depositions.

The Court's Order created an exception for the general rule that the jury must be shown all designated portions of a videotaped deposition, including those designated by the opposing party. *See* Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6). The exception applies when Plaintiffs play a portion of a videotaped deposition by "a party opponent on cross-examination." ECF No. 2594 at 2. It is not clear how broadly the Court will apply this ruling, but it would be unfair and confusing to the jury to apply this rule to video clips of Defendants' company witnesses, as it would require this testimony to be played in a disjointed and out-of-context order, particularly if applied broadly. Moreover, the Order is entirely one-sided, providing an exception only to *Plaintiffs* that is not afforded to Defendants. ECF No. 2594 at 2. As above, simple fairness and due process require that all parties be subject to the same rules and limitations.

## VI. The Court Should Clarify Its Order Regarding Witness and Exhibit Disclosures.

The Court's Order provides that at the end of each week, the parties must provide a list of exhibits and witnesses expected to be called the following week, and that demonstratives must be disclosed each day for the following day. ECF No. 2594 at 2. The Court's Order does not provide for any specific disclosures for the first week of trial. Defendants request that the Court clarify its

8

Order to specify that Plaintiffs disclose to Defendants the witnesses expected to be called during the first week of trial no later than Thursday October 17, with an exchange of opening statement slides the night before and opportunities to object outside the presence of the jury before openings proceed.

Dated: September 27, 2019　　　　　　　　　　Respectfully Submitted,

*/s/ Shannon E. McClure*
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Fax: (215) 851-1420
smcclure@reedsmith.com

*Counsel for Defendant AmerisourceBergen Drug Corporation*

*/s/ Eni Mainigi*
Enu Mainigi
F. Lane Heard III
George A. Borden
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
gborden@wc.com
ahardin@wc.com

*Counsel for Defendant Cardinal Health, Inc.*

*/s/ John P. McDonald*
John P. McDonald
Texas Bar No. 13549090
jpmcdonald@lockelord.com
C. Scott Jones
Texas Bar No. 24012922
sjones@lockelord.com
Lauren M. Fincher
Texas Bar No. 24069718
lfincher@lockelord.com
Brandan J. Montminy
Texas Bar No. 24088080
brandan.montminy@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201

*/s/ Charles C. Lifland*
Charles C. Lifland
Sabrina H. Strong
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
clifland@omm.com
sstrong@omm.com

Daniel M. Petrocelli
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor Los Angeles, CA 90067-6035
Tel: (310) 553-6700
dpetrocelli@omm.com

| | |
|---|---|
| T: 214-740-8445<br>F: 214-756-8110<br><br>*Attorneys for Henry Schein, Inc. and Henry Schein Medical Systems, Inc.* | *Attorneys for Janssen Pharmaceuticals, Inc., Johnson & Johnson, Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Ortho- McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.* |

*/s/ Geoffrey Hobart*
Geoffrey E. Hobart
Mark Lynch
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com

*Counsel for McKesson Corporation*

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

By: */s/ Steven A. Reed*
Eric W. Sitarchuk
Steven A. Reed
Harvey Bartle
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel: (215) 963-5000
Fax: (215) 963-5001
eric.sitarchuk@morganlewis.com
steven.reed@morganlewis.com
harvey.bartle@morganlewis.com
rebecca.hillyer@morganlewis.com

Nancy L. Patterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
Tel:  (713) 890-5195
Fax: (713) 890-5001
nancy.patterson@morganlewis.com

Wendy West Feinstein
MORGAN, LEWIS & BOCKIUS LLP

One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219-6401
Tel: (412) 560-7455
Fax: (412) 560-7001
wendy.feinstein@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Tel: (305) 415-3000
Fax: (305) 415-3001
brian.ercole@morganlewis.com

*Counsel for Cephalon, Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., Warner Chilcott Company, LLC, Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, Actavis Totowa LLC, Actavis Kadian LLC, Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City, and Actavis Laboratories FL, Inc., f/k/a Watson Laboratories, Inc.-Florida, and appearing specially for Teva Pharmaceutical Industries Ltd.*

## **CERTIFICATE OF SERVICE**

I, Geoffrey E. Hobart, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart
