**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: | Case No. 17-md-2804 |
| *Track One Cases* | Hon. Dan Aaron Polster |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM**
**IN SUPPORT OF MOTION FOR ADDITIONAL TRIAL TIME**

DC: 7150398-1

## I. **INTRODUCTION**

There can be no doubt about the impact of this first opioid MDL trial. Not only is it a bellwether for the litigation to come. Not only will it address critical factual and legal issues concerning legal responsibility for a complex and multifaceted public health crisis that Plaintiffs allege entitles them to recover billions in monetary relief. Not only is it unquestionably important to the Plaintiffs. But it is also of unquestionable consequence to the Defendants who will be part of the first trial. These companies play important roles in the research, manufacture, and delivery of medications, including cost-effective generic medications, critical to the public health.

It is thus essential that ***all*** parties involved be given a full and fair opportunity to present relevant evidence on challenging and complex legal and factual issues spanning decades. There are 22 remaining Defendants.[1] Giving each group of affiliated Defendants less than 15 hours to defend themselves falls far short of this requirement, and far short of what due process requires. Even a slip and fall case can take longer to defend than what each Defendant has been allotted here. This case is thus not only unprecedented in its scope and complexity, but also in the *de minimis* amount of time each Defendant has been afforded to defend itself. The limited trial schedule also all but requires that Defendants coordinate with other alleged co-conspirator Defendants in the presentation of their case before the jury, despite the fact that coordination among these same Defendants is a key element of, and precisely what Plaintiffs allege, in

---

[1] The remaining Defendants are Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., Warner Chilcott Company, LLC, Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, Actavis Totowa LLC, Actavis Kadian LLC, Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City, Actavis Laboratories FL, Inc., f/k/a Watson Laboratories, Inc.-Florida, Janssen Pharmaceuticals, Inc., Johnson & Johnson, AmerisourceBergen Drug Corp., Cardinal Health, Inc., McKesson Corporation, Walgreen Co., Walgreen Eastern Co., Henry Schein Medical Systems, Inc., and Henry Schein, Inc. Each of these Defendants joins this supplemental memorandum in support of the pending Motion For Additional Trial Time (ECF No. 2133).

connection with their civil conspiracy and RICO claims. A fair and reliable result from such an artificially truncated and prejudicial process, particularly in light of Plaintiffs' conspiracy and RICO claims, is impossible.

## II.    <u>BACKGROUND</u>

To protect their due process right to a meaningful opportunity to present complete and individualized defenses, Defendants filed a motion objecting to the trial schedule on August 5, 2019.  That motion sought basic relief:  (a) additional time to try the case; and (b) a directive to Plaintiffs to streamline the number of claims and Defendants they will pursue at trial.  (ECF No. 2133) ("Motion").  Plaintiffs did not respond to Defendants' August 5, 2019 motion, and, consequently, they have waived any opposition to Defendants' requested relief.  *See, e.g., Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion.").

Since August 5, 2019, with the motion still pending, the seven-week trial schedule has become only more unworkable—and the due process problems have become all the more apparent. It is now less than one month before the scheduled start of this unprecedented trial.  While some Defendants have settled, with some others severed or having filed for bankruptcy, 22 separate and independent Defendants remain to be tried.  The Court's recent Order Regarding Trial Matters (ECF No. 2594) (the "Order") underscores why none of these Defendants will have a meaningful opportunity to defend themselves.  The Order requires the Plaintiffs and 22 Defendants to "split trial time 50/50," with approximately "100 hours of time for presentation of evidence of each side," including both direct testimony and cross-examination.  (ECF No. 2594, at 1-2).  If divided by each group of affiliated Defendants, this leaves *less than 15 hours per group*.   And that is even

2

before considering the fact that there are 22 separate Defendant companies—many of which will be offering unique factual and legal defenses.[2]

Defendants have separately filed objections to the Court's Order, including to the idea that time—of whatever amount—should be split evenly between Plaintiffs and Defendants.  (ECF No. 2682).   While the relief sought by Defendants in those objections is necessary and appropriate, it does not resolve the larger due process concern that underlies the Court's seven-week trial calendar.

Longstanding principles of constitutional due process mandate that each Defendant have a meaningful opportunity to defend itself.  This requires, at a minimum, that each Defendant have sufficient time to present complete individual defenses to each claim at trial.  But no Defendant can adequately defend itself at trial when it is allotted so little time to cross examine and put on an affirmative defense.  The allotted time gives no Defendant a realistic opportunity to mount a meaningful defense against complicated federal and state RICO, public nuisance, and civil conspiracy claims seeking massive damages in a bellwether trial of such importance—one that will be watched by other litigants and courts across the country in the myriad of other pending opioid-related cases.

Defendants cannot meaningfully defend themselves in a few hours against allegations about how a complex social and public health problem unfolded over decades.  This Court's order denying Defendants' motion for summary judgment on statute of limitations means that Plaintiffs

---

[2]     By way of example, the Teva Defendants and Actavis Generic Defendants consistent of 13 separate and distinct entities.  With 15 hours as a group, this is less than 2 hours per company. This brief does not mean to suggest that 15 hours per Defendant group is the right way to divide the time or otherwise to take a position on the appropriate way to divide time between the Defendants, but only to point out that no matter how it is divided, the current allocation is woefully insufficient.  Even 25 hours per defendant would be insufficient to defend against these complex and sweeping claims.

3

will seek damages stretching back to 2006, and present evidence of alleged conduct dating back even further.  Indeed, Plaintiffs' expert Dr. David Courtwright intends to testify at trial about events and conduct dating back to the 1800s.  The time allotted is simply not enough time for each Defendant to defend itself against such wide-ranging evidence.

Even worse, the limited trial schedule severely prejudices Defendants by requiring that they openly coordinate with each other in the presentation of their case to the jury—which only serves to reinforce Plaintiffs' flawed legal theory that they were part of a conspiracy and criminal enterprise.  Indeed, this Court made clear in its September 16, 2019 conference that coordination among Defendants under the current trial schedule is inescapable, allowing only a small amount of time for each Defendant to present individual opening statements and expressly requiring that they coordinate with each other to avoid "repetition."  But forcing each Defendant to coordinate and rely on other alleged co-conspirators to present complete opening statements or to completely cross examine witnesses means that they jury will necessarily view the Defendants as one uniform group of companies—an image consistent with the Plaintiffs' conspiracy and RICO theories.

The Court's Order this morning on Defendants' objections regarding trial matters heightens these concerns.  There, the Court noted that "Defendants do not object to the Court's requirement that they coordinate their presentation at trial."  (ECF No. 2689 at 1).  That characterization overstates Defendants' position and ignores one of their key objections to the Order.  As stated in the brief the Court quotes, Defendants' position is as follows:  "Defendants may be able to present common evidence at certain times . . . such as select expert witnesses, and will endeavor to do so whenever possible, but no Defendant can be fairly be required to do so when it would prejudice or harm their individual defenses, including on the absence of proof of any conspiracy or enterprise."  (ECF No. 2682 at 6 n.6).  But Defendants oppose the view that they can reasonably be required to

share time and coordinate every presentation, from opening statements through witness examinations, to avoid any possible replication.  Such a dictate would be impossible to meet in practical terms, and it would violate each Defendants' right to present a full defense.[3]

Furthermore, despite this Court's directive (ECF No. 1643), Plaintiffs still have not meaningfully streamlined their case.  Quite the opposite.  They originally designated over 200 witnesses to testify live at trial, in addition to nearly 100 hours of video deposition testimony (which would consume their entire allotted time) and 100,000 exhibits.  Even under orders by Special Master Cohen to cut this back, Plaintiffs only just recently (as of September 25) provided a witness list with 85 witnesses and an exhibit list with over 100,000 documents.  (ECF Nos. 2672, 2677).[4]  Plaintiffs' shotgun approach to pretrial deadlines, followed by iterative reductions, has made it impossible for Defendants to prepare meaningfully as the eve of trial rapidly approaches.  And any further required reduction of Plaintiffs' massive case will still amount to an enormous list of witnesses and exhibits—there is simply no way that Defendants can meaningfully cross-examine even a fraction of those witnesses, or address even a fraction of those exhibits, in their allotted time.  In fact, recognizing the inadequacy of the current trial schedule, Plaintiffs recently attempted to circumvent the fact-finding process by proposing *over 1,000* argumentative stipulations—almost all of which ask Defendants to agree to contested facts, without context or

---

[3]       In this regard, Defendants note that the Court today denied various other requests for relief from Defendants, sharply criticizing them "as unnecessary or because they are actually non-meritorious requests for reconsideration."  (ECF No. 2689 at 1).  Defendants submit that this criticism is unfounded, given that the Court entered the Order—addressed by Defendants in their objections (ECF No. 2682)—without first soliciting or receiving *any* input from Defendants on the Order.

[4]       Plaintiffs' exhibit list purports to list 27,650 exhibits (ECF No. 2677), but single entries actually contain families of documents, thereby pushing the total to over 100,000 documents.  Of course, even 27,650 exhibits is unmanageable.

cross examination.  Plaintiffs' own conduct thus confirms that the current trial schedule and allotment of time is unworkable.

Given the staggering stakes and the complex, novel, and expansive nature of the claims in this case, spanning multiple Defendants' conduct over a period of decades, each Defendant's due process right to a meaningful opportunity to be heard requires a trial significantly longer than seven weeks.  Due process compels this result.

III.   **ANALYSIS**

The Supreme Court has made clear that the "central meaning of procedural due process" is the "***right to*** notice and ***an opportunity to be heard*** . . . at a meaningful time and ***in a meaningful manner***."  *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (emphasis added).  This requires, "***at a minimum*** . . . [an] ***opportunity for hearing appropriate to the nature of the case***."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (emphasis added).  The appropriateness of any hearing is determined, in part, based on the "private interest" that is at stake.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Each defendant must have a "meaningful opportunity to present a ***complete*** defense."  *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) (emphasis added); *see also California v. Trombetta*, 467 U.S. 479, 485 (1984).

The current trial schedule denies Defendants this opportunity.  Twenty-two separate and distinct Defendants, comprising seven defendant groups, need to present their overlapping and unique defenses as part of the Track 1 trial—as opposed to just two Plaintiffs.  Defendants must defend conduct spanning decades, involving complex issues unique to each Defendant.  The sheer amount of individual briefing completed in this case confirms this.  Indeed, even among briefing submitted by Defendants belonging to the same corporate group, the facts and legal arguments presented by each Defendant in that same corporate group consistently vary.

6

Nonetheless, the current trial schedule allows only 7 weeks for this MDL trial—and, if broken down by Defendant on a *pro rata* share, less than 15 hours per corporate group, to defend against five separate claims, including complicated state and federal RICO claims, seeking massive damages.  Given the astronomical monetary demands and the complexity of the claims and issues, the trial schedule violates due process.[5]

The fact that Defendants are differently situated—and, thus, retain unique defenses— further exacerbates this prejudice.  Some Defendants are manufacturers of either branded or generic products; others are distributors.  Even within each group, there are significant differences, as the Court's summary judgment rulings make clear.  For example, different manufacturing companies promoted different branded opioid medicines at different times and in different ways. Other Defendants did not promote their opioid products at all, or limited their promotion to branded rather than generic products.  Each Defendant interacted with different third-party organizations and associations, if at all, in different ways.  Each Defendant had different systems in place for monitoring and reporting suspicious orders of controlled substances, and separately enhanced those programs in different ways over time.  Each Defendant had different and unique interactions with state and federal regulatory agencies.  And each Defendant will have separate defenses, and, thus, evidence, to challenge the core elements of Plaintiffs' claims, including Plaintiffs' assertions of fraudulent marketing, violations of the Controlled Substances Act, causation, injury, and involvement in any supposed enterprise or conspiracy.  Even the statute of limitation defenses will require Defendant-specific evidence, including, for instance, Defendant-specific mini-trials on the

---

[5]    One example of the inadequacy of the division of time ordered by the Court is the situation faced by Cardinal Health.  Plaintiffs have made crystal clear that they intend to call multiple Cardinal witnesses live, given that Cardinal happens to be headquartered in Ohio.  If time was split 50/50 between plaintiffs and defendants and then split evenly amongst defendants, Cardinal would be at a severe disadvantage in defending itself at trial.

issue of fraudulent concealment.  A seven-week trial with 22 separate Defendants is simply impossible.

Plaintiffs acknowledge that they must prove each claim against "each individual defendant based on each defendant's alleged wrongdoing."  (ECF No. 2099 at 2.)  Yet their briefing and pre-trial submissions to date attempt to treat all Defendants as a monolith.  To allow Defendants to continue this grouping-together of Defendants at trial would be error.  Regardless of how Plaintiffs may now try to cast their case, Defendants must be allowed to present substantial individualized defenses, as required by due process.  *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (defendant cannot be denied a trial structure that prevents it from raising and presenting individualized defenses).

With the current limited length and structure of the trial, however, there is not enough time for each Defendant to present its defenses—whether through direct examination or cross-examination—when, based upon a *pro rata* distribution of time, the Court's Order allots each affiliated group less than 15 hours to do so.  Furthermore, this forces all Defendants—wrongly accused of being part of a civil conspiracy and enterprise—to coordinate with each other in the presentation of their case before the jury, such as in opening arguments and cross-examination.  Defendants must therefore reinforce Plaintiffs' conspiracy theory just to mount a defense.  This violates the most basic due process principles.  *See generally Mullane*, 339 U.S. at 313; *Crane*, 476 U.S. at 690-91.

Plaintiffs' pre-trial submissions confirm that the current schedule is unworkable.  For example, Plaintiffs' original witness list identified ***nearly 200 witnesses*** that they purportedly intend to call at trial, including dozens of witnesses that no other party has identified.  And despite Special Master Cohen ordering Plaintiffs to reduce their witness list, Plaintiffs served an amended

witness list with 85 names (ECF No. 2672)—still a grossly unmanageable number for a trial where, on a pro rata basis, each Defendant group has been allotted less than 15 hours to present evidence and there are 22 separate Defendants.  Furthermore, Plaintiffs' revised exhibit list still includes more than 100,000 documents.  This is not just trial by ambush.  It is a direct consequence of Plaintiffs' failure to reduce their claims and the number of Defendants for trial.  Even if Plaintiffs plan to call just a small fraction of their witnesses, play a small fraction of their designated deposition testimony, and introduce a small fraction of the documents on their exhibit list, no such trial can come close to completion in 7 weeks—and no Defendant will have sufficient time to defend against Plaintiffs' claims in that time period.

As this Court is aware, another opioid trial filed by the State of Oklahoma recently concluded in Oklahoma state court.  Prior to that trial, the State of Oklahoma dismissed all of its claims except for a single statutory public nuisance claim, based solely upon false marketing (without the additional claim in this case regarding suspicious order monitoring), against one corporate group consisting of four defendants.  That case alone took 7 weeks of trial time in a non-jury trial.  Allocating the same amount of time here (with the added time which is inevitable in a jury trial), where two Plaintiffs are asserting multiple claims against 7 separate corporate groups consisting of 22 individual Defendants, is grossly insufficient and violates due process.

IV.    **CONCLUSION**

Each Defendant here has unique and substantial defenses to raise, and different and important evidence to present.  The current trial length and structure provides no realistic opportunity for any Defendant to put on the meaningful defense that due process entitles it to.  For these reasons, this Court should extend the length of time that Defendants have to present their

evidence at trial.  It should also compel Plaintiffs to further and significantly reduce the number of

Defendants for trial.  Due process requires nothing less.

Dated:   September 30, 2019                    Respectfully Submitted,


  /s/ Geoffrey E. Hobart                    /s/ Enu Mainigi     
Geoffrey E. Hobart                               Enu Mainigi
Mark H. Lynch                                    **Williams & Connolly LLP**
Sonya D. Winner                                  725 Twelfth Street NW
**Covington & Burling LLP**                      Washington, DC  20005
One CityCenter                                   Tel: (202) 434-5000
850 Tenth Street NW                              Fax: (202) 434-5029
Washington, DC 20001                             emainigi@wc.com
Tel: (202) 662-5281
ghobart@cov.com                                  *Counsel for Cardinal Health, Inc.*
mlynch@cov.com
swinner@cov.com


*Counsel for McKesson Corporation*

/s/ Robert A. Nicholas
Robert A. Nicholas
Shannon E. McClure
**Reed Smith LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

/s/ Kaspar Stoffelmayr
Kaspar Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Matthew W. Brewer
**Bartlit Beck LLP**
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
matthew.brewer@bartlitbeck.com

Alex J. Harris
**Bartlit Beck LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

11

  */s/ John P. McDonald*
John P. McDonald
C. Scott Jones
Lauren M. Fincher
Brandan J. Montminy
**Locke Lord LLP**
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Tel: (214) 740-8000
Fax: (214) 756-8758
jpmcdonald@lockelord.com
sjones@lockelord.com
lfincher@lockelord.com
brandan.montminy@lockelord.com

*Counsel for Henry Schein, Inc. and Henry
Schein Medical Systems, Inc.*

  */s/ Charles C. Lifland*
Charles C. Lifland
Sabrina H. Strong
**O'melveny & Myers LLP**
400 S. Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
clifland@omm.com
sstrong@omm.com

Daniel M. Petrocelli
Amy R. Lucas
**O'melveny & Myers LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067-6035
Tel: (310) 553-6700
dpetrocelli@omm.com
alucas@omm.com

*Counsel for Janssen Pharmaceuticals, Inc.,
Johnson & Johnson, Janssen Pharmaceutica,
Inc. n/k/a Janssen Pharmaceuticals, Inc., and
Ortho-McNeil-Janssen Pharmaceuticals, Inc.
n/k/a Janssen Pharmaceuticals, Inc.*

_/s/ Steven A. Reed_____

Eric W. Sitarchuk
Steven A. Reed
Harvey Bartle
Rebecca J. Hillyer
**Morgan, Lewis & Bockius LLP**
1701 Market Street
Philadelphia, PA 19103-2921
Tel: (215) 963-5000
Fax: (215) 963-5001
steven.reed@morganlewis.com
eric.sitarchuk@morganlewis.com
harvey.bartle@morganlewis.com
rebecca.hillyer@morganlewis.com

Nancy L. Patterson
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5005
Tel: (713) 890-5195
Fax: (713) 890-5001
nancy.patterson@morganlewis.com

Wendy West Feinstein
**Morgan, Lewis & Bockius LLP**
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219-6401
Tel: (412) 560-7455
Fax: (412) 560-7001
wendy.feinstein@morganlewis.com

Brian M. Ercole
**Morgan, Lewis & Bockius LLP**
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Tel: (305) 415-3000
Fax: (305) 415-3001
brian.ercole@morganlewis.com

*Counsel for Teva Pharmaceuticals USA, Inc.,
Cephalon, Inc., Watson Laboratories, Inc.,
Actavis LLC, Actavis Pharma, Inc. f/k/a
Watson Pharma, Inc., Warner Chilcott
Company, LLC, Actavis South Atlantic LLC,
Actavis Elizabeth LLC, Actavis Mid Atlantic
LLC, Actavis Totowa LLC, Actavis Kadian*

13

*LLC, Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City, and Actavis Laboratories FL, Inc., f/k/a Watson Laboratories, Inc.-Florida*

## <u>LOCAL RULE 7.1(F) CERTIFICATION</u>

I hereby certify that this case has been assigned to the "litigation track" and that this Memorandum adheres to the page limitations set forth in the Amended Order Regarding Pretrial Motions for "Track One" Trial (ECF No. 1709) and L.R. 7.1(f).

Dated: September 30, 2019

By: <u>*/s/ Steven A. Reed*</u>
Steven A. Reed
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel: (215) 963-5603
steven.reed@morganlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2019, a copy of the foregoing has been served via ECF on all counsel of record.

Dated: September 30, 2019        By: <u>*/s/ Steven A. Reed*</u>
                                 Steven A. Reed
                                 MORGAN, LEWIS & BOCKIUS LLP
                                 1701 Market St.
                                 Philadelphia, PA 19103-2921
                                 Tel: (215) 963-5603
                                 steven.reed@morganlewis.com