**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090<br><br>*The County of Cuyahoga v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-op-45004 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    MDL No. 2804<br><br>Hon. Judge Dan A. Polster |

**DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S
ORDER ON THE PARTIES' TRIAL EXHIBIT AND WITNESS LISTS**

Plaintiffs have pushed the Court's pretrial process to the point of collapse by repeatedly disregarding Court orders, unilaterally granting themselves extensions, and purporting to meet deadlines only by making meaningless submissions and then amending those submissions repeatedly. Nowhere is this more evident than in Plaintiffs' complete failure, more than five weeks after the deadline, to provide a functional exhibit list. ECF No. 2072. Defendants have repeatedly raised these concerns with Plaintiffs and the Special Master to no avail. This cannot continue. Plaintiffs' disregard for the Court's orders and case schedule is improper and has severely prejudiced Defendants' ability to prepare for trial. The Special Master's most recent order, ECF No. 2695, directing both sides to file reduced lists by October 5, does not and cannot cure that prejudice. With trial just over two weeks away, Defendants object to the Special Master's order and ask the Court either to strike Plaintiffs' list or to continue the trial to provide time for Plaintiffs to comply with their obligations and give Defendants a fair chance to defend themselves.

## I.      Plaintiffs Have Repeatedly Failed to Provide a Functional Exhibit List

Over a month after the deadline and less than three weeks before trial, Plaintiffs still have not provided Defendants with a functional exhibit list.  To date, Plaintiffs have served *seven* different versions of their exhibit list, and each one has been riddled with problems that rendered it unusable.  On the August 28 deadline for exchanging lists, ECF No. 2072, Plaintiffs served a list containing 16,600 exhibits.  Two days after the deadline, Plaintiffs served an "amended" list that nearly doubled to over 30,000 exhibits.  The amended list contained significant deficiencies.  For instance, many of the purported "exhibits" actually contained more than one document—some of them as many as tens of thousands of documents—pushing the total size of Plaintiffs' list to *at least 120,000 documents*[1] and making it impossible for Defendants to know what exhibits Plaintiffs actually intend to use at trial.  To compound these problems, Plaintiffs changed exhibit numbers between their original and amended list, making it extremely difficult for Defendants to determine what had changed.  After several failed meet and confers, Defendants brought these issues to the Special Master.  The Special Master cautioned that Plaintiffs' failure to "timely streamline their exhibit . . . list[] to something realistic and useful to opposing parties and the Court" would "risk[] an order that could meaningfully impact Ps' ability to put on their case."  **Ex. A.**, Email from D. Cohen to Counsel (Sept. 17, 2019).

Plaintiffs ignored the Special Master's warning.  Instead, they served another amended exhibit list, this one comprised of at least 128,000 documents and presenting many of the same problems and several new problems.  Defendants promptly brought these issues to Plaintiffs' attention and asked them repeatedly to confirm that they would nonetheless comply with the

---

[1] Given the state of Plaintiffs' exhibit lists, including mismatched or missing Bates numbers and entries containing thousands of documents that require a manual and time-intensive analysis, all numbers in this motion are estimates that likely undercount the true volume of documents.

parties' stipulated deadline to exchange stamped, trial-ready exhibits on September 23.  *See* **Ex. B**, Parties' Trial Exhibit Stipulation § I.D (Aug. 19, 2019).  After Plaintiffs confirmed that they would ***not*** be honoring that deadline—a deadline met by each and every remaining Defendant— Defendants once again raised these issues with the Special Master.  **Ex. C**, Email from K. Swift to D. Cohen (Sept. 23, 2019).  Defendants explained the prejudice caused by Plaintiffs' continuing intransigence and requested an order: (1) striking Plaintiffs' exhibit list; (2) requiring Plaintiffs to provide a meaningful exhibit list of 5,000 documents no later than September 25; or (3) recommending that the Court remove the trial from the Court's calendar.  *Id.*

Plaintiffs filed substantially revised exhibit lists on September 23 and again on September 25, the deadline for filing exhibit lists with the Court.  ECF No. 1598.  The September 25 list added ***2,000 new exhibits***, included at least ***112,000 documents***, and was plagued with serious errors:

- As many as 70% of the Plaintiff-produced documents had descriptions that did not match the actual document;

- More than 4,400 exhibits were missing Bates information;

- Over 2,200 exhibits had missing or entirely non-descriptive "descriptions";[2] and

- Plaintiffs included multiple documents that Defendants had clawed back.

*See* **Ex. D**, Email from A. Harris to Plaintiffs (Sept. 27, 2019).  On that same day, Plaintiffs also unilaterally granted themselves an indefinite extension of the already-passed deadline for producing stamped versions of their trial exhibits, stating that "it is not technologically feasible to provide the Court with stamped copies at this time," and that Plaintiffs "will provide the Court and

---

[2] Examples of "descriptions" that Plaintiffs provided for their trial exhibits include "Document"; "RE:"; "Unnamed Document"; "13"; "Email no subject"; "IMAGE.png"; "Summit County Produced Document"; "None"; "[No Subject]"; "Unidentified Exhibits"; "McKesson Produced Document"; "SUBJECT"; "09001464807a85a5"; and "1. Other Stuff," to name a few.

Defendants with stamped copies of exhibits as they are completed." **Ex. E**, Email from D. Ackerman to Defendants (Sept. 25, 2019).

Defendants again promptly raised these concerns with Plaintiffs and the Special Master, once again asking the Special Master to strike Plaintiffs' exhibit list or recommend a continuance. **Ex. F**, Email from K. Swift to D. Cohen (Sept. 28, 2019); *see also* **Ex. G**, Letter from L. Flahive Wu to D. Cohen (Sept. 27, 2019).  The Special Master did not grant Defendants' requested relief but said he "expect[ed] by COB Monday [September 30] Plaintiffs will have undertaken last best efforts to address **fully and meaningfully _all_** of defendants' complaints." **Ex. H**, Email from D. Cohen to Counsel (Sept. 28, 2019) (emphasis in original).  He warned that, "[a]fter that, it is Judge Polster who will pass on whether defendants' requests should be granted.  Time is up." *Id.*

Plaintiffs filed another revised exhibit list on September 30 and yet another on October 1. Contrary to the Special Master's clear instruction, it does not come close to resolving Defendants' concerns.  In fact, the seventh list still includes at least 100,000 separate documents in more than 25,000 exhibits and fails to address the vast majority of Defendants' concerns.  Also on October 1, Plaintiffs purported to serve stamped exhibits—only to discover that more than half of their exhibits were missing and the rest did not comply with the parties' stipulation. *See* **Ex. B**, § I.E.3 (requiring PDFs with searchable text); *see also* **Ex. I**, Email from A. Harris to Plaintiffs (Oct. 2, 2019); **Ex. J**, Email from D. Ackerman to Defendants (Oct. 4, 2019).  As of today—eleven days after the September 23 deadline—Plaintiffs *still* have not served compliant trial exhibits.

## II.    Plaintiffs' Failures Contrast Starkly with Defendants' Compliance

The prejudice caused by Plaintiffs' intransigence is only magnified when compared to Defendants' compliance.  Defendants served Plaintiffs with substantially complete and functional joint and individual exhibit lists more than a month ago on the August 28 deadline.  Since that time, Defendants' original exhibit lists have remained largely static, with the small number of

supplemental exhibits clearly identified and branded with new exhibit numbers.  Defendants also served stamped exhibits on the September 23 deadline and served objections to Plaintiffs' exhibit list on the September 27 deadline.  Likewise, Defendants have substantially (and timely) complied with all of the parties' stipulated requirements to provide trial exhibit numbers, Bates numbers, descriptions, and searchable PDFs.  None of the same can be said about Plaintiffs.  Defendants' compliance has provided Plaintiffs' a one-sided advantage of having an extra five weeks to review Defendants' lists and stamped exhibits, prepare objections, and revise their own lists.

**III.     The Special Master's Order Does Not Cure the Prejudice to Defendants**

On a teleconference on October 1, the Special Master stated his intention to order both sides to reduce their exhibit lists by Saturday, October 5: from 25,000 to 4,000 for the two Plaintiffs and from 37,000 to 22,000 for the seven Defendants.  As the Special Master explained, "it's more than fair" that the number for Defendants is substantially higher than for Plaintiffs because "they go second" and "it's simply true that the defendants have individualized defenses that are less overlapping than the two plaintiffs."  Telecon Recording at 14:14-17:00.  But the Special Master again declined to provide any relief to Defendants for Plaintiffs' repeated and prejudicial failures and delay.  Later that day, after one Defendant settled, the Special Master entered the promised order but changed the reduced number of exhibits for the six remaining Defendants from 22,000 to 17,000, with no corresponding reduction to Plaintiffs' total.  ECF No. 2695.

Defendants object to the Special Master's reduction of Defendants' total exhibits, particularly the non-reciprocal reduction based on the settlement of one Defendant.  Any reduction should necessarily apply to both sides.[3]  For similar reasons, Defendants also object to the Special

---

[3] If anything, Plaintiffs' exhibit and witness lists should be reduced *more* than Defendants' when a co-defendant drops out of the case.  When the number of Defendants shrinks, the remaining

Master's reduction of Defendants' witness list.  *Id.*  Without knowing what the Plaintiffs' case will be—and in light of the fact that there are six Defendants with different defenses and competing interests—arbitrarily forcing Defendants to shorten their witness lists and to eliminate witnesses that may be necessary at trial is unreasonable and offends due process.

Most importantly, Defendants strenuously object to the Special Master's order for failing to address the severe prejudice caused by Plaintiffs' repeated and ongoing failures and delay. Defendants have expended valuable time simply trying to identify and correct errors and deficiencies in Plaintiffs' exhibit lists.  Just weeks before trial, Defendants are *still* waiting for a functional list and stamped, trial-ready exhibits.  Even *assuming* that Plaintiffs' revised list on October 5, just two weeks before trial, will finally address all of the fundamental errors Defendants have identified in Plaintiffs first seven lists, and even *assuming* that Plaintiffs will finally serve compliant exhibits, Defendants cannot fairly be expected to be ready for trial on October 21.

The only appropriate relief at this stage is to strike Plaintiffs' exhibit list or, if the Court is inclined to allow Plaintiffs still more time, to immediately remove the trial date from the Court's calendar and reschedule it for a time when Plaintiffs finally have complied with their obligations and the Court's orders, and Defendants have a fair chance to defend themselves.

---

Defendants may be forced to use limited trial time to put on evidence about those co-defendants. In contrast, Plaintiffs get more time to focus on the fewer remaining Defendants at trial.

October 4, 2019

Respectfully submitted,

/s/ Geoffrey E. Hobart

Geoffrey E. Hobart
Mark H. Lynch
Beth S. Brinkmann
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
bbrinkmann@cov.com

*Counsel for McKesson Corporation*

/s/ Robert A. Nicholas

Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

/s/ Enu Mainigi

Enu Mainigi
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com

*Counsel for Cardinal Health, Inc.*

/s/ Kaspar J. Stoffelmayr

Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Matthew W. Brewer
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
matthew.brewer@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

7

| | |
|---|---|
| */s/ John P. McDonald* | */s/ Steven A. Reed* |
| John P. McDonald | Eric W. Sitarchuk |
| C. Scott Jones | Steven A. Reed |
| Lauren M. Fincher | Harvey Bartle |
| Brandan J. Montminy | Rebecca J. Hillyer |
| LOCKE LORD LLP | MORGAN, LEWIS & BOCKIUS LLP |
| 2200 Ross Avenue, Suite 2800 | 1701 Market St. |
| Dallas, TX 75201 | Philadelphia, PA 19103-2921 |
| Tel.: (214) 740-8000 | Tel: (215) 963-5000 |
| Fax: (214) 756-8758 | Fax: (215) 963-5001 |
| jpmcdonald@lockelord.com | eric.sitarchuk@morganlewis.com |
| sjones@lockelord.com | steven.reed@morganlewis.com |
| lfincher@lockelord.com | harvey.bartle@morganlewis.com |
| brandan.montminy@lockelord.com | rebecca.hillyer@morganlewis.com |

*Counsel for Henry Schein, Inc. and Henry Schein Medical Systems, Inc.*

Nancy L. Patterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
Tel: (713) 890-5195
Fax: (713) 890-5001
nancy.patterson@morganlewis.com

Wendy West Feinstein
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219-6401
Tel: (412) 560-7455
Fax: (412) 560-7001
wendy.feinstein@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Tel: (305) 415-3000
Fax: (305) 415-3001
brian.ercole@morganlewis.com

*Counsel for Cephalon, Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., Warner Chilcott Company, LLC, Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, Actavis Totowa LLC, Actavis*

8

*Kadian LLC, Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City, and Actavis Laboratories FL, Inc., f/k/a Watson Laboratories, Inc.-Florida, and appearing specially for Teva Pharmaceutical Industries Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I, Kaspar J. Stoffelmayr, hereby certify that on this 4th day of October, 2019, the foregoing

document was served via the Court's ECF system to all counsel of record.


*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr

*Counsel for Walgreen Co. and Walgreen*
*Eastern Co.*