# EXHIBIT G

**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

September 27, 2019

**Via Electronic Mail**

Special Master David Cohen
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, OH 44113-1837
david@specialmaster.law

RE:   *In Re National Prescription Opioid Litigation*, No. 17-md-2804

Dear Special Master Cohen:

Plaintiffs have pushed the Court's pretrial process to the point of collapse by repeatedly disregarding Court orders, unilaterally granting themselves extensions, and purporting to meet deadlines only by exchanging meaningless submissions and then amending those submissions repeatedly. Plaintiffs' continued disregard for the Court's orders and the schedule established for this case is improper and highly prejudicial to all Defendants. Now, Plaintiffs have announced their plans to make changes and additions to their experts' reports. These changes are fundamental and material. Indeed, it appears that Plaintiffs intend to transform their damages claims completely.

Due to the Plaintiffs' repeated failings, Defendants ask the Special Master (i) to substantially limit the evidence that Plaintiffs may introduce at trial and (ii) to strike any and all new expert material that Plaintiffs may seek to rely on or otherwise present in this case. In the alternative, if the Special Master is inclined to offer Plaintiffs additional time to correct their failings, we respectfully request that the Special Master recommend to the Court that the trial date be immediately removed from the Court's calendar.

A.   Changes and Additions to Expert Reports

Over the last few days, Plaintiffs have made or announced their plans to make changes and additions to their experts' reports. These changes are nontrivial and have the potential to transform Plaintiffs' damages claims completely.

As you will recall, Plaintiffs attempted several months ago to file new rebuttal reports by David Cutler, Thomas McGuire, and others as "declarations" in support of their oppositions to Daubert motions. Defendants promptly objected to this effort and you granted Defendants' motion to strike these new reports in August. You correctly

COVINGTON

observed at that time that these new reports had come "very late in the process." Ex. A, Email from D. Cohen to Counsel (Aug. 13, 2019). You further noted that permitting them would have required "additional depositions by defendants." *Id.* This was "not remotely possible" in light of this litigation's pace. *Id.* Notwithstanding your very clear August 13 ruling, Plaintiffs selected a few of the excluded calculations, gave them a new title — "errata" — and served them on Defendants again last Friday, September 20. Plaintiffs did not ask you to formalize your August order, did not pursue an appeal, and did not request reconsideration. They simply served some of the very same stricken analyses and calculations as if nothing had happened. Defendants immediately moved to strike. Again. The new calculations and analyses were late and prejudicial in August; they were later and even more prejudicial in September. *See* Ex. B, Motion to Strike sent by D. Haller on Sept. 23, 2019 at 6:45 pm.[1]

Then, on Wednesday of this week, Plaintiffs previewed an effort to amend or supplement an unspecified number of their expert reports to assert claims for "future damages." *See* Pls.' Trial Br. at 5, Dkt. No. 2660. These claims are new, asserted on the eve of trial, and were not previously supported in any of Plaintiffs' expert reports. This effort will violate the Court's scheduling orders, which required expert reports to be submitted by no later than March 25, 2019. The Court's prior orders make clear that "[n]o other documents relating to expert reports will be produced" after the expert disclosure deadline. *See* Dkt. 232 at 18, Dkt. 1306. Plaintiffs' most recent tactic also conflicts with your appropriate decision to strike earlier attempted supplements to Plaintiffs' damages expert reports that were submitted in the form of declarations opposing Daubert motions. *See* Ex. A, D. Cohen Aug. 13, 2019 email. Moreover, any such new or "amended" expert reports would be severely prejudicial: there is simply no time for the discovery that would be required to test and respond to new expert reports on future damages. Not only would Defendants need time to review and analyze the new reports with their clients and experts, they would need time to prepare for and take depositions of Plaintiffs' experts, time for their own experts to prepare responsive opinions, and time to prepare for the presentation of this new evidence at trial. While Plaintiffs acknowledge that their new expert reports would require new expert depositions, Defendants believe it is quite likely that such new claims regarding "future damages" would also necessitate re-opening certain fact witness depositions. It is simply not possible to have a fair trial on issues this complex if Plaintiffs can layer in new damages claims at this late date.

---

[1] Plaintiffs claim in a recent letter that these new calculations merely correct a mathematical error. See Letter from A. Bierstein to D. Cohen (Sept. 26, 2019). Defendants have not yet had time to consider and evaluate this claim and reserve their right to do so. Because Plaintiffs do not explain the error or its nature, there is no way to test their assertion that it is a simple math mistake. They also claim to have disclosed the error several months ago. But that is incorrect. Defendants asked Dr. Cutler about Plaintiffs' supposed correction in April, and he could not explain it. *See* Cutler Dep. Tr. 594:11–597:24. And in any event, Plaintiffs give no reason why it took them so long to serve their errata if indeed it is all about a simple math mistake. Their conduct in this respect only underscores that they are not ready for trial.

**COVINGTON**

Plaintiffs' explanations for reinventing their future damages claims have no merit.  Plaintiffs assert that their "future damages overlap with, but are separately quantifiable from, the funds needed to pay for an abatement plan." *Id.* at 4.  They also argue that future monetary damages and a monetary abatement remedy are "analytically and quantitatively different." *Id.* at 4 n. 2.  By their own reasoning then, nothing prevented Plaintiffs and their experts from drawing up distinct damages and abatement estimates in March - when their expert reports were due.  It is too late to do so now.

Notably, it was Plaintiffs who asked for their claims to be tried to separate fact-finders in the first place.  They argued that no party possessed a right to a jury trial on public nuisance, neither for liability nor remedy.  They nonetheless claimed a right to try their legal claims (OCPA, conspiracy, and RICO) to a jury.  For that reason they are flatly disingenuous when they write in their trial brief that they "had no notice that the Court intended to hear evidence pertaining to legal remedies separately from evidence pertaining to equitable abatement and had not planned to separate the evidence pertaining to those remedies."  *Id.* at 5.

Similarly, on August 28, shortly after the Court excluded the opinions of expert Seth Whitelaw, Plaintiffs served a second supplemental list of reliance materials for expert James Rafalski that identified hundreds of new documents, pleadings, and depositions allegedly "relied on" by Mr. Rafalski in forming his opinions.  The vast majority of these materials were produced before Mr. Rafalski's (1) original report, (2) first supplemental report, and (3) deposition.  Plaintiffs' attempt to conduct an end-run around the exclusion of Mr. Whitelaw by having Mr. Rafalski adopt his opinions through untimely and improper supplementation should not be allowed.  Defendants wrote Plaintiffs on September 10 and September 19 seeking confirmation that Mr. Rafalski does not "intend to offer any undisclosed opinions at trial and that he does not intend to rely upon or make use of documents available prior to his report but not relied upon him at that time." *See* Ex. C, Email sent by C. Eppich on Sept. 19 at 8:49 am.  Plaintiffs have ignored this request.  Defendants interpret Plaintiffs' silence on this issue as consent and confirmation that Mr. Rafalski will not offer any undisclosed opinion or rely on any late-disclosed "reliance" materials.  Defendants ask the Special Master to confirm that Mr. Rafalski will be barred from any such undisclosed opinions.

In light of the foregoing, Defendants respectfully request that you, as Special Master, strike **all** new expert material, including the "errata" of Cutler and McGuire, which attempts to resubmit supplemental opinions previously rejected by the Court, *see* Ex. B, Motion to Strike Cutler and McGuire Errata sent by D. Haller on Sept. 23 at 6:45 pm, and preclude any other supplemental expert reports contemplated in Plaintiffs' pretrial brief.

    B.    Exhibit List

Plaintiffs' exhibit list is a moving target.  Plaintiffs have served **five** versions of their exhibit list over the last month, and each one has been riddled with problems.  On the August 28 deadline for exchanging exhibit lists, Dkt. 2072, Plaintiffs served a list of

**COVINGTON**

approximately 20,000 documents. Two days later, Plaintiffs served an "amended" exhibit list that had ballooned to at least 120,000 documents. Defendants reviewed that exhibit list and discovered multiple, significant issues and deficiencies. Some single entries comprised entire document productions of tens of thousands of documents. To compound these problems, Plaintiffs changed exhibit numbers between their original list and their amended list, making it impossible for Defendants to determine what changed. After several failed meet and confers, Defendants brought these exhibit list issues to your attention. You cautioned that Plaintiffs' failure to "timely streamline their exhibit and witness list to something realistic and useful to opposing parties and the Court" would "risk[] an order that could meaningfully impact P's ability to put on their case." Ex. D, Email from D. Cohen to Counsel (Sept. 17, 2019).

Plaintiffs did not heed your warning. Instead, the next day, Plaintiffs served another amended exhibit list containing over 128,000 entries and including many of the same problems. Defendants promptly brought these issues to Plaintiffs' attention, and, receiving no satisfactory response, raised these issues to you in an email on September 23. Ex. E, Email from K. Swift to D. Cohen (Sept. 23, 2019). Defendants explained the prejudice caused by Plaintiffs' intransigence and requested an order: (1) striking Plaintiffs' exhibit list; (2) requiring Plaintiffs to provide a meaningful exhibit list of 5,000 documents by September 25; or (3) removing the trial date from the Court's calendar. *Id.*

Later that day, Plaintiffs acknowledged that they had no intention of following Court-ordered pretrial deadlines and were instead "continuing to reduce the number of exhibits" at their own pace. Ex. F, Email from D. Ackerman to D. Cohen (Sept. 23, 2019). They served yet another amended exhibit list containing 70,000 documents. Plaintiffs also made clear that they had no intention of complying with the parties' stipulated agreement to produce branded copies of exhibits on September 23. On September 23, all Defendants produced branded copies of exhibits; Plaintiffs did not.

On September 25, the deadline for filing exhibit lists with the Court, Dkt. 1598, Plaintiffs served their fifth version of the exhibit list, which eliminated some entries but added 2,000 new exhibits to the list. That same day, Plaintiffs unilaterally granted themselves an indefinite extension for producing stamped versions of exhibits to the Court, stating that "it is not technologically feasible to provide the Court with stamped copies at this time. We will provide the Court and Defendants with stamped copies of exhibits as they are completed." Ex. G, Email from D. Ackerman to Defendants (Sept. 25, 2019). Any problems with "technological feasibility" are of the Plaintiffs' own making because the fifth version of their exhibit list remains wildly overbroad and disconnected from any realistic version of what Plaintiffs may present at trial.

Even this untimely list contains serious errors. Defendants have already brought to your attention deficiencies such as mismatched or missing Bates numbers and missing descriptions. Defendants' most recent analysis of the list has also revealed that in many cases the descriptions of documents on Plaintiffs' exhibit list fundamentally misrepresent the identified Bates-stamped document. Defendants reviewed a sample set of 35 documents produced by Plaintiffs and identified this sort of fundamental error

COVINGTON

in no less than 25 of those sampled documents.  For example, P-029969 is described by Plaintiffs as an indictment issued in the Western District of Pennsylvania, but the Bates–stamped document is a Mallinckrodt "Guide to Business Conduct."  A full list of these 25 is attached as Ex. H.  These and other errors that pervade Plaintiffs' exhibit list render it unusable.  Defendants have expended valuable time simply trying to identify and correct the errors and deficiencies in Plaintiffs' exhibit list.   Defendants have been – and continue to be – prejudiced by Plaintiffs' conduct as this is time that Defendants could have devoted to meaningful trial preparation.

Given the ongoing material failures to abide by the Court's orders, we respectfully request that the Special Master strike Plaintiffs' exhibit list, consistent with the Special Master's statement of September 17 that Plaintiffs' ongoing failures "risk[ed] an order that could meaningfully impact Ps' ability to put on their case."

Defendants regret that we are once again forced to seek your urgent assistance with these matters.  However, Plaintiffs' ongoing conduct has left us with no choice.

Sincerely,

/s/ Laura Flahive Wu

Laura Flahive Wu

cc:	Plaintiffs' Liaison Counsel
	Defendants' Liaison Counsel