UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track One Cases | |

**JOINT SUBMISSION REGARDING JURY INSTRUCTIONS AND VERDICT FORMS**

  Pursuant to the Court's orders, the parties have worked diligently and in good faith to reach agreement wherever possible on proposed jury instructions for the upcoming trial.  Both sides have made considerable adjustments in their initial jury instructions that they served on one another.  They also have reached agreement on numerous basic form instructions that both sides believe will be relevant to this case.  Nevertheless, the parties have struggled in their attempts to find common ground on proposed jury instructions concerning the causes of action and affirmative defenses at issue.  These disagreements relate to fundamental, substantive issues concerning the legal standards required for liability.  These are not minor disagreements concerning word choices.  Instead, the differences reflect bona fide disagreements over legal issues—issues on which the parties cannot compromise without potentially prejudicing their appellate rights.[1]

---

[1] The parties reserve their rights to revise their proposed instructions, submit additional instructions, or withdraw instructions due to developments at trial, legal rulings by the Court, or for any other reason.

To assist the Court in better understanding the parties' sticking points, both Plaintiffs and Defendants have set out below a sample of the important areas of disagreement from each party's perspective.

Pursuant to the Court's order, the parties also attach a number of exhibits.  Exhibit 1 identifies those proposed jury instructions on which the parties have agreed.  Exhibit 2 sets forth Plaintiffs' proposed jury instructions with Defendants' objections.  Exhibit 3 sets forth Defendants' proposed jury instructions with Plaintiffs' objections.[2]  Exhibit 4 is Plaintiffs' proposed verdict form with Defendants' summary objections.  Exhibit 5 is Defendants' proposed verdict form with Plaintiffs' summary objections.  The parties have not offered specific objections to each other's verdict forms at this time because the form and substance of the verdict form will depend on the Court's resolution of the substantive disagreements set forth in the parties' objections to the jury instructions.[3]

The Court has instructed counsel to be prepared to appear in Court on the morning of Monday, October 7, to attempt to make further progress toward agreement on these instructions.  Counsel are, of course, prepared to abide by the Court's order if that remains the Court's wish.  Counsel for all parties nevertheless believe that they have done all they can at this point to reach agreement on these instructions.  The parties agree that the key remaining areas of dispute involve

---

[2] Because this has been an iterative process, with each side modifying its instructions and objections in light of changes the parties' ongoing discussion, there may well be instances in which an objection no longer applies due to a change in the proposed instruction.  Likewise, due to recent changes to the parties at trial and the claims being pursued, there may be others where these proposals are somewhat out-of-date.  Both sides have attempted to keep these problems to a minimum and believe that the attached documents will provide useful assistance to the Court in preparing its own draft instructions for the jury.

[3] The proposed verdict forms are those the parties initially exchanged and may not reflect later changes made to the proposed jury instructions, including those made in response to the other party's objections.  The parties reserve the right to revise their respective verdict forms, among other things, to account for these changes and any order of the Court resolving the parties' disagreements over the jury instructions or any other legal rulings.

fundamental legal issues that can be resolved only by the Court itself. Counsel therefore request to be relieved of the obligation to appear in Court on Monday, October 7 to continue these negotiations.

## Plaintiffs' and Defendants' Statements Regarding Areas of Disagreement

**Plaintiffs' Statement**

Plaintiffs used model instructions, with certain clarifying points for the context at hand, and direction from this Court's summary judgment rulings and other orders to draft their proposed instructions and verdict form. Plaintiffs' proposed instructions on public nuisance, for example, track the language in this Court's orders, the Restatement (Second) of Torts § 821B, and binding precedent such as the Ohio Supreme Court's decision in *Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480, 95 Ohio St. 3d 416, 768 N.E.2d 1136 (Ohio 2002). Likewise, Plaintiffs' proposed instructions for the Ohio Corrupt Practices Act ("OCPA") claim are based on Ohio model instructions with clarifying language concerning the claims at issue. Because the Sixth Circuit does not have model instructions for Racketeer-Influenced and Corrupt Organizations Act ("RICO") claims, Plaintiffs based their proposed instructions on form instructions from a treatise, supplementing where necessary with case-specific needs from binding precedent from the Supreme Court, Sixth Circuit, and other circuits if necessary.

Defendants, by contrast, drafted argumentative instructions which, among other errors, propose to introduce additional requirements that are not elements of the claims at issue, and which are based on selective citation to case-law in other jurisdictions (even where there is Ohio law and language from this Court on point). On the RICO counts, rather than working from one model, Defendants selectively pull language from a patchwork of civil and criminal instructions from the Third and Eleventh Circuits. In doing so, they rely on case-law which is outdated and

has been overruled. They also seek to include instructions to assert a number of affirmative defenses, including defenses that are purely legal and have already been rejected by the Court (e.g., preemption), without any showing that these defenses will bear any relevance to this trial (e.g., Noerr-Pennington) or that Defendants will be able to make a sufficient showing to justify instructing the jury on the defense. Moreover, many of Defendants' proposed instructions attempt to re-litigate issues on which this Court has already ruled adversely to their position.

Finally, Defendants' objections to Plaintiffs' proposed instructions (Defendants' Proposed Instructions A-G) included newly proposed jury instructions, the majority of which were completely devoid of supporting citations to model jury instructions, or the law. Plaintiffs attempted to incorporate some of Defendants' newly proposed instructions, where appropriate, by including model Sixth Circuit instructions regarding felonious violation of CSA section 841, and correcting Defendants' incomplete reliance on a jury instruction from the Western District of Virginia regarding felonious violation of CSA section 843. However, the majority of Defendants' newly proposed instructions are nothing more than affirmative defenses and poorly drafted (and incorrect) statements of fact masquerading as jury instructions that cannot and should not be read to the jury.

**Defendants' Statement**

Defendants highlight below five critical areas of disagreement between the parties that impact the jury instructions and will require the Court's guidance. Given the substantive nature of these disagreements, Defendants respectfully submit that they will not be narrowed by additional discussion among counsel.[4]

---

[4] The highlighted issues are not intended to be exhaustive; nor do Defendants purport to set forth fully their arguments on these issues. Instead, this short submission is intended only to identify several substantive

### A. Legal Issue One: Causation

A first principal area of disagreement relates to the causation requirement applicable to Plaintiffs' claims.[5] To prove proximate causation, Plaintiffs must establish a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). Injuries that are purely contingent on harm to third parties are not direct. *Id.*; *Perry v. American Tobacco Co.*, 324 F.3d 845 (6th Cir. 2003). Where "independent actors [stand] between the alleged misconduct and the alleged injury," the directness requirement is not satisfied. *City of Cleveland v. Ameriquest Mortg. Secs.*, 615 F.3d 496 (6th Cir. 2010).

Defendants' proposed causation instructions properly track these black-letter requirements. Plaintiffs' submissions, by contrast, erroneously suggest that the "touchstone of proximate cause is foreseeability." That assertion runs counter to binding Sixth Circuit authority, which makes clear that foreseeability alone is not sufficient to prove proximate causation. *Id.* at 502 ("[T]he requirement of a direct injury is … distinct from foreseeability and applies even if the Defendants intentionally caused the alleged course of events.") (applying Ohio law). Accordingly, Defendants are entitled to a proximate causation instruction that (1) properly sets forth the direct injury requirement, and (2) makes clear that this requirement is distinct from, and in addition to, the foreseeability requirement.

---

issues that Defendants believe will require a decision by the Court in advance of trial and that cut across the jury instructions.

[5] The same proximate causation standard applies to Plaintiffs' RICO, OCPA, and public nuisance claims. *E.g.*, *Cleveland v. Ameriquest Mort. Secs., Inc.*, 615 F.3d 496, 503 (6th Cir. 2010) (noting that "the Ohio Supreme Court has adopted the *Holmes* Court's proximate cause analysis"); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1148 (Ohio 2002) (applying the *Holmes* proximate cause test to a public nuisance claim); *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 850 (6th Cir. 2003) (noting that "the RICO statute incorporates general common law principles of proximate causation," and applying *Holmes* to Ohio state-law tort claims); *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *5 (Ohio Ct. App. 2013) ("The same proximate cause requirements … apply to both [RICO and OCPA] causes of action.").

5

### B. Legal Issue Two: Scienter Requirement For Public Nuisance

A second principal area of disagreement relates to the "intent" requirement applicable to Plaintiffs' absolute public nuisance claim. Defendants' proposed instructions require the jury to find that Defendants intended to create the "conditions found to be a nuisance," while Plaintiffs' proposed instructions merely ask the jury to find that Defendants intended to "do what [they] did."

Defendants' instruction is in accord with the governing law and this Court's decisions. Under Ohio law and the Restatement, "intentional" in this context means "that the creator of [the nuisance] intended to bring about the conditions which are in fact found to be a nuisance." *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017) (quoting *Angerman v. Burick*, 2003 WL 1524505, *2 (Ohio App. 2003)). As the Restatement explains, "to make an invasion intentional … the actor … must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from his conduct." Restatement (Second) of Torts § 825 cmt. c. The Court acknolwedged this very requirement in its summary judgment opinion. ECF No. 2578, at 5. In stark contrast, and contrary to Ohio law, Plaintiffs' proposed instruction would permit a finding of "intentionality" for all but accidental conduct. Defendants are entitled to an intent instruction that properly requires the jury to find that Defendants intended to bring about the conditions that are deemed to constitute a public nuisance.

### C. Legal Issue Three: Failure to Identify Unlawful Acts for Civil Conspiracy Claim

A third principal area of disagreement relates to Plaintiffs' failure to identify the specific predicate "unlawful acts" that form the basis of their civil conspiracy claims. In their jury instructions, Plaintiffs say, without more, that the relevant unlawful act "involves the fraudulent marketing and failure to maintain effective controls to prevent the diversion of opioids." Defendants maintain that this statement is vague and indefinite and that such conduct is not

6

independently actionable as required by Ohio law. *Davis v. Clark Cty. Bd. of Commrs.*, 994 N.E.2d 905, 909 (Ohio 2013) ("A claim for conspiracy cannot be made … unless something is done which, in the absence of the conspiracy allegations, would give rise to an independent cause of action."). In any event, it is Plaintiffs' burden to identify the actionable predicate acts underlying their claim.[6]

### D. Legal Issue Four: Predicate Acts

A fourth principal area of disagreement relates to Plaintiffs' reliance on the CSA and its regulations to establish their claims.[7] For example, to support their RICO and OCPA claims, Plaintiffs' proposed instruction states that violations of §§ 823, 841, 842, and 843 are predicate acts. But Plaintiffs did not identify §§ 823, 841, or 842 in response to an interrogatory asking Plaintiffs to list the predicate acts on which their RICO and OCPA claims relied. *See* ECF No. 2666 at 18. In any event, alleged violations of §§ 823 and 842 are not predicate acts because such conduct does not constitute "felonious manufacture," "concealment," or "selling, or otherwise dealing in a controlled substance," as required by 18 U.S.C. § 1961(1)(D). And the conduct Plaintiffs allege does not violate § 841; Plaintiffs identify no statutory provision *of Subchapter I* (*i.e.*, §§ 801–904) that Defendants allegedly violated or any other basis to conclude that

---

[6] The Court has referred to the following as the alleged unlawful acts: "public nuisance, OCPA, and RICO claims." ECF No. 2568 at 12. But RICO and OCPA cannot be unlawful acts here; a civil conspiracy claim premised on a RICO or OCPA conspiracy would be entirely duplicative of the RICO and OCPA conspiracy claims. To the extent the RICO and OCPA claims themselves rely on alleged violations of suspicious order "duties," ECF 2483, those claims are not independently actionable. Lastly, public nuisance cannot be the underlying unlawful act because Plaintiffs have disclaimed all compensatory damages for nuisance, and a civil conspiracy claim premised on public nuisance as the unlawful act runs contrary to that disclaimer. *See* ECF No. 2212 at 1 n.2 ("Plaintiffs have expressly disclaimed recovery for past damages under their public nuisance claim and are seeking only equitable abatement relief.").

[7] There is no private right of action under the Controlled Substances Act. *See, e.g.*, *Smith v. Hickenlooper*, 164 F. Supp. 3d 1286, 1290 (D. Colo. 2016), *aff'd sub nom. Safe Sts. All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017). Plaintiffs therefore could not bring a direct claim for violation of the provisions of the CSA Plaintiffs cite and should not be able to bootstrap such a claim through common law nuisance, RICO, OCPA, or civil conspiracy.

Defendants were not authorized to distribute controlled substances.  Finally, while this Court has indicated that a violation of § 843 may constitute a predicate act,[8] Plaintiffs have not identified "any application, report, record, or other document required to be made, kept, or filed under … subchapter [I] or subchapter II" of the CSA that Defendants failed to make.[9]

### E. Legal Issue Five:  Scienter Requirement For RICO

A fifth principal area of disagreement relates to RICO's scienter requirement.  Defendants' instructions require Plaintiffs to prove, for each Defendant, that it made decisions on behalf of the enterprise or that it knowingly carried them out under the direction of others who made decisions on behalf of the enterprise.  Plaintiffs' RICO instructions omit any "knowingly" requirement.  Defendants' submission follows binding Sixth Circuit precedent and the pattern Third Circuit jury instructions regarding a RICO enterprise.

The Supreme Court in *Reves* held that to satisfy the RICO element of "participation in the conduct of the enterprise's affairs," "it must be proven that the defendant participated in the operation or management of the enterprise."  *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)).  The Sixth Circuit has repeatedly and unequivocally affirmed that to satisfy the *Reves* "operation or management test," plaintiff must prove that defendant "either ma[de] decisions on behalf of the enterprise or knowingly carried them out."  *Fowler*, 535 F.3d at 418; *see also United States v. Nicholson*, 716 F. App'x 400, 406 (6th Cir. 2017); *United States v. Donovan*, 539 F. App'x 648, 654 (6th Cir. 2013); *Ouwinga v.*

---

[8] Defendants maintain that the Court erred as a matter of law in ruling "that a violation of 21 U.S.C. § 843(A)(4)(a) can constitute a predicate act under 18 U.S.C. § 1961(1)(D)."  *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2580 at 3.

[9] Defendants' alleged failure to inform DEA of "suspicious orders" cannot constitute a failure to make a report required under the CSA because (prior to October 2018) that requirement was set forth only in a regulation, *see* 21 C.F.R. § 1301.74(b), not subchapter I or II of the CSA.

*Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 793 (6th Cir. 2012).  In addition, the Third Circuit has recognized that "knowingly" is a requirement in the "Conduct or Participate" and "Pattern of Racketeering Activity" elements of a RICO claim.  *See* Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C (2018).  Accordingly, Defendants are entitled to a RICO instruction that includes a "knowingly" requirement.[10]

\*　　\*　　\*

In light of the fundamental differences between the parties and Defendants' need to protect their appellate rights, Defendants respectfully submit that the parties will not be able to reach further agreement regarding these issues through the meet-and-confer process.

---

[10] This applies equally to the instruction on Plaintiffs' OCPA claim.  As the Court has explained, because OCPA "is patterned after the federal RICO statute … courts have found that the elements for an [Ohio RICO] violation are the same as those for a [federal] RICO claim."  *In Re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF. No. 2580 at 1 n.1 (alterations in original).

Dated: October 4, 2019                                    Respectfully Submitted,

*/s/Paul J. Hanly, Jr.*                                    *s/ Joseph F. Rice*
Paul J. Hanly, Jr.                                         Joseph F. Rice
**Simmons Hanly Conroy**                                   **Motley Rice LLC**
112 Madison Avenue, 7th Floor                              28 Bridgeside Blvd.
New York, NY 10016                                         Mt. Pleasant, SC 29464
(212) 784-6400                                             (843) 216-9000
(212) 213-5949 (fax)                                       (843) 216-9290 (Fax)
phanly@simmonsfirm.com                                     jrice@motleyrice.com

*Paul T. Farrell, Jr., Esq.*                               */s/ Peter H. Weinberger*
**Greene Ketchum, LLP**                                    Peter H. Weinberger (0022076)
419 Eleventh Street                                        **Spangenberg Shibley & Liber**
Huntington, WV 25701                                       1001 Lakeside Avenue East, Suite 1700
(304) 525-9115                                             Cleveland, OH 44114
(800) 479-0053                                             (216) 696-3232
(304) 529-3284 (Fax)                                       (216) 696-3924 (Fax)
paul@greeneketchum.com                                     pweinberger@spanglaw.com

*Plaintiffs' Co-Lead Counsel*                              *Plaintiffs' Liaison Counsel*

Hunter J. Shkolnik                                         *Linda Singer*
Napoli Shkolnik                                            **Motley Rice LLC**
360 Lexington Ave., 11th Floor                             401 9th St. NW, Suite 1001
New York, NY 10017                                         Washington, DC 20004
(212) 397-1000                                             (202) 386-9626 x5626
(646) 843-7603 (Fax)                                       (202) 386-9622 (Fax)
hunter@napolilaw.com                                       lsinger@motleyrice.com

*Counsel for Plaintiff Cuyahoga County, Ohio*              *Counsel for Plaintiff Summit County, Ohio*

Dated: October 4, 2019

 /s/ Geoffrey E. Hobart 
Geoffrey E. Hobart
Mark H. Lynch
Paul W. Schmidt
Christian J. Pistilli
Phyllis A. Jones
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
swinner@cov.com
pschmidt@cov.com
pajones @cov.com

*Counsel for McKesson Corporation*

 /s/ Robert A. Nicholas 
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation and AmerisourceBergen Corporation*

Respectfully Submitted,

 /s/ Enu Mainigi 
Enu Mainigi
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com

*Counsel for Cardinal Health, Inc.*

 /s/ John P. McDonald 
John P. McDonald
C. Scott Jones
Lauren M. Fincher
Brandan J. Montminy
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Tel: (214) 740-8000
Fax: (214) 756-8758
jpmcdonald@lockelord.com
sjones@lockelord.com
lfincher@lockelord.com
brandan.montminy@lockelord.com

*Counsel for Henry Schein, Inc. and Henry Schein Medical Systems, Inc.*

| | |
|---|---|
|   /s/ Steven A. Reed<br>Steven A. Reed<br>Eric W. Sitarchuk<br>Rebecca J. Hillyer<br>Harvey Bartle<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>1701 Market Street<br>Philadelphia, PA 19103-2921<br>Tel: (215) 963-5000<br>Fax: (215) 963-5001<br>steven.reed@morganlewis.com<br>eric.sitarchuk@morganlewis.com<br>rebecca.hillyer@morganlewis.com<br>harvey.bartle@morganlewis.com | *Counsel for Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., Warner Chilcott Company, LLC, Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, Actavis Totowa LLC, Actavis Kadian LLC, Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City, Actavis Laboratories FL, Inc., f/k/a Watson Laboratories, Inc.-Florida, and appearing specially for Teva Pharmaceutical Industries Ltd.*[11] |

Nancy L. Patterson
**MORGAN, LEWIS & BOCKIUS LLP**
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
Tel:  (713) 890-5195
nancy.patterson@morganlewis.com

Wendy West Feinstein
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219-6401
Tel: (412) 560-7455
Fax: (412) 560-7001

Brian M. Ercole
**MORGAN, LEWIS & BOCKIUS LLP**
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Tel: (305) 415-3000
brian.ercole@morganlewis.com

 /s/ Kaspar Stoffelmayr
Kaspar Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Matthew W. Brewer
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
matthew.brewer@bartlitbeck.com

Alex J. Harris
**BARTLIT BECK LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*