UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track One Cases | |

**EXHIBIT 2 – PLAINTIFFS' PROPOSED JURY INSTRUCTIONS
AND DEFENDANTS' OBJECTIONS**

The following are Plaintiffs' proposed instructions with Defendants' objections to those proposed instructions.

### No. 1.  Public Nuisance - Generally

Plaintiffs contend that Defendants have created a public nuisance by unreasonably increasing the availability of opioids in Summit and/or Cuyahoga County through their marketing and/or distribution activities.  In order to find for the Plaintiffs on this claim you must find by the greater weight of the evidence first, that a public nuisance related to opioids exists in Summit and/or Cuyahoga Counties; second, that one or more of the Defendants was a substantial factor in causing the public nuisance; and third that they did so intentionally and unreasonably or in violation of a statute for the protection of others.[1]

You are not being asked to assess damages for public nuisance or to determine the remedy for this claim. If you find that there is a public nuisance for which one or more of the Defendants is legally responsible, the Court will determine the remedy for the nuisance.

***Defendants' Objections:***

Plaintiffs' Proposed Instruction No. 1 misleadingly frames Plaintiffs' nuisance claim, omits key elements of an intentional absolute nuisance cause of action, conflicts with controlling law, and confuses the issues.

Defendants object to the instruction's introductory sentence as unnecessary, biased, and a mischaracterization of Plaintiffs' burden on their public nuisance claim.  The sentence does not state what Plaintiffs believe to be the nuisance—just the mechanism ("increasing availability of opioids") by which Plaintiffs allege Defendants caused the nuisance.  That causation theory speaks to only one element of Plaintiffs' claim and therefore is not an inappropriate preface to the Court's instructions on public nuisance.

---

[1] *Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480, ¶ 8, 95 Ohio St. 3d 416, 419, 768 N.E.2d 1136, 1142 (Ohio 2002).

Second, by instructing that the jury must ***separately*** find (1) whether "a public nuisance related to opioids exists," and (2) whether Defendants are in "violation of a statute for the protection of others," the instruction suggests that that an absolute nuisance claim based on violation of a statute allows for proof on the existence of some nuisance separate and apart from the statutory violation itself. That suggestion is contrary to Ohio law, which makes clear that for absolute nuisance claims based on statutory violations the nuisance is the statutory violation—not some resulting condition or harm. *See Taylor v. City of Cincinnati*, 55 N.E.2d 724, 730 (1944) (defining statutory absolute nuisance  in damages action as "the unlawfully doing of anything, or the permitting of anything under one's control or direction to be done, which results in injury to another"); *Uland v. S.E. Johnson Cos.*, 1998 WL 12086 (Ohio Ct. App. 1998) ("An example of [an absolute nuisance based on] unlawful conduct causing unintentional harm … is the violation of a safety statute; the violation of a specific legal requirement established for the protection of others imposes absolute liability…."). To avoid confusion, the Court should separately instruct the jury on plaintiffs' intentional absolute nuisance theory, which requires proof of a condition constituting a nuisance, and its statutory violation absolute nuisance theory, which does not.

Defendants additionally object to this instruction omission of the requirements of but-for and proximate causation under Ohio law, replacing both with a watered down description of the substantial factor test.  As a general rule, a defendant's conduct is only a "substantial factor" if it is a but-for cause of the plaintiff's injury—i.e., "if the harm would not have been sustained if the actor had not been negligent."  Restatement (Second) of Torts § 432(1).  The only exception to that requirement is "where there are simultaneous actors, [any] of whose acts *could have been* 'but for' causes of plaintiffs' injuries."  *In re Benedectin Litig.*, 857 F.2d 290, 311 (6th Cir. 1988)

(emphasis added); *see* Restatement (Second) of Torts § 432(2) ("If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, *and each of itself is sufficient to bring about harm* to another, the actor's negligence may be found to be a substantial factor in bringing it about") (emphasis added).  Under that rule, it would be legal error to omit a but-for causation instruction as to any particular defendant unless plaintiffs introduce evidence allowing a finding that the defendant's conduct was "of itself … sufficient," Restatement (Second) of Torts § 432(2), to bring about the alleged nuisance, *see In re Benedectin Litig.*, 857 F.2d at 310-11.  Even if Plaintiffs make such a showing, to accurately reflect Ohio law and the Restatement (Second), any charge on "substantial factor" causation would have to instruct the jury that it can find a "substantial factor" in the absence of but-for causation only if it finds that a Defendant's conduct was "of itself … sufficient" to cause the alleged nuisance.  *Id.*; Restatement (Second) of Torts § 432.

For similar reasons, Plaintiffs' proposed instruction is misleading for failing to list proximate cause among the elements of public nuisance.  Proximate cause—including both directness and foreseeability—is a core element of public nuisance claims under Ohio law, even where Plaintiffs allege a nuisance with multiple possible causes.  *See, e.g.*, *City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*, 863 F.3d 474, 480 (6th Cir. 2017).

Defendants further object to the instruction as incomplete because it fails to state that Plaintiffs must prove Defendants intended to create the conditions that are deemed to be a nuisance.  *See Angerman v. Burick*, 2003 WL 1524505, at *2 (Ohio Ct. App. 2003) (defendant must have "intended to bring about the conditions which are in fact found to be a nuisance").

Defendants further object to the instruction's failure to mention Plaintiffs' burden to prove, as to each Defendant, that such Defendant possesses or controls the instrumentalities

causing the nuisance. *See Kramer v. Angel's Path, LLC*, 882 N.E.2d 46, 56 (Ohio Ct. App. 2007); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002). This Court has recognized that this is a required element of public nuisance claims, *see In re Nat'l Prescription Opiate Litig.*, 2019 WL 3737023, at *10 (N.D. Ohio June 13, 2019), and Plaintiffs' proposal to omit any instruction about it conflicts with Ohio law. *See Beretta U.S.A. Corp.*, 768 N.E.2d at 1143 (finding requirement satisfied where plaintiff "alleged … ongoing conduct" by which defendant gun manufacturers "control the creation and supply of [an] illegal, secondary market for firearms").

Defendants additionally object to the instruction's recitation of public nuisance elements because it misleadingly suggests that the jury could find for both Plaintiffs in the event only one Plaintiff carried its burden, and fails to clarify that each Plaintiff must satisfy its burden as to **each Defendant** to find in that Plaintiff's favor against that Defendant.

Defendants further object to this instruction's recitation of the statutory elements because it misleadingly suggests that the jury could find for both Plaintiffs in the event only one Plaintiff carried its burden, and fails to clarify that the Plaintiffs must prove their nuisance claim as to each Defendant.

In addition, the phrase "public nuisance related to opioids" is vague and likely to confuse the jury. Plaintiffs are entitled to instructions consistent with their theory of the case and trial evidence, but any such instruction must be clear and specific enough to assist the jury rather than mislead or confuse it. *See, e.g. Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 787 (6th Cir. 2003) (reversal for instructional error appropriate where "the instructions, when viewed as a whole, were confusing, misleading and prejudicial").

Defendants additionally object to Plaintiffs' proposed public nuisance instructions for failing to instruct the jury that it may not find a nuisance based on conduct it concludes was fully authorized by a statute or regulation.  *Brown v. Scioto Cty. Bd. of Commrs.*, 622 N.E.2d 1153, 1159 (Ohio 1993).  Defendants will present evidence that their conduct fully complied with FDA and DEA requirements under the Food, Drugs, and Cosmetics Act and the Controlled Substances Act.  The Court should adopt **Defendants' Proposed Jury Instruction No. 33**, which properly addresses this issue.

Certain Defendants object to Plaintiffs' proposed public nuisance instructions for failing to instruct the jury on the issue of apportionment.  Those Defendants request the Court to adopt **Defendants' Proposed Jury Instruction No. 34**, which they contend properly addresses this issue.  However, in light of this Court's ruling that it would decide public nuisance remedies, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2629.  Defendants Pharmaceuticals USA, Inc., Cephalon, Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc., Warner Chilcott, Company, LLC, Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, Actavis Totowa LLC, Actavis Kadian LLC, Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City, and Actavis Laboratories FL, Inc., f/k/a Watson Laboratories, Inc.-Florida, do not join in the remaining Defendants' request and oppose submission of apportionment to the jury.

### No. 2.  Public Nuisance – Unreasonable Interference with a Public Right

A public nuisance is an "unreasonable" interference with a right common to the general public, such as the right to public health, public safety, public peace or public comfort.[2]

A Defendant's conduct may constitute "unreasonable interference" with a public right if it:  (1) is a significant interference; or (2) it is contrary to a statute, ordinance, or regulation; or (3) it is of a continuing nature or has produced a permanent or long-lasting effect upon the public right.[3]  Thus, in determining whether an interference with the public right is unreasonable, you may consider the degree of interference with public health, safety, peace or comfort – that is whether it interferes to a significant degree; whether the interference is permanent or long-lasting; and whether the underlying conduct is in violation of other laws.

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Instruction No. 2 insofar as it suggests that an absolute public nuisance theory based on a statutory violation requires proof of interference with a public right.  As explained above, for such claims the statutory violation itself is the public nuisance and there is no need for proof of interference with a public right beyond the statutory violation.  *See Taylor v. City of Cincinnati*, 55 N.E.2d 724, 730 (1944); *Uland v. S.E. Johnson Cos.*, 1998 WL 12086 (Ohio Ct. App. 1998); *see also* 1 CV Ohio Jury Instructions 621.01 ("Absolute Nuisance—Statutory Violation") (omitting unreasonable interference requirement).

Defendants additionally object to the instruction's failure to explain that intentional public nuisance requires intentional *and* unreasonable—as opposed to just unreasonable—

---

[2] Restatement, § 821B(2); *Beretta*, 768 N.E.2d at 1142.

[3] *Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480, ¶ 8, 95 Ohio St. 3d 416, 419, 768 N.E.2d 1136, 1142 (Ohio 2002) (quoting Restatement (Second) of Torts § 821B (1979)).

conduct.  *See, e.g.*, *Brown v. Sciotto*, 622 N.E.2d 1153, 1158 (Ohio Ct. App. 1993) ("in order to be actionable, the invasion must be … intentional and unreasonable").  Plaintiffs' proposal to define the intent and unreasonableness in separate instructions, multiple instructions apart, is both misleading and illogical.  The Court should adopt **Defendants' Proposed Instruction No. 28**, which properly addresses this issue.

Defendants object to the instruction's failure to define "right common to the general public."  Plaintiffs' proposal to simply instruct that "public health, public safety, public peace or public comfort" are rights common to the general public misapplies the Restatement, which discusses those examples in connection with the unreasonableness element for public nuisance, rather than the public right element.  It is also incomplete and misleading because it fails to instruct on the fundamental test for public rights—whether the right is "collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured."  Restatement (Second) of Torts § 821B, cmt. g.  Not all interferences with public health necessarily implicate a public right—for example, a defective drug or medical device could have substantial public health consequences, but injuries from such defects are private individual injuries rather than public ones.  Whether a particular interference with public health also interferes with a public right cannot be evaluated without reference to the definition of a "public right," and Plaintiffs' proposal to omit that definition while instructing that "public health" and "public right" are necessarily one and the same is legally erroneous, misleading, and severely prejudicial.   The Court should adopt **Defendants' Proposed Instruction No. 28**, which properly addresses this issue.

Defendants likewise object as incomplete and misleading to the instruction's statement that unreasonableness can be proved through a "significant interference," a violation of "a

statute, ordinance, or regulation," or conduct "of a continuing nature or [conduct that] has produced a permanent or long-lasting effect upon the public right."  While those factors are *relevant* to reasonableness, *see Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002), the *test* for reasonableness under Ohio law is whether "the gravity of the harm outweighs the utility of the defendant's conduct."  1 CV Ohio Jury Instructions 621.05(4) ("Absolute Nuisance—Intentional Acts"); *see Soukoup v. Republic Steel Corp.*, 66 N.E.2d 334, 341 (Ohio Ct. App. 1946) ("An intentional invasion of another's interest in the use and enjoyment of land is unreasonable … unless the utility of the actor's conduct outweighs the gravity of the harm."). Instructing the jury on factors that might illustrate unreasonableness without instructing on the standard against which such factors must be evaluated will inevitably mislead and confuse the jury.

## No. 3  Public Nuisance – Causation

If you find that there is a public nuisance, you must consider whether the conduct of any of the Defendants was a cause of that nuisance. Defendants' conduct does not need to be the only cause of the public nuisance; multiple causes may contribute to the existence of a nuisance.

In order to find a Defendant caused the nuisance, you must find that its conduct was a "substantial factor" in bringing about or maintaining the nuisance.[4]  In order to be a substantial factor, the Defendant's conduct must have "some effect" on the interference with the public right, and that effect must be "substantial rather than negligible."[5]

In this context, the word "substantial" has a particular meaning, which may differ from the way you use the word in ordinary conversation. "The word 'substantial' is used to describe a Defendant's conduct that has such an effect in producing the harm as to lead reasonable person to regard that conduct as a cause of the harm.  If a Defendant's conduct is a substantial factor in bringing about the public nuisance, it is a cause in fact of the public nuisance.

For a Defendant to be liable, you must also find that the Defendant's conduct was a "legal" or "proximate" cause of the harm.  A person is not responsible for injury to another if his conduct is a remote cause and not a proximate cause. A cause is remote when the result could not have been reasonably foreseen or anticipated as being the natural or probable cause of any injury.[6]

Just as there may be more than one cause in fact, there may be more than one proximate cause of a public nuisance or harm.  When the act or failure to act of one party continues or

---

[4] *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990) (quoting Restatement (Second) of Torts § 433B(2)).

[5] Restatement (Second) of Torts § 431, comment *b* (1965).

[6] Halloran *v. Barnard*, 2017-Ohio-1069, ¶ 5.

combines with the act of another to produce injury, the conduct of each is a cause. It is not necessary that the conduct of each occur at the same time or place or that there be a common purpose or action.[7]

In addition, the fact that some other cause combined with the conduct of a Defendant in producing the public nuisance does not relieve a Defendant from liability so long as the Plaintiffs prove that the conduct of the Defendant was a substantial factor in producing the harm.[8]

Where the acts of multiple persons combine to create a public nuisance, and when each act is a substantial factor in bringing about or maintaining the public nuisance, the actors are jointly responsible for the entire result.

***Defendants' Objections:***

Plaintiffs improperly begin their causation instruction with the statement that "Defendants' conduct does not need to be the only cause of the public nuisance; multiple causes may contribute to the existence of a nuisance."  No authority supports the notion that anything that "contribute[s] to the existence of a nuisance" is a cause of the nuisance.  Framing the causation inquiry in terms of "contribution" rather than settled principles of factual and proximate cause will confuse the issues and prejudice Defendants.

In addition, while an injury can have more than one cause, it is not helpful or appropriate to instruct the jury on that point before explaining the basic elements of causation, including but-for causation, proximate causation, and the substantial factor requirement—the jury cannot properly interpret a "multiple causes" instruction before it has been instructed on what a cause ***is***. Defendants also note that Plaintiffs' instruction contains two additional admonitions that an

---

[7] CV 207.19 Proximate cause: sample instruction [Rev. 12-11-10], 1 CV Ohio Jury Instructions 207.19

[8] CV 405.01 Proximate cause [Rev. 2/11/17], 1 CV Ohio Jury Instructions 405.01

injury can have more than one cause: (1) "Just as there may be more than one cause in fact, there may be more than one proximate cause of a public nuisance or harm"; and (2) "the fact that some other cause combined with the conduct of a Defendant in producing the public nuisance does not relieve a Defendant from liability so long as the Plaintiffs prove that the conduct of the Defendant was a substantial factor in producing the harm." The outsized prominence and redundant emphasis on this principle is unnecessary and threatens to prejudicially distract the jury from the basic elements Plaintiffs must prove to establish causation.

Defendants object that the instruction's use of the undefined term "cause in fact" is unhelpful to the jury and certain to cause juror confusion.

For reasons explained in Defendants' objections to Plaintiffs' Proposed Instruction No. 1, Defendants also object to this instruction inasmuch as it erroneously suggests the "substantial factor" test displaces but-for causation under Ohio law.  Each Plaintiff must prove, as to each Defendant, that the nuisance would not have occurred without that Defendant's conduct.  *See, e.g.*, 1 CV Ohio Jury Instructions 405.01; Restatement (Second) of Torts § 432(1).  Indeed, Plaintiffs' own authority approves of instructions that a proximate cause is an act that "directly produces the accident, and *without which it would not have occurred*."  *Halloran v. Barnard*, 2017-Ohio-1069, ¶ 13 (emphasis added).  The Court should adopt **Defendants' Proposed Jury Instructions No. 31,** which properly address these issues.

Defendants also object to this instruction's definition of a "substantial factor" as conduct having "substantial rather than negligible effect" or having "such an effect in producing the harm as to lead a reasonable person to regard that conduct as a cause of the harm."  The former formulation erroneously suggests that any conduct with more than a "negligible" effect satisfies the substantial factor test, ignoring the requirement that conduct must be either a but-for cause or

"sufficient to bring about harm" to qualify as a substantial factor.  *See* Restatement (Second) of Torts § 432.  The latter "reasonable person" formulation provides a circular definition with no support in Ohio law that is certain to confuse rather than assist the jury. Any instruction about substantial factor causation must at minimum instruct the jury that a substantial factor requires proof that either: (1) the Defendant's conduct was a but-for cause of the Plaintiff's injuries; or (2) the Defendant's conduct was sufficient to cause the Plaintiff's injuries even in the absence of other causes. Restatement (Second) Torts § 432.

In addition, Plaintiffs' definition of "remote cause" as one that "could not have been reasonably foreseen or anticipated" squarely conflicts with binding Sixth Circuit authority applying Ohio public nuisance law, which holds that directness and foreseeability are separate and distinct proximate cause requirements. *See City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*, 863 F.3d 474, 480 (6th Cir. 2017) ("In addition to foreseeability, [proximate cause] requires 'some direct relation' between the injury and the injurious conduct."); *City of Cleveland v. Ameriquest Mort. Securities, Inc.*, 615 F.3d 496,502 (6th Cir. 2010) ("The directness requirement … is distinct from foreseeability…."). The Court should adopt **Defendants' Proposed Instruction No. 31**, which accurately applies binding Sixth Circuit authority addressing this issue.

Plaintiffs' instruction that "when the act or failure to act of one party continues or combines with the act of another to produce injury, the conduct of each is a cause" misstates the law and is unhelpful to the jury.  The correct standard for causation is whether a Defendant's conduct was: (1) a substantial factor in causing Plaintiffs' injuries; and (2) a proximate cause of Plaintiffs' injuries.  The suggestion that any conduct that "continues or combines with the act of another to produce an injury … is a cause" has no legal basis.  Plaintiffs' reference to conduct

that "continues … with the act of another to produce injury" also is vague and unhelpful to the jury.  The Court should adopt **Defendants' Proposed Instruction No. 31**, which properly addresses these questions.

Finally, Defendants object to Plaintiffs' instruction on joint and several liability as improper and legally inaccurate.  *See In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2572.  The Court, rather than the jury, must determine whether those prerequisites are satisfied, *see* Restatement (Second) of Torts § 434, and any instruction on the subject to the jury threatens to confuse the issues and prejudice the jury's deliberations.

### No. 4  Public Nuisance - Superseding Cause

Defendants contend that other people or entities interrupted the causal chain and thus are the true cause of the public nuisance that Plaintiffs claim exists.  This is one issue on which what I told you about the burden of proof is different.  Defendants, not the Plaintiffs, have the burden of proving this defense by a preponderance of the evidence.

The negligent or intentional act of any other person does not relieve Defendants of responsibility unless you find that the other person's negligent or intentional act was an independent and superseding cause.  An action is an independent and superseding cause only if it: (1) could not have been reasonably foreseen and is fully independent of Defendants' conduct; and (2) intervenes and completely removes the effect of Defendant's conduct and becomes itself the proximate cause of the nuisance.[9]

***Defendants' Objections:***

This instruction incorrectly and prejudicially suggests that Defendants concede their conduct caused or somehow contributed to Plaintiffs' alleged injuries, but that "other people or entities" merely "interrupted the causal chain."  Defendants further object to this instruction for improperly suggesting Defendants contend that a single person or entity are the "true cause" of any alleged public nuisance.  The Court should adopt **Defendants' Proposed Instruction No. 31**, which provides a more neutral instruction on the issue of "superseding causes."

Defendants also object to this instruction's description of the burden of proof on causation.  Each Plaintiff bears the burden of proving, as to each Defendant, that such Defendant's conduct proximately caused the Plaintiff's alleged injuries.  Making this showing includes establishing that each Defendant's potential liability is not too attenuated and remote

---

[9] CV 405.05 Intervening and superseding cause [Rev. 2/11/17], 1 CV Ohio Jury Instructions 405.05

from Plaintiffs' harm.  *See Wallace v. Ohio Dep't of Commerce*, 773 N.E.2d 1018, 1031 (Ohio 2002) ("A plaintiff must also shoulder the burden of establishing proximate cause, which could be exceedingly difficult in cases where the governmental conduct alleged to have caused injury is particularly attenuated or exacerbated by intervening circumstances."); *see also Hogrefe v. Mercy St. Vincent Med. Ctr.*, 2014 WL 2854186, at *9 (Ohio Ct. App. 2014) (affirming trial court's grant of summary judgment against the plaintiff for failure to show causation where a third party's conduct "operated as an intervening and superseding cause and created a break in the chain of causation" (internal quotation marks omitted)).  A Defendant bears the burden of proving a superseding cause only if Plaintiffs first establish that that Defendant was a cause of the injuries.  This instruction erroneously implies to the jury that it is Defendants' burden in the first instance to establish that others caused Plaintiffs' harm instead of Defendants.

### No. 5  Public Nuisance – Intentional or Unlawful Conduct

In this case, Defendants will only be legally responsible for the public nuisance if Defendant's conduct that caused the nuisance was intentional and unreasonable, or if it violated a specific legal requirement designed for the protection of others.[10]

A person intends an act when it is done purposely, not accidentally.  Intentional, in this context, does not mean that the Defendants intended to create a nuisance, but that Defendants intended to do what it did.[11]

Conduct is unreasonable if the gravity of the harm outweighs the utility of the Defendants' conduct.[12]

The federal and Ohio Controlled Substances Acts are specific legal requirements designed for the protection of others.

***Defendants' Objections:***

Defendants object to this instruction's erroneous and highly prejudicial definition of "intent."  Under Ohio law and the Restatement (Second) of Torts, intent for purposes of absolute nuisance does ***not***, as Plaintiffs propose instructing, mean that "Defendants intend to do what it did."  Rather, as the cases Plaintiffs cite make clear, "[i]ntentional, in this context, means not that a wrong or the existence of a nuisance was intended but that the creator of it ***intended to bring about the conditions which are in fact found to be a nuisance***."  *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017); *accord Angerman v. Burick*, 2003-Ohio-1469, 2003 WL 1524505, at *2 (Ohio Ct. App. 2003).  Similarly, under the Restatement, an "interference

---

[10] 1 CV Ohio Jury Instructions 621.05

[11] *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017) (quoting *Angerman v. Burick*, 2003-Ohio-1469, ¶ 10, 2003 WL 1524505 (Ohio App. 2003)).

[12] 1 CV Ohio Jury Instructions 621.05

with the public right, is intentional if the actor: (a) acts for the purpose of causing it; or (b) knows that it is resulting or substantially certain to result from his conduct." Restatement (Second) of Torts § 825; *see also id.*, cmt. c ("It is not enough to make an invasion intentional that the actor realizes or should realize that his conduct involves a serious risk or likelihood of causing the invasion.  He must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from his conduct.").  Plaintiffs' proposed instruction would drastically reduce their burden of proof on intent by suggesting that any non-inadvertent conduct satisfies the intent requirement. Defendants object to any instruction purporting to define "intent" that fails to include the well-settled requirement that Defendants must have intended to create the conditions found to constitute a nuisance.  *See, e.g.*, *Amore v. Ohio Tpk. Comm.*, 955 N.E.2d 410, 414 (Ohio Ct. App. 2011); *Gevelaar v. Millennium Inorganic Chems.*, 2013 WL 501745, at *4 (Ohio App. 2013); *Paulus v. Citicorp. N. Am., Inc.*, 2013 WL 5487053, *4 (S.D. Ohio 2013).

Defendants further object to the instruction's definition omission of the Ohio Official Civil Jury Instructions explanation that in cases of absolute nuisance, "[t]he intent with which a party does an act is known only to [that party], unless [it] expresses it[s intent] to others or indicates [its intent] by [its] conduct."  1 CV Ohio Jury Instructions 621.05 (Rev. Mar. 18, 2002). The Court should adopt **Defendants' Proposed Instruction No. 30**, which properly addresses these issues.

Defendants further object to the order in which this instruction appears in Plaintiffs' Proposed Jury Instructions.  Intent is the fundamental prerequisite of Plaintiffs' absolute public nuisance claim and should not be buried after instructions on reasonableness, causation, joint and several liability, and other concepts.  Defendants further object to Plaintiffs' attempt to split this instruction from Plaintiffs' Proposed Instruction No. 2 ("Unreasonable Interference with a Public

Right") as illogical and misleading.  An absolute public nuisance of the intentional type is an "intentional and unreasonable" interference with a right common to the general public.  *Brown v. Scioto Cty. Bd. of Commrs.*, 622 N.E.2d 1153, 1158 (Ohio Ct. App. 1993) (citing Restatement (Second) of Torts § 822).  These elements should be defined in the same instruction, or at the very least in adjacent instructions.

Defendants further object to Plaintiffs' inclusion of instructions on "unreasonable" conduct as redundant given that Plaintiffs have proposed a separate instruction on "Unreasonable Interference with a Public Right."

Defendants object to this instruction's inclusion of language providing that Plaintiffs may premise their absolute public nuisance claim on the violation of a "specific legal requirement designed for the protection of others."  Plaintiffs have asserted that they are "not proceeding with their statutory public nuisance claim at trial."  Accordingly, Plaintiffs are not rely on the statutes they were previously relying on as a source of a statutory nuisance claim.  Plaintiffs are not entitled to such an instruction on a specific legal requirement until they identify a valid predicate act on which to premise this claim and provide a definition of "specific legal requirement." Should Plaintiffs identify such a specific legal requirement, the Court should not merge a statutory violation theory with an intentional nuisance theory in a single instruction, but rather separately instruct on each of these theories, which have separate and distinct elements.  1 CV Ohio Jury Instructions 621.01 *with* 1 CV Ohio Jury Instructions 621.05. Merging both theories into a single instruction is likely to confuse the jury and efface such distinctions. Finally, Defendants object to this instruction as an incomplete and inaccurate description of what constitutes "unlawful conduct."  Plaintiffs have not identified with specificity a particular "specific legal requirement for the protection of others" that provides for a private right of action.

*See* 1 OJI-CV 621.01; *Taylor*, 55 N.E.2d at 728.  In addition, the Ohio and federal Controlled Substances Acts cannot furnish a basis for a public nuisance claim because there is no private cause of action under those statutes.  *See, e.g.*, *Ashtabula River Corp. Grp. II v. Conrail, Inc.*, 549 F. Supp. 2d 981, 989 (N.D. Ohio 2008).

### No. 6  RICO - Generally

Plaintiffs bring two separate claims under the federal Racketeer-Influenced and Corrupt Organizations Act, or RICO. The first RICO claim is brought only against the Defendants collectively referred to as Teva and Janssen. It alleges that these Defendants, along with other manufacturers of prescription opioids not in this trial, formed and operated an Opioid Marketing Enterprise to fraudulently market and promote the sale of opioids by misrepresenting the risks and benefits of these drugs, and that they did so through a "pattern of racketeering activity," including repeated acts of mail and wire fraud.

Plaintiffs bring a separate RICO claim against Defendants Teva, Actavis, McKesson, Cardinal Health, and AmerisourceBergen.    This claim alleges that these Defendants, along with other manufacturers of prescription opioids not in this trial, formed and operated an Opioid Supply Chain Enterprise to expand their sales of prescription opioids by failing to maintain effective controls to prevent diversion and by filling suspicious orders for opioids, without first clearing such suspicious orders through a diligent investigation, in violation of their duties under the federal Controlled Substances Act (CSA), and did so through a "pattern of racketeering activity," including repeated acts of mail and wire fraud and violations of the CSA.

These claims are brought by Plaintiffs to recover damages claimed to have been caused by Defendants' engaging or conspiring to engage in a pattern of corrupt activity.[13]

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 6 because it would be confusing to the jury, is incomplete, and misstates the law. First, the use of the terms "Opioid

---

[13] 1 OJI-CV, 1 CV Ohio Jury Instructions 445.01
 CV 445.01 Civil action; introduction

Marketing Enterprise" and "Opioid Supply Chain Enterprise" is confusing and an incomplete description of Plaintiffs' allegations and burden.  Second, the use of the terms "Teva" and "Actavis" is misleading as these terms include multiple, distinct corporate entities, each of which Plaintiffs must prove their claims against.  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Minno v. Pro-Fab, Inc.*, 905 N.E.2d 613, 617 (Ohio 2009).  Third, Plaintiffs' introduction incorrectly suggests that a RICO claim can be based upon a violation of the CSA, which is not a predicate act, and which is not based upon any pattern instructions.  *See United States v. Alghazouli*, 517 F.3d 1179, 1184 (9th Cir. 2008) ("the Supreme Court [has] made clear . . . that a criminal conviction for violating a regulation is permissible only if a statute explicitly provides that violation of that regulation is a crime.").  Fourth, this instruction and the others in this sequence (Nos. 23-31) are incomplete because they do not define the predicate acts for the RICO claim or the requirements of those predicate acts.  To the extent Plaintiffs are relying on provisions of the CSA other than 21 U.S.C. § 843(a)(4)(A),[14] Defendants object for the reasons set forth in their objection to Plaintiffs' Proposed Instruction No. 11 (RICO - Defendants' Participation Was Through a Pattern of Racketeering Activity).

Defendants further object to any suggestion that Plaintiffs can recover future damages, which have not been pled.  *See Bessemer & Lake Erie R.R. Co. v. Seaway Marine Trans.*, 596 F.3d 357, 366-69 (6th Cir. 2010); *Flying J, Inc. v. Central CA Kenworth*, 45 Fed. App'x 763, 767 (9th Cir. 2002).

---

[14] To the extent Plaintiffs are relying on 21 U.S.C. § 843(a)(4)(A), Defendants maintain that the Court erred as a matter of law in ruling that a violation of that subsection "can constitute a predicate act under 18 U.S.C. § 1961(1)(D)," In re Nat'l Prescription Opiate Litig., 1:17-md-02804, ECF No. 2580, and assert that Plaintiffs cannot establish that the Defendants' conduct here violates § 843(A)(4)(a) or § 1961(1)(D).

The Court should adopt **Defendants' Proposed Instruction Nos. 4 and 11**, which properly address these issues. To the extent the Court overrules the objection to this instruction as an incomplete and inaccurate description of predicate acts, the Court should provide Defendants' Proposed Instructions Nos. A–G.

**No. 7  RICO § 1962(c) – Participation in the Conduct of an Enterprise**

Section 1962(c) of RICO prohibits the conduct of an enterprise through a pattern of racketeering activity. To show that the defendants have violated section 1962(c), Plaintiffs Summit and Cuyahoga Counties must prove each of the following elements by a preponderance of the evidence:

*First*: The existence of an enterprise affecting interstate or foreign commerce;

*Second*: Defendants were associated with the enterprise;

*Third*: Defendants conducted or participated in the conduct of the enterprise's affairs;

*Fourth*: Defendant's participation was through a pattern of racketeering activity; and

*Fifth*: Plaintiffs were injured in their business or property by reason of defendants' conducting or participating in the conduct of the enterprise's affairs.[15]

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 7 because it is misleading and is an incomplete statement of the law. First, Plaintiffs' instruction suggests incorrectly that each Plaintiff need not prove each element as to each Defendant. However, the Eleventh Circuit Pattern Jury Instructions make clear that each Plaintiff must prove the second, third, and fourth elements of Section 1962(c) as to each Defendant to make that specific Defendant liable. *See* Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018).

Second, Plaintiffs' omission of a "knowingly" requirement from the third and fourth elements is not supported by the law. *See* Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C (2018); *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008), *quoted in In Re*

---

[15] 3B Fed. Jury Prac. & Instr. § 161:22 (6th ed.)

*Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2580, at 5; *Reves v. Ernst & Young*, 507 U.S. 170, 179, 184 (1993).

The Court should adopt **Defendants' Proposed Instruction No. 4**, which properly addresses these issues.

### No. 8  RICO - The Existence of an Enterprise Affecting Interstate or Foreign Commerce

An "enterprise" may include any individual, partnership, corporation, association or other legal entity. An enterprise may also be any group of individuals associated in fact although not a legal entity.[16]

A RICO enterprise must demonstrate: (1) a common purpose; (2) relationships among members of the enterprise; and (3) sufficient longevity to pursue the enterprise's purpose.[17]

Plaintiffs claim that the Opioid Marketing Enterprise and the Opioid Supply Chain Enterprise were enterprises affecting interstate or foreign commerce, and that Defendants participated in these enterprises through a pattern of racketeering activity, as that term will be defined for you. An enterprise "affects interstate or foreign commerce" if the enterprise either engages in or pursues activities affecting commerce between the states.

Thus, if you find that the Opioid Marketing Enterprise or the Opioid Supply Chain Enterprise met these requirements, you may find that it was an enterprise affecting interstate or foreign commerce.[18]

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction Number 8 as confusing and incomplete. The instruction is misleading because it does not state that Plaintiffs bear the burden of proving this element for each individual Defendant by a preponderance of the evidence. The instruction is incomplete for several reasons. First, it does not state that membership in a trade organization does not, on its own, prove that the Defendants agreed to form an association in-

---

[16] 3B Fed. Jury Prac. & Instr. § 161:41.

[17] *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).

[18] 3B Fed. Jury Prac. & Instr. at § 161:42.

fact-enterprise.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 380 (3d Cir. 2010); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 911 (6th Cir. 2009).  Second, the instruction omits the requirement that the enterprise have an ongoing organization or a framework for carrying out objectives.  *See* Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C-2 (2018); *Boyle v. United States*, 556 U.S. 938, 951 (2009) (approving RICO instruction with require[ment] to prove that there was an ongoing organization with some sort of framework, formal or informal, for carrying out its objectives") (internal quotations omitted).  Third, the instruction does not state that Plaintiffs bear the burden of proving that the enterprise existed separate and apart from the alleged pattern of racketeering activity.  *See* Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C-2 (2018); *Boyle v. United States*, 556 U.S. 938, 947 (2009) ("As we explained in *Turkette*, the existence of an enterprise is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other.").

Additionally, Defendants renew their objection to the use of the terms "Opioid Marketing Enterprise" and "Opioid Supply Chain Enterprise" as confusing and incomplete descriptions of Plaintiffs' allegations and burden.[19]

The Court should adopt **Defendants' Proposed Instruction No. 5**, which properly addresses these issues.

---

[19] Defendants further maintain their objection to the Court's ruling that the "common purpose" of a group of individuals associated in fact need not be unlawful to constitute an enterprise. *See* Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C-2 (2018); *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 651 (N.D. Ohio 2012) (Polster, J.).

## No. 9  RICO – Defendants Were Associated with the Enterprise

"Associated with" means that a Defendant must have at least a minimal association with the enterprise. A Defendant must know something about the enterprise's activities as they relate to the racketeering activity, but it is not necessary that a Defendant be aware of all racketeering activities of each of the participants of the enterprise.[20]

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 9 because it is confusing and incomplete. First, the instruction is misleading because it does not state that Plaintiffs bear the burden of proving this element for each individual Defendant by a preponderance of the evidence. Second, the instruction omits the requirements that each County Government must prove that the Defendant: (1) knowingly participated in, aided, or furthered the enterprise's activities; and (2) knew that the enterprise extended beyond the Defendant's individual role. Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C-4 (2018); *United States v. Rastelli*, 870 F.2d 822, 828 (2d Cir. 1989).

The Court should adopt **Defendants' Proposed Instruction No. 6**, which properly addresses this issue.

---

[20] 3B Fed. Jury Prac. & Instr. § 161:43.

### No. 10  RICO – Defendants Conducted or Participated in the Conduct of the Enterprise's Affairs

To "participate in the conduct of the enterprise's affairs" requires that a person or entity conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. To participate, directly or indirectly, in the conduct of the enterprise's affairs, the Defendant must participate in managing or carrying out the enterprise itself.

Although Plaintiffs are not required to prove that Defendant had primary responsibility for the enterprise's affairs, some part in directing or controlling the enterprise's affairs is required.

An enterprise is operated not by upper management alone, but also by lower level participants in the enterprise who are under the direction of upper management. An enterprise might also be operated or managed by others associated with the enterprise who exert some degree of control over it.[21]

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 10 as confusing and incomplete. First, the instruction does not state that Plaintiffs bear the burden of proving this element for each individual Defendant by a preponderance of the evidence. Second, the instruction is incomplete because it omits the requirement that Plaintiffs' prove each Defendant acted "knowingly."  Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C (2018); *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008), *quoted in In Re Nat'l Prescription*

---

[21] 3B Fed. Jury Prac. & Instr. § 161:43.

*Opiate Litig.*, 1:17-md-02804, ECF No. 2580, at 5; *Reves v. Ernst & Young*, 507 U.S. 170, 179, 184 (1993).

The Court should adopt **Defendants' Proposed Instruction No. 7**, which properly addresses this issue.

**No. 11  RICO - Defendants' Participation Was Through a Pattern of Racketeering Activity.**

"Racketeering activity" is the term used in RICO to designate crimes that may constitute violations under RICO. You are to draw no conclusions from the use of this term that is in any way harmful to the Defendant. The law defines racketeering activity to include mail fraud, Section 1341 of Title 18, United States Code; wire fraud, Section 1343 of Title 18, United States Code; and any offense involving the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance punishable under any law of the United States, including violations of Sections 841 and 843 of Title 21, United States Code as a result of Defendants failure to comply with the requirements of the CSA, section 823, Title 21, United States Code, and the regulations implementing that section, including but not limited to violation of 21 C.F.R. § 1301.74.

"A pattern of racketeering activity" means at least two acts of racketeering activity occurring within ten years of the date the lawsuits were filed, October 27, 2017 for Cuyahoga County and December 20, 2017 for Summit County.  While the two acts of racketeering activity need not be of the same kind, you must find by a preponderance of the evidence that the two acts of racketeering activity occurred within the time specified.

The term "pattern of racketeering activity" requires that you find the predicate acts were related to each other. Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.[22]

---

[22] 3B Fed. Jury Prac. & Instr. § 161:47.

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 11 as confusing and incomplete.  First, the instruction is likely to mislead the jury because it improperly lumps Plaintiffs together and does not state that Plaintiffs bear the burden of proving this element for each individual Defendant by a preponderance of the evidence, contrary to the pattern instructions on which it relies.  *See* 3B Fed. Jury Prac. & Instr. § 161:47.  Second, the instruction does not reflect that the jury must unanimously agree on which of the alleged predicate acts, if any, make up the pattern for each Defendant.  *See* Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018) ("And you can't find that [name of defendant] engaged in a 'pattern of racketeering activity' unless you unanimously agree on which of the alleged predicate acts, if any, made up the pattern.").

The instruction is an incomplete statement of the law because it omits the requirements that Plaintiffs' prove that the predicate acts must demonstrate "continuity."  Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C (2018); Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018); *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008), *quoted in In Re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2580, at 5; *Reves v. Ernst & Young*, 507 U.S. 170, 179, 184 (1993).

Defendants further object to this instruction as an incomplete and inaccurate description of predicate acts.  As to § 823, violation of that section is not a crime and does not meet § 1961(1)(D), which defines as a predicate act "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States."  Section 823 requires DEA to consider an applicant's "maintenance of effective controls against diversion" in the course of determining whether to register the

applicant.  The violation of that section does not give rise to criminal felony penalties for failure

to maintain effective controls.  As to § 842, Plaintiffs fail to identify any relevant subsection that

would meet § 1961(1)(D) or any conduct that would constitute a violation of § 842.  As to § 843,

Defendants maintain that the Court erred as a matter of law in ruling that a violation of 21 U.S.C.

§ 843(a)(4)(A) "can constitute a predicate act under 18 U.S.C. § 1961(1)(D)."  *In re Nat'l*

*Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2580.  Defendants also object that failing to

"inform" DEA of a suspicious order, pursuant to 21 C.F.R. 1301.74(b), can constitute a violation

of § 843.  Section 843(a)(4)(A) refers to knowing or intentional acts "to furnish false or

fraudulent material information in, or omit any material information from, any application,

report, record, or other document required to be made, kept, or filed under this subchapter or

subchapter II," as required by 21 U.S.C. § 843(a)(4)(A).  The requirement to "inform" DEA of a

suspicious order is found in the regulations, not within "this subchapter or subchapter II," *i.e.,* 21

U.S.C. §§ 801–904 (subchapter I), §§ 951–971 (subchapter II).  As to § 841, Plaintiffs failed to

timely identify the violation of this section as a predicate act.  *See* ECF 1631 at ¶ 960.

Defendants further object that shipping a suspicious order can constitute a violation of § 841.

Plaintiffs do not dispute that certain Defendants were registered to distribute opioid medicines

pursuant to the CSA's registration requirements or allege that Defendants distributed to entities

outside the closed system of distribution.  The CSA expressly authorizes registrants like

Defendants to distribute controlled substances to other registrants within the closed system of

distribution. 21 U.S.C. § 822(b).  While those distributions must be made "in conformity with the

other provisions of [Subchapter I]," *id.*, Plaintiffs identify no statutory provision *of Subchapter I*

(*i.e.*, §§ 801–904) that Defendants allegedly violated.  Subchapter I does not require registrants

to maintain effective controls against diversion.  Instead, the sole reference in Subchapter I to

maintenance of "effective controls against diversion" appears in 21 U.S.C. § 823.  And that provision requires DEA to consider an applicant's "maintenance of effective controls against diversion" in the course of determining whether to register the applicant; it does not impose any requirements whatsoever on registrants—let alone criminal felony penalties for failure to maintain effective controls.  Defendants maintain that the Court's ruling on alleged suspicious order duties is erroneous as a matter of law.  *See In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2483.  Violations of duties under the statute do not constitute a predicate act for the reasons stated above.  And violation of "regulatory duties" cannot constitute a predicate act. *United States v. Alghazouli*, 517 F.3d 1179, 1184 (9th Cir. 2008) ("[T]he Supreme Court [has] made clear . . . that a criminal conviction for violating a regulation is permissible only if a statute explicitly provides that violation of that regulation is a crime.").

The Court should instead adopt **Defendants' Proposed Instruction Nos. 8 and 10**, which properly address these issues.  To the extent the Court overrules the objection to this instruction as an incomplete and inaccurate description of predicate acts, the Court should provide **Defendants' Proposed Instructions Nos. A–G.**

## No. 12  RICO – Predicate Acts

There are three types of predicate acts at issue:  mail fraud; wire fraud; and felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance punishable under any law of the United States which occurred by manufacturing and distributing in ways that were not authorized by the CSA, and furnishing false statements and/or omitting material information in reports required to be kept and made to the DEA

1. For mail fraud, Plaintiffs allege that Defendants carried out the RICO enterprise by using the mail in interstate or foreign commerce in an unlawful scheme to design, manufacture, market, and sell the prescription opioids by means of false pretenses, misrepresentations, promises, and omissions.

Mail fraud is defined as follows:

In order to establish that mail fraud was committed for purposes of this case, plaintiff must show by a preponderance of the evidence that:

*First*: Defendants willfully and knowingly participated in a scheme to defraud Plaintiffs;

*Second*: Defendants did so with an intent to defraud; and

*Third*: Defendants used the U.S. mails for the purpose of executing the scheme to defraud.[23]

Each separate use of the mails in furtherance of a scheme to defraud constitutes a separate racketeering activity. Mail fraud as a racketeering activity may be established without proof that one or more of the Defendants personally did every act constituting mail fraud. The

---

[23] 3B Fed. Jury Prac. & Instr. § 161:24.

law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through direction of another person as an agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort.[24]

2. For wire fraud, Plaintiffs allege that Defendants carried out the RICO enterprise by using telephones and/or the Internet in interstate or foreign commerce in an unlawful scheme to design, manufacture, market, and sell the prescription opioids by means of false pretenses, misrepresentations, promises, and omissions.

Wire fraud is defined as follows:

Plaintiffs must prove Defendants committed the following in order to establish a violation of the federal wire fraud statute:

*First*: Defendants willfully and knowingly participated in a scheme to defraud Plaintiffs;

*Second*: Defendants did so with an intent to defraud; and

*Third*: Defendants made interstate telephone calls or used radio communications for the purpose of executing the scheme or plan to defraud.[25]

3. For felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance punishable under any law of the United States, Plaintiffs allege that Defendants conducted, and/or participated in the conduct of the RICO Supply Chain Enterprise through violations of the Controlled Substances Act, referred to as the CSA.

In particular, section 841 of the CSA makes it unlawful for any person knowingly or intentionally to manufacture or distribute a controlled substance other than as authorized by the

---

[24] 3B Fed. Jury Prac. & Instr. § 161:25.

[25] 3B Fed. Jury Prac. & Instr. § 161:26.

CSA itself.  The Court has determined that the CSA requires all of the Defendants, as a condition of their registration to maintain effective controls to prevent diversion and - including therein - to maintain systems designed to identify suspicious orders, to report those suspicious orders to the DEA, and then stop those shipments.[26]  In other words, Defendants have a legal duty to: (1) design and operate a system to disclose to the registrant suspicious orders; and (2) inform the DEA of suspicious orders when discovered by the registrant.[27]  The DEA defined suspicious orders to include orders that were unusual in size, orders deviating substantially from a normal pattern, and orders of unusual frequency.

Each of the Defendants also has statutory and regulatory duties to maintain effective controls against diversion.  This includes a duty not to ship suspicious orders.  Entities that distribute or sell opioids are required to identify suspicious orders and cannot ship those orders unless investigation first shows them to be legitimate.  Manufacturers, too, are subject to a basic requirement not to ship a suspicious order unless a diligent investigation reasonably dispels the suspicion.

In order to find that Defendants committed a racketeering activity by violating section 841 of the CSA, you must find that the Plaintiffs have proved each and every one of the following elements beyond a reasonable doubt:

1)  Defendants knowingly (or intentionally) manufactured or distributed opioids;

2)  Defendants knew at the time of the manufacture or distribution that the opioids were controlled substances; and

---

[26] 21 U.S.C. § 823; 21 C.F.R. §§ 1301, 71, 1301.74; *See also* Opinion and Order Regarding Plaintiffs' Summary Judgment Motion Addressing the Controlled Substances Act, Doc 2483.

[27] Opinion and Order Regarding Plaintiffs' Summary Judgment Motions Addressing the Controlled Substances Act, Doc 2483.

3) Defendants manufactured or distributed opioids in ways that violated the requirements that their registrations imposed under the CSA.[28]

The term "distribute" means the Defendants delivered, transferred, or sold a controlled substance. The term distribute also includes the actual, constructive, or attempted delivery, transfer, or sale of a controlled substance.[29]

The term "manufacture" means the production, preparation, or processing of an opioid drug either directly or indirectly.  The term "manufacture" also includes any packaging or repackaging of an opioid drug, or labeling or relabeling of its container.[30]

Separate and apart from Defendants' obligation not to manufacture or distribute controlled substances other than as provided by the CSA, section 843 of the CSA also makes it "unlawful for any person knowingly or intentionally  . . . to furnish false or fraudulent material information in, or omit any material information from, any application, report, record, or other document required to be made, kept, or filed" with the DEA under the Act.  In order to find that Defendants committed a racketeering activity by violating section 843 of the CSA, the Plaintiffs must prove each of the following elements:

1) The Defendants manufactured or distributed opioids;

2) The Defendants omitted material information from any application, report, record, or other document required to be made, kept, or filed under the federal controlled substances laws; and

---

[28] *See*, Sixth Circuit Pattern Criminal Instruction 14.02A "Distribution of a Controlled Substance" (modified) and 14.03A "Manufacturer of a Controlled Substance" (modified).

[29] *See*, Sixth Circuit Pattern Criminal Instruction 14.02A (modified).

[30] *See*, Sixth Circuit Pattern Criminal Instruction 14.03A (modified).

3) The Defendant acted knowingly or intentionally.[31]

To prove that the Defendants "knowingly" manufactured or distributed the opioids, it is enough that the Defendants knew that they manufacturing and distributing a controlled substance.[32]

You have previously been instructed on the requirement that Defendants file reports with the DEA and to report to the DEA suspicious orders as defined above. To the extent that Defendants submitted reports to the DEA that failed to report suspicious orders Defendants identified or otherwise falsely reported to the DEA that Defendants were complying with their obligations under the CSA, you may find that Defendants furnished false or fraudulent material to the DEA or omitted material information from these reports.

If a Defendant failed to maintain effective controls to prevent diversion or did not report or shipped suspicious orders or furnished false, incomplete, or fraudulent materials to DEA, that Defendant committed a violation of the CSA that constitutes a predicate act under RICO.

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 12 as prejudicial, confusing, likely to mislead the jury, and incomplete. First, this instruction improperly lumps Plaintiffs together and does not accurately describe the predicate acts that specific Defendants are alleged to have committed. Second, the definitions of mail fraud and wire fraud in this instruction do not state that each Plaintiff must prove each element as to each Defendant to make that specific Defendant liable, contrary to the pattern instructions on which they rely. *See* 3B

---

[31] *See*, United States v. Purpera, Case No. 7:17-cr-00079-EKD (W.D. Va.), Jury Instruction No. 21 (modified) (Doc. No. 109, PageID # 543); Sixth Circuit Pattern Criminal Jury Instructions 14.02A, 14.03A (as exemplars).

[32] *See*, Sixth Circuit Pattern Criminal Instructions 14.02A and 14.03A (both modified).

Fed. Jury Prac. & Instr. § 161:24 ("In order to establish that mail fraud has been committed for purposes of this case, plaintiff … must show by a preponderance of the evidence that … Defendant …"); Sixth Circuit Pattern Criminal Jury Instructions Ch. 10 (2019).  Third, the mail fraud and wire fraud instructions are incomplete because they omit the requirement that each County Government must prove that the scheme included a material misrepresentation or concealment of a material fact. *Id.* Fourth, the mail and wire fraud instructions are incomplete because they omit the definitions of the terms "scheme to defraud," "material" (as it pertains to a misrepresentation or concealment), "intent to defraud," and "cause" (as it pertains to causing mail or wire to be used).  *Id.*

The Court should adopt **Defendants' Proposed Instruction No. 9**, which properly addresses these issues.

Defendants renew their objections to Plaintiffs' Proposed Instruction No. 11 (RICO - Defendants' Participation Was Through a Pattern of Racketeering Activity).  The Court should instead adopt **Defendants' Proposed Instruction Nos. 8 and 10**, which properly address the issues raised in Defendants' objection to Plaintiffs' Proposed Instruction No. 12.  To the extent the Court overrules Defendants' objections to Plaintiffs' Proposed Instruction No. 12 as an incomplete and inaccurate description of predicate acts, the Court should provide Defendants' Proposed Instructions Nos. A–G.

### No. 13  RICO - Plaintiffs' Business or Property Was Injured by Reason of Defendants Conducting or Participating in the Conduct of the Enterprise's Affairs

In order for Plaintiffs to prevail under RICO, Plaintiffs must prove by a preponderance of the evidence that Defendants' RICO violations were the legal cause of injury to Plaintiffs' business or property.

Accordingly, you must find that Plaintiffs suffered an injury to their business or property and that the injury was legally caused by Defendants' violation of RICO.

For this claim, an injury or damage is legally caused when the act played a substantial part in bringing about or actually causing injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act.

A person, in this case, a government entity, is injured in its business when it suffers loss of money or profits or a reduction in the value or worth of its business.  I will define that further in my next instruction.

A finding that the Plaintiffs were injured in their business or property because of the Defendants' violation of RICO requires only that you find Plaintiffs were harmed by the predicate acts of Defendants.

To find injury to the Plaintiffs' business or property was caused by reason of the Defendants' violation of RICO, you must find the injury to Plaintiffs was caused by, and was a direct result of the Defendants' violation of Section 1962(c).

The Defendant's conduct does not need to be the only cause of the injury.  Multiple causes may contribute to the existence of the injury.

For a Defendant to be liable, you must find Defendant's commission of the acts of racketeering, or the pattern of racketeering activity, or the conduct of the affairs of the enterprise

through the pattern of racketeering activity directly resulted in the injury or played a substantial

role in producing Plaintiffs' injury.[33]

In this context, the word "substantial" has a particular meaning, which may differ from

the way you use the word in ordinary conversation. "The word 'substantial' is used to describe a

Defendant's conduct that has such an effect in producing the harm as to lead reasonable person to

regard that conduct as a cause of the harm.  If a Defendant's conduct is a substantial factor in

bringing about the harm, it is a cause of the harm.

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 13 as prejudicial,

confusing, and likely to mislead the jury.  First, the instruction improperly lumps Plaintiffs

together and does not reflect that each finding must be made as to each Plaintiff for that

particular Plaintiff to establish causation.  *See* Eleventh Circuit Pattern Jury Instructions (Civil)

7.3 (2018) ("If you find that [name of defendant] violated § 1962(c), you must decide whether

that violation caused an injury to [name of plaintiff]"). Second, the instruction is incomplete

because it does not reference but-for causation and because the definition of proximate causation

does not does not state that Plaintiffs must prove a direct causal relationship between the

enterprise's alleged pattern of racketeering activity and each Plaintiff's alleged injuries. *See*

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268-69 (1992). Third, the instruction's definition

of proximate causation also does not include language explaining what is not a proximate cause,

including where a number of steps separate the alleged acts from the alleged injury, where the

theory of liability rests on the independent actions of third or fourth parties, or where the alleged

---

[33] 3B Fed. Jury Prac. & Instr. at § 161:70.

injuries arise from someone else first being injured. *See* 1 CV Ohio Jury Instructions 405.05; *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9, 130 (2010).  Fourth, the instruction is incomplete because it does not make clear that directness is separate and distinct from foreseeability and intent, and consequently that if the jury fails to find Defendants' RICO violation was a direct cause of the Counties' injuries, proximate cause is not satisfied even if the jury finds that the Counties' injuries were foreseeable or that Defendants intentionally caused the course of events leading to the Counties' injuries.  *See Cleveland v. Ameriquest Mort. Secs., Inc.*, 615 F.3d 496, 502 (6th Cir. 2010) (noting that the directness requirement is "distinct from foreseeability and applies even if the Defendants intentionally caused the alleged course of events"); *Perry v. American Tobacco Co.*, 324 F.3d 845, 850 (6th Cir. 2003) ("Though foreseeability is an element of the proximate cause analysis, it is distinct from the requirement of a direct injury.").

The Court should adopt **Defendants' Proposed Instruction No. 12**, which properly addresses these issues.

- 43 -

**No. 14  RICO – Plaintiffs' Claimed Damages**

Plaintiffs allege ten categories of damages (fully described below) that relate to public

expenditures made in direct response to opioid use and diversion.

It will be your job to determine whether any or all of these claimed damages were caused

by Defendants' RICO violations:

- o Losses caused by the decrease in funding available for Plaintiffs' public services for which funding was lost because it was diverted to other public services to address the opioid epidemic;

- o Costs for providing healthcare and medical care for patients suffering from opioid addiction or disease, including overdoses and deaths;

- o Costs of training emergency and/or first responders in the proper treatment of drug overdoses;

- o Costs associated with providing police officers, firefighters, and emergency and/or first responders with naloxone to block the deadly effects of opioids in the context of overdose;

- o Costs associated with emergency responses by police officers, firefighters, and emergency and/or first responders to opioid overdoses;

- o Costs for providing mental-health services, treatment, counseling, rehabilitation services, and social services to victims of the opioid epidemic and their families;

- o Costs for providing treatment of infants born with opioid-related medical conditions, or born dependent on opioids due to drug use by mother during pregnancy;

- o Costs associated with law enforcement and public safety relating to the opioid epidemic, including but not limited to attempts to stop the flow of opioids into these jurisdictions, to arrest and prosecute street-level dealers, to prevent the current opioid epidemic from spreading and worsening, and to deal with the increased levels of crimes;

- o Costs associated with increased burden on Plaintiffs' judicial systems, including increased security, increased staff, and the increased cost of adjudicating criminal matters due to the increase in crime directly resulting from opioid addiction;

- o Costs associated with providing care for children whose parents suffer from opioid-related disability or incapacitation;

In considering the issue of Plaintiffs' damages, if any, with respect to the RICO claim,

you should assess the amount you find to be justified by a preponderance of the evidence as full,

just and reasonable compensation for all of the damages to Plaintiffs in Plaintiffs' business or

property, no more and no less. Damages may not be based on speculation because it is only actual damages—what the law calls compensatory damages—that you are to determine.

Under Section 1964(c), plaintiff may recover only for injury to Plaintiffs' business or property. Injury to business may include lost profits and expenses incurred in connection with Defendants' RICO violation and decrease in the value or worth of the business or property itself. Injury to property includes the value of any personal or real property that has been diminished in value by the Defendants' actions.

Because Section 1964(c) limits Plaintiffs' recovery to business or property injuries, you may not compensate Plaintiffs for other losses, such as personal injuries or emotional harm.

You should consider the amount of damages, if any, with respect to each claim separately and independently from the amount of damages, if any, with respect to other claims. For example, and by way of example only, if you determine that damages should be awarded Plaintiffs under its RICO claim you should award full, just, and reasonable compensation for Plaintiffs' damages under the RICO claim, without regard to the damages, if any, you might award under any other claim.[34]

*Defendants' Objections:*

Defendants object to Plaintiffs' Proposed Jury Instruction No. 14 as prejudicial, confusing, incomplete, and likely to mislead the jury. First, the instruction unnecessarily describes multiple categories of alleged damages in language that improperly suggests a causal link to Defendants' alleged misconduct; a damages instruction need only instruct the jury that it must consider the amount of money that will reasonably compensate the plaintiffs for their

---

[34] 3B Fed. Jury Prac. & Instr. at § 161:90.

alleged injuries based on the evidence introduced during the case. Defendants further object to this instruction's list of potential damages insofar as it includes pecuniary losses that plainly flow from personal injuries, which are not compensable under RICO.  *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565–66 (6th Cir. 2013); *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF. No. 2572. This instruction is incomplete because it does not advise the jury that they should not assume Plaintiffs are entitled to damages just because this instruction is being given. *See* 3 Fed. Jury Prac. & Instr. § 106:02.

The Court should adopt **Defendants' Proposed Instruction No. 20**, which properly addresses these issues.

## No. 15  RICO Conspiracy – 18 U.S.C. § 1962(d)

Plaintiffs also assert a claim for violation of the conspiracy provision of RICO, which makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c)." This means that the Plaintiffs must prove that the Defendants joined with the other members of the alleged conspiracy in an agreement to conduct or participate in the affairs of the enterprise through a pattern of racketeering activity.

In order to find a Defendant liable for conspiracy to violate RICO, Plaintiffs must prove the following:

First: Defendant is a person who conspired to violate Section 1962(c);

Second: Defendant understood the nature or unlawful character of the conspiratorial plan.

Third: Defendant agreed to join with others to achieve the objective of the conspiracy. To conspire to conduct the affairs of an enterprise, Defendant must be aware of the existence and purpose of the enterprise.

Fourth: Defendant agreed that the enterprise would be conducted through a pattern of racketeering activity. This means that the commission of at least two predicate crimes by the conspiracy was contemplated.

If you find that a Defendant or Defendants agreed that the conspiracy would commit two or more racketeering acts, you need not find that any of the racketeering acts were actually committed. It is enough that the Defendant agreed that the conspiracy would commit two or more of the acts.[35]

---

[35] 3B Fed. Jury Prac. & Instr. at § 161:23.

Conspiracy does not require an actual, formal agreement between the parties. Such an agreement can be implied from how Defendants act. [36]

**Defendants' Objections:**

Defendants object to Plaintiffs' Proposed Jury Instruction No. 15 as incomplete and confusing. First, the instruction fails to identify the "specific offense" at issue, and thus, provides no guidance to the jury.  *Dixon v. Huntington Natl. Bank*, 2014 WL 4656798, at *4 (Ohio Ct. App. Sept. 18, 2014).  Second, as to the second element, the instruction omits that the Defendant must have had knowledge of the alleged conspiracy's objective at the time that Defendant joined the alleged conspiracy.  *See* Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962D (2018).

The Court should adopt **Defendants' Proposed Instruction No. 11**, which properly addresses these issues.

---

[36] *See* CV 445.21 Conspiracy to engage in a pattern of corrupt activity or the collection of an unlawful debt; essential elements; burden of proof, 1 CV Ohio Jury Instructions 445.21 ("…Defendant became a member of the conspiracy; that is, the defendant demonstrated by words or actions an agreement to…").

## No. 16  OCPA - Generally

Plaintiffs also bring two parallel claims under Ohio's equivalent to the federal RICO statute, the Ohio Corrupt Practices Act, the first involving the Opioid Marketing Enterprise and the second involving the Opioid Supply Chain Enterprise.

The first OCPA claim is brought only against the Defendants Teva and Janssen. It alleges that these Defendants, along with other manufacturers of prescription opioids not in this trial, formed and operated an association-in-fact Opioid Marketing Enterprise to fraudulently market and promote the sale of opioids by misrepresenting the risks and benefits of these drugs, and that they did so through a "pattern of corrupt activity," including repeated acts of mail, wire, and telecommunications fraud.

Plaintiffs bring a separate OCPA claim against Defendants Teva, Actavis, McKesson, Cardinal Health, and AmerisourceBergen.  This claim alleges that these Defendants, along with other manufacturers of prescription opioids not participating in this trial, formed and operated an Opioid Supply Chain Enterprise to expand their sales of prescription opioids by failing to maintain effective controls to prevent diversion and by failing to identify or report and filling suspicious orders for opioids, without first clearing such orders of suspicion through a due diligence investigation, in violation of their duties under the federal Controlled Substances Act (CSA), and did so through a "pattern of corrupt activity," including repeated acts of mail and wire fraud and violations of the CSA.

These claims are brought by Plaintiffs to recover damages claimed to have been caused by Defendants' engaging or conspiring to engage in a pattern of corrupt activity.[37]

---

[37] 1 OJI-CV, 1 CV Ohio Jury Instructions 445.01, CV 445.01 Civil action; introduction

- 49 -

*Defendants' Objections:*

Defendants object to Plaintiffs' Proposed Jury Instruction No. 16 because it would be confusing to the jury, is incomplete, and misstates the law.  First, the use of the terms "Opioid Marketing Enterprise" and "Opioid Supply Chain Enterprise" is confusing and an incomplete description of Plaintiffs' allegations and burden.  Second, the use of the terms "Teva" and "Actavis" is misleading as these terms include multiple, distinct corporate entities, each of which Plaintiffs must prove their claims against.  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Minno v. Pro-Fab, Inc.*, 905 N.E.2d 613, 617 (Ohio 2009).  Third, Plaintiffs' introduction incorrectly suggests that an OCPA claim can be based upon a violation of the CSA, which is not a predicate act, and which is not based upon any pattern instructions. *See United States v. Alghazouli*, 517 F.3d 1179, 1184 (9th Cir. 2008) ("the Supreme Court [has] made clear . . . that a criminal conviction for violating a regulation is permissible only if a statute explicitly provides that violation of that regulation is a crime.").  Fourth, Defendants further object to this instruction and the others in this sequence (Nos. 32-39) because they do not define the predicate acts for the OCPA claim or the requirements of those predicate acts.  To the extent Plaintiffs are relying on provisions of the CSA other than 21 U.S.C. § 843(a)(4)(A),[38] Defendants object for the reasons set forth in their objection to Plaintiffs' Proposed Instruction No. 11 (RICO - Defendants' Participation Was Through a Pattern of Racketeering Activity).

Defendants further object to any suggestion that Plaintiffs can recover future damages, which have not been pled.  *See Bessemer & Lake Erie R.R. Co. v. Seaway Marine Trans.*, 596

---

[38] To the extent Plaintiffs are relying on 21 U.S.C. § 843(a)(4)(A), Defendants maintain that the Court erred as a matter of law in ruling that a violation of that subsection "can constitute a predicate act under 18 U.S.C. § 1961(1)(D)," In re Nat'l Prescription Opiate Litig., 1:17-md-02804, ECF No. 2580, and assert that Plaintiffs cannot establish that the Defendants' conduct here violates § 843(A)(4)(a) or § 1961(1)(D).

F.3d 357, 366-69 (6th Cir. 2010); *Flying J, Inc. v. Central CA Kenworth*, 45 Fed. App'x 763, 767 (9th Cir. 2002).

The Court should adopt **Defendants' Proposed Instruction Nos. 13-14**, which properly address these issues.

### No. 17  OCPA – Conducting or Participating in the Affairs of an Enterprise – Essential Elements

To recover damages on this claim, Plaintiffs must prove, by at least a preponderance or greater weight of the evidence, that:

(A) Defendants were persons;

(B) Defendants were associated with an enterprise;

(C) Defendants conducted or participated in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity, and

(D) Plaintiffs were damaged, directly or indirectly, as a result of the Defendants' conduct.[39]

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 17 as prejudicial, misleading, incomplete and likely to confuse the jury. First, the separation between the elements and their definitions is likely to confuse the jury. Second, the instruction is incomplete because it fails to include proximate cause and Plaintiffs' burden as it relates to this claim and a claim for triple damages.  *See* 1 CV Ohio Jury Instructions 445.01, 03 (elements, burden of proof), 05, 07 (2019) (modified); *id.* 305.05 (preponderance of the evidence); *id.* 303.07 (clear and convincing); *id.* 315 (damages); *id.* 405 (proximate cause); *Cleveland v. Ameriquest Mort. Secs., Inc.*, 615 F.3d 496, 503 (6th Cir. 2010); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1148 (Ohio 2002).  Third, the use of "indirectly," is contrary to the Sixth Circuit's description of proximate causation. *See Cleveland v. Ameriquest Mort. Secs., Inc.*, 615 F.3d 496, 503 (6th Cir. 2010) (noting that "the Ohio Supreme Court has adopted the *Holmes* Court's proximate cause

---

[39] 1 OJI-CV, 1 CV Ohio Jury Instructions 445.03, Conducting or participating in the affairs of an enterprise; essential elements; burden of proof.

analysis," which requires a direct relation between the injury asserted and the injurious conduct alleged); *Bradley v. Miller*, 96 F. Supp. 3d 753, 774 (S.D. Ohio 2015) (proximate causation is requirement element of OCPA claim); *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *5 (Ohio Ct. App. 2013) (applying directness requirement to OCPA claim).  Fourth, this instruction lacks any scienter requirement, which Plaintiffs concede is a required element of an OCPA claim.  *See* Plaintiffs' Proposed Instruction No. 22. [40]

The Court should adopt **Defendants' Proposed Instruction Nos. 13-14**, which properly address these issues by properly presenting all relevant information in one place.

---

[40] Additionally, Defendants object to the Court's ruling "that a violation of 21 U.S.C. § 843(A)(4)(a) can constitute a predicate act under 18 U.S.C. § 1961(1)(D)."  *In Re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF. No. 2580.

## No. 18  OCPA – Conspiracy – Essential Elements

To recover damages for OCPA conspiracy, plaintiff must prove, by at least the

preponderance or greater weight of the evidence, that:

(A) Defendants were persons (in this context, too, corporations are persons);

(B) The conspiracy existed at or about the time claimed;

(C) Defendants became members of the conspiracy; that is, the Defendant demonstrated

by words or actions an agreement to:

(1) Conduct or participate in, directly or indirectly, the affairs of an enterprise, through a
pattern of corrupt activity;

(D) One or more members of the conspiracy committed, in furtherance of some object or

purpose of the conspiracy, one or more of the following:

(1) Felonious manufacture, buying selling, or otherwise dealing in controlled substances
    that are punishable by law in the United States; or
(2) Mail and Wire fraud; or
(3) Telecommunications fraud;

(E) Plaintiffs were damaged, directly or indirectly, as a result of the conspiracy.

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 18 as prejudicial,

confusing, and likely to mislead the jury. First, the separation between the elements and the

definitions of those elements is likely to mislead the jury.  *See* 1 CV Ohio Jury Instructions

445.21, 23, 25 (2019); *id.* 445.05 (person, enterprise, pattern of corrupt activity, corrupt activity);

id. 315 (damages); *id.* 405 (proximate cause); 2 CR Ohio Jury Instructions 523.01 (conspiracy,

overt act).  Defendants further object to this request because it does not state that each Defendant

must be a part of the conspiracy to make that specific Defendant liable.  1 CV Ohio Jury

Instructions 445.21(1)(C).  Defendants further object to the use of "indirectly," which is contrary to the Sixth Circuit's description of proximate causation for an OCPA claim, and the failure to actually reference but-for causation and proximate causation.  *See Bradley v. Miller*, 96 F. Supp. 3d 753, 774 (S.D. Ohio 2015) (proximate causation is requirement element of OCPA claim); *City of Cleveland v. Ameriquest Mort. Sec., Inc.*, 615 F.3d 496, 503 (6th Cir. 2010) (applying directness requirement in proximate cause analysis); *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, *5 (direction relation test applies to OCPA claims).  Defendants further object to this definition because it does not define the predicate acts.[41]

The Court should adopt **Defendants' Proposed Instruction Nos. 13-14**, which properly address these issues by properly presenting all relevant information in one place.

---

[41] Additionally, Defendants object to the Court's ruling "that a violation of 21 U.S.C. § 843(A)(4)(a) can constitute a predicate act under 18 U.S.C. § 1961(1)(D)."  *In Re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2580.

## No. 19  OCPA – Clear and Convincing Evidence

To recover actual damages, the Plaintiffs must prove their claims by a preponderance of the evidence.  However, Plaintiffs will be entitled to enhanced damages under OCPA if they have proven this claim by clear and convincing evidence.

"Clear and convincing" means that the evidence must produce in your minds a firm belief or conviction about the facts to be proved. It must be more than evidence that simply outweighs or overbalances the evidence opposed to it.[42]

On this claim, the injuries for which plaintiffs may claim damages are not limited to injury to business or property.  In addition, damages may also include injury distinct from that inflicted by the corrupt activity.[43]

OJI-CV 303.07.

### Defendants' Objections:

Defendants object to Plaintiffs' Proposed Jury Instruction No. 19 as an incomplete statement of the law and likely to confuse and/or prejudice the jury. First, the instruction omits that to recover triple damages, Plaintiffs must prove "actual damages by clear and convincing evidence."  Ohio Rev. Code § 2923.34(E).  Second, use of the word "enhanced" is contrary to the pattern jury instructions on which Plaintiffs rely and incorrectly suggests that an award of more than treble damages can be issued.  *See id.*

---

[42] CV 303.07 Clear and convincing [Rev. 2/24/18], 1 CV Ohio Jury Instructions 303.07

[43] CV 445.03 Conducting or participating in the affairs of an enterprise; essential elements; burden of proof, 1 CV Ohio Jury Instructions 445.03 ("Damages may include, but are not limited to, competitive injury and injury distinct from that inflicted by the corrupt activity. R.C. 2923.34. Note that injury may be directly or indirectly caused. If there is evidence that the injury was "indirectly" caused, the word indirectly must be added to the definition of proximate cause. OJI-CV 405.01 § 2.").

- 56 -

The Court should adopt **Defendants' Proposed Instruction Nos. 13-14**, which properly address these issues by properly presenting all relevant information in one place.

### No. 20  OCPA – Definitions

You must use the following definitions in determining whether Defendants violated the OCPA.

PERSON.  The term "person" includes an individual, corporation, business trust, estate, trust, partnership, and association or any governmental officer, employee, or entity.[44]

ENTERPRISE.[45] The term "enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity.

---

[44] R.C. 2923.31(G) and 1.59

[45] R.C. 2923.31(C). In  *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, the Supreme Court of Ohio decided that the existence of an enterprise can be established without proving that the enterprise was a structure separate and distinct from a pattern of corrupt activity. *See also State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767.

It is unclear whether the "person" element may also be the same as the "enterprise" element under any of the civil claims for relief for engaging in a pattern of corrupt activity. Under 18 U.S.C. § 1962(c), the statute upon which R.C. 2923.32(A)(1) is premised, it is unclear whether the "person" may be the same as the "enterprise." *See United States v. Computer Sciences Corp.*, 689 F.2d 1181 (4th Cir. 1982), certiorari denied (1983), 459 U.S. 1105, which held that the "person" may not be the "enterprise" for purposes of 18 U.S.C. § 1962(c). *But see United States v. Hartley*, 678 F.2d 961 (4th Cir. 1982), certiorari denied (1983, )459 U.S. 1170, which held that the "person" and the "enterprise" may be the same for purposes of 18 U.S.C. § 1962(c).

Under 18 U.S.C. § 1962(b), the statute upon which R.C. 2923.32(A)(2) is premised, courts are also split as to whether the "person" element may be the same as the "enterprise" element. *Compare  Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393 (9th Cir. 1986), which held that the "person" may be the same as the "enterprise" for purposes of  18 U.S.C. § 1962(b), *with Robinson v. City Colleges of Chicago*, 656 F. Supp. 555 (N.D. ILL. 1981), which held that the "person" may not be the same as the "enterprise" for purposes of 18 U.S.C. § 1962(b).

Finally, at least one court has held that the "person" element may be the same as the "enterprise" element for purposes of  18 U.S.C. § 1962(d), the federal conspiracy section. *See  Onesti v. Thomson McKinnon Sec., Inc.*, 619 F.Supp. 1262 (N.D.Ill. 1985).

 For a thorough discussion of the "person" and "enterprise" issues, see Blakey, The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg, 58 Notre Dame L. Rev. 237 (1982).

Enterprise also includes (illicit) (unlawful) as well as (licit) (lawful) enterprises.

CONDUCT.[46] "Conduct" means to direct.

PARTICIPATE IN.[47] "Participate" means to take part in and is not limited to those who have directed the pattern of corrupt activity. "Participate" encompasses those who have performed activities necessary or helpful to the operation of the enterprise, whether directly or indirectly, without an element of control.

PATTERN OF CORRUPT ACTIVITY.[48] The term "pattern of corrupt activity" means two or more incidents of corrupt activity that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event. A finding of "pattern of corrupt activity" requires proof of at least two incidents of corrupt activity within six years of each other (excluding any period of imprisonment served by any person engaging in the corrupt activity), one of which must have occurred after January 1, 1986.

CORRUPT ACTIVITY. The term "corrupt activity" means:

(A) engaging in (*or*)
(B) attempting to engage in  (*or*)
(C) conspiring to engage in (*or*)

---

[46] *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163 (1993).

[47] *State v. Siferd*, 151 Ohio App.3d 103, 2002-Ohio-6801.

[48] R.C. 2923.31(E). The portion of the instruction set forth in parentheses should be given only if applicable. The six-year period set forth in the instruction is inapplicable if one of the incidents of corrupt activity is aggravated murder. Under R.C. 2923.34(B), a "pattern of corrupt activity" cannot be comprised solely of two or more incidents of mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, transportation in interstate commerce of goods, wares, or merchandise of a value of $5,000 or more knowing the same to have been stolen, converted, or taken by fraud under 18 U.S.C. § 2314, federal securities fraud and/or securities fraud in violation of R.C. 1707.042(A)(1) and/or (2) and/or R.C. 1707.44(B), (C)(4), (D), (E) and/or (F). If two or more incidents of any of the foregoing are in evidence, the following limiting instruction should be given.

(D) soliciting, coercing or intimidating

another person to fraudulently market and promote the sale of opioids or fail to maintain effective

controls to prevent diversion and by failing to identify or report and filling suspicious orders for

opioids as *listed in R.C. 2923.31[I])*[49].

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 20 as prejudicial,

confusing, incomplete, and likely to mislead the jury.  First, the instruction is in an illogical

location, contrary to the Ohio Official Jury Instructions. *See* 445.03, 05 (definitions immediately

following essential elements).  Second, the phrase "without an element of control" is not used in

the statute or any instructions to define "participation."  Third, Plaintiffs omit "at the direction of

those who conducted the enterprise's affairs" from the definition of "participate."  *See Reves v.

Ernst & Young*, 507 U.S. 170, 179, 184 (1993).  Fourth, Plaintiffs have not properly defined the

predicate acts in their definition of "Corrupt Activity" or the specific requirements of those acts;

indeed, Plaintiffs appear to invent new predicate acts, such as "fraudulently market and promote

the sale of opioids or fail to maintain effective controls to prevent diversion and by failing to

identify or report and filling suspicious orders for opioids," which are not enumerated predicate

acts under RICO or OCPA.  Fifth, the use of "as *listed in R.C. 2923.31[I]*" is  unhelpful and

without meaning to the jury.

The Court should adopt **Defendants' Proposed Instruction Nos. 13-14**, which properly

address these issues by properly presenting all relevant information in one place.

---

[49]  R.C. 2923.31(I). When incidents of corrupt activity under R.C. 2923.31(I)(2)(b) and/or (c) are alleged,
the financial limitations set forth in those sections should be read or summarized as well. CV 445.05
Conducting or participating in the affairs of an enterprise; essential elements; definitions *[Rev. 10/3/15]*

### No. 21  OCPA – Conspiracy

A conspiracy is the planning or aiding in the planning of the commission of an offense with one or more other persons with a purpose to promote or facilitate the commission of the specific offense.[50]

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 21 as prejudicial, confusing, incomplete, and likely to mislead the jury. First, this definition is illogically removed from the elements it helps define, contrary to the Ohio Official Jury Instructions. *See* 445.21, 23 (definitions immediately following essential elements).  Second, this instruction fails to identify the "specific offense" at issue, and thus, provides no guidance to the jury. *Dixon v. Huntington Natl. Bank*, 2014 WL 4656798, at *4 (Ohio Ct. App. Sept. 18, 2014).

The Court should adopt **Defendants' Proposed Instruction Nos. 13-14**, which properly address these issues by properly presenting all relevant information in one place.

---

[50] CV 445.23 Conspiracy to engage in a pattern of corrupt activity or the collection of an unlawful debt; essential elements; definitions CR 523.01

**No. 22  OCPA – Knowingly**

KNOWINGLY DEFINED. A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. (Such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.)

HOW DETERMINED. Because you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the Defendant an awareness of the probability that the enterprise's activities would cause the overuse or oversupply of opioids in Cuyahoga and Summit Counties.

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 22 as prejudicial, confusing, and likely to mislead the jury. The instruction is in an illogical location, contrary to the Ohio Official Jury Instructions. *See* 1 CV Ohio Jury Instructions 445.21, 23 (definitions immediately following essential elements).

The Court should adopt **Defendants' Proposed Instruction Nos. 13-14**, which properly address this issue by properly presenting all relevant information in one place.

### No. 23  OCPA – Proximate Cause

GENERAL. A party who seeks to recover for harm must prove not only that the other party's action or failure to act was unlawful, but also that such actions were a proximate cause of the harm.

The standard for proximate cause is different here than I described to you earlier.

PROXIMATE CAUSE DEFINED.  A "Proximate Cause" is an act or failure to act that in the natural and continuous sequence directly or indirectly produced the harm and without which the harm would not have occurred.[51, 52]

There may be more than one proximate cause of a harm in this context as well.  When the act or failure to act of one party continues or combines with the act of another to produce injury, the conduct of each is a cause. It is not necessary that the conduct of each occur at the same time or place.[53]  Defendants' conduct need be only a substantial factor in causing the harm, as defined for you earlier.

***Defendants' Objections:***

Defendants object to Plaintiffs' Proposed Jury Instruction No. 23 because it would be confusing to the jury, is incomplete, and misstates the law.  First, the instruction is not linked back to the elements of an OCPA claim and the proximate cause requirement therein.  *See* 1 CV Ohio Jury Instructions 405.01, 03, 05 (2019) (proximate cause).  Second, the instruction omits reference to but-for causation and proximate causation, and the use of "indirectly" is contrary to the Sixth Circuit's description of proximate causation for an OCPA claim.  *See Bradley v. Miller*, 96 F. Supp. 3d 753, 774 (S.D. Ohio 2015) (proximate causation is requirement element of OCPA claim); *City of Cleveland v. Ameriquest Mort. Sec., Inc.*, 615 F.3d 496, 503 (6th Cir. 2010)

---

[51] CV 445.07 Conducting or participating in the affairs of an enterprise; causation and damages

[52] CV 405.01 Proximate cause [Rev. 2/11/17], 1 CV Ohio Jury Instructions 405.01

[53] CV 207.19 Proximate cause: sample instruction [Rev. 12-11-10], 1 CV Ohio Jury Instructions 207.19

(applying directness requirement in proximate cause analysis); *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, *5 (direction relation test applies to OCPA claims). Moreover, this Court has explained that because OCPA "is patterned after the federal RICO statute … courts have found that the elements for an [Ohio RICO] violation are the same as those for a [federal] RICO claim." *In Re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF. No. 2580 at 1 n.1 (alterations in original). Because direct relation is a requirement for proximate cause as to a RICO claim, it is necessarily required for Plaintiffs' OCPA claim. *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 259 (1992).  Third, the definition of proximate causation is incomplete and is drawn from a "Negligence" instruction. It is incomplete because it does not include language explaining what is not a proximate cause, including where a number of steps separate the alleged acts from the alleged injury, where the theory of liability rests on the independent actions of third or fourth parties, or where the alleged injuries arise from someone else first being injured. *See* 1 CV Ohio Jury Instructions 405.05; *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9, 130 (2010).

The Court should adopt **Defendants' Proposed Instruction Nos. 13-14**, which properly defines proximate cause and presents all relevant information in one place.

## No. 24  Civil Conspiracy

The Plaintiffs claim that the Defendants damaged them by participating in a civil conspiracy.

Before you can find for the Plaintiffs, you must find by the greater weight of the evidence that the Defendants participated in a malicious combination involving two or more persons, including the Defendants, a result of which was the commission of a wrongful or unlawful act[54] or acts that caused damage.

MALICIOUS COMBINATION.[55] "Malicious combination" means a common understanding or design, whether spoken or unspoken, entered into with malice by two or more persons (as defined earlier) to commit a wrongful or unlawful act. It does not require a showing of an express agreement. It is sufficient that the participants, in any manner, reached a mutual understanding to commit a wrongful or unlawful act. A meeting of the participants is not necessary.

MALICE.[56] "Malice" is that state of mind under which a person knowingly intentionally does a unreasonable or unlawful act.

WRONGFUL or UNLAWFUL ACT. Proof that an underlying wrongful or unlawful act was committed is required before the Plaintiffs can prevail on their civil conspiracy claim. The wrongful or unlawful act that the Plaintiffs claim in this case involves the fraudulent marketing

---

[54] *Drawn from Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, quoting *LeFort v. Century 21-Maitland Realty Co.* (1987), 32 Ohio St.3d 121, citing *Minarik v. Nagy* (1963), 8 Ohio App.2d 194.

The unlawful act must be an unlawful act "independent" of the existence of the conspiracy. In other words, there must be an underlying unlawful act actionable in the absence of the conspiracy. *Gosden v. Louis* (1996), 116 Ohio App.3d 195.

[55]. *Drawn from Gosden v. Louis* (1996), 116 Ohio App.3d 195

[56] *Drawn from  Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 1998-Ohio-294.

- 65 -

and failure to maintain effective controls to prevent the diversion of opioids. [57]  The unlawful

act of any one member of the conspiracy will satisfy the unlawful act requirement.

***Defendants' Objections:***

Defendants object overall to Plaintiffs' civil conspiracy instruction for following reasons:

Plaintiffs have not pointed to any independently actionable unlawful act.  Plaintiffs say that the

relevant unlawful act "involves the fraudulent marketing and failure to maintain effective

controls to prevent the diversion of opioids."  This statement is vague and indefinite, and in any

event such conduct is not independently actionable.  The Court has referred to the following as

the alleged unlawful acts: "public nuisance, OCPA, and RICO claims."  *In re Nat'l Prescription*

*Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2568 at 12; *see also In re Nat'l Prescription Opiate*

*Litig.*, 1:17-md-02804, E.C.F. No. 1203 at 21 ("the statutory public nuisance, Ohio RICO, and

injury through criminal acts claims" are the alleged unlawful acts).  RICO and OCPA cannot be

unlawful acts here; a civil conspiracy claim premised on a RICO or OCPA conspiracy would be

entirely duplicative of the RICO and OCPA conspiracy claims.  To the extent the RICO and

OCPA claims themselves rely on alleged violations of suspicious order "duties," those claims are

not independently actionable.  Public nuisance cannot be the underlying unlawful act because

Plaintiffs have disclaimed all compensatory damages for public nuisance, and a civil conspiracy

claim premised on public nuisance as the unlawful act runs contrary to Plaintiffs' disclaimer.

*See* ECF 2212 n.2 ("Plaintiffs have expressly disclaimed recovery for past damages under their

public nuisance claim and are seeking only equitable abatement relief.").

---

[57] CV 443.01 Civil conspiracy *[Rev. 12-1-07]*

Without waiving this objection, Defendants also object to Plaintiffs' proposed instruction as follows:

Defendants object to Plaintiffs' proposed instruction because it does not fully, completely and correctly state the elements of a civil conspiracy claim.  In addition to the elements stated in Plaintiffs' proposal, Plaintiffs must also prove, by a preponderance of the evidence, that Defendants' unlawful conduct proximately caused damage to the County Governments.  *See* 1 CV Ohio Jury Instructions 443.01 at 6 (listing proximate cause as an instructed element of civil conspiracy).  This Court should adopt the proximate cause language contained in **Defendants Instruction No. 15**.

Defendants also object the phrase "wrongful or unlawful act" as used throughout the proposed instruction.  The official comment to the Ohio civil conspiracy charge stated that:  "The Committee believes that use of the term "wrongful act" can be used interchangeably with "unlawful act" because the case law defines "unlawful act" as a tort. Avery v. Rossford (2001), 145 Ohio App.3d 155."  1 CV Ohio Jury Instructions 443.01.  The use of both "wrongful" and "unlawful" is thus unnecessary.

Defendants object to the definition of "Malice" contained in Plaintiffs' proposed instruction and propose the following be used instead:  "'Malice' is that state of mind under which a person purposely does an unlawful act, without a reasonable or lawful excuse, which causes injury."  When defining "malice," courts use the mental state "purposely" and have added the language "without a reasonable or lawful excuse, to the injury of another."  *See Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998).

Defendants object to the definition of "Unlawful Act" used in Plaintiffs' proposed instruction to the extent that it includes the language "[t]he wrongful or unlawful act that the

- 67 -

Plaintiffs claim in this case involves the fraudulent marketing and failure to maintain effective controls to prevent the diversion of opioids."  This language is inconsistent with the principle of Ohio law holding that the underlying unlawful act must be "independent" of the existence of the conspiracy.  To that end, Defendants propose replacing Plaintiffs' proposed language with the following:  "The unlawful act is one for which the Plaintiffs could hold a Defendant liable separate and apart from any conspiracy.  This requires each Plaintiff to first prove all of the elements of that unlawful act and then that liability would be owed to the Counties."  This language is consistent with the comments to the Ohio civil conspiracy charge, which recognize that:  "*The unlawful act must be an unlawful act 'independent' of the existence of the conspiracy. In other words, there must be an underlying unlawful act actionable in the absence of the conspiracy.*"  1 CV Ohio Jury Instructions 443.01 (citing *Gosden v. Louis*, 687 N.E.2d 481, 497 (Ohio Ct. App. 1996)); *see also Davis v. Clark Cty. Bd. of Commrs.*, 994 N.E.2d 905 (Ohio 2013).  In addition, because Plaintiffs must prove that an underlying unlawful act was committed by a Defendant for which that Defendant could be held liable separate and apart from any conspiracy, *see Gosden*, 687 N.E.2d at 497, the jury should be separately instructed on the elements of that underlying unlawful act.

The Court should adopt **Defendants' Proposed Instruction No. 15**, which properly addresses these issue.

**No. 26  Statute of Limitations – RICO, OCPA and Civil Conspiracy damage claims only**

Defendants assert as a defense that the statute of limitations bars Plaintiffs' claims for damages for RICO, OCPA, and Civil Conspiracy.  I already have found that the statute of limitations does not apply to Plaintiffs' public nuisance claim.

A statute of limitations is a law providing that a claim is barred if a plaintiff does not bring it within a prescribed period of time.

Defendants have the burden of proving the statute of limitations defense.  Defendants must prove by a preponderance of the evidence that Plaintiffs did not bring their claims within the applicable time period.[58]

Different statute of limitations time periods apply to each of Plaintiffs' claims.

The time period within which Plaintiffs' RICO claims must be brought began when Plaintiffs first knew, or by the exercise of reasonable care should have known, that they were injured, and that the injury was the result of racketeering activity.  The applicable statute of limitations period is four (4) years for Plaintiffs' RICO claims.

For Plaintiffs' OCPA claims, the time period within which Plaintiffs' claims must be brought is the later of three dates:

(1) five (5) years after Plaintiffs knew, or reasonably should have known, that they were injured by Defendants' conduct;

(2) five (5) years after the unlawful conduct ends; or

(3) within any longer period of limitations that may be applicable

---

[58] 3 Fed. Jury Prac. & Instr. § 107:01 (6th ed.).

The time period for the bringing the OCPA claims is suspended, and does not run, if the State of Ohio brings an OCPA claim based, in whole or in part, on the same conduct as Plaintiffs' claims. The State of Ohio has brought an OCPA claim against Teva and Janssen on May 31, 2007, which currently remains pending.

Plaintiffs' Civil Conspiracy claims include allegations of conspiracy to engage in conduct that violates RICO and OCPA and that caused a public nuisance. The limitations period for the Civil Conspiracy claim, to the extent that it is based on the same conduct as in the OCPA and RICO claims, is the same as for those claims.  I have already explained to you the limitations periods for RICO and OCPA.  To the extent that the Civil Conspiracy claim is based on Defendants' conduct in creating a public nuisance, the applicable period is four (4) years.  This period begins to run when the Plaintiffs knew, or reasonably should have known, that they were injured by Defendants' conduct.

### *Fraudulent Concealment*

In regard to the statute of limitations, the Court instructs you that Plaintiffs have asserted that Defendants Teva, Actavis, McKesson, Cardinal Health, and AmerisourceBergen fraudulently concealed the Opioid Supply Chain Enterprise against Plaintiffs and that this fraudulent concealment tolled the statute of limitations as to Plaintiffs' RICO, OCPA, and Civil Conspiracy claims based on Defendants' Opioid Supply Chain Enterprise.  In order to prove fraudulent concealment of the claims to toll the statute of limitations, Plaintiffs must prove by a preponderance of the evidence that Defendants engaged in a course of conduct or committed an affirmative act to conceal their wrongdoing and Plaintiffs, despite the exercise of due diligence,

did not discover the operative facts on which their claims are based within the limitations period.[59]
Fraudulent concealment may be established through the acts of co-conspirators.[60]  Where there is
a duty to disclose, silence alone may constitute concealment.[61]

If you find that Plaintiffs have proven by a preponderance of the evidence that Defendants
fraudulently concealed the Opioid Supply Chain Enterprise, the cause of action shall be deemed
to have first accrued at, and not before, the time at which the Enterprise was, or with reasonable
diligence might have been, first known or discovered by Plaintiffs.[62]

### Continuing Violation

The Court further instructs you that Plaintiffs have asserted that the statute of limitations
should not run against them while Defendants engaged in continuing violations.  A continuous
violation exists when:  (1) Defendants engage in continuing wrongful conduct; (2) injury to
Plaintiffs accrues continuously; and (3) had Defendants at any time ceased their wrongful conduct,
further injury would have been avoided.[63]

---

[59] *See Dayco Corp. v. Firestone Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975); *City of Cuyahoga Falls v. Johnson Controls, Inc.*, 2019 WL 1116006, at *4 (N.D. Ohio March 11, 2019) (internal quotation omitted).

[60] *See In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968, 980 (N.D. Ohio 2015).

[61] *See PYA/Monarch, Inc. v. Horner*, 596 N.E.2d 515, 517 (Ohio App. 1991).

[62] *See Illinois Central RR Co. v. Guy*, 682 F.3d 381, 394 n.39 (5th Cir. 2012).

[63] *See* 66 Ohio Jur. 3d, *Limitations and Laches*, § 58. *Effect of continuing violation on accrual of cause of action and commencement of limitations period* (June 2019) (collecting cases applying doctrine of continuing violations).

If you find that Plaintiffs have proven by a preponderance of the evidence that Defendants engaged in continuing violations, the cause of action shall be deemed to have first accrued at, and not before, the time at which Defendants ceased engaging in continuing violations.[64]

***Defendants' Objections:***

Defendants object to this proposed instruction for the following reasons.

First, as a threshold matter, because the limitations periods and accrual rules are different for each claim, Defendants object to having one single statute of limitations instruction, but contend that there should be separate instructions for the accrual of each claim, just as the elements for each claim separately are instructed on above.

Second, Defendants object to instructing the jury that the Court already has found that the statute of limitations does not apply to nuisance.  The jury does not need to be told anything about statute of limitations and nuisance because the issue is not being put to them.  This statement unfairly prejudices Defendants because the jury might conclude that the defense is not meritorious with respect to the OCPA, RICO, and conspiracy claims simply because the Court already decided the issue with respect to nuisance.  Defendants object to any instruction about nuisance and statute of limitations, but if the Court believes it is necessary to give one, the jury should be told only that the issue of whether the statute of limitations bars the public nuisance claim is not an issue for them to decide and say nothing of the Court's legal ruling on that issue.

Third, Defendants object to telling the jury that the statute of limitations "bars" claims. Defendants anticipate that Plaintiffs may improperly argue to the jury that the statute of limitations defense is a "technicality" and that the jury should not let Defendants "off the hook" on that basis.

---

[64] *Id.*

*Bd. of Regents v. Tomanio*, 446 U.S. 478, 487 (1980) ("Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system.").  The jury's role is to find the facts regarding whether this defense applies.  The legal implications of those facts should not be allowed to prejudice their finding of the facts, and the jury should not be allowed to nullify the defense.

Fourth, Defendants object that Plaintiffs' instruction does not include a definition of knowledge that pertains to the statute of limitations defense.  The jury should be instructed:  "You must find that the County Government knew a particular fact if one of the County Government's agents, employees, officers, or elected officials knew or learned the fact in the course of that individual's duties."  Restatement (Third) of Agency § 5.03.  Plaintiffs object to giving such an instruction because they claim that "local governments may not be charged with the knowledge of their law enforcement personnel unless the knowledge arises out of matters 'which might come within the scope of [their] duties.'"  (citing *City of Cleveland v. Payne*, 72 Ohio St. 347, 357 (1905)).  But, Defendants' proposed instruction accounts for this because it instructs that the knowledge must be learned in the course of an individual's duties.  Furthermore, as Defendants argued at summary judgment, there is no basis for a conclusion that the relevant county employees' knowledge is not the knowledge of the county itself.  The relevant employees include supervisory officials like the director of public health, the chief of police, the chief toxicologist, the county prosecutor, the county health commissioner, and the chair of the Cuyahoga County Opiate Task Force.  The scope of these employees' duties clearly included the identification, prosecution, treatment, and study of citizens who were addicted to opioids and who were overdosing and dying

from their addiction.  Their knowledge therefore is Plaintiffs' knowledge.[65]

Fifth, the jury should be instructed that not all claims are asserted against all Defendants, and the claims were brought against different Defendants at different times.  Defendants propose including a chart, included below, for ease of reference for the jury that contains the applicable dates and applicable limitations periods for each claim and each defendant.  Plaintiffs' objections to including this chart are meritless.  They claim that the chart will be "misleading" because it does not explain the various accrual rules, but the chart does not supplant the instructions that precede it.  It is simply a reference guide to put all the relevant dates in one easy place for the jury.

Sixth, Plaintiffs' instruction contains an inaccurate statement of the law as to when a RICO claim accrues.  As the Court already has held, Plaintiffs do not have to have known that their injury was caused by racketeering activity to trigger the limitations period.  ECF No. 2568 at 13; *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("[D]iscovery of the injury, *not discovery of the other elements of a claim*, is what starts the clock.").  The instruction should make that clear, and the jury should be instructed that Plaintiffs did not need to know anything else about their RICO claims other than injury to trigger the limitations period, as proposed in Defendants' proposed instructions.  ECF No. 2568 at 13; *Rotella*, 528 U.S. at 555.  The jury also should be instructed on the separate accrual rule for RICO claims.  *See Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987); *Rotella*, 528 U.S. at 555; *Isaak v. Trumbull*, 169 F.3d 390, 399

---

[65] *See* Restatement (Third) of Agency § 5.03 ("[N]otice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal."); 39 O.Jur.3d § 402 (2002), *Knowledge of Employee as Chargeable to Employer*; *In re Fair Finance Co.*, 834 F.3d 651, 676 (6th Cir. 2016) ("A principal is generally charged with the knowledge of and conduct undertaken by its agent acting within the scope of his employment."); *Town of Nantucket v. Beinecke*, 398 N.E.2d 458, 461 (Mass. 1979) ("[W]hen those disinterested persons who are capable of acting on behalf of the town knew or should have known of the wrong, . . .  the town [should] be charged with such knowledge.").

(6th Cir. 1999); *Grimmett v. Brown*, 75 F.3d 506, 513 (9th Cir. 1996); *Trollinger v. Tyson Foods, Inc.*, 2006 WL 319022 (E.D. Tenn. 2006).

Seventh, Defendants object to Plaintiffs' OCPA portion of the instruction because (1) it needlessly complicates the factual question that the jury must find.  The Court has ruled that the exception for the Ohio Attorney General's suit applies.  ECF No. 2568 at 8.  Thus, according to that ruling—to which Defendants object—the only two relevant questions are whether Plaintiffs' claims accrued before that suit was filed or whether "the complained-of conduct ceased more than five years prior to the filing dates of the Counties' Complaints."  *Id.*  The jury should not be instructed that the Ohio AG has sued these parties because that is unfairly prejudicial to the Defendants, as it might indicate to the jury that Plaintiffs' claims are meritorious.  If the Court is inclined to give Plaintiffs' instruction, then, as with RICO, the jury should be instructed that an OCPA claim accrues when a plaintiff discovered, or reasonably should have discovered, its injury and that a plaintiff need not know anything else about its claim for the claim to accrue.[66]  *Meros v. Dimon*, 2019 WL 1384390, at *5 (S.D. Ohio Mar. 27, 2019) ("A cause of action under [OCPA] accrues when the plaintiff knew or should have known of the injury underlying the claim.").

Eighth, Defendants object to Plaintiffs' civil conspiracy statute of limitations instruction.  If Plaintiffs are indicating their position that they can seek compensatory damages for a civil conspiracy to commit a public nuisance claim when they have disclaimed compensatory damages

---

[66] For the reasons set forth in their reply on their motion for partial summary judgment regarding the statutes of limitation, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2537, at 26-27, Defendants also contend that a five-year statute of limitations applies to OCPA claims, and "the termination test" does not extend the five-year limitations period following accrual.  Defendants object to the Court's holding that the termination test is an exception to the five-year statutory period.  *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2568, at 8.

for the direct nuisance claims, Defendants object.[67]  Plaintiffs cannot seek compensatory damages for a conspiracy to commit a public nuisance claim when they disclaimed compensatory damages on the underlying nuisance claim, and that disclaimer was the basis of the Court's ruling to permit the underlying claim to proceed.  ECF No. 1203 (holding that Plaintiffs' public nuisance claim was not abrogated by the Ohio Products Liability Act because "a claim seeking only equitable relief is not abrogated by the OPLA"); ECF No. 2568 ("Plaintiff Counties plead *absolute* (not qualified) public nuisance based on intentional conduct, and seek equitable relief only.  As such, longstanding precedent makes clear there is no limitations period applicable to these claims."); *see also Ohio Vestibular & Balance Ctrs., Inc. v. Wheeler*, 999 N.E.2d 241, 253–54 (Ohio Ct. App. 2013) ("'[I]f a plaintiff suffers no actual damages from the underlying unlawful act, there can be no successful civil conspiracy action.'" (quoting *Gosden v. Louis*, 116 Ohio App.3d 195, 220, 687 N.E.2d 481 (9th Dist.1996)); *Bender v. Logan*, 76 N.E.3d 336, 360 (Ohio Ct. App. 2016) ("Ohio law does not recognize civil conspiracy as an independent cause of action. . . Rather, to prevail upon a civil conspiracy claim, a plaintiff must demonstrate the existence of an underlying unlawful act."); *Shaker v. Vill. Voice Media, Inc.*, No. 1:04-CV-01881, 2005 WL 1277730, at *3 (N.D. Ohio May 26, 2005) ("Failure to state a viable underlying tort, outside of conspiracy itself, is fatal.").[68]

In addition, Plaintiffs' instruction does not adequately instruct on the accrual rules and a plaintiff's obligation to discover the facts underlying its claims.  A civil conspiracy claim accrues when a Defendant commits the unlawful act that causes injury.  Whether a plaintiff knows of the

---

[67] Defendants continue to dispute the Court's ruling that a five-year statute of limitations applies to any of Plaintiffs' civil conspiracy claims, ECF No. 2568 at 12.  *See* Ohio Rev. Code § 2305.09; Dkt. 1691-2 at 5.

[68] If the Court allows Plaintiffs to seek compensatory damages on their conspiracy to commit a public nuisance claim (which it should not), then Defendants agree that a four-year statute of limitations applies to that claim.

unlawful conduct or the alleged injury does not matter.  *LGR Realty, Inc. v. Frank & London Ins. Agency*, 98 N.E.3d 241, 247 (Ohio 2018); *Inv'rs REIT One v. Jacobs*, 546 N.E.2d 206, 210 (Ohio 1989).

Ninth, per Defendants' proposed instructions, the jury should be separately instructed on any applicable tolling doctrines.  Also, Defendants object that any tolling doctrines are applicable in this case.

Tenth, Plaintiff's instruction on fraudulent concealment is an inaccurate statement of the law.  Fraudulent concealment requires fraudulent concealment of "actions," and requires more than an underlying fraud.  *Dayco Corp. v. Firestone Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975).  The "Opioid Supply Chain Enterprise" is not an action, but is nothing more than Plaintiffs' made-up term to describe its allegations.  "Because 'statutes of limitation are vital to the welfare of society and are favored in the law,' the plaintiff who invokes the doctrine of fraudulent concealment will be 'held to stringent rules of pleading and evidence....'" *Iron Workers Local Union No. 17 v. Philip Morris Inc.*, 29 F.Supp.2d 801, 809 (N.D. Ohio 1998) (citation omitted).  The jury should be fully instructed about these "stringent rules" and should be told exactly what Plaintiffs must prove to succeed on a claim of fraudulent concealment and receive the benefit of any tolling.  The jury should be instructed that, under the fraudulent concealment doctrine, a statute of limitations may be tolled where there is some conduct of the defendant, such as misrepresentation, which excludes suspicion and prevents inquiry into the plaintiff's causes of action.  *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 474 (6th Cir. 2013).  In order to prove fraudulent concealment of the claims to toll the statute of limitations, Plaintiffs must prove by a preponderance of the evidence, as to each Defendant, that the Defendant (1) engaged in a course of conduct or committed an affirmative act to conceal its wrongdoing and Plaintiffs, despite the

exercise of due diligence, did not discover the facts on which their claims are based within the limitations period.  *See Dayco Corp. v. Firestone Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975); *City of Cuyahoga Falls v. Johnson Controls, Inc.*, 2019 WL 1116006, at *4 (N.D. Ohio March 11, 2019) (internal quotation omitted).  Fraudulent concealment requires more than mere non-disclosure.  Each County Government must prove, as to each Defendant, that the Defendant was guilty of some affirmative act of fraudulent concealment—such as fraudulent statements, hiding evidence, or promising not to plead the statute of limitations in a lawsuit—that frustrated discovery of the Counties' claims despite each County Government's diligence in discovering their claims.  An injured party has a positive duty to use diligence in discovering its claim(s) within the limitations period.  Any fact that should raise his or her suspicion is the same as actual knowledge of his or her entire claim(s).  The ability to know something has the same effect as knowledge itself.  The jury should be instructed that the Court has previously held that fraudulent concealment cannot toll marketing-based claims.  *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, E.C.F. 2568, at 22.

Defendants also object to the instructions that "Fraudulent concealment may be established through the acts of co-conspirators" and that "Where there is a duty to disclose, silence alone may constitute concealment" as misstatements of the law in this case.  A plaintiff must prove each element of fraudulent concealment against each Defendant.  *Dayco v. Goodyear Tire & Rubber Co.*, 523 F.2d  389, 394 (6th Cir. 1975); *City of Cuyahoga Falls v. Johnson Controls, Inc.*, 2019 WL 1116006, at *4 (N.D. Ohio Mar. 11, 2019) ("Under Ohio law, the doctrine of fraudulent concealment 'tolls the statute of limitations only as to parties that committed or participated in the concealment[.]' '[T]he [p]laintiff must affirmatively plead facts supporting a claim for fraudulent concealment against each specific [d]efendant who allegedly participated in the concealment in

order to state a claim against that [d]efendant which would survive an otherwise expired statute of limitations.") (citations omitted; alterations in original).  Plaintiffs have not identified any legal duty by Defendants to disclose any facts to Plaintiffs, and the Court has not found that any disclosure duty ran from Defendants to Plaintiffs.  *Browning v. Levy*, 283 F.3d 761, 770 (6th Cir. 2002) ("[A]ffirmative concealment must be shown; mere silence or unwillingness to divulge wrongful activities is not sufficient.").

Plaintiffs' instruction that, "If you find that Plaintiffs have proven by a preponderance of the evidence that Defendants fraudulently concealed the Opioid Supply Chain Enterprise, the cause of action shall be deemed to have first accrued at, and not before, the time at which the Enterprise was, or with reasonable diligence might have been, first known or discovered by Plaintiffs," is unnecessary and misstates the law.  The time at which each Plaintiff discovered, or should have discovered, its injury is the proper standard.  *Gates v. Ohio Savings Bank Ass'n*, 2007 WL 2713897, at *4 (N.D. Ohio Sept. 17, 2007); *Metz v. Unizan Bank*, 2006 WL 8427066 (N.D. Ohio Feb. 28, 2006).

Eleventh, Plaintiffs' instruction on the continuing violations doctrine does not adequately instruct on when the doctrine applies.[69]  The jury should be instructed that the continuing violations doctrine applies: where new harm occurs on a continuing basis due to a continuing course of conduct.  The continuing violations doctrine does not apply where the Defendant committed repetitive discrete violations, each of which would independently support a cause of action.  The continuing violations doctrine does not apply merely because one or both of the County

---

[69] Defendants do not agree that the "continuing violations" doctrine, as set forth by the Court in *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2568, applies to toll any of the County Governments' claims and object to the Court giving this instruction to the jury.

Governments suffer ongoing effects from an act or acts committed before the applicable limitations period.  If you find that the continuing violations doctrine applies to toll the County Governments' claims, you may award the County Governments only those damages that they incurred within the applicable limitations period and not for damages incurred before the applicable limitations period. *Nat'l Credit Union Admin. Bd. v. Ciuni & Panichi, Inc.*, 2019 WL 188472, at *10 (N.D. Ohio Jan. 11, 2019) (holding that series of negligent annual audits were "repetitive and discrete, not continuing," despite allegation that "defendants' negligence was continuous from 2006 through late 2012"); *see also Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410, 417 (6th Cir. 2007) (distinguishing a series of discrete violation from a single continuing violation); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1559 (6th Cir. 1997); *see Sexton v. Mason*, 883 N.E.2d 1013, 1021 (Ohio 2008) ("So long as [defendants] engaged in continuing conduct …, the expiration of the statute of limitations was tolled, with [plaintiffs'] potential recovery on any claims limited to damages only within the four-year period that would have preceded the filing of a suit"); *Brown v. County Comm'rs*, 622 N.E. 2d 1153, 1162 (Ohio 1993) (nuisance action can be brought only "for those injuries incurred within the applicable period, regardless of when the nuisance began"); *Wood v. American Aggregates Corp.*, 585 N.E. 2d 970, 973 (Ohio Ct. App. 1990) (barring plaintiffs from proving damages for period earlier than the applicable limitations period); *Hebron v. Shelby County Government*, 406 F. App'x 28, 31 (6th Cir. 2010).[70]

Defendants ask this Court to use the chart included in Defendants' Proposed Instructions.

---

[70] Given the Court's ruling that no statute of limitations applies to the County Governments' claims for equitable relief, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2568, Defendants do not propose a jury instruction on the statute of limitations for those equitable claims at this time.  But Defendants continue to note for the record their objection to the Court's ruling on those equitable claims as an erroneous interpretation of the law and note that it is their position that the jury should be instructed on Defendants' statute of limitations defense on those underlying equitable claims.