### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF OHIO

### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| | Case No. 17-md-2804 |
| OPIATE LITIGATION | Hon. Dan Aaron Polster |
| *This document relates to:* | |
| Track One Cases | |

## EXHIBIT 3 – DEFENDANTS' PROPOSED JURY INSTRUCTIONS AND PLAINTIFFS' OBJECTIONS

The following are Defendants' proposed instructions with Plaintiffs' objections to those proposed instructions.

## No. 1.[1]  Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c) – General[2]

Each County Government claims that certain Defendants (Teva Pharmaceuticals USA, Inc. ("Teva USA"), Cephalon, Inc. ("Cephalon"), Watson Laboratories, Inc. ("Watson Laboratories"), Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc. ("Actavis Pharma"), Warner Chilcott Company, LLC ("Warner Chilcott"), Actavis South Atlantic LLC ("Actavis South Atlantic"), Actavis Elizabeth LLC ("Actavis Elizabeth"), Actavis Mid Atlantic LLC ("Actavis Mid Atlantic"), Actavis Totowa LLC ("Actavis Totowa"), Actavis Kadian LLC ("Actavis Kadian"), Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City ("Actavis Labs UT"), Actavis Laboratories FL, Inc., f/k/a Watson Laboratories, Inc.-Florida ("Actavis Labs FL"), Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., n/k/a/ Janssen Pharmaceuticals, Janssen Pharmaceutica, Inc., n/k/a Janssen Pharmaceuticals, Inc. (collectively, "Janssen"); Johnson & Johnson; Cardinal Health, Inc. ("Cardinal Health"); McKesson Corporation ("McKesson")) violated Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act, commonly known as "RICO."

To succeed on this claim, each County Government must prove each of the following four elements by the greater weight of evidence:

First, each County Government must prove the existence of an enterprise;

Second, each County Government must prove, as to each Defendant, that the Defendant associated with the alleged enterprise;

---

[1] Because Defendants' objections to Plaintiffs' proposed instructions cross-reference Defendants' proposed instructions, these instructions have not been renumbered to account for last-minute changes, including agreed-upon instructions removed from this document.

[2] Defendants note that the Sixth Circuit pattern instructions do not include a RICO instruction.  Defendants have relied on RICO instructions provided by other circuits, including the Third and Eleventh Circuits.

Third, each County Government must prove, as to each Defendant, that the Defendant knowingly conducted the affairs of the enterprise or knowingly participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and

Fourth, each County Government must prove, as to each Defendant, that the Defendant knowingly conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.

Fifth, each County Government must prove, as to each Defendant, that it was injured in its business or property by reason of the Defendant's conduct or participation in the conduct of the enterprise's affairs.

Now I'll provide you with some additional instructions to apply as you consider the facts each County Government must prove.  The fact that I am instructing you on each of these elements does not mean you should reach conclusions one way or another about whether the evidence establishes any of these elements.

Authority:  Third  Circuit  Pattern  Jury  Instructions  (Criminal)  6.18.1962C-2  (2018) (modified); Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018) (modified); 1 CV Ohio Jury Instructions 445.03 (2019) (modified).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 4 - Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c) – General.  As described below, Defendants' Proposed Jury Instruction No. 4 attempts to impose a "knowing" requirement not supported by law, and omits elements of the civil RICO cause of action.

The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- "Third" element paragraph: Delete both instances of the term "knowingly;"

- "Fourth" element paragraph: Delete the terms "knowingly conducted or" and "in the conduct of the enterprise's affairs;" and

Defendants' Proposed Jury Instruction No. 4 includes terms within the third and fourth elements of Plaintiffs' claims that are not included in the Third Circuit Criminal Pattern Jury Instructions, Eleventh Circuit Pattern Jury Instruction or Ohio Civil Jury Instructions on which they rely.  *See* Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C-2 (2018) (providing an instruction regarding existence of a RICO enterprise and omitting any inclusion of the term "knowingly"); Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018) ("Third, you must find that [name of defendant] was employed by or associated with the legal enterprise.  Fourth, you must find that [name of defendant] participated, either directly or indirectly, in the conduct of the affairs of the enterprise"); 1 CV Ohio Jury Instructions 445.03 (identifying the "ESSENTIAL ELEMENTS" as "(B) Defendant was employed by or associated with an enterprise; (C) Defendant conducted or participated in, directly or indirectly, the affairs of the enterprise").  The model federal instructions on which Plaintiffs rely do not include the terms Defendants add, and model instructions from other Circuits, as well as this Court's holdings, are in accord with Plaintiffs' Proposed Jury Instruction No. 23 regarding the elements of Plaintiffs' RICO claims.  *See*, 3B Fed. Jury Prac. & Instr. § 161:22 (6th ed.); Ninth Circuit Manual of Model Civil Jury Instructions (Civil), No. 8 (last updated June, 2019); *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2580, at 4.

**No. 2. Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(c) – Enterprise**

For the first element, each County Government must prove by the greater weight of the evidence the existence of an enterprise. An "enterprise" does not have to be a legal entity. An association of legal entities can be an enterprise if they have associated together for a common purpose of engaging in a course of conduct.[3] This is referred to as an "association in fact enterprise."

In this case, the County Governments allege the existence of two distinct "association in fact" enterprises, each involving a different group of Defendants:

The County Governments allege the existence of an enterprise to improperly market prescription opioid medications, consisting of Teva USA, Cephalon, Janssen, Johnson & Johnson, and other individuals and entities that are not parties to this case.

The County Governments separately allege the existence of an enterprise to improperly supply prescription opioid medications, consisting of Teva USA, Cephalon, Watson Laboratories, Actavis LLC, Actavis Pharma, Warner Chilcott, Actavis South Atlantic, Actavis Elizabeth, Actavis Mid Atlantic, Actavis Totowa, Actavis Kadian, Actavis Labs UT, Actavis Labs FL, AmerisourceBergen, Cardinal Health, McKesson, and other entities that are not parties to this case.

To prove the existence of an association in fact enterprise, the County Governments must prove the following four elements:

First, each County Government must prove that the group had a "common purpose";

---

[3] Defendants maintain that the Court erred as a matter of law in ruling that there is no requirement that "the enterprise's common purpose must be unlawful." *See, e.g.*, *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 651 (N.D. Ohio 2012) ("An enterprise includes any group of individuals associated together for a common purpose of engaging in a course of unlawful conduct."). By proposing this instruction, Defendants do not waive their objection to this erroneous ruling.

Second, each County Government must prove that the enterprise had sufficient longevity to permit its members to pursue its common purpose;

Third, each County Government must prove that there was a relationship among the members of the enterprise and that the members of the enterprise functioned as a continuing unit with a common purpose;; and

Fourth, each County Government must prove that the enterprise existed separate and apart from the alleged pattern of racketeering activity.

A "common purpose" means that the members of an alleged enterprise shared the same purpose—it is not enough that the members had aligned interests.  In other words, evidence that multiple Defendants independently engaged in conduct, without coordination, even if it brings about a single result, does not demonstrate a "common purpose."  For example, the fact that business competitors tried to maximize their *own* profits does not mean that they shared a common goal of maximizing *everyone*'s profits.

An 'enterprise' does not have to be a legal entity.  An association of legal entities can be an enterprise if they have: a common purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.

You have heard evidence in this case that certain Defendants participated in trade organizations.  Membership in trade organizations does not, on its own, prove that the Defendants agreed to form an association in fact enterprise.  You can find that a Defendant associated in such an enterprise only if you find that each County Government has proven the elements on which I have just instructed you.

Authority:  Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C-2 (2018) (modified); *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2580, at 4; *Boyle v.*

*United State*s, 556 U.S. 938 (2009); *Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1072 (11th Cir. 2017); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 380 (3d Cir. 2010); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 911 (6th Cir. 2009).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 5 - Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(c) – Enterprise.  As described below, Defendants' Proposed Jury Instruction No. 5 improperly describes Plaintiffs' RICO claims, attempts to impose requirements regarding the existence of an enterprise that are not supported by current Supreme Court or Sixth Circuit law, contravene this Court's orders, and are not supported by the Third Circuit Criminal jury instructions upon which Defendants rely.

The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- Defendants' proposed instruction that "The County Governments allege the existence of an enterprise to improperly market prescription opioid medications, consisting of Teva USA, Cephalon, Janssen, Johnson & Johnson, and other individuals and entities that are not parties to this case" is improperly vague and overbroad, and fails to identify the enterprise at issue: the Opioid Marketing Enterprise.

  o Plaintiffs propose the following revision:  "The County Governments allege the existence of an Opioid Marketing Enterprise to improperly market prescription opioid medications, consisting of Teva USA, Cephalon, Janssen, Johnson & Johnson, and other individuals and entities that are not parties to this case."

- Defendants' proposed instruction that "The County Governments separately allege the existence of an enterprise to improperly supply prescription opioid medications, consisting of Teva USA, Cephalon, Watson Laboratories, Actavis LLC, Actavis Pharma, Warner Chilcott, Actavis South Atlantic, Actavis Elizabeth, Actavis Mid Atlantic, Actavis Totowa, Actavis Kadian, Actavis Labs UT, Actavis Labs FL, AmerisourceBergen, Cardinal Health, McKesson, and other entities that are not parties to this case" is improperly vague and overbroad, and fails to identify the enterprise at issue: the Opioid Supply Chain Enterprise.

  o  Plaintiffs propose the following revision:  "The County Governments separately allege the existence of an Opioid Supply Chain Enterprise to improperly supply prescription opioid medications, consisting of Teva USA, Cephalon, Watson Laboratories, Actavis LLC, Actavis Pharma, Warner Chilcott, Actavis South Atlantic, Actavis Elizabeth, Actavis Mid Atlantic, Actavis Totowa, Actavis Kadian, Actavis Labs UT, Actavis Labs FL, AmerisourceBergen, Cardinal Health, McKesson, and other entities that are not parties to this case."

- Defendants' proposed instruction that "each County Government must prove that the group had a 'common purpose' and longevity sufficient for the members of the group to pursue that 'common purpose,'" is an outdated description of the elements required to prove the existence of an enterprise.

  o  Plaintiffs propose the following revision:  "First, each County Government must prove that the enterprise had a common purpose of engaging in a course of conduct.  While a common purpose may include unlawful conduct, an enterprises' common purpose does not need to be unlawful."

- The paragraphs in Defendants' proposed instruction purporting to instruct the jury regarding the definition of a common purpose, and membership in trade associations are not supported by case law or model civil jury instructions, and are irrelevant to the facts at issue or Plaintiffs' allegations.  They are, therefore, completely without merit and should not be delivered to the jury.

Defendants' Proposed Jury Instruction No. 5 suffers from multiple defects.  First, it fails to appropriately describe Plaintiffs' RICO claims - referring generally to "an enterprise," or to a "group."  Plaintiffs' RICO claims allege an Opioid Marketing Enterprise, and an Opioid Supply Chain Enterprise.  Moreover, no model instruction upon which Defendants' rely support this articulation of Plaintiffs' claims, or the use of the term "group," to describe members of the respective enterprises.

Second, Defendants propose instructions regarding the elements of an enterprise that ignore recent decisions of the Supreme Court, the Sixth Circuit, and this Court's orders.  Specifically, Defendants' proposed instruction ignores clear statements of law that the only requirements for proving the existence of an enterprise are: a common purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the associates to

pursue the enterprises' common purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009); *Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783 ,793 (6th Cir. 2012); *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2580, at 4 (quoting *Boyle*).  Moreover, Defendants' description of the common purpose element ignores this Court's description of the same. *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2580, at 4 (quoting *Boyle*).

Finally, Defendants' proposed instructions purporting to define a common purpose and instruct the jury regarding membership in trade associations are not supported by model civil jury instructions or case law, and are irrelevant to the facts at issue and Plaintiffs' allegations. Specifically, none of Defendants' cited cases, nor the Third Circuit Criminal Instructions support including Defendants' proposed instruction regarding the common purpose element. Furthermore, neither the Ninth Circuit, Eleventh Circuit, nor model federal instructions support such an instruction. *See*, Ninth Circuit Manual of Model Civil Jury Instructions, (Civil) No. 8 (last updated June 2019); Eleventh Circuit Pattern Jury Instructions (Civil) 7.1-7.3; 3B Fed. Jury Prac. & Instr. §§ 161.41-42.  It should, therefore, be rejected.  Moreover, Defendants' reliance on *In re Travel Agent Com'n Antitrust Litig.*, 583 F.3d 896, 911 (6th Cir. 2009) is inapposite because the facts of that case are distinguishable here, where Plaintiffs' evidence is not that Defendants engaged in identical conduct, but that they met and coordinated their conduct leading to similarly structured suspicious order monitoring systems.

Defendants' proposed instruction regarding their membership in the HDA should be rejected for similar reasons.  No model jury instruction supports Defendants' proposed instruction.  And, the cases Defendants cite do not support including Defendants' proposed instruction.  Here, unlike *Alamanza*, and *In re Ins. Brokerage Antitrust Litig.*, where the plaintiffs

attempted to support their enterprise allegations solely with membership in trade organizations, Plaintiffs' evidence and the claims at issue demonstrate that Plaintiffs do not claim that membership in the HDA, alone, proves the existence of the enterprise.  Rather, Plaintiffs allege, and the evidence will show, that Defendants used the HDA and their membership therein, as an opportunity to coordinate their actions and further the interests of the Opioid Supply Chain Enterprise.

### No. 3.  Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(c) – Association with Enterprise

For the second element, each County Government must prove, as to each Defendant, by the greater weight of the evidence, that the Defendant was associated with an alleged enterprise to improperly market or improperly supply prescription opioid medications.

To prove that a Defendant was "associated" with a particular enterprise, each County Government must prove the following:

First, each County Government must prove that the Defendant was aware of the general existence and nature of the enterprise;

Second, each County Government must prove that the enterprise extended beyond the Defendant's individual role; and

Third, each County Government must prove that the Defendant knowingly participated in, aided, or furthered the enterprise's activities.

The County Governments are not required to prove that the Defendant had a formal position in the enterprise, participated in all the activities of the enterprise, had full knowledge of all the activities of the enterprise, or knew about the participation of all the other members of the enterprise.  Rather, to satisfy this element, each County Government must prove that at some time during the existence of the enterprise, the Defendant was associated with the enterprise within the meaning of those terms as I have just explained.

To prove that a Defendant was associated with an enterprise, each County Government must prove that the Defendant was connected to the enterprise in some meaningful way, and that the Defendant knew of the existence of the enterprise and of the general unlawful nature of its activities.

<u>Authority</u>:  Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C-4 (2018) (modified).

***Plaintiffs' Objections:***

Plaintiffs object to the entirety of Defendants' Proposed Jury Instruction No. 6 - Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(c) – Association with Enterprise.  Defendants' Proposed Jury Instruction No. 6 improperly attempts to impose an unnecessarily long and complex criminal jury instruction in lieu of appropriate civil jury instructions available from other circuits and the Model Federal Jury Instructions.  Moreover, Defendants' reliance on the Third Circuit Criminal Instruction is incomplete.

Specifically, Defendants' Proposed Instruction No. 6 is taken entirely, and incompletely, from the Third Circuit's Criminal Jury Instructions.  Not only is a criminal instruction inappropriate in this case, it also ignores more relevant civil instructions available in the Eleventh Circuit, and Model Federal Jury Instructions.  *See* Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 ("For the third element, [name of plaintiff] must prove that [name of defendant] was employed by or associated with the alleged enterprise.  The requirement that [name of defendant] be "employed by or associated with" the enterprise means [he/she/it] must have some minimal association with the alleged enterprise. [Name of defendant] must know something about the alleged enterprise's activities as they relate to the racketeering activities"); *see also* 3B Fed. Jury Prac. & Instr. § 161.43.

Moreover, Defendants' reliance on the Third Circuit Criminal Jury Instruction is inaccurate and incomplete.  For example, Defendants' proposed instruction includes three elements that must be proven in order to find that Defendants were associated with an enterprise.  However, their attempt to include a knowing participation requirement is contradictory to the

Third Circuit Criminal Jury Instruction on which they rely.  *Compare* Defendants' Proposed Jury Instruction No. 6 ("<u>Third</u>, each County Government must prove that the Defendant knowingly participated in, aided, or furthered the enterprise's activities) with Third Circuit Pattern Jury Instruction (Criminal) 6.18.1962C-4 (2018) ("Alternatively, you may find that (name) was "associated with" the enterprise, if you find that the government proved that (he) (she) was aware of the general existence and nature of the enterprise, that it extended beyond (his) (her) individual role, and with that awareness participated in, aided, or furthered the enterprise's activities [or had an ownership interest in the enterprise]").  Similarly, Defendants omit critical language from the Third Circuit Criminal Jury Instruction regarding the time in which each Defendant participated in the enterprise.  *See* Defendants' Proposed Jury Instruction No. 6 (omitting "It is not required that *(name)* be employed by or associated with the enterprise for the entire time the enterprise existed" from Third Circuit Pattern Jury Instruction (Criminal) 6.18.1962C-4).  For the foregoing reasons, Defendants' Proposed Jury Instruction No. 6 is inappropriate for use in this case.

### No. 4.  Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(c) – Participating in or Conducting the Affairs of the Enterprise

For the third element, each County Government must prove, as to each Defendant, that the Defendant knowingly conducted the affairs of the enterprise or knowingly participated, directly or indirectly, in the conduct of the affairs of the enterprise.  To prove this, each County Government must show that the Defendant had some part in directing the enterprise's affairs, either by making decisions on behalf of the enterprise or by knowingly carrying them out..

Each County Government must show that each Defendant participated in directing the enterprise's affairs "knowingly."   An act is done "knowingly" if it is done voluntarily, intentionally, and not because of some mistake or some other innocent reason.

Authority: Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C-5 (2018) (modified); Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018) (modified); *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008), *quoted in In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2580, at 5; *Reves v. Ernst & Young*, 507 U.S. 170, 179, 184 (1993).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 7 - Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(c) – Participating in or Conducting the Affairs of the Enterprise.  Defendants' Proposed Jury Instruction No. 7 improperly attempts to impose a "knowing" requirement not supported by law, the model instructions on which it relies, and contradicts this Court's prior Orders.

Plaintiffs specifically object to the following portions of Defendants' Proposed Jury Instruction No. 7:

- The entire second paragraph of Defendants' Proposed Jury Instruction No. 7 must be deleted because it imposes a requirement not supported by law, this Court's prior Orders, or any model civil jury instruction.

Defendants' Proposed Jury Instruction No. 7 includes a requirement that Defendants knowingly directed the affairs of the enterprise that is not supported by the Model Jury Instructions, the law, or this Court's prior order.  Specifically, Defendants proposed instruction regarding participating in directing the enterprise's affairs is not included in the Third Circuit Criminal Jury Instructions or Eleventh Circuit Pattern Jury Instructions on which Defendants rely.

Furthermore, Defendants' proposed instruction requiring that Defendants' knowingly direct the affairs of the enterprise is not supported by any portion of *United States v. Fowler*, *Reves v. Ernst & Young*, or this Court's Order denying Defendants' RICO/OCPA motions for summary judgment.  Those cases exclusively discuss the requirement that a defendant conduct or participate in the conduct of an enterprise's affairs.  At most, they support a requirement that a plaintiff prove each defendant had "some part" in directing the enterprise's affairs "either by making decisions on behalf of the enterprise **or** by knowingly carrying them out," without imposing a requirement that Defendants participated "knowingly."  *Fowler*, 535 F.3d 408, 418 (6th Cir. 2008); *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2580, at 5. Furthermore, the "knowingly" requirement Defendants attempt to impose is not supported by their reliance on the Third Circuit Criminal Jury Instructions or the Eleventh Circuit Pattern Civil Instructions.

Here, Defendants' proposed instruction goes beyond the model instructions they rely on and imposes requirements that are not contained within the cases they cite.  Their instruction should be rejected.

**No. 5.  Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(c) – Racketeering Activity**

For the fourth element, each County Government must prove as to each Defendant that the Defendant knowingly conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering, or criminal, activity.

"Racketeering activity" includes only certain types of crimes.  For purposes of the County Governments' claims, each County Government must prove that each Defendant engaged in "racketeering activity" because the Defendant committed an indictable act that violates the federal mail fraud statute or the federal wire fraud statute, or committed a violation of 21 U.S.C. § 843(a)(4)(A) that constitutes the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance that is punishable under a law of the United States.[4]  An act of "racketeering activity" is also called a "predicate act."  Each predicate act alleged by the County Governments contains several elements.  In order to find that any Defendant committed an act of racketeering activity, you must find that each County Government proved all elements of that particular act by the greater weight of evidence.

In a few minutes, I will instruct you on what each County Government must show to establish a pattern of racketeering activity.  Now, I will instruct you on each of the types of predicate acts alleged by the County Governments.

Authority:  Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962D-6 (2018) (modified); Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018) (modified); *United*

---

[4] Defendants maintain that the Court erred as a matter of law in ruling "that a violation of 21 U.S.C. § 843(A)(4)(a) can constitute a predicate act under 18 U.S.C. § 1961(1)(D)."  *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2580 at 3.  Defendants therefore object to instructing the jury on this predicate act.

*States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008), *quoted in In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2580, at 5.

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 8 - Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(c) – Racketeering Activity.  As described below, Defendants' Proposed Jury Instruction No. 8 imposes a "knowing" requirement, not supported by law or the model instructions on which it relies, and misstates what Plaintiffs are required to prove regarding racketeering activity.

The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- First paragraph: "[K]nowingly" should be deleted;

- Second paragraph:  Substantially departs from model jury instructions and inaccurately states the requirement for proving racketeering activity; and

- Third paragraph:  Must be deleted in its entirety because it misstates the law.

Defendants' Proposed Jury Instruction No. 8 includes terms that are not included in the Eleventh Circuit Pattern Jury Instruction on which they rely, and which are not supported by *Fowler*, or this Court's Order on Defendants' RICO/OCPA motions for summary judgment.  Moreover, Defendants' Proposed Instruction No. 8 misstates the requirements of proving racketeering activity and the racketeering activities at issue.

Specifically, Defendants' inclusion of a requirement that Defendants' acted "knowingly" in the first paragraph of their Proposed Instruction No. 8 is not supported by the Third Circuit Criminal Jury Instructions, Eleventh Circuit Pattern Jury Instructions or the cases Defendants cite.  *See* Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018) ("[name of plaintiff] must

prove that [name of defendant] participated in the conduct of the enterprise's affairs through a pattern of racketeering activity").  The jury instructions of other circuits similarly omit the "knowingly" requirement.  *See*, Ninth Circuit Manual of Model Civil Jury Instructions (Civil), No. 8 (last updated June, 2019).

Finally, Defendants' Proposed Instruction No. 8 improperly expands the requirements for proving a racketeering activity.  Unlike the Eleventh Circuit Pattern Jury Instruction and other similar pattern instructions, Defendants improperly include instructions that racketeering activities must be "crimes" and "indictable acts."  *See*, Eleventh Circuit Pattern Jury Instruction (Civil) 7.3 (2018) ("'Racketeering activity' is an act that violates [the specific statute[s] alleged]"); 3B Fed. Jury Prac. & Instr. §§ 161.24-25.  Here, the Eleventh Circuit Pattern Jury Instruction also makes clear that Defendants' refusal to acknowledge the predicate acts alleged in Plaintiffs' Complaint - in this case, mail fraud, wire fraud, and committing "any offense involving . . . the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance . . . punishable under any law of the United States" is unfounded.  Despite losing their argument multiple times about whether violations of sections 823, 841, 842, and/or 843 constitute racketeering activities, Defendants refusal to acknowledge those violations as the alleged racketeering activities.  That refusal is unfounded and requires the Court to refuse Defendants' Proposed Jury Instruction No. 8 in favor of Plaintiffs' legally supported Proposed Instruction No. 27, which neutrally states the racketeering activities alleged, as follows:  "mail fraud, Section 1341 of Title 18, United States Code; wire fraud, Section 1343 of Title 18, United States Code; and controlled substances violations, Sections 823, 841, 842, and 843 of Title 21, United States Code."  Moreover, the last sentence of Defendants' proposed instruction regarding the definition of "racketeering activity" should not be presented to the jury

because it also imposes a legally improper requirement that Plaintiffs prove Defendants knowingly committed racketeering activities.

### No. 6.  RICO Predicate:  Federal Mail Fraud/Federal Wire Fraud

The County Governments allege that certain Defendants violated the federal mail fraud law and the federal wire fraud law.

The County Governments allege that Teva USA, Cephalon, Janssen, Johnson & Johnson, and other individuals and entities that are not parties to this case did so in connection with an enterprise to improperly market prescription opioid medications.

The County Governments allege that Teva USA, Cephalon, Watson Laboratories, Actavis LLC, Actavis Pharma, Warner Chilcott, Actavis South Atlantic, Actavis Elizabeth, Actavis Mid Atlantic, Actavis Totowa, Actavis Kadian, Actavis Labs UT, Actavis Labs FL, AmerisourceBergen, Cardinal Health, and McKesson and entities that are not parties to this case did so in connection with an enterprise to improperly supply prescription opioid medications.

For you to find that a Defendant committed mail fraud or wire fraud, you must find that each County Government has proven each and every one of the following elements by the greater weight of the evidence:

First, each County Government must prove that the Defendant knowingly participated in a scheme to defraud in order to obtain money or property;

Second, each County Government must prove that the scheme included a material misrepresentation or concealment of a material fact;

Third, each County Government must prove that the Defendant had the intent to defraud;

Fourth, each County Government must prove that the Defendant used the mail or wires, or caused another to use the mail or wires, in furtherance of the scheme; and

Fifth, each County Government must prove that the Defendant intended to defraud someone other than the federal government, DEA, or FDA.

Now I will give you more detailed instructions on some of these terms.

A "scheme to defraud" includes any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.

The term "false or fraudulent pretenses, representations or promises" means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth.  They include actual, direct false statements, as well as half-truths and the knowing and active concealment of material facts.  However, passive concealment of material facts shall not qualify as "false or fraudulent pretenses, representations, or promises."  In considering whether racketeering activity has been proven, you may consider only a Defendant's fraudulent activity.  You may not consider innocent statements sent by mail or wire, although they may have continued for a substantial period of time.

A misrepresentation or concealment is "material" if it has a natural tendency to influence or is capable of influencing the decision of an entity of ordinary prudence and comprehension.

To act with "intent to defraud" means to act with an intent to deceive or cheat for the purpose of causing a financial loss to another and bringing about a financial gain to oneself.  Before you may find a Defendant acted with intent to defraud, you must find that the Defendant intended for another to rely on the Defendant's misrepresentation.  Even if you find that a Defendant misstated or omitted certain facts, if the Defendant believed in good faith the statements made were true at the time they were sent by mail or wire, there is no mail or wire fraud.

You may not find that a Defendant intended to defraud where the Defendant followed a reasonable interpretation of an ambiguous law.  If you find that a Defendant, for part or all of the

time period at issue, reasonably relied on the statements of DEA officials in concluding that federal law did not impose a no-shipping requirement or a duty to know one's customer's customers, you may not, as to the period of such reasonable reliance, find the Defendant guilty of mail or wire fraud because, after reporting an order to DEA as suspicious, it shipped the order, or because it failed to monitor chargeback data.

To "cause" the mail to be used is to do an act with knowledge that the use of the mail will follow in the ordinary course of business or where such use can reasonably be foreseen.

To "cause" wire, radio, or television communications to be used is to do an act with knowledge that the use of the communications will follow in the ordinary course of business or where such use can reasonably be foreseen.

Authority: Sixth Circuit Pattern Criminal Jury Instructions Ch. 10 (2019) (modified); *United States v. Pa. Indus. Chem. Corp.*, 411 U.S. 655, 670 (1973); *Cox v. Louisiana*, 379 U.S. 559 (1965); *Raley v. Ohio*, 360 U.S. 423 (1959); *In Re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 2565, at 9, 22; Distributor Defendants' Motion in Limine D-5, ECF 2666, at 14-15.

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 9 - RICO Predicate:  Federal Mail Fraud/Federal Wire Fraud.  As described below, Defendants' Proposed Jury Instruction No. 9 improperly deletes and/or adds instructions from the Sixth Circuit Pattern Criminal Jury Instructions on which they rely, and the cases on which they rely do not support the revisions.

The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- Second Element:  Stated more narrowly than the standard described in 18 U.S.C. § 1341;

- Fifth Element: No basis in Sixth Circuit Pattern Jury Instruction, or the law for inclusion of this element;

- Instruction regarding "scheme to defraud:"  Too narrow and ignores relevant Sixth Circuit cases describing the standard for a scheme to defraud;

- Instruction regarding "passive concealment:"  Not supported by Sixth Circuit Pattern Jury Instructions or cases cited by Defendants;

- Instruction regarding "intent to defraud:" Improperly includes instructions not contained within Sixth Circuit Pattern Jury Instruction or cases relied on by Defendants;

- Instruction regarding "intent to defraud" and ambiguous law:  Defendants provide no model instruction or legal justification for the inclusion of this instruction; and

- Incomplete instruction:  Defendants omit the last paragraph of Sixth Circuit Pattern Criminal Jury Instructions, which is relevant to the claims and defenses at issue.

Defendants' Proposed Jury Instruction No. 9 suffers from multiple defects all related to the omission and/or addition of instructions without legal support.  Moreover, Defendants' Proposed Jury Instruction No. 9 improperly narrows the broad ways in which mail and wire fraud are understood and can be established.

As briefly described above, the defects in Defendants' Proposed Instruction No. 9 begin with the second element of mail and wire fraud.  While Defendants' Proposed Instruction No. 9 appears modeled after the Sixth Circuit Pattern Criminal Jury Instruction, it is improperly narrow. Specifically, 18 U.S.C. §§ 1341 and 1343 both allow a conviction against any person or person in two separate scenarios, including: (1) "a scheme or artifice to defraud," of (2) "for obtaining money or property by means of false or fraudulent pretenses, representations, or promise," among others. Therefore, a finding of mail and wire fraud need not include a material misrepresentation or omission because it can also be founded upon a scheme or artifice to defraud and/or false pretenses. *Carpenter v. United States*, 484 U.S. 19, 26-28 (1987); *McNally v. Gray*, 483 U.S. 350, 359 (1987) ("false promises and misrepresentations as to the future as well as other frauds involving money

or property"); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (describing a classic fraud-by-concealment scheme with no communications to the victims); *U.S. v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014) ("a scheme to defraud is a relatively broad concept, encompassing pretenses, representations, or promises that are either 'deceptive' or 'false'").

Similarly, Defendants' Proposed Instruction No. 9 includes a fifth element for mail and wire fraud, imposing a requirement that the Defendants intend to defraud someone other than the federal government, DEA, or FDA.  However, the mail and wire fraud statutes do not impose such an obligation, and neither the Sixth Circuit Pattern Criminal Jury Instructions, nor Defendants' cited cases, support the inclusion of this instruction.  *See* 18 U.S.C. § 1341 (omitting any specification regarding whom Defendants intended to defraud); 18 U.S.C. § 1341 (same); Sixth Circuit Pattern Criminal Jury Instruction Chapter 10.01 (identifying four elements for mail fraud); Sixth Circuit Pattern Criminal Jury Instruction Chapter 10.01 (identifying four elements for wire fraud).

Defendants' proposed instructions regarding a "scheme to defraud," "passive concealment" and "intent to defraud" are all similarly without merit.  Defendants' proposed instructions ignore relevant Sixth Circuit authority explaining that the "scheme to defraud" is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society.  *U.S. v. Van Dyke*, 605 F. 220, 225 (6th Cir. 1979).  Any instruction on this element should reflect that legal definition.  Similarly, Defendants' proposed instruction regarding "passive concealment" is not supported by the Sixth Circuit Pattern Criminal Jury Instruction or the cases on which Defendants rely.

Defendants' instruction regarding intent to defraud also impermissibly broadens the Sixth Circuit Pattern Criminal Jury Instruction for mail and wire fraud by including unsupported

instructions regarding intent to induce reliance and good faith belief of truth in statements sent by mail or wire.  This instruction is not included anywhere in the Sixth Circuit Pattern Criminal Jury Instruction, erroneously includes a requirement that misrepresentations be sent through the mail and wire, and fails to accurately instruct the jury on good faith as an affirmative defense (for which the Sixth Circuit has also provided an instruction).  *U.S. v. Turner*, 365 F.3d 667, 680 and n.18 (6th Cir. 2006) (identifying the elements of mail fraud as: (1) a scheme or artifice to defraud; (2) use of mails in furtherance of the scheme; and (3) intent to deprive a victim of money or property"); *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997) ("[a] defendant may commit mail fraud even if he personally has not used the mails" . . . "[t]he mailings may be innocent or even legally necessary"); *United States v. Oldfield*, 859 F.2d 392, 400 (6th Cir. 1998) (use of mails "need only be closely related to the scheme and reasonably foreseeable as a result of the defendant's actions"); see also Sixth Circuit Pattern Criminal Jury Instruction 10.04 (2019) (providing a model instruction for a good faith defense to fraud).

Defendants' proposed instruction is also improper because it includes an instruction regarding interpretation of an ambiguous law that is unsupported by case law or any model instruction.  Specifically, Defendants' proposed instruction is not supported by any citation to a model jury instruction.  And, the three cases cited by Defendants do not support the inclusion of this instruction.  For example, *U.S. v. Pennsylvania Indus. Chem. Corp.*, does not address whether a defendant may rely on an allegedly ambiguous statute as a defense.  Instead, the Court in that case addressed whether the defendant "should have been permitted to present relevant evidence to establish" its defense that it "may have been affirmatively misled into believing that its conduct was not criminal." *Pennsylvania Indus. Chem. Corp.*, 411 U.S. 655, 670 (1973).  Defendants have put forward no evidence or argument supporting a defense that they were affirmatively misled.

Similarly, in *Raley v. State of Ohio*, convictions were overturned, not because the defendants were interpreting an ambiguous statute, but because "the appellants were informed by the Commission that they had a right to rely on the privilege against self-incrimination," but the "Ohio Supreme Court . . . held that the appellants were presumed to know the law of Ohio--that an Ohio immunity statute deprived them of the protection of the privilege."  *Raley*, 360 U.S. 423, 426 (1959). Defendants' reliance on *Cox v. State of LA*, is similarly unavailing.  *Cox*, 379 U.S. 559, 571-72 ("The situation presented here is analogous to that in *Raley*, which we deem to be controlling.  As in *Raley*, under all the circumstances of this case, after the public officials acted as they did, to sustain appellant's later conviction for demonstrating where they told him he could would be to sanction an indefensible sort of entrapment by the State").  Each of Defendants' cited cases hinges on an affirmative statement that misled the defendant.  Defendants' instruction does not even approximate that factual situation and should be rejected.

If, the Court endeavors to fashion an instruction from the remnants of Defendants Proposed Instruction No. 9, it should include the entire Sixth Circuit Pattern Criminal Jury Instruction, including the final paragraph that Defendants omitted from their proposed instruction.

**No. 7.  Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(c) – Participating through a Pattern of Racketeering Activity**

I will now instruct you on the requirement that each County Government prove a "pattern of racketeering activity."

A "pattern of racketeering activity" means that the Defendant committed at least two distinct criminal acts on which I have just instructed you: mail fraud, wire fraud, or violation of Section 843(a)(4)(A).  Distinct does not have to mean different types.  By itself, proof of two or more predicate acts does not establish a pattern under RICO.  Each County Government must prove that each Defendant engaged in a "pattern of racketeering activity."  If you find that a particular Defendant did not commit at least two distinct qualifying criminal acts, you must find that the County Governments have failed to prove a "pattern of racketeering activity" as to that Defendant, even if you find that other Defendants did engage in a "pattern of racketeering activity."

To prove a pattern of predicate acts, each County Government must show that the acts were related to one another and to the enterprise.  Two or more acts of unrelated racketeering activity do not establish a pattern of racketeering activity under RICO.  Predicate acts are "related" to one another if they have the same or similar purposes, results, participants, victims, or methods.  Predicate acts also are related if they have common distinguishing characteristics and are not isolated events.

To make up a pattern of racketeering activity, predicate acts must demonstrate continuity.  Continuity can be demonstrated in two basic ways.  The first is to demonstrate related predicate acts extending over a substantial period of time.  The second is to show conduct that does not occur over a substantial period of time but, by its nature, is likely to be repeated into the future.

To determine if there is a pattern of racketeering activity, you must consider only those specific predicate acts the County Governments allege against the Defendants.

And you cannot find that a Defendant engaged in a "pattern of racketeering activity" unless you unanimously agree on which of the alleged predicate acts, if any, make up the pattern. It is not enough if some members of the jury find that a Defendant committed two of the particular racketeering acts alleged, while other members of the jury find that the same Defendant committed different racketeering acts.  In order to find that the Defendant engaged in a "pattern of racketeering activity," there must be at least two specific racketeering acts that all of you find were committed by that Defendant.

<u>Authority</u>: Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018) (modified); Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C-8 (2018).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 10 - Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c) – Participating through a Pattern of Racketeering Activity.  As described below, Defendants' Proposed Jury Instruction No. 10 does not include all of the types of racketeering activities that Plaintiffs may prove as predicate acts, and there is no basis in law for Defendants' requirement that the jury unanimously agree on which predicate acts make up the pattern of racketeering activity. Nor must the jury unanimously agree on which predicate acts each Defendant committed.

The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- Second paragraph: "A 'pattern of racketeering activity' means that the Defendant committed at least two distinct criminal acts on which I have just instructed you: mail fraud, wire fraud, or violation of Section 843(a)(4)(A)." This sentence should be revised to read as follows:  "A 'pattern of racketeering activity' means that the

Defendant committed at least two distinct predicate acts on which I have just instructed you: mail fraud, wire fraud, or committing an offense involving the felonious manufacture, importation, receiving, concealing, buying, selling, or otherwise dealing in a controlled substances (as the County Governments claim by violating 21 U.S.C. §§ 823, 841, 842, and 843)."

- Delete the last paragraph.

Defendants' Proposed Jury Instruction No. 10 fails to include the complete list of alleged predicate acts that are at issue in this case. Specifically, Defendants' proposed instruction, while including mail and wire fraud as racketeering activities, does not include all of the controlled substances violations that Plaintiffs have alleged and the law defines as racketeering activities, including 21 U.S.C. §§ 823, 841, 842 and 843. *See In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2580, at 2-3. The replacement sentence more accurately comports with the Eleventh Circuit Pattern Jury Instruction and other similar pattern instructions that describe racketeering activities as "predicate acts." *See* Eleventh Circuit Pattern Jury Instruction (Civil) 7.3 (2018) ("'Racketeering activity' is an act that violates [the specific statute[s] alleged]"); 3B Fed. Jury Prac. & Instr. §§ 161.24-25.

Furthermore, Defendants' Proposed Jury Instruction No. 10 includes a requirement that does not exist in the law that jurors must unanimously agree on which of the alleged predicate acts make up the pattern of racketeering activity. The law does not require this unanimity and it is not included in the Eleventh Circuit Pattern Jury Instructions (Civil) or the Third Circuit Pattern Jury Instructions (Criminal) on which Defendants rely. *See* Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018); *see* Third Circuit Pattern Jury Instructions (Criminal) 6.18.1962C-8 (2018). In addition, the law does not require that the jurors unanimously agree on which predicate acts each Defendant committed. *See* Plaintiffs' Proposed Jury Instruction No. 27; 3B Fed. Jury Prac. & Instr. § 161:47; Ninth Circuit Manual of Model Civil Jury Instructions, No. 8 Civil RICO (last updated June 2019). Instead, a plaintiff must prove that "at least two acts of racketeering activity" occurred

within ten years of each other (18 U.S.C. § 1961(5)) and that the predicate acts be both "related"

and "continuous." *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989).

**No. 8.  Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(d)**

The County Governments also claim that certain Defendants violated another provision of the Racketeering Influenced and Corrupt Organizations Act, Section 1962(d), which is sometimes known as a "RICO conspiracy."

The County Governments allege that Teva USA, Cephalon, Janssen, and Johnson & Johnson did so in connection with an enterprise to improperly market prescription opioid medications.

The County Governments allege that Teva USA, Cephalon, Watson Laboratories, Actavis LLC, Actavis Pharma, Warner Chilcott, Actavis South Atlantic, Actavis Elizabeth, Actavis Mid Atlantic, Actavis Totowa, Actavis Kadian, Actavis Labs UT, Actavis Labs FL, AmerisourceBergen, Cardinal Health, and McKesson did so in connection with an enterprise to improperly supply prescription opioid medications.

To prove a violation of Section 1962(d), the County Governments must prove that two or more of the Defendants agreed or conspired to conduct or to participate in an enterprise's affairs through a pattern of racketeering activity.

I have already instructed you on what it means to conduct or participate in an enterprise's affairs through a pattern of racketeering activity.

Now, I will instruct you on the elements of a RICO conspiracy claim.  The fact that I am instructing you on these elements does not mean you should reach conclusions one way or another about the existence of a conspiracy, an enterprise, or a pattern of racketeering activity.

To prove the existence of a RICO conspiracy, each County Government must prove each and every one of the following three elements by the greater weight of the evidence:

First, each County Government must prove that two or more persons agreed to conduct or participate in, directly or indirectly, the conduct of an enterprise's affairs through a pattern of racketeering activity.

Second, each County Government must prove as to each Defendant that the Defendant was a party to, or member of, that agreement.

Third, each County Government must prove as to each Defendant that the Defendant joined the agreement or conspiracy knowing of its unlawful objective to conduct or participate in the conduct of an enterprise's affairs through a pattern of racketeering activity based on the predicate acts alleged, and intending to join together with at least one other alleged conspirator to achieve that unlawful objective.  In other words, each County Government must prove that the Defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve the objective of conducting or participating in an enterprise's affairs through a pattern of racketeering activity based on the predicates alleged.

The meanings of the elements "enterprise," "participating in the conduct of an enterprise's affairs," and "through a pattern of racketeering activity" are the same as I explained to you with respect to the other RICO claims in this case.

While the essence of a RICO conspiracy is an agreement to further an endeavor that, if completed, would violate RICO, the County Governments do not have to offer direct evidence of an agreement.  The County Governments may show an agreement through circumstantial evidence that a Defendant must have known that others also were conspiring to participate in the same enterprise through a pattern of racketeering activity.  The conspiracy's existence can be inferred from the participants' conduct.  But a Defendant must objectively manifest, through words or actions, that Defendant's agreement to participate in the enterprise's affairs.

Mere presence at the scene of some transaction or event, or mere similarity of conduct among various persons, coupled with the fact that they may have associated with each other for other purposes, or they may have assembled together to discuss common aims and interests, does not prove the existence of an unlawful conspiracy.  A Defendant that does not have knowledge of a conspiracy, but happens to act in a way that advances some object or purpose of a conspiracy, does not become a conspirator.

If you find the conspiracy did not exist, then you must find in favor of the Defendants.  But if you are satisfied that the conspiracy existed, you must determine who the members of the conspiracy were.

If you find that a particular Defendant is a member of another conspiracy, but not the conspiracy alleged by the County Governments, then you cannot find that Defendant liable in this case.  Put another way, you cannot find that Defendant liable for a RICO conspiracy unless you find that the Defendant was a member of the conspiracy alleged—not some other separate conspiracy.  In your consideration of this conspiracy claim, you should first determine whether the alleged conspiracy existed.  If you conclude that a conspiracy existed as alleged, you should next determine whether each Defendant under consideration intentionally became a member of that conspiracy.

Authority:  Third  Circuit  Pattern  Jury  Instructions  (Criminal)  6.18.1962D  (2018) (modified); Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018) (modified).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 11 - Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(d).  As described below, Defendants

rely on the 3rd Circuit Criminal and Eleventh Circuit Pattern Civil Jury Instructions, but do not incorporate significant portions of either instruction.

The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- Defendants omit multiple paragraphs from the Third and Eleventh Circuit Jury Instructions, and misstate significant portions of the paragraphs they do include; and

- Defendants improperly include additional instruction regarding membership in "another conspiracy" that is not supported by any law or model instructions.

Defendants' Proposed Jury Instruction No. 11 suffers from multiple defects, as described above, all related to Defendants' failure to include complete jury instructions on the elements of conspiracy.  For example, in their proposed instruction regarding the first and third elements of a RICO conspiracy, Defendants omit instructions regarding participating in the conduct of an enterprise, and improperly attempting to force the jury to determine whether the Defendants agreed to conduct an enterprise.  The Third Circuit and Eleventh Circuit Jury Instructions do no support these omissions.

Defendants also omit critical instructions from both the Third and Eleventh Circuit Jury Instructions that must be included if Defendants' Proposed Instruction No. 11 can be given to the jury.  These selections are identified below, beginning with the Third Circuit:

<u>Third Circuit Omission</u>

One important difference is that, unlike the requirements to find (name) guilty of the RICO offense charged in Count (No.), in order to find (name) guilty of the RICO conspiracy charged in Count (No.) the government is not required to prove that the alleged enterprise actually existed, or that the enterprise actually engaged in or its activities actually affected interstate or foreign commerce. Rather, because an  agreement to commit a RICO offense is the essence of a RICO conspiracy, the government need only prove that (name) joined the conspiracy and that if the object of the conspiracy was achieved, the enterprise would be established and the

enterprise would be engaged in or its activities would affect interstate or foreign commerce

Similarly, unlike the requirements to find (name) guilty of the RICO offense, in order to find (name) guilty of the RICO conspiracy charged in Count (No.) the government is not required to prove that (name) was actually employed by or associated with the enterprise, or that (name) agreed to be employed by or to be associated with the enterprise. Nor does the RICO conspiracy charge require the government to prove that (name) personally participated in the operation or management of the enterprise, or agreed to personally participate in the operation or management of the enterprise. Rather, you may find (name) guilty of the RICO conspiracy offense if the evidence establishes that (name) knowingly agreed to facilitate or further a scheme which, if completed, would constitute a RICO violation involving at least one other conspirator who would be employed by or associated with the enterprise and who would participate in the operation or management of the enterprise.

Finally, in order to find (name) guilty of the RICO conspiracy charged in Count (No.) the government is not required to prove that (name) personally committed or agreed to personally commit any act of racketeering activity.  Indeed, it is not necessary for you to find that the objective or purpose of the conspiracy was achieved at all. However, the evidence must establish that the (name) knowingly agreed to facilitate or further a scheme which, if completed, would include a pattern of racketeering activity committed by at least one other conspirator

Eleventh Circuit Omissions

[Name of plaintiff] doesn't have to show that the alleged members of the conspiracy entered into any express or formal agreement, or that they directly stated the details of the scheme, its object, or purpose, or the precise means by which the object or purpose was to be accomplished. [Name of plaintiff] also doesn't have to establish that all the means or methods alleged to carry out the alleged conspiracy were, in fact, agreed on, or that all the means or methods that were agreed on were actually used or put into operation. And [name of plaintiff] doesn't have to prove that all persons alleged to be conspiracy members were actually members or that alleged conspirators succeeded in accomplishing their unlawful objectives

A defendant can become a member of a conspiracy without knowing all the unlawful scheme's details or without knowing the names and identities of all the other alleged conspirators. If [name of plaintiff] proves by a preponderance of the evidence that a particular defendant has knowingly joined the alleged conspiracy, it doesn't matter that [name of defendant] may not have participated in the alleged conspiracy or scheme's earlier stages.

[Name of plaintiff] doesn't have to prove that a defendant actually committed any of the acts that [name of defendant] may have agreed to commit to establish [his/her] membership in the conspiracy.

- 35 -

To determine whether there was a conspiracy, you must consider all the evidence in the case. If you find that there was a conspiracy, then you can attribute the statements or acts of the [names of co-conspirators] to [name of defendant]. If you find that there was not a conspiracy, then you can't attribute the statements or acts of [names of co-conspirators] to [name of defendant].

Finally, Defendants include two sentences at the end of their proposed instruction regarding membership in "another conspiracy" that improperly deviate from the Eleventh Circuit Jury Instructions.  Specifically, the Eleventh Circuit Jury Instruction does not suggest that jurors decide whether each "Defendant under consideration intentionally became a member of that conspiracy." *See* Defendants Proposed Jury Instruction No. 11.  Rather, it merely requires that "you must determine who the members of the conspiracy are."

### No. 9.  Racketeer Influenced and Corrupt Organization Act (RICO) – Causation

If you find that a Defendant violated RICO, you must then decide whether each County Government has proven by the greater weight of the evidence that the Defendant's RICO violation was the proximate cause of injury to its business or property.

To find that a Defendant's RICO violation was a cause of a County Government's injuries, you must find: first, that the injury would not have occurred without the alleged enterprise's or conspiracy's pattern of racketeering acts; and second, that the alleged enterprise's or conspiracy's pattern of racketeering acts was a proximate cause of the injury.

To find that a Defendant's RICO violation was a proximate cause of a County Government's injuries, you must find that there is a direct causal relationship between the alleged enterprise's or conspiracy's pattern of racketeering activity and the County Government's alleged injuries.  If you find that a number of steps separate the alleged racketeering acts from the alleged injury, or that the County Governments' theory of liability rests on the independent actions of third or fourth parties, then the County Governments have failed to prove the required direct causal relationship.  Likewise, if you find that the County Governments' injuries arise from someone else first being injured, then the County Governments have failed to prove proximate causation.

If you do not find that a Defendant's RICO violation was a direct cause of the County Governments' injuries, you must find that the County Governments have failed to prove proximate causation.  This is so even if you find that the County Governments' injuries were foreseeable, and even if you find that Defendants intentionally caused the course of events leading to their injuries.

Authority: Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018) (modified); 3B Fed. Jury Prac. & Instr. § 161:70 (modified); 1 CV Ohio Jury Instructions 405 (proximate cause); *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010); *Cleveland v. Ameriquest Mort.*

*Secs., Inc.*, 615 F.3d 496, 503 (6th Cir. 2010); *Perry v. American Tobacco Co.*, 324 F.3d 845 (6th Cir. 2003).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 12 - Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c) – Causation. As described below, Defendants' Proposed Jury Instruction No. 12 unduly narrows the scope of what the jury must find was the cause of Plaintiffs' injuries, completely misstates the proximate causation standard and adds language on attenuation and intervening causes that is without a legal basis.

The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- Second paragraph: "To find that a Defendant's RICO violation was a cause of a County Government's injuries, you must find: first, that the injury would not have occurred without the alleged enterprise's or conspiracy's pattern of racketeering acts; and second, that the alleged enterprise's or conspiracy's pattern of racketeering acts was a proximate cause of the injury." This sentence should be revised as follows: "To find that a Defendant's RICO violation was a cause of a County Government's injuries, you must find that Defendant's commission of the acts of racketeering, or the pattern of racketeering activity, or the conduct of the affairs of the enterprise through the pattern of racketeering activity directly resulted in the injury or played a substantial role in producing Plaintiffs' injury."

- Third paragraph: "To find that a Defendant's RICO violation was a proximate cause of a County Government's injuries, you must find that there is a direct causal relationship between the alleged enterprise's or conspiracy's pattern of racketeering activity and the County Government's alleged injuries." The sentence should be revised as follows: "To find that a Defendant's RICO violation was a proximate cause of a County Government's injuries, you must find that the act played a substantial part in bringing about or actually causing injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act."

- Third paragraph: "If you find that a number of steps separate the alleged racketeering acts from the alleged injury, or that the County Governments' theory of liability rests on the independent actions of third or fourth parties, then the County Governments have failed to prove the required direct causal relationship. Likewise, if you find that the County Governments' injuries arise from someone else first being injured, then the

County Governments have failed to prove proximate causation." These sentences should be deleted.

- Delete the last paragraph.

Defendants' Proposed Jury Instruction No. 12 incorrectly requires that the pattern of racketeering acts was a proximate cause of the injury when the correct standard is that the RICO violations must be the proximate cause of the injury. *See* 3B Fed. Jury Prac. & Instr. § 161:70. The replacement instruction comports with RICO's requirements that the acts of racketeering, the pattern of racketeering activity, *or* the conduct of the affairs of the enterprise through the pattern of racketeering activity caused the injury. *See* Eleventh Circuit Pattern Jury Instructions (Civil) 7.3 (2018) ("It isn't necessary that every predicate act cause damage to [name of plaintiff].").

In addition, Defendants' Proposed Jury Instruction No. 12 misstates the proximate causation standard and ignores this Court's prior rulings on causation, including RICO causation. The law includes no such requirement that that injury "would not have occurred without" the pattern of racketeering acts.  Instead, proximate causation requires that the RICO violation played a substantial part in bringing about or actually causing injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the RICO violation. *See* 3B Fed. Jury Prac. & Instr. § 161:70; *see also In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, ECF No. 2561 at 6 ("the burden of proof is on the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm"); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 624 (6th Cir. 2019); *In re ClassicStar Mare Lease Litigation*, 727 F.3d 473, 487 (6th Cir. 2013). Defendants' last paragraph which requires that their RICO violation be a "direct cause" of Plaintiffs' injuries ignores that the jury may also find proximate causation if the RICO violation is a substantial cause of the injury or when the injury was a reasonably probable consequence of the RICO violation. *See* 3B Fed. Jury Prac. & Instr. § 161:70; *In re ClassicStar Mare Lease*

*Litigation*, 727 F.3d at 487. Defendants' inclusion of a cition to *City of Cleveland*, in support of their proposed instruction does not make Defendants' proposal any more meritorious. And, the inclusion of additional language in the last paragraph is also unsupported by model instruction or case law. It should be similarly rejected.

Furthermore, Defendants' inclusion of language that instructs the jury that causation does not exist if "a number" of steps separates the racketeering from the injury, or if "independent actions of third or fourth parties" impacts liability, or if Plaintiffs' injuries "arise from someone else first being injured" inserts additional requirements that have no basis in law and have been repeatedly rejected in this matter. *See* 3B Fed. Jury Prac. & Instr. § 161:70; *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, ECF No. 1025 at 29-33; ECF No. 2561 at 9 n.8.

Finally, Defendants' proposed jury instruction strays farther from the law now, than it did in earlier iteractions. Specifically, Defendants' instruction now includes a requirement that their RICO violations be a direct cause. Without this finding, Defendants' proposed instruction would require the jury to return a no-liability verdict even if, as the Defendants suggest, the jury finds that "the County Governments' injuries were foreseeable, and even if [the jury finds] that Defendants' intentionally caused the course of events leading to their injuries." However, this is simply not the law. Setting aside Defendants blatant attempt to reargue causation arguments about remoteness and intervening cause (that the Court previously addressed and rejected), Defendants' legal basis for these instructions fails to persuade in favor of their instruction. *Ameriquest* is a nuisance case with no RICO claims that merely cites to *Holmes*. Other cases cited by Defendants involve decisions on motions to dismiss analyzing what allegations were necessary to satisfy the cauation requirement. However, even in those cases, the Courts were specific to identify that the causation requirements is only that there be "some direct connection." Morever, Magistrate Ruiz's

report and recommendation analyzed these arguments and found that Plaintiffs had sufficiently alleged a direct injury. And, as this Court recognized, the casual chain alleged is more direct than characterized by Defendants.  *See* Dkt. 1203 at 9; *see also id.* at 10.  Defendants' attempt to heighten the legal standard is particularly inappropriate in a public nuisance case.  To the extent that Defendants persist in requiring a directness instruction, the proper instruction - based on this Court's prior rulings and the law, would be to include the following statement to the jury in lieu of Defendants' proposed instruction regarding directness and foreseeability:

> You must find that there is some direct relation between a Defendants' RICO violation and the County Government's injuries.  It is not necessary that the Defendant should have anticipated the particular injury.  It is sufficient that his act is likely to result in an injury to someone. If you do not find that there is some direct relation between a Defendants' RICO violation and the County Government's injuries, you must find that the County Goverments have failed to prove proximate causation.

*See*, Report & Recommendation at 28-29 (citing *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340 (11th Cir. 2016); *R.H. Macy & Co., Inc. v. Otis Elevator Co.*, 51 Ohio St. 3d 108, 108 (1990); *Cascone v. Herb Kay Co.*, 6 Ohio St. 3 155, 156-61 (1983).  The last sentence of Defendants' proposed instruction regarding foreseeability and intentionality should not be read to the jury.

### No. 10.  Ohio Corrupt Practices Act – Participation in the Enterprise[5]

The County Governments also allege that certain Defendants violated the Ohio Corrupt Practices Act by engaging in a pattern of corrupt activity.

The County Governments allege that Teva USA, Cephalon, Janssen, and Johnson & Johnson did so in connection with an enterprise to improperly market prescription opioid medications.

The County Governments allege that Teva USA, Cephalon, Watson Laboratories, Actavis LLC, Actavis Pharma, Warner Chilcott, Actavis South Atlantic, Actavis Elizabeth, Actavis Mid Atlantic, Actavis Totowa, Actavis Kadian, Actavis Labs UT, and Actavis Labs FL, AmerisourceBergen, Cardinal Health, and McKesson did so in connection with an enterprise to improperly supply prescription opioid medications.

To recover actual damages on this claim, each County Government must prove each of the following three elements by a greater weight of the evidence.

First, each County Government must prove as to each Defendant that the Defendant associated with an enterprise;

Second, each County Government must prove as to each Defendant that the Defendant knowingly conducted or participated in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity;

Third, for each Defendant, each County Government must prove that it was injured or threatened with injury; and

---

[5] Defendants propose the instant instructions on the Ohio Corrupt Practices Act ("OCPA") for purposes of consideration, but remain willing to discuss the possibility of merging the RICO and OCPA instructions for the convenience of the Court and jury.

Fourth, for each Defendant, each County Government must prove that its injury was proximately caused by a pattern of corrupt activity carried out by an enterprise with which that Defendant allegedly associated.

The term "enterprise" includes any organization, association, or group of persons associated in fact although not a legal entity.  Enterprise also includes unlawful as well as lawful enterprises.

"Conduct" means to direct.

"Participate" means to take part in and is not limited to those who have directed the pattern of corrupt activity.  "Participate" encompasses those who have performed activities necessary or helpful to the operation of the enterprise, whether directly or indirectly, without an element of control, at the direction of those who conducted the enterprise's affairs.[6]

The term "corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting coercing, or intimidating another person to engage in a criminal act that violates the federal mail fraud or wire fraud statutes, or a violation of Section 843 of Title 21 that constitutes one of the acts listed in section 1961(1)(D) of Title 18.[7]  I have already instructed you about the elements the County Governments must prove for each of these alleged federal RICO predicate acts.

The term "pattern of corrupt activity" means two or more incidents of "corrupt activity" that are related to the affairs of the same enterprise, are not isolated, and are not so closely related

---

[6] *Reves v. Ernst & Young*, 507 U.S. 170, 179, 184 (1993).

[7] Defendants object to the Court's ruling "that a violation of 21 U.S.C. § 843(A)(4)(a) can constitute a predicate act under 18 U.S.C. § 1961(1)(D)." *In Re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2580.

to each other and connected in time and place that they constitute a single event.  A finding of a "pattern of corrupt activity" requires proof of at least two incidents of corrupt activity within six years of each other.

To find that a corrupt activity was the proximate cause of an injury, you must find that there is a direct causal relationship between the corrupt activity and the alleged injury.

If you find that a number of steps separate the alleged corrupt activity from the alleged injury, or that the County Governments' theory of liability rests on the independent actions of third or fourth parties, then the County Governments have failed to prove the required direct causal relationship.  Likewise, if you find that the County Governments' injuries depend upon someone else first being injured, then the County Governments have failed to prove a direct causal relationship.

Authority: 1 CV Ohio Jury Instructions 445.01, 03, 05, 07 (2019) (modified); *id.* 305.05 (preponderance of the evidence); *id.* 303.07 (clear and convincing); *id.* 315 (damages); *id.* 405 (proximate cause); *Cleveland v. Ameriquest Mort. Secs., Inc.*, 615 F.3d 496, 503 (6th Cir. 2010); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1148 (Ohio 2002); *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *5 (Ohio Ct. App. 2013); *Herakovic v. Catholic Diocese of Cleveland*, 2005 WL 3007145, at *5 (Ohio Ct. App. Nov. 10, 2005); *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2580, at 1 n.1.

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 13 - Ohio Corrupt Practices Act – Participation in the Enterprise.[8]  As described below, Defendants rely on the Ohio's OCPA

---

[8] Defendants propose that they are willing to discuss the possibility of merging the RICO and OCPA instructions for the convenience of the Court and the jury.  While Plaintiffs are also willing to entertain a merged jury instruction, Plaintiffs maintain that any merged jury instruction must accurately reflect the

and causation Civil Jury Instructions, but their proposed instructions substantively alter those instructions.

The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- Second Element:  Inclusion of the word "knowingly;"

- Third Element:  Misstates the requirements for proving proximate cause;

- Improperly narrows the corrupt activities that Plaintiffs allege form the basis of the OCPA claims; and

- Improperly misconstrues the causation instructions such that they do not approximate any Ohio or other model jury instruction.

Defendants' Proposed Jury Instruction No. 13 suffers from multiple defects, as identified above, related to the inclusion of requirements not supported by law, omission of the full spectrum of the corrupt activities alleged, and improper instruction regarding proximate cause.

For example, the Ohio Civil Jury Instructions for the OCPA do not include the term "knowingly," in the second element of an OCPA violation.  *See* 1 CV Ohio Jury Instructions 445.03.1(C) ("Defendant conducted or participated in, directly or indirectly, the affairs of the enterprise").  And, Defendants' construction of the third element, followed by an omission of an instruction regarding injury and causation, also contradicts the Ohio Civil Jury Instructions.  *See* 1 CV Ohio Jury Instructions 445.03.1(D) ("Plaintiff was damaged, directly or indirectly, as a result of defendants' conduct").  Model federal instructions, as well as model instructions from other Circuits, and this Court's prior Orders support Plaintiffs' proposed instruction.  *See*, 3B Fed. Jury Prac. & Instr. § 161:22 (6th ed.); Ninth Circuit Manual of Model Civil Jury Instructions (Civil),

---

elements required to prove an OCPA claim, including differences in the injury and causation elements of Plaintiffs' OCPA claims.

No. 8 (last updated June, 2019); *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2580, at 4.

Continuing, Defendants' proposed instruction regarding a pattern of corrupt activity is incorrect. Like their definition of racketeering activity, Defendants include references to criminal acts that are not included in the statutory definition or the Ohio Civil jury Instruction. *See* Ohio Rev. Code. § 2923.31(I); *see also* 1 CF Ohio Jury Instructions 445.07.7 Corrupt Activity. Defendants' proposed instruction also misstates what Plaintiffs are required to prove. Plaintiffs need not prove that they were injured by a pattern of corrupt activity. Rather, Plaintiffs only need to prove that they were "injured or threatened with injury by a violation of section 2923.32." Ohio Rev. Code § 2923.34(A). Additionally, Defendants' attempt to define "corrupt activity" significantly departs from the Ohio Civil Jury Instruction, Plaintiffs' allegations, and the law. Here, the Ohio Civil Jury Instruction makes clear that the term "corrupt activity" means: (A) engaging in (or) (B) attempting to engage in (or) conspiring to engage in (D) "soliciting, coercing or intimidating another person to engage in" followed by direction to the Court and parties to "describe the conduct or violation by reading or summarizing applicable law as listed in R.C. 2923.31(I)" which contains the statutory definition of corrupt activity under Ohio law. And, Defendants' proposed instruction falls well short of the model Ohio instruction, and does not accurately describe the conduct or violation. In order to remedy Defendants' failure, their proposed instruction must be revised as follows:

> The term "corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting coercing, or intimidating another person to engage in any conduct defined as "racketeering activity" under the RICO Act, or conduct that violates specifically enumerated Ohio laws. Plaintiffs allege that Defendants engaged in three types of activities defined as "racketeering activity" under the RICO act, including: mail fraud (18 U.SC. § 1341), wire fraud (18 U.S.C. § 1343), any offense involving . . . the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance . . .

- 46 -

punishable under any law of the United States (including violation of 21 U.S.C. §§ 823, 841, 842, 843 and the regulations implementing section 832).  Plaintiffs further allege that Defendants engaged in conduct that violates the telecommunications fraud statute in Ohio (Ohio Rev. Code Ann. § 2913.05), which also falls within the definition of "corrupt activity."

Despite losing their argument about whether violations of sections 823, 841, 842, and/or 843 constitute racketeering activities multiple times, Defendants refuse to acknowledge those violations as the alleged racketeering activities.  That refusal is unfounded and requires the Court to refuse Defendants' Proposed Jury Instruction No. 13 in favor of Plaintiffs' accurately stated instructions regarding the OCPA claims - including Plaintiffs' Proposed Instruction Nos. 32-33, and 36.

Finally, Defendants include proximate cause instructions within their Proposed Jury Instruction No. 13 that do not follow the Ohio Civil Jury Instructions, or the law and require that the last two paragraphs of Defendants' proposed instruction be deleted.  Specifically, Ohio law does not require that there be a "direct causal relationships between the corrupt activity and the alleged injury" like RICO because the "by reason of" language is omitted from the Ohio statute. *See* 18 U.S.C. 1964(c) ("any person injured in his business or property by reason on . . . "); Ohio Rev. Code Ann. § 2923.34(A) (Any person who is injured or threatened with injury by violation of . . . ").  Moreover, the relationships between injury and OCPA violation is not stated as concretely as Defendants suggest.  *See* 1 CF Ohio Jury Instruction 405.01.2 ("Proximate cause" is an act or failure to act that in the natural and continuous sequence directly produces the injury and without which the injury would not have occurred"); *see also* 3B Fed. Jury Prac. & Instr. § 161:70; *see also In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, ECF No. 2561 at 6 ("the burden of proof is on the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm"); *Crosby v. Twitter, Inc*., 921 F.3d 617, 624 (6th Cir. 2019); *In re*

- 47 -

*ClassicStar Mare Lease Litigation*, 727 F.3d 473, 487 (6th Cir. 2013). Defendants' paragraph which requires that their OCPA violation be a "direct cause" of Plaintiffs' injuries ignores that the jury may also find proximate causation if the OCPA violation is a substantial cause of the injury, or when the injury was a reasonably probable consequence of the RICO violation. *See* 3B Fed. Jury Prac. & Instr. § 161:70; *In re ClassicStar Mare Lease Litigation*, 727 F.3d at 487.

Moreover, Defendants' inclusion of language that instructs the jury that causation does not exist if "a number" of steps separates the racketeering from the injury, or if "independent actions of third or fourth parties" impacts liability, or if Plaintiffs' injuries "arise from someone else first being injured" inserts additional requirements that have no basis in law and have been repeatedly rejected in this matter. *See* 3B Fed. Jury Prac. & Instr. § 161:70; *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, ECF No. 1025 at 29-33; ECF No. 2561 at 9 n.8.

Defendants' reliance on *Herakovic v. Catholic Diocese of Cleveland*, and this Court's Order at Docket 2580, do not persuade in favor of adopting any of Defendants' proposed instructions regarding proximate cause and the OCPA.

### No. 11.  Ohio Corrupt Practices Act – Conspiracy to Engage in a Pattern of Corrupt Activity

The County Governments also allege that certain Defendants (Teva USA, Cephalon, Watson Laboratories, Actavis LLC, Actavis Pharma, Warner Chilcott, Actavis South Atlantic, Actavis Elizabeth, Actavis Mid Atlantic, Actavis Totowa, Actavis Kadian, Actavis Labs UT, Actavis Labs FL, Janssen, Johnson & Johnson, AmerisourceBergen, Cardinal Health, and McKesson) violated the Ohio Corrupt Practices Act by conspiring to engage in a pattern of "corrupt activity."

To succeed on this claim, each County Government must prove each of the following four elements by the greater weight of the evidence:

First, each County Government must prove that a conspiracy existed at or about the time claimed;

Second, each County Government must prove as to each Defendant that the Defendant became a member of the conspiracy; that is, the Defendant demonstrated by words or actions an agreement to directly or indirectly conduct or participate in the conduct of the affairs of an enterprise, through a pattern of corrupt activity;

Third, each County Government must prove that one or more members of the conspiracy committed, in furtherance of some object or purpose of the conspiracy, overt acts of mail fraud, wire fraud, or violation of section 843(a)(4)(A) of Title 21 that constitutes a felonious act listed in section 1961(1)(D) of Title 18;[9] and

---

[9] Defendants object to the Court's ruling "that a violation of 21 U.S.C. § 843(A)(4)(a) can constitute a predicate act under 18 U.S.C. § 1961(1)(D)." *In Re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2580.

<u>Fourth</u>, each County Government must prove that the corrupt activities of the conspiracy proximately caused them damage.

The meanings of the elements "enterprise," "corrupt activity," "pattern of corrupt activity," and "proximately caused" are the same as I have just explained to you with respect to the other Ohio Corrupt Practices Act claims in this case.

A conspiracy is an agreement between two or more persons or entities that one or more of them will engage in conduct with a purpose to commit the specific offense.

A Defendant cannot be liable for conspiring to engage in a pattern of corrupt activity unless a substantial overt act in furtherance of the conspiracy is proved to have been done by the Defendant or by a person with whom that Defendant conspired, and that such act was performed subsequent to the Defendant's entrance into the conspiracy. An overt act is substantial when it is of such character as to manifest a purpose on the part of the actor that the object of the conspiracy should be completed.

<u>Authority:</u> 1 CV Ohio Jury Instructions 445.21, 23, 25 (2019) (modified); *id.* 445.05 (person, enterprise, pattern of corrupt activity, corrupt activity); *id.* 315 (damages); *id.* 405 (proximate cause); 2 CR Ohio Jury Instructions 523.01 (conspiracy, overt act).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' proposed jury instruction number 14 - Ohio Corrupt Practices Act – Conspiracy to Engage in a Pattern of Corrupt Activity. As described below, Defendants' Proposed Jury Instruction No. 14 does not accurately reflect the elements of an OCPA conspiracy violation as defined in Ohio law and in the Ohio Jury Instructions.

The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- Fifth paragraph: The sentence "<u>Third</u>, each County Government must prove that one or more members of the conspiracy committed, in furtherance of some object or purpose of the conspiracy, overt acts of mail fraud, wire fraud, or violation of section 843(a)(4)(A) of Title 21 that constitutes a felonious act listed in section 1961(1)(D) of Title 18; and" should be revised to state "<u>Third</u>, each County Government must prove that one or more members of the conspiracy committed, in furtherance of some object or purpose of the conspiracy, overt acts of mail fraud, wire fraud, telecommunications fraud or committing an offense involving the felonious manufacturer, buying, selling or otherwise dealing in controlled substances that are punishable by the law in the United States; and."

- Sixth paragraph: "<u>Fourth</u>, each County Government must prove that the corrupt activities of the conspiracy proximately caused them damage." This sentence should be revised to read as follows: "<u>Fourth</u>, each County Government must prove that it was damaged, directly or indirectly, as a result of the conspiracy."

- Eighth paragraph: "A conspiracy is an agreement between two or more persons or entities that one or more of them will engage in conduct with a purpose to commit the specific offense." This sentence should be revised to add at the end: "or a conspiracy is the planning or aiding in the planning of the commission of an offense between two or more persons or entities with a purpose to promote or facilitate the commission of the specific offense."

Defendants' Proposed Jury Instruction No. 14 does not include all the predicate acts that Plaintiffs have alleged were part of Defendants' OCPA Conspiracy because it fails to include telecommunications fraud and limits the controlled substances violation to 21 U.S.C. § 843(a)(4)(A) when Plaintiffs have alleged controlled substances violations including 21 U.S.C. §§ 823, 841, 842 and 843. In addition, Plaintiffs object to the language in Defendants' fourth element because it requires the jury to find that the conspiracy's corrupt activities caused Plaintiffs' damages, whereas the law only requires that a defendant's conduct caused Plaintiffs' damages. *See* 1 OJI-CV, 1 CV Ohio Jury Instructions 445.03 ("(D) Plaintiff was damaged, directly or indirectly, as a result of defendant's conduct."). Moreover, Defendants' fourth element omits that the OCPA provides for damages that a defendant *directly or indirectly* causes. *Id*. Finally, Plaintiffs' revision to the conspiracy definition includes both definitions of conspiracy that are provided in the Ohio Jury Instructions that Defendants cite. *See* CR Ohio Jury Instructions 523.01.

### No. 12.  **Ohio Civil Conspiracy**

The County Governments claim that the Defendants injured them by participating in one or more civil conspiracies.

To succeed on this claim, each County Government must prove as to each Defendant, by the greater weight of the evidence, that (1) Defendants participated in a malicious combination involving two or more entities (2) a result of which was the commission of an "unlawful act" that (3) proximately caused damage to the County Governments.

"Malicious combination" means (a) a common understanding or design, whether spoken or unspoken, (b) entered into with malice (c) by two or more entities (d) to commit an unlawful act.  It does not require a showing of an express agreement.  It is sufficient that the participants, in any manner, reached a mutual understanding to commit an unlawful act.

"Malice" is that state of mind under which a person does an unlawful act purposely, without a reasonable or lawful excuse, which causes injury.

Proof that an underlying unlawful act was committed by a Defendant is required before the County Governments can prevail on their civil conspiracy claim.  An "unlawful act" is one for which the County Governments could hold a Defendant liable separate and apart from any conspiracy.  This requires each County to first prove all of the elements of that unlawful act.

The unlawful acts alleged by the County Governments are _____.[10] The unlawful act of any one member of the conspiracy will satisfy the unlawful act requirement.

---

[10] Plaintiffs have not pointed to any independently actionable unlawful act.  In their jury instructions, Plaintiffs say that the relevant unlawful act "involves the fraudulent marketing and failure to maintain effective controls to prevent the diversion of opioids."  This statement is vague and indefinite, and in any event such conduct is not independently actionable.  The Court has referred to the following as the alleged unlawful acts: "public nuisance, OCPA, and RICO claims."  *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2568 at 12; *see also In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 1203 at 21 ("the statutory public nuisance, Ohio RICO, and injury through criminal acts claims" are

The County Governments may recover damages only for harm proximately caused by Defendants' unlawful conduct to that County Government.  Damages, in order to be recoverable under a civil conspiracy claim, cannot be the result of just any unlawful act committed by a conspirator, or just any act committed in furtherance of the conspiracy.  They must have been caused by an unlawful act committed in furtherance of the conspiracy.

I have already instructed you that to find that an unlawful act was the proximate cause of an injury, you must find that there is a direct causal relationship between the unlawful act and the alleged injury.

If you find that the Defendants' conduct combined with multiple other causes to proximately cause injury to the County Governments, you must determine whether the Defendants' unlawful act was a substantial factor in bringing about the injury.  A cause is a substantial factor if it makes an independent substantial impact in bringing about the injury.

Furthermore, if you find that a number of steps separate the alleged unlawful act from the alleged injury, or that the County Governments' theory of liability rests on the independent actions of third or fourth parties, then the County Governments have failed to prove the required direct causal relationship.  Likewise, if you find that the County Governments injuries depend upon someone else first being injured, then the County Governments have failed to prove a direct causal relationship.

---

the alleged unlawful acts).  RICO and OCPA cannot be unlawful acts here; a civil conspiracy claim premised on a RICO or OCPA conspiracy would be entirely duplicative of the RICO and OCPA conspiracy claims.  To the extent the RICO and OCPA claims themselves rely on alleged violations of suspicious order "duties," those claims are not independently actionable.  Public nuisance cannot be the underlying unlawful act here because Plaintiffs have disclaimed all compensatory damages for public nuisance, and a civil conspiracy claim premised on public nuisance as the unlawful act runs contrary to Plaintiffs' disclaimer. *See* ECF 2212 n.2 ("Plaintiffs have expressly disclaimed recovery for past damages under their public nuisance claim and are seeking only equitable abatement relief.").

Authority: 1 CV Ohio Jury Instructions 443.01, 313.01 (conspiracy), 315 (damages), 405.01-.05 (proximate cause); *Cleveland v. Ameriquest Mort. Secs., Inc.*, 615 F.3d 496, 503 (6th Cir. 2010); *Davis v. Clark Cty. Bd. of Commrs.*, 994 N.E.2d 905, 909 (Ohio 2013); *Gasden v. Louis*, 687 N.E.2d 481 (Ohio Ct. App. 1996).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' proposed jury instruction No. 15—Ohio Civil Conspiracy. As described below, Defendants' Proposed Jury Instruction No. 15 includes redundant and prejudicial language.

The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- The final paragraph of the instruction should be deleted as duplicative and prejudicial: "Furthermore, if you find that a number of steps separate the alleged unlawful act from the alleged injury, or that the County Governments' theory of liability rests on the independent actions of third or fourth parties, then the County Governments have failed to prove the required direct causal relationship. Likewise, if you find that the County Governments injuries depend upon someone else first being injured, then the County Governments have failed to prove a direct causal relationship."

The final paragraph of the Defendants' proposed instruction should be deleted as redundant and prejudicial. The penultimate paragraph of the proposed instruction adequately explains the law on proximate cause and that proximate cause is satisfied if an act is a substantial factor in causing an injury. The last paragraph elaborates on this instruction by example; those examples are unnecessary and prejudicial in that they suggest factual findings for the jury to draw. There is no basis for the final paragraph in the Ohio civil jury instructions.

## No. 13.  Compensatory Damages – General[11]

If you find that each County Government has proven their OCPA, RICO, or civil conspiracy claims by a greater weight of the evidence against any Defendant, you must consider the amount of money that will reasonably compensate the County Governments for the injuries that they suffered as a result of that Defendant's conduct.  This amount is called "compensatory damages."  You should not assume that the County Governments can recover damages just because I am instructing you about damages.  It is exclusively for you to decide whether any one of the Defendants is liable.  I am instructing you on damages only so that you will have guidance if you decide that the County Governments can recover damages.

<u>Authority</u>: Modern Federal Jury Instructions, Civil, § 77.01 (2019) (modified); 3 Fed. Jury Prac. & Instr. § 106:02 (6th ed.) (modified).

***Plaintiffs' Objections:***

Plaintiffs have no objection to Defendants' Proposed Jury Instruction No. 17.

---

[11] Given Plaintiffs' representation that they will not seek punitive damages in this action, Defendants have not propoesd an instruction as to punitive damages at this time.  If Plaintiffs later attempt to re-assert a claim for punitive damages, Defendants note their objection that punitive damages are legally unavailable in this case.

## No. 14.  Compensatory Damages – Double Recovery

The County Governments are seeking damages from the Defendants under more than one legal theory.  However, each item of damages may be awarded only once, regardless of the number of legal theories allowed.  For example, if the County Governments proved that the same conduct supported two different claims and caused a one-dollar injury, you may not award the County Governments one dollar of compensatory damages on each claim—the County Governments are only entitled to be made whole, not to recover more than they lost.  Of course, if different injuries are attributed to the separate claims, then you may compensate the County Governments fully for all of their injuries.

You must be careful to impose any damages that you may award on a claim solely upon the Defendant or Defendants whom you find to be liable on that claim.  The County Governments may only receive full compensation once for the same injury, regardless of the number of Defendants that caused that injury.  Although there are multiple Defendants in this case, it does not follow that if one is liable, all or any of the others are liable as well.  Each Defendant is separate and distinct.  And each Defendant is entitled to fair, separate, and individual consideration of the case without regard to your decision as to the other Defendants.  If you find that only one Defendant is responsible for a particular injury, then you must impose damages for that injury only upon that Defendant.

Authority: Modern Federal Jury Instructions, Civil, § 77.01 (2019) (modified).

*Plaintiffs' Objections:*

Plaintiffs object to Defendants' Proposed Jury Instruction Number 18—Double Recovery.  As described below, Defendants' Proposed Jury Instruction No. 18 is misleading because it suggests incorrectly that Plaintiffs' recovery is limited to actual damages and also is

incomplete because it omits any mention that multiple Defendants may be jointly liable for the same conduct causing a particular injury.

The specific portions of Defendants' proposed instruction to which Plaintiffs object are as follows:

- <u>First paragraph</u>: omit the clause "the County Governments are only entitled to be made whole, not to recover more than they lost;" and

- The proposed instruction omits that the jury may find that two or more Defendants are jointly liable for the acts of each of them resulting in a particular injury.

Defendants' Proposed Jury Instruction No. 18 misleadingly states that Plaintiffs "are only entitled to be made whole, not to recover more than they lost."  Although this would be a correct and complete statement of the law where a plaintiff seeks *only* actual or compensatory damages, it is not so here where Plaintiffs' claims, if proven, would or may entitle them to recover *more than* they lost.  *See*, *e.g.*, 18 U.S.C. § 1964(c) (entitling person injured in business or property by reason of violation to, *inter alia*, "threefold the damages he sustains"); Ohio Rev. Code § 2923.34(E) (entitling person injury by conduct in violation to "triple the actual damages sustained" upon proof by clear and convincing evidence).

Furthermore, Defendants' Proposed Jury Instruction No. 18 omits that the jury may find that two or more Defendants are jointly liable for the acts of each of them resulting in a particular injury if they are found to have been united in an intentional act that violates another person's right.  The Modern Federal Jury Instruction, Civil ¶ 77.01, on which Defendants rely, includes within its Instruction 77-2 (Multiple Claims—Multiple Defendants) a third paragraph omitted by Defendants:

> Nevertheless, you might find that more than one defendant is liable for a particular injury.  If two or more persons unite in an intentional act that violates another person's right, then all of those persons are jointly liable for the acts of

each of them; the law does not require the injured party to establish how much of the injury was done by each particular defendant that you find liable.  Thus, if you find that the defendants who you find to be liable acted jointly, then you may treat them jointly for purposes of deciding damages.  If you decide that two or more (both) of the defendants are jointly liable on a particular claim, then you may simply determine the overall amount of damages for which they are liable, without breaking that figure down into individual percentages.

The Comment to Model Civil Jury Instruction 77-2 states that "in multiple defendant cases, counsel should consider requesting the second and third paragraphs" because the "failure to give such an instruction, when requested, is reversible error."

**No. 15.  Compensatory Damages – Measure**

As a general matter, the County Governments must prove the amount of damages that they suffered by a greater weight of the evidence.  You may also be asked certain questions concerning what damages, if any, the County Governments have proven by clear and convincing evidence.  Regardless of which of these two standards applies, you must not guess or speculate in awarding damages.  The County Governments claim that they sustained damages in the form of money spent to address various harms caused by the Defendants' allegedly wrongful conduct, such as, for example, costs associated with emergency responses to opioid overdoses.  The County Governments can recover only for their own injuries, measured by their own past expenditures caused by wrongdoing of a Defendant, not for injuries suffered by residents of the counties or by anyone other than the County Governments themselves.  You may award damages to compensate the County Governments only for harms proximately caused by a Defendant's *unlawful* conduct; you may not award damages for harms caused by Defendants' *lawful* sale or distribution of opioids or for opioid-related harms unrelated to Defendants, or for harms that would have occurred even without Defendants' allegedly unlawful conduct.

Authority: Modern Federal Jury Instructions, Civil, § 77.03 (2019) (modified); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 1203; *Douglas v. Ratliff*, 2009 WL 3378672, at *3 (S.D. Ohio Oct. 20, 2009); *Iron Workers Local Union No. 17 Ins. Fund & its Trustees v. Philip Morris Inc.*, 29 F. Supp. 2d 801, 821 (N.D. Ohio 1998); Ohio Rev. Code § 2923.34; *In re State of Ohio.*, Case No. 19-3827, Doc. No. 23 at 2 (Plaintiffs "do not seek recovery based on injuries to individual residents"); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 2661 at 2 (MiL re future damages).

*Plaintiffs' Objections:*

Plaintiffs object to Defendants' Proposed Jury Instruction Number 19—Compensatory Damages—Measure.  As described below, Defendants' Proposed Jury Instruction No. 19 is incomplete and thus incorrect because its statement that Plaintiffs' damages are measured by past expenditures omits future injury or damages; is misleading because its reference to excluded "injuries suffered by residents" implies incorrectly that Plaintiffs may not recover their expenditures for *treatment* of those injuries and because its reference to excluded harms caused by "*lawful* sale or distribution of opioids" implies incorrectly that harms from lawful sales or distribution caused by unlawful conduct are excluded; and is incorrect with respect to the standard for establishing causation of harm under applicable federal and Ohio law.

The specific portions of Defendants' proposed instruction to which Plaintiffs object are as follows:

- Lines 7-8: improperly omit Plaintiffs' recovery of damages for injuries "they are reasonably likely to suffer in the near future;"

- Line 9: misleadingly states that Plaintiffs can recover "not for injuries suffered by residents of the counties or by anyone other than the County Governments themselves," without also stating that Plaintiffs may recover their own "expenditures for *treatment* of such injuries to other persons;"

- Line 12: misleadingly states that the jury "may not award damages for harms caused by Defendants' *lawful* sale or distribution of opioids" without also stating that the jury may award damages for harms from lawful sales or distribution "caused by Defendants' unlawful conduct;" and

- Lines 13-14: incorrectly state that the jury may not award damages for "harms that would have occurred even without Defendants' allegedly unlawful conduct," when the correct

legal standard would exclude only "harms that Defendants' unlawful conduct was not a substantial factor in producing."

Defendants' Proposed Jury Instruction No. 19 incorrectly states that Plaintiffs "can recover only for their own injuries measured by their own past expenditures . . . ."  Plaintiffs also may recover future damages on their RICO and Ohio state-law claims.  *See*, *e.g.*, *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988); *Powell v. Montgomery*, 272 N.E.2d 906, 909(Ohio Ct. App. 1971).  Indeed, the Modern Civil Jury Instruction ¶ 77.01, on which Defendants rely, also includes within its Instruction 77-3 the recovery of compensatory damages for "those injuries that a plaintiff has actually suffered *or which he or she is reasonably likely to suffer in the near future.*"  (emphasis added).

Furthermore, Defendants' Proposed Jury Instruction No. 19 misleadingly states that Plaintiffs can recover "not for injuries suffered by residents of the counties or by anyone other than the County Governments themselves," without also clarifying to the jury that Plaintiffs *may* recover damages for "expenditures for *treatment* of such injuries to other persons."  *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 1203 at 12.

Defendants' Proposed Jury Instruction No. 19 also misleadingly states that the jury "may not award damages for harms caused by Defendants' *lawful* sale or distribution of opioids" without also stating that the jury may award damages for harms from lawful sales or distribution "caused by Defendants' unlawful conduct."  *See*, *e.g.*, *In re Neurontin Mktg. & Sales Practs. Litig. (Kaiser)*, 712 F.3d 21, 43-44 (1st Cir. 2013).

Finally, Defendants' Proposed Jury Instruction No. 19 incorrectly states the standard for finding causation of harm under applicable federal and Ohio law.  Defendants' proposed instruction states that the jury may not award damages for "harms that would have occurred even without Defendants' allegedly unlawful conduct."  Under both federal and Ohio law, the

standard for assessing causation of damages is whether one or more defendants' alleged misconduct "was a substantial factor in causing the injury . . . ."  *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 29 F. Supp. 2d 801, 821-22 (N.D. Ohio 1998); *see also Pang v. Minch*, 559 N.E.2d 1313, 1324 (Ohio 1990) (plaintiff must demonstrate that "the conduct of each defendant was a substantial factor in producing the harm.").

## No. 16.  Compensatory Damages – RICO

If you find that the County Governments have established the elements of their RICO claim by the greater weight of the evidence against any Defendant, you should consider the evidence presented about damages to the County Governments' business or property allegedly caused by that Defendant's violation.

In considering the County Governments' damages, if any, with respect to the RICO claims, you should assess the amount you find to be justified by the greater weight of the evidence as full, just, and reasonable compensation for all of the damages to the County Governments' business or property, no more and no less.  Under the RICO statute, the County Governments may recover only for injury to their business or property.  Injury to business may include extraordinary expenses incurred in connection with the Defendant's RICO violation and decrease in value of the business or property itself.  Because RICO limits the County Governments' recovery to business or property injuries, you may not compensate the County Governments for losses for medical care or emergency response expenses that arose from their residents' personal injuries or emotional harm. You also may not compensate the County Governments for the ordinary costs of providing government services or for any expenditures they might make in the future.  You also may not compensate the County Governments for injuries that would have occurred without the racketeering acts of an enterprise with which the Defendant associated or a RICO conspiracy that the Defendant joined.  Finally, you may award each County Government only such damages as you find to have been directly and proximately caused by the alleged enterprise's pattern of racketeering acts.

Authority:  *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565-66 (6th Cir. 2013); 3 Fed. Jury Prac. & Instr. § 106:90 (6th ed.) (modified); 3B Fed. Jury Prac. & Instr. § 161:70

(modified); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 1203, at 14-17, 19; *In re State of Ohio.*, Case No. 19-3827, Doc. No. 23 at 2 (Plaintiffs "do not seek recovery based on injuries to individual residents"); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 2661 at 2 (MiL re future damages).

***Plaintiffs' Objections:***

 Plaintiffs object to Defendants' proposed jury instruction No. 20:  Compensatory Damages—RICO.  As described below, Defendants' proposed instruction attempts to unfairly limit the amount of compensatory damages that are available under RICO.

 The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- "Because RICO limits the County Governments' recovery to business or property injuries, you may not compensate the County Governments for losses for medical care or emergency response expenses that arose from their residents' personal injuries or emotional harm."  This sentence should be deleted.

- "You also may not compensate the County Governments for the ordinary costs of providing government services or for any expenditures they might make in the future."  This sentence should be revised to read as follows:  "You also may not compensate the County Governments for the ordinary costs of providing government services that would have been incurred regardless of Defendants' alleged wrongdoing."

- "You also may not compensate the County Governments for injuries that would have occurred without the racketeering acts of an enterprise with which the Defendant associated or a RICO conspiracy that the Defendant joined."  This sentence should be deleted.

 This Court has held that "Plaintiffs may recover damages based on the provision of governmental services in their capacity as a sovereign to the extent they can prove the asserted costs go beyond the ordinary costs of providing those services and are attributable to the alleged injurious conduct of Defendants."  *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, ECF No. 1203, at 20.  In addition, this Court explained that "Plaintiffs may still recover those costs

associated with preventing the flood of these narcotics into their communities, which do not *directly arise* from the personal injuries of their citizens (e.g. providing medical care, addiction treatment, etc.). *Id.* (emphasis added). The first sentence quoted above from Defendants' proposed instructions is therefore unduly broad and seeks to preclude Plaintiffs from recovering for costs such as providing medical care or emergency response, even if those costs do not arise *directly* from personal injuries of Plaintiffs' citizens.

This Court has also recognized that Plaintiffs may recover for costs due to their participation in the marketplace, if caused by Defendants' wrongdoing. *Id.* The second sentence quoted above from Defendants' proposed instructions purports to preclude such damages. The second sentence also seems to preclude any recovery for future expenses. Nothing in RICO bars damages for future expenses, as long as Plaintiffs provide proof of such expenses by a preponderance of the evidence and damages are not based on speculation. *See* 3B Fed. Jury Prac. & Instr. § 161:90 ("Damages may not be based on speculation because it is only actual damages— what the law calls compensatory damages—that you are to determine."); *see also Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 113 (2d Cir. 1988) (plaintiff who has suffered injury and will continue to suffer same injury in future may be entitled to aware of past and future damages in RICO suit; only where plaintiff has suffered no injury or where injury in unprovable is an award of future damages inappropriate).

Plaintiffs further object to the third sentence quoted above from Defendants' proposed instructions as being contrary to the law on causation. If Defendants' RICO violation was a substantial factor in causing Plaintiffs' injuries, then the jury may compensate Plaintiffs for those injuries. *See* Plaintiffs' Proposed Jury Instruction No. 29: RICO—Plaintiffs' Business or Property

Was Injured by Reason of Defendants Conducting or Participating in the Conduct of the Enterprise's Affairs.

### No. 17.  Damages – OCPA

If you find that the County Governments have established the elements of their OCPA claims by the greater weight of the evidence against any Defendant, you must decide from the greater weight of the evidence what amount of money will reasonably compensate the County Governments for the actual damage proximately and directly caused by the conduct of the Defendants.

Certain facts must be proved by clear and convincing evidence, which is a higher burden of proof than a greater weight of the evidence.  It means that the County Governments must persuade you that it is highly probable that the fact is true.  "Clear and convincing" means that the evidence must produce in your minds a firm belief or conviction about the facts to be proved.  It must be more than evidence that simply outweighs or overbalances the evidence opposed to it. You will be asked if the County Governments have established each element of their OCPA claim against each Defendant by clear and convincing evidence.  If you determine that the County Governments have established their OCPA claim by clear and convincing evidence as to any Defendant, you also will be asked to decide what, if any, amount of actual damages the County Governments have established by clear and convincing evidence.  You may not award damages for future government expenditures.

<u>Authority</u>:  Ohio Rev. Code § 2923.34(E); *Disciplinary Counsel v. Stafford*, 946 N.E.2d 193, 198 (Ohio 2011).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' proposed jury instruction No. 21:  Damages—OCPA.  As described below, Defendants' proposed instruction misrepresents the applicable causation standard, misstates plaintiffs' burden, and incorrectly precludes future damages.

The specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- In the first paragraph, the word "directly," in the phrase "proximately and directly caused," should be deleted.

- The following sentence misstates plaintiffs' burden and should be deleted: "Certain facts must be proved by clear and convincing evidence, which is a higher burden of proof than greater weight of evidence."

- The following statement confuses the "clear and convincing" evidence standard and should be deleted: "It means that the County Governments must persuade you that it is highly probable that the fact is true."

- The following statement is incorrect and should be deleted: "You may not award damages for future government expenditures."

Plaintiffs are not required to prove "direct" causation for damages under the OCPA. Plaintiffs may show that they were damaged "directly or indirectly," as a result of the Defendants' conduct. *See* Plaintiffs' Proposed Jury Instruction No. 33: OCPA—Conducting or Participating in the Affairs of an Enterprise—Essential Elements; *see also* 1 CV Ohio Jury Instructions 445.03 ("Note that injury may be directly or indirectly caused."); Ohio Rev. Code § 2923.34(E) ("any person directly or indirectly injured").

Plaintiffs object to the proposed instruction that "[c]ertain facts must be proved by clear and convincing evidence." Plaintiffs need only prove their OCPA claim by a preponderance of evidence. However, if plaintiffs prove their OCPA claim by clear and convincing evidence, then they are entitled to enhanced damages. *See* Ohio Rev. Code § 2923.34(B), (E).

Plaintiffs object to Defendants' additional characterization of the "clear and convincing" evidence standard as requiring the jury to find that "it is highly probable that the fact is true." The "highly probable" standard is not contained in the Ohio Civil Jury Instructions, 1 OJI-CV 303.07, and risks confusion of the jury by interposing a second definition of "clear and convincing" evidence which is arguably higher than "a firm belief or conviction."

Plaintiffs object to the proposed instruction that "damages for future government expenditures" are not permitted.  There is no such limitation contained in the OCPA.  As with RICO, *see* Plaintiffs' Objections to Defendants' Proposed Jury Instruction No. 20, as long as damages, including future damages, are not speculative but are proven by a preponderance of evidence, they are recoverable under the OCPA.

Finally, Defendants' proposed instruction omits that OCPA damages are not limited to injury to business or property.

### No. 18.  Damages – Civil Conspiracy

You may not award damages for the civil conspiracy claim unless you find that a Defendant committed an unlawful act in furtherance of the conspiracy and that this unlawful act proximately and directly caused actual damage to one of the County Governments.  You may not award damages for injuries caused by just any act committed in furtherance of the alleged conspiracy—the County Governments' injuries must have been caused by an unlawful act in furtherance of the conspiracy.  You may not award damages for future government expenditures.

Authority: *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998); *Gosden v. Louis*, 687 N.E.2d 481, 497 (Ohio Ct. App. 1996); *DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent And Awning Co.*, 233 F. Supp. 2d 934, 945 (S.D. Ohio 2002); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 2562; *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 2661 at 2 (MiL re future damages).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' proposed jury instruction No. 22:  Damages—Civil Conspiracy.  As discussed below, Defendants' proposed jury instruction No. 22 is duplicative of portions of Defendants' proposed jury instruction No. 15.  In addition, Defendants improperly attempt to preclude future damages.

The specific portion of Defendants' proposed jury instruction to which Plaintiffs object is as follows:

- "You may not award damages for future government expenditures."

None of the authorities cited by Defendants preclude damages for future government expenditures.  So long as damages are not speculative and are supported by a preponderance of

the evidence, they are recoverable.  *See* Plaintiffs' Objections to Proposed Jury Instructions 20 &
21.

## No. 19.  Damages – Nuisance

You have heard evidence and arguments about whether each of the Defendants caused a public nuisance.  I instruct that you are not to award the County Governments any damages for a public nuisance.  If you conclude that a public nuisance exists, I will determine the appropriate remedy.  Any award of damages must be based only on the evidence and argument on the County Governments' RICO, OCPA, and conspiracy claims.

***Plaintiffs' Objections:***

Plaintiffs have no objection to Defendants' Proposed Jury Instruction No. 23.

## No. 20.  Mitigation of Damages

If you find that any Defendant has proven by a greater weight of the evidence that the County Governments did not make reasonable efforts to lessen damages caused by the Defendant's alleged misconduct, you should not allow damages that could have been avoided by reasonable efforts to avoid the loss.  If you find that one or more of the Defendants are liable, the County Governments may not recover for any items of damage they could have avoided through such reasonable efforts.  The County Governments, however, were not required to have taken measures that would have involved undue risk or burden.

Authority: 1 CV Ohio Jury Instructions 315.51; 3B Fed. Jury Prac. & Instr. § 161:92 (6th ed.); *Chicago Title Ins. Corp. v. Magnuson*, 2009 WL 3321372, at *6 (S.D. Ohio Oct. 9, 2009); *Hastings v. J.E. Scott Corp.*, 2004 WL 759658 (Ohio Ct. App. Apr. 9, 2004); *Sekerak v. Friedman*, No. 51997, 1987 WL 10600 (Ohio Ct. App. Apr. 30, 1987); 30 Ohio Jurisprudence § 88 (3d ed.).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction Number 24—Mitigation of Damages.  As described below, Plaintiffs' Omnibus Motion in Limine includes a limine request to preclude any argument or evidence that Plaintiffs "failed to mitigate" any damages they claim in this case, *see* Plaintiffs' Omnibus Motion *in Limine* (ECF No. 2652) at 29-31 (Request 24), which if granted would require that this proposed instruction be stricken in its entirety.  Even if not, Defendants' Proposed Jury Instruction No. 19 is incomplete because it omits that efforts to mitigate must be reasonable "under the facts and circumstances in evidence;" that an undue risk or burden on Plaintiffs would include them incurring "extraordinary expense and risk;" and that Plaintiffs had no duty to mitigate if Defendants either "had the same opportunity to reduce

damages," or "intended the harm or were aware of it and were recklessly disregardful of it," or committed fraud in their conduct that harmed the County Government Plaintiffs.

The specific portions of Defendants' proposed instruction to which Plaintiffs object are as follows:

- Lines 2, 3-4, 6: omits that Plaintiffs' efforts to mitigate must be reasonable "under the facts and circumstances in evidence;"

- Line 7: omits that the risk or burden of mitigation on Plaintiffs is undue if they would have had to "incur extraordinary expense and risk;"

- The proposed instruction omits that Plaintiffs had no duty to mitigate if Defendants "had the same opportunity to reduce damages" that Plaintiffs did;

- The proposed instruction omits that Plaintiffs had not duty to mitigate if Defendants "intended the harm or were aware of it and were recklessly disregardful of it;" and

- The proposed instruction omits that Plaintiffs had no duty to mitigate if Defendants committed fraud in their conduct that harmed the County Government Plaintiffs.
Defendants' Proposed Jury Instruction No. 24 omits that Plaintiffs' efforts to mitigate must be reasonable "under the facts and circumstances in evidence." The Ohio Civil Jury Instruction on which Defendants rely, 1 CV Ohio Jury Instructions 315.51, uses exactly this language. So, too does the analogue federal instruction, Modern Federal Jury Instruction, Civil ¶ 77.01-Instruction 77-7 (Mitigation of Damages) (describing "duty under the law to use reasonable diligence under the circumstances to 'mitigate,' or minimize, those damages").

Defendants' Proposed Jury Instruction No. 24 also omits that the risk or burden of mitigation on Plaintiffs is undue if they would have had to "incur extraordinary expense and risk." *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E.2d 955, 961 (Ohio 1999). Although this example of an undue risk or burden is not part of the standard federal or Ohio

instruction on mitigation, it is particularly applicable to this case, where the Court has found admissible evidence showing that Plaintiffs have suffered total damages of between $194.4 million and $223.4 million." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 2577 at 2.

Furthermore, Defendants' Proposed Jury Instruction No. 24 omits that Plaintiffs had no duty to mitigate if the jury finds that Defendants had "the same opportunity to reduce damages." *Chicago Title*, 719 N.E.2d at 277.  Plaintiffs allege that the harms caused in their communities resulted from Defendants' false and misleading marketing of their prescription opioid medications and their failure to adequately monitor and control the distribution of those dangerous products.  Defendants had at least the same opportunity to reduce these harms by ceasing this conduct, and if they had done so, this would have greatly reduced the severity of the harms suffered by the Plaintiffs.

Defendants' Proposed Jury Instruction No. 24 also omits that Plaintiffs had no duty to mitigate if the jury finds that Defendants "intended the harm or were aware of it and were recklessly disregardful of it."  RESTATEMENT (SECOND) OF TORTS § 918(2).  Subsection (1) of this Restatement section is followed by Ohio courts.  *See Johnson v. Univ. Hosps. of Cleveland*, 540 N.E.2d 1370, 1377 (Ohio 1989).  Although it appears that no Ohio case (state or federal) has cited subsection (2), the Court should hold it applies as a matter of common sense.  Where a defendant acts intentionally or recklessly, it should not be afforded the same protections as one who merely acts negligently.

Finally, Defendants' Proposed Jury Instruction No. 24 also omits that Plaintiffs had no duty to mitigate if the jury finds that Defendants committed fraud in their conduct that harmed the County Government Plaintiffs.  Courts in the Sixth Circuit and elsewhere have held that the federal

government has no duty to mitigate damages in fraud actions, including those brought under the False Claims Act. *See*, *e.g.*, *United States v. United Techs. Corp.*, 950 F. Supp. 2d 949, 954 (S.D. Ohio 2013), *U.S. v. Associates in Eye Care, P.S.C.*, 13-CV-27-GFVT, 2014 WL 12606508, at *5 (E.D. Ky. Nov. 14, 2014); *U.S. ex rel. Garrison v. Crown Roofing Servs., Inc.*, CIV.A. H-07-1018, 2011 WL 4914971, at *2 (S.D. Tex. Oct. 14, 2011); *U.S. ex rel. Monahan v. Robert Wood Johnson U. Hosp. at Hamilton*, CIV. A. 02-5702 JAG, 2009 WL 4576097, at (8 (D.N.J. Dec. 1, 2009); *U.S. v. Aging Care Home Health, Inc.*, CIVA 3-02-2199, 2006 WL 2915674, at *1 (W.D. La. Oct. 6, 2006).  In a False Claims Act case, the federal government (directly or through a relator) is enforcing the public right to eliminate fraudulent conduct that depletes government funds. Plaintiffs here are doing the same:  seeking damages and other relief caused by strains on their resources directly caused by Defendants' fraudulent promotional and distribution conduct. The same rule thus should apply here.

## No. 21.  Nuisance – General

I will now instruct you on the Plaintiffs' public nuisance claims.  Summit County has brought nuisance claims against all Defendants; Cuyahoga County has brought nuisance claims against all Defendants except the Schein Defendants.[12]

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 26, Nuisance – Generally. First, Plaintiffs believe that this instruction, which is one sentence long, is unnecessary and could easily be combined with the next instruction, which has essentially the same title and is missing an introductory sentence.

---

[12] Given Plaintiffs' representation that they have withdrawn their statutory public nuisance claim, Defendants have not proposed an instruction as to statutory public nuisance at this time.  *See In re National Prescription Opiate Litig.*, No. 1:17-md-2804, ECF No. 2660 at 3 (detailing the remedies sought by Plaintiffs on their remaining claims).

## No. 22.  Public Nuisance – General

The County Governments' public nuisance claim involves two alleged public nuisances. The first involves the misuse and abuse of prescription opioids, i.e., an epidemic of prescription opioid abuse.  The second involves the use of non-prescription illegal opioids (*e.g.*, fentanyl and heroin), i.e., an epidemic of non-prescription, illegal opioid abuse.

To prevail against any Defendant on this claim, each County Government must prove each of the following elements as to that Defendant by the greater weight of the evidence:

First, that a public nuisance exists;

Second, that the Defendant [either] intended to create [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse.][13];

Third, that the Defendant's conduct proximately caused [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse.]; and

Fourth, that the Defendant controlled the instrumentalities of the nuisance at the time the damage occurred.  I will now instruct you on each of those elements.

Authority: Restatement (Second) of Torts § 821B; *In re National Prescription Opiate Litig.*, No. 1:17-md-2804, ECF No. 1680 (Muscogee and Blackfeet Op. & Order) at 19-20 (discussing the requirement that the defendant must have control over the instrumentality of the nuisance); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002); *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017); *Kramer v. Angel's Path, LLC*, 882 N.E.2d 46, 52 (Ohio Ct. App. 2007); *Uland v. S.E. Johnson Companies*, 1998 WL 123086, at *5 (Ohio Ct. App. Mar. 13, 1998); *Angerman v. Burick*, 2003 WL 1524505, at *2 (Ohio Ct.

---

[13] Defendants request that the jury be read two sets of public nuisance instructions:  one set that refers to an epidemic of prescription opioid abuse as the public nuisance and a second set that refers to an epidemic of non-prescription, illegal opioid abuse.

App. 2003) (defendant must have "intended to bring about the conditions which are in fact found to be a nuisance"); *see* Summit Third Amend. Compl. ¶ 167 (defining the nuisance as "the opioid epidemic"); Cuyahoga Third Amend. Compl. ¶ 155 (same).[14]

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction Number 27 – Absolute Public Nuisance – General.  First, Plaintiffs object to being identified by a descriptor other than "Summit County," "Cuyahoga County," or "Plaintiffs."  This is an issue which appears multiple times in other instructions, and is noted here for brevity, but incorporated into Plaintiffs' objections to other instructions as well.

Second, Plaintifffs object to the portions of the proposed instruction which states that:

> The County Governments' public nuisance claim involves two nuisances. The first involves the misuse and abuse of prescription opioids, i.e., an epidemic of prescription opioid abuse.  The second involves the use of non-prescription illegal opioids (*e.g.*, fentanyl and heroin), i.e., an epidemic of non-prescription, illegal opioid abuse.

As an initial matter, Plaintiffs object to the inclusion of a description of the Plaintiffs' claim in this instruction. The purpose of this instruction is simply to explain the elements of a public nuisance claim; it is not necessary for the Court to instruct on, or resolve a dispute over, what facts Plaintiffs allege concerning the existence of a public nuisance.  The jury may apply the instructions to the facts presented to make its determination.  Moreover, Defendants' proposal that the jury receive two sets of instructions on two separate nuisances would improperly and needlessly complicate the instructions and threaten to confuse the jury.  It is also simply incorrect. Plaintiffs do not assert two separate nuisances. Moreover, the law on public nuisance does not vary according to what Defendants argue Plaintiffs claim is a nuisance and Defendants mischaracterize Plaintiffs'

---

[14] Defendants do not hereby waive their objection that the "opioid epidemic" cannot constitute a public nuisance as a matter of law, inter alia, because it does not implicate a public right.

allegations. And, plaintiffs, are entitled to frame, and prove, their own allegations. For the same reasons, Plaintiffs further object to the two bracketed placeholders which state "[an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse.]"

Second, Defendants instruction is confusing, and would not advise the jury that Defendants must intend their *conduct*, but need not intend to create a nuisance.[15] Defendants' proposal is a deaparture from standard instructions. They may have intended a different meaning, as the Court previously observed that the "parties agree that "Intentional, in this context [of absolute public nuisance], means not that a wrong or the existence of a nuisance was intended but that the creator of it intended to bring about the conditions which are in fact found to be a nuisance." Opinion and Order Denying Manufacturer Defendants' Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims, MDL 2804, Doc. 2578 at 5 (Sept. 9, 2019) (explaining that "[s]tated otherwise, 'Where the harm and resulting damage are the necessary consequences of just what the defendant is doing, or is incident to the activity itself or the manner in which it is conducted, *** the rule of absolute liability applies.'") (quoting *Taylor v. City of Cincinnati*, 55 N.E.2d 724, 727 (Ohio 1944)). The same case-law Defendants cite states that "an absolute nuisance: "consists of [1.] an intentional act resulting in harm; [2.] an act involving...unlawful conduct causing unintentional harm; . . . . ." *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 862 (N.D. Ohio 2017).

Third, Defendants ignore that their statutory violations are also conduct that supports Plaintiffs' equitable public nuisance claim. The paragraph that begins "second" should include language making clear that the conduct required is either intentional conduct or conduct which violates "a specific legal requirement designed for the protection of others" — the plain language

---

[15] *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017) (quoting *Angerman v. Burick*, 2003-Ohio-1469, ¶ 10, 2003 WL 1524505 (Ohio App. 2003)).

used in the Ohio pattern jury instructions.[16]  Congress expressly recognized in enacting the Controlled Substances Act ("CSA") that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people."  21 U.S.C. § 801(2).  As the Drug Enforcement Administration ("DEA") has explained, "even just one distributor that uses its DEA registration to facilitate diversion can cause enormous harm."[17]  Ohio law likewise requires, among other things that manufacturers, as a condition of their licensure, must demonstrate that "[a]dequate safeguards are assured to prevent the sale of dangerous drugs other than in accordance with section 4729.51 of the Revised Code."  R.C. § 4729.53.  Wholesalers, too, must obtain licenses and comply with legal requirements concerning distrubtion of "dangerous drugs," for the protection of the public.  *See* R.C. § 4729.51.

Fifth, Defendants attempt to introduce a requirement found nowhere in the law.  Plaintiffs are not required to show as an element of their claims "that the Defendant controlled the instrumentalities of the nuisance at the time the damage occurred."  Their proposal is inconsistent with *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002), and the other Ohio case-law that they cite as authority.  Most notably, in *Cincinnati v. Beretta U.S.A. Corp.*, the Ohio Supreme Court rejected the same type of proposed requirement, explaining that the plaintiff properly stated a claim by alleging that the defendants' marketing, distribution, and sales conduct created the nuisance.  *Id.* at 1143 (explaining that the city did not have to meet an added requirement of control over firearms involved in that case).  Additionally, nothing in the Ohio

---

[16] 1 CV Ohio Jury Instructions 621.05

[17] Letter from Joseph T. Rannazzisi, Deputy Assistant Adm'r, Off. of Diversion Control, Drug Enf't Admin., U.S. Dep't of Justice, to Cardinal Health (Sept. 27, 2006), filed in *Cardinal Health, Inc. Inc. v. Holder*, No. 1:12-cv-00185-RBW (D.D.C. Feb. 10, 2012), ECF No. 14-51 ("2006 Rannazzisi Letter").

pattern instructions would support such an added requirement.  Defendants also do not propose to define "instrumentality" and their instruction would confuse the jury, in adition to being inconsistent with Ohio law.  As this Court has previously explained, there are three elements to this cause of action (not the four Defendants propose), and Plaintiffs must simply show:

> (1) intentional or unlawful conduct or omission by the defendant; (2) that unreasonably interferes with a right common to the general public; and (3) a causal relationship between a defendant's conduct and a plaintiff's injury.

Doc. 2572 at 2-3. (citing *Cincinnati v. Beretta U.S.A.,* 768 N.E.2d 1136, 1142 (Ohio 2002) and *City of Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *3 -*4 (Ohio Ct. App. March 21, 2013)).  Seeking to avoid this ruling, Defendants cite to a Report and Recommendation denying Motions to Dismiss in other actions by the Muscogee (Creek) and Blackfeet Tribes.  Their resort to these rulings, which the Court has not yet addressed, rather than this Court's decision denying their Motions to Dismiss in the Summit County action and further denying their summary judgment motions in the Track 1 Cases, is telling.  The ruling Plaintiffs cite above is the law of the case.  And, nothing in the Muscogee (Creek) or Blackfeet Reports and Recommendations on which Defendants rely supports their position.  Those orders state that "the alleged instrumentality of the nuisance is their creation and fueling of the illicit market."  *See* Doc. 1499 at 57-58 (citing favorably to *James v. Arms Tech., Inc.,* 820 A.2d 27, 52 (N.J. Super Ct. App. Div. 2003).  Here, an element concerning defendants' conduct is already included in Plaintiffs' proposed instructions and although incorrectly stated, in Defendants' proposal.  Further, Defendants' proposed instruction does not define "instrumentality" and appears designed to allow Defendants to attempt to confuse the jury with the same failed arguments they attempted in their motions to dismiss and for summary judgment.

For the reasons set forth above, and for avoidance of doubt, the specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- Delete the words "The County Governments' public nuisance claim involves two nuisances.  The first involves the misuse and abuse of prescription opioids, i.e., an epidemic of prescription opioid abuse.  The second involves theuse of non-prescription illegal opioids (*e.g.*, fentanyl and heroin), i.e., an epidemic of non-prescription, illegal opioid abuse."

- Delete "[an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse.]" each time it appears.

- Delete: "The County Governments claim that the public nuisance is the crisis of opioid misuse and abuse in the counties."

- Delete the parenthetical "(defined below)" as unnecessary

- Delete "to create the conditions constituting" and replace with "the conduct that caused"

- Delete the brackets and footnote around "or violated a 'safety statute.'"  Replace with "or violated a statute for the protection of others"

- Delete "<u>Fourth</u>, that the Defendant controlled the instrumentalities of the nuisance at the time the damage occurred"

**No. 23.  Public Nuisance – Existence of an Intentional Public Nuisance**

The first part of the County Governments' public nuisance claim requires each County Government to prove that a public nuisance exists.  An public nuisance is an intentional and unreasonable interference with a public right.  A public right is a collective right that is common to the general public, as opposed to rights enjoyed by many (or all) people in their individual capacities.  It is a right that belongs to the community at large.  Examples of public rights include the navigation of public waters, public passage, and the use of public space.  A public right is not like the individual right that everyone has not to be assaulted, defamed, defrauded, or negligently injured.

To recover for a public nuisance against any Defendant, the County Governments must prove that the Defendant's conduct was intentional and also that the conduct was unreasonable.  A Defendant's conduct is unreasonable if the gravity of the harm outweighs the utility of the Defendant's conduct.

Authority: 1 CV Ohio Jury Instructions 621.05 (Rev. Mar. 18, 2002) (modified); *Brown v. Scioto Cty. Bd. of Commrs.*, 622 N.E.2d 1153, 1158 (Ohio Ct. App. 1993); Restatement (Second) of Torts § 821B, cmt. g; *City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*, 863 F.3d 474, 477 (6th Cir. 2017); *State ex rel. Andersons v. Masheter*, 203 N.E.2d 325, 327 (Ohio 1964); *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 131-32 (Conn. 2001).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction Number 28.  This instruction is confusing because it conflates the "intent" element also addressed in Defendants' Proposed Instruction No. 30 and would confuse the jury by suggesting that an "intentional public nuisance" is different than, for example, a public nuisance created by a statutory violation.  The instruction

should simply refer to a "public nuisance."  The title improperly describes an "Intentional Public Nuisance," the instruction defines a public nuisance as "an intentional and unreasonable interference with a public right" and it also incorrectly says that "To recover for a public nuisance against any Defendant, the County Governments must prove that the Defendant's conduct was intentional and also that the conduct was unreasonable."  The claim may also be based on a statutory violation, as explained in Plaintiffs' Objections to Defendants' Proposed Instruction No. 27 and the intent language, addressed in a separate instruction, should be deleted.

Further, Defendants attempt nearly a full paragraph of argument unmoored from Ohio law regarding what they contend a public nuisance is or is not, which would be confusing to the jury and fails to properly explain the element at issue.  Rather than Ohio law, Defendants' langauge is based on a Connecticut decision, *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 131-32 (Conn. 2001), which lacked the benefit of the Ohio Supreme Court's decision in *Beretta*.  Further, the pattern instruction they cite is modified in a manner inconsistent with Ohio law.  The focus here, as was clear in both the briefing on summary judgment motions and motions to dismiss and this Court's orders thereon, is with interference with a public right.  Indeed, this Court explained as much repeatedly in denying the Manufacturer Defendants' Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims.  *See, e.g.*, Doc. 2578 at 3 (explaining that "Plaintiffs introduce fact and expert evidence demonstrating material factual issues regarding interference with public health and public safety interests" and citing *Cincinnati v. Beretta,* 768 N.E.2d at 1142 for the rule that "[a] public nuisance is an unreasonable interference with a right common to the general public," and unreasonable interference includes acts that "significantly interfere with public health, safety, peace, comfort or convenience"); *see also* Doc. 2572 at 2 ("The Ohio Supreme Court has explained: 'Unreasonable interference" includes those acts that significantly interfere with public health,

safety, peace, comfort, or convenience, conduct that is contrary to a statute, ordinance, or regulation, or conduct that is of a continuing nature or one which has produced a permanent or long-lasting effect upon the public right, an effect of which the actor is aware or should be aware.'") (internal citation and emphasis omitted). The instruction should simply explain that: A public nuisance is an "unreasonable" interference with a right common to the general public, such as the right to public health, public safety, public peace or public comfort.[18]

Defendants' proposed instruction is also incomplete and potentially confusing in that it states:, "[a] Defendant's conduct is unreasonable if the gravity of the harm outweighs the utility of the Defendant's conduct," without including required context. The Ohio Supreme Court has explained that a Defendant's conduct may constitute "unreasonable interference" with a public right if it: (1) is a significant interference; or (2) it is contrary to a statute, ordinance, or regulation; or (3) it is of a continuing nature or has produced a permanent or long-lasting effect upon the public right.[19] *See* Plaintiffs' Proposed Instruction No. 18.

For the reasons set forth above, and for avoidance of doubt, the specific portions of Defendants' proposed jury instructions to which Plaintiffs object are as follows:

- Delete the word "intentional" from the title; delete "intentional and" from the line defining apublic nuisance as "an intentional and unreasonable interference with a public right"; delete the sentence stating: "To recover for a public nuisance against any Defendant, the County Governments must prove that the Defendant's conduct was intentional and also that the conduct was unreasonable."
- Define a public nuisance as an "unreasonable interference with a public right"
- Delete "A public right is a collective right that is common to the general public, as opposed to rights enjoyed by many (or all) people in their individual capacities. It is a right that belongs to the community at large. Examples of public rights include the navigation of public waters, public passage, and the use of public space. A

---

[18] Restatement, § 821B(2); *Beretta*, 768 N.E.2d at 1142.

[19] *Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480, ¶ 8, 95 Ohio St. 3d 416, 419, 768 N.E.2d 1136, 1142 (Ohio 2002) (quoting Restatement (Second) of Torts § 821B (1979)).

public right is not like the individual right that everyone has not to be assaulted, defamed, defrauded, or negligently injured."

- Delete. "To recover for an intentional public nuisance against any Defendant, the County Governments must prove that the Defendant's conduct was intentional and also that the conduct was unreasonable."

## No. 24.  Public Nuisance – Intent

To hold a Defendant liable for public nuisance, the County Governments also must prove by the greater weight of the evidence  that the Defendant acted intentionally[20]

To prove that a Defendant acted intentionally, each County Government must show by the greater weight of the evidence that the Defendant intended to bring about the conditions which are found to be the nuisance.  It is not enough that a Defendant intended its conduct.  It is also not enough that a Defendant acted despite a substantial risk that [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse] would result or that it should have known that [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse] would result.  Each Defendant must have acted with the purpose of causing [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse].

A party acts intentionally when it has the purpose or conscious objective to produce a specific result.  A person intends an act when it is done purposely, not accidentally.  The intent with which a party does an act is known only to that party, unless it expresses its intent to others or indicates its intent by its conduct.

Authority: 1 CV Ohio Jury Instructions 621.05 (Rev. Mar. 18, 2002) (modified); *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017); *Angerman v. Burick*, 2003 WL 1524505, at *2 (Ohio Ct. App. 2003); *Kramer v. Angel's Path, LLC*, 882 N.E.2d 46, 52 (Ohio Ct. App. 2007); Restatement (Second) of Torts § 825.

**Plaintiffs' Objections:**

Plaintiffs object to Defendants' Proposed Jury Instruction Number 30.

---

[20]  Plaintiffs have not identify any "safety statute" that Defendants allegedly violated.

Specifically, first, this instruction includes terms that are not part of the Ohio pattern jury instructions cited as authority. The pattern instruction does *not* say that: "To prove that a Defendant acted intentionally, each County Government must show that the Defendant intended to bring about the conditions that you find to be that Defendant's unreasonable interference with a public right."  Rather, it focuses on the Defendants' conduct.  *See* CV 621.05 Absolute nuisance–intentional acts [Rev. 3-18-02], 1 CV Ohio Jury Instructions 621.05 ("PROOF OF CLAIM. Before you can find for the plaintiff, you must find by the greater weight of the evidence that the defendant intentionally and unreasonably (***describe intentional activity conducted by defendant***) which (caused [annoyance] [injury] [inconvenience] to) (endangered the [comfort] [health] [safety] of) the plaintiff.") (emphasis added).  The proposed instruction also incorrectly states that:

> It is not enough that a Defendant intended its conduct.  It is also not enough that a Defendant acted despite a substantial risk that [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse] would result or that it should have known that [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse] would result.  Each Defendant must have acted with the purpose of causing [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse].

For the same reasons set forth above, that is legally incorrect.  Defendants did not need to intend to cause a public nuisance.  Defendants' proposed instruction selectively quotes from comments to the Restatement (Second) of Torts § 825 (1979).  The Restatement itself states that:

> An invasion of another's interest in the use and enjoyment of land or an interference with the public right, is intentional if the actor
>
> (a) acts for the purpose of causing it, or
>
> (b) knows that it is resulting or is substantially certain to result from his conduct.

Restatement (Second) of Torts § 825 (1979).  Defendants omit subsection (b) entirely.  Rather than their selective citation, if the definition of "intent" from the Restatement is used, then should use the language itself, which Plaintiffs quote here, and should delete the line stating "[a] party acts

intentionally when it has the purpose or conscious objective to produce a specific result[]" as duplicative and potentially confusing.  In addition, Defendants' proposal that the jury receive two sets of instructions on two separate nuisances would improperly and needlessly complicate the instructions and threaten to confuse the jury.  The law on public nuisance does not vary according to what Defendants argue Plaintiffs claim is a nuisance and Defendants mischaracterize Plaintiffs' allegations.  And, plaintiffs, are entitled to frame, and prove, their own allegations.  Accordingly, the language "[an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse]" should be deleted each time it appears.  The instruction should simply refer to the "public nuisance."

Second, there is no need for the proposed instruction to twice state the burden of proof.

Third, under Ohio law an absolute public nuisance may be established either through proof of intentional conduct or through proof of a violation of a safety statute. The jury instruction should properly address both alternatives. Defendants' proposed instruction ignores the latter, but this is clearly an element of the claims.  It also does not reflect the plain language used in the Ohio pattern jury instructions.[21]  Congress expressly recognized in enacting the Controlled Substances Act ("CSA") that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people."  21 U.S.C. § 801(2). As the Drug Enformcement Administration ("DEA") has explained, "even just one distributor that uses its DEA registration to facilitate diversion can cause enormous harm."[22]  Ohio law likewise requires, among other things that

---

[21] 1 CV Ohio Jury Instructions 621.05

[22] Letter from Joseph T. Rannazzisi, Deputy Assistant Adm'r, Off. of Diversion Control, Drug Enf't Admin., U.S. Dep't of Justice, to Cardinal Health (Sept. 27, 2006), filed in *Cardinal Health, Inc. Inc. v. Holder*, No. 1:12-cv-00185-RBW (D.D.C. Feb. 10, 2012), ECF No. 14-51.

manufacturers, as a condition of their licensure, must demonstrate that "[a]dequate safeguards are assured to prevent the sale of dangerous drugs other than in accordance with section 4729.51 of the Revised Code." R.C. § 4729.53. Wholesalers, too, must obtain licenses and comply with legal requirements concerning distrubtion of "dangerous drugs," for the protection of the public. *See* R.C. § 4729.51. The title of the proposed instruction also erroneously omits any reference to unlawful conduct.

Finally, although the line that "[t]he intent with which a party does an act is known only to that party, unless it expresses its intent to others or indicates its intent by its conduct," does appear in a pattern instruction, including it in this context threatens to create confusion. Typically, "[a] jury instruction is proper when it (1) is relevant to the facts of the case; (2) gives a correct statement of the relevant law; and (3) is not covered in the general charge to the jury." *C4 Polymers, Inc. v. Huntington Natl. Bank*, 2015-Ohio-3475, 41 N.E.3d 788 (Ohio Ct. App. 8th Dist. Cuyahoga County 2015). Here, the general instructions concerning types of evidence and how it is to be evaluated already sufficiently cover this issue.

## No. 25.  Public Nuisance – Proximate Causation

If you find that [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid (*e.g.*, fentanyl and heroin) abuse] exists, you must decide, as to each Defendant, whether that Defendant proximately caused [the epidemic of prescription opioid abuse **OR** the epidemic of non-prescription, illegal opioid abuse].

Even though there are multiple Defendants in this case, you must find proximate cause as to each Defendant in order to hold that Defendant liable.  In other words, you must find that the Defendant's own actions proximately caused the public nuisance in the particular county in order to find that Defendant liable to that County Government.

To prove that any Defendant's conduct is a proximate cause of a public nuisance, each County Government must prove two things:

<u>First</u>, each must prove that [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse] would not have occurred without that Defendant's conduct.  If [the epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse] would have occurred regardless of that Defendant's conduct, then that Defendant's conduct is not a cause of [the epidemic of prescription opioid abuse **OR** the epidemic of non-prescription, illegal opioid abuse].  The fact that one event occurs after another does not necessarily mean that the first event caused the second.

<u>Second</u>, each County Government must prove that the Defendant's conduct was the direct, rather than remote, cause of the public nuisance.  To find that the Defendant's conduct proximately caused the public nuisance, you must find that there is a direct causal relationship between the Defendant's conduct and the nuisance.

If you find that a number of steps separate the Defendant's conduct from [the epidemic of prescription opioid abuse **OR** the epidemic of non-prescription, illegal opioid abuse], or that the County Governments' theory of liability rests on the independent actions of third or fourth parties, then the County Governments have failed to prove the required direct causal relationship. Likewise, if you find that the County Governments' injuries depend upon someone else first being injured, then the County Governments have failed to prove a direct causal relationship.

If you do not find that the Defendant's conduct was a direct cause of [the epidemic of prescription opioid abuse **OR** the epidemic of non-prescription, illegal opioid abuse], you must find that the County Governments have failed to prove proximate causation.  The requirement that Defendant's conduct be a direct cause is distinct from foreseeability.  A finding that [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse] was foreseeable is not sufficient to find that the Defendant's conduct was the direct cause of that epidemic.

If you find that a Defendant's conduct combined with multiple other causes to create a public nuisance, you must determine whether the Defendant's actions were a substantial factor in bringing about the public nuisance. A cause is a substantial factor if it makes an independent substantial impact in bringing about the injury.  In addition, conduct that is minimal is not sufficiently significant to form the basis of a nuisance.

Authority: 1 CV Ohio Jury Instructions 405.01, 405.03, 405.05 (Rev. Feb. 11, 2017) (modified); *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x. 371, 375-76 (6th Cir. 2001); *Ackison v. Anchor Packing Co.*, 897 N.E.2d 1118, 1128 (Ohio 2008); *Renison* v. *Ross,* 765 F.3d 649, 666 (6th Cir. 2014); *Montgomery v. Vargo,* 60 N.E. 3d 709, 713 (Ohio Ct. App. 2016); *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (plurality opinion); *Cleveland v.*

*Ameriquest Mort. Secs., Inc.*, 615 F.3d 496, 503 (6th Cir. 2010); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1148 (Ohio 2002); *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *5 (Ohio Ct. App. 2013); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992); *Armour & Co. v. Ott*, 158 N.E. 189 (Ohio 1927); *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.,* 2013 WL 593993, at *3 (N.D. Ohio Feb. 15, 2013); *Schwartz v. Honeywell Int'l, Inc.,* 102 N.E.3d 477, 481-83 (Ohio 2018); *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.,* 863 F.3d 474, 480 (6th Cir. 2017); *Leibreich v. A. J. Refrigerator, Inc.*, 617 N.E.2d 1068 (Ohio 1993); *R. H. Macy & Co. v. Otis Elevator Co.*, 554 N.E.2d 1313 (Ohio 1990); *Cascone v. Herb Kay Co.*, 451 N.E.2d 815 (Ohio 1983); *Baker v. Chevron USA, Inc.,* 533 F. App'x 509, 524 (6th Cir. Aug. 2, 2013) (citing *Banford v. Aldrich Chem. Co.,* 932 N.E.2d 313 (Ohio 2010)).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction Number 31. First, Defendants' proposal that the jury receive two sets of instructions on two separate nuisances would improperly and needlessly complicate the instructions and threaten to confuse the jury. The law on public nuisance does not vary according to what Defendants argue Plaintiffs claim is a nuisance and Defendants mischaracterize Plaintiffs' allegations. And, plaintiffs, are entitled to frame, and prove, their own allegations. Accordingly, the language "[an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse]" should be deleted each time it appears. The instruction should simply refer to a "public nuisance."

Plaintiffs further object to the portion of the proposed instruction that state that: "Even though there are multiple Defendants in this case, you must find proximate cause as to each Defendant in order to hold that Defendant liable. In other words, you must find that the Defendant's own actions proximately caused the public nuisance in the particular county in order

to find that Defendant liable to that County Government." This is not found in any Ohio pattern instruction and is confusing in that it may suggest to the jury, for example, that a defendant who acts through an agent is not liable because the actions were not its "own."

In addition, Plaintiffs object to the portion of Defendants' Proposed Instruction No. 31 that states:

> First, each must prove that the nuisance would not have occurred without that Defendant's conduct.  If the nuisance would have occurred regardless of that Defendant's conduct, then that Defendant's conduct is not a cause of the nuisance.  The fact that one event occurs after another does not necessarily mean that the first event caused the second.
>
> Second, each County Government must prove that the Defendant's conduct was the proximate cause of the public nuisance.  To find that the Defendant's conduct proximately caused the public nuisance, you must find that there is a direct causal relationship between the Defendant's conduct and the nuisance.
>
> If you find that a number of steps separate the Defendant's conduct from the nuisance, or that the County Governments' theory of liability rests on the independent actions of third or fourth parties, then the County Governments have failed to prove the required direct causal relationship.  Likewise, if you find that the County Governments' injuries depend upon someone else first being injured, then the County Governments have failed to prove a direct causal relationship.
>
> If you do not find that the Defendant's conduct was a direct cause of the public nuisance, you must find that the County Governments have failed to prove proximate causation.
>
> A Defendant's actions are not a direct cause of a public nuisance if acts by others that occurred after the Defendant's conduct are a superseding cause of the nuisance.   A superseding cause is an independent act by someone other than the Defendant that breaks the causal chain between the Defendant's act and the nuisance. You may find that an act is a superseding cause only if you determine that the Defendant could not have reasonably foreseen the act, and that the act was fully independent of the Defendant's conduct.  If you find that the intervening acts of others were independent and not foreseeable, then any sequence of direct causation attributable to the Defendant will have been broken and you should find that the Defendant's conduct was not a direct cause of the nuisance.

This proposed instruction is inconsistent with the law in multiple respects.  *See* Plaintiffs' Proposed Instruction No. 19.  First, the standard for cause in fact is wrong.  The applicable standard is whether defendant's conduct was a substantial factor in causing the public nuisance.  *See* Plaintiffs' Proposed Instruction No. 19; *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990) (quoting Restatement (Second) of Torts § 433B(2)).   Under Ohio law, when multiple wrongdoers each

contribute to a combined harm, courts routinely apply the "substantial factor" test to the issue of causation.[9] Indeed, in such cases the substantial factor test "has found general acceptance" and "is an improvement over the 'but-for' rule." Prosser and Keeton, Law of Torts § 41, p. 267 (5th ed. 1984); *see also* Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts § 189, p. 635 (2nd ed. 2011) (succinctly stating the rule as "all defendants who are substantial factors in the harm are factual causes").

Second, Defendants' proposed instruction adds requirements absent from the pattern instruction concering proximate cause that misstate the law and are not found in the instruction. *See* CV 405.01 Proximate cause [Rev. 2/11/17], 1 CV Ohio Jury Instructions 405.01 ("PROXIMATE CAUSE DEFINED. "(Proximate) (Direct) cause" is an act or failure to act that in the natural and continuous sequence directly produced the (injury) (death) (damages) and without which the (injury) (death) (damages) would not have occurred.").

Third, Defendants propose two separate and unhelpful sentences saying that to find proximate cause, a cause must be "direct" and that if the cause is not "direct" then, Plaintiffs have not met their burden. These proposed instructions do not define or illuminate any term, and make the instruction confusing and overlong. Defendants have also changed their own proposed instruction from stating that the Plaintiffs must prove their conduct was a "proximate cause" to stating that they must show it was a "direct, rather than remote, cause." Because the next sentence, and the rest of the instruction, refer to "proximate cause" as the standard, this change is unwarranted.

Fourth, Defendants are wrong to suggest that the jury should base it determination on whether "a number of steps separate the Defendant's conduct from the nuisance" or whether "the County Governments' theory of liability rests on the independent actions of third or fourth parties." That is not the law. It is merely a distortion of the *Holmes* test and the legal standard under Ohio law, and

suggests to the jury it should focus on other parties, rather than whether the causation standard is met. Courts in Ohio and elsewhere long have held that "[w]here concurrent causes . . . are the immediate and efficient cause of an injury, it is not competent to take one of them away from the other, and say that it and not the other was the proximate cause of the accident." *Keifer v. Cleveland R. Co.*, 8 Ohio App. 272, 278-79 (1917) (quotation marks and citation omitted); *see also Lippoldt v. Cole*, 468 F.3d 1204, 1220 (10th Cir. 2006) ("That conduct of other people may have concurrently caused the harm does not change the outcome as to [defendants].").  The proposed instruction also attempts to interject arguments, such as whether the Counties' injuries are "derivative" of injuries to others, which this Court has already rejected. SeeDoc. #2561.

The instruction should make clear that the touchstone of proximate cause is foreseeability. Proximate cause has been defined as follows: "A person is not responsible for injury to another if his negligence is a remote cause and not a proximate cause. A cause is remote when the result could not have been reasonably foreseen or anticipated as being the natural or probable cause of any injury." *Halloran v. Barnard*, 2017-Ohio-1069, ¶ 5. "Directness" is also a matter for the "legal cause" prong. *See Ohio v. Carpenter*, 2019 WL 181898 (Ohio Ct. App. Jan. 14, 2019); *see also Liriano v. Hobart Corp.*, 170 F.3d 264, 271 (2d Cir. 1999) ("When a defendant's negligent act is deemed wrongful precisely because it has a strong propensity to cause the type of injury that ensued, that very causal tendency is evidence enough to establish a prima facie case of cause-in-fact."); *Brown v. Wal-Mart Stores, Inc.*, 198 F.3d 244 (6th Cir.1999).  Further, under Ohio law, "proximate causation is broader with regard to intentional acts than it is for negligent acts." *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.,* 23 F.Supp.2d 771, 783 (N.D. Ohio 1998) (J. Gwinn); *see also* Restatement (Third) of Torts § 33(b) (2010).

Fifth, Defendants' proposed instruction wrongly states that: "The requirement that Defendant's conduct be a direct cause is distinct from foreseeability.  A finding that [an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse] was foreseeable is not sufficient to find that the Defendant's conduct was the direct cause of that epidemic."  This language is found nowhere in the model instructions and would confuse the jury.  Foreseeability is not mentioned elsewhere in the instruction.  Defendants appear to intend to interject their affirmative superseding cause defense with the elements of plaintiffs' cause of action.  If Defendants wish to assert such a defense, the burden is on them to prove it, and the instructions must so state. *See, e.g., In re Neurontin Mktg. & Sales Practs. Litig. (Kaiser)*, 712 F.3d 21, 45 (1st Cir. 2013); *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 757 (7th Cir. 2011); *Roberts v. Printup*, 595 F.3d 1181, 1189-90 (10th Cir. 2010).  As this Court has recognized, the casual chain alleged is more direct than characterized by Defendants.  *See* Dkt. 1203 at 9; *see also id.* at 10.  Their attempt to heighten the legal standard is particularly inappropriate in a public nuisance case.  On public nuisance claims, "where the welfare and safety of an entire community is at stake, the cause need not be so proximate as in individual negligence cases." *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 497 (E.D.N.Y. 2003); *see also City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 282 (E.D.N.Y 2004).

Finally, Plaintiffs further object to the portion of the proposed instruction that states that: "A cause is a substantial factor if it makes an independent substantial impact in bringing about the injury.  In addition, conduct that is minimal is not sufficiently significant to form the basis of a nuisance."  As explained above, that is not the definition of a substantial factor and misstates the

law.[23]   And, Defendants are wrong to state that "conduct that is minimal is not sufficiently significant to form the basis of a nuisance."   The issue is causation, not the sole "basis of a nuisance," and the issue is not whether "conduct" is minimal, but wheher its impact was negligable. Again, the question is whether the conduct was a substantial factor in causing the nuisance. Defendants improperly to change the standard, which permits the jury to find causation lacking only if conduct had a "negligible effect" in bringing about the harm.  *See* Restatement (Second) of Torts § 431, comment b (1965).

---

[23] In fact, the inquiry can be broken down into two separate questions: (1) whether "the evidence permits a reasonable finding that the defendant's conduct had some effect" in bringing about plaintiff's harm; and (2) "whether the effect was substantial rather than negligible."  Restatement (Second) of Torts § 431, comment b (1965).

### No. 26.  Public Nuisance – Control of Instrumentalities

Finally, to establish its public nuisance claim against any Defendant, each County Government must prove that that Defendant had possession or control of the instrumentality causing [the epidemic of prescription opioid abuse **OR** the epidemic of non-prescription, illegal opioid (*e.g.*, fentanyl and heroin) abuse] at the time it caused the injury.

Authority:  *Kramer v. Angel's Path, LLC*, 882 N.E.2d 46, 52 (Ohio Ct. App. 2007); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002); *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 449 (R.I. 2008).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction Number 32.  As explained in Plaintiffs' objections to Defendants' Proposed Jury Instruction Number 28, Defendants attempt to introduce a requirement found nowhere in the law.  Plaintiffs are not required to show as an element of their claims that "that the Defendant controlled the instrumentalities of the nuisance at the time the damage occurred."  Their proposal is inconsistent with *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002), and the other case-law that they cite as authority.  In *Cincinnati v. Beretta U.S.A. Corp.*, the Ohio Supreme Court rejected the same type of argument defendants attempted to make here, explaining that the plaintiff properly stated a claim by alleging that the defendants marketing, distribution, and sales conduct created the nuisance.  *Id.* at 1143 (explaining that the city did not have to meet an added requirement of control over firearms involved in that case).  Additionally, nothing in the Ohio pattern instructions would support such an added requirement.  Defendants also do not propose to define "instrumentality" and their instruction would confuse the jury, in adition to being inconsistent with Ohio law.  Nothing in

Kramer v. Angel's Path, L.L.C., 2007-Ohio-7099, ¶¶ 15-19, 174 Ohio App. 3d 359, 366–68, 882 N.E.2d 46, 52–53, supports their argument.

And, as this Court has previously explained, there are three elements to this cause of action (not the four Defendants propose), and Plaintiffs must simply show:

> (1) intentional or unlawful conduct or omission by the defendant; (2) that unreasonably interferes with a right common to the general public; and (3) a causal relationship between a defendant's conduct and a plaintiff's injury.

Doc. 2572 at 2-3 (citing *Cincinnati v. Beretta U.S.A.,* 768 N.E.2d 1136, 1142 (Ohio 2002) and *City of Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *3 -*4 (Ohio Ct. App. March 21, 2013)).

Further, Defendants' proposal that the jury receive two sets of instructions on two separate nuisances would improperly and needlessly complicate the instructions and threaten to confuse the jury.  The law on public nuisance does not vary according to what Defendants argue Plaintiffs claim is a nuisance and Defendants mischaracterize Plaintiffs' allegations.  And, plaintiffs, are entitled to frame, and prove, their own allegations.  Accordingly, the language "[an epidemic of prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse]" should be deleted each time it appears.  The instruction should simply refer to a "public nuisance."

## No. 27.  Public Nuisance – Statutorily Authorized Conduct

You may not find a nuisance based on conduct that you conclude was fully authorized by a statute or regulation.

Authority:  *Brown v. Scioto Cty. Bd. of Commrs.*, 622 N.E.2d 1153, 1159 (Ohio 1993).

**Plaintiffs' Objections:**

Plaintiffs object to Defendants' Proposed Jury Instruction Number 33—Statutorily Authorized Conduct.  As described below, Defendants make no showing whatsoever that their conduct at issue was fully authorized by any statute or regulation.  This proposed instruction therefore is inapposite and should be discarded in its entirety.

Defendants' Proposed Jury Instruction No. 33 states, apropos of nothing, that the jury "may not find a nuisance based on conduct that you conclude was fully authorized by a statute or regulation."  The proposed instruction cites no applicable statute or regulation that allegedly "fully authorized" Defendants' promotional and distribution conduct at issue.  When the Court addressed this issue in denying Defendants' motion for summary judgment on public nuisance, it held that "the record demonstrates material issues of fact as to whether each Defendant complied with CSA obligations . . . ."  *In re National Prescription Opiate Litig.*, No. 1:17-md-2804, ECF No. 2578 at 8; *see also* ECF No. 2483 at 27-32 (denying Plaintiffs' motion for partial summary adjudication for violations of the CSA, finding that "Clearly, the parties' evidence on these issues presents factual disputes.").  Moreover, in addressing the CSA, the Court also squarely rejected Defendants' arguments about what conduct the Act and its implementing regulations authorize, holding instead that DEA regulations *prohibit* distributors from shipping orders they identify as suspicious without any further determination that the order is unlikely to be diverted to illegal channels.  ECF No. 2578 at 12-13.  Absent any demonstration of a statute or regulation

that "fully authorized" Defendants' conduct at issue, this proposed instruction is inapposite and should be discarded in its entirety.

### No. 28.  Public Nuisance – Apportionment [PROPOSED ONLY BY CERTAIN DEFENDANTS]

If you find that one or both County Governments have established by the greater weight of the evidence that one or more Defendant is liable for creating a public nuisance, you will be asked to decide what percentage of the overall harm should be attributed to each of those Defendants, to the County Governments themselves, and to individuals and other entities that are not parties in this trial but that may have substantially contributed to causing [the epidemic of prescription opioid abuse **OR** the epidemic of non-prescription, illegal opioid (*e.g.*, fentanyl and heroin) abuse].[24]

Authority:  *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 2572.

***Plaintiffs' Objections:***

Plaintiffs object to Certain Defendants' Proposed Jury Instruction Number 34—Absolute Public Nuisance—Apportionment.  As described below, this proposed jury instruction addresses an issue of Ohio law that this Court and other courts in Ohio assign to the Court itself, not to the jury, and does so incompletely and therefore incorrectly in any event by failing to identify the applicable burdens and standards of proof with respect to apportionment.

The specific portions of Certain Defendants' proposed instruction to which Plaintiffs object are as follows:

- The proposed instruction assigns to the jury a question—apportionment of harm—that the Court already has squarely held is for the Court to decide; and

- Lines 3-5: omit the applicable burdens and standards of proof to be applied in making the apportionment determination.

---

[24] In light of this Court's ruling that it would decide public nuisance remedies, Teva USA, Cephalon, Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Warner Chilcott, Actavis South Atlantic, Actavis Elizabeth, Actavis Mid Atlantic, Actavis Totowa, Actavis Kadian, Actavis Labs UT, and Actavis Labs FL, do not join in this proposed instruction and oppose submission of apportionment to the jury.

Defendants' Proposed Jury Instruction No. 34 improperly assigns to the jury a question—apportionment of harm—that the Court already squarely has held, based on controlling Ohio Supreme Court case law, is for the Court to decide.  *See In re National Prescription Opiate Litig.*, No. 1:17-md-2804, ECF No. 2572 at 6-7 ("[D]etermining whether harm is capable of apportionment is [a] 'judicial function'") (quoting *Pang v. Minch*, 559 N.E.2d 1323-24 n.4 (Ohio 1990)).  This proposed jury instruction therefore should be discarded in its entirety as inapposite.

Furthermore, even if apportionment of harm were a jury question, Defendants' Proposed Jury Instruction No. 34 also omits the applicable burdens and standards of proof on this question. Here, too, the Court already has held, based on the same controlling Ohio Supreme Court case law, that once Plaintiffs have satisfied their burden of proving that they suffered a single injury for which the conduct of each Defendant was a "'substantial factor in producing the harm,'" then "'a prima facie evidentiary foundation has been established supporting joint and several judgments against the defendants'" and the "'burden of persuasion shifts to the defendants to demonstrate that the harm produced by their separate tortious acts is capable of apportionment.'" *In re National Prescription Opiate Litig.*, No. 1:17-md-2804, ECF No. 2572 at 7 (quoting *Pang*, 559 N.E.2d at 1323-24).  The omission of these burdens and standards of proof would render the proposed instruction incorrect even if it did address a question for the jury, which it does not.

Further, Defendants' proposal that the jury receive two sets of instructions on two separate nuisances would improperly and needlessly complicate the instructions and threaten to confuse the jury.  The law on public nuisance does not vary according to what Defendants argue Plaintiffs claim is a nuisance and Defendants mischaracterize Plaintiffs' allegations.  And, plaintiffs, are entitled to frame, and prove, their own allegations.  Accordingly, the language "[an epidemic of

prescription opioid abuse **OR** an epidemic of non-prescription, illegal opioid abuse]" should be deleted each time it appears. The instruction should simply refer to a "public nuisance."

## No. 29.  Statute of Limitations - General

If you find that a County Government has proven its federal RICO claims for damages, its OCPA claims, or its civil conspiracy claims[25] against a Defendant by the greater weight of the evidence, you must determine whether the statute of limitations applies.

The applicable statute of limitations is different for different claims.  In addition, not all claims are asserted against all Defendants, and the claims were brought against different Defendants at different times.  For ease of reference, the applicable dates and applicable limitations periods are summarized in the chart at the end of these instructions.

Each Defendant has the burden of proving by the greater weight of the evidence that the County Governments' claims against it accrued before a certain date.  I will instruct you to decide the accrual of certain claims based on when the County Governments learned certain facts.  You must find that the County Government knew a particular fact if one of the County Government's agents, employees, officers, or elected officials knew or learned the fact in the course of that individual's duties.

Authority:  Restatement (Third) of Agency § 5.03.

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 36.  Specifically, Plaintiffs object to the proposed SOL reference chart. There is no need for a separate chart. The relevant dates for application of the statute of limitations to any particular claim should simply be set forth

---

[25] Given the Court's ruling that no statute of limitations applies to the County Governments' absolute common law nuisance, statutory nuisance, Federal RICO claims for equitable relief, or civil conspiracy claims based upon those underlying claims, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2568, Defendants do not propose a jury instruction on the statute of limitations for those claims at this time.  But Defendants continue to note for the record their objection to the Court's ruling on those claims as an erroneous interpretation of the law and note that it is their position that the jury should be instructed on Defendants' statute of limitations defense on both nuisance claims, Federal RICO claims for equitable relief, and also civil conspiracy based upon those underlying claims.

within the relevant instruction for that claim. Moreover, as the Court has already held, there are significant differences between the manner in which the statute of limitations applies to RICO and OCPA claims (as well as conspiracy claims based on those underlying violations); a chart, by not clarifying those distinctions may well mislead the jury.

Plaintiffs also object to the instruction's failure to address the absence of a statute of limitations applicable to Plaintiffs' public nuisance claims. If the jury is to be told that it must consider the application of the statute of limitations to the RICO, OCPA, and conspiracy claims, it should also be informed that no statute of limitations applies to nuisance.

Plaintiffs also object to the portion of the proposed instruction that states: "I will instruct you to decide the accrual of certain claims based on when the County Governments learned certain facts.  You must find that the County Government knew a particular fact if one of the County Government's agents, employees, officers, or elected officials knew or learned the fact in the course of that individual's duties."  First, this proposed instruction improperly conflates the different requirements for different claims and is unnecessary.  And, there is no need to state that claims "accrue" when the Counties "learned certain facts," as the Court will explain the requirements for claim, which differ.  Second, Defendants are wrong to claim that if a single one of a County's "agents, employees, officers, or elected officials," knew a "fact" then knowledge must be imputed to the County.  The proposed instruction would confuse the jury, as different individuals may have heard different things and different times, and the proposed instruction could suggest that the jury must accept one side of conflicting evidence.  Further, "courts have not found constructive knowledge based upon reports of tangentially related violations." *Montgomery v. Louis Trauth Dairy, Inc.*, Case No. C–1–93–553, 1996 WL 343440 (S.D. Ohio, 1996) (explaining that, "[f]or example, in *Board of Education of Evanston v. Admiral Heating,* 94 F.R.D. 300 (N.D.Ill. 1982),

the court determined that rumors and news accounts of bid-rigging in other parts of the state did not amount to constructive knowledge").  More importantly, the proposed instruction is legally incorrect.  Defendants fail to cite any pattern instructin or case-law to support this proposition.  And, their reliance on the Restatement (Third) of Agency § 5.03 is misplaced.  As they are well aware from the summary-judgement briefing, not all information obtained by agents, or even agencies, of the Plaintiff Counties may be used for civil litigation.  *See* PSJ4 SOL Opp. at 23 (discussing restrictions on the use of materials gathered in criminal grand jury proceedings, OARRS data, for example).  Similarly, local governments may not be charged with the knowledge of their law enforcement personnel unless the knowledge arises out of matters "which might come within the scope of [their] duties." *City of Cleveland v. Payne*, 72 Ohio St. 347, 357 (1905).

## No. 30.  Statute of Limitations – OCPA

The limitations period for an OCPA claim is within five years of:  (1) When a plaintiff discovered, or reasonably should have discovered, its injury.  A plaintiff need not know the full extent of its injuries or what or who might have caused the injuries; (2) The termination of the alleged unlawful conduct; or (3) Within any longer statutory period of limitations that may be applicable.

For determination of whether the third category applies in this case, you must determine whether Plaintiffs' claims accrued before May 30, 2012.

Authority:  *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *Isaak v. Trumbull*, 169 F.3d 390, 399 (6th Cir. 1999); *Doe v. Archdiocese of Cincinnati*, 849 N.E.2d 268, 278 (Ohio 2006); Ohio Rev. Code § 2923.34(J).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 37.  This insruction misstates the law and improperly interjects defendants' arguments.

Specifically, Plaintiffs object to the portion of the proposed instruction that states that the limitations period begins "When a plaintiff discovered, or reasonably should have discovered, its injury.  A plaintiff need not know the full extent of its injuries or what or who might have caused the injuries" and which fails to tell the jury that the limitations period is the *later* of three options. Defendants' proposed instruction is also incorrect and confusing in stating that "For determination of whether the third category applies in this case, you must determine whether Plaintiffs' claims accrued before May 30, 2012."  This is both incorrect and confusing in using the legal term "accrue," which will not be familiar to a layperson, unnecessarily and without explaining what it means, as well as in referring to a "third category" without clearly delineating which that is.

- 110 -

. *See* Doc. 2568 at 6-7 ("Defendants insist a simple five-year limitations period applies, but that is incorrect."). OPCA plainly "allows an action within five years of the latest of three dates." *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 29 F. Supp. 2d 801, 809 (N.D. Ohio 1998).

The statute of limitations provision within the OCPA, Ohio Rev. Code § 2923.34(J), reads as follows:

> Notwithstanding any other provision of law providing a shorter period of limitations, a civil proceeding or action under this section may be commenced at any time within five years after the unlawful conduct terminates or the cause of action accrues or within any longer statutory period of limitations that may be applicable. If a criminal proceeding, delinquency proceeding, civil action, or other proceeding is brought or intervened in by the state to punish, prevent, or restrain any activity that is unlawful under section 2923.32 of the Revised Code, the running of the period of limitations prescribed by this division with respect to any civil action brought under this section by a person who is injured by a violation or threatened violation of section 2923.32 of the Revised Code, based in whole or in part upon any matter complained of in the state prosecution, action, or proceeding, shall be suspended during the pendency of the state prosecution, action, or proceeding and for two years following its termination.

Given the statute's focus on the later of the three dates, the Court should not require the jury to determine whether the earliest possible limitations period is satisfied. The jury may and should properly begin with the latest period of limitations, or alternatively, may simply be instructed that if Defendants do not show that Plaintiffs brought their claims within *any* of the applicable time periods, Defendants have failed to prove their affirmative defense. Plaintiffs' Proposed Instruction No. 43 accurately sets forth the law on this issue.

Moreover, this Court has not accepted Defendants' incorrect attempts to impose an "injury discovery rule" on Plaintiffs' OCPA claims, nor has it held that the only aspect of injury required to be proved is "the problem of opioid misuse and abuse in the counties." *See* Doc. 2568.

Plaintiffs' Proposed Instruction No. 43 accurately sets forth the accrual date; *see also State ex rel. County of Cuyahoga v. Jones Lang Lasalle Great Lakes Co.*, 2017-Ohio-7727, ¶ 94 (explaining, in assessing OCPA claims, that "[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered a possible cause of action.") (internal quotation marks omitted).

Finally, for the same reasons set forth above, Defendants' language stating that the limitations period runs from May 30, 2012 misstates the law and both wrongly and arbitrarily shortens the applicable limitations period.  None of the three cases Defendants cite (only one of which even involved OCPA) supports their proposed instruction, which should be rejected.

## No. 31.  Statute of Limitations – Federal RICO

The limitations period for a federal RICO claim for damages is four years.  A federal RICO claim for damages accrues when a plaintiff discovers, or reasonably should discover, its injury.  A plaintiff does not need to know anything else about its claim for the claim to accrue.  For purposes of the County Governments' RICO claims, it does not matter when the County Governments learned about the full extent of their injuries or what or who might have caused their injuries.  Each County Government's claims accrued when the County Government knew, or should have known, of its injuries.

If you find that a RICO violation by any Defendant caused either County Government (1) injuries that it reasonably should have discovered before the RICO limitations period, and (2) separate injuries that it could reasonably discover only within the limitations period, then you must make the following determination: whether the injuries within the limitations period arose from (a) the same conduct that caused the injuries outside the limitations period or (b) different conduct.

Authority:  *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987); *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *Isaak v. Trumbull*, 169 F.3d 390, 399 (6th Cir. 1999); *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156, (1987); *Grimmett v. Brown*, 75 F.3d 506, 513 (9th Cir. 1996); *Trollinger v. Tyson Foods, Inc.*, 2006 WL 319022 (E.D. Tenn. 2006); *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2568 at 9 (statute of limitations ruling).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 38.  Specifically, Plaintiffs object to the portion of the proposed instruction that states:

A federal RICO claim for damages accrues when a plaintiff discovers, or reasonably should discover, its injury.  A plaintiff does not need to know anything else about its claim for the claim to accrue.  For purposes of the County Governments' RICO claims, it does not matter when the County Governments learned about the full extent of their injuries or what or who might have caused their injuries.  Each County Government's claims accrued when the County Government knew, or should have known, that there was a problem of opioid abuse in its county.

This proposed instruction is inconsistent with the law and merely reiterates Defendants' arguments.  On this issue, the Court cited favorably to *Isaak v. Trumbull*, 169 F.3d 390, 399 (6th Cir. 1999), which states that accrual is based on "storm warnings," *i.e.,* indicia of fraud.  In addition, for the same reasons set forth in Plaintiffs' Objections to Defendants' Proposed Instruction No. 37, Defendants proposed instructions improperly conflates a Plaintiff's awareness "that there was a problem of opioid abuse in its county" with awareness that the Plaintiff had been injured by Defendants' conduct; they are not the same thing.

**No. 32.  Statute of Limitations – Civil Conspiracy**

[PLACEHOLDER FOR TOLLING PERIODS PENDING PLAINTIFFS' IDENTIFICATION OF VALID PREDICATE ACTS.]  A civil conspiracy claim accrues when a Defendant commits the unlawful act that causes injury.  Whether a plaintiff knows of the unlawful conduct or the alleged injury does not matter.  In this case, each County Government's claims accrued against a Defendant when that Defendant committed an unlawful act that caused injury to the County Governments.

Authority:  *LGR Realty, Inc. v. Frank & London Ins. Agency*, 98 N.E.3d 241, 247 (Ohio 2018); *Inv'rs REIT One v. Jacobs*, 546 N.E.2d 206, 210 (Ohio 1989).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 39.  Specifically, Plaintiffs object to the portion of the proposed instruction that states:

> A civil conspiracy claim accrues when a Defendant commits the unlawful act that causes injury.  Whether a plaintiff knows of the unlawful conduct or the alleged injury does not matter.  In this case, each County Government's claims accrued against a Defendant when that Defendant committed an unlawful act that caused injury to the County Governments.

This proposed instruction misstates the law.  *See* Plaintiffs' Proposed Instruction No. 43. Indeed, as explained in Plaintiffs' Opposition to Defendants' summary judgment motion regarding statutes of limitations, the same *LGR Realty* case Defendants cite recognizes a discovery rule.  Further, contrary to Defendants' characterization, this Court has already ruled that the limitations period for the civil conspiracy claim, to the extent that it is based on the same conduct as in the OCPA and RICO claims, is the same as for those claims.  *See* Doc. 2568 at 24. Likewise, to the extent that the Civil Conspiracy claim is based on Defendants' conduct in creating a public nuisance, the applicable period is four (4) years.

## No. 33.  Statute of Limitations – Tolling Doctrines

If you find that any of the County Governments' claims accrued before the limitations period, then you must decide whether the statute of limitations was tolled.

<u>Authority</u>:  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 706, 722 (N.D. Ohio 2014); *Caudell v. City of Loveland*, 2005 WL 1972547, at *3 (S.D. Ohio Aug. 15, 2005); *Saba v. Mooney*, 1993 WL 551524, at *2 (Ohio Ct. App. Dec. 30, 1993).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 40's use of the legal term of art "tolled" without clarification or explanation for the jury. The jury instruction should use lay language to make clear that the statute of limitation may, under certain circumstances, be extended or the running of the statute postponed.

## No. 34.  Statute of Limitations – Fraudulent Concealment

If a County Government proves, by the greater weight of the evidence, that the fraudulent concealment doctrine applies, then the statute of limitations is tolled as to that County.  To toll a statute of limitations based on fraudulent concealment, each County Government must prove, as to each Defendant: (1) wrongful concealment by the Defendant; (2) a failure to discover facts on which a claim is based within the limitations period; and (3) a diligent effort to discover those facts until such facts are discovered.

Fraudulent concealment requires more than mere non-disclosure.  Each County Government must prove, as to each Defendant, that the Defendant was guilty of some affirmative act of fraudulent concealment—such as fraudulent statements, hiding evidence, or promising not to plead the statute of limitations in a lawsuit—that frustrated discovery of the Counties' claims despite each County Government's diligence in discovering their claims.

An injured party has a positive duty to use diligence in discovering its claim(s) within the limitations period.  Any fact that should raise his or her suspicion is the same as actual knowledge of his or her entire claim(s).  The ability to know something has the same effect as knowledge itself.[26]

Authority:  *Dayco Corp. v. Firestone Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975); *City of Cuyahoga Falls v. Johnson Controls, Inc.*, 2019 WL 1116006, at *4 (N.D. Ohio Mar. 11, 2019); *Gates v. Ohio Savings Bank Ass'n*, 2007 WL 2713897, at *4 (N.D. Ohio Sept. 17, 2007); *Metz v. Unizan Bank*, 2006 WL 8427066 (N.D. Ohio Feb. 28, 2006).

---

[26] The Court has previously held that Fraudulent Concealment cannot toll marketing-based claims.  *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, E.C.F. 2568, at 22.

*Plaintiffs' Objections:*

Plaintiffs object to Defendants' Proposed Jury Instruction No. 41. First, specifically, Plaintiffs object to the portion of the proposed instruction that states that the "County Government must prove, as to each Defendant" the conduct showing fraudulent concealment." This is legally incorrect, as once a conspiracy is established, "[f]raudulent concealment...may be established through the acts of co-conspirators." *In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968, 980 (N.D. Ohio 2015) (citing *In re Scrap Metal Antitrust Litig.*, 527 F. 3d 517, 538 (6th Cir. 2008).

Second, Plaintiffs object to the portion of the proposed instruction which states: "Fraudulent concealment requires more than mere non-disclosure." While that is usually the case, as Plaintiffs noted in their proposed instruction: "Where there is a duty to disclose, silence alone may constitute concealment."

Plaintiffs further object to the portion of the proposed instruction which reads: "Each County Government must prove, as to each Defendant, that the Defendant was guilty of some affirmative act of fraudulent concealment—such as fraudulent statements, hiding evidence, or promising not to plead the statute of limitations in a lawsuit—that frustrated discovery of the Counties' claims despite each County Government's diligence in discovering their claims." In particular, Plaintiffs object to the use of criminal law terminology, such as "guilty," to describe the proof required. More accurate is the statement in Plaintiffs' proposed instruction: "Plaintiffs must prove by a preponderance of the evidence that Defendants engaged in a course of conduct or committed an affirmative act to conceal their wrongdoing."

In addition, Plaintiffs object to the portion of the proposed instruction which states: "An injured party has a positive duty to use diligence in discovering its claim(s) within the limitations

period.  Any fact that should raise his or her suspicion is the same as actual knowledge of his or her entire claim(s).  The ability to know something has the same effect as knowledge itself."  First, the requirement is "reasonable diligence," not "diligence."  *See Illinois Central RR Co. v. Guy*, 682 F.3d 381, 394 n.39 (5th Cir. 2012); *accord Dayco Corp. v. Firestone Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975); *City of Cuyahoga Falls v. Johnson Controls, Inc.*, 2019 WL 1116006, at *4 (N.D. Ohio March 11, 2019).  Second, Defendants misstate the legal standard in claiming that: "Any fact that should raise his or her suspicion is the same as actual knowledge of his or her entire claim(s)," and that, "[t]he ability to know something has the same effect as knowledge itself."  The decision on which they rely did not suggest that this added to the elements of fraudulent concealment or define due diligence.  The same case-law on which defendants rely show that there are only three, straightforward elements to establish fraudulent concealment.  *See, e.g.*, *City of Cuyahoga Falls v. Johnson Controls, Inc.*, 5:18-CV-1130, 2019 WL 1116006, at *4 (N.D. Ohio Mar. 11, 2019); Plaintiffs' Proposed Instruction No. 43.

Finally, Plaintiffs object to the portion of Defendants' proposed instruction which states:

> To toll a statute of limitations based on fraudulent concealment, each County Government must prove, as to each Defendant: (1) wrongful concealment by the Defendant; (2) a failure to discover facts on which a claim is based within the limitations period; and (3) a diligent effort to discover those facts until such facts are discovered.

to the extent that it omits the word "operative."  Defendants previously circulated a version of the same proposed instruction in which the second point in the list stated "a failure to discover operative facts on which a claim is based within the limitations period."  The same "operative facts" language appears in case-law they cite as authority.  This clarifying language should not be omitted, and Plaintiffs are troubled by the change, which may invite arguments to confuse the jury.

## No. 35.  Statute of Limitations – Continuing Violations Doctrine[27]

If a County Government proves, by the greater weight of the evidence, that the continuing violations doctrine applies, then the statute of limitations is tolled.  To toll a statute of limitations based on continuing violations, the County Governments must prove by the greater weight of the evidence, as to each Defendant, that (1) the Defendant engaged in continuing wrongful conduct; (2) injury to the plaintiff accrued continuously; and (3) had the Defendant at any time ceased its wrongful conduct, further injury would have been avoided.

The continuing violations doctrine applies where new harm occurs on a continuing basis due to a continuing course of conduct.  The continuing violations doctrine does not apply where the Defendant committed repetitive discrete violations, each of which would independently support a cause of action.  The continuing violations doctrine does not apply merely because one or both of the County Governments suffer ongoing effects from an act or acts committed before the applicable limitations period.

If you find that the continuing violations doctrine applies to toll the County Governments' claims, you may award the County Governments only those damages that they incurred within the applicable limitations period and not for damages incurred before the applicable limitations period.

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 42. In particular, Plaintiffs object to the portion of the proposed instruction that fails to explain that if the jury  finds that Plaintiffs have proven by a preponderance of the evidence that Defendants engaged in continuing violations, the cause of action shall be deemed to have first accrued at, and not before, the time at

---

[27] Defendants do not agree that the "continuing violations" doctrine, as set forth by the Court in *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, E.C.F. No. 2568, applies to toll any of the County Governments' claims and object to the Court giving this instruction to the jury.

which Defendants ceased engaging in continuing violations.  *See* Plaintiffs' Proposed Instruction No. 43; 66 Ohio Jur. 3d, *Limitations and Laches*, § 58. *Effect of continuing violation on accrual of cause of action and commencement of limitations period* (June 2019) (collecting cases applying doctrine of continuing violations).  Without this instruction, the jury will not know how to apply the doctrine that is being defined for it.

Plaintiffs further object to the second paragraph of the proposed instruction, which reads: "The continuing violations doctrine applies where new harm occurs on a continuing basis due to a continuing course of conduct.  The continuing violations doctrine does not apply where the Defendant committed repetitive discrete violations, each of which would independently support a cause of action.  The continuing violations doctrine does not apply merely because one or both of the County Governments suffer ongoing effects from an act or acts committed before the applicable limitations period." This paragraph is both redundant of the prior paragraph in the instruction and also argumentative. It is sufficient to identify the elements Plaintiffs must prove to establish the applicability of the doctrine; it is argumentative to separately and repetitively instruct the jury on circumstances that do not satisfy those same elements.

**Statute of Limitations – Reference Charts**

| Plaintiff | Claim | If you find that Plaintiffs' claims accrued before this date, the statute of limitations defense applies, unless you find a tolling doctrine applies. |
|---|---|---|
| Summit | Federal RICO; Civil Conspiracy based on Federal RICO; and/or Civil Conspiracy[28] based on nuisance[29] (4 years) | December 20, 2013[30] |
| | | April 25, 2014[31] |
| | | May 18, 2014[32] |
| | | March 21, 2015[33] |
| Cuyahoga | Federal RICO; Civil Conspiracy based on Federal RICO; and/or Civil Conspiracy based on nuisance[34] (4 years) | October 27, 2013[35] |
| | | April 25, 2014[36] |
| Summit and Cuyahoga | Ohio Corrupt Practices Act | For an OCPA claim, a claim is timely if filed within 5 years of the later of three dates:[37] |

---

[28] The dates in this chart rely on the Court's statute of limitations ruling.  Dkt. 2568.  Per Defendants' instruction No. 15, Plaintiffs have not adequately identified an unlawful act underlying their civil conspiracy claim.  We reserve the right to alter this instruction accordingly.

[29] Only if compensatory damages are allowed for this claim, which they should not be.

[30] This date applies to the following Defendants: Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Cardinal Health, Inc.; McKesson Corporation; and AmerisourceBergen Drug Corporation.

[31] This date applies to the following Defendants: Walgreen Co.; Walgreen Eastern Co.; Watson Laboratories, Inc.; Actavis LLC; and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc. Neither Plaintiff asserts any federal RICO claims against the Walgreens Defendants.

[32] This date applies to the following defendants: Henry Schein, Inc.; and Henry Schein Medical Systems, Inc.  Neither Plaintiff asserts a federal RICO claim against the Schein Defendants. The Schein Defendants are parties only in the Summit County lawsuit.

[33] This date applies to the following Defendants: Warner Chilcott Company, LLC; Actavis South Atlantic LLC; Actavis Elizabeth LLC; Actavis Mid Atlantic LLC; Actavis Totowa LLC; Actavis Kadian LLC; Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City; and Actavis Laboratories FL, Inc., f/k/a Watson Laboratories, Inc.-Florida.

[34] Only if compensatory damages are allowed for this claim, which they should not be.

[35] This date applies to the following Defendants: Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Cardinal Health, Inc.; McKesson Corporation; and AmerisourceBergen Corporation.

[36] This date applies to Walgreen Co.; Walgreen Eastern Co.  Neither Plaintiff assert any federal RICO claims against the Walgreens Defendants.

[37] Neither Plaintiff asserts any OCPA claims against the Schein or Walgreens Defendants.

| | ("OCPA") and Civil Conspiracy based on OCPA | (1) after Plaintiffs knew, or reasonably should have known, that they were injured; <br> (2) after the alleged unlawful conduct terminates or <br> (3) within any longer statutory period of limitations that may be applicable.  (For the third category, you must decide whether Plaintiffs' claims accrued before May 30, 2012 or not.) |
|---|---|---|

*Plaintiffs' Objections:*

Plaintiffs object to the "reference charts" in their entirety because, for the reasons set forth in Plaintiffs' Objections to Defendants' Proposed Instructions 37-39, they fail to accurately set forth the relevant dates and are unnecessary and because they are potentially confusing.  The jury should simply be instructed as to the relevant filing dates and applicable limitations periods and tolling doctrines, as set forth in Plaintiffs' Proposed Instruction No. 43.  In addition, the amended complaints filed by the Counties in April 2018 made clear the Counties were intending to proceed against all relevant Allergan/Actavis subsidiaries, and the delay in naming additional entities only occurred due the parties understanding that they were already part of the case and the Actaivs and Allergan Defendants' delay in disclosing their identities.  Under the circumstances, thes claims should relate back to the date of the April 2018 filings.[38]

---

[38] Defendants have also made changes to this proposed instruction from the version they previously circulated that are difficult to follow.  Plaintiffs reserve the right to further object to any changes from the earlier version that may have been unclear (and which further illustrate why this proposed instruction is confusing and should not be used).

### No. 36.  Preemption – General

During this case you have heard evidence about the role of the FDA and DEA in regulating the conduct of the Defendants.  I instruct you that FDA or DEA action or inaction is not dispositive, but is a factor you may consider in your deliberations.

In addition, because of the authority of those agencies and as a matter of federal law, there are certain kinds of conduct for which you may not impose liability.

Authority:  *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 538 (6th Cir. 1993).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 43 and, more generally, to any and all instructions about preemption. First, the Supreme Court has recently held that preemption is a question of law to be decided by the Court, not a question of fact to be decided by a jury. ***See Merck, Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).** It is therefore inappropriate to instruct the jury on matters related to preemption. Second, the Court has already ruled against Defendants' various preemption defenses, both on motions to dismiss and on summary judgment. *See* ECF 2565 (Opinion and Order re Preemption) at 8-22; *see also id.* at 3-7 (discussing ECF 1025, 1499, 1500 (Reports and Recommendations on Motions to Dismiss)). Defendants should not be entitled to relitigate the Court's rulings through jury instructions. Finally, Defendants have failed to establish a factual foundation to support any of their purported preemption defenses; no instruction could be appropriate even if one were permitted (which it is not) unless and until an adequate foundation has been laid. *See*, *e.g.*, *Albrecht*, 139 S. Ct. at 1679 ("'The existence of a hypothetical or potential conflict is insufficient to warrant the preemption of the state statute.'") (quoting *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982)). And,

especially in light of the Court's rejection of Defendants' preemption arguments on summary judgment, it is clear that Defendants will be unable to satisfy that burden.

### No. 37.  Preemption – Impossibility

You may not hold any manufacturer responsible for statements that were consistent with the labels of their FDA-approved medicines.  In addition, you cannot find against Manufacturers for failing to include statements in their marketing materials regarding the correct dosage and duration of treatments.

Authority: 21 U.S.C. § 355; 21 U.S.C. § 352(f)(2); 21 C.F.R. § 201.80; *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014); *Wyeth v. Levine*, 555 U.S. 555 (2009), *Utts v. Bristol-Myers Squibb Co.*, 2017 WL 1906875 (S.D.N.Y. May 8, 2017); *In re Nat'l Prescription Opiate Litig.* (*Muscogee*) (hereinafter "*Muscogee*"), 1:18-op-45459, ECF No. 109, at 30, Report and Rec.; *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 2565, at 5.

**Plaintiffs' Objections:**

Plaintiffs object to Defendants' Proposed Jury Instruction No. 44 and, more generally, to any and all instructions about preemption. First, the Supreme Court has recently held that preemption is a question of law to be decided by the Court, not a question of fact to be decided by a jury. ***See Merck, Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).** It is therefore inappropriate to instruct the jury on matters related to preemption. Second, the Court has already ruled against Defendants' various preemption defenses, both on motions to dismiss and on summary judgment. *See* ECF 2565 (Opinion and Order re Preemption) at 8-22; *see also id.* at 3-7 (discussing ECF 1025, 1499, 1500 (Reports and Recommendations on Motions to Dismiss)); *id.* at 8 (rejecting preemption defenses based on labeling and promotion). Defendants should not be entitled to relitigate the Court's rulings through jury instructions. Finally, Defendants have failed to establish a factual foundation to support any of their purported preemption defenses; no instruction could be appropriate even if one were permitted (which it is not) unless and until an adequate foundation has been laid. *See*, *e.g.*, *Albrecht*, 139 S. Ct. at 1679 ("'The existence of a

hypothetical or potential conflict is insufficient to warrant the preemption of the state statute.'")
(quoting *Rice v, Norman Williams Co.*, 458 U.S. 654, 659 (1982)). And, especially in light of the
Court's rejection of Defendants' preemption arguments on summary judgment, it is clear that
Defendants will be unable to satisfy that burden.

**No. 38.  Preemption – Fraud on FDA/DEA**

You may not base any part of your verdict on a claim that any Defendant committed fraud on the DEA or FDA, or otherwise caused the County Governments' injuries by misleading the DEA or FDA.

Authority:  *In Re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 2483, at 5-7; 21 U.S.C. § 821; 21 U.S.C. § 823(a)(2)-(6), (b), (d), (e)(2)-(5); 21 U.S.C. § 824(a)(4); 21 C.F.R. §§ 1301.71-.77; *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 45 and, more generally, to any and all instructions about preemption. First, the Supreme Court has recently held that preemption is a question of law to be decided by the Court, not a question of fact to be decided by a jury. ***See Merck, Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).** It is therefore inappropriate to instruct the jury on matters related to preemption. Second, the Court has already ruled against Defendants' various preemption defenses, both on motions to dismiss and on summary judgment. *See* ECF 2565 (Opinion and Order re Preemption) at 8-22; *see also id.* at 3-7 (discussing ECF 1025, 1499, 1500 (Reports and Recommendations on Motions to Dismiss)); *id.* at 9 (rejecting preemption defenses based on alleged claim of fraud on the FDA). Defendants should not be entitled to relitigate the Court's rulings through jury instructions. Finally, Defendants have failed to establish a factual foundation to support any of their purported preemption defenses; no instruction could be appropriate even if one were permitted (which it is not) unless and until an adequate foundation has been laid. *See*, *e.g.*, *Albrecht*, 139 S. Ct. at 1679 ("'The existence of a hypothetical or potential conflict is insufficient to warrant the preemption of the state statute.'")

(quoting *Rice v, Norman Williams Co.*, 458 U.S. 654, 659 (1982)). And, especially in light of the Court's rejection of Defendants' preemption arguments on summary judgment, it is clear that Defendants will be unable to satisfy that burden.

### No. 39.  Preemption – Generics

Federal law requires generic medicines to be the same as their branded equivalent medicine in every significant way.  It also prevents generic manufacturers from providing warnings that would suggest a difference between the generic medicine and its branded equivalent.  As a result, in deciding whether or not any manufacturer of generic opioid medicines is liable for any of the County Governments' claims, you cannot consider a theory that any generic manufacturer failed to warn, disclose or communicate information, or correct misimpressions in the marketplace about their generic medications.

Authority:  *Muscogee*, 1:18-op-45459, ECF No. 109, at 42; *In re Nat'l Prescription Opiate Litig.* (*Blackfeet Tribe*) (hereinafter, "*Blackfeet*"), 1:18-op-45749, ECF No. 56, at 15; *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 1680 (adopting relevant portions of R&R); 21 U.S.C. § 355(j)(2)(A); *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014); *Mut. Phar. Co., v. Bartlett*, 570 U.S. 472, 488 (2013); *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 612, 618 (2011); *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 935-36 (6th Cir. 2014); *Strayhorn v. Wyeth Pharma.*, 737 F.3d 378, 391 (6th Cir. 2014).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 46 and, more generally, to any and all instructions about preemption. First, the Supreme Court has recently held that preemption is a question of law to be decided by the Court, not a question of fact to be decided by a jury. ***See Merck, Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).** It is therefore inappropriate to instruct the jury on matters related to preemption. Second, the Court has already ruled against Defendants' various preemption defenses, both on motions to dismiss and on

summary judgment. *See* ECF 2565 (Opinion and Order re Preemption) at 8-22; *see also id.* at 3-7 (discussing ECF 1025, 1499, 1500 (Reports and Recommendations on Motions to Dismiss)); *id.* at 10-11 (rejecting preemption defenses based on generic drug warnings). Defendants should not be entitled to relitigate the Court's rulings through jury instructions. Finally, Defendants have failed to establish a factual foundation to support any of their purported preemption defenses; no instruction could be appropriate even if one were permitted (which it is not) unless and until an adequate foundation has been laid. *See*, *e.g.*, *Albrecht*, 139 S. Ct. at 1679 ("'The existence of a hypothetical or potential conflict is insufficient to warrant the preemption of the state statute.'") (quoting *Rice v, Norman Williams Co.*, 458 U.S. 654, 659 (1982)). And, especially in light of the Court's rejection of Defendants' preemption arguments on summary judgment, it is clear that Defendants will be unable to satisfy that burden.

### No. 40.  Preemption – Stop Selling or Shipping

Because federal law authorizes manufacturers to sell their FDA-approved medications, and federal law authorizes distributors to distribute opioid medications, you may not hold a manufacturer liable simply because it sold, or did not stop selling, prescription opioid medications approved by the FDA.  Nor can you hold a distributor liable simply because it distributed, or did not stop distributing, prescription opioid medications approved by the DEA and pursuant to DEA registrations and state licenses.

Authority:  *Muscogee*, 1:18-op-45459, ECF No. 109, at 42; *Blackfeet*, 1:18-op-45749, ECF No. 56, at 15, Report and Rec.; *In Re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 1680, Order (adopting relevant portions of R&R); 21 U.S.C. § 355(j)(2)(A); *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014); *Mut. Phar. Co., v. Bartlett*, 570 U.S. 472, 488 (2013); *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 612, 618 (2011); *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 935-36 (6th Cir. 2014); *Strayhorn v. Wyeth Pharma.*, 737 F.3d 378, 391 (6th Cir. 2014).

### *Plaintiffs' Objections:*

Plaintiffs object to Defendants' Proposed Jury Instruction No. 47 and, more generally, to any and all instructions about preemption. First, the Supreme Court has recently held that preemption is a question of law to be decided by the Court, not a question of fact to be decided by a jury. *See **Merck, Sharp & Dohme Corp. v. Albrecht**, **139 S. Ct. 1668, 1679 (2019)**.* It is therefore inappropriate to instruct the jury on matters related to preemption. Second, the Court has already ruled against Defendants' various preemption defenses, both on motions to dismiss and on summary judgment. *See* ECF 2565 (Opinion and Order re Preemption) at 8-22; *see also id.* at 3-7 (discussing ECF 1025, 1499, 1500 (Reports and Recommendations on Motions to Dismiss)); *id.*

at 22 (rejecting preemption defenses based on distribution). Defendants should not be entitled to relitigate the Court's rulings through jury instructions. Finally, Defendants have failed to establish a factual foundation to support any of their purported preemption defenses; no instruction could be appropriate even if one were permitted (which it is not) unless and until an adequate foundation has been laid. *See*, *e.g.*, *Albrecht*, 139 S. Ct. at 1679 ("'The existence of a hypothetical or potential conflict is insufficient to warrant the preemption of the state statute.'") (quoting *Rice v, Norman Williams Co.*, 458 U.S. 654, 659 (1982)). And, especially in light of the Court's rejection of Defendants' preemption arguments on summary judgment, it is clear that Defendants will be unable to satisfy that burden.

### No. 41.  Noerr-Pennington Doctrine

The County Governments have presented evidence that certain Defendants participated in trade associations, including the Healthcare Distribution Alliance ("HDA"), and engaged in lobbying efforts, including supporting legislation (such as the "Marino Bill"), filing amicus briefs, challenging regulations, and opposing certain DEA actions.  The County Governments' conspiracy claims cannot be based on that conduct because it is protected by the First Amendment.

The Constitution and laws of this country give everyone the right, whether acting alone or with others, to petition or appeal to all government agencies for official governmental action.  The law recognizes that, when people petition or appeal to government agencies, they will seek official governmental action that favors them and that may also be unfavorable to others.

The Constitution and laws of this country also give everyone the right, whether acting alone or with others, to participate in groups that take collective action to pursue the interests of their members.  The law also recognizes that, when people participate in groups that take collective action to pursue the interests of their members, they will pursue interests that favor them and that may also be unfavorable to others.

Concerted action by trade associations for the purpose of influencing or promoting official legislative, judicial, or administrative action is protected by the First Amendment and is not "unlawful activity" that can support a conspiracy claim.

If you find that any of the County Governments' injuries were the result of efforts by Defendants merely to participate in a trade association, or to influence or promote official legislative, judicial or administrative action, then your verdict must be for the Defendants as to those injuries.

Authority:  *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140 (1961); *United Mine Works of Am. v. Pennington*, 381 U.S. 657, 671 (1965); *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508-11 (1972); *Horsemen's Benev. & Protective Ass'n v. Penn. Horse Racing Comm'n*, 530 F. Supp. 1098, 1099 (E.D. Pa. 1982); 7 Bus. & Com. Litig. Fed. Cts. § 75:111 (4th ed.); 14 Bus. & Com. Litig. Fed. Cts. § 143:60 (4th ed.).

***Plaintiffs' Objections:***

Plaintiffs object to Defendants' Proposed Jury Instruction No. 48 in its entirety.  Plaintiffs have not attempted to argue that Defendants are liable based merely on participation in trade associations or honest lobbying activity, and the allegations regarding the predicate acts and bases for each claim make that clear.  The elements of each claim, as defined in Plaintiffs' proposed instruction, already adequately protect Defendants and would not permit liablilty to be based solely on protected First Amendment activity.  Defendants' proposed instruction is not only unnecessary, it incorrectly states the law and is argumentative and needlessly repetitive in attempting to portray Defendants' conduct as protected by "[t]he Constitution and laws of this country."  Defendants did not move for summary judgment on this issue, and are wrong to ask the Court, by way of their proposed jury instructions, to make a finding as a matter of law that their conduct was innocent and protected.  Yet, their proposed instruction describes conduct by Defendants and asks the Court to instruct that "conspiracy claims cannot be based on that conduct because it is protected by the First Amendment."

Critically, nowhere in their proposed instruction do Defendants disclose to the jury that lying is no more constitutionally protected when done via trade association or in the lobbying context than it is in other areas.  Defendants ask the Court to instruct, categorically, that

"[c]oncerted action by trade associations for the purpose of influencing or promoting official legislative, judicial, or administrative action is protected by the First Amendment and is not 'unlawful activity' that can support a conspiracy claim" and that if the jury finds "that any of the County Governments' injuries were the result of efforts by Defendants merely to participate in a trade association, or to influence or promote official legislative, judicial or administrative action, then your verdict must be for the Defendants as to those injuries."  This proposed instruction would sweep in conduct that is not protected by the First Amendment or *Noerr-Pennington* doctrine.  *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123-24 (D.C. Cir. 2009) (explaining that Defendants' attempt to invoke *Noerr–Pennington* as protection fails because the doctrine does not protect deliberately false or misleading statements. "[N]either the *Noerr–Pennington* doctrine nor the First Amendment more generally protects petitions predicated on fraud or deliberate misrepresentation."); *see also McDonald v. Smith*, 472 U.S. 479, 484 (1985) ("[W]e are not prepared to conclude . . . that the Framers of the First Amendment understood the right to petition to include an unqualified right to express damaging falsehoods in exercise of that right."); *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 616 (6th Cir. 2009) ("Hartman and Rice assert that Great Seneca and Javitch intentionally misrepresented that Exhibit A was an 'account,' and under the cases cited, it is clear that even assuming there is some First Amendment protection relevant to the FDCPA, such an allegedly false statement is not immunized by the Petition Clause.").

**Proposed Jury Instruction A[39] - RICO Predicate:  21 U.S.C. § 843(a)(4)(A)**

In response to Plaintiffs' instructions, Defendants object that failing to inform DEA of suspicious orders cannot constitute a violation of § 843 or § 1961(1)(D).  Subject to and without waiving our objections to Plaintiffs' proposed jury instructions, Defendants propose the following instruction:

The County governments have allege that Defendants violated Section 843(a)(4)(A), which makes it a crime knowingly or intentionally to omit any material information from any report required to be made, kept, or filed under sections 801–904 and sections 951–971 of Title 21 of the United States Code.  For you to find a Defendant violated this statute, you must find that the County governments have proven that the Defendant omitted material information from a report that was required to be made, kept, or filed by sections 801–904 and sections 951–971 of Title 21.  Informing the Drug Enforcement Administration, or DEA, of a suspicious order of controlled substances placed by a Defendant's customer is not required by those sections.

For you to find a Defendant's violation of section 843(a)(4)(A) qualifies as a predicate racketeering act for a RICO violation, you must find that the County governments have proven that the violation constitutes felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance and that it is punishable under a law of the United States.  Specifically, for you to find a Defendant violated Section 843(a)(4)(A) in a manner that constitutes a RICO predicate under Section 1961(1)(D) you must find that the County governments have proven each and every of the following elements by the greater weight of the evidence:

---

[39] Defendants maintain that the Court's interpretation of the CSA and its regulations, as announced in ECF 2483, is wrong as a matter of law.  In providing these instructions (Defendants' Proposed Instructions A–G), Defendants do not waive their objection to this interpretation or concede its accuracy.

(A) First, the Defendant omitted material information from a report.

(B) Second, the report was required to be made, kept, or filed under sections 801–904

and sections 951–971 of Title 21 of the United States Code;

(C) Third, the Defendant's violation constituted the felonious manufacture, importation,

receiving, concealment, buying, selling, or otherwise dealing in a controlled

substance that is punishable under a law of the United States; and

(C) Fourth, the Defendant violated section 843(a)(4)(A) knowingly or intentionally.

If you are convinced that the County governments proved all of the elements of mail

fraud, wire fraud, or a violation of section 843(a)(4)(A) that satisfies section 1961(1)(D), you

must then consider whether that offense was part of a "pattern of racketeering activity."  If you

are not convinced of any of the elements by the greater weight of evidence, then you cannot find

a violation of RICO.

Authority:  18 U.S.C. 1961; 21 U.S.C. § 843; *United States v. Purpera*, Case No. 7:17-cr-

00079-EKD (W.D. Va.), Jury Instruction No. 21 (modified) (Doc. No. 109, PageID # 543); Sixth

Circuit Pattern Criminal Jury Instructions Ch. 10 (2019) (modified).

**Plaintiffs' Objections:**

Plaintiffs object to the entirety of Defendants' Proposed Instruction A first, and foremost,

because it is untimely.  Moreover, Defendants' proposed instructions improperly defines the

conduct required by the CSA in ways that violate the law and this Court's prior orders

identifying a requirement to identify, report, and halt suspicious orders of controlled substances

under the CSA.  *See* Opinion and Order Regarding Plaintiffs' Summary Judgment Motion

Addressing the Controlled Substances Act, Doc 2483.  Moreover, Defendants provide no legal

support for the instruction that reporting a suspicious order is not required by the CSA.

- 138 -

Defendants' proposed instruction regarding the elements of sections 843 violation are also improper because, while they rely on a model instruction from the W.D. Va., they have included text in that instruction that deviates from the model instruction with no further legal support.

Defendants' citation to Chapter 10 of the Sixth Circuit Pattern Criminal Jury Instruction does not support any of their Proposed Jury Instruction No. 10. Defendants' reliance on Chapter 10 is vague because it fails to specify which specific instruction within Chapter upon which they rely, and Chapter 10 addressed fraud based crimes, without any reference to section 843 of the CSA. It is, therefore, inapplicable to Plaintiffs' Racketeering Activities.

Finally, to address Defendants' newly proposed instruction, Plaintiffs revised their Proposed Instruction No. 12 to include instruction regarding the elements of section 841 and section 843 violations that are based on Sixth Circuit Model Jury Instructions, and an accurate version of the 843 jury instructions Defendants cited.

**Proposed Jury Instruction B - Definition of Suspicious Orders**

Subject to and without waiving our objections to Plaintiffs' proposed jury instructions, Defendants propose the following instruction:

DEA regulations set forth procedures governing the federal registration of manufacturers and distributors of controlled substances pursuant to federal law.  They define a "suspicious order" as follows: "Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency."  This does not mean that a suspicious order will be or is likely to be diverted.  This may be different than the way you or others would define the term "suspicious" in every day usage.  In determining whether an order constitutes a "suspicious order" for purposes of this case, you may use only the DEA regulation definition.  You may not use your own definition of the term "suspicious order."

*Plaintiffs' Objections:*

Plaintiffs object to the entirety of Proposed Objection B, first and foremost, because it is untimely.  Moreover, Defendants' propoesd instruction is duplicative of Plaintiffs' revisions to Proposed Instruction No. 12 which includes the definition of suspicious orders as quoted from 21 C.F.R. § 1301.74.  Everything after Defendants' quote from section 1301.74 of the Code of Federal regulations should be deleted because it is not supported by citation to any model jury instruction or case law and is therefore improper.  Therefore, the Court should not deliver the following portion of Defendants' instruction, if it is inclined to give one at all:

This does not mean that a suspicious order will be or is likely to be diverted.  This may be different than the way you or others would define the term "suspicious" in every day usage.  In determining whether an order constitutes a "suspicious order" for purposes of this case, you may

use only the DEA regulation definition.  You may not use your own definition of the term

"suspicious order."

## Proposed Jury Instruction C- Suspicious Order Monitoring Systems

Subject to and without waiving our objections to Plaintiffs' proposed jury instructions, Defendants propose the following instruction:

DEA regulations set forth procedures governing the federal registration of manufacturers and distributors of controlled substances pursuant to federal law.  They provide for manufacturers and distributors to have, "design and operate a system to disclose" to the manufacturer or distributor "suspicious orders of controlled substances."  The regulation does not specify a particular type of system to be used.  A distributor may "design and operate" any system that discloses to the distributor suspicious orders of controlled substances for consideration by the federal DEA in its registration program.

You have heard evidence that a certain distributor designed and operated a system that was different than the system designed and operated by another distributor.  This is not evidence that a given system failed to comply with any law or regulations.  In determining whether or not the defendants complied with the law, you must ask only whether each distributor "design[ed] and operate[d] a system to disclose" to it suspicious orders, which the DEA considers as part of its registration program.

***Plaintiffs' Objections:***

Plaintiffs object to the entirety of Proposed Instruction C, first and foremost, because it is untimely.  Moreover, Defendants instruction contains many misstatements of law and significant portions of the instruction would have to be deleted or modified in order to confirm this instruction to the Court's prior orders.  Finally, Defendants provide no support for this instruction, which would be more appropriately styled as an affirmative defense, if one existed,

and it misstates the law.  To the extent that Defendants request a reading of this instruction, to

which Plaintiffs object, Plaintiffs request that the following modifications be included:

- DEA regulations set forth procedures governing the federal registration of manufacturers and distributors of controlled substances pursuant to federal law. They provide for manufacturers and distributors to have, "design and operate a system to disclose" to the manufacturer or distributor "suspicious orders of controlled substances."  The regulation does not specify a particular type of system to be used.  A distributor may "design and operate" any system that discloses to the distributor suspicious orders of controlled substances for consideration by the federal DEA in its registration program.

  - Should be revised as - The CSA and DEA regulations set forth procedures governing the federal registration of manufacturers and distributors of controlled substances pursuant to federal law.  They require manufacturers and distributors to "maintain effective controls against diversion" and to "design and operate a system to disclose" to the manufacturer or distributor "suspicious orders of controlled substances."

- You have heard evidence that a certain distributor designed and operated a system that was different than the system designed and operated by another distributor. This is not evidence that a given system failed to comply with any law or regulations.  In determining whether or not the defendants complied with the law, you must ask only whether each distributor "design[ed] and operate[d] a system to disclose" to it suspicious orders, which the DEA considers as part of its registration program.

  - Should be revised as - You have heard evidence that certain Defendants designed and operated systems that were different than the systems designed and operated by other Defendants.  By itself, this is not evidence that any particular Defendants' system failed to comply with any law or regulation.  However, you may consider the differences between each Defendant's system, or the differences between a Defendant's system and the Industry Compliance Guidelines issued by the HDA, or any differences between a Defendant's system and guidance given by the DEA as evidence of failing to comply with the CSA and regulations.  Howver, in determining whether or not the Defendants complied with the law, you must ask only whether each Defendants' system effective maintained effective controls against diversion and complied with the regulation that they identify, report, and halt suspicious orders of controlled substances.

**Proposed Jury Instruction D - Voluntary Obligations**

Subject to and without waiving our objections to Plaintiffs' proposed jury instructions, Defendants propose the following instruction:

You have heard evidence that defendants voluntarily designed and operated monitoring systems that went beyond anything that was required by law from the defendants.  You have also heard evidence that defendants voluntarily took other steps beyond any required by law related to other aspects of the distribution of controlled substances.  You have heard evidence that defendants sometimes took these steps in response to informal recommendations from or discussions with DEA.  This is not evidence of what the law required or whether the defendants complied with the law.

***Plaintiffs' Objections:***

Plaintiffs object to the entirety of Proposed Instruction D, first and foremost, because it is untimely.  Moreover, Defendants provided no support for the inclusion of this instruction. Finally, this instruction approaches an affirmative defense which should be based on a model jury instruction.  Having failed to provide support for this instruction or model it after an appropriate jury instruction on affirmative defenses, it must be stricken.

**Proposed Jury Instruction E - Substantial Compliance**

Subject to and without waiving our objections to Plaintiffs' proposed jury instructions, Defendants propose the following instruction:

DEA regulations set forth procedures governing the federal registration of manufacturers and distributors of controlled substances pursuant to federal law and provide that distributors and manufacturers "provide effective controls and procedures to guard against theft and diversion of controlled substances."  DEA regulations state that "substantial compliance" may be sufficient for DEA to find pursuant to its registration authority that a distributor has maintained effective controls to guard against theft and diversion.  In determining whether or not the defendants met the provisions of the law, you must determine whether the distributors substantially complied, even if they did not perfectly or always comply.

*Plaintiffs' Objections:*

Plaintiffs object to the entirety of Proposed Instruction E, first and foremost, because it is untimely.  Moreover, Defendants provided no support for the inclusion of this instruction. Finally, this instruction approaches an affirmative defense which should be based on a model jury instruction.  Having failed to provide support for this instruction or model it after an appropriate jury instruction on affirmative defenses, it must be stricken.

### Proposed Jury Instruction F - Evidence of Compliance

Subject to and without waiving our objections to Plaintiffs' proposed jury instructions, Defendants propose the following instruction:

You have heard evidence that each of the distributor defendants refused to ship certain orders into Cuyahoga and Summit counties because those orders were deemed to be "suspicious" as that term is defined by DEA regulation.

You have also heard evidence that some manufacturer defendants did not ship any orders into Cuyahoga or Summit counties and that some manufacturers refused to ship certain orders to their distributor customers because those orders were deemed to be "suspicious" as that term is defined by DEA regulation.

You may consider this information when determining whether or not the distributor or manufacturer defendants met the substantial compliance provision.

***Plaintiffs' Objections:***

Plaintiffs object to the entirety of Proposed Instruction F, first and foremost, because it is untimely.  Moreover, Defendants provided no support for the inclusion of this instruction.  Finally, this instruction approaches an affirmative defense which should be based on a model jury instruction.  Having failed to provide support for this instruction or model it after an appropriate jury instruction on affirmative defenses, it must be stricken.

**Proposed Jury Instruction G - No-Shipping Requirement Effective Date**

Subject to and without waiving our objections to Plaintiffs' proposed jury instructions, Defendants propose the following instruction:

The plaintiffs allege that each manufacturer and distributor shipped some "suspicious orders" prior to 2008.  The manufacturers and distributors respond that the law does not impose a "no ship" requirement, and even if DEA had the authority to do so through informal letters, it did not do so prior to 2008.  It is for you to determine whether DEA imposed a "no ship" requirement prior to 2008.  If you find that DEA did not impose a "no ship" requirement prior to 2008, you may find that manufacturers and distributors complied with the law because they were in substantial compliance even though, before that date, they shipped certain orders that met the regulatory definition of a "suspicious order."

The plaintiffs also allege that the manufacturer defendants had an obligation to know their customers' customers (in other words, the customers of the manufacturers' distributor customers) and to report suspicious orders by the distributors' customers.  You must determine at what time, if ever, the manufacturer defendants had clear notice from the DEA that they had a duty to report suspicious orders of their customers' customers.  If you find that DEA did not give the manufacturer defendants clear notice of that requirement, or gave notice of that requirement only as of a certain time, you may find that the manufacturer defendants complied with the law because they were in substantial compliance even though, before that date, they did not report suspicious orders of their customers' customers.

***Plaintiffs' Objections:***

Plaintiffs object to the entirety of Proposed Instruction G, first and foremost, because it is untimely.  Moreover, Defendants proposed jury instruction purports to tell the jury when the

stop-shipment requirement became binding on the Defendants.  However, Defendants' proposed instruction suffers from two fatal defects.  First, it is an attempt to circumvent the stipulated fact negotiation process laid out by this Court without any evidentiary support for Defendants' view of the facts.  Second, Defendants' proposed instructions is an incorrect statement of the established law regarding the stop-shipment requirement.  As this Court previously recognized in decided Plaintiffs' summary judgment regarding Defendants' duties under the CSA (relying, in part, on Masters), the CSA imposes a stop-shipment requirement.  Whether or not the stop-shipment requirement existed before 2008 is not the proper subject on which to instruct the jury, especially in light of this Court's prior orders.

Finally, Defendants' provide no support for the inclusion of this proposed instruction. Having failed to provide support for this instruction, it must be stricken.