# EXHIBIT A

MotleyRice®
LLC
ATTORNEYS AT LAW
www.motleyrice.com
"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

401 9ᵗʰ St. NW, Suite 1001
Washington, DC 20004
**o.** 202.232.5504   **f.** 202.232.5513

**David I. Ackerman**
*Licensed in DC, NJ, NY*
direct:  202.849.4962
dackerman@motleyrice.com

October 7, 2019

<u>**VIA EMAIL**</u>

Special Master David Cohen
2400 Chagrin Boulevard, Suite 300
Cleveland, OH 44122
david@specialmaster.law

> Re:    *In re National Prescription Opioid Litigation*, Case No. 17-md-2804
>        Defendants' Designation of Pharmacy Witnesses

Dear Special Master Cohen,

Over the past 15 months Plaintiffs have sought pharmacy level data and pharmacy level discovery under the premises that it is directly related to the SOMS case against the Distributor Pharmacies and the Distributors, *i.e.* "know your customers" and "know your customers' customer" obligations.  On no less than 3 occasions these requests were struck down by the Special Master based upon representations by those Pharmacy Distributors that this information is irrelevant to the SOMS claims being asserted as they are only here as distributors.  Now, on the eve of trial, in a complete about face, Walgreens, and Cardinal Health standing in the shoes of CVS, are trying to reverse course and have affirmatively designated 7 pharmacists (3 Walgreens and 4 CVS) as witnesses for trial.  Plaintiffs have gotten ZERO discovery related to these pharmacists or the substance of the witness' testimony.  This type of gamesmanship should not be allowed, especially days before jury selection.

Throughout this litigation, the Court has warned that, "as a general rule, no party may rely at trial on documents or data that they have not produced in discovery or which are otherwise unknown to opposing parties."  *See, e.g.,* Discovery Ruling No. 8 (Dkt. 1055) at 5.  Cardinal Health and Walgreens have now violated this basic precept by seeking to introduce at trial testimony from pharmacists and pharmacy managers concerning their "duties, responsibilities and experiences as a pharmacist and pharmacy manager."[1]  During discovery, Defendants vigorously objected to production of dispensing data[2] and other documents concerning the pharmacy operations, even going so far as to abandon depositions of pharmacists when the Court made clear that Plaintiffs would be entitled to reciprocal depositions of Defendants' pharmacists.  Having staked that position during discovery, Defendants may not now introduce evidence on the topic at trial.  The Court should exclude these witnesses.

---

[1] *See* Walgreens Witness List descriptions.
[2] Perhaps Walgreens and Cardinal Health are now going to belatedly attempt to perform due diligence on the vast majority of orders that were wrongly shipped through the testimony of these store level witnesses. This is like the bank robber trying to return the money after they were caught.

Special Master David Cohen
October 7, 2019
Re: Defendants' Designation of Pharmacy Witnesses
Page 2

1. *The Pharmacy Witnesses at Issue*

Walgreens' Amended Witness List identifies the following three witnesses who will testify regarding their "experience" as a pharmacist or pharmacy manager[3]:

| Witness | Description of Testimony |
|---------|--------------------------|
| Luke Forkapa (Pharmacist) | "Mr. Forkapa is expected to testify concerning his duties, responsibilities, and experiences as a pharmacist and pharmacy manager." |
| Debra Lieske (Pharmacy Manager) | "Ms. Lieske is expected to testify concerning her duties, responsibilities, and experiences a pharmacist and pharmacy manager." [sic] |
| Kipp Tiger (Pharmacist) | "Mr. Tiger is expected to testify concerning his duties, responsibilities, and experiences as a pharmacist and pharmacy manager." |

Cardinal Health's revised witness list identifies four "CVS Pharmacists" whom Cardinal may call to testify at trial:

| Witness | Description of Testimony |
|---------|--------------------------|
| Christa Altobelli (CVS Pharmacist) | "Ms. Altobelli may be called to testify to respond to Plaintiffs' case." |
| Shadi Awadallah (CVS Pharmacist) | "Ms. Awadallah may be called to testify to respond to Plaintiffs' case." |
| Julie Deal (CVS Pharmacist) | "Ms. Deal may be called to testify to respond to Plaintiffs' case." |
| Yasmin Parker (CVS Pharmacist) | "Ms. Parker may be called to testify to respond to Plaintiffs' case." |

Cardinal's "no frills" descriptions of the testimony are in and of themselves deficient. However, the witnesses' job titles suggest that, as with Walgreens, these witnesses will testify as to their "duties, responsibilities, and experiences as a pharmacist" in some form or fashion.

Importantly, none of these witnesses has been deposed in this litigation, and none of the Walgreens witnesses were identified as custodians or identified in Interrogatory responses during the discovery period.

2. *Defendants' Refusal to Produce Dispensing Data or to Make Pharmacists Available for Deposition*

Discovery disputes concerning the production of pharmacy-related dispensing information date at least to October 2018, when the Court issued Discovery Ruling No. 8. On three occasions, Plaintiffs sought production of dispensing data or depositions of pharmacists. On all three occasions, Defendants refused.

---

[3] A Walgreens "Pharmacy Manager" is a pharmacist.

Special Master David Cohen
October 7, 2019
Re: Defendants' Designation of Pharmacy Witnesses
Page 3

### a.  Discovery Ruling No. 8

Discovery Ruling No. 8 concerned Defendants' refusal to provide the entirety of dispensing data concerning opioids dispensed at their retail pharmacies.  Defendants objected that such data was irrelevant because Plaintiffs opted not to pursue claims against the Retail Pharmacy Defendants based solely on their retail dispensing of opioids.  The Special Master concluded that Plaintiffs were entitled to "some, but not all, of the dispensing information sought by plaintiffs."  Dkt. 1055 at 3.  Specifically, Defendants were required to produce only: (i) "Policies and procedures related to dispensing controlled substances;" (ii) "Dispensing-related documents contained in suspicious order monitoring files related to Track One jurisdictions;" (iii) "Documents regarding evaluation of opioid orders from a particular retain pharmacy in Track One jurisdictions;" (iv) "Compensation policies for pharmacists in Track One jurisdictions;" (v) "Transactional data showing the volume of opioid products" in the Track One jurisdictions; and (vi) settlement memoranda with the DEA.  *Id.* at 3-4.

Discovery Ruling No. 8 specifically found that "plaintiffs are not entitled to any other discovery related to dispensing information at this time."  Dkt. 1055 at 5.  But the Court warned Defendants against the type of gamesmanship that Plaintiffs now seek to address:  "[A]s a general rule, not party may rely at trial on documents or data they have not produced in discovery or which are otherwise unknown to opposing parties."  *Id.*

### b.  January 2019 Special Master Conference regarding Walgreens Dispensing Information

The question of dispensing information resurfaced in a late evening Walgreens only Special Master Conference in January 2019, concerning numerous discovery disputes.  In that meeting, Walgreens' counsel again sought to "draw a line between the dispensing and distribution information."  Exh. A (1/10/19 Tr.) at 57:6-9.  The Special Master directed that any dispensing information used "to make decisions about whether orders were suspicious, whether they were shipped, whether they should be overridden, . . . should be produced."  *Id* at 61:21-62:1.  And the Special Master warned that "there is going to be a very severe repercussion" if information relevant to those factors was not produced.  *Id.* at 62:1-6.

### c.  February/March 2019 Exchanges regarding Pharmacy Depositions

The propriety of pharmacy depositions arose for a third time in February and March 2019, when the parties were discussing the scope of discovery permitted to proceed after the discovery deadline.  During an in-person meeting on February 12, Defendants advised of their intention to serve subpoenas seeking documents and depositions from third party pharmacies in the Track One jurisdictions.  The Special Master ruled that Plaintiffs would be entitled to take a reciprocal number of depositions of Defendants' pharmacists.  Defendants initially advised that they would take 24 depositions of pharmacies in March and April 2019.  *See* Exh. B (Feb. 25, 2019 Email from S. Pyser).  During a discovery call the following week, the Special Master made clear that any reciprocal depositions that Plaintiffs received would include depositions of pharmacists from Defendants, including Walgreens.  Ex. C (3/1/19 Tr.) at 24:22-25:9.

On March 6, 2019, Defendants advised that they "will not be exercising their right to take depositions" of pharmacies.  Exh. D (3/6/19 Email from S. Pyser).  The specter of reciprocal depositions clearly factored

Special Master David Cohen
October 7, 2019
Re: Defendants' Designation of Pharmacy Witnesses
Page 4

into Defendants' decision, as Defendants' email specifically stated: "As we understand the Special Master's order, plaintiffs will accordingly not be entitled to any 'reciprocal' depositions." *Id.*

> 3. *Defendants Should Not Be Permitted To Present Pharmacy Witnesses At Trial*

The Court's admonition was clear: "no party may rely at trial on documents or data that they have not produced in discovery or which are otherwise unknown to opposing parties." Discovery Ruling 8 at 5. Yet that is precisely what Walgreens and Cardinal seek to do here. Neither Walgreens nor CVS produced dispensing data regarding opioids. They did not produce custodial files for the pharmacists that now appear on their witness lists, nor did Walgreens identify these pharmacy level witnesses as custodians or in interrogatory responses during the discovery time period. And they resisted efforts to take depositions of pharmacists during the discovery period.

Defendants' refusal to produce pharmacy-level dispensing information deprives Plaintiffs of the ability to adequately confront these newly-identified witnesses. Defendants spent months arguing to this Court that dispensing-level information was not necessary to the action and was not proportional to the needs of the case. Yet now Walgreens and Cardinal seek to present pharmacists to the jury to testify as to their "duties, responsibilities, and experiences a pharmacist and pharmacy manager."

At this juncture, two weeks from the beginning of the trial, no amount of corrective discovery can remedy this situation. Had Defendants identified these witnesses during the discovery period, and had Defendants not fought efforts to take pharmacy-level discovery at every opportunity, then Plaintiffs could have developed the factual basis necessary to confront whatever testimony these pharmacy witnesses will offer. But Plaintiffs cannot develop that record in a week, or even in a month, especially in the midst of trial. Thus, if these witnesses are presented at trial, Defendants' refusal to permit pharmacy-level discovery and depositions during the discovery period will have effectively deprived Plaintiffs a meaningful opportunity to confront this testimony.

Plaintiffs and Defendants alike made strategic decisions during the discovery period. All parties understood and recognized that those decisions had consequences. Having refused pharmacy-level discovery during the discovery period, Defendants may not now put on pharmacy witnesses to testify as to their "experiences" as pharmacists.

Respectfully,

*/s/ David I. Ackerman*

David I. Ackerman

cc:     Plaintiffs' Counsel
        Defendants' Counsel