# EXHIBIT C

**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
www.bartlit-beck.com

CHICAGO OFFICE
COURTHOUSE PLACE
54 WEST HUBBARD STREET
CHICAGO, IL 60654
TELEPHONE: (312) 494-4400
FACSIMILE: (312) 494-4440

DENVER OFFICE
1801 WEWATTA STREET
SUITE 1200
DENVER, CO 80202
TELEPHONE: (303) 592-3100
FACSIMILE: (303) 592-3140

WRITER'S DIRECT DIAL:
(312) 494-4405
kate.swift@bartlit-beck.com

July 30, 2018

**Via Email**

Special Master David R. Cohen
24400 Chagrin Blvd., Ste. 300
Cleveland, OH 44122
David@SpecialMaster.Law

Re: *In re National Prescription Opiate Litigation*, MDL 2804

Dear Special Master Cohen,

I am writing on behalf of Walgreens in response to Hunter Shkolnik's letter of Thursday evening, July 26, regarding Plaintiffs' discovery to Walgreens and CVS.

Mr. Shkolnik's letter is symptomatic of a general lack of coordination and confusion among Plaintiffs' counsel that has consistently hindered efforts to make progress on discovery issues. For example, Plaintiff's counsel Sal Badala told Walgreens on July 18, regarding Plaintiffs' new "Combined Discovery Requests" that "*we don't consider them to be additional written discovery that requires a response*."[1] Just a few days later, Paul Farrell emailed you asking you "to *require*" each distributor, including Walgreens, "to *timely respond*."[2]

Plaintiffs have similarly taken inconsistent positions with respect to the Walgreens 30(b)(6) deposition. On one hand, Mr. Shkolnik has refused even to discuss narrowing Plaintiffs' 30(b)(6) topics. On the other, a different Plaintiffs' lawyer said he would propose to Walgreens topics that could be answered in writing rather than through live witness testimony, but then never did. Walgreens cannot be expected to prepare a witness if Plaintiffs do not even agree among themselves on the scope of the deposition.

As further explained below, Mr. Shkolnik's letter is inaccurate in important respects and reflects, more than anything, a lack of communication and coordination among Plaintiffs' counsel on some issues and a complete refusal to engage in meaningful discussion on others.

**I. Temporal Scope**

Mr. Shkolnik asserts that Walgreens and CVS "applied date cut-offs to their discovery responses in violation of Discovery Ruling No. 3."[3] Far from it. In keeping with the guidance

---

[1] Ex. A, 7/18/18 Badala Email at 1 (emphasis added).
[2] Ex. B, 7/26/18 Farrell Email at 2 (emphases added).
[3] Shkolnik Letter at 1.

**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**

Special Master David R. Cohen
July 30, 2018
Page 2

you provided during the discovery conference call on July 10th, Walgreens has focused its review and production on materials from the past three years—the discovery timeframe that we agreed to in our discovery responses—in order to roll out productions more quickly.[4]

Walgreens has made multiple productions, including more than 10,000 pages of documents from the custodial files of Walgreens' Rx Integrity team, the group responsible for evaluating orders for controlled substances from Walgreens' pharmacies before those orders are placed with a third-party distributor. Notably, Peter Mougey's Friday evening email to you purported to reflect Walgreens' "total production" but failed to mention these 10,000 pages, even though he sent his email after they had been produced. Mr. Mougey's email is entirely inaccurate as to Walgreens.

Walgreens also has collected documents from earlier time periods, a process that is ongoing, and will continue rolling productions over the next month. The alternative would have been to wait to produce documents until we had collected and reviewed all potentially responsive documents. The fact that we did not hold up our production until our collection and review of all documents was complete does not mean that we applied a "date cut-off."

**II.     Search Terms**

Walgreens and Plaintiffs have never agreed on a list of search terms. Negotiations are ongoing, as reflected in the correspondence accompanying the Shkolnik letter.[5] At the beginning of discovery, Plaintiffs refused to put together a list of search terms, arguing that Walgreens was better situated to assemble such a list. So Walgreens did so. Plaintiffs then proposed a competing search term list, nearly doubling the number of terms on Walgreens' list, and significantly expanding the scope of each individual term. Plaintiffs' search terms are so numerous, and each term so lengthy, that it takes substantial time just to review the terms for relevance and proper search syntax, much less to run the terms over any set of documents. The list as it currently stands is attached to the Shkolnik letter.[6]

Walgreens has explained to Plaintiffs that their search term list would expand the universe of documents subject to review beyond what is feasible within the schedule set by the Court. Walgreens has nonetheless offered to work with Plaintiffs to provide them with what they really want within the existing schedule. (For example, Walgreens could apply the list of expanded search terms to documents within a shorter timeframe, or to documents from the custodial files of only the witnesses that Plaintiffs have said they would like to depose.) Plaintiffs have refused to engage in such discussions.

Plaintiffs have never even attempted to explain why their list of search terms is the right one, as opposed to the list Walgreens proposed. The Walgreens list was extensive, more than

---

[4] *See* Ex. C, 7/10/18 Conf. Tr. 36-37.
[5] *See* Shkolnik Letter, at Exhibits 4 and 5, attached to 7/26/18 Badala Email.
[6] *See* Shkolnik Letter, at Exhibit 4, at Exhibit D.

**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**

Special Master David R. Cohen
July 30, 2018
Page 3

adequately covering the issues in this case. Walgreens remains open to a compromise approach, but that would require Plaintiffs to accept Walgreens' invitation to engage in a meaningful discussion about how to address their concerns without a wholesale expansion that serves only to increase the burden on Walgreens without meaningfully assisting the development of these cases.

### III. Responses to Interrogatories

Mr. Shkolnik claims that Walgreens "refuses" to answer certain of Plaintiffs' interrogatories, but it appears that Plaintiffs simply do not like Walgreens' answers, for reasons that are not well taken.

For example, Interrogatory No. 2 asks Walgreens to "Identify all pharmacies that You do not own and/or control that you shipped Opioids and/or Opioid Products to." Walgreens responded, "Walgreens has never distributed Opioids to pharmacies that it does not own."[7] Plaintiffs may not like this response, but there is no further response to give because, in fact, Walgreens never distributed any opioid to any pharmacy that it did not own.

Likewise, Interrogatory No. 7 asks Walgreens to "Identify all industry associations or other organizations that provided education, information, services or had any involvement with the use, safety, efficacy, production, marketing, sale, dispensing or distribution of Opioid and/or Opioid Products that You are or were a member of, or to which You provided financial or other support, from 1990 to present." Walgreens objected to the overbreadth of this request, but nonetheless responded that it has been a member of the National Association of Chain Drug Stores for the past three years.

Walgreens further responded, "Additionally, Walgreens funds education and prevention programs related to Opioid abuse, including but not limited to its campaign #ItEndsWithUs to educate teens about Opioid abuse, its program to distribute the Opioid antidote Naloxone without a prescription at select Walgreens pharmacies across the United States, and its safe medication disposal program, which provides safe medication disposal kiosks at Walgreens stores nationwide."[8] Walgreens is investigating whether earlier responsive information is available, but otherwise this response is complete.

Other interrogatories seek the identification of people or data. For example, Interrogatory No. 5 asks Walgreens to identify people "who reviewed or analyzed data regarding the distribution and/or dispensing of Opioids or Your Opioid Products, including data regarding prescriber, Customer and/or any pharmacy/dispenser that You own and/or control, histories and trends for the state of Ohio from January 1, 1990 to present." Walgreens objected to the overbreadth and vagueness of this request, but nonetheless responded that it would produce

---

[7] *See* Ex. D, 6/21/18 Walgreens Interrogatory Responses at 9.
[8] *Id.* at 11-12.

**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**

Special Master David R. Cohen
July 30, 2018
Page 4

documents "sufficient to identify its employees responsible for evaluating orders of Opioids from Walgreens pharmacies in Cuyahoga and Summit Counties for the time frame from April 25, 2015 to the date of this response."[9]  As noted above, Walgreens' document production is ongoing.  Nevertheless, as a courtesy Walgreens already provided Plaintiffs with a list of employees on the Walgreens' Rx Integrity team, including their titles.[10]

Other interrogatories were so vague that Walgreens could not respond to them as written.  For example, Interrogatory No. 8 asks Walgreens to "Identify any Customer and/or any pharmacy/dispenser that You own and/or control, including any Defendant in this case, to whom You provided (by sale or otherwise) data regarding the distribution and/or dispensing of Opioids or Opioid Products, and describe in detail the data You provided and the date that You provided the data.  Plaintiffs limit this request to the state of Ohio from January 1, 1990 to present."  This interrogatory is largely copied and pasted from the interrogatories served on the large distributors.[11]  As applied to Walgreens, it is unclear what Plaintiffs are looking for.  Walgreens therefore objected and asked Plaintiffs to clarify what they were seeking.  Plaintiffs never did.

**IV.     30(b)(6) Negotiations**

Plaintiffs have made conflicting proposals regarding a Walgreens 30(b)(6) deposition.  To begin, Plaintiffs served a list of 51 extremely broad 30(b)(6) topics on Walgreens.  Walgreens objected and proposed a variety of ways those topics could be focused, so that a witness could be prepared and sit for a deposition within the current schedule.  Initially, Plaintiffs simply refused to discuss any narrowing of their topics.  Shortly after that, another Plaintiffs' lawyer, Jeff Gaddy, advised that Plaintiffs would propose some 30(b)(6) topics where they would accept written responses from Walgreens.[12]  That never happened.

As to the substance of the 30(b)(6) topics, Plaintiffs seek to have different rules applied to themselves than they would like to have applied to Walgreens.  Indeed, still *other* Plaintiffs' lawyers have indicated that Plaintiffs will not provide *any* 30(b)(6) testimony on causes of the opioids crisis, but Plaintiffs want such testimony from Walgreens.[13]  Plaintiffs also objected to providing 30(b)(6) testimony regarding "[t]he suspicious orders that caused harm in Plaintiff's geographic area," as seeking expert testimony and testimony "regarding the underpinning of Plaintiffs' legal theories."[14]  Again, Plaintiffs seek the same testimony from Walgreens.[15]

---

[9] *Id.* at 10.
[10] *See* Shkolnik Letter, at Exhibit 5, 7/25/18 Swift Letter to Badala at 2.
[11] *See, e.g.*, Ex. E, Plaintiffs' Interrogatory No. 7 to Cardinal Health.
[12] *See* Ex. F, 7/17/18 Gaddy Email at 1.
[13] *Compare* Ex. G, 7/24/18 Ackerman Letter to SM Cohen at 1 (refusing to offer testimony on "Causes of the Opioid Crisis"), *with* Ex. H, 6/15/18 Second 30(b)(6) Notice to Walgreens at 9 (seeking testimony on "Whether you caused and/or contributed to the opioid epidemic in the City of Cleveland, Cuyahoga County and/or Summit County, Ohio").
[14] Ex. G, Ackerman Letter at 5.
[15] *See* Ex. H, 6/15/18 Second 30(b)(6) Notice to Walgreens at 9 (topics 16, 20, 21, and 22).

**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**

Special Master David R. Cohen
July 30, 2018
Page 5

      Plaintiffs have never responded to Walgreens' written objections to their exceptionally broad 30(b)(6) topics.  Instead, Mr. Shkolnik insists on a 30(b)(6) deposition on a significantly broader timeframe and set of topics than Walgreens can prepare for by mid-August, without addressing any of the ways the deposition might be modified to accommodate the Court's schedule.  Walgreens has offered a witness who can sit for a much narrower 30(b)(6) deposition on August 15.

**V.**    **Organizational Charts**

      With respect to organizational charts, it is again unclear what else Plaintiffs want.  Mr. Shkolnik acknowledges that Walgreens already has provided several organizational charts.  And directly contrary to his assertion at page 3 of his letter, Walgreens *has* provided a list (including job titles) of employees responsible for controlled substance monitoring.  To the extent that Plaintiffs also demand organizational charts "encompassing departments responsible for distributing controlled substances," no such departments exist because, as Plaintiffs are well aware, Walgreens does not distribute controlled substances and has not done so for years.

**VI.**    **Timing of Productions**

      Walgreens has repeatedly explained to Plaintiffs that document production can be completed by August 31, if the initial list of search terms Walgreens proposed is applied to the 15 custodians Walgreens identified; or if Plaintiffs' expanded list of search terms is applied to a more limited set of documents or custodians.  Plaintiffs have simply refused to negotiate.

**VII.**    **Custodians**

      In his letter, Mr. Shkolnik demands that Walgreens include additional custodians without regard to Walgreens' business, or the custodians Walgreens already has identified.  Plaintiffs have repeatedly insisted on including custodians who fill a broad list of positions, including some that do not even exist at Walgreens.  For example, Walgreens does not have "Replenishment Buyers" for its retail pharmacies.  Nor do Walgreens' Distribution Center employees have duties relating to the distribution of the Schedule II opioids at issue in these cases.  Walgreens has repeatedly explained these things to Plaintiffs.[16]  But Plaintiffs, including in Mr. Shkolnik's letter, have simply ignored these explanations.

      As Walgreens has also explained, it already has identified several custodians with roles comparable to the job titles on Plaintiffs' list.  Walgreens identified these custodians to Plaintiffs weeks ago.  In all, Walgreens has identified 15 custodians, and is reviewing a large volume of documents for production from their custodial files.  Plaintiffs have never explained why they believe more custodians are necessary or appropriate, other than to point to the fact that other distributors have identified more.  But Walgreens is not like those distributors.  Walgreens never distributed opioids anywhere but to its own stores and stopped distributing opioids into Ohio

---

[16] *See, e.g.*, Shkolnik Letter, at Exhibit 5, 7/25/18 Swift Letter to Badala at 2.

**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**

Special Master David R. Cohen
July 30, 2018
Page 6

more than four years ago.  Walgreens no longer has any departments or employees responsible for distributing Schedule II controlled substances.

Walgreens has identified five custodians from its Rx Integrity team, as well as ten other custodians in departments such as inventory and supply chain management.  This is more than proportional to the needs of the case, and Plaintiffs have not made any contrary showing.

\*\*\*\*

Plaintiffs' lack of coordination and refusal to negotiate on these issues has posed an added challenge in an already demanding schedule.  Walgreens remains willing to engage in the horse-trading necessary to complete discovery.  But for such efforts to be productive, Plaintiffs must do the same.

Sincerely,

Katherine M. Swift
Counsel for Walgreens

cc: All Liaison Counsel