IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## PLAINTIFFS' RESPONSES TO DEFENDANTS' WITNESS OBJECTIONS

Plaintiffs respectfully submit the following responses to Defendants' objections to testimony from witnesses filed on October 7, 2019:

### I. DEFENDANTS' FED. R. EVID. 602 OBJECTIONS

Defendants lodged objections based on Fed. R. Evid. 602 to testimony from the following witnesses:

1. Ed Bratton
2. Nate Hartle
3. Jennifer Norris
4. Thomas Prevoznik
5. Mary Woods
6. Chris Zimmerman

Mr. Prevoznik's 30(b)(6) deposition testimony is admissible under FRCP 32(a)(4) because he is beyond the subpoena power of the court and therefore unavailable. *Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011) (permitting use of third party 30(b)(6) deposition testimony at trial when witness was unavailable).

A different analysis applies to Defendants' witnesses (Zimmerman (AmerisourceBergen), Norris (Cardinal), Hartle (McKesson), Bratton (Walgreens), and Woods (Allergan/Actavis)). Plaintiffs are entitled to offer any portion of their 30(b)(6) depositions at trial pursuant to Fed. R. Civ. P. 32(a)(3) because they were, at the time they were deposed, 30(b)(6) designees of those

1

adverse parties.  As that Rule provides:  "An adverse party may use **for any purpose** the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, **or designee under Rule 30(b)(6)** or 31(a)(4)." (emphasis added).

Defendants' objection is also contrary to the position they took with regard to several witnesses they designated, who testified as 30(b)(6) designees for Plaintiffs.  In an email to Special Master Cohen on October 4, 2019, Amber Charles stated as follows:

> Special Master Cohen:
>
> Plaintiffs have entered a blanket objection to Defendants' designations from Holly Woods, Hugh Shannon, Brian Nelsen, Greta Johnson, Maggie Keenan, James Gutierrez, and Thomas Gilson on the basis that "there is no showing of unavailability."   See ECF 2711 at 3.  This objection is not well-founded.  **Each of these seven witnesses served as a 30(b)(6) designee for either Summit or Cuyahoga counties**, and Defendants' deposition designations are limited to those portions of the depositions that contain 30(b)(6) testimony.  **Defendants' designations, therefore, fall squarely within Rule 32(a)(3)'s allowance that "the deposition of a party or anyone who, when deposed, was the party's …designee under Rule 30(b)(6)" may be introduced by an opposing party at trial "for any purpose."**  (emphasis added).  Rule 32(a)(3) has no requirement that the witness be unavailable.  **Plaintiffs' objection, which is apparently based on the separate requirements of Rule 32(a)(4), is misplaced and should be denied**.

(emphasis added).  Rule 30(b)(6) permits witnesses to testify on matters outside their personal knowledge when they are being deposed as an organization's designee, and Rule 32 clearly allows an adverse party to offer that testimony at trial.

However, Fed. R. Evid. 611 gives the trial judge wide latitude regarding "the mode and order of examining witnesses and presenting evidence."  With respect to witnesses who previously were deposed as 30(b)(6) designees, some of them may be called to testify live in the parties' case in chief.  Live, in-person testimony has long been considered the gold standard during trial, as it permits the fact-finder to more accurately evaluate the witness's truthfulness.

2

*See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 511 (1947), *superseded by statute on other grounds, as explained in American Dredging Co. v. Miller,* 510 U.S. 443, 449, n. 2 (1994) (stating that to locate a trial where litigants "may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants"); *In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 644 (E.D. La. 2006) (calling live in-person testimony "optimal for trial testimony"; Fed. R. Civ. P. 43 advisory committee note (1996 amendment) ("The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.").

For this reason, if either side calls a witness to testify live during the trial that was deposed as a 30(b)(6) designee, the other side should be required to conduct a live cross-examination rather than offer the deposition at a later time.  This will promote the objectives of Rule 611 to ensure the "mode and order" of examining witnesses is "effective for determining the truth," and will "avoid wasting time."  Fed. R. Evid. 611(a)(1), (2).  This procedure would also avoid potential juror confusion:  the jury might wonder why a witness who testified live at one point during the trial is later testifying by deposition.  It is conceivable that the jury might assume that the party refused to make the witness available for the other side, which would be inaccurate but potentially prejudicial.

Ironically, Defendants cited *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006), in support of their Rule 602 objection, but they took part of a sentence out of context and omitted the most important part.  The full quoted passage from *Brazos River*, as opposed to the out-of-context snippet cited in Defendants' objections, undermines Defendants' objection and endorses the approach suggested by Plaintiffs:

> Although there is no rule requiring that the corporate designee testify "vicariously" at trial, as distinguished from at the rule 30(b)(6) deposition, **if the corporation makes the witness available at trial he should not be able to refuse to testify to matters as to which he testified at the deposition**

3

> **on grounds that he had only corporate knowledge of the issues, not personal knowledge.** This conclusion rests on the consideration that though Federal Rule of Civil Procedure 32(a)(2) "permits a party to introduce the deposition of an adversary as part of his substantive proof regardless of the adversary's availability to testify at trial," *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 308 (5th Cir.1978), **district courts are reluctant to allow the reading into evidence of the rule 30(b)(6) deposition if the witness is available to testify at trial**, and such exclusion is usually deemed harmless error. **Thus, if a rule 30(b)(6) witness is made available at trial, he should be allowed to testify as to matters within corporate knowledge to which he testified in deposition.**

*Brazos River Auth.*, 469 F.3d at 434.[1]  *Brazos River* acknowledges that 30(b)(6) designees can testify about matters beyond their personal knowledge at trial when questioned by an adverse party.  Defendants would be able to cross-examine Plaintiffs' witnesses not only about matters within their personal knowledge, but also about the matters for which they were designated as Rule 30(b)(6) witnesses.  And Plaintiffs would be permitted to do the same.  Consequently, there is no prejudice to either party if they are required to cross-examine these witnesses live rather than use their deposition testimony.

## II.     DEFENDANTS OBJECTIONS BASED UPON *TOUHY* AUTHORIZATIONS

Defendants object to testimony from the following witnesses on the grounds that there is no *Touhy* authorization from the Federal Government:

1. Linden Barber
2. Joseph Rannazzisi

Defendants lack standing to assert these objections.  *See, e.g., Christison v. Biogen Idec*, No. 2:11-cv-01140-DN-DBP, 2015 WL 3489494, at *1 (D. Utah June 2, 2015) (finding that non-government defendants lacked standing to invoke *Touhy* regulations to prevent a witness from testifying); *U.S. ex rel. Howard v. Caddell Constr. Co.*, No. 7:11-CV-270-H-KS, 2018 WL

---

[1] *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899 (5th Cir. 2010), cited by Defendants, is inapposite because in that case a party was attempting to use **its own** 30(b)(6) witness to testify about matters outside of his personal knowledge.  Plaintiffs will submit additional briefing on this limited issue, if it arises.

2291300, at *2 (E.D.N.C. Feb. 23, 2018) ("There is no language in . . . the applicable *Touhy* regulations that confers standing upon a relator to litigation the federal Executive's interests that *Touhy* protects."). Regardless, Plaintiffs have sought or are seeking appropriate authorizations to permit these individuals to testify at trial.

### III. DEFENDANTS' OBJECTION TO THE TESTIMONY OF DR. MARY APPLEGATE

Defendants object to the testimony of Dr. Mary Applegate because they assert that "[t]he Ohio Department of Medicaid and Dr. Applegate's 'duties and responsibilities' there are not relevant to Plaintiffs' claims." This is false, but borders on the absurd. First, Defendants themselves have designated at least 50 Ohio Department of Medicaid documents as exhibits in this case on their Joint Exhibit List.[2] Second, Defendants designated Dr. Applegate as their first fact witness on the prior version of their "Joint Witness List," only removing her name in their last iteration served shortly before the filing of these objections.. Third, and most importantly, she has direct and detailed knowledge on issues including health care for pregnant woman with opioid use disorder (OUD) and their infants; the availability of medication assisted treatment (MAT) for opioid addiction; and the State of Ohio's 2016 prescribing guidelines for outpatient management of patients with acute pain, which recommend non-opioid treatment options, limited the amount of

---

[2] *See* DEF-12 ("ODM Claims Data"); DEF-13 ("Ohio Dept. Medicaid Data"); DEF-1249 ("Ohio Departments of Medicaid, Health, Mental Health and Addiction Services, and Boards of Pharmacy, Nursing, Dentistry, and Medicine Presentation: Addressing Ohio's Opioid Crisis: Next Steps"); DEF-1258 ("Ohio Department of Medicaid Presentation: Health Information Technology Implementation Advance Planning Document Update"); DEF-1774 ("Ohio Medicaid, Program Integrity Group (Prescription Drug Program Integrity Group), meeting minutes, July 14, 2015"); DEF-1775 ("Ohio Medicaid Program Integrity Group (Prescription Drug Program Integrity Group), Agenda, October 20, 2015"); DEF-13223 ("Ohio Medicaid Fee-for-Service Preferred Drug list, Ohio Department of Job and Family Services, Revised September 13, 2012"); DEF-13566 through DEF-13613; DEF-14271 through DEF-14275; DEF-17155 ("The Ohio Department of Medicaid Program Integrity Report 2015").

opioids to be used to treat acute pain, and for treatment of chronic pain lasting longer than 12 weeks.

Moreover, to the extent that Defendants seek to blame government agencies, including the Ohio state government, Dr. Applegate will testify as to the measures that the Ohio Department of Medicaid took to combat the opioid crisis.  She may also testify as to the Department of Medicaid's experience with opioid prescribing and payments. Clearly the decision to remove Dr. Applegate from the Defendants Joint List and the filing of this Objection was most likely based upon the realization that Dr. Applegate's testimony was not only relevant but hurtful to the Defendants.

### IV.    DEFENDANTS' OBJECTION TO THE TESTIMONY OF DAVID GUSTIN

Defendants object to testimony from David Gustin, the former Director of Regulatory Affairs at McKesson, because he will supposedly invoke his Fifth Amendment right not to testify to avoid incriminating himself.  According to public reports, Mr. Gustin was indicted in March by a Kentucky grand jury and charged with one count of conspiracy "stem[ming] from his responsibility to detect whether 13,000 pharmacy customers in 15 states were allowing drugs distributed by McKesson to be diverted to the black market."[3]  His testimony is directly relevant to the subject matter of this litigation.  And Defendants cite no authority requiring that Plaintiffs present videotaped deposition testimony in place of live testimony.

Further, Defendants misstate the law.  Contrary to Defendants' assertion, a "negative inference" stemming from invocation Mr. Gustin's invocation of the Fifth Amendment is ***not*** "strictly prohibited."  "It is firmly established that 'the Fifth Amendment does not forbid adverse

---

[3] Lenny Bernstein, Matt Zapotosky & Scott Higham, "Feds probe manager of McKesson narcotics distribution warehouse in Ohio," Washington Post, Sept. 18, 2009, https://www.washingtonpost.com/health/feds-probe-manager-of-mckesson-narcotics-distribution-warehouse-in-ohio/2019/09/18/0878fd26-d644-11e9-9610-fb56c5522e1c_story.html

inferences against parties *to civil actions* when they refuse to testify in response to probative evidence offered against them.'" *In re Polyurethane Foam Antitrust Litig. Direct Purchaser Class*, No. 1:10-MD-2196, 2015 WL 12747961, at *5 (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)) (emphasis added). "Further, courts allow juries to draw an adverse inference against not only the witness's employer, but also parties who are co-conspirators with the witness's employer." *Id.* (collecting cases).

Finally, Defendants' attempt to analogize this testimony to a ruling concerning a prior deposition also is unfounded. In that circumstance, the Special Master offered Defendants the opportunity to depose the witness (who had advised he would invoke the Fifth Amendment) or to select an alternate witness. Defendants selected an alternate witness, but then sought leave to depose the original witness. The Special Master permitted Defendants to conduct the deposition upon written questions. The analogy does not favor Defendants' position.

## V. DEFENDANTS' OBJECTIONS TO EXPERT WITNESSES

Defendants interpose a number of objections to expert witnesses on the grounds that their testimony will concern only abatement and therefore is inappropriate to the upcoming trial. These objections are unfounded.

<u>Caleb Alexander:</u> While Dr. Alexander, a Professor of Epidemiology and Medicine at the Johns Hopkins Bloomberg School of Public Health, offers opinions related to the remedial actions required to abate the public nuisance in CT1, his very first opinion concludes "that an opioid epidemic currently exists in Cuyahoga and Summit Counties. This epidemic continues to result in high levels of opioid-related morbidity and mortality as described in this report . . ." His report then describes, under the heading "Indicia of Opioid Crisis," numerous factors that signal the

existence of a public nuisance in the Counties. Therefore, Dr. Alexander's opinions are clearly relevant to, and appropriate for, the upcoming trial.

*Jeffrey Liebman:* Plaintiffs intend to call Dr. Liebman in the first phase of the trial to attest to his opinion with respect to future damages. Because damages will, of course, be determined by the jury, Dr. Liebman's testimony is relevant to, and appropriate for, the upcoming trial.

*Scott Wexelblatt and Nancy Young:* Dr. Scott Wexelblatt, assistant professor in the Division of Neonatology, Perinatal Institute at Cincinnati Children's Hospital Medical Center, and the University of Cincinnati College of Medicine, and Dr. Nancy Young, Executive Director of Children and Family Futures,[4] offer opinions related to the existence of a public nuisance with respect to opioid-exposed infants and the child welfare system. *See* Wexelblatt report, at 5 ("The increasing number of women with opioid use disorder in Cuyahoga and Summit Counties and the growing incidence of NAS, is a significant public health issue."); Young report, at 3-4 ("The increase of opioid use, however, and specifically overdose deaths and hospitalizations have been shown to have a statistical relationship with increased foster care rates and has been described by long-time child welfare professionals as having the most burdensome effects on the child welfare systems of this country.") Dr. Wexelblatt's report, at pages 7-18, describes, *inter alia*, the incidence and consequences of pre-natal exposure to opioids in the Counties, the State of Ohio, and nationally. Similarly, Dr. Young summarizes, at pages 3-22 of her report, data reflecting the increase in opioid use and abuse, the rising numbers of children placed in foster care related to

---

[4] Children and Family Futures is a non-profit organization with the mission of preventing child abuse and neglect, and improving safety, permanency, wellbeing, and recovery outcomes for children, parents, and families affected by trauma, substance use and mental health disorders

parental opioid addiction and fatalities, and the impact of these statistics on families and public services in the Counties.

In addition, these witnesses' testimony regarding the nature and extent of the harm from opioids in the Counties is, of course, relevant to the jury's assessment of damages.

### VI. DEFENDANTS' OBJECTION TO THE TESTIMONY OF LINDEN BARBER

In addition to their *Touhy* objection (addressed above), Defendants object to the testimony of Linden Barber, Cardinal Health's Chief Regulatory Counsel, "to the extent that it would invade the attorney-client privilege or work product doctrine." Such objections are best left for trial. Nevertheless, this Court already has directed that "Defendants shall not interpose attorney-client privilege as a reason for not producing discovery of all details of their SOMS." (Order dated November 21, 2018, Dkt. 1147 at ¶ 1.) Having already ruled that the subject matter is not privileged, Plaintiffs are not barred from eliciting testimony from Mr. Barber concerning Cardinal's SOMS program.

### VII. DEFENDANTS' OBJECTIONS TO CLEVELAND AND AKRON WITNESSES

Defendants object to the following witnesses from Cleveland and Akron pursuant to Fed. R. Evid. 402 and 403:

1. Gary Gingell
2. Clarence Tucker
3. Charles Twigg
4. Calvin Williams

Defendants' objections are unfounded. The Court's February 25, 2019 "Order Regarding Track One Trial Plaintiffs" (Dkt. 1392), which severed Cleveland and Akron from this trial, made clear that "[f]act discovery taken from and provided by the Track One Municipal Plaintiffs,

9

including documents and deposition testimony, shall be part of the discovery record in the Track One County Plaintiffs' cases." Plaintiffs are therefore entitled to present documents and deposition testimony regarding Cleveland and Akron at trial.  It simply cannot be the case that Plaintiffs are somehow precluded from presenting witnesses from Cleveland and Akron to testify regarding those documents and their factual knowledge of relevant issues.

Cleveland and Akron are the largest cities within Cuyahoga and Summit counties, respectively.  Plaintiffs must be entitled to present witnesses who are able to testify to the harms suffered in those communities in order to establish the impact of the opioid epidemic that Defendants' actions caused.  Exclusion of these witnesses, who can testify to critical facts relating to the use, abuse, diversion, and impact of opioids in the Counties, would significantly impact the presentation of Plaintiffs' evidence, but would not prejudice Defendants, who have already received documents from and deposed each of these witnesses.

Defendants' argument that such testimony would be "unduly prejudicial and confusing to the jury" is similarly misplaced.  Plaintiffs are confident that jurors can tell the difference between counties and the cities located within those counties.  If not, an instruction to the jury advising them of the difference between cities and counties would cure any potential prejudice.

## VIII. DEFENDANTS' OBJECTION TO THE TESTIMONY OF TRAVIS BORNSTEIN

Travis Bornstein is the President and Founder of Hope United, a non-profit formed to combat opioid addiction and provide resources for affected or interested citizens.[5]  Mr. Bornstein will testify regarding his experiences in the community with individuals and families whose lives

---

[5] Plaintiffs inadvertently misidentified Mr. Bornstein as a county employee in their witness list (though he was correctly identified in prior interrogatory responses).  Defendants' objections confirm there is no confusion regarding his role or the substance of his testimony.

have been ravaged by opioid addiction, and regarding his organization's efforts to address the opioid crisis caused by Defendants' actions.  Mr. Bornstein founded Hope United following the tragic death of his son caused by an opioid overdose.

To the extent Mr. Bornstein testifies regarding his son's opioid addiction and opioid-related death, Defendants' objections are not well-taken.  Defendants contend that Plaintiffs are somehow barred from presenting individualized testimony regarding experiences with opioids.  However, as set forth in Plaintiffs' opposition brief, Defendants misstate the record with respect to this topic.  The Court's October 16, 2018 Order Regarding Discovery Ruling #5 (Dkt. 1047) permitted Plaintiffs to elect not to answer interrogatories requiring identification of "medically unnecessary" prescriptions and individuals harmed by opioid prescriptions provided that Plaintiffs were limited "solely [to] a theory of aggregate proof."

Plaintiffs did not take that election.  Rather, Plaintiffs identified the required prescriptions and individuals, and the Special Master ultimately confirmed that Plaintiffs' answers were sufficient in Discovery Rulings Nos. 13 (Dkt. 1215) and 18 (Dkt. 1476).  Plaintiffs also produced scores of individualized data, including over a million lines of pharmacy and medical claims information associated with the prescriptions that Plaintiffs identified as "medically unnecessary," and millions of lines of pharmacy and medical claims data for individuals insured by Cuyahoga or Summit Counties who received an opioid prescription.  Therefore, there is no bar to testimony regarding individualized loss.

Moreover, Mr. Bornstein's testimony will encompass more than his personal story.

## IX. DEFENDANTS' OBJECTION TO THE TESTIMONY OF GRETA JOHNSON

Greta Johnson is the Assistant Chief of Staff and Public Information Officer in the Summit County Executive's Office. Defendants object to her testimony on the grounds that she was not "timely disclose[d] as a fact witness with relevant knowledge" during the discovery period. Nothing could be further from the truth.

Greta Johnson was an agreed document custodian whose documents were produced to Defendants early in the discovery period. On August 30, 2018, Summit County identified her by name in response to Distributor Interrogatory No. 12 seeking identification of "every Person likely to have discoverable information related to Your claims." Importantly, Ms. Johnson was Summit County's Rule 30(b)(6) designee and sat for two days of deposition testimony. Although she was the County's designee, Defendants' questioning probed her personal knowledge as well. (*See e.g.,* G. Johnson Dep. Tr. 33:6-10: "Q: And do you understand that this means that the testimony you're giving today represents the testimony of Summit County, ***not just your personal recollection or your personal opinions***?"; 33:25-34:4: "Q: Leaving aside your – your professional experiences and your work, ***have there been any experiences in your personal life*** that have affected your views about prescription opioids?"; 36:2-3: "Q: ***Have you ever taken prescription opioids yourself***?"; 398:14-18: "Q: First of all, let me start with something that you testified about early in the day, which was that you said ***you were personally affected by the opioid crisis because you lost a friend to overdose***?").

Defendants were fully advised of Ms. Johnson's connection to this litigation and have already had the opportunity to take her deposition. Their objection to her testimony at trial is meritless.

## X.     DEFENDANTS' OBJECTION TO ORLANDO HOWARD

Orlando Howard is the Director of Outpatient Treatment Services/Quality Improvement at St. Vincent Charity Medical Center-Rosary Hall.  Plaintiffs identified him as a potential witness following the Defendants' issuance of a document subpoena to St. Vincent Charity Medical Center after the January 25, 2019 discovery deadline.  Mr. Howard runs the most highly respected treatment facility in Cuyahoga County.  He will testify about how the opioid epidemic caused by Defendants' actions is affecting the counties, the counties' efforts to combat the opioid epidemic, and what the counties need to do in order to stem the effects of the opioid crisis going forward.  To the extent Mr. Howard references any individual addiction story in his narrative it likely will be merely tangential to the description of his efforts at St. Vincent Charity Medical Center-Rosary Hall.

Defendants advise that they "object to Mr. Howard testifying at trial unless Plaintiffs make him available for deposition before trial."  Plaintiffs have advised Defendants that they will make Mr. Howard available for a deposition.

Defendants' objection to any "personal stories of opioid abuse or related harms to himself or others" is meritless for the reasons described above concerning the testimony of Travis Bornstein.

Dated:  October 9, 2019                                           Respectfully submitted,

                                          By:  */s/ Linda Singer*
Linda Singer
Joseph F. Rice
Jodi Westbrook Flowers
Anne McGinness Kearse
David I. Ackerman
MOTLEY RICE LLC
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: (202) 232-5504

13

*/s/ W. Mark Lanier*
W. Mark Lanier
LANIER LAW FIRM
10940 W. Sam Houston Pkwy N., Ste 100
Houston, TX  77064
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*/s/ Frank Gallucci*
Frank Gallucci (0072680)
PLEVIN & GALLUCCI
55 Public Square, Suite 2222
Cleveland, Ohio 44113
fgallucci@pglawyer.com
Phone: (216) 861-0804

*/s/ Hunter J. Shkolnik*
Hunter J. Shkolnik (admitted *pro hac vice*)
Salvatore C. Badala (admitted *pro hac vice*)
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue
New York, New York 10017
hunter@napolilaw.com
sbadala@napolilaw.com
Phone: (212) 397-1000

*/s/Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com


*/s/ Paul T. Farrell, Jr., Esq.*
Paul T. Farrell, Jr.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

14

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com
Plaintiffs' Liaison Counsel

## **CERTIFICATE OF SERVICE**

I, Angelica Steele certify that on October 9, 2019, I caused the foregoing to be served via electronic mail by filing it on the public docket, which will cause notification of said filing to be sent to counsel of record who have registered with that system.

/s/ Angelica Steele