# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*"Track One Cases"* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

## MEMORANDUM IN SUPPORT OF TEVA USA, CEPHALON, AND ACTAVIS'S MOTION FOR SEVERANCE OR A SEPARATE TRIAL

There are now only three drug manufacturers left at trial: Teva Pharmaceuticals USA, Inc. ("Teva USA"), Cephalon, Inc. ("Cephalon"), and Actavis LLC ("Actavis"), all of whom are part of a single family (collectively, the "Teva/Cephalon/Actavis Defendants").[1] This newly developed set of circumstances will unfairly prejudice Teva USA, Cephalon, and Actavis. With the dismissal of all other manufacturer Defendants, there is a heightened and unacceptable risk that the jury will confuse the legal obligations and evidence applicable to the distributors as also applying to manufacturers. This risk is made acute by the fact that the remaining three manufacturer defendants will have an impossibly small amount of trial time to differentiate and defend themselves. The risk of such prejudice requires that Teva USA, Cephalon, and Actavis be severed from the Track One bellwether trial.[2]

---

[1] While Plaintiffs initially sued eleven members of the Actavis family, they are proceeding only against Actavis LLC at trial. Joint Stip., ECF No. 2754. Actavis, Teva USA, and Cephalon are all part of the same corporate family group.

[2] The Teva/Cephalon/Actavis Defendants are mindful that the Court has denied severance motions from other Manufacturer Defendants; however, the circumstances are different now. Unlike when the Mallinckrodt entities filed their motion, the Teva/Cephalon/Actavis Defendants are now the only remaining manufacturer family. Under these circumstances, and given the abbreviated time the Court has allotted for trial, the risk of prejudice and due process violations are far too significant to ignore.

The current trial configuration also makes it impossible for the Teva/Cephalon/Actavis Defendants to differentiate themselves from the multitude of distributor defendants, much less present an adequate defense.  The Court's scheduling order provides each Defendant family less than 17 hours to make their case (including cross-examination of Plaintiffs' witnesses).  In the Teva/Cephalon/Actavis Defendants' case, this comes out to just over 5 & ½ hours per Defendant—patently insufficient for any Defendant fairly to present its defense.  Compounding the prejudice is the fact that the Teva/Cephalon/Actavis Defendants have only 30 minutes for their opening, or 10 minutes each.  Because those three entities operate in a different industry than the other remaining Defendants, and face unique claims and have unique defenses, they will not be able to coordinate in the way that the other Defendants can to maximize their limited time at trial.  The mix of Defendants and the truncated time in which each will be permitted to present their case and explain their unique roles and positions will inevitably confuse the jury.  In short, including the Teva/Cephalon/Actavis Defendants with the other Track One Distributor and Pharmacy Defendants would eviscerate their right to a fair trial.

Under Federal Rule of Civil Procedure 21, a court "may at any time, on just terms, add or drop a party" or "sever any claim against a party."  Fed. R. Civ. P. 21.  Federal Rule of Civil Procedure 42(b) also allows a court to order separate trials on one or more separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b). Under Rule 42, the Court should consider "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy."  *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (citation omitted).  Because they would suffer prejudice and juror confusion, the Court should sever the claims against the Teva/Cephalon/Actavis Defendants.[3]

---

[3] *See, e.g.*, *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216-17 (6th Cir. 1982) (finding severance appropriate because it could streamline trial proceedings); *Johnson v. Advanced Bionics, LLC,* No. 2:08-CV-02376-JPM, 2011 WL

I. **The Significant Prejudice Caused by Forcing the Teva/Cephalon/Actavis Defendants—the Lone Manufacturer Family Left in the Case—to Defend Themselves Against Different Legal Claims with Different Factual Questions Requires Severance.**

When determining whether to sever claims, courts consider: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims." *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018) (citation omitted). Each of these factors favors severance.

A. **The Claims Arise Out of Different Transactions.**

First, the claims against the Teva/Cephalon/Actavis Defendants are significantly different from those that will be made against the distributors and pharmacies because they arise from different transactions or occurrences. Though all of the transactions deal with opioids in some fashion, they are all unique. The claims against the Teva/Cephalon/Actavis Defendants involve the manufacture and, in some instances, promotion of certain prescription opioid drugs, while the claims against every other Defendant involve that Defendant's own separate transactions in distributing the drugs. These different transactions satisfy the first point easily. *Id.* at 733-34 (holding transactions not the same where different companies had made separate calls to separate individuals).

---

1323883, at *6 (W.D. Tenn. Apr. 4, 2011) ("Given the substantial amount of evidence expected to be presented, a joint trial would make it extremely difficult for the jury to keep each set of Plaintiffs' claims separate. A cumulative presentation of the evidence would risk that the jury would 'resolve the confusion by considering all the testimony to pertain to all the claims, despite any limiting instructions.'" (quoting *Henderson v. AT&T Corp.*, 918 F.Supp. 1059, 1063 (S.D. Tex. 1996))).

**B.  Claims Against the Teva/Cephalon/Actavis Defendants Involve Different Legal and Factual Questions Than Claims Against All of the Other Defendants.**

Second, the legal and factual questions will be different for the Teva/Cephalon/Actavis Defendants from every other remaining Defendant because they stand alone in having to defend against a false marketing theory.  In fact, several of Plaintiffs' experts identified on their witness list relate solely to Plaintiffs' manufacturing claims (*i.e.*, just the false marketing claims).  *See* ECF 2721, Plaintiffs' Witness List (identifying David Kessler, Meredith Rosenthal, Anne Lembke, David Courtwright).[4]  And, with respect to the SOM claims, there are separate legal and factual questions that are applicable to manufacturers versus distributors.  By way of example only, the data available to distributors regarding the location and quantity of opioid shipments differs significantly from the data available to manufacturers who generally do not ship directly to pharmacies.  Likewise, the application of DEA regulations—and the scope of the applicable duties in those regulations—differs between manufacturers and distributors.  *See generally* Op. & Order Regarding Pls.' Summ. Judgment Motions Addressing the Controlled Substances Act, ECF No. 2483, at 21-31 (citing different types of evidence concerning claims against manufacturers versus distributors).  To that end, there are significant differences in the DEA's interactions with manufacturers versus distributors and the evidence that will be presented at trial as to these groups.  These distinctions undoubtedly will be blurred by Plaintiffs if Teva USA, Cephalon, and Actavis are tried with the Distributor Defendants.

---

[4] As discussed in more detail below, the Teva/Cephalon/Actavis Defendants are severely prejudiced by the fact that they cannot share the workload for cross-examining these experts.  This means these crucial examinations will count against the Teva/Cephalon/Actavis Defendants' limited trial time.  On the other hand, the distributors will be able to share their time allotments to cross-examine witnesses and experts that are focused on the distributors' alleged conduct.

### C. Severance Would Facilitate Both Judicial Economy and Settlement.

Third, severing the claims against the lone remaining manufacturer family would only increase judicial economy. Severing the unrelated claims against the Teva Defendants would not only save time in the trial by eliminating a substantial number of witnesses and exhibits, and the need to address the distinct issues relating to manufacturers, it would spare the Court and the parties from spending the time necessary to dispel juror confusion. As the Court recognized in its August 15, 2019 *Nunc Pro Tunc* Opinion and Order, "[h]aving fewer defendants in the first bellwether trial will allow Plaintiffs to provide a more coherent presentation of the specific issues involved in the opioid crisis." ECF 2438 at 3. This is all the more true where severing the lone manufacturer family will streamline the proceedings by removing the need for all of the testimony on just the manufacturing claims. This would offset any marginal gain made by trying the different claims together. *See Johnson*, 2011 WL 1323883, at *6 ("[T]he savings to the judicial system of a joint trial would be diminished because of the substantially different evidence related to device failure and defect, causation, and damages that will be presented in each case."). Finally, severing the Teva/Cephalon/Actavis Defendants would also allow those parties to devote their time and energy to exploring potential settlements.

### D. Severance Would Avoid Significant Prejudice to the Teva/Cephalon/Actavis Defendants.

Fourth, severing the Teva/Cephalon/Actavis Defendants would avoid significant prejudice. Of particular concern with complex joint trials, and acutely present here, is the extremely prejudicial effect of a jury's inability to keep track of which evidence applies to which defendant, potentially applying irrelevant evidence concerning a particular co-defendant across the board— in essence, lumping all the defendants together. *See In re Beverly Hills Fire Litig.*, 695 F.2d at 216; *see also Sidari v. Orleans County*, 174 F.R.D. 275, 282 (W.D.N.Y. 1996) ("A lumping

5

together of such claims, which amounts to guilt by association, would unfairly prejudice the defendants."). In these situations, and particularly in complex cases involving many different defendants and with "significant differences between . . . claims against [co-defendants], there is a risk that trying all of Plaintiff[s'] claims in a single trial could lead to guilt by association and spillover prejudice." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 171 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

That is particularly true for the Teva/Cephalon/Actavis Defendants. After more than a year of discovery, it is clear that the evidence Plaintiffs intend to use against the Teva/Cephalon/Actavis Defendants—as manufacturers—differs significantly both in quantity and substance from the evidence against other Defendants. *See* Plaintiffs' Memorandum of Law in Opposition to "Generic Manufacturers" Motion for Partial Summary Judgment, ECF 2436; Opposition to Motion for Summary Judgement of Teva and Actavis Generic Defendants, ECF 2220; Motion for Partial Summary Adjudication that Defendants Did Not Comply with Their Duties Under the Federal Controlled Substances Act to Report Suspicious Orders and Not Ship Them, ECF 1924. But a jury hearing *all* the evidence in this case as against *all* Defendants will be tempted to lump Defendants together and not consider the individual evidence against each Defendant. And critical exculpatory evidence will be lost in a sea of unrelated evidence.

For example, unlike distributors who may receive orders directly from pharmacies, Plaintiffs have provided no evidence that the Teva/Cephalon/Actavis Defendants received any orders for opioid products from the two jurisdictions at issue here. And, the data available to manufacturers regarding where products are shipped is more limited than the data available to other Defendants. Such nuance is likely to be lost in the confusion of a joint trial. In addition, the Teva/Cephalon/Actavis Defendants will be prejudiced not only by inflammatory statements

Plaintiffs may make concerning distributor Defendants, but also confusing testimony regarding the guidance and practices concerning Distributors' SOM systems that will be used to wrongly implicate the Teva/Cephalon/Actavis Defendants. Manufacturers and distributors are differently situated when it comes to the data available to be used in implementing their SOM systems. By grouping a single manufacturer family with distributors for trial, this distinction will be lost on the jury.

### E. Different Witnesses and Documentary Proof are Required for the Claims Against the Teva/Cephalon/Actavis Defendants.

Fifth, the separate claims against the Teva/Cephalon/Actavis Defendants will require significantly different proof. This will involve reviewing each of the Defendants' suspicious order monitoring systems over a period spanning as many as 24 years. More prejudicial, Plaintiffs will introduce evidence of standards and guidance that was directed to distributors and improperly attribute that guidance as applying to manufacturers. Conversely, the Teva/Cephalon/Actavis Defendants' evidence will necessarily revolve around different witnesses and documents attempting to explain the differences in the SOM practices and data that apply to manufacturers, as opposed to distributors, and why that matters. Moreover, the unique medicines manufactured by the Teva/Cephalon/Actavis Defendants will require the examination of different standards and federal guidelines, thus underscoring the difference in evidence that the claims here require. The final factor also weighs in favor of severing the claims against the Teva/Cephalon/Actavis Defendants.

### II. A Combined Trial Also Tramples the Teva/Cephalon/Actavis Defendants' Due Process Rights.

The Supreme Court has made clear that the "central meaning of procedural due process" is the "*right to* notice and *an opportunity to be heard* . . . at a meaningful time and *in a meaningful*

7

manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (emphases added) (citation omitted). This requires, "*at a minimum* . . . [an] *opportunity for hearing appropriate to the nature of the case.*" *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (emphases added). Each defendant must have a "meaningful opportunity to present a *complete* defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (emphasis added) (citation omitted); *see also California v. Trombetta*, 467 U.S. 479, 485 (1984). If the Teva/Cephalon/Actavis Defendants are not severed, these due process rights will be violated for at least four fundamental reasons.

### A. Jury Confusion Removes the Teva/Cephalon/Actavis Defendants' Right to a Fair Trial.

First, it is well-settled that severance is appropriate where a joint trial could lead to jury confusion. *Wilson*, 477 F.3d at 339; *see Costello v. Home Depot U.S.A., Inc*., 888 F. Supp. 2d 258, 265–66 (D. Conn. 2012) (finding severance appropriate when evidence regarding "thirty-nine different plaintiffs . . . would be confusing to a jury"). "The human limitations of the jury system are especially tested during a lengthy trial." *United States v. Delatorre*, 522 F. Supp. 2d 1034, 1050 (N.D. Ill. 2007). For example, in *Cain v. Armstrong World Industries*, defendants in a massive "[t]ry-as-many-as-you-can-at-one-time" trial did not receive a fair trial because excessive irrelevant evidence left the jury with "the *impossible task* of being able to carefully sort out and distinguish the facts and law of thirteen plaintiffs' cases that varied greatly in so many critical aspects." 785 F. Supp. 1448, 1457 (S.D. Ala. 1992) (emphasis added).

So too here. Over the course of seven weeks, two separate Plaintiffs will *each* try to prove their six overlapping causes of action against the six Defendant groups. In order to render a supportable verdict, the jury would be faced with an impossible task of keeping track of each Defendant's actions and each Defendant's monitoring of its opioid sales (and the different

standards that apply to manufacturers versus distributors) and then apply these diverse facts to resolve the elements as to each Defendant.

> **B.     Irrelevant and Inflammatory Evidence Against the Distributor Defendants Will Also Nullify the Teva/Cephalon/Actavis Defendants' Right to a Fair Trial.**

Second, not only will the jury be confused, but Plaintiffs' theories will inevitably have an inflammatory "spillover" effect that harms the Teva/Cephalon/Actavis Defendants in particular. The jury will be left to decide their liability based on a "torrent of information concerning the conduct of . . . other unrelated situations at other times," all while the exculpatory evidence specific to Teva, Cephalon, and Actavis is lost in the sea of this irrelevant evidence. *Wells v. City of Dayton*, 495 F. Supp. 2d 793, 795 (S.D. Ohio 2006) (holding that inflammatory evidence introduced during a joint trial that was relevant only to some defendants and wholly irrelevant to codefendants resulted in prejudice and therefore necessitated a separate trial). For instance, Plaintiffs' suspicious order monitoring theory seeks to hold the Teva/Cephalon/Actavis Defendants responsible for failing to identify, report, and stop suspicious orders.[5] But the SOM information manufacturers receive is entirely different than what distributors receive—a manufacturer would not necessarily know that their drugs were going to a specific jurisdiction unless the distributor itself were in that jurisdiction. *See* Opinion and Order Regarding Plaintiffs' Summary Judgment Motions Addressing the Controlled Substances Act, ECF No. 2483, at 24-25 & n.21. While this Court held that even knowledge concerning the "downstream transactions of [a manufacturer's] customers' customer" might be relevant, the Court recognized that the DEA might not obligate manufacturers to do so. *Id.* Indeed, the Teva/Cephalon/Actavis Defendants do not ship to individual pharmacies;

---

[5]     Plaintiffs' RICO, nuisance, fraud, unjust enrichment, and civil conspiracy claims all rest upon this theory of liability predicated upon manufacturers' monitoring systems and reporting obligations. (Summit 3AC, ¶¶ 916, 921, 923, 929–33, 939, 959, 965–67, 986, 1012, 1046, 1054, 1056, 1059, 1062, 1103, 1126; Cuyahoga 3AC, ¶¶ 949, 963, 971–72, 999, 1007–09, 1027, 1053, 1062, 1085, 1089, 1097, 1099, 1105, 1168.)

instead, they fulfill orders of prescription opioid medicines placed by distributors, which have their own independent obligations to comply with the CSA. Critically, a Teva-only trial on that question would reveal that Plaintiffs cannot identify a single order for shipment into the Counties connected to Teva USA, Cephalon, or Actavis that was purportedly "suspicious."

In the planned mass trial, though, Plaintiffs will make certain arguments about the conduct of the distributors. Putting aside the merits of these arguments, they are prejudicial to the Teva/Cephalon/Actavis Defendants. While the Teva/Cephalon/Actavis Defendants had nothing to do with shipments made by distributors (especially of drugs they did not manufacture), they will need to defend themselves against this irrelevant evidence. Not only did the Teva/Cephalon/Actavis Defendants not have access to the downstream information distributors could use to inform their SOM conduct, manufacturers are subject to their own CSA obligations. The Teva/Cephalon/Actavis Defendants will be unable to rely fully on these facts, however, because of the high probability of jury confusion and spillover from the distributor arguments. *Cf. Golden Goose Deluxe Brand v. Aierbushe*, No. 19-cv-2518, 2019 WL 2162715, at *4 (S.D.N.Y. May 3, 2019); *WowWee Grp. Ltd. v. Meirly*, No. 18-cv-706, 2019 WL 1375470, at *6 (S.D.N.Y. Mar. 27, 2019).

### C. The Abbreviated Trial Schedule Does Not Provide the Teva/Cephalon/Actavis Defendants With an Appropriate Amount of Time to Put on Their Unique Defenses.

Third, the Teva/Cephalon/Actavis Defendants' right to a fair trial will be further compromised by the lack of time they will receive to present their unique defenses. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366-67 (2011) (defendant cannot be denied a trial structure that prevents it from raising and presenting individualized defenses). As the only manufacturers left in the case, the Teva/Cephalon/Actavis Defendants will be defending against

different claims than the distributors and pharmacies.  This leaves them with the most to do at trial, including addressing complicated state and federal RICO claims that seek massive damages, but within the same condensed timeframe as the other Defendants.  When divided by Defendant family, the Teva/Cephalon/Actavis Defendants will have less than 17 hours to present their case.  And that assumes that this Court does not grant Cardinal Health's motion for an increased share of the defense time.  Motion of Cardinal Health for Pro Rata Time, ECF 2766.  This abbreviated schedule for a Defendant—against whom half of the claims at trial are brought singularly—is not in keeping with the due process requirement that a defendant must be given an opportunity to respond to the charges against him "at a meaningful time and *in a meaningful manner*."  *Fuentes*, 407 U.S. at 80 (emphasis added).

> **D.   The Teva/Cephalon/Actavis Defendants Are Uniquely Prejudiced Because They Cannot Share Time with Co-Defendants to Cover Common Ground.**

The prejudice to the Teva/Cephalon/Actavis Defendants is all the more pronounced because they, unlike the distributor Defendants, are unable to benefit from any efficiency of having co-defendants cover common ground for their industry.  By way of example, the Court recently provided the Parties with three options for allocating time for opening statements.  For each option, each Defendants' time is significantly less than Plaintiffs' time.  While, presumably, the distributors will be able to share the load in addressing issues common to their industry, the Teva/Cephalon/Actavis Defendants must cover the entirety of issues relating to manufacturers since they are the only ones left in the case, as well as issues that are unique to Teva USA, Cephalon, and Actavis, each of which are distinct entities with distinct factual records and products. The abbreviated time for opening statements, coupled with a mere 17 hours to tell the entire manufacturer story as well as the story for three unique entities, is unworkable. The abbreviated trial schedule will further trample their due process rights by not providing

"opportunity for hearing appropriate to the nature of the case," *Mullane*, 339 U.S. at 313, or a "meaningful opportunity to present a *complete* defense." *Crane*, 476 U.S. at 683 (emphasis added).[6]

## CONCLUSION

For all these reasons, the claims against Teva USA, Cephalon, and Actavis should be severed and proceed through a separate trial, apart from any trial or trials involving the other Defendants.

---

[6] Forcing Defendants to coordinate in this manner further violates due process by helping reinforce Plaintiffs' conspiracy theories.  *See generally Mullane*, 339 U.S. at 313; *Crane*, 476 U.S. at 690-91.

Dated:  October 11, 2019

    Respectfully submitted,
By: */s/ Steven A. Reed*
Eric W. Sitarchuk
Steven A. Reed
Harvey Bartle
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel: (215) 963-5000
Fax: (215) 963-5001
eric.sitarchuk@morganlewis.com
steven.reed@morganlewis.com
harvey.bartle@morganlewis.com
rebecca.hillyer@morganlewis.com

Nancy L. Patterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
Tel:  (713) 890-5195
Fax: (713) 890-5001
nancy.patterson@morganlewis.com

Wendy West Feinstein
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219-6401
Tel: (412) 560-7455
Fax: (412) 560-7001
wendy.feinstein@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Tel: (305) 415-3000
Fax: (305) 415-3001
brian.ercole@morganlewis.com

*Counsel for Teva Pharmaceuticals USA, Inc., Cephalon, Inc., and Actavis LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 11, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. If electronic notice is not indicated through the court's e-filing system, a true and correct copy of the foregoing document was delivered via electronic mail or U.S. Mail.

Dated:  October 11, 2019            */s/ Steven A. Reed*
                                           Steven A. Reed