UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090<br><br>*The County of Cuyahoga, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 17-op-45004 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**CERTAIN DEFENDANTS' MOTION AND INCORPORATED MEMORANDUM OF LAW TO OVERRULE PLAINTIFFS' PROCEDURAL OBJECTION TO TESTIMONY FROM THEIR OWN EXPERT WITNESSES, AND FOR OTHER FAIR AND EQUITABLE RELIEF**

**INTRODUCTION**

On October 8, Plaintiffs asserted an objection "to the introduction of testimony *by Distributor Defendants* from … 1. Anna Lembke[,] 2. David Kessler[, and] 3. Meredith Rosenthal …." ECF No. 2749 at 6 (emphasis added). Plaintiffs contend that the inclusion of these and other witnesses on a September 25 amended witness list "confuses trial preparation" and "forc[es] Plaintiffs at the last minute to prepare for" their testimony. *Id.*

Plaintiffs' objection is baseless. Each of Drs. Lembke, Kessler, and Rosenthal are Plaintiff-retained experts who are **currently listed by Plaintiffs** as witnesses they may call at trial. Plaintiffs therefore already are preparing to conduct an examination of these witnesses. Plaintiffs' assertions of surprise also are hollow because, in their original joint witness list served on September 11, Defendants specifically reserved their rights to call any witness appearing on either (1) Plaintiffs' witness list or (2) the lists of later-settling defendants. The additional witnesses named in Distributors' September 25 list, including these experts, all fit into one of those categories. Distributors added these experts to their September 25 list because, with Purdue's filing for bankruptcy protection, the likelihood that Plaintiffs would call these witnesses changed. Plaintiffs cannot credibly claim prejudice; indeed, the advisory committee notes accompanying Rules 26 and 37 make clear that the failure to list a witness identified by the other party is the very definition of a "harmless" mistake, if it is even a mistake at all.

The experts at issue in this motion – Drs. Lembke, Kessler, and Rosenthal – have expressed highly relevant opinions regarding causation (among other issues). Each has opined that manufacturers' deceptive marketing caused a change in the standard of care, and thereby caused doctors to prescribe opioids at vastly increased levels for the long-term treatment of chronic pain. *Infra* at pp. 3–5. While those opinions support one of Plaintiffs' central themes, they also exculpate Distributors by explaining why the vast majority of pharmacy orders were

1

not suspicious.  Plaintiffs' motivation in objecting to testimony *from their own currently-listed witnesses* is as clear as it is cynical:  if Plaintiffs settle with the remaining manufacturers, they will not call these experts in their case and will argue that Distributors alone are responsible for the opioid crisis.

The law prevents this gambit.  The moment Plaintiffs disclosed these experts and their opinions, they became "available to either side" for testimony at trial.  *S.E.C. v. Koenig*, 557 F.3d 736, 744 (7th Cir. 2009); *see also infra* at I.B (citing additional cases).  While Plaintiffs may control which Defendants will go to trial, Plaintiffs do not control who the remaining Defendants may call as witnesses or the defenses that those Defendants may put on.

Distributors therefore respectfully request the following relief to ensure a fair trial:

1) That the Court issue an Order overruling Plaintiffs' objection, making it clear that if they choose not to call any of Drs. Lembke, Kessler, or Rosenthal, that Defendants may do so instead.  The Court has the power to order such an appearance because each expert consented to the Court's jurisdiction through the disclosure of their report and opinions, and because it is within Plaintiffs' control to ensure their appearance at trial.

2) That Defendants be permitted to put into evidence, as adoptive admissions, the reports through which those experts' opinions were disclosed, as well as the reports of two others (Drs. Ballantyne and Schumacher) who Plaintiffs already have decided they will not call to testify at trial.  While expert reports are hearsay when introduced affirmatively by the party sponsoring the witness, they are non-hearsay adoptive admissions when offered against that same party.

3) Should any of Lembke, Kessler, or Rosenthal refuse to travel or otherwise appear at trial, that the Court compel them, or alternatively that the Court authorize subpoenas

so that Distributors may depose them *de bene esse* to preserve their trial testimony. This latter step is required because manufacturer defendants who are no longer in the case used the majority of the limited deposition time to explore theories relevant to their defenses, leaving no time for Distributors to conduct an examination that could be played at trial.

## BACKGROUND

The slate of experts disclosed by Plaintiffs on March 25, 2019, included at least six experts who opined that manufacturers promoted increased opioid prescribing through improper marketing: Drs. Schumacher, Lembke, Ballantyne, Parran, and Kessler (all medical doctors), and Dr. Rosenthal (a Ph.D. economist). Of these experts, Plaintiffs withdrew two (Drs. Ballantyne and Parran) before any deposition. The others were deposed, and all of those others except for Schumacher appeared on Plaintiffs' trial witness list disclosed on September 11. While the Court's *Daubert* rulings limited the testimony of three of the experts, its rulings were "narrow," permitting the bulk of their respective opinions. *See* ECF No. 2549 at 2 ("ruling applies narrowly" such that Drs. Schumacher and Lembke could still testify to most of their opinions) (hereafter, the "Lembke Order"); ECF No. 2558 at 8 ("Kessler may testify as to most if not virtually all of his specific opinions") (hereafter, the "Kessler Order").

Specifically, while the Court excluded Dr. Lembke's "marketing causation opinions," it nevertheless permitted her to testify to a range of other relevant opinions. For example, the Court's "ruling does not prevent Lembke from expressing, under her third opinion, that the [Manufacturing] Defendants misrepresented the risks and benefits of opioids, and how they did so." *Id.* at 12. "Similarly, under her fifth opinion, Lembke may testify about the allegedly misleading nature of the materials that she says Manufacturers disseminated to prescribers and how doctors, in general rely on such information in making prescribing decisions." *Id.* The

3

Court also left undisturbed other of Dr. Lembke's opinions, including that "in the absence of reliable scientific evidence, [opioid manufacturers] encouraged and promoted several misconceptions through: (a) misleading marketing and promotional claims concerning opioid use, including overstatements about its benefits for long-term use for chronic pain; (b) understatements about the risks of addiction; inaccurate claims as to the levels at which doses can be safely increased; (c) mischaracterizing addictive behavior as 'pseudoaddiction' and tolerance as 'breakthrough pain'; (d) characterizing opioid dependence as a benign state that is easily reversible; and (e) inaccurate claims as to the validity of patient screening as a predictor of who will become addicted." *Id.* at 9.

Dr. Kessler, as an expert in FDA requirements on marketing and promotion, also opines that manufacturers' marketing changed the standard of care:

> [T]he manufacturers' departures from FDA standards would be expected to (and likely did) have an effect on how healthcare providers prescribed opioids, contributing to a shift in the practice of medicine with regards to the use of opioids in the treatment of pain. This change in the practice of medicine led to an increase in opioid prescriptions, an increase of opioids in interstate commerce, and an increase in inappropriate use of opioids, all of which in turn increased the risk of opioid abuse and contributed to a public health crisis.

Kessler Rpt. at 320.  While Defendants argued during *Daubert* briefing that Dr. Kessler is not a qualified expert on pharmaceutical marketing, the Court found that Defendants failed to raise this issue in their opening brief and declined to address the merits of the argument.  Kessler Order at 8 n.4.  Accordingly, Dr. Kessler may testify concerning the causal effect of manufacturers' marketing at trial.

Dr. Meredith Rosenthal, a Harvard economist, quantified the impact of manufacturers' marketing on opioid prescribing, opining that as much as 75% of all opioids prescribed in some years (measured in morphine equivalent doses) was "excess" prescribing that resulted from the manufacturers' marketing.  Rosenthal Rpt. at 8-9, 61, Table 5, ECF No. 1895-20.

4

The reports of two other experts, Drs. Ballantyne and Schumacher, contain similar causation opinions about the effect of manufacturers' marketing. *See* Ballantyne Rpt. ¶ 1, ECF No. 1875-39 ("[O]pioid manufacturers relentlessly, and successfully, pushed the medical community to expand the use of opioids for chronic pain, changing the standard of care in pain management."); Schumacher Rpt. ¶ 60, ECF No. 1895-21 ("[O]pioid manufacturers … promote[d] the widespread and longterm use of opioids" by trivializing "the risk of addiction" and overstating "the benefits of long-term opioid use.")  As discussed herein, Distributors seek to introduce only relevant portions of these reports as adoptive admissions consistent with the lines drawn by the Court in its *Daubert* rulings.

On their September 11, 2019, witness list, Plaintiffs identified Drs. Lembke, Kessler, and Rosenthal as prospective trial witnesses, and they remain so-listed.  On October 8, Plaintiffs objected that Defendants' identification as trial witnesses of these Plaintiffs'-listed experts was an unfair surprise.  ECF No. 2749 at 6.

## ARGUMENT

**I.     PLAINTIFFS' OBJECTION IS BASELESS.**

   **A.     Plaintiffs Cannot Claim Surprise That Their Own Listed Witnesses Will Testify at Trial.**

The Court's authority to exclude witnesses from trial based on a lack of disclosure comes from Rule 37(c)(1), which provides that "[i]f a party fails to … identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that … witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  There was no such failure here, and even if there were, it would be both justified and harmless.

Defendants' pre-trial witness list timely informed Plaintiffs that Defendants "reserve the right to supplement and/or to amend their lists with any witnesses identified on any party's

5

witness lists, including any party who later settles or is severed or dismissed." Ex. 6. That disclosure is fully compliant with Rule 26's mandate to identify those witnesses "the party expects to present *and those it may call if the need arises*." Fed. R. Civ. P. 26(a)(3)(A)(i).[1] Experts who Plaintiffs originally listed as witnesses but decided not to call because subsequent developments changed their strategic calculus are a classic example of the type of witness who may be called "if the need arises." As the advisory committee notes explain:

> Those who will probably be called as witnesses should be listed separately from those who are not likely to be called but are being listed *in order to preserve the right to do so if needed because of developments during trial*. Revised Rule 37(c)(1) provides that only persons so listed may be used at trial to present substantive evidence. This restriction *does not apply* unless the omission was without 'substantial justification' and hence would not bar an unlisted witness if the need for such testimony is based upon developments during trial that could not reasonably have been anticipated.

Fed. R. Civ. P. 26 (1993 Amend.), advisory committee note to subd. (a)(3). The development during trial that would make it necessary for Distributors to call these witnesses is if Plaintiffs do not call them during their own case. Because Defendants cannot know now whether Plaintiffs will call them, the experts were properly disclosed as contingent potential witnesses for Distributors. Plaintiffs are in no position to discredit that reservation, as they too have purported to "reserve the right to supplement and/or to amend their lists with any witnesses identified on any party's witness lists, including any party who later settles or is severed or dismissed." ECF No. 2721, at 8.

If anything, Distributors went beyond the rule's requirements by transferring the experts to their "expect to call" list after significant *pre-trial* developments made it less likely that

---

[1] All emphases are added unless otherwise indicated.

Plaintiffs would call them.  First came Plaintiffs' settlements with a number of manufacturers.  Then came Purdue's September 16 announcement that it would file for bankruptcy protection.  With Purdue being the manufacturer that Plaintiffs' experts hold most responsible for the deceptive marketing of prescription opioids, its absence from the trial, along with every other brand-name manufacturer, suggested that Plaintiffs would be far less likely to present their expert evidence about marketing and its impact on the standard of care, such that it would be necessary for Distributor Defendants to present it instead.

Plaintiffs' contention that allowing Distributors to call these witnesses would force them to prepare examinations "at the last minute" is absurd.  *See* ECF No. 2749 at 6.  Because they are on Plaintiffs' own witness list, they undoubtedly already are preparing to conduct examinations of the witnesses.  The harmlessness of a party being made to examine a witness already included on its own witness list is so obvious that Rule 37(c)'s drafters gave that as one of the examples of a "harmless" occurrence exempted from the rule:

> Limiting the automatic sanction to violations 'without substantial justification,' coupled with the exceptions for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations:  *e.g.*, . . . ***the failure to list as a trial witness a person so listed by another party***.

Fed. R. Civ. P. 37 (1993 Amend.), advisory committee note to subd. (c); *see also, e.g., Koenig*, 557 F.3d at 744 ("Delay in alerting Koenig that Dunbar might testify was as harmless as they come, given Dunbar's status as Koenig's expert"); *Beyer v. Anchor Insul. Co.*, 2017 WL 784962, *3 (D. Conn.) ("In cases like *Koenig*, it would be impossible for a party to claim surprise or ambush when its own expert appeared on a witness list.").

In short, Distributors complied with Rule 26, but even if they had not, the violation would be harmless.

### B. Distributors Have the Right to Call Plaintiffs' Experts.

While Plaintiffs did not object to these witnesses other than on the basis of surprise, they may argue that their decision not to call the experts bars Distributors from doing so. It is axiomatic, however, that "[o]nce a party has designated an expert witness as someone who will testify at trial, the later withdrawal of that designation may neither prevent the deposition of that witness by the opposing party nor the expert's testimony at trial." 6 Moore's *Fed. Prac. & Proc.* § 26.80. "With or without withdrawal of the designation, a party may introduce the opinion testimony of the opposing party's expert, either through introduction of the expert's deposition testimony or by calling the opposing party's expert witness to testify at trial." *Id.* Any other rule would be inimical to the core purpose of expert testimony, which is to assist the *trier of fact in its search for truth*, rather than to advance the interests of individual parties. *See, e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, 596–97 (1993).

Consistent with these principles, federal courts throughout the country have authorized parties to call at trial experts originally disclosed by their opposing party. In one frequently cited opinion, the Seventh Circuit held that a party could not be prevented from calling the opposing party's expert even where it had failed to give notice of its intention to do so in advance of its pretrial filings. *Koenig*, 557 F.3d at 744. While the original sponsoring party argued that it would have withdrawn the expert had it known of its opponent's intention, the Court rejected that argument: "But how could that have helped? A witness identified as a testimonial expert is available to either side; such a person can't be transformed after the report has been disclosed, and a deposition conducted, to the status of a trial-preparation expert whose identity and views may be concealed." *Id.* "Disclosure of the report ends the opportunity to invoke confidentiality," such that "nothing Koenig could have done would have blocked the SEC from using [the expert's] conclusions." *Id.*

8

Countless other courts agree, and indeed, "[t]he weight of authority favors allowing [a party] to introduce the opinion testimony of [the opposing party's] expert." *De Lange Landen Op. Svce. LLC v. Third Pillar Sys., Inc.*, 851 F.Supp.2d 850, 853 (E.D. Pa. 2012); *see also Benham v. Ozark Materials Rock River, LLC*, 885 F.3d 1267, 1276 (10th Cir. 2018) (that party "notified the court that it was withdrawing its expert" "provided no protection against admitting" the expert's opinions at trial); *Nat'l R.R. Passenger Corp. v. Certain Temp. Easements Above R.R. Right Of Way In Providence, Rhode Island*, 357 F.3d 36, 42 (1st Cir. 2004) (affirming trial court's decision to permit party to call adversary's expert witness "and to examine him as a hostile witness," because "[f]ederal law has rejected the notion that experts are privileged from compulsory testimony or that a party 'owns' the opinions of its expert"); *Kaufman v. Edelstein*, 539 F.2d 811, 818 (2d Cir. 1976) (Friendly, J.) (The Federal Rules do not "contain any suggestion that an expert enjoys either an absolute or a qualified privilege against being called by a party against his will"); *Kerns v. Pro-Foam of S. Ala., Inc.,* 572 F. Supp. 2d 1303, 1311 (S.D. Ala. 2007) ("[O]nce a party has given testimony through deposition or expert reports, those opinions do not 'belong' to one party or another, but rather are available for all parties to use at trial."); *House v. Combined Ins. Co. of Am.,* 168 F.R.D. 236, 245 (N.D. Iowa 1996) ("[O]nce an expert is designated, the expert is recognized as presenting part of the common body of discoverable, and generally admissible, information and testimony available to all parties."); *Brigham Young Univ. v. Pfizer, Inc.,* No. 2:12-MC-143 (TS) (BCW), 2012 WL 1029304, at *5 (D. Utah Mar. 26, 2012) ("Plaintiffs' designation of . . . a testifying expert—when that designation was withdrawn at such a late time in the case and after expert reports were issued—removes the question of whether that expert should be able to be deposed and used at trial"); *Agron v. Trustees of Columbia Univ. in City of New York,* 176 F.R.D. 445, 449 (S.D.N.Y. 1997) (opposing party's expert could be called at trial because "Plaintiff voluntarily provided

9

Defendant with a copy of the [expert's] Report and disclosed [his] opinions in response to Defendant's interrogatories"); *Penn Nat'l Ins. Co. v. HNI Corp.*, 245 F.R.D. 190, 193-94 (M.D. Pa. 2007) (permitting defendant to call plaintiffs' experts because disclosure of their reports "waived the protection of Rule 26(b)(4)(B) and subjected these experts' opinions to the scrutiny of trial").[2]

Accordingly, Distributors have the right to call Drs. Lembke, Kessler, and/or Rosenthal in their case. Should Plaintiffs call these witnesses, then Distributors naturally would examine them during Plaintiffs' case. But if they do not, then Distributors will have every right to draw upon the "common body of discoverable, and generally admissible, information" that was created when Plaintiffs disclosed their reports. *House,* 168 F.R.D. at 245.

### C. The Probative Value of Permitting Distributors to Call One or More of Plaintiffs' Experts Outweighs Any Unfair Prejudice.

Plaintiffs may argue that their own experts should be excluded from Distributors' case under Rule 403. If so, then, the Court should reject any such argument as entirely unfounded.

First, any such objection was waived when Plaintiffs failed to object on those grounds in their October 8 filing. *See* ECF No. 2749, at 6–7.

Second, the probative value of the testimony to be offered by Drs. Lembke, Kessler, and Rosenthal is immense, as Plaintiffs themselves recognize by having sponsored their testimony in

---

[2] The Sixth Circuit has not addressed this issue other than through an unpublished opinion in the inapposite context of an attempt to call an opposing party's *consulting* expert. *See Zvolensky v. Ametek, Inc.*, 142 F.3d 438, 1998 WL 124047, *2 (6th Cir. 1998) (Table). Key to the non-precedential holding in *Zvolensky* was that the defendant had voluntarily foregone an opportunity to discover the expert's opinions in a deposition "even after the court ordered that his deposition be taken." *Id.* Because the expert's opinions had not been disclosed or discovered, Rule 26(b)(4) allowed the plaintiff to protect them as work product. *Id.* That circumstance is vastly different from when, as here, a party voluntarily waives Rule 26(b)(4) protection by disclosing the expert's opinions in a written report, and listing the expert as a trial witness, as the authorities cited above recognize.

10

the first place, vigorously defended them through the *Daubert* phase, and then included them on their witness list (where they remain listed today).  Therefore, there can be no unfair prejudice to Plaintiffs by admitting their testimony.  The subjects upon which these experts would testify are centrally relevant to several core issues—topics that Plaintiffs put at issue in their Complaints.  Lembke and Kessler speak to the central role that actors other than the current defendants played in changing the standard of care for prescribing opioids, including the extent to which their messages were intentionally misleading, manipulative, and otherwise wrongful.  Their opinions undercut Plaintiffs' theory of liability against Distributors, which is that the sheer volume of opioids distributed to Cuyahoga and Summit Counties was "so high as to raise a red flag that not all of the prescriptions being ordered could be for legitimate medical uses"—and, further, that Distributors conspired to ignore that red flag.  Cuyahoga Third Am. Compl. ¶¶ 653, 810.  Their opinion that manufacturers' marketing changed the standard of care to endorse the increased use of opioids to treat chronic pain also means that increased pharmacy orders were not suspicious—and due diligence would not have found them to be suspicious—because they merely reflected the increased prescribing encouraged by the prevailing standard of care.

      Nothing shifts the balance to exclusion.  Rule 403 is concerned with **unfair** prejudice, *see* Fed. R. Civ. P. 403, and there is nothing unfairly prejudicial in permitting opinion testimony against a party that has affirmatively sponsored and adopted those same opinions.  Even now, Drs. Lembke, Kessler, and Rosenthal are on Plaintiffs' witness list and could be called at trial if Plaintiffs fail to settle with the remaining Manufacturer Defendants.  Any changes that may occur in Plaintiffs' trial strategy as a result of further settlements would not make it unfairly prejudicial to have their own identified witnesses testify at trial.  Whatever additional concerns Plaintiffs may raise in response to this motion pale in comparison with making sure that the finder of fact in this bellwether trial has all the necessary evidence and information.  For

11

instance, should Plaintiffs raise a concern about who will compensate their experts for their appearances, Distributors will do so, at their standard hourly rates. These and other issues can be readily managed with procedures far less severe than exclusion of the witnesses.

For all of these reasons, the Court should issue an Order making it clear that, if Plaintiffs do not call any of Drs. Lembke, Schumacher, Kessler, or Rosenthal at trial, then Defendants may do so instead.

## II. PLAINTIFFS' EXPERTS' REPORTS ARE ADMISSIBLE AS ADOPTIVE ADMISSIONS.

In addition to calling the experts at trial, Distributors are entitled to admit their reports as substantive evidence. Plaintiffs' adoption of their reports with knowledge of their contents constitutes an admission under Evidence Rule 801(1)(D)(2)(B).

"Fed. R. Evid. 801(d)(2)(B) permits a court to allow into evidence a statement as non-hearsay if '[t]he statement is offered against a party and is … a statement of which the party has manifested an adoption or belief in its truth.'" *Neuman v. Rivers*, 125 F.3d 315, 320 (6th Cir. 1997) (quoting *United States v. Jinadu,* 98 F.3d 239, 244 (6th Cir. 1996)). This standard is easily met in the context of expert opinions affirmatively sponsored by parties where, as here, they are intended to be offered against the sponsoring parties to establish factual contentions they have long-placed at the heart of their case.

Plaintiffs necessarily "manifested an adoption or belief in [the] truth" of their experts' opinions when they affirmatively disclosed them to Defendants. Had Plaintiffs disagreed with any of their experts' opinions, they were under no obligation to allow them to see the light of day. *See, e.g.*, *Lear Automotive Dearborn, Inc. v. Johnson Controls, Inc.*, 789 F.Supp.2d 777, 782 (E.D. Mich. 2011) (party's disclosure of expert testimony "manifested an adoption or belief in the truth" of the information upon which the expert relied); *Fox v. Taylor Diving & Salvage*

12

*Co.*, 694 F.2d 1349, 1355-56 (5th Cir. 1983) (theories disclosed in expert report that contradicted party's position at trial constituted adopted admissions); *see also Benham*, 885 F.3d at 1276 (report of withdrawn expert properly admitted at trial, because while the Federal Rules "protect against the *discovery* of this expert material, they have nothing to do with the *admissibility* of already-disclosed material").

Plaintiffs have not merely manifested a belief in the truth of these opinions, from the outset they have placed them at the center of their case. The Complaints squarely blame the opioid crisis on manufacturers' misleading marketing and influencing campaigns, and these opinions were disclosed in order to prove that core contention. That theory of Plaintiffs' case deliberately places at least three layers of actors ahead of Distributors in the causal chain: (1) Manufacturers who allegedly maliciously and deceptively changed the standard of care for profit-driven reasons; (2) doctors who changed their prescribing practices in response to that standard of care; and (3) pharmacieswho increased their orders of prescription opioids to meet the rising demand resulting from increased prescribing. The opinions of the above-referenced experts are wholly consonant with that case, which Plaintiffs have pursued from Day One. Their reports are admissible *against* Plaintiffs as adoptive admissions.[3]

Alternatively, if Plaintiffs refuse to make these experts available at trial, then relevant portions of their reports would be admissible as "statement[s] offered against a party that wrongfully caused – or acquiesced in wrongfully causing – the declarant's unavailability as a

---

[3] To be sure, courts have held that a party may not submit *its own* experts' reports as evidence in support of its claims. *See, e.g., Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994). That is because such reports are hearsay when used in support of the party originally sponsoring them because the rule on adoptive admissions requires that the statement be introduced "*against* [the] party" that manifested a belief in its truth. *Neuman*, 125 F.3d at 320.

13

witness, and did so intending that result." *See* Fed. R. Evid. 804(b)(6).  As the Sixth Circuit explained in a case pre-dating Rule 804(b)(6)'s formal adoption, "English and American courts have consistently relaxed the hearsay rule when the defendant wrongfully causes the witness's unavailability." *Steele v. Taylor*, 684 F.2d 1193, 1201 (6th Cir. 1982).  "The theory of the cases appears to be that the disclosure of relevant information at a public trial is a paramount interest, and any significant interference with that interest, other than by exercising a legal right to object at the trial itself, is a wrongful act."  *Id.*  "Wrongful conduct obviously includes the use of force and threats, ***but it has also been held to include persuasion and control*** …."  *Id.*; *see also United States v. Scott*, 284 F.3d 758, 764 (7th Cir. 2002) (the rule "contemplates application against the use of . . . pressure to silence testimony and impede the truth-finding function of trials").

Plaintiffs' ability to control the appearance of Drs. Lembke, Kessler, and Rosenthal is established by the fact of their inclusion on Plaintiffs' trial witness list.  Plaintiffs presumably also have agreements in which these experts formally agree to appear, if called, at trial.  If they do not appear despite being called by Distributors, that could only be because Plaintiffs caused or acquiesced in the decision for them not to appear at trial.  Because such actions are inherently wrongful in the context of a trial at which these Plaintiffs are seeking multiple billions of dollars in damages and abatement remedies, the reports of unavailable experts are not hearsay when admitted against Plaintiffs.  *Steele*, 684 F.2d at 1201.

### III.     IF PLAINTIFFS' EXPERTS RESIST APPEARING AT TRIAL, THE COURT SHOULD ALLOW *DE BENE ESSE* DEPOSITIONS.

The experts are under Plaintiffs' control and can be compelled to appear at trial because each charged fees to prepare opinions intended to be offered at trial in this matter.  *See* Fed. R. Civ. P. 45(c)(1)(B)(2) (person who regularly transacts business in a jurisdiction may be

14

commanded to appear at trial, though it is more than 100 miles from their residence, if they "would not incur substantial expense"); *see also Penn. Nat'l Ins.*, 245 F.R.D. at 195 ("Should [plaintiffs' experts] refuse to appear at trial, Hearth & Home may seek subpoenas commanding their attendance."); *Kaufman*, 539 F.2d at 818 (Friendly, J.) (courts can compel the appearance at trial of expert witnesses who object to testifying).[4]

      Nevertheless, should Plaintiffs' experts refuse to appear live at trial, and should the Court not compel their appearance, then the Court should in the alternative permit Distributors to depose them *de bene esse*, i.e., depose them for the specific purpose of preserving trial testimony of witnesses who will not appear in person. By retaining experts residing more than 100 miles from the Court, Plaintiffs effectively secured the availability of those witnesses to support their case, and simultaneously their potential unavailability for testimony that would harm their case, making it appropriate to conduct a deposition *de bene esse* to secure their testimony for trial. *See In re N.C. Swine Farm Nuisance Litig.*, 2016 WL 3742135 (E.D.N.C. 2016) (authorizing depositions *de bene esse* where experts resided more than 100 miles from the court, and were otherwise unavailable for trial). Such depositions are properly treated as trial examinations, not extensions of discovery, because their purpose is to preserve testimony that otherwise would be unavailable at trial. *Id.*; *see also Lucas v. Pactiv Corp.*, 2009 WL 5197838, at *4 (W.D. Va. Dec. 22, 2009) (denying party's motion to quash *de bene esse* depositions and rejecting argument that the depositions should have been taken during the discovery period).

      That relief is particularly appropriate here because the Manufacturers' participation in expert discovery limited Distributors' ability to take depositions that could be used **as trial**

---

[4] Distributors would, of course, pay for the travel and lodging of these experts if they were the ones to call them at trial.

*testimony*. Defendants sought two deposition days with 15 of Plaintiffs' experts, but were only permitted 10 multi-day depositions. ECF No. 1531-2. Of the experts discussed in this motion, only Drs. Kessler and Rosenthal were deposed for multiple days. *See* Ex. 1-5. Given the extensive, specific opinions offered by these experts against various manufacturers, fairness prevented Distributors and Pharmacies from demanding more deposition time with these witnesses. For example, manufacturers' counsel examined Dr. Rosenthal for twelve hours (inclusive of breaks); Distributors then had only under two hours for their examination. *See* Ex. 2, 3. Manufacturers' counsel questioned Dr. Kessler for nearly 14 hours, leaving just three minutes for Distributors' and Pharmacies' counsel. *See* Ex. 4, 5. Half a dozen manufacturers deposed Dr. Lembke during her one-day deposition, again leaving little time for Distributors. Ex. 1. The limited time available to Distributors to conduct these examinations made it effectively impossible to conduct examinations that could be introduced at trial, making it necessary to conduct trial depositions *de bene esse* if that is the only means by which these experts can be made to appear at trial.

## CONCLUSION

For all of these reasons, Distributors respectfully request that the Court overrule Plaintiffs' objection to having their own listed witnesses appear at trial, and to grant the further relief sought herein.

Respectfully submitted,

Dated: October 11, 2019              Respectfully Submitted,

*/s/ Shannon E. McClure*  
Shannon E. McClure  
REED SMITH LLP  
Three Logan Square  

*/s/ Eni Mainigi*  
Enu Mainigi  
F. Lane Heard III  
George A. Borden

16

1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Fax: (215) 851-1420
smcclure@reedsmith.com

*Counsel for Defendant AmerisourceBergen Drug Corporation*

*/s/ John P. McDonald*
John P. McDonald
Texas Bar No. 13549090
jpmcdonald@lockelord.com
C. Scott Jones
Texas Bar No. 24012922
sjones@lockelord.com
Lauren M. Fincher
Texas Bar No. 24069718
lfincher@lockelord.com
Brandan J. Montminy
Texas Bar No. 24088080
brandan.montminy@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
T: 214-740-8445
F: 214-756-8110

*Attorneys for Henry Schein, Inc. and Henry Schein Medical Systems, Inc.*

Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
gborden@wc.com
ahardin@wc.com

*Counsel for Defendant Cardinal Health, Inc.*

*/s/ Geoffrey Hobart*
Geoffrey E. Hobart
Mark Lynch
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com

*Counsel for McKesson Corporation*

17

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

**CERTIFICATE OF SERVICE**

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

>  */s/ Ashley W. Hardin*
>  Ashley W. Hardin