# EXHIBIT 2

October 1, 2019

Deborah S. Hunt, Clerk
United States Court of Appeals for the Sixth Circuit
100 East Fifth Street, Room 540
Potter Stewart U.S. Courthouse
Cincinnati, OH 45202-3988

      Re:    Case No. 19-3827, In re: State of Ohio
             Originating Case No. 1:17-md-02804; 1:18-op-45090; 1:17-op-45004

Dear Ms. Hunt:

Thank you for the opportunity to respond to the petition for mandamus filed by Ohio Attorney General Yost.

As the Court of Appeals is aware, "mandamus relief is an extraordinary remedy, only infrequently utilized" by the Sixth Circuit. *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008) (quoting *In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997)). The relief sought by the State of Ohio in its mandamus petition is even more extraordinary in this instance, for at least three reasons. First, the State of Ohio's request is untimely in the extreme. Second, the State of Ohio bases its petition entirely upon a clearly faulty premise. And third, the State of Ohio does not challenge any specific ruling by me, but rather seeks to have the Sixth Circuit delve broadly into State-specific policy by "[i]ssuing a writ that prevents [all] subdivisions from getting ahead of their respective States in litigating state-wide issues." Pet. at Page: 39.

**Timeliness**

The State of Ohio files its petition on the eve of the first MDL bellwether trial, with opening statements scheduled for October 21, 2019. The petition comes nearly ***two years*** after bellwether Plaintiff Cuyahoga County first filed its complaint (in November of 2017); ***17 months*** after the Court set Cuyahoga County's claims for trial (in April of 2018) (*see* Doc. #: 232); and ***9 months*** after I ruled the bellwether Plaintiffs had standing to bring their claims (*see* Doc. #: 1203).

When Cuyahoga County filed its complaint, former Ohio Attorney General Mike DeWine had already filed one opioid lawsuit against many of the same defendants on behalf of the citizens of Ohio. Notably, then-Attorney General DeWine chose not to attempt to prevent Cuyahoga County, or any other Ohio city or county, from pursuing their own opioid cases.[1] On December 19, 2018, I issued an order concluding that the bellwether Plaintiffs had standing to bring their

---

[1] Nor, apparently, would former Attorney General DeWine want to prevent these cases if he still held that office. Governor DeWine has made public statements rejecting Attorney General Yost's position. *See* Andrew J. Tobias, *Gov. Mike DeWine calls Yost's opioid lawsuit takeover plan a 'serious mistake'*, Cleveland.com (updated Aug. 28, 2019), https://www.cleveland.com/open/2019/08/gov-mike-dewine-calls-yosts-opioid-lawsuit-takeover-plan-a-serious-mistake.html.

claims.[2] Again, neither then-Governor-elect DeWine nor then-Attorney General-elect Yost made any attempt to challenge that decision. On January 14, 2019, Attorney General Yost was sworn in, and still no attempt was made to overturn my conclusion until the eve of trial.

Laches can apply to petitions for writ of mandamus and clearly should in this instance. *Cheney v. U.S. District Court for D.C.*, 542 U.S. 367 (2004); *U.S. v. Olds*, 426 F. 2d 564 (3rd. Cir 1970). Other circuits have rejected attempts to obtain mandamus on the eve of trial. *See, e.g., In re Sea Ray Boats, Inc.*, 695 F. App'x 543, 544 (Fed. Cir. 2017).

For nearly two years, the State of Ohio remained silent while Ohio's cities and counties conducted tens of millions of dollars' worth of discovery, engaged in massive amounts of legal briefing, and even reached settlement agreements with some defendants. Only after the bellwether plaintiffs reached settlement agreements with some defendants did Attorney General Yost file his petition. Indeed, Attorney General Yost accepted my invitation to attend settlement conferences regarding defendant Purdue, over which I presided. Just because the new Attorney General now feels differently than the former Attorney General does not give the State of Ohio a new chance to upend the imminent bellwether trial.

**Faulty Premise**

The State's petition is based on a faulty premise. The Ohio Attorney General's petition states repeatedly that only the Attorney General's Office can litigate on behalf of its citizens. While it may be true that "a political subdivision 'may not sue to enforce its residents' rights," Pet. at Page: 18, the bellwether Plaintiffs have consistently stated, and I have likewise repeatedly concluded, that the city and county Plaintiffs do not seek recovery based on injuries to individual residents; rather the Plaintiffs seek recovery *for direct injuries suffered by the Plaintiffs themselves*. *See* Doc. #: 654 at PageID #: 15721; Doc. #: 1115 at PageID #: 27541; Doc. #: 1203 at PageID #: 29034. That the relief sought by the Plaintiff cities and counties for their own injuries, if granted, will also tend to collaterally benefit their residents, does not mean that Plaintiffs seek to litigate on behalf of those residents.

Moreover, many of Ohio's statutes at issue in the bellwether case expressly authorize the type of actions that the State of Ohio is now suddenly trying to prevent. *See, e.g.*, Ohio Rev. Code § 715.44(A) ("A municipal corporation may abate any nuisance and prosecute in any court of competent jurisdiction, any person who creates, continues, contributes to, or suffers such nuisance to exist."); *see also* Ohio Rev. Code § 3767.03 ("Whenever a nuisance exists . . . the prosecuting attorney of the county in which the nuisance exists . . . may bring an action in equity . . . to abate the nuisance and to perpetually enjoin the person maintaining the nuisance from further maintaining it.").

---

[2] My ruling on Article III standing was made on December 19, 2018. The State of Ohio could have intervened and requested the relief it now seeks from the Circuit. Despite the State of Ohio's protestations that it is not required and cannot be made to intervene, it is clear that the State could have done so. *See Stringfellow v. Concerned Neighbors in Action*, 480 U. S. 370 (1987). Furthermore, the State could have intervened in a limited capacity. *See U. S. v. City of Detroit*, 712 F. 3d 925 (6th Cir. 2013). Instead, however, the State of Ohio elected to pursue the extraordinary writ in lieu of raising the issue with me.

**State-Specific Policy**

To the extent the State of Ohio now contends the current laws of the State prohibit the claims of the bellwether Plaintiffs, the Attorney General should seek relief in State court, not this Court.[3] As the Attorney General points out, "[s]tructurally, of course, only state courts can make 'authoritative' interpretations of state law." Pet. at Page: 35 (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 395 (1988)). "Federal courts should 'pause' before 'intrud[ing] into the proper sphere of the States.'" *Id.* at Page: 40 (quoting *Missouri v. Jenkins*, 515 U.S. 70, 131 (1995) (Thomas, J., concurring)).

The State of Ohio effectively asks the Sixth Circuit to throw out roughly 2,000 cases on the eve of the first bellwether trial. Purportedly for the sake of "vindicating federalism," the State of Ohio asks the Sixth Circuit to determine the substantive relationships, not just between Ohio and its cities and counties, but also of *all other* States and their own cities and counties, as well—a task which, under those same principles of federalism, individual State courts are better suited to address.[4]

For all these reasons, the petition for mandamus should be denied.

Sincerely,

Dan Aaron Polster

---

[3] It is not clear that even Attorney General Yost believes Ohio law prohibits these cases. In addition to not bringing an action to prevent these cases in state court, he is currently backing legislation that will give his office exclusive control over these cases. *See* Jeremy Pelzer, *Bill seeks to give Ohio AG Dave Yost control over local opioid lawsuits*, Cleveland.com (updated Aug. 28, 2019), https://www.cleveland.com/open/2019/08/bill-seeks-to-give-ohio-ag-dave-yost-control-over-local-opioid-lawsuits.html. If Attorney General Yost believes he needs to change Ohio law to give his office control over these cases, he cannot credibly argue that I committed legal error by allowing them to go forward under the current laws.

[4] For example, the Tennessee Attorney General moved to intervene in similar actions in Tennessee state courts. *See, e.g.*, March 20, 2018 Letter of 14 DAs to Tenn. AG at 1-3 (referring to the Tenn. AG's several motions to intervene in each pending lawsuit and citing Tenn. state cases describing the authority of the Tenn. Attorney General and defining the relationship between the Tenn. AG and municipality District Attorneys) (available at https://tnbabydoe.com/wp-content/uploads/2018/03/3-20-18-Letter-to-Slatery-from-DAs.pdf).