# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track One Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

## WALGREENS' REPLIES IN SUPPORT OF ITS MOTIONS *IN LIMINE*

Walgreens submits these replies in support of its motions *in limine*.  Dkt. 2648 ("MIL").

## I. W-1: To exclude Walgreens' ownership interest in ABDC

Walgreens moved to preclude evidence or argument about its equity ownership interest in ABDC because it is irrelevant to plaintiffs' claims under Rule 402; and unfairly prejudicial, misleading, and confusing (as well as a waste of precious time) under Rule 403.  In response, plaintiffs do not contest any of Walgreens' arguments for exclusion under Rule 403.  And plaintiffs' arguments about relevance do not apply to the actual evidence at issue.

*First*, plaintiffs' response does not change the fact that an alleged conspiracy between ABDC (as a distributor) and Walgreens (as ABDC's customer) has no bearing on plaintiffs' actual claims in these lawsuits, which they have expressly limited to claims regarding Walgreens' alleged conduct as a distributor itself.  Plaintiffs cannot deny that they have repeatedly disclaimed causes of action based on Walgreens' conduct as a pharmacy, or that this Court has held that Walgreens can "only be held liable *as [a] distributor[]*."  Dkt. 1203 at 2 (emphasis added).  Nor do plaintiffs dispute that the first time they even *suggested* that Walgreens' liability might extend beyond 2014—when Walgreens stopped distributing prescription opioid medications—was in their summary judgment briefing.

There is no basis for an argument, months after the close of discovery and on the eve of trial, that plaintiffs' election to limit their claims to Walgreens' distribution conduct silently carved out an exemption for their civil conspiracy claim.  Once Walgreens stopped distributing, by definition it ceased any conduct that could be relevant to plaintiffs' claims.  In fact, plaintiffs admit that the "relevance" of the evidence at issue relates to ABDC's SOM procedures for "orders for prescription opioids placed by Walgreens's pharmacies," Opp. at 83—in short, *to Walgreens' conduct as a pharmacy*.  It is far too late in the day for plaintiffs to walk away from

1

their prior concessions and expand the scope of their claims, an expansion that would entitle Walgreens to take additional discovery relevant to an alleged post-2014 "conspiracy" and to submit supplemental expert reports to address such new claims.

*Second*, even assuming that Walgreens' post-distribution conduct had some relevance to plaintiffs' civil conspiracy claim, plaintiffs do not explain why the evidence Walgreens seeks to exclude—regarding its equity ownership interest in ABDC—would be relevant.  Plaintiffs argue in the most general terms that "financial interests and connections" can be relevant to conspiracy claims.  Opp. at 83.  And so, Walgreens does not seek to exclude evidence that its pharmacies sell prescription opioid medications, that ABDC has acted as a distributor to Walgreens, or that Walgreens communicated with ABDC about SOM.  But it is also undisputed that the relevant agreements expressly forbid Walgreens from exercising any control or influence over ABDC, thus depriving evidence of stock ownership or a board seat of any probative value.  MIL at 2.

*Third*, at the same time, the risk of unfair prejudice, along with the risk that jurors will be confused or misled, is substantial and warrants exclusion under Rule 403.  Not only would such evidence misleadingly suggest control, influence, or responsibility for ABDC's conduct, it could also inflame juror bias towards large corporations.  Plaintiffs do not dispute any of this.  But these risks are precisely why other courts routinely exclude evidence of this sort.  *See, e.g.*, *Jay Cashman, Inc. v. Portland Pipe Line, Inc.*, 573 F. Supp. 2d 335, 336 (D. Me. 2008) (ownership evidence irrelevant and "runs a significant risk of unfair prejudice"); *Brian v. Advanced Bionics, LLC*, 2013 WL 12234530, at *2 (W.D. Ky. March 22, 2013) (evidence could "prejudice the jury" by "cast[ing] Defendant as a corporate giant that can absorb a large adverse verdict").

*Finally*, plaintiffs do not dispute that the efforts Walgreens would be forced to undertake to rebut the false inferences from this evidence would be a time-consuming distraction from the core issues of this case.  *See* MIL at 3.  That waste of limited time is reason enough exclude the

2

evidence of Walgreens' equity ownership interest in ABDC under Rule 403.

## II.     W-2: To exclude Walgreens' Florida DEA action and related settlement[1]

Plaintiffs' response to Walgreens' second motion *in limine* fails for several reasons.

*First*, Rule 408 directly bars use of Walgreens' Florida settlement with DEA to prove plaintiffs' claims.  MIL at 5-6.  Plaintiffs attempt to avoid Rule 408 by suggesting that the DEA settlement involved "some other claim."  Opp. at 53-54.  But plaintiffs do not deny that they intend to use the settlement to prove liability *in this case*.  In fact, they admit it just a few pages later in an effort to show that the settlement is relevant.  Opp. at 57 (arguing that the settlement "concern[s] the same violations alleged here"); *id.* at 85 (arguing that Walgreens' shipments to Florida caused harm in Ohio).  Plaintiffs are wrong about relevance, but there is no question that the *purpose* for which they seek to use this evidence is impermissible under Rule 408.

*Second*, Plaintiffs cannot save their intended misuse of Florida settlement evidence by appealing to Rule 406.  Fundamentally, a rule about *relevance* cannot supersede a policy-based bar on *admissibility*.  The Federal Rules plainly contemplate the exclusion of relevant evidence.  *See, e.g.*, FED. R. EVID. 403 ("The court may exclude relevant evidence if . . . .").  In any event, a *single* settlement in *Florida* could never amount to a "routine practice" in Ohio.  For the same reason, plaintiffs' attempt to suggest that the settlement shows that Walgreens' conduct "was intentional and persisted over a lengthy period of time" falls flat.  *See* Opp. at 54-57.  Unlike other distributors, Walgreens did not enter multiple settlements over any length of time.[2]

---

[1] Walgreens also moved to exclude six Orders to Show Cause issued to Florida pharmacies and a 2011 settlement involving a California pharmacy—each of which involved *dispensing* allegations only.  MIL at 4 n.2.  Plaintiffs have not opposed that request.  That aspect of Walgreens' motion should be granted regardless of the Court's ruling on the settlement and Order to Show Cause relating to Walgreens' Florida distribution center.

[2] Plaintiffs incorporate by reference their arguments in § B.1 of their omnibus response.  Opp. at 84.  Walgreens likewise incorporates the distributors' reply in support of Dkt. 2666, MIL D-1.

*Third*, the Florida settlement and OTSC are, in fact, *irrelevant*.  The fact of settlement says nothing about the merits of the underlying allegations.  MIL at 5 n.3 (collecting authority).  Courts have rejected the suggestion that government investigations or even sanctions are evidence of wrongdoing.  *Id.* at 6 (collecting authority).  And that is on top of the fact that the allegations about conduct in Florida have no connection to plaintiffs' Ohio claims.  Plaintiffs' response involves generalized assertions about pill "migration," Opp. at 84-85, and a truly remarkable notion that *any* evidence that Walgreens' improperly shipped a suspicious order *anywhere* is evidence of damages *everywhere*, *id.* at 85.  But plaintiffs do not (and cannot) dispute that neither they nor their experts have established any evidentiary nexus between distribution in Florida and either of the Track One counties.  MIL at 6-7.

*Fourth*, plaintiffs' answer to Walgreens' arguments about prejudice under Rule 403 is to baldly assert that jurors are unlikely to conclude that Walgreens' settlement of alleged "CSA violations" is an admission of liability for plaintiffs' claims **based on alleged CSA violations**.  *See* Opp. at 59.  Plaintiffs' argument makes no sense, and flies directly in the face of the Sixth Circuit's view that the impact of settlement evidence is "profound" and no amount of evidence of liability, even with a "limiting instruction," is "sufficient to cure [its] wrongful admission." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 800, 805 (6th Cir. 2007).

*Finally*, plaintiffs offer no response at all to the unfair prejudice of introducing the Florida OTSC's preliminary, unproven allegations and improper legal conclusions.  MIL at 6.  Nor do they dispute that the introduction of evidence about the OTSC or subsequent settlement would require a whole trial in itself, wasting valuable time and confusing the jury.  *Id.* at 7.

### III.  W-3: To exclude references to Joseph Rannazzisi as the "60 Minute Man"

In response to Walgreens' motion to exclude evidence or argument referring to DEA witness Joseph Rannazzisi as the "60 Minute Man," plaintiffs admit that they plan to use such

references for exactly the impermissible purpose that Walgreens raised as a basis for exclusion—to bolster Mr. Rannazzisi's credibility.  "Indeed," plaintiffs state, "a reputable news outlet's use and reliance on Mr. Rannazzisi's comments in a national broadcast or publication constitutes valid and admissible evidence of his credibility."  Opp. at 87.  But Mr. Rannazzisi's credibility is for the jury to determine on its own, based on their evaluation of his testimony and demeanor, not based on hearsay evidence that cannot be tested in court.  Evidence of Mr. Rannazzisi's credibility is therefore prohibited under Rule 404.  FED. R. EVID. 404(a) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character trait.").  Moreover, the parties have stipulated that neither side shall offer evidence or argument "that bolsters the unchallenged character (e.g., honest) or traits (e.g., generous) of any party's . . . witnesses."  Dkt. 2647 at 2 ¶ 3.  Plaintiffs' planned use of the "60 Minute Man" references flies in the face of this stipulation and Rule 404(a).  Walgreens' motion to exclude these references should be granted.

Dated: October 14, 2019

Respectfully Submitted,

 /s/ *Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Matthew W. Brewer
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
matthew.brewer@bartlitbeck.com

Alex J. Harris
**BARTLIT BECK LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreen Co.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of October, 2019, the foregoing has been served via CM/ECF to all counsel of record.

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr

*Counsel for Walgreen Co.*