# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*Track One Cases* | MDL NO. 2804<br><br>Civ. No. 1:17-md-02804-DAP<br><br>HON. JUDGE DAN A. POLSTER |

## MCKESSON CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT

**TABLE OF CONTENTS**

Page

I.     MCK-1: The Court Should Prohibit Any Reference to Baseless Accusations. ............1

II.    MCK-2: The Court Should Prohibit Evidence or Argument About the U.S. House of Representatives Energy and Commerce Committee's Investigation. ............2

III.   MCK-3: The Court Should Prohibit the Introduction of Nationwide Trends in Drug Deaths..................................................................................................................3

IV.   MCK-4: The Court Should Prohibit Plaintiffs From Introducing Evidence or Argument About Allegations Contained in Letters From the DEA or DOJ.................4

V.     MCK-5: The Court Should Prohibit Introduction of Testimony From McKesson Witness Nathan Hartle Because of Plaintiff's Badgering and Abusive Conduct. ......................................................................................................4

VI.   CK-6: The Court Should Prohibit Introduction of Documents Related to McKesson's Relationship with CVS and Rite Aid In Light of Severance. ...................5

## I. MCK-1: The Court Should Prohibit Any Reference to Baseless Accusations.

Plaintiffs make no attempt to defend the propriety of their deposition questions regarding a false "conspiracy" involving former Attorney General Eric Holder. Nor could they. These questions were not asked in any attempt to discover facts. Their sole purpose was to harass McKesson's employees with fabricated accusations of wrongdoing. Plaintiffs' argument that they ultimately declined to designate these questions for trial also misses the point. Given their track record in discovery, there is no reason to doubt that plaintiffs will seek to interject this or other similar accusations at trial during the questioning of McKesson's witnesses.

Moreover, plaintiffs have designated deposition questioning related to the unfounded accusation that Mr. John Hammergren "knowingly provided false information" during his 2018 congressional testimony. This questioning is highly prejudicial and, given its lack of any evidentiary basis, entirely irrelevant. *See* Fed. R. Evid. 402, 403. First, there has never been any suggestion by a member of Congress or anyone else involved in the hearing that Mr. Hammergren's testimony was untruthful. Second, contrary to their assertions, plaintiffs' questions on this topic did not focus on a valid "factual dispute," but rather repeatedly asked witnesses to admit that Mr. Hammergren had "committ[ed] perjury." *See, e.g.*, Dkt. 2173-50 (Oriente Tr.) at 269:13-15. These questions were not only harassing and unfounded, they also improperly sought legal conclusions from a fact witness with no relevant knowledge. *Id.* at 265:10–16 ("I am not familiar with our marketing side of the business.").[1]

Allowing plaintiffs to play this testimony, or to otherwise question witnesses about these

---

[1] Mr. Hammergren did not testify, as plaintiffs claim, that McKesson does not "market opioids to … pharmacists." Pl. Opp. at 92. Mr. Hammergren testified that McKesson does not market "any particular categories" of drugs to pharmacies. *See* Testimony of J. Hammergren (May 8, 2018), *available at* https://docs.house.gov/meetings/IF/IF02/20180508/108260/HHRG-115-IF02-Wstate-HammergrenJ-20180508.pdf. That is indisputably true. The limited programs that McKesson offered to provide manufacturer product information to pharmacies were available for any FDA-approved product, and plaintiffs cannot offer a single shred of evidence suggesting otherwise. Plaintiffs inaccurate representation proves McKesson's point: this is not an evidentiary dispute; it is a distracting false attack.

1

unfounded accusations, would significantly prejudice McKesson and waste the jury's time by requiring McKesson to litigate allegations, not about its alleged wrong-doing, but about the veracity of statements made by a former employee.  Especially given the extremely limited amount of time that McKesson has to present its defense, this evidence should be excluded to "avoid a trial within a trial." *Chism v. CNH Am. LLC*, 638 F.3d 637, 642 (8th Cir. 2011).

## II. MCK-2: The Court Should Prohibit Evidence or Argument About the U.S. House of Representatives Energy and Commerce Committee's Investigation.

Plaintiffs' assertion that the Energy and Commerce Committee's report fits into Rule 803(8)'s exception, *see* Pl. Opp. at 93–94, is untrue.  As an initial matter, the report was not bipartisan; it was prepared by the committee's "Majority Staff."  *Id.* Ex. 23.  More problematic, however, is not any action by Congress, but Plaintiffs' efforts to influence the investigation.  Plaintiffs do not dispute their involvement, but simply argue that McKesson cannot shown that the report was prepared primarily to assist them.  That is not the standard.  *See Westinghouse v. Savannah River Co.*, 406 F.3d 248, 264 (4th Cir. 2005) (excluding report that "referr[ed] to a complaint from … a plaintiff"); *Anderson v. City of New York*, 657 F. Supp. 1571, 1577–79 (S.D.N.Y. 1987) (excluding report involving "self-interested" parties).  Given plaintiffs' efforts to influence the investigation by, at minimum, briefing congressional staff (Ex. 1), and advising how to cross-examine distributors (Ex. 2), plaintiffs cannot claim that the investigation took place in an environment free outside influence.

Beyond the report itself, the Court should also prohibit all reference to the investigation or its findings as irrelevant and prejudicial.  *See* Fed. R. Evid. 402, 403.  As an initial matter, plaintiffs' counsel concedes that the investigation "focused on a narrow part of *West Virginia*," Pl. Opp. at 95; *see also id.* at Ex. 23 (scope of investigation was "*southwestern West Virginia*").  Although the majority staff report cited "concerns" about distributors' nationwide policies, there

is no dispute that the Committee did not actually investigate or reach any factual conclusions about nationwide distribution practices.  And because plaintiffs have no evidence—and have not even argued—that opioids distributed in West Virginia caused harm in the counties, any limited relevance that attaches to the report is outweighed by the risk of undue prejudice.  *See, e.g.*, *Pearce v. E.F. Hutton Grp., Inc.*, 653 F. Supp. 810, 816 (D.D.C. 1987) (excluding report due to the "unfair prejudice" arising from "the undue weight" likely to attach to a congressional report).

Finally, plaintiffs concede that letters sent from Congress to McKesson are inadmissible hearsay and cannot be offered for their truth.  Plaintiffs protest, however, that they only intend to introduce those letters "as background … to show McKesson's awareness of the investigation."  Pl. Opp. at 96–97.  But plaintiffs' claims relate to alleged distribution of opioids to Summit and Cuyahoga Counties beginning at least as early as 2006.  McKesson's "awareness" of a 2018 congressional investigation into distributions in a different state has no relevance to those claims.

### III.  MCK-3: The Court Should Prohibit the Introduction of Nationwide Trends in Drug Deaths.

Plaintiffs' opposition is most notable in what it fails to argue.  Plaintiffs make no attempt to rebut McKesson's point that the maps—which show all deaths, including suicides and homicides, from all poisonous substances—would undoubtedly confuse and mislead the jury.  Nor do plaintiffs respond to the argument that these maps are irrelevant because they focus on nationwide mortality trends, not anything specific to the plaintiff counties.  *See Brooks v. Chrysler Corp.*, 786 F.2d 1191, 1198 (D.C. Cir. 1986) (exclusion warranted where document contents were largely "unrelated").

Plaintiffs instead offer up two strawman arguments.  First, plaintiffs claim that if they "inaccurately characterize" the maps McKesson can merely "object at the time."  Pl. Opp. at 97.  This suggestion ignores that plaintiffs have *already* repeatedly mischaracterized these map by

3

asking McKesson witnesses whether they "underst[ood]" that the maps showed "children, mothers, fathers, uncles, sisters, and brothers … dying because your company … participated in expanding the death map." Oriente Tr. at 593:20–594:6.  McKesson's motion is not based on possible future harm; it is based on plaintiffs' past practice—as reflected in deposition testimony designated for use at trial.  Plaintiffs' second argument is likewise unavailing.  They suggest that the maps are admissible because certain of "[p]laintiffs' experts use mortality as the primary proxy for . . . harm" in their expert analyses.  Pl. Opp. at 97.  But plaintiffs do not claim that any of their experts relied on *these* maps.  And even if they did, the fact that experts rely on data does not make that data admissible.  See Fed. R. Evid. 703.

## IV. MCK-4: The Court Should Prohibit Plaintiffs From Introducing Evidence or Argument About Allegations Contained in Letters From the DEA or DOJ.

Plaintiffs do not dispute that the DEA/DOJ settlement letters that McKesson seeks to exclude: (1) contain unproven and highly prejudicial allegations; (2) were sent for the explicit purpose of incentivizing settlement; and (3) contain irrelevant information concerning out-of-state facilities with no connection to this litigation.  Plaintiffs simply state that the letters are admissible for the "same reasons" as the resulting settlement agreements. Pl. Opp. at 98.  As set forth in Distributors' briefing concerning their Motion D-1, plaintiffs are incorrect.  Both the agreements and related correspondence should be excluded under Rules 402, 403, 408, and 802.

## V. MCK-5: The Court Should Prohibit Introduction of Testimony From McKesson Witness Nathan Hartle Because of Plaintiff's Badgering and Abusive Conduct.

Mr. Hartle was designated as a 30(b)(6) witness to testify regarding the company's Controlled Substance Monitoring Program as well as shipments and reporting of opioid products to the plaintiff counties.  See Dkt. 2663 at 6.  Plaintiffs' opposition asserts that his designation also covered a wide swath of other topics, including alleged  "societal responsibility" for the opioid epidemic.  That is untrue.  In a separately noticed topic—for which Mr. Hartle *was not*

4

*identified*—plaintiffs' sought information as to "[w]hether you caused and/or contributed to the opioid epidemic." *See* Dkt. 2663-5 (Topic 23).[2]  If plaintiffs seriously thought that questions about causation or responsibility were covered by the topics for which Mr. Hartle was designated, there would have been no need for this separate topic.  All questions asked by plaintiffs' counsel on the topics of causation, responsibility, and the "gateway theory" exceed Mr. Hartle's designated topics and cannot bind the company. *See  Detoy v. City & Cty. of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000) (recognizing propriety of jury instruction that questions beyond the noticed topics do not bind the company).[3]

Mr. Hartle's testimony should further be excluded due to the abusive conduct of plaintiffs' counsel laid out in McKesson's opening brief, Dkt. 2663 at 6–7 & nn.11–13, and evident from a review of the full transcript, Dkt. 1962-23 (Hartle Tr.).  Because plaintiffs' impropriety is clear on the face of the transcript, it is immaterial whether McKesson sought relief from the Court prior to other fact depositions.[4]  It is well within the Court's authority to preclude this abusive questioning from being played a trial. *See Cunningham v. Quaker Oats Co.*, 107 F.R.D. 66, 73-74 (W.D.N.Y 1985) (excluding questions that were "in very bad form").

**VI.    CK-6: The Court Should Prohibit Introduction of Documents Related to McKesson's Relationship with CVS and Rite Aid In Light of Severance.**

Plaintiffs affirmatively moved to sever CVS on the ground that severance would avoid the "risk that the jury will be overwhelmed by the inclusion of the CVS Defendants" due to "differences in Plaintiffs' claims."  Dkt. 2148 at 3; *see also* Dkt. 2099 at 3 (same regarding Rite

---

[2] Mr. Hartle was identified for Topic 1 (First Amended Notice) and Topics 9, 14, 16-22 (Second Amended Notice). *See* Dkt. 2663-4, 2663-5.

[3] *King v. Pratt & Whitney*, 161 F.R.D. 745, 476 (S.D. Fla. 1995), cited by plaintiffs, is inapposite.  *King* merely says that counsel cannot direct a witness not to answer out-of-scope questions.

[4] In any case, McKesson did raise the issue of plaintiffs' deposition misconduct to the Court. *See* Ex. 3, Letter from Mark Lynch to the Honorable Dan Aaron Polster (Feb. 11, 2019).

5

Aid). Having affirmatively sought to sever CVS and Rite Aid, plaintiffs cannot now claim prejudice if evidence and argument about these entities is limited at trial—that is precisely what Plaintiffs told the Court was *necessary* to make trial manageable. Plaintiffs' severance motions illustrates the validity of McKesson's argument. Even with CVS in the case, plaintiffs recognized a significant risk of jury confusion regarding CVS and Rite Aid. That concern is only heightened now that CVS and Rite Aid are no longer Defendants in the Track 1 Trial.

The jury will rightly be confused about why the parties are introducing extensive evidence about the programs of a non-party, and the time required to litigate questions regarding the sufficiency of CVS and Rite Aid's regulatory programs will strain an already too-short trial beyond its breaking point. Moreover, requiring McKesson to defend those companies' programs *in absentia* will prejudice McKesson by requiring it to use some of its already-limited trial time explaining the design of two other company's regulatory programs. Plaintiffs' argument that evidence regarding CVS and Rite Aid "will not cause McKesson to defend CVS and Rite Aid's internal SOM processes," but merely to defend its own conduct, Pl. Opp. at 103, is incorrect. Whether McKesson's policies and diligence efforts with respect to national retail pharmacy chains were reasonable is inextricably linked to the sufficiency of those chains' policies and procedures—procedures on which (as the parties all agree) McKesson partially relied.[5]

Finally, the risk of prejudice and juror confusion is especially acute for CVS, given that McKesson does not service CVS's Ohio stores. The lack of relevance of any shipments from McKesson to CVS locations outside the County is a separate reason to exclude this evidence. *See* Dkt. 2661 at 16 (Defendants' Motion *in Limine* 6).

---

[5] Plaintiffs' argument that McKesson has not cited a rule that requires the exclusion of evidence regarding alleged co-conspirators severed from trial misses the point. McKesson is not relying on any such rule. Rather, McKesson seeks exclusion due to the risk of jury confusion and prejudice that will result from bogging the trial down in a protracted presentation of evidence regarding non-defendant companies. *See* Fed. R. Evid. 403.

Dated:   October 14, 2019                              Respectfully Submitted,

    */s/ Geoffrey E. Hobart*
Geoffrey E. Hobart
Mark H. Lynch
Christian J. Pistilli
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com

*Counsel for McKesson Corporation*

7

## **CERTIFICATE OF SERVICE**

I, Geoffrey E. Hobart, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart
