UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*The County of Summit, Ohio*, et al. v. *Purdue Pharma L.P.*, et al.,<br>Case No. 18-op-45090<br><br>*The County of Cuyahoga, Ohio*, et al. v. *Purdue Pharma L.P.*, et al.,<br>Case No. 17-op-45004 | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**CARDINAL HEALTH'S REPLY IN SUPPORT OF MOTIONS *IN LIMINE***

**1.    14,000 Orders Not Shipped**.  The context in which Plaintiffs seek to introduce this evidence is important.  When Plaintiffs moved for partial summary judgment that Cardinal Health failed to comply with its alleged CSA duties to report and not ship suspicious orders, the only evidence they cited for the period from 2012 to 2015 was the company's inadvertent failure to report the 14,000 orders—only *four* of which were placed by customers in Track 1.  Because Cardinal Health did not ship the orders, the pills never reached any patients for which doctors may have prescribed opioids nor were they diverted, and so these never-shipped pills cannot have caused past damages nor contributed to a nuisance that requires abatement.  In short, the orders are a non-event—and therefore irrelevant.

Plaintiffs insist that, even if the orders did not ship—i.e., even if Cardinal achieved the primary objective of an effective suspicious-order monitoring system—the non-reporting is nonetheless relevant to show that the company "failed to maintain effective controls."  Opp. 87.  The failure to report, Plaintiffs argue, "allows these bad pharmacies to continue to operate

1

without further investigation." Opp. 88.  But this is speculation, and will remain speculation.  None of Plaintiffs' experts (1) identify a "bad" pharmacy; (2) identify a single order flagged as "suspicious" that, with appropriate due diligence, would have been determined to be suspicious in fact; (3) opine that DEA would have investigated any of the 14,000 orders, if reported; or (4) opine that, if investigated, would have led to discovery of unlawful activity and would have resulted in the closure of even one pharmacy.  Given this lack of evidence, reference to the 14,000 unreported—but also unshipped—orders goes nowhere.

The further problem with this evidence is that its only purpose is to support a fraud-on-the-DEA claim.  Plaintiffs are wrong that the Court "has repeatedly rejected" this argument.  Opp. 89 & n.79.  Docket Nos. 1025 and 1203 involved different preemption arguments made by Manufacturers.  The one time that the "Small Distributors" made this preemption argument, the Court's analysis was limited to saying, "Plaintiffs have not alleged a claim for fraud on a federal agency."  ECF 2565 at 22.  But the Opposition to this very motion belies that conclusion, for it makes clear that Plaintiffs seek to prove all three elements of a fraud-on-the-DEA claim: (1) Cardinal Health had a duty to report suspicious orders as well as not ship them; (2) it failed to report the 14,000 orders; and (3) the failure to report misled DEA, which otherwise would have investigated the "bad pharmacies" and prevented them from "continu[ing] to operate."  Opp. 87–88.  Basing liability on alleged non-reporting to a federal agency that is empowered to police non-reporting itself is precisely what *Buckman* prohibits.  531 U.S. at 347–48.

**2.**    **"Interesting Gossip" Email.**  Plaintiffs "do not intend to cite the email as evidence that Cardinal failed to report suspicious orders," Opp. 90, so the Motion should be granted, at least to the extent of precluding its use for that purpose.  Plaintiffs argue instead that they want to use the email to establish that Cardinal Health and other distributors discussed

"intentional failure to comply" with the CSA and that "[t]he document is also relevant to show Defendants' knowledge of—and failure to report—the noncompliance of direct competitors" and that "the relationships between these Defendants were so secure that Cardinal felt comfortable disclosing intentional regulatory violations." *Id.* 90–91.  But those are equally improper purposes.  The only section of the document that arguably demonstrates those things is the inaccurate "gossip."  Plaintiffs do not dispute that the "gossip" is inaccurate[1] or that Cardinal Health reported thousands of suspicious orders in 2013 (the year of the "gossip").  Thus, the document—relaying an admittedly untrue "fact"— is not probative of any discussion among distributors about Cardinal Health's intentional non-compliance, nor is it probative evidence that other distributors did nothing about it.  The undisputed evidence is that no such discussion took place.  There is no basis for injecting these known falsehoods into the trial any more than injecting the falsehood that Cardinal Health was not reporting suspicious orders in 2013.

     Plaintiffs claim that the remainder of the document is relevant because it shows that the "Big Four" distributors "huddled" with each other "in conjunction with HDA conferences." Opp. 90.  But the fact that distributors caucused to discuss topics of industry-wide interest is not probative of any conspiracy to commit an unlawful act.  Plaintiffs claim that it proves that "Defendants used the HDA as a forum in which to form agreements, to discuss issues related to suspicious order compliance, and to coordinate their activities," *id.*, but none of those things is unlawful.

     Even if there were some minimal probative value to the non-"gossip" sections of the email, the unfair prejudice of admitting an inaccurate document into evidence substantially outweighs that minimal probative value.  Plaintiffs have not argued that this document is unique

---

[1] *See* ECF No. 2653-5 ("That isn't what they said.").

3

or is the only evidence they have of an alleged conspiracy.  Thus, there should be no prejudice to Plaintiffs in excluding this document (and they have articulated none), but if it is admitted, Cardinal Health will have to waste time rebutting the "gossip" section and Plaintiffs' knowingly improper argument about those sections.  The document should be excluded in its entirety, but at a minimum, the two sections that refer to the "gossip" should be redacted.

3. **Misleading data comparisons.**  Cardinal's motion should be granted as substantively unopposed.  Plaintiffs do not contest *any* of the grounds for the motion, including that Cardinal's disproportionately long retention of data is what accounts for around one-quarter to one-third of all Cardinal orders "flagged" by McCann as suspicious.  *Compare* ECF No. 2653-1 at 6–7, *with* Opp. 91–92.  Neither do Plaintiffs state any basis for their nominal disagreement with "Cardinal's contentions regarding the potential for juror confusion" or for why they "do not believe any limiting instruction is necessary."  Opp. 91–92.  Plaintiffs fail to explain those positions because it obviously is misleading to present testimony that Cardinal Health engaged in more of the alleged misconduct than other Distributors when that comparison is merely an artifact of Cardinal's having retained records for a longer period of time.  Plaintiffs seek to impose a penalty on Cardinal Health for retaining more information than DEA requires.  If such evidence is not excluded, then valuable time at trial will be spent mitigating the damage from that misleading suggestion, rather than addressing the actual allegations of misconduct.  The Court can prevent that by treating Plaintiffs' threadbare response as an admission of their inability to justify the need to present testimony based on Cardinal data produced for the years 1996 to 2005 and exclude such evidence from trial.

4

Dated:  October 10, 2019    Respectfully submitted,

*/s/ Enu Mainigi*
WILLIAMS & CONNOLLY LLP
Enu Mainigi
F. Lane Heard III
Jennifer G. Wicht
Steven M. Pyser
Ashley W. Hardin
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
jwicht@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Defendant Cardinal Health, Inc.*

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Ashley W. Hardin*
Ashley W. Hardin

5