**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*Track One Cases* | MDL NO. 2804<br><br>Civ. No. 1:17-md-02804-DAP<br><br>HON. JUDGE DAN A. POLSTER |

**OMNIBUS REPLY IN SUPPORT OF**
**DISTRIBUTOR DEFENDANTS' MOTIONS IN LIMINE**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   REPLIES IN SUPPORT OF MOTIONS IN LIMINE ...................................................... 1

    1.    [D-1] The Court Should Preclude Plaintiffs from Offering Evidence of, or Arguments about, Distributors' Settlements with the DEA and West Virginia. ..................................................................................................... 1

    2.    [D-2] The Court Should Preclude Non-Party Corporate Representatives from Testifying to Matters Outside Their Personal Knowledge............................ 5

    3.    [D-3] The Court Should Exclude any Evidence of Criminal Indictments and Investigations without Corresponding Proof of a Final Judgment of Conviction. .................................................................................................... 7

    4.    [D-4] The Court Should Prohibit Plaintiffs from Stating Expressly or Suggesting that the Jury May Infer that an Older Document Never Existed Just Because It Cannot Be Found. ...................................................................... 9

    5.    [D-5] The Court Should Prohibit Plaintiffs from Presenting Evidence or Making Arguments Suggesting Distributors Committed a "Fraud On the DEA.".............................................................................................................. 11

    6.    [D-6] The Court Should Prohibit Counsel and Witnesses from Making References Broadly and Generally to "Defendants" When the Statement, Argument, or Testimony Relates Only to Certain Specific Defendants or Groups of Defendants. .................................................................................... 12

    7.    [D-7] The Court Should Preclude Plaintiffs from Offering Evidence of, and Arguments about, RICO Predicates that Plaintiffs Did Not Identify in Their Discovery Responses.................................................................................. 14

    8.    [D-8] The Court Should Issue an Order Excluding any Evidence of, or Reference to, Distributor-Run Programs that Allowed Manufacturers To Communicate Product Information to Pharmacies or Other Parties..................... 15

III.   CONCLUSION............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akinyemi v. Napolitano,*
   347 F. App'x 604 (2d Cir. 2009) ............................................................8

*Bell v. Consol. Rail Corp.,*
   299 F. Supp. 2d 795 (N.D. Ohio 2004)...................................................3

*Brazos River Authority v. GE Ionics, Inc.,*
   469 F.3d 416 (5th Cir. 2006) ..................................................................6

*Buckman v. Plaintiffs' Legal Committee,*
   531 U.S. 341 (2001)...............................................................................12

*Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n,
   Inc.,*
   2014 WL 1583993 (D. Colo. Apr. 21, 2014).........................................7

*Cooley v. Lincoln Elec. Co.,*
   693 F. Supp. 2d 767 (N.D. Ohio 2010)...................................................5

*Coquina Investments v. Rothstein,*
   2011 WL 13096509 (S.D. Fla. Oct. 19, 2011)........................................8

*Deskovic v. City of Peekskill,*
   673 F. Supp. 2d 154 (S.D.N.Y. 2009)...................................................16

*Feminist Women's Health Ctr. v. Roberts,*
   1988 WL 156656 (W.D. Wash. Mar. 11, 1988) ....................................15

*Flir Sys., Inc. v. Fluke Corp.,*
   2012 WL 13054267 (D. Or. Nov. 29, 2012)..........................................13

*Harrell v. DCS Equip. Leasing Corp.,*
   951 F.2d 1453 (5th Cir. 1992) ................................................................8

*Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc.,*
   2014 WL 4983912 (M.D. Fla. Oct. 6, 2014) ..........................................5

*Lloyd v. Midland Funding, LLC,*
   639 F. App'x 301 (6th Cir. Jan. 22, 2016).............................................6

*Martin v. Thrifty Rent A Car,*
   1998 WL 211786 (6th Cir. Apr. 23, 1998) .............................................3

*PPM Finance, Inc. v. Norandal USA, Inc.*,
   392 F.3d 889 (7th Cir. 2004) ........................................................................6

*Pugh v. City of Attica, Ind.*,
   259 F.3d 619 (7th Cir. 2001) ........................................................................6

*Sara Lee Corp. v. Kraft Foods*,
   276 F.R.D. 500 (N.D. Ill. 2011) ....................................................................5

*Sidari v. Orleans Cnty.*,
   174 F.R.D. 275 (W.D.N.Y. 1996) ................................................................17

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
   2014 WL 10294813 (E.D. Mich. Apr. 24, 2014) ........................................15

*Stockman v. Oakcrest Dental Ctr., P.C.*,
   480 F.3d 791 (6th Cir. 2007) ........................................................................4

*Stryker Corp. v. Ridgeway*,
   2016 WL 6585007 (W.D. Mich. Feb. 1, 2016) ............................................5

*U.S. v. Maynard*,
   476 F.2d 1170 (D.C. Cir. 1973) ...................................................................8

*Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*,
   11 F.3d 1284 (6th Cir. 1997) ........................................................................2

*Union Pump Co. v. Centrifugal Tech., Inc.*,
   404 F. App'x 899 (5th Cir. 2010) .................................................................6

*United States v. Abadie*,
   879 F.2d 1260 (5th Cir. 1989) .....................................................................8

*United States v. Solivan*,
   937 F.2d 1146 (9th Cir. 1991) ....................................................................17

*Univ. Healthsystem Consortium v. UnitedHealth Grp.*,
   68 F. Supp. 3d 917 (N.D. Ill. 2014) .............................................................6

*Universal Surveillance Corp. v. Checkpoint Sys., Inc.*,
   2015 WL 6082122 (N.D. Ohio Sept. 30, 2015) ...........................................5

## Rules

Fed. R. Civ. P. 37(c)(1) ......................................................................................15

Fed. R. Evid. 402 .................................................................................................8

Fed. R. Evid. 403 ............................................................................................8, 16

# I.  INTRODUCTION

AmerisourceBergen, Cardinal Health, McKesson, and Henry Schein (collectively, "Distributors") hereby reply to Plaintiffs' responses to Distributors' Motions in Limine.  As with their opposition to the omnibus Defendants' motions in limine, Plaintiffs' opposition (while long on pages) is short on substance and contains nothing that calls into question the correctness of the in limine rulings Distributors request.

# II.  REPLIES IN SUPPORT OF MOTIONS IN LIMINE

### 1.  [D-1] The Court Should Preclude Plaintiffs from Offering Evidence of, or Arguments about, Distributors' Settlements with the DEA and West Virginia.

Distributors' motion seeks a ruling that precludes evidence and arguments about settlements with the DEA and West Virginia.  In response, Plaintiffs say that, of course, a settlement may be admissible if it is offered for a purpose *other than to prove liability*.  Opp. 54. But it is plain as day that Plaintiffs intend to offer the DEA and other settlements to prove liability because whenever Plaintiffs have cited the settlements—most notably in their Complaints and summary judgment motions—it has been as evidence that Defendants failed to implement effective systems to prevent diversion.  Distributors' motion cited seven examples of this from Plaintiffs' summary judgment papers alone.[1]  Thus, there is no mystery about Plaintiffs' purpose in discussing the settlement agreements, and Federal Rule of Evidence ("Rule") 408 forbids the use of settlements for that purpose.

---

[1] Distrib. MIL at 2 (citing Dkt. Nos. 1910-1 at 69–71, 81–82, 88, 93, 105–11, 113, 119–22).  At these pages, Plaintiffs assert that Cardinal Health's 2012 DEA settlement "admitted that it failed to comply with the requirements of the CSA"; that McKesson's 2008 DEA settlement "Confirms the Lack of CSA Compliance"; that McKesson's 2017 DEA settlement "Admitted It Violated the Requirements of the CSA from 2009-2017"; that ABDC's 2007 DEA settlement was an agreement "to stop shipping suspicious orders in violation of the 'shipping duty'"; and that Walgreen's 2013 DEA settlement "admitted that it had failed to comply with its obligations under the CSA."

Plaintiffs argue that the DEA settlements were about "some other claims" than those at issue in this trial, and that Rule 408 therefore does not even apply. Opp. 53 (citing *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 11 F.3d 1284 (6th Cir. 1997).[2] Distributors agree that the settlements were about "some other claims," but that does not help Plaintiffs—instead, it underscores that the settlements are irrelevant and any reference to them would be based on a "if it happened there, it must be happening here" premise. Distrib. MIL at 4–5. As noted, Plaintiffs repeatedly cite the settlements as evidence that Defendants did not have compliant suspicious-order monitoring systems—the very claim in this case.[3]

Nor does Rule 406 provide a backdoor to admissibility. ***First***, the settlements do not establish that Distributors "engaged in 'systematic, particularized, and repetitive conduct' by selling prescription opioids without proper, effective controls to prevent diversion." Opp. 56. Settlements are not adjudications, and these settlement agreements did not contain factual findings. Three of the six settlements did not include admissions of any kind, and the other three contained narrow admissions that did not implicate distribution of opioids to Cuyahoga or Summit Counties. Distrib. MIL at 5. ***Second***, even if the settlements did "establish" facts, neither one settlement (in the case of ABDC and Walgreens) nor two (Cardinal Health and McKesson) over a period of 20 years reflects a "routine" practice.[4] And the settlements, which do not concern distributions to Cuyahoga and Summit Counties, certainly do not establish that

---

[2] The *Uforma/Shelby* decision (and the excerpt from Wright & Miller on which it relies) concerned a very different issue—whether Rule 408 protects a wrong committed in the course of the settlement discussions. Specifically, in *Uforma/Shelby*, the issue was whether evidence of management's threats of retaliation in the course of settlement discussions of a labor grievance could be used, apart from the grievance, to prove an unfair labor practice claim for retaliating against the union's filing of the grievance. 111 F.3d at 1293–94.

[3] As noted below, Plaintiffs' argument regarding the settlement agreements is internally inconsistent. If it is true, as Plaintiffs claim later in their opposition, that the settlements "*concern*[] *the same violations alleged here*," then Rule 408 plainly prohibits their admissibility.

[4] *See* Opp. 56 (noting that Cardinal Health's and McKesson's second DEA settlements were "roughly a decade later"). In the case of McKesson, moreover, its SOM system changed materially in the intervening decade, further undermining any assertion of a "pattern."

the particular conduct of any Distributor was routine practice as to either county.[5]  ***Third***, Plaintiffs misunderstand the purpose of Rule 406, which is to use proof of routine practice to show what happened in a particular case.  Thus, in the case cited by Plaintiffs, the defendant sought to prove that it gave the negligent driver its standard rental agreement by showing that it was a matter of routine practice to provide that document to rental customers.  *Martin v. Thrifty Rent A Car*, 1998 WL 211786, at *5 (6th Cir. Apr. 23, 1998) (citation omitted).  Here, by contrast, Plaintiffs have disclaimed any intention to prove that a particular prescription was medically unwarranted or that a particular pharmacy order was suspicious, electing to proceed with aggregate proof.

Plaintiffs' next argument—that the settlements are relevant—contradicts its initial arguments, Opp. 53–54, that Rule 408 does not apply because the settlements concern "some other claim" and are offered for a purpose other than to prove liability.  Plaintiffs argue that the DEA settlements describe "investigations and findings … *concerning the same violations alleged here*."  Opp. 57 (emphasis added).[6]  And Plaintiffs misleadingly add that the agreements "apply to all (or at least most) distribution centers."  Opp. 57–58 (citing only one McKesson and one ABDC settlement).  But while the prospective aspects of the settlement agreements may in some instances have applied to all of the Distributor's distribution centers, the investigations that gave rise to the agreements did not concern all centers—and did not concern the centers that distributed to Cuyahoga and Summit Counties.  Distrib. MIL at 5.

---

[5] The very case that Plaintiffs rely on makes clear that the Rule 406 inquiry "require[s] some comparison of the number of instances in which any such conduct occurs with the number in which no such conduct took place," and further instructs that "before a court may admit evidence of habit, the offering party must establish … more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature."  *Bell v. Consol. Rail Corp.*, 299 F. Supp. 2d 795, 800 (N.D. Ohio 2004).  For that very reason, the *Bell* court excluded generalized evidence that the defendant routinely provided locomotives with inoperable defrosters or required trains to run at track speed in foggy conditions.  *Id.* at 801.

[6] In making their relevance argument, Plaintiffs refer once to "findings" and twice to "violations" of CSA "duties."  Opp. 57.  The settlement agreements do not make findings and did not adjudicate violations.

Plaintiffs also argue that the settlements are admissible to prove "state of mind"—that "Defendants' conduct was intentional and persisted over a lengthy period of time."  Opp. 55. But none of the settlements admits any *intentional* conduct and, as explained above, the small number of isolated agreements over a 20-year period hardly establishes a lengthy course of conduct.  Plaintiffs' argument that the settlements are admissible to show Distributors' "state of mind"—*i.e.*, an alleged "pattern of conduct demonstrating knowledge by Defendants that their SOM systems were inadequate"—is similarly unavailing:   the settlement do not contain admissions of any conduct relevant to Cuyahoga and Summit Counties and do not establish a pattern.

Finally, Plaintiffs argument that admission of the settlement agreements would not be unfairly prejudicial is flat-out wrong.  Although inaccurate, it is plain that Plaintiffs intend to portray the settlement agreements as establishing that Distributors violated the CSA.  While they blithely assert that "the jury is not likely to believe that an agreement with the government to settle what are in effect charges for CSA violations amount to an admission of liability to the alleged RICO [and] OCPA" claims, Plaintiffs have made clear that they intend to argue to the jury that supposed "CSA violations" *are* RICO/OCPA predicate acts.[7]  It is difficult to imagine anything more prejudicial than the (false and misleading) suggestion to the jury that the federal government already has found Distributors liable for the very statutory violations that lie at the heart of Plaintiffs' claims (as they conceive them).  *See, e.g., Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 800, 805 (6th Cir. 2007) (noting the "profound" impact "of evidence regarding a settlement agreement with regard to a determination of liability").

---

[7] Distributors do not agree that Plaintiffs have identified any provisions of the CSA whose violation would constitute a RICO predicate act.

2.    **[D-2] The Court Should Preclude Non-Party Corporate Representatives from Testifying to Matters Outside Their Personal Knowledge.**

Distributors' motion seeks a ruling that non-party corporate representatives may not testify to matters outside their personal knowledge.  Plaintiffs' opposition ignores the overwhelming weight of authority, as well as Rule 602, and instead relies on a single outlier district court decision.  Plaintiffs then argue that the Court should reserve all decisions on this issue because, at trial, they *might* be able to offer a basis on which *some* of the challenged evidence is admissible—even though they are unable to identify even a single example of such evidence.  This argument should be rejected.

As for *non-party* Rule 30(b)(6) testimony offered *at trial*—the type of testimony at issue in this motion—Plaintiffs point to one district court decision that is contrary to the weight of authority.  *See* Opp. 60 (discussing *Sara Lee Corp. v. Kraft Foods*, 276 F.R.D. 500 (N.D. Ill. 2011)).  The overwhelming majority of decisions on this issue—including from judges on this Court—hold that Rule 30(b)(6) testimony from a non-party is admissible at trial only if and to the extent it reflects the witness's personal knowledge.  *See, e.g.*, *Cooley v. Lincoln Elec. Co.*, 693 F. Supp. 2d 767, 791 (N.D. Ohio 2010); *Stryker Corp. v. Ridgeway*, 2016 WL 6585007, at *2–3 (W.D. Mich. Feb. 1, 2016) (listing federal cases strictly applying Rule 602 to 30(b)(6) witnesses); *Universal Surveillance Corp. v. Checkpoint Sys., Inc.*, 2015 WL 6082122, at *27 (N.D. Ohio Sept. 30, 2015) (report by Special Master Cohen relying on *Cooley* to exclude testimony in which a witness failed to explain "how she obtained this new knowledge").  Unlike the *Sara Lee* decision on which Plaintiffs rely, these authorities align with Rule 602's personal knowledge requirement.  *See Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc.*, 2014 WL 4983912, at *4 (M.D. Fla. Oct. 6, 2014) ("Rule 30(b)(6) does not eliminate Rule 602's personal knowledge requirement.").

The other cases Plaintiffs cite are off-point.  For example, they cite *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 435 (5th Cir. 2006), for the proposition that 30(b)(6) witnesses may testify broadly to corporate knowledge.  *See* Opp. 59–60.  But the Fifth Circuit has clarified that *Brazos* only applies to *deposition* testimony and the use of *that* deposition by "an *adverse* party ... during trial"; it does not apply to the testimony of a *third* party.  *See Union Pump Co. v. Centrifugal Tech., Inc.*, 404 F. App'x 899, 907 (5th Cir. 2010) (emphasis in original).  Plaintiffs' reliance on *PPM Finance, Inc. v. Norandal USA, Inc.*, 392 F.3d 889 (7th Cir. 2004), is ill-placed too, as that case involved a 30(b)(6) witness who actually *had* personal knowledge.  *Id.* at 894 (witness "directly participated in calculating the financial statements" that were the basis of his testimony).  Neither of these decisions help Plaintiffs because Distributors' motion does not seek to bar testimony for which the witness has personal knowledge.  Instead, it seeks to bar testimony for which such foundation is absent.

The cases Plaintiffs cite involving summary judgment—and where the court determined that the matter presented through the witness's testimony was supported by documents relied upon by the witness that were themselves admissible—are similarly unhelpful to Plaintiffs.  *See Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 305 (6th Cir. Jan. 22, 2016) (determining that documents relied upon were business records); *Univ. Healthsystem Consortium v. UnitedHealth Grp.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014) (determining admissibility of documents attached to affidavit and whether they were relied on for the testimony); *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 627 n.7 (7th Cir. 2001) (holding document relied upon in interrogatory response was not inadmissible hearsay).  In so holding, each court relied on the underlying documents themselves, not on a blanket acceptance of Rule 30(b)(6) testimony that itself lacked proper foundation.

Plaintiffs' effort to discount the examples from the Prevoznik deposition cited in Distributors' motion are no more successful. Prevoznik testified at deposition about a document that he had "never seen." Distrib. MIL at 7. Rather than offering any basis on which Prevoznik's testimony about this document could possibly be admissible, Plaintiffs respond by listing a number of potential bases on which the underlying document might itself be admissible. Opp. 61 n.56. But none of those bases, even if correct, would render admissible *Prevoznik's testimony* about the document, which he admitted he had never seen and about which he had no personal knowledge.

In the end, Plaintiffs' opposition does not identify even a single example of any non-party Rule 30(b)(6) testimony they seek to offer that is admissible in the absence of personal knowledge of the witness. Plaintiffs' speculation that such an example *might* be found to exist (Opp. 61) is insufficient to warrant denial of this motion.[8] Because such testimony is barred by Rule 602 and the overwhelming weight of authority, and because Plaintiffs' vague hypothesis about admissible exceptions is unsupported, Distributors' motion should be granted.

### 3. [D-3] The Court Should Exclude any Evidence of Criminal Indictments and Investigations without Corresponding Proof of a Final Judgment of Conviction.

Distributors' motion seeks exclusion of evidence of criminal indictments and investigation without proof of a conviction. It is beyond question—and the parties appear to be in full agreement—that the *fact* of an indictment, of grand jury proceedings, or of a criminal investigation is not admissible absent proof of a criminal *conviction*. *See* Distrib. MIL at 8; Opp. 63; *see also* Dkt. No. 2652 at 49–50; Dkt. No. 2725 at 53–54. Perhaps in recognition of this

---

[8] For this point, Plaintiffs cite a case in which no examples of testimony sought to be excluded were provided, which contrasts with the instant motion in which examples have been provided and discussed at length. *Compare Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, 2014 WL 1583993, at *3 (D. Colo. Apr. 21, 2014) ("Defendant's Motion identifies no specific evidence it seeks to exclude . . . "), *with* Distrib. MIL at 7, *and* Dkt. No. 2756 at 1–4.

principle, Plaintiffs suggest that they "do not intend to introduce" indictments and related documents, "unless necessary for some other purpose, such as impeachment." Opp. 63. Contrary to the Plaintiffs' assertion, however, it is well-established that "[i]nquiry into the mere existence of an arrest or indictment is not admissible to impeach [a witness's] credibility." *United States v. Abadie*, 879 F.2d 1260, 1267 (5th Cir. 1989); *U.S. v. Maynard*, 476 F.2d 1170, 1174 (D.C. Cir. 1973) ("As a general rule, it is improper to impeach a witness by showing an outstanding indictment without a conviction").

Moreover, while there is no blanket rule precluding the admissibility of *facts* underlying a criminal indictment or investigation, such facts must be relevant to the issues in the case, and their probative value must outweigh the danger of unfair prejudice. *See* Fed. R. Evid. 402, 403. Plaintiffs reflexively suggest that whether Dave Gustin violated the CSA is "certainly relevant" to their claims. Opp. 63. Not so. Mr. Gustin's McKesson territory did *not* include Cuyahoga or Summit Counties.[9] Moreover, the allegation that Mr. Gustin violated the CSA is not an "underlying fact"—it is an unproven legal conclusion. Finally, Mr. Gustin's counsel has already informed the Court that, if called to testify, Mr. Gustin would invoke his Fifth Amendment right, *see* Dkt. No. 2795—which would have no probative value yet would be highly prejudicial to McKesson.[10]

---

[9] Mr. Gustin was not responsible for "compliance" (or anything else) at the New Castle Distribution Center, which accounted for more than 99 percent of McKesson's opioid shipments into Cuyahoga and Summit Counties, and which is part of McKesson' Northeast region. Mr. Gustin served as a director for a different region (North Central) that did not include Cuyahoga or Summit Counties.

[10] *See, e.g.*, *Akinyemi v. Napolitano*, 347 F. App'x 604, 607 (2d Cir. 2009) (upholding refusal to instruct jury on adverse inference against employer based on employee's invocation of Fifth Amendment); *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1465 (5th Cir. 1992) ("The potential prejudice in revealing the invocation of the Fifth Amendment is high, because the jury may attach undue weight to it, or may misunderstand [the witness's] decision to invoke his constitutional privilege."); *Coquina Investments v. Rothstein*, 2011 WL 13096509, at *1 (S.D. Fla. Oct. 19, 2011) (granting motion in limine excluding former employee's invocation of the Fifth Amendment; inference drawn from invocation of privilege "would not be trustworthy, and should be excluded under Rule 403 of the Federal Rules of Evidence").

**4.      [D-4] The Court Should Prohibit Plaintiffs from Stating Expressly or Suggesting that the Jury May Infer that an Older Document Never Existed Just Because It Cannot Be Found.**

Distributors' motion seeks an order prohibiting Plaintiffs from stating expressly or suggesting that the jury may infer that an older document never existed just because it cannot be found.  The opposition does not dispute that there is no requirement to retain suspicious order reports or due diligence records for any length of time, let alone *decades*, and acknowledges that Plaintiffs' DEA expert, James Rafalski, may not testify that such a requirement exists.   Opp. 63–65; Dkt. No. 2494 at 8, 10.  Plaintiffs should not be permitted to argue to the jury, directly or through their expert, that the absence of these decades-old records is evidence that the records never existed.  That inference lacks any basis in law, is inconsistent with operative discovery rulings on which Distributors duly relied, and is unfairly prejudicial.

The opposition transparently reveals the "gotcha" game Plaintiffs are playing with due diligence documentation.  Discovery Ruling No. 3 stated that "distributor defendants shall produce *transactional data* and *Suspicious Order Reports* with a cut-off date of January 1, 1996" and "shall produce *all other discovery* with a cut-off date of January 1, 2006."  Dkt. No. 762 at 4. Notwithstanding the obligation to produce due-diligence documentation dating back only to 2006, Rafalski concluded, from the absence of documented due diligence before 2006 that Distributors did not do any:

> Q:      On what basis are you saying that there was no due diligence done with regard to flagged orders? What is your basis for saying that?

> A:      There were review of records submitted on discovery. … I don't want to say none whatsoever. I believe that probably there may have been some individual instances of due diligence, but in a general statement, at a systematic level, there was insufficient due diligence. Or none.

> Q:      And what is your basis for saying that?

A:    Reviewing records … [produced] by the drug companies under discovery.[11]

Plaintiffs' gambit is unfairly prejudicial.  Plaintiffs' contention that 90 percent of all shipments to Cuyahoga and Summit County were suspicious depends on Rafalski's conclusion that Distributors did not perform due diligence.  As Rafalski explained, "once the suspicious order is identified, the criteria I used is *if there was no due diligence to dispel the suspicious order … then every subsequent distribution would be a suspicious order*."  Dkt. No. 1983-15, (Rafalski Tr.) 166:7–18.  But given (i) Discovery Ruling No. 3, (ii) DEA's record-retention rules, and (iii) Distributors' own record-retention policies, absence of produced records pre-dating 2006 provides no basis on which to infer the absence of due diligence.

Plaintiffs' suggestion that the absence of records was not "the sole basis" for Rafalski's conclusion that Distributors did not conduct due diligence is baseless.  In the deposition testimony cited above, Rafalski clearly stated that the basis for his conclusion that Distributors did not conduct due diligence was his review of documents produced in discovery.  And the same is true for his expert report:  Rafalski's conclusions about Distributors' lack of due diligence are based on the absence of documentation before 2006—documents that Distributors had no obligation to retain or produce.  Dkt. No. 1899-19 (Rafalski Rpt.) 51 (stating that "Cardinal's due diligence prior to 2006 is very limited, and it is difficult to discern exactly what due diligence was conducted by Cardinal prior to 2006.").

Finally, the opposition does not even address Distributors' arguments with respect to suspicious order reports—the only records other than transactional data that Distributors were obligated to produce back to 1996.  The obligation to produce reports plainly applied only to the extent such reports still exist.  But Distributors' record-retention requirements (imposed both by

---

[11] Dkt. No. 1983-15 (Rafalski Tr.) 168:19-169:7.

DEA and their own internal corporate policies) did not require that they retain these decades-old reports.  And as DOJ Inspector General's recent report revealed, not even the *DEA* retains suspicious order reports.[12]  DEA field division staff "were unaware of the requirement to maintain the [suspicious order] reports and could not locate them."  *Id.*

For these reasons, the Court should prohibit Plaintiffs from stating or suggesting that the jury may infer that an older document never existed just because it was not produced in discovery.

5. **[D-5] The Court Should Prohibit Plaintiffs from Presenting Evidence or Making Arguments Suggesting Distributors Committed a "Fraud On the DEA."**

Distributors' motion seeks to prohibit Plaintiffs from presenting evidence or making arguments suggesting that Distributors committed a "fraud on the DEA."  Plaintiffs have disclaimed pursuing claims based on "fraud on the DEA," and this Court has held that Plaintiffs' claims do not concern "fraud on the DEA," Dkt. No. 2565 at 9, 22.  Plaintiffs cannot pursue claims based on "fraud on the DEA" because such claims would be preempted under *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341, 350 (2001).  Distributors' motion seeks to ensure that Plaintiffs will not make "fraud on the DEA" arguments at trial disguised as different legal claims or theories, thus improperly conducting an end-around *Buckman*.

Plaintiffs argue that *Buckman* "does not render evidence regarding [Distributors'] interactions with the DEA irrelevant or inadmissible."  Opp. 65.  But Distributors did not say that it was.  Distributors do not seek a broad ruling that any and all evidence regarding their interactions with the DEA is inadmissible.  Instead, Distributors reasonably seek a very specific ruling that Plaintiffs may not offer any testimony, evidence, or argument that Distributors have

---

[12] Ex. A (Office of the Inspector General, United States DOJ, *Review of the Drug Enforcement Administration's Regulatory and Enforcement Efforts to Control the Diversion of Opioids*, 19-05, September 2019).

*committed fraud on the DEA or misled the DEA* by failing to report suspicious orders or otherwise failing to submit required information.  This is a non-controversial proposition—indeed, Plaintiffs say that they are not pursuing claims based on fraud on the DEA, and this Court has held that Plaintiffs' claims do not concern fraud on the DEA.  Any testimony, evidence, or argument that Distributors have committed fraud on the DEA or misled the DEA by failing to report suspicious orders or otherwise failing to submit required information would be irrelevant, prejudicial, and would risk confusing the jury.

6.    **[D-6] The Court Should Prohibit Counsel and Witnesses from Making References Broadly and Generally to "Defendants" When the Statement, Argument, or Testimony Relates Only to Certain Specific Defendants or Groups of Defendants.**

Distributors' motion seeks to prohibit counsel and witnesses from making broad references to "Defendants" when the statement, argument, examination question, or testimony relates only to a specific defendant or group of defendants.  Imprecise and overly-broad references by experts in this case already have led to confusion.  *See* Distrib. MIL at 16.  Such careless lumping of "Defendants" violates Rule 403 because it threatens to unfairly prejudice Distributors, confuse the issues, mislead the jury, cause undue delay, waste time, and result in the needless presentation of cumulative evidence.

Plaintiffs contend that they should be permitted to make statements lumping Defendants together.  Plaintiffs argue that a prohibition on such references would require counsel to approach the bench before using the word "defendants" and would impede the flow of trial.  Opp. 67–68.  Not so.  There is no reason why counsel would ever need to approach the bench over this issue, let alone each time counsel wanted to refer to a defendant.  For the sake of fairness and clarity, Plaintiffs simply need to be precise when they are speaking about a specific defendant or a specific subset of defendants.  Furthermore, prohibiting counsel and witnesses

from making broad references to "Defendants" when the statement relates only to specific defendants can only save time and judicial resources.  If Plaintiffs are permitted to lump Defendants together with their statements at trial, it would force individual defendants to use valuable court time to cross-examine witnesses to clarify how they are using "defendants" and object often to counsel's use of the generic term "defendants."  Plaintiffs acknowledge as much, stating that individual defendants should try to reduce prejudice and confusion "through cross-examination" and by "individual objections at trial."  Opp. 68.[13]

Plaintiffs' opposition fails to address the primary reasons why a prohibition on making broad references to "Defendants" when the statement relates only to specific defendants is necessary here:

*Unfair Prejudice* – Attributing bad facts (such as those pertaining to "misrepresentation" and "misleading messaging") to parties that took no part in such action risks unfairly prejudicing the jury against those parties.

*Confusing the Issues and Misleading the Jury* – Lumping prevents a jury from properly allocating liability to individual defendants when they are entirely distinct entities.

*Undue Delay and Wasting Time* – If each individual defendant is forced repeatedly to stave off misunderstandings, such efforts inevitably will waste time at trial that already is in short supply.

---

[13] Plaintiffs quote an Oregon district court case to support their argument, but Plaintiffs misleadingly use an ellipsis to make the case seem on-point when it is not.  *See Flir Sys., Inc. v. Fluke Corp.*, 2012 WL 13054267, at *5 (D. Or. Nov. 29, 2012) ("It would be highly impractical to enforce this motion at trial. Absent a legitimate basis to preclude the use of a particular term *to describe the video*, it is for counsel to choose the words they prefer to describe it.") (emphasized words omitted with an ellipsis from Plaintiffs' opposition).

7.    **[D-7] The Court Should Preclude Plaintiffs from Offering Evidence of, and Arguments about, RICO Predicates that Plaintiffs Did Not Identify in Their Discovery Responses.**

Distributors' motion seeks to exclude any argument or testimony regarding "RICO predicates that Plaintiffs did not identify in their discovery responses." Plaintiffs' principal response to this motion is a non-sequitur.

Plaintiffs argue that they adequately disclosed, in their complaints and interrogatory responses, several categories of RICO predicate acts—but that is not in dispute. Distributors agree that Plaintiffs disclosed their reliance on the mail and wire fraud statutes, and do not seek to exclude evidence or argument relating to mail or wire fraud through this motion. Distributors likewise agree that Plaintiffs identified violations of 21 U.S.C. § 843(a)(4)—which prohibits "furnishing false or fraudulent material information in, or omit any material information from, any application, report, record, or other document required to be made, kept, or filed under" the CSA—as constituting "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance" in their complaints and interrogatory responses. While Distributors disagree with the Court's ruling that violations of Section 843 may constitute predicate acts, this motion does not seek to preclude Plaintiffs from offering evidence or argument relating to purported violations of 21 U.S.C. § 843(a)(4) as undisclosed.[14]

In Plaintiffs' proposed jury instructions, however, they also seek an instruction that violations of 21 U.S.C. § 823 and 21 U.S.C. § 841, among other provisions, constitute predicate acts.[15] *Those* predicate acts were not disclosed by Plaintiffs, either in their complaints or in their

---

[14] As explained in Defendants' MIL No. 7, Plaintiffs' evidence regarding alleged failures to notify DEA of suspicious orders is not relevant to their claim involving 21 U.S.C. § 843(a)(4) because that provision concerns only failures to make reports required under subchapter I or II of the CSA, and those subchapters did not require the reporting of suspicious orders. *See* Dkt. No. 2661 at 18–19.

[15] The OCPA incorporates RICO's predicate act provisions in relevant part. Accordingly, a ruling that violations of 21 U.S.C. § 823 and 21 U.S.C. § 841 do not constitute RICO predicate acts would necessarily apply to any OCPA claim premised upon violations of those federal statutes.

interrogatory responses.  And Plaintiffs' opposition tellingly fails to offer any argument that Plaintiffs should be permitted to introduce evidence or arguments regarding *those* categories of predicate acts.  Fundamental fairness requires that they should not.[16]

Finally, Plaintiffs are wrong that Distributors' motion "rests on a misapplication of the law."  The cases cited in Distributors' motion hold that plaintiffs may not rely on undisclosed RICO predicate acts in order to defeat summary judgment.  The principle underlying those decisions apply with even greater force here, where Plaintiffs seek to rely on undisclosed predicate acts at trial.  *See State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2014 WL 10294813, at *5 n.7 (E.D. Mich. Apr. 24, 2014) (denying plaintiff's motion to add to "the alleged predicate acts" because the request constituted an attempt "to materially change the complexion of the case"); *Feminist Women's Health Ctr. v. Roberts*, 1988 WL 156656, at *11 (W.D. Wash. Mar. 11, 1988) (granting defendants' motion for summary judgment for RICO claims based on plaintiffs' failure to "cite the specific statutes on which they base their assertions of predicate acts"); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information …, the party is not allowed to use that information … to supply evidence… at a trial, unless the failure was substantially justified or is harmless.").

### 8.     [D-8] The Court Should Issue an Order Excluding any Evidence of, or Reference to, Distributor-Run Programs that Allowed Manufacturers To Communicate Product Information to Pharmacies or Other Parties.

Distributors' motion seeks an order excluding evidence of Distributor-run programs that allow manufacturers to communicate product information.  Plaintiffs' opposition fails to argue, and therefore concedes, the primary point of Distributors' motion:  evidence and argument

---

[16] Plaintiffs' assertion that Distributors "made this same argument in the motion to dismiss phase of the case and the Court rejected it" is pure make-believe.  The *only* predicate acts discussed in Distributors' motion to dismiss were (1) mail fraud, (2) wire fraud, and (3) violations of Section 843(a)(4)—because those were the only predicate acts pled in Summit County's complaint.

related to certain programs offered by Distributors to provide product information to pharmacies is both (1) irrelevant to Plaintiffs' claims against Distributors and (2) would prejudice Distributors and confuse the jury. *See* Fed. R. Evid. 403. In light of these concessions, exclusion of this evidence is entirely appropriate.

Plaintiffs claim that these materials are relevant to their claims against *Manufacturers*. But Plaintiffs' marketing claims against Manufacturers relate to alleged misleading marketing to doctors and patients and attempts to change the standard of care for prescribers. Dkt. No. 2182 at 1 (claims against Manufacturers based on their "fraudulent marketing campaign … for the purpose of expanding the opioid market"). Distributors had no role in these activities. To the contrary, Distributors' programs were limited to providing certain product information to pharmacies, not prescribers; programs that, as Plaintiffs' experts admit, were not intended to "generate patient level demand." Perri Tr. (Dkt. No. 1983-4) at 217:21–218:3, 224:19–20.[17] By conflating Distributors' programs with the very different types of marketing by Manufacturers, Plaintiffs have proven Distributors' point. The possibility for jury confusion is paramount, and Plaintiffs' opposition makes clear that they will foster that confusion by trying to conflate these very different "marketing" activities. *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 171 (S.D.N.Y. 2009) (warning against "spill-over" prejudice).

Plaintiffs' opposition further illustrates the overwhelming risk of juror confusion by arguing that Distributors and Manufacturers "have different roles in the conspiracy." Opp. 71. This statement ignores that Plaintiffs *separately* allege the existence of (1) a "Marketing Enterprise," in which Distributors were not involved, and (2) a distinct "Supply Chain

---

[17] Plaintiffs attack Distributors' account of Dr. Perri's testimony as "inaccurate" yet fail to identify any inaccuracies. Opp. 71 & n.65. Indeed, it is Plaintiffs that misrepresent Dr. Perri's testimony. For example, Plaintiffs represent Dr. Perri testified "that 'the marketing of opioids was inappropriate' with the distributors being 'part of that process,'" *id.*, but omit his explanation that "*from a macro perspective,* the wholesalers were implicated in that marketing *because of their role—their integral role in the supply chain.*" Perri Tr. (Dkt. No. 1983-4) at 222:7–10.

Enterprise," which was not allegedly involved in the purportedly fraudulent marketing campaign. Such blurring of the distinction between the alleged "Marketing Enterprise" and "Supply Chain Enterprise" is exactly the sort of prejudice Rule 403 protects against.[18]  *See Sidari v. Orleans Cnty.*, 174 F.R.D. 275, 282 (W.D.N.Y. 1996) ("A lumping together of such claims, which amounts to guilt by association, would unfairly prejudice the defendants.").

Tellingly, Plaintiffs do not dispute that this evidence will prejudice Distributors by confusing the jury and causing them to assign blame for the alleged "Marketing Enterprise" to Distributors.  Instead, Plaintiffs argue a jury instruction can mitigate the prejudice.  But a jury instruction is insufficient to cure such significant prejudice, especially because Plaintiffs exacerbate that prejudice by implying Distributors were involved in Manufacturers' allegedly fraudulent marketing.  *See United States v. Solivan*, 937 F.2d 1146, 1156 (9th Cir. 1991) ("isolated remarks … may be so prejudicial that no cautionary instruction, however swiftly and forcibly given, can safely eradicate [their] effect").  Accordingly, the Court should exclude trial exhibits and testimony relating to Distributor-run programs that allowed manufacturers to communicate their product information to pharmacies and other parties.

At an absolute minimum, the Court should exclude evidence relating to marketing programs involving severed and settled Defendants.  Even accepting as true Plaintiffs' assertion that these materials are "directly relevant to Plaintiffs' claims against the Manufacturers who created the advertisements," that provides no basis for the admission of—for example— pharmacy advertisements relating to Endo or Mallinckrodt products.  Such materials plainly are

---

[18] While conceding that their case against Distributors has no relation to any alleged marketing, Plaintiffs also claim, inexplicably, that they seek to use the evidence "to demonstrate [Distributors'] overall motive and knowledge." Opp. 70.  This is a non sequitur.  Plaintiffs have offered absolutely no explanation as to how certain programs providing product information to pharmacists are relevant to the "Supply Chain" Enterprise's alleged "motive" to ship opioid orders while avoiding regulatory oversight by the DEA.  Nor can Plaintiffs point to any shred of evidence in the record that Distributors had "knowledge" that the content of many of the manufacturer marketing materials were misleading.

not relevant, would foster jury confusion, and would force Distributors to use a portion of the precious little time they have been allotted for their defense to address claims of fraudulent marketing asserted against absent parties.

## III.    CONCLUSION

For the reasons stated above, Distributors request that the Court grant Distributors' Omnibus Motions in Limine.

Dated:  October 14, 2019

Respectfully Submitted,


 */s/ Geoffrey E. Hobart*

Geoffrey E. Hobart
Mark H. Lynch
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
swinner@cov.com

*Counsel for McKesson Corporation*


 */s/ Enu Mainigi*

Enu Mainigi
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street NW
Washington, DC  20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com

*Counsel for Cardinal Health, Inc.*


 */s/ Robert A. Nicholas*

Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*


 */s/ John P. McDonald*

John P. McDonald
C. Scott Jones
Lauren M. Fincher
Brandan J. Montminy
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Tel: (214) 740-8000
Fax: (214) 756-8758
jpmcdonald@lockelord.com
sjones@lockelord.com
lfincher@lockelord.com
brandan.montminy@lockelord.com

*Counsel for Henry Schein, Inc. and Henry Schein Medical Systems, Inc.*

## CERTIFICATE OF SERVICE

I, Robert A. Nicholas, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

 */s/ Robert A. Nicholas*
Robert A. Nicholas