**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: | Case No. 17-md-2804 |
| *Track One Cases* | Hon. Dan Aaron Polster |

**TEVA DEFENDANTS' AND ACTAVIS GENERIC DEFENDANTS' REPLY IN
<u>SUPPORT OF THEIR OMNIBUS MOTION IN LIMINE</u>**

# TABLE OF CONTENTS

**Page**

ARGUMENT ...................................................................................................................... 1

A. The Court Should Exclude Reference To The Cephalon Misdemeanor Plea (TAD-1) .............................................................................................................................. 1

B. The Court Should Exclude Reference To Off-Label Promotion (TAD-2) ...................... 3

C. The Court Should Exclude Any Reference To The 2008 Civil Settlement Between Cephalon And The Federal Government (TAD-3) .................................................... 4

D. The Court Should Exclude Evidence Of Opioid-Related Harm That Occurred Outside Of The Counties (TAD-4) ...................................................................................... 6

E. The Court Should Exclude Evidence Of Marketing-Related Statements Or Opioid Shipments Outside Of The Counties (TAD-5) ................................................................. 7

F. The Court Should Exclude Evidence Regarding Moving Defendants' Financial Support of Third-Party Groups (TAD-6) ........................................................................... 8

G. The Court Should Exclude Testimony From Russell Portenoy About Any Improper Conduct By Moving Defendants (TAD-7) ....................................................... 9

H. Plaintiffs Should Be Precluded From Arguing That The Actavis Generic Defendants Should Have Made Additional Warnings Regarding Their Generic Medicines Or Should Have Stopped Selling Them (TAD-8) ........................................ 11

I. The Court Should Exclude Reference To The Purchase Price Paid By Teva Pharmaceutical Industries Ltd. For The Actavis Generic Defendants (TAD-9) ............ 12

J. The Court Should Exclude Reference to the Settlement Agreement Between Teva Ltd. and Allergan (TAD-10) ............................................................................................ 14

CONCLUSION.................................................................................................................... 14

Plaintiffs' Opposition makes clear that Plaintiffs do not seek to try their claims against Cephalon, Inc. ("Cephalon"), Teva Pharmaceuticals USA, Inc. ("Teva USA"), or the Actavis Generic Defendants[1] (collectively, "Moving Defendants") on the merits of those clams (which pertain only to Summit and Cuyahoga County), but, instead, through highly prejudicial evidence disconnected from the actual claims by the specific Plaintiffs in this case. Indeed, Plaintiffs acknowledge that they seek to introduce evidence about alleged harm outside of the Counties, a misdemeanor plea for conduct not at issue here, an unrelated civil settlement that involved no admission of liability, protected First Amendment behavior, and even transactional agreements entered into by the Moving Defendants' parent company (who is no longer a defendant in the trial).[2] Because this evidence is inadmissible and would mislead the jury, waste time, and cause prejudice, the Court should exclude this evidence—and any argument based upon it—as a matter of law.

## ARGUMENT

### A. The Court Should Exclude Reference To The Cephalon Misdemeanor Plea (TAD-1).

Plaintiffs' Opposition repeatedly exaggerates and mischaracterizes the Plea (relating to a single misdemeanor count of off-label promotion) as involving "fraudulent marketing" or false[] promoting." Opp. at 104–05. Plaintiffs demonstrate that they intend to do at trial exactly what Rule 404 prohibits—introduce evidence of the Plea to prove that, in accordance with their

---

[1] The Actavis Generic Defendants include: Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., Warner Chilcott Company, LLC, Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, Actavis Totowa LLC, Actavis Kadian LLC, Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City, and Actavis Laboratories FL, Inc., f/k/a Watson Laboratories, Inc.-Florida. Recently, Plaintiffs agreed to dismiss all of the Actavis Generic Defendants except Actavis LLC, subject to the parties' stipulation on this issue. (Order regarding Joint Stipulation, ECF No. 2754).

[2] The Teva and Actavis Defendants have joined the Omnibus Memorandum Of Law In Support Of All Bellwether Track 1 Trial Defendants' Motions In Limine ("Joint Brief").

character, Moving Defendants engaged in the fraudulent marketing that Plaintiffs allege.  Indeed, Plaintiffs' concede that the Plea is Rule 404 "prior bad act evidence," yet contend that the true purpose for presenting evidence of the Plea is to show Moving Defendants' "intent."  Opp. at 105.  Plaintiffs' argument fails.

The entirety of Plaintiffs' argument is that "Defendants' intent is an element of Plaintiffs' claims, and their ongoing and repetitive conduct improperly and falsely promoting the use of dangerous opioid medications is central to those claims." *Id.*  Tellingly, Plaintiffs fail to identify how evidence of off-label promotion in 2001 would help prove intent.  Plaintiffs merely state that evidence of off-label promotion "is relevant to the argument that excessive promotion of opioids created a public health crisis."  Opp. at 105–06.  But Plaintiffs' claims are based upon ***false and misleading*** marketing (not excessive marketing), and there is no dispute that off-label promotion is not inherently "false or misleading." *United States v. Caronia*, 703 F.3d 149, 165 (2d Cir. 2012); *see also Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 552 (E.D. Pa. 2014), *aff'd*, 620 F. App'x 82 (3rd Cir. 2015).  Moreover and importantly, the Plea has no connection to the Counties.  Thus, because this evidence cannot establish intent as a matter of law, it must be excluded pursuant to Rule 404(b).

Moreover, Plaintiffs do ***not*** dispute Moving Defendants' showing that even if the Plea had some legitimate relevance to Plaintiffs' claims, which it does not, that would be far outweighed by the risks of unfair prejudice under Fed. R. Evid. 403.  Despite the well-settled legal distinction between a violation of federal labeling regulations and fraud that has been recognized by the courts, *see Caronia*, 703 F.3d at 165, the jury is unlikely to appreciate that distinction. *See United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994) ("When prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence

precisely for the purpose it may not be considered . . . .").  There is a very real risk that the jury will assume that because Cephalon pled guilty to marketing-related conduct, it must be liable for the different marketing-related claims that the bellwether counties assert.  This is grossly prejudicial.  Plaintiffs do not dispute that this evidence was excluded for these very reasons in the Oklahoma AG action – even though the court in that case was conducting a bench trial and allowed virtually all other evidence to be presented at trial.  *See* ECF No. 2668-4.  Given that Plaintiffs make no counterargument to the grossly prejudicial effect of such Plea, it should be excluded for this reason, too.

### B. The Court Should Exclude Reference To Off-Label Promotion (TAD-2).

Plaintiffs do not dispute that evidence of off-label promotion is irrelevant to Plaintiffs' claims based on fraudulent marketing.  Opp. at 105.  Nor do Plaintiffs dispute that such evidence is unfairly prejudicial under Rule 403 because a jury may not understand the legal rule that off-label promotion is different from fraud.  Indeed, Plaintiffs' Opposition does not discuss Rule 403 at all.  Taking these concessions together, the evidence of off-label promotion should be excluded because a jury may mistakenly believe that evidence (none of which demonstrates that off-label promotion occurred in either of the bellwether counties) somehow supports Plaintiffs' fraudulent marketing claims.  It does not.

Additionally, in an about face from what they argued in opposition to summary judgment, Plaintiffs attempt to re-characterize the purpose of evidence of off-label promotion.  To escape preemption and summary judgment, Plaintiffs previously argued that their marketing claims were not based on off-label promotion, but on "Manufacturers' off-label marketing [that] was false and fraudulent because of their numerous misrepresentations about the risks and benefits of their drugs."  Pl. Summit Cty.'s Opp. to Mot. Dismiss, ECF No. 654 at 119; *id.* at 120 (distinguishing

3

Manufacturers' cases holding that claims of off-label marketing were preempted, because in those cases courts "held that a claim based solely on off-label promotion was preempted, but claims for fraud not"); *see also Summit* R. & R., ECF No. 1025 at 50 (denying off-label preemption argument because Plaintiffs "contend that Defendants misrepresented the risks associated with off-label opioid use."). Now, Plaintiffs contend that evidence of off-label marketing is relevant to their theory that Moving Defendants engaged in "overpromotion" of opioid medications. Opp. at 105. Plaintiffs cannot have it both ways. They cannot avoid dismissal and summary judgment by arguing that their claims are not based upon off-label promotion, yet now argue that such conduct is relevant. It is not. *See Ind./Ky./Ohio Reg'l Council of Carpenters Welfare Fund v. Cephalon, Inc.*, No. 13-71672014 WL 2115498, at *6 (E.D. Pa. May 21, 2014) (rejecting claims based upon allegations of off-label promotion against Cephalon and Teva USA).

## C. The Court Should Exclude Any Reference To The 2008 Civil Settlement Between Cephalon And The Federal Government (TAD-3).

Plaintiffs' Opposition does not respond specifically to TAD-3; instead, it refers to its response to Distributors' motion to preclude Plaintiffs from offering evidence of certain settlements. Opp. at 106. Plaintiffs' arguments have no application to the Moving Defendants. Because they do not address this argument, the motion should be granted. *Estate of Ardt by Parker v. Allstate Ins. Co.*, No. 09-14247, 2011 WL 13208693, at *1 (E.D. Mich. Nov. 9, 2011) ("To the extent that plaintiff failed to present any argument in response to a particular issue, plaintiff has conceded the point.").

As an initial matter, Plaintiffs argue that Rule 408 does not bar evidence of settlement of a claim from being used to prove a distinct claim in the future. Opp. at 53–54. Plaintiffs, however, conflate the standard for admissibility of statements made during the course of compromise

negotiations with the standard for admissibility of settlement agreements. While the former (compromise negotiations) may be used in some limited instances to prove the validity of a distinct claim (such as one that arises during the negotiations themselves),[3] the latter (settlement) may not be used to prove the validity of a distinct claim. *See Korn, Womack, Stern & Assocs., Inc. v. Fireman's Fund Ins. Co.*, 27 F.3d 566 (6th Cir. 1994) (evidence of the settlement of claims would be inadmissible to prove the validity of "distinct" claims); *United States v. Robinson*, No. 5:11CR00584, 2012 WL 5386037, at *3 (N.D. Ohio Nov. 2, 2012) (applying rule). Accordingly, this principle has no bearing on the instant motion, which seeks to exclude a settlement agreement, with no admission of liability, unconnected to the Counties. Rule 408 prohibits Plaintiffs from introducing evidence of the Cephalon Settlement to prove their claims in this case.

Plaintiffs argue that courts have recognized several purposes allowing for the admission of settlement evidence; namely, establishing a party's knowledge of potential harm and proving a party's state of mind. Opp. at 54–55. However, Plaintiffs do not argue (nor can they) that either purpose is served through the Cephalon Settlement. As to knowledge of potential harm, Plaintiffs argue that "the multitude of enforcement actions and settlements establish a pattern of conduct demonstrating knowledge by Defendants that their SOM systems were inadequate." *Id.* at 55. Cephalon's single settlement for off-label marketing is entirely unrelated to any SOM systems, any knowledge about SOM systems, or even any relevant conduct in the Counties; it certainly cannot be said to establish a pattern. The same failing befalls Plaintiffs' argument that the "enforcement actions demonstrate that Defendants' conduct was intentional and persisted over a lengthy period of time." *Id.* Thus, the only explanation that remains is the obvious one—that

---

[3]     Plaintiffs' cases support this rule. *See Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293 (6th Cir. 1997); *Gjokaj v. United States Steel Corp.*, 700 F. App'x 494, 501 (6th Cir. 2017).

Plaintiffs intend to introduce the Cephalon Settlement to prove their clams, in violation of Rule 408.

### D.   The Court Should Exclude Evidence Of Opioid-Related Harm That Occurred Outside Of The Counties (TAD-4).

Plaintiffs do not dispute that their experts do not cite to any studies regarding opioid-related harms that occurred *in* the Counties and instead rely on documents and studies examining *other* municipalities and states, or national studies with generalized conclusions that cannot be extrapolated to the Counties.  Opp. at 107; *see also* Mot. at 8–9.  Nor do Plaintiffs dispute that they plan to rely at trial on documents, statistics, and studies demonstrating harms that are *entirely outside* of Cuyahoga and Summit Counties as evidence of the "national scope and nature of the crisis" in order to prove their alleged injuries.  *Id*.  Instead, Plaintiffs appear to argue that they should be allowed to introduce such evidence because '[t]his is a crisis which many Defendants are disputing actually exists" and "Defendants [may] blame the Plaintiffs for the harms." *Id*.[4]  But Plaintiffs do not cite to anything on the record to support those assertions. Moreover, those arguments make little sense and are simply a red herring.

At trial, the Counties can only recover for any harm that ***they*** incurred.[5]   The Court has made abundantly clear that only harm to the Counties is at issue.  Dkt. No. 2561, at 4-6 (denying summary judgment based upon alleged "increase in the supply of prescription opioids in the *Track One* Counties").  And Plaintiffs even concede in their Opposition that they "cannot recover for

---

[4]      Plaintiffs rely on *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, No. 14CIV2590VMJCF, 2017 WL 4748054 (S.D.N.Y. Oct. 19, 2017), but that case is neither controlling nor is it applicable as the issue there was valuation of a bank's assets for damages and did not consider whether damages of non-party banks should be included.

[5]      18 U.S.C. § 1964(c) (under RICO, plaintiff must be injured "in his business or property"); Ohio Rev. Code Ann. § 2923.34 (OCPA limits standing to "person who is injured"); *Lawyers Title Co., LLC v. Kingdom Title Sols., Inc.*, 592 F. App'x 345, 355 (6th Cir. 2014) ("if a plaintiff suffers no actual damages from the underlying unlawful act, there can be no successful civil conspiracy action") (citation and quotation omitted); *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 480 (6th Cir. 2017) (common law public nuisance claim requires injury to plaintiff).

harm incurred outside of Ohio."  Opp. at 107.  Accordingly, under Rules 402 and 403, only evidence of harm that Cuyahoga and Summit Counties experienced should be admitted in order for the Counties to prove their legally cognizable injuries and damages.

Plaintiffs do not and cannot dispute that the only alleged "crisis" at issue is what exists in the Counties.  As a result, any opioid-related harm experienced by other counties in Ohio, or that occurred elsewhere in the United States, is irrelevant, would confuse the jury into associating harms outside of the Counties as harms to the Counties, and would be highly prejudicial to the Moving Defendants—indeed, the jury may wrongly believe that because other areas of the country have experienced significant opioid-related harm, so too must have Summit and Cuyahoga.  Under Rules 402 and 403, this evidence should be excluded.

### E.  The Court Should Exclude Evidence Of Marketing-Related Statements Or Opioid Shipments Outside Of The Counties (TAD-5).

Plaintiffs do not dispute that, as part of their false marketing claims, they must prove that the Moving Defendants made false marketing statements to physicians *in the Counties*, thereby causing those physicians to improperly write a medically inappropriate prescription that caused harm in the Counties.[6] Opp. at 108.  Nor do Plaintiffs cite to any authority contrary to the common-sense argument that evidence of marketing activity by the Moving Defendants should be excluded where there is no showing those marketing materials were actually *distributed, published, or read in either County*.  *Id*.  The motion should be granted based upon these concessions alone.

Ignoring these points, Plaintiffs argue that because "[t]here was no state-specific marketing" and marketing materials might have been "approved nationwide" or were "able to be

---

[6]    Plaintiffs do not address the Moving Defendants' arguments regarding the inadmissibility of evidence of shipments outside of the Counties and instead refer to Plaintiffs' opposition to the Joint Motion in Limine.  Opp. at 108.  As explained in the Joint Reply, evidence of opioid shipments outside of the Counties is also inadmissible under Fed. R. Evid. 404(b).  *See* Joint Reply at Section II(6).

used all over America," they should be introduced even if they were *never actually used in Cuyahoga or Summit counties*. *Id.*   But marketing statements or materials (whether Ohio-specific or national) that were never actually disseminated to physicians in either of the Counties are irrelevant to proving the Counties' claims.  Someone in the Counties must have actually received and been misled by those marketing materials.  Introducing evidence of marketing materials where there is no showing they were ever used in the Counties would serve no other purpose than to mislead the jury into assuming that any allegedly false marketing material used elsewhere must have reached physicians in the Counties.

In addition, the Counties' attempt to penalize Moving Defendants under Ohio law, based on conduct outside of Ohio, is unconstitutional.  Mot. at 9–11.  Although Plaintiffs state they are not "seeking to 'penalize' Moving Defendants for conduct outside of Ohio," they fail to address how introducing evidence of marketing used elsewhere that has no ties to either of the Counties would not constitute an impermissible reliance on out-of-state conduct to satisfy Ohio state-law claims. Liability based on such evidence is unconstitutional and should be excluded.  *See Healy v. Beer Inst., Inc*., 491 U.S. 324, 336 (1989).  Under Rules 402 and 403, such evidence is irrelevant, misleading, and prejudicial and should be excluded.

**F.     The Court Should Exclude Evidence Regarding Moving Defendants' <u>Financial Support of Third-Party Groups (TAD-6).</u>**

Allowing Plaintiffs to introduce evidence of Moving Defendants' financial support of third-party groups would violate Moving Defendants' First Amendment rights.  Plaintiffs' argument on this issue is unavailing.

Plaintiffs do not dispute that the First Amendment protects the activity of funding trade organizations.  Opp. at 109.  Even so, Plaintiffs argue that such evidence is relevant because they

have additionally alleged that Moving Defendants worked with trade organizations to mislead the public. *Id.* But Plaintiffs cannot argue that funding—which is protected activity—is sufficient to establish liability. And they fail to point to any case in which evidence of activity protected by the First Amendment, such as funding trade organizations, was admissible on its own to prove a conspiracy. The two cases they rely on are inapt. *See In re Welding Fume Prod. Liab. Litig.*, 526 F. Supp. 2d 775, 805 (N.D. Ohio 2007) (granting summary judgment for defendant on all conspiracy claims and noting that "[t]his is not to say that joint activity undertaken through a trade association can never be evidence of a conspiracy."); *Taylor v. AirCo, Inc.*, No. CV 02-30014-MAP, 2003 WL 27382684 (D. Mass. Aug. 4, 2003) (declining to recommend dismissal on civil conspiracy claim due to allegations that defendants took affirmative acts at trade association meetings to perpetrate a series of frauds). Accordingly, the Court should exclude evidence regarding Moving Defendants' financial support of trade organizations and any argument that such support can trigger liability.[7]

### G. The Court Should Exclude Testimony From Russell Portenoy About Any Improper Conduct By Moving Defendants (TAD-7).

Plaintiffs do not dispute that Portenoy has already testified under oath that none of the statements in his declaration apply to Cephalon, Teva USA, or the Actavis Generic Defendants and that he has no evidence of any wrongdoing by any of them. Opp. at 112-13.[8] Instead, Plaintiffs argue that exclusion of testimony by Portenoy about improper conduct as to manufacturers would be "procedurally improper . . . because Moving Defendants have not demonstrated that Dr.

---

[7]     The Court should also preclude Plaintiffs from arguing that Moving Defendants are responsible for statements made by third-party groups because the Opposition fails to identify evidence that any third-party group acted as an agent for, or conspired with, Moving Defendants. No such evidence exists.

[8]     Plaintiffs no longer designate Portenoy on their witness list, but have refused to commit not to call Portenoy as a rebuttal witness at trial. As a result, a decision on this motion in limine is necessary.

Portenoy's trial testimony here would contradict his prior testimony in the Oklahoma case."  *Id.*
But this argument misses the point.   Moving Defendants seek to exclude Dr. Portenoy's
generalized testimony regarding "manufacturer defendants" *precisely* because he has already
conceded he cannot identify any wrongdoing (by the Moving Defendants) and, thus, any probative
value of testimony regarding other "manufacturer defendants"—all of whom are no longer
defendants in the Track One trial—would be substantially outweighed by the danger of unfair
prejudice and confusion to the Moving Defendants.  Fed. R. Evid. 403.

Nor do Plaintiffs' arguments regarding the ability to have deposed Portenoy in this case
and not done so justify allowing testimony about the alleged wrongdoing of "manufacturer
defendants" to be improperly imputed to the Moving Defendants.  Opp. at 113.  Portenoy has
already testified that he never had any communications with, and was not aware of any marketing
conducted by or funding received from, any of the Actavis Generic Defendants or Teva USA;
likewise, "there was nothing false or misleading" in any programs funded by Cephalon and "never
any effort on the part of [the] company . . . to change my messages or ask me to use specific
slides."[9]  Whether or not Moving Defendants (or any other defendants for that matter) decided to
depose Portenoy in this matter does nothing to change the fact that he cannot identify a single
instance in which any of the Moving Defendants engaged in any of the conduct described in his
declaration.  As a result, Portenoy's generalized statements about "drug companies" and "drug
manufacturers" would only further confuse the jury, since those statements improperly lump the
Moving Defendants (whom Portenoy concedes did nothing wrong) with all the other manufacturer

---

[9]      *See* Portenoy January 24, 2019, Deposition Transcript in *State of Oklahoma v. Purdue Pharma, et al*., Case
No. CJ-2017-816, at 459:12-21; 460:8-462:10; 472:13-473:7; 463:20-466:3; 466:20-467:6; 468:1-471:12; *see also*
474:24-475:16;  476:19-25;  477:25-478:6;  480:19-481:9;  483:1-22;  484:3-486:20;  488:14-490:8;  490:14-492:6;
492:19-493:4; 494:12-16, ECF No. 1969-11.

defendants—who are no longer in the Track One trial.  Portenoy should thus be precluded from testifying about any supposed misconduct by the Moving Defendants.

### H.    Plaintiffs Should Be Precluded From Arguing That The Actavis Generic Defendants Should Have Made Additional Warnings Regarding Their Generic Medicines Or Should Have Stopped Selling Them (TAD-8).

Evidence that Actavis Generic Defendants should have made additional warnings regarding their generic medications, or that they should have stopped selling those medicines, must be excluded as a result of the "duty of sameness" imposed by federal law and controlling Supreme Court authority, as this Court has recognized.  Despite Plaintiffs' charge that Defendants are "re-litigat[ing] the preemption theory," Opp. at 114, it is Plaintiffs who attempt to distort the Court's preemption ruling to their benefit.

There is no getting around this Court's holding that Plaintiffs' claims are preempted "to the extent that the state law claims depend upon" allegations that Generic Manufacturers should have "sen[t] warnings that the Brand-Name Manufacturers had not sent." Op. & Order Denying Defs.' Mot. Summ. J., at 10, ECF No. 2565 (alteration added) (quoting Muscogee R. & R., at 42, ECF No. 1499).  Ignoring the relevant preemption holding, Plaintiffs cite to unrelated rulings to argue that "Defendants already lost." *See* Opp. at 114.  But the Court's on-point ruling is clear: Plaintiffs' claims that rely on allegations that Actavis Generic Defendants should have made additional warnings are preempted.  While the Court said that Plaintiffs can try to prove actual false marketing (which simply does not exist), Plaintiffs cannot try to introduce evidence related to a preempted theory. *Rheinfrank v. Abbott Labs., Inc.*, No. 1:13-CV-144, 2015 WL 5258858, at *2 (S.D. Ohio Sept. 10, 2015).[10]  At a minimum, such "failure to disclose" evidence would be

---

[10]    Plaintiffs attempt to distinguish *Rheinfrank* on the basis that it involved a different preempted theory than at issue here, but the holding that preempted argument and evidence is irrelevant is equally applicable here.

unduly prejudicial, allowing the jury to try to impose liability that would be improper as a matter of law.

Moreover, the Supreme Court and the Sixth Circuit have expressly foreclosed any argument that generic manufacturers should be held liable for not selling their medicines.  *See, e.g.*, *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 488 (2013) ("We reject this 'stop-selling' rationale as incompatible with our pre-emption jurisprudence."); *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 925 (6th Cir. 2014) (rejecting theory that "a generic manufacturer could have avoided the conflict between state and federal law by refraining from selling the drug"). Plaintiffs simply ignore this case law and argument.  As a result, any such evidence or argument concerning this theory should be excluded too.

## I.    The Court Should Exclude Reference To The Purchase Price Paid By Teva Pharmaceutical Industries Ltd. For The Actavis Generic Defendants (TAD-9).

As an initial matter, this Court issued an Order severing Teva Pharmaceutical Industries Ltd. ("Teva Ltd.") as a Defendant from the Track One trial on the same day Moving Defendants filed their motions in limine.[11]  As Plaintiffs note, the result is that "Teva [] Ltd.[] is not a defendant at the trial." Opp. at 116.   As a result, the purchase price paid by Teva Ltd., a non-defendant, for certain assets is wholly irrelevant.  Such evidence certainly has nothing to do with whether any of the Moving Defendants engaged in the allegedly false marketing or improper distribution of opioid medicines.[12]  Because the purchase price is entirely irrelevant to the issues being resolved in the upcoming trial, it should be excluded.

---

[11]    *See* September 25, 2019 Order regarding Mot. Dismiss ("Order"), ¶ 1, ECF No. 2673.

[12]    Plaintiffs acknowledge that they "only seek to impose liability on Teva Ltd. derivatively, based on the alleged conduct of the direct and indirect subsidiaries of Teva Ltd." Order ¶ 3. Thus, evidence as to Teva Ltd.'s "willingness" to do anything or "knowledge and potential motives," has no purpose other than to mislead the jury and confuse the issues at trial.

12

It is irrelevant for other reasons, too.  Remarkably, Plaintiffs acknowledge that they intend to use evidence of the $40 billion purchase price to try to show that opioids were "profitable for Defendants," including the "value of and expectations for sales of generic opioids."  Opp. at 115–16.  But Plaintiffs have conceded that evidence of a Defendant's "financial condition" and "assets" is irrelevant, since punitive damages are not at issue in this case.  Opp. at 47.  Moreover, the purchase price that Teva Ltd. paid for the Actavis Generic Defendants in late 2016, many years after Plaintiffs say the opioid abuse crisis began, says nothing about any motive to engage in the alleged misconduct Plaintiffs complain of here.

Worse yet, admission of this evidence would be misleading and totally prejudicial,[13] since it would allow the jury make improper assumptions of the financial health of the Moving Defendants and/or improperly cause the jury to impose liability merely because of a misguided notion that the Moving Defendants "can afford it."  That is so because "[e]vidence of the financial information 'creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences.'"  *Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14CV-00022-JHM, 2017 WL 3401476, at *2, *13 (W.D. Ky. Aug. 8, 2017) (excluding evidence of "the financial condition or net worth of [defendant] and the purchase price of [acquired company because they] are not relevant to the [plaintiff's] claim.") (citation and quotation omitted).[14]  As a result, Sixth Circuit has made clear that such statements relating to "the

---

[13]     Plaintiffs rely on *Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, No. 13-cv-11544, 2015 WL 4934628, at * 11 (E.D. Mich. Aug. 18, 2015), but the court there noted the dangers and "potential prejudicial effect" of allowing evidence of "[a defendant's] financial condition or 'deep pockets'" to be introduced.

[14]     Plaintiffs acknowledge that references to the "defendant's financial condition was properly found irrelevant" in *Brooks*.  Opp. at 116.  The same result applies here.

wealth . . . of [one of the parties] 'are clearly calculated to direct the jury's attention to . . . compensation rather than the real issues in the case' and have been held to be prejudicial error." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756-57 (6th Cir. 1980).  For this reason alone, the evidence should be excluded.

At a minimum, allowing the Plaintiffs to introduce the purchase price paid by a non-defendant for the acquisition of the Actavis Generic Defendants would create a distracting and improper sideshow.  The Moving Defendants would be forced to spend time challenging Plaintiffs' unsupported and misleading accusations of the underlying motivation for purchasing the Actavis Generic Defendants (which, again, has nothing to do with the alleged unlawful marketing or distribution of opioids), the expected revenue from that acquisition, and any alleged profits with respect to this one transaction alone.  This would distract from the core legal issues that the jury must decide in this case.   As a matter of law, such evidence must be excluded under Rules 402 and 403.

> **J.**   **The Court Should Exclude Reference to the Settlement Agreement Between Teva Ltd. and Allergan (TAD-10).**

Plaintiffs stated that they have no objection to TAD-10.  Opp. at 116.

## CONCLUSION

For the foregoing reasons, the Moving Defendants ask that the Court grant their Omnibus Motion in Limine.

Dated: October 14, 2019

Respectfully submitted,

*/s/ Steven A. Reed*
Steven A. Reed
Eric W. Sitarchuk
Rebecca J. Hillyer
Harvey Bartle, IV
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
steven.reed@morganlewis.com
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com
harvey.bartle@morganlewis.com

Nancy L. Patterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
Tel: (713) 890-5195
nancy.patterson@morganlewis.com

Wendy West Feinstein
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219-6401
Telephone:  (412) 560-3300
wendy.feinstein@morganlewis.com

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Telephone: (305) 415-3000
brian.ercole@morganlewis.com

*Attorneys for Teva Pharmaceuticals USA,*
*Inc., Cephalon, Inc., and Actavis LLC*

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 14, 2019, the Teva Defendants' and Actavis Generic Defendants' Reply in Support of Their General Motion in Limine, along with supporting exhibits, was served via email on all attorneys of record consistent with the June 24, 2019 Order setting forth Directions Regarding Filing of Briefs Under Seal.

/s/ *Steven A. Reed*
Steven A. Reed