UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

- - - - -

IN RE:                          )
                                )
   NATIONAL PRESCRIPTION         )    CASE NO. 1:17CV2804
                                )
   OPIATE LITIGATION             )

- - - - -

TRANSCRIPT OF TELECONFERENCE PROCEEDINGS HAD BEFORE

THE HONORABLE JUDGE DAN A. POLSTER, JUDGE OF SAID

COURT, ON MONDAY, SEPTEMBER 16TH, 2019,

COMMENCING AT 2:30 O'CLOCK P.M.

- - - - -

Court Reporter:          GEORGE J. STAIDUHAR
                         801 W. SUPERIOR AVE.,
                         SUITE 7-184
                         CLEVELAND, OHIO 44113
                         (216) 357-7128

1   <u>P R O C E E D I N G S</u>

2   THE COURT:  Good afternoon, everyone.

3   I guess I want to — and we have a court

4   reporter here.  I think J & J suggested it.  I think it

5   is a good idea, so this will be transcribed.  This is

6   obviously the Opiate MDL 2804.

7   This is a discussion with counsel for the

8   two Plaintiffs in the October trial and the eight

9   Defendants we currently have.

10  Obviously, there is, at least one of these

11  Defendants, a settlement has been announced.  It may very

12  well go through.  There may be other settlements, but at

13  the moment, we have eight, and I wanted to discuss a few

14  things.

15  The trial documents are due September 25th.

16  That's a week from Wednesday.  The main thing I am

17  looking for are relatively short trial briefs.  I don't

18  need a regurgitation of all the law and everything you

19  had in those summary judgment motions.

20  I am really doing it to see — get a

21  sense from each side how you are going to prove your

22  case and how you are going to defend your case so I can

23  follow what's going on.   So I don't want more than ten

24  pages.

25  The jury instructions, they are to be agreed

1    upon, and only if there are disagreements, then,

2    you can highlight where you disagree.  But I mean,

3    RICO is established; Ohio RICO is established; same

4    with conspiracy, public nusance, the law should be

5    clear.

6             Motions in limine are also due.  I don't

7    want hundreds of them.  All right.  I want — if there

8    are a few important things that you think the Court

9    should decide before trial that will streamline things,

10   fine, but if I get a hundred motions in limine, I am just

11   going to toss them all.  I won't even read them, and my

12   staff won't read them, so be circumspect about what you

13   are doing.  They should be short and succinct.

14            Someone asked a question about the length of

15   time for opening statements.  I guess I am looking to you

16   for suggestions.  I mean, opening statements are not

17   closing arguments.  They are a road map for your

18   evidence.  There are, you know, eight Defendants.

19            I don't want people repeating the same

20   thing.  Okay?  So why don't you all — you can figure

21   that out and give me some suggestions.  If I have to set

22   elements, I will, but I would rather hear what you say

23   and suggest.  You have got some of the best trial lawyers

24   in the country.

25            And good lawyers know what to say, and that

1  — unless you are the most spellbinding orator on the

2  planet, you much past 45 minutes, people are going to go

3  to sleep.  So I don't think they should be longer than

4  that, and I really think 30 — I really think 30 minutes,

5  particularly since the Defendants shouldn't be repeating

6  what each of you are saying.

7  So if you focus on, sort of discuss with

8  each other, you only need one person to make general

9  points.  You don't need all eight.

10  The main thing I wanted to discuss is public

11  nusance.  And my objective from the start was to do

12  everything I could to make the trial fair for all the

13  parties.

14  And the prerequisite for that, a fair trial

15  is that it be manageable and intelligible to a jury, and

16  defense counsel pointed out multiple times that a trial

17  of 22 Defendants with myriad claims was unworkable,

18  unmanageable.  I agreed.

19  I made it clear to the Plaintiffs that they

20  had to streamline it.  And that has happened.  We are

21  down from 22 Defendants to eight through severance,

22  bankruptcy, settlements.  It wouldn't surprise me if by

23  the time we reach October 21 we will have fewer than

24  eight, but eight is manageable.

25  I requested submissions the last week or two

1  on how to handle the public nusance claims, and I want to

2  complement everyone.  They were short; they were well

3  written; they were right to the point, and they helped me

4  crystallize my thinking.

5          There was never a question that we were

6  going to have a jury to decide federal and state RICO

7  and conspiracy, and if they find liability on any of

8  those claims, what damages?  There was never any question

9  about that.  The issue was what to do about public

10  nusance.

11          This was highlighted in the submissions, but

12  I want to make sure I am correct about this.  It appears

13  that there will be a very, very substantial overlap in

14  the evidence that the Plaintiffs are going to introduce,

15  the lay testimony, the expert testimony, the documents on

16  the federal RICO, the state RICO, conspiracy and the

17  public nusance.

18          Is that correct from the Plaintiffs'

19  side?

20          MR. WEINBERGER:  Your Honor, this is

21  Pete Weinberger, there is overlap.  We agree.

22          THE COURT:  All right.  And I think

23  substantial overlap.  I don't think we are talking about

24  two — you know, there is substantial overlap.

25          And second, I think everyone agreed that in

1    the event there is liability for public nusance, the

2    question of abatement, monetary, non monetary abatement,

3    remedy for public nusance is equitable.  It is for the

4    Court to decide and not a jury.

5                    Is there any party that disagrees with

6    that?

7                    MR. PISTILLI:  Your Honor, this is Chris

8    Pistilli for McKesson.

9                    I had indicated in our submission, it is our

10   understanding that true abatement relief is appropriate

11   for the jury.  As we've indicated in prior submissions,

12   it is not Defendants' position that the relief Plaintiffs

13   are seeking, which is essentially monetary damages in its

14   abatement, but we understand your Honor has already ruled

15   on it.

16                   THE COURT:  Well, there can be economic and

17   non economic abatement.  Abatement is abatement.  It is

18   not damages for anything in the past.

19                   If prospective relief to abate a nuisance

20   costs something, well, it costs something.  It is

21   directing that things be done, and usually, things cost

22   something to do.

23                   So it is —

24                   MR. PISTILLI:  We understand your Honor's

25   ruling on that.

1          THE COURT:  Well, I think I've ruled.

2          In other words, it is not for — all right.

3          It seems to me what I am proposing is that a

4     jury decide whether or not any of the Defendants are

5     liable for public nuisance.  And that's all the jury will

6     decide with respect to public nuisance.  There is not

7     going to be any evidence or testimony about what any

8     relief or abatement would be in the event there is

9     nuisance, how much it would cost, who would do what,

10    whatever.

11         We are not going to take the time in the

12    trial for that because the jury isn't going to decide it,

13    and my concern is, it may confuse them, and they may

14    jumble things up and conflate that with past damages.

15         And that's for me to decide if and only if

16    the jury determines that anyone has committed a public

17    nuisance.  And again, I think the Defendants made a good

18    argument that they are entitled to a jury determination

19    on the facts, which support a public nuisance claim, an up

20    or down, and it seems to me in that case the jury should

21    decide the liability as well.  It avoids any possible

22    inconsistency between what I do and what the jury does.

23         If the jury is finding the facts, the jury

24    can — you know, the instructions will tell them what the

25    elements are, and they will decide.  And so we will have

1    a jury trial on the state and federal RICO and conspiracy

2    and public nuisance liability only.

3              And then, at the end of the trial, if there

4    is — if and only if there is a verdict on public nuisance

5    against one or more of the Defendants, I will discuss

6    that with the parties, and we will schedule an

7    evidentiary proceeding at some point post trial, and I

8    will determine what the appropriate remedy is, and then,

9    of course, either side can appeal from that.

10             So I am putting that out there, and I want

11    to know if anyone has a real problem now, if they want to

12    — you know, this is discussion.  I synthesized this from

13    what I read, and it seems to me it has the merits of

14    either — it either shortens the trial or keeps the trial

15    the same length and let's both sides spend more hours on

16    the claims you've got, and you don't have to take it up

17    on putting in a whole lot of evidence about what

18    abatement would look like.

19             So that's a plus.  It avoids — the jury is

20    just going to be confused.  You know, I can instruct them

21    that's for me, not for them, but that's hard to follow,

22    and they are going to wonder why they are spending their

23    time on that.

24             And three, it eliminates the possibility

25    that somehow that testimony about the future is going to

1    — and how much abating that will be will somehow leak in

2    or influence their decision on anything else.

3              So I think from where I sit it makes sense

4    on all three grounds.  So does anyone have any thoughts

5    or reaction to that?

6              MR. PETROCELLI:  Your Honor, Dan Petrocelli.

7    I represent Johnson & Johnson & Jansen.

8              We certainly agree with the Court that the

9    matter of abatement and all the evidence with respect to

10   that is not for the jury but for the Court in some

11   post-trial proceeding if and when liability already were

12   established.

13             However, as we indicated in our submission,

14   we also believe that the fact of public nusance is also

15   for the Court.

16             THE COURT:  I know that, Dan, but you were

17   in the minority.  Okay?  I think all the other Defendants

18   said, at least, the facts are for the jury.  And so I'm

19   concerned about somehow inconsistent verdicts because if

20   there is a substantial overlap in the testimony and the

21   jury is deciding the facts and all the other claims that

22   are clearly legal and then I am sitting there hearing the

23   same testimony and deciding whether or not there is a

24   public nusance, I think that's a problem.

25             So I think it is better if — I think it is

1    better for the jury to decide it.  If someone — I mean,

2    I understand, Dan, I read your brief.  I saw that

3    position, but I think if you are suggesting that somehow

4    I sit there and I hear the same evidence and regardless

5    of what the jury does on state and federal RICO and

6    conspiracy I come to my own conclusion on public nusance,

7    you haven't explained why that isn't a problem.

8         MR. PETROCELLI:  Well, I think it is

9    fundamentally an equitable claim, and it is not for the

10   jury to decide, and I do believe that it will entail

11   taking additional evidence of beyond the three legal

12   claims.

13        And I fear that —

14        THE COURT:  What is that significant

15   evidence?  I didn't hear that from the Plaintiffs.  On

16   the remedy, absolutely.

17        MR. PETROCELLI:  And your Honor, I am afraid

18   that if the public nusance is in front of the jury, there

19   is going to be leakage of abatement-type matters into the

20   record in front of the jury, which will prejudice the

21   Defendants.

22        THE COURT:  Well, there isn't going to be

23   any testimony about abatement.  That's what I am saying.

24        The parties aren't going to introduce it,

25   and I will give an instruction similar to the one I give

1    in criminal cases that says, if you find the Defendant is

2    guilty, the punishment is up to me, and you are not even

3    to guess or speculate or even consider what that will be,

4    so I will do the same thing.

5              They are just to find whether or not the

6    Plaintiff has made out and met every element of the claim

7    of public nusance, and they will have to vote on each of

8    the eight Defendants separately and yes or no.

9              And I will have an instruction that it will

10   be strictly up to the Court to decide what to do about it

11   if you find there is public nusance liability, and that's

12   that.  And there won't be any testimony about injunctive

13   relief, abatement measures, anything about that at all,

14   zero.  I won't even let anyone talk about it, you know,

15   what they might do or should do.

16             MR. PETROCELLI:  Or how much they are

17   seeking.

18             THE COURT:  Or how much they are seeking.

19             And right, they can talk about how much they

20   are seeking for past damages, damages on the conspiracy

21   and the RICO.  That's different.  They can say the past

22   eight years we have spent whatever.  There is going to be

23   testimony about that.

24             But I am not going to allow anyone to even

25   talk about what they might be seeking or wishing for the

1     future in opening statement or anything, zero.  You can

2     use your time on the seven weeks we have on the rest of

3     the case.

4                    So that's my —

5                    MR. WEINBERGER:  Your Honor, this is Pete —

6                    THE COURT:  Yes.

7                    MR. WEINBERGER:  — Weinberger.  Can I just

8     interrupt you for a second?

9                    THE COURT:  Yeah, you weren't interrupting.

10    I asked everyone.

11                   MR. WEINBERGER:  I just want to verify —

12                   THE COURT:  Yes.

13                   MR. WEINBERGER:  — I want to be clear that

14    under the RICO claims and the civil conspiracy claims we

15    also have claims for future damages, not associated with

16    abatement, but to the extent the damages continue into

17    the future, we do have evidence of that, and that is

18    relevant to those claims.

19                   So I didn't — I want to make sure we are

20    clear on the record with respect to that.

21                   THE COURT:  Well, how can you seek damages

22    for the future?

23                   MR. WEINBERGER:  Well, to the extent that

24    the damages that we have suffered, that we are proving

25    are past damages, to the extent that they continue into

1    the future and can be calculated with reasonable

2    certainty, we are entitled to present those to the jury

3    under those causes of action.

4              THE COURT:  Well —

5              MR. PETROCELLI:  Your Honor, this is

6    Mr. Petrocelli.  This is precisely the issue that I was

7    alluding to because this is an argument for getting

8    everything in front of the jury contrary to everything

9    you just got finished saying.

10             THE COURT:  Well, I don't think — I mean —

11   all right.

12             In a personal injury case, if you have

13   someone who is injured and you are getting past —

14   compensation for past injury, that could include, if you

15   can quantify it, things that will have to be done in the

16   future.

17             For example, a life-care plan, if you have

18   someone who has been injured, has catastrophic injuries

19   and needs care for — say their life expectancies is ten

20   years, they are going to need care for ten years — and

21   you can quantify it through fact witnesses, experts,

22   whatever, and say "hey, it is going to cost a hundred

23   thousand dollars a year for the next 20 years to care for

24   this person," a jury can find that.

25             Whether or not you have got that kind of

1    proof or whether it is speculative, you know, I don't

2    know.  But again, that's not abatement; that's — you

3    know, again, I will wait and see what that testimony is.

4    That's not equitable, and that's not abatement.

5              It has got to be specifically tied to past

6    harm, and I am not sure exactly, Pete, exactly what you

7    are seeking.  And you know, you will have to spell that

8    out, and I will have to look at the law, but that's not

9    — that's not public nuisance; that's — so if you can

10   prove that and the law permits it, you may be able to get

11   it, and a jury could consider it.

12             You better put that in your trial briefs

13   because I am going to have to decide that, and if I — I

14   will look at that very carefully.  That hasn't really

15   been fronted in all the issues that I've had to decide.

16   So you better put that in the trial briefs.

17             MR. REED:  Your Honor —

18             THE COURT:  Yes.

19             MR. REED:  — I apologize.  I apologize for

20   interrupting.  Steve Reed for Teva.

21             Just to be clear, Teva agrees with the

22   approach, your Honor, that you've outlined.  We don't

23   agree that the Plaintiffs are entitled to future damages.

24   We will likely have a dispute or a debate, at least, over

25   what types of remedies they are entitled to under their

1     public nuisance claim, but that's something that we can

2     take up if and when it is necessary.

3                    THE COURT:  Well, that's the whole point.

4                    MR. REED:  Right.  Exactly.  I am agreeing

5     with you, your Honor.

6                    I think you've outlined the most efficient,

7     sensible approach.

8                    THE COURT:  All right.

9                    MR. REED:  We are anxious to use the trial

10    time efficiently.

11                   THE COURT:  I need to understand from the

12    Plaintiffs exactly what you are talking about with these

13    future damages because I am not certain — I am not

14    certain that you can get them, but I will look, and so

15    you better get that to me as quickly as possible, and the

16    Defendants can respond.

17                   If they think the Plaintiffs are not

18    entitled to seek — remember, we don't have individuals,

19    specific individuals in this case; we have got Government

20    entities.

21                   And I, quite frankly, thought that what you

22    are seeking in those legal claims are past damages, money

23    that the cities, counties, states had spent above and

24    beyond what they otherwise would have spent in law

25    enforcement, public health treatment, all that, that they

1    are laying out, that they wouldn't have otherwise laid

2    out or lost opportunity to use that money for something

3    else.  I didn't think you were going to —

4                    MR. WEINBERGER:  Understood, your Honor.

5                    THE COURT:  — that you were going to try

6    and have the jury guess how much you are going to have

7    to pay in the future.  I am not at all sure you can do

8    that.

9                    MR. WEINBERGER:  We'll — we will present

10   that in our trial brief.

11                   There is one other issue that I wanted to

12   address, and again, this is Pete Weinberger.  With

13   respect to the public nusance claim, one of the elements

14   is whether the public nusance is abatable, which

15   will require testimony if we are going to try that

16   phase.  Before we get to what the abatement remedy is,

17   it will require testimony about how we would address

18   that element of the abatement through expert testimony.

19   So —

20                   THE COURT:  I don't want any of that stuff.

21   I mean, whether it is abatable is up to me to decide.  It

22   seems to me that's part of the equitable remedy if and

23   only if the jury decides any of the Defendants have

24   created a public nusance.

25                   If they've created it, the remedy is up to

1    me.  If I determine that it can't be abated, well, then

2    there is no remedy.  All right.  If I determine there is

3    nothing — that there is nothing anyone can do to make it

4    better or fix it, well, then, that's the end of it, but

5    it seems to me that's for me to decide, not the jury.

6              They decide the elements of what public

7    nusance is and whether the Plaintiff has proven all those

8    elements with respect to any of the eight Defendants.  I

9    mean, am I wrong about that?  I don't see how an element

10   of public nusance is whether or not it is abatable, the

11   nuisance is causing —

12             MR. REED:  We agree with your Honor.

13             THE COURT:  All right.  So we are not going

14   to have any testimony about whether a public nusance is

15   or isn't abatable or how to abate it.  We will put that

16   off, and if there is liability, I will schedule it with

17   the parties.

18             MR. SKOLNIK:   Judge Polster, this is

19   Hunter Skolnik.  I am sorry to interrupt; just a quick

20   point:  So would this contemplate a post — some type of

21   post jury verdict proceeding —

22             THE COURT:  Yeah.

23             MR. SKOLNIK:  On the —

24             THE COURT:  That I would do.

25             MR. SKOLNIK:  — abatement plan?

1          THE COURT:  Yes, Hunter.

2          MR. SKOLNIK:  And that would include your

3    assessment if it is abatable?  I'm sorry.

4          THE COURT:  If and only if the jury finds

5    public nuisance liability on at least one Defendant, then

6    I will have a post-trial proceeding.  Whether you call it

7    a bench trial, an evidentiary hearing, I don't think it

8    matters, it is the same thing.

9          And I will hear testimony from both sides as

10   to, A, whether or not it can be abated, and B, if so, how

11   to do so.  And I will make a decision, and obviously, it

12   will be written, and either side or both sides can appeal

13   from it.

14         And when I schedule it, I will figure it out

15   with the parties.  I mean, it is not going to be the next

16   day obviously.  It seems to me that's the most efficient

17   way to do it.

18         MR. SKOLNIK:  Understood.  Thank you.

19         THE COURT:  Obviously, if the Plaintiffs

20   don't prove public nuisance, we never have it.  Which is

21   another reason to put it off.  All right.

22         Well, I think that's what we are — unless

23   someone — I mean, if someone feels very strongly that

24   they will be — that they will be prejudiced by this or

25   that this somehow — I mean, if I am violating

1   established Sixth Circuit law or Supreme Court law by

2   doing this, I want to know.

3               I don't want to go hell-bended to a

4   reversible error, but — so if someone thinks there is

5   established Sixth Circuit or Supreme Court law to the

6   contrary, I certainly want to know about it, and I will

7   have to look very carefully because that's not my

8   intention.

9               Or if someone thinks that they will be very

10  seriously prejudiced by this approach, I want to know

11  that because I am certainly not looking to do that.  I am

12  trying to do the opposite, in fact, to be very fair to

13  both sides.  So I would like to know that.

14              And then, very quickly, like I would say no

15  later than Thursday at noon, if someone thinks I have got

16  — I mean, there is Sixth Circuit or Supreme Court law

17  that I am ignoring or that they will be seriously

18  prejudiced, file something by noon on Thursday.  And

19  then, I am trying to think, the best way to address this

20  question of future damages, so — well, Judge Ruiz is

21  suggesting to do it in the motion in limine.

22              MS. HUGHES:  If not sooner.

23              THE COURT:  Well, I am trying to think.

24              If we do it that way, yeah, why don't we do

25  that?  Why don't we do it this way?

1          Since it has sort of been teed up, each side

2   — I mean, Plaintiffs can file one motion in limine if

3   you think you are entitled to future damages on the state

4   or federal RICO or conspiracy and set out the evidentiary

5   and legal basis for it.

6          And if the Defendants feel that the

7   Plaintiffs aren't entitled, you file, and then you can

8   each respond to each other's.  So I get the full picture

9   according to the schedule we have.  And again, I don't

10  need eight briefs from the Defendants.  Okay.

11         If you all have a similar position, I would

12  appreciate one.  And if you need a little longer, if you

13  are all eight joining in it, that's okay, but we don't

14  need eight things saying the same thing.  I assume

15  probably all eight are going to agree on it, so we will

16  just get one, and I will take a look at it, and that's

17  obviously something I will need to decide before trial

18  because it affects a lot.

19         MR. REED:  Your Honor, Steve Reed again for

20  Teva.

21         THE COURT:  Yeah.

22         MR. REED:  There are two issues if I may.

23  One is on the motion in limine, it is my understanding

24  that we have aggregate page limits and set for motions

25  in limine.  I am concerned that this new round today

1       will lead into what is already a limited allocation.

2                       May we have your permission to —

3                       THE COURT:  Yeah.

4                       MR. REED:  — we will keep these short but

5       whatever pages —

6                       THE COURT:  Since I decided to add one, what

7       do we have, and I can add.

8                       MS. HUGHES:  We have I believe —

9                       VOICE:  I believe it was 40 pages or so in

10      the aggregate, something like that.  I am sure the

11      parties know.

12                      THE COURT:  Does anyone know what the

13      aggregate page limit for motions in limine are?

14                      MS. LUCAS:  Your Honor, this is Amy Lucas

15      for Jansen.  It is 44 pages for aggregate each side; 22

16      pages for the aggregate, distributor, manufacturer,

17      pharmacy brief, and eight pages per party for individual

18      issues.

19                      THE COURT:  It might be more than 44, but I

20      didn't quite understand that.  44 in the aggregate?

21                      MS. LUCAS:  We understand that each

22      Plaintiff and the Defendant each file one joint defense

23      or joint Plaintiff motion.  That's 44 pages.  Then, the

24      manufacturing group can file a manufacturers' specific

25      motion as 22 pages, and then each individual — Jansen

1    then has eight pages to brief our individual issues.

2                    VOICE:  There has been some discussion.

3                    MS. LUCAS:  Right.  There has been some

4    discussion about moving pages around Special Master

5    Cohen, but that's —

6                    THE COURT:  I am not aware of any of this.

7    I haven't seen it, so I don't know.  That seems to be a

8    whole lot of pages, a lot more than I want or need

9    already.  That looks like a hundred pages or more per

10   side.  I mean, I think that's crazy.

11                   So I am certainly not going to add to that.

12   I thought it was something a lot smaller, like maybe 40

13   pages total.  That certainly seems ample to me to what we

14   are talking about.  So I am certainly not going to add to

15   that.  That seems — I got to take a look at that.  That

16   seems way too long.

17                   MR. PETROCELLI:  Your Honor, Mr. Petrocelli

18   here.

19                   While you are thinking about that —

20                   THE COURT:  I am not thinking; I am just

21   saying I thought about it.  It is way too long.

22                   MR. PETROCELLI:  Okay.  Well, apparently,

23   they are reading from some kind of order that was

24   previously issued.

25                   THE COURT:  If it has been issued, I am

1  stuck with it.

2                    MS. LUCAS:  24 pages.

3                    THE COURT:  Well —

4                    MR. PETROCELLI:  Amy, do you have a

5  correction?

6                    MS. LUCAS:  It is 24 pages for the industry

7  group.  If you want to look at the order, your Honor,

8  docket entry 1709 and —

9                    THE COURT:  All right.  Well, it seems —

10                    MR. PETROCELLI:  Your Honor, but my

11  question, in addition to this page issue, is this

12  additional motion in limine that you are allowing each

13  side to file, is that due on the same day, which I think

14  is the 25th of September?

15                    THE COURT:  Right.  That should be the same

16  day so I can address this stuff before trial.  That's the

17  whole idea, and this is an important one because I have

18  got to — you know, this affects some substantial

19  testimony possibly.

20                    MR. PETROCELLI:  Thank you, your Honor.

21                    THE COURT:  Okay.  In fact, that covers what

22  I had to cover, and again, I appreciate everyone's hard

23  work.  My job is to make this trial, do whatever I can to

24  make it intelligible to a group of people that we select

25  as jurors.  So that's what I am trying to do.  Okay?

1              Thank you, all.

2              MR. PETROCELLI:  Your Honor, Mr. Petrocelli

3      again.

4              THE COURT:  Well, all right.  Some people

5      may have gotten off, but go ahead.

6              MR. PETROCELLI:  Yeah.  About the

7      prescreening process, we come to learn that juror summons

8      have gone out.

9              THE COURT:  Right.

10             MR. PETROCELLI:  And they apparently include

11     a question about whether the jurors are available for a

12     trial of approximately 8 weeks.

13             THE COURT:  Right.

14             MR. PETROCELLI:  And I want to get more

15     clarity on how that process is being conducted.

16             In other words, what's the question —

17             THE COURT:  I don't know exactly.  I

18     stay out of that.  The jurors know — I mean, there

19     is no point bringing people in who say "I can't" — you

20     know, "I can only stay two or three weeks,"

21     Mr. Petrocelli.

22             MR. PETROCELLI:  Well, your Honor, though, a

23     lot of people say that when they are just trying to get

24     out of jury duty.

25             THE COURT:  Well, I can't do anything about

1    that.  I want people who understand that this is a

2    lengthy commitment, and if they have personal or

3    professional obligations that include that, we are not

4    counting them, and I want to start with people who, at

5    least, can do that.

6              MS. HUGHES:  And I assume that the jury

7    department is —

8              THE COURT:  The jury department knows how to

9    do that.

10             MS. HUGHES:  Right.

11             THE COURT:  And they do it when we have long

12   trials, and I don't get into that.  So if someone wants

13   to call the jury department that he can find out, but I

14   am not getting involved in that.  Our jury department are

15   professionals, and they know how to do these things.

16             MR. PETROCELLI:  Thank you, your Honor.

17             THE COURT:  So I just thought it was not

18   efficient to bring in a bunch of people, and we lose them

19   all because they say "well, I have got to do this and

20   that in November, and I am out of here."

21             It is going to be difficult enough, then,

22   focusing on people who can be fair and impartial.  So we

23   are going to start.  The only people we are going to

24   bring in are people who have said that they are able to

25   serve on a long trial.

1          MS. HUGHES:  And are, in fact, able.

2          THE COURT:  Well, I assume they wouldn't say

3    they are able if they are not.  So if they are able and

4    willing to do it.

5          Okay.  Thank you, all.

6          (Teleconference concluded at 3:11 p.m.)

7               - - - - -

8

9

10                   C E R T I F I C A T E

11          I, George J. Staiduhar, Official Court

12   Reporter in and for the United States District Court,

13   for the Northern District of Ohio, Eastern Division,

14   do hereby certify that the foregoing is a true

15   and correct transcript of the proceedings herein.

16

17

18

19                    s/George J. Staiduhar
                      George J. Staiduhar,
20                    Official Court Reporter

21                    U.S. District Court
                      801 W. Superior Ave., Suite 7-184
22                    Cleveland, Ohio 44113
                      (216) 357-7128
23

24

25