**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090<br><br>*The County of Cuyahoga, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 17-op-45004 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**DISTRIBUTOR DEFENDANTS' OBJECTION TO**
**OCTOBER 13, 2019 DISCOVERY RULING PERMITTING**
<u>**NEW EXPERT OPINIONS INCORRECTLY LABELED AS "ERRATA"**</u>

## INTRODUCTION

In a reversal of two prior decisions, the Special Master on Sunday night issued an Order permitting Plaintiffs to introduce *new* expert opinions that significantly alter this case on the eve of trial.  ECF No. 2799.  These opinions swell Plaintiffs' damages claim by tens of millions of dollars by creating a new category of damages aimed solely at Distributor Defendants.  They also change Plaintiffs' theory of causation from one starting with Manufacturer misconduct as the genesis of Plaintiffs' alleged injuries, to one starting with Distributor Defendants' actions instead.  Distributor Defendants have been afforded no discovery of these opinions, nor could they take discovery and prepare responsive expert reports before trial begins in six days.  The unfair prejudice to Distributor Defendants at this stage in the litigation is significant and incurable.

The Special Master originally indicated that the prejudicial and untimely "Errata" would be stricken, *see* Ex. 2 (Oct. 10, 2019 Special Master Ruling), but he reversed course in the formal ruling issued Sunday evening.  ECF No. 2799.  In August, examining the same issues, the Special Master ruled in Defendants' favor, denying Plaintiffs' belated attempts to introduce these new theories.

> Despite Plaintiffs' valiant attempts to characterize the recent submissions of Rosenthal, Cutler, McGuire, and Glied as something other than rebuttal reports – mostly by asserting the reports' content will not be the subject of testimony at trial, and instead serves only as "*Daubert* opposition" – the fact is that **the new material amends and even modifies the original expert reports** (Rosenthal, Cutler, McGuire) and/or provides entirely new expert opinion (Glied) for the purpose of rebutting defendants' criticisms.
>
> In another MDL with a more relaxed schedule it is conceivable I would allow this, **along with additional depositions by defendants and extensions of deadlines for briefing**.  But that is not remotely possible in this case.  The new material arrives very late in the process, is prejudicial to defendants, and was not permitted by the Court.  Accordingly, the motion to strike is granted in its entirety.

1

Ex. 1 (Aug. 13, 2019 Special Master Ruling).  The Special Master was right in August, when he established the law of this case that these late submissions are impermissible.

The Special Master acknowledged that the "Errata" contain the same calculations as the supplemental "Declarations" by Cutler and McGuire that he struck in August, but he determined that the "Errata" "were a very minor aspect of the [supplemental] declarations" which "sought to offer new opinions and amend methodology." ECF No. 2799, at 3.  In contrast, the Special Master believed, the "corrected percentages alone merely rectify mathematical errors" and "should be allowed."  *Id.*  This conclusion was based on false assertions by Plaintiffs.  The "Errata" is far more than a correction of "mathematical errors."  The Special Master also credited Plaintiffs' contention that the effect of the "Errata" was to reduce the awardable damages, and that Distributor Defendants were not prejudiced as a result.  *Id.* at 1–2.  Plaintiffs' assertions were wrong and the Special Master's allowance of these untimely expert opinions severely prejudices Distributor Defendants.  The Special Master had it right in August and on October 10 when he struck these opinions.  Those Rulings should be restored and the Ruling of October 13, which reversed course, should be overruled.

**ARGUMENT**

I.       **The Untimely Opinions Disclosed in "Errata" Fundamentally Alter the Case.**

First, the "Errata" do not merely update or correct existing calculations; they introduce new opinions that change the very substance of Cutler and McGuire's focus from a Manufacturer-centric causation and damages model, to a Distributor-centric causation and damages model.  That late change in Plaintiffs' case is deeply prejudicial to Distributor Defendants for several reasons.

    A.       **The Errata Fundamentally Changes Professor Cutler's Opinion.**

In his March 25 report, Cutler opined about the harm "resulting from defendants' misconduct" which he based, explicitly, on "misconduct estimated by Prof. Rosenthal."  *See* ECF

2

No. 2000-4 (Cutler Rpt.) ¶ 101; *see also id.* ¶ 102 (calculations were of harm "due to defendants' misconduct calculated by Prof. Rosenthal"). That misconduct was *Manufacturers'* misconduct. Professor Rosenthal's analysis *solely* concerned the effect that *Manufacturer Defendants'* alleged misleading marketing practices had on the volume of opioid medications prescribed by doctors. "The *distributors' conduct was outside the scope of [her] report*." See ECF No. 1984-4 (Rosenthal Dep.) at 38:6–13; *see also id.* at 33:2–12.[1]

As a result, while Cutler's opinion refers to "defendants" generally, his calculation of harm was tied solely to Manufacturers' alleged misconduct. As to the Distributor Defendants, Cutler was unable to express an opinion. Instead, he offered only a placeholder for an opinion that he *did not offer* during discovery: "Appendix III.J presents a discussion of how the estimates in this section *could be modified* for the purpose of estimating the share of harms due to CSA registrants' failure to take appropriate actions in monitoring excessive prescription opioid shipments." ECF No. 2000-4 (Cutler Rpt.) ¶ 101. That appendix was only "an *example* of how [his] analysis *can be* applied *if appropriate data become available* to estimate the share of prescription opioid shipments that reflect distributor misconduct." *Id.* at App'x III.J, ¶ 5.

The Special Master incorrectly believed Plaintiffs' claim that the example calculation in Appendix III.J "used as a mathematical input certain percentage numbers provided by McCann" which "McCann later changed." ECF No. 2799, at 1. Not so. Cutler's testimony is clear that he obtained the percentages from Plaintiffs' counsel, not McCann, and that he did not know enough about their origin or authenticity to vouch for them through an opinion: "Let me say one thing first about Table J1. These numbers were provided to me by counsel, so I did not calculate them." ECF No. 1976-9 (Cutler Dep.) at 78:8–10. "*I am not giving the opinion* that these numbers are

---

[1] All emphases are added unless otherwise noted.

3

correct percentages associated with distributors' misconduct." *Id.* at 78:15–17. He stressed that point again and again: "These numbers, I am not -- I am not testifying -- ***it is not my opinion that these numbers are the correct numbers.***" *Id.* at 80:15–17. Moreover, while Cutler testified to his belief that the numbers counsel gave him originated from McCann, *id.* at 80:5-8, McCann said they did not. *See* ECF No. 1981-17 (McCann Dep.) at 522:7–11 ("So you didn't provide the specific numbers that are in Table J-1 of Professor Cutler's report, correct? A. Not that I'm aware of.").

Taken together, Cutler's and McCann's sworn testimony directly contradicts Plaintiffs' assertion, and the Special Master's conclusion in reliance on Plaintiffs' assertion, that the "Errata" effect a "simple correction of a mathematical error by plaintiffs' experts." ECF No. 2799, at 2. Cutler's March 25 report did not rely on some earlier version of McCann, and Cutler testified that he could ***not*** rely upon the numbers counsel had given him, and therefore had ***no opinion*** as to what, if any, harm was caused by Distributor Defendants' conduct. For Cutler to offer such an opinion at all – whether presented with supporting text in a supplement, or in the bare-bones conclusory format of a purported "Errata" – is a fundamental expansion of his opinions mere days before trial and months after the close of discovery that prejudices Distributor Defendants.

B.  **The Errata Fundamentally Changes Professor McGuire's Opinion.**

The same is true of Professor McGuire, Plaintiffs' damages expert whose analysis sits atop Cutler's and is therefore wholly dependent upon whatever inputs Cutler uses to reach his conclusions. *See* ECF No. 2000-17 (McGuire Rpt.) at Figure IV.2 (graph illustrating the "Economic Framework" for Plaintiffs' damages as: Rosenthal → Cutler → McGuire). Relying upon Cutler's opinion ***based on Rosenthal*** (whose opinion concerned ***Manufacturers only***), McGuire disclosed damages calculations for Cuyahoga and Summit Counties in Tables IV.12 through IV.14. He testified that those tables contain the "only damages [he] calculated in this

4

engagement." ECF No. 1981-16 (McGuire Dep.) at 319:5–8.  When asked if he performed any other damages calculations that are not set forth in those three tables, he responded:  "This is my opinion.  There's no opinions I have other than what you see here."  *Id.* at 594:18–23; *see also id.* at 594:24–595:8 (same).  Moreover, McGuire specifically distinguished the damages opinions reflected in those tables from the calculation reflected in his Appendix IV.F, which he explained was only an "*illustration* of how the methodology *could be* applied to a different question, which would be the share of misconduct attributable to … the distributors."  *Id.* at 599:16–21.  Again, however, his testimony was clear:  "***That's something that I didn't deal with in my report.***"  *Id.* at 599:25–600:1.

But the "Errata" changes all of that.  It gives McGuire an opinion he professed not to have at his deposition:  that there are between $261 and $301 million worth of "Damages ***Due to Distributors' Misconduct***."  *See* Ex. 3 (McGuire Errata), App'x IV.F, Tables F.3 to F.5.  Importantly, this is the first time that Professor McGuire attributes ***any*** damages to Distributors.

The Special Master's acceptance of Plaintiffs' assertion that because those totals are lower than the $286 to $331 million reflected in McGuire's original Appendix IV.F, thereby representing "a ***reduction*** in the amount of damages that the experts claim plaintiffs have suffered," *see* ECF No. 2799, at 1–2 (emphasis in original), fails to recognize that McGuire did not previously opine that Appendix IV.F represented "damages that [he] claim[ed] plaintiffs have suffered."  He testified to the opposite:  that they were an "illustration" of something he "didn't deal with in [his] report;" and his "***only***" opinions on damages are set forth in three tables showing calculations that originate with Professor Rosenthal's analysis of Manufacturer misconduct.

Moreover, Plaintiffs' assertion also misses that in the tables containing his "only" opinions on damages the ***total*** harm asserted to have been caused by ***all*** Defendants collectively was between $194 and $223 million, some $67 to $88 million lower than the damages McGuire now

5

seeks to testify were caused by Distributor Defendants alone.  A change that profound cannot be labeled a mere "mathematical correction" that does not "change anything at all regarding [his] methodology."  ECF No. 2799, at 1–2.

* * *

The reason for these changes is clear.  In the time since Professors Cutler and McGuire submitted their original reports, Plaintiffs shifted their case dramatically to attribute damages to distributors, rather than settled and bankrupt manufacturers.  Putting aside the merits of that dramatic change, it is inconsistent with this Court's schedule and basic fairness that as Plaintiffs continually change their theory of liability to reflect whatever defendants happen to remain, expert reports may similarly jump to new conclusions through "Errata" that introduce a new basis for damages in the days before trial.

## II. The "Errata" Incurably Prejudice Distributor Defendants.

The Special Master's allowance of the new opinions disclosed via "Errata" on September 20 severely and incurably prejudices Distributor Defendants by permitting a material change in Plaintiffs' damages case shortly before the start of trial.

As just discussed, the opinions increase the alleged damages because they introduce **new damages** that were not before the subject of expert opinion, no matter what Plaintiffs say about the differences in the original and revised Appendices III.J and IV.F.  McGuire's testimony was that his "only" damages opinions were contained in Tables IV.12 through IV.14.  Those damages opinions capped Plaintiffs' damages at $223 million.  The new opinion based on his Errata caps them at $301 million.  That change on the eve of trial is undeniably prejudicial.

Moreover, regardless of the number, it is obviously prejudicial to Distributor Defendants to add a new calculation of damages that has as its starting point their own alleged conduct rather than Manufacturer Defendants' alleged misconduct.  If the jury faults the Manufacturer Defendants

6

(whether those still present, or ones who are absent such as Purdue) for their marketing conduct, it may decide that some portion of the alleged damages should not be awarded against Distributor Defendants who did not participate in that misconduct. Indeed, Cutler ruminates about that very possibility in his report.[2] That is why it is so prejudicial to Distributor Defendants that Plaintiffs waited until a month before trial to disclose an entirely different pathway based on Distributor Defendants' alleged conduct without regard for the conduct of Manufacturers.

Plaintiffs are responsible for the prejudicial timing of these disclosures. While "appropriate data" may not have been available to Cutler and McGuire when Plaintiffs' expert reports were due on March 25, such data was available on April 3 when the data upon which they now rely was disclosed. In other words, Plaintiffs could have asked the Court to allow these late amendments six months ago. Even an early April amendment would have been untimely, but Cutler and McGuire could have amended their reports shortly after April 3 and allowed Defendants an opportunity to take meaningful discovery and develop rebuttal opinions. Indeed, the Court had set a second deadline of April 15 for any expert reports relating to the DEA and Suspicious Order Monitoring ("SOM"), and amended reports from Cutler and McGuire served on that date estimating the harm caused by Distributor Defendants' alleged deficiencies in SOM compliance could hardly have been objected to as prejudicial at that time.

But Plaintiffs allowed Cutler and McGuire to sit for depositions in late April without having yet formed or disclosed an opinion of the harm caused by Distributor Defendants' alleged conduct, leading them to deny under oath that they held any such opinions. *See* ECF No. 1976-9 (Cutler Dep.) at 78:15–17 ("***I am not giving th[at] opinion***"); *id.* at 80:15–17 ("***it is not my opinion***

---

[2] *See* ECF No. 2000-4 (Cutler Rpt.) App'x III.J, at ¶ 3 (discussing the share of harm "manufacturers are appropriately held liable for" as "harm that distributors could not have avoided").

7

*that these numbers are the correct numbers*"); ECF No. 1981-17 (McGuire Dep.) at 599:25–600:1 ("*That's something that I didn't deal with in my report*").

Plaintiffs allowed Defendants' deadline to serve rebuttal reports pass in May, without having provided any disclosure that Cutler or McGuire held these opinions so that Distributors might rebut them. They further allowed Defendants' deadline for filing *Daubert* motions pass in late June, again with no disclosure at all that those motions should present arguments about why a Distributor-centric causation and damages model should not be permitted at trial. It was only on the last day of July – nearly four entire months after "appropriate data" became available, and after every relevant deadline in the case concerning experts – that Plaintiffs belatedly disclosed these experts' opinions in supplemental reports supporting Plaintiffs' opposition to Defendants' *Daubert* motions.

That disclosure was untimely and the Special Master ruled as much. Plaintiffs did not appeal that Ruling. After the Special Master excluded that first attempt at expanding Cutler's and McGuire's opinions as untimely and unfairly prejudicial given the trial schedule, Plaintiffs engaged in further unjustified delay. Rather than ask the Special Master to formalize his opinion so that they could take that Ruling (or part thereof) to this Court in a transparent manner, they sat on their hands an additional five weeks before re-disclosing the same opinions as "Errata" on September 20. *See* Ex. 1; Ex. 3 (McGuire Errata); Ex. 4 (Cutler Errata). Even if the "Errata" were merely correcting (rather than adding to) Cutler's and McGuire's opinions, there is no justification for Plaintiffs' delay in submitting the Errata. As the Special Master acknowledged, Rule 26(e)(1)(A) requires that parties supplement expert disclosures that they learn are incorrect or incomplete. But the Special Master failed to recognize that Rule 26(e)(1)(A) requires that such correction be made "*in a timely manner*." Here, Plaintiffs knew no later than the Cutler deposition on April 26 and 27 that Cutler's Appendix III.J was incorrect or incomplete. Yet Plaintiffs waited

8

for months to attempt to supplement the Cutler and McGuire reports. Plaintiffs offer no reason for the delay. There is none. Plaintiffs did not supplement "in a timely manner."

**III.     Exclusion Is Compulsory Under These Circumstances.**

Rule 37 and Sixth Circuit decisions require the Court to exclude Plaintiffs' untimely expert opinions: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), ***the party is not allowed to use that information*** or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, there can be no question that Plaintiffs' failure was not justified and not harmless. Plaintiffs have not provided any justification whatsoever for their months-long delay in supplementing the Cutler and McGuire opinions. Nor can they. By Plaintiffs' own admission, the information needed to supplement the Cutler and McGuire opinions had been available to them since April 3.

The Plaintiffs' harmful and unjustified delay in submitting those Errata requires reversal and a return to the fair notice that Defendants were provided by the Special Master's prior Rulings of August and October 10 on this same issue.

The Sixth Circuit has repeatedly enforced the Rule 37's mandatory exclusion provision in similar cases. In both *Vance v. United States*, 182 F.3d 920, 1999 WL 455435, at *5–6 (6th Cir. 1999) (Table) and *Rowe v. Case Equipment Corp.,* 105 F.3d 659, 1997 WL 2647, *3 (6th Cir. 1997) (Table), parties disclosed new or expanded expert reports shortly before trial. In *Vance*, that disclosure, like the one here, was a supplemental report offering opinions that an earlier-disclosed expert had not included originally. In both cases, the Sixth Circuit held that Rule 37(c) mandated exclusion of the testimony because the late disclosure shortly before trial unfairly deprived the opposing party of the opportunity to conduct discovery. *See also Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport*, 596 F.3d 357, 369 (6th Cir. 2010) (exclusion of $1 million lost profits

9

claim was mandatory where party indicated in its initial disclosures it was "considering" such a claim but unjustifiably waited six months to disclose the details of the claim during a deposition); *id.* at 370 (that party "waited nearly two months" after obstacles to disclosing the claim had been cleared show that its "meager excuses … did not amount to substantial justification").

Plaintiffs' disclosure on the eve of trial similarly prejudices the Distributor Defendants. As the Special Master directly concluded two months ago, the new expert opinions "amend[] and even modif[y] the original expert reports." Ex. 1.  Given the schedule of this case "it is not remotely possible" to allow such "prejudicial" amendments at a "very late" date.  *Id.*  Everything that the Special Master said in August remains true, only the prejudice is more severe because (a) contrary to their prior representations, Plaintiffs are proposing this ***as trial testimony***, and (b) the very idea of "additional depositions" and "extensions of deadlines" would necessitate a postponement of trial that the Court has made plain it is unwilling to offer.  The only remedy is the one Rule 37(c) makes mandatory:  exclusion.

## CONCLUSION

Under Rule 37, Plaintiffs' failure to make timely expert disclosures as required by Rule 26 mandates exclusion of the undisclosed material unless Plaintiffs can show that the failure was either harmless or substantially justified.  For all of the reasons explained above, Plaintiffs' delay here was neither.  For all of these reasons, Distributors object to the Special Master's October 13 decision allowing the Cutler and McGuire "errata" and ask that it be overturned.

10

Dated: October 15, 2019 Respectfully Submitted,

| | |
|---|---|
| */s/ Robert A. Nicholas* | */s/ Eni Mainigi* |
| Robert A. Nicholas | Enu Mainigi |
| Shannon E. McClure | F. Lane Heard III |
| REED SMITH LLP | Ashley W. Hardin |
| Three Logan Square | WILLIAMS & CONNOLLY LLP |
| 1717 Arch Street, Suite 3100 | 725 Twelfth Street NW |
| Philadelphia, PA 19103 | Washington, DC 20005 |
| Telephone: (215) 851-8100 | Tel: (202) 434-5000 |
| Fax: (215) 851-1420 | Fax: (202) 434-5029 |
| rnicholas@reedsmith.com | emainigi@wc.com |
| smcclure@reedsmith.com | lheard @wc.com |
| | ahardin@wc.com |
| *Counsel for Defendant AmerisourceBergen Drug Corporation* | *Counsel for Defendant Cardinal Health, Inc.* |
| */s/ John P. McDonald* | */s/ Geoffrey Hobart* |
| John P. McDonald | Geoffrey E. Hobart |
| Texas Bar No. 13549090 | Mark Lynch |
| jpmcdonald@lockelord.com | COVINGTON & BURLING LLP |
| C. Scott Jones | One CityCenter |
| Texas Bar No. 24012922 | 850 Tenth Street NW |
| sjones@lockelord.com | Washington, DC 20001 |
| Lauren M. Fincher | Tel: (202) 662-5281 |
| Texas Bar No. 24069718 | ghobart@cov.com |
| lfincher@lockelord.com | mlynch@cov.com |
| Brandan J. Montminy | |
| Texas Bar No. 24088080 | *Counsel for McKesson Corporation* |
| brandan.montminy@lockelord.com | |
| LOCKE LORD LLP | |
| 2200 Ross Avenue | |
| Suite 2800 | |
| Dallas, TX 75201 | |
| T: 214-740-8445 | |
| F: 214-756-8110 | |
| | |
| *Attorneys for Henry Schein, Inc. and Henry Schein Medical Systems, Inc.* | |

11

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

## CERTIFICATE OF SERVICE

      I, Ashley W. Hardin, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Ashley W. Hardin*
Ashley W. Hardin