# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| | : | |
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | : | MDL 2804 |
| | : | |
| *This document relates to:* | : | Case No. 17-md-2804 |
| | : | |
| *Track One Cases* | : | Hon. Dan Aaron Polster |
| | : | |

## MOTION OF NON-PARTY PAUL ANDREW PYFER OBJECTING TO PLAINTIFFS' LISTING OF PYFER AS A LIVE STREAM WITNESS

### I.     INTRODUCTION

Paul Andrew Pyfer ("Mr. Pyfer") is not a party to this case.  Nor is he the corporate designee of *any* Defendant.  He is separately represented by his own counsel, and lives *hundreds* of miles beyond the Rule 45 subpoena power of this Court.  Mindful of Rule 45's explicit geographical restriction, and the fact that Rule 45 would therefore never allow Plaintiffs to obtain Mr. Pyfer's testimony *in person* at trial, Plaintiffs have sought to invoke Rule 43 to complete an end-run around Rule 45, by attempting to obtain his testimony remotely.  Tellingly, Plaintiffs' counsel revealed their motive to do just this, openly and on the record, at the close of 7 hours of Mr. Pyfer's videotaped deposition testimony, acknowledging that ***"We, the plaintiffs, don't have the ability to compel you to come to Ohio by subpoena."***[1]  But Rule 43 does not expand upon Rule 45's explicit geographic restriction.  And Plaintiffs can offer neither "good cause," nor "compelling circumstances" – as Rule 43 requires for remote testimony to replace in person testimony at trial – to explain why Mr. Pyfer's 7 hours of ***video-recorded*** testimony cannot adequately substitute for ***video-streamed*** testimony at trial.

---

[1] Statement of Plaintiffs' Counsel Jonathan P. Kieffer, Esq., Deposition of Paul Andrew Pyfer (Feb. 20, 2019) at 367:4-6, attached hereto as Exhibit B.

Because this Court is without power to issue a subpoena for Mr. Pyfer's trial testimony more than 100 miles from the Northern District of Ohio, because no corporate Defendant in this case exercises control over Mr. Pyfer, and because even remote live testimony will enormously burden and inconvenience Mr. Pyfer (despite the convenient alternative available to Plaintiffs in 7 hours of video recorded testimony), this Court should grant Mr. Pyfer's Motion to remove him from Plaintiffs' list of live stream witnesses.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Mr. Pyfer resides in Wayne, Pennsylvania, which is located approximately 400 miles from the courthouse where the trial will be held.  *See* Declaration of Paul Andrew Pyfer ("Pyfer Decl."), attached hereto as Exhibit C, ¶ 3.  While Mr. Pyfer was employed by Cephalon, a predecessor entity of Teva, from approximately November 2000 through February 2010, he entered into a separation agreement with Cephalon in March 2010 that was effective as of February 28, 2010.  *Id.* ¶¶ 4-5.  Importantly, Mr. Pyfer has never been affiliated with any of the Defendants in this action aside from his employment with Cephalon nearly a decade ago.  *Id.* ¶ 6. Mr. Pyfer is not represented by counsel for any of the Defendants in this action.  *Id.* ¶ 7.

Mr. Pyfer is currently the minority owner of a 250-person full service advertising agency with offices in Pennsylvania, New York, New Jersey, and Arizona.  *Id.* ¶ 8.  In his capacity as Partner at his company, Mr. Pyfer has oversight responsibility for both the Conshohocken, Pennsylvania and Phoenix, Arizona offices, and manages the day-to-day operations of the company.  *Id.* ¶ 9.

Mr. Pyfer's responsibilities include both corporate marketing and mergers and acquisitions responsibilities.  *Id.* ¶ 10.  Specifically, his corporate marketing responsibilities

2

include all corporate promotion and thought leadership activities, as well as the rollout of his company's new corporate campaign in the fourth quarter of this year.  *Id.* ¶ 11.

His mergers and acquisitions responsibilities include managing the process of his company's acquisition of a LaJolla, California based company, for which Mr. Pyfer is presently overseeing all non-financial aspects of the acquisition and eventual integration.  *Id.* ¶ 12.  This acquisition should be finalized within the next month, which will require significant advance preparation of:  website, press release, updated biographies, creative support build-out plan in Phoenix, full integration plan for human resource elements (*e.g.*, payroll, 401K, healthcare and other benefits). *Id.* ¶ 13.  This is a highly time-intensive, detail-oriented activity that will require my attention over the next 6 weeks.  *Id.*

Over the next six weeks (from October 14, 2019 through December 1, 2019), Mr. Pyfer's company has four potentially destiny-changing "pitch" opportunities in locations throughout the United States, which Mr. Pyfer must personally oversee and lead.  *Id.* ¶ 14.  The pitch opportunities are the lifeblood of Mr. Pyfer's company and represent potential fee income of $10 million annually.  *Id.* ¶ 15.  As a fee-for-service agency that is currently overstaffed in two of four offices by as many as 22 employees (due to normal client attrition and other business dynamics), winning or losing the pitches will mean the difference between jobs kept or lost for many of Mr. Pyfer's employees. *Id.* ¶ 16.  Mr. Pyfer's team relies on him to lead and direct these efforts, which require a significant dedication of time, effort, and focus.  *Id.* ¶ 18.  In addition, Mr. Pyfer will be running a two-day leadership meeting for his company on October 22 and October 23. *Id.* ¶ 19.  Thirty people will attend; travel is already booked and paid for.  *Id.* ¶ 20.

Mr. Pyfer takes his responsibilities as a small business owner very seriously, and to heart.  *Id.* ¶ 21.  He treats his employees like family, and they rely on him to "take care" of them – *i.e.*,

keeping them employed and paid fairly.  *Id.* ¶ 22.  At this critical time for his business Mr. Pyfer

cannot afford to devote less than 100% of his time to the efforts of his team.  *Id.* ¶ 23.  Time

spent preparing for testimony in this trial, and testifying as a witness, will have an extremely

detrimental impact on Mr. Pyfer's business, potentially cripple his organization, and reduce the

chances of winning much needed business opportunities through multiple pitch efforts.  *Id.* ¶ 24.

On February 20, 2019, Plaintiffs deposed Mr. Pyfer for an entire day – from 9:35 a.m. to

6:14 p.m. – by two separate lawyers for Plaintiffs.  The end product is 7 hours of Mr. Pyfer's

testimony, recorded by both stenographic and video methods, and a transcript over 450 pages in

length with over three dozen exhibits.

In June 2019, Plaintiffs submitted a motion to Special Master Cohen in which they

requested the following very specifically worded relief:

> Plaintiffs respectfully request that this Court allow live trial
> testimony via contemporaneous transmission from locations
> outside of Ohio. ***Plaintiffs seek to employ this procedure for
> corporate designees from each Defendant that does not
> voluntarily produce their corporate designees in Cleveland, Ohio
> or that cannot otherwise be compelled to produce corporate
> designees at trial in Ohio.***

*See* Plaintiffs' Motion to Allow Live Remote Testimony at Trial ("Plaintiffs' Remote Testimony

Motion"), attached hereto as Exhibit A, at Section I (emphases added).  In that same motion,

Plaintiffs represented that the "corporate representative witnesses" from whom they would seek

remote live testimony were "all ***under the control of Defendants***."  *See id.* at Section III.A

(emphasis added).  On the basis of Plaintiffs' very specifically worded request, in September

2019, this Court granted Plaintiffs' above-referenced motion, allowing them "to procure one

live-stream appearance of a distant witness ***per defendant***, via remote video connection."  *See*

September 12, 2019 Order Regarding Trial Matters (Dkt. No. 2594) at 3 (emphasis added).

4

But Mr. Pyfer is not the "corporate designee" Plaintiffs requested, nor the witness "**per defendant**" the Court permitted.  He is, in fact, the corporate designee of no Defendant in this case, and is therefore not "under the control" of any Defendant.  Indeed, Mr. Pyfer is not currently employed by any of the Defendants, and Mr. Pyfer's sole connection to this case is that he is a former employee of Defendant Cephalon, Inc. ("Cephalon"), which was acquired by Defendant Teva Pharmaceutical Industries ("Teva") in October 2011, more than a year after Mr. Pyfer's February 2010 departure from Cephalon.  But for his work for Cephalon from November 2001 through February 2010, Mr. Pyfer has no connection to any of the Defendants.  His putative designation by Plaintiffs is improper.

On September 25, 2019, Plaintiffs designated Mr. Pyfer and several other individuals to testify remotely at trial via a live stream video feed.  *See* Dkt. No. 2655.  On October 5, 2019, following the Special Master's Order to reduce witness lists, Plaintiffs served an amended live stream witness list without listing Mr. Pyfer.  *See* Dkt. No. 2720.  Then, on October 9, 2019, Plaintiffs reversed course and served a document entitled "Plaintiffs' Second Amended Designated Live Stream Witnesses," in which they re-listed Mr. Pyfer to testify remotely at trial. *See* Dkt. No. 2753.  Plaintiffs' indecisive ping-ponging bespeaks the lack of any proper basis to hail Mr. Pyfer into a court – whether in person or remotely – hundreds of miles from his home, at great inconvenience and burden to him, and without ever having been designated as any Defendant's corporate designee.  This, Rule 45 plainly prohibits.

Mr. Pyfer has not been served with a subpoena to testify at trial, and as acknowledged candidly by Plaintiffs' counsel (*see supra* note 1 and accompanying text), Plaintiffs cannot issue such a subpoena to Mr. Pyfer without violating Rule 45.

III.     **ARGUMENT**

A.     **Applicable Law**

Federal Rule of Civil Procedure 45 establishes that the "place of compliance" with a trial subpoena – *i.e.*, the locus of trial testimony – can "***only*** [be] . . . (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person," or – if the person "is a party or a party's officer," or the person "is commanded to attend a trial and would not incur substantial expense" – "(B) within the state where the person resides, is employed, or regularly transacts business in person . . . ."  Fed. R. Civ. P. 45(c) (emphasis added).

While quashal is permissive in some instances, *see* Fed. R. Civ. P. 45(d)(3)(B), quashal is ***mandated*** when a subpoena does not comply with Rule 45's strict geographical limits, or unduly burdens the subpoena recipient.  *See* Fed. R. Civ. P. 45(d)(3)(A)(ii), (iv); *see also Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 234 (1964) (explaining that Rule 45's geographical limitation "is designed not only to protect witnesses from the harassment of long, tiresome trips but also, in line with our national policy, to minimize the costs of litigation"), *disapproved of on other grounds by Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437 (1987); *Johnson v. Big Lots Stores, Inc.*, 251 F.R.D. 213, 222 (E.D. La. 2008) (explaining that while the "realities of modern life and multi-district litigation . . . may present compelling reasons for nationwide subpoena service, . . . until the Rules provide for such a scheme, the Court is bound to apply the Rules as they are written") (internal citation and quotations omitted).

Rule 43's preference is for live testimony in open court.  *See* Fed. R. Civ. P. 43(a).  The alternative Rule 43 contemplates – *i.e.*, "testimony in open court by contemporaneous transmission from a different location" – is an exception to the general rule, and is permitted only "[f]or ***good cause in compelling circumstances***."  *Id.* (emphasis added).  This is a

6

"stringent requirement." *Valerino v. Holder*, 2014 WL 4198501, at \*2 (D.V.I. Aug. 25, 2014).

Five factors determine whether this high bar can be met:

> (1) the control exerted over the witness **by the defendant**; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that **the defendant is seeking** by not producing the witness voluntarily; (4) the **lack of any true prejudice to the defendant**; and (5) the flexibility needed to manage a complex multi-district litigation.

*In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 643 (E.D. La. 2006) (citation omitted) (emphases added). As reflected in the emphasized sections above, the standard contemplates a subpoenaed person over whom Defendants exercise some control, as in the typical case of a Defendant's employee or corporate designee.

Finally, while this Court previously rejected the argument that Rule 45 bars the remote testimony of Defendants' **own** witnesses, *see* Dkt. No. 2594, that ruling does not control the separate arguments Mr. Pyfer raises on his own behalf as a non-party in this litigation over whom Defendants exercise no control. Thus, for the reasons set forth below, any subpoena to Mr. Pyfer – whether for in person testimony, as Rule 43 ordinarily requires, or for remote testimony as permitted under exceptional circumstances not present here – would be improper.

> **B.  Plaintiffs Cannot Demonstrate That Good Cause And Compelling Circumstances Exist To Compel Mr. Pyfer To Testify Remotely At Trial**

Three of the five *Vioxx* factors (lack of Defendants' control over the witness; lack of any tactical advantage Defendants are seeking, coupled with real prejudice to the witness; and lack of prejudice to Defendants) weigh heavily against permitting Plaintiffs to compel the remote trial testimony of Mr. Pyfer, a non-party over whom Defendants exercise no control. The remaining two factors – which deal with the complexity of this litigation – are not dispositive given Defendants' lack of control over Mr. Pyfer, the enormous inconvenience and burden to Mr.

Pyfer, and the availability of 7 hours of Mr. Pyfer's videotaped deposition testimony as a substitute for trial testimony.

>        **1.      Defendants' Lack Of Control Over Mr. Pyfer Distinguishes Mr. Pyfer From The Corporate Designees Plaintiffs Have Listed As Live Stream Witnesses**

Plaintiffs' Remote Testimony Motion stated that "the corporate representative witnesses" whose remote testimony is sought "are all under the control of the Defendants" and that "there is no question that Defendants control their current employees." *See* Plaintiffs' Remote Testimony Motion at Section III.A.  That is not true of Mr. Pyfer, who is not employed by or under the control of any of the Defendants.  Mr. Pyfer's only connection to this case is through his former employment by Cephalon, which ended nearly a decade ago (in February 2010), prior to Teva's acquisition of Cephalon (in October 2011).  Thus, whatever force Plaintiffs' argument may have had in the case of corporate witnesses, the argument here is misplaced, as is their reliance upon case law permitting the remote testimony of witnesses over whom Defendants exercise control. *See, e.g.*, *In re San Juan DuPont Plaza Hotel Fire Litigation*, 129 F.R.D. 424, 425 (D.P.R. 1990) (witnesses employed by, or under defendants' control); *In re Vioxx*, 439 F. Supp. 2d at 642 (Rule 45 subpoena to corporate officer permitted).

In any event, because Defendants exercise no control over Mr. Pyfer, Plaintiffs cannot effectively bring Mr. Pyfer into court.  This is because, "as a practical matter," even if this Court were to "find[] circumstances exist justifying contemporaneous transmission of witness testimony from a location outside of the courtroom, a party must either (a) obtain voluntary agreement of the witness to attend trial by video conference or (b) issue a subpoena to compel the witness' appearance and testimony from that location." *In re Actos (Pioglitazone) Prod. Liab. Litig.*, 2014 WL 107153, at *2 (W.D. La. Jan. 8, 2014).  Mr. Pyfer, for good and sufficient

reason, will not voluntarily appear to provide more than the 7 hours of videotaped deposition testimony he has already provided, nor would a subpoena to compel attendance hundreds of miles from this Court be effective or compatible with Rule 45.

> **2.    Mr. Pyfer's Independent Motives For Not Wishing To Testify – Namely, The Immense Burden And Inconvenience It Will Create For Him, His Company, And Employees – Is Not A Tactical Reason Of Any Particular Defendant**

For the reasons set forth above, the "real inconvenience to the witness" is a factor that applies strongly in favor of quashing any subpoena for Mr. Pyfer's trial testimony. *See In re Vioxx*, 439 F. Supp. 2d at 643; *cf. Brown v. Arkoma Tanks, LLC*, No. 2:16-CV-7, 2016 WL 4083060, at *5 (S.D. Tex. Apr. 8, 2016) (explaining that assessing inconvenience in another context requires a recognition that "[w]itnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community") (citation omitted); *Emguschowa v. New York Steak & Seafood*, No. 96-6252, 1997 WL 27103, at *2 (E.D. Pa. Jan. 22, 1997) (explaining that, in transfer context, courts may consider the inconvenience of lay witnesses who are called to testify but are beyond a particular court's subpoena power).

Furthermore, Mr. Pyfer is not controlled by any Defendant. There is an independent basis for Mr. Pyfer's motion, which is filed by his own counsel. In fact, if any tactical considerations are at play they appear to be those of the Plaintiffs. After all, while the Plaintiffs argue that videotaped deposition testimony – even 7 hours' worth in Mr. Pyfer's case – cannot adequately substitute for live testimony,[2] out of the other sides of their mouths Plaintiffs are apparently content to rely upon deposition testimony for several other witnesses.

---

[2] Plaintiffs' trope relies upon a rickety foundation of statements articulated in cases nearly a century ago. *See In re Vioxx*, 439 F. Supp. 2d at 644 (quoting *Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939) (Learned Hand, J.) and *Arnstein v. Porter*, 154 F.2d 464, 470 (2d Cir. 1946)). In fact, when one takes the time to blow the dust off those relics, one is reminded

Thus, far from any tactical advantage that Mr. Pyfer or Defendants might seek, it is apparently Plaintiffs who seek a tactical advantage from Mr. Pyfer's remote testimony that they are willing to forego in the case of several other witnesses for whom deposition testimony, inexplicably, seems to suffice.  Against the backdrop of Plaintiffs' counsel's on-the-record acknowledgment that Plaintiffs are powerless to subpoena Mr. Pyfer to testify in person, it is hard not to view Plaintiffs' inconsistent position with respect to other deposed witnesses (whose live testimony is not sought) with a healthy dose of skepticism.

### 3.    Mr. Pyfer Will Be Greatly Prejudiced By A Subpoena To Testify

With trial scheduled to begin in approximately one week, Plaintiffs' eleventh-hour decision to re-list Mr. Pyfer as a live remote witness has compelled Mr. Pyfer – once again – to table pressing business and personal commitments, jeopardizing business revenues and the jobs of his co-workers.  Thus, while Plaintiffs would suffer little or no prejudice without Mr. Pyfer's live testimony (given the availability of Mr. Pyfer's videotaped deposition testimony), the burden and inconvenience Mr. Pyfer will suffer merely from having to prepare for additional testimony will be acute and irreparable:  the likely loss of substantial revenue in the absence of Mr. Pyfer's full and undivided attention to "destiny-changing" pitch opportunities in the coming weeks, and the consequent loss of as many as 22 jobs; the compromised rollout of a new corporate marketing campaign; and the lack of much needed focus for the pending acquisition and integration of another business with all the complexities this entails.

---

that live testimony in the early part of the 20th century had no substitute, unlike the availability of high quality video-recorded deposition testimony today, which does not differ materially from live-streamed video testimony.  *See* Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment ("Ordinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena . . . .").

        **4.**       **The Complexity Of This Litigation Does Not – Without More – Give Plaintiffs Carte Blanche To Dispense With The Requirements Of Rules 45 And 43**

That this case is complex is not disputed.  But that is just part – not the end – of the analysis.  *Cf. Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (explaining in another context where complexity of action was part of consideration for whether to grant motion that "[c]omplexity is only one factor for a court to consider . . ."); *Payton v. United States*, 636 F.2d 132, 145 (5th Cir. 1981) ("[C]omplexity alone is not dispositive . . . ."), *on reh'g*, 679 F.2d 475 (5th Cir. 1982).  Indeed, this case is no less complex for those witnesses whom plaintiffs have decided – unlike Mr. Pyfer – do not require remote testimony, and upon whose videotaped deposition testimony plaintiffs are happy to rely and play at trial.  In light of this inconsistent position, the other factors addressed above take on greater importance than the complexity of this case: the fact that no Defendant controls Mr. Pyfer, that Mr. Pyfer is therefore not being used as a pawn for the tactical advantage of a controlling Defendant, the compelling independent basis for Mr. Pyfer's motion to quash, the great prejudice to Mr. Pyfer, and the availability of lengthy *video-recorded* deposition material that easily substitutes for *video-streamed* testimony.

## IV.    CONCLUSION

For all of the forgoing reasons, Mr. Pyfer respectfully requests that this Court grant his motion to remove Mr. Pyfer from Plaintiffs' list of live stream witnesses, and declare that Plaintiffs may not call Mr. Pyfer to testify remotely at trial.  A proposed Order is attached hereto for the Court's consideration and convenience.

Respectfully submitted,

**SAUL EWING ARNSTEIN & LEHR LLP**

s/ Albert F. Moran
Christopher R. Hall, Esq.
Justin C. Danilewitz, Esq.
Albert F. Moran, Esq.
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Telephone:  (215) 972-8561
Facsimile:  (215) 972-4172
Chris.Hall@saul.com
Justin.Danilewitz@saul.com
Albert.Moran@saul.com

Dated:  October 15, 2019          *Attorneys for Nonparty Paul Andrew Pyfer*[3]

---

[3] Counsel for Mr. Pyfer have not moved for admission *pro hac vice* in this Court, in reliance upon the Court's Scheduling Order of December 14, 2017.  *See* Dkt. No. 4 at 1 ("The Court noted that any lawyers in the MDL who have Electronic Case Filing accounts in federal district courts across the country need not file Pro Hac Vice Motions in this district court.").

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Motion of Non-Party Paul Andrew Pyfer Objecting to Plaintiffs' Listing of Pyfer as a Live Stream Witness* and accompanying Proposed Order and Exhibits was served on all counsel of record via the Court's electronic filing system.

s/ Albert F. Moran
Albert F. Moran, Esq.

Dated:  October 15, 2019