UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

--------------------------------X
IN RE: NATIONAL PRESCRIPTION    :  *Case No. 1:17-md-2804*
OPIATE LITIGATION               :  *Cleveland, Ohio*
                                :
                                :
FINAL PRETRIAL PROCEEDINGS      :  *Tuesday, October 15, 2019*
                                :  *11:08 a.m.*
                                :
                                :
                                :
                                :
--------------------------------X


TRANSCRIPT OF FINAL PRETRIAL PROCEEDINGS

BEFORE SPECIAL MASTER DAVID R. COHEN

Court Reporter:            Donnalee Cotone, RMR, CRR, CRC
                           United States District Court
                           801 West Superior Avenue
                           Court Reporters 7-189
                           Cleveland, Ohio 44113
                           216-357-7078
                           donnalee_cotone@ohnd.uscourts.gov

Proceedings recorded by mechanical stenography, transcript

produced by computer-aided transcription.

1     APPEARANCES:

2

3         On behalf of Plaintiffs:

4

5                 **PETER H. WEINBERGER, ESQ.**
                  Spangenberg, Shibley & Liber
                  1001 Lakeside Avenue, Suite 1700
6                 1900 East Ninth Street
                  Cleveland, Ohio 44114
7                 216-696-3232
                  pweinberger@spanglaw.com

8

9                 **W. MARK LANIER, ESQ.**
                  6810 FM 1960 West
10                Houston, Texas 77069
                  813-659-5200
11                wml@lanierlawfirm.com

12


13                **HUNTER J. SHKOLNIK, ESQ.**
                  400 Broadhollow Road, Suite 305
14                Melville, New York 11747
                  212-397-1000
15                hunter@napolilaw.com

16


17                **JAYNE CONROY, ESQ.**
                  Simmons Hanly Conroy LLC
18                112 Madison Avenue
                  New York, New York 10016
19                212-784-6400
                  jconroy@simmonsfirm.com

20

21

22

23

24

25

Case: 1:17-md-02804-DAP  Doc #: 2827  Filed:  10/15/19  3 of 41.  PageID #: 426569

3

```
 1    APPEARANCES (Continued):

 2

 3         On behalf of Plaintiffs:

 4              LINDA SINGER, ESQ.
                Motley Rice LLC
 5              28 Bridgeside Boulevard
                Mount Pleasant, South Carolina 29465
 6              843-216-9140
                lsinger@motleyrice.com
 7

 8         On behalf of Plaintiffs:

 9              DAVID I. ACKERMAN, ESQ.
                Motley Rice LLC
10              401 Ninth Street NW
                Suite 1001
11              Washington, DC  20004
                202-386-9626
12              dackerman@motleyrice.com

13

           On behalf of Defendant Cardinal Health, Inc.:
14
                ENU MAINIGI, ESQ.
15              STEVEN PYSER, ESQ.
                Williams & Connolly LLP
16              725 Twelfth Street, NW
                Washington, DC 20005
17              202-434-5000
                emainigi@wc.com
18              spyser@wc.com

19
           On behalf of Defendant AmerisourceBergen Drug
20         Corporation:

21              ROBERT A. NICHOLAS, ESQ.
                Reed Smith, LLP
22              Three Logan Square, Suite 3100
                1717 Arch Street
23              Philadelphia, Pennsylvania  19103
                251-851-8100
24              rnicholas@reedsmith.com

25
```

```
 1     APPEARANCES (Continued):

 2

 3          On behalf of Defendants Walgreen Co. and Walgreen
            Eastern Co.:
 4
                    KASPAR J. STOFFELMAYR, ESQ.
 5                  KATHERINE M. SWIFT, ESQ.
                    Bartlit Beck LLP
 6                  54 West Hubbard Street, Suite 300
                    Chicago, Illinois  60654
 7                  312-494-4400
                    kaspar.stoffelmayr@bartlit-beck.com
 8                  kate.swift@bartlitbeck.com

 9
            On behalf of McKesson Corporation:
10
                    PAUL SCHMIDT, ESQ.
11                  Covington & Burling LLP
                    The New York Times Building
12                  620 Eighth Avenue
                    New York, NY  10018-1405
13                  212-841-1171
                    pschmidt@cov.com
14

15

16

17

18

19

20

21

22

23

24

25
```

      1        MORNING SESSION, TUESDAY, OCTOBER 15, 2019

      2          (Proceedings commenced at 11:08 a.m.)

      3                  - - -

      4        SPECIAL MASTER COHEN:  All right.  I've been

11:08:50  5  practicing my curve ball, and that's what I'm going to be

      6  throwing today, a couple of those.

      7      I have some questions about where we are and where

      8  we're going to go to, and how we're going to get through

      9  this trial together.

11:09:07 10      Some of the issues I'm going to raise I haven't talked

   11  about with the Judge yet, and what we decide and what we

   12  chat about will probably be to some extent repeated with the

   13  Judge, but I want to see which way the wind is blowing on a

   14  few things.

11:09:23 15      First curve ball.  Where are we in Track Two

   16  discovery?

   17          MR. FARRELL:  We have not yet begun.  We are

   18  waiting for you to wave the green flag.  Paul Farrell.

   19          SPECIAL MASTER COHEN:  I know that the parties

11:09:43 20  have submitted proposed case management orders, that there

   21  has been submissions regarding, for example, temporal scope

   22  and geographic scope, and other things.  But I'm wondering

   23  if anything has to be entered before those things can begin;

   24  for example, written discovery.

11:10:16 25      And let me tell you why I'm beginning with a curve

1   ball.  This has been on my plate for a long time.  I keep

2   getting distracted by this trial, but it can't be the case,

3   as the Judge has even pointed out to me, that we don't

4   address this until the end of Track Two, and I keep getting

11:10:37  5   distracted by everything that's going on with Track One, and

6   so I'm starting with that, because we do need to get

7   something going.

8        And I can put on something quick or I could just kind

9   of release the Kraken, but we do need to do more than

11:10:53  10  nothing, which is what we have been doing.

11        Would you please go to the podium?

12             MR. FARRELL:  Paul Farrell.

13        So we've had discussions with defendants about the

14   best way to proceed using the knowledge that we have from

11:11:07  15  CT1.  There's going to be a disagreement about whether --

16   the geographic scope and the temporal scope, but it seems to

17   me that that's a limitation on the underlying discovery

18   requests.

19        I would suggest that we're probably in a place that we

11:11:24  20  can exchange written discovery, and then pretty soon

21   thereafter we're going to need guidance from you about how

22   wide and how long ago that discovery goes back.  But we're

23   prepared to begin written discovery.

24             SPECIAL MASTER COHEN:  Anybody from

11:11:42  25  defendants?

1          MR. LYNCH:  Mark Lynch from McKesson.

2          Special Master Cohen, the people who are mostly

3     involved in Track Two issues are not here today, so I'm

4     going to try to fill in for them.

11:12:00 5          SPECIAL MASTER COHEN:  Thank you.

6          MR. LYNCH:  I think our principal point is the

7     parties that are in the trial don't think we should be

8     messing around with Track Two discovery until the trial is

9     over.

11:12:11 10         There are a good many defendants in the Track Two West

11    Virginia complaint or Huntington and Cobble County complaint

12    who were not involved in Track One.  They could do a lot of

13    productive work with them while this trial is going on if

14    Mr. Farrell has spare time.

11:12:28 15         So we would recommend if you want to get something

16    going before the end of this trial there's plenty to do with

17    respect to parties who weren't in Track One and are not in

18    this trial.

19          SPECIAL MASTER COHEN:  What do you think about

11:12:42 20    different deadlines for Track One defendants?

21          In other words, plaintiffs served their discovery,

22    defendants served their discovery.  Defendants, because they

23    are occupied with Track One, those who are in Track One,

24    would have a different deadline for response, but at least

11:12:56 25    they begin to see what it is that's been requested.

1       I'd rather give you a heads-up.

2               MR. LYNCH:  Yeah, I think that's workable.

3       Our main point is, give us a break until this trial is over

4       for those parties that are in this trial.

11:13:12  5               SPECIAL MASTER COHEN:  All right.  Any other

6       defense response?

7       I'm hereby authorizing the plaintiffs to submit

8       written discovery that at this time is going to be limited

9       in scope to the same as those limitations were in Track One

11:13:29 10     with regard to width and depth, and that is to say, time and

11      geography.

12      I can tell you that I have given more than zero

13      thought to those questions, and I think that plaintiffs'

14      arguments regarding geography and time should be more broad

11:13:49 15     may be well taken to some defendants and not others, given

16      the arguments that I've heard so far, but that's a very

17      initial thought that I haven't completed.

18      In any event, I do think it's appropriate at this time

19      for the plaintiffs and defendants both to serve written

11:14:04 20     discovery, so you're free to go.

21      Okay?

22              MR. LYNCH:  Special Master, what about the

23      different --

24              THE REPORTER:  I can't hear you.  I'm sorry.

11:14:20 25             MR. LYNCH:  What about the differential

1    deadline point that you suggested?

2              SPECIAL MASTER COHEN:  Are you asking about

3    deadlines for the service of discovery or the responding?

4              MR. LYNCH:  Responding.

11:14:31  5              SPECIAL MASTER COHEN:  So -- well, normal

6    response times are 30 days, am I right, to written

7    discovery?

8              MR. LYNCH:  Right.  Although, in a case like

9    this, they're almost always extended.

11:14:54 10              SPECIAL MASTER COHEN:  Right.

11       So let's say that it's 60 days for defendants who are

12   not in trial in Track One and 120 days for defendants who

13   are in trial on Track One.

14              MR. LYNCH:  That sounds good to me.

11:15:15 15              SPECIAL MASTER COHEN:  Thank you.

16              MR. LYNCH:  Thank you.

17              SPECIAL MASTER COHEN:  And that will be from

18   today.

19       Okay.  Next, I'll figure we'll try and talk

11:15:25 20   settlement?  Do you guys want to --

21              MR. PYSER:  Special Master, the deadline from

22   today or deadline from the day --

23              COURT REPORTER:  Your name?

24              MR. PYSER:  Steven Pyser for Cardinal Health.

11:15:31 25   The deadline from --

1          SPECIAL MASTER COHEN:  I'm sorry, the deadline

2   from receipt.

3          MR. PYSER:  Thank you.

4          SPECIAL MASTER COHEN:  Okay.  I need to pull

5   up a document.

6       So there is a dispute that has to do with -- well, let

7   me back it up this way.

8       The original discovery deadline in this case was

9   January 25th.  And as you all know, despite valiant efforts

10  and huge amounts of written discovery and depositions, and

11  so on, nobody finished on the 25th, and so there was a

12  period of time thereafter that I allowed additional

13  discovery to be taken, additional supplementation of written

14  discovery, and so on.

15      My recollection, and I'm asking you to remind me, is

16  that there was a deadline for supplementation of written

17  discovery, I think, of March 4th.

18      Does that ring a bell and sound right?

19      I see some heads nodding, nobody disagrees.

20          MR. ACKERMAN:  Special Master Cohen -- David

21  Ackerman -- that's correct.

22          SPECIAL MASTER COHEN:  Okay.  And that was

23  written discovery.  I don't remember when we kind of

24  finished, and a lot of it was pursuant to agreement by the

25  parties, when we finished with depositions, expert or fact.

1          MR. ACKERMAN:  I don't know that there was a

2     set deadline --

3               SPECIAL MASTER COHEN:  David Ackerman.

4               MR. ACKERMAN:  Yeah.  David Ackerman.

11:17:11  5     I don't recall a set deadline that depositions had to

6     be finished by.  What I do recall are two separate

7     deadlines.  First there was a January 1st deadline, where

8     you stated that you would not allow any additional requests

9     for party depositions.  And after January 25th, there

11:17:31  10    were -- there were depositions that went forward after that

11    date based on agreement of the parties due to things like a

12    witness unavailability prior to January 25th, or counsel

13    unavailability.

14               SPECIAL MASTER COHEN:  Let me put it this way:

11:17:48  15    Were depositions done by March 4th?  Were there depositions

16    that occurred after March 4th?

17          I'm seeing Kate say yes.

18               MS. SWIFT:  Kate Swift for Walgreens.  There

19    were a number of depositions that occurred after March 4th.

11:18:04  20               SPECIAL MASTER COHEN:  Roughly when did they

21    end?

22               MS. SWIFT:  July.

23               SPECIAL MASTER COHEN:  And were those experts

24    and fact?

11:18:11  25               MS. SWIFT:  There were at least fact

1   depositions.  I don't recall whether -- there was a fact

2   deposition that was two days, July 11th and 12th.  I don't

3   recall any expert depositions that late, but someone can

4   correct me.

11:18:25   5        MR. ACKERMAN:  David Ackerman again.

6        Special Master Cohen, as I recall, those depositions

7   were DEA depositions, at least a number of them were in May

8   and June.

9        SPECIAL MASTER COHEN:  Okay.

11:18:37   10       So here's the reason I ask:  McKesson is requesting

11   depositions of three witnesses.  I think that plaintiffs --

12   and that's Bornstein, Johnson, and Howard.  I think that

13   plaintiffs are also asking for depositions of seven

14   pharmacist witnesses, preceded by the argument that those

11:19:13   15  seven pharmacist witnesses shouldn't be allowed at all.

16       And here's some rules that I'm thinking of applying

17   which would resolve these issues, but I also don't want to

18   take off the table the opportunity for the parties to work

19   this out amongst themselves, which I know they've been

11:19:35   20  trying to do, but it hasn't happened yet.

21       As far as I'm concerned, discovery is closed.  It's

22   been closed for a long time.  That includes depositions.  If

23   y'all want depositions of witnesses yet to be called who

24   weren't deposed during the discovery period, that's

11:19:55   25  something you have to agree to, otherwise they don't occur.

1    I don't grant them.

2        It seems to me you had an opportunity during discovery

3    to take deposition discovery, and there are by a factor

4    probably of at least two folks you could have deposed, but

11:20:12  5    strategically couldn't and didn't.  I get that.  But

6    discovery is closed.

7        What that might mean is at trial you have to go

8    bareback -- hi, you're trial attorneys -- which means that

9    you would have to adduce evidence from witnesses at trial

11:20:25 10   whom you haven't learned what they said before they got

11   here.  That's just the way it would go.

12       Another rule that I'm thinking might make sense, and

13   I've suggested certainly with regard to documentary

14   evidence, is if a witness wasn't disclosed during the

11:20:43 15   discovery period, which I defined to be ending at March 4th,

16   okay, because we all agreed that there was additional

17   discovery, whether it was because I said so or you guys

18   agreed to it, not January 25th.

19       So if a witness was identified during discovery before

11:21:02 20   March 4th, that witness can be called.  If that witness

21   wasn't deposed, as I said, too bad, unless there's an

22   agreement.

23       What I believe that means is that the seven pharmacist

24   witnesses were identified before March 4th.  What I believe

11:21:22 25   that means is that Bornstein and Johnson were identified

1    before March 4th, but Howard was not, and so that's how that

2    would play.

3         Now, there would be exception to that rule for

4    compelling circumstances, and so if there is a witness who,

11:21:50  5    for good reasons, is late identified after March 4th, and

6    whose presence at trial would be required to have a fair

7    trial, then that would be an exception, but that would be an

8    unusual set of circumstances, and I'm guessing that Howard

9    doesn't meet it.  Howard wasn't identified until, I don't

11:22:12  10   know, two, three weeks ago, and I'm not thinking that Howard

11   is somebody without whom a fair trial couldn't occur.

12        Those two rules are entirely subject to Rule 3, which

13   is, you can agree otherwise.  You can agree to call

14   witnesses who were not timely identified.  You can agree to

11:22:34  15   depose witnesses who weren't deposed during the discovery

16   period.  If you were to agree to that, then the deposition

17   ground rules would also have to be agreed to.

18        But that's all subject to your agreement, and I'm

19   happy to help you mediate those kind of, you know,

11:22:56  20   resolutions; but it's against that context, it's against

21   that background.

22             MR. ACKERMAN:  Special Master Cohen, David

23   Ackerman.

24        Again, for the record, in our objections we identified

11:23:08  25   another five witnesses who were not disclosed during the

1    discovery period.

2                    SPECIAL MASTER COHEN:  Right.  So let me

3    finish.

4                    MR. ACKERMAN:  Oh, sure.  Sorry.

11:23:17  5              SPECIAL MASTER COHEN:  What I'm talking about

6    now, thank you for reminding me, are only the seven

7    pharmacist witnesses and the three witnesses McKesson wanted

8    to depose.  There are all kinds of other witness objections

9    that I'm not talking about right now, I haven't gotten to

11:23:32 10   them, frankly.  And those objections are also being looked

11   at by Judge Polster.  He may rule on those shortly.  I don't

12   know what he's going to do with those.  He may kick them to

13   me, I don't know yet, but I haven't looked at them.  I'm

14   talking right now only about that grouping.

11:23:52 15       Having said all of that, I also think the pharmacist

16   witnesses are different.  There are different restrictions

17   that would apply to them, and you all know the discovery

18   history of the pharmacists of dispensing data, dispensing

19   documents.  To put it simply, oversimply, I said that

11:24:23 20   dispensing-related information had to be produced only to

21   the extent that it reflected on suspicious order monitoring

22   systems on distribution, on diversion, and to the extent

23   that it went beyond that, kind of down at the pharmacy level

24   and actually dispensing practices, that that was not

11:24:41 25   discovery that needed to be produced.  And I said that all

1       at the instance of the pharmacy defendants.

2              And so what that means is that there has to be some

3       sort of restrictions as to what the pharmacy witnesses can

4       say, would be allowed to testify about, and that would be

11:25:00  5       limited to SOMS, distribution, and diversion.

6              It's hard for me to tell certainly from the

7       descriptions that you provide what the pharmacy witnesses

8       will talk about.  Walgreens says we will talk about pharmacy

9       managing, and Cardinal says we will have the four CVS

11:25:19 10      witnesses talk about whatever we need them to talk about in

11      response to plaintiffs' case.  I can't tell what it is

12      defendants anticipate they will call those witnesses for and

13      what they hope to elicit from them, but it will not be the

14      case that they will get into the depths of dispensing unless

11:25:38 15      it relates to SOMS.

16             Now, what does that all mean?  I don't know.  I'm

17      giving you broad outlines for something we will have to

18      figure out going forward.  I can't answer questions that I'm

19      sure you have right now about what exactly I mean, because I

11:25:50 20      don't know.  We're probably going to have to get together,

21      and I'm going to somehow slice and dice what it is those

22      witnesses would be allowed to say; which suggests that it

23      might be a good idea to depose them so that I can understand

24      what it is that y'all are trying to adduce.

11:26:08 25             But those are my thoughts on the pharmacy witnesses.

1      One other thing:  You will recall long ago, and this

2   kind of underlies all of this, that there were discovery

3   disputes about specific prescriptions and specific orders

4   and specific pharmacies, and how that all played out.

11:26:29   5      And Linda Singer sent a memo to the Court saying,

6   look, this is what we intend to do.  We intend to prove our

7   case using an aggregate theory, but there are some things we

8   would do also, and she laid those out.  And that includes,

9   for example, self-set restrictions on the extent to which

11:26:54  10   anecdotal stores would be used, and that still adheres.

11      So y'all can go back and look at that memo, but the

12   extent to which Bornstein, Howard, and Johnson are being

13   called to talk about or any witness is being called to talk

14   about a specific opoid experience, that's probably not

11:27:14  15   allowed.  So I'm reminding you all of that now.

16      Let me stop there and ask if there are any questions

17   about any of that.

18           MR. SHKOLNIK:  David, before depositions go

19   forward -- I'm sorry, Hunter Shkolnik.

11:27:34  20      Before the depositions of any pharmacists go forward,

21   wouldn't it be more appropriate if there was a proffer as to

22   what they want these witnesses to be testifying to so that

23   would help frame the issue for us going into these

24   depositions.  And knowing if they're really talking about a

11:27:53  25   SOM system, that's one thing.  If they're talking about,

1   well, we didn't fill this prescription or that prescription

2   for this reason, that may be a different issue we're going

3   to be covering.

4       So some type of real proffer, not a vague they're

11:28:07  5   going to talk about their job and what we do in pharmacies.

6           SPECIAL MASTER COHEN:  It sounds like a

7   reasonable idea.

8           MR. STOFFELMAYR:  Kaspar Stoffelmayr.

9       That might be a reasonable idea.  I don't think we've

11:28:20  10   agreed that there are going to be depositions at all.  That

11   may be part of this discussion you suggested we have.  That

12   sounds like an element of something we should be to talking

13   about, but that's one of a number of elements, and that goes

14   to witnesses on both sides.

11:28:34  15           SPECIAL MASTER COHEN:  Okay.  Like I said,

16   there are some answers I can give you.  This is the extent

17   of my thinking, and I know it needs more thinking and maybe

18   more specific rulings.

19       What I'm asking you to do, given what I've explained,

11:28:45  20   to meet and see if you can't figure something out.  It

21   sounds like a proffer could be a good idea, it sounds like

22   depositions might be a good idea, it sounds like some horse

23   trading is possible.  I suggest that you all pursue that.

24       Okay.  So I mentioned that objections to witnesses is

11:29:09  25   something that I'm not going to deal with any further today,

1    although the Judge may.  I don't know.

2         Just a moment.

3         The parties have been -- and I think it's been mostly

4    Kate Swift and Jane Conroy -- have been trading suggestions

11:29:39 5    on as we go through trial the timing of the swapping of

6    information, ranging from demonstrative exhibits to

7    objections to exhibits, to identification of witnesses, and

8    so on.  And I think that you all have come to, as I

9    understand it, as of 10:30 last night, agreement on all but

11:30:02 10   the deadline for providing objections to exhibits that will

11   be used the next day.

12        So here's the problem:  The problem is that -- well,

13   there's a couple of problems.

14        The first is that any agreement that y'all come to has

11:30:22 15   to be agreed to by Judge Polster.  He hasn't seen this.  I

16   have no idea whether he's going to agree to it.  I'm going

17   to suggest that most of it makes sense, and we can do it.

18        The part that I'm most concerned about is I haven't

19   been told yet exactly what my role is going to be during the

11:30:37 20   course of this trial and what he's going to ask me to do.

21        It may be that he asks me to rule on objections to

22   exhibits, or it may not.  I don't know.  And I anticipate

23   that that will probably evolve.

24        My concern is that if he says, hey, Cohen, you're the

11:30:53 25   guy who's going to rule on these objections to exhibits, I

1    don't know that I can physically receive exhibits at 10:00

2    the night before and rule on them on time the next day.  I

3    don't know that anybody can do it.

4         If it's a few exhibits and they're simple issues, I

11:31:10 5    could probably flip a coin and make it happen.  But if it's

6    a lot of exhibits, and there are complicated issues that

7    actually might even involve some legal research, it probably

8    can't happen, because I do sleep.

9         So that one right there I already suspect just can't

11:31:27 10   work.  So what do we do?  Well, I've been thinking a little

11   bit about it, and you guys have bigger brains than I do, and

12   I'm hoping we can come to some suggested ideas.

13        One example, we meet this Friday.  I think we'll

14   probably be done with jury selection by Friday.  I actually

11:31:48 15   think it will take one or two days, I don't think it will be

16   three.  Maybe I'm wrong.

17        We could meet Friday, and y'all could choose 200

18   exhibits that you have objections to that you think are most

19   likely to be used at trial and most likely to be objected

11:32:02 20   to, and we'll go through them, and I will rule.

21        This is an approach that I undertook in the Welding

22   Fumes MDL, and we did it, I think, nine times; beginning

23   with something like 500 documents before the first

24   bellwether trial, and it was down to maybe 150 to 200 by the

11:32:22 25   ninth bellwether trial.  But that process before the trial

1   began dealt with a bulk of documents that were the most

2   important, and, of course, you begin to see which way the

3   wind blows, and so you kind of figure out what to do with

4   other exhibits.

11:32:37  5   Let me stop there and ask if that sounds like a

6   reasonable idea.  If anybody has any other ideas -- but the

7   10:00 every night, I don't think works.  I don't think it

8   works for y'all, much less me.

9   MS. SWIFT:  David, this is Kate Swift for

11:32:50 10   Walgreens.  Having not had much chance to talk with my

11   colleagues about that, I think we'd be willing to work with

12   something like that.

13   I would suggest that we start with plaintiffs' wish

14   list of exhibits, if you will, and we'd need to receive them

11:33:06 15   sometime before the Friday meeting so that we know what

16   we're dealing with, and we can object appropriately, and

17   respond to what they're trying to do.

18   SPECIAL MASTER COHEN:  I mean, another thing

19   that occurs to me is we can do something every Saturday

11:33:18 20   morning with the coming week's documents.  Maybe we could do

21   both.  I don't know.

22   MS. SWIFT:  I believe the defendants would be

23   open to both or either of those, but the key point is that

24   we would need to receive the actual branded exhibits in

11:33:34 25   advance so that we can look at them and know what we're

1      dealing with, and object.

2              SPECIAL MASTER COHEN:  What I'm concerned

3      about is that after three days it ends up being unworkable;

4      now we're stuck.  The Judge will not have the patience to

11:33:46  5   keep the jury waiting in the jury room beyond the half hour

6      he has reserved from 8:30 to 9:00, and is going to get the

7      jury out there, which is what you want.  So I want to make

8      sure you get as many rulings as you can.  Waiting until

9      10:00 the night before I would suspect means you don't get

11:34:07 10  rulings or you get un-nuanced rulings.

11              MR. LANIER:  Mark Lanier.  Thinking through

12     the dynamics of this in terms of the way the trial will go

13     forward, we've got 4,000 exhibits on our list.

14          The defendants have 20-some-odd thousand.

11:34:30 15             SPECIAL MASTER COHEN:  If you want, I can cut

16     them down again.

17              MR. LANIER:  No.  What my concern is, is

18     starting then with the plaintiffs' means that out of the

19     4,000, I guess we're supposed to select 200 that seem extra

11:34:49 20  important to us and offer those 200 by Friday; or while

21     we're selecting the jury, if they want them before Friday,

22     so stop doing jury selection work and work on finding 200

23     for them out of our 4,000, while they don't do anything with

24     their 28,000 until somewhere down the road?

11:35:19 25          It strikes me that during the trial itself we'll

1    probably be dealing with two dozen exhibits a day, 24, maybe

2    28, maybe 30.

3              SPECIAL MASTER COHEN:  I'll take the over.

4              MR. LANIER:  Okay.  We will be producing the

11:35:40  5    exhibits the night before that will be used in direct.

6    We'll be flying blind on cross.

7         To the extent that the cross exhibits are in their

8    28,000, which you would assume they are, maybe some are not

9    for impeachment purposes and stuff, I can see them reaching

11:36:02  10   outside the 28, we'll have to deal with those on the spot

11   anyway during court to some degree, make our objections

12   live, as we're seeing them for the first time.  That will

13   continue throughout the duration of the plaintiffs' case.

14        By the time we get to the defense case, a lot of their

11:36:23  15   exhibits will have already been used in direct.  So while we

16   will be flying blind and doing it by the seat of our pants,

17   as will the Court for their exhibits, they will have had the

18   benefit of this type of an approach substantially so that

19   they get their exhibits way ahead of time, they get to look

11:36:45  20   at them, they get to get their legal team parsing through

21   objections for nuanced rulings, et cetera.

22        All to say that it seems to me this is very one-sided

23   to the advantage of the defense in this case when they

24   already have the benefit of having six times the exhibit

11:37:05  25   numbers that we do.

1          So if we were going to do this and make this selection

2     choice, my suggestion might be that both sides come up with

3     a list of 200 or so exhibits that they think would most

4     likely be used, that you charge us in good faith to do that

11:37:26  5     for the first week; and that we be prepared to do that week

6     after week during the weekends, on a Saturday have a team

7     meet with you, if that's what's deemed to be done.

8          I will represent to you and to the defendants that the

9     way I try a case is very fluid, and depending upon what

11:37:44 10     happens each day, it changes what I might want to do the

11     next day, what I need to prove up, what I don't need to

12     prove up.

13          I'm always looking for a way to make the trial as

14     efficient and as short as I can, so I don't offer documents

11:38:00 15     just because I said I might a week before.  If I can do it

16     another way and get somewhere more quicker, I'll pursue

17     that.

18          So I like the idea, if you're going to do what you're

19     doing, that it be documents from both sides, and that we

11:38:17 20     still have in place a mechanism for the handful of documents

21     that might come up, where at the end of court at 5:30 or

22     6:00, when we get back to the hotel and start working on the

23     next day we're able to say, in light of what's happened

24     here, we need these three documents tomorrow.  So that we

11:38:36 25     can identify those by 8:00 p.m., and still have some

1    mechanism for having things looked at that didn't make the

2    top 200 list for either before the week started.

3                   SPECIAL MASTER COHEN:  So you have two

4    interests in tension.  One is not showing the defendants all

11:38:51  5    of the documents that you think are the most important and

6    you expect to use.  That's one tension.  And the other

7    tension is not wanting to interrupt trial with every exhibit

8    that you object to so you can get a ruling, and now your

9    four hours is down to two and a half because the Court has

11:39:09 10    had to stop and get unhappy.

11         And what I'm trying to do is figure out -- I'm not

12    disagreeing with you, Mark -- what I'm saying is I think

13    there does have to be in the beginning some rulings that set

14    people's expectations and make clear what exhibits will be

11:39:24 15    allowed at trial so that we're not interrupting the Judge

16    and you're not interrupting, nor are defendants

17    interrupting, their presentation of their case.

18         Did you want to respond to that?

19                   MR. LANIER:  I think -- I think that that

11:39:43 20    makes sense.

21         My concerns are a little bit more directed toward a

22    different perspective.  I just want to make sure that we're

23    not locked into this Friday --

24                   SPECIAL MASTER COHEN:  No.

11:40:01 25                   MR. LANIER:  -- or Saturday producing the

1    exhibits that we're going to use for the next five days.

2                    SPECIAL MASTER COHEN:  So we would still have

3    to have I'll call it an 8:00 deadline so that those

4    additional exhibits, which you won't know when you give me

11:40:15  5    the 200 you're going to be using because you didn't know

6    until that day that you intend to use them tomorrow, and

7    besides which, even if you picked the 200 perfectly, there's

8    still going to be others, and the same for defendants.

9         That would be a supplemental examination of exhibits.

11:40:31  10    I'm not saying that doesn't happen.  I'm saying that it

11    makes that workload easier having front loaded it.

12                    MR. LANIER:  Okay.  And I do like the idea of

13    us getting a feel for how your rulings might be, which doing

14    something this Friday or Saturday would give us a chance to

11:40:47  15    do because that would inform us how to do objections during

16    the trial.

17         But I, again, would urge that it be reciprocal, and

18    that both sides put forward some exhibits for this weekend

19    for you to look at Friday, or whatever day, to have this

11:41:00  20    process so that they will also have an idea of when they

21    pull exhibits out during cross-examination, they will get an

22    idea of where your rulings might be, and we will get an idea

23    so that we object appropriately to those documents.

24                    SPECIAL MASTER COHEN:  Right.  And to be fair,

11:41:15  25    so during the Welding Fumes trial there were, say, 500

1    documents, and I was clear when I wasn't sure, where I

2    thought that this is something that may be so important to

3    the parties that they should take it to the Judge.

4        And sometimes I would go to the Judge -- I'm not sure

11:41:33  5    that we'll be able to do that on a Saturday -- but I would

6    say, Judge, we went through 200 documents, here are 20 where

7    the parties kind of want you to look at it, object to my

8    tentative rulings, whatever.

9        And my point is I'm still the special master and you

11:41:47 10   still have a judge, and you can still take my rulings to the

11   Judge if that's something you need to do.  I've gotten a lot

12   smarter since then, so I'm hoping you won't need to as much.

13            MS. SWIFT:  Kate Swift for Walgreens.

14        Just to respond to a couple of things that Mr. Lanier

11:42:06 15   said.  He represented a couple of times that the plaintiffs

16   have 4,000-some-odd exhibits and that we have a much, much

17   larger number than that.  I don't believe that is correct,

18   but it doesn't drive the bulk of my response, which is that

19   I think we can work with you and work with the plaintiffs on

11:42:24 20   a disclosure schedule that would get us to where we want to

21   be.  There may well be documents that we want you to rule on

22   plaintiffs' objections to before opening statements, for

23   example.

24        I think we would need to discuss what the number of

11:42:39 25   documents is going to be that we're going to be disclosing

1  for you to look at Friday.

2              SPECIAL MASTER COHEN:  Let's do that now.

3       I kind of like 200, and we meet on Saturday, from both

4  sides.

11:42:50  5              MS. SWIFT:  I'm not sure that 200 for

6  plaintiffs and 200 for defendants makes sense necessarily.

7              SPECIAL MASTER COHEN:  600 for defendants?

8              MS. SWIFT:  That's not where I was going.

9              (Laughter in courtroom.)

11:43:01 10              MR. PYSER:  I'll take it on.  This is

11  Steve Pyser for Cardinal Health.

12       We were going to suggest that given that the

13  plaintiffs will be putting on the bulk of their case that we

14  start with a 200/100 split, and perhaps we reverse it when

11:43:21 15  the defendants are putting on their case.

16       But as the plaintiffs, I suspect, in the early part of

17  the case would be putting on more documents, it would make

18  sense to start with a split that way, but the defendants are

19  willing to put up documents.

11:43:36 20              MS. SWIFT:  Kate Swift for the defendants.

21       The only other thing that I wanted to reiterate is the

22  timing of disclosure is going to be very important to us.  I

23  think we're going to need at least 48 hours, and that could

24  be reciprocal, of course.

11:43:51 25       And what we would ask for is the branded exhibits with

1     the exhibit stickers on them so we can look at what

2     plaintiffs are actually talking about showing to the jury.

3                    SPECIAL MASTER COHEN:  When you say 48 hours,

4     you're talking specifically for the Saturdays?

11:44:04  5                    MS. SWIFT:  Correct.

6                    MR. LANIER:  I think the Court's intention is

7     that we start jury selection tomorrow.  So tomorrow and

8     Thursday are pretty filled up with the learning and knowing

9     the panels of the 50 that will be coming in.  And I'll be

11:44:26 10     doing voir dire for the plaintiffs, and so I'm not in a

11     position to stop doing that to locate 200 of the most likely

12     exhibits that would be illustrative for --

13                    SPECIAL MASTER COHEN:  I think you're smarter

14     than them, Mark.  I think you've got more planned, but what

11:44:46 15     are you asking?

16                    MR. LANIER:  Well, if we're going to do this

17     on Saturday, then Friday at noon we can give you a list of

18     200 of us, and we'll take their list of 200 Friday at noon.

19     And I would assume they're going to use documents to

11:45:04 20     cross-examine our witnesses.  In fact, I suspect that

21     they'll use as many documents if not more than we will.

22          But Friday at afternoon, assuming we can get the jury

23     selected by Thursday, we can certainly do.

24                    SPECIAL MASTER COHEN:  Is Sunday a bad day?

11:45:24 25                    MR. LANIER:  Miss Conroy, would you be able to

1    do it on Sunday, the documents and objections?

2                   MS. CONROY:  Yes.

3                   MR. LANIER:  Ms. Conroy said she can do

4    Sunday.

11:45:30  5        MS. SWIFT:  Sunday is fine for us, David.

6    Everyone is in the same boat with respect to picking a jury

7    tomorrow.  We all have big teams.  The deadline for

8    producing branded exhibits has long since passed.  I think

9    it's appropriate for us to have 48 hours to look at the

11:45:47 10   documents we're talking about, but Sunday is fine.

11                  SPECIAL MASTER COHEN:  All right.  One second.

12                  MS. SWIFT:  If I may, David.  One of my

13   colleagues has raised an issue that I want to raise to you.

14        The only potential issue with Sunday is if we have

11:46:22 15   issues with documents that we want to raise to Judge Polster

16   before opening statements.  It's unclear to us whether we'll

17   have enough time to do so.

18                  SPECIAL MASTER COHEN:  You wouldn't have that

19   time if we did it Friday or Saturday.  That probably is

11:46:35 20   going to have to happen via e-mail Sunday evening or 8:30 on

21   Monday morning.

22        All right.  200 exhibits from defendants, 200 exhibits

23   from plaintiffs, close of business Friday, branded.  We will

24   meet Sunday.

11:46:59 25        Not that this makes any difference to me, but am I

1    correct, there is no Browns game on Sunday?

2         I guess there might be some American League

3    championship series games on, but I haven't had time to

4    watch any of those.

11:47:16  5         So we'll say Sunday at 1:00.  We'll need a location.

6    Obviously, the Court is closed, and my office can't quite

7    fit us all.

8         Any ideas?  Anybody with a law office?

9              MR. SCHMIDT:  This is Paul Schmidt from

11:47:32  10   McKesson.  We can host at our colleagues here in the

11   compound connected to the hotels at Ulmer & Berne.

12             SPECIAL MASTER COHEN:  I'm sorry, where?

13             MR. SCHMIDT:  Ulmer & Berne.

14             SPECIAL MASTER COHEN:  Would you do me the

11:47:43  15   favor of sending me an e-mail with directions and what door

16   to go to, and all that stuff, so that everybody can use

17   that?

18             MR. SCHMIDT:  Yes.  And we'll probably need

19   names as well, but we'll send an e-mail and copy plaintiffs'

11:47:58  20   counsel, as well.

21             SPECIAL MASTER COHEN:  Okay, Sunday at 1:00.

22        Okay.  Thank you for all of that.

23        And I think we do need to make the daily cutoff at

24   8:00, not 10:00.  And again, this is still all subject to

11:48:21  25   Judge Polster's approval.

1          MS. SWIFT:  Kate Swift for defendants.

2          David, when you say 8:00, not 10:00, you mean for any

3     additional objections that we're going to submit to you the

4     night before?

11:48:34  5          SPECIAL MASTER COHEN:  Correct.  We will still

6     be doing a daily.  This is just front loading some of those

7     to try and keep that shorter.

8          MS. SWIFT:  I appreciate that.  My question,

9     presumably we'll need to move back the deadline for serving,

11:48:47 10     move earlier in the day deadline, if we're serving those

11     exhibits, which is currently, I believe, 8:00.  I'd suggest

12     two hours earlier, which is already going to be pretty

13     tight.

14          SPECIAL MASTER COHEN:  Does 6:00 work?  I

11:49:01 15     mean, is that even possible?

16          MS. CONROY:  Jayne Conroy for plaintiffs.

17          That's just the practical problem we had.  We leave

18     court, we can't even get back to the hotel until about 6:00

19     after we make sure the exhibits are set for the day that

11:49:13 20     we've been in court.  It's just too soon.  That's why 8:00

21     seems to be about the earliest we could do it.

22          Are you doing hand signals there?  7:00.

23          MR. LANIER:  7:00 gives us one hour when we

24     get back.

11:49:36 25          90 percent of the cases we try, you wind up making

1    objections on the spot, so I would think giving them an

2    hour --

3                    SPECIAL MASTER COHEN:  Which is obviously

4    still going to happen.

11:49:46  5                    MS. SWIFT:  I want to put on the record that I

6    think an hour is too tight.  We're trying to be reasonable

7    and live in a world that's possible.

8                    SPECIAL MASTER COHEN:  Look, these are

9    organically kind of going to come together anyway, so this

11:49:59 10   is what everybody is aiming for.  I'm not going to stomp my

11   feet and say you're late by five minutes or I'm not looking

12   at it.  I may stomp my feet for other reasons, but it won't

13   be that.

14        So let's shoot for 7:00 and 8:00.

11:50:15 15                   MR. PYSER:  Steven Pyser for Cardinal Health.

16        We'll certainly try to meet that.  The problem that

17   we've got is it's often going to be that there's six

18   defendants who have to coordinate on objections, because

19   what we don't want to do is send you six e-mails with sets

11:50:31 20   of objections that are all over the place.

21        So it's that coordination built in that I think is as

22   practical matter makes an hour on the defense side really --

23                    SPECIAL MASTER COHEN:  Think of how nice

24   settlement would be.

11:50:45 25                   MR. PYSER:  But we'll try to hit the deadline.

1    I just want to flag that as a practical problem.

2              MR. SCHMIDT:  Just logistically -- this is

3    Paul Schmidt from McKesson.

4         May we get the actual exhibits as opposed to --

11:51:00  5              THE REPORTER:  I can't hear you.

6              MR. SCHMIDT:  May we get the actual exhibits

7    as opposed to a list where we need to go try and find them?

8    Because that can sometimes take time.

9              MR. LANIER:  I think that if we make copies of

11:51:12  10   the exhibits and then send the exhibits over, and we're

11   doing all of that within the one hour that it's going to

12   take for us to make the decision, I don't know how we do

13   that.  But I will tell you that if they're ones that we have

14   ready copies of we'll be glad to send you electronic copies.

11:51:29  15   If it's like a video that's going to be played, that's

16   probably already readily accessible.

17        We're going trying to make it easy on y'all.  We're

18   not trying to make it difficult on you or the special master

19   or the Court.  So I'll represent to you, if I've got them

11:51:46  20   I'll give them to you, but if I don't, and I'm just right up

21   against the 7:00 deadline, I assume you would rather have

22   the numbers than me call you and say, I've got the numbers,

23   but it's going to take us 45 minutes to pull them and e-mail

24   them.

11:52:00  25        We'll do the best we can.  We're not trying to play

1    difficult ball.  By the same token, I'll represent to the

2    Court if they're 10 minutes late or 30 minutes late on their

3    objections, or they think of a new objection the first thing

4    the next morning, we're not going to say gotcha.  We're not

11:52:19  5    doing that.  We're trying to get it right.

6                SPECIAL MASTER COHEN:  Frankly, it seems to me

7    you should be in a position to hear a branded exhibit number

8    and pull it up.  I just can't believe that you guys aren't

9    in a position to do that.  So that should come first.  If

11:52:34  10    y'all you can make it easier for each other and shoot PDFs

11    across the Internet and say this is what we're using

12    tomorrow, great.

13          But honestly, I think that the Exhibit List Number

14    would be sufficient.

11:52:44  15                MS. SWIFT:  Kate Swift for defendants.

16          I would agree with that if we were confident that we

17    have the branded exhibits for the plaintiffs.  I am not

18    confident that we do.  That is the nature of the request, to

19    make sure that we have the branded exhibits that we're

11:52:57  20    talking about.  Certainly if it's a branded exhibit that

21    we've got, that should be sufficient, but we've been trying

22    to get branded exhibits for a while.

23                MR. ACKERMAN:  Special Master Cohen.  It's

24    David Ackerman.

11:53:07  25          Just to respond to that, we have served a number of

1    branded exhibits.  We have the same concerns about

2    defendants' side, because we are daily receiving updated

3    exhibit lists with new exhibits, but that's obviously

4    something, as Mr. Lanier stated, we're going to work out.

11:53:27  5                SPECIAL MASTER COHEN:  I expect you will.

6          The only other thing I want to chat about before we

7    take a break and then head upstairs to meet with the Judge

8    are depo designations.

9                MR. LANIER:  Your Honor, may I interrupt the

11:53:48  10   flow for just a moment?

11               SPECIAL MASTER COHEN:  Go ahead.

12               MR. LANIER:  At this point we've gone through,

13   and I can announce to the Court that we've reduced down our

14   plays substantially.

11:53:59  15         It is our intention to play the Prevoznik and the

16   Hartle depositions, and those will be the only depositions

17   we play.  So that will change the dynamic, perhaps, of what

18   you're going to tell us.

19               SPECIAL MASTER COHEN:  You're going to play

11:54:16  20   two video deps during the course of your presentation, and

21   none others?

22               MR. LANIER:  Yes, sir.

23         If during impeachment a line in a deposition becomes

24   relevant, then that would be a different matter.  If a

11:54:27  25   witness, for example, if I've got the Cardinal, one of the

1   Cardinal witnesses on the stand, and they say something that

2   flies in the face of what's been said in a deposition, we

3   might need to use a line or two for impeachment purposes.

4   But in terms of an affirmative play, we intend to play only

11:54:46  5   from Prevoznik and Hartle.

6            MS. MAINIGI:  For the entirety of your case,

7   Mark?

8            MR. LANIER:  Yes, Enu.

9            SPECIAL MASTER COHEN:  Well, that made a large

11:54:56  10   problem smaller.

11        So what I've --

12            MR. LANIER:  I'm not saying that there still

13   aren't issues because the defendants have designated a

14   boatload, and everything that they're concerned about are

11:55:09  15   natural good concerns that we also share.  So we do want to

16   make sure that we have restrictions on when and where and

17   how we get their real plays, but ours are reduced down.

18            SPECIAL MASTER COHEN:  I'm sure there are

19   still objections to, you said Prevoznik, and I'm sorry, who

11:55:34  20   was the second?

21            MR. LANIER:  And Hartle.  And our Prevoznik

22   play is probably going to run less than one hour, so it

23   won't take long to do those objections.  Hartle is an hour

24   to an hour and a half.

11:55:47  25            SPECIAL MASTER COHEN:  Are the parties ready,

1    have they done what they need to give me the color-coded

2    PDFs that I keep wondering when I'm going to get?

3                    MR. LANIER:  We can certainly provide those to

4    you today.

11:56:02  5                    MR. PYSER:  This is Steve Pyser for Cardinal

6    Health.

7         I think we'd want to take a look back at the Prevoznik

8    one and make sure that it's ready, and that all the

9    objections are properly entered.  So we'll get working on

11:56:11 10    that now that we have a much more narrower scope.

11                    SPECIAL MASTER COHEN:  All right.  Well, that

12    takes care of my concerns for the immediate future.

13         As Mark notes, that doesn't resolve all of the issue

14    because I still will need, I assume during the course of

11:56:27 15    trial, to receive objections to deposition designations that

16    defendants want to play during their case, but that's a few

17    weeks away, I assume.

18         And my concern has always been that the volume

19    of -- look, I don't want to have to rule on objections to

11:56:47 20    deposition designations that are never going to be played.

21    I have too much to do, and so do y'all.

22         I'm looking at defendants now.  I wrote a firm e-mail.

23    You know, I prefer to be conciliatory, but I know how not to

24    be.  And so I wrote a firm e-mail, and I appreciate

11:57:06 25    plaintiffs' response to that.

1          And I do need the defendants to kind of step up and

2    come to a similar place so that I'm not ruling on a

3    huge -- so the Court isn't ruling on a huge amount of

4    deposition designations that never get played, and to do

11:57:23  5    unnecessary work.  And I promise you that if the Judge gets

6    wind of that's what's going on, either because he's been

7    asked to or he knows that I've been asked to, it's going to

8    get ugly, quick.

9          MS. SWIFT:  Kate Swift, Your Honor.

11:57:37 10    For Walgreens, we've only designated affirmatively

11    from one witness, and it's their narrowed designation, so I

12    don't anticipate it being a problem.  But more broadly --

13          SPECIAL MASTER COHEN:  So you're stepping

14    backwards.

11:57:49 15          MS. SWIFT:  Well --

16          SPECIAL MASTER COHEN:  If there's a line of

17    defense, counsel, you're stepping backwards, and everyone

18    else is left up front.  I get it.

19          MS. SWIFT:  This is contemplated in the

11:57:59 20    disclosure schedule that we've been trading back and forth

21    with Ms. Conroy.  And I guess I have a question for you,

22    which is, does the time frame, the disclosure schedule that

23    we've laid out for deposition designations, get you to where

24    you want to be on having everything reduced down

11:58:15 25    sufficiently.  Which is to say, we've contemplated having

1    folks disclose final designations the Wednesday before the

2    week they would be played, with final counters and

3    objections served two days later on Friday, so that we have

4    the final cuts, including the video, by the Friday before

11:58:36   5    everything is to be played?

6                SPECIAL MASTER COHEN:  That's a good point.

7    The answer is mostly, and I say mostly because I don't

8    really know what that ends up leaving me to do over a

9    weekend, when I actually like to reintroduce myself to my

11:58:53  10    wife sometimes.

11         So again, I'd like to front load the cutting back of

12    what is clearly excessive.  You got one, great; other

13    defendants have 40, they can't possibly play 40.  It needs

14    to start getting cut back now, as plaintiffs have done.  And

11:59:13  15    you can do it voluntarily in the next few days, or I can

16    finally just explode and draw a line in the sand that you

17    won't like, and I'd much prefer not to do that.

18                MS. SWIFT:  We will get to work on it again

19    and cut it back.

11:59:31  20                SPECIAL MASTER COHEN:  All right.  I think

21    that's enough said at this point.

22         There are a couple of other issues that are floating

23    around; for example, the OIG report.  I haven't read all the

24    e-mails related to those, and I'm not prepared to rule on

11:59:48  25    that now.

1       And it is noon.  What I'm thinking is we'll take a

2   15-minute break and head upstairs.  The Judge is prepared

3   for you to walk in a little after noon, so why don't we make

4   it 12:15.

12:00:01  5       But before we break, is there anything else that

6   anybody wants to raise while we're here today?

7               MR. LANIER:  Not for plaintiff.

8               MS. SWIFT:  No.

9               SPECIAL MASTER COHEN:  All right.  See you

12:00:13 10  upstairs.  Thank you, all.

11                    - - -

12            (Proceedings adjourned at 12:00 p.m.)

13

14

15            **C E R T I F I C A T E**

16

17       I certify that the foregoing is a correct transcript

18   from the record of proceedings in the above-entitled matter.

19

20   */s/ Donnalee Cotone          15th of October, 2019*
     DONNALEE COTONE, RMR, CRR, CRC                    DATE
21   Realtime Systems Administrator

22

23

24

25