## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track One Cases | |

## PLAINTIFFS' RESPONSE TO MOTION OF NON-PARTY PAUL ANDREW PYFER OBJECTING TO PLAINTIFFS' LISTING OF PYFER AS A LIVE STREAM WITNESS

This Court has already determined that Plaintiffs can subpoena the live-stream trial testimony of certain witnesses in accordance with Rules 43 and 45 of the Federal Rules of Civil Procedure, so Plaintiffs will not reiterate the general legal arguments supporting that determination.  Instead, Plaintiffs will address the three witness-specific arguments raised by Mr. Pyfer in his motion: (i) that he is not under the control of any Defendant; (ii) that there is not good cause or compelling circumstances justifying his live-stream testimony; and (iii) that allowing his live-stream testimony will "enormously burden and inconvenience" him.  Each of these arguments is without merit.  Mr. Pyfer's Motion should be denied.

I.      **Mr. Pyfer is under Teva's control and, regardless, can be compelled to testify via live-stream as a former employee of Cephalon.**

Mr. Pyfer was Cephalon's National Sales and Marketing Director from 2000 to 2010. Mr. Pyfer argues that his status as a "former employee of Cephalon" exempts him from the subpoena power of this Court and places him outside the bounds of this Court's September 12, 2019 Order concerning contemporaneous video trial testimony.  (*See* Andrew Pyfer's Motion to Quash, Dkt. #2822 at pp. 4-5).  However, as this Court has made clear, it arrived

at its ruling "*for all the same reasons articulated by MDL Judge Rebecca Doherty in In re Actos . . .*" (*See* 9/12/19 Order (Dkt. #2594) (emphasis added). Importantly, *Actos* made no practical distinction between former employees and current employees. In fact, *Actos* specifically granted plaintiff's request for "current *or former* employees of the Defendant." *Id.* at *4, *6, *7 (emphasis added). *Actos* simply held that Rules 43 and 45 should be read in tandem to allow for distant witnesses to testify via contemporaneous live video testimony at a courthouse within a 100-mile range of their location.

Perhaps most importantly, the policy considerations underlying the preference for live-testimony over deposition testimony applies with equal force whether plaintiff subpoenas a former or current employee. As Judge Doherty observed in the *Actos* MDL, contemporaneous live testimony is favored in the MDL context because "the verdict in the bellwether trials . . . will be used in this representative manner, and therefore . . . should present the testimonial evidence of both sides as fairly and completely as possible." *Actos,* 2014 WL 107153 at *6. *See also In re Vioxx Prod. Liab. Litig.*, 438 F. Supp. 2d 664, 668 (E.D. La. 2006) (describing a deposition as "a sedative prone to slowly erode the jury's consciousness until truth takes a back seat to apathy and boredom," and finding that "[t]he 100 mile rule forces this predicament upon the jury."). The same policy considerations exist in this MDL, which is arguably the most complex ever.

Moreover, contrary to Mr. Pyfer's assertions otherwise, his actions in this litigation has demonstrated that he is under Teva's control. Mr. Pyfer was produced as a deposition witness by Teva's counsel, on a date selected by Teva's counsel. During the deposition Mr. Pyfer was represented *both* by Teva's counsel and his own personal attorney. Ex. A (Pyfer Dep.) at 15:4-16. Significantly, Mr. Pyfer's personal attorney provided to him and paid for *by Teva*. *Id.* at 15:20 – 16:8, 16:23 – 17:4. Mr. Pyfer also met with Teva's counsel

on three separate occasions (totaling about 14-15 hours) in order to prepare for the deposition and has been actively coordinating with Teva on this litigation. *Id.* at 17:5-19. Throughout this litigation, Plaintiffs have not been able to contact Mr. Pyfer directly, but rather only through Teva's counsel or counsel paid by Teva. Mr. Pyfer and Teva cannot have it both ways. They cannot coordinate on litigation strategy, have Teva incur all litigation costs, and then change course at the time of trial to claim that Mr. Pyfer is a "non-party." Accordingly, Mr. Pyfer should be deemed to be under Teva's control for purposes of this litigation.

## II.     Good cause and compelling circumstances justify Mr. Pyfer's live-stream testimony.

As this Court is well aware, given the time restraints for this trial, the parties were compelled to narrow their witness lists and deposition designations significantly. Given these restrictions, Plaintiffs selected Mr. Pyfer as their live-stream witness for Teva because he is uniquely knowledgeable regarding numerous key subject matters Plaintiffs must present at trial. Specifically, Mr. Pyfer's testimony covers six key areas for Plaintiffs' case regarding the branded drugs Actiq and Fentora:

- <u>Branded Marketing</u>:  Mr. Pyfer was integral in developing and implementing Cephalon's successful and sophisticated plan to market Actiq for off-label, non-cancer uses.

- <u>Unbranded Marketing</u>:  Mr. Pyfer was involved in the planning for the unbranded marketing of Actiq and Fentora.

- <u>Front Groups</u>:  Mr. Pyfer was involved in the planning for the use of front groups in the marketing of Actiq and Fentora.

- <u>Regulatory</u>:  Mr. Pyfer was involved in ensuring that the marketing department complied with the provisions of the Actiq Risk Management Program (RMP) and preparing the SOP for the marketing department with regard to this plan.

- <u>Internal Compliance Audit</u>:  The internal audit by Cephalon in 2004 found numerous violations of the Actiq RMP. The draft audit was circulated to a limited group in Cephalon, including Mr. Pyfer. Mr. Pyfer was in charge of

3

responding to certain violations found in the audit concerning the marketing of the drug.

- <u>Criminal Plea</u>:  The 2008 criminal plea and fines concerned the off-label marketing of Actiq while Mr. Pyfer was strategic marketing director for the drug.  He is knowledgeable about the plea and fines and believes he ultimately was let go from Cephalon as a result.

Originally, Plaintiffs had intended to present more than a dozen Teva-related witnesses, either live or by videotape, on a number of key areas related to Plaintiffs' claims against Teva.  Unlike with the distributor defendants, Plaintiffs are asserting *both* marketing-related claims and SOM-related claims against Teva.  Once the Court limited Plaintiffs to 65 total witnesses for the entire case, Plaintiffs had to cut the number of Teva witnesses significantly.  Plaintiffs designated two Teva witnesses essential to their SOM-related claims: Teva's DEA Compliance Department Head, Colleen McGinn, and Teva's SOM Manager, Joseph Tomkiewicz.  Plaintiffs selected Mr. Pyfer as their live-stream witness because he covered the six key areas of Plaintiffs' marketing case (listed above).  Thus, Plaintiffs have designated three witnesses (McGinn, Tomkiewicz, Pyfer) to prove their claims against Teva.  By comparison, Teva has designated *twelve* liability fact witnesses for the non-Actavis portion of the case.

Mr. Pyfer's deposition testimony is not sufficient.  His primary focus at Cephalon was with branded marketing.  Given the limited time allowed for his deposition, Plaintiffs focused primarily on this area for their deposition questioning.  Plaintiffs had intended to rely on the testimony of other Teva employees on other key areas in which they were involved.  At the time of Mr. Pyfer's deposition, Plaintiffs were not aware that the number of witnesses they would be able to call at trial would be limited to such a significant extent.  Consequently, Plaintiffs will be greatly prejudiced if Mr. Pyfer is not permitted to testify as a live-stream witness at trial.

Moreover, Plaintiff has demonstrated good cause and compelling circumstances. As discussed above, Teva has exerted control over Mr. Pyfer by representing him at his deposition, paying for his personal attorney, and coordinating with him regarding this litigation. Teva would certainly receive a tactical advantage if his live-stream testimony is not permitted. Additionally, the need for contemporaneous video trial testimony is especially heightened in the MDL context, which by its very nature, is complex. The flexibility needed to manage this incredibly complex litigation weighs heavily in favor of allowing his live-stream testimony. Finally, neither Mr. Pyfer nor Teva will suffer any true prejudice as a result of Mr. Pyfer providing this live-stream testimony. Mr. Pyfer argues that he will be "enormously" inconvenienced by having to provide this testimony, but his concerns are greatly exaggerated. Given the time restraints for this trial, his testimony will last one day at most (and likely less). Mr. Pyfer resides in Wayne, Pennsylvania, a suburb of Philadelphia, which is located approximately 15 miles away from Teva's counsel's main office. Plaintiffs understand that Mr. Pyfer has certain work obligations over the next six weeks and are willing to be flexible as to the date of his testimony in order to avoid any conflicts with those prior commitments. Any minimal inconvenience Mr. Pyfer will endure by providing a few hours of testimony from a location close to his residence is certainly outweighed by importance of his testimony, the magnitude of this litigation, and the severe prejudice to Plaintiffs if he is not permitted to testify via live-stream.

**III.**     **Alternatively, if Mr. Pyfer is not permitted to testify via live-stream, Plaintiffs request permission to either designate additional testimony from other witnesses or conduct a trial deposition of Mr. Pyfer in order to cover the topics not previously or fully covered in his first deposition.**

If the Court is inclined to grant Mr. Pyfer's Motion, Plaintiffs request that, in addition to being permitted to play relevant portions of Mr. Pyfer's deposition, they be allowed to designate three additional witnesses to briefly testify (one live, two by deposition) regarding

the following areas that Plaintiffs had intended to cover with Mr. Pyfer's live-stream testimony:

- David Brennan (live):  Mr. Brennan lives in Ohio.  He is under subpoena and does not object to testifying live in this case.  He can provide essential testimony regarding his internal audit of Cephalon's compliance with the Actiq RMP, and how Cephalon and the actions of Mr. Pyfer's marketing department were in breach of that plan.  This audit was transmitted to a limited number of internal employees, including Mr. Pyfer who was responsible for responding to certain provisions relating to off-label use of the drug.  <u>Plaintiffs estimate that their direct examination of Mr. Brennan would take approximately one hour</u>.

- Stacey Beckhardt (video):  Ms. Beckhardt was responsible for public relations and front groups, and communicated with Mr. Pyfer about this portion of the marketing plan which Mr. Pyfer was involved in preparing.  Ms. Beckhardt testified that Mr. Pyfer was the head of marketing, and that she believed the large increase in off-label usage was the result of the marketing strategy put in place.  <u>Her designated video testimony is 1 hour, 8 minutes</u>.

- Matthew Day (video):  Mr. Day was heavily involved in the overall unbranded marketing campaigns for Fentora.  <u>His designated video testimony is 48 minutes.</u>

Given that Teva has designated *twelve* non-Actavis liability fact witnesses, Plaintiffs would be severely prejudiced if they could not at least adduce the above testimony as a replacement for Mr. Pyfer's live-stream testimony.

Alternatively, Plaintiffs request leave to conduct a trial deposition of Mr. Pyfer (either on a weekend day or holiday in the next few weeks) so that they can question him on the topics not previously or fully covered during his first deposition.

Dated: October 16, 2019.

Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Plaintiffs' Co-Lead Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX 77069-3804
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Lead Trial Counsel*

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

Linda Singer
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
(202) 386-9626 x5626
(202) 386-9622 (Fax)
lsinger@motleyrice.com

*Counsel for Plaintiff Summit County, Ohio*

## CERTIFICATE OF SERVICE

I certify that the foregoing instrument was served via the Court's ECF system to all counsel of record on October 16, 2019.

/s/ Peter H. Weinberger
Peter H. Weinberger