**Exhibit 253** [replacing Dkt. #1964-40] attached to Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Adjudication that Defendants did not Comply with Their Duties under the Federal Controlled Substances Act to Report Suspicious Opioid Orders and Not Ship Them (Second Corrected) at Dkt. #1910-1.

- Redactions withdrawn by Defendant

# EXHIBIT 253

<div align="center">

**STEP II**
**CONSENT AGREEMENT**
**BETWEEN**
**GARY EVAN SIVAK, M.D.**
**AND**
**THE STATE MEDICAL BOARD OF OHIO**

</div>

This CONSENT AGREEMENT is entered into by and between GARY EVAN SIVAK, M.D., and THE STATE MEDICAL BOARD OF OHIO, a state agency charged with enforcing Chapter 4731., Ohio Revised Code.

GARY EVAN SIVAK, M.D., enters into this CONSENT AGREEMENT being fully informed of his rights under Chapter 119., Ohio Revised Code, including the right to representation by counsel and the right to a formal adjudicative hearing on the issues considered herein.

<div align="center">

**BASIS FOR ACTION**

</div>

This CONSENT AGREEMENT is entered into on the basis of the following stipulations, admissions and understandings:

      A.    THE STATE MEDICAL BOARD OF OHIO is empowered by Sections 4731.22(B)(10) and (26), Ohio Revised Code, to limit, revoke, suspend a certificate, refuse to register or reinstate an applicant, or reprimand or place on probation the holder of a certificate for "commission of an act that constitutes a felony in this state regardless of the jurisdiction in which the act was committed" and "impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice."

      B.    THE STATE MEDICAL BOARD OF OHIO enters into this CONSENT AGREEMENT in lieu of formal proceedings based upon the violations of Sections 4731.22(B)(10) and (26), Ohio Revised Code, as set forth in Paragraph D of the April 1998 Consent Agreement between GARY EVAN SIVAK, M.D., AND THE STATE MEDICAL BOARD OF OHIO, a copy of which is attached hereto and incorporated herein, and Paragraph E below, and expressly reserves the right to institute formal proceedings based upon any other violations of Chapter 4731. of the Revised Code, whether occurring before or after the effective date of this Agreement.

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

STEP TWO AGREEMENT
GARY EVAN SIVAK, M.D.
Page 2

C.    GARY EVAN SIVAK, M.D., is applying for reinstatement of his license to practice medicine and surgery in the State of Ohio, which was suspended pursuant to the terms of the above referenced April 1998 Consent Agreement.

D.    GARY EVAN SIVAK, M.D., STATES and THE STATE MEDICAL BOARD OF OHIO ACKNOWLEDGES that DOCTOR SIVAK has complied with the reinstatement conditions as set forth in his April 1998 Consent Agreement.

E.    Pursuant to paragraph 9.b.iii. of the April 1998 Consent Agreement, DOCTOR SIVAK obtained the following evaluations from Board approved treatment providers:

1.    In April 1998, DOCTOR SIVAK was evaluated by Chris Adelman, M.D., of St. Vincent Charity Hospital, in Cleveland, Ohio. In his report, Dr. Adleman opined that DOCTOR SIVAK is capable of practicing medicine according to acceptable and prevailing standards of care. Further, Dr. Adelman's recommendations for DOCTOR SIVAK's treatment and monitoring program included abstinence from mood altering chemicals; continued psychiatric therapy; attendance at three AA meetings per week; and participation in monitoring with the Ohio Physicians Effectiveness Program;

2.    In May 1998, DOCTOR SIVAK was evaluated by Gregory Collins, M.D., of The Cleveland Clinic Foundation, in Cleveland, Ohio. In his report, Dr. Collins opined that DOCTOR SIVAK is stable in his sobriety; is actively engaged in a treatment and recovery program; and is capable of practicing medicine according to acceptable and prevailing standards of care. Further, Dr. Collins recommended that the Board approve as appropriate and satisfactory, DOCTOR SIVAK's 1996 inpatient treatment at The Betty Ford Clinic in Rancho Mirage, California. Further, Dr. Collins' recommendations for DOCTOR SIVAK's treatment and monitoring program included random weekly urine drug screens; weekly attendance at The Cleveland Clinic Caduceus Group; ingestion of Naltrexone on a daily basis for a minimum of two years; and attendance at three support group meetings per week.

F.    DOCTOR SIVAK further STATES and THE STATE MEDICAL BOARD OF OHIO ACKNOWLEDGES that on June 26, 1998,

MCKMDL00568208

STEP TWO AGREEMENT
GARY EVAN SIVAK, M.D.
Page 3

DOCTOR SIVAK entered into a three year advocacy contract with the
Ohio Physicians Effectiveness Program.

## AGREED CONDITIONS

Wherefore, in consideration of the foregoing and mutual promises hereinafter set forth,
and in lieu of any formal proceedings at this time, the certificate of GARY EVAN
SIVAK, M.D., to practice medicine and surgery in the State of Ohio shall be reinstated,
and GARY EVAN SIVAK, M.D., knowingly and voluntarily agrees with THE STATE
MEDICAL BOARD OF OHIO, (hereinafter BOARD), to the following
PROBATIONARY terms, conditions and limitations:

1.    DOCTOR SIVAK shall obey all federal, state and local laws, and all
      rules governing the practice of medicine in Ohio;

2.    DOCTOR SIVAK shall submit quarterly declarations under penalty of
      BOARD disciplinary action or criminal prosecution, stating whether
      there has been compliance with all the conditions of this CONSENT
      AGREEMENT. The first quarterly declaration must be received in the
      Board's offices on the first day of the third month following the month in
      which the consent agreement becomes effective, provided that if the
      effective date is on or after the 16th day of the month, the first quarterly
      declaration must be received in the Board's offices on the first day of the
      fourth month following.  Subsequent quarterly declarations must be
      received in the BOARD's offices on or before the first day of every third
      month;

3.    DOCTOR SIVAK shall appear in person for quarterly interviews before
      the BOARD or its designated representative, or as otherwise directed by
      the BOARD.

      If an appearance is missed or is rescheduled for any reason, ensuing
      appearances shall be scheduled based on the appearance date as
      originally scheduled. (Example: The first quarterly appearance is
      scheduled for February, but based upon the doctor's serious personal
      illness he is permitted to delay appearance until April. The next
      appearance will still be scheduled for May, three months after the
      appearance as originally scheduled.) Although the BOARD will
      normally give DOCTOR SIVAK written notification of scheduled
      appearances, it is DOCTOR SIVAK's responsibility to know when
      personal appearances will occur.  If he does not receive written
      notification from the BOARD by the end of the month in which the

MCKMDL00568209

STEP TWO AGREEMENT
GARY EVAN SIVAK, M.D.
Page 4

appearance should have occurred, DOCTOR SIVAK shall immediately submit to the BOARD a written request to be notified of his next scheduled appearance;

4.    In the event that DOCTOR SIVAK should leave Ohio for three (3) continuous months, or reside or practice outside the State, DOCTOR SIVAK must notify the BOARD in writing of the dates of departure and return. Periods of time spent outside Ohio will not apply to the reduction of this period under the CONSENT AGREEMENT, unless otherwise determined by motion of the BOARD in instances where the BOARD can be assured that probationary monitoring is otherwise being performed;

5.    In the event DOCTOR SIVAK is found by the Secretary of the BOARD to have failed to comply with any provision of this CONSENT AGREEMENT, and is so notified of that deficiency in writing, such period(s) of noncompliance will not apply to the reduction of the probationary period under the CONSENT AGREEMENT;

### MONITORING OF REHABILITATION AND TREATMENT

#### Drug Associated and Practice Restrictions

6.    DOCTOR SIVAK shall not prescribe any controlled substances in schedules II and III as defined by state or federal law;

DOCTOR SIVAK shall keep a log of all controlled substances prescribed, dispensed or administered. Such log shall be submitted in the format approved by the BOARD thirty (30) days prior to DOCTOR SIVAK's personal appearance before the BOARD or its designated representative, or as otherwise directed by the BOARD;

7.    DOCTOR SIVAK shall refrain from self-treating and from treating family members, except in the event of a life-threatening emergency;

#### Sobriety

8.    DOCTOR SIVAK shall abstain completely from the personal use or possession of drugs, except those prescribed, dispensed or administered to him by another so authorized by law who has full knowledge of DOCTOR SIVAK's history of chemical dependency;

9.    DOCTOR SIVAK shall abstain completely from the use of alcohol;

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

STEP TWO AGREEMENT
GARY EVAN SIVAK, M.D.
Page 5

## Drug and Alcohol Screens/Supervising Physician

10. DOCTOR SIVAK shall submit to random urine screenings for drugs and alcohol on a weekly basis or as otherwise directed by the BOARD. DOCTOR SIVAK shall ensure that all screening reports are forwarded directly to the BOARD on a quarterly basis. The drug testing panel utilized must be acceptable to the Secretary of the Board;

Within thirty (30) days of the effective date of this CONSENT AGREEMENT, DOCTOR SIVAK shall submit to the BOARD for its prior approval the name of a supervising physician to whom DOCTOR SIVAK shall submit the required urine specimens. The supervising physician shall ensure that the urine specimens are obtained on a random basis, that the giving of the specimen is witnessed by a reliable person, and that appropriate control over the specimen is maintained. In addition, the supervising physician shall immediately inform the BOARD of any positive screening results;

DOCTOR SIVAK shall ensure that the supervising physician provides quarterly reports to the BOARD, on forms approved or provided by the BOARD, verifying whether all urine screens have been conducted in compliance with this CONSENT AGREEMENT, whether all urine screenings have been negative, and whether the supervising physician remains willing and able to continue in his responsibilities;

In the event that the designated supervising physician becomes unable or unwilling to so serve, DOCTOR SIVAK must immediately notify the BOARD in writing, and make arrangements acceptable to the BOARD for another supervising physician as soon as practicable. DOCTOR SIVAK shall further ensure that the previously designated supervising physician also notifies the BOARD directly of the inability to continue to serve and the reasons therefore,

All screening reports and supervising physician reports required under this paragraph must be received in the BOARD's offices no later than the due date for DOCTOR SIVAK's quarterly declaration. It is DOCTOR SIVAK's responsibility to ensure that reports are timely submitted;

11. The BOARD retains the right to require, and DOCTOR SIVAK agrees to submit, blood or urine specimens for analysis at DOCTOR SIVAK's expense upon the BOARD's request and without prior notice. DOCTOR SIVAK's refusal to submit a blood or urine specimen upon request of the

MCKMDL00568211

STEP TWO AGREEMENT
GARY EVAN SIVAK, M.D.
Page 6

BOARD shall result in a minimum of one year of actual license
suspension;

## Monitoring Physician

12. Within thirty (30) days of the effective date of this CONSENT
AGREEMENT, DOCTOR SIVAK shall submit for the BOARD's prior
approval the name of a monitoring physician, who shall monitor
DOCTOR SIVAK and provide the BOARD with quarterly reports on the
doctor's progress and status. DOCTOR SIVAK shall ensure that such
reports are forwarded to the BOARD on a quarterly basis. In the event
that the designated monitoring physician becomes unable or unwilling to
serve in this capacity, DOCTOR SIVAK must immediately so notify the
BOARD in writing, and make arrangements acceptable to the BOARD
for another monitoring physician as soon as practicable. DOCTOR
SIVAK shall further ensure that the previously designated monitoring
physician also notifies the BOARD directly of the inability to continue to
serve and the reasons therefore.

All monitoring physician reports required under this paragraph must be
received in the BOARD's offices no later than the due date for DOCTOR
SIVAK's quarterly declaration. It is DOCTOR SIVAK's responsibility
to ensure that reports are timely submitted;

## Rehabilitation Program

13. Within thirty (30) days of the effective date of this CONSENT
AGREEMENT, DOCTOR SIVAK shall undertake and maintain
participation in an alcohol and drug rehabilitation program, such as A.A.,
N.A., or Caduceus, no less than three (3) times per week. Substitution of
any other specific program must receive prior Board approval;

DOCTOR SIVAK shall submit with each quarterly declaration required
under Paragraph 2 of this CONSENT AGREEMENT acceptable
documentary evidence of continuing compliance with this program;

## Psychiatric Treatment

14. Within thirty (30) days of the effective date of this CONSENT
AGREEMENT, DOCTOR SIVAK shall submit to the BOARD for its
prior approval the name and qualifications of a psychiatrist and/or
psychologist of his choice. Any Board approval of a psychologist must
also include the approval of a psychiatrist who will supervise the

MCKMDL00568212

STEP TWO AGREEMENT
GARY EVAN SIVAK, M.D.
Page 7

treatment rendered by the psychologist. Upon approval by the BOARD, DOCTOR SIVAK shall undergo and continue psychiatric treatment weekly or as otherwise directed by the BOARD. DOCTOR SIVAK shall ensure that psychiatric reports are forwarded by his treating psychiatrist and/or psychologist to the BOARD on a quarterly basis, or as otherwise directed by the BOARD. It is DOCTOR SIVAK's responsibility to ensure that quarterly reports are received in the BOARD's offices no later than the due date for DOCTOR SIVAK's quarterly declaration;

## Aftercare

15. DOCTOR SIVAK shall maintain continued compliance with the terms of the aftercare contract entered into with his treatment provider, provided that where terms of the aftercare contract conflict with terms of this CONSENT AGREEMENT, the terms of this CONSENT AGREEMENT shall control;

   DOCTOR SIVAK shall consult with and follow the directions of Gregory Collins, M.D., of The Cleveland Clinic Foundation, regarding Dr. Collins' recommendation that DOCTOR SIVAK ingest Naltrexone on a daily basis for a period of two years. In the event that Dr. Collins is no longer participating in DOCTOR SIVAK's treatment program, DOCTOR SIVAK shall immediately consult with another physician affiliated with a board approved treatment provider to obtain a recommendation for the use of Naltrexone as a component of DOCTOR SIVAK's recovery program;

## Releases

16. DOCTOR SIVAK shall provide continuing authorization, through appropriate written consent forms, for disclosure by his treatment provider to the BOARD, to treating and monitoring physicians, and to others involved in the monitoring process, of information necessary for them to fulfill their respective duties and obligations;

## Required Reporting by Licensee

17. Within thirty (30) days of the effective date of this CONSENT AGREEMENT, DOCTOR SIVAK shall provide a copy of this CONSENT AGREEMENT to all employers or entities with which he is under contract to provide physician services or is receiving training; and the Chief of Staff at each hospital where he has privileges or appointments. Further, DOCTOR SIVAK shall provide a copy of this

MCKMDL00568213

STEP TWO AGREEMENT
GARY EVAN SIVAK, M.D.
Page 8

CONSENT AGREEMENT to all employers or entities with which he contracts to provide physician services, or applies for or receives training, and the chief of staff at each hospital where he applies for or obtains privileges or appointments; and,

18. Within thirty (30) days of the effective date of this CONSENT AGREEMENT, DOCTOR SIVAK shall provide a copy of this CONSENT AGREEMENT by certified mail, return receipt requested, to the proper licensing authority of any state or jurisdiction in which he currently holds a license to practice. DOCTOR SIVAK further agrees to provide a copy of this CONSENT AGREEMENT by certified mail, return receipt requested, at time of application to the proper licensing authority of any state in which he applies for licensure or reinstatement of licensure. Further, DOCTOR SIVAK shall provide this BOARD with a copy of the return receipt as proof of notification within thirty (30) days of receiving that return receipt.

## FAILURE TO COMPLY

19. Any violation of Paragraph 8 or Paragraph 9 of this Agreement shall constitute grounds to revoke or permanently revoke DOCTOR SIVAK's certificate. DOCTOR SIVAK agrees that the minimum discipline for such a violation shall include actual license suspension. This paragraph does not limit the BOARD's authority to suspend, revoke or permanently revoke DOCTOR SIVAK's certificate based on other violations of this Consent Agreement.

20. DOCTOR SIVAK AGREES that if any declaration or report required by this agreement is not received in the BOARD's offices on or before its due date, DOCTOR SIVAK shall cease practicing beginning the day next following receipt from the BOARD of notice of non-receipt, either by writing, by telephone, or by personal contact until the declaration or report is received in the BOARD offices. Any practice during this time period shall be considered unlicensed practice in violation of Section 4731.41 of the Revised Code.

21. DOCTOR SIVAK AGREES that if, without prior permission from the BOARD, he fails to submit to random screenings for drugs and alcohol at least as frequently as required by Paragraph 10 of this CONSENT AGREEMENT, he shall cease practicing immediately upon receipt from the BOARD of notice of the violation and shall refrain from practicing for thirty (30) days for the first instance of a single missed screen.

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

STEP TWO AGREEMENT
GARY EVAN SIVAK, M.D.
Page 9

Practice during this time period shall be considered unlicensed practice in violation of Section 4731.41 of the Revised Code.

22. DOCTOR SIVAK AGREES that if he fails to participate in an alcohol and drug rehabilitation program at least as frequently as required by Paragraph 13 of this CONSENT AGREEMENT, he shall cease practicing immediately upon receipt from the BOARD of notice of the violation, and shall refrain from practicing for fifteen (15) days following a first missed meeting. Practice during this time period shall be considered unlicensed practice in violation of Section 4731.41 of the Revised Code.

If, in the discretion of the Secretary and Supervising Member of the BOARD, DOCTOR SIVAK appears to have violated or breached any term or condition of this CONSENT AGREEMENT, the BOARD reserves the right to institute formal disciplinary proceedings for any and all possible violations or breaches, including, but not limited to, alleged violations of the laws of Ohio occurring before the effective date of this Agreement.

If the Secretary and Supervising Member of the BOARD determine that there is clear and convincing evidence that DOCTOR SIVAK has violated any term, condition or limitation of this CONSENT AGREEMENT, DOCTOR SIVAK agrees that the violation, as alleged, also constitutes clear and convincing evidence that his continued practice presents a danger of immediate and serious harm to the public for purposes of initiating a summary suspension pursuant to Section 4731.22(D), Ohio Revised Code.

## DURATION/MODIFICATION OF TERMS

This CONSENT AGREEMENT shall remain in force for a minimum of five (5) years prior to any request for termination of said CONSENT AGREEMENT. Otherwise, the above described terms, limitations and conditions may be amended or terminated in writing at any time upon the agreement of both parties.

## ACKNOWLEDGMENTS/LIABILITY RELEASE

DOCTOR SIVAK acknowledges that he has had an opportunity to ask questions concerning the terms of this CONSENT AGREEMENT and that all questions asked have been answered in a satisfactory manner.

Any action initiated by the BOARD based on alleged violations of this CONSENT AGREEMENT shall comply with the Administrative Procedure Act, Chapter 119., Ohio Revised Code.

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

STEP TWO AGREEMENT
GARY EVAN SIVAK, M.D.
Page 10

DOCTOR SIVAK hereby releases THE STATE MEDICAL BOARD OF OHIO, its
members, employees, agents, officers and representatives jointly and severally from any
and all liability arising from the within matter.

This CONSENT AGREEMENT shall be considered a public record as that term is used
in Section 149.43, Ohio Revised Code. Further, this information may be reported to
appropriate organizations, data banks and governmental bodies.

### EFFECTIVE DATE

It is expressly understood that this CONSENT AGREEMENT is subject to ratification
by the BOARD prior to signature by the Secretary and Supervising Member and that it
shall become effective upon the last date of signature below.

GARY EVAN SIVAK, M.D.

ANAND G. GARG, M.D.
Secretary

DATE  8/7/98

DATE  8/12/98

THEODORE WARD, ESQ.
Attorney for Dr. Sivak

RAYMOND J. ALBERT
Supervising Member

DATE  8/7/98

DATE  8/12/98

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

STEP TWO AGREEMENT
GARY EVAN SIVAK, M.D.
Page 11

ANNE B. STRAIT, ESQ.
Assistant Attorney General

DATE

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568217

90 APR -6 AM 10: 19

## CONSENT AGREEMENT
## BETWEEN
## GARY EVAN SIVAK, M.D.
## AND
## THE STATE MEDICAL BOARD OF OHIO

This CONSENT AGREEMENT is entered into by and between GARY EVAN SIVAK, M.D., and THE STATE MEDICAL BOARD OF OHIO, a state agency charged with enforcing Chapter 4731., Ohio Revised Code.

GARY EVAN SIVAK, M.D., enters into this CONSENT AGREEMENT being fully informed of his rights under Chapter 119., Ohio Revised Code, including the right to representation by counsel and the right to a formal adjudicative hearing on the issues considered herein.

## BASIS FOR ACTION

This CONSENT AGREEMENT is entered into on the basis of the following stipulations, admissions and understandings:

A. THE STATE MEDICAL BOARD OF OHIO is empowered by Sections 4731.22(B)(10) and (26), Ohio Revised Code, to limit, revoke, suspend a certificate, refuse to register or reinstate an applicant, or reprimand or place on probation the holder of a certificate for "commission of an act that constitutes a felony in this state regardless of the jurisdiction in which the act was committed" and "impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice."

B. THE STATE MEDICAL BOARD OF OHIO enters into this CONSENT AGREEMENT in lieu of formal proceedings based upon the violation of Sections 4731.22(B)(10) and (26), Ohio Revised Code, as set forth in Paragraph D below, and expressly reserves the right to institute formal proceedings based upon any other violations of Chapter 4731. of the Revised Code, whether occurring before or after the effective date of this Agreement.

C. GARY EVAN SIVAK, M.D., is licensed to practice medicine and surgery in the State of Ohio.

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00568218

Step 1 Agreement
GARY EVAN SIVAK, M.D.
Page 2

D.     GARY EVAN SIVAK, M.D., ADMITS that, on or about November 9,
1988, he entered into a minimum two year Consent Agreement (a copy
of which is attached hereto and incorporated herein) with the State
Medical Board of Ohio based upon his impairment of ability to practice
according to acceptable and prevailing standards of care because of
habitual or excessive use or abuse of drugs, alcohol, or other substances
that impair ability to practice. On or about November 14, 1990,
DOCTOR SIVAK was released from the terms of his 1988 Consent
Agreement with the Board.

DOCTOR SIVAK ADMITS that in 1995, he suffered a relapse of his
chemical dependency.

DOCTOR SIVAK STATES that his 1995 relapse occurred after he had
extensive reconstructive spinal surgery for multi-level degenerative
cervical spinal disease at University Hospital in Cleveland, Ohio, in
January 1995.

DOCTOR SIVAK further ADMITS that during the time of his relapse,
he inappropriately prescribed controlled substances, including Schedule
II drugs, in the names of relatives, in order to obtain the drugs for his
own use.

DOCTOR SIVAK further ADMITS that he received inpatient treatment
at the Betty Ford Center from December 4, 1996, until January 19, 1997.

DOCTOR SIVAK further ADMITS that he has been in psychiatric
treatment with Paul Makovitz, M.D., and Diana Santantonio, Ed.S., since
November 1996, and that he has continued to participate in treatment on
a weekly basis since his discharge from the Betty Ford Center in January
1997.

DOCTOR SIVAK further ADMITS that he is not currently in an
aftercare or monitoring program with a board approved treatment
provider, and that his recovery program has not included attendance at
AA, NA, or Caduceus meetings.

DOCTOR SIVAK STATES that his current treatment and recovery
program was approved as an individualized plan of recovery by his
psychiatric treatment providers.

DOCTOR SIVAK further STATES that he has an appointment with Ted
Parran, M.D., of Rosary Serenity Center at St. Vincent Charity Hospital,
a board approved treatment provider in Cleveland, Ohio, on April 2,

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER
MCKMDL00568219

Step 1 Agreement
GARY EVAN SIVAK, M.D.
Page 3

1998, for an evaluation of his current recovery program, and to obtain
Dr. Parran's recommendations for treatment, aftercare, and a monitoring
program.

DOCTOR SIVAK STATES that he voluntarily ceased practicing
medicine in or about November 1996, and that he has not been engaged
in the practice of medicine since that time.

## AGREED CONDITIONS

Wherefore, in consideration of the foregoing and mutual promises hereinafter set forth,
and in lieu of any formal proceedings at this time, GARY EVAN SIVAK, M.D.,
knowingly and voluntarily agrees with THE STATE MEDICAL BOARD OF OHIO,
(hereinafter BOARD), to the following terms, conditions and limitations:

1. The certificate of DOCTOR SIVAK to practice medicine and surgery in
   the State of Ohio shall be SUSPENDED for an indefinite period of time,
   but not less than ninety days;

2. DOCTOR SIVAK shall immediately surrender his United States Drug
   Enforcement Administration certificate;

3. DOCTOR SIVAK shall abstain completely from the personal use or
   possession of drugs, except those prescribed, dispensed or administered
   to him by another so authorized by law who has full knowledge of
   DOCTOR SIVAK's history of chemical dependency;

4. DOCTOR SIVAK shall abstain completely from the use of alcohol;

5. DOCTOR SIVAK shall provide authorization, through appropriate
   written consent forms, for disclosure of evaluative reports, summaries,
   and records, of whatever nature, by any and all parties that provide
   treatment or evaluation for DOCTOR SIVAK's chemical dependency or
   related conditions, or for purposes of complying with the CONSENT
   AGREEMENT, whether such treatment or evaluation occurred before or
   after the effective date of this CONSENT AGREEMENT. The above-
   mentioned evaluative reports, summaries, and records are considered
   medical records for purposes of Section 149.43 of the Ohio Revised
   Code and are confidential pursuant to statute. DOCTOR SIVAK further
   agrees to provide the BOARD written consent permitting any treatment
   provider from whom he obtains treatment to notify the BOARD in the
   event he fails to agree to or comply with any treatment contract or

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00568220

Step 1 Agreement
GARY EVAN SIVAK, M.D.
Page 4

aftercare contract. Failure to provide such consent, or revocation of such consent, shall constitute a violation of this CONSENT AGREEMENT.

6. DOCTOR SIVAK shall submit quarterly declarations under penalty of BOARD disciplinary action or criminal prosecution, stating whether there has been compliance with all the conditions of this CONSENT AGREEMENT. The first quarterly declaration must be received in the Board's offices on the first day of the third month following the month in which the consent agreement becomes effective, provided that if the effective date is on or after the 16th day of the month, the first quarterly declaration must be received in the Board's offices on the first day of the fourth month following. Subsequent quarterly declarations must be received in the BOARD's offices on or before the first day of every third month;

7. DOCTOR SIVAK shall appear in person for quarterly interviews before the BOARD or its designated representative, or as otherwise directed by the BOARD.

   If an appearance is missed or is rescheduled for any reason, ensuing appearances shall be scheduled based on the appearance date as originally scheduled. (Example: The first quarterly appearance is scheduled for February, but based upon the doctor's serious personal illness he is permitted to delay appearance until April. The next appearance will still be scheduled for May, three months after the appearance as originally scheduled.) Although the BOARD will normally give DOCTOR SIVAK written notification of scheduled appearances, it is DOCTOR SIVAK's responsibility to know when personal appearances will occur. If he does not receive written notification from the BOARD by the end of the month in which the appearance should have occurred, DOCTOR SIVAK shall immediately submit to the BOARD a written request to be notified of his next scheduled appearance;

8. DOCTOR SIVAK shall submit to random urine screenings for drugs and alcohol on a weekly basis or as otherwise directed by the BOARD. DOCTOR SIVAK shall ensure that all screening reports are forwarded directly to the BOARD on a quarterly basis. The drug testing panel utilized must be acceptable to the Secretary of the Board;

   Within thirty (30) days of the effective date of this CONSENT AGREEMENT, DOCTOR SIVAK shall submit to the BOARD for its prior approval the name of a supervising physician to whom DOCTOR

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER  MCKMDL00568221

Step 1 Agreement
GARY EVAN SIVAK, M.D.
Page 5

SIVAK shall submit the required urine specimens. The supervising physician shall ensure that the urine specimens are obtained on a random basis, that the giving of the specimen is witnessed by a reliable person, and that appropriate control over the specimen is maintained. In addition, the supervising physician shall immediately inform the BOARD of any positive screening results;

DOCTOR SIVAK shall ensure that the supervising physician provides quarterly reports to the BOARD, on forms approved or provided by the BOARD, verifying whether all urine screens have been conducted in compliance with this CONSENT AGREEMENT, whether all urine screens have been negative, and whether the supervising physician remains willing and able to continue in his responsibilities;

In the event that the designated supervising physician becomes unable to or unwilling to so serve, DOCTOR SIVAK must immediately notify the BOARD in writing, and make arrangements acceptable to the BOARD for another supervising physician as soon as practicable. DOCTOR SIVAK shall further ensure that the previously designated supervising physician also notifies the BOARD directly of the inability to continue to serve and the reasons therefore;

All screening reports and supervising physician reports required under this paragraph must be received in the BOARD's offices no later than the due date for DOCTOR SIVAK's quarterly declaration. It is DOCTOR SIVAK's responsibility to ensure that reports are timely submitted;

9. The BOARD shall not consider reinstatement of DOCTOR SIVAK's certificate to practice medicine and surgery unless and until all of the following conditions are met:

a. DOCTOR SIVAK shall submit an application for reinstatement, accompanied by appropriate fees, if any;

b. DOCTOR SIVAK shall demonstrate to the satisfaction of the BOARD that he can resume practice in compliance with acceptable and prevailing standards of care under the provisions of his certificate. Such demonstration shall include but shall not be limited to the following:

i. Certification from a treatment provider approved under Section 4731.25 of the Revised Code that DOCTOR

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00568222

Step 1 Agreement
GARY EVAN SIVAK, M.D.
Page 6

SIVAK has successfully completed any required inpatient treatment;

ii.    Evidence of continuing full compliance with an aftercare contract or consent agreement;

iii.   Two written reports indicating that DOCTOR SIVAK's ability to practice has been assessed and that he has been found capable of practicing according to acceptable and prevailing standards of care. The reports shall be made by individuals or providers approved by the BOARD for making such assessments and shall describe the basis for this determination.

c.     DOCTOR SIVAK shall enter into a written consent agreement including probationary terms, conditions and limitations as determined by the BOARD or, if the BOARD and DOCTOR SIVAK are unable to agree on the terms of a written CONSENT AGREEMENT, then DOCTOR SIVAK further agrees to abide by any terms, conditions and limitations imposed by Board Order after a hearing conducted pursuant to Chapter 119. of the Ohio Revised Code.

Further, upon reinstatement of DOCTOR SIVAK's certificate to practice medicine and surgery in this state, the BOARD shall require continued monitoring which shall include, but not be limited to, compliance with the written consent agreement entered into before reinstatement or with conditions imposed by Board Order after a hearing conducted pursuant to Chapter 119. of the Revised Code and, upon termination of the consent agreement or Board Order, submission to the BOARD for at least two years of annual progress reports made under penalty of BOARD disciplinary action or criminal prosecution stating whether DOCTOR SIVAK has maintained sobriety.

10.    In the event that DOCTOR SIVAK has not been engaged in the active practice of medicine and surgery for a period in excess of two years prior to application for reinstatement, the BOARD may exercise its discretion under Section 4731.222, Ohio Revised Code, to require additional evidence of DOCTOR SIVAK's fitness to resume practice.

11.    Within thirty (30) days of the effective date of this Agreement, DOCTOR SIVAK shall provide a copy of this CONSENT

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568223

AGREEMENT by certified mail, return receipt requested, to the proper licensing authority of any state or jurisdiction in which he currently holds a license to practice. DOCTOR SIVAK further agrees to provide a copy of this CONSENT AGREEMENT by certified mail, return receipt requested, at time of application to the proper licensing authority of any state in which he applies for licensure or reinstatement of licensure. Further, DOCTOR SIVAK shall provide this BOARD with a copy of the return receipt as proof of notification within thirty (30) days of receiving that return receipt.

12. Within thirty (30) days of the effective date of this Agreement, DOCTOR SIVAK shall provide a copy of this CONSENT AGREEMENT to all employers or entities with which he is under contract to provide physician services or is receiving training; and the Chief of Staff at each hospital where he has privileges or appointments.

The above described terms, conditions and limitations may be amended or terminated in writing at any time upon the agreement of both parties.

If, in the discretion of the Secretary and Supervising Member of THE STATE MEDICAL BOARD OF OHIO, DOCTOR SIVAK appears to have violated or breached any term or condition of this Agreement, THE STATE MEDICAL BOARD OF OHIO reserves the right to institute formal disciplinary proceedings for any and all possible violations or breaches, including but not limited to, alleged violations of the laws of Ohio occurring before the effective date of this Agreement.

DOCTOR SIVAK acknowledges that he has had an opportunity to ask questions concerning the terms of this Agreement and that all questions asked have been answered in a satisfactory manner.

Any action initiated by the BOARD based on alleged violations of this CONSENT AGREEMENT shall comply with the Administrative Procedure Act, Chapter 119., Ohio Revised Code.

DOCTOR SIVAK hereby releases THE STATE MEDICAL BOARD OF OHIO, its members, employees, agents, officers and representatives jointly and severally from any and all liability arising from the within matter.

This CONSENT AGREEMENT shall be considered a public record as that term is used in Section 149.43, Ohio Revised Code. It is expressly understood that this CONSENT AGREEMENT is subject to ratification by the BOARD prior to signature by the Secretary and Supervising Member and that it shall become effective upon the last date of signature below.

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00568224

Step I Agreement
GARY EVAN SIVAK, M.D.
Page 8

Further, this information may be reported to appropriate organizations, data banks and
governmental bodies.

GARY E. SIVAK, M.D.

ANAND G. GARG, M.D.
Secretary

4-2-98
DATE

4/9/98
DATE

THEODORE D. WARD, ESQ.
Attorney for Dr. Sivak

RAYMOND J. ALBERT
Supervising Member

4/2/98
DATE

4/8/98
DATE

ANNE B. STRAIT, ESQ.
Assistant Attorney General

4/8/98
DATE

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568225

CONSENT AGREE   T
BETWEEN
GARY EVAN SIVAK, M.D.
AND
THE STATE MEDICAL BOARD OF OHIO

NOV - 7 1988

NOV - = ...

THIS CONSENT AGREEMENT is entered into by and between GARY EVAN SIVAK, M.D. and THE STATE MEDICAL BOARD OF OHIO, a state agency charged with enforcing Chapter 4731., Ohio Revised Code.

GARY EVAN SIVAK, M.D. enters into this Agreement being fully informed of his rights under Chapter 119., Ohio Revised Code, including the right to representation by counsel and the right to a formal adjudicative hearing on the issues considered herein.

This Consent Agreement is entered into on the basis of the following stipulations, admissions and understandings:

A.   THE STATE MEDICAL BOARD OF OHIO, is empowered by Section 4731.22(B), Ohio Revised Code, to limit, revoke, suspend a certificate, refuse to register or reinstate an applicant, or reprimand or place on probation the holder of a certificate for impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice.

B.   THE STATE MEDICAL BOARD OF OHIO enters into this Consent Agreement in lieu of formal proceedings based upon the violation of Section 4731.22(B) and expressly reserves the right to institute formal proceedings based upon any other violations of Chapter 4731 of the Revised Code, whether occurring before or after the effective date of this Agreement.

C.   GARY EVAN SIVAK, M.D. ADMITS that he entered and underwent treatment for his chemical dependency (alcohol) at Ridgeview Institute, Smyrna, Georgia on March 27, 1986 and successfuly completed their program and was discharged on August 30, 1986 with an Aftercare Agreement for twenty (20) months.

WHEREFORE, in consideration of the foregoing and mutual promises hereinafter set forth, it is hereby agreed, by and between the parties, that the STATE MEDICAL BOARD (herinafter BOARD) shall issue a license to practice medicine and surgery to GARY EVAN SIVAK, M.D., subject to the following probationary terms, conditions and limitations:

1.   DOCTOR SIVAK shall obey all federal, state and local laws, and all rules governing the practice of medicine in Ohio.

2.   DOCTOR SIVAK shall abstain completely from the personal use or possession of drugs, except those prescribed, administered, or dispensed to him by another person so authorized by law, who has full knowledge of his history of chemical dependency.

3.   In the event that DOCTOR SIVAK should leave Ohio for three continuous months, or reside or practice outside the State, he must notify the BOARD in writing of the dates of departure and return.  Periods of time spent outside of Ohio will not apply to the reduction of this period under the Consent Agreement.

4.   DOCTOR SIVAK shall submit quarterly declarations under penalty of perjury stating whether there has been compliance with all the conditions of this Consent Agreement.

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MCKMDL00568226

Page Two
Gary Evan Sivak, M.D.
Consent Agreement

NOV - 7 1998

5.  DOCTOR SIVAK shall appear in person for interview before the full BOARD or its designated representative at three (3) month intervals, or as otherwise requested by the BOARD.

6.  Within 30 days of the effective date of this Consent Agreement, DOCTOR SIVAK shall undertake and maintain drug rehabilitation counseling with a psychologist or psychiatrist, as acceptable to the BOARD, and at his own expense. The above mentioned counseling shall be conducted at least one (1) time per month. In the quarterly reports to the BOARD, DOCTOR SIVAK shall provide written documentation by the treating psychologist or psychiatrist stating whether or not DOCTOR SIVAK is complying with the terms of this Agreement.

7.  DOCTOR SIVAK shall have ROBERT S. VANDERVORT, M.D., monitor him and provide the BOARD with reports on the doctor's progress and status. DOCTOR SIVAK is to ensure that said reports are forwarded to the BOARD on a quarterly basis. In the event that ROBERT S. VANDERVORT, M.D. becomes unable or unwilling to serve as the monitoring physician, DOCTOR SIVAK must immediately so notify the BOARD in writing, and make arrangements acceptable to the BOARD for another supervising physician as soon as practicable.

8.  DOCTOR SIVAK shall submit to random urine screenings for drugs on a weekly basis or as otherwise directed by the BOARD. DOCTOR SIVAK is to ensure that all screening reports are forwarded directly to the BOARD on a monthly basis.

    DOCTOR SIVAK shall submit the required urine specimens to a supervising physician to be approved by the BOARD. The supervising physician shall ensure that the urine specimens are obtained on a random basis, that the giving of the specimen is witnessed by a reliable person, and that appropriate control over the specimen is maintained. In the event that the designated supervising physician becomes unable or unwilling to so serve, DOCTOR SIVAK must immediately notify the BOARD in writing, and make arrangements acceptable to the BOARD for another supervising physician as soon as practicable.

    The Board retains the right to require, and DOCTOR SIVAK agrees to submit, blood or urine specimens for analysis upon request and without prior notice.

9.  DOCTOR SIVAK shall register in a log, approved by the BOARD for this purpose, all controlled substances prescribed or dispensed by him in his practice and such log shall be submitted by DOCTOR SIVAK to the BOARD at each appearance or as requested by the BOARD. DOCTOR SIVAK shall not have to register, in a log, controlled substances administered by him in the hospital based practice of anesthesiology.

10. DOCTOR SIVAK shall provide all employers and the Chief of Staff at each hospital where he has or obtains privileges with a copy of this Consent Agreement.

The above described terms, limitations and conditions may be amended or terminated in writing at any time upon the agreement of both parties. However, this Agreement shall remain in force for a period of two (2) years prior to any request for termination of said Agreement.

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00568227

Page 2...ee
Gary Evan Sivak, M.D.
Consent Agreement

If, in the discretion of the Secretary of THE STATE MEDICAL BOARD OF
OHIO, GARY EVAN SIVAK, M.D. appears to have violated or breached any
terms or conditions of this Agreement, THE STATE MEDICAL BOARD OF OHIO
reserves the right to institute formal disciplinary proceedings for any
and all possible violations or breaches, including but not limited to,
alleged violations of the laws of Ohio occurring before the effective
date of this Agreement.

Any action initiated by the BOARD based on alleged violations of this
Consent Agreement shall comply with the Administrative Procedure Act,
Chapter 119., Ohio Revised Code.

GARY EVAN SIVAK, M.D. hereby releases THE STATE MEDICAL BOARD OF OHIO,
its Members, Employees, Agents, Officers and Representatives jointly
and severally from any and all liability arising from the within
matter.

This CONSENT AGREEMENT shall be considered a public record as that term
is used in Section 149.43, Ohio Revised Code.

The terms and conditions of this Agreement shall become effective
immediately upon the last date of signature below.

_____          _____
GARY EVAN SIVAK, M.D.                     HENRY G. CRAMBLETT, M.D.
                                          Secretary

_____
      11-4-88
       DATE                                    11/9/88
                                                DATE

                                          _____
                                          JOHN E. RAUCH, D.O.
                                          Supervising Member

                                               11/9/88
                                                DATE

                                          _____
                                          CHRISTOPHER M. CULLEY, Esquire
                                          Assistant Attorney General

                                               11-9-88
                                                DATE

HIGHLY CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                     MCKMDL00568228

GIANT EAGLE 5874

MCKMDL00568229

**MCKESSON**

*Empowering Healthcare*

# <u>Threshold Change Form</u>

Immediate Change Request  Y/N<u>Y</u>        Anticipated Effective Date:<u>5/28/08</u>

Date:<u>5/28/08</u>

Customer Name:    <u>GIANT EAGLE #5874</u>
Address:               <u>10950 LORAIN RD</u>
                           <u>CLEVELAND</u>
                           <u>OH 44111</u>
DEA number: ▓▓▓▓▓
Customer Account number:<u>818121</u>

Provide Economost number, Description, NDC or Base Code        Change in selling unit or percentage
1.  CS requested:<u>9193 - HYDROCODONE</u>                                    Increase amount_____
2.  CS requested:_                            Increase amount_____
3.  CS requested:_____                     Increase amount_____
4.  CS requested:_____                     Increase amount_____
5.  CS requested:_____                     Increase amount_____

Reason for change (attach supporting documentation):
rna - REASONABLE REQUEST FOR A SMALL INREASE PER REX CATTON

McKesson use only
1.  Date of last site visit/observation._____
2.  Questionnaire and Declaration on file?          Date:_____
3.  Permanent or Temporary threshold change?
4.  Has threshold been changed on the same product within the last three months?

Current Threshold
1.
2.
3.
4.
5.

Denied By: _____                                    Date: _____

**Approved by:**

DCM *Diane Snider*                            Date: *5/28/08*

Sales _____                                        Date: _____

Regulatory <u>DAVE GUSTIN</u>                            Date: <u>5/28/08</u>

TCR Giant Eagle 5103 052808

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                            MCKMDL00568230

**Martin, Diane**

| | |
|---|---|
| **From:** | Gustin, Dave |
| **Sent:** | Monday, September 22, 2008 12:12 PM |
| **To:** | Martin, Diane |
| **Cc:** | Snider, Blaine; Catton, Rex |
| **Subject:** | RE: New Castle CSMP report 75%+ 5/28/08 |

**Reason......RNA reasonable request for a small increase.  Per Rex Catton.**

```
Confidentiality Notice: This e-mail message, including any attachments, is for the sole
use of the intended recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not
the intended recipient, please contact the sender by reply e-mail and destroy all copies
of the original message.

Dave Gustin, DRA North Central Region

cell 937 402 0834
```

---

**From:** Martin, Diane
**Sent:** Monday, September 22, 2008 9:46 AM
**To:** Gustin, Dave
**Cc:** Snider, Blaine; Catton, Rex
**Subject:** FW: New Castle CSMP report 75%+ 5/28/08

Dave,

Since these were bumped up without a TCR in late May, what is the reason for the increase in dosages?  I'll have to create some sort of TCR for each of them and will need some details for the action taken.

Thanks

*Diane Martin*
McKesson - New Castle
724-924-8010

---

**From:** Gustin, Dave
**Sent:** Friday, September 19, 2008 8:34 AM
**To:** Martin, Diane
**Subject:** FW: New Castle CSMP report 75%+ 5/28/08

```
Confidentiality Notice: This e-mail message, including any attachments, is for the
sole use of the intended recipient(s) and may contain confidential and privileged
information.  Any unauthorized review, use, disclosure or distribution is
prohibited.  If you are not the intended recipient, please contact the sender by
reply e-mail and destroy all copies of the original message.
```
1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568231



Dave Gustin, DRA North Central Region

cell 937 402 0834

---

**From:** Gustin, Dave
**Sent:** Wednesday, May 28, 2008 11:51 AM
**To:** Gustin, Dave; Catton, Rex; Oriente, Michael; Snider, Blaine
**Cc:** Zwick, Joel; Lindsay, Telisca; McIntyre, Keith
**Subject:** RE: New Castle CSMP report 75%+ 5/28/08

The list, by the way, is a long one.  << File: CSMP Threshold Warning Report.txt >>
I need a reason to go in and bump all those stores thresholds. They are all purchasing at well past their historic
trends or they would not be on the report. The question is why and until it is answered the response should not just
be going in and changing their thresholds to keep them off the report.  (especially if it is a knee-jerk reaction to the
issues out of Conroe and Lakeland)
I am at 740 636 3540 this week.
Confidentiality Notice: This e-mail message, including any attachments, is for the
sole use of the intended recipient(s) and may contain confidential and privileged
information.  Any unauthorized review, use, disclosure or distribution is
prohibited.  If you are not the intended recipient, please contact the sender by
reply e-mail and destroy all copies of the original message.

Dave Gustin, DRA North Central Region

cell 937 402 0834

---

**From:** Catton, Rex
**Sent:** Wednesday, May 28, 2008 10:35 AM
**To:** Gustin, Dave; Oriente, Michael; Snider, Blaine
**Cc:** Zwick, Joel; Lindsay, Telisca
**Subject:** RE: New Castle CSMP report 75%+ 5/28/08

Dave,

Yes, please bump it up.  There were other stores on the list that was sent yesterday.  We spoke to
Greg Carlson yesterday and he asked us to increase those above 80%.

T anks

ex

---

**From:**      Gustin, Dave
**Sent:**      Wednesday, May 28, 2008 9:28 AM
**To:**        Oriente, Michael; Snider, Blaine; Catton, Rex
**Cc:**        Zwick, Joel
**Subject:**   RE: New Castle CSMP report 75%+ 5/28/08

Rex, I await your input.  I can bump it if you agree to a small bump.  I know RNA should make
the contact initially but it looks like the customer called the DC so let me know.

Confidentiality Notice: This e-mail message, including any
attachments, is for the sole use of the intended recipient(s) and may
contain confidential and privileged information.  Any unauthorized

2

                MCKMDL00568232

GIANT EAGLE 0357

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568233



**M\*KESSON**

*Empowering Healthcare*

# __Threshold Change Form__

Immediate Change Request  Y/N<u>Y</u>          Anticipated Effective Date:<u>7/18/08</u>

Date:<u>7/17/08</u>

Customer Name:    <u>Giant Eagle #0357</u>
Address:            <u>8201 Day Dr</u>
                   <u>Parma, OH  44129</u>

DEA number: ▊▊▊▊▊▊
Customer Account number:<u>833688</u>

<u>Provide Economost number, Description, NDC or Base Code</u>     <u>Change in selling unit or percentage</u>
1.  CS requested:<u>Hydrocodone</u>                    Increase amount<u>20%</u>
2.  CS requested:<u>＿＿＿</u>                 Increase amount<u>＿＿＿</u>
3.  CS requested:<u>＿＿＿</u>                 Increase amount<u>＿＿＿</u>
4.  CS requested:<u>＿＿＿</u>                 Increase amount<u>＿＿＿</u>
5.  CS requested:<u>＿＿＿</u>                 Increase amount<u>＿＿＿</u>

Reason for change (attach supporting documentation):
This store volume is up over 55% with additional scripts for Hydrocodone.

<u>McKesson use only</u>
1.  Date of last site visit/observation.<u>＿＿＿</u>
2.  Questionnaire and Declaration on file?        Date:<u>＿＿＿</u>
3.  Permanent or Temporary threshold change?
4.  Has threshold been changed on the same product within the last three months?

Current Threshold
   1.
   2.
   3.
   4.
   5.

Denied By:  <u>＿＿＿</u>                         Date:  <u>＿＿＿</u>

**Approved by:**

DCM*Elaine Snader*                          Date: *7/18/08*

Sales <u>＿＿＿</u>                              Date: <u>＿＿＿</u>

Regulatory <u>＿＿＿</u>                         Date: <u>＿＿＿</u>

Giant Eagle 0357 - Threshold Increase Request (2)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                               MCKMDL00568234

**Martin, Diane**

| | |
|---|---|
| **From:** | Snider, Blaine |
| **Sent:** | Monday, August 18, 2008 5:42 PM |
| **To:** | Martin, Diane |
| **Subject:** | FW: CSMP: Giant Eagle Threshold Report 7/16 |
| **Attachments:** | Giant Eagle 0357 - Threshold Increase Request (2).doc; Giant Eagle 1620 - Threshold Increase Request (2).doc; Giant Eagle 6523 - Threshold Increase Request (2).doc; Giant Eagle 5878 - Threshold Increase Request (2).doc; Giant Eagle 6528 - Threshold Increase Request (2).doc |

Files for each store and copies please for me to sign.

**Blaine Snider**
**Director of Operations**
**New Castle, Pa**
**724.924.9959**
**blaine.snider@mckesson.com**

**From:** Gustin, Dave
**Sent:** Monday, August 18, 2008 4:24 PM
**To:** Snider, Blaine; Oriente, Michael; Klimek, Jim; Shadburn, Denise
**Subject:** FW: CSMP: Giant Eagle Threshold Report 7/16

For the RNA files

```
Confidentiality Notice: This e-mail message, including any attachments, is for the
sole use of the intended recipient(s) and may contain confidential and privileged
information.  Any unauthorized review, use, disclosure or distribution is
prohibited.  If you are not the intended recipient, please contact the sender by
reply e-mail and destroy all copies of the original message.

Dave Gustin, DRA North Central Region

cell 937 402 0834
```

**From:** Lindsay, Telisca
**Sent:** Thursday, July 17, 2008 10:47 AM
**To:** Gustin, Dave
**Cc:** Thomet, Elaine; Maza, Sylvia
**Subject:** CSMP: Giant Eagle Threshold Report 7/16

Hello Dave,

Please see the attached CSMP Threshold increase requests from Greg Carlson at Giant Eagle.

8/27/2008

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568235

Thanks,


**Telisca Lindsay**
Account Manager, RNA Support Solutions

**McKesson Corporation**
1220 Senlac Drive
Carrollton, TX 75006

972.389.5906 Tel
972.446.5493 Fax
214.552.4247 Cell
telisca.lindsay@mckesson.com

**www.mckesson.com**

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.

8/27/2008

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MCKMDL00568236

**MCKESSON**

*Empowering Healthcare*

# <u>Threshold Change Form</u>

Immediate Change Request  Y/N<u>Y</u>          Anticipated Effective Date:<u>10/02/08</u>

Date:<u>10/02/08</u>

Customer Name:    <u>GIANT EAGLE #0357</u>
Address:              <u>8201 DAY DR</u>
                          <u>PARMA,OH</u>
                          <u>44129</u>
DEA number: ▮▮▮▮▮
Customer Account number:<u>833688</u>

<u>Provide Economost number, Description, NDC or Base Code</u>      <u>Change in selling unit or percentage</u>

1.  CS requested:<u>9193</u>                    Increase amount<u>10%</u>
2.  CS requested:<u>_____</u>                   Increase amount<u>_____</u>
3.  CS requested:<u>_____</u>                   Increase amount<u>_____</u>
4.  CS requested:<u>_____</u>                   Increase amount<u>_____</u>
5.  CS requested:<u>_____</u>                   Increase amount<u>_____</u>

Reason for change (attach supporting documentation):
Per Donald M. Casar, RPh, Manager, Quality Assurance and Compliance (412-963-5225) please increase
due to the business has increased substantially overy the last few months

<u>McKesson use only</u>
   1.  Date of last site visit/observation.<u>_____</u>
   2.  Questionnaire and Declaration on file?          Date:<u>_____</u>
   3.  Permanent or Temporary threshold change?Permanent
   4.  Has threshold been changed on the same product within the last three months?

Current Threshold
   1.
   2.
   3.
   4.
   5.

Denied By:  _____                              Date: _____

**Approved by:**

DCM~~Elaine Snider~~                           Date: <u>19/7/08</u>

Sales _____                                    Date: _____

Giant Eagle #0357_dc 9193_10 02 08

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                            MCKMDL00568237

**MᶜKESSON**

*Empowering Healthcare*

Regulatory _____                              Date:  _____

Giant Eagle #0357_dc 9193_10 02 08

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                              MCKMDL00568238

## Martin, Diane

| | |
|---|---|
| **From:** | Snider, Blaine |
| **Sent:** | Tuesday, October 07, 2008 6:20 AM |
| **To:** | Martin, Diane |
| **Cc:** | Nusser, Dale |
| **Subject:** | FW: CSMP Threshold - Giant Eagle |
| **Attachments:** | Giant Eagle #6537_dc 9193_10 02 08.doc; Giant Eagle #0357_dc 9193_10 02 08.doc; Giant Eagle #0465_dc 9193_10 02 08.doc; Giant Eagle #2492_dc 9193_10 02 08.doc |

Fyi

**Blaine Snider**
Director of Operations
New Castle, Pa
724.924.9959
blaine.snider@mckesson.com

**From:** Gustin, Dave
**Sent:** Thursday, October 02, 2008 7:31 PM
**To:** Snider, Blaine; Klimek, Jim
**Cc:** Cook, Sabrina; Jonas, Tracy; Oriente, Michael; Shadburn, Denise
**Subject:** FW: CSMP Threshold - Giant Eagle

These increases are done. Thx
For you files, sign and file please guys.

Confidentiality Notice: This e-mail message, including any attachments, is for the
sole use of the intended recipient(s) and may contain confidential and privileged
information.  Any unauthorized review, use, disclosure or distribution is
prohibited.  If you are not the intended recipient, please contact the sender by
reply e-mail and destroy all copies of the original message.

Dave Gustin, DRA North Central Region

cell 937 402 0834

**From:** Cook, Sabrina
**Sent:** Thursday, October 02, 2008 1:06 PM
**To:** Gustin, Dave
**Cc:** Bishop, Micheal; Thomet, Elaine
**Subject:** CSMP Threshold - Giant Eagle

Dave:

Please see attached threshold increases request. Thanks.

10/7/2008

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**Sabrina Cook**
**Account Manager/RNA Support Solutions**


**McKesson Corporation**
1220 Senlac Drive
Carrollton, Texas 75006

972.446.4563 Tel
972.446-5493 Fax
800.369.0039 Toll
214.552.4257 Cell

Sabrina.Cook@McKesson.com
www.mckesson.com

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended
recipients and may contain confidential and/or privileged information.  Any unauthorized review, use, disclosure or
distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail, delete
this message and destroy all copies thereof.

10/7/2008

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568240



**McKESSON**

*Empowering Healthcare*

# <u>Threshold Change Form</u>

Immediate Change Request  Y/N<u>Y</u>          Anticipated Effective Date:<u>11/21/08</u>

Date:<u>11/21/08</u>

Customer Name:   <u>GIANT EAGLE #0357</u>
Address:            <u>8201 DAY DR</u>
                    <u>PARMA, OH</u>
                    <u>44129</u>
DEA number ▮▮▮▮▮▮▮
Customer Account number:<u>833688</u>

<u>Provide Economost number, Description, NDC or Base Code</u>     <u>Change in selling unit or percentage</u>
1.  CS requested:<u>2882</u>                    Increase amount<u>20%</u>
2.  CS requested:_____                   Increase amount_____
3.  CS requested:_____                   Increase amount_____
4.  CS requested:_____                   Increase amount_____
5.  CS requested:_____                   Increase amount_____

Reason for change (attach supporting documentation):
Per Gregory Carlson, Director Pharmacy Sourcing, 412-963-2564 please increase due to volume growth.

McKesson use only
   1.  Date of last site visit/observation._____
   2.  Questionnaire and Declaration on file?            Date:_____
   3.  Permanent or Temporary threshold change?Permanent
   4.  Has threshold been changed on the same product within the last three months?Y

Current Threshold
   1.
   2.
   3.
   4.
   5.

Denied By: _____                              Date: _____

**Approved by:**

DCM *Glen Sandu*                             Date: *11-21/08*

Sales _____                                  Date: _____

Regulatory _____                             Date: _____

TCR Giant Eagle 0357 112108

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## Martin, Diane

| | |
|---|---|
| **From:** | Snider, Blaine |
| **Sent:** | Monday, November 24, 2008 8:31 AM |
| **To:** | Martin, Diane; Nusser, Dale |
| **Subject:** | FW: Giant Eagle CSMP Thresholds |
| **Attachments:** | Giant Eagle #0224 cs9143_11 21 08.doc; Giant Eagle #0230 cs9193_11 21 08.doc; Giant Eagle #0488 cs9143_11 21 08.doc; Giant Eagle #0357 cs2882_11 21 08.doc |

Diane- pls file for me after I sign.


**Blaine Snider**
**Director of Operations**
**New Castle, Pa**
724.924.9959
blaine.snider@mckesson.com

**From:** Gustin, Dave
**Sent:** Friday, November 21, 2008 3:44 PM
**To:** Snider, Blaine
**Cc:** Oriente, Michael; de Gutierrez-Mahoney, Bill; Thomet, Elaine; Bishop, Micheal
**Subject:** FW: Giant Eagle CSMP Thresholds

## Done, please sign and file. thx


```
Confidentiality Notice: This e-mail message, including any attachments, is for the
sole use of the intended recipient(s) and may contain confidential and privileged
information.  Any unauthorized review, use, disclosure or distribution is
prohibited.  If you are not the intended recipient, please contact the sender by
reply e-mail and destroy all copies of the original message.


Dave Gustin, DRA North Central Region


cell 937 402 0834
```

---

**From:** Cook, Sabrina
**Sent:** Friday, November 21, 2008 3:11 PM
**To:** Gustin, Dave; de Gutierrez-Mahoney, Bill
**Cc:** Thomet, Elaine; Bishop, Micheal
**Subject:** FW: Giant Eagle CSMP Thresholds

Team:

Please see attached forms. Thanks.


12/12/2008

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**Sabrina Cook**
**Account Manager/Support Solutions**
972-446-4563 Tel

---

**From:** Carlson, Gregory [mailto:Greg.Carlson@gianteagle.com]
**Sent:** Thursday, November 20, 2008 11:30 AM
**To:** Cook, Sabrina; Casar, Donald
**Subject:** RE: Giant Eagle CSMP Thresholds

Sabrina
All need to be increased by 20%. These stores are all experiencing high volume. 488 have significantly grown due to a remodel and the other two are in Cleveland which is a high growth market for us.

Thanks

---

**From:** Cook, Sabrina [mailto:Sabrina.Cook@McKesson.com]
**Sent:** Thursday, November 20, 2008 12:21 PM
**To:** Carlson, Gregory; Casar, Donald
**Subject:** Giant Eagle CSMP Thresholds

Team:

Please see below for the stores that hit above 80% of their thresholds. If there is a business reason for an increase please let me know. Thanks.

| Home DC | Chain | License | Account | Name | Base Code | Description |
|---|---|---|---|---|---|---|
| 8772 | 431 | [redacted] | 785006 | GIANT EAGLE #0488 | 9143 | OXYCODONE |
| 8772 | 431 | | 647165 | GIANT EAGLE #0230 | 9193 | HYDROCODONE |
| 8772 | 431 | | 833688 | GIANT EAGLE #0357 | 2882 | ALPRAZOLAM |
| 8772 | 431 | | 500218 | GIANT EAGLE #0224 | 9143 | OXYCODONE |

**Sabrina Cook**
**Account Manager/RNA Support Solutions**

**McKesson Corporation**
1220 Senlac Drive
Carrollton, Texas 75006

972.446.4563 Tel
972.446-5493 Fax
800.369.0039 Toll
214.552.4257 Cell

Sabrina.Cook@McKesson.com
www.mckesson.com

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or

distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.

12/12/2008

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568244

**McKESSON**
*Empowering Healthcare*

## CSMP - Observation/Level 1/Documentation Form

### Interview/Observation  Details

Customer Name/Acct #: _G/B # 357    833688_   Date: _12/1/08_  Time: _9:45_

Interviewer/Observer Name: _Joel Zurich_

Interviewer/Observer Title: _ARCOS_    Interviewer/Observer Location (DC): _772 New Castle_

Purpose of Conversation/Observation Location(address): _Oxycodone + APAP_

### Standard Questions (for Level 1)

Question: **Are you aware that you have exceeded your threshold for (item-s)?  If so, can you explain?**
_No_

Question: **Are you currently involved in any internet business or activity?  If so, explain.**

Question: **Have you taken on any new business that would elevate your controlled substance purchases? If so, Explain.**

Question: _____

### Observation/Interview Notes

Notes: _Opening ????? Store Dec 11th More Business Mary Jo Miller_

_( May want increase in threshold )_

CSMP Level 1 observation 5_20_2008.doc

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                MCKMDL00568245

VA Breeksville

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568246


**MⁱKESSON**
*Empowering Healthcare*

# Threshold Change Form

Immediate Change Request Y/NY        Anticipated Effective Date:12-30-2008

Date:12-30-2008

Customer Name:   VA Medical Center
Address:         10000 Brecksville Rd.
                 Brecksville, Ohio 44141

DEA number:▮▮▮▮▮▮
Customer Account number:689100 and 238264

Provide Economost number, Description, NDC or Base Code        Change in selling unit or percentage
1.  CS requested:Pregabalin                    Increase amount20 percent
2.  CS requested:_____                         Increase amount_____
3.  CS requested:_____                         Increase amount_____
4.  CS requested:_____                         Increase amount_____
5.  CS requested:_____                         Increase amount_____

Reason for change (attach supporting documentation):
Threshold is set at 21,000/which needs increased for this customer.  Their monthly purchases trend at
$1,000,000/month.

McKesson use only
    1.  Date of last site visit/observation._____
    2.  Questionnaire and Declaration on file?             Date:_____
    3.  Permanent or Temporary threshold change?Permanent
    4.  Has threshold been changed on the same product within the last three months?No

Current Threshold
    1.  19,820
    2.
    3.
    4.
    5.

Denied By: _____                                       Date: _____

**Approved by:**
DCM *Blaine Snider*                                    Date:*12-30-08*

Sales _____                                            Date: _____

VAMedicalCenterBrecksvillePregabalinThreshold Change Form12302008 (2)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MCKMDL00568247

**MCKESSON**

*Empowering Healthcare*

Regulatory _____                                    Date: _____

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568248

**Martin, Diane**

| | |
|---|---|
| **From:** | de Gutierrez-Mahoney, Bill |
| **Sent:** | Tuesday, December 30, 2008 10:39 AM |
| **To:** | Dorsey, Lisa; Oriente, Michael |
| **Cc:** | Snider, Blaine; Nusser, Dale; Martin, Diane |
| **Subject:** | RE: CSMP New Castle 12/30/08 90% + |

Lisa—
They are complete.

Bill

---

**From:** Dorsey, Lisa
**Sent:** Tuesday, December 30, 2008 9:47 AM
**To:** de Gutierrez-Mahoney, Bill; Oriente, Michael
**Cc:** Snider, Blaine; Nusser, Dale; Martin, Diane; Dorsey, Lisa
**Subject:** FW: CSMP New Castle 12/30/08 90% +
**Importance:** High

Good Morning Bill, with Michael being off today can you please review the attached CSMP threshold change forms? Could you advise once the threshold is changed so that I can notify the customer?

Thanks,
Lisa
 << File: VAMedicalCenterBrecksvillePregabalinThreshold Change Form12302008 (2).doc >>   << File: AultmanHospitalAlprazolamThreshold Change Form12302008 (2).doc >>   << File: NCSEastlakePregabalinThreshold Change Form12302008 (2).doc >>

---

**From:** Oriente, Michael
**Sent:** Tuesday, December 30, 2008 7:43 AM
**To:** Snider, Blaine; Gavatorta, Jim; Dorsey, Lisa; Kuczynski, John; Feigel, Alexandra; Hess, Tom; Bellora, Scott; Thompson, Wendy; Zwick, Joel; Nusser, Dale; Martin, Diane
**Cc:** Smith, Christopher M; de Gutierrez-Mahoney, Bill
**Subject:** CSMP New Castle 12/30/08 90% +

90% +
 << File: New Castle CSMP 123008 90% +.xls >>
Good morning,
I will be on PTO today 12/30 & Wed 12/31.
If you need Regulatory assistance please
contact Bill Mahoney.

Thank you and Happy New Year,


*Michael P. Oriente*

Michael P. Oriente
Director Regulatory Affairs, NE Region
McKesson Pharmaceutical

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    MCKMDL00568249

400 Delran Parkway
Delran, N.J. 08075

Phone: 856-255-2184
Cell: 609-929-5880
Fax 856-461-8064

**Confidentiality Notice:** This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                                      MCKMDL00568250



**Empowering Healthcare**

# Threshold Change Form

Immediate Change Request Y/N<u>Y</u>    Anticipated Effective Date:<u>6/26/09</u>

Date:<u>6/26/09</u>

Customer Name:  <u>VA Medical Center</u>
Address:  <u>10000 Brecksville Rd.</u>
<u>Brecksville, Ohio 44141</u>

DEA number: ▮▮▮▮▮
Customer Account number:<u>689100 and 238264</u>

Provide Economost number, Description, NDC or Base Code     Change in selling unit or percentage
1. CS requested:<u>Pregabalin</u>                    Increase amount<u>20 percent</u>
2. CS requested:_____                          Increase amount_____
3. CS requested:_____                          Increase amount_____
4. CS requested:_____                          Increase amount_____
5. CS requested:_____                          Increase amount_____

Reason for change (attach supporting documentation):
Reached threshold and needs more Lyrica before the end of the month.

McKesson use only
   1. Date of last site visit/observation._____
   2. Questionnaire and Declaration on file?          Date:_____
   3. Permanent or Temporary threshold change?Permanent
   4. Has threshold been changed on the same product within the last three months?No

Current Threshold
   1.  25,200
   2.
   3.
   4.
   5.

Denied By: _____                              Date: _____

**Approved by:**

DCM*Blain Snider*                            Date: 6-26-09

Sales _____                                   Date: _____

Regulatory <u>Michael Oriente</u>                    Date: <u>6/26/09</u>

TCR VA Brecksvl 062609

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00568251

**Martin, Diane**

| | |
|---|---|
| **From:** | Oriente, Michael |
| **Sent:** | Friday, June 26, 2009 10:09 AM |
| **To:** | Martin, Diane; Nusser, Dale |
| **Subject:** | TCR VA Brecksvl 062609.doc |

**Attachments:**  TCR VA Brecksvl 062609.doc

Diane,
Here is the approved and completed VA TCR for pregabalin.

TCR VA Brecksvl
062609.doc (61...

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568252

**McKESSON**
*Empowering Healthcare*

## CSMP - Observation/Level 1/Documentation Form

### Interview/Observation  Details

Customer Name/Acct #:  **VA Hospital Brecksville   238264**        Date:  **6/26/09**      Time:  **10:00AM**

Interviewer/Observer Name:  **Diane Martin**

Interviewer/Observer Title:                                    Interviewer/Observer Location (DC):   **8772**

Purpose of Conversation/Observation Location(address)  **Call on omit on Lyrica**

### Standard Questions (for Level 1)

Question:    **Are you aware that you have exceeded your threshold for (item-s)?  If so, can you explain?**

Yes

Question:    **Are you currently involved in any internet business or activity?  If so, explain.**

Question:    **Have you taken on any new business that would elevate your controlled substance purchases? If so, Explain.**

Question:

### Observation/Interview Notes

Notes:    **Requested a 20% increase in the threshold.  M Oriente approved.**

CSMP Level 1 observation 5_20_2008

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00568253

**McKESSON**

*Empowering Healthcare*

# Threshold Change Form

Date: 7-30-2009

**Temp/Perm?** Permanent      Anticipated Effective Date: 7-30-2009

| **Customer Name:** VA Medical Center Brecksville | **Customer Contact Name:** Richard D'Atri |
|---|---|
| **Address:** 10000 Brecksville Rd Brecksville, Ohio 44141 | **Title:** Pharmacy Manager |
| | **Phone:** (440)526-3030 |
| **DEA number:** ▓▓▓▓▓ | **Has account reached monthly threshold Y/N?** NO |
| | **Has Level One been conducted Y/N?** |
| **Customer Account number:** 689100 and 238264 | |

Provide Economost number, Description or Base Code     Dosage amount or percentage

1. CS requested: PREGABALIN        +/- amount +25%
2. CS requested: _____       +/- amount _____
3. CS requested: _____       +/- amount _____
4. CS requested: _____       +/- amount _____
5. CS requested: _____       +/- amount _____

## Reason for requested change (BE SPECIFIC, include supporting documentation):

Customer needs to increase threshold do to additional patients on drug (prescribed by physician).

McKesson use only
1. Date of last site visit/observation. _____
2. Questionnaire and Declaration on file? ___    Date: _____
3. Permanent or Temporary threshold change? Permanent
4. Has threshold been changed on the same product within the last three months? Yes  If yes, list Dates. 12-2008

Current Threshold
1. 30,200: 97.75%
2.
3.
4.
5.

**Submitted by:**
DC Management _Clair Snider_        Date: 7-30-09

Sales _____        Date: _____

## Approval/Denial Approved by:

Regulatory Michael Oriente        Date: 7/30/09

Threshold Change Form 12_08_08 (6)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER        MCKMDL00568254

**Martin, Diane**

| | |
|---|---|
| **From:** | Oriente, Michael |
| **Sent:** | Thursday, July 30, 2009 11:51 AM |
| **To:** | Martin, Diane; Nusser, Dale |
| **Cc:** | Snider, Blaine; Dorsey, Lisa |
| **Subject:** | Threshold Change Form 12_08_08 (6).doc |

**Attachments:**  Threshold Change Form 12_08_08 (6).doc

## Approved and completed VA TCR.



Threshold Change
Form 12_08_08...

MCKMDL00568255

KLEIN'S 3 680236

SMEAD

MCKMDL00568256

680236
680775

## DECLARATION OF
## CONTROLLED SUBSTANCES PURCHASES

1. Klein's Pharmacy #3 *[pharmacy name]* (hereinafter "Pharmacy") located at 4125 Medina Rd Suite 105 Akron OH *[address, city and state]* is registered with the Drug Enforcement Administration (DEA) ▓▓▓▓▓▓▓ *[DEA registration #]*.

2. Pharmacy declares and attests that it fully complies with all federal and state laws and regulations on the dispensing of controlled substances including but not limited to dispensing to patients only pursuant to a legitimate prescription issued in the course of an established doctor-patient relationship (e.g., pursuant to a physical examination) and only for a legitimate medical purpose.

3. Pharmacy will not knowingly dispense controlled substances for prescriptions that have been received via the internet, mail-order, or other non-walk-in customer where it has reason to believe that the prescription was issued without a legitimate medical purpose.

4. Pharmacy states that its requirements for purchases of Lifestyle Drugs (e.g., hydrocodone, phentermine, alprazolam, oxycodone) from McKesson are necessary for the following reasons: *[please describe the reason for purchasing these drugs in the quantities requested including information about the prescriber and the general purposes for which the drugs are being prescribed.]*

Dr. Scantling ( ▓▓▓▓▓ ) Has Allnew Generic
Pain Managment Practic in office Upstairs
Also See Patient from Falls Pain Managmt Practce
A 7,000 Patient Practice. Dr Bresi ( ▓▓▓▓▓ )
Dr Geigm (Al3170742)

MCKMDL00568257

THERE IS ALSO A SAME DAY SURGERY
CENTER LOCATED NEXT DOOR TO US IN
THE BUILDING.

5. Pharmacy certifies that it has made sufficient inquiry to be able to make this declaration truthfully, accurately and without material omissions. Pharmacy affirms by signing this declaration that the above is true and correct to the best of its knowledge and belief.

_Barry Klein MSM_
Signature

_Barry Klein_
Printed Name of Signer

_President_                    _6/16/08_
Title                         Date

_Blaine Snider, DO_

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**Customer Name:  Klein's Pharmacy # 3**
**McKesson Sales Representative:  John Kuczynski**
**McKesson DC:  New Castle**

**Questionnaire completed:  Barry Klein**
**Affidavit signed:** __×__    *Blaine Snider, DO*
**Regulatory Review:** __×__

**Approved:** _____
**Regional Director Regulatory Affairs**

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568259

# *Pharmacy Questionnaire*

The following information is to be completed by Pharmacy owner and McKesson Sales Representative during on-site evaluation.

☒New Customer      ☐Existing Customer – New Location

## I.    *General Information & Licensing*

a.  Pharmacy Name:  DJ Drug Distributors, Inc.
DBA  Klein's Pharmacy # 3   (if name differs from Corporate name)

b.  Pharmacy Address:  4125 Medina Road,  Suite 105, Akron, OH  44333

c.  Phone:  330-665-8147    Fax:   (330) 665-8147

d.  Pharmacy email address:  bklein@kleinsrx.com

e.  Pharmacy License (Include all states in which licensed)

| State | License # |
|-------|-----------|
| Ohio  | 02-1288050 |
|       |           |
|       |           |

f.  DEA Registration number:  BK8574142

   i.  Does address on registration match pharmacy actual address?
   ☒Yes  ☐No

g.  Pharmacist Licenses
Pharmacist-in-charge (PIC)    (List all states pharmacists licensed)

Owner is PIC ☐

| Name | State | License # |
|------|-------|-----------|
| Mark Ebner | OH | 03-2-19635 |
|      |       |           |
|      |       |           |

Pharmacists

| Name | State | License # |
|------|-------|-----------|
| Charlie Blake | OH | 03-2-13285 |
|      |       |           |
|      |       |           |
|      |       |           |

MCKMDL00568260

## II.    *Ownership/Business History*

a.  Owner Information (complete only if owner differs from PIC)
    Owner(s) name:  Ed Klein & Barry Klein_____
    DBA:  _____
    Address:  _____
    Phone:  _____

b.  Ownership type:
    ☐ Sole Proprietor
    ☒ Corporation, if so State OH
    ☐ Partnership

c.  Number of years owner has operated pharmacy 5 years

d.  Owner operates additional pharmacies ☒ Yes  ☐ No

| Pharmacy Name | Address |
|---|---|
| Klein's Pharmacy | 2015 State Road<br>Cuyahoga Falls, OH  44223 |
| Klein's Community Health Center | 676 South Broadway<br>Akron, OH  44311 |
| | |

e.  History.  Please provide explanation below for any Yes answers.

   i.  Has pharmacy ever had DEA license suspended or revoked?
       ☐ Yes  ☒ No

  ii.  Has pharmacy ever had a state license suspended or revoked?
       ☐ Yes  ☒ No

 iii.  Has pharmacy owner ever had a DEA license suspended or revoked at this location or any other location?
       ☐ Yes  ☒ No

  iv.  Has any pharmacist ever had their state license suspended or revoked and/or been disciplined by any regulatory agency?
       ☐ Yes  ☒ No

   v.  Does the pharmacy have any other registration (wholesale, repackage)?
       ☐ Yes  ☒ No

  vi.  Does pharmacy ship into any states it is not licensed for?
       ☐ Yes  ☒ No

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

vii.  Has any previous wholesaler ceased shipping or restricted purchases of controlled substances?
☐ Yes  ☒ No

Explanation:

## III.  *Business Information*

a.  List wholesale distributors used in last 24 months

| Wholesaler | Primary | Secondary |
|---|---|---|
| McKesson | X | |
| AmerisourceBergen | X | |
| | | |

b.  How does pharmacy receive business, please list percent %
Walk-in <u>50%</u>
Phone <u>35%</u>
Fax <u>15%</u>
Internet _____

c.  Is the pharmacy affiliated with an Internet Website or have it's own site?
If yes, web address <u>www.kleinsrx.com</u>

d.  Does pharmacy download and fill prescriptions from a website?
If yes, web address <u>no</u>

e.  Pain Management Clinics
i.  Does pharmacy provide direct service to or does it receive significant business from Pain Management Clinics?
☒ Yes  ☐ No  If yes, % _____

| Name of Pain Management Clinics | Address | Prescribers Name |
|---|---|---|
| Akron General Pain | 4125 Medina Rd | Scantling |
| | | |

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

f.  Does pharmacy service nursing homes, Long Term Care or hospice
facilities?
☒Yes  ☐No

g.  Is pharmacy located with in a medical center or clinic?
☒Yes  ☐No

h.  Is this a closed door pharmacy?
☐Yes  ☒No

i.  Does pharmacy regularly fill prescriptions written by out of state
providers?
☐Yes  ☒No


## IV.  *Purchasing Information*

a.  Total Estimated Monthly Purchases $ 90,000

b.  Purchase breakdown:
Rx % 98  (including listed chemicals and controlled substance)
Controlled Substance % 9
Listed chemical % <1
Non-Rx (OTC/HBA/DME) % 2

c.  Prescriptions filled per day 85 per month 1800

d.  Method of payment to the pharmacy:
Private Insurance % 42
Medicare/Medicaid % 40
Cash % 18
Other % _____


## V.  *Controlled Substance Purchases*

a.  Estimate dose units (tablets/capsules) underline{dispensed per month} for each of the
following Controlled Substances.  Total of all brand and generic for the
base items.
Hydrocodone 4400          Phentermine 0
Oxycodone 4000            Methadone 1000
Alprazolam 1000

b.  If any of the above is greater than 5000 dose units please provide
information to support purchase levels.

> Explanation:
>
> We are co-located next to a same day surgery center.

## VI.  *Physical Inspection*

a.  General description of pharmacy and surrounding area in which business is located, include condition of the pharmacy.

Pharmacy is located in a Hospital/Medical Clinic.  The pharmacy is well maintained and staffed.

b.  General description of pharmacy customers.

Their customers are generally from the immediate surrounding area.

c.  Does pharmacy have adequate security?

SECURED IN BUILDING THAT 24° Security ON SITE AND Pharmacy IS SECURED E Alarm

Photograph pharmacy outside and inside include front entrance, pharmacy interior, pharmacy counter.

McKesson Sales Representative     *John Reynolds*  10-17-08

*[signature]*  10-17-08

Owner/Pharmacist     *[signature]*     10-17-08

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**McKESSON**
*Empowering Healthcare*

## CSMP - Observation/Level 1/Documentation Form

### Interview/Observation Details

Customer Name/Acct #: __Klein's Pharmacy  #3  680236__  Date: __10-17-08__  Time: __11:30 A__

Interviewer/Observer Name: __Dale Nusser__

Interviewer/Observer Title: __Business process mgr__  Interviewer/Observer Location (DC): __New Castle__

Purpose of Conversation/Observation Location(address): __New Account__

### Standard Questions (for Level 1)

Question: __Are you aware that you have exceeded your threshold for (item-s)?  If so, can you explain?__

__N/A__

Question: __Are you currently involved in any internet business or activity?  If so, explain.__

__NO__

Question: __Have you taken on any new business that would elevate your controlled substance purchases? If so, Explain.__

__NO__

Question:

### Observation/Interview Notes

Notes: __Pharmacy is located inside A Same-day Surgery Center patients released from Surgery have their pain management Scripts filled here before going home.__

CSMP Level 1 observation 5_20_2008

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER  MCKMDL00568265

**Insert Pictures Here/Attach Additional Information**

Applicant evaluation for **[Name]**
Interviewer: **[Name]**
10/13/2008

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568266






CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568267

 **Pharma Regulatory Affairs**  All Sites

| | 🔎 | Advanced Search |

Pharma Regulatory Affairs > Historical Customer TCRs and Other Docs > Klein's Phcy Alt Care - cust serv - cust corresp - Oxycodone - 12/31/10

# Historical Customer TCRs and Other Docs: Klein's Phcy Alt Care - cust serv - cust corresp - Oxycodone - 12/31/10

| 📇 New Item  |  Alert Me |
|---|

| | |
|---|---|
| **Title** | Klein's Phcy Alt Care - cust serv - cust corresp - Oxycodone - 12/31/10 |
| **Submitter Name** | Diane Martin |
| **DC or RNA** | 8772 NewCastle |
| **Customer Name** | Klein's Phcy Alt Care |
| **Customer Contact** | Brad |
| **Contact Title** | |
| **Contact Phone** | |
| **DEA License** | ███████ |
| **Acct Numbers** | 680568 |
| **Doc Type** | Customer Correspondence |
| **Supporting Information** | 85.83% on Oxycodone – no TCR requested |
| **TCR Type** | |
| **Reason for TCR** | |
| **Level 1 Completed** | |
| **Threshold Reached** | |
| **Questionaire on File** | |
| **Date of Last Site Visit or Observation** | |
| **Last TCR Change Date** | |
| **TCR1 Base Ingredient** | |
| **TCR1 Action** | |
| **TCR1 Amount** | |
| **TCR2 Base Ingredient** | |
| **TCR2 Action** | |
| **TCR2 Amount** | |
| **TCR3 Base Ingredient** | |
| **TCR3 Action** | |
| **TCR3 Amount** | |
| **TCR4 Base Ingredient** | |
| **TCR4 Action** | |

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00568268



VALUECARE

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568269

**Martin, Diane**

| | |
|---|---|
| **From:** | Dorsey, Lisa |
| **Sent:** | Wednesday, April 08, 2009 7:59 AM |
| **To:** | Martin, Diane |
| **Subject:** | RE: ValueCare CSMP |

Thanks Diane, you know I was only sent this customers C2 history information and these items fall into class 3,4 or 5.
Lisa

**From:** Martin, Diane
**Sent:** Wednesday, April 08, 2009 7:54 AM
**To:** Dorsey, Lisa
**Subject:** ValueCare CSMP

Lisa,

Please see attached.

Thanks

*Diane Martin*
McKesson - New Castle
724-924-8010

4/8/2009

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568270

04/07/09

| License | Account | Name | Base Code | Description | Monthly Threshold | MTD Accumulator | Threshold % |
|---------|---------|------|-----------|-------------|-------------------|-----------------|-------------|
| | 784769 | GIANT EAGLE #0039 | 9273 | DEXTROPROPOXYPHENE | 8,000.000 | 7,200.000 | 90.00 |
| | 878031 | VALUECARE PHARMACY OTC | 2737 | CLONAZEPAM | 6,000.000 | 5,400.000 | 90.00 |
| | 878031 | VALUECARE PHARMACY OTC | 2885 | LORAZEPAM | 10,000.000 | 9,910.000 | 99.10 |
| | 878031 | VALUECARE PHARMACY OTC | 9193 | HYDROCODONE | 8,000.000 | 7,932.000 | 99.15 |

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568271

VILLAGE GREEN 2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568272

# LDMP Review Sign Off

| Customer Name | VILLAGE GREEN #2 HM |
|---|---|
| Customer DEA# | ███████ |
| Customer Account # | 612135 |
| Customer Type | 01 |

| Exception Date: | 07/31/2007 |
|---|---|
| Exception Item: | OXYCODONE |

### Level I Review Findings

Normal based on volume and size of store and/or history of purchases.

*Blaine Snider*

### Level I Sign Off

| Title | Name | Date | Approve | Inconclusive |
|---|---|---|---|---|
| DCM | BLAINE SNIDER | 08/06/07 | X | |

### Level II Review Findings

### Level II Sign Off

| Title | Name | Date | Approve | Inconclusive |
|---|---|---|---|---|
| DC Mgr | | | | |
| Sales Mgr | | | | |
| VPDO | | | | |
| Reg. Affairs | | | | |

### Level III Review Findings & Conclusions

### Level III Sign Off

| Title | Name | Date | Approve | Inconclusive |
|---|---|---|---|---|
| DC Mgr | | | | |
| Sales Mgr | | | | |
| VPDO | | | | |
| Reg. Affairs | | | | |
| Regional SVP | | | | |
| SVP Operations | | | | |

# LDMP Review Sign Off

| Customer Name | Village Green #2 |
|---|---|
| Customer DEA# | |
| Customer Account # | 612135 |
| Customer Type | Retail |

| Exception Date: | 5/31/2007 |
|---|---|
| Exception Item: | Hydrocodone |

### Level I Review Findings

Normal based on volume and size of store and/or history of purchases.

*Blaine Snider*

| Level I Sign Off | | | | |
|---|---|---|---|---|
| Title | Name | Date | Approve | Inconclusive |
| DCM | Blaine Snider | 6/27/2007 | X | |

### Level II Review Findings

| Level II Sign Off | | | | |
|---|---|---|---|---|
| Title | Name | Date | Approve | Inconclusive |
| DC Mgr | | | | |
| Sales Mgr | | | | |
| VPDO | | | | |
| Reg. Affairs | | | | |

### Level III Review Findings & Conclusions

| Level III Sign Off | | | | |
|---|---|---|---|---|
| Title | Name | Date | Approve | Inconclusive |
| DC Mgr | | | | |
| Sales Mgr | | | | |
| VPDO | | | | |
| Reg. Affairs | | | | |
| Regional SVP | | | | |
| SVP Operations | | | | |

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

GOODYEAR

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568275

# LDMP Review Sign Off

| Customer Name | GOODYEAR |
|---|---|
| Customer DEA# | ■■■■■■■ |
| Customer Account # | 159471 |
| Customer Type | 16 |

| Exception Date: | 11/26/2007 |
|---|---|
| Exception Item: | ALPRAZOLAM |

### Level I Review Findings

Normal based on volume and size of store and/or history of purchases.

*Blaine Snider*

### Level I Sign Off

| Title | Name | Date | Approve | Inconclusive |
|---|---|---|---|---|
| DCM | BLAINE SNIDER | 12/10/07 | X | |

### Level II Review Findings

### Level II Sign Off

| Title | Name | Date | Approve | Inconclusive |
|---|---|---|---|---|
| DC Mgr | | | | |
| Sales Mgr | | | | |
| VPDO | | | | |
| Reg. Affairs | | | | |

### Level III Review Findings & Conclusions

### Level III Sign Off

| Title | Name | Date | Approve | Inconclusive |
|---|---|---|---|---|
| DC Mgr | | | | |
| Sales Mgr | | | | |
| VPDO | | | | |
| Reg. Affairs | | | | |
| Regional SVP | | | | |
| SVP Operations | | | | |

MCKMDL00568276

# LDMP Review Sign Off

| Customer Name | GOODYEAR FAM RX EDI |
|---|---|
| Customer DEA# | |
| Customer Account # | 159471 |
| Customer Type | 16 |

| Exception Date: | 10/22/2007 |
|---|---|
| Exception Item: | HYDROCODONE |

### Level I Review Findings

Normal based on volume and size of store and/or history of purchases.

| Level I Sign Off | | | | |
|---|---|---|---|---|
| Title | Name | Date | Approve | Inconclusive |
| DCM | BLAINE SNIDER | | X | |

### Level II Review Findings

| Level II Sign Off | | | | |
|---|---|---|---|---|
| Title | Name | Date | Approve | Inconclusive |
| DC Mgr | | | | |
| Sales Mgr | | | | |
| VPDO | | | | |
| Reg. Affairs | | | | |

### Level III Review Findings & Conclusions

| Level III Sign Off | | | | |
|---|---|---|---|---|
| Title | Name | Date | Approve | Inconclusive |
| DC Mgr | | | | |
| Sales Mgr | | | | |
| VPDO | | | | |
| Reg. Affairs | | | | |
| Regional SVP | | | | |
| SVP Operations | | | | |

MCKMDL00568277

# LDMP Review Sign Off

| Customer Name | GOODYEAR FAM CTR RX |
|---|---|
| Customer DEA# | ▮▮▮▮▮▮ |
| Customer Account # | 511750 |
| Customer Type | 16 |

| Exception Date: | 10/31/07 |
|---|---|
| Exception Item: | OXYCODONE |

### Level I Review Findings

Normal based on volume and size of store and/or history of purchases.

*Blaine Snider*

### Level I Sign Off

| Title | Name | Date | Approve | Inconclusive |
|---|---|---|---|---|
| DCM | BLAINE SNIDER | 11/06/07 | X | |

### Level II Review Findings

### Level II Sign Off

| Title | Name | Date | Approve | Inconclusive |
|---|---|---|---|---|
| DC Mgr | | | | |
| Sales Mgr | | | | |
| VPDO | | | | |
| Reg. Affairs | | | | |

### Level III Review Findings & Conclusions

### Level III Sign Off

| Title | Name | Date | Approve | Inconclusive |
|---|---|---|---|---|
| DC Mgr | | | | |
| Sales Mgr | | | | |
| VPDO | | | | |
| Reg. Affairs | | | | |
| Regional SVP | | | | |
| SVP Operations | | | | |

**MCKESSON**
*Empowering Healthcare*

## CSMP - Observation/Level 1/Documentation Form

| Interview/Observation Details |
|---|

Customer Name/Acct #: _Goodyear Farm  2705580_  Date: _12-4-08_  Time: _2:20 p_

Interviewer/Observer Name: _Dale Nusser_

Interviewer/Observer Title: _Business process manager_  Interviewer/Observer Location (DC): _New Castle_

Purpose of Conversation/Observation Location(address): _Exceed monthly purch - Oxycodone_

| Standard Questions (for Level 1) |
|---|

Question: **Are you aware that you have exceeded your threshold for (item-s)?  If so, can you explain?**

_Yes - Saw it deducted from order_

Question: **Are you currently involved in any internet business or activity?  If so, explain.**

_No_

Question: **Have you taken on any new business that would elevate your controlled substance purchases?  If so, Explain.**

_large holiday increase of patents_

Question: 

| Observation/Interview Notes |
|---|

Notes:

CSMP Level 1 observation 5_20_2008.doc

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568279

CENTRAL MED ARTS





SMEAD®

No. 153L
UPC 10330

smead.com • Made in USA

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568280

08/21/09

| Customer # | Customer Name | Material # | Material Des. | Qty Ord. | Qty Omiited | Qty to fill | Order Date | Cust. DEA |
|---|---|---|---|---|---|---|---|---|
| 685917 | CENTRAL MEDICAL ART HM | 1435957 | ROXICET TAB 5/325MG ROX 100@ | 12 | 4 | 8 | 20090820 | |

KEYING

ERROR

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00568281