**Exhibit 443** [replacing Dkt. #2357-108] attached to Plaintiffs'
Consolidated Memorandum in Opposition to Defendants' Motions for
Summary Judgment on Plaintiffs' Civil Conspiracy, RICO and OCPA
Claims at Dkt. #2182.

- Redactions withdrawn by Defendant

PSJ3

Exhibit 443

## REMS Update - Request for Review by Dec. 10, 2008

From:

"Ducca, Anita" <aducca@hdmanet.org>

To:

"Ducca, Anita" <aducca@hdmanet.org>

Date:

Wed, 03 Dec 2008 22:22:21 +0000

Attachments:

REMS DRAFT principles v.2.doc (35.84 kB)

DEAR RAC Members:

This is to ask for your review and comment on a draft set of REMS "Principles" so that I might have some talking points and distribution industry perspectives to share at an upcoming meeting of the Pain Care Forum. Your review and response is requested by **COB on Wednesday, Dec. 10** (but if you can respond earlier, it would be most helpful.) Please do not forward this e-mail outside your offices as it contains sensitive information that we are just beginning to evaluate.

As I mentioned in my last e-mail, FDA and at least two of FDA's advisory committees are pressing Opioid product manufacturers to come up with a "class-wide" Risk Evaluation and Mitigation Strategy (REMS) for Opioid products. The concern is that multiple REMS across multiple drugs may overwhelm physicians and discourage their participation. So they want one REMS for all Opioids, new and existing.

The Pain Care Forum, informally led by the American Pain Foundation, is a coalition of Opioid product manufacturers and others involved in management/prescribing for pain. I was invited to attend a meeting of this group this week to discuss approaches to developing a "class-wide" REMS. The feeling among many in this group is that FDA is headed down the path of developing REMS, regardless of what we do, and also, that the REMS should be "class-wide". Many are of the belief that if the manufacturers/sponsors don't come up with one, FDA will dictate one.

My key concern in participating is to help ensure that whatever they might come up with to recommend to FDA, does not include an overly burdensome customer matching process for HDMA's distributor members. However, there are certainly other possible requirements and points that could prove difficult for distributors, and I want to be sure that we have a seat at the table to minimize the possible impact.

As you can imagine, it is very difficult to reach agreement on what it should be. The Pain Care Forum wishes to signal to FDA that they're willing and interested in talking with FDA, likely without laying out, just yet, exactly what the REMS would be. Many expressed the view that it is too early in the discussion phase to set up anything specific. One suggestion that many participants liked, was that perhaps the group could start with a set of "Principles" for the "class-wide" REMS that we might share with FDA as a starting point, with the idea of discussing the specifics over the beginning of next year.

I plan to continue to attend these meetings and participate in the discussions. But first, I'd like to ask you to help by giving me some guidance on what I believe would be base-line "Principles" from a distributor perspective. I have attached a draft of some "Principles" for your review.

Please let me know by **Wednesday, Dec. 10** if you agree with them or have any changes/refinements.

I would also like to know if you have any reservations, comments or suggestions in general about the concept of a "Class-Wide" REMS for Opioid products that I need to be aware of and bring forward, if needed in these discussions. So please feel free to contact me if you have any other concerns or suggestions. There is likely to be a meeting in the middle of next week that I plan to participate in, so I'd like to be prepared to represent you adequately.

Thank you,

*Anita*

Anita T. Ducca
Senior Director, Regulatory Affairs and Healthcare Policy
Healthcare Distribution Management Association (HDMA)
901 North Glebe Rd., Suite 1000
Arlington, VA 22203
(703) 885-0240
Fax: (703) 935-3200
e-mail: aducca@hdmanet.org
www.HealthcareDistribution.org

MCKMDL00612053

DRAFT REMS Principles

## DRAFT Principles for a "Class-Wide" REMS for Opioid Products

A "class-wide" REMS should focus on education of prescribers and others directly involved in patient interactions and care.

If feasible, the class-wide REMS should give consideration to, and allow for, the use of technological solutions.

The REMS should seek to reach out to patients to improve their understanding and management of their own health care.

Protecting the confidentiality of patients, data, and business information must be a high priority. The utmost care should be given to its preservation during the REMS design.

The REMS should seek maximum standardization and minimum variability of requirements across drugs, manufacturers/sponsors, prescribers, dispensers, distributors, patients, and others that may be subject to requirements.

The REMS should seek to ensure the most streamlined approach possible, so as to avoid confusion among those subject to the REMS, including the patients involved.

A "class-wide" REMS should be consistent with FDAAA's mandates including:
- The REMS is "…designed to be compatible with established distribution, procurement, and dispensing systems for drugs."  21 U.S.C. § 355-1(f)(2)(D)(ii),
- Any REMS should "to the extent practicable . . . minimize the burden on the health care delivery system."  id. § 355-1(f)(2)(D)  [emphasis added]
- Established distribution, procurement, and dispensing systems for drugs should include, but not be limited to:
    - Existing state, local, and federal registration, licensure, and regulatory systems
    - Existing education, training, and communications requirements and programs, (as long as the effectiveness of such programs is adequately demonstrated).
    - Existing business arrangements
    - Existing data collection, storage and retrieval systems

In addition to manufacturers/sponsors, all members of the prescription drug supply chain should be involved in the development of the "class-wide" REMS from its inception.

*Before* final approval and adoption, the REMS should be tested with the participation of at least a sample of those intended to be subject to the REMS requirements.  This
- Is intended to ensure minimal disruption in the provision of healthcare and the distribution, dispensing, and prescribing of drug products while simultaneously helping to ensure maximum effectiveness.
- Includes adequate time to analyze test results and revise the contemplated requirements.

Care should be taken to avoid disruption of existing business relationships.

1

                                                                    MCKMDL00612054

DRAFT REMS Principles

The REMS should avoid restrictions or manipulation of arrangements that are clearly independent business decisions, including financial relationships.

The REMS should be committed to in writing and shared with affected parties (including distributors, pharmacies, hospitals and when appropriate, patients).

The REMS should be developed with the goal of minimizing the disruption to the prescribing, dispensing, or distribution of other, non-REMS, medical products and/or the delivery of healthcare.

Upon evaluation over time, the REMS should be flexible enough to allow for future technological or other improvements to be implemented while allowing phase-out of existing REMS requirements that prove to be outdated or less effective.  (*Note: this means that we should be able to drop old requirements if new, but different ones, are more effective or less cumbersome.*)

2

MCKMDL00612055