**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br>*This document relates to:*<br>Track One Cases | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster |

# PLAINTIFFS' OBJECTION TO SPECIAL MASTER'S OCTOBER 15, 2019 RULING PERMITTING DEFENDANTS TO DESIGNATE CERTAIN PHARMACISTS AS TRIAL WITNESSES

On October 15, 2019, the Special Master ruled on the record that seven pharmacist witnesses identified by Defendants could be called to testify at trial despite the fact that Plaintiffs have been precluded from conducting pharmacy-level dispensing-related discovery:

> So if a witness was identified during discovery before March 4th, that witness can be called. If that witness wasn't deposed, as I said, too bad, unless there's an agreement.
>
> What I believe that means is that the seven pharmacist witnesses were identified before March 4th.
>
> \*\*\*
>
> Having said all of that, I also think the pharmacist witnesses are different. There are different restrictions that would apply to them, and you all know the discovery history of the pharmacists of dispensing data, dispensing documents. To put it simply, oversimply, I said that dispensing-related information had to be produced only to the extent that it reflected on suspicious order monitoring systems on distribution, on diversion, and to the extent that it went beyond that, kind of down at the pharmacy level and actually dispensing practices, that that was not discovery that needed to be produced. And I said that all at the instance [sic] of the pharmacy defendants.
>
> And so what that means is that there has to be some sort of restrictions as to what the pharmacy witnesses can say, would be allowed to testify about, and that would be limited to SOMS, distribution, and diversion.
>
> It's hard for me to tell certainly from the descriptions that you provide what the pharmacy witnesses will talk about. Walgreens says we will talk about pharmacy managing, and Cardinal says we will have the four CVS witnesses talk about

1

whatever we need them to talk about in response to plaintiffs' case. I can't tell what it is defendants anticipate they will call those witnesses for and what they hope to elicit from them, but it will not be the case that they will get into the depths of dispensing unless it relates to SOMS.

Now, what does that all mean? I don't know. I'm giving you broad outlines for something we will have to figure out going forward. I can't answer questions that I'm sure you have right now about what exactly I mean, because I don't know. We're probably going to have to get together, and I'm going to somehow slice and dice what it is those witnesses would be allowed to say; which suggests that it might be a good idea to depose them so that I can understand what it is that y'all are trying to adduce.

But those are my thoughts on the pharmacy witnesses.

Dkt. #2827 (10/15/19 Hearing with Special Master Tr.) at 13:19-24, 15:15 – 16:25.

Plaintiffs respectfully request that the Court overrule the Special Master's ruling allowing these seven pharmacist witnesses to testify at trial. As explained in greater detail below, Plaintiffs were precluded from conducting discovery regarding pharmacy-level dispensing data. As a result, Plaintiffs have been deprived of the opportunity to obtain the evidence necessary for them to be able to meaningfully cross-examine these witnesses. Plaintiffs would be severely prejudiced if these witnesses were permitted to testify.

## ARGUMENT

For the past fifteen months, Plaintiffs have sought discovery on pharmacy-level data and information, arguing that it was relevant to Plaintiffs' SOM-related claims against the Distributor Pharmacies and Distributors because it relates to these defendants' "know your customers" and "know your customers' customer" obligations. The Distributor Pharmacies vigorously opposed this discovery, arguing that since they were only being sued as Distributors, this information was irrelevant to Plaintiffs' SOMS claims. Based on the Distributor Pharmacies' representations, the Special Master repeatedly refused to allow Plaintiffs to conduct this discovery.

On October 23, 2018, the Special Master issued Discovery Ruling No. 8, which concerned Defendants' refusal to provide the entirety of dispensing data concerning opioids dispensed at their retail pharmacies. Dkt. #1055. Defendants objected that such data was irrelevant because Plaintiffs opted not to pursue claims against the Retail Pharmacy Defendants based solely on their retail

dispensing of opioids.  The Special Master concluded that Plaintiffs were entitled to "some, but not all, of the dispensing information sought by plaintiffs."  *Id.* at p. 3.  Specifically, Defendants were required to produce only: (i)"Policies and procedures related to dispensing controlled substances;" (ii) "Dispensing-related documents contained in suspicious order monitoring files related to Track One jurisdictions;" (iii) "Documents regarding evaluation of opioid orders from a particular retail pharmacy in Track One jurisdictions;" (iv) "Compensation policies for pharmacists in Track One jurisdictions;" (v) "Transactional data showing the volume of opioid products in the Track One jurisdictions; and (vi) settlement memoranda with the DEA.  *Id.* at pp. 3-4.

Significantly, Discovery Ruling No. 8 specifically found that Plaintiffs were "not entitled to any other discovery related to dispensing information at this time."  *Id.* at p. 5.  But the Special Master also warned Defendants against the type of gamesmanship that Plaintiffs now seek to address: "[A]s a general rule, no party may rely at trial on documents or data they have not produced in discovery or which are otherwise unknown to opposing parties."  *Id.*

Several months later, the issue of dispensing information resurfaced during a Walgreens-only Special Master Conference on January 10, 2019, concerning numerous discovery disputes.  In that meeting, Walgreens' counsel again sought to "draw a line between the dispensing and distribution information."  Ex. A [1/10/19 Tr.] at 57:6-9.  The Special Master directed that any dispensing information used "to make decisions about whether orders were suspicious, whether they were shipped, whether they should be overridden, . . . should be produced."  *Id.* at 61:21 – 62:1.  The Special Master warned that "there is going to be a very severe repercussion" if information relevant to those factors was not produced."  *Id.* at 62:1-6.

On February 12, 2019, the parties met to discuss the scope of discovery permitted to proceed after the discovery deadline.  During that meeting, Defendants advised Plaintiffs of their intention to serve subpoenas seeking documents and depositions from third party pharmacies in the Track One jurisdictions.  The Special Master ruled that for every pharmacy deposition taken by Defendants, Plaintiffs would be entitled to take a reciprocal number of depositions of Defendants' pharmacists.  Ex. B [2/25/19 Pyser e-mail].  Defendants initially advised that they would take 24

3

depositions of pharmacies in March and April 2019. *Id.* During a discovery call the following week, the Special Master made clear that any reciprocal depositions that Plaintiffs received would include depositions of Defendants' pharmacists, including Walgreens. Ex. C [3/1/19 Tr.] at 24:22 – 25:9. On March 6, 2019, Defendants advised that they would "not be exercising their right to take depositions" of pharmacies." Ex. D [3/6/19 Pyser e-mail]. This decision was clearly influenced by the Special Master's ruling on reciprocal depositions, as Defendants' e-mail specifically stated: "As we understand the Special Master's order, plaintiffs will accordingly not be entitled to any 'reciprocal' depositions." *Id.*

After successfully avoiding discovery on pharmacy-level information, Defendants Walgreens and Cardinal Health (standing in the shoes of CVS) have now done a complete about face by designating, on the eve of trial, seven pharmacists as trial witnesses. Walgreens designated Luke Forkapa (pharmacist), Debra Lieske (pharmacy manager),[1] and Kipp Tiger (pharmacist), stating that each of these witnesses is expected to testify regarding his or her "duties, responsibilities, and experiences as a pharmacist and pharmacy manager." Dkt. #2743 (Walgreens' Amended Witness List) at pp. 2-4. Cardinal Health designated four CVS pharmacists (Christa Altobelli; Shadi Awadallah; Julie Deal; Yasmin Parker), stating that they "may be called to testify to respond to Plaintiffs' case." Dkt. #2722 (Cardinal's Revised Witness List) at p. 6.[2] None of these witnesses have been deposed in this litigation,[3] their custodial files have not been produced, and none of the Walgreens witnesses were identified as people with knowledge or supportive of their defenses prior to March 4, 2019.

---

[1] A Walgreens "Pharmacy Manager" is a pharmacist.

[2] This overly broad and vague description of their proposed testimony fails to give Plaintiffs or the Court any idea of the subject matters on which these witnesses plan testify.

[3] On October 2, 2019, Walgreens' counsel told Plaintiffs' counsel that they would only agree to produce for deposition previously un-deposed witnesses that they plan to call at trial if Plaintiffs agreed to do the same. Ex. E [10/2/19 Swift e-mail]. But even if Plaintiffs were permitted (and able) to depose all seven of these pharmacist witnesses in the next few weeks, Plaintiffs would not have sufficient evidence to cross-examine these witnesses during those depositions *because they were precluded from obtaining pharmacy-level dispensing data and information during discovery*.

Defendants' refusal to produce pharmacy-level dispensing information deprives Plaintiffs of the ability to adequately confront these newly-identified witnesses. Defendants spent months arguing to this Court that dispensing-level information was not necessary to the action and was not proportional to the needs of the case. Yet now Walgreens and Cardinal seek to present pharmacists to the jury to testify as to his or her "duties, responsibilities, and experiences as a pharmacist and pharmacy manager." While Defendants, through Walgreens' counsel, provided minimally more detail on the subject area of these requested witnesses' testimony, it is clear that any testimony that they exercised appropriate diligence in preventing diversion or identifying suspicious orders would invite impeachment by Plaintiffs that these pharmacists had dispensed opioids in large or suspicious volumes. This area of inquiry was precluded by the Special Master. And without the information to assess the opioid-related conduct of these pharmacists, Plaintiffs cannot identify or offer directly relevant information that might allow a jury to question their testimony and credibility. This is both fundamentally unfair and deeply prejudicial.

Trial is set to begin in three days. At this juncture, no amount of corrective discovery can remedy this situation. Had Defendants identified these witnesses during the discovery period, and had Defendants not fought efforts to take pharmacy-level discovery at every opportunity, then Plaintiffs could have developed the factual basis necessary to confront whatever testimony these pharmacy witnesses will offer. Having been precluded from obtaining any meaningful pharmacy-level data, Plaintiffs cannot now develop that record in a week, or even in a month, especially in the midst of trial. Thus, if these witnesses are presented at trial, Defendants' refusal to permit pharmacy-level discovery and depositions during the discovery period will have effectively deprived Plaintiffs of a meaningful opportunity to confront this testimony.

Defendants want to have their cake and eat it too. They convinced the Court to preclude Plaintiffs from obtaining discovery on pharmacy-level dispensing data and information, claiming this evidence was irrelevant. They cannot now reverse course and argue that the testimony of these seven pharmacists is somehow critical for them to defend against Plaintiffs' claims at trial when they have denied Plaintiffs any reasonable opportunity to effectively prepare for this testimony.

## CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court overrule the Special Master's 10/15/19 ruling and preclude Walgreens and Cardinal from calling any of the seven pharmacists designated on their witness lists to testify at trial.

Dated:  October 18, 2019

                                      Respectfully submitted,

                                      /s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Plaintiffs' Co-Lead Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX  77069-3804
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Lead Trial Counsel*

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY  10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

Donald A. Migliori
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
dmigliori@motleyrice.com

*Counsel for Plaintiff Summit County, Ohio*

7

**CERTIFICATE OF SERVICE**

I certify that the foregoing instrument was served via the Court's ECF system to all counsel of record on October 18, 2019.

/s/ Peter H. Weinberger
Peter H. Weinberger]