# EXHIBIT C

Page 1

1    IN THE UNITED STATES DISTRICT COURT
2    NORTHERN DISTRICT OF OHIO
3    EASTERN DIVISION
4
5
6
7    IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION VS.
8    Case No: 1:17-md-2804-DAP
9
10   This document relates to:
11   All cases
12
13   AUDIO TRANSCRIPTION
14   3/1/2019 Discovery Telephonic Conference
15
16   Transcribed March 5, 2019

Page 22

1 been no discovery at the pharmacy level until now.
2 Now, all of a sudden the defendants realize we need
3 pharmacy level discovery and we're only going to do
4 pharmacy level discovery of people that we can get it
5 from friendly, meaning co-defendant.  And that's
6 putting us in an unfavorable position, and we should
7 have -- I'm not saying we're going to randomly, you
8 know, pick tons of, you know, tens, 20, 30
9 depositions, but we should have the ability to at
10 least get the pharmacy level data and depose a
11 pharmacist on a handful, just like they're doing.
12         KATE SWIFT:  That's simply not true.  Mr.
13 Shkolnik's firm took -- Mr. Shkolnik's firm took a
14 deposition of a pharmacy district manager of my
15 client, and there have been pharmacy level depositions
16 that took place during fact discovery.  This first
17 time I'm hearing that point and so I'm a little taken
18 aback by it.
19         HUNTER SHKOLNIK:  That's completely false,
20 David.  It's completely false.  They designated two
21 people as regional people that were part of the SOM
22 process, because the SOM process said the regional
23 managers were the ones who did the override forms.  We
24 were precluded from anything at the store level
25 multiple times.  We did not question a single

Page 23

1 pharmacist or pharmacy level person regarding
2 distribution or the inappropriate distribution at the
3 store, which is the issue now.
4         SPECIAL MASTER DAVID COHEN:  So, hold on.
5 Hold on, please.  Kate, as to the -- this is a
6 question for distributors, I'm not sure who answers
7 it.  As to the identification of pharmacies, the
8 intervening, superseding -- no, that's the doctors,
9 sorry.  As to the identification of pharmacies who you
10 would like to depose, the bad actors out there,
11 whatever, who is it that so far you've identified?  In
12 other words, at what level?  Is it Joe pharmacist, who
13 is the guy behind -- gal behind the counter?  Is it
14 Joe pharmacist's boss who runs the pharmacy?  Is it
15 that person's boss who runs the regional area of
16 pharmacies if in fact it is more than just a one-stop
17 shop?  Tell me who you've identified so far, or think
18 you have, or starting to identify.
19         KATE SWIFT:  With respect to at Walgreens, is
20 that what you're asking?
21         SPECIAL MASTER DAVID COHEN:  No, just -- I
22 mean, I've heard the statement that there were
23 initially 24 pharmacists that were identified, what
24 defendants wanted to depose, and that it may end up
25 being less than 24, but who are these folks?

Page 24

1         STEVE PYSER:  So, David, this is --
2         KATE SWIFT:  It's a question -- yeah, go
3 ahead.  Sorry, Steve.
4         STEVE PYSER:  David, this is Steve Pyser.
5 It's a mix.  Basically, you know, when we got the
6 orders, and the one thing I just want to clarify, the
7 reference to Mr. Flowers' email, that did not -- that
8 prior disclosure did not identify the orders or the
9 other information that you ordered to be produced.
10 So, I'm just clarifying on that.
11         What we've done is once we got the orders, we
12 went to the pharmacy as a corporate entity.  And we've
13 been trying to figure out who might be available,
14 whether it's somebody at a pharmacy management level,
15 like an owner of a small pharmacy, or if, as you
16 suggested, it's kind of the pharmacist who is there,
17 so, it's really a mix.  And we're trying to figure
18 out, based on what limited discovery we're able to
19 pull from 13 years ago, and some more recent, but not
20 much more recent, who might be available, and whether
21 it's necessary for us on an individualized basis.
22         SPECIAL MASTER DAVID COHEN:  All right.  So,
23 the rule is that plaintiffs are going to be allowed to
24 depose pharmacists reciprocally to include no more
25 than three pharmacists who are already defendants in

Page 25

1 this case.  So, for example, just choosing Walgreens,
2 you want to depose a single Walgreens, and no more
3 than one from any given defendant.  A single
4 Walgreens' pharmacist pursuant to reciprocal
5 discovery, you can do that; a specific one from -- I
6 don't know who else is -- Walmart.  You can do that as
7 to three.  Any other reciprocal discovery has to be
8 related to the entities, or you don't have to do it at
9 all, that defendants choose.
10         STEVE PYSER:  Thank you.
11         SPECIAL MASTER DAVID COHEN:  All right.  Is
12 there anything more to talk about on this topic?  We
13 spent 35 minutes on it.  Are there -- I guess this is
14 just that.  We will get to the question of
15 interrogatories and 30(b)(6) topics later.  All right,
16 so let's bang through some of these others.
17         This next one should be simple.  Topic No.
18 90, I'm told that the parties are close to sending me
19 an agreed data protective order.  When can I expect
20 that?
21         DONNA WELCH:  David, it's Donna Welch.  Can I
22 jump in on item 90?
23         SPECIAL MASTER DAVID COHEN:  Please.
24         DONNA WELCH:  So, with respect to -- we've
25 got, I would say, two and a half issues to raise with