# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>*The County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45090<br><br>*The County of Cuyahoga, et al. v. Purdue Pharma L.P., et al.*<br>Case No. 17-op-45004 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO OVERRULE PLAINTIFFS' PROCEDURAL OBJECTION TO
TESTIMONY FROM THEIR OWN EXPERT WITNESSES,
<u>AND FOR OTHER FAIR AND EQUITABLE RELIEF</u>**

Plaintiffs' entire Opposition ("Opp.") ECF No. 2831, rests on the premise that they alone can introduce evidence from the experts they retained and for whom they disclosed reports containing their opinions.  That premise is contrary to the Court's ruling and the overwhelming weight of authority.  At the final pretrial conference, the Court held:

> I think it actually is fair game ***to call or refer or use expert reports of the other side if they were noticed in the litigation but not called****. . . .* [I]f they were noticed and then a side decides not to call them, the other side is free to use them.

Hr'g Tr., ECF No. 2828, at 9:22–10:4 (denying in part Plaintiffs' Motion *in limine* No. Eight); ECF No. 2797 ("Mot.") at 8–10 (citing cases).[1]  Plaintiffs argue in a footnote that they interpret the Court's ruling narrowly, so as not to go beyond "the matters briefed by the parties."  Opp. 3 n.3.  But that does not help Plaintiffs.  Their motion sought an order that "[t]he parties should be precluded from referring to … experts previously designated but now de-designated."  ECF No. 2652 at 6.  In denying Plaintiffs' motion in relevant part, the Court refused to preclude either side from calling the other's experts or introducing their reports—actions that inherently require "referring to" the expert who will testify or who authored the report in question.

This issue therefore already has been decided, and Plaintiffs admit that the issue is moot as to Dr. Lembke, because Plaintiffs are calling her in their own case.  Plaintiffs' make-weight reasons for why a different rule should apply as to Drs. Kessler and Rosenthal are unavailing.

## I.     PLAINTIFFS PREVIOUSLY WAIVED ALL OBJECTIONS TO LIVE TESTIMONY OTHER THAN TIMELINESS, WHICH THEY HAVE NOW WAIVED AS WELL.

As an initial matter, Plaintiffs did not object to Distributors calling Drs. Kessler or Rosenthal in their case on any ground other than the timeliness of listing them on Distributors'

---

[1]   All emphases are added unless otherwise indicated.

witness list.  *See* Mot. 1, 10.  That argument is meritless because Distributors preserved their right to call these witnesses in their joint witness list served on September 11.  *Id.* at 5–7. Plaintiffs do not respond.[2]

## II.  PLAINTIFFS' EXPERTS' REPORTS ARE ADMISSIBLE.

The Court ruled at the final pretrial conference that parties may introduce the reports of experts whom the original disclosing party declines to call.  *See* ECF No. 2828, at 9:22–10:4. Plaintiffs' arguments for why the Court should now reach a different conclusion with respect to Drs. Rosenthal and Kessler are without merit.

First, Plaintiffs argue that Distributors are "seeking to introduce evidence that they successfully sought to exclude"—a reference to the "marketing causation" opinions of Lembke and Schumacher excluded by the Court.  Opp. 7.  That is misguided.  Distributors do not seek to introduce the ***excluded*** portions of those experts' opinions; they seek to introduce only the "relevant portions of these reports as adoptive admissions ***consistent with the lines drawn*** by the Court in its *Daubert* rulings." Mot. 5 (emphasis added); *see also id.* at 13 (same).

Second, the reports, if offered ***by Defendants***, are not hearsay.  Opp. 8.  Plaintiffs cite *Engebretsen*, but that decision addressed the question of how such reports should be viewed when the ***disclosing*** party seeks to introduce an expert report as substantive evidence in support of its own contentions, whereas the rule on adoptive admissions permits using the report "***against*** [the] party" that manifested a belief in its truth.  Mot. 13 n.3 (citing *Neuman v. Rivers*, 125 F.3d 315, 320 (6th Cir. 1997)).  The rule stated in *Engebretsen* is inapposite.

---

[2]    As for Plaintiffs complaint that Distributors gave notice of their intention to call these witnesses "[o]n the eve of trial," Opp. 1, Distributors' witness list was served then because that is when all witness lists were required to be served.  No other notice was required.  *See S.E.C. v. Koenig*, 557 F.3d 736, 744 (7th Cir. 2009).

Third, citing *Kirk v. Raymond, Inc.*, 61 F.3d 147 (3d Cir. 1995), Plaintiffs argue that they cannot be held to have adopted anything and everything that their experts have ever said. That citation, too, is inapposite. *Kirk* concerned an attempt to introduce statements of an expert (1) formerly retained by a party in a ***different*** case (2) that were made by the expert in yet more "unrelated" litigation. *Id.* at 162–63. Here, Distributors would introduce the reports of Drs. Kessler, Rosenthal, Schumacher and Ballantyne (and Lembke, if Plaintiffs reverse course and do not call her live)—reports Plaintiffs themselves presented and endorsed as relevant and reliable evidence in this case. They endorse them still through inclusion of Drs. Lembke, Kessler, and Rosenthal on their witness list. Moreover, as Distributors showed, their opinions support core allegations and basic themes set out in Plaintiffs' Complaints, making any attempt to suggest that Plaintiffs might "disagree[] with the testimony of the[ir] expert[s]," Opp. 9, wholly disingenuous.

## III. MULTIPLE PROCESSES EXIST TO ENSURE KESSLER'S AND/OR ROSENTHAL'S LIVE APPEARANCE AT TRIAL.

Plaintiffs claim that Drs. Kessler and Rosenthal cannot be compelled to testify live at trial at Distributors' insistence because they reside more than 100 miles from the courthouse. But these witnesses are within the Court's subpoena power in three ways.

First, the experts may be subpoenaed to testify at trial under the authority of Rule 45 because each was "employed" by two Ohio counties (either directly, or through their legal representatives) to serve as prospective expert witnesses for litigation pending in Ohio. *See* Fed. R. Civ. P. 45(c)(1)(B)(ii). Dr. Kessler has billed his employers more than $1.6 million for that engagement. *See* Ex. 1. Dr. Rosenthal has billed more than $300,000 for that engagement, and her firm has billed an additional $2.7 million. *See* Ex. 2. Just as surely as these experts will travel more than 100 miles to testify if Plaintiffs' counsel (who have paid them these enormous fees) ask, so too the Court may command these experts to appear at trial because of that

employment.[3]  Although Distributors cited this rule, *see* Mot. 14-15, Plaintiffs do not respond—a tacit concession.

Second, even if the Court could not compel Drs. Kessler or Rosenthal to appear live in the Northern District of Ohio (though it can), it can compel them to appear at other U.S. District courthouses nearer to their residences, from which they could testify remotely.  *See* Fed. R. Civ. P. 45(c)(1); *id.* Rule 43(a) ("For good cause, in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.").  The Court recently authorized just that procedure for other witnesses ***at Plaintiffs' request***.  ECF No. 2594.  Thus, Dr. Kessler could be commanded to appear in the U.S. District Court for the District of Columbia, and Dr. Rosenthal in the District of Massachusetts, each for the purpose of testifying in this Court remotely.

Third, as discussed, the Court has subpoena authority to compel the witnesses to sit for a deposition *de bene esse*, to preserve their trial testimony if that is the only way for them to appear.  *See* Mot. 14–16.[4]

The exercise of subpoena power is not Distributors' first choice.  They would prefer that Drs. Kessler and Rosenthal appeared voluntarily, whether because Plaintiffs call them in their own case (at which time Distributors will also examine them), or because Distributors call them and receive the minimal cooperation from Plaintiffs that would be necessary to arrange those

---

[3]  To avoid any concern that appearance at trial would constitute "substantial expense" within the meaning of the rule, Distributors will pay for the experts' travel and lodging.  *See* Mot. 15 n.4; *see also* Fed. R. Civ. P. 45 (2013 Amend.), advisory committee note to subd. (c) ("When travel over 100 miles could impose substantial expense on the witness, the party that served the subpoena may pay that expense and the court can condition enforcement of the subpoena on such payment"); *Bombardier Rec. Prods., Inc. v. Arctic Cat, Inc.*, 2017 WL 690186, *1 (D. Minn. 2017) (same).

[4]  Plaintiffs' arguments as to why a *de bene esse* deposition should not be permitted are addressed in Part IV, *infra*.

appearances.  Plaintiffs' suggestion that they do not "control" these witnesses is hollow, given the millions of dollars paid to them to serve as testifying witnesses and given Plaintiffs' ability to secure Dr. Lembke's appearance, among others, during the first week of trial.[5]  The Court can be certain that, if Plaintiffs ask Drs. Kessler or Rosenthal to appear live, they will be there.  But if their appearances cannot be secured voluntarily, then the Court should make clear that Defendants may proceed with compulsory process.

## IV.    DEFENDANTS HAVE NOT WAIVED THE ABILITY TO PRESERVE TRIAL TESTIMONY OF SUDDENLY UNAVAILABLE WITNESSES.

The Opposition ignores the critical fact that the issue of calling Plaintiffs' experts arises only because of the eleventh-hour settlements with all but one of the Manufacturers.  This development significantly changes Plaintiffs' proof, and necessarily affects Distributors' proof.  Plaintiffs do not appear to contest that the Court has the authority to allow trial testimony to be preserved and played at trial, but they argue for various reasons that such power should not be exercised in this case.  Opp. 6–7.  This argument, too, is without merit.

First, Plaintiffs argue that a deposition to preserve the testimony of Drs. Kessler and Rosenthal should not be allowed because they also sat for discovery depositions.  Opp. 7.  Characterizing the failure to use those depositions to secure trial testimony as "effectively [a] waive[r]," Plaintiffs argue that Distributors "cannot now seek *de bene esse* depositions."  Opp. 7.  Plaintiffs cite no authority in support of this argument, for there is none.  The fact that a witness previously sat for a discovery deposition does not insulate them from giving ***trial testimony***, and that is true whether the witness is available or unavailable to testify live.  Thus, courts have

---

[5]    Plaintiffs' citation to *Hill v. Homeward Residential, Inc.*, 799 F.3d 544 (6th Cir. 2015), is inapposite.  Not only does that case have nothing to do with arranging for a disclosed expert witness to appear at trial, the decision rests on wholly unrelated grounds, such as the issuing party's failure to name the specific person to whom a subpoena was issued.  *Id.* at 552–53.

authorized preserving trial testimony of an otherwise unavailable witness whether or not there

was an opportunity to take their depositions in discovery.  *See, e.g.*, *Manley v. AmBase Corp.*,

337 F.3d 237, 246–47 (2d Cir. 2003) ("Twice before trial, the parties deposed former AmBase

chairman George Scharffenberger, once as part of the discovery process and again pursuant to

a *de bene esse* proceeding ordered by the court when it appeared that the eighty-year old

California resident would not travel to New York for trial"); *Bouygues Telecom, S.A. v. Tekelec,

Inc.*, 238 F.R.D. 413, 414 (E.D.N.C. 2006) (*de bene esse* deposition allowed notwithstanding that

party "opted to forgo" deposition of the same witness during discovery).

Plaintiffs' suggestion that Distributors should simply "designate portions of those

deposition transcripts for use at trial," Opp. 5, presumes that the existing transcripts include the

testimony that Distributors intend to elicit at trial.  But, the Manufacturers dominated the

questioning, and their interests and Distributors' interests are not the same.  The Manufacturers

did not give these experts a meaningful opportunity to recite their qualifications; their interest

was in undermining those qualifications.  Neither did they allow the experts explain their

opinions in a linear or coherent fashion that the jury could understand; their interest was in

making points that would undermine those opinions, or give grounds for exclusion.  With the

limited time available, Distributors also had a need that was different from preserving trial

testimony:  to get the experts on record as having formed no opinions ***directly about

Distributors' own*** conduct.  The resulting transcripts are not the stuff from which a coherent trial

designation can be made.[6]

---

[6]   Plaintiffs exaggerate by saying Distributors "had two hours of questioning" with Dr.
       Rosenthal.  Opp. 6.  The time stamps in the transcript show it was under an hour and a half.
       Either way, much of that time was spent confirming that she did not have opinions about the
       conduct of Distributors or Pharmacies, *see* ECF No. 1984-5 at 746–70; the rest was spent
       showing that factors outside Distributors' control contributed to Rosenthal's results, *id.* at
       770–842.  Plaintiffs' suggestion that, months before the first Manufacturer settlements,

Plaintiffs do not deny that, as to Dr. Kessler, "nearly all of the deposition time was absorbed by Manufacturer Defendants." Opp. 6.  Nor do they deny that Manufacturers took the predominant share with Dr. Rosenthal.  *Id.*  But they argue that "[i]f Distributors believed themselves prejudiced by that allocation, they needed to address that with their co-defendants and/or the Court at that time." *Id.* at 7.  Defendants **did** object – repeatedly – that the time limits on deposition were unfairly prejudicial given the number of parties and their distinct issues.[7]

Distributors adhered to the Court's schedule and did the best that they could under the circumstances.  Plaintiffs' suggestion that Distributors sat on their hands is revisionist history that ignores how vigorously Distributors sought adequate time, given Defendants' divergent interests.[8]  Under the circumstances, allowing brief additional depositions of two experts so that they can give their affirmative opinions is a just and equitable remedy that will enhance the jury's search for truth.

---

Distributor's should have made the Hobson's choice to forego extracting much-needed *defensive* concessions in order to preserve an *offensive* examination is Monday-morning quarterbacking.

[7] Ex. 3 (Apr. 6, 2019 Email from D. Welch to D. Cohen) ("there are 20 defendant families in the Track 1 cases, and a single 7 hour day does not allow each defendant any meaningful opportunity to question these experts, which is a fundamental deprivation of due process").

After the Special Master denied relief, Defendants appealed to this Court which issued a *nunc pro tunc* Order allowing two days of deposition testimony for 10 expert witnesses.  *See* ECF No. 1540.  Defendants then objected for a second time, specifically raising the problem the Court's Order left unresolved.  ECF No. 1552-1, at 6 ("the schedule and time limits imposed will have the practical effect of denying individual Defendants any actual ability to do so").

Defendants then asked the "Court to order the expert depositions to continue day-to-day to ensure that all Defendants have an actual (as opposed to theoretical) right to question Plaintiffs' experts about any opinions specific to them." *Id.*  The Court denied that relief.

[8] Plaintiffs do not say what mechanism Distributors should have used to "address [] with their co-defendants" (i.e., Manufacturers), Opp. 7, why they should not have the lead role in depositions that targeted their conduct. That many of those defendants have since settled does not change the fact that at one time they were parties with legitimate interests of their own.

## V.     PLAINTIFFS' MERITS ARGUMENTS ARE FOR THE JURY.

At various points, Plaintiffs make merits-based arguments about the relevancy or value of the evidence Distributors seek to introduce.  *See* Opp. 2 n.2, 7, 9–10.  These arguments are baseless and, as noted above, were waived as it relates to the request for live testimony.  *Supra* at 1–2.

Distributors have time and again argued in dispositive and *Daubert* motions that Plaintiffs' allegations about *Manufacturers'* conduct explains the increase in opioid prescribing in ways that absolve or mitigate Distributors' own liability.  It is absurd to suggest that, as a precondition to admissibility, a plaintiff's expert must have gone all the way to "exculpat[ing] the Distributors from their own responsibility for the opioid crisis."  Opp. 2 n.2.  It is relevant if the expert's opinions provide building blocks of exculpation or mitigation.  Put differently, it is not necessary that the expert draw an exculpatory conclusion himself; it is sufficient that his opinions support such a conclusion—as is true here.  Plaintiffs' experts explain how it was that doctors came to prescribe opioids in such high volumes, and Distributors are entitled to present all or part of that explanation as Plaintiffs' "own story."  Nothing more is required to meet the test for admissibility.  *See* Fed. R. Evid. 401, 402.

### CONCLUSION

For all of these reasons, Distributors' Motion should be granted.

Dated:  October 18, 2019

Respectfully Submitted,

 _/s/ Geoffrey E. Hobart_
Geoffrey E. Hobart
Mark H. Lynch
Paul W. Schmidt
Christian J. Pistilli
Phyllis A. Jones
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
pschmidt@cov.com
cpistilli@cov.com
pajones @cov.com

*Counsel for McKesson Corporation*

 _/s/ Enu Mainigi_
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street NW
Washington, DC  20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

 _/s/ Robert A. Nicholas_
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug
Corporation*

 _/s/ John P. McDonald_
John P. McDonald
C. Scott Jones
Lauren M. Fincher
Brandan J. Montminy
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Tel: (214) 740-8000
Fax: (214) 756-8758
jpmcdonald@lockelord.com
sjones@lockelord.com
lfincher@lockelord.com
brandan.montminy@lockelord.com

*Counsel for Henry Schein, Inc.*

 _/s/ Kaspar Stoffelmayr_
Kaspar Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Matthew W. Brewer
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
matthew.brewer@bartlitbeck.com

Alex J. Harris
**BARTLIT BECK LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreen Co.*

## CERTIFICATE OF SERVICE

I, Ashley W. Hardin, hereby certify that the foregoing document was served via the

Court's ECF system to all counsel of record.


*/s/ Ashley W. Hardin*
Ashley W. Hardin