**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGIATION | MDL No. 2804 Case No. 17-md-2804 |
| This document relates to: *County of Cuyahoga, et al. v. Purdue Pharma L.P., et al.*, Case No. 17-OP-45004; *County of Summit, et al. v. Purdue  Pharma, L.P. et al.*, Case No. 18-OP-45090 | Judge Dan Aaron Polster |

# PLAINTIFFS' OPPOSITION TO DISTRIBUTOR DEFENDANTS' OBJECTION TO OCTOBER 13, 2019 DISCOVERY RULING

October 18, 2019

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES..............................................................................................ii

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND ..............................................................................................2

The March 25 Computations of Shipments Attributable to Distributor Misconduct and Damages Attributable to that Misconduct ......................................................... 2

The July 31, 2019 Declarations of Profs. Cutler and McGuire .......................................... 7

The Sept. 20 Errata and the Sept. 30 Supplemental Tables ............................................... 8

Defendants' Motions to Strike................................................................................. 9

ARGUMENT ..............................................................................................................10

THE SPECIAL MASTER'S OCTOBER 13 RULING DECLINING TO STRIKE THE SEPT. 20 ERRATA SHOULD BE AFFIRMED ..................................................................... 10

    A.    The Sept. 20 Errata Merely Correct Mathematical Errors and Do Not Alter the Case.................................................................................... 11

    B.    The Distributors Are Not Prejudiced by the Sept. 20 Errata. .......... 15

CONCLUSION ...........................................................................................................17

i

## TABLE OF AUTHORITIES

*Page*

### Cases

*Asad v. Continental Airlines, Inc.*, 314 F.Supp.2d 726 (N.D. Ohio 2004) .............................. 12

*Bethea v. Merchants Commercial Bank*, No. CV 11-51, 2014 WL 2903459 (D.V.I. June 26, 2014) ........................................................................................................................... 15

*Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002) ......... 12

*F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) ........................................... 10

*Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015) ................................................................ 17

*Hunt v. Cont'l Cas. Co.*, No. 13-CV-05966-HSG, 2015 WL 4537170 (N.D. Cal. July 24, 2015) ........................................................................................................................... 15

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. C-06-1066PJH(EMC), 2008 WL 4601038 (N.D. Cal. Oct. 15, 2008) ........................................... 15

*Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223 (W.D. Wash. 2018) ............................ 15

*Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619 (6th Cir. 2018) ........................................ 10

*Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*, No. 14-CV-00930-JCS, 2016 WL 158874 (N.D. Cal. Jan. 14, 2016) ..................................................................................... 15

*U.S. v. Kalymon*, 541 F.3d 624 (6th Cir. 2008) ....................................................................... 12

### Statutes, Rules, and Regulations

Fed. R. Civ. P. 26 .................................................................................................................... 10

Fed. R. Civ. P. 37 .................................................................................................................... 17

Fed. R. Evid. 703 .................................................................................................................... 12

## INTRODUCTION

Defendants' objection to the Special Master's October 13, 2019 ruling (the "Ruling") permitting Plaintiffs to rely on certain errata to expert reports of Prof. David Cutler and Prof. McGuire (the "Sept. 20 Errata") is based on fundamental misunderstandings about the original expert reports, the Sept. 20 Errata, and the previous rulings of the Special Master.[1] First and foremost: *it is not true that the Sept. 20 Errata contain new analysis of any kind or that the Cutler and McGuire Reports contained no opinions with respect to Distributor misconduct.* On the contrary, Prof. Cutler's report contained a specific analysis of Distributor misconduct and the percentage of harms attributable to it; Prof. McGuire used that analysis to compute damages *specifically attributed to the Distributors' misconduct.* It turned out, however, that the percentages and damages computed in the original reports were based on a mathematical error; the Sept. 20 Errata fixed the error and re-computed the numbers using the correct figure to arrive at *lower* damage numbers. That is the *only* change made by the Sept. 20 Errata. Indeed, the Sept. 20 Errata consist entirely of replacement tables containing correctly-computed numbers that substitute for otherwise-identical tables in the original expert reports. The Sept. 20 Errata contain no new analysis and make no change in Plaintiffs' theories or their approach to the computation of damages. Instead, the Sept. 20 Errata simply provide a more accurate version of the very same damages computed in the original McGuire Report.

Nor is it true that the Special Master reversed himself twice on this issue – or even once. In August, 2019, the Special Master held that Plaintiffs could not submit extensive

---

[1] Both of the Sept. 20 Errata are included as exhibits to Distributor Defendants' Objection to October 13, 2019 Discovery Ruling; Exhibit 3 is the McGuire Errata and Exhibit 4 is the Cutler Errata.

declarations from Profs. Cutler and McGuire that responded to Defendants' *Daubert* challenges, contained some additional analyses, and also included corrections for the mathematical errors correct in the errata now at issue. Distributors' argument that the Sept. 20 Errata permitted now are the same as the declarations that were struck is simply wrong. The information in the Sept. 20 Errata represented a tiny portion of the declarations that were struck; moreover, the declarations were struck because the Special Master found that they contained new opinions, precisely what the Sept. 20 Errata do not contain. That the August declarations *included* the information in the Sept. 20 Errata among many other points does not mean the Special Master struck the Sept. 20 Errata or ever addressed whether the errata, standing alone, could be used. Nor did the Special Master reverse himself with respect to his preliminary informal ruling on October 10, 2019. As the actual Ruling made clear, what the Special Master excluded a different set of supplemental tables that Plaintiffs served on September 30, 2019 (the "Second Errata"); the informal ruling did not differentiate among the different errata, and thus provided an incomplete picture of the actual ruling.[2] The formal Ruling, however, clearly specified which errata were struck and which were not. As discussed below, Defendants' objection to the Ruling is entirely without merit and should be over-ruled.

### FACTUAL BACKGROUND

**The March 25 Computations of Shipments Attributable to Distributor Misconduct and Damages Attributable to that Misconduct**

This dispute has its roots in the March 25, 2019 expert reports of Profs. Rosenthal, Cutler, and McGuire, and Dr. Craig McCann, along with Dr. McCann's April 3, 2019 supplemental report. In her report, Prof. Rosenthal computed the percentage of opioid

---

[2] In order to avoid similar confusion here, Plaintiffs use the terms "Sept. 20 Errata" and "Second Errata" throughout this submission.

sales that were attributable to the misconduct of the Manufacturer Defendants. Dr. McCann computed the percentage of shipments that were attributable to the misconduct of the Distributors.[3]  Prof. Cutler used *both* of these numbers to compute first, the percentage of opioid harms caused by the Manufacturers' misconduct *and*, second and separately, the percentage of opioid harms caused by the Distributors' misconduct. Prof. McGuire used the percentages computed by Prof. Cutler to compute Plaintiffs' past damages, by applying Prof. Cutler's percentages to the costs Plaintiffs incurred to address the opioid epidemic. The issue, as explained below, is that the number that Prof. Cutler used for the percentage of harm caused by the Distributors' misconduct was the result of a mathematical error and was not the number that Dr. McCann actually computed. [4]

Prof. Cutler's report explains that he analyzed both the percentage of harms caused by the Manufacturers' marketing conduct *and the percentage of harms caused by the failure to control the supply chain*:

> This report first presents estimates of harm that stem from the elevation in shipments resulting from marketing misconduct. However, as noted, such harms cannot be solely attributable to manufacturers since some harm could have been prevented had all registrants of the CSA, including distributors, met their legal obligations. Appendix III.J shows how the framework for estimating harm developed in this report can be applied to estimate harms that could have been avoided in the absence of supply chain misconduct by CSA registrants including distributors.

---

[3] Because Dr. McCann's analysis pertained to suspicious order monitoring, Plaintiffs had the option of providing his report approximately three weeks after the deadline for the remainder of the expert reports. As described in the text, it was this time-lag that was partially responsible for Prof. Cutler's use of erroneous numbers.

[4] Prof. McGuire computed several alternative estimates of Plaintiffs' damages, using different inputs from Prof. Cutler. The Sept. 20 Errata seek to correct only the computation based on Prof. Cutler's analysis of distributor misconduct, which was based on computations from Dr. McCann.

ECF No. 2000-4 (Cutler Report) at 12. Indeed, Prof. Cutler unambiguously states that his report "incorporates an estimate of the share of prescription opioids that should have been identified as suspicious by distributors." ECF No. 2000-4 (Cutler Report) at 5. Table J.1 shows the "Percent of Shipments Attributable to Distributors' Misconduct." *Id.*, Appendix III.J at p. 3. Tables J.2, J.3, J.4, and J.5 show the share of opioid harms caused by distributor misconduct in each of Summit and Cuyahoga Counties using two different approaches. These latter tables clearly provide opinions as to percentage of harms caused by distributor conduct.

Similarly, Prof. McGuire, using the percentages computed by Prof. Cutler, computed and offered estimates of damages attributable to distributor misconduct. In his report, Prof. McGuire explained that he was "present[ing] estimates of *damages incurred by the Bellwether governments due to the defendants' misconduct*." ECF No. 2000-17 (McGuire Report) at 41 (emphasis added). He further explained in his "Overview of Economic Framework" for calculating damages that Prof. Cutler had estimated "the share of harms due to distributors' failure to identify suspicious shipments" and that he (Prof. McGuire) "present[s] damage calculations incorporating these estimates" in his report. *Id.* at 10. Prof. McGuire further explained:

> Appendix IV.F presents an estimate of damages *due to distributors' misconduct* based on Appendix III.J Tables J.4 and J.5. in the Cutler Report

*Id.* at 41 n.87 (emphasis added). And indeed, Tables F.3, F.4, and F.5 specifically computed the damages to the Plaintiffs that were attributable to the distributors' misconduct. *See Id.* at Appendix IV.F.

Defendants argue that Prof. Cutler did not actually offer an opinion about distributor misconduct (and thus Prof. McGuire could not have computed damages attributable to distributor misconduct) because they contend that the percentages in

Table J.1 in the Cutler Report were "placeholders," merely an example of what *could* be computed, not actual computations. But that is not the case. In fact, Appendix III.J explains that the percentages in Table J.1 were numbers that were "provided to me by counsel and that I understand *will be set forth in reports disclosed on April 15, 2019*." ECF No. 2000-4 (Cutler Report) at Appendix III.J at p. 3 (emphasis added). Thus, Prof. Cutler understood that the percentages he received from counsel would be reflected in expert reports that were not due until approximately three weeks after his report was due. It is important to note, however, that Prof. Cutler did not say that the percentages were hypothetical, or that *different* or *actual* numbers would be provided in the later expert reports; he said that he understood that the numbers he was provided by counsel would be the *same* numbers that would appear in the later expert reports – that is, he understood that the numbers he was provided were the actual numbers computed by Plaintiffs' other experts.

As noted, the expert who computed those percentages was Dr. Craig McCann. *See* ECF No. 2000-15 (McCann Supplemental Report) at Table A, p. 2. Plaintiffs' counsel obtained the percentages from Dr. McCann and provided them to Prof. Cutler in time for Prof. Cutler to perform his analysis and meet the deadline for his report, even though Dr. McCann had not yet completed the portion of his report that would include these percentages. But it was these percentages, as reported to counsel in time for Prof. Cutler's March 25 deadline, that included the computational error – that is, the percentages reported to Prof. Cutler included a computational error that resulted in incorrect numbers. The error was discovered and corrected between the time Prof. Cutler provided his report and the time Dr. McCann provided the portion of his report that included this

analysis.[5]  Thus, on April 3, 2019, Dr. McCann disclosed in a supplemental report the percentages he had computed of shipments attributable to Distributor misconduct -- but the numbers in the McCann supplemental report were the *corrected* numbers because by April 3, the mathematical error had been discovered. Thus, the expert report to support Prof. Cutler's analysis, when it came, showed numbers that were different from the miscalculated numbers that had been conveyed to Prof. Cutler in March. The Sept. 20 Errata simply reflect Prof. Cutler's recalculation of the numbers in his Tables J.2, J.3, J4. and J.5, using the correct percentages from Dr. McCann for Table J.1, and Prof. McGuire's recalculation of damages in his report reflected in Tables F.3, F.4, and F.5, using the correct results from Prof. Cutler.[6]

Moreover, Defendants knew that the percentages that appeared in Table J.1 in Prof. Cutler's report were not hypothetical placeholders because, on April 19, 2019, less than a month after Plaintiffs produced the Cutler Report, Plaintiffs explained to Defendants in an email that Prof. Cutler had relied on other experts for the percentages set forth in Table J.1, and that, in particular, the information in that table was "set forth in the McCann report and his supplements (*see* ECF No. 2000-15 (McCann Supplemental Report, Table A at p.2). *See* Ex. 1, 9/26/19 Opposition to Motion to Strike, Exhibit A. Thus, Defendants were specifically informed that Prof. Cutler's computations were not hypothetical, but based on actual computations performed by Dr. McCann to determine the percentage of shipments that were attributable to the Distributors' misconduct. Prof.

---

[5] A portion of the McCann report was provided on March 25, 2019. The remainder was provided in a supplement on April 3, 2019. The portion of Dr. McCann's work on which Prof. Cutler relied was disclosed in the supplemental report on April 3.

[6] For context, it is worth noting that the difference between the numbers that were initially provided to Prof. Cutler and the correct numbers that were submitted in the Sept. 20 Errata differ by approximately 2-11% depending on the year at issue.

Cutler confirmed at his deposition that the percentages in Table J.1 had come from Dr. McCann. *See* ECF No. 1976-9 (Cutler Dep.) at 76-82. Because Defendants knew that the tables in the Cutler Report were based on actual computations by Dr. McCann, they should also have known that Prof. McGuire's opinion about the Plaintiffs' damages attributable to the Distributors' misconduct was an actual damages opinion, based on actual computations, and not a hypothetical or placeholder opinion.

**The July 31, 2019 Declarations of Profs. Cutler and McGuire**

As explained above, however, all of these computations were built on the original mathematical error in Dr. McCann's computation. Plaintiffs attempted to include corrections to the erroneous numbers when they responded to the Defendants' *Daubert* motions. Replacing the incorrect inputs from Dr. McCann with the correct ones, Profs. Cutler and McGuire generated corrected tables that reflect the proper computations. The corrected tables were attached to declarations submitted on July 31, 2019, by Profs. Cutler and McGuire in opposition to *Daubert* motions seeking to exclude their testimony. Ex. 2 Cutler Decl.; Ex. 3. McGuire Decl. Those declarations were much broader in scope, however. The declaration of Prof. Cutler was 48 pages long, including appendices; nearly all of it responded to criticisms of his report set forth in reports provided by various defense experts or in the *Daubert* motion challenging the admissibility of his testimony. The corrections to the tables were addressed in a single footnote, and the tables themselves were provided in an appendix. *See* Ex. 2, Cutler Decl. at 5 n.15 and Appendix A. None of the rest of the declaration had anything to do with that issue. Similarly, the declaration of Prof. McGuire was 16 pages, including appendices. Like Prof. Cutler's declaration, nearly all of it responded to Defendants' criticisms of the analysis in the McGuire Report. The corrections to the tables, reflecting use of corrected numbers from Dr. McCann, were mentioned only in a single paragraph (¶ 26) on page 12 and the

corrected tables themselves were provided as appendices; the rest of the declaration addressed entirely different subjects. Ex. 3, McGuire Decl. at 12.

On August 13, 2019, Special Master Cohen ruled that the McGuire and Cutler declarations were untimely supplemental expert reports and could not be considered in connection with the *Daubert* motions. No distinction was made between the errata portion of the declarations and the lengthy discussions and analysis otherwise contained in the declarations. As Defendants themselves concede, the basis of the ruling was that the declarations contained new opinions and new analysis, which, the Special Master found, were untimely.[7] The Special Master did not separately address (or mention) the errata discussions in footnote 15 of the Cutler declaration and ¶ 26 of the McGuire declaration, and nothing in his ruling suggests that he would have reached the same conclusion had the declarations merely submitted the Sept. 20 Errata, and not also contained additional explanation and analysis.

**The Sept. 20 Errata and the Sept. 30 Supplemental Tables**

On September 20, 2019, Plaintiffs served the Sept. 20 Errata. In order to be sure it was entirely clear that these errata simply corrected the mathematical errors that had been incorporated into the original Cutler and McGuire reports, Plaintiffs served only new tables that contained corrected numbers. There was no explanatory material or discussion, because the tables that make up the Sept. 20 Errata simply replaced the identical tables in the original reports, but with corrected numbers.

---

[7] Indeed, Plaintiffs argument, in opposing the motion to strike, was that the declarations were being offered in connection with the *Daubert* motions, and not as supplemental reports, and also that the declarations consisted primarily of elaborations and explanations of the opinions of Profs. Cutler and McGuire, with a limited amount of new opinions or analysis. Plaintiffs never contended that the declarations were merely errata.

But the Sept. 20 Errata were not the only errata Plaintiffs served. On September 30, Plaintiffs served "Supplemental Future Damages Tables" (the "Second Errata") for the McGuire Report and the expert report of Prof. Jeff Liebman. These supplemental tables provided new extrapolation and new opinions not previously set forth in the McGuire Report. In these tables, Prof. McGuire used the same methodology he used in his original report to project *future* damages, a topic not previously addressed in his report (or in the Sept. 20 Errata). The Second Errata were thus entirely separate – and very different in kind – from the Sept. 20 Errata.

**Defendants' Motions to Strike**

On September 23, 2019, Defendants moved by letter to the Special Master to strike the Sept. 20 Errata. Plaintiffs provided their response on September 26; Defendants replied on October 2, and Plaintiffs provided a further reply on October 2.

On September 26, 2019, Defendants served their motions *in limine*, which included a motion to exclude *all* evidence of future damages. On October 2, 2019, Defendants moved by letter to the Special Master specifically to strike the Second Errata (which pertain to future damages). The email transmitting the letter-motion described the motion as "Defendants' further request for an order striking *any and all new expert material that Plaintiffs may seek to present in this case*, specifically including the 'Future Damages' tables that Plaintiffs produced for the first time on September 30." (Emphasis added.)  The motion thus appeared to encompass both the Sept. 20 Errata and the Second Errata. On October 8, 2019, Defendants renewed their "motion to strike any and all new expert material that Plaintiffs may seek to present in this case, specifically including the 'Future Damages' information recently served by Plaintiffs."  On October 9, 2019, Plaintiffs responded to Defendants' October 8 email, noting that the request appeared to encompass two separate motions, and further noting that the question of the Sept. 20

Errata had been addressed in Plaintiffs' September 26 and October 2 responses, while the issue of future damages was the subject of a motion *in limine.*

On October 10, 2019, the Special Master sent an email stating that "the errata are stricken" and that the ruling would be formalized by October 14. The email ruling did not differentiate between the Sept. 20 Errata and the Second Errata. On October 13, 2019, the Special Master issued his formal ruling. This ruling made clear that while the Second Errata were stricken, the Sept. 20 Errata merely corrected mathematical errors and would be permitted. The Distributors' objection followed.

## STANDARD OF REVIEW

The Special Master's October 13 Ruling found that the Sept. 20 Errata were timely and proper under Fed. R. Civ. P. 26.  As this was a procedural ruling, relating to timeliness and the procedures for disclosure, the Court applies the "abuse of discretion" standard. ECF No. 69 (Appointment Order) at 5.  The Sixth Circuit has described an abuse of discretion to mean a ruling that is "arbitrary, unjustifiable, or clearly unreasonable." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014); *see also Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640 (6th Cir. 2018) (abuse of discretion involves erroneous findings of fact, improper application of fact, use of an erroneous legal standard).

## ARGUMENT

## THE SPECIAL MASTER'S OCTOBER 13 RULING DECLINING TO STRIKE THE SEPT. 20 ERRATA SHOULD BE AFFIRMED

The Distributors make two arguments why the Special Master's ruling should be overruled, but neither has merit – much less provides a basis to find an abuse of

discretion.[8] First, they contend that the Sept. 20 Errata "fundamentally alter the case." This is simply not true because the Sept. 20 Errata simply substitute a table with correct numbers for an identical table with incorrect ones. Second, the Distributors argue they are prejudiced by these errata. Because this argument proceeds from the same misconception about the errata, and because the corrected table shows *lower* damages than the original table, the prejudice argument, too, should be rejected.

A. **The Sept. 20 Errata Merely Correct Mathematical Errors and Do Not Alter the Case**

The Distributors argue that the Sept. 20 Errata "fundamentally alter the case" because they claim that Prof. Cutler's March 25 report calculated harm attributable only to the Manufacturers, and did not calculate harm attributable to the Distributors. As described above in detail, however, this is entirely false. Prof. Cutler's March 25 specifically calculated the share of opioid harms caused by *distributor* misconduct in each of Summit and Cuyahoga Counties using two different methods, as reflected in Tables J.2, J3, J.4, and J.5. Defendants' assertion to the contrary is simply inexplicable in light of the titles of these tables, as they appear in the original March 25 expert report:

Table J.2: Percent of Harms Attributable to Distributors' Misconduct Under Approach 1 2006–2016

Table J.3: Percent of Harms Attributable to Distributors' Misconduct Under Approach 2 2006–2016

Table J.4: Share of Cuyahoga Opioid Harms Due to Distributors' Misconduct

Table J.5: Share of Summit Opioid Harms Due to Distributors' Misconduct

ECF No. 2000-4 (Cutler Report) at Appendix III.J. Prof. Cutler's report explicitly stated that he had computed percentages of harm attributable to Manufacturer misconduct

---

[8] Even if the Ruling were reviewed *de novo*, for the reasons discussed herein, the Ruling was correct and should not be over-ruled.

based on the work of Prof. Rosenthal *and percentages of harm attributable to Distributor misconduct* based on analysis from other experts that would be forthcoming. *Id.* at 12.

Defendants confuse the issue by suggesting that Prof. Cutler and Dr. McCann disclaimed the computations in Table J.1, upon which Tables J.2, J.3, J.4 and J.5 were based. Dr. Cutler specifically stated in his report that the numbers had been "provided to me by counsel." *Id.* at Appendix III.J at p. 3. He did not himself compute them and could not vouch for their accuracy. His testimony at deposition confirmed this. He repeatedly stated that he used inputs from Dr. McCann and from Prof. Rosenthal to make the computations reflected in his report. *See* ECF No. 1976-9 (Cutler Dep.) at 76-82. He made clear that he was not opining as to the correctness of Dr. McCann's work or Prof. Rosenthal's – he was simply opining that *if* the numbers provided by counsel were correct, *then* the percentage of harms attributable to distributor misconduct was as set forth in Tables J.2, J.3, J.4, and J.5.

There was nothing improper about Prof. Cutler relying on the work of other experts, for which he could not vouch, nor on accepting assumptions from counsel, which would then be proven at trial through other evidence. *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of"); *U.S. v. Kalymon*, 541 F.3d 624, 637 (6th Cir. 2008) ("Experts may base their testimony upon information not within their personal knowledge or observation."); *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (expert may rely on experts in different fields so long as the experts so relied on are separately disclosed and provide their own reports); *Asad v. Continental Airlines, Inc.*, 314 F.Supp.2d 726, 740 (N.D. Ohio 2004) ("Under Rule 703, an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts."). But nothing in Dr. Cutler's testimony

suggested that the computations he himself performed, as reflected in Tables J.2, J.3, J.4, and J.5, were not his own opinions. On the contrary, he specifically testified that he was offering opinions as to what the result would be if the numbers he was given were correct. ECF No. 1976-9 (Cutler Dep.) at 80.

That Dr. McCann testified that he was not aware of having provided the numbers to Prof. Cutler is entirely beside the point. Prof. Cutler's report clearly stated that the numbers were provided to him "by counsel," not directly by Dr. McCann. Similarly, Dr. Rosenthal's testimony that her analysis was limited to Manufacturer conduct is irrelevant. Prof. Cutler offered multiple, alternative computations; some relied on input from Prof. Rosenthal, others relied on input from Dr. McCann. The Cutler report specifically stated that the analysis of harms attributable to the distributors was based on information from Plaintiffs' counsel and came from other experts, and not from Prof. Rosenthal. *See* ECF No. 2000-4 (Cutler Report) at 12, Appendix III.J at p. 3.

It is also untrue that Prof. McGuire's original report computed only damages attributable to the Manufacturers. Appendix IV.F to the March 25, 2019 McGuire Report is titled: "Damages Due to Distributor Misconduct."  Tables F.3, F.4., and F.5 present these damage calculations; these tables are titled:

Table F.3 Cuyahoga County - Damages Due to Distributors' Misconduct

Table F.4 Summit County - Damages Due to Distributors' Misconduct

Table F.5 Total Damages Due to Distributors' Misconduct

ECF No. 2000-17 (McGuire Report) at Appendix IV.F.  The Distributors' argument that Prof. McGuire offered no opinion about damages attributable to them simply ignores these tables and the plain language of their headings.

In fact, the Distributors' real argument appears to be that Tables F.3, F.4, and F.5, in the *original* McGuire Report are not part of Prof. McGuire's opinion and should be

13

disregarded. This position is both unsupported and irrelevant. As noted, the tables were not only appended to the report, they were specifically referenced in it. *See id.* at 41 n.87. At his deposition, moreover, Prof. McGuire confirmed that he computed damages shown in Appendix IV.F by applying the percentages from the Cutler Report "to the potentially affected costs *to get an estimate of damages.*" ECF No. 1981-16 (McGuire Dep.) at 600 (emphasis added). It is true that Prof. McGuire said that he did not deal with these computations in his "report," but that statement simply reflected that the computation of damages due to distributor misconduct was contained in Appendix IV.F, and not in the body of the report itself. The placement of the tables is irrelevant, however, because Appendix IV.F, and the tables showing damages attributable to distributor misconduct, were timely disclosed to Defendants on March 25, 2019, and Prof. McGuire was examined about them at his deposition. *See id.*; ECF No. 1981-16 (McGuire Dep.) at 598-602. Defendants cannot prevent Plaintiffs from correcting a mathematical error merely because the tables in which the error appeared were contained in an appendix.

Indeed, Defendants' entire argument about whether these computations represent opinions from Prof. Cutler or Prof. McGuire misses the point: the *new* Tables F.3, F.4, and F.5 in the Sept. 20 Errata simply replace the *old* Tables F.3, F.4, and F.5 from the original report. Defendants' argument that the numbers in the original Tables F.3, F.4, and F.5 were not part of Prof. McGuire's opinion provides no basis to preclude Prof. McGuire from correcting the erroneous numbers in those tables.

Because the Sept. 20 Errata merely correct mathematical errors and make no substantive or methodological changes, the Special Master's ruling, denying the motion to strike, was correct. Courts permit such mathematical corrections even when the changes occur after any expert disclosure deadlines. See *Moussouris v. Microsoft Corp.*, 311

14

F. Supp. 3d 1223, 1239–40 (W.D. Wash. 2018) (allowing an expert to correct his report after the discovery deadline to correct mathematical errors that had only a minor impact on the results and did not change the substantive conclusions); *Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*, No. 14-CV-00930-JCS, 2016 WL 158874, at *11 (N.D. Cal. Jan. 14, 2016) (allowing an expert to amend his report after the discovery deadline to correct a numerical error); *Hunt v. Cont'l Cas. Co.*, No. 13-CV-05966-HSG, 2015 WL 4537170, at *1 (N.D. Cal. July 24, 2015) (allowing an expert to supplement his report to correct mathematical error after the discovery deadline when the change was favorable to the defendant); *Bethea v. Merchants Commercial Bank*, No. CV 11-51, 2014 WL 2903459, at *4 (D.V.I. June 26, 2014) (allowing expert to amend report to correct mathematical errors even though his amendment was untimely under Rule 26); *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. C-06-1066PJH(EMC), 2008 WL 4601038, at *1–2 (N.D. Cal. Oct. 15, 2008) (allowing an expert to correct his report after the discovery deadline to correct numerical errors because "[t]he supplemental report merely corrects these mistakes; it does not attempt to mask inadequate preparation of the original report" and "is not an attempt by [Plaintiff] to ambush [Defendant] because it merely corrects numerical errors" and is not "a substantive revision").

Here, the Sept. 20 Errata do nothing more than replace tables that have mathematical errors with otherwise identical corrected tables. The Special Master correctly held that these corrected tables should not be struck.

**B. The Distributors Are Not Prejudiced by the Sept. 20 Errata.**

Because the original McGuire and Cutler reports contained precisely the same analysis of distributor misconduct as the Sept. 20 Errata, there can be no prejudice to the Defendants from substituting correct numbers for the incorrect ones.

15

This is especially true because the Sept. 20 Errata compute damages numbers that are *lower* than the uncorrected numbers in the original tables. Prof. McGuire's original Table F.5 computed damages due to Distributors' misconduct as ranging from $286.6 million to $331.9 million. The new Table F.5 that is part of the Sept. 20 Errata calculates these damages as ranging from $261.1 million to $301.5 million. As discussed above, the Sept. 20 Errata make no other changes to the report. A simple side-by-side comparison of the old and new versions of Table F.5, which compute the damages attributable to the Distributor's misconduct, is all that is required to confirm that the Sept. 20 Errata actually *lower* Plaintiffs' estimate of damages with respect to these defendants, and thus cannot possibly prejudice them.

Defendants' argument to the contrary is not based on the difference between the original report and the Sept. 20 Errata (the only relevant issue), but rather on a comparison of the Sept. 20 Errata with other damage computations in the original McGuire report. But, again, this issue has nothing to do with the changes made in the Sept. 20 Errata. Prof. McGuire's original report computed Plaintiffs' damages in four different ways. *See* ECF No. 2000-17 (McGuire Report) at Table IV.14; Table E.5; Table F.5; and Table G.5. It is true that the numbers in the revised Table F.5 are higher than the numbers in Table IV.14, for example – but the same was true for the numbers in the original Table F.5 that was provided to Defendants on March 25. (It is, of course, *less* true now that the numbers in Table F.5 have been reduced.)  But this difference has nothing whatsoever to do with the correction of the mathematical mistake; the theory of the case Defendants claim is being introduced in the new Tables F.3, F.4, and F.5 was fully present in the *old* Tables F.3, F.4, and F.5. There is no prejudice from the mere substitution of one

16

computation for another, lower one.[9] And, in the absence of prejudice, there is no basis to strike the Sept. 20 Errata. *See* Fed. R. Civ. P. 37(c)(1); *see also Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

Indeed, as noted above, the Distributors' real complaint is about testimony based on *any* version of Table F.5, not merely on use of the corrected version. But this has nothing to do with the timing of disclosure. Table F.5, and the analysis of distributor misconduct that underlies it, was disclosed to the Defendants on March 25, 2019. Defendants examined Prof. McGuire specifically about these tables at his deposition. *See* ECF No. 1981-16 (McGuire Dep.) at 598-602. They moved to exclude Prof. McGuire's testimony as unreliable, and the Court denied the motion. Defendants' attempt to reargue those challenges in the guise of objecting to the routine correction of mathematical errors should be rejected.

## CONCLUSION

For the foregoing reasons, the Distributors' objection to the Special Master's Ruling should be overruled in its entirety.

Dated:          October 18, 2019                    Respectfully submitted,

                                                    /s/ *Paul J. Hanly, Jr.*
                                                    Paul J. Hanly, Jr.
                                                    SIMMONS HANLY CONROY

---

[9] That the Distributors are not prejudiced by the Sept. 20 Errata is easily demonstrated by consideration of what would happen at trial if the errata were struck. Prof. McGuire would testify to the numbers in the original Table F.5, which, as noted, are higher. The Distributors would presumably cross-examine him about the fact that the numbers contain a mathematical error; such cross-examination would require Prof. McGuire to explain that the corrected numbers were somewhat lower, but not significantly so. The jury would be left to guess at the proper adjustment, or to decline to make any adjustment at all. In comparison to that scenario, it is clear that use of the corrected numbers cannot possibly prejudice the Distributors.

112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Plaintiffs' Co-Lead Counsel*

Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX 77069-3804
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Lead Trial Counsel*

18

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY  10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

Donald A. Migliori
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
dmigliori@motleyrice.com

*Counsel for Plaintiff Summit County, Ohio*

**CERTIFICATE OF SERVICE**

I, Paul J. Hanly, Jr., do hereby certify that the foregoing document was served upon all counsel of record on this Friday, the 18th of October, 2019 via the Court's ECF system.

/s/ *Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.