# Exhibit 1

SIMMONS HANLY CONROY
A NATIONAL LAW FIRM

SIMMONSFIRM.COM
(800) 479-9533

**VIA EMAIL: david@specialmaster.law**

September 26, 2019

David R. Cohen
24400 Chagrin Blvd., Suite 300
Cleveland, OH 44122

    Re:  *In Re: National Prescription Opiate Litigation*, Case No.1:17-MD-2804

Dear Special Master Cohen,

    We write in response to Defendants' September 23, 2019 correspondence seeking to strike the errata to Professor David Cutler and Thomas McGuire's expert reports.

    At the outset, I note that the errata we have submitted are *not* "the same new analyses and opinions that you struck on August 13," as Defendants contend. On the contrary, these errata correct mathematical errors to percentages in both Prof. Cutler's and Prof. McGuire's expert reports; they contain no new analysis. While these mathematical changes were included in the now-stricken declarations submitted on July 31, 2019, they were just one minor aspect of the 48-page Declaration of Prof. Cutler and the 16-page Declaration of Prof. McGuire.

    These errata are appropriate and permissible because they simply correct mathematical errors and include no new analysis.  As you are aware, an important input in Prof. Cutler's three-step model regarding shipments to harms is the percentage of distributor misconduct, which stems from the analysis performed by Dr. Craig McCann. In Prof. Cutler's March 25, 2019 expert report, he relied on percentages from Dr. McCann that were different from the percentages that appear in Table A of Dr. McCann's April 3, 2019 supplemental report. Prof. Cutler's computation, which did not use the most current percentage from Dr. McCann, was in turn provided to Prof. McGuire to calculate damages to the Bellwethers.

    The errata simply correct these percentages – in other words, the revisions to Prof. Cutler and Prof. McGuire's expert reports have been made to reflect the *accurate* mathematical percentages provided by Dr. McCann regarding distributor misconduct.  Courts permit such mathematical corrections even when the changes occur after any expert disclosure deadlines. *See Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1239–40 (W.D. Wash. 2018) (allowing an expert to correct his report after the discovery deadline to correct mathematical errors that had only a minor impact on the results and did not change the substantive conclusions); *Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*, No. 14-CV-00930-JCS, 2016 WL 158874, at

*We stand for our clients.*

| HEADQUARTERS | NEW YORK | CHICAGO | SAN FRANCISCO | LOS ANGELES | ST. LOUIS |
|---|---|---|---|---|---|
| One Court Street | 112 Madison Avenue | 230 W. Monroe | 455 Market | 100 N. Sepulveda Blvd. | 231 S. Bemiston |
| Alton, IL 62002 | New York, NY 10016 | Suite 2221 | Suite 1150 | Suite 1350 | Suite 525 |
| TEL: (618) 259-2222 | TEL: (212) 784-6400 | Chicago, IL 60606 | San Francisco, CA 94105 | El Segundo, CA 90245 | St. Louis, MO 63105 |
| FAX: (618) 259-2251 | FAX: (212) 213-5949 | TEL: (312) 759-7500 | TEL: (415) 536-3986 | TEL: (310) 322-3555 | TEL: (800) 479-9533 |
| | | FAX: (312) 759-7516 | FAX: (415) 537-4120 | FAX: (310) 322-3655 | |



Special Master David Cohen
September 26, 2019                                                                                                    Page 2

*11 (N.D. Cal. Jan. 14, 2016) (allowing an expert to amend his report after the discovery deadline to correct a numerical error); *Hunt v. Cont'l Cas. Co.*, No. 13-CV-05966-HSG, 2015 WL 4537170, at *1 (N.D. Cal. July 24, 2015) (allowing an expert to supplement his report to correct mathematical error after the discovery deadline when the change was favorable to the defendant); *Bethea v. Merchants Commercial Bank*, No. CV 11-51, 2014 WL 2903459, at *4 (D.V.I. June 26, 2014) (allowing expert to amend report to correct mathematical errors even though his amendment was untimely under Rule 26);); *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. C-06-1066PJH(EMC), 2008 WL 4601038, at *1–2 (N.D. Cal. Oct. 15, 2008) (allowing an expert to correct his report after the discovery deadline to correct numerical errors because "[t]he supplemental report merely corrects these mistakes; it does not attempt to mask inadequate preparation of the original report" and "is not an attempt by [Plaintiff] to ambush [Defendant] because it merely corrects numerical errors" and is not "a substantive revision").

Significantly, in this case, the correction results in *lower* damages numbers than were contained in Prof. McGuire's original report, a range of approximately $261 million to $301 million instead of the original range of $286 million to $331 million. Moreover, and contrary to Defendants' claims of prejudice, Plaintiffs identified to Defendants the correct source for the input percentage in correspondence dated shortly after Plaintiffs disclosed their expert reports, specifically in response to an inquiry from Defendants regarding where the percentages originated. *See* 4/19/19 correspondence from D. Ko to T. Knapp (attached hereto as Exhibit A).[1] There can be no prejudice to Defendants by fixing this mathematical error to compute lower damages based on information identified to Defendants months ago.

Defendants' request to strike is particularly troubling in light of the practical effect of striking the errata. Plaintiffs are prepared to go ahead at trial with the original damages estimates provided in Prof. McGuire's report, without correction, if Defendants are precluded from raising the mathematical error or otherwise attacking the particular percentage input for this calculation. Presumably, this is not what Defendants are seeking. Rather, we assume that Defendants intend to cross examine Prof. Cutler and Prof. McGuire on the incorrect percentages. It is inconceivable, however, that, if cross-examined about the error at trial, Prof. Cutler and Prof. McGuire would be precluded from

---

[1] This correspondence was also attached as Exhibit E to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Exclude David Cutler's Opinions and Proposed Testimony (Dkt. 2209-6).



Special Master David Cohen
September 26, 2019                                                                                                Page 3

providing these corrections from the witness stand in response to questions put to them by the Defendants. No possible purpose can be served by refusing to allow the corrections to be made now, in advance of trial.

The errata are entirely appropriate and permissible and should not be stricken.

Sincerely,

Andrea Bierstein

Cc:  All counsel (via email lists)



Special Master David Cohen
September 26, 2019                                                                                                               Page 4



Special Master David Cohen
September 26, 2019                                                                                                                    Page 5

# EXHIBIT A

| | |
|---|---|
| **From:** | David Ko |
| **Sent:** | Friday, April 19, 2019 11:04 AM |
| **To:** | Knapp, Timothy; 2804 Discovery, MDL; Weinberger, Peter H.; Andrea Bierstein; Erin Dickinson |
| **Cc:** | xALLDEFENDANTS-MDL2804-Service@arnoldporter.com |
| **Subject:** | RE: Professor Cutler |

Tim,

Thank you for confirming April 26 and 27 for Professor Cutler's deposition. So the record is entirely clear, and to correct your misrepresentation that "much of Professor Cutler's backup data that was due nearly a month ago was produced just on Tuesday" – plaintiffs did in fact produce all of Prof. Cutler's reliance materials and the vast majority of the backup data to his report on March 25. As you know, the only data that was not produced was the de-identified mortality data from 2005-2016 for counties in which there were less than 10 deaths in those years pursuant to a restriction agreement with the NCHS. Once defendants requested this data, plaintiffs provided defendants with a process to obtain the data on April 10. One week later, after numerous back and forth, defendants agreed to this process, signed a revised DUA, and we turned over the de-identified data that day.

Furthermore, the data we provided to your consultants comprised of six files totaling 250 MB. By comparison, we produced 350 files totaling 50 MB on March 25 in connection w/ Professor Cutler's report. To be clear, the six files subject to the de-identification issue I discussed with your colleagues throughout the past week represent .005% of the entire dataset we produced. It is therefore entirely false for you to say that "much of Professor Cutler's backup data … was just produced just on Tuesday (4/16)."

Regarding your request for the source data for Table J.1 of the Cutler report, there is no backup data to produce. As the Cutler report makes clear (see para. 6 of Appx J) he is relying on other reports that provide the basis for the percentages that appear in that paragraph. In particular, the percentages are set forth in the McCann report and his supplements (see Table A of 4/3 McCann supplement) and also identified in section III of the Rafalski report. Thus, to the extent you are requesting code or backup data, it can be found in the reliance materials of the McCann report. In order to make the record perfectly clear, we will provide a clarification to Appx J of the Cutler report.

I trust this email resolves your concerns. If you need any further clarification, feel free to call me.

Thank you.

---------------------------
David Ko
Attorney - Complex Litigation
Keller Rohrback L.L.P.

Phone: (206) 428-0562
Email: dko@kellerrohrback.com
http://www.krcomplexlit.com

CONFIDENTIALITY NOTE: This e-mail contains information belonging to the law firm of Keller Rohrback L.L.P., which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual entity named above. If you think that you have received this message in error, please e-mail the sender. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.

**From:** Knapp, Timothy <tknapp@kirkland.com>
**Sent:** Friday, April 19, 2019 7:38 AM
**To:** 2804 Discovery, MDL <mdl2804discovery@motleyrice.com>; David Ko <dko@KellerRohrback.com>; Weinberger, Peter H. <pweinberger@spanglaw.com>; Andrea Bierstein <abierstein@simmonsfirm.com>; Erin Dickinson <ekd@cruegerdickinson.com>
**Cc:** xALLDEFENDANTS-MDL2804-Service@arnoldporter.com
**Subject:** Professor Cutler

Counsel,

I write regarding two issues related to the report of Professor Cutler.  First, defendants have been unable to find the source data for his table J.1 - Percent of Shipments Attributable to Distributors' Misconduct (see screenshot below).  Professor Cutler stated in his report that the data was provided by counsel and would be set forth in reports disclosed on April 15.  We have been unable to find support in those reports or their supplements.  Please provide the support for this table immediately.

Second, without prejudice to Defendants' pending motion to strike and reserving all rights to request later dates pending the resolution of the Table J.1 data issue and any other continuing data or reliance material issues, Defendants will take the deposition of Professor Cutler on April 26 and 27 at Robbins Kaplan in Boston, MA.  We would agree to April 26 and 27 while reserving all rights given that much of Professor Cutler's backup data that was due nearly a month ago was produced just on Tuesday (4/16) and we still do not have the source data in Table J.1.

Regards,
Tim

6. Table J.1 reports the data on the share of shipments for which the distributors are liable that have been provided to me by counsel and that I understand will be set forth in reports disclosed on April 15, 2019.

Table J.1: Percent of Shipments Attributable to Distributors' Misconduct

| Year | Percent of Shipments Attributable to Distributors' Misconduct |
| --- | --- |
| 1997 | 49.9% |
| 1998 | 67.0% |
| 1999 | 64.4% |
| 2000 | 64.7% |
| 2001 | 63.0% |
| 2002 | 59.8% |
| 2003 | 67.3% |
| 2004 | 64.5% |
| 2005 | 72.2% |
| 2006 | 73.1% |
| 2007 | 76.4% |
| 2008 | 78.4% |
| 2009 | 78.7% |
| 2010 | 79.2% |
| 2011 | 80.0% |
| 2012 | 82.5% |
| 2013 | 81.7% |
| 2014 | 82.7% |
| 2015 | 83.4% |
| 2016 | 83.5% |

**Timothy W. Knapp**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
T +1 312 862 7426
F +1 312 862 2200

timothy.knapp@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.