UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION ) ) ) THIS DOCUMENT RELATES TO: ) ) "Tribal Track Cases" ) ) | CASE NO. 1:17-MD-2804<br><br>Hon. Dan A. Polster |

**MOTION FOR LEAVE TO FILE MOTION FOR ENTRY OF
CASE MANAGEMENT ORDER, SETTING OF CASE STATUS CONFERENCE
FOR TRIBAL TRACK CASES, AND APPOINTMENT OF WILLIAM SCHERER
AND ADAM MOSKOWITZ TO TRIBAL LEADERSHIP COMMITTEE**

Plaintiffs, the Seminole Tribe of Florida and the Miccosukee Tribe of Indians of Florida, respectfully seek leave to file a motion for a Case Management Order for the Tribal Track Cases that will establish a briefing schedule for a motion to certify a negotiation class, set a date for a status conference for the Tribal Track Cases, and appoint two additional law firms to the Tribal Leadership Committee. As more fully explained in the attached memorandum, the Court should grant Plaintiffs leave to file the motion because a Case Management Order, status conference, and appointment of counsel to the Tribal Leadership Committee will help organize the Tribal Track litigation and empower the Native American Tribes to move their cases more expeditiously toward global resolution.

Dated: October 21, 2019

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman
Florida Bar No. 0364230
howard@moskowitz-law.com
Curtis E. Osceola
Florida Bar No. 1015979
curtis@moskowitz-law.com

Respectfully Submitted,

By: /s/William R. Scherer
William R. Scherer, Esq.
FL Bar No. 169454
wscherer@conradscherer.com
**CONRAD & SCHERER, LLP**
633 South Federal Highway
Eighth Floor
Fort Lauderdale, FL 33301
Phone: (954) 462-5500
Fax: (954) 463-9244

1

**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

*Co-counsel for the Seminole Tribe of Florida*

*Co-counsel for the Seminole Tribe of Florida*
*Counsel for the Miccosukee Tribe of Indians of Florida*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF CASE MANAGEMENT ORDER, SETTING OF CASE STATUS CONFERENCE FOR TRIBAL TRACK CASES, AND APPOINTMENT OF WILLIAM SCHERER AND ADAM MOSKOWITZ TO TRIBAL LEADERSHIP COMMITTEE**

The main goal of this motion is to enable the Native American Tribes whose opioid cases were transferred to this Court and whose communities have been hardest hit by the opioid crisis to litigate and possibly settle their cases, just as the Court has enabled the cities and counties to do. There is no dispute that these Tribes have been disproportionately affected by the manmade opioid crisis, which, as will be proven at trial, has been intentionally caused by the Defendants' malicious conduct. The Tribes need to be armed with the same tools that have been provided to cities and counties, such as a CMO, certification of a negotiation class, and a bellwether trial, so that the over 70 Tribes that have already filed lawsuits related to the opioid crisis can speak with one voice in negotiations with the Defendants. Moreover, by certifying a negotiation class, the Court will empower the Tribes to fight for the hundreds of other Tribes who have been historically mistreated more than any other group but have yet to file suit because they lack litigation resources.

To accomplish these very important goals, Plaintiffs, the Seminole Tribe of Florida (the "Seminole") and the Miccosukee Tribe of Indians of Florida (the "Miccosukee") (collectively the "Florida Tribes"), respectfully move the Court to (a) enter a Case Management Order ("CMO") that will set forth a briefing schedule for Native American Tribes to file a motion to certify a negotiation class, as was done for the cities and counties; (b) set a status conference for the Tribal Track Cases; and (c) enter an order formally appointing to the Tribal Leadership Committee, in addition to other distinguished counsel, William Scherer of Conrad Scherer LP and Adam M. Moskowitz of The Moskowitz Law Firm, who represent all Native American tribes from the state of Florida. A copy of the proposed CMO is attached as Exhibit 1.

## INTRODUCTION

Nearly every community in the United States has been impacted by the opioid epidemic. Every day, more than 130 people in the United States die after overdosing on opioids.[1] The Centers for Disease Control and Prevention estimates that the total "economic burden" of prescription misuse alone in the United States is $78.5 billion, including the costs of healthcare, lost productivity, addiction treatment, and criminal justice involvement.[2] The sheer scale of the opioid epidemic led cities, counties, states, Native American Tribes, and businesses to investigate the origins of the crisis. Their discoveries resulted in dozens of lawsuits against opioid manufacturers, distributors, and other culpable parties, intended to end the public nuisance caused by the opioid epidemic. Ultimately, the Judicial Panel on Multidistrict Litigation transferred the opioid lawsuits to this honorable Court. *See In re: National Prescription Opiate Litigation,* 290 F. Supp. 3d 1375, 1379–80 (J.P.M.L. Dec. 17, 2017). Since then, thousands of lawsuits have been filed and transferred to the Northern District of Ohio, including a number of lawsuits filed by Native American Tribes.

Judge Polster, upon the recommendation of counsel, formed the Plaintiffs' leadership structure, appointing lead counsel, liaison counsel, plaintiffs' steering committee, and plaintiffs' executive committee. *See* ECF Nos. 34, 37. This leadership structure recognized the potential for multiple case tracks and future leadership to be added when necessary.

During this early stage of this MDL, this Court wisely recognized the discreet issues of sovereignty and devastation unique to tribes by creating a "Tribal Track" to organize the Native

---

[1] Opioid Overdose Crisis, NIH, National Institute on Drug Abuse, https://www.drugabuse.gov/drugs-abuse/opioids/opioid-overdose-crisis (last visited Oct. 15, 2019).

[2] *Id.*

4

American cases. No other segment of American society has been more disproportionately affected by the opioid crisis than Native Americans. In 2015, Native Americans had the highest rate of death due to opioids and saw their mortality rates due to opioids increase more than 500% from 1999–2015.[3] These grim statistics do not even tell the whole story, because race and ethnicity misclassification on death certificates likely results in substantial underestimation of the toll the opioid crisis has taken on Native American tribes.[4] Because of these unique circumstances, Native American Tribes cannot wait on "trickle down" benefits from the states or their political subdivisions. As this Court concluded, the Tribes must proceed on their own.

Over the past two years, the Court has issued numerous CMOs in consultation with plaintiffs, defendants, and their counsel. ECF Nos. 232, 441, 443, 485, 666, 770, 876, 1306. The CMOs have set litigation tracks for cities and counties, third party payors, and hospitals, and the Court recently issued a scheduling order for the bellwether actions brought on behalf of babies born with Neonatal Abstinence Syndrome (the "NAS Cases"). More recently, the Court certified a negotiation class of city and county plaintiffs, [ECF No. 2591], set class certification briefing deadlines for the NAS Cases, [ECF No. 2738], and the first bellwether trial was set to begin on October 21, 2019. These developments have incentivized a number of defendants to propose multibillion dollar settlements[5] to avoid the first bellwether trial or to declare bankruptcy to

---

[3] Opioids in Indian Country: Beyond the Crisis to Healing the Community; 115th Cong. 3 (2018) (statement of RADM Michael E. Toedt, Chief Medical Officer, Indian Health Services), https://www.indian.senate.gov/sites/default/files/upload/HHS%20IHS%20testimony%20Opioids%20Indian%20Country%20SCIA%203-14-18%20revised.pdf. (last visited October 15, 2019)

[4] Karin A. Mack, *et al., Illicit Drug Use, Illicit Drug Use and Disorders, and Drug Overdose Deaths in Metropolitan and Nonmetropolitan Areas – United States,* CDC Morbidity and Mortality Weekly Report 1, 5 (Oct. 20, 2017), https://www.cdc.gov/mmwr/volumes/66/ss/pdfs/ss6619.pdf.

[5] Jeff Overley & Emily Field, *Drug Cos. Float Deals Worth $50B To End Opioid Cases*, Law360, (October 16, 2019) https://www.law360.com/classaction/articles/1210380.

organize claims. Indeed, three major drug distributors and an opioid manufacturer reached a $260 million settlement to avoid the first bellwether trial that was set to begin today.[6]

The Court has also issued important CMOs that have advanced the Tribal Track cases. *See, e.g.,* ECF No. 666 (setting deadlines for amended complaint and motions to dismiss for *The Muscogee (Creek) Nation v. Purdue Pharma L.P.*, 18-op-45459, (N.D. Ohio)); ECF No. 770 (extending deadlines for amended complaint and motions to dismiss and adding *The Blackfeet Tribe of the Blackfeet Indian Reservation v. AmerisourceBergen Drug Corp.*, 18-op-45749 (N.D. Ohio) as a bellwether case). Additionally, the Court denied motions to dismiss nearly all of the tribal bellwether claims and set a procedure for the Tribes to submit short-form complaints. *See* ECF Nos. 1680, 1729, 1742. More recently, however, while the cities and counties have made tremendous progress in their track, the Tribal Track has stagnated. The Blackfeet Tribe have unsuccessfully lobbied MDL leadership to move for a CMO. Osceola Decl., ¶ 2–3. No negotiation class has been proposed for the Tribes and no bellwether trial date has been set. The trains are leaving the station and the most injured and underserved segment of Americans, Native American Tribes, are still at the platform.

The Florida Tribes ask this Court to give Tribes the same opportunity as the cities and counties: a chance to negotiate their own settlement. *See* ECF No. 1683 at 60 (acknowledging, in the cities and counties' motion for certification of a negotiating class, that "[o]ther categories of MDL plaintiffs, such as Tribes . . . may form their own litigating or negotiating groups or classes. . . . This motion does not stop them, it may encourage them, but it *does not include* them"). To support this effort, the Court should hold a status conference where it can enter a CMO setting a

---

[6] Jan Hoffman, *$60 Million Opioid Settlement Reached at Last Minute With Big Drug Companies*, N.Y. Times (Oct. 21, 2019), https://www.nytimes.com/2019/10/21/health/opioid-settlement.html.

briefing schedule for a motion to certify a negotiation class. The multibillion dollar settlements being negotiated by the cities and counties demonstrate that a negotiation class is the most effective way to reach final resolution of Tribal claims and to protect Tribal interests.

Finally, the Court should enter an order formally adopting the Tribal Leadership Committee established by the Special Master and appoint William R. Scherer and Adam M. Moskowitz to the Tribal Leadership Committee (or other leadership role in the MDL that the Court deems fit) because both attorneys have significant experience in class actions and complex litigation, have settled significant matters on behalf of classes across the United States, and are prepared to expeditiously advance the interests of all Tribes, including by moving to certify a negotiation class.

## **FACTUAL BACKGROUND**

As they have done throughout their history, the Florida Tribes are taking the initiative to defend the unique interests of Native American tribes. The Seminole Tribe is the unconquered Tribe. The Seminole Tribe along with the Miccosukee Tribe, a renowned sovereign nation, are the only two tribes from Florida. Neither is subject to a treaty with the United States, and both have fought for centuries to maintain their sovereignty. The Seminole and Miccosukee first joined forces in the early 19th century outside of Tallahassee in their fight for survival against the raids of Andrew Jackson and the specter of Indian Removal.[7] Their continued resistance to colonialism and military incursion earned them their standing as two of the last unconquered tribes.

---

[7] The Indian Removal Act of 1830 was signed into law by President Andrew Jackson. Its enforcement led to the deaths of thousands of Cherokee, Seminole, Chickasaw, Choctaw, and Creek tribal members (among others) during the Trail of Tears. The Seminole and Miccosukee, resisted removal and survived by engaging in three wars against the United States known as the "Seminole Wars." Both tribes ultimately settled in the Everglades until the Reorganization Era brought on by the Indian Reorganization Act of 1934. Until then, both tribes had been existing as militias and survived on the land and humanitarian aid.

The Seminole and the Miccosukee represent south Florida, an area of the country which has been one of the hardest hit by the opioid crisis. South Florida was once the center of the opioid crisis because of its infamous "pill mills" that supplied over 5.5 billion hydrocodone and oxycodone pills into communities from 2006 to 2012.[8] During that time, "[Florida] became the pill suppliers for the rest of the country[,]"[9] while South Florida communities became inundated with opioids. Many members of the Seminole and Miccosukee sadly fell victim to the massive influx of opioids.

The Plaintiff Tribes responded to this crisis by building drug treatment facilities and dedicating millions of dollars in tribal funds to treat affected members and provide family services, among other necessary expenses. As a result of such costly efforts, the Florida Tribes have had some success in combatting the opioid epidemic. Hundreds of other Tribes and their members do not have the resources to combat the epidemic, however, and there are simply insufficient funds available for Tribes to abate the opioid epidemic.

The unique issues which Tribes have faced in combatting the opioid epidemic have resulted in unique damages which must be examined separately from those of other groups. For example, the Miccosukee have enlisted the help of Kaufman Rossin & Co., a forensic accounting firm, to determine their costs to date caused by the opioid epidemic in consultation with Dr. Kathleen Brady, M.D., Ph.D., Distinguished University Professor of Psychiatry of the Medical University of South Carolina (collectively the "experts"). Osceola Decl. at ¶¶ 4-5. The Miccosukee retained these experts to quantify their actual damages and are continuing their research into abatement

---

[8] Emily L. Mahoney & Langston Taylor, *What fueled opioid crisis in Florida? Billions of pills, millions in campaign cash*, The Miami Herald (July 25, 2019), https://www.miamiherald.com/article233058742.html.

[9] *Id.* (quoting Former Florida Senator Dave Aronberg).

8

models that they may utilize as well. The experts have confirmed that the identification and calculation of damages for Tribes differs greatly from those performed for the cities and counties in the bellwether actions. Osceola Decl., ¶ 6.

There is currently no CMO setting deadlines for briefing on certification of a negotiation class for the tribal track, no date for a status conference, and the tribal leadership committee has not coordinated a call with counsel in the related actions since July 2019. Osceola Decl. ¶¶ 2-3. Although the Blackfeet have continuously lobbied the Plaintiffs' Steering Committee to move the Court to issue a CMO and trial date for the Blackfeet, the Blackfeet's request for a CMO and trial date has not yet been brought to the Court by MDL leadership. *Id.* Moreover, while the bellwether actions in the tribal track have idled, the city and county cases are rapidly approaching global settlement with many of the named defendants.

## ARGUMENT

**A. The Court Should Enter a Case Management Order to Expedite the Resolution of the Cases and Empower the Tribes to Participate in Global Settlement Negotiations.**

By entering a CMO, the Court will help "secure the just, speedy, and inexpensive determination" of the Cases. Fed. R. Civ. P. 1. As it did for the cities and counties, the Court should enter a CMO setting a briefing schedule for certification of a settlement negotiation class so that the Tribes can speak with one voice in negotiations with the Defendants. *See* Ex. 1. The Florida Tribes are prepared to participate and expend the required resources to advance the Tribal Track to resolution as quickly and efficiently as the counties and cities have done in Track One.

With many opioid manufacturers and distributors bowing out of the cities' and counties' bellwether cases via individual settlements, and the Court's approval of a city and county settlement class, the parties in those cases seem headed for a global resolution amid arms-length settlement negotiations. As this Court is well aware, multi-billion dollars settlements are being

9

discussed, and individual claims are being settled for hundreds of millions of dollars. Florida Tribes and their counsel are conspicuously absent from these negotiations and settlement discussions. By entering the CMO and providing an orderly method for the Tribes to seek certification of a negotiation class, the Court will give the Tribes a powerful seat at the negotiating table and empower the Tribes to advance their interests at this critical stage.

**B. The Court Should Set a Date for a Status Conference for the Tribal Track Cases to Organize the Efforts of Counsel for the Parties.**

The Court should hold a status conference where it can coordinate efforts between the Tribal Track Cases and Defendants and address certification of the settlement negotiation class and other pending matters of concern to the parties. Federal Rule of Civil Procedure 16(a) provides that a court may, in its discretion, direct attorneys for the parties to appear before it for a conference in order to expedite matters. Because of the strong public interest in a prompt and orderly resolution of the remaining issues in this case, the Florida Tribes respectfully request that the Court schedule a status conference at its earliest convenience to address procedures and schedule for future proceedings. Counsel for the Florida Tribes will make themselves available at the Court's convenience.

**C. The Court Should Formally Name the Tribal Leadership Committee and Add William R. Scherer and Adam M. Moskowitz to Assist with Class Certification and Global Settlement Talks.**

The Seminole and Miccosukee Tribes are represented by William R. Scherer and Adam M. Moskowitz, two seasoned class action litigators who are strongly committed to immediately advancing the interests of all Tribes and who are prepared to expend the time and resources required to organize the pending Tribal Track cases moving toward global resolution.[10]

---

[10] Undersigned counsel has been actively following and litigating these cases with Court-appointed leadership such as Chris Seeger and Paul Geller, and admire the exemplary work done by counsel in negotiating on behalf of other parties such as cities and counties. Undersigned counsel

10

Undersigned counsel have decades of experience representing Native American Tribes and are very familiar with the unique legal and factual issues they face. Furthermore, in this MDL, undersigned counsel have been litigating cases within the Tribal Track over the last year. During this time, they have retained some of the best experts in the country to develop a damages model specific to Native American Tribes. As the law firms representing all Native Americans within the state of Florida, the epicenter of the opioid crisis, undersigned counsel will bring a valuable perspective to the Tribal Leadership Committee, and help fight for the interests of all Tribes.

Below, undersigned counsel provide a brief description of their qualifications for inclusion on the Tribal Leadership Committee.

### 1. William R. Scherer, Conrad & Scherer L.P.

Since William R. Scherer founded C&S in 1974 with his late partner, Rex Conrad, C&S has grown into one of Florida's leading law firms, with an international presence. Mr. Scherer has litigated over 100 trials in both jury and non-jury cases before state, appellate, and federal courts. Notably, Mr. Scherer led his complex litigation team as lead counsel for victims of the infamous multi-billion-dollar Ponzi scheme orchestrated by Scott Rothstein, and achieved an historic settlement returning to investors what is said to be the highest percentages of recovery for victims of a Ponzi scheme. Mr. Scherer led his team of attorneys and paraprofessionals in the representation of a diverse group of plaintiffs seeking recovery of over $225 million in investor losses resulting from a multi-billion-dollar structured settlement Ponzi scheme. This nationally publicized case focused on Toronto Dominion Bank's (TD Bank) role in facilitating this criminal enterprise asserting novel claims that the Bank willfully aided and abetted the Ponzi fraud. After

---

appreciate the opportunity to work in coordination with these experienced leaders to advance Tribal interests.

11

months of litigation, the matter was resolved through settlement resulting in the highest percentage recovery for victims entangled in a Ponzi scheme. News outlets described the settlement as a "huge victory" and a "landmark" lawsuit. In addition to the Scott Rothstein litigation, other significant matters that illustrate C&S's experience in leading complex litigation include:

- *Lori Parrish, Broward County Property Appraiser v. Board of County Commissioners, Broward County, Florida*, Case No.: 13-023090. C&S successfully obtained a writ of mandamus on behalf of Broward County Property Appraiser Lori Parrish after the Broward County Board of Commissioners failed to comply with its statutorily mandated duty to fully fund the first quarter payment of the Property Appraiser's Fiscal Year 2014 Budget as approved by the Department of Revenue.

- In 2005, Mr. Scherer co-represented a doctor and health care entrepreneur who had purchased HIP of Florida—now Vista Health Plans of Florida—from HIP of New York. Scherer filed a suit on behalf of his client against HIP of New York alleging that HIP hid financial information from his client who had purchased the company for $40 million. Following a 14-week trial, and despite HIP of New York's countersuit for breach of contract, a jury awarded one of the largest individual verdicts in Broward Circuit Court history. That award included an award of compensatory damages for fraud and the cancellation of a multi-million dollar note to the defendant. Jurors had found liability for punitive and compensatory damages, but before they could determine an award on punitive damages, the case was settled out of court.

- Mr. Scherer led his team of attorneys representing President George W. Bush during the historical 2000 vote recount and personally represented the President in the high stakes Broward County recount. Conrad & Scherer's responsibilities as counsel to President Bush included advising the President on his legal strategy in Broward County and also acting as a key contributor in Bush's distinguished statewide Florida legal team. In fact, President Bush has praised Conrad & Scherer's attorneys for their important legal contributions to his success in Florida. The firm's contribution has also been implicitly recognized in the United States Supreme Court decision of Bush v. Gore, 531 U.S. 98 (2000), where the high court freed Florida Secretary of State Katherine Harris's certification of George W. Bush as the winner of Florida's electoral votes in the 2000 presidential election.

- Represented a municipality and prevailed at trial in a $100 million-dollar lawsuit brought by a large developer against the municipality for breach of an alleged contract to develop 11 acres of Florida oceanfront property.

**2.      Adam M. Moskowitz, The Moskowitz Law Firm**

Adam Moskowitz has served as Lead, Co-lead or as part of Plaintiffs' counsel in numerous nationwide complex class actions. For almost three decades, Adam Moskowitz has stood at the forefront of the practice of complex class action and commercial litigation. During that time, he has earned the trust of clients nationwide by successfully attaining favorable settlements and precedent-setting verdicts with billions of dollars in relief for plaintiffs.

### a. FieldTurf Litigation

Adam Moskowitz was appointed by Judge Michael A. Shipp as Co-Lead Counsel in *In re: FieldTurf Artificial Turf Marketing and Sales Practices Litigation*, Case No. 3:17-02779, (D. N.J.) ("FieldTurf"), representing school districts and municipalities across the country who were sold defective artificial turf products. A major factor in that appointment was due to the fact that Mr. Moskowitz filed one of the first actions and successfully advanced the litigation working amicably with other law firms against FieldTurf. Since being appointed, Mr. Moskowitz has been coordinating over a dozen law firms in multiple states, and has advanced the litigation past the motion to dismiss stage.

### b. Cost of Insurance ("COI") Increase Litigation

Adam Moskowitz served as Co-Lead Counsel in a class action case against Transamerica Life Insurance Company arising out of their issuing illegal Cost of Insurance ("COI") increases. As Co-Lead Counsel, Mr. Moskowitz, successfully negotiated a nationwide class resolution worth over $115 million which received final approval in early 2019.  A second cost of insurance class against Transamerica is pending.  Further, there are two other cost of insurance actions against Lincoln National Life Insurance Company before Judge Gerald J. Pappert in the Eastern District of Pennsylvania, where Adam Moskowitz is on the Plaintiffs' Executive Committee. *In re: Lincoln*

*COI Litigation*, 16-cv-06605-GJP (E.D. Pa.); *In re: Lincoln National 2017 COI Litigation*, 2:17-cv-04150 (E.D. Pa.) which Mr. Moskowitz is currently litigating.

### c. Force-Placed Insurance Litigation

In the Force-Placed Insurance ("FPI") litigation, Adam Moskowitz was responsible for coordinating over 60 law firms who had filed dozens of class actions against 31 mortgage servicers in courts across the country. 31 FPI class action cases have been resolved, recovering $5.9 billion dollars in monetary relief for 5.3 million homeowners across the country. After extensively researching and investigating the cases with insurance expert Birny Birnbaum, who runs the Center for Economic Justice and is a member of the National Association of Insurance Commissioners, Adam Moskowitz brought the first FPI class action before Judge Robert Scola in the Southern District of Florida against Wells Fargo. As a result of careful research and active prosecution of the case, this was (and is) one of the only FPI class actions that resulted in a litigated certified class, which then settled and brought substantial relief for tens of thousands of Florida homeowners.

Following the success of the Wells Fargo FPI case, Adam Moskowitz then filed an additional five class action cases against the largest banks and lenders in the country and their FPI insurers along with co-counsel, including Aaron Podhurst from Podhurst Orseck, P.A., and Howard Bushman, Esq., who is a founding partner of the Moskowitz Law Firm with over 19 years of class action experience.  The group took the unique approach to consolidate their five pending actions before then-Chief Judge Frederico Moreno in the Southern District of Florida. Judge Moreno denied motions to dismiss these actions, and set them for trial. These actions were actively litigated, and eventually settled.   Adam Moskowitz continued these FPI class actions over the next five years against different banks, servicers, and FPI insurers, resolving over 30 actions. Each FPI

14

case had different facts, different defense counsel, and coordinated efforts with numerous different co-counsel.

Following the success of the Florida FPI class actions, Mr. Moskowitz was contacted by New Jersey homeowners who were subject to the same fraudulent FPI business practices. Consequently, Mr. Moskowitz he filed eight additional cases in the District of New Jersey, which have already been actively litigated and settled. Judge Brian Martinotti granted final approval to three of those cases, Judge Hillman granting final approval to one, and two are still pending. Adam Moskowitz served as Lead Counsel in all of the FPI Cases he was involved in, and was able to resolve them all, with the assistance of prominent mediator Rodney Max, who helped settle 23 cases, and mediator Jonathan Marks, who helped settle eight.

## CONCLUSION

The Native American Tribes can no longer afford to wait in line to press their claims against the Defendants in the opioid cases. The Tribes require Court intervention to advance these cases toward trial and, possibly, settlement. In support of this goal, the Court should (a) grant the Florida Tribes' motion to enter a CMO that will set forth a briefing schedule for Native American Tribes to file a motion to certify a negotiation class; (b) set a status conference for the Tribal Track Cases; and (c) enter an order formally appointing William Scherer of Conrad Scherer LP and Adam M. Moskowitz of The Moskowitz Law Firm to the Tribal Leadership Committee.

Dated: October 21, 2019                                    Respectfully Submitted,

By: */s/* Adam M. Moskowitz                    By: /s/William R. Scherer
Adam M. Moskowitz                                   William R. Scherer, Esq.
Florida Bar No. 984280                              FL Bar No. 169454
adam@moskowitz-law.com                       wscherer@conradscherer.com
Howard M. Bushman                                **CONRAD & SCHERER, LLP**
Florida Bar No. 0364230                           633 South Federal Highway
howard@moskowitz-law.com                  Eighth Floor
Curtis E. Osceola                                        Fort Lauderdale, FL 33301

15

Florida Bar No. 1015979
curtis@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

*Counsel for the Miccosukee Tribe of Indians of Florida*

*Co-counsel for the Seminole Tribe of Florida*

Phone: (954) 462-5500
Fax: (954) 463-9244

*Co-counsel for the Seminole Tribe of Florida*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>**APPLIES TO TRIBAL TRACK CASES** | Case No. 1:17-CV-2804<br><br>Hon. Dan A. Polster |

### [PROPOSED] CASE MANAGEMENT ORDER NINE

Before the Court is Plaintiffs Seminole Tribe of Florida and Miccosukee Tribe of Indians of Florida's motion for a case management order. The court hereby sets the following scheduling order and related case management provisions for the bellwether cases in the Tribal Track. Thus, the parties are hereby ORDERED as follows:

### I. APPLICABILITY AND SCOPE OF ORDER

a.  **Scope.** This CMO is intended to conserve judicial resources, reduce duplicative service, avoid duplicative discovery, serve the convenience of the parties and witnesses, and promote the just and efficient conduct of this litigation. See Fed. R. Civ. P. 1. This Order and, unless otherwise specified, any subsequent pretrial or case management orders issued in this MDL, shall govern the practice and procedure in those actions transferred to this Court by the Judicial Panel on Multidistrict Litigation ("JPML") that were filed by federally recognized Indian Tribes. These cases will be referred to as the "Tribal Track Cases." The provisions of this Order, and any subsequent pretrial order or case management order issued in the Tribal Track Cases, shall supersede any inconsistent provisions of the Local Rules for the United States District Court, Northern District of Ohio ("Local Rules"). The coordination of the Tribal Track Cases, including certain of these cases that have been or may be directly filed into this MDL, does not constitute a waiver of any party's rights under *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S.

17

26 (1998). This CMO shall not be construed to affect the governing law or choice-of-law rules in any case subject to the CMO.

b. Application to All Parties and Counsel. This Order and all subsequent pretrial or case management orders shall be binding on all parties and their counsel in all cases currently pending, or subsequently transferred to, removed to, or pending in the Tribal Track Cases, and shall govern each case in the Tribal Track Cases unless the order explicitly states that it relates only to specific cases.

c. Amendment and Exceptions. This Order may be amended by the Court on its own motion, and any party may apply at any time to this Court for a modification or exception to this Order. The Court expects it will issue subsequent case management orders addressing the cases mentioned in this CMO and other Tribal Track Cases the Court now enters the following case management schedule:

| **Deadline** | **Event** |
|---|---|
| December 16, 2019 | Tribal Track Plaintiffs shall file their motion for certification of a negotiation class. |
| 30 days after motion for certification of a negotiation class. | Deadline for Defendants' opposition to certification of a negotiation class. |
| 15 days after opposition to certification of a negotiation class. | Deadline for Tribal Track Plaintiffs' reply to Defendants' opposition to certification of a negotiation class. |

For those documents that must be filed with the Court, the deadline for filing is 12:00 PM on the applicable due date as indicated above.

IT IS SO ORDERED.

                                                                                                                             _____

                                                                  DAN AARON POLSTER
                                                                 UNITED STATES DISTRICT JUDGE