IN THE CIRCUIT COURT OF
MARSHALL COUNTY, WEST VIRGINIA



2018 DEC 28 AM 11: 11

BROOKE COUNTY COMMISSION,
HANCOCK COUNTY COMMISSION,
HARRISON COUNTY COMMISSION, LEWIS
COUNTY COMMISSION, MARSHALL
COUNTY COMMISSION, OHIO COUNTY
COMMISSION, TYLER COUNTY
COMMISSION, and WETZEL COUNTY
COMMISSION,

    Plaintiffs,

vs.

PURDUE PHARMA L.P.; PURDUE PHARMA
INC.; THE PURDUE FREDERICK COMPANY,
INC.; MARK RADCLIFFE; MARK ROSS;
PATTY CARNES; TEVA
PHARMACEUTICALS USA, INC.;
CEPHALON, INC.; JANSSEN
PHARMACEUTICALS, INC.; ORTHO-
MCNEIL-JANSSEN PHARMACEUTICALS,
INC. n/k/a Janssen Pharmaceuticals, Inc.; JANSSEN
PHARMACEUTICA, INC. n/k/a Janssen
Pharmaceuticals, Inc.; JOHNSON & JOHNSON;
ENDO HEALTH SOLUTIONS INC.; ENDO
PHARMACEUTICALS, INC.; ALLERGAN plc;
ACTAVIS plc; ACTAVIS, INC.; ACTAVIS
LLC; ACTAVIS PHARMA, INC.; WATSON
PHARMACEUTICALS, INC.; WATSON
PHARMA, INC.; WATSON LABORATORIES,
INC.; MCKESSON CORPORATION;
CARDINAL HEALTH, INC.;
AMERISOURCEBERGEN DRUG
CORPORATION; RITE AID OF MARYLAND,
INC.; KROGER LIMITED PARTNERSHIP II;
CVS INDIANA, L.L.C.; WAL-MART STORES
EAST, LP; GOODWIN DRUG COMPANY;
WEST VIRGINIA BOARD OF PHARMACY;
DAVID POTTERS; EDITA P. MILAN, M.D.;
TRESSIE MONTENE DUFFY, M.D.; EUGENIO
ALDEA MENEZ, M.D.; SCOTT JAMES
FEATHERS, D.P.M.; and AMY LYNN BEAVER,
P.A.-C,

    Defendants.

Civil Action No. 17-C-248

The Honorable David W. Hummel, Jr.

## ORDER DENYING CARDINAL HEALTH, INC.'S MOTION TO DISMISS

**Exhibit A**

On November 7, 2018, Plaintiffs and Defendant Cardinal Health, Inc. ("Cardinal") appeared for a hearing on Cardinal's Motion to Dismiss. Having considered the pleadings, the parties' arguments and authorities in support of as well in opposition to the instant motion, the applicable law, other materials filed by the parties, and the entire court record herein, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Plaintiffs filed their Complaint in the above Civil Action on December 13, 2017, asserting claims related to the manufacturing, marketing, sale, and/or distribution of opioids in the Plaintiff counties and in the areas surrounding the counties.

2. The Plaintiffs' Complaint asserts the following causes of action against Cardinal: Public Nuisance (Count I, Compl. ¶¶ 673-90); Unjust Enrichment (Count II, *id.* ¶¶ 691-99); Fraud by Concealment (Count III, *id.* ¶¶ 700-02); and Negligence (Count IX, *id.* ¶¶ 755-75).

3. On April 24, 2018, Cardinal filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.

4. In its Motion, Cardinal argues that Plaintiffs' claims should be dismissed for the following reasons: the *res judicata* doctrine bars this case because the West Virginia Attorney General (the "WVAG") previously brought an action on behalf of the State asserting similar claims against Cardinal, which were settled and released; and Plaintiffs' claims are barred by the applicable statutes of limitations and the doctrine of laches.

5. Plaintiffs oppose Cardinal's arguments as follows: the doctrine of *res judicata* does not foreclose their claims because it requires substantially the same parties and the same causes of action, but the parties here are different and there has been no prior litigation between Plaintiffs and Cardinal concerning the opioid crisis; Plaintiffs' claims are timely under the discovery rule,

the continuing tort theory, and equitable estoppel; and laches requires proof of lack of diligence by Plaintiffs and prejudice to Cardinal, and Cardinal has established neither.

## Legal Standard

6. A motion to dismiss for failure to state a claim "should be viewed with disfavor and rarely granted." *John W. Lodge Distrib. Co. v. Texaco, Inc.*, 161 W. Va. 603, 606, 245 S.E.2d 157, 159 (1978). "The purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure is to test the sufficiency of the complaint." *Cantley v. Lincoln Cty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007). To that end, a "trial court considering a motion to dismiss under Rule 12(b)(6) must liberally construe the complaint so as to do substantial justice." *Id.* See also W.Va. R. Civ. P. 8(f). The trial court's consideration begins, therefore, with the proposition that "[f]or purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true." *John W. Lodge Distributing Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1978). The policy of Rule 8(f) is to decide cases upon their merits, and if the complaint states a claim upon which relief can be granted under any legal theory, a motion under Rule 12(b)(6) must be denied. *Id.* at 158-59.

### I. *Res Judicata*

7. *Res judicata* "generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in the earlier action." *Beahm v. 7 Eleven, Inc.*, 223 W.Va. 269, 272, 672 S.E.2d 598, 601 (2008) (per curiam) (quotation omitted). The application of *res judicata* is dependent on the "distinctive characteristics of a particular case," *id.* at 276, 605, and the party seeking to invoke the bar must show that "the two actions . . . have (1) substantially the same

parties who sue and defend in each case in the same respective character [and] (2) the same cause of action[.]" *Id.* at 602.

8. The Court finds and concludes that Plaintiffs' claims are not precluded by *res judicata* for several reasons.

**A. No privity exists between Plaintiffs and the State.**

9. Where the parties are not the same, the defense of *res judicata* requires a showing of privity. *Beahm*, 223 W.Va. at 276, 672 S.E.2d at 605.

10. Under West Virginia statutory and common law, Plaintiffs are not part of the State of West Virginia or State agencies. *See, e.g.*, W. Va. Code § 29-12A-3(e) ("'State' means the state of West Virginia, including, the Legislature, the supreme court of appeals, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, colleges, and universities, institutions, and other instrumentalities of the state of West Virginia. *'State' does not include political subdivisions.*") (emphasis added); W. Va. Code § 14-2-3 ("'state agency' shall *not* be considered to include county commissions, county boards of education, municipalities, or any other political or local subdivision of the state regardless of any state aid that might be provided.") (emphasis added); *Pniewski v. Martorella*, No. 3:04-0354, 2008 WL 4057523, *2 (S.D. W. Va. August 25, 2008) ("[T]here is no authority for characterizing the county commission as an 'arm of the State.'").

11. The West Virginia Constitution also establishes counties as separate units of government and grants explicit powers to county commissions over the "superintendence and administration of the internal police and fiscal affairs of their counties." W. Va. Const., art. IX, sec. 11.

3

12. Therefore, the Court finds and concludes that the required privity relationship is absent.

### B. The WVAG lacks the power to represent Plaintiff counties.

13. West Virginia law generally authorizes the WVAG to represent the State and State entities. *See, e.g.*, W. Va. Code § 5-3-2 (WVAG's power to prosecute suits limited to supporting "official duties of any *state* officer, board or commission") (emphasis added). But the Court finds and concludes that neither the Constitution, nor any statute, nor the common law provides the WVAG with the legal authority to bring suit on behalf of Plaintiffs. Rather, Plaintiffs have broad statutory authority to address the public health, safety, and fiscal consequences of the opioid epidemic in their communities. *See* W. Va. Code § 7-1-3kk.

14. Where the claims of two overlapping governmental entities are involved, privity does not exist. For example, in *New York v. Beretta*, the court refused to find that "a prior case brought by New York State in its *parens patriae* capacity will bar the City of New York or other sub-state entities from subsequently bringing suit on the same cause of action." 315 F. Supp. 2d 256, 266 (E.D.N.Y. 2004). The court noted that the *res judicata* analysis differed when the claims involved a subsequent suit by a sub-state governmental body, not a private citizen:

> The City is not precluded under the doctrine of *res judicata*, however, simply because its residents, if suing as private plaintiffs, might be barred from bringing suit. The City's interest cannot be characterized as coterminous with that of its inhabitants'; it has a municipal interest that is separate and distinct from, and not duplicate of, the interests of individual New Yorkers.

*Id.* Finding "nothing in the law to suggest that the Attorney General has the authority to represent the City's legal interests or that the exclusive grant of authority to the Corporation Counsel in the City's Charter is subject to exceptions, the court refused to find privity for *res judicata* purposes. *Id.* at 274.

4

15.  The Court further finds and concludes that the opioid crisis is a local concern analogous to the gun crime considered by the court in *Beretta*. Like in *Beretta*, the Court finds and concludes that barring Plaintiffs from litigating their claims would interfere with the proper delineation of authority between Plaintiffs and the WVAG. Thus, the Court finds and concludes that the WVAG did not have the power to bring, let alone release, Plaintiffs' nuisance claim.

C.  **The doctrine of "virtual representation" does not apply.**

16.  The "doctrine of virtual representation cannot be construed to imply privity to all who derive injury from a single wrongful act." *Beahm*, 672 S.E.2d at 603.

17.  The Supreme Court of Appeals has recognized the application of virtual representation only in cases in which a nonparty actively participated in and exercised control over the conduct of the prior litigation, where a nonparty impliedly consented to abide by a prior judgment, or where the nonparty's actions involved deliberate maneuvering or manipulation in an effort to avoid the preclusive effects of a prior judgment. *See, e.g., Galanos v. National Steel Corp*, 178 W.Va. 193, 195-96, 358 S.E.2d 452, 454-55 (1987).

18.  The Court finds and concludes that none of these conditions are present here and, as such, the doctrine of virtual representation does not apply to foreclose Plaintiffs' claims.

D.  **The claims are not based on the same causes of action.**

19.  For *res judicata* to apply, "the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action." *West Virginia Human Rights Comm'n*, 618 S.E.2d at 471.

20.  Because the WVAG sought recovery on behalf of the State and could not seek recovery for the claims asserted by Plaintiffs, the Court finds and concludes that the claims are not

5

identical. *See, e.g., Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1470 (10th Cir. 1993).

## II. Statute of Limitations

21. The West Virginia Supreme Court has articulated the following five-step analysis to determine whether a cause of action is time-barred:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, … Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

Syl. Pt. 5, *Dunn v. Rockwell*, 225 W. Va. 43, 46, 689 S.E.2d 255, 258 (2009) (internal citations omitted).

22. The Court finds and concludes that the resolution of steps two through five in this case involve questions of material fact that will need to be resolved by the trier of fact. Thus, the Court denies Cardinal's statute of limitation argument on that basis alone.

23. The Court further finds and concludes that the statute of limitations that governs public nuisance claims in West Virginia "does not accrue until the harm or endangerment to the public health, safety and the environment is abated." Syl. pt. 11, *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 488 S.E.2d 901 (1997). Here, Plaintiffs have

6

adequately alleged that the public nuisance has not been abated. Therefore, the Court finds and concludes that Plaintiffs' claims are not barred by the statutes of limitations.

24. The Court further finds and concludes that Plaintiffs' Complaint adequately alleges fraudulent concealment, which tolls the applicable statutes of limitations. "Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Trafalgar*, 211 W. Va. at 584, 488 S.E.2d at 300. Plaintiffs have alleged concealment and knowledge (Compl. ¶ 701), a duty to disclose (*id.* ¶ 641), and intent (*id.* ¶ 645).

25. The Court further finds and concludes that Plaintiffs' claims are timely under the discovery rule. In tort actions, the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured; (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty; and (3) that the conduct of that entity has a causal relation to the injury. Syl. pts. 2-3, *Dunn*, 689 S.E.2d 255 (2009). Here, the Court finds and concludes that the second factor of *Dunn* forecloses dismissal. As alleged by Plaintiffs, the identity of the manufacturers and wholesale distributors who engaged in commerce, let alone the conduct of those that may have engaged in unlawful conduct, was not public knowledge. As further alleged, this information was secreted in two locations: (1) the DEA ARCOS database; and (2) the Defendants' Suspicious Order Monitoring System. Neither of which are publicly available.

26. The Court further finds and concludes that equitable estoppel applies. In West Virginia "estoppel applies when a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentations or concealment of material fact." *Bradley v. Williams*, 195 W. Va. 180, 185, 465 S.E.2d 180, 185 (1995) (citations

7

omitted). As such, Plaintiffs have pled sufficient facts to support tolling the statute of limitations based on equitable estoppel.

27. The Court further finds and concludes that West Virginia has adopted the continuing tort theory, which provides "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." *Graham v. Beverage*, 211 W. Va. 486, 566 S.E.2d 603, Syl. Pt. 11 (2002). Here, Plaintiffs have alleged a continuing tort. (Compl., ¶ 646.) Therefore, Plaintiffs' claims are not barred by the statutes of limitations under the continuing tort theory.

### III. Laches

28. "[T]he defense of laches is sustainable only on proof of two elements: (1) lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting the defense." *Adkins v. CMH Homes Inc.*, No 3:13-cv-32123, 2014 WL 2112859, at *6 (S.D. W.Va. May 19, 2014) (quotation marks and text alterations omitted). "The bare claim that something is 'manifestly unfair' or the mere existence of delay does not begin to meet the defendant's burden of *proving* either lack of diligence by the plaintiff or prejudice to the party asserting the defense, which is necessary in order to sustain the defense of laches." *Adkins*, 2014 WL 2112859, at *6 (emphasis added; quotation marks and text alterations omitted).

29. "As would be expected at the motion to dismiss stage, where the facts alleged in the Complaint are taken as true and outside evidence is normally not to be considered by the Court," *id.* at *7, the Court finds and concludes that there is "no prejudice or injury to [Cardinal] sufficient to find Plaintiffs' . . . claim[s] barred by laches is evident in this case." *Id.*

8

## ORDER

Based upon the foregoing Findings of Fact and Conclusions of Law, the Court, taking the allegations in the Complaint as true and construing the Complaint in the light most favorable to Plaintiffs, **FINDS** that Plaintiffs' Complaint sufficiently states claims for relief against the Defendants and the Defendants have not demonstrated beyond doubt that Plaintiffs can prove no set of facts in support of their claims (as it must do to succeed on a motion to dismiss). Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss is denied in its entirety.

It is further **ORDERED** that all exceptions and objections are noted and preserved.

It is further **ORDERED** that an attested copy of this Order shall be provided to all counsel of record.

**ENTERED** THIS 28th day of December, 2018.

Honorable David W. Hummel, Jr.
Judge of the Circuit Court
Marshall County, West Virginia

A Copy Teste:
Joseph M. Rucki, Clerk
By _____ Deputy

9