**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

IN RE: OPIOID LITIGATION.,                                Civil Action No.  19-C-9000

## MASS LITIGATION PANEL

**Alan D. Moats - Lead Presiding Judge**
**Derek C. Swope - Presiding Judge**
**Christopher J. McCarthy - Presiding Judge**

## HEARING

BEFORE:  The Honorable Alan D. Moats, Lead Presiding Judge, the

Honorable Derek C. Swope and the Honorable Christopher J. McCarthy,

Presiding Judges,. in the Kanawha County Courthouse,  Ceremonial Courtroom,

Charleston, Kanawha County, West Virginia, at 10:02 a.m., on the 22nd day of

August, 2019.

APPEARANCES:    **ANN L. HAUGHT, Deputy Attorney**
**VAUGHN T. SIZEMORE, Deputy Attorney General**
**ABBY G. CUNNINGHAM, Deputy Attorney General**
Consumer Protection Division
812 Quarrier Street, First Floor
Charleston, West Virginia 25301
    Counsel for State of West Virginia ex rel Patrick Morrisey,
    Attorney General

Donna Miller-Mairs, Certified Court Reporter
7724 Sissonville Drive, Sissonville, West Virginia 25320
304-988-9581

**Exhibit C**

13

```
 1   order?
 2            MR. SIZEMORE:   In Local 391 versus Terry, it
 3   made the distinction between equitable and damages,
 4   damages bringing tort, equity the penalties and the
 5   disgorgement, and the restitution bringing equity.
 6            So those are not damage claims.  They are
 7   equitable relief claims.
 8            JUDGE MOATS:   Okay, well, I understand that,
 9   but I guess that wasn't my question.  My question is
10   are we nitpicking the term.  Maybe it was just part of
11   an order.
12            MR. SIZEMORE:   I don't believe so, Your
13   Honor.  I think if you look at Trial Court Rule 2604,
14   in defining mass litigation, each of the claims
15   portend claims in law.
16            No. 1, mass accidents where people are
17   injured; two, mass courts; three, property damage,
18   mass courts; four, economic damage, mass courts or
19   economic laws like product liability case; and five is
20   nuisances or similar property damage cases such as the
21   fracking claims.  All of those sound in tort, not in
22   equity.
23            The Attorney General's case is specifically
24   on equity, which will bring a myriad of problems to
```

14

```
 1   this Mass Litigation panel.

 2            For example, none of the Attorney General's

 3   claims can be heard by a jury.  They all must be

 4   decided by the judge.

 5            JUDGE MOATS:   How is that a problem?

 6            MR. SIZEMORE:   That is a problem because

 7   there is a lot of evidence that will come in for the

 8   State's case that would not be admissible for the

 9   political subdivisions.

10            JUDGE MOATS:   Isn't that the role of the

11   judge?

12            MR. SIZEMORE:   It would be, but I would

13   almost bet that before this matter goes to trial

14   Purdue Pharma will file a motion to bifurcate the

15   State's action from the political subdivision cases to

16   prevent the jury from hearing all the evidence of

17   conduct in the southern part of the state that would

18   not be admissible for the Plaintiffs or the Defendants

19   -- the Plaintiffs in the Mass Litigation panel, which

20   would defeat the whole purpose of being in front of

21   the Mass Litigation panel.

22            I have been involved in these cases for a

23   number of years.  In the McKesson case, when McKesson

24   had removed the State's case to federal court and it
```

Donna Miller-Mairs, CCR

1    was in front of Judge Faber, it got transferred to the

2    multi-district litigation panel.

3              At the initial status conference, Judge

4    Polster sent it back down to Judge Faber because the

5    claims by the State were different from claims by

6    political subdivisions.

7              JUDGE MOATS:   But I guess we understand all

8    of that, but I guess from our standpoint, why does it

9    not make sense to have all the actions, whether they

10   are identical, similar, substantially similar, all

11   heard in the same forum in this state where rulings

12   can be made where we know they are going to be

13   consistent.

14             We have had cases that have come to our Mass

15   Litigation panel.  We have one pending right now, the

16   Marcellus Shale cases.

17             We have cases that we have put on different

18   tracts.  We have drilling cases or wells with drill,

19   nuisance claims are brought.

20             We have cases where after the wells are

21   drilled the gas is transported downstream to

22   compressor stations, almost like little industrial

23   cities.  It has nothing to do with drilling, but it

24   has to do with the complaints of the residents who

16

1     live around there.  So that is a separate category.

2               All of those cases were sent to our Mass

3     Litigation panel, and we have them on different tracts

4     because we have similar issues involved.

5               So you look at this and it is hard to not

6     think well, it is all part of the opioid litigation.

7     Why should it be in two different courts?

8               MR. SIZEMORE:   Well, Your Honor, there are a

9     couple of different reasons I would point out.  First,

10    that in this case there are numerous plaintiffs and

11    several defendants.

12              Several of the defendants that are in this

13    litigation have already settled with the State.

14              Additionally, the West Virginia Board of

15    Pharmacy is also independent in this case.

16              JUDGE MOATS:   Okay, let's talk about the

17    West Virginia Board of Pharmacy.  You say that you are

18    assisting them in looking at pharmacy records.  Well,

19    the lawsuits against them all go strictly to the

20    insurance, if there is any insurance available.

21              As I understand, it doesn't go beyond the

22    insurance policy.  I think the insurance company would

23    have lawyers that are going to be defending them

24    there.

17

```
 1              You say you are assisting, but how would that

 2    be?

 3              Are you going to Counsel of record in the

 4    case?

 5              MR. SIZEMORE:   No, Your Honor.  The

 6    potential there is for me to personally become a

 7    witness for the Board of Pharmacy or be called by

 8    someone related to the Board of Pharmacy.

 9              There was one of the articles in the Gazette

10    that was a Pulitzer prize-winning article that dealt

11    with my appearance before the Board of Pharmacy

12    offering assistance of the Attorney General's office

13    in dealing with the suspicious order reports.

14              JUDGE MOATS:   Well, how would that affect

15    this case?

16              MR. SIZEMORE:   It would cause me to be both

17    lawyer and counsel in the same case.

18              JUDGE MOATS:   But the Board of Pharmacy, I

19    am not sure what they would have to do with you

20    against Purdue Pharma.

21              MR. SIZEMORE:   In the Mass Litigation panel

22    the Board of Pharmacy would be a defendant as well as

23    the State of West Virginia as a Plaintiff.  So I would

24    be a witness in the Mass Litigation panel against the
```

Donna Miller-Mairs, CCR

1    Board of Pharmacy or for the Board of Pharmacy,

2    hopefully neither, but that possibility is there.

3              I would also point out that in all of the

4    cases that have been before the Mass Litigation panel,

5    the Attorney General's Office has never been brought

6    into one of those cases.

7              The Attorney General -- and I believe

8    transferring the Attorney General's case to the Mass

9    Litigation panel would set a bad precedent.

10             Because Rule 26 allows for the combination of

11   two or more suits in the same circuit or multiple

12   circuits, many of the actions brought by the West

13   Virginia Attorney General under the Consumer Credit

14   Protection Act are also similar to actions brought by

15   individual plaintiffs, and the Attorney General could

16   be hauled into multiple mass litigation panels for its

17   enforcement actions.

18             JUDGE MOATS:   Who are you anticipating

19   collecting civil penalties here?

20             Is this going to be on behalf of individual

21   consumers?  Is it going to be on behalf of political

22   subdivisions such as cities or municipalities?

23             Is it going to be on behalf of hospitals or

24   is it going to be on behalf of individual citizens?

```
 1                    In looking at this, I am not quite

 2     understanding how exactly it fits into the Consumer

 3     Credit Protection Act.

 4                    I know the cases that have come up forces the

 5     AG to do this, to collect on behalf of consumers, to

 6     pay the money to consumers.

 7                    Is that what is going to happen here?  Is it

 8     going to the counties and the cities?  Is it going to

 9     go to the state?

10                    Who are these penalties going to go to if you

11     collect them?

12                    MR. SIZEMORE:   The penalties would go to the

13     state and most likely the Legislature would determine

14     where it goes.

15                    I would like to make a correction.  The

16     Attorney General has never claimed to be representing

17     political subdivisions.

18                    Legally, the Attorney General does not

19     represent political subdivisions.  They are their own

20     legal entity.

21                    JUDGE MOATS:   What are the damages -- or not

22     damages but the set of penalties?

23                    It is my understanding if you are going

24     exclusively under the Consumer Credit Protection Act--
```

```
 1   and are you?

 2            MR. SIZEMORE:   Yes, sir.

 3            JDUGE MOATS:   So you can only go back four

 4   years from the time that you filed the action?

 5            MR. SIZEMORE:   Yes, sir.

 6            JUDGE MOATS:   Which would be May 19, 2015?

 7            MR. SIZEMORE:   Yes, sir.  We can also argue

 8   a continuing action.

 9            JUDGE MOATS:   What is an individual

10   violation?

11            MR. SIZEMORE:   We brought the claims under

12   UDAP, Unfair Deceptive Acts and Practices, which has a

13   dramatically different standard of proof than any of

14   the Plaintiff's claims.

15            UDAP, we do not need to prove any reliance on

16   the false misrepresentations.  We do not need to prove

17   any actual damages flowing from them.

18            It is a violation of the Consumer Credit

19   Protection Act just to make a fraudulent

20   misrepresentation.

21            JUDGE MOATS:   Okay, so you can get $5,000

22   for each one of them?

23            MR. SIZEMORE:    Yes, Your Honor.

24            JUDGE MOATS:   How do you decide how many
```

```
 1    there were?
 2              MR. SIZEMORE:   That is going to be up to
 3    expert witnesses in discovery.
 4              JUDGE MOATS:   I mean, is it every time
 5    somebody fills a prescription, every time some doctor
 6    writes a prescription?
 7              MR. SIZEMORE:   We will argue that.  It is
 8    going to be -- it is going to be a certain -- any
 9    misrepresentation -- each misrepresentation made by an
10    employee of Purdue Pharma would be a violation of
11    UDAP.
12              JUDGE MOATS:   A misrepresentation to whom?
13              MR. SIZEMORE:   To doctors, to pharmacists,
14    to any consumer, any of their advertisements, any of
15    their -- and this is getting much beyond the complaint
16    itself, but it would be any of those could be, and we
17    would also be arguing for disgorgement.
18              JUDGE MOATS:   Why would the Attorney General
19    not try to be fighting civil penalties when we have
20    all impacted parties?
21              You say you are not trying to do that.  You
22    are not trying to do it for the municipalities, the
23    counties, strictly for the State.
24              Why?
```

22

```
 1              MR. SIZEMORE:   Well, Your Honor, there have

 2   been multiple lawsuits already filed in this matter.

 3              JUDGE MOATS:   What about those that haven't

 4   been?

 5              Are there any counties or cities that haven't

 6   filed lawsuits?

 7              MR. SIZEMORE:   I don't know, Your Honor.  It

 8   seems like most of the counties have at least, but I

 9   don't know how many cities or municipalities have or

10   have not filed them.

11              JUDGE MOATS:   But again, the question is why

12   would the AG not be doing this on behalf of the entire

13   state, every entity in the state?

14              MR. SIZEMORE:   And I can't answer that

15   question because I did nothing that --

16              JUDGE MOATS:   Were you-all involved in a

17   case in federal court in the Eastern District in front

18   of Judge Polster?

19              MR. SIZEMORE:   I am sorry?

20              JUDGE MOATS:   Has the Attorney General taken

21   any position in any matter pertaining to the case

22   before the MBL in Ohio?

23              MR. SIZEMORE:   Not --

24              JUDGE MOATS:   Have you signed off on any
```

23

```
 1    position paper in front of the judge?

 2              I know recently the Attorney Generals were

 3    arguing that the negotiation class should not be

 4    violated or recognized by Judge Polster and said 23 --

 5    I believe 23 AG's had signed off on it.

 6              Was our state one of them?

 7              MR. SIZEMORE:   I believe so, Your Honor,

 8    particularly because a majority of the municipalities

 9    --

10              JUDGE MOATS:   Why would the Attorney General

11    be doing that if you say you are not attempting to

12    collect on behalf of our entire state?

13              MR. SIZEMORE:   Well, we had represented to

14    Judge Polster as well as any other court that it has

15    come up before that we do not represent the political

16    subdivisions.  We don't have the Legislative authority

17    to represent legal subdivisions.

18              JUDGE MOATS:   Then why would you be

19    objecting to Jude Polster recognizing any negotiating

20    class on behalf of those political subdivisions?

21              MR. SIZEMORE:   Because in reviewing that

22    proposed order, it would be harmful to the State as a

23    whole and to --

24              JUDGE MOATS:   Why?
```

Donna Miller-Mairs, CCR

24

```
 1              MR. SIZEMORE:   Because a majority of the

 2   money would go to populous states rather than states

 3   mostly impacted by this.

 4              JUDGE MOATS:   Okay, but you haven't sued any

 5   of these people, have you?

 6              The only ones I see that you have got a

 7   lawsuit pending against are these defendants, the

 8   Purdue Pharma Defendants.

 9              MR. SIZEMORE:   Correct, Your Honor.

10              JUDGE MOATS:   How many entities have you

11   settled with?

12              MR. SIZEMORE:   I am sorry?

13              JUDGE MOATS:   How many entities have you

14   settled with?

15              MR. SIZEMORE:   Twelve or thirteen.

16              JUDGE MOATS:   Okay, but just how many

17   entities have been sued by the different plaintiffs

18   whether they are cities, counties?  There are what, 30

19   or 40 them?

20              MR. SIZEMORE:   Yes, Your Honor.

21              JUDGE MOATS:   Is the AG going to sue all

22   these other entities?

23              MR. SIZEMORE:   I cannot answer that

24   question.
```