

November 4, 2019

<u>*Via CM/ECF system*</u>
The Hon. Dan Aaron Polster
Carl B. Stokes U.S. Court
House Courtroom 18B
801 West Superior
Avenue Cleveland, OH
44113-1837

**Re:**     *In Re: National Prescription Opiate Litigation, 1:17-md-2804 (N.D. Ohio)*

Dear Judge Polster:

In accordance with your order Order dated October 25, 2019, and after consulting with Don Barrett, counsel for West Boca Medical Center, Inc. ("WBMC") and representative of over 360 hospital MDL plaintiffs in 34 states on the Plaintiffs Executive Committee, Plaintiff The Seminole Tribe of Florida (the "Seminole") respectfully requests the Court to consolidate its cases with WBMC's case[1] and remand both actions as part of the "Hub and Spoke" remands to the Southern District of Florida – the original epicenter of the Opiate Crisis – for a bellwether trial against Defendants (1) Cardinal Health, Inc. ("Cardinal"), (2) Abbott Laboratories, Inc. ("Abbott), and (3) Walgreen Company ("Walgreens").

A consolidated trial in south Florida will significantly advance both the Tribal Track Cases and the Hospital Cases. Through this consolidated approach, the Seminole and WBMC will: (1) jointly establish liability for the Defendants while (2) separately proving the damages unique to Native American Tribes and hospitals and (3) highlighting the important events and facts regarding the Opiate Crisis that occurred in south Florida. Any bellwether "Hub and Spoke" program should include south Florida because the evidence uncovered in this litigation proves that it served as the epicenter of the Opioid crisis and thus will serve a predictive, sampling result, which is the main purpose of any bellwether program. Additionally, as one of the most efficient and effective districts in the federal system, the Southern District of Florida will serve as an ideal venue to ensure timely resolution of the consolidated proceedings.

---

[1] *Seminole Tribe of Florida v. Purdue Pharma LP, et al.,* Case No. 1:19-op-45912 (N.D. Ohio) and *West Boca Medical Center, Inc. v. AmerisourceBergen Drug Corp., et al.,* Case No. 1:18-op-45530 (N.D. Ohio).

## I.    BACKGROUND

The Seminole Tribe is the unconquered Tribe. The Seminoles are not subject to a treaty with the United States, and has fought for centuries to maintain its sovereignty. Its continued resistance to colonialism and military incursion earned the Seminole its standing as one of the last unconquered tribes. The Seminole is the largest Tribe in the state of Florida, with reservations throughout the state.[2]

The Seminole reside primarily in South Florida, an area of the country which has been one of the hardest hit by the opioid crisis. South Florida was the center of the opioid crisis because of its infamous "pill mills" that supplied over 5.5 billion hydrocodone and oxycodone pills into communities from 2006 to 2012.[3] During that time, "[Florida] became the pill suppliers for the rest of the country"[4] and South Florida communities became inundated with opioids. Many Seminole tribal members sadly fell victim to the massive influx of opioids into their community and the direct resulting adverse consequences of such drug addiction.

The Seminole responded to this crisis by building drug treatment facilities and dedicating millions of dollars in tribal funds to treat affected members and provide family services, among other necessary expenses. As a result of such costly efforts, Seminole has had some success in combatting the opioid epidemic. As a result, Seminole filed its lawsuit in the Southern District of Florida seeking to abate the nuisance the opioid epidemic has caused in its community and to recover money expended on the opioid health crisis. Importantly, the Tribe has voluminous financial and health records that will inform its damages model that will include not only abatement, but economic damages attributable to reduced productivity of Seminole and its enterprises.

## II.    LEGAL STANDARD

Federal courts may authorize bellwether trials "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one more separate issues, [or] claims . . . ." Fed. R. Civ. P. 42(b). If "bellwether trials or test cases are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases." Fed. Jud. Ctr., *Manual For Complex Litigation* ("Manual") § 22.315 (4th ed. 2004). A strong test case will produce a representative verdict or settlement that will enable the parties and the Court to "determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis." *Id.* "The more

---

[2] Undersigned counsel also represents The Miccosukee Tribe of Florida in their MDL Complaint case and therefore counsel represents 100 percent of all Native Americans in the State of Florida in this MDL Litigation. Undersigned Counsel conducted numerous calls with Special Master Yanni and Special Master McGovern regarding their cases and this bellwether selection process.

[3] Emily L. Mahoney & Langston Taylor, *What fueled opioid crisis in Florida? Billions of pills, millions in campaign cash*, The Miami Herald (July 25, 2019), https://www.miamiherald.com/article233058742.html.

[4] *Id.* (quoting Former Florida Senator Dave Aronberg).

representative the test cases, the more reliable the information about similar cases will be." *Id.* Thus, "representativeness" is a "core element" that must be present for a bellwether trial "to achieve its value ascertainment function for settlement purposes or to answer troubling causation or liability issues common to the universe of claimants." *In re Chevron U.S.A., Inc.,* 109 F.3d 1019, 1019 (5th Cir. 1997).

As discussed extensively and persuasively by Federal Judge Jesse M. Furman in *In Re: General Motors LLC Ignition Switch Litigation,* No. 1:14-md-02543-JMF, at ECF No. 2763 (Order dated April 12, 2016) the universe of all cases (not just cases represented by Lead Counsel) should be considered for the bellwether program and the "specific plaintiffs and their claims should be representative of the range of cases." *Id.* (citing Managing Multidistrict Litigation in Products Liability Cases: A Pocket Guide for Transferee Judges 44 (Fed. Judicial Ctr. 2011) and Manual, § 22.315).

## III.    ARGUMENT

Applying the foregoing legal standards, the Court should conclude that the Florida MDL Plaintiffs should conduct at least one of the proposed six upcoming bellwether trials in the Southern District of Florida.

### A.    Seminole and WBMC Cases Are Representative of Cases in their Respective Tracks.

The Seminole Tribe are ideal representatives of other Native American Tribes. As a medium-sized tribe of approximately 5,000 members, the Seminole are small enough to share some of the same characteristics of smaller tribes, while large and very well-resourced enough to represent the characteristics of larger tribes as well. Further, the claims made by the Seminole mirror the exact claims advanced by all Plaintiffs in the Tribal Track cases. The Tribal Track has already established a short-form complaint where tribes could adopt claims that survived Defendants' motions to dismiss. The Seminole claims are largely the same as those adopted by every other tribe who filed a short-form complaint.

Similarly, WBMC, as one of the hospitals to be a bellwether in the motion to dismiss phase, has claims that are uniform to the constituent Hospital Cases. WBMC has seen an increase in the treatment of patients with opioid-related illnesses, including pregnant mothers and newborn babies with neo-natal abstinence syndrome. These have resulted "million dollar babies" whose treatment costs top 7 figures and because of lack of coverage result in higher uncompensated costs to hospitals like WBMC.

### B.    The Proposed Bellwether Trial Will Enable the Parties to Determine the Nature and Strength of the Claims Presented by the Tribal Track and Hospital Cases.

The Seminole and WBMC are well-situated to test the strength of their claims against the Defendants' defenses. Because of South Florida's unique position at the original epicenter of the opioid crisis, the bellwether trial will effectively test the theory advanced by most plaintiffs that damages caused by opioid are directly linked the magnitude of opioid distribution. In addition, by trying cases against Abbott, an opioid manufacturer, Cardinal, an

opioid distributor, and Walgreens, a distributor and retailer, the Court will be able to fully assess claims against the various types of defendants that are implicated in the overall litigation. The bellwether trial will provide a good opportunity to test the Defendants' defense that shifts responsibility to Florida's "pill-mill" industry supported by licensed physicians and a Medicare claims system that funded opioid purchases. With all parties able to present strong cases, this Proposed Bellwether will provide a strong data point for the MDL leadership to utilize in their global settlement negotiations.

### C.   The Proposed Bellwether Trial Will Help Determine Whether the Cases Can Be Developed and Litigated on a Group Basis.

A consolidated trial will allow the Court to assess the efficiency and effectiveness of permitting parties from different tracks, but the same geographic area, to utilize a bifurcated proceeding in which the parties jointly establish liability but then separately prove their specific causation and damages. A joint trial on liability makes sense because the factual predicate for Seminole and WMBC's claims will be nearly identical. Moreover, Counsel for both Plaintiffs have already conducted numerous discussions and plans on how exactly this consolidate trial in the Southern District of Florida can proceed efficiently and expeditiously. Counsel look forward to speaking to the Defendants' counsel to organize the most efficient process and procedures.

This approach has the potential to achieve great judicial economy in one of the costliest MDLs in history. If successful, a consolidated trial will reduce the amount of resources devoted to proving liability at trial, while preserving each plaintiff's opportunity to present its causation and damage theory. Moreover, in the unlikely event that this consolidated approach proves unworkable, this will inform leadership that group or consolidated litigation between the tracks should not be utilized. Either way, a consolidated trial here in the Southern District of Florida will be an excellent indicator for whether the cases can be developed and litigated on a group basis.

### D.   The Proposed Bellwether Trial Will Determine the Range of Values the Cases May Have if Resolution Is Attempted on a Group Basis.

Consolidation has already been proven to be a successful mechanism for settlement purposes in the Summit and Cuyahoga bellwether trials. The two counties were able to secure settlements from multiple defendants and ultimately avoid a bellwether trial. Similarly, if the Seminole and West Boca proceed with their Proposed Consolidated Bellwether Trial, it would provide significant value in two key tracks: The Tribal Track and the Hospital Track.

The resulting damages verdict will give value to two tracks simultaneously. The parties will then be able to assess the value attributable to each case track and engage in more informed negotiations.

## IV.    CONCLUSION

Based on the foregoing, the Seminole respectfully request that the Court consolidate the Seminole and WBMC cases and remand them back for a trial in the Southern District of Florida. Both Plaintiffs have experienced trial counsel, including the Barrett Law Group, The Moskowitz Law Firm and Conrad & Scherer, that have successfully tried some of the largest and most successful trials in the country and have the experience and resources to coordinate this remand trial with Lead Counsel and prosecute these important cases.

Respectfully Submitted,

Adam M. Moskowitz, Esq.
On behalf The Moskowitz Law Firm
and Conrad & Scherer, L.L.P.