# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>ALL CASES | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## PLAINTIFFS' POSITION STATEMENT REGARDING CONTINUING LITIGATION

On October 25, 2019, in keeping with this Court's efforts to streamline this MDL proceeding and advance the litigation to address a range of claims in an effective and efficient manner, this Court asked the parties to provide position papers regarding the next steps.

As a threshold matter, Plaintiffs believe that this Court should maintain primary oversight of pretrial motion practice and discovery, consistent with the Order of the Judicial Panel on Multidistrict Litigation, which transferred these cases to this Court "for coordinated or consolidated pretrial proceedings," and entrusted this Court with oversight of these matters in order to "reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions and selectively remand cases for trial including." *See* Dkt. #1. Plaintiffs' proposals regarding remand for trial presuppose this Court's continuing jurisdiction over all pretrial matters and proceedings, unless specifically otherwise stated.

On that basis, the Plaintiffs' Executive Committee provides the following proposals regarding the established case tracks and additional remands for trial.

**I.  Remaining Track One Litigation**

    **A.  Case Track 1B (CT1B): Summit County and Cuyahoga County – claims against Pharmacy Distributors and Dispensers**

On October 21, 2019, this Court created CT1B, for the claims of Cuyahoga and Summit Counties against any remaining defendants, stating the track would be governed by a new discovery

schedule and trial date. *See* Dkt. # 2863 and 2868. On October 29, 2019, Plaintiffs Cuyahoga and Summit Counties both moved for leave to submit Amendments by Interlineation to their Third Amended Complaints to add factual allegations limited to certain Pharmacy Defendants' dispensing activities and to add as Defendants certain entities related to the existing Defendants. *See* Dkt. # 2880. No new Defendant families were added and no additional changes were made to the factual allegations or legal claims asserted in the Complaint.

Plaintiffs seek to proceed with CT1B on the following basis.

**Plaintiffs**: Cuyahoga County, Ohio and Summit County, Ohio.

**Defendants for Trial**: Plaintiffs seek to proceed to trial against the follow Defendants, all of which self-distributed and dispensed prescription opioids into the Plaintiff counties:

1. <u>CVS Entities</u> (CVS Indiana L.L.C., CVS Rx Services, Inc., and proposed additional related entities CVS Pharmacy, Inc., and Ohio CVS Stores, LLC);

2. <u>Rite Aid Entities</u> (Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center, Inc. and proposed additional related entities Rite Aid Corporation, Rite Aid Headquarters Corporation, and Rite Aid of Ohio, Inc.);

3. <u>Walgreens Entities</u> (Walgreen Co. and Walgreen Eastern Co.);

4. <u>HBC Entities</u> (HBC Service Company and proposed additional related entity Giant Eagle, Inc.); and

5. <u>Discount Drug Mart</u>

**Claims for Trial:** Plaintiffs propose to sever all but their public nuisance and conspiracy claims and proceed to trial against the Defendants identified above on those two claims, for abatement and any such other relief as the court may deem appropriate.

**Status of Discovery:**

<u>Defendants</u>: Only limited additional factual discovery of these Defendants is necessary to proceed to trial. On October 29, 2019, Plaintiffs propounded additional written discovery against the remaining Defendants limited to Defendants' dispensing activities in conjunction with Plaintiffs' proposed amendments to the Complaint.

<u>Plaintiffs</u>:  Plaintiffs are aware of no information from Summit and Cuyahoga Counties that would be relevant to Plaintiffs' new allegations that has not already been provided to Defendants in discovery. The proposed CT1B Defendants participated fully in previous discovery of the Plaintiffs.

<u>Expert Discovery</u>: Additional expert discovery would be limited to matters related specifically to Defendants' dispensing activities. As a result, Plaintiffs believe that only a very limited number of new experts would be required for all parties.

**Motion Practice:**  Additional motions to dismiss are neither necessary nor appropriate in this context. Plaintiffs' proposed amendments include new factual allegations that do not alter the Court's legal analysis on either the public nuisance or conspiracy claims. Consequently, an additional round of motions to dismiss would be superfluous.

Plaintiffs do not suggest that the additional bases for liability asserted in the new allegations should not be tested prior to trial.  Instead, Plaintiffs contend that motions for summary judgment provide the appropriate vehicle.  Such an approach would be particularly efficient given that, while the Court has ruled on and denied summary judgment with respect to many proposed CT1B Trial Defendants and distribution related claims, some of the remaining Defendants were severed before the Court had an opportunity to rule on their motions for summary judgment.

Accordingly, Plaintiffs propose that the Court permit each defendant family 10 pages in which to assert any additional bases for summary judgment arising from Plaintiffs' new allegations and, once briefing is complete, rule upon the existing and supplemental motions for summary judgment.  Given that the CT1B defendants have already submitted nearly 300 pages of briefing through the previously filed motions to dismiss and motions for summary judgment,[1] 50 additional pages for this one additional factual basis for liability should be more than adequate.

---

[1] As the Court is well aware, a wide array of legal issues were already been briefed and virtually all were decided at the Motions to Dismiss and Summary Judgment stages of this litigation.  As part of that process, the CT1b defendants submitted or joined in briefs under the following docket numbers: Distributors' Motion to Dismiss (MTD) (Dkt.# 491) and Reply (Dkt.#744); Chain Pharmacies MTD (Dkt. # 497) and Reply (Dkt. # 742); Pharmacies Motion for Summary Judgment (MSJ) regarding causation (Dkt#1774) and Reply (Dkt# 2504); regarding concerted action (Dkt. #1716) and Reply (Dkt. #2513); regarding Statute of limitations (Dkt#1703) and Reply (Dkt# 2526); regarding preemptions (Dkt# 1772) and Reply (Dkt# 2503); CVS  MSJ (Dkt# 1756); and Reply (Dkt# 2527); DDM MSJ (Dkt# 1757) and Reply (Dkt# 2508); HBC (Dkt# 1759) and Reply (Dkt# 2505); Rite Aid MSJ (Dkt# 1779) and Reply (Dkt# 2505); and Walgreens MSJ (Dkt# 1764) and Reply (Dkt# 2506).

Even if there were a legal argument to be made regarding the viability of dispensing claims that was appropriate for Rule 12 treatment, the posture of the litigation militates against delaying trial to add that round of briefing here. While motions to dismiss serve an important function early in the litigation to resolve claims and dismiss defendants to avoid protracted litigation where no viable claims exist, this Court has already ruled on scores of Rule 12 and Rule 56 motions in this case and found that Plaintiffs have asserted viable public nuisance and conspiracy claims. In this situation, any legal issue that is tied up with the factual allegations Plaintiffs assert regarding Defendants' dispensing activities will be resolved more quickly at the Rule 56 stage if the parties are not delayed by additional briefing on Rule 12 motions.

**Proposed Schedule**: In light of the above, Plaintiffs propose that CT1B be set for trial in early 2020.

### B. Case Track 1C (CT1C): City of Cleveland and City of Akron, Ohio – claims against AmerisourceBergen, Cardinal, and McKesson

The Plaintiffs' Executive Committee proposes that the claims of the City of Cleveland and City of Akron be set as Track 1C.

Cleveland and Akron propose to sever the claims against Defendants AmerisourceBergen, Cardinal, and McKesson and to proceed to trial against those defendants on a public nuisance and RICO/Ohio RICO only basis.

Because these Defendants were included in the recently resolved CT1A trial, discovery and motion practice with respect to these Defendants is already complete. Pursuant to direction of this Court, Plaintiffs have fulfilled their discovery obligations. Limited additional expert discovery and limited additional summary judgment motion practice specific to Cleveland and Akron are all that remain to prepare the case for trial.

Because no CT1 trial has yet occurred, the reasons for setting the cities' trial after conclusion of the CT2 trial(s) (*see* Dkt. 1392) no longer apply. Accordingly, Plaintiffs propose that the CT1C

track, that is the City of Cleveland and City of Akron case, proceed to trial in the first quarter of 2020.

## II. Track Two Litigation

### A. Case Track 2A (CT2A): Cabell County and City of Huntington – claims against AmerisourceBergen, Cardinal, and McKesson

In CMO1, this Court selected Cabell County as one of the plaintiffs in the second wave of cases chosen for briefing on threshold legal issues. Accordingly, motions to dismiss addressed to Cabell County's Second Amended Complaint ("SAC") were filed in April 2018; briefing on these motions was completed on July 30, 2018. (*See* Dkt. # 575, 727, and 818). The motions remain *sub judice*. Thereafter, on December 31, 2018, the Court selected Cabell County and the City of Huntington as Track Two Plaintiffs ("CT2"). By order dated May 12, 2019, this Court directed the CT2 Plaintiffs to "amend their complaints (if needed) no later than June 10, 2019." (Doc. #1633). The deadline was subsequently extended and, on June 28, 2019, the CT2 Plaintiffs filed their Joint and Third Amended Complaint ("TAC") under seal with permission of the Court. (Dkt. # 1682.) A public, corrected version of the TAC was filed on September 16, 2019. (Dkt. # 2613.)

Although the TAC, which is now the operative complaint for both Cabell County and the City of Huntington, adds additional categories of defendants not included in previous iterations of Plaintiffs' complaints, with respect to AmerisourceBergen, Cardinal Health, and McKesson the TAC merely adds additional factual basis for existing allegations and claims. No additional allegations or legal bases for liability were asserted in the TAC against the defendants.

All three of these defendants were subject to extensive discovery in CT1A. Because discovery against AmerisourceBergen, Cardinal Health, and McKesson is significantly advanced, Plaintiffs propose to proceed to trial in early 2020 against those three Defendants. Discovery against the remaining defendants would then be able to proceed on a parallel track for subsequent remand and trial.

Accordingly, Plaintiffs seek to proceed with CT2A on the following basis.

**Plaintiffs**: Cabell County, West Virginia and City of Huntington, West Virginia

**Defendants for Trial**: AmerisourceBergen, Cardinal Health, and McKesson

**Claims for Trial**: Plaintiffs propose to sever all but their public nuisance claim and to proceed to trial on a public nuisance theory of liability against the Defendants set out above.

**Status of Discovery:**

Defendants: Only limited additional factual discovery of these Defendants is necessary to proceed to trial on liability. Plaintiffs have already served liability-related discovery. A parallel discovery track for abatement will likewise begin and a remedial trial can be set following a determination of liability.

Plaintiffs:  The Distributor Defendants, including AmerisourceBergen, Cardinal Health, and McKesson, propounded their first set of discovery requests to Plaintiffs on October 25, 2019. Plaintiffs are already in the process of reviewing and preparing a first wave of document production in response to those requests.

Given that discovery issues in both CT2 cases will likely track, and be informed by, issues raised in CT1, Plaintiffs suggest that there will be greater efficiency in having this Court oversee discovery prior to remand.

**Motion Practice:** Additional motions to dismiss are neither necessary nor appropriate. With respect to the proposed CT2A Defendants, the Plaintiffs' TAC does not raise new claims or bases for liability, but merely supplements the factual allegations against these Defendants.  These allegations do not alter the Court's legal analysis on the public nuisance claims. As noted, Motion to Dismiss briefing with respect to Cabell County's public nuisance claims against these Defendants has been complete and pending decision since July 30, 2018,[2] and these questions are ripe for decision by this Court. Consequently, an additional round of motions to dismiss would be superfluous.

Plaintiffs submit that these already briefed motions to dismiss, as well as the simultaneously briefed *res judicata* motion filed by Defendant Cardinal Health, which has also been fully briefed and

---

[2] The City of Huntington's claims do not present any distinct legal basis for separate motion to dismiss briefing. The parties have continued to submit relevant supplemental authority to this Court for consideration.

6

pending since July 30, 2018, (*see* Dkt. # 579, 728, and 819), should be promptly decided by this Court and dispositive and *Daubert* motions at the appropriate time.

**Proposed Schedule**: Plaintiffs propose that, once the Court has ruled on the pending Motions to Dismiss, and the pending *res judicata* motion, the parties have completed discovery, and the Court has ruled on any additional dispositive motions, the Court should sever Plaintiffs' public nuisance claims against Cardinal, McKesson, and AmerisourceBergen pursuant to Rule 42 and then submit a suggestion of remand to the Judicial Panel on Multidistrict Litigation seeking transfer of these three defendants to the appropriate West Virginia federal court for trial as soon as is practicable.

### B. Case Track 2B (CT2B): Cabell County and City of Huntington – claims against remaining Defendants

For the remaining defendants pending in the CT2 action, Plaintiffs propose this Court decide any remaining or new motions to dismiss arising from Plaintiffs dispensing allegations and that discovery should proceed in this Court.

## III. "Hub and Spoke" Remands

On September 26, 2019, this Court held a hearing to discuss various structural options to apply to the next phase of this multidistrict litigation. The Court requested that the parties identify individuals assigned to address this question with Special Master McGovern.

The Selective Remand Working Group ("SRWG") has convened on three occasions during which time Special Master McGovern has requested that the parties provide proposals for which cases might be appropriately remanded to their transferor courts.

Because this Court entered orders regarding CT1 and CT2 months before the September 26, 2019 hearing and before the SRWG was constituted, (see Dkt #s 232 and 1218), these cases are outside of the scope of Plaintiffs' Hub and Spoke proposals. With respect to additional case tracks and remands, Plaintiffs propose the following:

7

### A. Case Track 3 (CT3): City of Chicago – Manufacturer Case

Plaintiffs propose remand of the City of Chicago's case against Manufacturers (Case No. 1:17-op-45169) as CT3. The City of Chicago Manufacturer case is unusual in the sense that motions to dismiss were largely decided and discovery had begun before the case was transferred to the MDL. In addition, the City of Chicago proposes to narrow its claims to those arising from three local ordinances, which can be tried most efficiently in the District Court for the Northern District of Illinois. Plaintiffs propose that this Court permit a brief period to amend the complaint to add allegations regarding the Manufacturer Defendants' compliance with legal obligations relating to the distribution of controlled substances (that already were the subject of this Court's summary judgment order), add entities or allegations related to existing Defendants' foreign entities (again, already considered in this Court's order on personal jurisdiction), streamline the claims and resolve the few, discrete legal issues involving these claims and defendants, and oversee a brief period of discovery narrowly focused on the Chicago statutory claims and defenses Plaintiffs seek to pursue at trial to allow the cases to be remanded ready for dispositive motions and trial.[3]

### B. Case Track 4 (CT4): City and County of San Francisco

Plaintiffs propose that the Court remand the case filed by City and County of San Francisco (Case No. 1:19-op-45022) as CT4. This selection brings geographic diversity as well as the perspective of a large city and county with a significantly different but broad impact caused by opioid crisis. No briefing and no discovery has occurred in these cases.

### C. Case Track 5 (CT5): City of Cincinnati, Ohio and Hamilton County, Ohio

Plaintiffs propose that this Court remand the cases filed by City of Cincinnati and Hamilton County to the Southern District of Ohio as CT5. Because this Court has resolved over 45 motions addressing Ohio law on the claims pending, has overseen discovery related to statewide issues and entities, and the only remaining discovery to be completed would be case-specific local discovery, these cases could proceed quickly to trial.

---

[3] As would have been the case in CT1A, the remand Court can make a final determination on personal jurisdiction concurrent with or after the trial.

### D. Tribal Case Track: Cherokee Nation and Fond du Lac.

The Tribal Plaintiffs propose remand of the cases filed by the Cherokee Nation (Oklahoma) (Case No. 1:18-op-45695) and Fond du Lac (Minnesota) (Case No. 1:18-op-46146-DAP). Because these tribes assert claims under Oklahoma and Minnesota law respectively, this Court's existing rulings on the previous Tribal motions to Dismiss will serve as law of the case on these claims.

If the Court is inclined to transfer back only one Tribal case, the Tribal Plaintiffs propose remand of the case file by the Cherokee Nation, to the Eastern District of Oklahoma. The Cherokee Nation is the largest Indian Tribe in the United States in terms of population, encompasses some or all of 14 Oklahoma counties in its Tribal lands, operates the largest healthcare system of any Indian Tribe, and provides healthcare to all Cherokee citizens nationwide, from birth until death, through Tribally-operated and Tribally-funded hospitals and clinics. The Cherokee Nation was the first Indian Tribe to file a complaint in the opioid litigation and names McKesson Corporation, Cardinal Health, AmerisourceBergen, CVS, Walgreens, and Walmart as Defendants. Moreover, this Court has already ruled on all of the significant threshold issues of Oklahoma law relating to opioid claims in its opinion earlier this year in the Muscogee (Creek) Nation case. *See* Dkt. # 1680.

The Tribal Plaintiffs however contend that remand of more than one case would be appropriate. In that case, the Tribal Plaintiffs propose that the Court also remand the case of Fond du Lac Band of Lake Superior Chippewa to the District of Minnesota. There are several hundred federally-recognized tribes of roughly equivalent size to Fond du Lac, *e.g.*, less than 10,000 members. These smaller Tribes present a different facet of abatement due to their relative lack of infrastructure and resources. For this reason, it is important for Defendants to understand the legal risks presented and the potential damages awards at stake in these smaller cases.

These cases are representative of the many Tribal cases pending in the MDL, and their remand will advance the interests of all Tribes with cases pending in the MDL.

### IV. Pending Motions to Dismiss

The Court has also sought Plaintiffs' position with respect to the remaining pending motions to dismiss. Motions to dismiss have been fully briefed, but not decided, in the City of Chicago case

against manufacturers (17-op-45169), the City of Chicago case against distributors (17-op-45281), and the cases brought by Cabell County, WV (17-op-45053), Monroe County, MI (18-op-4515), Broward County, FL (18-op-45332), West Boca Medical Center (18-op-45530), and Cleveland Bakers (18-op-45432). Given the Court's limited resources, Plaintiffs favor focusing the Court's attention on the Cabell and Chicago manufacturer case motions (and, for Chicago, only on those issues that would be required for trial) and the trials identified above for the time being. Additionally, Plaintiffs do not object to the Court's consideration of and decision on the fully briefed Motions to Dismiss pertaining to West Boca Medical Center, Inc., in accordance with the request submitted by West Boca Medical Center on behalf of the hospital plaintiffs. *See* Dkt. # 2892. While the Plaintiffs do not believe the goals of the MDL are best served by devoting resources to decisions on the other pending motions at this time, those motions are not moot and Plaintiffs propose that they remain pending at this time.

Dated: November 5, 2019   Respectfully submitted,

*s/Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

>Paul T. Farrell, Jr., Esq.
>GREENE KETCHUM, LLP
>419 Eleventh Street
>Huntington, WV 25701
>(304) 525-9115
>(800) 479-0053
>(304) 529-3284 (Fax)
>paul@greeneketchum.com
>
>*Plaintiffs' Co-Lead Counsel*
>
>Peter H. Weinberger (0022076)
>SPANGENBERG SHIBLEY & LIBER
>1001 Lakeside Avenue East, Suite 1700
>Cleveland, OH 44114
>(216) 696-3232
>(216) 696-3924 (Fax)
>pweinberger@spanglaw.com
>
>*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

>s/*Peter H. Weinberger*
>Peter H. Weinberger
>*Plaintiffs' Co-Liaison Counsel*