UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | |
| All Cases | Case No. 1:17-md-2804 |
| | Judge Dan Aaron Polster |

**THE PHARMACY DEFENDANTS' POSITION STATEMENT FOR
THE NOVEMBER 6, 2019, STATUS CONFERENCE**

The Pharmacy Defendants named in the Track One complaints submit this position paper requested by Special Master Cohen's email of October 25, 2019. As set forth below, as long as the Court does not proceed at this time with the Track 1B case, the Pharmacy Defendants would not oppose the immediate remand of a small number of agreed-upon cases to the courts that would try the cases. If, however, Track 1B proceeds, the Pharmacy Defendants object to the start of any new tracks that include them.

As a threshold matter, third parties have told the Pharmacy Defendants that the Court has already decided important agenda items for the November 6 status conference without giving the Pharmacy Defendants an opportunity to be heard. Any such pre-decision of disputed issues would be improper. This Court, like every other, should withhold judgment on substantive issues until all parties have been heard on the record and should not render decisions based on incomplete information and argument communicated *ex parte*.

First, a journalist seeking comment (among others) has indicated to counsel for the Pharmacy Defendants that a Track 1B trial involving only the Pharmacy Defendants will occur in the Spring. If true, such determination was made without consulting the Pharmacy Defendants

on counsel's availability, the needs of the case, or the wisdom of a Spring trial date. In fact, as explained in Section A below, it would be manifestly inappropriate—and antithetical to proper MDL case management—to proceed with Track 1B at this time given, among other things, the time and attention already devoted to these two counties to the exclusion of all other jurisdictions with cases pending in the MDL. At the same time, it would be untenable to ask the Pharmacy Defendants to prepare for a Track 1B trial while simultaneously starting new tracks of litigation.

Second, the Special Master has indicated that the Court had already decided to grant Plaintiffs' motion for leave to amend the Track 1 complaints to add new dispensing claims before the motion even was filed. Section B below explains why the Pharmacy Defendants must be given an opportunity to respond to Plaintiffs' motion on the record and in the ordinary course. In fact, the motion is a dead-letter under Sixth Circuit law and proposes a stunningly burdensome do-over of the parties' massive efforts to prepare the Track 1 cases, as they were pled and worked up for trial.

### A. New Litigation Tracks

A Track 1B trial should not proceed at the present time. Rather, having taken their cases to the brink of trial and settled, the Track 1 Plaintiffs should be treated no differently than the 2000+ other plaintiffs with cases in the MDL that have been stayed pending resolution of the first bellwether cases. If Track 1B is stayed, the Pharmacy Defendants would not object to the immediate remand and litigation of a limited number of other cases brought by diverse Plaintiffs and agreed upon by the parties. If Track 1B is to proceed prior to resolution of these other cases, however, the Pharmacy Defendants will object to the start of any new litigation tracks that include them.

If the bellwether process is to play a useful role toward accomplishing the broader goals of the MDL that go beyond cases involving just Cuyahoga and Summit Counties, the parties must focus their efforts on new jurisdictions, where the most important legal questions remain undecided and the facts have not been discovered.  The Court has already ruled on questions of Ohio law.  The parties have conducted extensive discovery regarding the claims of the Track 1 Plaintiffs.  Needless to say, however, the local impact of the use and misuse of prescription opioid medications and local efforts to address abuse and addiction vary enormously among jurisdictions, as does the law.  Continued focus on the same jurisdictions that have already been the MDL's entire focus for over a year would do nothing to advance the purposes of the MDL.  And to whatever extent the Court believes pharmacy dispensing claims should proceed next, those claims have been asserted and will be litigated in other federal and state-court cases around the country.  No further special favors for the Track 1 Plaintiffs are required.

In addition, it would be manifestly inappropriate and inconsistent with the Court's role as an MDL court to prioritize a Track 1B trial at the request of local jurisdictions over the thousands of other plaintiffs in the MDL waiting for their chance to be heard.  The Track 1 Plaintiffs made a deliberate choice to sever all but one of the Pharmacy Defendants from the original trial.  The Pharmacy Defendants did not seek severance themselves, nor did they play any role in Plaintiffs' request for severance, after they had expended enormous resources participating in extensive fact discovery, expert discovery, summary judgment, and *Daubert* motions.  Since then, the Track 1 Plaintiffs have had their day in court, took their cases to brink of trial, including selecting a jury, and then opted to settle with all but one of the remaining defendants rather than pursue their claims to verdict.  Along the way, the Track 1 Plaintiffs secured over $320 million in settlement funds—far exceeding their entire claim for past

3

damages—for the counties' immediate use toward addressing the opioids crisis locally. There is no basis for allowing the Track 1 plaintiffs to leapfrog, for the second time, other cases in the MDL for their own benefit at the expense of other plaintiffs.

Finally, it would be monumentally unfair—and unjustified—to compel the Pharmacy Defendants to continue litigation in Track 1 while also litigating other cases selected for remand. One Pharmacy Defendant has already been put once to the staggering expense and burden of preparing the Track 1 cases for trial through the morning of openings, after the Court had empaneled a jury. The other Pharmacy Defendants fully litigated the Track 1 cases through summary judgment and only then were the subject of motions to sever in which Plaintiffs pledged that severance would not be used to "prejudice" defendants. Doc. Nos. 2099 and 2148. But nothing could be more prejudicial than requiring the Pharmacy Defendants to prepare—either for the first or the second time—to try the Track 1 cases while simultaneously conducting discovery for and working up trial additional cases that were not active when the Track 1 cases were initially prepared. No other parties bore a similar burden in Track 1, and there is no basis to treat the Pharmacy Defendants differently.

**B.     Track 1B Motion to Amend**

Because Track 1B should not proceed at this time, the Court need not reach the Track 1 Plaintiffs' motion to amend their complaints to add entirely new dispensing claims against the Pharmacy Defendants, including by adding new defendants. If the Court is inclined to take up the motion, however, under no circumstances should the Court hear it before the Pharmacy Defendants have been heard in due course on the many reasons why the proposed amendments are unsupported by good cause and would unduly prejudice the Pharmacy Defendants.

Before Plaintiffs even filed their motion to amend their Third Amended Complaints in Track 1, before the Pharmacy Defendants had any opportunity to present their position, and before the subject ever was discussed in open court, the Special Master wrote: "my understanding is that [Judge Polster] will allow [Plaintiffs] to amend to state dispensing claims." To the extent the Court decided to allow amendment before the filing of any motion for leave to amend—much less a response—its decision was clearly improper.  Such a decision could have been based only on either an *ex parte* request by Plaintiffs or the Court's own views about which unasserted claims Plaintiffs should have pursued and prepared for trial.  Neither of these would be a permissible ground for the Court's decision.  *See* Code of Conduct for U.S. Judges, Canon 3(A)(4)(b) (*ex parte* communications permitted "only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication"); *Ligon v. City of New York*, 736 F.3d 118, 125-26 (2d Cir. 2013), *vacated in part*, 743 F.3d 362 (2d Cir. 2014) (trial judge disqualified after improperly urging party to pursue unfiled claims).  The Pharmacy Defendants are entitled to a fair hearing on the issue, on the record and before a judge committed to hearing from all parties before making a decision.

The Pharmacy Defendants will file an opposition to the motion for leave to amend within the 14 days allowed by Local Rule 7.1.  For present purposes, suffice it to note that Plaintiffs' motion does not even *attempt* to make the necessary showing of "good cause" under Rule 16(b), which would require them to demonstrate both (1) "that despite their diligence they could not meet the original deadline" for amendments, *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003), and (2) that the opposing parties "would not suffer prejudice." *Id.* at 903.

Nor could Plaintiffs ever approach a showing of good cause for their decision to wait until 18 months after the deadline for amendments, 10 months after the close of discovery, after the completion of all expert discovery, after motions for summary judgment, and after the Court had even empaneled a jury at the trial of the Track 1 Plaintiffs' case against one Pharmacy Defendant.  And the prejudice could not be clearer when Plaintiffs' proposed new claims—attacking different conduct at different facilities by different persons under different regulatory standards—would bring the cases back to square one.  The new claims would require new motions to dismiss, taking the depositions of scores of new witnesses, reopening the depositions of regulators and county employees, and producing new data sets and new documents from parties and custodians who were not previously subject to discovery.  The parties would then have to redo prior expert reports, engage new experts on new topics, and start over with *Daubert* and summary judgment motions.  All this when one Pharmacy Defendant, Walgreens, has already had to fully prepare the original Track 1 claims for trial before Plaintiffs entered into last-minute settlements with other defendants on the morning of openings, after a jury had been empaneled, and when the other Pharmacy Defendants prepared the cases based on the original claims all the way through summary judgment.  In other contexts, this Court has not hesitated to hold Plaintiffs to the consequences of their strategic decisions about the claims and discovery they declined to pursue.  Doc. No. 2438 at 4 ("Plaintiffs' choice not to pursue discovery against Noramco is one they will have to live with").

The Pharmacy Defendants' opposition to the motion to amend to be filed on November 13 in accordance with the Local Rules will set forth in detail our position on the motion and all of the reasons why amendment would be improper.  In the interim, we request that the Court

6

enter an order prohibiting further *ex parte* communications with the Court or any of the Special Masters regarding the motion for leave to amend.

### C. Pending Motions to Dismiss

In response to the question presented by the Special Master, the Pharmacy Defendants agree that all pending "bellwether" motions to dismiss should be denied without prejudice to renewing them at an appropriate time.

Dated: November 5, 2019                                                 Respectfully submitted,

/s/ Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Ste. 1000
Washington, DC 20036
(202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Indiana, L.L.C. and CVS Rx Services, Inc*

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlit-beck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

/s/ Robert M. Barnes (consent)
Robert M. Barnes
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
(412) 471-3490
rbarnes@marcus-shapira.com

*Counsel for HBC Service Company*

/s/ Timothy D. Johnson (consent)
Timothy D. Johnson
CAVITCH, FAMILO & DURKIN CO., L.P.
1300 East Ninth Street, 20th Floor
Cleveland, OH 44114
(216) 621-7860
tjohnson@cavitch.com

*Counsel for Discount Drug Mart, Inc.*

7

/s/ Kelly A. Moore (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
(212) 309-6612
kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5917
elisa.mcenroe@morganlewis.com

*Counsel for Rite Aid of Maryland, Inc.*

/s/ Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc. f/k/a Wal-Mart Stores, Inc.*