# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) ) ) | **MDL 2804** |
| **THIS DOCUMENT RELATES TO:** | ) ) | **Case No. 1:17-md-2804** |
| *All Cases* | ) ) ) ) ) | **SPECIAL MASTER COHEN** <br><br> <u>**ORDER REGARDING REDACTING AND SEALING OF DOCUMENTS**</u> |

On June 20, 2019, the Sixth Circuit issued its decision vacating and remanding this Court's ARCOS Protective Order.  *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919 (6th Cir. 2019). After the Sixth Circuit issued this decision, the Court and the undersigned issued a number of orders and directives regarding documents that had been redacted or placed under seal.  The Court also requested position papers from the parties, the media, and the DEA in anticipation of an impending Sixth Circuit mandate.[1]  On September 6, 2019, the Sixth Circuit issued its mandate. *See* Doc. #: 2581.  For the past five months, the parties have been working together to reach agreement on what documents should be unsealed and unredacted.  The documents at issue include over seven hundred filed briefs, reports, depositions, and exhibits.  As guidance for this process, the Special Master directed, and the Court later affirmed, that:

> Information that ***shall*** be redacted includes the following: (1) all information that must be redacted pursuant to Fed. R. Civ. P. 5.2, Local Rule 8.1, and Local Rule App'x B at §24 (Electronic Filing Policies and Procedures Manual (Dec. 1, 2018)); and (2) any personal health information, medical claims data, SACWIS data

---

[1] The Court's Orders include: Doc. ##: 1719; 1725; 1813; 1845; and the Court's June 28, 2019 Order keeping the current protective orders in place.  The parties' and non-parties' positions papers are available at: Doc. ##: 1798; 1807; 1808; 1809; 1830; 1831; 1833; 1839; 1841; 1842; 1843; 1844; 1854; 1989; 1990; 2040; 2050; 2066; 2069; 2070; 2071; 2080; 2127; 2128; 2130.

> (Statewide Automated Child Welfare Information System), and similar personal and private information, except to the extent this personal information has been de-identified pursuant to 45 C.F.R. §164.514.[2]
>
> Information that ***may*** be redacted, if there exists an individualized, compelling reason for privacy sufficient to overcome the public interest in disclosure, includes the following: (3) bona fide trade secrets;[3] (4) law enforcement material pertaining to ongoing investigations; (5) law enforcement confidential sources or confidential surveillance methods; (6) information affecting national security; and (7) other material of a similar nature with respect to the need for privacy.

Doc. #: 1719 at 2-3 (*affirmed* Doc. #: 1813) (footnotes in original, but with different numbering). The *Kondash* test referred to by the Special Master in the footnote requires "three things: (1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (citing *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016)). The *Kondash* test presents a heavy burden for a party seeking to keep information under seal. *See id.*

Although the parties were able to agree on whether some documents should remain under seal or redacted, they still disagreed regarding many others. Accordingly, the parties submitted a number of exemplar documents and ask for rulings from the Special Master, which they will then apply to other disputed documents. This Order supplies rulings on the exemplars and sets forth

---

[2] Plaintiffs produced during discovery certain individuals' personal health information (including insurance claims data and other medical data). This information was largely de-identified or anonymized, but redaction may still be necessary to ensure compliance with federal regulations.

[3] Information that is considered "business confidential" but that is not a bona fide trade secret does not qualify for redaction. *See Kondash v. Kia Motors America, Inc.*, 767 Fed. Appx. 635, 639 (6th Cir. 2019) ("The fact that a document will reveal competitively-sensitive financial and negotiating information is not an adequate justification for sealing—rather, the proponent[] of closure bears the burden of showing that disclosure will work a clearly defined and serious injury."). Under the *Kondash* test, it is unlikely that the general contours of a SOMS, as opposed to a specific, highly-proprietary detail, qualify as trade secret; and quite possible that the details do not qualify, either.

additional explanations and instructions. The parties must adhere to these rulings regarding the unsealing and unredacting of already-filed documents, as well as any documents that are later filed.

Defendants assert that several categories of information should continue to be protected from public view, while Plaintiffs disagree. For most of these categories, Defendants assert the information constitutes a bona fide trade secret. "Under Ohio law, a trade secret is defined as "'information . . . that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use[; and] (2) [i]t is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'" *Kondash*, 767 Fed. Appx. at 638 (quoting Ohio Rev. Code § 1333.61(D)(1)-(2)).

Defendants also assert that, due to public policy concerns, details of their Suspicious Order Monitoring Systems ("SOMS") and Suspicious Order Reports ("SOR") should remain private. Defendants argue that, if precise information regarding their SOMS and/or SORs were to become public, unscrupulous actors could use that information to evade detection by the Defendants' monitoring and reporting systems. Defendants posit that release of SOMS and SORs details would allow bad actors to "game the system," obtain large quantities of opioids, and thwart Defendants' efforts to prevent diversion. Defendants' SOMS and SORs do not fall neatly within the categories of information the Special Master stated may be redacted, but preventing diversion does constitute a compelling interest that may outweigh the public's interest with respect certain information pertaining to Defendants' SOMS and SORs. Provided that redactions are narrowly tailored in an appropriate manner, some details of Defendants' SOMS and SORs may remain under seal, as described further below.

The Special Master now turns to specific categories and exemplars where the parties are in dispute over whether the information should be redacted and/or sealed.

### A. ARCOS Data (Aggregated)

Upon issuance of the Sixth Circuit's mandate vacating this Court's Protective Order, there is no longer any question that aggregated ARCOS data cited in any document must be unredacted and unsealed, including the 2013-2014 data. *See* Doc. #: 2581. The parties have provided the following exemplars:

Doc. #: 2201 (PSJ9) pp. 2, 3, 4, 5, 6, 8, 11, 14, 20 – All references must be unredacted.[4]

Doc. #: 2204 (PSJ2) pp. 24,[5] 64, 68 – All references must be unredacted.

Doc. #: 2212 (PSJ4) pp. 43 – All references must be unredacted.[6]

### B. ARCOS Data (Transactional)

Defendants argue that transactional ARCOS data is tantamount to a customer list. *See, e.g.*, Doc. #: 2437-1 at 309 (pdf) (filed under seal). Customer lists may "constitute trade secrets if the owner of the list has taken reasonable precautions to protect the secrecy of the listing." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 862 (Ohio 1999); *see Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x 860, 862 (6th Cir. 2008) (citing *Siegel*).

---

[4] Doc. #: 2201 at 13 was identified as having redactions but was not provided for the Court's review. Doc. #: 2201 at 15 contains a purported SOMS reference and is addressed below in the SOMS category.

[5] It is not clear whether the redacted reference in Doc. #: 2204 at 24 was intended to be redacted as aggregate ARCOS data or as information relating to Cardinal's SORs. Regardless, there is no reasonable argument under either category for the reference to remain redacted.

[6] Doc. #: 2212 at 47-48 contains purported SOMS references and are addressed below in the SOMS category.

The Court concludes that *recent* transactional data that has been kept and produced *by the Defendants* is sufficiently analogous to a list of customers and their purchase volume that it may be protected as a bona fide trade secret, but only upon a proper showing of "efforts that are reasonable under the circumstances to maintain its secrecy." *Kondash*, 767 F. App'x at 638.

For several reasons however, the transactional ARCOS data at issue in this case, which has been kept and produced *by the DEA*, can no longer remain under seal.  First, the fact that the ARCOS database contains information for all registrants weighs against trade secrecy protection because no individual registrant has an unfair competitive advantage over any other registrant if the DEA's data is released.  Second, and more important, the Court concludes, as did the Sixth Circuit, that "the public [has] a substantial interest in disclosure of the ARCOS data, while the DEA and Defendants have only a lesser interest in avoiding potential harms that can be avoided by narrower, less categorical means."  *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 933.

The parties provide Doc. #: 2306-14 (Ex. 15 to PSJ9) as an exemplar of transactional ARCOS data redactions. Pursuant to the reasoning above, Doc. #: 2306-14 and all similar documents must be unsealed/unredacted, because the charts were generated by Plaintiffs based on transactional ARCOS data received from the DEA, the data is not recent, and the information is at most "business confidential," not a trade secret.

**C. Suspicious Order Monitoring Systems and Suspicious Order Reports**
    **1. Suspicious Order Reports**

Defendants assert that information in their SORs will allow bad actors to "game the system."  The Special Master concludes this *may* be true, such that redaction or sealing may be

appropriate, but only if the particular information at issue would truly provide insight to a bad actor. Most of the language Defendants seek to redact does not meet this standard. For example, the parties provide Doc. #: 2373-12 (Ex. 37 to DSJ2A) as an examplar of a SOR. The language in block 5 of this exemplar states: "Customer's monthly purchases for methadone have inordinately increased over the past two months." *Id.* at 2. This information simply cannot give a potential bad actor any indication of how it might thwart the Defendants' monitoring system to purchase and divert opioids. It should not be redacted or placed under seal.

The Court thus concludes that all SORs shall be unsealed and/or unredacted unless a Defendant can demonstrate that *specific* information contained in the SOR provides a *clear* indication to a potential customer of a way to "game the system" and defeat the Defendants' SOMS or lead to diversion. The exemplar SOR does not come close to meeting this standard.

### 2. Threshold Information

At various times, Defendants set or changed the specific thresholds that would trigger their SOMS to identify an order as suspicious. The Court agrees that specific threshold data, and certain threshold-setting and threshold-changing procedures, implicate Defendants' "game the system" policy argument. But simple reference to the existence *vel non* of a threshold does not merit redaction or sealing. Neither does a statement, without more, that opioid orders may in some instances be released even if a customer exceeds a threshold. If the language at issue does not provide a customer with insight on how to avoid scrutiny in the first place, disclosure of the language carries no risk and redaction is inappropriate.

For example, the parties provide Doc. #: 2212 (PSJ4) pp.47-48 as an exemplar. This document states that "Cardinal compliance analysts could release opioid orders exceeding a customer's threshold even where the increase was not warranted or the customer was failing." The document also affirms that a threshold *exists*, and that there is an exemption that allows customers to exceed their thresholds. But none of this information allows a customer to determine what its threshold is, or how to avoid its orders from being flagged by Cardinal's SOMS. There is no actual danger a bad actor can use this information to "game the system," so pages 47-48 of Doc. #: 2212 cannot be redacted.

The parties also provide Doc. #: 2201 (PSJ9) p.15 as an exemplar of redacted threshold information. The redacted passage states expressly that Prescription Supply Inc.'s ("PSI's") SOMS did not have "any guidelines for determining how to set or raise a customer's threshold or the due diligence required to release a suspicious order." Doc. #: 2201 at 15. In other words, the redacted passage itself makes clear that no customer could use the redacted information to undermine PSI's anti-diversion efforts. The information on page 15 of Doc. #: 2201 cannot be redacted.

In contrast, the parties provide Doc. #: 2557-55 (Ex. 575 to DSJ1&2-PR) as an exemplar of a disputed SOR. Unlike Doc. #: 2373-12 described above, which is a report generated by Cardinal and sent to the DEA, Doc. #: 2557-55 appears to be an internal company report that broadly shows the States and areas of the Country where Walgreens might have some concern about diversion. The report begins by providing five bullet points that specify the precise criteria used to generate the report. This is the type of information that, if made available publicly, could allow a bad actor to place opioid orders just under the defined thresholds and thereby avoid

7

detection by Walgreen's SOMS.  Thus, the five bullet points included in Doc. #: 2557-55 may be redacted.[7]

However, beyond those five bullet points (and the associated column headings discussed in footnote 7), the remaining redactions in Doc. #: 2557-55 are simply aggregate ARCOS data.  The rest of the table, the maps, and the three bullet points on the first page describing the map slides of Doc. #: 2557-55 cannot be redacted.

The parties also provide as an exemplar Doc. #: 2212-42 (Ex. 41 to PSJ4), which presents a closer call.  The first sentence of the email (page 2 of the pdf) identifies several specific factors a compliance analyst might rely upon to release an order that exceeds a threshold.  However, the document does not say what the threshold is, or otherwise give a customer any indication of the extent to which those factors actually play a role in the analyst's decision.  Further, although the factors may suggest excuses to a potential bad actor, the subsequent sentence makes clear that a threshold-exemption decision is ultimately based on the analyst's professional judgment; ultimately, the redacted language lacks the specificity required to provide a clear indication to a customer how to "game the system."  The information in Doc. #: 2212-42 at 2 (pdf) cannot be redacted.

Doc. #: 2212-42 also contains redactions on page three.  The redaction in the first paragraph cannot remain redacted under the rationale provided in this Order.  However, the third paragraph presents a hypothetical situation where a customer consistently fails the test for whether an order is suspicious, and parenthetically lists precisely what a failing score is.  This information

---

[7] The five bullet points correspond directly to five column headings in the table of Doc. #: 2557-55.  These five headings may provide enough information to decipher what the five bullet points are, so they may also be redacted.  The information within the columns corresponding to those headings, however, cannot be redacted, for the reasons discussed below.

is clear and specific; accordingly, the parenthetical may remain redacted. The subsequent and final redaction in the document, however, only states that an analyst is capable of releasing orders that exceed the threshold. This language does not explain what the threshold is, so it cannot remain redacted.

Finally, the parties provide Doc. #: 1960-134 (Ex. 140 to SOMSB) as an exemplar of a Defendants' SOMS. The document is an audit of UPS Supply Chain's SOMS; it describes the SOMS criteria and expressly details ways in which customers can defeat the anti-diversion program. The document demonstrates perfectly the rationale behind Defendants' public policy argument, and why the Court has accepted it. Because the language on the page with Bates-number ending 404095 states precisely what the SOMS thresholds are, it is appropriately redacted. The same is true for the redacted language on the next page, paragraph 2. The language in paragraph 5, however, is imprecise and should not be redacted.

### 3. Algorithms

The parties refer to SOMS algorithms, but do not provide any exemplar. Without a specific example, it is difficult to provide detailed guidance beyond what the Court has explained above. Language that shows the specific algorithm or precise calculations used to determine what orders will be flagged as suspicious should be redacted. On the other hand, simple statements that an algorithm does or does not exist should not be redacted.

### 4. Customer-Specific Due Diligence Efforts

The general rules are as follows. Information that allows a customer to defeat a Defendants' anti-diversion control systems should remain under seal. Generalized statements demonstrating that due diligence was conducted must be unsealed and/or unredacted. Statements describing the specific conditions that triggered the due diligence investigation may be redacted.

For example, the parties provide Doc. #: 2379-15 (Ex. 65 to DSJ2A) as an exemplar of customer-specific due diligence efforts. The exhibit contains several pages of a table that provide detail on the customer, the "Purchase Activity" that was flagged, and the final "Disposition" of various matters investigated by AmerisourceBergen.

To begin with, the Court notes that all entries in this document, Doc. #: 2379-15, are from 2005-2007. The Court has stated that "the older the . . . data, the less reason for *any* Protective Order." Doc. #: 1845 at 1 (emphasis in original). Or, as Plaintiffs present it in their briefs on this issue, the information has become "stale." *See, e.g.*, Doc. #" 1929 at 8 (pdf) (filed under seal). Defendants cannot reasonably assert that specific "Purchase Activity," or any other information contained in Doc. #: 2379-15 regarding due diligence efforts, has more than a very tenuous connection to their diversion control systems today. Thus, Doc. #: 2379-15 may not be sealed or redacted.

In order to provide guidance regarding more-current documents, however, the Special Master explains below how the parties should assess whether redaction of similar recent information is appropriate.[8]

---

[8] It is conceivable that recent iterations of a Defendants' SOMS, although not the most up-to-date (for example, including the past several changes to the program), may still provide enough information to allow a customer to thwart that Defendant's current anti-diversion program.

In the table shown in Doc. #: 2379-15, some of the information in the "Purchase Activity" column is very specific, stating how many dollars-worth per month a customer ordered of a specific controlled substance in a specific year. Other information is not specific—for example, there is a cell that only states, "High Hydro." Where the information in the "Purchase Activity" column is very specific, describing the substance ordered, the amount (dollar and/or quantity) ordered, and the period in which it was ordered that led to the investigation, that type of information may be redacted.

The same logic also applies to the "Disposition" column. Upon review, the Court concludes that most of the cells in the "Disposition" column would ***not*** be sufficiently specific to warrant redaction. However, the Court observes that at least one entry—the last entry on page 9 of the pdf, which begins "5/05/06 – Usage levels . . ."— provides specific information on the substance, amount, and period, and would warrant redaction if it did not date back to 2006.

### 5. Auto-Replenishment

The parties discuss generally Defendants' auto-replenishment systems but offer no exemplars. Without more, the Court does not see how evidence or documents referring to Defendants' "auto-replenishment" systems could allow a customer to defeat a Defendants' anti-diversion control systems. To the extent, however, that a document describing a Defendants' auto-replenishment system clearly refers to a specific threshold at or over which an order will be automatically replenished, it is possible that language should be redacted.

### D. Personally-Identifiable Information

The Court understands the parties have agreed regarding this category of information and it is no longer an issue.

### E. Customer Names

Defendants argue that documents revealing customer names are tantamount to a customer list that, so long as a defendant takes reasonable precautions to keep these names private, can be a trade secret. However, the Special Master is not convinced that references to individual customers' names, alone, is a trade secret. Indeed, the evidence has been that the manufacturers, distributors, and pharmacies all have fairly detailed competitive knowledge regarding whom each of them sells opioids to and buys opioids from. In any event, the public interest in knowing who was receiving opioids and their interactions with the Defendants outweighs the Defendant's interests in protecting the alleged trade secret. *See Kondash*, 767 F. App'x at 638. Accordingly, customer names may not be redacted.

### F. DEA Registration Numbers

The Special Master understands the parties have agreed regarding this category of information and it is no longer an issue.

### G. Pricing Information

Pricing information can be a trade secret under certain circumstances, as it can allow a competitor to undercut another business's prices. As a general principal, the Court is inclined to

continue to protect the parties' pricing data as a bona fide trade secret. The public has a much lower interest in knowing Defendants' pricing data than it does in knowing, for example the ARCOS data; and the potential for competitive injury to the Defendants is much higher with respect to this type of information. Specific pricing information may be redacted as a trade secret absent extenuating circumstances.

### H. Third-Party Commercially-Sensitive Information

The parties refer to commercially sensitive information provided by third parties, but do not discuss it in detail or provide exemplars. The Special Master is not aware of any third-party or non-party to this MDL that has specifically requested that allegedly trade secret or other commercially-sensitive information remain under seal. The Special Master hereby directs any interested third-parties to identify with specificity any information that the third-party believes should not be released publicly. If no request is received by 21 days from the issuance of this Order, all information redacted by the parties as third- or non-party commercially-sensitive shall be unsealed.

### I. Deposition Transcripts

The parties dispute whether entire deposition transcripts should be unsealed when Plaintiffs only refer to small portions of them, or only refer to the deposition generally. Regardless of how and to what extent these deposition transcripts are referred to, they have now entered the judicial record as supporting documents. Given the "strong presumption in favor of openness" of judicial records, *Kondash*, 767 F. App'x at 637, the Special Master will not rule that entire transcripts

should be sealed and then order unredaction only of those portions expressly relied on by Plaintiffs. Such a determination would reverse the presumption. Instead, the Special Master rules that all deposition transcripts must be unsealed except those specific passages where a party makes an express showing of "(1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Id.* (citing *Shane*, 825 F.3d at 305).  The Special Master has provided, throughout this Order, what justifications the Court will accept to meet the first two prongs of this test.  The party seeking to redact portions of deposition transcripts pursuant to these justifications must do so in a way that is narrowly tailored to provide for the greatest public access.  Any such showing must be presented to the Court within 21 days of the date of this Order and must be preceded by a meet-and-confer with opposing counsel.

    **RESPECTFULLY SUBMITTED,**

    **/s/ David R. Cohen  November 5, 2019**
**DAVID R. COHEN**
**SPECIAL MASTER**