### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| This document relates to: | Judge Dan Aaron Polster |
| *All Cases* | |

## PLAINTIFFS' SUPPLEMENTAL SUBMISSION REGARDING CONTINUING LITIGATION

Plaintiffs respectfully make the following supplemental submission with respect to the next steps in these coordinated cases.   Plaintiffs are guided by these principles as they meet and confer with the defendants in an attempt to reach agreement by the Court- imposed deadline of 11/13/19.

Plaintiffs reiterate their agreement with the Court's guiding principles: that the court should facilitate global resolution when the parties agree to the Court's involvement in same; and that the parties should try a small number of streamlined cases involving the separate industries involved in this case. The defendants' objections to these principles will accomplish nothing but delay, while also creating undue complexity which runs contrary to the purpose of the Judicial Panel on Multidistrict Litigation ("JPML") in creating this MDL with Judge Polster as the transferee court.

Consistent with the court's principles, Plaintiffs offer three proposals to assist in moving the cases in this MDL to resolution.  Plaintiffs respectfully suggest that: (1) the Court should continue to use trial settings to inform the parties in a way that will promote the purposes of the MDL and the Court should retain trials for itself while also strategically remanding for trial certain cases; (2) the Court should retain jurisdiction of

certain cases and issues which, inter alia, deal with general liability, personal jurisdiction and common discovery, and issue rulings as necessary before remanding cases; [1] and (3) the Court should develop a discovery plan that completes common discovery nationally and ensures that cases are ready for remand, so that even one-off, track- or defendant-specific settlements will not derail momentum towards resolution or adjudication of issues on a national basis. Trials should be set as expeditiously as possible and strategically staggered to apply maximum pressure on the parties to insure that the goals of a national resolution to the opioid crisis is accomplished.

Plaintiffs recognize that their proposals require this Court to continue to play a central role in this litigation. But that is the role with which the JPML entrusted this Court. [2] This Court and others have described this MDL as the most complex litigation ever faced by an MDL court, and, over the past 23 months, this Court, its Special Masters, and the Court's personnel have developed unparalleled institutional knowledge of these cases and the claims, and that knowledge should not be cast aside to other courts to reinvent the wheel. Indeed, the "hub and spoke" plan should never simply remand cases for complete pre-trial workup by a new Court without the benefit

---

[1] Plaintiffs recognize that the Native American tribal case may present sufficiently unique issues to warrant earlier remand. A transferee court experienced in managing highly complex litigation may have the resources to move a particular case more quickly, which also would warrant an earlier remand.

[2] Recognizing this challenge, the Court overseeing the consolidated New York litigation recently bifurcated the liability and damages phases of the case in order to manage spiraling discovery and disputes that threatened to make the case "less navigable" and to accelerate the trial from March until January, 2020. The Court cited the Inherent Powers Doctrine which provides courts with the powers "reasonably required to enable the court to perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective." Order, *The County of Suffolk, County of Nassau & New York State v. Purdue Pharma L.P. et al.*, Index Nos. 400001/2017, 400008/2017, & 4000162018 (Suffolk Cnty. Super. Ct. N.Y. Nov. 6, 2019).

of what the MDL has accomplished in the past 23 months, and can do efficiently and economically in the months ahead.  For the reasons described below, Plaintiffs believe that implementation of these proposals will facilitate effective management of these cases and a robust bellwether process that can assist the parties and the Court in reaching a just global resolution of these matters.

At the status conference, the Court directed that the parties offer suggestions for a manufacturer only, distributor only, and pharmacy only trial.  At the same time, the Court suggested that plaintiffs would be required to dismiss defendants in order to streamline those trials.  While those segmented cases may make sense and be more manageable than broader trials, Plaintiffs submit that severance[3] is the only fair vehicle to streamline a case.  Dismissing defendants may prevent bellwether plaintiffs from participating in later global settlements and bars claims in bankruptcy proceedings of any defendant that later files for bankruptcy. It also prevents plaintiffs from holding defendants, where appropriate, jointly and severally liable for the epidemic that

---

[3] Severance is contemplated as a case-management tool for complex litigation.  *See* Manual for Complex Litigation (Fourth) § 11.632 (discussing "severance of certain issues for separate trial under Federal Rule of Civil Procedure 42(b)").  Dismissal, by contrast is not.  Rather, it is considered a *sanction*, and a severe one at that.  *See id* §§ 10.153 & 10.154; *DirecTV, Inc. v. Leto*, 467 F.3d 842, 846–47 (3d Cir. 2006) (explaining that courts are "duty-bound" to prevent a dismissal that would have adverse 'statute[-]of[-]limitations consequences'" and concluding that dismissal, rather than severance is permissible only if it "*will not prejudice any substantial right*" (emphasis in original) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) & *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir.1972)); *see also Nasious v. City & County of Denver-Denver Sheriff's Dept.*, 415 Fed. Appx. 877, 881–82 (10th Cir. 2011) (concluding that "dismissing the defendants rather than severing the claims" was an "abuse of discretion"); *Strandlund v. Hawley*, 532 F.3d 741, 745–46 (8th Cir. 2008) (noting that "[b]oth the Third and Seventh Circuits have interpreted Rule 21 to permit dismissals of parties only if they do not cause 'gratuitous harm to the parties'" and deciding to "remand to the district court with instructions to sever appellants' claims as opposed to dismissing the parties").

Plaintiffs allege was the result of their collective conduct.[4] Further, the Court has not yet ruled on the question of joint and several liability, reasoning in CT1 that "the material questions of fact in this litigation must be resolved at trial prior to any apportionment ruling," Opinion and Order, Doc. 2572 at 7, and dismissing certain defendants would allow the defendants at trial to seek to allocate fault to the dismissed parties while leaving plaintiffs with no recourse against them.[5] For these reasons, Plaintiffs respectfully submit that the Court use severance as a tool, either during discovery, or upon its completion, to craft manageable trials without requiring Plaintiffs to give up viable claims against Defendants who have contributed to the opioid crisis and who may be held responsible for it under the law.

At the conference and in their pre-conference submissions, Defendants argued that this Court should immediately remand a handful of cases selected for the next trial tracks. Plaintiffs recognize that this Court has indicated its intention of implementing a "hub and spoke" approach to litigation in MDL, which is consistent with the function of an MDL Court to manage common issues and to remand cases when common

---

[4] When Defendants argue that Plaintiffs have made this litigation too big or complicated, they ignore that it was each of their roles in marketing, selling, distributing, and dispensing opioids that combined to create a crisis of a magnitude that more American lives have been lost than in the Vietnam War. That this is a large and complicated case is undisputable, but also—quite literally—a problem of Defendants' own making.

[5] Moreover, "principles of judicial economy suggest that severance, rather than dismissal, be ordered if a particular judge has invested considerable time in the case and intends, therefore, to continue to control the resolution of the entire set of cases." *Franconia Associates v. United States*, 61 Fed. Cl. 335, 337–38 (2004). Severance preserves the Court's discretion in its case-management priorities and in how to proceed with discovery in a centralized manner in all cases against defendants not initially selected for trial in a given jurisdiction, but who nevertheless caused harm there, as in other areas. In this manner, it facilitates the "special purpose" of bellwether trials in providing for "information gathering that would facilitate valuation of cases to assist in global settlement," *In re E.I du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 204 F. Supp. 3d 962, 968 (S.D. Ohio 2016).

discovery and rulings are complete.  Defendants' proposal, however, is all spoke, and no hub.  In effect, their suggestion is that this Court should serve as the trial court for Cuyahoga and Summit Counties (and try no further cases for these Counties), and should immediately send a handful of cases to local district courts, effectively sidelining the MDL Court to watch and wait while those district court cases (and numerous state court cases) proceed.  This was certainly not what the JPML, or Congress, had in mind in providing for centralized litigation.  Nor would the parties have expended the significant resources in this MDL if the outcome would be one trial setting, a settlement of that trial, and then a complete abandonment of the MDL.

Thus, while Plaintiffs support the concept of selective remands, and agree that the local courts can efficiently address local issues such as damages and  jurisdiction-specific discovery, we respectfully disagree that all cases should be remanded immediately.  Rather, it is more efficient for cases to remain in the MDL to finish common discovery and decide motions more efficiently handled by this Court.

This is so for at least three reasons.

*First*, keeping cases in the MDL until common discovery and rulings are complete ensures that this Court makes the key decisions with which it was charged by the JPML.  *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378–80 (U.S. Jud. Pan. Mult. Lit. 2017) (citing the "efficiencies to be gained by centralization," concluding that "centralization will substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions," while also allowing "a single transferee judge to coordinate with numerous cases pending in state courts," and expressing confidence that this court "will steer this litigation on a prudent course").  Premature remand will

likely result in inefficiencies, duplication of effort, inconsistent rulings with respect to liability and discovery, and inconsistent case management.

*Second*, early remand of all cases will likely delay progress by returning to the starting line with judges new to this litigation who will, of course, require time to familiarize themselves with a case of this magnitude, and who may take different views of the parties' obligations under the law and federal rules.  With this efficient approach, local courts will still have ample opportunity to take over case-specific issues that may vary depending on the claims and jurisdiction.

*Third*, although Defendants contend that the fundamental issues in this case have already been decided, and that what remains is local discovery that can best be handled by local district courts.  In fact, common discovery and common legal issues that should be resolved centrally by this Court remain.  These include:

*Discovery and substantive motions relating to the dispensing of opioids.*  These issues were purposefully deferred from CT1.  The DEA has recognized that pharmacies are the last line of defense against the diversion of controlled substances.  Yet this Court has not yet had the opportunity to determine what duties federal and state law impose on the Pharmacy Defendants to prevent diversion and whether these Defendants can be held responsible for their role in facilitating the massive and deadly distribution of pills into communities across the country.

*Discovery and case development with respect to additional categories of defendants not developed in CT1.*  The CT2 cases include pharmaceutical benefit management companies, such as Express Scripts, Inc., Caremark Rx, LLC, and OptumRx, Inc., which set policies governing the coverage and use of opioids that contributed to and/or failed to limit the opioid epidemic.  The Third Amended Complaint filed by Cabell County

and the City of Huntington ("TAC") also names defendants that marketed *only* generic opioids,[6] teeing up additional issues regarding their potential liability.[7]   Further, the TAC also named Noramco, which was included, but not the subject of discovery, in CT1.  Plaintiffs allege that Noramco supplied the raw opioids (or active pharmaceutical ingredient ("API")) for much of the opioid drugs manufactured and sold in the United States.   Issues regarding the appropriate discovery and potential liability of these parties still require resolution, and are common to and will guide proceedings in other cases in this MDL.

*Other centralized discovery.*  While substantial discovery was conducted in CT1, Defendants are incorrect in suggesting that non-local discovery was completed.  As noted above, discovery relating to the additional defendants and to dispensing conduct and claims was not done.  Nor have so-called "apex" officers and directors been subject to discovery.  With the benefit of the parties' experience in CT1, there also needs to be further consideration of the appropriate geographic and temporal scope of discovery, relevant to all MDL cases, an issue that is currently being briefed before Special Master Cohen.[8]

---

[6] This is distinct from Defendants Allergan, Teva, and Mallinckrodt, which manufactured and marketed both generic and branded opioids, and whose deceptive branded and unbranded marketing is alleged to have benefited the sales of the all of their opioid products. *See, e.g.*, Opinion and Order Denying Mallinckrodt's Motion for Partial Summary Judgment, Doc. 2563 (rejecting arguments that plaintiffs lacked evidence "to support their fraudulent marketing claims regarding [Mallinckrodt's] sales of generic opioids"); Opinion and Order Denying Teva and Actavis Generic Defendants' Motion for Summary Judgment, Doc. 25464.

[7] Magistrate Judge Ruiz and this Court had the opportunity to consider motions to dismiss by certain of these defendants in actions by The Muscogee (Creek) Nation and The Blackfeet Tribe of the Blackfeet Indian Reservation, see Report and Recommendation, Doc. 1499; Report and Recommendation, Doc. 1500; Opinion and Order, Doc. 1680.

[8] Defendants only produced in CT1 certain data focused on those Plaintiffs' jurisdictions. Going forward, Plaintiffs submit that discovery should be expanded to all jurisdictions in which (footnote continues on next page)

Additionally, even now, Defendants are producing documents pertinent to common issues.  The parties also continue to address matters such Cardinal's and AmerisourceBergen's overbroad privilege claims, which will remain at issue in and relevant to other actions.

Once these issues common to all, or most, of the cases in the MDL are resolved, then district court judges can navigate discovery specific to their jurisdictions, such as damages or abatement issues.

In order to ensure that bellwether trials can serve their function to allow the parties and the Court to gather information about the range of likely outcomes at trial, this Court should adopt a discovery plan to prepare multiple cases for remand.  When only a single case is prepared, the benefits of a bellwether trial may be undermined by an individual settlement that neither provides the important guidance of a trial verdict nor produces a global settlement.  Preparation of multiple cases for trial can avoid this issue by ensuring that there will be other cases ready to proceed to trial if any particular bellwether case is resolved on an individual basis.   A coordinated discovery plan will ensure both that multiple cases are ready for trial and also that simultaneous preparation does not become unmanageable, as could easily be the case if multiple cases were remanded without an overarching plan and common supervision.

To this end, Plaintiffs propose that the Court enter a Case Management Order with prompt, staged deadlines allowing for discovery and motion practice in CT2, and in the various cases selected by the parties and the Court for selective remand once common discovery and rulings are complete.   Even after these cases are remanded to

---

federal claims have been filed.  This will permit Plaintiffs to prepare for trial or resolution even as other cases move forward, promoting greater efficiency and transparency, at minimal additional burden to Defendants.

another court, the special masters appointed by this court should be made available to travel with the cases to facilitate expeditious and consistent rulings.

The fundamental responsibility to have discovery common to all cases done lies with this Court.  The Court and the Special Masters have spent enormous time and effort to learn and rule on what is relevant for CT1 and now should implement that knowledge for all MDL cases.

Finally, Plaintiffs note that this Court began this MDL with an admonition that the gravity of the opioid epidemic required this Court's urgent action toward settlement or trial.  With much of the foundational work behind the Court and the parties, it is equally imperative—and even more achievable—to move cases to trial in the first and second quarters of 2020.  Otherwise, the role of this Court in managing the MDL towards a fair and equitable resolution may be overtaken.

Dated:          November 12, 2019

Respectfully submitted,

s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

s/ Joseph F. Rice
Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Plaintiffs' Co-Lead Counsel*

s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of November, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

*s/ Peter H. Weinberger*
Peter H. Weinberger

10