# EXHIBIT B

SIMMONS HANLY CONROY
A NATIONAL LAW FIRM

SIMMONSFIRM.COM
(800) 479-9533

**VIA EMAIL:** david@specialmaster.law

August 17, 2018

David R. Cohen
24400 Chagrin Blvd.
Suite 300
Cleveland, OH 44122

      Re: *In Re: National Prescription Opiate Litigation*, Case No.1:17-MD-2804

Dear Special Master Cohen:

      I write in response to the letter from Donna Welch dated August 4, 2018 ("Welch Letter"), seeking a ruling requiring Track 1 Plaintiffs to: (i) respond fully to Interrogatory Nos. 6, 7, and 10 within 10 days; and (ii) produce all documents in their possession, custody or control responsive to RFP No. 10, including communications, and provide Manufacturer Defendants with detail about the custodial sources they are searching for responsive documents. Defendants' requests should be denied in their entirety because: (i) Plaintiffs have provided, or will provide today, sufficient responses, including, pursuant to Rule 33, identification of the records from which the information sought in Interrogatories 6, 7, and 10 may be extracted, to the extent it exists; and (ii) Plaintiffs have already agreed to produce all documents that are responsive to RFP 10.

**I.**       **THE INTERROGATORY RESPONSES ARE PROPER**

      **A.**       **The Interrogatories at Issue**

      Interrogatories 6, 7, and 10 all pertain to the Defendants' theory that individual prescriptions are at issue in this case. These Interrogatories, attached in their entirety at Exhibit 1, request that Plaintiffs provide detailed information regarding individual prescriptions, individual doctors, and individual patients.

      **B.**       **Plaintiffs' Responses**

      Plaintiffs have responded to these Interrogatories (or will so supplement their responses today) by providing or agreeing to provide the documents in their possession, custody or control containing the requested information to the extent it exists or is readily accessible.[1] Plaintiffs have identified to the Defendants (or will identify today), the records they have produced where information pertaining to

---

[1] Plaintiffs will provide their supplemental responses to you once they have been served on Defendants.

We stand for our clients.

HEADQUARTERS
One Court Street
Alton, IL 62002
TEL: (618) 259-2222
FAX: (618) 259-2251

NEW YORK
112 Madison Avenue
New York, NY 10016
TEL: (212) 784-6400
FAX: (212) 213-5949

CHICAGO
230 W. Monroe
Suite 2221
Chicago, IL 60606
TEL: (312) 759-7500
FAX: (312) 759-7516

SAN FRANCISCO
455 Market
Suite 1150
San Francisco, CA 94105
TEL: (415) 536-3986
FAX: (415) 537-4120

LOS ANGELES
100 N. Sepulveda Blvd.
Suite 1350
El Segundo, CA 90245
TEL: (310) 322-3555
FAX: (310) 322-3655

ST. LOUIS
231 S. Bemiston
Suite 525
St. Louis, MO 63105
TEL: (800) 479-9533

particular prescriptions and particular patients may be found.  No more is required.

As the three interrogatories in dispute make clear, Defendants continue to treat these cases as aggregations of individual personal injury claims.  However, Plaintiffs seek redress for harms to the counties and cities themselves, not to individual residents of those communities.  Plaintiffs' claims do not turn on the contention that particular prescriptions were medically unnecessary or improper.

Defendants contend that it is unprecedented for plaintiffs asserting fraud-based claims to refuse to identify the misrepresentations that give rise to their claims, but Defendants ignore the fact that Plaintiffs here have identified, in detail, the misrepresentations and omissions on which their claims rely.  *See, e.g.*, Summit Second Amended Complaint ("Summit SAC") ¶ 177.[2]  Plaintiffs have also identified the targets of these misrepresentations and omissions:  the medical and patient communities within their jurisdictions and beyond.  *See* Summit SAC ¶¶ 146, 155-160, 174-76, 178, 351-56, 488-94.  Nor have Plaintiffs balked at providing evidence to support these allegations, to the extent that such information is within their possession, custody, or control, and may be produced without undue burden.[3]  Moreover, it is also worth noting that Defendants, through their own call notes, sales training materials, and prescribing and sales data, for example, have always had information concerning every doctor they visited, what was said during those visits, and what prescriptions each doctor wrote.

In seeking information regarding individual prescriptions, Defendants ignore the fact Plaintiffs contend that Defendants' misrepresentations affected *every* prescription for opioid therapy, because, in light of Defendants' concealment of the truth, no doctor was able to perform a proper risk/benefit assessment without accurate information about either the risks or the benefits.  *See* Summit SAC ¶¶ 146, 155-160, 174-76, 178, 351-56, 488-94, 714.[4]  This does not mean that *no* prescriptions would have been written, but rather that every prescription was affected in some form by Defendants' misrepresentations and omissions—in whether to prescribe

---

[2] Parallel allegations are contained in the operative Complaints for the City of Cleveland and Cuyahoga County. Plaintiffs cite to the Summit SAC as an exemplar, rather than to all three complaints, in the interest of brevity.

[3] To date, the Track One Plaintiffs have produced a total of 3,851,301 pages of documents to Defendants.

[4] Each of the Plaintiffs has disclaimed the intention of seeking reimbursement from the Defendants for prescriptions paid for by the Plaintiff based on the contention that the prescription for which reimbursement is sought was improper or not medically necessary.  *See* Let. to M. Cheffo *et al.* from D. Butler dated July 16, 2018 (regarding City of Cleveland) attached hereto as Exhibit 2; Let to M. Cheffo *et al.* from H. Shkolnik dated July 16, 2018 (regarding Cuyahoga County) attached hereto as Exhibit 3; Summit Opp. to MTD, Dkt. # 654, at 3 n.2 (dated May 25, 2018).



---


David R. Cohen                                                                                                                 Page 3
August 17, 2018

opioids, at what dosages, and for what length of time. Defendants' conduct also impacted what cautions were conveyed to patients, how patients were monitored, and how and whether doctors identified signs of addiction. *See, e.g.*, Summit SAC at ¶ 177.

Contrary to Defendants' contentions that Plaintiffs' theory is "unprecedented," in analogous situations, courts have recognized that conduct broadly directed at a community at large cannot be atomized into a series of individual decisions in order to obscure the larger picture. For example, in *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 29 (1st Cir. 2013), the First Circuit noted that "no physician in this case, or in the Neurontin MDL as a whole, testified that he or she prescribed Neurontin because of defendants' fraudulent off-label marketing." Instead, like here, the plaintiffs in *Neurontin* relied on statistical, aggregate proof, explaining that plaintiffs' experts' "regression analysis found a causal connection between the fraudulent marketing and the quantity of prescriptions written for off-label indications." *Id.* at 29-30. The court further noted that such aggregate proof could in fact be *"preferable"* to individualized, prescription-by-prescription analysis:

> Dr. Rosenthal testified as to the well-recognized unreliability in the field of healthcare economics of asking doctors individually whether they were influenced by the many methods of off-label marketing. She said that self-reporting from physicians about patterns of practice that may be controversial shows both conscious reluctance and unconscious bias, which lead them to deny being influenced. As a result, it is preferable "[t]o examine objectively the causal association between promotion and sales using ... econometric models." Dr. Rosenthal utilized the standard practice of using "aggregate data and ... statistical approaches to link patterns in promotional spending to patterns in prescribing for the drug." Dr. Rosenthal testified that it was "neither standard nor appropriate to look physician by physician."

*Id.* at 30.

While *Neurontin* involved claims by a third-party payor of fraudulent behavior by a pharmaceutical manufacturer, the court in *People v. ConAgra Grocery Prod. Co.*, 17 Cal. App. 5th 51 (Ct. App. 2017), *reh'g denied* (Dec. 6, 2017), *review denied* (Feb. 14, 2018), examined the issue of aggregate proof in the context of a nuisance claim. The court found that it was proper for each plaintiff to prove the existence of a nuisance in its jurisdiction by using aggregate data concerning the number of homes in each jurisdiction constructed before lead paint was banned, the number of housing units in each entity with lead paint hazards, and the total number of children who were poisoned by lead in each jurisdiction. *See Id.* at 113-116. The court also rejected the argument that plaintiffs must prove the location and identity



David R. Cohen                                                                                               Page 4
August 17, 2018

of each coat of lead paint that was applied to any surface in the jurisdictions in order to succeed in their public nuisance claim. As these cases show, it is perfectly proper for Plaintiffs to prove their case through aggregate proof and to articulate a causal chain that recognizes the aggregate nature of the harms Defendants have caused.

The above aside, Plaintiffs do not dispute that, as Defendants point out in the Welch Letter, Defendants are free to mount any defense they choose, even one that does not address Plaintiffs' claims.[5] But, discovery is limited to matters that are proportional to the needs of the case, and in determining the proportionality of the discovery the Defendants seek, the tangential connection of Defendants' theory to the claims Plaintiffs assert is a factor that deserves due consideration. Fed. R. Civ. P. 26(b)(1).

In this case, Interrogatories 6, 7, and 10 do not call for Plaintiffs to produce information they have or plan to assert in this case, but rather, they ask Plaintiffs to undertake to analyze data and make identifications that are neither necessary nor appropriate with respect to the claims Plaintiffs are asserting. Rule 33 of the Federal Rules of Civil Procedure recognizes that, in some instances, the interrogating party, rather than the responding party, should bear the burden of extracting information from voluminous records. Specifically, Rule 33 provides:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d). *See, e.g., Wilkinson v. Greater Dayton Regional Transit Authority*, No. 3:11CV00247, 2012 WL 3527871, at *9 (S.D. Ohio, Aug. 14, 2012) (under FRCP 33(d), producing party was not required to perform analysis of a "gigantic number of documents" to provide individualized information based on requesting parties theory of the case); *Lunkenheimer Co. v. Tyco Flow Control Pacific Party Ltd.*, No. 1:11-CV-824 2015 WL 631045, at *2 (S.D. Ohio, Feb. 12, 2015) (answer to interrogatory not required when burden to derive answer was the same for both sides); *FenF, LLC v.*

---

[5] To the extent that Defendants present a defense grounded in analysis of individual prescriptions, Plaintiffs reserve the right to respond to and/or refute that defense.

Case: 1:17-md-02804-DAP Doc #: 2925-2 Filed: 11/12/19 6 of 8. PageID #: 429919



David R. Cohen  Page 5
August 17, 2018

*Healio Health Inc.*, Case No. 5:08CV404, 2008 WL 11379993, at *3 (N.D. Ohio, 2008) (FRCP 33(d) satisfied when the "burden of reviewing those records would be equal upon Plaintiff as it would be on Defendants").

In nearly identical circumstances, a district court in Tennessee rejected a nursing home's request to require the government to identify individual false claims. *United States of America ex rel. Glenda Martin v. Life Care Centers of America, Inc.*, Nos. 1:08-cv-251, 1:12-cv-64, 2015 WL 10987029, (E.D. Tenn. Feb. 18, 2015). In *Life Care*, the court had held (twice) that the government could prove its case through statistical sampling and extrapolation.6 Id. at *2. Defendant subsequently sought to compel the Department of Justice to identify "each of the alleged claims, records or statements on which the Government intends to establish liability and damages" and "those submitted claims that resulted from, or were caused by Life Care's alleged corporate pressure." *Id*. at *1. In denying the motion, the court noted that: "Defendant is not simply requesting that the Government disclose discovery, they are essentially requesting that the Court impose an affirmative burden on the Government to identify each claim in the total universe of claims which could be categorized as false." *Id*. at *3. Like Defendants here, the nursing home claimed that the discovery was critical to its ability to investigate and develop its factual defenses. *Id.* "Simply because the Defendant may choose, among these options, to pursue a litigation strategy that relies on a claim-by-claim review does not justify placing the burden on the Government to be the party that performs that review." *Id.* at *3. Because the government produced the underlying claims data, defendant had the information to perform the analysis itself. *Id.* The court noted that defendant's complaints regarding the burden of conducing such a review "seems to reinforce the Court's earlier observation that insistence on such an individualized review by *either* party is not justified in this case." *Id.*

Here, Plaintiffs have produced, or are producing, to Defendants (to the extent that it exists in their possession, custody, and control) the information Defendants would need to conduct the analysis they ask Plaintiffs to perform. Of course, however, Plaintiff are not in possession of broad data about *all* opioid prescriptions written within their counties, when they have not paid for such prescriptions nor otherwise been provided information about them. Nor are Plaintiffs in possession of information that would identify *every* person who became addicted to any substance or was otherwise harmed as a result of any prescription of an opioid.

---

[6] "When considering the possibility of having the Government identify each and every false claim, the Court found that the Government *could* specify in detail the specific claims for which it alleges are false, but in order to do so, it would require the devotion of more time and resources than would be practicable for any single case." (*Id.* at 26) (emphasis original)." *Id.* at *3. While Plaintiffs do not bring claims under the False Claims Act, the *Life Care* rationale is even more powerful here, where the government entities do not seek recovery for individual claims they paid, but for impacts on public health and public safety to which municipal governments have had to respond.



David R. Cohen  Page 6
August 17, 2018

     Plaintiffs have supplemented or will supplement today their responses to Interrogatories 6, 7, and 10 to identify the records that have been produced from which *Defendants* may identify individuals who were prescribed opioids, and/or became addicted to opioids to the extent they exist.[7] If Defendants believe that such individual identifications are necessary for their defense, they are free to undertake the analysis to make those identifications from data they obtain from Plaintiffs or from non-parties where the information is outside the possession of the Plaintiffs. But Defendants cannot compel Plaintiffs to perform the analysis for them when Plaintiffs have not themselves performed the analysis and do not contend that this kind of analysis is relevant or helpful to prove their claims. *Harris v. Advance America Cash Advance Centers, Inc.*, 288 F.R.D. 170, 173 (S.D.Ohio,2012) ("a party need only produce existing documents, and not create documents"); *U.S. Howard v. Lockheed Martin Corp.*, No. 1:99-CV-285 2012 WL 139198, at *5 (S.D. Ohio, Jan. 18, 2012) (motion to compel denied under FRCP 33(d) and producing party not compelled to create the requested process/analysis which otherwise did not exist).

     Plaintiffs additionally note that Interrogatory 10 asks for prescriptions that Plaintiffs *contend* "were unauthorized, medically unnecessary, ineffective, or harmful." As discussed above, Plaintiffs do *not* contend that particular prescriptions were medically unnecessary, ineffective, or harmful. Defendants cannot force Plaintiffs to identify details about contentions they do not make.[8]

### II. PLAINTIFFS HAVE AGREED TO PRODUCE NON-PRIVILEGED DOCUMENTS RESPONSIVE TO RFP 10

     RFP 10 calls for production of "All Documents and communications relating to any evaluation, assessment, analysis, modeling, or review of any cost or financial or economic impact associated with the alleged improper prescribing of Opioids." As Defendants recognize, Plaintiffs agreed to produce all responsive documents in their custody and control. Nevertheless, Defendants complain that Plaintiffs have not affirmatively stated that they are not withholding correspondence responsive to this request. In so arguing, Defendants ignore the fact that Plaintiffs already stated that they will not withhold any non-privileged, responsive documents. Defendants similarly complain that Plaintiffs have not identified the custodians whose documents have been searched specifically in the context of this request, but Plaintiffs identified the custodians whose documents are being searched in connection with Plaintiffs' document productions. No ruling is required with

---

[7] Plaintiffs further agree to respond to written questions on the FRCP 30(b)(6) Topics related to these issues, namely Topics 4, 5, 6, 19, and 29, to the extent such information and documents exist.

[8] Perhaps Defendants recognize this problem, paraphrasing Interrogatory 10 in the Welch letter to drop "contends." A similar problem exists in the wording of Interrogatory 7, where Defendants ask Plaintiffs to identify "every person who *allegedly* became addicted to any substance or was otherwise harmed," because Plaintiffs do not allege harm to individuals persons.



David R. Cohen  Page 7
August 17, 2018

respect to RFP 10 because Plaintiffs agreed to produce all non-privileged documents in their possession, custody, or control responsive to this RFP.

Sincerely,

Paul J. Hanly, Jr.