

November 13, 2019

***Via CM/ECF system***
The Hon. Dan Aaron Polster
Carl B. Stokes U.S. Court
House Courtroom 18B
801 West Superior
Avenue Cleveland, OH
44113-1837

    **Re:**    *In Re: National Prescription Opiate Litigation, 1:17-md-2804 (N.D. Ohio)*

Dear Judge Polster,

    We write this letter on behalf of our client, the Seminole Tribe of Florida (the "Seminole") who, together with our client, the Miccosukee Tribe of Florida (the "Miccosukee"), represent 100% of Native Americans in the state of Florida. In our review of the transcript from the November 7, 2019 hearing, we learned that the Court is prepared to set one case from the Native American Tribal Track for remand as part of the Court's "hub and spoke" approach and that the Court would like recommendations by today at noon. As the Honorable Judge Jesse Furman expressed in his order on the selection of bellwether trials, all counsel have a fiduciary duty to their clients to advocate for the most appropriate bellwether and "this Court cannot tolerate a lawyer sitting on his hands and complaining long after . . . actual selection of the bellwether trials." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543-JMF, at ECF No. 2763 (S.D.N.Y. April 12, 2106). There are several compelling reasons why a remand trial for the Seminole in the Southern District of Florida before the Honorable Rodolfo A. Ruiz II will best help predict verdicts and promote settlements for *all* Native American tribes.

    There are two types of Native American Tribes as plaintiffs in this MDL: tribes which do not have gaming and tribes that are subject to the Indian Gaming Regulatory Act ("IGRA"). There are significant numbers of each type of tribe in this MDL. IGRA members can seek both past and future damages in the trials in this MDL process because, unlike most other tribes that provide healthcare services to their members solely out of federal funds, IGRA members such as the Seminole and many of its peers pay for these services themselves. Indeed, the National Indian Gaming Commission reported Indian gaming revenue of $33.7 billion in 2018.

    The Seminole have sought to build consensus with other MDL plaintiff IGRA tribes because we have common claims and common damages that the non-IGRA tribes, in many instances, do not have. For example, at a recent hearing, Tribal Leadership stated, "we have an agreement to make sure the abatement model" (which relates solely to *future* damages) "covers all

**2 ALHAMBRA PLAZA, STE 601, CORAL GABLES, FL 33134**

**P:** 305-740-1423 | **F:** 786-298-5737 | **E:** INFO@MOSKOWITZ-LAW.COM | **W:** MOSKOWITZ-LAW.COM

*Letter to The Hon. Dan Aaron Polster*
*November 13, 2019*
*Page 2*

tribes" and that "the metrics of that model is what would apply universally." We respectfully suggest that, while abatement is certainly important as part of a damage theory, it is just as important, if not more important, for the many tribes who generate their own revenue to at least make a case for their past losses, as is being done by the municipalities and counties. Because the Seminole, like the Miccosukee and other IGRA members, are claiming both past *and* future damages, a trial of its claims will provide the best comparison point for all Tribal Track cases.

The Seminole, like all other IGRA tribes, have additional characteristics which make it a strong choice for a bellwether trial. The Seminole is a moderately sized and important tribe of 5,000 members that employs an additional 20,000 persons in its gaming facilities, for a total of approximately 25,000 persons who will be included in the Seminole's damage assessment. Thus, the Seminole have the benefit of representing a significant number of people without the complexities and difficulties that may be attendant to a trial of a much larger tribe whose members may span across over many counties. Further, as one of the most economically successful tribes (due to its ownership of the Hard Rock facilities in south Florida), the Seminole have the resources necessary to vigorously prosecute their case at trial and a genuine desire to have these issues litigated in their hometown, where their injuries occurred.

Finally, there are compelling reasons to conduct at least one bellwether trial in the state of Florida. As explained in our original letter [ECF No. 2899, attached hereto], Florida is the original epicenter of the opioid crisis and it is prudent to have at least one bellwether from this state, so the witnesses, evidence, and facts located in the state of Florida can be considered in any predictive trial. The result of the Florida trial will be helpful as a predictive tool for future resolutions for all MDL Plaintiffs and will give confidence to individuals across the country that the MDL process is focused on the regions hit hardest by the opioid epidemic.

All of our brethren Native American tribes have serious damages and are all represented by very qualified counsel, many who have been appointed by this Court in leadership positions. Our goal is to promote a discussion regarding the possible bellwether case that will provide the parties with the best predictive results to aid resolution of the Tribal Tack cases. For these reasons, in addition to the reasons expressed in our prior letter, we respectfully request that the Court remand the Seminole's case to the Southern District of Florida for trial. We look forward to working cooperatively with counsel for both IGRA and non-IGRA tribes to zealously represent the interests of all Native Americans and possibly achieve a global resolution of our claims.

Respectfully Submitted,

Adam M. Moskowitz, Esq.
On behalf The Moskowitz Law Firm
and Conrad & Scherer, L.L.P.

# Exhibit A



November 4, 2019

<u>*Via CM/ECF system*</u>
The Hon. Dan Aaron Polster
Carl B. Stokes U.S. Court
House Courtroom 18B
801 West Superior
Avenue Cleveland, OH
44113-1837

    Re:    *In Re: National Prescription Opiate Litigation, 1:17-md-2804 (N.D. Ohio)*

Dear Judge Polster:

    In accordance with your order Order dated October 25, 2019, and after consulting with Don Barrett, counsel for West Boca Medical Center, Inc. ("WBMC") and representative of over 360 hospital MDL plaintiffs in 34 states on the Plaintiffs Executive Committee, Plaintiff The Seminole Tribe of Florida (the "Seminole") respectfully requests the Court to consolidate its cases with WBMC's case[1] and remand both actions as part of the "Hub and Spoke" remands to the Southern District of Florida – the original epicenter of the Opiate Crisis – for a bellwether trial against Defendants (1) Cardinal Health, Inc. ("Cardinal"), (2) Abbott Laboratories, Inc. ("Abbott), and (3) Walgreen Company ("Walgreens").

    A consolidated trial in south Florida will significantly advance both the Tribal Track Cases and the Hospital Cases. Through this consolidated approach, the Seminole and WBMC will: (1) jointly establish liability for the Defendants while (2) separately proving the damages unique to Native American Tribes and hospitals and (3) highlighting the important events and facts regarding the Opiate Crisis that occurred in south Florida. Any bellwether "Hub and Spoke" program should include south Florida because the evidence uncovered in this litigation proves that it served as the epicenter of the Opioid crisis and thus will serve a predictive, sampling result, which is the main purpose of any bellwether program. Additionally, as one of the most efficient and effective districts in the federal system, the Southern District of Florida will serve as an ideal venue to ensure timely resolution of the consolidated proceedings.

---

[1] *Seminole Tribe of Florida v. Purdue Pharma LP, et al.,* Case No. 1:19-op-45912 (N.D. Ohio) and *West Boca Medical Center, Inc. v. AmerisourceBergen Drug Corp., et al.,* Case No. 1:18-op-45530 (N.D. Ohio).

2 ALHAMBRA PLAZA, STE 601, CORAL GABLES, FL 33134
P: 305-740-1423  |  F: 786-298-5737  |  E: INFO@MOSKOWITZ-LAW.COM  |  W: MOSKOWITZ-LAW.COM

## I. BACKGROUND

The Seminole Tribe is the unconquered Tribe. The Seminoles are not subject to a treaty with the United States, and has fought for centuries to maintain its sovereignty. Its continued resistance to colonialism and military incursion earned the Seminole its standing as one of the last unconquered tribes. The Seminole is the largest Tribe in the state of Florida, with reservations throughout the state.[2]

The Seminole reside primarily in South Florida, an area of the country which has been one of the hardest hit by the opioid crisis. South Florida was the center of the opioid crisis because of its infamous "pill mills" that supplied over 5.5 billion hydrocodone and oxycodone pills into communities from 2006 to 2012.[3] During that time, "[Florida] became the pill suppliers for the rest of the country"[4] and South Florida communities became inundated with opioids. Many Seminole tribal members sadly fell victim to the massive influx of opioids into their community and the direct resulting adverse consequences of such drug addiction.

The Seminole responded to this crisis by building drug treatment facilities and dedicating millions of dollars in tribal funds to treat affected members and provide family services, among other necessary expenses. As a result of such costly efforts, Seminole has had some success in combatting the opioid epidemic. As a result, Seminole filed its lawsuit in the Southern District of Florida seeking to abate the nuisance the opioid epidemic has caused in its community and to recover money expended on the opioid health crisis. Importantly, the Tribe has voluminous financial and health records that will inform its damages model that will include not only abatement, but economic damages attributable to reduced productivity of Seminole and its enterprises.

## II. LEGAL STANDARD

Federal courts may authorize bellwether trials "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one more separate issues, [or] claims . . . ." Fed. R. Civ. P. 42(b). If "bellwether trials or test cases are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases." Fed. Jud. Ctr., *Manual For Complex Litigation* ("Manual") § 22.315 (4th ed. 2004). A strong test case will produce a representative verdict or settlement that will enable the parties and the Court to "determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis." *Id.* "The more

---

[2] Undersigned counsel also represents The Miccosukee Tribe of Florida in their MDL Complaint case and therefore counsel represents 100 percent of all Native Americans in the State of Florida in this MDL Litigation. Undersigned Counsel conducted numerous calls with Special Master Yanni and Special Master McGovern regarding their cases and this bellwether selection process.

[3] Emily L. Mahoney & Langston Taylor, *What fueled opioid crisis in Florida? Billions of pills, millions in campaign cash*, The Miami Herald (July 25, 2019), https://www.miamiherald.com/article233058742.html.

[4] *Id.* (quoting Former Florida Senator Dave Aronberg).

representative the test cases, the more reliable the information about similar cases will be." *Id.* Thus, "representativeness" is a "core element" that must be present for a bellwether trial "to achieve its value ascertainment function for settlement purposes or to answer troubling causation or liability issues common to the universe of claimants." *In re Chevron U.S.A., Inc.,* 109 F.3d 1019, 1019 (5th Cir. 1997).

As discussed extensively and persuasively by Federal Judge Jesse M. Furman in *In Re: General Motors LLC Ignition Switch Litigation,* No. 1:14-md-02543-JMF, at ECF No. 2763 (Order dated April 12, 2016) the universe of all cases (not just cases represented by Lead Counsel) should be considered for the bellwether program and the "specific plaintiffs and their claims should be representative of the range of cases." *Id.* (citing Managing Multidistrict Litigation in Products Liability Cases: A Pocket Guide for Transferee Judges 44 (Fed. Judicial Ctr. 2011) and Manual, § 22.315).

### III. ARGUMENT

Applying the foregoing legal standards, the Court should conclude that the Florida MDL Plaintiffs should conduct at least one of the proposed six upcoming bellwether trials in the Southern District of Florida.

#### A. Seminole and WBMC Cases Are Representative of Cases in their Respective Tracks.

The Seminole Tribe are ideal representatives of other Native American Tribes. As a medium-sized tribe of approximately 5,000 members, the Seminole are small enough to share some of the same characteristics of smaller tribes, while large and very well-resourced enough to represent the characteristics of larger tribes as well. Further, the claims made by the Seminole mirror the exact claims advanced by all Plaintiffs in the Tribal Track cases. The Tribal Track has already established a short-form complaint where tribes could adopt claims that survived Defendants' motions to dismiss. The Seminole claims are largely the same as those adopted by every other tribe who filed a short-form complaint.

Similarly, WBMC, as one of the hospitals to be a bellwether in the motion to dismiss phase, has claims that are uniform to the constituent Hospital Cases. WBMC has seen an increase in the treatment of patients with opioid-related illnesses, including pregnant mothers and newborn babies with neo-natal abstinence syndrome. These have resulted "million dollar babies" whose treatment costs top 7 figures and because of lack of coverage result in higher uncompensated costs to hospitals like WBMC.

#### B. The Proposed Bellwether Trial Will Enable the Parties to Determine the Nature and Strength of the Claims Presented by the Tribal Track and Hospital Cases.

The Seminole and WBMC are well-situated to test the strength of their claims against the Defendants' defenses. Because of South Florida's unique position at the original epicenter of the opioid crisis, the bellwether trial will effectively test the theory advanced by most plaintiffs that damages caused by opioid are directly linked the magnitude of opioid distribution. In addition, by trying cases against Abbott, an opioid manufacturer, Cardinal, an

opioid distributor, and Walgreens, a distributor and retailer, the Court will be able to fully assess claims against the various types of defendants that are implicated in the overall litigation. The bellwether trial will provide a good opportunity to test the Defendants' defense that shifts responsibility to Florida's "pill-mill" industry supported by licensed physicians and a Medicare claims system that funded opioid purchases. With all parties able to present strong cases, this Proposed Bellwether will provide a strong data point for the MDL leadership to utilize in their global settlement negotiations.

### C. The Proposed Bellwether Trial Will Help Determine Whether the Cases Can Be Developed and Litigated on a Group Basis.

A consolidated trial will allow the Court to assess the efficiency and effectiveness of permitting parties from different tracks, but the same geographic area, to utilize a bifurcated proceeding in which the parties jointly establish liability but then separately prove their specific causation and damages. A joint trial on liability makes sense because the factual predicate for Seminole and WMBC's claims will be nearly identical. Moreover, Counsel for both Plaintiffs have already conducted numerous discussions and plans on how exactly this consolidate trial in the Southern District of Florida can proceed efficiently and expeditiously. Counsel look forward to speaking to the Defendants' counsel to organize the most efficient process and procedures.

This approach has the potential to achieve great judicial economy in one of the costliest MDLs in history. If successful, a consolidated trial will reduce the amount of resources devoted to proving liability at trial, while preserving each plaintiff's opportunity to present its causation and damage theory. Moreover, in the unlikely event that this consolidated approach proves unworkable, this will inform leadership that group or consolidated litigation between the tracks should not be utilized. Either way, a consolidated trial here in the Southern District of Florida will be an excellent indicator for whether the cases can be developed and litigated on a group basis.

### D. The Proposed Bellwether Trial Will Determine the Range of Values the Cases May Have if Resolution Is Attempted on a Group Basis.

Consolidation has already been proven to be a successful mechanism for settlement purposes in the Summit and Cuyahoga bellwether trials. The two counties were able to secure settlements from multiple defendants and ultimately avoid a bellwether trial. Similarly, if the Seminole and West Boca proceed with their Proposed Consolidated Bellwether Trial, it would provide significant value in two key tracks: The Tribal Track and the Hospital Track.

The resulting damages verdict will give value to two tracks simultaneously. The parties will then be able to assess the value attributable to each case track and engage in more informed negotiations.

## IV. CONCLUSION

Based on the foregoing, the Seminole respectfully request that the Court consolidate the Seminole and WBMC cases and remand them back for a trial in the Southern District of Florida. Both Plaintiffs have experienced trial counsel, including the Barrett Law Group, The Moskowitz Law Firm and Conrad & Scherer, that have successfully tried some of the largest and most successful trials in the country and have the experience and resources to coordinate this remand trial with Lead Counsel and prosecute these important cases.

Respectfully Submitted,

_____
Adam M. Moskowitz, Esq.
On behalf The Moskowitz Law Firm
and Conrad & Scherer, L.L.P.