UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL CASES | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**PHARMACY DEFENDANTS' FOLLOW-UP POSITION PAPER
ON CASE SELECTION**

At the November 6, 2019 status conference, the Court directed the parties to select four cases to proceed next in the MDL: a manufacturer case, a distributor case, a pharmacy case, and a Native American Tribe case.[1] With regard to the two cases that pertain to the Pharmacy Defendants,[2] the Pharmacy Defendants propose the following and request that they be remanded immediately due, *inter alia*, to the inherently local nature of pharmacy claims:

**Pharmacy Bellwether Case: Cobb County, Georgia**

Plaintiffs proposed, and the Court accepted, Cobb County as a Negotiation Class representative. *See* Dkt. Nos. 1821, 2591. Counsel for Cobb County includes Paul Hanly, Jr., one of Plaintiffs' Lead Counsel.

In a submission to this Court by Plaintiffs' Lead Counsel and Plaintiffs' Executive Committee (Dkt. No. 1820-1 at 24), Plaintiffs described Cobb County as follows:

> Cobb County, Georgia is Georgia's third most-populous county, with a population of approximately 700,000. Few areas have been

---

[1] The Court's direction to the parties on November 6 was "I want a distributor case, I want a manufacturer case, I want a pharmacy case, and I want a tribe, Native American tribe. All right? And I want you to agree on those four cases and where they should be, which ones they are." Dkt. No. 2913 at 42.

[2] This submission is made by CVS, Rite Aid, Walgreens, and Walmart (the "Pharmacy Defendants").

> hit as hard by the opioid epidemic as Cobb County. Indeed, Cobb County had some of the highest opioid overdose deaths in Georgia with 121 deaths in 2017 and is one of three Georgia counties dubbed the "Heroin Triangle." The opioid problem is so severe in Cobb County that it was featured in the A&E Network docuseries "Intervention."

By Plaintiffs' own description, and because the case concerns a new geographic region, Cobb County could not be a more appropriate choice for the pharmacy bellwether.

### Tribal Bellwether Case:  Blackfeet Tribe, Montana

The *Blackfeet* case has already been selected as a bellwether for motion practice, and, in fact, motions to dismiss have already been decided.  It is ready to be remanded for discovery and trial.  In addition, *Blackfeet* is situated in a geographic region (in the District of Montana) that is very different from the Northern District of Ohio—a region where the facts have not been developed at all, and where no opioids case has been tried to judgment.  In line with the Court's instructions on November 6 (Dkt. No. 2913 at 40-41), *Blackfeet* also brings claims against a variety of defendants from all three industry groups.

*   *   *

The *Cobb County* and *Blackfeet* cases are brought by important plaintiffs and involve different parts of the country and different circuits.  These cases would serve the interests of the MDL by exploring law and facts in varied jurisdictions beyond Track 1.  They are appropriate bellwethers.  The Pharmacy Defendants respectfully request that the Court select these two cases as the pharmacy and Native American Tribe bellwethers and remand them to their transferor courts immediately.[3]

---

[3] The Pharmacy Defendants propose these cases subject to and without waiving their objection to severing defendants from any cases prior to remand.

**PLAINTIFFS' COMPETING PROPOSALS**

The Pharmacy Defendants met and conferred with the Plaintiffs' Executive Committee but could not reach agreement on the pharmacy or Native American Tribe bellwethers.[4] The Pharmacy Defendants' response to Plaintiffs' proposal, as we understood their proposal through the meet and confer process, is as follows:

**A. Track 1B**

At the November 6 hearing, the Court directed that the pharmacy bellwether case be a dispensing case. Track 1B should not be the pharmacy bellwether case as Plaintiffs propose. First, as set forth in the Pharmacy Defendants' opposition to the Track 1 Plaintiffs' motion for leave to amend their complaint (Dkt. No. 2924), pharmacy dispensing claims cannot be added to the Track 1 complaints. Plaintiffs represented—and this Court ruled definitively—that Plaintiffs were pursuing only distribution claims and no dispensing claims against the Pharmacy Defendants in the Track 1 Complaints. *See* Dkt. No. 1203 at 2 (holding "Retail Pharmacies may only be held liable as distributors," because "Plaintiffs have disclaimed any cause of action against Retail Pharmacies in their capacity as retailers or dispensers of opioids"). Indeed, Plaintiffs candidly admitted in a recent filing that "[t]hese issues were purposefully deferred from CT1." Dkt. No. 2921 at 6. Plaintiffs accordingly cannot show the "good cause" or lack of prejudice that Sixth Circuit precedent requires for leave to amend so late in the game.

---

[4] Just yesterday afternoon, the Plaintiffs' Executive Committee made a surprise submission, requesting that the Court reverse its November 6 decision to (a) dismiss, rather than sever, non-remanded parties from the next bellwether cases (which the Court indicated would make the remanded cases manageable to try), and (b) remand the next bellwether cases for discovery in the remand court. Given the lateness of Plaintiffs' filing, and that they did not bother to meet and confer with the Pharmacy Defendants about that submission, the Pharmacy Defendants have not had sufficient time to address it here and will respond in a separate filing.

Second, if the bellwether process is to play a useful role in accomplishing the broader goals of the MDL that go beyond cases involving just two counties in a single state, the parties must focus their efforts on new jurisdictions, where the legal questions remain undecided and the facts have not been discovered. The local impact of the use and misuse of prescription opioid medications and local efforts to address abuse and addiction vary enormously among jurisdictions, as does the law. Continued focus on the same jurisdictions that have already been the MDL's entire focus for 18 months would do nothing to advance the purposes of the MDL.

Third, it would be manifestly inappropriate and inconsistent with the Court's role as an MDL court to prioritize a Track 1B trial over the thousands of other plaintiffs in the MDL waiting for their chance to be heard. The Track 1 Plaintiffs have had their day in court, took defendants of their own choosing to the beginning of trial and then opted to settle with all but one of the remaining defendants after picking a jury. They secured over $320 million in settlement funds—far exceeding their entire claim for past damages—for the Track 1 counties' immediate use toward addressing the opioids crisis locally. There is no basis for allowing the Track 1 Plaintiffs to leapfrog, for the second time, other cases in the MDL for their own benefit at the expense of other plaintiffs.[5]

### B.  Track 2

Plaintiffs propose Track 2 as the distributor bellwether. But while they propose to remand

---

[5] On Monday, just 48 hours before this submission was due, counsel for the City of Cleveland emailed the Court to suggest that Cleveland should also be included in any Track 1B trial, despite this Court's previous decision that Cleveland should not follow Track 1 to trial, and the Court's acknowledgements of Cleveland's significant discovery deficiencies. Contrary to counsel's email to the Court (which is not in the record and was not the subject of the Pharmacy Defendants' meet and confer with the Plaintiffs' Executive Committee), discovery in the Cleveland case is nowhere near complete, as the Pharmacy Defendants will explain in a separate filing. But in no event should the Court reverse its decision that Cleveland is not to follow Track 1. Cleveland's claims should not be added to Track 1B or any other bellwether track.

4

the claims against the major distributors to the Southern District of West Virginia, they propose to simultaneously proceed with the case against all other defendants here in the MDL.  In other words, Plaintiffs seek to convert their distributor bellwether into an all-defendant case—albeit one proceeding in two jurisdictions at once.

This proposal must be rejected.  First, it is inconsistent with the Court's instructions on November 6, in which the Court directed that "[t]here wouldn't be a West Virginia Track 1-BC, there would be a West Virginia case.  It would be just say hypothetical against the big three distributors, and one or two causes of action, and that would be it.  The other causes of action would be dismissed and so would the other defendants, and that's what would go forward, and that judge would manage it."  Dkt. No. 2913 at 30-31.  It would also be inconsistent with the Court's directives as it would force the Pharmacy Defendants to proceed in more than the (at most) two cases that the Court contemplated.  Second, it introduces the very inefficiencies and risks of inconsistent rulings (under West Virginia law in the very same case) that the MDL was designed to avoid.  Third, and perhaps most importantly, it is not permissible.  While 28 U.S.C. § 1407 may allow the Court to remand *claims*, it nowhere allows simultaneous litigation of the same claim in the same suit in different federal courts, and it nowhere allows the splitting up of defendants for that purpose.

### C. Cherokee Nation

For the reasons set forth in the distributors' submission, the Cherokee Nation case in Oklahoma is not an appropriate bellwether case.  Among other reasons, an Oklahoma court already has ruled on Oklahoma facts and law in the Attorney General suit against Purdue, Teva, and Johnson & Johnson.  Other jurisdictions must be explored.  The Court previously identified the

5

*Blackfeet* case as a bellwether, and it is therefore a more appropriate and useful bellwether for remand as the Native American Tribe case.

### D. City and County of San Francisco

Plaintiffs' proposal to remand the San Francisco case—against all defendants, no less—again runs afoul of the Court's directives at the November 6 hearing. The Court requested *four* cases—a manufacturer case, a distributor case, a pharmacy case, and a tribal case—and Plaintiffs have identified their candidates for each. The Court did not contemplate a fifth remanded case. Nor did it contemplate that any case, except possibly the Native American Tribe case, be remanded with all defendants. Adding the San Francisco case to the mix would, again, force defendants to proceed in more cases than the Court envisioned.

### E. Bifurcation of Discovery

Plaintiffs suggest in their November 12 supplemental submission that discovery in bellwether cases should be bifurcated—with "common" discovery occurring in the MDL and "jurisdiction specific" discovery occurring in the transferor court. Such bifurcation makes no sense for a pharmacy case. Pharmacy claims do not turn on the operation of nationwide suspicious order monitoring programs. Rather, they are based on local conduct. They turn on decisions made by individual pharmacists when faced with individual prescriptions presented by individual patients at individual pharmacies within a plaintiff's jurisdiction. While a local pharmacist's decisions may be subject to corporate policies, those polices already have been or are being produced.

### F. Timing of Remand

After months of discussion with Special Master McGovern regarding the immediate remand of new bellwether cases as a method of advancing the purposes of the MDL, preserving

6

the Court's resources, and advancing cases with different judges, Plaintiffs now seek to avoid remand until discovery is largely complete.  This would defeat the benefits of Special Master McGovern's plan and render months of discussion a waste.  If, as the Court proposes, a single case is selected as the pharmacy bellwether, such as the *Cobb County* case, immediate remand poses no risk of inconsistent rulings on the law or in discovery.  Discovery still will proceed as appropriate before a single court.  In this regard, immediate remand is particularly appropriate for pharmacy claims, given the local nature of dispensing discovery.

Date:   November 13, 2019

                Respectfully submitted,

/s/   Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Pharmacy, Inc., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*


/s/   Kelly A. Moore (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street

Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Counsel for Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center*


/s/    Kaspar Stoffelmayr (consent)
Kaspar Stoffelmayr
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*


/s/    Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com
E-mail: tmtabacchi@jonesday.com

*Counsel for Walmart Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 13, 2019, the foregoing was filed using the Court's CM/ECF filing system and will be served via the Court's CM/ECF filing system on all attorneys of record.

/ s/   *Eric R. Delinsky*
Eric R. Delinsky