# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>ALL CASES | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**PLAINTIFFS' REVISED POSITION STATEMENT REGARDING CONTINUING LITIGATION**

On November 6, 2019, this Court held a hearing to discuss next steps in this MDL litigation. During the hearing, Defendants requested an additional week's time to meet and confer with Plaintiffs. The Court then instructed the parties to provide an additional submission by November 13, 2019 identifying for remand cases against each group of defendants (Manufacturers, Distributors, and Pharmacies), as well as one Tribal case.

Despite the additional opportunity to meet and confer, the parties are still not in agreement about which cases should be remanded, about the timing of remands, or about the continuing role of this Court. For this reason, Plaintiffs here provide their own revised set of proposals concerning case tracks, remands, and pending motions. These revised proposals are based on Plaintiffs' original proposals, submitted to the Court on November 4, 2019, which have been amended to reflect the principles announced by the Court on November 6 and the subsequent discussions with the Defendants.

These proposals, which follow below, provide a range of trials, set to proceed on different tracks, before this Court and others, to achieve the goal of testing different claims against different defendants at trial, while involving a variety of Plaintiffs, and using the resources of this Court and other courts to advance the litigation effectively. First, CT1B case would be tried promptly before this Court and would involve public nuisance and conspiracy claims against **Pharmacy** Defendants

on both distribution and dispensing claims. CT1C, would involve the three large **Distributors**, AmerisourceBergen, CardinalHealth, and McKesson, and would involve both a **RICO** and nuisance claim, Recognizing the Court's resources are limited and in keeping with Plaintiffs' position regarding severance embodied in the Supplemental Submission filed yesterday (Dkt. # 2921), regarding CT2, Plaintiffs' propose that the Court sever and file a suggestion of remand of the three large **Distributors** such that the West Virginia court could move the public nuisance case to trial expeditiously and that the remaining Defendants in CT2, including the Prescription Benefit Managers, remain pending before this Court such that common issues discovery may be accomplished. For CT3, in keeping with the Court's desire to include a trial against each defendant category, Plaintiffs proposed that the City of Chicago case against the **Manufacturer** Defendants should also be remanded after limited common issues are resolved. To accomplish the goal of **geographic and Plaintiff diversity,** Plaintiffs also propose CT4 the case brought by the City and County of San Francisco.[1] Finally, the PEC and the Tribal Committee propose that remand of the Cherokee Nation case will both be efficient and representative of the pending tribal cases filed in the MDL. Consistent with the Order of the Judicial Panel on Multidistrict Litigation, which transferred these cases to this Court "for coordinated or consolidated pretrial proceedings" in order to "reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions and selectively remand cases for trial including," *See* Dkt. #1, Plaintiffs' proposals regarding remand for trial presuppose this Court's continuing jurisdiction over all pretrial matters and proceedings, unless specifically otherwise stated.

**I.     Remaining Track One Litigation**

    **A.     Case Track 1B (CT1B): Summit County and Cuyahoga County – claims against Pharmacy Distributors and Dispensers**

On October 21, 2019, this Court created CT1B, for the claims of Cuyahoga and Summit Counties against any remaining defendants, stating the track would be governed by a new discovery

---

[1] In an effort to diminish the remaining areas of disagreement regarding potential remands, Plaintiffs' proposal to remand cases filed by the City of Cincinnati and Hamilton County to the Southern District of Ohio (CT5 ) has been deleted.

2

schedule and trial date. *See* Dkt. # 2863 and 2868. On October 29, 2019, Plaintiffs Cuyahoga and Summit Counties both moved for leave to submit Amendments by Interlineation to their Third Amended Complaints to add factual allegations limited to dispensing activities of certain Pharmacy Defendants and to add as Defendants certain entities related to the existing Defendants. *See* Dkt. # 2880. No new Defendant families were added and no additional changes were made to the factual allegations or legal claims asserted in the Complaint.

Plaintiffs seek to proceed with CT1B, before this Court, on the following basis.

**Plaintiffs**: Cuyahoga County, Ohio and Summit County, Ohio.

**Defendants for Trial**: Plaintiffs seek to proceed to trial against the following Defendants, all of which self-distributed and dispensed prescription opioids into the Plaintiff counties:

1. <u>CVS Entities</u> (CVS Indiana L.L.C., CVS Rx Services, Inc., and proposed additional related entities CVS Pharmacy, Inc., and Ohio CVS Stores, LLC);

2. <u>Rite Aid Entities</u> (Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center, Inc. and proposed additional related entities Rite Aid Corporation, Rite Aid Headquarters Corporation, and Rite Aid of Ohio, Inc.);

3. <u>Walgreens Entities</u> (Walgreen Co. and Walgreen Eastern Co.);

4. <u>HBC Entities</u> (HBC Service Company and proposed additional related entity Giant Eagle, Inc.); and

5. <u>Discount Drug Mart</u>.

**Claims for Trial:** Plaintiffs propose to sever all but their public nuisance and conspiracy claims and proceed to trial against the Defendants identified above on those two claims, for abatement and any such other relief as the court may deem appropriate.

**Status of Discovery:**

<u>Defendants</u>: Only limited additional factual discovery of these Defendants is necessary to proceed to trial. On October 29, 2019, Plaintiffs propounded additional written discovery against the remaining Defendants limited to Defendants' dispensing activities in conjunction with Plaintiffs' proposed amendments to the Complaint.

3

<u>Plaintiffs</u>:  Plaintiffs are aware of no information from Summit and Cuyahoga Counties that would be relevant to Plaintiffs' new allegations that has not already been provided to Defendants in discovery.  The proposed CT1B Defendants participated fully in previous discovery of the Plaintiffs.

<u>Expert Discovery</u>: Additional expert discovery would be limited to matters related specifically to Defendants' dispensing activities.  As a result, Plaintiffs believe that only a very limited number of new experts would be required for all parties.

**Motion Practice:**  Additional motions to dismiss are neither necessary nor appropriate in this context.  Plaintiffs' proposed amendments include new factual allegations that do not alter the Court's legal analysis on either the public nuisance or conspiracy claims.  Consequently, an additional round of motions to dismiss would be superfluous.

Plaintiffs do not suggest that the additional bases for liability asserted in the new allegations should not be tested prior to trial.  Instead, Plaintiffs contend that motions for summary judgment provide the appropriate vehicle.  Such an approach would be particularly efficient given that, while the Court has ruled on and denied summary judgment with respect to many proposed CT1B Trial Defendants and distribution related claims, some of the remaining Defendants were severed before the Court had an opportunity to rule on their motions for summary judgment.

Accordingly, Plaintiffs propose that the Court permit each defendant family 10 pages in which to assert any additional bases for summary judgment arising from Plaintiffs' new allegations and, once briefing is complete, rule upon the existing and supplemental motions for summary judgment.  Given that the CT1B defendants have already submitted nearly 300 pages of briefing through the previously filed motions to dismiss and motions for summary judgment,[2] 50 additional pages for this one additional factual basis for liability should be more than adequate.

---

[2] As the Court is well aware, a wide array of legal issues were already been briefed and virtually all were decided at the Motions to Dismiss and Summary Judgment stages of this litigation.  As part of that process, the CT1b defendants submitted or joined in briefs under the following docket numbers: Distributors' Motion to Dismiss (MTD) (Dkt.# 491) and Reply (Dkt.#744); Chain Pharmacies MTD (Dkt. # 497) and Reply (Dkt. # 742); Pharmacies Motion for Summary Judgment (MSJ) regarding causation (Dkt#1774) and Reply (Dkt# 2504); regarding concerted action (Dkt. #1716) and Reply (Dkt. #2513); regarding Statute of limitations (Dkt#1703) and Reply (Dkt# 2526); regarding preemptions (Dkt# 1772) and Reply (Dkt# 2503); CVS  MSJ (Dkt# 1756); and Reply (Dkt# 2527); DDM MSJ (Dkt# 1757) and Reply (Dkt# 2508); HBC (Dkt# 1759) and Reply (Dkt# 2505); Rite Aid MSJ (Dkt# 1779) and Reply (Dkt# 2505); and Walgreens MSJ (Dkt# 1764) and Reply (Dkt# 2506).

4

Even if there were a legal argument to be made regarding the viability of dispensing claims that was appropriate for Rule 12 treatment, the posture of the litigation militates against delaying trial to add that round of briefing here. While motions to dismiss serve an important function early in the litigation to resolve claims and dismiss defendants to avoid protracted litigation where no viable claims exist, this Court has already ruled on scores of Rule 12 and Rule 56 motions in this case and found that Plaintiffs have asserted viable public nuisance and conspiracy claims. In this situation, any legal issue that is tied up with the factual allegations Plaintiffs assert regarding Defendants' dispensing activities will be resolved more quickly at the Rule 56 stage if the parties are not delayed by additional briefing on Rule 12 motions.

**Proposed Schedule**: In light of the above, Plaintiffs propose that CT1B be set for trial in early 2020.

### B.  Case Track 1C (CT1C): City of Cleveland and City of Akron, Ohio – claims against AmerisourceBergen, Cardinal, and McKesson

Plaintiffs propose that the claims of the City of Cleveland and City of Akron be set as Track 1C to be heard by this Court.

Cleveland and Akron propose to sever the claims against Defendants AmerisourceBergen, Cardinal, and McKesson and to proceed to trial against only those defendants on a public nuisance and RICO/Ohio RICO only basis.

Setting early trial dates furthers the parties' collective interest in resolving the litigation. Because these Defendants were included in the recently resolved CT1A trial, Plaintiffs are prepared to proceed against this Defendants now, without additional discovery or motion practice. With respect to discovery of the Plaintiffs, Plaintiffs have answered all discovery requests Defendants have propounded, including providing more than 700 pages of interrogatory responses *since* the severance order was entered. Plaintiffs have also provided every witnesses defendants have sought to depose thus far.[3] Defendants, however, contend that because Cleveland experienced some difficulty in

---

[3] Because a few custodians produced documents after their original depositions, Plaintiffs expect that Defendants will reopen a few additional depositions of Cleveland employees.

meeting the substantial discovery demands of this case 9 months ago, this Court should not believe it when it claims to have satisfied its discovery obligations now.  To assuage that concern, Cleveland retained an IT expert to oversee the re-collection of its documents and validate the process.  Plaintiffs provided a declaration from that expert to the Court and the parties by email on Monday, November 11, 2019, to provide independent verification of the productions provided.   Consequently, fact discovery in the 1C case is virtually complete, and so the case may proceed to trial quickly.

Defendants have pointed out that this Court's February 25, 2019 Order Regarding Track One Trial Plaintiffs (Doc. #:  1392) (the Cleveland/Akron Severance Order) indicated that the Cleveland and Akron cases would not proceed until after a CT1 and CT2 trials had occurred.  However, given the changed circumstances of this massively complex litigation, this Court should not be hamstrung by its previous case management efforts.  Since no Track One trial occurred and the Track Two case has not advanced, the reasons for setting the cities' trial after conclusion of the CT2 trial(s) (*see* Dkt. 1392) no longer apply.  Accordingly, Plaintiffs propose that the CT1C track, that is the City of Cleveland and City of Akron case, proceed to trial as quickly as the Court deems appropriate.

## II.     Track Two Litigation

### A.     Case Track 2A (CT2A): Cabell County and City of Huntington – claims against AmerisourceBergen, Cardinal, and McKesson

In CMO1, this Court selected Cabell County as one of the plaintiffs in the second wave of cases chosen for briefing on threshold legal issues.  Accordingly, motions to dismiss addressed to Cabell County's Second Amended Complaint ("SAC") were filed in April 2018; briefing on these motions was completed on July 30, 2018.  (*See* Dkt. # 575, 727, and 818).  The motions remain *sub judice*.  Thereafter, on December 31, 2018, the Court selected Cabell County and the City of Huntington as Track Two Plaintiffs ("CT2").  By order dated May 12, 2019, this Court directed the CT2 Plaintiffs to "amend their complaints (if needed) no later than June 10, 2019."  (Dkt. #1633).  The deadline was subsequently extended and, on June 28, 2019, the CT2 Plaintiffs filed their Joint and Third Amended Complaint ("TAC") under seal with permission of the Court.  (Dkt. # 1682.)  A public, corrected version of the TAC was filed on September 16, 2019.  (Dkt. # 2613.)

Although the TAC, which is now the operative complaint for both Cabell County and the City of Huntington, adds additional categories of defendants not included in previous iterations of Plaintiffs' complaints, with respect to AmerisourceBergen, Cardinal Health, and McKesson the TAC merely adds additional factual basis for existing allegations and claims. No additional allegations or legal bases for liability were asserted in the TAC against the defendants.

All three of these defendants were subject to extensive discovery in CT1A. Because discovery against AmerisourceBergen, Cardinal Health, and McKesson is significantly advanced, Plaintiffs propose to proceed to trial in early 2020 against those three Defendants. Discovery against the remaining defendants would then be able to proceed on a parallel track for subsequent remand and trial.

Accordingly, Plaintiffs seek to proceed with CT2A on the following basis.

**Plaintiffs**: Cabell County, West Virginia and City of Huntington, West Virginia.

**Defendants for Trial**: AmerisourceBergen, Cardinal Health, and McKesson.

**Claims for Trial**: Plaintiffs propose to sever all but their public nuisance claim and to proceed to trial on a public nuisance theory of liability against the Defendants set out above.

**Status of Discovery:**

Defendants: Only limited additional factual discovery of these Defendants is necessary to proceed to trial on liability. Plaintiffs have already served liability-related discovery. A parallel discovery track for abatement will likewise begin and a remedial trial can be set following a determination of liability.

Plaintiffs: The Distributor Defendants, including AmerisourceBergen, Cardinal Health, and McKesson, propounded their first set of discovery requests to Plaintiffs on October 25, 2019. Plaintiffs are already in the process of reviewing and preparing a first wave of document production in response to those requests.

Given that discovery issues in both CT2 cases will likely duplicate or and/or be informed by, issues raised in CT1, Plaintiffs suggest that there will be greater efficiency in having this Court oversee the limited common issues discovery needed for these defendant prior to remand.

7

**Motion Practice:** Additional motions to dismiss are neither necessary nor appropriate. With respect to the proposed CT2A Defendants, the Plaintiffs' TAC does not raise new claims or bases for liability, but merely supplements the factual allegations against these Defendants. These allegations do not alter the Court's legal analysis on the public nuisance claims. As noted, briefing on Motions to Dismiss with respect to Cabell County's public nuisance claims against these Defendants has been complete and pending decision since July 30, 2018,[4] and these questions are ripe for decision by this Court. Consequently, an additional round of motions to dismiss would be superfluous.

Plaintiffs submit that these already briefed motions to dismiss, as well as the simultaneously briefed *res judicata* motion filed by Defendant Cardinal Health, which have also been fully briefed and pending since July 30, 2018, (*see* Dkt. # 579, 728, and 819), should be promptly decided by this Court. Plaintiffs further propose that this Court decide dispositive and *Daubert* motions at the appropriate time, and that the case not be remanded until those motions have been decided.

**Proposed Schedule**: Plaintiffs propose that, once the Court has ruled on the pending Motions to Dismiss, and the pending *res judicata* motion, and the parties have completed discovery on the common issues related to these Defendants, and the Court has ruled on any additional dispositive motions, the Court should sever Plaintiffs' public nuisance claims against Cardinal, McKesson, and AmerisourceBergen pursuant to Rule 42 and then submit a suggestion of remand to the Judicial Panel on Multidistrict Litigation seeking transfer of these three defendants to the appropriate West Virginia federal court for trial as soon as is practicable.

> **B.** **Case Track 2B (CT2B): Cabell County and City of Huntington – claims against remaining Defendants**

For the remaining defendants pending in the CT2 action, Plaintiffs propose that this Court decide any remaining or new motions to dismiss arising from Plaintiffs dispensing allegations and that discovery should proceed in this Court, with a more detailed schedule to be developed later.

---

[4] The City of Huntington's claims do not present any distinct legal basis for separate motion to dismiss briefing. The parties have continued to submit relevant supplemental authority to this Court for consideration.

### III. "Hub and Spoke" Remands

On September 26, 2019, this Court held a hearing to discuss various structural options to apply to the next phase of this multidistrict litigation. The Court requested that the parties identify individuals to address this question with Special Master McGovern.

The Selective Remand Working Group ("SRWG") has convened on three occasions during which time Special Master McGovern has requested that the parties provide proposals for which cases might be appropriately remanded to their transferor courts.

Because this Court entered orders regarding CT1 and CT2 months before the September 26, 2019 hearing and before the SRWG was constituted, (see Dkt #s 232 and 1218), these cases are outside of the scope of Plaintiffs' Hub and Spoke proposals. With respect to additional case tracks and remands, Plaintiffs propose the following:

#### A. Case Track 3 (CT3): City of Chicago – Manufacturer Case

Plaintiffs propose remand of the City of Chicago's case against Manufacturers (Case No. 1:17-op-45169) as CT3. The City of Chicago Manufacturer case is unusual in the sense that motions to dismiss were largely decided and discovery had begun before the case was transferred to the MDL. In addition, the City of Chicago proposes to narrow its claims to those arising from three local ordinances, which can be tried most efficiently in the District Court for the Northern District of Illinois. Plaintiffs propose that this Court permit a brief period to amend the complaint to add allegations regarding the Manufacturer Defendants' compliance with legal obligations relating to the distribution of controlled substances (that already were the subject of this Court's summary judgment order), add entities or allegations related to existing Defendants' foreign entities (again, already considered in this Court's order on personal jurisdiction), streamline the claims and resolve the few, discrete legal issues involving these claims and defendants on motions to dismiss, and oversee a brief period of discovery narrowly focused on the Chicago statutory claims and defenses Plaintiffs seek to pursue at trial to allow the cases to be remanded ready for dispositive motions and trial.[5]

---

[5] As would have been the case in CT1A, the remand Court can make a final determination on personal jurisdiction concurrent with or after the trial.

9

### B. Case Track 4 (CT4): City and County of San Francisco

Plaintiffs propose that the Court remand the case filed by the City and County of San Francisco (Case No. 1:19-op-45022) as CT4.  This selection brings geographic diversity as well as the perspective of a large city and county with a significantly different but broad impact caused by opioid crisis.  No briefing and no discovery has occurred in these cases.

### C. Tribal Case Track: Cherokee Nation.

Given that the Court has indicated that it is inclined to remand only a single Tribal Case, in keeping with Plaintiffs' original Position Statement the PEC and the Tribal Committee propose remand of the case filed by the Cherokee Nation (Oklahoma) (Case No. 1:18-op-45695).

The Cherokee Nation is the largest Indian Tribe in the United States in terms of population, encompasses some or all of 14 Oklahoma counties in its Tribal lands, operates the largest healthcare system of any Indian Tribe, and provides healthcare to all Cherokee citizens nationwide, from birth until death, through Tribally-operated and Tribally-funded hospitals and clinics.  The Cherokee Nation was the first Indian Tribe to file a complaint in the opioid litigation and was one of the first opioid cases nationwide filed against both distributors and retail pharmacies for their dispensing activities. There are only six "defendant families" in the case, which are the three largest distributors (McKesson, AmerisourceBergen, and Cardinal) and the three largest dispensers (Walgreens, CVS, and Rite-Aid, which are also self-distributors) operating in Cherokee Nation.  Because the number of defendants and claims in the Cherokee Nation's case is limited, there is no need to sever Defendants in order to render the case manageable.  Indeed, this is fewer defendants than were to appear in the Track 1A trial.

The Cherokee Nation's complaint is also representative of most tribal complaints, which asserted similar or identical claims against both distributors and retailers.  If the Court intends to remand only one tribal case, allowing the tribe to litigate against the defendants under both major theories of liability—i.e., distributor liability and dispensing liability—would be most consistent with the goal of helping the parties better understand the potential strengths and weaknesses of their claims

and defenses at trial. Additionally, the Cherokee Nation has the resources to manage discovery and present a full array of damages and abatement remedies.

Oklahoma is the appropriate jurisdiction to accomplish this goal because the Court has already analyzed hundreds of pages of briefing and ruled on all the threshold legal issues under Oklahoma law (in Motions to Dismiss in the *Muscogee (Creek) Nation* case). *See* Dkt. # 1680. The defendants claim this Court's previous rulings on Oklahoma law should factor *against* remanding the *Cherokee Nation* case. *See* Tr. 35 (arguing the goal in selecting a tribal case should be "trying to explore the laws of other jurisdictions" beyond Oklahoma). This claim should be rejected. First, it is an advantage—not a disadvantage—that the Cherokee Nation's complaint has properly pled claims for relief under Oklahoma law. The Court's prior rulings on Oklahoma law will serve as law of the case. Remanding a case that could be dismissed on the pleadings would not help achieve the overarching purposes of the hub and spoke strategy. Second, over the past two years there have been numerous rulings on motions to dismiss from courts in many different state jurisdictions (which have mostly denied dismissal). Therefore, threshold legal issues have been widely "explored" already. The purpose of remanding a tribal case for a trial setting is *not* to obtain further legal rulings on motions to dismiss, but for both sides to assess the facts of their cases and potential damages awards through discovery and trial.

Finally, case-specific discovery will be manageable, and it will be generally representative of discovery that would occur in other tribal cases. Contrary to defendants' claims, discovery in the *Cherokee Nation* case will *not* "involve discovery of 14 different counties in Oklahoma, 50 different law enforcement agencies in Oklahoma." Tr. 34. As a federally-recognized Indian Tribe, the Cherokee Nation operates as a sovereign entity much like a state. As the Court correctly recognized at the hearing, "the Cherokee Nation is bringing the case and seeking damages on its own behalf. . . . [i]t wouldn't be through any county or county facilities"—because tribes themselves "provide healthcare and services." Tr. 34. In short, it is irrelevant that the Cherokee Nation's tribal jurisdictional area overlaps or partially overlaps with multiple counties (much like many other tribes' reservations).

For these reasons, the PEC and the Tribal Committee contend that the immediate remand of the Cherokee Nation will advance the interests of all Tribes with cases pending in the MDL and advance the Court's efforts to advance this litigation to resolution.  As requested in Plaintiffs' original position statement, if the Court elects to transfer more than one tribal case, the Court should also remand Fond du Lac Band of Lake Superior Chippewa to the District of Minnesota.

**IV.     Pending Motions to Dismiss**

The Court has also sought Plaintiffs' position with respect to the remaining pending motions to dismiss.  Motions to dismiss have been fully briefed, but not decided, in the City of Chicago case against manufacturers (17-op-45169), the City of Chicago case against distributors (17-op-45281), and the cases brought by Cabell County, WV (17-op-45053), Monroe County, MI (18-op-4515), Broward County, FL (18-op-45332), West Boca Medical Center (18-op-45530), and Cleveland Bakers (18-op-45432).  Given the Court's limited resources, Plaintiffs favor focusing the Court's attention on the Cabell and Chicago manufacturer case motions (and, for Chicago, only on those issues that would be required for trial) and the trials identified above for the time being.  Additionally, Plaintiffs recognize that West Boca Medical Center has requested, on behalf of the hospital plaintiffs, that the Court decide the fully briefed motion to dismiss in its case.  *See* Dkt. # 2892.  While the Plaintiffs do not believe the goals of the MDL are best served by devoting resources to decisions on the other pending motions at this time, those motions are not moot and Plaintiffs propose that they remain pending at this time.

Dated:  November 13, 2019                                             Respectfully submitted,

*/s/ Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.

12

Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Plaintiffs' Co-Lead Counsel*

Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of November 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

                                              s/Peter H. Weinberger
                                              Peter H. Weinberger
                                              Plaintiffs' Liaison Counsel