# EXHIBIT 1

# KOBRE & KIM

201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
www.kobrekim.com
Tel +1 305 967 6100

September 27, 2019

David R. Cohen
24400 Chagrin Blvd.
Suite 300
Cleveland, OH  44122

Re:   MDL 2804 – PBM Defendants' Submission Regarding Geographic And Temporal Scope Of Track 2 Discovery

Dear Special Master Cohen:

We write on behalf of the PBM Defendants in Track Two (Caremark, Express Scripts, and OptumRx) to respond to Plaintiffs' emails on the temporal and geographic scope of discovery.[1] We incorporate by reference the Distributor and Pharmacy Defendants' submission to the extent relevant to PBMs and write separately to address additional points unique to PBMs.

**1.  No court has decided whether claims against PBMs have a legal basis. There is no legal basis for the claims.**

Neither this Court nor any other court has decided whether legal claims against PBMs for opioid-related harms are viable. The claims are different in kind from the claims against other classes of defendants. PBMs do not manufacture, distribute, market, prescribe, or make coverage decisions about opioids. Plaintiffs sue the PBMs for their role in administering plans and processing claims for employee benefit plans, health plans, unions and trusts, and government-sponsored plans under arm's-length contracts. Joint and Third Amended Complaint ¶ 1135. That claim is both novel and untenable: There is no link between the harm that Plaintiffs claim—increased costs for municipal services—and a PBM's administering claims for prescription drugs under prescription drug lists (formularies) that third parties select.  For those reasons, discovery against the PBMs should not begin until they have an opportunity to litigate motions to dismiss.

At a minimum, in light of the meeting with the Court and Special Masters yesterday and the resulting decision to create a working group for determining how the MDL should proceed after the Track One Trial, Track Two discovery should not begin until (1) the Court approves a

---

[1] The PBM Defendants make this submission because the Special Master indicated by email dated September 17, 2019 that such submissions must be made now. The PBM Defendants do not concede jurisdiction and do not waive their right to challenge jurisdiction, which would render moot any consideration of discovery, once the Court sets a deadline to respond to the Complaint.

Americas (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
Asia-Pacific (Hong Kong, Seoul, Shanghai), EMEA (London, Tel Aviv), Offshore (BVI, Cayman Islands)

Kobre & Kim refers to Kobre & Kim llp, a New York Limited Liability Partnership.

David R. Cohen
September 27, 2019
Page 2

process for determining which cases will proceed next, where they will proceed, and which parties will be involved and (2) completes that process.

In any case, the claims against the PBMs should not move forward until the PBMs have an opportunity to litigate motions to dismiss.

**2.    The Track Two Plaintiffs have not served discovery on the PBMs. When they do, it will (or at least should) differ in kind from the Track One discovery.**

The PBMs are also situated differently from other defendants when it comes to discovery. The claims against the PBMs implicate discovery issues that the Court has not considered.

Plaintiffs' claims against the PBMs focus on the structure and administration of a handful of "prescription drug plans" rather than on the volume of pills distributed to and dispensed from particular pharmacies in Cabell County and Huntington. Complaint ¶¶ 1135, 1143. For many reasons, the claims against the PBMs shouldn't survive the pleading stage, but in any event, discovery from the PBMs would need to be built around the particular plans that Plaintiffs contend harmed Cabell County. That is different from the discovery already completed in the MDL, which involved data about manufacturing, marketing and distribution.

If any claim against a PBM survives the motion to dismiss stage, discovery thereafter should be tailored to the elements of that claim, which would likely involve discovery into the particular "prescription drug plans" that plaintiffs claim harmed Cabell County and Huntington and the PBM's contractual relationships, if any, with the local plan sponsors who set the terms of those plans. As it stands, the Track Two Plaintiffs mention only one health plan in their Complaint. *See* Complaint ¶ 1144 (the West Virginia state employee health plan in 2001). Accordingly, it is impossible to know what discovery Plaintiffs will seek from the PBMs, let alone the temporal, geographic, or other limitations that should apply to them.

But even that discussion is premature: The Track Two Plaintiffs have not yet served discovery, so the parties have not met and conferred about any live discovery requests. The PBMs are entitled to know what discovery the Track Two Plaintiffs seek before responding more fully. And this Court should not make discovery rulings based on emails that do not qualify as discovery requests under the Federal Rules. For that reason alone, this Court should deny Plaintiffs' email requests. *See Marsden v. Nationwide Biweekly Admin., Inc.*, No. 14-cv-399, 2016 WL 471364, at *1 (S.D. Ohio 2016) ("In determining the proper scope of discovery, a district court balances a party's right to discovery with the need to prevent fishing expeditions.") (internal quotation marks omitted); *Waters v. Drake*, 222 F. Supp. 3d 582, 605 (S.D. Ohio 2016) ("Amended Rule 26(b) brings an end to the days of nearly unlimited discovery and encourages judges to be more aggressive in identifying and discouraging discovery overuse.").

David R. Cohen
September 27, 2019
Page 3

**3. When it comes to the PBMs, Plaintiffs have not demonstrated that they are entitled to the expansive discovery that they hint at (but have not served).**

As discussed above, no discovery should happen before a court resolves the PBMs' motions to dismiss. And this Court should not decide scope issues for discovery requests that Plaintiffs have not even served. Regardless, Plaintiffs have not demonstrated that they are entitled to the PBM discovery hinted at in their emails-sweeping discovery (both in timeframe and geography) that on its face is improper.

*Geographic Scope*

Plaintiffs seek to expand the geographic scope of discovery to include not just the whole state of West Virginia but also Kentucky, Ohio, and possibly Florida. That request is unreasonable by any standard: Plaintiffs' claims relate to a single county in West Virginia—Cabell County—and Huntington, its city center. *See* Dkt. No. 762 at 2-4. Plaintiffs' claims are premised on alleged effects in Cabell County, so discovery should focus on Cabell County. The PBMs administer prescription drug claims in accordance with the benefits plans offered by employers, government entities, health plans, unions, and trusts. They also offer for their clients' consideration customizable prescription drug lists (formularies) that clients may adopt, not adopt, or alter to meet their members' needs. Plaintiffs do not -- and cannot -- explain why their "migration theory" is relevant to the claims against the PBMs and never offer any justification for seeking PBM discovery covering four states. *See Kline v. Mortg. Elec. Sec. Sys.*, No. 08-cv-408, 2014 WL 4928984, at **7-8 (S.D. Ohio Oct. 1, 2014) (defendants properly limited discovery responses to Ohio when the claims implicated only an Ohio class); *Telerico v. Merrill Lynch, Pierce, Fenner & Smith*, No. 08-cv-1680, 2009 WL 10719832, at *2 (N.D. Ohio Jan. 12, 2009) (lack of a geographic restriction rendered discovery requests "entirely overbroad"); *Thornton v. State Farm Mut. Auto Ins. Co., Inc.*, No. 06-cv-00018, 2006 WL 3499986, at *3 (N.D. Ohio Dec. 5, 2006) (limiting the geographic scope of discovery request to appropriate geographic region). Expansive discovery from four states on claims by one West Virginia county is disproportionate, unduly burdensome, and far outweighs any benefit to Plaintiffs. *See Marsden*, 2016 WL 471364 (noting that "proportionality" is a "central part" of making any determination regarding the scope of discovery) (citations omitted). And Plaintiffs' single justification for expanding discovery to neighboring states to test their "migration theory" does not apply to the PBMs' administration of claims pursuant to contracts with local plan sponsors. There is no basis for expanding the geographical scope of discovery from the PBMs.

*Temporal Scope*

The same reasoning applies to Plaintiffs' attempt to expand discovery back to 1996. As recognized in Discovery Ruling No. 2 in Track 1, "the earlier the cut-off date for document production, the more burdensome is the discovery request on defendants, and potentially the less

David R. Cohen
September 27, 2019
Page 4

relevant." Dkt. No. 693 at 8. For example, recognizing the need to balance relevance and need against burden, Special Master Cohen found in Discovery Ruling No. 2 that pre-2006 discovery from certain defendants should be limited to specific, narrow categories of documents (*id.* at 10)—a ruling upheld after multiple requests for reconsideration. *See* Dkt. No. 762; September 30, 2018 Ruling on Plaintiffs' Request for Reconsideration. Plaintiffs' sole basis for seeking discovery back to 1996—that one distributor defendant allegedly opened the door to broader discovery by arguing that its Suspicious Order Monitoring Systems were developed in response to early DEA guidance—has nothing to do with the PBMs. Even assuming that one distributor's DEA defense is at issue in CT2, it should have no bearing on discovery from the PBMs.

There is more. As the Court recognized in Discovery Ruling No. 2, the overwhelming burden associated with attempting to collect documents all the way back to 1996 far outweighs any countervailing discovery concerns about relevance and need. (*See* Dkt. No. 693 at 10.) A 1996 cut-off is more likely to lead to burdensome searches for documents that no longer exist rather than relevant discovery. It will also lead to unnecessary sunk costs. *See Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 12-cv-893, 2013 WL 12139452, at *3 (N.D. Ohio Apr. 5, 2013) (11-year period for document requests was overly broad and unduly burdensome); *Telerico*, 2009 WL 10719832, at *3 (document request seeking information "covering 40 countries and dating back numerous decades" was unduly burdensome and unlikely to lead to relevant evidence); *Thornton*, 2006 WL 3499986 (limiting discovery requests to reasonable timeframe).

For all the reasons set out above, the Court should deny Plaintiffs' email requests (which are not proper discovery requests).

Respectfully submitted,

*adriana [signature]*

Adriana Riviere-Badell
+1 305-967-6117