# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | **MDL No. 2804** |
| | **Case No. 17-md-2804** |
| *This document relates to:* | **Judge Dan Aaron Polster** |
| Track One Cases | |

### PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND

The Pharmacy Defendants base their Opposition to Plaintiffs' Motion for Leave to Amend on a deliberate misconstruction of the nature of these MDL proceedings, an incomplete history of the shape of the Trial Track 1[A] proceedings, and an incorrect interpretation of the governing legal standards. Their arguments are not well taken, and leave to amend should be granted.

**A.     Defendants' Opposition Ignores that This is an MDL Bellwether Proceeding and a New Case Track**

As a threshold matter, Defendants' arguments in opposition fail to take into account that this is a complex multidistrict litigation and that the proposed amendment concerns a new case track. This Court's severance of claims against Pharmacy Distributors and establishment of the CT1-B track is entirely consistent with the role intended by the JPML. *See* Transfer Order, Dkt. #1 (recommending that the transferee judge "establish different tracks for the different types of parties or claims.") *See also* Fed. R. Civ. P. 21 ("The Court may also sever any claim against a party.").[1]

---

[1] "Courts treat severed claims as if the plaintiff had originally filed two separate lawsuits." *Kitchen v. Heyns*, 802 F.3d 873, 875 (6th Cir. 2015). The "permissive language of Rule 21 permits the district court broad discretion in determining whether or not actions should be severed." *Johnson v. Advanced Bionics, LLC*, 2011 U.S. Dist. LEXIS 36289, at *20 (W.D. Tenn. Apr. 4, 2011).

The fact that some of the Defendants and some of the claims were initially part of a previously set case track, or subject to an earlier CMO, should not prevent this Court from effectively managing the consolidated litigation. *See In re Generic Pharm. Pricing Antitrust Litig.*, 315 F. Supp. 3d 848, 855 (E.D. Pa. 2018) ("The purpose of the Electronic Case Management Orders is to facilitate the efficient management of the MDL, not to dictate the course of the litigation…. [Courts should have] no hesitation in making structural adjustments as the needs of the MDL evolve."). *See also Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 431–32 (5th Cir. 2013) (recognizing a court's "managerial power is especially strong and flexible in matters of consolidation" and "enable the judge to exercise extensive supervision and control of litigation," with particularly broad latitude granted in "exceedingly complex matter[s]," with hundreds of individual cases and thousands of claimants.).

There is no dispute that dispensing allegations against these Defendants have long been part of the MDL proceedings in front of this Court. As discussed below, dispensing allegations against these Defendants were raised in these Plaintiffs' existing complaints. Plaintiffs' proposed amendment merely serves to bring into this already developed proceeding supplemental dispensing related allegations that are already before this Court in other actions in this MDL (*see, e.g.*, Cabell County Commission and City of Huntington West Virginia, Joint and Third Amended Complaint, Dkt. # 2613) so that this Court may address the dispensing issues in a more expeditious manner. Furthermore, the Pharmacy Defendant Walgreens' actions leading up to the previously scheduled CT1-A trial, such as including numerous pharmacy witnesses on its witness list, made it clear that dispensing-related issues would play a significant role in the Pharmacy Defendants' defense of the Plaintiffs' distribution-related claims, making inclusion of dispensing issues before such claims are tried even more appropriate.

Permitting amendment in the already established CT1-B track, where development of and discovery regarding all other issues has substantially been completed, such that remaining discovery

and briefing efforts can focus almost exclusively on the dispensing issues, provides the most efficient means to quickly address dispensing claims for the benefit of the entire national litigation.

**B.      While Distributor and Manufacturer Claims were Prioritized in CT1-A, Plaintiffs have Always Sought to Pursue Dispensing Claims against These Defendants**

Plaintiffs' May 2018 Complaints have always included dispensing allegations, and Plaintiffs have long sought dispensing related discovery, though such claims and issues were not prioritized by the first trial track.

Case Management Order 1 ("CMO 1"), which established the "Track One" case "litigation track" and contained the original deadline to amend pleadings, expressly contemplated a case limited to distribution and manufacturer claims. *See, e.g.,* Dkt. 232 at ¶ 9(k)(ii) (requiring production of documents related to "marketing or distribution of opioids"). *See also* Dkt. # 1055, Discovery Ruling 8, confirming that the Court and the parties intended the initial Track One "trial track" proceedings to be limited to distribution and manufacturing issues).

Plaintiffs did not choose to eliminate dispensing issues from CT1-A.  Rather, as Defendants have admitted, Plaintiffs sought to include dispensing issues in the initial litigation track but were precluded from doing so. *See* Exhibit A., Oct. 12, 2018 Letter from Rite Aid to SM Cohen at p. 3 (admitting "Plaintiffs unsuccessfully sought to include obligations on Defendants related to dispensing information in CMO 1" and arguing, on that basis, dispensing discovery should continue to be precluded in the CT1[A] trial track.).

Despite the prioritization of distribution and manufacturing claims in CT1-A, this Court specifically found Plaintiffs' May 2018 amended complaints raised dispensing claims.  *See* Oct. 5, 2018 Report and Recommendation (Dkt. 1025) at p. 78 ("*Plaintiffs have stated a plausible claim* that it was reasonably foreseeable that they would be forced to bear the public costs of increased harm from the over-prescription and oversupply of opioids in their communities *if Defendants failed to implement and/or follow adequate controls in their* marketing, sales, distribution, *and dispensing* of opioids.") (emphasis added).

3

*See e.g.* Summit Corrected TAC at ¶¶ 607-659 (raising dispensing allegations); ¶ 174 ("all companies in the supply chain of a controlled substance are primarily responsible for ensuring that such drugs are only distributed *and dispensed* to appropriate patients and not diverted") (emphasis added).  Indeed, the Pharmacy Defendants admitted that Plaintiffs' operative complaints "include… allegations about the Pharmacy Defendants' role in filling prescriptions as dispensing pharmacies," (*see* Pharmacy Defendants' Objections to the R&R (Dkt. # 1078) at 2) and accordingly asked this Court to "dismiss any claims that purposed to be directed at dispensing activities." *Id.*  This Court, however, did not dismiss such claims, but instead noted that the Plaintiffs had "disclaimed any cause of action against Retail Pharmacies in their capacity as retailers or dispensers of opioids" for purposes of the CT1-A trial track, such that the Retail Pharmacies at the CT1-A trial "may only be held liable as distributors."

Both Plaintiffs and this Court have consistently made it clear to Defendants that Plaintiffs' dispensing claims were merely being deferred and would be reinstituted at a subsequent stage in the litigation.  For example, in Plaintiffs' October 10, 2018 objections to Discovery Ruling 5, Plaintiffs confirmed that they were only "disclaiming" retail dispensing based claims "at this stage of the case, based on discovery so far available." *See* Ltr. at p. 16, n.10.  Similarly, in Discovery Ruling 8, which precluded Plaintiffs from obtaining certain dispensing related discovery, the Special Master emphasized the ruling was "entered at this particular juncture within the span of the MDL" but that the discovery "may well" be ordered at a later step in the litigation, such that Defendants "have an obligation to *preserve*" the requested dispensing discovery. Dkt. # 1055 at 5.

Defendants have also long been on notice that their related entities relevant to dispensing were included in the Plaintiffs' actions.  The Plaintiffs' May 2018 complaints broadly define the Defendants to include Defendants' dispensing-related entities: "Defendants include the above referenced entities as well as their predecessors, successors, affiliates, subsidiaries, partnerships and divisions to the extent that they are engaged in the manufacture, promotion, distribution, sale, *and/or dispensing* of opioids."

4

*See* Dkt. # 514 (Summit Corrected Second Amended Complaint), ¶ 128; Dkt. # 521, (Cuyahoga Corrected Second Amended Complaint), ¶ 96 (same) (emphasis added). *Accord* Plaintiffs Third Amended Complaints (Dkt. #s 1466 and 1631). The Court has emphasized this point in response to an argument that not all defendant-related entities were properly named in the Complaint, stating that respect to entities involved in the opioid business in the U.S., "anyone connected to the defendants, you are in this case." *See* Tr. of Discovery Conference Call at 26:11-21 (Nov. 7, 2019). Indeed, CMO 1 has always defined "Defendant Family" as "all corporate affiliates that are named as a Defendant in any action that is part of this MDL." *See* Dkt. # 232 at ¶9(l)(i).

Amendment of the Plaintiffs' claims to further expound on Plaintiffs' dispensing allegations and to more specifically name the dispensing related entities associated with the existing defendants provides opportunity to build on the work that has already been done, adding only a discrete, additional set of factual allegations that can be developed through reasonable document discovery, focused depositions, and expert reports. The amendments, though adding new conduct, do not add new counts, which already have been tested in dispositive motions.

## C.    Permitting Amendment is Proper Under Both Rule 15 and Rule 16 of the Federal Rules of Civil Procedure

Plaintiffs' proposed amendment satisfies both the inapplicable standards of Rule 16(b)(4) under which Defendants seek to proceed as well as the applicable liberal standards set by Rule 15(a)(2) – under which permission to amend should be "freely give[n].".

As a threshold matter, Rule 16(b)(4) is not applicable here because no operative scheduling order is in place with respect to these claims or defendants. When this Court created CT1-B to provide a trial track for the claims of Cuyahoga and Summit Counties against defendants including the Pharmacy Distributors, the Court stated the track would be governed by a new discovery schedule and trial date. *See* Dkt. # 2863 and 2868. The previous scheduling order, which concerned the CT1-

A trial track, is moot and does not govern the proposed amendment.  However, even if Rule 16(b)(4) were applicable, it would not preclude amendment here.

The considerations applicable to a determination of "good cause" for permitting amendment under Rule 16(b)(4) weigh in Plaintiffs' favor.

> When a scheduling order deadline has passed, "a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary,* 349 F.3d at 909. Factors for consideration in this analysis may include: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure the prejudice. 3 MOORE'S FEDERAL PRACTICE ¶ 16.14[1][a] (3d ed.2014).

*See York v. Lucas Cty., Ohio,* No. 3:13 CV 1335, 2015 WL 2384096, at *1–2 (N.D. Ohio May 19, 2015).

As show above, abundant good cause exists for Plaintiffs' amendment to more fully address the dispensing claims at this time.  *Cf. Salud Servs., Inc. v. Caterpillar, Inc.*, 67 F. Supp. 3d 663, 670-71 (D.N.J. 2014) (addressing concern that bellwether case provide "guidance as to the remainder of the MDL" as providing good cause for leave to amend). Similarly, none of the grounds for denial of leave to amend under Rule 15(a)(2), which include undue delay, prejudice to the opposing party, or repeated failure to cure deficiencies in the complaint, militate against granting leave to amend here. *See Foman v. Davis*, 371 U.S. 178 (1962).

The timing of Plaintiffs' amendment is not the result of undue delay.  The first trial track prioritized distributor and manufacturer specific issues. The focus of CT1-A was established and repeatedly confirmed by the Court.  Further amendment to address dispensing issues in the targeted and expedited context of CT1-A would not have been appropriate. Now that the distribution and manufacturing prongs of the litigation are significantly developed, the Court appropriately turns its attention to development of the related dispensing issues already raised by these Plaintiffs (and raised by Pharmacy Defendants in their defense of the distribution claims). Significantly, in *Foman*, the subject amendments were actually post-judgment, but leave to amend was still proper where "the

amendment would have done no more than state an alternative theory for recovery." *Id.* at 182 ("the purpose of pleading is to facilitate a proper decision on the merits"; it's not meant to be "a game of skill.") (internal quotation marks omitted).

To the extent any delay exists, without prejudice, "delay alone is not a sufficient reason for denying leave." *Moore v. City of Paducah*, 790 F.2d 557, 561–62 (6th Cir. 1986) (noting that a two-and-a-half-year delay, without prejudice, would not preclude amendment).

Here, no prejudice to the Pharmacy Defendants exists. These Defendants will be required to produce dispensing related documents, brief dispensing related questions of law, and in all other ways address the dispensing allegations against them in numerous other actions, both within and outside of this MDL. Cases cited by Defendants which concern a single docket, not an MDL bellwether, and which focus on providing "closure" to Defendants in the face of an existing trial date, are inapposite.

The fact that dispositive motion briefing has already occurred regarding some of the issues before concerning these Defendants does not prevent amendment from being granted. *See  Carte v. Loft Painting Co.*, No. 20- CV-178, 2010 WL 4105536, at *5 (S.D. Ohio Oct. 18, 2010) (the existence of previous summary judgment briefing and the need to brief additional issues constituted "little if any prejudice to Defendants," did not outweigh the Court's interest in "justice and a fundamental desire to resolve disputes on their merits," and did not preclude amendment of the complaint under either Rule 15(a)(2) or Rule 16(b)(4)). *See also Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 483–85 (6th Cir. 1973) (purported prejudice did not preclude amendment where claims in the amended complaint arose out of the same occurrence set forth in the original complaint, defendants were on notice of the facts upon which the amended complaint was based, and there was no showing that the necessary evidence was no longer available.)

Additionally, to the extent there were any prejudice, such prejudice is cured by the setting of a new discovery schedule and trial date. *See York*, 2015 WL 2384096, at *1–2 ("any prejudice to

Defendants was negated when the previously scheduled trial date was vacated."). Without a showing of incurable prejudice to Defendants, amendment should be permitted. *See Ziegler v. Aukerman*, 512 F.3d 777, 786–87 (6th Cir. 2008) ("To deny a motion to amend, a court must find '*at least some significant showing of prejudice to the opponent*.'") (quoting *Moore*) (emphasis in original).

The proposed amendment is important because these highly intertwined issues are already before this Court in both this action and in numerous other cases in the MDL. Because substantially all other aspects of the Track One claims are well developed, the parties and the Court will be able to focus their attention almost exclusively on the dispensing related matters in a way not possible in other actions before the MDL Court. The dispensing claims can be streamlined and moved to trial efficiently because the rest of the case is almost fully developed. Defendants' arguments about evidentiary issues attendant to further development of the dispensing claims actually support amendment, because the CT1-B track complaints present the most efficient way to quickly bring these issues before this Court in a centralized way that will benefit the entire MDL.

## CONCLUSION

For the reasons set forth in the above Reply and in Plaintiffs' Motion, this Court should grant Plaintiffs' Motion to Amend.


Dated: November 14, 2019                    Respectfully submitted,

                                            /s/ Paul J. Hanly, Jr.
                                            Paul J. Hanly, Jr.
                                            SIMMONS HANLY CONROY
                                            112 Madison Avenue, 7th Floor
                                            New York, NY 10016
                                            (212) 784-6400
                                            (212) 213-5949 (fax)
                                            phanly@simmonsfirm.com

                                            Joseph F. Rice
                                            MOTLEY RICE
                                            28 Bridgeside Blvd.

Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Plaintiffs' Co-Lead Counsel*

Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of November, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

s/Peter H. Weinberger
Peter H. Weinberger

9