<u>Initial disclosures</u>

1.      Dispensing data reflecting the dispensing of opioids and "cocktail drugs"[1] dispensed from all pharmacies from January 1, 1996, to the present. For each prescription, identify the drug name, prescription number, NDC number, date filled, quantity dispensed, dosage form, days' supply, MME, prescriber's name, prescriber's DEA number, dispensing pharmacist, quantity prescribed, number of refills authorized (if any), diagnostic code, method of payment, patient paid amount, and whether the prescription was covered by third party payers.

2.      Transactional data for each pharmacy with sufficient detail to determine by year: (a) the actual number of controlled substances dispensed and the actual number of non-controlled substances dispensed; (b) the ratio of controlled substances dispensed to non-controlled substances dispensed; and (c) the ratio of payments for opioid and "cocktail" prescriptions paid in cash to those paid by a third party payer.

3.      All *policies and procedures* and *training materials* in effect from 1996 forward regarding the proper dispensing of controlled substances and the identification, reporting, and dispensing of opioid prescriptions which were potentially suspicious or related to diversion and/or not issued for a legitimate medical purpose.

4.      All documents reflecting the systems, metrics, algorithms, and/or programs each defendant used to monitor and identify potentially suspicious prescriptions and/or dispensing patterns.

5.      All audits, reviews or other assessments of defendant's compliance with state and federal laws and regulations and professional standards regarding the dispensing of controlled substances, whether conducted internally or conducted or provided by an external vendor.

---

[1]    A "Cocktail Drug" is defined as a muscle relaxant, stimulant or benzodiazepines with an opioid. CVS-MDLT1-000000409 and its attachment at CVS-MDLT1-000000412.

6.  All reports to the DEA and the Ohio Board of Pharmacy and any other government agency regarding pharmacies, employees, patients, prescribers, or others related to prescriptions that were potentially suspicious, related to diversion, and/or not issued for a legitimate medical purpose in CT1.

7.  All documents reflecting due diligence (such as site visits, pharmacy questionnaires, threshold reviews, or other reports or dashboards) related to potentially suspicious conduct related to the dispensing of opioids in CT1, whether or not reported, including lists of prescribers, patients, pharmacies, or other individuals or entities on "do not fill" or "do not ship" lists.

8.  All employees and third parties who have discoverable information related to the dispensing of opioids in CT1, including the identification, investigation, refusal, or reporting of potentially suspicious prescriptions or diversion related to the dispensing of opioids.

9.  Organizational charts reflecting all personnel with responsibilities related to the identification, investigation, refusal, and reporting of potentially suspicious prescriptions or potential diversion related to the dispensing of opioids.

10.  The names of all reports, algorithms, programs or software systems, and data that each defendant regularly prepared or used in identifying, investigating, refusing, and reporting potentially suspicious prescriptions or diversion related to the dispensing of opioids