UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: "*All Cases*" | ) ) ) | |
| | ) ) ) | DISCOVERY RULING NO. 14, PART 10 REGARDING H.D. SMITH PRIVILEGE CLAIMS |

H.D. Smith seeks the Special Master's ruling on their claims the attorney-client privilege and attorney work-product status regarding three documents, two of which Smith inadvertently produced during Track One discovery and now seeks to claw back. Smith and the Plaintiffs met and conferred to address the status of these documents but failed to reach agreement. Accordingly, Smith furnished the disputed documents to the Special Master for *in camera review*, and both parties submitted letter briefs detailing their arguments. The Special Master has carefully reviewed these submissions and, for the reasons stated below, concludes Smith may not withhold any of these documents from discovery.

### I. Legal Standards.

The Special Master earlier set forth the legal standards and authorities and incorporates them by reference.[1] Most prominently, the Special Master's decisions below are based on the distinction between legal advice and business advice, applying the principal that compliance with

---

[1] *See* docket nos. 1321, 1353, 1359, 1380, 1387, 1395, 1498, 1593, 1610, 1666, & 1678 ("Discovery Rulings No. 14, Part x").

1

regulations is usually a business matter, not a legal one. *See Zigler v. Allstate Ins. Co.*, 2007 WL 1087607 at *1 (N.D. Ohio Apr. 9, 2007) (a "communication is not privileged simply because it is made by or to a person who happens to be an attorney. To be privileged, the communication must have the *primary* purpose of soliciting legal, rather than business advice.") (internal quotation marks and citations omitted, emphasis in original); *Fed. Trade Comm'n v. Abbvie, Inc.*, 2015 WL 8623076 at *9 (E.D. Pa. Dec. 14, 2015) ("attorney-client privilege does not apply . . . if the client seeks regulatory advice for a business purpose"). Also, when asserting attorney-client privilege, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821 at 825 (6th Cir. 2000). "Claims of attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit.'" *In re Columbia/HCA*, 293 F.3d 289 at 294 (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997)).

II.    **The Documents.**

1. A memorandum from Smith's outside counsel Larry Mackey and Stacy Cook of Barnes & Thornburg, with the subject heading "Recommendations for Due Diligence Improvements and Criteria for Evaluating Sales to Pharmacies" (the "B&T Memo").
2. An email string including: (i) an email from Dave Watkins to Tom Twitty and George Euson, dated 2/20/2011, and (ii) an email from Twitty to Euson, also dated 2/20/2011 (Bates stamped HDS_MDL_00218623-24) (the "First Clawback Document").

3. A document with line-by-line responses to the B&T Memo (the "Second Clawback Document").[2]

### III.     Analysis.

#### a. Attorney-Client Privilege

The B&T Memo, sent from Smith's outside counsel to Smith executives Dave Watkins (Chief Financial Officer), Tom Twitty (VP of Operations), George Euson (director of Corporate Compliance and Security), and William Stivers (position unknown) is, true to its subject heading, a list of recommendations for improving due diligence with respect to Smith's pharmacy accounts, as well as criteria for determining when to terminate a customer account. Smith asserts the Memo is entitled to attorney-client privilege because the "primary purpose of the B&T Memo was to obtain legal advice as opposed to business advice . . . ."[3]

Put simply, the Special Master disagrees with this characterization. The essence of the Memo is advice on steps Smith should take to comply with its ***regulatory*** obligations. Consistent with prior Discovery Rulings in this MDL, this type of advice is primarily business-related, not legal. Because the Memo does not primarily contain legal advice, it is not protected by attorney-client privilege.

The First and Second Clawback Documents are, likewise, not protected by attorney-client privilege. The First Clawback document "reflects the internal discussion among H.D. Smith's

---

[2] In a letter dated August 6, 2019 from Smith's counsel William Leeder to plaintiffs' attorney Anthony Irpino, Leeder refers to this document as Bates stamp HDS_MDL_00218628 – HDS_MDL_00218630. The document Smith provided to the Special Master for *in camera* review does not bear a Bates stamp, but based on the description of this document in the August 6 letter, the Special Master assumes that the document the letter refers to as the Second Clawback Document is HDS_MDL_00218628-HDS_MDL_00218630.

[3] Email dated August 6 from Bill Leeder to Anthony Irpino, William Padgett, Josh Gay.

3

management team regarding [the B&T Memo]."[4] The Second Clawback Document contains the verbatim text from the B&T Memo and includes George Euson's interlineated comments on each of the Memo's suggestions. The subject matter of these Documents is the very same business advice that is contained in the Memo itself, and the two Documents reflect the thoughts of non-lawyer businesspersons about how to implement the compliance-related suggestions. Because their subject matter is entirely derivative of the content of the B&T Memo, these two Clawback Documents are, like the Memo, not protected by attorney-client privilege.

### b. Attorney Work Product

Smith also argues these three Documents are protected by the attorney work-product doctrine. To qualify as attorney work-product, the materials in question must have been created "in anticipation of litigation or for trial by or for another party or its representative."[5] Smith asserts "George Euson prepared these notes in anticipation of further discussions with [attorneys at] B&T regarding the legal advice outlined therein. Critically, H.D. Smith requested the B&T Memo as it was in the midst of" litigation and administrative or regulatory proceedings.[6]

Smith's assertion that these Documents were prepared "in the midst of" litigation, however, is entirely bare. This assertion alone is not sufficient to satisfy Smith's burden of demonstrating the three Documents are entitled to work-product protection. The Special Master's review of the Documents reveals that they refer unambiguously to a straightforward process of review and improvement of Smith's compliance with its DEA obligations. The documents themselves do not refer to, or even hint that they relate to, any litigation, and Smith offers no other contemporaneous documents suggesting otherwise, either. The mere fact that the Documents were created and

---

[4] *Id.*
[5] Fed. R. Civ. P. 26(b)(3)(A).
[6] Email dated August 6 from Bill Leeder to Anthony Irpino, William Padgett, & Josh Gay.

4

exchanged contemporaneously with ongoing legal proceedings does not establish they were created in anticipation of litigation or for trial. Smith has not carried its burden of showing any of the three Documents are attorney work product.

Accordingly, the Special Master rules that Smith must produce all three Documents in discovery and may not claw them back.

### IV.      Objections.

Any party choosing to object to any aspect of this Ruling must do so on or before Wednesday, December 11, 2019.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**Dated: December 7, 2019**