UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION, | ) CASE NO. 1:17-MD-2804 <br> ) <br> ) HON. DAN AARON POLSTER |
| This document applies to: <br> *"All Cases"* | ) <br> ) <br> ) <br> ) <br> ) |

### H. D. SMITH'S OBJECTION TO DISCOVERY RULING NO. 14, PART 10 REGARDING H. D. SMITH PRIVILEGE CLAIMS

H. D. Smith, LLC ("H. D. Smith") hereby objects to the Special Master's Discovery Ruling No. 14, Part 10, issued on December 7, 2019 (the "Ruling"). (Dkt. # 2968). The Ruling erroneously concluded that three documents were not subject to either the attorney-client privilege or work product doctrine. Those three documents included two documents that were inadvertently produced and were subject to notices of clawback because they related to, discussed, and reflected recommendations and legal advice provided in a February 11, 2011 legal memorandum from outside counsel Barnes & Thornburg (hereinafter "B&T Memorandum," Exhibit A hereto, under seal) to its client, H. D. Smith. The third document was the B&T Memorandum itself, reviewed *in camera* by the Special Master after the submission of e-mail briefing by the Plaintiffs and H. D. Smith on the clawback documents.

These documents are plainly privileged and subject to work product protection. H. D. Smith is entitled to a presumption that the legal advice provided by its outside counsel is protected by the attorney-client privilege. Contrary to the Special Master's Ruling, the predominant purpose of these documents was legal, as opposed to business, advice. Accordingly, H. D. Smith respectfully requests that the Ruling be reversed with regard to all three documents.

1

DMS 15874508.5

## INTRODUCTION AND BACKGROUND

On July 29, 2019, the PEC filed its opposition briefs to various motions for summary judgment filed by the Defendants in Track 1. On August 2, 2019, in conjunction with its review of the briefs, H. D. Smith determined that Exhibit 654 to the Plaintiffs' Consolidated Memorandum In Opposition to Non - RICO Small Distributors' Motion for Summary Judgment was subject to the both the attorney-client privilege and work product doctrine.[1] Specifically, this document was an e-mail thread dated February 20, 2011 (HDS_MDL_00218623 – HDS_MDL_00218624), reflecting an internal discussion among H. D. Smith's management team regarding legal advice provided by H. D. Smith's outside legal counsel, specifically Larry Mackey and Stacy Cook of Barnes & Thornburg[2] (the "First Clawback Document," Exhibit B hereto, under seal). H. D. Smith inadvertently produced this document during the course of discovery in Track 1 and immediately issued a notice of clawback on August 2, 2019. See Exhibit C.

Shortly thereafter, on August 5, 2019, H. D. Smith further determined that Exhibit 44 to the PEC's Memorandum In Opposition to Non - RICO Small Distributors' Motion for Summary Judgment was a document related to the First Clawback Document and also subject to the attorney-client privilege and work product doctrine. On the same day, H. D. Smith issued a second notice of clawback concerning this document. See Exhibit D. This second document (HDS_MDL_00218628 – HDS_MDL_00218630) reflected Director of Compliance George Euson's typed notes in response to the various issues raised in the underlying memo, in anticipation of further discussions internally and with outside counsel regarding the legal advice outlined

---

[1] This document had also been attached as Exhibit 45 to the PEC's Memorandum In Opposition to Non - RICO Small Distributors' Motion for Summary Judgment.

[2] Mr. Mackey is a former long-time federal prosecutor who concentrates his practice on federal and state criminal and civil investigation proceedings (see https://www.btlaw.com/en/people/larry-mackey), while Ms. Cook has practiced health care law since 2006 (see https://www.btlaw.com/en/people/stacy-cook).

therein. In fact, this document reflects the verbatim text from the underlying memo (the "Second Clawback Document," Exhibit E hereto (under seal). Shortly thereafter, the PEC submitted an objection simply stating that the subject matter of these documents was business, not legal advice, and, therefore, these documents were not subject to the protection of the attorney-client privilege or the work product doctrine.

The genesis of this dispute is the B&T Memorandum prepared by H. D. Smith's outside counsel, Larry Mackey and Stacy Cook, which provided legal advice on H. D. Smith's Controlled Substance Order Monitoring Program ("CSOMP") and due diligence program.[3] The subject of the B&T Memorandum is clearly identified as "Recommendations for Due Diligence Improvements and Criteria for Evaluating Sales to Pharmacies". The first page is stamped in the right corner with "**Barnes & Thornburg–Privileged and Confidential–Attorney/Client Communication**," and each page is marked at the bottom as "Privileged Communication."

As set forth in H. D. Smith's submission to the Special Master on these issues, Barnes & Thornburg—a law firm and, obviously, a professional legal advisor—submitted the B&T Memorandum to H. D. Smith while H. D. Smith was in the midst of (1) litigating the *Safescript* case in the Eastern District of Michigan; (2) responding to an Administrative Inspection Warrant served by the DEA on H. D. Smith's Kentucky Distribution Center in December 2010 (Exhibit F);[4] and (3) addressing various concerns raised by the DEA regarding certain customers and issues

---

[3] H. D. Smith did not inadvertently produce the B&T Memorandum and therefore did not issue a notice of clawback for it. The B&T Memorandum was provided to the Special Master for *in camera* inspection and to provide context to the First Clawback Document and the Second Clawback Document, and is likewise provided *in camera* with this Objection.

[4] The Administrative Inspection Warrant was not submitted under seal because the ARCOS data reflected therein is 9-10 years old, and the DEA closed its investigation in 2013 without taking any taking any further action.

3

for the industry generally in Florida.  H. D. Smith was pursuing its claims in the *Safescript* litigation[5] which expressly involved the sufficiency of its due diligence efforts including, but not limited to, its suspicious order monitoring program.  Similarly, the DEA's administrative investigation was focused on the due diligence and suspicious order reporting for H. D. Smith customers in Ohio, Kentucky and West Virginia.  (Ex. F)  Set against this backdrop, Barnes & Thornburg—H. D. Smith's outside counsel then and now—prepared the B&T Memorandum, which addressed issues raised in the context of the *Safescript* litigation and the potential enforcement actions by the DEA.

Because the B&T Memorandum, the First Clawback Document (Ex. B) and the Second Clawback Document (Ex. E) predominantly reflect the legal advice of H. D. Smith's outside counsel, H. D. Smith respectfully submits that both documents—as well as the underlying B&T Memorandum—are subject to the attorney-client privilege and work product doctrine.  In the face of a changing and uncertain legal and regulatory enforcement environment, H. D. Smith sought the legal advice of its outside counsel for purposes of compliance analysis and to avoid litigation and/or enforcement actions involving the DEA.  As such, these documents clearly reflect that legal advice and are subject to the attorney-client privilege and work product doctrine.

This dispute was submitted[6] to the Special Master, who ultimately ruled that the documents constituted business advice regarding regulatory obligations, despite the fact that they clearly

---

[5] H. D. Smith's motion for summary judgment in the *Safescript* litigation was pending at the time the B&T Memorandum was prepared.  The motion directly implicated H. D. Smith's due diligence program and its obligation to report suspicious orders and was denied just over a month after the B&T Memorandum was drafted.  *See U.S. v. $463,497.72*, 779 F. Supp. 2d 696 (E.D. Mich. March 24, 2011).  The case went to trial in August 2011, and the court issued judgment in H. D. Smith's favor almost one year later.  *See U.S. v. $463,497.72*, 853 F. Supp. 2d 675 (E.D. Mich. March 30, 2012).

[6] The e-mail exchanges dated August 3, 2016 (Exhibit G) and August 6, 2016 (Exhibit H) reflect the parties' respective submissions to the Special Master on this issue.

contain discussion of legal advice and constitute communications between outside counsel and their client. He ruled that they should nevertheless be produced by H. D. Smith. (Dkt. # 2968).

The only "business" aspect of this e-mail is how to apply the legal advice contained in a privileged/work product legal memorandum discussing regulatory compliance and related due diligence issues, and is inextricably tied to that legal advice. The Special Master clearly erred in ruling that H. D. Smith must produce these documents, and as such, H. D. Smith requests that the Ruling be reversed.

## ARGUMENT

A. **The B&T Memorandum and the Clawback Documents Are Subject to the Attorney-Client Privilege.**

   1. **H. D. Smith is Entitled to a Presumption That the Attorney-Client Privilege Applies to Direct Communications from Its Outside Counsel.**

The Sixth Circuit has observed that a Court "should begin its analysis with a presumption in favor of preserving the privilege." *In re Perrigo Co.*, 128 F.3d 430, 440 (6th Cir. 1997). Anything less would be at odds with the purpose of the attorney-client privilege, which is "to encourage full and frank communication between attorneys and their client[s]." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also Ohio A. Philip Randolph Inst. v. Smith*, 2018 WL 6591622, at *2 (S.D. Ohio Dec. 15, 2018) ("The attorney-client privilege is based on two related principles. First, subjecting lawyers to routine examinations of their clients' confidential communications would offend the loyalty that forms an intrinsic part of the relationship between a lawyer and client. The second principle is that the privilege encourages clients to make full disclosure to their lawyers. A fully informed lawyer can more effectively serve his client and promote the administration of justice.") (internal quotation marks and citations omitted). Indeed, the ability to confidentially communicate with an attorney is at the very core of the privilege. *See In re Perrigo Co.*, 128 F.3d

at 436 ("'The privilege rests on the belief that in an adversary system, a client's full disclosure to an attorney is a necessary predicate to skillful advocacy and fully informed legal advice.'") (quoting *Chase Manhattan Bank, N.A. v. Turner & Newall*, 964 F.2d 159, 164-165 (2d Cir. 1992)).

Attorney-client communications for the purpose of complying with the law are exactly the kind of legal advice the privilege was mean to protect. *See Cooey v. Strickland*, 269 F.R.D. 643, 650 (S.D. Ohio 2010) (holding that advice regarding "compliance with a legal obligation" is privileged). As the courts within this Circuit have confirmed, "'[a] matter committed to a professional legal adviser *is prima facie so committed for the sake of legal advice* . . . and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice.'" *In re Federated Dep't Stores*, 170 B.R. 331, 354 (S.D. Ohio 1994) (quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 610 (8th Cir. 1977) (quoting 8 Wigmore, Evidence § 2296) (emphasis in original)). *See also Wilkinson v. Greater Dayton Reg'l Transit Auth.*, 2014 WL 953546, at *3 (S.D. Ohio Mar. 11, 2014) (finding communications between defendant and its outside counsel relating to defendant's purpose in obtaining legal advice regarding FMLA compliance protected by the attorney-client privilege).

Given the nature of the legal advice provided to H. D. Smith by its outside counsel, H. D. Smith's communication with its outside counsel as well as the subsequent internal discussions[7] of that advice, are clearly subject to the attorney-client privilege.

---

[7] While addressed in the clawback e-mail briefing but not directly addressed in the Ruling, the fact the First Clawback Document and Second Clawback Document reflect internal discussions by H. D. Smith corporate employees of the legal advice in the B&T Memorandum does not vitiate the attorney-client privilege. Internal discussions by customer client employees of legal advice from outside counsel are protected. *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 219 (W.D. Ky. 2006) (holding that the privilege extends to communications among corporate employees reflecting legal advice rendered by counsel to the corporation); *see also Smith-Brown v. Ulta Beauty, Inc*, 2019 WL 2644243 (N.D. Ill. June 27, 2019) (holding that internal company communications conveying or discussing legal advice are shielded by the attorney-client privilege even when attorneys are not party to those communications).

### 2. The Special Master Has Misconstrued the B&T Memorandum As Only Providing Business Advice.

The Special Master held that the "essence of the Memo is advice on steps Smith should take to comply with its *regulatory* obligations." *See* Ruling at p. 4 (Dkt. # 2968). As a result, the Special Master concluded the attorney-client-privilege does not apply because such "advice is primarily business related, not legal." *Id*.

In support of this conclusion, the Special Master relies primarily on *Zigler v. All State Co.*, 2007 WL 1087607 (N.D. Ohio Apr. 9, 2007) for the general premise that "complying with business regulations is usually a business matter, not a legal one." *See* Ruling at p. 2, Dkt. # 2968. Notably, *Zigler* did not even deal with the issue of regulatory advice but, rather, dealt with whether the defendant insurance company had to produce certain documents in its claim file to an insured. More importantly, the analysis in *Zigler* actually supports H. D. Smith's argument that these communications sought primarily legal advice. Specifically, the *Zigler* court noted that "'documents prepared for the purpose of … rendering legal advice are protected even though the documents also reflect or include business issues.'" 2007 WL 1087607, at *1 (quoting *In re OM Securities Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005)). The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege. *Id*. Notably, the *Zigler* court held that all of the documents at issue were protected by the attorney-client privilege and work product doctrine because they were either direct communications with counsel or prepared in anticipation of litigation. 2007 WL 1087607, at *4.

While under some circumstances certain communications concerning compliance with regulations, such as matters involving technical or scientific matters, may be viewed as business advice, legal advice *does* include advice regarding compliance with the law, including regulations. *Upjohn Co. v. U.S.*, 449 U.S. 383, 394–95 (1981). Indeed, as the D.C. Circuit—which applies the

7

same "primary purpose" test as the Sixth Circuit—held in reversing the district court's denial of a privilege claim related to an internal investigation:

> [I]f one of the significant purposes of the internal investigation was to obtain or provide legal advice, the privilege will apply. That is true regardless of whether an internal investigation was conducted pursuant to a company compliance program required by statute or regulation, or was otherwise conducted pursuant to company policy.

*In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) (further holding that the district court "applied the wrong test and clearly erred" in denying that privilege claim on the ground the investigation "was conducted in order to comply with regulatory requirements").[8]

This Court has routinely recognized that, "[a]s legal and business issues are often inextricably intertwined, in determining whether advice is predominantly legal or business in nature, courts should resolve doubts in favor of the privilege." *Ganley v. Mazda N. Am. Operations*, 2007 WL 9706988, at *5 (N.D. Ohio Nov. 15, 2007) (quotation omitted); *see also Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (recognizing that where both legal and non-legal advice is sought, the court "'consider[s] whether the predominant purpose of the communication is to render or solicit legal advice'" and that the attorney-client privilege applies if any legal advice is sought) (quoting *In re Cty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)); *In re OM Grp. Sec. Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005) (holding that under the attorney-client privilege, "documents

---

[8] *See also id.* (citing and quoting Andy Liu et al., *How To Protect Internal Investigation Materials from Disclosure,* 56 Government Contractor ¶ 108 (Apr. 9, 2014) ("Helping a corporation comply with a statute or regulation—although required by law—does not transform quintessentially legal advice into business advice.")); *Washington-St. Tammany Elec. Coop., Inc. v. Louisiana Generating, L.L.C.*, 2019 WL 2092566, at *5 (M.D. La. May 13, 2019) (finding documents protected by the attorney client privilege where professional energy consultant was retained to provide technical and regulatory compliance advice."); *United States v. Micro Cap KY Ins. Co., Inc.*, 2017 WL 1745626, at *1 (E.D. Ky. Feb. 8, 2017), *report and recommendation adopted sub nom. United States of Am. v. Micro Cap KY Ins. Co., Inc.*, 246 F. Supp. 3d 1194 (E.D. Ky. 2017) (holding that documents seeking advice on legal and regulatory compliance were protected as privileged, even where some of the documents "to a limited degree, do involve an aspect of business management or business considerations.").

8

prepared for the purpose of obtaining or rendering legal advice are protected even though the documents also reflect or include business issues.").

Put in the context of realistic hypotheticals, the Special Master's ruling would mean that a legal memorandum from outside counsel to a political subdivision client (such as a county) providing recommendations on implementation of policies and procedures to comply with accounting and tax regulations of a state department of local government finance, or to comply with statutory or regulatory requirements for state or federal public record access laws, would not be privileged because they are mere "regulatory compliance" recommendations.  The Special Master's Ruling—that such recommendations from outside counsel for purposes of statutory or regulatory compliance do not constitute legal advice—is a potential Pandora's Box and contrary to law.

Here, the predominant purpose of the B&T Memorandum was to obtain legal advice regarding potential improvements to its due diligence program.  In 2011, the registrant community faced a challenging and uncertain regulatory environment.  Additionally, the efficacy of H. D. Smith's due diligence program, including its ability to identify and report suspicious orders to the DEA, was a central issue in the *Safescript* trial.  At the time the B&T Memorandum was provided, H. D. Smith was awaiting a ruling on its pending motion for summary judgment, and trial loomed on the horizon.  *See U.S. v. $463,497.72*, 779 F. Supp. 2d 696 (E.D. Mich. 2011) (decided March 24, 2011).  Moreover, H. D. Smith's Kentucky Distribution Center was subject to an ongoing DEA administrative investigation prompted by an administrative inspection warrant on December 10, 2011.  As such, any advice directed to H. D. Smith by its outside counsel came within that context and for purposes of avoiding future legal issues.  *See Ganley*, 2007 WL 9706988, at *4 ("Where legal advice is sought from a professional in his capacity as a legal advisor, the communications

9

relating to that purpose that are made in confidence by the client are protected by the attorney-client privilege."); *In re OM Grp. Sec. Litig.*, 226 F.R.D. at 587 ("[T]he fact that business considerations are weighed in the rendering of legal advice will not vitiate the attorney-client privilege.").

While the B&T Memorandum is privileged on its face, these communications should be considered in the context in which they were made, which includes the *Safescript* litigation and the DEA's administrative inspection warrant served on H. D. Smith's Kentucky Distribution Center two months before the B&T Memorandum was drafted. G*raff v. Haverhill North Coke Co.*, 2012 WL 5495514, at *19 (S.D. Ohio Nov. 13, 2012) (holding that certain documents prepared at the request of a corporate superior and reflecting in-house counsel's assessment of health, environmental and safety regulations reflected legal advice); *see also id.* at *18 (rejecting plaintiff's attempt to obtain a document entitled "Legal Memorandum regarding future permitting at [defendant's plant] that was prepared by outside counsel," because the "memorandum reflect[ed] legal advice from outside counsel to an internal group of defendants' employees" and therefore was "clearly protected by the attorney-client privilege and the work product doctrine"). In this case, the documents clearly reflect the legal advice provided by H. D. Smith's outside counsel and, therefore, these documents are protected by the attorney-client privilege.

B.   **The B&T Memorandum and the Clawback Documents Are Further Subject to the Work Product Doctrine**

It is well-established that "investigation by a federal agency presents more than a remote prospect of future litigation, and provides reasonable grounds for anticipating litigation sufficient to trigger application of the work-product doctrine." *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 173 (D. Colo. 1993); *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 513 (D.N.H. 1996); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 147 (D. Mass. 2004) ("Many courts have held … and this

10

Court agrees, that once a governmental investigation has begun, litigation is sufficiently likely to satisfy the 'anticipation' requirement.").

Indeed, this Court and the Sixth Circuit have similarly held that documents prepared during or before an administrative proceeding may be "in anticipation of litigation" and therefore protected. *See United States v. Roxworthy*, 457 F.3d 590, 600 (6th Cir. 2006) (documents prepared "in anticipation of dealing with the IRS" merit work-product protection); *United Sates v. Eaton Corp.*, 2012 WL 3486910 at *10 (N.D. Ohio Aug. 15, 2012) (documents prepared "in connection with the IRS's examination of [defendant's] 2005 and 2006 tax returns are aptly characterized as prepared 'in anticipation of litigation.'").

In order for the work product doctrine to apply, H. D. Smith "must have had a subjective belief that litigation was a real possibility." *Roxworthy*, 457 F.3d at 594. At the time these documents were prepared, H. D. Smith was already involved in litigation with the DEA through the *Safescript* case. Additionally, H. D. Smith was in the process of responding to the DEA's ongoing administrative investigation of its Kentucky Distribution Center. Moreover, the DEA had inexplicably failed to provide guidance to distributors (as it had for pharmacies and physicians) and the DEA certainly had demonstrated a propensity for enforcement actions, as the Track 1 Complaints all allege, citing "178 registrant actions [brought by DEA] between 2008 and 2012."[9]

The B&T Memorandum simply provided a potential roadmap of legal advice and recommendations for updating and expanding the scope of H. D. Smith's due diligence program in light of the existing legal and regulatory hurdles facing the registrant community in a time of great

---

[9] *See* Complaint at ¶ 534, *City of Cleveland v. AmerisouceBergen Drug Corp., et al.*, No. 68 Civ. 394 (Mar. 6, 2018).

regulatory uncertainty.  Under these circumstances, H. D. Smith clearly had a reasonable, subjective belief that litigation was a real possibility.

## CONCLUSION

The attorney-client privilege and work product doctrine apply to all three documents at issue in Discovery Ruling No. 14, Part 10.  To hold otherwise would turn well-established case law on legal advice and privilege on its head and create a chilling effect on open and frank discussions between clients and attorneys.  Such communications are a critical hallmark of the attorney-client relationship.  The B&T Memorandum and the clawback documents discussing the contents of the B&T Memorandum unequivocally reflect the legal advice requested by H. D. Smith as it faced a series of legal challenges, and they cannot be construed as seeking primarily business advice.  Accordingly, the Special Discovery Ruling No. 14, Part 10, should be overturned.

Dated:  December 11, 2019

Respectfully submitted,

*/s/ William E. Padgett*
William E. Padgett (IN No. 18819-49)
Kathleen L. Matsoukas (IN No. 31833-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel:   (317) 236-1313
Fax:   (317) 231-7433
william.padgett@btlaw.com
kathleen.matsoukas@btlaw.com

*Counsel for Defendants H. D. Smith, LLC, f/k/a. H. D. Smith Wholesale Drug Co.; H. D. Smith Holdings, LLC and H. D. Smith Holding Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 11, 2019, a copy of the foregoing **Objection to Discovery Ruling No. 14, Part 10, Regarding H. D. Smith Privilege Claims** has been filed electronically using the Court's CM/ECF system and will be served *via* the Court's CM/ECF filing system, which will send notification of such filing to the attorneys of record at their e-mail addresses on file with the Court.

*/s/ William E. Padgett*
William E. Padgett

DMS 15874508.5