**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track One Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO WALGREENS'S OBJECTION TO DISCOVERY RULING NO. 9**

Plaintiffs submit this Response in Opposition in order to respond to the arguments set forth in Walgreens' Objection to Discovery Ruling No. 9 (Doc. #1065) ("Wag. Br.", Doc. #1143).

**I.  Introduction**

Plaintiffs' counsel requested a combined 36 custodians from Walgreens, a company that has approximately 8,000 retail outlets, dozens of distributions centers (one of which the DEA padlocked after its investigation), and a Memorandum of Agreement covering over 300 pages of detailed information with dozens of exhibits wherein Walgreens agreed to pay $80 million.[1] Special Master Cohen ultimately ordered that 35 of these custodians should be produced. The number of custodians is eminently proportional to Walgreens's specific factual background and its conduct, and Kermit Crawford is appropriately among them.

Walgreens's attempts to paint itself as a bit player in the opioid epidemic are false. Even though Walgreens stopped distributing Schedule II opioids into the Track One jurisdictions in early 2013 and stopped distributing hydrocodone into the Track One jurisdictions in early 2014, its distribution into the Track One jurisdictions puts it on equal footing with the "Big Three" distributors. The DEA's $80 million settlement of its opioid related investigations of two out of three of Walgreens' Schedule II distribution centers,[2] both of which distributed into the Track One

---

[1] The 36 custodians were the result of Plaintiffs' prioritizing and narrowing their initial supplemental requests for 47 total custodians.
[2] Walgreens also had dozens of additional distribution centers distributing Schedule III opioids, including hydrocodone combination products.

jurisdictions, was the largest DEA fine ever imposed on a distributor for Controlled Substance Act violations at that time.

Prior to the DEA investigation of Walgreens's distribution practices, there were several departments within Walgreens that were nominally responsible for Suspicious Order Monitoring and preventing diversion of prescribe controlled substances. As a result of the DEA investigation, these departments were reorganized into a new department: the "Pharmaceutical Integrity" department, with employees who were predominantly either new to Walgreens or new to this duty. This department was created in late 2012 and fully implemented in 2013. When Plaintiffs asked one of the Walgreens Pharmaceutical Integrity managers about due diligence performed on suspicious orders, he testified he had no personal knowledge of whether due diligence was performed. When Plaintiffs asked who should be deposed to determine the due diligence Walgreens performed on suspicious orders, he pointed to 50-100 different Walgreens employees. Plaintiffs, however, have not sought each of those custodians, but the targeted list of 35 ordered by Special Master Cohen, of which Mr. Crawford – the custodian at issue here – is one.

The following brief outline of key facts concerning Walgreens opioid distribution provides context to Plaintiffs custodial requests:

- Walgreens's market share in the Track One jurisdictions is significant and on equal standing with the Big Three Distributors. Walgreens was the third largest distributor of prescription opioids into Cuyahoga County (larger than McKesson) and the fourth largest into Summit County during the relevant time period.[3]

- Walgreens distributed Schedule 2 opioids nationally through three "C2" distribution centers, two of which distributed into Ohio during the relevant time period:
    - Jupiter, Florida (distributed into Ohio)
    - Perrysburg, Ohio (distributed into Ohio)
    - Woodland, California.

- In March and April 2012, the DEA issued an inspection warrant and subpoenas to the Jupiter distribution center. On September 13, 2012, the DEA issued the Jupiter distribution center an immediate suspension order for failure to report suspicious orders and prevent diversion of prescription. The DEA found that Jupiter's continued distribution of controlled substances constituted an imminent danger to public health and safety and locked the Jupiter vaults.

---

[3] Pursuant to the produced ARCOS data.

2

- In early February 2013, the DEA issued the Perrysburg DC an inspection warrant and subpoena. Walgreens immediately transitioned the Perrysburg DC's Schedule 3 distribution to its Mount Vernon, Illinois distribution center (a non-schedule 2 center) and began to transition all Perrysburg Schedule 2 distribution to outside distributors, including Cardinal, AmerisourceBergen, and Anda.

- In or around April 2013, Walgreens stopped self-distributing all Schedule 2 opioids into Ohio.

- In June 2013, Walgreens entered into Memorandum of Agreement with the DOJ/DEA regarding its nationwide opioid distribution and systemic failures to comply with the CSA, under which Walgreens was required to pay a record setting $80 million and institute significant revised policies and procedures to address the failure of its all of its distribution centers to comply with the CSA.

- In or around April 2014, Walgreens ceased all self-distribution of schedule 3 opioids into Ohio.

- Walgreens engaged AmerisourceBergen (ABDC) to distribute opioids to it under an exclusive contract. Walgreens partially owns ABDC and holds a seat of the ABDC board of directors.[4]

## II. Walgreens Mischaracterizes the History of the Custodial Dispute

Walgreens's objection is premised upon a mischaracterization of dispute over Walgreens's custodians. Plaintiffs did not "cut[] short negotiations" or prematurely "rush[] to seek relief." Since July 2018, Plaintiffs had been repeatedly asking Walgreens to identify custodians in the following categories:

- Distribution Center employees responsible for suspicious order monitoring (i.e. SAIL Coordinators and CII Coordinators/Function Managers) in the distribution centers which shipped to the CT1 jurisdiction
- Employees responsible for preventing prescription related diversion in Ohio during the Distribution Time Period (i.e. Loss Prevention employees and the initial RX Integrity Manager for Ohio)
- Officers responsible for audits, diversion, and compliance
- Relevant Legal and Compliance personnel
- Pharmacy Operations Personnel

However, Walgreens omitted ALL of these categories of custodians from its court-ordered September 14, 2018 certification of "relevant, non-duplicative" custodians. Further, Walgreens failed to produce any organizational charts dating from the distribution time period, despite Special Master Cohen's repeated orders to do so, until October 11, 2018, when it produced limited organizational

---

[4] Walgreens purchased 7% of ABDC's outstanding common stock in March 18, 2013 and obtained a seat on the ABDC board of directors. By 2016, Walgreens increased its holdings, and owned approximately 26% of ABDC's shares of common stock.

charts dating from 2012. Plaintiffs' requests for additional custodians on September 28, 2018, October 1, 2018, and October 18, 2018 sought to fill the gaps in Walgreens' deficient certification and to address information elucidated by the late-produced partial organizational charts. These requests were not late, but were fully in keeping with the discovery schedule, which required requests for additional custodians to be made by October 1, 2018, unless Plaintiffs had good cause for making a later request. (Doc. # 941). Plaintiffs made the bulk of the request for additional custodians well in advance of the October 1, 2018 deadline (indeed, most requests were reiterations of requests Plaintiffs had been making since July 2018) and Plaintiffs appropriately supplemented these requests on October 18, 2018, within a week of receiving the newly produced organizational charts. Plaintiffs also promptly prioritized and narrowed the requested custodians from 26 additional custodians to 14, agreeing to place requests for legal/compliance personnel on hold pending further development of that issue. *See* Exhibit A, October 20, 2018 Letter.

While Walgreens has now produced a little over 132,000 documents, Walgreens omits from its filing that only approximately 30% of those documents produced date from the time period during which Walgreens was distributing opioids to the Track One jurisdictions. Most of Walgreens's production post-dates the transition of its distribution activities to co-defendant AmerisourceBergen, of which Walgreens was a 26% owner.

It was in this context that Special Master Cohen ordered Walgreens to produce the requested custodians. Plaintiffs would have like to have received these custodial files much earlier in the discovery process. However, Walgreens's refusal to identify the requested custodians, failure to produce organizational charts, and decision to submit a deficient custodial certification have caused production of these custodians to be delayed until later in the discovery period. To require Walgreens to now produce relevant custodial files it should have agreed to produced long ago is

4

hardly a windfall to Plaintiffs, but the appropriate means to provide Plaintiffs with the necessary evidence to prove their claims and to provide the Court with the facts necessary to decide them.

### III. Production of Kermit Crawford's Custodial File is Necessary and Proportional

Walgreens's attempts to marginalize the importance of Mr. Crawford and his custodial file are improper. Kermit Crawford was Walgreens's President and/or Vice President of Pharmacy Health and Wellness from 2010-2014.[5] Plaintiffs requested Mr. Crawford's custodial file because, as stated in Plaintiffs' October 4, 2018 letter to Walgreens, documents produced by Walgreens reveal that "Mr. Crawford was often the recipient of reporting regarding stock levels and threshold increases," was "involved in consulting with other distributors regarding anti-diversion measures in response to the opioids distribution regulatory action and had responsibility for final approval of such policies within Walgreens.," and "is expected to possess responsive documents related to Walgreens corporate actions taken in response to DEA actions taken against their stores." *See* Exhibit B, Oct. 4, 2018 Letter.

Walgreens repeatedly responded that Mr. Crawford's files would be entirely duplicative of the custodians from the Pharmaceutical Integrity Department, even though that department was not created until late 2012 and not fully implemented until 2013. *See* Exhibit C, (composite of the following documents: Oct. 8, 2018 letter from K. Swift; Oct. 19, 2018 letter from S. Desh; Oct. 20, 2018 letter from K. Swift; Oct. 24, 2018 letter from K. Swift; Oct. 29, 2018 letter from K. Swift (all claiming Mr. Crawford's file would be wholly duplicative of the Pharmaceutical Integrity custodial files)). The three custodians Plaintiffs have deposed to date from the Pharmaceutical Integrity Department have revealed that they have substantially no knowledge of Walgreens's anti-diversion, suspicious order, and due diligence related activities before 2013, and, after that point, have limited knowledge at best. Their custodial production affirms that lack of knowledge. On October 23 and

---

[5] Mr. Crawford then became CEO of Rite Aid, another distributor defendant which Walgreens wholly owns.

5

24, 2018, during and after the Discovery Hearing on custodians, Walgreens newly asserted that Mr. Crawford's file was also duplicative of the custodial file of Rex Swords. *See* Exhibit D, Oct. 23-24, 2018 correspondence from K. Swift  However, the entirety of Mr. Swords's "substantially completed" produced custodial file comprises a mere 253 documents.

Documents produced by Walgreens confirm that Mr. Crawford likely has relevant, non-duplicative documents in his custodial file. For example, Mr. Crawford and Rex Swords are the only custodians who appear to be part of the "DEA Compliance Committee" formed by Walgreens in early 2012. (As noted above, only 253 documents have been produced from Mr. Swords's file.) Mr. Crawford was the signatory on companywide Walgreens emails regarding the DEA's opioid related investigation in 2012 and additional due diligence and compliance measures being instituted at Walgreens in response to that investigation and made public statements on behalf of Walgreens regarding the same.  He was also involved in coordinating Walgreens's remedial measures with other pharmacy distributors, approving related new policies and procedures, and coordinating and approving the business plans for transitioning out of opioid distribution, including Walgreens's plan for "partnership" with AmerisourceBergen.

Walgreens's production of custodial files from other custodians "with related knowledge" is not dispositive. One would hope that all custodians in this matter have "related knowledge" concerning Walgreens's compliance with and violations of the Controlled Substance Act as it related to Walgreens's distribution activities.

## Conclusion

Plaintiffs provided the Court with good faith grounds for ordering Mr. Crawford's custodial file by produced, and Walgreens has failed to provide any appropriate grounds for disturbing that ruling. For the foregoing reasons, this Court should deny Walgreens's objections to Discovery Ruling 9 and affirm the requirement that Walgreens produce the custodial file of Kermit Crawford.

Dated:  November 26, 2018             Respectfully submitted,

                                      /s/ *Peter J. Mougey*

                                      Peter J. Mougey
                                      **LEVIN, PAPANTONIO, THOMAS,**
                                      　　**MITCHELL, RAFFERTY &**
                                      　　**PROCTOR, P.A.**
                                      316 S. Baylen Street, Suite 600
                                      Pensacola, FL 32502-5996
                                      Tel.: 850-435-7068
                                      Fax: 850-436-6068
                                      pmougey@levinlaw.com

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 26th day of November 2018, I electronically filed the foregoing as a Sealed Document with the Clerk of Court by using the CM/ECF System. The foregoing will be served on counsel of record subject to the applicable Protective and Confidentiality Orders. A redacted version of the foregoing will be filed in the CM/ECF system and will be served upon counsel of record.

/s/ *Peter J. Mougey*
Peter J. Mougey
*Counsel for Plaintiffs*