# EXHIBIT A



KIMBERLY LAMBERT ADAMS   RACHAEL R. GILMER      MIKE PAPANTONIO           OF COUNSEL:
BRIAN H. BARR            FREDRIC G. LEVIN       CHRISTOPHER G. PAULOS     LAURA S. DUNNING
MICHAEL C. BIXBY         MARTIN H. LEVIN        EMMIE J. PAULOS             (LICENSED ONLY IN ALABAMA)
M. ROBERT BLANCHARD      ROBERT M. LOEHR        A. RENEE PRESTON          BEN W. GORDON, JR.
BRANDON L. BOGLE         STEPHEN A. LUONGO      ROBERT E. PRICE           ARCHIE C. LAMB, JR.
W. TROY BOUK             M. JUSTIN LUSKO        MARK J. PROCTOR           PAGE A. POERSCHKE
WESLEY A. BOWDEN         NEIL E. McWILLIAMS, JR. TROY A. RAFFERTY           (LICENSED ONLY IN ALABAMA)
VIRGINIA M. BUCHANAN     CLAY MITCHELL          MATTHEW D. SCHULTZ        CHRISTOPHER V. TISI
WILLIAM F. CASH III      PETER J. MOUGEY        W. CAMERON STEPHENSON       (LICENSED IN WASHINGTON, D.C.
JEFF GADDY               DANIEL A. NIGH         THOMAS A. TAYLOR            AND MARYLAND)
REBECCA D. GILLILAND     TIMOTHY M. O'BRIEN     LEO A. THOMAS             LEFFERTS L. MABIE, JR. (1925-1996)
  (LICENSED ONLY IN ALABAMA)                    BRETT VIGODSKY            D.L. MIDDLEBROOKS (1926-1997)
                                                                          DAVID H. LEVIN (1928-2002)
                                                                          STANLEY B. LEVIN (1938-2009)

October 20, 2018

**VIA EMAIL**
Special Master David R. Cohen
24400 Chargin Blvd. Suite 300
Cleveland, OH 44122
david@specialmaster.law

   ***RE: MDL 2804 – Plaintiffs' Submission re: Walgreens's Custodians***

Dear Special Master Cohen:

  A Walgreens's Pharmaceutical Integrity Manager identified categories of employees who may have specific information about potential due diligence performed on suspicious orders. Specifically, his deposition testimony was as follows:

> **Q.** So you're talking maybe 50, 75, even possibly a hundred people that may have specific information about suspicious orders and the due diligence provided or performed on those orders, right?
> **A.** They would possibly have some knowledge, yes.
> **Q.** And it would be your recommendation that we should probably talk to them to find out what kind of information they have on due diligence on suspicious orders, right?
> **MR. STOFFELMAYR:** Objection to the form. Lack of foundation.
> **THE WITNESS:** It would be my personal recommendation.

Deposition of Eric Stahmann, 10-16-18, (Page 242:5-20).

  After testifying his department does not have any information about due diligence performed on any suspicious order prior to 2013 but instead pointing to other departments (specifically naming loss prevention, distribution center SAIL and CII coordinators, and legal and compliance personnel), Plaintiffs' counsel did not request "a hundred" custodians, but further narrowed Plaintiffs' originally requested 26 additional custodians to a targeted list of 15 priority custodians. Nine custodians are still in dispute. ***Significantly, Plaintiffs have been repeatedly requesting these same custodians since July 2018***.[1]

   In total, ***Plaintiffs' counsel has requested a combined 33 custodians***[2] from a company that has approximately 8,000 retail outlets, dozens of distributions centers (one of which the DEA padlocked after its investigation), and a Memorandum of Agreement covering over 300 pages of detailed information with

---

[1] *See e.g.,* **Exhibit A**, July 9, 2018 Email from J. Gaddy to K. Swift requesting identifies of certain key custodians; **Exhibit B**, August 16, 2018 Email from J. Gaddy to K. Swift requesting these same custodians.
[2] Walgreens certified 21 custodians and Plaintiffs request an additional 15, for a total of 33.

October 20, 2018
Letter from P. Mougey to Special Master Cohen
*Plaintiffs' Submission re: Walgreens's Custodians*
Page **2** of **7**

dozens of exhibits wherein Walgreens agreed to pay $80 million. The 33 total custodians are eminently proportional to Walgreens's specific factual background and its conduct.

Instead of producing the custodians Plaintiffs have been requesting for more than three months, Walgreens continues to artificially limit custodians to departments that were not active until 2013 and to avoid others that were clearly responsible for identifying suspicious orders and performing due diligence before shipment. Walgreens's certified list of 21 custodians omitted significant categories and persons relevant to the issues before the Court. Plaintiffs have been requesting the same additional custodians since July but have not been able to name the specific persons because Walgreens failed to produce organizational charts or lists of employees and responsibilities produced covering organizational structure during the relevant time period. The handful of additional custodians Walgreens has finally agreed to add still leave significant voids that will deprive Plaintiffs and the Court of necessary evidence. Further, many of the custodians Walgreens certified lack meaningful custodial files from time period during which Walgreens distributed opioids.

Of Plaintiffs' prioritized list of 15 additional custodians, 9 remain in dispute. To give context for the reasons the remaining custodians are important, Plaintiffs first set out a brief timeline of key facts regarding Walgreens distribution of prescription opioids and the DEA's investigation of and regulatory action regarding the same; a brief summary of the temporal scope of Walgreens's current productions; and the summary of information Plaintiffs are still missing.

### Key Facts About Walgreens's Distribution of Opioids[3]

- Walgreens was the third largest distributor of prescription opioids into Cuyahoga County (larger than McKesson) and the fourth largest into Summit County during the relevant time period.[4]

- Walgreens distributed Schedule 2 opioids nationally through three "C2" distribution centers, two of which distributed into Ohio during the relevant time period:
    - Jupiter, Florida (distributed into Ohio)
    - Perrysburg, Ohio (distributed into Ohio)
    - Woodland, California.

- On April 4, 2012, the DEA served the Jupiter DC with an inspection warrant and subpoena. On September 13, 2012, the DEA issued the Jupiter DC an immediate suspension order for failure to report suspicious orders and prevent diversion of prescription. The DEA found that the Jupiter DC's continued distribution of controlled substances constituted an imminent danger to public health and safety and locked the Jupiter vaults.

- On February 5, 2013, the DEA served the Perrysburg DC with an inspection warrant and subpoena. Walgreens immediately transitioned the Perrysburg DC's Schedule 3 distribution to its Mount Vernon, Illinois distribution center (a non-schedule 2 center) and began to transition all Perrysburg Schedule 2 distribution to outside distributors, including Cardinal, Amerisource, and Anda.

- In April 2013, Walgreens stopped distributing all Schedule 2 opioids into Ohio.

---

[3] Plaintiffs have discovered many of these facts through review of Walgreens's production, including of documents produced within the last several weeks.
[4] Pursuant to the produced ARCOS data.

Case: 1:17-md-02804-DAP  Doc #: 2994-2  Filed: 12/17/19  4 of 12.  PageID #: 431269

October 20, 2018
Letter from P. Mougey to Special Master Cohen
*Plaintiffs' Submission re: Walgreens's Custodians*
Page **3** of **7**

- In June 2013, Walgreens entered into Memorandum of Agreement with the DOJ/DEA regarding its nationwide opioid distribution and systemic failures to comply with the CSA, under which Walgreens was required to pay a record setting $80 million and institute significant revised policies and procedures to address the failure of its all of its DCs to comply with the CSA.

- In or around April 2014, Walgreens ceased all distribution of schedule 3 opioids into Ohio.

- Walgreens engaged AmerisourceBergen (ABDC) to distribute opioids to it under an exclusive contract. Walgreens partially owns ABDC and holds a seat of the ABDC board of directors.[5]

### Walgreens's Production: Temporal Scope and Timing

In late August 2018, Walgreens admitted that it destroyed many of its email files in 2012-2013 when it transferred email servers. Both of the Schedule II Distribution Centers that distributed opioids into Ohio were under DEA investigation during that time.

While Walgreens represents that many of its custodians have meaningful files predating 2012 and 2013, the actual existence of such documents in Walgreens's production is nominal. Though recent deponent Eric Stahmann testified his emails had not been deleted and had been under legal holds since 2012, only 41 documents have been produced from his custodial file dating from the Walgreens's distribution time period.

Only 9% of the documents in Walgreens's production dates from the time during which Walgreens was distributing Schedule 2 opioids, and fewer than 20% of the documents date from the time period during which Walgreens was distributing Schedule 3 opioids.

Further impeding Plaintiffs' identification of Walgreens's custodians and ability to meaningfully meet and confer is Walgreens's back loading of its production waves. Approximately 24% of Walgreens's production has been produced in the last two weeks.

### Walgreens's Incomplete Production of Organizational Charts and Custodian Information

Though you have repeatedly ordered Walgreens to produce organizational charts and lists of custodian identities requested by Plaintiffs, Walgreens did not produce *any* organizational charts from the distribution time period until October 11, 2018. Those charts, from 2012, cover portions of Walgreens corporate structure, but still do not identify many Ohio specific custodians or key custodial groups. To date, Walgreens has never disclosed the identifies of Ohio Loss Prevention directors and officers or Compliance Officers, which Plaintiffs have been asking for since July 2018. Walgreens also has not provided the dates many custodians held their relevant roles, despite your instruction to the contrary, telling Plaintiffs instead to look at social media to try to figure it out from there.

### Walgreens Certification of Custodians Omitted Significant Categories and Roles

On September 14, 2018, Walgreens certified 21 custodians as being those "based on good-faith investigation" those Walgreens's employees that it believed were most likely to contain discoverable information related to Track One jurisdictions and national conduct. However, Walgreens omitted the

---

[5] Walgreens purchased 7% of ABDC's outstanding common stock in March 18, 2013 and obtained a seat on the ABDC board of directors. By 2016, Walgreens increased its holdings, and owned approximately 26% of ABDC's shares of common stock.

Case: 1:17-md-02804-DAP  Doc #: 2994-2  Filed: 12/17/19  5 of 12. PageID #: 431270

October 20, 2018
Letter from P. Mougey to Special Master Cohen
*Plaintiffs' Submission re: Walgreens's Custodians*
Page **4** of **7**

following key categories and roles from the submission. Specifically, **Walgreens omitted the following custodians, even though Plaintiffs have been requesting all of these custodians since July 2018**:[6]

- Distribution Center employees responsible for suspicious order monitoring (SAIL Coordinators and CII Coordinators/Function Managers)
- Employees responsible for preventing prescription related diversion in Ohio during the Distribution Time Period (Loss Prevention employees and the initial RX Integrity Manager for Ohio)
- Officers responsible for audits, diversion, and compliance
- Relevant Legal and Compliance personnel
- Pharmacy Operations Personnel

Plaintiffs requested 26 additional custodians to fill the gaps in Walgreens's certification. Walgreens refused, and said it would produce only 4 additional custodians, total.

Pursuant to your instruction that the parties prioritize and reduce their lists, Plaintiffs have been able to narrow and prioritize the 26 requested additional custodians to a list of 15, largely based on information lately provided in recent meet and confers, production, and witness testimony.[7]

Walgreens increased its offer by 2, agreeing to produce only 6 additional custodians. The remainder are still in dispute. Plaintiffs' prioritized lists and the 9 custodians still in dispute are set out below.

| **DISTRIBUTION CENTER MANAGERS AND COORDINATORS** | | |
|---|---|---|
| Disputed | **Deb Bish** | CII Function Manager – Perrysburg DC (Night Manager) |
| Disputed | **Unknown Person(s)** | SAIL Coordinator / CII Manager/Coordinator for Mt. Vernon DC (Walgreens will not identify) |
| *Agreed* | *Jen Diebert* | *SAIL Coordinator – Perrysburg DC* |
| **RX INTEGRITY** | | |
| *Agreed* | *Chris Dymon* | *Rx Integrity Manager for Ohio – 2013-2014* |
| **LOSS PREVENTION DIRECTORS** | | |
| Disputed | **Ed Lanzetti** | Market LP Director (MLPD) Florida. DEA designated witness regarding diversion and knowledge of increased opioid sales and arrests from DEA Action regarding Walgreens' DCs and systemic failures. |
| Disputed | **Unknown Person** | Market LP Director (MLPD), Ohio (Walgreens will not identify) |
| *Agreed* | *Ed Sivhra* | *Director, Healthcare Loss Prevention, National Scope* |
| *Agreed* | *Scott Johnkman* | *Corporate Manager Health and Wellness LP, likely to have documents in missing custodial range* |
| **PHARMACY OPERATIONS IN OHIO** | | |

---

[6] *See* Exhibit A; Exhibit B.

[7] Because of Walgreens's lack of compliance with your prior directive, and its general obstinacy regarding our requests as more fully detailed in our October 12 letter, Plaintiffs have been at an extreme disadvantage in compiling a prioritized list of custodians. Additionally, Plaintiffs are not here requesting all of the relevant APEX custodians because Walgreens has informed Plaintiffs that custodial files for many of these no longer exist. If at any point in time the relevant files are discovered or become available, Plaintiffs reserve the right to re-request them at a later point.

Case: 1:17-md-02804-DAP  Doc #: 2994-2  Filed: 12/17/19  6 of 12.  PageID #: 431271

October 20, 2018
Letter from P. Mougey to Special Master Cohen
*Plaintiffs' Submission re: Walgreens's Custodians*
Page **5** of **7**

|  |  |  |
|---|---|---|
| Disputed | **Joseph Prignano** | Director, Pharmacy & Retail, Cleveland/Akron - Pharmacy Operations OH |
| *Agreed* | *William Hunter* | District Leader, Cleveland West - Pharmacy Operations, OH |
| **WALGREENS OFFICERS** | | |
| Disputed | **Jeffrey Berkowitz** | Executive VP, Walgreens; President, Pharma & Market Access, 2010-2015 |
| Disputed | **Kermit Crawford** | President Pharmacy Health and Wellness, 2010-2014; EVP Pharmacy, Health & Wellness 9/2014 to 12/2014 |
| *Agreed* | *Chris Domzalski* | *Walgreens Chief Audit Executive, 2009-2015* |
| **COMPLIANCE / LEGAL** | | |
| Disputed | **Dwayne Pinon** | Legal personnel responsible for CSA compliance regarding diversion and suspicious orders |
| Disputed | **Compliance Persons identified by Walgreens** | Compliance personnel responsible for CSA compliance regarding diversion and suspicious orders |

**The Custodians Walgreens has Refused to Provide are Important and Non-Duplicative**

### DISTRIBUTION CENTER MANAGERS AND COORDINATORS

Plaintiffs seek a CII Function Manager and SAIL Coordinator for each distribution center which distributed into the Track One jurisdictions and have been seeking their identities since July 2018. Walgreens witness Eric Stahmann testified on October 16, 2018 that he provided "Suspicious Control Drug Order Reports" to the SAIL Coordinators and CII Coordinators at the Walgreens Distribution Centers on a monthly basis, and that SAIL Coordinators would be one of the primary sources likely to have due diligence files regarding those suspicious orders. Documents produced in association with the DEA action against Walgreens shows that CII Function managers were integrally involved in receiving, vetting, and approving orders for Schedule II opioids.

- Jupiter DC: Walgreens has represented that it no longer has the custodial files for the persons filling such roles at the Jupiter DC during the relevant time frame. During the relevant time period,
- Perrysburg DC: **Deb Bish** was a CII Function manager at the Perrysburg DC and Jen Deibert was a SAIL Coordinator. Though Deibert used to also be a CII Function manager, and both titles are reflected on her social media account, review of Walgreens documents reveals that during the relevant distribution time period, she was a SAIL Coordinator. Bish and Deibert are distinct and non-duplicative.[8]
- Mount Vernon DC: **Walgreens refuses to identify the custodian(s)** for the non-Schedule II Mount Vernon DC, which distributed hydrocodone to the Track One judications after the DEA served the Perrysburg DC with a warrant and subpoena.

### LOSS PREVENTION DIRECTORS

---

[8] Walgreens previously agreed in its October 15, 2018 correspondence to add two custodians from the Perrysburg DC and then later reneged on that offer. *See* Oct. 15, 2018 Ltr. From K. Swift at p. 3 ("Walgreens previously agreed to add certain managers in Walgreens' Perrysburg, Ohio distribution center to the list . . . Walgreens agrees to add two of them to the list . . . ."). However, in more recent correspondence, Walgreens changed its position and agreed only to Ms. Bish and objected to Ms. Deibert.

Case: 1:17-md-02804-DAP Doc #: 2994-2 Filed: 12/17/19 7 of 12. PageID #: 431272
October 20, 2018
Letter from P. Mougey to Special Master Cohen
*Plaintiffs' Submission re: Walgreens's Custodians*
Page **6** of **7**

Walgreens has repeatedly represented that loss prevention has "nothing to do with" prescription diversion, suspicious orders, and CSA compliance by distribution centers. However, documents produced in association with the DEA action against Walgreens reveal the falsity of that statement, which Plaintiffs have repeatedly pointed out to Walgreens. Further, Walgreens witness Eric Stahmann testified on October 16, 2018 that he, personally pulled and sent the "Suspicious Control Drug Order Reports" to the distribution centers when he was with loss prevention and that, though he said it was not his role to perform due diligence on those suspicious orders, Loss Prevention Managers and Loss Prevention Directors would have information "on the ground" about "weak links" in the pharmacy system and due diligence that would be different than the information "know[n] at corporate." Plaintiffs seek the "on the ground" loss prevention personnel for Ohio and Florida.

- Ohio – despite Plaintiffs asking for these positions since July, **Walgreens has yet to identify any custodians**.
- Florida – Plaintiffs seek **Doug Lanzetti** – the Walgreens Market Loss Prevention Director designated by the DEA to testify in the Jupiter DC suspension action about "the Loss Prevention program as it pertains to anti-diversion measures and the methods used by Walgreens' Loss Prevention program to detect and prevent diversion" as well as "increases in oxycodone sales at Walgreens pharmacies," as well as his meetings with Law Enforcement about controlled substance arrests related to Walgreens' pharmacies. While Lanzetti's primary geographic focus was Florida, the DEA intended to proffer evidence of Florida Walgreens provided opioids to Ohio residents, including that "many individuals from Ohio . . . have travelled by the carloads to 'pain' clinics located Florida to obtain prescriptions for oxycodone" filling those prescriptions at Walgreens, and returning home with the drugs obtained in Florida. Walgreens has confirmed that Mr. Lanzetti's custodial file still exists. Walgreens has not agreed to produce the custodial file of any other testifying witness from the DEA distribution center suspension action.

### PHARMACY OPERATIONS IN OHIO

These custodians oversee pharmacy operations within CT1 jurisdictions and are expected to possess responsive documents regarding controlled substance orders, thresholds or standard orders, adjustments to those thresholds or standard order amounts, and pharmacy due diligence. The RX Integrity department was not created until late 2012 and not fully implemented until 2013/2014, so those custodians will not have information regarding any of the earlier relevant time period. Plaintiffs have limited their request to only two such custodians from the entire CT1 jurisdiction, seeking the two who have some custodian documents from within the distribution time period. Walgreens represents **Mr. Prignano** has custodian documents dating back to March 2012 and Mr. Hunter to January 2014.

### WALGREENS OFFICERS

Walgreens decisions regarding compliance with the CSA and focus on profit vs. compliance and safety were made from the top down. Yet, Walgreens has refused to provide any officer custodians from its pharmacy health and wellness divisions.

- **Kermit Crawford** was President of Walgreens's Pharmacy, Health, and Wellness and received reporting regarding stock levels and threshold increases. Walgreens policies and procedures in this area were on hold pending his approval. He was also involved in consulting with other distributors regarding anti-diversion measures in response to the opioids distribution regulatory. Walgreens's argument that he is duplicative of RX Integrity custodians is hollow, as much of his tenure predates the creation and implementation of RX Intgrity in 2012/2013.

Case: 1:17-md-02804-DAP  Doc #: 2994-2  Filed: 12/17/19  8 of 12.  PageID #: 431273

October 20, 2018
Letter from P. Mougey to Special Master Cohen
*Plaintiffs' Submission re: Walgreens's Custodians*
Page **7** of **7**

- **Jeffrey Berkowitz** was only recently disclosed by Walgreens as being significant in 2012. He is listed on the recently produced 2012 Walgreens organization chart as being in charge of "Pharmacy Purchasing and Strategy, Contracting, Pharmaceutical Development." These functions are central to Walgreens strategic business decisions to heavily distribute opioids without performing due diligence or reporting suspicious orders.

### COMPLIANCE/LEGAL

Again, Plaintiffs have been requesting compliance officers since July 2018 and Walgreens has refused to identify such persons. Further, while Plaintiffs had seen the name "Dwayne Pinon" and knew, of course, that Walgreens's policies and procedures likely had some level of attorney review, the extent to which Walgreens ran its CSA compliance through legal was not revealed until Mr. Stahmann's deposition this week, when he testified that the "legal team [was] involved in the compliance for suspicious orders" and was a key source for suspicious order due diligence, along with loss prevention directors, DC SAIL coordinators, and compliance. He testified that the legal department "fill[ed] the compliance function at Walgreens with ensuring that specific code regulations were followed by Walgreens," and that the "compliance and legal teams" were "responsible for ensuring that the prescription monitoring and processing applications, inventory movement, all systems, . . . .complied with DEA codes and regs." Walgreens cannot shield its suspicious order monitoring and diversion duties from discovery by involving a lawyer in all of its regulatory compliance functions.

Finally, Walgreens has objected that it does not have enough time to review and produce the documents from these additional custodians. The timing of the issues surrounding custodians is driven in large part by the complete dearth or organizational charts and job descriptions. Instead, Plaintiffs have been forced to attempt to gather this information from scouring the internet and linked-in to identify key Walgreen's employees. A material number of whatever organizational charts that were produced came within the last two weeks. However, Walgreens has recently stated that it is using a sophisticated Technology Assisted Review instead of "manual review" to produce its documents, so its claims of burden and inability are hollow. Walgreens certainly has the resources and ability to produce the relevant documents. It should not be permitted to succeed in using its months long refusal to identify the requested custodians to hide relevant evidence from the Plaintiffs and the Court.

If Walgreens produces all of the additional 15 custodians, or a total of 33 requested by the Plaintiffs, it will still have produced far fewer custodians than any one of the Plaintiffs.

Sincerely,

*/s/ Peter J. Mougey*

Peter J. Mougey
Laura Dunning
Jeff Gaddy

cc:     Plaintiffs and Defense Counsel MDL List Serves

|  |  |
|---|---|
| **From:** | Jeff Gaddy |
| **Sent:** | Monday, July 09, 2018 3:19 PM |
| **To:** | Kate Swift; Kaspar Stoffelmayr |
| **Cc:** | Hunter Shkolnik; Salvatore C. Badala; Joseph L. Ciaccio; Laura Dunning; Page Poerschke; Peter Mougey; Josh Gay |
| **Subject:** | Opioid MDL - Search Terms and Custodians |
| **Attachments:** | 2018-07-09 - Walgreens Search Terms - Edits.docx |

Kate,

I've attached, in redline format, our edits to the search terms you proposed last week.  Please confirm these are acceptable to you, and that you will begin running the amended search terms.

Regarding potential custodians, we first note that Walgreens is better situated to identify relevant custodians and that the below list is by no means meant to be interpreted as excluding any relevant custodians or positions that should be provided.  Secondly, this process could be accomplished much more efficiently if Walgreens would provide us with organizational charts.  It is confusing to us that Walgreens claims to not have any document that identifies the name and territory of employees filling positions such as District Loss Prevention Officers, Distribution Center Directors, or CII Function Managers, to name a few.

That said, at a minimum we believe any individuals filling the following the positions from 2006 to the present whose duties impact any activity in Ohio, Florida, Pennsylvania, West Virginia, Illinois, Kentucky, and Georgia may make appropriate custodians:
- District Pharmacy Supervisors
- CII Function Managers
- Market Loss Prevention Directors
- District Loss Prevention Officers
- Distribution Center Directors
- Distribution Center Compliance Officers
- Replenishment Buyers
- Market Pharmacy Directors
- Compliance Officers
- Internal Auditors
- Managers, Rx Inventory Drug Stores

We would like to set a meet and confer to discuss these issues as well as the scheduling of 30(b)(6) depositions as soon as possible.  We are available tomorrow from 11:00ET to 4:00ET.  Please let us know what time works for you.


**Jeff Gaddy**
*Attorney*
Levin, Papantonio, Thomas, Mitchell,
Rafferty & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
850.435.7054 (office)
850.436.6054 (fax)
jgaddy@levinlaw.com



THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, DO NOT READ IT. PLEASE IMMEDIATELY REPLY TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR. THEN DELETE IT. THANK YOU.

EXHIBIT B to Plaintiffs' Submission re Walgreens's Custodians from P. Mougey

| | |
|---|---|
| **From:** | Jeff Gaddy |
| **Sent:** | Thursday, August 16, 2018 11:30 AM |
| **To:** | Kate Swift |
| **Cc:** | Peter Mougey; Laura Dunning; Page Poerschke; Josh Gay; Hunter Shkolnik; Salvatore C. Badala; Joseph L. Ciaccio; Andrew Dressel; Haynes Bryant; Kaspar Stoffelmayr |
| **Subject:** | Walgreens Follow Up |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Kate,

I'm writing to follow up on a few items from our call from last Monday.

First, you agreed that you would provide for each proposed custodian the dates they held the titles you listed for them and what geographic region their duties encompass. Can you please provide us an update on that process? This is of particular importance to us based on the upcoming deadlines in CMO 7.

Second, in response to your request that we allow Walgreens to respond in writing to Topics 16 and 19 of Plaintiff's 30(b)(6) notices, we indicated that we would accept a hybrid response. For clarity, I've underlined below the portions of each topic in which we would accept a written response. We require a live witness for the remainder of each topic. Do you accept our proposal?

  16. <u>Each suspicious order you received between January 1, 1995 to the present arising out of the CT1 jurisdictions and whether each was declined, shipped and/or reported</u> as well as the due diligence performed arising out of each suspicious order reported to the DEA.

  19. <u>Each order of a prescription opiate from an online pharmacy in the United States from 1995 to the present and whether each was declined, shipped and/or reported</u> as well as the due diligence performed arising out of each suspicious order reported to the DEA.

Third, we have repeatedly requested that you provide us the names of employees who filled select positions with Walgreens and had duties impacting the CT1 jurisdictions. You have refused to provide the names of anyone who filled the following positions:
- District Pharmacy Supervisors,
- CII Function Managers,
- Market Loss Prevention Directors,
- District Loss Prevention Directors,
- Distribution Center Directors,
- Distribution Center Compliance Officers,
- Replenishment Buyers (Your 7/30 letter to SM Cohen indicates Walgreens has no such position, but a limited organizational chart you provided on 7/25 lists multiple employees with that title. This inconsistency is why we re-list the position here, hoping you can provide some clarification, and let us know which employees with that title had duties impacting CT1 jurisdictions in the relevant time periods.)
- Compliance Officers, or
- Internal Auditors.

If I am incorrect about any of these listed positions, please advise which currently proposed custodians fall into which positions. Otherwise, we presume that Walgreens maintains its refusal to merely identify employees who held these positions for the timeframes included in Special Master Cohen's Discovery Ruling 3.

1

Thank you,
Jeff


**Jeff Gaddy**
*Attorney*
Levin, Papantonio, Thomas, Mitchell,
Rafferty & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
850.435.7054 (office)
850.436.6054 (fax)
jgaddy@levinlaw.com



THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, DO NOT READ IT. PLEASE IMMEDIATELY REPLY TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR. THEN DELETE IT. THANK YOU.