# EXHIBIT C

# BartlitBeck LLP

Katherine M. Swift
Kate.Swift@BartlitBeck.com

Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
main: (312) 494-4400
direct: (312) 494-4405

BartlitBeck.com

October 8, 2018

**BY E-MAIL**

Jeff Gaddy
Levin Papantonio
316 South Baylen St.
Pensacola, Florida 32502

   **Re**: *MDL 2804 – Walgreens Custodians*

Jeff:

   I write to provide additional information regarding Plaintiffs' request for additional Walgreens custodians.  We have already identified the custodians on your list whose files Walgreens either no longer possesses or never did.  That list includes the following individuals:

- Ken Amos
- Kristine Atwell
- Edward Forbes
- Doug Lemmons
- John Lucchetti
- David Schwartz
- Byron Wheeldon

   On our call with Special Master Cohen this morning, Peter Mougey made clear that Plaintiffs have withdrawn the request for these custodial files.

   Walgreens previously agreed to add four managers at the Perrysburg, Ohio distribution center to its custodian list.  At your request, we now provide their dates of employment with Walgreens:

- Deb Bish (employed 2002 – present)
- Mark Betteridge (employed 2000 – present)
- Jennifer Diebert (employed 2003 – present)
- James Gill (employed 1982 – present)

   We are processing these employees' files now, so that we can determine the timeframe of available data for each of them.

# BartlitBeck LLP

October 8, 2018
Page 2

As detailed in my letter on Friday, October 5, the remaining custodians on your list are redundant of the custodians whose files Walgreens is already producing. Collecting the same kinds of documents from different people, this late in discovery, is a waste of time and resources, and certainly not proportional to the needs of these cases. You have provided no further information supporting your request for these custodial files in response to my October 5 letter.

Instead, you have continued to focus on the timeframe covered by the custodians' documents, rather than each custodian's role as it relates to the claims in these cases, in a purported effort to obtain documents from more than five years ago. While that approach ignores the proportionality requirements of the Federal Rules—and the practical reality that waiting until years after Walgreens stopped distributing Opioids before bringing your claims means that older documents are less likely to be available—it also takes several of your requested custodians off the table. In addition to being duplicative of other custodians, or completely irrelevant to your claims for the reasons addressed in my October 5 letter, the following people were not even employees at Walgreens in the timeframe you have focused on:

- Phil Caruso (employed 2013 – present)
- Alex Gourlay (employed 2013 – present)
- John McDonagh (employed 2011 – present)
- Reuben Slone (employed 2012 – 2018)

Likewise, although Christopher Dymon has worked at Walgreens since 2003, he only served in a relevant role, in Walgreens' Pharmaceutical Integrity group, in 2013 and 2014—a role that overlaps with no fewer than five other Pharmaceutical Integrity employees on Walgreens' existing custodian list. **Please confirm that Plaintiffs will remove all five of these custodians from your requested custodian list, as they do not cover the timeframe you claim to care most about.**

Your remaining requests are duplicative of other custodians already on our list, or else irrelevant to the claims at issue, for the reasons detailed in my October 5 letter. For example, you indicated that you are interested in the documents of Ohio field employees William Hunter (employed 1998 – present), Christopher Morrison (employed 1997 – present), Joseph Prignano (employed 1989 – present), and James Whited (employed 1995 – present) because they are "expected to possess responsive documents regarding controlled substance thresholds, ceilings, and adjustments to those in the CT1 jurisdictions." As I explained, pharmacy employees do not have access to any of that information—the custodians from Walgreens' Pharmaceutical Integrity team do, and are already on our custodian list. Nonetheless, we are providing

BartlitBeck LLP

October 8, 2018
Page 3

additional information on the dates of employment[1] for each of these remaining custodians at
your request:

- Kermit Crawford (employed 1983 – 2015): You request Mr. Crawford's file because
  he is expected to have "responsive documents related to Walgreens corporate actions
  taken in response to DEA actions taken against their stores."  Again, the
  Pharmaceutical Integrity group is responsible for Walgreens corporate actions taken
  in response to requests from the DEA.  Custodians from this group are most likely to
  possess the documents you seek.
- Chris Domzalski (employed 2009 – 2015): You request Mr. Domzalski's file because
  he is "expected to possess responsive documents related to Walgreens audit process
  following the DEA actions taken against their stores."  Again, this is the role of the
  Pharmaceutical Integrity group, whose files Walgreens has already agreed to produce.
- Ed Lanzetti (employed 1992 – 2018): You request Mr. Lanzetti's file because he is
  "expected to possess responsive documents regarding Walgreens knowledge of
  diversion and anti-diversion policies and actions before 2012 / 2013."  Mr. Lanzetti is
  a former employee who had responsibilities for Florida, not Ohio.  In any event,
  Walgreens has already produced documents from Mr. Lanzetti in its prior production.
- Ed Svihra (employed 1975 – 2014): You request Mr. Svihra's file because he is
  "expected to have documents concerning Walgreens knowledge of diversion, its
  pharmacy due diligence, and its practices and procedures during the time Walgreens
  was distributing prescription opioids."  Walgreens has already produced documents
  from Mr. Svihra in its prior production.
- Gregory Wasson (employed 1980 – 2015): You request Mr. Wasson's file because he
  is "expected to possess responsive documents relating to . . . cooperation between co-
  Defendants."  Mr. Wasson is the former President and CEO of Walgreens Boots
  Alliance.  He had no direct responsibility for the distribution of opioids into Ohio, and
  Plaintiffs have provided no reason to think that he has any information related to
  generic allegations of "cooperation between co-Defendants."
- Laurie Zaccaro (employed 2006 – present): You request Ms. Zaccaro's file because
  she is "expected to have responsive documents regarding diversion investigations and
  education programs."  As explained above, Walgreens has already produced a
  substantial number of documents dealing with these programs from the files of
  custodians in its Pharmaceutical Integrity group.

Walgreens' existing custodian list is proportional to the needs of these cases and already
covers the kinds of documents Plaintiffs seek in your request for additional custodians.
Walgreens has produced approximately 400,000 pages of custodial and non-custodial

---

[1] The dates of employment do not guarantee these custodians will have documents related to the subject matter of
this lawsuit for the time frame Plaintiffs seek.  For example, Joseph Prignano worked in Rhode Island, not Ohio,
through approximately 2011.  That is all the more reason he is not an appropriate custodian here.

# BartlitBeck LLP

October 8, 2018
Page 4

documents, and has agreed to add four additional custodians at Plaintiffs' request.  The addition of still more custodians, at the 11th hour, is not feasible on the current schedule, which requires substantial completion of Walgreens' document production by November 9.

To date, Plaintiffs have not provided any information regarding your ranking or prioritization of any of the custodians you have asked us to add.  Special Master Cohen instructed Plaintiffs to do so promptly.  Please provide that information by 5 pm Eastern on Tuesday, October 9, so that we can evaluate it, determine whether a further meet and confer would be fruitful, and present remaining areas of dispute to the Special Master by close of business on Friday.

Sincerely,

Katherine M. Swift
Counsel for Walgreens

**From:** Sharon Desh <Sharon.desh@bartlitbeck.com>
**Sent:** Friday, October 19, 2018 3:54:13 PM
**To:** Gaddy, Jeff
**Cc:** Kate Swift; Mougey, Peter; Dunning, Laura; ppoerschke; Gay, Josh; Alexandra Garlock; Badala, Salvatore C.; Shkolnik, Hunter; Jeff Gibson (jgibson@cohenandmalad.com); Jonathan Knoll; 2804 Discovery, MDL; Kaspar Stoffelmayr
**Subject:** EXTERNAL-Re: Identification of Walgreens Custodians

Jeff,

Thank you taking the time to speak on Wednesday in an effort to reach consensus on Walgreens' custodians.  As I am sure you know, Walgreens' production is currently the third largest of any distributor defendant.  That speaks volumes not only to Walgreens' choice of custodians, but to the scope and coverage of each of those custodial productions.

We have already agreed to give you custodians from distribution centers including those serving in the role of CII function manager and SAIL coordinator, in addition to individuals in loss prevention, Ohio pharmacy operations, and Rx Integrity.  Yet you continue to add brand new requests far after the deadline, based on information you have had from the earliest stages of this case.  This continuously-evolving list makes it virtually impossible for the parties to come to an agreement.

Walgreens is prepared to agree to a reasonable set of additional custodians based on the individuals Plaintiffs identified to the Special Master on October 12.  In particular, Walgreens will agree to add the following as custodians:

- Chris Domzalski: Chief Audit Executive
- Jen Diebert: Perrysburg SAIL Coordinator / CII Function Manager
- Chris Dymon: Former Rx Integrity Manager
- William Hunter: Pharmacy Operations in Ohio
- Ed Svihra: Director in Loss Prevention
- Scott Jonkman: Manager in Loss Prevention

As previously explained Plaintiffs' other requests are not proportional to this case.  Other CII function managers including Deb Bish and James Gill are duplicative of Jen Diebert.  Joseph Prignano did not have responsibilities for Ohio for most of the time period Plaintiffs are focused in their custodial requests (pre-2011).  Ed Lanzetti had no responsibility for Ohio, and any other loss prevention individuals will be duplicative of Ed Svihra and Scott Jonkman.  Kermit Crawford is duplicative of the Rx Integrity group and Plaintiffs have not identified any reason why Jeffrey Berkowitz would make a proper custodian or why he could not have been identified

earlier.  Finally, Plaintiffs have been aware of Dwayne Pinion from the earliest stages of the case and have never made - nor can they make - the argument that any legal employee is a relevant or meaningful custodian.

Again, this agreement is based on Plaintiffs' own representations to the Special Master.  The custodians identified by Plaintiffs for the first time today could have been identified by Plaintiffs earlier, but were not.  In reliance on Plaintiffs' representations, Walgreens has already collected the files for the above-stated custodians and is prepared to begin processing and productions.  We look forward to Plaintiffs agreeing to this proposal and resolving this issue.

Thank you,

Sharon

## BartlitBeck LLP

Sharon Desh | P:  312.494.4445 | C:  301.537.9638 | Sharon.Desh@BartlitBeck.com | 54 West Hubbard Street, Suite 300, Chicago, IL 60654

This message may contain confidential and privileged information.   If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message

On Oct 18, 2018, at 1:50 PM, Jeff Gaddy <jgaddy@levinlaw.com> wrote:

Kate,

I provide below our narrowed list of custodians whose custodial files should be produced by Walgreens.  I note that Walgreens originally certified a mere 21 custodians, a list which included no Distribution Center custodians, no CII Function Managers, no SAIL Coordinators, only a single Loss Prevention employee from the distribution period who moved out of that role in early 2013, no Ohio Pharmacy Operations employees, no Legal Compliance employees, did not include the original Rx Integrity Manager over Ohio, and did not include any Officers.  These additions seek to remedy those deficiencies and put Walgreens in the area of 40 custodians – a number significantly fewer than every Plaintiff and fewer than most Defendants.  Please confirm you will produce custodial files for the below listed individuals.

**Walgreens Officers:**
- Jeffrey Berkowitz (Executive VP, Walgreens; President, Pharma & Market Access, 2010-2015)
- Kermit Crawford (President Pharmacy Health and Wellness, 2010-2014; EVP Pharmacy, Health & Wellness 9/2014 to 12/2014)
- Chris Domzalski (Walgreens Chief Audit Executive, 2009-2015)

**Distribution Center Managers and Coordinators:**
- Deb Bish (CII Function Manager - Perrysburg)
- Jen Diebert (Perrysburg SAIL Coordinator)
- SAIL Coordinator(s) / CII Manager/Coordinator(s) for Mt. Vernon
- James Gill (CII Function Manager - Perrysburg)

**Rx Integrity**
- Chris Dymon (Rx Integrity Manager for Ohio – 2013-2014)

**Pharmacy Operations in Ohio**
- William Hunter (Pharmacy Operation)
- Joseph Prignano (Pharmacy Operation)

**Loss Prevention**
- Ed Sivhra (Director, Healthcare LP)
- Ed Lanzetti (MDLP, Florida, involved in Regulatory Action)
- MLPD(s) over Northern Ohio
- Scott Jonkman (Corporate Manager Health and Wellness LP, recommended by Walgreens in 10/17 meet and confer)

**Compliance / Legal**
- Dwayne Pinon (Legal)
- Compliance Persons identified by Walgreens

**Jeff Gaddy**
*Attorney*
Levin, Papantonio, Thomas, Mitchell,
Rafferty & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
850.435.7054 (office)
850.436.6054 (fax)
jgaddy@levinlaw.com

<image001.jpg><image002.jpg><image003.jpg><image004.jpg>

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, DO NOT READ IT. PLEASE IMMEDIATELY REPLY TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR. THEN DELETE IT. THANK YOU.

You're receiving this message because you're a member of the MDL 2804 group from Motley Rice, LLC. To take part in this conversation, reply all to this message.

View group files  |  Leave group  |  Learn more about Office 365 Groups

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

**BartlitBeck** LLP

Katherine M. Swift
Kate.Swift@BartlitBeck.com

Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
main: (312) 494-4400
direct: (312) 494-4405

BartlitBeck.com

October 20, 2018

**BY E-MAIL**

Special Master David R. Cohen
24400 Chagrin Blvd., Ste. 300
Cleveland, OH 44122
David@SpecialMaster.Law

      **Re**:    *MDL 2804 – Plaintiffs' Request for Additional Walgreens Custodians*

Dear Special Master Cohen:

    I write to update you on Plaintiffs' custodian requests to Walgreens. Walgreens has made several attempts at compromise with Plaintiffs. We will continue to try and work with Plaintiffs on this issue, but to date, Plaintiffs have refused to negotiate.

    On October 18, more than two weeks after the October 1 deadline to identify new custodians, Plaintiffs requested multiple brand new custodians from Walgreens. Plaintiffs have represented to you that it would be appropriate to make these belated requests because of new information Walgreens recently provided. *See* 10/12/18 Mougey Letter to Cohen. It is true that Walgreens has provided substantial additional custodian information to Plaintiffs over the past two weeks (including how the custodians fit into Walgreens' organizational structure, the temporal scope of their custodial files, and the dates they held various positions within the company). But Plaintiffs' new requests are not based on *any* of that information: They added a former Walgreens executive (Jeffrey Berkowitz), an in-house lawyer (Dwayne Pinon), unnamed "compliance persons," and additional unnamed distribution center managers, without any explanation for why these new custodians should be added. None of these new custodians appeared in the additional information Walgreens recently provided, nor is it clear that any of them would possess non-privileged information relevant to these cases. In any event, Plaintiffs could have, and should have, made these requests months ago. It is too late to add them now.

    **As to Plaintiffs' earlier requests, Walgreens agrees to add nine of those custodians to its list, which we understand is more than any Plaintiff has agreed to add.** These nine custodians are in addition to the 21 custodians and many non-custodial sources Walgreens previously identified. Indeed, Walgreens has already produced close to 400,000 pages of documents in this MDL—more than all but two other distributors—and will produce an additional 100,000 pages on Monday. Adding an additional nine custodians to the mix at this

# BartlitBeck LLP

October 20, 2018
Page 2

late date, on top of Walgreens' existing production, is more than proportional to the needs of these cases.

These nine new custodians include one or more from each category covered by the custodians in Plaintiffs' "partial prioritized list" to you last Friday.  *See* 10/12/18 Mougey Letter to Cohen at 4-5.  In particular, Walgreens agrees to add:

| Custodian | Role at Walgreens | Plaintiffs' Requested Category |
| --- | --- | --- |
| Chris Dymon | Former Manager | Pharmaceutical Integrity |
| Ed Svihra | Former Director | Loss Prevention |
| Scott Jonkman | Manager | Loss Prevention |
| Jennifer Diebert | SAIL Coordinator/Function Manager | Perrysburg, Ohio Distribution Center |
| Mark Betteridge | Function Manager | Perrysburg, Ohio Distribution Center |
| Deb Bish | Function Manager | Perrysburg, Ohio Distribution Center |
| James Gill | Function Manager | Perrysburg, Ohio Distribution Center |
| William Hunter | District Manager | Ohio Pharmacy Operations |
| Chris Domzalski | Former Chief Audit Executive | Walgreens Executive |

The remaining custodians on Plaintiffs' list are duplicative of these nine, or other existing custodians:

- Plaintiffs have requested additional loss prevention custodians, including Ed Lanzetti and other unnamed individuals.  Mr. Lanzetti had no responsibility for Ohio.  If there were any relevant documents in his file or any other loss prevention employee's files, they would be duplicative of Mr. Svihra or Mr. Jonkman.

- Plaintiffs have requested another pharmacy operations custodian, Joseph Prignano.  Mr. Prignano did not have responsibilities for Ohio before 2011, i.e., most of the time period Plaintiffs claim to care about.  He is also duplicative of Mr. Hunter.

- Plaintiffs requested Kermit Crawford, a former executive whom Plaintiffs claim they want because he is expected to have "responsive documents related to Walgreens corporate actions taken in response to DEA actions taken against their stores."  The Pharmaceutical Integrity group is responsible for Walgreens' corporate actions taken in response to requests from the DEA, and, with the addition of Chris Dymon, there are already six custodians from this group on Walgreens' custodian list.  Mr. Crawford

# BartlitBeck LLP

October 20, 2018
Page 3

would merely duplicate those other custodians.

At this point, because of Plaintiffs' delay, Walgreens will not be able to complete the collection, review, and production of new custodial files by the November 9 production deadline. Walgreens is nonetheless moving forward with its review and production for the nine custodians identified above.  Plaintiffs' requests for other custodians should be denied.

Sincerely,

Katherine M. Swift
Counsel for Walgreens

**From:** Kate Swift <kate.swift@bartlitbeck.com>
**Sent:** Wednesday, October 24, 2018 4:30:13 PM
**To:** Dunning, Laura
**Cc:** david@specialmaster.law; xALLDEFENDANTS-MDL2804-Service@arnoldporter.com; 2804 Discovery, MDL
**Subject:** EXTERNAL-Re: Plaintiffs' Submission to re Walgreens Custodians

David,

We have agreed to add 14 custodians (up from 9), including custodians from all of the categories Mr. Mougey talked about yesterday in the hearing. Plaintiffs' assertions about the depositions that have happened so far are incorrect. But setting that aside, we agreed to add all but two custodians on the list we shared with you yesterday. Mr. Mougey never mentioned either one of those two, Mr. Crawford or Mr. Berkowitz, to you in court yesterday.

Additionally, after agreeing to remove lawyers from the universe of custodians still under discussion, ie, the 16 on our list, plaintiffs are now holding out the purported need to seek their files later. This conflicts with your previous guidance on seeking custodial files from lawyers.

Walgreens has agreed to add 14 custodians for a total of 35. This is more than sufficient and proportional, and Plaintiffs' request for more should be denied.

**BartlitBeck** LLP

Katherine M. Swift | p: 312.494.4405 | c: 773.531-6118 | Kate.Swift@BartlitBeck.com |Courthouse Place, 54 West Hubbard Street, Chicago, IL 60654

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

On Oct 24, 2018, at 12:19 PM, Laura Dunning <ldunning@levinlaw.com> wrote:

Special Master Cohen,

Walgreens's own Pharmaceutical Integrity Manager, the position Walgreens's counsel represented was most knowledgeable about diversion and suspicious order monitoring, testified that he never reviewed any suspicious order reports or conducted due diligence on pharmaceutical diversion related to suspicious orders. He testified that, in order to obtain discovery on that information, Plaintiffs needed to obtain discovery from the distribution centers themselves, from local loss prevention managers, from legal, and from compliance. He then testified that the persons with relevant knowledge could comprise as many as a hundred people.  Walgreens certified list of 21 custodians did not include custodians from the roles its own managerial witness testified were most relevant.

Plaintiffs sought to add a targeted list of 26 custodians to the list in order to fill those gaps in Walgreens certified list, both from a geographic and subject matter perspective.  On your instruction, Plaintiffs then prioritized and narrowed that list to 15-16 additional custodians, most of whom Plaintiffs have been seeking since July. This week, Plaintiffs further agreed to give up two additional custodians (a former executive and an Ohio pharmacy operations), and to table the consideration of compliance and legal custodians until further discovery can be conducted in order to reach an agreement. That would leave Walgreens producing *35 total custodians* at this time, with a potential to produce legal and compliance custodians later if appropriate.

Walgreens rejected the officer and now refuses to produce the relevant custodians, including the "on the ground" custodians its own Rx Integrity Manager testified who would have information about due diligence actually performed on suspicious orders from the loss prevention department, which predated the Rx Integrity group (which was not active until 2013) and the custodians from the distribution center which distributed hydrocodone to Ohio from 2013-2014, unless Plaintiffs will agree to give up any requests for legal and compliance officer custodians, as well as *both* executives on Plaintiffs' prioritized list.

The two Walgreens witnesses deposed to date, both of whom were recommended by Walgreens, have testified that legal and compliance play a significant role in Walgreens's diversion prevention and suspicious order monitoring and reporting under the Controlled Substance Act.  While Plaintiffs are willing to table consideration of these custodians for now, Plaintiffs do not believe it is appropriate to take them off the list completely without reviewing the production, which is not yet complete, and further developing discovery on the issue.

Walgreens countered a few minutes ago that it would agree to Plaintiffs' proposal, but only if Plaintiffs would withdraw both the executives on Plaintiffs' prioritized list (Mr. Berkowitz and Mr. Crawford).  While Plaintiffs have agreed they would agree to remove Mr. Berkowitz, we do not think it appropriate to remove Kermit Crawford.  The documents produced to date indicate that Mr. Crawford had a significant role in creating and approving policies and procedures related to diversion and in communicating with Walgreens senior leadership and the teams implementing those policies and procedures - including during the time period before the RX Integrity Team became active in 2013.

Plaintiffs' proposal would leave Walgreens producing a *total of 35 custodians* at this time, with a possibility to produce legal and compliance officers later if appropriate. For one of the top distributors of opioids into the track one jurisdictions, with dozens of distribution centers supplying thousands of pharmacies, this number is eminently reasonable. To allow Walgreens to artificially limit its custodians to an even lower number would reward it for its original deficient certification of custodians and deprive the Court and Plaintiffs of important evidence.

Thank you for your consideration,

**Laura S. Dunning**
*Of Counsel*
*Securities and Business Litigation*
Levin, Papantonio, Thomas, Mitchell,
Rafferty & Proctor, P.A.
205-396-5014
ldunning@levinlaw.com

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, DO NOT READ IT. PLEASE IMMEDIATELY REPLY TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR. THEN DELETE IT. THANK YOU.

---

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

You're receiving this message because you're a member of the MDL 2804 group from Motley Rice, LLC. To take part in this conversation, reply all to this message.

View group files  |  Leave group  |  Learn more about Office 365 Groups

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

**From:** Kate Swift <kate.swift@bartlitbeck.com>
**Sent:** Monday, October 29, 2018 5:47:28 PM
**To:** Dunning, Laura; david@specialmaster.law
**Cc:** 2804 Discovery, MDL; MDL 2804; cathy@cathyyanni.com; Mougey, Peter; xALLDEFENDANTS-MDL2804-Service@arnoldporter.com
**Subject:** RE: EXTERNAL-RE: Plaintiffs' Submission to re Walgreens Custodians

David,

I write to respond to your questions about Walgreens custodial files.  Before the hearing last Tuesday, we had agreed to add 9 custodians, for a total of 30.

After the hearing we agreed to add 5 more, for a total of 35, **if** plaintiffs would agree to remove two senior executives from the list, Mr. Crawford and Mr. Berkowitz, and confirm they would not seek custodial files from in-house lawyers.  We told them that if they did not agree, we would not agree to add so many additional custodians.  Instead of continuing to negotiate, Plaintiffs preemptively went to you, insisting on production of files from Mr. Crawford, now COO at Rite Aid.

Plaintiffs asserted to you last Wednesday that they want Mr. Crawford's files because he was involved in developing policies and procedures related to diversion, and because he communicated with Walgreens senior leadership before 2013.  But Walgreens' existing custodian list already includes several witnesses who cover that same subject matter, including a VP on the Pharmaceutical Integrity team who has been with Walgreens since well before 2013 and was much more centrally involved in developing those policies and procedures and communicating with senior leadership on diversion.  Walgreens' VP of Pharmacy Operations is also a custodian and has been at Walgreens since well before 2013.  Walgreens has also added a former chief audit executive to its custodian list who held that role years before 2013.

Mr. Crawford's files are not necessary or proportional to the needs of these cases.  Even without Mr. Crawford's files, the new custodians have added well over 100,000 documents to our review population.  This is a significant burden that pushes us beyond the November 9 production deadline and threatens to delay the schedule.  If Walgreens is forced to produce Mr. Crawford's files, we should not have to produce files from so many other additional custodians, which we agreed to add only as part of a compromise with Plaintiffs if they agreed to take Mr. Crawford off the table.

We request reconsideration of your decision to require production of Mr. Crawford's files.  At the very least, the request should be denied for now, without prejudice to plaintiffs raising it later for good cause.  If that request is denied, we again ask you to formalize your ruling.

Thank you,
Kate

**BartlitBeck** LLP

Katherine M. Swift | p: 312.494.4405 | c: 773.531-6118 | Kate.Swift@BartlitBeck.com | Courthouse Place, 54 West Hubbard Street, Chicago, IL 60654

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

---

**From:** Laura Dunning <ldunning@levinlaw.com>
**Sent:** Monday, October 29, 2018 11:21 AM
**To:** david@specialmaster.law
**Cc:** Kate Swift <kate.swift@bartlitbeck.com>; 2804 Discovery, MDL <mdl2804discovery@motleyrice.com>; MDL 2804 <MDL2804@motleyrice.com>; cathy@cathyyanni.com; Peter Mougey <pmougey@levinlaw.com>
**Subject:** RE: EXTERNAL-RE: Plaintiffs' Submission to re Walgreens Custodians

Special Master Cohen,

Attached is a letter from Peter Mougey in response to your inquiry of Saturday evening.  Please let us know if additional information would be helpful.

Thank you,
Laura Dunning

**Laura S. Dunning**
205-396-5014
ldunning@levinlaw.com



---

**From:** 2804 Discovery, MDL <mdl2804discovery@motleyrice.com>
**Sent:** Saturday, October 27, 2018 3:30 PM
**To:** MDL 2804 <MDL2804@motleyrice.com>
**Subject:** FW: EXTERNAL-RE: Plaintiffs' Submission to re Walgreens Custodians

---

**From:** David R. Cohen <David@SpecialMaster.Law>
**Sent:** Saturday, October 27, 2018 8:28:36 PM
**To:** Moore, Kelly A.; Kate Swift
**Cc:** Dunning, Laura; xALLDEFENDANTS-MDL2804-Service@arnoldporter.com; 2804 Discovery, MDL; Cathy Yanni; Mougey, Peter
**Subject:** EXTERNAL-RE: Plaintiffs' Submission to re Walgreens Custodians

Kelly, the ruling goes only to production of Crawford's custodial file from when he was at Walgreens - not deposing him - so I don't see how his current position at Rite Aid is relevant to that.

Peter, I know we and also Kate Swift discussed Walgreens custodians starting at p.72 of the transcript.

Can you please remind me where custodian negotiations with Walgreens stood at the beginning of the day on Tues 10/23, what you and Kate were able to resolve, and what you left for me to resolve, and why you wanted those remaining folks when you left it to me.

Thx.

-d

=============================
This email sent from:
David R. Cohen Co. LPA
24400 Chagrin Blvd., Suite 300
Cleveland, OH 44122
216-831-0001 tel
866-357-3535 fax
**www.SpecialMaster.law**


-------- Original Message --------
Subject: RE: Plaintiffs' Submission to re Walgreens Custodians
From: "Moore, Kelly A." <kelly.moore@morganlewis.com>
Date: Fri, October 26, 2018 8:00 pm
To: "Kate Swift" <kate.swift@bartlitbeck.com>, "David R. Cohen"
<david@davidrcohen.com>
Cc: "Laura Dunning" <ldunning@levinlaw.com>,
"xALLDEFENDANTS-MDL2804-Service@arnoldporter.com"
<xalldefendants-mdl2804-service@arnoldporter.com>,
"MDL2804discovery@motleyrice.com" <mdl2804discovery@motleyrice.com>,
"Cathy Yanni" <cathy@cathyyanni.com>

Special Master Cohen:

We represent Rite Aid in the MDL and in connection with the below request and referenced ruling
wanted to advise you that Kermit Crawford, although a former Walgreens employee, is Rite Aid
Hdqtrs Corp.'s current President and Chief Operating Officer.  We respectfully request that you
reconsider your ruling as to him in light of that information before formalizing it.

Respectfully, Kelly


Kelly A. Moore
Morgan, Lewis & Bockius LLP
101 Park Avenue | New York, NY 10178-0060
Direct: +1.212.309.6612 | Main: +1.212.309.6000 | Fax: +1.212.309.6001
kelly.moore@morganlewis.com | www.morganlewis.com
Assistant: Donna C. Weekes | +1.212.309.7172 | donna.weekes@morganlewis.com

**From:** Kate Swift <kate.swift@bartlitbeck.com>
**Date:** Friday, Oct 26, 2018, 1:36 PM
**To:** David R. Cohen <david@davidrcohen.com>
**Cc:** Laura Dunning <ldunning@levinlaw.com>, xALLDEFENDANTS-MDL2804-
Service@arnoldporter.com <xalldefendants-mdl2804-service@arnoldporter.com>,
MDL2804discovery@motleyrice.com <mdl2804discovery@motleyrice.com>
**Subject:** RE: Plaintiffs' Submission to re Walgreens Custodians

[EXTERNAL EMAIL]
David,

We ask that you formalize your ruling below regarding Walgreens custodians,
pursuant to the Court's Appointment Order.  See Doc. 69 at 5.

Thanks.

BartlitBeck LLP

Katherine M. Swift | p: 312.494.4405 | c: 773.531-6118 | Kate.Swift@BartlitBeck.com | Courthouse Place, 54 West Hubbard Street, Chicago, IL 60654

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

---

**From:** David R. Cohen <david@davidrcohen.com>
**Sent:** Wednesday, October 24, 2018 12:14 PM
**To:** Kate Swift <kate.swift@bartlitbeck.com>
**Cc:** Laura Dunning <ldunning@levinlaw.com>; xALLDEFENDANTS-MDL2804-Service@arnoldporter.com; MDL2804discovery@motleyrice.com
**Subject:** Re: Plaintiffs' Submission to re Walgreens Custodians

In addition to those already agreed to, Walgreens will also produce the custodial file for Mr. Crawford.

Plaintiffs can come back to me with regard to any custodian for any defendant if further discovery reveals a very high likelihood of additional nonduplicative discovery.  But the burden is very high, and extremely high for in-house counsel, as previously stated.

Sent from my cell phone
David R. Cohen
On Oct 24, 2018, at 12:30 PM, Kate Swift <kate.swift@bartlitbeck.com> wrote:

David,

We have agreed to add 14 custodians (up from 9), including custodians from all of the categories Mr. Mougey talked about yesterday in the hearing. Plaintiffs' assertions about the depositions that have happened so far are incorrect. But setting that aside, we agreed to add all but two custodians on the list we shared with you yesterday. Mr. Mougey never mentioned either one of those two, Mr. Crawford or Mr. Berkowitz, to you in court yesterday.

Additionally, after agreeing to remove lawyers from the universe of custodians still under discussion, ie, the 16 on our list, plaintiffs are now holding out the purported need to seek their files later. This conflicts with your previous guidance on seeking custodial files from lawyers.

Walgreens has agreed to add 14 custodians for a total of 35. This is more than sufficient and proportional, and Plaintiffs' request for more should be denied.

BartlitBeck LLP

Katherine M. Swift | p: 312.494.4405 | c: 773.531-6118 | Kate.Swift@BartlitBeck.com |Courthouse Place, 54 West Hubbard Street, Chicago, IL 60654

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

On Oct 24, 2018, at 12:19 PM, Laura Dunning < ldunning@levinlaw.com>
wrote:

Special Master Cohen,

Walgreens's own Pharmaceutical Integrity Manager, the position Walgreens's counsel
represented was most knowledgeable about diversion and suspicious order monitoring,
testified that he never reviewed any suspicious order reports or conducted due diligence
on pharmaceutical diversion related to suspicious orders. He testified that, in order to
obtain discovery on that information, Plaintiffs needed to obtain discovery from the
distribution centers themselves, from local loss prevention managers, from legal, and
from compliance. He then testified that the persons with relevant knowledge could
comprise as many as a hundred people.  Walgreens certified list of 21 custodians did
not include custodians from the roles its own managerial witness testified were most
relevant.

Plaintiffs sought to add a targeted list of 26 custodians to the list in order to fill those
gaps in Walgreens certified list, both from a geographic and subject matter
perspective.  On your instruction, Plaintiffs then prioritized and narrowed that list to
15-16 additional custodians, most of whom Plaintiffs have been seeking since July.
This week, Plaintiffs further agreed to give up two additional custodians (a former
executive and an Ohio pharmacy operations), and to table the consideration of
compliance and legal custodians until further discovery can be conducted in order to
reach an agreement. That would leave Walgreens producing *35 total custodians* at this
time, with a potential to produce legal and compliance custodians later if appropriate.

Walgreens rejected the officer and now refuses to produce the relevant custodians,
including the "on the ground" custodians its own Rx Integrity Manager testified who
would have information about due diligence actually performed on suspicious orders
from the loss prevention department, which predated the Rx Integrity group (which
was not active until 2013) and the custodians from the distribution center which
distributed hydrocodone to Ohio from 2013-2014, unless Plaintiffs will agree to give
up any requests for legal and compliance officer custodians, as well as *both* executives
on Plaintiffs' prioritized list.

The two Walgreens witnesses deposed to date, both of whom were recommended by
Walgreens, have testified that legal and compliance play a significant role in
Walgreens's diversion prevention and suspicious order monitoring and reporting under
the Controlled Substance Act.  While Plaintiffs are willing to table consideration of
these custodians for now, Plaintiffs do not believe it is appropriate to take them off the
list completely without reviewing the production, which is not yet complete, and
further developing discovery on the issue.

Walgreens countered a few minutes ago that it would agree to Plaintiffs' proposal, but
only if Plaintiffs would withdraw both the executives on Plaintiffs' prioritized list (Mr.
Berkowitz and Mr. Crawford).  While Plaintiffs have agreed they would agree to
remove Mr. Berkowitz, we do not think it appropriate to remove Kermit
Crawford.  The documents produced to date indicate that Mr. Crawford had a
significant role in creating and approving policies and procedures related to diversion
and in communicating with Walgreens senior leadership and the teams implementing

those policies and procedures - including during the time period before the RX Integrity Team became active in 2013.

Plaintiffs' proposal would leave Walgreens producing a ***total of 35 custodians*** at this time, with a possibility to produce legal and compliance officers later if appropriate. For one of the top distributors of opioids into the track one jurisdictions, with dozens of distribution centers supplying thousands of pharmacies, this number is eminently reasonable. To allow Walgreens to artificially limit its custodians to an even lower number would reward it for its original deficient certification of custodians and deprive the Court and Plaintiffs of important evidence.

Thank you for your consideration,

**Laura S. Dunning**
*Of Counsel*
*Securities and Business Litigation*
Levin, Papantonio, Thomas, Mitchell,
Rafferty & Proctor, P.A.
205-396-5014
ldunning@levinlaw.com

<image001.png>

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, DO NOT READ IT. PLEASE IMMEDIATELY REPLY TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR. THEN DELETE IT. THANK YOU.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

You're receiving this message because you're a member of the MDL 2804 group from Motley Rice, LLC. To take part in this conversation, reply all to this message.

View group files  |  Leave group  |  Learn more about Office 365 Groups

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.