# Exhibit A



James B. McHugh                                                           Michael J. Fuller, Jr.

February 15, 2019

**VIA ELECTRONIC MAIL: david@specialmaster.law**
David R. Cohen
**David R. Cohen Co. LPA**
24400 Chagrin Blvd., Suite 300
Cleveland, OH 44122

      **RE:    MDL 2804: PEC's Reply in Opposition to Cardinal Health's Opposition to Discovery Ruling No. 14, Part 1 (Doc. No. 1344)**

Dear Special Master Cohen:

## I.    PLAINTIFFS' PRELIMINARY OBJECTION

Plaintiffs object to the timeliness of the 2/6/2019 Objection to Discovery Ruling No. 14, Part I filed by Cardinal (Doc. No. 1344) ("Cardinal's Objection"). Although Judge Polster may not have been aware, Cardinal's deadline for filing its objection to Discovery Ruling No. 14, Part I (Doc. No. 1321) ("the Ruling") was 5:00 pm on February 6, 2019.[1] This deadline was already a two-day extension of the previous deadline set by the Special Master.[2] However, Cardinal's Objection was not filed until after 7:30 pm on February 6, 2019.[3] Accordingly, Plaintiffs challenge Cardinal's Objection as untimely, and hereby assert that the Ruling should stand.

## II.    CARDINAL CLAWBACK OF 2.8 MILLION DOCUMENTS (AGENDA ITEM 129)

Cardinal has objected to this portion of the Ruling for finding that Cardinal had waived privilege with respect to Category Two documents (those which Cardinal produced to the DEA in 2008 and never clawed-back or attempted to claw-back until 2018 - in MDL 2804). Cardinal inaccurately claims that, back in 2008, it was not on notice that the Category Two documents were inadvertently disclosed to the DEA, and that it was not obligated to conduct a further review of the documents. Cardinal also incorrectly asserts that it had no reason to follow-up on potential inadvertently disclosed documents (to the DEA in 2007 and 2008) because it settled with the DEA "shortly after" it completed its production. However, these claims by Cardinal (including its new claims and arguments) ignore and/or misrepresent a) the

---

[1] *See* 2/3/2019 email chain between E. Mainigi and Special Master Cohen.
[2] *Id*.
[3] The Notice of Electronic Filing for Cardinal's Objection (Doc. No. 1344) states: "The following transaction was entered by Pyser, Steven on 2/6/2019 at 7:31 PM EST and filed on 2/6/2019".

**McHugh Fuller Law Group**

James B. McHugh, Licensed in: Alabama, Arkansas, Florida, Georgia, Kentucky, Mississippi, Missouri, Oklahoma, Pennsylvania, Tennessee, Texas, Washington, D.C., West Virginia, and Wisconsin
Michael J. Fuller, Jr., Licensed in: Florida, Georgia, Kentucky, Michigan, Mississippi, Missouri, New Hampshire, New York, Ohio, Pennsylvania, Tennessee, Washington, D.C., West Virginia, and Wisconsin
97 Elias Whiddon Road, Hattiesburg, MS 39402
Toll Free Number: 800-939-5580 | Fax: 601-261-2481
www.mchughfuller.com | info@mchughfuller.com

relevant rules and jurisprudence,[4] b) critical facts which were known to Cardinal at the time of its 2007-2008 production to the DEA,[5] and c) the facts surrounding the various reasons why the documents needed to be clawed back in 2008.[6]

## Applicable Legal Standards

As detailed in the PEC's 1/6/2019 letter brief, and as uncontradicted by Cardinal, the party claiming "inadvertent disclosure not resulting in waiver" must establish, with <u>specific and detailed proof</u>, that it has met <u>all three</u> sub-elements of Fed. R. Evid. 502(b) – i.e., 1) that the disclosure was truly inadvertent, 2) that it took reasonable steps to prevent disclosure, <u>and</u> 3) that it promptly took reasonable steps to rectify the error.[7] Failure of Cardinal to prove any one of these three sub-elements constitutes a waiver. As set forth below, Cardinal failed to prove multiple sub-elements of Fed. R. Evid. 502(b).

## Law and Argument

One the one hand, for Category One documents, Cardinal offers proof of inadvertent disclosure by claiming that it identified and clawed-back (in 2008) large numbers of documents, and on the other hand, for Category Two documents, Cardinal claims that it was not on notice of problems (in 2008) with its inadvertent productions to the DEA. If Cardinal's claim relative to Category One documents (that it clawed-back 5 <u>discs</u> of privileged documents from the DEA in 2008) is accepted, then Cardinal cannot reasonably claim that, for Category Two documents, it was unaware of a major inadvertent disclosure problem back in 2008. The jurisprudence and the evidence prevent Cardinal from successfully advancing these contradictory arguments.

### A. Cardinal Failed to Prove it Took Reasonable Steps to Prevent Disclosure of Category Two Hard Copy Documents

To support "inadvertent disclosure not resulting in waiver", the party must prove (in addition to other requirements) that it "took reasonable steps to prevent disclosure". *See* Fed. R. Evid. 502(b)(2). Moreover, the party claiming inadvertent disclosure needs to set forth specific facts relative to the steps taken to prevent disclosure. *Williams v. District of Columbia*, 806 F. Supp. 2d 44, 48-49 (D.D.C. 2011) (finding waiver because "most importantly, the [party claiming inadvertent production] has utterly failed to explain its 'methodology' for review and production. … [as it] does not indicate when its review occurred, how much time it allocated to the review of documents, the nature of the reviewer's experience, the extent of the alleged supervision of an attorney, whether it conducted multiple rounds of review, how it segregated privileged documents from non-privileged documents, and other basic details of the review process."). *See also*, *Peterson v. Bernardi*, 262 F.R.D. 424, 429 (D.N.J.2009) (finding waiver where the privilege holder set-forth that he "engaged in a privilege review" but "does not state when his review occurred, how much time he took to review the documents, what documents were reviewed, and other basic details of the review process.").

---

[4] For example, Cardinal cites CMO-2's "relaxed" requirements for Rule 502(b) as a purported relevant standard. *See* Cardinal's Objection at pp. 2-3. However, the 1/31/2019 Ruling clearly (and correctly) outlines that CMO-2 did <u>not</u> apply to Cardinal's 2008 production to the DEA – which is when the waiver occurred. *See* the Ruling at p. 10.
[5] *See* Section II.B., *infra*.
[6] *See* Section II.C., *infra*.
[7] *See* PEC's 1/6/2019 letter brief at pp. 2-3.

Here, with respect to the Category Two <u>hard copy</u> documents, the evidence submitted by Cardinal, as to the methodology for review and production, is scant and does not carry the burden required for proving that reasonable steps were taken to prevent disclosure.[8] This lack of information as well as the insufficiency of the hard copy review is illustrated by a comparison to what Cardinal has set-forth relative to its review of electronically stored information.[9] Regarding its Category Two hard copy review, Cardinal "utterly failed" to prove or even identify "when its review occurred, how much time it allocated to the review of documents, the nature of the reviewer's experience, the extent of the alleged supervision of an attorney, whether it conducted multiple rounds of review, how it segregated privileged documents from non-privileged documents, and other basic details of the review process", and thus has waived privilege.[10]

### B. Cardinal Did Not Take Prompt and Reasonable Steps to Rectify

Cardinal must <u>also</u> prove that it "promptly took reasonable steps to rectify the error". *See* Fed. R. Evid. 502(b)(3). While "the rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake", it "does require the producing party to follow up on any obvious <u>indications</u> that a protected communication or information has been produced inadvertently."[11] "As a result, once a party is on notice that 'something [i]s amiss with its document production and privilege review [,]' that party must "promptly re-assess its procedures and re-check its production." *D'Onofrio v. Borough of Seaside Park*, No. 09–6220, 2012 WL 1949854, at *15 (D.N.J. May 30, 2012) (citing *U.S. v. Sensient Colors, Inc.*, 2009 WL 2905474, at *5 (D.N.J. 2009).[12]

Relative to its 2008 production to the DEA, Cardinal was aware, <u>at that time</u>, that it had significant inadvertent production issues. First and foremost, Cardinal claims that during its production in 2008, it clawed-back "five <u>discs</u> containing privileged documents that were inadvertently produced to the DEA".[13] This was an obvious indication to Cardinal in 2008 that "something was amiss with its document production and privilege review" requiring it to "promptly re-assess its procedures and re-check its production."[14] Second, Cardinal's 2008 production cover letters stated obvious issues and concerns regarding inadvertent disclosures to the DEA, and specifically contemplated following-up to notify the DEA of same.[15] Accordingly, Cardinal "should have taken prompt and diligent steps to re-assess its

---

[8] *See* Tucker Decl. ¶ 17 (Exhibit A to Cardinal's Opposition) ("Hard copy documents were reviewed by attorneys in BakerHostctler's New York office. Documents were reviewed for attorney-client privileged communications and attorney work product.").

[9] *See* Tucker Decl. ¶ 18.

[10] *Williams*, 806 F. Supp. 2d at 48-49.

[11] Fed. R. Evid. 502, Advisory Committee Notes (Nov. 28, 2007) cmt. b. (Emphasis added).

[12] *See also*, *Preferred Care Partners Holding Crop v. Humana, Inc.*, No. 08–20404–CIV, 2009 WL 982449, at *14 (S.D.Fla. April 9, 2009) ("In light of the fact that Humana was aware that it inadvertently produced a number of documents which it believed to contain privileged information, Humana had an obligation ... to ensure that no additional privileged documents were divulged."). NOTE: Cardinal attempts to fault that "[t]he Ruling does not cite any legal authority, but proceeds from the premise that Cardinal Health was obligated to discover the inadvertent disclosure and seek a claw-back of the documents at the time of production …" *See* Cardinal Opposition at pp. 5-6. However, the cases cited herein (as well as in PEC's 1/6/2019 letter brief) clearly provided such legal authority.

[13] *See* Tucker Decl. ¶ 11.

[14] *Sensient*, 2009 WL 2905474, at *5.

[15] *See* Tucker Decl. ¶ 19 ("Because of the volume of records that have been produced and that will continue to be produced and the speed with which Cardinal Health is attempting to produce them, Cardinal Health requests and expects that DEA will

document production", and in failing to do so, it did not satisfy its burden under Rule 502(b)(3) and waived privilege.[16]

### C. Cardinal is Incorrect That it Had No Reason to Rectify its Production Errors

Cardinal claims that, with respect to the Category Two documents, it "never had a need to make any further determinations regarding privilege".[17] This claim, and Cardinal's misguided reasons for same, are contradicted and/or unsupported by the law and the facts. As a fundamental matter, Rule 502(b)(3) and the jurisprudence negate such an assertion. Further, Cardinal's "never had a need" claim is inconsistent with the principle that "the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived." *In re Sealed Case*, 877 F.2d 976, 980 (D.C.Cir.1989). Moreover, there are several facts, grouped into the following two categories, which eviscerate Cardinal's "never had a need" argument.

#### 1. The settlement did not end the need for further privilege claw-backs efforts.

Cardinal's 10/2/2008 settlement with the DEA was not some kind of tort settlement where the parties agree to go their separate ways and release all present and future claims. Indeed, subsequent to the settlement, the DEA continued to have regulatory authority over Cardinal's conduct. Basic prudence would dictate the need to recoup any inadvertently produced material from the DEA. The 10/2/2008 Cardinal/DEA settlement agreement itself dictated that Cardinal would have several extra ongoing obligations to the DEA – in some instances for years.[18] Moreover, and maybe most notably, the settlement ***reserved the DEA's right to seek to introduce evidence of Cardinal's pre-settlement conduct in any other administrative proceeding against Cardinal for non-covered conduct***.[19] Cardinal had many reasons to continue privilege review efforts after the settlement (especially with knowledge of a massive prior inadvertent production).

#### 2. Cardinal failed to establish how long it had to make privilege determinations.

Assuming *arguendo* that Cardinal's settlement with the DEA truly ended any possibility for concern with having privileged materials remain in the hands of a third party (particularly one with regulatory oversight power), Cardinal still has not proven the length of time that transpired between its massive 2008 claw-back of documents from the DEA, and the October 2, 2008 settlement with the DEA (i.e., the time frame when Cardinal unquestionably should have been concerned and should have taken action relative to the Category Two documents). The Tucker Declaration does not identify the date, the month, or even the time of year in 2008 when this large claw-back was made. The only timing indication

---

return to Cardinal Health, upon request, any documents that we later discover to be privileged or otherwise protected and to have been inadvertently produced.).

[16] *Sensient*, 2009 WL 2905474, at *5. (After failing to take prompt and diligent steps to re-assess its document production and privilege issues within approximately 2 months of learning of its first set of inadvertent disclosures, the court held that "plaintiff did not take reasonable precautions to rectify its error. Therefore, since plaintiff did not satisfy its burden under Rule 502(b)(3), it waived its privilege and work product [claims]").

[17] Cardinal's Opposition at p. 6.

[18] *See* Ex. A attached hereto – 10/2/2008 Cardinal/DEA Settlement, at pp. 3-6, ¶¶ 1.a - 1.i (e.g. providing reports directly to DEA HQ for 5 years, conducing a retrospective analysis of controlled substance distributions, etc.).

[19] *See* Ex. A at pp. 7-8, ¶ 4. Additionally, this reservation covered all government agencies, allowing the DoJ, any State attorney general, etc. to initiate any proceeding/action against Cardinal, <u>and</u> allowed the DEA to cooperate with any such agency.

provided in the Tucker Declaration is the misleading and vague claim that the settlement with the DEA was reached "[s]hortly after the productions to DEA in 2008 were <u>completed</u>".[20] This is misleading because the relevant start date (prior to the settlement) is when Cardinal knew it needed to claw-back 5 entire discs worth of documents, not when Cardinal completed its production. This is vague because "shortly after" can mean days, weeks or months. Regardless, the lack of specificity hurts Cardinal's case.

### III. DOCUMENTS CLAWED BACK BY CARDINAL HEALTH (AGENDA ITEM 82)

To determine whether a document constitutes work product, i.e., was prepared in anticipation of litigation, a court starts with two questions, both of which the work product claimant has the burden to prove: "(1) whether that document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir.2009) (citing *United States v. Roxworthy*, 457 F.3d 590, 594). The party asserting work product protection also bears the burden of showing that "anticipated litigation was the driving force behind the preparation of each requested document." *In re Professionals Direct Ins. Co.*, 578 F.3d at 439 (quoting *Roxworthy*, 457 F.3d at 595) (internal quotation marks and citations omitted).

In order to prove work product protection, "a party may satisfy its burden of showing anticipation of litigation 'in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories,' and that the showing 'can be opposed or controverted in the same manner.'" *Roxworthy*, 457 F.3d at 597 (quoting *Toledo Edison Co. v. G A Techs., Inc.*, 847 F.2d 335, 339 (6th Cir.1988)). "However, application of the privilege will be rejected where the only basis for the claim is an affidavit containing conclusory statement[s]." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir.2009) (internal quotation marks and citation omitted) (alteration in original). Moreover, the claimant must prove with specificity that it subjectively anticipated litigation when it prepared each document. *Id*. at 382.

While Plaintiffs do not have access to the new materials submitted *in camera* by Cardinal, and thus cannot directly address same, and while Cardinal appears to focus on possible future litigation with the DEA, Cardinal states that it retained Milbank Tweed (the outside counsel involved with the clawed-back documents) as counsel to the Special Demand Committee of the Board to investigate the shareholder allegations.[21] Cardinal further states that Milbank Tweed's use of this document was in connection with its investigation of the shareholder allegations.[22] Considering same, Cardinal was required to come forth with detailed evidence proving the above requirements with respect to the shareholder investigation, and Cardinal's brief contains nothing more than conclusory statements – which fall short of meeting its burden.[23] Moreover, even if Cardinal's new submissions allow it to meet its burden, that is still only the first step – because the clawed-back materials would still be discoverable and/or subject to waiver – as set-forth *infra*.

### A. The Charts Are Not Protected from Disclosure

---

[20] *See* Tucker Decl. ¶ 15. (Emphasis added).
[21] *See* Cardinal's Objection at p. 8.
[22] *Id*. at pp. 8-9.
[23] *Biegas*, 573 F.3d at 381-382.

_____

Fed.R.Civ.P. 26(b)(3)(A) addresses obtaining documents (from an opposing party) which are otherwise legitimately subject to protection under the work product doctrine. Work product documents prepared in anticipation or in the course of litigation are still subject to discovery if certain requirements can be met by the party seeking their production. These requirements are set-forth in Fed.R.Civ.P. 26(b)(3)(A), which states:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4) [involving experts], those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1) [i.e., are relevant]; and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Consistent with Fed.R.Civ.P. 26(b)(3)(A), the 6th Circuit allows an opposing party to discover "fact" work product "upon a showing of substantial need and inability to otherwise obtain without material hardship." *Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. June 10, 2002) (citing *Toledo Edison Co. v. G.A. Technologies, Inc.*, 847 F.2d 335, 339–40 (6th Cir.1988)).

Cardinal does not contest that the charts at issue are relevant, and thus, satisfaction of Fed.R.Civ.P. 26(b)(3)(A)(i) is undisputed. Rather, Cardinal argues that "[t]he charts do not contain unique information about Cardinal Health's SOM system."[24] However, Plaintiffs have shown that the charts are "sufficiently unique and important", and that neither the equivalent of the charts nor information in the charts can be obtained "without undue hardship".[25] Short of repeating everything previously submitted, Plaintiffs summarize some prior key points:

1) The charts outline factual details of Cardinal's suspicious order monitoring system (SOMS) – and these facts are at the heart of the litigation – so much so that the Court ordered all defendants (including Cardinal) to "respond **fully** to all discovery seeking information regarding their Suspicious Order Monitoring Systems (SOMS)" and for defendants to produce "discovery of **all details** of their SOMS".[26]

2) Even after the 11/21/2018 Order from Judge Polster, Cardinal's 11/30/2018 discovery responses (which should have provided all details of their SOMS over the years) do not come close to providing the SOMS facts set-forth in the charts.[27]

_____

[24] *See* 2/6/2019 Cardinal Opp. at p. 13.
[25] *See* 12/9/2018 PEC letter brief at pp. 2-3. *See also*, *Carr v. C.R. Bard, Inc.*, 297 F.R.D. 328, 333–34 (N.D. Ohio 2014) (A party seeking discovery can show the documents are "sufficiently unique and important, as compared to other possible sources of the same information, to justify overriding work product protection."); Fed.R.Civ.P. 26(b)(3)(A)(ii).
[26] *See* 11/21/2018 Order (Doc No. 1147), at p. 1, ¶1 (emphasis added). *See also*, 12/6/2018 Order (Doc. No. 1169), at p. 2 (applying the order to all defendants).
[27] *See* 12/9/2018 PEC letter brief at pp. 2-3, and Ex. D attached thereto.

_____

      3) Plaintiffs have been forced to bring numerous motions with Special Master Cohen as part of ongoing and extensive efforts to obtain from other sources the type of information contained within the charts, and as such, the Special Master is keenly aware of not only the need for the facts from the charts, but also the efforts and inability of Plaintiffs to obtain their substantial equivalent.[28]

      4) Cardinal's 30(b)(6) and other testimony on this topic significantly lacked much of the information contained within the charts. Cardinal's 30(b)(6) witness testified, with respect to Cardinal's SOM-related actions during a critical 2006-2007 time period, that Cardinal "does not have present knowledge about the actions and timing of the actions that were taken during that period presently."[29] This is especially important, as this "unknown" factual information is detailed in the charts.

      Even Cardinal's recent 1/24/2019 written response to <u>supplement</u> its 30(b)(6) testimony does <u>not</u> contain the details from the charts – or anything close to their substantial equivalent.[30] This is particularly noteworthy because it further proves that: a) Plaintiffs' hardship has resulted in having to agree to written 30(b)(6) responses in order to <u>try</u> and obtain the information, b) the factual information contained in the charts is sufficiently unique and important (such that it cannot even be obtained through supplemental written discovery responses), and c) after many months, Plaintiffs <u>still</u> cannot obtain the equivalent of the information provided in the charts, even after multiple highly focused written inquiries. Accordingly, Plaintiffs have met all requirements of Fed.R.Civ.P. 26(b)(3)(A), and the charts can be discovered – even if Cardinal's work product claim is found to be valid.[31]

      As for Cardinal's bare allegation that "the charts contain attorneys' advocacy in a comparison of the features of the system at different times",[32] it does not satisfy Cardinal's burden of proving same.[33] Indeed, the charts speak for themselves – and clearly outline <u>facts</u> about Cardinal's suspicious order monitoring system over different periods.[34] The charts contain simple and straightforward SOMS details about: "Personnel Resources", "Suspicious Order Monitoring System", "KYC" [know your customer], anti-diversion organizational structure, and training.[35] Moreover, the charts provide SOMS details during

---

[28] *See e.g*., Discovery Teleconference Agenda Nos. 84 (Plaintiffs' Motion regarding Cardinal's SOM productions from 3rd parties or interference with 3rd party productions), 122 (Plaintiffs' request for Cardinal Health to produce details of its Suspicious Order Monitoring Systems), 123 (Request to Re-open 30(b) Deposition of Cardinal Health).
[29] *See* Ex. B attached hereto – Excerpt of Cardinal's 30(b)(6) testimony at pp. 292-295.
[30] *See* Ex. C attached hereto – Cardinal's 1/24/2019 written response to supplement 30(b)(6) testimony.
[31] *Stampley v. State Farm Fire & Cas. Co.*, 23 Fed. Appx. 467, 471 (6th Cir. 2001) ("Substantial need consists of the relative importance of the information in the documents to the party's case and the ability to obtain that information by other means."). Moreover, Cardinal's reliance on *Stampley* is inapposite as Plaintiffs herein could not have deposed the person who created the clawed-back charts at issue (Plaintiffs herein did not know the person's identity, could not have reasonably discovered same prior to the deposition cut-off date, and based on Cardinal's representation, said person appears to have had a purely administrative role in the creation). *Id*.
[32] *See* 2/6/2019 Cardinal Opp. at p. 14.
[33] *Biegas*, 573 F.3d at 382. *See also*, *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 296 (W.D. Mich. May 30, 1995) ("Opinion work product protection is not triggered unless 'disclosure creates a real, non-speculative danger of revealing the lawyer's mental impressions' and the attorney had 'a justifiable expectation that the mental impressions revealed by the materials will remain private.'") (quoting *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1015–16 (1st Cir.1988)).
[34] *See* Exs. B & C to 12/9/2018 PEC submission.
[35] *Id*.

the 2006-2007 time period – a period (with respect to its SOMS details) that Cardinal "does not have present knowledge about".[36]

## B. The Email and Charts Are Not Privileged

Cardinal's arguments are defeated by Plaintiffs' prior filing.[37] Documents not conveying legal advice are not entitled to privilege treatment, and neither the attorney client privilege nor the work product doctrine protect underlying facts. The documents at issue fall under both categories – not seeking or providing legal advice, and only containing pre-existing facts.

Plaintiffs also submit that Cardinal has waived the privilege over this document as parts of it (unfortunately the non-important parts for Plaintiffs' purposes) were part of and/or underlying Cardinal's April 12, 2013 Investigation Report of the Special Demand Committee ("2013 Report"). Importantly, this 2013 Report was published to to the public at large.[38] Rule 502(a) of the Federal Rules of Evidence governs the issue of whether an intentional waiver by a party of a document protected by the attorney-client privilege or work-product doctrine constitutes a general subject matter waiver as to other similar documents. "When the disclosure is made in a federal proceeding ... and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal ... proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together. *See* Fed.R.Evid. 502(a). The instant facts fit the requirements of Rule 502(a), as Cardinal unquestionably waived privilege regarding the 2013 Report, the documents at issue concern the same subject matter as the 2013 Report, and fairness requires for the charts to be disclosed.

In *Graff v. Haverhill North Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514 (S.D. Ohio 2012), the court was faced with a nearly identical set of facts as is present here, and in determining that waiver had occurred, the court held:

> The undersigned finds that it would be unfair to permit defendants to produce the final version of the ERM audit which concludes that HNCC was compliant with regulatory requirements, yet withhold the draft versions of the audit and other communications that may undermine or help explain the factual basis for this conclusion. While defendants disclaim any tactical advantage by voluntarily disclosing the final ERM audit because they "have not put the audit at issue" in this case, the absence of such a tactical use does not essentially mandate a finding of no waiver. *See In re OM Securities Litigation*, 226 F.R.D. 579, 590–91 (N.D.Ohio 2005) ("The Court must consider, not only whether there is a tactical benefit, but whether it is fair to uphold the privilege considering the nature of the disclosure."). Although the "audit" itself may not be "at issue," whether HNCC has been compliant with state and federal regulations during the relevant time frame in this lawsuit is at issue—an issue the final version of the ERM audit specifically addresses. Additionally, defendants' affirmative defenses assert that HNCC has been in substantial compliance with federal, state, and local statutes and regulations, and by making the subject matter of the final ERM audit (compliance with regulatory requirements) a defense in this action,

---

[36] *See* Ex. B attached hereto.
[37] *See* 12/9/2018 PEC letter brief at pp. 4-5,
[38] https://www.cardinalhealth.com/content/dam/corp/web/documents/Report/CH-Report-of-Special-Demand-Committee-April-12-2013-Redacted.pdf

_____

      defendants have placed the subject matter of the audit at issue. *See New Phoenix Sunrise Corp. v. C.I.R.*, 408 F. App'x 908, 919 (6th Cir.2010).[39]

Although Cardinal argues that the Discovery Ruling Regarding the "Teamsters Materials," Dkt. No. 835, Aug. 1, 2018 ("8/1/2018 Ruling") is on point, Plaintiffs disagree and see significant differences between the two situations. Unlike the underlying facts relating to the 8/1/2018 Ruling, the current facts prove that Plaintiffs have a substantial need for the documents and cannot obtain the information without undue hardship. Moreover, the charts at issue do not include "opinion work product" or other close-call materials such as the search terms, interviews, etc. at issue in the 8/1/2019 Ruling. As outlined *supra*, the charts contain facts and contain ordinary business information that does not disclose secrets of counsel – particularly since the documents here were not created by counsel. Finally, like in Graff, Cardinal's affirmative defenses assert that they have been in substantial compliance with all applicable regulatory requirements.[40]

                                            Respectfully submitted,

                                            /s/ Michael J. Fuller, Jr.

                                            Michael J. Fuller, Jr.

cc:     Enu Mainigi (*via* email)
          Neelum Wadhwani (*via* email)

Att

MJF/ej

---

[39] *Graff v. Haverhill North Coke Co.*, 2012 WL 5495514, at 17.
[40] See Ex. D – Cardinal's Affirmative Defenses.