# Exhibit 6

Highly Confidential Pursuant to Protective Order

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **Master Docket No. 1:17-MD-02804-DAP MDL No. 2804** |
| **This Document Relates to:** | **Hon. Dan A. Polster** |
| **ALL CASES** | |

### CARDINAL HEALTH, INC.'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST COMBINED DISCOVERY REQUESTS

Pursuant to Federal Rule of Civil Procedure 33 and 34 and agreements reached by the parties, Defendant Cardinal Health, Inc. ("Cardinal Health") serves these First Supplemental Objections and Responses to Plaintiffs' First Combined Discovery Requests (the "Requests").

### RESERVATION OF RIGHTS

1.      Cardinal Health's investigation and discovery are ongoing as to all matters referred to in these Objections and Responses to Plaintiffs' Requests.  Cardinal Health's Objections and Responses reflect its investigation to date.  Cardinal Health reserves the right to modify and supplement its Objections and Responses as appropriate.

2.      These Objections and Responses are made without in any way waiving or intending to waive: (i) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of information or documents produced in response to these Requests; (ii) the right to object on any ground to the use of the information or documents produced in response to the Requests at any hearings or at trial; (iii) the right to object on any ground at any time to a request for further responses to the Requests; or (iv) the right at any time to revise, correct, add to, supplement, or clarify any of the objections and responses contained herein.

1



Highly Confidential Pursuant to Protective Order

3.      The information and documents provided in response to these Requests are for use in this litigation and for no other purpose.  Any production of documents is subject to the Protective Order (Dkt. No. 441).

## GENERAL OBJECTIONS

The following Objections apply to each Request whether or not specifically referred to or incorporated in each response:

1.      Cardinal Health incorporates by reference any and all of its Objections to Plaintiffs' prior discovery requests, including Plaintiffs' prior Requests for Production of Documents and Plaintiffs' Interrogatories, as applicable, to the below requests.

2.      Cardinal Health objects to the Preamble to the Requests as mischaracterizing Cardinal Health's responses to Plaintiffs' prior discovery requests.  Cardinal Health's responses to prior written discovery responses were both appropriate and in conformance with the Federal Rules.

3.      Cardinal Health objects to the Preamble to the extent Plaintiffs suggest that Discovery Ruling No. 2 applies to these Requests.  Cardinal Health will comply with Discovery Ruling No. 3, which was entered by Special Master Cohen on July 17, 2018.

4.      Cardinal Health objects to each Request on the grounds that it exceeds the number of written Requests that Plaintiffs are allowed under CMO No. 1, Dkt. No. 232.

5.      Cardinal Health objects to the Requests to the extent that they purport to impose burdens on Cardinal Health that are inconsistent with, more onerous than, or not otherwise authorized by, the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Ohio, Case Management Orders 1-3, and Discovery Ruling No. 3.

**Highly Confidential Pursuant to Protective Order**

6.      Cardinal Health objects to the Requests to the extent they call for the production of information that is unreasonably cumulative or duplicative of Plaintiffs' prior written discovery requests, that is already in the possession, custody, or control of Plaintiffs or Plaintiffs' counsel, that is publicly available, or is available through less burdensome means.

7.      Cardinal Health objects to the Requests to the extent they seek "All Documents" when it would be unduly burdensome and not proportional to search for or produce each responsive document.

8.      Cardinal Health objects to these Requests to the extent they call for the production of information or documents that are protected from disclosure by the attorney-client privilege or the work product doctrine, or prepared in anticipation of litigation or for trial, or any other applicable privilege, protection, or immunity.  Cardinal Health does not agree to produce such information or documents.  In accordance with the Protective Order (Dkt. No. 441) and Federal Rule of Evidence 502(d), in the event any such protected information or documents are produced in response to these Requests, the production is inadvertent and does not waive Cardinal Health's right to assert the applicability of any privilege, protection, or immunity to information or documents, and any such documents shall be returned to counsel for Cardinal Health immediately upon discovery thereof.

9.      Cardinal Health objects to the Requests to the extent that they assume any fact, event, or legal conclusion is true or that any characterization is accurate.  No response is an admission of any factual characterization or legal contention contained in any individual Request.

**Highly Confidential Pursuant to Protective Order**

## OBJECTIONS & RESPONSES TO DISCOVERY REQUESTS

**Request No. 1:**

>Please produce all ***transactional data*** related to Opioids and/or Opioid Products for January 1, 1996 to the present; please identify the Bates stamp range for each related to *Case Track One*.

### Objection and Response to Request No. 1 (July 31, 2018):

Cardinal Health objects to this Request on the grounds that it exceeds the number of Requests allowed each party by CMO No. 1, Dkt. No. 232. Cardinal Health objects to the Request to the extent that it purports to impose burdens on Cardinal Health that are inconsistent with, more onerous than, or not otherwise authorized by, the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Ohio, Case Management Orders 1-3, and Discovery Ruling No. 3. Cardinal Health further objects to the Request to the extent it calls for the production of information that is unreasonably cumulative or duplicative of Plaintiffs' prior written discovery requests, and to the extent it is already in the possession, custody, or control of Plaintiffs or Plaintiffs' counsel. Cardinal Health objects to the extent this information is not relevant to Plaintiffs' requests.

Subject to and without waiving its Objections, Cardinal Health states that it has produced this data. *See* CAH_MDL2804_00000012, CAH_MDL2804_00135241, and CAH_MDL2804_00000014.

### Supplemental Response and Objection to Request No. 1 (November 30, 2018):

Subject to and without waiving its Objections, Cardinal Health states that it has produced line-by-line transactional data related to distributions of opioid medications dating back to January 1, 1996. *See also* CAH_MDL2804_00617320. Cardinal Health produced this data on June 15, July 27, and August 7, 2018.

4

**Highly Confidential Pursuant to Protective Order**

**Request No. 2:**

Please produce each of your **_Suspicious Order Monitoring System (SOMS)_** policies and procedures since January 1, 2006 and identify the Bates stamp range for each; please identify the effective date(s) each was in force and effect.

### Objection and Response to Request No. 2 (July 31, 2018):

Cardinal Health objects to this Request on the grounds that it exceeds the number of Requests allowed each party by CMO No. 1, Dkt. No. 232.  Cardinal Health objects to the Request to the extent that it purports to impose burdens on Cardinal Health that are inconsistent with, more onerous than, or not otherwise authorized by, the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Ohio, Case Management Orders 1-3, and Discovery Ruling No. 3.  Cardinal Health further objects to the Request to the extent it calls for the production of information that is unreasonably cumulative or duplicative of Plaintiffs' prior written discovery requests, and to the extent it is already in the possession, custody, or control of Plaintiffs or Plaintiffs' counsel.

Subject to and without waiving its Objections, Cardinal Health states that it has produced documents responsive to this Request.  *See* CAH_MDL2804_00059048–00059300; CAH_MDL2804_00124800–00124924; CAH_MDL_PRIORPROD_AG_0000001–0015503; CAH_MDL_PRIORPROD_DEA07_00000001–01174970; CAH_MDL_PRIORPROD_DEA08_0000001–0000284; and CAH_MDL_PRIORPROD_DEA12_00000001–00015258.  To the extent Cardinal identifies additional documents responsive to this Request after a reasonable search, Cardinal will produce those documents to Plaintiffs.

**Highly Confidential Pursuant to Protective Order**

### Supplemental Response and Objection to Request No. 2 (November 30, 2018):

Subject to and without waiving its Objections, Cardinal Health states that it has produced numerous copies of its policy and procedure documents relating to its monitoring of controlled substances. Cardinal Health produced the first set of such documents on May 31, 2018, and has continued to produce additional relevant documents on a rolling basis, some of which were copies of documents that had been previously produced to Plaintiffs. In addition to the documents identified above, Cardinal Health has also produced the following policies and procedures: CAH_MDL_PRIORPROD_HOUSE_0002197, CAH_MDL_PRIORPROD_HOUSE_0002201, CAH_MDL_PRIORPROD_HOUSE_0002207, CAH_MDL_PRIORPROD_AG_0028688– CAH_MDL_PRIORPROD_AG_0029955, CAH_MDL_PRIORPROD_DEA07_01181142, CAH_MDL_PRIORPROD_DEA07_01188070–01188720, CAH_MDL_PRIORPROD_DEA07_01383136, CAH_MDL_PRIORPROD_DEA07_01383814, CAH_MDL_PRIORPROD_DEA07_01383895, CAH_MDL2804_02098431–02098560, CAH_MDL2804_02879959–02881151, and CAH_MDL2804_02903953–02905699. Cardinal Health made its production of these documents on the following dates:

May 31, 2018: CAH_MDL_PRIORPROD_HOUSE

June 22, 2018: CAH_MDL_PRIORPROD_AG

June 29, 2018: CAH_MDL_PRIORPROD_DEA07

October 12, 2018: CAH_MDL2804_02098431

November 2, 2018: CAH_MDL2804_02879959

November 21, 2018: CAH_MDL2804_02903953

6

**Highly Confidential Pursuant to Protective Order**

**Request No. 3**

> Please identify and describe each ***suspicious order*** your Suspicious Order Monitoring System (SOMS) identified since January 1, 2006 and produce all documents related thereto; please identify the Bates stamp ranges for each related to *Case Track One*.

> **Objection and Response to Request No. 3 (July 31, 2018):**

Cardinal Health objects to this Request on the grounds that it exceeds the number of written Requests that Plaintiffs are allowed under CMO No. 1, Dkt. No. 232. Cardinal Health objects to the Request to the extent that it purports to impose burdens on Cardinal Health that are inconsistent with, more onerous than, or not otherwise authorized by, the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Ohio, Case Management Orders 1-3, and Discovery Ruling No. 3. Cardinal Health objects to this Request on the grounds that it is overly broad and unduly burdensome, calling for "All" documents. Cardinal Health objects to the Request to the extent it calls for the production of information that is unreasonably cumulative or duplicative of Plaintiffs' prior written discovery requests, and to the extent it is already in the possession, custody, or control of Plaintiffs or Plaintiffs' counsel.

Subject to and without waiving its Objections, Pursuant to Federal Rule of Civil Procedure 33(d) and in accordance with Discovery Ruling No. 3, Cardinal Health has previously produced centralized records of orders placed by Cardinal Health customers in the City of Cleveland, Cuyahoga County, and Summit County that the company reported to the DEA and state regulators from January 1, 2013 to May 29, 2018. These records can be found at CAH_MDL2804_00000013. Based on a reasonable investigation to date, Cardinal Health has determined it does not have centralized records of orders for opioids placed by Cardinal Health customers in the City of Cleveland, Cuyahoga County, and Summit County that the company reported to the DEA and state regulators before January 1, 2013. To the extent that additional

**Highly Confidential Pursuant to Protective Order**

responsive documents can be located after a reasonable search, Cardinal Health will produce

such documents.

**Supplemental Response and Objection to Request No. 3 (November 30, 2018)**:

Cardinal Health further objects to this Request because it does not, in fact, seek a

description from Cardinal Health of the operation and evolution of its suspicious order

monitoring program, even though Plaintiffs represented to Judge Polster on November 20, 2018

that it did.  Cardinal Health further objects to this Request insofar as the purported basis for

Plaintiffs' complaint to Judge Polster was that they allegedly did not have information

concerning the operation and evolution of Cardinal Health's program.  They plainly did, as

Cardinal Health first began producing documents in this case on May 31, 2018, and has

continued to do so on a rolling basis.  As of October 25, 2018, Cardinal Health had produced

over 2.9 million pages of documents to Plaintiffs, a substantial number of which describe the

operation and evolution of Cardinal Health's anti-diversion and suspicious order monitoring

programs.  In addition, Plaintiffs deposed Cardinal Health's corporate representative, Jennifer

Norris, on August 7, 2018, and other witnesses with knowledge of Cardinal Health's suspicious

order monitoring program on or before November 30, 2018.  Plaintiffs asked some questions

related to Cardinal Health's suspicious order monitoring program and had ample opportunity to

ask many more, but did not.

Subject to and without waiving its Objections, Cardinal Health responds as follows:

Cardinal Health has always intended and believed it was acting in compliance with the

relevant statutes, regulations, and guidance that DEA provided about what it expected

distributors to do in order to be in compliance with same.  Cardinal Health's anti-diversion

program has evolved over time to reflect DEA's guidance and changing expectations.  Cardinal

8

**Highly Confidential Pursuant to Protective Order**

Health's program strives at all times to balance the requirements for effective controls against diversion with access for patients with legitimate medical need to these FDA-approved medications from DEA-licensed doctors and pharmacies.

Federal regulations require Cardinal Health to report to the DEA "suspicious orders" of controlled substances, which are defined as "orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency."[1] To meet that responsibility, Cardinal Health has operated and continues to operate a controlled substance monitoring program. Through time, Cardinal Health has enhanced and evolved it system to ensure that it remains state-of-the-art, continues to comply with DEA guidance as that guidance has changed over time, and to adjust to other factors impacting the distribution of controlled substances.

Cardinal Health's anti-diversion and pharmaceutical distribution regulatory compliance teams consist of trained individuals, including investigators, statistical auditors and data analysts, former law enforcement, pharmacists, and compliance officers deployed on-site at our pharmaceutical distribution centers, in the field, and at corporate headquarters. Over the years, these efforts have resulted in the identification of thousands orders which were not filled and which were reported to DEA as suspicious because they did not meet Cardinal Health's conservative criteria. Our anti-diversion efforts have also led us to terminate distributions of controlled substances, or refuse to establish accounts, to hundreds of pharmacies. Cardinal Health's controlled substance monitoring program and scrutiny of its pharmacy customers meets or exceeds all DEA requirements. Cardinal Health's controlled substance monitoring program and scrutiny of its pharmacy customers meets or exceeds all DEA requirements.

---

[1] 21 C.F.R. § 1301.74(b).

**Highly Confidential Pursuant to Protective Order**

Cardinal Health has always monitored and reported a variety of information to the DEA. Cardinal Health reports to DEA distribution data related to controlled substances in the form of ARCOS data, which tracks distributions of controlled substances; submits order forms for controlled substances along with information on drug thefts and losses; and verifies that its customers possessed valid DEA registrations.  Cardinal Health has also conducted (and continues to conduct) investigations of pharmacies.  For example, over the years, Cardinal Health has investigated pharmacies believed to be engaged in internet sales, pharmacies that serviced pain clinics, and other pharmacies generally, to obtain information regarding their potential risk for diversion of regulated pharmaceuticals.  Cardinal Health has cut off distributions of controlled substances to pharmacies based on those investigations.  Further, Cardinal Health has engaged regularly in communications and meetings with the DEA dating back to at least the early 1990s regarding developments in the industry and diversion practices, as well as Cardinal Health's anti-diversion practices and procedures.  These discussions have informed Cardinal Health's anti-diversion program.

From at least 1995 through late 2007, Cardinal Health understood DEA to want suspicious orders reported to the Administration in the form of ingredient limit reports.[2]  Based on guidance from the DEA, *see, e.g.,* CAH_MDL_PRIORPROD_HOUSE_0002207, Cardinal Health understood DEA to want orders for opioids reported that exceeded a calculation endorsed

---

[2] Cardinal Health has produced ingredient limit reports and excessive order reports to Plaintiffs. *See, e.g.,* CAH_MDL_PRIORPROD_DEA07_02784240; CAH_MDL_PRIORPROD_DEA07_02784237; CAH_MDL_PRIORPROD_DEA07_00837724; CAH_MDL_PRIORPROD_DEA07_01330206.  We also understand that such reports may exist in custodial file documents that have been produced to Plaintiffs.  Cardinal Health has conducted an investigation and does not believe it currently retains centralized records of the ingredient limit reports it made for customers in the Track One jurisdictions.

**Highly Confidential Pursuant to Protective Order**

by DEA or that a wholesale distributor otherwise identified as unusual in size, pattern, or frequency. *Id.*[3] Cardinal Health reported such orders. *See, e.g.,* CAH_MDL_PRIORPROD_DEA07_01383895, CAH_MDL_PRIORPROD_DEA07_01188323. Cardinal Health used the published calculation to identify the orders it reported on the ingredient limit reports.

Distribution centers also reported "excessive" orders to the DEA.[4] Cardinal Health's policies instructed cage and vault personnel to monitor and identify individual orders that appeared excessive in relation to other customers' purchases and/or that customer's purchase history. To assist staff in identifying excessive orders, Cardinal Health developed a Dosage Limits Chart which listed products that were regularly audited by DEA and which had high potential for diversion. Distribution center employees were advised to report these excessive orders to DEA and copies of such orders were to be maintained in the facility's suspicious order file. In some instances, DEA advised Cardinal Health to release and ship those orders. In other cases, it instructed Cardinal Health not to ship those orders. In yet other instances, Cardinal Health made the determination not to ship such orders. *See. e.g., id., supra* note 5.

---

[3] The documents cited throughout Cardinal Health's Responses to Request No. 3 are merely examples of the millions of pages of documents Cardinal Health has produced reflecting its controlled substances anti-diversion and suspicious order monitoring programs over the years. By providing these examples, Cardinal Health is not suggesting that it has not produced or does not intend to rely in this litigation on any of the other documents it (or any other party or third party) has produced reflecting these programs. To the contrary, Cardinal Health specifically reserves all rights to make use in these proceedings of any produced or publicly available document.

[4] Cardinal Health has produced excessive order reports to Plaintiffs. *See, e.g.,* CAH_MDL_PRIORPROD_DEA07_01190057; CAH_MDL_PRIORPROD_DEA07_01190055; CAH_MDL_PRIORPROD_DEA07_01191265; CAH_MDL_PRIORPROD_DEA07_01190943; CAH_MDL_PRIORPROD_DEA07_01191199. We also understand that such reports may exist in custodial file documents that have been produced to Plaintiffs. Cardinal Health has conducted an investigation and does not believe it currently retains centralized records of the excessive order reports it made for customers in the Track One jurisdictions.

**Highly Confidential Pursuant to Protective Order**

In 2006 and 2007, Cardinal Health received additional guidance from DEA, including guidance from certain "Dear Registrant" letters and from a conference in September 2007. *See, e.g.*, CAH_MDL_PRIORPROD_DEA07_00832705. After this additional guidance, Cardinal Health understood DEA now to want orders that were unusual in size, pattern, or frequency in a way that Cardinal Health believed posed an unreasonable risk of diversion to be both reported *and*, for the first time, not shipped. Based on DEA's guidance, Cardinal Health reported and cut orders that rose to that level, as well as reported customers it cut off entirely due to diversion concerns. Orders exceeding a customer's threshold were not shipped unless an anti-diversion professional determined under the totality of the circumstances that the order for opioids was not likely to be diverted. Cardinal Health established threshold limits for its customers through a methodology that included – at a high level and among other things – differentiating customers through segmentation, evaluating historical controlled substance sales data per drug family, per month for each segment, applying the DEA's multiplier per drug base code, and incorporating information gained through the "Know Your Customer" processes.[5] *See, e.g.,* Deposition of Jennifer Norris (Aug. 7, 2018); Deposition of Nicholas Rausch (Nov. 16, 2018).

DEA did not require that all orders exceeding a customer's threshold or otherwise flagged for further review by Cardinal Health be reported to the Agency. Instead, it specified that orders exceeding threshold should be reviewed by Cardinal Health to determine whether they were actually suspicious. If Cardinal Health concluded they were, those orders were to be reported to DEA and not shipped. In contrast, if Cardinal Health determined that an order was

---

[5] Cardinal Health has produced numerous policy documents related to its thresholds and its methodologies during the time period of 2008–2012. *See, e.g.,* CAH_MDL_PRIORPROD_HOUSE_0001135; CAH_MDL_PRIORPROD_AG_0029504; CAH_MDL_PRIORPROD_AG_0029446; CAH_MDL_PRIORPROD_AG_0029417.

**Highly Confidential Pursuant to Protective Order**

for a legitimate purpose and not likely to be diverted, or was not actually suspicious, no reporting requirement existed. *See, e.g.,* CAH_MDL_PRIORPROD_HOUSE_0004009; CAH_MDL_PRIORPROD_AG_0029446 and other documents cited in Cardinal Health's response to Request No. 2, *supra*.

In 2007–2008, Cardinal Health began working on developing a centralized electronic monitoring system. Throughout the development of this system and its enhancements, the company has engaged a number of consultants to help with data collection and analytics. The Company has also engaged consultants to assist Cardinal Health in enhancing the Company's Controlled Substance Anti-Diversion Program. The consultants include:

- *Deloitte*. Cardinal Health retained Deloitte at various times between 2007 and 2012. Part of Deloitte's work was to assist in a project management capacity with business and technology enhancements to Cardinal Health's Controlled Substance Anti-Diversion program.

- *IBM Watson*. In approximately 2009, Cardinal Health engaged IBM Watson to develop a customized, sophisticated case management system for use in monitoring and evaluating customer orders of controlled substances. This database was launched in 2010 and is referred to within Cardinal Health as Anti-Diversion Centralization, or ADC.

- *Ohio State University*. Cardinal Health engaged Dr. Julia Higle, Chair of Ohio State University's Integrated Systems Engineering department, to develop a methodology based on historic customer data to assist Cardinal Health in proactively identifying customers who warranted additional scrutiny.

- *Dendrite/Cegedim/Buzzeo PDMA*. BuzzeoPDMA and Dendrite were both acquired by Cegedim, which is now part of IQVIA (formerly IMSQuintiles). Cardinal Health engaged Dendrite in 2007 to consult on Cardinal Health's on-site investigations program, and used Dendrite to assist with on-site pharmacy investigations. Cardinal Health continues to use investigators from Buzzeo/Cegedim to assist with on-site pharmacy investigations.

- *Pharmacy Compliance Group (PCG)*. Cardinal Health has engaged PCG in the past to assist with on-site pharmacy investigations.

- *Avantha Business Solutions*. Cardinal Health has sporadically engaged Avantha to assist with on-site pharmacy investigations.

**Highly Confidential Pursuant to Protective Order**

- *Healthcare Advising*. Cardinal Health engaged Healthcare Advising to assist Cardinal Health in validating its threshold methodology.

Cardinal Health explained its anti-diversion program, policies, procedures, and processes to DEA personnel in January 2009. The Agency did not indicate that the Company's anti-diversion program was not in compliance with the law or DEA guidance, nor suggest any changes to it.

Based on guidance from the DEA in 2012, Cardinal Health has since reported to the DEA orders of opioids by customers in Track One jurisdictions that exceed that customer's threshold for that opioid product.[6] Cardinal Health enhanced its threshold methodology to determine the threshold for each customer based on the customer's prescription volume and purchasing history from Cardinal Health. ████████████████████████ serve as the foundation of Cardinal Health's enhanced threshold-setting methodology. To determine an individual customer's threshold, Cardinal Health takes into account ████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████ Cardinal Health has continued to enhance this methodology.

---

[6] Cardinal Health has produced multiple policy documents related to thresholds and its methodologies and procedures regarding same between 2012 and 2018. *See, e.g.*, CAH_MDL_PRIORPROD_HOUSE_0000485; CAH_MDL_PRIORPROD_HOUSE_0001004; CAH_MDL_PRIORPROD_HOUSE_0001038; CAH_MDL_PRIORPROD_HOUSE_0001069; CAH_MDL_PRIORPROD_HOUSE_0000640; CAH_MDL_PRIORPROD_HOUSE_0001097; CAH_MDL_PRIORPROD_HOUSE_0001113; CAH_MDL_PRIORPROD_HOUSE_0000348; CAH_MDL2804_00063466-468; CAH_MDL2804_00124800–00124924.

14

**Highly Confidential Pursuant to Protective Order**

Cardinal Health understood DEA in 2012 to want, as a general matter, orders for opioids reported and not shipped when they were determined to be unusual in size, frequency, or pattern based on Cardinal's conservative methodology, regardless of whether or not, under the totality of the circumstances, Cardinal Health believes the order is indicative of diversion.

Cardinal Health further responds that, in addition to the documents cited in its initial response, it has produced other documents in response to this request. *See* CAH_MDL2804_01287526–01287713. Further, pursuant to Fed. R. Civ. Pro. 33(d), Cardinal Health states that orders identified and reported as suspicious by Cardinal Health and documents reflecting the operation and enhancements to Cardinal Health's anti-diversion and suspicious order monitoring programs may also be contained in its prior productions as well as the files of the custodians Cardinal Health has agreed to produce. By October 25, 2018, Cardinal Health had produced over 2.9 million pages of custodial file documents and prior productions. Cardinal Health will also produce additional documents in accordance with the parties' agreements. The burden of deriving or ascertaining the answer from these documents will be substantially the same for Plaintiffs and Cardinal Health. Cardinal Health has provided Plaintiffs with the opportunity to examine these records and to make copies, compilations, abstracts, or summaries by producing these documents to them. In addition, Cardinal Health has produced a significant amount of metadata.

15

**Highly Confidential Pursuant to Protective Order**

Cardinal Health further responds that in the ordinary course of business, records are retained by Cardinal Health under its Records Management Policy for the prescribed period.  *See* CAH_MDL_PRIORPROD_AG_0002507–2562.  Retention periods of documents may be extended if subject to a legal instrument or hold.  Documents that are no longer subject to retention pursuant to the policy, law and/or regulation, or a litigation hold may (but will not necessarily) be discarded.  Based on a reasonable investigation, Cardinal Health has determined it does not have centralized records of orders for opioids placed by Cardinal Health customers in the City of Cleveland, Cuyahoga County, and Summit County that the company reported to the DEA and state regulators before January 1, 2013.  (During earlier time periods, suspicious order reports were submitted to the DEA manually and not stored in a centralized location.)

**Request No. 4**

Please identify each suspicious order you ***reported*** to the DEA since January 1, 1996 and produce all documents related thereto; please identify the Bates stamp range for each related to *Case Track One*.

**Objection and Response to Request No. 4 (July 31, 2018):**

Subject to and without waiving its Objections, Cardinal Health refers to its Objections and Response to Request No. 3.

**Supplemental Objection and Response to Request No. 4 (November 30, 2018):**

Subject to and without waiving its Objections, Cardinal Health refers to and incorporates here by reference its Supplemental Objections and Response to Request No. 3, which describes how Cardinal Health has identified and reported suspicious orders to the DEA since at least 1995.  Cardinal Health further states that it has produced additional documents in response to this request.  *See* CAH_MDL2804_00000013, CAH_MDL2804_01287526–01287713.

Highly Confidential Pursuant to Protective Order

**Request No. 5**

> For each suspicious order you identified but did not report to the DEA since January 1,
> 2006, please describe in as much detail as possible the reasons and produce all documents
> related thereto; please identify the Bates stamp range for each related to *Case Track One*.

### Objection and Response to Request No. 5 (July 31, 2018):

Cardinal Health objects to this Request on the grounds that it exceeds the number of

written Requests that Plaintiffs are allowed under CMO No. 1, Dkt. No. 232. Cardinal Health

objects to the Request to the extent that it purports to impose burdens on Cardinal Health that are

inconsistent with, more onerous than, or not otherwise authorized by, the Federal Rules of Civil

Procedure, the Local Rules of the Northern District of Ohio, Case Management Orders 1-3, and

Discovery Ruling No. 3. Cardinal Health objects to this Request on the grounds that it is overly

broad and unduly burdensome, calling for "All" documents. Cardinal Health further objects to

this Request to the extent it implies orders flagged by Cardinal Health's controlled substance anti-

diversion system are "suspicious orders." An order reported to the DEA or state regulator is not

necessarily indicative of diversion. Cardinal Health uses data-driven and customer-specific

metrics for establishing thresholds in its order monitoring system that serve to limit distributions,

and Cardinal Health reports to regulators above-threshold orders that it refuses to fill.

Subject to and without waiving its objections, Cardinal Health will produce information to

reflect actions taken in response to threshold events from January 1, 2006 for the Track One

jurisdictions, to the extent such information can be identified after a reasonable search.

### Supplemental Objection and Response to Request No. 5 (November 30, 2018):

Subject to and without waiving its Objections, Cardinal Health states that it has not

identified an order as suspicious and decided not to report it to DEA. Cardinal Health has

identified four orders from customers in the Track 1 jurisdictions which were entered into

**Highly Confidential Pursuant to Protective Order**

Cardinal Health's automated system for reporting to DEA that inadvertently failed to transmit to DEA due to IT malfunctions.  These orders primarily date from 2012-2015.  None of these orders were shipped.

Cardinal Health further states that it has produced documents in response to this request. *See* CAH_MDL2804_135242; CAH_MDL2804_02101802; CAH_MDL2804_02101800; CAH_MDL2804_02101803.

Cardinal Health also refers to and incorporates here by reference its Supplemental Objections and Response to Request No. 3.

**Request No. 6**

For each suspicious order you reported to the DEA since January 1, 2006, please identify whether you ***declined*** the order or ***shipped*** the order and produce all documents related thereto; please identify the Bates stamp range for each related to *Case Track One*.

**Objection and Response to Request No. 6 (July 31, 2018):**

Cardinal Health objects to this Request on the grounds that it exceeds the number of written Requests that Plaintiffs are allowed under CMO No. 1, Dkt. No. 232.  Cardinal Health objects to the Request to the extent that it purports to impose burdens on Cardinal Health that are inconsistent with, more onerous than, or not otherwise authorized by, the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Ohio, Case Management Orders 1-3, and Discovery Ruling No. 3.  Cardinal Health objects to this Request on the grounds that it is overly broad and unduly burdensome, calling for "All" documents.

Subject to and without waiving its objections, Cardinal Health will produce information sufficient to show the actions it took with regard to orders it reported as suspicious to the DEA.

**Highly Confidential Pursuant to Protective Order**

### Supplemental Objection and Response to Request No. 6 (November 30, 2018):

Subject to and without waiving its Objections, Cardinal Health states that it has produced

documents in response to this request. *See, e.g.*, CAH_MDL2804_00135242,

CAH_MDL_PRIORPROD_AG_0000001–0015503,

CAH_MDL_PRIORPROD_DEA07_01188323,

CAH_MDL_PRIORPROD_DEA07_01188147–182, and CAH_MDL2804_00124800–

00124924. Cardinal Health also refers to and incorporates here by reference its Supplemental

Objections and Response to Request No. 3 and the documents identified in its Objections and

Response and Supplemental Objections and Response to Request No. 2, *supra*.

## Request No. 7

For each suspicious order you reported and then shipped since January 1, 2006, please
produce all documents related to your "***due diligence***" for each; please identify the Bates
stamp range for each related to *Case Track One*.

### Objection and Response to Request No. 7 (July 31, 2018):

Cardinal Health refers to its Objections and Response to Discovery Request No. 6.

Subject to and without waiving its objections, Cardinal Health also directs Plaintiffs to the

diligence files for customers in the Track One jurisdictions, which have been produced at

CAH_MDL2804_00000015 - CAH_MDL2804_00001851.

### Supplemental Response and Objection to Request No.7 (November 30, 2018):

Subject to and without waiving its objections, Cardinal Health states that over the years it

has conducted diligence and gathered information related to its customers and their orders for

controlled substances in a variety of ways, including but not limited to, through regular customer

questionnaires; surveillance and/or site visits; investigation of orders that are excessive or exceed

a threshold; review and analyses of Cardinal Health's distribution data and other information

**Highly Confidential Pursuant to Protective Order**

known to Cardinal Health about its customers; and internet searches.  Cardinal Health also uses

internal and external data to evaluate customer-ordering patterns and to set appropriate

thresholds for customers.

Cardinal Health's due diligence efforts are described, in part, in Cardinal Health's policy

and procedure documents, as referenced in its Responses and Supplemental Responses to

Request Nos. 2 and 3.

Cardinal Health further responds that it has also produced additional documents in

response to this request.  *See* CAH_MDL2804_00094067–00094604,

CAH_MDL2804_00135242, CAH_MDL2804_00619125, CAH_MDL2804_01287246–

01287525; CAH_MDL2804_02098561, CAH_MDL2804_02101808, and

CAH_MDL2804_02879401–02879958.  Additional documents relating to or reflecting due

diligence may also be in prior productions and custodial files productions.  For example,

CAH_MDL2804_00834232 reflects a memo about a customer in a Track One jurisdiction that

was produced in the custodial file of Michael Moné.  Pursuant to Fed. R. Civ. Pro. 33(d),

Cardinal Health has provided Plaintiffs with the opportunity to examine these records and to

make copies, compilations, abstracts, or summaries by producing these documents to them.

Cardinal Health will also produce additional documents in accordance with the parties'

agreements.  In addition, Cardinal Health has produced a significant amount of metadata.

**Request No. 8**

Please produce and identify the Bates stamp range for all communications to and/or from
the DEA since January 1, 2006, related to Opioids and/or Opioid Products (including the
2006/2007 "***Rannazzisi letters***").

**Highly Confidential Pursuant to Protective Order**

### Objection and Response to Request No. 8 (July 31, 2018):

Cardinal Health objects to this Request on the grounds that it exceeds the number of written Requests that Plaintiffs are allowed under CMO No. 1, Dkt. No. 232.  Cardinal Health objects to the Request to the extent that it purports to impose burdens on Cardinal Health that are inconsistent with, more onerous than, or not otherwise authorized by, the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Ohio, Case Management Orders 1-3, and Discovery Ruling No. 3.  Cardinal Health objects to this Request on the grounds that it is overly broad and unduly burdensome, calling for "All" communications.  Cardinal Health further objects to the Request to the extent it calls for the production of information that is unreasonably cumulative or duplicative of Plaintiffs' prior written discovery requests, and to the extent it is already in the possession, custody, or control of Plaintiffs or Plaintiffs' counsel.

Subject to and without waiving its objections, Cardinal Health will produce communications with the DEA pursuant to its responses to Plaintiffs' prior Requests.  Cardinal Health also directs Plaintiffs to documents produced to the Drug Enforcement Administration at CAH_MDL_PRIORPROD_DEA07_00000001–01174970; CAH_MDL_PRIORPROD_DEA08_0000001–0000284; and CAH_MDL_PRIORPROD_DEA12_00000001–00015258.

### Supplemental Response and Objection to Request No. 8 (November 30, 208):

Subject to and without waiving its objections, Cardinal Health responds that it has produced copies of the 2006 and 2007 "Dear Registrant" letters in multiple places, including, for example, CAH_MDL_PRIORPROD_DEA12_00000001–00006133, CAH_MDL_PRIORPROD_DEA12_00000001–00010980 and CAH_MDL2804_01454402 – 405.  Cardinal Health further responds that it has had numerous communications with DEA

**Highly Confidential Pursuant to Protective Order**

related to controlled substances, including via electronic mail between Cardinal Health personnel

and DEA.  Documents reflecting communications with the DEA related to controlled substances

are contained in Cardinal Health's prior productions, as well as its production of custodial files.

Pursuant to Fed. R. Civ. Pro. 33(d), Cardinal Health has provided Plaintiffs with the opportunity

to examine these records and to make copies, compilations, abstracts, or summaries by producing

these documents to them.  Cardinal Health will also produce additional documents in accordance

with the parties' agreements.  In addition, Cardinal Health has produced a significant amount of

metadata.

By:                                           */s/ Enu Mainigi*
                                              Enu Mainigi (DC Bar No. 454012)
                                              WILLIAMS & CONNOLLY LLP
                                              725 Twelfth Street, N.W.
                                              Washington, DC 20005
                                              Telephone: (202) 434-5000
                                              Facsimile: (202) 434-5029
                                              emainigi@wc.com

                                              *Counsel for Defendant Cardinal Health, Inc.*

Dated: November 30, 2018

**Highly Confidential Pursuant to Protective Order**

<u>**CERTIFICATE OF SERVICE**</u>

I, Enu Mainigi, counsel for Cardinal Health, Inc., certify that on November 30, 2018, I caused the foregoing to be served via electronic mail on the agreed-upon listservs established pursuant to the Order on Service in Track One Cases, Dkt. No. 983 (Sept. 17, 2018).

*/s/ Enu Mainigi*
Enu Mainigi

## VERIFICATION

I, Todd Cameron, declare and verify under penalty of perjury that as to Supplemental Responses 3, 4, 5, 6, and 7 of the above First Supplemental Objections and Responses to Plaintiffs' First Combined Discovery Requests, the factual information is based on personal knowledge, on information provided to me by others, and on documents maintained in the ordinary course of business.  Some of the matters stated in the foregoing Responses are not within my personal knowledge, and I am informed and believe that no officer of Cardinal Health has personal knowledge of all such matters.  The matters stated in the foregoing Responses have been assembled by authorized employees and counsel for Cardinal Health.  Based on the inquiry made by the employees, officers, agents, and counsel of Cardinal Health to formulate the above response, I believe that the facts stated in the foregoing Responses are true.

11/30/19
Date

Todd Cameron