# Exhibit 8

## Nowrangi, Priya

| | |
|---|---|
| **From:** | Fong, Ivan [Ivan.Fong@cardinalhealth.com] |
| **Sent:** | Tuesday, December 18, 2007 10:50 AM |
| **To:** | David.L.Barber@usdoj.gov |
| **Cc:** | Cote, Larry P.; Avergun, Jodi; jcarney@bakerlaw.com; Falk, Steve |
| **Subject:** | Letter from Cardinal Health |
| **Attachments:** | 0512_001.pdf; Outline of Key Actions on Anti-Diversion - 12-18-07.pdf |

Linden -- Attached please find a letter, with an attachment, in response to your questions posed at our meeting last Thursday. Thank you again for your hospitality and courtesy. Please let me know if you have any trouble opening the attachments.

Ivan

Ivan K. Fong
Chief Legal Officer and Secretary
Cardinal Health, Inc.
7000 Cardinal Place
Dublin, OH 43017
614.757.7768 tel
614.652.7325 fax
ivan.fong@cardinalhealth.com

---

This message is for the designated recipient only and may contain privileged, propri
or otherwise private information. If you have received it in error, please notify th
immediately and delete the original. Any other use of the email by you is prohibited

Dansk - Deutsch - Espanol - Francais - Italiano - Japanese - Nederlands - Norsk - Po
Svenska: www.cardinalhealth.com/legal/email

1/11/2008

CONFIDENTIAL

CAH_MDL2804_01376804



Ivan K. Fong
Chief Legal Officer and Secretary

Cardinal Health
7000 Cardinal Place
Dublin, OH 43017
614.757.7768 tel
614.652.7325 fax
ivan.fong@cardinal.com

www.cardinalhealth.com

December 18, 2007

**CONFIDENTIAL TREATMENT REQUESTED**

**BY ELECTRONIC MAIL AND FIRST-CLASS MAIL**
D. Linden Barber
Associate Chief Counsel
Diversion and Regulatory Litigation Section
Office of Chief Counsel
Drug Enforcement Administration
U.S. Department of Justice
700 Army Navy Drive
Arlington, VA 22202

Re: Cardinal Health, Inc. – Responses to Requests

Dear Linden:

Thank you again for arranging the meeting we had with you and your colleagues in your offices last week. I believe we had a constructive exchange of views, and I look forward to continued dialogue with you as we continue to enhance our anti-diversion efforts.

During and after the meeting, you made several information requests. The purpose of this letter is to provide our responses to your requests.

1. During the meeting, we promised to send you a summary chart of action items being taking to enhance our anti-diversion controls. You will note that the enclosed Outline of Key Actions is organized by the categories mentioned at the meeting by Jeff Henderson: people, processes, and systems.

2. After the meeting, you asked for the names of the four controlled substances that have been the recent and ongoing focus of our anti-diversion efforts to-date. The four controlled substances are: hydrocodone, oxycodone, alprazolam, and phentermine. These four controlled substances are also the focus of the initial IT-based real-time order monitoring and blocking system that will be implemented across Cardinal Health distribution centers this month.

D. Linden Barber
December 18, 2007
Page 2

    3.    After the meeting, you also asked us to elaborate on the threshold used to shut off hydrocodone accounts. We mentioned at the meeting a threshold of 400,000 units/year.

Effective December 6, 2007, Cardinal Health established certain internal thresholds (based on sales volumes and mix of product sold, as described below) to be used as a basis for immediately discontinuing controlled substance sales to certain accounts. Specifically, Cardinal Health discontinued – without conducting an on-site inspection of the customer – sales of controlled substances to accounts that exceeded these thresholds. The thresholds were set at a level considered sufficiently significant to warrant a decision based on numerical figures alone. Accounts falling below these thresholds, but whose orders were otherwise considered to be suspicious, received on-site investigation before any decision to discontinue controlled substance shipments.

To date, based on 12-month averages, sales of controlled substances were discontinued to an account if they met the following thresholds:
- ≥ 400,000 units/year hydrocodone; <u>or</u>
- ≥ 375,000 units/year oxycodone; <u>or</u>
- ≥ 250,000 units/year alprazolam; <u>or</u>
- ≥ 200,000 units/year phentermine; <u>and</u>

- Purchases of controlled substances > 30% of the total amount of product purchased (controlled substances + non-controlled substances) during the same 12-month period.

Although we recognize that applying these thresholds carries a risk of discontinuing shipments to legitimate accounts, we believe it is a reasonable and prudent step in light of the risk of diversion at these accounts. As an additional refinement, however, we have also concurrently established a process to re-evaluate discontinued accounts if a terminated customer can substantiate that Cardinal Health's decision to discontinue was inappropriate in light of available information. Before such accounts are re-activated, we (or an appropriate Cardinal Health agent) will conduct an on-site review of that customer to assist in determining whether a reinstatement is warranted based on reasonable judgments and in light of all the facts and circumstances.

    \*    \*    \*

D. Linden Barber
December 18, 2007
Page 3

Finally, I wanted to inform you that last week we initiated an intensive on-site third-party review of 18 distribution centers that have not been the subject of your recent enforcement actions. Starting yesterday, teams of attorneys from our outside law firms, accompanied by consultants from Dendrite, will be visiting the distribution centers and reporting their findings to us. The purpose of the review is to provide a detailed and on-the-ground assessment of the current effectiveness of our anti-diversion controls. We envision making a summary of this assessment available to you in the near future.

Because this review is ongoing, and because we would like to devote our exclusive attention to the critical goals of ensuring that important medicines get to those who need it, and not to those who would divert it, we hope you will forbear from executing additional warrants or enforcement actions, at least based on any conduct that occurred before our meeting on December 13. We believe that, with a few weeks of concentrated efforts, we can demonstrate to your satisfaction that the continued registration of our distribution centers poses no immediate danger to public health and safety.

I look forward to another meeting with you in the new year to discuss an expedited resolution of these matters. In the meantime, please do not hesitate to contact Jodi Avergun, John Carney, or me if you have any questions.

Very truly yours,

Ivan K. Fong

Enclosure

cc: Larry P. Cote, Senior Attorney, DEA
    Jodi L. Avergun, Cadwalader, Wickersham & Taft LLP
    John J. Carney, Baker Hostetler

CONFIDENTIAL

Cardinal Health, Inc.
Outline of Key Actions on Anti-Diversion
December 18, 2007
Page 1 of 2

| Action | Status |
|---|---|
| **People** | |
| 1. Establish new, elevated organizational unit responsible for supply chain integrity and anti-diversion; direct dual reporting to the interim Chief Executive Officer, HSCS and the EVP, QRA, Cardinal Health | |
| a. Appoint new SVP, Supply Chain Integrity and Anti-Diversion | **Completed December 14, 2007** |
| b. Hire VP, Anti-Diversion reporting to the SVP, Supply Chain Integrity and Anti-Diversion | **Completed December 6, 2007** |
| c. Add five investigators to the Anti-Diversion group to bring total to eight investigators | Target completion February 28, 2008 |
| d. Change reporting of VP, HSCS QRA to direct reporting to the SVP, Supply Chain Integrity and Anti-Diversion | **Completed December 17, 2007** |
| e. Centralize reporting relationships for all field QRA positions to VP, HSCS QRA | Target completion December 21, 2007 |
| f. Conduct personnel analysis and replace underperforming QRA personnel in DCs; replacement personnel to report to VP, HSCS QRA | Target completion January 31, 2008 |
| 2. Supplement both anti-diversion unit and field organization efforts with resources from Dendrite until new positions and gaps are closed. | **Completed December 10, 2007** |
| 3. Upgrade know-your-customer and due diligence training for the retail independent sales force and conduct refresher training for all retail independent sales personnel | Started October 2007; Target completion December 19, 2007 for initial training; refresher training to be conducted annually thereafter |
| 4. Develop and deliver enhanced diversion control training for field sales and operations personnel | Target completion January 31, 2008 |
| 5. Make anti-diversion compliance a component of annual performance reviews and incentive compensation for field sales and operations personnel | Target completion January 31, 2008 |
| 6. Develop overall communications strategy to applicable employees to regularly underscore Cardinal Health's obligations to prevent diversion | Target completion December 31, 2007 |
| **Processes** | |
| 1. Conduct independent third-party, on-site investigations of anti-diversion control processes at each distribution center to identify risks. | Target completion January 5, 2008 |
| 2. Establish standardized criteria to identify excessive purchasers who need to be investigated based on monthly sales. | **Completed October 2007** |

CONFIDENTIAL

CAH_MDL2804_01376808

CONFIDENTIAL

**Cardinal Health, Inc.**
**Outline of Key Actions on Anti-Diversion**
**December 18, 2007**
**Page 2 of 2**

| | |
|---|---|
| 3. Establish standard questionnaire, decision tree, verification form and signed statement of compliance to evaluate customers (new and existing) to be used in the investigation | Completed November 2007 |
| 4. Centralize process for discontinuation of a suspicious account. | Completed August 2007 |
| Implement controls to improve execution of centralized discontinuation process. | Completed December 17, 2007 |
| 5. Implement process improvements to ensure that accounts on DEA alert list are suspended and only reinstated if investigated and cleared. | Target completion December 18, 2007 |
| 6. Conduct retrospective review of high-volume customers of hydrocodone, oxycodone, alprazolam, and phentermine | - **Completed review of initial set of 177 hydrocodone customers - December 2007**<br>- Target completion for investigation of additional 160 high-volume customers – January 2008. |
| 7. Implement tollgate procedure where QRA reviews and approves each new retail independent and wholesale customer. | Target completion December 21, 2007 |
| 8. Develop corrective action plan and implement improvements arising out of independent third-party investigation (see item #1) | Target completion date based upon findings |
| **Systems** | |
| 1. Implement individual SKU (stock keeping unit) daily order limiter for hydrocodone, oxycodone, alprazolam, and phentermine until the suspicious order monitoring system is operational. | Completed December 10, 2007 |
| 2. Develop and implement a computerized system to identify, block and report suspicious orders | |
|    a. Phase I for hydrocodone, oxycodone, alprazolam, phentermine in retail independent accounts | **Completed beta launch in Houston December 15, 2007**; Target network-wide rollout December 23, 2007 |
|    b. Phase II for all controlled substances in all pharmacies | Target completion January 31, 2008 |

CONFIDENTIAL

CAH_MDL2804_01376809