# Exhibit 11

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

1201 F Street, N.W., Washington, DC 20004
Tel 202 862 2200 Fax 202 862 2400
www.cadwalader.com

January 14, 2008

**VIA COURIER**
Larry Cote, Esq.
Robert Walker, Esq.
Imelda Paredes, Esq.
Office of Chief Counsel
U.S. Drug Enforcement Administration
700 Army Navy Drive
Arlington, Virginia 22202

Re: In the Matter of Cardinal Health

Dear Counsel:

By letters dated November 30, December 10, and December 18, respectively, Cardinal Health requested that the DEA grant a limited exception, or carve-out, to the applicability of the immediate suspension of registration orders imposed on Cardinal Health's distribution centers located in Auburn, Washington; Lakeland, Florida; and Swedesboro, New Jersey. By letter dated December 5, 2007, Deputy Administrator Leonhart denied Cardinal Health's request for a limited exception to the immediate suspension order in Washington. Cardinal Health's other two requests remain pending. Copies of all three requests are attached for your convenience.

We write to respectfully request that the DEA reconsider the Auburn carve-out and to request that DEA act favorably on the requests involving carve-outs for Florida and New Jersey. It has been approximately one month since the orders of immediate suspension were imposed, and Cardinal Health has made diligent use of that time to attempt to provide those customers which do not pose any risk of diversion with an adequate and timely supply of legitimate medicine.

Despite the attention and resources that Cardinal Health has devoted to ensuring that its government, hospital, and large retail customers receive their supplies as needed, the pure physical logistics of the situation have resulted in the Company not achieving its important mission of providing medicine to customers in the manner they require to address patient care. For instance, in the State of Florida, because of the length of time that it takes to process and deliver controlled substance orders for these customers from Madison, Mississippi, (nearly 700 miles from the Company's Lakeland, Florida facility) many customers find themselves in an

**Jodi L. Avergun** Tel 2456 Fax 202 862 2400 jodi.avergun@cwt.com
USActive 11623622.1

CONFIDENTIAL

# CADWALADER

Larry Cote, Esq.
January 14, 2008

unacceptable and unsatisfactory situation where they cannot be assured the delivery of their orders to meet patient needs in a timely manner.  In theory, these customers could look to supplement their supply of medicine from other distributors acting as a secondary supplier, but such arrangements come at increased financial and logistical cost to the customer.

Cardinal Health has received numerous customer complaints which make it clear that legitimate health care customers, and their patients, are suffering what must surely be unintended consequences of the immediate suspension orders.  The DEA's long-standing commitment to a "balanced approached" to the diversion of controlled substances, which acknowledges the need for balancing the need for pain relief with law enforcement's duty to prevent the abuse of powerful pain medications, is well known, and is relied on by the health community, of which pharmaceutical distributors are a critical part.  The DEA stressed its balanced approach, and the need for cooperation and teamwork between law enforcement, health care professionals, and healthcare industry at its recent seminar entitled "Good Medicine, Bad Behavior," which featured as a panelist Michael Mone, a Cardinal Health employee and the newly appointed Vice President of Anti-Diversion and Senior Regulatory Counsel.  Given DEA's stated commitment to ensuring access to appropriate medicine, including but not limited to pain medications, it is surely necessary that DEA revisit Cardinal Health's license suspension for the purposes of allowing Cardinal Health to deliver needed medicine to those of Cardinal Health's customers that pose no risk of diversion, such as hospitals and the Company's largest chain customers such as Walgreens and CVS.  This is particularly so where none of the entities that would be part of the carve-out have formed the basis of any of DEA's actions against Cardinal Health, and, even more significantly, these types of facilities have not been part of DEA's underlying accusations.  A more narrowly tailored suspension order will fully promote DEA's legitimate and critical duty to prevent the diversion of dangerous drugs, but will ensure that hospital, government, and large chain customers are not unintentionally punished by Cardinal Health's license suspension.

Cardinal Health has previously offered to engage employees of Dendrite, a leader in anti-diversion compliance in the private sector, at the Swedesboro facility to monitor and enforce a limited exception to the immediate suspension orders.  The Company extends that offer to include the Lakeland, Florida and Auburn, Washington facilities.  If a limited carve-out is granted, the Company would be willing to submit to immediate spot inspections by DEA officials in the affected facilities in Washington, Florida and New Jersey.  In addition, the Company would be willing to abide by whatever additional reasonable restrictions the DEA would wish to impose so that it can service only those customers that do not pose a risk of diversion.  Finally, if permitted to ship to the limited classes of customers proposed in this letter, Cardinal Health would agree that, in the unlikely event that we cannot settle the revocation proceedings, it would not use, introduce or otherwise rely on the fact of the carve

CONFIDENTIAL                                                                             CAH_MDL2804_01376789

# CADWALADER

Larry Cote, Esq.
January 14, 2008

out as evidence of DEA's position regarding Cardinal Health's compliance with DEA regulations.

As you know, the Company has recently committed to a no-holds barred renewal and enhancement of its anti-diversion efforts and systems. In the thirty days since the orders were imposed, the highest level of leadership of Cardinal Health personally met with you and other decision makers in DEA to assure you of the Company's unwavering commitment to ensuring the safety of the supply chain. The following week, Cardinal Health provided you with an extensive list of remedial steps it had taken and would continue to take, to ensure that, more than just promising to prevent diversion, the Company was doing all that it could to do so in the most expeditious fashion possible. I have attached the Company's December 18, 2007, letter outlining those steps, but some highlights include: the hiring of a new senior vice president for anti-diversion, with dual direct reporting to the CEO of the Company's supply chain sector and the Company's EVP of QRA; the implementation of a computer based suspicious order monitoring system to identify, block, investigate and report suspicious orders; authorization for five additional QRA investigators to monitor suspicious orders; and centralization of the reporting of all compliance personnel in the field. Additionally, the Company authorized its outside counsel and its outside consultants to undertake a review of all of its distribution centers to determine if there was any immediate risk or incidences of blatant diversion that Cardinal Health had previously failed to detect, with the goal of reporting those results to the DEA at the completion of the investigation. That review has included site visits to 21 of Cardinal Health's 23 distribution centers or affiliated businesses by teams of over 20 attorneys and 10 investigators, and independent site visits and verifications of more than 170 of Cardinal Health's retail independent customers by a team of Dendrite investigators and consultants. As you know, we have scheduled a meeting with you later this week to provide a preliminary report.

We hope that our report to you, as well as the other steps we outlined in our letter of December 18 2007, plus the additional safeguards outlined in this letter, convinces you of Cardinal Health's good faith, successful efforts to address the weaknesses that existed in the anti-diversion compliance efforts prior to December 2007. As importantly, we hope that it convinces you that no imminent threat to the public safety exists by permitting Cardinal Health to resume supplying those customers who are not alleged to have posed, and who actually do not pose, any threat of diversion.

We believe that we have given you good reason to apply the immediate suspension orders judiciously. Accordingly, we urge you to limit the effect of the immediate suspension orders as follows:

CONFIDENTIAL                                                                          CAH_MDL2804_01376790

# CADWALADER

Larry Cote, Esq.
January 14, 2008

For all distribution centers we request that Cardinal Health be permitted to ship

- Controlled substances to hospitals, and federal, state and local governmental facilities. There is no public interest in preventing Cardinal Health from servicing patients under the close supervision of medical professionals in hospitals and residential treatment settings, and customers through which diversion clearly cannot and does not occur.

For Lakeland, we additionally request that Cardinal Health be permitted to ship

- Controlled substances with appropriate limits, to be mutually agreed upon, to CVS, Walgreens, Kroger, Kmart, and Winn Dixie, all of which are large, national or regional chains which pose no threat of diversion due to their sophisticated anti-diversion systems and historical record of compliance.

For Auburn, we additionally request that Cardinal Health be permitted to ship

- Controlled substances with appropriate limits to be mutually agreed upon, to Walgreens, Kroger, Kmart, Rosauer's, and Pharmaca, all of which are large, national or regional chains which pose no threat of diversion due to their sophisticated anti-diversion systems and historical record of compliance.

- In addition, Cardinal Health seeks permission to continue sales in a limited amount, to be mutually agreed upon, to BioScrip, a national specialty pharmacy provider which treats patients with chronic disease states.

For Swedesboro, we additionally request that Cardinal Health be permitted to ship

- Controlled substances with appropriate limits, to be mutually agreed upon, to CVS, Walgreens, Kmart, SUPERVALU, and Ahold, all of which are large, national or regional chains which pose no threat of diversion due to their sophisticated anti-diversion systems and historical record of compliance.

- Controlled substances in a limited amount, to be mutually agreed upon, to BioScrip, a national specialty pharmacy provider that treats patients with chronic disease states.

Cardinal Health has continued to do everything in its power to ensure the steady and secure supply of controlled substances to its customers, which includes moving personnel

USActive 11623622.1

Page 4

CONFIDENTIAL

CAH_MDL2804_01376791

# CADWALADER

Larry Cote, Esq.
January 14, 2008

away from their homes to augment manpower at remote distribution centers and engaging the most efficient freight forwarders. But Cardinal Health's efforts are simply not sufficient to keep these legitimate customers adequately and timely supplied.

We strongly believe that there is no basis for Cardinal Health's hospital, government, and large chain customers to be further hampered in obtaining their legitimately needed prescription drug requirements. As detailed above, the inconvenience and delay suffered by these legitimate customers is real and is expected to continue. These past thirty days have shown that it is extremely time consuming and burdensome, both for Cardinal Health and its customers, to service customers from alternate distribution centers. The application of the immediate suspension orders to these customers goes beyond the spirit of an immediate suspension remedy. The application of an immediate suspension should be tailored to address the public health risk at hand, and should not be so broad so as to ensnare segments of the healthcare community that play little role in that risk and consequently impact public health and safety. Equally important, it is well known that the DEA has in the past permitted long term carve-outs from immediate suspension orders to permit distributors to ship to hospital and government customers from suspended facilities. Cardinal Health seeks only that same consideration for the same types of customers, and believes that the safeguards proposed herein are more than adequate to address any remaining concerns the DEA might harbor about Cardinal Health's ability to limit shipments to these no-risk entities.

Cardinal Health recognizes and respects the DEA's anti-diversion enforcement efforts and goals and is keenly aware of the Company's own responsibility to assist in those efforts. Unfortunately, the effect of the orders of immediate suspension reaches behavior and impacts customers that are beyond the intended goals of the program -- which is to stop diversion. In light of the potential harm to legitimate prescription drug patients, and the additional safeguards offered herein, we respectfully request that DEA grant the limited exceptions requested herein.

Very truly yours,

Jodi L. Avergun

JLA
Attachments

CONFIDENTIAL                                                                                    CAH_MDL2804_01376792

# C A D W A L A D E R

Larry Cote, Esq.
January 14, 2008

cc:     Ivan Fong, Esq.
        John J. Carney, Esq

CONFIDENTIAL                                                    CAH_MDL2804_01376793

# ATTACHMENTS

CONFIDENTIAL

CAH_MDL2804_01376794

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

1201 F Street, N.W., Washington, DC 20004
Tel 202 862 2200 Fax 202 862 2400
www.cadwalader.com

30 November 2007

Larry Cote, Esq.
U.S. Drug Enforcement Administration
700 Army Navy Drive
Arlington, Virginia

**In the Matter of Cardinal Health Order to Show Cause Dated November 28, 2007**

Dear Larry:

Thank you for taking the time to discuss implementation of the order of immediate suspension earlier today. As we told you, we are concerned that, despite the length of notice that DEA has provided Cardinal in advance of the actual suspension, factors particular to Washington's licensing scheme, and the intervening weekend, will prevent the implementation of the order as we understand the Deputy Administrator intended.

As we understand it, one of the primary reasons that the DEA permitted advance notice of the suspension was to allow Cardinal or its customers to make alternate arrangements to obtain needed controlled substances. However, it now appears that this goal may be unattainable as Washington's licensing regulations prohibit shipments from out of state distributors to customers in Washington without a separate license. While Cardinal has been and will continue to work diligently all day today and Monday to obtain licenses for its distribution centers outside of Washington to ship into that state, licensing cannot be accomplished before the suspension order becomes effective. If that occurs, there are over 1500 customers, including 300 hospitals and federal and state governmental facilities, located within Washington that will be unable to receive their requisite drug supply from Cardinal.

The crux of the allegations against the Auburn Washington facility concern excessive purchases of hydrocodone by one customer, whose license the DEA has also suspended. While not minimizing the seriousness of the allegations or the real threat of diversion that may have existed through shipments to that particular customer, such conduct does not accurately reflect the true customer base of the distribution center or its product mix. In fact, the overwhelming majority of pharmacies serviced from its distribution facility in Auburn receive controlled substances that are not commonly diverted and service customers who generally are not suspected of abusing prescription drugs.

**Jodi L. Avergun** Tel 2456 Fax 202 862 2400 jodi.avergun@cwt.com

Cadwalader, Wickersham & Taft LLP is a registered limited liability partnership established under the laws of the State of New York. The personal liability of our partners is limited to the extent provided in such laws. Additional information is available upon request or at www.cadwalader.com. A list of our partners, who are Solicitors or Registered Foreign Lawyers in England and Wales, is available for inspection at the above address. Regulated by the Solicitors Regulation Authority.

USActive 11145232.1

CONFIDENTIAL

# CADWALADER

Larry Cote, Esq.
30 November 2007

Accordingly, as applied, the suspension order reaches far beyond its fair scope, which is to stop diversion.

Recognizing the importance of policing Internet drug sales, Cardinal began in November 2005 to put in place processes to guard against the threat Internet pharmacies pose. To that end, new compliance procedures were established, including training and on site investigations by corporate compliance representatives. Several accounts were shut down as a result of those investigations. In addition, Cardinal identified several pain management clinics that were receiving large quantities of hydrocodone and notified DEA of that fact. After an Order of Administrative Inspection was served on Cardinal's Houston distribution center, the company put in place a number of new and enhanced compliance policies, and undertook to investigate its 150 largest hydrocodone purchasers nationally. Horen's was one of those purchasers, and in early November, Cardinal representatives performed an on site inspection of Horen's, interviewed its owner and conducted additional investigation. Included in the package of investigative material (provided to you earlier today) was a certification from Horen's that it did understand its obligation to prevent diversion. As a result of the continuing investigation, on November 27, 2007, a Cardinal compliance consultant recommended that Horen's be shut down as a customer effective December 3rd. We believe that this proactive anti-diversion action, which occurred before DEA issued its Notice of Immediate Suspension, demonstrates Cardinal's good faith and ongoing desire to prevent diversion.

In light of the potential harm to legitimate prescription drug patients and considering Cardinal's good faith efforts, we respectfully request that the company be permitted to continue to ship controlled substances to the following classes of customers from its Auburn facility and propose an Interim Order of Special Dispensation permitting such shipments to continue even after the suspension order is effectuated. In particular, Cardinal seeks an exemption from the order for the shipment of:

- Controlled substances to hospitals, and federal, state and local governmental facilities. There is no public interest in preventing Cardinal from servicing patients under the close supervision of medical professionals in hospitals and residential treatment settings, and customers through which diversion clearly cannot and does not occur.

- In addition, Cardinal seeks permission to continue sales in a limited amount, to be mutually agreed upon, to Walgreens, Kroger, Kmart, Rosaur's, and Pharmaca, all of which are large, national or regional chains which pose no threat of diversion due to their sophisticated anti-diversion systems and historical record of compliance.

CONFIDENTIAL

CAH_MDL2804_01376796

# CADWALADER

Larry Cote, Esq.
30 November 2007

- In addition, Cardinal seeks permission to continue sales in a limited amount, to be mutually agreed upon, to Bioscrip, a national specialty pharmacy provider which treats patients with chronic disease states.

The Company has tried to limit its request for exceptions to those that clearly raise no imminent risk of diversion.  Notwithstanding the above exceptions, a significant portion of the company's customers, along with the company, will face substantial hardship as a result of this immediate suspension.   With no reason to suspend orders to these particular customers, and given the minimal to non-existent risk of diversion, imposing a blanket suspension would work a grave hardship on the Company's customers, and would place the public health at risk.

While Cardinal will continue to do everything in its power to ensure the steady and secure supply of controlled substances to its customers, (which will result in imposing personal hardships on its employees and incurring significant expenses to re-route its distribution lines from other facilities), there is simply no way for the company to re-route around the Washington state licensing requirement.  Accordingly, we believe that granting the proposed modification to the order is a reasonable interim resolution.

Finally, Cardinal needs immediate guidance as to how to dispose of shipments already in transit from being received at its facility in Washington and how to handle return shipments from its customers. As you are aware, both of these actions require a valid registration on Cardinal's part.

We ask that you raise these issues with the responsible members of your office as soon as possible, and, if necessary, schedule a meeting for us with members of your office to allow us to more fully address this matter.  We will be happy to submit a proposed order for your consideration if you think that would be helpful.  Thank you once again for your courtesies.

Very truly yours

Jodi L. Avergun

JLA

CONFIDENTIAL

CAH_MDL2804_01376797

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York  London  Charlotte  Washington  Beijing

1201 F Street, N.W., Washington, DC  20004
Tel 202 862 2200  Fax 202 862 2400
www.cadwalader.com

December 10, 2007

**VIA E-MAIL LARRY.P.COTE@USDOJ.GOV**

Larry Cote, Esq.
Robert Walker, Esq.
Office of Chief Counsel
Drug Enforcement Administration
700 Army Navy Drive
Arlington, Virginia 20002

In the Matter of Cardinal Health Order to Show Cause Dated December 5, 2007
    (Lakeland)

**Dear Counsel:**

I write to request that the DEA limit the effect of the above-referenced order immediately to suspend the DEA registration of Cardinal Health's Lakeland, Florida facility as is proposed below. Cardinal Health seeks this limitation in order to continue to deliver controlled substance medications to those customers, such as hospitals, federal, state, and local governmental facilities and large chain retailers with a legitimate need and which pose no threat of diversion.

Limiting the Effect of the Order is Appropriate

In seeking this exception, Cardinal Health is not disputing the factual contentions in the order to show cause. As Cardinal Health has repeatedly informed the Agency, it understands DEA's concerns and is anxious to resolve the pending actions by, among other things, enhancing its compliance policies and exerting better internal controls. Nevertheless, Cardinal Health seeks a modification of the order to show cause to limit its effect. While Cardinal Health greatly appreciates that the Deputy Administrator has delayed the effective date of the order of suspension until December 10, 2007, the effect of the immediate suspension still works an unwarranted hardship on Cardinal Health customers which pose no risk of diversion.

The delivery of prescription pharmaceuticals in Florida presents a unique challenge. In Florida, the chain of custody of pharmaceuticals from manufacturer to end user must be documented. Cardinal Health has put in place systems to document the pedigree of all controlled substances delivered into Florida, but within Cardinal Health's full-service

**Jodi L. Avergun**  Tel 2456  Fax 202 862 2400  jodi.avergun@cwt.com

CONFIDENTIAL

# C A D W A L A D E R

Larry Cote, Esq.
December 10, 2007

distribution centers those systems exist only in the Lakeland facility and do not yet exist in other pharmaceutical distribution centers that could potentially service customers in the State of Florida. Furthermore, the special requirements associated with sourcing pharmaceuticals directly from the manufacturer and handling and segregating returns for this state adds an additional burden to the distribution process for Florida. Specifically, Cardinal Health is preparing its Jackson distribution center to handle all of the controlled substance orders into Florida. However, to do so will require Cardinal Health to replace all of its controlled substance inventory in the Jackson facility in order to ensure that only controlled substances that meet Florida's rigorous pedigree standards are distributed into Florida. This will engender both delay of shipments into Florida, including to the sizeable hospital and governmental customers Cardinal Health has there, and result in additional costs to Cardinal Health. Finally, the overwhelming majority of pharmacies serviced from the distribution facility in Lakeland receive controlled substances that are not commonly diverted and service customers who generally are not suspected of abusing prescription drugs. Thus, the effect of the order of immediate suspension reaches behavior that does not amount to actionable conduct by the DEA. Accordingly, as applied, the suspension order reaches far beyond its fair scope, which is to stop diversion.

In light of the potential harm to legitimate prescription drug patients, we respectfully request that the company be permitted to continue to ship controlled substances to the following classes of customers from its Lakeland facility and propose an Interim Order of Special Dispensation permitting such shipments to continue even after the suspension order is effectuated. In particular, Cardinal Health seeks an exemption from the order for the shipment of:

- Controlled substances to hospitals, and federal, state and local governmental facilities. There is no public interest in preventing Cardinal Health from servicing patients under the close supervision of medical professionals in hospitals and residential treatment settings, and customers through which diversion clearly cannot and does not occur.

- Controlled substances with appropriate limits, to be mutually agreed upon, to CVS, Walgreens, Kroger, Kmart, and Winn Dixie, all of which are large, national or regional chains which pose no threat of diversion due to their sophisticated anti-diversion systems and historical record of compliance.

Cardinal Health will continue to do everything in its power to ensure the steady and secure supply of controlled substances to its customers (which will result in imposing personal hardships on its employees and incurring significant expenses to re-route its distribution lines

Page 2

CAH_MDL2804_01376799

# C A D W A L A D E R

Larry Cote, Esq.
December 10, 2007

from other facilities).  Accordingly, we believe that granting the proposed modification to the
order is a reasonable interim resolution.

We ask once again that you raise these issues with the responsible members of your office as
soon as possible.  We look forward to discussing this matter and a resolution of the entire case
in a settlement meeting that we hope will occur this week.  We will be happy to submit a
proposed order for your consideration if you think that would be helpful.  Thank you once
again for your consideration.

Very truly yours,

Jodi L. Avergun

JLA

Page 3

CONFIDENTIAL

CAH_MDL2804_01376800

# C A D W A L A D E R

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

1201 F Street, N.W., Washington, DC 20004
Tel 202 862 2200 Fax 202 862 2400
www.cadwalader.com

December 18, 2007

**VIA E-MAIL LARRY.P.COTE@USDOJ.GOV &
IMELDA.L.PAREDES@USDOJ.GOV**

Larry Cote, Esq.
Imelda Paredes, Esq.
Office of Chief Counsel
Drug Enforcement Administration
700 Army Navy Drive
Arlington, Virginia 20002

In the Matter of Cardinal Health Order to Show Cause Dated December 10, 2007
(Swedesboro)

**Dear Counsel:**

I write to request that the DEA limit the effect of the December 10, 2007 Order to Show Cause regarding Cardinal Health's Swedesboro, New Jersey facility as is proposed in more detail below. Specifically, Cardinal Health seeks a limited carve-out to permit it to continue to deliver controlled substance medications to certain customers, such as hospitals, federal, state, and local governmental facilities and large chain retailers with a legitimate need and which pose no threat of diversion. As Cardinal Health's CEO and Chairman Kerry Clark explained in our meeting last week, Cardinal Health is seeking a way, even while we work through compliance improvements, to deliver medicine to good, compliant customers. Thus, we respectfully make this application.

Limiting the Effect of the Order is Appropriate

Cardinal Health seeks a modification of the order to show cause to limit its effect. While Cardinal Health appreciates that the Deputy Administrator delayed the effective date of the order of suspension until December 13, 2007, the effect of the immediate suspension still works an unwarranted hardship on Cardinal Health customers which pose no risk of diversion. For instance, the Swedesboro facility services a large number of large scale retail customers. In particular, Cardinal Health services more than 700 CVS stores (approximately 11% of their chain) from its Swedesboro facility. As Cardinal Health is CVS' sole source for controlled substances, CVS does not warehouse its controlled substances. The logistics for large customers like CVS to transition that number of accounts to another wholesaler would be

**Jodi L. Avergun** Tel 2456 Fax 202 862 2400 jodi.avergun@cwt.com

# CADWALADER

Larry Cote, Esq.
December 18, 2007

significant, and customers requiring this magnitude of medicines cannot switch suppliers quickly and without significant cost. Thus, DEA's current actions threaten their ability to provide needed medications to patients. Moreover, the huge logistical barriers to switching suppliers make it extremely unlikely that these customers will ever return to Cardinal Health.

Furthermore, the immediate suspension of the Swedesboro facility will also create an unwarranted hardship on governmental programs and facilities such as the Department of Defense's Vendor Managed Inventory (VMI) program. The VMI is a unique Department of Defense program pursuant to which Cardinal Health provides items for Department of Defense readiness to support worldwide contingencies. Of the several hundred items that Cardinal Health has contracted to always have on hand and provide to the Department of Defense within 24-72 hours, there are approximately 30 schedule III - V items for which Cardinal Health is the sole provider. The failure to provide those items to the Department of Defense on a timely basis could jeopardize the Department of Defense's ability to meet its War Time and Contingency healthcare programs. At present, Cardinal Health does not have the ability to transfer the unique systems and product that supports the VMI program to another Cardinal Health distribution facility in the short term. There is no risk of diversion associated with this governmental program, and there is no public interest served by preventing Cardinal Health from distributing controlled pharmaceuticals to support it.

In light of the presumably unintended potential harm to legitimate prescription drug patients, we respectfully request that the company be permitted to continue to ship controlled substances to the following classes of customers from its Swedesboro facility and propose an Interim Order of Special Dispensation permitting such shipments to continue even after the suspension order is effectuated. In particular, Cardinal Health seeks an exemption from the order for the shipment of:

- Controlled substances to hospitals, and federal, state and local governmental facilities. There is no public interest in preventing Cardinal Health from servicing patients under the close supervision of medical professionals in hospitals and residential treatment settings, and customers through which diversion clearly cannot and does not occur.

- Controlled substances with appropriate limits, to be mutually agreed upon, to CVS, Walgreens, Kmart, SUPERVALU, and Ahold, all of which are large, national or regional chains which pose no threat of diversion due to their sophisticated anti-diversion systems and historical record of compliance.

Page 2

CONFIDENTIAL

# CADWALADER

Larry Cote, Esq.
December 18, 2007

- Controlled substances in a limited amount, to be mutually agreed upon, to BioScrip, a national specialty pharmacy provider that treats patients with chronic disease states.

To assuage any concerns the DEA might have with respect to granting the proposed modification, Cardinal Health would, upon the granting of the modification, place an employee from Cegedim Dendrite ("Dendrite") on-site at the Swedesboro facility during the remainder of the suspension. The Dendrite employee will work with Cardinal Health's corporate Quality and Regulatory Affairs group to monitor the controlled substance orders placed by such customers and the procedures in place at the facility with respect to processing them. In addition, Cardinal Health will provide to the DEA such reports on the controlled substance orders as the DEA deems appropriate.

Cardinal Health will continue to do everything in its power to ensure the steady and secure supply of controlled substances to its customers (which will result in imposing personal hardships on its employees and incurring significant expenses to re-route its distribution lines from other facilities). However, it is becoming increasingly unlikely that it will be able to do so as DEA continues to impose suspension orders on Cardinal Health facilities across the nation. Accordingly, we believe that granting the proposed modification to the order is a reasonable interim resolution.

We ask once again that you raise these issues with the responsible members of your office as soon as possible. We greatly appreciate having had the opportunity to meet with you last week and are confident that we can achieve our mutual goals of promoting public health and safety, and protecting the controlled substance supply chain. Thank you once again for your consideration.

Very truly yours,

Jodi L. Avergun

JLA
cc:     John Carney, Esq.,

        Ivan Fong, Esq.
        Chief Legal Officer, Cardinal Health

Page 3

CONFIDENTIAL

## Nowrangi, Priya

| | |
|---|---|
| **From:** | Fong, Ivan [Ivan.Fong@cardinalhealth.com] |
| **Sent:** | Tuesday, December 18, 2007 10:50 AM |
| **To:** | David.L.Barber@usdoj.gov |
| **Cc:** | Cote, Larry P.; Avergun, Jodi; jcarney@bakerlaw.com; Falk, Steve |
| **Subject:** | Letter from Cardinal Health |
| **Attachments:** | 0512_001.pdf; Outline of Key Actions on Anti-Diversion - 12-18-07.pdf |

Linden -- Attached please find a letter, with an attachment, in response to your questions posed at our meeting last Thursday.  Thank you again for your hospitality and courtesy.  Please let me know if you have any trouble opening the attachments.

Ivan

Ivan K. Fong
Chief Legal Officer and Secretary
Cardinal Health, Inc.
7000 Cardinal Place
Dublin, OH  43017
614.757.7768 tel
614.652.7325 fax
ivan.fong@cardinalhealth.com

This message is for the designated recipient only and may contain privileged, propri
or otherwise private information. If you have received it in error, please notify th
immediately and delete the original. Any other use of the email by you is prohibited

Dansk - Deutsch - Espanol - Francais - Italiano - Japanese - Nederlands - Norsk - Po
Svenska: www.cardinalhealth.com/legal/email

1/11/2008

CONFIDENTIAL

CAH_MDL2804_01376804



**Ivan K. Fong**
Chief Legal Officer and Secretary

Cardinal Health
7000 Cardinal Place
Dublin, OH 43017
614.757.7768 tel
614.652.7325 fax
ivan.fong@cardinal.com

www.cardinalhealth.com

December 18, 2007

**CONFIDENTIAL TREATMENT REQUESTED**

**BY ELECTRONIC MAIL AND FIRST-CLASS MAIL**
D. Linden Barber
Associate Chief Counsel
Diversion and Regulatory Litigation Section
Office of Chief Counsel
Drug Enforcement Administration
U.S. Department of Justice
700 Army Navy Drive
Arlington, VA 22202

Re:  <u>Cardinal Health, Inc. – Responses to Requests</u>

Dear Linden:

Thank you again for arranging the meeting we had with you and your colleagues in your offices last week. I believe we had a constructive exchange of views, and I look forward to continued dialogue with you as we continue to enhance our anti-diversion efforts.

During and after the meeting, you made several information requests. The purpose of this letter is to provide our responses to your requests.

1.  During the meeting, we promised to send you a summary chart of action items being taking to enhance our anti-diversion controls. You will note that the enclosed Outline of Key Actions is organized by the categories mentioned at the meeting by Jeff Henderson: people, processes, and systems.

2.  After the meeting, you asked for the names of the four controlled substances that have been the recent and ongoing focus of our anti-diversion efforts to-date. The four controlled substances are: hydrocodone, oxycodone, alprazolam, and phentermine. These four controlled substances are also the focus of the initial IT-based real-time order monitoring and blocking system that will be implemented across Cardinal Health distribution centers this month.

D. Linden Barber
December 18, 2007
Page 2

3.    After the meeting, you also asked us to elaborate on the threshold
used to shut off hydrocodone accounts.  We mentioned at the
meeting a threshold of 400,000 units/year.

Effective December 6, 2007, Cardinal Health established certain
internal thresholds (based on sales volumes and mix of product
sold, as described below) to be used as a basis for immediately
discontinuing controlled substance sales to certain accounts.
Specifically, Cardinal Health discontinued – without conducting an
on-site inspection of the customer – sales of controlled substances
to accounts that exceeded these thresholds.  The thresholds were
set at a level considered sufficiently significant to warrant a decision
based on numerical figures alone.  Accounts falling below these
thresholds, but whose orders were otherwise considered to be
suspicious, received on-site investigation before any decision to
discontinue controlled substance shipments.

To date, based on 12-month averages, sales of controlled
substances were discontinued to an account if they met the
following thresholds:
- ≥ 400,000 units/year hydrocodone; or
- ≥ 375,000 units/year oxycodone; or
- ≥ 250,000 units/year alprazolam; or
- ≥ 200,000 units/year phentermine; and

- Purchases of controlled substances > 30% of the total
amount of product purchased (controlled substances + non-
controlled substances) during the same 12-month period.

Although we recognize that applying these thresholds carries a risk
of discontinuing shipments to legitimate accounts, we believe it is a
reasonable and prudent step in light of the risk of diversion at these
accounts.  As an additional refinement, however, we have also
concurrently established a process to re-evaluate discontinued
accounts if a terminated customer can substantiate that Cardinal
Health's decision to discontinue was inappropriate in light of
available information.  Before such accounts are re-activated, we
(or an appropriate Cardinal Health agent) will conduct an on-site
review of that customer to assist in determining whether a
reinstatement is warranted based on reasonable judgments and in
light of all the facts and circumstances.

\*        \*        \*

CONFIDENTIAL

CAH_MDL2804_01376806

D. Linden Barber
December 18, 2007
Page 3

Finally, I wanted to inform you that last week we initiated an intensive on-site third-party review of 18 distribution centers that have not been the subject of your recent enforcement actions.  Starting yesterday, teams of attorneys from our outside law firms, accompanied by consultants from Dendrite, will be visiting the distribution centers and reporting their findings to us.  The purpose of the review is to provide a detailed and on-the-ground assessment of the current effectiveness of our anti-diversion controls.  We envision making a summary of this assessment available to you in the near future.

Because this review is ongoing, and because we would like to devote our exclusive attention to the critical goals of ensuring that important medicines get to those who need it, and not to those who would divert it, we hope you will forbear from executing additional warrants or enforcement actions, at least based on any conduct that occurred before our meeting on December 13.  We believe that, with a few weeks of concentrated efforts, we can demonstrate to your satisfaction that the continued registration of our distribution centers poses no immediate danger to public health and safety.

I look forward to another meeting with you in the new year to discuss an expedited resolution of these matters.  In the meantime, please do not hesitate to contact Jodi Avergun, John Carney, or me if you have any questions.

Very truly yours,

Ivan K. Fong

Enclosure

cc:  Larry P. Cote, Senior Attorney, DEA
     Jodi L. Avergun, Cadwalader, Wickersham & Taft LLP
     John J. Carney, Baker Hostetler

CONFIDENTIAL

CONFIDENTIAL

**Cardinal Health, Inc.**
**Outline of Key Actions on Anti-Diversion**
**December 18, 2007**
**Page 1 of 2**

| Action | Status |
|---|---|
| **People** | |
| 1. Establish new, elevated organizational unit responsible for supply chain integrity and anti-diversion; direct dual reporting to the interim Chief Executive Officer, HSCS and the EVP, QRA, Cardinal Health | |
|   a. Appoint new SVP, Supply Chain Integrity and Anti-Diversion | **Completed December 14, 2007** |
|   b. Hire VP, Anti-Diversion reporting to the SVP, Supply Chain Integrity and Anti-Diversion | **Completed December 6, 2007** |
|   c. Add five investigators to the Anti-Diversion group to bring total to eight investigators | Target completion February 28, 2008 |
|   d. Change reporting of VP, HSCS QRA to direct reporting to the SVP, Supply Chain Integrity and Anti-Diversion | **Completed December 17, 2007** |
|   e. Centralize reporting relationships for all field QRA positions to VP, HSCS QRA | Target completion December 21, 2007 |
|   f. Conduct personnel analysis and replace underperforming QRA personnel in DCs; replacement personnel to report to VP, HSCS QRA | Target completion January 31, 2008 |
| 2. Supplement both anti-diversion unit and field organization efforts with resources from Dendrite until new positions and gaps are closed. | **Completed December 10, 2007** |
| 3. Upgrade know-your-customer and due diligence training for the retail independent sales force and conduct refresher training for all retail independent sales personnel | **Started October 2007; Target completion December 19, 2007 for initial training; refresher training to be conducted annually thereafter** |
| 4. Develop and deliver enhanced diversion control training for field sales and operations personnel | Target completion January 31, 2008 |
| 5. Make anti-diversion compliance a component of annual performance reviews and incentive compensation for field sales and operations personnel | Target completion January 31, 2008 |
| 6. Develop overall communications strategy to regularly underscore applicable employees to Cardinal Health's obligations to prevent diversion | Target completion December 31, 2007 |
| **Processes** | |
| 1. Conduct independent third-party, on-site investigations of anti-diversion control processes at each distribution center to identify risks. | Target completion January 5, 2008 |
| 2. Establish standardized criteria to identify excessive purchasers who need to be investigated based on monthly sales. | **Completed October 2007** |

CAH_MDL2804_01376808

CONFIDENTIAL

**Cardinal Health, Inc.**
**Outline of Key Actions on Anti-Diversion**
**December 18, 2007**
**Page 2 of 2**

| | |
|---|---|
| 3. Establish standard questionnaire, decision tree, verification form and signed statement of compliance to evaluate customers (new and existing) to be used in the investigation | **Completed November 2007** |
| 4. Centralize process for discontinuation of a suspicious account. | **Completed August 2007** |
| 5. Implement controls to improve execution of centralized discontinuation process. | **Completed December 17, 2007** |
| Implement process improvements to ensure that accounts on DEA alert list are suspended and only reinstated if investigated and cleared. | Target completion December 18, 2007 |
| 6. Conduct retrospective review of high-volume customers of hydrocodone, oxycodone, alprazolam, and phentermine | - **Completed review of initial set of 177 hydrocodone customers - December 2007** <br> - Target completion for investigation of additional 160 high-volume customers – January 2008. |
| 7. Implement tollgate procedure where QRA reviews and approves each new retail independent and wholesale customer. | Target completion December 21, 2007 |
| 8. Develop corrective action plan and implement improvements arising out of independent third-party investigation (see item #1) | Target completion date based upon findings |
| **Systems** | |
| 1. Implement individual SKU (stock keeping unit) daily order limiter for hydrocodone, oxycodone, alprazolam, and phentermine until the suspicious order monitoring system is operational. | **Completed December 10, 2007** |
| 2. Develop and implement a computerized system to identify, block and report suspicious orders | |
| a. Phase I for hydrocodone, oxycodone, alprazolam, phentermine in retail independent accounts | **Completed beta launch in Houston December 15, 2007; Target network-wide rollout December 23, 2007** |
| b. Phase II for all controlled substances in all pharmacies | Target completion January 31, 2008 |

CONFIDENTIAL