PSJ3 Exhibit 330

CardinalHealth

## CONFIDENTIALITY and RESTRICTED USE AGREEMENT

This CONFIDENTIALITY and RESTRICTED USE AGREEMENT (this "Agreement") is entered into as of the __ day of _____, 20__ ("Effective Date"), by and between Cardinal Health 110, Inc. and Cardinal Health 411, Inc. (collectively, "Cardinal Health"), each, with its principal place of business at 7000 Cardinal Place, Dublin, Ohio 43017, and Endo Pharmaceuticals Inc. for and on behalf of its Affiliates ("Company"), with its principal place of business at 1400 Atwater Drive, Malvern, PA 19355.

### RECTITALS

WHEREAS, Company manufactures and sells certain pharmaceuticals that are "controlled substances" under federal law (collectively, "Company Controlled Substances");

WHEREAS, Cardinal Health is a distributor/wholesaler that purchases Company Controlled Substances and sells them to its customers ("Pharmacy Customers");

WHEREAS, Company Controlled Substances are subject to statute and/or regulation by the U.S. Drug Enforcement Administration ("DEA");

WHEREAS, as DEA registrants, Cardinal Health and Company, are required by DEA to design and operate a system to report suspicious orders of controlled substances to DEA pursuant to 21 C.F.R. §1301.74(b);

WHEREAS, DEA has expressed concerns with the possible diversion and abuse of certain controlled substances, including certain Company Controlled Substances;

WHEREAS, DEA has identified pharmacy customer purchases of controlled substances from multiple distributors as a sign indicative of possible diversion;

WHEREAS, Cardinal Health is presently able to monitor its own sales of Company Controlled Substances to its Pharmacy Customers, but cannot monitor whether those Pharmacy Customers are purchasing the same Company Controlled Substances from other distributors/wholesalers and, if so, how much they are purchasing;

WHEREAS, DEA does not inform distributors/wholesalers whether their Pharmacy Customers are purchasing the same controlled substances from other distributors/wholesalers;

WHEREAS, Company, through its charge back system or other means, can identify some of the Pharmacy Customers who are purchasing Company Controlled Substances from multiple distributors/wholesalers and the volumes the Pharmacy Customers are purchasing from each distributor/wholesaler;

WHEREAS, Company has agreed to provide assistance to Cardinal Health's suspicious order monitoring program and related anti-diversion programs or processes involving controlled

1

Version 1 (11/27/12)

substances (collectively "Cardinal Health's SOM Program") by providing Cardinal Health with the total number of other distributors/wholesalers from which its Pharmacy Customers are purchasing certain Company Controlled Substances and the aggregate volume of those Company Controlled Substances the Pharmacy Customers are purchasing from all distributors/wholesalers;

WHEREAS, Cardinal Health has agreed to provide assistance to Company's suspicious order monitoring program and related anti-diversion programs or processes involving Company Controlled Substances (collectively "Company's SOM Program") by providing Company with information as to what Company Controlled Substances are being purchased by certain of Cardinal Health's Pharmacy Customers, and the aggregate volume of the applicable controlled substances from all manufacturers that the applicable Pharmacy Customers are purchasing from Cardinal Health;

WHEREAS, in an effort to enhance the effectiveness of Cardinal Health's and Company's SOM Programs and to reduce the likelihood of diversion of controlled substances, each party agrees to provide the applicable information described above to the other party in accordance with the terms and conditions set forth herein solely for use in the party's SOM Program; and

WEHREAS, each of Cardinal Health and Company understand the commercially sensitive nature of the information that the other party will provide under this Agreement and agree to receive such information and utilize it strictly in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the promises, covenants and representations of the parties set forth herein, and other good and sufficient consideration, receipt of which is hereby acknowledged, Company and Cardinal Health agree as follows:

1. Cardinal Health intends to disclose certain proprietary Confidential Information (as defined below) to the Company in connection with its SOM Program. As a condition to Cardinal Health agreeing to furnish the Confidential Information to the Company, the Company hereby agrees, as set forth below, to restrict the use of that information and to treat confidentially such information that Cardinal Health furnishes to the Company, whether furnished in writing, orally, electronically or by means of inspection.

2. Company intends to disclose certain proprietary Confidential Information (as defined below) to Cardinal Health in connection with its SOM Program. As a condition to Company agreeing to furnish the Confidential Information to Cardinal Health, Cardinal Health hereby agrees, as set forth below, to restrict the use of that information and to treat confidentially such information that Company furnishes to Cardinal Health, whether furnished in writing, orally, electronically or by means of inspection.

3. For purposes of this Agreement, "Confidential Information" means: (a) the total amount of controlled substances that Cardinal Health distributes to a Pharmacy Customer during a designated period of time; (b) any information related to site visits conducted by Cardinal Health or Company at a Pharmacy Customer's facility during a designated period of time; (c) the total number of distributors from which a Pharmacy Customer purchased certain

2

Company Controlled Substances during a designated period of time; and, (d) the total number of tablets, capsules or other units of the Company Controlled Substance purchased by the Pharmacy Customer during the designated period of time.

4. The term "Confidential Information" does not include any information that (a) was known to either the receiving party prior to receipt from the disclosing party as evidenced by tangible records; (b) has become available to the public through no fault of the receiving party; (c) is disclosed to the receiving party at any time by a third party having the right to make such disclosure to that the receiving party and without any obligation of confidence on the part of the receiving party to such third party with respect to such disclosure; (d) is disclosed by Cardinal Health or Company with the other party's prior written approval; or (e) is independently developed by the employees or representatives of a party without access to the Confidential Information as evidenced by tangible records.

5. In the event that either party is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process, but excluding requests from regulatory agencies, which is addressed below) to disclose all or any part of the information contained in the Confidential Information, such party shall: (a) promptly notify the other party of the existence, terms and circumstances surrounding such a request prior to any disclosure occurring so that the other party may, with such party's commercially reasonable cooperation, seek an appropriate protective order and/or waive that party's compliance with the provisions of this Agreement, and (b) if disclosure of such information is required, disclose only that portion of any requested information which the party is absolutely required to disclose and use commercially reasonable efforts to cooperate with the other party in its efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to information that is disclosed.

6. Notwithstanding the foregoing, each party hereby agrees to promptly notify the other party of any request from any regulatory agency to inspect or otherwise gain access to the other party's Confidential Information then in the possession of, or known to, such party. A party shall notify the other party of such requests prior to permitting any third party access to the requested information unless prior notice is not possible or practical. If prior notice is not possible or practical, the party receiving the request will contact the other party within five (5) business days and provide copies of all documents disclosed.

7. Except as provided above, nothing herein, or the act of making disclosures hereunder, shall be deemed to grant Company or Cardinal Health any right, option, or license, directly or indirectly, under any intellectual property right in or to Confidential Information of the other party.

8. ALL INFORMATION PROVIDED UNDER THIS AGREEMENT IS PROVIDED BY THE DISCLOSING PARTY TO OTHER PARTY "AS IS." CARDINAL HEALTH AND COMPANY MAKE NO WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING THE USE, ACCURACY, COMPLETENESS, SAFETY, PERFORMANCE OR NONINFRINGEMENT OF ANY THIRD PARTY INTELLECTUAL PROPERTY

3

RIGHTS RELATING TO THE INFORMATION PROVIDED UNDER THIS AGREEMENT. EACH PARTY HEREBY DISCLAIMS ANY WARRANTIES PROVIDED BY LAW OR CUSTOM, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES.

9. Each party may provide or refuse to provide Confidential Information under this Agreement at any time in its sole and absolute discretion. Nothing in this Agreement shall be construed as obligating either party to provide Confidential Information to the other party, however, requests for Confidential Information shall not be unreasonably withheld or denied.

10. Nothing herein shall be construed as creating an agency, joint venture, partnership, employment or other formal business relationship or association between the parties hereto, or obligating either party to enter into any subsequent agreement or business arrangement or to purchase or sell or provide any goods or services.

11. Each party shall use Confidential Information provided by the other party hereunder solely as part of party's evaluation of Pharmacy Customers under their respective SOM Programs and for no other purpose. In no event shall either party use the Confidential Information to its commercial advantage, to gain an advantage over its competitors, or for any other anti-competitive reason.

12. The Company shall provide Confidential Information to the following person:

Todd Cameron
Vice President, Anti-Diversion
Quality and Regulatory Affairs
Cardinal Health
7000 Cardinal Place
Dublin, Ohio 43017

13. Cardinal Health shall provide Confidential Information to the following person:

Eric Brantley
Manager, Customer Due Diligence (SOM)
Generics Bidco I, LLC d/b/a Qualitest Pharmaceuticals
130 Vintage Drive
Huntsville, AL 35811

14. Each party shall provide the other party's Confidential Information only to their respective individual employees who are responsible for the operation and maintenance of their SOM Program and to no other persons. To that end, in no event shall a party disclose the other party's Confidential Information to: (a) employees of such party who are involved, in any manner, in the purchase, sale, marketing or pricing of controlled substances or (b) any third party.

Confidential Treatment Requested by Endo                                                                    ENDO_HSGAC_0012604

15. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES OF ANY NATURE INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS OR BUSINESS INTERRUPTION, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

16. This Agreement shall continue until terminated by either party upon thirty (30) days advance written notice to the other or superseded by a subsequent written agreement between the parties which explicitly sets forth the obligations of the parties with respect to Confidential Information. Both parties' obligations of confidentiality and non-use hereunder will survive any termination of this Agreement, and will expire five (5) years from the date of disclosure of the Confidential Information. Company's and Cardinal Health's obligation under Section 5 of this Agreement will survive termination of this Agreement.

17. Upon written request of the other party, a party shall promptly destroy/delete all written and/or electronic documentation or data containing the other party's Confidential Information and any other written, recorded or machine readable material containing or reflecting any information in the other party's Confidential Information and certify to the other party that it has done so, provided that a party is not required to destroy/delete Confidential Information in its possession which it is required to retain pursuant to legal or regulatory requirements, a government request or court order. Notwithstanding the foregoing, both parties may retain one (1) copy of the Confidential Information for archival purposes within each party's in-house legal department, and such copy shall remain subject to the provisions of this Agreement.

18. No failure or delay by Cardinal Health or Company in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

19. This Agreement may be modified or waived only by a separate writing between the parties expressly so modifying this Agreement. This Agreement represents the entire understanding and agreement of the parties with respect to the protection of Confidential Information and supersedes any and all prior agreements or understandings, whether written or oral, concerning its protection.

20. Each party hereby acknowledges and agrees that money damages would not be an adequate remedy for any breach of this Agreement by such party and that the other party may be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach in addition to any monetary damages that might be available. Such remedy shall not be deemed to be the exclusive remedy for breach of a provision of this Agreement, but shall be in addition to all other remedies available to law or equity to aggrieved party.

21. Neither party shall assign this Agreement without the prior written consent of the other party. Notwithstanding the foregoing, however, either party may assign this Agreement, in whole or in part, to an affiliate or to the successor of such party (including the surviving company in

Confidential Treatment Requested by Endo

ENDO_HSGAC_0012605

any consolidation, reorganization, merger or demerger) without the consent of, but upon notice to, the other party.

22. This Agreement shall be enforced by, and construed in accordance with, the internal laws of the State of Ohio, without giving effect to the principles of conflict of laws thereof.

23. If any provision of this Agreement is determined to be invalid or unenforceable, then such invalidity or unenforceability shall not invalidate or render unenforceable the entire Agreement, but rather the entire Agreement shall be construed as if not containing the particular invalid or unenforceable provision or provisions, and the rights and obligations of the parties shall be construed and enforced accordingly, provided that this does not materially change the terms of this Agreement. In addition, the parties hereby agree to cooperate with each other to replace the invalid or unenforceable provision(s) with a valid and enforceable provision(s) which will achieve the same result (to the maximum legal extent) as the provision(s) determined to be invalid or unenforceable.

24. This Agreement may be executed by the exchange of faxed executed copies, certified electronic signatures or copies delivered by electronic mail in Adobe Portable Document Format or similar format, and any signature transmitted by such means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original as against any party whose signature appears thereon, but all of which together shall constitute one and the same instrument.

IN WITNESS HEREOF, Cardinal Health and Company have caused their duly authorized representatives to enter into this Agreement effective as of the Effective Date.

| Endo Pharmaceuticals Inc. | Cardinal Health 110, Inc.<br>Cardinal Health 411, Inc. |
|---|---|
| By: | By: *[signature]* |
| Name: | Name: Todd Cameron |
| Title: | Title: VP, supply chain integrity |
| Date: | Date: 1/16/14 |

Confidential Treatment Requested by Endo

ENDO_HSGAC_0012606