# PSJ9 Exh 28

Highly Confidential - Subject to Further Confidentiality Review

```
 1         IN THE UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF OHIO
 3                   EASTERN DIVISION
 4                       - - -
 5
    IN RE:  NATIONAL          :   HON. DAN A.
 6  PRESCRIPTION OPIATE       :   POLSTER
    LITIGATION                :
 7                            :
    APPLIES TO ALL CASES      :   NO.
 8                            :   1:17-MD-2804
                              :
 9
             - HIGHLY CONFIDENTIAL -
10
    SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
11
                       - - -
12
              February 19, 2019
13
                       - - -
14
15          Videotaped deposition of
    MICHAEL DiBELLO, taken pursuant to
16  notice, was held at the offices of Locke
    Lord, LLP, 200 Vesey Street, New York,
17  New York, beginning at 10:29 a.m., on the
    above date, before Michelle L. Gray, a
18  Registered Professional Reporter,
    Certified Shorthand Reporter, Certified
19  Realtime Reporter, and Notary Public.
20                     - - -
21
         GOLKOW LITIGATION SERVICES
22     877.370.3377 ph | 917.591.5672 fax
               deps@golkow.com
23
24
```

1  formalized process of understanding the
2  practice to the drug, correct?
3      A.   Correct.
4      Q.   You would agree with me that
5  concept is a "know your customer"
6  concept, correct?
7      A.   It's a way of knowing your
8  customer.  It is a way.
9      Q.   Okay.  Her fourth finding,
10 "Orders that are highlighted as
11 suspicious are all investigated.  Those
12 that are cleared from suspicious status
13 are released.  Those that are not are
14 canceled.  At the end of each month, two
15 reports are submitted to the appropriate
16 field office of the DEA.  The first
17 report includes those pended orders that
18 were cleared from suspicious status.  The
19 second report reflects those orders that
20 were deemed suspicious and canceled."
21          Did you understand that that
22 was the practice through 2005 for pended
23 and suspicious orders?
24      A.   Yes.

1      Q.   Did you understand though in
2  that practice, that she recommended that
3  suspicious orders be reported immediately
4  and not at the end of the month.  By
5  reporting them on a monthly basis at the
6  end of the month was inconsistent with
7  the Controlled Substances Act
8  requirements.
9         MR. McDONALD:  Object to the
10     form.
11        THE WITNESS:  In 2005, I
12     don't recall if that was
13     inconsistent with the act.
14  BY MR. MIGLIORI:
15      Q.   She finds -- she documents
16  here the requirement, "The registrant
17  shall inform the field division office of
18  the administration in this area of
19  suspicious orders when discovered by the
20  registrant."
21        Her recommendation she
22  writes, "While HSI has been using the
23  current reporting process for several
24  years, it is recommended consideration to

 1   be given to filing the suspicious order
 2   for those orders not released from
 3   suspicious status to the DEA
 4   immediately."
 5              Do you understand that that
 6   was the recommendation then, that
 7   reporting them at month's end was not
 8   consistent with the requirements of the
 9   Controlled Substances Act?
10        A.    That was her recommendation.
11        Q.    Okay.  Fifth finding.  "When
12   an order pends as suspicious, the order
13   and the customer patterns are reviewed.
14   If it still remains suspicious, a letter
15   is sent to the customer requiring an
16   explanation of the order.  A pending
17   order will not be released without a
18   return letter from the customer."
19              Will you agree with me that
20   the methodology at Schein through
21   September of 2005, and beyond, was, when
22   an order pended, that a letter was sent
23   by first class mail to the doctor or the
24   customer for further information?

```
 1            to -- to be able to readily review
 2            the orders for each of these
 3            criteria.
 4                    Whereas, again, the system
 5            was already in existence many
 6            years prior to 2008.  It may not
 7            have been computer -- automated,
 8            but it's still -- it was able to
 9            review and identify suspicious
10            orders.
11    BY MR. MIGLIORI:
12            Q.    Well, we just went
13    through -- I don't want to go through
14    them again.  But we just went through
15    Buzzeo's findings in 2005, and it wasn't
16    picking up that it needed -- there needed
17    to be a new review of how to check orders
18    for patterns and frequency, not just
19    size.  Do you recall that?
20            A.    Yes.
21            Q.    And one of the things this
22    new monitoring system will review is,
23    among other things, purchasing patterns.
24    That is a new way of looking at the
```

Highly Confidential - Subject to Further Confidentiality Review

1  ordering -- the orders coming into
2  Schein, according to this document.
3          A.    From a systematic approach.
4          Q.    From a systematic approach.
5  And from any approach.  That there was,
6  according to Buzzeo in 2005, no
7  independent review of just pattern in the
8  system prior to this change.
9          A.    In the computer system?
10         Q.    Right.
11         A.    In the computer system.
12         Q.    In the computer system?
13         A.    In the computer system.
14         Q.    The system was not picking
15  up changes in pattern or frequency in the
16  computer system.
17         A.    I would agree with that.
18         Q.    And this new system was
19  going to do that.
20         A.    In the computer system.
21         Q.    In the computer system.
22               And that computer system
23  didn't get implemented in final process
24  until October of 2009, according to your

1    says here, when -- the order is DEA and
2    board of pharmacy are notified by
3    regulatory affairs.
4           Q.    Where?
5           A.    This stuff here.
6           Q.    So under this system, this,
7    on the third page?
8           A.    On this flowchart.
9           Q.    So in 2011, when an order --
10   I'll go back to Page 2 for a second.
11   When an order is pended, because of a
12   deviation in size, frequency or pattern,
13   by this procedure the DEA isn't notified
14   immediately as of February of 2011?
15          A.    The order is -- is pended
16   here.  It's not deemed to be suspicious.
17          Q.    All right.  But what we saw
18   in the early documents that a suspicious
19   order is one that is a deviation in size,
20   frequency, and pattern.
21          A.    Right.
22          Q.    And that once pended, it
23   needs to be reported, as Buzzeo stated in
24   2005, it needs to be reported

1   immediately, correct?
2            MR. McDONALD:  Object to the
3       form.  Mischaracterizes the
4       document.
5   BY MR. MIGLIORI:
6       Q.   Not -- not at the end of the
7   month, correct?
8            MR. McDONALD:  Object to the
9       form.  Mischaracterizes the
10      document and the testimony.  That
11      is not what the document said.
12           THE WITNESS:  The order is
13      pended here.  That doesn't mean
14      it's suspicious.  There's a whole
15      review process here, we just went
16      through.
17  BY MR. MIGLIORI:
18      Q.   I'm going to -- let me give
19  you a hypothetical so we're not
20  confusing.
21           If an order is a deviation
22  in size, it is a pended order in Henry
23  Schein's system, correct?
24      A.   If it's a deviation in size.

Highly Confidential - Subject to Further Confidentiality Review

1        Q.    Yes?
2        A.    Yes.
3        Q.    An order that is a deviation
4  in size, by definition under the CSA, is
5  suspicious, correct?
6              MR. McDONALD:  Object to the
7        form.
8              THE WITNESS:  Not
9        necessarily.
10 BY MR. MIGLIORI:
11       Q.    All right.  Well, you
12 actually had a document where you said
13 exactly that, that we just referred to
14 earlier.
15             You're saying that a
16 deviation in size is not a suspicious
17 order?
18       A.    Potential, potentially.
19 Potential.  It could be.  That's the
20 review process that we're doing here.
21       Q.    So in Schein's system, in
22 February of 2011, Schein is not reporting
23 immediately a deviation in size of order
24 from prior purchasing history to the DEA

Highly Confidential - Subject to Further Confidentiality Review

```
 1   upon discovery.  Is that true?
 2        A.    We were reporting suspicious
 3   orders.
 4              Our definition of a
 5   suspicious order, after the review is
 6   conducted and deemed to be suspicious,
 7   that's when it was reported immediately.
 8        Q.    So this flowchart is
 9   accurate, that you would not have told
10   DEA about this until you got to this last
11   step here of it being --
12        A.    Deemed suspicious.
13        Q.    -- deemed suspicious.
14              All right.  And then it
15   says, "Notes are placed in the system to
16   prevent future shipments of controlled
17   substances to this customer."
18              Where would that go, where
19   would that go into the system?
20        A.    That's a verification
21   function.  I don't know where they'd put
22   that.
23        Q.    Would you know where to find
24   it if you were asked to consult on a
```