# EXHIBIT 100

Highly Confidential - Subject to Further Confidentiality Review

```
 1         IN THE UNITED STATES DISTRICT COURT
 2          FOR THE EASTERN DISTRICT OF OHIO
 3                   EASTERN DIVISION
 4                       -  -  -
 5    IN RE:  NATIONAL      :   MDL NO. 2804
      PRESCRIPTION OPIATE   :
 6    LITIGATION            :
      ---------------------------------------------
 7                          :   CASE NO.
      THIS DOCUMENT         :   1:17-MD-2804
 8    RELATES TO ALL CASES:
                            :   Hon. Dan A.
 9                          :   Polster
10                       -  -  -
              Tuesday, November 27, 2018
11                       -  -  -
12     HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
                 CONFIDENTIALITY REVIEW
13
                         -  -  -
14
                 Videotaped deposition of
15    KEVIN KREUTZER, taken pursuant to notice,
      was held at the law offices of Reed Smith
16    LLP, Three Logan Square, 1717 Arch
      Street, Suite 3100, Philadelphia,
17    Pennsylvania 19103, beginning at 9:34
      a.m., on the above date, before Amanda
18    Dee Maslynsky-Miller, a Certified
      Realtime Reporter.
19
                         -  -  -
20
21
22
23         GOLKOW LITIGATION SERVICES
         877.370.3377 ph | 917.591.5672 fax
24              deps@golkow.com
```

1      Q.   And after you were promoted,
2  did you continue to report to Mr.
3  Cherveny?
4      A.   Yes.
5      Q.   Was there any change in your
6  job responsibilities when you became a
7  diversion control investigator?
8      A.   No.  They were pretty much
9  the same.
10     Q.   You said there was a brief
11 interruption in your employment with
12 AmerisourceBergen.
13          What happened there?
14     A.   I applied for a position for
15 Teva Pharmaceuticals.
16     Q.   When was that?
17     A.   I started January 7th, I
18 believe, of 2012.
19     Q.   That's a pretty specific
20 date.
21          Is there some reason why
22 that date stands out to you?
23     A.   I just remember the date.
24     Q.   What prompted the

Highly Confidential - Subject to Further Confidentiality Review

| | | |
|---|---|---|
| 1 | A. | No.  No, I don't. |
| 2 | Q. | If later we showed you some documents between -- e-mail correspondence between you and Ms. McGinn, do you think it would refresh your recollection about her title and her position? |
| 8 | A. | Perhaps. |
| 9 | Q. | Do you recall, when you worked at Teva Pharmaceuticals, exchanging e-mail correspondence with Ms. McGinn? |
| 13 | A. | Yes. |
| 14 | Q. | Did you report directly to her at the time? |
| 16 | A. | I did. |
| 17 | Q. | So in January 2012, you joined Teva Pharmaceuticals.
And, if I recall correctly, you were applying for the division operations manager -- or diversion operations manager position, correct? |
| 23 | A. | Yes. |
| 24 | Q. | And did you succeed in |

Highly Confidential - Subject to Further Confidentiality Review

```
 1   securing that position?
 2        A.    I did.
 3        Q.    And when you began working
 4   for Teva Pharmaceuticals, was your job
 5   title the same one that you applied for?
 6        A.    Yes.
 7        Q.    How long were you employed
 8   with Teva Pharmaceuticals?
 9        A.    Three months.
10        Q.    Did you say three months?
11        A.    Yes.
12        Q.    What happened -- what
13   happened when you left Teva
14   Pharmaceuticals?  Did you go -- what
15   happened with your job -- those are all
16   bad questions.
17              What did you do after those
18   three months?
19        A.    What did I do after those
20   three months?
21        Q.    Yes.
22        A.    I went back to
23   AmerisourceBergen.
24        Q.    So is it your recollection,
```

1  Q. Why were you trying to
2 enhance it?
3  A. Just like with any system,
4 you're always trying to enhance the
5 system as it goes on.
6  Q. In 2013 -- actually, I
7 believe we discussed earlier the time
8 period during which you worked at Teva,
9 and I think you said that you joined that
10 company in 2012 and you worked there for
11 three months.
12   Looking at the date in this
13 e-mail, which is January 2013, does that
14 refresh your recollection about how long
15 you would have worked at Teva?
16  A. It does.
17  Q. So is it possible that you
18 worked until the middle of 2013 instead
19 of middle of 2012?
20  A. I started January 7th, as I
21 indicated previously, but I may have said
22 2012. So it was 2013 until April 1st,
23 2013.
24  Q. So your recollection is that

Highly Confidential - Subject to Further Confidentiality Review

1  you started in January 2013 instead of
2  2012?
3         A.    That is correct.
4         Q.    Understood.
5               And so you would have worked
6  until approximately April of 2013?
7         A.    April 1st.
8         Q.    Okay.  Understood.
9               In the months that you
10 worked at Teva, do you think you
11 developed a pretty good working
12 understanding of Teva's suspicious order
13 monitoring system?
14              MR. MAIER:  Object to form.
15              THE WITNESS:  I felt like I
16        had a good understanding of their
17        system in place.
18 BY MR. CLUFF:
19        Q.    Did you feel like it was a
20 robust system?
21              MR. MAIER:  Object to form.
22              THE WITNESS:  I felt like it
23        was a good system that they had.
24 BY MR. CLUFF:

1          back on the record at 2:56 p.m.
2   BY MR. CLUFF:
3          Q.   Mr. Kreutzer, you testified
4   that you only worked for Teva for
5   approximately 90 days?
6          A.   Yes.
7          Q.   How come you decided to
8   leave Teva after only 90 days?
9          A.   I was let go.
10         Q.   Can you share the reason why
11  you were let go?
12         A.   Sure.  I was let go because
13  Colleen felt that I wasn't doing the job
14  up to par, I guess.
15         Q.   Did she express what part of
16  the job you were not doing up to par?
17         A.   She felt like I needed more
18  assistance than I should have had.  She
19  was not -- she wasn't directly on site at
20  all times, she was off site at another
21  location.  So I was by myself on the job,
22  for the most part.
23         Q.   Was there a specific part of
24  your job parameters or job description

Highly Confidential - Subject to Further Confidentiality Review

1  where she felt that -- where she
2  identified that your performance was
3  lacking?
4          A.   One issue was that I took it
5  upon myself to contact a customer
6  directly regarding an order that was
7  pended.  But I was previously told that
8  if I had any questions of any customers
9  that I had to go through customer
10 service, and then customer service would
11 then contact the customer with my
12 questions and then relay the answers back
13 to customer service, and then back to me.
14         Q.   And so the problem was that
15 if you contacted the customer directly?
16         A.   Yes.
17         Q.   Was that the straw that
18 broke the camel's back, so to speak?
19              MR. MAIER:  Object to form.
20              THE WITNESS:  I think it was
21     a good part of it.
22 BY MR. CLUFF:
23         Q.   Was there any other -- any
24 other specific information that was