# EXHIBIT 293

Highly Confidential - Subject to Further Confidentiality Review

```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
                      - - -

 IN RE: NATIONAL        :  HON. DAN A.
 PRESCRIPTION OPIATE    :  POLSTER
 LITIGATION             :
                        :
 APPLIES TO ALL CASES   :  NO.
                        :  1:17-MD-2804
                        :

              - HIGHLY CONFIDENTIAL -

    SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

                      - - -

                  November 9, 2018

                      - - -

             Videotaped deposition of
 ERIC CHERVENY, taken pursuant to notice,
 was held at the law offices of Reed
 Smith, LLP, 1717 Arch Street,
 Philadelphia, Pennsylvania, beginning at
 9:50 a.m., on the above date, before
 Michelle L. Gray, a Registered
 Professional Reporter, Certified
 Shorthand Reporter, Certified Realtime
 Reporter, and Notary Public.

                      - - -

            GOLKOW LITIGATION SERVICES
        877.370.3377 ph | 917.591.5672 fax
                 deps@golkow.com
```

Highly Confidential - Subject to Further Confidentiality Review

1  come, or once a month, whatever, it came
2  with that regularity and someone would
3  deliver it to you?
4              MR. NICHOLAS:  Object to the
5     form.
6              Go ahead.
7              THE WITNESS:  Yes.
8  BY MR. PIFKO:
9     Q.   Okay.  And then it was your
10 job to look at the -- I'm sorry if I
11 didn't -- if I didn't hear you, the
12 orders or the customers that were on this
13 list?
14    A.   It was -- it was orders and
15 it was broken down by customers.
16    Q.   Okay.  So it was your job to
17 look at all the orders on this list?
18    A.   Yes.
19    Q.   And how did you know, did
20 someone train you about what you were
21 supposed to look for when you were
22 looking at this?
23    A.   I don't remember
24 specifically how I was instructed to --

Highly Confidential - Subject to Further Confidentiality Review

```
 1   to review the report.  I don't remember
 2   how I was instructed.
 3           Q.   Do you know who would have
 4   given you the instructions?
 5           A.   I believe Steve would have
 6   done that.
 7           Q.   Okay.  And so tell me what
 8   your recollection of what you were
 9   supposed to look at on this report was.
10           A.   So the report contained
11   sales data for customers.  And I believe
12   it was Oxycodone and hydrocodone
13   products.  If they breached a parameter,
14   it would trigger this report to be
15   generated.  So I got the report
16   periodically and it may have been, you
17   know, I don't remember how much it was,
18   but I would separate it by customer,
19   because it would be, I believe
20   alphabetical or it might have been by DEA
21   number.  But it would basically be, you
22   know, one customer, then another
23   customer, and it would just be -- it
24   would span multiple customers in
```

Highly Confidential - Subject to Further Confidentiality Review

1  grouping.  So I would group them in
2  separate -- in separate files and then I
3  would conduct the investigation of those
4  customers.
5          Q.   Okay.  And then what -- what
6  things would you do to conduct the
7  investigation of those customers?
8          A.   I had a couple support staff
9  within the CSRA department that I used to
10 assist me with this, that I would work
11 with those individuals to contact the
12 sales executive, to contact the customer
13 to inquire as to why they were buying,
14 you know, that quantity of controlled
15 substances.  We would collect all the
16 information on the customer.  We would
17 take their responses to our questions and
18 our follow-up questions, and we would
19 complete an investigation of each
20 customer.
21         Q.   Would there be some sort of
22 document that you would create at the
23 culmination of your investigation?
24         A.   Yeah.  It would be an

Highly Confidential - Subject to Further Confidentiality Review

1   investigation report.
2           Q.   Okay.  And then would you
3   save that somewhere?
4           A.   Yeah.  I believe it was
5   maintained in Law Track.
6           Q.   And then was there a goal of
7   the investigation that you were trying to
8   determine something?
9                MR. NICHOLAS:  Object to the
10          form.
11               THE WITNESS:  We were trying
12          to determine if any improprieties
13          were happening with regard to
14          those orders.  I would -- I would
15          collect all the information that
16          I -- that I could from the
17          customer to explain, you know, the
18          reasoning as to why they were
19          buying that quantity of controls,
20          and I would take the findings and
21          I would, you know, provide it to
22          Steve Mays.  And what he did with
23          it, you know, I'm not sure.
24               Because at that point the

Highly Confidential - Subject to Further Confidentiality Review

1      decision -- the decisionmaking
2      regarding my investigation that I
3      completed was conducted, you know,
4      outside of my realm.  So I'm not
5      sure what the -- what the -- what
6      the results of those -- those
7      investigations entailed.
8  BY MR. PIFKO:
9      Q.   Did you make any
10 recommendations for actions in the
11 report?
12     A.   You know, it's been so long
13 ago, I don't recall.
14     Q.   Do you recall if one of the
15 things that you were evaluating was
16 whether to fill the order?
17     A.   Well, keep in mind this was
18 a system that we operated that was
19 prior -- prior to the system that held
20 orders.
21     Q.   Okay.
22     A.   So this was investigations
23 that occurred after the shipment was
24 already completed.

Highly Confidential - Subject to Further Confidentiality Review

1  Q. Okay. So it's your
2  understanding that all these orders and
3  in the possible suspicious order report
4  had already been shipped; is that
5  correct?
6  A. Yes. Those were -- those
7  were orders that have already been
8  shipped. That's correct.
9  Q. Okay. And you would look at
10 it to evaluate whether there were
11 concerns, and you would generate a
12 report, but you didn't make any
13 recommendations for a course of action
14 going forward; is that correct?
15 A. That's correct.
16 Q. You provided that to Steve
17 Mays, the report?
18 A. Yes. I believe I give it
19 directly to Steve Mays.
20 Q. Did you send it by e-mail?
21 A. I don't recall. We may have
22 just put it in the Law Track system and
23 he retrieved it from there. I don't
24 recall how I gave it to him.

Highly Confidential - Subject to Further Confidentiality Review

1  obstructing me from getting it out
2  of him right now.
3  BY MR. PIFKO:
4      Q.   Okay.  With that said,
5  what's the correction that you would like
6  to make?
7      A.   The report that I reviewed,
8  the periodic report that I referenced
9  earlier, I indicated that it was a
10 possible suspicious order report.  It's
11 actually called the possible excessive
12 purchase report.
13     Q.   Okay.
14     A.   That's the correction.
15     Q.   But you remember it being
16 called the suspicious order report
17 because you were evaluating the
18 suspicious natures of the orders; is that
19 correct?
20          MR. NICHOLAS:  Object to the
21     form.
22          THE WITNESS:  No.  We're
23     just talking multiple years since
24     I reviewed the report.  So I just

Highly Confidential - Subject to Further Confidentiality Review

```
 1   thresholds.  Do you know what a threshold
 2   is?
 3          A.    Yes, I have a basic
 4   understanding of what a threshold is.
 5          Q.    Okay.  What's your
 6   understanding?
 7          A.    I don't know exactly what
 8   went into those thresholds.  I know it's
 9   a level at which, you know, purchase
10   activity would draw a flag and hold the
11   order until it could be investigated.
12          Q.    And then it says, "Review at
13   distribution centers."  Is that what it
14   says?
15          A.    Yes.
16          Q.    Okay.  What does that mean,
17   do you know what that means?
18          A.    I believe that's when the
19   RPICs were implemented at the DC level.
20          Q.    And before that what was the
21   process?
22          A.    Prior to 2007 orders weren't
23   held when investigation -- or when a
24   suspicious order was flagged.  We would
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   conduct those investigations after the
 2   fact.
 3          Q.   And so was there a personnel
 4   change?  I believe we -- we talked about
 5   that under the computer ordering system,
 6   there are other reasons for an order to
 7   be flagged like if there was a payment
 8   credit issue -- I forget, there was some
 9   other reason that you said for an order
10   to be held.  So there was already someone
11   whose job it was to be doing that prior
12   to 2007; is that correct?
13               MR. NICHOLAS:  Object to the
14          form.  Go ahead.
15               THE WITNESS:  Yeah.  There
16          were -- there were other hold
17          codes that did not include the
18          order monitoring program hold
19          code.  So there was a number of
20          hold codes that would hold an
21          order, like licensing, credit and
22          that kind of thing.
23   BY MR. PIFKO:
24          Q.   Okay.  And so there was
```