**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*The County of Summit, Ohio,* et al. *v. Purdue Pharma L.P.,* et al.<br>Case No. 18-op-45090 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**PHARMACY DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
**THIRD AMENDED COMPLAINT AND AMENDMENT BY INTERLINEATION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... i

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 4

I.    Ohio Law Does Not Permit a Common Law Public Nuisance Claim Based on a
      Pharmacy's Alleged Failure to Detect and Prevent Diversion of Prescription Drugs. ........... 4

II.   The County's Amended Complaint Fails to Adequately Plead Any Claims Related to
      Pharmacy Defendants' Dispensing Activities. ..................................................................... 10

III.  The Dispensing Claims Should Also Be Dismissed For the Reasons Stated in Pharmacy
      Defendants' and Distributor Defendants' Motions to Dismiss the Second Amended
      Complaint. ................................................................................................................ 14

CONCLUSION.................................................................................................................. 15

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
   727 F.3d 502 (6th Cir. 2013) ................................................................ 10

*Alotech, Ltd. v. Huntington Nat'l Bank*,
   No. 1:13-CV-01971-DAP, 2014 WL 281973 (N.D. Ohio Jan. 24, 2014) ............................ 4, 5

*Amzee Corp. v. Comerica Bank-Midwest*,
   No. 01AP–465, 2002 WL 1012998 (Ohio Ct. App. May 21, 2002) ..................................... 5, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................... 10

*Baggott v. Piper Aircraft Corp.*,
   101 F. Supp. 2d 556 (S.D. Ohio 1999) ........................................................ 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 10, 14

*Binno v. Am. Bar Ass'n*,
   826 F.3d 338 (6th Cir. 2016) ................................................................ 10

*Bolles v. Toledo Trust Co.*,
   58 N.E.2d 381 (Ohio 1944) .................................................................... 4

*Delaware v. Purdue Pharma L.P.*,
   C.A. No. N18C-01-223 (Del. Sup. Ct. Feb. 4, 2019) ............................................ 8

*Gavitt v. Born*,
   835 F.3d 623 (6th Cir. 2016) ................................................................ 13

*Heyne v. Metro. Nashville Pub. Sch.*,
   655 F.3d 556 (6th Cir. 2011) ................................................................ 14

*In re Travel Agent Comm'n Antitrust Litig.*,
   583 F.3d 869 (6th Cir. 2009) ................................................................ 14

*Joseph v. Bernstein*,
   612 F. App'x 551 (11th Cir. 2015) ........................................................... 12

*Mallory v. Bolton*,
   No. 3:19-CV-P120-CRS, 2019 WL 5789947 (W.D. Ky. Nov. 6, 2019) ............................... 12

*Peters Family Farm, Inc. v. Sav. Bank*,
   No. 10CA2, 2011 WL 497476 (Ohio Ct. App. Jan. 28, 2011) ..................................... 8

*Smyth v. Cleveland Trust Co.*,
    172 Ohio St. 489, 179 N.E.2d 60 (1961) ........................................................ 4

*State ex rel. Carlson v. State Bd. of Pharmacy*,
    No. 18 MA 0006, 2018 WL 3738398 (Ohio Ct. App. July 31, 2018) ........................................ 6

*Thompson v. Ford*,
    128 N.E.2d 111 (Ohio 1955) ............................................................... 5, 8

**STATUTES**

21 U.S.C. § 822(e) ....................................................................... 11

Ohio Rev. Code § 3767.03 ................................................................ 4

Ohio Rev. Code § 4729.07 ................................................................ 6

Ohio Rev. Code § 4729.071 ............................................................... 6

Ohio Rev. Code § 4729.08 ................................................................ 6

Ohio Rev. Code § 4729.12 ................................................................ 6

Ohio Rev. Code § 4729.24 ................................................................ 7

Ohio Rev. Code § 4729.25 ................................................................ 7

Ohio Rev. Code § 4729.26 ................................................................ 7

Ohio Rev. Code § 4729.27 ............................................................. 6, 11

Ohio Rev. Code § 4729.28 ................................................................ 6

Ohio Rev. Code § 4729.35 ...................................................... 2, 4, 6, 7, 9, 10

Ohio Rev. Code § 4729.37 ................................................................ 6

Ohio Rev. Code § 4729.44 ............................................................. 6, 7

Ohio Rev. Code § 4729.46 ................................................................ 6

Ohio Rev. Code § 4729.64 ................................................................ 7

Ohio Rev. Code § 4729.77 ................................................................ 7

Ohio Rev. Code § 4729.80 ................................................................ 6

Ohio Rev. Code § 4729.96 ............................................................. 7, 8

Ohio Rev. Code § 4729.99 ........................................................................................................ 8

Ohio Rev. Code § 4729.281 ...................................................................................................... 7

Ohio Rev. Code § 4729.292 ...................................................................................................... 7

**RULES**

Fed. R. Civ. P. 8 ..................................................................................................................... 12

**REGULATIONS**

Ohio Admin. Code § 4279:9 ..................................................................................................... 7

Ohio Admin. Code § 4279-9-05(A) ......................................................................................... 6

Ohio Admin. Code § 4729-5-30 ............................................................................................... 7

Ohio Admin. Code § 4729-5-30(A) ......................................................................................... 6

Ohio Admin. Code § 4729-37 ................................................................................................... 7

## INTRODUCTION

Summit County alleges that the chain pharmacies CVS, HBC/Giant Eagle, Rite Aid, Walgreens, and Walmart (the "Pharmacy Defendants")[1] are responsible for the costs of the opioid epidemic in the County because their pharmacists did not stop third parties from diverting prescription opioids.  At its core, the County's theory appears to be that on the occasions when pharmacists employed by the Pharmacy Defendants were presented with prescriptions for opioid medications that the County alleges were improper, the pharmacists in certain instances did not detect that those particular prescriptions were forged by criminals, or were written by doctors acting against the law and outside of regular medical practice, or otherwise were presented by patients seeking drugs for illegal purposes.  But the County's vague and generalized factual allegations are nowhere near sufficient to state a cause of action for public nuisance (let alone for civil conspiracy, to the extent the County is even attempting to assert such a claim).  Accordingly, any and all claims based on the Pharmacy Defendants' dispensing conduct must be dismissed.

*First*, Ohio law does not recognize a claim for common law public nuisance where, as here, the General Assembly comprehensively regulates the field of action and has created remedies that are inconsistent with those that otherwise might have been available at common law.  In these circumstances, the statutory scheme supplants the common law, and common law rights of action are unavailable.  Here, the Ohio General Assembly—principally through rulemaking delegated to the Ohio Board of Pharmacy—regulates the practice of pharmacy in minute detail, including all of the specific conduct at issue in the County's Amendment by Interlineation.  The General

---

[1] The entities sued are CVS Indiana, L.L.C.; CVS Pharmacy, Inc.; CVS Rx Services, Inc.; Ohio CVS Stores, LLC; HBC Service Co.; Giant Eagle Inc.; Rite Aid of Maryland, Inc. d/b/a Mid-Atlantic Customer Support Center; Rite Aid of Ohio, Inc.; and Rite Aid Hdqtrs. Corp.; Walgreen Co.; Walgreen Eastern Co.; Walmart Inc.; and Wal-Mart Stores East, Inc.  Several of these entities were sued for the first time in the County's recent Amendment by Interlineation.

Assembly also has specified the available remedies for violations of pharmacy regulatory obligations, as well as the parties who may seek such remedies.  In particular, with Ohio Rev. Code § 4729.35, the General Assembly specifically addressed the limitations on public nuisance remedies available to counties in the case of a nuisance resulting from alleged violations of state or federal laws, including Board of Pharmacy rules, governing drugs of abuse.  The General Assembly expressly provided that the only available remedy in such a private action is injunctive relief, leaving all other enforcement and remedial actions within the exclusive purview of the state-government entities given these specific responsibilities under the detailed and comprehensive statutory scheme.  To properly give effect to the General Assembly's clear legislative intent, the County's common law nuisance claim must be dismissed.

*Second*, the County's dispensing-based public nuisance claim must be dismissed because it is based solely on speculative and conclusory allegations.  The County fails to identify even a single instance in which any pharmacist employed by any of the Pharmacy Defendants filled a prescription for an opioid medication that should not have been filled—let alone that the pharmacist did so knowingly.  Nor does the County plead any specific acts of wrongdoing by the new entities that it adds in the Amendment.  Even reading the allegations more broadly, of the more than sixty pharmacies the Pharmacy Defendants collectively are alleged to have operated in Summit County, the Amendment makes specific allegations of fact about only five.  This is far from adequate to sustain the sort of sweeping claim set out in the County's complaint.  At the very least, as against all other individual pharmacies in Summit County affiliated with the Pharmacy Defendants—each of which is a separately regulated registrant under federal law—the County's public nuisance claim must be dismissed.

*Third*, the County fails to assert a civil conspiracy claim based on the Pharmacy Defendants' dispensing behavior, and to the extent it intends to assert such a claim, it fails on the merits.  In its Amendment, the County fails to add any new allegations whatsoever of a conspiracy related to the dispensing of prescription opioids, including any allegation about any of the newly sued registrants.  There is simply no allegation linking the new conduct or the new registrants to the preexisting conspiracy allegations.

*Fourth*, the County's new dispensing-related claims must be dismissed for reasons set forth in the prior motions to dismiss filed by the Pharmacy Defendants and Distributor Defendants, which are incorporated by reference here.

## BACKGROUND

Summit County originally filed suit asserting various claims against the Pharmacy Defendants based solely on their self-distribution of prescription opioids to their own respective pharmacies.  *See* ECF No. 1203 at 2 (holding, with respect to the second amended complaint, that "Retail Pharmacies may only be held liable as distributors," because "Plaintiffs have disclaimed any cause of action against Retail Pharmacies in their capacity as retailers or dispensers of opioids").  Eighteen months later, on November 13, 2019, the County stated its intention to add dispensing claims against the Pharmacy Defendants, and to pursue only public nuisance and conspiracy claims.  ECF No. 2935 at 1-2.  The Court adopted the County's proposal and permitted the County to amend its complaint again.  ECF No. 2940 at 4.

Thereafter, the County filed its Amendment by Interlineation ("Amendment"), ECF No. 2943, which added new allegations relating to the Pharmacy Defendants' dispensing of prescription opioids and amended the language in the common law absolute public nuisance count to cover dispensing.  In addition to adding a new dispensing-based nuisance claim, the County added completely new defendants, including CVS Pharmacy, Inc.; Ohio CVS Stores, L.L.C.; Rite

Aid of Ohio, Inc.; and Rite Aid Hdqtrs. Corp.  The Amendment did not add any conspiracy-related allegations or amend the civil conspiracy claim.

## ARGUMENT

I.      **Ohio Law Does Not Permit a Common Law Public Nuisance Claim Based on a Pharmacy's Alleged Failure to Detect and Prevent Diversion of Prescription Drugs.**

Section 4729.35 of the Ohio Revised Code allows certain parties to bring a public nuisance claim for violation of Ohio or United States laws or Board of Pharmacy regulations related to drugs of abuse.  The County, however, does not purport to proceed under this statute—presumably because, as this Court already determined, it permits only *injunctive* relief.  ECF No. 1203 at 30. The County instead purports to bring its public nuisance claim under the common law.  *See* ECF No. 2943 at 38 ("Sixth Claim For Relief: Common Law Absolute Public Nuisance").  But Ohio law does not permit a plaintiff to bring a common law claim where the Ohio legislature has comprehensively regulated the field and provided specific remedies that conflict with the common law causes of action.  Accordingly, the County can bring its public nuisance claim under the appropriate statute, Ohio Rev. Code § 4729.35, or not at all.[2]  The County's common law public nuisance claim must therefore be dismissed.

Ohio law is clear that "[w]here the General Assembly has codified the law on a subject it is the statutory provisions which are to be followed and it is the legislative policy which is to be observed."  *Bolles v. Toledo Trust Co.*, 58 N.E.2d 381, 392 (Ohio 1944), *overruled in part on other grounds by Smyth v. Cleveland Trust Co.*, 172 Ohio St. 489, 179 N.E.2d 60 (1961); *see also*

---

[2] This Court already has ruled that the more specific statute, Ohio Rev. Code § 4729.35, which expressly provides that counties may only seek injunctive relief for public nuisance claims based on alleged violations of Ohio or federal laws or Board of Pharmacy rules governing drugs of abuse, controls over the more general statute, Ohio Rev. Code § 3767.03, which provides a cause of action for injunction *or* abatement of a public nuisance.  *See* ECF No. 1203 at 28-31.

*Alotech, Ltd. v. Huntington Nat'l Bank*, No. 1:13-CV-01971-DAP, 2014 WL 281973, at \*3 (N.D. Ohio Jan. 24, 2014) (same).

This is particularly so when the legislature has enacted "general and comprehensive legislation, prescribing minutely a course of conduct to be pursued, the parties and things affected, and elaborately describing limitations and exceptions." *Thompson v. Ford*, 128 N.E.2d 111, 115-16 (Ohio 1955) (quoting 3 Sutherland Statutory Construction § 5305 (3 ed.)).  Such a complete statutory scheme is "indicative of a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter." *Id.*  Ohio courts have held, for example, that a statute "prescribing minutely a course of conduct as to lights where one parks an automobile," that "elaborately describes the limitations and exceptions as to the requirements of lights" "replaces the precautions enjoined by the common law." *Id.* at 116.  Likewise, courts have held that claims covered by the Uniform Commercial Code may not be brought as common law claims:

> In *Bolles*, paragraph thirteen of the syllabus, the Ohio Supreme Court stated: "Where the General Assembly has codified the law on a subject, such statutory provisions are to govern to the exclusion of the prior non-statutory law unless there is a clear legislative intention expressed or necessarily implied that the statutory provisions are merely cumulative."  Thus, unless there is clear legislative intent that the UCC is merely cumulative to the common law, the UCC governs to the exclusion of the common law.

*Amzee Corp. v. Comerica Bank-Midwest*, No. 01AP–465, 2002 WL 1012998, at \*9 (Ohio Ct. App. May 21, 2002); *see also Baggott v. Piper Aircraft Corp.*, 101 F. Supp. 2d 556, 561 (S.D. Ohio 1999) (same).

The same result must obtain here.  The Ohio General Assembly has enacted general and comprehensive legislation that sets out pharmacies' and pharmacists' obligations and has provided specific remedies for violations of these obligations.  The County's own pleadings explain that

Ohio regulations specifically address the precise conduct underpinning the County's dispensing claims. *See* ECF No. 2943 at 6-7, ¶¶ 3-4.  For example, state regulations provide that all pharmacy "licensees and registrants shall provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs."  Ohio Admin. Code § 4279-9-05(A).  They further provide that "a corresponding responsibility" for the proper dispensing of controlled substances "rests with the pharmacist who dispenses the prescription."  *Id.* § 4729-5-30(A).

Indeed, Chapter 4729 of Revised Code Title XLVII, titled "Pharmacists; Dangerous Drugs," regulates in detail all aspects of pharmacists' professional conduct and the dispensing of prescription medications, including opioid medications.[3]  Among other things, this Chapter comprehensively addresses the licensing of pharmacists; the discipline of pharmacists, including for violations or attempted violations of the Chapter; what constitutes the unlawful practice of pharmacy or the unlawful selling of drugs without an adequate prescription; particular rules on dispensing opioid medications; and record-keeping requirements.  *See, e.g.*, Ohio Rev. Code §§ 4729.07 (Application for licensure; examination); 4729.071 (Criminal records check); 4729.08 (Qualifications); 4729.12 (License effect and renewal); 4729.27 (Pharmacy must be conducted by legally licensed pharmacist); 4729.28 (Unlawful selling of drugs or practice of pharmacy); 4729.35 (Unlawful distribution of drugs of abuse; prosecution); 4729.37 (Filling prescriptions; records); 4729.46 (Limitations on dispensing opioid analgesics); 4729.44 (Dispensation of naloxone by

---

[3] Chapter 4729 also created the Ohio Board of Pharmacy, which is "the single State agency in Ohio responsible for administering and enforcing laws governing the practice of pharmacy and the legal distribution of drugs;" "is responsible for administering and enforcing the drug laws of Ohio;" licenses pharmacists, pharmacy interns and distributors; and is "responsible for regulating the legal distribution of dangerous drugs in Ohio and ensuring the quality of all drugs administered, prescribed, dispensed by prescription, or sold over-the-counter."  *See* State of Ohio Board of Pharmacy, *About* https://www.pharmacy.ohio.gov/About/General.aspx; *see also State ex rel. Carlson v. State Bd. of Pharmacy*, No. 18 MA 0006, 2018 WL 3738398, at *1 (Ohio Ct. App. July 31, 2018) (same).

pharmacist or pharmacy intern without a prescription); 4729.77 (Terminal distributor pharmacies to submit prescription information); 4729.80 (Disclosure of database information; disclosure of requests for database information); 4729.281 (Dispensing of drug without written or oral prescription); 4729.292 (Annual on-site inspection of opioid treatment program).

In addition, the General Assembly has further granted the Board of Pharmacy extensive rulemaking authority.  *See id.* §§ 4729.24, 4729.26.  The Board of Pharmacy, in turn, has enacted highly detailed "rules pertinent to the practice of pharmacy," that speak to virtually every aspect of a pharmacist's professional conduct.  *See, e.g.*, Ohio Admin. Code § 4729-37 (regulating the drug database OARRS); *id.* § 4729:9 (controlled substances and drugs of concern); *id.* § 4729-5-30 (defining a valid prescription and laying out a pharmacist's corresponding responsibility).

Chapter 4729 also provides a comprehensive enforcement mechanism for these rules governing the practice of pharmacy.  Among other things, it legislates enforcement by the Board of Pharmacy, which must license every pharmacist in Ohio and has the power to revoke or suspend any pharmacist's license or take other disciplinary measures in the event of misconduct.  Chapter 4729 further provides for the prosecution of those involved in the unlawful distribution of drugs of abuse; permits actions for injunctions by the Board of Pharmacy; authorizes the Board of Pharmacy to impose fines for violations of certain provisions; sets forth criminal penalties for certain violations, remedies that are inconsistent with common law remedies.  *See, e.g.* Ohio Rev. Code §§ 4729.24 (Board powers; subpoenas; rules); 4729.25 (Enforcement; investigation); 4729.35 (Unlawful distribution of drugs of abuse; prosecution); 4729.64 (Injunctive proceedings); 4729.96 (Discipline for pharmacy technician trainee, registered pharmacy technician, or certified

7

pharmacy technician); 4729.99 (Penalties).  Although the statutory scheme provides numerous enforcement mechanisms, it does not authorize private suits for damages or for abatement.[4]

These statutory and regulatory schemes, which "prescrib[e] minutely a course of conduct to be pursued," are "indicative of a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter." *Thompson*, 128 N.E.2d at 116 (citation omitted); *cf. Delaware v. Purdue Pharma L.P.*, C.A. No. N18C-01-223 (Del. Sup. Ct. Feb. 4, 2019) (attached as Exhibit A) ("Delaware's comprehensive pharmacy regulatory scheme and enforcement procedures, as well as federal regulations, preempt the claims alleged in the Complaint.").  For common law claims to survive, there would have to be "clear legislative intent that the [statute] is merely cumulative to the common law." *Amzee Corp.*, 2002 WL 1012998, at *9.  No such legislative intent exists.

To the contrary, the comprehensive statutory scheme is irreconcilable with the common law and thus reflects a legislative intent to enact an exclusive regime.  *See Peters Family Farm, Inc. v. Sav. Bank*, No. 10CA2, 2011 WL 497476, at *3 (Ohio Ct. App. Jan. 28, 2011) (stating that "*When common-law causes of action and statutory law are in conflict*, the Supreme Court of Ohio has held the following: 'Where the General Assembly has codified the law on a subject, such statutory provisions are to govern to the exclusion of the prior non-statutory law unless there is a

---

[4] Further, as the County recognizes, both federal and state law expansively regulate controlled substances pursuant to the federal Controlled Substances Act, and its implementing regulations, and Ohio's controlled substances laws.  *See* ECF No. 2943 at 6-7, ¶¶ 3-5, at 8, ¶ 8; at 41-42, ¶ 118; at 42, ¶ 123.  As with Ohio's laws governing pharmacists and dangerous drugs, neither federal nor state law on controlled substances permits a right of action for damages or abatement.  *See* ECF No. 654 at 74-75 (arguing that the "statutes provide a standard of care for the underlying common law duty," but conceding that "Plaintiffs do not seek to enforce Defendants' statutory and regulatory duties.").

clear legislative intention expressed or necessarily implied that the statutory provisions are merely cumulative'" (emphasis added) (citation omitted)).

Section 4729.35 clearly and directly contradicts the common law.  It specifically provides that "[t]he violation by a pharmacist or other person of any laws of Ohio or of the United States of America or of any rule of the board of pharmacy controlling the distribution of a drug of abuse" shall "constitute a public nuisance," but that remedies may be pursued only by certain officials (the Attorney General, a county prosecuting attorney, and, of course, the Board of Pharmacy) and limited to "an action in the name of the state to enjoin" the violation.  The Court has recognized that, while the common law permits actions to abate or seek damages for a public nuisance under certain circumstances, section 4729.35 does not.  *See* ECF No. 1203 at 30 ("[E]ven a statutorily authorized party may only bring an action to enjoin such violations, not one for abatement.").

Allowing the County to proceed under a common law theory despite the General Assembly's enacting comprehensive legislation that limits the remedies that otherwise might be available under the common law would impermissibly undermine the General Assembly's clear intent to provide a comprehensive regulatory and remedial scheme that circumscribes general nuisance liability in favor of the limited relief permitted under section 4729.35 and the enforcement authority given to other state government actors.  Much as this Court concluded that this specific provision, section 4729.35, must control over an irreconcilable general statute, this same provision must prevail over an irreconcilable common law cause of action.  *See* ECF No. 1203 at 30 ("[T]he Court concludes, though the R&R did not, that the General Assembly's reference to 'an action . . . to enjoin such person from engaging in such violation' implies the exclusion of other forms of relief." (quoting Ohio Rev. Code § 4729.35)); *id.* at 31 ("[T]he Court

9

. . . rejects the R&R's conclusion that Ohio Rev. Code § 4729.35 does not expressly limit the categories of relief available for a nuisance claim to an injunction.").

For all of these reasons, the County's common law public nuisance claim must be dismissed.

## II. The County's Amended Complaint Fails to Adequately Plead Any Claims Related to Pharmacy Defendants' Dispensing Activities.

The County's complaint does not come close to stating a viable dispensing-based cause of action under well-established pleading standards. Supreme Court and Sixth Circuit precedent require a plaintiff to "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully,' and instead 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct].'" *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345 (6th Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (alteration in original) (citation omitted). And while courts presume the truth of factual assertions, courts do not apply a "presumption of truth to conclusory or legal assertions." *Id.* at 345-46. The County's complaint fails to meet federal pleading standards for at least three reasons.

First, the County fails to identify either (i) a single improper opioid prescription filled by any pharmacist practicing at any one of the Pharmacy Defendants' pharmacies within the County, or (ii) a single pharmacist employed by any Pharmacy Defendant who acted improperly in filling a prescription. Instead, the County's dispensing claims are based on speculative and conclusory allegations that are patently insufficient:

- Speculative assertions that the Pharmacy Defendants knew or should have known that there was diversion solely because of the volume of prescriptions filled.  ECF No. 2943 at 17, ¶¶ 31-34; at 18, ¶ 37; at 23 ¶ 52; at 27, ¶¶ 59, 61-62; at 29, ¶ 69; at 30, ¶¶ 71-72; at 32, ¶¶ 82-83; at 37, ¶ 100; at 38, ¶ 101.

- Conclusory and bare allegations that the Pharmacy Defendants "failed to fulfill their legal duties and instead, routinely dispensed controlled substances while ignoring red flags of diversion and abuse," such as failing to "observe . . . customers with insurance coverage making cash payments" without facts to support those allegations.  *Id.* at 11 ¶ 18; at 14 ¶ 23.

- Conclusory and bare allegations that "discovery will reveal that" Pharmacy Defendants "knew or should have known" that their pharmacies were filling prescriptions with alleged red flags.  *Id.* at 17, ¶ 25; at 28, ¶ 63; at 30, ¶ 73; at 33, ¶ 85; at 37, ¶ 101.

- Allegations regarding settlement agreements related to conduct outside of the County.

Such boilerplate allegations devoid of any specifics are insufficient to state the plausible claim for relief required by federal pleading standards.

Second, although the Amendment alleges the total number of pharmacies each Pharmacy Defendant has in Summit County and the total, aggregate volume of opioids shipped to those pharmacies, *see id.* at 17, ¶ 31; at 27, ¶ 59; at 29, ¶ 69; at 32, ¶ 83; at 37-38, ¶ 102, the County only makes specific allegations of fact against three individual CVS pharmacies in the County, against one individual Walgreens pharmacy in the County, and against one individual Rite Aid pharmacy in the County, *see id.* at 19-20, ¶¶ 39-41; at 20, ¶ 42; at 21, ¶ 43, at 28, ¶ 65; at 31, ¶ 75.  No specific allegations at all are made against any individual Summit County Walmart pharmacy or against any individual Summit County Giant Eagle pharmacy.  Among other distinctions, each individual pharmacy has its own DEA registration and its own pharmacist-in-charge of the pharmacy.  *See* 21 U.S.C. § 822(e) (requiring a separate registration for each place of business); Ohio Rev. Code Ann. § 4729.27 (requiring pharmacist to be in charge of pharmacy); *see also* ECF No. 2943 at 7, ¶¶ 5-6 (alleging that "the pharmacy, as the DEA registrant, is ultimately responsible to prevent diversion").  The Amendment provides no plausible basis for generalizing allegations

11

specific to one pharmacy to all other pharmacies in the County that share a common owner, much less those owned by other chains. This pleading defect is fatal to the sweeping public nuisance claim the County attempts to bring. At a minimum, it requires dismissal of the claim as against all Summit County pharmacies affiliated with the Pharmacy Defendants against which no specific allegations of fact have been made.

Third and similarly, the County's Amendment adds several new legal entities—including Ohio CVS Stores, L.L.C., Rite Aid of Ohio, Inc., and Rite Aid Hdqtrs. Corp.—but fails to allege specific acts of wrongdoing by specific entities. Instead of alleging specific acts that would provide these new defendants with notice of the allegations against them, the Amendment merely defines the generic terms "CVS" and "Rite Aid" to include these new defendants, which are separate legal entities. *See* ECF No. 2943 at 2, ¶ 2 ("Defendants CVS Indiana L.L.C., CVS Rx Services, Inc., CVS Pharmacy, Inc., and Ohio CVS Stores, L.L.C. are collectively referred to as 'CVS.'"); *id.* at 3-4, ¶ 5 ("Defendants Rite Aid Corporation, Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center, Inc., and Rite Aid of Ohio, Inc. are collectively referred to as 'Rite Aid.'").[5] Notably, the definitions are the only mention of these entities in the entire 46-page Amendment.

A complaint that "indiscriminately lump[s]" defendants together "without articulating the factual basis for each [d]efendant's liability" "fail[s] to satisfy Rule 8." *Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015); *see also Mallory v. Bolton*, No. 3:19-CV-P120-CRS, 2019 WL 5789947, at *4 (W.D. Ky. Nov. 6, 2019) ("Where a person is named as a defendant without

---

[5] Rite Aid Corp. ("RAC") was previously named as a defendant in Track One, but Plaintiffs voluntarily dropped RAC after RAC filed a motion to dismiss for lack of personal jurisdiction. See ECF No. 625. Through the County's Amendment, they are seeking to add RAC into Track 1(b), despite the fact that this Court still does not have personal jurisdiction over it. Accordingly, RAC will be re-filing its motion to dismiss for lack of personal jurisdiction.

an allegation of specific conduct, the claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.").

Fourth, the County has failed to assert a civil conspiracy claim against the Pharmacy Defendants, and even if it had, such a claim fails on the merits.[6]  The County did not add a single allegation suggesting conspiracy in the Amendment, nor did it amend its conspiracy claim, as it did with its common law public nuisance claim.  Without any reference to conspiracy in the Amendment, any conspiracy claim would necessarily come entirely from the allegations in the original complaint.  But in the original complaint, the County alleged a conspiracy against the Pharmacy Defendants only with respect to their distribution, not dispensing, of opioids.  *See* ECF No. 1466 ¶¶ 761-67 (alleging conspiracy with respect to Pharmacy Defendants' alleged failure to identify, report, or halt suspicious opioid orders); *id.* ¶¶ 1123-37 (alleging that "Defendants engaged in a civil conspiracy in their unlawful marketing of opioids and/or *distribution of opioids into Ohio and Plaintiffs' communities*" (emphasis added)).  Indeed, the County admitted that it did not raise any dispensing claims in its Third Amended Complaint.  *See* ECF No. 1203 at 2.  The County has not made a single allegation—not even a conclusory allegation or legal conclusion—that the Pharmacy Defendants engaged in any conspiracy with respect to their dispensing of prescription opioids.  *See, e.g.*, *Gavitt v. Born*, 835 F.3d 623, 647 (6th Cir. 2016) (holding that "'[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient'" and that

---

[6] In their November 13, 2019, revised position statement regarding continuing litigation in this MDL, Plaintiffs proposed that the "CT1B case" would include "conspiracy claims against Pharmacy Defendants on … dispensing claims," ECF No. 2935, at 1-2.  As explained above, however, neither the County's original complaint, nor the Amendment at issue here, alleges a civil conspiracy claim against the Pharmacy Defendants with respect to their dispensing of prescription opioids.

"[t]his pleading standard is 'relatively strict'" (alteration in original) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905-06 (6th Cir. 2009) (holding that "vague allegations" referring to "defendants" are insufficient "because they represent precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*").  In fact, as to the newly added Pharmacy Defendants, there is not a single conspiracy allegation.  The County cannot sustain a conspiracy claim premised on entirely different conduct, especially by new defendants, on its pre-existing conspiracy allegations concerning different conduct by a different group of defendants.  To the extent the County intends to bring a conspiracy claim based on the Pharmacy Defendants' dispensing conduct, such claim must be dismissed.

### III.  The Dispensing Claims Should Also Be Dismissed For the Reasons Stated in Pharmacy Defendants' and Distributor Defendants' Motions to Dismiss the Second Amended Complaint.

Finally, the claims based on the Pharmacy Defendants' dispensing activities should be dismissed for the same reasons the distribution-related claims should have been dismissed.

- The County lacks standing to sue on these claims.  ECF No. 19-1 at 4-7.

- The County's claims have been abrogated by the Ohio Product Liability Act.  ECF No. 19-1 at 8; ECF No. 41-1 at 21-26.

- The County's public nuisance claim should also be dismissed because it failed to allege interference with a public right, and because public nuisance claims concerning extensively regulated conduct are improper.  ECF No. 41-1 at 26-30; ECF No. 19-1 at 19-20.

- The economic loss doctrine, statewide concern doctrine, and direct injury test also require dismissal of the County's public nuisance claim.  ECF No. 41-1 at 43-49.

- The County's civil conspiracy claim fails because it failed to plead any alleged "malicious combination" with sufficient particularity and it has not plead any facts establishing an underlying unlawful act.  ECF No. 41-1 at 52-54.

In support of these arguments, Pharmacy Defendants incorporate by reference the cited sections of the Memorandum of Law in Support of Motion to Dismiss Complaint by Defendants

Walmart Inc., CVS Health Corp., Rite Aid Corp., and Walgreens Boots Alliance, Inc., ECF No. 19-1, and the Memorandum in Support of Distributors' Motion to Dismiss Second Amended Complaint, ECF No. 41-1.

## CONCLUSION

For the foregoing reasons, the Pharmacy Defendants respectfully request that the Court dismiss with prejudice the dispensing claims brought against them.

Date:  December 23, 2019                    Respectfully submitted,


/s/   Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Rx Services, Inc. and CVS Indiana, L.L.C.*

/s/   Kelly A. Moore (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

15

*Counsel for Rite Aid of Maryland, Inc. d/b/a
Mid-Atlantic Customer Support Center; Rite
Aid of Ohio, Inc.; and Rite Aid Hdqtrs. Corp.*

/s/ Kaspar Stoffelmayr (consent)
Kaspar Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Counsel for Walgreen Co. and Walgreen
Eastern Co.*

/s/ Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com
E-mail: tmtabacchi@jonesday.com

*Counsel for Walmart Inc.*

/s/ Robert M. Barnes (consent)
Robert M. Barnes
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Center
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: kobrin@marchus-shapira.com

*Counsel for Giant Eagle, Inc. and HBC
Service Company*

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 23, 2019, the foregoing document was served via the

Court's ECF system to all counsel of record.

/s/  Eric R. Delinsky

Eric R. Delinsky
