UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*The County of Summit, Ohio*, et al. *v. Purdue Pharma L.P.*, et al.,<br>Case No. 18-op-45090<br><br>*The County of Cuyahoga, Ohio*, et al. *v. Purdue Pharma L.P.*, et al.,<br>Case No. 17-op-45004 | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**MEMORANDUM IN SUPPORT OF RITE AID CORPORATION'S TRACK 1b MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Rite Aid Corporation ("RAC") respectfully moves this Court to dismiss Plaintiffs'[1] claims against RAC for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2).

**PRELIMINARY STATEMENT**

Plaintiffs previously dropped their claims against RAC in this case in the face of a motion to dismiss for lack of personal jurisdiction, but added RAC back into the case with their Track 1b amendment. Nothing pleaded in Plaintiffs' Amendments by Interlineation to the Third Amended Complaints changes the inevitable result that there is not personal jurisdiction as to RAC in this case and RAC should be dismissed. RAC is a holding company. It does not dispense or distribute prescription opioids or any other pharmaceutical in these counties or anywhere else.

---

[1] The Plaintiffs are: the entities listed in paragraph one, footnote one of the Third Amended Complaint and Jury Demand filed by the County of Summit, Ohio, *et al.* (the "Summit Plaintiffs") on March 21, 2019 (the "Summit Complaint") and the entities listed in paragraph one, footnote one of the Third Amended Complaint filed by the County of Cuyahoga, Ohio, *et al.* (the "Cuyahoga Plaintiffs") on May 10, 2019 (the "Cuyahoga Complaint"). The Summit Plaintiffs and Cuyahoga Plaintiffs are referred to collectively as "Plaintiffs."

Plaintiffs' claims do not arise from RAC's limited activities as a holding company, and RAC does not continuously and systematically conduct business in Ohio. Accordingly, the Court lacks personal jurisdiction over RAC.

## FACTS AND PROCEDURAL HISTORY

The parties have already conducted full discovery and summary judgment briefing on the distribution claims without RAC as a party, as the Plaintiffs purposefully dropped their distribution claims against RAC after its initial motion to dismiss for personal jurisdiction was filed in this case back on May 25, 2018. *See* Stipulated Dismissal, Dkt. #625 (stipulating to dismissal without prejudice of distribution claims against Rite Aid Corporation in Second Amended Complaint); Dkt. #498 (original motion to dismiss RAC).[2]

When the Court created Track 1b, it allowed Plaintiffs to amend their complaints to add dispensing claims and new parties. Plaintiffs filed amendments by interlineation that include dispensing and distribution allegations against four Rite Aid entities: Rite Aid of Maryland, Inc. d/b/a Mid-Atlantic Customer Support Center (the Rite Aid distribution defendant from Track 1(a)); Rite Aid of Ohio, Inc. (newly added for Track 1(b)); Rite Aid Hdqtrs. Corp. (also newly added for Track 1(b)) and RAC (originally included in Track 1(a), dropped by Plaintiffs after RAC filed a motion to dismiss for lack of personal jurisdiction and re-added now in Track 1(b)).[3]

---

[2] RAC was not included as a party when Plaintiffs filed their Third Amended Complaints with distribution-related claims.

[3] In their motion for leave to amend, Plaintiffs represented to the Court that they were only seeking to add new entities related to their new dispensing claims. Motion to Amend, Dkt. #2880 at 1 ("The Counties seek to add specific, discrete allegations against certain defendants concerning their conduct as dispensers of prescription opioids. They propose to do so through an Amendment by Interlineation to their operative Complaints to make clear the discrete nature of the amendments and the defendants to which they pertain."). However, as explained below, the Plaintiffs' amendments by interlineation included a very conclusory reference to distribution activity by new defendant RAC. This was beyond the scope of Plaintiffs' representation to the Court in the motion to amend.

This motion only pertains to RAC, which would leave three Rite Aid defendants in Track 1b, including Rite Aid Hdqtrs. Corp., the entity whose employees set corporate policies and procedure.[4]

RAC is a holding company. It does not dispense or distribute opioids. It is not identified in the ARCOS data related to dispensing (having received opioids) or distribution (having sent opioids). And it does not "establish[] national policies and procedures governing the dispensing of controlled substances" that are in turn implemented by its subsidiaries as Plaintiffs now allege without basis. Chima Decl. ¶ 7.

Plaintiffs' amendment by interlineation now identifies RAC as among the defendants in this case.[5] Cuyahoga Interlineation, § II.B.9, ¶ 4; Summit Interlineation, § II.B.11, ¶ 4.[6] The allegations against RAC are sparse and conclusory. Plaintiffs generally allege that "controlled substances are distributed and dispensed according to practices and procedures established by Rite Aid Corporation." *Id.* ¶ 5. Then the Plaintiffs allege in paragraph 6 that:

> Rite Aid Corporation established national policies and procedures governing the dispensing of controlled substances throughout the United States that it directed and intended that those policies and procedures would be implemented by its subsidiaries on a nationwide basis including, specifically, in Ohio and [Cuyahoga/Summit] County. At all times relevant to this Complaint, Defendant Rite Aid Corporation was responsible for directing and implementing policies and procedures governing the dispensing of controlled substances by its subsidiaries,

---

[4] In the event that RAC's motion to dismiss for a lack of personal jurisdiction is denied, RAC joins the 12(b)(6) motion to dismiss the dispensing claims being filed today. *See* Dkt. # 3035 and #3036.

[5] Identical information identifying RAC appears to be erroneous listed twice in paragraph four.

[6] The allegations as to the various Rite Aid entities in ¶¶ 4-6 of Cuyahoga's and Summit's interlineations are identical with the exception of the reference to the relevant plaintiff and identically numbered. Citations to the interlineations herein refer collectively to the allegations about the Rite Aid entities in the respective interlineation filings in the identically numbered paragraphs.

3

including but not limited to Rite Aid of Ohio, Inc., throughout the United States, including in Ohio and the County.

*Id.* ¶ 6.

Contrary to the Complaints' allegations, RAC does not establish nationwide policies and procedures related to dispensing controlled substances or otherwise.  *See* Declaration of Ron. S. Chima ("Chima Decl.") ¶¶ 4, 7.  It does not direct and implement policies and procedures for dispensing controlled substances by any of its subsidiaries, including Rite Aid of Ohio, Inc.  *Id.* ¶¶ 4, 6, 7.

Instead, RAC is a holding company, with no operations other than those related to its status as a holding company.  *Id.* ¶ 4.  RAC has no offices, facilities, assets, income, employees, or operations in Ohio.  *Id.* ¶ 4.  RAC is organized under the laws of Delaware and has its principal place of business in Pennsylvania.  *Id.* ¶ 3.  RAC is not qualified as a foreign corporation under the laws of Ohio, does not have a registered agent for service of process there, and is not regulated by any Ohio state agency.  *Id.* ¶ 5.  While RAC has subsidiaries, it is a separate and distinct company from those subsidiaries, each of which observes and enforces corporate formalities—three of which would remain as defendants in this case, even if this motion were to be granted (Rite Aid of Maryland, Inc., Rite Aid of Ohio, Inc. and Rite Aid Hdqtrs. Corp.).  *Id.* ¶ 6.  RAC does not have any direct involvement in directing, managing, or supervising the operations or the employees of any of its subsidiary companies, including any of its subsidiaries that ever have engaged in the dispensing or distribution of prescription opioids.  *Id.* ¶ 6.  Corporate policies and procedures are set by Rite Aid Hdqtrs. Corp. employees.  *Id.* ¶ 7.

## LEGAL STANDARD

Plaintiffs have the burden of establishing that personal jurisdiction exists over a non-resident defendant.  *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).  In response to a

motion to dismiss, a plaintiff "must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

## ANALYSIS

Personal jurisdiction over RAC exists only if Plaintiffs can demonstrate that Ohio's long-arm statute has been satisfied and if the exercise of personal jurisdiction would not deny RAC due process. *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 471 (6th Cir. 2012). Plaintiffs can satisfy neither requirement.

### A. RAC is not amenable to service of process under Ohio's long-arm statute.

The Sixth Circuit has recognized that Ohio's long-arm statute "does not extend to the constitutional limits of the Due Process Clause." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Instead, the statute permits the exercise of personal jurisdiction over persons who commit certain, specified acts in Ohio, such as "[t]ransacting any business," "[c]ontracting to supply services or goods," or "[c]ausing tortious injury by an act or omission." OHIO REV. CODE § 2307.382(A). RAC has not satisfied any of these predicates.

Plaintiffs appear to allege that the long-arm statute applies to RAC based on their allegations that RAC established policies and procedures for subsidiaries operating in Cuyahoga and Summit Counties—specifically, Rite Aid of Ohio, Inc. *See* Interlineations, ¶ 5. But RAC is a holding company, not an operating company. Chima Decl. ¶ 4. It did not establish policies and procedures that were implemented by its subsidiaries in Ohio or elsewhere. *Id.* ¶ 7. RAC did not distribute or dispense prescription opioids (in Ohio or elsewhere) and does not direct, manage, or supervise the operations or employees of its subsidiaries that distribute or dispense prescription opioids. *Id.* ¶¶ 4, 6. As a holding company, RAC has no real business operations at all such as offices, facilities, assets, income, employees, or operations, and it has no relevant

5

contacts with Ohio. *Id.* ¶ 4. Accordingly, Plaintiffs cannot establish that jurisdiction over RAC is proper under Ohio's long-arm statute.

### B. The Due Process Clause prohibits the exercise of jurisdiction over RAC.

Even if the Ohio long-arm statute would permit the exercise of personal jurisdiction over RAC, the Federal Due Process Clause prohibits it. The Due Process Clause permits two types of personal jurisdiction: (1) general jurisdiction, where the cause of action does not arise from the defendant's contacts with the forum state; and (1) specific jurisdiction, where the cause of action arises from the defendant's contacts with the forum state. *Conn*, 667 F.3d at 712–13. This Court cannot exercise either type of jurisdiction over RAC.

#### 1. This Court cannot exercise general jurisdiction over RAC.

Plaintiffs do not allege that general jurisdiction over RAC would be proper. *See* Interlineations, ¶ 4. Nor could they. RAC is a Delaware corporation with its principal place of business in Pennsylvania, which Plaintiffs admit. Chima Decl. ¶ 3; Interlineations, ¶ 4. RAC has no offices, facilities, assets, income, employees, or operations in Ohio. Chima Decl. ¶ 4. There is no ground whatsoever to subject RAC to general jurisdiction in Ohio.

Corporations are subject to general jurisdiction only where "their affiliations are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). A corporate defendant is usually only at home in its state of incorporation and its principal place of business. *Id.* Ohio is neither RAC's state of incorporation nor its principal place of business and thus general jurisdiction does not exist. *See id.* at 1559 (defendant with over 2,000 miles of railroad track and more than 2,000 employees in the state was not subject to general jurisdiction in that state); *Conn*, 667 F.3d at 718–19. There is

6

no allegation—much less evidence—that would permit this Court to exercise general jurisdiction over RAC.

### 2. This Court cannot exercise specific jurisdiction over RAC.

Specific jurisdiction exists only where the cause of action arises out of the defendant's contacts with the forum state. *Conn*, 667 F.3d at 712–13.  The Due Process Clause permits the exercise of specific jurisdiction only when: (1) the defendant has purposefully availed itself of the privilege of acting in the forum; (2) the cause of action arises of out the defendant's activities in the forum; and (3) there is a substantial enough connection with the forum to make jurisdiction reasonable. *Id.* at 713; *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002).

Plaintiffs' claims do not arise out of RAC's activities within Ohio.  Indeed, the claims do not arise from RAC's activities at all.  RAC engages in only limited activities relating to its status as a holding company.  Chima Decl. ¶ 4.  RAC did not avail itself of the privileges of acting in Ohio and cannot be said to have any connection at all to the state, where it has no property, assets, employees, income, or operations, and in which it conducts no business.  *Id.* ¶ 4. *see also Garlock v. Ohio Bell Tel. Co. Inc.*, No. 1:13CV02200, 2014 WL 2006781, at *3 (N.D. Ohio May 15, 2014) (finding no specific jurisdiction over AT&T Inc., a holding company, and noting that evidence offered by the plaintiff "shows that it was AT&T Inc.'s subsidiaries and affiliates that are conducting business in Ohio, not AT&T Inc. itself"); *Best v. AT&T Inc.*, No. 1:12-cv-564, 2014 WL 12571407, at *7 (S.D. Ohio Sept. 16, 2014).

Personal jurisdiction over RAC subsidiaries would also not give rise to specific jurisdiction over RAC.  Specific jurisdiction over a parent company based on a subsidiary's contacts with the forum state requires an extraordinary showing that "the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and

7

the same for purposes of jurisdiction." *Estate of Thomas v. Toyota Motor Corp.*, 545 F.3d 357, 362 (6th Cir. 2008).  In other words, Plaintiffs here would have to show that RAC is the alter ego of a subsidiary with sufficient contacts with Ohio to give rise to personal jurisdiction. *See id.* (adopting the alter ego theory of jurisdiction for parent-subsidiary relationships).

"To satisfy the alter-ego test, [a plaintiff] must demonstrate 'unity of interest and ownership' that goes beyond mere ownership and shared management personnel." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 849 (6th Cir. 2017).  Showing a unity of interest and ownership is a high bar: a plaintiff must show a "parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)); *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (under Ohio law to satisfy the alter-ego test a plaintiff must "show that the individual and the corporation are fundamentally indistinguishable.").  This requires showing control over not just broad policy decisions but also routine day-to-day management. *Id.*  Simply showing that a parent company is involved in macromanagement issues is not sufficient to give rise to personal jurisdiction. *Id.*

Under Ohio law—which is applicable as Plaintiffs' claims are before the Court on a theory of diversity jurisdiction—courts look to the following factors to determine if a parent is an alter-ego:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Taylor Steel*, 417 F.3d at 605 (quoting *LeRoux's Billyle Supper Club v. Ma*, 602 N.E.2d 685, 689 (Ohio App. 6 Dist.1991)); *see also Garlock*, 2014 WL 2006781 at *5 ("Ohio courts have

8

considered the following factors in determining whether a subsidiary is an alter-ego of the parent corporation, whether: (1) corporate formalities are observed; (2) corporate records are kept; and (3) the corporation is financially independent."). Courts in the Sixth Circuit applying Ohio alter-ego law also look to additional factors articulated by the Sixth Circuit:

> (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation.

*Garlock*, 2014 WL 2006781 at *5.

Plaintiffs allege that "Rite Aid of Ohio, Inc. was in the business of holding and operating retail pharmacies in Ohio, including in Cuyahoga County, on behalf of its parent company Rite Aid Corporation." Interlineations, ¶ 5. Plaintiffs also allege that: "Defendant Rite Aid Corporation was responsible for directing and implementing policies and procedures governing the dispensing of controlled substances by its subsidiaries, including but not limited to Rite Aid of Ohio, Inc." Interlineations, ¶ 6.

But these allegations are (1) incorrect on their face and (2) ignore the fact that RAC is a separate and distinct company from its subsidiaries.

First, these allegations are incorrect. RAC is merely a holding company and corporate policies and procedures are set by Rite Aid Hdqtrs. Corp. employees.[7] Chima Decl. ¶¶ 4, 6, 7.

Moreover, even if these allegations of creating and implementing nationwide policies for subsidiaries were correct they would not be sufficient standing by themselves to create personal jurisdiction in Ohio. The Sixth Circuit has held there is not personal jurisdiction over a parent company even where: (1) some managers had "global roles" with the parent and subsidiaries; (2)

---

[7] Rite Aid Hdqtrs. Corp., which has also been named as a defendant in the interlineations, is the entity whose employees set policies and procedures. Chima Decl. ¶ 7.

9

the financial statements of the parent company stated it provided a source of financing to its affiliates; (3) the parent company entered into a contract for services on behalf of itself and its subsidiaries; and (4) there was a common website and engagement in a common enterprise. *Anwar*, 876 F.3d at 849-50.[8]  Plaintiffs have not even pleaded facts at the level of the insufficient ones in *Anwar*.

Second, Plaintiffs cannot obtain jurisdiction over RAC by arguing a wholly-owned subsidiary operates in Ohio on RAC's behalf.  That would require pleading facts sufficient to allege that RAC is the alter ego of any such subsidiary.

Plaintiffs have not alleged—and could not allege—any facts to support a finding that any alter ego factor is met much less that, on the whole, the alter ego test is satisfied.  Plaintiffs have not even alleged an alter ego theory to support jurisdiction  Moreover, even assuming, *arguendo*, Plaintiffs were able to allege facts showing some involvement by RAC with a subsidiary in Ohio, that involvement could not rise above the level of macromanagement as RAC maintains corporate formalities. Chima Decl. ¶ 6.  As a result, Plaintiffs cannot overcome the general presumption that "[a] parent corporation generally is not liable for the acts of its subsidiary, even if its subsidiary is wholly owned." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007); *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05–CV–2205, 2006 WL 2225821, at *7 (N.D.Ohio Aug.2, 2006) ("Although several factors weigh in favor of recognizing an alter ego relationship between [the defendants], [the plaintiff] fails to provide

---

[8] Under Ohio law, it is appropriate for this Court to look to Sixth Circuit cases insofar as they are consistent with Ohio alter ego cases.  As the Ohio courts have recognized, "the legal conception of alter ego liability has historical antecedents in both federal and state law.  Such cases may provide sound analogies or insightful analyses relating to the formal test set forth in Ohio law without usurping its authority." *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, 4:05 CV 2205, 2006 WL 2225821, at *6 (N.D. Ohio Aug. 2, 2006) (quoting *Music Express Broadcasting Corp. v. Aloha Sports, Inc.*, 831 N.E.2d 1087, 1091 (Ohio App. 11th Dist.2005)).

sufficient facts to overcome the general presumption that one company operates independently from another."). Accordingly, Plaintiffs cannot establish that jurisdiction over RAC is proper under either the Ohio long-arm statute or the Due Process Clause.

## CONCLUSION

For the foregoing reasons, RAC respectfully requests that the Court dismiss the claims against it with prejudice.

Date: December 23, 2019

Respectfully submitted,

/s/ *Kelly A. Moore*
Kelly A. Moore, Esq.
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001

Elisa P. McEnroe, Esq.
elisa.mcenroe@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
T: 215-963-5917
F: 215-963-5001

*Counsel for Rite Aid Corporation*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)**

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that the foregoing memorandum complies with the page limitations of LR 7.1(f) (for complex cases) and those set by the Court.

/s/ *Kelly A. Moore*
Kelly A. Moore