**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THE COUNTY OF CUYAHOGA, OHIO, ET AL.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>PURDUE PHARMA LP, ET AL.,<br><br>    *Defendant* | MDL NO. 2804<br><br>CASE NO. 17-MD-2804<br><br>Related Case No. 17-OP-45004<br><br>JUDGE: DAN AARON POLSTER<br><br>**ANSWER OF DEFENDANT DISCOUNT DRUG MART, INC. TO CUYAHOGA COUNTY'S AMENDMENT BY INTERLINEATION**<br><br>*Trial by Jury Demanded* |

Defendant Discount Drug Mart, Inc. ("DDM") states for its Answer to the Plaintiff Cuyahoga County's Amendment by Interlineation (Doc. # 2944)(the "Amendment")[1] as follows:

**Paragraph Nos. 1 – 10 beginning on Page 2 and continuing through Page 5 of the Amendment by Interlineation**

  1.  In response to Paragraphs 1 through 9 of the Amendment, DDM states that none of the allegations appear to be directed against it, and therefore, DDM denies the allegations for lack of knowledge sufficient to form a belief as to the truth of the matters asserted.

  2.  In response to Paragraph 10 of the Amendment, DDM denies that it is a "National Retail Pharmacy" or a "Distributor Defendant," and to the extent that any statement, allegation or contention therein can fairly be read to express or imply tortious or otherwise actionable knowledge, statements or conduct on its part, DDM denies such allegations outright; and to the

---

[1] DDM files this Answer to comply with the directives of the Court and the Special Master and without prejudice to the Motion to Dismiss previously filed at MDL ECF No. 3036.

extent any allegation can fairly be read to express or imply the legal soundness or validity of Plaintiff's claims against it, DDM denies such allegations outright.

**Paragraph Nos. 1 – 23 beginning on Page 5 and continuing through Page 14 of the Amendment by Interlineation**

3.      In response to Paragraphs 1 and 2 of the Amendment, DDM admits that its industry is subject to state and federal regulation, but denies that the Amendment fully or accurately sets forth the statutes, rules or regulations governing its duties and obligations; DDM denies all remaining allegations for lack of knowledge, except: to the extent that any allegation therein can fairly be read to express or imply actionable conduct on the part of DDM, in which case, DDM denies such allegations outright; and to the extent any allegation can fairly be read to express or imply the legal soundness or validity of Plaintiff's claims against DDM, in which case, DDM denies such allegations outright.

4.      In response to Paragraphs 3 and 4 of the Amendment, DDM denies that it is a National Retail Pharmacy, but admits that the cited legislation and regulations govern its industry, but denies that the Amendment fully or accurately sets forth the applicable requirements; DDM denies all remaining allegations for lack of knowledge, except: to the extent that any allegation therein can fairly be read to express or imply actionable conduct on the part of DDM, in which case, DDM denies such allegations outright; and to the extent any allegation can fairly be read to express or imply the legal soundness or validity of Plaintiff's claims against DDM, in which case, DDM denies such allegations outright.

5.      In response to Paragraphs 5 through 9 of the Amendment, DDM denies that it is a National Retail Pharmacy, but admits that its pharmacy operations are subject to certain state and federal regulation, but denies that the Amendment fully or accurately sets forth the statutes, rules or regulations governing its duties and obligations; DDM further admits that the DEA and other

bodies communicate with the industry from time to time, but denies all remaining allegations pertaining to such communications for lack of knowledge; DDM denies all remaining allegations for lack of knowledge, except: to the extent that any allegation therein can fairly be read to express or imply actionable conduct on the part of DDM, in which case, DDM denies such allegations outright; and to the extent any allegation can fairly be read to express or imply the legal soundness or validity of Plaintiff's claims against DDM, in which case, DDM denies such allegations outright.

6.    In response to Paragraphs 10 through 15 of the Amendment, DDM denies that it is a National Retail Pharmacy, but admits the DEA and other bodies communicate with the industry from time to time, but denies all remaining allegations for lack of knowledge, except: to the extent that any allegation therein can fairly be read to express or imply actionable conduct on the part of DDM, in which case, DDM denies such allegations outright; and to the extent any allegation can fairly be read to express or imply the legal soundness or validity of Plaintiff's claims against DDM, in which case, DDM denies such allegations outright.

7.    In response to Paragraphs 16 through 22 of the Amendment, DDM denies that it is a National Retail Pharmacy, but admits that its pharmacy operations are subject to certain state and federal regulation, but denies that the Amendment fully or accurately sets forth the statutes, rules or regulations governing its duties and obligations; DDM further admits that the DEA and other bodies communicate with the industry from time to time, but denies all remaining allegations pertaining to such communications for lack of knowledge; DDM denies all remaining allegations for lack of knowledge, except: to the extent that any allegation therein can fairly be read to express or imply actionable conduct on the part of DDM, in which case, DDM denies such allegations outright; and to the extent any allegation can fairly be read to express or imply the legal soundness

or validity of Plaintiff's claims against DDM, in which case, DDM denies such allegations outright.

8.      In response to Paragraph 23 of the Amendment, DDM denies that it is a "National Retail Pharmacy," and to the extent that any statement, allegation or contention therein can fairly be read to express or imply tortious or otherwise actionable knowledge, statements or conduct on its part, DDM denies such allegations outright; and to the extent any allegation can fairly be read to express or imply the legal soundness or validity of Plaintiff's claims against it, DDM denies such allegations outright.

**Paragraph Nos. 24 – 99 beginning on Page 14 and continuing through Page 37 of the Amendment by Interlineation**

9.      In response to Paragraphs 24 through 99 of the Amendment, DDM states that none of the allegations appear to be directed against it, and accordingly, DDM denies all such allegations for lack of knowledge, except: to the extent that any allegation therein can fairly be read to express or imply actionable conduct on the part of DDM, in which case, DDM denies such allegations outright; and to the extent any allegation can fairly be read to express or imply the legal soundness or validity of Plaintiff's claims against DDM, in which case, DDM denies such allegations outright.

**Paragraph Nos. 100 – 117 beginning on Page 37 and continuing through Page 39 of the Amendment by Interlineation**

10.      In response to Paragraph 100 of the Amendment, DDM admits the allegations therein, noting only that the total number of stores is currently 76.

11.      In response to Paragraph 101 of the Amendment, DDM admits the allegations therein.

12.     In response to Paragraphs 102 and 103 of the Amendment, DDM admits that it dispensed certain Schedule III and IV controlled substances through its pharmacies located in Cuyahoga County, including hydrocodone through 2014, as reflected in the ARCOS data, but denies the remaining allegations.

13.     In response to Paragraphs 104 and 105 of the Amendment, DDM admits that it purchased hydrocodone from other distributors after hydrocodone was reclassified to a Schedule II controlled substance in 2014, but denies the remaining allegations.

14.     In response to Paragraph 106 of the Amendment, DDM denies the allegations.

15.     In response to Paragraph 107 of the Amendment, DDM denies the allegations.

16.     In response to Paragraph 108 of the Amendment, DDM admits the allegations.

17.     In response to Paragraph 109 of the Amendment, DDM denies the allegations.

18.     In response to Paragraph 110 of the Amendment, DDM admits only that the testimony referred to in this paragraph speaks for itself, and denies the remaining allegations.

19.     In response to Paragraphs 111 through 117 of the Amendment, DDM denies the allegations.

**Paragraph Nos. 118 – 160 beginning on Page 39 and continuing through Page 47 of the Amendment by Interlineation**

20.     In response to Paragraphs 118 through 160 of the Amendment, DDM denies the allegations.

21.     DDM denies any allegation in the Amendment not expressly admitted herein.

**AFFIRMATIVE DEFENSES**

By asserting the defenses set forth below, DDM does not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these defenses. All of the following defenses are pled in the alternative, and none constitutes an admission that DDM is in

5

any way liable to Cuyahoga County, that Cuyahoga County has been or will be injured or damaged in any way, or that Cuyahoga County is entitled to any relief whatsoever.  DDM asserts as follows:

1.      Plaintiff's Complaint fails to state a claim upon which relief may be granted, fails to state facts sufficient to constitute the purported causes of action, and fails to plead a legally cognizable injury.

2.      Plaintiff has failed to plead that it reimbursed any prescriptions for an opioid distributed by DDM that harmed patients and should not have been written, or that DDM's allegedly improper conduct caused any healthcare provider to write any ineffective or harmful opioid prescription, which DDM then distributed.

3.      Plaintiff has failed to join one or more necessary and indispensable parties, including, but not limited to, the DEA, healthcare providers, prescribers, patients, and other third parties whom Plaintiff alleges engaged in the prescription, dispensing, diversion or use of the subject prescription medications.

4.      To the extent Plaintiff is alleging fraud, fraudulent concealment, or similar conduct, Plaintiff has failed to plead the allegations with sufficient particularity.

5.      Plaintiff cannot obtain relief on its claims based on actions undertaken by DDM of which DDM provided notice of all material facts.

6.      Plaintiff fails to plead any actionable misrepresentation or omission made by or attributable to DDM.

7.      Plaintiff's claims against DDM do not arise out of the same transactions or occurrences as its claims against other defendants, as required for joinder of parties.

8.      Plaintiff has failed to comply with the requirement that it identify each patient in whose claim(s) they have a subrogation interest and on whose behalf it has incurred costs.

9.      Plaintiff is precluded from recovering against DDM pursuant to applicable law following section 402A of the Restatement (Second) of Torts.

10.     Plaintiff's recovery is barred under Section 6(c) of the Restatement of Torts (Third).

11.     Plaintiff's claims are barred in whole or in part because no conduct of DDM was misleading, unfair, or deceptive.

12.     DDM appropriately, completely, and fully discharged any and all obligations and legal duties arising out of the matters alleged in the Amendment.

13.     Plaintiff's claims are barred, in whole or in part, by the free public services doctrine and/or the municipal cost recovery rule.

14.     Plaintiff's claims are barred, in whole or in part, because Plaintiff has no private right of action under the relevant laws and regulations.

15.     DDM did not owe or breach any statutory or common law duty to Plaintiff.

16.     Plaintiff is barred from recovery against DDM because DDM complied with all applicable federal and Ohio State rules and regulations related to distribution of the subject prescription medications.

17.     Plaintiff's claims and damages are barred or limited, in whole or in part, by common law, statutory, and state constitutional constraints on the exercise of police powers by a municipality.

18.     Plaintiff is barred from recovery by application of the informed consent doctrine.

19.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

20.     Plaintiff's claims are barred, in whole or in part, by the applicable statute of repose.

21.     Plaintiff's claims are not ripe, and/or have been mooted.

22.     Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, unclean hands, and/or ratification.

23.     Venue may be improper and/or inconvenient in this Court.

24.     Plaintiff's claims are barred, in whole or in part, for lack of standing.

25.     Plaintiff's claims are barred because Plaintiff is not the real party in interest.

26.     Plaintiff's claims against DDM are barred by the doctrines of res judicata and collateral estoppel.

27.     Plaintiff may be barred by the doctrine of estoppel from all forms of relief sought in the Amendment.

28.     Plaintiff's claims are barred because Plaintiff lacks capacity to bring its claims, including claims indirectly maintained on behalf of its citizens and claims brought *as parens patriae*.

29.     Plaintiff's claims are barred to the extent they are based on alleged violations of industry customs because purported industry customs do not create legal duties on DDM.

30.     Plaintiff is barred from recovery by the Assumption of Risk doctrine, whether primary, express, or implied (Ohio Revised Code § 2307.711).

31.     Plaintiff is barred from recovery by application of the learned intermediary doctrine.

32.     Plaintiff's claims are barred or limited by the terms and effect of any applicable Consent Judgment, including by operation of the doctrines of res judicata and collateral estoppel, failure to fulfill conditions precedent, failure to provide requisite notice, payment, accord and satisfaction, and compromise and settlement.

8

33.     Plaintiff's claims are barred in whole or in part, or are subject to other limitations, by the Ohio Product Liability Act, Ohio Revised Code § 2307.71, *et seq*.

34.     Plaintiff's nuisance claims are barred to the extent that they lack the statutory authority to bring a nuisance claim under Ohio law.

35.     Plaintiff's claim of public nuisance is barred or limited because no action of DDM involved interference with real property; illegal conduct perpetrated by third parties involving the use of an otherwise legal product does not involve a public right against the distributor or dispenser sufficient to state a claim for public nuisance; the alleged public nuisance would have impermissible extraterritorial reach; and the alleged conduct of DDM is too remote from the alleged injury as a matter of law and due process.

36.     Plaintiff is barred from recovery against DDM because there is no proximate causation between the alleged acts or omissions of DDM and the damages alleged to have been sustained by Plaintiff.

37.     Plaintiff's damages, if any, were caused by the active, direct, and proximate negligence or actual conduct of entities or persons other than DDM, and in the event that DDM is found to be liable to Plaintiff, DDM will be entitled to indemnification, contribution, and/or apportionment.

38.     Plaintiff's claims are barred, in whole or in part, by failure to establish causation.

39.     Plaintiff's claims are barred by criminal acts and intentional acts of third parties.

40.     Any damages and/or injuries allegedly sustained by Plaintiff were directly and proximately caused by independent, intervening and/or superseding causes, factors or occurrences, which were not reasonably foreseeable to DDM and for which DDM is not liable.

41.     Any and all losses or claims allegedly sustained by Plaintiff are the result of acts and/or omissions of persons over whom DDM does not, or did not, have any direction or control, and for whose actions or omissions DDM is not liable.

42.     DDM is not liable for any statements contained in the Manufacturer Defendants' branded or unbranded materials.

43.     Plaintiff's claims are barred to the extent that the subject prescription medications were misused, modified, altered, or changed from the condition in which they were sold, which misuse, modification, alteration, or change caused or contributed to cause Plaintiff's alleged injuries or damages.

44.     Plaintiff's injuries and damages, if any, are the result of forces of nature over which DDM had no control or responsibility.

45.     DDM is not liable for any injuries or expenses allegedly incurred by Plaintiff to the extent the injuries or expenses as alleged may have resulted from the pre-existing and/or unrelated medical conditions of the users of the subject prescription medications.

46.     Any injuries and/or damages sustained by Plaintiff were caused, in whole or part, by its own failure to effectively enforce the law and prosecute violations thereof, and any recovery by Plaintiff are barred or, alternatively, should be diminished according to its own fault.

47.     Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged injuries or damages, if any, were caused by illegal and/or illicit use, misuse, or abuse of the subject prescription medications by the users, for which DDM is not liable.

48.     Plaintiff's claims are barred, in whole or in part, because neither the users of the subject prescription medications nor their prescribers relied to their detriment upon any statement by DDM in determining to use or prescribe the subject prescription medications.

49.     Plaintiff's claims are preempted by federal law, including (without limitation) the federal Controlled Substances Act and the Food, Drug, and Cosmetic Act ("FDCA").

50.     Plaintiff may not recover against DDM because the methods, standards, or techniques of distributing of the subject prescription medications complied with and were in conformity with the generally recognized state of the art at the time the product was designed, manufactured, labeled, and distributed.

51.     Plaintiff's claims are barred to the extent they are based on any allegations involving failure to provide adequate warnings or information because all warnings or information that accompanied the allegedly distributed products were approved by the United States Food & Drug Administration for a product approved under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Section 301 et seq.), as amended, or Section 351, Public Health Service Act (42 U.S.C. Section 262), as amended, or the warnings and information provided were those stated in monographs developed by the United States Food & Drug Administration for pharmaceutical products that may be distributed without an approved new drug application.

52.     Plaintiff's claims are barred, in whole or in part, for failure to exhaust administrative remedies.

53.     Plaintiff's claims are barred, in whole or in part, because federal agencies have exclusive or primary jurisdiction over the matters asserted in the Amendment.

54.     Plaintiff's claims are preempted insofar as they conflict with Congress' purposes and objectives in enacting relevant federal legislation and authorizing regulations, including the Hatch-Waxman amendments to the FDCA and implementing regulations.  *See Geier v. Am. Honda Co.*, 529 U.S. 861 (2000).

55.     To the extent that Plaintiff relies on letters or other informal guidance from the DEA to establish DDM's regulatory duties, such informal guidance cannot enlarge DDM's regulatory duties in the absence of compliance by DEA with the requirements by the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

56.     If Plaintiff incurred the damages alleged, which is expressly denied, DDM is not liable for damages because the methods, standards, or techniques of designing, manufacturing, labeling, and distributing of the prescription medications at issue complied with and were in conformity with the laws and regulations of the Controlled Substances Act, the FDCA, and the generally recognized state of the art in the industry at the time the product was designed, manufactured, labeled, and distributed.

57.     Plaintiff's claims are barred, in whole or in part, by conflict preemption as set forth in the United States Supreme Court's decisions in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011) and *Mutual Pharm. Co. v. Bartlett*, 133 S. Ct. 2466 (2013).

58.     To the extent Plaintiff asserts claims that depend solely on violations of federal law, including any claims of a purported "fraud on the FDA" with respect to the Manufacturer Defendants' disclosure of information related to the safety of their medications at issue, such claims are barred and should be dismissed.  *See Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).

59.     Plaintiff's claims are barred, in whole or in part, by the deference that common law accords discretionary actions by the FDA under the FDCA and discretionary actions by the DEA under the Controlled Substances Act.

60.     Plaintiff's claims are barred in whole or in part because Plaintiff suffered no injuries or damages as a result of any action by DDM.

12

61.     Plaintiff's Complaint is barred, in whole or in part, by the doctrines of acquiescence, settlement, or release.

62.     Plaintiff's claims are barred, in whole or in part, by the economic loss doctrine.

63.     Plaintiff's claims against DDM are barred to the extent they rely, explicitly or implicitly, on a theory of market-share liability.

64.     Plaintiff's Amendment is barred, in whole or in part, because the derivative injury rule and the remoteness doctrine bars Plaintiff from recovering payments that it allegedly made on behalf its residents to reimburse any expenses for health care, pharmaceutical care, and other public services.

65.     To the extent that Plaintiff seeks punitive, exemplary, or aggravated damages, any such damages are barred because the product at issue, and its labeling, were subject to and received pre-market approval by the FDA under 52 Stat. 1040, 21 U.S.C. § 301.

66.     The alleged injuries and damages asserted by Plaintiff are too remote and/or speculative from the alleged conduct of DDM to be a basis for liability as a matter of law and due process and derive solely from the claims of others.

67.     Plaintiff is barred from recovery as a result of Plaintiff's failure to mitigate damages.

68.     Plaintiff, to the extent it is seeking any damages in its capacity as a third-party payer, cannot recover as damages the costs of healthcare provided to insureds.

69.     To the extent Plaintiff attempts to seek equitable relief, Plaintiff is not entitled to such relief because Plaintiff has an adequate remedy at law.

70.     Plaintiff's claims are barred, reduced, and/or limited pursuant to the applicable Ohio statutory and common law regarding limitations of awards, caps on recovery, and setoffs.

13

71.     A specific percentage of the tortious conduct that proximately caused the injury or loss to person or property is attributable to one or more persons from whom Plaintiff does not seek recovery in this action. Should DDM be held liable to Plaintiff, which liability is specifically denied, DDM would be entitled to a credit or set-off for all sums of money received or available from or on behalf of any tortfeasor(s) for the same injuries alleged in Plaintiff's Complaint.

72.     Plaintiff's claims are barred and/or reduced by contributory or comparative negligence and contributory or comparative fault.

73.     Plaintiff's injuries, losses, or damages, if any, were caused by or contributed to by other persons or entities, whether named or not named as parties to this action, who may be jointly and severally liable for all or part of Plaintiff's alleged injuries, losses, or damages, if any.  DDM will request apportionment of the fault pursuant to Ohio Revised Code section 2307.23, *et seq*, of all named parties to this action, whether or not they remain parties at trial.

74.     If DDM is found liable for Plaintiff's alleged injuries and losses (which liability is specifically denied), the facts will show that DDM caused fifty percent or less of the conduct that proximately caused such injuries or loss and is liable only for its proportionate share of the damages that represent economic loss.  Ohio Revised Code 2307.22.

75.     A percentage of each Plaintiff's alleged injury or loss, if proven, is attributable to (i) Plaintiff, (ii) other parties from whom Plaintiff seeks recovery, and (iii) persons from whom Plaintiff does not seek recovery in this action, including, but not limited to, prescribing practitioners, non-party pharmacies and pharmacists, individuals and entities involved in diversion and distribution of prescription opioids, individuals and entities involved in distribution and sale of illegal opioids, individuals involved in procuring diverted prescription opioids and/or illegal

14

drugs, delivery services, federal, state, and local government entities, and health insurers and pharmacy benefit managers.  Ohio Revised Code § 2307.23.

76.     The damages which Plaintiff may be entitled to recover if liability is established (which liability is specifically denied) are capped pursuant to Ohio Revised Code §§ 2315.18 and 2315.21.

77.     Any damages that Plaintiff may recover against DDM must be reduced to the extent that Plaintiff is seeking to damages for alleged injuries or expenses related to the same user(s) of the subject prescription medications, or damages recovered or recoverable by other actual or potential plaintiffs.  Any damages that Plaintiff may recover against DDM must be reduced to the extent they unjustly enrich Plaintiffs.

78.     DDM's liability, if any, will not result from DDM's conduct but solely the result of an obligation imposed by law, and thus DDM is entitled to complete indemnity, express or implied, by other parties.

79.     Plaintiff's claims for punitive or exemplary damages are barred because Plaintiff cannot prove by clear and convincing evidence that DDM was grossly negligent and DDM has neither acted nor failed to act in a manner that entitles Plaintiff to recover punitive or exemplary damages.

80.     The imposition of punitive and/or exemplary damages against DDM would violate its rights under the Due Process clauses in the Fifth and Fourteenth Amendments to the Constitution of the United States, the Excessive Fines clause in the Eighth Amendment to the Constitution of the United States, the Double Jeopardy clause in the Fifth Amendment to the Constitution of the United States, the equal protection clause of the Fourteenth Amendment to the

15

Constitution of the United States, and the Sixth Amendment to the Constitution of the United States, in various circumstances in this litigation, including but not limited to the following:

a. imposition of punitive damages by a jury which is inadequately instructed regarding the rationale behind punitive damages, the standards/criteria governing such an award of damages, and/or the limits of such damages;

b. imposition of punitive damages where applicable state law is impermissibly vague, imprecise, or inconsistent;

c. imposition of punitive damages that employs a burden of proof that is less than clear and convincing evidence;

d. imposition of punitive damages without bifurcating the trial and trying all punitive damages issues separately, only if and after a finding on the merits of the liability of the DDM;

e. imposition of punitive damages without any predetermined limit on any such award;

f. imposition of punitive damages which allows multiple punishment for the same alleged act(s) or omission(s);

g. imposition of punitive damages without consistent appellate standards of review of such an award;

h. imposition of a penalty, criminal in nature, without according to DDM the same procedural protections that are accorded to criminal defendants under the constitutions of the United States, Ohio, and any other state whose laws may apply; and

i. imposition of punitive damages that otherwise fail to satisfy Supreme Court precedent, including, without limitation, *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991); *TXO Production Corp. v. Alliance Resources, Inc.*, 509 U.S. 443 (1993); *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996); *State Farm Ins. Co. v. Campbell*, 538 U.S. 408 (2003); and *Philip Morris USA v. Williams*, 549 U.S. 346 (2007).

81.     DDM's rights under the Due Process Clause of the U.S. Constitution and applicable state Constitution or statute are violated by any financial or other arrangement that might distort a government attorney's duty to pursue justice rather than his or her personal interests, financial or otherwise, in the context of a civil enforcement proceeding, including by Plaintiff's use of a contingency fee contract with private counsel.

82.     Plaintiff's claims are barred, in whole or in part, because they violate the *Ex Post Facto* clauses of the U.S. Constitution, insofar as Plaintiff seeks to impose liability retroactively for conduct that was not actionable at the time it occurred.

83.     Plaintiff's claims are barred, in whole or in part, by the political question and separation of powers doctrine.

84.     Plaintiff's claims are barred in whole or in part by the Dormant Commerce Clause of the United States Constitution.

85.     To the extent that Plaintiff's claims relate to DDM's alleged advertising, public statements, lobbying, or other activities protected by the First Amendment to the Constitution of the United States or by the Constitution of the State of Ohio or that of any other state whose laws may apply, such claims are barred.

86.     Plaintiff's claims are barred to the extent that DDM has valid defenses which bar recovery by those persons on whose behalf Plaintiff purportedly seeks recovery.

87.     DDM adopts by reference all defenses asserted in any party's motion to dismiss filed herein.

88.     DDM asserts all applicable defenses under Federal Rules of Civil Procedure 8(c) and 12(b) and/or Ohio Rules of Civil Procedure 8(C) and 12(B), as investigation and discovery proceeds.

89.     DDM reserves the right to assert any other defense available under the Ohio Revised Code, Ohio common law and/or Ohio Constitution.

90.     Plaintiff's claims are barred, in whole or in part, by the absence of the existence of an "enterprise" for the purposes of RICO liability.

91.     Plaintiff's RICO claims are barred, in whole or in part, by the absence of an "association" between DDM and any other defendant or entity alleged to be part of an "enterprise" for purposes of RICO.

92.     Plaintiff's RICO claims are barred, in whole or in part, because DDM did not participate in any "enterprise."

93.     Plaintiff's RICO claims are barred, in whole or in part, because DDM did not engage in a pattern of racketeering activity under RICO.

94.     Plaintiff's RICO claims are barred, in whole or in part, because DDM did not knowingly agree to facilitate any schemes that includes the operation or management of a RICO enterprise.

95.     Plaintiff's claims are barred, in whole or in part, by the absence of a conspiracy, including a lack of agreement to commit any unlawful predicate acts, necessary to establish a valid RICO claim under 18 U.S.C. § 1962(d).

96.     Plaintiff's RICO claims are barred, in whole or in part, because DDM did not commit any predicate acts that may give rise to liability under 18 U.S.C. § 1962.

97.     Plaintiff's RICO claims are barred, in whole or in part, because there are no allegations that DDM adopted the goal of furthering or facilitating any criminal endeavor as necessary to support plaintiff's civil conspiracy theory of liability.

98.     Plaintiffs alleged damages do not constitute injury to business or property interests cognizable under RICO.

99.     Plaintiff's RICO claims are barred, in whole or in part, because the alleged predicated acts, namely failure to report and halt suspicious orders under the Controlled Substances Act, do not qualify as racketeering activity for purposes of RICO.

100.     The federal RICO statute is unconstitutionally vague.

101.     Plaintiff's claims are barred, in whole or in part, by the absence of the existence of a "malicious combination" as required to prove civil conspiracy.

102.     Plaintiff's claims are barred, in whole or in part, by the absence of a "combination" between DDM and any other defendant or entity alleged to be part of a  civil conspiracy.

103.     Plaintiffs' claims are barred, in whole or in part, because DDM did not participate in any "malicious combination" as required to prove civil conspiracy.

104.     Plaintiff's claims are barred, in whole or in part, because DDM did not commit an unlawful act as required to prove civil conspiracy.

105.     Plaintiff's claims are barred, in whole or in part, by the absence of a conspiracy, including a lack of agreement to commit any unlawful predicate acts, necessary to establish a valid conspiracy claim.

106.     DDM is entitled to, and claims the benefit of, all defenses and presumptions set forth in or arising from any rule of law or statute of this State or any other state whose substantive law might control the action.

107.     Plaintiff's claims are subject to all defenses that could be asserted if Plaintiff's claims were properly made by individuals on whose behalf or for whose alleged damages Plaintiff seeks to recover.

108.     DDM adopts by reference the affirmative defenses pled in response to prior iterations of Cuyahoga County's complaint, including the original complaint and all amendments thereto.

109.     DDM adopts by reference any additional applicable defense pled by any other defendants not otherwise pled herein.  DDM reserves the right to assert all defenses, whether

19

affirmative or otherwise, that may become apparent or available to it during the course of this litigation, and hereby provide notice of its intent to add and rely upon any such other and further defenses in the future.

WHEREFORE, Discount Drug Mart, Inc. requests the Court to dismiss the Complaint at Plaintiffs' cost, and to enter any other relief the Court deems just and proper.

Respectfully submitted,

/s/ Timothy D. Johnson
Timothy D. Johnson (0006686)
CAVITCH FAMILO & DURKIN, CO. LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, Ohio  44114
(216)621-7860
 (216)621-3415 Fax
tjohnson@cavitch.com
*Attorney for Defendant Discount Drug Mart, Inc.*

## JURY DEMAND

DDM respectfully requests a Jury in the maximum number allowed by law at the time of the Trial of this matter on any disputed issue of material fact.

## CERTIFICATE OF SERVICE

A copy of the foregoing **ANSWER OF DEFENDANT DISCOUNT DRUG MART, INC. TO CUYAHOGA COUNTY'S AMENDMENT BY INTERLINEATION** was filed and served via PACER this 23rd day of December, 2019 on all counsel of record.

/s/ Timothy D. Johnson
TIMOTHY D. JOHNSON
*Attorney for Defendant Discount Drug Mart, Inc.*