# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION | ) | CASE NO. 1:17-MD-2804 |
| OPIATE LITIGATION | ) | |
| | ) | JUDGE POLSTER |
| THIS DOCUMENT RELATES TO: | ) | |
| *All Cases* | ) | |
| | ) | <u>EVIDENTIARY ORDER</u> |

Shortly before the start of the first bellwether trial in this MDL, the Court delivered oral rulings on a number of pretrial motions in limine ("MIL") and other evidentiary motions.  *See* Doc. #: 2828 (transcript Oct. 15, 2019).  The Court now memorializes those evidentiary rulings in summary form.  These rulings will apply to all future cases in this MDL that are tried by this Court.  Additionally, as a general matter, these rulings apply to remanded cases tried by transferor courts.  *See* David F. Herr, *Multidistrict Litigation Manual* §10:5 (May 2019 update) ("The transferor court (court to which the actions are remanded) receives the cases in the condition they are in at the time of remand.  Decisions that have been made in the case continue to apply unless circumstances change warranting their modification. The decisions made by the transferee court are considered 'law of the case.'") (footnotes omitted).  *See also Manual for Complex Litigation, Fourth* § 20.132 at 224-25 (2004) (before remand of cases to transferor courts, the transferee court should enter "a pretrial order that fully chronicles the proceedings, summarizes the rulings that will affect further proceedings, outlines the issues remaining for discovery and trial, and indicates the nature and expected duration of further pretrial proceedings"); *In re Welding Fume Prods. Liab. Litig.*, MDL No. 1535, 2010 WL 7699456 (N.D. Ohio June 4, 2010) (entering this type of order).

In the future, the parties should generally not file in any MDL case a motion (including a motion for reconsideration) addressing an evidentiary issue already addressed below.  Going forward, a party may file a motion in an MDL case to modify the contours of rulings documented in this Order only if that party can show that the particular circumstances of an individual case warrant a revision.

*   *   *   *   *

- **Motions Asking the Court to Make Factual Determinations.**

In the motions listed below, the movant's request either assumes a certain set of facts that are in dispute, or implicitly asks the Court to make a finding of fact.  Of course, the Court cannot in advance of trial make evidentiary rulings that exclude evidence regarding contested factual matters, which are for the jury to decide.  *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (reversing the district court for, *inter alia*, improperly making factual findings on contested issues when ruling on a motion in limine).  Accordingly, the Court denies these motions.  At trial, the parties may object to any specific evidence or argument they contend is factually inaccurate or lacks foundation.

- Schein MIL No. 2[1]  (seeking to exclude references to Henry Schein Medical Systems, Inc. as having distributed opioid medications) – DENIED.

Plaintiffs bring claims against the "family" of Schein Defendants, including Henry Schein Medical Systems, Inc. ("HSMS") and Henry Schein, Inc. ("HSI").[2]  Schein asserts that, because

---

[1]      Schein Mtn. at 2 (Doc. #: 2645); Pls. Opp. at 73 (Doc. #: 2727).

[2]      The Schein Defendants are named only in the Summit County suit, and not in the Cuyahoga County suit.  The Court refers to the Schein Defendants collectively as "Schein."

2

HSMS is a medical technology company that does not sell or distribute medications, the Court

should exclude any reference to HSMS.  However, Plaintiffs assert HSMS entered into a strategic

partnership with co-defendant opioid distributor Cardinal Health that generated millions of dollars

in sales, and this evidence provides relevant context.  In light of these factual disputes, the motion

is denied.

- • Schein MIL No. 3[3]  (seeking to exclude references to HSI's sales or distributions of opioid medications to retail, chain, or internet pharmacies, or "pill mills") – DENIED.

Schein asserts HSI distributed opioids only to individual prescribers, i.e. doctors and dentists;

accordingly, the Court should preclude Plaintiffs from referring to HSI or using collective terms

such as "Defendants" or "Distributors" when referring to distributions to chain or retail pharmacies

(including Internet pharmacies or "pill mills").  Plaintiffs respond they have no intention of making

factual misrepresentations at trial about HSI's role or activities.  The motion is denied with the

understanding that both Plaintiffs and Defendants need to be careful when referring to groups of

Defendants. *See infra* at 62 (when using the term "Defendants," if not referring to all Defendants

in the case, counsel must be specific as to which Defendants they mean).

- • Schein MIL No. 12[4]  (seeking to preclude references to Henry Schein Animal Health, which is not a named party) – DENIED.

Schein seeks to preclude any evidence or reference regarding Henry Schein Animal Health

("HSAH"), on the grounds that HSAH is a separate legal entity in which HSI no longer holds an

interest.  Plaintiffs respond that, in 2014 (when HSI did hold an interest in HSAH), HSAH was

---

[3]     Schein Mtn. at 3 (Doc. #: 2645); Pls. Opp. at 74 (Doc. #: 2727).

[4]     Schein Mtn. at 7-8 (Doc. #: 2645); Pls. Opp. at 81-82 (Doc. #: 2727).

investigated for distributing wholesale dangerous drugs to an unlicensed entity in Ohio.  On this record, Schein has not shown this evidence is irrelevant or unduly prejudicial.  The Court declines to make a blanket ruling at this time.

- • Distributors MIL No. 4[5]  (seeking to preclude suggestions that the jury may infer an older document never existed just because it cannot be found) – DENIED.

Plaintiffs' expert, James Rafalski, assumed: (i) if a Distributor Defendant is unable to locate a due diligence file assessing whether an opioid order is suspicious, then (ii) the Distributor did not perform any due diligence, no matter how long ago the Distributor received that opioid order.  The Distributor Defendants insist the fact that they cannot locate a suspicious order report or due diligence file from many years ago does not mean the documents never existed.  Defendants may be correct, but they can use cross-examination to make clear any errors in Rafalski's assumptions.  The Court will not preclude Plaintiffs from allowing the jury to reach inferences from all of the evidence.

- ● **Motions Seeking an Initial Showing of Predicate Evidence.**

In each of the motions discussed below, the movant asks the Court to require Plaintiffs to make a predicate evidentiary showing as a prerequisite before they are allowed to introduce certain additional evidence.  Similar to the motions discussed above, granting these motions would infringe on the jury's fact-finding role.  The Court thus denies the motions.

---

[5]  Distrs. Mem. at 11-14 (Doc. #: 2666); Pls. Opp. at 63-65 (Doc. #: 2727); Distrs. Reply at 9-11 (Doc. #: 2804).

Predicate Evidence of Actual Diversion or Damages.

In thus subgroup of motions, Schein urges the Court to require Plaintiffs to make a predicate showing that Schein's conduct resulted in actual diversion or caused harm to Plaintiffs.  In ruling on Defendants' summary judgment motions, the Court rejected the notion that Plaintiffs must show that specific opioid orders were diverted.[6]  Additionally, the Court found Plaintiffs had presented sufficient evidence to create a triable fact issue as to whether Defendants' conduct was a substantial factor in producing the alleged harm.[7]  As explained in these earlier rulings, and for the reasons discussed below, the evidence that Schein seeks to exclude goes to the heart of matters for the jury to decide.  Accordingly, the Court denies the motions.

- Schein MIL No. 4[8] (seeking to preclude references to HSI's opioid shipments to Dr. Brian Heim absent an initial showing of actual diversion or causation of damages) – DENIED.

Schein seeks to exclude evidence of HSI's opioid shipments to Dr. Brian Heim, absent a predicate showing that these opioids were in fact diverted or caused Plaintiffs' alleged harm. Plaintiffs claim that, from August of 2011 to June of 2012 – during a period of time in which HSI appears to have not reported any hydrocodone sales to the Ohio Board of Pharmacy – HSI supplied

---

[6]     *See, e.g.*, SJ Order on Causation at 8-9 (Doc. #: 2561) (finding Plaintiffs' aggregate proof of causation sufficient to overcome summary judgment; given the massive increases in the supply of prescription opioids, combined with evidence suggesting a systemic failure to maintain effective controls against diversion, a fact finder could reasonably infer these failures were a substantial factor in producing the alleged harm).

[7]     *See id.*; SJ Order on Small Distrs. at 5 (Doc. #: 2559) (in light of the evidence regarding Schein's shipments to Dr. Heim, a question of fact exists as to whether Schein's market activities were *de minimis*).

[8]     Schein Mtn. at 3-4 (Doc. #: 2645); Pls. Opp. at 74-75 (Doc. #: 2727).

5

Dr. Heim with 11,500 hydrocodone tablets.[9]  Plaintiffs contend that, during this time, Dr. Heim was

under an indictment in Ohio for drug trafficking and evidence tampering.  Plaintiffs also assert that,

even though HSI suspended Dr. Heim's orders on two occasions, it never reported his orders as

"suspicious" to the Drug Enforcement Administration ("DEA").   Evidence of HSI's opioid

distributions to Dr. Heim is relevant to a number of matters, including HSI's knowledge that opioids

were capable of diversion, HSI's operating procedures, and the effectiveness of HSI's due diligence

and SOM programs.  These matters do not require a predicate showing that the particular opioids

distributed by HSI were diverted or used in a manner that caused or contributed to the public

nuisance alleged by Plaintiffs.

- Schein MIL No. 6[10] (seeking to preclude references of HSI's opioid distributions to
Dr. Adolph Harper, because Plaintiffs cannot show these opioids were diverted or
actually caused harm) – DENIED.

Schein argues evidence of HSI's opioid distributions to Dr. Adolph Harper from 2003 to

2008 is irrelevant and unduly prejudicial, because Plaintiffs cannot show these distributions were

diverted or caused actual harm.  Schein further asserts that, although Dr. Harper was indicted for

illegally prescribing opioids, the indictment covered the period from 2009 to 2012, which was *after*

HSI had stopped distributing to him in 2008.  The Court finds evidence of HSI's distributions to

Dr. Harper is relevant to a number of matters, including the effectiveness of HSI's due diligence and

SOM programs.  For example, Plaintiffs allege that, had an HSI sales representative visited Dr.

Harper's office, he or she would have seen "red flags" indicating that Dr. Harper's behavior was

suspicious.  The Court finds no meaningful danger of unfair prejudice or that the jury would be

---

[9]      *See* SJ Order on Small Distrs. at 4 (Doc. #: 2559).

[10]     Schein Mtn. at 4-5 (Doc. #: 2645); Pls. Opp. at 77 (Doc. #: 2727).

misled, as HSI will have an opportunity to submit its own evidence addressing the timing and impact, if any, of its opioid sales to Dr. Harper.

- Schein MIL No. 7[11] (seeking to preclude references to purported inadequacies in HSI's SOMS absent an initial showing of actual diversion or causation of damages) – DENIED.

Schein seeks to exclude evidence of any alleged deficiencies in HSI's SOMS, absent a predicate showing that the opioids distributed by HSI into Summit County were diverted or otherwise caused harm in Summit County. Schein has not shown a valid basis to exclude this evidence. For the reasons stated above, evidence about the alleged deficiencies in Defendants' SOMS is admissible and appropriate for the jury's consideration at trial. If Plaintiffs present insufficient evidence, Schein can request a directed verdict at the appropriate time.

### Predicate Evidence of Knowledge of Dr. Heim's Indictment.

- Schein MIL No. 5[12] (seeking to preclude suggestions that HSI should not have shipped opioids to Dr. Heim after his May 2012 indictment) - DENIED.

Schein seeks to exclude evidence of HSI's distribution of opioids to Dr. Heim after his May 2012 indictment. This evidence is relevant to a number of issues, including HSI's operating procedures and the effectiveness of HSI's due diligence and SOM programs. These matters do not require a predicate showing that Dr. Heim's indictment was available or accessible to HSI. The Court finds no meaningful danger of unfair prejudice or that the jury will be misled, as HSI will have an opportunity to introduce evidence of its own addressing its relationship with Dr. Heim and the

---

[11]     Schein Mtn. at 5 (Doc. #: 2645); Pls. Opp. at 77-78 (Doc. #: 2727).

[12]     Schein Mtn. at 4 (Doc. #: 2645); Pls. Opp. at 75-77 (Doc. #: 2727).

7

timing of any decision to sell opioid products to him.  The Court therefore denies this motion.

- **Evidence Regarding Locations Outside the *Track One Trial* Counties.**

In the motions discussed below, Defendants seek to exclude evidence regarding opioid distributions and other acts that occurred in, or had an impact on, locations outside the *Track One* Counties.[13]  But evidence of what occurred outside the *Track One* Counties is generally relevant to Defendants' conduct within the *Track One* Counties, and the damages allegedly caused therein.  For example, the shipment of suspicious orders to locations outside the *Track One* Counties tends to show (and is thus relevant to) whether Defendants shipped suspicious orders to the *Track One* Counties.  This is particularly true because there is evidence that Defendants acted pursuant to practices and policies that were national in scope.[14]  Accordingly, the Court denies these motions.

Distributions to and Acts Occurring in or Impacting Other Locations.

In this subgroup of motions, the movants seek to preclude evidence relating to opioid sales and distributions to other locations.  For the reasons stated below, the Court denies these motions.

- Defendants MIL No. 6[15] (seeking to exclude evidence of alleged wrongful shipments to places outside the *Track One* Counties) – DENIED.

---

[13]     The *"Track One* Counties" are the Plaintiffs in the first bellwether case, Summit County and Cuyahoga County, Ohio.

[14]     The Court has previously also ruled that evidence of national trends and national shipments is relevant to demonstrate the national scope of the opioid crisis.  *See Daubert* Order re: Cutler at 4-5 (Doc. #: 2542).

[15]     Defs. Mtn. at 16-18 (Doc. #: 2661); Pls. Opp. at 31-34 (Doc. #: 2727); Defs. Reply at 16-18 (Doc. #: 2800).

8

Defendants assert evidence of opioid shipments to places outside the *Track One* Counties is irrelevant and unduly prejudicial, because Plaintiffs cannot show these opioids "migrated" to the *Track One* Counties.  Plaintiffs disagree, pointing to Rafalski's expert testimony that Defendants had a "nationwide" and "systemic" failure to report suspicious orders and maintain effective controls against diversion, and knew that opioids distributed in Florida were migrating to Ohio.  Defendants provide no valid grounds to exclude evidence of these shipments.

- Schein MIL No. 8[16] (seeking to preclude references to opioid distributions to places outside Summit County) – DENIED.

Schein asserts Plaintiffs have no evidence that any of HSI's opioid distributions to places outside Summit County migrated into Summit County.  According to Rafalski, HSI reported no suspicious orders between 2009 and 2018.  This national failure to report suspicious orders raises a fair inference that, like the other Distributors, HSI's anti-diversion efforts – and the alleged deficiencies therein – were national in scope.  Therefore, HSI's shipment of suspicious orders to other spots around the nation tends to show (and is thus is relevant to) whether HSI shipped suspicious orders to the *Track One* jurisdictions.

- Schein MIL No. 9[17] (seeking to preclude references to DEA fines, investigations, or admonitions concerning HSI's opioid distributions to locations other than Summit County) – DENIED.

Schein seeks to exclude evidence of the DEA's investigations and fines regarding HSI's opioid distributions to locations other than Summit County.[18]  For the reasons discussed, this

---

[16] Schein Mtn. at 5-6 (Doc. #: 2645); Pls. Opp. at 78-79 (Doc. #: 2727).

[17] Schein Mtn. at 6 (Doc. #: 2645); Pls. Opp. at 79 (Doc. #: 2727).

[18] To the extent Schein asserts the DEA fines, investigations, or admonitions are otherwise inadmissible, the Court denies the motion for the reasons stated *infra* at 12.

9

evidence is relevant to HSI's conduct in Summit County, particularly if Plaintiffs can establish the conduct was pursuant to nationwide policies (*e.g.* national SOMs). The Court will not make a blanket ruling on this issue, but rather, will address the matter based on the context in which it is raised at trial.

- Teva MIL No. 5[19] (seeking to exclude evidence of shipments and marketing-related statements directed to areas outside the *Track One* Counties) – DENIED.

Teva[20] seeks to exclude evidence of shipments and marketing-related statements directed to areas outside the *Track One* Counties. Plaintiffs plan to introduce evidence that Teva's marketing was done nationally, not regionally or by state or county. As discussed above, evidence of opioid shipments to other locations tends to show (and is thus relevant to) whether the Distributors shipped suspicious orders to the *Track One* Counties. For similar reasons, evidence of marketing-related statements in other locations is relevant to determining Defendants' marketing-related conduct (and the effect thereof) in the *Track One* Counties.

Opioid-Related Harm in Other Locations

- Teva MIL No. 4[21] (seeking to exclude evidence of opioid-related harm that occurred outside the *Track One* Counties) – DENIED.

---

[19] Teva Mem. at 9-11 (Doc. #: 2668-1); Pls. Opp. at 108-109 (Doc. #: 2727); Teva Reply at 7-8 (Doc. #: 2808).

[20] The Teva Defendants include Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., and the Actavis Generic Defendants. *See* Teva Mem. at 1 n.1 (Doc. #: 2668-1). The Court refers to the Teva Defendants collectively as "Teva."

[21] Teva Mem. at 8-9 (Doc. #: 2668-1); Pls. Opp. at 106-108 (Doc. #: 2727); Teva Reply at 6-7 (Doc. #: 2808).

Teva asserts evidence relating to harm occurring outside the *Track One* Counties is irrelevant and prejudicial, because jurors may wrongly believe that, merely because other areas of the country have experienced significant opioid-related harm, so must have the *Track One* Counties.  For the reasons stated above, the Court finds evidence about opioid-related harm that occurred outside the *Track One* Counties is relevant to Defendants' conduct within the *Track One* Counties and the damages allegedly sustained therein.

Maps Showing Nationwide Trends in Drug Deaths.

• McKesson MIL No. 3[22] (seeking to exclude maps showing nationwide trends in drug deaths) – DENIED.

McKesson seeks to exclude certain maps produced by the Centers for Disease Control ("CDC") that depict nationwide mortality from "drug poisoning," on the grounds that they are irrelevant or unduly prejudicial.  The Court agrees with Plaintiffs that these mortality maps are relevant to provide context for the scope of the national opioid crisis and will be helpful to the jury. The Court therefore denies this motion.  McKesson may use cross-examination to point out how it believes the maps are over-inclusive or otherwise misleading.

● **Governmental Action or Inaction.**

At the pretrial hearing, the Court informed the parties that it intends to have "a very wide strike zone" for evidence about what the federal government, the DEA, and the Food and Drug Administration ("FDA") did or did not do in connection with opioid regulation, as this information

---

[22] McKesson Mem. at 3-4 (Doc. #: 2663-1); Pls. Opp. at 97-98 (Doc. #: 2727); McKesson Reply at 3-4 (Doc. #: 2802).

is an essential part of the story regarding the claims and defenses in this case.  Transcript at 5:6-10

(Doc. #: 2828).  Specifically, the Court stated:

> The facts are the facts.  Each side is going to use those facts in their narrative for the
> jury and for public consumption, and [the Court is] going to let both sides have a
> great deal of latitude on that.  We're obviously not going to have witnesses
> purporting to tell the jury what the law is, but in terms of what the DEA and FDA did
> or didn't do, and what implications that would have, [the Court is] going to let both
> sides have at it.

*Id.* at 5:11-18.  Consistent with this "very wide strike zone," the Court will generally admit evidence

relating to action or inaction taken by the DEA or other governmental entities, subject to objections

of undue prejudice raised in the context of trial.

> Enforcement Actions, Fines, and Settlements.

In this subgroup of motions, the movants seek to exclude evidence of enforcement actions

by, and related settlements with, the DEA or other governmental entities.  Under Rule 408, evidence

of "conduct or a statement made during compromise negotiations" is not admissible "to prove or

disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement

or a contradiction."  Fed. R. Evid. 408(a).[23]  However, the Court may admit this evidence for

---

[23]    Rule 408's protection applies only to the communications made during settlement
negotiations; existence of the settlement itself is not privileged.  *See Goodyear Tire & Rubber Co.
v. Chiles Power Supply, Inc.*, 332 F.3d 976, 981-82 (6th Cir. 2003).  Thus, the content and terms of
a final settlement agreement are generally admissible.  *See, e.g., Wilson v. Prime Source Healthcare
of Ohio*, No. 1:16-cv-1298, 2018 WL 1127653, at *7 (N.D. Ohio Mar. 2, 2018) (citing *Goodyear*,
finding the negotiations, not the final settlement terms, are protected).

"another purpose," such as to show a particular Defendant's knowledge or notice of potential harm. Fed. R. Evid. 408(b) and Committee Notes on 2006 amendment.[24]

Here, Plaintiffs assert that evidence of prior enforcement actions and settlements establish a pattern of conduct that demonstrates: (1) Defendants knew their SOM systems were inadequate and likely to cause harm; and (2) Defendants' conduct was intentional and persisted over a lengthy period of time. The Court agrees this evidence is relevant and permissible and therefore denies these motions.

- Distributors MIL No. 1[25] (seeking to exclude evidence of settlements with the DEA and State of West Virginia) – DENIED.

The Distributors seek to exclude evidence of settlements they entered into with the DEA and the State of West Virginia.[26] Between 2007 and 2017, AmerisourceBergen, Cardinal Health, and McKesson each entered into one or more settlements with the DEA. These agreements resolved accusations by the DEA that the Distributors failed to maintain effective controls against diversion

---

[24] *See also, e.g.*, *Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 519 (6th Cir. 2008) (affirming the admission of evidence of settlements to prove a party's state of mind); *United States v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995) (affirming the admission of defendant's settlement with the FTC to show defendant was on notice that his subsequent similar conduct was wrongful); *In re E.I. DuPont De Nemours & Co. C-8 Pers. Injury Litig.*, 2016 WL 659112, at *54 (S.D. Ohio Feb. 17, 2016) (admitting evidence of a consent decree to show that defendant had knowledge that the EPA believed defendant's handling of a matter was deficient).

[25] Distrs. Mem. at 1-6 (Doc. #: 2666); Pls. Opp. at 53-59 (Doc. #: 2727); Distrs. Reply at 1-4 (Doc. #: 2804).

[26] The Distributors provide no specific factual information regarding the West Virginia settlements. *See* Distrs. Mem. at 3, 5 (Doc. #: 2666).

13

in multiple facilities across the United States.[27]  Under the settlements, the Distributors agreed to

take specific measures to maintain compliance programs to prevent diversion, *i.e.* to detect and

report suspicious orders and conduct due diligence or not ship them.[28]  Moreover, at least two

Distributors (Cardinal and McKesson) subsequently faced additional charges of failure to maintain

effective controls, and executed new settlements where they agreed to improve their SOMs and

admitted certain wrongdoing.[29]  For the reasons discussed above, evidence of these agreements is

relevant and admissible to show, *inter alia*, the Distributors' knowledge of their duties under the

CSA and whether their conduct was in violation of those duties.

- Walgreens MIL No. 2[30] (seeking to exclude evidence of the DEA's enforcement
  action and related settlement in Florida) – DENIED.

Similarly, evidence of the DEA's enforcement action and related settlement involving

Walgreens' conduct in Florida is both relevant and admissible.  While Rule 408 prohibits evidence

---

[27]  *See* Distrs. Mem. at 2-3 (Doc. #: 2666); *see also* 2007 AmerisourceBergen DEA Settlement (Doc. #: 1964-86); 2008 Cardinal DEA Settlement (Doc. #: 1964-3) (settling allegations of ineffective controls against diversion involving facilities in Washington, Florida, New Jersey, Texas, Georgia, California, and Colorado); 2008 McKesson DEA Settlement (Doc.#: 36) (settling allegations of ineffective controls against diversion involving facilities in Florida, Maryland, Texas, and Colorado); 2012 Cardinal DEA Settlement (Doc. #: 1960-103); 2017 McKesson DEA Settlement (Doc. #: 1964-24).

[28]  *See, e.g.,* 2008 Cardinal DEA Settlement at 1-4 (Doc. #: 1964-3) and Appendix A thereto; 2008 McKesson Settlement at 1-4 (Doc. #: 1964-36).

[29]  More specifically, in 2012, Cardinal admitted "that its due diligence efforts for some pharmacy customers and its compliance with the 2008 [agreement], in certain respects, were inadequate."  2012 Cardinal DEA Settlement at 2 (Doc. #: 1960-103).  And in 2017, McKesson acknowledged that "at various times," it did not identify or report to DEA certain orders that, based on guidance contained in DEA letters, it should have detected as suspicious.  2017 McKesson Settlement at 3 (Doc. #: 1964-24).

[30]  Walgreens Mtn. at 4-8 (Doc. #: 2648); Pls. Opp. at 84-85 (Doc. #: 2727); Walgreens Reply at 3-4 (Doc. #: 2802).

14

of a compromise and settlement of a disputed claim to prove liability, evidence of both the existence and content of a prior settlement agreement is admissible to show another purpose, including Defendant's knowledge or notice of potential harm.

- Teva MIL No. 3[31] (seeking to exclude evidence of all civil settlements) – DENIED.

Teva seeks to exclude evidence of all civil settlements, including a settlement with the Oklahoma Attorney General and a 2008 settlement involving the DOJ and one of its related companies, Cephalon, for claims of off-label marketing.  For the reasons stated, this evidence is admissible for purposes other than to show liability, including to show Teva's knowledge and state of mind.

Criminal Investigations, Grand Jury Proceedings, Indictments.

These motions address the admissibility of criminal investigations, grand jury proceedings, and criminal indictments.  Absent a conviction, the fact of an indictment is generally inadmissible. *See* Fed. R. Evid. 803(22);[32] *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 412-13 (6th Cir.

---

[31]     Teva Mem. at 6-8 (Doc. #: 2668-1); Pls. Opp. at 106 (Doc. #: 2727); Teva Reply at 4-6 (Doc. #: 2808).

[32]     Under Rule 803(22), regardless of whether the declarant is available as a witness, evidence of a final judgment of *conviction* is not excluded by the hearsay rule if:
- (A)  the judgment was entered after a trial or guilty plea, but not a nolo contendere plea;
- (B)  the conviction was for a crime punishable by death or by imprisonment for more than a year;
- (C)  the evidence is admitted to prove any fact essential to the judgment; and
- (D)  when offered by the prosecutor in a criminal case for a purpose other than impeachment, the judgment was against the defendant.

Fed. R. Evid. 803(22).

15

2006) (an indictment is excepted from the hearsay rule if it relates to a conviction that falls within the scope of Rule 803(22)).

As to criminal investigations, however, a properly-prepared investigative report is admissible so long as "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8).[33] "To determine whether a report is trustworthy, courts consider the following factors: (1) the timeliness of the investigation upon which the report is based, (2) the special skill or experience of the investigators, (3) whether the agency held a hearing, and (4) possible motivational problems." *Chavez v. Carranza*, 559 F.3d 486, 496 (6th Cir. 2009) (citations omitted). "This list of factors is not exclusive; any circumstance which may affect the trustworthiness of the underlying information, and thus, the trustworthiness of the findings, must be considered when ruling upon the admissibility of factual findings under this rule." *Complaint of Paducah Towing Co.*, 692 F.2d 412, 420 (6th Cir. 1982) (citations omitted).

As set forth below, the Court will exclude references to criminal investigations and indictments that did not result in a conviction, but allow evidence of criminal investigative reports, unless the source of information of information lacks trustworthiness.

---

[33]      Under Rule 803(8), the record or statement of a public office is not hearsay if:
(A) it sets out:
  (ii)  the office's activities;
  (ii)  a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
  (iii)  in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
(B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.
Fed. R. Evid. 803(8).

16

- Plaintiffs MIL No. 30[34] (seeking to preclude references to grand jury proceedings involving Cuyahoga County) – GRANTED AS UNOPPOSED.

Plaintiffs seek to preclude any evidence or reference to grand jury testimony or proceedings involving Cuyahoga County, on the grounds that grand jury evidence is subject to strict secrecy rules and would be irrelevant or unduly prejudicial.  The parties do not identify the specific evidence at issue in this motion; it presumably relates to criminal investigations into conduct connected with Plaintiffs' related MILs (Nos. 32-37, *infra*), including alleged corruption by the County and its officials (such as accusations that County-employed guards smuggled opioids to inmates in the County's jail).[35]

Defendants agree that, absent a conviction, the fact of grand jury proceedings is ordinarily inadmissible.  The Court will exclude this evidence, but notes the underlying facts that led to any grand jury proceedings remain admissible.

- Plaintiffs MIL No. 31[36] (seeking to preclude references to recent investigations or subpoenas involving Cuyahoga County) – GRANTED AS UNOPPOSED.

Plaintiffs seek to preclude any evidence or reference to recent investigations or subpoenas involving Cuyahoga County, on the grounds of irrelevance or undue prejudice.  Defendants agree that, absent a conviction, the fact of a criminal investigation or subpoena is ordinarily inadmissible. The Court will exclude this evidence, but notes the underlying facts that led to any investigation or subpoena are fair game.

---

[34]     Pls. Mtn. at 37 (Doc. #: 2652); Dfs. Opp. at 43-44 (Doc. #: 2725); Pls. Reply at 35 (Doc. #: 2805).

[35]     *See, e.g.,* Dfs. Opp. at 43 (Doc. #: 2725).

[36]     Pls. Mtn. at 37 (Doc. #: 2652); Dfs. Opp. at 44 (Doc. #: 2725); Pls. Reply at 36 (Doc. #: 2805).

17

- Plaintiffs MIL No. 32[37] (seeking to preclude references to the indictment of Ken Mills, the former Director of Cuyahoga County Jails) – GRANTED AS UNOPPOSED.

Plaintiffs seek to preclude any reference to the indictment of Ken Mills, the former director of Cuyahoga County jails, on the grounds of irrelevance or undue prejudice.  Defendants agree that, absent a conviction, the fact of an indictment is ordinarily inadmissible.  The Court will exclude this evidence, but notes the underlying facts that led to any indictment are fair game.

- Plaintiffs MIL No. 33[38] (seeking to preclude references to any investigations of former Cuyahoga County Sheriff Pinkney or the Cuyahoga County Sheriff's Office) – GRANTED AS UNOPPOSED.

Plaintiffs seek to preclude evidence or references to any investigations of former Cuyahoga County Sheriff Pinkney or the Cuyahoga County Sheriff's Office, on the grounds of irrelevance or undue prejudice.  Defendants agree that, absent a conviction, the fact of an investigation is ordinarily inadmissible.  The Court will exclude this evidence, but notes the underlying facts that led to any investigation are fair game.

- Distributors MIL No. 3[39] (seeking to exclude evidence of criminal indictments and investigations, absent corresponding proof of a final judgment of conviction) – GRANTED as to indictments that did not lead to a conviction; DENIED as to criminal investigative reports, unless the source of information or other circumstances lack trustworthiness.

The Distributors seek to exclude evidence of indictments and criminal investigations that did not lead to a final judgment of conviction.  This evidence includes exhibits, testimony, and press

---

[37]     Pls. Mtn. at 38 (Doc. #: 2652); Dfs. Opp. at 44 (Doc. #: 2725); Pls. Reply at 36 (Doc. #: 2805).

[38]     Pls. Mtn. at 38 (Doc. #: 2652); Dfs. Opp. at 44 (Doc. #: 2725); Pls. Reply at 36-38 (Doc. #: 2805).

[39]     Distrs. Mem. at 8-11 (Doc. #: 2666); Pls. Opp. 62-63 (Doc. #: 2727); Distrs. Reply at 7-8 (Doc. #: 2804).

18

releases regarding alleged misconduct by the Distributors concerning the distribution, prescription, and dispensing of opioid medications – including a 2019 indictment against David Gustin, the former compliance director for McKesson's Ohio warehouse, for failing to comply with CSA duties. Based on the above analysis, absent proof of a corresponding final judgment or conviction, the Court will exclude evidence of the *fact* of an indictment or criminal investigation.  However, the Court will allow evidence of criminal *investigative reports*, unless the opponent demonstrates that the source of information or other circumstances indicate a lack of trustworthiness under Rule 803(8).

<u>Cephalon's Misdemeanor Guilty Plea.</u>

•    Teva MIL No. 1[40] (seeking to exclude evidence of Cephalon's misdemeanor guilty plea) – DENIED.

Teva seeks to exclude evidence that, in 2008, one of its related companies, Cephalon, pleaded guilty to a misdemeanor charge relating to the off-label promotion of three medicines, one of which was an opioid.  Specifically, Teva asserts the plea agreement is irrelevant because it: (1) contains no admission, and (2) would constitute improper character evidence and be unfairly prejudicial.  The Court agrees with Plaintiffs that this evidence is relevant to show that, over the course of many years, Defendants engaged in intentional conduct that was a substantial factor in causing the alleged harm to Plaintiffs.  *See* Fed. R. Evid. 404(b) (evidence of a crime may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").  Accordingly, the Court denies Teva's motion to exclude this evidence.

---

[40]    Teva Mem. at 1-3 (Doc. #: 2668-1); Pls. Opp. at 104-105 (Doc. #: 2727); Teva Reply at 1-3 (Doc. #: 2808).

<u>U.S. House of Representatives Energy and Commerce Committee's Investigation.</u>

• McKesson MIL No. 2[41] (seeking to preclude evidence about an investigation conducted by the U.S. House of Representatives Energy and Commerce Committee) – DENIED.

McKesson seeks to exclude evidence – in the form of letters, reports, and testimony – regarding the U.S. House of Representatives Energy and Commerce Committee's Investigative Report entitled "Red Flags and Warning Signs Ignored: Opioid Distribution and Enforcement Concerns in West Virginia" (Dec. 19, 2018) ("House Report"), on the grounds of irrelevance, prejudice, and hearsay.  As discussed above, an agency's investigative report is generally admissible unless the opponent can show "the source of information or other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803(8).

Here, the evidence McKesson seeks to exclude is both relevant and admissible.  For instance, Plaintiffs seek to introduce a letter from Congress to McKesson dated February 15, 2018 – not to show the truth of the matters asserted, but rather, to show McKesson was aware of the Congressional investigation and the statements contained in the letter.  *See United States v. Boyd*, 640 F.3d 657, 664 (6th Cir. 2011) ("statements to prove the listener's knowledge are not hearsay").  Moreover, the House Report itself falls under the public record exception to the hearsay rule.  *See* Fed. R. Evid. 803(8); *Alexander v. CareSource*, 576 F.3d 551, 561 (6th Cir. 2009) (a report containing an agency's conclusion or opinion formed as the result of a factual investigation is admissible under Rule 803(8)).  On this record, McKesson has not shown that the House Report's "source of information

---

[41]     McKesson Mem. at 2-3 (Doc. #: 2663-1); Pls. Opp. at 93-97 (Doc. #: 2727); McKesson Reply at 2-3 (Doc. #: 2802).

20

or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(b).  Accordingly,

the Court denies McKesson's motion to exclude this evidence.


### Governmental Letters.

- Schein MIL No. 10[42] (seeking to exclude references to a "Cease and Desist" letter sent by the Ohio Board of Pharmacy to HSI in 1998) – DENIED.

Schein seeks to exclude evidence regarding a "Cease and Desist" letter sent by the Ohio

Board of Pharmacy to HSI in 1998 regarding the "sale of dangerous drugs to persons/entities not

licensed/authorized to possess them."  Schein claims the letter is irrelevant and unfairly prejudicial,

misleading, and confusing.  The Court agrees with Plaintiffs that this evidence is relevant to show

intent, including HSI's awareness of the alleged deficiencies in its oversight of the sales of

dangerous opioid medications.  Accordingly, the Court denies this motion.

- McKesson MIL No. 4[43] (seeking to exclude evidence or argument about allegations contained in letters from the DEA or DOJ) – DENIED.

Similarly, McKesson seeks to exclude evidence about letters it received from the DEA and

DOJ, asserting they are inadmissible hearsay or unduly prejudicial.   These letters include

correspondence about the government's allegations and investigations leading up to McKesson's

settlement agreements with the DEA in 2008 and 2017.  Plaintiffs respond this evidence is relevant

to show that McKesson acted intentionally and with notice of the ways in which its conduct may

have violated the law.  The Court agrees the letters are relevant to show McKesson's knowledge of

---

[42]     Schein Mtn. at 6-7 (Doc. #: 2645); Pls. Opp. at 79-80 (Doc. #: 2727).

[43]     McKesson Mem. at 4-6 (Doc. #: 2663-1); Pls. Opp. at 98 (Doc. #: 2727); McKesson Reply at 4 (Doc. #: 2802).

the investigation and the statements contained therein.  *See* Fed. R. Evid. 801; *see also Boyd*, 640

F.3d at 664 ("statements to prove the listener's knowledge are not hearsay").  Accordingly, the Court

denies McKesson's motion to exclude this evidence.


The DEA's Approval of Particular SOM Programs.

- Plaintiffs MIL No. 15[44] (seeking to preclude references to the DEA's "approval" or "endorsement" of a particular Defendant's SOM program) – DENIED WITHOUT PREJUDICE.

Plaintiffs seek to exclude evidence regarding the DEA's "approval" or "endorsement" of a

particular Defendant's SOM program.  The Court finds this evidence is relevant to determining

whether Defendants acted knowingly and intentionally.  To the extent Plaintiffs assert such evidence

would cause unfair prejudice and allow the jury to "mistakenly conflate" the statements of individual

DEA agents with official DEA proclamations, Plaintiffs can use cross-examination to make this

distinction clear.  Accordingly, Defendants may introduce documents from the DEA that are relevant

to their SOM programs.  This ruling is without prejudice; Plaintiffs remain free to challenge the

admissibility of any potentially prejudicial piece of evidence at trial.[45]

---

[44]     Pls. Mtn. at 12-20 (Doc. #: 2652); Dfs. Opp. at 16-21 (Doc. #: 2725); Pls. Reply at 14-21 (Doc. #: 2805).

[45]     Further, any statements by DEA agents that contradict the requirements of the Controlled Substances Act or otherwise misstate the law will be subject to exclusion.

Failure of the DEA or FDA to Sanction or Initiate Enforcement Actions.

- Plaintiffs MIL No. 16[46] (Doc. #: 2652) (seeking to preclude suggestions that the DEA's failure to sanction, or initiate enforcement actions against, a particular Defendant demonstrates that the Defendant complied with the Controlled Substances Act ("CSA") and its implementing regulations) – DENIED.

Plaintiffs seek to preclude Defendants from suggesting the DEA's failure to impose a sanction upon, or initiate enforcement actions against, a particular Defendant demonstrates that the Defendant complied with its legal obligations.  Whether the DEA issued sanctions or initiated an enforcement action, however, is relevant to defenses against allegations of non-compliance with the Controlled Substances Act ("CSA"), including whether the alleged misconduct was intentional. *See In re Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.*, 2018 WL 6617375, at *2 (S.D. Ind. Dec. 18, 2018) (admitting evidence that the medical device at issue was never recalled by the FDA, nor did the FDA initiate any enforcement action).  Accordingly, the Court denies Plaintiffs' motion to exclude this evidence.  Should Defendants attempt to offer the evidence as *per se* proof or a presumption of compliance, Plaintiffs may object or seek a cautionary instruction to jurors.

- Plaintiffs MIL No. 17[47] (Doc. #: 2652) (seeking to preclude suggestions that the FDA's failure to sanction or initiate enforcement actions against a particular Defendant demonstrates that the Defendant complied with the Federal Food, Drug, and Cosmetic Act and FDA regulations) – DENIED.

---

[46] Pls. Mtn. at 20 (Doc. #: 2652); Dfs. Opp. at 21-23 (Doc. #: 2725); Pls. Reply at 21-23 (Doc. #: 2805).

[47] Pls. Mtn. at 20-22 (Doc. #: 2652); Dfs. Opp. at 24-25 (Doc. #: 2725); Pls. Reply at 23 (Doc. #: 2805).

For the same reasons, the Court denies Plaintiffs' motion to preclude any suggestion that the failure of the FDA to sanction or initiate enforcement actions against a particular Defendant demonstrates the Defendant complied with its legal obligations.

- **CSA Requirements and Violations.**

The motions discussed below challenge the admissibility of evidence relating to the duties imposed on registrants under the CSA, and Defendants' alleged violations of those duties. This Court has already determined that, under the duties imposed by the CSA and its implementing regulations, registrants are required to: (1) design and operate a system to disclose to the registrant suspicious orders (Suspicious Order Monitoring System, or "SOMS"); (2) inform the DEA of suspicious orders when discovered; and (3) not ship suspicious orders unless due diligence reasonably dispels the suspicion. *See* SJ Order on CSA Duties at 15, 18-19 (Doc. #: 2483). Additionally, the Court has found: (1) a violation of the CSA can constitute a predicate act under RICO and the OCPA, *see* SJ Order on RICO at 3 (Doc. #: 2580); (2) evidence of coordination by Defendants to avoid their duties under the CSA supports the civil conspiracy claims, *see* SJ Order on Civil Conspiracy at 7-10 (Doc. #: 2562); and (3) CSA violations can be used to prove the public nuisance claims, *see* SJ Order on Abatement at 2-4 (Doc. #: 2572) and SJ Order on Public Nuisance at 8 (Doc. #: 2578). The Court has also ruled that determination of whether any Defendant violated the CSA is a factual question for the jury to decide. *See* SJ Order on CSA Duties at 20-21 (Doc. #: 2483).

As set forth below, the Court's rulings on the parties' evidentiary motions vary depending on the particular evidence at issue.

24

CSA Requirements.

•     Plaintiffs MIL No. 13[48] (seeking to preclude arguments that the CSA and its implementing regulations do not impose, or have not always imposed, duties on registrants to identify, report, and not ship suspicious orders) – GRANTED.

The Court agrees with Plaintiffs that Defendants may not argue or suggest that the CSA and its implementing regulations have not always imposed the duties that this Court has already determined, *i.e.* that registrants must identify, report, and not ship suspicious orders (unless due diligence reasonably dispels the suspicion).  The Court rejects Defendants' contention that whether the CSA has "always imposed" these duties is a question of fact for the jury.[49]  However, this ruling does *not* preclude Defendants from presenting evidence that the DEA's guidance has been inconsistent or shifted over time, to the extent such evidence may be relevant to determining issues regarding Defendants' intent or state of mind, or whether Defendants substantially complied with their duties under the CSA.

––––––––––––––––––––

[48]    Pls. Mtn. at 10-11 (Doc. #: 2652); Dfs. Opp. at 13-14 (Doc. #: 2725); Pls. Reply at 8-10 (Doc. #: 2805).

[49]    Defendants mistakenly assert that, in ruling on Plaintiffs' motions for summary judgment regarding CSA duties, this Court found that whether the CSA has "always imposed" such duties presents "material facts in dispute that must be resolved by a jury."  Dfs. Opp. at 13 (Doc. #: 2725).  In fact, the Court held that material issues of fact existed as to whether Defendants had violated or not substantially complied with their duties under the CSA – not whether the duties themselves had always existed or changed over time.  *See* SJ Order on CSA Duties at 28-29 (Doc. #: 2483).

CSA Violations.

- Defendants MIL No. 7[50] (seeking to exclude evidence that Defendants violated their duties under the CSA or its implementing regulations) – DENIED.

Defendants argue evidence of whether they violated their CSA duties is irrelevant to Plaintiffs' claims.  As previously discussed, the Court has found that evidence of the Defendants' alleged CSA violations is relevant to the RICO, civil conspiracy, and public nuisance claims. Accordingly, the Court denies this motion.

- Cardinal MIL No. 1[51] (Doc. #: 2653) (seeking to exclude evidence of 14,000 suspicious orders that Cardinal Health did not report or ship) – DENIED.

Cardinal seeks to exclude evidence of approximately 14,000 suspicious orders from 2012 to 2015 that it did not report to the DEA and also did not ship.  This evidence is relevant to Plaintiffs' claims that Cardinal failed to maintain effective controls against the diversion of prescription opioids, including that Cardinal failed to establish an effective SOMS even after it was subject to DEA actions in 2008 and 2012.  That Cardinal did not ship the orders does not make irrelevant the fact that it violated the "reporting requirement," which is a central issue in this case. The Court rejects Cardinal's arguments that this evidence is irrelevant because Cardinal did not actually ship the orders and the DEA did not take any enforcement action when it learned of the omission.  These are matters for the jury's determination.


- **Witness Testimony.**

---

[50]     Defs. Mtn. at 18-22 (Doc. #: 2661); Pls. Opp. at 34-41 (Doc. #: 2727); Defs. Reply at 18-21 (Doc. #: 2800).

[51]     Cardinal Mem. at 1-4 (Doc. #: 2653-1); Pls. Opp. at 87-89 (Doc. #: 2727); Cardinal Reply at 1-2 (Doc. #: 2803).

The motions discussed below involve admission of witness testimony.  The Court's rulings vary depending on the specific matters raised by each motion.

Prior Testimony in Other Cases.

- Plaintiffs MIL No. 22[52] (seeking to preclude references to deposition or trial testimony by witnesses produced in litigation in which Plaintiffs did not participate) – DENIED WITHOUT PREJUDICE.

Except for the testimony produced during discovery in this MDL that may be used for impeachment purposes, Plaintiffs seek to exclude any deposition or trial testimony arising in litigation in which Plaintiffs did not participate (for example, similar opioid litigation in state court brought by other plaintiffs with different counsel).  Plaintiffs do not identify the testimony or "parallel litigation" to which this motion refers.  Presumably, however, it includes depositions taken in the Oklahoma-state opioid litigation, including the testimony of "Key Opinion Leaders" and pain advocacy groups with whom Defendants allegedly conspired to illegally market prescription opioids.[53]

Under Rule 804(b)(1), if the declarant is unavailable as a witness, the hearsay rule does not exclude former testimony that: "(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had – or, in a civil case, whose predecessor in interest had – an opportunity and similar

---

[52]     Pls. Mtn. at 25-27 (Doc. #: 2652); Dfs. Opp. at 29-31 (Doc. #: 2725); Pls. Reply at 26-29 (Doc. #: 2805).

[53]     *See* Dfs. Opp. at 29-30 (Doc. #: 2725).  Defendants assert that, in the Oklahoma case, the testimony of "Key Opinion Leaders" Dr. Lynn Webster and Dr. Scott Fishman directly contradicts Plaintiffs' allegations that Defendants were part of a marketing conspiracy, or that Defendants influenced the doctors' own medical opinions.  *See id.* at 30 n.24 (citations omitted).

motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1).  Absent an

adequate opportunity to develop the former testimony, it should not be admitted.[54]

The Court declines to provide a blanket exclusion of testimonial evidence that was: (1) taken

in parallel litigation in which Plaintiffs did not participate, and (2) not produced to Plaintiffs during

the MDL discovery period.  The Court will address the admissibility of such testimony in the context

of the specific evidence offered at trial, applying the analysis as instructed by the Sixth Circuit in

*Dykes v. Raymark Indus., Inc.*, 801 F.2d 810, 816 (6th Cir. 1986).[55]  In other words, as the party

seeking to exclude prior testimonial evidence of unavailable witnesses, Plaintiffs must explain "as

clearly as possible to the [Court] precisely why the motive and opportunity of the [plaintiff] in the

first case was not adequate to develop the cross-examination which the instant [Plaintiffs] would

have presented to the witness."  *Dykes*, 801 F.2d at 816.  Prior to offering the testimony of an

unavailable witness, the proponent must seek an admissibility ruling from the Court outside the

---

[54]    *See In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 12747961, at *14 (N.D. Ohio Mar. 6, 2015) (deposition testimony in companion case was not admissible where plaintiffs showed they had no opportunity to examine the witnesses and the parties who deposed them had different motives and interests); *Guthrie v. Ball*, No. 1:11-cv-333-SKL, 2014 WL 11581410, at *16 (E.D. Tenn. Oct. 10, 2014) (excluding deposition testimony taken in unrelated cases where defendant was not a party, except for impeachment purposes if the deponent testified at trial).

[55]    In *Dykes*, the Sixth Circuit explained that, under "the preferred approach" for determining the admissibility of former testimony, attorneys must present the circumstances under which the original deposition was taken "so that a full understanding of the motives in the first case can be obtained."  *Id.*  The Sixth Circuit noted that, in light of the potential prejudice that can accrue to a party against whom a deposition is introduced, where that party never had an opportunity to adequately respond, it is incumbent upon counsel – when objecting to the admissibility of such proof – "to explain as clearly as possible" precisely why the motive and opportunity of the party in the first case was not adequate to develop the examination which the instant party would have presented to the witness.  *Id.* at 817.  This includes informing the Court of "precisely what lines of questioning [the instant party] would have pursued."  *Id.*

jury's presence to avoid potential prejudice.  *See id.* at 817 (stressing the importance of analyzing potential prejudice where the party seeking exclusion lacked an opportunity to refute the proffered testimony).

> Lay Testimony Regarding the Gateway Theory.

- Defendants MIL No. 4[56] (seeking to exclude lay testimony that prescription opioids create a "Gateway" to illicit opioid use) – DENIED as to factual testimony; GRANTED as to "expert" opinion.

Defendants seek to preclude testimony by Dr. Thomas Gilson, Medical Examiner for Cuyahoga County, about the "Gateway theory," *i.e.* that people who suffer prescription opioid addiction tend to evolve toward illicit opioid (heroin) addiction.[57]  The crux of this motion depends on whether Gilson's testimony is *factual*, as opposed to *expert* opinion.  A witness who happens to be an expert but is presenting non-opinion testimony not need to be disclosed as an expert.  *See Jones v. Pramstaller*, No. 1:09-CV-392, 2013 WL 12249827, at *1 (W.D. Mich. Jan. 14, 2013) (if a witness presents only eyewitness testimony, it is not necessary to disclose him as an expert). However, if the witness also intends to express opinions regarding "scientific, technical, or other specialized knowledge," he must be disclosed as an expert witness under Rule 26(a)(2).  *See id.*

Here, it appears that much of Gilson's testimony is *factually based*, including his investigation of data as County Medical Examiner that revealed a link between prescription opioid use and deaths caused by heroin/fetanyl.  To the extent Gilson's testimony is factually based – that

---

[56]     Defs. Mtn. at 11-13 (Doc. #: 2661); Pls. Opp. at 17-21 (Doc. #: 2727); Defs. Reply at 9-12 (Doc. #: 2800).

[57]     The Court previously overruled Defendants' motion to exclude Gateway testimony by Plaintiffs' experts.  *See Daubert* Order re: Keyes, Lembke, and Gruber (Doc. #: 2518).

is, what his investigation revealed – it is admissible.  However, because Plaintiffs did not identify

Gilson as an expert under Rule 26(a)(2), he may not offer *opinions* about what his investigation

showed based on "scientific, technical, or other specialized knowledge."  Fed. R. Civ. P. 26(a)(2);

*see also, e.g., Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 872 (6th Cir. 2007) (when a treating

physician testifies to issues beyond those covered in ordinary medical training, he is behaving in a

manner more similar to a retained expert).  Thus, the Court denies this motion as to factual testimony

and grants the motion as to "expert" opinion.[58]


        <u>Personal Feelings or Opinions About the Opioid Crisis.</u>

•       Defendants MIL No. 12[59] (seeking to preclude counsel from questioning witnesses
about their feelings of personal responsibility or guilt relating to the opioid epidemic)
– DENIED WITHOUT PREJUDICE.

Defendants seek to preclude counsel from questioning witnesses regarding their personal

feelings of responsibility or guilt regarding the opioid epidemic, and their beliefs on whether they

or their employers violated legal requirements. The Court is inclined to agree that individual

witnesses should not be allowed to testify regarding their personal feelings about the opioid crisis

or who is responsible for it, unless it qualifies as an admission by an executive.  In the absence of

specifically-identified testimony, however, the Court cannot properly assess the admissibility of this

---

[58]     Defendants also ask the Court to exclude Gateway testimony by other lay witnesses, citing Jerry Craig and Keith Martin as examples. *See* Defs. Mtn. at 12 (Doc. #: 2661).  Plaintiffs state they do not intend to call Craig or Martin to testify at trial. Pls. Opp. at 17 n.16 (Doc. #: 2727). To the extent Plaintiffs may seek to introduce additional lay testimony on the Gateway theory, the same analysis would apply, *i.e.* Plaintiffs must show the proposed testimony is "factual" and otherwise admissible, *i.e.* it has foundation, is relevant, and is not inadmissible hearsay.

[59]     Defs. Mtn. at 34-35 (Doc. #: 2661); Pls. Opp. at 48-51 (Doc. #: 2727); Defs. Reply at 25-26 (Doc. #: 2800).

evidence in the abstract.  Accordingly, the Court declines to make a blanket ruling and instead will address the issue when it arises in the context of trial.

### Testimony by Dr. Russell Portenoy.

- Teva MIL No. 7[60] (seeking to exclude testimony by Dr. Russell Portenoy regarding any improper conduct by Teva) – DENIED.

Teva seeks to exclude any testimony by Dr. Russell Portenoy regarding alleged improper conduct by Teva, arguing such testimony would be inconsistent with Portenoy's previous statements that he has no evidence of any wrongdoing by Teva.  Plaintiffs originally named Portenoy as a "Key Opinion Leader" Defendant, but later dismissed those claims after Portenoy agreed to consult with Plaintiffs.  Portenoy was then deposed in the Oklahoma case where, according to Teva, he conceded that none of his statements would apply to Teva.  Subsequently, Special Master David R. Cohen ruled that, in the Oklahoma case, the scope of deposition questioning was incomplete and, therefore, all parties in this MDL would be permitted to question Portenoy further.  Teva, however, chose not to depose Portenoy.  Teva's arguments go to the weight of Portenoy's testimony, not its admissibility.  If Portenoy is called to testify at trial, Teva will have an opportunity to cross-examine him regarding any alleged inconsistencies in his testimony.  The Court denies Teva's motion to exclude this evidence.

---

[60]     Teva Mem. at 13-14 (Doc. #: 2668-1); Pls. Opp. at 112-114 (Doc. #: 2727); Teva Reply at 9-11 (Doc. #: 2808).

- **Rule 30(b)(6) Witnesses.**

The motions discussed below involve the testimony of Rule 30(b)(6) corporate representatives.[61] The Court's rulings vary based on the specific matters addressed in each motion.

Matters Outside the Personal Knowledge of Non-Party Rule 30(b)(6) Witnesses.

• Distributors MIL No. 2[62] (seeking to preclude testimony by non-party corporate representatives regarding matters outside their personal knowledge) – DENIED WITHOUT PREJUDICE.

The Distributors seek to preclude any testimony by *non-party* Rule 30(b)(6) representatives regarding matters outside their personal knowledge, including: (i) hearsay conversations with other employees, and (ii) documents and other sources the witnesses reviewed to prepare to testify. As an example, the Distributors point to the deposition testimony of Thomas Prevoznik, a DEA employee, who testified regarding matters about which he had no *personal* knowledge, including events and documents that pre-dated his employment at the DEA. The Distributors assert that, under Rule 602, a lay witness's testimony at trial is limited to matters within his personal knowledge, and

---

[61]     Rule 30(b)(6) states:
*Notice or Subpoena Directed to an Organization*. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

[62]     Distrs. Mem. at 7-8 (Doc. #: 2666); Pls. Opp. at 59-62 (Doc. #: 2727); Distrs. Reply at 5-7 (Doc. #: 2804).

this rule does not change for a *non-party* Rule 30(b)(6) witness.[63] The Distributors contend that, although Rule 30(b)(6) grants broad latitude for a representative to speak about corporate knowledge, that right is significantly narrowed by the hearsay rule at trial.

The Court declines to make a blanket ruling on this issue and instead will address matters at trial in context, as they arise. In this regard, the Court notes that a Rule 30(b)(6) witness generally may testify at trial regarding the corporation's knowledge, but cannot offer information that constitutes hearsay and does not fall within one of the authorized exceptions to the hearsay rule.[64]

---

[63] The Distributors distinguish between the deposition testimony of a *party* Rule 30(b)(6) representative, which could be admissible as a party admission, and that of a *non-party* Rule 30(b)(6) representative, which could not. *See* Distrs. Mem. at 7 n.5 (Doc. #: 2666); *see also* Fed. R. Civ. P. 32(a)(3) (an adverse party may use a *party's* Rule 30(b)(6) deposition for any purpose).

[64] In other words, the normal hearsay rules apply to a corporate representative's testimony at trial, *i.e.* unless the information falls within one of the authorized exceptions to the hearsay rule, a Rule 30(b)(6) witness may not testify to matters outside his or her personal knowledge. *See Cooley v. Lincoln Elec. Co.*, 693 F. Supp.2d 767, 791-92 (N.D. Ohio 2010) (a Rule 30(b)(6) witness may testify at trial regarding a corporation's knowledge and its subjective beliefs, but the witness cannot offer information that is hearsay and does not fall within one of the authorized hearsay exceptions); *Stryker Corp. v. Ridgeway*, No. 1:13-CV-1066, 2016 WL 6585007, at *2-3 (W.D. Mich. Feb. 1, 2016) (to the extent a Rule 30(b)(6) witness's testimony is not based on personal knowledge but is, instead, hearsay that does not fall within one of the authorized hearsay exceptions, the testimony will be inadmissible at trial); *see also Union Pump Co. v. Centrifugal Tech. Inc.*, 404 Fed. Appx. 899, 907-08 (5th Cir. 2010) (same); *Brooks v. Caterpillar Global Mining Am., LLC*, 2017 WL 3426043, at *5 (W.D. Ky. Aug. 8, 2017) (Rule 30(b)(6) does not eliminate Rule 602's personal-knowledge requirement; at trial, a 30(b)(6) witness may testify as to information based on his personal knowledge, or matters that fall under an exception to the hearsay rule).

<u>Testimony by McKesson's Rule 30(b)(6) Witness, Nathan Hartle.</u>

- McKesson MIL No. 5[65] (seeking to exclude testimony by McKesson's Rule 30(b)(6) witness, Nathan Hartle, because of counsel's badgering and abusive conduct) – DENIED.

McKesson asks the Court to exclude the deposition testimony of its Rule 30(b)(6) witness, Nathan Hartle, on the grounds that Plaintiffs' counsel exceeded the scope of the 30(b)(6) designation and badgered Hartle about inappropriate topics, like whether he believes McKesson is responsible for the opioid epidemic. McKesson cites no legal basis or authority to support a wholesale exclusion of Hartle's testimony. Accordingly, the motion is denied, subject to more particularized rulings based on objections to deposition designations or testimony at trial.[66]

- **Expert Witness Testimony.**

The motions listed below raise various issues relating to the admission of expert testimony. As set forth below, the Court's rulings vary based on the specific evidence sought to be excluded under each motion.

---

[65] McKesson Mem. at 6-7 (Doc. #: 2663-1); Pls. Opp. at 98-102 (Doc. #: 2727); McKesson Reply at 4-5 (Doc. #: 2802).

[66] An issue to be resolved at trial will be whether the deposition questioning went so far beyond the scope of the 30(b)(6) notice such that Hartle's testimony was in his individual capacity and not on behalf of the corporation. *See, e.g., Green v. Wing Enter., Inc.*, No. 1:14-cv-01913-RDB, 2015 WL 506194, at *8 (D. Md. Feb. 5, 2015) ("the scope of the questioning at a Rule 30(b)(6) deposition is governed by relevancy under Rule 26(b)(1) and not limited to the notice; but, to the extent the questioning is beyond the scope of the notice, the testimony will constitute that of the deponent in an individual capacity and not on behalf of his organization").

34

<u>Alleged Malpractice by Expert Witnesses.</u>

•   Plaintiffs MIL No. 7[67] (seeking to preclude references to any alleged malpractice claims involving the parties' experts) – DENIED WITHOUT PREJUDICE.

Plaintiffs seek to exclude references to any alleged malpractice claims involving the parties' experts, asserting this evidence would be irrelevant, unduly prejudicial, or exceed the scope of permissible cross-examination under Rule 611(b).  Neither Plaintiffs nor Defendants point to a specific expert or malpractice claim.  The Court cannot determine the relevance of unidentified malpractice claims in the abstract.  Thus, the Court declines to make a blanket ruling and instead will address the relevance of any such malpractice claims if and when they arise in the context of trial.  That said, a *claim* of malpractice alone is probably not relevant or fails the Rule 403 balancing test, as opposed to a *finding* of malpractice, which, depending on the circumstances, may be admissible.  Additionally, it appears that any findings of malpractice against an expert who is not testifying would be irrelevant.


<u>De-Designated Expert Witnesses.</u>

•   Plaintiffs MIL No. 8[68] (seeking to preclude references to experts who are not testifying in this litigation, experts who were retained in other cases, experts who were de-designated in this case, or any scientific or other discipline(s) for which no expert has been designated by the opposing party) – GRANTED IN PART.

Plaintiffs seek to preclude Defendants from referring to experts retained in other Opioid cases, or experts whom Plaintiffs previously designated in this case but then de-designated.

---

[67]   Pls. Mtn. at 5 (Doc. #: 2652); Dfs. Opp. at 6-7 (Doc. #: 2725); Pls. Reply at 6 (Doc. #: 2805).

[68]   Pls. Mtn. at 6 (Doc. #: 2652); Dfs. Opp. at 7-9 (Doc. #: 2725); Pls. Reply at 6-7 (Doc. #: 2805).

Additionally, Plaintiffs seek to preclude use of the "empty-expert-chair" tactic, where Defendants point out that Plaintiffs could have hired or called a certain expert (or type of expert), but didn't. The Court agrees the parties should be precluded from referring to experts: (1) that were retained in other Opioid cases, or (2) whom Plaintiffs possibly could have hired.  Either this type of information is not relevant to matters for the jury to decide, or any slight relevance is substantially outweighed by a risk of unfair prejudice or confusion.

However, a different analysis applies to experts whom Plaintiffs previously designated but then de-designated, or decide not to call.  Once an expert has been designated under Rule 26, his or her testimony is fair game for all parties.[69]  Accordingly, the Court denies Plaintiffs' motion to exclude references to de-designated experts.

Testimony or Data by Plaintiffs' Expert, Craig McCann.

Plaintiffs' data expert, Craig McCann, applied five methods identified by another expert, former DEA agent James Rafalski, to identify suspicious transactions that Defendants could have flagged.[70] Based on Rafalski's determination that Defendants performed little to no due diligence,

---

[69]    *See SEC v. Koenig*, 557 F.3d 736, 744 (7th Cir. 2009) (either side may call a witness identified as a testimonial expert); *Kerns v. Pro-Foam of S. Ala., Inc.*, 572 F. Supp.2d 1303, 1311 (S.D. Ala. 2007) ("courts have repeatedly observed that once a party has given testimony through deposition or expert reports, those opinions do not 'belong' to one party or another, but rather are available for all parties to use at trial"); *but see Sanchez v. Dupnik*, 362 Fed. Appx. 679, 681 (9th Cir. 2010) (the district court did not abuse its discretion in denying a request to call an opponent's expert).

[70]    The Court has denied Defendants' *Daubert* motions to exclude the testimony of McCann and Rafalski.  *See* Order (Doc. #: 2494).

McCann assumed the Distributor did not adequately investigate the first flagged order and, therefore, all subsequent orders relating to the same drug code were also suspicious.

In the motions listed below, the moving party asserts that certain portions of McCann's testimony and data are misleading, confusing, or irrelevant.  For the reasons set forth, the Court denies these motions.

- Cardinal MIL No. 3[71] (seeking to exclude McCann's testimony regarding the data produced by Cardinal for the years 1996 to 2005) – DENIED.

Cardinal asserts that, because it was the only Distributor that produced shipment data for the years 1996 to 2005, McCann flagged more suspicious orders for Cardinal than he did for the other Distributors, who produced data going back only to 2006.  Cardinal asserts that, if McCann is allowed to express opinions based on Cardinal's data from before 2006, it will confuse and mislead the jury.  The Court declines to exclude this evidence, but cautions the parties to ensure they do not ask the jury to make an "apples-to-oranges" comparison and draw impermissible conclusions therefrom.  In other words, if Plaintiffs have 20 years of data from one Distributor, they cannot say it leads to the same inference created by 10 years of data from another Distributor, or that the numbers are equivalent. *See* Transcript at 15:12-17 (Doc. #: 2828).  On cross-examination, Cardinal can address its concerns about how differences in the data set may affect the calculations.  With regard to Cardinal's request for a limiting instruction, the Court declines to make a ruling before trial.  In the context of when this evidence is presented at trial, Cardinal may renew its request and propose a properly worded limiting instruction at that time.

---

[71]     Cardinal Mem. at 4-7 (Doc. #: 2653-1); Pls. Opp. at 91-92 (Doc. #: 2727); Cardinal Reply at 4 (Doc. #: 2803).

37

- Defendants MIL No. 9[72] (seeking to preclude McCann from using certain data charts) – DENIED.

Defendants assert certain charts contained in Appendices 9 and 10 to McCann's Report are confusing, misleading, and irrelevant. In particular, Defendants argue these charts present only aggregate data, including data from non-defendants, and thus create the false impressions that (i) each Distributor Defendant's volume of opioid shipments was greater than it actually was, and (ii) the volume of shipments to each customer over time increased more dramatically than it actually did. Plaintiffs, on the other hand, assert the charts provide valuable background information in support of McCann's opinions. Defendants' arguments go to the weight of this evidence, not its admissibility. On cross-examination, Defendants can address their concerns about the sources of the data. The Court denies this motion.

Foundation for Expert Testimony.

- Defendants MIL No. 8[73] (seeking to require Plaintiffs to establish the necessary foundation for expert testimony) – DENIED.

Defendants urge the Court to "implement procedures" to ensure that any assumptions made by Plaintiffs' experts are supported by the record. Specifically, Defendants assert: "Given the complexity of this trial, and the legitimate concerns that many of plaintiffs' experts' opinions are based on assumptions entirely unsupported by any evidence, an orderly process is needed to ensure that plaintiffs have proven the assumptions their experts rely upon before these experts are allowed

---

[72] Defs. Mtn. at 25-27 (Doc. #: 2661); Pls. Opp. at 43-44 (Doc. #: 2727); Defs. Reply at 23-24 (Doc. #: 2800).

[73] Defs. Mtn. at 22-25 (Doc. #: 2661); Pls. Opp. at 41-43 (Doc. #: 2727); Defs. Reply at 21-23 (Doc. #: 2800).

38

to take the stand."[74]  As examples, Defendants point to three of Plaintiffs' experts (Lacey Keller, Matthew Perri, and David Kessler) and ask the Court to require Plaintiffs to "prove up the assumptions" of these experts and all of their expert witnesses.[75]  The Court has addressed these matters in several of its *Daubert* rulings and declines to do so again.[76]  Defendants have several avenues available to address the alleged infirmities in the experts' assumptions, including cross-examination and a Rule 50 motion.  This motion is denied.

- **Individualized Evidence.**

The parties have a long history of dispute, during discovery, concerning Plaintiffs' willingness and duty to respond to discovery requests for information regarding specific prescriptions, shipments, patients, pharmacies, and so on.[77]  Ultimately, the Court ordered Plaintiffs to either produce certain individualized information or instead forswear relying on individualized proof at trial.[78]  Faced with this option, Plaintiffs agreed to provide individualized information

---

[74]     Defs. Mtn. at 25 (Doc. #: 2661).

[75]     *Id.*

[76]     *See, e.g. Daubert* Order re: Keller at 18 (Doc. #: 2492) ("at trial, prior to the introduction of Keller's testimony on [the impact Manufacturers with small market shares could have had on the number of opioids in the bellwether Plaintiff counties], the Court will require Plaintiffs to clearly articulate the assumptions underlying their hypothetical(s) and establish that their hypothetical(s) present an accurate summation of the evidence present in the record"); *Daubert* Order re: Perri and Kessler at 14 (Doc. #: 2558) (rejecting Defendants' argument that Perri's reliance on the assumption that *all* of Defendants' marketing was false and misleading renders all of his opinions unreliable; if this is a faulty assumption, Defendants will have the opportunity for vigorous cross-examination and the presentation of contrary evidence).

[77]     *See, e.g.*, Discovery Ruling No. 5 (Doc. #: 1027); Order Amending Discovery Ruling No. 5 (Doc. #: 1047).

[78]     *See* Order Amending Discovery Ruling No. 5 at 1-2 (Doc. #: 1047).

regarding, *inter alia*: (a) 300 persons who became addicted to or were harmed as a result of any opioid prescription; (b) 500 prescriptions that were unauthorized, medically unnecessary, ineffective, or harmful; and (c) 500 prescriptions that caused or led to Plaintiffs' alleged harm.[79] Defendants raised various objections over the adequacy of Plaintiffs' responses, and Special Master David R. Cohen ultimately ruled that Plaintiffs had satisfied their burden to respond with sufficient examples of individualized evidence.[80]

In each of the motions discussed below, the movant seeks to preclude various types of individualized evidence.  On balance, the Court finds this information would be helpful to the jury's understanding of the evidence at trial.  However, Plaintiffs may only introduce evidence that they produced in discovery.  Accordingly, Plaintiffs may present individualized evidence to the extent they produced the information in discovery and it is otherwise admissible.

---

[79] *See* Pls. Resp. to Manuf. Interrog. Nos. 7 and 10 and Pharm. Interrog. No. 3 (Doc. #: 1058 at 3-6).  In providing this information, Plaintiffs stated they did not intend to assert, either in expert opinions or factual presentations at trial, that: (1) any specific prescription was unauthorized, medically unnecessary, ineffective, or harmful; or (2) the filling of any specific prescription caused or led to harm for which Plaintiffs seek to recover.  *Id.* Plaintiffs further stated:

> Plaintiffs intend to rely, at trial and in expert opinions, on a theory of aggregate proof in asserting that Defendants' conduct violated the law and caused their damages and/or created a public nuisance, as alleged more fully in their Complaints and proved at trial.  Notwithstanding this response, and solely for the purpose of preserving Plaintiffs' right to present additional evidence in expert opinions and at trial to address the harm alleged to Plaintiffs, as opposed to individuals, and to address any contingencies that come to light during discovery, Plaintiffs will identify individuals sufficient to respond [to the interrogatories, as modified by Discovery Ruling No. 5].

*Id.* at 3-4.

[80] *See, e.g.*, Discovery Ruling No. 13 at 4-8 (Doc. #: 1215); Order Overruling Objections to Discovery Ruling No. 13 (Doc. #: 1215); Discovery Ruling No. 18 at 1-4 (Doc. #: 1476); Order Affirming Discovery Ruling No. 13 (Doc. #: 1541).

Individual Prescriptions, Shipments, Etc.

- Defendants MIL No. 2[81] (seeking to exclude individualized evidence of prescriptions, shipments, and other matters) – DENIED WITHOUT PREJUDICE.

Defendants seek to exclude evidence of individual prescriptions and shipments on the ground that Plaintiffs elected to proceed on a theory of aggregate proof. Defendants assert that, although Plaintiffs produced in discovery "cherry-picked" examples of individual transactions, Defendants were not allowed to obtain broader discovery that would have uncovered counter-examples – that is, examples that would show "that allegedly 'suspicious' orders went to fill legitimate prescriptions and were not diverted, or that allegedly improper prescriptions went to alleviate genuine suffering without negative long-term effects on the patients who received them."[82] Defendants assert the Court directed Plaintiffs to produce in discovery examples of individual prescriptions and shipments only to help Defendants *understand* the aggregate proof, and not as a permissible way to *bolster* the aggregate proof. But the Court ruled on this issue at the time of discovery. The Court stated it would allow at trial evidence of individual shipments and prescriptions to the extent the parties produced it in discovery and it is otherwise admissible. Thus, this motion is denied.

Anecdotal Personal Stories.

- Defendants MIL No. 3[83] (seeking to preclude witness testimony about personal stories regarding opioid abuse or related harms) – DENIED WITHOUT PREJUDICE.

---

[81] Defs. Mtn. at 5-9 (Doc. #: 2661); Pls. Opp. at 12-15 (Doc. #: 2727); Defs. Reply at 5-7 (Doc. #: 2800).

[82] Defs. Mtn. at 6 (Doc. #: 2661).

[83] Defs. Mtn. at 9-11 (Doc. #: 2661); Pls. Opp. at 15-17 (Doc. #: 2727); Defs. Reply at 7-9 (Doc. #: 2800).

41

Defendants seek to preclude witnesses from testifying about anecdotal personal stories relating to opioid use and related harms to themselves and others.  Whether this evidence is admissible depends on the individual circumstances surrounding each witness's testimony, including whether Plaintiffs produced the evidence in discovery and whether Plaintiffs can establish a foundation for the testimony and show it is relevant and not otherwise inadmissible.  Accordingly, the Court declines to make a blanket ruling and instead will address Defendants' objections when a party seeks to introduce specific testimony at trial.[84]  As to the issue of relevance, the Court notes that anecdotal stories may be relevant to supplement expert testimony or statistical evidence.  *See, e.g., Middleton v. City of Flint, Mich.*, 92 F.3d 396, 405 (6th Cir. 1996) ("Anecdotal evidence is most useful as a supplement to strong statistical evidence.") (citation omitted).  That said, the Court

---

[84]      Defendants also raise estoppel-type arguments, *e.g.* that Plaintiffs routinely instructed witnesses not to answer questions about their personal experiences with opioids, and Plaintiffs waited until after the end of discovery to provide "supplemental" interrogatory responses regarding witnesses who apparently intend to testify about their personal experiences with opioids.  The Court cannot rule on these arguments in the abstract.  At trial, the test for each witness's testimony will include whether Plaintiffs produced the information in discovery.

will not allow any party to make improper appeals to a fact-finder's passions and emotions, and will

also hold Plaintiffs to the promises made in the "Singer memo."[85]

---

[85]  During discovery, when the parties were in dispute over the extent to which they would identify individualized evidence, such as specific prescriptions and specific addicted persons, Plaintiffs' counsel, Linda Singer, provided a memorandum to Special Master Cohen stating as follows:

Except for rebuttal purposes, Plaintiffs will NOT through fact or expert witnesses:

1.  Introduce evidence that a <u>specific</u> prescription was unnecessary or inappropriate, resulted from unlawful marketing, was improperly dispensed, or caused harm. Similarly, no witness will testify that he/she analyzed a series/sample of individual prescriptions and that a certain percentage were improper, harmful, linked to marketing, unlawfully distributed, etc.

BUT we will:

    a.    introduce evidence that certain <u>types</u> of prescriptions were unnecessary, inappropriate, harmful, or impacted by unlawful marketing, e.g., doses over 150 MGs, scripts for headaches, etc.), and that those types of prescriptions represent a certain percentage of overall volume.

    b.    present expert reports that rely on analysis of claims, sales, prescribing, distribution, or epidmiological data to analyze the volume, types, and impacts of opioids and to demonstrate link between marketing and distribution and harm.

2.  Present individual patient/victim stories, e.g., testimony from family whose daughter became addicted/overdosed after prescribed Oxy for wisdom teeth removal. Likewise, we would not seek to introduce intake forms for patients treated for addiction or death certificates or medical records for individuals who overdosed.

BUT we will introduce evidence from city/county employees who treated addiction or overdoses, made arrests, placed foster kids, etc. about numbers, circumstances, and results they see, e.g.,:

    a.    Paramedic: responds to 40 overdose calls a week, 12 of which are fatal and 15 of which involve patients previously revived, often find pills at the scene.

    b.    Prosecutor/police: extent/prosecution of pill mills, prosecution of doctor who was prosecuted for prescribing thousands of high dose opioids and being linked to 30 deaths.

    c.    Coroner: number of opioid fatalities and number where prescription opioids implicated.

3.  Assert that any specific prescription was improperly dispensed or distributed, BUT we will assert that specific orders of opioids were suspicious and should have been reported or not shipped.

● **Evidence Relating to Specific Claims, Defenses, or Theories of the Case.**

In these motions, the movants seek to exclude evidence relating to specific claims, defenses, or theories of the case.  With respect to each motion, the Court sets forth its rulings below.

Statute of Limitations: Conduct Before May 18, 2014.

•   Schein MIL No. 11[86] (seeking to preclude references to alleged conduct that occurred prior to May 18, 2014, with respect to Plaintiffs' conspiracy claim) – DENIED.

Schein seeks to exclude evidence of conduct that occurred before May 18, 2014, on the ground that a four-year statute of limitations applies to Plaintiffs' conspiracy claims based on a public nuisance.  But Schein's premise is incorrect.  The Court has ruled that, under Ohio law, no statute of limitations applies to this claim.[87]  Additionally, the Court found material fact questions regarding when the claims accrued and whether equitable tolling applies.  In light of these rulings, the Court denies Schein's motion.

Learned Intermediary Doctrine.

•   Plaintiffs MIL No. 23[88] (seeking to preclude arguments that the Learned Intermediary Doctrine absolves Defendants from liability) – GRANTED IN PART.

Plaintiffs seek to preclude Defendants from asserting that the "Learned Intermediary Doctrine" absolves Defendants from liability.  Under this doctrine, so long as a Manufacturer of a prescription drug has properly warned and instructed the physician, *i.e.* a Learned Intermediary, the

---

[86]    Schein Mtn. at 7 (Doc. #: 2645); Pls. Opp. at 80-81 (Doc. #: 2727).

[87]    *See* SJ Opinion on SOL at 3-6, 12 (Doc. #: 2568).

[88]    Pls. Mtn. at 27-28 (Doc. #: 2652); Dfs. Opp. at 31-33 (Doc. #: 2725); Pls. Reply at 29-30 (Doc. #: 2805).

Manufacturer "may reasonably assume that the physician will exercise his informed judgment in the patient's best interests." *Tracy v. Merrell Dow Pharm., Inc.*, 58 Ohio St. 147, 149, 569 N.E.2d 875, 878 (Ohio 1991).[89]

Here, whether Defendants provided doctors with false and misleading information is a central issue for the jury to decide; thus evidence of Defendants' warnings to doctors is clearly relevant.  Similarly, whether the advice of doctors breaks the causal chain is a question for the jury.  Thus, Defendants may argue their warnings to doctors were accurate and whatever happened after that is the doctor's responsibility.  However, Defendants may not assert the mere existence of the Learned Intermediary Doctrine works to insulate them from liability on Plaintiffs' claims.  The overriding question is whether the Defendants' warnings were adequate.

<u>Mitigation of Damages.</u>

- Plaintiffs MIL No. 24[90] (seeking to exclude evidence or argument that Plaintiffs failed to mitigate damages) – DENIED.

Plaintiffs seek to exclude any evidence or argument that they failed to mitigate damages. Ohio law generally precludes an injured party from "recover[ing] damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort." *BP Exploration & Oil Co. v. Maint. Servs., Inc.*, 313 F.3d 936, 943-44 (6th Cir. 2002) (citing *Johnson v. Univ. Hosp. of Cleveland*, 540 N.E.2d 1370, 1377 (Ohio 1989)).  The Court rejects

---

[89]  *Tracy* instructs the Learned Intermediary Doctrine applies in strict liability cases "if the warning is adequate." *Id.* at 878.

[90]  Pls. Mtn. at 29-31 (Doc. #: 2652); Dfs. Opp. at 33-35 (Doc. #: 2725); Pls. Reply at 30-33 (Doc. #: 2805).

Plaintiffs' assertions that this general rule does not apply to their claims in this case.[91]  Moreover, Plaintiffs' arguments that the obligation to mitigate does not apply because Plaintiffs incurred extraordinary expense and risk, or because Defendants had the same opportunity to reduce damages, involve factual issues.  At bottom, whether Plaintiffs failed to mitigate damages is a factual determination for the jury.  The Court therefore overrules Plaintiffs' motion.  Defendants remain free to argue and present evidence on the mitigation of damages.

### Future Damages.

• Defendants MIL No. 1[92] (seeking to preclude evidence or argument regarding "future damages") – GRANTED.

Defendants seek to preclude Plaintiffs from introducing evidence of "future damages" (separate and apart from Plaintiffs' proposed "abatement" remedy) on the RICO, OCPA, and civil conspiracy claims.  Defendants' motion is well-taken.  Plaintiffs did not designate expert witnesses on the issue of future damages and instead supplied a very late "errata" to their expert reports that

---

[91] Although no Ohio court has done so, Plaintiffs ask the Court to apply Section 918 of the Restatement (Second) of Torts to this case.  Section 918 provides that a defendant who acted intentionally or recklessly may not rely on a failure-to-mitigate defense unless the plaintiff knew of the danger and intentionally or heedlessly failed to protect its own interests.  *See* Restatement (Second) of Torts § 918.  Even if this provision applied, it would not provide a basis to exclude evidence of mitigation in this case; it would merely require additional evidence regarding whether Defendants acted intentionally or recklessly and whether Plaintiffs knew of the danger and failed to protect their own interests.

Plaintiffs also assert that, because the federal government has no duty to mitigate damages in fraud actions, the Court should not impose a duty to mitigate in this case.  Specifically, Plaintiffs assert: "Defendants should not be permitted to second guess or critique Plaintiffs' efforts to address a crisis caused by Defendants."  Pls. Mtn. at 31 (Doc. #: 2652).  The Court finds no basis to preclude Defendants from asserting a failure-to-mitigate defense in this case.

[92] Defs. Mtn. at 2-5 (Doc. #: 2661); Pls. Opp. at 4-12 (Doc. #: 2727); Defs. Reply at 1-5 (Doc. #: 2800).

46

purported to add a future damages analysis.  Special Master Cohen granted Defendants' motion to strike the errata, finding it was unfairly prejudicial because it came too close to trial and involved new calculations that would substantively change the nature of the trial.[93]  In light of this ruling, the Court sustains Defendants' motion to exclude evidence of future damages.

Fraud on the DEA.

- • Distributors MIL No. 5[94] (seeking to bar assertions that the Distributors committed a "fraud on the DEA") – GRANTED IN PART.

The Distributors seek to bar assertions that they engaged in a "fraud on the DEA."  The Court has held that Plaintiffs' claims are not predicated upon violations of the CSA, do not allege "fraud on the DEA," and are not preempted by federal law.[95]  Consequently, Plaintiffs cannot argue Defendants committed a "fraud on the DEA."  However, the Court disagrees with the Distributors' assertion that Plaintiffs' claims based on a failure to report suspicious orders "inherently assert a fraud on the DEA."[96]  Evidence of Defendants' due diligence and SOMS, including the failure to report suspicious orders, is relevant to the Distributors' knowledge of diversion, as well as their alleged violations of the CSA, misrepresentations to the public, and conspiracy-related conduct and objectives.  As previously stated, evidence as to what the DEA did or did not do – and what the parties produced or communicated to the DEA – is fair game for either side.

---

[93] *See* Ruling on Pls. Errata at 3-4 (Doc. #: 2799).

[94] Distrs. Mem. at 14-15 (Doc. #: 2666); Pls. Opp. at 65-67 (Doc. #: 2727); Distrs. Reply at 11-12 (Doc. #: 2804).

[95] *See, e.g.*, SJ Order on Preemption at 3-4, 9-10 (Doc. #: 2565).

[96] Distrs. Mem. at 14 (Doc. #: 2666).

47

RICO Predicate Acts.

- Distributors MIL No. 7[97] (seeking to preclude evidence or argument regarding predicate acts that Plaintiffs did not identify in their interrogatory responses) – DENIED.

The Distributors seek to exclude evidence or assertions that they committed RICO predicate acts that Plaintiffs did not identify in their interrogatory responses.  However, the Distributors do not identify any specific predicate acts of concern.  On this record, the Distributors have not provided sufficient grounds to exclude evidence of hypothetical "other" predicate acts.  Moreover, even if the Court found that "other" predicate acts could not form a basis for the RICO claims, such evidence may be relevant to other aspects of Plaintiffs' claims.[98]  Accordingly, the Court denies this motion.

Off-Label Promotion.

- Teva MIL No. 2[99] (seeking to preclude references to Teva's "off-label" promotion of opioids) – DENIED.

Teva seeks to preclude Plaintiffs from asserting that Teva or Cephalon engaged in the "off-label" promotion of opioids – that is, promotion of opioids for uses beyond those approved by the FDA.  Specifically, Teva asserts that, because off-label promotion is not inherently fraudulent, any evidence regarding off-label promotion should be excluded as irrelevant or unduly prejudicial.  Evidence regarding off-label promotion is highly relevant to Plaintiffs' claims that Defendants

---

[97]    Distrs. Mem. at 18 (Doc. #: 2666); Pls. Opp. at 68-70 (Doc. #: 2727); Distrs. Reply at 14-15 (Doc. #: 2804).

[98]    The Court notes it may later have to instruct the jury regarding which specific predicate acts can be used to support a RICO verdict.

[99]    Teva Mem. at 4-6 (Doc. #: 2668-1); Pls. Opp. at 105-106 (Doc. #: 2727); Teva Reply at 3-4 (Doc. #: 2808).

intentionally over-promoted the use of opioids, which in turn was a substantial factor in producing the opioid crisis and alleged harm. Accordingly, the Court denies Teva's motion to exclude this evidence.

### Preemption.

- Teva MIL No. 8[100] (seeking to preclude arguments that the Actavis Generic Defendants should have given additional warnings or stopped selling generic opioid medications) – GRANTED IN PART.

Citing the Court's previous rulings on preemption, Teva seeks to preclude arguments that, with respect to the sale of generic medicines, the Actavis Generic Defendants should have given additional warnings or communications, or should have stopped selling generic opioids. The Court agrees that preemption applies to any claims that generic manufacturers should have stopped selling opioids or given additional warnings. *See Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 488 (2013) (any state requirement that a manufacturer stop selling a generic drug is preempted); R&R on Muscogee MTD at 42 (Doc. #: 1499) (holding Plaintiffs' claims based on the generic manufacturers' failure to send "Dear Doctor" letters, or other warning-type communications that surpassed the transmission of information communicated by the brand-name manufacturers, were preempted). Thus, the Court will exclude any evidence or argument that Defendants should have given additional warnings or stopped selling generic opioids.

As to evidence or arguments regarding Plaintiffs' claims that the Actavis Generic Defendants engaged in false marketing, however, including claims involving unbranded marketing and

---

[100] Teva Mem. at 15-16 (Doc. #: 2668-1); Pls. Opp. at 114-115 (Doc. #: 2727); Teva Reply at 11-12 (Doc. #: 2808).

promotion, the Court denies the motion. *See* R&R on Muscogee MTD at 42 (Doc. #: 1499) ("preemption does not bar any of Plaintiff's state law claims to the extent that they are founded upon allegations that the Generic Manufacturers engaged in aggressive and misleading marketing").

- **First Amendment Issues.**

In the two motions discussed below, the movants seek to exclude evidence based on their First Amendment rights to petition the government and freely associate. For the reasons stated, the Court denies both motions without prejudice.

Lobbying and Petitioning Activity.

- Defendants MIL No. 5[101] (Doc. #: 2661) (seeking to exclude evidence about lobbying and other petitioning activities) – DENIED WITHOUT PREJUDICE.

Defendants seek to exclude evidence of their efforts to procure favorable governmental action through lobbying or other petitioning activities. Specifically, Defendants assert that, under the *Noerr-Pennington* doctrine,[102] they are immune from liability based on conduct aimed to influence decision-making by the government.[103] Plaintiffs respond they are not seeking to impose liability for lobbying or petitioning activity, and instead seek to introduce this evidence to show

---

[101]     Defs. Mtn. at 13-16 (Doc. #: 2661); Pls. Opp. at 21-31 (Doc. #: 2727); Defs. Reply at 12-16 (Doc. #: 2800).

[102]     *See Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

[103]     *See, e.g., Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555-56 (2014) (under the *Noerr-Pennington* doctrine, Defendants are immune from antitrust liability for engaging in conduct aimed at influencing government decision-making); *see also Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, at 790 (6th Cir. 2007) (by analogy, federal courts have applied the *Noerr-Pennington* doctrine to other claims brought under state and federal laws).

purpose, character, motive, or intent.  The Court agrees with Plaintiffs that this evidence is

admissible for other purposes.  In the context of trial, Defendants may argue that the probative value

of any particular evidence on this matter is outweighed by a danger of undue prejudice.[104]

Accordingly, the Court denies Defendants' motion without prejudice.


> ### Financial Support of Third-Party Trade and Advocacy Groups.

- Teva MIL No. 6[105] (seeking to exclude evidence of Teva's financial support of third-party groups) – DENIED.

Citing the First Amendment's right to freely associate, Teva seeks to preclude evidence of

its participation in, and funding of, trade and advocacy groups (*e.g.*, the American Pain Foundation).

Teva also seeks to exclude arguments that it is responsible for statements made by these groups,

unless Plaintiffs present evidence showing the group was acting as its agent or as part of a

conspiracy or RICO enterprise.  Evidence of concerted action in the form of trade group activity can

be relevant to determine the existence or non-existence of a conspiracy.[106]  Moreover, Plaintiffs

contend these trade organizations were "front" groups for Defendants' improper activity, and that

specific acts related to or involving these groups were used to perpetrate fraud.  These are issues for

---

[104]     *See, e.g., In re Brand Name Prescript. Drugs Antitrust Litig.*, 186 F.3d 781, 789 (7th Cir. 1999) (the *Noerr-Pennington* doctrine does not create a blanket rule of inadmissibility; such evidence can be excluded under Rule 403 if it is confusing or unduly prejudicial).

[105]     Teva Mem. at 11-13 (Doc. #: 2668-1); Pls. Opp. at 109-112 (Doc. #: 2727); Teva Reply at 8-9 (Doc. #: 2808).

[106]     For example, in *In re Welding Fumes Product Liab. Litig.*, 526 F. Supp.2d 775, 802-03 (N.D. Ohio 2007), the court analyzed a defendant's participation in the American Welding Society and other trade groups to absolve that defendant of conspiracy liability.

the jury to decide, *e.g.* whether the trade associations and the acts of their members were intended to further wrongful conduct on behalf of Defendants.  Accordingly, the Court denies Teva's motion.


● **Relationships Between Defendants and Other Companies.**

In these motions, the movants seek to exclude evidence relating to their relationships with other companies, including other Defendants.  The Court finds this evidence is relevant to Plaintiffs' claims and therefore denies the motions.


Walgreens' Ownership Interest in AmerisourceBergen.

• Walgreens MIL No. 1[107] (seeking to exclude evidence about Walgreens' ownership interest in AmerisourceBergen) – DENIED.

Walgreens seeks to exclude evidence or argument regarding its equity ownership interest in AmerisourceBergen.  Walgreens owns more than 26% of AmerisourceBergen, which makes it "a related party" under the U.S. Security Exchange Commission's rules.  Walgreens asserts any suggestion that, by virtue of its ownership interest, Walgreens exerts control or influence over AmerisourceBergen (and is therefore responsible for AmerisourceBergen's opioid distributions) would be false, misleading, and unduly prejudicial.  Plaintiffs respond they do not seek to hold Walgreens liable for the actions of AmerisourceBergen.  Rather, Plaintiffs contend evidence regarding the financial relationships between Defendants, including Walgreens' ownership interest in AmerisourceBergen, is relevant to proving the conspiracy claims.  Plaintiffs assert that, in 2014, at the same time Walgreens stopped self-distribution of prescription opioids, it: (1) entered into an

_____

[107] Walgreens Mtn. at 1-3 (Doc. #: 2648); Pls. Opp. at 82-83 (Doc. #: 2727); Walgreens Reply at 1-3 (Doc. #: 2802).

exclusive distribution relationship with AmerisourceBergen; (2) became involved with AmerisourceBergen's SOMS regarding Walgreens' orders; (3) began acquiring significant amounts of AmerisourceBergen stock; and (4) gained a seat on AmerisourceBergen's Board.[108]  The Court agrees this evidence is relevant to Plaintiffs' claim that Walgreens continued its participation in the alleged conspiracy after 2014.  Thus, the Court declines to exclude evidence of Walgreens' ownership interest in AmerisourceBergen.

> McKesson's Relationship with CVS and Rite Aid.

- • McKesson MIL No. 6[109] (seeking to exclude evidence about McKesson's relationship with CVS and Rite Aid) – DENIED.

McKesson seeks to exclude evidence regarding its undefined "relationship" with CVS and Rite Aid, on the grounds that: (i) those companies have been severed from the *Track One* trial, and (ii) admission of this evidence would unfairly prejudice McKesson's ability to defend itself in the short time allotted for trial.  Plaintiffs respond this evidence goes to the heart of their conspiracy claims – that is, McKesson, CVS, and Rite Aid took concerted steps in furtherance of their conspiracy to avoid having to report suspicious orders to the DEA.  Plaintiffs' points are well-taken.  McKesson has not shown a valid reason to exclude this evidence.  Accordingly, the Court denies McKesson's motion.

---

[108]     *See, e.g.*, *Cadence Educ., LLC v. Vore*, No. 17-CV-2092-JTM-TJJ, 2018 WL 690993, at *7 (D. Kan. Feb. 2, 2018) (ordering defendants to produce documents concerning ownership interest in corporate entities and relationships between corporate entities as relevant to conspiracy claims).

[109]     McKesson Mem. at 7-8 (Doc. #: 2663-1); Pls. Opp. at 102-103 (Doc. #: 2727); McKesson Reply at 5-6 (Doc. #: 2802).

<u>Distributor-Run Programs Allowing Manufacturers to Communicate Product Information.</u>

- Distributors MIL No. 8[110] (seeking to exclude evidence of Distributor-run programs that allowed Manufacturers to communicate product information to Pharmacies and other parties) – DENIED.

The Distributors seek to exclude evidence of unspecified "Distributor-run programs" that allowed Manufacturers to communicate product information to Pharmacies or other parties.  This information is relevant to both the knowledge and motive of the Distributors, as well as claims of conspiracy.  Moreover, evidence of these programs is an important part of, and clearly relevant to, Plaintiffs' marketing claims against the Manufacturers.  Any prejudicial effect of this evidence is easily outweighed by its probative value.  Accordingly, the Court denies this motion.

<u>"Gossip" Email by a McKesson Employee.</u>

- Cardinal MIL No. 2[111] (Doc. #: 2653) (seeking to exclude a "gossip" email by a McKesson employee stating that Cardinal does not report suspicious orders) – DENIED.

Cardinal seeks to preclude admission of an email that was written by a McKesson employee in 2013, and recounts a dinner conversation in which Cardinal employees supposedly stated: "Cardinal is not reporting suspicious orders to [the] DEA."[112]  Cardinal disputes the accuracy of this statement and further asserts that "gossip" is irrelevant and unduly prejudicial.  (Cardinal does not assert the email constitutes inadmissible hearsay.)  Cardinal's arguments about accuracy go to the

---

[110]     Distrs. Mem. at 18-20 (Doc. #: 2666); Pls. Opp. at 70-71 (Doc. #: 2727); Distrs. Reply at 15-18 (Doc. #: 2804).

[111]     Cardinal Mem. at 4 (Doc. #: 2653-1); Pls. Opp. at 90-91 (Doc. #: 2727); Cardinal Reply at 2-4 (Doc. #: 2803).

[112]     Cardinal Mem. at 4 (Doc. #: 2653-1).

weight of this evidence, not its admissibility.  Moreover, Plaintiffs state a valid purpose for admission of the email – to show: (1)  the nature of Defendants' relationships (*i.e.* Cardinal employees telling McKesson employees about Cardinal's level of reporting to the DEA); and (2) that Defendants discussed and coordinated their efforts regarding CSA compliance issues.  The Court therefore denies Cardinal's motion to exclude this evidence.

- **The Parties' Arrangements with Counsel and Witnesses.**

    In the motions listed below, Plaintiffs seek to exclude evidence about the parties' arrangements with counsel and witnesses.  Except for compensation paid to expert witnesses, the Court finds this information should be excluded as irrelevant or unduly prejudicial.

    Selection of Counsel, Fee Arrangements, and Litigation Expenses.

    - Plaintiffs MIL No. 1[113] (seeking to exclude evidence of the parties' fee arrangements with counsel, how litigation expenses are paid, and the amount of those expenses) – GRANTED.

    Plaintiffs seek to preclude references to the parties' fee arrangements with counsel, including how litigation expenses are paid and the amount of those expenses.  The Court agrees this information is irrelevant to the issues to be decided in the case.[114]  Accordingly, the Court grants the

    ---

    [113]    Pls. Mtn. at 1-2 (Doc. #: 2652); Dfs. Opp. at 1-2 (Doc. #: 2725); Pls. Reply at 1 (Doc. #: 2805).

    [114]    *See In re Tylenol (Acetaminophen) Mktg.*, No. 2:13-md-02436, 2016 WL 3125428, at *5 (E.D. Pa. June 3, 2016) (evidence of how and why plaintiffs selected counsel, and their fee arrangement with counsel, was irrelevant or unduly prejudicial).

motion and orders counsel to refrain from referencing the parties' arrangements with counsel and litigation expenses.[115]

- Plaintiffs MIL No. 2[116] (seeking to preclude references to how the parties selected or hired their current attorneys and any referral arrangements with other attorneys that the parties may have retained or consulted) – GRANTED.

Plaintiffs ask the Court to preclude references to how the parties selected or hired their current attorneys, and any referral arrangements with other attorneys whom the parties may have retained or consulted.  The Court agrees this information is irrelevant or unduly prejudicial. Accordingly, the Court grants the motion and orders counsel to refrain from referencing the parties' selection of and arrangements with counsel.[117]

Accommodations and Use of Private Aircraft by the Witnesses, Parties, or Counsel.

- Plaintiffs MIL No. 5[118] (seeking to preclude references to the accommodations or travel arrangements (including the use of private aircraft) for any witnesses, parties, or counsel) – GRANTED as to attorneys, parties, and lay witnesses; DENIED as to expert witnesses.

---

[115]    The Court notes, however, that information regarding the parties' arrangements with counsel could become relevant for impeachment purposes – for instance, if Plaintiffs' counsel suggests they are handling the litigation for altruistic or personal reasons.  *See In re Tylenol*, 2016 WL 3125428, at *5 (if plaintiff "opens the door" to allow such impeachment material, it would only be fair for defendants to use this information).

[116]    Pls. Mtn. at 2 (Doc. #: 2652); Dfs. Opp. at 2-3 (Doc. #: 2725); Pls. Reply at 1-2 (Doc. #: 2805).

[117]    Plaintiffs withdrew their request to exclude the circumstances of "when" the parties selected, hired, or were considering hiring attorneys.  *See* Pls. Reply at 1-2 (Doc. #: 2805).  The Court notes this information is relevant to issues concerning the statute of limitations and any tolling thereof.

[118]    Pls. Mtn. at 3-4 (Doc. #: 2652); Dfs. Opp. at 4-5 (Doc. #: 2725); Pls. Reply at 3-5 (Doc. #: 2805).

Plaintiffs seek to bar references to the accommodations or travel arrangements (including the use of private aircraft) for witnesses, the parties, or counsel. Defendants agree that references to the use of private airplanes and accommodations *for counsel, lay witnesses, and clients* are inappropriate. However, Defendants assert information relating to the accommodations and transportation *of expert witnesses* is another matter. The Court agrees that issues relating to the direct and indirect compensation received by experts – including travel accommodations and the use of private aircraft – are relevant and fair game for the jury's consideration *with respect to expert witnesses only*.[119] Accordingly, the Court will exclude evidence regarding the accommodations and travel arrangements for counsel, the parties, and lay witnesses, but allow this evidence as to expert witnesses.

- **Financial Information about Defendants**

In the motions listed below, Defendants seek to exclude evidence regarding certain financial information. Except for evidence about Defendants' revenues and profitability from opioid sales, the Court finds this information should be excluded as irrelevant or unduly prejudicial.

---

[119]     *See, e.g., Sturm v. Beard*, No. 11-0448 FMO (JCG), 2013 WL 6732909, at *34 (C.D. Calif. Dec. 19, 2013) (inquiry into the compensation paid to an expert witness is relevant to show bias); *Button v. Royal Caribbean Cruises Ltd.*, No. 12-23624, 2013 WL 12064490, at *3 (S.D. Fla. July 12, 2018) (the total compensation paid to expert witnesses is "highly relevant to show a potential bias").

<u>Defendants' Financial Condition, Revenue, and Profits.</u>

- Defendants MIL No. 11[120] (seeking to exclude evidence or argument about Defendants' financial condition, revenues, or profitability) – GRANTED as to overall financial condition or assets; DENIED as to revenues and profitability relating to opioid sales.

Defendants seek to exclude evidence or argument about their overall financial condition, assets, revenues, or profitability, on the grounds of irrelevance or undue prejudice.  Plaintiffs agree they will not seek to introduce evidence regarding Defendants' overall financial condition or assets.[121]  However, Plaintiffs assert that information regarding the revenues and profits that Defendants earned from opioid sales is relevant to show: (1) Defendants' motive for engaging in the alleged misconduct; and (2) Defendants had the resources from their opioid business to design and maintain appropriate SOMS (and thus their failure to do so was by deliberate choice).  Plaintiffs' points are well-taken.  Accordingly, the Court will exclude evidence regarding Defendants' overall financial condition and assets, but allow evidence regarding Defendants' revenues and profitability relating to opioid sales.

---

[120]     Defs. Mtn. at 31-34 (Doc. #: 2661); Pls. Opp. at 47-48 (Doc. #: 2727); Defs. Reply at 25 (Doc. #: 2800).

[121]     The Court notes that, in the claims remaining for trial, Plaintiffs do not seek punitive damages.  If punitive damages were at stake, evidence of Defendants' financial condition would likely be relevant to the jury's determination. *See, e.g., Welding Fume*, 2010 WL 7699456 at *74 n.273 (the Sixth Circuit has "routinely held that a jury may consider a defendant's financial condition when determining punitive damages").

Purchase Price for the Actavis Generic Defendants.

- • Teva MIL No. 9[122] (seeking to exclude references to the amount Teva paid to purchase the Actavis Generic Defendants) – GRANTED.

Teva seeks to exclude any reference to the price it paid to purchase Allergan's generics business, including the Actavis Generic Defendants, on the grounds of irrelevance or undue prejudice. Plaintiffs assert the purchase price ($40.5 billion) is relevant to show the value of generic opioid sales and Defendants' expectations therefrom. On balance, the Court finds any probative value of this evidence is outweighed by a danger of unfair prejudice and confusion. Accordingly, the Court will exclude evidence regarding the purchase price of the Actavis Generic Defendants.

Settlement Agreement between Teva and Allergan.

- • Teva MIL No. 10[123] (seeking to preclude references to a settlement agreement between Teva Ltd. and Allergan PLC) – GRANTED AS UNOPPOSED.

Teva seeks to exclude any reference to a settlement agreement that Teva and Allergan entered into after Teva purchased Allergan's generic opioid business. Plaintiffs do not oppose this request. Accordingly, the Court sustains the motion as unopposed.

---

[122]     Teva Mem. at 16-17 (Doc. #: 2668-1); Pls. Opp. at 115-116 (Doc. #: 2727); Teva Reply at 12-14 (Doc. #: 2808).

[123]     Teva Mem. at 17-18 (Doc. #: 2668-1); Pls. Opp. at 116 (Doc. #: 2727); Teva Reply at 14 (Doc. #: 2808).

● **Negative Consequences of Plaintiffs' Claims.**

In these motions, Plaintiffs seek to preclude arguments relating to various potential negative consequences of their claims, or of prevailing on their claims. The Court generally agrees that evidence along this line is irrelevant or unduly prejudicial.[124]

- Plaintiffs MIL No. 14[125] (seeking to preclude evidence or argument about the potential negative impact of Plaintiffs' claims on pharmaceutical companies or governmental regulatory policies) – GRANTED.

Plaintiffs seek to exclude any evidence or argument that Plaintiffs' claims or verdict in this case would interfere with, or negatively impact, the pharmaceutical industry or the government's regulation thereof. The Court will exclude this evidence as irrelevant to issues for the jury's determination or, alternatively, because any slight relevance is substantially outweighed by a risk of unfair prejudice, confusing the issues, or misleading the jury.[126]

---

[124] The Court notes that, however, that if punitive damages were at stake, then non-speculative evidence regarding the negative impact of a punitive damages award would likely be relevant to the jury's determination. *See, e.g., In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Prod. Liab. Litig*, No. 3:09-MD.-2100-DRH, 2011 WL 6740391, at *16 (S.D. Ill. Dec. 22, 2011) (comment, evidence, or inference that a verdict for plaintiff would adversely affect the incentive or ability of pharmaceutical companies to develop new medications would be relevant in the punitive damages phase, where plaintiff could discuss the company's net worth and defendant could defend by arguing the negative impact of a punitive damage award).

[125] Pls. Mtn. at 11-12 (Doc. #: 2652); Dfs. Opp. at 14-16 (Doc. #: 2725); Pls. Reply at 10-13 (Doc. #: 2805).

[126] *See, e.g.*, *Georges v. Novartis Pharm. Corp.*, No. 06-05207, 2013 WL 5217198, at *5 (C.D. Calif. April 4, 2013) (finding that evidence suggesting state tort law undercuts the FDA's mission to provide scientifically valid warnings was not relevant to any issues in the case and would mislead and distract the jury). *See also In re Vioxx Prods. Liab. Litig.*, MDL 1657, 2005 WL 3164251 at *1 (E.D. La. Nov. 18, 2005) (granting plaintiff's motions in limine to exclude "[a]ny reference that state products liability laws frustrate the FDA's protective regime" and "[a]ny reference that this case or any Vioxx case may have a negative impact on Merck's stock price or any other publicly traded pharmaceutical manufacturer").

60

- Plaintiffs MIL No. 18[127] (seeking to preclude arguments that an award of damages will adversely affect the availability or cost of medications in the future, or have an adverse effect on the drugs or health products available to individuals or industries in the United States or elsewhere) – GRANTED.

Based on the Court's understanding that Plaintiffs are not pursuing punitive damages, the Court sustains Plaintiffs' motion to preclude references to any adverse effect that an award of damages may have on the future availability or cost of medications.   This line of evidence is irrelevant to the issues to be decided in this case, or any slight relevance is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury.

- Plaintiffs MIL No. 19[128] (seeking to preclude suggestions that a judgment for Plaintiffs will adversely affect the finances or ability of Defendants to compete in the marketplace or may negatively affect the economy or lead to layoffs) – GRANTED.

Similarly, in the absence of a claim for punitive damages, the Court will preclude any suggestion regarding any adverse effect that an award of damages may have on Defendants' finances or the economy, including employee layoffs, on the ground that such evidence is irrelevant or unfairly prejudicial, confusing, or misleading.

- Plaintiffs MIL No. 20[129] (seeking to preclude suggestions that a verdict for Plaintiffs will adversely impact the incentive or ability of pharmaceutical manufacturers to develop new drugs) – GRANTED.

Because punitive damages are not at stake, the Court will preclude any reference that a verdict for Plaintiffs will adversely impact the incentive or ability of pharmaceutical manufacturers

---

[127]     Pls. Mtn. at 22-23 (Doc. #: 2652); Dfs. Opp. at 25-26 (Doc. #: 2725); Pls. Reply at 23-24 (Doc. #: 2805).

[128]     Pls. Mtn. at 23-24 (Doc. #: 2652); Dfs. Opp. at 27 (Doc. #: 2725); Pls. Reply at 25 (Doc. #: 2805).

[129]     Pls. Mtn. at 24-25 (Doc. #: 2652); Dfs. Opp. at 28 (Doc. #: 2725); Pls. Reply at 25 (Doc. #: 2805).

to develop new drugs, on the grounds that such evidence is irrelevant or unfairly prejudicial, confusing, or misleading.

- Plaintiffs MIL No. 21[130] (seeking to preclude suggestions that Defendants and the pharmaceutical industry must factor in the cost of lawsuits when determining the cost of their products to the public) – GRANTED.

For the same reasons, the Court will preclude any suggestion that Defendants and the pharmaceutical industry must factor in the costs of lawsuits when determining the price of their products.

- **Conduct of Counsel at Trial.**

In each of the motions discussed below, the movant seeks to prohibit various types of language or references that it believes opposing counsel might use at trial. The Court's rulings vary depending on the specific conduct at issue.

Referring to "Defendants" Collectively.

In this subgroup of motions, Schein and the Distributors seek to preclude Plaintiffs from referring to "Defendants" collectively, when not all of the Defendants' conduct is at issue. The Court agrees it would be confusing and unfair for Plaintiffs to lump all of the Defendants together. However, the Court declines to make a blanket ruling on this issue. *See* Transcript at 5:21 to 6:5 (Doc. #: 2828). The Court instructs the parties as follows: when the attorneys and witnesses use the term "Defendants," if they are not referring to all of the Defendants in the case, they must be specific

---

[130]    Pls. Mtn. at 25 (Doc. #: 2652); Dfs. Opp. at 28-29 (Doc. #: 2725); Pls. Reply at 25-26 (Doc. #: 2805).

as to which Defendants they mean. *See id.* at 5:21-6:5. The lawyers and the witnesses must be careful about this issue: if they are referring to all of the Defendants in the case, then they may refer to them collectively; but if they mean fewer than all of the Defendants, then they must be specific. This ruling applies to all categories of Defendants, *i.e.* Manufacturers, Distributors, Pharmacies, etc.

- Schein MIL No. 1[131] (seeking to preclude references to Schein's activities with respect to Cuyahoga County when it is sued only by Summit County) – DENIED WITHOUT PREJUDICE.

Schein asks the Court to preclude Plaintiffs from referring to "Defendants" or "Distributors" generally when referencing the Cuyahoga County claims, because Schein is not a party to that suit.[132] For the reasons stated above, the Court declines to make a blanket ruling on this issue.

- Distributors MIL No. 6[133] (seeking to preclude references broadly and generally to "Defendants" when the statement, argument, or testimony relates only to certain Defendants or groups of Defendants) – DENIED WITHOUT PREJUDICE.

Similarly, the Distributors ask the Court to prohibit Plaintiffs from referring to Defendants collectively, when they are describing behavior that only certain Defendants actually took part in. The Court declines to make a blanket ruling and refers counsel to the instructions set forth above.

---

[131] Schein Mtn. at 2 (Doc. #: 2645); Pls. Opp. at 72-73 (Doc. #: 2727).

[132] As noted, Schein is named only in the Summit County suit. To the extent Schein asserts its conduct regarding Cuyahoga County is irrelevant, the Court disagrees for the reasons stated *supra* at 8-12 (evidence of conduct that occurred in or impacted other locations is relevant to Plaintiffs' claims regarding the *Track One* Counties or damages allegedly caused in the *Track One* Counties).

[133] Distrs. Mem. at 15-18 (Doc. #: 2666); Pls. Opp. at 67-68 (Doc. #: 2727); Distrs. Reply at 12-13 (Doc. #: 2804).

<u>Referring to Joseph Rannazzisi as the "60-Minute Man."</u>

- Walgreens MIL No. 3[134] (seeking to preclude Plaintiffs from referring to the DEA's former Deputy Administrator, Joseph Rannazzisi, as the "60-Minute Man") – GRANTED IN PART.

Walgreens seeks to preclude Plaintiffs from trying to bolster the credibility or character of the DEA's former Deputy Administrator, Joseph Rannazzisi, by referring to the fact that he has appeared on 60 Minutes, been quoted in articles published by the Washington Post, or highlighted in reporting by other news organizations.  The Court will allow brief, accurate references to the fact that Rannazzisi did appear on 60 Minutes and other news reports, if those facts indeed happened.  However, Plaintiffs may not overemphasize or dwell on these facts, and may not refer to Rannazzisi as the "60-Minute Man."

<u>Use of Technology, Charts, and Data.</u>

- Plaintiffs MIL No. 9[135] (seeking to exclude the use of any deposition video or associated technology that alters the appearance of what was displayed at the deposition, including the use of highlighting, enlarging, or otherwise emphasizing the documents or portions of documents, unless the emphasis was done during the deposition and is part of the deposition video record) – DENIED WITHOUT PREJUDICE.

Plaintiffs seek to prohibit Defendants from impermissibly drawing attention to documents and testimony in a way that was not focused on during the deposition.  The Court agrees that counsel should not be allowed to *unfairly* emphasize exhibits differently from how they were referenced in

---

[134]    Walgreens Mtn. at 8 (Doc. #: 2648); Pls. Opp. at 86-87 (Doc. #: 2727); Walgreens Reply at 4-5 (Doc. #: 2802).

[135]    Pls. Mtn. at 6-7 (Doc. #: 2652); Dfs. Opp. at 9-11 (Doc. #: 2725); Pls. Reply at 7 (Doc. #: 2805).

a deposition.  However, the Court also agrees with Defendants that it generally will be helpful for the jury to see an enlarged and/or highlighted document at the time it is discussed in deposition testimony, even if the document was not highlighted or enlarged in real time during the deposition. The parties may, of course, use technology to present their testimony and documents.  The Court declines to make a blanket ruling and instead will address this issue as it may arise in the context of trial.  Relevant considerations will include whether the added highlighting merely aids the jury in understanding the evidence, as opposed to creating an undue emphasis that is inconsistent with or unfair to the spirit and content of the testimony.

Motions to Exclude Evidence.

- Plaintiffs MIL No. 11[136] (seeking to exclude references to the parties' filing of motions to exclude evidence, the contents thereof, and any related agreements or proceedings) – GRANTED.

Whether a party has asked the Court to exclude evidence is irrelevant to the jury's determination of the issues in this case.  The Court therefore sustains Plaintiffs' motion to exclude evidence related to the parties' motions in limine and other requests or agreements to exclude evidence.

Using Personal Opinions or Visual Aids to Belittle or Influence Witnesses.

- Defendants MIL No. 10[137] (seeking to prohibit counsel from offering personal opinions and using visual aides to belittle or influence witnesses) – DENIED WITHOUT PREJUDICE.

---

[136]  Pls. Mtn. at 8-9 (Doc. #: 2652); Dfs. Opp. at 11-12 (Doc. #: 2725); Pls. Reply at 7-8 (Doc. #: 2805).

[137]  Defs. Mtn. at 28-31 (Doc. #: 2661); Pls. Opp. at 44-47 (Doc. #: 2727); Defs. Reply at 24-25 (Doc. #: 2800).

Defendants ask the Court to preclude counsel from offering personal opinions or using visual aids or other conduct to belittle or improperly influence witnesses.  The Court agrees with Plaintiffs that this motion is overly broad and vague and raises matters that can only be properly addressed in the context of trial.  Accordingly, the Court will not make a blanket ruling at this time. The Court expects all counsel to adhere strictly to the Ohio Rules of Professional Conduct, *see* N.D. Ohio Rule 83.7 (attorneys admitted to practice in this Court shall be bound by the Ohio Rules of Professional Conduct) and high standards of courtroom decorum.

- McKesson MIL No. 1[138] (seeking to prohibit counsel from asking baseless or inappropriate questions) – DENIED WITHOUT PREJUDICE.

Similarly, the Court declines McKesson's request to enter a blanket ruling prohibiting counsel from asking baseless or inappropriate questions designed to denigrate witnesses or unfairly prejudice the jury.  The Court will address such matters if and when they arise in the context of trial, but hopes and expects they will not actually arise.

Absence of Corporate Representative at Trial

- Defendants MIL No. 14[139] (seeking to preclude Plaintiffs from commenting about the absence of a corporate representative at trial) – GRANTED.

---

[138]     McKesson Mem. at 1-2 (Doc. #: 2663-1); Pls. Opp. at 92-93 (Doc. #: 2727); McKesson Reply at 1-2 (Doc. #: 2802).

[139]     Defs. Mtn. at 36-37 (Doc. #: 2661); Pls. Opp. at 51-52 (Doc. #: 2727); Defs. Reply at 26-27 (Doc. #: 2800).

The Court grants Defendants' request to preclude argument or comment about whether a corporate representative does not attend all or part of the trial. The Court agrees this information is not relevant to the merits of Plaintiffs' claims.[140]

- **Philanthropy or Good Deeds by the Parties or their Employees.**

  - Plaintiffs MIL No. 6[141] (seeking to preclude references to philanthropy or good deeds by the parties or their employees that are unrelated to preventing opioid addiction) – GRANTED IN PART.

Plaintiffs seek to preclude any suggestion that Defendants are "good" or "benevolent" companies, including evidence relating to the philanthropy or good deeds of Defendants or their employees that are unrelated to preventing opioid addiction. The Court agrees with Defendants that this request is overly broad. The Court will allow Defendants to introduce and describe themselves accurately to the jury, including *relevant* information about the people they employ and the work they do. Each Defendant may introduce and describe itself accurately to the jury and explain how many people it employs and the work they do to ensure the safe manufacture and delivery of necessary medication to the people living in the Track One counties. In contrast, evidence that the

---

[140] *See, e.g., Woulard v. Greenwood Motor Lines, Inc.*, No. 1:17CV231-HSO-JCG, 2019 WL 3318467, at *6 (S.D. Miss. Feb. 4, 2019) (the absence of a corporate representative is not relevant to any issue in the case); *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 14 C 1748, 2017 WL 5029601, at *3 (N.D. Ill. Nov. 3, 2017) (the absence of a corporate representative was irrelevant; plaintiff did not show it had any tendency to make a fact more or less probable or would otherwise be of consequence in the determination of the action); *Ray v. Ford Motor Co.*, No. 3:07CV175-WHA-TFM, 2011 WL 6183099, at *6 (M.D. Ala. Dec. 13, 2011) (same); *Riley v. Ford Motor Co.*, No. 2:09-CV-148, 2011 WL 3273592, at *3 (S.D. Miss. July 29, 2011) (the presence, absence, or identity of defendant's corporate representative is wholly irrelevant to plaintiffs' claims).

[141] Pls. Mtn. at 4-5 (Doc. #: 2652); Dfs. Opp. at 6 (Doc. #: 2725); Pls. Reply at 6 (Doc. #: 2805).

parties and/or their employees are "good citizens" and do good deeds such as providing scholarships, community service, or charitable contributions is not relevant to the issues in this case (unless another party offers evidence to the contrary).[142]

- **Identity and Privacy Concerns.**

In the motions listed below, Plaintiffs ask the Court to exclude references or evidence relating to various types of privacy or personal identification. The Court agrees this information should be excluded.

- Plaintiffs MIL No. 25[143] (seeking to exclude references or evidence regarding the identities of children, including but not limited to children in child protective custody) – GRANTED.

The identity of any children, including those in child protective custody, is irrelevant and should be redacted from all evidence introduced at trial. This includes but is not limited to the names, addresses, dates of birth, telephone numbers, and social security numbers of all children.

---

[142]  *See* Fed. R. Evid. Rule 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that, on a particular occasion, the person acted in accordance with the character or trait."); *Tylenol*, 2016 WL 3125428, at *8, 11 (the unchallenged character of defendants' employees is not relevant to their case-in-chief); *Welding Fume*, 2010 WL 7699456, at *95 (the standards regarding moral or ethical character and conduct are different from the legal standards that a jury must apply). *But see Tylenol,* 2016 WL 3125428, at *8 ("A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.").

[143]  Pls. Mtn. at 31 (Doc. #: 2652); Dfs. Opp. at 36-37 (Doc. #: 2725); Pls. Reply at 33-34 (Doc. #: 2805).

- Plaintiffs MIL No. 26[144] (seeking to preclude references or evidence about individually-identifiable health information or medical records regarding individual patients, including but not limited to information or records that identify babies with neonatal abstinence syndrome or persons with opioid use disorder) – GRANTED.

Additionally, the Court will exclude evidence or testimony regarding the individually-identifiable information or medical records of any identifiable person.  If any party believes this information is somehow relevant, it should provide advance notice so the Court can consider the particular circumstances of the situation in the context of trial.

- Plaintiffs MIL No. 27[145] (seeking to exclude references or evidence regarding the identity of any undercover law enforcement personnel who may be called to testify at trial) – GRANTED.

Regarding undercover law enforcement personnel, the Court agrees the parties must take reasonable steps to protect the identity of these individuals.  If such protection is required, the parties shall notify the Court in advance.  However, if these personnel have already testified openly in other proceedings, it appears their identify is no longer confidential and need not be protected here.

- **Evidence Specific to Cuyahoga and Summit Counties**

The motions discussed below address the admissibility of specific evidence regarding the *Track One* Counties.  The Court's rulings vary depending on the specific evidence at issue.

---

[144]    Pls. Mtn. at 31-34 (Doc. #: 2652); Dfs. Opp. at 37-39 (Doc. #: 2725); Pls. Reply at 34 (Doc. #: 2805).

[145]    Pls. Mtn. at 34-35 (Doc. #: 2652); Dfs. Opp. at 39-42 (Doc. #: 2725); Pls. Reply at 34-35 (Doc. #: 2805).

<u>Deaths of Individuals While in the Custody of County Jails or Sheriff Offices.</u>

- Plaintiffs MIL No. 28[146] (seeking to preclude references to the deaths of individuals while in the custody of the Cuyahoga County Jail or Sheriff's Office, and any reference to the U.S. Marshals Service's report on jails) – DENIED WITHOUT PREJUDICE.

Plaintiffs seek to exclude any reference to the deaths of individuals while in the custody of the Cuyahoga County Jail or Sheriff's Office, and references to the U.S. Marshals Service's report on jails in Cuyahoga County, asserting the evidence is irrelevant and would cause undue prejudice. Defendants respond that at least some of this evidence is directly relevant to issues in this case, including whether Defendants caused Plaintiffs' alleged damages (as opposed to other causes) and whether the County took sufficient actions to mitigate its damages. Defendants' points are well-taken. The Court declines to make a blanket ruling of exclusion at this time. However, the Court cautions the parties that any introduction of this evidence must be directly tied to the issues in dispute in this case.

- Plaintiffs MIL No. 37[147] (seeking to exclude references to the deaths of individuals while in the custody of the Summit County Jail or Sheriff's Office) – DENIED WITHOUT PREJUDICE.

For the same reasons, the Court denies Plaintiffs' motion to exclude references to the deaths of individuals while in the custody of the Summit County Jail or Sheriff's Office.

---

[146] Pls. Mtn. at 36 (Doc. #: 2652); Dfs. Opp. at 42-43 (Doc. #: 2725); Pls. Reply at 35 (Doc. #: 2805).

[147] Pls. Mtn. at 40 (Doc. #: 2652); Dfs. Opp. at 48 (Doc. #: 2725); Pls. Reply at 42-43 (Doc. #: 2805).

Alleged Corruption of County Officials.

- Plaintiffs MIL No. 29[148] (seeking to exclude references or allegations regarding current or former government corruption in Cuyahoga County) – GRANTED IN PART.

Plaintiffs seek to exclude any reference or allegation regarding current or former government corruption in Cuyahoga County. The Court agrees that unsubstantiated allegations of government corruption are irrelevant or unduly prejudicial. However, to the extent Defendants have evidence showing how corruption of County officials contributed to the opioid crisis, this evidence could be relevant to issues in the case, including whether Defendants' conduct caused the alleged damages and whether Plaintiffs took sufficient actions to mitigate their damages. Accordingly, the Court grants the motion as to "allegations" and denies it as to "evidence." The Court further cautions that any introduction of this type of evidence at trial must be directly tied to the issues in dispute in this case.

- Plaintiffs MIL No. 36[149] (seeking to exclude references or allegations regarding current or former government corruption in Summit County) – GRANTED IN PART.

For similar reasons, the Court will exclude *allegations* of government corruption in Summit County, but allow *evidence* of any such conduct that is relevant to Plaintiffs' claims in this case.

---

[148] Pls. Mtn. at 36-37 (Doc. #: 2652); Dfs. Opp. at 43 (Doc. #: 2725); Pls. Reply at 35 (Doc. #: 2805).

[149] Pls. Mtn. at 39-40 (Doc. #: 2652); Dfs. Opp. at 47-48 (Doc. #: 2725); Pls. Reply at 41-42 (Doc. #: 2805).

Podcast or Other Media Coverage about the Cuyahoga County Courts.

- Plaintiffs MIL No. 34[150] (seeking to exclude references to any "podcast" or other media coverage regarding the Cuyahoga County Courts) – DENIED WITHOUT PREJUDICE.

Plaintiffs seek to exclude evidence or references to any "podcast" or other media coverage regarding the Cuyahoga County Courts, on the grounds of irrelevance or undue prejudice. Defendants respond that any statement the County made, authorized, or adopted in these programs could be relevant as a party admission regarding, for example, causes other than Defendants' conduct that may have led to increased drug-related offenses in the court system. The Court cannot determine the admissibility of this evidence in the abstract and instead will decide the issue as it may arise in the context of trial.

Death of Aniya Day Garrett.

- Plaintiffs MIL No. 35[151] (seeking to exclude references to any investigation regarding the death of Aniya Day Garrett) – DENIED WITHOUT PREJUDICE.

The parties dispute the relevance or prejudicial impact of evidence relating to a highly-publicized incident involving the tragic death of a four-year old child. Plaintiffs assert that, because the incident was unrelated to opioid use, it is irrelevant to issues in this case. Defendants disagree, asserting it is relevant precisely for that reason. Specifically, Defendants assert the well-publicized incident revealed that the Cuyahoga County Children and Family Services ("CFS") had received

---

[150]    Pls. Mtn. at 38-39 (Doc. #: 2652); Dfs. Opp. at 44-45 (Doc. #: 2725); Pls. Reply at 38-40 (Doc. #: 2805).

[151]    Pls. Mtn. at 39 (Doc. #: 2652); Dfs. Opp. at 45-47 (Doc. #: 2725); Pls. Reply at 40-41 (Doc. #: 2805).

multiple reports of abuse concerning the child, and this media attention provides an explanation (other than the opioid crisis) for increases in the CFS's costs.

The Court declines to issue a blanket ruling at this time.  Before introducing evidence on this topic, Defendants will need to convince the Court that this evidence is relevant to the issues at hand.


- **Resolved by the Parties.**

The motions listed below were resolved by agreement of the parties.  Accordingly, the Court denies these motions as moot:

- Plaintiffs MIL No. 3[152] (seeking to exclude references to whether counsel generally represents Plaintiffs or Defendants, what type of law they practice, and how they obtain clients) – DENIED AS MOOT.

- Plaintiffs MIL No. 4[153] (seeking to exclude references about the financial status or resources of the attorneys or their law firms) – DENIED AS MOOT.

- Plaintiffs MIL No. 10[154] (seeking to exclude references to unrelated personal matters of a party's expert or the expert's family, such as divorce proceedings, employment or other disputes, and any other unrelated matters) – DENIED AS MOOT.

- Plaintiffs MIL No. 12[155] (seeking to preclude suggestions that an award of punitive damages is unconstitutional or illegal) – DENIED AS MOOT.

---

[152]    Pls. Mtn. at 2-3 (Doc. #: 2652); Dfs. Opp. at 3 (Doc. #: 2725); Pls. Reply at 2 (Doc. #: 2805).

[153]    Pls. Mtn. at 3 (Doc. #: 2652); Dfs. Opp. at 3 (Doc. #: 2725); Pls. Reply at 3 (Doc. #: 2805).

[154]    Pls. Mtn. at 8 (Doc. #: 2652); Dfs. Opp. at 11 (Doc. #: 2725); Pls. Reply at 7 (Doc. #: 2805).

[155]    Pls. Mtn. at 9-10 (Doc. #: 2652); Dfs. Opp. at 12 (Doc. #: 2725); Pls. Reply at 8 (Doc. #: 2805).

- Defendants MIL No. 13[156] (seeking to exclude statements that appeal to the jurors in their capacity as taxpayers) – DENIED AS MOOT.

## CONCLUSION

The evidentiary rulings documented in this Order are summaries of the Court's rulings with respect to the motions in limine filed in the *Track One* cases.  These rulings will apply to all future MDL cases tried by this Court and any transferor court on remand.  The parties' objections to these rulings are preserved for all future trials and any appeals thereof.  Accordingly, a party should file a pretrial motion addressing these same evidentiary issues in future trials only if the party sincerely believes the particular circumstances of an individual case warrant a modification.  Further, although this Order documents the Court's rulings, the parties still have an obligation to object at trial if they believe the opposing party is not complying with the Court's conclusions regarding admissibility.

As the Court presides over future bellwether trials, it will probably enter rulings on other evidentiary issues that are applicable to all MDL cases.  If so, the Court may enter an additional Evidentiary Order memorializing those rulings, so that the parties will not need to file repetitious motions in limine.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE

Dated: December 26, 2019

---

[156]    Defs. Mtn. at 35-36 (Doc. #: 2661); Pls. Opp. at 51 (Doc. #: 2727); Defs. Reply at 26 (Doc. #: 2800).