# APPENDIX A

# MASTER SUMMARY

## 1. NATIONWIDE CLASS

### A. DEFINITION

**CLASS 1**.  Legal Guardians[1] of United States residents born after March 16, 2000, who were medically diagnosed with opioid-related NAS[2] at or near birth and whose birth mother received a prescription for opioids or opiates prior to the birth and those opioids or opiates were manufactured, distributed, or filled by a Defendant or Purdue entity.  Excluded from the class are any infants and children who were treated with opioids after birth, other than for pharmacological weaning.  Also excluded from the class are legal guardianships where a political subdivision, such as a public children services agency, has affirmatively assumed the duties of "custodian" of the child.[3]

**CLASS 2**.  Legal Guardians[4] of United States residents born after March 16, 2000, who were medically diagnosed with opioid-related NAS at or near birth and whose birth mother received and/or filled a prescription for opioids or opiates in the 10 months prior to the birth of said infant or child and those opioids or opiates were manufactured, distributed, or filled by a Defendant or Purdue entity.[5]

---

[1] The term "Legal Guardian" is further defined for purposes of this putative class action as "any natural person or entity who has the primary legal responsibility under law for an infant or child's physical, mental, and emotional development."  Expressly excluded from the class of "Legal Guardians" are any governmental entities.

"Legal Guardians" include natural and adoptive parents who have not otherwise lost legal custody of their children, legal custodians, legal caretakers, and court-appointed guardians (including guardians of the person), whether temporary or permanent.

[2] The term "NAS" (Neonatal Abstinence Syndrome) is defined to include additional, but medically symptomatic identical, terminology and diagnostic criteria, including Neonatal Opioid Withdrawal Syndrome (NOWS) and other historically and regionally used medical and/or hospital diagnostic criteria for infants born addicted to opioids from *in utero* exposure.  Additional specifics on these readily identifiable and ascertainable terms will be provided in Plaintiffs' Motion for Class Certification.

[3] There are only two causes of NAS: (1) *in utero* exposure to opioids via the birth mother, and (2) post-birth treatment of the infant with opioids for pain.  The latter category does not include pharmacological weaning for dependency, as those infants are necessarily part of the former category, i.e., infants who were exposed *in utero* and then treated with opioids pursuant to a weaning protocol of gradually tapering doses.  Whether a newborn or an infant was treated with opioids for pain can be determined from medical records.  Any such children are necessarily excluded from the class definition.

[4] The term "Legal Guardian" is defined at fn. 1, *supra*.

[5] Defined in the "Non-Defendant Co-Conspirator Purdue Entities" and "Defendant Co-Conspirator Purdue Entities" sections, *infra*.

B. DEFENDANTS

(1) MANUFACTURER DEFENDANTS

- <u>Actavis Entities</u>:  Allergan PLC f/k/a Actavis PLC f/k/a Allergan, Inc.; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Allergan Sales, LLC; Allergan USA, Inc.; Watson Laboratories, Inc.; Warner Chilcott Company, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma Inc.; Actavis South Atlantic LLC; Actavis Elizabeth LLC; Actavis Mid Atlantic LLC; Actavis Totowa LLC; Actavis LLC; Actavis Kadian LLC; Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City; Actavis Laboratories FL, Inc. f/k/a Watson Laboratories, Inc.-Florida.

- <u>Cephalon Entities</u>:  Teva Pharmaceutical Industries Ltd.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.

- <u>Janssen Entities</u>:  Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Johnson & Johnson.

- <u>Endo Entities</u>:  Endo Health Solutions Inc.; Endo Pharmaceuticals, Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc. f/k/a Par Pharmaceutical Holdings, Inc.

- <u>Mallinckrodt Entities</u>:  Mallinckrodt plc; Mallinckrodt LLC; SpecGx LLC.

- <u>Co-Conspirator Purdue Entities</u>:  Richard S. Sackler; Jonathan D. Sackler; Mortimer D.A. Sackler; Kathe A. Sackler; Ilene Sackler Lefcourt; Beverly Sackler; Theresa Sackler; David A. Sackler; Rhodes Technologies; Rhodes Technologies Inc.; Rhodes Pharmaceuticals L.P.; Rhodes Pharmaceuticals Inc.; Trust for the Benefit of Members of the Raymond Sackler Family; The P.F. Laboratories, Inc.

- <u>Non-Defendant, Co-Conspirator Purdue Entities</u>:  Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company, Inc.

(2) DISTRIBUTOR DEFENDANTS

- Cardinal Health, Inc.

- AmerisourceBergen Drug Corp.

- Mckesson Corporation

(3) PHARMACY DEFENDANTS

- HBC Service Company

- CVS Health Corporation; CVS Indiana, LLC; CVS Rx Services, Inc.
- Rite Aid Corporation; Rite Aid of Maryland, Inc.; Rite Aid of Maryland, Inc. d/b/a Rite-Aid Mid-Atlantic Customer Support Center, Inc.
- Walgreen Co.; Walgreens Boots Alliance, Inc.; Walgreen Eastern Co.
- Wal-Mart Inc. f/k/a Wal-Mart Stores, Inc.
- Miami-Luken, Inc.
- Costco Wholesale Corporation

C. CLAIMS

1. First Cause of Action – Violation of RICO, 18 U.S.C. § 1961 *et seq.* – Opioid Marketing Enterprise (against only Defendants Cephalon Entities, Janssen Entities, Endo Entities, and Mallinckrodt Entities (the "RICO Marketing Defendants").

2. Second Cause of Action – Violation of RICO, 18 U.S.C. § 1961 *et seq.* – Opioid Supply Chain Enterprise (against only Defendants Cephalon Entities, Endo Entities, Mallinckrodt Entities, Actavis Entities, McKesson, Cardinal, and AmerisourceBergen (the "RICO Supply Chain Defendants").

D. RELIEF REQUESTED

1. Order Defendants to provide for the benefit of the Plaintiff Legal Guardians and the Putative Class Members ongoing medical monitoring, testing, intervention, provision of caregiver training and information, and medical referral, all of which are medically necessary for the NAS Children in their care, and all future medical care reasonably necessary to treat these children. Any injunctive relief to which Plaintiffs may justly show themselves entitled, including injunctive relief designed to reduce the incidence of children born with NAS.

2. Order creation of a Science Panel.

3. Alternatively, all incidental compensatory damages and medical expenses incurred by Plaintiff Legal Guardians and the Putative Class Members in connection with their care of the NAS Children. It is expressly alleged that all compensatory damages sought in the alternative are incidental to the injunctive relief requested by Plaintiffs and the Class, and are for those caused by the *in utero* exposure to opioids and NAS diagnosis suffered by the NAS Children.

4. Punitive damages.

5. Attorneys' fees and costs incurred by Plaintiff Legal Guardians and the Putative Class Members.

## 2.   CLASS 3 – Ohio Statewide Class

### A.   DEFINITION

(1) Legal Guardians[6] of Ohio residents born after March 16, 2000, who were medically diagnosed with opioid-related NAS[7] at or near birth and whose birth mother received a prescription for opioids or opiates prior to the birth and those opioids or opiates were manufactured, distributed, or filled by a Defendant or Purdue entity.  Excluded from the class are any infants and children who were treated with opioids after birth, other than for pharmacological weaning.  Also excluded from the class are legal guardianships where the State of Ohio or one of its political subdivisions, such as a public children services agency, has affirmatively assumed the duties of "custodian" of the child under Ohio Rev. Code § 2151.011.[8]

(2) Legal Guardians[9] of Ohio residents born after March 16, 2000, who were medically diagnosed with opioid-related NAS at or near birth and whose birth mother received and/or filled a prescription for opioids or opiates in the 10 months prior to the birth of said infant or child and those opioids or opiates were manufactured, distributed, or filled by a Defendant or Purdue entity.[10]

### B.   DEFENDANTS

---

[6] The term "Legal Guardian" is further defined for purposes of this putative class action as "any natural person or entity who has the primary legal responsibility under Ohio state law for an infant or child's physical, mental, and emotional development."  Expressly excluded from the class of "Legal Guardians" are any governmental entities.

Under Ohio law, "Legal Guardians" include natural and adoptive parents who have not otherwise lost legal custody of their children, "custodians" and "caretakers" of children (but excluding public children's services agencies), and court-appointed "guardians," whether temporary or permanent.  *See* OHIO ADMIN. CODE § 5102-2-1(36), (84), (130), (171), and (206) (respective definitions of "Caretaker," "Custodian," "Guardian," "Legal Custody," and "Parental Rights").

[7] The term "NAS" (Neonatal Abstinence Syndrome) is defined to include additional, but medically symptomatic identical, terminology and diagnostic criteria, including Neonatal Opioid Withdrawal Syndrome (NOWS) and other historically and regionally used medical and/or hospital diagnostic criteria for infants born addicted to opioids from *in utero* exposure.  Additional specifics on these readily identifiable and ascertainable terms are set forth in the accompanying Consolidated Memorandum of Law.

[8] There are only two causes of NAS: (1) *in utero* exposure to opioids via the birth mother, and (2) post-birth treatment of the infant with opioids for pain.  The latter category does not include pharmacological weaning for dependency, as those infants are necessarily part of the former category, i.e., infants who were exposed *in utero* and then treated with opioids pursuant to a weaning protocol of gradually tapering doses.  Whether a newborn or an infant was treated with opioids for pain can be determined from medical records.  Any such children are necessarily excluded from the class definition.

[9] The term "Legal Guardian" is defined at fn. 6.

[10] Defined in the "Non-Defendant Co-Conspirator Purdue Entities" and "Defendant Co-Conspirator Purdue Entities" sections, *infra*.

(1)     MANUFACTURER DEFENDANTS

- Actavis Entities:  Allergan PLC f/k/a Actavis PLC f/k/a Allergan, Inc.; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Allergan Sales, LLC; Allergan USA, Inc.; Watson Laboratories, Inc.; Warner Chilcott Company, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma Inc.; Actavis South Atlantic LLC; Actavis Elizabeth LLC; Actavis Mid Atlantic LLC; Actavis Totowa LLC; Actavis LLC; Actavis Kadian LLC; Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City; Actavis Laboratories FL, Inc. f/k/a Watson Laboratories, Inc.-Florida.

- Cephalon Entities:  Teva Pharmaceutical Industries Ltd.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.

- Janssen Entities:  Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Johnson & Johnson.

- Endo Entities:  Endo Health Solutions Inc.; Endo Pharmaceuticals, Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc. f/k/a Par Pharmaceutical Holdings, Inc.

- Mallinckrodt Entities:  Mallinckrodt plc; Mallinckrodt LLC; SpecGx LLC.

- Insys Therapeutics, Inc.

- Depomed, Inc.

- Indivior, Inc.

- Co-Conspirator Purdue Entities:  Richard S. Sackler; Jonathan D. Sackler; Mortimer D.A. Sackler; Kathe A. Sackler; Ilene Sackler Lefcourt; Beverly Sackler; Theresa Sackler; David A. Sackler; Rhodes Technologies; Rhodes Technologies Inc.; Rhodes Pharmaceuticals L.P.; Rhodes Pharmaceuticals Inc.; Trust for the Benefit of Members of the Raymond Sackler Family; The P.F. Laboratories, Inc.

- Non-Defendant, Co-Conspirator Purdue Entities:  Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company, Inc.

(2)     DISTRIBUTOR DEFENDANTS

- Cardinal Health, Inc.

- AmerisourceBergen Drug Corp.

- Mckesson Corporation

- Anda, Inc.

- H. D. Smith, LLC d/b/a HD Smith f/k/a H. D. Smith Wholesale Drug Co.; H. D. Smith Holdings, LLC; H. D. Smith Holding Company

- Discount Drug Mart, Inc.

- Prescription Supply, Inc.

    (3)    PHARMACY DEFENDANTS

- HBC Service Company

- CVS Health Corporation; CVS Indiana, LLC; CVS Rx Services, Inc.

- Rite Aid Corporation; Rite Aid of Maryland, Inc.; Rite Aid of Maryland, Inc. d/b/a Rite-Aid Mid-Atlantic Customer Support Center, Inc.

- Walgreen Co.; Walgreens Boots Alliance, Inc.; Walgreen Eastern Co.

- Wal-Mart Inc. f/k/a Wal-Mart Stores, Inc.

- Miami-Luken, Inc.

- Costco Wholesale Corporation

  C.    CLAIMS

1. First Cause of Action – Violation of RICO, 18 U.S.C. § 1961 *et seq.* – Opioid Marketing Enterprise (against only Defendants Cephalon Entities, Janssen Entities, Endo Entities, and Mallinckrodt Entities (the "RICO Marketing Defendants").

2. Second Cause of Action – Violation of RICO, 18 U.S.C. § 1961 *et seq.* – Opioid Supply Chain Enterprise (against only Defendants Cephalon Entities, Endo Entities, Mallinckrodt Entities, Actavis Entities, McKesson, Cardinal, and AmerisourceBergen (the "RICO Supply Chain Defendants").

3. Third Cause of Action — Negligence.

4. Fourth Cause of Action — Negligence *Per Se*.

5. Fifth Cause of Action — Civil Battery.

6. Sixth Cause of Action — Civil Conspiracy.

1. RELIEF REQUESTED – *See* ¶ 1.D. above.

**3.**    **CLASS 4 – California Statewide Class**

A.    DEFINITION

(1)    Legal Guardians[11] of residents born after March 16, 2000, who were medically diagnosed with opioid-related NAS[12] at or near birth and whose birth mother received a prescription for opioids or opiates prior to the birth and those opioids or opiates were manufactured, distributed, or filled by a Defendant or Purdue entity.  Excluded from the class are any infants and children who were treated with opioids after birth, other than for pharmacological weaning.  Also excluded from the class are legal guardianships where a political subdivision, such as a public children services agency, has affirmatively assumed the duties of "custodian" of the child.[13]

(2) Legal Guardians[14] of California residents born after March 16, 2000, who were medically diagnosed with opioid-related NAS at or near birth and whose birth mother received and/or filled a prescription for opioids or opiates in the 10 months prior to the birth of said infant or child and those opioids or opiates were manufactured, distributed, or filled by a Defendant or Purdue entity.[15]

(3) Legal Guardians[16] of California residents born after March 16, 2000, who were medically diagnosed with opioid-related NAS at or near birth and whose birth mother

---

[11]  The term "Legal Guardian" is further defined for purposes of this putative class action as "any natural person or entity who has the primary legal responsibility under law for an infant or child's physical, mental, and emotional development."  Expressly excluded from the class of "Legal Guardians" are any governmental entities.

"Legal Guardians" include natural and adoptive parents who have not otherwise lost legal custody of their children, legal custodians, legal caretakers, and court-appointed guardians (including guardians of the person), whether temporary or permanent.

[12]  The term "NAS" (Neonatal Abstinence Syndrome) is defined to include additional, but medically symptomatic identical, terminology and diagnostic criteria, including Neonatal Opioid Withdrawal Syndrome (NOWS) and other historically and regionally used medical and/or hospital diagnostic criteria for infants born addicted to opioids from *in utero* exposure.  Additional specifics on these readily identifiable and ascertainable terms are set forth in the accompanying Consolidated Memorandum of Law.

[13]  There are only two causes of NAS: (1) *in utero* exposure to opioids via the birth mother, and (2) post-birth treatment of the infant with opioids for pain.  The latter category does not include pharmacological weaning for dependency, as those infants are *[footnote continued next page]* necessarily part of the former category, i.e., infants who were exposed *in utero* and then treated with opioids pursuant to a weaning protocol of gradually tapering doses.  Whether a newborn or an infant was treated with opioids for pain can be determined from medical records.  Any such children are necessarily excluded from the class definition.

[14]  The term "Legal Guardian" is defined at fn. 11.

[15]  Defined in the "Non-Defendant Co-Conspirator Purdue Entities" and "Defendant Co-Conspirator Purdue Entities" sections, *infra*.

[16]  The term "Legal Guardian" is defined at fn. 11.

received a prescription for opioids or opiates prior to the birth and those opioids or opiates were manufactured, distributed, or filled by a Defendant or Purdue entity.[17]

    B.    DEFENDANTS – *See* ¶ 2.B. above.

    C.    CLAIMS

        1.    First Cause of Action – Violation of RICO, 18 U.S.C. § 1961 *et seq.* – Opioid Marketing Enterprise (against only Defendants Cephalon Entities, Janssen Entities, Endo Entities, and Mallinckrodt Entities (the "RICO Marketing Defendants").

        2.    Second Cause of Action – Violation of RICO, 18 U.S.C. § 1961 *et seq.* – Opioid Supply Chain Enterprise (against only Defendants Cephalon Entities, Endo Entities, Mallinckrodt Entities, Actavis Entities, McKesson, Cardinal, and AmerisourceBergen (the "RICO Supply Chain Defendants").

        3.    Third Cause of Action — Negligence.

        4.    Fourth Cause of Action — Negligence *Per Se*.

        5.    Fifth Cause of Action — Violations of the Unfair Competition Law.

    D.    RELIEF REQUESTED

        1.    Order Defendants to provide for the benefit of the Plaintiff Legal Guardians and the Putative Class Members ongoing medical monitoring, testing, intervention, provision of caregiver training and information, and medical referral, all of which are medically necessary for the NAS Children in their care, and all future medical care reasonably necessary to treat these children. Any injunctive relief to which Plaintiffs may justly show themselves entitled, including injunctive relief designed to reduce the incidence of children born with NAS.

        2.    Order creation of a Science Panel.

        3.    Alternatively, all incidental compensatory damages and medical expenses incurred by Plaintiff Legal Guardians and the Putative Class Members in connection with their care of the NAS Children. It is expressly alleged that all compensatory damages sought in the alternative are incidental to the injunctive relief requested by Plaintiffs and the Class, and are for those caused by the *in utero* exposure to opioids and NAS diagnosis suffered by the NAS Children.

        4.    Disgorgement and other relief pursuant to the Unfair Competition Law.

        5.    Punitive damages.

---

[17] Defined in the "Non-Defendant Co-Conspirator Purdue Entities" and "Defendant Co-Conspirator Purdue Entities" sections, *infra*.

      6.    Attorneys' fees and costs incurred by Plaintiff Legal Guardians and the Putative Class Members.

**4.    ALTERNATIVE CLASSES**

    a.    Legal Guardians[18] of Ohio residents born after May 9, 2000, who were medically diagnosed with opioid-related "Neonatal Abstinence Syndrome" ("NAS") at or near birth and whose birth mother received a prescription for opioids or opiates either (1) prior to the birth or (2) ten months prior to the birth and those opioids or opiates were manufactured or distributed by one or more of the "Cephalon Defendants";[19]

    b.    Legal Guardians[20] of Ohio residents born after May 9, 2000, who were medically diagnosed with opioid-related "Neonatal Abstinence Syndrome" ("NAS") at or near birth and whose birth mother received a prescription for opioids or opiates either (1) prior to the birth or (2) ten months prior to the birth and those opioids or opiates were manufactured or distributed by one or more of the "Endo Defendants";[21]

    c.    Legal Guardians[22] of Ohio residents born after May 9, 2000, who were medically diagnosed with opioid-related "Neonatal Abstinence Syndrome" ("NAS") at or near birth and whose birth mother received a prescription for opioids or opiates either (1) prior to the birth or (2) ten months prior to the birth and those opioids or opiates were manufactured or distributed by one or more of the "Mallinckrodt Defendants";[23]

    d.    Legal Guardians[24] of Ohio residents born after May 9, 2000, who were medically diagnosed with opioid-related "Neonatal Abstinence Syndrome" ("NAS") at or near birth and whose birth mother received a prescription for opioids or opiates either (1) prior to the birth or (2) ten months prior to the birth and those opioids or opiates were manufactured or distributed by one or more of the "Actavis Defendants";[25]

    e.    Legal Guardians[26] of Ohio residents born after May 9, 2000, who were medically diagnosed with opioid-related "Neonatal Abstinence Syndrome" ("NAS") at or near birth and whose birth mother received a prescription for opioids or opiates either (1) prior to the birth or (2) ten months prior to the birth and those opioids or opiates

---

[18] The term "Legal Guardian" is defined at fn. 1.

[19] Defined in the "Manufacturer Defendants" section, *supra*.

[20] The term "Legal Guardian" is defined at fn. 1.

[21] Defined in the "Manufacturer Defendants" section, *supra*.

[22] The term "Legal Guardian" is defined at fn. 1.

[23] Defined in the "Manufacturer Defendants" section, *supra*.

[24] The term "Legal Guardian" is defined at fn. 1.

[25] Defined in the "Manufacturer Defendants" section, *supra*.

[26] The term "Legal Guardian" is defined at fn. 1.

    were manufactured or distributed by one or more of the "Janssen Defendants";[27]

  f. Legal Guardians[28] of Ohio residents born after May 9, 2000, who were medically diagnosed with opioid-related "Neonatal Abstinence Syndrome" ("NAS") at or near birth and whose birth mother received a prescription for opioids or opiates either (1) prior to the birth or (2) ten months prior to the birth and those opioids or opiates were manufactured or distributed by one or more Defendant or Purdue entity.[29]

---

[27] Defined in the "Manufacturer Defendants" section, *supra*.

[28] The term "Legal Guardian" is defined at fn. 1.

[29] Defined in the "Non-Defendant, Co-Conspirator Purdue Entities" and "Defendant Co-Conspirator Purdue Entities" sections, *supra*.