# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.,*<br>Case No. 18-op-45090 (N.D. Ohio)<br><br>*The County of Cuyahoga, Ohio, et al. v. Purdue Pharma L.P., et al.,*<br>Case No. 17-op-45004 (N.D. Ohio)<br><br>"Track One-B Cases" | **MDL No. 2804**<br>**Case No. 17-md-2804**<br>**Judge Dan Aaron Polster** |

**PHARMACY DEFENDANTS' MOTION TO COMPEL LIMITED ADDITIONAL DATA FROM THE OHIO BOARD OF PHARMACY'S OARRS DATABASE**

**INTRODUCTION**

The Pharmacy Defendants[1] served a subpoena (the "Subpoena") on the Ohio Board of Pharmacy (the "Board"), seeking limited but critical additional data from the prescription monitoring database that the Board maintains, the Ohio Automated Rx Reporting System ("OARRS").  The Board refused to comply.  The Pharmacy Defendants' Subpoena seeks just two datapoints—the identity of the prescribers and of the pharmacies/dispensers—associated with the prescription data the Board produced in Track 1A.  The Subpoena does not seek patient information such as name, address, or date of birth, which the Pharmacy Defendants agree is protected health information of the utmost sensitivity.  However, the prescriber and dispenser data in question is critical to the Pharmacy Defendants' ability to defend against Plaintiffs' new dispensing claims.  In fact, this Court has already said—more than once—that the Pharmacy Defendants are entitled to that data.  *See* 12/4/19 Hr'g Tr. 49:1-10 ("[Y]ou can get that data….[The Pharmacy Defendants] can defend the case that way."); 12/27/19 Order on Reconsideration, Dkt. 3055 at 3 ("The Court agrees that third-party discovery of the OARRS database may be helpful and necessary…").

Without the additional data, it is impossible to identify where any prescription in the OARRS database was filled, including the roughly 46 percent of the dispensing market in Track 1 that Plaintiffs have not sued, and which, under Plaintiffs' litigation theory, may be largely or even entirely responsible for the alleged harms Plaintiffs claim to have suffered due to the filling

---

[1] "Pharmacy Defendants" are CVS Rx Services, Inc., CVS Indiana, L.L.C., CVS Pharmacy, Inc., and Ohio CVS Stores, L.L.C. ("CVS"), Rite Aid of Maryland, Inc., d/b/a Mid-Atlantic Customer Support Center, Rite Aid of Ohio, Inc., and Rite Aid Hdqtrs. Corp. ("Rite Aid"), Walgreen Co. and Walgreen Eastern Co. ("Walgreens"), HBC Service Company, an unincorporated operating division of Giant Eagle, Inc. ("Giant Eagle"), Discount Drug Mart ("DDM"), and Walmart Inc. ("Walmart").

of improper prescriptions.² The absence of such data also makes it impossible to identify the physicians who wrote those prescriptions. The Pharmacy Defendants need dispenser and prescriber information for all prescriptions in the OARRS database, in order to defend against Plaintiffs' claims.

This information is not only indisputably relevant, it may absolve the Pharmacy Defendants completely. It also is uniquely in the hands of the Board. There is no burden to producing it. Indeed, the Board already *has* produced the data, but with the requested fields anonymized, and therefore effectively excluded. All the Pharmacy Defendants ask is for the Board to make an updated production of that exact same data with the requested fields included. The Court should grant the Pharmacy Defendants' motion.

## BACKGROUND

The Board is charged with regulating the practice of pharmacy and the legal distribution of drugs in Ohio. As part of those duties, the Board has developed and maintains OARRS. OARRS consists of two databases: a patient database that contains records of all controlled substances dispensed to outpatients, and an ARCOS-like database that contains records of shipments of those medications by wholesalers and others. This motion concerns only the former.

The OARRS patient database includes the following information about all controlled substance prescriptions filled in Ohio:

> 1. Date prescription is filled;
> 2. Prescription number;
> 3. Date prescription written;
> 4. Quantity;

---

² This percentage of the market is based on morphine milligram equivalents of prescription opioids received by all dispensers, as reported in the ARCOS data. The ARCOS data says nothing about prescriptions filled by any pharmacy or other dispenser.

3

>5. Number of refills;
>6. Days' supply;
>7. NDC code;
>8. Payment type;
>9. Pharmacy name and address;
>10. Pharmacy number (assigned by the Board) and Business Activity Codes and Subcodes;
>11. Physician name and address;
>12. Physician number (assigned by the Board) and Business Activity Codes and Subcodes; and
>13. Patient name, sex, address, age, and condition.

In Track 1A—before Plaintiffs amended their complaints to add dispensing claims against the Pharmacy Defendants—McKesson served a subpoena for *all* OARRS data, including patient-identifying information that the Pharmacy Defendants do not seek.  Initially, the Board refused to comply, citing privacy and confidentiality concerns.  McKesson moved to compel.  The Court denied McKesson's motion.  Following that ruling, however, McKesson and the Board continued to meet and confer, and the Board ultimately produced statewide OARRS data from 2008 to 2018, identifying all of the information listed above ***except*** pharmacy name and address; pharmacy number; physician name and address; physician number; and patient name, address, and condition.  In place of patient names, the Board produced data identifying patients by a unique number, allowing the same patient to be followed from prescription to prescription.

It is undisputed, however, that the produced OARRS data cannot be used to identify the pharmacy that filled any prescription or the doctor who wrote any prescription.

At the time this data was produced, the only claims pending against the Pharmacy Defendants related to their distribution of prescription opioids to their own stores, not their dispensing practices.  On November 20, 2019, following the workup for trial of the distribution claims, the empaneling of a jury, and the eve-of-trial settlement of all but one of the remaining non-severed defendants in Track 1, the Court allowed Plaintiffs to amend their complaints to add

4

dispensing claims. Plaintiffs now allege, for the first time, that the Pharmacy Defendants filled improper prescriptions, and that doing so was a public nuisance that contributed to the opioids crisis in Cuyahoga and Summit counties.

Yet, according to the ARCOS data, the Pharmacy Defendants make up just 54 percent of the dispensing market in those two counties between 2006 and 2014. The Pharmacy Defendants have no information at all about most of the prescribers, prescriptions, or dispensing practices associated with the pharmacies and other dispensers that make up the other 46 percent of the market. Those non-defendant dispensers received 273 million dosage units of pharmaceutical opioids between 2006 and 2014, according to ARCOS data.

On December 2, the Pharmacy Defendants served a subpoena on the Board seeking, among other things, the limited additional OARRS data at issue here, i.e., data identifying the dispensers and prescribers associated with the millions of opioids prescriptions in Cuyahoga and Summit Counties that the Pharmacy Defendants did not fill. The Board objected, raising privacy concerns similar to those the Board raised in response to McKesson's previous, much broader, motion to compel.

By contrast to the Board's position here, on December 13, 2019, in related state-court opioids litigation, the state of New York voluntarily produced data from its own prescription monitoring program, I-STOP, including prescriber and dispenser data similar to what the Pharmacy Defendants seek here. The produced I-STOP data covers the entire timeframe that New York's prescription monitoring program has been in effect.

The Pharmacy Defendants met and conferred with the Board multiple times, but the Board refused to produce any additional OARRS data. The Pharmacy Defendants therefore bring this motion to compel, seeking production of prescriber and dispenser information from the

5

OARRS database, as well as a general update of the Board's previous production from OARRS, to cover the entire timeframe of 2006 to the present.  The Pharmacy Defendants agree that the Board may designate the production under the Court's existing HIPAA Protective Order.

**STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1). The rules allow for inquiry into the affairs of both litigants and third parties. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 30 (1984) (emphasis added).  Thus, "[a] command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials."  Fed. R. Civ. P. 45(a)(l)(D).

Under Rule 45, the party refusing to comply bears the burden of showing good cause. 9A C. Wright & A. Miller, Fed. Prac. & Proc. Civ. §2463.2 (3rd ed. Sept. 2017).  "At any time, on notice to the commanded person, the serving party may move the court ... for an order compelling production or inspection," Fed. R. Civ. P. 45(d)(B)(i), and the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena," Fed. R. Civ. P. 45(g).

# ARGUMENT

### I. The Pharmacy Defendants Have Shown a Substantial Need for the Limited Additional Data Requested from the OARRS Database.

The Pharmacy Defendants cannot fairly defend themselves against Plaintiffs' public nuisance claims without the limited additional information sought from OARRS. OARRS is the only source for identifying the doctors and dispensers associated with each opioid prescription filled in Ohio. That information is necessary to show widespread alternative causes of the alleged nuisance, e.g., the large number of "over-prescribers," "pill mills," and other dispensers Plaintiffs chose not to sue.[3]

Indeed, the Court recognized the Pharmacy Defendants' need for this data to show alternative causation at the most recent Case Management Conference. The Court stated, "you can get that data and you can run things and you can put in that, hey, those are the people who caused the public nuisance, not us….You're free to do that….[The Pharmacy Defendants] can defend the case that way." 12/4/19 Hr'g Tr. 49:1-10; *see also* Dkt. 3055 at 3 ("discovery of the OARRS database may be helpful and necessary"). The Pharmacy Defendants cannot do that, however, unless the Court orders the Board to produce the requested information.

The OARRS data is also necessary to identify "doctor shoppers." Importantly, the Board has already anonymized patient names (and other patient-identifying information) in the data that it previously produced. The produced OARRS data identifies each patient by a unique number

---

[3] For example, the OARRS data is necessary to identify the dispensing practices of "pill mills" such as those that recently closed in Scioto County, and the prescribing practices of the criminal doctors associated with those pill mills, both of which clearly contributed to the opioids crisis. *See* John Caniglia, *An end of an era: Pill mills close, but deadly effects linger*, Cleveland Plain Dealer (Dec. 1, 2019) *and* John Caniglia, *Key players convicted in Scioto County's pill mills*, Cleveland Plain Dealer (Dec. 1, 2019), *both available at* https://www.cleveland.com/news/2019/12/the-end-of-an-era-pill-mills-are-gone-at-ohios-opioid-epicenter-but-crisis-continues.html.

that travels with that patient from prescription to prescription, doctor to doctor, pharmacy to pharmacy.  By contrast, the Pharmacy Defendants' own data contains only their own dispensing information.  Therefore, the parties will not be able to use the Pharmacy Defendants' dispensing data to identify patients who filled prescriptions at multiple pharmacies—or prescribers who wrote multiple prescriptions for such patients.

***OARRS is the only dataset anywhere that allows the tracing of individuals across doctors and pharmacies.***  Therefore, it is the only dataset that allows the identification of doctor shoppers who sought pills from multiple places, as well as the over-prescribers who wrote those patients' prescriptions.  Identifying those patients and prescribers is a primary purpose of OARRS.  *See* https://www.ohiopmp.gov/About.aspx.

The Pharmacy Defendants need statewide OARRS data, because this Court has ordered that the Track 1 Plaintiffs may use the Pharmacy Defendants' statewide dispensing data against them.  *See* Dkt. 3055 at 4.  Likewise, the Pharmacy Defendants need OARRS data from 2006 to the present, because that is the temporal scope of the data that the Court has ordered the Pharmacy Defendants to produce.  *Id.*

**II.  The Board Cannot Show Good Cause for Noncompliance with the Subpoena.**

The Pharmacy Defendants' need for this limited additional data swamps any basis for withholding it.  First, it is indisputably, critically relevant, and potentially even case dispositive.  The data may well show that any public nuisance relates to non-party dispensing or prescribing conduct, not the conduct of any of the Pharmacy Defendants.

Second, there is little burden to the Board in producing it.  The Board already has pulled the data in question, taken the extra step of anonymizing it, and produced it in this litigation.  In fact, the Board conceded in its previous opposition to McKesson's motion to compel that the

8

Board pulls OARRS data routinely, every few months, for research purposes.  All the Pharmacy Defendants ask is that the same data previously produced be updated and reproduced with the *pharmacy* and *prescriber* fields included.

Third, the privacy concerns raised by the Board in opposition to McKesson's previous motion to compel, though certainly real and substantial, cannot bar production here.  The Court has ordered the Pharmacy Defendants to produce their own dispensing data, over objection, holding that any privacy concerns are adequately addressed by the Court's HIPAA Protective Order.  If the Pharmacy Defendants are required to produce their own dispensing data under those circumstances, they should also be entitled to OARRS data (also under the applicable Protective Order) to defend against Plaintiffs' claims.

Finally, the Pharmacy Defendants do not seek patient identifying information such as patient name, address, or date of birth.  Moreover, the fact that the Board has already produced much of the information in the OARRS database, despite this Court's denial of McKesson's motion to compel, coupled with the State of New York's production of its own prescription monitoring data in related state court proceedings—including the same type of data the Pharmacy Defendants seek here—undercuts any argument that the Board is prevented from making this limited additional production.

## CONCLUSION

Because the benefit substantially outweighs any burden from producing the limited data sought, the Pharmacy Defendants ask this Court to order the Board to reproduce the OARRS data, identifying the prescribers and pharmacies associated with the dispensing data the Board has already produced.

Dated: January 8, 2020

Respectfully submitted,

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlitbeck.com
E-mail: kate.swift@bartlitbeck.com

*Attorneys for Walgreen Co. and Walgreen Eastern Co.*

/s/ Tina M. Tabacchi
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Rx Services, Inc., CVS Indiana, L.L.C., CVS Pharmacy, Inc., and Ohio CVS Stores, L.L.C.*

10

/s/ Kelly A. Moore
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Attorneys for Rite Aid of Maryland, Inc., d/b/a Mid-Atlantic Customer Support Center, Rite Aid of Ohio, Inc., and Rite Aid Hdqtrs. Corp.*

/s/ Timothy D. Johnson
Timothy D. Johnson
Gregory E. O'Brien
CAVITCH FAMILO & DURKIN, CO. LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, OH 44114
Phone: (216) 621-7860
Fax: (216) 621-3415
Email: tjohnson@cavitch.com
Email: gobrien@cavitch.com

*Attorneys for Discount Drug Mart, Inc.*

/s/ Robert M. Barnes
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com

11

E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for HBC Service Company*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record on January 8, 2020.

/s/ *Katherine M. Swift*
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kate.swift@bartlit-beck.com

*Attorneys for Walgreen Co. and Walgreen Eastern Co.*