# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) ) ) | **CASE NO. 1:17-MD-2804** |
| | ) | **SPECIAL MASTER COHEN** |
| **THIS DOCUMENT RELATES TO:** | ) ) | |
| *"All Cases"* | ) ) ) ) ) | ***REVISED*** **DISCOVERY RULING NO. 14, PART 10 REGARDING H.D. SMITH PRIVILEGE CLAIMS** |

The undersigned recently issued *Discovery Ruling No. 14, Part 10*, which addressed H.D. Smith's claims of attorney-client privilege and work-product status regarding three documents. *See* docket no. 2968 (discussing the "B&T Memo," the "First Clawback Document," and the "Second Clawback Document"). The *Ruling* concluded H.D. Smith did not carry its burden of showing any of the documents were privileged; therefore, H.D. Smith could "not withhold any of these documents from discovery." *Id.* at 1.

H.D. Smith timely filed objections, *see* docket no. 2981. Because these objections mentioned important factual information that had not been earlier presented, the undersigned directed the parties to suspend further briefing and asked H.D. Smith to provide additional "context documents" for *in camera* review.

After careful re-consideration, the Special Master now concludes the additional "context documents" show that the three withheld documents were created in anticipation of litigation by or for H.D. Smith or its counsel. Accordingly, the documents qualify as work-product. In addition, the B&T Memo qualifies as attorney-client privileged material. Therefore, H.D. Smith may claw back the two "Clawback Documents" and may withhold the B&T Memo from discovery. The

Special Master's reasoning follows.

I.      **New Information.**

As noted, in comparison to the evidentiary record available to the Special Master when the original *Ruling* was filed, H.D. Smith has since provided ten additional "context documents" for *in camera* review.  Moreover, H.D. Smith provided to the Court, with its objection, at least one document it had not provided to the Special Master – although H.D. Smith briefly ***mentioned*** in an earlier submission to the Special Master that it had received an Administrative Inspection Warrant from the DEA on December 1, 2011, H.D. Smith only ***produced*** this Warrant when it filed it as an exhibit to its objections.  *See* docket no. 2981-3.  Having now read the Warrant, the Special Master understands H.D. Smith's claim that the documents at issue were created in anticipation of litigation; before, this assertion was simply conclusory.  Furthermore, some of the "context documents" discuss how H.D. Smith responded to and thought about this warrant.  All of this new evidence provides a much more complete picture of events surrounding the three discovery documents at issue.

Beyond the additional documents provided by H.D. Smith, the explanation and argument provided to the Court in H.D. Smith's objections also exceed the explanation and argument earlier provided to the Special Master in important ways.  For example, in its earlier submission to the Special Master, H.D. Smith's description of ongoing litigation was entirely cursory: "Critically, H.D. Smith requested the B&T Memo [from counsel] as it was in the midst of . . . litigating the *Safescript* case in the Eastern District of Michigan . . . ."  Docket no. 2981-5 at 1.  H.D. Smith did not even provide a citation for the *Safescript* case, much less describe what it was about.  In contrast, in its subsequent objection, H.D. Smith: (1) cited two different opinions from the *Safescript*

2

litigation (allowing the Special Master to find and read them); (2) explained that "the *Safescript* litigation . . . expressly involved the sufficiency of its due diligence efforts including, but not limited to, its suspicious order monitoring program;" and (3) provided even more detail by disclosing that, "at the time the B&T Memorandum was prepared," pending in *Safescript* was a summary judgment motion that "implicated H. D. Smith's due diligence program and its obligation to report suspicious orders." Objections at 4 & 4 n.5 (docket no. 2981). These contextual details, which were absent when the Special Master filed his initial *Ruling*, do not merely supply sharper focus on the evidentiary picture. They literally add weight to one side of the scale, changing the balance on whether H.D. Smith carried its burden of proof.

Indeed, the Special Master would be entirely justified – and is sorely tempted – to ***not*** revise his *Ruling*. Almost a year ago, after the Special Master issued *Discovery Ruling No. 14, Part 1*, Walgreens and Cardinal filed objections and "submitted new evidence, case law, and arguments not first provided to Special Master Cohen for his consideration." Order at 1 (docket no. 1349). The Court directed the Special Master to review this new information, but also issued a clear warning:

> One of the primary purposes of appointing special masters in this litigation was to "assist the Court with mediating resolution of any part of the parties' disputes." Doc. #: 69 at 2. Submitting new evidence, case law, or legal theories to the Court for *de novo* review in an objection to a special master's ruling without first submitting them to the special master undermines this purpose and wastes judicial resources. Therefore, going forward, the Court will strike any party's objection to a special master's ruling that raises, for the first time before the Court, new evidence or legal theories not first provided to the special master for consideration.

*Id.* at 2. Strict adherence to this warning would require the undersigned to ignore H.D. Smith's new evidence and clarified explanations, and stick with the initial conclusion that H.D. Smith "has not carried its burden of showing any of the three Documents are attorney work product." *Ruling* at 5

3

(docket no. 2968); *see id.* at 2 ("[t]he burden of establishing the existence of [attorney-client] privilege rests with the person asserting it") (quoting *United States v. Dakota*, 197 F.3d 821 at 825 (6th Cir. 2000)).

The Special Master concludes, however, that the better course is to consider H.D. Smith's late-supplied evidence and arguments and rule on the merits, rather than stand on procedure. Frankly, it is too hard *this time* for the undersigned to "purposefully ignore" information and rule contrary to the record. But the Special Master warns the parties (again) that it is their duty to carry fully their burdens of persuasion and production at the outset when presenting issues to the undersigned, and the Special Master will no longer ask for additional context or explanation after having filed a *Ruling*.

**II.     Analysis.**

Obviously, the instant revised *Ruling* cannot discuss in detail the "context documents" supplied *in camera* by H.D. Smith, because they are themselves attorney-client privileged and/or work product. It suffices to say, however, that the additional evidence submitted to the Special Master shows the three discovery documents at issue "can fairly be said to have been prepared or obtained because of the prospect of litigation." *Fed. Trade Comm'n v. Abbvie, Inc.*, 2015 WL 8623076 at *4 (E.D. Pa. Dec. 14, 2015) (quoting *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3rd Cir. 1993)). The affidavit in support of the DEA's Administrative Inspection Warrant avers that "there is probable cause to believe that HD Smith has not established effective controls to prevent the diversion of controlled substances as required in 21 CSA, Section 823." Docket no. 2981-3 at 6. Together with H.D. Smith's explanation of the then-ongoing *Safescript*

4

litigation, other "context documents" reflect subjective and objectively reasonable concern that the DEA's warrant inspection might lead to litigation. *See Abbvie*, 2015 WL 8623076 at *4 ("The court considers the author's subjective state of mind and whether the anticipation of litigation is objectively reasonable."). For example, these documents discuss meetings that H.D. Smith's executives and outside counsel had with Linden Barber, DEA's Regional Diversion Counsel, and strategize how to prevent the matter from escalating. In context, the B&T Memo is essentially a presentation by counsel to client of terms that might be included in a settlement offer: it identifies methods to improve H.D. Smith's SOMS that could placate Barber and the DEA. The First and Second Clawback Documents reflect H.D. Smith's internal discussions and assessment of the suggested terms. These three documents are therefore privileged – the Clawback documents qualify as work-product, while the B&T Memo is an attorney-client privileged communication.[1]

To be clear, the Special Master reiterates he was able to reach his current conclusions only after H.D. Smith provided additional information. Regarding the B&T Memo, for example, the Special Master still believes the following description and analysis from the original *Ruling* were entirely accurate when made:

> Smith's assertion that these Documents were prepared "in the midst of" litigation, however, is entirely bare. This assertion alone is not sufficient to satisfy Smith's burden of demonstrating the three Documents are entitled to work-product protection. The Special Master's review of the Documents reveals that they refer unambiguously to a straightforward process of review and improvement of Smith's compliance with its DEA obligations. ***The documents themselves do not refer to, or***

---

[1] Pursuant to Fed. R. Civ. P. 26(b)(3)(A)(ii), plaintiffs may still obtain work-product if they can show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." The Special Master expects that plaintiffs will be able to learn through other discovery the particulars of H.D. Smith's SOMS over time, and how and why changes to it were made, including depositions of DEA and H.D. Smith personnel.

> ***even hint that they relate to, any litigation, and Smith offers no other contemporaneous documents suggesting otherwise, either.*** The mere fact that the Documents were created and exchanged contemporaneously with ongoing legal proceedings does not establish they were created in anticipation of litigation or for trial. Smith has not carried its burden of showing any of the three Documents are attorney work product.

*Ruling* at 4-5 (emphasis added).

In closing: as this MDL enters a new phase, with new discovery underway, this *Ruling* provides a fresh reminder to all parties that the Special Master really does assess whether parties have carried their burdens of production, persuasion, and proof. In the future, counsel on all sides should remember this and determine how to bear these burdens at the earliest opportunity, and not expect second chances.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**Dated:** January 8, 2020