**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>*This document relates to:*<br><br>Track One-B Cases | **MDL No. 2804**<br><br>**Case No. 17-md-2804**<br><br>**Judge Dan Aaron Polster** |

**PLAINTIFFS' MOTION TO STRIKE OR SEVER**
**PHARMACY DEFENDANTS' THIRD PARTY COMPLAINT**

The Pharmacy Defendants' ill-founded Third-Party Complaint - yet another delay tactic interposed to prevent a timely trial - should be struck, or at least severed and deferred. Fed. R. Civ. P. 14(a)(4). The pleading convention chosen by the Pharmacies – federally disfavored "Doe" pleading – belies the Pharmacy Defendants' legal duty to identify improper prescriptions and the physicians who write them and not to dispense them without exercising due diligence. That the Pharmacy Defendants cannot now identify even a single doctor whose prescriptions should have been red-flagged but were filled without proper investigation – thus necessitating as many as one thousand Doe Defendants between the two Third-Party Complaints – is stunning.

Without addressing the substance of these new third-party claims, the insertion of as many as one thousand new defendants and five new claims a mere ten months before this carefully streamlined Pharmacy Distributor bellwether trial, weeks before the deadline for production of documents and two months before the fact discovery cutoff, is wholly unworkable. Under Pharmacy Defendants' outlined plan, the putative prescriber defendants would not even be identified for months, since their identification depends on a sequence of events that cannot even begin until the Pharmacy Defendants provide their own data to Plaintiffs, something which, based on Pharmacy Defendants' own

representations, may not occur for months yet. These complications are made more profound considering that those putative prescriber defendants represent an entirely new class of defendants against whom no discovery has yet been taken in the MDL, who have not yet had an opportunity to take their own discovery, and whose inclusion in the bellwether trial would do little to advance the course of the MDL as a whole. Should the Court exercise its discretion to permit impleader of these unknown putative defendants, instead of striking the Third-Party Complaint, Plaintiffs submit that these claims should be severed and deferred.

## I. Pharmacy Defendants' Third-Party Claims Should be Struck or, in the Alternative, Severed and Deferred.

Both the allowance and timing of third-party claims are entirely within trial court's discretion:

> [T]he court has discretion to strike the third-party claim if it is obviously unmeritorious and can only delay or prejudice the disposition of the plaintiff's claim, or to sever the third-party claim or accord it separate trial if confusion or prejudice would otherwise result. This discretion [is] applicable not merely to the cases covered by the amendment where the third-party defendant is brought in without leave, but to all impleaders under the rule . . . .

Fed. R. Civ. P. 14, Advisory Committee Note to 1963 amendments.

In determining "whether third-party claims should be allowed or stricken," courts "generally balance the benefits of allowing the claim to proceed against the potential prejudice to the plaintiff and the defendant in the lawsuit and the third-party defendant." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 237 F.R.D. 679, 681 (N.D. Okla. 2006). Factors courts consider "in the assessment of whether or not the third-party claims should be severed," include

- the potential prejudice to the third-party defendant;
- the potential prejudice to the other parties in the action;
- the status of discovery in the action;
- the delay in seeking impleader.
- judicial efficiency or economy;
- the avoidance of delay in the underlying trial;

• the delay of the third-party plaintiff in asserting the claim; and

• whether or not discovery favors separate trials.

*Oklahoma*, 237 F.R.D. at 681 (citing, *inter alia*, *In re Air Crash Disaster,* 86 F.3d 498 (6th Cir. 1996)) (other citations omitted) (Judicial economy warranted severance and stay of the third-party claims where action was originally brought by two plaintiffs against 14 defendants, while defendants named over 160 third-party defendants and 150 "Doe" defendants including new categories of defendants, and ultimate potential third-party defendants could number in the thousands).

Here, those factors weigh against allowing the third-party claims to proceed at this time and dictate that, at the very least, the claims should be severed and deferred, if not struck in their entirety.

**A. The Third-Party Claims Should be Struck.**

**1. Pharmacy Defendants Improperly Failed to Move for Leave.**

As a threshold matter, the Pharmacy Defendants failed to seek leave of court prior to filing their Third-Party Complaints. Third-Party complaints may only be filed without leave of court within 14 days of a party's "original answer." Fed. R. Civ. P. 14(a)(1). "[G]ranting of leave to implead rests in the discretion of the Court." *Rodeheaver v. Sears, Roebuck & Co.*, 34 F.R.D. 488, 490 (N.D. Ohio 1964).

Here, the Pharmacy Defendants' original answers were due on January 15, 2019. *See* Opinion and Order (Dkt. 1203) at p. 39.[1] While some courts have found that the "original answer" may be an answer to an amended complaint, the basis for impleader in such a case should be that which is new in the amended complaint. *F.T.C. v. Capital City Mortg. Corp.*, 186 F.R.D. 245, 247 (D.D.C. 1999); *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, No. 93 CIV. 3791, 1995 WL 77589, at *7 (S.D.N.Y. Feb. 27, 1995). As discussed in Plaintiffs' Motion for Leave to Amend (Dkt. 2880) and associated Reply (Dkt. 2937), Plaintiffs' dispensing claims against the Pharmacy Defendant families are not new, but date back at

---

[1] While the recent Amendments by Interlineation, in addition to setting out additional factual basis for the dispensing based claims, also further specified some of the entities associated with some of the Defendant families, with regard to other Defendant families – such as Walgreens – no additional related entities were specified. However, *none* of the Defendant families or entities within those families sought leave of Court prior to filing the Third-Party Complaints.

least to Plaintiffs' May 2018 Complaints, though the dispensing claims were ultimately not the focus of the narrowed CT1 trial track. Indeed, Answers certain Pharmacy Defendants filed a year ago address Plaintiffs' dispensing claims. *See e.g.* Pharmacy Defendants Answers to Summit SAC at ¶¶ 607-659: Walgreens (Dkt. 1274); Walmart (Dkt. 1261); CVS (Dkt. 1250); DDM (Dkt. 1260 at ¶¶ 22-24); HBC (Dkt. 1249 at ¶ 4); Rite Aid (Dkt. 1263). Similarly long alleged – and long known – is the fact that many of the prescription opioids filled, distributed, and sold into the Plaintiff counties were excessively prescribed. *See*, *e.g.* Cuyahoga Second Amended Complaint (5.30.2018) (Dkt. 521) at Factual Allegations, § I, H, 2 ("Defendants Actively Promoted Opioids in Cuyahoga County and Were Aware of the Excessive Prescribing Practices That Followed"); *Accord* Cuyahoga Third Amended Complaint (5.10.2019) (Dkt. 1631) at Factual Allegations, § I, H, 2. Additionally, it has been long established in the litigation that the Pharmacy Defendants' distribution activities arose solely from supplying their own pharmacies with opioids for the stated purpose of dispensing those opioids to persons with doctor written prescriptions. As such, the Third-Party Complaints are procedurally improper, untimely, and should be struck.

Even if the Pharmacy Defendants had sought leave of court, leave would properly have been denied because the claims are not meritorious and their addition now would result in delay and prejudice, as set out in Section 2.b, below. *See Rodeheaver v. Sears, Roebuck & Co.*, 34 F.R.D. 488, 490 (N.D. Ohio 1964) (impleader properly denied when addition of new party would delay the trial because the new party would be entitled to (1) object to impleader, (2) move to dismiss, (3) depose parties and witnesses, (4) pursue written discovery, and where the defendant was at least partly culpable in not seeking impleader sooner[2]); *Gen. Elec. Co. v. Irvin*, 274 F.2d 175, 179 (6th Cir. 1960) (delay of trial date

[2] Here, Pharmacy Defendants' have long refused to provide the dispensing data that would have made identification of the putative Prescriber Defendants possible long ago. *See e.g.* Discovery Ruling 8 (10.23.2018) (Dkt. 1055) ("defendants assert, plaintiffs' effort to … obtain all dispensing documents and data, and evidence of all dispensing violations, is overreaching"). Of course, this data – and the red flag tests – have always been available to the Defendants themselves.

alone was a sufficient reason for disallowing third-party complaint); *Colon v. Blades*, 268 F.R.D. 143, 145-46 (D.P.R. 2010) (leave to file third-party complaint properly denied where trial and discovery "delays would be not only foreseeable but inevitable," and where "third-party complaint fail[ed] to state a claim upon which relief can be granted").

**2. The Third-Party Claims Are Not Meritorious and Will Only Serve to Delay or Prejudice the Claims Currently Set for Trial.**

**a. The Third-Party Claims are Not Meritorious.**

The Third-Party Complaints should further be struck because they fail, as a matter of law, to set forth valid claims under the third-party practice requirements of Fed. R. Civ. P. 14.

> Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded. A defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant is therefore the essential criterion of a third-party claim. Correlatively, **a defendant's claim against a third-party defendant cannot simply be an independent or related claim, but must be based upon the original plaintiff's claim against the defendant**. *See Stiber v. United States*, 60 F.R.D. 668, 670 (E.D. Pa. 1973) ("Under Rule 14, the liability of the third-party must be dependent on the outcome of the main claim."). Rule 14(a) does not allow a third-party complaint to be founded on a defendant's independent cause of action against a third-party defendant, even though arising out of the same occurrence underlying plaintiff's claim, because **a third-party complaint must be founded on a third party's actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant**. *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987).

*Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805–06 (6th Cir. 2008) (emphasis added). None of the claims set out in the Third-Party Complaints meet these requirements. Additionally, the counts themselves fail to state proper claims for relief.

1. **Plaintiffs' Claims Against the Pharmacy Defendants Are Independent of the Pharmacies' Third-Party Claims against Prescribers.**

Plaintiffs' claims against the Pharmacy Defendants are not derivative of any potential claims against the putative Prescriber Defendants, but are, instead, independent claims based upon a separate and independent duty.

Pharmacy Defendants' base their third-party claims entirely upon their erroneous allegation that "if the…Pharmacy Chains were found to be found liable . . . it would be only because the pharmacists relied in good faith on facially valid prescriptions written and/or authorized by one of the Prescriber Defendants." Third-Party Complaint at ¶ 37. However, the law makes it clear that is precisely what the Pharmacy Defendants are *not* allowed to do. Rather, their duty is to look beyond the existence of a prescription signed by a doctor or a doctor's representations. If reliance on the prescriber was sufficient, then the "corresponding responsibility" would be entirely superfluous.

"Federal law does not apportion the responsibility for dispensing unlawful prescriptions between a prescribing practitioner and a pharmacist. Rather, Federal law imposes separate and independent duties on the prescriber and the pharmacist." *East Main Street Pharmacy*, 75 Fed. Reg. at 66157, n.30. *See also Medic-Aid Pharmacy,* 55 Fed.Reg. 30,043, 30,044 (DEA July 24, 1990)(internal quotation marks omitted) ("corresponding responsibility… means… that a pharmacist is obligated to refuse to fill a prescription if he knows or has reason to know that the prescription was not written for a legitimate medical purpose."). Both the DEA and Courts have long rejected the proposition that a pharmacist is entitled to simply rely on the prescriber. *See United States v. Henry*, 727 F.2d 1373, 1378–79 (5th Cir.), on reh'g, 749 F.2d 203 (5th Cir. 1984) (rejecting the argument that a pharmacist "must rely on the judgment of the physician" to satisfy its corresponding duty and finding the pharmacist must look beyond representations by the physician to red flags, such as "prescriptions brought in at frequent intervals by the same individual."); *Holiday CVS, LLC*, Fed. Reg. Vol. 77, No. 198 (2012), at 62333 (citing evidence that certain red flags might not be resolvable, even in the face of a written prescription, and evidence that prescribers could be complicit in diversion). "Under Federal law, a

pharmacist is not required to fill a prescription merely because a physician has authorized a prescription . . . ." Order on Hearing Scope and Government Motions Regarding the Respondents' Experts at 8-9, *In the Matter of Holiday CVS, L.L.C.*, Dkt. No. 12-37 and 12-38 (U.S. Dept. Of Justice, Drug Enf't Admin.) (April 13, 2012). To find that a pharmacist simply could rely on the representations of the prescriber, or the existence of a written prescription, in fulfillment of the corresponding duty "would render the corresponding responsibility imposed on registrants under the regulations to be a nullity and … stand[] in conflict with the regulations and Agency precedent." *Id.* at 8-9.

Further, Plaintiffs' claims are not based merely upon the fact that the prescriptions were improperly filled, but that the Pharmacy Defendants failed to have in place and/or utilize effective systems to screen for red flags and failed to perform due diligence to resolve red flags prior to filling prescriptions.

Because the duties owed by pharmacist and prescriber are "separate" and cannot be "apportion[ed]", because a pharmacist is not entitled to merely rely on a prescriber's representation in order to fulfill the corresponding duty, and because the Pharmacy Defendants' failures to implement and utilize effective red flag systems do not hinge on representations made by prescribers, it is a legal fallacy that the prescribers may be held responsible for the Pharmacy Defendants' failures to fulfill their legal duties. Accordingly, the Pharmacy Defendants' third-party claims against the Prescriber Defendants may not appropriately be impleaded under Rule 14. *Am. Zurich Ins. Co.*, 512 F.3d 800, 805–06 (6th Cir. 2008).

**2. The Pharmacy Defendants' Counts Further Fail to State Meritorious Claims.**

**a. Count IV of each Third-Party Complaint Fails to State a Proper Claim for Indemnification and Should be Struck.**

Indemnification is not available to parties, such as the Pharmacy Defendants, whose damages arise from their own affirmative misconduct. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999). Indeed, Ohio law provides that indemnification "'is available only when the party seeking indemnification is an innocent actor whose liability stems from some legal relationship with the truly culpable party. . . .' *Wills Trucking*, 1999 WL 357775, at *3 (*citing Ohio Cas. Ins. Co. v. Ford Motor Co.*, 502 F.2d 138, 140 (6th Cir. 1974))." *Pinney Dock*, 196 F.3d at 620. If the Pharmacy Defendants are, indeed, held liable to the Plaintiffs, it will not be because they were "innocent actor[s]", but because they breached their affirmative duties. Accordingly, the Pharmacy Defendants may not seek indemnification for any judgment issued against them for breach of their duties.

The Pharmacy Defendants' indemnification claims further fail as a matter of law because defendants fail to allege an agreement or relationship between themselves and the Prescriber Defendants that establishes secondary liability. "Indemnity arises from contract, either express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *CSX Transp, Inc. v. Columbus Downtown Dev. Corp.*, 307 F. Supp. 3d 719, 728 (S.D. Ohio 2018) (citing *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987)). "An implied right to indemnification is recognized under Ohio law 'in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other.'" *Id.* (*citing Reynolds v. Physicians Ins. Co.*, 623 N.E.2d 30, 31 (Ohio 1993)). "Secondary liability generally arises in situations, like vicarious liability, where a relationship exists between the tortfeasors that permits one tortfeasor to be held liable for the consequences of the other's actions." *Id.* (citing *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 617

N.E.2d 737, 743 (Ohio Ct. App. 1992)); *see also Reynolds*, 623 N.E.2d at 3 ("Relationships which have been found to meet this standard are the wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant.").

The key to the right of implied indemnification is a relationship in which the tortfeasors owe a "common duty" to the injured party. *CSX Transportation, Inc. v. Columbus Downtown Development Corp.*, 307 F. Supp. 3d 719 (S.D. Ohio 2018). Here, there is no common duty owed to the Plaintiff. Rather, as discussed above, the duties on the prescriber and pharmacist are "separate and independent." *East Main Street Pharmacy*, 75 Fed. Reg. at 66157, n.30.

The Pharmacy Defendants have not alleged any set of facts that entitles them to relief. The Pharmacy Defendants do not allege any express contract or contracts that establish a right to indemnity, nor do they allege facts showing the existence of a relationship establishing secondary liability between themselves and the Prescriber Defendants. Thus, Count IV of the Third-Party Complaints fails to state claims for indemnification and should be struck.

**b. Count V of each Third-Party Complaint Fails to State a Proper Claim for Contribution and Should be Struck.**

Because Plaintiffs have alleged absolute nuisance, *i.e.* that the Pharmacy Defendants' nuisance-creating conduct was intentional and unlawful, Pharmacy Defendants are not entitled to seek contribution. Under Ohio law, contribution is not available for intentional torts. Ohio Rev. Code § 2307.25 ("There is no right of contribution in favor of any tortfeasor against whom an intentional tort claim has been alleged and established."); *Relizon Co. v. Seybold*, No. 3:10-cv-145, 2014 U.S. Dist. LEXIS, at *22 (S.D. Ohio June 26, 2014) (finding that if a party is found liable on an intentional tort claim, "there is no question that [a] contribution claim would be barred by Ohio Revised Code § 2307.25(A)."). Thus, Count V of the Third-Party Complaint fails to state a claim for contribution and should be struck.

**c. Counts I-III of each Third-Party Complaint Fail to State Proper Third-Party Claims and Should be Struck.**

The remaining counts of the Third-Party Complaints (Count I: Negligent Misrepresentation; Count II: Common Law Negligence; and County III: Intentional Fraud) fail to state proper claims for relief under Rule 14. Each is premised on the flawed theory that Pharmacy Defendants were entitled to rely on the representations of the Prescriber Defendants and fails to state a derivative claim for relief. *American Zurich Ins. Co.*, 512 F.3d 800, 805 (6th Cir. 2008) (citations omitted); *Ukasick v. Street (In re Street),* 283 B.R. 775, 780 (Bankr. D. Ariz. 2002) (citing *Hawkins v. Eads (In re Eads),* 135 B.R. 387, 395 (Bankr. E.D. Cal. 1991)) ("The third-party defendant's 'liability must be derivative and must flow to the third-party plaintiff.'").

To the extent that Counts I, II and III merely state facts to support the Pharmacy Defendants' claims for indemnity and contribution, they fail for the same reasons that the Pharmacy Defendants' claims for indemnity and contribution fail. Accordingly, Counts I-III of the Third-Party Complaints fail to meet the requirements of Rule 14 and should be struck.

**2. The Third-Party Claims Will Improperly Delay and Prejudice the Plaintiffs' Claims**

The Third-Party Complaints should also be struck because the addition of as many as (or more than) 1,000 new defendants who have never participated in offensive or defensive discovery and five new claims a mere ten months before trial, weeks before the deadline for production of documents and two months before the fact discovery cutoff, will result in improper delay and undue prejudice.

Where third-party claims will overly complicate the current litigation and/or delay the trial, a Court may exercise its discretion to strike the third-party claims. *See e.g.*, *Laborers' Dist. Council Pension & Disability Trust Fund No. 2 v. Geofreeze, Inc.*, 298 F.R.D. 300, 302-04 (D. Md. 2014) (court exercised discretion to strike third party claims for fraud in the inducement and negligent misrepresentation where factual dichotomy existed between those claims and the pending claim for unpaid employer

contributions, such that Court would be conducting dual proceedings resulting in excessive complications, additional expense to Plaintiffs, and delay of disposition of Plaintiffs' claims); *Hensley v. U.S.*, 45 F.R.D. 352, 353 (D. Mont. 1968) (court may properly "strike a third-party complaint … because the court might deem that under the circumstances of a particular case it would be unfair to delay the trial of the principal case until the third-party defendant was ready for trial, or unfair to push the third-party defendant into an immediate trial."); *Railey v. Southern Ry. Co.*, 31 F.R.D. 519, 523 (E.D. S.C. 1963) (third-party complaint dismissed where different legal claims and standards were at issue); *McPherrin v. Hartford Fire Ins. Co.*, 1 F.R.D. 88, 90 (D. Neb. 1940) (court vacated its earlier order to implead stating: "Suffice it to say that the third party procedure in this case: (a) Complicates the procedure. (b) Has delayed and will delay a speedy trial. (c) Adds expense to the litigation.").

Here, the putative prescriber defendants (currently named only as Doe Defendants) would not even be identified for months, based on the Pharmacy Defendants' representation that it will take months of additional time to provide their Ohio dispensing data to Plaintiffs. These putative prescriber defendants represent an entirely new class of defendants against whom no discovery has yet been taken in the MDL and who have not yet had opportunity to take their own discovery, and whose inclusion in the bellwether trial would do little to advance the course of the MDL as a whole. Additionally, these putative Prescriber Defendants are individuals - not national defendants - and their inclusion in the deliberately streamlined pharmacy distributor bellwether trial would do little to advance the course of the MDL. Accordingly, the Third-Party Complaints should be struck as part of the Court's case management discretion.

**B. Alternatively, the Third-Party Claims Should be Severed and Deferred.**

Should the Court exercise its discretion to permit the third-party claims to stand at this time, the claims should properly be severed and deferred until after completion of the October 2020 Track One-B trial. Severance of the third-party claims into a later trial or track would be entirely consistent with the role intended for this Court in shepherding the MDL and bellwether litigation by the JPML. *See* Transfer Order, Dkt. #1 (recommending that the transferee judge "establish different tracks for the different types of parties or claims.") *See also* Fed. R. Civ. P. 21 ("The Court may also sever any claim against a party.").[3]

Because insertion of the third party claims at this time would cause significant delay, would derail the current discovery schedule and trial setting, would add additional complication through the introduction of hundreds (if not thousands) of new defendants and as many as five new claims, and would prejudice efficient trial of the current pending claims, the third-party claims should properly be severed and deferred. *See Kosters v. Seven-Up Co.*, 595 F.2d 347, 355-56 (6th Cir. 1979) (court properly severed third-party claim for separate trial given the confusion that surrounded the questions of indemnity and contribution and the difficulty of clarifying the factors that the jury would have to consider); *In re Air Crash Disaster*, 86 F.3d 498, 517-18 (6th Cir. 1996) (court "properly exercised discretion" to sever third-party claims and adhere to original discovery schedule where defendant filed third-party claims on the last day such filing was permitted, allowing third party claims would have thwarted court's trial date goal, and defendant could pursue its contribution or indemnity claims in a subsequent action); *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 237 F.R.D. 679, 682-84 (N.D. Okla. 2006) (judicial economy warranted severance of the third-party claims were action was originally brought by two plaintiffs against 14 defendants, while defendants named over 160 third-party

---

[3] The "permissive language of Rule 21 permits the district court broad discretion in determining whether or not actions should be severed." *Johnson v. Advanced Bionics, LLC*, 2011 U.S. Dist. LEXIS 36289, at *20 (W.D. Tenn. Apr. 4, 2011).

defendants, including new categories of defendants, potential third-party defendants could number in the thousands); *Arthur Andersen LLP v. Standard & Poor's Credit*, 260 F. Supp. 2d 1123, 1125 (N.D. Okla. 2003) (severance of third-party claims for indemnity or contribution was warranted when the action was complicated and joinder occurred late in the course of the litigation); *In re CFS-Related Securities Fraud Litigation*, 213 F.R.D. 435, 437-441 (N.D. Okla. 2003) (severance of third-party claims was warranted where the action was already complicated, document discovery was completed, depositions were about to begin, no claims against similar parties were currently pending in the litigation, and potential claim was known by the third-party plaintiff more than two years); *U.S. v. Kramer*, 770 F. Supp. 954, 958-60 (D.N.J. 1991) (severance of third-party claims for contribution appropriate where trial of the third-party claims would unduly complicate and overburden trial of the primary suit, would bog down the trial of the primary claims, and would significantly multiply the number of parties and issues).

Severance is particularly appropriate in actions where determination of an earlier issue might moot the third-party claims, as must be the case with Pharmacy Defendants' third-party claims, which, in order to be pled Rule 14, must necessarily be dependent on their being found liable for Plaintiffs' primary claims. *See In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982) (severance appropriate where resolution of initial issue could be dispositive of or moot remaining claims). Additionally, assuming *arguendo* Pharmacy Defendants had actionable claims for contribution or indemnification, such claims have not yet accrued, making them particularly appropriate for severance and deferral. *See* Ohio Rev. Code § 2307.26 (contribution claims do not accrue until there is a "judgment for the injury or loss ... against the tortfeasor seeking contribution"); *National Mut. Ins. Co. v. Whitmer,* 435 N.E.2d 1121, 1123 (Ohio 1982) (the right to indemnity and/or contribution becomes complete and enforceable only upon a payment by the claimant satisfying the whole of the obligation.); *McPherson v. Cleveland Punch & Shear Co.*, 816 F.2d 249, 250–51 (6th Cir. 1987) ("[A] cause of action for contribution

does not accrue until the joint tortfeasor has paid more than his proportionate share of liability."); *Accord Whitmer*, 435 N.E.2d 1121, 1123 (Ohio 1982).

Accordingly, should the Court permit the third-party claims to survive at this time, the claims should be severed and deferred so as not to prejudice the streamlined Track 1-B bellwether trial setting.

**CONCLUSION**

For the reasons set forth above, this Court should strike the Pharmacy Defendants' Third-Party Complaints, or, in the alternative, sever and defer the third-party claims.

Dated: January 13, 2020

Respectfully submitted,

*/s/Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Plaintiffs' Co-Lead Counsel*

Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

Linda Singer
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
(202) 386-9626, x5626
(202) 386-9622 (fax)
lsinger@motleyrice.com

*Counsel for Plaintiff Summit County, Ohio*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*
Peter H. Weinberger