# EXHIBIT 1

Case No. _____

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

**IN RE CVS PHARMACY, INC.; OHIO CVS STORES L.L.C.;
DISCOUNT DRUG MART, INC.; GIANT EAGLE, INC.;
HBC SERVICE COMPANY; RITE AID OF MARYLAND, INC. D/B/A MID-
ATLANTIC CUSTOMER SUPPORT CENTER; RITE AID OF OHIO, INC.;
RITE AID HDQTRS. CORP.; WALGREEN CO.;
WALGREEN EASTERN CO.; AND WALMART INC.**

*Petitioner-Defendants.*

_____

From the United States District Court
Northern District of Ohio, Eastern Division
Case No. 1:17-md-2804

_____

**PETITION FOR WRIT OF MANDAMUS**

_____

# TABLE OF CONTENTS

PETITION FOR WRIT OF MANDAMUS.................................................................1

INTRODUCTION .................................................................................................1

ISSUE PRESENTED .............................................................................................4

BRIEF STATEMENT OF FACTS .........................................................................4

STANDARD FOR MANDAMUS .........................................................................11

WHY THE WRIT SHOULD ISSUE.....................................................................12

I.      THE DISTRICT COURT HAS REPEATEDLY DISREGARDED
THE FEDERAL RULES OF CIVIL PROCEDURE BASED ON THE
STATED PREMISE THAT THE RULES DO NOT APPLY TO
MULTIDISTRICT LITIGATION......................................................................12

      A.    The Federal Rules Of Civil Procedure Apply With The Force
Of Law, Including In An MDL ....................................................12

      B.    The District Court Has Granted Leave To Amend Without
Applying The Proper Legal Standard ...........................................15

      C.    The District Court Has Disregarded The Provisions Of Rule 12
Allowing Parties To File Motions To Dismiss ..............................19

      D.    The District Court Has Authorized Sweeping Nationwide
Discovery Of Sensitive Healthcare Information Untethered
From Any Particular Case .............................................................21

II.     OTHER FACTORS, BEYOND THE MERITS, FURTHER
COUNSEL IN FAVOR OF MANDAMUS .......................................................27

CONCLUSION .....................................................................................................32

# ATTACHMENTS

Track One-B Case Management Order ..................................................................A

Marginal Entry Order Denying Motions to Dismiss .............................................B

Order Regarding Scope of Track One-B ...............................................................C

Order on Reconsideration Regarding Scope of Discovery
in Track One-B.....................................................................................................D

# TABLE OF AUTHORITIES

**CASES**          **PAGE(S)**

*Am. Airlines v. Forman*,
   204 F.2d 230 (3d Cir. 1953) ................................................................30

*Am. Fed'n of Musicians v. Stein*,
   213 F.2d 679 (6th Cir. 1954) ...........................................................3, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................9, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................9, 20

*Carver v. Bunch*,
   946 F.2d 451 (6th Cir. 1991) ...............................................................12

*Chudasama v. Mazda Motor Corp.*,
   123 F.3d 1353 (11th Cir. 1997) ...........................................................20

*Duggins v. Steak 'N Shake, Inc.*,
   195 F.3d 828 (6th Cir. 1999) ...............................................................17

*Ex parte Rite Aid of Ala., Inc.*,
   768 So. 2d 960 (Ala. 2000)..................................................................25

*Gelboim v. Bank of Am. Corp.*,
   135 S. Ct. 897 (2015).........................................................................14

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ...............................................................12

*In re Bard IVC Filters*,
   317 F.R.D. 562 (D. Ariz. 2016).........................................................23

*In re Bendectin Prods. Liab. Litig.*,
 749 F.2d 300 (6th Cir. 1984) ...............................................................28

*In re Chevron U.S.A., Inc.*,
 109 F.3d 1016 (5th Cir. 1997) ..............................................................29

*In re Fink*,
 876 F.2d 84 (11th Cir. 1989) ................................................................28

*In re Impact Absorbent Techs., Inc.*,
 106 F.3d 400 (6th Cir. 1996) ................................................................30

*In re Korean Air Lines Co., Ltd.*,
 642 F.3d 685 (9th Cir. 2011) .....................................................3, 14, 19

*In re Nat'l Prescription Opiate Litig.*,
 290 F. Supp. 3d 1375 (JPML 2017) ......................................5, 6, 8, 9

*In re Nat'l Prescription Opiate Litig.*,
 927 F.3d 919 (6th Cir. 2019) ........................................................26, 30

*In re Refrigerant Compressors Antitrust Litig.*,
 731 F.3d 586 (6th Cir. 2013) ........................................................14, 15

*In re Sch. Asbestos Litig.*,
 977 F.2d 764 (3d Cir. 1992) ............................................3, 14, 21, 30

*In re Volkswagen "Clean Diesel"*,
 No. MDL 2672 CRB (JSC), 2017 WL 4680242 (N.D. Cal.
 Oct. 18, 2017) .......................................................................................23

*John B. v. Goetz*,
 531 F.3d 448 (6th Cir. 2008) .....................................................*passim*

*Johnson v. Manhattan Ry. Co.*,
 289 U.S. 479 (1933)...............................................................................13

*Leary v. Daeschner*,
   349 F.3d 888 (6th Cir. 2003) ........................................................16, 17

*Perry v. Schwarzenegger*,
   591 F.3d 1147 (9th Cir. 2010) ............................................................28

*Ruiz v. Walgreen Co.*,
   79 S.W.3d 235 (Tex. App. 2002)........................................................25

*Shane v. Bunzl Distrib. USA, Inc.*,
   275 F. App'x 535 (6th Cir. 2008) ...............................................16, 17

*Sherman v. Winco Fireworks, Inc.*,
   532 F.3d 709 (8th Cir. 2008) ..............................................................16

*State ex rel. Jennings v. Purdue Pharma L.P.*,
   No. CVN18C01223MMJCCLD, 2019 WL 446382 (Del.
   Super. Ct. Feb. 4, 2019) ...........................................................19, 25

*United States ex rel. CKD Project, LLC v. Fresenius Med. Care AG
   & Co. KGAA*,
   No. 14-cv-6646, 2019 WL 6223828 (E.D.N.Y. Nov. 8, 2019)..........22

*United States ex rel. Conroy v. Select Med. Corp.*,
   307 F. Supp. 3d 896 (S.D. Ind. 2018)................................................23

**STATUTES**

28 U.S.C. § 1291 ..............................................................................14

28 U.S.C. § 1407..................................................................4, 13, 16

28 U.S.C. § 1651 ................................................................................1

28 U.S.C. § 2072 ..............................................................................12

**REGULATION**

45 C.F.R. § 164.306 ..........................................................................26

RULES

Fed. R. App. P. 21 ...........................................................................1

Fed. R. Civ. P. 1 .......................................................................3, 13, 20

Fed. R. Civ. P. 12(b) ..........................................................*passim*

Fed. R. Civ. P. 15 .............................................................*passim*

Fed. R. Civ. P. 16 .............................................................*passim*

Fed. R. Civ. P. 26(b) ........................................................*passim*

Fed. R. Civ. P. 81 ..........................................................................13

OTHER AUTHORITIES

Bloch Judicial Inst., Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDL* (2d ed. Sept. 2018) ...........................................31

Abbe R. Gluck, *Unorthodox Civil Procedure: Modern Multidistrict Litigation's Place in the Textbook Understandings of Procedure*, 165 U. Pa. L. Rev. 1669 (2017) ..........................................32

Stuart A. Thompson and Charlie Warze, *Twelve Million Phones, One Dataset, Zero Privacy*, N.Y. Times (Dec. 19, 2019) ..........................................26

United States Judicial Panel on Multidistrict Litigation, *MDL Statistics Report – Distribution of Pending MDL Dockets by District* (Dec. 16, 2019) ...........................................31

## PETITION FOR WRIT OF MANDAMUS

Pursuant to 28 U.S.C. § 1651 and Fed. R. App. P. 21, the above-captioned Petitioners hereby petition for a writ of mandamus compelling the United States District Court for the Northern District of Ohio, Eastern Division, Polster, J., to comply with the Federal Rules of Civil Procedure in the course of the multidistrict proceeding *In re Nat'l Prescription Opiate Litig.*, No. 17-md-2804.  Specifically, Petitioners seek a writ ordering the District Court to strike amended complaints filed without consideration of the proper standard under Rules 15 and 16, to allow Defendants to file motions to dismiss in conformance with Rule 12(b), and to limit the scope of discovery implicating the healthcare privacy interests of tens of millions of Americans in conformance with Rule 26(b).

## INTRODUCTION

This Court has held that mandamus is appropriate to address "'questions of unusual importance necessary to the economical and efficient administration of justice' or 'important issues of first impression.'"  *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008) (citation omitted).  This Petition far exceeds that standard.  In two cases brought by two Ohio counties, the District Court has recently and repeatedly disregarded the Federal Rules of Civil Procedure, justifying its disregard on the stated ground that the ordinary rules do not apply because the cases are part of the broader opioid multidistrict litigation ("MDL").  But neither

Congress nor the Supreme Court has authorized MDL courts to make up the rules as they go.  This Court's review is needed to establish that the Federal Rules of Civil Procedure govern this and other MDLs as much as any other civil case.

The District Court's compounding abuses of the Federal Rules are embodied in a series of decisions that have yielded an extraordinary outcome:

- *First*, the District Court *sua sponte* decided to allow two Ohio counties—Cuyahoga and Summit—to amend their Complaints to add entirely new legal claims based on entirely different facts (1) after the Plaintiff Counties had repeatedly disavowed those claims for eighteen months of litigation and (2) after the case had already proceeded to summary judgment and trial had begun.  Rather than apply this Court's well-settled standards under Rules 15 and 16, the District Court justified the belated amendments on the ground that it wanted to use cases filed in its home jurisdiction as test cases for claims raised by *other* plaintiffs in *other cases* in the MDL.

- *Second*, the District Court flatly refused to entertain motions to dismiss these new legal claims, even though Rule 12(b) gives parties the right to file such a motion.  Although Petitioners' motions to dismiss raised arguments that could entirely eliminate the need for discovery, the District Court held that it would consider the viability of the newly-added claims only through post-discovery summary judgment motions.

- *Third*, the District Court *sua sponte* ordered Petitioners—including the nation's largest retail pharmacy chains—to produce *nationwide* private patient prescription data in relation to these belatedly added claims, even as the District Court held that Plaintiff Counties have no need for data from outside Ohio.  The District Court entered this sweeping order with little regard for the breathtaking scope of sensitive protected health information at issue, or the significant privacy risks that production would entail.  And rather than justifying the ordered discovery as relevant or proportional to Plaintiff Counties' claims, the District Court assumed (without finding) that nationwide data might be relevant to *other*, unspecified cases in the MDL.

This recurring disregard for the Federal Rules follows the District Court's announcement at the outset of the case that its only goal in managing the MDL is to "do something meaningful to abate [the opioid] crisis" and *not* to "figur[e] out the answer to . . . legal questions."  Doc. 71 at 4-5.

This Court's intervention is required because the District Court is wrong to conclude that the Federal Rules of Civil Procedure do not apply to this MDL.  The Federal Rules govern "all civil actions and proceedings in the United States district courts," Fed. R. Civ. P. 1, and have "the force and effect of statutes," *Am. Fed'n of Musicians v. Stein*, 213 F.2d 679, 686 (6th Cir. 1954).  Accordingly, appeals courts hold that the status of a case as an MDL does *not* authorize departure from the Federal Rules.  *See, e.g.*, *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 700 (9th Cir. 2011) (failure to apply ordinary standards to motion to amend pleadings); *In re Sch. Asbestos Litig.*, 977 F.2d 764, 793-94 (3d Cir. 1992) (failure to consider dispositive motions).  Any other rule would allow MDL courts to make up procedures on an *ad hoc* basis as they go along—which is, in essence, what the District Court is doing here.

The applicability of the Federal Rules is of exceptional importance not only to this MDL, but to other MDLs in the Sixth Circuit and nationwide.  Moreover, restoring the limits on the scope of discovery imposed by the Federal Rules will protect the privacy interests of the many millions of Americans whose highly

3

sensitive prescription information the Court has ordered disclosed. This extraordinary case calls for the extraordinary relief of mandamus.

## ISSUE PRESENTED

The issue presented by this Petition is whether a District Court overseeing multidistrict litigation under 28 U.S.C. § 1407 is required to comply with the Federal Rules of Civil Procedure. Specifically:

1. Does an MDL court err by granting leave to amend without applying the ordinary standard for such a motion under Rules 15 and 16?

2. Does an MDL court err by barring Defendants from filing motions to dismiss under Rule 12(b)?

3. Does an MDL court err by ordering nationwide discovery of sensitive and protected healthcare information without ensuring that discovery is relevant and proportional to particular asserted claims, as required by Rule 26(b)?

## BRIEF STATEMENT OF FACTS

This Petition arises out of cases filed by two Ohio counties in Ohio state court and removed to the Northern District of Ohio. *See* No. 17-op-45004 (Cuyahoga County); No. 18-op-45090 (Summit County). Plaintiff Counties in both cases sued manufacturers and wholesale distributors of prescription opioids, seeking to recover damages associated with the opioid crisis.

On December 5, 2017, around the time both cases were removed, the Judicial Panel on Multidistrict Litigation appointed the Northern District of Ohio to oversee consolidated MDL proceedings for cases that "concern the alleged improper marketing of and inappropriate distribution of various prescription opiate

4

medications into cities, states and towns across the country." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1377 (JPML 2017).   The Cuyahoga and Summit County cases were made part of the MDL.

The District Court held the opening hearing in the MDL on January 9, 2018, and announced that its goal in overseeing the MDL was to drive a settlement that would "do something meaningful to abate [the opioid] crisis," including by "get[ting] some amount of money to the [plaintiff] government agencies for treatment."  Doc. 71 at 4-5.  The District Court stated:  "People aren't interested in depositions, and discovery, and trials.  People aren't interested in figuring out the answer to interesting legal questions like preemption and learned intermediary." *Id.* at 4.  "[W]e don't need a lot of briefs and we don't need trials" because "none of those are going to solve what we've got."  *Id.* at 9.

On April 11, 2018, stating that the "parties have indicated . . . they believe settlement will be made more likely if, in addition to the 'settlement track' they are currently pursuing, the Court also creates a 'litigation track,'" the District Court entered its first Case Management Order in the MDL.  *See* Doc. 232 at 1.[1]  That Order designated the Cuyahoga and Summit County cases "Track One" cases and set a deadline of April 25, 2018 for Plaintiff Counties to "amend their Complaints or provide notice that the Complaint will not be amended."  *Id.* at 6.

---

[1] Unless otherwise noted, document numbers refer to docket entries on the primary MDL docket, No. 17-md-2804.

On April 25, 2018, the Plaintiff Counties filed amended complaints that for the first time added Petitioners—all retail pharmacy chains—as Defendants.  *See* No. 18-op-45090, Doc. 7; No. 17-op-45004, Doc. 27.[2]  Plaintiff Counties made clear, however, that they were not suing Petitioners in their capacity as retail pharmacies (or, put another way, for dispensing pain medications by filling prescriptions).  *See* Doc. 654 at 75 n.47.  Instead, Plaintiff Counties sued Petitioners in their capacity as *distributors*—focusing on Petitioners' shipment of prescription opioids from their own warehouses to their own pharmacies.  *Id.*  The District Court confirmed in its decision denying the motions to dismiss that the "Court understands that Plaintiffs have disclaimed any cause of action against Retail Pharmacies in their capacity as retailers or dispensers of opioids."  Doc. 1203 at 2.  This distinction matters because, among other things, distribution and dispensing require separate government licenses and are subject to separate regulatory regimes (both state and federal).

Plaintiff Counties' decision not to plead dispensing-related claims shaped discovery in both cases.  *See, e.g.*, Doc. 1055 at 3 (limiting dispensing-related discovery based on "plaintiffs' affirmative disavowal of claims premised on dispensing practices"); *see also* Doc. 1058 at 3.  The parties conducted an

---

[2] Petitioners HBC Service Company and Giant Eagle, Inc. (together, "Giant Eagle"), as well as Petitioner Discount Drug Mart, were added later, on May 18, 2018.  *See* Docs. 476, 477.

6

extraordinary amount of discovery under this understanding—taking over 600 depositions, preparing thousands of pages of expert reports, and producing tens of millions of documents.

At the close of discovery, Petitioners filed motions for summary judgment highlighting the total lack of evidence (including the lack of expert testimony) to establish that Petitioners' distribution to their own pharmacies caused Plaintiff Counties' asserted injuries. *See, e.g.*, Docs. 1863-1, 1864-3, 1876-1, 1888-1, 1889-1, 1923-1.

As the "Track One" cases approached their October 2019 trial date, the Plaintiff Counties moved to sever all but one of Petitioners from the trial. *See* Doc. 2099. Petitioners urged the District Court to grant summary judgment instead. *See* Doc. 2142. The District Court granted the motion to sever and stated that "[a]ny currently pending summary judgment motion filed by any of these defendants will be addressed by the Court" before a separate trial focused on the severed Petitioners, which would be set for "a date to be determined." Doc. 2399 at 3.

The remaining Petitioner proceeded to trial with the other non-severed defendants (mostly manufacturers and wholesale distributors). On the morning of opening statements, after a jury was selected, the other non-severed defendants settled, agreeing to pay the Plaintiff Counties $260 million on top of $40 million paid by other defendants in earlier settlements. The District Court then canceled

the trial against the one remaining Petitioner.  *See* Doc. 2863.  But the District Court did not set Petitioners for trial or address Petitioners' still-pending summary judgment motions.  Instead, although no motion to amend had been filed, the MDL Special Master conveyed his "understanding" that the District Court had already decided that it "will allow [Plaintiffs] to amend to add dispensing claims."  Doc. 2907 at 5.

Plaintiff Counties then moved to amend to add claims based on the dispensing of prescription opioids at Petitioners' pharmacies.  Doc. 2880. Petitioners objected that they would be prejudiced by the proposed amendment and that the Plaintiff Counties made no attempt to show good cause for amendment at such a late stage—after the close of fact and expert discovery, after summary judgment motions had been fully briefed, and after one Petitioner had selected a jury and arrived at trial to present its opening statement.  Doc. 2924 at 3.

The District Court nevertheless granted leave to amend.  Doc. 2940.  It stated that, "in the context of an MDL, [Petitioners'] objections lose much of their import," even if they "would be better taken in the context of a single case."  *Id*. at 3.  The District Court found that Petitioners would not be prejudiced by adding dispensing-related claims because similar "claims are at issue in many of the nearly 2500 cases in this MDL."  *Id.*  And the District Court found "good cause" to amend after the date set in the scheduling order because, in the District Court's

view, "it will be more efficient" to litigate dispensing-related claims in these cases rather than in some other case in the MDL.  *Id.*  The District Court noted that cases where plaintiffs had actually raised dispensing claims were filed outside its jurisdiction and transferred only for pretrial proceedings, meaning they would have to "be remanded to another district for a bellwether trial" conducted "in front of some other Court which does not have the expertise I have developed."  *Id.*

Petitioners moved to dismiss the newly asserted claims.  *See* Doc. 3035. Among other things, Petitioners argued that (1) the comprehensive Ohio statutory scheme regulating pharmacies' filling of prescriptions preempted Plaintiffs' dispensing-related common-law public nuisance claim, and (2) the new pleadings did not identify even a single prescription that Plaintiffs allege was wrongfully filled, falling woefully short under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Three days later, before the Plaintiff Counties even responded, the District Court issued a "marginal entry order" denying the motion to dismiss "without prejudice to advancing the same arguments in a motion for summary judgment."  Doc. 3053.  The District Court stated that it was "direct[ing] defendants not to file any non-jurisdictional motions to dismiss."  *Id.*; *see also* Doc. 2940 at 4-5.

Having thus overhauled the substantive claims, the District Court entered an "Order Regarding Scope of Track One-B" that directed Petitioners to produce

sweeping discovery unrelated to the particular Track One-B cases.  *See* Doc. 2976. The District Court directed Petitioners to produce data on *every prescription* for a variety of medications filled by their pharmacies *across the entire country* over a period of *more than twenty years*, dating back to 1996.  *See id.*  The District Court ordered this discovery *sua sponte*, before Petitioners had any opportunity to formally object to Plaintiffs' discovery requests and without Plaintiffs having filed any motion to compel.

Petitioners moved the District Court to reconsider, *see* Doc. 3029, and the District Court granted the motion in part, changing the beginning of the discovery period from 1996 to 2006.  *See* Doc. 3055 at 3.  The District Court continued to require production of nationwide patient prescription data but ordered that "the evidence that the parties' Track One-B experts may rely upon, or may adduce during the Track One-B trial[] will be limited to Ohio data."  *Id.* at 4.  The District Court thus ordered production of nationwide data in the Track One-B cases at the same time that it held that nationwide data could not be used in the Track One-B cases.

The District Court's explanation for ordering nationwide discovery is that "national data . . . will be available for future trials of MDL cases (whether before this court or before transferor courts following remand)."  Doc. 3055 at 4-5.  The District Court reasoned that the fact that it "has 'inherited' discovery jurisdiction

10

from over 2,000 transferred cases from across the country" means that "a national geographic scope" is "clearly support[ed]." *Id.* at 5 n.4.  But the District Court did not identify the particular cases to which this discovery would pertain, nor has it allowed Petitioners to file motions to dismiss in the vast majority of those cases. *See* Doc. 232 at 11.   Notwithstanding the District Court's assumption that nationwide discovery is appropriate, the District Court has not actually determined that discovery is relevant and proportional to any particular cases—much less that those cases state viable legal claims.

## STANDARD FOR MANDAMUS

When deciding a petition for mandamus, this Court considers "whether: (1) the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or issues of law of first impression." *John B.*, 531 F.3d at 457.

## WHY THE WRIT SHOULD ISSUE

**I.** **The District Court Has Repeatedly Disregarded The Federal Rules Of Civil Procedure Based On The Stated Premise That The Rules Do Not Apply To Multidistrict Litigation.**

Mandamus is required to enforce the fundamental principle that the Federal Rules govern civil litigation as much in an MDL as in any other civil case. This principle—recognized by cases from other Circuits—is essential to proceedings in MDLs throughout the Sixth Circuit and nationwide.

### A. The Federal Rules Of Civil Procedure Apply With The Force Of Law, Including In An MDL.

The District Court was wrong to disregard the Federal Rules of Civil Procedure. The Federal Rules are promulgated by the Supreme Court under the Rules Enabling Act, 28 U.S.C. § 2072, and "have the force and effect of statutes," *Am. Fed'n of Musicians*, 213 F.2d at 686. *See also* Wright & Miller, Fed. Practice & Proc. § 1030; *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir. 1991). As a result, this Court has held that mandamus is an appropriate remedy where a district court "manifests a persistent disregard of the federal rules." *John B.*, 531 F.3d at 457. Indeed, cases involving repeated failures to follow the Federal Rules "are particularly prone to mandamus review." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1089 (6th Cir. 1996) (marks and citation omitted).

These principles apply with equal force to MDL proceedings. The Rules apply to "*all* civil actions and proceedings in the United States district courts,

except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added).  Rule 81, in turn, lists categories of actions where departure from the Federal Rules is appropriate (including bankruptcy and habeas), but notably does not list multidistrict litigation. Meanwhile, nothing in the MDL transfer statute suggests the MDL mechanism overrides the Federal Rules.  On the contrary, the statute directs the Judicial Panel on Multidistrict Litigation to adopt procedures "*not inconsistent* with Acts of Congress and the Federal Rules of Civil Procedure."  28 U.S.C. § 1407(f) (emphasis added).  While the MDL statute allows for consolidated pretrial proceedings, it does so consistent with the longstanding rule that "consolidation is permitted as a matter of convenience and economy in administration" and does not "change the rights of the parties." *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933).

Of course, like any district court, a judge overseeing an MDL has broad discretion *within the bounds of the Federal Rules* over questions of scheduling and docket management.  A district court can therefore "adopt[ ] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems."  Fed. R. Civ. P. 16(b)(2)(L).  But, as in any case, that authority must be exercised in a manner consistent with the Federal Rules.

13

Cases from other Circuits are in accord.  The Third Circuit, in *School Asbestos*, found mandamus appropriate where an MDL court refused to entertain motions for summary judgment, reasoning that the MDL court had no authority to abrogate provisions authorizing such motions.  *See* 977 F.2d at 793-94.  And the Ninth Circuit, in *Korean Air Lines*, found reversible error where an MDL court denied leave to amend a complaint without applying the usual standards.  *See* 642 F.3d at 700.  The Ninth Circuit explained that, although "'[c]onsiderations that inform the exercise of discretion in multidistrict litigation may be somewhat different,'" "the basic ground rules" of civil litigation "may not be tossed out the window in an MDL case." *Id.* (citation omitted).

While arising in a distinct context—involving finality for appeal—this Court's decision in *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 592 (6th Cir. 2013), is also instructive.  There, this Court addressed the question whether plaintiffs' decision to file a consolidated master complaint in an MDL proceeding merged the actions for purposes of determining finality under 28 U.S.C. § 1291, and answered the question by applying the same rules that apply to consolidated actions in "a run-of-the-mine single-district lawsuit."  731 F.3d at 589-91; *see also Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904 & n.3 (2015) (citing this approach with approval).  While the parties urged this Court to adopt a different rule "in the context of multidistrict litigation," this Court explained that

14

was ultimately a question for "the rules drafters or Congress."  731 F.3d at 591.

Likewise, while the Federal Rules of Civil Procedure certainly *could* be revised to

adopt special procedures for MDLs, neither Congress nor the Supreme Court has

seen fit to do so, and a single district court has no such authority.

Unmoored from the Federal Rules, the District Court here has been guided

only by its own predilection.  The District Court has granted leave to amend after

the close of discovery to add fundamentally new claims without consideration of

the usual standards; has refused to entertain motions to dismiss these untimely

claims; and has entered an extraordinary discovery order that imposes sweeping

nationwide discovery, involving detailed and sensitive third-party health

information, even though nearly all of that discovery has no possible relevance to

these claims.  As described more fully below, that course of procedure cannot be

squared with the Federal Rules.

### B.   The District Court Has Granted Leave To Amend Without Applying The Proper Legal Standard.

First, the District Court departed from the Federal Rules of Civil Procedure

by deciding—even before a motion was filed—that Plaintiff Counties should be

granted leave to amend in circumstances where amendment would clearly be

improper in an ordinary case, purportedly based on considerations related to the

administration of the broader MDL.

Because the amendments here came 18 months after the deadline set by the Court's scheduling order, Rule 16 unambiguously required Plaintiff Counties to show "good cause" for the untimely amendment—that is, that "despite their diligence they could not meet the original deadline." *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003). This Court has repeatedly found *no* good cause where, as here, a motion was filed after the close of discovery and claims easily could have been raised at an earlier date. *See id.* at 909; *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008). And *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709 (8th Cir. 2008), found reversible error where a district court granted leave to amend after the close of discovery and "no change in the law, no newly discovered facts, or any other changed circumstance made the [newly-pled issue] more viable after the scheduling deadline." *Id.* at 718.

Ignoring these settled principles, the District Court found "good cause" for Plaintiffs' failure to timely assert dispensing claims because the District Court believed it would make sense from the perspective of the broader MDL to use these cases as test cases for dispensing-related issues. *See* Doc. 2940 at 3. The District Court noted that *other* cases where Plaintiffs actually raised dispensing claims were filed outside its home jurisdiction, meaning that, because the MDL transfer statute only allows consolidation for "pretrial proceedings," 28 U.S.C.

16

§ 1407, the District Court would eventually have to remand those cases to "some other Court which does not have the expertise I have developed." Doc. 2940 at 3.

But the District Court's professed interest in maintaining sole control over bellwether test cases has nothing to do with whether these Plaintiff Counties established good cause for their own failure to timely assert dispensing claims. In fact, Plaintiff Counties cannot possibly establish good cause, because they candidly admitted that dispensing claims were "purposefully deferred." Doc. 2921 at 6. In other words, Plaintiff Counties made a strategic decision to disavow these claims. The District Court's own desire to use Plaintiffs' lawsuits as a test case for claims that Plaintiffs did not bring is not good cause to amend the pleadings under the Federal Rules.[3]

Even setting aside the absence of good cause, both Rules 15 and 16 required the District Court to consider whether amendment would cause "undue prejudice" to Petitioners. *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999). This Court has held that "allowing amendment after the close of discovery creates significant prejudice," and thus generally should not be allowed, given the need to "reopen discovery and prepare a defense for a claim." *Id.*; *see also Leary*, 349 F.3d at 909; *Shane*, 275 F. App'x at 536. Likewise, here, the amendments

---

[3] As a result of the District Court's preference for cases from its home jurisdiction, Cuyahoga and Summit Counties have so far recovered over $300 million in settlements not available to plaintiffs in other jurisdictions.

17

effectively reset proceedings in these two cases, as the shift in focus from distribution to dispensing will require new written discovery, new depositions, new expert reports, new *Daubert* briefs, new dispositive motion briefing, and (if summary judgment is denied) new pre-trial briefing as well as development of an entirely new trial strategy.  Moreover, several Petitioners have outstanding motions for summary judgment highlighting Plaintiffs' failure to develop evidence against them, and Plaintiffs will undoubtedly attempt to use the reopening of discovery to cure those deficiencies in the already-existing claims.

The District Court found no prejudice here because Petitioners might have to provide dispensing-related discovery in unspecified *different* cases, *see* Doc. 2940 at 3, but that discovery would pertain to different prescriptions filled in different jurisdictions (*see infra* pp. 24-25), and in some cases would be ordered from different corporate defendants.  Indeed, some Petitioners are smaller pharmacy chains that may never have occasion to litigate any other opioid-related case.  *See infra* n. 7.  The fact that some Petitioners are being sued in *other cases* does not change the fact that they are plainly prejudiced by amendment *in this case*.

This is precisely the error the Ninth Circuit condemned in *Korean Airlines*. Just as the District Court here granted leave to amend where it would ordinarily be denied, the MDL court in *Korean Airlines* denied leave to amend where it would ordinarily be granted—and did so based on considerations pertaining to the

administration of the broader MDL.  The Ninth Circuit reversed, explaining that, "when it comes to motions that can spell the life or death of a case," including "a motion to amend pleadings," the district court must "articulate and apply the traditional standards."  642 F.3d at 700.  "A total disregard for the normal standards of assessing these critical motions would improperly subject MDL cases to different and *ad hoc* substantive rules."  *Id.* at 700-01.  Likewise here, the District Court erred when it allowed Plaintiff Counties to assert new claims that they repeatedly disavowed, after the completion of fact and expert discovery, and after the case had already proceeded to summary judgment and trial, based entirely on the District Court's desire to use this case as a bellwether for claims that Plaintiff Counties deliberately chose not to pursue.

### C.  The District Court Has Disregarded The Provisions Of Rule 12 Allowing Parties To File Motions To Dismiss.

Second, the District Court disregarded the Federal Rules by refusing to allow motions to dismiss.  Petitioners' motions to dismiss raised arguments that could eliminate the need for any discovery.  *See, e.g.*, *State ex rel. Jennings v. Purdue Pharma L.P.*, No. CVN18C01223MMJCCLD, 2019 WL 446382, at *11 (Del. Super. Ct. Feb. 4, 2019) (dismissing opioid-related claims against pharmacies based on similar arguments).  Yet the District Court held that it would only consider challenges to the legal sufficiency of the newly-asserted dispensing claims via motions for summary judgment filed after discovery has closed.

19

Rule 12 is clear that parties have a right to file a motion to dismiss for failure to state a claim.  Rule 12 governs "[w]hen and [h]ow" defenses are presented, and Rule 12(b)(6) provides that a party "may assert . . . by motion" the defense that a plaintiff has "fail[ed] to state a claim upon which relief can be granted."  Such a motion, moreover, "must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Here, Petitioners were required to respond to the amended complaints under Rule 15(a)(3), and, under Rule 12(b), were entitled to file a motion to dismiss.  The District Court had no authority to rewrite Rule 12.

The District Court's refusal to permit motions to dismiss thwarts the important purpose of Rule 12(b)(6) to weed out legally defective claims before parties incur the burden and expense of discovery.  "[I]t is self-evident that the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage[, for] the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings."  *Twombly*, 550 U.S. at 559.  "Allowing a case to proceed through the pretrial processes with an invalid claim that increases the costs of the case does nothing but waste the resources of the litigants . . . , delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system."  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367-68 (11th Cir. 1997); *see also See* Fed. R.

20

Civ. P. 1 (the Federal Rules "should be construed . . . to secure the just, speedy, and inexpensive determination of every action").

The Third Circuit found mandamus appropriate under strikingly similar circumstances in *School Asbestos*, 977 F.2d at 793.  There, after the MDL court dismissed defendants' summary judgment motion as untimely without having previously set deadlines for the filing of such motions, the Third Circuit held that the MDL court had no discretion to refuse to consider dispositive motions prescribed by the Federal Rules.  *Id.*  The Third Circuit explained: "While mandamus is ordinarily inappropriate to review the merits of a denial of summary judgment, . . . the present claims are different in kind [because] the error of refusing to rule on the merits of . . . a motion is entirely avoidable." *Id.*  Likewise, in this case, this Court's intervention is required to correct the District Court's outright refusal to rule on the merits of Petitioners' motions to dismiss.[4]

### D.    The District Court Has Authorized Sweeping Nationwide Discovery Of Sensitive Healthcare Information Untethered From Any Particular Case.

Finally, the District Court has departed from ordinary rules of procedure by—on its own motion—ordering nationwide discovery of sensitive and protected healthcare information dating back over a decade.  *See John B.*, 531 F.3d at 457

---

[4] The court in *School Asbestos* ultimately found it unnecessary to order the judge to decide the motion for summary judgment, as it instead directed that the case be assigned to a different judge.  977 F.2d at 798.

(granting mandamus relief from a burdensome and privacy-invading discovery order).  The District Court's discovery order directs Petitioners, including the largest retail pharmacy chains in the nation, to produce sensitive patient data concerning *every prescription they filled* for a host of frequently prescribed medications, across the entire country, from 2006 through the present.  The District Court ordered this nationwide discovery even as it held that Plaintiff Counties would not be allowed to rely on (and thus have no need for) information concerning prescriptions filled outside Ohio.  *See* Doc. 3055 at 4.[5]  And it did so without identifying any particular cases or claims to which such data would be relevant, based simply on the volume of litigation in the MDL.

The District Court's order contravenes Rule 26(b), which limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[6]  That standard necessarily requires an analysis of whether discovery is relevant to a *particular legal claim* and whether discovery is proportional *to a particular case.  See, e.g., United States ex rel. CKD Project, LLC v. Fresenius Med. Care AG & Co. KGAA*, No. 14-cv-6646,

---

[5] Indeed, even within Ohio, these Plaintiff Counties have no apparent need for information concerning prescriptions filled outside their borders.  It is unclear, for instance, what possible relevance a prescription filled in Cincinnati or Dayton could have to a case brought by counties on the opposite side of the state.  In any event, a prescription filled in Anchorage is of no possible relevance in Akron.

[6] Rule 26 previously allowed broader discovery into material relevant to the "subject matter" of the litigation upon a showing of good cause, but that provision was eliminated in 2015.  *See* Rule 26 committee note (2015).

2019 WL 6223828, at *2 (E.D.N.Y. Nov. 8, 2019) (finding nationwide discovery inappropriate where claims were limited to a single state); *United States ex rel. Conroy v. Select Med. Corp.*, 307 F. Supp. 3d 896, 904 (S.D. Ind. 2018) (same). The District Court completely failed to engage in that analysis, either for Plaintiff Counties' claims or any other case in the MDL.

Rather than relate discovery to particular claims or cases, the District Court reasoned that the volume of litigation in the MDL, comprising "over 2,000 transferred cases," "clearly supports a national geographic scope."  Doc. 3055 at 5 n.4.  But the status of a case as an MDL does not excuse a district court from undertaking a proportionality and relevance analysis.  Although the consolidated nature of an MDL allows an MDL court to consider more than one case when undertaking that analysis, the court is still required to relate discovery to particular claims in particular cases.  *See, e.g.*, *In re Volkswagen "Clean Diesel"*, No. MDL 2672 CRB (JSC), 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017); *In re Bard IVC Filters*, 317 F.R.D. 562, 566 (D. Ariz. 2016).  Were it otherwise, the MDL mechanism would allow Plaintiffs to obtain more extensive discovery than they could in separate actions, as blunderbuss discovery in an MDL could easily exceed the scope of discovery available in the underlying cases.  Of course, that is not the law:  The MDL mechanism is intended to *reduce* litigation burdens through the

coordination of discovery in separate cases, not to expand burdens by authorizing sweeping discovery beyond the scope of Rule 26(b).

The risk of overbroad discovery is not theoretical.  In fact, it is clear that the actual cases and claims in this MDL cannot support the District Court's nationwide discovery order.  Unlike so-called "generic" discovery into nationwide policies or procedures, which have general applicability and would be potentially relevant in all or most cases against Petitioners, the discovery ordered here pertains to particular prescriptions filled under particular circumstances by individual pharmacists, each working at a particular pharmacy, and is inherently case-specific.  Prescriptions filled in Honolulu are irrelevant in Houston.  And the sheer number of cases does not suggest relevance:  Not every case in the MDL includes dispensing claims; some plaintiffs, like Plaintiff Counties here, made a strategic decision not to raise those issues.  In addition, not all Petitioners are named as defendants in every case in the MDL; some plaintiffs have not raised any claims against retail pharmacies.  At least two Petitioners have not been properly named as a defendant in *any case* outside Ohio.[7]  There is no question that a proper

---

[7] Although Petitioner Giant Eagle has stores outside Ohio, it has not been sued in those jurisdictions, and, oddly, has instead been named in a few jurisdictions where it has no stores and does no business.  *See* Doc. 3029-5 at 1 ¶¶ 2-3. Petitioner Discount Drug Mart, Inc. has stores only in Ohio, though it, too, was improperly named as a defendant in cases in other jurisdictions (now all dismissed).  *See* Doc. 3029-6.

analysis under Rule 26(b) would narrow the scope of discovery for all of these Petitioners—in most cases considerably.

Just as significant, linking discovery to specific cases would provide Petitioners an opportunity to determine whether the complaints in those cases state viable legal claims—and, if they do not, to bring that issue before the District Court.  Dispensing-related claims are inherently jurisdiction-specific, as they concern particular prescriptions in particular states and can implicate state-specific statutes and legal principles.  Moreover, because pharmacists are medical professionals, dispensing claims often implicate provisions of state medical malpractice laws.  *See, e.g.*, *Ruiz v. Walgreen Co.*, 79 S.W.3d 235, 238 (Tex. App. 2002) (dismissing claims concerning a pharmacist's dispensing for failing to comply with medical malpractice statute); *Ex parte Rite Aid of Ala., Inc.*, 768 So. 2d 960, 961 (Ala. 2000) (claims against a pharmacy fall under medical malpractice statutes, requiring proof by substantial evidence); *see also Jennings*, 2019 WL 446382, at *11 (dismissing opioid-related claims against pharmacies).  Yet, because nationwide discovery is not connected to any particular case, Petitioners have no way to test the sufficiency of these claims.

The burden imposed on Petitioners by this nationwide discovery is immense, as the nationwide scope of discovery greatly magnifies the amount of data at issue: For instance, CVS has 82 stores in the Plaintiff Counties, but more than 9,900

stores nationwide; Rite Aid has 27 stores in the Plaintiff Counties, but approximately 2,443 stores nationwide; Walgreens has 52 stores in the Plaintiff Counties, but approximately 9,277 stores nationwide; and there are 11 Walmart pharmacies in the Plaintiff Counties, but more than 4,650 nationwide.  *See* Docs. 3029-2 – 3029-7.

The burdens, moreover, fall heavily on more than just Petitioners:  The resulting agglomeration of data will contain sensitive personal medical information of millions of Americans, all of which will be exposed to the thousands of local governments with cases in the MDL, as well as their many outside lawyers.  This production, ordered by the District Court, could set the stage for an even more alarming unauthorized data breach.  To guard against breach, the HIPAA Security Rule tightly regulates how covered entities, such as Petitioners, electronically store and transmit protected health information.  *See* 45 C.F.R. § 164.306.  But these government entities and their lawyers are not covered entities under HIPAA, *see id.* § 160.103, and—despite best efforts—are unlikely to be equipped to maintain these records at the same high standard of confidentiality and security that Petitioners employ.  Moreover, once disclosed to government entities, this data may become subject to inevitable public records requests under different state-law legal standards.  *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 926, 931 (6th Cir. 2019).

26

Although efforts may be made to anonymize the data, large datasets of this kind are well known to be susceptible to re-identification. *See, e.g.*, Stuart A. Thompson and Charlie Warze, *Twelve Million Phones, One Dataset, Zero Privacy*, N.Y. Times (Dec. 19, 2019) (reporting that the New York Times succeeded in matching purportedly anonymous cell phone data with specific individuals). That risk is heightened here, as Plaintiffs have insisted that the data for each dispensing transaction must include, at a bare minimum, not only a "patient identifier" but a slew of other details (including the prescriber's name, date filled, diagnostic code, and method of payment) that could be used in combination with other datasets to link particular prescriptions to particular individuals. *See* Doc. 2925-3. The privacy of millions of Americans may be irreparably compromised. Yet this extraordinary production has been ordered without any showing that it is relevant and proportional to the needs of any case or cases in the MDL, in contravention of Rule 26(b).[8]

## II.   Other Factors, Beyond The Merits, Further Counsel In Favor Of Mandamus.

This Court considers four factors in addition to the merits when weighing a mandamus petition. *See John B.*, 531 F.3d at 457. Although there is no

---

[8] As explained *supra* n. 5, the Plaintiff Counties have no apparent need for data beyond their borders, and this Court should order the District Court to limit discovery to pharmacies located within the Plaintiff Counties. At a minimum, however, this Court should order the District Court to itself conduct the case-specific relevance and proportionality analysis required by Rule 26(b).

requirement that all factors weigh in favor of the writ, *see In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir. 1984), all four factors support mandamus in this case.

   **a. *No other adequate means to attain the relief desired.*** The District Court's failure to follow the Federal Rules is precisely the type of error that can only appropriately be resolved through mandamus, as review would otherwise be barred by the collateral order doctrine.  Where, as here, interlocutory discovery rulings implicate important questions about the limits of a district court's power, this Court and others have recognized that mandamus provides the only adequate "means of immediate appellate review."  *John B.*, 531 F.3d at 457 (citation omitted); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156-57 (9th Cir. 2010) (citing 16 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3935.3 (2d ed. 2009)); *see also In re Fink*, 876 F.2d 84, 84 (11th Cir. 1989) ("Mandamus is often an appropriate method of review of orders compelling discovery," particularly for "discovery orders which will . . . [invade] privacy rights.").

   **b. *Damage or prejudice not correctable on appeal.*** The District Court's unlawful "Track One-B" proceedings will subject Petitioners to extensive litigation burdens, including sweeping discovery unrelated to any particular legal claim. These litigation burdens cannot be corrected on appeal.

Beyond the burden and expense to Petitioners, the District Court's nationwide discovery order also threatens the privacy interests of patients whose highly sensitive health information must be compiled and shared with Plaintiff Counties.  In *John B.*, this Court recognized that "[d]uplication, by its very nature, increases the risk of improper exposure, whether purposeful or inadvertent," and, accordingly, held that mandamus was appropriate when a district court order compelled the sharing of "private personal information that is wholly unrelated to" the proper scope of the litigation.  531 F.3d at 457.  So too here.  If this data becomes public, there will be no way to un-ring that bell, even if the result is to expose the private health information of millions.

These harms are magnified further by the status of this case as part of a mammoth MDL.  *See In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1018 (5th Cir. 1997) ("Our traditional reluctance to meddle in the formulation of a district court's trial plan is tempered by the demands placed upon judicial resources and the extraordinary expenses to litigants that typically accompanies mass tort litigation.").  Unless addressed by this Court, the District Court's violations of the Federal Rules can be expected to continue for years as the District Court processes the more than 2,000 cases in these consolidated MDL proceedings.  As a matter of law and fairness, those cases must be litigated in conformance with the Federal Rules.  If they are not, the harm will be felt not only by Petitioners but also the

public at large, given the public interest in securing just and efficient resolution of the litigation.  *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 939 (recognizing "the paramount importance of [this] litigation's subject matter [to the public]").  Mandamus is required to ensure that all of these cases are litigated under the Federal Rules.[9]

**c. *Error that is oft-repeated or manifests a persistent disregard for the Federal Rules.***  The District Court's serial departures from the Federal Rules all rest on the unsupportable premise that the Federal Rules and basic principles of adversarial litigation do not apply in the context of this MDL.  *See supra* Part I. This persistent disregard for the Federal Rules justifies mandamus.  *See, e.g.*, *School Asbestos*, 977 F.2d at 793 ("[W]hereas it is inevitable that judges will make mistakes from time to time when ruling on [motions], the error of refusing to rule on the merits of such a motion is entirely avoidable.").  This Court's intervention is necessary to correct the District Court's mistaken belief that the MDL posture of this case gives the court license to disregard the Federal Rules—especially when

---

[9] Even if this Court were to conclude that these errors are correctable on appeal, "the clearly erroneous nature of the district court's order[s] calls for a more immediate reply."  *In re Impact Absorbent Techs., Inc.*, 106 F.3d 400 (6th Cir. 1996); *see also Am. Airlines v. Forman*, 204 F.2d 230, 232 (3d Cir. 1953) (ordinary appeal can be an inadequate remedy if the "challenged assumption or denial of jurisdiction" is "so plainly wrong as to indicate failure to comprehend or refusal to be guided by unambiguous provisions" of the law).

viewed against the backdrop of the District Court's stated goal to "do something meaningful to abate [the opioid] crisis." Doc. 71 at 4-5.

 **d. *New and important problems, or issues of law of first impression.*** The core question presented by this Petition—the extent to which the Federal Rules apply in the context of an MDL—is of great systemic importance.  In recent years, an ever-increasing portion of the federal civil docket has been consolidated into MDLs.  As of December 2019, there were 132,380 actions pending in 189 MDLs. *See* United States Judicial Panel on Multidistrict Litigation, *MDL Statistics Report – Distribution of Pending MDL Dockets by District* (Dec. 16, 2019).  These cases make up nearly *half the pending civil caseload* in the federal courts, up from 16% in 2002.  *See* Bloch Judicial Inst., Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDL*, at vii (2d ed. Sept. 2018) (citing data published by the Administrative Office of U.S. Courts).  These cases involve some of the most consequential civil disputes pending today, and MDL courts wield enormous power over these proceedings.  Litigants, the courts, and the public need to know what rules apply.

 Although the answer to that question is clear—and the District Court clearly erred—the District Court's errors demonstrate the need for appellate guidance. Because MDLs frequently settle, and because such questions are interlocutory, "there has been little legal development of MDL procedural 'law.'"  Abbe R.

31

Gluck, *Unorthodox Civil Procedure: Modern Multidistrict Litigation's Place in the Textbook Understandings of Procedure*, 165 U. Pa. L. Rev. 1669, 1679-80 (2017). This Court's intervention is required to make clear that, although MDL courts undoubtedly have broad discretion with respect to scheduling and docket management, MDLs remain subject to the binding procedures set forth in the Federal Rules.

## CONCLUSION

This Court should issue a writ of mandamus ordering the District Court to (1) strike the amended complaints filed by the Plaintiff Counties, (2) allow Defendants to file motions to dismiss as authorized by Rule 12(b), and (3) limit the scope of discovery in conformance with Rule 26(b).

January 17, 2020                    Respectfully submitted,

/s/ *Benjamin C. Mizer*
Benjamin C. Mizer (counsel of record)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: bmizer@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
Mary H. Schnoor
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335

32

Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com
E-mail: mschnoor@jonesday.com

Robert E. Johnson
JONES DAY
901 Lakeside Avenue
Cleveland, OH  44144
Phone: (216) 586-3939
Fax: (215) 579-0212
E-mail: robertjohnson@jonesday.com

*Attorneys for Walmart Inc.*


/s/  *Alexandra W. Miller* (consent)
Alexandra W. Miller
Eric R. Delinsky
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: smiller@zuckerman.com
E-mail: edelinsky@zuckerman.com

*Attorneys for CVS Pharmacy, Inc. and Ohio
CVS Stores L.L.C.*


/s/  *Timothy D. Johnson* (consent)
Timothy D. Johnson
Gregory E. O'Brien
CAVITCH FAMILO & DURKIN, CO. LPA
1300 East Ninth Street – 20th Fl.
Cleveland, OH 44114
Phone: (216) 621-7860
Fax: (216) 621-3415

33

E-mail: tjohnson@cavitch.com

*Attorneys for Discount Drug Mart, Inc.*


/s/  *Robert M. Barnes* (consent)

Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
Pittsburgh, PA 15219
Phone: (412) 471-3490
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc. and HBC
Service Company*


/s/  *Kaspar Stoffelmayr* (consent)

Kaspar Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4400
E-mail: kaspar.stoffelmayr@bartlitbeck.com
E-mail: kate.swift@bartlitbeck.com

*Attorneys for Walgreen Co. and Walgreen
Eastern Co.*


/s/  *Kelly A. Moore* (consent)

Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP

101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

William R. Peterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Suite 4000
Houston, TX 77005
Phone: (713) 890-5188
Fax: (713) 890-5001
E-mail: william.peterson@morganlewis.com

*Attorneys for Rite Aid of Maryland, Inc.
d/b/a Mid-Atlantic Customer Support
Center, Rite Aid of Ohio, Inc., and Rite Aid
Hdqtrs. Corp.*

# ATTACHMENT A

(Doc. 2940, Track One-B Case Management Order)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | MDL 2804 |
| | ) | Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) ) | Judge Dan Aaron Polster |
| *The County of Summit, Ohio, et al. v.* *Purdue Pharma L.P., et al.* Case No. 18-op-45090 | ) ) ) ) | **ORDER** |
| *The County of Cuyahoga v.* *Purdue Pharma L.P., et al.* Case No. 17-OP-45004 | ) ) ) | |

**TRACK ONE-B CASE MANAGEMENT ORDER**

In an email sent to counsel on October 25, 2019, Special Master Cohen scheduled a conference on November 6, 2019 to discuss how to advance litigation and streamline this MDL going forward following the settlement of the October 21, 2019 trial. In preparation for the hearing, he directed the parties to submit, via email to the Court, position papers addressing various proposals for claims and defendants in future bellwether cases, "hub and spoke" remands, and disposition of the ripe, pending motions to dismiss. He instructed counsel to confer and come to agreement on as much as possible before making their submissions. On November 5, 2019, after receiving several position papers, the Court directed the parties to file those papers on the MDL docket.[1] At the November 6 conference, having reviewed the parties' submissions, I provided the parties with guiding principles that I believe will help the parties resolve these cases. Included among those principles, I expressed a need to have a small number of focused, streamlined cases, including at least one case where liability could be tested against pharmacies as dispensers. The

---

[1] *See, e.g.*, Doc. ##: 2899 (Seminole Tribe) (filed prior to the Court's November 5, 2019 Order); 2906 (PEC); 2907 (Pharmacy Defendants); 2908 (certain Defendants (including Distributors and Manufacturers)); 2921 (PEC's Supplemental Submission).

Parties requested an additional week to meet and confer in order to try to present a unified plan for how litigation should proceed in accordance with my guiding principles; which I granted with a deadline of November 13, 2019. Despite the extra time, the parties still agree on very little.[2] Accordingly, the Court will exercise the authority granted to me by the JPML to structure this litigation.

During the conference, I indicated that I would be willing to conduct a trial brought by Cuyahoga and Summit Counties against the severed *Track One* pharmacies—what is being called *Track One-B* ("CT1B")—and allow Plaintiffs to assert dispensing-related claims against them. In that regard, on November 13, 2019, Plaintiffs filed a Revised Position Statement Regarding Continuing Litigation in which they stated that, with respect to CT1B and in order to efficiently advance litigation, they would sever all claims except absolute public nuisance and civil conspiracy and sever all defendants except CVS, Rite Aid, Walgreens, HBC, and Discount Drug Mart.[3] *See* Doc. #: 2935. Plaintiffs further request that the Court grant their pending Motion for Leave to Amend their operative *Track One* Complaint to add dispensing claims and related dispensing entities. Doc. #: 2894.

On November 12, 2019, Pharmacy Defendants filed an opposition response to Plaintiffs' Motion to Amend. Doc. #: 2924. On November 14, 2019, Plaintiffs filed a Reply, Doc. #: 2937, and on November 15, 2019, the Pharmacies, with leave of the Court, filed a Sur-Reply. Doc. #: 2939. The Court hereby **ADOPTS** Plaintiffs' proposed CT1B structure for the Pharmacy case, and for the following reasons, **GRANTS** Plaintiffs' Motion for Leave to Amend their Complaint.

The Pharmacies allege that Plaintiffs should not be allowed to amend their Complaint to include dispensing-related claims because Plaintiffs did not articulate good cause for doing so and because if

---

[2] Compare previously filed position papers listed in footnote 1 with Doc. ##: 2927 (Discount Drug Mart and HBC Service); 2928 (Branded Manufacturers); 2929 (certain Generic Manufacturers); 2930 (Seminole Tribe of Florida); 2931 (certain Small Distributors); 2933 (certain Pharmacy Defendants); 2934 (Distributor Defendants); 2935 (Plaintiffs Executive Committee); 2936 (Pharmacy Benefits Managers).
[3] The five named defendants represent defendant families and include various related entities. *See* Doc. #: 2935 at 3.

allowed, Pharmacies would be unduly prejudiced. The Pharmacies' points would be better taken in the context of a single case. However, in the context of an MDL, their objections lose much of their import.

There is good cause to allow Plaintiffs to pursue dispensing related claims against the Pharmacies. One of the primary purposes of centralization in an MDL is to "promote the just and efficient conduct of the litigation." JPML Transfer Order (Doc. #: 1 at 3). In CT1B, although some additional discovery will be necessary to address dispensing claims, much of the foundational discovery and virtually all of the discovery regarding Plaintiffs has already been done. Thus, it will be more efficient and fairer to the parties not to have to redo that foundational discovery.[4]

Furthermore, contrary to the Pharmacies' assertions, prejudice against the Pharmacies will likely be lessened by the allowance of additional discovery in CT1B. The Pharmacies' brief overlooks the fact that they **will** be required to produce this discovery in any case in this MDL in which they are named and the Court suggests be remanded to another district for a bellwether trial. Dispensing-related claims are at issue in many of the nearly 2500 cases in this MDL, and the Pharmacies will be responsible for producing discovery responsive to those claims. Thus, their argument amounts to the dubious assertion that the Pharmacies' interests will be better-served if dispensing related discovery is conducted at some later date in front of some other Court which does not have the expertise I have developed over the past two years.

The Pharmacies also cite to the Court's prior decision precluding additional discovery into severed-defendant Noramco as analogous to the issue at hand. *See* Doc. #:2924 at 3 (citing Doc. #: 2438 at 4). Noramco is a supplier of active pharmaceutical ingredients ("API"). Noramco is a different type of defendant than the Pharmacies. It does not manufacture, distribute, or dispense opioids. For Noramco, the Court denied additional discovery on manufacturing and distributing claims that had already been developed against all other defendants. For the Pharmacies, on the other hand, the Court is now allowing

---

[4] The Pharmacy Defendants will not have to redo much of the discovery and depositions already taken of the Plaintiffs or the discovery relating specifically to the costs of implementing an abatement remedy.

what are effectively new dispensing claims, which necessitate additional discovery, and the Court is scheduling a trial date which will permit both sides to conduct this discovery.

Accordingly, the Court **ADOPTS** Plaintiffs' proposed structure for CT1B as described in Plaintiffs' Revised Position Statement Regarding Continuing Litigation, Doc. #: 2935 at 3, and **GRANTS** Plaintiffs' Motion for Leave to Amend their operative *Track One* Complaint to add dispensing claims and related dispensing entities. Doc. #: 2894.[5]

Further, the Court hereby enters the Case Management Plan below, which directs the parties to engage in discovery, motion practice, and trial preparation for the above captioned cases against the severed CT1B Pharmacy Defendants. In order to conduct the CT1B trial as efficiently as possible, the Court will not receive additional motions to dismiss on distributing claims. To the extent there are legal issues that need to be addressed, the Court will address them in summary judgment motions. Special Master Cohen will oversee discovery.

**As soon as practicable** – The parties shall exchange lists of initial fact witness depositions. If the parties agree, depositions may proceed immediately. As much as possible, however, depositions shall be taken of witnesses only after relevant documents have been produced. Thus, the majority of depositions shall occur between January 31 and March 6, 2020.

**Friday, January 31, 2020** – Production of documents *and* traditional 30(b)(6) depositions (i.e., 30(b)(6) depositions concerning discovery-related issues, such as types and location of documents and databases) shall be substantially complete.

**Friday, March 6, 2020** – all 30(b)(6) and fact depositions shall be completed.

**Monday, March 16, 2020** – Plaintiffs shall serve expert reports and, for each expert, provide two proposed deposition dates between March 31 and April 17, 2019.

---

[5] While Plaintiffs are technically "severing" all claims except absolute public nuisance and civil conspiracy, the Court intends this will be the only trial of these two Counties against these Pharmacies.

**Friday, May 1, 2020** – Defendants shall serve expert reports and, for each expert, provide two proposed deposition dates between May 12 and May 30, 2020.

**Friday, June 19, 2020, 12:00 p.m.** – Deadline for *Daubert* and dispositive motions.

**Friday, July 24, 2020, 12:00 p.m.** – Deadline for responses to *Daubert* and dispositive motions.

**Friday, August 7, 2020, 12:00 p.m.** – Deadline for replies in support of *Daubert* and dispositive motions.

**Friday, August 28, 2020** – Hearings on *Daubert* and dispositive motions, or as otherwise set by the Court, if necessary.

**Monday, October 5, 2020, 1:30 p.m.** – Final Pretrial Hearing.

**Wednesday, October 7, 2020 – Friday, October 9, 2020** – Jury selection.

**Tuesday, October 13, 2020** – Trial. The Court envisions a 4-5-week trial and will set appropriate time limits including deadlines for motions *in limine*, deposition designations, jury instructions, jury questionnaire, and other pretrial submissions. As reflected in prior MDL rulings, the jury will decide public nuisance liability. Should the jury find liability for one or more Defendants, the Court will hold a subsequent hearing to determine an appropriate abatement remedy.

       **IT IS SO ORDERED.**

       **/s/ Dan Aaron Polster  November 19, 2019**
       **DAN AARON POLSTER**
       **UNITED STATES DISTRICT JUDGE**

# ATTACHMENT B

(Doc. 3053, "Marginal Entry Order" Denying Petitioners' Motion to Dismiss)

Motion Denied without prejudice to advancing the same arguments in a motion for summary judgement. The Track One-B Case Management Order was meant to direct defendants not to file any non-jurisdictional motions to dismiss.
/s/ Dan Aaron Polster
United States District Judge
12/26/2019

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*The County of Summit, Ohio,* et al. *v. Purdue Pharma L.P.,* et al.<br>Case No. 18-op-45090 | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**PHARMACY DEFENDANTS' MOTION TO DISMISS**
**THIRD AMENDED COMPLAINT AND AMENDMENT BY INTERLINEATION**

Defendants CVS, HBC/Giant Eagle, Rite Aid, Walgreens, and Walmart (the "Pharmacy Defendants") move to dismiss the Third Amended Complaint and the Amendment by Interlineation with prejudice to the extent they purport to state a claim based on the Pharmacy Defendants' dispensing, on the basis that they fail to state a claim upon which relief can be granted for the reasons stated in the accompanying memorandum of law.

The Pharmacy Defendants recognize that the Track One-B Case Management Order provides that "the Court will not receive additional motions to dismiss on *distributing* claims." ECF No. 2940 at 4 (emphasis added). The order by its terms, however, does not expressly foreclose motions to dismiss on *dispensing* claims, though further communications with the Special Master suggest that they too might not be received. While the Pharmacy Defendants will answer the Amendments by Interlineation as directed, they nevertheless believe it is important and appropriate to bring to the Court's attention certain reasons—completely independent of the Court's rulings on prior motions to dismiss only distribution claims—why Plaintiffs' new dispensing claims fail as a matter of Ohio law and federal pleading standards. *See* Fed. R. Civ. P.

# ATTACHMENT C

(Doc. 2976, Order Regarding the Scope of Track One-B)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | JUDGE POLSTER |
| THIS DOCUMENT RELATES TO: "*Track One-B Cases*" | ) ) ) | |
| | ) ) ) | ORDER REGARDING <u>SCOPE OF TRACK ONE-B</u> |

Last week, the Court met with the parties to discuss the "Track One-B" trial, which is set for October 13, 2020 against certain Pharmacy Defendants. *See* Track One-B Case Management Order ("CMO-1B") (docket no. 2940) at 5. The Court now enters this Order amending CMO-1B and clarifying the scope of discovery.

At last week's conference, the Track One Plaintiffs stated that, although they had not done so in their earlier position statement, they intended to designate defendant Walmart as a non-severed party, so that the Track One-B trial would include claims against Walmart as well as the other Pharmacy Defendants. *Compare id.* at 2 (noting Plaintiffs had "sever[ed] all defendants except CVS, Rite Aid, Walgreens, HBC, and Discount Drug Mart"). In response, the Court: (1) stated it would permit Plaintiffs to amend their designation and include Walmart as a defendant, and (2) asked the parties to meet and confer and let the Court know whether this was Plaintiffs' definite plan. Plaintiffs have since indicated to Special Master Cohen they do intend to proceed against Walmart in the Track One-B trial. CMO-1B is amended accordingly: the Track One-B trial will

address Plaintiffs' absolute public nuisance and civil conspiracy claims against CVS, Rite Aid, Walgreens, Walmart, HBC, and Discount Drug Mart.

The parties also discussed with the Court the scope of discovery. The Court indicated it did not believe the temporal scope of discovery of defendants' transactional data needed to extend backwards to 1996. Upon further reflection, however, the Court concludes the scope of this type of discovery against the Pharmacy Defendants should be essentially identical to the scope of discovery that was obtained from the Distributor Defendants in Track One. This is in keeping with the normal role of an MDL court overseeing centralized discovery in a case of national reach.

The ARCOS data that the Court ordered the government to produce in Track One, which included distribution data from all of the Distributor Defendants, extended backwards to 1996 and was national in scope.[1] Accordingly, the Pharmacy Defendants shall produce transactional dispensing data for the entire United States from 1996 forward. As quickly as possible, the Pharmacy Defendants shall first produce Ohio data; then nearby regional data, including West Virginia and Kentucky; and then roll out data for the rest of the country. If it is less expensive or quicker, defendants may simply produce all regional or national data at once.

Special Master Cohen will oversee this discovery, as well as all other discovery in Track

---

[1] The ARCOS data included *distribution* transactional data for the Pharmacy Defendants in their role as "self-distributor," but did not include *dispensing* transactional data. *See* Discovery Ruling No. 8 at 1 (docket no. 1055) ("'distribution' involves movement of opioid products from (for example) a warehouse to a specific pharmacy, while 'dispensing' refers to the 'final step' in the distribution process, from the pharmacy to an individual patient").

2

One-B, and shall ensure as best as possible that the dates listed in CMO-1B will not need to be amended.

   **IT IS SO ORDERED.**

            */s/ Dan Aaron Polster*
            **DAN AARON POLSTER**
            **UNITED STATES DISTRICT JUDGE**

**Dated:** December 10, 2019

# ATTACHMENT D

(Doc. 3055, Order on Reconsideration Regarding Scope of Discovery in Track One-B)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION | ) | CASE NO. 1:17-MD-2804 |
| OPIATE LITIGATION | ) | |
| | ) | JUDGE POLSTER |
| THIS DOCUMENT RELATES TO: | ) | |
| "*All Cases*" | ) | |
| | ) | ORDER ON RECONSIDERATION |
| | ) | REGARDING SCOPE OF |
| | ) | <u>DISCOVERY IN TRACK ONE-B</u> |
| | ) | |

On December 10, 2019, the Court entered an Order regarding the scope of discovery in

"Track One-1B," which involves claims by Cuyahoga County and Summit County against six

Pharmacy Defendants.  In pertinent part, the Order stated:

> the Pharmacy Defendants shall produce transactional dispensing data for the entire
> United States from 1996 forward.  As quickly as possible, the Pharmacy Defendants
> shall first produce Ohio data; then nearby regional data, including West Virginia and
> Kentucky; and then roll out data for the rest of the country.  If it is less expensive or
> quicker, defendants may simply produce all regional or national data at once.

Docket 2976 at 2.

The Pharmacy Defendants move the Court to reconsider, asking for a much more restricted

geographic and temporal scope – that is, limited to Cuyahoga and Summit Counties only, and dating

back only three years.  Plaintiffs respond there should me no modification.  Having considered the

parties' arguments, the motion to reconsider is **granted in part**.

\*       \*       \*       \*       \*

The Court first addresses two threshold matters raised by the Pharmacy Defendants: (1) the Court did not sufficiently consider patients' privacy interests inherent in the requested transactional data; and (2) it would be better and easier for both Plaintiffs and Defendants if transactional data is produced via third-party subpoena from the State of Ohio's Automated Rx Reporting System ("OARRS").

Regarding the first matter, the Pharmacy Defendants are simply wrong that the Court did not consider patient privacy interests. The Court has put into place numerous protective orders specifically addressing health information protected under the Health Insurance Portability and Accountability Act ("HIPAA"), such as patient prescriptions. *See* docket no. 2987 at 1-2 (listing all of the Court's Orders touching on this issue). Indeed, it was Defendants who earlier successfully argued these Protective Orders were sufficient when seeking discovery of HIPAA-protected insurance claims information from Plaintiffs during Track One-A. And although the Court has stated it at least implicitly, the Court now makes explicit that any party who produces *or receives* health information protected under HIPAA (including the Pharmacy Defendants' transactional data) is obligated to adhere to the standards set out in 45 C.F.R. §164.306(a).[1]

Regarding the second matter, the Pharmacy Defendants assert that "the data Plaintiffs need already resides in a single place—the OARRS database—and thus could easily be anonymized and produced in a standardized way, [so] there is no reason to impose the time-consuming, costly burden on Pharmacy Defendants to assemble data sets from numerous computer systems." Motion at 3. The Pharmacy Defendants add that the OARRS database will also "provide prescription information

---

[1] This regulation addresses confidentiality and security standards for HIPAA-protected health information. *See also* docket no. 441 at 32-24 (Protective Order referring to other, related federal regulations).

2

from the large portion of the market not captured by Pharmacy Defendants—the independent pharmacies and other dispensers whom Plaintiffs chose not to sue but which dispensed a significant share of the prescription opioids in Cuyahoga and Summit Counties in the relevant timeframe." *Id.* The Court agrees that third-party discovery of the OARRS database may be helpful and necessary, but it is not sufficient. The Pharmacy Defendants' own data is the best and most complete source of relevant information, and access to it by both Plaintiffs and Defendants should be reasonably equal. Moreover, there is at least some suggestion that submission of data by Ohio pharmacies to the OARRS database was not comprehensive until relatively recently. It must also be noted that the State of Ohio consistently and repeatedly resisted requests by defendants for production of OARRS data during discovery in Track One-A, so timeliness is a serious issue.

In sum, neither Defendants' arguments regarding privacy issues, nor Defendants' suggestion that the requested discovery is available instead from OARRS, persuades the Court to modify its order regarding scope of discovery.

*    *    *    *    *

The Court next turns to the Pharmacy Defendants' substantive arguments that the scope of discovery of their transactional data should be less wide geographically and less deep temporally.

Regarding temporal scope, the Pharmacies argue that the burden of producing data back to 1996 far exceeds the benefits. Pharmacies assert a more reasonable temporal scope is no more than three years; at most, "[i]f the Court wanted to ensure that dispensing data was congruent with distribution data, the appropriate discovery period would likewise extend from 2006-2014." Motion at 15. Defendants point out that the DEA produced transaction-level ARCOS data dating back only to 2006, not 1996. The Court has weighed the burdens and benefits of this discovery and now

3

agrees with the Pharmacies that the burden of producing transactional data older than 2006 becomes excessive. [2] Accordingly, the Court modifies the temporal scope to be from 2006 forward.

Regarding geographic scope, the Court earlier stated the Pharmacies had to produce nationwide transactional dispensing data, but could "roll it out" – first locally, then regionally, then nationally. The Pharmacy Defendants argue the Plaintiffs do not need data outside of Cuyahoga County and Summit County, and the burden of producing data beyond those jurisdictions exceeds any benefit.

The Court concludes as follows. Balancing the burden on the Pharmacy Defendants with the necessities of the Track One-B case and the entire MDL, the Court continues to find it appropriate that the Pharmacy Defendants produce transactional dispensing data for the entire United States – but with the following amendment. As ordered earlier, the Pharmacy Defendants shall first produce data for Cuyahoga County and Summit County; then produce Ohio data; then nearby regional data, including West Virginia and Kentucky; and then roll out data for the rest of the country.[3] The amendment is that the evidence the parties' Track One-B experts may rely upon, or may adduce during the Track One-B trial, will be limited to Ohio data, and the Defendants must (as ordered earlier) produce all Ohio data *as soon as possible*. The Pharmacy Defendants shall continue to roll out national data, which will be available for future trials of MDL cases (whether

---

[2] This temporal scope is the same as the ARCOS data and is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

[3] As stated earlier, "if it is less expensive or quicker, Defendants may simply produce all regional or national data at once."

4

before this Court, or before transferor courts following remand).[4]  This limitation will help ensure

the Track One-B trial is not delayed due to the amount of time it will take the Pharmacy Defendants

to produce national transactional data.[5]

       **IT IS SO ORDERED.**

                         **/s/ *Dan Aaron Polster***
                         **DAN AARON POLSTER**
                         **UNITED STATES DISTRICT JUDGE**

**Dated:** December 27, 2019

---

[4]  Defendants cite *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 699 (9th Cir. 2011), for the proposition that discovery should be cabined to address only the jurisdictions of the cases set for trial.  In fact, *Korean Air Lines* stands for the opposite proposition, as it observes that an MDL district judge "inherits the entire pretrial jurisdiction [including jurisdiction over discovery] that the transferor district judge would have exercised if the transfer had not occurred." *Id.* (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3866 (3rd ed. 2010).  Here, the undersigned has "inherited" discovery jurisdiction from over 2,000 transferred cases from across the country; together, this jurisdiction clearly supports a national geographic scope.

[5]  Although transactional data outside of Ohio may be relevant to the Track One-B case, it is less relevant than Ohio data.  It is appropriate for the Pharmacy Defendants to produce national discovery, but the Court concludes the Track One-A Plaintiffs will not suffer excessive prejudice by having to rely only on Ohio data.

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because it contains 7,755 words, excluding accompanying documents required by Fed. R. App. P. 21(a)(2)(C), as counted using the word-count function on Microsoft Word 2016 software.

This petition complies with the requirements of Fed. R. App. P. 32(a) because it has been prepared using Microsoft Word 2016 in Times New Roman, 14-point font.

/s/ *Benjamin C. Mizer*
Benjamin C. Mizer

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2020 the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system.

I further certify that on January 17, 2020 a copy of the foregoing was served via electronic mail upon counsel for all parties in the district court at the agreed-upon email listservs and upon the District Court via email and United States First Class Mail.

/s/ *Benjamin C. Mizer*
Benjamin C. Mizer