## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | JUDGE POLSTER |
| THIS DOCUMENT RELATES TO: "*Track One-B*" | ) ) ) | |
| | ) ) ) | ORDER DENYING MOTION FOR STAY |

The Track One-B Pharmacy Defendants recently filed with the Sixth Circuit Court of Appeals a Petition for Writ of Mandamus, asking the appellate court to order this Court "to (1) strike the amended complaints filed by the Plaintiff Counties, (2) allow Pharmacy Defendants to file motions to dismiss as authorized by Rule 12(b), and (3) limit the scope of discovery in conformance with Rule 26(b)." Docket no. 3084 at 2. At the same time, the Track One-B Defendants moved this Court to stay discovery. *Id.* For the reasons stated below, the motion for stay of discovery is **DENIED**.

\*    \*    \*    \*    \*

This Court has ordered the Track One-B Pharmacy Defendants to produce transactional dispensing data for the entire United States from 2006 forward, but to "roll it out" – that is, they must "first produce data for Cuyahoga County and Summit County; then produce Ohio data; then nearby regional data, including West Virginia and Kentucky; and then roll out data for the rest of the country." *Discovery Order* at 4 (docket no. 3055); *see id.* (adding that the Defendants must "produce all Ohio data *as soon as possible*") (emphasis in original). In their Petition, the Track

One-B Pharmacy Defendants argue the appellate court should command this Court to impose much stricter limits on the geographic and temporal scope of the transactional dispensing data. Although the Petition does not state in detail what limits the Track One-B Pharmacy Defendants want the appellate court to impose, the Defendants' contemporaneous motion asks this Court to stay discovery of all transactional data "with the exception of prescriptions that were filled within the two Ohio Counties, Cuyahoga County and Summit County, that are Plaintiffs in the 'Track One-B Cases,' and within three years dating back from November 20, 2019, when Plaintiffs served their amended complaints." Docket no. 3084 at 1.

The motion for stay is not well-taken. As an initial matter, the Defendants' quest for mandamus to address this Court's rulings on scope of discovery is quixotic. "Generally, of course, discovery orders are not reviewable by mandamus," *In re von Bulow*, 828 F.2d 94, 97 (2nd Cir. 1987); and the exceptions almost always involve claims of attorney-client privilege, *see, e.g., In re Lott*, 424 F.3d 446, 447 (6th Cir. 2005), which is not the case here. So the Defendants carry little sway when asking this Court to stay a simple discovery order pending appellate application for "a drastic remedy, to be invoked only in extraordinary situations," *In re Lott*, 424 F.3d at 456-57.

Also irregular is the fact that the Pharmacy Defendants have so far not produced **any** transactional dispensing data, and the Court has already stated the Defendants may "roll it out" by first producing data for the Track One Counties before moving on to production of data for Ohio. The Defendants' request to stay production, at least from a geographic perspective, thus appears unripe; unless and until Defendants first produce data for the Track One Counties as required, the request for a stay is premature.

More important, however, the fundamental premise of the Pharmacy Defendants' Petition

to limit discovery, and thus the basis for the follow-on motion to stay, is incorrect. Defendants assert this Court "disregarded" Fed. R. Civ. P. 26(b) and failed to consider whether the ordered scope of discovery of transactional dispensing data is "relevant to any party's claim or defense [*in Track One-B*] and proportional to the needs of the [*Track One-B*] case." Petition at 12, 22 (docket no. 3084-1). Defendants assert this Court's conclusion regarding scope of discovery was improperly based only upon "the volume of litigation in the MDL," and not Track One-B itself. *Id.* at 30. This argument is demonstrably wrong.

Before it ruled on discovery scope, the Court received numerous written and oral position statements from both Plaintiffs and Pharmacy Defendants in Track One-B regarding the appropriate ambit of discovery of transactional dispensing data. Indeed, the Court even granted in part Defendants' motion for reconsideration and narrowed the scope – although not as much as Defendants wanted. *See* docket no. 2976 (initial discovery order setting scope); docket no. 3084 at 4 (on reconsideration, narrowing scope after "agree[ing] with the Pharmacies that the burden of producing transactional data older than 2006 becomes excessive"). In doing so, the Court stated explicitly it was weighing all of the *Track One-B* parties' stated interests, including "[b]alancing the burden on the Pharmacy Defendants with the necessities of the *Track One-B* case [e.g., Plaintiffs' need for the discovery] and the entire MDL." *Discovery Order* at 4 (docket no. 3084) (emphasis added); *see also id.* at 4 n.2 (quoting Fed. R. Civ. P. 26(b)(1) and concluding the temporal scope of discovery was proportional to the needs of the *Track One-B* case).[1] This Court's ruling

---

[1] Nor did the Court ignore the Pharmacy Defendants' arguments about patient privacy, despite suggestions otherwise in the Petition. *See Discovery Order* at 2 (docket no. 3055) (noting it was "Defendants who earlier successfully argued [the Court's] Protective Orders were sufficient when seeking discovery of HIPAA-protected insurance claims information from Plaintiffs during Track One-A").

was, of course, also made with eyes open to the context of the entire MDL; but the Rule 26(b)(1) proportionality analysis was undertaken squarely within the Track One-B case.

Specifically, all of the transactional dispensing data that this Court ordered the Pharmacy Defendants to produce is clearly relevant and necessary to the "red flag" analysis that the Track One-B Plaintiffs and their experts must undertake to assess whether the Pharmacy Defendants ignored indications within their own data that opioid prescriptions they were filling were suspicious. Given the sad duration of the opioid crisis, dating back to at least the early 2000s, relevant data certainly goes back more than three years, which is the short temporal limit Defendants ask for.[2] And, as this Court has repeatedly noted, Track One Plaintiffs are entitled to investigate how a defendant's *national* policies and procedures played out both locally and nationally, as information the defendant gleaned elsewhere informed it (or should have) regarding what was occurring in the Track One jurisdictions. *See, e.g., Discovery Ruling No. 3* (docket no. 762) (ruling the scope of certain types of discovery would be national and other types would be regional). Here, the Pharmacy Defendants' "policies and actions regarding [how they checked for red flag prescriptions] are (and were) primarily centralized and over-arching, applying broadly to their opioid products." *Discovery Ruling No. 2* at 4. Put simply, what the Pharmacy Defendants learned (or could have learned) and did (or didn't do) about red-flag prescriptions in Columbus and Cincinnati (and even

---

[2] The temporal limit for discovery of the ARCOS opioid distribution data also went back to 2006, and the Court on reconsideration agreed with the Pharmacy Defendants that the scope of their transactional dispensing data should be "congruent." *Discovery Order* at 3 (docket no. 3055) (quoting Pharmacies' motion for reconsideration at 15).

Miami[3]) – is relevant to what the Defendants did, did not do, and could or could not have done in the Track One-B counties.

All of that said, the Court was also faced with a severely pragmatic choice on when to set the Track One-B trial, which obviously cannot occur until after discovery is complete. The Court concluded it was fair to limit the data evidence upon which the Track One-B Plaintiffs could rely, even though all of the data was relevant, thereby allowing a sooner trial. *See Discovery Order* at 5 n.5 (docket no. 3055). The two alternatives were: (1) to postpone the Track One-B trial by many months, allowing the Pharmacy Defendants more time to first produce all of the transactional dispensing data and the Plaintiffs more time to analyze it; or (2) to put onerous data production deadlines on the Pharmacy Defendants, ensuring all of the data is available in Track One-B while maintaining the current trial date. The Court concluded the former alternative was not fair to Plaintiffs and the latter was not fair to Defendants. But the limit on what the Track One-B Plaintiffs may use at trial is distinct from the discovery scope limit. The Pharmacy Defendants are incorrect in their assertion that "the District Court has not actually determined that discovery is relevant and

---

[3] Plaintiffs cite evidence that opioid prescriptions filled in other states, such as Florida, "migrated" to the Track One-B jurisdictions. *See, e.g.*, docket no. 1778 at 18 (citing evidence showing that "trafficking of pills from Florida into Ohio and other states along the I-75 corridor . . . was such a common occurrence that I-75 was referred to as 'the Oxy Express'").

proportional to any particular cases." Petition at 18.[4]

For all of these reasons, the Defendants' motion for stay of discovery pending resolution of the mandamus petition is denied.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** January 21, 2020

---

[4] Although not raised in the motion to stay discovery, the Court also finds unconvincing the other two arguments raised by the Pharmacy Defendants in their Petition:

(1) Defendants complain the Court allowed Plaintiffs to amend their complaints to add dispensing claims after the Track One-A trial had begun, and assert this amendment came far too late in the case. But the design of the Track One-A and Track One-B trials are so different that allowing the new claims made sense, especially where the Court also set all new case management deadlines for Track One-B, beginning with a new period for fact discovery and continuing through new *Daubert* motions and motions *in limine*.

(2) Defendants also complain the Court did not consider their motions to dismiss (filed at docket nos. 3035 & 3036). It suffices to say that: (a) in orders addressing prior dismissal motions, the Court already overruled many of the arguments raised; (b) even if granted, the current motions would not dispose of all claims in the Track One-B case, and would likely not change the scope of discovery; and (c) most important, given the Court's limited resources, addressing the sufficiency of all of Plaintiffs' claims in the context of summary judgment motions (as promised) will save the Court and the parties time and money. Moreover, Defendants fail to mention the Court *invited* motions to dismiss dispensing claims based on their oral argument that they had no legal responsibility to have prescription monitoring systems in place, *see* hearing transcript at 51-54 (docket no. 2966), but Defendants chose not to advance that position in writing.