**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) ) ) ) ) ) ) ) ) | MDL 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster<br><br>**OPINION AND ORDER DENYING DDM'S MOTION FOR SUMMARY JUDGMENT** |
| THIS DOCUMENT RELATES TO: | | |
| *Track One-B Cases* | | |

Before the Court is Discount Drug Mart, Inc's ("DDM's") Motion for Summary Judgment (Doc. #: 1863). For the reasons set forth below, the Motion is **DENIED**.

Against DDM, Plaintiffs assert common law public nuisance and civil conspiracy claims based on an alleged failure to maintain effective controls against diversion.[1] DDM seeks summary judgment, asserting Plaintiffs cannot show that any prescription opioids DDM shipped to its own pharmacies were actually diverted from appropriate medical use or caused the harm that Plaintiffs claim. DDM also maintains the statute of limitations bars any claims based on distributions occurring before May 18, 2014.

---

[1] Against the Pharmacy Defendants, the Court has severed all claims except absolute public nuisance and civil conspiracy. *See* Track One-B Case Mgmt. Order at 2, 4 n.5 (Doc. #: 2940); Pls. Revised Position Stmt. re: Continuing Litigation at 3 (Doc. #: 2935). The Court therefore does not address DDM's motion as to any severed claims. The Court has granted Plaintiffs leave to add dispensing claims and related dispensing entities, *see* Track One-B Case Mgmt. Order at 4 (Doc. #: 2940); those claims are not addressed in DDM's motion.

**I.      Legal Standards.**

The Court incorporates the legal standards set forth in the Court's Opinion and Order regarding Plaintiffs' Summary Judgment Motions Addressing the Controlled Substances Act. *See* Doc. #: 2483.

**II.     Analysis.**

**A.      Statute of Limitations.**

DDM asserts the longest possible statute of limitations is four years, which would bar any claims based on opioid distributions occurring before May 18, 2014. Mem. at 2 (Doc. #: 1863-1). DDM asserts it stopped distributing opioids into Summit and Cuyahoga Counties on October 6, 2014; thus, only shipments from May 18 to October 6, 2014 may potentially subject it to liability.

In its earlier ruling on Defendants' motions for summary judgment, the Court ruled that, under Ohio law, no statute of limitations applies to public nuisance claims or to conspiracy claims based on a public nuisance. *See* SJ Order on SOL at 3-6, 12 (Doc. #: 2568). In light of this ruling, DDM's arguments concerning the statute of limitations are not well-taken.

**B.      Causation.**

DDM next argues it is entitled to summary judgment because "the record is devoid of any evidence that DDM caused any harm to Plaintiffs." Mem. at 3 (Doc. #: 1863-1). DDM asserts Plaintiffs cannot prove DDM's actions were a substantial factor contributing to Plaintiffs' alleged harms, because DDM distributed less than 0.9% of the opioids shipped into the *Track One* Counties. *Id.* at 3. DDM maintains it could not have created a public nuisance because it captured only a small market share and distributed only to its own pharmacies. *Id.* at 3-4.

Plaintiffs respond that DDM's 0.9% market share amounted to "nearly 12 million dosage units to its pharmacies in Cuyahoga County and over 3.4 million dosage units to its pharmacies in Summit County between 2006 and 2014." Opp. at 6 (Doc. #: 2214). Plaintiffs offer evidence that DDM failed to establish an effective suspicious order monitoring system ("SOMS"), as required by the Controlled Substances Act. *Id*. at 1-2. For example, Plaintiffs cite the deposition testimony of Jill Strang, a DDM employee responsible for reviewing reports listing pharmacies that placed orders in excess of their trailing six-week average. Strang testified these reports were actually not sent to her, but rather to the pharmacy in question. She stated she only received the report if the pharmacy sent it to her; thus, her review of potentially suspicious orders was essentially controlled by the very pharmacy that received those orders. *Id.*[2] Plaintiffs also point to deposition testimony of DDM employee Tom Nameth, who indicated DDM did not monitor suspicious orders in a way that would permit it to halt any suspicious orders before shipping them. *Id.*[3]

In reply, DDM asserts it "has not been the subject of a DEA enforcement action associated with DDM's opioid distributions, nor has DDM ever been charged with, much less convicted of, any crimes relating to opioids." Reply at 2 (Doc. #: 2508). This agency inaction, however, does not show conclusively that DDM's compliance efforts were adequate as a matter of law, nor does it insulate DDM from Plaintiffs' evidence of causal links in the claims of public nuisance or civil conspiracy.

On the existing record, Plaintiffs have presented evidence sufficient to establish a triable issue of fact regarding the adequacy of DDM's suspicious order monitoring system. In addition, Plaintiffs have submitted evidence upon which a jury could reasonably conclude that DDM's

---

[2] *See* Strang Dep. at 68:17-76:10 (Doc. #: 1984-23).

[3] *See* Nameth Dep. at 123:6-125:2 (Doc. #: 1982-11).

3

distribution of opioids in the *Track One* Counties contributed substantially to Plaintiffs' alleged harms, despite DDM's small market share. The Court has previously denied the Distributor Defendants' Motion for Summary Judgment on Proximate Causation Grounds (Doc. #: 1920), concluding that, based on "the massive increases in the supply of prescription opioids into the *Track One* Counties, combined with evidence that suggests a complete failure by the Distributors and Pharmacies to maintain effective controls against diversion, a factfinder could reasonably infer these failures were a substantial factor in producing the alleged harm suffered by Plaintiffs." SJ Order re: Causation at 9 (Doc. #: 2561). The Court has also denied summary judgment motions brought by other arguably *de minimis* distributors of opioids, including one that purported to have shipped "only 0.03% of opioids sold in Summit County between 2006 and 2014." SJ Order re: Small Distributors (Doc. #: 2559). In so ruling, the Court noted that "even a very small proportional contribution by one of numerous defendants could equate with a rather large and substantial absolute quantity, both in monetary terms and in terms of the consequent harms." *Id.* at 5.

Based on these earlier rulings and Plaintiffs' evidence of insubstantial anti-diversion efforts, the Court finds Plaintiffs have produced evidence upon which a jury could reasonably conclude DDM's distribution activities caused Plaintiffs' alleged injuries. Accordingly, DDM is not entitled to summary judgment.

## III. Conclusion.

For the reasons stated above, DDM's Motion for Summary Judgment (Doc. #: 1863) is **DENIED**.

       **IT IS SO ORDERED.**

    /s/ Dan Aaron Polster  *January 27, 2020*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**