UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *Track One-B Cases* | ) MDL 2804 <br> ) <br> ) Case No. 1:17-md-2804 <br> ) <br> ) Judge Dan Aaron Polster <br> ) <br> ) **OPINION AND ORDER DENYING** <br> ) **RITE AID'S MOTION FOR** <br> ) **SUMMARY JUDGMENT** |

Before the Court is Rite Aid's Motion for Summary Judgment (Doc. #: 1888). For the reasons set forth below, the Motion is **DENIED.**

Against Rite Aid, Plaintiffs assert common law public nuisance and civil conspiracy claims based on an alleged failure to maintain effective controls against diversion.[1] Rite Aid seeks summary judgment, asserting Plaintiffs: (1) lack expert testimony to show its suspicious order monitoring system ("SOMS") was deficient; and (2) cannot show any of its opioid distributions caused the harm that Plaintiffs claim.

---

[1] Against the Pharmacy Defendants, the Court has severed all claims except absolute public nuisance and civil conspiracy. *See* Track One-B Case Mgmt. Order at 2, 4 n.5 (Doc. #: 2940); Pls. Revised Position Stmt. re: Continuing Litigation at 3 (Doc. #: 2935). The Court therefore does not address Rite Aid's motion as to any severed claims. The Court has granted Plaintiffs leave to add dispensing claims and related dispensing entities, *see* Track One-B Case Mgmt. Order at 4 (Doc. #: 2940); those claims are not addressed in Rite Aid's motion.

**I. Legal Standards.**

The Court incorporates the legal standards set forth in the Court's Opinion and Order regarding Plaintiffs' Summary Judgment Motions addressing the Controlled Substances Act. *See* Doc. #: 2483.

**II. Analysis.**

**A. Expert Testimony Regarding SOMS.**

Rite Aid argues it is entitled to summary judgment because Plaintiffs have no expert to testify that its SOMS was deficient. In other words, Rite Aid contends that, as a matter of law, determining whether a defendant's SOMS was effective is a matter outside the common knowledge of a layperson such that expert testimony is required. *See* Mem. at 4-5 (Doc. #: 1888-1).

Plaintiffs respond expert testimony is not required because, on the facts of this case, the breach of duty is so obvious it can be easily recognized by an average juror.[2] *See* Opp. at 2-4 (Doc. #: 2184). Specifically, Plaintiffs point to, *inter alia*, evidence suggesting the following facts. Rite Aid maintained a list of "suspicious prescribers" but did not actually take any steps to identify whether orders from those prescribers were suspicious.[3] Although Rite Aid utilized an asset protection system that could identify suspicious orders, it identified such orders only after they

---

[2] Plaintiffs also assert they *do* have an expert, Seth Whitelaw, who can testify about the applicable standard of care. *See* Opp. at 5 (Doc. #: 2184). In ruling on Defendants' *Daubert* motions, however, the Court granted Defendants' motion as to Whitelaw and excluded his testimony. *See* Doc. #: 2551. The Court notes that another of Plaintiffs' experts, James Rafalski, a former DEA investigator, may testify about, *inter alia*, the components of an effective SOMS and the importance of retaining documentation to maintain effective control and prevent diversion. *See* Doc. #: 2494 at 9-10.

[3] Janet Hart Depo. at 163:4-10, 173:1-22 (Doc. #: 3025-54).

were shipped; Rite Aid did not use the system to report suspicious orders to the DEA.[4] Further, Rite Aid did not identify or report as suspicious any orders from stores: (1) that dispensed opioids to customers of a notorious, convicted Ohio pill-mill doctor;[5] or (2) whose pharmacists lost their licenses for diverting controlled substances.[6] Rite Aid utilized a threshold-based SOMS that imposed the same threshold to every store, regardless of its dispensing volume trends.[7] If an order came in above a store's threshold limit, Rite Aid would fill the order to the threshold limit from its own distribution center and allow the store to pick up the additional quantity from distributor McKesson.[8] Rite Aid did not perform due diligence on these orders.[9]

Construed in a light most favorable to Plaintiffs, the existing record presents a triable issue of fact regarding the adequacy of Rite Aid's suspicious order monitoring system.[10] Moreover, this evidence suggests obvious deficiencies that a layperson could plainly recognize. *See, e.g., United States v. Elliot*, 876 F.3d 855, 866 (6th Cir. 2017) (expert testimony was not necessary in light of "evidence of plainly improper prescribing practices that a lay juror could recognize as illegitimate"). Accordingly, Rite Aid is not entitled to summary judgment on this ground.

---

[4] *See* Hart Depo. at 269:6-11 (Doc. #: 3025-54).

[5] *See* Hart Depo. at 186:3-8 (Doc. #: 3025-54); Pls. Ex. 3 (email correspondence increasing a store's threshold based on an increased demand for Oxycodone prescribed by Dr. Adolph Harper).

[6] *See* Hart Depo. at 210:13-18, 217:1-23 (Doc. #: 3025-54).

[7] *See* Hart Depo. at 235:6-24 (Doc. #: 3025-54).

[8] *See* Hart Depo. at 251:11-15, 251:23 to 252:4 (Doc. #: 3025-54).

[9] *See* Debra Chase Depo. at 94:7-18 (Doc. #: 3025-28).

[10] In light of this finding, the Court does not address Plaintiffs' argument that a jury could find Rite Aid's SOMS was deficient based on the mere fact that, during the height of the opioid crisis, it did not report a single order as suspicious. *See* Opp. at 3-4 (Doc. #: 2184).

## B. Causation.

Rite Aid asserts Plaintiffs cannot show its opioid distributions substantially caused their alleged injuries. Specifically, Rite Aid contends it distributed as little as .048% of the total number of milligrams of morphine equivalents, or MMEs, in Cuyahoga and Summit Counties, and Plaintiffs cannot show any diversion or injury resulted from Rite Aid shipments.[11] *See* Opp. at 6 (Doc. #: 2184).

The Court has previously denied the Distributor Defendants' Motion for Summary Judgment on Proximate Causation Grounds (Doc. #: 1920), concluding that, based on "the massive increases in the supply of prescription opioids into the *Track One* Counties, combined with evidence that suggests a complete failure by the Distributors and Pharmacies to maintain effective controls against diversion, a factfinder could reasonably infer these failures were a substantial factor in producing the alleged harm suffered by Plaintiffs." SJ Order re: Causation at 9 (Doc. #: 2561). Additionally, the Court has denied summary judgment motions brought by other arguably *de minimis* distributors of opioids, including one that purported to have shipped "only 0.03% of opioids sold in Summit County between 2006 and 2014." SJ Order re: Small Distributors (Doc. #: 2559). In so ruling, the Court noted "even a very small proportional contribution by one of numerous defendants could equate with a rather large and substantial absolute quantity, both in monetary terms and in terms of the consequent harms." *Id.* at 5.

Based on these earlier rulings and Plaintiffs' evidence of insubstantial anti-diversion efforts, the Court finds Plaintiffs have produced evidence upon which a jury could reasonably conclude Rite Aid's distribution activities caused Plaintiffs' alleged injuries. Accordingly, Rite Aid is not entitled to summary judgment.

**III. Conclusion.**

For the reasons stated above, the Motion is **DENIED**.

**IT IS SO ORDERED.**

      <u>/s/ Dan Aaron Polster *January 27, 2020*</u>
      **DAN AARON POLSTER**
      **UNITED STATES DISTRICT JUDGE**

---

[11] Rite Aid asserts that, from January 2006 to December 2014, it distributed 0.71% of the total MMEs in the *Track One* Counties and, "during the limitations period (after April 2014)," its share was 0.048%. *See* Mem. at 2 (Doc. #: 1888-1). To the extent Rite Aid may be asserting that Plaintiffs' claims are partially time-barred, the Court rejects the arguments for the reasons stated in its earlier ruling on Defendants' motions for summary judgment. *See* SJ Order on SOL at 3-6, 12 (Doc. #: 2568) (under Ohio law, no statute of limitations applies to public nuisance claims or to conspiracy claims based on a public nuisance).