UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 ) |
| | ) |
| THIS DOCUMENT RELATES TO: | ) Case No. 1:17-md-2804 ) |
| *Track One-B Cases* | ) Judge Dan Aaron Polster ) |
| | ) **OPINION AND ORDER DENYING** ) **HBC'S MOTION FOR SUMMARY** ) **JUDGMENT** |

Before the Court is HBC Service Company's ("HBC's") Motion for Summary Judgment (Doc. #: 1923). For the reasons set forth below, the Motion is **DENIED.**

Against HBC, Plaintiffs assert common law public nuisance and civil conspiracy claims based on an alleged failure to maintain effective controls against diversion.[1] HBC seeks summary judgment, asserting Plaintiffs: (1) lack expert testimony to show its suspicious order monitoring system ("SOMS") was deficient; and (2) cannot show any of its opioid distributions caused the harm that Plaintiffs claim.

---

[1] Against the Pharmacy Defendants, the Court has severed all claims except absolute public nuisance and civil conspiracy. *See* Track One-B Case Mgmt. Order at 2, 4 n.5 (Doc. #: 2940); Pls. Revised Position Stmt. re: Continuing Litigation at 3 (Doc. #: 2935). The Court therefore does not address HBC's motion as to any severed claims. The Court has granted Plaintiffs leave to add dispensing claims and related dispensing entities, *see* Track One-B Case Mgmt. Order at 4 (Doc. #: 2940); those claims are not addressed in HBC's motion.

I. **Legal Standards.**

The Court incorporates the legal standards set forth in the Court's Opinion and Order regarding Plaintiffs' Summary Judgment Motions addressing the Controlled Substances Act. *See* Doc. #: 2483.

II. **Analysis.**

 A. **Expert Testimony Regarding SOMS.**

HBC argues it is entitled to summary judgment because Plaintiffs have not offered expert testimony to show its SOMS was deficient. In other words, HBC contends that, as a matter of law, determining whether a defendant's SOMS was effective is a matter outside the common knowledge of a layperson such that expert testimony is required. *See* Mem. at 10-13 (Doc. #: 1923-1); Reply at 3-4 (Doc. #: 2510).

Plaintiffs respond that expert testimony is not required because, on the facts of this case, the breach of duty is so obvious it can be easily recognized by an average juror.[2] *See* Opp. at 7-8 (Doc. #: 2178). Specifically, Plaintiffs point to, *inter alia*, evidence suggesting the following facts. From 2009 to 2014, HBC distributed Schedule III opioids to its chain of over 200 pharmacies.[3] Although it began distributing opioids in 2009, HBC did not issue written policies for suspicious

---

[2] Plaintiffs also assert they *do* have experts, James Rafalski and Seth Whitelaw, who can testify about the applicable standard of care. *See* Opp. at 8 (Doc. #: 2178). In ruling on Defendants' *Daubert* motions, the Court found Rafalski, a former DEA investigator, may testify about, *inter alia*, the components of an effective SOMS and the importance of retaining documentation to maintain effective control and prevent diversion. *See* Doc. #: 2494 at 9-10. The Court granted Defendants' motion as to Whitelaw, however, and excluded his testimony. *See* Doc. #: 2551.

[3] HBC stopped distributing all opioid products in January of 2016. *See* Pls. Ex. 6 at 10 (HBC's Amended Responses to Plaintiffs' First Set of Combined Discovery Requests).

order monitoring until 2014. *See* Opp. at 2 (Doc. #: 2178).[4] Before 2013, HBC had no automated daily order reports.[5] In 2013, it implemented a system that generated automated reports to flag potentially suspicious orders;[6] however, this system applied the same uniform threshold number to all of its stores, based on a multiplier of three times the average of all the stores' orders for drugs containing the same active ingredient.[7] In other words, HBC did not tailor the thresholds to a store's historical or other needs; a store that historically ordered on the low end could easily triple or more its opioid orders before reaching the threshold limit. Moreover, the system did not automatically stop orders that exceeded the threshold level.[8] Prior to 2017, HBC did not keep written records or files of due diligence it conducted (if any) of suspicious orders.[9] In response to a discovery request for information regarding each order that HBC had identified as suspicious since 2006, HBC listed two orders: one in 2013 and the other in 2016.[10]

HBC provided no educational or other information to its customers or stores concerning the diversion, safety, efficacy, misuse, or prescription of opioids or opioid products.[11] Between

---

[4] *See also* Pls. Ex. 6 at 8-9 (HBC's Amended Responses to Plaintiffs' First Set of Combined Discovery Requests). HBC contends it *did* have earlier SOMS policies that it did not archive. *See* Reply at 4-5 (Doc. #: 2510). HBC's reply merely highlights the factual issues at play.

[5] Tsipakis Depo. at 256:17-23 (Doc. #: 3027-32).

[6] Tsipakis Depo. at 256:4-16 (Doc. #: 3027-32).

[7] Tsipakis Depo. at 118:2-24 (Doc. #: 3027-32).

[8] Tsipakis Depo. at 213:8-11 (Doc. #: 3027-32).

[9] Tsipakis Depo. at 160:24 to 162:24 (Doc. #: 3027-32); Chunderlik Depo. at 134:8-13, 219:18-24.

[10] Pls. Ex. 6 at 10-11 (HBC's Amended Responses to Plaintiffs' First Set of Combined Discovery Requests).

[11] Pls. Ex. 1 at 42-43 (HBC's Supplemental Answers to Plaintiffs' First Set of Interrogatories).

2009 and 2014, HBC discovered multiple instances where theft had occurred out of its pharmacies.[12] For example, in 2011, HBC's store #4098 in Chardon, Ohio entered into a settlement agreement with the Ohio State Board of Pharmacy (the "Board") regarding the theft of opioids by a supervised technician.[13] The Board charged that the store had failed to provide effective controls against diversion and did not adequately supervise the technician,[14] and further alleged the technician stole thousands of doses of opioid products, ranging from 50 to 80 percent of the store's stock of a particular drug. *See* Opp. at 5 (Doc. #: 2178). The HBC store did not admit or deny the allegations, but agreed to implement certain anti-diversion policies and pay a $1,000 fine.[15]

Construed in a light most favorable to Plaintiffs, the existing record presents a triable issue of fact regarding the adequacy of HBC's suspicious order monitoring system. Moreover, the evidence suggests obvious deficiencies that a layperson could plainly recognize. *See, e.g., United States v. Elliot*, 876 F.3d 855, 866 (6th Cir. 2017) (expert testimony was not necessary in light of "evidence of plainly improper prescribing practices that a lay juror could recognize as illegitimate"). Accordingly, HBC is not entitled to summary judgment on this ground.

---

[12] Tsipakis Depo. at 103:1-13 (Doc. #: 3027-32).

[13] Pls Ex. 10 at OBPM_MDL_000000063.0003-000000063.0006.

[14] Pls Ex. 10 at OBPM_MDL_000000063.0003-000000063.0006.

[15] Pls Ex. 10 at OBPM_MDL_000000063.0003-000000063.0006.

**B.     Causation.**

HBC also asserts Plaintiffs cannot show its opioid distributions substantially caused their alleged injuries. Specifically, HBC contends Plaintiffs have not identified any specific, inappropriate prescriptions that it distributed. *See* Mem. at 14-15 (Doc. #: 1923-1). HBC further asserts it is responsible for only a small market share of less than 1% of the total opioids distributed in the *Track One* Counties. *See id.* at 15-16.

The Court has previously denied the Distributor Defendants' Motion for Summary Judgment on Proximate Causation Grounds (Doc. #: 1920), concluding that, based on the "massive increases in the supply of prescription opioids into the *Track One* Counties, combined with evidence that suggests a complete failure by the Distributors and Pharmacies to maintain effective controls against diversion, a factfinder could reasonably infer these failures were a substantial factor in producing the alleged harm suffered by Plaintiffs." SJ Order re: Causation at 9 (Doc. #: 2561). Additionally, the Court has denied summary judgment motions brought by other arguably *de minimis* distributors of opioids, including one that purported to have shipped "only 0.03% of opioids sold in Summit County between 2006 and 2014." SJ Order re: Small Distributors (Doc. #: 2559). In so ruling, the Court noted that "even a very small proportional contribution by one of numerous defendants could equate with a rather large and substantial absolute quantity, both in monetary terms and in terms of the consequent harms." *Id.* at 5. Based on these earlier rulings and Plaintiffs' evidence of insubstantial anti-diversion efforts, the Court finds Plaintiffs have produced evidence upon which a jury could reasonably conclude HBC's distribution activities caused Plaintiffs' alleged injuries. Accordingly, HBC is not entitled to summary judgment.

### III. Conclusion.

For the reasons stated above, the Motion is **DENIED**.

    **IT IS SO ORDERED.**

                                           **/s/ Dan Aaron Polster** *January 27, 2020*
                                           **DAN AARON POLSTER**
                                           **UNITED STATES DISTRICT JUDGE**