UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*Track One-B Cases* | MDL No. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

**OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE OR SEVER
PHARMACY DEFENDANTS' THIRD-PARTY COMPLAINTS**

Nowhere in Plaintiffs' motion do they dispute the central and dispositive fact that makes the Pharmacy Defendants' Third-Party Complaints appropriate and necessary: Under Plaintiffs' own theory, there could have been no harm to Plaintiffs, and thus no liability on the part of any of the Pharmacy Defendants, unless prescribers wrote improper prescriptions for prescription opioid medications that pharmacists employed by the Pharmacy Defendants filled.

Unable to sidestep this dispositive fact, Plaintiffs resort to misdirection, applying the wrong standard under Rule 14, mischaracterizing the theory of the Third-Party Complaints, and suggesting (incorrectly) that the Pharmacy Defendants needed the Court's leave to file the Third-Party Complaints and that they fail to state a claim.  Even more brazenly, Plaintiffs refuse to acknowledge that the need for, and the ultimate scope of, the Third-Party Complaints *is entirely up to Plaintiffs*.  It was Plaintiffs' choice to amend their complaints in November 2019—a full 18 months after first suing the Pharmacy Defendants—to assert the very dispensing claims Plaintiffs had repeatedly disavowed during motions practice and discovery.  And should Plaintiffs finally comply with the Pharmacy Defendants' discovery requests and orders by the Special Master to identify the specific prescriptions they allege the Pharmacy Defendants should not have filled, it will be Plaintiffs' choice how many prescribers they accuse of improperly

1

prescribing opioids to patients in Cuyahoga and Summit Counties.

Under settled principles of third-party practice under Rule 14, and in a case alleging widespread dispensing violations by the Pharmacy Defendants necessarily based in part on allegedly improper prescribing, the considerations of judicial economy and prejudice weigh decidedly in favor of the Third-Party Complaints and against Plaintiffs' motion.

## ARGUMENT

Rule 14 of the Federal Rules of Civil Procedure authorizes a defendant to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." The purpose of the rule is to allow "additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). A defendant may file a third-party complaint as a matter of right within 14 days after serving its answer and with leave of court thereafter. *See* FED. R. CIV. P. 14(a)(1). Even where leave is required, "timely motions for leave to implead third parties should be freely granted . . . unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Trane U.S. Inc. v. Meehan*, 250 F.R.D. 319, 322 (N.D. Ohio 2008) (quotation marks omitted).

**I.    The Third-Party Claims Are Factually and Legally Dependent on the Outcome of Plaintiffs' New Dispensing Claims Against the Pharmacy Defendants**

According to Plaintiffs, the Pharmacy Defendants' claims are not valid third-party claims under Rule 14 because "Plaintiffs' claims against the Pharmacy Defendants are not derivative of any potential claims against the putative Prescriber Defendants." Mot. at 6. Plaintiffs have it exactly backwards. The question is *not* whether Plaintiffs' claims are somehow dependent on the third-party claims against the Prescriber Defendants—as if Plaintiffs must sue the Prescriber

2

Defendants in order to prevail against the Pharmacy Defendants.  Instead, Rule 14 asks whether the third-party claims are derived from the Prescriber Defendants' "actual or potential liability" to the Pharmacy Defendants "for all or part of" Plaintiffs' claims.  *See Am. Zurich*, 512 F.3d at 805.  Put differently, the validity of a third-party claim turns on whether "the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party."  *Trane*, 250 F.R.D. at 322 (quoting Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1446 (2d ed.)).  "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against defendant by the original plaintiff."  Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1446 (3d ed.).  Because the Pharmacy Defendants' claims against the Prescriber Defendants obviously depend on the outcome of Plaintiffs' new dispensing claims, they are valid under Rule 14.  *See id.* & n.8 ("[I]mpleader has been successfully utilized when the basis of the third-party claim is . . . indemnity [or] contribution," as well as "misrepresentation" and "negligence").

The Northern District of Ohio's decision in *Trane* is instructive.  In that case, a plaintiff manufacturer brought claims against its franchisee for failing to comply with policies governing accounting and payment to plaintiff for certain sales.  Five months after losing an initial motion for a temporary restraining order, defendants sought to file a third-party complaint against nine sales engineers "involved in the transactions" where defendants allegedly violated the policies.  *Trane*, 250 F.R.D. at 321.  Over objections virtually identical to Plaintiffs' here, the court granted leave to file the third-party complaint because "the factual issues in the primary and the third-party complaint overlap" and "[t]he legal issues are also related."  *Id.* at 322.  While adding third-party defendants introduced "new issues into the case," the court found that the third-party claims were proper because "there is still a ***logical relationship*** between the third party claims

3

and the transaction or occurrence that is the subject matter of the complaint." *Id.* (quotation marks omitted) (emphasis added).  The same type of "logical relationship" exists here.

### A. The Third-Party Claims Are Factually Related to Plaintiffs' Claims

Plaintiffs cannot deny that a key factual premise of their new dispensing claims against the Pharmacy Defendants is improper prescribing by the Prescriber Defendants.  Indeed, the very heart of Plaintiffs' dispensing claims is that pharmacists working for the Pharmacy Defendants supposedly filled prescriptions for an "excessive volume" of opioid medications—prescriptions that necessarily originated with the Prescriber Defendants.  *See* Dkt. No. 3065, Cuyahoga Third-Party Complaint ("Third-Party Compl.") ¶ 1 & n.1.  After all, Plaintiffs do not allege that any of the Pharmacy Defendants' pharmacists dispensed opioid medication to patients who did not have prescriptions, or filled forged prescriptions.  *Id.* ¶¶ 31, 36.  Without excessive ***prescribing***, Plaintiffs excessive ***dispensing*** claims against the Pharmacy Defendants fail.[1]

Plaintiffs try to argue that their claims are not based "merely" on the fact that prescriptions were allegedly filled improperly but also on allegedly inadequate corporate systems and policies.  Mot. at 7.  But the supposed inadequacy of the systems and policies—systems and policies the Pharmacy Defendants had no legal obligation to maintain—is that they allegedly did not do enough to identify ***improper prescriptions***.  Plaintiffs offer no explanation for how inadequate systems and policies could possibly have caused Plaintiffs' injuries ***unless*** they resulted in the filling of improper prescriptions written by the Prescriber Defendants.

---

[1] Of course, Plaintiffs' dispensing theory fails for the far more basic reason that "excessive volume" is insufficient to show improper dispensing as a matter of law.  *See* **Exhibit A** at 8-9 (Order, *In the Matter of Holiday CVS, L.L.C., d/b/a/ CVS/Pharamcy #00219, et al.* (April 13, 2012)) ( "[A]bsent a nexus to a red flag of diversion, proposed testimony and exhibits . . . designed to demonstrate aggregate numbers and relative aggregate numbers of controlled substances prescriptions dispensed by the Respondents do not constitute relevant evidence [of dispensing violations].").  But whatever its other flaws, Plaintiffs' theory undeniably requires improper prescribing.

### B. The Third-Party Claims Are Legally Related to Plaintiffs' Claims

The legal issues are similarly intertwined.  Whether a prescription was written for a "legitimate medical purpose" by a licensed prescriber "in the usual course of his professional practice," 21 C.F.R. § 1306.04(a), is closely tied to any evaluation of whether a pharmacist properly exercised his or her "corresponding responsibility" to fill that prescription.  Indeed, the very term "corresponding responsibility" clearly signals a relationship between the two.  Nor can Plaintiffs deny that the Pharmacy Defendants' claims exhibit the "crucial characteristic" of Rule 14—seeking to transfer the liability asserted against the Pharmacy Defendants to third parties.  *E.g.*, Third-Party Compl. ¶ 10 ("[I]f the . . . Pharmacy Chains can be held liable to Plaintiff for filling prescriptions written by the Prescriber Defendants[,] ultimate responsibility must rest with those who wrote the prescriptions: the Prescriber Defendants themselves."); *id.* ¶ 37 ("[I]f the . . . Pharmacy Chains were to be found liable to Plaintiff because their pharmacists filled these prescriptions, it would be only because the pharmacists relied in good faith on facially valid prescriptions written and/or authorized by one of the Prescriber Defendants.").

In response, Plaintiffs argue that the Pharmacy Defendants' third-party claims are somehow not sufficiently related because pharmacists have a "corresponding responsibility" under federal law, are "not *required* to fill a prescription merely because a physician has authorized a prescription," and thus "it is a legal fallacy that the prescribers may be held responsible for the Pharmacy Defendants' failures to fulfill their legal duties."  Mot. at 5-7 (emphasis added).  Beyond confusing the ultimate merits of the third-party claims with their relationship to Plaintiffs' claims under Rule 14, Plaintiffs also grossly mischaracterize the Pharmacy Defendants' theory of third-party liability.  The Third-Party Complaints acknowledge that pharmacists have a "corresponding responsibility" under federal law, *see, e.g.*, Third-Party Compl. ¶¶ 9, 34, and never once suggest that a pharmacist is "obligated" to fill a prescription

5

written by a physician "if he knows or has reason to know that the prescription was not written for a legitimate medical purpose," *Medic-Aid Pharmacy*, 55 Fed. Reg. 30,043, 30,044 (D.E.A. July 24, 1990).  To the contrary, the Pharmacy Defendants specifically allege that any potential liability arises because their pharmacists "*reasonably relied in good faith*" on prescriptions by the Prescriber Defendants.  Third-Party Compl. ¶ 38 (emphasis added).

Plaintiffs' argument also fails on the merits.  Plaintiffs' central theory is that "[f]ederal law does not apportion the responsibility for dispensing unlawful prescriptions between a prescribing practitioner and a pharmacist" but instead imposes "separate and independent duties on the prescriber and the pharmacist."  Mot. at 6 (quoting *East Main Street Pharmacy*, 75 Fed. Reg. 66,149, 66,157 n.30 (D.E.A. 2010)).  But whether federal law apportions responsibility between prescribers and pharmacists for purposes of regulatory enforcement actions by DEA is neither here nor there.  Like Plaintiffs, the Pharmacy Defendants bring common law claims under Ohio law.[2]  And Plaintiffs do not dispute that "it is always the prescriber's own responsibility, which the prescriber cannot delegate to the pharmacist or anyone else, to ensure that prescriptions for controlled substances are proper in all respects."  Third-Party Compl. ¶ 9. Nor do they dispute that pharmacists "do not and cannot examine patients, take patients' medical histories, diagnose patients' medical conditions, or prescribe treatment."  *Id.* ¶ 34.

The authorities on which Plaintiffs rely are fully consistent with the Pharmacy Defendants' theory.  In *East Main Street Pharmacy*, the DEA explained that it is the *prescriber* who "must act within the usual course of professional practice and have a legitimate medical purpose to lawfully issue a controlled-substance prescription" and "must act in accordance with a standard of medical practice generally recognized and accepted in the United States."  75 Fed.

---

[2] In *East Main Street Pharmacy*, DEA noted that "Ohio courts may have interpreted State law" differently when it comes to allocating responsibility between prescribers and pharmacists.  *See* 75 Fed. Reg. 66149, 66157 n.30.

6

Reg. at 66,157 n.30 (quotation marks omitted).  A pharmacist, by contrast, "is not required to . . . practice medicine."  *Id.* (quotation marks omitted).  According to DEA, what is required of a pharmacist under federal law is "not to fill an order that purports to be a prescription but is not a prescription within the meaning of the statute *because he knows [or has reason to know]* that the issuing practitioner issued it outside the scope of medical practice."  *Id.* (emphasis added) (quotation marks omitted) (alteration in original).

The Pharmacy Defendants emphatically deny Plaintiffs' allegation that hundreds of doctors and other licensed prescribers in Cuyahoga or Summit Counties improperly prescribed opioid medications that the Pharmacy Defendants' pharmacists then filled.  The evidence will show just the opposite.  But if Plaintiffs ever were to prevail in their sweeping claims against the Pharmacy Defendants, that could *only* be based on a finding of improper prescribing that pharmacists working for the Pharmacy Defendants failed to identify.  Because the Third-Party Complaints are factually and legally intertwined with Plaintiffs' dispensing claims and seek to shift liability to the Prescriber Defendants, they are valid under Rule 14.

## II. Plaintiffs' Motion Fails to Identify Any Other Grounds That Would Justify Striking or Severing the Third-Party Complaints

The Third-Party Complaints are necessary and proper under Rule 14, permitting "additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit."  *Am. Zurich*, 512 F.3d at 805.  While federal courts have the power to strike or sever third-party claims upon a party's motion, doing so here would waste judicial resources and prejudice the rights of both the Pharmacy Defendants and the Prescriber Defendants.  Plaintiffs' motion fails to identify any grounds that would justify striking or severing the Third-Party Complaints.  *Cf. Trane*, 250 F.R.D. at 322 ("[T]imely motions for leave to implead third

7

parties should be *freely granted* . . . unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim.") (emphasis added).

### A. The Third-Party Complaints Are Timely

Under Rule 14(a)(1), the Pharmacy Defendants had 14 days after filing answers to the Amendments by Interlineation to file any third-party complaints—and could do so *without seeking leave of court*.  The Pharmacy Defendants each filed answers on December 23, 2019, and filed the Third-Party Complaints 14 days later, on January 6, 2020.  *See* Dkt. Nos. 3037-48; Dkt. Nos. 3064 & 3065.  While the language of Rule 14 refers to an "original" answer, Plaintiffs acknowledge that courts frequently find that an answer to an amended complaint qualifies where, as here, the amendments form the basis for the third-party claims.  Mot. at 3; *see also, e.g.*, *Reynolds v. Rick's Mushroom Serv., Inc.*, 2003 WL 22741335, *4 (E.D. Pa. Nov. 17, 2003); *Guarantee Co. of N. Am. v. Pinto*, 208 F.R.D. 470, 473 (D. Mass. 2002); *Nelson v. Quimby Island Reclamation Dist. Facilities Corp.*, 491 F. Supp. 1364, 1387 (N.D. Cal. 1980).  Likely for that reason, Plaintiffs' procedural objections focus almost exclusively on the truly remarkable proposition that their dispensing claims "are not new."  *See* Mot. at 3.

Plaintiffs' dispensing claims *are* new.  This is not open to any reasonable dispute, given that Plaintiffs assert extensive new allegations of improper dispensing in their Amendments by Interlineation, *see, e.g.*, Dkt. No. 2943 ¶¶ 32, 60, 70, 84; Dkt. No. 2944 ¶¶ 32, 57, 66, 81, and were forced to include allegations and claims against entirely new Pharmacy Defendant entities to capture actual dispensing activity, Mot. at 3 n.1 (acknowledging that the amendments "further specified some of the entities associated with some of the Defendant families").

Plaintiffs actually suggest with a straight face that dispensing claims "date back at least to Plaintiffs' May 2018 Complaints" and just "were ultimately not the focus of the narrowed CT1 trial track."  *Id.* at 3-4.  Plaintiffs' creative retelling is completely belied by their unequivocal

8

disavowal in June 2018 that they were alleging *any* dispensing violations—much less asserting dispensing claims.  As Plaintiffs stated in bellwether motions to dismiss briefing, "Plaintiffs do not allege violations of statutes or regulations applicable specifically to retailers who sell opioids."  Dkt. No. 654 at 75 n.47.  Taking that statement at face value, this Court ruled: "[T]he Court understands that Plaintiffs have disclaimed any cause of action against Retail Pharmacies in their capacity as retailers or dispensers of opioids, *see* Doc. #: 654 at 75 n.47, and thus . . . the Retail Pharmacies may only be held liable as distributors."  Dkt. No. 1203 at 2.[3]

### B.  Any Complexity or Delay (If There Is Any) Is the Result of Plaintiffs' Own Choice to Insert Dispensing Claims and Is Fully Under Plaintiffs' Control

Plaintiffs complain that if the Third-Party Complaints are not struck or severed it will complicate the case and delay the Track 1B trial.  Mot. at 10-11.  This is so, Plaintiffs insist, because of the time needed for (1) the Pharmacy Defendants to produce Ohio dispensing data; (2) for Plaintiffs to identify the allegedly improper prescriptions written by specific Prescriber Defendants and filled by the Pharmacy Defendants; and (3) for all parties to undertake discovery regarding those prescriptions, prescribers, and pharmacists.  *Id.* at 11.  But Plaintiffs neglect to mention that all of that discovery is *already underway*—independent of the third-party claims— because of Plaintiffs' choice to introduce dispensing claims for the first time in November, a year and a half after asserting only distribution claims against the Pharmacy Defendants.[4]  The fact

---

[3] Plaintiffs clear statement and this Court's ruling also explains why general allegations about excessive volume or prescribing in Cuyahoga and Summit Counties in no way triggered some requirement for the Pharmacy Defendants to produce highly-sensitive dispensing data during Track 1 or to file the Third-Party Complaints at an earlier date.  *See* Mot. at 4 & n.2.  Whatever Plaintiffs' legal theory might be today or might have been as to other Distributor Defendants who shipped to independent pharmacies in Track 1, until the filing of the Amendments by Interlineation in November 2019, Plaintiffs had not alleged—and affirmatively disavowed alleging—that any of the Pharmacy Defendants violated statutes or regulations governing the dispensing of controlled substances.

[4] Following a recent discovery hearing with the Special Master regarding appropriate data fields, the Special Master has directed a production of the Pharmacy Defendants' dispensing data for Track 1B, followed by necessary additional discovery once Plaintiffs identify allegedly improper prescriptions.  *See* **Exhibit B**.  Critically, that plan—which necessarily requires some adjustment of existing deadlines—is necessary for trial, for Plaintiffs' dispensing claims, and for the Pharmacy Defendants' defenses, irrespective of the Third-Party Complaints.

9

that discovery on the dispensing claims has just begun is the fault of no one but Plaintiffs.

The ultimate scope and complexity of the Third-Party Complaints is also entirely up to Plaintiffs.  As the Third-Party Complaints make clear, "[i]f Plaintiff ever identifies the specific prescriptions it claims should not have been filled, the . . . Pharmacy Chains will amend this Third-Party Complaint to name only the prescribers who wrote those prescriptions."  Third-Party Compl. ¶ 11.  Thus, whether there will be "1,000 new defendants," Mot. at 10, is pure conjecture—unless, of course, Plaintiffs actually intend to identify that number of individual prescribers in Cuyahoga and Summit Counties and accuse them of writing improper prescriptions that the Pharmacy Defendants' pharmacists should not have filled.

Nearly identical considerations were at play in *Trane*, where the court flatly rejected arguments that allowing third-party claims to proceed would "entail a dramatic increase in the scope, duration, and expense of the litigation" and "open a Pandora's box of additional third-party defendants" should discovery reveal additional allegedly improper sales.  250 F.R.D. at 322.  The court found those concerns "misplaced" for three reasons, each of which applies with equal force here.  *Id.*  First, the court observed that discovery on the underlying improper sales claims had barely begun.  *Id.*  Second, and as discussed in Section I, *supra*, the court found that there were overlapping factual and legal issues and a "logical relationship" between the third-party claims and the issues in the underlying complaint.  *Id.*  Finally, the court held that it "cannot reject a suitable third-party complaint because of potential hardships that *may* occur when additional parties are identified via discovery."  *Id.* (emphasis in original).  While the court acknowledged that additional third-party defendants might eventually be added if more violations were uncovered, it would not base its decision "on such conjecture."  *Id.* at 322-23.  The court also noted that, should discovery disclose further alleged improprieties, the plaintiff

10

could "avoid any of the complications that it posits" simply by choosing to "forego seeking to recover its losses from such later-uncovered misconduct." *Id.* at 323 n.1.

### C.  Deferring Third-Party Claims Would Waste Party and Judicial Resources

Because the third-party claims and Plaintiffs' dispensing claims—including the necessary discovery for both—are so inextricably intertwined, this is a case where "[i]t is more efficient to centralize all claims and dispose of all issues." *Acosta v. RAB Commc'ns, Inc.*, 2019 WL 7282347, *5 (S.D. Ohio Dec. 27, 2019); *see also Am. Zurich*, 512 F.3d at 805 (the purpose of Rule 14 is to allow "additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit").  The Prescriber Defendants, whom Plaintiffs will soon identify in discovery, deserve the opportunity to defend their rights—rights that will inevitably be at issue in the Track 1B trial.[5]  There is no judicial economy in forcing them to repeat discovery or wait for a later proceeding.  To the contrary, severing the third-party claims against the Prescriber Defendants would be far *less* efficient—not only requiring a second trial where one would do, but also presenting the same evidence to separate juries and inviting inconsistent verdicts.  And in the unlikely event the Pharmacy Defendants are found liable to Plaintiffs for improperly filling prescriptions from the Prescriber Defendants, the Pharmacy Defendants—who have numerous trials scheduled throughout the country—have a right to recover from the Prescriber Defendants without needless expense and delay.[6]

---

[5] For example, should Plaintiffs finally identify specific (and allegedly improper) prescriptions written by the Prescriber Defendants and filled by the Pharmacy Defendants' pharmacists, the Pharmacy Defendants would have the right to call them as witnesses during the Track 1B trial, even if the third-party claims are severed.

[6] Each of the cases Plaintiff cites for the proposition that the interests of judicial economy justify striking or severing the Third-Party Complaints is easily distinguishable—if not supportive of the Third-Party Complaints.  *See Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 237 F.R.D. 679 (N.D. Okla. 2006) (third-party plaintiffs named 160 third-party defendants, with the potential for over 100,000 additional individual third-party defendants); *In re Air Crash Disaster*, 86 F.3d 498 (6th Cir. 1996) (third-party plaintiff knew about third-party claims for over a year and waited until the last day of discovery); *Rodeheaver v. Sears, Roebuck & Co.*, 34 F.R.D. 488 (N.D. Ohio 1964)

Plaintiffs are wrong that the inclusion of individual prescribers of prescription opioids would do little to advance the broader MDL litigation. Mot. at 11. Of course, it runs contrary to the Federal Rules of Civil Procedure to base procedural rulings on considerations relevant only to other cases in the MDL. *See* Dkt. No. 3085, Ex. 1. Even still, the claims of these Plaintiffs and virtually every plaintiff in the MDL are premised on an alleged epidemic of prescription opioid abuse based on supposed overprescribing. To the extent Plaintiffs choose to proceed with their dispensing claims against the Pharmacy Defendants in Track 1B, the third-party claims will substantially further not just this case but, coincidentally, the MDL as a whole.

## III.  The Third-Party Complaints State Meritorious Claims

Nothing in Rule 14(a) requires a threshold determination that a third-party complaint states meritorious claims. A third-party complaint "must be founded on a third party's actual ***or potential*** liability to the defendant for all ***or part*** of the plaintiff's claim against the defendant." *Am. Zurich*, 512 F.3d at 805-06 (emphasis added); *see also* FED. R. CIV. P. 14(a)(1) (same). As the Note on which Plaintiffs rely makes clear, "the court has discretion to strike the third-party claim" where it is both "***obviously*** unmeritorious" and "can ***only*** delay or prejudice the

---

(impleader would delay trial and defendant was "partly culpable" for not seeking impleader sooner); *Gen. Elec. Co. v. Irvin*, 274 F.2d 175 (6th Cir. 1960) (defendant sought to implead three days before trial); *Colon v. Blades*, 268 F.R.D. 143 (D.P.R. 2010) (defendant waited over two years after amended complaint to file third-party complaint a month before trial); *Laborers' Dist. Council Pension & Disability Trust Fund No. 2 v. Geofreeze, Inc.*, 298 F.R.D. 300 (D. Md. 2014) (court found a "factual dichotomy" between the third-party claims and the underlying case); *Hensley v. United States*, 45 F.R.D. 352 (D. Mont. 1968) (court permitted untimely third-party claims to proceed); *Railey v. S. Ry. Co.*, 31 F.R.D. 519 (E.D.S.C. 1963) (third-party claims introduced complicated and competing legal standards and third-party plaintiff failed to comply with Rule 14); *McPherrin v. Hartford Fire Ins. Co.*, 1 F.R.D. 88 (D. Neb. 1940) (no need to keep third-party insurance company in case where it had represented that it was "ready and willing" to pay once liability was established in original action); *Kosters v. Seven-Up Co.*, 595 F.2d 347 (6th Cir. 1979) (relying on doctrinal confusion around questions of indemnity and contribution in products liability cases); *Arthur Andersen LLP v. Standard & Poor's Credit*, 260 F. Supp. 2d 1123 (N.D. Okla. 2003) (court declined to sever certain third-party claims, noting that "[t]hird-party claims brought under the authority of Rule 14 are rarely stayed" and a stay would extend the broader litigation); *In re CFS-Related Sec. Fraud Litig.*, 213 F.R.D. 435 (N.D. Okla. 2003) (third-party plaintiffs waited two years to bring third-party claims); *United States v. Kramer*, 770 F. Supp. 954 (D.N.J. 1991) (third-party claims involved numerous defenses otherwise irrelevant to the action and allowing claims was contrary to purposes of CERCLA).

disposition of the plaintiff's claim." FED. R. CIV. P. 14, Advisory Committee Note to 1963 amendments (emphasis added). As already explained, *supra*, the third-party claims are fully intertwined with the Plaintiffs' new dispensing claims and will not unduly delay or prejudice anyone. In addition, there is nothing unmeritorious—much less "obviously" unmeritorious— about the Pharmacy Defendants' well-pleaded third-party claims.

### A. Negligent Misrepresentation, Negligence, and Fraud (Claims I, II, and III)

Plaintiffs do not even attempt to dispute that the Pharmacy Defendants have pleaded each of the elements of their third-party claims for negligent misrepresentation, negligence, and intentional fraud. Instead, they incorporate by reference the arguments addressed in detail in Section I.B, *supra*. Mot. at 10. Because those arguments fail, Plaintiffs have provided no reasoned basis for finding these three claims "obviously unmeritorious."

### B. Indemnification (Count IV)

A claim for indemnification is one of the classic third-party claims under Rule 14— precisely the type of claim for which Rule 14 was designed. *See* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1446. Perhaps for that reason, Plaintiffs devote far more attention to this claim, asserting two independent arguments for why, in their view, the Third-Party Complaints fail to state a proper claim for indemnification. *See* Mot. at 8-9. Each of those arguments fails.

*First*, Plaintiffs assert that Ohio law does not allow for indemnification except for wholly "innocent actors," and, Plaintiffs say, their claims allege that the Pharmacy Defendants breached affirmative duties. *Id.* at 8. But Ohio law is not so restricted. Rather, "Ohio law generally recognizes that implied indemnification is appropriate in certain limited circumstances where a party owes only secondary legal responsibilities and is passively negligent." *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 84 Ohio App. 3d 554, 563-64 (Ohio Ct. App. 1992).

One of the cases on which Plaintiffs rely for their second argument explains exactly why they are wrong about their first.  In *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, 307 F. Supp. 3d 719 (S.D. Ohio 2018), the court addressed third-party claims for indemnification and contribution arising from alleged failures to properly maintain the foundations of a bridge.  *Id.* at 723-24.  Carefully surveying Ohio law on "passive negligence," the court held that "a right of indemnification exists where the secondary party becomes liable to a third person for failing to discover or to remedy the harm caused by the primary party's negligence or misconduct."  *Id.* at 731 (quotation marks omitted).  In *CSX*, the third-party plaintiffs were hired to implement bridge maintenance plans designed by the third-party defendant.  *Id.* at 732.  While the third-party plaintiffs were "potentially liable" for "implementing the [plans]," they alleged that the "flawed plans . . . caused the damage."  *Id.*  The court found that "these allegations support an inference" that they were "passively negligent (in the sense of failing to discover or remedy the flaws in the plans)" but that the third-party defendant "was the true party at fault."  *Id.*  Here, the Pharmacy Defendants make nearly identical allegations.  *E.g.*, Third-Party Compl. ¶ 62.

*Second*, Plaintiffs argue that the Pharmacy Defendants fail to allege facts showing the existence of "a relationship establishing secondary liability."  Mot. at 8-9.  Citing *CSX*, Plaintiffs suggest that the Prescriber and Pharmacy Defendants share no "common duty" to Plaintiffs.  *Id.* at 9.  In *CSX*, however, the court held that a "common duty" could be inferred from allegations that the third-party plaintiffs and defendant "had specific and interrelated involvement in providing [maintenance] for the bridge," with the third-party defendant designing the plans and the third-party plaintiffs "relying on and complying with" those plans.  307 F. Supp. 3d at 731.  Again, the Pharmacy Defendants make the same allegations.  Third-Party Compl. ¶¶ 31-35 (describing the interrelated roles of the Prescriber and Pharmacy Defendants); *id.* ¶ 41 (alleging

14

that pharmacists must "rely on prescriptions written by Prescriber Defendants"); *id.* ¶ 40 (alleging a "special relationship" between the Prescriber and Pharmacy Defendants).[7]

### C. Contribution (Claim V)

Contribution is another classic third-party claim under Rule 14. Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1446. Unlike indemnification, Plaintiffs have little to say about it. Mot. at 9. In fact, Plaintiffs' only basis for suggesting that the Pharmacy Defendants' claim fails is to argue that contribution is unavailable for intentional torts like their absolute public nuisance claim. *Id.* Even accepting for sake of argument Plaintiffs' characterization of contribution under Ohio law, their characterization of their nuisance claim is directly at odds with how they presented that claim in proposed jury instructions. *See* Dkt. No. 2715-2 at 2 (describing one of the elements of absolute public nuisance as being that the defendant acted "intentionally and unreasonably *or* in violation of a statute for the protection of others") (emphasis added). Because Plaintiffs have taken the position that absolute public nuisance claims can be based on something other than intentional conduct, Plaintiffs' objection fails on its own terms.[8]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike or Sever the Pharmacy Defendants' Third-Party Complaints should be denied.

---

[7] The Pharmacy Defendants maintain that neither they nor the Prescriber Defendants owe any duty to Plaintiffs by virtue of the federal Controlled Substances Act, DEA regulations, or any other statute or rule. Nonetheless, to the extent the Court permits Plaintiffs' dispensing claims to proceed based on allegations of a duty running from the Pharmacy Defendants to Plaintiffs by virtue of pharmacists' "corresponding responsibility," there is no question that Prescriber Defendants have a "common duty." *See* 21 C.F.R. 1306.04(a).

[8] Plaintiffs claim that the Pharmacy Defendants' indemnification and contribution claims should be severed because they are premature. *See* Mot. at 13-14 ("[A]ssuming *arguendo* Pharmacy Defendants had actionable claims for contribution or indemnification, such claims have not yet accrued, making them particularly appropriate for severance and deferral."). This argument misses the entire point of Rule 14. *See Trane*, 250 F.R.D. at 323 ("Trane's argument that the third-party claims . . . are only relevant if Meehan and/or his company are found liable on certain of Trane's claims runs counter to Rule 14 jurisprudence" because the rule "is designed to only apply in cases where the third-party defendant's liability depends on the third-party plaintiff's liability"); *CSX Transp.*, 307 F. Supp. 3d at 733-34 ("[W]hile Ohio law grants a substantive right to contribution, federal law governs the procedure of asserting a claim in federal court." (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).

Dated: January 27, 2020

Respectfully submitted,

/s/ Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Ste. 1000
Washington, DC 20036
(202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Pharmacy, Inc. and Ohio CVS Stores, LLC*

/s/ Kelly A. Moore (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6612
kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5917
elisa.mcenroe@morganlewis.com

*Counsel for Rite Aid of Ohio, Inc.*

/s/ Timothy D. Johnson (consent)
Timothy D. Johnson
Gregory E. O'Brien
CAVITCH FAMILO & DURKIN, CO. LPA
1300 East Ninth Street, Twentieth Floor
Cleveland, OH 44114
(216) 621-7860
tjohnson@cavitch.com
gobrien@cavitch.com

*Counsel for Discount Drug Mart, Inc.*

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
kate.swift@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

/s/ Robert M. Barnes (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
(412) 471-3490
rbarnes@marcus-shapira.com
livingston@marcus-shapira.com
kobrin@marcus-shapira.com

*Counsel for Giant Eagle, Inc. and HBC Service Company*

/s/ Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

16

## CERTIFICATE OF SERVICE

I hereby certify that this 27th day of January, 2020, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

>  */s/ Kaspar J. Stoffelmayr*
> Kaspar J. Stoffelmayr
>
> *Counsel for Walgreen Co. and Walgreen Eastern Co., Inc.*