UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No.: 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | Judge Dan Aaron Polster |
| *ALL CASES* | |

### (PROPOSED) ORDER ESTABLISHING COMMON BENEFIT FUND

On January 4, 2018, the Court appointed a Plaintiffs' leadership structure charged with advancing this MDL litigation for the common benefit of all Plaintiffs. (Doc #37). The Court's *Case Management Order No. 5: Protocol For Work Performed and Expenses Incurred* (Doc. #636) ("CMO No. 5"), set forth detailed instructions for the performance of common benefit work, and for the type of work and expenses that could qualify for potential compensation and reimbursement. Under this authority and guidance, Plaintiffs' Co-Lead Counsel, Liaison Counsel, the members of the Plaintiffs' Executive Committee, and others duly authorized to perform common benefit work, have done so on an entirely contingent basis. These counsel have invested more than one million hours and tens of millions of dollars to fund the substantial expenses of conducting extensive discovery against dozens of Defendants, in what many call the most complex civil litigation our courts have faced.

The Court is aware, from its active supervision of all aspects of the MDL proceedings, of the volume and quality of the work performed to advance the cases of all litigants. This work has included hundreds of depositions, master pleadings, dispositive motions, scores of experts in

multiple disciplines, bellwether selection and development, pretrial motion practice, trial preparation, federal appellate litigation, and the representation and protection of the MDL Plaintiffs' interests in any bankruptcy case concerning or involving any Defendant in these MDL Proceedings. These intensive litigation efforts have proceeded in parallel with similarly intensive efforts toward meaningful and effective settlement resolutions designed to address the massive societal challenges that have given rise to the opioids litigation.

The Court has and continues to require a cooperative approach by all litigating plaintiffs in federal court as well as state court. The Court encouraged and approved of the sharing of work-product generated by the MDL plaintiffs with the Attorneys General for their respective cases. For example, the Court has overseen the production, processing, and sharing of the massive Automated Reports and Consolidated Ordering System ("ARCOS") database, which has been programmed, analyzed, and shared, in a user-friendly format, with litigating Attorneys General, and with counsel litigating state court actions. The MDL team has engaged in intensive settlement discussions with Defendants, under the auspices of this Court and with the assistance of its Special Masters. Many joint meetings, at the request of the Attorneys General and/or the Defendants, have occurred in Cleveland and elsewhere in pursuit of both litigation and resolution. The expenses of the Special Masters and their assistants have been funded 100% by the parties in federal court. All of this work has informed and worked to the common benefit of all Opioids-related litigation, whether in state court, federal court, or an Attorney General action.

Given this background, the Court concludes it is just and appropriate to provide a system of assessment on some (but not all) of the settlements and recoveries to which this substantial effort has contributed, commensurate with common benefit assessments ordered in recent MDLs.

This Order is entered to provide for the fair and equitable sharing, by and among all appropriate beneficiaries, of the cost of the services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in this complex litigation.  This is accomplished by directing each Defendant who has appeared in these proceedings, and over whom this Court has exercised jurisdiction, to either hold back a small percentage of their Opioids-related settlements, or to self-fund the designated percentage, in certain types of cases.  This Court's authority in this regard derives from the Supreme Court's common benefit doctrine, as established in *Trustees v. Greenough*, 105 U.S. 527 (1881), and further applied in *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1884); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); and *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).  Courts have long approved the doctrine's application in the MDL context as a case management exercise, recognizing an additional source of authority for MDL courts to access common benefit fees and costs that "comes from the inherent 'managerial' power over the consolidated litigation."  *In re Cook Medical, Inc., Pelvic Repair* Systems, 365 F. Supp. 3d 685, 695 (MDL No. 2440) (S.D.W.V. 2019) (collecting cases).  *See also In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 525-29 (D. Nev. 1987); *In re Air Crash Disaster at Florida Everglades on December 29,1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977); *In re  Zyprexa Prods. Liab. Litig.* (MDL No. 1596), 467 F. Supp. 2d 256, 265-267 (E.D.N.Y. 2009); *In re Sulzer Hip Prosthesis and Knee Prosthesis Prods. Liab. Litig.*, 268 F.Supp.2d 907 (N.D. Ohio 2003), *affirmed*, 398 F.3d 778 (6th Cir. 2005); *Manual For Complex Litigation* §14.215 (4th ed., Federal Judicial Center 2004).

Various surveys of common benefit assessments in historical and contemporary MDLs have been conducted documenting a wide range of assessments, with many clustering in a range of 4-6%.  *See, e.g.*, Rubenstein, "On What A Common Benefit Order Is, Is Not, and Should Be,"

Class Action Attorney Fee Digest 87 (March 2009); *In re Avandia Marketing, Sales Practices, and Prods. Liab. Litig.* (MDL No. 1871), 2012 WL 6923367 (E.D. Pa. 2012) (surveying cases and awarding 6.25%).  Assessments in the 7%-9% range are not uncommon in contemporary MDLs. *See, e.g., In re Aqueous Film-Forming Foam Prods. Liab. Litig.*, case no. 2:28-MN-2873, docket no. 72 (D.S.C. Apr. 29, 2019) (9%); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 274 F. Supp. 3d 485, 510 (W.D. La. 2017) (8.6%); *In re Bard IVC Filters Prods. Liab. Litig.*, case no. 2-15-MD-02641, docket no. 372 ( D. Ariz. Dec. 18, 2015) (8%); *see also Bard IVC Filters,* 2018 WL 4279834 at *1; *In re Ivokana Prods. Liab. Litig.*, case no. 3:16-md-02750, docket no. 58 (D.N.J. Mar. 21, 2017) (7%).  In the *Gadolinium MDL*, this Court ordered a 6% assessment (5% fees/1% costs) in the exercise of its case management authority.  *See In re Gadolinium Based Contrast Agents Prods. Liab. Litig.*, case no. 08-GD-50000, docket no. 277 (N.D. Ohio Feb. 20, 2009). These cases provide ample support for a similar assessment in the instant MDL proceedings.

**ACCORDINGLY, it is hereby ORDERED as follows**:

    1.    <u>**Application**</u>

This Order applies to all cases and claims now pending, previously or later filed in, transferred to, or removed to, this Court and treated as part of the coordinated proceedings known as *In re: National Prescription Opiate Litigation*, MDL No. 2804.  This Order further applies to: (1) all cases, claims and classes described in paragraph 2.c. of this Order, (2) all parties named in these cases, (3) all attorneys who represent such parties as clients who have cases now pending in, or later filed in, transferred to, or removed to, this Court, and (4) any and all plaintiffs' attorneys and their clients who have relied upon, used, accepted, or have had access to MDL generated work product whether with the express approval of the PEC or not, and (5) all plaintiffs' attorneys with state court cases and/or tolled or unfiled claims who have signed or will sign Participation Agreements with the PEC to share in the work-product of this MDL.

2.      **Common Benefit Assessment and Holdback by Defendants**

a.      All parties in these MDL proceedings and their attorneys, and those described in Paragraph 1 above, who have agreed or agree to settle, compromise, dismiss, or reduce the amount of a claim, or who recovered or recover a judgment (with or without trial) for monetary damages (including compensatory and punitive damages) or other monetary relief (including costs of abatement or costs of other equitable relief) with respect to any Opioids-related claims that have been or could have been brought by, on behalf of, or for the benefit of any of the MDL plaintiffs, are subject to an assessment of the Gross Monetary Recovery (defined below), to be withheld or self-funded by each Defendant and paid into the Common Benefit Fund by each Defendant, as provided herein.

b.      The assessment amount shall be six percent (6%) for common benefit attorneys' fees and one percent (1%) for common benefit costs.  The assessment represents a hold back (*See In re Zyprexa Products. Liab. Litig.*, 467 F.Supp.2d 256, 266 (2d Cir. 2006).

c.      With respect to all cases or claims as to which a settlement is entered into, or a settlement or judgment was or is paid, from and after October 20, 2019, that provides or purports to provide for the satisfaction, release, dismissal or compromise of the Opioids-related claims:  (1) of any or all private, public, or government entity plaintiffs (including Cities, Counties, municipalities, and Indian Tribes) whose cases are components of MDL 2804; (2) of any or all potential members of the Negotiation Class defined in the September 11, 2019 *Order Certifying Negotiation Class and Approving Notice* (Doc # 2591); or (3) that are or are purported to be brought for the benefit of any of the foregoing MDL No. 2804 plaintiffs, every settling Defendant is directed to withhold this 7% assessment (6% fees/1% costs) from the Gross Monetary Recovery; or, in the alternative, to self-fund an additional equivalent amount, depending upon the terms of the particular settlement, and promptly to pay that amount into the Common Benefit Fund. ***For***

***clarification, no assessment is due from a Defendant on any portion of a judgment or settlement in a State Attorney General action that resolves or satisfies that State's own damages claims.***

        **d.**      In measuring the "Gross Monetary Recovery,"

        (1)      Court costs that are to be paid by a settling Defendant shall be excluded.

        (2)      All fixed and certain payments are included, whether characterized as damages, abatement costs, or anything else.  Each defendant may choose to pay the present value of any fixed and certain payments to be made in the future, as if made in an up-front payment. The timing of assessment payments on settlements including future payments is subject to the agreement of the parties and the approval of the Court.

        (3)      The value of non-cash products or services provided by a Defendant shall be included, with the value subject to negotiation for purposes of this assessment.  Any disputes regarding the value of non-cash products or services, or any other aspect of Gross Monetary Recovery, will be resolved by the Court.

        **3.**      **Establishment of Common Benefit Fund**

An interest-bearing account will be established at a financial institution to be determined, under this Court's ongoing jurisdiction, to receive funds from Defendants and to disburse funds to approved recipients as provided in *Case Management Order No. 5*, this Order, and further Orders of this Court.  These funds will be held as funds subject to the direction of this Court and are hereinafter referred to as the "Common Benefit Fund."  No party or attorney has any individual right to any of these funds except to the extent of amounts directed to be disbursed to such person by order of this Court.  These funds do not constitute the separate property of any party or attorney and are not subject to garnishment or attachment for the debts of any party or attorney except when and as directed to be disbursed to a specific person as provided by Court order.

a.      The Court will appoint by subsequent order a qualified certified public accountant (the "CPA") to establish this account and act as escrow agent, keep detailed records of all deposits and withdrawals, and to prepare tax returns and other tax filings.  Each Defendant that enters a settlement, funds a judgment, or otherwise resolves a case covered by this Order shall within seven (7) days report in writing to the CPA the gross monetary payments paid, or to be paid, under the resolution.

b.      Upon subsequent Orders of this Court, payments may be made from the Common Benefit Fund to counsel who did or will provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client(s), whether those counsel are representing claimants in these MDL proceedings or in state-filed cases, including Attorneys General actions, or are representing the interests of the MDL Plaintiffs in any bankruptcy case concerning or involving any Defendant in these MDL Proceedings.  Such counsel who maintain actions in state court and obtain rulings that inure to the benefit of all plaintiffs, whether in the MDL or in state court, shall be permitted to submit, for common benefit consideration, the time and expenses associated with obtaining such rulings.  Amounts paid to counsel pursuant to private fee agreements must be disclosed so that the Court can ensure amounts counsel may also receive from the Common Benefit Fund are reasonable.

c.      All submissions and applications for common benefit fees and/or costs, whether made by counsel performing such work in the MDL or in state courts, must comply with the procedures, requirements and guidelines of CMO No. 5, which is incorporated herein by reference.  Counsel performing common benefit work in state courts, who have not previously submitted their time and costs under CMO No. 5 shall have 45 days to do so from the date of any future settlement to which their work applies.  If an attorney applies for and receives common

benefit treatment, all of the cases in which the attorney and/or his or her law firm are counsel of record are subject to the 7% assessment.[1]  This Court retains the discretion to amend or supplement CMO No. 5, and this Order, as necessary and appropriate to reflect ongoing developments in the litigation.

        **d.**      Payments for Common Benefit fees and/or expenses will not exceed the fair value of the services performed, plus any court-approved multiplier, or the reasonable amount of the expenses incurred.  The total of payments received by an attorney for (i) Common Benefit fees and/or expenses plus (ii) fees and/or expenses from all other sources (e.g. contingent fees) must be reasonable.  Depending upon the total amount of the Common Benefit Fund, amounts paid to counsel may be limited to part of the value of such services and expenses.

        **e.**      No amounts will be disbursed without review and approval by this Court under such mechanism as this Court may deem just and proper under the circumstances.  The Court will later determine whether it will decide disbursement amounts with the help of a Fee Committee, a Special Master, and/or other mechanisms.  Each Defendant's counsel shall provide at least quarterly notice to this Court, or its designee, and to Plaintiffs' Co-Lead Counsel, of the names and docket numbers of the cases for which it has withheld an assessment.  Monthly statements from the escrow agent shall be provided to Plaintiffs' Co-Lead Counsel or designee, Defendant's Liaison Counsel, and this Court or this Court's designee, showing, with respect to the funds controlled by the escrow agent, aggregate amounts of the monthly deposits, disbursements, interest earned, financial institution charges if any, and current balance.

        **f.**      If the Common Benefit Fund exceeds the amount needed to make all

---

[1] By making application for Common Benefit fees or costs, an attorney is automatically eligible for work-product sharing as outlined in the Participation Agreement.

payments of Court-approved costs, fees, and any Court-approved multiplier on any fees, this Court may order a refund to those who have contributed to the Common Benefit Fund.  Any such refund will be made in proportion to the amount of the contributions.

       g.      Nothing in this Order shall be deemed to modify, alter, or change the terms of any fee contracts between plaintiffs' counsel and their individual clients.

      **4.**      **<u>Further Proceedings and Continuing Jurisdiction</u>**

      **a.**      This Order is without prejudice to such other assessments of or awards of fees and costs as may be ordered by this Court under Rule 23(h), the common benefit doctrine, or that may be provided by contract between attorneys and clients.  The intent of this Order is to establish, secure, and supervise a fund to promote the purposes and policies of the common benefit doctrine and provide a source for equitable payment of services rendered and costs incurred for the benefit of Opioids plaintiffs.

      **b.**      If all parties to a future settlement agree that exceptional circumstances warrant a departure from the holdback obligations, or other provisions of this Order, they shall submit affidavits thereon and request appropriate relief from this Court.

      **c.**      Any disputes or requests for relief from or modification of this Order will be decided by this Court in the exercise of its continuing jurisdiction over the parties, and its authority and discretion under the common benefit doctrine.

      **IT IS SO ORDERED.**


_____
Honorable Dan Aaron Polster