**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>　　*The County of Summit, Ohio*, et al. *v.*<br>　　*Purdue Pharma L.P.*, et al.,<br>　　Case No. 18-op-45090<br><br>　　*The County of Cuyahoga, Ohio*, et al. *v.*<br>　　*Purdue Pharma L.P.*, et al.,<br>　　Case No. 17-op-45004 | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**PHARMACY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT BASED**
**ON THE STATUTES OF LIMITATIONS**

## TABLE OF CONTENTS

I.    THE CLAIMS ................................................................................................................ 1

II.   THE STATUTES OF LIMITATIONS ........................................................................ 2

III.  APPLICATION OF THE LIMITATIONS PERIOD ................................................. 3

    A.    Walgreens ......................................................................................................... 3

    B.    CVS Indiana ...................................................................................................... 4

    C.    CVS Rx Services ............................................................................................... 4

    D.    Giant Eagle/HBC .............................................................................................. 4

    E.    Rite Aid ............................................................................................................. 5

    F.    DDM ................................................................................................................. 5

    G.    Walmart ............................................................................................................ 6

IV.   DISCOVERY RULE TOLLING ................................................................................. 6

    A.    Plaintiffs Knew or Should Have Known of Their Alleged Injuries Long
        Before April 2014 .............................................................................................. 6

    B.    Though Irrelevant, Plaintiffs Knew or Should Have Known of the
        Pharmacy Defendants' Potential Role ............................................................... 7

    C.    DEA's Production of Transactional ARCOS Data Is Irrelevant ........................ 10

V.    FRAUDULENT CONCEALMENT TOLLING ........................................................... 10

VI.   CONTINUING TORT DOCTRINE ............................................................................. 12

CONCLUSION ....................................................................................................................... 12

The Pharmacy Defendants[1] are not named in the count that carries the longest statute of limitations (Ohio RICO).  They are not accused of fraud.  Several of them stopped distributing relevant opioid medication years ago.  All of them were sued months after most other defendants.

For some Pharmacy Defendants, these facts require complete judgment (*i.e.*, dismissal).  For others, they require virtually complete judgment (*i.e.*, dismissal of all but 5 months of shipments).  And for others, they greatly curtail the plaintiffs' claims against them.  Straightforward application of the relevant statute of limitations will end, or dramatically limit, the Pharmacy Defendants' role in this case.

Mindful of the Court's admonition to avoid duplicative briefing, the Pharmacy Defendants adopt sections I, II, and V of the Combined Brief submitted by the Manufacturer Defendants and Distributor Defendants.  The Pharmacy Defendants further state as follows:

## I.      THE CLAIMS

Plaintiffs sued Walgreens, CVS, Rite Aid, and Walmart in amended complaints filed on April 25, 2018.  Dkt. Nos. 294 and 301.  This was six months after Cuyahoga County filed its initial complaint, and four months after Summit County filed its initial complaint.[2]  Giant Eagle and DDM were sued even later (on May 18, 2018).[3]

---

[1] The Pharmacy Defendants are:  CVS Indiana, L.L.C. ("CVS Indiana"), CVS Rx Services, Inc. ("CVS Rx Services") (together, "CVS"), Rite Aid of Maryland, Inc. d/b/a Rite-Aid Mid Atlantic Customer Support Center, Inc. ("Rite Aid"), Walgreen Co. and Walgreen Eastern Co. (together, "Walgreens"), Wal-Mart Inc. f/k/a Wal-Mart Stores, Inc. ("Walmart"), Discount Drug Mart, Inc. ("DDM"), and HBC Service Company ("HBC").  HBC is an unincorporated operating division of Giant Eagle, Inc.  Unless otherwise indicated, a reference herein to Giant Eagle shall include HBC.

[2] *County of Cuyahoga v. Purdue Pharma, L.P.*, 17-op-45004, Dkt. No. 1-2 (Oct. 27, 2017); *County of Summit v. Purdue Pharma, L.P.*, 18-op-45090, Dkt. No. 1-3 (Dec. 20, 2017).

[3] Plaintiffs did not add HBC Service Company and Discount Drug Mart, Inc. as defendants until they filed their May 18, 2018 Second Amended Complaint.  *See* Dkt. Nos. 476 n.2 and 477 n.2.

The amended complaints bring claims against the Pharmacy Defendants only in their capacities as distributors.  Dkt. No. 1203 at 2 (Dec. 19, 2018 Opinion & Order).  The core allegation is that each Pharmacy Defendant shipped suspicious orders of prescription opioids to its own chain pharmacies.

The amended complaints assert claims against the Pharmacy Defendants for public nuisance, negligence, unjust enrichment, civil conspiracy, and injury through criminal acts. They do not assert RICO claims against the Pharmacy Defendants.  Nor do they assert fraud by the Pharmacy Defendants.

## II.    THE STATUTES OF LIMITATIONS

The Combined Brief discusses the law regarding statute of limitations in detail.   In summary, the applicable law is as follows:

1.    The longest possible statute of limitations applicable to the claims asserted against the Pharmacy Defendants is four years.  Combined Br. at 5-6.[4]  Plaintiffs do not allege an Ohio Corrupt Practices Act claim against the Pharmacy Defendants, the only claim with a five-year limitations period.

2.    Plaintiffs' claims accrued, and the limitations period began to run, when the allegedly wrongful conduct occurred (*i.e.*, when the allegedly suspicious orders shipped). *LGR Realty, Inc. v. Frank & London Ins. Agency*, 98 N.E.3d 241, 245 (Ohio 2018); Combined Br. at 8.

---

[4] Plaintiffs' claims for injury through criminal acts are subject to a one-year statute of limitations.  At most, plaintiffs' claims for statutory public nuisance, common law public nuisance, negligence, civil conspiracy, and unjust enrichment are subject to four-year limitations periods.  Combined Br. at 5-6.  However, each of these claims was abrogated by the Ohio Products Liability Act, which has a two-year statute of limitations.  *See* Dkt. No. 497-1 at 8 (Pharmacy Defendants' memorandum of law in support of their motion to dismiss); Combined Br. at 5 n.11. Thus, the longest statute of limitations applicable to plaintiffs' claims for statutory public nuisance, common law public nuisance, negligence, civil conspiracy, and unjust enrichment actually is two years.

3.      If allegedly wrongful conduct by any Pharmacy Defendant began outside the limitations period but continued into the limitations period, plaintiffs cannot pursue relief based on the conduct that took place outside the limitations period.  If the applicable statutes of limitations permit plaintiffs any relief at all in these circumstances, it is only for the alleged conduct that occurred within the limitations period.  *See, e.g.*, *Haas v. Sunset Ramblers Motorcycle Club, Inc.*, 726 N.E.2d 612, 614 (Ohio Ct. App. 1999); *State ex rel. Celebrezze v. Grogan Chrysler-Plymouth, Inc.*, 598 N.E.2d 796, 799 (Ohio Ct. App. 1991); Combined Br. at 4 & n.10.

## III.    APPLICATION OF THE LIMITATIONS PERIOD

Plaintiffs sued Walgreens, CVS, Rite Aid, and Walmart on April 25, 2018.  Under the principles set forth above, plaintiffs may not obtain relief from these Pharmacy Defendants for any shipments that were made more than four years before that date.  That is, plaintiffs may not obtain relief from any of these Pharmacy Defendants for any shipments that were made before April, 25 2014.

Plaintiffs sued Giant Eagle and DDM even later (on May 18, 2018).  Plaintiffs therefore cannot recover for any shipments made by Giant Eagle or DDM before May 18, 2014.

For each Pharmacy Defendant, the impact is as follows:

### A.    Walgreens

Walgreens shipped its last order of prescription opioid medication into Cuyahoga and Summit counties on April 9, 2014.  Harris Decl., Ex. 1 at 9, 47.[5]  That date falls more than two weeks beyond the full reach of the longest possible statute of limitations applicable to plaintiffs'

---

[5] In support of the motion, the Pharmacy Defendants submit the following declarations, which accompany this memorandum of law: (1) declaration of Alex J. Harris ("Harris Decl."); (2) declaration of Anthony M. Ruiz ("Ruiz Decl."); (3) declaration of Joshua A. Kobrin ("Kobrin Decl."); (4) declaration of Elisa P. McEnroe ("McEnroe Decl."); (5) declaration of Jason Briscoe ("Briscoe Decl."); and (6) declaration of Tara A. Fumerton ("Fumerton Decl.").

claims.  Therefore, all of plaintiffs' claims against Walgreens are barred, and the Court must dismiss them.

### B.    CVS Indiana

CVS Indiana never distributed Schedule II drugs.  Ruiz Decl., Ex. 1 at 9-10.  Of the prescription opioid medication at issue in this case,[6] it only distributed hydrocodone combination products ("HCPs") and only when HCPs were Schedule III drugs.  *Id.* at 10-11.  It last shipped HCPs into Cuyahoga and Summit counties on April 9, 2014.  *Id.* at 11.  This date falls outside of the limitations period for all claims.  Plaintiffs' claims against CVS Indiana are barred in full.

### C.    CVS Rx Services

Like CVS Indiana, CVS Rx Services only distributed HCPs.  *Id.* at 10-11.  It stopped distributing HCPs when they were reclassified from Schedule III to Schedule II.  *Id.*  Its last shipment of HCPs into Cuyahoga and Summit counties was on September 24, 2014.  *Id.* at 11.  Accordingly, the statute of limitations leaves only a sliver of a claim—five months of HCP shipments from April 25, 2014 to September 24, 2014.  Partial judgment to this effect must be entered in favor of CVS Rx Services.[7]  CVS Rx Services will address in its individual motion why complete judgment is warranted on other grounds.

### D.    Giant Eagle/HBC

Giant Eagle's HBC warehouse never distributed Schedule II drugs, only distributed one relevant product, HCPs, and stopped distributing that product when the DEA rescheduled it from Schedule III to Schedule II.  HBC's last shipment of HCPs into the relevant jurisdictions was on

---

[6] Dkt. No. 693 at 3 (Discovery Ruling No. 2) (limiting discovery to prescription opioids that "are or ever were classified as Schedule II").

[7] The injury through criminal acts claims, which are subject to a one-year statute of limitations, are barred in full. This is true for each Pharmacy Defendant that stopped distributing prescription opioid medication more than one year before it was sued.

September 30, 2014.  Kobrin Decl., Ex. 1 ¶ 70.  Thus, because the statute of limitations for Giant Eagle only goes back to May 18, 2014, there is only a four-and-a-half month window of conduct within the limitations period.[8]

### E.    Rite Aid

Rite Aid never distributed Schedule II drugs and only distributed HCPs for a brief time within the limitations period.  Rite Aid stopped distributing HCPs when DEA reclassified them from Schedule III to Schedule II and stopped distribution of all controlled substances shortly thereafter.  McEnroe Decl., Ex. 1 ¶¶ 26, 42.  Rite Aid's last shipments of HCPs into Cuyahoga and Summit counties were September 26, 2014 and September 18, 2014, respectively.  McEnroe Decl. ¶ 6.  Accordingly the statute of limitations only leaves five months of HCP shipments from April 25, 2014 to September 18 and September 26, 2014, for which plaintiffs can receive relief.  At minimum, partial summary judgment should be granted in Rite Aid's favor for any conduct or damages outside of those five months.  Rite Aid will address why complete summary judgment is warranted for the remaining five months of shipments in its individual summary judgment motion.

### F.    DDM

DDM never distributed Schedule II drugs, only distributed one relevant product, HCPs, and stopped distributing that product when the DEA rescheduled it from Schedule III to Schedule II on October 6, 2014.  Briscoe Decl. ¶¶ 2, 5.  Thus, because the statute of limitations for DDM only goes back to May 18, 2014, there is only a four-and-a-half month window of conduct within the limitations period.

---

[8] In 2016, Giant Eagle opened a separately licensed unincorporated division known as Giant Eagle Rx Distribution Center ("GERXDC").  GERXDC started distributing Schedule II-V controlled substances to Giant Eagle pharmacies on March 16, 2016.  Throughout this litigation, plaintiffs have focused their attention on Giant Eagle's HBC warehouse operation, despite having learned of GERXDC's distribution activities in discovery.

### G. Walmart

Walmart ceased all prescription opioid distribution activities relevant to this action in April 2018.  *See* Fumerton Decl., Ex. A at 22-24.  Therefore, summary judgment must be granted to Walmart for all claims arising out of alleged conduct before April 25, 2014, because they are time-barred.  For the remaining period, as Walmart will explain more fully in its forthcoming merits motion for summary judgment, plaintiffs lack any basis for recovery.

## IV. DISCOVERY RULE TOLLING

The discovery rule does not apply to the kinds of claims asserted against the Pharmacy Defendants.  *See Inv'rs REIT One v. Jacobs*, 546 N.E.2d 206, 210 (Ohio 1989); Combined Br. at 12.  Even if it did apply, it would not provide relief to plaintiffs.  When a plaintiff knows or should know it has been injured, the statute runs.  *See O'Stricker v. Jim Walter Corp.*, 447 N.E.2d 727, 732 (Ohio 1983); Combined Br. at 9.  This is so even if the plaintiff does not know the full extent of its injury and even if the plaintiff does not know who is responsible for the injury.  *See Flowers v. Walker*, 589 N.E.2d 1284, 1287-88 (Ohio 1992); *Zimmie v. Calfee, Halter & Griswold*, 538 N.E. 2d 398, 400, 402 (Ohio 1989); Combined Br. at 9.

### A. Plaintiffs Knew or Should Have Known of Their Alleged Injuries Long Before April 2014

The damages asserted by plaintiffs here are the expenditures they allegedly made *themselves* to address opioid abuse and addiction.  By definition, plaintiffs knew they were making these expenditures.  Ruiz Decl., Ex. 2 at Ex. 2; *id.*, Ex. 3 at Ex. 2 (interrogatory responses by plaintiffs identifying millions in opioid-related expenses that the counties allegedly paid as far back as 2006).  The Court recognized as much at the motion to dismiss stage, stating that plaintiffs have known about the "effects of the opioid crisis" since at least 2007.  Dkt. No.

1203 at 4.  This is not a case where a plaintiff did not know it was incurring alleged damages. The discovery rule therefore does not toll the statute of limitations.

Though unnecessary to the analysis, the factual record reinforces that plaintiffs knew or should have known of their alleged injuries long before April 2014.  These facts, set out comprehensively in section II of the Combined Brief, render the discovery rule inapplicable.

### B.   Though Irrelevant, Plaintiffs Knew or Should Have Known of the Pharmacy Defendants' Potential Role

Plaintiffs cannot trigger the discovery rule simply by claiming they lacked knowledge about the Pharmacy Defendants.  Under the discovery rule, it is not necessary for the plaintiff to know the defendants' identities.  *See Flowers*, 589 N.E.2d at 1288 (ruling statute of limitations ran even though plaintiff did not know the identity of the defendant, noting that the discovery rule does not "excuse" a plaintiff "from the duty to identify the tortfeasor once there is reason to know a tort has been committed"); Combined Br. at 25-26.  Whether plaintiffs knew the identities of any particular defendant in April 2014 is irrelevant to the statute of limitations analysis.

In any event, plaintiffs *did* have access to material information about the Pharmacy Defendants, including the following:

- The Pharmacy Defendants held licenses issued by the State of Ohio to *distribute* controlled substances in Ohio.  Ruiz Decl., Exs. 4-5; Briscoe Decl.; Harris Decl., Exs. 2-4; Kobrin Decl., Exs. 2-3; McEnroe Decl., Ex. 2; Fumerton Decl., Exs. B-F.  These distribution licenses have been publicly available since at least 2008. *See* Ruiz Decl., Ex. 6 at 62:15-63:25.

- The Pharmacy Defendants' pharmacies were present in the plaintiffs' communities and visible to the naked eye.  For example, there were 69 CVS pharmacies, 59 Walgreens pharmacies, 43 Rite Aid pharmacies, 40 Giant Eagle pharmacies, and 20 DDM pharmacies in Cuyahoga and Summit counties.[9]

---

[9] Ruiz Decl., Ex. 1 at 7 n.23 (CVS); Harris Decl., Ex. 1 at 48, 56 (Walgreens); McEnroe Decl., Ex. 1 ¶ 55 (Rite Aid); Kobrin Decl., Ex. 1 ¶ 52 (Giant Eagle); Briscoe Decl. ¶ 6 (DDM).

Plaintiffs knew or should have known that these pharmacies dispensed prescription opioids. *E.g.*, Cuyahoga Compl., Dkt. No. 1630, ¶ 584 (alleging that the Pharmacy Defendants' "business includes the distribution and dispensing of prescription opioids").

- The Pharmacy Defendants discussed their distribution operations in public filings. For instance:

  **Walgreens:** Walgreens consistently disclosed its distribution operations in its annual Form 10-Ks. *E.g.*, Harris Decl., Ex. 6 at 16 ("The Company's retail store operations are supported by 18 major distribution centers . . . ."); *id.*, Ex. 5 at 4 ("The company's retail drugstore operations are supported by nine distribution centers . . . .").

  **CVS:** In CVS's 2001 Form 10-K, it disclosed publicly that "approximately 85% of the merchandise we purchased [including prescription drugs] was received by our distribution centers for redistribution to our stores." Ruiz Decl., Ex. 7 at 3; *see also id.*, Ex. 8 at 18, 29 ("We own nine distribution centers . . . and lease ten additional facilities"; "Federal and state controlled substance laws require us to register our pharmacies and distribution centers with the DEA and state controlled substances agencies").[10]

  **Rite Aid:** In Rite Aid's 2011 Form 10-K, Rite Aid disclosed publicly that "[o]ur pharmacies and distribution centers are also registered with the Federal Drug Enforcement Administration and are subject to Federal Drug Enforcement Agency regulations relative to our pharmacy operations, including regulations governing purchasing, storing and dispensing of controlled substances." The disclosure further stated that "[w]e operate the following distribution centers and satellite distribution locations, which we own or lease as indicated" and included an illustrative chart. McEnroe Decl., Ex. 3 at 10, 22.

  **Walmart:** In Walmart's 2007 Form 10-K, Walmart disclosed publicly that it operates "professional services distribution centers" that ship, among other things, "pharmaceuticals." Fumerton Decl., Ex. G.

- Plaintiffs themselves cite a 2012 DEA enforcement action against a Walgreens distribution center and several pharmacies in Florida. *E.g.*, Cuyahoga Compl., Dkt. No. 1630, ¶¶ 618-19, 622. This enforcement action is irrelevant to any claims in this case because it had nothing to do with the distribution of prescription opioid medication in Ohio. It is, however, the basis of plaintiffs' complaints in this Court and how they frame their claims against Walgreens. The

---

[10] *See also* Ruiz Decl., Ex. 9 at 6; *id.*, Ex. 10 at 6, 7; *id.*, Ex. 11 at 16, 26.

2012 DEA enforcement action was public knowledge long before April 2014. For example:

- o  In 2012, Walgreens disclosed in its Annual Report and 10-K that "[o]n September 14, 2012, DEA served an Order to Show Cause (OSC) and Immediate Suspension Order (ISO) on the Jupiter Distribution Center and placed under seal the controlled substance inventory at that facility."[11] Starting in 2013, the OSC was publicly available on the DEA's website.[12]

- o  In June 2013, after Walgreens agreed to pay $80 million to resolve the DEA's administrative actions, the DEA issued a press release, characterizing the allegations of Walgreens' under-reporting of suspicious orders, including for oxycodone, as "systematic." Harris Decl., Ex. 9.

- o  Also in June 2013, numerous news outlets reported on the allegations against Walgreens and the resulting settlement, including *The New York Times*, *The Wall Street Journal*, Reuters, and *USA Today*.[13]

Plaintiffs are charged with constructive knowledge of these facts. *See Estate of Greenawalt v. Estate of Freed*, 2018-Ohio-2603, 2018 WL 3202829, at *6 (Ohio Ct. App. June 29, 2018) (noting "[c]onstructive knowledge may be imputed from matters freely available in the public record"). Even if the law required knowledge about particular defendants in order for the statute to run (it does not), plaintiffs had more than ample information to "investigate the facts and circumstances relevant to [their] claim in order to pursue [their] remedies." *Flowers*, 589 N.E.2d at 1288. They could have sued the Pharmacy Defendants well before April 25, 2014. They failed to do so.

---

[11] Harris Decl., Ex. 7 at 38; *id.*, Ex. 6 at 16. Walgreens made a similar disclosure of DEA action in Ohio. For example, in a 10-Q in 2013, Walgreens disclosed not only the DEA actions and settlement in Florida but also that "[o]n February 5, 2013, DEA served an administrative inspection warrant and administrative subpoenas for records on the Company's distribution center in Perrysburg, Ohio." *Id.*, Ex. 8 at 15.

[12] Harris Decl., Ex. ¶ 13 & Ex. 11 (showing OSC on DEA website on July 4, 2013 and March 1, 2017).

[13] Harris Decl., Ex. ¶ 12 & Ex. 10.

### C. DEA's Production of Transactional ARCOS Data Is Irrelevant

Plaintiffs may argue that the statute of limitations should be tolled because they did not have access to ARCOS data produced in this case in April 2018. Other plaintiffs, however, filed suit without access to this information. *See* Combined Br. at 30 (citing West Virginia Attorney General action filed in June 2012 against 14 distributors); *County of Webb v. Purdue Pharma, L.P.*, 5:18-cv-00011, Dkt. No. 1 (S.D. Tex. Jan. 25, 2018) (alleging distribution claims against the Pharmacy Defendants prior to ARCOS production).

In any event, the law does not allow a plaintiff to sit on its hands and wait to file suit until it obtains data in civil discovery. As explained above, the limitations period begins to run when the allegedly wrongful conduct occurs. And even if the discovery rule were to apply (it does not), the rule does not toll the statute of limitations where plaintiffs know or should know of their injury, but simply lack detail about their claim or the identities of potential defendants. *See, e.g.*, *Flowers*, 589 N.E.2d at 1278-88; *see also Erwin v. Bryan*, 929 N.E.2d 1019, 1025 (Ohio 2010) ("Once the claim has accrued, the failure of the plaintiff to learn the identity of an allegedly negligent party does not delay the running of the statute of limitations."); Combined Br. at 25-26.

## V. FRAUDULENT CONCEALMENT TOLLING

Other than generalized and unsupported allegations of fraudulent concealment made against all defendants, plaintiffs do not allege that the Pharmacy Defendants engaged in any fraudulent concealment. To invoke equitable tolling of the statute of limitations on the ground of fraudulent concealment, "a plaintiff must show that the defendant engaged in a course of conduct to conceal evidence of the defendant's wrongdoing, and that the plaintiff, despite the exercise of due diligence, failed to discover the facts supporting the claim." *Perkins v. Falke & Dunphy, L.L.C.*, 2012-Ohio-5799, 2012 WL 6097104, at *3 (Ohio Ct. App. 2012); *see Doe v. Archdiocese of Cincinnati*, 849 N.E.2d 268, 279 (Ohio 2006) (collecting cases). The bar to establish

fraudulent concealment is high—the plaintiff must provide evidence that the defendant "continually concealed or affirmatively misled" the plaintiff. *Perkins*, 2012 WL 6097104, at *3.

There is no evidence that any of the Pharmacy Defendants concealed any alleged wrongdoing. To the contrary, the Pharmacy Defendants disclosed to DEA in real time each and every order plaintiffs allege to be suspicious. Ruiz Decl., Ex. 12 at 4-5, 56-60. They did so through ARCOS. Thus, the Pharmacy Defendants disclosed—rather than concealed—any alleged suspicious orders. The fraudulent concealment doctrine cannot apply.[14]

To the extent plaintiffs argue that the Pharmacy Defendants engaged in fraudulent concealment through public statements that they were complying with the law, such statements amount to a "denial of an accusation of wrongdoing," which, as a matter of law, is "not a fraudulent concealment." *Dayco Corp. v. Firestone Tire & Rubber Co.*, 386 F. Supp. 546, 549 (N.D. Ohio 1974) (internal quotations and citation omitted); Combined Br. at 45.

Likewise, to the extent plaintiffs suggest that *other* Defendants engaged in conduct amounting to fraudulent concealment, that alleged conduct cannot be attributed to the Pharmacy Defendants for tolling purposes. *See Pate v. Huntington Nat'l Bank*, 560 F. App'x 506, 511 (6th Cir. 2014) (recognizing that, under Ohio law, "[t]he doctrine of fraudulent concealment tolls the statute of limitations *as to those defendants who committed or participated in the concealment*" (emphasis added) (quoting *Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 579 (N.D. Ohio 2006), *amended and superseded by* 2006 WL 8427066)).[15]

---

[14] In addition to the ARCOS disclosures, Walgreens' own public filings in 2012 and 2013, reporting in virtually all major press outlets in June 2013, and documents publicly available on the DEA's website starting in 2013 disclosed the DEA's public accusations against Walgreens—the same alleged misconduct that plaintiffs cite in their complaints.

[15] *See also Mattlin Holdings, L.L.C. v. First City Bank*, 937 N.E.2d 1087, 1090-01 (Ohio Ct. App. 2010) (citing the fraudulent concealment analysis in *Metz* with approval); *Cuyahoga Falls v. Johnson Controls, Inc*., No. 5:18-CV-1130, 2019 WL 1116006, at *4 (N.D. Ohio Mar. 11, 2019) (same).

Finally, even if fraudulent concealment were applicable to the Pharmacy Defendants, "[t]he right to rely on fraudulent concealment 'never continues beyond the time that a plaintiff, by exercising reasonable diligence, should have discovered the facts at issue.'" *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475 (6th Cir. 2013) (quoting *Zemcik v. LaPine Truck Sales & Equip. Co.*, 706 N.E.2d 860, 865 (Ohio Ct. App. 1998)).  As set forth above and in section II of the Combined Brief, plaintiffs had more than ample knowledge long before April 2014.

### VI.    CONTINUING TORT DOCTRINE

The continuing tort doctrine—whether it applies here or not—does not alter the analysis.[16]  Where it applies, a plaintiff is "limited to damages only within the [applicable limitations period]."  *Sexton v. Mason*, 883 N.E.2d 1013, 1021 (Ohio 2008); *see also* Combined Br. at 42.  Plaintiffs therefore cannot invoke the doctrine to recover alleged damages incurred more than four years before they filed against the Pharmacy Defendants.

### CONCLUSION

For the foregoing reasons, plaintiffs are barred from seeking relief for shipments that occurred more than four years prior to plaintiffs' first complaints against the Pharmacy Defendants (that is, prior to April 25, 2014 or, for Giant Eagle and DDM, May 18, 2014).  The Court must enter judgment in favor of the Pharmacy Defendants accordingly.

---

[16] As explained in the Combined Brief, the continuing tort doctrine does not apply here.  Combined Br. at 41-42; *see also Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410, 417 (6th Cir. 2007).

Dated: June 19, 2019

Respectfully submitted,

/s/   Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen
Eastern Co.*

/s/   Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Rx Services, Inc. and CVS
Indiana, L.L.C.*

/s/   Kelly A. Moore
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Counsel for Rite Aid of Maryland, Inc., d/b/a
Rite Aid Mid-Atlantic Customer Support
Center*

/s/   Tina M. Tabacchi
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/   Timothy D. Johnson
Timothy D. Johnson
Gregory E. O'Brien
CAVITCH FAMILO & DURKIN,
CO. LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, OH  44114
Phone:  (216) 621-7860
Fax:  (216) 621-3415
Email:  tjohnson@cavitch.com
Email:  gobrien@cavitch.com

*Counsel for Discount Drug Mart, Inc.*

/s/   Robert M. Barnes
Robert M. Barnes
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Center
301 Grant Street
Pittsburgh, PA  15219
Phone:  (412) 471-3490
Fax:  (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: kobrin@marchus-shapira.com

*Counsel for HBC Service Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 19, 2019, the foregoing was filed using the Court's CM/ECF filing system and will be served via the Court's CM/ECF filing system on all attorneys of record.

/s/ *Eric R. Delinsky*
Eric R. Delinsky