UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*The County of Summit, Ohio*, et al. *v. Purdue Pharma L.P.*, et al.,<br>Case No. 18-op-45090<br><br>*The County of Cuyahoga, Ohio*, et al. *v. Purdue Pharma L.P.*, et al.,<br>Case No. 17-op-45004 | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**PHARMACY DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
<u>BASED ON THE STATUTE OF LIMITATIONS</u>**

# TABLE OF CONTENTS

A. Relevant Dates ................................................................................................................ 1

B. Public Nuisance .............................................................................................................. 1

C. Discovery of Pharmacy Defendants................................................................................ 3

D. Equitable Tolling ............................................................................................................ 4

E. Fraudulent Concealment ................................................................................................. 5

F. Unjust Enrichment .......................................................................................................... 7

Plaintiffs ignore critical undisputed facts. Pharmacy Defendants have stopped distributing all relevant prescription opioids. Their distribution operations—and their Ohio distribution licenses—were public. And far from committing a fraud on DEA, they reported all of their opioid shipments to DEA.

Plaintiffs also ignore Ohio law, which holds among other things that "the failure of the plaintiff to learn the identity of an allegedly negligent party does not delay the running of the statute of limitations," *Erwin v. Bryan*, 929 N.E.2d 1019, 1025 (Ohio 2010), and that the statute of limitations applies to public nuisance claims when defendants (like Pharmacy Defendants) have stopped their alleged conduct, *Ashtabula River Corp. Grp. II v. Conrail, Inc.*, 549 F. Supp. 2d 981, 984 (N.D. Ohio 2008). These undisputed facts and black letter principles of Ohio law vitiate plaintiffs' statute of limitations arguments.

Pharmacy Defendants adopt the Combined Reply of the Distributors and Manufacturers in Support of their Partial Summary Judgment Motion on Statute of Limitations Grounds ("Combined Reply") and make the following additional points.

### A. Relevant Dates

Plaintiffs do not dispute that they sued Pharmacy Defendants months after other defendants. They do not dispute that the longest possible statute of limitations applicable to Pharmacy Defendants is four years. And they do not dispute that, absent an exception to the statute of limitations, they are barred from obtaining relief (a) from Walgreens, CVS, Rite Aid, and Walmart for shipments before April 25, 2014 and (b) from DDM and Giant Eagle for shipments before May 18, 2014.

### B. Public Nuisance

Plaintiffs' public nuisance analysis ignores another undisputed fact unique to Pharmacy Defendants—each stopped distributing all relevant opioids. It is undisputed that (a) Walgreens

1

and CVS Indiana stopped on April 9, 2014; (b) CVS Rx Services, DDM, Giant Eagle, and Rite Aid stopped by October 2014; and (c) Walmart stopped in April 2018. *See* Dkt. 1872 at 3-6.

Because Pharmacy Defendants have stopped distributing, the nuisance alleged against them is not a "continuing" nuisance. The statute of limitations therefore applies. As Chief Judge Gaughan explained in a case asserting public nuisance:

> Under Ohio law, nuisances are classified as either permanent or continuing. A permanent nuisance is governed by the four year statute of limitations and occurs when the defendant's tortious act has been fully accomplished but injury to the plaintiff's estate from that act persists in the absence of further conduct by the defendant. A continuing nuisance, on the other hand, arises when the wrongdoer's tortious conduct is ongoing, perpetually generating new violations. In cases of a continuing nuisance, the statute of limitations is tolled, as the defendant's tortious activity is ongoing, perpetually creating fresh violations of the plaintiff's property rights.

*Ashtabula River Corp.*, 549 F. Supp. 2d at 984 (citations and alterations omitted); *see also Gibson v. Park Poultry, Inc.*, No. 2006 CA 296, 2007 WL 2358589, at *2 ¶ 10 (Ohio Ct. App. Aug. 13, 2007). In *Ashtabula*, because defendants had ceased the alleged river pollution, Chief Judge Gaughan held that the alleged public nuisance was permanent, and she dismissed the claims as untimely. 549 F. Supp. 2d at 985. It did not matter that the plaintiff sought forward-looking abatement.[1]

The undisputed facts compel the same result here. Because Pharmacy Defendants no longer distribute, their alleged conduct is *not* "ongoing" and they are *not* "perpetually creating fresh violations." *Id.* at 984. Accordingly, the nuisance alleged against the Pharmacy Defendants is not a continuing nuisance and "is governed by [the] four year statute of limitations." *Id.*[2]

---

[1] *Id.* at 988 (noting plaintiff sought costs to "abate contamination," not damages); *see also id.* at 983 (noting plaintiff sought costs it "will pay" for "remediation").

[2] The only case plaintiffs cite on this issue—from 1877— is an adverse possession case. To the extent the court used the language of nuisance, it spoke of a *continuing* nuisance. The case therefore has no relevance to Pharmacy Defendants. *The Little Miami R.R. Co. v. Comm'rs of Greene City*, 31 Ohio St. 338, 348, 350 (1877) (holding claim

2

For Walgreens and CVS Indiana, this means complete judgment on public nuisance. To the extent these facts do not extinguish the nuisance claims against the other Pharmacy Defendants,[3] they limit recovery against them to as little as five months of shipments, depending on when each stopped distributing. *See Sexton v. Mason*, 883 N.E.2d 1013, 1021 (Ohio 2008).

### C. Discovery of Pharmacy Defendants

For several of their claims, plaintiffs argue that the discovery rule tolled the limitations period. As set forth in section I of the Combined Reply, plaintiffs were on notice of their alleged injury long before 2014. Their discovery-rule argument therefore fails.

Plaintiffs suggest they are entitled to discovery rule tolling because they did not know to sue Pharmacy Defendants in particular. This is specious. Ohio law is clear—the statute runs whether or not a plaintiff knows the identity of the defendant. *See Flowers v. Walker*, 589 N.E.2d 1284, 1287-88 (Ohio 1992); *see also Erwin*, 929 N.E.2d at 1025. Regardless, plaintiffs had more than enough information to identify Pharmacy Defendants as potential defendants. For instance:

- Each Pharmacy Defendant held an Ohio license to distribute controlled substances, and these licenses were publicly available long before 2014. Dkt. 1872 at 7.

- Pharmacy Defendants publicly disclosed their distribution operations long before 2014, including in SEC filings. *See* Dkt. 1872 at 8.

- Walgreens was the subject of a high-profile 2012 DEA enforcement action for allegedly under-reporting suspicious orders. *See* Dkt. 1872 at 9.[4]

---

against railroad company that "has *continued* the obstruction in use" was not barred; "[e]very *continuance* of a nuisance is, in the judgment of the law, a fresh nuisance" (emphasis added)).

[3] *See, e.g.*, *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002) (holding that it was the "ongoing conduct" of defendants that established their control over the alleged nuisance and entitled plaintiff to relief); *see also State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 446 (R.I. 2008) (abatement available only against a defendant which has control of the nuisance). The California lead paint case cited by plaintiffs applied California, not Ohio, law and in any event, concerned different facts.

[4] While plaintiffs argue that prior enforcement actions are unrelated to Ohio and did not provide them with constructive notice, they say the opposite elsewhere. *See, e.g.*, Dkt. 2205 at 18 (arguing that "Walgreens's CSA violations related to [Florida] extended beyond Florida and impacted Ohio").

- Pharmacy Defendants were visible in plaintiffs' communities. For example, there were 69 CVS pharmacies, 59 Walgreens pharmacies, 43 Rite Aid pharmacies, 40 Giant Eagle pharmacies, and 20 DDM pharmacies in Cuyahoga and Summit counties alone.  *See* Dkt. 1872 at 7.

Given these undisputed facts, it strains credulity to suggest that plaintiffs were not on notice of potential claims against Pharmacy Defendants. The suggestion is even more baseless given the other information available to plaintiffs—for instance, the quarterly ARCOS data showing by 3-digit zip code the volume of pills delivered; the quarterly Ohio Board of Pharmacy reports showing the volume of pills delivered to each county; and the number of doses dispensed per capita, as published in *The Plain Dealer*. *See* Combined Reply 20 n.28; Dkt. 1896-1 at 21-23.

While plaintiffs claim they needed detailed ARCOS data to identify Pharmacy Defendants, the lack of "detailed knowledge" is insufficient to toll. *Joseph v. Joseph*, No. 16-cv-465, 2018 WL 488195, at *6 (S.D. Ohio Jan. 19, 2018). Indeed, plaintiffs themselves brought suit against several distributors before the production of such data. Combined Reply 19.

### D. Equitable Tolling

Plaintiffs argue that their lack of access to transactional ARCOS data equitably tolled the statute. But plaintiffs ignore Ohio law, which is the only law that applies to Pharmacy Defendants given that plaintiffs assert no federal claims against them. *See Smith v. Hilliard*, 578 F. App'x 556, 562 (6th Cir. 2014) ("Just as limitations periods are taken from state law, so are the rules regarding tolling."). "Ohio courts of appeals have held that the doctrine of equitable tolling requires . . . representations that the statute of limitations was larger than it actually was, promises of a better settlement if the lawsuit was not filed, or other similar representations or conduct." *Weikle v. Skorepa*, 69 F. App'x 684, 688 (6th Cir. 2003) (internal quotation marks omitted); *see also Coleman v. Columbus State Cmty. Coll.*, 49 N.E.3d 832, 838-39 (Ohio Ct. App. 2015); *Sabouri v. Ohio Dep't of Job & Family Serv.*, 763 N.E.2d 1238, 1241 (Ohio Ct.

App. 2001). Plaintiffs cannot meet this Ohio test, nor do they even try.[5] There is no evidence that Pharmacy Defendants made *any* representations to plaintiffs, much less any about the prospect of this suit, the statute of limitations, or settlement.

Moreover, plaintiffs concede equitable tolling is available only if "despite the practice of due diligence 'extraordinary circumstances' prevented the plaintiff from discovering the cause of action." Dkt. 2212 34-35. Plaintiffs had access to more than enough information to timely file suit and, in any event, make no showing of any due diligence. Combined Reply 19-21.

### E. Fraudulent Concealment

Plaintiffs also seek tolling on the theory that Pharmacy Defendants fraudulently concealed from DEA their alleged misconduct in shipping orders. But it is undisputed that Pharmacy Defendants reported to DEA, through ARCOS, every single one of their shipments. Dkt. 1872 at 11. Plaintiffs themselves describe these ARCOS submissions—and the database compiling them—as "the key to plaintiffs identifying defendants' failure to identify, suspend and report suspicious orders." Dkt. 2212 at 36. When the proffered basis for tolling is fraudulent concealment from DEA, yet the defendants submitted to DEA the very information plaintiffs describe as the "key" for identifying the alleged misconduct, there is no basis to toll.

Plaintiffs make no particular fraud allegations against DDM, Giant Eagle, Rite Aid and Walmart, so the doctrine is wholly inapplicable as to them. While plaintiffs do make particular allegations as to CVS and Walgreens, the allegations have nothing to do with the concealment of legal claims. *Phelps v. Lengyel*, 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002) (tolling requires affirmative misrepresentation "designed to prevent, and which [did] prevent, discovery of the cause of action").

---

[5] Plaintiffs essentially recognize that their theory applies only to their federal law claims, which they do not assert against Pharmacy Defendants. Dkt. 2212 at 34 ("The doctrine applies to all federal statutes, including RICO, as well as to collective actions.").

5

For instance, plaintiffs contend that an internal CVS document inaccurately attributed a job title to a particular employee. But plaintiffs—who did not even receive the document—cite no evidence that the internal job title misled DEA (or anyone else), much less that it prevented some public action by DEA that could have provided plaintiffs additional notice of their claims. Plaintiffs make no showing that the job title had any effect on the discovery of their claims.[6]

Plaintiffs' sparse allegations about Walgreens—just three sentences—find no support in the few documents they cite and do not supply any element of fraudulent concealment. Plaintiffs cannot point to *any* intent to deceive or *any* actual concealment or misrepresentation by Walgreens, much less that was directed at plaintiffs. And contrary to plaintiffs' characterizations, the actual documents they cite—none of which involves a pharmacy in Ohio—show Walgreens (1) engaged in extensive due diligence to resolve vendor concerns, *see* Dkt. 2212, Exs. 46-48, and (2) encouraged the use of tools to help pharmacies comply with Walgreens' state-of-the-art SOM system, *see id.*, Exs. 49-50; *see also* Dkt. 2149 at 65-66.[7]

That plaintiffs learned about these supposed CVS/Walgreens issues in discovery—*after* bringing this suit—provides yet another reason why tolling is unavailable. Concealment of these

---

[6] In any event, undisputed testimony proves the allegation false. *See* Dkt. 2149 at 83. Plaintiffs' other fraud allegation against CVS—regarding "DEA Speaking Points"—fails similarly. Plaintiffs do not identify how the document was misleading. Nor do they cite any evidence to indicate that DEA in fact was misled, much less in a way that prevented the agency from taking public action that would have provided plaintiffs additional notice of their claim. Further, if plaintiffs' unarticulated theory is what they have insinuated elsewhere—that the document stated misleadingly that SOM review would be transferred from a central location to individual distribution centers (CVS later decided against the transfer and informed DEA, *see* Ex. A, CVS-MDLT1-120553)—then the evidence is immaterial. The location of SOM reviewers has nothing to do with plaintiffs' discovery of alleged suspicious orders.

[7] Exhibits 46 to 48 do not show *any* distribution by Walgreens, but instead show Walgreens' vendor Cardinal asking questions about specific orders and Walgreens conducting due diligence to resolve Cardinal's concerns. Dkt. 2212, Ex. 48; *see also id.*, Ex. 47 (same). As shown in Exhibit 48, Walgreens' due diligence was extensive, including multiple site visits "to verify [Good Faith Dispensing]" and an investigation leading to the termination of an employee for "pilferage." *Id.*, Ex. 48. Far from showing fraudulent concealment, plaintiffs' evidence shows Walgreens doing exactly what it was supposed to do. Exhibits 49 and 50 show Walgreens educating its stores to comply with its state-of-the-art ceiling limits, including by utilizing a tool that tells stores when they must submit a "ceiling override request" to Walgreens' Rx Integrity team. *See id.*, Ex. 50. Nothing about this tool allowed stores to circumvent Walgreens' SOM system, under which any manual order exceeding a store's ceiling limit would be "flagged" for review and the order cut to zero. *See id.* The only way a store can ever place an order above that limit is to submit a request to Rx Integrity detailing a legitimate medical need. *Id.*

facts could not possibly have prevented plaintiffs from learning of their claims, since they brought suit without them.  *See Smith v. Barclay*, 2012-Ohio-5086, 2012 WL 5378180, at *7 ¶ 28 (Ohio Ct. App. Nov. 1, 2012) ("reject[ing]" fraudulent concealment because "[r]egardless of [the defendant's] actions, [the plaintiff] became aware of the potential problem").

While plaintiffs contend that tolling may be based on acts of alleged coconspirators, they only cite cases applying federal law. But "[u]nder Ohio law, the doctrine of fraudulent concealment tolls the statute of limitations only as to parties that committed or participated in the concealment." *City of Cuyahoga Falls v. Johnson Controls, Inc.*, No. 5:18-CV-1130, 2019 WL 1116006, at *4 (N.D. Ohio Mar. 11, 2019) (internal quotations omitted); *see also State v. Cargill Inc.*, No. 2012 CV 03 0268, 2015 WL 10944732, at *3 (Ohio Com. Pl. Feb. 27, 2015) (same, in conspiracy case). As noted above, plaintiffs bring no federal claims against Pharmacy Defendants. Ohio law therefore applies. The alleged acts of other defendants cannot be imputed to them to toll the statute of limitations.

### F.     Unjust Enrichment[8]

To the extent they pursue such a claim, plaintiffs contend their unjust enrichment claim did not accrue "until the last point in time that the plaintiff conferred and a defendant received a benefit." But the "last rendition of services" rule applies only to quasi-contract claims arising from express or implied contractual relationships between plaintiff and defendant. *Desai v. Franklin*, 895 N.E.2d 875 (Ohio Ct. App. 2008) (employment agreement). Plaintiffs cite no case applying this rule to a tort-based claim. Because the claims here do not arise from any express or implied contract with plaintiffs and instead are tort-based, the "last rendition of services" rule

---

[8] Plaintiffs have represented that they are not pursuing their unjust enrichment claim in the October 21, 2019 trial and will file a notice to this effect with the Court.

7

does not apply. Plaintiffs' unjust enrichment claims therefore accrued at the time of the alleged conduct. Dkt. 1872 at 2.

Even if the "last rendition of services test" applied, Walgreens and CVS Indiana still would be entitled to complete summary judgment. Plaintiffs' claim is that defendants unjustly benefitted by continuing to ship opioids.[9] But Walgreens and CVS Indiana stopped shipping—and thus stopped receiving this alleged benefit—on April 9, 2014. Under the "last rendition of services" test, plaintiffs' claim accrued on this date. Because they waited more than four years to sue, the claims against Walgreens and CVS Indiana are barred under plaintiffs' own theory. Likewise, partial judgment is required for the other Pharmacy Defendants, because the alleged benefit of shipping outside the limitations period was received outside the limitations period under plaintiffs' theory. That part of the claim therefore is time-barred.

## CONCLUSION

For the reasons set forth above and in Pharmacy Defendants' opening brief, plaintiffs are barred from seeking relief for shipments that occurred more than four years prior to plaintiffs' first complaints against the Pharmacy Defendants (that is, prior to April 25, 2014 for CVS, Rite Aid, Walgreens and Walmart and prior to May 18, 2014 for DDM and Giant Eagle). The Court must enter judgment in favor of each Pharmacy Defendant accordingly.

---

[9] *See* Cuyahoga Third Am. Compl. ¶ 1159 ("Defendants have benefited from those payments because they allowed them to continue providing customers with a high volume of opioid products"); Summit Third Am. Compl. ¶ 1117 (same); *see also* Dkt. 1203 at 38 (Opinion and Order) (identifying alleged benefit as the "continue[d]" shipment of "large volumes of opioids into Plaintiffs' communities at great profit to Defendants").

8

Dated:  August 16, 2019

/s/    Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlitbeck.com

*Counsel for Walgreen Co. and Walgreen Eastern Co.*

/s/    Kelly A. Moore
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Counsel for Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center*

Respectfully submitted,

/s/    Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Rx Services, Inc. and CVS Indiana, L.L.C.*

/s/    Tina M. Tabacchi
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/    Timothy D. Johnson
Timothy D. Johnson
Gregory E. O'Brien
CAVITCH FAMILO & DURKIN,
CO. LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, OH  44114
Phone:  (216) 621-7860
Fax:  (216) 621-3415
Email:  tjohnson@cavitch.com
Email:  gobrien@cavitch.com

*Counsel for Discount Drug Mart, Inc.*

/s/    Robert M. Barnes
Robert M. Barnes
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Center
301 Grant Street
Pittsburgh, PA  15219
Phone:  (412) 471-3490
Fax:  (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: kobrin@marchus-shapira.com

*Counsel for HBC Service Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 16, 2019, the foregoing was filed using the Court's CM/ECF filing system and will be served via the Court's CM/ECF filing system on all attorneys of record.

                                                  /s/ *Eric R. Delinsky*
                                                  Eric R. Delinsky