# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*The County of Summit, Ohio*, et al. *v. Purdue Pharma L.P.*, et al.,<br>Case No. 18-op-45090<br><br>*The County of Cuyahoga, Ohio*, et al. *v. Purdue Pharma L.P.*, et al.,<br>Case No. 17-op-45004 | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

## REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY CVS INDIANA, L.L.C. AND CVS RX SERVICES, INC.

i

**TABLE OF CONTENTS**

I. Plaintiffs Have Not Created a Factual Dispute on CVS's New Suspicious Order Monitoring System .................................................................................................... 1

II. Plaintiffs Have Not Created A Factual Dispute on Causation .......................................... 4

III. Plaintiffs' Factual Background Section Is Irrelevant .......................................................... 5

Plaintiffs' effort to stave off summary judgment in favor of the CVS defendants is futile. The claims against CVS Indiana, which stopped distributing any relevant opioid in April 2014, are time-barred.[1] The surviving claims against CVS Rx Services are for a five-month period in 2014 (before CVS Rx Services itself stopped distributing) when a new suspicious order monitoring system was in effect. Plaintiffs have not challenged this new system, and CVS moved for summary judgment on this basis. Plaintiffs respond only with passing citations to three documents buried in a background section mostly devoted to different systems from earlier time frames that are not the subject of the motion. Even as mischaracterized by plaintiffs, these three documents do not create a genuine dispute regarding the compliance of this system.

Nor do plaintiffs' claims against the CVS defendants survive on causation grounds. Plaintiffs do not identify a single piece of evidence demonstrating that any CVS shipments of relevant opioids to Cuyahoga and Summit counties were diverted and caused plaintiffs to suffer any injuries, as is required by Ohio law. And plaintiffs themselves assert that they did not even begin to suffer discernible injuries until after the CVS defendants ceased all relevant distributions.

The CVS defendants are entitled to summary judgment.

## I.  Plaintiffs Have Not Created a Factual Dispute on CVS's New Suspicious Order Monitoring System

For the five months that CVS Rx Services shipped relevant opioids to Cuyahoga and Summit counties, CVS was operating a new suspicious order monitoring system that was put in place in early 2014. Dkt. 1886-4/1889-4 at 2. This evidence is undisputed. The only expert opinion on this new system comes from CVS's DEA expert, who opined that the new system complied with regulatory requirements and was reasonable. Hill Rpt. 23-24 (Dkt. 1939-13/1936-

---

[1] *See* Pharmacy Defendants' Motion for Summary Judgment Based on the Statute of Limitations, Dkt. 1872/1874, and Reply in Support.

13). His opinion also is undisputed. Plaintiffs' DEA expert was not even "asked to opine on this system." Rafalski Rpt. 101 (Dkt. 2000-22/1999-21). This alone entitles CVS Rx Services to summary judgment.

Nothing in plaintiffs' opposition dictates a different result. Plaintiffs cite to three documents in support of the extraordinary proposition that the new system—one that a former high-ranking DEA official opined was compliant—"failed to prevent diversion." Dkt. 2208/2213 at 7. Plaintiffs mischaracterize these documents and take them out of context. As explained below, none of these documents demonstrates that the new system failed, let alone resulted in diversion.

The first document relied on by plaintiffs does not even address the SOM process. Dkt. 2208-13/2213-13. In a March 14, 2014 email, an employee in the computer room at the Indianapolis distribution center, *see* Nicastro Tr. at 168 (Dkt. 2169-30/2173-47), wrote: "It's an awesome process. . . NOT. . . ." Dkt. 2208-13/2213-13. The "process" he was discussing was *not* SOM, but rather the computer process associated with releasing orders for shipment *after* they cleared SOM. *Id.* The Director of Operations of the Indianapolis distribution center testified about the email: "Once the new SOM process went in place, we would only get the non-SOM orders first, and then we would get the SOM orders later in the night once the SOM processes had a chance to run. So, it created more work for his team." Nicastro Tr. at 19; 168. It was the receipt of multiple order files—and not the workings of the SOM system itself—that the employee was referring to in his March 14, 2014 email.

The second document cited by plaintiffs does not remotely suggest that suspicious orders were being filled. Dkt. 2208-14/2213-14. To the contrary, the document notes that the system was generating false positives. *Id.* In other words, it was flagging too many, not too few orders

for review. CVS delayed deployment of the system to additional distribution centers in order to address and rectify this issue.  *Id.*

The third document—"SOM Risk Analysis"—identifies only "potential" risks and lays out plans to address them.  Dkt. 2208-15/2213-15.  This document demonstrates diligence.  It does not identify "a high risk of diversion of controlled substances," as plaintiffs contend.  Nowhere in the document does that phrase appear.  To the contrary, one of the contributors to the document testified that "at this point in the process . . . I was very confident that we were meeting our obligation to have a suspicious order monitoring system."  Schiavo Tr. at 385 (Dkt. 2169-38/2177-2).

None of these documents call into question the one and only expert opinion on this system.  Hill Rpt. 23-24.  Nor do they create a dispute as to how the system operated.  The new system is based on a set of computerized tests that identifies orders for review.  *Id.* at 23.  Certain of the tests are based on size, certain on frequency, and certain on pattern.  *Id.*  Each order that is identified by one of these tests is placed in a queue, and analysts then review each one.  *Id.* at 23-24.  Among other things, the analysts review information related to the order and the pharmacy that placed it—including information regarding the prescribers whose prescriptions the pharmacy fills, the patients for whom they are filled (including their method of payment and distance travelled), the pharmacy's inventory, and the pharmacy's location.  Once reviewed, an order is either: (1) cleared as not suspicious; or (2) identified as suspicious, not shipped and reported to DEA.  *Id.* at 24.  Plaintiffs do not call a single one of these core facts into dispute.

There is no dispute that the new suspicious order monitoring system in place for the five months in 2014 when CVS Rx Services distributed to Cuyahoga and Summit counties was compliant.

## II.   Plaintiffs Have Not Created A Factual Dispute on Causation

CVS incorporates here the reply brief filed in support of the Pharmacy Defendants' Summary Judgment Motion on Causation.  As to CVS-specific causation, plaintiffs do not address CVS's lead argument.  Plaintiffs are required under Ohio law to prove that CVS caused their injuries.  *See Cleveland v. JP Morgan Chase Bank, N.A.*, No. 98656, 2013 WL 1183332, at *4 (Ohio App. Mar. 21, 2013) ("Proof of a causal relationship between a defendant's action and a plaintiff's injury is essential in every tort[.]").  Yet they have not identified a single piece of evidence that shows any pills from any CVS shipment were diverted and caused them the harm for which they seek relief.  Their own DEA expert admitted that he "[didn't] have any direct knowledge of what happened to any of the drugs that were distributed to each of the pharmacies." Rafalski Tr. 206 (Dkt. 1969-19/1983-116).  This absence of evidence entitles CVS to summary judgment on causation.

Further, plaintiffs *do not dispute* the following CVS-specific facts relevant to causation:

(1)   the CVS defendants did not distribute any Schedule II drugs, such as oxycodone or fentanyl;

(2)   they stopped distributing the only other relevant opioid (HCPs) five years ago;

(3)   when they still did distribute, they only distributed to their own pharmacies and not to rogue internet pharmacies, rogue pain clinics or dispensing practitioners; and

(4)   the CVS defendants shipped only 1.6% of the relevant prescription opioids into Summit and Cuyahoga counties from 2006 through 2018 (as measured by morphine milligram equivalents (MMEs)).[2]

---

[2] Plaintiffs object to CVS having calculated this percentage through 2018, instead of 2014, when it stopped distributing HCPs.  This is silly. Plaintiffs seek to hold CVS liable for an alleged public nuisance as it exists today. The last five years of shipments are the most relevant, not irrelevant, to such a claim. The alternative percentages cited by plaintiffs (9.61% for Cuyahoga County and 9.04% for Summit County) are misleading because they are calculated based on dosage units rather than MMEs (an apples-to-apples measure for opioids of different strengths). Plaintiffs' own expert discusses the benefits of the MME measure.  McCann Rpt. at 49 (Dkt. 2000-14/1999-13).

4

Plaintiffs not only fail to dispute these facts, they affirmatively reinforce them through admissions in other briefs.  Plaintiffs themselves claim that they did not suffer discernible injuries until 2015-2016 – well *after* the CVS defendants stopped distributing any relevant opioid.  Dkt. 2212 at 13.  They claim the resources they devoted to prescription opioid abuse before then constituted such a "small percentage" that they could not even discover any alleged injury during the time when the CVS defendants still distributed.  *Id.* at 28.  Summary judgment on causation is required.

### III. Plaintiffs' Factual Background Section Is Irrelevant

Plaintiffs' opposition contains a lengthy factual background section that mostly discusses suspicious order monitoring systems from earlier time periods that are not the subject of CVS's motion. It should be disregarded.  Plaintiffs already raised many of these same "facts" in support of their motion for summary judgment on CVS's systems.  Dkt. 1910-1 at 130-134.  CVS opposed that motion and demonstrated that its systems were compliant and plaintiffs are not entitled to summary judgment.  Dkt. 2149 at 77-85.  To the extent plaintiffs elected not to include certain facts in that motion, they may not do so here in opposition to an entirely different motion.

Dated: August 16, 2019                                    Respectfully submitted,

/s/   Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Rx Services, Inc. and CVS Indiana, L.L.C.*

5

## CERTIFICATE OF SERVICE

I, Eric R. Delinsky, hereby certify that on August 16, 2019, the foregoing was filed using the Court's CM/ECF filing system and will be served via the Court's CM/ECF filing system on all attorneys of record.

/s/ *Eric R. Delinsky*
Eric R. Delinsky
