# EXHIBIT I.21

```
 1         IN THE UNITED STATES DISTRICT COURT
 2          FOR THE EASTERN DISTRICT OF OHIO
 3                   EASTERN DIVISION
 4                      -  -  -
 5   IN RE:  NATIONAL     :  MDL NO. 2804
     PRESCRIPTION OPIATE  :
 6   LITIGATION           :
     ---------------------------------------------
 7                        :  CASE NO.
     THIS DOCUMENT        :  1:17-MD-2804
 8   RELATES TO ALL CASES:
                          :  Hon. Dan A.
 9                        :  Polster
10                      -  -  -
              Friday, August 3, 2018
11                      -  -  -
12   HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
              CONFIDENTIALITY REVIEW
13                      -  -  -
14            Videotaped deposition of
     CHRISTOPHER ZIMMERMAN, taken pursuant to
15   notice, was held at the law offices of
     Reed Smith, LLP, Three Logan Square, 1717
16   Arch Street, Suite 3100, Philadelphia,
     Pennsylvania 19103, beginning at 9:00
17   a.m., on the above date, before Amanda
     Dee Maslynsky-Miller, a Certified
18   Realtime Reporter.
19                      -  -  -
20
21
22
             GOLKOW LITIGATION SERVICES
23      877.370.3377 ph| 917.591.5672 fax
              deps@golkow.com
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1         Q.    I think you said within the
 2   closed system, or something to that
 3   effect.
 4         A.    I thought I said
 5   distribution channel.
 6         Q.    We don't need to fight about
 7   what you said or didn't say.
 8               What I just want to know,
 9   your -- do you have an understanding
10   about what the closed system is under The
11   Controlled Substances Act?
12               MR. NICHOLAS:  Object to the
13         form.
14               THE WITNESS:  The closed
15         system, as I've heard it referred
16         to, is that the DEA sets the
17         quotas of how much product can be
18         produced, then manufactured; those
19         products are transferred to the
20         distributor through ARCOS, which
21         is maintained -- transferred to
22         the distributor.
23               And then the distributor
24         transfers to the pharmacy or the
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1            dispenser with an ARCOS
 2            transaction, which closes the
 3            distribution, as far as DEA
 4            tracking goes.
 5   BY MR. PIFKO:
 6        Q.   So there are legitimate
 7   channels of distribution within that
 8   system, correct?
 9            MR. NICHOLAS:  Object to the
10       form.
11            THE WITNESS:  That is the --
12       that is the legitimate
13       distribution channel.
14   BY MR. PIFKO:
15        Q.   Okay.  And then there could
16   be -- a channel of distribution outside
17   of that system, that would be
18   illegitimate, correct?
19            MR. NICHOLAS:  Object to the
20       form.
21            THE WITNESS:  I can't say
22       what type of other distribution.
23       I can only comment on our
24       distribution system.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. PIFKO:
 2        Q.    Well, you said that that's
 3   the legitimate one, the one you just
 4   described, correct?
 5        A.    That's the -- you asked me
 6   what the closed distribution was, and
 7   that's what the closed distribution is.
 8        Q.    And you understand that your
 9   duty to prevent diversion is to prevent
10   applicable controlled substances from
11   exiting that system?
12              MR. NICHOLAS:  Object to the
13         form.
14              THE WITNESS:  Our
15         responsibility is to ensure that
16         we distribute FDA-approved drugs
17         from the -- that we maintain in
18         our distribution centers to
19         licensed entities.
20   BY MR. PIFKO:
21        Q.    And what do you mean by
22   "licensed entities"?
23        A.    Pharmacies, hospitals, DEA
24   registrants and State Board of Pharmacy
```

```
 1    registrants.
 2         Q.   And you understand that
 3    those registrants also have duties to
 4    maintain effective controls as well?
 5              MR. NICHOLAS:  Object to the
 6         form.
 7              THE WITNESS:  They have
 8         their own regulations that they
 9         must follow, correct.
10    BY MR. PIFKO:
11         Q.   So the idea of preventing
12    diversion is to prevent substances from
13    getting into illegal hands, correct?
14              MR. NICHOLAS:  Object to the
15         form.
16              THE WITNESS:  Each
17         registrant has its
18         responsibilities to maintain
19         effective controls to prevent
20         diversion.  We maintain those
21         within our registrant's capacity,
22         correct.
23    BY MR. PIFKO:
24         Q.   Can you give me an example
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1         A.    Yes.
 2         Q.    That's an attribute of your
 3  suspicious order monitoring system,
 4  correct?
 5               MR. NICHOLAS:  Object to the
 6         form.
 7               THE WITNESS:  You need to
 8         put it into context of time,
 9         because the program has been
10         enhanced over the years.
11  BY MR. PIFKO:
12         Q.    Well, for the time period
13  for which you're here to testify, which
14  ends in 2014, at all times there's been
15  some threshold requirement in the system,
16  correct?
17         A.    Correct.
18         Q.    Can you tell me what a
19  threshold is?
20               MR. NICHOLAS:  Object to the
21         form.
22               THE WITNESS:  A threshold is
23         the -- is a trigger that we have
24         put into the program to create --
```

```
 1           to identify an order of interest
 2           for further review.
 3    BY MR. PIFKO:
 4       Q.    And so the threshold is the
 5    first step in the suspicious order
 6    monitoring program, correct?
 7               MR. NICHOLAS:  Object to the
 8           form.
 9               THE WITNESS:  It is a step.
10    BY MR. PIFKO:
11       Q.    Is there a step before the
12    threshold?
13       A.    We train our employees at
14    the distribution centers also to be aware
15    of, and train them on suspicious orders.
16    And if they identify a suspicious order,
17    they're to report it.
18       Q.    The threshold is a key
19    factor that's used to identify
20    potentially suspicious orders, correct?
21               MR. NICHOLAS:  Object to the
22           form.
23               THE WITNESS:  It's an
24           identifier that we use
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    sentence, you can read it.
 2              But my question to you is,
 3    did AmerisourceBergen voluntarily take on
 4    certain activities with respect to
 5    controlling diversion that it didn't
 6    believe were in the statute?
 7              MR. NICHOLAS:  Object to the
 8         form.
 9              THE WITNESS:  No.  We were
10         just enhancing our program, as
11         I -- as it has stated.
12    BY MR. PIFKO:
13         Q.   But by enhancing your
14    program, is it your position that you
15    voluntarily undertook to engage in
16    certain activities that you weren't
17    required to do under the statute?
18              MR. NICHOLAS:  Object to the
19         form.
20              THE WITNESS:  The
21         regulations designed a program to
22         identify and report suspicious
23         orders.  We had that in place.  We
24         still have it in place.  We had it
```

Highly Confidential - Subject to Further Confidentiality Review

1      in place before and after any
2      enhancements.
3              The enhancements were just
4      done about how we identified --
5      and how the process worked.  We
6      didn't -- a requirement never
7      changed.  And our program really
8      never changed.  Just some of the
9      mechanisms, some of the data that
10     we were receiving to provide, you
11     know, more in-depth, line-of-sight
12     when reviewing orders, those type
13     of things, we continued to enhance
14     our program.
15             But the program itself of
16     having a program to identify an
17     order of interest, review the
18     order, determine whether it's
19     suspicious, and if we determined
20     it's suspicious reporting it into
21     the DEA, that's never changed.
22  BY MR. PIFKO:
23     Q.    Why undertake voluntarily --
24  voluntary enhancements, as you're talking