Customer Services Agreement
Statement of Work No. 2

This Statement of Work No. 2 is entered into by and between Vintage Pharmaceuticals d/b/a Qualitest Pharmaceuticals (the "Customer") having an address at 130 Vintage Drive, Huntsville, AL 35811 and **BuzzeoPDMA LLC** ("**BuzzeoPDMA**"), having its office at 1025 Boulders Parkway, Suite 301, Richmond, VA 23225.

Customer and BuzzeoPDMA LLC are parties to the Customer Services Agreement dated January 7, 2013 (the "Agreement").

This Statement of Work is amended to the Agreement and shall be governed by the terms and conditions of the Agreement as if set forth in full herein.

The parties agree to the following:

## 1. Term Extension:

The term of the Agreement shall be extended for an additional term of one (1) year and shall continue until January 7, 2015.

## 2. Scope of Services

### Project: SOM Statistical Model Development and Hosting "in the Cloud"

Using our Ph.D. statisticians and DEA consulting team, BuzzeoPDMA will develop a customized Suspicious Order Monitoring (SOM) statistical model that will be hosted "in the cloud" by BuzzeoPDMA and will be based on Customer's data set (Customer's specific customers and products). The cloud based SOM model will enhance Customer's efforts to comply with DEA's SOM requirement as detailed in Title 21 CFR Part 1301.74(b), Title 21 CFR Part 1310.05 (a) (1), and various DEA guidance memoranda. The cloud based SOM system will be "called" from Customer's existing order management system. The SOM system will evaluate the order against Customer's customized SOM algorithm as hosted by BuzzeoPDMA, and return order status indications that will determine whether orders should be shipped or held ("pended"). Additionally, BuzzeoPDMA will provide a web-based order review and evaluation module that will allow Customer's compliance personnel to review and analyze details of pended order so that defensible decisions can be made for clearing and shipping pended orders or alternatively reporting the order to DEA as a suspicious order.

BuzzeoPDMA support is a complex project that will result in a statistically sound SOM model for Customer as a result of three major activities:

1. Extensive data review and analysis of Customer's existing order history data, so that historical ordering patterns, etc. can be fully understood and utilized in future order evaluations,
2. Modeling and development of a statistically viable and supportable SOM model based on this data, and
3. Deployment of the SOM model and order review and evaluation module in a cloud based environment hosted by BuzzeoPDMA.

**This SOM project includes:**

- Teleconference Discovery/Kickoff Meeting(s) - BuzzeoPDMA will conduct a teleconference with Customer for discussion and assessment of the items that will be needed to develop the defensible SOM model. This discovery meeting will include a thorough discussion and review of current processes, Customer profiles, current IT systems, and order history and Customer insight. Additionally, the BuzzeoPDMA team will provide details of the model "call out" functionality so that appropriate planning can occur by Customer's IT team for this limited IT modification to Customer's existing order management system.
- Development and deployment of a customized statistical based SOM model for Customer to be in BuzzeoPDMA 'cloud service'.
- Development and deployment of the web-based order review and evaluation module.
- Interaction with your IT team during model development to ensure model interaction with your system is understood and planned for.
- Development of supporting documentation and justification.

*Project Fees:*

| | |
|---|---|
| **Initial cost** (one-time charge) – Development of algorithm and deployment of SOM cloud service hosted by BuzzeoPDMA, custom tailored to Customer's customer's product base, previous ordering histories, etc. | $34,500 |
| **Ongoing Processing**, quarterly charge for performing and supporting the cloud-based order review and evaluation process | $11,000/quarter (based on a 1-year agreement) |
| **Full Model "Retunement"** (recommended at least annually) to ensure SOM review is occurring in a regulatory-compliant and business-efficient manner; Customer will determine frequency and timing of these events | $9,500/per retunement |

**Assumptions:**

- Customer's IT group is responsible for minimal modification to Customer's existing order management system. Specifically, 1) construction of a simple secured https call to send each order to the BuzzeoPDMA system, and 2) construction of a second secured https call to retrieve information on orders that are okay to release from the BuzzeoPDMA system.

- Onsite time for this project is limited to one face to face visit with our consulting team. All off-site discussions are supported within the project fees.

- BuzzeoPDMA owns the intellectual property of its model and will provide Customer a perpetual license during the lifetime of our support of the model, as part of the project fees, for the use the SOM model. BuzzeoPDMA does not own the Customer data used in the SOM modeling project.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**Outside the Scope:**
- o  BuzzeoPDMA recommends Customer plan to have BuzzeoPDMA "retune" the model once a year by our statisticians based on potentially changing Customer ordering behavior. This ensures the model is optimally tuned for regulatory and operational efficiency. The reason for this is that the model is developed using historical data that is provided at the start of the design. When the model is implemented, a rolling history is used to calculate the model attributes. In this way the SOM model is a dynamic system. However, the model coefficients are fixed – relating back to the original (supplied) data. See full model retunement description above.
- o  BuzzeoPDMA can provide a proposal for other appropriate SOM support functions – Customer site reviews, corporate SOPs on SOM, etc.
- o  Follow-up walk through prior to DEA inspection.
- o  On-site during any DEA inspection.

*The following are reimbursable expenses:*
*Business expenses will include hotels, meals, rental car, airfare, mileage, parking, taxi, and postage etc.*

*Upon signing this Statement of Work, you will be invoiced an initial down payment of half of the project fee under "Initial Cost" and the remaining 50% of the "Initial Cost" when the implementation is completed. Upon system implementation ("Go live"), you will be invoiced in advance of each quarter for "Ongoing Processing" support. For "Full Model Retunements", you will be invoiced in full at the initiation of each retunement project. There is a 3% annual escalator for all ongoing services.*

**Invoices shall be sent to the address indicated on the Customer Service Agreement dated January 7, 2013.**

*Please check one of the following:*

√  Purchase order # PO90522.for  required (please attach copy)

    Please remit payment as noted below:

Mail Checks to:  
BuzzeoPDMA LLC  
P.O. Box 281414  
Atlanta, GA 30384-1414

Wire Transfer to:  
BuzzeoPDMA LLC  
c/o Bank of America  
ABA No. 0260-0959-3 (EFT)  
ABA No. 0212-0033-9 (ACH)  
Account No: 381026605690

_____Purchase order not required for payment

*Please answer the following question:*

Does your company allow for invoices to be received electronically? (Yes)  No
If the answer is "yes", to what e-mail address should the invoices be sent? hhernandez@qualitestrx.com
(BuzzeoPDMA understands that certain invoices have supporting documentation; therefore, these invoices will be mailed with the backup, in addition to the invoice being sent electronically.)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          PAR_OPIOID_MDL_0002016130

The undersigned have caused this Statement of Work No. 2 to be accepted as of the Signature Date below.

Vintage Pharmaceuticals
d/b/a Qualitest Pharmaceuticals

By: *Tracey Hernandez*
Name: Tracey Hernandez
Title: Director, CS Compliance
Date: 5-30-2013

BuzzeoPDMA LLC

By: *William Buzzeo*
Name: William E. Buzzeo
Title: Senior Vice President, Business Development
Date: 5/30/13

*[Stamp: REVIEWED BY LEGAL]*

# Qualitest® Pharmaceuticals

# Purchase Order

PO No.  P090522
Last Revised: 0/00/00
Created Date: 5/30/13

| Vendor Ship Location DEA #: | N/A | Qualitest DEA #: | N/A | |
|---|---|---|---|---|

| VENDOR | SHIP TO | BILL TO |
|---|---|---|
| Vendor# 702348   Entity# 124058<br>BuzzeoPDMA LLC<br>1025 BOULDERS PARKWAY SUITE 301<br>RICHMOND VA 23225<br>UNITED STATES | Qualitest Pharmaceuticals, Inc.<br>130 Vintage Drive<br>Huntsville AL 35811<br>UNITED STATES<br><br>Attn: TRACEY HERNANDEZ EXT 7178<br>256-799-7194 | Endo Finance Shared Service Center<br>Attn: Accounts Payable - Qualitest<br>9601 Amberglen Blvd., Suite 225<br>Austin TX 78729<br>UNITED STATES |

| BUYER | BRANCH/PLANT | SHIPPING TERMS | SHIP VIA |
|---|---|---|---|
| GAIL TIPPS | QUALITEST | | |

| | CONTACT | EMAIL | PHONE | FAX |
|---|---|---|---|---|
| VENDOR | PAUL E TOWNHEY | amy.goodman@cegedim.com | 6108254349 | |
| QT | GAIL TIPPS | gtipps@qualitestrx.com | 256-799-7183 | 256-859-4021 |

| Item # | Description | Qty Ordered | SHP UM | Unit Price | Extended Price | Dock Date |
|---|---|---|---|---|---|---|
| 1 | ITEM- ME-8888EA<br>INITIAL COST F/ DEVELOPMENT OF ALGORITHM<br>AND DEPLOYMENT OF SOM CLOUD | 1.000 | EA | 34,500.0000 | 34,500.00 | 5/30/13 |
| 2 | ITEM- ME-8888EA<br>ONGOING PROCESSING BILLED QUARTERLY | 4.000 | EA | 11,000.0000 | 44,000.00 | 5/30/13 |
| 3 | ITEM- ME-8888EA<br>FULL MODEL RETUNEMENT<br>PER SOW NO.2 | 1.000 | EA | 9,500.0000 | 9,500.00 | 5/30/13 |

| Terms | 45 DAYS AP | | Total Amount |
|---|---|---|---|
| | | | $88,000.00 |

If this order is subject to a written contract between the parties, the terms and conditions of that written contract take precedence.
For Purchase Order inquiries, please call the buyer listed above. All materials must conform to current QUALITEST specifications.
COA & packing slips must accompany the shipment. All trucks must arrange a dock appointment at least 48 hours in advance. All pallets used for shipment under this purchase order must be heat treated and/or in compliance with ISPM-15.

Purchasing Agent: *[signed] Paul Tipps*

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                          PAR_OPIOID_MDL_0002016132

## ** "PO NUMBER" must be referenced on all Invoices related to this PO.

## Invoices received without a PO Number will be returned. **

Terms and Conditions

1   By Supplier's Acknowledgement or initiation of performance, Supplier agrees to Qualitest's Order terms and conditions and any conflicting terms on Supplier's documents are expressly overridden by the attached.

2   All Invoices, packing lists, and correspondence regarding this Order must reference the Order Number.

ORDER TERMS AND CONDITIONS

1   Agreement.  This Purchase Order ("Order") constitutes an offer by Vintage Pharmaceuticals, LLC or Generics Bidco II, LLC d/b/a Qualitest Pharmaceuticals. ("Qualitest") to the supplier identified on the face of this Order ("Supplier") to purchase the goods, equipment or services identified in and covered by this Order (the "Deliverables") exclusively upon the terms and conditions set forth below, and shall become a binding agreement upon either Supplier's verbal, written or electronic acknowledgement or Supplier's initiation of performance.

2   Additional Terms and Conditions.  Any and all changes, counteroffers, or additional, different, or conflicting terms or conditions proposed by Supplier with regard to the Deliverables are hereby rejected and shall not be binding upon Qualitest.

3   Price and Taxes.  Supplier shall sell to Qualitest the Deliverables identified on the face of this Order at the specified prices.  Qualitest is responsible for all applicable sales, use, and similar taxes.  Qualitest shall include such taxes with payment or provide Supplier with a direct pay certificate or other exemption.  Any forecasts or estimates provided by Qualitest are provided as an accommodation to Supplier and shall not constitute a commitment of any type by Qualitest.  No changes or substitutions shall be permitted without written approval of Qualitest.  All other taxes are the responsibility of Supplier and no deductions for such taxes will be made from payments to Supplier.

4   Invoices.  An invoice must relate to this Order.  An invoice will minimally include: Order number, invoice number, invoice date, Qualitest and Supplier names and addresses, a detailed description of the Deliverables, material numbers, quantities, unit price, extended invoice totals, the Qualitest Order contact or recipient name, and the serial number of any serialized item.

5   Payment.  Unless otherwise stated on the face of this Order, payment shall be due forty-five (45) days after receipt of Supplier's valid invoice, or after receipt of the Deliverables, whichever is later. At all times, Qualitest shall be entitled to set-off any amount owing from Supplier to Qualitest against any amount due or owing to Supplier with respect to this Order.  Qualitest shall pay Supplier only for those Deliverables specified in this Order, and shall have no further liability to Supplier. Qualitest may agree to reimburse Supplier for certain expenses reasonably incurred in the performance of services provided advance written approval of such has been provided by Qualitest.  Reimbursed expenses will be reportable income on IRS form 1099.

6   Delivery.  The terms of delivery will be EXW (Incoterms 2010) Qualitest.  Risk of loss or damage will remain with Supplier until Supplier loads Deliverables onto the carrier's vehicle for shipment, at which time risk of loss or damage will transfer to Qualitest.  Qualitest will be responsible to designate the carrier for further shipment from the facility.  Risk of loss and transfer of title will stay with Supplier and will not pass to Qualitest until the carrier's receipt of the Deliverables.

7   Packaging and Labeling.  All goods shall be packaged in conformance with good commercial practice, specifications, government regulations and other applicable requirements.  A packing slip shall accompany each shipment and shall identify Qualitest's Purchase Order number, material number and description, and quantity shipped.  Each container must identify material number and description, and quantity contained therein. Qualitest's count will be accepted as conclusive on shipments not accompanied by a packing slip.

8   Intellectual Property.  Supplier hereby assigns, transfers and conveys to Qualitest, or its designee, all of Supplier's worldwide right, title and interest in and to any and all inventions, original works of authorship, findings, conclusions, data, discoveries, developments, concepts, improvements, trade secrets, techniques, processes and know-how, whether or not patentable or registrable under copyright or similar laws, which Supplier may solely or jointly create, conceive, develop, or reduce to practice, or cause to be conceived or developed or reduced to practice, in the performance of this Order or which result, to any extent, from use of Qualitest's property (collectively, the "Inventions"), including any and all intellectual property rights inherent in the Inventions and appurtenant thereto including, without limitation, all patent rights, copyrights, trademarks, know-how and trade secrets (collectively, "Intellectual Property Rights").  Supplier further acknowledges and agrees that all original works of authorship that are made by Supplier (solely or jointly with others) in the performance of this Order and that are protectable by copyright are to be owned by Qualitest, along with all copyrights therein.  Supplier hereby assigns, transfers and conveys to Qualitest all of its worldwide right, title and interest in and to such works, including all Intellectual Property Rights therein and appurtenant thereto.

Supplier shall execute and deliver any and all instruments and documents and take such other actions as may be necessary or desirable to document the assignment and transfer described in this Paragraph 8 above or to enable Qualitest to apply for, secure, prosecute and enforce its Intellectual Property Rights in any and all jurisdictions, or to obtain any extension, validation, reissue, continuance or renewal of any such Intellectual Property Rights.  Supplier further agrees that Supplier's obligation to execute or cause to be executed, when it is in Supplier's power to do so, any such instrument or papers shall continue after the termination or expiration of this Order.

9   Independent Contractor.  Supplier shall perform its obligations under this Order in the capacity of independent contractor.  The relationship between Qualitest and Supplier is strictly that of buyer and seller, and Supplier shall not at any time be considered to be or represent itself as an employee agent, representative, co-venturer or partner of Qualitest for any purpose. As an independent contractor, Supplier shall not participate in any employee benefits provided by Qualitest, including worker's compensation insurance, disability, pension or other employee plans.  Supplier shall be solely liable and responsible for the payment of any insurance premiums, salaries or benefit costs related to services performed under this Agreement.

10   Debarment.  Supplier represents and warrants that Supplier, the employees and agents are not now, nor ever been, debarred by the United States Food and Drug Administration and that Supplier, its employees and agents, have never been convicted of a felony under federal law for conduct relating to the development, approval, or other aspect of a drug product.

11   Warranty.  Supplier hereby represents and warrants that (a) it possesses the skills, expertise and resources required for it to perform all of it obligations hereunder in a reasonable and professional manner, consistent with industry standards; (b) all services will be performed in a reasonable and professional manner in conformity with all requirements of this Order; (c) all goods will be new, merchantable, of good workmanship and material, fit and sufficient for Qualitest's intended use, and free from defect; and (d) all Deliverables will conform to any  specifications, drawings, samples or other description furnished or adopted by Qualitest.  Such warranties shall survive any inspection, test, acceptance and payment.  This warranty shall apply to Qualitest, its successors, assigns, customers, and users of it products.

12   Legal Compliance.  Supplier warrantes that the Deliverables have been developed, manufactured, transported, sold and/or performed in compliance with all applicable federal, state, local and foreign laws, rules and regulations, and the Supplier's conduct in establishing this Order and performing its obligations hereunder has been consistent with ethical practices and without the influence of any association with an Qualitest employee, officer or director that would amount to a conflict of interest on their part.

Qualitest may be required to disclose certain payments made under this agreement pursuant to the Transparency Reports and Reporting of Physician Ownership interestes provisions of the Social Security Act (42 U.S.C. 1320-a7h) ("Physician Payment Sunshine Act") and any other applicable local, state and federal laws, rules, regulations and guidelines relating to the performance of this Agreement.

Supplier warrants that Supplier shall not make any payment, either directly or indirectly, of money or other assets, including but not limited to the compensation Supplier derives from this Agreement,or provide any gifts,entertainment or other thing of value(hereinafter)collectively referred as a"Payment") to governmenetor political party officials, employees of state=owned entities, specifically including employees of state-owned medical/clinical facilites, officials of  international organizations, candidatesfor public office, or representatives of other businesses or persons acting on behalf of any of the foregoing (collectively "Officials") or any other individual, where such Payment would consitute violation of any law, including, but not limited to the U.S. Foreign Corrupt Practices Act

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

PAR_OPIOID_MDL_0002016133

of 1977, 15 U.S.C. §§ 78dd-1, et seq. ("FCPA"). In addition, regardless of legality, Supplier shall make no Payment either directly or indirectly to Officials or any individual if such Payment is for the purpose of influencing decisions or actions with respect to the subject matter of this Agreement or any other aspect of Qualitest's business.

13  Inspection.  All Deliverables shall be subject to final inspection and acceptance by Qualitest at its facility without regard to prior payment or inspection at Supplier's facility. Retention of Deliverables by Qualitest for a reasonable period of time before inspection shall not constitute acceptance. Acceptance of any Deliverables shall not alter or affect the warranties stated above.

14  Non-Conformity.  If any Deliverables are found to be defective (whether patent or latent) in design, material or workmanship, or non-conforming to the specifications, warranties or other requirements of this Order or implied by law, Qualitest, in addition to any other rights which it may have, shall have the right to reject and return such Deliverables, at Supplier's expense, for credit, repair, refund or replacement, at Qualitest's option, and Qualitest may cancel this and any other Order for such Deliverables without cost.

15  Change or Cancellation.  Qualitest may change or cancel any portion or the whole of this Order at any time without charge or liability; except if cancelled, Qualitest shall pay for such Deliverables previously delivered and reimburse Supplier for its reasonable pass-through expenses incurred in performance of such Deliverables provided advance written approval of such expenses was obtained. Any advance payments or other funds held by Supplier that are unearned at the date of cancellation shall be returned to Qualitest within forty-five (45) days of cancellation. If a change reasonably justifies an adjustment in the Order price or in the time required for performance, as substantiated by appropriate Supplier documentation, an equitable adjustment in the Order price will be made.

16  Confidentiality.  Supplier agrees at all times during the performance of the terms of this Order and thereafter, to hold in strictest confidence, and not to use, except in connection with Supplier's performance under this Order, any Qualitest Confidential Information. Qualitest Confidential Information is the sole property of Qualitest. Supplier agrees not to disclose Qualitest Confidential Information to third parties without the prior written authorization of Qualitest, and except as necessary for the performance of the terms of this Order and under an agreement by the third party to be bound by obligations of confidentiality no less restrictive than this provision. Supplier shall safeguard Qualitest Confidential Information with the same standard of care used with Supplier's Confidential Information, but in any event no less than reasonable care. At any time upon the request of Qualitest, all tangible expressions of Qualitest Confidential Information in Supplier's possession shall be delivered to Qualitest, or destroyed, at Qualitest's option. As used herein, "Qualitest Confidential Information" means any proprietary or confidential information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers, software, developments, inventions, processes, formulas, technology, designs, drawings, marke plans, distribution and sales methods and systems, sales and profit figures, finances and other business information learned by Supplier in the course of its performance under this Order or disclosed to Supplier by Qualitest, either directly or indirectly in writing, orally or by drawings or inspection of documents or other tangible property.

17  Liens.  If any Deliverables are of such a nature that Supplier would be entitled to file a lien against Qualitest's real or personal property, Supplier shall provide a Release and Waiver of Lien and Release and Waivers of Liens for any subcontractors or materialmen in a form acceptable to Qualitest prior to final payment by Qualitest.

18  Work on Qualitest Property.  To the extent that Supplier's performance of this Agreement requires work on Qualitest's premises, Supplier shall do so in a manner that does not interfere with Qualitest's operations. Supplier shall keep all equipment, materials and operations to areas indicated by Qualitest, and Supplier shall not unnecessarily encumber the premises with material. By requiring compliance, Qualitest does not assume or undertake any duty or responsibility of Supplier to its employees or the employees of Supplier's subcontractors.

Qualitest shall have the right to control access to its property and to portions of its property with no accounting to the Supplier. Qualitest shall make the sole determination of which Supplier shall require an employee escort and which Supplier shall be granted a badge that allows access to certain pre-determined areas. Prior to receiving a badge, Supplier will be required to undergo a criminal background check and a drug screen and both must be passed, in the sole determination of Qualitest, prior to Supplier receiving a badge. Every employee of the Supplier will be required to complete and pass a criminal background check and a drug screen prior to receiving any access to Qualitest property and failure by any Supplier employee of the required criminal background check and/or drug screen will result in that individual from being barred entry to Qualitest property.

Further, Qualitest requires that all Supplier's end Supplier employees complete mandatory safety and CGMP compliance training prior to starting work on Qualitest property.

19  Accidents.  Supplier shall report to Qualitest all accidents resulting in personal injury or property damage arising out of or during its work on Qualitest's premises, and shall provide Qualitest with a copy of all reports made by Supplier regarding any such accidents. To the extent required by law, Supplier shall report all spills or releases of hazardous substances or other pollutants within the time period provided by applicable laws, rules or regulations and shall notify Endo as soon as possible of any such spill or release and provide Qualitest with copies of any reports filed with the appropriate agencies.

20  Release of Information.  Supplier shall not release any statement, advertisement, information or publicity referring to Qualitest without Qualitest's prior written approval.

21  Force Majeure.  Supplier shall not be responsible for the failure or delay in delivery of Deliverables where such failure or delay is due to causes beyond its reasonable control and without its fault or negligence, provided Supplier promptly notifies Qualitest of such failure or delay.

22  Limitation of Liability.  Qualitest will have no liability to Supplier or its employees or agents arising out of the use, operation or failure of any information, drawings, material, equipment, goods, apparatus, documents, or other property furnished to Supplier by Qualitest or produced by Supplier for Qualitest, except to the extent the liability arises from the negligence of Qualitest or its employees or agents. In no event shall Qualitest be liable for any loss of profits or other indirect, special, incidental, punitive, or consequential damages, even if advised of the possibility of such damages.

23  Insurance.  Supplier shall maintain adequate levels of insurance coverage, with a reputable and financially sound insurance carrier, to cover Supplier's obligations under this Order. Certificates evidencing coverage shall be furnished to Qualitest upon request.

24  Entire Agreement.  This Order and its specifications and attachments contain the entire agreement between the parties, and supersede any and all prior proposals and agreements, whether oral, or written, regarding the Deliverables.

25  Modification.  No change, modification or extension of the Order shall be effective unless in writing by an authorized representative of Qualitest.

26  Waiver.  Qualitest's failure to strictly enforce the provisions of this Order or to exercise any of its rights under this Order shall not constitute a waiver of any of its rights. The waiver of any breach of this Order shall not constitute a waiver of subsequent compliance with this or any other Order. No waiver shall be effective unless in writing

27  Assignment and Subcontracting.  Supplier shall not assign or subcontract this Order, nor any of its rights or obligations hereunder, without the prior written consent of Qualitest. Without such consent, any purported assignment is void and nonbinding upon Qualitest.

28  Severability.  If at any time any one or more of the provisions contained in this Order is or should become invalid, illegal or unenforceable in any respect under any law, rule, regulation, or ruling, the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

29  Governing Law.  This Order shall be governed by and interpreted in accordance with laws of the State of Alabama, USA without regard to its conflict of law principles. For avoidance doubt, the parties affirmatively agree to opt out of the UN Convention on Contracts for the International Sale of Goods ("CISG") and CISG shall in no way apply to or govern any portion of this Order.

QUALITEST PHARMACEUTICALS.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    PAR_OPIOID_MDL_0002016134