# EXHIBIT A

CONFIDENTIAL
Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

Expert Report of Matthew Perri III, BS Pharm, PhD, RPh

March 25, 2019

CONFIDENTIAL

Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

wholesale distributors and pharmacy providers. Therefore, wholesale distributors and

pharmacies are integral to the Defendants' marketing of opioids.

185.    The Defendants' marketing messages distributed by the wholesalers focused generally

on price, availability, and other features of interest to pharmacy and other buyers.[368] For

example, Actavis, in a joint marketing program with McKesson, engaged in an Online

and Phone Awareness Campaign for Oxymorphone described as:

> *"McKesson's team of dedicated generics specialists, GenericsConnect, will be
> contacting a targeted pool of 200 retail independent pharmacies with significant
> Opana ER brand sales beginning the week of September 26 [2011]. Each
> GenericsConnect Specialist has a regular series of ongoing conversations with
> the same customer base, and promotional awareness of Actavis' Oxymorphone
> is being incorporated into their outbound messaging during this campaign
> period."[369]*

---

[368] See Schedule 16: Co-Promotional Marketing with Distributor Defendants.
[369] Myers, D_Allergan Deposition Exhibit 21.

CONFIDENTIAL

Report of Matthew Perri III in Case no. 17-OP-45004 (N.D. Ohio) and Case No. 18-OP-45090 (N.D. Ohio)
Confidential and Subject to Protective Order

189.   Using these general themes, Defendants used a battery of specific marketing messages designed to increase product awareness and systematically remove existing barriers: effectively changing how Customers viewed opioids. Other experts evaluated the nature of these messages and provided the opinions that Defendants' marketing messages were false, misleading, inaccurate, or designed to misstate the risks and benefits of Defendants' drugs. Defendants also downplayed the negative aspects of their products and convinced prescribers, and others, to use opioids sooner in treating pain, at higher doses, and for a broader spectrum of pain types.

190.   Further, Defendants' marketing activities with influencers, KOLs, and professional/advocacy organizations gave their messages more credibility because Defendants hid their funding and influence from the medical community and the public. This created the perception that the information from these marketing efforts was unbiased and more scientific which mislead Customers about the impartiality of the messages.

191.   The marketing strategies and tactics Defendants used were effective at gaining market share and expanding the overall market for opioids. This led to a dramatic rise in utilization of opioids in the U.S.

192.   Defendants violated marketing standards by creating and disseminating false or misleading marketing messages that downplayed or minimized the risks associated with opioids, while emphasizing the benefits of their drugs, and by disguising their support of activities aimed at increasing sales of their own products.

**V.     SIGNATURE**

193.   I reserve the right to amend my opinions in this matter considering any new or additional information.

_____          March 25, 2019
Matthew Perri III BS Pharm, PhD, RPh       Date