# EXHIBIT 28



UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION

MDL NO. 2804

Track One

PRELIMINARY EXPERT REPORT AND DISCLOSURE OF

SONYA KWON

ANKURA CONSULTING

MAY 10, 2019

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER



## I. PROFESSIONAL BACKGROUND AND EXPERIENCE

1. I am a Senior Managing Director at Ankura Consulting Group ("Ankura"), a provider of litigation and disputes consulting services with over 1,400 professionals worldwide. I lead the Complex Data and Statistical Analysis practice and specialize in the application of financial, statistical, and complex data-intensive analyses to legal and regulatory issues. My education includes a B.A. in Economics from the University of California, Berkeley and an M.B.A. from the University of California, Los Angeles. In addition to Ankura, I have worked at Navigant Consulting, Inc., Deloitte & Touche LLP, PricewaterhouseCoopers LLP, and Arthur Andersen LLP. At all of these firms, I developed and implemented national complex data analysis programs and courses.

2. My qualifications are summarized in greater detail in my curriculum vitae, which is attached as Appendix A. Over the past twenty years, I have been involved in a number of complex litigation matters involving a range of issues, including data collection, conversion, management and statistical, economic or data-intensive analysis. I have worked on numerous litigation matters, requiring the collection and analysis of large volumes of data (including shipment, distribution, and retail data). I also have experience in preparing or providing expert testimony for financial, economic, statistical and data-intensive related analyses.

## II. GENERAL BACKGROUND AND SCOPE OF ASSIGNMENT

3. This matter relates to claims made by the County of Cuyahoga and County of Summit, Ohio against various manufacturers and distributors, including CVS Indiana, L.L.C. and CVS Rx Services, Inc. ("CVS").[1] These CVS entities operate two distribution centers which ship prescription drugs to CVS retail pharmacies ("CVS pharmacies") so that the pharmacies have inventory to fill prescriptions for patients. These CVS distribution entities are identified in the Complaints as Distributor Defendants.[2]

4. Plaintiffs allege that "various entities in the supply chain failed to design and operate systems to identify suspicious orders of prescription opioids, maintain effective controls against diversion, and halt suspicious orders when they were identified, thereby contributing to the oversupply of such

---

[1] Second Amended Corrected Complaint, *County of Cuyahoga v. Purdue Pharma L.P.*, No, 17-OP-45004 (May 30, 2018), ECF No. 522; Third Amended Complaint, *County of Summit. v. Purdue Pharma L.P.*, No. 18-OP-45090 (Apr. 25, 2018 N.D. Ohio), ECF No. 1466 (together "Summit and Cuyahoga Complaints.")

[2] Plaintiffs initially sued CVS Health Corporation, but the Court granted Plaintiffs' unopposed motion to dismiss CVS Health from the Track One cases without prejudice and to add CVS Indiana, LLC and CVS Rx Services, Inc. as Defendants. *Unopposed Motion to Dismiss Party CVS Health Corporation and add CVS Indiana, LLC and CVS RX Services, Inc.*, In re: National Prescription Opiate Litigation, 17-md-2804 (June 19, 2019 N.D. Ohio), ECF No. 637& June 20, 2018 text order granting motion.



drugs and fueling an illegal secondary market."[3]

5. Plaintiffs further allege that actions by Distributor Defendants, including CVS, are a "substantial cause for the volume of prescription opioids plaguing Plaintiff's community."[4]

6. I have been retained by Zuckerman Spaeder LLP ("Counsel"), on behalf of CVS, to review the data relevant to the claims in this matter and to prepare certain analyses to assist the trier of fact in evaluating the distribution of certain prescription opioids into Cuyahoga and Summit Counties by CVS distribution centers.

7. The hourly rate currently charged by Ankura for my services in connection with this matter is $750/hour and the hourly rates for other Ankura professionals assisting me range from $280/hour to $600/hour. Ankura's compensation does not depend on either the findings of my review or the outcome of this case.

8. I have prepared this report based on the work my team and I have performed to date and the information available to me as of the date of this report. I understand that I may be asked to testify regarding my opinions contained herein. Due to the ongoing nature of this litigation, I reserve the right to change, amend, modify or supplement my opinions based on any additional information that I may be asked to consider or any additional analyses that I may be asked to perform.

### III. INFORMATION RELIED UPON

9. In preparing this report, I reviewed the following data produced in this matter.

   a. <u>CVS Distribution Data</u>: Shipment information of controlled and non-controlled items from CVS to CVS pharmacies in Cuyahoga and Summit Counties[5] for 07/29/2002 to 08/25/2018 from CVS's mainframe system. The distribution data consists of pharmacy items including controlled and non-controlled drugs and does not include over-the-counter medication shipped to CVS stores for sale from the front of the store (i.e., not from the store pharmacy).[6] This information includes the CVS store number to which the order was shipped,[7] the date on which financial responsibility for the order transferred from CVS to the

---

[3] Summit and Cuyahoga Complaints, paragraph 9.
[4] Summit and Cuyahoga Complaints, paragraph 81.
[5] CVS Indiana, L.L.C.'s and CVS RX Services, Inc.'s Amended Objections and Responses to Interrogatories No. 1-6, 8-10, 13, 15-18, 20-21 and 30 of Plaintiffs' First Set of Interrogatories, September 10, 2018, p.5.
[6] John Andrade, Senior Manager, Application Development, IS – Retail Systems - Logistics
[7] Customer Number contains the seven-digit number that is used to identify CVS stores that received the shipment. If the first two numbers in Customer Number field are zeros, then the CVS Store number is the last five digits of that number. When the first two numbers are "04," then the CVS Store number begins at the third digit and ends at the sixth digit.



d. The ARCOS data shows that CVS distributed less than 2.5% of relevant opioids into Cuyahoga and Summit counties between 2006 and 2014 and distributed an estimated 1.6% of total relevant opioids into Cuyahoga and Summit counties between 2006 and 2018.

e. Between 2006 and 2013, CVS shipments of HCPs increased at a slower rate than the annual DEA quota for hydrocodone.

f. Between 2006 and 2014, non-controlled substances represent approximately 90% of dosage units shipped to CVS pharmacies in Cuyahoga and Summit counties by CVS distribution centers.

g. Between 2006 and 2014, HCPs represented less than 2.5% of total dosage units shipped to CVS pharmacies in Cuyahoga and Summit counties by CVS distribution centers.

h. Between 2006 and 2014, controlled substances represent less than 13.5% of total dosage units shipped to CVS pharmacies in Cuyahoga and Summit counties by CVS and Cardinal Health.

i. Between 2006 and 2014, HCPs represent less than 3.1% of total dosage units shipped to CVS pharmacies in Cuyahoga and Summit counties by CVS and Cardinal Health.

j. Between 2006 and 2014, CVS pharmacies in Cuyahoga and Summit counties ordered a small percentage of HCPs from Cardinal Health.

### VII. CVS DISTRIBUTED ONLY TO CVS PHARMACIES

18. The CVS distribution centers at issue in this case distributed prescription drugs only to CVS pharmacies. CVS's corporate representative testified that these CVS distribution centers "have only distributed controlled substances to CVS pharmacies."[21] CVS discovery responses likewise indicate that CVS's distribution centers "did not distribute hydrocodone combination products [the only relevant prescription opioid shipped by CVS] to any pharmacies in Cuyahoga and Summit Counties other than the CVS CT1 pharmacies."[22]

19. To confirm this testimony, I analyzed the CVS distribution data to evaluate the recipients of shipments from CVS in Cuyahoga and Summit Counties. I reviewed the store numbers receiving shipments from CVS Distributors and found that all shipments from CVS were shipped to CVS pharmacies. A listing of these 85 stores is included in Exhibit 2A.[23] The total number of shipments to these stores is shown in Table 1, below.

---

[21] Deposition of Mark Vernazza, November 20, 2018, p. 56, line 10.
[22] CVS Indiana, L.L.C.'s and CVS RX Services, Inc.'s Amended Objections and Responses to Interrogatories No. 1-6, 8-10, 13, 15-18, 20-21 and 30 of Plaintiffs' First Set of Interrogatories, September 10, 2018, p .8.
[23] There are 69 CVS stores in the distribution data with shipments between 1/1/2006 and 9/30/2014.

Case: 1:17-md-02804-DAP  Doc #: 3139-6  Filed: 01/31/20  6 of 7.  PageID #: 486271



**Table 1: Total Shipments to CVS Pharmacies in Cuyahoga and Summit Counties from CVS Distribution Centers (CVS Distribution Data)**

| Year | Total # of Shipments to CVS Pharmacies | # of Shipments Controlled Substances to CVS Pharmacies | Total # of Shipments by CVS Distribution Centers to Non-CVS Stores |
|---|---|---|---|
| 2002 | 471,399 | 23,093 | 0 |
| 2003 | 1,074,542 | 54,967 | 0 |
| 2004 | 1,105,264 | 52,906 | 0 |
| 2005 | 1,239,570 | 60,822 | 0 |
| 2006 | 1,242,175 | 66,904 | 0 |
| 2007 | 1,241,097 | 68,079 | 0 |
| 2008 | 1,243,839 | 71,772 | 0 |
| 2009 | 1,144,654 | 66,413 | 0 |
| 2010 | 1,091,329 | 63,355 | 0 |
| 2011 | 1,055,579 | 60,999 | 0 |
| 2012 | 1,068,846 | 62,191 | 0 |
| 2013 | 1,098,039 | 64,009 | 0 |
| 2014 | 1,113,103 | 54,776 | 0 |
| 2015 | 1,114,552 | 45,758 | 0 |
| 2016 | 1,105,448 | 47,328 | 0 |
| 2017 | 1,165,695 | 49,814 | 0 |
| 2018 | 809,627 | 34,566 | 0 |
| **Total:** | **18,384,758** | **947,752** | **0** |

20. I also analyzed the ARCOS data, filtered as described above in Section III, to evaluate the buyers of CVS shipments into Cuyahoga and Summit Counties. I found all shipments reported in the ARCOS data by CVS distribution centers were shipped to CVS pharmacies. A listing of these 69 stores is included in Exhibit 2A.

**Table 2: Total Shipments from CVS Reporters into Cuyahoga and Summit Counties (ARCOS Data)**

| Year | # of Shipments to CVS Pharmacies | # of Shipments to non-CVS Buyers |
|---|---|---|
| 2006 | 15,069 | 0 |
| 2007 | 17,289 | 0 |
| 2008 | 17,896 | 0 |
| 2009 | 16,447 | 0 |
| 2010 | 16,551 | 0 |
| 2011 | 16,771 | 0 |

Highly Confidential – Subject to Protective Order



| | | |
|---|---|---|
| 2012 | 17,142 | 0 |
| 2013 | 18,805 | 0 |
| 2014 | 11,469 | 0 |
| **Total** | **147,439** | **0** |

## VIII. CVS NEVER DISTRIBUTED SCHEDULE II OPIOIDS, SUCH AS OXYCODONE, INTO CUYAHOGA AND SUMMIT COUNTIES

21. The DEA categorizes "drugs, substances, and certain chemical used to make drugs" into various schedules based, in part, on the potential for abusing the drug.[24] The Court has limited discovery in this case to "opioid products that are or ever were classified as Schedule II under the Controlled Substances Act."[25] The DEA defines Schedule II drugs as "drugs with a high potential for abuse, with use potentially leading to severe psychological or physical dependence."[26] Prescription opioids such as oxycodone and fentanyl are, and always have been, Schedule II controlled substances.

22. CVS's corporate representative testified that the CVS distribution centers at issue "are now, and have always been, only distributors of Schedule III through V controlled substances, and have never been distributors of Schedule II controlled substances."[27] Thomas Moffatt, Vice President, Assistant Secretary and Assistant General Counsel of CVS Health, who has worked at CVS for over 20 years, also testified that to his knowledge, CVS has never distributed a Schedule II drug.[28] Additionally, Mark Nicastro, Director of the Indianapolis CVS Distribution Center, testified in his deposition that CVS distribution centers "do not carry C-II's."[29]

23. Thomas Moffatt also testified that CVS's DEA registrations "are for Schedules III through V;"[30] and Ronald Link, former Senior VP of Logistics for CVS Pharmacy, and John Mortelliti, Director of Asset Protection Supply Chain for CVS Health, confirmed that Schedule II drugs shipped to CVS pharmacies were supplied from outside vendors.[31]

24. I confirmed this testimony by reviewing the shipments reported in the ARCOS data. As part of my analysis, I used the ARCOS data to evaluate the distributor information for prescription medication classified as Schedule II controlled substances by the DEA. ARCOS Data shows that after filtering the

---

[24] "Drugs, substances, and certain chemicals used to make drugs are classified into (5) distinct categories or schedules depending upon the drug's acceptable medical use and the drug's abuse or dependency potential. The abuse rate is a determinate factor in the scheduling of the drug." https://www.dea.gov/drug-scheduling.
[25] Discovery Ruling No. 2, Doc. No. 693 (June 30, 2018), p. 3.
[26] https://www.dea.gov/drug-scheduling.
[27] Deposition of Mark Vernazza, November 20, 2018, p. 56, line 5.
[28] Deposition of Thomas Moffatt, January 15, 2019, p. 37, line 24 - p. 38, line 2.
[29] Deposition of Mark Nicastro, December 6, 2018, p. 37, line 5.
[30] Deposition of Thomas Moffat, January 15, 2019, p. 39, line 4.
[31] Deposition of Ronald Link, December 11, 2018, p. 26, line 9 and p. 35, line 18; Deposition of John Mortelliti, January 23, 2019, p. 209, line 23.