IN THE UNITED STATES DISTRICT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track One Cases | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**PLAINTIFFS' RESPONSE TO TRACK 1B RETAIL PHARMACY
DEFENDANTS' OBJECTION TO DISCOVERY RULING
REGARDING PHARMACY DATA PRODUCTION (DKT. 3106)**

**INTRODUCTION**

After the submission of position papers, three teleconferences, and one discovery conference, Special Master Cohen issued the following discovery rulings:

- In addition to producing the 34 fields of transactional dispensing data for the relevant opioid drugs, Defendants shall produce data for (i) the 14 benzodiazepines, and (ii) the 4 muscle relaxers, that are listed by Plaintiffs in Exhibit B. Defendants need not produce transactional dispensing data for the 11 sleep aid medications requested by Plaintiffs. To quote again the Ohio Board of Pharmacy, the most glaring "Red Flag" prescription combinations involve "mixing an opiate with a benzodiazepine and a muscle relaxant." … The materials submitted to the Special Master do not support inclusion of sleep aid combinations in the "Red Flag cocktail menu."

- Each Defendant may choose to simply produce all of its data for benzodiazepine and muscle relaxer prescriptions, without limitation; or instead produce only data for such prescriptions where it dispensed a benzodiazepine or muscle relaxer to a patient and also dispensed an opioid to the same patient within 14 days (before or after).

(Dkt. 3106 at 5-6).

The Pharmacy Defendants have objected to the ruling. (Dkt. 3149). The Pharmacy Defendants object to producing nationwide transaction level pharmacy dispensing data related to 14 benzodiazepines and 4 muscle relaxers known to be part of drug cocktails that should have

raised "red flags" to the pharmacy.  Instead, Pharmacy Defendants propose that their obligation be limited to providing Plaintiffs with prescription data for only one benzodiazepine (alprazolam) and one muscle relaxant (carisoporodol) to the same patient on the same day, at the same pharmacy and prescribed by the same prescriber.[1]  (Dkt. 3149 at p. 5).  Pharmacy Defendants also object to both the timing of the disclosures and the requirement that the fields include the customer's birth year.

The rulings of the Special Master were correct. The rulings should be adopted in their entirety.

## PROCEDURAL HISTORY

It has been two months since this Court ordered the Pharmacy Defendants to produce transactional dispensing data. (Dkt. 2976). Multiple meet and confer conferences have occurred relating to this Court's 12/10/19 Discovery Order but very limited data has been produced. On January 3, 2020, counsel for Plaintiffs emailed Pharmacy Defendants (and copied Special Master Cohen) a Status Report regarding outstanding discovery requests which included a list of data fields and list of cocktail drugs necessary to run a "red flag" analysis.[2]

On January 10, 2020, Special Master Cohen conducted a discovery teleconference and directed: "the data has to start flowing, as the court said, first in the two counties and then Ohio and etcetera, etcetera. And that in --- that involves identification of fields…" *See* Transcript of 1/10/2020 Discovery Conference, 30:13-17 (attached as Exhibit 1).

---

[1] Alprazolam the active ingredient in the benzodiazepine commonly known as Xanax. Carisoprodol is the active ingredient in the muscle relaxer commonly known as Soma.

[2] *See* January 3, 2020 email of Peter H. Weinberger, attached as Ex. 2.

On January 13, 2020, counsel for Plaintiffs again emailed Pharmacy Defendants (copying Special Master Cohen) and advised that the Defendants had "failed to respond in any substantive way to my email of January 3, 2020."[3] Counsel reiterated Special Master Cohen's clarification on January 10th that the Defendants could not delay in responding to discovery requests, initial disclosures and deposition requests.

The discussion regarding the requested data fields and cocktail drugs continued at the January 14, 2020, teleconference. Special Master Cohen noted that "the judge has already ruled what the plaintiffs are going to get, and it's pretty much everything."[4] Special Master Cohen determined that the best way to resolve the issue was to get together and go through the list in person "and I'm going to enter an order, and then you're going to go do it." *Id*. at 32:15-20.

On January 17, 2020, Pharmacy Defendants filed a Petition for Writ of Mandamus with the Sixth Circuit, which included a request that Judge Polster's December 10, 2019 Order be modified "to limit the scope of discovery implicating the healthcare privacy interests of tens of millions of Americans." Simultaneously, Pharmacy Defendants filed an Expedited Motion to Stay Certain Discovery Until Final Resolution of Their Mandamus Petition (Dkt. 3084), which this Court denied on January 21, 2020 (Dkt. 3089).[5] In denying the Motion to Stay, this Court found,

> Specifically, all of the transactional dispensing data that this Court ordered the Pharmacy Defendants to produce is clearly relevant and necessary to the "red flag" analysis that the Track One-B Plaintiffs and their experts must undertake to assess whether the Pharmacy Defendants ignored indications within their own data that opioid prescriptions they were filling were suspicious. … and, as this Court has repeatedly noted, Track One Plaintiffs are entitled to investigate how a defendant's ***national*** policies and procedures played out both locally and nationally, as information the defendant gleaned elsewhere informed it (or should have) regarding

---

[3] *See* January 13, 2020 email of Peter H. Weinberger, attached as Ex. 3.

[4] *See* 1/14/2020 Transcript Hearing at 17:10-12, attached as Ex. 4.

[5] Noting, "So the Defendants carry little sway when asking this Court to stay a simple discovery order pending appellate application for 'a drastic remedy, to be invoked only in extraordinary situations[.]'" Dkt. 3089 at 2.

3

what was occurring in the Track One jurisdictions. *See, e.g.*, *Discovery Ruling No. 3* (docket no. 762) (ruling the scope of certain types of discovery would be national and other types would be regional).[6]

On January 22, 2020, a Discovery Conference was held regarding the fields of data to be produced wherein the parties went through the individual fields in dispute. On January 23, 2020, a teleconference was held regarding the scope and manner of production.  These conferences, which were on the record, were memorialized by Special Master Cohen in now-challenged January 27, 2020, Discovery Ruling Regarding Pharmacy Data Production.  (Dkt. 3106).

## ARGUMENT

The Special Master's January 27, 2020 Ruling was a discovery ruling, thus, the standard of review is "abuse of discretion." *See* ECF No. 69 (Appointment Order) at 5. The Sixth Circuit has described an abuse of discretion to mean a ruling that is "arbitrary, unjustifiable, or clearly unreasonable." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014); *see also Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640 (6th Cir. 2018) (abuse of discretion involves erroneous findings of fact, improper application of fact, use of an erroneous legal standard).

The Pharmacy Defendants have continued to make unfounded claims that the disclosure of data is burdensome, oppressive and disproportionate to the needs of this case. The party claiming undue burden must come forth with evidence of that burden:

> Importantly, Defendants do not support this contention with any evidence. They do not estimate the time needed or cost to perform this manual review and do not even explain how many files they would need to review.

*Burris v. Dodds*, No. 2:19-CV-815, 2019 WL 6251340, at *5 (S.D. Ohio Nov. 22, 2019).  Thus,

> A responding party "must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Kafele v. Javitch, Block, Eisen & Rathbone,* No. 03–638, 2005 WL 5095186, *2 n. 8 (S.D.Ohio April 20, 2005) (quoting *411 *Oleson v. Kmart Corp.,* 175 F.R.D. 560, 565

---

[6] Dkt. 3089 at 4-5.

4

> (D.Kan.1997)); *see* Fed.R.Civ.P. 37(a)(4). "The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *Id.* As Baxter has not substantiated its claim that the requests are unduly burdensome, this objection may be deemed waived. *Id.;* Fed.R.Civ.P. 37(a)(4).

*In re Heparin Prod. Liab. Litig.*, 273 F.R.D. 399, 410-11 (N.D. Ohio 2011).  For the reasons noted below, the Defendants' objections (both before Special Master Cohen and in the objection here) utterly fail to meet this test.

The Special Master's Rulings were based on an ample record from all parties, provide for discovery that is both relevant and proportional to this case, and reflect a reasoned exercise of discretion.

### A. SPECIAL MASTER COHEN DID NOT ABUSE HIS DISCRETION IN DEFINING "COCKTAIL" PRESCRIPTIONS.

This Court should reject the Pharmacy Defendants request to modify the Special Master's rulings so that they are required to produce data for only the drugs commonly identified as a "Trinity" that were prescribed on the same day to the same patient and filled at the same pharmacy. Special Master Cohen's ruling was a compromise between the parties' positions.  The production of dispending data for the 18 non-opioid drugs prescribed within a 28-day time period of the prescription of an opioid is supported by the record as being relevant and proportional to the needs of the case.

Contrary to Defendants' arguments, red flag prescriptions are not limited to the specific-three drug combinations listed by Defendants, written by the same prescriber,  and filled on the same day at the same store.  If a red flag is present when a patient obtains three same-***day*** prescriptions for Oxycontin (opioid), Soma (carisoprodol), and Xanax (benzodiazepine), then a red flag is equally present when a patient obtains three same-***week*** prescriptions for Oxymorphone (different opioid), Soma (carisoprodol), and Valium (different benzodiazepine). Plaintiffs should

5

be allowed to discover *all* dispensing data for prescriptions for 14 types of benzodiazepines and 4 muscle relaxants, because patients receiving any combination of these categories of drugs (including only just two-drug combinations) are often also drug-seeking; therefore these prescriptions are all necessary for a full red flag analysis.  Special Master Cohen rejected Plaintiffs' original request and refused to require production of dispensing data for 11 sleep aids. (Dkt. 3106 at 6).

Authority from as far back as 1994 demonstrates that "red flags" of diversion may include various combination, or "cocktails," of either two[7], three[8], or four[9] different drugs, which may be prescribed *or* presented for filling within "12 plus" days[10] and as many as 45 days apart from each other.[11]  The Plaintiffs provided the Special Master with a spreadsheet of over fifty citations supporting their position.[12]

---

[7] *See* Ex. 5 at 1-2, regarding 2-drug combinations (citing *United States v. Veal*, 23 F.3d 985, 987 (6th Cir. 1994); *Holiday CVS , L.L.C., d/b/a CVS/Pharmacy Nos. 219 & 5195 Decision and Order*, 77 Fed. Reg. 62, 316 n. 102 (DEA Oct. 12, 2012); and 2012 Orders to Show Cause issued to Walgreens, WAGMDL00387708).

[8] *See* Ex. 5 at 2-3, regarding 3-drug combinations (citing Walmart's policy, POM 1311 Practice Compliance Corresponding Responsibility – Proper Prescriber Patient Relationship WMT_MDL_000042987).

[9] *See* Ex. 5 at 3, regarding 3-drug, 4-drug and multiple drug combinations (citing *East Main Street Pharmacy, DEA Affirmance of Suspension Order*, Fed. Reg. Vol. 75, No. 207, at 66158 (2010); Rite_Aid_OMDL_0044351.

[10] *See* Ex. 5 at 4 (citing Walgreens's internal documents relating to "12 days plus" red flags: WAGMDL00054502 at 54512; WAGMDL00674922 at speaker notes to slide 21; and WAGMDL00256710 at speaker notes to slide 11).

[11] The DEA has pointed out that the drug purchase window for suspicious drug combinations may be as long as 45 days. Ex. 5, at 3-4 (citing CVS-MDLT1-000078009).

[12] *See* Ex 6, Chart of Cocktail Sources.  The source data for Plaintiffs' chart was also provided via an online link which can be reviewed here.   *See* https://www.dropbox.com/sh/t23ueejafo0z0jp/AACa42SqOeoPFjUqKHYYTMWEa?dl=0

Special Master Cohen noted that Defendants' own documents contradicted their attempted limits on production.[13] The challenged discovery ruling specifically relied on DEA administrative decisions in actions involving the Defendants in which the arguments Defendants advance here were specifically rejected.[14] Finally, Special Master Cohen specifically rejected the argument advanced in the objection that the Ohio Board of Pharmacy was only concerned with the one or two specific three-drug cocktails filled the same day from prescriptions written by the same prescriber:

> Notably, Defendants' Position Paper cites a video produced by the Ohio Board of Pharmacy to support their argument that "Red Flags" are raised ***only*** by the ***two*** combinations of: (1) alprazolam, (2) carisoprodol, and (3)(a) hydrocodone or (b) oxycodone. In fact, however, the Board's video, "Red Flags of Prescription Drug Diversion, states: Drug addicts will often combine prescription medicines to intensify the effect. This is referred to as a "drug cocktail," and *involves mixing an opiate with a benzodiazepine and a muscle relaxant. See* https://www.youtube.com/watch?v=WY212JE3Hqs at 5:55-6:00 (emphasis added). The video goes on to note that addicts use street names to refer to certain cocktails, such as "Trio" or "Trinity" for hydrocodone-alprazolam-carisoprodol, and "Holy Trinity" for oxycodone-alprazolam-carisoprodol. *Id.* at 6:00-6:20. But the video clearly states that the "Trinity" and "Holy Trinity" combinations are not the only "Red Flags." Further, the same video shows that limiting data to prescriptions from the same prescriber or filled on the same day is inappropriate. *Id.* at 7:22-7:52 (showing that multiple prescribers can be a "Red Flag" for doctor shopping, and that addicts present prescriptions for cocktail drugs over several days).

---

[13] *See*, *e.g.* Dkt. 3106 at 5 (citing "Walgreens Pharmacist GFD [Good Faith Dispensing] Review Coaching Opportunities" PowerPoint Presentation at 13 (2013) (areas of concern include "Cocktails identified as an Opiate **or** Hydrocodone, Benzodiazepine and Carisoprodol, where the Benzodiazepine and Carisoprodol (**or** Gabepentin) **were both dispensed within 12 days plus of the Opiate dispensing date**.") (emphasis added).").

[14] *See*, *e.g.* Dkt 3106 at 5 (citing "*Holiday CVS, L.L.C., d/b/a CVS/Pharmacy Nos. 219 & 5195 Decision and Order*, 77 Fed. Reg. 62, 316 n. 102 (DEA Oct. 12, 2012) ('The Respondents contend that the [two-drug] oxycodone-alprazolam combination was not a red flag in 2010, when most of the allegedly wrongful dispensing occurred. *** Contrary to this contention, [Diversion Investigator] Langston testified that the combination of oxycodone and Xanax (the brand name for alprazolam) was a red flag of diversion for at least '[a] couple of years ago.')").

Before issuing his ruling, the Special Master reviewed all of the materials submitted by the parties and considered carefully the extent to which the discovery Plaintiffs seek is proportional to the needs of the case, including patient privacy interests. The Special Master was correct in rejecting Pharmacy Defendant's strict definition of an opioid "cocktail" as a three-drug combination of oxycodone or hydrocodone + alprazolam + carisoprodol. As set forth above, the Plaintiffs provided ample authority, including a document from Defendants, which identified a two-drug cocktail as a "red flag."

The Special Master correctly observed during the January 14th teleconference, "same day is probably too restrictive. If I'm –if I'm into that cocktail, I'm happy to get one of them on Monday, one of them on Tuesday, and one of them on Wednesday. It's the same patient that's more of the issue." *See* Ex. 4 at 42. At the January 23rd teleconference, the Special Master indicated that while he had not yet decided on a time period he was likely to rule that any of the drugs obtained within a week or 10 days of each other would need to be produced.[15] He recognized that someone seeking these drug cocktails would be more inventive than just going to the same pharmacy on the same day.[16]

It is irrelevant there is no blanket prohibition on these combinations. (Dkt. 3149 at 8-9). Nor is it determinative that it "is up to each DEA-registered practitioner to treat a patient according to his or her professional medical judgment." *Id.* at 8. Defendants had duties to monitor for the red flags and not fill these prescriptions that were likely to be diverted without clearing these red flags.[17] Finally, that one or more combinations may have been reported as most commonly abused,

---

[15] *See* Exhibit 7, Audio recording of 1/23/2020 Transcript at 10:10 – 21:10, can be heard at https://bit.ly/3bAZZN8.

[16] *See* Ex. 7 at 12:00 - 12:20.

[17] *See* Ex. 5 and Ex. 6.

8

does not render irrelevant other combinations that should have triggered red flags. The discovery ordered by Special Master Cohen is relevant to determine to what extent Defendants failed to meet these duties.

Special Master Cohen "considered carefully the extent to which the discovery Plaintiff seek is proportional to the needs of the case, including patient privacy interests."[18] The opioid epidemic is a national crisis, as reflected by the breadth of the Opioid MDL. The national impact is similarly severe. The discovery ordered by the Special Master was appropriate given the enormity of this litigation and the underlying crisis that gave rise to the litigation. Requiring the national retail pharmacies to produce dispensing data relating to drugs that are part of a drug cocktail which is a known "red flag" of abuse is both necessary and proportional.

Finally, to the extent that Defendants are arguing that this discovery is unduly burdensome, the objection fails because the Defendants have not "show[n] specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *In re Heparin Prod. Liab. Litig.*, 273 F.R.D. at 410. As such, Defendants' unsubstantiated claim that the requests are unduly burdensome should be deemed waived. *Id.* at 411.

The Special Master's decision was not arbitrary, unjustifiable, or clearly unreasonable. On the contrary, the Special Master's decision to deny disclosure of transactional data regarding sleep aids demonstrated a clear weighing of the arguments, materials and proportional needs of the parties. The discovery ordered by the Special Master was appropriate given the enormity of this litigation and the underlying crisis that gave rise to the litigation.

---

[18] Dkt. 3106 at 5.

9

### B. THE PHARMACY DEFENDANTS CANNOT CLAIM THAT SEARCHING FOR THE SPECIFIED COCKTAIL DRUGS WITHIN A FOURTEEN DAY WINDOW OF AN OPIOID PRESCRIPTION IS UNDULY BURDENSOME AS THE DISCOVERY RULING GAVE THEM THE OPTION OF PRODUCING THE DISPENSING DATA FOR THE TWO DRUGS FOR ALL PRESCRIPTIONS AND ALLOWING THE PLAINTIFFS TO PERFORM THE SEARCHES.

During the January 23, 2020, discovery teleconference, the Special Master presented the Pharmacy Defendants with a choice as to production. The Pharmacy Defendants had the choice of either searching their records to identify the prescriptions dispensed within the specified time frame or they could shift the burden to the Plaintiffs by producing the dispensing data for the 18 drugs and let the Plaintiffs perform the analysis.[19]

Ultimately, the Special Master's Ruling gave each Defendant two choices regarding the manner of production of data:

> First, it may simply produce data for *all* of its prescriptions for the listed benzodiazepines and muscle relaxers, and let Plaintiffs figure out which were given to patients who also received recent prescriptions for opioids. Second, a Defendant may instead filter its data and produce only its prescriptions for the listed benzodiazepines and muscle relaxers that it dispenses to a patient who *also* received from it a prescription for opioids within a 14-day plus-or-minus window. This gives each Pharmacy Defendant options to tailor, in part, its own discovery burden. That said, the deadlines discussed below may limit a Defendant's choice, if applying the data filter causes data production to take longer.
>
> The Special Master adds that giving Defendants the option of a more complicated filter, such as producing non-opioid prescriptions only when the patient received *both* a benzodiazepine *and* a muscle relaxer within a 14-day plus-or-minus window of an opioid prescription, is not warranted and possibly unworkable. Last, as stated earlier, all prescription data shall date back to 2006. *See* docket no. 3055. (emphasis in original).[20]

---

[19] *See* Ex. 7 at 17:30-19:12.

[20] Dkt. 3106 at 6, n. 8. During the hearing, Special Master Cohen specifically noted that it was not acceptable for the Defendants to accept the burden of searching and use the search as an excuse to delay production. Audio Recording of 1/23/2020 teleconference at 17:30-19:12.

The Pharmacy Defendants' concerns about the burden and impracticality of what it claims is a "logistical nightmare, requiring complex algorithms to implement" are belied by the Special Master specifically giving each Defendant the option of shifting the burden of implementation to the Plaintiffs by producing all of its prescriptions for the listed benzodiazepines and muscle relaxers, and letting Plaintiffs figure out which were given to patients who also received recent prescriptions for opioids. Given that Plaintiffs stand willing to perform the searches, Defendants should not be able to claim a task they are voluntarily assuming is an undue burden.

### C. THE TIME LIMITS IMPOSED BY THE SPECIAL MASTER'S RULING ARE NOT AN ABUSE OF DISCRETION

The Defendants previously demanded the Plaintiffs reduce the data fields originally requested based on burden and relevancy which necessitated a discovery conference to address each individual field. Plaintiffs ultimately withdrew numerous requests for data fields but did so only if the data in the omitted fields would not be used by the Defendants or their experts.[21]

The Ruling permitted the Defendants 14 days from Plaintiffs' red flag identification, to produce, "for all earlier-supplied prescriptions, any additional data fields upon which they or their experts intend to rely in defending against Plaintiffs' claims." (Dkt. 3106 at 7). Defendants agreed to this procedure.[22] Defendants now claim this period is too short. Instead, they seek an order striking the 14-day deadline and argue that the deadline should be re-evaluated only after plaintiffs serve their identification of red flag prescriptions.

Defendants now speculate that it could be a lengthy, complicated process for them to identify what additional fields they would need.[23] They provide no support for their argument that

---

[21] See January 20, 2020 Discovery Conference at 110:7-19, attached hereto as Ex. 8.

[22] *Id.* at 140: 24-141:7 (Mr. Delinsky, agreeing on the need to set a date now and then noting "I want to emphasize that it very well could be or hope that there are no more fields.").

[23] Dkt. 3149 at 13.

11

14 days would be an insufficient period of time. Defendants provide no estimates for the time necessary to perform the steps. Defendants identify as prerequisites for producing the additional data fields.  Defendants also suggest (again with no explanation) that, "depending on the type of data that needs to be extracted," the process could be complicated.  Defendants have failed to meet their burden.  *In re Heparin Prod. Liab. Litig.*, *supra*; *Burris v. Dodds*, *supra*.  This pure speculation cannot support the open-ended procedure Defendants now advance.

It is simply unfathomable that the Pharmacy Defendants need more than 14-days to determine if there are any additional fields which they may need to produce after the parties have engaged in over a month of meet and confer discussions, teleconferences and discovery conferences relating to the data fields. The request to remove the deadline is backed by nothing more than the Defendants' continued efforts to delay and forestall the discovery in this case.[24]

### D. THE SPECIAL MASTER'S RULING DOES NOT PUT PATIENT PRIVACY AT RISK BY REQUIRING THE PRODUCTION OF PATIENT BIRTH YEAR OR PATIENTS' AGE.

The Special Master overruled the Pharmacy Defendants' objection to production of the patient's birth year. *See* Dkt. 3106 at 2; Ex. 8, 150:22-153:1. The Pharmacy Defendants claim that the production of such data constitutes an unwarranted invasion into patient privacy and incorporated by reference their prior briefing on this issue.[25]  While the date of birth is a field subject to HIPPA, the year of birth is excluded.[26]

---

[24] Pharmacy Defendants filed a Supplemental Objection on Saturday, February 7, 2020 at 2:37 p.m. based on objections to Special Master Cohen's statements in a February 6, 2020 Hearing. The Pharmacy Objections are premature as Special Master Cohen's statements during the February 6th hearing have not been formalized and neither a transcript nor audio recording have been provided.

[25] Dkt. 3149 at 14 (citing Writ of Mandamus, *In re CVS*, 20-3075 (6th Cir. Jan. 17, 2020) at 26-27 and Dkt. No. 3209, Pharmacy Defendants' Motion for Reconsideration of the Court's Order Regarding Scope of Track One-B and Supporting Memorandum).

[26] 45 CFR 164.514(b)(2)(i)(C) (excluding birth year for those under 90 years old from protected health information to be removed as part of requirements for de-identification of protected health information).

During the January 22, 2020 Discovery Conference, Special Master Cohen ruled that "if it is not maintained as a separate data field, you don't produce it. If it is a separate data field, my ruling is that you have to produce the year . . . of birth. So you can produce it by redaction. Then if you can't, you have to produce the entire date of birth." *Id.* at 152-21-153:1. Special Master Cohen reasoned, "[i]t won't be hard at all for you to take the date of birth – and even if you have month and day to turn that into a date of birth year and produce it. And I don't that amount of information is going to be dangerous as far as personal information even in connection with everything else you are producing." *Id.* at 159: 1-7. During the January 23, 2020, teleconference, Special Master Cohen ruled that the age could be substituted for the birth year. *See* Audio Recording of 1/23/20 Discovery conference at 1:52-2:02.

The Special Master noted in a January 23, 2020, email "[t]emporal scope remains subject to modification by the mandamus petition. Note that field #53 (patient DOB) can be substituted with field #48 (patient age)."[27] He also reiterated this point in the January 23rd teleconference.[28] Pharmacy Defendants offer nothing more than unsubstantiated musings that the existing Protective Orders will not be sufficient to ensure the confidentiality of the materials. But this Court considered and rejected this argument, noting that Pharmacy Defendants had successfully argued that the Protective Orders would maintain the confidentially of HIPAA-protected materials.[29]

The Special Master, working with the Parties, has refined the scope of the information that must be produced under the Dec. 27, 2019, ruling so that "the end result is that no person who

---

[27] *See* 1/23/2020 email from Special Master Cohen, attached hereto as Ex. 9.

[28] *See* Ex. 7 at 1:52-2:04.

[29] *See* Dkt. 3089, Jan. 21, 2020 Order Denying Motion for Stay at 3, n.1.

obtains the data will learn what medications any identifiable individual has received."[30] This ruling was entered after multiple hearings and careful consideration by the Special Master of the data fields to be produced and the drugs to be covered.  Defendants' assertions that there is any material risk of divulgence of personally identifiable information are unfounded.[31]

There is simply no basis to support the Pharmacy Defendants' claim that the Special Master abused his discretion in ordering the production of the either the patient's birth year or the patient's age.

## CONCLUSION

Plaintiffs respectfully request this Court reject Defendants' objections to the Special Master's Discovery Ruling Regarding Pharmacy Data Production (Dkt. 3106) and permit the relevant and proportional discovery ordered by the Special Master to proceed without further delay.

Respectfully submitted,

*/s/Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

---

[30] Dkt. 3055, Order on Reconsideration Regarding Scope of Discovery in Track One-B, at 2-3.
[31] *Id.*

Paul T. Farrell, Jr., Esq.
FARRELL LAW
422 Ninth Street
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

W. Mark Lanier
LANIER LAW FIRM
10940 W. Sam Houston Pkwy N., Ste 100
Houston, TX  77064
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Trial Counsel*

*/s/Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

15

        Linda Singer
        MOTLEY RICE LLC
        401 9th St. NW, Suite 1001
        Washington, DC 20004
        (202) 386-9626 x5626
        (202) 386-9622 (Fax)
        lsinger@motleyrice.com

        *Counsel for Plaintiff Summit County, Ohio*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on February 10, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

        */s/Peter H. Weinberger*
        Peter H. Weinberger

16