UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO: "*Track One-B Cases*" | ) ) ) ) | JUDGE POLSTER |
| | ) ) ) | **DISCOVERY RULING REGARDING "OARRS DATA"** |

For the reasons stated below, the Pharmacy Defendants' motion to compel production of certain data from the Ohio Board of Pharmacy (docket no. 3070) is **GRANTED**.

First, some background: In Track One-A, defendant McKesson served a subpoena upon the Ohio Board of Pharmacy ("OBOP"), seeking production of *all* dispensing data from OBOP's database known as the Ohio Automated Rx Reporting System ("OARRS").[1] OBOP refused to comply with the subpoena, so McKesson moved to compel. The Court denied the motion as overbroad, but suggested McKesson was entitled to *some* of the data it was seeking and directed the

---

[1] "OARRS consists of two databases: a patient database that contains records of all controlled substances dispensed to outpatients, and an ARCOS-like database that contains records of shipments of those medications by wholesalers and others. This motion concerns only the former." Motion at 3; *see* response at 3 (same).

parties to try and work things out.[2] Ultimately, OBOP agreed to provide to defendants certain OARRS data statewide from 2008 to 2018. The chart on the following page shows which data fields OBOP agreed to produce.[3] (The blue highlighting is explained further below.)

---

[2] *See* Order at 2 (docket no. 1292) ("Some access to the information contained in the OARRS database may be important for a full and complete understanding of the contours of liability in this litigation," but "McKesson's request must be tailored to include geographic and temporal restrictions. Nonproduction or redaction of certain data-fields might be appropriate as well. * * * McKesson and OBOP are directed to continue negotiating to appropriately limit the scope of the data produced by OBOP.").

[3] *See* motion at 4 (identifying fields listed in this chart). *Compare* response at 3-4 (listing by OBOP of somewhat different field names). Regarding its data production in Track One-A, OBOP explains: "the Board produced statewide OARRS data from 2008 to 2018 in a de-identified format that did not provide pharmacy names and addresses, physician's names and contact information, or any patient identifying information." Response at 2 (footnote omitted).

| Data Field | Produced? |
|---|---|
| Date Prescription Filled | yes |
| Prescription Number | yes |
| Date Prescription Written | yes |
| Quantity | yes |
| Number of Refills | yes |
| Number of Days Supply | yes |
| NDC Code | yes |
| Payment Type | yes |
| Pharmacy Name | NO |
| Pharmacy Address | NO |
| OBOP Pharmacy Number | NO |
| OBOP Pharmacy Business Activity Codes and Subcodes | yes |
| Physician Name | NO |
| Physician Address | NO |
| OBOP Physician Number | NO |
| OBOP Physician Business Activity Codes and Subcodes | yes |
| Patient Name | NO* |
| Patient Sex | yes |
| Patient Address | NO |
| Patient Age | yes |
| Patient Condition | NO |

\* Unique Patient ID number supplied instead

At the time OBOP produced this data during Track One-A, the only claims pending against the Pharmacy Defendants related to their *distribution* of opioids to their own stores.  Since then, in Track One-B, Plaintiffs have added claims related to the Pharmacy Defendants' *dispensing*

3

practices. Accordingly, the Pharmacy Defendants have served a subpoena upon OBOP seeking additional OARRS data – specifically, the data fields highlighted above in blue.[4] Notably, the Pharmacy Defendants are *not* seeking additional information that identifies patients; rather, they seek information identifying doctors and pharmacies. The Pharmacy Defendants explain their need for this additional data as follows:

> [A]ccording to the ARCOS data, the Pharmacy Defendants make up just 54 percent of the dispensing market in [the Track One-B] counties between 2006 and 2014. The Pharmacy Defendants have no information at all about most of the prescribers, prescriptions, or dispensing practices associated with the pharmacies and other dispensers that make up the other 46 percent of the market. Those non-defendant dispensers received 273 million dosage units of pharmaceutical opioids between 2006 and 2014, according to ARCOS data.
> On December 2, the Pharmacy Defendants served a subpoena on [OBOP] seeking, among other things, the limited additional OARRS data at issue here, i.e., data identifying the dispensers and prescribers associated with the millions of opioids prescriptions in Cuyahoga and Summit Counties that the Pharmacy Defendants did not fill.
> * * *
> [This] information is necessary to show widespread alternative causes of the alleged nuisance, e.g., the large number of "over-prescribers," "pill mills," and other dispensers Plaintiffs chose not to sue.
> * * *
> The OARRS data is also necessary to identify "doctor shoppers."
> * * *
> OARRS is the only dataset anywhere that allows the tracing of individuals across doctors and pharmacies. Therefore, it is the only dataset that allows the identification of doctor shoppers who sought pills from multiple places, as well as the over-prescribers who wrote those patients' prescriptions.

Motion at 5-8; *see id*. at 8 (further explaining that the Pharmacy Defendants' own, different

---

[4] *See* motion at 9 ("All the Pharmacy Defendants ask is that the same [OARRS] data previously produced be updated and reproduced with the pharmacy and prescriber fields included.").

databases do not allow cross-referencing between them of patients or prescribers, or between other non-defendant dispensers).

In response, OBOP objects that, as a practical matter, if the Pharmacy Defendants receive the additional data they seek – which does *not* include patient name or address – the Defendants will nonetheless be able to identify each patient and all of her prescriptions. OBOP explains:

> For example, if Walgreens was supplied with all information for a particular prescription that was filled at a Walgreens pharmacy – the drug prescribed, the date the prescription was written, the date the prescription was filled, quantity, number of refills, prescriber name, and specific pharmacy name and address at which the prescription was filled – Walgreens could locate that particular prescription within its records. Walgreens' records would necessarily include the patient name for the prescription, thus, revealing the identity of that patient. Walgreens could then determine the unique identifying number for that patient and search the previously produced OARRS information for every one of that patient's prescriptions listed in OARRS – whether it was at Walgreens or elsewhere.

Response at 6.

While this may be true, it ignores several facts. First, during a discovery conference, the Pharmacy Defendants have agreed they will not do this, and even invited the Court to enter an order prohibiting it. The Defendants do not need to identify specific patients to assert their defense; they only need to identify the prescribers and pharmacies associated with a specific patient, which they can do utilizing OBOP's de-identified patient ID number. Accordingly, the Pharmacy Defendants are ordered not to use their own data to "reverse-engineer" patient-identifying information contained in the de-identified OARRS data they receive.

Second, since Walgreens (for example) already has all of its own prescription data, the only information it is gaining from OARRS is prescription data from other pharmacies – which, as OBOP notes, the Defendants could share amongst themselves anyways, or obtain more onerously via third-party subpoena from other non-defendant dispensers. *See* response at 11 ("it appears the

5

[Defendants'] 'substantial need' can be satisfied by serving subpoenas on other third parties or collectively performing a 'deep dive' into their own information").[5] Indeed, all of the OARRS data sought by Defendants was originally provided to OBOP by pharmacies, themselves. Obtaining the requested data from OARRS is simply a streamlined way for the Pharmacy Defendants to acquire collated data that is mostly theirs anyway. OBOP's argument that the Pharmacy Defendants should be required to gather and collate the equivalent of OARRS data themselves, rather than obtain it in one complete package from OBOP, reveals OBOP is concerned more with data-proprietorship than the privacy of the information the data contains.

Third, all of the OARRS data will be subject to the numerous protective orders entered by the Court in this MDL, *see e.g.* docket no. 2987 at 1 (listing all such orders), and the Pharmacy Defendants have explicitly recognized this. *See* motion at 6 ("The Pharmacy Defendants agree that [OBOP] may designate the production under the Court's existing HIPAA Protective Order."). Accordingly, the privacy concerns raised by OBOP are mitigated.

And fourth, as reflected in the Pharmacy Defendants' recent petition for writ of mandamus and their objection to the pharmacy data discovery ruling (*see* docket nos. 3084 & 3149), the Pharmacy Defendants clearly take seriously the privacy of their patients. Indeed, the Pharmacy Defendants *already have* and are required to safeguard the precise types of data they now seek from OBOP. OBOP is rightly concerned about preserving the privacy of patient prescriptions, but that is exactly what the Pharmacy Defendants already do routinely regarding prescriptions they fill themselves. Allowing the Pharmacy Defendants access to information regarding prescriptions filled

---

[5] OBOP does not argue the Pharmacy Defendants have failed to demonstrate good cause for the data, only that they should obtain it through other means.

at other pharmacies does not meaningfully increase the types and amounts of private information the Defendants already have.

In sum, the undersigned is convinced that production of the requested OARRS data to the Pharmacy Defendants will not lead to actual invasions of patient privacy beyond that which patients already experience as a matter of course;[6] and the Pharmacy Defendants' need for the data in this litigation outweighs any countervailing concerns.

OBOP also objects that various federal and state statutes preclude production of the additional OARRS data, but these statutes are premised entirely on the concern that disclosure of data would allow identification of patients. Because the Pharmacy Defendants are *not* seeking patient-identifying data (such as name or address), and given the conclusion above regarding the unlikelihood of invasion of patient privacy, these objections are also not well-taken. Moreover, it is notable that, in related state-court opioid litigation, the State of New York has voluntarily agreed to produce to the Pharmacy Defendants the same pharmacy and prescriber fields from its analogous database; this suggests OBOP's concerns about privacy and statutory restrictions are overblown. Finally, it is clear that the state and federal statutes cited by OBOP may inform, but do not limit, this

---

[6] The Court makes this statement knowing that, as residents of one of the Track One-B counties, the Court's staff's own prescription data is included within the OARRS data and the Defendants' own data.

Court's discretion regarding scope of discovery.[7]

Accordingly, the Pharmacy Defendants' motion to compel is granted. OBOP shall promptly provide to the Pharmacy Defendants the same OARRS data it previously produced, but updated and with the pharmacy and prescriber fields included. Pharmacy Defendants shall ensure counsel for OBOP promptly receives a copy of this Ruling.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** February 13, 2020

---

[7] The federal statute cited by OBOP contains an explicit exception that data may be produced pursuant to a court order. *See* 42 U.S.C § 290dd–2 (b)(2)(C) ("Whether or not the patient . . . gives written consent, the content of such record may be disclosed . . . [i]f authorized by an appropriate order of a court of competent jurisdiction . . . ."). The state statute, Ohio Rev. Code §4729.80, does not contain a similar exception, but a state statute does not cabin this federal Court's discretion. *See Everitt v. Brezzel*, 750 F. Supp. 1063, 1065–1066 (D. Colo. 1990) (holding that the Federal Rules of Civil Procedure, rather than Colorado case law, governs discovery of police files in a civil rights action: "Discovery in the federal courts is governed by federal law as set forth in the Federal Rules of Civil Procedure, whether federal jurisdiction is based on the existence of a federal question or on diversity of citizenship."); *Sharon Steel Corp. v. Travelers Indem. Co.*, 26 F.R.D. 113, 116 (N.D. Ohio 1960) (granting a motion to compel production of general counsel's notes prepared in anticipation of trial under Fed. R. Civ. P. 34, despite a contrary state ruling, explaining: "we cannot afford to allow state court rulings to influence what we consider to be the proper interpretation of the federal rules concerning discovery"); *see also* 8 Fed. Prac. & Proc. Civ. §2005 (3rd ed. 2019) ("State law is of very little relevance to discovery in a federal action.").