# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-MD-2804 |
| *This document relates to:* | Judge Dan Aaron Polster |
| ALL CASES | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO THE PEC's AMENDED MOTION FOR ENTRY OF ORDER ESTABLISHING COMMON BENEFIT FUND

Defendants respectfully submit this Memorandum in Opposition to Plaintiffs' Amended Motion for Entry of Order Establishing Common Benefit Fund (Dkt. No. 3112).[1]

## INTRODUCTION

The "common benefit" proposal is a transparent effort by a handful of lawyers to grab settlement funds that are not before this Court. The proposal does not allocate fees among plaintiffs, as a common benefit fund is meant to do, but instead seeks to impose an impermissible obligation on Defendants. Indeed, the PEC's proposal would divert billions of settlement dollars that should be used to address the opioid crisis. Entry of the Proposed Order would favor the plaintiffs' lawyers over the parties (including their own clients). And it would seriously jeopardize the global settlement that this Court has said it wants.

---

[1] This Memorandum is submitted by the following Defendants: AmerisourceBergen Corporation; AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; Cardinal Health 110, LLC; McKesson Corporation; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Anda, Inc.; Actavis Elizabeth LLC; Actavis Laboratories FL, Inc., and f/k/a Watson Laboratories, Inc.-Florida; Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City; Actavis LLC; Actavis Mid Atlantic LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Actavis South Atlantic LLC; Actavis Totowa LLC; Actavis Kadian LLC; Cephalon, Inc.; Discount Drug Mart, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc.; H. D. Smith, LLC, f/k/a H. D. Smith Wholesale Drug Co.; Henry Schein, Inc.; Henry Schein Medical Systems, Inc.; Mallinckrodt LLC; Mallinckrodt plc; Noramco, Inc.; Prescription Supply Inc.; SpecGx LLC; Teva Pharmaceuticals USA, Inc.; Warner Chilcott Company, LLC; and Watson Laboratories, Inc.

The Plaintiffs' Executive Committee ("PEC") demands that *Defendants* (not plaintiffs) guarantee a fee payment of 7%.  The scope of that demand is staggering:  a 7% slice of a global settlement (including the value of non-monetary relief, such as treatment drugs) would give the PEC more money than any city or county in the country, and more than many States.  For example, a 7% share of the settlement framework announced in October 2019 would exceed *$3.3 billion*.  And that would be just the beginning:  the PEC will attempt to recover additional fees under contingency agreements, to say nothing of the amounts that other plaintiffs' counsel will demand.

The PEC seeks to grab a piece of every opioid-related resolution across the country, including settlements with the State Attorneys General and of the many other actions brought in state court.  But there is simply no legal or equitable basis for the relief the PEC seeks.  This Court has no jurisdiction over settlements outside of the MDL.  Moreover, the doctrines of comity and federalism forbid it from prescribing fee allocations in state-court cases.  Even if those threshold bars did not apply, the sheer size of the PEC's demand is contrary to settled law.

This Court has stated that it is not interested in simply "moving money around."  Dkt. No. 58 at 9.  Defendants agree.  The motion should be denied.

**ARGUMENT**

**I.     The Court Lacks Jurisdiction to Enter the Proposed Order.**

The PEC seeks to impose a 7% common benefit fee on any "settlement" or judgment that resolves opioid-related claims:  (i) asserted by any plaintiff in the MDL (including thousands of local government entities); (ii) held by "any or all potential members" of the "negotiation class" (*i.e.*, virtually every city, county, or other political subdivision in the United States); or (iii) "for the benefit of" any MDL plaintiff. Proposed Order ¶ 2(c).  That covers the resolution of virtually any opioid-related claim, filed or unfiled, regardless of whether a settlement is, in the first

2

instance, with a State or other party outside the MDL. *Id.* Indeed, by exempting only a State's recovery of its "*own* damages claims," the PEC would impose fees on any recovery obtained by a State for alleged harm to the public and/or to any of that State's political subdivisions. *Id.* (emphasis added).

This Court has no power to grant such sweeping relief. It cannot impose fees on resolutions outside of the MDL because, as discussed below, it has no jurisdiction over non-MDL claims. The PEC cannot manufacture jurisdiction by invoking the purported "negotiation class" or by directing its motion to Defendants (as parties to the MDL), rather than to non-MDL claimants. And there is no precedent for the PEC's illegal demand that Defendants "self-fund" the assessment if settling plaintiffs refuse to part with 7% of their recoveries. *Id.*

**A.    The Court Lacks Jurisdiction Over Resolutions Outside of the MDL.**

The PEC cannot use this Court to extract fees from settlements or judgments outside the MDL, including any settlements with the State Attorneys General. An MDL court's managerial authority under 28 U.S.C. § 1407 is not a jurisdictional grant. The "authority for consolidating cases" into an MDL is "merely procedural," and it "does not expand the jurisdiction of the district court to which the cases are transferred" to encompass "cases not before it." *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 873-74 (8th Cir. 2014); *accord In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165-66 (4th Cir. 1992) ("[A] transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred[.]").

The Court thus has no authority to impose common-benefit assessments for claims not pending in the MDL. Every court that has addressed the question has concluded the same. For example, the Fourth Circuit held that an order "compel[ling] contributions from plaintiffs in state or federal litigation who are not before the [MDL] court" had an "impermissible reach" and was

3

"improperly broad." *Showa Denko*, 953 F.2d at 166.  The "district court simply has no power to extend the obligations of its [common benefit fee] order" to "[c]laimants who have not sued and plaintiffs in state and untransferred federal cases [who] have not voluntarily entered the [MDL] litigation." *Id.*

Similarly, the Eighth Circuit affirmed an MDL court's finding that "it did not have jurisdiction to order holdbacks from state-court plaintiffs' recoveries" because "the district court does not have the power to order parties in cases not before it to contribute to the Fund." *Genetically Modified Rice*, 764 F.3d at 873-74; *see also Slamon* v. *Carrizo (Marcellus) LLC*, No. 3:16-CV-02187, 2019 WL 3987770 at *17 (M.D. Pa. Aug. 22, 2019) (rejecting common benefit proposal for lack of jurisdiction over out-of-court settling parties).  That is so even where "*all* [the] plaintiffs . . . benefited substantially from the work of Lead Counsel." *Genetically Modified Rice*, 764 F.3d at 866 (emphasis in original); *cf. In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 617 F. App'x 136, 141 (3d Cir. 2015) ("[H]ad the District Court simply ordered the firm, as total strangers to the litigation, to contribute to the common benefit fund from the settlement of its clients' state-court cases, it would have exceeded its jurisdiction."); *Hartland* v. *Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976) (MDL court lacked jurisdiction to require lawyers for nonparty claimant to pay into discovery fund).[2]

Courts in this district (including this Court) have recognized as much in other MDLs.  When authorizing common benefit fees, courts have limited their rulings to the cases and resolutions at bar.  *See In re Gadolinium Based Contrast Agents Prods. Liab. Litig.*, No. 1:08 GD 50000, 2009 WL 10703918, at *1 (N.D. Ohio Feb. 20, 2009) (Polster, J.) ("This Order applies to

---

[2]   In *In re Air Crash Disaster at Florida Everglades*, cited by the PEC (Am. Mot. at 2 n.2, 3, 4), the Fifth Circuit "d[id] not specifically consider the authority of the district court to assess a fee in cases not formally before it."  549 F.2d 1006, 1010 n.5 (5th Cir. 1977).

4

all cases now pending, or later filed in, transferred to, or removed to, this Court and treated as part of the coordinated proceeding known as [the MDL]."); *In re DePuy Orthopaedics, Inc., ASR Hip Implant Prods. Liab. Litig*, No 1:10-md-2197, Dkt. No. 329 at 2 (N.D. Ohio Dec. 21, 2011) (Katz, J.) (same, and further excluding remanded cases); *see also In re Oral Sodium Phosphate Solution-Based Prods. Liab.*, No. 1:09-SP-80000, 2010 WL 5058454, at *2 (N.D. Ohio Dec. 6, 2010) (Polster, J.) (assessing fees among parties to settlement agreement that authorized "common benefit fees and expenses"); *In re Heparin Prods. Liab. Litig.*, No. 1:08-hc-60000, Dkt. No. 45 at 2 (N.D. Ohio Nov. 6, 2008) (Carr, C.J.) (common benefit order not applicable to litigants in state court unless adopted by state court judge).

### B. The PEC Cannot Manufacture Jurisdiction Over Non-MDL Claims.

#### 1. The "Negotiation Class" Is Not a Basis for Imposing Fees on Non-MDL Resolutions.

The Court's certification of a "negotiation class" is not an independent jurisdictional basis to impose common benefit fees. The motion would impose a common benefit assessment on any settlement releasing the claim of "any or all potential members of the Negotiation Class"—regardless of whether that potential "class" member has filed a case, the court in which its opioid-related claims may be pending, or the structure of the settlement at issue. Proposed Order ¶ 2(c). But this Court lacks jurisdiction over settlement of *any* claims outside the MDL. Invoking the "negotiation class" makes no difference.

The "negotiation class" is an untested settlement approval vehicle that many of the Defendants (and others) are currently challenging on appeal. It is clear, however, that the Court's certification order did not contemplate the class being used to assess fees on settlements outside of the MDL. Indeed, this Court expressly forbade class counsel (including members of the PEC) from attempting to use the class "against [a subdivision's] State government should

5

allocation disputes arise during or following State settlements." Order Certifying Negotiation Class and Approving Notice ("Certification Order"), Dkt. No. 2591 ¶ 15.  Without question, earmarking 7% of a State settlement as a "common benefit assessment" would lead to such "allocation disputes."  *Id.*; *see also* Mem. Op. Certifying Negotiation Class ("Certification Op."), Dkt. No. 2590, at 3-4 (negotiation class "does not interfere with the States settling their own cases any way they want"); *Class Action Notice and Frequently Asked Questions* (the "Class Notice"), IN RE: NATIONAL PRESCRIPTION OPIATES LITIGATION, Sep. 11, 2019, at 10 ("If a Defendant reaches a settlement directly with a State, nothing about this Negotiation Class process would affect the distribution of those settlement funds between the State and its own cities or counties."), https://www.opioidsnegotiationclass.info/Content/Documents/Notice%20and%20FAQ.pdf.

Moreover, nothing in the certification order authorizes the imposition of "common benefit" fees preemptively on non-MDL settlements that were not even negotiated by class counsel.  *See* Certification Order ¶ 18 (contemplating "fees for *MDL* common benefit work" *if* "[1] any settlement is reached [2] under this process, [3] supported by the Class, and [4] approved by the Court") (emphasis added); *see also* Class Notice at 7 ("[T]he Class will operate if, and only if, one or more of the Defendants wishes to negotiate with the Class as a whole through the Negotiation Class mechanism.").

In addition, even for traditional classes, certification affords only limited jurisdiction over absent class members (here, political subdivisions that are not parties to the MDL).  *See Phillips Petroleum Co.* v. *Shutts*, 472 U.S. 797, 812-13 (1985) (jurisdiction over absent class members is predicated on notice and opportunity to opt out); *see also* Rubenstein, 3 Newberg on Class Actions § 9:26 (5th ed.) (explaining that "failure to opt out" of a class may be "a sufficient

6

condition for the exercise of *in personam* jurisdiction," but is not "consent to jurisdiction for all purposes"). Mindful of these rules, this Court emphasized that it was "critical" to its decision to certify the "negotiation class" that absent "class members' rights are protected":

- First, "*all* fees and costs" assessed on absent members "must be adjudicated according to the procedures set forth in Rule 23(h)," pursuant to which the Court will "carefully scrutinize each fee request, as well as the total amount of fees paid from the class's recovery to . . . the MDL leadership . . . *to ensure that the Class is not unduly taxed*." Certification Op. at 3, 36 (emphases added).

- Second, in its order certifying the class, the Court stated that "no attorney's fees of any kind will be distributed from the class's recovery or any other source except according to the procedures set forth in Rule 23(h)," and that "[t]his includes . . . fees for MDL common benefit work." Certification Order ¶ 18.

"Rule 23(h), by its own terms, does not purport to be a source of fee authority" and so cannot be used as "a basis for authority to enact a common benefit fee." 5 Newberg § 15:114. Nor can Rule 23 provide an independent basis for subject matter jurisdiction, as it is "axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction." *Owen Equip. & Erection Co.* v. *Kroger*, 437 U.S. 365, 370 (1978); *see also Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints."); *Clay* v. *United States*, 199 F.3d 876, 880 (6th Cir. 1999) ("Fed. R. Civ. P. 82 tightly circumscribes application of the Federal Rules of Civil Procedure, mandating that they 'not be construed to extend or limit the jurisdiction of the United States district courts.'"); *Dunn* v. *Dart*, 2010 WL 11619246 at *2 (E.D.N.C. 2010) (Rule 23(h) did not provide jurisdiction over state-law claims arising from an alleged fee agreement because the "Rules of Civil Procedure do not provide an independent basis for jurisdiction"). And due process forbids the PEC from extracting fees from "class" members on some other basis after securing their participation with a promise that fees and costs would be assessed only under Rule 23(h).

On February 11, a member of the PEC posted the Proposed Order on the class website. But that "notice" does not invoke Rule 23(h) or otherwise establish jurisdiction over non-MDL claimants. In any event, the "normal practice [under Rule 23] is that class counsel files a motion for the award of attorney's fees in conjunction with moving for final approval of a proposed class settlement." 5 Newberg § 15:10. There is no proposed class settlement here, so any Rule 23(h) motion would be premature at best.

### 2. Jurisdiction Over a Party Is Not a Basis for Imposing Common Benefit Fees on a Non-MDL Resolution.

Nor can the PEC circumvent the fatal jurisdictional defects by purporting to assess fees against Defendants in the MDL, rather than against non-MDL claimants or their counsel. The law is clear: to assess fees on a settlement or judgment, a court must have jurisdiction over the entire resolved claim—not just a party to it.

In *Genetically Modified Rice*, MDL plaintiffs "argue[d] that [common benefit] assessments need not be levied on the state-court plaintiffs themselves, but rather may be withheld by [defendant] (a party before the district court) or paid by the plaintiffs' counsel (some of whom represent clients in the MDL)," since the MDL court had "jurisdiction over [defendant] and MDL attorneys." 764 F.3d at 874. The Eighth Circuit rejected that argument: the district court could not "order withholding from [MDL parties'] 'related' state-court cases," because those "state-court cases, related or not, are not before the district court." *Id.* That state-court plaintiffs "benefited from the MDL leadership group's work" was irrelevant, because "equity is insufficient to overcome limitations on federal jurisdiction." *Id.*

The Sixth Circuit's "common benefit" precedent leads to the same result. In *Toth*, the Sixth Circuit considered the district court's award of attorneys' fees to plaintiff and against defendant UAW based on a common benefit theory—specifically, that plaintiff had secured a

8

settlement against another defendant (Ford) that inured to the benefit of UAW, and that UAW thus owed a tax (or "common benefit" fee) to plaintiff.  *Toth* v. *United Auto. Aerospace & Agr. Implement Workers of Am. UAW*, 743 F.2d 398 (6th Cir. 1984).  On appeal, UAW emphasized that since it was not a party to the claims settled between plaintiff and Ford, it could not be required to pay any related fees.  The Sixth Circuit agreed:  "Regardless of whether or not the court had *personal* jurisdiction over the union," any "recovery (including an attorneys' fees award)" must "be grounded in *subject-matter* jurisdiction over an Article III case or controversy between [plaintiff] and the source of that recovery."  *Id.* at 405 (emphases in original).  Because the district court did not have jurisdiction over the "target of that award [*i.e.*, UAW] *by virtue of* its jurisdiction over the *subject matter* of the claim on which the award is based [*i.e.*, plaintiff's claim against Ford]," it could not assess the fee against UAW.  *Id.* at 406 (emphases in original).

The same reasoning applies here:  this Court does not have jurisdiction over claims that are not in the MDL.  It therefore cannot impose any fee on settlements resolving those claims.

### C. The Common Benefit Doctrine Cannot Be Used to Force Defendants to Pay Plaintiffs' Fees.

When applicable at all, the common benefit doctrine promotes equity *among plaintiffs* (and their counsel).  In appropriate cases, it allows a plaintiffs' lawyer to seek "proportional contribution from those who accept the benefit of his efforts."  *Trustees* v. *Greenough*, 105 U.S. 527, 532-33 (1881).  The basic rationale is that "persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense."  *Geier* v. *Sundquist*, 372 F.3d 784, 790 (6th Cir. 2004) (quoting *Boeing Co.* v. *Van Gemert*, 444 U.S. 472, 478 (1980)).  Thus, where appropriate, plaintiffs' lawyers who benefit from the work of others "are effectively taxed a portion of their attorney's fees."  5 Newberg § 15:24.

9

A defendant "itself cannot be obliged to pay fees awarded to the [plaintiffs'] lawyers." *Boeing*, 444 U.S. at 482.  Therefore, a common benefit fund "is only permissible where the costs will be spread across the plaintiff class a*nd not shifted as an added penalty to the defendants.*" *Schell* v. *OXY USA Inc.*, 814 F.3d 1107, 1126 (10th Cir. 2016) (emphasis added); *accord Gaffney* v. *Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 467 (7th Cir. 2006) ("The common-benefit exception is inapplicable" where plaintiffs seek "to shift their fees to the defendants"); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 921 n.22 (N.D. Ohio 2003) (common benefit fees "are not assessed against the [defendant] (fee shifting), but rather are taken from the fund or damage recovery (fee spreading)") (quotation marks omitted).

The Proposed Order flouts these rules by purporting to impose new obligations on *Defendants*.  Under the current proposal, Defendants—not plaintiffs or their attorneys—are "directed" to "withhold" 7% of any opioid-related settlement or judgment or, barring that, to "*self-fund an additional equivalent amount*."  Proposed Order ¶ 2(c) (emphasis added).  The PEC would also require Defendants to withhold additional money, or pay new money into the fund, equal to 7% of the "value of non-cash products or services provided by a Defendant" (*e.g.*, treatment drugs).  *Id.* ¶ 2(d)(3).  None of the cases cited by the PEC involves *any* "self-funding" by defendants, much less based on the value of non-cash settlement consideration.  *See Geier*, 372 F.3d at 790 (rejecting common benefit assessment and refusing to assign dollar value to "remedial measures").  The PEC's proposal should be rejected for that reason alone.

Moreover, on its face, the Proposed Order seeks to require Defendants to pay an additional 7% on Track 1 settlements that have long been final.  *See* Proposed Order ¶ 2(c) (requiring Defendants to "withhold" the 7% assessment or "self-fund an additional equivalent amount" for "all cases or claims as to which a settlement is entered into, or a settlement or

10

judgment was or is paid, *from and after October 20, 2019*") (emphasis added).  Certain Defendants paid over $200 million in cash and product to the Track 1 plaintiffs after October 20, 2019.  Defendants cannot "withhold" money that has already been paid.  And the PEC cannot use the common benefit doctrine to compel Defendants to pay an unanticipated, multimillion-dollar premium on settlements that have already been completed and paid.

**II.     The Proposed Order Violates Basic Principles of Comity and Federalism.**

There are hundreds of opioid-related cases pending in state courts, including many of those brought by State Attorneys General.  In overseeing those cases, state courts may be called upon to enter judgment regarding fees.  Moreover, the global settlement structure that has been the subject of negotiations would be embodied in a consent judgment in the courts of each settling State, regardless of whether that State has brought suit.  Entry of the Proposed Order would interfere with those state-court judgments in violation of basic principles of comity and federalism.

The Supreme Court has repeatedly required federal courts to maintain "a proper respect for state functions," and it has prohibited federal court action that "unduly interfere[s] with the legitimate activities of the States." *Juidice* v. *Vail*, 430 U.S. 327, 334, 336 (1977) (quoting *Younger* v. *Harris*, 401 U.S. 37, 44 (1971)); *see also Huffman* v. *Pursue, Ltd.*, 420 U.S. 592, 603 (1975) ("The seriousness of federal judicial interference with state civil functions has long been recognized by this Court.  We have consistently required that when federal courts are confronted with requests for such relief, they should abide by standards of restraint that go well beyond those of private equity jurisprudence.").

Federal courts invoke these principles to avoid imposing common benefit fees on state-court resolutions.  In *Showa Denko*, for example, the Fourth Circuit rejected a common benefit proposal that "ha[d] the very real potential of interfering with discovery proceedings in state

11

court, raising questions of conflict with the policy of comity between federal and state courts underlying *Younger* v. *Harris*." 953 F.2d at 166. Likewise, in *Zyprexa*, the MDL court declined to assess fees on state resolutions, recognizing that—even if "much of the work performed" by the plaintiffs' steering committee "will benefit state plaintiffs"—"[p]rinciples of comity and respect for the state courts' supervision of their own dockets and the attorneys before them lead to the conclusion that such compulsion would be inappropriate," such that "assessing state cases" with these costs "should, in the first instance, be left to state court judges." *In re Zyprexa Prod. Liab. Litig.*, 467 F. Supp. 2d 256, 268–69 (E.D.N.Y. 2006).

That is especially true where, as here, State Attorneys General have sued. In particular, the Supreme Court has warned that "an offense to the State's interest in . . . nuisance litigation is likely to be every bit as great as it would be [in] a criminal proceeding." *Huffman*, 420 U.S. at 604; *see, e.g.*, *Traughber* v. *Beauchane*, 760 F.2d 673, 678 (6th Cir. 1985) ("That the state [is] a party to the underlying action, even if by happenstance or coincidence, indicate[s] that vital state interests [are] involved in the underlying state civil proceeding."); *cf. Franchise Tax Bd. of State of Cal.* v. *Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 21 n.22 (1983) ("[I]t is perhaps appropriate to note that considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.").

That the PEC seeks to bind States without their consent, and to impose a financial obligation on State recoveries, is further reason this Court lacks the power to enter the Proposed Order. *See Seminole Tribe* v. *Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp.* v. *Halderman*, 465 U.S. 89, 98-99 (1984). Indeed, this Court has expressly and repeatedly recognized its lack of jurisdiction over the State Attorneys General and their state-court

12

proceedings. *See, e.g.*, Dkt. No. 94 at 1; Dkt. No. 111 at 1. Comity and federalism thus provide additional bases to deny the PEC's common benefit proposal.

### III. Plaintiffs' Counsel Should Not Receive Billions of Dollars That Would Otherwise Be Used To Address the Opioid Crisis.

Because this Court is already "very familiar with the factors that determine both the propriety of awarding common benefit fees at all, and also how to arrive at the proper amount of those awards," Defendants do not rehash those factors here. *Oral Sodium Phosphate Solution-Based Prods Liab.*, 2010 WL 5058454, at *2; *see Sulzer Hip Prothesis*, 268 F. Supp. 2d at 921-24. Nonetheless, it is clear that a 7% assessment is excessive.

Although the PEC alleges that assessments "in the 7%-9% range are not uncommon in contemporary MDLs," Am. Mot. at 4, their own authorities make clear that the most common fee assessed is 4%, with fees over 6% occurring only rarely. *See* William Rubenstein, *On What A "Common Benefit Fee" Is, Is Not, and Should Be*, 3 Class Action Attorney Fee Digest 88 (2009).

Moreover, "in 'mega-cases' in which large settlements or awards serve as the basis for calculating a percentage, courts have often found considerably lower percentages of recovery to be appropriate." MANUAL FOR COMPLEX LITIGATION § 14.121. That is because "in many instances the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 339 (3d Cir. 1998) (alterations omitted); *see, e.g.*, *id.* at 340 (6.7% assessment remanded "for a more thorough examination and explication of the proper percentage . . . in light of the magnitude of the recovery"); *In re Zyprexa Prods. Liab. Litig.*, No. 1:04-md-01596, Dkt. 702 at 1 (E.D.N.Y. Aug. 25, 2006) (1% assessment on settlement over $1 billion).

There is no justification for outsize fees in this "mega-case," where the PEC seeks to tax a large, open-ended group of opioid-related settlements or judgments, including unfiled cases,

anywhere in the nation. *See, e.g.*, *In re Long-Distance Telephone Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 635 (D.C. Cir. 2014) (denying common benefit fees in challenge to IRS refund mechanism where "class of beneficiaries . . . [was] potentially massive" and "nearly impossible to ascertain with any precision"); *Geier*, 372 F.3d at 790 (denying common benefit fees in action forcing school desegregation because "the class of persons benefited . . . is not at all small or manageable"); *Southeast Legal Defense Grp.* v. *Adams*, 657 F.2d 1118, 1123 (9th Cir. 1981) (denying common benefit fees in action enjoining highway construction because "it [was] inconceivable that the cost could be distributed in proportion to the benefits received").

Further, despite the PEC's attempt to invoke this Court's equity powers, the Proposed Order would in fact be deeply inequitable. A common benefit fund is designed for redistribution among attorneys, not piling on additional fees, as the PEC's proposal would do. Stakeholders both in and outside of the MDL have already made significant progress in settlement discussions in the two years since the commencement of the MDL, and the Proposed Order would impede the successful completion of those discussions. One "who seeks equity must do equity." *Mfrs' Fin. Co.* v. *McKey*, 294 U.S. 442, 449 (1935). This Court should therefore deny the PEC's attempt to redirect resources to its own pockets that could be used to abate the opioid crisis.[3]

Defendants acknowledge that reasonable attorneys' fees may be a part of a negotiated resolution of these cases. But the PEC should not be permitted to impose an illegal, outsize assessment. Entry of the Proposed Order would only privilege the plaintiffs' lawyers over the parties and threaten the potential for a true global resolution.

---

[3] The PEC's attempt to divert abatement funds also fails under its own abatement cases. For example, in *People* v. *ConAgra Grocery Prods. Co.*, a case frequently cited by the PEC (and in which members of the PEC were plaintiffs' counsel), the court was clear that any "abatement fund" be used "solely to pay for the prospective removal of the hazards," such that "any funds that had not been utilized for that sole purpose by the end of the four-year abatement period were to be returned to defendants." 17 Cal. App. 5th 51, 133 (2017).

14

## CONCLUSION

For the foregoing reasons, the PEC's motion should be denied.

Dated: February 26, 2020
      New York, NY

Respectfully submitted,

*/s/ Geoffrey Hobart*
Geoffrey E. Hobart
Mark H. Lynch
Sonya D. Winner
Christian J. Pistilli
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
swinner@cov.com
cpistilli@cov.com

*Counsel for McKesson Corporation*

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel.: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation and AmerisourceBergen Corporation.*

*/s/ Elaine Golin*
Elaine Golin
Kevin M. Jonke
51 W. 52nd Street
WACHTELL, LIPTON, ROSEN & KATZ
New York, NY 10019
Tel.: (212) 403-1000
Fax: (212) 403-2000
EPGolin@wlrk.com
KMJonke@wlrk.com

Enu Mainigi
F. Lane Heard
Steven M. Pyser
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc. and Cardinal Health 110, LLC*

*/s/ Charles C. Lifland*
Charles C. Lifland
Sabrina H. Strong
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Tel.: (213) 430-6000
clifland@omm.com
sstrong@omm.com

*Counsel for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-*

15

*Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

/s/ James W. Matthews
James W. Matthews
Katy E. Koski
Ana M. Francisco
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel.: (617) 342-4000
Fax: (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
afrancisco@foley.com

*Counsel for Anda, Inc.*

/s/ Timothy D. Johnson
Timothy D. Johnson (OH No. 0006686)
CAVITCH, FAMILO & DURKIN CO. LPA
1300 East Ninth Street – 20th Floor
Cleveland, Ohio 44114
Tel.: (216) 621-7860
Fax: (216) 621-3415
tjohnson@cavitch.com

*Counsel for Discount Drug Mart, Inc.*

/s/ Eric W. Sitarchuk
Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel.: (215) 963-5000
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

*Counsel for Cephalon, Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.,*

*Warner Chilcott Company, LLC, Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, Actavis Totowa LLC, Actavis Kadian LLC, Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City, and Actavis Laboratories FL, Inc., and f/k/a Watson Laboratories, Inc.-Florida*

/s/ Daniel G. Jarcho
Daniel G. Jarcho (D.C. Bar No. 391837)
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Tel.: (202) 239-3254
daniel.jarcho@alston.com

Cari K. Dawson (GA Bar No. 213490)
Jenny A. Hergenrother
GA Bar No. 447183
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
cari.dawson@alston.com
jenny.hergenrother@alston.com

*Counsel for Noramco, Inc.*

/s/ John P. McDonald
John P. McDonald
C. Scott Jones
Lauren M. Fincher
Brandan J. Montminy
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Tel.: (214) 740-8000
Fax: (214) 756-8758
jpmcdonald@lockelord.com
sjones@lockelord.com
lfincher@lockelord.com
brandan.montminy@lockelord.com

*Counsel for Henry Schein, Inc. and Henry Schein Medical Systems, Inc.*

/s/ *John J. Haggerty*
John J. Haggerty
FOX ROTHSCHILD LLP
2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel.: (215) 345-7500
Fax: (215) 345-7507
jhaggerty@foxrothschild.com

*Counsel for Prescription Supply Inc.*

/s/ *Jonathan L. Stern*
Jonathan L. Stern
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
Tel.: (202) 942-5000
Jonathan.Stern@arnoldporter.com

*Counsel for Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Par Pharmaceutical, Inc., and Par Pharmaceutical Companies, Inc.*

/s/ *William E. Padgett*
William E. Padgett (IN No. 18819-49)
Kathleen L. Matsoukas (IN No. 31833-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel.: (317) 236-1313
william.padgett@btlaw.com
kathleen.matsoukas@btlaw.com

*Counsel for H. D. Smith, LLC, f/k/a H. D. Smith Wholesale Drug Co.*

/s/ *Brien O'Connor*
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 235-4650
brien.o'connor@ropesgray.com
andrew.o'connor@ropesgray.com

*Counsel for Mallinckrodt LLC, SpecGx LLC, and specially appearing for Mallinckrodt plc[*]*

---

[*] Mallinckrodt plc is an Irish company and is not subject to and contests personal jurisdiction; it is specially appearing here and, thus, does not waive and expressly preserves its personal jurisdiction challenge.