**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | **Case No.: 1:17-MD-2804-DAP**<br><br>**HON. DAN A. POLSTER** |

**OPPOSITION TO MOTION FOR ENTRY OF**
**ORDER ESTABLISHING COMMON BENEFIT FUND**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................ ii

**INTRODUCTION AND SUMMARY** .......................................................................... 1

**ARGUMENT** ................................................................................................................ 8

I.     The Court Lacks Jurisdiction to Order the Requested Holdback Over Non-MDL Cases ...................................................................................................................... 8

II.    The Motion is Premature and Vitiates the Court's Prior Orders ........................... 18

III.   The Motion Violates the Terms of the Very Documents on Which it Purports to Rely ......................................................................................................................... 22

IV.   The Motion Violates Texas Statute ....................................................................... 23

V.    The Motion Is Improperly Indiscriminate as to Defendant Groups ...................... 25

VI.   The Motion is Particularly Improper Given the Lack of Transparency Attendant with this MDL ..................................................................................................... 26

**CONCLUSION** ........................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Alongi v. Ford Motor Co.*, 386 F.3d 716 (6th Cir. 2004) .................................................. 19

*Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003) ........................................................... 19

*Atlantic Coastline R. Co. v. Locomotive Engineers*, 398 U.S. 281 (1970) ...................... 10

*Boeing v. Van Gemert*, 444 U.S. 472 (1980)............................................................... 16, 18

*Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1884).............................. 16, 18

*Hartland v. Alaska Airlines,* 544 F.2d 992 (9th Cir. 1976) ............................ 11, 12, 15, 17

*In re Actos (Pioglitazone) Prods. Liab. Litig.*, 274 F. Supp. 3d 485 (W.D. La. 2017) ..... 16

*In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006 (5th Cir. 1977)............................................................................................................... 16

*In re Aqueous Film-Forming Foam Prods. Liab. Litig.*, MDL No. 2873, Dkt No. 72 (D.S.C. Apr. 29, 2019)................................................................................................. 16

*In re Avandia Marketing, Sales Practices, and Prods. Liab. Litig.,* MDL No. 1871, 2012 WL 6923367 (E.D. Pa. 2012) ................................................................................... 16

*In re Bard IVC Filters Prods. Liab. Litig.*, MDL No. 2641, Dkt No. 372 (D. Ariz. Dec. 18, 2015) ................................................................................................................... 17

*In re Bard IVC Filters,* MDL No, 2641, 2018 WL 4279834 (D. Ariz., Sep. 7, 2018) ..... 17

*In re Baycol Prod.*, MDL No. 1431, 2004 WL 1058105 (D. Minn. May 3, 2004)........... 15

*In re Baycol Prod.,* MDL No. 1431, 2004 WL 190272 (D. Minn. Jan. 29, 2004)............ 13

*In re Chinese-Manufactured Drywall Litigation,* 2019 U.S. Dist. LEXIS 32629 (Feb. 4, 2019) ....................................................................................................................... 25

*In re Cmty. Health Sys., Inc.,* No. 15-CV-222-KOB, 2016 WL 4732630 (N.D. Ala. Sept. 12, 2016) ................................................................................................................. 15

*In re Cook Medical, Inc., Pelvic Repair Systems*, 365 F. Supp. 3d 685 (MDL No. 2440) (S.D.W.V. 2019) ...................................................................................................... 16

*In re Federal Skywalk Cases,* 680 F.2d 1175 (1982) ....................................................... 10

*In re FedEx Ground Package Sys., Inc., Employment Practices Litig*., No. 3:05-MD-527 RM, 2011 WL 611883 (N.D. Ind. Feb. 11, 2011) .......................................................... 14

*In re Gadolinium Based Contrast Agents Prods. Liab. Litig.*, No. 08-GD-50000, Dkt No. 277 (N.D. Ohio Feb. 20, 2009) ..................................................................... 17

*In re General Motors LLC Ignition Switch Litigation*, 2019 WL 5865112 (S.D.N.Y. Nov. 8, 2019) .......................................................................................... 17

*In re Genetically Modified Rice Litig*., 2010 WL 716190 (E.D. Mo. Feb. 24, 2010). 11, 12

*In re Genetically Modified Rice Litig.*, 764 F.3d 864 (8th Cir. 2014).................... 11, 12, 15

*In re Ivokana Prods. Liab. Litig.*, No. 3:16-md-02750, Dkt No. 58 (D.N.J. Mar. 21, 2017) ....................................................................................................... 17

*In re Lidoderm Antitrust Litig*., No. 14-MD-02521-WHO, 2017 WL 3478810 N.D. Cal. Aug. 14, 2017) ............................................................................... 15

*In re Linerboard Antitrust Litig*., 292 F. Supp. 2d 644 (E.D. Pa. 2003) .......................... 15

*In re MGM Grand Hotel Fire Litig.,* 660 F. Supp. 522 (D. Nev. 1987) .......................... 16

*In re NFL Player's Concussion Injury,* MDL No. 2323, 2018 WL 1635648 (E.D. Pa., Apr. 5, 2018) ............................................................................ 13

*In re OSB Antitrust Litig*., No. 06-826, 2009 WL 579376 (E.D. Pa. Mar. 4, 2009) ......... 15

*In re Showa Denko K.K. L-Tryptophan Products Liability Litigation* II, 953 F.2d 162 (4th Cir. 1992) ....................................................................... 10, 11, 12, 15, 17

*In re Sulzer Hip Prosthesis and Knee Prosthesis Prods. Liab. Litig.*, 268 F. Supp. 2d 907 (N.D. Ohio 2003) ................................................................... 16

*In re Sulzer Hip Prosthesis and Knee Prosthesis Prods. Liab. Litig.*, 398 F.3d 778 (6th Cir. 2005) ................................................................................... 16

*In re Syngenta AG MIR 162 Corn Litig*., No. 14-MD-2591-JWL, 2015 WL 2165341 (D. Kan. May 8, 2015) ......................................................... 13, 14, 17

*In re Vioxx Products Liability Litigation*, MDL No. 1657, 760 F. Supp. 2d 640 (E.D. La. 2010) ......................................................................................... 27

*In re Zyprexa Prods. Liab Litig.*, MDL No. 1596, 467 F. Supp. 2d 256 (E.D.N.Y. 2006) ....................................................................................... 16

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) ........................................................ 16

*Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939) ............................................. 16, 18

*Trustees v. Greenough*, 105 U.S. 527 (1881) ............................................................ 16, 18

**Statutes**

28 U.S.C. § 1407 .......................................................................................................... 17

TEX. GOV'T CODE §2254 ........................................................................................... 24

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 4

## INTRODUCTION AND SUMMARY

Without waiver of challenges and objections to jurisdiction, the below-identified political subdivisions proceeding in state-filed cases, or who have been improvidently-removed, and who have opted out of the Negotiation Class file this Opposition to the Amended Motion for Entry of Order Establishing Common Benefit Fund ("the Motion") [Doc. #3112].

The Motion seeks entry of a wildly overly-broad and premature common benefit order ("Proposed Order") [Doc. # 3112-1] that would improperly extend this Court's jurisdiction to state-filed cases that are proceeding in state court (including state MDLs); to cases being prosecuted by political subdivisions who affirmatively opted out of the Negotiation Class; to improvidently-removed cases whose fully-briefed remand motions have remained pending in this Court for many months *sine die*; to cases transferred to bankruptcy court where there is no pre-packaged settlement[1]; to un-filed cases; to cases where no Participation Agreement has been signed; and to cases where political subdivisions have not consented to MDL jurisdiction in any way, shape or form. All of this would ostensibly flow from an MDL that has neither a Master Settlement Agreement nor a Common Fund before it. Nor does there exist a record that could possibly justify a 7% global assessment in the face of numerous contrary court orders and without consideration of payments received or arguably due to moving counsel through prior settlements or the

---

[1] With exception of the Purdue Bankruptcy, which does not have a broadly agreed settlement but from which the PEC has agreed to carve out the Motion. *See* discussion *infra*.

Purdue Bankruptcy. The Motion also contradicts express terms of this Court's orders including those regarding the Negotiation Class and Class Notice. And, the Proposed Order, if entered, would violate Texas Statute.

None of the PEC's authorities support the overreach presented by this remarkable Motion. To the contrary, each confirms that common benefit holdbacks are appropriate only where there is proper jurisdiction, notice and consent. *See* Point I, *infra*. And indeed, throughout the pendency of this litigation, the political subdivisions subscribing to this opposition have been assured by the PEC- falsely, it regrettably appears- that the interference now sought by the Motion would never occur.

For example, the Protocol Order on which the Motion purportedly relies was expressly confined to work "beneficial to the prosecution of the MDL." (Protocol Order at 2, Doc. #368). It provides no support whatsoever for PEC assessments of state cases, opt-out cases, improvidently-removed cases or bankruptcy proceedings.

The orders governing the production of ARCOS data to all litigants and other discovery expressly provided that sharing of these materials would not result in a common benefit assessment or in the exercise of federal court jurisdiction.[2] The Motion not only

---

[2]*See* Doc #1856 (documenting PEC's agreement to share the ARCOS platform and other MDL discovery and work product, and that sharing these materials "will **not** result in a common benefit assessment by the PEC upon any recovery by the States" (emphasis in original)); Doc #602-1 ("Notwithstanding anything in this Order, under no circumstances is a State…by signing this Acknowledgement [to receive ARCOS data], subjecting itself in any way to the jurisdiction of this Court for any purpose other than enforcement of the confidentiality provisions of the Protective Order."); Doc #441 ¶¶ 33(l), 34(j) ("Neither the receipt of [MDL discovery]…nor the provision of the certification [to be bound by the Protective Order] shall in any way be deemed a submission, by the claimant represented by counsel in such outside litigation, to the jurisdiction of this Court or any other federal court or a waiver of any jurisdictional arguments available to such claimant,

directly contravenes these orders but- in an extraordinary bait and switch- now endeavors to use the ARCOS and other discovery productions as one of the bases for the requested holdback. Proposed Order at 2.

The MDL Participation Agreement similarly assured political subdivision counsel that common benefit assessments would occur only for those who **voluntarily** signed it.

> This Participation Agreement is a **voluntary** (emphasis added) Participation Agreement between Plaintiffs' attorneys who have cases pending in the MDL and/or in state court. This Participation Agreement supplements and does not in any respect supplant any of the provisions of the Court's [Protocol Order], all of which provisions are incorporated by reference…
>
> Participating Counsel further recognize the **separate and independent rights of each jurisdiction** (emphasis added) and of the litigants therein to fully represent the interests of their clients, including the right to conduct discovery, set case for trial, conduct jury trials and/or resolve cases. **The Agreement and [Protocol Order] shall not be cited by a party to the Participation Agreement in any other court in support of a position that adversely impedes the jurisdictional rights and obligations of the state courts and state court Participating Counsel** (emphasis added).

And yet the Motion does exactly that. *See, e.g.,* Proposed Order at 1 (relying on Protocol Order) and fn #1 (invoking Participation Agreement).

Likewise, the Negotiation Class Certification Order and Clarifying Class Order both expressly assured political subdivisions of the Court's commitment to non-interference in state proceedings. *See* Point II, *infra.* And nowhere in the initial class notice were political subdivisions informed that an additional 7% of any recovery would be held back from

---

provided, however, that any such recipient of documents or information produced under this Order shall submit to the jurisdiction of this Court for any violations of this Order.").

distribution.[3] In this regard, the Motion violates Fed. R. Civ. P. 23 and basic principles of due process and informed consent. As the Attorneys General correctly put it in their February 24, 2020 opposition to the proposed order ("AG Opp."):

> To the extent that the PEC's filing implies that this Court's previously entered negotiation class certification order is a basis to distinguish the above-cited case law and supports a common benefit assessment against parties who have not filed individual actions in the MDL, it is wrong even if the certification order is affirmed. This Court's certification order emphasized the limited and optional purpose of the certification, with no mention of creating jurisdiction for a common benefit fund order. *See, e.g.,* Doc #2591 ¶ 13, at 6 ("The Order does not certify the Negotiation Class for any purpose other than to negotiate for the class members with the thirteen (13) sets of national Defendants identified above."); Doc #2590, at 3-4 ("[T]here is nothing coercive about this process…There is nothing exclusive about this process…And there is nothing intrusive about this process…"). Additionally, the proposed common benefit fund order cannot rely on the Negotiation Class to create jurisdiction because the assessment would cover local governments that *opted out* of the negotiation class. Doc #3112-1 §§ 1,2(c), at 4-5 (covering all "potential members" of the Negotiation Class.)[4]

AG Opp. at 6, Doc. #3181.

In addition, there is no scenario in which the PEC can claim that sharing ARCOS data or other discovery with the undersigned supports a common benefit assessment. The undersigned have been clear with this Court and the PEC- through their refusal to sign any Participation Agreement, their refusal to agree to MDL jurisdiction, their insistence on

---

[3] The Affidavits of Peter H. Weinberger, Esq. dated February 11 and February 12, 2020 [Docs. ##3165 and 3166] make clear that the 33,000 or more unfiled cities and counties would only be aware of the PEC's Motion if they happen to monitor the Negotiation Class website where it was posted barely two weeks before the opposition deadline.

[4] As the Attorneys General properly note, "[s]hould the negotiation class withstand appellate review and the PEC negotiate a settlement for the certified class, it is entitled to obtain fees from the fund its efforts have created. However, it is inappropriate for the PEC to obtain compensation for a class settlement from litigants who are not part of the class," such as the undersigned. AG Opp. at fn. 8.

4

having their remand motions heard, their opting out of the Negotiation Class, and otherwise
through email, telephonic and in-person meetings over nearly a two-year period- that they
would not consent to this Court's jurisdiction over them or contribute to the MDL
plaintiffs' attorneys' fees. Reference to the AG Opp. is again appropriate:

> Although some States accepted the PEC's invitation to share discovery, they
> did this based on the express acknowledgements from both Court, in May 15
> and June 11, 2018 Protective Orders, and from the PEC in its "Sharing
> Agreement with States Attorneys General" filed on July 19, 2019, that these
> actions would not result in a common benefit assessment or in the exercise
> of federal court jurisdiction.
>
> *It would be profoundly inequitable for this Court to now reverse course and
> order an assessment on State case recoveries to fund a common benefit fund.
> The States sought and received assurances that this would not happen, from
> both the PEC and the Court, and they relied on those assurances in
> coordinating to the extent that they did with the MDL.*

*Id.* at 4-5 (fn omitted) (emphasis added).

In addition, the record is devoid of any justification for the amount sought. There is
no accounting for time spent by PEC Counsel in connection with the Negotiation Class
from which the undersigned opted out; there is no detail on the extent to which PEC
Counsel's hours are attributable to Purdue, the Track 1 Settlements or other settlements;
there is no alignment of the request to time spent for particular defendant groups. It is
reasonably expected that the vast majority of PEC time has been spent on the Negotiation
Class, Purdue and defendants in the Track 1 cases. Track 1 Settlements include at least
Amerisource Bergen, Cardinal Health and McKesson ($215 million); Endo ($10 million
and $1 million drugs); Allergan ($5 million); Mallinckrodt ($24 million and $6 million
drugs); J&J ($10 million and $5 million costs and $5.4 million targeted donations); Teva

($20 million and $25 million of Suboxone); Henry Schein ($1 million towards educational foundation and $250K in costs). And, *critically*, this Court has already ordered a common benefit assessment on these amounts. [Doc. #2980]. Neither law nor equity will support what would amount to a double recovery by permitting the assessment contemplated here.

Add to the foregoing that the PEC has conducted this MDL in a singularly non-transparent and uncooperative manner- a most unfortunate election by leadership given the demonstrated commitment of the undersigned to meaningful and timely prosecution of important state law claims designed to abate what remains, undeniably, one of the most serious health crises ever to impact this county. *See* Point VI, *infra*. Indeed*, the lack of transparency continues through the date of this filing.* The undersigned are aware- through their discussions with the State Attorneys General (not the PEC)- that this Court now has scheduled a distributor settlement conference for *tomorrow*- Friday, February 28, 2019 to which the Distributors, Attorneys General and PEC *alone* are invited. Such exclusionary and counter-productive engagement does nothing to serve what should be the overarching objective of all involved: to deliver prompt and maximum relief to the communities harmed by the devastating opioid crisis.[5]

The inappropriateness of the overreach is compounded by the PEC's failure to work up (or even identify) key defendant groups (retailers and PBMs) in a timely fashion.

---

[5] The AG Opp. correctly observes "[t]he PEC's attempt [to] impose a common benefit assessment against *all* proceeds put into such a fund is exceptionally counterproductive, given all the work that has gone into developing [a settlement framework that would allow for maximum relief and global peace], and the urgent need for constructive interaction between state and local actors to address this crisis effectively." AG Opp. at 7.

Notwithstanding that the overwhelming amount of PEC time has almost certainly been spent on Purdue, the Track 1 defendants and the Negotiation Class from which the undersigned opted-out, the Motion rests on the proposition that the undersigned and the State Attorneys General (the very parties actively developing claims against these critical defendants) are- in effect- mere "free-riders" from whom a common benefit tax is appropriate. As set forth more fully in Point V, *infra*, and the AG Opp., this foundational proposition is untethered to reality and a baseless assault on meaningful contributions ongoing by all committed to address this crippling public health crisis.

Fortunately, there is an alternative to the improper overreach contemplated by the Motion. This alternative has already been embraced by the PEC in the context of the Purdue Bankruptcy proceeding. There, the PEC agreed that any common benefit order will not apply to certain claimants in the Purdue Bankruptcy.[6] The undersigned respectfully submit that similar exclusionary language should be included in the Proposed Order under consideration here and would resolve the concerns presented, including by the State Attorneys General. Specifically, the Proposed Order may be amended to provide that:

---

[6] The exclusionary language, believed to be agreed by the PEC, the Purdue entities and the Special Master here is "Notwithstanding any other provisions of this Order, nothing herein shall apply to or affect the chapter 11 cases jointly administered and docketed as *In re Purdue Pharma L.P., et al.*, No. 19-23649 (Bankr. S.D.N.Y.) and any associated adversary proceedings and appeals (together, the "**Purdue Bankruptcy**"), including, without limitation, any settlement, judgment, plan, or order entered or approved in relation to the Purdue Bankruptcy (a "**Purdue Bankruptcy Order**"). Without limiting the foregoing, no party or attorney shall be obligated by reason of this Order to pay or withhold any assessment on any settlement or other recovery of any kind obtained from or provided by the debtors ("**Debtors**") in the Purdue Bankruptcy or by such Debtors' owners or affiliates pursuant to a settlement or plan of reorganization or otherwise in the Purdue Bankruptcy."

Notwithstanding any other provisions of this Order, nothing herein shall apply to or affect the cases that opted out of the Negotiation Class; the cases that are proceeding in State venues or State MDLs; unfiled cases; the cases that were removed and transferred to this Court with remand motions subject to the moratorium orders of this Court (Docs. ##130, 1987); and the cases where the plaintiff or the State has not agreed to be bound by and assessed under the MDL 2804 Participation Agreement. In addition, notwithstanding any other provisions of this Order, nothing herein shall apply to or affect any case against any defendant that files for bankruptcy on or after the date of this Order. As to all of the foregoing, no State, party or attorney or any un-filed claimant shall be obligated by reason of this Order to pay or withhold any assessment on any settlement or other recovery of any kind obtained from or provided by the defendants in this action, or any debtors in any future bankruptcy, (or by such Debtors' owners or affiliates pursuant to a settlement or plan of reorganization or otherwise in such bankruptcy proceedings) without the express written agreement of the party, attorney, or un-filed claimant voluntarily opting in to an holdback or assessment by this Court and consenting to this Court's general jurisdiction.

This alternative approach would pass legal muster (unlike what the instant Motion seeks) and also- critically- avoid unnecessary, protracted motion practice on what should be issues ancillary to collective good faith efforts to abate an ongoing national health crisis.

## ARGUMENT

### I. The Court Lacks Jurisdiction to Order the Requested Holdback Over Non-MDL Cases

The motion contemplates a 7% assessment against political subdivisions over whom this Honorable Court has no jurisdiction whatsoever. These are local governmental entities who purposefully filed their state law claims in state court only to be improvidently removed by defense counsel and thereafter transferred to this Court where their fully briefed remand motions have been pending many months *sine die*.

These are also local governmental entities who affirmatively opted out of the Negotiation Class, a class under significant appellate challenge and that- at moment-

appears designed only to serve PEC Counsel interests. Indeed, the **only** parties who have embraced the Negotiation Class for any purpose is the PEC in the context of this overreaching premature Motion. To the extent the requested assessment includes any time associated with the Negotiation Class, it is especially improper given that the undersigned represent public entities who affirmatively opted-out. It is further unclear whether the Negotiation Class will be used for any negotiation or settlement. Indeed, to date, no negotiations or funds have passed through the Negotiation Class, and the class is being actively challenged by political subdivisions and defendants in the Sixth Circuit.

As set forth more fully below, none of the "contemporary MDL" cases cited by the PEC[7] in support of the Motion involve actions where the assessment or holdback reach cases or political subdivisions involuntarily participating in an MDL with improvidently-removed state claims, who have vigorously resisted federal jurisdiction, have opted out of a class and have refused to sign any participation agreement. The Motion implies that every mass action MDL is subject to the creation of a global, mandatory "common fund." But this MDL has none of the traditional indicators of a "common fund" case where the defendant(s) voluntarily undertake the establishment of a separate fund to pay class counsel's costs and fees, where the plaintiff's attorneys have signed a Participation Agreement, or where the plaintiff voluntarily opts into a global master settlement agreement through a Participation Agreement or by accepting the terms of a Master Settlement Agreement.

---

[7] Proposed Order at 2.

To the contrary, here we have political subdivisions vigorously resisting federal jurisdiction over their pure state law claims, opting out of the Negotiation Class, relying on previous orders assuring of non-interference, and endeavoring to constructively address the havoc defendants have wrought in their respective communities as expeditiously as possible. The Motion conveniently ignores all of the foregoing – behaving as if the PEC work represents the universe of what is driving resolution forward. As the progress of the State litigation and the AG Opp. make plain, nothing can be further from the truth. It is axiomatic and undeniable that maximum pressure will yield most constructive results. The Court's prior orders acknowledge and embrace this fundamental proposition. The Motion does not. It represents an improper effort to interfere with the prosecution and independence of the state proceedings, contrary to the law and fundamental principles of comity and fairness.[8]

It is well settled that the authority for consolidating cases on an order of the judicial panel on multi-district litigation does not expand the jurisdiction of either the transferor or the transferee court. *In re Showa Denko K.K. L-Tryptophan Products Liability Litigation II*, 953 F.2d 162, 165 (4th Cir. 1992). There, the Fourth Circuit struck the portion of an MDL judge's order applying plaintiffs' expense fund assessments to "actions venued in state courts, untransferred federal cases, and unfiled claims in which any MDL defendant

---

[8] In addition, if imposed, the proposed order would effectively enjoin and coercively interfere with the ordinary prosecution of state litigation, arguably a violation of the Anti-Injunction Act. *See In re Federal Skywalk Cases,* 680 F.2d 1175, 1183 (1982) citing *Atlantic Coastline R. Co. v. Locomotive Engineers*, 398 U.S. 281, 296-97 (1970) (any doubts "should be resolved in favor of permitting the state courts to proceed in an orderly fashion").

is a party or payor." *Id.* at 164. The appeals court found that, "[t]he authority for consolidating cases on the order of the judicial panel on multi-district litigation . . . is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred." *Id*. at 165. In addition, "[t]he district court simply has no power to extend the obligations of its order to" claimants or plaintiffs not before the district court. *Id*. at 166.

Showa Denko further explains that "any attempt without service of process to reach others who are unrelated is beyond the court's power" (*id.* at 166), citing *Hartland v. Alaska Airlines,* 544 F.2d 992, 1002 (9th Cir. 1976). In *Hartland*, the MDL court ordered a law firm to deposit 5 percent of settlement proceeds of a state case to the United States District Clerk of Court as contribution to a common benefit fund. *Id.* at 996. The Ninth Circuit found that the MDL Judge was without jurisdiction to compel contribution to the fund and ordered that the Clerk of Court return the money. *Id.* at 1001-02.

The United States Court of Appeals for the Eighth Circuit also affirmed this conclusion in *In re Genetically Modified Rice Litigation*, MDL 1811, concluding that the district court lacked jurisdiction over state-court plaintiffs and did not have the power to order parties in cases not properly before it to contribute to a common benefit fund. *See In re Genetically Modified Rice Litig.*, 764 F.3d 864 (8th Cir. 2014).

In that case, the district court had ruled that it lacked jurisdiction to require defendant Bayer to hold back percentages of settlements and judgments obtained outside the MDL. *See In re Genetically Modified Rice Litig*., 2010 WL 716190, at **4–5 (E.D. Mo. Feb. 24, 2010). In so doing, the MDL judge observed that, "[m]ost cases considering

11

this issue have reached the same conclusion." *Id*. at *4. The Eighth Circuit affirmed, agreeing that the district court "did not have jurisdiction to order holdbacks from state-court plaintiffs' recoveries." 764 F.3d at 873. The appellate decision explains the jurisdictional impediment:

> Although district courts have discretion in orchestrating and conducting multi-district litigation, "[t]he authority for consolidating cases on the order of the judicial panel on multi-district litigation ... is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred." *In re Showa Denko K.K. L.–Tryptophan Prods. Liab. Litig.–II*, 953 F.2d 162, 165 (4th Cir.1992). Thus, notwithstanding 28 U.S.C. § 1407, the district court does not have the power to order parties in cases not before it to contribute to the Fund. *See Id*. at 166; *Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir.1976).

764 F.3d at 873–74.

The Eighth Circuit also addressed and rejected the rationalization that plaintiffs' counsel also represented clients in the federal MDL. *Id.* at 874. Specifically rejecting both of these arguments, the decision explains that the "state-court cases, related or not, are not before the district court," and that, "[e]ven if the state plaintiffs' *attorneys* participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court *plaintiffs* and Bayer." *Id. See, also,* AG Opp. at 6, citing *In re Genetically Modified Rice Litig.* 764 F.3d at 874 ("[n]or is there any jurisdictional basis to attach common benefit fees based on the counsel that a state court litigant has chosen to hire, as the proposed order seeks to do.").

These federal appeals court decisions represent the prevailing wisdom on the limits of jurisdictional reach. For example, *Showa Denko* and *Hartland* were cited by the United States District Court of Minnesota in support of the court's conclusion that "this Court does

not have jurisdiction to order a holdback in cases not transferred to this Court," that the pretrial order requiring defendants' deduction of 6% to be paid into the MDL fee and cost account must be amended to exclude cases not transferred to the court by the JPML, and vacated the Special Master's assessment accordingly. *In re Baycol Prod.,* MDL No. 1431, 2004 WL 190272, at **1-2 (D. Minn. Jan. 29, 2004). In discussing the jurisprudence, the *Baycol* decision found no authority justifying common benefit assessments on cases not before the court. *Id.* at *4 ("Neither the Plaintiffs' Steering Committee or Bayer Corporation provided the Court any contrary authority.").

Likewise, in the NFL Concussion MDL, the MDL Court found jurisdiction only where the defendant had "**voluntarily** undertaken the establishment of a separate fund to pay **class counsel**'s costs and fees," such that "the case [was] most appropriately reviewed as a common fund case." *In re NFL Player's Concussion Injury,* MDL No. 2323, 2018 WL 1635648, at *8 (E.D. Pa., Apr. 5, 2018)(emphasis added). Here, the holdback or assessment is neither by or on behalf of class counsel (or any class that has entered into a Master Settlement Agreement), and the defendants are not voluntarily agreeing to the holdback on cases, whether such cases are within or outside this Court's direct jurisdiction.

Similarly, in *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2015 WL 2165341 (D. Kan. May 8, 2015)  plaintiffs' leadership counsel was expressly denied a request for a holdback on cases filed in state court and cases that remained unfiled. The *Syngenta* court's argument and conclusion, directly applicable here, are more fully reflected below:

13

Syngenta objects to the requirement of a holdback in cases outside the MDL (essentially, those in state court and those that have not been filed in any court) in which the claimant's attorney has not executed a participation agreement agreeing to be bound by the court's common benefit order. Syngenta argues that the court has no jurisdiction or authority to bind parties who are not before the court in the MDL and who have not agreed to be bound voluntarily. Syngenta further argues that such a holdback requirement could subject it to conflicting obligations – for instance, a state court might require Syngenta to pay the full amount of a judgment to a plaintiff despite this court's order requiring it to withhold a portion of that judgment. *The court agrees that it lacks jurisdiction to subject such parties to the obligations of a common benefit order, and it therefore sustains this objection.*

*Id*. at *4 (emphasis added).

Consistently, the United States District Court, Northern District of Indiana, cited *Showa Denko* in support of its conclusion that the court lacked jurisdiction over cases not before the court "even though it's possible that attorneys in state or federal cases might use the work done by co-lead and MDL counsel before this court." *In re FedEx Ground Package Sys., Inc., Employment Practices Litig*., No. 3:05-MD-527 RM, 2011 WL 611883, at *3 (N.D. Ind. Feb. 11, 2011). The court ruled that "counsel's proposed language applying their proposed order to cases 'derivative' of the MDL or that 'rely on the work performed in the MDL' is outside the scope of this court's power to order." *Id*.

Following *Genetically Modified Rice* and *Hartland,* the United States District Court, Northern District of California, explained that:

While I may have jurisdiction over the defendants—obviously essential parties to any negotiated settlement and the payors of any judgments—*that does not mean I have jurisdiction over the recoveries belonging to opt-outs who are not before me*. That these potential opt-outs are currently class members in a certified class and under my jurisdiction does not change my analysis. *Once a class member opts-out, it is no longer a party to any case before me and I no longer have jurisdiction over it or over the monies due to*

14

> it (absent their filing a new action in federal court which is transferred to
> this MDL proceeding).

*In re Lidoderm Antitrust Litig*., No. 14-MD-02521-WHO, 2017 WL 3478810, at *3 (N.D.

Cal. Aug. 14, 2017)(emphasis added). *See also In re Linerboard Antitrust Litig*., 292 F.

Supp. 2d 644, 663-64 (E.D. Pa. 2003)(finding that the court lacked jurisdiction over cases

not formally transferred into the MDL, and refusing to order sequestration of funds from

settlements and other recoveries in un-transferred cases) (citing *Showa Denko* and

*Hartland*); *In re OSB Antitrust Litig*., No. 06-826, 2009 WL 579376, at *3 (E.D. Pa. Mar.

4, 2009)("My conclusion that I am without jurisdiction over the opt-outs is consistent with

those reached in analogous cases.") (citing *Showa Denko*, 953 F.2d at 165-66; *Hartland*,

544 F.2d 992; *Linerboard Antitrust*, 292 F. Supp. 2d 644); *In re Baycol Prod*., MDL No.

1431, 2004 WL 1058105, at *3 (D. Minn. May 3, 2004)("The Court concurs with the

*Showa Denko* and *Linerboard* courts: 'a transferee court's jurisdiction in multi-district

litigation is limited to cases and controversies between persons who are properly parties to

the cases transferred.'") (citing *Showa Denko*, 953 F.2d at 165–66; further citation

omitted). *Cf. also In re Cmty. Health Sys., Inc.,* No. 15-CV-222-KOB, 2016 WL 4732630,

at *2 (N.D. Ala. Sept. 12, 2016)("the establishment of personal jurisdiction over CHSI in

one transferor forum of this MDL . . . does not confer to this transferee court personal

jurisdiction over CHSI for all other claims asserted against CHSI by *all* other Plaintiffs in

the MDL's Consolidated Amended Complaint where the other transferor jurisdictions

could not establish jurisdiction over CHSI.") (citing *Showa Denko*, 953 F.2d at 165;

*Genetically Modified Rice*, 764 F.3d at 873-74; further citation omitted).

None of the PEC authorities suggest an alternative conclusion. None involved improvidently-removed state cases filed by political subdivisions resisting federal jurisdiction who also affirmatively opted out of a class and who declined to sign participation agreements and are, among other things, endeavoring to protect an abatement fund designed to address an ongoing national health epidemic. *Trustees v. Greenough*, 105 U.S. 527 (1881)(no improvidently-removed cases; no opt outs; no assessments where participation agreement not signed; no assessment on an abatement fund designed to address national health crisis); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1884)(same plus no political subdivisions); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939)(same); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970)(same); *Boeing v. Van Gemert*, 444 U.S. 472 (1980)(same); *In re Avandia Marketing, Sales Practices, and Prods. Liab. Litig.*, MDL No. 1871, 2012 WL 6923367 (E.D. Pa. 2012)(same); *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977)(same); *In re Cook Medical, Inc., Pelvic Repair Systems*, 365 F. Supp. 3d 685, 695 (MDL No. 2440) (S.D.W.V. 2019)(same). *See also In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 525-29 (D. Nev. 1987)(no opt outs; no assessments without participation agreements; no assessment on an abatement fund); *In re Zyprexa Prods. Liab Litig.*, MDL No. 1596, 467 F. Supp. 2d 256, 265-267 (E.D.N.Y. 2006)(same); *In re Sulzer Hip Prosthesis and Knee Prosthesis Prods. Liab. Litig.*, 268 F. Supp. 2d 907 (N.D. Ohio 2003), *affirmed*, 398 F.3d 778 (6th Cir. 2005)(same); *In re Aqueous Film-Forming Foam Prods. Liab. Litig.*, MDL No. 2873, Dkt No. 72 (D.S.C. Apr. 29, 2019)(same); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 274 F. Supp. 3d 485, 510 (W.D. La. 2017)(same); *In re*

*Bard IVC Filters Prods. Liab. Litig.*, MDL No. 2641, Dkt No. 372 (D. Ariz. Dec. 18, 2015)(no political subdivisions; no opt outs; no abatement fund); *see also In re Bard IVC Filters,* MDL No. 2641, 2018 WL 4279834 (D. Ariz., Sep. 7, 2018) at *1 (same); *In re Ivokana Prods. Liab. Litig.*, No. 3:16-md-02750, Dkt No. 58 (D.N.J. Mar. 21, 2017)(same); *In re Gadolinium Based Contrast Agents Prods. Liab. Litig.*, No. 08-GD-50000, Dkt No. 277 (N.D. Ohio Feb. 20, 2009)(same).

To the contrary, each of these cases confirm that the question whether a common benefit holdback is acceptable turns on whether the client has accepted the MDL Court's jurisdiction. *See In re General Motors LLC Ignition Switch Litigation*, 2019 WL 5865112, *4 (S.D.N.Y. Nov. 8, 2019). Here, the PEC has made no showing that the state litigants, opt-out litigants, or unfiled claimants over whose cases the holdback reaches, have voluntarily accepted this Court's jurisdiction, nor could they. Certainly, the undersigned have not. Thus, a holdback against such cases is improper.

It also is suggested by the PEC that this requested holdback is proper on the basis that the Court has jurisdiction over the defendants. Wrong again. The caselaw is clear that the mere fact that the defendants are before this Court does not give the Court jurisdiction to involuntarily require a holdback against cases not properly before it. *See In re Showa Denko K.K. L– Tryptophan Prods. Liab. Litig.–II,* 953 F.2d at 165. Notwithstanding 28 U.S.C. § 1407, the Court does not have the power to order parties in cases not properly before it to contribute to a common fund. *See Id.* at 166; *Hartland,* 544 F.2d at 1001; *In re Genetically Modified Rice Litigation*, 764 F. 3d at 874 (string citation omitted); *In re Syngenta,* 2015 WL 2165341, at *4 ("The Court agrees with the Eighth Circuit that this

Court's jurisdiction over the defendant and some attorneys with respect to cases in the MDL does not grant it jurisdiction to issue orders requiring assessments in cases not before this Court.").

Thus, the Court lacks jurisdiction to order the holdback against settlements that cover such claimants and the holdback should be limited to cases in the MDL where counsel has voluntarily signed the MDL Participation Agreement and the case is settled subject to a Master Settlement Agreement in this MDL.

## II.     The Motion is Premature and Vitiates the Court's Prior Orders

The Motion is premature insofar as there is no Master Settlement Agreement or Common Fund under consideration. The PEC's own authorities tell us that the "common fund doctrine" allows a court to distribute attorney's fees from a common fund created by settlement or judgment in a class action. *Trustees v. Greenough*, 105 U.S. 527, 534 (1881); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 124 (1884); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1939); *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980). *See* Motion at 2, 3. There is no settlement or judgment in a class action here. The undersigned opted out of the Negotiation Class and no defendant has elected to utilize the Negotiation Class. Moreover, the Motion contradicts this Honorable Court's Orders regarding the Negotiation Class and express terms provided to the political subdivisions through the Negotiation Class notice. Specifically, the Motion contradicts the September 22, 2019 Negotiation Class Order [Docs. ##2590 (Memorandum Opinion) and 2591 (Order)] and October 4, 2019 Order Clarifying Negotiation Class Certification Order [Doc.

18

#2713] ("Class Clarification Order") both of which provided, unequivocally, that the Negotiation Class was not intended to extend this Court's jurisdiction nor interfere with ongoing litigation.

Specifically, the Class Clarification Order recognized that,

> Some members of the Negotiation Class filed opioid-related lawsuits in state courts, had their cases removed by the defendant(s) to federal court, and then transferred to the MDL by the Judicial Panel on Multidistrict Litigation. In some of these actions, the plaintiffs are contesting removal, and seeking remand to state court, on the grounds that the federal court lacks subject matter jurisdiction over their individual cases.

Class Clarification Order at 3.

The Court made clear that "participation in the Negotiation Class will not, and shall not, be construed as consent to this Court's jurisdiction or to otherwise waive pending remand motions." *Id.* Further, "the Court again re-iterate[d] that:

> the Negotiation Class is not meant to affect any on-going litigation. As such, a Class member's decision to remain in the Negotiation Class in no way curtails its individual litigation, including its ability to seek remand of its individual action to state court on the grounds that the individual case falls outside the subject matter jurisdiction of the federal courts. Moreover, because federal subject matter jurisdiction cannot be created by the consent of the parties, *Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003) ("Subject-matter jurisdiction cannot be conferred by consent of the parties, nor can it be waived.") (citing *Alongi v. Ford Motor Co.*, 386 F.3d 716, 728 (6th Cir. 2004), a class member's choice to remain in a federal class action has no bearing on whether a federal court has subject matter jurisdiction over its individual lawsuit(s). A Class member's decision to remain in the Negotiation Class does, of course, subject it to the federal court's authority with respect to any matters pertinent to the class action itself.

*Id.* at 3-4.

The Motion contravenes both of these provisions. It also defies the Court's repeated admonishments against double recoveries insofar as it requests a 7% holdback without any

record of time spent on the Negotiation Class (from which the undersigned opted out), work done on Track 1 cases that have already settled (and which have already been assessed [Doc. #2980]) or defendant-specific time. Indeed, as written, the Motion and Proposed Order would seemingly permit the PEC to import hours related to the Negotiation Class or for which they have already been compensated into state court proceedings proceeding independently from the PEC work and beyond this Court's jurisdiction.

This Court made clear in its original Class Certification Order that:

> In the event a Class Member reaches a settlement or trial verdict, it may proceed with its settlement/verdict in the usual course without hindrance by virtue of the existence of the Negotiation Class. ***Such Class Member may not, however, collect on its individual settlement/judgment and also participate in any Class settlement fund.***

Negotiation Class Order at 6. This language was further clarified by the Court:

> Thus, if a Class member collects on an individual settlement or judgment against one defendant, it may not participate in any Class settlement fund *as to that defendant*, but otherwise may participate in Class settlements as to other defendants.

Class Clarification Order at 2. The Court noted that a contrary result would be inequitable:

> The underlying principle is that Class members should not be able to participate in a Class settlement if that participation is inequitable to other Class members or to the defendant, given any related recovery from the same defendant.

*Id.* The Court thus re-stated its original purpose:

> In the event a Class Member reaches a settlement or trial verdict, it may proceed with its settlement/verdict in the usual course without hindrance by virtue of the existence of the Negotiation Class. There is a presumption that such Class Member may not, however, collect on its individual settlement or judgment and also participate in any Class settlement fund with respect to the same defendant(s), but the presumption may be overcome in particular

circumstances, upon good cause demonstrated to the Court, after notice to the Class Representatives, Class Counsel, and the pertinent defendant(s).

*Id.* at 3. Notwithstanding these express holdings, the Motion seeks entry of an Order that would extend this Court's jurisdiction and permit double recoveries by the PEC.

The Motion also contradicts the Class Notice, FAQ 22 of the Opioids which provided:

> **If there is a settlement between a Defendant and a State or States, what impact will this Negotiation Class have on the division of monies between a State and the cities and counties within the State?**
>
> The Negotiation Class process does not interfere with a Defendant's ability to settle directly with one or more States. If a Defendant reaches a settlement directly with a State, nothing about this Negotiation Class process would affect the distribution of those settlement funds between the State and its own cities or counties. The Court has explicitly ordered that the Class's lawyers not involve themselves or the Class in the process of allocating monies secured by States between themselves and their counties and cities.

*See* http://www.opioidsnegotiationclass.info, FAQ 22.

The proposed 7% assessment or holdback against the contingency interests of political subdivisions where any Defendant reaches agreement with States and their political subdivisions is a direct interference in the allocation of monies between States and their respective counties and cities. It runs afoul of this MDL's assurances and the Negotiation Class assurances that this scenario would not happen.

Moreover, the 33,000 or more unfiled cities and counties, the bulk of whom are not even represented by counsel would only be aware of the PEC's Motion if they happen to

21

monitor the Negotiation Class website where it was posted barely two weeks before the opposition deadline. *See* Weinberger Aff. at 3.[9]

### III.    The Motion Violates the Terms of the Very Documents on Which it Purports to Rely.

In Case Management Order One this Court properly "acknowledge[d] that it has no jurisdiction over related State court proceedings." [Doc. #232]. And, indeed, this axiomatic principle has been repeated in numerous orders since. For example, the Court's Order Regarding Plaintiff Attorneys' Fees and Expenses – Protocol for Work Performed and Expenses Incurred (Doc. #358) ("Protocol Order") is- on its face- limited to those participating counsel who "agree to the terms and conditions herein, including submitting to the Court's jurisdiction and agreeing that the Court has plenary authority regarding the award of attorneys' fees and expense reimbursements in this matter." *Id.* at ¶¶ 1 and 4. It also expressly covers only "work performed and costs incurred in this MDL" and provides that participating counsel shall be able to receive attorneys' fees and reimbursement only where their work is "beneficial to the prosecution of the MDL". *Id.* Nothing in the Protocol Order supports the over-reach contemplated by the Motion.

Similarly, the Participation Agreement (Section I, ¶ A) provides:

PEC Participating Counsel recognize that plaintiffs who have cases pending in separate and independent jurisdictions are voluntarily agreeing to share common benefit work product developed in these jurisdictions, including the

---

[9] Nothing in the Negotiation Class Notice disclosed that the PEC would use any certification order as a basis for a common benefit assessment over and above the 25% deduction already made by virtue of the 10% fee deduction and 15% special needs deduction from the county and city bucket. An added, unnoticed surprise is that the proposed order would allow PEC or PEC-associated counsel who represent State Attorneys General to reimburse themselves out of the 7% assessment against the cities and counties.

> MDL, California, Connecticut, Illinois, New York, Pennsylvania, Texas, and other states. Participating Counsel further recognize the separate and independent rights of each jurisdiction and of the litigants therein to fully represent the interests of their clients, including the right to conduct discovery, set cases for trial, conduct jury trials ***and/or resolve cases***. *The Agreement and the Court's Order Regarding Plaintiff Attorneys' Fees and Expenses (Doc. #358)* ***shall not be cited*** *by a party to the Participation Agreement in any other court in support of a position that adversely impacts the jurisdictional rights and obligations of the state courts and state court Participating Counsel.*

*Id*. (emphasis added).

Moreover, the Participation Agreement is only provided to counsel who *voluntarily agree* to be subject to the Protocol Order and who expressly authorize an assessment against the cases *specifically identified* by the signatory of that Participation Agreement, whether in state or federal court. Participation Agreement, Section I, ¶ A, and Section II.

Neither the Protocol Order nor the Participation Agreement provide a basis for a global assessment against opioid cases. And yet, the proposed order purports to rely on both. Proposed Order at 1, 6, *et seq.*

Were it not abundantly clear through this filing, the political subdivisions identified below have not signed an MDL 2804 Participation Agreement nor otherwise agreed to bound for the purposes of the 7% common benefit fund to this Court's jurisdiction or alleged plenary power relative to attorneys' fees and expenses.

## IV.    The Motion Violates Texas Statute

The Motion, if granted, would be effective after September 5, 2019, and is violative of the requirement that any contingent fee from a political subdivision in Texas must be approved - *before* the legal work to be reimbursed is performed - by the political

subdivision and the Office of the Attorney General of Texas ("Texas OAG"). TEX. GOV'T CODE §2254.002 (1)(B), (C) or (D), as amended by H.B. No. 2826, 86th Legislature, 2019. To submit the proposed reimbursement for fee to the Texas Attorney General for approval, any such fee must first also be approved by each political subdivision itself. *Id.*

The MDL 2804 PEC has not made a Request for Review and Approval of contingent fee for legal services through any contract or amendment pursuant to the laws of Texas to any Texas political subdivision or to the Office of the Texas Attorney General. Any recovery of a percentage fee from a political subdivision in Texas is ineffective and unenforceable if made after September 5, 2019, unless and until review and approval of the Texas OAG under the terms of the statute. Assurances must also be made that no legal services will be or have been performed under the contract unless and until the contract is approved pursuant to §2254(b)-(c)(emphasis added). The PEC's Contingent Fee Assessment Motion seeks reimbursement against the contingency fee interests of Texas political subdivisions for legal services that will be or has been performed by the PEC and its progeny and therefore must be pre-authorized.

Under the Texas statute, the Texas OAG, upon proper application for review, has 90 days to reach a conclusion as to this request for approval after the fee has also been approved by each Texas political subdivision it is intended to reach[10]. *Id.*

---

[10] The scope of the PEC's Contingent Fee Assessment Motion and Proposed Order is such that under ¶ 2 (c) it applies to all of the 254 counties and approximately 1,214 municipalities in Texas simply because they were subject to the Court's definition of the Negotiation Class on the date certified on September 11, 2019. This is despite no Class Notice on this issue and no vote on the terms of any settlement, which would necessarily include any assessment of common benefit fee

Therefore, the Motion and Proposed Order are either wholly invalid, or at best premature as to any Texas political subdivision, and any entry of such should be denied and/or stayed unless and until such approval has been given.

## V.    The Motion Is Improperly Indiscriminate as to Defendant Groups

The Motion seeks entry of a global 7% assessment against all future settlements with any defendant or defendant group without acknowledging that a substantial part- if not the bulk- of PEC efforts to date have almost certainly involved work up of the Purdue case (which is now in bankruptcy), defendants in the Track 1 trial (already assessed) and the Negotiation Class (from which the undersigned opted out and which is under significant and diverse appellant challenge). The law does not support the importation of time related to that work into a common benefit assessment that may be attached to some future settlement against other defendants or defendant groups. *See In re Chinese-Manufactured Drywall Litigation,* 2019 U.S. Dist. LEXIS 32629 (Feb. 4, 2019) (common benefit fund available only in track associated with defendants for whom common benefit work was done). And, notably, the PEC cites no authority for the novel suggestion that it should be paid out of other defendants' settlements for work done against, for example, a bankrupt party against whom the PEC is also making claims in the bankruptcy proceeding.

The absurdity of the PEC overreach may be demonstrated through consideration of a hypothetical future PBM settlement. The Court will recall that the PEC did not even

---

interest against the Class participants out of any settlement. Such a vote was promised to those considering    whether    to    participate    in    the    Negotiation    Class.    *See* http://www.opioidsnegotiationclass.info, FAQs 14, 18, 19, 20 and 21.

include PBMs in this MDL until the importance of this defendant group in addressing the opioid epidemic was made plain during the course of Webb County, Texas's motion for a preliminary injunction against them. [Docs. ##978, 1144] Counsel for Webb County, the first in the nation to include PBMs in an opioid suit, also represent over 60 municipalities who filed pure state law claims in Virginia state courts. Is it truly the PEC's position that if the Virginia municipalities take their PBM claims to trial and succeed, or settle otherwise, that the PEC is entitled to 7% of that independently-achieved result? The Proposed Order would permit exactly that.

## VI. The Motion is Particularly Improper Given the Lack of Transparency Attendant with this MDL

In addition to the foregoing, the Motion is especially inappropriate given the unusual and regrettable lack of transparency and cooperation attendant with the instant MDL. Against all jurisprudence, the Motion effectively treats all litigants- even those who have affirmatively opted out- as members of a mandatory class instead of a quasi-class action involving individual claims, government claims, state claims, and various class actions. Consider by contrast the global resolution before the Honorable Eldon Fallon during the *Vioxx Products Liability Litigation*, MDL No. 1657, in the Eastern District of Louisiana. Judge Fallon achieved resolution of more than 60,000 claims on vastly different terms than the instant Motion and Proposed Order in this MDL are based. Specifically, Judge Fallon:

1. Reached an opt-in voluntary settlement negotiated by both MDL and state court litigants together;

2. Included subcommittees to the Plaintiffs' Steering Committee that were open to all attorneys who had clients and wanted to participate and was not limited to the members of the Steering Committee;

3. Focused on transparency in the litigation by creating a website accessible to all counsel and the general public that included the entire docket of important motions, responses, orders, notices, opinions, recent developments, discovery, a calendar of scheduled events, and other documents;

4. Held monthly status conferences that were noticed to all and open to the public, and then posted the transcript of the status conferences on the website for all to see;

5. Established a joint state and federal negotiating committee and, ultimately a joint fee committee with equal national representation by non-MDL counsel in state proceedings;

6. Did nothing to suppress 13 state court trials as a companion to the 5 MDL bellwether trials – one of which was by a non-MDL state court litigant counsel whose case was tried before Judge Fallon in New Orleans;

7. Upon filing of the PLC's Motion for Establishment of Common Benefit Assessment on January 20, 2009, the Motion was sent to all parties and announced by the Court at a public Status Conference. The Court thereafter invited any interested party to file a Notice of Objection by May 8, 2009, appointed an agreed mediator, and ultimately, after hearings, appointed liaison counsel for the objectors and held the objections open until such objections were withdrawn after agreement by the PLC to reduce the assessment request.

*See In re Vioxx Products Liability Litigation*, MDL No. 1657, 760 F. Supp. 2d 640, 640-647 (E.D. La. 2010) Vioxx litigation backstory as set out by the court).

The contrast with the instant proceedings is stark and important in that, while the PEC requests a global assessment against virtually all litigants state and federal:

1. There were no negotiations with Defendants to which state litigants were included or invited by the PEC (the Attorneys General have included the undersigned; the PEC has not);

2. State litigants with non-PEC associated firms, or federal litigants not associated with the PEC have been precluded from working on committees to aid in the MDL litigation -- with one exception (the motion

27

for injunctive relief from the PBM defendants filed by Webb County, TX, in which the PEC was invited to participate);

3. There has not been a focus on transparency in the docket; there is not transparency in pleadings- many of which have been sealed or not filed on the docket at all;

4. Status Conferences have been closed and not noticed; and the transcripts of Status Conferences have been sealed;

5. Despite promises by PEC leadership of inclusion on critical committees, no such inclusion has occurred;

6. Improvidently-removed state cases are subject to a moratorium on remands, except for one case returned to State Court where counsel was required to sign the MDL Participation Agreement before it would be returned;

7. Upon the original filing of the instant Motion and Proposed Order, no notice was given or hearing set, and only Defendants were invited to respond in a docket entry filed on the Court's ECF system but not on the public website. The Court later adjusted the briefing schedule to permit this opposition but as of its filing, on a two-week schedule, no hearing is calendared.

None of these odd choices by the PEC have been productive or necessary. To the contrary, the undersigned are members of an organized, informed, cooperating multi-state coalition that has met monthly since the filing of their respective cases in an effort to maximize pressure and efficiencies so that a national health crisis may be abated. While vigorously prosecuting their own state cases, this multistate group has made repeatedly clear to the PEC leadership its desire for cooperative, informed engagement in MDL efforts, and its respect for the work being done in this Honorable Court. Reciprocal respect and cooperation has not been forthcoming- an unusual and unnecessary choice given that the overarching objective here should be collective resolution of a national epidemic. These

unfortunate circumstances- utterly at odds with all of the authority upon which the Motion purports to rely- render the suggestion of a common benefit assessment even more inappropriate and inequitable and provide an independent basis for denial of the instant Motion.

## CONCLUSION

WHEREFORE, the Court is requested to add the following language to the proposed order:

> Notwithstanding any other provisions of this Order, nothing herein shall apply to or affect the cases that opted out of the Negotiation Class; the cases that are proceeding in State venues or State MDLs; unfiled cases; the cases that were removed and transferred to this Court with remand motions subject to the moratorium orders of this Court (Docs. ##130, 1987); and the cases where the plaintiff or the State has not agreed to be bound by and assessed under the MDL 2804 Participation Agreement. In addition, notwithstanding any other provisions of this Order, nothing herein shall apply to or affect any case against any defendant that files for bankruptcy on or after the date of this Order. As to all of the foregoing, no State, party or attorney or any un-filed claimant shall be obligated by reason of this Order to pay or withhold any assessment on any settlement or other recovery of any kind obtained from or provided by the defendants in this action, or any debtors in any future bankruptcy, (or by such Debtors' owners or affiliates pursuant to a settlement or plan of reorganization or otherwise in such bankruptcy proceedings) without the express written agreement of the party, attorney, or un-filed claimant voluntarily opting in to an holdback or assessment by this Court and consenting to this Court's general jurisdiction.

Dated February 27, 2020           Respectfully Submitted,

 /s/ Michael T. Gallagher
Michael T. Gallagher
TX Bar No. 07586000
**THE GALLAGHER LAW FIRM**
2905 Sackett Street
Houston, TX 77098
Tel: (713) 222-8080
Fax: (713) 222-0066
mike@gld-law.com

*Counsel for Certain Opt-Out Entities within the
State of Texas*

/s/ Mikal C. Watts
Mikal C. Watts
TX Bar No. 20981821
Shelly A. Sanford
TX Bar No. 00784904
Meredith Drukker Stratigopoulos
TX Bar No. 24110416
**WATTS GUERRA LLP**
811 Barton Springs Rd., Suite 725
Austin, TX 78704
Tel: (512) 479-0500
mcwatts@wattsguerra.com
ssanford@wattsguerra.com
mdrukker@wattsguerra.com

*State-Federal Liaison Counsel to the PSC for In
Re: Texas Opioid Litigation*

/s/ Kevin Sharp
Kevin Sharp
TN Bar No. 016287
Andrew Miller
MA Bar No. 682496
R. Johan Conrod, Jr.
VA Bar No. 46764
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203

Tel: (615) 434-7000
Fax: (615) 434-7020
ksharp@sanfordheisler.com
amiller@sanfordheisler.com
jconrod@sanfordheisler.com

*Counsel for Certain Opt-Out Entities within the
Commonwealth of Virginia*

/s/ W. Edgar Spivey
W. Edgar Spivey
VA. Bar No. 29125
**KAUFMAN & CANOLES, P.C.**
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Tel: (757) 624-3196
Fax: (888) 360-9092
wespivey@kaufcan.com

*Counsel for Certain Opt-Out Entities within the
Commonwealth of Virginia*

/s/ Joanne Cicala
Joanne Cicala
TX Bar No. 24052632
Joshua Wackerly
TX Bar No. 24093311
R. Johan Conrod, Jr.
VA Bar No. 46764
**THE CICALA LAW FIRM PLLC** 101
College Street
Dripping Springs, TX 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com
johan@cicalapllc.com
josh@cicalapllc.com

*Counsel for Certain Opt-Out Entities within the
Commonwealth of Virginia*

/s/ Robert T. Eglet
Robert T. Eglet
NV Bar No. 3402
Robert M. Adams
NV Bar No. 6551
Erica D. Entsminger
NV Bar No. 7432
**EGLET ADAMS**
400 S. 7th Street, 4th Floor
Las Vegas, NV 89101
Tel: (702) 450-5400
reglet@egletlaw.com
badams@egletlaw.com
eentsminger@egletlaw.com

*Counsel for Certain Opt-Out Entities within the
State of Nevada (except Clark County)*

/s/ Marc J. Bern
Marc J. Bern
NY Bar No. 1859271
Joseph Cappelli
PA Bar No. 55166
**MARC J. BERN & PARTNERS LLP**
One Grand Central Place
60 E. 42nd Street, Suite 950
New York, NY 10165
Tel: (212) 702-5000
mbern@bernllp.com
jcappelli@bernllp.com

*Counsel for Opt-Out Entities within the States of
Delaware, Ohio, Pennsylvania, South Carolina,
and West Virginia*

/s/ John B. White, Jr.
John B. White, Jr.
SC Bar No. 5996
Marghretta H. Shisko
SC Bar No. 100106
**HARRISON WHITE, P.C.**
178 W. Main Street (29306)
P.O. Box 3547

Spartanburg, SC 29304
Tel: (864) 585-5100
jwhite@spartanlaw.com
mshisko@spartanlaw.com

*Counsel for Opt-Out Entities within the State of
South Carolina*

/s/ Jeff Reeves
Jeff Reeves
CA Bar No. 156648
Cheryl Priest Ainsworth
CA Bar No. 255824
Kevin N. Royer
CA Bar No. 312185
**THEODORA ORINGHER PC**
535 Anton Boulevard, 9th Floor
Costa Mesa, CA 92626
Tel: (714) 549-6200
Fax: (714) 549-6201
jreeves@tocounsel.com
cainsworth@tocounsel.com
kroyer@tocounsel.com

*Counsel for Opt-Out Entities within the States
of Arizona, Missouri, Kansas, and Maryland*

## LOCAL RULE 7.1(f) CERTIFICATION

The Court's April 11, 2018 Case Management Order One, Section 2(h) states that the page limitations applicable to complex cases shall apply to the length of memoranda filed in support of motions. Under Rule 7.1(f), memoranda relating to dispositive motions in complex cases may not exceed thirty (30) pages.

I, Josh Wackerly, hereby certify that this *Opposition to Motion for Entry of Order Establishing Common Benefit Fund* complies with Local Rule 7.1(f) of the United States District Court for the Northern District of Ohio and the page limitations set forth therein.

Respectfully submitted,

/s/ Josh Wackerly
Josh Wackerly
The Cicala Law Firm PLLC
101 College Street
Dripping Springs, Texas 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
josh@cicalapllc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record at their e-mail addresses on file with the Court.

/s/ Josh Wackerly
Josh Wackerly