UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES:<br><br>*ALL CASES* | MDL 2804<br><br>Case No.: 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**GOVERNMENTAL PLAINTIFFS' OPPOSITION TO AMENDED MOTION FOR ENTRY OF ORDER ESTABLISHING COMMON BENEFIT FUND**

Without waiver of challenges and objections to jurisdiction, thirty litigating governmental subdivisions from the Commonwealths of Massachusetts, Pennsylvania and Virginia and the States of Connecticut, Florida and New Jersey (the "Opposing Governmental Plaintiffs")[1] submit this brief in opposition to certain plaintiffs' (the "Moving Plaintiffs'") January 28, 2020 Amended Motion for Entry of Order Establishing Common Benefit Fund, ECF No. 3112 (the "Common Benefit Motion"). This Court lacks jurisdiction to grant the relief requested in the Common Benefit Motion insofar as it purports to affect certain Opposing Governmental Plaintiffs'

---

[1] All the Opposing Governmental Plaintiffs are divided into four groups delineated by procedural posture: (1) state court plaintiffs that did not sign a participation agreement and opted out of the "negotiation class" ("Group 1"); (2) state court plaintiffs that did not sign a participation agreement but did not opt out of the "negotiation class" ("Group 2"); (3) plaintiffs that filed in state court but were removed and transferred to this venue despite unresolved motions to remand for lack of federal subject matter jurisdiction ("Group 3"); and (4) plaintiffs in the MDL that do not contest jurisdiction ("Group 4"). Group 1 consists of the Cities of Cambridge, Chicopee, Framingham, Gloucester, Haverhill, Salem, Springfield, and Worcester, Massachusetts, and the Towns of Canton, Lynnfield, Natick, Randolph, and Wakefield, Massachusetts. Group 2 consists of the Cities of New Britain, New Haven, and New London, Connecticut, the Town of Wallingford, Connecticut, the Counties of Bucks and Mercer, Pennsylvania, and the Townships of Warminster and Warrington, Pennsylvania. Group 3 consists of the City of Jacksonville, Florida, and the Town of Windham, Connecticut. Group 4 consists of the Cities of Paterson and Trenton, New Jersey, the City of Portsmouth, Virginia, the Cities of Middletown and Norwich, Connecticut, and the Towns of Enfield and Wethersfield, Connecticut. For the avoidance of doubt, the members of Groups 1, 2 and 3 join in all parts of this opposition brief; the members of Group 4 join in all parts of this opposition brief except Section I, *infra*.

1

recoveries through litigation in their home state courts.  The Common Benefit Motion should be denied in its entirety for the additional and sufficient reason that it is so ambiguous and excessive as to jeopardize global settlement negotiations currently under way, as well as the further prosecution in state court of pending actions against non-settling Defendants.

## PRELIMINARY STATEMENT

The Moving Plaintiffs reason from an unassailable premise—*i.e.,* that attorneys before this Court should be compensated for the reasonable value of their labor—to the legally unsustainable conclusion that this Court can and should simply "tax" plaintiff recoveries in disparate litigations all over the country in order to pay them.  This is relief that the Court cannot grant.

For the avoidance of doubt, the Opposing Governmental Plaintiffs do not gainsay the value of the work that the Plaintiffs' Executive Committee (the "PEC") and other plaintiffs' counsel have completed in the present multidistrict litigation (the "MDL").  These attorneys are entitled to just compensation for their important work.

But the Common Benefit Motion cannot legally effect this result, and to enter it in its current form and level of assessment will have adverse and far-reaching consequences.  Through the Common Benefit Motion, the Moving Plaintiffs ask the Court to impose a 7% assessment on, *inter alia*, any recoveries by plaintiffs like the Opposing Governmental Plaintiffs, many of whom are (or should be) litigating in foreign jurisdictions and have not signed the PEC's participation agreement or otherwise subjected themselves to the Court's jurisdiction.  The Court lacks jurisdiction to grant this relief.  *See* Section I, *infra*; *see also In re Genetically Modified Rice Litig.* ("*Rice I*"), 764 F.3d 864 (8th Cir. 2014); *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162 (4th Cir. 1992); *Hartland v. Alaska Airlines*, 544 F.2d 992 (9th Cir. 1976).

Nor should the Court grant the requested relief, even where it is within its power to do so. The order that the Moving Plaintiffs seek (the "Proposed Order") is fatally unclear as to the scope of the recoveries that will be subject to the proposed 7% assessment, and also as to the mechanics of the assessment itself. As 37 state and territorial attorneys general (the "Attorneys General") have already informed the Court in their February 24, 2020 letter (the "AG Letter"), ECF No. 3181, such a vague and overbroad order can only work to sabotage the attempts currently under way to achieve a global settlement to the opioid litigation. While the counsel signing this opposition are not at liberty to disclose the specifics of the current settlement negotiations, it should be obvious from what has been publicly disclosed that any multi-billion-dollar resolution spearheaded by the Attorneys General would necessarily entail requests by the Distributor Defendants and Johnson & Johnson for broad releases and the resolution of claims for attorneys' fees, including by the MDL counsel. For that reason, the Proposed Order is unnecessary to protect the interests of the MDL PEC or to reach a fair allocation of the available total fees among counsel prosecuting these cases in different jurisdictions.

## STATEMENT OF FACTS

The Moving Plaintiffs filed the current versions of the Common Benefit Motion and the Proposed Order on January 28, 2020. The motion landed amidst ongoing settlement negotiations between the Attorneys General and certain Defendants, including the three major distributors and Johnson & Johnson, in the pending opioid litigation. Although the parties to these discussions did not publicly disclose all the details of the settlement framework under discussion, it has been widely disclosed in the press that any settlement would be between the Defendants and the states, would involve cash payments over time of at least $22 billion, and that the states would allocate settlement proceeds to and among their subdivisions. Accordingly, a global settlement between

the Attorneys General and the Defendants likely would not have utilized the "negotiation class" certified by the Court in its September 11, 2019 order. *In re. Nat'l Prescription Opiate Litig.*, 1:17-md-2804 (Sept. 11, 2019), ¶ 18, ECF No. 2591.  Nor will settlement funds likely flow through the MDL.  An Attorneys General-led settlement would therefore have limited the Court's ability to levy assessments for a common benefit fund against the recoveries of governmental subdivisions that are not subject to the Court's jurisdiction.

Many of the Opposing Governmental Plaintiffs are not subject to the Court's jurisdiction. These Opposing Governmental Plaintiffs are either litigating their opioid claims in state court or contesting federal subject matter jurisdiction before the MDL.  Critically, neither the Opposing Governmental Plaintiffs nor their counsel have signed the PEC's participation agreement.

Yet, despite the Court's lack of jurisdiction as to many of the Opposing Governmental Plaintiffs, the Proposed Order purports to levy its 7% assessment against their potential state court recoveries.  The Proposed Order would achieve this improper result by two routes:

*First*, the Proposed Order purports to reach the Opposing Governmental Plaintiffs' state court recoveries to the extent that they or their attorneys "have relied upon, used, accepted, or have had access to MDL generated work product whether with the express approval of the PEC or not." Proposed Order §1.  Although "MDL generated work product" is not expressly defined in the Proposed Order, work product is described earlier in the Proposed Order to include "the production, processing, and sharing of the massive Automated Reports and Consolidated Ordering System ('ARCOS') database, which has been programmed, analyzed, and shared, in a user-friendly format . . . with counsel litigating state court actions." Proposed Order at 2.  But, as was recently set forth in the AG Letter, state and federal opioid litigants—including the Opposing

4

Governmental Plaintiffs—were not subject to assessments for any common benefit fund when the ARCOS data was made available to them. *See* AG Ltr. at 5 n.7.

***Second***, the Proposed Order purports to reach the Opposing Governmental Plaintiffs' state court recoveries because, as governmental subdivisions, they are "potential members of the Negotiation Class." Proposed Order §§2.c(2), 1(1). However, as the AG Letter describes, the Court's certification of the Negotiation Class emphasized the limited and optional purpose of the certification, with no mention of creating jurisdiction for a common benefit order. AG Ltr. at 6; Doc #2591, ¶13 at 6 ("The Order does not certify the Negotiation Class for any purpose other than to negotiate for the class members with the thirteen (13) sets of national Defendants identified above."); Doc # 2590, at 3-4 ("[T]here is nothing coercive about this process. . . . There is nothing exclusive about this process. . . . And there is nothing intrusive about this process. . . ."). Even if membership in the Negotiation Class did establish jurisdiction as to the member, many of the Opposing Governmental Plaintiffs opted out of the Negotiation Class.

Accordingly, the Proposed Order as currently written purports to reach the recoveries of litigants over whom the Court lacks jurisdiction.

As to both those litigants as well as other litigants properly within the Court's jurisdiction, the Proposed Order purports to levy an assessment of 6% for fees plus 1% for costs (i.e., a 7% tax) against the "Gross Monetary Recovery." Gross Monetary Recovery includes all recoveries by the Opposing Governmental Plaintiffs "whether characterized as damages, abatement costs, or anything else," Proposed Order §2.d(2), as well as "[t]he value of non-cash products or services provided by a Defendant." Proposed Order §2.d(3). Gross Monetary Recovery also appears to include recoveries in state attorney general actions that do not resolve or satisfy a state's "damages claims." Proposed Order §2.c. As explained in the AG Letter, it is not clear from the Proposed

5

Order whether money assigned to state abatement funds will be subject to assessment. AG Ltr. at 7.

## ARGUMENT

I.  **THE COURT LACKS JURISDICTION TO IMPOSE THE PROPOSED ORDER**

Copious federal case law demonstrates that the Court lacks jurisdiction to levy assessments against the recoveries of state court plaintiffs that have not signed participation agreements with MDL counsel. *Rice I*, 764 F.3d at 874 ("the district court does not have the power to order parties in cases not before it to contribute to the [common benefit] Fund."); *Showa Denko*, 953 F.2d at 166 ("The order thus compels contributions from plaintiffs in state or federal litigation who are not before the court . . . The district court simply has no power to extend the obligations of its order to them."); *Hartland*, 544 F.2d at 1001 ("the District Court had not even a semblance of jurisdiction—original, ancillary or pendent—to order anything or anybody, and least of all to compel lawyers who were not parties to the action to pay $3,250 into a fund."); 15 Fed. Prac. & Proc. Juris. § 3866 (4th ed.) ("although a transferee judge . . . can require parties in the MDL cases to make payments into a common discovery fund, that authority does not extend to parties or attorneys involved in related state court proceedings, un-transferred federal cases, or unfiled claims.").

Faced with a fact pattern nearly identical to the one at bar, the District of Kansas affirmed the defendant's argument that "the Court has no jurisdiction or authority to bind parties who are not before the Court in the MDL and who have not agreed to be bound voluntarily." *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, 2015 WL 2165341, at *2 (D. Kan. May 8, 2015). Similarly, a federal district court in Pennsylvania recently concluded on the basis of *Showa Denko* that it lacked jurisdiction to compel contributions to a common benefit fund from parties that had

6

opted out of a class action. *Slamon v. Carrizo (Marcellus) LLC*, No. 3:16-CV-02187, 2019 WL 3987770, at *17 (M.D. Pa. Aug. 22, 2019). *See also In re Baycol Prods.*, MDL No. 1431, 2004 WL 1058105, at *4 (D. Minn. May 3, 2004) ("the Court finds that it does not have jurisdiction over non-party TPPs. . . . Settlements negotiated between Defendants and non-party TPPs are not subject to the six percent hold back.").

Only under limited circumstances (which are inapplicable here) have courts enforced MDL common benefit hold-backs against state court litigants. Specifically, state court litigants can ***only*** be subject to such assessments where they sign, or are imputed to have signed, participation agreements. *See, e.g.*, *In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, 617 Fed. Appx. 136, 141 (3d Cir. 2015) (MDL court has jurisdiction "to enforce the contract [a state court attorney] made with the Plaintiffs' Steering Committee" but "it would have exceeded its jurisdiction" absent such an agreement); *Lee v. Thompson*, 43 So.3d 1104, 1113 (Miss. 2010) (MDL assessment enforceable as to attorneys who "purposefully and willfully availed themselves of the benefit of the MDL discovery and agreed to pay compensation in exchange for such benefit.").[2]

Finally, it makes no difference to the jurisdictional calculus that the Proposed Order might in some cases purport to have the Defendants withhold portions of settlements rather than impose a direct tax on state court plaintiffs. Nor does it make a difference that some of the state court plaintiffs' attorneys represent other entities properly subject to the MDL Court's jurisdiction. Such arguments were considered and rejected by the Eighth Circuit in *Rice I*:

---

[2] To the extent that some Opposing Governmental Plaintiffs have been improperly removed and transferred to the MDL Court, these plaintiffs should not be subject to the Proposed Order because their cases should eventually be remanded to state court. *See Syngenta*, 2015 WL 2165341, at*4 ("cases within the MDL that may be reached by the common benefit order should not include cases remanded from federal court back to state court[.]").

> Lead Counsel assert that the court has jurisdiction over Bayer and MDL attorneys, so the court can order withholding from their 'related' state-court cases. But state-court cases, related or not, are not before the district court.

764 F.3d at 874.  *See also Syngenta*, 2015 WL 2165341, at *3 ("this Court's jurisdiction over the defendant and some attorneys with respect to cases in the MDL does not grant it jurisdiction to issue orders requiring assessments in cases not before this Court.").[3]

Accordingly, the Court lacks jurisdiction to issue the Proposed Order.

## II. THE PROPOSED ORDER IS AMBIGUOUS AND EXCESSIVE

The Proposed Order supplies a one-size-fits-all solution to a non-existent problem.  The PEC and the MDL attorneys can and should be compensated for the reasonable value of their contributions to state litigants' recoveries and have been actively involved in the current settlement discussions with the state Attorneys General to reach that result.  But the Proposed Order's method for calculating the assessment is ambiguous and, if given its broadest interpretation, is so excessive as to thwart a global settlement, as well as the continued aggressive prosecution of state court litigation against non-settling Defendants.

*First*, the Proposed Order is ambiguous.  While the Proposed Order purports to assess its 7% tax against a litigant's "Gross Monetary Recovery," Proposed Order §2.d, this term is ill-defined in light of the present state of the opioid litigation.  "Gross Monetary Recovery" includes payments to litigants "whether characterized as damages, abatement costs, or anything else," as well as the "value of non-cash products or services provided by a Defendant."  It is unclear how these values will be calculated, and whether the proposed assessment will be an additional charge

---

[3] Nor is it of any legal significance to the Opposing Governmental Plaintiffs' argument that the Moving Plaintiffs can cite cases in which common benefit orders were granted.  *See* Common Benefit Mot. at 3-4.  The District of Kansas similarly had to consider common benefit orders issued by other federal courts.  But those cases "involved only awards of fees from the defendants before the courts; they did not sanction in any way imposing monetary obligations on parties not within a court's jurisdiction."  *Syngenta*, 2015 WL 2165341, at *4.  The court there concluded that the proponents of the common benefit order "have not relied on any case in which the court has addressed and rejected the jurisdictional argument raised here."  *Id*.  The same logic applies here.

against public entities' recoveries or reduce the attorneys' fees and costs otherwise allocated to local counsel.  The Proposed Order also does not address whether the assessment will apply to abatement costs that may be administered through a common fund at the state level, that redounds to the benefit of the individual communities.  *See also* AG Ltr. at 7.  Under some proposed frameworks for settlement of the opioid litigation, disbursements from such abatement funds may account for substantial percentages of the total relief afforded to communities, but the funds may never pass through those communities' treasuries.  *Id.*  The Proposed Order is ambiguous as to how, if at all, the assessment will apply to these funds—or from whose recoveries these charges will be applied.  As the AG Letter described, because of these features, "the proposed order would be detrimental to obtaining settlements from defendants in this MDL."  AG Ltr. at 6.

*Second*, assessments under the Proposed Order are potentially excessive and, if charged to local counsel, will dramatically and unfairly reduce their contracted for contingency rates.[4]  As a result, the continued prosecution of enormously expensive cases becomes untenable, thereby undercutting this Court's efforts to use a "hub and spoke" approach to leverage multiple court litigations to resolve the on-going opioid crisis.  This Court well knows from the negotiations resulting in its Order Certifying Negotiation Class and Approving Notice, which purported to limit attorney fees to 10% of the total recovery by governmental subdivisions in the context of reaching a global settlement, that there has been significant pressure on local counsel to accept fees below their contracted for contingency rates.  *In re Nat'l Prescription Opiate Litig.*, ECF No. 2591, ¶18, No. 1:17-md-02804 (Sept. 11, 2019).  A similar tact has occurred in discussions between the

---

[4]  Many of the firms signing this letter entered contingency contracts with their public entity clients at rates far less than they would charge private clients.

Attorneys General and counsel for many of their subdivisions.  At least one has proposed capping the total fee award to ***all*** counsel at 10% of the total settlement.

It is against this backdrop that the reasonableness of the MDL's request for a 7% fee allocation must be evaluated.[5]  Unlike the ordinary contingency litigation involving private plaintiffs, if there were to be a global settlement here, local counsel will receive nowhere near the typical attorney fee contingencies (30-33 1/3%), as against which the 7% assessment would be applied.  Here, if total fees are capped at 10%, the PEC and the MDL attorneys would effectively exhaust that fund leaving only 3% to satisfy all contingency fee claims, including those to counsel actively prosecuting (and funding) cases in their local courts.  This is undeniably unfair, and will leave the most diligent of state court attorneys with almost nothing to show for years of effort.  Importantly, however, this motion, if granted, would have far more pernicious consequences for the public interest than a mere squabble among attorneys over fees.  As the Attorneys General described in their letter to the Court, the motion threatens to derail the only viable option to reach a global resolution with the Distributor Defendants who are unwilling to pay billions of dollars in settlement in exchange for uncertain releases proposed as part of this Court's novel settlement "negotiation class."  The motion also serves to undercut the incentives needed for local counsel to fund and aggressively prosecute local litigation against non-settling Defendants.  These unintended consequences of an excessive MDL common benefit assessment are aptly described in the very same professional journal that Moving Plaintiffs cite in support of the assessment:

> Many observers to this intra-lawyer dispute might well throw up their hands and ask, "Who cares?" But we should care.  The problem of setting a common benefit

---

[5]  Even as applied to the cash portions of the settlement proposals reported in the press—*i.e.*, a $4 billion payment by Johnson & Johnson and an $18 billion payment by the Distributors, a 6% fee application for the MDL PEC would yield a ***$1.32 billion*** payment for their counsel's work plus ***$220 million*** for costs.  The MDL in its application, however, asserts that the MDL PEC incurred costs which total "tens of millions" of dollars, so even the 1% requested to cover the MDL's costs is grossly inflated.  Regardless of whether there are situations in which a 7% MDL assessment may be reasonable, under the facts of this case, it is neither fair nor reasonable here.

> fee too high is that it unfairly taxes the local lawyer and makes the litigation unfeasible for him to pursue. . . . The consequences are clear: when common benefit fees are high, local lawyers will simply abandon that mass tort and look for other ones.

Rubenstein, "*On What a 'Common Benefit Fee' Is, Is Not, And Should Be*," CLASS ACTION ATTORNEY FEE DIGEST 87, 90 (March 2009) (cited in Proposed Order at 3-4).

*Third*, there are fully adequate alternatives to protect the MDL lawyers' rights to fair compensation for their efforts. MDL PEC members have been fully engaged in the Attorneys General settlement talks for the obvious reason that Distributor Defendants are seeking global releases before parting with their billions of dollars of settlement payments. And the Defendants acknowledge that a global release may require the payment of attorney fees to, *inter alia*, MDL PEC. *See* Defendants' Memorandum in Opposition to the PEC's Amended Motion for Entry of Order Establishing Common Benefit Fund, ECF No. 3186 at 14, *In re National Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Feb. 26, 2020) ("Defendants acknowledge that reasonable attorneys' fees may be a part of a negotiated resolution of these cases."). To the extent that local counsel proceed to litigate individually in state court, the MDL is free to assert an "attorneys lien" in state court to compensate them for the benefits conferred and costs saved to local counsel. The proper amount of such compensation will likely vary by circumstance. Relevant factors may include (i) the usefulness of the MDL attorney's work to the prosecution of a state court case, (ii) state court counsel's own costs and time spent prosecuting the case, and (iii) the total amount of attorney fees made available in that jurisdiction. State courts recognize that counsel should be paid for their contribution to successful litigation, and can be trusted to make it happen. *See, e.g.*, Order, *New York University v. Ariel Fund Ltd., et al.*, No. 603803/08, at *9 (N.Y. Sup. Ct. Mar. 1, 2010), NYSCEF No. 139 (recognizing that the efforts of Scott+Scott Attorneys at Law LLP "substantially benefitted" plaintiff and directing compensation).

## CONCLUSION

For the foregoing reasons, the Common Benefit Motion should be denied.

Dated: February 27, 2020     SCOTT+SCOTT ATTORNEYS AT LAW LLP

/s/ Judith S. Scolnick
Judith S. Scolnick
Donald A. Broggi
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Tel: 212-223-6444
Fax: 212-223-6334
Email: jscolnick@scott-scott.com
Email: dbroggi@scott-scott.com

*Counsel for Opposing Governmental Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 27th day of February, 2020, the foregoing Governmental Plaintiffs' Opposition to Amended Motion for Entry of Order Establishing Common Benefit Fund was electronically filed via this Court's CM/ECF electronic filing system, which sends electronic notice to counsel registered to receive such notice.

SCOTT+SCOTT ATTORNEYS AT LAW LLP

/s/ Judith S. Scolnick
Judith S. Scolnick
