UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION, OPIATE LITIGATION | MDL NO. 2804 |
| | Case No. 17-MD-2804 |
| | Judge Dan Aaron Polster |
| THIS DOCUMENT RELATES TO: | |

*Salmons v. Purdue Pharma L.P.*, et al.
MDL Case #1:18-OP-45268;

*Doyle v. Purdue Pharma L.P., et al.*
MDL Case No. #1:18-op-46327

*Artz v. Purdue Pharma, L.P., et al.*
MDL Case No. #1:19-op-45459

**NAS GUARDIANS' OPPOSITION TO THE
*AMENDED* MOTION FOR ENTRY OF ORDER ESTABLISHING
COMMON BENEFIT FUND**

NOW come the NAS Guardians, who file this Opposition to the *Amended* Motion for Entry of Order Establishing Common Benefit Fund (Doc. 3112) filed by the Plaintiffs' Executive Committee (the "PEC").

**INTRODUCTION**

The NAS Guardians are legal guardians of children who were born addicted to opioids and medically diagnosed with opioid-related Neonatal Abstinence Syndrome ("NAS"). The NAS Guardians recently moved for class certification on various classes of legal guardians of children born after March 2000, who were medically diagnosed with NAS at or near birth, and whose birth mother received a prescription of opioids or opiates prior to the birth and those opioids were manufactured, distributed or filled by a Defendant.[1]

With its recent motion and proposed order, the PEC asks this Court to impose an

---
[1] *See* NAS Guardians' Motion for Class Certification, Doc. 3066.

1

assessment on any recovery for Opioid-related claims, whether by settlement or through judgment, that will be used to fund a Common Benefit Fund established by this Court.[2]  This assessment will apply to "any and all plaintiffs' attorneys and their clients who have relied upon, used, accepted, or have had access to MDL generated work product[.]"[3]  It also seeks to expand the PEC's reach (and requested assessment) to State court cases and bankruptcy proceedings that are not even before this Court.[4]

The PEC's motion should be denied for several reasons.  ***First***, the NAS Guardians agree with the 37 Attorneys General (Doc. 3181) that the PEC's proposed order would exceed this Court's jurisdiction to the extent it imposes an assessment on cases not before this Court, which would necessarily include State court cases and bankruptcy proceedings, including Purdue and presumably Mallinckrodt, in which the NAS Guardians are involved.  ***Second***, the proposed assessment fails to satisfy basic cost/benefit analysis requirements given the unique issues presented by the NAS Guardians' claims, the failure of the PEC to conduct relevant discovery concerning those claims, and its history of opposition to the NAS Guardians' claims.  Thus, any decision on an assessment that affects the NAS Guardians' recovery should, based on the Court's equitable authority, be deferred until such time that the Court is able to assess any actual benefit conferred upon the NAS Guardians by the PEC's work product.  ***Third***, as proposed, the assessment is inappropriately based (in part) on work performed by the State Attorneys General and this unearned portion must be backed-out.  ***Finally***, to the extent the proposed assessment adds a new attorney fee in addition to the contingency fees that the NAS Guardians have already agreed to pay to their attorneys or that exceeds a reasonable fee for the putative class(es), the PEC's

---

[2] *See* PEC's Proposed Order, Doc. 3112-1, p. 5 (Section 2(a)).
[3] *See* PEC's Proposed Order, Doc. 3112-1, pp. 4 (Section 1(4)), 5 (Section 2(a)).
[4] *See* PEC's Proposed Order, Doc. 3112-1, pp. 4 (Section 1(4)), 5 (Section 2(a)), 7 (Section 3(b)).

motion should be denied for the reasons given by the 37 Attorneys General.

## LAW AND ARGUMENT

### A. THE PROPOSED ORDER CANNOT APPLY TO CASES NOT BEFORE THIS COURT.

The NAS Guardians agree with the opposition filed by the 37 Attorneys General that the PEC has overreached in their motion to establish a common benefit fund. The proposed order exceeds this Court's jurisdiction to the extent it seeks to impose an assessment on cases not before this Court.[5] This includes State court cases and bankruptcy proceeding in which the NAS Guardians are (and will be) involved. *See* Opposition of Attorneys General, Doc. 3181, pp. 2-3; *In re Showa Denko K.K. L.-Tryptophan Products Liability Litigation-II*, 953 F.2d 162, 166 (4th Cir. 1992) (concluding that MDL court could not require common benefit fee assessment "from plaintiffs in state or federal litigation who [were] not before the court"); *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-02419-RWZ, 2014 WL 3974077, at *2 (D. Mass. Aug. 12, 2014) (MDL court recognizing that its jurisdiction over its administration of a Common Benefit Fund could not encroach upon a federal bankruptcy court's jurisdiction in related Chapter 11 bankruptcy proceeding). Accordingly, the PEC's motion should be denied in part on this basis.

### B. THE PROPOSED ASSESSMENT IN THE PEC'S ORDER IS IMPERMISSIBLY HIGH GIVEN THE UNIQUE POSITION OF THE NAS GUARDIANS AND A DECISION ON ASSESSMENT SHOULD BE DEFERRED.

With regard to the NAS Guardians' cases before this Court, the proposed assessment in the PEC's order is impermissibly high as it applies to the NAS Guardians as it fails to satisfy basic cost/benefit analysis requirements given the unique issues presented by the NAS Guardians'

---

[5] *See* Opposition of Attorneys General, Doc. 3181, pp. 2-3.

claims, the failure of the PEC to conduct relevant discovery concerning those claims, and its history of opposition to the NAS Guardians' claims. Thus, any decision on an assessment that affects the NAS Guardians' recovery should, based on the Courts' equitable authority, be deferred until such time that the Court is able to assess any actual benefit conferred upon the NAS Guardians by the PEC's work product.

The proposed order states that any recovery for Opioid-related claims, whether by settlement or through judgment, is subject to an assessment that will be withheld to fund a common benefit fund.[6] This assessment applies to "any and all plaintiffs' attorneys and their clients who have relied upon, used, accepted, or have had access to MDL generated work product[.]"[7] The stated purpose of this assessment and creation of the common benefit fund "is … to provide for the fair and equitable sharing, by and among all appropriate beneficiaries, of the cost of the services performed and expenses incurred by attorneys."[8]

This is an obvious attempt to secure monies for common benefit work from entities, such as local governments and private plaintiffs, who have not had to do much more than simply adopt the allegations of litigants who have come before them,[9] and then take advantage of the discovery generated by the PEC, which is itself largely duplicative of the earlier and more extensive work of the Attorneys General.

However, the NAS Guardians have unique claims within the Opioid MDL, which have not been advanced, much less championed, by the PEC. Given the nature of the Guardians' claims,

---

[6] *See* PEC's Proposed Order, Doc. 3112-1, p. 5 (Section 2(a)).
[7] *See* PEC's Proposed Order, Doc. 3112-1, pp. 4 (Section 1(4)), 5 (Section 2(a)).
[8] *See* PEC's Proposed Order, Doc. 3112-1, p. 3.
[9] This includes the allegations set forth in the Court-approved short-form complaint. *See* Short Form Complaint Ruling, Doc. 1282, ¶3 (establishing procedure to adopt common factual allegations and RICO claims for plaintiffs' amended complaints); *In re Nat'l Prescription Opiate Litig.*, 332 F.R.D. 532, 542 (N.D. Ohio 2019) ("The Summit County complaint and related short-form complaint enabled MDL plaintiffs – by checking a few boxes – to adopt two federal RICO claims and a set of factual allegations encompassing, *inter alia*, issues arising out of the federal Controlled Substances Act.").

which address the unique effects and challenges presented to persons who were bathed in opioids while their nervous systems, organ systems, and bodies were forming *in utero*,[10] as well as the urgent relief sought to monitor and address those challenges,[11] they have had to draft their own comprehensive complaints,[12] conduct their own discovery, depose their own witnesses, and hire and provide reports of their own experts, which includes experts addressing NAS and the causal link to serious latent diseases, the necessity and structure for the design and implementation of a medical monitoring program for NAS children, and the implementation costs for such monitoring program.[13] Moreover, ESI search terms developed and applied by the NAS Guardians have demonstrated that there are "areas of discovery pertinent to the NAS Baby claims [that] were not taken."[14]

The NAS Guardians are not the sort of "appropriate beneficiaries" described in the PEC's proposed order that should be required to participate in an alleged "fair and equitable sharing" of the fees and costs associated with performing the common benefit work[15] because the NAS Guardians have not and, indeed, cannot benefit to the same degree as other plaintiffs whose claims

---

[10] *See*, *e.g.*, NAS Guardians' Consolidated Memorandum in Support of their Class Certification Motion, Doc. 3066-1, pp. 7-13, 20-21 (Plaintiffs' expert detailing extensively the mechanism of opioid exposure on brain development and bring growth).

[11] *Id*. at pp. 12-13 ("The weight of medical opinion is that when a child has been diagnosed with NAS, he or she absolutely requires medically-necessary surveillance and monitoring for both the existing effects of NAS, as well as the heightened risk of additional disease and disorders that may manifest in the future as a result of NAS."), 19-20 ("The host of problems after birth that these children and their caregivers face are overwhelming and include delayed and impaired cognitive development and long-term behavioral problems. The resultant increased care burden faced by the NAS Guardians is nondelegable, immense, and cannot be met without the intervention of this Court and an order of declaratory and injunctive relief that requires financing by the Defendant responsible parties. Regarding the timing of these efforts, 'the best possible outcomes can only be achieved with proper management of NAS before hospital discharge, couple with increased monitoring and surveillance, as well as active multi-disciplinary interventions that are initiated just after birth and continued for the child's entire childhood and adolescence (up to 18 years of age).'"), 21-29.

[12] *See* Docs. 2745, 2746, 2747, 2748.

[13] *See* NAS Guardians' Notice of Experts, Doc. 2814.

[14] *See* NAS Guardians' Status Report, Doc. 2489, p. 3, n1. *See also*, NAS Guardians' Motion for Leave to Extend Time to File Class Action Complaints, Doc. 2605-1, p. 3(¶8), 4(¶10) ("… NAS Baby counsel's independent research has identified many documents not produced that are critical to NAS Babies[.]").

[15] PEC's Proposed Order, Doc. 3112-1, p. 3.

were actually substantially advanced and specifically championed by the PEC.

While the NAS Guardians do not contend that the PEC's efforts have conferred "zero" benefit to their claims, it is premature and unreasonable to conclude that a proposed assessment that effectively imposes a 23% or higher tax on their contingent fee structures[16] is fair and reasonable under the circumstances. Indeed, as one lead commentator, Professor Rubenstein, has suggested, a court should evaluate whether such a "hefty bite of the primary lawyers' contingent fee," which is significantly higher than the highest federal capital gains tax and roughly half the highest federal income tax, is justified. *See* 5 Newberg on Class Actions § 15:116 (5th ed.) (by William B. Rubenstein). Posed another way, a court should evaluate whether the PEC's work "reliev[ed] the primary attorney of [23%] of the efforts that she might otherwise needed to undertake[.]" *Id*.

This approach is consistent with the Court's authority to fashion a common benefit assessment, which is "equitable in nature." *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 922 (N.D. Ohio 2003). It is also consistent with the approach taken in the Sixth Circuit, where "[t]he ultimate issue is whether the Court's 'award of attorneys' fees in common fund cases [is] 'reasonable under the circumstances.'" *Id*. *See also, In re Oral Sodium Phosphate Sol.-Based Prod. Liab. Action*, No. 1:09-SP-80000, 2010 WL 5058454, at *2 (N.D. Ohio Dec. 6, 2010) (Judge Polster) (recognizing that the Court, "[w]hen making its determinations regarding the propriety and amount of common benefit awards, … intends to use the same factors and analytical approach set out in [*In re Sulzer Hip Prosthesis*, 268 F. Supp. 2d 907].").

---

[16] By way of example, and assuming that a client's MDL recovery will not be impacted by the proposed 7% assessment, the assessment as applied to that client's total recovery, but paid entirely out of her attorneys' contingent fee, means that her attorneys would be losing 23% of a 30% contingent fee (i.e. 7/30). *See* 5 Newberg on Class Actions § 15:116 (5th ed.).

6

Moreover, while the proposed order only seeks to impose an "assessment" that will fund a common benefit fund from which the PEC will later seek to be reimbursed for common benefit work, *these funds rarely ever fail to be fully exhausted*, resulting in the primary attorneys not receiving any refund on the assessment imposed.  *See* 5 Newberg on Class Actions § 15:117 (5th ed.) (concluding that "data [from 71 instances in which common benefit fees were withheld and 29 instances in which common benefit fees were finally approved] tend to confirm the sense that common benefit assessments are typically later awarded in full to the PSC and that rarely is any money returned to the primary attorneys.").  Consequently, the NAS Guardians would likely have little to no ability to meaningfully oppose the proposed assessment/tax at a later date.

Thus, under these circumstances, any decision on an assessment that affects the NAS Guardians' recovery, or that of the putative class(es) they seek to represent, must, pursuant to the Court's equitable authority, be deferred until such time that the Court is able to assess any benefit actually conferred by the PEC's work product, as well as a reasonable attorney fee should the class(es) be certified and settlement or judgment reached.  The PEC's motion should, therefore, be denied to the extent it seeks to apply the proposed assessment to any recovery by the NAS Guardians, or the putative class(es).  *See* 5 Newberg on Class Actions § 15:116 (5th ed.); *In re Sulzer Hip Prosthesis*, 268 F. Supp. 2d at 922.

### C. THE PROPOSED ASSESSMENT IS INAPPROPRIATELY BASED (IN PART) ON WORK PERFORMED BY THE STATE ATTORNEYS GENERAL.

Alternatively, if the Court were to impose the assessment against the NAS Guardians (with which the NAS Guardians respectfully disagree), the assessment is inappropriately based (in part) on work performed by the State Attorneys General[17] and this unearned portion must be backed-

---

[17] *See* Opposition of Attorneys General, Doc. 3181, p. 2. (stating, *inter alia*, that "MDL plaintiffs have obtained orders from this Court requiring defendants to produce voluminous documents previous[ly] produced to the State Attorneys General.").

7

out.  *See In re Sulzer Hip Prosthesis*, *supra*.

### D. THE PROPOSED ORDER IS IMPERMISSIBLY OVERBROAD TO THE EXTENT IT SEEKS TO IMPOSE ADDITIONAL ATTORNEY FEES ON NAS GUARDIANS.

Finally, to the extent the proposed common benefit assessment adds a new attorney fee to any MDL recovery by the NAS Guardians that is in addition to the contingency fees they have already agreed to pay to their attorneys, or any application for a reasonable attorney fee for any NAS Guardian classes certified, the PEC's motion should be denied for the reasons set forth in the opposition filed by the 37 Attorneys General, which are adopted herein by reference.[18]

### CONCLUSION

For the reasons set forth above, NAS Guardians respectfully request that the PEC's *Amended* Motion for Entry of Order Establishing Common Benefit Fund (Doc. 3112) be denied.

**WHEREFORE**, for the reasons set forth above, NAS Guardians respectfully request that the PEC's *Amended* Motion for Entry of Order Establishing Common Benefit Fund (Doc. 3112) be denied.

Respectfully submitted,

/s/ Marc E. Dann
Marc E. Dann (0039425)
Emily C. White (0085662)
Whitney E. Kaster (0091540)
Dann Law
2728 Euclid Avenue, Suite 300
Cleveland, OH 44115
(216) 373-0539
notices@dannlaw.com

---

[18] *See* Opposition of Attorneys General, Doc. 3181, pp. 8-10.

Thomas E. Bilek
Kelly Cox Bilek
THE BILEK LAW FIRM, L.L.P.
700 Louisiana, Suite 3950
Houston, TX 77002
(713) 227-7720
tbilek@bileklaw.com
kbilek@bileklaw.com

Celeste Brustowicz
Stephen Wussow
COOPER LAW FIRM
1525 Religious Street
New Orleans, LA 70130
Telephone: 504-399-0009
Facsimile: 504-309-6989
Email:cbrustowicz@sch-llc.com

Scott R. Bickford
Spencer R. Doody
MARTZELL, BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, LA 70130
Telephone: 504-581-9065
Facsimile: 504-581-7635
Email: srb@mbfirm.com

*Counsel for NAS Guardians and
Proposed Liaison and Class Counsel*

9

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed via the Court's electronic filing system on February 28, 2020.  Notice of this filing will be sent by e-mail through the Court's electronic case-filing system to all counsel of record.

>	*/s/Marc E. Dann*
>	Marc E. Dann (0039425)
>	Dann Law