# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

|   |   |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION ) ) ) ) | |
| This document relates to all Actions, including: ) ) | **MDL No. 2804** |
| *Lovelace Health System, Inc. v.* *Purdue Pharma L.P, et al.*, Case No. 19-op-45458 ) ) | **Case No. 17-MD-2804** |
| ) | **Judge Dan Aaron Polster** |
| *Danville Regional Medical Center, LLC v.* *Purdue Pharma L.P, et al.*, Case No. 19-op-45788 ) ) ) | |

**RESPONSE OF CERTAIN HOSPITALS IN OPPOSITION TO THE PEC'S AMENDED MOTION FOR ENTRY OF ORDER ESTABLISHING COMMON BENEFIT FUND**

Come now, certain interested hospitals and hospital systems, including Lovelace Health System, Inc. and Danville Regional Medical Center, LLC (collectively, the "Hospitals"), pursuant to this Court's February 4, 2020 order, and respectfully file this response seeking clarification and expressing concern about the Plaintiffs' Executive Committee's ("PEC") amended motion for entry of an order establishing a common benefit fund.[1]

## INTRODUCTION

Private hospitals have taken different approaches to recovery for the damages they have sustained due to the Defendants' actions in creating and exacerbating the opioid crisis. Some hospitals have filed federal litigation, while others are opting to litigate in state courts. Some have solely sought recovery through bankruptcy proceedings, and still others are seeking to privately

---

[1] Undersigned counsel represents numerous hospitals and hospital systems, both nonprofit and for profit, having a presence in a majority of U.S. states. Each of the Hospitals is an interested party to the instant motion.

negotiate resolutions.  Some have preferred to take a public approach, while others have sought to remain private.

While their approaches have differed, all of the Hospitals share one thing in common: they have sought individualized and tailored representation of their specific interests.  They have relied upon their own counsel to advise them, research the law, analyze the facts, submit their own briefing, represent them on multiple bankruptcy committees, and retain their own experts to evaluate everything from individualized damages to specific abatement measures needed for their communities.

## ARGUMENT

An award of attorneys' fees from a common benefit fund is only appropriate if it is necessary and reasonable to compensate counsel for work that benefited parties other than their clients.  *See, e.g.*, *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Shimman v. Int'l Union of Operating Engineers, Local 18*, 744 F.2d 1226, 1234–35 (6th Cir. 1984).  At this point, it cannot be said whether or which Hospitals have benefited or will benefit from work done by those members of the PEC who have been almost exclusively representing governmental entities.  It may very well be the case that they ultimately do benefit.  Or it could be that they are actually worse off because recoveries that could have compensated them are steered toward the governmental entities represented by members of the PEC.

It is therefore both premature and overbroad to indiscriminately set a common benefit fee of 7% for every resolution and every type of plaintiff.  For some, such as local governments, that amount may actually be too low in light of their benefit.  For others, such as private plaintiffs, any amount may be too high.  For example, in the Insys bankruptcy, monies were allocated amongst various claimant groups according to an approved and agreed upon bankruptcy plan.  Given those

dynamics, can it be said that any private plaintiff benefited from the work of the PEC, or is it possible that they actually received less as a result of the PEC's efforts in that particular matter? Likewise, consider the public announcement on February 25, 2020 of an agreement in principle between Mallinckrodt and various governmental entities and the PEC. The proposed settlement does not appear to either involve or allocate recoveries to any single private party. If private parties do ultimately recover from Mallinckrodt, it would appear to be in spite of the PEC's efforts rather than because of them.

Accordingly, it seems appropriate at this point to construe the current motion as only applying to local governments and the negotiating class, not private plaintiffs such as hospitals. After all, these are the only parties specifically referenced in the proposed order, and the only parties who stand to financially benefit based on current recoveries or proposed settlements procured by or with the support of the PEC.

To be clear, the Hospitals take no position on the propriety of the fee request as to the local governments or the negotiating class represented by members of the PEC. Nor is it their intent to disparage or diminish the efforts of the PEC or question whether any counsel should be appropriately compensated by those who benefit from members of the PEC's work. It is just not yet clear whether and to what extent private parties, such as the Hospitals, will benefit. Until such determination can be meaningfully made, it does not seem reasonable that such parties should be indiscriminately subjected to what would amount to a reimbursement to governmental entities and their counsel for *their* costs in obtaining recoveries. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03MDL01570GBDSN, 2019 WL 4744268, at *3–4 (S.D.N.Y. Sept. 30, 2019) (noting that the original request for a common benefit fund was denied as premature where it was not clear how

3

much work counsel would perform on behalf of all plaintiffs and the amounts that ultimately would be recovered were uncertain).

## CONCLUSION

This Court has already established a framework for common benefit fees.  (ECF No. 358.) If private parties one day obtain recoveries attributable to the work of the PEC, then the Court can implement its framework to make any necessary determinations.  Until such time, however, the Hospitals respectfully submit that the proposed common benefit fund should be clarified to confirm that it does not apply to any private plaintiffs at this time.

Respectfully submitted by:

*/s/ Lauren Z. Curry*
Phillip F. Cramer (No. 20697)
Lauren Z. Curry (No. 30123)
Christina R.B. López (No. 37282)
SHERRARD ROE VOIGT & HARBISON, PLC
150 Third Avenue South, Suite 1100
Nashville, Tennessee 37201
Phone:  (615) 742-4200
pcramer@srvhlaw.com
lcurry@srvhlaw.com
clopez@srvhlaw.com

4

**CERTIFICATE OF SERVICE**

    A copy of the foregoing was filed via the Court's electronic filing system on February 28, 2020. Notice of this filing will be sent by e-mail through the Court's electronic case-filing system to all counsel of record.

                                            */s/ Lauren Z. Curry*
                                            Lauren Z. Curry