UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track One Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**REPLY IN SUPPORT OF MOTION FOR
ENTRY OF ORDER ESTABLISHING COMMON BENEFIT**

**INTRODUCTION**

Plaintiffs, through the undersigned Court-appointed Plaintiffs' Co-Lead Counsel and Plaintiffs' Liaison Counsel, and on behalf of the Plaintiffs' Executive Committee, respectfully submit this Reply in Support of Motion for Entry of an Order Establishing Common Benefit Fund, in the exercise of the Court's case management authority as Transferee Court in these multidistrict proceedings, and pursuant to its earlier Case Management Order No. 5 ("CMO No. 5"), to provide for the reimbursement and compensation of expenses and work incurred and performed for the common benefit of plaintiffs in the proceedings, as more fully described in the accompanying (Revised) (Proposed) Corrected Order Establishing Common Benefit Fund ("Revised Order").

The accompanying Revised Order addresses the responses and objections made by various Attorneys General, Defendants, and Plaintiffs, and clarifies the common benefit provisions requested in several key respects.  **First**, the Revised Order makes clear that the common benefit assessment it provides does ***not*** apply to the Attorneys General, nor does it constitute an attempted exercise of the Court's jurisdiction over them.  It is not intended to, and does not, alter earlier Orders and agreements

that provided the Attorneys General with access to ARCOS data and analyses and other MDL work product.[1]

**Second**, the Revised Order does not impose any obligations on Defendants different from those imposed by "hold back" orders in other MDLs, including by this Court in the *Gadolinium* MDL, and it provides a procedure for determination of an appropriate assessment in scenarios involving settlements unique to the Opioids litigation, such as those involving products in addition to monetary payments.

**Third**, the Revised Order is not intended to, and does not add any obligation to or change anything in the Court's earlier series of Negotiation Class Opinion and Orders (including the provisions for costs and fee funds, or Rule 23(h) application), nor does it change the provisions of any potential Negotiation Class settlement, or the rights of class members.[2] Those remain unchanged, as set forth in the Negotiation Class Orders and the information posted at https://www.opioidsnegotiationclass.info.

**Fourth**, the Revised Order recognizes the jurisdiction of the bankruptcy courts to make common benefit awards from the assets of the estates of bankrupt Opioid defendants.

**Finally**, the Revised Order does not interfere with the opportunity or ability of the parties to structure or reach global or comprehensive settlements of any sort, including settlements which propose a different negotiated and agreed structure for the payment of fees and costs.  It thus does not seek to alter or interfere with any such discussions currently underway.

The establishment of a common benefit fund, 2+ years into this most complex and challenging of MDLs, is the farthest thing from what one submission wrongly dubs a "grab" by a "handful of

---

[1] See, e.g., Doc. #444 and Doc. #1856.
[2] Doc. #2590, # 2591, and #2713.

lawyers."[3]  Many scores of attorneys from the PEC firms and others have served diligently, without compensation or reimbursement, for over two years to advance this litigation, paying nearly $100 million to date (including payment of $70 million in assessments by the PEC) to fund the common benefit work; expending over 1.2 million hours of their time, taking 550 depositions; serving 330 third party subpoenas; developing scores of experts; briefing and prevailing on multiple motions to dismiss and motions for summary judgment; preparing for multiple bellwether trials; and analyzing over 162 million pages of documents, as well as obtaining, analyzing, and making available the crucial ARCOS data, under the aegis of this Court.  The only "grab" is that of a few plaintiffs' lawyers who oppose assessment in hopes of a free ride.  But, as courts have long acknowledged, equity, public policy, and the very ability of the federal courts to function in MDL litigation under 28 U.S.C. § 1407, requires those who share the benefits to contribute to the costs.  The effective case management of MDLs depend on common benefit efforts.  As the federal courts have recognized for over 40 years, MDLs require both the front-end, non-contingent investment of time and money by those charged with leadership (which here has been invested faithfully for over two years) and the back-end, contingent compensation of these efforts through a common benefit fund if and when cases are won or settled. *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1012-1019 (5th Cir. 1977).

Moreover, the lawyers and municipal governments who have led this litigation have worked creatively, urgently, and assiduously to maximize and speed recovery to help address the unprecedented public health crisis that continues to take the lives of far too many residents of all of our communities, which will bear the costs of this crisis for decades to come.  They have developed new structures for settlement that aim to address the complex nature of this litigation, successfully litigated cases against more than twenty highly resourced defendants through dispositive motions,

---

[3] Doc. #3186.

3

sought and obtained the disclosure of evidence that has informed public understanding of the causes, nature, and extent of this crisis, and worked with parties inside and outside of the MDL to fashion solutions, to attain an efficient and just resolution of all of these cases.

### 1. The Common Benefit Order Does Not Obligate the Attorneys General to Pay Assessments on their Claims.

The Revised Order reaffirms the ability of the Attorneys General, under earlier orders and agreements, to access and utilize ARCOS data and other MDL work product without becoming subject to assessment. Nothing in the Revised Order changes this *status quo. See* Revised Order, p.2.[4]

The Revised Order does not purport to exercise jurisdiction over Attorneys General or their States' claims. It does properly apply to all the cases and claims asserted by the plaintiffs in these MDL proceedings. The MDL Court has subject matter jurisdiction over these parties, cases, and claims, and it is true that some proposed settlement structures under discussion with Attorneys General and the PEC would generate payments in consideration for the release or dismissal of these MDL-asserted claims. But nothing in the Revised Order seeks to apply common benefit assessments to Attorney General settlements, nor precludes any parties, including Defendants and Attorneys General, from reaching agreements that provide for different fees and costs structures. To the extent these structures impact the MDL plaintiffs' claims, the Revised Order, ¶ 4, nonetheless provides flexibility for this Court to consider and approve them, instead of the default 7% assessment.

---

[4] As the Revised Order makes clear: "These are some examples of common benefit efforts that have inured to the benefit of all plaintiffs and promoted the purposes of the MDL. However, nothing in this Order changes the provisions of this Court's earlier Orders, and the Sharing Agreements filed in this Court, that provided access to Attorneys General of MDL documents and work product, including ARCOS data, without subjecting them to a common benefit assessment as a result. *See, e.g.*, Doc. #444 ¶¶ 33(i); 34(j), Doc. #1856. These remain in effect. Nor is this Order an attempted exercise of jurisdiction over the Attorneys General. *See, e.g.*, Doc. #111, and Doc. #232."

4

### 2. The Court May Properly Require Defendants to Hold Back the Common Benefit Assessment.

Defendants complain that the withholding provisions constitute an improper burden upon them, but such withholding or "hold back" provisions (which were approved by this Court in the *Gadolinium* MDL) are routine and have been adapted by many MDL courts as the most efficient and effective way to enforce assessments. *See, e.g., In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 617 F. App'x 136, 140 (3d Cir. 2015) (affirming order of District court establishing common benefit fund requiring defendant to hold back 7% assessment).

In *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 365 F. Supp. 3d 685, 694 (S.D. W. Va. 2019), *appeal dismissed sub nom. In re Ethicon, Inc.,* No. 19-1224, 2019 WL 4120999 (4th Cir. June 14, 2019), the court entered an "Agreed Order Establishing … [a] Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Common Benefit" ("Agreed Order").  The Agreed Order was entered in all seven MDLs.  There, the court ordered MDL defendants to withhold a 5% assessment on plaintiff recoveries and directed defendants to pay the hold back assessments 'directly into the ... MDL Fund as a credit against the Settlement of Judgment.'".

In another example, *In re Bard IVC Filters*, No. 2-15-MD-02641, ECF No. 372 (D. Ariz. Dec. 18, 2015), "For cases subject to an assessment, Defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment.".  In this Court's assessment Order in *In re Gadolinium Based Contrast Agents Prod. Liab. Litig.*, No. 08-GD-50000, 2009 WL 10703918, at *3 (N.D. Ohio Feb. 20, 2009), the court provided, "For cases subject to an assessment, defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment.".

5

As Judge Fallon observed in *Turner v. Murphy Oil USA, Inc.,* 422 F. Supp. 2d 676, 680, 684 (E.D. La. 2006), "it has been a common practice in the federal courts to impose set-asides in the early stages of complex litigation in order to preserve common-benefit funds for later distribution….Defendant is directed to withhold this set-aside from amounts paid to plaintiffs and their counsel, and to pay the set-aside directly into the fund as a credit against the settlement or judgment." *See also In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, MDL No. 1203, 1999 WL 124414, at *2 (E.D. Pa. Feb. 10, 1999) ("Before making any claim payment to a plaintiff whose action has been subject to coordinated pretrial proceedings in MDL 1203, defendants shall deduct from such payments an amount equal to nine percent (9%) of the aggregate of the amount being paid and any amounts to be paid to the plaintiff in the future; and shall pay such sum as hereinafter provided for deposit into the MDL 1203 Fee and Cost Account.")[5]

### 3. The Presence of Objections is Not Unusual and Does Not Preclude Establishment of a Common Benefit Fund.

It is not unusual for either defendants or individual plaintiffs (or more likely, their lawyers), to object to the amount or existence of a common benefit assessment. Indeed, the failure to avoid assessment would be the exception to the rule. Nonetheless, MDL courts have entered these orders in the exercise of their case management authority and equity jurisdiction to ensure costs are spread ratably among beneficiaries, and that there is someone to do the necessary common benefit work.[6]

---

[5] Defendants also worry that they could be required to pay an additional 7% over and above what has already been paid to Plaintiffs, as in the claims settled in the Case Track One cases. The Revised Order is not intended to operate in this way – it also imposes an obligation on MDL plaintiffs, and these bellwether plaintiffs have held back funds in anticipation of a common benefit order. *See* Revised Order, ¶ 3.c.

[6] As *Everglades* long ago affirmed, the "vindication" of the "larger interests" in the effective use of court and litigant resources, and the public interest in case litigation efficiency that the MDL statute promotes, "commands affirmative intervention by the court and the assignment of additional responsibilities to some attorneys, inuring to the benefit of other attorneys." 549 F.2d at 1019.

Examples of courts establishing or affirming common benefit funds over defendants' and/or plaintiffs' oppositions are legion. *See, e.g.*, *Bard*, No. 2-15-MD-02641, ECF No. 372 (ordering common benefit assessment of 8% over defendants' objection); *In re Vioxx Prod. Liab. Litig.*, 760 F. Supp. 2d 640, 649, 661-662 (E.D. La. 2010) (noting benefit of briefing of numerous objections to the PLC's initial common benefit award request and awarding 6.5% common benefit fee award); *In re Zyprexa Prod. Liab. Litig.*, 467 F. Supp. 2d 256, 265-269 (E.D.N.Y. 2006) (granting establishment of common benefit fund over objections); *Turner*, 422 F. Supp. 2d at 683 (ordering total assessment of 12% over objections); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 930-35 (N.D. Ohio 2003) (considering objections and awarding common benefit assessment of 4.8%); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, No. MDL 1014, 1996 WL 900349, at *4 (E.D. Pa. June 17, 1996) (ordering total common benefit assessment of 17% over defendants' objection); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 529 (D. Nev. 1987) (increasing common benefit fund fee to 7% from 5% over objections).

### 4. This Court Has Jurisdiction Over the ARCOS Data and MDL Work Product and May Assess Private Plaintiffs Who Utilize It.

Common benefit opponents make much of the *Showa Denko* and *Genetically Modified Rice* decisions to oppose assessment of state court litigants.[7] But there is a fundamental difference between those cases and MDL No. 2804.

Here, the court has ongoing jurisdiction over the ARCOS data, and is actively supervising and protecting its use. This data is key evidence in all cases, both within and outside the MDL. Participation agreements govern use – and provide for assent to common benefit assessments – by the private plaintiffs using this work product with permission. The same is true of other MDL work product, including the substantial body of documents and depositions that have been made available

---

[7] *In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig.-II*, 953 F.2d 162 (4th Cir. 1992); *In re Genetically Modified Rice Litig.*, 764 F.3d 864 (8th Cir. 2014).

7

to litigants that constitute or inform their discovery and proof. But an assessment obligation may and should also follow this federally-supervised *res* to all private plaintiffs who use and benefit from it, with or without permission. This is the essential principle of *Trustees v. Greenough*, 105 U.S. 527(1881), *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939), and other cases involving a *res* before the court. Translated to modern times, the vast body of documentary (and now electronically stored) evidence amassed and analyzed by common benefit counsel and under the jurisdiction and protection of the MDL Court, constitutes the functional – and literal – equivalent of a *res* for purposes of regulating access, use, and compensation.

In the *Deepwater Horizon Litigation*, Judge Barbier expressly applied the assessment to MDL discovery beneficiaries: "Specifically, this hold back requirement applies to all actions filed in or removed to federal court that have been or become a part of the MDL, whether or not a motion to remand has been filed, **and to state court plaintiffs represented by counsel who have participated in or had access to the discovery conducted in this MDL**. Exempt from the current hold back requirement are settlements or other payments by the Gulf Coast Claims Facility, another claims processor, or any Defendants to claimants who have never had, do not currently have, nor hereinafter have, actions or claims-in-limitation pending in the MDL. **Also exempt from this hold back requirement are state court counsel who have or had no cases in this MDL and who have never had access to any of the discovery undertaken in the MDL**. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, MDL No. 2179, 2012 WL 161194, at *2 (E.D. La. Jan. 18, 2012) (emphasis supplied).

In an earlier opinion, the *Deepwater Horizon* court considered whether it had subject matter jurisdiction to order the hold back in (1) cases that were filed in state court, removed to the MDL (or removed to another federal court, then transferred to the MDL) and have pending motions to remand, and (2) cases filed in state courts that were not removed. *In re Oil Spill by the Oil Rig "Deepwater Horizon"*

8

*in the Gulf of Mexico, on Apr. 20, 2010,* MDL No. 2179, 2011 WL 6817982, at *3 (E.D. La. Dec. 28, 2011), *amended by* 2012 WL 37373 (E.D. La. Jan. 4, 2012), *and amended and superseded on reconsideration by*, 2012 WL 161194 (E.D. La. Jan. 18, 2012)

As to the first category of cases, the court said it agreed with the concurring opinion in *In re Zyprexa Prod. Liab. Litig.,* 594 F.3d 113 (2d Cir. 2010) and decided that the hold back would apply to cases with pending motions to remand. *Deepwater Horizon*, 2011 WL 6817982, at *3-4. Then, for the second category of cases – the non-removed state court cases – the *Deepwater* court considered *Genetically Modified Rice* and *Showa Denko* but decided to go the way of the more analogous decision in the *Latex Gloves* MDL, in which the district court required an attorney who had cases before both federal and state courts to pay the assessment in order to gain discovery materials held in a depository. I*n re Latex Gloves Prod. Liab. Litig.,* MDL No. 1148, 2003 U.S. Dist. LEXIS 18118 (E.D. Pa. Sep. 5, 2003) ("Like movant, most plaintiffs' counsel represent state court as well as federal court plaintiffs. Permitting them to use discovery information in their state cases without charge would produce an anomalous and undesirable predicament.").

Judge Barbier also cited *In re Fosamax Prods. Liab. Litig.,* No. 1:06-md-1786 (S.D.N.Y. Apr. 28, 2011), ECF No. 1012, which ordered "any plaintiff's counsel with cases not in the MDL who utilizes any aspect of the MDL common benefit work product, or who participates in a PSC-coordinated resolution, and who has not signed an Assessment Option agreement, shall be subject to [a 9% hold-back assessment]." It also considered and concurred with the guidance of the Federal Judicial Center's Pocket Guide[8], which states that "fees may not be imposed by a transferee judge on attorneys **with no cases in the MDL <u>and</u> who do not use federal discovery material**." *Deepwater Horizon,* 2011 WL 6817982, at *5-6 (emphases supplied).

---

[8] <u>Coordinating Multidistrict Litigation: A Pocket Guide for Judges</u> (Federal Judicial Center 2013), p.7 "Managing Attorney Disputes."

9

### 5. **This Court Has Managerial Power and Equity Jurisdiction Over Private Litigants Who Benefit From Common Benefit Activity.**

No one prefers a tax or reduction of any kind on "his" recovery or fees. But everyone needs and expects access to essential services. The federal courts have long recognized that in MDLs, the compensation of court-designated counsel, such as Lead Counsel and Committees, are essential to the ability of MDLs to function effectively. *Manual for Complex Litigation*, Fourth (Federal Judicial Center 2004), §§ 10.22-10.225; 14.215.

The history, rationales for, and necessity of common benefit assessments are thoroughly explored in the seminal decision in *Everglades On December 29, 1972*, 549 F.2d 1006, on appeal from an 8% common benefit assessment by the transferee court in MDL No. 139.

As the Fifth Circuit noted:

> First, if lead counsel are to be an effective tool the court must have means at its disposal to order appropriate compensation for them. The court's power is illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation.

*Id.* at 1016.

> The argument that lead counsel are paid twice for the same work overlooks what the district court did not overlook−the broader responsibilities that lead counsel bear and the larger interests that they serve. Because of the nature of the case that will trigger appointment, lead counsel's services are in part for all parties with like interests and their lawyers. To a degree, lead attorneys become officers of the court. By making manageable litigation that otherwise would run out of control they serve interests of the court, the litigants, the other counsel, and the bar, and of the public at large, who are entitled to their chance at access to unimpacted courts.

*Id.* at 1017.

> The power of the court to order compensation, and payment of it in the manner directed in this case, is reinforced by the body of law concerning the inherent equitable power of a trial court to allow counsel fees and litigation expenses out of the proceeds of a fund that has been created, increased or protected by successful litigation. This expanding jurisprudence has moved beyond the literal limits of its original bounds.

10

*Id.* (citing, *inter alia*, *Greenough*, 105 U.S. 527; *Sprague*, 307 U.S. 161).

The *Everglades* decision quotes Justice Frankfurter's decision in *Sprague* regarding the breadth of the district court's equitable powers as follows:

> Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation. Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation−the absence of an avowed class suit or the creation of a fund, as it were, through a decree−hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation.

307 U.S. at 166-67, as quoted in *Everglades*, 549 F.2d at 1018.

### 6. The Approval and Timing of the Assessment is Fully Appropriate Given the Progress of MDL No. 2804

Is the 7% assessment too much, or too little? Is it requested too early, or too late, in the proceedings? Common benefit assessments are the quintessential "Goldilocks" scenario: no one thinks they are just right.

Many courts – and the *Manual for Complex Litigation* – recommend that assessments be determined "early in the litigation", despite objectors' argument that assessment in MDL No. 2804 is too soon. *Manual for Complex Litigation*, Fourth (Federal Judicial Center 2004), §§ 10.22; 14.215. As the *Manual* states:

> Early in the litigation, the court should define designated counsel's functions, determine the method of compensation, specify the records to be kept, and establish the arrangements for their compensation, including setting up a fund to which designated parties should contribute in specified proportions.[9]

---

[9] *See also In re Worldcom, Inc. Sec. Litig.,* No. 02 Civ. 3288 (DLC), 2004 WL 2549682, at *4, 5 (S.D.N.Y. Nov. 10, 2004) ("It is important to establish a set-aside fund immediately. Without the entry of a set-aside order in advance of [i]ndividual [a]ction settlements or judgments, [i]ndividual [a]ctions

11

Here, this Court early on established the functions of designated and common benefit counsel, including the time and cost-reporting protocols the *Manual* recommends, in CMO No. 5. Counsel have followed these protocols, and, more importantly, done the work: over two years of time and costs have been incurred, in a heavily demanding and intensively prosecuted case. A major settlement of initial bellwether claims has occurred. Preparations for additional bellwether trials are underway, and additional trial dates have been set. MDL No. 2804 is at the remand and multiple bellwether trial stage. The entry of an assessment order is demonstrably timely.

Is the assessment too much? Other courts have approved and offered more; some others have approved a bit less. The Federal Judicial Center's multidistrict Pocket Guide states that common benefit assessments are "typically, though not always, 4% to 8%" and the Revised Order lists a number of recent and current common benefit assessments at the top of this range – and higher. The requested 7% assessment is mainstream; the demands of this MDL are anything but. This case has a track record of gargantuan and necessary expenditures of both time and money (approximately $100 million in front-end cost assessments paid by the PEC alone, and over 1.2 million hours of common benefit labor to date) and this Court has had myriad occasions to observe both the quality and quantity of effort by the common benefit lawyers. This Court is well able to exercise its discretion to fix an appropriate percentage, and to do so now.

### 7. **The Proposed Order Does Not Impair or Interfere With Settlement Efforts**

The Revised Order does not impede or interfere with any settlement efforts. Instead, it provides flexibility, recognizing that various parties are pursuing or may pursue different or evolving

---

could be dismissed after settlement or a judgment, requiring [lead counsel] to pursue separate compensation claims in any number of jurisdictions around the country….Before making any Claim Payment, each paying defendant shall deduct the Escrow Amount and pay the Escrow Amount to the Clerk of Court for deposit to the CRIS Escrow Account."). *See Turner*, 422 F. Supp. 2d, at 680, endorsing "set-asides in the early stages of complex litigation."

settlement structures, which may call for the release of MDL actions or claims, in combination with actions or claims outside the MDL court's jurisdiction. The following provisions recognize this complexity and enable the Court to consider and determine common benefit assessments and awards to the extent they include the subject matter of this MDL:

4. **Further Proceedings and Continuing Jurisdiction**

    a. This Order is without prejudice to such other assessments of or awards of fees and costs as may be ordered by this Court under Rule 23(h), the common benefit doctrine, a Court-approved agreement among the parties to any global or comprehensive settlement with any defendant, or that may be provided by contract between attorneys and clients. The intent of this Order is to establish, secure, and supervise a fund to promote the purposes and policies of the common benefit doctrine and provide a source for equitable payment of services rendered and costs incurred for the benefit of Opioids plaintiffs.

    b. Nothing in this Order precludes the parties from negotiating, agreeing on, and proposing a different fee structure in a global settlement of claims against any defendant that provides a different fund or mechanism for fairly compensating common benefit work and costs.

    c. Common benefit fees and costs requested or agree to be paid from assets in any bankruptcy proceeding would be approved and awarded as determined by the bankruptcy court in the exercise of its jurisdiction.

    d. If a settlement includes funding for abatement that is shared among parties, including state Attorneys General, not subject to this Order, the parties participating in directing the fund shall agree on a method for determining what part of that fund will be subject to common benefit fees and costs. To the extent that no agreement can be reached, this Court will determine a fair assessment subject to this Order, pursuant to notice and an opportunity for the parties to be heard.

    e. If all parties to a future settlement agree that exceptional circumstances warrant a departure from the hold back obligations, or other provisions of this Order, they shall submit affidavits thereon and request appropriate relief from this Court.

**CONCLUSION**

The Revised Order recognizes the developing, specific, and exceptional circumstances of this litigation, providing flexibility for the Court and the parties to develop particular settlement structures in a manner that preserves the fundamental and necessary functions of common benefit assessments, while enabling them to be tailored to each settlement.  *See* Revised Order, ¶ 4.  Meanwhile, the Revised Order provides a predictable and enforceable system for withholding assessments in routine circumstances, such as individual plaintiffs' settlements.  It recognizes ongoing developments, such as bankruptcy filings by Defendants, by deferring to the bankruptcy courts for fees and costs determinations in those cases.  And it honors previous orders and agreements as to the Attorney Generals.  Plaintiffs respectfully urge its entry by the Court.

Dated:  March 6, 2020                                       Respectfully submitted,

/s/*Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

>Paul T. Farrell, Jr., Esq.
>FARRELL LAW
>422 Ninth Street, 3rd Floor
>Huntington, WV 25701
>(304) 624-8281
>paul@farrell.law
>
>*Plaintiffs' Co-Lead Counsel*
>
>Peter H. Weinberger (0022076)
>SPANGENBERG SHIBLEY & LIBER
>1001 Lakeside Avenue East, Suite 1700
>Cleveland, OH 44114
>(216) 696-3232
>(216) 696-3924 (Fax)
>pweinberger@spanglaw.com
>
>*Plaintiffs' Liaison Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 6 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

>*/s/Peter H. Weinberger*
>Peter H. Weinberger