**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF OHIO EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*All Cases* | MDL NO. 2804<br><br>Civ. No. 1:17-md-02804-DAP<br><br>HON. JUDGE DAN A. POLSTER |

## CERTAIN DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE REGARDING EX PARTE COMMUNICATIONS

Defendants listed in the margin[1] ("Defendants") do not consent to *ex parte* communications by the Court or its Special Masters concerning settlement of any matter pending in this MDL, and have withdrawn any prior consent to such *ex parte* communications.  Dkt. No. 3200.  Therefore, as of March 2, 2020, *ex parte* communications by the Court or its Special Masters with any parties or non-parties (including any State Attorneys General) are prohibited by Canon 3(A)(4)(d) of the Code of Conduct for United States Judges.  Plaintiffs' counsel, including members of the Plaintiffs Executive Committee ("PEC"), are also independently prohibited from engaging in such *ex parte* communications with the Court and its Special Masters by ABA Model Rule Prof'l Conduct 3.5(b).

The Code of Conduct for United States Judges and the ethical rules are clear.  Neither the Court nor its Special Masters may communicate *ex parte* about a matter with any interested party

---

[1] AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation.

(including non-parties to the litigation) if the litigants do not consent.  The Plaintiffs do not seriously dispute this.  Moreover, even where there is consent, the Code of Conduct for United States Judges permits judicial participation in *ex parte* communication for purposes of aiding settlement **only** if it does not cross the line into advocacy or coercion, regardless of whether the parties have consented to *ex parte* contact.  As the Commentary to Canon 3(A)(4) states, "[a] judge may encourage and seek to facilitate settlement but should not act in a manner that coerces any party into surrendering the right to have the controversy resolved by the courts."  *See also Gerber v. Veltri*, 702 F. App'x 423, 429-30 (6th Cir. 2017) (A district judge who engages in settlement discussions must remain a "dispassionate and impartial arbiter" and not assume "the posture of an advocate." (internal citations omitted)); *Anderson v. Sheppard*, 856 F.2d 741, 745-47 (6th Cir. 1988); *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979).  These additional ethical constraints cannot be overcome by any consent that may previously have been given.

The PEC objects to these ethical restrictions and asserts that Defendants "waived their right" to affirmatively consent to the Court engaging in substantive *ex parte* conversations.  This is incorrect.  The fact that Defendants may have consented to *ex parte* communications at one point does not bind them to continue "consenting" against their will, in all circumstances for the entire course of the litigation.  The PEC offers nothing from the Canon, the ABA Model Rules, or any other legal or ethical authority to support this novel proposition.  Rather, the Canon's narrow exception to the rule against *ex parte* communications is premised on a party's affirmative consent.  *See* Canon 3(A)(4)(d) ("A judge may [, . . .] *with consent of the parties*, confer separately with the parties and their counsel in an effort to mediate or settle pending matters." (emphasis added)).  When, as here, that consent does not exist, the exception does not apply.   Indeed, it would be hard to imagine how the Court could maintain the perception of fairness in these proceedings if it were

to persist in conducting private conversations related to the matter with one of the parties or non-parties despite an explicit, ongoing objection by their opponents.

In addition, the right to consent is not merely an *individual* protection for a given litigant. It is a structural protection for the actual and perceived neutrality of the judiciary in a "system [that] assumes that adversarial testing will ultimately advance the public interest in truth and fairness." *See In re Kensington Int'l, Ltd.*, 368 F.3d 289, 310 (3d Cir. 2004) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981)).  *See also, e.g.*, *Knop v. Johnson*, 977 F.2d 996, 1011 (6th Cir. 1992) ("*Ex parte* communications from a judge's chambers to one side in a contested lawsuit are 'clearly at odds with our adversary system of justice.'" (quoting *Price Bros. Co. v. Phila. Gear Corp.*, 649 F.2d 416, 425 (6th Cir. 1981)); *In re Application of Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. 1981) ("Our adversarial legal system generally does not tolerate ex parte determinations on the merits of a civil case.").  The Canon's prohibition on *ex parte* communications absent consent thus protects public confidence in the judiciary by "prevent[ing] all the evils of *ex parte* communications: 'bias, prejudice, coercion, and exploitation.'"  *In re Kensington*, 368 F.2d at 310 (quoting Jeffrey M. Shaman et al., *Judicial Conduct and Ethics* § 5.03 (3d ed. 2000)).  Compelling a party to continue, against its will, to participate in proceedings in which opposing counsel or others engage in private conversations with the Court undermines not only the actual fairness of that proceeding, but the perception of fairness in judicial proceedings generally.

As discussed in Defendants' notice of non-consent, this Court has already recognized the restrictions on its ability to engage in substantive *ex parte* communications without consent. Although this Court denied as "moot" certain defendants' motion to prohibit *ex parte* communications in a December 5, 2019 docket entry, it did so because, "[p]er the Canon," the Court would not engage in *ex parte* communications absent those defendants "ask[ing] the Court

to do so." Non-Document Order, dated Dec. 5, 2019. Thus, contrary to the PEC's unsupported assertions, this Court has previously acknowledged that it cannot simply "exercise its case management authority" to force Defendants or any other party or non-party to submit to proceedings in which the Court engages in *ex parte* communications without consent. *See* Plaintiff's Response in Opposition at 4-5, Dkt. No. 3203.

The PEC cites this Court's Order appointing Special Masters under Rule 53 as a basis for the Court continuing *ex parte* communication without Defendants' consent. This is also unavailing. First, the Order provides no authority for the Court to engage in substantive *ex parte* communications with either parties or non-parties. It in fact prohibits the "Special Masters [from] communicat[ing] to the Court *any substantive matter* the Special Master learned during an *ex parte* communication between the Special Master and any party." Appointment Order at 3, Dkt. No. 69 (emphasis added). Further, although Rule 53 allows for *ex parte* communications between the Special Master and the Court in some circumstances, it says nothing of, and therefore grants no authority for, the Court engaging in *ex parte* communications on substantive matters with parties or non-parties. Indeed, the commentary to Rule 53 warns that "[e]x parte communications between a master and the court present troubling questions," and "[o]rdinarily the order should prohibit such communications." Fed. R. Civ. P. 53(b), advisory committee's note to 2003 amendment. Rule 53 therefore does not change the fact that a court cannot order a party to "consent" to the court's *ex parte* communications against that party's will, no matter how much an opposing party would like it to do so. *See* Canon 3(A)(4)(d).

There is also no basis for the PEC's implication that Defendants must meet an unspecified burden of proof regarding the factual basis for declining consent to *ex parte* communications, and the PEC cites none. Litigants have the right to grant or withhold consent to *ex parte*

4

communications at their discretion, including when, as here, articulating more requires discussion of settlement negotiations in violation of the Court's orders on confidentiality.  Moreover, the PEC does not identify any detrimental reliance or unfair prejudice from a prospective restriction on one-sided conversations with the Court.  Defendants intend to continue to work towards resolution, but the most productive path to a potential resolution does not include *ex parte* communications with the Court or its Special Masters.

March 9, 2020                                                      Respectfully submitted,

*/s/ March H. Lynch*                                       */s/ Enu Mainigi*
Geoffrey E. Hobart                                         Enu Mainigi
Mark H. Lynch                                              F. Lane Heard III
COVINGTON & BURLING LLP                                    Ashley W. Hardin
One CityCenter                                             WILLIAMS & CONNOLLY LLP
850 Tenth Street, N.W.                                     725 Twelfth Street, N.W.
Washington, DC 20001                                       Washington, DC 20005
Tel: (202) 662-5281                                        Tel.: (202) 434-5000
ghobart@cov.com                                            Fax: (202) 434-5029
mlynch@cov.com                                             emainigi@wc.com
*Counsel for McKesson Corporation*                         lheard@wc.com
                                                           ahardin@wc.com
                                                           *Counsel for Cardinal Health, Inc.*

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com
*Counsel for AmerisourceBergen Drug Corporation*

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 9, 2020 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/Mark H. Lynch*
Mark H. Lynch
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001
Tel: (202) 662-5544
mlynch@cov.com
*Counsel for McKesson Corporation*
