# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 1:17-md-2804 |
| *Cleveland Bakers and Teamsters Health and Welfare Fund, et al. v. Purdue Pharma L.P., et al., Case No. 1:18-op-45432-DAP* | Hon. Dan Aaron Polster |

**MEMORANDUM IN SUPPORT OF DISTRIBUTORS' MOTION TO CERTIFY
UNDER 28 U.S.C. § 1292(b) THE COURT'S FEBRUARY 21, 2020 ORDER
DENYING IN PART THEIR MOTION TO DISMISS THIRD-PARTY PAYOR
CLAIMS, FOR PURPOSES OF SEEKING IMMEDIATE APPEAL OF
THE COURT'S RULINGS THAT DENIED DISMISSAL OF THE RICO CLAIMS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

CERTIFICATION FOR IMMEDIATE INTERLOCUTORY APPEAL OF THE RICO RULINGS INVOLVING THIRD-PARTY PAYORS IS WARRANTED ........................................................... 4

I.   The Denial of Distributors' Motion to Dismiss the Third-Party Payors' RICO Claims Involved Controlling Questions of Law on Causation and Injury. ........................................ 4

II.  There Is Substantial Ground for Difference of Opinion on Both the RICO Causation Ruling and the RICO Injury Ruling.................................................................................. 5

     A.  Jurists Could Reasonably Disagree Regarding Whether Third-Party Payors' Claims Meet the RICO Direct Injury and Proximate Causation Requirement. .......................... 5

         1.  *Increased expenditures for opioids prescribed by physicians for individuals* ............ 6

         2.  *Increased expenditures for medical treatment incurred by individuals who misused opioids* ................................................................................................ 13

     B.  Jurists Could Reasonably Disagree Regarding Whether Third-Party Payors' Claims Meet the RICO "Business or Property" Injury Requirement. ........................................ 16

III. Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation. 18

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Bradshaw*,
    2010 WL 816532 (N.D. Ohio Mar. 4, 2010) .............................................................................1

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
    219 F.3d 674 (7th Cir. 2000) ...................................................................................................4

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
    228 F.3d 429 (3d Cir. 2000).....................................................................................................13

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*,
    241 F.3d 696 (9th Cir. 2001) ...................................................................................................13

*Brown v. Ajax Paving Indus., Inc.*,
    752 F.3d 656 (6th Cir. 2014) ...................................................................................................17

*City of Cleveland v. Ameriquest Mortg. Sec.*,
    615 F.3d 496 (6th Cir. 2010) ...................................................................................................15

*Desiano v. Warner-Lambert Co.*,
    326 F.3d 339 (2d Cir. 2003)......................................................................................................7

*Edmondson v. AZ Petition Partners, LLC*,
    2012 WL 3637769 (E.D. Ky. Aug. 22, 2012).........................................................................16

*Fiala v. B & B Enters.*,
    738 F.3d 847 (7th Cir. 2013) ...................................................................................................12

*Gucwa v. Lawley*,
    731 F. App'x 408 (6th Cir. 2018) ...........................................................................................16

*Harter v. Beach Oil Co.*,
    2011 WL 2358552 (M.D. Tenn. June 9, 2011).........................................................................3

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010)................................................................................................................5, 15

*Holmes v. Secs. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)........................................................................................................5, 13, 15

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*,
    804 F.3d 633 (3d Cir. 2015)....................................................................................................10

*In re Baker & Getty Fin. Servs., Inc.*,
  954 F.2d 1169 (6th Cir. 1992) ................................................................... *passim*

*In re Blue Cross Blue Shield Antitrust Litig.*,
  2018 WL 3326850 (N.D. Ala. June 12, 2018) .......................................... 20

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
  915 F.3d 1 (1st Cir. 2019) ........................................................................ 10

*In re Insulin Pricing Litig.*,
  2019 WL 643709 (D.N.J. Feb. 15, 2019) ................................................. 11

*In re Miedzianowski*,
  735 F.3d 383 (6th Cir. 2013) .................................................................... 12

*In re Nat'l Prescription Opiate Litig.*,
  2018 WL 6628898 .................................................................................... 17

*In re Neurontin Marketing & Sales Practices Litig.*,
  712 F.3d 21 (1st Cir. 2013) ................................................................... 9, 10

*In re Trump*,
  874 F.3d 948 (6th Cir. 2017) ............................................................... 1, 4, 5

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*,
  2010 WL 3119499 (S.D. Ill. Aug. 5, 2010) ............................................... 8

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999) ...................................................... 14, 15

*Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*,
  634 F.3d 1352 (11th Cir. 2011) ................................................................. 7

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
  731 F.3d 556 (6th Cir. 2013) ......................................................... 2, 16, 17

*James v. Meow Media, Inc.*,
  90 F. Supp. 2d 798 (W.D. Ky. 2000) ....................................................... 16

*Johnson v. Jones*,
  515 U.S. 304 (1995) .................................................................................... 2

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
  191 F.3d 229 (2d Cir. 1999) ................................................................. 14, 15

*Lyons v. Philip Morris Inc.*,
  225 F.3d 909 (8th Cir. 2000) ............................................................... 14, 15

*Malamud v. Sinclair Oil Corp.*,
521 F.2d 1142 (6th Cir. 1975) .................................................................4

*McCarthy v. Recordex Serv., Inc.*,
80 F.3d 842 (3d Cir. 1996)......................................................................12

*Negron v. United States*,
553 F.3d 1013 (6th Cir. 2009) ...............................................................2, 8

*Newsome v. Young Supply Co.*,
873 F. Supp. 2d 872 (E.D. Mich. 2012)................................................4, 5

*Or. Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris Inc.*,
185 F.3d 957 (9th Cir. 1999) .......................................................9, 14, 15

*Ouwinga v. Benistar 419 Plan Servs., Inc.*,
694 F.3d 783 (6th Cir. 2012) .................................................................18

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm.
Co.*, 943 F.3d 1243 (9th Cir. 2019)...........................................................9

*Perry v. American Tobacco Co.*,
324 F.3d 845 (6th Cir. 2003) .................................................................14

*Popular Leasing U.S.A., Inc. v. Forman*,
2009 WL 2969519 (D.N.J. Sept. 14, 2009) .............................................19

*Regence Blueshield v. Philip Morris Inc.*,
5 F. App'x 651 (9th Cir. 2001) ...............................................................13

*Se. Laborers Health & Welfare Fund v. Bayer Corp.*,
444 Fed. App'x 401 (11th Cir. 2011) ........................................................7

*Se. Laborers Health & Welfare Fund v. Bayer Corp.*,
655 F. Supp. 2d 1270 (S.D. Fla. 2009) ......................................................8

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
806 F.3d 71 (2d Cir. 2015)........................................................................7

*Serv. Emp. Int'l Union Health & Welfare Fund v. Philip Morris Inc.*,
249 F.3d 1068 (D.C. Cir. 2001) .............................................................13

*Sidney Hillman Health Center of Rochester v. Abbott Labs.*,
873 F.3d 574 (7th Cir. 2017) ................................................................6, 7

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
171 F.3d 912 (3d Cir. 1999).....................................................................14

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012) ........................................................................4, 19

*Susan B. Anthony List v. Driehaus*,
    2011 WL 5299378 (S.D. Ohio Nov. 2, 2011)......................................................20

*Tex. Carpenters Health Benefit Fund v. Philip Morris Inc.*,
    199 F.3d 788 (5th Cir. 2000) .............................................................................14

*Trollinger v. Tyson Foods, Inc.*,
    370 F.3d 602 (6th Cir. 2004) .............................................................................11

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010).................................................................................7

*United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund
    v. Amgen, Inc.*, 400 F. App'x 255 (9th Cir. 2010) ...........................................9, 13

*United Food & Commercial Workers Unions, Emp'rs Health & Welfare Fund v.
    Philip Morris, Inc.*, 223 F.3d 1271 (11th Cir. 2000) ...........................................13

*United States v. Harchar*,
    331 B.R. 720 (N.D. Ohio 2005)............................................................................4

*United States v. Philip Morris USA Inc.*,
    2004 WL 1514215 (D.D.C. June 25, 2004)........................................................19

*W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*,
    138 F. Supp. 2d 1015 (W.D. Tenn. 2000)......................................................18, 19

*Winnett v. Caterpillar, Inc.*,
    2007 WL 2123905 (M.D. Tenn. July 20, 2007) .................................................19

**Statutes**

18 U.S.C. § 1962................................................................................................4, 5, 18

18 U.S.C. § 1964(c) .....................................................................................4, 5, 11, 16

28 U.S.C. § 1292(b) ................................................................................................. *passim*

Racketeer Influenced and Corrupt Organizations Act, 18 USC. §§ 1961 *et seq.* ............... *passim*

Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation ("Distributors") move this Court to certify under 28 U.S.C. § 1292(b) the Court's February 21, 2020 Opinion and Order, Dkt. 3177 ("Order") denying in part their motion to dismiss claims asserted by Cleveland Bakers and Teamsters Health and Welfare Fund and Pipe Fitters Local Union No. 120 Insurance Fund (collectively, the "Third-Party Payors"), for purposes of an immediate appeal of the Court's rulings that denied dismissal of the RICO claims. Specifically, Distributors seek certification of the Order so they may request an interlocutory appeal of the following issues:

1. Whether the Third-Party Payors' allegations meet RICO's direct injury and proximate causation requirement.

2. Whether the Third-Party Payors' allegations satisfy RICO's requirement of injury to "business or property."

## PRELIMINARY STATEMENT

Distributors request certification to seek interlocutory appellate review of the rulings entered by this Court denying their motion to dismiss the RICO claims by Third-Party Payors.[1] Those RICO rulings meet the requirements for Section 1292(b) certification because they present (1) controlling questions of law; (2) there is "substantial ground for difference of opinion" on the questions; and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017).

This Court itself has recognized the deep Circuit split involving the first question on which Distributors request certification—whether third-party payors' claims meet RICO's direct injury

---

[1] A "district court may grant certain issues for interlocutory appeal while denying others." *Adams v. Bradshaw*, 2010 WL 816532, at *2 (N.D. Ohio Mar. 4, 2010) (citing *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 472–73 (6th Cir. 2008)).

and proximate causation requirement, with six different Circuits having weighed in on that disagreement. Order at 16.  A legal ruling involving a Circuit split is a perfect candidate for Section 1292(b) certification because the split necessarily demonstrates that there is substantial ground for difference of opinion.  *See, e.g.*, *Negron v. United States*, 553 F.3d 1013, 1015 (6th Cir. 2009) (motion to certify granted "considering the circuit split on the issue"); *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 (6th Cir. 1992) (granting "permission to take an interlocutory appeal … [as] the circuits are split on this issue").  And this Court's ruling presents an even stronger ground for difference of opinion because Distributors are differently situated than were the manufacturer defendants in the cases comprising the Circuit split on which this Court relied. Distributors are not alleged to have made marketing misrepresentations to the Third-Party Payors or anyone else regarding safety, efficacy, or addictive properties of opioid medications or to have otherwise caused doctors to over-prescribe them.

There also is substantial ground for difference of opinion on the second question on which Distributors request certification—whether the allegations by the Third-Party Payors satisfy RICO's requirement of injury to "business or property."  The Third-Party Payors seek reimbursement for expenditures made for individual patients' medical treatment.  A jurist could reasonably conclude that such claims cannot survive a motion to dismiss based on the Sixth Circuit's holding that RICO liability does not extend to claims for "personal injuries" or claims for "pecuniary losses flowing from those personal injuries."  *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565 (6th Cir. 2013) (en banc).

The other two considerations for interlocutory appeal are readily met here as well.  The RICO rulings plainly involve "questions of law"—and they are "controlling" because appellate resolution of those questions would "simplify, or more appropriately direct, the future course of

litigation," thereby "reduc[ing] the burdens of future proceedings."  *Johnson v. Jones*, 515 U.S. 304, 309 (1995).  "An interlocutory appeal is favored where reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens," as would be the case here.  *Harter v. Beach Oil Co.*, 2011 WL 2358552, at *2 (M.D. Tenn. June 9, 2011).

Certification of the RICO rulings for immediate appellate review also "may materially advance the ultimate termination of the litigation" because early appellate resolution of these key legal questions will streamline the case by eliminating the RICO claims or, at minimum, clarify the contours of those claims.  Either way, an appellate decision will assist in decreasing disputes over the scope of discovery and trial preparation.  It also could provide guidance for other third-party payor cases currently pending before this Court.  Finally, unless and until the Sixth Circuit weighs in on Distributors' challenges to the RICO claims, the parties' very different calculations regarding the merits of those claims—and the prospect of mandatory treble damages—will continue to be a significant obstacle to any meaningful discussion regarding the possibility of resolving the litigation.[2]

---

[2]  Unlike Distributors' previous request for Section 1292(b) certification in the *Summit County* case, there is no pending trial schedule here and so there is no concern about any burdens of appellate briefing in the context of an approaching trial.  *See* Dkt. 1283 at 2 (denying motion on grounds of additional burden given trial scheduling).  A certification application does not automatically stay proceedings in this Court.  *See* 28 U.S.C. § 1292(b) ("application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order").  Although Distributors would favor a stay, it will be up to this Court to determine whether one is appropriate.  Distributors do not intend to seek a stay from the Court of Appeals if this Court certifies an interlocutory appeal but does not grant a stay.

CERTIFICATION FOR IMMEDIATE INTERLOCUTORY APPEAL OF THE RICO RULINGS
INVOLVING THIRD-PARTY PAYORS IS WARRANTED

## I.    The Denial of Distributors' Motion to Dismiss the Third-Party Payors' RICO Claims Involved Controlling Questions of Law on Causation and Injury.

The Court's denial of the motion to dismiss the Third-Party Payors' RICO claims involved purely legal questions:  whether the Complaint's allegations meet the requirements that a plaintiff bringing a RICO claim under 18 U.S.C. § 1964(c) [1] must be injured in its "business or property" and [2] that such injury be "by reason of," *i.e.*, be directly and proximately caused by, the defendant's predicate RICO violations under 18 U.S.C. § 1962.  Order at 15 (quoting 18 U.S.C. § 1964(c)).  Courts have recognized that these types of rulings are appropriate candidates for interlocutory appellate review.  *See, e.g.*, *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1146 (6th Cir. 1975) (accepting immediate appeal to determine whether plaintiff alleged injury to "business or property" under Section 4 of the Clayton Act); *see also Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) (questions of law include "the meaning of a statutory … provision"); *United States v. Harchar*, 331 B.R. 720, 724 (N.D. Ohio 2005) ("Statutory interpretation … involves pure questions of law.").  And the "sufficiency of a complaint is a question of law" for purposes of 28 U.S.C. § 1292(b).  *See, e.g.*, *In re Trump*, 874 F.3d at 951 (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011)).

These legal questions at the center of the Court's RICO rulings are undoubtedly controlling.  The "Sixth Circuit has … set a low bar for a determination that a question of law is 'controlling' in the context of a motion for certification under § 1292(b)."  *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875–76 (E.D. Mich. 2012).  A question is controlling even if appellate review would not result in dismissal of the entire action.  *See In re Baker*, 954 F.2d at 1172 ("The resolution of an issue need not necessarily terminate an action … to be 'controlling'" (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990))); *see also Sterk v.*

*Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) ("neither the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there").  Instead, "[a]ll that must be shown … is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *Newsome*, 873 F. Supp. 2d at 876 (quotation omitted); *accord In re Baker*, 954 F.2d at 1172 n.8; *In re Trump*, 874 F.3d at 951.  This criterion plainly is satisfied here—as this Court recognized, if "Plaintiffs failed to adequately plead proximate cause … their [RICO] claims should be dismissed."  Order at 14.

## II.     There Is Substantial Ground for Difference of Opinion on Both the RICO Causation Ruling and the RICO Injury Ruling.

A "substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution."  *In re Trump*, 874 F.3d at 952 (quoting *Reese v. BP Exploration, Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)).   As demonstrated below, there can be no doubt that jurists might reasonably disagree on the legal sufficiency of the Third-Party Payors' RICO claims against Distributors.

### A.     Jurists Could Reasonably Disagree Regarding Whether Third-Party Payors' Claims Meet the RICO Direct Injury and Proximate Causation Requirement.

Supreme Court precedent is clear that to sufficiently allege injury "by reason of" a RICO predicate violation, 18 U.S.C. § 1964(c), a plaintiff must allege that a pattern of racketeering activity, 18 U.S.C. § 1962, "was a 'but for' cause of the claimed injury, and was the proximate cause as well."  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Thus, a plaintiff must allege a "direct relation between the injury asserted and the injurious conduct alleged."  *Holmes*, 503 U.S. at 268.  A link between a predicate RICO violation and an injury that is "too remote" or "purely contingent" will

not suffice.  *Id.* at 268, 271; *accord Hemi*, 559 U.S. at 10 (theories of causation are inadequate if they "go beyond the first step").

Here, as this Court acknowledged, the Third-Party Payors allege that Distributors injured them in two ways.  They allege Distributors caused them harm due to (1) increased expenditures for opioids that physicians prescribed for individuals; and (2) increased expenditures for medical treatment incurred by individuals who misused opioids.  *See* Order at 11.  There is substantial ground for difference of opinion as to whether the Third-Party-Payors' allegations relating to either alleged injury meet RICO's direct injury and proximate causation requirement.  Indeed, there is a deep circuit split that bears on this issue.

### 1.      *Increased expenditures for opioids prescribed by physicians for individuals*

Third-Party Payors allege that "Defendants' misrepresentations and failures to comply with their antidiversion obligations induced" the Third-Party Payors "to make hundreds of thousands of dollars of payments for opioids which [they] would not have otherwise made."  Order at 11. There is substantial ground for difference of opinion regarding whether those allegations are sufficient to plead direct injury and proximate causation under RICO as to Distributors.

There is a deep Circuit split involving that RICO causation issue, with the First, Third, and Ninth Circuits ruling in favor of various plaintiffs, and the Seventh and Eleventh Circuits ruling in favor of various defendants, and within the Second Circuit, one panel ruling for various defendants on RICO proximate causation and another ruling for plaintiffs on a state law proximate causation question.  This Court specifically acknowledged that split, noting that the several circuits that have "appl[ied] RICO's proximate causation analysis to [third-party payor] claims against pharmaceutical companies have reached varying conclusions concerning the viability of these claims."  Order at 16.

The Second, Seventh, and Eleventh Circuits have held that allegations like those made in this case do not meet RICO's direct injury and proximate cause requirement.  In *Sidney Hillman Health Center of Rochester v. Abbott Labs.*, 873 F.3d 574, 578 (7th Cir. 2017), the Seventh Circuit affirmed the dismissal of third-party payor RICO claims against a manufacturer for its off-label promotion of a product.  The court explained that the payors could not be "directly injure[d]" under RICO because they were not "the initially injured parties."  *Id.* at 576.  "Payors part with money, to be sure, but … [t]he patients' health and financial costs come first in line temporally; that pharmacies then send bills to Payors, which cover the remainder of the expense, does not make those Payors the initial losers from the promotional scheme."  *Id.*  The payors, in other words, are "several levels removed from the causal sequence."  *Id.* at 578 (quoting *Holmes*, 503 U.S. at 271–72).

In reaching its decision in *Sidney Hillman*, the Seventh Circuit agreed with rulings by the Second Circuit, which the Seventh Circuit explained had "h[e]ld that there are so many layers, and so many independent decisions, between [alleged misconduct by pharmaceutical companies] and payment [by third-party payors] that the causal chain is too long to satisfy the Supreme Court's requirements" regarding RICO causation.  *Id.* (discussing *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71 (2d Cir. 2015), and *UFCW Local 1776 v. Eli Lilly & Co*., 620 F.3d 121 (2d Cir. 2010))).[3]  The Seventh Circuit also emphasized that the Eleventh Circuit "agree[s] and deem[s] this so straightforward that [it has] issued nonprecedential decisions."  *Sidney Hillman Health Ctr.*, 873 F.3d at 578 (discussing *Se. Laborers Health &*

---

[3] The panel of the Second Circuit on which this Court relied as supporting the other side of the split, *Desiano v. Warner-Lambert Co*., 326 F.3d 339 (2d Cir. 2003), addressed "not the law of RICO; [but] rather, the law of New Jersey."  *Id.* at 349.  And *Desiano* was another case in which the court's analysis turned on a manufacturer's "misrepresentation of [their drug's] safety," as discussed below.  *Id.*

*Welfare Fund v. Bayer Corp.*, 444 Fed. App'x 401 (11th Cir. 2011)); *see also Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1370 (11th Cir. 2011) (Martin, J. concurring) ("The independent decisions of the physicians and other intermediaries involved … eviscerates the chain of causation necessary [for a third-party payor] to demonstrate a RICO violation.").[4]

      The First, Third, and Ninth Circuits have reached contrary conclusions, and that Circuit split is reason enough to certify an immediate appeal here.  Indeed, given the divergent views of the Second, Seventh, and Eleventh Circuits, on the one hand, and the First, Third, and Ninth, on the other, there can be no dispute that jurists could reasonably disagree on the legal issues central to this Court's ruling—the disagreement is real, not hypothetical.  *See, e.g.*, *Negron*, 553 F.3d at 1015 (motion to certify granted "considering the circuit split on the issue"); *In re Baker*, 954 F.2d at 1172 (similar).  Notably, the Sixth Circuit has not yet weighed in on the issue and now is the time for it to decide whether this Court's ruling that the First, Third, and Ninth Circuit cases are more persuasive and should control this case is correct.

      The need for appellate resolution here is even more apparent because the reasoning underlying the First, Third, and Ninth Circuit decisions adverse to certain manufacturers does not support the conclusion that the Third-Party Payors in this case have adequately alleged proximate causation **as to Distributors**.  Those decisions involved claims against manufacturers alleged to have engaged in fraudulent misrepresentations, and thus are distinguishable from the claims by the

---

[4] *See also, e.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 2010 WL 3119499 (S.D. Ill. Aug. 5, 2010) (dismissing third-party payors' RICO claims against pharmaceutical company, explaining "the causal link necessarily involves the decision making process of the patient, the prescribing physician, and the third-party payor.  This demonstrates the attenuation in Plaintiffs' civil RICO claims."); *Se. Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270, 1282–84 (S.D. Fla. 2009) (similar dismissal, explaining the "direct victims of [a pharmaceutical company's] alleged wrongful activity" are "those patients who suffered physical injury"; a payor's attempt to recover payments made for the injurious drug fails for the reasons of "the tobacco cases"), *aff'd*, 444 Fed. App'x 401.

Third-Party Payors against Distributors—who, as this Court has acknowledged, are not alleged to have engaged in any such misrepresentations.  Order at 16; *see also id*. at 29 (acknowledging that Distributors "are not accused of making direct misrepresentations").

The Ninth Circuit in *Painters & Allied Trades District Council 82 Health Care Fund v. Takeda Pharmaceutical Co*., 943 F.3d 1243 (9th Cir. 2019), addressed third-party payors' claims against two pharmaceutical manufacturers for "fraudulent[ly] marketing" a drug, alleging that they had "intentionally misled" the third-party payors to believe that the product did not increase a person's risk of developing a certain type of cancer.  *Id.* at 1248.  The plaintiffs alleged that they "would not have … paid for" the drug had they known of the risk, and they sought to recover for payments they had made.  *Id.* at 1247, 1251 n.7.  On those facts, the Ninth Circuit reasoned that the third-party payors were "immediate victims of Defendants' alleged fraudulent scheme" and had suffered injury independent of any personal injury suffered by the beneficiaries.  *Id.* at 1251–53.  The panel distinguished other Ninth Circuit decisions denying RICO relief to third-party payors, reasoning that, because plaintiffs alleged fraudulent marketing by the manufacturers on which the third-party payors directly relied themselves, the chain of causation involved fewer causal links than other cases.  *Id.* at 1252–53 nn.9–10 (discussing *Or. Laborers*, 185 F.3d at 961 and *United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010)).

The First and Third Circuits likewise addressed whether a pharmaceutical manufacturer's fraudulent marketing campaign might directly injure third-party payors.  The First Circuit in *In re Neurontin Marketing & Sales Practices Litigation*, 712 F.3d 21 (1st Cir. 2013), addressed a third-party payor suit against a manufacturer for its alleged "fraudulent marketing" of a drug "for off-label uses," for which it was allegedly ineffective.  *Id.* at 25.  The court concluded that there was

an adequate allegation of direct injury insofar as the drug was alleged to have been "fraudulently marketed" by the defendant to induce physicians to prescribe the drug for such uses to be paid for by the third-party payor, whose "employees directly relied on" the defendant's alleged misrepresentations "in preparing monographs and formularies." *Id.* at 39–40, 47.[5]  Similarly, the Third Circuit in *In re Avandia Marketing, Sales Practices & Products Liability Litigation*, 804 F.3d 633 (3d Cir. 2015), addressed claims by third-party payors based on a manufacturer's "alleged misrepresentation … of the significant safety risks associated with use" of a drug.  *Id.* at 634.  The court found persuasive the third-party payors' argument that "the misrepresentation" of certain risks in taking the drug caused them to place the drug in their formulary, which produced "an economic injury independent of" any injury to users.  *Id.* at 644; *see also id.* (viewing direct injury as an "overvaluation" of the market price of the drug due to the third-party payors' reliance on the alleged misrepresentations when including it on formularies).

Whatever the merits of those decisions involving manufacturers who allegedly engaged in marketing misrepresentations of their products, they do not support the conclusion that Third-Party Payors in this case adequately pled RICO direct injury and proximate causation *as to Distributors*. The crux of the Third-Party Payors' Complaint here is that "[t]hrough a massive marketing campaign premised on false and incomplete information, the *Marketing Defendants* … engineered a dramatic shift in how and when opioids are prescribed by the medical community," and that "formulary recommendations [to the Funds] … were [also] informed by the *Marketing Defendants'* misrepresentations."  Am. Compl. ¶¶ 9, 691 (emphases added).  Distributors are *not* among the Marketing Defendants, and the Complaint does *not* allege that Distributors were part

---

[5] *See also In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 915 F.3d 1, 6 (1st Cir. 2019) (relying on *Neurontin* in another case alleging a manufacturer's "comprehensive off-label marketing scheme … aimed at fraudulently inducing doctors to write … prescriptions").

of the alleged "Opioid Marketing Enterprise" that it claims "concealed the true risks and dangers of opioids from the medical community and the public." *Id.* ¶¶ 839–41.

The Complaint does not assert that Distributors made misrepresentations to the Third-Party Payors—or anyone else—regarding safety, efficacy, or addictive properties of opioid medications. There are no well-pled allegations that Distributors induced doctors to write additional prescriptions or caused the Third-Party Payors to include opioid products in formularies.  Thus, there is substantial room for disagreement with the Court's decision to apply the reasoning of the First, Third, and Ninth Circuit's decisions to the Third-Party Payors' claims against Distributors.

The Complaint suggests implausibly that Distributors' alleged noncompliance with certain regulatory provisions misled the Third-Party Payors regarding the extent of opioid diversion, *see id*. ¶¶ 761–62, but those regulatory provisions apply to Distributors' interactions with and registration by DEA, not to the Third-Party Payors, and the information that Distributors provide to DEA is non-public and confidential.  In any event, such an alleged causal chain would be speculative, unforeseeable, and well beyond the direct injury and proximate causation required to state a RICO claim under 18 U.S.C. § 1964(c).

Those Circuit decisions regarding certain manufacturing defendants also should have had no bearing here because the Third-Party Payors do not allege that they purchased opioids directly from Distributors.  To the contrary, the Complaint alleges that the Third-Party Payors "indirectly purchased, paid for, and/or reimbursed for opioids intended for consumption by [their] participants."  Am. Compl. ¶¶ 28–29; *see also* Order at 7.  Indirect purchasers do not have a valid RICO cause of action.  *See, e.g.*, *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 616 (6th Cir. 2004) ("Indirect purchasers," i.e., "plaintiffs who suffer derivative or 'passed-on' injuries," "lack standing under RICO"); *In re Insulin Pricing Litig*., 2019 WL 643709, at *9–11 (D.N.J. Feb. 15,

- 11 -

2019) ("The central and dispositive issue in a RICO action is whether plaintiffs are 'direct purchasers'"; if not, the plaintiff has no cause of action, "even if the majority of the injury is borne by the indirect purchaser" (alterations omitted) (quoting *Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 95 (3d Cir. 2011), and *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 851 (3d Cir. 1996))).[6]

In sum, the Circuit decisions authorizing third-party payor RICO claims to proceed involved claims against manufacturers who were alleged to have engaged in a fraudulent scheme of marketing on which the third-party payors relied, not claims against wholesale distributors who are not alleged to have engaged in fraudulent marketing to physicians, third-party payors, or anyone else. *See* Order at 27 (recognizing that issue of whether non-marketing defendants should be liable to third-party payors under RICO "is not addressed in [the Third-Party Payors'] cases"). The absence of authority directly supporting this Court's ruling to allow the Third-Party Payors to move forward on their RICO claims against non-marketing Distributors weighs heavily in favor of certification of the RICO rulings for interlocutory appeal. *See Mohawk Indus.*, 558 U.S. at 111 ("district courts should not hesitate to certify an interlocutory appeal" under Section 1292(b) for cases that "involve[] a new legal question"); *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) ("substantial ground for difference of opinion exists" when "the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions" (quotation omitted)).

---

[6] *See also, e.g.*, *Fiala v. B & B Enters.*, 738 F.3d 847, 851 (7th Cir. 2013) (district court correctly dismissed RICO claim pursuant to "indirect purchaser" or "indirect victim" rule); *McCarthy*, 80 F.3d at 855 ("The precepts taught by Illinois Brick and Utilicorp apply to RICO claims, thereby denying RICO standing to indirect victims.").

### 2. *Increased expenditures for medical treatment incurred by individuals who misused opioids*

Third-Party Payors also allege as injury, and "seek reimbursement for[,] amounts paid for opioid-related medical treatment for their members."  Order at 11.  Here, too, there is substantial ground for difference of opinion regarding whether they have adequately pled that Distributors were a direct and proximate cause of that purported injury.

Injuries asserted by third-party payors that are "purely contingent" on harm to beneficiaries are inadequate to support RICO causation.  *Holmes*, 503 U.S. at 721.  "The usual … rule is that a [third-party payor] has no direct cause of action … against one who injures the [payor's] beneficiary, imposing increased costs upon the [payor]."  *United Food & Commercial Workers Unions, Emp'rs Health & Welfare Fund v. Philip Morris, Inc.*, 223 F.3d 1271, 1274 & n.7 (11th Cir. 2000); *see Holmes*, 503 U.S. at 268–69 ("[A] plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover.").  For that reason, the courts of appeals in the tobacco litigation all "agreed that [third-party payors such as] union trust funds lack standing to bring … RICO claims against the tobacco industry to recover their increased expenditures."  *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 703 (9th Cir. 2001); *accord United Food*, 223 F.3d at 1274 (courts of appeals were "uniform[]" in "reject[ing]" RICO claims "brought against tobacco companies by union health-care funds").[7]

---

[7] *See Serv. Emp. Int'l Union Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1069, 1073 (D.C. Cir. 2001) (reversing district court's failure to dismiss welfare funds' RICO claim against tobacco companies; "the alleged harm arising from payment of medical expenses by the funds … is itself derivative of alleged injuries to individual smokers"); *Regence Blueshield v. Philip Morris Inc.*, 5 F. App'x 651, 653 (9th Cir. 2001) (similar; "the Plans ... do not have … RICO standing [as their] claimed damages were not proximately caused by the Tobacco Firms' unlawful conduct, but were instead derivative of the personal injuries of smokers afflicted by tobacco-related illnesses"); *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 433, 446 (3d Cir. 2000) (similar; plaintiffs' "injuries are derivative of the nonpaying patients' injuries" and thus are

In *Perry v. American Tobacco Co.*, 324 F.3d 845 (6th Cir. 2003), the Sixth Circuit "agree[d] with the essential holdings of [these] circuits." *Id.* at 849. As the court explained, because the claims of third-party payors were "purely contingent on harm to the third-party smokers," they were "too remote" and "clearly indirect" for purposes of RICO, as were the claims of individual plan subscribers that were before the court and which the court rejected. *Id.* at 848–49 (quotation omitted). A court adhering to *Perry* and the tobacco cases could reasonably conclude that the Third-Party Payors here failed to allege causation that meets the requirements of RICO because their claims are similarly "contingent on harm" to beneficiaries or otherwise "too remote." *Id.*

Third-Party Payors allege that they made expenditures for medical treatment because individuals were treated for alleged personal injuries that resulted from "misuse, addiction and/or overdose." Am. Compl. ¶ 960; *see also id.* ¶ 961 ("But for the opioid-addiction epidemic … Plaintiffs would not have lost money."). Just as in the tobacco cases, "[w]ithout injury to the

---

"too remote from, and not proximately caused by, the tobacco companies' alleged wrongdoing."); *Lyons v. Philip Morris Inc.*, 225 F.3d 909, 914 (8th Cir. 2000) (similar; "[t]he [Plans] allege an indirect injury—that the defendants' tobacco products cause illnesses in plan beneficiaries who smoke, and the plans must pay the costs of treating those illnesses"); *Tex. Carpenters Health Benefit Fund v. Philip Morris Inc.*, 199 F.3d 788, 789–90 (5th Cir. 2000) (similar; we "agree[] with the essential holdings of [the other] circuit court[s]"); *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818, 822, 826 (7th Cir. 1999) (similar; "the law does not "countenance recovery by insurers whose balance sheets are affected by substances that made their insureds ill"); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239 (2d Cir. 1999) (similar; "the Funds' … damages [we]re entirely derivative of the harm suffered by plan participants as a result of using tobacco products"); *Or. Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris Inc.*, 185 F.3d 957, 967 (9th Cir. 1999) (similar; "[t]o the extent [the plaintiff benefit plans] have suffered injury, their claims are entirely derivative of the injuries suffered by smokers"); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 932 n.15 (3d Cir. 1999) (similar; the plaintiff funds could not sue under RICO as they "did not suffer damages" until tobacco companies' actions "led to an increased incident of smoking-related illnesses, which in turn led to the Funds' increased expenses").

individual [opioid users], the Funds would not have incurred any increased costs." *Laborers Local 17*, 191 F.3d at 239; *see also, e.g.*, *Lyons*, 225 F.3d at 914 ("The [Plans] allege an indirect injury—that the defendants' … products cause illnesses in plan beneficiaries …, and the plans must pay the costs of treating those illnesses."). Such expenditures that are "contingent on harm to third parties" are not direct RICO harms to the third-party payor. *Laborers Local 17*, 191 F.3d at 239; *see also Int'l Bhd. of Teamsters*, 196 F.3d at 826 (RICO does not "countenance recovery by insurers whose balance sheets are affected by substances that made their insureds ill.").

The RICO predicate violations alleged here are also "too remote" from the Third-Party Payors' claimed injuries. *Hemi*, 559 U.S. at 10. Distributors' alleged failure to prevent diversion cannot be said to cause direct injury to the Third-Party Payors, but could at most affect expenditures after many intervening actions and events, including a doctor's prescription, a pharmacist's dispensing, an individual's diversion of the prescribed medication, personal injury to an individual using the opioids, medical treatment provided to that individual, and claim submission by that individual to the Third-Party Payors. *See also, e.g.*, *City of Cleveland v. Ameriquest Mortg. Sec.*, 615 F.3d 496, 505 (6th Cir. 2010) (RICO claim failed *Holmes* direct injury test because numerous independent actors stood between defendants' alleged misconduct and plaintiff's alleged injury). At least two of these intervening acts (diversion and illicit use), moreover, are criminal violations. That all of these events occur well after Distributors deliver the medicines to the pharmacies and relinquish any control over them further confirms the too-remote nature of the Third-Party Payors' claims. *See, e.g.*, *Hemi*, 559 U.S. at 1, 11 (RICO directness requirement not satisfied where alleged injury was contingent on non-parties' decisions "not to pay taxes they were legally obligated to pay"); *Or. Laborers*, 185 F.3d at 965 ("the direct injury test … wisely limit[s] standing to sue to those situations where the chain of causation leading to

- 15 -

damages is not complicated by the intervening agency of third parties" (quoting *Laborers Local 17*, 172 F.3d at 233)).[8]

### B. Jurists Could Reasonably Disagree Regarding Whether Third-Party Payors' Claims Meet the RICO "Business or Property" Injury Requirement.

To state a RICO claim under 28 U.S.C. § 1964(c), there also must be adequate allegations that the purported injury is to the plaintiff's "business or property."  As this Court acknowledged, jurists could reasonably disagree with the Court's decision to allow Third-Party Payors to proceed with their claim to recover, as injury to their "business or property," alleged increased expenditures for payment of medical claims.  *See* Order at 37.  Indeed, the Court noted that it "harbors some doubt regarding some categories of damages that Plaintiffs claim."  *Id.*  Whether the Third-Party Payors adequately alleged valid RICO injury is a threshold question on which doubt should be resolved before the case proceeds to discovery.

The Sixth Circuit held in *Jackson v. Sedgwick Claims Mgmt. Servs.*, *Inc.*, 731 F.3d 556, 565 (6th Cir. 2013) (en banc), that Section 1964(c)'s requirement that injury be to "business or property" forecloses attempts to base RICO claims on "personal injuries" or "pecuniary losses flowing from those personal injuries."  The Third Party Payors do not allege injury to their business or property—instead, they allege pecuniary losses flowing from personal injuries to individuals. *See Gucwa v. Lawley*, 731 F. App'x 408, 412 (6th Cir. 2018) ("personal injuries and their associated pecuniary losses—***including medical expenses***—do not confer relief under [RICO]").

---

[8] *See also James v. Meow Media, Inc.*, 90 F. Supp. 2d 798, 818 (W.D. Ky. 2000) (dismissing RICO claim where criminal's "intervening acts served as a superseding cause which broke the required causal connection needed … to establish civil RICO liability"), *aff'd*, 300 F.3d 683 (6th Cir. 2002); *Edmondson v. AZ Petition Partners, LLC*, 2012 WL 3637769, at *10–12 (E.D. Ky. Aug. 22, 2012) (dismissing RICO claim as "Plaintiff's asserted injury here is the result of actions separate from the alleged RICO predicate offenses").

This Court concluded that the Sixth Circuit's decision in *Jackson* applies only when "the alleged RICO injury merely acts as an alternate theory for recovering damages otherwise available in a tort claim for personal injury and is asserted by the plaintiff him- or herself." Order at 35 (quoting Dkt. 1203 at 14). But there are reasonable grounds to disagree with that conclusion because it is contrary to Sixth Circuit authority holding that it is the "nature of the *injury*" that determines whether *Jackson* applies, not the identity of the parties. *Brown v. Ajax Paving Indus., Inc.*, 752 F.3d 656, 658 (6th Cir. 2014) (emphasis in original). In any event, if an individual suffered personal injury as a result of Distributors' alleged conduct, then the individual could recover in tort for that personal injury.[9]

This Court's reasoning confirms that there is substantial ground for difference of opinion on this question. The Court explained that, in "its *Summit County* opinion and order, the Court expressed reservations about whether a RICO plaintiff can recoup actual monetary costs paid as a result of treatment provided to or medical expenses incurred by third-party individuals for whom the RICO plaintiff had some obligation to provide or pay for care." Order at 35. And the Court acknowledged that "none of the [third-party payor] cases on which [it] relies address whether a [third-party payor] is entitled to compensation for payments it made for the medical care and treatment of an injured member or insured." Order at 38. Accordingly, there is reasonable ground

---

[9] This Court also has read *Jackson* narrowly to conclude that "perhaps" only "pecuniary losses [that] arise *directly* out of a personal injury" are non-recoverable. *In re Nat'l Prescription Opiate Litig.*, 2018 WL 6628898, at *7; *see* Order at 36–37 (incorporating prior opinion). But a reasonable jurist could conclude that reading does not square with *Jackson*'s unqualified holding. Moreover, the Court's conclusion supports dismissal here because—unlike in the *Summit County* case, where the local government plaintiffs sought to recover for law enforcement and other expenses—the expenditures the Third-Party Payors seek to recover are expenditures they made for payment of medical claims, which indisputably arise directly out of personal injury of an individual treated.

for a difference of opinion as to the Court's conclusion that the Third-Party Payors satisfied RICO's injury to "business or property" requirement.

**III.  Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation.**

It is evident that an immediate appeal to the Sixth Circuit of the RICO causation and RICO injury rulings "may materially advance the ultimate termination of the litigation," as set forth in 28 U.S.C. § 1292(b).

Immediate appellate review would provide important guidance to the litigants and the Court regarding the scope of the claims that can proceed in this case.  It would either streamline the case by dismissing the RICO claims or clarify the nature of those claims.  Either way, an appellate ruling would assist in decreasing disputes over the scope of discovery and trial preparation.

Immediate review of the RICO rulings, in particular, has the potential to "avoid protracted and expensive litigation."  *In re Baker*, 954 F.2d at 1172; *see also, e.g.*, *W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000) ("an interlocutory decision could have a major impact on the time and expense involved at trial," particularly in a case where "the financial and legal stakes are high").  Discovery and trial in this matter will be more difficult practically, more complex legally, and almost surely longer if the RICO claims are allowed to proceed because of the need to collect and present evidence regarding each element of the RICO claim, including (1) whether there was a RICO "enterprise," (2) whether each defendant played a role in directing the affairs of the alleged criminal enterprise, and (3) whether each defendant committed two or more RICO "predicate acts" in service of a purported enterprise.  *See* 18 U.S.C. § 1962(c); *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791–96 (6th Cir. 2012) (discussing RICO elements).  The potential to avoid complications related

- 18 -

to the RICO claims during discovery, summary judgment, and any subsequent trial on the merits amply justifies immediate appellate review.  *See, e.g.*, *Popular Leasing U.S.A., Inc. v. Forman*, 2009 WL 2969519, at *3 (D.N.J. Sept. 14, 2009) (Section 1292(b) satisfied where immediate appeal had potential for "eliminating complex issues and thereby simplifying discovery"); *United States v. Philip Morris USA Inc.*, 2004 WL 1514215, at *3 (D.D.C. June 25, 2004) (certifying RICO issue under Section 1292(b); "[t]here is no question that an interlocutory appeal of this discrete and central legal issue would conserve the resources of the Court and the parties").

This Court also analyzed the RICO causation and injury issues in terms of RICO "standing."  Order at 33–37.  Distributors' entitlement to dismissal of the Third-Party Payor RICO claims on standing grounds is also a significant basis supporting this certification request.  Appellate guidance regarding such threshold questions—whether labelled as standing or the elements of the claim—are especially well-suited for interlocutory review.  *See, e.g.*, *Winnett v. Caterpillar, Inc.*, 2007 WL 2123905, at *6 (M.D. Tenn. July 20, 2007) ("The interlocutory determination of threshold issues, such as standing, may be particularly helpful in advancing the ultimate termination of the litigation." (quotation omitted)).  There can be little question that immediate review of this Court's RICO rulings "will potentially save substantial judicial resources and litigant expense."  *City of Memphis*, 138 F. Supp. 2d at 1026.

Moreover, unless and until the Sixth Circuit determines whether the Third-Party-Payors' RICO claims are legally sustainable, the parties' very different views on the validity of those claims—and, in turn, the prospect of treble damages—will be a significant obstacle to any meaningful discussions about an alternative resolution of the litigation.  Numerous courts have recognized that an interlocutory appeal is warranted when "uncertainty about the status of [one of plaintiffs'] claims may delay settlement … and by doing so further protract the litigation."  *Sterk*,

- 19 -

672 F.3d at 536; *see also, e.g.*, *Susan B. Anthony List v. Driehaus*, 2011 WL 5299378, at *2 (S.D. Ohio Nov. 2, 2011) (interlocutory appeal may "materially advance the ultimate termination of the litigation" in part because "an affirmance may well spur the parties to settle"); *In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 3326850, at *6 n.5 (N.D. Ala. June 12, 2018) (in a large, complex MDL, "it is … plain that [granting interlocutory review] will likely affect the parties' settlement prospects").

The prospect of treble damages mandated by RICO substantially skews the settlement calculus to a far greater degree than many other issues.  Plaintiffs have every incentive to maintain their RICO claim for treble damages to take their chances at trial, and the legal authority supporting the argument that the RICO claims are inadequate as a matter of law gives Distributors every incentive to continue to seek to defeat the claims through summary judgment, trial, and appeal. Certification of an immediate appeal on the issue will shorten the road to any possible settlement, with the potential for savings in litigation and opportunity costs for the court and the litigants.

This Court's denial of the earlier motion to certify an interlocutory appeal in the *Summit County* case does not undermine this request for certification.  The Court there deemed it imprudent to add what it viewed to be "the additional burden of briefing and arguing an appeal" when the parties were just months away from a trial and were already significantly burdened by that schedule. Dkt. 1283 at 2.  There is no imminent trial scheduled in this case.  Indeed, to the contrary, discovery has not yet even begun.  An immediate appeal on the RICO causation and injury rulings is "the best way to advance the process" here.  *Id.*

## CONCLUSION

Distributors respectfully request that the Court enter the attached Proposed Order certifying under 28 U.S.C. § 1292(b) the Court's February 21, 2020 Order denying in part their motion to dismiss claims asserted by the Third-Party Payors, for purposes of an immediate appeal of the

Court's rulings that denied dismissal of the RICO claims on the RICO "by reason of" direct harm

and proximate cause requirement, and the RICO requirement of injury to "business or property."

Dated: March 23, 2020                                Respectfully submitted,

_____                             _____
Geoffrey E. Hobart                                  Robert A. Nicholas
Mark H. Lynch                                       Shannon E. McClure
Christian J. Pistilli                               REED SMITH LLP
COVINGTON & BURLING LLP                             Three Logan Square
One CityCenter                                      1717 Arch Street, Suite 3100
850 Tenth Street N.W.                               Philadelphia, PA 19103
Washington, DC 20001                                Tel.:  (215) 851-8100
Tel: (202) 662-5281                                 Fax:  (215) 851-1420
ghobart@cov.com                                     rnicholas@reedsmith.com
mlynch@cov.com                                      smcclure@reedsmith.com
cpistilli@cov.com

*Counsel for McKesson Corporation*                  *Counsel for AmerisourceBergen*
                                                    *Drug Corporation*

_____
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
EMainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Case Management Order No. 1, Dkt. 232 and 4 (Dkt. 485), and Local Rule 7.1(f), Distributors are permitted to file memoranda relating to dispositive motions of up to 30 pages. This memorandum adheres to that limit.

/s/ *Geoffrey E. Hobart*
Geoffrey E. Hobart