# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
### 100 EAST FIFTH STREET, ROOM 540
### POTTER STEWART U.S. COURTHOUSE
### CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  April 03, 2020

Mr. Henry G. Appel
Office of the Attorney General
of Ohio
30 E. Broad Street
25th Floor
Columbus, OH 43215

Re:  Case No. 20-3375, *In re: State of OH Board of Pharmacy*
Originating Case No. : 1:17-md-02804 : 1:17-op-45004 : 1:18-op-45090

Dear Counsel:

The petition for writ of mandamus has been docketed as case number **20-3375** with the caption listed above.  If you have not already done so, you must mail a copy of the petition to the lower court judge and counsel for all the other parties.

Counsel for petitioner must file an Appearance of Counsel form and, if not admitted, apply for admission to the 6th Circuit Bar by **April 17, 2020**.  The forms are available on the court's website.

The district court judge to whom this petition refers has been served with this letter.

Sincerely yours,

s/Amy E. Gigliotti
Case Management Specialist
Direct Dial No. 513-564-7012

cc:  Mr. Robert M. Barnes
Mr. Timothy Dennis Johnson
Ms. Alexandra W. Miller
Mr. Benjamin C. Mizer
Ms. Kelly A. Moore
Ms. Sandy Opacich
Mr. Kaspar Stoffelmayr

# In The United States Court of Appeals
# For the Sixth Circuit

| | |
|---|---|
| **In re: State of Ohio Board of Pharmacy,** | Case No. _____ |
| Petitioner. | United States District Court for the Northern District of Ohio, Eastern Division. |
| [County of Summit, Ohio, et al. v. Purdue Pharma, L.P., et al] | [MDL No. 2804; Case No. 18-op-45090 and 17-op-45004] |
| [Cuyahoga County v. Purdue Pharma et al.] | |
| {Relates to: National Prescription Opiate Litigation} | |

# Petition for a Writ of Mandamus to the United States District Court for the Northern District of Ohio and Motion for Stay of District Court Order Pending Mandamus

DAVE YOST
Ohio Attorney General

HENRY G. APPEL (0068479)
Principal Assistant Attorney General
30 East Broad Street, 26th Floor
Columbus, Ohio 43215
(614) 466-1502; (866) 441-4738 (fax)
henry.appel@ohioattorneygeneral.gov

Counsel for Petitioner State of Ohio Board of Pharmacy

# Table of Contents

Page

Table of Contents .................................................................................................... i

Table of Authorities ............................................................................................... ii

I. Introduction and Summary of Argument ........................................................1

II. Statement of Facts ...........................................................................................4

III. Statement of The Case ....................................................................................8

IV. Argument ......................................................................................................11

    A. The Board Has No Other Adequate Means To Attain Relief and Will Be Damaged In A Way Not Correctable On Appeal ...................................12

    B. The Court's Failure To Certify This Case for Immediate Appeal Under 28 U.S.C. §1292(b) Was Erroneous As A Matter of Law ...............................13

        1. The Court's Order Involves a Controlling Question of Law .......................14

        2. There Are Substantial Grounds For Difference of Opinion About The Controlling Issue of Law ...............................................................15

            a. A Reasonable Jurist Could Conclude That It Was Bound By Ohio Law On Confidentiality of OARRS Data ...............................15

            b. A Reasonable Jurist Could Conclude That Ohio Law Bars The Disclosure of OARRS Data .............................................................17

        3. The Disclosure of OARRS Data Involves A New Legal Issue and Is Of Special Consequence ......................................................18

    C. In The Alternative, The Court's Order Was Clearly Erroneous As A Matter of Law .........................................................................................20

        1. The Court's Order Conflicts With *Jewell* ...................................................20

        2.    The Court Abused Its Discretion ...................................................................23

    D.    The District Court's Order Raises New and Important Problems ...........................24

V.    This Court Should Stay Enforcement of The Court Order To Compel Production. ...........24

VI.    Conclusion ...........................................................................................................26

Appendix:

A    Subpoena (attachments omitted)

B    Objection Letter

C    Motion to Compel*

D    Opposition to Motion to Compel*

E    Reply in Support of Motion to Compel

F    Court Order Dated February 13, 2020

G    Motion to Reconsider*

H    Opposition to Motion to Reconsider*

I    Reply in Support of Motion to Reconsider*

J    Motion to Certify Under 28 U.S.C. 1292(b)

K    Entry Denying Motion to Reconsider and Motion to Authorize Appeal (Case Number 18-op-45090)

L    Entry Denying Motion to Reconsider and Motion to Authorize Appeal (Case Number 17-op-45004)

M    Removal Entry (Case Number 17-op-45004) (attachments omitted)

N    Removal Entry (Case Number 18-op-45090) (attachments omitted)

*    The parties filed identical pleadings in cases 17-op-45004 and 18-op-45090.  For convenience, only one copy of these filings are attached.

# Table of Authorities

**Cases**                                                                                      **Page(s)**

*Ahrenholz v. Board of Trustees*, 219 F.3d 674 (7th Cir. 2000)....................................................14

*Babcock & Wilcox Power Generation Group, Inc. v. Cormetech, Inc.*, 81 F. Supp. 3d 632 (N.D.Ohio 2015) ............................................................................................................16

*Bauman v. United States District Court*, F.2d 650 (9th Cir. 1977) ................................................12

*Cheney v. United States Dist. Court*, 542 U.S. 367 (2004)............................................................11

*Dieng v. Barr, 947 F.3d 956* (6th Cir. 2020) ..................................................................................16

*Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir. 1982) ......................................................16

*Freudeman v. Landing of Canton*, 2010 U.S. Dist. LEXIS 55273 (N.D. Ohio 2010)..................16

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ......................................................................................24

*In re Bendectin Products Liability Litigation*, 749 F.2d 300 (6th Cir. 1984) ..............................12

*In re Lott*, 424 F.3d 446 (6th Cir. 2005) ...............................................................................12,13,25

*In re Trump*, 874 F.3d 948 (6th Cir. 2017) ..............................................................................13,15

*In re Trump*, 928 F.3d 360 (4th Cir. 2019) ....................................................................................13

*Jaffee v. Redmond*, 518 U.S. 1 (1996) ......................................................................................14,21

*Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507 (6th Cir. 1990)....................................passim

*John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008). ............................................................................11

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991).............................................................................................................25

*Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009)..............................................................3,12,18

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................................................25

iii

*Reese v. BP Exploration, Inc.*, 643 F.3d 681 (9th Cir. 2011) ........................................................15

*SBAV LP v. Porter Bancorp, Inc.*, 2015 U.S. Dist. LEXIS 41162 (W.D. Ky. 2015) ...................14

*Spong v. Fidelity Nat. Property and Cas. Ins.*, 787 F.3d 296 (5th Cir. 2015) ..............................15

*State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*, 399 F. Supp. 3d 708 (E.D.Mich.2019) ..........................................................................................................................16

*State v. Meyers*, 12th Dist. App. No. CA2014-02-002, 2015-Ohio-160, 27 N.E.3d 895 ..............6

*United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462 (6th Cir. 2006) ........................................................................................................................................12

*Whalen v. Roe*, 429 U.S. 589 (1977) ...............................................................................................4

**Constitutional Provisions, Statutes, and Rules**                              **Page(s)**

28 U.S.C. §1651 .......................................................................................................3,10,12

28 U.S.C. §1291 ................................................................................................................12

28 U.S.C. §1292 ......................................................................................................... passim

O.R.C. 4715.10 .................................................................................................................18

O.R.C. 4723.41 .................................................................................................................18

O.R.C. 4729.01 .................................................................................................................18

O.R.C. 4729.54 .................................................................................................................18

O.R.C. 4729.80 ......................................................................................................... passim

O.R.C. 4729.86 ......................................................................................................... passim

O.R.C. 4729.99 ..............................................................................................................6,17

O.R.C. 4730.09 .................................................................................................................18

O.R.C. 4731.10 .................................................................................................................18

iv

O.R.C. 4741.11 ..............................................................................................................18

6 Cir. R. 32.1 ................................................................................................................15

Fed. R. App. Proc. 8.....................................................................................................24

Fed. R. Evid. 501 ................................................................................................. passim

Ohio Adm. Code 4729:8-3-02 ........................................................................................4

Ohio Admin. Code 4729-37-08 .......................................................................................6

v

## I.      Introduction and Summary of Argument

The State Board of Pharmacy ("the Board") operates a database known as the Ohio Automated Rx Reporting System ("OARRS").  When a patient goes into a pharmacy to fill a prescription for a controlled substance, the pharmacy is required to submit information about that dispensation into the OARRS database – including details about the patient.  For over the last decade, pharmacists around the state have been diligently entering information about their dispensation of controlled substances into OARRS.  Think of almost any Ohioan (whether famous or not) and they probably have had a controlled substance transaction documented in OARRS at some point.

Because of the extreme sensitivity of its contents, the OARRS data is confidential under state law – specifically O.R.C. 4729.80 and 4729.86. The Board is only authorized to release OARRS information for certain reasons.  The statute expressly prohibits the use of OARRS information in civil cases.

As this Court is likely aware, manufacturers and distributors of opioids are currently defending against a broad range of lawsuits brought by numerous public entities.  Claims by nearly 2,000 political subdivisions have been consolidated in the U.S. District Court for the Northern District of Ohio as multi-district litigation ("MDL").

Most notably, the cases on the fastest track are known as "Track One-A" and "Track One-B" that involve Summit County and Cuyahoga County's lawsuits against various entities that operated in Northeast Ohio.  Many of the defendants have settled, leaving primarily a handful of large retail chain pharmacies as defendants.

1

McKesson – one of the defendants that settled – had earlier sought a motion to compel the Board to turn over the entire OARRS database.  The court denied that request as overbroad, but urged McKesson to come to an amicable solution to the OARRS data issue.  The Board worked with McKesson to reach a compromise.  Ultimately, the Board produced statewide OARRS data from 2008 to 2018 in a de-identified format (which was permitted by O.R.C. 4729.80(C)) that did not provide pharmacy names and addresses, physician's names and contact information, or any patient identifying information.  Producing the information in this format allowed the Board to cooperate with McKesson without running afoul of state and federal law.  Importantly, this "research extraction" was provided to all defendants in the Track-One cases.

On January 8, 2020, a number of large pharmacy companies[1] that operate in Northeast Ohio filed a motion to compel production from the OARRS database. The Defendants asked the court to require the Board to produce the names and addresses of the pharmacies and prescribers.  Over the Board's strenuous objection, the court granted the motion to compel.  The court denied the Board's timely request to certify the matter for interlocutory appeal under 28 U.S.C. §1292.

The court below made two critical errors.

First, the Court failed to follow this Court's holding that under Fed. R. Evid. 501 when a case is being heard in diversity jurisdiction (like these cases), then federal courts will apply state law privileges. *Jewell v. Holzer Hosp. Found., Inc*., 899 F.2d 1507, 1513 (6th Cir. 1990). O.R.C. 4729.86 provides that unless one of the exceptions of O.R.C. 4729.80(A) or (B) apply the Board

---

[1] The defendants at issue are CVS Rx Services, Inc. CVS Indiana, LLC, CVS Pharmacy Inc. and Ohio CVS Stores, LLC, Rite Aid of Maryland, Inc. Rite Aid Hdqtrs. Corp., Walgreen Co., Walgreen Eastern Co., HBC Service Company, Giant Eagle, Inc., Discount Drug Mart, and Walmart Inc.  For the purposes of this filing, they will collectively be known as "Defendants."

may not release information from OARRS that will "identify a person, including any licensee or registrant of the board or other entity[.]"  O.R.C. 4729.80(C).

Second, the court refused to certify the issue for appeal under 28 U.S.C. §1292.  Even if the court below did not agree with the Board, it should have at least authorized an immediate appeal to address the confidentiality of millions of people's medical records.  The "preconditions for § 1292(b) review . . . are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases."  *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 111 (2009).

The court's privilege ruling involves a new legal question and is also of "special consequence."  Indeed, the court is requiring the Board to turn over OARRS data for every recorded transaction of controlled substances in Ohio since 2008.  This is not the confidentiality of one person, or even one company.  This is about the confidentiality of sensitive health information of over seven million Ohioans.  If this isn't "of special consequence" then nothing is.

This Court should issue a writ of mandamus under 28 U.S.C. § 1651 and Federal Rule of Appellate Procedure 21 directing the district court either to certify the order to compel for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), or alternatively to hold that the court abused its discretion in requiring disclosure of OARRS data.  In addition, the Board respectfully requests that this Court promptly stay the district court's order compelling the Board to turn over OARRS data pending disposition of this petition.

## II.    Statement of Facts.

*The OARRS Program.*  OARRS records are highly confidential, and the Board tightly controls access.  *See* Acceptable Use Policies at https://www.ohiopmp.gov/Documents.aspx.  The

3

confidentiality and security of data is central to the operation of all prescription drug monitoring programs ("PDMP").  *See Whalen v. Roe*, 429 U.S. 589, 600-602 (1977) (affirming New York's PDMP in part because of its confidentiality).

OARRS includes a patient database which contains records of all controlled substances and drugs of concern dispensed to outpatients.[2]  The patient database has a portal limited only to an authorized user, which is intended to be used by both law enforcement and other statutorily-designated categories of users to ensure compliance with Ohio law.  *See* https://www.ohiopmp.gov/.   In a typical patient database transaction, a patient presents a prescription for a controlled substance to a licensed pharmacist in the state of Ohio.  After dispensing that medication, the pharmacist logs the following information into OARRS pursuant to Ohio Adm. Code 4729:8-3-02:

1.  Pharmacy drug enforcement administration registration number

2.  Pharmacy name

3.  Pharmacy address

4.  Pharmacy telephone Number

5.  Patient full name

6.  Patient residential address

7.  Patient telephone

8.  Number Patient date of birth

9.  Patient gender

10.  Prescriber's full name (first name and last name)

11.  Prescriber's drug enforcement administration registration number

12.  Date prescription was issued by the prescriber

13.  Date the prescription was dispensed or sold by the pharmacy

14.  Indication of whether the prescription dispensed is new or a refill

---

[2] There is a second database maintained in OARRS that is not part of the discovery issues here. The other database tracks controlled substances from wholesalers to retail pharmacies and other "terminal distributors of dangerous drugs" such as veterinarians and dentists.

4

15.    Number of the refill being dispensed

16.    Nation drug code of the drug dispensed

17.    Number of refills authorized by the prescriber

18.    Quantity of the drug dispensed

19.    Number of days' supply of the drug dispensed

20.    Serial or prescription number assigned to the prescription order

21.    Source of payment for the prescription

22.    Pharmacy national provider identification (NPI) number

23.    Prescriber's national provider identification (NPI) number

24.    ICD-10-CM or CDT diagnosis/procedure code

Access to the patient database is tightly controlled; no one outside of the limited OARRS staff at the Board has unfettered access – not even Board investigators.  Limited access to the patient database is granted to pre-approved individuals for specific authorized purposes.  *See* O.R.C. 4729.80(A).  Access is granted to specific individuals, not offices or roles.  For example, an individual police officer or government agent may be granted an OARRS account in his or her own name for use in connection with his or her own investigation of drug abuse.  Agencies or departments do not have a "universal" account.  Nor may anyone access the database for anything other than in connection with a specific case.  And the scope of information OARRS makes available to any account holder is limited to only that information which would be appropriate for them to access.  In the case of law enforcement officials, for instance, authorization to access an individual's OARRS data is only granted after entry of a case number and approval for access by their supervisor.  *See* Ohio Admin. Code 4729-37-08(B); *State v. Meyers*, 12th Dist. App. No.

5

CA2014-02-002, 2015-Ohio-160, 27 N.E.3d 895, ¶ 13.  Even then, the official would only have access to the records necessary to complete that particular investigation.

The same access restrictions are true of any other type of user.  Each user's access is limited to only the type of information necessary to perform their official duties.  Among those granted access to OARRS are health care professionals who prescribe reportable medications and pharmacists who dispense those medications.  Those authorized to access the OARRS database may only do so to the extent necessary.  For instance, physicians may only access those records directly related to patients presently under their care or to their own prescribing.  O.R.C. 4729.80(A)(5).  When the Board discovers abuse or misuse of the database, it both refers violators for criminal prosecution and revokes or restricts access for egregious abuses of the database.  Improper access to, or use or distribution of, information contained within the OARRS database can be punishable by a felony.  *See* O.R.C. 4729.99(J); *Meyers*, 27 N.E.3d at 899.

***The Board Provided A "Research Extraction."***  As part of an amicable agreement with McKesson, a defendant that has since settled its case, the Board provided a "research extraction" of the entire OARRS database.  This gigantic database included dispensations of controlled substances made by Ohio pharmacies dating back to 2008.  Notably, the Defendants also received this research extraction.

The research extraction only included some of the database fields.  And for some of the fields, a randomized "hash" was given to each individual patient, along with separate "hash" fields for prescriber names and pharmacy names.

6

Here is a single entry of the research extraction provided to the Defendants:[3]

| | |
|---|---|
| DateFilled | 01/01/2015 |
| RxNumber | 123456 |
| RefillCode | 0 |
| Quantity | 30 |
| DaysSupp | 30 |
| NDC | 54092038101 |
| Drug | ADDERALL XR 5 MG CER |
| TherClassCode | 2820040010 |
| TherClassDesc | Amphetamine & Comb. |
| DateWritten | 01/01/2015 |
| NumOfRefillsAuth | 0 |
| PaymentType | 4 |
| PharmacyHash | 1111AAAAA11AA1111A11AA1AA11AA1111AAAAA |
| PharmacyZip | 445 |
| PharmacyBACCode | A |
| PharmacyBACSubCode | 3 |
| PrescriberHash | 1AA11AA111A1111AA111111AA11A111111AA111A1 |
| PrescriberZip | 445 |
| PrescriberBACCode | C |
| PrescriberBACSubCode | |
| PrescriberSpecialty | Pediatric medicine |
| PatientGroupIDHash | A1A1111A11111A11AAAAAAA1AA11111A11111A11A1 |
| PatientAge | 8 |
| PatientSex | 2 |
| PatientZip | 445 |

Using the unique "hash" for each patient, the Defendants can sort the entire database by

patient.  This "hash" will be identical for a specific patient for all transactions in the database.

---

[3] This is based on an actual prescription.  Out of an abundance of caution, counsel has
randomized the date the prescription was written and filled, the RX number, the zip code, and for
the unique identifiers, changed any numbers to a 1 and any letters to an A.  The research
extraction provides the first three numbers of a zip code.

Thus, the Defendants can identify every prescription filled for a specific patient that is stored in OARRS – but the Defendants would not know the name of the patient.  The Defendants could do the same for the pharmacies and prescribers – again, without knowing their name, as there is a hash assigned to each pharmacy and prescriber in the same manner as that assigned to a patient.

## III.   Statement of The Case

The Defendants served a subpoena in late November or early December upon the Board seeking the entire OARRS database.[4]  Exhibit A.  The subpoena was filed *solely* under Track One-B.  Relevant here, the Defendants wanted:

> Prescription data from the Ohio Automated Rx Reporting System ("OARRS").  For each prescription, identify the drug name, prescription number, NDC number, date filled, quantity dispensed, dosage form, days' supply, MME, prescriber's name, prescriber's DEA number, dispensing pharmacist, dispensing pharmacy, patient's unique identification number, patient's state of residence, number of refills authorized (if any), diagnostic code, method of payment, patient paid amount, whether the prescription was covered by third party payers, and any other fields identified following a meet and confer with counsel for the Pharmacy Defendants.

Exhibit A, p. 11.  On December 17, 2019, the Board sent an objection letter to counsel for the Defendants, highlighting that the Board had already provided much of this information before, and objecting to the disclosure of confidential claims.  Exhibit B.

The Defendants filed identical motions to compel in both the Track One-A and Track One-B cases on January 8, 2020.  Exhibit C.  The motions to compel were more limited than the

---

[4] The notice of service is dated November 27, 2019.  The Defendants represented to the court below that it was served on December 2, 2019.

subpoena.  They purported only to require the Board to provide the names and addresses of pharmacies and prescribers in the OARRS database.

The Defendants expressly stated that they were seeking OARRS data from 2006 onward in order to identify individual patients.  "The OARRS data is also necessary to identify 'doctor shoppers.'"  Exhibit C, p. 27.  The Defendants emphasized that:

> **OARRS is the only dataset anywhere that allows the tracing of individuals across doctors and pharmacies.**  Therefore, it is the only dataset that allows the identification of doctor shoppers who sought pills from multiple places, as well as the over-prescribers who wrote those patients' prescriptions.  Identifying those patients and prescribers is a primary purpose of OARRS.

Exhibit C, p. 28 (emphasis in original).

The Board filed oppositions on January 22, 2020.  Exhibit D.  The Board emphasized that, given the information the Defendants already have, the Defendants could easily reverse engineer the research database if they received the identifiers for the pharmacies and prescribers.  And the Board emphasized that the Defendants *admitted* in their motion that they wanted the information to identify specific patients.   The Board identified O.R.C. 4729.80 and 4729.86 in their memorandum in opposition.  Exhibit D, pp. 47-48.

On February 13, 2020, the court granted the Defendants' motion to compel.  Exhibit F.  The court noted that, in regards to the question of reverse engineering the OARRS database, the "Defendants do not need to identify specific patients to assert their defense."  Exhibit F, p. 63.  "Accordingly, the Pharmacy Defendants are ordered not to use their own data to 'reverse-engineer' patient-identifying information contained in the de-identified OARRS data they receive."  *Id.*

9

The Court suggested that the Board had an improper motivation: "OBOP is concerned more with data-proprietorship than the privacy of the information the data contains."  Exhibit F, p. 64. The Court felt that because the Defendants already protect the privacy of their own patient data, "[a]llowing the Pharmacy Defendants access to information regarding prescriptions filled at other pharmacies does not meaningfully increase the types and amounts of private information the Defendants already have."  Exhibit F, pp. 64-65.

The court concluded that the "various federal and state statutes . . . are premised entirely on the concern that disclosure of data would allow identification of patients."  Exhibit F, p. 67. The court held that "state and federal statutes cited by OBOP may inform, but do not limit, this Court's discretion regarding scope of discovery."  Exhibit F, pp. 66-67.   In a footnote, the court stated that the exclusion of discovery in civil cases found in O.R.C. 4729.80 "does not cabin this federal Court's discretion."  Exhibit F, p. 67, n.7.

Finally, the Court noted that the State of New York had turned over the names of prescribers and pharmacies from its own PDMP, leading it to conclude that "OBOP's concerns about privacy and statutory restrictions are overblown."  Exhibit F, p. 66.

The Board asked for the court to reconsider and also filed a motion seeking the court to certify the matter for interlocutory appeal.  Exhibits G, J.  The court denied both requests without written opinion.  Exhibits K, L.

10

## IV.    Argument

An appellate court has the power under 28 U.S.C. § 1651(a) to issue a writ of mandamus directing the conduct of a district court where (1) the petitioner has a "clear and indisputable" right to relief; (2) there are "no other adequate means to attain the relief"; and (3) mandamus relief is otherwise "appropriate under the circumstances." *Cheney v. United States Dist. Court,* 542 U.S. 367, 380-81 (2004). In short, only "exceptional circumstances amounting to a judicial 'usurpation of power'" or a "clear abuse of discretion" will "justify the invocation of this extraordinary remedy." *Id*. at 380.  To determine if relief in mandamus is proper, this Court balances five factors: (1) whether the petitioner has no other adequate means to obtain the relief he seeks; (2) whether he "will be damaged or prejudiced in a way not correctable on appeal"; (3) whether "the district court's order is clearly erroneous as a matter of law"; (4) whether "the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules"; and (5) whether "the district court's order raises new and important problems, or issues of law of first impression." *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008).

This Court has "never required that every element be met in order for mandamus to issue: 'Rarely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable.'"  *In re Lott*, 424 F.3d 446, 449 (6th Cir. 2005) (quoting *In re Bendectin Products Liability Litigation*, 749 F.2d 300, 304 (6th Cir. 1984) and *Bauman v. United States District Court*, F.2d 650, 655 (9th Cir. 1977)).

11

Although the standard for mandamus is, and should be, a high one, it is satisfied in the extraordinary circumstances presented here. As in the *Lott* case, "the first, second, third, and fifth factors all weigh heavily in favor of issuing mandamus." *Id.*

## A. The Board Has No Other Adequate Means To Attain Relief and Will Be Damaged In A Way Not Correctable On Appeal.

It is well established that a party will satisfy the first two elements of mandamus when it is appealing a court order requiring the disclosure of confidential or privileged information. This Court has held that "mandamus may be used as a 'means of immediate appellate review of orders compelling the disclosure of documents and information claimed to be protected from disclosure by privilege or other interests in confidentiality.'" *John B.,* 531 F.3d at 457 (6th Cir. 2008) (quoting *United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc*., 444 F.3d 462, 472 (6th Cir. 2006)).

This is a classic example. The Board is *not* a party to the litigation – it is involved solely because the Defendants are seeking discovery so the Board cannot seek an immediate appeal under the "collateral order" doctrine under 28 U.S.C. §1291. *Mohawk Indus.,* 558 U.S. at 103. "Mandamus must issue or [the Board] will be obliged to obey the binding court order[.]" *In re Lott,* 446 F.3d at 450. If this Court does not halt the order to produce OARRS data, then the damage will be done and the confidentiality of the OARRS data will already have been lost. There will be no way for the Board to appeal once final judgment has been issued.

12

## B.     The Court's Failure To Certify This Case for Immediate Appeal Under 28 U.S.C. §1292(b) Was Erroneous As A Matter of Law.

While discovery orders are generally not considered final for purposes of 28 U.S.C. § 1291, "this Court has authority to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651" where "there is extraordinary need for review of an order before final judgment and the District Court has refused to certify the issue pursuant to § 1292(b)[.]"  *In re Lott*, 424 F.3d at 449.

Even if the court did not agree with the Board's arguments it should have at least permitted the Board to appeal this critical confidentiality issue under 28 U.S.C. §1292 which states:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

28 U.S.C. §1292(b).

This Court has established that the "three factors that justify interlocutory appeal should be treated as *guiding criteria* rather than *jurisdictional requisites*." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (quoting 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §3930 (3d ed. 2002)) (emphasis in original).  However, if a court finds that all three factors are present, a court has a "duty . . . to allow an immediate appeal to be taken." *Ahrenholz*

13

*v. Board of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000).  *See also In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019) (same).

## 1.    The Court's Order Involves a Controlling Question of Law.

There is a clear controlling issue of law here.  Is a district court required to apply the clear prohibitions against disclosure found in O.R.C. 4729.80 and 4729.86 in a case being heard in diversity?

The court below, citing inapplicable cases, concluded that the Ohio statutes at issue do "not cabin this federal Court's discretion."  Order at 8, n.7.  This flatly contradicts black-letter law regarding Federal Rule of Evidence 501 which holds that in diversity jurisdiction cases the existence of confidentiality is "determined in accordance with state, not federal law."  *Jewell v. Holzer Hosp. Found., Inc*., 899 F.2d 1507, 1513 (6th Cir.1990).  In reviewing a claim of psychotherapist-client privilege, the Supreme Court noted that "if only a state-law claim had been asserted in federal court, the second sentence in Rule 501 would have extended the privilege to that proceeding." *Jaffee v. Redmond*, 518 U.S. 1, 15, n.15 (1996).  "District courts within the Sixth Circuit have applied Rule 501's principle—that is, that state law governs privilege where state law supplies the rule of decision—in a broad spectrum of cases."  *SBAV LP v. Porter Bancorp, Inc*., 2015 U.S. Dist. LEXIS 41162, at *16 (W.D. Ky. 2015) (collecting cases).

To the extent that there is a question about preemption of state law, whether federal law should be applied instead of state law is a controlling question of law.  *Spong v. Fidelity Nat. Property and Cas. Ins*., 787 F.3d 296, 304 (5th Cir. 2015).

14

### 2.    There Are Substantial Grounds For Difference of Opinion About The Controlling Issue of Law.

This Circuit has recently adopted the legal standards of the Ninth Circuit for determining whether there is a substantial ground for difference of opinion.  *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017).   The question is whether "reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed."  *Id*.  (quoting *Reese v. BP Exploration, Inc*., 643 F.3d 681, 688 (9th Cir. 2011).   So a "novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent."  *Id*. (quoting *Reese*, 643 F.3d at 688).

### a.    A Reasonable Jurist Could Conclude That It Was Bound By Ohio Law On Confidentiality of OARRS Data.

A reasonable jurist could conclude here that the Court was bound to apply Ohio confidentiality law about OARRS because this case was being heard in diversity jurisdiction.

These cases were initially filed in state courts, but were removed by the Defendants who expressly relied upon diversity jurisdiction.[5]   Exhibits M and N.   The Defendants are judicially estopped from asserting an inconsistent position.  *See generally Edwards v. Aetna Life Ins. Co*., 690 F.2d 595, 598-99 (6th Cir. 1982).

---

[5] The cases are proceeding under amended complaints which, at this time, remain under seal by the court below.

15

Indeed, it is established case law in this Circuit that a court reviewing a matter heard in diversity jurisdiction will apply state law privileges under Fed. R. Evid. 501.  *Jewell*, 899 F.2d at 1513.  Because *Jewell* is a published decision, this holding is "binding on later panels" unless it is "overruled by the court *en banc*."  6 Cir. R. 32.1(b).  *See Dieng v. Barr*, 947 F.3d 956, 963 (6th Cir. 2020) (applying 6 Cir. R. 32.1(b)).

Numerous district courts in this Circuit have applied *Jewell* in diversity cases and evaluated state law confidentiality provisions established in state statutes.  *See e.g.s State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*, 399 F. Supp. 3d 708, 711 (E.D.Mich.2019) (applying marital privilege found in MCL 600.2162(4)); *Babcock & Wilcox Power Generation Group, Inc. v. Cormetech, Inc.*, 81 F. Supp. 3d 632, 640 (N.D.Ohio 2015) (applying mediation communication privilege found in O.R.C. 2710.03); *SBAV LP*, 2015 U.S. Dist. LEXIS 41162, at *16 (W.D. Ky. 2015) (finding that K.R.S. §286.3-470 does not prohibit disclosure of bank examination documents); *Freudeman v. Landing of Canton*, 2010 U.S. Dist. LEXIS 55273, at *7 (N.D. Ohio, 2010) (applying peer-review and physician patient privileges under O.R.C. 2317.02, 2305.252 and 2305.253).

Put simply, a reasonable jurist could conclude that Fed. Evid. R. 501 and *Jewell* established that Ohio confidentiality statutes were binding – not that they merely "inform, but do not limit" a court's discretion.  *See* Exhibit F, pp. 65-66.

16

### b. A Reasonable Jurist Could Conclude That Ohio Law Bars The Disclosure of OARRS Data.

Under O.R.C. 4729.80, the Board is permitted to release information only under several specific circumstances.  While there is a provision that authorizes the Board to comply with a court order "in connection with the investigation or prosecution of a possible or alleged criminal offense" (O.R.C. 4729.80(A)(4)) and a provision for responding to grand jury subpoenas (O.R.C. 4729.80(A)(3)), there is no provision for such disclosure in a civil case.

Ohio law regarding the admissibility of OARRS information in civil cases cannot be clearer:  "A person shall not use information obtained pursuant to division (A) of section 4729.80 of the Revised Code as evidence in any civil or administrative proceeding."  O.R.C. 4729.86(B).

Under O.R.C. 4729.86(A)(1), it is unlawful to improperly disseminate information from the OARRS database except for the limited exceptions listed in O.R.C. 4729.80(A) and (B). Improper disclosure of OARRS data is a criminal offense under O.R.C. 4729.99. There is no grant of immunity nor protection that can be afforded to the Board's Executive Director or Director of the OARRS database for disclosing OARRS content other than for express purposes set forth in the governing confidentiality statutes.

The court's order expressly requires the Board to disclose the names of pharmacies and prescribers.  This order flatly contradicts an Ohio statute which expressly prohibits the Board from releasing information which will "identify a person, ***including any licensee*** or registrant of the board or other entity[.]"  O.R.C. 4729.80(C) (emphasis added).

17

The Board licenses Ohio pharmacies.  *See* O.R.C. 4729.01(Q) (definition of terminal distributor of dangerous drugs includes pharmacies) and 4729.54 (terminal distributors must obtain a license).  Individuals who prescribe controlled medications are licensed by various entities including the State of Ohio Medical Board (O.R.C. 4731.09 and 4730.10), the Ohio Board of Nursing (O.R.C. 4723.41), the Ohio State Dental Board (O.R.C. 4715.10), and the Veterinary Medical Licensing Board (O.R.C. 4741.11).

In sum, a reasonable jurist could conclude that OARRS data is privileged and cannot be released.

The second element of §1292(b) is present.

### 3.    The Disclosure of OARRS Data Involves A New Legal Issue and Is Of Special Consequence.

The United States Supreme Court has implicitly established that the third factor under §1292(b) is met when an entity is raising a privilege claim that either involves a "new legal issue" or is "of special consequence."

> The preconditions for §1292(b) review -- "a controlling question of law," the prompt resolution of which "may materially advance the ultimate termination of the litigation" -- are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases.

*Mohawk Indus.*, 558 U.S. at 110-111.

The issue about OARRS is both a novel legal issue and a matter of special consequence. The applicability of O.R.C. 4729.80 and 4729.86 in federal diversity actions is a quintessential novel legal issue.  While the issues about Fed. Evid. R. 501 are not novel, the actual application of

18

that rule to O.R.C. 4729.80 and 4729.86 is completely new.  No federal courts have required the Board to turn over information from the OARRS database in a federal civil proceeding – whether jurisdiction is premised on diversity or a federal question.

The matter is also of special consequence.  Revealing the unique identifying numbers for each and every pharmacy and prescriber to Defendants would not only be a violation of Ohio's confidentiality protections for licensees, which are expressly identified in the confidentiality codes, it would also be tantamount to providing the Defendants with the unique identifying numbers of individual patients for well over half of all Ohioans.

It is difficult to understate the breadth of information that is contained in the OARRS database.  This is not the private medical information for a single patient – or even every patient who saw a single doctor.  Or even every patient who went to a specific hospital.  These are the private medical records of over seven million Ohioans – sweeping up the personal matters of both the powerful and famous (almost certainly including current elected officials and famous professional athletes) to the youngest children in the state.  The information would permit the Defendants to unlock the identity of millions of people's prescribing history.

Notably, the court below did not place any limits at all on the pharmacies or prescribers.  It is not limited to only a specific time frame, or those that prescribed or dispensed to patients from Northeast Ohio.  It also is not limited to prescription opioids.  Medicines like testosterone cream, Ambien, Xanax and Ritalin are also controlled substances under Ohio and federal law and are

19

wholly included in the data.  These drugs are not part of these lawsuits, but under the court's *carte blanche* order, the Defendants will receive the keys to unlocking all of that information.

The Defendants did not dispute that this information could be used in this fashion and the court below did not disagree.  Instead, the court stated that the Defendants (who had asked for the data, in part, to identify "doctor shoppers") would not be permitted to reverse engineer the data.

Put another way – this is not just any old discovery fight.  If this is not a matter of "special consequence" it is difficult to imagine what would be.

## C.    In The Alternative, The Court's Order Was Clearly Erroneous As A Matter of Law.

The Court also has the option of ruling on the underlying merits because the Board has a clear and indisputable right to relief.  The Board will explain how the court erred as a matter of law, when it refused to apply Ohio confidentiality laws.   Then the Board will demonstrate that even aside from the statutory prohibition, the court abused its discretion in ordering the disclosure of such vast swaths of the OARRS database with insufficient protections.

### 1.    The Court's Order Conflicts With *Jewell.*

This is actually quite simple.  The court below disregarded O.R.C. 4729.80 and 4729.86 by concluding that "a state statute does not cabin this federal Court's discretion."  Exhibit F, pp. 66, n.7.

That conclusion is flatly wrong when a case is being heard in diversity jurisdiction (like this one).  This Court's binding precedent establishes that under Fed. R. Evid 501, federal courts apply a state's confidentiality laws if the case is being heard under diversity jurisdiction. *See*

20

*Jewell*, 899 F.2d at 1513; *Jaffee*, 518 U.S. at 15.  This case was removed by the Defendants pursuant to diversity jurisdiction.  *See* Exhibits M and N.

As noted above, Ohio law forbids the Board from releasing information in the OARRS database about "any person" – including licensees.  Unless one of the exceptions of O.R.C. 4729.80(A) or (B) apply, the Board is simply not permitted to release information from OARRS that will "identify a person, including any licensee or registrant of the board or other entity[.]" O.R.C. 4729.80(C).  That includes pharmacies (who are licensed by the Board) and prescribers (who are licensed by an "other entity").  And while OARRS data can be provided in a criminal case under O.R.C. 4729.80(A)(3) and (4), there is no comparable provision for civil cases.[6]  On the contrary, "A person shall not use information obtained pursuant to division (A) of section 4729.80 of the Revised Code as evidence in any civil or administrative proceeding."  O.R.C. 4729.86(B).

Statutory interpretation does not get much easier than this.

But the order goes further than just the names of pharmacies and prescribers.  Under the facts of this case, the court has ordered the Board to provide the Defendants with all the tools they would need to easily determine patients' identities.

The Defendants here are the biggest pharmacy chains in Northeast Ohio.  They have extensive databases detailing what medications they have dispensed to patients.  Providing the

---

[6] Notably, even for criminal cases, there is not carte blanche for broad swaths of the database. O.R.C. 4729.80(A)(3) is limited to searches "relating to the person who is the subject of an investigation being conducted by the grand jury."

21

Defendants with the identity of all prescribers and pharmacies for each prescription listed in the Research Extraction (which the Defendants already have received) will essentially provide the Defendants the identities of countless patients in the OARRS database with only a modicum of reverse engineering.

For example, if Walgreens (one of the Defendants) was supplied with all information for a particular prescription that was filled at a Walgreens pharmacy – the drug prescribed, the date the prescription was written, the date the prescription was filled, quantity, number of refills, prescriber name, and specific pharmacy name and address at which the prescription was filled – Walgreens could locate that particular prescription within its records.  Walgreens' records would necessarily include the patient name for the prescription, thus, revealing the identity of that patient.  Walgreens would then know the unique identifying number for that patient.

Walgreens would have the ability to search the database for every purchase that patient has ever made at *any* pharmacy (not just Walgreens) even years before or years after that patient was a Walgreens customer.

The court below addressed these concerns by simply stating in its order that the Defendants would be forbidden from reverse engineering the information.

But if the data being provided can be used to "identify a person" then it is barred from disclosure by O.R.C. 4729.80(C), even if the Defendants promise that they won't peek behind the curtain.  (Notably, the Defendants expressly asked for the data in order to identify "doctor shoppers.")

22

Instead of evaluating Ohio's confidentiality laws, the court impugned the Board's motivations for raising legal arguments by incorrectly stating that "OBOP is concerned more with data-proprietorship than the privacy of the information the data contains."  Exhibit F, p. 64.  And the Court curiously concluded that the Board's "concerns about privacy and statutory restrictions are overblown" because the State of New York provided analogous data voluntarily.  Exhibit F, p. 65.  The Board has *never* claimed that Ohio's statutes would apply to the State of New York.

In the end, the court abused its discretion in granting the motion to compel production from the OARRS database.

## 2.    The Court Abused Its Discretion.

Even if the court below was correct (and it was not) that the state statutes should "inform" rather than control, the court still abused its discretion.  The court in this case emphasized that it believes that the Defendants will not need the names of individual patients in order to present their case because they can "utiliz[e] OBOP's de-identified patient ID number."  Exhibit F, p. 63.

Neither the Defendants nor the court explained why the Defendants could not use the de-identified pharmacy ID numbers and prescriber ID numbers.  The only thing that the defendants will not specifically know will be the name of the actual prescriber or pharmacy.  They still have the ability to use the unique identifiers to identify problematic prescribing or dispensing habits.

In addition to being able to identify prescribers and pharmacies with a unique hash, the Board annually produces data detailing doctor shopper statistics in its reports. Those documents were requested and produced as part of the same subpoena at issue here.  Moreover, those

23

documents are readily available on the Board's website and are a viable alternative should Defendants be seeking to use information pertaining to doctor shoppers in its case, see for example https://www.ohiopmp.gov/documents/Annual%20Report%20(2018).pdf.

On March 31, 2020, the court issued another entry that undercuts this ruling. The Defendants had filed third party complaints against Since the court issued its order in this matter, it

Finally, even if some sort of disclosure was appropriate, the protection orders referenced by the court do not sufficiently limit access to this treasure-trove of easily abused information.

### D. The District Court's Order Raises New and Important Problems.

As discussed in more detail above, the scope of the discovery being required is immense; it will require the disclosure of information about prescriptions filled for over seven million Ohioans. At the risk of repetition – if this order does not "raise new and important problems", it is difficult to imagine any discovery order that does. The fifth factor of mandamus strongly weighs in the Board's favor.

## V. This Court Should Stay Enforcement of The Court Order To Compel Production.

Under Fed. R. App. Proc. 8(a)(2), this Court has discretion to grant a stay or injunction. This Court reviews four factors: (1) whether a party has made a strong showing that it is likely to succeed on the merits; (2) whether it "will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4)

"where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). The first two factors are the most critical.  *Nken*, 556 U.S. at 434.

*Likelihood of success on the merits.*  The Board has made a strong showing that it will prevail on the merits.  It has identified binding case law that mandates that district courts apply state confidentiality laws when hearing cases in diversity jurisdiction.  The Ohio laws at issue are clear and unambiguous.  At the very least, the court should have certified this matter under 28 U.S.C. §1292(b) so that it could be reviewed further.  The Board has a strong likelihood of success on the merits.

*Irreparable harm.*  It is well established in this Circuit that the disclosure of privileged information is a form of irreparable harm. If a party "is wrongfully forced to disclose privileged communications, there is no way to cure the harm done to [the party] or to the privilege itself, even if some of the disclosure's consequences could be remedied on direct appeal." *In re Lott*, 424 F.3d 446, 452 (6th Cir.2005).  Put another way:  "privilege operates to prevent the disclosure itself." *Id.* at 451.

*Harm To Third Parties and the Public Interest.*  Let's not mince words.  The OARRS data at issue are medical records for the majority of Ohioans.  Once this Pandora's box is opened, it cannot be closed again.  For normal cases, a court order stating that information will remain

25

private will be sufficient.  But this is not just any ordinary case. This is a massive MDL with multiple defendants who have untold numbers of lawyers, experts and consultants – all of whom would be able to peruse the OARRS database with only a small amount of research.  And the scope of the documentation makes it different from any typical discovery issue.

Because this is the entire database for millions of Ohioans, the interest of third parties and the public at large would be to grant the stay even if there was only a small chance of success – as opposed to the overwhelming case that the Board is bringing.

## VI.   Conclusion

For the forgoing reasons, the Board respectfully requests that this Court grant a writ of mandamus against the District Court for the Northern District of Ohio requiring it to either (1) certify this matter for interlocutory appeal, or (2) deny the Defendants' motion to compel.    In addition, the Board asks that this Court stay its requirement to comply with the order to compel while this matter is pending.

26

Respectfully submitted,

DAVE YOST
Ohio Attorney General

/s/  *Henry G. Appel*
HENRY G. APPEL (0068479)
Principal Assistant Attorney General
30 East Broad Street, 26th Floor
Columbus, Ohio 43215
(614) 466-8600; (866) 441-4738 (fax)
henry.appel@ohioattorneygeneral.gov

Counsel for Petitioner State of Ohio Board of Pharmacy

27

## CERTIFICATE OF SERVICE

Service on counsel for all parties in the district court has been accomplished via notice filed through the district court's CM/ECF system attaching a copy of this filing.

/s/ *Henry G. Appel*
HENRY G. APPEL (0068479)
Principal Assistant Attorney General

28