**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | **CASE NO.: 1:17MD2804** |
| **IN RE: NATIONAL PRESCRIPTION** | ) | |
| **OPIATE LITIGATION** | ) | **JUDGE DAN A. POLSTER** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | **DEA'S MOTION FOR** |
| | ) | **CLARIFICATION** |
| | ) | **REGARDING JANUARY 6, 2020** |
| | ) | **SUGGESTION OF REMAND** |
| | ) | |

On January 6, 2020, this Court issued a Suggestion of Remand for two cases—*Cabell County Comm'n v. AmerisourceBergen Drug Corp., et al.*, case no. 17-OP-45053 (N.D. Ohio) and *City of Huntington, W.V. v. AmerisourceBergen Drug Corp., et al.*, case no. 17-OP-45054 (N.D. Ohio)—that were transferred from the United States District Court for the Southern District of West Virginia to this court by the Judicial Panel on Multidistrict Litigation (JPML) on December 13, 2017. The Court suggested that the JPML remand these two cases as part of a broader strategic plan that the Court had developed in an earlier suggestion of remand in order to "speed[] up and aid[]" "resolution of substantial portions of the *Opiate* MDL." (Suggestion of Remand, ECF No. 2941 at PageID # 430090.) The Court explained that it had already presided over "general" and "specific" discovery in these and other transferred cases and that it would continue to preside over discovery before suggesting strategic remands of specific cases for trial in transferor courts. The parties in the *City of Huntington* and *Cabell County* cases stipulated to the Court's proposed remand, and no party suggested that it intended to seek additional discovery from the United States Drug Enforcement Administration (DEA) as a third-party.

Upon remand, however, the parties have propounded expansive discovery requests upon the DEA—many of which are duplicative of discovery already produced in the MDL or seek documents and testimony that were specifically foreclosed by this Court following extensive negotiations between the parties and the DEA and overseen by the Special Master.  The DEA—which is not a party to this litigation—is now grappling with duplicative discovery requests across multiple jurisdictions—the exact conduct MDL consolidation was designed to prevent.  Thus, the parties' actions on remand threaten to undercut not only the efficiency gains that this Court sought to achieve through its strategic remands but also the MDL process itself.  Those actions also threaten to further command the DEA's resources and impair the DEA's ability to pursue its vital mission.

The United States, on behalf of the DEA, files this Motion to express its concern about the additional discovery sought by the parties in the remanded cases in the Southern District of West Virginia and also the potential for this issue to repeat itself as this Court remands other cases.[1]  The DEA requests that this Court issue an order clarifying that its Suggestion of Remand for the *City of Huntington* and *Cabell County* cases was based on its conclusion that these cases had substantially completed all core discovery—including third-party discovery—as required under relevant JPML standards and case law regarding the appropriateness of remand.  The

---

[1] While this motion focuses on discovery propounded on the DEA, other federal agencies, including the Federal Bureau of Investigation, the Centers for Disease Control and Prevention, the Food and Drug Administration, and the Department of Health and Human Services, have previously received and expect to receive additional subpoenas from the *Opiate* MDL parties. *See, e.g.*, Pharmacy Defendants' Motion to Extend all Track 1B Deadlines by 60 Days in Light of the COVID-19 Public Health Emergency, ECF No. 3236 at PageID # 492273 (describing the additional discovery certain defendants intend to propound).  Consequently, the parties' determination to engage in duplicative discovery in the remanded cases will likely impact a significant number of government agencies that are on the front lines of health care delivery, health care public policy, drug regulation, and law enforcement.

transferor court would, of course, remain free to allow additional case-specific discovery for good cause, but would undoubtedly benefit from this Court's guidance regarding the scope of discovery already conducted in the MDL.  In addition, the DEA requests that any future suggestion of remand issued by this Court as part of the *Opiate* MDL be accompanied by a pretrial order that outlines the issues remaining for discovery.

## I.    Background

As this Court knows, the DEA has already provided extensive documents and testimony to the parties as part of the Track One MDL proceedings overseen by the Court and Special Master.  Indeed, many of these requests proved to be so expansive that, even after restricting them significantly, the Special Master strongly encouraged the parties not to use the entirety of their allotted DEA witness deposition time so as to reduce the burden on agency officials— guidance the parties rejected.  (Discovery Ruling No. 16 Regarding DEA Depositions, ECF No. 1386 at PageID # 38568.)  Although these prior requests have been quite burdensome, the DEA has recognized the importance of this litigation and has therefore sought to work cooperatively with the parties to provide them with relevant documents and testimony *sought through the MDL proceedings*.

Yet the comprehensive discovery that has already been completed is far from the only discovery the parties, and others, have sought from the DEA.  Unfortunately, the parties have used the Court's remand as an opportunity to reopen discovery and issue a host of duplicative and new discovery requests to the DEA, neither of which are appropriate at this late stage in the litigation.  The attached chart—Exhibit A—reveals just how broad and redundant Defendants' discovery requests are in the remanded Southern District of West Virginia case.[2]  Many of these

---

[2] The relevant subpoenas are attached hereto as Exhibits B and C.

requests are also duplicative of discovery sought by the parties as part of Track One-B in the MDL.  Moreover, the DEA is simultaneously facing additional burdens in responding to subpoenas served on multiple High Intensity Drug Trafficking Area (HIDTA) programs and directors for the production of documents and notices for depositions in other opiate-related actions.  Additionally, the DEA has received overlapping and duplicative discovery requests from parties in related opiate litigation pending in various state courts across the nation.  Finally, similar requests are likely in the future:  as this Court has noted, the opiate crisis continues, as does litigation stemming from it, and at the very least, other cases in this MDL involving the same parties and issues are likely to be remanded to transferor courts in the future.

### A.    Discovery Already Produced by DEA in MDL Track One-A

In Track One, pursuant to this Court's Orders, the DEA produced nationwide electronic ARCOS data and Suspicious Order Reports (SORs) for specified drugs for the years between 2006 and 2014.  The DEA also produced hard-copy field SORs for certain states.

Additionally, Cardinal Health, which coordinated discovery on the DEA on behalf of the Defendants, served a *Touhy* request and subpoenas on the DEA seeking 37 broad categories of documents, testimony on 24 topics pursuant to Federal Rule of Civil Procedure 30(b)(6), and fact testimony from 13 current and former DEA employees (Kyle Wright, Joseph Rannazzisi, Louis Milione, Demetra Ashley, Charles Rosenberg, Alan Santos, Michael Mapes, Dr. Christine Sannerud, Matthew Strait, Michele Leonhart, Keith Martin, Gregory Brodersen, and Denise Foster).  The Plaintiffs' Executive Committee also served a subpoena seeking the DEA's testimony on five topics pursuant to Rule 30(b)(6).  After significant negotiation, which ultimately required guidance from Special Master Cohen when the parties and the DEA reached an impasse on certain issues, the DEA produced approximately 27,000 pages of documents after

4

conducting an extensive review as discussed further below; provided four agency 30(b)(6) witnesses, who collectively sat for 28 hours of deposition; and produced five fact witnesses (Rannazzisi, Wright, Ashley, Martin, and Mapes), several of whom sat for depositions that substantially exceeded the seven hours provided under FRCP 30.  (Discovery Ruling No. 16 Regarding DEA Depositions, ECF No. 1386 at PageID # 38568.)  The DEA also authorized *Touhy* requests for the deposition testimony of three witnesses who had been deputized as DEA Task Force Officers.

This discovery imposed unique burdens on the DEA as a non-party, governmental agency.  The DEA's ultimate production was the result of a time-consuming effort by the agency to narrow the initial universe of documents generated by the parties' incredibly broad requests. First, the DEA collected roughly 65 million pages of documents from 11 custodians, some of whom had left the agency years prior.  The DEA and the Department of Justice then engaged in extensive negotiations with the parties to identify a subset of custodians and search terms that would provide the parties with responsive documents.  But identifying these responsive documents was only the first step in an arduous process for the DEA.  Given the nature of the DEA's work, and the breadth of discovery requests that reach into law enforcement and investigative files, the majority of the documents requested contained privileged or law enforcement sensitive information.  Thus, every document had to be meticulously reviewed to ensure its production would not reveal such information or otherwise jeopardize the DEA's ability to carry out its critical mission.  As part of the review, the DEA frequently conferred with other federal and state law enforcement agencies to determine if the document contained such privileged or law enforcement sensitive information.  Because the DEA has limited resources to dedicate to this type of undertaking, the work must be conducted by DEA personnel who have

significant additional responsibilities that are critical to the agency's efficient and effective execution of its core functions.

To quantify the resources devoted to these efforts, the DEA estimates that its legal team—comprised of ten attorneys and paralegals who have all devoted time to this matter—collectively spent more than 5,000 hours addressing the Track One-A litigation.  This figure does not include the hours devoted by the dozens of agents, investigators, and program personnel who aided the legal team to identify and collect documents, identify subject matter experts, and prepare for and testify in depositions.

In addition to these requests, the DEA, among other tasks in Track One:  (1) reviewed 14 expert reports drafted by former DEA employees and responded to the submitting parties, (2) reviewed deposition excerpts cited by the parties for trial, as well as DEA records identified by the parties as trial exhibits; and (3) reviewed proposed redactions related to the parties' motions for summary judgment on a highly expedited basis.  Although perhaps not apparent or of concern to the parties, each of these tasks also requires coordination with the relevant subject matter experts at the DEA to determine if information that a party proposes to disclose is privileged or law enforcement sensitive.  Each of these litigation-related tasks diverts DEA's attention and resources from mission-critical functions such as regulating the distribution of controlled substances and investigating violations of the law.

**B.      Discovery Sought From DEA in MDL Track One-B and Remanded Cases**

The Defendants in Track One-B of the MDL also sought expansive discovery from the DEA.  On December 5, 2019, Track One-B Defendants served a subpoena seeking documents from the DEA across 20 categories, some of which contained multiple subparts.  On the same date, Track One-B Defendants also served a subpoena for testimony related to each of those 20

categories of documents.  On January 21, 2020, Track One-B Defendants served a third and fourth subpoena seeking documents regarding two additional categories and testimony concerning those categories.  Each of these 22 categories of document requests, and 22 topics for testimony, are objectionable on multiple legal bases.  These objections have been conveyed to Track One-B Defendants; despite requests from the DEA, Track One-B Defendants have largely refused to provide greater clarity and reasonable limits to many of the requests.

These four subpoenas served by Track One-B Defendants caused the DEA to expend significant time and resources to identify responsive documents and appropriate witnesses, undertake reviews of documents for responsiveness and privilege, and to begin production of documents.  This process continues through the present day, and will continue to require substantial DEA resources for the foreseeable future.

On January 31, 2020, Track One-B Defendants sent a *Touhy* request and subpoenas for 12 current and former DEA employees (Thomas Prevoznik, James Arnold, Demetra Ashley, Renee Babic, Denise Foster, Michele Leonhart, William McDermott, Louis Milione, Joseph Rannzzisi, Stephen Moluse, Charles Rosenberg, and Ronald Townsend).  Three of these individuals were deposed in Track One-A—each sitting for more than seven hours—and four other individuals were subpoenaed in Track One-A, which required the Department of Justice to interview each witness to make a *Touhy* determination.

In addition to the Track One-B discovery requests, the DEA has received expansive discovery requests from both Plaintiffs and Defendants in Track Two.  Plaintiffs issued a subpoena for DEA documents in Track Two in October 2019, prior to remand of the cases to the Southern District of West Virginia, and the DEA has been gathering and producing documents under that subpoena for several months.  On March 19, 2020, Plaintiffs served an additional

Track Two subpoena to broaden certain of their previous Track Two requests and seek additional, new categories of documents, including several requests focused on CVS and Rite Aid—neither of whom are defendants in Track Two.  On February 12, 2020, Defendants issued a subpoena for DEA documents with 36 individual document requests, some of which are not limited to the localities relevant to Track Two, and many of which are redundant with Defendants' Track One discovery requests or otherwise seek documents Defendants could have obtained in Track One.  Notably, Defendants are now seeking many of the same broad categories of documents that the parties and the DEA expressly narrowed following extensive negotiation and compromise in the MDL.

The burden on the DEA from these requests is further compounded by the numerous subpoenas served on HIDTA programs across the nation.  To date, at least eleven different HIDTAs have been served subpoenas in opioid-related actions, seeking tens of thousands of pages of documents spanning a twenty-year time period.  Although the HIDTAs are not federal agencies, 21 U.S.C. § 1706(e)(4), the HIDTAs possess confidential federal law enforcement information shared by the DEA, FBI, and other federal law enforcement agencies that the federal government has a strong interest in protecting.  Accordingly, the DEA, FBI, and other federal law enforcement agencies need to review all documents requested from the HIDTAs to protect privileged information.

## II.    Duplicative Discovery Undercuts the Primary Purpose of MDL Consolidation

Absent clarification from this Court, the DEA will continue to be subject to overly burdensome and duplicative discovery requests across multiple jurisdictions that run afoul of the Court's strategic plan and undercut the JPML's decision to consolidate *Opiate* litigation.  By suggesting that the *City of Huntington* and *Cabell County* cases be remanded, this Court

8

necessarily concluded that pretrial proceedings in the cases, including third-party discovery, was substantially complete.

The JPML relied on this Court's intimate knowledge of the cases in granting the suggestion and ordering their remand.  The parties' actions following remand are inconsistent with and threaten to undermine the sound judgment of this Court and the JPML.  Moreover, left unchecked, the parties' actions will set a precedent for future cases remanded by this Court, as well as related cases pending in other federal and state courts, that duplicative discovery requests are fair game.  To the extent the parties believed that additional discovery was needed from the DEA, they were obligated to inform this Court, object to remand, and seek that discovery as part of the MDL proceedings.  Instead, they stipulated to the remand with no indication that they intended to issue a host of additional discovery requests to the DEA.  We do not believe this Court intended the DEA to be subject to such duplicative requests in each jurisdiction to which a transferred case is returned.  For these reasons, we respectfully request that the Court clarify its intent for cases it has remanded (and may remand in the future) and provide additional guidance to the Southern District of West Virginia and other transferor courts.

While ultimate authority to remand a transferred case to the original court lies exclusively with the JPML, the transferee court is generally better situated to know when remand may be appropriate.  *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28 (1998) (noting that § 1407(a) "imposes a duty *on the Panel* to remand any such action to the original district 'at or before the conclusion of such pretrial proceedings'" (emphasis added)); *In re: Ameriquest Mortg. Co.*, No. 05-C-7097, 2016 WL 344476, at *4 (N.D. Ill. Jan. 28, 2016) ("The Panel has 'consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate.'" (quoting *In re Managed Care*

9

*Litig.*, 416 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006)).  Accordingly, "at some point after the JPML's referral, the transferee court is expected to suggest to the JPML that the matter should be returned to the transferor court for final resolution."  *In re Light Cigarettes Mktg. Sales Practices Litig.*, MDL No. 2068, 2011 WL 6151510, at *2 (D. Me. Dec. 12, 2011).  In making this determination, the transferee court "should be guided by [the] standards for remand employed by the Panel."  *In re Baycol Prods. Litig.*, 265 F.R.D. 453, 455 (D. Minn. 2008).

In exercising its discretion to suggest remand, a court should consider whether the purpose of consolidation has been achieved or "whether the case will benefit from further coordinated proceedings as part of the MDL."  *Id.* at 455 (citing *In re Air Crash Disaster at Tenerife, Canary Islands*, 461 F. Supp. 671, 672–73 (J.P.M.L. 1978)); *see Manual for Complex Litigation*, Fourth § 20.133 at 225 ("The transferee court should consider when remand will best serve the expeditious disposition of the litigation.").  The "primary purpose" of consolidation "is to promote efficiency through the coordination of discovery."  *In re Nuvaring Prods. Liab. Litig.*, MDL No. 1964, 2009 WL 4825170, at *1 (E.D. Mo. Dec. 11, 2009); *see also United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 38 (D.D.C. 2007) ("[T]he purpose of pretrial consolidation or coordination is 'for the convenience of the parties and witnesses and [to] promote the just and efficient conduct' of the cases," so "the decision of whether to suggest remand should be guided in large part by whether one option is more likely to 'insure the maximum efficiency for all parties and the judiciary.'" (first quoting 28 U.S.C. § 1407, then quoting *In re IBM Peripheral EDP Devices Antitrust Litig.*, 407 F. Supp. 254, 256 (J.P.M.L. 1976)).  Accordingly, "[i]n most cases transferred under 28 U.S.C. § 1407, substantially all discovery will be completed before remand."  *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, No. 3:05-MD-527 RM, 2010 WL 415285, at *3 (N.D.

10

Ind. Jan. 22, 2010) (quoting Manual for Complex Litigation, Fourth § 11.61 at 120), *order clarified sub nom. In re Fedex Ground Package Sys., Inc., Employment Practices Litig.*, No. 3:05-MD-527-RM, 2010 WL 1652630 (N.D. Ind. Apr. 21, 2010); *see In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d 1193, 1198 (D. Minn. 2012) (stating that "the key factor" in deciding to suggest remand "is that discovery in these actions is now complete"); *Diaz v. Ameriquest Mortg. Co.*, No. 05-C-7097, 2014 WL 26265, at *2 (N.D. Ill. Jan. 2, 2014) (denying request for remand because "discovery remain[ed] ongoing" and remand would lead to "similar discovery in different forums"); *In re Ins. Brokerage Antitrust Litig.*, No. CIV 04-5184(GEB), 2008 WL 3887616, at *4 (D.N.J. Aug. 20, 2008) (denying Plaintiffs' request for remand because they had not "stipulated and agreed to drop all claims related to the MDL, and cease making discovery requests related to the MDL"); *cf. Lexecon*, 523 U.S. at 40 (citing legislative history of § 1407 that "[w]hen the deposition[s] and discovery [are] *completed*, then the original litigation is remanded to the transferor court for trial" (emphasis added)); *In re Evergreen Valley Project Litig.*, 435 F. Supp. 923, 924 (J.P.M.L. 1977) (per curiam ) (remand of transferred actions appropriate where "further pretrial discovery in federal court [was] unnecessary"). This is particularly true with regard to "third-party discovery within the MDL, which should . . . proceed[] on a coordinated basis." *In re: Ameriquest Mortg. Co.*, No. 05-C-7097, 2016 WL 344476, at *5 (N.D. Ill. Jan. 28, 2016).

In limited circumstances, remand may be appropriate prior to the completion of all discovery "when the remaining discovery is *entirely* case-specific." *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1198 (S.D. Ind. 2001) (emphasis added); *In re Ins. Brokerage Antitrust Litig.*, 2008 WL 3887616, at *4 ("The Panel may exercise its discretion to remand 'when everything that remains to be done is case-specific.'" (quoting *In re*

*Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d at 1197)).  Accordingly, "if the remaining discovery to be conducted is '"core" discovery,' a suggestion of remand is not appropriate, but if the remaining discovery is 'case-specific,' then suggestion of remand *may be* warranted."  *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, No. 05-7097, 2010 WL 1418399, at *1 (N.D. Ill. Apr. 6, 2010) (emphasis added).  Examples of "case-specific" issues that are appropriate for resolution on remand are limited and include: "discovery regarding individual damages" in mass tort litigation, *In re FedEx Employment Practices Litig.*, 2010 WL 415285, at *3 (quoting Manual for Complex Litigation, Fourth § 11.61 at 120); "individualized expert discovery," *id.* at *4; and legal claims requiring "individualized proof on many state-specific issues," *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d at 1201.  Indeed, even when only case-specific discovery remains, courts are reluctant to remand a case because "there is no reason it cannot be completed . . . in the MDL along with coordinated discovery."  *In re Ameriquest Mortg.*, 2016 WL 344476, at *5.

On the other hand, remand of a transferred case is not appropriate when it would defeat the purpose of consolidating MDL proceedings.  For instance, the "purposes of the MDL will not be advanced if [a party] intends, upon remand to the transferor court, to conduct in her individual case the very discovery that will be coordinated in th[e] MDL."  *In re Bridgestone/Firestone*, 128 F. Supp. 2d at 1198.  And remand is improper "when continued consolidation will 'eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.'"  *In re FedEx*, 2010 WL 415285, at *3 (quoting *In re Silica Prods. Liability Litig.*, 398 F. Supp. 2d 563, 668 (S.D. Tex. 2005)).  Remand under such circumstances "would be nothing more than an abandonment of the Panel's judgment to include the . . . cases in th[e] MDL."  *In re Bridgestone/Firestone*, 128 F. Supp. 2d at 1198.

Here, the Court determined (correctly) that both "general" and "specific" discovery, as well as pretrial motions practice, had been completed for a narrow set of cases, and therefore the purpose of consolidation had been achieved with respect to those cases.  The DEA too believed that discovery—and certainly discovery involving it, a non-party, governmental agency—was substantially complete.  The DEA's extensive productions and provision of testimony in response to the parties' discovery requests were premised on assurances that coordinated discovery in the MDL would obviate the need for the DEA to respond to similar requests in related litigation, including remanded cases.  Indeed, this is the very purpose of MDL consolidation.  In light of this history, the Court correctly determined that the strategic remand of certain trial-ready cases was appropriate and would continue to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation," as intended by the JPML.  *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017).

The parties' actions on remand subvert this determination.  The discovery the parties are seeking in the remanded cases largely retreads that which was sought *and carefully negotiated* in the MDL.  In the course of meeting and conferring with the government, however, counsel for Defendants in the remanded cases have stated that they do not view the MDL proceedings as limiting their ability to seek similar discovery in remanded cases and, in fact, view remand as an *opportunity* to seek materials and testimony that was expressly foreclosed during MDL negotiations overseen by the Special Master.  The parties' actions and expressed views are particularly concerning given their silence regarding this additional third-party discovery at the time the Court was considering remanding the cases.

Defendants in the remanded cases, in particular, appear to be carrying out the plan they proposed prior to remand—a plan that was rejected by this Court.  (*See* Tr. of Nov. 7, 2019

13

Status Conference, ECF No. 2913 at PageID # 429428 ("I'm not going to adopt the plaintiffs', I'm not going to adopt the defendants'. I'm thinking that certain things from each position has merit.").) As this Court knows, Defendants advocated for "immediate remand to the transferor courts *for all purposes*." (Certain Defendants' Position Statement Regarding Selective Remand To Transferor Courts, ECF No. 2908 at PageID # 429342 (emphasis added).) But such an approach is inconsistent with this Court's Order and the basic principles of MDL consolidation. (*See* Suggestions of Remand, ECF No. 2941 at PageID # 430091 (stating that "[t]he [Court] will preside over discovery for a short time and then suggest remand").) It does not "promote the just and efficient conduct of the cases," nor does it "insure the maximum efficiency for all parties and the judiciary." *Hockett*, 498 F. Supp. 2d at 38 (internal quotations and citations omitted). Indeed, Defendants acknowledged as much in their own proposal when they conceded that "[s]imultaneously conducting discovery in three separate jurisdictions will impose substantial burdens on counsel for both plaintiffs and defendants." (ECF No. 2908 at PageID # 429345.) Notably, even that overly expansive proposal purported to limit such burden to the parties: Defendants stated that the only discovery remaining "focuse[d] on (i) each *defendants'* conduct in the relevant jurisdiction, and (ii) the harms alleged suffered by each *plaintiff*." (*Id.* at 429346 (emphasis added).) Yet Defendants now seek to impose a similar (if not greater) burden on the DEA—a non-party that did not stipulate to the remand—which is already facing discovery requests related to opiate litigation in numerous state courts.

Moreover, similar duplicative discovery requests are sure to follow. The *City of Huntington* and *Cabell County* cases are some of the first to be remanded by the Court as part of its broader strategic plan, and therefore will serve as a precedent for future remanded cases. Thus, it is critical that the rules of the road for remanded cases be clearly established here and

14

now.  Absent clarification from this Court, the parties will continue to believe that each remand provides them with an opportunity for a second bite of the apple when it comes to third-party discovery.

Finally, the court to which these cases were remanded—as well as future transferor courts—would almost certainly benefit from a fuller understanding of this Court's intimate knowledge of the history of these cases and view of what remained to be accomplished in the remanded cases.  Transferor courts, of course, remain free to reach their own conclusions as to what additional discovery, if any, may be appropriate, but they should not make such a decision in a vacuum—it must be informed by the extensive pretrial proceedings conducted in this Court. *See Robinson v. C. R. Bard, Inc.*, No. 1:19CV224 RLW, 2020 WL 888300, at *2 (E.D. Mo. Feb. 24, 2020) (noting that MDL court's guidance on remand is "not meant to restrict the power of receiving courts *for good cause or in the interest of justice* to address issues that may be unique and relevant [in a] remanded or transferred case" (emphasis added)).

Accordingly, DEA respectfully requests that this Court issue an order clarifying the scope and intent of its Suggestion of Remand for the *City of Huntington* and *Cabell County* cases. Such an order would be consistent with the approach taken by other MDL courts, which frequently issue pretrial orders when suggesting remand to "assist the transferor courts on remand."  *In re Bard IVC Filters Prod. Liab. Litig.*, No. MDL 15-02641-PHX-DGC, 2018 WL 4279834, at *1 (D. Ariz. Sept. 7, 2018); *see In re Fedex Ground Package Sys., Inc. Employment Practices Litig.*, No. 3:05-CV-529, 2010 WL 3239330, at *4 (N.D. Ind. Aug. 12, 2010)  ("Upon suggestion of remand, the transferee court should enter a 'pretrial order that fully chronicles the proceedings, summarizes the rulings that will affect further proceedings, outlines the issues remaining for discovery and trial and indicates the nature and expected duration of further

pretrial proceedings.'" (quoting Manual for Complex Litigation, Fourth § 20.133 at 226)).  The Court can foreclose the parties from further undermining the MDL process by clearly defining what discovery has been conducted in the MDL and what discovery, if any, has specifically been left for the transferor court to oversee.

In addition, the DEA respectfully requests that the Court issue a similar pretrial order for any future suggestions of remand in this MDL.  This practice will not only inform and assist transferor courts, but it will also force the parties to take a position on the record before this Court as to whether they believe any discovery remains in the case or cases under consideration for remand.  *See, e.g.*, *In re Bard IVC Filters Prod. Liab. Litig.*, 2018 WL 4279834, at *2 (directing parties "to confer and identify the specific discovery, motion practice, and other litigation steps needed for" cases to be remanded); *In re Fedex Employment Practices Litig.*, 2010 WL 3239330, at *4 (instructing "parties to file a joint proposed pretrial order in each case suggested for remand within thirty days").  If one or both parties suggest additional discovery may be pursued, especially from a third-party, this Court is in the best position to evaluate whether such discovery should be allowed and whether remand is appropriate in light of the parties' positions.  *See, e.g.*, *Diaz v. Ameriquest Mortg. Co.*, 2014 WL 26265, at *2 (declining to remand case where party suggested that "discovery remain[ed] ongoing").

Respectfully submitted,

JODY H. HUNT
Assistant Attorney General

AVA ROTELL DUSTIN
Executive United States Attorney
Attorney for the United States

16

Acting Under Authority Conferred by 28 U.S.C. § 515

By:    /s/James R. Bennett II
JAMES R. BENNETT II (OH #0071663)
Assistant U.S. Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio  44113-1852
(216) 622-3988 (Direct)
(216) 522-4982 (Facsimile)
E-mail:  james.bennett4@usdoj.gov

MICHAEL D. GRANSTON
ANDY J. MAO
NATALIE A. WAITES
JONATHAN K. HOERNER
J. ANDREW JACO
KELLY E. PHIPPS
DAVID M. SOBOTKIN
United States Department of Justice
Civil Division/Fraud Section
175 N Street, N.E., Room 10.222
Washington, D.C. 20002
(202) 616-2964
Natalie.A.Waites@usdoj.gov

Attorneys for U.S. Department of Justice
Drug Enforcement Administration

17