## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** <br><br> This document relates to: <br><br> *Cleveland Bakers & Teamsters Health & Welfare Fund and Pipe Fitters Local Union No. 120 Insurance Fund v. Purdue Pharma L.P., et al.*, <br> Case No. 18-op-45432 (N.D. Ohio) | **MDL No. 2804** <br><br> **Case No. 17-md-2804** <br><br> **Judge Dan Aaron Polster** |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MANUFACTURER DEFENDANTS' MOTION TO CERTIFY THE COURT'S FEBRUARY 21, 2020 ORDER FOR IMMEDIATE APPEAL UNDER 28 U.S.C. §1292(b)

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT........................................................................................................................2

    A. This Court's Order Does Not Present a Controlling Question of Law ......................2

    B. There Is No Substantial Ground for Difference of Opinion as to Whether Plaintiffs' Complaint Adequately Alleges Proximate Cause.........................................4

    C. Immediate Review Would Not Materially Advance the Ultimate Termination of the Litigation ................................................................................................................8

III. CONCLUSION...................................................................................................................11

# TABLE OF AUTHORITIES

Page

**CASES**

*Acosta v. Pace Local I-300 Health Fund*,
  No. Civ. 04-3885(JAP), 2007 WL 1074093
  (D.N.J. Apr. 9, 2007) ...................................................................................................9

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ......................................................................................................6

*Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*,
  855 F. Supp. 438 (D. Me. 1994) ..................................................................................10

*Binger v. Alpont Transp. LLC*,
  No. 2:17-CV-570, 2019 WL 8331431
  (S.D. Ohio Nov. 18, 2019) .............................................................................................3

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ...................................................................................................6, 7

*Cardwell v. Chesapeake & Ohio Ry. Co.*,
  504 F.2d 444 (6th Cir. 1974) .........................................................................................1

*City of Almaty, Kazakhstan v. Ablyazov*,
  No. 15-CV-5345 (AJN), 2017 WL 1424326
  (S.D.N.Y. Apr. 20, 2017) ...............................................................................................9

*Cunningham v. Hamilton Cty., Ohio*,
  527 U.S. 198 (1999) .......................................................................................................1

*Desiano v. Warner-Lambert Co.*,
  326 F.3d 339 (2d Cir. 2003) ..........................................................................................5

*Dunn v. Chattanooga Publ'g Co.*,
  No. 1:12-CV-252, 2013 WL 587493
  (E.D. Tenn. Feb. 14, 2013) ..........................................................................................10

*Gieringer v. Cincinnati Ins. Cos.*,
  No. 3:08-cv-267, 2010 WL 2572054
  (E.D. Tenn. June 18, 2010) ............................................................................................4

*Hurley v. Deutsche Bank Tr. Co. Americas*,
  No. 1:08-CV-361, 2009 WL 1067314
  (W.D. Mich. Apr. 21, 2009) ..........................................................................................9

Page

*Hurley v. Deutsche Bank Tr. Co. Americas*,
  No. 1:08-CV-361, 2011 WL 13196199
  (W.D. Mich. Feb. 10, 2011) ...................................................................................................10

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
  804 F.3d 633 (3d Cir. 2015) ................................................................................................4, 7

*In re Baker & Getty Fin. Servs., Inc.*,
  954 F.2d 1169 (6th Cir. 1992) .................................................................................................2

*In re Blue Cross Blue Shield Antitrust Litig.*,
  No. 2:13-CV-20000-RDP, 2018 WL 3326850
  (N.D. Ala. June 12, 2018) .....................................................................................................10

*In re City of Memphis*,
  293 F.3d 345 (6th Cir. 2002) ......................................................................................... 1, 2, 8

*In re Neurontin Mktg. & Sales Practices Litig.*,
  712 F.3d 21 (1st Cir. 2013) ..................................................................................................4, 7

*In re Project Veritas*,
  No. 19-0109, 2019 WL 4667711
  (6th Cir. Aug. 16, 2019) ..........................................................................................................3

*In re Regions Morgan Keegan ERISA Litig.*,
  741 F. Supp. 2d 844 (W.D. Tenn. 2010) ..................................................................................3

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  No. 1:12-md-2343, 2013 WL 4821337
  (E.D. Tenn. Sept. 10, 2013) ...................................................................................................10

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*,
  29 F. Supp. 2d 825 (N.D. Ohio 1998) .....................................................................................8

*Johnson v. Jones*,
  515 U.S. 304 (1995) .............................................................................................................3, 4

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
  233 F. Supp. 2d 16 (D.D.C. 2002) ...........................................................................................4

*Koehler v. Bank of Bermuda, Ltd.*,
  101 F.3d 863 (2d Cir. 1996) .....................................................................................................1

*Kraus v. Bd. of Cty. Rd. Comm'rs for Kent Cty.*,
  364 F.2d 919 (6th Cir. 1966) ................................................................................................1, 9

**Page**

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
    71 F. Supp. 2d 139 (E.D.N.Y. 1999) ................................................................................ 2

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
    74 F. Supp. 2d 221 (E.D.N.Y. 1999) ................................................................................ 6

*Painters & Allied Trades Dist. Council 82 Health Care Fund v.
    Takeda Pharm. Co. Ltd.*,
    943 F.3d 1243 (9th Cir. 2019) .................................................................................... 5, 7

*Perry v. Am. Tobacco Co., Inc.*,
    324 F.3d 845 (6th Cir. 2003) ..................................................................................... 7, 8

*Piazza v. Major League Baseball*,
    836 F. Supp. 269 (E.D. Pa. 1993) ................................................................................... 9

*PNC Bank, Nat'l Ass'n v. Stack Container Logistics LLC*,
    No. 1:14CV1585, 2015 WL 12778769
    (N.D. Ohio Mar. 19, 2015) .............................................................................................. 8

*S.E. Laborers Health & Welfare Fund v. Bayer Corp.*,
    444 F. App'x 401 (11th Cir. 2011) ............................................................................. 5, 6

*S.E.C. v. Geswein*,
    2 F. Supp. 3d 1074 (N.D. Ohio 2014) .............................................................. 2, 8, 9, 10

*Sergeants Benevolent Ass'n Health & Welfare Fund v.
    Sanofi-Aventis U.S. LLP*,
    806 F.3d 71 (2d Cir. 2015) .............................................................................................. 5

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*,
    873 F.3d 574 (7th Cir. 2017) ...................................................................................... 5, 6

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012) ......................................................................................... 10

*Susan B. Anthony List v. Driehaus*,
    No. 1:10-CV-720, 2011 WL 5299378
    (S.D. Ohio Nov. 2, 2011) .............................................................................................. 10

*Swint v. Chambers Cty. Comm'n*,
    514 U.S. 35 (1995) ........................................................................................................... 2

                                         **Page**

*Taylor v. CSX Transp., Inc.*,
    No. 3:05 CV 7383, 2007 WL 4591006
    (N.D. Ohio Dec. 28, 2007) ...........................................................................................9

*Tidewater Oil Co. v. United States*,
    409 U.S. 151 (1972) .....................................................................................................2

*Trimble v. Bobby*,
    No. 5:10-CV-00149, 2011 WL 1982919
    (N.D. Ohio May 20, 2011) ........................................................................................3, 9

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010) ......................................................................................5, 6

*United States ex rel. Elliott v. Brickman Grp. Ltd., LLC*,
    845 F. Supp. 2d 858 (S.D. Ohio 2012) ......................................................................3, 9

*W. Tenn. Chapter of Associated Builders & Contractors, Inc. v.
    City of Memphis*,
    138 F. Supp. 2d 1015 (W.D. Tenn. 2000) ....................................................................9

**STATUTES, RULES AND REGULATIONS**

18 U.S.C.
    §1962 ....................................................................................................................*passim*

28 U.S.C.
    §1292 .........................................................................................................................1, 4
    §1292(b) ...............................................................................................................*passim*

Ohio Revised Code
    §2923.31, *et seq.* ................................................................................................... 3, 8, 9

I.  **INTRODUCTION**

Cleveland Bakers and Teamsters Health and Welfare Fund and Pipe Fitters Local Union No. 120 Insurance Fund (collectively, "Plaintiffs") oppose Manufacturer Defendants' Motion to Certify the Court's February 21, 2020 Order for Immediate Appeal Under 28 U.S.C. §1292(b) (ECF No. 3256) ("Motion") and Memorandum in Support [ECF No. 3256-1] ("Mem."). Manufacturer Defendants argue that this Court erred in refusing to dismiss Plaintiffs' RICO claims for lack of proximate cause and urge the Court to certify that question for immediate appeal to the Sixth Circuit pursuant to 28 U.S.C. §1292(b). This Court should deny that request.

This Court correctly held that Plaintiffs' First Amended Complaint [ECF No. 635] ("Complaint" or "FAC") pled a sufficiently direct connection between Manufacturer Defendants' conduct and Plaintiffs' injuries to satisfy RICO's proximate cause requirement. Manufacturer Defendants' disagreement with that ruling is not sufficient grounds for an interlocutory appeal. Indeed, in the mine run of cases, the final judgment rule precludes such piecemeal appeals. *See, e.g., Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198, 209 (1999). Although 28 U.S.C. §1292 provides a limited exception to that rule, *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996), Manufacturer Defendants fail to demonstrate that this Court's Opinion and Order [ECF No. 3177] ("Order") is such an extraordinary ruling that this Court should exercise its discretion to recommend an interlocutory appeal. *See In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002) (§1292(b) reserved for "exceptional cases"); *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974) (court's power to certify under "section 1292(b) should be sparingly applied")[1]; *accord Kraus v. Bd. of Cty. Rd. Comm'rs for Kent Cty.*, 364 F.2d 919, 922 (6th Cir. 1966).

Whether Plaintiffs have adequately alleged proximate cause to support their RICO claims is but one of many issues in this litigation and will hardly control the outcome of this case such that the issue may be deemed a "controlling question of law." In the absence of an immediate appeal, it is possible that further pretrial or trial proceedings might moot the very issue Manufacturer Defendants

---

[1]  Citations and internal quotation marks are omitted and emphasis is added except otherwise noted.

seek to appeal. Nor is there "substantial ground" to believe that this Court erred in its proximate cause analysis. As this Court correctly recognized, where third-party payors ("TPPs") allege injury caused by direct reliance on misrepresentations by drug manufacturers, as in this case, courts have uniformly concluded that there is proximate cause. Finally, an immediate appeal is likely to delay, rather than materially advance, the termination of this litigation.

But even if this Court were to find that Manufacturer Defendants have satisfied the three requirements for certification under Section 1292(b) (which they have not), the Court should nevertheless decline to certify an immediate appeal. *See, e.g., Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995) (district court has "first line discretion to allow interlocutory appeals"); *Tidewater Oil Co. v. United States*, 409 U.S. 151, 167 (1972); *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 146, 162-66 (E.D.N.Y. 1999). An interlocutory appeal here will at best settle only one small piece of this complex litigation and therefore delay, rather than resolve, this case. Moreover, an immediate appeal may prove to be a waste of judicial resources if the issue is subsequently mooted. For all of these reasons, this Court should deny Manufacturer Defendants' Motion.

## II.     ARGUMENT

To demonstrate that an order may be certified for interlocutory appeal pursuant to Section 1292(b), Manufacturer Defendants must establish, at a minimum, that: (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists regarding the correctness of the decision; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. §1292(b); *City of Memphis*, 293 F.3d at 350. Manufacturer Defendants fail to satisfy these threshold requirements, much less offer a compelling reason why this Court should exercise its discretion to certify appeal here.

### A.     This Court's Order Does Not Present a Controlling Question of Law

The test for whether an issue is a controlling question of law turns on whether "it could materially affect the outcome of the case." *City of Memphis,* 293 F.3d at 351; *see also In re Baker & Getty Fin. Servs., Inc.,* 954 F.2d 1169, 1172 n.8 (6th Cir. 1992); *S.E.C. v. Geswein*, 2 F. Supp. 3d 1074, 1086-87 (N.D. Ohio 2014) ("A question of law . . . could materially affect the outcome of the case, [if] reversal

of the District Court's Order would terminate the action."). If the litigation would be "conducted in substantially the same manner regardless of the decision on appeal, an appeal will not materially advance the termination of the case." *In re Project Veritas*, No. 19-0109, 2019 WL 4667711, at *1 (6th Cir. Aug. 16, 2019). The "controlling question" prong includes two elements: "(1) The question involved must be one of law; [and] (2) [i]t must be controlling." *United States ex rel. Elliott v. Brickman Grp. Ltd., LLC*, 845 F. Supp. 2d 858, 865 (S.D. Ohio 2012) (alteration in original).

The issue of whether Plaintiffs have adequately alleged proximate cause to support their RICO claims is not controlling. Even if Plaintiffs' RICO claims were dismissed for lack of proximate cause, the bulk of Plaintiffs' claims would remain to be litigated, including counts under the Ohio Corrupt Practices Act ("OCPA"), for public nuisance, negligence, civil conspiracy and unjust enrichment. Order at 3, 64. Moreover, the scope of discovery would be unaffected since the facts supporting the RICO claim and the OCPA claim largely overlap. Order at 39. Thus, this litigation will be "conducted in substantially the same manner" regardless of any appeal. *Project Veritas*, 2019 WL 4667711, at *1.

It is well established in this Circuit that a question of law is generally not "controlling" unless it terminates, or substantially resolves, the case. *See, e.g.*, *Binger v. Alpont Transp. LLC*, No. 2:17-CV-570, 2019 WL 8331431, at *2 (S.D. Ohio Nov. 18, 2019) ("A reversal of the district court's decision on both issues will not terminate the action or resolve a substantial portion of the case" because "trial on the issue of liability must still go on in the same manner, so these issues cannot be considered 'controlling'"); *Trimble v. Bobby*, No. 5:10-CV-00149, 2011 WL 1982919, at *1 (N.D. Ohio May 20, 2011) ("resolution of an interlocutory appeal in favor of the Petitioner would not resolve this case; rather, a decision on the actual merits of his Petition would still be necessary"); *In re Regions Morgan Keegan ERISA Litig.*, 741 F. Supp. 2d 844, 851-52 (W.D. Tenn. 2010) ("Rejection of one theory may not be controlling when another theory remains available that may support the same result.").[2]

---

[2] Manufacturer Defendants suggest (Mem. 5-6 (quoting *Johnson v. Jones*, 515 U.S. 304, 309 (1995))) that if an interlocutory appeal would "'simplify, or more appropriately direct, the future course of litigation,' and 'thereby reduce the burdens of future proceedings,'" then the legal question is "controlling." *Johnson*, however, did not involve an interlocutory appeal under Section 1292(b) and

Because a determination of whether Plaintiffs' RICO claims should be dismissed will do little to resolve or terminate the litigation, it is not a controlling question of law within the meaning of §1292(b).

### B. There Is No Substantial Ground for Difference of Opinion as to Whether Plaintiffs' Complaint Adequately Alleges Proximate Cause

"The threshold for establishing the 'substantial ground for difference of opinion' with respect to a 'controlling question of law' required for certification pursuant to §1292(b) is a high one." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.,* 233 F. Supp. 2d 16, 19 (D.D.C. 2002). The statute is "not intended merely to provide review of difficult rulings in hard cases." *Id.* at 24. Rather, the "difference of opinion" required for review under Section 1292(b) must arise out of a "genuine doubt as to the correct legal standard." *Gieringer v. Cincinnati Ins. Cos.,* No. 3:08-cv-267, 2010 WL 2572054, at *3 (E.D. Tenn. June 18, 2010).

Manufacturer Defendants contend (Mem. at 6-9) that there is a circuit split regarding proximate cause for RICO claims brought by TPPs against pharmaceutical manufacturers and that the split demonstrates a substantial ground for difference of opinion as to whether Plaintiffs have adequately alleged proximate cause. But there is no circuit split on the narrow legal question presented by the facts alleged in this case: whether TPPs adequately allege proximate cause when they allege that drug manufacturers misrepresented the risk or benefits of drugs to TPPs (or their agents), which then relied on those misrepresentations to pay for drugs for which they otherwise would not have paid. Every circuit court that has addressed this precise legal question has agreed that such allegations are sufficient to satisfy proximate cause for a RICO claim. *See In re Neurontin Mktg. & Sales Practices Litig.,* 712 F.3d 21, 37-39 (1st Cir. 2013) (fraudulent marketing scheme by pharmaceutical manufacturer that directly targeted TPP and resulted in injury to TPP in the form of increased payments for prescriptions was "anything but attenuated"); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.,* 804 F.3d 633, 644 (3d Cir. 2015) (denying motion to dismiss on proximate cause grounds because TPP alleged that

---

therefore has no bearing on the issue of what constitutes a controlling question of law under that statute. 515 U.S. at 310 (stating that §1292 was not applicable).

pharmaceutical manufacturer misrepresented risks of drug to TPP, which resulted in TPP paying for prescriptions it otherwise would not have); *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 943 F.3d 1243, 1257 (9th Cir. 2019) (reversing dismissal on proximate cause grounds, holding that allegations of misrepresentations to TPPs resulting in increased payments by TPPs was foreseeable); *see also Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 349-51 (2d Cir. 2003) (vacating dismissal of a claim under New Jersey law on proximate cause grounds where TPPs alleged that manufacturers misrepresented risks of drug, resulting in payments for prescriptions for which TPPs would otherwise not have paid and characterizing TPPs as "direct victims of Defendants' fraudulent marketing").

The circuit cases that Manufacturer Defendants contend establish a split of authority address a related, but distinct, proximate cause issue, based on a different factual scenario: whether TPPs adequately allege proximate cause when they allege that a drug manufacturer misrepresented drug risks to **doctors** (rather than to TPPs), **doctors** relied upon those misrepresentations in prescribing the drug and TPPs suffered a resulting injury. *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 90-91 (2d Cir. 2015) (denying class certification based on generalized proof of causation where "Plaintiffs' theory of injury requires them to prove third-party reliance by doctors" on manufacturer's misrepresentations); *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 134 (2d Cir. 2010) (denying class certification on theory that TPPs paid excess price for drugs based on manufacturers' misrepresentations to doctors where TPPs did not allege that they relied on misrepresentations); *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, 873 F.3d 574, 578 (7th Cir. 2017) (holding that "improper representations made **to physicians** do not support a RICO claim by Payors, several levels removed in the causal sequence"); *S.E. Laborers Health & Welfare Fund v. Bayer Corp.*, 444 F. App'x 401, 410 (11th Cir. 2011) (holding that TPPs' allegations that drug manufacturer misrepresented drug's risks to physicians failed to allege proximate cause for TPPs' injury).

Indeed, this Court recognized as much in acknowledging that the first set of cases, involving direct misrepresentations to TPPs (or their agents) and first-party reliance, are "more factually analogous" to this case. *See* Order at 16. This Court explained that, like this case, those cases "involve

allegations of direct misrepresentations to TPP; seek damages based, in part, on payments made for prescription drugs; and do not involve class certification issues." *Id.* In contrast, this Court properly distinguished *Sidney Hillman*, *S.E. Laborers* and *Local 1776*, in which the plaintiffs' RICO claims turned on **doctors'** reliance on misrepresentations. *See id.* at 21-23. This Court further noted that even though *Local 1776* concluded that the allegations of proximate cause in that case, based on misrepresentations to doctors, were insufficient for class certification, the Second Circuit left open the possibility that TPP plaintiffs could state a plausible RICO theory based on their own reliance on misrepresentations. *Id.* at 22-23. As a result, the Court concluded that *Local 1776* also supports the conclusion that Plaintiffs here have adequately alleged proximate cause. *Id.*

Indeed, no circuit court has concluded that allegations similar to those here, involving an alleged injury arising out of a TPP's reliance on direct misrepresentations to the TPP, are insufficient as a matter of law to establish proximate cause for a RICO claim. Manufacturer Defendants cannot jury rig a circuit split by eliding this critical factual distinction. When that fact is taken into account, there is no substantial difference of opinion among the courts of appeal that a RICO claim adequately alleges proximate cause where, as is the case here, a TPP plaintiff alleges direct injury resulting from its own reliance upon a drug manufacturer's misrepresentations. Accordingly, interlocutory review is not warranted.

This is the case because, as the Supreme Court has recognized, proximate cause involves a highly fact-specific inquiry. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) ("[p]roximate cause . . . is a flexible concept that does not lend itself to a black-letter rule that will dictate the result in every case"); *id.* at 659 ("proximate cause is generally not amenable to bright-line rules"); *see also Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221, 223 (E.D.N.Y. 1999) ("legal concept of proximate causation is a normative, flexible, and highly fact specific doctrine which requires individualized inquiry"). Pursuant to that flexible, fact-based analysis, the key inquiry is how directly the injury is connected to the unlawful action. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central

question it must ask is whether the alleged violation led directly to plaintiff's injuries."). First-party reliance has generally been found sufficient to establish proximate cause. *Bridge*, 553 U.S. at 653-54.

The distinction of whether TPPs are injured directly through their own reliance, or suffer a third-party injury based on doctors' reliance, on drug manufacturers' misrepresentations, is therefore a significant fact relevant to the question of proximate cause. As courts have explained, tracing a TPP's alleged injury to representations made to **doctors** is more attenuated than tracing a TPP's injury to direct misrepresentations to the TPP. *See, e.g.*, *Neurontin*, 712 F.3d at 37 ("The evidence that [defendant] had specifically targeted [plaintiff] for Neurontin sales in general supports the conclusion that [plaintiff's] injury was a natural consequence of [defendant's] fraudulent scheme."). Here, the chain of causation is not attenuated; Plaintiffs have alleged that Manufacturer Defendants misrepresented the risks of opioids to Plaintiffs (or their agents), which relied on those misrepresentations to pay for prescriptions for which they otherwise would not have paid. *See, e.g.*, FAC ¶¶682-791. None of the cases cited by Manufacturer Defendants suggests that such an allegation of direct injury, premised on first-party reliance, is insufficient for proximate cause.

Manufacturer Defendants further argue (Mem. at 8-9) that this Court improperly distinguished Sixth Circuit precedent, *Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845 (6th Cir. 2003), warranting immediate review. But the Sixth Circuit's decision in *Perry* addressed TPP claims based on "the costs of treating smoking-related illnesses" allegedly caused by manufacturers' unlawful marketing to smokers, *id.* at 847, not misrepresentations made to TPPs themselves. The Sixth Circuit held that "such claims must fail because the alleged injuries are too remote," and "plaintiffs' claims are inherently contingent on injury to third-party smokers." *Id.* at 849. As this Court properly recognized, *Perry* is inapplicable here because Plaintiffs' claims are not third-party injury claims. Order at 36, 39. Plaintiffs have alleged direct injury to themselves based on Defendants' misrepresentations to them. *See, e.g.*, FAC ¶¶682-791; Order at 16, 21-22, 25-27, 35. As Manufacturer Defendants acknowledge (Mem. at 9), other courts addressing TPP claims against drug manufacturers have likewise distinguished prior tobacco-related RICO proximate cause cases on the ground that those TPP claims were contingent upon injuries to smokers. *See, e.g.*, *Painters*, 943 F.3d at 1252 n.9; *Avandia*, 804 F.3d at

645-46.  Thus, this Court was correct in concluding that the Sixth Circuit would similarly find *Perry* inapplicable here, where Plaintiffs allege a direct injury.

Moreover, none of the cases upon which Manufacturer Defendants rely relates to Plaintiffs' RICO claim regarding diversion, as opposed to marketing.  Thus, any purported circuit split has no bearing on those claims and does not establish a substantial difference of opinion as to whether Plaintiffs' RICO claim regarding diversion sufficiently alleges proximate cause.

In sum, the circuits are unanimous that, when a TPP alleges a direct injury based on drug manufacturers' misrepresentations to the TPP (as opposed to doctors), as Plaintiffs have done here, such allegations are adequate to establish proximate cause.  There is no circuit precedent that counsels in favor of a different outcome.  Manufacturer Defendants have therefore failed to establish that there is a substantial difference of opinion such that the Sixth Circuit could reach a different result.

### C. Immediate Review Would Not Materially Advance the Ultimate Termination of the Litigation

To demonstrate that immediate review would materially advance the litigation's ultimate termination, Manufacturer Defendants must show that an interlocutory appeal would "appreciably shorten the time, effort, and expense exhausted between the filing of a lawsuit and its termination." *Geswein*, 2 F. Supp. 3d at 1088.  Manufacturer Defendants cannot satisfy this standard here.  An interlocutory appeal will not materially advance the termination of the litigation because, even were Plaintiffs' RICO claims dismissed, numerous other claims remain, many of which will entail similar discovery, including Plaintiffs' claims under the OCPA.  Thus, because the litigation "will be conducted in substantially the same manner regardless of [the Court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *City of Memphis*, 293 F.3d at 351 (alteration in original); *see also PNC Bank, Nat'l Ass'n v. Stack Container Logistics LLC*, No. 1:14CV1585, 2015 WL 12778769, at *2 (N.D. Ohio Mar. 19, 2015).

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.,* 29 F. Supp. 2d 825, 835-36 (N.D. Ohio 1998), aptly illustrates this point.  As in this case, *Iron Workers* involved a district court order denying dismissal of plaintiffs' RICO claims for lack of proximate cause, which defendants sought to

appeal pursuant to Section 1292(b).  *Id.*  The court denied certification, explaining that, regardless of any appellate decision on the RICO claims, plaintiffs' other claim under the OCPA would proceed, and that the evidence for the OCPA claim would be "identical to the evidence [plaintiffs] will offer in support of their federal RICO claim."  *Id.* at 835.  The court concluded, therefore, that an interlocutory appeal "would only delay the inevitable trial of this case" and would not materially advance the ultimate termination of the litigation.  *Id.*

The same is true here.  Because there are multiple claims and overlapping facts, reversal as to the RICO claims would not "substantially alter the course of the district court proceedings or relieve the parties of significant burdens."  *W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis,* 138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000); *Taylor v. CSX Transp., Inc.,* No. 3:05 CV 7383, 2007 WL 4591006, at *1 (N.D. Ohio Dec. 28, 2007) (immediate appeals should be limited to "exceptional cases where an intermediate appeal may avoid protracted and expensive litigation.") (citing *Kraus*, 364 F.2d at 922); *see also Geswein*, 2 F. Supp. 3d at 1088; *Trimble*, 2011 WL 1982919, at *2 (that an issue was not dispositive of the entire case weighed against interlocutory appeal); *accord Hurley v. Deutsche Bank Tr. Co. Americas*, No. 1:08-CV-361, 2009 WL 1067314, at *4 (W.D. Mich. Apr. 21, 2009) (denying interlocutory appeal because additional claims remained and litigation would not be terminated); *Acosta v. Pace Local I-300 Health Fund*, No. Civ. 04-3885(JAP), 2007 WL 1074093, at *3 (D.N.J. Apr. 9, 2007); *Piazza v. Major League Baseball*, 836 F. Supp. 269, 272 (E.D. Pa. 1993); *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2017 WL 1424326, at *3 (S.D.N.Y. Apr. 20, 2017).

Manufacturer Defendants argue (Mem. at 9-10) that dismissal of the RICO claims "unquestionably would save the time and resources of the Court and parties" – but not in an appreciable manner.  As explained above, Manufacturer Defendants will still have to litigate against a host of other claims and defend against the same scope of discovery.  Indeed, if such marginal, incremental savings were enough to justify an interlocutory appeal, the final judgment rule would become the exception rather than the rule.  *See Elliott*, 845 F. Supp. 2d at 863-64, 871 (because an

additional claim remained, "an immediate appeal would not materially advance the ultimate **termination** of the litigation") (emphasis in original).

Manufacturer Defendants' assertion (Mem. at 10) that an interlocutory appeal would facilitate settlement is wholly conjectural. Courts have recognized that predictions as to whether an immediate appeal will help or hinder settlement negotiations are merely guesswork. *See In re Skelaxin (Metaxalone) Antitrust Litig.,* No. 1:12-md-2343, 2013 WL 4821337, at *4 (E.D. Tenn. Sept. 10, 2013) (considering possible outcomes of interlocutory appeal and concluding "[w]hether such a ruling would make settlement more or less likely is mere speculation"); *Hurley v. Deutsche Bank Tr. Co. Americas*, No. 1:08-CV-361, 2011 WL 13196199, at *3 (W.D. Mich. Feb. 10, 2011) ("given this history of this case, even a favorable ruling from the Sixth Circuit on this issue would not, in this Court's judgment, change the prospects for settlement or the need for a trial"). For that reason, courts have declined to certify interlocutory appeals on the basis of speculation about settlement prospects. *See Geswein*, 2 F. Supp. 3d at 1088 (refusing to grant interlocutory appeal despite claim that it could possibly promote settlement); *Dunn v. Chattanooga Publ'g Co.,* No. 1:12-CV-252, 2013 WL 587493, at *2 (E.D. Tenn. Feb. 14, 2013) ("speculation that an interlocutory appeal will facilitate settlement is insufficient to overcome . . . general prohibition against piecemeal appellate review"). That is true even when the prospect of settlement includes settling a claim for treble damages. *See, e.g.*, *Ashmore v. Ne. Petroleum Div. of Cargill, Inc.,* 855 F. Supp. 438, 440 (D. Me. 1994) (expressing doubt on the likelihood of settlement as a proper consideration under §1292(b): "Here, there is nothing to indicate that the parties will settle 'as soon as' the issue of treble damages is resolved.").[3]

---

[3] Even when courts have speculated about settlement, they have not relied solely on that basis for recommending interlocutory appeal. *See Susan B. Anthony List v. Driehaus*, No. 1:10-CV-720, 2011 WL 5299378, at *2 (S.D. Ohio Nov. 2, 2011) (allowed interlocutory appeal because reversal "would end the case"); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (permitting interlocutory appeal that would resolve plaintiff's "main" claim, leaving behind only a claim that was "perhaps just a life jacket"); *In re Blue Cross Blue Shield Antitrust Litig.,* No. 2:13-CV-20000-RDP, 2018 WL 3326850, at *6 (N.D. Ala. June 12, 2018) (interlocutory appeal appropriate where it concerned threshold issue, which, if it needed to be reversed, might have caused years of work to be redone, including alternative expert reports and briefing).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Manufacturer Defendants' Motion to Certify the Court's February 21, 2020 Order for Immediate Appeal Under 28 U.S.C. §1292(b).

DATED: April 21, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
AELISH M. BAIG
MATTHEW S. MELAMED
HADIYA K. DESHMUKH

*s/ Aelish M. Baig*
AELISH M. BAIG

Post-Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
mmelamed@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
MARK J. DEARMAN
DOROTHY P. ANTULLIS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
dantullis@rgrdlaw.com

PLAINTIFFS' MEM IN OPPOSITION TO MANUFACTURER DEFS' MOTION TO CERTIFY THE
COURT'S FEB. 21, 2020 ORDER FOR IMMEDIATE APPEAL UNDER 28 U.S.C. §1292(b) - 11 -
4851-2168-2618.v1

ROBBINS GELLER RUDMAN
 &amp; DOWD LLP
THOMAS E. EGLER
CARISSA DOLAN
ALEXANDER M. MENDOZA
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tome@rgrdlaw.com
cdolan@rgrdlaw.com
amendoza@rgrdlaw.com

GEORGE H. FAULKNER (0031582)
JOSEPH C. HOFFMAN, JR. (0056060)
JOSEPH D. MANDO (0082835)
FAULKNER, HOFFMAN & PHILLIPS, LLC
20445 Emerald Parkway Drive, Suite 210
Cleveland, OH  44135
Telephone:  216/781-3600
216/781-8839 (fax)
faulkner@fhplaw.com
hoffman@fhplaw.com
mando@fhplaw.com

*Attorneys for Plaintiffs*

SPANGENBERG SHIBLEY & LIBER LLP
PETER H. WEINBERGER (0022076)
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
Telephone:  216/696-3232
216/696-3924 (fax)
pweinberger@spanglaw.com

*Plaintiffs' Co-Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of April, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

*s/ Aelish M. Baig*
Aelish M. Baig
