# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>*Cleveland Bakers & Teamsters Health & Welfare Fund and Pipe Fitters Local Union No. 120 Insurance Fund v. Purdue Pharma L.P., et al.,*<br>Case No. 18-op-45432 (N.D. Ohio) | **MDL No. 2804**<br><br>**Case No. 17-md-2804**<br><br>**Judge Dan Aaron Polster** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DISTRIBUTORS' MOTION TO CERTIFY UNDER 28 U.S.C. §1292(b) THE COURT'S FEBRUARY 21, 2020 ORDER DENYING IN PART THEIR MOTION TO DISMISS THIRD-PARTY PAYOR CLAIMS, FOR PURPOSES OF SEEKING IMMEDIATE APPEAL OF THE COURT'S RULINGS THAT DENIED DISMISSAL OF THE RICO CLAIMS**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARD .............................................................................................2

III.    ARGUMENT ..........................................................................................................3

        A.    Distributors' Proposed Questions for Certification Are Not Controlling .................3

        B.    Distributors' Disagreement with the Court's Order Does Not Equal the
               Substantial Grounds Required Under 28 U.S.C. §1292(b) .........................................4

               1.    There Is No Substantial Ground for Difference of Opinion on Whether
                      Plaintiffs Allege Sufficient Directness for the RICO Proximate Cause
                      Requirement..........................................................................................................5

               2.    There Is No Substantial Ground for Difference of Opinion on Whether
                      Plaintiffs' Claims Meet the RICO "Business or Property" Injury
                      Requirement........................................................................................................11

        C.    Certification Will Not Materially Advance the Litigation .........................................13

IV.     CONCLUSION......................................................................................................15

# TABLE OF AUTHORITIES

Page

## CASES

*Adell v. Cellco P'ship,*
No. 1:18CV623, 2019 WL 5285627
(N.D. Ohio Oct. 18, 2019) ................................................................................................. 2

*Ashmore v. Ne. Petroleum Div. of Cargill, Inc.,*
855 F. Supp. 438 (D. Me. 1994) ...................................................................................... 15

*Binger v. Alpont Transp. LLC,*
No. 2:17-CV-570, 2019 WL 8331431
(S.D. Ohio Nov. 18, 2019) ................................................................................................. 4

*Bridge v. Phoenix Bond & Indem. Co.,*
553 U.S. 639 (2008) ............................................................................................... 5, 6, 8

*Brown v. Ajax Paving Indus., Inc.,*
752 F.3d 656 (6th Cir. 2014) .......................................................................................... 12

*Cardwell v. Chesapeake & Ohio Ry. Co.,*
504 F.2d 444 (6th Cir. 1974) ........................................................................................ 1, 2

*Catlin v. United States,*
324 U.S. 229 (1945) ........................................................................................................... 2

*City of Almaty, Kazakhstan v. Ablyazov,*
No. 15-CV-5345 (AJN), 2017 WL 1424326
(S.D.N.Y. Apr. 20, 2017) ................................................................................................... 9

*City of N.Y. v. Milhelm Attea & Bros.,*
No. 06-CV-03620 (CBA) (VMS),
2012 U.S. Dist. LEXIS 149512 (E.D.N.Y. Oct. 17, 2012) ............................................... 9

*Cunningham v. Hamilton Cty., Ohio,*
527 U.S. 198 (1999) ........................................................................................................... 1

*Dunn v. Chattanooga Publ'g Co.,*
No. 1:12-CV-252, 2013 WL 587493
(E.D. Tenn. Feb. 14, 2013) .............................................................................................. 14

*E. Tenn. Nat. Gas Co. v. 3.04 Acres In Patrick Cty.,*
2006 U.S. Dist. LEXIS 13933
(W.D. Va. Mar. 9, 2006) .................................................................................................. 10

*Firestone Tire & Rubber Co. v. Risjord,*
449 U.S. 368 (1981) ........................................................................................................... 2

**Page**

*Genesis Ins. Co. v. Alfi*,
    No. 2:05-CV-401, 2007 WL 928664
    (S.D. Ohio Mar. 27, 2007) ................................................................................................ 9

*Gieringer v. Cincinnati Ins. Cos.*,
    No. 3:08-cv-267, 2010 WL 2572054
    (E.D. Tenn. June 18, 2010) ........................................................................................... 5, 9

*Hemi Grp., LLC v. City of N.Y.*,
    559 U.S. 1 (2010) .............................................................................................................. 5

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992) ....................................................................................................... 5, 8

*Howe v. City of Akron*,
    789 F. Supp. 2d 786 (N.D. Ohio 2010) ............................................................................. 9

*Hurley v. Deutsche Bank Tr. Co. Americas*,
    No. 1:08-CV-361, 2011 WL 13196199
    (W.D. Mich. Feb. 10, 2011) ............................................................................................ 15

*In re Blue Cross Blue Shield Antitrust Litig.*,
    No. 2:13-CV-20000-RDP, 2018 WL 3326850
    (N.D. Ala. June 12, 2018) ............................................................................................... 15

*In re City of Memphis*,
    293 F.3d 345 (6th Cir. 2002) ............................................................................... 1, 2, 3, 14

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014) ............................................................................ 11

*In re Flor*,
    79 F.3d 281 (2d Cir. 1996) ............................................................................................... 9

*In re Miedzianowski*,
    735 F.3d 383 (6th Cir. 2013) .......................................................................................... 5, 8

*In re MTBE Prods. Liab. Litig.*,
    399 F. Supp. 2d 320 (S.D.N.Y. 2005) .............................................................................. 9

*In re Project Veritas*,
    No. 19-0109, 2019 WL 4667711
    (6th Cir. Aug. 16, 2019) ................................................................................................. 3, 4

**Page**

*In re Regions Morgan Keegan ERISA Litig.*,
 741 F. Supp. 2d 844 (W.D. Tenn. 2010)........................................................................4

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
 No. 1:12-md-2343, 2013 WL 4821337
 (E.D. Tenn. Sept. 10, 2013)............................................................................15

*In re Trump*
 874 F.3d 948, 952 (6th Cir. 2017).......................................................................5

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*,
 29 F. Supp. 2d 825 (N.D. Ohio 1998)................................................................14

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
 731 F.3d 556 (6th Cir. 2013)..........................................................11, 12, 13

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
 233 F. Supp. 2d 16 (D.D.C. 2002)........................................................................4

*Kraus v. Bd. of Cty. Rd. Comm'rs for Kent Cty.*,
 364 F.2d 919 (6th Cir. 1966)........................................................................1, 2

*Manor Care, Inc. v. First Specialty Ins. Corp.*,
 No. 3:03CV7186, 2006 WL 3097193
 (N.D. Ohio Oct. 30, 2006)........................................................................9, 11

*Meyers v. Ace Hardware Corp..*,
 No. C 81-255, 1982 WL 31058
 (N.D. Ohio Sept. 13, 1982)........................................................................9, 11

*Miranda v. Ponce Fed. Bank*,
 948 F.2d 41 (1st Cir. 1991)........................................................................15

*Mohawk Indus., Inc. v. Carpenter*,
 558 U.S. 100 (2009)........................................................................8

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
 71 F. Supp. 2d 139 (E.D.N.Y. 1999)................................................................2, 3

*Perry v. Am. Tobacco Co., Inc.*,
 324 F.3d 845 (6th Cir. 2003)........................................................................5, 10

*PNC Bank, Nat'l Ass'n v. Stack Container Logistics LLC*,
 No. 1:14CV1585, 2015 WL 12778769
 (N.D. Ohio Mar. 19, 2015)........................................................................14

**Page**

*Popular Leasing U.S.A., Inc. v. Forman,*
No. 09-2788 (DRD), 2009 WL 2969519
(D.N.J. Sept. 14, 2009) .......................................................................................................14

*S.E.C. v. Geswein,*
2 F. Supp. 3d 1074 (N.D. Ohio 2014) ...........................................................................3, 14

*Sterk v. Redbox Automated Retail, LLC,*
672 F.3d 535 (7th Cir. 2012).................................................................................................15

*Susan B. Anthony List v. Driehaus,*
No. 1:10-cv-720, 2011 WL 5299378
(S.D. Ohio Nov. 2, 2011) ....................................................................................................15

*Swint v. Chambers Cty. Comm'n,*
514 U.S. 35 (1995)..............................................................................................................2, 3

*Tidewater Oil Co. v. United States,*
409 U.S. 151 (1972).................................................................................................................2

*Trimble v. Bobby,*
No. 5:10-CV-00149, 2011 WL 1982919
(N.D. Ohio May 20, 2011)................................................................................................4, 14

*Trollinger v. Tyson Foods, Inc.,*
370 F.3d 602 (6th Cir. 2004)............................................................................................5, 11

*UFCW v. Philip Morris, Inc.,*
223 F.3d 1271 (11th Cir. 2000) ...........................................................................................10

*United States ex rel. Elliott v. Brickman Grp. Ltd., LLC,*
845 F. Supp. 2d 858 (S.D. Ohio 2012)........................................................................*passim*

*United States v. Philip Morris USA Inc.,*
No. 99-2496 (GK), 2004 WL 1514215
(D.D.C. June 25, 2004) .......................................................................................................14

*United States v. Stone,*
53 F.3d 141 (6th Cir. 1995) ...................................................................................................3

*Vitols v. Citizens Banking Co.,*
984 F.2d 168 (6th Cir. 1993)...................................................................................................2

*Wallace v. Midwest Fin. & Mortg. Servs., Inc.,*
714 F.3d 414 (6th Cir. 2013)........................................................................................5, 6, 8

**Page**

*Winnett v. Caterpillar, Inc.*,
No. 3:06CV00235, 2007 WL 2123905
(M.D. Tenn. July 20, 2007) ................................................................................................................14

**STATUTES, RULES AND REGULATIONS**

18 U.S.C.
§1962 ....................................................................................................................................*passim*

28 U.S.C.
§1291 ................................................................................................................................................2
§1292(b) ..............................................................................................................................*passim*

Ohio Revised Code
§2307.60...........................................................................................................................................3
§2923.31, *et seq.* ...........................................................................................................................3

Federal Rules of Civil Procedure
Rule 12(b)(6) ................................................................................................................................11

Local Civil Rules for the U.S. District Court, Southern District of Ohio
Rule 7.1(f) ......................................................................................................................................1

**SECONDARY AUTHORITIES**

*Appeals from Interlocutory Orders and Confinement in Jail-Type Institutions: Hearing on H.R.
6238 and H.R. 7260 Before Subcomm. No. 3 of the Comm. on the Judiciary*, 85th Cong.
13 (1958) ........................................................................................................................................4

## I.    INTRODUCTION

Cleveland Bakers and Teamsters Health and Welfare Fund and Pipe Fitters Local Union No. 120 Insurance Fund (collectively, "Plaintiffs") oppose Distributors' Motion to Certify Under 28 U.S.C. §1292(b) the Court's February 21, 2020 Order Denying in Part Their Motion to Dismiss Third-Party Payor Claims, for Purposes of Seeking Immediate Appeal of the Court's Rulings that Denied Dismissal of the RICO Claims [ECF No. 3257] ("Motion") and Memorandum in Support [ECF No. 3257-1] ("Memorandum" or "Mem.").

Based on controlling and persuasive authority, this Court properly found that Plaintiffs adequately alleged in their First Amended Complaint [ECF No. 635] both a sufficiently direct connection for RICO's proximate cause requirement and cognizable RICO injuries.  Although Distributors may disagree with the Court's February 21, 2020 Opinion and Order [ECF No. 3177] ("Order"), their disagreement is not grounds for immediate appeal, well prior to any final judgment in this case.  *See, e.g., Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198, 209 (1999).  Rather than demonstrate that the Order fits 28 U.S.C. §1292(b)'s auspices such that the extraordinary – and discretionary – remedy of interlocutory appeal is warranted, Distributors rehash old arguments in an overlong brief they incorrectly characterize as "dispositive."[1]  *See In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002) (§1292(b) reserved for "exceptional cases"); *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974) (court's power to certify under "section 1292(b) should be sparingly applied")[2]; *accord Kraus v. Bd. of Cty. Rd. Comm'rs for Kent Cty.*, 364 F.2d 919, 922 (6th Cir. 1966).  And even if this Court were to find that Distributors satisfied the three requirements for certification under Section

---

[1]    Distributors certify that their Memorandum adheres to the page limit requirements for dispositive motions under Case Management Orders 1 [ECF No. 232] and 4 [ECF No. 485] and Local Rule 7.1(f). Plaintiffs dispute Distributors' characterization of the Motion as "dispositive" because a ruling on this Motion will not dispose of any issues or claims in the case.  Indeed, the Memorandum in Support of Manufacturer Defendants' Motion to Certify the Court's February 21, 2020 Order for Immediate Appeal Under 28 U.S.C. §1292(b) [ECF No. 3256-1] contains no similar certification and is 11 pages in length.  Thus, Plaintiffs conform to the deadlines and page limit requirements for non-dispositive motions in complex cases.

[2]    Citations and internal quotation marks are omitted and emphasis is added except where noted.

1292(b), the Court should nevertheless decline to certify an immediate appeal. *See, e.g., Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995) (district court has "first line discretion to allow interlocutory appeals"); *Tidewater Oil Co. v. United States*, 409 U.S. 151, 167 (1972); *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 146, 162-66 (E.D.N.Y. 1999).

For the reasons set forth herein, Distributors' Motion should be denied.

## II.    LEGAL STANDARD

The final judgment rule of 28 U.S.C. §1291 limits the appellate jurisdiction of circuit courts to a district court's final judgment that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945); *see also Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981) (rule requires appealing party to bring all claims of error in one appeal following judgment on the merits). However, under 28 U.S.C. §1292(b), a court may certify an interlocutory judgment for appeal when: (1) it involves a controlling question of law; (2) a substantial ground for difference of opinion exists regarding the correctness of the decision; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *City of Memphis*, 293 F.3d at 350.

It is a well settled principle that a court's power to certify a judgment to permit an interlocutory appeal under Section 1292(b) should be sparingly applied. *Cardwell*, 504 F.2d at 446; *see also Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. 1993). Review under Section 1292(b) is granted only in exceptional cases. *City of Memphis*, 293 F.3d at 350; *see also Kraus*, 364 F.2d at 922. "Attractive as it may be to refer difficult matters to a higher court for advance decision, such a course of action is contrary to our system of jurisprudence." *United States ex rel. Elliott v. Brickman Grp. Ltd., LLC*, 845 F. Supp. 2d 858, 863 (S.D. Ohio 2012). "As the Sixth Circuit explained, . . . section 1292(b) . . . is to be used only . . . where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Id.* at 863-64 (quoting *Kraus*, 364 F.2d at 922).

Moreover, any "doubts regarding appealability [should be] resolved in favor of finding that the interlocutory order is not appealable." *Adell v. Cellco P'ship*, No. 1:18CV623, 2019 WL 5285627, at

*1 (N.D. Ohio Oct. 18, 2019) (alteration in original) (citing *United States v. Stone*, 53 F.3d 141, 143-44 (6th Cir. 1995)).  And even if movants can satisfy all three requirements for certification under Section 1292(b), a court may nevertheless decline to certify.  *Swint*, 514 U.S. at 47 (district court has "first line discretion to allow interlocutory appeals"); *see also Nat'l Asbestos*, 71 F. Supp. 2d at 146, 162-66.

## III.    ARGUMENT

### A.    Distributors' Proposed Questions for Certification Are Not Controlling

A "controlling" question must be both a question of law and controlling.  *Elliott*, 845 F. Supp. 2d at 865.  A "legal issue is controlling if it could materially affect the outcome of the case."  *City of Memphis,* 293 F.3d at 351.  A question of law . . . could materially affect the outcome of the case, [if] reversal of the District Court's Order would terminate the action."  *S.E.C. v. Geswein*, 2 F. Supp. 3d 1074, 1086-87 (N.D. Ohio 2014).  "When litigation will be conducted in substantially the same manner regardless of the . . . decision [on appeal], the appeal cannot be said to materially advance the ultimate termination of the litigation."  *City of Memphis*, 293 F.3d at 351; *In re Project Veritas*, No. 19-0109, 2019 WL 4667711, at *1 (6th Cir. Aug. 16, 2019).  Because a successful appeal on the fact-inflected issues of RICO directness and injury would not substantially change the manner in which the litigation will be conducted, those questions cannot be said to be controlling.

Plaintiffs have adequately pled cognizable RICO violations; but, even if those claims were dismissed, the parties and Court would still be left with Plaintiffs' claims for: common law public nuisance; negligence; violation of Ohio Revised Code §2307.60; violation of the Ohio Corrupt Practices Act ("OCPA"); unjust enrichment; and civil conspiracy.  Plaintiffs' case against Distributors rests, *inter alia*, upon their failure to timely identify suspicious orders of controlled substances and inform the United States Drug Enforcement Administration of those orders and their failure to maintain effective controls against the diversion of controlled substances into illegitimate channels. The nature and scope of discovery, focusing on Defendants' knowledge and conduct, will not be advanced, narrowed or streamlined by diverting these issues to the court of appeals.  Indeed, the overlap of issues giving rise to Plaintiffs' other causes of action is such that removing the Plaintiffs' RICO claims will not materially impact the course of the current litigation.  Thus, this litigation will

be "conducted in substantially the same manner," regardless of any appeal.  *Project Veritas*, 2019 WL 4667711, at *1.

It is well established in this Circuit that a question of law is generally not "controlling" unless it terminates, or substantially resolves, the case.  *See, e.g., Binger v. Alpont Transp. LLC*, No. 2:17-CV-570, 2019 WL 8331431, at *2 (S.D. Ohio Nov. 18, 2019) ("A reversal of the district court's decision on both issues will not terminate the action or resolve a substantial portion of the case" because "trial on the issue of liability must still go on in the same manner, so these issues cannot be considered 'controlling.'"); *Trimble v. Bobby*, No. 5:10-CV-00149, 2011 WL 1982919, at *1 (N.D. Ohio May 20, 2011) ("resolution of an interlocutory appeal in favor of the Petitioner would not resolve this case; rather, a decision on the actual merits of his Petition would still be necessary"); *In re Regions Morgan Keegan ERISA Litig.,* 741 F. Supp. 2d 844, 851-52 (W.D. Tenn. 2010) ("Rejection of one theory may not be controlling when another theory remains available that may support the same result.").  Because a determination of whether Plaintiffs' RICO claims should be dismissed on causation or injury grounds will do little to resolve or terminate the litigation, it is not a controlling question of law within the meaning of Section 1292(b).

**B.      Distributors' Disagreement with the Court's Order Does Not Equal the Substantial Grounds Required Under 28 U.S.C. §1292(b)**

"The threshold for establishing the substantial ground for difference of opinion with respect to a controlling question of law required for certification pursuant to §1292(b) is a high one."  *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.,* 233 F. Supp. 2d 16, 19 (D.D.C. 2002).  The statute is "not intended merely to provide review of difficult rulings in hard cases."  *Id.* at 24; *accord Appeals from Interlocutory Orders and Confinement in Jail-Type Institutions: Hearing on H.R. 6238 and H.R. 7260 Before Subcomm. No. 3 of the Comm. on the Judiciary,* 85th Cong. 13 (1958) ("'It is not thought that . . . mere question as to the correctness of the ruling would prompt the granting of the certificate.'") (quoting Report of the Committee on Appeals from Interlocutory Orders of the District Courts, Agenda No.

11 (Sept. 23, 1953)).[3] Rather, to meet 28 U.S.C. §1292(b), the substantial difference must arise out of a "genuine doubt as to the correct legal standard." *Gieringer v. Cincinnati Ins. Cos.,* No. 3:08-cv-267, 2010 WL 2572054, at *3 (E.D. Tenn. June 18, 2010).

Thus, it is Distributors' burden to show that: "(1) the case is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *Elliott*, 845 F. Supp. 2d at 866; *see also In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013). Distributors fail to meet their burden.

### 1. There Is No Substantial Ground for Difference of Opinion on Whether Plaintiffs Allege Sufficient Directness for the RICO Proximate Cause Requirement

RICO's proximate causation requirement is an oft-litigated principle under both Supreme Court and Sixth Circuit precedent. The Supreme Court has addressed proximate cause under RICO numerous times, including seminally in *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); and *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1 (2010). So has the Sixth Circuit in, for instance, *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414 (6th Cir. 2013); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004); and *Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845 (6th Cir. 2003). This Court has also considered these issues many times over in ruling on the sufficiency of various MDL plaintiffs' RICO claims – in issuing its Order here, in *Summit County*, in *Muscogee Nation,* in *The Blackfeet Tribe* and in *West Boca*.

Under *Holmes*, proximate causation requires "***some*** direct relation between the injury asserted and the injurious conduct alleged." 503 U.S. at 268; *see also Hemi Grp.*, 559 U.S. at 2 (quoting *Holmes'* "some direct relation" language); *Wallace*, 714 F.3d at 419 (stating directness is "[o]ne . . . consideration" of proximate cause under RICO). But the lack of a direct relationship between parties

---

[3] And although the Sixth Circuit found in *In re Trump* that the sufficiency of the allegations in the complaint was a legal issue over which jurists could disagree, that case addressed whether "the President of the United States must answer for a state-law claim that presents a novel question" where the "practical and political consequences" were "readily apparent." 874 F.3d 948, 952 (6th Cir. 2017); *see* Mem. at 4. Certainly Distributors do not stand in the shoes of the President such that "an interlocutory appeal is hardly imprudent given the exceptional nature of this case." *Trump*, 874 F.3d at 952.

does not defeat proximate cause.  *Bridge*, 553 U.S. at 657-58.  There is sufficient directness for proximate causation where there is a "link between the scheme and the type of injury [plaintiff] suffered."  *Wallace*, 714 F.3d at 420.  The "foundational notion" is that "proximate cause is a flexible concept and must be assessed on a case-by-case basis."  *Id.* at 419.

Here, Plaintiffs allege that Distributors suppressed evidence of opioid diversion despite knowing that Plaintiffs' third-party administrators sought to prevent such diversion; that Distributors failed in their statutory obligations to monitor, report and stop shipment of suspicious opioid orders (*i.e.*, to prevent diversion); and that absent Distributors' suppression and failures, Plaintiffs and their agents would have made different decisions regarding coverage and formulary placement, been on notice that opioids for which they paid were being diverted, taken steps to stop that diversion and communicated to their agents that representations about opioids' non-addictive nature were untrue. *See* Order at 10, 25, 32-33.  As a direct result, Plaintiffs allege they paid for more opioids than they otherwise would have and for significant opioid-related medical treatment.  *See* Order at 11, 27, 33.

Applying controlling precedent to once again analyze Distributors' well-worn assertions that non-patient plaintiffs' injuries are too remote and derivative, the Court correctly found Plaintiffs' allegations plausibly alleged a sufficiently direct connection between Distributors' concealment and failures and Plaintiffs' injuries to adequately allege proximate cause under RICO.  Order at 29.

### a.    Payments for Opioids[4]

Distributors contend a substantial ground for disagreement exists as to whether Plaintiffs' payment for opioids for which they otherwise would not have paid is direct enough to Distributors' alleged concealment and failures.  They – puzzlingly – argue both that: (1) a "deep Circuit split" bears on whether Plaintiffs have plausibly alleged Distributors proximately caused Plaintiffs to pay for more

---

[4]    Distributors did not challenge – or acknowledge – Plaintiffs' alleged injury for opioid payments in their underlying motion to dismiss briefing.  *See* Defendants AmerisourceBergen Drug Corp., Cardinal Health, Inc., and McKesson Corp.'s Motion to Dismiss ("Dist. MTD"), at 7 ("The Funds' alleged injury consists exclusively of 'payments' they made for their members' medical care and treatment.").

opioid medications than they would have (Mem. at 6-8); and (2) the cases evidencing that apparent split have nothing to do with Plaintiffs' RICO claims against Distributors (Mem. at 8-12).

As to the first argument, Plaintiffs incorporate their discussion of that split in Plaintiffs' Opposition to Manufacturer Defendants' Motion to Certify the February 21, 2020 Order for Immediate Appeal Under 28 U.S.C. §1292(b) ("Mfr. Opp."), filed contemporaneously herewith, at 4-8. Given the overlap in arguments and the overlong brief filed by Distributors, Plaintiffs simply note here that, like Manufacturers, Distributors have presented no evidence of an intra- or inter-circuit split regarding Plaintiffs' actual allegations.

As to the second argument – that the purported circuit split does not directly address Plaintiffs' diversion-based allegations – Plaintiffs agree that it does not. Indeed, the Court found as much. *See* Order at 27 ("The second theory is not addressed in these four cases[.]"). But Distributors do not clearly explain how this provides any basis for finding that substantial grounds for disagreement exist. *See* Mem. at 8-12. Distributors attempt to draw a connection from this benign point to the conclusion that there is an "absence of authority directly supporting this Court's ruling[.]" Mem. at 12. And they falsely suggest that the Court exclusively based its finding of proximate cause as to Plaintiffs' RICO allegations against Distributors on *Avandia*, *Neurontin*, *Desiano* and *Painter*s. Mem. at 11.

This is, of course, absurd. The Court's Order is grounded in controlling Supreme Court and Sixth Circuit precedent – the same precedent underlying the *Summit County*, *Muscogee Nation*, *Blackfeet Tribe* and *West Boca* orders, wherein the Court found differently situated plaintiffs' allegations of RICO proximate causation were also sufficient. The Court evaluated Plaintiffs' allegations to determine whether they met the RICO proximate causation and directness standard (Order at 26-29), and found that they did – not because Plaintiffs pled direct misrepresentations on which they relied, as in the circuit cases – but because they alleged "also that the actions and inactions of the Distributor and Pharmacy Defendants contributed to their damages" (Order at 28).

Distributors do not point to any fault with the Court's underlying analysis. They simply reargue points the Court has already considered and rejected, which is an inappropriate use of 28 U.S.C. §1292(b). *Elliott*, 845 F. Supp. 2d at 864. And they again insert their own version of the facts

and insist that first-party reliance is always necessary to establish directness.  Mem. at 10-11.  Of course, the Supreme Court long ago held that it is not.  *Bridge*, 553 U.S. at 657-58; *Wallace*, 714 F.3d at 419-20.  Nor do Plaintiffs need to allege they purchased the opioids directly from Distributors.  *Wallace*, 714 F.3d at 420.  Plaintiffs allege that they were the targets and victims of a scheme by Defendants to flood the market with opioids, conceal diversion and flout regulatory controls, which directly caused Plaintiffs to pay for more opioids than they otherwise would have.  As with their underlying motion to dismiss, Distributors provide no support, apart from their own *ipse dixit,* for how **this** chain of causation fails to allege proximate causation.  *See* Mem. at 11 ("In any event, such an alleged causal chain would be speculative, unforeseeable, and well beyond the direct injury and proximate causation required[.]").

The fact that Plaintiffs' precise allegations find no identical analog in the case law does not render the Court's Order more subject to questioning.  The Supreme Court has cautioned that "the infinite variety of claims that may arise make it virtually impossible to announce a black-letter rule that will dictate the result in every case," and its use of "the term 'direct' should merely be understood as a reference to the proximate-cause enquiry." *Holmes*, 503 U.S. at 272 n.20.  Every time district courts resolve a question of law for which no precedent is 100% on point – as they do all the time – they must interpret the most relevant precedents and apply them to the unique circumstances at hand.  Distributors cite to *Miedzianowski*, 735 F.3d 383, to suggest that the purported absence of authority "weighs heavily in favor" of certification (Mem. at 12), but *Miedzianowski* does not stand for such a broad proposition.  The Sixth Circuit there simply reinforced the point that a substantial ground for difference of opinion **does not exist** when governing Sixth Circuit precedent settles the issue at hand. *Id.* at 384.[5]  "The mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion, . . . and district

---

[5]    Distributors' cherry-picked language from *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009), is similarly unhelpful.  In holding that a pretrial discovery order of first impression did not satisfy the collateral order doctrine, the Supreme Court suggested in *dicta* that other options, like a Section 1292(b) certification, **might** be available to one seeking to challenge such an order.  *Id.* at 110-11. *Mohawk* does not otherwise analyze the requisites for a Section 1292(b) certification.

courts must analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a ***substantial*** ground for dispute." *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2017 WL 1424326, at *2 (S.D.N.Y. Apr. 20, 2017) (emphasis in original) (citing *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).  Indeed, if the novelty of a factual pattern, alone, were sufficient grounds for certification under Section 1292(b), then interlocutory appeals would be the norm instead of the rare exception.

At bottom, Distributors' entire "substantial ground" argument boils down to their disagreement with this Court's application of the well settled law on RICO causation and injury to the facts of this case.  Distributors vehemently contend they are correct and the Court is wrong – on the application of law, and not on the legal standard itself.  But the law in this Circuit is overwhelmingly clear that disagreement with a court's application of the law to the facts of a case does not meet the substantial ground for difference of opinion test.  *See Meyers v. Ace Hardware Corp..*, No. C 81-255, 1982 WL 31058, at *5 (N.D. Ohio Sept. 13, 1982) ("The mere fact that [parties] vehemently disagree with the [c]ourt's holding does not in or of itself demonstrate a substantial ground for difference of opinion."); *Elliot*, 845 F. Supp. 2d at 864; *Howe v. City of Akron,* 789 F. Supp. 2d 786, 810 (N.D. Ohio 2010) ("§1292(b) is not appropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts."); *Gieringer,* 2010 WL 2572054, at *3 (refusing to apply §1292(b) where "[d]efendant is challenging this [c]ourt's application of law to the facts because of its own disagreement with the outcome, rather than presenting a situation where there are substantial disputes as to the applicable law"); *Genesis Ins. Co. v. Alfi*, No. 2:05-CV-401, 2007 WL 928664, at *2 (S.D. Ohio Mar. 27, 2007); *Manor Care, Inc. v. First Specialty Ins. Corp.*, No. 3:03CV7186, 2006 WL 3097193, at *2 (N.D. Ohio Oct. 30, 2006).

### b.      Payments for Opioid-Related Medical Treatment

Similarly, Section 1292(b) is not a proper vehicle for Distributors to rehash the arguments they made in support of their motion to dismiss, which the Court already considered and rejected.  *See City of N.Y. v. Milhelm Attea & Bros.*, No. 06-CV-03620 (CBA) (VMS), 2012 U.S. Dist. LEXIS 149512, at *13 (E.D.N.Y. Oct. 17, 2012); *In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 320, 324 (S.D.N.Y. 2005);

accord *E. Tenn. Nat. Gas Co. v. 3.04 Acres In Patrick Cty.*, 2006 U.S. Dist. LEXIS 13933, at *3 (W.D. Va. Mar. 9, 2006).  Nevertheless, Distributors use this Motion to once again assert their arguments that Plaintiffs' injuries based on increased payments for medical care are derivative and too remote to satisfy RICO's proximate causation requirement – almost verbatim.  *Compare, e.g.*, Mem. at 13 ("The usual . . . rule is that a [third-party payor] has no direct cause of action . . . against one who injures the [payor's] beneficiary, imposing increased costs upon the [payor].") (citing *UFCW v. Philip Morris, Inc.*, 223 F.3d 1271, 1274 & n.7 (11th Cir. 2000)) *with* Dist. MTD at 4 ("The usual common law rule is that a health-care provider has no direct cause of action in tort against one who injures the provider's beneficiary, imposing increased costs upon the provider.") (citing *UFCW*, 223 F.3d at 1274).[6]

Distributors do not even attempt to argue that the issue of proximate causation with regard to this second category of damages is "difficult and of first impression," that "a difference of opinion exists within the [6th C]ircuit," or that "the circuits are split on the issue."  *Elliott*, 845 F. Supp. 2d at 867.  Indeed, they cannot.

The Court has already thoroughly considered the arguments Distributors rehash here; analyzed the reasoning and factual underpinnings of *Perry*, 324 F. 3d 845, and the other tobacco cases that Distributors cite; applied the proximate causation and direct injury standard elucidated in controlling Supreme Court and Sixth Circuit authority; and correctly found that Plaintiffs alleged facts sufficient to pass a motion to dismiss for their claims for payments for opioid-related medical care.  The Sixth Circuit's decision in *Perry* addressed third-party payor claims based on "the costs of treating smoking-related illnesses" allegedly caused by manufacturers' unlawful marketing ***to smokers***, *id.* at 847, not conduct directed at the payors themselves.  By contrast, Plaintiffs have alleged direct injury to themselves.  Order at 16, 21-22, 25-27, 35.  Thus, this Court properly recognized that *Perry* is inapplicable here and was correct in concluding that the Sixth Circuit would agree.  Order at 36, 39.  *See also* Mfr. Opp at 7-8.  Where, as here, the Court's order considered and applied "well settled,

---

[6]   Plaintiffs also note, by way of comparison, that Distributors' current characterization of the *UFCW* court's language was far more accurate in their underlying motion to dismiss.  Their swap of "third-party payor" for "healthcare provider" is dubious at best.

controlling, and binding precedent to the issues raised" and Distributors' Motion for certification simply "presents the same arguments previously ruled on," certification for interlocutory appeal should not be granted. *See Elliott*, 845 F. Supp. at 868; *Manor Care*, 2006 WL 3097193, at *2; *Meyers*, 1982 WL 31058, at *5; *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530-31 (S.D.N.Y. 2014).

Further, the directness between Distributors' conduct and Plaintiffs' payment for medical care is a fact-inflected issue. In finding that Plaintiffs had plausibly alleged direct injury to "cross the plausibility threshold" under Rule 12(b)(6) (Order at 27), the Court explicitly cautioned that Plaintiffs would have to adduce sufficient evidence to prove their alleged chain of causation and show why the case did not follow the same line as the tobacco cases (Order at 29, 38-39); *see also* Order at 44 ("Plaintiffs' claimed injuries sufficient to satisfy proximate cause, and raises factual issues concerning intervening acts and foreseeability not appropriately resolved on a motion to dismiss."). Thus, the Court gave great consideration to the tobacco decisions and correctly recognized that Plaintiffs' ability to prevail on their RICO claims for medical care payments would be a highly factual determination. Questions of whether a causal link is too weak and whether intervening causes break the chain are better left to later stages in the case. *Trollinger*, 370 F.3d at 619.

Finally, even if Plaintiffs had not pled a plausible chain of causation for their increased medical payments, they allege other RICO injuries, *i.e.*, for increased payments for opioids. *See* Order at 35-36, 39; *see also* ECF No. 1203 at 15-17; ECF No. 3253 at 19-20. It is enough now that Plaintiffs have ***alleged*** a plausible chain of causation for at least one category of injury, and the Order – prior to a shred of discovery – is not suited for interlocutory appeal.

## 2. There Is No Substantial Ground for Difference of Opinion on Whether Plaintiffs' Claims Meet the RICO "Business or Property" Injury Requirement

Distributors once again rely on *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013), to repeat another argument already considered and rejected by this Court: that Plaintiffs have not alleged any injury to their business or property, but, instead, only alleged injuries that flow from the personal injuries of their insureds. Mem. at 16. And again, Plaintiffs note that repeating

arguments the Court has already addressed in prior orders is an improper use of the interlocutory appeal process.  *See Elliott*, 845 F. Supp. 2d at 868.

Distributors specifically take issue with the portion of the Court's Order distinguishing *Jackson* and other decisions that considered whether a pecuniary harm arises directly from a personal injury. Mem. at 17 (citing Order at 35).  In its Order, the Court explained that those cases "involve economic losses arising directly from a personal injury, and 'the alleged RICO injury merely acts as an alternate theory for recovering damages otherwise available in a tort claim for personal injury and is asserted by the plaintiff him- or herself.'"  Order at 35 (quoting ECF No. 1203 at 14).  By contrast, Plaintiffs here do not seek damages for economic losses they suffered as a result of their own personal injuries; rather, Plaintiffs seek damages for payments they made, and their claims are theirs and theirs alone. *Id.*

Distributors contend that reasonable minds could disagree with the Court's alternate theory analysis.  Mem at 17.  They claim it is "contrary to Sixth Circuit authority holding that it is the 'nature of the ***injury***' that determines whether *Jackson* applies, not the identity of the parties."  *Id.* (citing *Brown v. Ajax Paving Indus., Inc.*, 752 F.3d 656, 658 (6th Cir. 2014)).  But Distributors misstate *Brown*'s holding. In fact, in rejecting the plaintiff's argument that *Jackson* applies only to disputes between employer and employees, the Sixth Circuit stated:

> [RICO's] applicability turns on the nature of the ***injury*** – that the plaintiff was injured in his business or property.  It does not turn on the nature of the ***defendant***.  We do not see how the same harm, loss of expected worker compensation benefits, could count as an injury to business or property against some defendants but not against other defendants.

*Brown*, 752 F.3d at 657-58 (emphasis in original).  Thus, *Brown* is just another case involving economic losses arising directly from a personal injury where the alleged RICO injury merely acts as an alternate theory for recovering damages otherwise available in a tort claim for personal injury and is asserted by the plaintiff him/herself.  Order at 35.

Distributors also claim, as they did in their motion to dismiss, that Plaintiffs' injuries "indisputably arise directly out of personal injury of an individual treated."  Mem. at 17 n.9.  In truth,

and what Distributors omit, is that the Court determined that even under a narrower construction of *Jackson*, Plaintiffs assert claims that do not flow from personal injuries to a third party:

> However, even if *Jackson* precludes a RICO claim where the asserted economic harm is created by personal injury to a third-party, the Funds also allege other categories of injury: claims paid for reimbursement for opioids premised on misrepresentations made to them or their agents, and payments unknowingly made for opioids destined for diversion into the secondary black market created by the RICO Supply Chain Defendants.  These claims do not arise from third-party person injuries.

Order at 35-36.

In essence, Distributors take issue with this Court's application of the law, which, again, is an inappropriate use of interlocutory appeal.  *Elliott*, 845 F. Supp. 2d at 864.  This Court has already determined that at least some categories of Plaintiffs' damages do not derive from personal injuries and thus do not implicate *Jackson*.  Whether some other damages do fall into an area of prohibited recovery is not an appropriate issue for interlocutory review and should be determined based on a full record, as this Court noted denying Defendants' motion to dismiss *West Boca*'s RICO claims:

> While the Court is hesitant to find that hospitals have standing to bring a RICO claim for their unreimbursed medical expenses, the Court will allow the RICO claim with respect to this injury to proceed for two reasons.  First, in the municipality cases, the Tribe cases, and the third-party payor case, the Court concluded it would not (**at the motion to dismiss stage**) draw distinctions between the various alleged categories of injuries.  Such distinctions regarding damages are better drawn after discovery has fleshed out the factual record.  Second, as West Boca carefully points out, there are a large number of factual distinctions between opioid cases and tobacco cases generally, and some of those factual distinctions may reasonably require further development.

ECF No. 3253 at 23-24 (emphasis in original).

Distributors may disagree with how the Court applied the law to the facts, but that does not amount to a substantial ground for difference of opinion as required under Section 1292(b).

**C.    Certification Will Not Materially Advance the Litigation**

Immediate review of the Court's decision would not materially advance the litigation.  Even if the Court of Appeals overturned the Order, the majority of the claims against Distributors remain, many of which rely on the same facts as the RICO claims, thus mooting any purported savings of time or expense in discovery.  And Distributors' assertion that an interlocutory appeal would facilitate settlement is, at best, conjecture.  It is not enough to show review is warranted here.

To meet this final factor under Section 1292(b), certification must "appreciably shorten the time, effort, and expense exhausted between the filing of a lawsuit and its termination." *Geswein*, 2 F. Supp. 3d at 1088 (quoting *Trimble*, 2011 WL 1982919, at *2). Here, because the litigation "will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *Id.* (citing *City of Memphis*, 293 F.3d at 351); *see also PNC Bank, Nat'l Ass'n v. Stack Container Logistics LLC*, No. 1:14CV1585, 2015 WL 12778769, at *2 (N.D. Ohio Mar. 19, 2015). For a full discussion of this point, which Plaintiffs incorporate here, *see* Mfr. Opp. at 9 (discussing *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.,* 29 F. Supp. 2d 825 (N.D. Ohio 1998)).

Distributors' cases do not dictate a different outcome. *Popular Leasing U.S.A., Inc. v. Forman*, No. 09-2788 (DRD), 2009 WL 2969519 (D.N.J. Sept. 14, 2009), involved an appeal from a bankruptcy court decision in an adversary proceeding. Dismissal of the claim would "hasten the termination of the bankruptcy by significantly simplifying the discovery process." *Id.* at *5. Here, the case would still proceed with Plaintiffs' other claims, requiring similar discovery. And in *United States v. Philip Morris USA Inc.,* No. 99-2496 (GK), 2004 WL 1514215, at *2-*3 (D.D.C. June 25, 2004), the court found that the "scope of disgorgement under RICO will dramatically affect the shape and length of the trial." Those same concerns are not present here. Similarly, Distributors' challenges to Plaintiffs' RICO standing are not akin to the "extraordinary type of case" contemplated by *Winnett v. Caterpillar, Inc.*, No. 3:06CV00235, 2007 WL 2123905, at *3 (M.D. Tenn. July 20, 2007). *Caterpillar* involved a "jurisdictional issue [that] affect[ed] over eighty percent (80%) of the claims in [that] case." *Id.* at *6. RICO standing is not a pervasive issue like subject matter jurisdiction; a "vast majority of the claims" would remain regardless of a Sixth Circuit reversal. *Id.*

Distributors' claim that an appeal would aid in settlement discussions is speculative at best and disingenuous at worst. *See Geswein*, 2 F. Supp. 3d at 1088 (refusing to grant interlocutory appeal despite claim that it could eliminate important counts against defendants and possibly promote settlement); *Dunn v. Chattanooga Publ'g Co.,* No. 1:12-CV-252, 2013 WL 587493, at *2 (E.D. Tenn. Feb. 14, 2013) ("speculation that an interlocutory appeal will facilitate settlement is insufficient to overcome . . .

general prohibition against piecemeal appellate review"). Courts have rejected the contention that interlocutory appeals are more appropriate when a decision involves claims with treble damages because resolution could promote settlement. *See, e.g., Ashmore v. Ne. Petroleum Div. of Cargill, Inc.,* 855 F. Supp. 438, 440 (D. Me. 1994) (expressing doubt on the likelihood of settlement as a proper consideration under §1292(b); "Here, there is nothing to indicate that the parties will settle 'as soon as' the issue of treble damages is resolved."). The effect on settlement negotiations is unclear. *See In re Skelaxin (Metaxalone) Antitrust Litig.,* No. 1:12-md-2343, 2013 WL 4821337, at *4 (E.D. Tenn. Sept. 10, 2013) (considering possible outcomes of review by the Court of Appeals and concluding "[w]hether such a ruling would make settlement more or less likely is mere speculation"); *Hurley v. Deutsche Bank Tr. Co. Americas,* No. 1:08-CV-361, 2011 WL 13196199, at *3 (W.D. Mich. Feb. 10, 2011) ("given this history of this case, even a favorable ruling from the Sixth Circuit on this issue would not, in this Court's judgment, change the prospects for settlement or the need for a trial").

Unsurprisingly, none of Distributors' cited cases turned on the issue of settlement. In *Susan B. Anthony List v. Driehaus,* No. 1:10-cv-720, 2011 WL 5299378, at *2 (S.D. Ohio Nov. 2, 2011), the court allowed the appeal because a reversal "would end the case." Similarly, in *Sterk v. Redbox Automated Retail, LLC,* 672 F.3d 535, 536 (7th Cir. 2012), the court characterized the claim to be appealed as the plaintiff's "main one" while calling the remaining claim "perhaps just a life jacket." And in *In re Blue Cross Blue Shield Antitrust Litig.,* No. 2:13-CV-20000-RDP, 2018 WL 3326850, at *6 (N.D. Ala. June 12, 2018), the question to be appealed was a threshold issue, which, if not clarified by the appellate court, could cause years of work to potentially have to be redone, including alterative expert reports and briefing. Those concerns are not present here.[7]

Distributors' proposed interlocutory appeal will not advance the termination of this litigation.

## IV.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Distributors' Motion.

---

[7]    *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991), did not involve Section 1292 certification, but was a direct appeal after a RICO claim was dismissed.

DATED:  April 21, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
AELISH M. BAIG
MATTHEW S. MELAMED
HADIYA K. DESHMUKH

_s/ Aelish M. Baig_
AELISH M. BAIG

Post-Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
mmelamed@rgrdlaw.com
hdeshmukh@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
MARK J. DEARMAN
DOROTHY P. ANTULLIS
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
dantullis@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THOMAS E. EGLER
CARISSA DOLAN
ALEXANDER M. MENDOZA
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tome@rgrdlaw.com
cdolan@rgrdlaw.com
amendoza@rgrdlaw.com

GEORGE H. FAULKNER (0031582)
JOSEPH C. HOFFMAN, JR. (0056060)
JOSEPH D. MANDO (0082835)
FAULKNER, HOFFMAN & PHILLIPS, LLC
20445 Emerald Parkway Drive, Suite 210
Cleveland, OH  44135
Telephone:  216/781-3600
216/781-8839 (fax)
faulkner@fhplaw.com
hoffman@fhplaw.com
mando@fhplaw.com

*Attorneys for Plaintiffs*

SPANGENBERG SHIBLEY & LIBER LLP
PETER H. WEINBERGER (0022076)
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
Telephone:  216/696-3232
216/696-3924 (fax)
pweinberger@spanglaw.com

*Plaintiffs' Co-Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of April, 2020, I electronically filed the foregoing

with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record

by, and may be obtained through, the Court CM/ECF Systems.

*s/ Aelish M. Baig*
Aelish M. Baig