# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | )    MDL 2804 |
| | ) |
| | )    **Case No. 1:17-md-2804** |
| THIS DOCUMENT RELATES TO: | ) |
| | )    **Judge Dan Aaron Polster** |
| *Broward County, Florida v.* | ) |
| *Purdue Pharma L.P., et al.* | )    <u>**OPINION AND ORDER**</u> |
| Case No. 18-op-45332 | ) |
| | ) |

Before the Court are three separate motions to dismiss the Complaint (Doc. #: 525[1]) filed against plaintiff Broward County, Florida.[2]  Pharmacies,[3] Distributors,[4] and Manufacturers[5] each filed a group motion, seeking dismissal of Broward's claims against them.[6] Doc. #: 582 (Pharmacies); Doc. #: 591 (Distributors); Doc. #: 593 (Manufacturers). Broward filed an omnibus opposition that

---

[1] Unless otherwise indicated, all document numbers refer to the master MDL docket, Case No. 17-md-2804. Page numbers, when necessary, refer to the documents' native format pagination.

[2] Broward's Complaint was refiled redacted at Doc. #: 525 and after briefing on the motions to dismiss, Broward filed a Second Amended Complaint to add new Defendants, Case No. 18-op-45322, Doc. #: 88. Although the Court refers to the sealed Amended Complaint, paragraph numbers in the redacted version should be the same.

[3] The Pharmacies' motion was filed collectively by defendants CVS Health Corporation ("CVS"), Walgreens Boots Alliance, Inc. ("Walgreens"), and Walmart Inc. ("Walmart") (collectively "Pharmacies" or "Pharmacy Defendants").

[4] The Distributors' motion was filed collectively by defendants AmerisourceBergen Drug Corporation ("ABDC"); Cardinal Health, Inc. ("Cardinal"); and McKesson Corporation ("McKesson") (collectively "Distributors" or "Distributor Defendants").

[5] The Manufacturers' motion was filed collectively by defendants Purdue Pharma LP, Purdue Pharma Inc., and The Purdue Frederick Company Inc. ("Purdue"); Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. ("Allergan/Actavis"); Watson Laboratories, Inc., Actavis Pharma, Inc.; Actavis LLC; Teva Pharmaceuticals, USA, Inc.; and Cephalon, Inc. ("Teva"); Johnson & Johnson ("J&J") and Janssen Pharmaceuticals, Inc., Ortho-McNeil Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. ("Janssen"); Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. ("Endo"); Insys Therapeutics, Inc. ("Insys"); Mallinckrodt LLC ("Mallinckrodt"); and Noramco, Inc., to the extent applicable (collectively "Manufacturers" or "Manufacturer Defendants").

[6] The Court recognizes that some Defendants have or are contemplating filing for bankruptcy protection, and litigation against those Defendants has or may be stayed pending those proceedings. For the sake of simplicity, the Court addresses these motions as they were filed by the parties.

addressed all three motions. Doc. #: 730. The three Defendant groups each filed replies in support of their respective motions. Doc. #: 825 (Pharmacies); Case No. 1:18-op-45332, Doc. #: 81 (Distributors); Doc. #: 814 (Manufacturers). Broward later filed two notices of supplemental authority. Doc. ##: 790; 901.

The Court has reviewed all of the parties' submissions. For the reasons stated below, the Court now rules as follows: Defendants' Motions to Dismiss are **GRANTED** with respect to Counts VII (Negligent Marketing); and Count XIII (Punitive Damages). The motions are otherwise **DENIED**.

## I. Legal Standard for Motion to Dismiss

The Court incorporates by reference the applicable legal standards set forth in its Opinion and Order in *West Boca Medical Center, Inc. v. AmerisourceBergen Drug Corp.,* Case No. 1:18-op-45530, MDL Doc. #: 3253 at 2-3.

## II. Factual Allegations

In its Complaint, Broward County asserts the following claims:

- Count I, Violation of RICO,[7] 18 U.S.C. § 1961 *et seq.* - Opioid Marketing Enterprise (Against "RICO Marketing Defendants");[8]

---

[7] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

[8] In its Complaint, Broward uses the following definitions:

- "Collectively, Purdue, Actavis, Cephalon, Janssen, Endo, Insys, and Mallinckrodt are referred to as 'Marketing Defendants.'" *See* Doc. #: 520 at ¶82.
- "Collectively, Defendants CVS, Health Mart, H.D. Smith, Walgreens, and Wal-Mart are referred to as 'National Retail Pharmacies.'" Doc. #: 520 at ¶95.
- "Cardinal, McKesson, AmerisourceBergen and the National Retail Pharmacies are collectively referred to as the 'Distributor Defendants.'" Doc. #: 520 at ¶95.
- "Together, Purdue, Actavis, Cephalon, Endo, Mallinckrodt, Cardinal, McKesson and AmerisourceBergen are sometimes referred to as "RICO Supply Chain Defendants." Doc. #: 520 at ¶95 n.14.  These parties are also referred to as the "Opioid Supply Chain Enterprise."
- "Together, Purdue, Cephalon, Janssen, Endo and Mallinckrodt are also sometimes referred to as "RICO Marketing Defendants," Doc. #: 520 at ¶82 n.13, and these parties are also referred to as part of the "Opioid Marketing Enterprise." Doc. #: 520 at ¶742.

- Count II, Violation of RICO, 18 U.S.C. § 1961 *et seq.* - Opioid Supply Chain Enterprise (Against "RICO Supply Chain Defendants");

- Count III, Violation of The Florida Corrupt Practices Act Florida Revised Code §§ 2923.31, *et seq.* - Opioid Marketing Enterprise;[9]

- Count IV, Violation of Civil Remedies for Criminal Practices Act Fla. Stat. § 772.101, *et seq.* ("Florida RICO") - Opioid Supply Chain Enterprise (Against RICO Supply Chain Defendants);

- Count V, Violation of Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. § 501.201 *et seq.*) (Against All Defendants);

- Count VI, Public Nuisance (Against All Defendants);

- Count VII, Negligence (Against Marketing Defendants);

- Count VIII, Negligence (Against All Defendants);

- Count IX, Gross Negligence (Against All Defendants);

- Count X, Unjust Enrichment (Against All Defendants);

- Count XI, Fraud (Against All Defendants);

- Count XII, Civil Conspiracy (Against All Defendants);

- Count XIII, Punitive Damages;

Most of Broward's allegations of Defendants' conduct are similar to those alleged in complaints filed in (i) *West Boca* (ii) *Summit County*, (ii) *Muscogee (Creek) Nation*, and (iii) *Blackfeet Tribe* cases.[10]  *See* Doc. ##: 385; 514; 731; Case No. 18-op-45749, Doc. #: 6. The Magistrate Judge and this Court have addressed those factual allegations at length. *See* Doc. #: 3253; *Summit County Report and Recommendation ("R&R"),* Doc. #: 1025; *Muscogee Nation R&R,* Doc. #: 1499; *Blackfeet Tribe R&R*, Doc. #: 1500; *Opinion and Order on Summit*

---

[9] Broward indicated that it "erroneously referred to Florida Revised Code §§ 2923.31 *et seq.* in the heading of its Third Claim for Relief, SAC at 273, when it intended to refer to Fla. Stat. §§ 772.101 *et seq.* ("Florida RICO")." Doc. #: 730 at 56 n.33. Broward properly argued Florida RICO in its pleadings, and the Court and Defendants addressed the Florida RICO claim accordingly.

[10] Those cases are *West Boca Medical Center, Inc. v. AmerisourceBergen Drug Corp., et al.*, 1:18-op-45530; *County of Summit, Ohio, et al. v. Purdue Pharma L.P., et al.*, 18-op-45090; *The Muscogee (Creek) Nation v. Purdue Pharma L.P., et al.*, 18-op-45459; and *The Blackfeet Tribe of the Blackfeet Indian Reservation v. AmerisourceBergen Drug Corp., et al.*, 18-op-45749.

*County*, Doc. #: 1203; *Opinion and Order on Tribe Cases*, Doc. #: 1680. Thus, the Court provides below only a brief overview of the factual allegations specific to Broward, and incorporates by reference the general factual circumstances surrounding the opioid crisis and the allegations of Defendants' behavior that are common to all of these cases.

### A. Factual Allegations Against Defendants

Broward alleges the Manufacturer Defendants, also referred to as "Marketing Defendants," manufacture, sell, and market prescription opioid painkillers.  Broward alleges the Marketing Defendants fueled the opioid crisis "through a massive marketing campaign premised on false and incomplete information," which "engineered a dramatic shift in how and when opioids were prescribed by the medical community and used by patients." Doc. #: 520 at ¶13. Broward alleges the Marketing Defendants dramatically increased sales of prescription opioids despite their knowledge "that opioids were addictive and subject to abuse, and that their other claims regarding the risks, benefits, and superiority of opioids for long-term use were untrue and unfounded." Doc. #: 520 at ¶14. Broward alleges Defendants reaped billions of dollars of profit as a result of opioid sales. Doc. #: 520 at ¶¶15-16.

Broward further alleges Defendants "failed to maintain effective controls over the distribution of prescription opioids" and instead "actively sought to evade such controls." Doc. #: 520 at ¶17. Broward alleges Defendants "contributed substantially to the opioid crisis by selling and distributing far greater quantities of prescription opioids than they know could be necessary for legitimate medical uses, while failing to report, and to take steps to halt suspicious orders," which exacerbated the overall supply of opioids and fueled an illegal secondary market. Doc. #: 520 at ¶17. Broward alleges Defendants' conduct has had "severe and far-reaching public health, social services, and criminal justice consequences," the costs of which are borne by Plaintiff and other governmental entities. Doc. #: 520 at ¶22.

**B. Facts Specific to Broward County, Florida**

In its complaint, Broward County alleges "it is at the center of the opioid epidemic that plagues the nation," and that "South Florida, and Broward County in particular, have suffered some of the largest numbers of opioid overdose deaths in the country." Doc. #: 520 at ¶2. Broward alleges that, as a result of the "startling number of overdose deaths" in the County, its resources have been strained and it has "incur[ed] substantial and unusual costs for providing, amongst other things, health care, foster care, law enforcement and emergency responder services, criminal justice administration, public assistance, addiction treatment programs, overdose reversal medications, neonatal abstinence syndrome treatment, and other social services and public programs." Doc. #: 520 at ¶3.

More specifically, Broward alleges that, due to the severity of the opioid crisis, it was forced to provide additional services above and beyond what it normally provides, causing it to suffer significant financial consequences and unanticipated costs. *See* Doc. #: 520 at ¶¶661-62. The County alleges it incurred the following additional and unanticipated costs:

> increased healthcare expenditures, law enforcement and judicial expenditures, increased jail and public works expenditures, increased substance abuse treatment and diversion plan expenditures, increased emergency and medical care services and autopsies, increased health insurance costs, the costs of processing and paying for fraudulent prescriptions and lost economic opportunity.

Doc. #: 520 at ¶662.

Broward also alleges the opioid crisis caused by Defendants forced the County to make large, unplanned-for expenditures in order to protect the health and welfare of its community, "costing millions in health insurance, treatment services, autopsies, emergency room visits, medical care, treatment for related illnesses and accidents, payments for fraudulent or medically unnecessary prescriptions and lost productivity to Broward County's workforce." Doc. #: 520 at ¶¶662, 999.

### III. Legal Issues Relevant to Multiple Claims

**A. Standing**

Defendants assert that Broward is not an appropriate plaintiff to bring these claims. Pharmacies assert that Broward lacks standing under Article III of the Constitution. *See* Doc. #: 582-1 at 2. And Manufacturers assert that Broward, as a municipality, may not infringe upon the exclusive power of the State of Florida under the statewide concern doctrine. *See* Doc. #: 593-1 at 2-3. As discussed below, the Court finds these arguments not well-taken.

**1. Article III**

The Pharmacies and Broward both incorporate briefing on the issue of Article III standing from the briefs in *Summit County*, and add nothing new. *See* Doc. ##: 593-1 at 2; 730 at 9. The analysis of standing pursuant to Article III is unchanged under Florida law; thus the reasoning and conclusion reached in *Summit County* is equally appropriate here. *See* Doc. #: 1025 at 100-02, *adopted by* Doc. #: 1203. Accordingly, Broward has standing under Article III.

**2. Statewide Concern Doctrine**

Manufacturers assert the Statewide Concern Doctrine precludes standing for Broward as a matter of Florida law. *See* Doc. #: 593-1 at 2-3. They assert that, where an issue has statewide significance, the Doctrine prohibits a municipal corporation from vindicating its own rights through litigation because doing so would infringe the State's exclusive power to address that issue. *See* Doc. #: 593-1 at 2-3. In making their argument, Manufacturers assert, without citing any legal support, that "[j]ust as these principles preclude local ordinances that seek to regulate matters of statewide concern, the same limitations apply equally to ***litigation*** brought by political subdivisions." Doc. #: 593-1 at 2 (emphasis in original). As was the case in *Summit County*, where the Court analyzed a similar argument under Ohio law, Manufacturer's argument fails.

6

The Florida Constitution grants to counties "all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors." Fla. Const. art. VIII, § 1(g). In *State v. Broward County,* 468 So. 2d 965 (1985), the Florida Supreme Court stated it has "broadly interpreted the self-governing powers granted charter counties under article VIII, section 1(g)." *Id*. at 969.  Further, Section 125.01 of the Florida Statutes sets out the powers of counties: "The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power includes, but is not restricted to, the power to: . . . Provide for the prosecution and defense of legal causes in behalf of the county or state." Fla. Stat. § 125.01(1)(b). The Florida Supreme Court has explained that, "[u]nless the Legislature has pre-empted a particular subject relating to county government by either general or special law, the county governing body, by reason of this sentence, has full authority to act through the exercise of home rule power." *Speer v. Olson*, 367 So. 2d 207, 211 (1978).

Thus, Florida's Statewide Concern Doctrine operates in a way substantially similar as Ohio's. At bottom, the Court's analysis of the Statewide Concern Doctrine in *Summit County* is applicable here as well, *see* Doc. #: 1025 at 98-100, *adopted by* Doc. #: 1203. The same result is compelled in this case.

The Court adds one observation.  Manufacturers erroneously attempt to impose an affirmative duty on Broward to identify some case or statute authorizing them to bring this action, thereby shifting the burden from themselves onto Broward.  But this is inconsistent with *Speer*. Manufacturers have pointed to no authority indicating Broward **lacks** the power to bring this action, so they have not met their burden to demonstrate Broward's lawsuit is "inconsistent with

general or special law," or that the Florida Legislature has preempted this suit. Fla. Const. art. VIII, § 1(g). Accordingly, Dismissal is unwarranted under the Statewide Concern Doctrine.

## B. Causation

Defendants make several arguments that Broward's claims should be dismissed for lack of causation. None of these arguments compel a different conclusion than those the Court has already reached. Because causation is such an important issue, it has been thoroughly addressed by this Court. *See* Doc. #: 1025 at 24-36 (analyzing RICO causation with respect to municipality plaintiff), 79-82 (negligence causation), 101-02 (Art. III "fairly traceable" requirement); Doc. #: 1203 at 7-10 (RICO causation with respect to municipality plaintiff); Doc. #: 1499 at 23-24 (RICO causation with respect to tribe plaintiff), 61-62 (nuisance causation); Doc. #: 1680 at 6-11 (causation under Oklahoma and Montana law); Doc. #: 3177 at 14-30 (causation with respect to third-party payor plaintiff); Doc. #: 3253 at 8-12 (causation under Florida law), 13-20 (RICO causation with respect to hospital plaintiff), 42-44 (FDUTPA causation); *see also Opinion and Order on Defs. Mot. for Summ. Judg'mt on Causation*, Doc. #: 2561.

For example, the Defendants again assert, as they have in each of the motions addressed in the aforementioned orders, that Broward's allegations of causation are too remote or speculative. *See* Doc. ##: 582-1 at 4; 591-1 at 17 n.8; 593-1 at 12 (each expressly incorporating their arguments in *Summit County*). The Pharmacies again assert, as they did in their motion to dismiss West Boca's complaint, that under Florida law the "Sole Proximate Cause" and "Learned Intermediary" doctrines defeat causation. *See* Doc. #: 582-1 at 3-4. All Defendants also assert, as they have several times before, that "intervening criminal acts of independent third parties break the chain of causation." Doc. #: 593-1 at 6 (citing *Manufacturers' Summit Cty Br.*, Doc. #: 499-1); *see also* 582-1 at 5; 591-1 at 17. Each of these arguments has been addressed by this Court with respect to municipality plaintiffs, *see* Doc. ##: 1025; 1203, and with respect to Florida law. *See* Doc. #: 3253.

Each argument failed. All Defendants either expressly incorporate their *Summit County* briefing, which has been thoroughly addressed by this Court, or incorporated their present briefing into their *West Boca* motions, which were also recently addressed by the Court. There is nothing new for the Court to address with respect to causation, and thus the Court reaches the same result. Broward's claims will not be dismissed for failure to plausibly plead causation.

## C. Federal Preemption

Manufacturers assert that the misrepresentations alleged by Broward have been approved by the FDA, and therefore any state law claim relying on those misrepresentations is preempted by federal law. *See* Doc. #: 593-1 at 5. Both Manufacturers in their motion and Broward in its response incorporate the entirety of their respective briefing on this issue from the *Summit County* briefs. *See* Doc. ##: 593-1 at 5; 730 at 9. Thus, the parties must, by implication, accept the Court's analysis and conclusions based on that briefing. *See* Doc. #: 1025 at 48-54; *adopted by* Doc. #: 1203. Accordingly, Broward's state law claims will not be dismissed as preempted by federal law.

## D. Municipal Cost Recovery Rule

Defendants assert that the Municipal Cost Recovery Rule (also sometimes referred to as the "Free Public Services Doctrine") bars some or all of Broward's claims. Doc. ##: 582-1 at 5; 591-1 at 15-16; 593-1 at 7. All Defendants cite *Penelas v. Arms Tech., Inc.,* 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd,* 778 So. 2d 1042 (Fla. 3d DCA 2001), for the proposition that, in Florida, "Municipal costs of providing public services are not recoverable as a matter of law." *Id*. at *2.

The Court has carefully reviewed the Florida trial court's decision in *Penelas* and the Florida appellate court's subsequent opinion affirming it. It is important to note at the outset that the *Penelas* court's conclusion regarding the application of the Municipal Cost Recovery Rule in

Florida—in addition to being non-precedential—is dicta, as the *Penelas* court had already determined the county plaintiff lacked standing to bring the claim. *See id.* at *1 ("The Court holds as an initial and fundamental matter that the County is not the proper party plaintiff to bring this lawsuit. The County does not have standing."). Furthermore, the Florida appellate court addressed only product liability law and never reached the Municipal Cost Recovery Rule in Florida.[11] The Florida Supreme Court has not yet ruled on application of the Rule.

In situations where a state's highest court has not decided an issue, the Federal Court must make an "*Erie* guess" on how the Florida high court would rule on the issue. Under the *Erie* principles articulated in its *Opinion and Order adopting the Blackfeet and Muscogee R&Rs*, Doc. #: 1680 at 11-13, the Court now concludes that "the Court should reasonably refer to cases that are directly on point, such as *City of Everett v. Purdue Pharma L.P.*, 2017 WL 4236062, at *7 (W.D. Wash. Sept. 25, 2017) and *In re Opioid Litigation*, 2018 WL 3115102, at *22 (N.Y. Sup. Ct. June 18, 2018)." Doc. #: 1680 at 13-14. These opinions had not issued when *Penelas* was decided.[12]

After careful review of *Penelas, City of Everett,* and *In re Opioid Litigation*, this Court is persuaded the Florida Supreme Court would find the Municipal Cost Recovery Rule inapplicable to the present case.  Rather, this Court concludes the Florida Supreme Court would adopt and follow this Court's own prior analysis as appropriate in opioid cases. *See* Doc. #: 1499 at 17 (quoting Doc. #: 1025 at 21-22) (citing persuasive cases) ("a doctrine that publicly spreads the costs caused by one-time tortfeasors, such as a negligent driver, is inappropriately applied where a defendant engages in a course of repetitive conduct that causes harm of a substantial magnitude

---

[11] This Court has carefully reviewed addressed the *Penelas* opinions in the context of products liability in *West Boca*. Doc. #: 3253 at 31-32.

[12] Broward cited these two cases in its Response. Doc. #: 730 at 3 n.4.

and imposes a repeated burden on government services."), *adopted by* Doc. #: 1680; *see also* Doc. ##: 1025 at 17-22; 1203 at 17-20; 1499 at 15-17; 1500 at 8; 1680 at 13-14. Thus, the Court concludes that the Municipal Cost Recovery Rule does not bar Broward's recovery.

**E. Claims against Pharmacies as Dispensaries**

The Pharmacies assert that, "to whatever extent Plaintiff intends to assert claims against the Moving Defendants as pharmacies rather than as distributors, such claims must be dismissed." Doc. #: 582-1 at 2-3. Broward initially appears to concede this point stating, in its opposition, that it "is suing the National Retail Pharmacies in their capacity as retailers and participants in the supply chain, ***not as dispensing pharmacies***." Doc. #: 730 at 12 (emphasis added). However, Broward goes on to argue that its "[Complaint] is clear that Broward's claims arise from Defendants' role in the distribution and *sale* of opioids." Doc. #: 730 at 13 (emphasis in original).

It is not clear what distinction Broward is attempting to draw between "retailers and participants in the supply chain" and "dispensing pharmacies." The thrust of Broward's argument, however—taken as a whole and viewed in light of the factual allegations presented in the Complaint—clearly indicates that they do seek to hold Pharmacies liable for their dispensing practices, at least at the corporate level, and they have alleged sufficient facts plausibly to do so. *See* Doc. #: 520 at ¶582 ("Pharmacies' fail[ed] to adequately train their pharmacists and pharmacy technicians on how to properly and adequately handle prescriptions for opioid painkillers"), ¶583 ("Pharmacies also failed to adequately use data available to them to identify doctors who were writing suspicious numbers of prescriptions and/or prescriptions of suspicious amounts of opioids"), ¶584 ("Pharmacies failed to analyze . . . the number of opioid prescriptions filled by individual pharmacies relative to the population of the pharmacy's community"), ¶587 ("Pharmacies were, or should have been, fully aware that the quantity of opioids being distributed ***and dispensed*** by them was untenable, and in many areas patently absurd.") (emphasis added).

11

Thus, the Court concludes that Broward's claims, to the extent they intend to pursue them, may proceed against the Pharmacies as retail dispensers of opioid drugs.

## F. Statutes of Limitation

Manufacturers assert that any applicable limitations period for Broward's claims has run, so all claims should be dismissed as time-barred. *See* Doc. ##: 593-1 at 15-18. Broward responds that the statutes of limitations are equitably tolled under the doctrines of delayed discovery or fraudulent concealment and that Defendants' conduct constitutes a continuing violation. Broward also asserts that, in any event, a statute of limitations is an affirmative defense and the Manufacturers have failed to meet their burden of proof. *See* Doc. #: 730 at 3-9.

The Court has previously addressed each of these arguments. *See* Doc. ##: 1025 at 54-56; 1203 at 3-6; 1499 at 14-15; 1500 at 7-8. Nothing in the Manufacturers' motion or reply convince the Court that its prior analysis applies differently in Florida. Accordingly, the Court's analysis and conclusion reached in *Summit County* support the same conclusion here. Broward's claims will not be dismissed as time-barred by the applicable statutes of limitations.

### IV. RICO and Florida RICO

Distributor and Manufacturer Defendants reassert and incorporate the arguments they made for dismissal of Federal RICO claims in *Summit County*. *See* Doc. ## 591-1 at 2-3, 593-1 at 3-5. Specifically, Defendants assert Broward has failed to plausibly allege: (1) any cognizable injury; (2) actual or proximate causation; (3) the existence of an enterprise; (4) any actionable racketeering activity; (5) standing to bring RICO claims; or (6) an actionable RICO conspiracy claim. *See* Doc. #: 591-1 at 2-3 (incorporating *Distributors' Summit Cty Br.*, Doc. #: 491-1 at 7-21); Doc. #: 593-1 at 3-5 (incorporating *Manufacturers' Summit Cty Br.*, Doc. #: 499-1 at 9-34). Furthermore, both Defendants and Broward agree that Fla. Stat. § 772.101 *et seq.* ("Florida RICO") is modeled after 18 U.S.C. § 1961 *et seq.* ("Federal RICO"), and that any analysis of

Federal RICO applies with the same force to Florida RICO.[13] *See* Doc. ##: 591-1 at 2; 593-1 at 3; 730 at 56-57.

Because Defendants do not make any new or additional arguments for dismissal of Broward's RICO claims beyond those previously made and addressed in the Court's Opinions in *Summit County*, the Court's prior analysis governs and compels the same results here. *See* Doc. ##: 1025 at 11-48; 1203 at 6-20. Accordingly, Broward's state and federal RICO claims, Counts I-IV, will not be dismissed.

## V. Nuisance

As this Court has previously described, "Florida, like Ohio, follows the Restatement (Second) of Torts," Doc. #: 3253 at 30; therefore, the Court's previous analyses of nuisance law are applicable to the present motions.

Defendants assert Broward's Nuisance claim fails because: (1) their conduct is protected under a recognized Florida "Safe Harbor";[14] (2) they lacked control over the instrumentality of the nuisance; (3) Florida does not recognize nuisance claims not tied to the use and enjoyment of property; and (4) Broward failed to allege interference with a public right. *See* Doc. ##: 582-1 at 9-10; 591-1 at 9-10; 593-1 at 5-7.

---

[13] Broward also asserts that, like Ohio RICO (and unlike Federal RICO), "Florida RICO is not limited to 'business or property' injuries." Doc. #: 730 at 57. (quoting *Townsend v. City of Miami*, No. 03-21072-CIV, 2007 WL 9710944, at *2 (S.D. Fla. Nov. 7, 2007)). The distinction, arguably broadening Florida RICO's reach, is immaterial in this context because the Court concludes here, as it did in *Summit County*, that Broward plausibly alleged an injury to its "business or property" on the arguably narrower grounds required under federal law. *See* Doc. #: 1025 at 13-17, *adopted by* Doc. #: 1203.

[14] Distributors assert that "Florida courts have resisted efforts by political subdivisions to regulate issues through litigation that are more properly within the jurisdiction of state and federal agencies." Doc. #: 591-1 at 9 (citing *Penelas*, 778 So. 2d at 1045). The Court views this as, at most, a minor variation on the Manufacturers' safe harbor argument, and thus reaches the same conclusion. *See* Doc. #: 593-1 at 6 (citing *Manufacturers' Summit Cty Br.*). In any event, Distributors' also incorporate the arguments in their own *Summit County* brief (which also cites *Penelas*), which the Court considered and rejected. Thus, the Court addressed Distributors' arguments adequately in *West Boca* and *Summit County*.

As they did in *West Boca,* and in this case when addressing the Municipal Cost Recovery Rule, Defendants rely heavily on *Penelas* as a defense to Broward's nuisance claim. And for the same reasons described above, the Court is not convinced that *Penelas*—a product liability case regarding firearms—represents how the Florida Supreme Court would rule on whether the Defendants' behavior in marketing, distributing, and selling Schedule II narcotics (allegedly in violation of the CSA) within Broward County created a public nuisance.

As this Court has previously concluded, there are important factual distinctions between *Penelas* and the case that Broward brings. *See, e.g.*, Doc. #: 1499 at 56 ("Those decisions [including *Penelas*] are based on alleged facts that differ materially from those Plaintiff alleges. Contrary to the Defendants' contentions, while Plaintiff's nuisance theory concerns a product, it does not sound in products liability."); *adopted by* Doc. #: 1680. It is also noteworthy that no Defendant is able to cite any Florida case law, beyond this twenty-year old, unreported, lower court opinion, which supports its position. Thus, the Court concludes its prior analysis of the *Erie* Doctrine is accurately applied here as well. *See* Doc. #: 1680 at 13-14; *see also* Section III.D., *supra*.

Accordingly, because all of Defendants' arguments were incorporated by reference into their briefing on the nuisance claim in *West Boca*, each of these exact arguments has already been addressed and rejected by this Court under Florida law. *See* Doc. #: 3253 at 29-33. The same result is compelled here. Defendants' motions to dismiss Broward's nuisance claim, Count VI, are denied.

### VI. Florida's Deceptive and Unfair Trade Practices Act

Broward's Fifth Claim for Relief alleges each Defendant engaged in "unconscionable, unfair or deceptive acts or practices" in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq. (2007). Doc. #: 520 at ¶¶920-30. The

FDUTPA is Florida's consumer-protection law. In *West Boca*, this Court set forth the legal standard and intent of the FDUTPA. *See* Doc. #: 3253 at 34-35. The Court also analyzed and interpreted case law describing the parameters and application of the FDUTPA. *See* Doc. #: 3253 at 34-47. Broward's allegations against Defendants are identical to those presented in *West Boca*, and the Defendants' arguments to dismiss the allegations are also identical. In fact, the arguments examined in *West Boca* incorporated the briefing on the present motions by reference.

For the sake of clarity, Defendants assert Broward's FDUTPA claim fails because: (1) it does not meet the heightened pleading requirement under Rule 9(b) of the Federal Rules;[15] (2) Broward does not allege a consumer transaction, so it lacks standing as a consumer under the FDUTPA; and (3) Broward fails to plead a deceptive or unfair act. *See* Doc. ##: 591-1 at 3-6, 593-1 at 12-13; 582-1 at 10-11. Additionally, Manufacturer Defendants argue they are protected by the statute's safe-harbor provision, and Distributor Defendants argue violations of the CSA cannot serve as a proper predicate for an FDUTPA claim. All of these arguments were carefully addressed and rejected in the *West Boca* opinion. *See* Doc. #: 3253 at 34-44. The fact that the Plaintiff herein is a County, whereas the Plaintiff in *West Boca* is a hospital, does not change the outcome of this Court's prior FDUTPA ruling.

The only issue in this case that differs materially from *West Boca* is whether Broward properly alleged "actual damages" cognizable under Section 501.207(1) of the FDUTPA. Despite the asserted categories of damages being different between the plaintiffs in this case and *West Boca*, Defendants in this case set forth identical arguments as to why Broward is not entitled to recover damages*, see* Doc. ##: 593-1 at 12-13; 591-1 at 7-8; 582-1 at 14-15. The Court earlier

---

[15] Rule 9 requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

ruled that "West Boca's being in the business of providing healthcare services, does not make its injuries 'derivative' of personal injuries." Doc. #: 3253 at 45.

Moreover, Broward, a municipality, alleges damages that are identical to those alleged in the *Summit County* case. *Compare* Doc. ##: 520 at ¶917, *with* 1203 at 13-17 (listing Summit County's asserted categories of damages). Both Counties assert thirteen identical categories of costs incurred as a result of the opioid epidemic. *See* Doc. ##: 520 at ¶917; 1203 at 15-16. In evaluating the thirteen categories of damages, this Court ruled in *Summit County* that, while some of the costs could conceivably arise directly out of the personal injury of its citizens (and thus "effectively [be] claims to recoup medical expenses"), at least some of the asserted injuries did not. *See* Doc. #: 1203 at 16-17.[16]  The Court finds Broward has asserted injuries that do not arise out personal injuries, and are therefore, proper.

In sum, for all the reasons stated in *West Boca*, Defendants are not entitled to dismissal of Broward's claim under FDUTPA.

### VII. Negligence

Plaintiff has alleged three negligence claims: negligence against all Defendants (Count VIII); negligence (essentially, negligent marketing) against only the Marketing Defendants (Count VII); and gross negligence against all Defendants (Count IX).

### A. Common-Law Negligence

In *West Boca*, this Court analyzed virtually identical negligence arguments under the same Florida law as those presented herein. Both Florida and Ohio law require the following four elements to allege a negligence claim: (1) the existence of a legal duty, (2) breach of that duty, (3)

---

[16] While the damages in the *Summit County* case were analyzed with respect to RICO, neither RICO nor the FDUTPA allow recovery for damages that arise directly out of a personal injury. *See, e.g., Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 565-66 (6th Cir. 2013).

causation, and (4) cognizable injury. *Tynes v. Buccaneers Ltd. P'ship*, 134 F.Supp.3d 1352, 1357 fn.1 (M.D. Fla. 2015). Therefore, the Court's analyses in both *Summit County* and *West Boca* are applicable to the negligence claim asserted by Broward.

Defendants assert Broward's negligence claims fail because: (1) the Complaint does not plead actual and proximate causation, *see* Doc. ##: 593-1 at 7-8; 591-1 at 16-17; (2) the claims are preempted, *see* Doc. #: 593-1 at 7; and (3) the learned intermediary doctrine precludes a finding of proximate cause. *See* Doc. #: 582-1 at 4.

Each of Defendants' arguments have been specifically rejected by this Court. *See, e.g.,* Section III.B., *supra*; *see also* Doc. #: 1025 at 30, 78 (finding, for example, that the learned intermediary doctrine is inapplicable and "declin[ing] to find that the physicians' act of writing prescriptions breaks the causal chain, as a matter of law, when the very purpose of the Defendants' alleged scheme was to achieve exactly that result."); Doc. #: 3253 at 52 (finding "West Boca's asserted injuries plausibly fall within the foreseeable zone of risk created by Defendants' manufacturing, distributing , and dispensing activities related to opioid drugs."). For the same reasons, the Court finds that Broward has alleged a proper claim of common law negligence against Defendants.

## B. Negligent Marketing

In its Seventh Claim for Relief, Broward alleges Marketing Defendants breached their statutory[17] and common-law duties to Broward by "promoting and marketing the use of opioids for indications not federally approved, circulating false and misleading information concerning

---

[17] Broward's Complaint defines negligence *per se*, but does not specifically allege negligence *per se* as a separate cause of action against Defendants. *See* Doc. #: 520 at ¶¶ 939, 947. Broward presents negligence *per se* arguments in subsequent pleadings, *see, e.g.,* Doc. #: 730 at 28-30. To the extent Broward intends to assert a negligence *per se* clam against these Defendants, negligence *per se* claims under the CSA were addressed and rejected by this Court in *Blackfeet*, and the same result is compelled here. *See* Doc. #: 1680 at 23-25.

their safety and efficacy, and downplaying or omitting the risk of addiction arising from their use." Doc. #: 520 at ¶942. Broward argues these breaches caused it to suffer, and continue to suffer, both injuries and pecuniary losses directly and proximately caused by Marketing Defendants. *See* Doc. #: 520 at ¶944.

These allegations mirror the negligent marketing claim analyzed in *West Boca*, where this Court found that Florida courts have not deemed "negligent marketing" a separate cause of action, and dismissed West Boca's claim. *See* Doc. #: 3253 at 55-56.[18] For the same reasons, Defendants' motion to dismiss Count Seven in this case is granted.

## C. Gross Negligence

In its Ninth Claim for Relief, Broward alleges gross negligence against all Defendants. In Florida, liability for gross negligence requires (in addition to the elements of common-law negligence) that the defendant has knowledge of the existence of circumstances which constitute a "clear and present danger," yet still undertakes "a conscious, voluntary act or omission . . . which is likely to result in injury." *Hager v. Live Nation Sports, Inc.,* 665 F. Supp. 2d 1290 (S.D. Fla. 2009) (citing *Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.,* 206 F.3d 1373, 1377 (11th Cir. 2000)). Defendants do not offer any argument relating to gross negligence specifically. Rather, they incorporate their general negligence argument, simply asserting they do not owe a duty to Plaintiff. *See* Doc. ##: 593-1 at 7-9; 591-1 at 10-13; 582-1 at 6-9.

Broward makes many of the same allegations as West Boca did in its complaint. For example, Broward alleges the Marketing Defendants recklessly published false and misleading information despite knowing the truth about opioids, and that all Defendants were repeatedly

---

[18] As stated in *West Boca*, this conclusion does not prohibit Broward from presenting factual evidence of Marketing Defendants' alleged negligence as it relates to marketing and/or distribution of opioids.

admonished and fined by regulatory authorities but continued their behavior. See Doc. #: 520 at ¶¶364-96, 723. Broward further alleges Defendants "knew or should have known about the imminent danger posed by continuing to manufacture and/or supply millions of doses of opioids to Broward County," but "Defendants continued to manufacture and/or supply these pharmaceutical products to Broward County, demonstrating their conscious disregard of the consequences of these actions," and "Defendants' conduct was so reckless and wanting in care that it constituted a conscious disregard and/or indifference to the life, safety, and rights of all those exposed to their conduct in Broward County." Doc. #: 520 at ¶¶961-62.

The Court concludes that these factual allegations, taken as true, rise to the level of gross negligence. In fact, this Court in *West Boca* found similar allegations could support a finding of wanton negligence, which is a more culpable level of negligence. *See* Doc. #: 3253 at 52-54; *see also Greathouse v. CECO Concrete Constr., LLC*, No. 5:06cv2, 2007 WL 624550, at *4 (N.D. Fla. Feb. 23, 2007) (citations omitted). Broward has adequately pled allegations against Defendants which incorporate conscious disregard of consequences, and has also alleged facts that could, ultimately, support a finding of gross negligence against Defendants. Therefore, Defendants' Motion to Dismiss the gross negligence claim is denied.

### VIII. Unjust Enrichment

In the Tenth Claim for Relief, Broward alleges unjust enrichment against all Defendants, claiming the County made payments for opioids manufactured, distributed, or filled by each Marketing Distributor Defendant, thereby conferring a benefit on each such Defendant. Doc. #: 520 at ¶¶966-67. Broward alleges it would be inequitable for Defendants to retain this benefit and Defendants must disgorge their unjustly acquired profits. Doc. #: 520 at ¶¶966-69.

In Florida, the elements of unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit

conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff. *See Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So.3d 689, 693 (Fla. 3d DCA 2018). The basis of the remedy for unjust enrichment is to provide restitution where one person has been unjustly enriched at the expense of another. *See id.* Disgorgement is an equitable remedy in unjust enrichment actions, and is measured by the defendant's ill-gotten gains rather than the plaintiff's losses. *See, e.g.*, *S.E.C. v. Levin*, 849 F.3d 995, 1006 (11th Cir. 2017).

Defendants argue Broward does not allege any benefit conferred on Defendants. Doc. ##: 582-1 at 16; 591-1 at 15; 593-1 at 13. Distributors and Manufacturers argue the claim fails because it is duplicative. Doc. ##: 591-1 at 14; 593-1 at 13. Manufacturers further argue Broward fails to plead facts showing Manufacturers "knowing and voluntarily" accepted any direct benefit from Broward. Doc. #: 593-1 at 13.

For the reasons stated in *Summit County*, *see* Doc. ##: 1025 at 91-95; 1203 at 36-38, and repeated by this Court in *Cleveland Bakers*, *see* Doc. #: 3177 at 61-63, and *West Boca*, *see* Doc. #: 3253 at 58-60, these arguments do not persuade the Court to dismiss Broward's unjust enrichment claim. The Ohio law of unjust enrichment parallels Florida law; accordingly, the Court's prior rulings apply here. *See City of Miami v. Bank of America Corp.*, 800 F.3d 1262, 1288 (11th Cir. 2015).

First, as in *Summit County* and *West Boca*, Broward's Complaint pleads a facially plausible unjust enrichment cause of action "on the theory that [the plaintiff] conferred a benefit upon all Defendants by alleging that they paid for the cost of harm caused by the defendant's conduct, *i.e.*,

the defendants' externalities." Doc. ##: 1025 at 95; 3253 at 58.[19] Furthermore, Defendants' argument that there was no direct transaction between the parties, and therefore no direct benefit conferred, does not warrant dismissal of the unjust enrichment claim under Florida law. *See, e.g.*, *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1236-37 (S.D. Fla. 2015) (citing cases in the Southern District of Florida that permit an unjust enrichment claim to stand where the benefit is conferred through an intermediary); *see also Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) ("Whether [Defendants] did or did not receive a direct benefit from Plaintiff is a question of fact that cannot be resolved at the motion to dismiss stage.").

The Court also addressed and rejected in its *Summit County* and *West Boca* rulings each of Defendants' remaining arguments. First, the Court previously ruled that allegations similar to Broward's allegations herein—that the benefit was "known to and accepted by" Defendants— adequately supports the unjust enrichment element of knowledge in the pleading stage. *See* Doc. #: 1025 at 94. Second, the argument that Broward's unjust enrichment claim should be dismissed as "duplicative" was rejected in *Summit County* and is expressly rejected by courts in the Southern District of Florida. *Id.* at 94-95; *In re Monat Hair Card Prods. Mktg., Sales Practices, and Prods. Liab. Litig.*, 2019 WL 5423457, at *4 (S.D. Fla. Oct. 23, 2019) (citations omitted) ("The general rule that 'equitable remedies are not available under Florida law when adequate legal remedies exist' . . . does not apply to unjust enrichment claims."); *Martorella v. Deutsche Bank Nat. Trust. Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013) (finding plaintiff could

---

[19] *See also* Doc. #: 1499 at 67-68 (citing to the *Summit County* holding and denying the motion to dismiss plaintiff's unjust enrichment claim, where plaintiff paid for the costs of the harm caused be Defendants' conduct).

"maintain an equitable unjust enrichment claim in the alternative to her legal claims against Defendants").

For these reasons, Defendants' Motion to Dismiss Broward's unjust enrichment claim is denied.

## IX. Fraud

In the Eleventh Claim for Relief, Broward alleges fraud against all Defendants. The elements of a claim of common law fraud in Florida are the same as those in Ohio. Those elements are: "'(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*, 2017 WL 700215, at \*2 (M.D. Fla. Feb. 22, 2017) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). In their motion to dismiss Broward's fraud claim, the Manufacturer Defendants make the same arguments against the same allegations as in their *Summit County* motion to dismiss and incorporate that briefing by reference. *See* Doc. #: 593 at 9-10. As elsewhere in this opinion, the Court is not convinced by any of the present briefing that its prior analysis needs to be revisited and, therefore, adopts and incorporates its reasoning and conclusions from its *Summit County Opinion*, Doc. #: 1025 at 39-42 (discussing Fed. R. Civ. P. Rule 9(b)), 85-88 (discussing common-law fraud); *adopted by* Doc. #: 1203, with respect to the Manufacturers. Thus, the Manufacturer Defendants' Motion to Dismiss Broward's fraud claim is denied.

However, uniquely in the present complaint, Broward alleges that Distributor and Pharmacy Defendants also committed common-law fraud. No analysis has yet been done by this Court with respect to a fraud claim against those defendant groups. The Court concludes Broward has sufficiently alleged common-law fraud against Distributor and Pharmacy Defendants.

Distributors and Pharmacies both assert Broward's fraud allegations are deficient for not complying with the particularity requirement of Federal Rule 9(b). *See* Doc. ##: 582 at 11-12; 591 at 13-14. They further assert that, to the extent Broward's claims are predicated on alleged failures to report suspicious orders or to disclose the prevalence of diversion in the County—which they assert is a claim of fraud by omission—Broward's claim should fail because: (1) neither Distributors nor Pharmacies had a duty to disclose such information to Broward; and (2) the alleged omission was not made in the course of any specifically-identified transaction with the County.

This Court has carefully set forth its analysis of the application of Federal Rule 9(b) to allegations of fraud in this MDL:

> "The sufficiency of a fraud pleading tends to vary with the complexity of the transaction in question in the litigation. When the issues are complicated or the transactions cover a long period of time, a number of federal courts have required less of the pleader." Charles Alan Wright *et al*, 5A Fed. Prac. & Proc. Civ. § 1298 (4th ed.); *see also, cf., United States v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017) (describing that "'particular' allegations of fraud may demand different things in different contexts."). The Sixth Circuit has relaxed pleading standards in certain contexts to aid in judicial efficiency. *See, e.g., U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509–10 (6th Cir. 2007) (describing how "pleading every instance of fraud would be extremely ungainly, if not impossible" in situations where allegations are "complex and far-reaching.")

> "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony." *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 526 (6th Cir. 2007) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006)). That is, when considering Rule 9's particularity requirement, "'a court must also consider the policy favoring simplicity in pleading, codified in the 'short and plain statement of the claim' requirement of Federal Rule of Civil Procedure 8.'" *Id.* Thus, "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Intern., Inc.*, 681

F.3d 788, 803 (6th Cir. 2012) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)).

Doc. #: 1680 at 3-4; *see also* Doc. #: 1025 at 39-42 ("Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control." (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988))), *adopted by* Doc. #: 1203.

## A. Fraud by Affirmative Statements

Distributor and Pharmacy Defendants assert Broward has not alleged any affirmative statement made by them at all, and in any event none with the particularity required under Federal Rule 9(b). They assert the only non-conclusory misstatements alleged in the Complaint were made by Manufacturing Defendants. See Doc. ##: 582-1 at 11; 591-1 at 13-14 (citing Doc. #: 520 at ¶¶143–454). However, Broward alleges that, "[a]fter being caught failing to comply with particular obligations at particular facilities, Distributor Defendants made broad promises to change their ways and insisted that they sought to be good corporate citizens." Doc. #: 520 at ¶556. Broward further alleges that "Distributor Defendants publicly portrayed themselves as committed to working with law enforcement, opioid manufacturers, and others to prevent diversion of these dangerous drugs."[20] Doc. #: 520 at ¶557. Broward also specifically alleges that Defendants "continued to violate the laws in contrast to [their] written agreement[s] not to do so.[21] Doc. #: 520 at 556 (describing McKesson, specifically).

Broward also alleges reliance on these false and fraudulent public statements made by Distributor and Pharmacy Defendants. Broward alleges that, had it not relied on Defendants'

---

[20] Broward's definition of Distributor Defendants includes the Pharmacy Defendants.

[21] Broward offers specific allegations of these types of allegedly false and fraudulent statements made to the public, which includes the County itself, against most of the Defendants individually. *See, e.g.*, Doc. #: 520 at ¶¶557 (Cardinal); 558 (McKesson); 559 (AmerisourceBergen); 591 n.237 (CVS); 603 n.247 (Walgreens).

statements that they were working to prevent diversion, Broward would have taken action sooner to prevent the opioid crisis. *See* Doc. #: 520 at § III.E.6. ("Defendants Delayed a Response to the Opioid Crisis by Pretending to Cooperate with Law Enforcement."); *see also* Doc. #: 520 at ¶555 ("Without reporting by those involved in the supply chain, law enforcement may be delayed in taking action—or may not know to take action at all.").[22] Broward alleges that, "acting on its own behalf and on behalf of its inhabitants, [it] relied to its detriment on the misinformation and has suffered, and continues to suffer, both injuries and pecuniary losses as a result of this reliance."[23] Doc. #: 984.

The Court concludes Broward has alleged, with sufficient particularity under Rule 9(b), facts sufficient to put Defendants on notice of the common-law fraud claims against them for affirmative statements they made to the public, which includes Broward County.

## B. Fraud by Omission

"Florida law recognizes that fraud can occur by omission." *Woods v. On Baldwin Pond, LLC*, 634 F. App'x 296, 297 (11th Cir. 2015) (quoting *ZC Ins. Co. v. Brooks*, 847 So.2d 547, 551 (Fla. 4th DCA 2003)); *see also Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*, 2017 WL 700215, at *3 (M.D. Fla. Feb. 22, 2017). Case law makes clear, however, that:

---

[22] The Court notes that a statement in which a defendant affirmatively represents that it *is* disclosing material facts—in this case, submitting appropriate reports as required under the CSA—when it is not, in fact, making those disclosures, is a fraudulent statement about a fraudulent omission. Thus, Broward effectively alleges its delayed response by law enforcement was caused by its reliance on both the alleged affirmative misstatement (that nothing has been omitted) as by the alleged fraudulent omission (of material evidence of diversion).

[23] It is noteworthy that Florida courts have cited with approval cases indicating that reliance may be inferred from a plaintiff's behavior where evidence is presented of a "broad-based public campaign for many years disseminating misleading information." *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1069–70 (Fla. Dist. Ct. App. 2010) (citing *Bullock v. Philip Morris USA, Inc.*, 159 Cal.App.4th 655, 71 Cal.Rptr.3d 775, 792 (2008)); *see id.* ("jury could infer plaintiff's reliance where evidence showed RJR and co-conspirators 'represented to the public that they would take it upon themselves to investigate and determine whether there were health consequences of smoking,' but despite evidence of cigarettes' harmful effects RJR 'engaged in a publicity campaign telling the public that whether there were negative health consequences from smoking remains an 'open question.''") (citing *Burton v. R.J. Reynolds Tobacco Co.*, 208 F.Supp.2d 1187, 1203 (D. Kan. 2002)).

> [f]raud based upon a failure to disclose material information exists only when a
> duty to make such disclosure exists. This duty arises when one party has
> information which the other party has a right to know because there is a fiduciary
> or other relation of trust or confidence between the two parties. Where a party in an
> arm's-length transaction undertakes to disclose information, all material facts must
> be disclosed.

*Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003)

(citing *State v. Mark Marks, P.A.,* 698 So.2d 533 (Fla. 1997)); *Gutter v. Wunker,* 631 So.2d 1117,

1118–19 (Fla. 4th DCA 1994) (internal citations omitted).

Florida courts have remarked that "[t]he term 'fiduciary or confidential relation,' is a very

broad one." *Quinn v. Phipps*, 93 Fla. 805, 809 (1927); *see also Doe v. Evans*, 814 So. 2d 370, 374

(Fla. 2002) (citing *Quinn*, 93 Fla. at 809).

> The relation and duties involved need not be legal; they may be moral, social,
> domestic or personal. If a relation of trust and confidence exists between the parties
> (that is to say, where confidence is reposed by one party and a trust accepted by the
> other, or where confidence has been acquired and abused), that is sufficient as a
> predicate for relief. The origin of the confidence is immaterial.

*Id.* at 811. "A fiduciary relationship may be implied by law, and such relationships are 'premised

upon the specific factual situation surrounding the transaction and the relationship of the parties.'"

*Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) (quoting *Capital Bank v. MVB, Inc.,* 644 So.2d 515,

518 (Fla. 3d DCA 1994)).

Broward alleges that, as registrants under the CSA, "Defendants are placed in a position of

special trust and responsibility and are uniquely positioned, based on their knowledge of

prescribers and orders, to act as a first line of defense." Doc. #: 520 at ¶142. As described above,

it appears to be true under Florida law that a Court may find a fiduciary relationship exists, based

on the specific factual circumstances that exist between the parties, "when one party has

information which the other party has a right to know." *Friedman*, 837 So. 2d at 1166.

The Court has previously determined, as a matter of law, that CSA registrants have a duty to disclose evidence of possible diversion (*i.e.*, suspicious orders) **to the DEA**. *See Opinion and Order Regarding the CSA*, Doc. #: 2483 at 14-15. The Court has also observed that the CSA contains many consumer protection and public interest elements. *See* Doc. #: 3253 at 42 n.44.  It is also undisputed that the DEA's mission is to "enforce the controlled substances laws and regulations of the United States." *Michel v. United States*, 2017 WL 4922831, at *14 (S.D. Cal. Oct. 31, 2017) (quoting DEA Mission Statement (available at https://www.dea.gov/mission)).

> As part of its mission, DEA manages the 'national drug intelligence program **in cooperation with federal, state, local, and foreign officials** to collect, analyze, and **disseminate strategic and operational drug intelligence information**.' *Id.* It also **coordinates and cooperates with** other federal, state and **local law enforcement officials** on 'mutual drug enforcement efforts.' *Id.*

*Id.* (emphasis added). Given the DEA's stated mission of cooperation, collaboration, and sharing information with local officials—which includes Broward County—and in light of Florida law construing fiduciary relationships broadly, it is not unreasonable to assume that the omission of material facts in statements made to the DEA would be passed on to Broward specifically, so that it could engage in the very drug enforcement efforts from which it allegedly abstained in reliance on those omissions.

Broward alleges that "each of the Defendants assumed a duty, when speaking publicly about opioids and their efforts to combat diversion, to speak accurately and truthfully." Doc. #: 520 at ¶472. As described above, Broward has specifically alleged affirmative misstatements by the Defendants. Broward further argues that Distributors and Pharmacies have been endowed with a special trust as registrants under the CSA; and because of their special knowledge regarding the number and type of pills shipped into Broward County, these Defendants serve as a last line of defense for the County. *See, generally,* Doc. #: 730 at 59 (citing Doc. #: 520 at ¶¶142, 777). These allegations are sufficient to support a conclusion that a fiduciary relationship exists under Florida

law. The allegations are also sufficient to demonstrate that Broward trusted these Defendants to inform it—either via the DEA or directly—that pills were being diverted into the County.

Regarding Broward's allegations of reliance, the Court concludes Broward has also sufficiently alleged reliance upon Defendants' omissions. For example, Broward alleges the "Distributor Defendants failed to disclose the prevalence of diversion of controlled substances, including opioids within Broward County," Doc. #: 520 at ¶972, and "Each Defendant knew its concealment of or failure to disclose these material facts would induce Broward County to act, specifically to purchase prescription opioids." Doc. #: 520 at ¶981.

Finally, it has been a point of contention between the Plaintiffs and Defendants in the MDL since its inception whether Plaintiffs should have to identify specific transactions that were suspicious, negligent, wrongful, or fraudulent, and whether Defendants may be held liable when their alleged malfeasance only comes to light when all of the actions of each Defendant are considered in the aggregate. Thus far, the Court has generally allowed plaintiffs' aggregate theories to survive. Viewed through this framework, the fact that Broward does not, at the pleading stage, point to one or several specific transactions is not surprising; nor is it fatal to its fraud claim. Where "the facts underlying the claims are within the defendant's control," as they frequently are in the case of an alleged omission of material fact, the Court should be "reluctant to dismiss the action." *Michaels Bldg. Co.,* 848 F.2d at 680. And, in a complex and far-reaching case such as this, where the unprecedented scope of the alleged fraud was carried out by multiple defendants over multiple decades, and where there may have been hundreds or even thousands of individual statements or omissions of material fact making up the alleged fraud, "courts should not be 'too exacting' or 'demand clairvoyance from pleaders' in determining whether the requirements of Rule 9(b) have

been met." Doc. #: 1025 at 40 (quoting *Ford v. Pa. Higher Educ. Assist. Agency*, 2018 WL 1377858 at *4 (N.D. Ohio Mar. 19, 2018) (Lioi, J.)).

Under this framework—as laid out by the Court in this and its previous opinions and viewed in light of the circumstances of this case—Broward has provided sufficient particularity in its pleading to support its allegations of fraud by omission, and has put each Defendant on notice as to the nature of the claim against it.

In sum, Distributors' and Pharmacies' motions to dismiss Broward's fraud claim are denied.

### X. Civil Conspiracy

Count Twelve alleges Civil Conspiracy against all Defendants. Under Florida law, to plead civil conspiracy, Broward must allege: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) an overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done. *Philip Morris USA, Inc. v. Russo*, 175 So.3d 681, 686 n.9 (Fla. 2015). Implicit in the claim is that Broward must allege an underlying illegal act or tort. *Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014); *Wilder v. JP Morgan Chase Bank, N.A.*, 2018 WL 5629922, at *4 (S.D. Fla. Oct. 30, 2018). A party may establish a conspiracy through circumstantial evidence. *See Koch v. Royal Wine Merchants, Ltd.*, 907 F. Supp. 2d 1332, 1346 (S.D. Fla. 2012).

Broward's Complaint shows fraud is the underlying unlawful act or tort forming the basis for the civil conspiracy claim. *See* Doc. #: 520 at ¶993. Defendants argue Broward failed to plead this claim with particularity. Doc. ##: 582-1 at 10-11; 591-1 at 17; 593-1 at 14. The Court rejects this argument for the reasons stated in Section IX, *supra*, finding Broward has pled its claims sounding in fraud with particularity. Thus, Broward has sufficiently alleged an underlying illegal act or tort.

Pharmacy Defendants further argue Broward failed to allege a conspiratorial agreement. Doc. #: 582 at 15-16. Manufacturers argue Broward fails to adequately allege any of the elements of the claim. Doc. #: 593 at 14.

The Court previously has considered and rejected these same arguments in *Summit County* and the *Tribe cases. See* Doc. ##: 1025 at 97; 1499 at 68-69; 1500 at 41-42. The parties have not identified, and the Court has not found, Florida authority requiring a different outcome here. Consequently, Defendants' Motion to Dismiss Broward's civil conspiracy claim is denied.

## XI. Punitive Damages

Broward's Thirteenth Claim for Relief is one for Punitive Damages for Defendants' conduct that was "fraudulent, malicious, willful, deliberately violate or oppressive, and/or committed with such gross negligence as to indicate wanton and conscious disregard for the rights and safety of others." Doc. #: 520 at ¶1000. Broward also includes punitive damages in its Prayer for Relief. Doc. #: 520 at 299-300.

Pharmacy and Manufacturer Defendants assert Claim 13 should be dismissed because a cause of action for punitive damages does not exist. Doc. ##: 582-1 at 16; 593-1 at 15. Manufacturer Defendants further argue Broward's "conclusory allegations" are insufficient. Doc. #: 593-1 at 15.

The Court agrees Claim Thirteen should be dismissed for failing to state a claim for an independent cause of action. *See Echols v. RJ Reynolds Tobacco Co.*, 2014 WL 5305633, at *6 (S.D. Fla. Oct. 15, 2014) ("A claim for punitive damages is not a separate and distinct cause of action; rather it is auxiliary to, and dependent upon, the existence of an underlying claim."). But the Court will not strike the prayer for punitive damages at this time. Defendants' arguments are more appropriately raised "at a later phase in this litigation." *Berene v. Nationstar Mortg. LLC*,

30

2016 WL 3944742, at *5 (S.D. Fla. Feb. 5, 2016), *rev'd and remanded on other grounds*, 686 F.

App'x 714 (11th Cir. 2017).

### XII. Conclusion

Accordingly, Defendants' Motions to Dismiss are **GRANTED** with respect to Count VII

(Negligent Marketing); and Count XIII (Punitive Damages). The motions are otherwise **DENIED**.

**IT IS SO ORDERED.**

/s/ Dan Aaron Polster  4/27/20
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**