# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 1:17-md-2804 |
| *Cleveland Bakers and Teamsters Health and Welfare Fund, et al. v. Purdue Pharma L.P., et al., Case No. 1:18-op-45432-DAP* | Hon. Dan Aaron Polster |

**DISTRIBUTORS' REPLY IN SUPPORT OF MOTION TO CERTIFY UNDER 28 U.S.C. § 1292(b) THE COURT'S FEBRUARY 21, 2020 ORDER DENYING IN PART THEIR MOTION TO DISMISS THIRD-PARTY PAYOR CLAIMS, FOR PURPOSES OF SEEKING IMMEDIATE APPEAL OF <u>THE COURT'S RULINGS THAT DENIED DISMISSAL OF THE RICO CLAIMS</u>**

# TABLE OF CONTENTS

ARGUMENT ...................................................................................................................... 4

I.  The Rulings on RICO Causation and Injury Involve Controlling Questions of
Law, Notwithstanding the Third-Party Payors' Contrary Claim. ....................... 4

II.  The Existing Circuit Split and Other Case Law Demonstrate Substantial Ground
for Difference of Opinion that the Third-Party Payors Cannot Overcome ........ 6

    A.  The RICO Causation Ruling Involves Legal Issues on Which Courts
Already Disagree… .................................................................................. 6

    B.  There Is Substantial Disagreement on the RICO "Business or Property"
Injury Question Despite the Third-Party Payors' Agreement with the
District Court. ......................................................................................... 10

III.  The Third-Party Payors' Effort To Downplay the Significance of Appellate
Review of the RICO Claims in Resolution of the Litigation Disregards Reality. ............ 12

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Bradshaw*,
2010 WL 816532 (N.D. Ohio Mar. 4, 2010) ...........................................................1

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
804 F.3d 633 (3d Cir. 2015)....................................................................3, 10

*In re Baker & Getty Fin. Servs., Inc.*,
954 F.2d 1169 (6th Cir. 1992) ...........................................................1, 5, 10

*Binger v. Alpont Transp. LLC*,
2019 WL 8331431 (S.D. Ohio Nov. 18, 2019).................................................4

*Brown v. Ajax Paving Indus., Inc.*,
752 F.3d 656 (6th Cir. 2014) .............................................................11

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
2020 WL 1616327 (E.D. La. Mar. 31, 2020) ............................................12

*City of Almaty, Kazakhstan v. Ablyazov*,
2017 WL 1424326 (S.D.N.Y. Apr. 20, 2017).........................................7

*In re City of Memphis*,
293 F.3d 345 (6th Cir. 2002) .............................................................4

*Cleveland v. JP Morgan Chase Bank, N.A.*,
2013 WL 1183332 (Ohio Ct. App. Mar. 21, 2013) ...................................5

*In re Commercial Money Ctr., Inc., Equip. Lease Litig.*,
2011 WL 4344037 (N.D. Ohio Sept. 14, 2011)....................................3, 12

*In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*,
2015 WL 4385926 (E.D. Ky. July 14, 2015)............................................12

*U.S. ex rel. Elliott v. Brickman Grp. Ltd.*,
845 F. Supp. 2d 858 (S.D. Ohio 2012) ..............................................4, 5

*In re Gen. Motors LLC Ignition Switch Litig.*,
2019 WL 6827277 (S.D.N.Y. Dec. 12, 2019) ...................................5, 11, 12, 13

*Gucwa v. Lawley*,
731 F. App'x 408 (6th Cir. 2018) ......................................................10

*Herakovic v. Catholic Diocese of Cleveland*,
   2005 WL 3007145 (Ohio Ct. App. Nov. 10, 2005) ................................................................. 5

*Hill v. Henderson*,
   195 F.3d 671 (D.C. Cir. 1999) ............................................................................................... 12

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999) ......................................................................................... 9, 10

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*,
   29 F. Supp. 2d 825 (N.D. Ohio 1998) .................................................................................. 13

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
   731 F.3d 556 (6th Cir. 2013) (en banc) ........................................................................... 10, 11

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
   921 F.2d 21 (2d Cir. 1990) ............................................................................................... 3, 5

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
   829 F.2d 1171 (D.C. Cir. 1987) ........................................................................................... 12

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
   191 F.3d 229 (2d Cir. 1999) ................................................................................................. 10

*League of Women Voters of Ohio v. Brunner*,
   548 F.3d 463 (6th Cir. 2008) ................................................................................................. 1

*In re Microsoft Corp. Antitrust Litig.*,
   274 F. Supp. 2d 741 (D. Md. 2003) ..................................................................................... 12

*In re Miedzianowski*,
   735 F.3d 383 (6th Cir. 2013) .............................................................................................. 6, 7

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) .............................................................................................................. 7

*Newsome v. Young Supply Co.*,
   873 F. Supp. 2d 872 (E.D. Mich. 2012) ................................................................................. 1

*Painters & Allied Trades District Council 82 Health Care Fund v. Takeda Pharm. Co.*, 943 F.3d 1243 (9th Cir. 2019) ........................................................................................ 8

*Paiute-Shoshone Indians v. City of Los Angeles*,
   2007 WL 2202242 (E.D. Cal. July 30, 2007) ........................................................................ 9

*Perry v. American Tobacco Co.*,
   324 F.3d 845 (6th Cir. 2003) ............................................................................................. 9, 10

*In re Project Veritas*,
   2019 WL 4667711 (6th Cir. Aug. 16, 2019)..............................................................4, 5

*Reese v. BP Exploration, Inc.*,
   643 F.3d 681 (9th Cir. 2011) ......................................................................................12

*In re Regions Morgan Keegan ERISA Litig.*,
   741 F. Supp. 2d 844 (W.D. Tenn. 2010).......................................................................4

*SEC v. Geswein*,
   2 F. Supp. 3d 1074 (N.D. Ohio 2014)...........................................................................4

*Simmons v. Galvin*,
   2008 WL 11456109 (D. Mass. Jan. 16, 2008).............................................................10

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   2013 WL 4821337 (E.D. Tenn. Sept. 10, 2013)..........................................................13

*Trimble v. Bobby*,
   2011 WL 1982919 (N.D. Ohio May 20, 2011)...............................................................4

*Trollinger v. Tyson Foods, Inc.*,
   370 F.3d 602 (6th Cir. 2004) .........................................................................................8

*In re Trump*,
   874 F.3d 948 (6th Cir. 2017) .........................................................................................7

*Wallace v. Midwest Fin. & Mortg. Servs., Inc.*,
   714 F.3d 414 (6th Cir. 2013) .........................................................................................8

**Statutes and Local Rules**

28 U.S.C. § 1292(b) .............................................................................................. *passim*

N.D. Ohio Local Rule 7.1(f) ..........................................................................................3

**Other Authorities**

AFT Michigan's Answer Pet. Permission Appeal, *In re Project Veritas*, No. 19-
   109 (6th Cir. filed July 5, 2019), ECF No. 8 ................................................................5

Charles Alan Wright & Arthur C. Miller, 16 Fed. Prac. & Proc. Juris. §§ 3931,
   3929 (3d ed. Apr. 2020 update) ...................................................................2, 6, 10, 13

The three criteria for 28 U.S.C. § 1292(b) certification of an interlocutory appeal of the RICO rulings are clearly met here. The Third-Party Payors' opposition attempts to deflect attention by mischaracterizing as re-argument the Distributors' discussion of those criteria. But that could be said of any request for an interlocutory appeal which necessarily addresses the substantial ground for disagreement on controlling legal questions, appellate resolution of which would materially advance the litigation. This is not a request for reconsideration on the merits, but rather a request that this Court certify the RICO issues for immediate appellate review under 28 U.S.C. § 1292(b).

**Controlling questions of law.** The RICO rulings unquestionably clear the "Sixth Circuit['s] … low bar for a determination that a question of law is 'controlling,'" requiring only that appellate resolution of the question "materially affect" the outcome of the district court litigation. *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875–76 (E.D. Mich. 2012) (citing *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992)). The Third-Party Payors contend otherwise, but the issues they identify as non-controlling are state law claims on which immediate appeal is not sought. Dbr.Opp. 3.[1] The presence of those other claims does not matter here because Section 1292(b) does not mandate interlocutory appellate review of all claims in a case. *See Adams v. Bradshaw*, 2010 WL 816532, at *2 (N.D. Ohio Mar. 4, 2010) (a "district court may grant certain issues for interlocutory appeal while denying others" (citing *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 472–73 (6th Cir. 2008)). And an immediate appeal under Section 1292(b) is not limited to circumstances where appellate review would

---

[1] "Dbr.Opp." refers to Plaintiffs' Memorandum in Opposition to Distributors' Motion to Certify (Dkt. 3269); "Mfr.Opp." refers to Plaintiffs' Memorandum in Opposition to Manufacturers' Motion to Certify (Dkt. 3268).

guarantee an end to the entire litigation if the district court is reversed.  *See In re Baker*, 954 F.2d at 1172 n.8.

**Substantial ground for difference of opinion.**  Distributors have demonstrated that there is substantial ground for difference of opinion on the RICO rulings, including the appropriate governing law and standard on causation, whether indirect purchaser Third-Party Payors have a cause of action against non-marketing defendants, and whether the Third-Party Payors' allegations support a direct causal link between Distributors' conduct and increased expenditures for medical treatment incurred by individuals who misused opioids.  Indeed, the Court itself recognized that there is a circuit split involving some of these RICO issues.  *See* Order at 16.  Immediate appellate review also is warranted because this Court's RICO rulings involve issues of first impression.  To date, federal appellate courts have rejected third-party payors' attempts to impose RICO liability in the absence of allegations that pharmaceutical manufacturers fraudulently marketed to the plaintiff.  Moreover, those courts have not extended liability to the wholesaler distributors that deliver medicines from those manufacturers to pharmacies filling prescriptions by doctors who, according to third-party payors, were deceived by the manufacturers.  The reasoning of those cases requires dismissal of the RICO claims asserted here as a matter of law, and the issue is not "a mere matter of [a plaintiff] properly pleading a claim … within a recognized and generally sufficient legal theory."  Charles Alan Wright & Arthur C. Miller, 16 Fed. Prac. & Proc. Juris. § 3931 (3d ed. Apr. 2020 update) (hereinafter "Wright & Miller").

**May materially advance the ultimate termination of the litigation.**  This criterion too is satisfied.  An immediate appeal "may materially advance the ultimate termination of the litigation," especially if the court of appeals were to reverse the RICO rulings.  28 U.S.C. § 1292(b).  The Third-Party Payors' only response is to say that the precise effect that appellate

- 2 -

resolution would have is "unclear" and "speculative."  Dbr.Opp. 15.  But certainty regarding the extent of an immediate appeal's effect is not the standard—nor could it be.  An early appellate resolution requiring dismissal of the Third-Party Payors' RICO claims certainly would materially advance the termination of the litigation.  If those theories are not legally sustainable, significant aspects of discovery, briefing, and proof would be affected, not to mention the impact that legal ruling would have on settlement considerations in this and other cases.  *See, e.g.*, *In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, 2011 WL 4344037, at *69 (N.D. Ohio Sept. 14, 2011) (certifying decision in MDL case under 1292(b) because appellate review "may materially advance the ultimate termination of this action, as well as other actions in this MDL"); *see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (in authorizing a matter for interlocutory appellate review, a trial court "may properly consider the system-wide costs and benefits of allowing the appeal").

The Court should exercise its discretion to allow an interlocutory appeal of its RICO rulings in this case, where Section 1292(b)'s criteria plainly are met.  Indeed, authorizing "parallel processing" by an appellate tribunal on the RICO rulings aligns with the Court's actions to engage additional federal district courts as part of its "hub-and-spoke" model for resolving this "extremely complex" MDL.  Dkt. 2941 at 1–7 & n.3.  This Court should allow a Section 1292(b) appeal of the RICO rulings at the motion to dismiss stage to materially advance the litigation, as have other courts on RICO causation issues in other third-party payor cases.  *See, e.g.*, *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 637 (3d Cir. 2015) (reviewing under Section

1292(b) district court's denial of motion to dismiss in third-party payor case against manufacturer).[2]

## ARGUMENT

**I.**     **The Rulings on RICO Causation and Injury Involve Controlling Questions of Law, Notwithstanding the Third-Party Payors' Contrary Claim.**

The Third-Party Payors do not dispute that the RICO rulings involve questions of law. *See* Br. 4; *see also* Dbr.Opp. 3–4. They argue only that those questions are not controlling, and that argument has no merit.

If the Sixth Circuit rules in favor of Distributors, the Third-Party Payors' "[RICO] claims [w]ould be dismissed." Order at 14. This Court's rulings on the RICO issues, therefore, are controlling. And, contrary to the Third-Party Payors' contention, the existence of other claims does not alter that fact—what matters is whether the legal question is controlling as to the RICO claims. The cases cited by the Third-Party Payors are not to the contrary. Most of the cases are not analogous because a ruling in favor of the appellant there would not have required the dismissal of any claim. *See* Dbr.Opp. 3–4.[3] *In re Project Veritas*, 2019 WL 4667711 (6th Cir. Aug. 16,

---

[2]    The Third-Party Payors (at Dbr.Opp. 1 & n.1, 7) take issue with the length of Distributors' opening supporting memorandum, but Distributors requested leave to file that memorandum, citing the provisions of Local Rule 7.1(f) on which they relied, *see* Dkt. 3235, and leave was granted by this Court without opposition from Third-Party Payors.

[3]    Unlike here, where reversal of the RICO causation or injury ruling would necessarily require dismissal of the federal RICO claim, in *In re City of Memphis*, 293 F.3d 345 (6th Cir. 2002), the putative appellants sought certification to challenge "an evidentiary ruling," reversal of which would not have required the dismissal of any claim and which, moreover, "d[id] not create a legal issue under § 1292(b)." *Id.* at 351. Similarly, *In re Regions Morgan Keegan ERISA Litig.*, 741 F. Supp. 2d 844 (W.D. Tenn. 2010), involved a 1292(b) request as to whether a rebuttable presumption should apply, but even if the appellate court ruled that it did, then, at best, "application of the presumption *might* result in dismissal" of claims. *Id.* at 852 (emphases added). In *Trimble v. Bobby*, 2011 WL 1982919, at *1 (N.D. Ohio May 20, 2011), the movant sought an appeal from what was essentially an evidentiary ruling. *Id.* at *1. In *SEC v. Geswein*, 2 F. Supp. 3d 1074 (N.D. Ohio 2014), the proposed question for appeal was "irrelevant to th[e] case." *Id.* at 1087. In *Binger v. Alpont Transportation LLC*, 2019 WL 8331431 (S.D. Ohio

2019), is particularly inapposite because the defendants were seeking permission to appeal a state law question that the state supreme court had not addressed (and the Sixth Circuit noted the possibility that the district court might certify the question to that state court).  *Id.* at *1.[4]  By contrast, there is no such issue here as to the appropriateness of the Sixth Circuit resolving the federal questions involved in the RICO rulings.  And it is irrelevant that other claims would remain in the case.  Dbr.Opp. 3.  The "resolution of an issue need not necessarily terminate an action … to be 'controlling.'"  *In re Baker*, 954 F.2d at 1172 n.8 (quoting *Klinghoffer*, 921 F.2d at 24).

Moreover, the federal RICO claims support treble damages and appellate dismissal of the RICO claims could substantially affect the value of the entire case.  *See* Br. 19–20; *see also, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 2019 WL 6827277, at *12 (S.D.N.Y. Dec. 12, 2019) ("the Court has no difficulty finding that … questions that are 'controlling' within the meaning of Section 1292(b)" where "the value of Plaintiffs' claims may be substantially [affected]").  Resolution of the RICO rulings could also affect the OCPA claim.  *See Herakovic v. Catholic Diocese of Cleveland*, 2005 WL 3007145, at *5 (Ohio Ct. App. Nov. 10, 2005) (because OCPA "is patterned after the federal RICO law," state court adopted "same position as that [of the U.S. Supreme Court] in *Holmes*[]"); *see also Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *5 (Ohio Ct. App. Mar. 21, 2013) ("[t]he same proximate cause requirements"—i.e., "the 'direct relation' test set forth in *Holmes*"—apply to OCPA claims).

---

Nov. 18, 2019), "[b]oth issues [the] Defendants wish[ed] to appeal relate[d] to contribution and not liability," meaning the same trial on the same claims would need to occur no matter the resolution of the questions on which appeal was sought.  *Id.* at *2.  Finally, the court in *U.S. ex rel. Elliott v. Brickman Grp. Ltd.*, 845 F. Supp. 2d 858, 865 (S.D. Ohio 2012) "*accept[ed]* … Defendant's assertion that each of its three questions [we]re 'controlling' questions of law."  *Id.* at 865 (emphasis added).

[4]  *See also* AFT Michigan's Answer Pet. Permission Appeal at 14, *In re Project Veritas*, No. 19-109 (6th Cir. filed July 5, 2019), ECF No. 8 (suggesting "Certification to the Michigan Supreme Court" while opposing interlocutory appeal).

Appellate resolution of the legal issues involved in this Court's RICO rulings also would have the potential to influence similar claims in other cases in the MDL.  *See Klinghoffer*, 921 F.2d at 24; *see also* Wright & Miller § 3931 ("The fact that a question of law that is controlling in the present case also may be important to other cases is one factor to be considered").  There can be no doubt that dismissal of the RICO claims from the many cases pending in this MDL might aid materially in resolving this MDL.  *See also* Br. 18–20; *infra* Part III (discussing potential for appellate ruling to materially advance the litigation).

II.    **The Existing Circuit Split and Other Case Law Demonstrate Substantial Ground for Difference of Opinion that the Third-Party Payors Cannot Overcome.**

A.    **The RICO Causation Ruling Involves Legal Issues on Which Courts Already Disagree.**

This Court forthrightly acknowledged that courts already are in disagreement on legal questions involved in the RICO causation ruling.  Order at 16.  And although this Court—after analyzing the contrasting approaches—ultimately concluded that the decisions favoring RICO liability were "more persuasive," *id.*, the conflicting decisions of other Circuits demonstrate, at a minimum, that "there is substantial ground for difference of opinion."  28 U.S.C. § 1292(b); *see* Br. 7–8.

The Third-Party Payors concede that if "the circuits are split on the issue," the second requirement for Section 1292(b) certification is met.  Dbr.Opp. 5 (citing *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013)); *see also* Br. 2, 7.  That is reason enough to certify the Court's RICO rulings for an interlocutory appeal.  The Third-Party Payors try to get around this by arguing that a circuit split on the legal questions about third-party payor claims involved in the RICO rulings is not really a circuit split because the cases do not address precisely the same allegations.  Dbr.Opp 7.  They are wrong.  The disagreement about the governing law and differing legal analyses shows exactly what is needed to warrant an immediate appeal—that is, that "reasonable

jurists might disagree" with this Court's RICO causation ruling on the Third-Party Payor claims in this case.  *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017).  This disagreement is a classic circuit split that satisfies the second requirement of Section 1292(b) certification.

Moreover, contrary to the Third-Party Payors' assertion, Distributors' argument is not premised on "the novelty of a factual pattern, alone."  Dbr.Opp. 9 (citing *City of Almaty, Kazakhstan v. Ablyazov*, 2017 WL 1424326, at *2 (S.D.N.Y. Apr. 20, 2017)).[5]  Distributors' argument is that ***even if*** the circuit split were not enough for purposes of Section 1292(b)—which it undoubtedly is—jurists ***also*** might reasonably disagree with the Court's RICO causation ruling because, as to Distributors, the ruling authorizing legal claims that could impose RICO liability in these circumstances "involve[d] a new legal question."  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (explaining that "district courts should not hesitate to certify an interlocutory appeal" in such a case); *see also In re Miedzianowski*, 735 F.3d at 384 ("substantial ground for difference of opinion exists" when "the question is difficult, novel and … whose correct resolution is not substantially guided by previous decisions" (quotation omitted)); Br. 8–11.

The cases on one side of the circuit split that "allowed TPP claims to proceed," Order at 16, were, as the Third-Party Payors point out, decided in the context of third-party payors' allegations "that drug manufacturers misrepresented the risk or benefits of drugs to TPPs (or their agents)." Mfr.Opp. 4; *see also* Br. 8–10.  Even assuming *arguendo* that every reasonable jurist would agree with this Court that those decisions are "more persuasive," Order at 16, a court ***still*** might reject this Court's further conclusion that the cases support extending RICO liability to Distributors that did not make representations of any kind regarding the risks and benefits of opioid

---

[5]  *City of Almaty* supports Distributors' argument.  The court there found "a substantial ground for difference of opinion" because the order concerned "an issue that has not yet been squarely addressed" by the Second Circuit.  2017 WL 1424326, at *2.

medications, much less to the Third-Party Payors.  Order at 29 ("the Distributor and Pharmacy Defendants are not accused of making direct misrepresentations to Plaintiffs").  Thus, on the core question here, there is substantial ground for difference of opinion, and another court reasonably could conclude, as a matter of law, that the allegations are inadequate because they do not include any misrepresentations by Distributors to the Third-Party Payors, or anyone else, regarding the risks or benefits of opioid medications.  *See* Br. 10–11.  The Ninth Circuit appears to have drawn this line—rejecting RICO claims asserted by third-party payors except where they allege fraudulent marketing on which the payor directly relies.  *See Painters & Allied Trades District Council 82 Health Care Fund v. Takeda Pharm. Co.*, 943 F.3d 1243, 1252–53 & nn.9–10 (9th Cir. 2019) (discussing *Or. Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris Inc.*, 185 F.3d 957 (9th Cir. 1999); and *United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc*., 400 F. App'x 255, 257 (9th Cir. 2010)).

For similar reasons, there is substantial ground for difference of opinion on whether third-party payors have a cause of action against non-marketing defendants where, as here, the plaintiffs do not allege that they are a direct purchaser.  *See, e.g.*, *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 613, 616 (6th Cir. 2004) ("Indirect purchasers," i.e., "plaintiffs who suffer derivative or 'passed-on' injuries," "lack standing under RICO"); Br. 11–12 & n.6.  The Third-Party Payors do not meaningfully respond to this point.  Although they assert that they need not "allege they purchased opioids directly from Distributors," Dbr.Opp. 8, they rely only on a decision that involved a plaintiff obtaining a refinance loan directly from a defendant.  *See Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 416 (6th Cir. 2013).[6]

---

[6]   The Third-Party Payors incorrectly assert that Distributors "did not challenge … Plaintiffs' alleged injury for opioid payments in their underlying motion to dismiss briefing."  Dbr.Opp. at 6 n.4.  Distributors challenged the entirety of the Third-Party Payors' RICO causation-and-

The Third-Party Payors also fail to rebut the case for appellate review of the legal ruling on whether they alleged a direct causal link between Distributors' conduct and increased expenditures for medical treatment incurred by individuals who misused opioids. This Court itself "expressed reservations about whether a RICO plaintiff can recoup actual monetary costs paid as a result of treatment provided to or medical expenses incurred by third-party individuals for who the RICO plaintiff had some obligation to provide or pay for care." Order at 35. Interlocutory appellate review of an issue—like this one—that the district court views as a close or difficult legal question falls squarely within the ambit of Section 1292(b). *See, e.g.*, *Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc*., 196 F.3d 818, 821 (7th Cir. 1999) (because district court "concluded that the issue is debatable … [it] certified the issue for interlocutory appeal under 28 U.S.C. § 1292(b)"); *Paiute-Shoshone Indians v. City of Los Angeles*, 2007 WL 2202242, at *2 (E.D. Cal. July 30, 2007) (summarily finding substantial ground for difference of opinion where court's earlier decision had noted that the "issue was an 'exceedingly close' call").

Distributors cited numerous cases from nearly every federal appellate court rejecting third-party payors' RICO claims as "derivative" or "purely contingent" where they sought to recover medical treatment costs after their beneficiary was injured. Br. 13–15. Third-Party Payors themselves recognize that "other circuits have limited health care providers' right to recover for their members' health care costs." Dkt. 893 at 7 n.8. And in *Perry v. American Tobacco Co*., 324 F.3d 845 (6th Cir. 2003), the Sixth Circuit "agree[d] with the essential holdings of [those]

---

injury theory in their underlying Motion to Dismiss. *See* Dkt. 774-1 at 3–4, 7–8; *see also* Dkt. 969 at 2–6 (Reply Br.).

circuits."  *Id.* at 849.  This long line of decisions further demonstrates substantial ground for difference of opinion that supports interlocutory appeal under §1292(b).

The Third-Party Payors try to avoid appellate review by labelling RICO causation a "fact-inflected issue" "better left to later stages in the case."  Dbr.Opp. 11.  But that assertion does not grapple with the holding in *Perry*, which affirmed a "district court's grant of a motion to dismiss."  324 F.3d at 848.  And, as in *Perry*, there is no reason here to wait for discovery before resolution of these questions of law.  *See, e.g.*, *In re Baker*, 954 F.2d at 1172 (certification of 1292(b) appeal appropriate to "avoid protracted and expensive litigation"); *Simmons v. Galvin*, 2008 WL 11456109, at *3 (D. Mass. Jan. 16, 2008) ("a decision by the First Circuit before discovery and trial could save … substantial time and expense" (citing Wright & Miller § 3930)); Br. 18–19.

In sum, this Court should allow a Section 1292(b) appeal of the RICO rulings at the motion to dismiss stage to materially advance the litigation, as have other courts on RICO causation issues in other third-party payor cases.  *See, e.g.*, *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 637 (3d Cir. 2015) (reviewing under Section 1292(b) district court's denial of motion to dismiss in third-party payor case against pharmaceutical manufacturer); *Int'l Bhd. of Teamsters*, 196 F.3d at 821–22 (7th Cir.) (reviewing under Section 1292(b) district court's denial of motion to dismiss in third-party payor case against tobacco manufacturers); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 234 (2d Cir. 1999) (same).

**B.      There Is Substantial Disagreement on the RICO "Business or Property" Injury Question Despite the Third-Party Payors' Agreement with the District Court.**

The question of whether the Third-Party Payors adequately alleged a valid RICO injury is another threshold question that meets Section 1292(b)'s criteria.  *See* Br. 16–18.  The Court's decision is, at the very least, in tension with *Jackson v. Sedgwick Claims Management Services, Inc.*, 731 F.3d 556 (6th Cir. 2013) (en banc), which ruled that RICO's requirement that injury be

- 10 -

to "business or property" forecloses attempts to base RICO claims on "personal injuries" or "pecuniary losses flowing from those personal injuries."  *Id.* at 565; *see Gucwa v. Lawley*, 731 F. App'x 408, 412 (6th Cir. 2018) ("personal injuries and their associated pecuniary losses— including medical expenses—do not confer relief under [RICO]")*; see also* Order at 37 (observing that the Court "harbors some doubt regarding some categories of damages that Plaintiffs claim").

The Third-Party Payors invoke this Court's distinguishing of *Jackson*, *see* Dbr.Opp. 12, but do not respond to the question posed by Distributors' motion for certification of an interlocutory appeal.  The whole point of Section 1292(b) appellate review is to resolve legal questions on which there is substantial ground for disagreement.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 2019 WL 6827277, at *13 (certifying order for interlocutory appeal; "[a]lthough the Court believes that [petitioners'] cases are ultimately distinguishable, the result reached by the Court is certainly in tension with some of them"); *see also* Br. 17–18 & n.9. Distributors have demonstrated that such substantial ground for disagreement exists.

On this point, the Third-Party Payors have nothing to say.  The only argument they offer is a perplexing discussion quoting excerpts of *Brown v. Ajax Paving Indus., Inc.*, 752 F.3d 656 (6th Cir. 2014), that confirms Distributors' point that "it is the 'nature of the *injury*' that determines whether *Jackson* applies, not the identity of the parties."  Dbr.Opp. 12 (quoting Br. 17); *see id.* ("[RICO's] applicability turns on the nature of the *injury* …. We do not see how the same harm … could count as injury to business or property against some defendants but not against other defendants." (alteration and emphasis in original) (quoting *Brown*, 752 F.3d at 657–58)).  This Court ruled that the claims here could meet the requirement of injury to business or property under RICO as brought by a third-party payor, even if the same claims could not support a RICO action brought by the individual actually injured because *Jackson* would bar that RICO claim seeking to

"recover[] damages otherwise available in a tort claim for personal injury."  Order at 35.  That is a ruling that another court could reasonably decline to follow as not presenting an injury to business or property under *Brown* and *Jackson*.

### III.   The Third-Party Payors' Effort To Downplay the Significance of Appellate Review of the RICO Claims in Resolution of the Litigation Disregards Reality.

The Third-Party Payors contend that an interlocutory appeal will not advance the termination of the litigation because, according to them, the savings, efficiencies, or other effects flowing from such an appeal are not certain.  *See, e.g.*, Dbr.Opp. 13 ("savings of time or expense in discovery" may not occur if plaintiffs can continue to litigate their other claims); Dbr.Opp. 15 ("The effect on settlement negotiations is unclear.").  But Section 1292(b) does not require "that the interlocutory appeal have a final, dispositive effect" on the case; instead, it requires "only that it 'may materially advance' the litigation."  *Reese v. BP Exploration, Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  And in this case the *potential* efficiencies—whether via reduced discovery burdens, simplification of issues for trial, or settlement—are real, not speculative.  *See supra* Part I; Br. 18–19.

Moreover, the Third-Party Payors wholly ignore the fact that this case is part of a pending MDL.  Numerous courts have recognized that the fact that a case is part of an MDL proceeding is relevant to the 1292(b) analysis.  *See, e.g.*, *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 742–43 (D. Md. 2003) ("Delaying [interlocutory] review would burden not only the parties, but the judicial system itself."), *interlocutory appeal accepted*, 355 F.3d 322, 325 (4th Cir. 2004) (noting potential "effect in the cases encompassed in this MDL proceeding").[7]  Indeed, the D.C.

---

[7]    *See also, e.g.*, *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1172 (D.C. Cir. 1987) (certifying order under 28 U.S.C. § 1292(b) in MDL litigation); *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 2015 WL 4385926, at *1 (E.D. Ky. July 14, 2015) (same); *In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, 2011 WL 4344037, at *69 (N.D. Ohio

- 12 -

Circuit has explained that Section 1292(b) certification of important orders in an MDL context is "favored." *Hill v. Henderson*, 195 F.3d 671, 677 (D.C. Cir. 1999); *see also, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 2019 WL 6827277, at \*14 (in MDL cases "it is appropriate to resolve doubt in favor of certification"); Wright & Miller, *Federal Practice & Procedure* § 3929 ("interlocutory appeal is [more often] appropriate … in 'big' cases"). While the Third-Party Payors assert that "section 1292(b) should be sparingly applied," not one of the cases they cite involved a case in an MDL. *See* Dbr.Opp. 1–3 (collecting cases).[8]

The Third-Party Payors also are wrong that "an immediate appeal is likely to delay, rather than materially advance, the termination of this litigation." Mfr.Opp. 2. A certification application does not automatically stay proceedings in this Court. Although Distributors would favor a stay, they do not intend to seek a stay from the Sixth Circuit pending an interlocutory appeal of the RICO rulings if this Court were to lift the existing stay in this case. *See* 28 U.S.C. § 1292(b); Br. 3 n.2. And, unlike Distributors' previous 1292(b) request in the *Summit County* case, there are no pressing burdens arising from an impending trial.

The Third-Party Payors reliance on *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 29 F. Supp. 2d 825 (N.D. Ohio 1998), is unavailing: the court there based its denial of Section 1292(b) certification on the fact that an intermediate appeal would "likely not have been briefed much less decided by" the scheduled trial date. *Id.* at 835–36. Moreover, *Iron Workers* was not a case in a pending MDL; in these proceedings, by contrast, it is plain "an interlocutory

---

Sept. 14, 2011) (same); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2020 WL 1616327, at \*4–5 (E.D. La. Mar. 31, 2020) (describing same).

[8]   Similarly, the Opposition invokes just one irrelevant MDL decision in its argument on Section 1292(b)'s third requirement, *see* Dbr.Opp. 13–15; there, the court found no "substantial ground for difference of opinion" (and thus appellate review was unlikely to accomplish much of anything). *See In re Skelaxin (Metaxalone) Antitrust Litig.*, 2013 WL 4821337, at \*2 (E.D. Tenn. Sept. 10, 2013).

appeal would not necessarily mean a halt to the steady progress of this litigation." *In re Gen. Motors LLC Ignition Switch Litig.*, 2019 WL 6827277, at *14.

## CONCLUSION

The Court should grant Distributors' Motion to Certify Under 28 U.S.C. § 1292(b) the Court's February 21, 2020, Order for purposes of an immediate appeal of the Court's rulings that denied dismissal of the RICO claims on the RICO "by reason of" direct harm and proximate cause requirement, and the RICO requirement of injury to "business or property."

Dated: April 28, 2020                                      Respectfully submitted,


/s/ Mark H. Lynch                                          /s/ Robert A. Nicholas
Mark H. Lynch                                             Robert A. Nicholas
Geoffrey E. Hobart                                        Shannon E. McClure
Christian J. Pistilli                                     REED SMITH LLP
COVINGTON & BURLING LLP                                   Three Logan Square
One CityCenter                                            1717 Arch Street, Suite 3100
850 Tenth Street N.W.                                     Philadelphia, PA 19103
Washington, DC 20001                                      Tel.:  (215) 851-8100
Tel: (202) 662-5281                                       Fax:  (215) 851-1420
ghobart@cov.com                                           rnicholas@reedsmith.com
mlynch@cov.com                                            smcclure@reedsmith.com
cpistilli@cov.com


*Counsel for McKesson Corporation*                        *Counsel for AmerisourceBergen Drug Corporation*


/s/ Enu Mainigi
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029

- 14 -

EMainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

## LOCAL RULE 7.1(F) CERTIFICATION

This memorandum adheres to the page limits established by Case Management Order No.

1 (Dkt. 232), and 4 (Dkt. 485), and Local Rule 7.1(f).

*/s/ Mark H. Lynch*
Mark H. Lynch

## CERTIFICATE OF SERVICE

I, Mark H. Lynch, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Mark H. Lynch
Mark H. Lynch