UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION ) ) ) | MDL No. 2804 |
| This document relates to: ) ) ) | JUDGE DAN AARON POLSTER |
| ***All Cases*** ) | Case No. 1:17-md-2804 |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT AMERISOURCEBERGEN TO PRODUCE DISCOVERY IMPROPERLY WITHHELD AND TO SHOW CAUSE WHY IT SHOULD NOT BE SANCTIONED FOR ITS DISCOVERY MISCONDUCT**

Defendant AmerisourceBergen (ABDC) wrongfully withheld "Category One Discovery"[1] documents until after resolution of the first bellwether trial, effectively truncating the record upon remand of additional cases. Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs move this Court for the relief requested herein. Plaintiffs certify they conferred with ABDC, found its reasoning flawed, and thus bring this matter to the Court's immediate attention.

**INTRODUCTION**

Plaintiffs' Executive Committee ("PEC") has spent millions of dollars and countless hours conducting discovery against ABDC related to Category One Discovery. In recognition, this Court remanded Case Track Two, noting "the only remaining fact discovery the parties in the West Virginia cases would need after remand was limited to localized evidence pertaining to the specific jurisdiction." (Doc #: 3263). However, ABDC still had many responsive documents to be produced involving key

---

[1] See *Discovery Ruling No. 2* (Doc #: 693) (Filed: 06/30/18) at 4 ("Defendants must produce on a national basis documents related to marketing and promotion, brand planning and strategy, sales training and sales bulletins, prescriber educational materials, distribution monitoring, advocacy groups, speakers bureau programs, continuing medical education, diversion, suspicious order reports, adverse event reports, and regulatory activity. The defendants' policies and actions regarding all of these subjects are (and were) primarily centralized and over-arching, applying broadly to their opioid products."). See also, Discovery Ruling No. 3 (Doc #: 762) (Filed 07/17/18) at 4 ("The national scope for Category One Discovery is unchanged.").

CT1 custodians and deponents. Although ABDC produced approximately 75,000 documents during CT1, it has produced *400,000+ new documents since the resolution of CT1.*

The PEC undertook the task of comparing documents produced after the settlement of the first bellwether to those produced before in the normal course of discovery. The results provide reason for grave concern regarding ABDC's compliance with the spirit and letter of discovery rulings. Many of these documents relate directly to factual and legal issues germane to the MDL proceedings. Many of these documents directly contradict factual and legal positions taken by ABDC during the course of the MDL proceedings. All of these documents are designated as "confidential" (with the exception of the "pillbilly" parody referenced below) and will be submitted *in camera* for the Court's consideration.[2]

Importantly, these post-CT1 produced documents pertain to key ABDC witnesses previously deposed in the MDL. The following chart lists these key ABDC witnesses (with deposition dates), and provides statistics on documents produced from their custodial files during as well as after CT1:

| CT1 Custodian | Deposition Date | CT1 Documents Produced | Post-CT1 Documents Produced |
|---|---|---|---|
| Coldren, Emily | n/a | 741 | 58,151 |
| Garcia, Elizabeth | 12/14/2018 | 335 | n/a |
| Guerreiro, Marcelino | 4/3/2019 | 2,340 | 59,941 |
| Gundy, Bruce | n/a | 353 | 77,640 |
| Hartman, Sharon | 11/29/2018 | 552 | n/a |
| Hazewski, Ed | 10/25/2018 | 1,761 | 48,914 |
| Kevin Kreutzer | 11/27/2018 | 1,214 | 98,029 |
| May, David | 8/4/2018 | 5,565 | 61,778 |
| Mays, Steven | 10/24/2018 & 2/8/2019 | 3,895 | 77,159 |
| Norton, Rita | 1/9/2019 | 1,726 | n/a |
| Tomkiewicz, Joe | 11/28/2018 | 1,034 | n/a |
| Zimmerman, Chris | 8/3/2018 & 2/8/2019 | 3,231 | 46,657 |

---

[2] ABDC's modus operandi is to designate every document as "confidential" which has become the rule rather than the exception. The PEC has demanded de-designation of document #2-10 and will supplement the record accordingly.

2

None of the exemplar documents (referenced below) were timely disclosed in any of the custodial files of these witnesses. The PEC respectfully submits these are not isolated events, but rather evidence a systematic failure by ABDC to respond to discovery.

Plaintiffs seek immediate judicial intervention which (a) rights the wrong done to the MDL proceedings by re-opening targeted Category One Discovery, (b) strips the "confidential" designation of all late disclosed documents, and (c) sanctions ABDC for conduct deemed to be intentional defiance of this Court's authority.

I. **EXAMPLES OF DOCUMENTS THAT ABDC HAS IMPROPERLY WITHHELD, DELAYED, AND BURIED IN VIOLATION OF ITS DISCOVERY OBLIGATIONS.[3]**

Plaintiffs have identified a sample of documents as exemplars which are clearly relevant but wrongfully withheld from disclosure until after the first bellwether settled:

1. **"Pillbillies" Parody (ABDCMDL00569571)**
   **Document Date:** April 22, 2011
   **MDL Production Date:** December 12, 2019
   **Relevant persons (with titles) included on the document:**
   Chris Zimmerman (ABDC VP Corporate Security and Regulatory Affairs); Julie Eddy (ABDC National Director of State Government Affairs); Steve Mays (ABDC Vice President, Regulatory Affairs); Edward Hazewski (ABDC Director Corporate Security/ Regulatory Affairs); Paul Ross (ABDC Senior Director of Corporate Security and Regulatory Affairs); Bruce Gundy (ABDC Director of Investigations); Robert Crowe (ABDC Director - Emergency Response and Crisis Management); Joseph Tomkiewicz (ABDC Investigator - Corporate Security & Regulatory Affairs); Kevin Kreutzer (ABDC Compliance Specialist and Diversion Control Investigator); David Breitmayer (ABDC Diversion Control Investigator)

---

[3] All examples are taken from DR-22 Production identified as ABDC MDL Vol. 185 (12/12/2019), described by ABDC as "Documents from the custodial files of Ed Hazewski, Chris Zimmerman, and Emily Coldren produced in New York state court litigation (production volumes ABDCSTCT-PROD001 through ABDC-STCTPROD004)" totaling 47,083 documents, and constitute only a fraction of the ABDC DR-22 productions that include new documents from CT1 custodians. Moreover, the examples are Category One Discovery (e.g. "… distribution monitoring, advocacy groups, … diversion, suspicious order reports, … regulatory activity) and/or are highly relevant such that they should have been produced in CT1. *See* Discovery Ruling No. 2 at 4.

3

This 2011 email was circulated amongst ABDC senior management in charge of compliance and regulatory affairs.  The email contains a parody in the form of rewritten lyrics to the television show *The Beverly Hillbillies*.  This document has been **<u>de-designated</u>** as confidential and is attached hereto.  The lyrics are self-explanatory:

> *Come and listen to a story about a man named Jed*
> *A poor mountaineer, barely kept his habit fed,*
> *Then one day he was lookin at some tube,*
> *And saw that Florida had a lax attitude.*
> *About pills that is, Hillbilly Heroin, "OC"*
>
> *Well the first thing you know ol' Jed's a drivin South,*
> *Kinfolk said Jed don't put too many in your mouth,*
> *Said Sunny Florida is the place you ought to be*
> *So they loaded up the truck and drove speedily.*
> *South, that is. Pain Clinics, cash 'n carry.*
> *A Bevy of Pillbillies!*
>
> *Well now its time to say Howdy to Jed and all his kin.*
> *And they would like to thank Rick Scott fer kindly inviting them.*
> *They're all invited back again to this locality*
> *To have a heapin helpin of Florida hospitality*
> *Pill Mills that is.  Buy some pills.  Take a load home.*
> *Y'all come back now, y'hear?*

Putting aside, for now, the pejorative nature of the parody, the date of this email is important.  By 2011, the senior management of ABC's regulatory compliance possessed actual knowledge of interstate diversion of prescription opioids into the illicit market.  This is a tacit admission of Plaintiffs' "pill migration" theory, which ABDC opposed on both factual and legal grounds.  This document is properly classified as Category One and should have hit on the search term "pill w/2 mill" in the custodial files of Zimmerman, Gundy, Hazewski, Kreutzer, Mays and Tomkiewicz.

2. **Amicus Brief Coordination (ABDCMDL00571243)**
   **Document Date:**        February 24, 2012
   **MDL Production Date:**  December 12, 2019
   **Relevant persons (with titles) included on the document:**
   Chris Zimmerman (ABDC VP Corporate Security and Regulatory Affairs); Dave Neu (ABDC President)

   Non-confidential context: In 2012, the DEA and Cardinal Health engaged in extensive litigation involving the very same legal issue presented in the MDL proceedings.  See *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203 (D.D.C. 2012).  The trade group for the wholesale distributors, Healthcare Management Distribution Alliance ("HDMA"), submitted an amicus brief accusing the DEA of a "regulatory liability shift," which is "contrary to DEA's own regulations and policy regarding the responsibilities of practitioners and pharmacists to ensure that controlled prescription drugs are prescribed and dispensed only for legitimate medical purposes in the ordinary course of professional practice."  Id., Brief of Amicus Curiae, 2012 WL 1637016 (C.A.D.C.).  It should be noted that the position taken in this amicus brief, as well as the *Masters* amicus brief, was rejected by the Court.  The email referenced above clearly demonstrates active discussions amongst senior level management of the Big3 ratifying the factual and legal arguments set forth in the amicus brief.  These positions contradict legal and factual positions taken by ABDC in the MDL proceedings and should have been previously produced on relevance grounds alone.  Separately, prior production was also required due to 2018 negotiated search terms (e.g., "pill w/2 mill") and custodians (e.g., Zimmerman).

3. **Florida Pill Mill Bill (ABDCMDL00569575)**
   **Document Date:**        April 21-25, 2011
   **MDL Production Date:**  December 12, 2019
   **Relevant persons (with titles) included on the document:**
   Chris Zimmerman's (ABDC VP Corporate Security and Regulatory Affair); Julie Eddy (ABDC National Director of State Government Affairs); Rita Norton (ABDC SVP Government Affairs); Christopher Vaughan (McKesson Director State Government Affairs); Adrian Durbin (McKesson Director State Government Relations); Ann Berkey (McKesson SVP Public Affairs); Connie Woodburn (Cardinal Health SVP Government & Community Relations); Cassi Baker (Cardinal VP Government Relations); David Gonzales (Cardinal Director State and Government Relations)

5

Non-confidential context: This document is an email chain that begins on April 21, 2011, which demonstrates concerted action by the Distributor Defendants to lobby against and defeat Florida's "Pill Mill Bill." Importantly, the Bill included the following provisions which impacted the wholesale distributors:

> A wholesale distributor must take reasonable measures to identify its customers, understand the normal and expected transactions conducted by those customers, and identify those transactions that are suspicious in nature. A wholesale distributor must establish internal policies and procedures for identifying suspicious orders and preventing suspicious transactions. **A wholesale distributor must assess orders for greater than 5,000 unit doses of any one controlled substance in any one month to determine whether the purchase is reasonable.** In making such assessments, a wholesale distributor may consider the purchasing entity's clinical business needs, location, and population served, in addition to other factors established in the distributor's policies and procedures.

See CS/CS/HB 7095 (2011).[4] This document directly contradicts factual and legal positions taken by ABDC in the MDL proceedings related to the reasonableness of its suspicious order monitoring systems and its support for clear and vigorous regulatory standards and should have been previously produced on relevance grounds alone. Separately, prior production was also required due to 2018 negotiated search terms (e.g., "HDMA and DEA" and/or "DEA and susp*") and custodians (e.g., Zimmerman and/or Norton).

4.  **HDMA's Talking Points (ABDCMDL00551507)**
    Document Date: February 6, 2012
    MDL Production Date: December 12, 2019
    **Relevant Persons (with titles) included on the document:**
    Chris Zimmerman (ABDC VP Corporate Security and Regulatory Affairs); Dave Neu (ABDC President); John Chou (ABDC EVP, Chief Legal Officer); Steven Collis (ABDC President, CEO); Rita Norton (ABDC SVP Government Affairs); Peyton Howell (ABDC VP Global Sourcing); Steve Mays (ABDC Vice President, Regulatory Affairs); Edward Hazewski (ABDC Director Corporate Security/ Regulatory Affairs); Paul Ross (ABDC Senior Director of Corporate Security and Regulatory Affairs); John Gray (HDMA ), etc.

---

[4] https://www.flsenate.gov/Session/Bill/2011/7095/?Tab=BillHistory (last visited May 21, 2020).

Non-confidential context: This document is an important exemplar – showing that, as of 2012, ABDC continued its refusal to respect the DEA's authority to address the opioid crisis - directly contradicting positions taken by ABDC in the MDL proceedings.  Further, ABDC previously disclosed the talking points attached to this email; but not the email itself.  Thus, in addition to not having this highly relevant email, the PEC could not effectively use the attachment.   This document should have been previously produced on relevance grounds alone.  Separately, prior production was also required due to 2018 negotiated search terms (e.g., HDMA and DEA and/or HDMA w/50 suspicio*) and custodians (e.g., Norton, Hazewski, Mays, Norton, and/or Zimmerman).  Also, prior production was required since the attached "talking points" were produced in CT1, and the family of documents should not have been separated (with a cover email excluded).

5. **HDMA Heads-Up on DEA Briefing (ABDCMDL00568921)**
    Document Date: August 24, 2007
    MDL Production Date: December 12, 2019
    **Relevant Persons (with titles) included on the document:**
    HDMA Regulatory Affairs Committee (RAC), Federal Governmental Affairs Committee (FGAC), and Government Public Policy Committee (GPPC), each of which included representatives of the big three distributors, including Chris Zimmerman and many others.

Non-confidential context: This document shows that as of mid-2007, ABDC was aware: a) that the DEA believed it was illegal for distributors to continue selling controlled substances to customers who had placed suspicious orders; and b) of the growing trend of hydrocodone abuse and drug distributors' relationship to the abuse problem as a result of their sales practices.  This document directly contradicts factual and legal positions taken by ABDC in the MDL proceedings and should have been produced on relevance grounds alone.  Separately, prior production was also required due to 2018 negotiated search terms (e.g., "HDMA and DEA" and/or "DEA and briefing") and custodians (e.g., Zimmerman).

7

6. **Oxy for Kids (ABDCMDL00573788)**
   **Document Date:** August 13, 2015
   **MDL Production Date:** December 12, 2019
   **Relevant Persons (with titles) included on the document:**
   Chris Zimmerman (ABDC VP Corporate Security and Regulatory Affairs); Steve Mays (ABDC Vice President, Regulatory Affairs); Bruce Gundy (ABDC Director of Investigations); David May (ABDC Sr. Director Diversion Control); Eric Cherveny (ABDC Director Diversion Control); Sharon Hartman (ABDC Director Pharmacy Compliance and Diversion Control); Paul Ross (ABDC Senior Director of Corporate Security and Regulatory Affairs)

   Non-confidential context:  This email exchange demonstrates that ABDC clearly knew not only the risks of opioid use, but also how children would be subject to those same risks.  Moreover, ABDC's email also points the finger at Purdue, a co-defendant and RICO co-conspirator in CT1, for Purdue's behavior in causing the opioid abuse problem.  This document directly contradicts factual and legal positions taken by Defendants in the MDL proceedings and should have been previously produced on relevance grounds alone, particularly as coming from the custodial file of Chris Zimmerman (a fact deponent as well as ABDC's 30(b)(6) representative).

7. **Red Flags Guidance (ABDCMDL00570832)**
   **Document Date:** January 10, 2014
   **MDL Production Date:** December 12, 2019
   **Relevant Persons (with titles) included on the document:**
   Chris Zimmerman (ABDC VP Corporate Security and Regulatory Affairs); Dave Neu (ABDC President)

   Non-confidential context:  This document shows ABDC, along with its RICO and co-conspirator defendants, including manufacturer, pharmacy, and other distributor defendants, working together on a plan to thwart the DEA or, alternatively, to give them something to use against DEA should they be brought into court for CSA violations.  This document directly contradicts factual and legal positions taken by Defendants in the MDL proceedings and should have been previously produced on relevance grounds alone.  Separately, prior production was also required due to 2018

8

negotiated search terms (e.g., "DEA and Rannazzisi," "HDMA and DEA," and/or "pill w/2 mill"), and custodians (e.g., Zimmerman).

8. **Don't Blame Surgeons (ABDCMDL00571804)**
   **Document Date:**        August 18, 2017
   **MDL Production Date:**  December 12, 2019
   **Relevant Persons (with titles) included on the document:**
   Sharon Hartman (ABDC Director Pharmacy Compliance and Diversion Control); David May (ABDC Sr. Director Diversion Control); Bruce Gundy (ABDC Director of Investigations); Chris Zimmerman (ABDC VP Corporate Security and Regulatory Affairs); Steve Mays (ABDC Vice President, Regulatory Affairs); Paul Ross (ABDC Senior Director of Corporate Security and Regulatory Affairs); Julie Eddy (ABDC National Director of State Government Affairs)

   Non-confidential context: This document shows ABDC's recognition that the oversupply of opioids results in diversion (i.e., Plaintiffs' causation theory advanced throughout this litigation). This document directly contradicts factual and legal positions taken by Defendants in the MDL proceedings and should have been previously produced on relevance grounds.

9. **Zimmerman's Board Presentation (ABDCMDL00515292)**
   **Document Date:**        November 1, 2012
   **MDL Production Date:**  December 12, 2019
   **Relevant Persons (with titles) included on the document:**
   Edward Hazewski (ABDC Director Corporate Security/ Regulatory Affairs); Chris Zimmerman (ABDC VP Corporate Security and Regulatory Affairs); Sherrice Glover (ABDC Administrative Assistant)

   Non-confidential context: This document shows that, as of 2012, ABDC had direct knowledge, all the way up to its Board of Directors, that opioids were in fact: a) being diverted, b) being sold on the black market, and c) garnering a street price of approximately thirty times the retail price. This document directly contradicts factual and legal positions taken by ABDC in the MDL proceedings and should have been previously produced on relevance grounds alone. Separately, prior production was also required due to 2018 negotiated search terms (e.g., "DEA and suspen*" and/or "diversion control and 1301.74(b)"), and custodians (e.g., Hazewski and/or Zimmerman).

9

**10.     Meeting on Friday with Dave Neu (ABDCMDL00566109)**
   **Document Date:**         October 30, 2013
   **MDL Production Date:**   December 12, 2019
   **Relevant Persons (with titles) included on the document:**
   Chris Zimmerman (ABDC VP Corporate Security and Regulatory Affairs); Patrick Kelly (HDMA Senior VP)

<u>Non-confidential context</u>: This document reflects ABDC's efforts (with its RICO and co-conspirator distributor defendants) to improve the distribution industry's image, in the face of mounting legal troubles, including the pending action brought against them by the West Virginia Attorney General. This document directly contradicts factual and legal positions taken by ABDC in the MDL proceedings and should have been previously produced on relevance grounds alone. Separately, prior production was also required due to 2018 negotiated search terms (e.g., "HDMA w/50 diver*"), and custodians (e.g., Zimmerman).

## II.     REMEDY

Given the significance, scope, volume and substance of the late disclosures, the Plaintiffs Executive Committee requests this Court order ABDC as follows:

   A.     Certify under oath that all Category One Discovery documents responsive to Plaintiffs' Rule 34 requests have now been produced in the MDL proceedings;

   B.     Certify under oath that all documents from custodial files and document repositories that are responsive to search terms have now been produced in the MDL proceedings;

   C.     Specifically identify each "new" document ABDC has disclosed in the MDL proceedings since October 14, 2019 (post-CT1 settlement) and state under oath:

      (1)   whether the document falls under Category One Discovery;

      (2)   whether the document is related to a witness deposed in CT1;

      (3)   the date the document was created;

      (4)   the date the document was disclosed in the MDL;

10

   (5) the reason for the document was not previously disclosed in the MDL; and

   (6) the date(s) and location(s) the document was disclosed in other proceedings;

and

  D. Conduct a hearing on the root cause of the late disclosures and consider further relief such as re-opening depositions (at Defendants' expense), waiver of affirmative defenses, stripping the confidentiality designations of all newly disclosed documents, monetary sanctions and/or any other relief this Court deems fair and just.

Dated: May 21, 2020       Respectfully submitted,

             /s/Paul J. Hanly, Jr.
             Paul J. Hanly, Jr.
             SIMMONS HANLY CONROY
             112 Madison Avenue, 7th Floor
             New York, NY 10016
             (212) 784-6400
             (212) 213-5949 (fax)
             phanly@simmonsfirm.com

             /s/Joseph F. Rice
             Joseph F. Rice
             MOTLEY RICE LLC
             28 Bridgeside Blvd.
             Mt. Pleasant, SC 29464
             (843) 216-9000
             (843) 216-9290 (Fax)
             jrice@motleyrice.com

             /s/ Paul T. Farrell, Jr.
             Paul T. Farrell, Jr.
             FARRELL LAW
             422 Ninth St., 3rd Floor
             Huntington, WV  25701
             (304) 654-8281
             paul@farrell.law

             *Plaintiffs' Co-Lead Counsel*

/s/Peter H. Weinberger
Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of May, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

*/s/Peter H. Weinberger*
Peter H. Weinberger

*Plaintiffs' Liaison Counsel*
