**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | |
| | MDL DOCKET NO. 2804 |
| This document relates to: | Hon. Judge Dan A. Polster |
| ALL CASES | |

**MOTION FOR LEAVE TO TAKE DISCOVERY OF**
**PHARMACY DEFENDANTS' NATIONWIDE DISPENSING DATA**
**<u>AND MEMORANDUM IN SUPPORT THEREOF</u>**

1993758.1

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1
ARGUMENT.......................................................................................................................3
  A.  The Court's Authority to Order Production of Nationwide Data.........................................3
    1.  The Court Has Broad Authority to Allow Discovery Nationwide in Scope......................3
    2.  MDL Precedents Support Nationwide Discovery ............................................................6
  B.  The Court Should Permit Discovery of Dispensing Data on a Nationwide Basis ................7
    1.  Nationwide Dispensing Data Is Relevant to Existing Claims in This MDL .....................7
    2.  Nationwide Dispensing Data Would Aid Global Settlement Discussions ......................11
CONCLUSION..................................................................................................................12

# TABLE OF AUTHORTIES

**Cases**

*Daniels v. City of Sioux City*, 294 F.R.D. 509 (N.D. Iowa 2013)..................................................11

*Dzik v. Bayer Corp.*, 846 F.3d 211 (7th Cir. 2017)........................................................................4

*In re "Agent Orange" Prods. Liab. Litig.*, 304 F. Supp. 2d 404 (E.D.N.Y. 2004) ........................4

*In re Air Crash off Long Island, N.Y. on July 17, 1996*, 965 F. Supp. 5 (S.D.N.Y. 1997) .............1

*In re Auto. Refinishing Paint*, 229 F.R.D. 482 (E.D. Pa. 2005) ....................................................6

*In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269 (N.D. Ala. 2016).................5

*In re Corrugated Container Anti-Tr. Litig.*, 620 F.2d 1086 (5th Cir. 1980) .................................1

*In re DePuy Orthopaedics, Inc., ASR Hip Implant Prods. Liab. Litig.*, No. 1:10-md-02197, Am. Case Mgmt. Order No. 10 (N.D. Ohio Sept. 26, 2011).............................................................7

*In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, No. 1:13-MD-2428, Case Mgmt. Order No. 6 (D. Mass. Dec. 06, 2013)..........................................................................7

*In re Gadolinium Based Contrast Agents ("GBCA") Products Liability Litig.*, No. 1:08-GD-50000, Case Mgmt. Order No. 5 (N.D. Ohio June 16, 2008)......................................................7

*In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2015 WL 13820855 (S.D.N.Y. Feb. 23, 2015)..................................................................................................1

*In re Korean Air Lines Co.* ("*Korean Air Lines*"), 642 F.3d 685 (9th Cir. 2011) ..........................4

*In re Library Editions of Children's Books*, 297 F. Supp. 385 (J.P.M.L. 1968) ............................4

*In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838 (6th Cir. 2020) .......................................8, 9

*In re Nat'l Prescription Opiate Litigation*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017) .......................2

*In re Proton-Pump Inhibitor Products Liability Litig.*, No. 2:17-md-02789, Case Mgmt. Order No. 22 & Ex. A-1 (D.N.J. July 30, 2018)...............................................................................6

*In re Zofran (Ondansetron) Products Liability Litig.*, No. 1:15-md-02657, MDL Order No. 12 (D. Mass. May 26, 2016).........................................................................................................6

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)....................................................................11

*U.S. EEOC v. Giumarra Vineyards Corp.*, No. 1:09-CV-02255-AWI, 2012 WL 393333 (E.D. Cal. Feb. 6, 2012)....................................................................................................................11

**Statutes**

28 U.S.C. § 1407(a) .........................................................................................................................3

**Other Authorities**

Andrew D. Bradt, *The Long Arm of Multidistrict Litigation*, 59 Wm. & Mary L. Rev. 1165 (2018) ........................................................................................................................................5

*Annotated Manual for Complex Litigation, Fourth* ("*Annotated MCL Fourth*") § 22.8 (rev. ed. 2019)....................................................................................................................................5, 11

Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* 2 (2d ed. 2018)..................................................................................................................................8

Edward F. Sherman, *When Remand Is Appropriate in Multidistrict Litigation*, 75 La. L. Rev. 455 (2014) ...................................................................................................................................5

H.R. Rep. No. 1130, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.C.C.A.N. 1898, 1901 ...3

Jack B. Weinstein, *The Role of Judges in a Government of, by, and for the People: Notes for the Fifty-Eighth Cardozo Lecture*, 30 Cardozo L. Rev. 1 (2008).....................................................6

The Plaintiffs' Executive Committee ("PEC") respectfully submits this memorandum in support of a motion, pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1407(b), for leave to take discovery of nationwide dispensing data and documents from the Pharmacy Defendants in the over 1,400 cases centralized for common discovery in this multidistrict litigation ("MDL") in which plaintiffs from at least 49 states have sued Pharmacy Defendants over their dispensing and distribution conduct. The proposed discovery requests are found at Exhibit A to this motion.

## INTRODUCTION

A core purpose of the pretrial centralization process that Congress created in 28 U.S.C. § 1407 is to facilitate efficient discovery with respect to issues common to cases in the MDL. *E.g.*, *In re Corrugated Container Anti-Tr. Litig.*, 620 F.2d 1086, 1091 (5th Cir. 1980); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2015 WL 13820855, at *1 (S.D.N.Y. Feb. 23, 2015). Those issues need not be common to each and every constituent case. *See*, *e.g.*, *In re Air Crash off Long Island, N.Y. on July 17, 1996*, 965 F. Supp. 5, 8 (S.D.N.Y. 1997) ("It would thwart the goals of efficiency and consistency underlying Section 1407 to restrict coordinated proceedings with respect to damages to only those issues common to all plaintiffs.").

One critical common factual issue in this MDL is opioid dispensing. Over 1,400 plaintiffs in this MDL from at least 49 states already assert claims challenging the dispensing and/or distribution practices of Pharmacy Defendants.[1] The dispensing data of those defendants is, of course, highly relevant to Plaintiffs' dispensing claims. In addition, as Special Master Cohen has previously found, such dispensing data is also relevant to distribution claims. *See* Discovery

---

[1] Among the cases transferred into the MDL thus far, the PEC has identified cases raising dispensing and/or distribution claims against Pharmacy Defendants in every state except Arkansas.

1

Ruling No. 8 ("DR-8") at 3 (ECF No. 1055) (Oct. 23, 2018) (discussed *infra* at 8).  The PEC accordingly seeks leave to serve MDL-wide discovery to obtain nationwide dispensing data from the Pharmacy Defendants.  Aside from its relevance to the adjudication of existing claims in the MDL, this discovery would facilitate potential settlement.

The Court previously expanded its order regarding the production of ARCOS data to mandate its production on a nationwide basis, not just in bellwether cases.  *See* Second Order Regarding ARCOS Data at 3 (ECF No. 397) (May 8, 2018); Third Order Regarding ARCOS Data at 2 (ECF No. 668) (June 26, 2018).  So, too, dispensing data should now be produced on a nationwide basis.  As the Court has recognized, production of national dispensing data would be "in keeping with the normal role of an MDL court overseeing centralized discovery in a case of national reach."  Order Regarding Scope of Track One-B at 2, ECF No. 2976 (Dec. 10, 2019).  ARCOS data has been of critical value to the case in allowing Plaintiffs to focus, develop, test, and try to resolve their claims against appropriate defendants.  However, it provides only a limited window on opioid distribution — from manufacturers, to distributors, to pharmacies.  Dispensing data is the last critical link in the supply chain, showing not only how many and what types of opioids went into communities across the country, but, as explained below, what participants in the closed system knew about these sales.

Allowing discovery of such data will further the very purpose of this MDL's formation, which is to promote coordinated pretrial discovery of the cases centralized in this Court and avoid duplication.  *In re Nat'l Prescription Opiate Litigation*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) ("In our opinion, centralization will substantially reduce the risk of duplicative discovery").  Irrespective of the resolution of bellwether cases, coordinated discovery of nationwide dispensing data will become necessary before the various cases are remanded to their transferor courts and

2

will reduce the burden on those courts in overseeing jurisdiction-specific discovery following remand. At present, however, non-bellwether discovery is stayed by Case Management Order No. 1 ("CMO-1").[2] The Sixth Circuit's recent mandamus decision underscores that this Court has authority to order discovery relevant to all of the cases before it. That is precisely what the PEC seeks and what Rule 26, Section 1407, and an unbroken line of precedent from courts in this Circuit and across the country plainly permit.

Accordingly, for the reasons discussed below, the Court should partially lift the stay of MDL-wide discovery in non-bellwether cases so as to allow Plaintiffs to seek discovery of dispensing data on a nationwide basis.

## ARGUMENT

### THE COURT SHOULD PERMIT DISCOVERY OF NATIONWIDE DISPENSING DATA

**A. The Court's Authority to Order Production of Nationwide Data**

**1. The Court Has Broad Authority to Allow Discovery Nationwide in Scope**

As a threshold matter, this Court, as a transferee court in a nationwide MDL – of arguably unprecedented scope – has the authority to order production of nationwide dispensing data. Centralized MDL proceedings seek to "promote the just and efficient conduct" of "civil actions involving one or more common questions of fact [that] are pending in different districts" by permitting their transfer to a single district for "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Congress enacted section 1407 in order to "assure uniform and expeditious treatment in the pretrial procedures in multidistrict litigation." H.R. Rep. No. 1130, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901.

---

[2] CMO-1 provides that "[n]o party may conduct any discovery of another party in this MDL proceeding not expressly authorized by this Order absent further Order of this Court or express agreement of the parties." ECF No. 232 at 12 (¶ 9.a) (Apr. 1, 2018).

3

To effectuate these goals, an MDL transferee court's authority is broad. *See Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) ("District courts handling complex, multidistrict litigation must be given wide latitude with regard to case management in order to achieve efficiency.") (citing cases; internal quotation marks omitted); *In re Korean Air Lines Co.* ("*Korean Air Lines*"), 642 F.3d 685, 700 (9th Cir. 2011) ("In discretionary matters going to the phasing, timing, and coordination of the cases, the power of the MDL court is at its peak."); *In re "Agent Orange" Prods. Liab. Litig.*, 304 F. Supp. 2d 404, 416 (E.D.N.Y. 2004) ("The transferee court has broad powers in matters relating to management of the multidistrict case before it."), *aff'd*, 517 F.3d 76 (2d Cir. 2008).

Perhaps nowhere is the broad power of an MDL transferee court more evident than in matters relating to discovery. Such power is evident in the legislative history of 28 U.S.C. § 1407, the *Manual for Complex Litigation* ("*Manual*"), various other authoritative sources, and a wealth of case law.

Section 1407 itself was created out of a need to coordinate nationwide discovery. As the Judicial Panel on Multidistrict Litigation ("JPML") explained in one of its first rulings:

> Congress adopted the transfer procedure authorized by Section 1407 for the specific purpose of superseding the voluntary procedures of the Coordinating Committee.[3] As stated in House Report No. 1130, 90th Cong., 2d Sess., the bill was "drafted by the Coordinating Committee' and 'based on the experience of the Coordinating Committee in supervising *nationwide discovery proceedings* in the electrical equipment cases which flooded the Federal courts in the early 1960's." U.S. Code Cong. & Adm. News, 90th Cong., 2d Sess., p. 1051 (No. 4, June 5, 1968).

*In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968) (emphasis added); *accord* Edward F. Sherman, *When Remand Is Appropriate in Multidistrict Litigation*, 75

---

[3] The former Coordinating Committee for Multidistrict Litigation of the United States District Courts.

4

La. L. Rev. 455, 463 (2014) ("Supervision of discovery was a main impetus for the MDL Act."); Andrew D. Bradt, *The Long Arm of Multidistrict Litigation*, 59 Wm. & Mary L. Rev. 1165, 1202 (2018) ("Under the proposed scheme, the district judge would be granted significant discretion to consolidate and control discovery.").

As the former Executive Attorney to the JPML and Executive Editor of the *Manual for Complex and Multidistrict Litigation* stated, "[t]he *central theme* which was carried over from the Coordinating Committee to the Judicial Panel was the notion that *nationwide discovery in multidistrict litigation had to be unified and controlled by the court*." John T. McDermott, *The Judicial Panel on Multidistrict Litigation*, 57 F.R.D. 215, 216 (1973) (emphasis both in original and added). "Implicit in Section 1407 is the assumption that the transferee judge will, as did the judges in the electrical equipment company cases, establish *a national unified discovery program* to avoid delay, repetition and duplication and to [e]nsure that the litigation is processed as efficiently and economically as possible." *Id*. at 217 (emphasis added).

The *Manual* similarly observes the need for comprehensive discovery that is relevant to all plaintiffs' cases. *See* David F. Herr, *Annotated Manual for Complex Litigation, Fourth* ("*Annotated MCL Fourth*") § 22.8, at 530 (rev. ed. 2019) (noting that, "particularly in multidistrict litigation – judges direct initial discovery toward matters bearing on the defendants' liability *to all plaintiffs*") (emphasis added). Indeed, one of the principal objectives of section 1407 transfer "is to eliminate duplication in discovery." *Id*. § 20.131, at 230. The *Manual* contemplates that MDL-wide discovery may implicate multiple geographic regions, and may require "*dividing discovery into national, regional, and case-specific categories.*" *Id.* § 22.8, at 530 (emphasis added). Courts and commentators are in accord. *E.g.*, *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1300 (N.D. Ala. 2016) (noting that MDL "ha[d] involved (and w[ould]

5

continue to involve) nationwide discovery"); *In re Auto. Refinishing Paint*, 229 F.R.D. 482, 488 n.7 (E.D. Pa. 2005) ("[I]n an MDL action . . . the transferee court serves as a *national forum* for pretrial discovery purposes.") (emphasis added); Jack B. Weinstein, *The Role of Judges in a Government of, by, and for the People:  Notes for the Fifty-Eighth Cardozo Lecture*, 30 Cardozo L. Rev. 1, 174 (2008) ("Discovery can be conducted *nationally*, with national archives accessible in state and federal cases through electronics.") (emphasis added).

### 2.  MDL Precedents Support Nationwide Discovery

MDL courts commonly require Defendants to produce nationwide discovery relevant to any and all of the cases transferred to them – and that is not limited to bellwether plaintiffs.  In cases involving pharmaceuticals, such discovery often includes dispensing data.

For example, in *In re Zofran (Ondansetron) Products Liability Litigation* ("*Zofran*"), the MDL court mandated that the defendants furnish various "*prescriber-level information*" for all cases in the MDL.  *Zofran*, No. 1:15-md-02657, MDL Order No. 12, Ex. 1 at 7 (D. Mass. May 26, 2016) (ECF No. 253-1) (emphasis added).  Likewise, in *In re Proton-Pump Inhibitor Products Liability Litigation* ("*PPI*"), the MDL court ordered the defendants to provide, among other things, *prescribing data* (including IMS data) in all MDL cases.  *PPI*, No. 2:17-md-02789, Case Mgmt. Order No. 22 & Ex. A-1 (D.N.J. July 30, 2018) (ECF Nos. 247, 247-1).

This Court has previously ordered the production of nationwide ARCOS data.  *See* Second Order Regarding ARCOS Data at 3; Third Order Regarding ARCOS Data at 2.  Earlier, in *In re Gadolinium Based Contrast Agents ("GBCA") Products Liability Litigation* ("*Gadolinium*"), this Court required the defendants to detail all GBCA distribution data and sales contact information with radiographic facilities relevant to each plaintiff, and relevant sales contact information in cases where the plaintiff had already ascertained product identification.  *Gadolinium*, No. 1:08-GD-50000, Case Mgmt. Order No. 5 & Def. Fact Sheet (N.D. Ohio June 16, 2008) (ECF Nos. 109,

109-1). Other MDL courts, including in this District, have entered similar orders. *E.g.*, *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, No. 1:13-MD-2428, Case Mgmt. Order No. 6, Ex. C (D. Mass. Dec. 06, 2013) (ECF No. 441 at 15-16) (ordering defendants to provide specific distribution data on any U.S. facility where a plaintiff had received dialysis); *In re DePuy Orthopaedics, Inc., ASR Hip Implant Prods. Liab. Litig.*, No. 1:10-md-02197, Am. Case Mgmt. Order No. 10 at 2-3, 5 (N.D. Ohio Sept. 26, 2011) (ECF No. 276) (requiring defendants to disclose dates that each plaintiff's hip device and components had been manufactured and shipped, as well as to which purchaser device had been shipped, and of the identity of all relevant sales representatives and/or healthcare provider-defendant consulting relationships).

**B. The Court Should Permit Discovery of Dispensing Data on a Nationwide Basis**

**1. Nationwide Dispensing Data Is Relevant to Existing Claims in This MDL**

The Court has broad power to mandate discovery of the national dispensing data sought here, which is well-grounded in the pending claims. As noted above, over 1,400 cases in this MDL – covering at least 49 states, and scores of Tribes, in every geographic region, comprising Indian Country – assert dispensing and/or distribution claims against the Pharmacy Defendants. This Court itself has noted that hundreds of MDL plaintiffs have asserted dispensing claims. *See* Ct.'s Letter to Sixth Cir. at 2, *In re Nat'l Prescription Opiate Litigation*, No. 20-3075 (6th Cir. Feb. 25, 2020) (ECF No. 43-1) ("[I]n hundreds of other MDL cases, the pharmacy defendants face the same dispensing claims[.]"). Thus, the Court correctly noted that ordering production of national dispensing data would be "in keeping with . . . centralized discovery in a case of national reach." Order Regarding Scope of Track One-B at 2. Even as to cases asserting distribution but not dispensing claims against the Pharmacy Defendants, dispensing data plainly is relevant. As

7

Special Master Cohen noted in DR-8, many of the Pharmacy Defendants "use dispensing data as a component of their suspicious order monitoring programs."  DR-8 at 3.

In short, dispensing is an MDL-wide factual issue.  The nationwide scope of this MDL, encompassing cases with dispensing and distribution claims from every corner of the country, therefore fully supports discovery of nationwide dispensing data.  Consequently, discovery ought not to be limited to a small subgroup of bellwether plaintiffs here.  *See* Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* 2 (2d ed. 2018) ("An MDL proceeding should not be viewed as a place to 'warehouse' cases indefinitely.").

Nor does the Sixth Circuit's recent mandamus decision shield the Pharmacy Defendants from the proposed discovery.  The Sixth Circuit's decision was narrowly cast, focused only on the Court's order allowing Plaintiffs to belatedly amend their complaints in the Track One cases to add dispensing claims.  *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 845-46 (6th Cir. 2020).  Although the Pharmacy Defendants had also challenged the Court's order requiring the production of nationwide dispensing data, the Court of Appeals held that its ruling as to the amendment of pleadings rendered that discovery challenge moot.  *Id.* at 846.

More significantly, the Sixth Circuit's framing of the discovery issue actually underscores the discoverability of nationwide dispensing data when done on an MDL-wide basis and not limited to specific bellwethers.  The Court of Appeals addressed the Court's proportionality analysis, which had been "made with eyes open to the context of the entire MDL; but . . . undertaken [only] within the Track One-B case."  Order Denying Mot. for Stay at 4, ECF No. 3089 (Jan. 21, 2020).  The Sixth Circuit noted that "the question [of] whether discovery is 'proportional to the needs of the case' under Rule 26(b)(1) must – per the terms of the Rule – be based on the [district] court's determination of the needs of the particular case in which the discovery is

8

ordered." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 846.  Here, nationwide discovery of dispensing data would be wholly proportional to the needs of the 1,400 separate cases in which the Pharmacy Defendants are parties (as well as other cases in the MDL), fully justifying the requested discovery on an MDL-wide basis.

Moreover, the Sixth Circuit went out of its way to explain that the proportionality "limitation *does not prevent the MDL court from creating efficiencies in the MDL generally*; to the contrary, presumably the very reason the cases were transferred to the MDL court in the first place is that the needs of some cases are the same as those of many others." *Id*. (emphasis added). In other words, the Sixth Circuit saw no reason why this Court could not authorize discovery of nationwide dispensing data as to the MDL docket as a whole, and it is the context of this MDL as a whole, rather than in any specific case, that the discovery of nationwide dispensing data is both necessary and justified.  The Court of Appeals' discussion strongly supports the well-established, practical route of ordering discovery on common issues in all cases within this MDL that raise those issues where, as here, doing so has evident efficiencies and benefits.

Nationwide discovery of dispensing data is justified in this MDL, in particular, for additional reasons.  Evidence gathered in the MDL, and presented to the Court in summary judgment motions in Case Track 1, makes clear that opioids dispensed and diverted in one jurisdiction were frequently trafficked in others.  Florida, in particular, assumed a prominent role, in supplying "prescription tourists" who filled prescriptions in Florida, but used or sold them throughout Appalachia, the Midwest, and Northeast.  The route from Florida and Georgia to Kentucky, Ohio, and West Virginia was so well traveled that it became known as the "Blue Highway, a reference to the color of the 30 mg oxycodone pills manufactured by opioid maker

9

Mallinckrodt.[4]  The director of the Georgia Drugs and Narcotics Agency observed that visitors to Georgia pill mills come from as far away as Arizona and Nebraska.[5]  As another complaint in the MDL describes, one drug ring moved OxyContin up the West Coast from Southern California through Oregon and Washington.[6]  In a motion filed last week, Plaintiffs provided a late-disclosed "Pillbillies" email from AmerisourceBergen that reflected its own knowledge of pill migration.  Motion to Compel Defendant ABDC to Produce Discovery Improperly Withheld at 3-4 (ECF No. 3300) (May 21, 2020) (quoting "Pillbillies" Parody, ABDCMDL00569571).  Dispensing data will provide further evidence of what Defendants knew about the filling of opioid prescriptions from out-of-state prescribers and for out-of-state patients.

Dispensing data is relevant not only to claims against pharmacies, but also the other participants in the opioid supply chain, who relied on that data in their own businesses.  Manufacturers and wholesalers contracted with customers such as hospitals and pharmacies to process product chargebacks and rebates using sales data.  In addition, defendants used dispensing data to assess their own sales, inform their marketing, calculate sales representative performance and bonuses, process Savings Cards, and set and monitor pill pricing.

---

[4] *See, e.g.,* Scott Higham, Sari Horwitz, & Steven Rich, *76 billion opioid pills: Newly released federal data unmasks the epidemic*, Washington Post (July 16, 2019), https://www.washingtonpost.com/investigations/76-billion-opioid-pills-newly-released-federal-data-unmasks-the-epidemic/2019/07/16/5f29fd62-a73e-11e9-86dd-d7f0e60391e9_story.html; *See also* Andrew Welsh-Huggins, *States Take on 'Tourists' Trafficking Painkillers,* Republican Herald (July 9, 2012).  Note that Interstate 75 is also called as the Oxy Express; for example, the Peabody Award-winning documentary by that name focuses on the transport of prescription opioids along I-75.  https://www.youtube.com/watch?v=wGZEvXNqzkM.

[5] The OxyContin Express, YouTube (Feb. 26, 2014), http://www.youtube.com/watch?v=wGZEvXNqzkM.  *See also*, *e.g.,* Third Amended Complaint and Jury Demand, *County of Summit, Ohio et al. v. Purdue Pharma, L.P. et al.,* MDL 2804 Doc. 1466, ¶ 668.

[6] Complaint, *City of Everett v. Purdue Pharma, L.P. et al.*, No. 17-2-00469-31 ¶¶ 41-60 (Sup Ct. Snohomish Cnty. Wash. Jan. 19, 2017)

Simply put, a relevance and proportionality analysis based on the dispensing and distribution claims that reside *throughout* this MDL docket compels the conclusion that nationwide dispensing data should be subject to discovery.[7]

### 2. Nationwide Dispensing Data Would Aid Global Settlement Discussions

National dispensing data also will facilitate settlement discussions between Plaintiffs and the Pharmacy Defendants by providing further information on who dispensed what, where, in what volumes, and under what (if any) diversion-prevention protocols. The *Manual* recognizes that, in complex litigation, "[t]he judge can . . . *facilitate negotiations . . . by targeting discovery at information needed for settlement*." Annotated MCL Fourth, § 13.11, at 172 (emphasis added). It further notes that "a judge can facilitate settlement negotiations by *establishing a system to collect information about past, pending, and likely future claims*." *Id.* § 22.91, at 538 (footnote omitted; emphasis added). Courts have likewise long recognized that one of the very purposes for allowing liberal discovery is in aid of settlement of cases. *See*, *e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, *or the settlement*, of litigated disputes.") (emphasis added); *Daniels v. City of Sioux City*, 294 F.R.D. 509, 512 (N.D. Iowa 2013) ("Discovery Rules are to be broadly and liberally construed" in order to, among other things, "promote settlement") (citing cases; internal quotation marks omitted); *U.S. EEOC v. Giumarra Vineyards Corp.*, No. 1:09-CV-02255-AWI, 2012 WL 393333, at *3 (E.D. Cal. Feb. 6, 2012) ("Discovery of discoverable information for use in promoting compromise and settlement is legitimate and often productive."). In fact, the PEC and Pharmacy Defendants have agreed already to, and begun participating in, a mediation before

---

[7] As set forth in the proposed Discovery Requests, the PEC is prepared to meet and confer with the Pharmacy Defendants on appropriate privacy protections for the requested data. Notably, when similar issues initially arose with respect to the ARCOS data, the PEC successfully worked out a solution.

Judge (Ret.) Jay C. Gandhi; discovery of nationwide dispensing data will prove invaluable to this mediation process.  Thus, furtherance of comprehensive settlement discussions is an additional reason for the Court to permit discovery of nationwide dispensing data.

## CONCLUSION

For the foregoing reasons, the Court should modify the stay of MDL-wide discovery in CMO-1 to permit Plaintiffs to serve the discovery requests annexed to the instant motion, seeking dispensing discovery from the Pharmacy Defendants on a nationwide basis.

Dated: May 24, 2020        Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

/s/Joseph F. Rice
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

/s/ Paul T. Farrell, Jr.
Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth St., 3rd Floor
Huntington, WV  25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

/s/Peter H. Weinberger
Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of May, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

*/s/Peter H. Weinberger*
Peter H. Weinberger

*Plaintiffs' Liaison Counsel*
