# EXHIBIT E

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

IN RE: NATIONAL PRESCRIPTION
OPIATE LITIGATION

THIS DOCUMENT RELATES TO:

*The County of Summit, Ohio, et al. v.
Purdue Pharma L.P., et al.*,
Case No. 18-op-45090

*The County of Cuyahoga, Ohio, et al. v.
Purdue Pharma L.P., et al.*,
Case No. 17-op-45004

MDL No. 2804

Case No. 1:17-md-2804

Judge Dan Aaron Polster

## WALGREENS' NOTICE IN RESPONSE TO
## THE COURT'S APRIL 29, 2020 ORDER

Defendant Walgreen Co. ("Walgreens") submits this notice in response to the Court's

Order of April 29, 2020 (Doc. # 3280) regarding potential testimony by pharmacists at trial.[1]

Walgreens is a *chain of pharmacies*, with over 50 stores just in Cuyahoga and Summit

Counties.  The theory of Plaintiffs' distribution claims is that *orders placed by those pharmacie*s

should not have been shipped by Walgreens distribution centers, but, as a consequence of those

*shipments to Walgreens pharmacies*, Walgreens is allegedly responsible for the widespread

diversion of prescription opioids *through those pharmacies* into local communities.  It should

come as no surprise that such a pharmacy chain's defense at trial may include testimony by

pharmacists themselves, including the pharmacists who manage and staff some of the

pharmacies at issue in these cases.

---

[1] The Order also requires each Pharmacy Defendant to submit a statement regarding how related
corporate entities should be referred to at trial and on the verdict form.  As Plaintiffs have
dismissed their claims against all Walgreens-related entities other than Walgreen Co., *see* Doc
# 2754, this part of the Court's order does not apply to Walgreens.

**Introduction**

The Court's Order directs that:

… Defendants shall submit a notice identifying a small number of pharmacist witnesses whom they actually intend to call at trial. Defendants shall provide each pharmacist's name, store number, period of employment, and a brief description of their testimony. Defendants shall also explain: why that testimony is necessary; whether other, non-pharmacist witnesses can supply some or all of that testimony; and why the pharmacist's testimony is appropriate if that pharmacist was not involved in suspicious order due diligence or SOMS review when it occurred. Finally, Defendants shall explain the extent to which plaintiffs should be allowed to call pharmacist witnesses, and why.

As a preliminary matter, Walgreens objects to the requirement that it provide additional or different information about its trial witnesses and on a different schedule than other parties and before Plaintiffs have provided even a witness list.  Walgreens further objects to the extent that the Court's order purports to require Walgreens to disclose attorney work product and to make decisions about the presentation of its defense case in advance of any relevant pretrial deadlines for witness lists, in advance of Plaintiffs' pretrial disclosures, and in advance of Plaintiffs' presentation of their cases.

Numerous Walgreens employees who have been disclosed in this matter and who may testify at trial are not practicing pharmacists but have pharmacy degrees, may have practiced pharmacy in the past, and may continue to be licensed as pharmacists.  Walgreens does not understand the Court's order to apply to such employees who do not currently work as practicing pharmacists and who have other positions at the company.  Walgreens provides the disclosures below regarding only potential witnesses who currently work as practicing pharmacists at Walgreens pharmacies.

Walgreens also notes that the Court has not yet ruled on whether Plaintiffs at the Track 1B trial will be permitted to use dispensing data or other dispensing-related information that was

subject to discovery only following the Track 1A proceedings in connection with dispensing claims that are no longer part of Track 1B.  As the Court is aware, Walgreens objects to the use of such dispensing data and information in a Track 1B trial of only distribution claims, as it also objects to further depositions or other discovery of witnesses disclosed during Track 1A.  However, if the Court overrules Walgreens' objections and allows Plaintiffs to make use of dispensing data and other dispensing evidence at the Track 1B trial, Walgreens may, depending on how Plaintiffs use that evidence, need to present additional and more extensive testimony by a larger number of pharmacists (as well as other rebuttal evidence).  Accordingly, Walgreens provides the disclosures below based on the assumption that the factual record for Plaintiffs' distribution claims at the Track 1B trial will be essentially the same as the factual record for the same claims at the Track 1A trial and does not include dispensing data or other dispensing-related information produced only later when dispensing claims were still pending in Track 1B.

Subject to those objections and clarifications, Walgreens makes the following disclosures in response to the Order.

### A.    Practicing Pharmacists Who May Testify at Trial

Walgreens cannot presently commit that there are any pharmacists whom it "actually intend[s] to call at trial."  Walgreens' decisions about which witnesses (if any) to call during its case in chief will necessarily depend on Plaintiffs' presentations of their cases at trial.  In some scenarios, Walgreens might elect not to call any witnesses or might elect to call only other witnesses but not practicing pharmacists.  In other scenarios, Walgreens' only fact witnesses at trial might be practicing pharmacists.  These are decisions that Walgreens and its counsel can make only based on their judgment at the conclusion of Plaintiffs' evidence.

Subject to that explanation, Walgreens identifies the following practicing pharmacists as those that Walgreens is most likely to call at trial:

1. Nathan Goik (Walgreens employee since May 2006; Store #3276, May 2006-Nov. 2006; Store #4776, Nov. 2006-Aug. 2007; Store #3741, Aug. 2007-May 2018; Store #3314, May 2018-present).

2. Debra Lieske (Walgreens employee since Dec. 1997; Store #3314, Dec. 1997-Mar. 1998; Store #3308, Mar. 1998-May 2019; Store #5431, May 2019-present).

3. Natalie Pancoe (Walgreens employee since Dec. 2008; Store #11143, Dec. 2008-April 2009; Store #3279, April 2009-May 2012; Store #4101, June 2012-July 2012; Store #3279, July 2012-Sept. 2018; Store #4776, Sept. 2018-Oct. 2018; Store #11143, Oct. 2019-present).

While Walgreens does not presently anticipate calling other pharmacists at trial, it reserves the right to call any pharmacist it disclosed in its Supplemental Response to Plaintiffs' Interrogatory No. 15 (Feb. 21, 2020), as necessary to rebut specific evidence offered by Plaintiffs regarding, for example, stores where those pharmacists worked, orders that their stores placed, or prescriptions filled at their stores.

**B.     Potential Testimony by Practicing Pharmacists**

After offering standard background testimony about themselves, Walgreens anticipates that practicing pharmacists may be asked questions on any of the following subjects:

1. To help jurors understand the actual work of a local pharmacist; the role of Walgreens and its pharmacists in the delivery of healthcare in Cuyahoga and Summit Counties; and their role in local efforts to address the opioids crisis and the criminal diversion of prescription opioids.

4

2. To help jurors understand the role of the pharmaceutical distribution system in the practice of pharmacy and the delivery of healthcare; the use of ordering and distribution systems by Walgreens pharmacists in Cuyahoga and Summit Counties; the generation and placement of orders for Walgreens pharmacies in Cuyahoga and Summit Counties; and, potentially, particular orders identified by Plaintiffs as "suspicious."

While Walgreens does not anticipate offering affirmative testimony by practicing pharmacists on other subjects, it may also ask practicing pharmacists to offer testimony on additional subjects to rebut evidence or arguments offered by Plaintiffs and their witnesses, such evidence or arguments intended to suggest that Walgreens pharmacists in Cuyahoga and Summit Counties filled prescriptions that should not have been filled; that Walgreens pharmacists or pharmacies in Cuyahoga and Summit Counties were a source of diverted opioids or were otherwise involved in the diversion of prescription opioids; that local Walgreens pharmacists tolerated or encouraged diversion to earn bonuses; that Walgreens pharmacies were involved in a "conspiracy" related to Plaintiffs' claims; or that Walgreens pharmacists in Cuyahoga and Summit Counties exploited what Plaintiffs claim are "loopholes" or weaknesses in the company's suspicious order monitoring programs.

To be clear, Walgreens does not currently intend for any practicing pharmacist called at the November Track 1B trial to offer testimony about dispensing data or about any particular prescription except with reference to such evidence offered by Plaintiffs or reflected in Plaintiffs' own documents.

C.      The Court's Other Questions

Depending on how Plaintiffs' cases come in, Walgreens believes that the testimony described above may be required to provide necessary context for Plaintiffs' distribution-based claims.  No other witnesses could provide such testimony with respect to the actual circumstances in Cuyahoga and Summit Counties.

The jury cannot consider alleged failures by a distribution center to identify and halt the filling of supposedly "suspicious" orders placed by a pharmacy in a vacuum.  Rather, in a case involving claims of serious harms allegedly flowing from the fulfillment of "suspicious" orders, Walgreens is entitled to present—and the jury is entitled to hear—evidence about how and why those allegedly problematic orders were placed to begin with, about what happens after an order is delivered to the store that placed the order, and about the real people who Plaintiffs claim are at the center of the opioids crisis in Cuyahoga and Summit Counties.  None of this depends on whether an individual pharmacist was also involved with suspicious order monitoring at a Walgreens distribution center.[2]

In addition, depending on what evidence Plaintiffs present, jurors may also need to consider rebuttal evidence about whether specific orders were *actually* problematic (and not just flagged as "suspicious" according to an expert's post-hoc, made-for-litigation algorithm unconnected to any actual facts at the ordering pharmacy) and whether the medications that were part of that order *actually* were diverted into the wrong hands (rather than dispensed to patients presenting valid prescriptions written by licensed medical professionals).  Only practicing

---

[2] Moreover, Plaintiffs' experts will testify that distributors of controlled substances have an obligation, as part of their suspicious order monitoring programs, to "know your customer."  The customers relevant to these cases, of course, are the Walgreens pharmacies and their pharmacists, who were responsible for the orders in question, who received the shipments, and who then dispensed the medications to patients presenting prescriptions.

pharmacists who understand the real-life circumstances surrounding an order and the dispensing of the medications contained in the order can provide such testimony.

Finally, Plaintiffs' nuisance claim is for an intentional tort, further making relevant the testimony of the Walgreens employees supposedly responsible for the orders of prescription opioids that, Plaintiffs say, caused the opioids crisis in northern Ohio.

As the Court's last question, Walgreens expresses no view whether, as an entirely general matter, Plaintiffs should be allowed to call pharmacists to testify in Plaintiffs' own cases. Assuming a pharmacist is within the Court's subpoena power, the permissibility of calling the witness would depend on the same considerations that apply to any other fact witness, including, for example, the proposed subject matter of the testimony, the needs of the case, whether the witness was properly disclosed, and the burden on the witness.  Those questions cannot be answered in the abstract.

Dated:  May 19, 2020                              Respectfully submitted,


                                                  /s/ Kaspar J. Stoffelmayr
                                                  Kaspar J. Stoffelmayr
                                                  Brian C. Swanson
                                                  Katherine M. Swift
                                                  Sharon Desh
                                                  Sten A. Jernudd
                                                  BARTLIT BECK LLP
                                                  54 West Hubbard Street
                                                  Chicago, IL 60654
                                                  (312) 494-4400
                                                  kaspar.stoffelmayr@bartlitbeck.com
                                                  brian.swanson@bartlitbeck.com
                                                  kate.swift@bartlitbeck.com
                                                  sharon.desh@bartlitbeck.com
                                                  sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
(303) 592-3100
alex.harris@bartlitbeck.com

*Counsel for Walgreen Co.*