# EXHIBIT K



Eric R. Delinsky
PARTNER
Zuckerman Spaeder LLP
edelinsky@zuckerman.com
202.778.1831

October 12, 2018

**VIA E-MAIL**

David R. Cohen
24400 Chagrin Blvd.
Suite 300
Cleveland, OH 44122
David@SpecialMaster.Law

Re:  *In re: National Prescription Opiate Litigation*, MDL 2804
Response to Plaintiffs' 10/8/18 Letter on Dispensing Information

Dear Special Master Cohen:

I write on behalf of CVS Indiana, L.L.C. and CVS Rx Services, Inc. (together, the "CVS Distributors") in response to Mark Pifko's October 8, 2018 letter requesting that you order defendants to produce dispensing information. Other than with regard to the categories of information we already have agreed to produce, we oppose this request. It is not authorized by CMO One. It is not proportional to the needs of the case or to the schedule. And at this stage of the discovery period, it would impose undue burden.

**A.  Dispensing Information the CVS Distributors Are Producing**

At the outset, we note that the CVS Distributors already have agreed to produce certain dispensing information. After lengthy discussions with Plaintiffs, we have agreed to produce this information even though Plaintiffs sued two CVS distribution centers rather than any CVS pharmacies and even though Plaintiffs assert claims based on distributor conduct (allegedly shipping suspicious orders) rather than pharmacy conduct. Indeed, as Plaintiffs stated in opposition to Defendants' motions to dismiss the Summit County complaint, "Plaintiffs do not allege violations of statutes or regulations applicable specifically to retailers who sell opioids." Doc. No. 654 at 75 n.47. In keeping with this, one plaintiff confirmed this week that it has "specifically disclaimed any claim against the National Retail Pharmacy Defendants based on their retail dispensing [of] opioids." Doc. No. 1031 at 16 n.10.

The specific dispensing information we nevertheless have agreed to produce is as follows:

- Dispensing-related documents contained in suspicious order monitoring files (as well as Rule 30(b)(6) and fact testimony on this subject).

- Relevant policies and procedures related to dispensing controlled substances (as well as Rule 30(b)(6) testimony on this subject).

- Compensation policies for pharmacists (as well as Rule 30(b)(6) testimony on this subject).

In addition, by producing our transactional data for shipments of hydrocodone combination products (the only relevant opioids the CVS Distributors distributed), we have produced to plaintiffs:

- Data showing the volume of hydrocodone combination products received by each CVS pharmacy in the Track One jurisdictions from the CVS Distributors on an order-by-order basis.

Given that Plaintiffs' claims are brought against two CVS *distribution* centers that allegedly violated obligations of *distributors* in *distributing* hydrocodone combination products into the Track One jurisdictions, the amount of dispensing-related information the CVS Distributors already have agreed to produce is proportional to Plaintiffs' distribution claims, to the tight schedule for completion of discovery, and to the short amount of time allotted for trial.

### B. Prior Productions under CMO One

Plaintiffs now seek, as well, "prior productions" under CMO One related to "alleged violations of dispensing laws." 10/8/18 Pifko Letter at 1. But the "prior productions" provision of CMO One has no application to dispensing matters. By its plain terms, it applies only to prior productions "involving the *marketing* and *distribution* of opioids." CMO One ¶ 9(k)(ii) (emphasis added). Dispensing is categorically excluded. The provision does not require production of the materials Plaintiffs seek.

Notably, Plaintiffs themselves proposed the "prior productions" provision. *See* Ex. A at 5-6 (¶ 20). Had they wished to include dispensing, they could have proposed as much. But they

elected not to, presumably because the claims brought by Plaintiffs are based on distribution, not dispensing. Plaintiffs cannot now indirectly ask the Court to rewrite the provision.[1]

While Plaintiffs' argument for prior pharmacy productions is based on CMO One, such materials are not discoverable on any other ground either. The pharmacy-related proceedings on which Plaintiffs now appear to seek discovery are not relevant and proportional to the Track One cases. The prior dispensing matter against CVS that Plaintiffs discuss in their October 18 letter does not concern any pharmacy in a Track One jurisdiction (or even in Ohio). It concerns the record-keeping (not dispensing) of nine pharmacies in California. Likewise, none of the other pharmacy matters listed in Plaintiffs' respective complaints was brought in Ohio or involved enforcement activity by any DEA office in Ohio or other government agency in Ohio. A prior proceeding concerning the particular conduct of a particular pharmacy in some other jurisdiction is not relevant to whether the CVS Distributors met their alleged obligations in distributing hydrocodone combination products to different, separately-licensed CVS pharmacies in Cuyahoga and Summit Counties.

Moreover, to require such discovery of prior dispensing productions *now*, with one month left in an already-truncated document discovery period with expanding custodian lists and a temporal scope dating back 12 years, would impose undue burden. This information is not contained in a single repository, or even exclusively within CVS, and the collection of such material will involve a significant effort.

In this regard, we note that CVS first apprised Plaintiffs four months ago (on June 11) of its position on prior dispensing productions and CMO One's plain terms. Yet Plaintiffs have not brought this issue to you until now.

### C. Other Dispensing Information

It is unclear whether Plaintiffs seek other dispensing information as well. In the first paragraph of their letter, their request is limited to two categories of documents, both of which are addressed above (policies and prior productions). Yet elsewhere, Plaintiffs speak much more expansively, requesting "responsive documents concerning 'dispensing,' *regardless of whether it is specifically tied to their role as distributors*." 10/8/18 Pifko Letter at 3 (emphasis added). In doing so, they do not identify any particular documents they seek. Nor do they identify any particular requests to which such documents would be responsive. This itself is grounds to deny their request.

---

[1] Plaintiffs proposed requiring *other* forms of discovery on dispensing in CMO One. *See* Ex. A at ¶ 22 (proposing that Defendants identify the number of opioid prescriptions dispensed by year, opioid, and National Drug Code). The Court rejected this proposal.

Additionally, if Plaintiffs are seeking at this hour unlimited discovery of dispensing information with no "tie" to the distributor conduct on which they base their claims, their request must be denied as overly broad, not proportional, and unduly burdensome. This is especially so given there is only one month left for document discovery and the heavy discovery burden already on the CVS Distributors. A broad swath of new pharmacy/dispensing discovery untied to Plaintiffs' distributor claims would require an extension of the schedule.

For the reasons set forth above, Plaintiffs' request should be denied.

Sincerely,

Eric R. Delinsky

cc: Defendants' counsel (xALLDEFENDANTS-MDL2804-Service@arnoldporter.com)
Plaintiffs' counsel (MDL2804discovery@motleyrice.com)

# EXHIBIT A

**From:** Paul Hanly [mailto:phanly@simmonsfirm.com]
**Sent:** Friday, March 16, 2018 11:59 AM
**To:** Cathy Yanni <cathy@cathyyanni.com>; David@SpecialMaster.Law; Francis E. McGovern <mcgovern@law.duke.edu>
**Cc:** opioid-mdl-leadership-ml@mail-list.com; Mark Cheffo <markcheffo@quinnemanuel.com>; Mainigi, Enu <EMainigi@wc.com>; Carole Rendon <crendon@bakerlaw.com>
**Subject:** Draft CMO

Dear Special Masters,

I attach Plaintiffs' Proposed Case Management Order No. 1. We have not received a proposed case management order authorized by all defendants, although Mr. Cheffo sent us a proposed CMO on behalf of certain unnamed manufacturer-defendants. Consequently, this is not a joint proposal nor the result of a meet-and-confer process with the defendants.


Respectfully,
Hanly, Rice and Farrell
Co-Lead Counsel


Paul J. Hanly, Jr.

Chairman, Complex Litigation
Simmons Hanly Conroy LLC
112 Madison Avenue | New York, NY 10016
Direct: 212.784.6401 | Main: 212.784.6400 | Fax: 212.213.5949
phanly@simmonsfirm.com | www.simmonsfirm.com

DRAFT AS OF: March 16, 2018

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br>All Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## [PLAINTIFFS' PROPOSED] CASE MANAGEMENT ORDER NO. 1

Considering the need for organization of this complex litigation, as well as the suggestions of counsel at a conference on March 6, 2018, and the instructions of the Manual for Complex Litigation, Fourth, §§ 22.6 and 35, the Court adopts the following Case Management Order No. 1.

It is hereby ORDERED as follows:

### I. APPLICABILITY OF ORDER

1. This Order shall govern: (a) all cases transferred to this Court by the Judicial Panel on Multidistrict Litigation, pursuant to its Order of December 5, 2017; (b) all tag-along actions subsequently transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to Rule 7.4 of the Rules of Procedure of that Panel; and (c) all related cases originally filed in this Court or transferred or removed to this Court, that are within the subject matter of this MDL and shall be deemed filed in each of these matters.

2. This Order does not supersede prior Orders issued in this proceeding, which shall remain in effect except to the extent inconsistent with the provisions herein.

### II. BELLWETHER PROCESS

3. In order to expeditiously address legal issues and prepare for one or more bellwether trials, this Court adopts a bellwether process, as set forth herein.

4. This Court hereby designates a bellwether pool of cases from which

DRAFT AS OF: March 16, 2018

bellwether trial cases will eventually be selected.  At this time, the bellwether pool shall consist of: (a) all cases originally filed in courts within the Northern and Southern Districts of Ohio as of April 16, 2018; (b) *City of Chicago v. Purdue Pharma L.P., et al.*, 1:17-op-45169-DAP; (c) *City of Chicago v. Cardinal Health, Inc., et al.*, 18-cv-01639 (N.D. Ill.); (d) **Cite for State of Alabama case**; (e) *Cabell County [W. Va.] Commission vs. AmerisourceBergen Drug Corporation, et al,* 17-op-45053; and (f) *The City of Huntington [W. Va.] v. AmerisourceBergen Drug Corporation, et al.,* 17-op-45054 ("Bellwether Pool Cases"). (Together, *City of Chicago v. Purdue Pharma L.P.* and *City of Chicago v. Cardinal Health, Inc.* are sometimes referred to as "the *City of Chicago* Cases.")  Other bellwether pool cases may be designated from time to time by this Court in addition to, or in place of, any of the Bellwether Pool Cases and it is expressly contemplated that the bellwether process described herein will be extended to additional pools of cases as needed.

5. As described below, motion practice and discovery shall proceed with respect to the Bellwether Pool Cases to prepare such cases for trial.

### III. ALL OTHER CASES STAYED

6. All cases not selected as Bellwether Pool Cases are hereby stayed and no discovery or motion practice shall proceed in such cases, except as otherwise specifically provided below.

7. Notwithstanding the stay of all such cases, plaintiffs shall complete service of summonses and complaints in all cases, including cases not selected as Bellwether Pool Cases.  The deadline for achieving service of summons and complaint of any filed case included in this MDL remains extended until May 18, 2018.

8. The Court previously directed plaintiffs and all foreign defendants to meet and confer in order to reach an agreement allowing simple and inexpensive service of summonses and complaints.  In the absence of any such agreement, the Court now orders each such defendant to designate counsel to accept service, with reservation of jurisdictional objections if necessary, by April 15, 2018.

DRAFT AS OF: March 16, 2018

## IV. PLEADINGS AND MOTION PRACTICE TO ADDRESS CORE LEGAL ISSUES

9. The Plaintiffs' Executive Committee shall prepare a Model Ohio Complaint and a Model West Virginia Complaint to be served on all Defendants and filed with the Court no later than April 16, 2018.  The Model Ohio Complaint, the Model West Virginia Complaint, and the current complaints in the *State of Alabama* and *City of Chicago v. Cardinal Health, Inc.* shall serve as the basis for motion practice concerning threshold legal issues for all Bellwether Pool Cases.

10. The deadline for responsive pleadings for the Bellwether Pool Cases shall be May 7, 2018.  Responsive pleadings filed on that date shall be limited to:  (a) Answers on behalf of each defendant to the Model Ohio Complaint, the Model West Virginia Complaint, the current complaints in the *City of Chicago* Cases (to the extent not already filed), and the current complaint in the *State of Alabama* case; (b) motions challenging personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); and (c) motions pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal of one or more claims in the Model Ohio Complaint, the Model West Virginia Complaint, the current complaint in *City of Chicago v. Cardinal Health, Inc.*, or the current complaint in *State of Alabama,* for failure to state a claim, limited to the specific issues as set forth below. No other motions shall be entertained at this time.

11. Defendants who elect to file a Rule 12(b)(2) motion challenging personal jurisdiction in any of the Bellwether Pool Cases need not file an Answer in that case.  All other Defendants shall file an Answer to the Model Ohio Complaint, the Model West Virginia Complaint, the Complaint in *State of Alabama*, and, to the extent they have not already done to, the Complaints in the *City of Chicago* Cases, regardless of whether they also file a Rule 12(b)(6) motion as described below.

12. Motions to dismiss under Rule 12(b)(6) filed on May 7, 2018 shall be limited to the following six legal issues:  (i) whether the federal Food, Drug, and Cosmetics Act preempts deceptive marketing causes of action under state law;

3

DRAFT AS OF: March 16, 2018

(ii) whether the approved labeling for prescription opioid medications precludes, as a matter of law, a determination that manufacturing defendants' deceptive marketing of those products misled prescribing physicians and consumers; (iii) whether, in Ohio, West Virginia, and Alabama, the role of doctors as "learned intermediaries" in prescribing opioids precludes, as a matter of law, any determination that manufacturing defendants' deceptive marketing practices were the legal cause of the over-prescription of such medications; (iv) whether municipalities in Ohio, Illinois, and West Virginia may assert claims against opioid manufacturers and distributors for failure to report suspicious orders for the drugs either as common law negligence or common law or statutory nuisance, or under state controlled substances acts; (v) whether, as a matter of state law in Ohio, West Virginia, Illinois, and Alabama the "free public services doctrine" precludes municipalities from recovering the costs incurred in combatting the opioid epidemic and in treating victims of opioid addiction; and (vi) whether, as a matter of state law in Ohio, Illinois, West Virginia, and Alabama, plaintiffs' allegations sufficiently allege a violation of a public right under the law of public nuisance.

13. To the extent that any Defendant, whether it has filed an Answer or a Rule 12(b)(2) motion, intends to raise any of the six specified issues as grounds for dismissal of any Bellwether Pool Case, such motion shall be made by the May 7 deadline. All other issues that could otherwise be raised in a Rule 12 motion are preserved as to any particular defendant to the extent such issues are raised in that defendant's Answer. Defendants are encouraged to submit joint briefing on the six issues to the extent possible.

14. Plaintiffs in Bellwether Pool Cases ("Bellwether Plaintiffs") shall have 28 days from the date of filing of the motions to respond to the limited-issue Rule 12(b)(6) motions. Defendants will have 14 days from the date the Bellwether Plaintiffs file their briefs to file reply briefs on the limited-issue Rule 12(b)(6) motions.

15. Oral argument on the Rule 12(b)(6) motions is calendared for

Draft as of: March 16, 2018

_____.  The Court will notify the parties seven days in advance of the oral argument date whether the Court intends to hear argument.

16. Briefing, argument, and decision on all of the Rule 12(b)(2) motions described herein shall be deferred until after the completion of jurisdictional discovery.

17. Any third-party complaints or cross-claims by Defendants must be filed by May 25, 2018.

## V. Discovery

18. Discovery shall proceed in the Bellwether Pool Cases only. As ordered above, all discovery in cases not selected as Bellwether Pool Cases, including Initial Disclosures pursuant to Fed. R. Civ. P. 26(a), is stayed until further notice.

19. Upon entry of this Order, all documents, including electronically-stored information ("ESI"), that were: (a) previously produced by any Defendant in *City of Chicago v. Purdue Pharma L.P., et al.* Case No. 14-cv-04361 (N.D. Ill.); and/or (b) previously produced by any Defendant or by Abbott Laboratories to the law firms of Hanly & Conroy LLP and/or Simmons Cooper LLC in the years 2003 to 2007, shall be deemed produced to all Plaintiffs in MDL 2804 and shall be made immediately available to the Plaintiffs' Executive Committee by any parties or counsel in possession of same, at no cost to the party or counsel in possession. All transcripts of depositions taken in the above actions, and all exhibits thereto, shall similarly be deemed to have been produced to all Plaintiffs in this MDL and shall be made immediately available to the Plaintiffs' Executive Committee by any parties or counsel in possession of same, at no cost to the party or counsel in possession. Unless and until other arrangements are made by this Court regarding these specific materials, and in the interests of expediting discovery, Plaintiffs in MDL 2804 will be subject to any pre-existing Protective Orders governing this material.

20. Within two weeks of the date of the entry of this Order, Defendants shall produce to the Plaintiffs' Executive Committee all documents produced by any

Draft as of: March 16, 2018

Defendant and the transcripts of any depositions or statements taken in (a) any other civil litigation related to the marketing or distribution of opioids not deemed produced in accordance with the provisions above pertaining to previously-produced documents; and (b) any civil investigation by federal (including Congressional), state, or local government entities related to the marketing or distribution of opioids. Unless and until other arrangements are made by this Court regarding these specific materials, and in the interests of expediting discovery, Plaintiffs in MDL 2804 will be subject to any pre-existing Protective Orders governing this material.

21. Initial Disclosures pursuant to Fed. R. Civ. P. 26(a) for all Defendants and Bellwether Plaintiffs shall be served upon Plaintiffs' and Defendants' Co-Lead Counsel by May 15, 2018, unless a different date is indicated below.

22. As part of, or in addition to, the information specified in Fed. R. Civ. P. 26(a), Defendants' Initial Disclosures shall include: (a) insurance policies and/or coverage charts; (b) indemnity agreements; (c) the name and, if known, the address and telephone number of each individual likely to have discoverable information-along with the subjects of that information-that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; (d) a copy-or a description by category and location-of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment; (e) organizational charts in effect from January 2012 through the present (showing both positions and full names); (f) document and ESI retention and destruction policies from 1993 through the present, or, if later, the earliest date on which the Defendant began to manufacture, market, or distribute opioids; (g) the location(s) of documents and electronically-stored information described in the Initial Disclosures but not being produced with such disclosures; and (h) documents and information identifying the total number of, and revenue from, prescriptions for Opioids that were

DRAFT AS OF: March 16, 2018

dispensed in the United States since 1999, by year and by Opioid, identified by National Drug Code.

23. As part of, or in addition to, the information specified in Fed. R. Civ. P. 26(a), Bellwether Plaintiffs' Initial Disclosures, to the extent not previously produced, shall include: (a) all policies and procedures related to their coverage of opioids; (b) a summary of all damages claimed by plaintiffs; (c) the name and, if known, the address and telephone number of each individual likely to have discoverable information-along with the subjects of that information-that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; (d) a copy-or a description by category and location-of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment; (e) organizational charts in effect from January 2012 through the present (showing both positions and full names); (f) document and ESI retention and destruction policies from 1993 through the present; (g) the location(s) of documents and electronically-stored information described in the Initial Disclosures but not being produced with such disclosures; and (h) documents and information identifying the steps the disclosing party took to mitigate the impact of opioids in their jurisdiction.

24. For each individual identified by any party under Rule 26(a)(1)(A)(i), that party's Initial Disclosures shall include the area of knowledge of each such individual together with relevant information as to each person's position within or relationship to the Defendant or Bellwether Plaintiff (or other party or entity); the areas of responsibility and /or authority within the Defendant or Bellwether Plaintiff (or other party or entity); his or her immediate supervisor, as well as those employees whom they supervise, manage, or direct; the area of knowledge and expertise of each such witness.

25. Privilege logs reflecting all documents redacted and/or withheld shall be served contemporaneously no later than ten days after the date on which Initial

DRAFT AS OF: March 16, 2018

Disclosures are exchanged.

26. Electronically-stored documents or other data will be produced in native format, or other reasonably useable form. The parties will work cooperatively to agree on an acceptable format. Hard copy paper documents will be produced in searchable .pdfs or .tiffs with Summation and/or Concordance load files.

27. Following the exchange of Initial Disclosures, Defendants and the PEC may serve document requests and deposition notices with respect to the Bellwether Pool Cases. Such discovery may include jurisdictional discovery to the extent that any Rule 12(b)(2) motion has been filed.

28. All fact discovery in the Bellwether Pool Cases shall be completed by October 1, 2018.

29. Discovery concerning experts shall be deferred until after the close of fact discovery and the selection of Bellwether Trial Cases, as set forth below.

30. Should Defendants object to any discovery requests propounded to them based upon claims of undue burden or that responsive information is not reasonably accessible, Bellwether Plaintiffs may seek discovery regarding such claims.

**VI. SELECTION OF TRIAL CASES AND PRETRIAL PROCEEDINGS**

31. Upon completion of fact (that is, non-expert) discovery, the parties and the Court shall devise a procedure for the selection of one or more cases from among the Bellwether Pool Cases to be Bellwether Trial Cases. The Court may schedule briefing and oral argument on any pending Rule 12(b)(2) motion prior to selection of Bellwether Trial Cases.

32. Prior to the selection of the Bellwether Trial Cases, the Court shall set a schedule that provides for: (a) final amendment of the pleadings in each Bellwether Trial Case; (b) exchange of expert disclosures, expert reports and expert rebuttal reports with respect to the Bellwether Trial Cases; (c) depositions of experts; (d) *Daubert* motions; (e) dispositive motions; (f) the preparation of pretrial orders; and (g) a trial

8

date. Dispositive motions to be addressed at that time shall include all Rule 12(b)(2) motions in any Bellwether Trial Case that have not already been decided; all Rule 12(b)(6) motions in the Bellwether Trial Cases not addressed in the limited-issue Rule 12(b)(6) motions provided for above; and all Rule 56 motions in the Bellwether Trial Cases. The schedule shall include a trial date and shall set for trial on or after March 11, 2019 one or more of the Bellwether Trial Cases.

## VII. REMAND ISSUES

33. Notwithstanding the stay in all cases other than Bellwether Pool Cases, the Court will consider Motions to Remand at this time in (a) cases filed by state attorneys general; and (b) cases involving allegations of fraudulent misjoinder. In such cases, plaintiffs may file Motions to Remand by April 6, 2018. Memoranda in Opposition to any remand motions shall be filed by April 16, 2018. Reply briefs shall be filed by April 23, 2018. The Court will set oral argument on such motions on [DATE]. The Court may, *sua sponte*, remand any other cases as it deems appropriate.

## VIII. AUTOMATED RECORDS AND CONSOLIDATED ORDERS SYSTEM/DIVERSION ANALYSIS AND DETECTION SYSTEM ("ARCOS") DATA

34. This Court has separately entered Orders related to the production by the Drug Enforcement Administration ("DEA") and/or the United States Department of Justice of certain ARCOS data. This Order does not supersede or amend those Orders, including the Protective Order entered March 6, 2018, which shall remain in effect.

## IX. STAY OF CLASS ACTION MOTION PRACTICE AND DEADLINES

35. Local Rule 23.1 and motion practice and discovery on class certification issues are hereby stayed for all cases until further order of this Court.

## X. ANTICIPATED ADDITIONAL PRE-TRIAL ORDERS

36. The parties shall, within 15 days of the entry of this Order, meet to confer in good faith to negotiate the following joint and stipulated, to the extent possible, pre-trial orders: (a) Protective Order; (b) Deposition Protocol; (c) Document Production

9

Draft as of: March 16, 2018

Protocol; (d) E-Discovery Protocol; (e) HIPAA Protective Order; and (f) Protocol for the Service of Pleadings and Discovery.  Such proposed orders shall be filed with the Court within 30 days of the date of this Order.

37. In addition, the parties shall meet and confer regarding the desirability and feasibility of an order facilitating direct filing into the MDL.

## XI. Plaintiffs' Filings

38. All pretrial proceedings, including motions, discovery requests or other pretrial requests shall be conducted by the Plaintiffs' Executive Committee and all documents served on Defendants or filed with the Court shall be signed by Co-Lead Counsel.  To the extent that any plaintiff seeks to serve any document on any Defendant or make any filing with this Court other than by or through the Plaintiffs' Executive Committee, the document or filing shall include a statement that it has been submitted to, and rejected by, Co-Lead Counsel.

## XII. Supplementation and Amendments to This Order

39. This Order may be amended by Order of the Court in the interests of justice, expedience or judicial economy on the Court's own motion or, for good cause shown, on motion by the parties.