**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

IN RE: NATIONAL PRESCRIPTION
OPIATE LITIGATION

THIS DOCUMENT RELATES TO:

    *County of Lake, Ohio v. Purdue
    Pharma L.P., et al.*,
    Case No. 18-op-45032

    *County of Trumbull, Ohio v. Purdue
    Pharma, L.P., et al.*,
    Case No. 18-op-45079

MDL No. 2804

Case No. 1:17-md-2804

Judge Dan Aaron Polster

**THE PHARMACY DEFENDANTS' OPPOSITION TO THE TRACK 3
PLAINTIFFS' MOTION TO BIFURCATE CLAIMS,
<u>JOIN CASES, AND STAY PROCEEDINGS</u>[1]**

    Two and one-half years into this MDL, the PEC's case management and bellwether

proposals have taken this litigation down a series of blind alleys—hand-selected bellwether

Plaintiffs who had to drop out when they could not meet discovery obligations; one-off

settlements on the eve of trial that did not even resolve all parties' claims within the bellwether

jurisdiction; and a mid-stream overhaul of the bellwether Plaintiffs' liability theories that

violated the Federal Rules of Civil Procedure.  Plaintiffs' error-laden bifurcation/stay/joinder

proposal for Track 3 promises more of the same.

    Plaintiffs' newest proposal is this:  First, the Court should break the *Lake County* and

*Trumbull County* cases into pieces by ordering two or more separate trials in each case.  The first

trial would be of only a common-law public nuisance claim against only the Pharmacy

---

[1] By appearing for purposes of this response, Defendants do not waive any potential challenges
to the Court's jurisdiction over them in this suit.

Defendants.  It would then be followed by at least one additional trial (and maybe multiple additional trials) at some later date on the other 10 claims against the Pharmacy Defendants (including additional nuisance claims), as well as all 13 claims pending against different combinations of the 40-plus other Defendants.  Second, the Court would stay indefinitely all proceedings in both cases other than those required for the first trials.  And third, the Court would issue an order consolidating the first trials in the *Lake County* and *Trumbull County* cases for determination together in a single proceeding.

Not for nothing, Plaintiffs cite no case in which a court has attempted anything like what they want the Court to do here.  For all of the reasons explained below, the sound exercise of judicial discretion requires denying the PEC's bifurcation/stay/joinder request, which is improper under the law and would undermine the Court's bellwether program.  If additional northern Ohio cases are to leapfrog the thousands of other lawsuits in this MDL waiting for judicial attention— and the Pharmacy Defendants have previously explained why they should not[2]—then the *Lake County* and *Trumbull County* Plaintiffs must litigate their cases as they chose to plead them.[3]

## Argument

I.    **Plaintiffs' Bifurcation and Stay Proposal Would Be Inefficient, Unprecedented, and Legally Impermissible.**

"The party moving for bifurcation bears the burden of demonstrating that concerns of judicial economy and prejudice weigh in favor of granting the motion."  *Valley Ford Truck, Inc.*

---

[2] *See* Doc. # 2907; Doc. # 2933; Doc. #3276.

[3] To be sure, Plaintiffs have over-pleaded their cases in many respects, including the number and types of claims asserted and the parties named.  The solution to that problem is the dismissal of improper or unnecessary claims and parties, either by Court order under the law or by Plaintiffs voluntarily.  But Plaintiffs cannot insist that the Court just ignore this problem of Plaintiffs' own making through a convoluted and improper bifurcation, severance, and stay request.

2

*v. Phoenix Ins. Co.*, 2011 WL 841177, at *1 (N.D. Ohio 2011).  But while Plaintiffs' motion pays lip service to "expedited" proceedings, "convenience," and "efficiency," it is hard to imagine a case management proposal that does more to ensure delay, inconvenience, and inefficiency.

Plaintiffs want to proceed over the next twelve months with fact and expert discovery, motion practice, and a trial of just one cause of action against only a few of the many Defendants they have sued, staying everything else.  Then, after a delay of indefinite length, litigation is supposed to resume with additional rounds of discovery, motion practice, and trials to determine (1) if any member of the initial group of Defendants is liable for the same harm that was the subject of the first trial, but on different legal theories; (2) if members of the much larger group of other Defendants in these cases are liable for the same harm that was the subject of the first trial, on the same and different legal theories; and (3) which defendants may have, as alleged, conspired with which other Defendants to cause the same harm that was the subject of the first trial.  There is nothing expedient, convenient, or efficient about this plan.

Beyond the inefficiencies, Plaintiffs make no effort to address the obvious prejudice to the Pharmacy Defendants from having to defend the same case twice (at least) under different legal theories.  The problem is not, as Plaintiffs suppose, merely the cost of duplicative discovery.  *See* Motion at 6.

While Plaintiffs assure the Court that "[b]ifurcation . . . is commonly used by MDL judges," Motion at 4, they identify no case in which a federal judge has ever approved the use of Rule 42 as Plaintiffs propose here: to allow a plaintiff to take multiple runs at establishing liability for the same harm against the same defendants on different legal theories, as well as against other defendants on overlapping legal theories.  Plaintiffs lead with the Sixth Circuit's

3

*Bendectin* decision.  But that case involved only the bifurcation of certain causation questions, and the court of appeals still called the district court's bifurcation decision the "most troubling" aspect of the case.  *In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir. 1988).  Plaintiffs' proposal does not find any better support from the other cases they cite, where district courts denied bifurcation,[4] where bifurcation was agreed to by the parties,[5] or where the courts bifurcated issues that were easily separated without the promise of seriatim litigation of the same or closely related issues.[6]

Finally, even if the Rules otherwise permitted Plaintiffs' bifurcation proposal, the Seventh Amendment does not.  Fed. R. Civ. P. 42(b) ("When ordering a separate trial, the court must preserve any federal right to a jury trial.").  The Reexamination Clause of the Seventh Amendment "requires that, when a court bifurcates a case, it must 'divide issues between separate trials in such a way that the same issue is [not] reexamined by different juries.'"  *Olden v. LaFarge Corp.*, 383 F.3d 495, 509 n.6 (6th Cir. 2004) (quoting *In re Rhone-Poulenc Rorer,*

---

[4] *Humenuik v. T-Mobile USA, Inc.*, 2015 WL 3397861, at *2 (N.D. Ohio 2015); *Gagner v. Metro. Prop. & Cas. Ins. Co.*, 2005 WL 8161955, at *3 (S.D. Ohio 2005).

[5] *J-Way S., Inc. v. River Rd. Constr., Inc.*, 2018 WL 1409285, at *1 (N.D. Ohio 2018) (no objection to bifurcation of third-party insurance coverage claim); *FDIC v. Safeco Ins. Co. of Am.*, 2011 WL 4753416, at *2 (D. Nev. 2011) (parties agreed on bifurcation of issues and disputed only the order in which the court should try them).

[6] *See In re Beverly Hills Fire Litig.*, 695 F.2d 207, 210 (6th Cir. 1982) (district court bifurcated causation issues); *In re Bard IVC Filters Prod. Liab. Litig.*, 2018 WL 4184950, at *1 (D. Ariz. 2018) (bifurcating determination of amount of punitive damages); *In re Genetically Modified Rice Litig.*, 2010 WL 816157, at *1 (E.D. Mo. 2010) (bifurcating tort claims against one defendant from contract claims against others); *In re Methyl Tertiary Butyl Ether (MTBE) Prod.*, 2007 WL 1791258, at *2 (S.D.N.Y. 2007) (separate trial concerning impact of alleged pollutant on a subset of all water wells at issue); *Penton Media, Inc. v. Affiliated FM Ins. Co.*, 2005 WL 8171362, at *3 (N.D. Ohio 2005) (bifurcating insurance coverage contract claim from bad faith claim); *In re Dow Corning Corp.*, 211 B.R. 545, 593 (Bankr. E.D. Mich. 1997) (bifurcation of causation issues); *In re Air Crash Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 737 F. Supp. 391, 395 (E.D. Mich. 1989) (bifurcating liability and damages).

*Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995)); *see also*, *e.g.*, *Blyden v. Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999) ("a given issue may not be tried by different, successive juries"); *State of Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) (noting the "limitation on the use of bifurcation" from "the fact that inherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact").  As the Sixth Circuit held in *Bendectin*, Rule 42 is subject to the Seventh Amendment and Due Process constraints articulated by the Supreme Court in *Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931), that an issue may be bifurcated for a separate trial only if it is "so distinct and separable from the others that a trial of it alone may be had without injustice."  *Bendectin*, 857 F.2d at 308-09.

Plaintiffs' bifurcation proposal, on the other hand, would require successive juries to consider the same factual questions concerning the Pharmacy Defendants' alleged conduct and their claimed contributions to the opioids crisis in Lake and Trumbull Counties, initially by a first jury at the trial of their public nuisance claims, and then again by a second jury (if not a third and a fourth) at the trial of their remaining claims—all in clear violation of the Seventh Amendment.

## II.    Plaintiffs' Joinder Proposal Is an Admitted Attempt to Gain an Improper Litigation Advantage.

Joining the *Lake County* and *Trumbull County* cases for trial would of course require both Plaintiffs to introduce—and Defendants to rebut—evidence particular to each county, necessarily adding length and complexity to the proceedings.  Plaintiffs do not claim otherwise.

As for the potential prejudice to the Pharmacy Defendants, Plaintiffs do not just concede that joinder will unfairly prejudice the Pharmacy Defendants, but they tout it as a design feature of their proposal.  Plaintiffs ask for joinder on the basis that it will "diffuse" plaintiff-specific

defenses that might otherwise defeat their claims.  *See* Motion at 7 ("Joining the Plaintiffs' cases for trial of their common law public nuisance claims against the Chain Pharmacy Defendants will create judicial economies while diffusing Plaintiff specific issues").  Nothing more is required to demonstrate that joinder would be improper.

## III.    Plaintiffs' Track 3 Proposal Would Undermine a Meaningful Bellwether Process.

Putting aside the other infirmities of Plaintiffs' bifurcation/stay/joinder proposal, it still would make no sense for cases intended as bellwethers in this massive MDL.  It is axiomatic that, for a bellwether trial to serve any purpose, the "bellwether cases ***must be representative*** of the range of cases included in the MDL proceeding."  Fed. Jud. Center, *Bellwether Trials in MDL Proceeding: A Guide for Transferee Judges*, at 22 (2019) (emphasis added); Bolch Center for Jud. Studies, *Duke Guidelines and Best Practices for Large and Mass-Tort MDLs*, at 19 (2d ed. 2018) ("the bellwether process will be valuable only if the cases selected for trial are representative of the whole").  The case law is uniform on this point.[7]

Yet the Track 3 trial that Plaintiffs have in mind could not be less representative of other cases in the MDL.  In every other case that names any Pharmacy Defendant, the plaintiffs have asserted a wide variety of claims against the Pharmacy Defendants and also a large and diverse group of other Defendants, including different combinations of large and small pharmaceutical manufacturers and marketers, a supplier of ingredients used to make pharmaceuticals,

---

[7] *See, e.g.*, *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 2017 WL 2574057, at *4 (N.D. Ill. 2017) (emphasizing "the importance of selecting 'representative' cases for bellwether trials"); *Abner v. Hercules, Inc.*, 2016 WL 11609574, at *5 (S.D. Miss. 2016) ("Selecting a bellwether group requires a finding 'that the cases are representative of a larger group of cases or claims from which they are selected.'") (quoting *In re Chevron USA*, 109 F.3d 1016, 1020 (5th Cir. 1997)); *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 1441804, at *9 (S.D.N.Y. 2016) ("the goal is to select the 'best' representatives of the universe of cases, not outliers likely to result in victory for one side or the other"); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2012 WL 3637278, at *3 (S.D. Cal. 2012) ("The bellwether cases should be representative cases that will best produce information").

6

distributors of controlled substances, members of the Sackler family, and individuals who have been convicted of federal crimes because of how they marketed prescriptions opioids.  A trial of just one cause of action against only the Pharmacy Defendants would bear no resemblance to the trial of any other case in the MDL.

Judge Fallon has explained that such "unrepresentative cases, even if they are successful at trial, will do little to resolve the entire litigation and will have little predictive value."  E. Fallon, *et al.*, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2346 (2008). Rather, as the *Yasmin* court feared, "[l]ittle credibility will be attached to this process, and it will be a waste of everyone's time and resources, if cases are selected which do not accurately reflect the run-of-the-mill case."  *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 2010 WL 4024778, at *2 (S.D. Ill. 2010).

## IV.    The Track 3 Proposal Violates the Party-Presentation Rule.

Plaintiffs' bifurcation/stay/joinder proposal is intended to do no more than memorialize the Court's directions in its *sua sponte* Order regarding the structure of any Track 3, Doc. # 3261.  *See* Motion at 7 (proposal is intended to "effectuate the Court's request" and "represents Plaintiffs' good faith efforts to comply with the Court's directive").[8]  Such a proposal cannot stand under the party-presentation rule that governs the federal courts.

The Supreme Court has held in no uncertain terms that "in both civil and criminal cases" courts are bound to "follow the principle of party presentation."  *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).  The party-presentation rule requires "the parties to frame the issues for decision," while it "assign[s] to courts the role of neutral arbiter of matters the parties present."

---

[8] The Court ordered the PEC to select a case to be tried in the Northern District of Ohio "at which will be decided: (1) only public nuisance claims (2) against only the pharmacy defendants [3] in their roles as distributors and dispensers."  Doc. # 3261, at 2.

*Id.* Just this month, a unanimous Supreme Court reaffirmed the primacy of this rule, explaining that "[c]ourts are essentially passive instruments of government" that "do not, or should not, sally forth each day looking for wrongs to right," but "wait for cases to come to them." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quotation marks and citation omitted).

No more than an umpire may step out from behind the plate to coach the pitcher, this Court may not step away from its role as a neutral arbiter of the cases actually before it to re-engineer Plaintiffs' lawsuits into different cases that the Court would prefer to hear. *See Ligon v. City of New York*, 736 F.3d 118, 124-26 (2d Cir. 2013), vacated in part on other grounds, 743 F.3d 362 (2d Cir. 2014) (improper for trial judge to encourage plaintiff to bring claims that the judge believed were more appropriate than the actually pending claims).  Plaintiffs' bifurcation/ stay/joinder proposal represents just the sort of the judicial "takeover" of the litigation that the law does not allow. *Sineneng-Smith*, 140 S. Ct. at 1581.

<u>**Conclusion**</u>

The Court should deny Plaintiffs' motion to bifurcate, stay, and join claims in the *Lake County* and *Trumbull County* cases.  Those cases should go forward, if at all, as Plaintiffs filed them.  If there are claims or parties that Plaintiffs recognize are improper or that can be dispensed with to simplify Plaintiffs' cases, Plaintiffs must dismiss them.

The most sensible course, however, would be to remove the *Lake County* and *Trumbull County* cases from the bellwether pool to allow the parties to focus their resources on representative cases from other regions of the country.  Especially considering the active state-court docket, it is unnecessary at the current stage of the litigation to add additional federal bellwether cases to the full slate of bellwethers currently pending in the California, Illinois, Ohio, Oklahoma, and West Virginia federal courts, two of which already include the dispensing claims

that motivated this Court to create a local Track 3 in the first place. But if the Court disagrees, the MDL and the parties would be better served by the addition of a case from a new jurisdiction outside of Ohio, which would allow the parties to learn from the development of legal and factual issues that are not already being fully worked up elsewhere and from the outcome of a realistic trial that includes all of the relevant claims and parties.

Dated:  May 26, 2020                             Respectfully submitted,


                                                 /s/ Kaspar J. Stoffelmayr
                                                 Kaspar J. Stoffelmayr
                                                 Katherine M. Swift
                                                 BARTLIT BECK LLP
                                                 54 West Hubbard Street
                                                 Chicago, IL 60654
                                                 (312) 494-4400
                                                 kaspar.stoffelmayr@bartlitbeck.com
                                                 kate.swift@bartlitbeck.com

                                                 *Attorneys for Walgreens Boots Alliance, Inc.,*
                                                 *Walgreen Co., and Walgreen Eastern Co.*


                                                 /s/ Eric R. Delinsky (consent)
                                                 Eric R. Delinsky
                                                 Alexandra W. Miller
                                                 ZUCKERMAN SPAEDER LLP
                                                 1800 M Street, NW, Suite 1000
                                                 Washington, DC  20036
                                                 (202) 778-1800
                                                 edelinsky@zuckerman.com
                                                 smiller@zuckerman.com

                                                 *Attorneys for CVS Pharmacy, Inc., CVS*
                                                 *Indiana, L.L.C., CVS Rx Services, Inc., CVS*
                                                 *TN Distribution, L.L.C., and Ohio CVS Stores,*
                                                 *L.L.C.*


                                                 /s/ Robert M. Barnes (consent)
                                                 Robert M. Barnes
                                                 Scott D. Livingston

Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
(412) 471-3490
rbarnes@marcus-shapira.com
livingston@marcus-shapira.com
kobrin@marcus-shapira.com

*Attorneys for HBC Service Company*


*/s/ Kelly A. Moore (consent)*
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6612
kelly.moore@morganlewis.com

John P. Lavelle, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-4824
john.lavelle@morganlewis.com

*Attorneys for Rite Aid Corp., Rite Aid Hdqtrs. Corp., Rite Aid of Ohio, Inc., Rite Aid of Maryland, Inc., and Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center*


*/s/ Tina M. Tabacchi (consent)*
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 269-4335
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

10

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record on May 26, 2020.

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com

*Attorney for Walgreens Boots Alliance, Inc.,
Walgreen Co., and Walgreen Eastern Co.*

11