UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: "*Track One-B*" | ) ) | |
| | ) ) ) | **ORDER REGARDING PRETRIAL DISCOVERY IN TRACK ONE-B** |

This Order addresses the scope of discovery the Special Master will allow in advance of the Track One-B trial, which is scheduled for November 9, 2020.

**I.      Background.**

The first bellwether trial set by the MDL Court was scheduled to begin on October 21, 2019. Two cases were consolidated for this bellwether trial, involving claims by two Ohio plaintiffs: Cuyahoga County and Summit County.[1]  The two complaints named over 20 different defendants and defendant-families, including numerous drug manufacturers, drug distributors, and pharmacies,

---

[1] The two cases are *The County of Summit, Ohio. v. Purdue Pharma L.P.*, case no. 18-OP-45090 (N.D. Ohio); and *The County of Cuyahoga v. Purdue Pharma L.P.*, case no. 17-OP-45004 (N.D. Ohio).

all of which are or were in the business of producing, distributing, or dispensing opioids.[2]

The Court set a fact discovery deadline of January 25, 2019.[3] The parties proceeded to engage in an enormous amount of fact discovery involving hundreds of depositions and hundreds of millions of documents. Despite the January 25, 2019 fact discovery deadline, the parties continued to conduct fact discovery into the Summer of 2019 – partly by agreement and partly pursuant to Orders by the undersigned to resolve late-arising discovery disputes. For example, the deadline for written discovery was extended to March 4, 2019, and some depositions took place thereafter.[4] Indeed, both plaintiffs and defendants sought to continue taking fact-witness depositions even during the scheduled October 2019 trial, but (as discussed below) this was not allowed.[5]

On August 15, 2009, the Court severed many of the defendants, leaving a mix of seven

---

[2] The two complaints named the following defendants and defendant-families: (1) Purdue Entities; (2) Actavis Entities; (3) Cephalon Entities; (4) Janssen Entities; (5) Endo Entities; (6) Insys Therapeutics, Inc.; (7) Mallinckrodt Entities; (8) AmerisourceBergen Drug Corporation; (9) Anda, Inc.; (10) Cardinal Health, Inc.; (11) CVS Indiana, LLC; (12) Discount Drug Mart, Inc.; (13) HBC Service Company; (14) H.D. Smith; (15) Henry Schein Entities; (16) McKesson Corporation; (17) Miami-Luken, Inc.; (18) Prescription Supply, Inc.; (19) Rite Aid of Maryland, Inc.; (20) Walgreens Entities; and (21) Walmart Inc. The first seven are manufacturers; the rest are distributors and/or pharmacies.

[3] *See Case Management Order No. 7 Setting New Deadlines for Track One Cases* at 2 (docket no. 876).

[4] *See Transcript of Final Pretrial Proceedings before Special Master David R. Cohen* ("*Final Pretrial Transcript*") at 10-12 (Oct. 15, 2019) (noting that a modified fact discovery deadline for written discovery was set for March 4, 2019, and fact witness depositions continued into July of 2019).

[5] *See id.* at 12-13.

manufacturer-, distributor-, and pharmacy-defendants to face trial.[6] Before trial, all of these defendants except Walgreens settled. Accordingly, the Court turned its attention to the severed defendants and set a new, "Track One-B trial," currently scheduled to begin on November 9, 2020.

The Track One-B plaintiffs, of course, remain the same as in Track One-A: Cuyahoga County and Summit County. The Track One-B trial defendants, however, are all pharmacies: CVS, Discount Drug Mart, Giant Eagle, Rite-Aid, Walgreens, and Walmart. The claims the Track One plaintiffs originally asserted against these pharmacy defendants focused only on their internal ***distribution*** policies and conduct, and not on their ***dispensing*** policies and conduct. *See Discovery Ruling No. 8* at 1 (docket no. 1055) ("'distribution' involves movement of opioid products from (for example) a warehouse to a specific pharmacy, while 'dispensing' refers to the 'final step' in the distribution process, from the pharmacy to an individual patient"). Indeed, the Track One plaintiffs originally disavowed any dispensing claims against pharmacy defendants, and Track One discovery was limited accordingly.[7]

While Track One was proceeding, however, other plaintiffs in other MDL cases asserted

---

[6] *See* docket no. 2438. The Track One-A trial defendants were four distributors (Amerisource, Cardinal, McKesson, and Henry Schein), two manufacturers (Janssen and Teva), and one pharmacy (Walgreens). Manufacturer Purdue was also a trial defendant, but it entered bankruptcy a month before trial.

[7] *See Discovery Ruling No. 8* at 2 (docket no. 1055) (plaintiffs "specifically disclaimed any claim against the National Retail Pharmacy Defendants based on their retail dispensing [of] opioids;" nonetheless, some dispensing discovery must be produced because "many of the retail pharmacy defendants use dispensing data as a component of their suspicious order monitoring programs," which are central to distribution claims). *See also Discovery Ruling Regarding "OARRS Data"* at 3-4 (docket no. 3168) ("At the time [the Ohio Board of Pharmacy] produced [certain] data during Track One-A, the only claims pending against the Pharmacy Defendants related to their *distribution* of opioids to their own stores. Since then, in Track One-B, Plaintiffs have added claims related to the Pharmacy Defendants' *dispensing* practices.") (emphasis in original).

claims against the pharmacy defendants attacking both their distribution *and dispensing* policies and conduct; it became clear the MDL Court would eventually have to address these dispensing claims. With an eye toward providing the parties with a single bellwether trial addressing both types of claims – rather than a less-efficient and more expensive approach of conducting two bellwether trials in order to reach both types of claims – the Court allowed the Track One plaintiffs to amend their complaints to add claims based on dispensing conduct. Responding to a mandamus petition by the pharmacy defendants, however, the Sixth Circuit directed the MDL Court to strike these amendments. As a result, instead of one MDL trial addressing both types of claims against pharmacy defendants, there are now two scheduled trials, Track One-B (addressing only distribution claims) and Track Three (addressing distribution and dispensing claims).[8]

During the period between the setting of the Track One-B trial and the striking of plaintiffs' Track One-B dispensing claims, some discovery regarding the pharmacy defendants' dispensing conduct took place. Numerous disputes arose in connection with this new dispensing discovery. In addition, other discovery disputes cropped up relating back to plaintiffs' original distribution claims. This Order addresses what discovery will be allowed in Track One-B going forward.

## II. General Discovery Rules.

As noted, the fact discovery period for Track One-A closed, at the latest, in the summer of 2019. The parties sought to conduct additional fact discovery thereafter, as late as during the Track

---

[8] *See Order Regarding Track 1B and Track Three* at 2 (docket no. 3261) ("The Court will select a case for a Track 3 bellwether trial in the Northern District of Ohio, at which will be decided: (1) only public nuisance claims (2) against only the pharmacy defendants (2) in their roles as distributors and dispensers.").

One-A trial itself, but the undersigned did not allow it.  Specifically, at a final pretrial conference on October 15, 2019, the Special Master stated:

> [Defendant] McKesson is requesting depositions of three witnesses. . . . I think that plaintiffs are also asking for depositions of seven pharmacist witnesses. . . .
> * * *
> As far as I'm concerned, discovery is closed.  It's been closed for a long time.  That includes depositions.  If y'all want depositions of witnesses yet to be called who weren't deposed during the discovery period, that's something you have to agree to, otherwise they don't occur.  I don't grant them.
> It seems to me you had an opportunity during discovery to take deposition discovery, and there are [many dozens of] folks you could have deposed, but strategically couldn't and didn't.  I get that.  But discovery is closed.
> What that might mean is at trial you have to go bareback – hey, you're trial attorneys – which means that you would have to adduce evidence from witnesses at trial whom you haven't learned what they said before they got here.  That's just the way it would go.

*Final Pretrial Transcript* at 12-13 (Oct. 15, 2019).  The Special Master also ruled that, absent compelling circumstances, an individual could not be called as a witness at trial unless he or she was identified during discovery before March 4, 2019.  *Id.* at 13-14.[9]  These rulings were issued when Track One included only distribution claims against the pharmacies – which, following the Sixth Circuit's mandamus ruling, is also true now.

The most significant change that has since occurred is there is now much more time available before trial: the October 15, 2019 rulings cited above issued less than a week before the scheduled Track One-A trial; in comparison, the November 9, 2020 Track One-B trial is currently over five months away.  Plaintiffs suggest that, because there is now more time available, additional discovery

---

[9] To be completely accurate, the Special Master stated these were "rules that I'm thinking of applying."  *Final Pretrial Transcript* at 12.  After discussion of these rules with the parties, no changes were suggested.

directed at the distribution claims should be allowed. Plaintiffs note that discovery rulings made during Track One-A explicitly recognized this possibility. *See, e.g., Discovery Ruling No. 8* at 5 (docket no. 1055) ("At some future juncture (e.g. after the first trial), the balance the Court must weigh under Fed. R. Civ. P. Rule 26(b)(1) may well shift, making plaintiffs' additional requested discovery appropriate."); *Discovery Ruling No. 3* at 4 (docket no. 762) (noting that imposition of all discovery limitations were being made "in light of the Court's tight trial schedule"). Defendants respond that the Court closed discovery on the distribution claims, it should not be re-opened, and "the Sixth Circuit's mandamus ruling means that all discovery in Track 1B should have closed last year." Email from Sharon Desh (Walgreens) to Jeff Gaddy (Plaintiffs) (May 18, 2020).

Weighing these arguments, the Special Master rules as follows. That there is now more time to conduct discovery before plaintiffs' distribution claims against the pharmacy defendants go to trial in Track One-B is not, by itself, sufficient reason to allow broad, additional discovery of documents or depositions – even if limited strictly to conduct and policies related to distribution, and not dispensing. No matter how large a closet is, one eventually wishes for more room; similarly, no matter how much discovery is allowed, some party will always want more. The Special Master is confident the parties have nearly all the discovery they need to win or lose the Track One-B case on the merits, and deadlines must be respected.[10] Therefore, the Special Master will generally enforce the rules cited above and there will be no additional fact discovery specific to Track One-B – with three exceptions.

***First***, as stated at the Track One-A pretrial conference, the parties can agree otherwise

---

[10] Of course, the Track Three trial will have additional claims and different deadlines. The scope and depth of MDL discovery to date will certainly inform what discovery is allowed in Track Three, but nothing in this or any other Track One Order automatically limits Track Three discovery.

6

amongst themselves. For example, if plaintiffs and defendants reach a deal allowing each side to depose certain witnesses who were not deposed earlier, the Special Master will not disallow that discovery.

*Second*, the Special Master remains empowered to resolve discovery disputes that "relate back" to Track One-A. For example, fair resolution of a lingering dispute related to documents requested or depositions taken *during Track One-A* may require allowing a party to take additional discovery now. Indeed, despite the October 15, 2019 rulings discussed above, it is easy to imagine additional discovery might still have been allowed even during the Track One-A trial, if emergent circumstances and fairness had demanded it. Allowing this "relation-back" discovery is especially necessary because the number of issues pending immediately before the Track One-A trial began was overwhelming; the Special Master was forced to engage in triage, and simply ignored and never resolved certain discovery disputes.[11] Included in this second category would be exceptions for "compelling circumstances." *Final Pretrial Transcript* at 14. Both plaintiffs and defendants have asked for this type of relation-back discovery.[12] That said, the Special Master expects the scope of relation-back discovery will be limited.

And *third*, the parties are in the midst of submitting position statements regarding the extent

---

[11] In fact, the Special Master stated at the time that the October 15, 2019 ruling disallowing new fact witness depositions applied principally to pharmacy witnesses; the rulings did not necessarily apply to other then-pending witness issues. *See Final Pretrial Transcript* at 15 ("What I'm talking about now, thank you for reminding me, are only the seven pharmacist witnesses [whom plaintiffs want to depose] and the three witnesses McKesson wanted to depose. There are all kinds of other witness objections that I'm not talking about right now.").

[12] For example, defendants have renewed motions to compel discovery from the DEA, which they originally sought during Track One-A; and plaintiffs seek discovery into recently-produced documents they assert defendants should have produced during Track One-A.

to which pharmacist witnesses will be allowed to testify at the Track One-B trial, and whether this will necessitate additional discovery regarding ***dispensing as it relates to distribution claims***. This Order does not address that question.

**III.     Application – Plaintiffs and Walgreens.**

The Special Master now applies these rules to three discovery issues raised between plaintiffs and Walgreens.

    **A.     Agenda Item 259.**

Distributors of opioids are required to "'design and operate a system' to identify 'suspicious orders of controlled substances' and report those orders to DEA (the Reporting Requirement)." *Masters Pharmaceutical v. Drug Enf't Admin.*, 861 F.3d 206, 212 (D.C. Cir. 2017) (D.C. Cir. 2017) (quoting 21 C.F.R. § 1301.74(b)). *See Discovery Ruling No. 12 Regarding Suspicious Order Interrogatory* at 2-7 (docket no. 1174) (discussing suspicious orders, due diligence, and the reporting requirement); *Order Regarding Plaintiffs' Summary Judgment Motion Addressing the CSA* at 14-15 (docket no. 2483) (discussing DR-12 and *Masters*). At the heart of plaintiffs' distribution claims, then, are allegations that each defendant failed to: (1) put into place a Suspicious Order Monitoring System ("SOMS") to appropriately identify suspicious orders; (2) report those orders that it did identify as suspicious to the DEA; and (3) conduct adequate due diligence to dispel suspicion before filling suspicious orders. Discovery that is obviously relevant to these allegations includes those suspicious orders the defendant actually identified, and what the defendant did after identifying them.

Walgreens is also a defendant in opioid-related litigation in New York state court. In early 2020, Walgreens produced in discovery in the New York litigation five emails to Barb Martin with "Suspicious Order" in the subject line; attached to each email was a spreadsheet listing many thousands of suspicious orders for a half-month period, including over 30 fields of information regarding each suspicious order. Although the spreadsheets appeared to be regular, periodic, semi-monthly reports – four spreadsheets were sequential, covering mid-May to mid-July of 2011, while the fifth was for the last half of October of 2011 – the New York production included only five emails with five spreadsheets. The emails and their attachments should have been "hits" when Walgreens used the agreed-upon document search terms in Track One. But Walgreens did not produce these documents in MDL discovery.

After learning of this production in the New York litigation, the Track One plaintiffs: (1) complained that this discovery should have been produced months ago in the MDL, and (2) asked for additional Track One deposition discovery regarding these emails and spreadsheets, as well as an order requiring Walgreens to conduct additional searches for other, similar documents. Walgreens did not agree to additional depositions, but it voluntarily searched the custodial files of several individuals who sent and received the five emails at issue. Walgreens also stated it will search additional custodial files using search terms suggested by plaintiffs, if that will end the issue. Plaintiffs, however, assert they are also entitled to additional depositions regarding these documents.[13]

As an initial matter, it is clear that this discovery dispute "relates back" to Track One-A.

---

[13] At my direction, plaintiffs submitted a proposed order, which included several more-onerous discovery requirements than are provided here. The Special Master concludes the obligations below are appropriate and sufficient.

Barb Martin was a Track One document custodian, and the documents at issue are responsive to Track One discovery requests. That Walgreens did not identify or produce these important documents during Track One discovery is concerning. Even though the Track One discovery deadline has passed, it is clear plaintiffs would originally have been entitled to at least some of their currently-requested additional discovery, and so are entitled to curative discovery now.

Without getting into all of the details of what Walgreens has done and has offered to do regarding additional document searches, the Special Master concludes Walgreens must proceed ***promptly*** as follows:

(A) conduct searches for similar emails or spreadsheets (including emails that discuss such spreadsheets or suspicious orders) in the entire custodial files of the following individuals, using the four search terms identified by plaintiffs: Allison Metz, Spencer Ebann, Adriana Smyly, Frank DeStefano, Marcie Ranick, Barb Martin, Steve Mills, Denny Murray, Mike Bleser, and Steve Bamberg.[14]

(B) inquire of the individuals listed in subparagraph (A) above (to the extent they are reasonably available), and also inquire of Walgreens employees who would have knowledge of how such spreadsheets were produced and where they might reside, of whether they know of any other custodial file or central file locations where similar emails or spreadsheets may be found; and if so, conduct searches in those locations for similar emails or spreadsheets (including emails that discuss such spreadsheets or suspicious orders) using the four search

---

[14] The Special Master understands that Walgreens already did this search voluntarily for several of these custodians. Walgreens does not have to repeat any such search, but the full list is set out here to ensure completeness. Furthermore, if (as Walgreens has suggested regarding some of these individuals) a custodial file no longer exists, Walgreens obviously cannot search it.

terms identified by plaintiffs.[15]

(C) produce to plaintiffs any non-privileged documents that are returned from these searches, including all documents within the document families (such as cover emails or attachments), and including explanation of where such documents were found, and provide a log of any documents withheld.

Thereafter, plaintiffs may conduct a single deposition lasting no more than 2.0 hours of one of the above-named individuals, with questioning limited to the topic of suspicious order reporting and due diligence and the documents at issue.[16]

B. **Agenda Item 264.**

After plaintiffs raised the issue discussed above, Walgreens responded in part by complaining that plaintiffs, too, had only recently produced some documents responsive to Track One discovery requests. Walgreens then asked for similar treatment – that is, for an order requiring plaintiffs to search various custodial files for similar documents. Walgreens did not make this request until after plaintiffs raised the issue of the Barb Martin emails and continued to press Walgreens for answers.[17]

---

[15] Again, the Special Master understands that Walgreens may have already searched other custodial files and central file locations. Walgreens does not have to repeat any such search, but the obligation is set out here to ensure completeness.

[16] For good cause shown, the individual deposed may be someone who is not listed above. Plaintiffs are not strictly limited to inquiry regarding *only* the Barb Martin emails and spreadsheets, but the focus of the deposition may not stray very far from these documents, either. In light of the ongoing pandemic, this deposition will probably have to be taken via remote video. An order addressing the MDL protocol for remote video deposition is forthcoming.

[17] At my direction, Walgreens submitted a proposed order, which obligated plaintiffs to undertake a broad search for documents similar to those that plaintiffs recently produced.

Walgreens asserts the documents plaintiffs produced only recently are important because they reflect cooperation between Walgreens and plaintiffs in combating opioid diversion. Walgreens points to four documents produced by Summit County. Two of these, however, Summit *did* timely produce during Track One discovery, but with different Bates numbers. Another document does not mention opioids at all; plaintiff explains the document actually addresses distribution of antibiotics in case of bio-terrorism and is virtually irrelevant to this litigation. And the last document contains nothing except an internet address linking to a news announcement that Walgreens is making the heroin antidote Naloxone available without prescription in Ohio. These documents do not suggest any discovery failure by Summit County. Accordingly, Walgreens' request for an order directing Summit County to conduct an additional document search is denied.

As for Cuyahoga County, Walgreens points to two documents, one involving Walgreens assisting the police with diversion and one involving Walgreens assisting the police with a drug arrest. Cuyahoga County admits these documents are relevant and states it is unsure exactly why they were produced during Track One-B but not Track One-A, except that one is a "software problem" and one is a "vendor problem." Specifically, Cuyahoga County states: (a) one of the documents, produced by the Prosecutor's Office, was collected after plaintiff added search terms to its software search list, but the document should have hit on existing search terms – a result that does not make sense and has not been explained, but is apparently isolated; and (b) Cuyahoga collected the other document from the County Court and produced it during Track One-A to its e-discovery vendor (Ricoh), but Ricoh did not then produce the document to defendants.[18] After the undersigned asked Cuyahoga County to inquire about this further, Ricoh undertook additional investigation and,

---

[18] *See* hearing transcript at 7-14 (May 13, 2020).

within the last few days, discovered it failed to produce to defendants documents from an entire County Court hard-drive that plaintiff gave it long ago; Ricoh is in the process of rectifying this issue and submitting an explanation.

As the undersigned has stated to the parties repeatedly, the Special Master does not expect production of documents in discovery will be perfect. Occasional, minor, late document production will generally be forgiven, especially if other documents that were timely produced provide substantially similar information, and especially if the receiving party had reason to know about the information anyway. In this instance, the two documents identified by Walgreens do not suggest any systemic deficiency ***by Cuyahoga County***, which timely collected the documents and produced them to Ricoh. And it is notable that Walgreens, itself, would have reason to know of its own cooperation with plaintiffs in combating opioid diversion. This suggests Walgreens is not entitled to an order directing the County, ***itself***, to undertake additional document searches. In contrast, the failure of Ricoh to search an entire hard drive is very likely *not* to result in only a "minor, late production," which suggests additional depositions may be appropriate. And like Walgreens' Barb Martin documents, this production certainly relates back to Track One-A.

Given that Ricoh's discovery is so recent, and repercussions are currently unclear, the Special Master will wait to determine whether and the extent to which defendants are entitled to additional discovery related to the Cuyahoga County documents from the County Court hard drive. The Special Master directs Cuyahoga County to ensure Ricoh produces documents from the hard drive as soon as reasonably possible, and to direct Ricoh to submit an explanation that includes assurances there are no other, similar sources of documents produced by Cuyahoga County to Ricoh but not produced by Ricoh to defendants.

## C.     Agenda Item 249.

This discovery dispute also "relates back" to Track One-A. During Track One-A discovery, plaintiffs asked Walgreens to identify individuals and document custodians with knowledge regarding distribution claims, specifically including individuals who worked at Walgreens' Distribution Centers. Walgreens initially responded that no employee at its distribution centers worked on opioid distribution. *See* Letter from Kate Swift to Sal Badala at 1 (July 25, 2018) ("Nor do its Distribution Center employees have duties relating to the distribution of opioids."); Letter from Kate Swift to Special Master at 5 (July 30, 2018) ("Nor do Walgreens' Distribution Center employees have duties relating to the distribution of the Schedule II opioids at issue in these cases."). Plaintiffs continued to insist that some distribution center employees must have knowledge regarding the distribution claims. On October 2, 2018, "in the spirit of compromise," Walgreens agreed to add four custodians from its Perrysburg, Ohio Distribution Center (Deb Bish, Mark Betteridge, Jennifer Diebert, and James Gill). Following continued negotiations, documents were collected and produced only from Bish and Diebert, and plaintiffs deposed both of them.

Five months later, on March 4, 2019 – the extended deadline date for fact discovery document production – Walgreens amended its discovery responses to identify Justin Joseph and Steven Kneller as two additional Perrysburg Distribution Center employees who had "knowledge of Walgreens' order monitoring systems and procedures." When Walgreens later submitted its Track One-A witness list, it included Joseph and Kneller, as well as one of the original four distribution center employees (Bish, but not Betteridge, Diebert, or Gill). *See* docket no. 2638. Plaintiffs objected to allowing Joseph and Kneller as witnesses, arguing Walgreens never produced their custodial files and identified them too late to allow their depositions. Docket no. 2749 at 2-3.

14

Walgreens responded it would make Kneller and Joseph available "for short depositions before they testify." Docket no. 2772 at 5.

After the Track One-A trial was canceled and the Track One-B trial was set, plaintiffs asked Walgreens to produce documents from the custodial files of Kneller and Joseph, and to schedule their depositions. On March 9, 2020, the Special Master granted plaintiffs' request regarding document production.[19] Thereafter, however, the Sixth Circuit granted defendants' mandamus petition and struck dispensing claims. Walgreens asserts this mandamus order had the effect of canceling any need for additional discovery in Track One-B, including document production from, or deposition of, Kneller and Joseph.

The Special Master would agree with Walgreens if Kneller and Joseph were relevant only to plaintiffs' *dispensing* claims, which are no longer a part of Track One-B. But the history above makes clear that Kneller and Joseph are relevant to plaintiffs' *distribution* claims; Walgreens listed them as two of its nine fact witnesses when only distribution claims were pending.

Therefore, the Special Master gives Walgreens this choice. It may call Kneller and Joseph as witnesses at the Track One-B trial only if it promptly produces documents from their custodial files (as already ordered) and allows their depositions. Moreover, the Special Master makes clear this rule also applies to plaintiffs. Specifically, the following rule applies to Walgreens **and** plaintiffs: if a party included in its Track One-A witness list any individual who it identified as a person with knowledge only at the very end of the discovery period (or after it), effectively precluding opposing parties from deposing that individual during discovery, then the listing party may not call that person as a witness at the Track One-B trial unless the listing party first allows

---

[19] *See* hearing transcript at 142 (March 9, 2020).

their deposition. This bilateral rule is fair and, ***now that we have five months until trial***, neither prejudicial to nor burdensome on any party.[20]

The parties are directed to meet and confer on this topic and bring any related disputes to the undersigned.

**D.     Other Issues.**

As noted, the parties have identified other discovery issues that appear to relate back to Track One-A. The Special Master will rule on those discovery issues in subsequent orders.

**IT IS SO ORDERED.**

/s/ *David R. Cohen*
**DAVID R. COHEN**
**SPECIAL MASTER**

**Dated:** May 26, 2020

---

[20] The Special Master acknowledges that, at the October 15, 2019 final pretrial in Track One-A, he ruled that, "if a witness was identified during discovery before March 4th, [2019,] that witness can be called. If that witness wasn't deposed, as I said, too bad, unless there's an agreement." *Final Pretrial Transcript* at 13 (referring principally to pharmacist witnesses). Because we now have more time, the calculus regarding discovery only of ***late-identified trial witnesses*** is changed.