**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track Three Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO BIFURCATE BELLWETHER CLAIMS, JOIN BELLWETHER CASES FOR TRIAL, AND TO STAY REMAINING CLAIMS**

Having no legitimate objections to the Court's ability to grant the relief requested in Plaintiffs' Motion to Bifurcate Bellwether Claims, Join Bellwether Cases for Trial, and to Stay Remaining Claims (the "Motion"), the Pharmacy Defendants seek to muddy the waters by relying on inapplicable legal theories and impugning the motivations and actions of Plaintiffs and this Court. Their arguments are wholly without merit and should be rejected.

**ARGUMENT**

**A. Rule 42 Authorizes the Court To Grant Plaintiffs' Requested Relief.**

The Sixth Circuit recognizes that an MDL court has "broad discretion to create efficiencies and to avoid unnecessary duplication in its management of pretrial proceedings in the MDL" so long as those efficiencies comply with the Federal Rules of Civil Procedure:

> "There is much, of course, that an MDL court can do in its sound discretion in order to manage multidistrict litigation effectively. It can designate a lead counsel. It can hold some cases in abeyance while proceeding with others. *In discretionary matters going to phasing, timing, and coordination of the cases, the power of the MDL court is at its peak.*"

*In re Natl. Prescription Opiate Litig.*, 956 F.3d 838, 845 (6th Cir. 2020) (citation omitted) (emphasis added). Here, Federal Rule 42(b) authorizes federal courts to "order a separate trial of

one or more separate issues [or] claims" "[f]or convenience, to avoid prejudice, or to expedite and economize[.]" FED. R. CIV. P. 42(b). *See also In re Bendectin Litig.*, 857 F.2d 290, 316-17 (6th Cir. 1988) ("Rule 42 . . . 'giv[es] the court virtually unlimited freedom to try the issues in whatever way trial convenience requires.' Thus, a court may try an issue separately if 'in the exercise of reasonable discretion [it] thinks that course would save trial time or effort or make the trial of other issues unnecessary.'") (internal citation omitted). Whether bifurcation is appropriate is determined by the Court in its sound discretion based on the specific facts of the case. *See Bendectin*, 857 F.2d at 307.

In their opposition, the Pharmacy Defendants argue that bifurcation is not permissible in these cases because of the potential inefficiencies and alleged prejudice that may arise if Plaintiffs were to proceed with additional trials of their other claims in the future. Opp. at p. 3. The Pharmacy Defendants' concerns are speculative at best.[1] Indeed, it is possible, even likely, that no future trial of Lake and Trumbull Counties' remaining claims will be necessary if the bellwether trials lead to a resolution of the MDL. As the Pharmacy Defendants' own cases recognize, a primary purpose of bellwether trials is to enhance the prospects of a global settlement of the MDL.[2] And even if there is no settlement, this does not negate the benefits of a bellwether

---

[1]  They are also disingenuous. The Pharmacy Defendants had no problem with the idea of separate trials when claims against them were severed from the CT1A trial to be tried in a separate bellwether trial.

[2]  *See, e.g., In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar."); *In re Testosterone Replacement Therapy Products Liab. Litig. Coordinated Pretrial Proceedings*, 14 C 1748, 2017 WL 2574057, at *4 (N.D. Ill. May 22, 2017) ("A key goal of the bellwether trial process is 'to select particular plaintiffs' cases whose trials will furnish data that may facilitate settlement of the remaining cases.'") (citation omitted); *In re: Gen. Motors LLC Ignition Switch Litig.*, 14-MC-2543 (JMF), 2016 WL 1441804, at *9 (S.D.N.Y. Apr. 12, 2016) (noting that "the primary purpose of bellwether trials is to provide data points for settlement discussions with respect to the universe of cases"); Eldon E. Fallon et. al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2341–42 (2008) ("By bringing fact-finding to the forefront of multidistrict litigation, bellwether trials can make a significant contribution to the maturation of disputes and, thus, can naturally precipitate settlement discussions.").

2

trial of nuisance claims based on pharmacies' dispensing and distribution conduct. *See, e.g.,* Fallon, 82 Tul. L. Rev. at 2338 ("Bellwether trials thus assist in the maturation of any given dispute by providing an opportunity for coordinating counsel to organize the products of pretrial common discovery, evaluate the strengths and weaknesses of their arguments and evidence, and understand the risks and costs associated with the litigation.").

The Pharmacy Defendants' arguments against joinder of Plaintiffs' cases are equally without merit. Rule 42(a) expressly allows federal courts to join or consolidate two separate actions for trial so long as they "involve a common question of law or fact[.]" FED. R. CIV. P. 42(a). The Pharmacy Defendants do not dispute that Plaintiffs' nuisance claims involve common legal or factual questions. Instead they assert, in conclusory fashion, that including both Plaintiffs in one trial "necessarily add[s] length and complexity to the proceedings" because the parties will have to introduce county-specific evidence for both Plaintiffs. Opp. at p. 5.[3] Of course, this is true anytime multiple actions are joined or consolidated for trial. If that was a sufficient basis to foreclose joinder or consolidation, Rule 42(a) would serve no purpose. The Pharmacy Defendants do not explain how any added length or complexity would be unreasonable in these specific circumstances, or why it would outweigh the benefits and efficiencies of trying Plaintiffs' claims together. Instead, they claim that Plaintiffs' express goal is to unfairly prejudice the Pharmacy Defendants, stating that Plaintiffs "ask for joinder on the basis that it will 'diffuse' plaintiff-specific defenses that might otherwise defeat their claims." Opp. at pp. 5-6. But what Plaintiffs actually said in their Motion is that a joint trial "will create judicial economies while diffusing Plaintiff specific issues[.]" Motion at p. 7. "Plaintiff-specific issues" are not limited to

---

[3] Notably, the CT1A bellwether trial involved the consolidated claims of two plaintiffs; the Pharmacy Defendants did not complain about joinder with respect to that trial.

3

plaintiff-specific defenses.  A joint trial will reduce the risk that a judgment from the bellwether trial is perceived to have been dependent on unique plaintiff-specific factors.  Moreover, in their Opposition, the Pharmacy Defendants complain about "hand-selected bellwether Plaintiffs who had to drop out of CT1 when they could not meet discovery obligations" (Opp. at p. 1); a joint trial with two plaintiffs insures against that risk.

## B.  The Track 3 Bellwether Trial Is Representative of Other Cases in the MDL.

The Pharmacy Defendants claim that the proposed CT3 bellwether trial would not be representative of other cases in the MDL because it does not include all of Plaintiffs' other claims or any of the non-Pharmacy Defendants.  Opp. at pp. 6-7.  Again, the Pharmacy Defendants did not see this as a problem when claims against them were severed from the CT1A trial to be tried in a separate bellwether trial.  And they fail to explain why or how the absence of Plaintiffs' non-nuisance claims (or Plaintiffs' claims against non-pharmacy defendants) would impact the merits or value of Plaintiffs' pharmacy-based nuisance claims.

Over 1,400 MDL plaintiffs have asserted common-law nuisance claims against pharmacy defendants based on their dispensing and distribution conduct.  The CT3 bellwether trial is representative of those particular claims.  Proceeding with the CT3 trial will "enable the parties and the court to determine the nature and strength of th[ose] claims, whether they can be fairly developed and litigated on a group basis and what range of values the cases may have if resolution is attempted on a group basis."  ANN. MANUAL COMPLEX LITIG., MCL-ANN § 22.315 (4th ed.).  Notably, the Pharmacy Defendants have not identified any unique aspects of Lake and Trumbull Counties' nuisance claims that would make them non-representative of other MDL nuisance claims against pharmacy defendants.

The Pharmacy Defendants' only other complaint about the CT3 cases is that they involve Ohio law, which has "already be[en] fully worked up elsewhere[.]"  Opp. at p. 9.  They make no

argument (nor could they) that Ohio nuisance law is uniquely unrepresentative of nuisance law from other states.  Indeed, Ohio, like the vast majority of states, follows the guidance of the Restatement (Second) of Torts on public nuisance liability.  *See, e.g.,* Dkt. No. 1406 (Plaintiffs' 50-State Nuisance Survey) at pp. 3-4.  Moreover, the fact that the legal issues under Ohio law have already been fully briefed actually promotes efficiency: the trial can occur much more quickly because the parties need not expend the time and resources re-briefing the various legal issues under another state's law.  Finally, as this Court is well aware, the Pharmacy Defendants' argument that a non-Ohio case should have been chosen is entirely disingenuous, as they have refused to waive *Lexecon* to allow this Court to try a bellwether case from outside the Northern District of Ohio.  Dkt. No. 3282 at p. 1 n.1.

    **C. Plaintiffs' Bifurcation Proposal Does Not Implicate the Reexamination Clause of the Seventh Amendment.**

The Pharmacy Defendants claim that Plaintiffs' bifurcation proposal would violate the Reexamination Clause of the Seventh Amendment because it

> would require successive juries to consider the same factual questions concerning the Pharmacy Defendants' alleged conduct and their claimed contributions to the opioids crisis in Lake and Trumbull Counties, initially by a first jury at the trial of their public nuisance claims, and then again by a second jury (if not a third and a fourth) at the trial of their remaining claims—all in clear violation of the Seventh Amendment.

Opp. at pp. 4-5.  Not so.  Plaintiffs' bifurcation proposal does not implicate any Seventh Amendment concerns.  First, the Pharmacy Defendants' argument necessarily presupposes, without any justification, that Lake and Trumbull Counties' remaining claims against them will ultimately come to trial before a separate jury; but, particularly in the context of an MDL, the far more likely outcome is that that second trial will never be held because the MDL will resolve through a global or case-specific settlement long before that trial ever comes to pass.  *Cf. Bendectin,* 857 F.2d at 317 (court

5

may try an issue separately under Rule 42 where it believes it would "make the trial of other issues unnecessary").[4]

At least as significantly, the Reexamination Clause applies only to "[s]uits at common law[,]" not to equitable actions. *See* U.S. CONST. AMEND. VII; *Curtis v. Loether*, 415 U.S. 189, 193 (1974). And, as this Court has previously determined, an Ohio common-law public nuisance claim seeking abatement is not a common law action, but rather a suit in equity. *See, e.g.,* Dkt. No. 2519 at pp. 2-3, 5; Dkt. No. 2572 at p. 5 n.4. Thus, the Pharmacy Defendants do not have a constitutional right to a jury trial as to Plaintiffs' common-law public nuisance claims.[5] The cases cited by the Pharmacy Defendants are inapposite as they did not involve the bifurcation of equitable claims from legal claims, but rather the bifurcation of the individual elements of a single legal cause of action.[6]

---

[4] To be clear, Plaintiffs do not believe a second trial would implicate any Seventh Amendment issues. But in the unlikely event that such a second trial takes place, if the Pharmacy Defendants believe they have legitimate Seventh Amendment objections to one or more of Plaintiffs' remaining claims, they would be free to raise them at that time.

[5] Plaintiffs understand that this Court, for a number of other reasons, previously determined that it would empanel a jury to decide nuisance liability for the CT1 trial (Dkt. No. 2629) and may choose to do so again for the CT3 trial. Nevertheless, the Seventh Amendment will not be implicated in that trial. At worst, Reexamination Clause concerns would only arise at a subsequent trial of Lake and Trumbull Counties' remaining claims, and that is a risk that Plaintiffs are prepared to accept.

[6] *See Gas. Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 496, 500 (1931) (appellate court erred in directing the trial court to hold a new trial solely on damages because damages question was inextricably interwoven with liability question); *Olden v. LaFarge Corp.*, 383 F.3d 495, 496, 509 &n.6 (6th Cir. 2004) (in determining whether district court erred in certifying class, appellate court noted that bifurcation of the liability issue from the damages issue was a potential option and that "if done properly, bifurcation will not raise any constitutional issues" and that the parties could deal with that issue if it arose in the future); *Blyden v. Mancusi*, 186 F.3d 252, 256-57, 268-69 (2d Cir. 1999) (in § 1983 class action, trial court's bifurcation of case into liability and damages phases violated Seventh Amendment because it allowed damages juries to reexamine issues decided by the liability jury); *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1294, 1297, 1300, 1303 (7th Cir. 1995) (trial court's proposal to certify for class-action treatment the issue of negligence and bifurcate any remaining issues of liability and damages to be resolved in subsequent individual trials violated Seventh Amendment because the findings of the first jury would necessarily have to be reexamined by subsequent juries); *State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 311-12, 317-19, 328 (5th Cir. 1978) (in antitrust class action, trial court certified national class contingent on plan to bifurcate liability and damages phases of trial; appellate court reversed because the present record made it impossible to "determine whether the issues of liability and damages in this case are so interwoven that it would be violative of the Seventh Amendment to enter a bifurcation order," noting that in private antitrust suits "'there is no neat dividing line between liability and damages'"). The Pharmacy Defendants also cite *Bendectin*, but in that case the Sixth Circuit actually rejected the plaintiffs' argument that the district court's

Alternatively, and out of an abundance of caution, to the extent this Court is concerned that there is any possibility that bifurcation of Plaintiffs' nuisance claims from their non-nuisance claims against the Pharmacy Defendants may implicate the Reexamination Clause, Plaintiffs stand fully prepared and willing to bifurcate only their claims against the non-Pharmacy Defendants and proceed to trial on all of their claims against the Pharmacy Defendants in the CT3 bellwether in order to negate any potential Seventh Amendment concerns.

**D. Plaintiffs' Bifurcation Proposal Does Not Violate the Party-Presentation Rule.**

Acknowledging that Plaintiffs' proposal was meant to effectuate the Court's directives (Opp. at p. 7), the Pharmacy Defendants next attempt to impugn the actions of this Court. They claim the Court has "step[ped] away from its role as a neutral arbiter of the cases actually before it to re-engineer Plaintiffs' lawsuits into different cases that the Court would prefer to hear." *Id*. at p. 8. The Pharmacy Defendants argue such conduct violates the party-presentation rule. *Id*. at pp. 7-8. Under this rule, federal courts are cautioned to consider only the claims and contentions raised by the litigants before it. *See U.S. v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).

The Pharmacy Defendants' argument is wholly without merit. Here, Plaintiffs had asserted nuisance claims against the Pharmacy Defendants long before the Court directed the parties to choose cases for the CT3 trial. *See, e.g.,* Case No. 1:18-op-45079 at Dkt. No. 11. In designating these existing claims for a bellwether trial, the Court was simply exercising its broad discretion in managing the MDL in a way to maximize efficiency and promote resolution. *Supra* at §§ A-B.

None of the cases cited by the Pharmacy Defendants support their argument that the Court's actions violate the party-presentation rule. In *Sineneng-Smith*, a defendant was convicted for

---

trifurcation of the issue of proximate causation for a separate trial in an MDL involving product liability claims against a drug manufacturer violated their Seventh Amendment right to a jury trial. 857 F.2d at 306-20.

7

encouraging aliens to illegally enter the United States in violation of the Immigration and Nationality Act. 140 S. Ct. at 1577-78. The defendant appealed on several grounds, which were extensively briefed by both parties. *Id*. at 1578. But "[i]nstead of adjudicating the case presented by the parties, the appeals court named three *amici* and invited them to brief and argue issues framed by the panel, including a question [the defendant] herself never raised earlier." *Id*. The appellate court ultimately "[e]lect[ed] not to address the party-presented controversy," but rather decided the case based solely on this previously unraised issue. *Id*. at 1578, 1581. The Supreme Court held that the appellate court's actions "departed so drastically from the principle of party presentation as to constitute an abuse of discretion." *Id*. at 1578.

In *Greenlaw v. U.S.*, the Supreme Court held that, under the cross-appeal rule and the party presentation principle, "an appellate court may not alter a judgment to benefit a nonappealing party." 554 U.S. 237, 244 (2008). In that case, a criminal defendant was convicted on several gun charges. *Id*. at 241. Although the relevant statute required a minimum sentence of 622 months in prison, the district court mistakenly sentenced the defendant to 442 months instead. *Id*. at 241-42. The defendant appealed, arguing for a lesser sentence. *Id*. at 242. The government did not cross-appeal; although it did note the district court's sentencing error in its brief and at oral argument, it simply urged that the defendant's sentence be affirmed. *Id*. Despite this fact, the appellate court, acting on its own initiative, determined "that the applicable law plainly required a prison sentence 15 years longer than the term the trial court had imposed" and "instructed the trial court to increase [the defendant's] sentence to 622 months." *Id*. at 240. The Supreme Court held that this was error based on the government's failure to appeal the issue. *Id*. at 240, 244-45 ("This Court, from its earliest years, has recognized that it takes a cross-appeal to justify a remedy in favor of an appellee.").

Finally, in *Ligon v. City of New York*, an appellate court removed a judge from the New York City "stop-and-frisk" cases, which she had previously consolidated in her court, based on certain conduct that gave the appearance that her impartiality had been compromised.  736 F.3d 118, 121 (2d Cir. 2013), *vacated in part on other grounds,* 743 F.3d 362 (2d Cir. 2014).  Specifically, in addition to giving media interviews throughout the proceedings, during one particular hearing she "suggest[ed] that the plaintiffs bring a [separate] lawsuit, outlin[ed] the basis for th[at] suit, intimat[ed] her view of its merit, stat[ed] how she would rule on the plaintiffs' document request in that suit, *and* [told] the plaintiffs that she would take it as a related case." *Id.* at 124 n.17.

Here, the Court simply chose two existing nuisance cases from the MDL to be tried in a bellwether trial.  Nothing about that decision implicates the party-presentation rule.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant their Motion to Bifurcate Bellwether Claims, Join Bellwether Cases for Trial, and to Stay Remaining Claims.

Dated: May 29, 2020                          Respectfully submitted,


                                             */s/Paul J. Hanly, Jr.*
                                             Paul J. Hanly, Jr.
                                             SIMMONS HANLY CONROY
                                             112 Madison Avenue, 7th Floor
                                             New York, NY 10016
                                             (212) 784-6400
                                             (212) 213-5949 (fax)
                                             phanly@simmonsfirm.com

9

/s/ Joseph F. Rice
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

/s/ Paul T. Farrell, Jr.
Paul T. Farrell, Jr., Esq.
FARRELL LAW
422 Ninth Street, 3rd Floor
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER 1001 Lakeside Avenue East, Suite 1700 Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Frank Gallucci
Plevin & Gallucci Company, L.P.A.
55 Public Square
Suite 2222
Cleveland, Ohio 44113
(216) 861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiffs Lake County and Trumbull County, Ohio*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of May, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

*/s/Peter H. Weinberger*
Peter H. Weinberger

*Plaintiffs' Liaison Counsel*