IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE:  NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL DOCKET NO. 2804 |
| This document relates to:  ALL CASES | Hon. Judge Dan A. Polster |

# RESPONSE TO PHARMACY DEFENDANTS' OBJECTION TO SPECIAL MASTER'S DISCOVERY RULING NO. 22

The Plaintiffs' Executive Committee ("PEC") respectfully submits this memorandum in response to Pharmacy Defendants' Objection (ECF No. 3299) to the Special Master's May 8, 2020 modification to Discovery Ruling 22 (ECF No. 2712).

## INTRODUCTION

The Pharmacy Defendants' objection ("Objection") to DR-22, and to the Special Master's recent modification of that ruling, is premised on the faulty and pernicious assumption that an MDL court may only permit and oversee case-specific discovery. This has never been the law, and nothing in the Sixth Circuit's recent decision concerning the amendment to complaints in the CT1 cases remotely suggests such a result.  On the contrary, the fundamental purpose of an MDL is to coordinate *generic* discovery, the discovery that pertains to all of the cases centralized in the MDL.  It is precisely to avoid the inefficiencies of piecemeal discovery from defendants and inconsistent rulings from multiple courts that cases are centralized and coordinated for discovery that is common or that presents common issues.  The Sixth Circuit's reminder that individual bellwether

cases remain separate and distinct in no way undercuts or limits the Court's power to order, and oversee, generic discovery applicable to all of the cases pending before the Court.

The Objection suffers from several additional flaws.  First, to the extent that the Pharmacy Defendants seek to challenge the entirety of DR-22, and not merely the Special Master's recent modification, any such objection was long ago waived. The only issue properly before the Court is the May 8, 2020 modification to the DR-22 (Doc. # 3291), which requires Defendants to notify the PEC when they learn that any pending federal investigation against them involving opioids is closed. The Pharmacy Defendants argue that the fact an investigation has closed is not "relevant" as defined by Rule 401 of the Federal Rules of Evidence.  But Rule 401 provides the standard of relevance for admissibility at trial, not for the scope of discovery.  Rule 26 of the Federal Rules of Civil Procedure, which governs the scope of discovery, expressly provides that "[i]nformation within th[e] scope of discovery *need not be admissible in evidence to be discoverable*" (emphasis added), thereby precluding the Pharmacy Defendants' crabbed interpretation of "relevance" in Rule 26.  And although Rule 26 does require that discovery must be proportional to the needs of the case, the requirement that Defendants notify the PEC of closed investigation undeniably meets that test.

Pharmacy Defendants' objection to the Special Master's ruling should be overruled in its entirety.

## BACKGROUND

The discovery ruling to which the Pharmacy Defendants object is the latest in a series of rulings pertaining to the production, in this litigation, of documents produced in other cases and government investigations pertaining to the opioid crisis.  In CMO 1, dated April 11, 2018, the Court ordered defendants to produce to an MDL Repository non-privileged, relevant documents that were "previously produced pursuant to any civil investigation, litigation, and/or administrative action by federal (including Congressional), state, or local government entities involving the marketing or distribution of opioids. . . ." Doc. # 232 at 15, ¶ 9.k.ii.  CMO 1, by its terms, applied to "All Cases."  *Id.* at 1.  Thereafter, in Discovery Rulings 2 and 9 (dated June 30, 2018, and November 12, 2018, respectively), the Special Master clarified the scope of the obligation to produce documents from other cases and investigations.

Thereafter, certain disputes arose as to the scope of the documents to be produced on an ongoing basis under ¶ 9.k.ii of CMO 1.  To resolve these disputes, on September 6, 2019, Special Master Cohen issued Discovery Ruling 22.  That ruling provides

> Defendants shall produce in discovery in this MDL copies of all sworn statements, testimony, video-taped testimony, written responses and discovery, expert reports, and other documents and discovery that they produce in any court case, government investigation, or government hearing, regarding the marketing, sales, distribution, or dispensing of Opioids or Opioid Products, including any exhibits referred to in that testimony, on an ongoing basis, for the Track Two cases; except Defendants shall not produce any privileged materials, and instead shall produce privilege logs listing those materials, as has been the existing practice.

DR-22, Doc. # 2576 at 4.  Certain defendants sought clarification of DR-22.  In response, on October 3, 2019, the Special Master clarified and amended DR-22 to limit the required

production to materials from *closed* federal investigations, and to clarify that DR-22 did not require Defendants to produce grand jury information, nor material protected by HIPAA.  Amendment to DR-22, Doc. # 2712.  The Pharmacy Defendants did not object to DR-2 or DR-9, or the October 3, 2019 Amendment to DR-22.

On February 21, 2020, the Court issued an "Order Regarding Document Production to MDL Repository" to clear up confusion about the scope of DR-22.  Doc. # 3178.  The Court noted that although DR-22 appeared to apply to Track Two cases, this limitation appeared to be in error. Noting that CMO 1 applied to all cases, the Court's February 2020 order clarified that the obligation in DR-22 to produce material from other cases and investigations "shall apply to all defendants in all MDL cases."  *Id.* at 2.

In April 2020, Plaintiffs asked the Special Master to require defendants to identify the existence of ongoing opioid-related federal investigations. *See* Doc. # 3291.  Plaintiffs argued that although defendants were not required to produce, in the MDL, materials from ongoing investigations, identification of such investigations would permit Plaintiffs to monitor when those investigations became closed and were thus subject to the production requirements of DR-22.  In ruling on this request, on May 8, 2020, the Special Master declined to order the defendants to identify ongoing investigations.  Instead, he ordered Defendants merely to "inform the Plaintiffs Executive Committee whenever it receives any notice that a pending federal investigation has concluded."  *Id.*  at 3.

On May 21, 2020, the Pharmacy Defendants objected to the May 8 modification to DR-22.  In their objection, they ask the Court to overrule not only the May 8 modification,

but the entirety of the requirement, set forth in CMO 1 and in DR-22, that they produce to the MDL repository materials from other cases and investigations.[1]

## ARGUMENT

### I. THIS COURT SHOULD NOT VACATE THE DISCOVERY ORDERS REQUIRING DEFENDANTS TO PRODUCE DOCUMENTS FROM ALL CASES AND INVESTIGATIONS REGARDING DISTRIBUTION OR DISPENSING OF OPIOIDS

The Court should deny Pharmacy Defendants request to vacate the discovery orders requiring them to produce documents from all cases and investigations regarding distribution and dispensing of opioids, for both procedural and substantive reasons.

### A. To the Extent the Pharmacy Defendants Challenge Matters Beyond the Scope of the Special Master's May 8 Ruling, Such Objections Are Procedurally Improper

To the extent the Pharmacy Defendants challenge their core obligation to produce documents from other cases and investigations to an MDL repository, such objections are procedurally improper for two reasons.  *First,* these productions are required by CMO-1 – which requires all defendants to produce to the MDL repository documents from other cases and investigations -- as well as by DR-22.   CMO 1 is an order of the Court not subject to the objection process.  If the Pharmacy Defendants wish to seek review of CMO-1, they must proceed under Fed. R. Civ. P. 60 and meet the requirements for relief from a judgment or order.

---

[1] In their Objection, the Pharmacy Defendants refer only to DR-22, and do not mention the initial production requirement in CMO-1.  Nonetheless, their attacks on DR-22 are not specific to the matters set forth in DR-22, but rather pertain equally to the Court's initial order in CMO 1.

*Second,* to the extent the Pharmacy Defendants object to DR-2, DR-9, DR-22, or the Amendment to DR-22, all of which defined the scope of production under CMO 1, any such objection is waived. In one of the very first orders issued in this MDL, this Court set forth the procedure for objecting to rulings from the Special Masters.  *See* Doc. # 69 (Jan. 11, 2018).  That order provides:

> [A]ny party may file an objection to an order, finding, report, ruling, or recommendation by the Special Masters within 21 calendar days of the date it was filed; *failure to meet this deadline results in permanent waiver of any objection to the Special Masters' orders, findings, reports, rulings, or recommendations.*

Doc. # 69 at 4 (emphasis added).  The order further provided that "[a]bsent timely objection, the orders, findings, reports, rulings, and recommendations of the Special Masters shall be deemed approved, accepted, and ordered by the Court, unless the Court explicitly provides otherwise." *Id.*

Defendants did not object to DR-2 or DR-9; their time to do so has long since passed.  Although Defendants did object to DR-22, that objection was quite limited and did not challenge the rulings they now seek to upend.  Indeed, in seeking clarification and modification of DR-22 in September, 2019, the Pharmacy Defendants specifically stated that they "*do not object* to producing document relating to retail opioid sales or dispensing (collectively "dispensing") that are produced in opioid cases … filed by states or municipalities seeking damages and/or abatement."  Pharmacy Defendants' Sept. 24, 2019 Letter to Special Master (Exhibit A) at 4 (emphasis added); *see also id*. at 1 ("Defendants do not object to producing to Track 2 MDL Plaintiffs' Counsel materials they are producing in similar opioid litigations for damages and/or abatement filed by

other municipalities or states.") (emphasis added).  The matters to which the Pharmacy Defendants did object, such as production of grand jury information and material protected by HIPAA, were addressed in the Special Master's October Amendment to DR-22, *to which the Pharmacy Defendants also did not object.*

Under the clear and explicit terms of the Court's January 11, 2018 order, the Pharmacy Defendants have waived any objection to DR-2, DR-9, DR-22, or the October modification to DR-22.  Moreover, each of those orders has, by operation of the January 11, 2018 order, become an order of the Court, subject to modification only under the procedures set forth in Rule 60.  Based on these reasons alone, the Court can and should overrule the Pharmacy Defendants' objections to production of materials from other cases and investigations.

> B.    **Defendants' Objection to the Requirement that They Produce Documents to the MDL Repository Should Be Overruled**

Even if the Pharmacy Defendants were entitled to challenge the Court's earlier orders, their objections should be overruled.  Orders such as CMO-1 and DR-22, calling for repository production of documents relevant to all cases, are "routinely enter[ed]" by MDL courts, as Special Master correctly pointed out in his May 8, 2020 ruling. The Special Master cited four relevant cases supporting this point. In their objection, Pharmacy Defendants dismissed these cases in a footnote because "[t]hey involve product liability claims." Obj. 4, n.2.[2]  The Pharmacy Defendants do not explain why this is a material

---

[2] The Pharmacy Defendants' argument is especially puzzling because these defendants have consistently (if wrongly) asserted that opioid claims are "conventional products liability claims."  *See* ECF No. 497-1 at 8 (Pharmacy Defendants' Motion to Dismiss, incorporating by reference Distributors' argument that state-law opioid claims "are

distinction, but in any event, such orders are routinely entered in non-products liability MDLs too, which moots Pharmacy Defendants' argument.[3]

The thrust of the Pharmacy Defendants' argument throughout their brief is that MDL discovery must only occur through a "bellwether" case. This is not true. Conducting pretrial discovery on issues common to cases in the MDL is a core purpose of the pretrial centralization process that Congress created in § 1407. *See* 28 U.S.C. § 1407 (permitting cases that involve "one or more common questions of fact" to be centralized in an MDL for pretrial proceedings and discovery "for the convenience of parties and witnesses" and "the just and efficient conduct of such actions"); *see also In Re: National Prescription Opiate Litigation*, Case MDL No. 2804, Transfer Order, Doc. 328, at 4 (J.P.M.L. Dec. 5, 2017) (finding common questions as to the allegedly improper marketing and widespread

---

conventional products liability claims"); *see also* ECF No. 933-1 (argument by Manufacturers, in motion to dismiss, that opioid claims "sound entirely in products liability").

[3] *In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 409, 415, 1990 WL 1256 (D.P.R. 1989) (hotel fire mass tort case involving more than 2,000 plaintiffs and 200 various defendants in which MDL court established a "Joint Document Depository" containing testimony from 2,200 depositions and three million documents); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1140, 1997 WL 306529 (W.D. La. 1997) ("The Court established a Joint Document Depository in 1995 where all of the discovery materials are available for any party's reference" in a mass tort MDL involving hazardous waste against hundreds of defendants, third party defendants, and insurers); *In re Initial Pub. Offering Sec. Litig.*, 21 MC 92 SAS, 2011 WL 2732563, at *1–2 (S.D.N.Y. July 8, 2011) (document repository containing 30 million pages of discovery in "one of the longest and most protracted multi-district securities litigations in the country" noting the "1,000 complaints [that] were filed against 55 underwriters, over 300 issuers, and 1,000 officers and directors of the issuers."); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 93 F. Supp. 2d 876, 877, 2000 WL 381910 (M.D. Tenn. 2000) ("[T]here shall be a single document repository for the discovery production in this case" involving illegal billing practices).

8

diversion of prescription opiates into states, counties and cities across the nation, and discovery likely will be voluminous.)   Nothing in § 1407 suggests that the pretrial discovery to be centralized and coordinated is limited to bellwether cases. *See, e.g., In re Air Crash off Long Island, N.Y. on July 17, 1996*, 965 F. Supp. 5, 8 (S.D.N.Y. 1997) ("It would thwart the goals of efficiency and consistency underlying Section 1407 to restrict coordinated proceedings with respect to damages to only those issues common to all plaintiffs."); *see also* Manual Complex Lit. § 22.8 (4th ed.) ("Sometimes—particularly in multidistrict litigation—judges direct initial discovery toward matters bearing on the defendants' liability to all plaintiffs. . . ."); *id.* at § 11.423 ("coordinated common discovery can prevent duplication and conflicts. A joint discovery plan can be formulated for all cases. . . .").  Indeed, § 1407 – and the initial transfer order of the JPML creating this MDL – expressly allow for "*consolidated* pretrial proceedings." *See In Re: National Prescription Opiate Litigation*, Case MDL No. 2804, Transfer Order, Doc. 328, at 4 (J.P.M.L. Dec. 5, 2017).

Nor have MDL courts proceeded in the fashion the Pharmacy Defendants suggest. On the contrary, it is common practice in MDLs for courts to order generic discovery outside of (and often prior to the selection of) bellwether cases.  *See, e.g., In re: Gadolinium-Based Contrast Agents Products Liability Litigation (MDL No. 1909)*, 1:08-gd-50000-DAP, Case Management Order No. 2, Doc #: 26 at 5 (N.D. Ohio Mar. 24, 2008) (authorizing PSC to "[c]onduct all discovery in a coordinated and consolidated manner on behalf of and for the benefit of all Plaintiffs. . . ."); *In* re *Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prod. Liab. Lit.*, No. 3:09-md-02100-DRH-CJP, Initial Conference Order, Doc. # 83 at 1 (E.D. Mo. Oct. 23, 2009) (consolidating all cases for discovery); *In re: Denture*

9

*Cream Prod. Liab. Lit.*, Case No. 09-2051-MD-ALTONAGA, 2011 WL 13220167, at *2 (S.D. Fla. Aug. 16, 2011); *see also* Manual Complex Lit. § 11.422 (4th ed.) ("Sometimes judges order 'common' discovery to proceed in a specified sequence, without similarly limiting 'individual' discovery in the various cases.").  If the MDL court were meant to preside over discovery only in a handful of bellwether cases, what would be the point of transferring and coordinating *all* of the cases?  Plainly, in order to realize the efficiencies of the MDL process, the Court must be able to conduct discovery for *all* of the cases, so that they can be remanded "at . . . the conclusion of such pretrial proceedings."  § 1407.

Moreover, the MDL process guards against inconsistent rulings as well as duplicative productions.  If common discovery questions could be addressed only in individual actions, then the same discovery questions would be decided in multiple courts around the country following remand from the MDL.  The resulting inconsistent rulings – and the happenstance that different plaintiffs with nearly identical clams would be entitled to different discovery depending on which court decided the issue – are precisely what § 1407 was adopted to prevent.  *See also* JPML Order, p. 4 (ECF No. 1) ("centralization will substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations" and "allow a single transferee judge to coordinate with numerous cases pending in state courts.)."  By contrast, the bellwether process exists primarily to "assist in valuing cases and to encourage settlement." *In re E. I. Du Pont De Nemours*, 204 F. Supp. 3d 962, 968 (S.D. Ohio 2016) (internal citations and quotations omitted); *see also, e.g., In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 1441804, at *9 (S.D.N.Y. Apr. 12, 2016) ("[T]he primary purpose of bellwether trials is to

provide data points for settlement discussions with respect to the universe of cases.").  It is not a necessary feature of an MDL (although it is typically found to be a useful one), and in no way limits the scope of discovery.[4]

Nothing in the Sixth Circuit's mandamus order calls any of this into question. Indeed, the mandamus order did not pertain to discovery at all.  Rather, the Court of Appeals held that for purposes of what claims could be asserted and tried by particular plaintiffs, each case within the MDL retains its separate identity. The Court was concerned about the procedural rights defendants had vis à vis particular plaintiffs, and further concerned that the MDL court try only claims that were properly before it. *See In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 844-45 (6th Cir. 2020).  But the Sixth Circuit went out of its way to re-iterate that an MDL court has "broad discretion to create efficiencies and to avoid unnecessary duplication in its management of pretrial proceedings in the MDL."  *Id.*  As the reference to "pretrial proceedings" makes clear, those efficiencies must come in discovery.  The Court of Appeals' observation, in *dicta*, that where discovery is ordered in a particular case, the proportionality analysis must be

---

[4] While this MDL Court can and should carry out common discovery, DR-22 also recognizes the reality repeatedly affirmed by SM Cohen, that not all appropriate discovery can be accomplished through the MDL.  The MDL plaintiffs should have access to discovery conducted in other cases, just as other litigants have had access to MDL discovery. Ensuring a common base of documents also prevents the type of gamesmanship that was identified as a result of DR-22 and is the subject of the pending sanctions motion.  Such a common base of documents would further avoid the contentions now being asserted by some defendants that issues of confidentiality and privilege with respect to documents first produced in state court litigation cannot be adjudicated by an MDL Court, even when the documents are responsive to requests in the MDL and have been subsequently produced there.

11

based on the needs of that case cannot be read to alter the broad and well-established authority an MDL court has to oversee generic discovery applicable to all of the cases pending before it.

## II. PHARMACY DEFENDANTS' OBJECTION TO DISCLOSING "CLOSED INVESTIGATIONS" SHOULD BE OVERRULED

The only ruling to which the Pharmacy Defendants may properly object is quite narrow and does not pertain to the production of documents at all.  It is the Special Master's May 8, 2020 order that the Pharmacy Defendants inform the PEC when they learn an investigation has closed.  Defendants' objection to the May 8 order, however, is entirely without merit and should be overruled.

The Pharmacy Defendants do not claim that the status of a closed investigation is privileged or that providing that information is burdensome.  They argue, instead, that the information is not relevant and therefore not discoverable.  In making this argument, they rely on the definition of "relevant evidence" in Fed. R. Evid. 401:  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  But Rule 401 does not govern the scope of discovery.

Rather, as noted above, Fed. R. Civ. P. 26 governs the scope of discovery.  Rule 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

12

Defendants' argument proceeds from the assumption that the word "relevant" has the same meaning in Rule 26 as it has in Fed. R. Evid. 401, but this is not the case.  To begin with, Rule 26 itself specifically provides that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable," thus signaling that the Rules of Evidence do not govern the scope of discovery.  Of equal significance, however, the Advisory Committee Notes to the 2000 amendment to Rule 26 – the amendment that added the "relevance" requirement – make absolutely clear that the meaning of relevance in Rule 26 is not the same as in Fed. R. Evid. 401.  The Notes explain, for example, that

> A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

Advisory Committee Notes, Rule 26(b)(1) (2000).  The Notes further explain that "information must be relevant to be discoverable, even though inadmissible," and that "discovery of such [inadmissible] material is permitted if reasonably calculated to lead to the discovery of admissible evidence. *As used here, "relevant" means within the scope of discovery as defined in this subdivision . . . ." Id.* (emphasis added).  Had the Advisory Committee intended the word "relevant" to refer to Fed. R. Evid. 401, it would have said so.

Advisory Committee Notes to a subsequent amendment of Rule 26 further confirm that the scope of discovery is not limited by Fed. R. Evid. 401. The 2015 amendments to Rule 26 omitted previous language that expressly provided for the discovery of "the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." The Advisory Committee explained: "Discovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples. *The discovery identified in these examples should still be permitted under the revised rule when relevant and proportional to the needs of the case.*" Advisory Committee Notes, Rule 26(b)(1) (2015) (emphasis added). Of course, none of the information so described is "relevant" within the meaning of Fed. R. Evid. 401, yet the Advisory Committee has made clear that this kind of information – not in and of itself "relevant" in the trial sense, but absolutely relevant to the claims and defenses of the parties, *see* Rule 26(b)(1) -- is discoverable.

Not surprisingly, courts that have considered the question have found that term "relevant" as used in Rule 26 does not have the same meaning as the term used in Fed. R. Evid. 401. *See, e.g., DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 WL 1429521, at *4 (N.D. Ill. Mar. 18, 2020) ("Relevance, particularly in the discovery phase, is a low bar to meet. . . . In determining the scope of discovery under Rule 26, relevance is construed broadly."); *McCullough v. Hanley*, No. 17 CV 50116, 2019 WL 3776962, at *6 (N.D. Ill. Aug. 12, 2019) (rejecting argument that the term "relevant" in Rule 26 has the exact same meaning as when it is used in the Federal Rules of Evidence) (citing *In re Cooper Tire &*

*Rubber Co.*, 568 F.3d 1180, 1189 (10th Cir. 2009)); *Huang v. Cont'l Tire The Americas, LLC*, No. 10-12598, 2011 WL 2620987, at *1 (E.D. Mich. July 5, 2011) (holding that "'[r]elevant' in the context of the rules of discovery is necessarily broader than 'relevant' as that term is used in the rules of evidence."); *see also Washington v. Follin*, No. 414-CV-00416-RBH-KDW, 2016 WL 1614166, at *7 (D.S.C. Apr. 22, 2016).

The Court has already determined that production of materials from other opioid-related cases and investigations is proper in this MDL.  The Pharmacy Defendants successfully argued that they should not have to provide materials from ongoing federal investigations, citing policy concerns pertaining to the confidentiality of such investigations.  The relevance (in the Rule 26 sense) of the fact that an investigation has closed is clear:  upon closure of an investigation, materials from that investigation become discoverable.  Such material clearly falls within the scope of information about "the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter," all of which, the Advisory Committee has made clear, are discoverable so long as they are otherwise relevant and proportional to the needs of the case.

Nor can there can be any serious dispute that the Special Master's ruling is "proportional to the needs of the case" under Rule 26(b)(1). All the factors strongly support Plaintiffs' position. The issues at stake are important to people across the nation, and the amount in controversy in the MDL is stratospheric. Complying with the notification requirement imposes no burden on Defendants—merely a telephone call to the PEC, or a few keystrokes—but the discovery is highly significant and will create

efficiencies in discovery, as the Special Master found. None of the Rule 26 considerations even slightly favor Pharmacy Defendants.

That may be why Pharmacy Defendants skip over the proportionality factors altogether. They instead simply assert the discovery is irrelevant, and argue "[t]here is no possible way that the investigation status of defendants *who are not currently litigating an MDL matter, or who have settled Track 1,* are relevant." Obj. 6. However, Pharmacy Defendants *are* currently litigating an MDL matter (as evidenced by their hundreds of other filings in the MDL docket), and Pharmacy Defendants did *not* settle Track 1. Thus, their own leading argument for irrelevance does not apply to them. And they have no standing to make hypothetical arguments about the Special Master's ruling as applied to other defendants who haven't objected to it (and who, under the Court's January 11, 2018 Order, have "permanent[ly] waive[d]" any such objection).

Even if other Defendants had objected, however, it would make no difference. CMO-1 and the subsequent orders pertaining to production of material from other cases and investigations apply to all defendants in the MDL (and not just defendants in bellwether cases).  As noted above, all the federal opioid cases are consolidated in this MDL for pretrial proceedings in order to accomplish the efficiencies of an MDL and to avoid both duplicative discovery and inconsistent rulings.  Most defendants are named in more than a thousand cases pending in the MDL. For purposes of the relevance, or proportionality of the information required by the May 8 order, it makes no difference whether or not a defendant is actively litigating a bellwether case now.

16

None of the case law in Pharmacy Defendants' brief supports their objection to the Special Master's ruling. Only one case even involved discovery. In *Urethane Antitrust Litig.*, 2010 WL 5287675, at *7 (D. Kan. 2010), MDL defendants moved to compel discovery from *plaintiffs* about prior investigations into *plaintiffs'* activities—even though defendants had no counterclaims against the plaintiffs, and there was no relevance to the investigative records. *Id.*

The remainder of the cases on which the Pharmacy Defendants rely do not even involve discovery. They cite *Ocasio v. U.S. Dep't of Justice*, 70 F. Supp. 3d 469, 480 (D.D.C. 2014) for the proposition that the modification to DR-22 violates "their privacy and reputational interests"—but *Ocasio* is almost comically inapposite to that proposition. The district court merely upheld the DOJ's denial of a *pro se* plaintiff's FOIA request for confidential FBI files about someone the plaintiff evidently suspected of "Stolen Valor." *Id*. The FBI files were classified as "law enforcement records" whose disclosure would "constitute an unwarranted invasion of personal privacy," and therefore they were exempt from FOIA. *Id*. 479–80. There are no similar law enforcement concerns with the Special Master's ruling—because Defendants need only reveal when an investigation is closed.[5]

---

[5] When an investigation closes, in due course the Pharmacy Defendants must also produce any documents or information previously-produced in the investigation. But that requirement comes from CMO 1 and the follow-on rulings, not from the Special Master's recent modification. Even though Plaintiffs will eventually receive documents relating to a newly-closed investigation, the notification requirement ensures that there is transparency and efficiency between the parties in the discovery process, and the information about when an investigation is closed is itself a discoverable fact.

Pharmacy Defendants also rely *John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau*, 195 F. Supp. 3d 9, 13 (D.D.C. 2016), in which the court allowed the plaintiff to sue Consumer Financial Protection Bureau under the pseudonym "John Doe" to protect his identity. But the court's entire analysis hinged on the fact John Doe was *currently* under an "*ongoing investigation*"—a fact so significant to the court, the judge mentioned it 17 times in his opinion. The court also twice suggested that when the investigation closed, the analysis would be different. Because the Special Master's ruling expressly exempts ongoing investigations—and only applies to closed investigations—*John Doe* is irrelevant.

Next is *ACLU v. U.S. Dep't of Justice*, 750 F.3d 927, 933 (D.C. Cir. 2014), another FOIA case. At issue was the ACLU's request for the names of all those who were prosecuted, but acquitted, for federal crimes based on warrantless cell phone searches. The DOJ denied the request based on the FOIA statute, and the court agreed. The court did not consider issues of "relevance" or Rule 26(b). It merely considered the potential harm that may befall the acquitted if, years after they had moved on in their lives, their "neighbors, friends, and family" could learn of the prosecution. The court was even concerned, for example, that one of the acquitted defendants may have been "charged with producing child pornography [but his] case was dismissed after the government identified the real perpetrator." Walmart, Walgreens, or CVS assuredly will not find themselves in such a predicament by merely notifying the PEC when an opioid investigation is closed.

Finally, *Matter of the Application of WP Co. LLC*, 201 F. Supp. 3d 109, 128 (D.D.C. 2016) involved a newspaper's motion to unseal criminal court records, under the First

Amendment, about an individual cooperating in an FBI investigation, even though doing so would publicize "intimate personal details regarding [his] sexual preferences and partners" and other details of his "intimate life and unrelated personal conduct." The court declined to unseal the records for reasons that included "compelling law enforcement interests" weighed against it. *Id* The Special Master's ruling implicates no law enforcement interests (nor even any privacy interests).

By contrast to the inapplicable authorities contained in Pharmacy Defendants' brief, there are many instances where courts have deemed documents and information from "prior investigations" to be relevant and discoverable.[6] The Special Master's ruling is also in line with cases that allow discovery about a party's compliance with discovery obligations, particularly when there is reason to question a parties' compliance. *See, e.g.*, *Ruiz-Bueno v. Scott*, No. 2:12-CV-0809, 2013 WL 6055402, at *2 (S.D. Ohio Nov. 15, 2013) (noting that "[s]ometimes, information about discovery is a matter which may aid a party

---

[6] *See, e.g.*, *Norton v. Bank of Am., N.A.*, 05-61344-CIV, 2006 WL 8432180, at *8 (S.D. Fla. Apr. 27, 2006) (overruling Bank of America's objection to discovery of "prior investigations, audits, lawsuits or settlements" and refusing to limit the geographic scope because such discovery "may be relevant or lead to relevant information" even from other regions of the country); *MedCity Rehab. Services, LLC v. State Farm Mut. Auto. Ins. Co.*, 11-CV-14777, 2013 WL 1898374, at *4 (E.D. Mich. May 7, 2013) (granting State Farm's discovery request in support of its insurance-fraud claim for all "civil investigations or proceedings" involving plaintiff); *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. CIV. 14-11191, 2015 WL 1565462, at *1 (E.D. Mich. Apr. 8, 2015) (holding Defendant must "produce to the plaintiffs the documents it provided to Congress, NHTSA, and other government agencies . . . .")

in the preparation of his case. When that is true, that information is relevant within the meaning of Rule 26(b)") (quotations and punctuation omitted).[7]

Here, there exist legitimate questions about the completeness of Defendants' prior document productions. For example, AmerisourceBergen produced approximately 75,000 documents during Track 1 discovery, but it produced more than 400,000 new documents since the resolution of Track 1—all which should have been produced earlier.[8] Also, according to a recent report from ProPublica, while Walmart has produced just over 100,000 pages in this expansive MDL litigation, it has produced over 1,000,000 pages of documents to the federal government in connection with a federal investigation out of Texas.[9] When Walmart learned the criminal investigation was closed, Walmart was not dutiful in complying with DR-22. Rather, Walmart unilaterally decided that because there was a separate civil investigation still pending, the two investigations were interconnected. By refusing to acknowledge the now-closed criminal investigation, Walmart avoided its obligation to produce documents related to the criminal

---

[7] Pharmacy Defendants' claim that *Scotts Co., LLC v. Liberty Mut. Ins. Co.*, No. CIV. A. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007) stands for a conflicting principle, that is, that "discovery about discovery" is not allowed. But the court in *Scotts* denied plaintiff's request for a forensic examination of electronically stored information under Rule 34. It did not analyze Rule 26(b).

[8] These documents were produced in the MDL only because they were produced in New York state court litigation, and as a result uploaded to the MDL Repository pursuant to DR-22.

[9] *See* Jesse Eisinger & James Bandler, *Walmart Was Almost Charged Criminally Over Opioids. Trump Appointees Killed the Indictment*, PROPUBLICA (March 25, 2020), https://www.propublica.org/article/walmart-was-almost-charged-criminally-over-opioids-trump-appointees-killed-the-indictment.

investigation. The Special Master's ruling will prevent any party from unilaterally making such determinations in the future. For that reason alone, this vanishingly small discovery burden on Pharmacy Defendants is justified, for the reasons discussed by the Special Master in his order.

## CONCLUSION

For the foregoing reasons, the Court should overrule the Pharmacy Defendants' Objection (ECF No. 3299) to the Special Master's May 8, 2020 modification of Discovery Ruling 22 (ECF No. 2712).

Dated:  June  2, 2020

Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
phanly@simmonsfirm.com

/s/Joseph F. Rice
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

/s/Paul T. Farrell, Jr.
Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth St., 3rd Floor
Huntington, WV  25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

/s/Peter H. Weinberger
Peter H. Weinberger
SPANGENBERG SHIBLEY &
LIBER
1001 Lakeside Avenue East, Suite
1700 Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of June, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

*/s/Peter H. Weinberger*
Peter H. Weinberger
*Plaintiffs' Liaison Counsel*