# EXHIBIT A

# Morgan Lewis

**Kelly A. Moore**
Partner
+1.212.309.6612
kelly.moore@morganlewis.com

September 24, 2019

VIA E-MAIL

Special Master David R. Cohen
24400 Chagrin Blvd., Ste. 300
Cleveland, OH 44122
david@specialmaster.law

Re:   Request for Reconsideration and Clarification of Discovery Ruling 22

Dear Special Master Cohen:

We write on behalf of defendants[1] (the "Defendants") to request clarification of Discovery Ruling 22, issued on September 6, 2019 (Dkt. 2576) ("DR 22"). At the outset, we note that Defendants do not object to producing to Track 2 MDL Plaintiffs' Counsel ("Plaintiffs") materials they are producing in similar opioid litigations for damages and/or abatement filed by other municipalities or states. We write, however, to obtain clarification on certain other issues.

Plaintiffs' request resulting in DR 22 was for ongoing production of "discovery produced by Defendants in parallel state and other federal opioid proceedings." 7/19/19

---

[1] Moving defendants are AmerisourceBergen Drug Corp.; Allergan Finance, LLC f/k/a Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.; Anda, Inc.; Cardinal Health, Inc.; CVS Rx Services, Inc., CVS Indiana, L.L.C., CVS Tennessee Distribution, L.L.C., CVS Pharmacy, Inc., West Virginia CVS Pharmacy, L.L.C.; Discount Drug Mart, Inc.; Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc.; H.D. Smith, LLC d/b/a HD Smith, f/k/a H.D. Smith Wholesale Drug Co.; Henry Schein, Inc. and Henry Schein Medical Systems, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Mallinckrodt LLC, Mallinckrodt plc, and SpecGx LLC; McKesson Corporation; Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center; Cephalon, Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Walgreen Co. and Walgreen Eastern Co.; Walmart Inc. Mallinckrodt plc is an Irish company that is not subject to and contests personal jurisdiction. It is specially appearing to join this motion and does not waive and expressly preserves its personal jurisdiction challenge.

Morgan, Lewis & Bockius LLP

101 Park Avenue
New York, NY  10178-0060
United States
T +1.212.309.6000
F +1.212.309.6001

DB1/ 107433189.1

Letter from Skikos et al. at 1. Defendants opposed Plaintiffs' request. 7/15/19 Letter from D. Rice; 7/24/19 Letter from A. Lucas.

DR 22, however, can be read to include far more than what Plaintiffs requested. For example, while Plaintiffs asked for "discovery" produced in other "opioid proceedings," DR 22 appears to require production of materials produced in pending government investigations. Similarly, Plaintiffs asked for materials related to the "marketing" and "distribution" of opioids, but DR 22 requires production of materials related to "dispensing" of opioids. Such "dispensing" material, by its very nature, often contains private Protected Healthcare Information that does not need to be redacted when produced to the government during an investigation but which cannot be provided to Plaintiffs under federal privacy laws. Requiring production of that material may also implicate cases with minimal, if any, relevance to claims filed by Plaintiffs.[2] Defendants do not believe DR 22 was intended to risk interference with law enforcement objectives and violations of individual privacy interests.

Accordingly, for the reasons set forth below, Defendants request that you clarify or reconsider certain aspects of DR 22 consistent with the proposed language set forth in the conclusion of this letter.

**A.  Government Investigations.** As worded, DR 22 requires production of any testimony or documents provided as part of "government investigations," whether civil or criminal, whether in public litigation or in a confidential or cooperative posture, whether the subject of the investigation is the defendant or a third party, so long as the "investigation" has any relationship to marketing, sales, distribution, or dispensing of opioids. That result would be contrary to public interest and in many instances is expressly prohibited by state or federal law.

It is well established, for example, that grand jury proceedings are secret – to protect the investigations themselves and the reputations of those who may be investigated and cleared of any wrongdoing. *See, e.g., Matter of Grand Jury Proceedings, Special Sept., 1986,* 942 F.2d 1195, 1198 (7th Cir. 1991) ("The courts long have recognized several distinct interests served by safeguarding the confidentiality of grand jury proceedings…. [P]erhaps most fundamentally, by preserving the secrecy of the proceedings, we assure that persons who are accused, but exonerated, by the grand jury will not be held up to public shame or ridicule.") (citing *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 221, 219 (1979)).[3] In fact, the interest in grand jury secrecy is so well-established that courts do not have the authority to order grand jury information produced absent a particularized, three-factor showing that Plaintiffs have not even attempted to make here. *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222 (1979) (setting forth test); *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682-83

---

[2] Plaintiffs' request that precipitated DR 22 did not seek production of dispensing materials and, accordingly, the Pharmacy Defendants did not have an opportunity to object to the inclusion of such language at that time.

[3] Revealing grand jury information can result in criminal contempt or other criminal charges. *See United States v. Jeter,* 775 F.2d 670, 679-682 (6th Cir. 1985) (affirming criminal conviction of man who obtained grand jury information from a court report and disseminated it to grand jury target).

(1958) (mere showing that disclosure of grand jury materials would be helpful to civil proceedings does not meet "particularized need" standard); *S.E.C. v. Oakford Corp.*, 141 F. Supp. 2d 435, 437 (S.D.N.Y. 2001) ("While . . . a witness is [generally] free to voluntarily disclose his testimony before a grand jury, he may not be compelled to do so by another person; and even a court may not overcome the presumption of grand jury secrecy absent a strong showing of necessity.").

Similarly, ongoing government civil investigations are afforded protections under the law and many states have statutes that expressly prohibit the disclosure of materials and testimony provided during the course of such investigations. *See, e.g.*, NEW YORK EXEC. LAW § 63(8) (any investigating agent or witness "who shall disclose to any person … the name of any witness examined or any information obtained upon such inquiry … shall be guilty of a misdemeanor"); WASH. REV. CODE §19.86.110(7) ("No documentary material, answers to written interrogatories, or transcripts of oral testimony produced pursuant to a demand, or copies thereof, shall, unless otherwise ordered by a superior court for good cause shown, be produced for inspection or copying by, nor shall the contents thereof be disclosed to, other than an authorized employee of the attorney general, without the consent of the person who produced such material, answered written interrogatories, or gave oral testimony.").

But even when not expressly prohibited by statute, there are obvious public policy interests implicated by requiring disclosure of materials that could reveal the targets of civil investigations or potentially disrupt or interfere with such investigations. *See, e.g.*, *John Doe Co. No. 1. v. CFPB*, 195 F. Supp. 3d 9, 21-24 (D.D.C. 2016) (disclosure of subjects of ongoing CFPB investigation risked "debilitating reputational and financial hardship" that outweighed public interest in disclosure and warranted pseudonymous treatment). As noted by DOJ in its September 20 email, DR 22, as currently written, "would provide all parties in the MDL with a roadmap of the federal government's investigatory activities, both criminal and civil, including the government's targets, key witnesses, legal theories, and areas of inquiry. By creating such a roadmap, the federal government's investigations may be significantly compromised." 9/20/19 e-mail from N. Waites to D. Cohen.

Defendants believe that the intended objectives of DR 22 are achieved by amending the order to include productions being made in similar opioid litigations for damages and/or abatement filed by other municipalities or states, without reference to "government investigations."

**B. Lack of express relevance requirement.** DR 22 is also overbroad because, unlike CMO-1, it does not include a requirement in the order that the production be "relevant to the claims in this MDL proceeding." *See* CMO-1 at ¶ 9(k)(ii). Read literally, it would encompass an array of cases that have minimal relevance to Track 2 claims. For example, without any sort of relevance requirement, DR 22 encompasses patent cases, which have already been ruled outside the scope of CMO-1. *See* Discovery Ruling 2. It could also encompass third-party subpoena requests or cases that may involve, only in part, an opioid, but have little to no bearing on the type of claims being filed by the MDL plaintiffs.

**C.    Retail Sales and Dispensing.** The Retail Pharmacy Defendants[4] do not object to producing documents relating to retail opioid sales or dispensing (collectively "dispensing") that are produced in opioid cases similar to Track 2 (*i.e.*, opioid cases filed by states or municipalities seeking damages and/or abatement). The Retail Pharmacy Defendants do object, however, to applying DR 22 more broadly to encompass other litigation or government investigations involving dispensing of opioids for the same reasons stated above, as well as for two additional reasons unique to dispensing claims.

First, pharmacy dispensing material necessarily implicates individual patient non-party privacy interests. While dispensing materials produced to the government as part of an investigation often include health information about the patients to whom the drugs were dispensed, HIPAA includes an exception for producing documents with protected health information to government entities. 45 C.F.R. 164.512(f). There is no such exception for Plaintiffs or their lawyers and, indeed, the law expressly prohibits the disclosure of such information. Defendants would be required to manually re-review every document provided to a government entity—and extensively redact many—to comply with federal privacy laws. There is no good justification for requiring that kind of wholesale, line-by-line re-review of hundreds of thousands of documents—most of which will provide no useful, admissible evidence for Plaintiffs.

Second, while Plaintiffs have asserted "dispensing" claims in the Track 2 cases, it is not at all clear that such claims are viable or can survive a motion to dismiss under West Virginia law. The West Virginia Medical Professional Liability Act provides that no plaintiff can file a medical professional liability action against a health care provider (such as a pharmacy) without first meeting certain pre-filing requirements, including serving a certificate of merit, which Plaintiffs failed to do. *See* W. VA. CODE §§ 55-7B-6. West Virginia law also immunizes pharmacies against liability for allegations relating to the "quality" of drugs dispensed, absent allegations that the pharmacy altered the drug from its original form. *See* W. VA. CODE § 30-5-21(a). We expect that the dispensing claims in the Track 2 cases will be the subject of extensive motion-to-dismiss briefing. The legal uncertainty surrounding these claims further supports limiting DR 22 to dispensing productions made in similar opioid cases filed by states and municipalities.

*          *          *

For the reasons stated above, Defendants respectfully request that the order be clarified as set forth below:

> Defendants shall produce in discovery for Track 2 in the MDL copies of all sworn statements, testimony, video-taped testimony, written discovery responses, expert reports, and other documents and discovery that they produce in any Opioid Litigation.

---

[4] The Retail Pharmacy Defendants are CVS Rx Services, Inc., CVS Indiana, L.L.C., CVS Tennessee Distribution, L.L.C., CVS Pharmacy, Inc., West Virginia CVS Pharmacy, L.L.C.; Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center; Walgreen Co. and Walgreen Eastern Co.; Walmart Inc.

Opioid Litigation shall mean a similar opioid litigation regarding the marketing, distribution or dispensing of Opioids seeking damages or abatement filed by municipalities or states.

The productions shall be made on an ongoing basis until the close of fact discovery for the Track 2 cases. Defendants shall not produce any privileged materials, and instead shall produce privilege logs listing those materials, as has been the existing practice. Geography limitations and product limitations shall be consistent with those set out in Discovery Orders 2 and 3 or any subsequent ruling issued concerning the appropriate geographic and temporal scope of discovery for Track 2.

This order shall supersede the language used in the September 6 version of Discovery Ruling 22.

Defendants also request that the Special Master issue an order extending the deadline to appeal DR 22, along with any ruling issued in response to this request, until two weeks after the ruling on this request is served.

Respectfully submitted,

Kelly A. Moore
*Counsel for Defendant Rite Aid of Maryland, Inc.*

Cc:
Plaintiffs' Counsel (mdl2804discovery@motleyrice.com);
Defendants' Counsel (xALLDEFENDANTS-MDL2804-Service@arnoldporter.com)

5