# EXHIBIT C

```
                                                            Page 1

 1          IN THE UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF OHIO
 3                  EASTERN DIVISION
 4              ~~~~~~~~~~~~~~~~~~~~
 5
 6  IN RE:  NATIONAL PRESCRIPTION OPIATE LITIGATION
 7          Case No.:  1:17-md-2804-DAP
 8
 9  This document relates to:
10  All Cases
11
12              ~~~~~~~~~~~~~~~~~~~~
13
14              AUDIO TRANSCRIPTION
15          10/8/18 Telephonic Conference
16              Transcribed at:
                Veritext - Cleveland
17        1100 Superior Avenue, Suite 1820
                Cleveland, Ohio
18
19              Buster Beck, RPR
20
21
22
23
24
25
```

```
                                                            Page 22
 1  should include a ranking, you know?  If you're
 2  asking for 40, there's got to be 10 or 15 that
 3  you most want, and the others that are kind of
 4  second tier.  And that's true for everybody.
 5  That's the only way I'm going to get through
 6  this and help you.
 7          Comments?
 8          MR. MOUGEY:  Yes.  I have a quick
 9  -- a quick point of clarification.  This is
10  Peter Mougey again.
11          On the prioritization and the fact
12  that we had refused, so this is where we need
13  your help.  So we didn't refuse.  What we were
14  asking for was a prioritization based on the
15  temporal scope of the time frame of the
16  custodial file.  So if they have a custodial
17  file and it's six months, and it's in 2013 to
18  the pharmacy integrity team -- this is just an
19  example that they're offering -- began in 2012,
20  2013.  So that's post.
21          So what we were looking for is,
22  what custodial files are available pre 2012 and
23  2013, and then we'll help prioritize.  So I
24  think all of us -- meaning Plaintiffs and
25  Defendants -- would -- would -- to give us the
```

```
                                                            Page 23
 1  tools to be able to prioritize -- because right
 2  now we're playing pin the tail on the donkey.
 3  We don't know -- we don't know who we're asking
 4  for, time frame wise.  We're saying; Well, tell
 5  us when do you have the custodial files
 6  available for us?  I think if all of us will
 7  endeavor to do that, that will all -- give us
 8  all the tools to help kind of make some
 9  intelligible decisions about when the custodial
10  file covered.  Because as of right now, most of
11  us just have names.  Sometimes we have titles.
12  But we don't even have time periods of titles,
13  and we don't have org charts.
14          So we're --
15          SPECIAL MASTER COHEN:  Right.  So I
16  agree with that.  I agree that during this meet
17  and confer process that it's appropriate to ask
18  opposing parties about the nature of the
19  custodial file you had received.  And I think
20  that actually that might help resolve this.
21          If -- if, for example, Plaintiffs
22  learn that out of the -- I'm just making this
23  up -- 40 custodians that they've asked for from
24  Walgreens, that 15 of them don't have any
25  documents prior to 2012, then maybe they're not
```

```
                                                            Page 24
 1  going to want them after all.  So this might
 2  help resolve some of the issue.
 3          So I think it is appropriate for
 4  the parties to ask about the nature of the
 5  custodians and their files in the process of
 6  this meet and confer, and that's obviously a
 7  bilateral suggestion.
 8          MS. SWIFT:  David, this is Kate.
 9          The only thing I need to add to
10  that, we're happy to talk about, you know, how
11  long folks have been at the company and that
12  sort of thing, but to determine how far back
13  somebody's custodial file goes you actually
14  have to collect and process the custodial
15  file --
16          SPECIAL MASTER COHEN:  No.  I think
17  you can get some good guesses.  I think you can
18  make some good guesses.
19          MS. SWIFT:  We'll do our best.
20          SPECIAL MASTER COHEN:  I understand
21  that it ain't going to be perfect, but if you
22  know that someone has not been there -- you
23  know, began working there in 2012, then it's
24  unlikely that their custodial file is going to
25  retrieve anything earlier than that date.
```

```
                                                            Page 25
 1          MR. SHEPPLE:  This is Mark -- this
 2  is Mark Shepple.  I didn't want to cut this
 3  conversation off, but it sounds like you're
 4  done with Walgreens.
 5          I was just going to say -- I was
 6  going to talk about number five.  I think the
 7  good news is, what you just said probably kind
 8  of puts that on the next week agenda.  And I
 9  think it's -- at least from our perspective --
10  it makes sense.  There's a lot -- you know,
11  this is not one where I can say there's no
12  disagreement, frankly, because I think there
13  probably will be, but it is one that I fairly
14  confidently can say that both sides have some
15  interest in talking about this, getting more
16  clarity, getting more information.  I don't
17  think it's ripe.  I think its points are kind
18  of highlighted for now.  But I think a few
19  days, as you suggested, will benefit us all.
20          And I think -- what I think the
21  protocol at least both sides seem to be asking
22  for at least is a few sentences or a little
23  more about what -- you know, what it is you
24  want, maybe a little description about who
25  these people are, why they're not appropriate.
```

Veritext Legal Solutions
www.veritext.com                                                  888-391-3376