**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*"All Cases"* | **MDL No. 2804**<br>**Case No. 17-md-2804**<br>**Judge Dan Aaron Polster** |

**PHARMACY DEFENDANTS' OPPOSITION TO PLAINTIFFS' EXECUTIVE**
**COMMITTEE'S MOTION FOR LEAVE TO TAKE**
**DISCOVERY OF NATIONWIDE DISPENSING DATA**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 3

I.   Plaintiffs Have Made No Showing That The Requested Discovery Is Relevant
     And Proportional To The Needs Of Any Particular Cases ................................................ 3

     A.   Any Discovery Must Be Relevant And Proportional To A Particular Case ......... 4

     B.   Plaintiffs Have Made No Showing of Relevance And Proportionality
          To Particular Cases ................................................................................... 7

     C.   The Scope Of Discovery Must Account For Not Only The Burden On
          Pharmacy Defendants But Also The Grave Privacy Interests At Stake .............. 11

II.  Even If Plaintiffs Had Shown That The Requested Discovery Was Relevant
     And Proportional, Their Request Is Procedurally Improper ........................................... 13

III. Whether The Requested Discovery Has The Potential To Drive Settlement Is
     An Improper Consideration ......................................................................... 14

CONCLUSION ................................................................................................................ 15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Chudasama v. Mazda Motor Corp.*,
123 F.3d 1353 (11th Cir. 1997) ............................................................13

*Colon-Cabrera v. Esso Standard Oil Co.*,
723 F.3d 82 (1st Cir. 2013)...................................................................15

*Daniels v. City of Sioux City*,
294 F.R.D. 509 (N.D. Iowa 2013) .........................................................15

*Dzik v. Bayer Corp.*,
846 F.3d 211 (7th Cir. 2017) ..................................................................5

*E.E.O.C. v. Giumarra Vineyards Corp.*,
No. 1:09-CV-02255-AWI, 2012 WL 393333 (E.D. Cal. Feb. 6, 2012) ................................15

*In re Agent Orange Prods. Liab. Litig.*,
517 F.3d 76 (2d Cir. 2008)......................................................................5

*In re Bard IVC Filters Prods. Liab. Litig.*,
317 F.R.D. 562 (D. Ariz. 2016) ...............................................................4

*In re CVS Pharmacy, Inc.*,
956 F.3d 838 (6th Cir. 2020) ......................................................... *passim*

*In re DePuy Orthopaedics, Inc., ASR Hip Implant Prods. Liab. Litig.*,
No. 1:10-md-02197 (N.D. Ohio Sept. 26, 2011) ........................................5

*In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*,
No. 1:13-MD-2428 (D. Mass. Dec. 6, 2013) ............................................5

*In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*,
No. 1:08-GD-50000 (N.D. Ohio June 16, 2008) ........................................5

*In re Korean Air Lines Co.*,
642 F.3d 685 (9th Cir. 2011) ..................................................................5

*In re Nat'l Prescription Opiate Litig.*,
927 F.3d 919 (6th Cir. 2019) ................................................................14

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*,
No. 2:17-md-02789 (D.N.J. July 30, 2018) ..............................................5

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2017 WL 4680242 (N.D. Cal. Oct. 18, 2017)...........................4

*In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*,
313 F.R.D. 32 (E.D. La. 2016)............................................................4, 12

*John B. v. Goetz*,
531 F.3d 448 (6th Cir. 2008) ................................................................12

**TABLE OF AUTHORITIES**
(continued)

<b>Page(s)</b>

*Kothe v. Smith*,
  771 F.2d 667 (2d Cir. 1985)................................................................................15

*Neitzke v. Williams*,
  490 U.S. 319 (1989)...................................................................................13, 14

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984)........................................................................................15

**OTHER AUTHORITIES**

*Annotated Manual for Complex Litigation* § 11.41 (4th ed.) ....................................6, 13

Fed. R. Civ. P. 1 ..............................................................................................14

Fed. R. Civ. P. 26 ......................................................................................*passim*

John T. McDermott, *The Judicial Panel on Multidistrict Litigation*,
  57 F.R.D. 215 (1973) .....................................................................................14

For the second time in this MDL, Plaintiffs ask Pharmacy Defendants to compile and produce highly-sensitive data detailing tens or hundreds of millions of prescriptions filled over a period of decades across the entire country.  It hardly needs to be said that the Sixth Circuit's mandamus ruling and related stay order require the Court to deny this request.  Any discovery ordered under Rule 26(b) in an MDL, the appeals court directed, "must—per the terms of the Rule—be based on the court's determination of the needs of *the particular case in which the discovery is ordered*."  *In re CVS Pharmacy, Inc.*, 956 F.3d 838, 846 (6th Cir. 2020) (emphasis added).  Despite that clear directive, Plaintiffs now brazenly attempt to justify this latest request on the needs of the MDL as a whole, "rather than in any specific case."  Doc. 3301 ("Mot.") at 9.  Their motion is nothing short of contumacious.

Indeed, Plaintiffs' pending request is even broader than the last one, because it extends to many more defendants.  The Pharmacy Defendants who have been litigating the bellwether cases are not the only retail-pharmacy-operating defendants named in the thousands of cases consolidated in this MDL.[1]  Some of those other defendants are larger chains, while others are smaller or more regional operations.  The majority of these Pharmacy Defendants named in the hundreds of cases referred to by Plaintiffs are not actively litigating *any* case in the MDL.

Plaintiffs seek the production of detailed information about a vast number of sensitive prescriptions, implicating the privacy interests of a substantial portion of the American public.  Nothing about their motion meets the requirements of Rule 26(b).  All of it defies the Sixth Circuit's recent rulings.  It must be denied.

---

[1] Several defendants named in this litigation are not subject to personal jurisdiction in this matter.  This Opposition is filed subject to and without waiving all defenses, including but not limited to lack of personal jurisdiction, failure of service of process, and ineffective service of process.

## BACKGROUND

This Court previously ordered Track 1 Pharmacy Defendants to produce nationwide dispensing data in an order that was the subject of the Sixth Circuit's recent mandamus decision. Doc. 2976; *see also* Doc. 3055 (amending time frame).  In asking the Sixth Circuit to stay that order, these Pharmacy Defendants explained that it could not be justified under Rule 26 as necessary for the MDL as a whole, with no analysis of relevancy or proportionality to any particular case.  *See* Emergency Mot. to Stay Certain Discovery, *In re CVS Pharmacy, Inc.*, No. 20-3075 (6th Cir. Jan. 21, 2020) (Doc. 20-1).  Pharmacy Defendants also explained that, "[u]nlike discovery into common policies or procedures, discovery into specific prescriptions is inherently localized and not 'common' across cases in the MDL."  Reply in Support of Emergency Mot. to Stay Certain Discovery at 5–6, *In re CVS Pharmacy, Inc.*, No. 20-3075 (6th Cir. Jan. 31, 2020) (Doc. 41).  And Pharmacy Defendants noted that the analogy to nationwide ARCOS data was inapt for multiple reasons—including that the ARCOS data was produced by a federal agency (the DEA) that already held it in a single database, and that it did not contain patient-specific information.  *Id.* at 7.  Finally, Pharmacy Defendants observed that the order effected an unjustified intrusion on the privacy interest of millions of Americans in their sensitive medical information.  *Id.* at 8–9.

The Sixth Circuit promptly stayed the nationwide aspect of that discovery order.  Order, *In re CVS Pharmacy, Inc.*, No. 20-3075 (6th Cir. Feb. 12, 2020) (Doc. 42).  Then, on Pharmacy Defendants' petition for relief from three interrelated orders of this Court—one granting leave to add dispensing claims to Track 1, one refusing to adjudicate motions to dismiss those claims, and one requiring nationwide dispensing data productions—the Sixth Circuit granted the extraordinary relief of mandamus.  The appeals court explained in no uncertain terms that "the requirements of the Civil Rules in an MDL case . . . 'are the same as those for ordinary litigation

on an ordinary docket.'" *In re CVS Pharmacy, Inc.*, 956 F.3d at 844 (quoting *In re Korean Air Lines Co.*, 642 F.3d 685, 700 (9th Cir. 2011)). "[T]he cases within an MDL," the Sixth Circuit emphasized, "'retain their separate identities.'" *Id.* at 845 (quoting *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015)). As to discovery, this principle means that "whether discovery is 'proportional to the needs of the case' under Rule 26(b)(1) must—per the terms of the Rule— be based on the court's determination of the needs of the particular case in which the discovery is ordered." *Id.* at 846. Because the challenged orders did not comport with the Federal Rules, the Sixth Circuit granted the writ of mandamus.

Plaintiffs now seek the very same production of nationwide dispensing data, even citing and incorporating this Court's prior order to define the scope of their discovery request. *See* Doc. 3301-1 at 2 (citing Doc. 3106). Far from attempting, as they must, to justify this discovery as relevant and proportional to the needs of any particular case in the MDL, they say the discovery is "necessary and justified" in "the context of this MDL as a whole, rather than in any specific case." Mot. 9. They also assert that the requested discovery is appropriate to "facilitate settlement discussions," *id.* at 11—a rationale that the Sixth Circuit has likewise declared improper.

**ARGUMENT**

**I.     Plaintiffs Have Made No Showing That The Requested Discovery Is Relevant And Proportional To The Needs Of Any Particular Cases.**

The Sixth Circuit unambiguously instructed that Rule 26(b)(1)'s proportionality analysis must be tied to "the needs of the particular case in which the discovery is ordered." *In re CVS Pharmacy, Inc.*, 956 F.3d at 846. Plaintiffs' Motion asks the Court to defy this binding opinion—and, once again, the Federal Rules.

3

## A.     Any Discovery Must Be Relevant And Proportional To A Particular Case.

Plaintiffs argue that this Court "has the authority to order production of nationwide dispensing data" because it is "a transferee court in a nationwide MDL" that "encompass[es] cases with dispensing and distribution claims from every corner of the country." Mot. 3, 8. But this argument simply repeats the same faulty logic that the Sixth Circuit squarely rejected.

Federal Rule of Civil Procedure 26(b)(1) provides that discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This language, the Sixth Circuit explained, requires an analysis of whether discovery is relevant to *a particular legal claim* and proportional to the needs of *a particular case. See In re CVS Pharmacy, Inc.*, 956 F.3d at 846; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 4680242, at *1-2 (N.D. Cal. Oct. 18, 2017) (notwithstanding "overlap between [the] claims," plaintiffs were required to serve discovery requests tailored to their particular case); *In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016) (rejecting discovery as disproportionate to cases within an MDL); *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 313 F.R.D. 32, 36–37 (E.D. La. 2016) (plaintiffs in MDL were required to justify discovery on a "witness-by-witness basis" in order to "demonstrate sufficient relevancy and particularity"). The MDL mechanism is not a vehicle to expand the scope of discovery beyond what would otherwise be available in the individual cases that make up the MDL. Nor does it authorize blunderbuss discovery untethered to the allegations of any particular case in the MDL.

Plaintiffs cite a series of cases that they claim ordered discovery akin to what they seek here, but those products-liability cases reflect precisely the case-specific tailoring that Plaintiffs eschew. *See* Mot. 6–7. For instance, Plaintiffs cite *In re Zofran (Ondansetron) Products Liability Litigation*, No. 1:15-md-02657 (D. Mass. May 26, 2016) (Doc. 253-1), but the court

there first required each individual plaintiff to identify the specific healthcare providers who dispensed the medications at issue in her case and then directed defendants to produce "prescriber-level information" only for those identified providers.  Plaintiffs' other authorities are to the same effect.  *See In re Proton-Pump Inhibitor Prods. Liab. Litig.*, No. 2:17-md-02789 (D.N.J. July 30, 2018) (Doc. 247-1 at 3) (requiring production of "prescribing data" for the "prescribing healthcare providers identified in . . . the corresponding Plaintiff Fact Sheet"); *In re DePuy Orthopaedics, Inc., ASR Hip Implant Prods. Liab. Litig*., No. 1:10-md-02197 (N.D. Ohio Sept. 26, 2011) (Doc. 276) (production limited to devices identified by product code in plaintiff fact sheets); *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, No. 1:08-GD-50000 (N.D. Ohio June 16, 2008) (Doc. 109-1) (production limited to healthcare providers identified by name in plaintiff fact sheets); *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, No. 1:13-MD-2428 (D. Mass. Dec. 6, 2013) (Doc. 441) (same).  Plaintiffs have made no effort to tailor their discovery requests in this way.  Indeed, discovery has not yet begun in any of the non-bellwether cases.

Still other cases cited by Plaintiffs confirm that discovery within an MDL is limited by Rule 26(b)(1).  *See* Mot. 4.  For instance, while Plaintiffs cite *In re Agent Orange Products Liability Litigation*, 517 F.3d 76, 103 (2d Cir. 2008), that opinion actually upheld an MDL court's decision rejecting an "unlimited and unfocused request for many thousands of additional documents" because the plaintiffs did not "tailor their request to materials reasonably expected to produce relevant, non-duplicative information."  Meanwhile, *Dzik v. Bayer Corp.*, 846 F.3d 211, 214 (7th Cir. 2017), upheld dismissal of an individual plaintiff's case where the plaintiff failed to provide discovery relevant to the particular plaintiff's individual claims.  And *In re Korean Air Lines Co.*, 642 F.3d at 700, confirms that "the basic ground rules" of civil litigation "may not be

tossed out the window in an MDL." These cases do not remotely suggest that the Court can order sweeping discovery untethered from the needs of any particular cases in the MDL.

The *Manual for Complex Litigation* also recognizes that Rule 26(b)(1) provides the "general principle governing the scope of discovery" and observes that the "underlying principle of proportionality means that even in complex litigation, discovery does not require leaving no stone unturned." *Annotated Manual for Complex Litigation* § 11.41 (4th ed.). For this reason, the *Manual* observes that "[e]arly identification and clarification of issues . . . is essential to discovery control." *Id.*[2] The sweeping discovery sought here is the antithesis of the "control" the *Manual* prescribes, as Plaintiffs have not identified any specific claims to which their discovery demand relates.

Finally, Plaintiffs cite a bevy of authorities for the unremarkable proposition that the purpose of the MDL mechanism was to promote efficiency in complex litigation. Mot. 4–5. But it should be equally unremarkable that, as the Sixth Circuit explained, "an MDL court must find efficiencies *within the Civil Rules*, rather than in violation of them." *In re CVS Pharmacy, Inc.*, 956 F.3d at 845 (emphasis added). MDL courts have a number of tools at their disposal to promote efficiencies within the discovery process. Plaintiffs' own cited cases show that this is often achieved by using fact sheets and other standardized discovery requests to seek information tailored to a particular plaintiff's case. *See supra* pp. 4–5. Or, where the same documents are relevant to multiple cases in the MDL—as, for instance, would be the case with respect to Defendants' centralized policies and procedures (*which have already been produced* in Track 1

---

[2] The *Manual* states that discovery may be expanded to encompass the "subject matter" of the litigation upon a showing of good cause, but this statement is based on a provision of Rule 26(b)(1) that was eliminated from the Rule by amendment in 2015 and therefore does not reflect current law. *See* Rule 26 committee note (2015).

discovery by the Pharmacy Defendants named in the Track 1 cases)—then information

developed during an initial bellwether may be used in subsequent proceedings.  These types of

procedures create efficiency within the bounds of Rule 26(b)(1).  But nothing in any of

Plaintiffs' cited authorities suggests that an MDL court can simply ignore the limitations of Rule

26(b)(1) on the theory that a less tailored approach would be more efficient.

> **B.** **Plaintiffs Have Made No Showing Of Relevance And Proportionality To Any Particular Cases.**

Plaintiffs have not made any showing that the discovery they request is either relevant or

proportional (let alone both) to any case in this MDL.  Rather than link the transaction-level

dispensing data they seek to the particular claims advanced in any case or cases, Plaintiffs

gesture to the existence of "over 1,400 cases in this MDL—covering at least 49 states, and scores

of Tribes, in every geographic region, comprising Indian Country" that "assert dispensing and/or

distribution claims against the Pharmacy Defendants."  Mot. 7; *see also* Mot. 9 ("Here,

nationwide discovery of dispensing data would be wholly proportional to the needs of the 1,400

separate cases in which the Pharmacy Defendants are parties (as well as other cases in the MDL),

fully justifying the requested discovery on an MDL-wide basis.").[3]  That is, Plaintiffs attempt to

justify onerous discovery based only on the fact that certain (undefined) "Pharmacy Defendants"

are *named* in many cases in this MDL.[4]  None of the various grounds that Plaintiffs advance for

their position could support such a fantastically broad conclusion.

---

[3] Plaintiffs appear to invoke these cases without regard to the nature of the claims asserted. These cases would include, for example, cases brought by individuals, in which transaction-level dispensing records related to individuals other than the named plaintiffs are clearly irrelevant.

[4] Plaintiffs do not define which "Pharmacy Defendants" are covered by their request.  On its face, Plaintiffs' request applies to pharmacies not named in any bellwether case so far.  And Plaintiffs' request would require any defendant pharmacy to produce its nationwide dispensing data even if it had been named in only one of the several jurisdictions in which it operates.  For example, Giant Eagle operates primarily in Pennsylvania and Ohio, with a small number of

First, Plaintiffs' assertion that "dispensing is an MDL-wide factual issue," Mot. 8, does not withstand scrutiny.  Whether a plaintiff can even assert a dispensing claim in the first place is a jurisdiction-specific inquiry, given the variation in state law bearing on the dispensing of prescription medications.  Moreover, transaction-level records of a Pharmacy Defendant's nationwide dispensing do not become relevant or proportional to the needs of any case in this MDL simply because one or more cases asserts a claim that might involve factual questions relating to that Pharmacy Defendant's dispensing.  Unlike discovery into common policies or procedures, discovery into specific prescriptions is inherently localized.  A prescription filled in Portland, Oregon, has no bearing on a case in Portland, Maine.  This means that *any* discovery of transaction-level dispensing records is appropriate *only* if tethered to the needs of a particular case.  As the Sixth Circuit just made clear, the fact that this is an MDL does not change that analysis.  *See In re CVS Pharmacy, Inc.*, 956 F.3d at 846.  The existence of an MDL is not a reason for Plaintiffs to get more discovery than they ever could get in their separate actions put together.  *See supra* Part I.A.

Second, Plaintiffs contend that "[n]ationwide discovery of dispensing data" is warranted because "opioids dispensed and diverted in one jurisdiction were frequently trafficked in others." Mot. 9.  But Plaintiffs have not identified any cases in this MDL that seek to establish a Pharmacy Defendant's liability to one jurisdiction based on the improper filling of prescriptions in another.  For good reason:  Such a theory would greatly magnify the complexity of Plaintiffs'

---

stores in West Virginia, Maryland, and Indiana.  Giant Eagle has not been named in any case outside Ohio, but—if Plaintiffs' request were granted—would be required to produce dispensing information for all of its stores, even though that information could not possibly be relevant or proportional to the needs of any case.  This facial breadth is yet another reason that Plaintiffs' motion defies the governing relevance and proportionality standard.  Of course, even if Plaintiffs had targeted their discovery request to a narrower subset of Pharmacy Defendants, the fact remains that they have made no showing of relevance or proportionality to particular cases.

state-law claims, as it is far from clear that (for example) Ohio law would govern prescriptions filled outside Ohio, with the result that such a theory could require applying the laws of multiple separate states within a single case.  The sheer possibility that prescription opioid medications may have been moved from one jurisdiction to another after they were dispensed, untethered from the demonstrated needs of any particular case, does not broaden the relevance of transaction-level dispensing records to claims advanced in this MDL.  Plaintiffs cannot simply assert that discovery is appropriate on this (or any other) theory and ask the Court to take their word for it.  They must identify specific cases, containing specific factual allegations that are plausible, and show that nationwide discovery is relevant and proportionate to the claims in those cases.  Plaintiffs have not even tried to make any such showing.

Third, Plaintiffs' insistence that discovery of transaction-level records of nationwide dispensing is relevant to cases that include only distribution claims cannot be squared with the Rule 26 relevance analysis.  *See* Mot. 7–8.  For one thing, Plaintiffs, of course, have failed to argue that any particular dispensing data is relevant to any particular case alleging particular distribution claims.  In any event, Discovery Ruling No. 8 ordered production of dispensing data only to the extent that it was used "as a component of [a Pharmacy Defendant's] suspicious order monitoring program[]."  Doc. 1055 at 3.

Fourth, Plaintiffs stray even farther from Rule 26 when they argue that they need the dispensing data to bolster their cases against *other parties* in the MDL.  Mot. 10 (arguing that dispensing data is "relevant not only to claims against pharmacies, but also the other participants in the opioid supply chain").  Without pinpointing any particular defendants in any particular cases, Plaintiffs broadly assert that various other defendants relied on "dispensing data" in their own businesses.  *Id.*  Even assuming that Plaintiffs *could* show that other defendants contracted

with Pharmacy Defendants to obtain certain transaction-level dispensing data and that this data was actually relevant to the claims of particular plaintiffs in this MDL against those other defendants, that would—at most—be a reason for discovery of the particular data in question from *those defendants*, not comprehensive nationwide data from Pharmacy Defendants. Plaintiffs are required to demonstrate that the data they seek is actually relevant to specific claims in specific cases.  They cannot simply hypothesize that similar data *might* be relevant to unidentified claims against other unidentified parties in unidentified cases.

Fifth, Plaintiffs argue incorrectly that discovery of nationwide transaction-level dispensing data is appropriate because the Court previously ordered DEA to produce nationwide data from its ARCOS database, which houses data pertaining to wholesale distribution orders in a single nationwide database.  Mot. 2.  But the ARCOS analogy sheds no light on the Rule 26(b) analysis for different data sought from different parties relating to different claims.  For starters, DEA already held that information in the consolidated ARCOS national database, while each Pharmacy Defendant maintains business records in its own way.  Distribution and dispensing are also fundamentally different types of conduct, and, because they are governed by distinct legal regimes, the facts relevant to proving unlawful conduct are not the same.  What is more, the ARCOS records of wholesale transactions did not implicate any individual privacy interests, whereas transaction-level dispensing records contain the private and highly sensitive medical information of millions of Americans.  The past ARCOS production does not change the fact that the Court is required to comport with Rule 26 when evaluating Plaintiffs' present request.

Because Plaintiffs have failed to show that the far-reaching discovery they request is both relevant and proportional to the needs of any case in this MDL and therefore appropriate in scope under Rule 26(b), their motion must be denied.

C.    **The Scope Of Discovery Must Account For Not Only The Burden On Pharmacy Defendants But Also The Grave Privacy Interests At Stake.**

Plaintiffs presumably opted to bypass the Rule 26 proportionality analysis because they could not hope to show that the discovery they request is appropriate in scope.  Plaintiffs ignore the burden and expense involved in assembling and producing many years of records of every single prescription filled nationally for a host of medications—and in doing so they ignore that the Sixth Circuit has already entered a stay on a similar nationwide discovery order.  As Pharmacy Defendants explained in support of their prior stay motion, the burden of the production Plaintiffs seek is further increased by the fact that the transaction-level dispensing records at issue contain the private and highly sensitive medical information of millions of members of the public.  *See* Doc. 3029 and supporting declarations; Emergency Mot. to Stay Certain Discovery, *In re CVS Pharmacy, Inc.*, No. 20-3075 (6th Cir. Jan. 21, 2020).[5]  The Sixth Circuit, recognizing this burden, the potential for irreparable harm, and the public interest at stake, stayed production of regional and national transaction-level dispensing data.  *See* Order at 2–3, *In re CVS Pharmacy, Inc.*, No. 20-3075 (6th Cir. Feb. 12, 2020) (Doc. 42).

Customers entrust Pharmacy Defendants with some of their most sensitive medical information.  And large datasets, even if anonymized, may be susceptible to re-identification if they fall into the wrong hands.  *See* Br. of *Amicus Curiae* ACLU at 12–13, 15, No. 20-3075 (6th Cir. Jan. 24, 2020) (Doc. 27) ("the academic and popular literature is replete with examples of large sets of de-identified records being re-identified by cross-referencing them with other, publicly available data sets").  No protective order can eliminate the risk of disclosure or breach,

---

[5] Plaintiffs seek prescription records for a number of frequently prescribed medications used to treat a wide range of serious (and, in some cases, stigmatized) medical conditions, including cancer, chronic and acute pain, opiate addiction, fibromyalgia, and anxiety.

and the sheer number of recipients of the requested data (thousands of plaintiffs, their many law firms, and their experts and consultants) multiplies that risk many times over.  As the Sixth Circuit has recognized, "[d]uplication, by its very nature, increases the risk of improper exposure, whether purposeful or inadvertent."  *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008).  The private medical information of tens (if not hundreds) of millions of Americans must be protected from unjustified disclosure by ensuring that, before the information is copied and shared, it is both relevant and proportional to the needs of particular claims.  *See In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 313 F.R.D. at 36–37 (when discovery implicates privacy concerns of third parties, the party seeking discovery must make a sufficient showing of relevance and proportionality to overcome the privacy concerns); Br. of *Amicus Curiae* ACLU at 12-13, 15, No. 20-3075 (6th Cir. Jan. 24, 2020) (Doc. 27) (in view of the serious privacy risks inherent in disclosing prescription records to hundreds or thousands of local governments, production should be limited to data deemed geographically relevant to the claims of particular plaintiffs).

Moreover, even if the Court were to determine that the need for transaction-level dispensing data outweighed these substantial privacy concerns, many jurisdictions maintain prescription drug monitoring programs, which may be an alternative (and likely more convenient, less burdensome, or less expensive) source of the transaction-level dispensing information Plaintiffs seek.[6]  This alternative source of information is properly considered under

---

[6] For example, the Ohio Board of Pharmacy's Ohio Automated Rx Reporting System ("OARRS") collects dispensing data about the entire Ohio dispensing market, whereas the Pharmacy Defendants in the Track 1 cases made up just 54% of the dispensing market in the Track 1 counties between 2006 and 2014.  Doc. 3070 at 5.  The Court ordered the production of dispensing data from OARRS, Doc. 3168, but withdrew that order on June 1.  If the Court were to order Pharmacy Defendants to produce nationwide transaction-level dispensing data,

Rule 26(b)(2)(C)(i).  In short, Plaintiffs could not show that any of the dispensing claims asserted in this MDL—which have scarcely been tested by Rule 12(b)(6) motions to dismiss—are likely to need the burdensome discovery of decades of transaction-level dispensing records they request.

## II.     Even If Plaintiffs Had Shown That The Requested Discovery Was Relevant And Proportional, Their Request Is Procedurally Improper.

Even if Plaintiffs had shown that the discovery they request would be appropriate in scope under Rule 26(b) (and they have not), discovery of this scale would be entirely premature in view of the procedural posture of the cases involved.  As the Court has recognized, the dispensing-based theory of liability presented by cases in this MDL is unprecedented, and its legal foundations have yet to be tested through Rule 12(b)(6) motions to dismiss.  *See* Doc. 2966 at 36–39.  When faced with "a claim for relief that significantly enlarges the scope of discovery," as dispensing-based claims do in the cases in this MDL, "the district court should rule on [a] motion [to dismiss] before entering discovery orders, if possible."  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997); *see also Manual for Complex Litigation* § 11.41 (4th ed.) ("Early identification and clarification of issues . . . is essential to discovery control."). Allowing discovery to proceed on an "invalid claim that increases the costs of the case does nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system."  *Chudasama*, 123 F.3d at 1368.  A court that permits litigation to take such a course abuses its discretion.  *Id.* at 1369; *see also Neitzke v.*

---

Pharmacy Defendants in turn would need information about the rest of the nationwide market from OARRS and the other prescription drug monitoring programs around the country.

*Williams*, 490 U.S. 319, 326–27 (1989) (the purpose of Rule 12(b)(6) is to "streamline[] litigation by dispensing with needless discovery and factfinding").

Plaintiffs can point to no precedent for a court (in an MDL or otherwise) proceeding directly to burdensome, one-sided discovery in cases that have been otherwise stayed.  *See supra* pp. 4–6.  This should come as no surprise, because the procedure Plaintiffs seek maximizes *inefficiency*, not efficiency.  *See* John T. McDermott, *The Judicial Panel on Multidistrict Litigation*, 57 F.R.D. 215, 217 (1973) (the MDL mechanism assumes that the transferee court will establish "a national unified discovery program . . . to [e]nsure that the litigation is processed as efficiently and economically as possible").  Plaintiffs ask the Court to ratchet up costs for Pharmacy Defendants (and only for Pharmacy Defendants) to produce discovery only even arguably relevant to thousands of stayed cases, without any procedural check on whether that burden actually is warranted to move cases in this MDL toward a "just, speedy, and inexpensive determination."  Fed. R. Civ. P. 1.  Because the cases would otherwise remain stayed under the Case Management Order, Pharmacy Defendants would have no opportunity to seek dismissal or judgment on any issue, or even to pursue their own defensive discovery.  The sound exercise of judicial discretion requires denying Plaintiffs' request for broad discovery of dispensing data in the non-bellwether cases while otherwise maintaining the stay.

## III.    Whether The Requested Discovery Has The Potential To Drive Settlement Is An Improper Consideration.

Finally, Plaintiffs tip their hand when they argue that discovery is proper not because it is relevant and proportional to any identified case but because it "will facilitate settlement discussions between Plaintiffs and the Pharmacy Defendants."  Mot. 11.

It would be an abuse of discretion for this Court to base decisions about the scope of discovery on a desire to push Pharmacy Defendants into a global settlement.  *See In re Nat'l*

*Prescription Opiate Litig.*, 927 F.3d 919, 933 (6th Cir. 2019) (explaining that the Court "abused its discretion by considering an improper factor" to the extent that it based a decision on settlement considerations); *see also Colon-Cabrera v. Esso Standard Oil Co.*, 723 F.3d 82, 89 (1st Cir. 2013) (holding that district court erred when it "permitted the information gleaned through its involvement with the settlement talks to exert undue influence over its disposition" of the merits); *Kothe v. Smith*, 771 F.2d 667, 669 (2d Cir. 1985) (the law "does not sanction efforts by trial judges to effect settlements through coercion" and "pressure tactics to coerce settlement simply are not permissible").[7]  Under the plain text of Rule 26(b)(1), discovery must be relevant and proportional to "the needs of the case" before this Court, not the needs of settlement talks that may be broader in scope.

## CONCLUSION

Plaintiffs' motion for leave to take discovery of nationwide dispensing data is improper, both substantively and procedurally.  The motion must be denied.


Dated:  June 8, 2020                        Respectfully submitted,

                                            /s/  *Tara A. Fumerton*
                                            Tara A. Fumerton

---

[7] Cases cited by Plaintiffs are not to the contrary.  The only cited case that touches on these issues is *E.E.O.C. v. Giumarra Vineyards Corp.*, No. 1:09-CV-02255-AWI, 2012 WL 393333, at \*3 (E.D. Cal. Feb. 6, 2012), and that case declined to compel production of information where the information was sought only for settlement purposes.  While Plaintiffs cite language suggesting (though not holding) that settlement might sometimes be an appropriate consideration when conducting discovery, the court held that it was "unable to conclude" that the goal of promoting settlement had "*any* role" and in fact found that the discovery request had a "scent of impropriety."  *Id.* (emphasis added).  Meanwhile, *Daniels v. City of Sioux City*, 294 F.R.D. 509, 512 (N.D. Iowa 2013), did not involve settlement at all; instead it addressed whether to stay discovery on claims against a municipality pending resolution of claims against individual defendants.  And *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 22 (1984), is beside the point, as it involved a First Amendment challenge to the protective order provisions of Washington State's rules of procedure.

Tina M. Tabacchi
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*


/s/ *Francis A. Citera* (consent)
Francis A. Citera
Gretchen N. Miller
GREENBERG TRAURIG, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: (312) 456-8400
Fax: (312) 456-8435
citeraf@gtlaw.com
millerg@gtlaw.com

*Attorneys for Albertson's LLC and Advantage
Logistics Midwest, Inc.*

/s/ *Benjamin D. Reed* (consent)
Benjamin D. Reed, OBA #22696
Matthew B. Free, OBA #18055
Steven W. Simcoe, OBA #15349
BEST & SHARP
Williams Center Tower 1
One West Third Street, Suite 900
Tulsa, Oklahoma  74103
Telephone: (918) 582-1234
Facsimile: (918) 585-9447
Email: breed@bestsharp.com
Email: mfree@bestsharp.com
Email: ssimcoe@bestsharp.com


*Attorneys for CareFirst Pharmacy, Inc., City Drug
Co., City Drug of Coweta, Inc., Economy
Pharmacy, Inc., Ernie's Pharmacy & Wellness
Center, Inc., Freeland Brown Pharmacy, Inc.,
Gaddy Discount Drug, Inc., M&D Star Drug, Inc.,*

16

*Med-Econ Drug, Inc., Pippenger Pharmacies, LLC, Reasor's LLC, and Spoon Drugs, Inc.*

/s/ *David J. Burman* (consent)
David J. Burman
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000
Email: DBurman@perkinscoie.com

*Attorneys for Costco Wholesale Corporation*

/s/ *Duane J. Ruggier II* (consent)
Duane J. Ruggier II
Drannon L. Adkins
PULLIN, FOWLER, FLANAGAN, BROWN &
POE PLLC
901 Quarrier Street
Charleston, WV 25301
Telephone: (304) 344-0100
Fax: (304) 342-1545
E-Mail: druggier@pffwv.com
E-Mail: dadkins@pffwv.com

*Attorneys for Cross Lanes Family Pharmacy, Meds 2 Go Pharmacy, Customscript Infusion, Kines Family Pharmacy, and Mountain State Vital Care*

/s/  *Alexandra W. Miller* (consent)
Alexandra W. Miller
Eric R. Delinsky
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: smiller@zuckerman.com
E-mail: edelinsky@zuckerman.com

*Attorneys for CVS Pharmacy, Inc. and Ohio CVS Stores L.L.C.*

/s/ *Patricia Egan Daehnke*

PATRICIA EGAN DAEHNKE
Nevada Bar No. 4976
AMANDA E. ROSENTHAL
Nevada Bar No. 10748
COLLINSON, DAEHNKE, INLOW & GRECO
2110 E. Flamingo Road, Suite 212
Las Vegas, Nevada 89119
Tel. (702) 979-2132
Fax (702) 979-2133

*Attorneys for C&R Pharmacy d/b/a Ken's
Pharmacy f/k/a Lam's Pharmacy, Inc.*

/s/  *Timothy D. Johnson* (consent)
Timothy D. Johnson
Gregory E. O'Brien
CAVITCH FAMILO & DURKIN, CO. LPA
1300 East Ninth Street – 20th Fl.
Cleveland, OH 44114
Phone: (216) 621-7860
Fax: (216) 621-3415
E-mail: tjohnson@cavitch.com

*Attorneys for Discount Drug Mart, Inc.*

/s/ *Jan L. Roller* (consent)
Jan L. Roller (0008171)
Kathleen A. Nitschke (0073397)
GIFFEN & KAMINSKI LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone:      216-621-5161
Facsimile:      216-621-2399
E-Mail: jroller@thinkgk.com
E-Mail: knitschke@thinkgk.com

*Attorneys for The Drug Store Pharmacy Inc.
and The Drug Store Clinic Pharmacy Inc.*

/s/  *Robert M. Barnes* (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street

18

Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc., and HBC Service Company*

/s/  *Jeffrey A. Kennard* (consent)
Jeffrey A. Kennard
Cameron E. Grant
SCHARNHORST AST KENNARD GRIFFIN PC
1100 Walnut Street, Ste 1950
Kansas City, MO 64106
Phone: (816) 268-9400
Fax: (816) 268-9409
E-mail: jkennard@sakg.com
E-mail: cgrant@sakg.com

*Attorneys for Hy-Vee, Inc.*

/s/ *Ronda L. Harvey* (consent)
Ronda L. Harvey Esq. (WVSB 6326)
Fazal A. Shere, Esq. (WVSB 5433)
Unaiza Tyree, Esq. (WVSB 13253)
BOWLES RICE LLP
600 Quarrier Street
Charleston, West Virginia  25301
304-347-1100
rharvey@bowlesrice.com
fshere@bowlesrice.com
utyree@bowlesrice.com

*Attorneys for The Kroger Co.,*
*Kroger Limited Partnership I, and*
*Kroger Limited Partnership II*

/s/ *Scott W. Andrews* (consent)
Scott W. Andrews (WV Bar No. 5772)
VAN ANTWERP ATTORNEYS LLP
1544 Winchester Ave., Fifth Floor
P. O. Box 1111
Ashland, KY  41105-1111
Telephone: (606) 329-2929

19

Fax: (606) 329-0490
E-Mail: sandrews@vanattys.com

*Attorneys for McCloud Family Pharmacy, Inc.,*
*Main Street Pharmacy, Inc. dba Beewell Pharmacy,*
*Medical Park Pharmacy LTC, Inc., and PASTM,*
*Inc.*

/s/ *Michael A. Meadows* (consent)
Michael A. Meadows
CAMPBELL WOODS, PLLC
1002 Third Avenue
Huntington, WV 25701
Telephone: 304.529.2391
Fax: 304.529.1832
E-Mail: MichaelMeadows@CampbellWoods.com

*Attorneys for MRNB, Inc. and A+ Pharmacy &*
*Home Medical Equipment*

/s/ *Brian D. Kerns* (consent)
Brian D. Kerns (0037015)
William A. Peseski (0095235)
BONEZZI SWITZER POLITO
 & HUPP CO. L.P.A.
46 Public Square, Suite 230
Medina, Ohio 44256
(330) 952-0440
bkerns@bsphlaw.com
wpeseski@bsphlaw.com

Edward D. Papp (0068574)
BONEZZI SWITZER POLITO
 & HUPP CO. L.P.A.
1300 East Ninth Street, Suite 1950
Cleveland, Ohio 44114
(216) 875-2767
epapp@bsphlaw.com

*Attorneys for NRF, Inc. d/b/a*
*Couch Pharmacy*

/s/ *Jim C. McGough* (consent)
Jim C. McGough
WELSH & MCGOUGH, PLLC
2727 East 21st Street, Suite 600

Tulsa, OK 74114
918-585-8600 Telephone
918-794-4411 Telefax
jim@tulsafirm.com

*Attorneys for Olympia Pharmacy*

/s/ *Gregory S. Chernack* (consent)
Gregory S. Chernack
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, DC 20005
(202) 898-5800

*Attorneys for Publix Super Markets, Inc.*

/s/ *Kelly A. Moore* (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

John P. Lavelle, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-4824
Fax: (215) 963-5001
E-mail: john.lavelle@morganlewis.com

*Attorneys for Rite Aid Hdqtrs. Corp.,*
*Rite Aid of Ohio, Inc., Rite Aid of Maryland, Inc.*
*and Eckerd Corp. d/b/a Rite Aid Liverpool*
*Distribution Center*

/s/ *Gregory O'Brien* (consent)
Gregory O'Brien
CAVITCH FAMILO & DURKIN
1300 East Ninth Street, 20th Floor
Cleveland, Ohio 44114
(216) 621-7860
gobrien@cavitch.com

21

*Attorneys for Rogers Drug Co., Inc.*

/s/ *Wendy J. Wildung* (consent)
Wendy J. Wildung
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
wendy.wildung@faegredrinker.com

*Attorneys for Target Corporation*

/s/  *Kaspar Stoffelmayr* (consent)
Kaspar Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlitbeck.com
E-mail: kate.swift@bartlitbeck.com

*Attorneys for Walgreen Co. and Walgreen Eastern Co.*

/s/ *Daniel T. Plunkett* (consent)
Daniel T. Plunkett (#21822)
Timothy G. Byrd, Jr. (#35691)
McGLINCHEY STAFFORD, PLLC
12th Floor, 601 Poydras Street
New Orleans, Louisiana  70130
Tel:  (504) 586-1200
Fax:  (504) 596-2800
E-Mail: dplunkett@mcglinchey.com
E-Mail: tbyrd@mcglinchey.com

*Attorneys for Winn-Dixie Logistics, Inc. and Winn-Dixie Stores, Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing document was served via email on all counsel of record on June 8, 2020.

/s/ *Tara A. Fumerton*
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Counsel for Walmart Inc.*

23