UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) ) ) ) ) | MDL No. 2804 <br><br> JUDGE DAN AARON POLSTER <br><br> Case No. 1:17-md-2804 |
| This document relates to: *All Cases* | | |

**PLAINTIFFS' REPLY TO DEFENDANT AMERISOURCEBERGEN'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS**

ABC purposefully withheld highly relevant Category One Discovery documents until after resolution of the first bellwether trial.

ABC's Opposition (ECF 3322) to Plaintiffs' Motion (ECF 3300) validates and further escalates our concern regarding the culling of Category One Discovery from production during the discovery phase of the first bellwether.[1] Attached is a spreadsheet[2] with an additional one hundred (100) documents which (a) fall within Category One Discovery and (b) were triggered by one or more CT1 search terms and were contained in one or more CT1 deponent custodial files. These documents did not slip through the cracks; they were consciously culled from CT1 production and only produced *after* the first bellwether settled. ABC's withholding of these documents as "non-responsive" demands further inquiry, resolution, and an appropriate remedy.

---

[1] See Discovery Ruling No. 2 (Doc #: 693) at 4 ("Defendants **must** produce on a **national basis** documents related to marketing and promotion, brand planning and strategy, sales training and sales bulletins, prescriber educational materials, distribution monitoring, advocacy groups, speakers bureau programs, continuing medical education, diversion, suspicious order reports, adverse event reports, and regulatory activity. The defendants' policies and actions regarding all of these subjects are (and were) primarily centralized and over-arching, applying broadly to their opioid products. This discovery is referred to . . . as **Category One Discovery**."). (Emphasis added). See also, Discovery Ruling No. 3 (Doc #: 762) at 4 ("The national scope for Category One Discovery is unchanged.).

[2] All one hundred (100) of these documents were disclosed only after the settlement of the first bellwether trial. Each has been designated by ABC as confidential. Plaintiffs will submit an electronic version of the spreadsheet to the Court and counsel with hyperlinks to the documents for review.

1. **ABC Withheld Category One Discovery documents.**

ABC must concede the ten (10) "cherry picked" documents referenced in Plaintiffs' Motion fall within Category One Discovery. In letter briefing to Special Master Cohen, ABC describes these documents as follows:

> **E-mail re Filing of Amicus Brief:**
> (ABDC-STCT000057518/ABDCMDL00571243)
> This document reflects communications between the Chief Compliance Officer and ABDC's president regarding issues attendant to whether the trade association of which ABC is a member should file an amicus brief in an action addressing the responsibilities of distributors under applicable regulations. The e-mail also addresses the anticipated reaction of the DEA to such a filing. While the e-mail was sent in 2012, given the DEA's relationship with distributors, including ABDC, the communication addresses non-public and sensitive business matters that continue to be of importance to the company to the present day. There is an inherent expectation that such frank discussions among corporate leadership regarding matters critical to the company will be maintained as confidential. For these reasons, this document contains sensitive business information that should continue to be recognized as "confidential."
>
> **E-mail re HDMA Talking Points Re: DEA**:
> (ABDC-STCT000037782/ABDCMDL00551507)
> This document reflects a communication from the Chief Compliance Officer (Chris Zimmerman) to the corporate leadership of ABDC (as well as ABC's general counsel) regarding the DEA's approach to enforcement of regulations concerning the distribution of controlled substances. Although the e-mail was sent in 2012, ABDC's views regarding the DEA's activities, and its impact on the company, reflect sensitive business information that continues to be of critical importance to the company to the present day. Moreover, there is an inherent expectation that such frank discussions among corporate leadership regarding matters critical to the company will be maintained as confidential. For these reasons, this document contains sensitive business information that should continue to be recognized as "confidential."
>
> **E-mail re Red Flags Guidance:**
> (ABDC-STCT000057107/ABDCMDL00570832)
> This document reflects communications between the Chief Compliance Officer and ABDC's president regarding working with the stakeholders to the prescription drug abuse issue (DEA, Boards of Pharmacy, wholesalers, pharmacies and prescribers) to provide guidance to those stakeholders regarding how to address the DEA's demands and expectations. Although the email was sent in 2014, it addresses non-public and sensitive business matters that continue to be of importance to the company to the present day. Moreover, there is an inherent expectation that such frank discussions among corporate leadership regarding matters critical to the

> company – particularly discussions concerning the federal enforcement agency with jurisdiction over the company – will be maintained as confidential. For these reasons, this document contains sensitive business information that should continue to be recognized as "confidential."
>
> **E-mail with attached draft Board Presentation:**
> (ABDC-STCT000001567/ABDCMDL00515292)
> This document reflects a draft of materials presented at a meeting of the AmerisourceBergen (ABC) Board of Directors. ABC maintains its Board materials (including presentations to the Board) as confidential as they contain non-public commercial and financial information of the company and/or information that is proprietary or reflects sensitive business information. This draft document contains non-public business information relating to pricing, including ABDC's manner of pricing pharmaceutical products for its customers in relation to its own costs. Finally, regardless of whether the information in the presentation is considered confidential in-and-of itself, information regarding the types of materials reviewed and considered by ABC's Board of Directors constitutes, of its own accord, sensitive business information. Stated differently, ABC maintains as confidential information regarding the matters its Board considers. Although the document was prepared in 2012, both the subject matter and information regarding how products are priced remain relevant and applicable to the company to this day. For these reasons, this document contains confidential commercial information and information that constitutes sensitive business information.

See Letter Briefing from ABC to Special Master Cohen dated June 1, 2020. ABC's descriptions belie any comprehensible excuse for its decision not to produce these documents in CT1.

Nor is this an isolated event. The electronic spreadsheet (fn. 2) identifies another one hundred (100) documents which fall squarely within Category One Discovery but were only disclosed after the settlement of the first bellwether case. Column F in the spreadsheet identifies the specific Category One Discovery topic (fn.1) which justifies disclosure. Plaintiffs respectfully submit that ABC has purposefully misconstrued DR-2 and DR-3 and misrepresented SM Cohen's words to rationalize its culling of discoverable Category One documents.[3]

---

[3] DR-2 did place geographic limits on a relatively narrow set of materials termed "Category Two Discovery" - i.e., "documents related to decentralized, customer-specific materials, such as sales call notes and transactional data." See DR-2 (Doc #: 693) at 4-5. However, Category One Discovery has *always* remained *national* in scope. See DR-3 (Doc #: 762) at 4-5. ABC's opposition attempts to blur this distinction, even though Plaintiffs' motion relates solely to Category One Discovery. See e.g., 6/4/2020 ABC Opposition (Doc. 3322) at 2, 6, 8 (incorrectly suggesting that Category Two geographic limits somehow justify ABC's withholding of Category One Discovery).

3

### 2. ABC failed to produce documents from numerous deponent custodial files.

Moreover, each of the one hundred (100) documents should have been produced, separate and aside from Category One Discovery, in custodial files of deponents from the first bellwether. Column C in the spreadsheet identifies the names of each deponent whose custodial file contained the document. Column G identifies the CT1 search terms which trigger the document as responsive. These documents were produced only after the settlement of the first bellwether case. The inescapable conclusion is simple: ABC flagged each of the documents as responsive to search terms but decided not to produce during the discovery phase of the first bellwether.

This discovery violation has serious consequences. This Court is tasked with undertaking national discovery through the bellwether process and thereafter remanding cases to the transferor courts for adjudication. The integrity of the record on remand is jeopardized when a party is permitted to invent its own discovery rules in the false hope it gets remanded before detection. In the present case, the Cabell County Commission and the City of Huntington have discovered newly produced documents which were not available for use in cross examination of witnesses already deposed during the first bellwether. ABC seems to argue there is no jurisdiction in either the transferor court nor the transferee court and therefore no remedy. Permitting such intransigence without a remedy encourages further misconduct, sets a precedent that will allow other co-defendants to ignore production responsibilities, and jeopardizes the ability of the federal judiciary to advance this litigation on a national basis.

Dated: June 11, 2020

Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

/s/Joseph F. Rice
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

/s/ Paul T. Farrell, Jr.
Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth St., 3rd Floor
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

/s/Peter H. Weinberger
Peter H. Weinberger
SPANGENBERG SHIBLEY &
LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of June, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

/s/Peter H. Weinberger
Peter H. Weinberger

*Plaintiffs' Liaison Counsel*