# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*All Cases* | MDL NO. 2804<br><br>Civ. No. 1:17-md-02804-DAP<br><br>HON. JUDGE DAN A. POLSTER |

**AMERISOURCEBERGEN DRUG CORPORATION'S SUR-REPLY IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS**

AmerisourceBergen Drug Corporation ("ABDC") respectfully files this Sur-Reply in Further Opposition to Plaintiffs' Motion to Compel Defendant AmerisourceBergen to Produce Discovery Improperly Withheld and to Show Cause Why It Should Not Be Sanctioned For Its Discovery Misconduct ("Plaintiffs' Motion") (ECF No. 3300), and specifically to respond to new arguments raised in Plaintiffs' Reply to ABDC's Opposition ("Plaintiffs' Reply) (ECF No. 3332).

I.   INTRODUCTION

In their Reply, Plaintiffs escalate their accusations, now claiming that ABDC not only "wrongfully" withheld or delayed production of documents during the Track One litigation, but that it did so ***intentionally*** by "consciously cull[ing]" documents from its productions. Plaintiffs' Reply at 1. This assertion is baseless and false.

Plaintiffs also fail to engage with (or even acknowledge) the relevant law. They cite no supporting case and never reference the controlling legal standard, let alone attempt apply it to these facts. Even more tellingly, and most conspicuously, Plaintiffs are silent as to how they have been prejudiced by what is no more than an honest, but after-the-fact, dispute about produced documents. That is because they have not been prejudiced at all. They have the documents at

issue (many of them for several months), with discovery still open (or not yet started) in all of the remanded cases. Plaintiffs will have ample opportunity to use any of these produced documents they have put at issue. And, as explained below, Plaintiffs' last-minute effort to add weight to their argument by pointing to 100 additional produced documents not discussed in their opening papers does not move the needle on their sanctions request—and, if anything, it proves ABDC's point.

Plaintiffs cannot establish any of the requirements for a sanctions award. Their motion should be denied.

## II. ARGUMENT

Mindful that this is a Sur-Reply, ABDC will not rehash its explanation of its compliance with the discovery rulings in this case and the reasons it has not engaged in any discovery misconduct. Instead, ABDC will respond specifically to the arguments raised in Plaintiffs' Reply and will explain why that Reply further demonstrates that sanctions are not warranted.

### A. Plaintiffs Do Not Dispute the Legal Standard Controlling Sanctions Requests

Plaintiffs cannot—and do not—dispute that sanctions are warranted only in certain narrow circumstances. The governing four-factor test is straightforward and unambiguous:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Doe v. Lexington-Fayette Urban Cnty. Gov.*, 407 F.3d 755, 765-66 (6th Cir. 2005). Plaintiffs bear the burden of establishing that sanctions are warranted under this test. Plaintiffs' Reply further confirms that they have not and cannot.[1]

---

[1] In this Sur-Reply, ABDC will focus on the first and second *Doe* factors. As discussed in its Opposition, the third and fourth factors also have not been met. ABDC Opp. at 15-16 (ECF No. 3322).

### B. Plaintiffs Present No Evidence Whatsoever of Willful Misconduct

In sum and substance, Plaintiffs' Motion and Reply are nothing more than an index of 110 documents in Plaintiffs' possession (the 10 cited in the Motion plus an additional 100 documents cited in the Reply) from ABDC's production, with a few descriptive paragraphs tacked on to keep up appearances. This list of documents is certainly evidence of *a dispute*: Plaintiffs believe these documents should have been produced sooner than they were; ABDC disagrees. But Plaintiffs' list says nothing about *why* those produced documents were produced when they were, or that they should have been produced sooner.

Why does this matter? Because when it comes to sanctions, it is the "why" that matters. Sanctions are not a strict liability inquiry—instead, the party seeking sanctions bears the burden to establish willful, bad faith conduct. Plaintiffs *claim* ABDC willfully failed to produce documents sooner than it did, but do not back up their *ipse dixit* accusation with anything other than their own subjective belief. In other words, Plaintiffs do not even try to satisfy the specific standard set forth in *Doe*.

Nor do the circumstances here suggest willful, bad faith conduct. To the contrary, an impartial review of the circumstances belies Plaintiffs' accusations. While discovery in Track One certainly was important and much work was done by all Parties to prepare for that trial, ABDC currently is a defendant in over 3,000 active cases, with more being filed each week. More than 350 of these cases are proceeding in state courts around the country. Only one of these cases has advanced beyond the close of fact discovery. The produced documents about which Plaintiffs complain will be available for use in every single one of those active cases—including the cases remanded by this Court as part of the strategic remands. If ABDC was, in fact, trying to hide something (as Plaintiffs contend), it certainly didn't do a good job of it.

The far more plausible explanation for the timing of ABDC's document productions—one that aligns with the facts and circumstances of discovery in this litigation—is carefully set out in ABDC's Opposition Brief.  That explanation shows only that this is a good faith dispute about the proper application of discovery orders and standards in a massive litigation proceeding on an aggressive timetable.  And it bears emphasis that the dispute is indeed live, contrary to Plaintiffs' misrepresentation that "ABDC must concede the ten . . . 'cherry-picked' documents referenced in Plaintiffs' Motion fall within Category One Discovery."  Plaintiffs' Reply at 2.  ABDC does not so concede.  ABDC's Opposition Brief explained why it disagrees that Plaintiffs' 10 cherry-picked documents demonstrate anything at all.  For example, beyond conclusory statements, Plaintiffs made no effort in their Reply to establish that the "pillbilly" parody email that was so central to their Motion was a responsive document in Track One.  Instead of taking on any of ABDC's arguments—as to the documents or the law—Plaintiffs chose instead to simply dump even more produced documents onto the pile.

As ABDC explained in its Opposition Brief, discovery in this case was (and continues to be) challenging and complex. Perfection is not the standard (as Special Master Cohen and Plaintiffs too have expressed), and judgment calls made by the Parties inevitably result in differences of opinion.  A review of the 100 additional produced documents Plaintiffs decided to add to the mix in their Reply illustrates this.  A weekend's review of Plaintiffs' handpicked 100 documents reveals, for example, that several of the documents did not actually (despite Plaintiffs' claims) hit the search terms in Track One.[2]  Several other documents were, in fact, produced in Track One.[3]

---

[2]  Certain information contained in Plaintiffs' chart of 100 documents is inaccurate.  For example, "CSRA AND high w/2 risk" was not a Track One search term.  Thus, Documents 8 (ABDCMDL05843263) and 10 (ABDCMDL07390208-0211) do not support Plaintiffs' claims.

[3]  For example, Plaintiffs' list of 100 documents includes ABDCMDL00542407 (Doc. No. 27) and ABDCMDL00542409 (Doc. No. 28).  Those same documents were produced, in Track One, at ABDCMDL00280794 and ABDCMDL00280798, respectively.  Documents 66 to 69 on Plaintiffs list

And for other documents, near duplicates (including more expansive versions) were produced in Track One.[4]

ABDC does not ascribe improper motive to the errors in Plaintiffs' analysis of these documents. As explained, the process of reviewing the enormous volume of the documents in these cases is complex, and challenging—even more so here because of the distinction between Category One and Category Two documents. ABDC approached its document production, and endeavored to navigate the contours of discovery in Track One (and all other pending opioid litigation), in complete good faith. Were Plaintiffs to drop their public, media-facing approach, they would likely agree.

Even more significantly, this live dispute between the Parties—over whether certain documents should or should not have been produced earlier—is **not** the question this Court is being asked to answer. Rather, the question is whether sanctions are appropriate under the controlling legal standard. The Court need look no further than the first *Doe* factor to conclude they are not. And, as explained, Plaintiffs' new list of 100 documents does not show willful or bad faith conduct

---

(ABDCMDL06965500, ABDCMDL06965501, ABDCMDL06965502, and ABDCMDL06965505) were likewise all produced in Track One at ABDCMDL00366306, ABDCMDL00366307, ABDCMDL00366310, and ABDCMDL00366311.

[4] For example, Plaintiffs' list includes ABDCMDL00569293 (Doc. No. 4), which is a string of seven e-mails relating to an op-ed from Senator Orrin Hatch regarding the Ensuring Patient Access and Effective Drug Enforcement Act. The most recent of those e-mails is a statement by Brad Tallamy (an employee in AmerisourceBergen's government affairs department) that he would draft a response on the subject. Although ABDC did not produce that document in Track One, it did produce ABDCMDL00273321, which contains the *exact same* initial six e-mails in the chain. And while ABDCMDL00273321 does not include the final e-mail from Mr. Tallamy in which he said he would draft a response, the document produced by ABDC contains the *actual* response prepared by Mr. Tallamy (as well as two additional e-mails in the chain). ABDC's production of ABDCMDL00273321 in Track One makes clear that ABDC did *not* willfully cull from its production documents containing certain types of substantive information. To the contrary, as between these two documents, ABDC actually produced the version containing the greater amount of substantive information.

and instead is a red herring designed to take the focus away from the Plaintiffs' utter failures to satisfy the legal criteria for sanctions.

### C. Plaintiffs Have Not Been Prejudiced

Equally fatal to Plaintiffs' sanctions request is their wholesale failure to explain how they have been prejudiced by ABDC's alleged late production. Nor could they offer such an explanation because there is no prejudice here. The Track One cases settled prior to trial. And there is no dispute that Plaintiffs have all of the documents at issue to use in the remaining opioid cases, and they have had many of them for several months.

In place of the required proof of prejudice, Plaintiffs offer vague references to "the integrity of the record on remand" being "jeopardized," and assert that "the Cabell County Commission and the City of Huntington have discovered newly produced documents which were not available for use in cross examination of witnesses already deposed during the first bellwether." Plaintiffs' Reply at 4. Plaintiffs' use of the word "jeopardized" is a tacit admission that discovery is ongoing in those cases and that their claim of prejudice is unfounded (and illogical).

Plaintiffs have had several of these documents on which they build their sanctions request for many months (for example, they have had the "pillbilly" document for six months) but have done nothing with them. While Plaintiffs seem to think they should be allowed to re-depose certain witnesses, they have never sought to do so. To the extent this—taking additional depositions—is the "remedy" Plaintiffs seek, there are two points Plaintiffs ignore—each of which is fatal to their sanctions motion. First, Plaintiffs did not need to file a sanctions motion to pursue that course. Second, that relief should be sought in the court where those depositions would take place. Plaintiffs accuse ABDC of arguing "there is no jurisdiction in either the transferor court nor the transferee court and therefore no remedy." *Id.* at 4. Not so—indeed, the opposite is true. ABDC's Opposition Brief clearly stated: "To the extent Plaintiffs seek these sorts of sanctions, they must

do so in the active case in which they want the sanction to be applied." ABDC Opp. at 19. Plaintiffs' Reply contains a telling Freudian slip that confirms this: It describes the Cabell and Huntington litigation as "the present case." Plaintiffs' Reply at 4. This would be unremarkable had Plaintiffs filed their Motion in the Southern District of West Virginia, but they did not. Instead, they filed it here—a court that already has confirmed it lacks jurisdiction over the remanded, active cases. This Court should decline Plaintiffs' invitation to wade into discovery matters it already has properly acknowledged are outside its jurisdiction.

In the end, Plaintiffs' Motion—which seeks to compel documents that already have been produced and seeks sanctions without even trying to meet the controlling legal standards—simply is an attempt to grab headlines and exert undue pressure. This Court should not countenance these tactics.

### III. CONCLUSION

For the reasons set forth above, and in ABDC's Opposition Brief, ABDC respectfully requests that Plaintiffs' Motion to Compel and for Sanctions be denied.

Dated: June 15, 2020

Respectfully submitted,

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*