**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION, | **MDL 2804** |
| | **Case No. 1:17-md-2804** |
| THIS DOCUMENT RELATES TO: | |
| | Judge Dan Aaron Polster |
| *"All Cases"* | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO TAKE**
<u>**DISCOVERY OF NATIONWIDE DISPENSING DATA**</u>

## TABLE OF CONTENTS

**Page**

ARGUMENT.................................................................................................................3

I.    Nationwide dispensing data is relevant to multiple cases within the MDL.......................3

II.   Production of nationwide dispensing data is proportional to the needs of the MDL. ....................................................................................................................5

    A.    The proportionality inquiry properly considers the totality of cases pending in the MDL. ..........................................................................................6

    B.    Defendants have not met their burden to show that production of nationwide dispensing data is not proportional to the needs of this MDL...........10

III.   Plaintiffs' requests are procedurally proper..................................................................14

CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## Cases

*AT&T Mobility Servs., LLC v. Boyd*,
No. 1:19CV2539, 2020 WL 2572282 (N.D. Ohio May 21, 2020) ...........................5

*Babcock v. C-Tech Collections, Inc.*,
No. CV 1:2014-3124 MDG, 2014 WL 3894108 (E.D.N.Y. Aug. 11, 2014) ..........................13

*Chudasama v. Mazda Motor Corp.*,
123 F.3d 1353 (11th Cir. 1997) ...............................................15

*CSX Transportation, Inc. v. Columbus Downtown Dev. Corp.*,
No. 2:16-CV-557, 2019 WL 1760069 (S.D. Ohio Apr. 22, 2019) ...........................5

*E.E.O.C. v. SVT, LLC*,
No. 2:13-CV-245-RLM-PRC, 2014 WL 1411775 (N.D. Ind. Apr. 10, 2014).........................11

*In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*,
840 F. Supp. 2d 1193 (D. Minn. 2012) ....................................................2

*In re Bard IVC Filters Prod. Liab. Litig.*,
317 F.R.D. 562 (D. Ariz. 2016) ...........................................................10

*In re Nat'l Prescription Opiate Litig.* ("*Blackfeet*"),
No. 1:17-CV-02804, 2019 WL 2477416 (N.D. Ohio Apr. 1, 2019), *report and
recommendation adopted in relevant part*, No. 1:17-MD-2804, 2019 WL 3737023 (N.D. Ohio
June 13, 2019)...........................................................................15

*In re Nat'l Prescription Opiate Litig.* ("*Broward*"),
No. 1:17-MD-2804, 2020 WL 1986589 (N.D. Ohio Apr. 27, 2020)......................15

*In re Nat'l Prescription Opiate Litig.* ("*West Boca*"),
No. 1:17-MD-2804, 2020 WL 1669655 (N.D. Ohio Apr. 3, 2020)........................15

*In re Nat'l Prescription Opiate Litig.*,
956 F.3d 838 (6th Cir. 2020) .......................................................2, 8, 9

*In re Nat'l Prescription Opiate Litig.*,
Case: 20-3075, Dkt. # 42-4 (Feb. 12, 2020) ...........................................4

*In re Regents of Univ. of California*,
964 F.2d 1128 (Fed. Cir. 1992) ........................................................7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2017 WL 4680242 (N.D. Cal. Oct. 18, 2017) ............................9

*In re Zyprexa Prod. Liab. Litig.*,
254 F.R.D. 50 (E.D.N.Y. 2008), *aff'd*, No. 04-MD-1596, 2008 WL 4682311 (E.D.N.Y. Oct.
21, 2008)...............................................................................12

*In re: E/I. Du Pont de Nemours and Co. C-8 Pers. Inj. Litig.*,
    2:13-md-2433, 2016 WL 5884964 (S.D. Ohio Oct. 7, 2016)...........................................2, 8

*In re: Medi-Cal Reimbursement Rate Reduction Litig.*,
    652 F. Supp. 2d 1378 (U.S. Jud. Pan. Mult. Lit. 2009)..........................................................7

*In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*,
    313 F.R.D. 32 (E.D. La. 2016) .............................................................................................10

*Johnson v. CoreCivic, Inc.*,
    No. 18-CV-1051-STA-TMP, 2019 WL 5089086 (W.D. Tenn. Oct. 10, 2019) ........................3

*Klinger v. Corr. Corp. of Am., Inc.*,
    No. 4:11CV2299, 2012 WL 12897338 (N.D. Ohio Nov. 28, 2012)......................................15

*Matter of Orthopedic Bone Screw Prod. Liab. Litig.*,
    79 F.3d 46 (7th Cir. 1996) ......................................................................................................6

*Ruggles v. WellPoint, Inc.*,
    No. 108CV201LEKRFT, 2010 WL 11570681 (N.D.N.Y. Dec. 28, 2010).............................12

*Rui He v. Rom*,
    No. 1:15-CV-1869, 2016 WL 909405 (N.D. Ohio Mar. 10, 2016) ...........................................3

*U-Haul Co. of Nevada v. Gregory J. Kamer, Ltd.*,
    No. 2:12-CV-00231-KJD, 2013 WL 4458812 (D. Nev. Aug. 15, 2013).................................13

*Vaigasi v. Solow Mgmt. Corp.*,
    No. 11-CIV-5088-RMB-HBP, 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016)............................6

**Rules**

Fed. R. Civ. P. 26.............................................................................................................................2

Fed. R. Civ. P. 26(b) ...................................................................................................................5, 14

Fed. R. Civ. P. 26(b)(1)........................................................................................................2, 3, 6, 7

Fed. R. Civ. P. 26(d)(1)..................................................................................................................14

Fed. R. Civ. P. 34.............................................................................................................................2

**Other Authorities**

Fallon, et al., *Bellwether Trials in Multidistrict Litigation*,
    82 Tul. L. Rev. 2323 (2008) .................................................................................................6

John G. Heyburn II, *A View from the Panel: Part of the Solution*,
    82 Tul. L. Rev. 2225 (2008) ..............................................................................................7, 8

Manual for Complex Litigation, Fourth Ed. (2004)...........................................................................7

*Revised Guidelines & Practices for Implementing the 2015 Discovery Amendments to Achieve Proportionality*,
    100 Judicature No. 4 (Center for Judicial Studies, Duke Law School October 2016) ...........8

Robert H. Klonoff, *Federal Multidistrict Litigation: in a Nutshell*
    (West Academic Publishing 2020) .........................................................................................1

The Plaintiffs' Executive Committee ("PEC") respectfully submits this reply memorandum in support of its motion for leave to take discovery of nationwide dispensing data. Defendants oppose Plaintiffs' motion arguing that the requested information is neither relevant nor proportional to the needs *of any particular case* in this multidistrict litigation ("MDL"). Their argument attempts to upend decades of MDL precedent and undermine the very purpose of MDL coordination. The *dicta* from the Sixth Circuit on which Defendants rely does not warrant such a radical result. Moreover, even if Defendants were correct (which they are not), the discovery the PEC seeks would still be proper.

As to relevance, Defendants are simply wrong: the dispensing data from each state is relevant to the claims asserted in at least one particular case, if not to many more. This is because this MDL includes at least one case with distribution or dispensing claims from every one of the fifty states and Puerto Rico.[1] Dispensing data from a plaintiff's home jurisdiction is undoubtedly relevant to the question whether the national bellwether chain defendant families—CVS, Rite Aid, Walgreens, and Walmart (collectively "Pharmacy Defendants")[2]—properly controlled the supply of opioids in that jurisdiction. As discussed below, such data is also relevant to the claims of plaintiffs in multiple other jurisdictions and to the MDL as a whole.

As to proportionality, Defendants' argument misses the point. It is axiomatic that, in an

---

[1] *See* MDL Bellwether Chain Pharmacy Case Chart (Exhibit A). In their opening brief, Plaintiffs underestimated the total number and distribution of cases in which claims are asserted against the Pharmacy Defendants. Plaintiffs have now confirmed that these defendant families have been sued in over 2,100 cases and that each defendant family has been sued in all 50 states and Puerto Rice, except for Rite Aid which was sued in all jurisdictions but South Dakota.

[2] Plaintiffs are currently only seeking this data from the four national chain pharmacies named in the bellwether cases—CVS, Rite Aid, Walgreens, and Walmart; to the extent certain plaintiffs may have named certain defendant pharmacies that are not chain pharmacies, Plaintiffs agree that local pharmacy discovery is more appropriate for case-specific discovery. *See* Robert H. Klonoff, *Federal Multidistrict Litigation: in a Nutshell*, at 333 (West Academic Publishing 2020) (recognizing remanded cases "may not be ready for trial because there are case-specific issues to address"). Discovery of additional national or regional pharmacies may be sought at a later date.

MDL, the Court may permit discovery related to issues that are common to multiple cases. Indeed, one of the most important functions of an MDL judge is to coordinate discovery. *See, e.g.*, *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d 1193, 1198 (D. Minn. 2012). The significance of an issue within an MDL proceeding is undeniably affected by the number of cases in which that issue arises. *See In re: E/I. Du Pont de Nemours and Co. C-8 Pers. Inj. Litig.*, 2:13-md-2433, 2016 WL 5884964, at *7 (S.D. Ohio Oct. 7, 2016) ("importance of the issues at stake cannot be overstated" because requested information linking disease and exposure to C-8 chemical is relevant to claims of more than 3500 plaintiffs in MDL). The proportionality inquiry must therefore consider the efficiencies of the MDL as a whole and the needs of all of the cases that have been coordinated for discovery. It makes no sense to transfer thousands of cases for coordination of discovery if the presence of common questions within those cases is not part of the proportionality analysis that guides that discovery.

Discovery of MDL-wide dispensing data is central to the more than 2,100 cases against these defendants transferred to this MDL, and for that reason is both relevant to the parties' claims and defenses and proportional to the needs of this MDL. *See* Fed. R. Civ. P. 26(b)(1). Granting Plaintiffs leave to serve their discovery requests on the Pharmacy Defendants at this time falls squarely within this Court's role as an MDL judge and is grounded in the Federal Rules and Sixth Circuit precedent, including the holding in the recent mandamus ruling. Fed. R. Civ. P. 26, 34; *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 846 (6th Cir. 2020). Indeed, the Sixth Circuit expressly concluded that nothing in Rule 26(b) "prevent[s] the MDL court from creating efficiencies in the MDL . . . ." *Id.* In keeping with decades of MDL precedent, this Court should permit MDL-wide discovery of the Defendants' dispensing data to proceed.

**ARGUMENT**

**I.      Nationwide dispensing data is relevant to multiple cases within the MDL.**

Nationwide dispensing data is relevant[3] to the cases in this MDL for three reasons. *First,* local state-wide dispensing data is relevant to each of the cases against the Pharmacy Defendants in this MDL. This Court has already acknowledged the importance of dispensing claims as a pivotal issue in the MDL when it created CT1B and then CT3 as representative bellwether trial cases.[4] And during the course of Case Track One, the relevance of the dispensing data to those claims, as well as the distribution claims asserted against the Pharmacy Defendants, was established: it is "clearly relevant and necessary to the 'red flag' analysis that the [Plaintiffs] and their experts must undertake to assess whether the Pharmacy Defendants ignored indications within their own data that opioid prescriptions they were filling were suspicious." Dkt. # 3089, at 4-5 (Order Denying Motion for Stay). Special Master Cohen found that the dispensing data was relevant to the distribution claims to the extent it was a component of the Pharmacy Defendants' suspicious order monitoring ("SOM") systems and anti-diversion controls mandated by the Controlled Substances Act ("CSA"). Dkt. # 1055 (DR #8). Accordingly, local dispensing data is relevant to the claims of every Plaintiff within the MDL that asserts claims against the Pharmacy Defendants, and this Court has recognized that, at a minimum, each Plaintiff is entitled to statewide dispensing data. *See* Dkt. # 3055 (Order on Reconsideration re: Scope of Discovery in

---

[3] Plaintiffs are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). The scope of discovery is quite broad and the term "relevance" is liberally construed. *See Rui He v. Rom*, No. 1:15-CV-1869, 2016 WL 909405, at *2 (N.D. Ohio Mar. 10, 2016) (noting "the 2015 amendments do not alter the basic tenet that Rule 26 is to be liberally construed to permit broad discovery"); *Johnson v. CoreCivic, Inc.*, No. 18-CV-1051-STA-TMP, 2019 WL 5089086, at *3 (W.D. Tenn. Oct. 10, 2019) (noting the "low bar for demonstrating relevance in discovery").

[4] *See, e.g.,* Dkt. # 2940 (Track One-B Case Management Order); Dkt. # 2941 (Suggestions of Remand); Dkt. # 3261 (Order regarding Track 1B and Track Three); Dkt. # 3282 (Order regarding CT3); Dkt. # 3283 (Teleconference Tr. 6:16-20 (Apr. 28, 2020) (stating intent to try dispensing claims); Dkt. # 3307 (Teleconference Tr. 8:7-12 (May 28, 2020)) (same).

Case Track One-B ("CT1B")); *see also In re Nat'l Prescription Opiate Litig.*, Case: 20-3075, Dkt. # 42-4 (Feb. 12, 2020) (limiting stay of production to regional and national dispensing data, but requiring production of statewide data).

For this reason, the Pharmacy Defendants can and should be ordered to produce dispensing data for every state in which *any* MDL plaintiff is located. As shown in Exhibit A, this encompasses over 2,100 cases and includes at least one case (if not more) in every state in the country. And, given that dispensing data for all fifty states is relevant to at least one case within the MDL, production of all of it, pursuant to a consistent set of rulings and consistent protocols, is appropriate. Indeed, such coordinated discovery is a core purpose of this MDL. *See* Dkt. # 1, at 3 (Transfer Order). This Court should prioritize and coordinate discovery into this common factual issue now, just as it did with the national ARCOS distribution data.[5]

*Second*, as discussed in the PEC's opening memorandum, the relevance of dispensing data is not limited to claims brought by plaintiffs in the jurisdiction to which any particular data set pertains. It is widely accepted that opioids dispensed and diverted in one jurisdiction were trafficked to others. *See* Dkt. # 3301, at 9-10 (Pls.' Opening Br.). Such diversion was reported in the press and presumably well-known to all Defendants. *See* Exhibit B. Thus, if the Pharmacy Defendants permitted improper dispensing in Florida, as multiple actions by the DEA confirm, and those opioids were diverted and transported to other jurisdictions (as shown by data that pharmacies in Florida dispensed prescriptions for prescribers or patients with addresses in Ohio or other states), the improper dispensing in Florida is relevant to the claims of plaintiffs in every jurisdiction to which the drugs travelled. This is so not only for Florida, but for every jurisdiction

---

[5] The dispensing data provides information not contained in the ARCOS data, which dramatically alters the market share analysis both at the individual plaintiff jurisdiction level and on a national scale. It is thus  critical in evaluating the Defendants' relative contribution to the opioid epidemic as a whole.

from which prescription opioids migrated. Indeed, for states along the most common drug migration routes, state-wide dispensing data gives an inadequate and misleading picture of the sources and causes of diversion. Thus, nationwide data is critical evidence that supports Plaintiffs' claims that the Defendants knew that their dispensing and distributing activity was contributing to the nationwide opioid crisis, as well as the opioid crisis in each of the specific jurisdictions to which diverted opioids travelled.

*Finally,* nationwide dispensing data is relevant to *all* cases because Plaintiffs' claims against these Defendants arise from their nationwide practices and policies concerning opioid dispensing. The nationwide data is needed to show that those policies were insufficient to, and in fact did not, identify "red flags" in their data. Plaintiffs' claims turn on an analysis of Defendants' conduct and knowledge in the aggregate (i.e. a pattern and practice of repeated violations of the CSA on a broad scale that led to the crisis), not what occurred at a particular store with a particular pharmacist and particular prescription. This Court has already recognized this to be true. *See* Doc. # 3333, at 4 n.7 ("[L]ocal conduct has relevance to key issues regarding the adequacy and implementation of nationwide policies and procedures, which Pharmacy Defendants do not dispute are relevant throughout the MDL.").

## II.      Production of nationwide dispensing data is proportional to the needs of the MDL.

Once the party seeking discovery demonstrates relevance, the burden shifts to the party resisting production to show that the requested information is not proportional to the needs of the case. *AT&T Mobility Servs., LLC v. Boyd*, No. 1:19CV2539, 2020 WL 2572282, at *4 (N.D. Ohio May 21, 2020); *CSX Transportation, Inc. v. Columbus Downtown Dev. Corp.*, No. 2:16-CV-557, 2019 WL 1760069, at *4 (S.D. Ohio Apr. 22, 2019); *see also* Fed. R. Civ. P. 26(b) (2015 advisory committee's note) ("[T]he [amendment] does not place on the party seeking discovery the burden of addressing all proportionality considerations."). "Proportionality and

relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CIV-5088-RMB-HBP, 2016 WL 616386, at \*14 (S.D.N.Y. Feb. 16, 2016).

Here, because Plaintiffs have met their burden to demonstrate that nationwide dispensing data is relevant, the burden shifts to the Pharmacy Defendants to show that this discovery is not proportional to the needs of the cases in the MDL considering (1) the importance of the issues at stake in the action; (2) amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Instead of meaningfully addressing these factors, Defendants rely almost entirely on the argument that the proportionality inquiry must be assessed within an individual case, without regard to the full scope of this MDL. This is nonsense. To fulfill the purposes of coordinated discovery, proportionality must be assessed in the context of the entire MDL. Defendants have not met, and cannot meet, their burden to show that production of nationwide dispensing data is not proportional to the needs of this case.

### A.   The proportionality inquiry properly considers the totality of cases pending in the MDL.

The most important purpose of centralization pursuant to § 1407 is to allow one judge to take control of pretrial proceedings "to avoid unnecessary duplication in discovery." *Matter of Orthopedic Bone Screw Prod. Liab. Litig.*, 79 F.3d 46, 48 (7th Cir. 1996) (noting that MDL judge was better situated than local judges to know whether depositions plaintiffs proposed to take were appropriate, cost-justified steps towards resolution of the litigation); *see also* Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2324 (2008) (noting that purpose of § 1407 transfers "so that coordinated pretrial discovery can proceed in an efficient

and effective manner."). In determining if centralization before a single court is appropriate, "the Panel evaluates whether the parties' legitimate discovery needs are substantially similar in all of the proposed transferee actions." John G. Heyburn II, *A View from the Panel: Part of the Solution*, 82 Tul. L. Rev. 2225, 2237 (2008) ["*View from the Panel*"]. The just and efficient resolution of the actions coordinated is achieved, in part, "by eliminating the potential for conflicting pretrial rulings by coordinate courts." *In re Regents of Univ. of California*, 964 F.2d 1128, 1135 (Fed. Cir. 1992) (citing "duplicative rulings, multiple motions, and vacations of protective orders previously issued" in affirming decision of JPML to coordinate pretrial proceedings); *see also In re: Medi-Cal Reimbursement Rate Reduction Litig*., 652 F. Supp. 2d 1378 (U.S. Jud. Pan. Mult. Lit. 2009) ("One of the Panel's prime considerations is often the need to avoid inconsistent rulings on similar issues."). Moreover, it has long been recognized that discovery in an MDL may be conducted by a committee appointed to act as lead counsel for all the plaintiffs before the Court, rather than by individual counsel representing each plaintiff. *See* MANUAL FOR COMPLEX LITIGATION ("MCL"), Fourth Ed., § 11.423 (2004) ("Coordination of 'common' discovery in related litigation may also save costs. . . . A joint discovery plan can be formulated for all cases. . . ."); *id.* at § 22.62 (discussing appointment of lead counsel "to conduct common discovery"); *id.* at § 20.132 (advising that discovery already taken be made available for later-transferred tag-along cases).

In order to achieve the purposes of an MDL to gain efficiencies by consolidating or coordinating cases for discovery, the proportionality and appropriateness of discovery sought must be assessed in the context of all the cases pending in the transferee court.[6] It is precisely

---

[6] Significantly, although proportionality has played a more prominent role in Rule 26 since the rule was amended in 2015, the concept has been embedded in Rule 26 since at least 1983. *See* Fed. R. Civ. P. 26(b)(1) (2015 advisory committee's note) (noting that the considerations that bear on proportionality

*Footnote continued on next page*

because discovery that may be disproportionately expensive or burdensome in a single case can be efficiently taken once and used in thousands of cases that coordinated MDL discovery exists. *See In re: E/I. Du Pont de Nemours and Co. C-8 Pers. Inj. Litig.*, 2016 WL 5884964, at *7 (because requested information was relevant to claims of more than 3,500 plaintiffs, "the importance of the issues at stake cannot be overstated for these thousands of plaintiffs, as well as for DuPont and its ability to appropriately defend its position."). Requiring that nationwide efficiencies be ignored in considering nationwide discovery into common issues would defy the seminal purposes of centralization. *See View from the Panel* at 2236–37 ("As a general rule, the Panel considers that eliminating duplicate discovery in similar cases, avoiding conflicting judicial rulings, and conserving valuable judicial resources are sound reasons for centralizing pretrial proceedings with respect to a given group of actions.").

The Sixth Circuit's narrow ruling with respect to the amendment of the complaints in CT1B does not require a different result.  Indeed, the Sixth Circuit went out of its way to re-iterate that an MDL court has "broad discretion to create efficiencies and to avoid unnecessary duplication in its management of pretrial proceedings in the MDL." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 846. As the reference to "pretrial proceedings" makes clear, those efficiencies must come in discovery. The Sixth Circuit also specifically recognized that "the very reason the cases were transferred to the MDL court in the first place is that the needs of some cases are the same as those of many others." *Id.* Significantly, the Sixth Circuit found the

---

*Footnote continued from previous page*

have been in the rule since 1983 and that the 2015 "restores the proportionality factors to their original place. . . ."). It is inconceivable that decades of MDL practice, case law, and commentary recognizing and approving joint and common discovery were intended to be overturned by a change in the placement of the proportionality requirements within the text of Rule 26. *See, e.g., Revised Guidelines & Practices for Implementing the 2015 Discovery Amendments to Achieve Proportionality*, 100 JUDICATURE No. 4 at 23 (Center for Judicial Studies, Duke Law School October 2016) ("The Rule 26(b)(1) amendments do not alter the parties' discovery obligations or create new burdens.").

Pharmacy Defendants' petition challenging the Court's prior order regarding nationwide discovery of prescription data moot, and declined to rule on the issue. *Id.* The Court of Appeals' passing observation in *dicta* about discovery—on which virtually the entirety of the Pharmacy Defendants' opposition depends—cannot be read to upend the practice of complex, multidistrict litigation. Defendants ask this Court to treat the Sixth Circuit's passing comment, on an issue not briefed by the parties and not before that Court, as working a sea-change in the meaning of Rule 26 and in the practice of multi-district litigation, a change that would undermine the very purpose of MDLs and alter decades of established practice. The proportionality analysis set forth in Rule 26 has never been applied to limit the efficiencies to be gained by combining thousands of cases together for coordinated discovery. A single observation in *dicta* should not be read to make such a radical change to the MDL process established in § 1407.

The cases on which Defendants rely do not hold otherwise. In the *Volkswagen* securities-fraud litigation, the plaintiffs insisted on complete access to all documents produced in a separate litigation involving emissions-fraud claims brought by a consolidated class of consumers without the plaintiffs actually propounding discovery requests for that information. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 4680242, *1 (N.D. Cal. Oct. 18, 2017). The Court found that the plaintiffs had to comply with the Federal Rules and serve requests for the information they seek. *Id.* at *2. Here, Plaintiffs fully intend to serve document requests pursuant to Rule 34; indeed, the pending motion expressly seeks leave to do precisely that. In the *Bard IVC Filters* litigation, as part of common discovery the plaintiffs sought communications with foreign regulators, which the court found only marginally relevant because there were no foreign-based plaintiffs in the MDL; the "hope" that the Defendants' communications with foreign regulators would prove to be inconsistent with

their communications with American regulators did not outweigh the burden or expense of the proposed discovery "from 18 foreign entities over a 13-year period." *In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016). The MDL court's proportionality analysis considered the MDL as a whole, not just one specific or particular case within the MDL—but the absence of foreign-based plaintiffs meant that plaintiffs could not identify even a single case to which the communications might pertain. Here, by contrast, Plaintiffs have identified more than 2,100 cases that assert claims against the Pharmacy Defendants and, as explained in Plaintiffs' opening brief and above, dispensing data is highly relevant to each of these claims. In *Xarelto* the Plaintiff Steering Committee ("PSC") sought "personnel files of Defendants employees prior to conducting their depositions." *In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 313 F.R.D. 32, 33 (E.D. La. 2016). The Court found that the PSC did not present evidence as to why each personnel file was relevant, not that the PSC had to justify why personnel files were relevant to *each* particular case that comprised the MDL. *See id.*

> **B.** **Defendants have not met their burden to show that production of nationwide dispensing data is not proportional to the needs of this MDL.**

As noted above, Defendants make little or no effort to show that nationwide dispensing data is not proportional and properly producible in this MDL. Nor could they make such a showing. The importance of this litigation, its scale (including the amount in controversy), and the issues at stake are well-known to the Court and the Parties. Over the past two years, this MDL has grown to include more than 3,000 cases brought by counties, municipalities, Native American tribes, and numerous other plaintiffs against opioid manufacturers, distributors, pharmacies, and other members of the opioid supply chain for their roles in creating and perpetuating the opioid crisis. Of those cases, two-thirds assert claims against the Pharmacy Defendants for their role in the crisis. The recent COVID pandemic has only worsened the opioid

epidemic.[7] Delay in resolution of this litigation contributes to this disaster as the Plaintiffs continue to expend substantial resources combating its devastation to restore their communities. *See* Fed. R. Civ. P. 26(b) (2015 advisory committee's note) ("[T]he rule recognizes that many cases in public policy spheres, such as employment practices, free speech, and other matters, may have importance far beyond the monetary amount involved. Many other substantive areas also may involve litigation that seeks relatively small amounts of money, or no money at all, but that seeks to vindicate vitally important personal or public values." (internal quotations omitted)). These cases involve both a massive financial impact and a critical disruption to the public health on a broad scale.

The disclosure of the nationwide dispensing data in this important MDL is not outweighed by the burden of producing the data, which is readily accessible to the Defendants. *See* Dkt. # 3055 (explaining the data is derived from the Pharmacy Defendants' computer systems); *see also E.E.O.C. v. SVT, LLC*, No. 2:13-CV-245-RLM-PRC, 2014 WL 1411775, at *6 (N.D. Ind. Apr. 10, 2014) (finding data "readily accessible for use" when the information in a database can be exported to excel or .pdf format). Although it is possible that there may be alternative sources for *some* of this information, such as individual state databases like the OARRS database,[8] the Defendants are parties in this litigation and have the information at hand. Mere speculation that production from a non-party would "likely [be] more convenient, less

---

[7] *See, e.g.*, Silva, M.J., *The Escalation of the Opioid Epidemic Due to COVID-19 and Resulting Lessons about Treatment Alternatives*, AM. J. MANAG. CARE 2020; 26(7), *available at* https://www.ajmc.com/journals/issue/2020/2020-vol26-n7/the-escalation-of-the-opioid-epidemic-due-to-covid19-and-resulting-lessons-about-treatment-alternatives; MacDonald, E., "Near-record 66 drug overdose deaths reported in May: Number could rise, medical examiner says," *The Plain Dealer Cuyahoga County* (June 11, 2020), *available at* https://plaindealer-oh.newsmemory.com/?publink=16cb273b5.

[8] Plaintiffs do not agree that OARRS provides an adequate alternative source of the data sought given that for years it was not even mandatory. Further, such data is not available in many states.

burdensome, or less expensive" is not sufficient to avoid disclosure, and is unlikely to be true anyway, as 50 states would be put to the task of de-identifying the data. *See* Dkt. # 3330 at 12 (Defs. Br.). To be sure, this Court already addressed this same argument in its Order on Reconsideration regarding Scope of Discovery in Track One-B finding the "Pharmacy Defendants' own data is the best and most complete source of relevant information, and access to it by both Plaintiffs and Defendants should be reasonably equal." Dkt. # 3055. Further, there is little doubt that obtaining piecemeal data from state actors controlling individual state databases will be more burdensome than national production of data that Defendants already have.

Relatedly, any claim that Defendants' burden in producing the requested information is magnified because of protected health information ("PHI") or personally identifiable information ("PII") contained within the data is unfounded. The various protective orders entered in this MDL safeguard against any concerns about disclosure of sensitive PHI/ PII.[9] *See Ruggles v. WellPoint, Inc.*, No. 108CV201LEKRFT, 2010 WL 11570681, at *14 (N.D.N.Y. Dec. 28, 2010) ("[N]either HIPAA nor its rules and regulations impede the disclosure of non-parties' personal health information when protected by a court order; rather, it permits such disclosure."). To the extent the protective orders are not sufficient, or exclusion of certain data fields do not eliminate PHI/PII (*see* Dkt. # 3106, Exhibit A, narrowing data to 34 fields), and Defendants wish to further de-identify the data, Plaintiffs will not attempt to re-identify or un-redact that information. *See In re Zyprexa Prod. Liab. Litig.*, 254 F.R.D. 50, 53 (E.D.N.Y. 2008), *aff'd,* No. 04-MD-1596, 2008 WL 4682311 (E.D.N.Y. Oct. 21, 2008) (finding de-identified medical records discoverable); *see*

---

[9] *See* Dkt. # 441 (Protective Oder), at § XII, HIPAA-Protected Information ("The Court has determined that disclosure of such Protected Health Information is necessary for the conduct of proceedings before it and that failure to make the disclosure would be contrary to public interest or to the detriment of one or more parties to the proceedings."); *see also* Dkt. # 2987 (Protective Order re: Disclosure by Pls. of Conf'l Medical Records) (listing all related protective orders); Dkt. # 3106 (Discovery Ruling re: Pharmacy Data Production) (addressing concerns of PHI and PII); Dkt. # 3055 (Order on Reconsideration re: Scope of Discovery in Track 1B) (same).

*also Babcock v. C-Tech Collections, Inc.*, No. CV 1:2014-3124 MDG, 2014 WL 3894108, at *1 (E.D.N.Y. Aug. 11, 2014) (ordering if an "unredacted document containing identifiable health information is produced, the information shall be deemed a Confidential Document"). Indeed, the need for de-identification and redaction militates *in favor* of a single, nationwide production of dispensing data; piecemeal production of this data, state-by-state, in each litigation would surely be more, rather than less, burdensome, given the need for careful safeguards for sensitive heath information.

Defendants' additional argument that settlement considerations are not appropriate in defining the scope of discovery is incorrect on the face of Rule 26(b)(1), which explicitly includes "*the importance of the discovery in resolving the issues*" as a factor to be considered. *See also U-Haul Co. of Nevada v. Gregory J. Kamer, Ltd.*, No. 2:12-CV-00231-KJD, 2013 WL 4458812, at *2 (D. Nev. Aug. 15, 2013) (considering "the importance of the discovery in resolving the issues" and finding that the discovery sought would "very likely move [the] case toward conclusion, either through settlement or at trial"). To be clear, Plaintiffs are not seeking this discovery solely for settlement purposes, but the nationwide data is critical in addressing the Defendants' liability, which will aid in resolving the issues—either through settlement or by potentially narrowing and clarifying the issues for trial should a settlement not be reached. To that end, the Court it is well within its discretion to take settlement considerations into account in deciding to authorize MDL-wide discovery of dispensing data at this time. It is appropriate to proceed with this common discovery that is relevant to the Pharmacy Defendants' liability in both bellwether (e.g. CT3) and non-bellwether cases; not doing so would only impede and delay resolution. *See* MCL, at 230 n.690 (cautioning that "Defendants seek the opposite [of efficient resolution]—delay is their nirvana." (internal citation omitted)).

- 13 -

In short, Defendants' generalized statements that production of the nationwide dispensing data creates burden and expense on the Pharmacy Defendants—virtually all of which are Fortune 20 companies—are not sufficient to prevent disclosure. *See* Fed. R. Civ. P. 26(b) (2015 advisory committee's note) ("Nor is the [amendment] intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional."). Because Defendants have failed to meet their burden to show that the requested information is not proportional, Plaintiffs' motion should be granted.

The same conclusion—that the discovery sought is proportional and should be permitted—is true even if the Court were to consider the question in the context of the individual cases, rather than in the context of the MDL as a whole. As noted above, the importance of dispensing data was established in the litigation of Case Track One, and acknowledged in the creation of CT1B and CT3. Given the central role that this data plays in establishing the liability of the Pharmacy Defendants for their failures to control the supply chain for prescription opioids, the migration of these drugs across county and state lines, and the substantial contribution that retail dispensing played in the diversion of these dangerous drugs and the opioid epidemic, it should be readily apparent that production of dispensing data for each state is, at a minimum, proportional to the needs of the cases brought by plaintiffs in that state. Moreover, production of the data from all fifty states and Puerto Rico all at once, in a consistent and coordinated fashion, will be less burdensome than duplicative, inconsistent production of data that will be needed in each and every jurisdiction. Thus, whether considered case-by-case or with respect to the inventory as a whole, the discovery sought is not disproportionate to the needs of these cases.

### III.  **Plaintiffs' requests are procedurally proper.**

Under the Federal Rules, there is no requirement that prior to seeking discovery, the Court must first rule on Rule 12(b)(6) motions to dismiss. *See* Fed. R. Civ. P. 26(d)(1)

(mandating timing and sequence of discovery); *see, e.g.*, *Klinger v. Corr. Corp. of Am., Inc.*, No. 4:11CV2299, 2012 WL 12897338, at \*1 (N.D. Ohio Nov. 28, 2012). Defendants, moreover, incorrectly state that they have not had an opportunity to test the dispensing claims through Rule 12(b)(6) motions to dismiss. *See* Dkt. # 3330, at 13. This Court has already ruled on a number of occasions that Plaintiffs pled plausible claims against pharmacies as both dispensers and distributors. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.* ("*Broward*"), No. 1:17-MD-2804, 2020 WL 1986589, at \*6-8 (N.D. Ohio Apr. 27, 2020); *In re Nat'l Prescription Opiate Litig.* ("*West Boca*"), No. 1:17-MD-2804, 2020 WL 1669655, at \*17-18 (N.D. Ohio Apr. 3, 2020); *In re Nat'l Prescription Opiate Litig.* ("*Blackfeet*"), No. 1:17-CV-02804, 2019 WL 2477416, at \*9-18 (N.D. Ohio Apr. 1, 2019), *report and recommendation adopted in relevant part*, No. 1:17-MD-2804, 2019 WL 3737023 (N.D. Ohio June 13, 2019). In any event, the Pharmacy Defendants will have every opportunity to again address the dispensing claims in their motions to dismiss in CT3, which are due to be filed within one day of this submission.[10] Dkt. # 3329 (Track Three Case Management Order *Nunc Pro Tunc*).

Nor are Defendants correct that discovery of nationwide dispensing data is unfair or one-sided at this stage of the proceedings. *All* of the MDL plaintiffs have provided Plaintiff Fact Sheets, so that Defendants now have more information about each non-bellwether plaintiff than those plaintiffs have about Defendants' practices in their jurisdiction. The remaining discovery Defendants might seek from individual plaintiffs is too localized and specific to offer the kind of MDL efficiencies that would be realized through production of nation-wide dispensing data.

[10] Defendants' reliance on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997), is unpersuasive. The Eleventh Circuit found that motions to dismiss should be ruled on prior to discovery if the "contested claim is especially dubious" and "significantly enlarges the scope of discovery." *Id.* at 1368. Here, the dispensing claims here are not dubious, as the Court acknowledged in its prior rulings and, in any event nationwide dispensing data is not only important to the dispensing claims, but the distribution claims as well, thus the scope of discovery will not be significantly affected by any ruling on a motion to dismiss the dispensing claims.

- 15 -

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in the PEC's opening memorandum, this Court should grant in its entirety the PEC's motion for leaving to seek nationwide dispensing data from the Pharmacy Defendants.


Dated: June 15, 2020                     Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com


/s/Joseph F. Rice
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

/s/ Paul T. Farrell, Jr.
Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth St., 3rd Floor
Huntington, WV  25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

/s/Peter H. Weinberger
Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of June, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

*/s/Peter H. Weinberger*
Peter H. Weinberger

*Plaintiffs' Liaison Counsel*