UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| In re NATIONAL PRESCRIPTION OPIATE LITLGATION | ) ) ) | No. 1:17-md-2804 |
| | ) | Judge Dan A. Polster |
| This Document Relates To: | ) ) ) | |
| *County of Monroe, Michigan v. Purdue Pharma L.P., et al.* Case No. 18-op-45158 (N.D. Ohio) | ) ) ) ) ) | |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DISTRIBUTORS' MOTION TO CERTIFY UNDER 28 U.S.C. §1292(b) THE COURT'S APRIL 30, 2020 ORDER DENYING IN PART THEIR MOTION TO DISMISS MONROE COUNTY'S CLAIMS, FOR PURPOSES OF SEEKING IMMEDIATE APPEAL OF THE COURT'S RULINGS THAT DENIED DISMISSAL OF THE COUNTY'S CLAIMS

## TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ...................................................................1

II.   SUMMARY OF ARGUMENT ..................................................................1

III.   LEGAL STANDARD...............................................................................3

IV.   ARGUMENT .............................................................................................5

    A.    Distributors' Proposed Questions for Certification Are Neither Pure Questions of Law Nor Controlling ..........................................................5

    B.    Distributors' Disagreement with the Court's Order Does Not Equal the Substantial Grounds Required Under 28 U.S.C. §1292(b).......................9

        1.    There Is No Substantial Ground for Difference of Opinion on Whether Plaintiff Alleges Sufficient Directness for the RICO Proximate Cause Requirement.................................................10

        2.    There Is No Substantial Ground for Difference of Opinion on Whether Plaintiff's Claims Meet the RICO "Business or Property" Injury Requirement ...............................................................13

        3.    There Is No Basis for Reasonable Disagreement Regarding Whether the MPLA Implicates Plaintiff's State Law Claims....................17

            a.    There Is No Substantial Ground for Difference of Opinion with the Court's Conclusion that the Claims Against Distributors Do Not Seek to Hold Them Liable as "Sellers" of Prescription Opioids Within the Meaning of the MPLA..........17

            b.    Reasonable Jurists Would Not Disagree with the Court's Conclusion that Plaintiff's Claims Are Not All Product Liability Claims ............................................................19

    C.    Certification Will Not Materially Advance the Litigation....................................22

V.   CONCLUSION........................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adell v. Cellco P'ship*,
  No. 1:18CV623, 2019 WL 5285627
  (N.D. Ohio Oct. 18, 2019) ....................................................................................................4

*Ahrenholz v. Bd. Of Trustees of the Univ. of Ill.*,
  219 F.3d 674 (7th Cir. 2000) ................................................................................................6

*Arab Am. Civil Rights League v. Trump*,
  No. 17-10310, 2019 WL 5684371
  (E.D. Mich. Nov. 1, 2019) ........................................................................................5, 20, 22

*Ashley Cty., Ark. v. Pfizer, Inc.*,
  552 F.3d 659 (8th Cir. 2009) ..............................................................................................12

*Attorney Gen. v. Merck Sharp & Dohme Corp.*,
  807 N.W.2d 343 (Mich. Ct. App. 2011) ..............................................................................18

*Bridge v. Phoenix Bond & Indem Co.*,
  553 U.S. 639 (2008) ............................................................................................................10

*Brown v. Ajax Paving Indus., Inc.*,
  752 F.3d 656 (6th Cir. 2014) ..............................................................................................14

*Canyon Cty. v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) ........................................................................................15, 16

*Cardwell v. Chesapeake & Ohio Ry. Co.*,
  504 F.2d 444 (6th Cir. 1974) ............................................................................................3, 4

*Catlin v. United States*,
  324 U.S. 229 (1945) ..............................................................................................................3

*City of Cleveland v. Ameriquest Mortg. Sec., Inc.*,
  615 F.3d 496 (6th Cir. 2010) ..............................................................................................12

*City of New Haven v. Purdue Pharma, L.P.*,
  No. X07HHDCV176086134S, 2019 WL 423990
  (Conn. Super. Ct. Jan. 8, 2019) ..........................................................................................12

**Page**

*City of New York v. Smokes-Sprites.com, Inc.*,
   541 F.3d 425 (2d Cir. 2008), *rev'd on other grounds*,
   *Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1 (2010) ....................................................................................................15

*City of Philadelphia v. Beretta U.S.A. Corp.*,
   277 F.3d 415 (3d Cir. 2002) ....................................................................................12

*Cty. of Oakland v. City of Detroit*,
   866 F.2d 839 (6th Cir. 1989) .............................................................................15, 16

*Cunningham v. Hamilton Cty., Ohio*,
   527 U.S. 198 (1999) ..................................................................................................2

*DRFP, LLC v. Republica Bolivariana de Venezuela*,
   945 F. Supp. 2d 890 (S.D. Ohio 2013) .....................................................................6

*Duronio v. Merck & Co.*,
   No. 267003, 2006 WL 1628516
   (Mich. Ct. App. June 13, 2006) ...............................................................................20

*Emp'rs Reinsurance Corp. v. Mass. Mut. Life Ins. Co.*,
   No. 06-0188-CV-W-FJG, 2010 WL 2540097
   (W.D. Mo. June 16, 2010),
   *aff'd*, 654 F.3d 782 (8th Cir. 2011) ..........................................................................6

*Firestone Tire & Rubber Co. v. Risjord*,
   449 U.S. 368 (1981) ..................................................................................................3

*Gieringer v. Cincinnati Ins. Cos.*,
   No. 3:08-cv-267, 2010 WL 2572054
   (E.D. Tenn. June 18, 2010) ..................................................................................9, 19

*Hawaii v. Standard Oil Co. of Cal.*,
   405 U.S. 251 (1972) ................................................................................................16

*Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1 (2010) ..............................................................................................10, 11

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992) .............................................................................................6, 10

*Ill. Dep't of Revenue v. Phillips*,
   771 F.2d 312 (7th Cir. 1985) ...................................................................................15

- iii -

**Page**

*In re Bard IVC Filters Prods. Liab. Litig.*,
  No. MDL 15-02641-PHX DGC
  (D. Ariz. Dec. 21, 2017) ....................................................................................23

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
  No. 08-1967-MD-W-ODS, 2010 WL 286428
  (W.D. Mo. Jan. 19, 2010) ...................................................................................5

*In re City of Memphis*,
  293 F.3d 345 (6th Cir. 2002) .......................................................................2, 4, 8

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 524 (S.D.N.Y. 2014)......................................................8, 9, 23, 24

*In re Gen. Motors, LLC*,
  No. 19-0107, 2019 WL 8403402
  (6th Cir. Sept. 25, 2019)........................................................................................5

*In re Health Diagnostic Lab., Inc.*,
  No. 15-32919-KRH, 2017 WL 2129849
  (E.D. Va. May 16, 2017)........................................................................................8

*In re Miedzianowski*,
  735 F.3d 383 (6th Cir. 2013) ...............................................................................15

*In re Regions Morgan Keegan ERISA Litig.*
  741 F. Supp. 2d 844 (W.D. Tenn. 2010)................................................................8

*In re Smith & Nephew Birmingham Hip Resurfacing
  Hip Implant Prods. Liab. Litig.*,
  No. 1:17-md-2775, 2019 WL 6345746
  (D. Md. Nov. 26, 2019)........................................................................................24

*In re Trump*,
  874 F.3d 948 (6th Cir. 2017) ............................................................................7, 9

*In re Vellenga Estate*,
  327 N.W.2d 340 (Mich. Ct. App. 1982) ...............................................................17

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
  731 F.3d 556 (6th Cir. 2013) .........................................................................13, 14

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
  233 F. Supp. 2d 16 (D.D.C. 2002) ........................................................................9

**Page**

*Kraus v. Bd. of Cty. Road Comm'rs for Kent Cty.*,
   364 F.2d 919 (6th Cir. 1966) ...................................................................4

*Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*,
   191 F.3d 229 (2d Cir. 1999),
   *as amended* (Aug. 18, 1999) ..............................................................22

*McElhaney ex rel. McElhaney v. Harper-Hutzel Hosp.*,
   711 N.W.2d 795 (Mich. Ct. App. 2006) ...............................................17

*McFarlin v. Conseco Servs., LLC*,
   381 F.3d 1251 (11th Cir. 2004) ..........................................................6, 7

*Miller v. Mylan Inc.*,
   741 F.3d 674 (6th Cir. 2014) ...............................................................18

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
   71 F. Supp. 2d 139 (E.D.N.Y. 1999) ...................................................3, 4

*Nwanguma v. Trump*,
   No. 3:16-CV-247-DJH-HBB, 2017 WL 3430514
   (W.D. Ky. Aug. 9, 2017) ........................................................................7

*Perry v. Am. Tobacco Co.*,
   324 F.3d 845 (6th Cir. 2003) ...............................................................12

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979)..............................................................................16

*Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*,
   381 F.3d 717 (7th Cir. 2004) .................................................................3

*S.E.C. v. Geswein*,
   2 F. Supp. 3d 1074 (N.D. Ohio 2014)..................................................22

*Seligman & Assocs., Inc. v. Mich. Emp't Sec. Comm'n*,
   417 N.W.2d 480 (1987) ........................................................................17

*Sheet Metal Emp'r Indus. Promotion Fund v.*
   *Absolut Balancing Co.*,
   830 F.3d 358 (6th Cir. 2016) .................................................................5

*Swint v. Chambers Cty. Comm'n*,
   514 U.S. 35 (1995)..............................................................................3, 4

Page

*Tidewater Oil Co. v. United States*,
  409 U.S. 151 (1972).................................................................................3

*Trimble v. Bobby*,
  No. 5:10-CV-00149, 2011 WL 1982919
  (N.D. Ohio May 20, 2011)......................................................................22

*Trollinger v. Tyson Foods, Inc.*,
  370 F.3d 602 (6th Cir. 2004) ................................................................10

*United States ex rel. Elliott v. Brickman Grp. Ltd., LLC*,
  845 F. Supp. 2d 858 (S.D. Ohio 2012) ........................................4, 5, 13

*United States v. Stone*,
  53 F.3d 141 (6th Cir. 1995) .....................................................................4

*Vitols v. Citizens Banking Co.*,
  984 F.2d 168 (6th Cir. 1993) ...................................................................4

*Wallace v. Midwest Fin. & Mortg. Servs., Inc.*,
  714 F.3d 414 (6th Cir. 2013) ....................................................10, 11, 12

*Welborn v. Bank of N.Y. Mellon Corp.*,
  557 F. App'x 383 (5th Cir. 2014)
  (*per curiam*) .........................................................................................15

*Westwood Pharms. v. Nat'l Fuel Gas Distrib.*,
  964 F.2d 85 (2d Cir. 1992).......................................................................9

## STATUTES, RULES AND REGULATIONS

18 U.S.C.
  §1961 *et seq.* ................................................................................ *passim*

21 U.S.C.
  §801 *et seq.* ...........................................................................................11

28 U.S.C.
  §1291....................................................................................................3
  §1292(b)........................................................................................ *passim*

- vi -

**Page**

Mich. Comp. Laws ...............................................................................20
    §600.2945(h)................................................................................17, 20
    §600.2945(i).................................................................................17, 18
    §600.2946...................................................................................... *passim*
    §600.2946(5)................................................................................17, 20

Federal Rules of Appellate Procedure
    Rule 5(a)(1) .......................................................................................2

Federal Rules of Civil Procedure
    Rule 12(b)(6) .....................................................................................5

Local Civil Rules for the U.S. District Court,
    Southern District of Ohio
    Rule 7.1(d) ........................................................................................2
    Rule 7.1(f) .........................................................................................2
    Rule 16.1(b)(5)...................................................................................2

**LEGISLATIVE HISTORY**

*Appeals from Interlocutory Orders and Confinement in Jail-Type Institutions:*
    *Hearing on H.R. 6238 and H.R. 7260 Before Subcomm. No. 3 of the Comm.*
    *on the Judiciary*, 85th Cong. 13 (1958) .......................................................9

Report of the Committee on Appeals from Interlocutory
    Orders of the District Courts, Agenda No. 11
    (Sept. 23, 1953)....................................................................................9

**SECONDARY AUTHORITIES**

Melissa J. Whitney,
    *Bellwether Trials in MDL Proceedings*
    *A Guide for Transferee Judges,*
    2019 WL 2305447 (Fed. Judicial Ctr. 2019) .......................................................24

## I.     PRELIMINARY STATEMENT

Plaintiff the County of Monroe, Michigan ("Monroe County," the "County," or "Plaintiff") opposes Distributors' Motion to Certify Under 28 U.S.C. §1292(b) the Court's April 30, 2020 Order Denying in Part Their Motion to Dismiss Monroe County's Claims, for Purposes of Seeking Immediate Appeal of the Court's Rulings that Denied Dismissal of the County's Claims (ECF No. 3312) ("Motion") and Memorandum in Support (ECF No. 3312-1) ("Memorandum" or "Mem."). Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively, "Distributors") seek to certify for interlocutory appeal the following issues:[1]

1.     Whether Monroe County's allegations meet RICO's proximate causation requirements;

2.     Whether Monroe County's allegations meet RICO's "business or property" requirements; and

3.     Whether Monroe County's remaining claims must be dismissed because they are state law claims that constitute a "product liability action" within the meaning of the Michigan Product Liability Act ("MPLA"), which bars such actions.

For the reasons set forth herein, Distributors' Motion should be denied.

## II.    SUMMARY OF ARGUMENT

Undeterred by this Court's denial of their motions to certify interlocutory appeals of the Court's motion to dismiss rulings in *Cleveland Bakers* (ECF No. 3289) and *Summit County* (ECF

---

[1]     Although Distributors claim to seek certification of two questions, in fact they raise three questions as their first question concerning RICO is twofold, asking whether: (i) RICO's direct injury and proximate cause requirement is satisfied; and (ii) Plaintiff was injured in its business or property.  *Compare* Mem. at 1 *with* ECF No. 3235-2 at 1 (seeking to certify the same questions as two separate questions).

- 1 -

No. 1283), Distributors try their luck a third time here.  But once again, the Court properly applied settled law to the facts alleged in Plaintiff's Corrected Unredacted Second Amended Complaint (ECF No. 3032) ("SAC") to determine that Plaintiff satisfied RICO's proximate cause and "business or property" requirements and that Plaintiff sufficiently alleged its common law claims to the extent those claims seek injunctive relief and recovery for non-monetary losses.

Although Distributors may disagree with the Court's April 30, 2020 Opinion and Order (ECF No. 3285) ("Order"), their disagreement is not a ground for immediate appeal, well prior to any final judgment in this case.  *See, e.g.*, *Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198, 209 (1999).  Rather than demonstrate that the Order fits 28 U.S.C. §1292(b)'s auspices such that the extraordinary – and discretionary – remedy of interlocutory appeal is warranted, Distributors rehash old arguments in another overlong brief they incorrectly characterize as "dispositive."[2]  *See In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002) (§1292(b) reserved for "exceptional

---

[2]    As they did in their *Cleveland Bakers* motion, Distributors again certify that their Memorandum – which is even longer here – adheres to the page limit requirements for dispositive motions under Case Management Orders One (ECF No. 232) and Four (ECF No. 485) and Local Rule 7.1(f).  Plaintiff disputes Distributors' characterization of the Motion as "dispositive" because a ruling on this Motion, even one granting it, will not "result in entry of judgment or dismissal, or would dispose of any claims or defenses, or would terminate the litigation" under Local Rule 16.1(b)(5).  Instead, a successful ruling by this Court would merely certify Distributors' proposed questions for ***potential*** appellate review, and no claims or defenses would be eliminated.  (Indeed, Distributors concede this point when they state that they "do not intend to seek a stay from the Sixth Circuit if this Court certifies an interlocutory appeal but decides to lift the existing stay."  Mem. at 4 n.4.)  Moreover, even if this Court were to grant Distributors' Motion, that would only be the ***first*** step of a ***two-step process*** required to obtain appellate review: Distributors would then have to petition the Sixth Circuit to accept the proposed certified motion to dismiss order for interlocutory review.  *See* Fed. R. App. P. 5(a)(1).  Given the foregoing, Distributors' Motion is anything but "dispositive," and their flouting of the 15-page limit puts Plaintiff in the difficult position of having to either respond to a 26-page brief in 15 pages (and only 14 days if it is to comply with the local rule) or to similarly file an oversized brief.  Because Plaintiff is forced to respond to all the arguments in Distributors' overlong brief, Plaintiff is roughly matching Distributors' Memorandum in length but is still adhering to the timing limitation of 14 days under Local Rule 7.1(d).  Plaintiffs request that the Court deny Distributors the right to a reply and require Defendants to conform with the appropriate page and timing limitations on any further motions for interlocutory appeal in the future.

- 2 -

cases"); *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974) (court's power to certify under "section 1292(b) should be sparingly applied")[3]; *see also Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 728 (7th Cir. 2004) (interlocutory appeal is not intended as a "second bite at the apple" that allows the moving party to reargue issues that the court has already addressed and rejected).  And even if this Court were to find that Distributors satisfied the three requirements for certification under §1292(b) – which they have not – the Court should nevertheless decline to certify an immediate appeal.  *See, e.g.*, *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995) (district court has "first line discretion to allow interlocutory appeals"); *Tidewater Oil Co. v. United States*, 409 U.S. 151, 167 (1972); *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 146, 162-66 (E.D.N.Y. 1999).  As it did in *Summit County*, this Court should find that "the best way to advance the process is to determine what, if any, evidence Plaintiff[] can develop in discovery to support the theories of liability [it has] alleged."  ECF No. 1283 at 2.

For the reasons set forth herein, Distributors' Motion should be denied.

## III.    LEGAL STANDARD

The final judgment rule of 28 U.S.C. §1291 limits the appellate jurisdiction of circuit courts to a district court's final judgment that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Catlin v. United States*, 324 U.S. 229, 233 (1945); *see also Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981) (rule requires appealing party to bring all claims of error in one appeal following judgment on the merits).  However, under 28 U.S.C. §1292(b), a court may certify an interlocutory judgment for appeal when: (1) it involves a controlling question of law; (2) a substantial ground for difference of opinion exists regarding the

---

[3]    Citations and internal quotation marks are omitted and emphasis is added except where noted.

correctness of the decision; and (3) an immediate appeal may materially advance the ultimate termination of the litigation.  ECF No. 3289 at 1-2.  The statute does not contemplate a mere balancing of these factors.  All must be met.

It is well settled that the power to certify an interlocutory appeal under §1292(b) should be sparingly applied.  *Cardwell*, 504 F.2d at 446; *see also Vitols v. Citizens Banking Co*., 984 F.2d 168, 170 (6th Cir. 1993).  Review under §1292(b) is granted only in exceptional cases.  ECF No. 3289 at 2 (citing *City of Memphis*, 293 F.3d at 351).  "Attractive as it may be to refer difficult matters to a higher court for advance decision, such a course of action is contrary to our system of jurisprudence."  *United States ex rel. Elliott v. Brickman Grp. Ltd., LLC*, 845 F. Supp. 2d 858, 863 (S.D. Ohio 2012).  "As the Sixth Circuit explained, . . . section 1292(b) . . . 'is to be used only . . . where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation.'"  *Id.* at 863-64 (quoting *Kraus v. Bd. of Cty. Road Comm'rs for Kent Cty.*, 364 F.2d 919, 922 (6th Cir. 1966)).

Any "'doubts regarding appealability [should be] resolved in favor of finding that the interlocutory order is not appealable.'"  *Adell v. Cellco P'ship*, No. 1:18CV623, 2019 WL 5285627, at *1 (N.D. Ohio Oct. 18, 2019) (alteration in original) (quoting *United States v. Stone*, 53 F.3d 141, 143-44 (6th Cir. 1995)).  Even when a movant can satisfy all three requirements for §1292(b) certification, a court may decline to certify.  *Swint*, 514 U.S. at 47 (district court has "first line discretion to allow interlocutory appeals"); *see also Nat'l Asbestos*, 71 F. Supp. 2d at 146, 162-66.

## IV.     ARGUMENT

### A.     Distributors' Proposed Questions for Certification Are Neither Pure Questions of Law Nor Controlling

A "controlling" question must be both: (i) a question of law; and (ii) controlling.  *Elliott*, 845 F. Supp. 2d at 865.  Here, the questions Distributors seek to certify are neither pure questions of law nor controlling.

*First*, with respect to the first element, the question must be a pure question of law; a motion for interlocutory appeal should be denied if the question is a factual dispute.  *Sheet Metal Emp'r Indus. Promotion Fund v. Absolut Balancing Co.*, 830 F.3d 358, 361 (6th Cir. 2016) ("On interlocutory appeal under 28 U.S.C. §1292(b), our review is limited to the district court's conclusions of law, which we review *de novo*; we do not review disputed questions of fact."); *see also In re Gen. Motors, LLC*, No. 19-0107, 2019 WL 8403402, at *1 (6th Cir. Sept. 25, 2019) (declining interlocutory appeal where the legal question was only controlling as to a narrow question of law when "[o]ther unbriefed and undecided questions of law and fact" permeated the plaintiff's claims).

Although Distributors attempt to frame their questions as "purely legal questions" (Mem. at 5), in fact, Distributors challenge the Court's factual determinations.  *See In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, No. 08-1967-MD-W-ODS, 2010 WL 286428, at *2 (W.D. Mo. Jan. 19, 2010) (denying motion for certification and noting, "the difficulty is that any contested motion to dismiss that is denied can be said to satisfy the requirements.  Unlike purely legal issues that would cause the immediate termination of the suit . . . the issues in this case involve law and fact . . . ."); *see also Arab Am. Civil Rights League v. Trump*, No. 17-10310, 2019 WL 5684371, at *3 (E.D. Mich. Nov. 1, 2019) ("The factual sufficiency of a complaint under Rule 12(b)(6) is not the type of pure legal question that justifies §1292(b) relief – which is to be granted sparingly and only in exceptional cases.").  A pure question of law should not require a

close review of the record to decide it. *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 919 (S.D. Ohio 2013) ("Although Defendants attempt to frame their contentions as discrete legal questions . . . any review of the Court's analysis in these areas would be highly fact intensive and would likely require consideration of how the Court weighed other facts within its overall balancing analysis. Moreover, Defendants do not appear to actually contest the legal standards the Court applied, but instead the weight the Court ultimately assigned to the various factors based on the facts of the case.").

Here, Distributors challenge the application of settled law to fact. *See, e.g.*, *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) ("'[Q]uestion of law as used in §1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation or common law doctrine' . . . . The term . . . does not mean the application of settled law to fact.") (quoting *Ahrenholz v. Bd. Of Trustees of the Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000); *see also Emp'rs Reinsurance Corp. v. Mass. Mut. Life Ins. Co.*, No. 06-0188-CV-W-FJG, 2010 WL 2540097, at *2 (W.D. Mo. June 16, 2010) ("Challenging the application of settled law to a specific set of facts is not a question of law."), *aff'd*, 654 F.3d 782 (8th Cir. 2011).

First, with respect to proximate cause, Distributors challenge the Court's application of the direct injury test in *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992). Mem. at 6-13. Indeed, Distributors concede as much when they state that another court applying the same law to the set of facts alleged in a state court opioid case determined that the direct injury test was not satisfied. Mem. at 8. Further highlighting that Distributors seek to certify factual determinations, the Order concluded that Distributors' intervening cause defense (which Distributors rehash here) "raised significant factual issues not suitable for resolution on a motion to dismiss." Order at 28.

Next, as to the question Distributors seek to certify regarding RICO's "business or property" requirement, it is no more than a challenge of factual determinations that: (i) most, if not

all, categories of damages alleged do not flow from personal injuries; (ii) Plaintiff has been forced to expend vast sums of money far in excess of the norm to combat the opioid epidemic; and (iii) Plaintiff has suffered injuries resulting from its doing business in the marketplace. *Id.* (incorporating its *Summit County* analysis); *see* ECF No. 1025 at 15-19.

Finally, the question Distributors seek to certify concerning the MPLA is likewise a challenge of: (i) the determination that Plaintiff seeks to impose liability on Distributors based on their alleged failure to comply with federal and state regulations to prevent diversion; (ii) the determination that Plaintiff's fraud or fraudulent concealment, unjust enrichment, and civil conspiracy claims survive to the extent they seek to recover equitable and injunctive relief; and (iii) the determination that Plaintiff's injuries do not flow from personal injuries. *See, e.g.*, Mem. at 18 (citing "central factors" for determining whether Plaintiff's claims are barred under the MPLA).

*In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017), cited by Distributors (Mem. at 6), does not dictate a different result. There, the proposed questions for certification were whether a single statement made by Donald Trump during a campaign rally, "Get 'em out of here," constituted an "incitement to riot" under §§525.040 and 467.070 of the Kentucky Revised Statutes and whether it was protected under the First Amendment. *In re Trump*, 874 F.3d at 951. Thus, the issue proposed there for certification "question[ed] . . . the meaning of a statutory or constitutional provision," *McFarlin*, 381 F.3d at 1258, and did not involve a fact-intensive analysis by the court.[4] Here, Distributors challenge only the Court's view of Plaintiff's allegations. And while this Court agreed with Distributors in the *Cleveland Bakers* case that the issues concerning RICO there were

---

[4]    Additionally, *In re Trump* involved unique circumstances not present here, most notably the "unique sensitivities involved where the President of the United States is a party to litigation." *Nwanguma v. Trump*, No. 3:16-CV-247-DJH-HBB, 2017 WL 3430514, at *2 (W.D. Ky. Aug. 9, 2017). Such unique circumstances are not present here.

questions of law (ECF No. 3289 at 2), the plaintiffs there did not have the chance to brief the issue, and the questions Distributors sought to certify in that case at least arguably included a legal question specific to third-party payors like the plaintiffs there. Because Distributors do not raise pure legal questions here, their Motion should be denied.

**Second**, the questions Distributors seek to certify here are not controlling. A "legal issue is controlling if it could materially affect the outcome of the case." *City of Memphis*, 293 F.3d at 351. An issue that may result in dismissal of some claims does not materially affect the outcome of the case if a number of claims or theories providing additional grounds for recovery will remain after dismissal. ECF No. 3289 at 2 (citing *In re Regions Morgan Keegan ERISA Litig.* 741 F. Supp. 2d 844, 852 (W.D. Tenn. 2010)). Additionally, an issue that involves a question of law and fact is not controlling. *Regions*, 741 F. Supp. 2d at 852.

Distributors contend that a successful appeal would lead to a dismissal of the case. Not so. Rather, because of the fact-specific nature of the issues Distributors seek to certify and the early stage of this case, at most a dismissal on appeal of the issues could lead only to a remand for repleading, which would only delay the action. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 531-32 (S.D.N.Y. 2014) ("The Second Circuit regularly denies interlocutory appeals at such preliminary stages where, as here, the appeal could at most lead only to a remand for repleading" given that "the issues raised by Defendants involve applications of law to an extremely specific set of facts."); *see also In re Health Diagnostic Lab., Inc.*, No. 15-32919-KRH, 2017 WL 2129849, at *5 (E.D. Va. May 16, 2017) (denying certification of an interlocutory appeal due to the preliminary stage of the case and that reversal would, at most, lead to a remand for repleading).

Additionally, as set forth above, Distributors seek to certify a multitude of issues. Two such issues were not raised in their motion to dismiss and should be deemed waived. *See infra*,

§IV.B.3.b.  Because Plaintiff's claims are predicated on the same underlying set of facts, "[i]f any of the claims are not dismissed on appeal, the litigation will continue to advance in substantially the same manner as if the interlocutory appeal had never occurred."  *Facebook*, 986 F. Supp. 2d at 532 (citing *Westwood Pharms. v. Nat'l Fuel Gas Distrib.*, 964 F.2d 85, 88 (2d Cir. 1992)).  Because a successful appeal on these fact-inflected issues will not substantially change the manner in which the litigation will be conducted, the questions cannot be said to be controlling.

### B. Distributors' Disagreement with the Court's Order Does Not Equal the Substantial Grounds Required Under 28 U.S.C. §1292(b)

"The threshold for establishing the substantial ground for difference of opinion with respect to a controlling question of law required for certification pursuant to §1292(b) is a high one." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002).  The statute is "not intended merely to provide review of difficult rulings in hard cases."  *Id.* at 24; *accord Appeals from Interlocutory Orders and Confinement in Jail-Type Institutions: Hearing on H.R. 6238 and H.R. 7260 Before Subcomm. No. 3 of the Comm. on the Judiciary*, 85th Cong. 13 (1958) ("'It is not thought that . . . mere question as to the correctness of the ruling would prompt the granting of the certificate.'") (quoting Report of the Committee on Appeals from Interlocutory Orders of the District Courts, Agenda No. 11 (Sept. 23, 1953)).[5]  Rather, to meet 28 U.S.C. §1292(b), the substantial difference must arise out of a "genuine doubt as to the correct ***legal standard***."  *Gieringer v. Cincinnati Ins. Cos.*, No. 3:08-cv-267, 2010 WL 2572054, at *3 (E.D. Tenn. June 18, 2010).  That only three defendants seek §1292(b) certification underscores that there is no compelling legal issue crying out for immediate review here.  Distributors may disagree

---

[5]  Distributors cite *In re Trump*, 874 F.3d at 952, but that case found interlocutory appeal appropriate to address a "novel" and difficult legal issue of first impression and was otherwise "exceptional in many ways," including not least because it addressed whether "the President of the United States must answer for a state-law claim that presents a novel question."  *Id.*

with how the Court applied Sixth Circuit law to the facts here, but that does not amount to a substantial ground for difference of opinion as required under §1292(b). *Id.* (refusing to certify under §1292(b) where "[d]efendant is challenging this [c]ourt's application of law to the facts because of its own disagreement with the outcome, rather than presenting a situation where there are substantial disputes as to the applicable law").

> **1.     There Is No Substantial Ground for Difference of Opinion on Whether Plaintiff Alleges Sufficient Directness for the RICO Proximate Cause Requirement**

The legal standard for alleging proximate cause in a civil RICO case is neither a novel issue nor the subject of any relevant split of authority.  The Supreme Court has addressed RICO's proximate cause standard multiple times, including in *Holmes*, 503 U.S. 258, *Bridge v. Phoenix Bond & Indem Co.*, 553 U.S. 639 (2008), and *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010).  The Sixth Circuit likewise has laid out the applicable standards, including in *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414 (6th Cir. 2013) (which Distributors ignore), and *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004).

Given the considerable precedent, Distributors cannot and do not identify any "genuine doubt," let alone difference of judicial opinion on the actual legal standard to plead proximate cause in a civil RICO case.  Mem. at 6-13.  Rather, they dispute only the application of the legal standard to the County's allegations, which is not enough for §1292(b) certification.

As noted above, §1292(b) certification is particularly inappropriate here because application of the proximate cause standard in RICO cases is a fact-intensive issue to be determined on a case-by-case basis.  Per *Holmes*, proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged," 503 U.S. at 268, although a lack of a direct relationship between the parties does not defeat proximate cause.  *Bridge*, 553 U.S. at 657-58.  Following *Holmes* and *Bridge*, the Sixth Circuit confirmed in *Wallace* that

proximate cause is a "flexible concept" that must be evaluated on a case-by-case basis.  714 F.3d at 419.  Disputes by only half the RICO defendants about application of such a "flexible concept" falls far short of the "genuine doubt as to the correct legal standard" required for §1292(b) certification.

In any event, Distributors' proximate cause argument rests on an egregious mischaracterization of the County's RICO claims.  In a baseless effort to try to make this case look like *Hemi Grp.*, 559 U.S. 1, the Distributors assert that the only "wrongdoing" alleged here is "failure to inform [U.S. Drug Enforcement Agency ('DEA')] of suspicious orders" and that the harm to the County resulted from illicit opioid use that the Distributors had no duty to combat. Mem. at 7.  But that is nowhere near the full scope of the injurious and unlawful scheme Plaintiff alleges.

Plaintiff alleges that the Distributor and Manufacturer Defendants formed an ***enterprise*** – the Opioid Supply Chain Enterprise ("OSCE").  Filing false reports with the DEA in violation of the Controlled Substances Act was just one (criminal) part of that enterprise.  SAC, ¶830c.  The County alleges a much broader scheme by which the OSCE "failed to maintain effective controls" and "actively sought to evade" controls on the distribution of opioids, "exacerbating the oversupply of such drugs and fueling an illegal secondary market."  SAC, ¶14; *see also*, *e.g.*, SAC, ¶¶763-791, 820-851.  Core to that scheme was the OSCE's failure to actually "***halt***" suspicious orders, SAC, ¶768, "knowingly allowing millions of doses of prescription opioids to divert into the illicit drug market," SAC, ¶784, so that the OSCE members could increase their profits from inflated DEA quotas and opioid sales.  *Id.*; *see also, e.g.*, SAC, ¶¶648-650, 791, 829, 841, 844.

As the Court correctly found, with these alleged facts, the formation and operation of an illicit market for opioids in the County (and, indeed, nationwide) was not some independent,

contingent, attenuated, "superseding," or indirect consequence of the OSCE's wrongful conduct.[6] Rather, like the mortgage fraud scheme in *Wallace*, the central purpose of the enterprise here was to grow the entire opioids market (licit and illicit) and make money for the OSCE by (among other things) not halting or reporting diversion and suspicious orders.

That the Distributors continue to assert that Plaintiff's injury is not sufficiently "direct" when Monroe County responded to what the ***OSCE*** was supposed to "halt," report, and prevent is plainly illogical – and indicative of the Distributors' stubborn denial of their legal duties to maintain a "closed system" for such dangerous narcotics.  Unlike the defendants in the cases Distributors cite,[7] the Distributors had a specific, affirmative duty to monitor for, report, and ***halt*** diversion into an illicit opioids market ***because*** of the direct, devastating impact such a market has not only on individuals, but on the community (here, Monroe County) deluged with opioids.[8]  At best, Distributors' proximate cause arguments raise disputed issues of fact, not any "substantial ground" for difference of opinion on a question of law that could justify an exceptional interlocutory appeal under §1292(b).

---

[6]    Order at 28 (incorporating *Summit County* analysis); *see* ECF No. 1025 at 8-10.

[7]    *Perry v. Am. Tobacco Co.*, 324 F.3d 845 (6th Cir. 2003) (cigarette manufacturers with no statutory duty to prevent inflating the non-smoker plaintiffs' insurance premiums (set by the insurers)); *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496 (6th Cir. 2010) (financers with no statutory duty to prevent mass abandonment of homes in foreclosure); *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009) (cold medicine manufacturers with no statutory duty to monitor or halt suspicious sales); *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3d Cir. 2002) (gun manufacturers with no statutory duty to prevent illegal gun sales).

[8]    The single unpublished Connecticut state trial court opinion cited by Distributors (*City of New Haven v. Purdue Pharma, L.P.*, No. X07HHDCV176086134S, 2019 WL 423990 (Conn. Super. Ct. Jan. 8, 2019) (cited in Mem. at 8) did not include RICO or civil conspiracy claims and is plainly is too slim a reed to meet the high standard of "substantial ground" for difference of opinion on a question of law.  If anything, the court in that case came to a different conclusion on the application of Connecticut law to the alleged facts in that case.

2.    **There Is No Substantial Ground for Difference of Opinion on Whether Plaintiff's Claims Meet the RICO "Business or Property" Injury Requirement**

Distributors also fail to show any "substantial ground for difference of opinion" on the RICO injury issue.  Mem. at 13-16.  Instead, they merely rehash arguments now considered and rejected by this Court on multiple occasions.  Repeating arguments the Court already has addressed in prior orders is an improper use of the interlocutory appeal process.  *See Elliott*, 845 F. Supp. 2d at 868.  Regardless, the Court's application of settled Sixth Circuit law is not subject to any reasonable dispute.

***First***, Distributors rely on *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556 (6th Cir. 2013), for the proposition that RICO does not apply when pecuniary harm arises from personal injuries.  Mem. at 13.  As the Court explained, *Jackson* and other similar cases cited by Distributors involve economic "losses aris[ing] directly out of a personal injury when the alleged RICO injury merely acts as an alternate theory for recovering damages otherwise available in a tort claim for personal injury and is asserted by the plaintiff him- or herself."  ECF No. 1203 at 14.  Unlike in *Jackson*, most, if not all, of the County's asserted injuries do not arise directly out of personal injuries, as this Court found.  ECF No. 1203 at 17 ("[U]nder no reading of *Jackson* can it be maintained that ***all*** of Plaintiff['s] asserted injuries arise directly out of a personal injury, and it is more likely, in this Court's opinion, that most do not.") (emphasis in original).  Indeed, the County is incapable of suffering personal injuries.  The County alleges more than 13 categories of loss, each caused directly by the OSCE's pattern of racketeering that fostered and sustained the opioid epidemic, including an illegal market.  The County's losses are its and its alone and include, among other things, losses caused by diminished property values in neighborhoods where the opioid epidemic has taken root; costs associated with extensive cleanup of public parks, spaces, and facilities of needles and other debris and detritus of opioid addiction; costs associated with

- 13 -

efforts to stop the flow of opioids into local communities; and lost tax revenue due to the decreased efficiency and size of the working population in Plaintiff's community.  SAC, ¶847.

As with the proximate cause issue above, Distributors only argue that reasonable minds could disagree with the Court's **application** of *Jackson* here, arguing "it is contrary to Sixth Circuit authority holding that it is the 'nature of the **injury**' that determines whether *Jackson* applies, not the identity of the parties."  Mem. at 13-14 (citing *Brown v. Ajax Paving Indus., Inc.*, 752 F.3d 656, 658 (6th Cir. 2014)).  But disputes over application of established law to factual allegations in a specific case are not a basis for interlocutory appeal.  And, again, Distributors ignore Plaintiff's allegations and misstate *Brown*'s holding.

In *Brown*, the Sixth Circuit merely rejected the argument that *Jackson* applies only to disputes between employer and employees:

> [RICO's] applicability turns on the nature of the **injury** – that the plaintiff was injured in his business or property.  It does not turn on the nature of the **defendant**. We do not see how the same harm, loss of expected workers' compensation benefits, could count as an injury to business or property against some defendants but not against other defendants.

*Brown*, 752 F.3d at 657-58 (emphasis in original).  Thus, *Brown* is just another distinguishable case involving economic losses arising directly from a personal injury.  ECF No. 1203 at 14-15. By contrast, as noted above, this Court already has determined that most, if not all, of Plaintiff's damages do not derive from personal injuries and thus do not implicate *Jackson*.  Distributors conceded the same when they sought interlocutory appeal in *Cleveland Bakers* and argued that the *Cleveland Bakers* plaintiffs' injuries were different in kind from "local government plaintiffs" because they did not include government expenditures for law enforcement and other expenses. ECF No. 3257-1 at 17 n.9.  Thus, whether some damages do fall into an area of prohibited recovery is not an appropriate issue for interlocutory appeal and should be determined based on a full record, as this Court noted denying defendants' motion to dismiss *West Boca*'s RICO claims.  "[I]n the

- 14 -

municipality case, the Tribe cases, and the third-party payor case, the Court concluded it would not (***at the motion to dismiss stage***) draw distinctions between the various alleged categories of injuries.  Such distinctions regarding damages are better drawn after discovery has fleshed out the factual record."  ECF No. 3253 at 23-24 (emphasis in original).

**Second**, Distributors' citations to *Welborn v. Bank of N.Y. Mellon Corp*., 557 F. App'x 383, 387 (5th Cir. 2014) (*per curiam*), and *Canyon Cty. v. Syngenta Seeds, Inc*., 519 F.3d 969, 979 (9th Cir. 2008), for the proposition that "a local government may not recover under RICO for governmental expenses undertaken in its governmental capacity," Mem. at 14, do not justify certification for interlocutory appeal.  Distributors' reliance on cases from other circuits cannot create a "substantial ground for a difference of opinion" because the district court and a Sixth Circuit panel are bound by the in-circuit authority.  *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013).  In any event, Distributors misread the out-of-circuit authority while ignoring both Plaintiff's alleged injuries and the Court's ruling.

The Sixth Circuit has long held that a county has RICO standing for alleged overcharges for services even if those damages were passed on to consumers.  *Cty. of Oakland v. City of Detroit*, 866 F.2d 839, 847-51 (6th Cir. 1989).  In *Welborn*, the Fifth Circuit held only that a government entity could not sue under RICO because the injury at issue was not "commercial" in that it was not "***created to serve a revenue-generating function*** for the states."   557 F. App'x at 387.  Accordingly, even if the Sixth Circuit followed the Fifth Circuit's reasoning, Plaintiff would have RICO standing to sue for injuries to its revenue-generating functions even if those injuries are not competitive or commercial injuries.  Multiple circuits have recognized this point.  *See City of New York v. Smokes-Sprites.com, Inc.*, 541 F.3d 425, 445 (2d Cir. 2008), *rev'd on other grounds*, *Hemi Grp.*, 559 U.S. 1; *Ill. Dep't of Revenue v. Phillips*, 771 F.2d 312, 314-16 (7th Cir. 1985).  Here,

- 15 -

Plaintiff's damages include such direct injuries to revenue-generating functions resulting in lost revenue and reduced tax income. *See* SAC, ¶¶842, 844-847.

Likewise, while neither the Sixth Circuit nor the Supreme Court has "adopted the holding in *Canyon County*," ECF No. 1203 at 19, the Ninth Circuit's decision would fail to bar Plaintiff's claims even if fully adopted by the Sixth Circuit.  Indeed, *Canyon Cty.* aligns with Sixth Circuit precedent: governments suffer harm to "business or property" when they are deprived of money in the course of a commercial transaction.  *Canyon Cty.*, 519 F.3d at 976 (citing *Cty. of Oakland*, 866 F.2d at 847).  Such losses are not limited to overcharges; instead, the question is simply whether the County "pa[id] . . . money wrongfully induced."  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979); *see also Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 264 (1972).  There is no dispute that the Court followed controlling authority in denying Distributors' motion to dismiss – Distributors wrongfully induced Plaintiff's marketplace purchase of items such as naloxone necessary to address Defendants' conduct.  SAC, ¶¶847.  Accordingly, the Court was correct to conclude that even if some costs based on Plaintiff's capacity as a sovereign would be barred under *Canyon Cty.* – but were permitted "under the broadest reading of Sixth Circuit precedent . . . to the extent [Plaintiff] can prove the asserted costs go beyond the ordinary cost of providing those services and are attributable to the injurious conduct of Defendants" – "at least some of their claimed injuries are recoverable under RICO due to Plaintiff['s] participation in the marketplace." ECF No. 1203 at 20 (cited in Order at 28).

At bottom, Distributors' entire "substantial ground" arguments boil down to their disagreement with this Court's application of well settled law on RICO causation and injury to the facts of this case.  They therefore fail to establish that there is a substantial difference of opinion on whether Plaintiff has alleged sufficient directness for the RICO proximate cause requirement or that Plaintiff's claims satisfy the RICO business or property requirement.

- 16 -

3.    **There Is No Basis for Reasonable Disagreement Regarding Whether the MPLA Implicates Plaintiff's State Law Claims**

a.    **There Is No Substantial Ground for Difference of Opinion with the Court's Conclusion that the Claims Against Distributors Do Not Seek to Hold Them Liable as "Sellers" of Prescription Opioids Within the Meaning of the MPLA**

The MPLA precludes tort liability for "[p]roduct liability action[s]," defined as actions predicated on the "manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling" of drug products.  Mich. Comp. Laws ("MCL") §600.2945(h)-(i); *see also* MCL §600.2946(5).  This Court sensibly determined that Plaintiff's claims arising from, in contrast, Defendants' failure to identify suspicious opioid orders, investigate such orders, or report such orders to the DEA did not unambiguously qualify as "product liability actions."  Order at 16 ("Unlike the fraudulent marketing claims, the anti-diversion claims do not fall squarely within the definition of 'production of a product.'").  Distributors do not offer a single compelling reason why a reasonable jurist would disagree.

As Distributors recognize, "[t]he [Michigan] Legislature is ***presumed to have intended the meaning it plainly expressed***."  *McElhaney ex rel. McElhaney v. Harper-Hutzel Hosp.*, 711 N.W.2d 795, 798 (Mich. Ct. App. 2006).  If the legislature had intended that the "production of a product" should include compliance with regulatory duties of the type implicated in Plaintiff's diversion claims, it would have said so.  It has not.  Moreover, "[i]f the statutory language is clear and unambiguous . . . ***further judicial construction is not permitted***."  *Id.*; *see also Seligman & Assocs., Inc. v. Mich. Emp't Sec. Comm'n*, 417 N.W.2d 480, 483 (Mich. Ct. App. 1987). ("According to the maxim of statutory construction, *expresio unius est exclusio alterius*, the express mention in a statute of one thing implies exclusion of other similar things.") (citing *In re Vellenga Estate*, 327 N.W.2d 340 (Mich. Ct. App. 1982)).  Distributors do not deny that the

- 17 -

language of MCL §600.2945(h)-(i) is unambiguous. Accordingly, Distributors' proposed statutory exegesis is not a valid basis for a difference of opinion given the clear language of the statute. Even assuming, *arguendo*, there was some doubt about whether Defendants' contravention of their legal duties might qualify as a "products liability action," it would be unreasonable for a jurist to construe such ambiguity in favor of immunity. *See, e.g.*, *Miller v. Mylan Inc.*, 741 F.3d 674, 677-78 (6th Cir. 2014) ("[a]ccepted canons of statutory construction require this ambiguity to work against immunity").

Distributors nevertheless argue that a reasonable jurist could find Plaintiff's injury arose "not as a result of Distributors' purported regulatory failings, but . . . as a result of Distributors' sale of opioid medicines to County pharmacies." Mem. at 21-22. Distributors rely on *Attorney Gen. v. Merck Sharp & Dohme Corp.*, 807 N.W.2d 343, 348 (Mich. Ct. App. 2011), though *Merck* implicitly undermines Distributors' position. There, "plaintiffs allege[d] that their loss was caused by [or resulted from] marketing and advertising of Vioxx." *Id.* Thus, the court reasoned plaintiffs' allegations fell within the ambit of "production of a product" such that plaintiffs' claims were properly characterized as a product liability action. *Id.*; *see also* MCL §600.2945(i) ("Production means . . . marketing [and] advertising."). Tellingly, *Merck* did ***not*** construe plaintiffs' injury as arising from the sale of a product even though the alleged injury in *Merck* would not have occurred "but for" the sale of Vioxx. Rather, the court limited its analysis to the ***alleged proximate cause*** of plaintiffs' injury. *Merck*, 807 N.W. 2d at 350 ("[T]he substance of plaintiffs' claims concerns the safety and efficacy of Merck's drug and Merck's representations in that regard."). In other words, although the causal chain ultimately resulting in Plaintiff's injury may include the selling of opioids, this fact alone does not militate a finding that Defendants' malfeasance necessarily implicates the "production of a product." A reasonable jurist would not conclude otherwise (again, even *Merck* did not go this far).

- 18 -

Plaintiff reiterates that Defendants' repeated failures to investigate, report, or identify suspicious orders does not fall within the ambit of "selling" drugs.  Indeed, the fact that the improperly diverted opioids were sold is irrelevant: hypothetically, Defendants could have distributed opioids at no charge, and this fact alone would not obviate Defendants' legal duties to prevent diversion.  Thus, the Court sensibly determined that the substance of Plaintiff's opioid diversion claims "are based on Defendants' alleged conduct in ***disregarding their legal duties*** to prevent diversion, which created an oversupply of opioids that fueled an illicit secondary market and caused Monroe's alleged injuries."  Order at 16 (citing SAC, ¶14) (emphasis in original).  That Distributors disagree with the Court's application of well settled law to the facts of this case does not meet the test for a substantial ground for difference of opinion.  The law in this Circuit is overwhelmingly clear that a court's application of the law to the facts of a case does not amount to a substantial ground for difference of opinion.  *See, e.g.*, *Gieringer*, 2010 WL 2572054, at *3 (refusing to apply §1292(b) where "[d]efendant is challenging this [c]ourt's application of law to the facts because of its own disagreement with the outcome, rather than presenting a situation where there are substantial disputes as to the applicable law").

> **b.  Reasonable Jurists Would Not Disagree with the Court's Conclusion that Plaintiff's Claims Are Not All Product Liability Claims**

Distributors next argue that the Court should certify an interlocutory appeal as to whether Plaintiff's claims are or are not product liability claims for which Defendants have immunity under the MPLA.  Mem. at 22-24.  Distributors argue that "reasonable jurists" would make decisions that conflict with rulings by this Court on two separate questions: whether Plaintiff is entitled to plead claims that seek equitable and injunctive relief and whether a public nuisance claim constitutes a product liability claim despite the fact that such claims are, *ipso facto*, claims regarding interference with a public right and not for a "death of a person or for injury to a person,"

- 19 -

which could lend Defendants immunity.  MCL §600.2945(h).  These arguments fail for two separate reasons: *first*, these arguments were not made on the motions to dismiss; and *second*, the Court's resolution of these two issues was a correct interpretation of well settled Michigan law.

*First*, as the Court noted when addressing these issues in its Order, neither of these arguments was addressed by Distributors in their motion to dismiss.  Distributors now improperly seek to address them after the fact.  With regard to Distributors' first argument, regarding whether Plaintiff may seek "injunctive and non-monetary relief" on its common-law claims for negligence, fraud, unjust enrichment, and civil conspiracy, the Court noted that the "parties' briefs do not address whether [MCL] §600.2946(5) immunity applies to these non-monetary forms of relief." Order at 14.  The Court applied the same line of reasoning to the public nuisance argument, stating, in the very next paragraph: "Along similar lines, the Manufacturers offer no analysis or authority to show Monroe's public nuisance claims are brought for the death of a person or for injury to a person or damage to property." *Id.*[9]  That Distributors are now attempting to seek appeal on an issue they did not raise in their motion to dismiss should not be permitted.  *See Arab Am. Civil Rights League*, 2019 WL 5684371, at *3 (finding an issue that defendants failed to raise in their motion to dismiss was waived and therefore not suitable for interlocutory appeal).

*Second*, Distributors are simply wrong on the law.  Distributors first argue that the relief of abatement is precluded by the MPLA.  Specifically, Distributors cite a single case on the issue, *Duronio*, and argue that abatement constitutes relief to recover for "monetary loss."  *Duronio v. Merck & Co.*, No. 267003, 2006 WL 1628516, at *4-*5 (Mich. Ct. App. June 13, 2006).  But *Duronio* did not consider abatement.  Moreover, abatement is *not* recovery for "monetary loss"

---

[9]  The Court refers to the Manufacturers here; but, if anything, the Distributors, who bring the instant Motion, contributed *less*, not more, to the record on these issues than did the Manufacturers. These statements from the Court are therefore controlling of this Motion as well.

but is instead "a forward-looking equitable remedy intended to compensate the plaintiff for the costs of **rectifying** the nuisance going forward."  ECF No. 3285 at 14-15 n.21.  As this Court has stated, "[t]he goal [of abatement] is not to compensate the harmed party for harms already caused by the nuisance.  This would be an award of damages."  ECF No. 2519 at 2.

Moreover, if Distributors' argument were accepted, then the exception for monetary loss would swallow the rule.  Distributors' argument is, essentially, that if the Court awarded Plaintiff the relief of abatement, it would cost Defendants money and would do so because it would cost Plaintiff money to take the same action.  But that is the case for any relief ever granted by any court.  Thus, if Distributors' argument holds, then any form of relief is barred by the monetary loss exception.  The Court therefore correctly found in favor of Plaintiff on this issue.[10]

Distributors' second argument, regarding the surviving public nuisance cause of action, is similarly wrong on the law.  Distributors argue that the public nuisance claim is "brought for the death of a person or for injury to a person or damage to property" because it arose out of the "unreasonable interference with a public right," *i.e.*, public health.  Mem. at 23.  But to get there, Distributors not only ignore allegations that the public nuisance resulted from interference not just with public health, but also public "safety, peace, comfort and convenience" of the County.  SAC, ¶861.  Distributors also turn the definition of "public health" on its head, calling it (without citation) "the right to be free from bodily injury and death."  Mem. at 23.  But public health is not an individual right – it is, as the name suggests, a **public** right.  Public health practitioners, such as the Centers for Disease Control and Prevention, make it clear that the focus of public health is not on damage to individuals' health or property.  It is instead "the science and art of preventing

---

[10]  Distributors frame this question as regarding all forms of "equitable and injunctive relief," (Mem. at 22), but discuss only one of the forms of relief that survived the Court's Order for Plaintiff's common law claims: abatement.

disease, prolonging life, and promoting health through the organized efforts and informed choices of society, organizations, public and private communities, and individuals."[11]  Thus, as this Court implicitly recognized, Defendants' nuisance affects matters that go far beyond freedom from bodily injury and death.  Distributors cite a single, out-of-circuit case regarding RICO standing to argue that a public nuisance action is barred by Michigan's idiosyncratic MPLA; but nothing in that case demands, or even lends support to, Distributors' argument.[12]  *See* Mem. at 23-24 (citing *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239 (2d Cir. 1999), *as amended* (Aug. 18, 1999)).

### C.    Certification Will Not Materially Advance the Litigation

Immediate review of the Court's decision would not materially advance the litigation.  To meet this final factor under §1292(b), certification must "'appreciably shorten the time, effort, and expense exhausted between the filing of a lawsuit and its termination.'"  *S.E.C. v. Geswein*, 2 F. Supp. 3d 1074, 1088 (N.D. Ohio 2014) (quoting *Trimble v. Bobby*, No. 5:10-CV-00149, 2011 WL 1982919, at *2 (N.D. Ohio May 20, 2011)).  Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the litigation, in practice the two questions are closely connected.  *Arab Am. Civil Rights League*, 2019 WL 5684371, at *3.  Thus, Plaintiff incorporates §IV.A. herein.  Additionally, certification will not materially advance the litigation because there is no guarantee an interlocutory appeal will be accepted as Distributors would still have the burden to persuade the Sixth Circuit that exceptional circumstances justify a departure from the practice of postponing

---

[11]  *See CDC Public Health 101 Series - Introduction to Public Health*, CDC, https://www.cdc.gov/publichealth101/public-health.html (last visited June 12, 2020).

[12]  To the extent Distributors intend to incorporate by reference a vague argument on the second page of their brief in support of the motion to dismiss that they are absolutely immune to all of Plaintiff's common law claims (Mem. at 24 n.18), Plaintiff incorporates its response to that motion.

appellate review until after the entry of final judgment.  Further, even if the Sixth Circuit did accept review, a delay in issuing a decision is highly likely.  This is particularly so when, as Distributors state, the Court could bifurcate the RICO and MPLA issues, certifying the RICO issues to the Sixth Circuit and the MPLA issues to the Michigan Supreme Court.  Mem. at 3 n.3.  And if Distributors pursued the issues up to the U.S. Supreme Court, the process would take even longer.  *See, e.g.*, Case Management Order No. 29 at 2-3, *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC (D. Ariz. Dec. 21, 2017), ECF No. 9415 (declining to certify a preemption order for interlocutory appeal in multidistrict litigation where there was "little prospect that certification of this issue would result in an appellate decision in time to aid in termination of this litigation" given the delay likely from the "docket-heavy" Ninth Circuit and potential for subsequent appeal to the Supreme Court); *see also Facebook*, 986 F. Supp. 2d at 534 ("Allowing interlocutory review on an undeveloped record at the motion to dismiss stage on a non-threshold issue of a complex multidistrict class action would serve only to impede institutional efficiency by prolong[ing] judicial proceedings, add[ing] delay and expense to litigants, burden[ing] appellate courts, and present[ing] issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions.") (alteration in original).

Distributors contend that "[e]ven if this Court's order were affirmed in part, immediate appellate review would streamline the case and clarify the nature of the remaining claims."  Mem. at 25.  They state that "even if the Sixth Circuit's ruling were to result only in the dismissal of the County's RICO claim," certain evidence about a RICO enterprise and RICO predicate acts would be unnecessary.  Mem. at 25.  However, as this Court has found, "if a number of claims or theories providing additional grounds for recovery will remain after dismissal," the outcome will not be materially affected.  ECF No. 3289 at 2.  Because Plaintiff's remaining claims rely on the same facts as the RICO claims, any purported savings of time or expense in discovery would be mooted.

*See Facebook*, 986 F. Supp. 2d at 532 ("[C]ertification here may not dispose of all issues, which would not streamline discovery.  Plaintiffs' Item 303, material misrepresentation and Rule 408 claims are all predicated upon the same underlying factual events, and discovery will significantly overlap.  If any of the claims are not dismissed on appeal, the litigation will continue to advance in substantially the same manner as if the interlocutory appeal had never occurred.").

Distributors contend that certification under §1292(b) is "favored" in the MDL context. Mem. at 25.  Whether this is generally so, in this particular MDL, for the reasons set forth herein, certification here would not materially advance the litigation.  *See, e.g.*, *In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prods. Liab. Litig.*, No. 1:17-md-2775, 2019 WL 6345746, at *4 n.9 (D. Md. Nov. 26, 2019) ("Regardless of the context [of an MDL proceeding], the requirements for interlocutory appeal must be met.  Those requirements, namely that there be a controlling question of law whose resolution would materially advance the ultimate termination of litigation, are not met here.").  Moreover, Distributors have offered no evidence that interlocutory appeals are granted in the MDL context any more than they are in the non-MDL context.  *See, e.g.*, Melissa J. Whitney, *Bellwether Trials in MDL Proceedings A Guide for Transferee Judges*, 2019 WL 2305447 (Fed. Judicial Ctr. 2019) ("While the ability to appeal final decisions in individual bellwether cases is well-defined, circuits differ in their receptiveness to truly ***interlocutory*** appeals in the MDL setting.") (emphasis in original).  Finally, any appellate ruling on the Michigan-specific MPLA issues would do little to advance the nationwide litigation.

- 24 -

## V.     CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court deny Distributors'

Motion.

DATED:  June 15, 2020                          Respectfully submitted,

                                               ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                               AELISH M. BAIG
                                               MATTHEW S. MELAMED
                                               HADIYA K. DESHMUKH


                                               _____
                                                         s/ Aelish M. Baig
                                                      AELISH M. BAIG

                                               Post Montgomery Center
                                               One Montgomery Street, Suite 1800
                                               San Francisco, CA  94104
                                               Telephone:  415/288-4545
                                               415/288-4534 (fax)
                                               aelishb@rgrdlaw.com
                                               mmelamed@rgrdlaw.com
                                               hdeshmukh@rgrdlaw.com

                                               ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                               PAUL J. GELLER
                                               MARK J. DEARMAN
                                               DOROTHY P. ANTULLIS
                                               120 East Palmetto Park Road, Suite 500
                                               Boca Raton, FL  33432
                                               Telephone:  561/750-3000
                                               561/750-3364 (fax)
                                               pgeller@rgrdlaw.com
                                               mdearman@rgrdlaw.com
                                               dantullis@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THOMAS E. EGLER
CARISSA J. DOLAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tome@rgrdlaw.com
cdolan@rgrdlaw.com

THE MILLER LAW FIRM, P.C.
E. POWELL MILLER (P39487)
SHARON S. ALMONRODE (P33938)
DEVON P. ALLARD (P71712)
DENNIS A. LIENHARDT (P81118)
950 West University Drive, Suite 300
Rochester, MI  48307
Telephone:  248/841-2200
248/652-2852 (fax)
epm@millerlawpc.com
ssa@millerlawpc.com
dpa@millerlawpc.com
dal@millerlawpc.com

Attorneys for Plaintiff

SPANGENBERG SHIBLEY & LIBER LLP
PETER H. WEINBERGER (0022076)
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
Telephone:  216/696-3232
216/696-3924 (fax)
pweinberger@spanglaw.com

Plaintiffs' Co-Liaison Counsel

MONROE COUNTY CORPORATION
COUNSEL

LENNARD, GRAHAM & GOLDSMITH,
P.L.C.
PHILIP D. GOLDSMITH (P-37650)
W. THOMAS GRAHAM (P-26548)
222 Washington Street
Monroe, MI  48161
Telephone:  734/242-9500
734/242-9509 (fax)
pgoldsmith@lggplc.com

Counsel for Plaintiff County of Monroe

- 27 -

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of June, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

_s/ Aelish M. Baig_
Aelish M. Baig