**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*The County of Trumbull, Ohio v. Purdue Pharma, L.P., et al*,<br>Case No. 1:18-op-45079<br><br>*The County of Lake, Ohio v. Purdue Pharma, L.P., et al*,<br>Case No. 1:18-op-45032 | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**MEMORANDUM IN SUPPORT OF RITE AID CORPORATION'S TRACK 3
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Rite Aid Corporation ("RAC") respectfully moves this Court to dismiss Plaintiffs'[1] claims against RAC for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2).

**PRELIMINARY STATEMENT**

RAC is a holding company. It has no employees. It does not dispense or distribute prescription opioids (or any other pharmaceutical), in these counties or anywhere else. Plaintiffs' claims do not arise from RAC's activities in Ohio, and RAC does not continuously and systematically conduct business in Ohio.

There is no "holding company" exception to these principles of personal jurisdiction. The Supreme Court has rejected Plaintiffs' theory that if RAC caused them to suffer injuries in Ohio, then this Court has jurisdiction. This Court lacks personal jurisdiction over RAC.

---

[1] The Plaintiffs are Lake County and Trumbull County, collectively referred to as "Plaintiffs." Because Lake County and Trumbull County's Amended Complaints are substantially identical, this Motion cites only to the *Lake County* Amended Complaint for ease of reference.

**FACTS AND PROCEDURAL HISTORY**

In March 2019, Plaintiffs filed amended short-form complaints that first included dispensing and distribution allegations against two Rite Aid entities: Rite Aid of Maryland, Inc. d/b/a Mid-Atlantic Customer Support Center and RAC.  No Rite Aid entity was named in Plaintiffs' original complaints.  This Court recently granted Track 3 plaintiffs leave to amend to add three new Rite Aid entities: Rite Aid Hdqtrs. Corp.; Rite Aid of Ohio, Inc.; Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center.[2]  This motion pertains only to RAC, leaving four Rite Aid defendants in Track 3, including Rite Aid Hdqtrs. Corp., the entity whose employees actually set corporate policies and procedure.[3]

RAC is a holding company.  RAC has a board, which—like the board of every other public corporation—engages in general corporate oversight and governance.  RAC does not dispense or distribute opioids.  It is not identified in the ARCOS data related to dispensing (having received opioids) or distribution (having sent opioids).

The allegations against RAC are sparse and conclusory.  Plaintiffs generally allege that "controlled substances are distributed and dispensed according to practices and procedures established by Rite Aid Corporation and Rite Aid Headquarters Corporation."  Amended Short-Form Compliant, ¶ 44.  Plaintiffs also allege that "Rite Aid of Ohio, Inc. was in the business of holding and operating retail pharmacies in Ohio, including in Lake County, on behalf of its parent company Rite Aid Corporation" and that "Rite Aid Hdqtrs. Corp. and Defendant Rite Aid

---

[2] The March 2019 amended short-form complaints will be referred as the "short-form complaint" and the June 2020 amended complaint will be referred to as the "amended short-form complaint."

[3] In the event that RAC's motion to dismiss for a lack of personal jurisdiction is denied, RAC joins the 12(b)(6) motion to dismiss being filed today on behalf of the Pharmacy Defendants.

Corporation, by and through their various DEA registered subsidiaries and affiliated entities, conduct business as licensed wholesale distributors and pharmacy operators." *Id.* ¶¶ 41, 44.

Contrary to the Complaints' allegations, RAC does not establish nationwide policies and procedures related to dispensing controlled substances or otherwise. *See* Declaration of Ron. S. Chima ("Chima Decl.")[4] ¶¶ 4, 7. It does not direct and implement policies and procedures for dispensing controlled substances by any of its subsidiaries, including Rite Aid of Ohio, Inc. *Id.* ¶¶ 4, 6, 7.

RAC has no operations other than those related to its status as a holding company. *Id.* ¶ 4. RAC has no offices, facilities, assets, income, employees, or operations in Ohio. *Id.* ¶ 4. RAC is organized under the laws of Delaware and has its principal place of business in Pennsylvania. *Id.* ¶ 3; *see also* Amended Short-Form Complaint ¶ 41. RAC is not qualified as a foreign corporation under the laws of Ohio, does not have a registered agent for service of process there, and is not regulated by any Ohio state agency. *Id.* ¶ 5. Although RAC has subsidiaries, it is a distinct legal entity from those subsidiaries, and all of RAC's subsidiaries that engaged in dispensing and distribution activities in Ohio would remain as defendants in this case even if this motion were to be granted. *Id.* ¶ 6.

RAC does not have any direct involvement in directing, managing, or supervising the operations or the employees of any of its subsidiary companies, including its subsidiaries that dispensed or distributed prescription opioids. *Id.* ¶ 6. Corporate policies and procedures are set by employees of Rite Aid Hdqtrs. Corp. *Id.* ¶ 7.

Track 3 is not first instance in the MDL that this Court has had the question of personal jurisdiction over RAC put before it. In Track 1b, RAC moved to dismiss for lack of jurisdiction

---

[4] The Chima declaration was originally filed in the motion to dismiss filed in Track 1b.

3

after it was added in the amendments by interlineation to the third amended complaint. RAC and the Track 1b plaintiffs were in the process of litigating the issue when the Sixth Circuit's mandamus decision struck the amendments that added RAC. The Track 1b plaintiffs contended that proxy statements by RAC's corporate board about oversight on opioids gave rise to personal jurisdiction and sought discovery. RAC had not submitted briefing to this Court on whether jurisdictional discovery was warranted. Because, as detailed below, out-of-state Board oversight and any out-of-state creation of policies and procedures could not give rise to jurisdiction in Ohio, this Court should grant this motion without any discovery.

## LEGAL STANDARD

Plaintiffs have the burden of establishing that personal jurisdiction exists over a non-resident defendant. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). In response to a motion to dismiss, a plaintiff "must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

## ANALYSIS

This Court can exercise personal jurisdiction over RAC only if Plaintiffs can satisfy Ohio's long-arm statute and if the exercise of personal jurisdiction would not deny RAC due process. *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 471 (6th Cir. 2012). Plaintiffs can satisfy neither requirement.

### A. RAC is not amenable to service of process under Ohio's long-arm statute.

Ohio's long-arm statute "does not extend to the constitutional limits of the Due Process Clause." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). The statute permits the exercise of personal jurisdiction over persons who commit certain, specified acts in Ohio, such as "[t]ransacting any business in [Ohio]," "[c]ontracting to supply services or goods in [Ohio]," or

"[c]ausing tortious injury by an act or omission in [Ohio]." OHIO REV. CODE § 2307.382(A). Plaintiffs cannot satisfy any of these predicates for their claims against RAC.

Plaintiffs appear to allege that the long-arm statute is satisfied based on their allegations that RAC established policies and procedures for subsidiaries (specifically, Rite Aid of Ohio, Inc.) operating in Lake and Trumball Counties. *See* Amended Short-Form Complaint, ¶ 44.

This argument fails for two reasons. First, it is factually false. RAC is a holding company, not an operating company. Chima Decl. ¶ 4. It did not establish policies and procedures that were implemented by its subsidiaries in Ohio or elsewhere. *Id.* ¶ 7.[5] As a holding company, RAC has no business operations at all such as offices, facilities, assets, or employees. *Id.* ¶ 4.

Second, it is legally irrelevant. Even if RAC's Board (sitting in Pennsylvania) had established policies and procedures followed by Rite Aid of Ohio (and to be clear, it did not), RAC would still be outside the reach of the of the Ohio long-arm statute. Actions taken by RAC in Pennsylvania would not constitute "[t]ransacting any business in [Ohio]," "[c]ontracting to supply services or goods in [Ohio]," or engaging in any "act or omission in [Ohio]." OHIO REV. CODE § 2307.382(A). Under the Ohio long-arm statue, "[c]ausing tortious injury in [Ohio] by an act or omission outside [Ohio]" could allow the exercise of personal jurisdiction over RAC only if RAC "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Ohio]." *Id.* § 2307.382(A)(4). Even if RAC set policies from Pennsylvania (which it did not), the Ohio long-arm statute would not permit this Court to exercise jurisdiction over this out-of-state holding company.

---

[5] Although some Rite Aid Hdqtrs Corp. documents were mislabeled as RAC documents, because RAC has no employees, there is no question that these policies were truly prepared by Rite Aid Hdqtrs. employees.

5

Accordingly, Plaintiffs cannot establish that jurisdiction over RAC is proper under Ohio's long-arm statute.

**B.      The Due Process Clause prohibits the exercise of jurisdiction over RAC.**

Even if the Ohio long-arm statute would permit the exercise of personal jurisdiction over RAC, the Due Process Clause prohibits it.  The Due Process Clause permits two types of personal jurisdiction: (1) general jurisdiction, where the cause of action does not arise from the defendant's contacts with the forum state; and (2) specific jurisdiction, where the cause of action arises from the defendant's contacts with the forum state.  *Conn*, 667 F.3d at 712–13.  This Court cannot exercise either type of jurisdiction over RAC.

**1.      This Court cannot exercise general jurisdiction over RAC.**

Plaintiffs do not allege that general jurisdiction over RAC would be proper.  Nor could they.  RAC is a Delaware corporation with its principal place of business in Pennsylvania, which Plaintiffs admit.  Chima Decl. ¶ 3; Amended Short-Form Complaint, ¶ 41.  RAC has no offices, facilities, assets, income, employees, or operations in Ohio.  Chima Decl. ¶ 4.  There is no ground to subject RAC to general jurisdiction in Ohio.

Corporations are subject to general jurisdiction only where "their affiliations are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).  A corporate defendant is usually only at home in its state of incorporation and its principal place of business.  *Id.*  Ohio is neither RAC's state of incorporation nor its principal place of business, and thus general jurisdiction does not exist.  *See id.* at 1559 (defendant with over 2,000 miles of railroad track and more than 2,000 employees in the state was not subject to general jurisdiction); *Conn*, 667 F.3d at 718–19.  There is no

allegation—much less evidence—that would permit this Court to exercise general jurisdiction over RAC.

### 2. This Court cannot exercise specific jurisdiction over RAC.

Specific jurisdiction exists where the cause of action arises out of the defendant's contacts with the forum state. *Conn*, 667 F.3d at 712–13. The Due Process Clause permits the exercise of specific jurisdiction only when: (1) the defendant has purposefully availed itself of the privilege of acting in the forum; (2) the cause of action arises of out the defendant's activities in the forum; and (3) there is a substantial enough connection with the forum to make jurisdiction reasonable. *Id.* at 713; *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002).

Plaintiffs allege that "Rite Aid of Ohio, Inc. was in the business of holding and operating retail pharmacies in Ohio, including in Lake County, on behalf of its parent company Rite Aid Corporation." Amended Short-Form Complaint, ¶44. Plaintiffs also allege that: "controlled substances are distributed and dispensed according to practices and procedures established by Rite Aid Corporation and Rite Aid Headquarters Corporation." Amended Short-Form Complaint, ¶ 44. But these allegations are (1) incorrect on their face as to RAC and (2) ignore the fact that RAC is a separate and distinct company from its subsidiaries.

First, these allegations are incorrect. RAC is merely a holding company, and corporate policies and procedures are set by Rite Aid Hdqtrs. Corp. employees.[6] Chima Decl. ¶¶ 4, 6, 7.

Plaintiffs' claims do not arise out of RAC's activities within Ohio. RAC engages in only limited activities, relating to its status as a holding company. Chima Decl. ¶ 4. RAC did not avail itself of the privileges of acting in Ohio and cannot be said to have any connection at all to the

---

[6] Rite Aid Hdqtrs. Corp., which has also been named as a defendant in the Amended Short-Form Complaint, is the entity whose employees set policies and procedures. Chima Decl. ¶ 7.

state, where it has no property, assets, employees, income, or operations, and in which it conducts no business.  *Id.* ¶ 4; *see also Garlock v. Ohio Bell Tel. Co. Inc.*, No. 1:13CV02200, 2014 WL 2006781, at *3 (N.D. Ohio May 15, 2014) (finding no specific jurisdiction over AT&T Inc., a holding company, and noting that evidence offered by the plaintiff "shows that it was AT&T Inc.'s subsidiaries and affiliates that are conducting business in Ohio, not AT&T Inc. itself"); *Best v. AT&T Inc.*, No. 1:12-cv-564, 2014 WL 12571407, at *7 (S.D. Ohio Sept. 16, 2014).

Second, even if these allegations of creating and implementing nationwide policies for subsidiaries were correct, they would not create personal jurisdiction in Ohio.  Personal jurisdiction requires RAC to have acted **in Ohio**—out-of-state actions having an effect in Ohio are insufficient. The Sixth Circuit has held there was no personal jurisdiction over a parent company even where: (1) some managers had "global roles" with the parent and subsidiaries; (2) the financial statements of the parent company stated it provided a source of financing to its affiliates; (3) the parent company entered into a contract for services on behalf of itself and its subsidiaries; and (4) there was a common website and engagement in a common enterprise.  *Anwar*, 876 F.3d at 849-50. Plaintiffs have not even pleaded facts that rise to the level of the insufficient ones in *Anwar*.

Plaintiffs cannot obtain jurisdiction over RAC by arguing that a wholly-owned subsidiary operates in Ohio.  Plaintiffs have not alleged that RAC was the alter ego of any of its subsidiaries, which would require the extraordinary showing that "the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction."  *Estate of Thomas v. Toyota Motor Corp.*, 545 F.3d 357, 362 (6th Cir. 2008).  Alter ego is the only means by which a parent could be subject to personal jurisdiction based on its subsidiary's contact.  *See id.* (adopting the alter ego theory of jurisdiction for parent-subsidiary relationships).

Here, Plaintiffs cannot overcome the general presumption that "[a] parent corporation generally is not liable for the acts of its subsidiary, even if its subsidiary is wholly owned." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007); *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05–CV–2205, 2006 WL 2225821, at *7 (N.D.Ohio Aug.2, 2006) ("Although several factors weigh in favor of recognizing an alter ego relationship between [the defendants], [the plaintiff] fails to provide sufficient facts to overcome the general presumption that one company operates independently from another."). Accordingly, Plaintiffs cannot establish that jurisdiction over RAC is proper under either the Ohio long-arm statute or the Due Process Clause.

### C. Jurisdictional Discovery Is Not Appropriate.

Because Plaintiffs have not pleaded that RAC conducts any activity in Ohio (or is the alter ego of any subsidiary), based on the pleadings there is no legal basis for allowing any jurisdictional discovery. In other cases in the MDL, such as Track 1b, other plaintiffs have attempted to argue that they are entitled to jurisdictional discovery as to RAC based on securities filings, such as proxy statements and reports by RAC's Board.[7] Plaintiffs here will likely make similar argument. But as a matter of law, these materials could not give rise to personal jurisdiction over RAC.

Not only do Plaintiffs misinterpret the significance of these documents, which reflect ordinary principles of corporate governance, but even under Plaintiffs' misinterpretation, the documents would be legally irrelevant. Out-of-state activities (including formulating policies, which Plaintiffs contend that RAC did), even if they cause in-state harm, cannot give rise to personal jurisdiction. Even assuming that RAC's Board was engaged in oversight of the

---

[7] In other cases, plaintiffs have also relied on documents that were mislabeled as "Rite Aid Corp." rather than "Rite Aid Hdqtrs Corp." None of these documents, even under plaintiffs' misinterpretation, demonstrates sufficient contacts between RAC and Ohio.

9

subsidiaries on the issue of opioids (or even set policies), such out-of-state oversight would not make RAC create contacts with Ohio that would give rise to personal jurisdiction.

The focus of the personal jurisdiction inquiry is "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court of California,* 137 S. Ct. 1773, 1779 (2017). "In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Id.*[8] The contacts must be those of the defendant: "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

Plaintiffs do not contend that there have been **any** contacts between RAC and Ohio. It is undisputed that "no part of [RAC]'s course of conduct occurred in [Ohio]." *Id.* at 288. RAC owns no real property or personal property located in Ohio. Chima Decl. ¶4. And RAC has no employees, so its employees could not have engaged in any conduct in Ohio that would give rise to jurisdiction. *Id.* Critically, nor do Plaintiffs allege or suggest that RAC's Board met in Ohio. Alleging that RAC's Board caused an effect in Ohio is insufficient for jurisdiction when it is undisputed that RAC took no action **in Ohio**. These facts end the jurisdictional inquiry and require that RAC's motion to dismiss be granted.

Plaintiffs' theory of the case does not provide a cognizable argument for personal jurisdiction over RAC in Ohio. To the extent that Plaintiffs might argue that the (out-of-state) actions of RAC's Board in allegedly adopting general policies related to opioid dispensing or allegedly monitoring opioid dispensing gives rise to specific personal jurisdiction because these

---

[8] Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, this Court can exercise jurisdiction over RAC only if RAC would be "subject to the jurisdiction of a court of general jurisdiction in [Ohio]." Fed. R. Civ. P. 4(k)(1)(A).

policies—as plaintiffs in other cases have alleged they have documents to that effect—caused harm to Plaintiffs in Ohio, that theory cannot be squared with Supreme Court precedent.[9]

The Supreme Court expressly and unequivocally rejected that theory of specific jurisdiction in *Walden v. Fiore*. There the plaintiffs contended that the defendant's out-of-state activities (a search and seizure in Atlanta) gave rise to personal jurisdiction over the defendants in Nevada because the harm occurred to a Nevada resident. 571 U.S. at 288.

The Supreme Court rejected the argument that jurisdiction turns on "where the plaintiff experienced a particular injury or effect." *Id.* at 290; *see also id.* ("[M]ere injury to a forum resident is not a sufficient connection to the forum."). Instead, personal jurisdiction concerns only the defendant's contacts with the forum. *Walden*, 571 U.S. at 290.

Because the defendants' "relevant conduct occurred entirely in Georgia," "the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 291. The same would be true in this case. Plaintiffs do not allege that any conduct by RAC occurred in Ohio, and even assuming that Plaintiffs have evidence that RAC's alleged out-of-state conduct (corporate governance activities such as monitoring and oversight) caused harm to them in Ohio, it would not create jurisdiction.

The Supreme Court recently reaffirmed these principles in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017), in which the California courts relied on the similarity of claims of residents and non-residents as a basis for exercising personal jurisdiction over the claims of non-residents. The Supreme Court rejected this theory, reiterating that specific personal jurisdiction requires that the specific claims at issue be based on contacts

---

[9] To be clear, the policies referenced in the reports proffered by those other plaintiffs were not adopted or written by RAC, but even if they had been, the out-of-state act of preparing policies for subsidiaries cannot give rise to personal jurisdiction in Ohio.

between the defendant and the forum state: "The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." 137 S. Ct. at 1781.

Plaintiffs would not be able to overcome these fundamental principles under their theory of the case. At best, Plaintiffs would seek jurisdictional discovery to attempt to prove that out-of-state activities of RAC caused the harm that they suffered in Ohio. Because such evidence, as a matter of law, could not give rise to personal jurisdiction, this Court should grant RAC's motion to dismiss, without allowing the Plaintiffs jurisdictional discovery as it would be irrelevant.

Courts routinely reject the suggestion of a "policies" exception to ordinary principles of personal jurisdiction. The Supreme Court discussed the relationship between parent and subsidiary in the context of direct CERCLA liability in *United States v. Bestfoods*, 524 U.S. 51 (1998), where it recognized that under "the normal relationship between parent and subsidiary" and "norms of corporate behavior," "[a]ctivities . . . such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures" are "consistent with the parent's investor status." *Id.* at 71-72.

If corporate governance and board oversight could give rise to jurisdiction in any state a subsidiary operated, then holding companies would be subject to specific personal jurisdiction in every state in the country in which a subsidiary operates because their boards of directors managed and oversaw their subsidiaries' policies and procedures. Even when a plaintiff alleges that its injuries were caused by an in-state corporate subsidiary following policies set by an out-of-state corporate parent, the subsidiary's actions in (*i.e.*, contact with) the forum state can give rise to personal jurisdiction over the parent only if plaintiff satisfy the stringent test to demonstrate that

12

the subsidiary is the alter ego of the parent. *See, e.g.*, *Epps v. Stewart Info. Services Corp.*, 327 F.3d 642, 648–49 (8th Cir. 2003) ("[P]ersonal jurisdiction can be based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego.").

Because Plaintiffs' theories of personal jurisdiction are legally meritless, this Court should grant RAC's motion to dismiss without any need for jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, RAC respectfully requests that the Court dismiss the claims against it with prejudice.


Date: June 16, 2020                                             Respectfully submitted,

*/s/ Kelly A. Moore*
Kelly A. Moore, Esq.
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001

John P. Lavelle, Jr., Esq.
John.lavelle@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
T: 215-963-5917
F: 215-963-5001

*Counsel for Rite Aid Corporation*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)**

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that the foregoing memorandum complies with the page limitations of LR 7.1(f) (for complex cases) and those set by the Court.

/s/ Kelly A. Moore
Kelly A. Moore