UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: "*All Cases*" | ) ) ) | |
| | ) ) ) | **RULING REGARDING CONFIDENTIALITY DESIGNATIONS** |

Plaintiffs have filed a "Motion to Compel Defendant AmerisourceBergen to Produce Discovery Improperly Withheld and to Show Cause Why it Should Not Be Sanctioned for its Discovery Misconduct" ("Show Cause Motion").  *See* docket no. 3300; *see also* docket nos. 3322, 3332, and 3342 (response, reply, and sur-reply briefs); docket no. 3343 (Order directing AmerisourceBergen to produce additional information).  That motion is pending before the Court, and the undersigned does not address it here.  Rather, this *Ruling* addresses a related matter that the parties have presented to the Special Master by way of letter briefs – that is, the propriety of AmerisourceBergen's ("ABDC's") designations of confidentiality in connection with certain documents.  For the reasons stated below, the Special Master concludes Plaintiffs' challenges to four confidentiality designations made by ABDC are well-taken.  Accordingly, Plaintiffs may treat these documents as not confidential.

**I.  Background.**

Litigation regarding defendants' roles in the opioid crisis is proceeding in this MDL Court and also in various State Courts.  This means that defendants are simultaneously producing discovery in several jurisdictions, including in New York State Court.  In one of its very first Orders, the MDL Court directed defendants to re-produce to the MDL Repository any relevant documents they produced in State-court litigation.[1]  The Court reiterated and clarified this obligation in *Discovery Ruling No. 22* and amendments thereto.[2]

In compliance with these Orders, ABDC recently produced to the MDL Repository over 400,000 documents it earlier produced in New York State Court litigation.  After reviewing these documents, Plaintiffs believed ABDC should have produced them many months ago in the MDL, during litigation of the Track One bellwether cases (and before Track One settlements occurred), because the documents were centrally responsive to MDL discovery requests.  Accordingly, Plaintiffs' filed the above-referenced Show Cause Motion.

---

[1] *See Case Management Order No. 1* at 15, ¶9.k.ii (docket no. 232) ("all Defendants shall review documents previously produced pursuant to any civil investigation, litigation, and/or administrative action by federal (including Congressional), state, or local government entities involving the marketing or distribution of opioids and shall produce to the PEC non-privileged documents relevant to the claims in this MDL proceeding.").

[2] *See* DR-22 at 4 (docket no. 2576) ("Defendants shall produce in discovery in this MDL copies of all sworn statements, testimony, video-taped testimony, written responses and discovery, expert reports, and other documents and discovery that they produce in any court . . . regarding the marketing, sales, distribution, or dispensing of Opioids or Opioid Products, including any exhibits referred to in that testimony, on an ongoing basis . . . ."); *Order Regarding Document Production to MDL Repository* at 2 (docket no. 3178) (clarifying that DR-22 obligations "shall apply to all defendants in all MDL cases"); *Opinion and Order* (docket no. 3333) ("[T]he information that DR 22 requires Defendants to produce in the MDL is discovery that Defendants have already located, collected, filtered for privilege, and produced elsewhere.  The burden imposed by DR 22 is virtually zero.").

As exhibits to the Show Cause Motion, Plaintiffs wanted to attach ten exemplar documents and explain why each should have been produced as Track One MDL discovery. ABDC, however, had designated as confidential nine of these documents in the New York litigation, so those nine documents were instead produced *in camera*. Plaintiffs challenged these designations, and ABDC agreed to withdraw its assertion of confidentiality as to five of them, leaving the designations in place as to the remaining four. The parties then submitted the four documents and letter briefs to the undersigned, asking for rulings.

**II.     Threshold Issue.**

As a threshold issue, ABDC argues the MDL Court does not have jurisdiction to hear Plaintiffs' challenges to its confidentiality designations, because ABDC originally applied those designations in the New York State Court litigation. ABDC asserts "the court in which the designations were initially applied – i.e. the New York state court – is the proper forum in which any challenge should be raised." Letter from Brian Himmel to Special Master at 2 (June 1, 2020). ABDC warns that doing otherwise would require "th[is] Court to overrule the Protective Order entered in the New York litigation," thereby tossing aside "the concept of comity." *Id.* ABDC cites "the general proposition that if there is a protective order issued in a different district which applies to documents produced in that district, 'when the other matter is ongoing, courts have held that any request necessitating the modification of the protective order be directed to the issuing court.'" *Ohio Willow Wood Co. v. Alps S., LLC*, 2011 WL 1043474 at *2 (S.D. Ohio Mar. 18, 2011) (quoting *Mugworld, Inc. v. G.G. March & Associates, Inc.*, 2007 WL 2229568 at *1 (E.D. Tex. June 15, 2007)).

3

The MDL Court and the undersigned have always been and will continue to be very sensitive to issues of federalism, as well as comity with and courtesy toward all other courts that are trying opioid cases.  But the "general proposition" cited by ABDC is subject to critical caveats that are directly on point in these circumstances.  As explained in a carefully-considered opinion in *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495 (D. Md. 2000), there is an important difference between: (1) a *one-sided* confidentiality designation made by *one party* pursuant to an agreed-upon protective order entered in another case; and (2) a *court finding* of confidentiality made in another case, which a party then asks another court to override.  ABDC is certainly correct that this Court should be loathe to ignore or annul another court's conclusion that a document should be deemed confidential (or treated as privileged) absent very good cause.  But the New York State Court has made no such finding.  Rather, ABDC relies upon a protective order that

> was more in the nature of an agreement between counsel that, once completed and signed, was presented to the court for its approval.  Thus, the [New York] court's role was after the fact, as an instrument to implement what the parties already had agreed to.  This is quite a different situation than that presented when a discovery dispute is raised before a court and, after a full hearing, it issues an order reflecting its deliberative process and decision.  There is less need for deference and comity when the order involved is really an agreement by counsel approved, almost as a ministerial act, by the [other] court, than an action directed by the [other] court after a full consideration of the merits of a fully briefed dispute.

*Id.* at 501.

Moreover, this "court should consider whether it is possible to incorporate terms in its own order which will further the protections originally ordered by the [New York State] court." *Id.*  In other words, if there is a Protective Order in the MDL Court that duplicates the relevant provisions of the protective order in the New York State Court, then issues of federalism and comity are

4

assuaged. As Plaintiffs point out, the New York Protective Order "mirrors, with large parts copied from, the MDL CMO-2 protective order." Letter from Anthony Irpino to Special Master at 3 (June 5, 2020). Indeed, the New York Protective Order "explicitly permits counsel in other opioid litigation to use documents subject to the protective order," and "actually *disclaims* that any specific documents have been found by the [New York] court to be confidential." *Id.* (footnotes omitted) (emphasis added).[3]

In sum: (1) neither this Court nor the New York Court nor any other court has ever actually examined whether ABDC's confidentiality designations on the four documents at issue are appropriate; (2) the relevant provisions of the New York State Court Protective Order and the MDL Protective Order are identical; (3) examination by the MDL Court of ABDC's confidentiality designations do not raise any concerns of federalism, comity, or courtesy; and (4) the documents at issue have been produced in the MDL and are clearly subject to its jurisdiction. The undersigned agrees that this MDL Court should generally avoid re-assessment of another court's considered determination of document confidentiality or privilege, but that is not what has happened. Accordingly, the Special Master will assess Plaintiffs' claim that the four documents are not properly designated as confidential.

### III.    Analysis.

The parties next disagree over the appropriate standard of review. ABDC points to the

---

[3] The New York Protective Order states, at ¶81: "Nothing herein shall be construed or presented as a judicial determination that any documents or information designated as Confidential or Highly Confidential by counsel or the Parties is subject to protection until such time as the Court may rule on a specific document or issue." The MDL Court's own Protective Order contains a virtually identical provision, *see* Case Management Order No. 2 at ¶85 (docket no. 441).

language of the New York Protective Order (and the MDL Protective Order, which contains substantially identical language), which states:

> 'Confidential Information' is defined herein as information that the Designating Party in good faith believes would be entitled to protection on a motion for a protective order on the basis that it constitutes, reflects, discloses, or contains information … that should be protected from disclosure as … commercial or financial information that the Designating Party has maintained as confidential, or such other proprietary or sensitive business and commercial information that is not publicly available.

Order at ¶10. Accordingly, ABDC insists its confidentiality designations are appropriate because the four documents contain commercial or financial information that ABDC has maintained as confidential, or other proprietary or sensitive business information that is not publicly available.

In contrast, Plaintiffs note they could not append the four documents at issue as exhibits to their Show Cause Motion, and instead had to submit them for *in camera* review, because ABDC's confidentiality designation prevents Plaintiffs from filing the exhibits on the Court's docket. Plaintiffs assert this is tantamount to forcing the documents to be filed under seal, so ABDC "must show three things: (1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored. *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019). Plaintiffs add that the public's "strong interest in obtaining information contained in the Court record" applies to discovery motions (such as the Show Cause Motion) as much as any other motion or document. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016). Indeed, following the Sixth Circuit's mandate,[4] this Court removed numerous discovery briefs and exhibits from under

---

[4] *In re National Prescription Opiate Litig.*, 927 F.3d 919 (6th Cir. 2019) (vacating this Court's Orders permitting the filing of court records under seal or with redactions).

seal in this case, because they were placed under seal at defendants' insistence pursuant only to an agreed protective order, and not a considered judicial determination.

The answer to this dispute lies in its procedural posture. If Plaintiffs were simply arguing to the undersigned that a document produced during discovery should not have been marked "confidential," and thus could be shown to a person not listed as eligible,[5] then the standard of review would be the one urged by ABDC. The question would be limited to a discovery issue and there would be no reason to place the document on the record. *See Shane Group,* 825 F.3d at 305 ("Discovery concerns the parties' exchange of information that might or might not be relevant to their case. 'Secrecy is fine at the discovery stage, before the material enters the judicial record.'") (quoting *Baxter Int''l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)).

Here, however, Plaintiffs seek to attach the exhibits to a motion seeking sanctions, and ask for a judicial determination. "Unlike information merely exchanged between the parties [during discovery], '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Id.* (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983). This "strong interest" can be overcome only if ABDC shows, among other things, "a compelling interest in sealing the records," which it has not done, or even tried to do. *Kondash,* 767 F. App'x at 637.

Indeed, it is questionable whether ABDC has even shown the four documents meet the test for confidentiality as set out in the protective order. Rule 26(c) contemplates the issuance of

---

[5] This Court's Protective Order, entered at Case Management Order No. 2 (docket no. 441), lists at ¶33 categories of persons who may be shown confidential information. Thus, for example, a plaintiff's attorney may not normally show to a defendant's employee a document marked confidential by another defendant, *see id.* at ¶33.d. This is the type of discovery dispute that would implicate the standard of review urged by ABDC.

protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). To show good cause that documents should be shielded by a protective order, "the moving party is required to make 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re National Prescription Opiate Litig.*, 927 F.3d 919, 929 (6th Cir. 2019). Here the documents do not address "a trade secret or other *confidential* research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G) (emphasis added). All four documents date to 2014 or earlier. The documents generally discuss *then-current* tactics to address the DEA's activities, and ABDC's knowledge about diversion. ABDC asserts each document "addresses non-public and sensitive business matters that continue to be of importance to the company to the present day. There is an inherent expectation that such frank discussions among corporate leadership regarding matters critical to the company will be maintained as confidential. For these reasons, this document contains sensitive business information that should continue to be recognized as 'confidential.'" Himmel letter at 5-6. But the Special Master perceives no chance that exposing the information contained in the four documents would meaningfully impede any concrete, ongoing interest of ABDC (commercial or otherwise). In any event, even if the documents are properly marked "confidential," ABDC has not shown they should be filed under seal or examined only *in camera*, rather than made a part of the Court's public record in connection with a substantive and consequential motion filed on the docket.

In closing, the Special Master acknowledges that the circumstances surrounding the Show Cause Motion present a risk of gamesmanship. Knowing that the standard for keeping records under seal is high, Plaintiffs could purposefully file a motion on the docket and attach as exhibits

documents they want made public – documents that would otherwise validly be maintained as confidential pursuant to a protective order. Indeed, Defendants suggested Plaintiffs pursued this tactic to some extent when they filed summary judgment motions in Track One. It suffices to say that the Show Cause Motion is not frivolous and the four documents Plaintiffs seek to attach as exhibits are fair examples offered to make a point. The Special Master's *Ruling* would be different if Plaintiffs' request was gratuitous.

### IV. Objections.

If any party wants to file an objection to this *Ruling*, it must do so on or before June 23, 2020.

**RESPECTFULLY SUBMITTED,**

/s/ *David R. Cohen*
**DAVID R. COHEN**
**SPECIAL MASTER**

**Dated:** June 18, 2020