# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 1:17-md-2804 |
| *County of Monroe, Michigan v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45158 | Hon. Dan Aaron Polster |

**DISTRIBUTORS' REPLY IN SUPPORT OF MOTION TO CERTIFY UNDER 28 U.S.C. § 1292(b) THE COURT'S APRIL 30, 2020 ORDER DENYING IN PART THEIR MOTION TO DISMISS MONROE COUNTY'S CLAIMS, FOR PURPOSES OF SEEKING IMMEDIATE APPEAL OF THE <u>COURT'S RULINGS THAT DENIED DISMISSAL OF THE COUNTY'S CLAIMS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .................................................................................................... 1

ARGUMENT .......................................................................................................... 3

I.   The Court's Denial of Distributors' Motion To Dismiss the County's RICO and State-Law
     Claims Involved Controlling Questions of Law. ................................................... 3

II.  There Is Substantial Ground for Difference of Opinion on the RICO and State-Law
     Immunity Rulings. .............................................................................................. 6

     A. Jurists Reasonably Could Disagree Regarding Whether the County's Claims Meet
        RICO's "By Reason Of" Proximate Causation Requirement and RICO's "Business or
        Property" Injury Requirement. ........................................................................ 7

        1. There is substantial ground for difference of opinion with the Court's conclusion that
           the County's complaint met RICO's "by reason of" proximate causation
           requirement... .......................................................................................... 7

        2. There is substantial ground for difference of opinion with the Court's conclusion that
           the County alleged a "business or property" injury. ..................................... 10

     B. Jurists Reasonably Could Disagree Regarding Whether the Immunity Provision of the
        MPLA Requires Dismissal of the State-Law Claims. ....................................... 12

III. Immediate Appeal May Materially Advance the Termination of the Litigation. ......... 14

CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abell v. Potomac Ins. Co. of Ill.*,
  946 F.2d 1160 (5th Cir. 1991) ...................................................................................4

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
  219 F.3d 674 (7th Cir. 2000) ....................................................................................4

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)...............................................................................................7, 8

*Arab Am. Civil Rights League v. Trump*,
  2019 WL 5684371 (E.D. Mich. Nov. 1, 2019) .........................................................4

*Attorney General v. Merck Sharp & Dohme Corp.*,
  807 N.W.2d 343 (Mich. Ct. App. 2011) .....................................................12, 13, 14

*In re Baker & Getty Fin. Servs., Inc.*,
  954 F.2d 1169 (6th Cir. 1992) .........................................................................5, 6, 11

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*,
  2010 WL 286428 (W.D. Mo. Jan. 19, 2010) ............................................................4

*Canyon County v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) .......................................................................10, 11, 12

*City of Cleveland v. Ameriquest Mortg. Secs.*,
  615 F.3d 496 (6th Cir. 2010) .........................................................................7, 8, 9

*In re City of Memphis*,
  293 F.3d 345 (6th Cir. 2002) ....................................................................................1

*City of San Francisco v. Purdue Pharma, L.P.*,
  18-cv-07591 (N.D. Cal. June 11, 2020), ECF No. 225.............................................1

*In re Commercial Money Ctr., Inc., Equip. Lease Litig.*,
  2011 WL 4344037 (N.D. Ohio Sept. 14, 2011).......................................................2

*DRFP, LLC v. Republica Bolivariana de Venezuela*,
  945 F. Supp. 2d 890 (S.D. Ohio 2013) ....................................................................4

*Duronio v. Merck & Co.*,
  2006 WL 1628516 (Mich. Ct. App. June 13, 2006) .........................................13, 14

*Emp'rs Reinsurance Corp. v. Mass. Mut. Life Ins. Co.*,
    2010 WL 2540097 (W.D. Mo. June 16, 2010) ...........................................................................4

*In re Gen. Motors, LLC*,
    2019 WL 8403402 (6th Cir. Sept. 25, 2019) ............................................................................4

*In re Gen. Motors LLC Ignition Switch Litig.*,
    427 F. Supp. 3d 374 (S.D.N.Y. 2019) .....................................................................................10

*Griffus v. Novartis Pharm. Corp.*,
    2006 WL 2583129 (E.D. Mich. Sept. 6, 2006) ........................................................................14

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ...................................................................................................................7, 9

*Hill v. Henderson*,
    195 F.3d 671 (D.C. Cir. 1999) ..................................................................................................1

*Jackson v. Sedgwick Claims Management Services, Inc.*,
    731 F.3d 556 (6th Cir. 2013) ..................................................................................................10

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
    Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990) ........................................................................................................2

*Kollaritsch v. Michigan State Univ. Bd. of Trustees*,
    944 F.3d 613 (6th Cir. 2019) ....................................................................................................1

*Kollaritsch v. Michigan State Univ. Bd. of Trustees*,
    No. 17-2445 (6th Cir. June 25, 2018), ECF No. 27-2.....................................................3, 5, 11

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
    191 F.3d 229 (2d Cir. 1999).......................................................................................................9

*Lucaj v. FBI*,
    852 F.3d 541 (6th Cir. 2017) ...................................................................................................14

*Malamud v. Sinclair Oil Corp.*,
    521 F.2d 1142 (6th Cir. 1975) ...................................................................................................3

*McElhaney ex rel. McElhaney v. Harper-Hutzel Hosp.*,
    711 N.W.2d 795 (Mich. Ct. App. 2006) ..................................................................................12

*McFarlin v. Conseco Servs., LLC*,
    381 F.3d 1251 (11th Cir. 2004) .................................................................................................4

*Negron v. United States*,
    553 F.3d 1013 (6th Cir. 2009) .................................................................................................11

*Perry v. Am. Tobacco Co.*,
    324 F.3d 845 (6th Cir. 2003) ........................................................................................7, 8, 9

*Sheet Metal Empl'rs Indus. v. Absolut Balancing Co.*,
    830 F.3d 358 (6th Cir. 2016) ..................................................................................................4

*Sims v. First Horizon Nat. Corp.*,
    2010 WL 1050976 (W.D. Tenn. Mar. 22, 2010) ...............................................................6, 10

*Trees v. Pfizer, Inc.*,
    2018 WL 6710594 (Mich. Ct. App. Dec. 20, 2018) ..............................................................12

*In re Trump*,
    874 F.3d 948 (6th Cir. 2017) ............................................................................................3, 6, 7

*United States v. Philip Morris USA Inc.*,
    2004 WL 1514215 (D.D.C. June 25, 2004) ...........................................................................6

*Wallace v. Midwest Fin. & Mortg. Services, Inc.*,
    714 F.3d 414 (6th Cir. 2013) .................................................................................................8

*Welborn v. Bank of N.Y. Mellon Corp.*,
    557 F. App'x 383 (5th Cir. 2014) .........................................................................................10

**Statutes**

18 U.S.C. § 1962 ................................................................................................................................8

28 U.S.C. § 1292(b) ................................................................................................................. *passim*

Mich. Comp. Laws § 600.2945(h)-(i) ..........................................................................12, 13, 14

Mich. Comp. Laws § 600.2946(5) ..........................................................................................12

Michigan Product Liability Act, Mich. Comp. Laws Ann. §§ 600.2945 *et seq.* ................... *passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ............... *passim*

## INTRODUCTION

Certification under Section 1292(b) is "*favored*" in the MDL context.  *Hill v. Henderson*, 195 F.3d 671, 677 (D.C. Cir. 1999).  And that is especially true where, as here, appellate review at this juncture of this case could result in dismissal of this entire action.  As Distributors' opening brief shows, the three criteria for 28 U.S.C. § 1292(b) certification of an interlocutory appeal are plainly met here.  Nothing the County has to say calls this into question.  Instead, the County's response is an effort in misdirection:  it mischaracterizes Distributors' discussion of the 1292(b) criteria as reargument; it quibbles about whether a contrary court of appeals ruling would require dismissal with or without prejudice; and it notes the bare possibility that the Sixth Circuit may reject the appeal.  The same arguments could be made in opposition to almost any request for 1292(b) certification, and they are flatly contradicted by Sixth Circuit practice and precedent.  If there is ever to be an appeal under Section 1292(b) in this MDL litigation—and this Court has said it is "not averse to certifying" one, Dkt. 3289 at 4—this is the case.

*Controlling questions of law.*  The Court's rulings concerning RICO's "by reason of" and "business or property" requirements and the state-law immunity provided by the Michigan Product Liability Act ("MPLA") against "products lability actions" plainly are questions of law.  *See* Dkt. 3289 at 1–2 ("the Court agrees" that similar questions in *Cleveland Bakers* are "questions of law").  Those questions are also controlling because their resolution "could 'materially affect the outcome of the case.'"  *Id.* at 2 (quoting *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002)).  The County pretends otherwise, but ignores this Court's analysis showing that where, as here, appellate "reversal of the district court's order" on certified questions would result in "dismissal of [all] claims," resolution of those questions "could materially affect the outcome of the case."  *Id.*

*Substantial ground for difference of opinion.*  Distributors have demonstrated that there is substantial ground for difference of opinion on the RICO rulings, including the proper

interpretation and application of RICO's (1) stringent "by reason of" proximate causation requirement, and (2) "business or property" injury requirement. Br. 6–16. Distributors likewise demonstrated that there is substantial ground for difference of opinion regarding the Court's conclusion that Distributors are not entitled to the state-law immunity granted under the MPLA for "selling" FDA-approved medicines. Indeed, the Opposition acknowledges that the "[c]ore" of the County's claims against Distributors is that Distributors allegedly refused to "halt" sales of— in other words, *sold*—opioids to pharmacies. Opp. 11 (quoting Compl. ¶ 14); *see* Br. 16–24.

*May materially advance the ultimate termination of the litigation.* An immediate appeal "may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), especially if the Sixth Circuit were to reverse the rulings. While the County observes that "there is no guarantee" the Sixth Circuit will accept the appeal, Opp. 22, that is *always* the case when a party seeks certification under 28 U.S.C. § 1292(b) and provides no basis for denying certification.

Further, the County ignores the possibility that reversal by the Sixth Circuit on only the RICO issues could significantly limit discovery, briefing, and proof in this case—and potentially, in the more than *2,000* other MDL cases asserting RICO claims. *See, e.g.*, *In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, 2011 WL 4344037, at *69 (N.D. Ohio Sept. 14, 2011) (certifying decision in MDL case under 1292(b) because appellate review "may materially advance the ultimate termination of this action, as well as other actions in this MDL"); *see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (under 1292(b) a trial court "may properly consider the system-wide costs and benefits of allowing the appeal"). Unlike the *Cleveland Bakers* case, where the plaintiffs asserted a state-law racketeering claim that the Court suggested still would

require similar discovery, briefing, and proof even if RICO claims were dismissed, there is no such state-law claim here.

The Court should exercise its discretion in favor of allowing an interlocutory appeal at the motion to dismiss stage to materially advance the termination of this case and the MDL as a whole. Authorizing "parallel processing" by an appellate tribunal in this case aligns with the Court's actions to engage other federal courts as part of its "hub-and-spoke" model for resolving these "extremely complex" matters.  Dkt. 2941 at 1–7 & n.3.[1]

## ARGUMENT

## I.    The Court's Denial of Distributors' Motion To Dismiss the County's RICO and State-Law Claims Involved Controlling Questions of Law.

The County's argument (Opp. 5–8) that the questions of statutory interpretation on which Distributors seek certification of an immediate appeal are questions of fact is belied by Sixth Circuit precedent and this Court's prior rulings.

The Sixth Circuit repeatedly has held that questions concerning rulings ***at the motion to dismiss stage***—where the complaint allegations ***are presumed to be true***—are "questions of law" under Section 1292(b).  *See, e.g.*, *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, No. 17-2445 (6th Cir. June 25, 2018), ECF No. 27-2 at 3 (attached as Ex. A) ("'The sufficiency of a complaint is a question of law.'  Whether the district court erred in denying in part MSU's motion to dismiss … is a question of law." (quoting *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017))); *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1146 (6th Cir. 1975) (accepting immediate appeal to determine

---

[1]    The County (Opp. 2 n.2) takes issue with the length of Distributors' opening supporting memorandum.  Distributors requested leave to file that memorandum, *see* Dkt. 3311, citing the provisions of Local Rule 7.1(f), as the memorandum is one "relating to dispositive motions," namely those denied by the Court.  Plaintiffs did not oppose, and leave was granted by this Court.

- 3 -

whether plaintiff alleged injury to "business or property" under Section 4 of the Clayton Act); *see also Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) (questions of law include "the meaning of a statutory … provision"); *Abell v. Potomac Ins. Co. of Ill.*, 946 F.2d 1160, 1165 (5th Cir. 1991) ("question[] of law" whether "uncontested facts in this case [qualify as] 'a pattern of racketeering activity' within the meaning of the RICO statute").[2]

The County's suggestion that Distributors do not seek certification of questions of law is incorrect, as shown by the Court's prior order. Distributors recently sought certification of an immediate interlocutory appeal posing some of the same questions presented here—namely, whether the Court's decision not to dismiss RICO claims rested on an erroneous interpretation of RICO's "by reason of" causation requirement and RICO's requirement that injury be to the plaintiffs' "business or property." Dkt. 3289 at 1. While the Court declined to certify those issues for appeal based on its conclusion that an immediate appeal would not materially advance the termination of that case (*Cleveland Bakers*), the Court "agree[d]" that those RICO issues—the same issues on which Distributors seek an immediate appeal here—present questions of law. *Id.*

---

[2] The cases cited by the County support the same conclusion. *See In re Gen. Motors, LLC*, 2019 WL 8403402, at *1 (6th Cir. Sept. 25, 2019) (*agreeing* that "district court's order involves a novel question of law"); *Sheet Metal Empl'rs Indus. v. Absolut Balancing Co*., 830 F.3d 358, 363 (6th Cir. 2016) (*agreeing* to review ruling under Section 1292(b)); *Arab Am. Civil Rights League v. Trump*, 2019 WL 5684371, at *3, *6 (E.D. Mich. Nov. 1, 2019) (*agreeing* to certify order denying motion to dismiss as it "involves a controlling question of law"); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig*., 2010 WL 286428, at *2 (W.D. Mo. Jan. 19, 2010) ("Defendants [may have] satisfied section 1292's requirements" but exercising discretion not to certify). Unlike here, the court in *McFarlin v. Conseco Servsices, LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004), was discussing factual issues that "arise[] frequently in attempts to appeal interlocutorily the denial of *summary judgment*." *Id.*; *see also Emp'rs Reinsurance Corp. v. Mass. Mut. Life Ins. Co.,* 2010 WL 2540097, at *1 (W.D. Mo. June 16, 2010) (addressing "summary judgment" ruling). Finally, *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 903, 918 (S.D. Ohio 2013), merely held that the "decision on whether to grant a change of venue rests with the sound discretion of the trial court," *id.*, whereas the RICO and state-law rulings do not concern discretionary matters.

at 2.  And the Court's interpretation of the state-law immunity provision in the MPLA for "sellers" of FDA-approved medications likewise presents a purely legal question.

The County also is incorrect to assert that those legal issues are not "controlling."  The RICO questions and the state-law immunity question are "controlling because clarifying the[m] … will 'materially affect' whether the [RICO and state-law] claims can proceed."  *Kollaritsch*, No. 17-2445 (6th Cir. June 25, 2018), ECF No. 27-2 at 3.  Indeed, if the Sixth Circuit rules in favor of Distributors, ***all*** of the County's claims will be dismissed, requiring dismissal of the entire case.  *See* Order at 9 (if MPLA applies, Distributors would be "immune from liability" on remaining claims under state law); Dkt. 1203 at 7, 12 (explaining that the County "may not bring a RICO claim" absent a sufficiently "direct relation between the [County's] injury asserted and [Distributors'] injurious conduct" or if "the injuries asserted were not to [the County's] 'business or property'"), *incorporated by reference*, Order at 28.

Unable to dispute that appellate review could lead to dismissal of the entire case, the County instead speculates that the dismissal might be without prejudice.  *See* Opp. 8 ("a dismissal on appeal … could lead only to a remand for repleading").  The County, however, makes no effort to explain how it could possibly satisfy the requirement of pleading a cognizable RICO injury to business or property in an amended complaint if the statute is interpreted in the manner advocated by Distributors—nor could it.  In any event, the fact that one possible outcome of an immediate appeal is a dismissal without prejudice is no impediment to certification under Section 1292(b).  *See, e.g.*, *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 619 (6th Cir. 2019) (reviewing denial of motion to dismiss under 1292(b) to determine whether a Title IX plaintiff must plead further acts of discrimination to "allege deliberate indifference to peer-on-peer harassment under Title IX"); *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th

Cir. 1992) ("[T]he resolution of an issue need not necessarily terminate an action … to be controlling."); *Sims v. First Horizon Nat. Corp*., 2010 WL 1050976, at \*2–3 (W.D. Tenn. Mar. 22, 2010) (rejecting argument that the possibility of dismissal "without prejudice" poses a barrier to certification under § 1292(b)).

The County also errs in asserting that "if any of the claims are ***not*** dismissed on appeal, the litigation will continue to advance in substantially the same manner."  Opp. 24.  To begin with, that does not rebut Distributors' showing that an appeal "***could*** materially affect the outcome of the case."  Dkt. 3289 at 2; *see* Br. 5.  Moreover, even if the Sixth Circuit reversed on RICO only and allowed the state-law claims to proceed, the case will not proceed in substantially the same manner because the state-law claims do not include any state-law racketeering claim that would require discovery, briefing, and proof comparable to that under RICO, as the Court concluded would have been the case in the *Cleveland Bakers* action.  Accordingly, a dismissal on RICO alone would—as the Opposition tacitly admits—"avoid protracted and expensive litigation" that would be required by the RICO claim.  *In re Baker*, 954 F.2d at 1172; *see United States v. Philip Morris USA Inc*., 2004 WL 1514215, at \*3 (D.D.C. June 25, 2004) ("an interlocutory appeal of this discrete and central legal issue would conserve the resources of the Court and the parties").

The County does not—and cannot—dispute that the RICO and state-law immunity questions are "controlling" inasmuch as their resolution may "have precedential value for a number of pending cases" in this MDL, such as the 22 cases asserting comparable Michigan-law claims and more than ***2,000*** cases asserting RICO claims.  *In re Baker*, 954 F.2d at 1172 n.8; Br. 5 n.5.

## II.  There Is Substantial Ground for Difference of Opinion on the RICO and State-Law Immunity Rulings.

The inquiry under the second 1292(b) factor is whether "reasonable jurists might disagree on an issue's resolution."  *In re Trump*, 874 F.3d at 952 (quoting *Reese*, 643 F.3d at 688).  Contrary

to the County's suggestion (Opp. 9 & n.5), this factor applies with equal force to all requests for certification of an immediate appeal—not just cases involving "the President of the United States." *See In re Trump*, 874 F.3d at 952 ("this petition comes to us under a well-established exception [to the final judgment rule] under 28 U.S.C. § 1292(b)," pursuant to which if "fair-minded jurists might reach contradictory conclusions" "[a] substantial ground for difference of opinion exists").

> **A.**   **Jurists Reasonably Could Disagree Regarding Whether the County's Claims Meet RICO's "By Reason Of" Proximate Causation Requirement and RICO's "Business or Property" Injury Requirement.**

Jurists might reasonably disagree with the Court's interpretation of both the RICO "by reason of" proximate causation standard and the Court's interpretation of the RICO requirement that the plaintiff suffer an injury to its "business or property."  These two grounds for difference of opinion, either independently or in combination, warrant interlocutory review of the Court's RICO ruling.

> **1.**   **There is substantial ground for difference of opinion with the Court's conclusion that the County's complaint met RICO's "by reason of" proximate causation requirement.**

Whether the Court properly interpreted and applied the RICO "by reason of" proximate causation requirement meets Section 1292(b)'s criteria.  *See* Br. 6–12.  As Distributors' opening brief explained, there is at least substantial ground for difference of opinion with this Court's refusal to dismiss the County's claims under the Supreme Court's and Sixth Circuit's decisions in *Hemi*, *Anza*, *Ameriquest*, and *Perry*.  Br. 6–13.

The County asserts, first, that "application of the proximate cause standard in RICO cases is a fact-intensive issue to be determined on a case-by-case basis."  Opp. 10.  But this assertion ignores the fact that the proper interpretation of RICO's "by reason of" proximate causation requirement is a question of law that both the Supreme Court and the Sixth Circuit have addressed at the pleading stage to dismiss RICO claims based on allegations of remote and derivative injuries.

*See, e.g.*, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006); *City of Cleveland v. Ameriquest Mortg. Secs.*, 615 F.3d 496 (6th Cir. 2010); *Perry v. Am. Tobacco Co.*, 324 F.3d 845 (6th Cir. 2003).

The County's suggestion (Opp. 10) that *Wallace v. Midwest Financial & Mortgage Services, Inc.*, 714 F.3d 414 (6th Cir. 2013), establishes the absence of substantial disagreement is unavailing. There, because the plaintiff alleged that he would not have refinanced his mortgage had the appraised value of the property not increased, the court held that the fraudulent appraisal procured by the defendant bank could have "led directly" to the plaintiff's decision to refinance. *Id.* at 416–20. Unlike the County's allegations against Distributors here, it was possible in *Wallace* "to trace a straight line between the alleged fraud and the asserted injury." *Id.* At the least, a jurist could reasonably conclude that this case is more closely analogous to the fact pattern in the Sixth Circuit's *Ameriquest* decision.

The County asserts (Opp. 11) that Distributors mischaracterized its RICO claims by ignoring the allegation that Distributors violated a supposed duty to halt shipment of suspicious orders. But that is a distraction: even assuming that such a duty exists (it does not), that allegation could not possibly salvage the County's RICO claims. As Distributors explained in their opening brief, RICO imposes liability based ***only*** on the commission by defendants of enumerated "predicate acts." *See Anza*, 547 U.S. at 457 ("the compensable injury flowing from a violation of [RICO] 'necessarily is the harm caused by predicate acts'"); Br. 7 n.6. The County cites no authority to suggest that Distributors' purported failure to halt suspicious orders constitutes a "predicate act" of racketeering, 18 U.S.C. § 1962—nor could it.

In any event, a jurist reasonably could conclude that Distributors' purported failure to halt shipment of suspicious orders did not ***directly*** injure the County. As Distributors explained in their

- 8 -

opening brief (and to which the County offers no answer), the County could not suffer injury as a result of Distributors' delivery of FDA-approved medicines to DEA-licensed pharmacies.  *See* Br. 9–10.  Rather, the diversion of prescription opioid medicines as alleged by the County could cause injury only after (1) a doctor prescribes the medicine to a patient, (2) a pharmacist dispenses the medicine to a patient, (3) a patient or third party criminally sells, gives away or steals the pills, (4) an end-user illegally ingests the pills, and (5) the illegal actions of the individuals who divert and abuse opioids cause the County to incur expense.  A jurist thus reasonably could conclude that any relationship between Distributors' shipments of medicines to pharmacies and the County's alleged harm is too remote and attenuated to satisfy RICO's "by reason of" proximate causation standard, properly construed.  *See, e.g.*, *Hemi*, 559 U.S. at 11 (RICO causation standard not satisfied where the plaintiff's theory of liability is contingent on "separate actions carried out by separate parties" (emphasis omitted)); *Ameriquest*, 615 F.3d at 499, 505 (city's allegation that the wrongdoing of financers of subprime loans led to a foreclosure crisis, which in turn led to "increased expenditures for fire and police protection and maintenance and demolition costs," failed the *Holmes* RICO direct injury test because numerous "independent actors" stood between the defendants' alleged misconduct and the City's asserted injury).

Finally, a jurist reasonably could decide that the County's claims are "inherently contingent on injury to [opioid users]."  *Perry*, 324 F.3d at 849.  "Without injury to the individual [opioid users], the [County] would not have incurred any increased costs…."  *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239 (2d Cir. 1999).  The Opposition provides no answer to this separate reason for concluding that a jurist could reasonably disagree with the Court's refusal to dismiss the County's RICO claims.

- 9 -

**2.      There is substantial ground for difference of opinion with the Court's conclusion that the County alleged a "business or property" injury.**

For two independent reasons, there is substantial ground for difference of opinion with this Court's interpretation and application of the RICO requirement that a plaintiff plead an injury to its "business or property." *See* Br. 13–16.

*First*, the Court's decision is, at the least, in tension with *Jackson v. Sedgwick Claims Management Services, Inc.*, 731 F.3d 556, 565 (6th Cir. 2013) (en banc), which ruled that RICO forecloses attempts by plaintiffs to pursue claims based on "personal injuries" or "pecuniary losses flowing from those personal injuries." *Id.*  This Court distinguished *Jackson*, and the County's Opposition reiterates those distinctions.  Opp. 13–14.  That, however, does not respond to the question posed here:  whether jurists might reasonably disagree that those distinctions make a legal difference.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 392 (S.D.N.Y. 2019) ("Although the Court believes that … [petitioners'] cases are ultimately distinguishable, the result reached by the Court is certainly in tension with some of them.").

On that question, the County has nothing to say.  It does not dispute that a jurist might conclude that the County's losses "flow[] from" individuals' personal injuries, *Jackson*, 731 F.3d at 565—after all, but for the misuse and abuse of opioids by its residents and visitors, the County would not incur expenditures for law enforcement, healthcare or other public services that it claims as damages.  Instead, the County asserts that it "is incapable of suffering personal injuries," Opp. 13, but that is no answer to the argument that its alleged injuries are entirely derivative of and flow entirely from alleged personal injuries of individuals.

*Second*, jurists reasonably might conclude that "the costs of … law enforcement and public health care services ***are not recoverable damages under civil RICO***."  *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 980 (9th Cir. 2008); *accord Welborn v. Bank of N.Y. Mellon Corp.*, 557

F. App'x 383, 387 (5th Cir. 2014) (same).  Indeed, Judge Breyer recently requested supplemental briefing on "the application of *Canyon County* … to the City's allegations of injury to its 'business or property'" in the remanded case *City of San Francisco v. Purdue Pharma, L.P.*, 18-cv-07591 (N.D. Cal. June 11, 2020), ECF No. 225 at 1.  That is a telltale sign that "[o]ther circuits' holdings on this issue indicate ***potential*** conflict with the district court's decision" and thus that appellate guidance is needed.  *Kollaritsch*, No. 17-2445 (6th Cir. June 25, 2018), ECF No. 27-2 at 3 (deeming second 1292(b) criterion satisfied).

The County does not dispute that the Court's ruling potentially conflicts with *Canyon County*.  Instead, it declares that "cases from other circuits cannot create a 'substantial ground for difference of opinion.'"  Opp. 15.  That is incorrect:  absent on-point Sixth Circuit authority, the existence of contrary precedent in another circuit is a well-established basis for concluding there is substantial ground for difference of opinion.  *See, e.g.*, *Kollaritsch*, No. 17-2445 (6th Cir. June 25, 2018), ECF No. 27-2 at 3; *Negron v. United States*, 553 F.3d 1013, 1015 (6th Cir. 2009); *In re Baker*, 954 F.2d at 1172.

Finally, a jurist reasonably could disagree that the County has pled injuries suffered in its capacity as a market participant.  Opp. 15–16.  *Canyon County* states that "government entities that have been overcharged in commercial transactions and thus deprived of their money can claim injury to their property."  519 F.3d at 976.  But the County does not allege that its injuries were caused by a commercial transaction involving naloxone (or any other product)—for example, that Distributors conspired to inflate the price of naloxone.  Rather, the County suggests that it was required to purchase naloxone in order to provide public health services to residents.  *See* Opp. 17 (citing Compl. ¶ 847).  Because "[a]ll government actions require the expenditure of money," there is ample room for a reasonable jurist to conclude that the payment of money by local governments

- 11 -

to provide public services is not recoverable under RICO.  *Canyon County*, 519 F.3d at 977, 980

("a governmental entity is not 'injured in its property' when greater demand causes it to provide

additional public services").

> **B.    Jurists Reasonably Could Disagree Regarding Whether the Immunity Provision of the MPLA Requires Dismissal of the State-Law Claims.**

The County's Opposition concedes that the Michigan Product Liability Act ("MPLA")

provides an immunity from tort liability for defendants sued in "products liability actions," which

are defined as actions where a plaintiff seeks to impose liability on the defendant for, *inter alia*,

"selling" a drug product.   Mich. Comp. Laws ("MCL") § 600.2945(h)-(i); *see also* MCL

§ 600.2946(5).[3]  Moreover, the County does not dispute that, under settled principles of statutory

construction, the Michigan "Legislature is presumed to have intended the meaning it plainly

expressed."  *McElhaney ex rel. McElhaney v. Harper-Hutzel Hosp.*, 711 N.W.2d 795, 798 (Mich.

Ct. App. 2006).  A jurist reasonably could disagree with the Court's conclusion that the County

does not seek to impose liability on Distributors for selling opioids to pharmacies.  *See* Compl.

¶ 77 ("At all relevant times, the Distributor Defendants have distributed, supplied, sold, and placed

into the stream of commerce ... prescription opioids"); *id.* p. 200, § F ("The Opioids the Defendants

Sold Migrated into Other Jurisdictions.").

The Opposition, in fact, confirms that the gravamen of the County's claim is based on its

allegations about Distributors' sales of prescription opioids.  The Opposition explains that the

"[c]ore" wrongdoing it alleged in its Complaint was Distributors' failure to "halt" certain sales of

---

[3]    Michigan appellate courts have described "Michigan's immunity statute [as] the only one of its kind in the United States," *Attorney Gen. v. Merck Sharp & Dohme Corp.*, 807 N.W.2d 343, 344 (Mich. Ct. App. 2011), which reflects a policy choice made by the Michigan legislature to "provide[] broad immunity to manufacturers and sellers of products in product liability actions."  *Trees v. Pfizer, Inc.*, 2018 WL 6710594, at *2 (Mich. Ct. App. Dec. 20, 2018); *see also* Opp. 12 (describing the Michigan immunity statute as "idiosyncratic").

- 12 -

opioids to pharmacies, thereby "exacerbating the oversupply of such drugs and fueling an illegal secondary market."  Opp. 11 (quoting Compl. ¶ 14).  But, of course, to say that the County was harmed as a result of Distributors' alleged failure to halt shipment of certain orders is just another way of saying that the County was harmed as a result of Distributors' alleged sales of opioids to pharmacies.  While the County curiously speculates that the state-law immunity would not apply if Distributors did not charge pharmacies for the medicines they deliver, that far-fetched counter-factual does not alter the County's allegation that its injury (alleged increased expenses for public services provided to individuals abusing opioids) is not based on Distributors' purported failure to report certain orders to regulators but on Distributors' sale of those opioid medications to pharmacies.[4]

There also is substantial ground for difference of opinion as to whether the County's public nuisance claims and requests for equitable relief fall within the ambit of the MPLA.  As the Michigan Court of Appeals recognized in *Duronio v. Merck & Co.*, the term "damage to property" under the MPLA is interpreted "broad[ly]," and the cases recognize that "[m]oney itself is a form of property."  2006 WL 1628516, at *4 (Mich. Ct. App. June 13, 2006).  Because the County's public nuisance claim seeks to recover money damages from Distributors—albeit "to compensate the plaintiff for the costs of rectifying the nuisance going forward," Opp. 21—a reasonable jurist

---

[4]  The County seeks to distinguish *Attorney General v. Merck Sharp* on the basis that the court there did not find the defendant immune under the "selling" prong of the statute, but this is incorrect.  While the plaintiff's *allegations* in that case centered on the "marketing" and "advertising" of Vioxx, the court held that "[b]ecause plaintiff brought the claim for damage to property (money) caused by or resulting from the production (marketing, *selling*, advertising, packaging, or labeling) of Vioxx," the plaintiff's claim was "in substance, a product liability action within the meaning of MCL 600.2945(h)."  807 N.W.2d at 349.  Additionally, even if the County's reading of *Merck* was correct, the statute is framed in the disjunctive—"warning, instructing, marketing, selling, advertising, packaging, *or* labeling," MCL 600.2945(i)—so even if *Merck* did not find the sales of Vioxx relevant in that case, that would not be dispositive of whether Distributors here are immune under the "selling" prong.

- 13 -

could conclude that the public nuisance claim is "an action based on a legal or equitable theory of liability brought for … damage to property caused by or resulting from the production of a product," MCL § 600.2945(h), and thus is "[a] disguised product liability claim[]," *Griffus v. Novartis Pharm. Corp.*, 2006 WL 2583129, at *2 (E.D. Mich. Sept. 6, 2006).  The County offers no compelling counter-argument for why it should be able to "avoid dismissal of a cause of action" otherwise covered by state-law immunity provided by the MPLA based on "artful pleading." *Merck*, 807 N.W.2d at 350; *see also Duronio*, 2006 WL 1628516, at *3.[5]

**III.    Immediate Appeal May Materially Advance the Termination of the Litigation.**

The County does not meaningfully dispute the fact that an immediate appeal "***may*** materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b)—indeed, it concedes that an immediate appeal could result in dismissal of the entire case.  *See* Opp. 8; Br. 8.

Instead, the County asserts that certification by this Court might not materially advance the ultimate termination of the litigation "because there is no guarantee an interlocutory appeal will be accepted" by the Sixth Circuit.  Opp. 22.  But that, of course, is true in every case in which a party seeks certification from a district court pursuant to 28 U.S.C. § 1292(b).  And Section 1292(b) requires a showing that "immediate appeal" (*i.e.*, an appeal that is taken after authorization

---

[5]    The County's unsupported suggestion that Distributors have waived the argument that claims seeking equitable or injunctive relief fall within the ambit of the MPLA, Opp. 20, is frivolous. Distributors argued in their Motion to Dismiss that "The Michigan Product Liability Act … provides Distributors with an absolute defense to *all of the County's common-law claims*." Dkt. 572 at 2.  Distributors drew no distinction based on the type of relief sought because Distributors' view was that the claims were barred in their entirety.  It was not until the Court's ruling, identifying such distinctions as relevant in its view, that Distributors separately addressed that erroneous analysis by analyzing whether jurists reasonably might disagree with such distinctions in their memorandum in support of this motion; the question, however, was necessarily subsumed within Distributors' broader argument that they are immune from all common-law claims and thus was not waived or forfeited.  *See also Lucaj v. FBI*, 852 F.3d 541, 548 n.4 (6th Cir. 2017) ("to suggest that [Distributors] forfeited an argument that [they] addressed as soon as [they] could cuts against principles of forfeiture and, frankly, fairness.").

- 14 -

from the district court and court of appeals), may materially advance ultimate termination of the litigation, not that the district court's certification alone would do so.

The County also suggests that an immediate appeal might not materially advance the ultimate termination of the litigation because "a delay in issuing a decision is highly likely."  Opp. 23.  That speculative assertion is belied by the procedural posture of the case.  The case is currently stayed, and no discovery has taken place.  Accordingly, even if the County's speculation that significant time might elapse before the Sixth Circuit renders a decision were correct, an immediate appeal still would likely materially advance the ultimate termination of the litigation.  Moreover, discovery and interlocutory appellate review could proceed simultaneously if this Court wishes: although Distributors would favor retaining the existing stay in this case, Distributors do not intend to seek a stay from the Sixth Circuit if this Court certifies an interlocutory appeal but decides to lift the stay.  *See* Br. 4 & n.4.

Finally, the County admits that certification "is 'favored' in the MDL context."  Opp. 24. While it contends that general rule should not apply here, it wholly fails to explain why that is so. Resolution of the RICO issues, in particular, has the potential not only to materially advance the ultimate termination of this particular case, but also thousands of other cases in the MDL asserting similar RICO claims.

## CONCLUSION

The Court should grant Distributors' Motion to Certify under 28 U.S.C. § 1292(b) the Court's Order denying their Motion to Dismiss the County's RICO and state-law claims.

Date: June 22, 2020

Respectfully submitted,

/s/ Mark H. Lynch
Mark H. Lynch
Geoffrey E. Hobart
Christian J. Pistilli
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com

Counsel for McKesson Corporation

/s/ Enu Mainigi
Enu Mainigi
F. Lane Heard III
Steven M. Pyser
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
EMainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

Counsel for Cardinal Health, Inc.

/s/ Robert A. Nicholas
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel.:  (215) 851-8100
Fax:  (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

Counsel for AmerisourceBergen
Drug Corporation

## LOCAL RULE 7.1(F) CERTIFICATION

This memorandum adheres to the page limits established by Case Management Order Nos.

1 (Dkt. 232), and 4 (Dkt. 485), and Local Rule 7.1(f).

> */s/ Mark H. Lynch*
> Mark H. Lynch

**CERTIFICATE OF SERVICE**

I, Mark H. Lynch, hereby certify that the foregoing document was served via

the Court's ECF system to all counsel of record.

/s/ Mark H. Lynch
Mark H. Lynch