# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*County of Harris v. Purdue Pharma, et al.*, Case No. 1:18-op-45677-DAP | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## COUNTY OF HARRIS' BRIEF IN RESPONSE TO PROFESSOR RUBENSTEIN'S REPORT AND RECOMMENDATION

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................................................1

FACTUAL BACKGROUND AND RECENT DEVELOPMENTS ............................................2

ARGUMENT ................................................................................................6

    I.   One Obstacle to Harris County Agreeing to a Common Benefit Order Is that This Court Does Not Have Subject Matter Jurisdiction over Harris County's Case. ...................................6

          A.   In the absence of federal subject matter jurisdiction, this Court cannot adjudicate attorney fees. ........................................................................7

          B.   Substantial federalism concerns further compel the conclusion that the PEC cannot be rewarded for undermining the *In re Texas Opioid Litigation* MDL. ..........9

    II.  Another Obstacle to Harris County Agreeing to Pay the PEC Is that the County Does Not Owe Anything to the PEC. ....................................................................10

    III.  The Lien Approach Is Not an Appropriate or Viable Alternative Allowing the PEC to Be Paid for Settlements and Judgements of Harris County's Case...............................12

REQUEST FOR HEARING ................................................................................15

CONCLUSION .............................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alabama v. Bozeman*,
  533 U.S. 146 (2001) ........................................................................................... 7

*Am. Telecom Co. v. Republic of Lebanon*,
  501 F.3d 534 (6th Cir. 2007) ............................................................................ 8

*Anderson as trustee for next-of-kin of Anderson v. City of Minneapolis*,
  934 F.3d 876 (8th Cir. 2019), *cert. denied,* No. 19-656, 2020 WL 3146690
  (U.S. June 15, 2020) ......................................................................................... 7

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006) .......................................................................................... 8

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human
  Res.*,
  532 U.S. 598 (2001) ........................................................................................ 10

*County of Harris v. Purdue Pharma, L.P. et al*,
  No. 2017-83618 (133 Jud. Dist., D.C. Tex. Dec. 13, 2007) ............................ 6

*County of Harris v. Purdue Pharma, L.P., et al*,
  No. 4:18-cv-00490 (S.D. Tex. Feb. 20, 2018) ................................................. 6

*Curry v. Del Priore*,
  941 F.2d 730 (9th Cir. 1991) .......................................................................... 14

*Davis v. Detroit Pub. Sch. Cmty. Dist.*,
  899 F.3d 437 (6th Cir. 2018) ............................................................................ 8

*Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n*,
  941 F.2d 1217 (D.C. Cir. 1991) ...................................................................... 15

*In re Distributors*,
  No. 19-0783 (Tex. Oct. 18, 2019) .................................................................... 3

*In re Distributors, Relators*,
  No. 01-19-00550-CV (Tex. App.—Houston [1st Dist.] Aug. 23, 2019) ........... 3

*Fort Bend Cty., Texas v. Davis*,
  139 S. Ct. 1843 (2019) ................................................................................. 8, 9

*Franklin v. Peterson*,
  878 F.3d 631 (8th Cir. 2017) ............................................................................ 7

*Gonzalez v. Thaler*,
    565 U.S. 134 (2012) .......................................................................................... 8, 9

*Gravel v. Am. Leadership Project*,
    249 F.R.D. 264 (N.D. Ohio 2008) ........................................................................ 8

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991) ............................................................................................. 9

*Healy v. Ratta*,
    292 U.S. 263 (1934) ............................................................................................. 9

*Kalyawongsa v. Moffett*,
    105 F.3d 283 (6th Cir. 1997) ............................................................................. 14

*Key Tronic Corp. v. United States*,
    511 U.S. 809 (1994) ........................................................................................... 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................................. 8

*Loren v. Blue Cross & Blue Shield of Mich.*,
    505 F.3d 598 (6th Cir. 2007) ............................................................................... 7

*Madeksho v. Abraham, Watkins, Nichols & Friend*,
    112 S.W.3d 679 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (en
    banc) .................................................................................................................. 15

*Ex parte McCardle*,
    7 Wall. 506, 19 L.Ed. 264 (1868) .................................................................... 7, 8

*Permanent Mission of India to the United Nations v. City of New York*,
    551 U.S. 193 (2007) ........................................................................................... 13

*Peter v. Nantkwest, Inc.*,
    140 S. Ct. 365 (2019) ......................................................................................... 10

*Printz v. United States*,
    521 U.S. 898 (1997) ............................................................................................. 9

*In re Purdue Pharma, L.P.*,
    No. 19-0785 (Tex. Oct. 18, 2019) ....................................................................... 3

*In re Purdue Pharma LP, et al., Relators*,
    No. 01-19-00551-CV (Tex. App.—Houston [1st Dist.] Aug. 23, 2019) ................ 3

*Shamrock Oil & Gas Corp. v. Sheets*,
    313 U.S. 100 (1941) ............................................................................................. 9

*Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*,
    549 U.S. 422 (2007) ..............................................................................8

*Smith v. State*,
    490 S.W.2d 902 (Tex. Civ. App.—Corpus Christi 1972), *writ refused NRE*
    (Apr. 25, 1973).....................................................................................15

*State by and through Tennessee Gen. Assembly v. U.S. Dep't of State*,
    931 F.3d 499 (6th Cir. 2019), pet. docketed (March 17, 2020)...............................8

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...........................................................................7, 8

*Syngenta Crop Prot., Inc. v. Henson*,
    537 U.S. 28 (2002) ..............................................................................9

*Tarrant Cty. Hosp. Dist. v. Jones*,
    664 S.W.2d 191 (Tex. App.—Fort Worth 1984, no writ) .....................................15

*TC Power Ltd. v. Guardian Indus. Corp.*,
    969 F. Supp. 2d 839 (E.D. Mich. 2013) ....................................................14

*In re Texas Opioid Litig.*,
    No. 18-0358 (Tex. MDL Panel June 13, 2018) ..............................................2

*In re Texas Opioid Litig.*,
    No. 18-0358 (Tex. MDL Panel Sept. 5, 2018)...............................................2

*Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of
    Adjustment, Cent. Region*,
    558 U.S. 67 (2009) ..............................................................................7

*United States v. Kentucky Home Mut. Life Ins. Co.*,
    292 F.2d 39 (6th Cir. 1961) ...................................................................14

*Youghiogheny & Ohio Coal Co. v. Vahalik*,
    970 F.2d 161 (6th Cir. 1992) ..................................................................14

**Statutes & Rules**

5 U.S.C. § 552(a)(4)(E) ...............................................................................10

28 U.S.C. § 1407........................................................................................10

28 U.S.C. § 1447(c) ......................................................................................7

Fed. R. Civ. P. 23.......................................................................................11

Tex. Gov't Code §§ 74.161 -74.163 ...................................................................9

**Other Authorities**

7 Am. Jur. 2d Attorneys at Law § 320 ...................................................................................13

Black's Law Dictionary 941 (8th ed. 2004).........................................................................13

Charles Silver, Geoffrey P. Miller, *The Quasi-Class Action Method of Managing Multi-District Litigations: Problems and a Proposal,* 63 Vand. L. Rev. 107, 120 (2010).......................................................................................................................10

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Harris County files this Brief without waiver of its challenge and objections to jurisdiction. In his Report and Recommendation to the Court, Professor William B. Rubenstein identifies what the Plaintiffs' Executive Committee (PEC) must show to succeed in its demand for a share of attorney's fees in opioid litigation: "To demonstrate their entitlement to a common benefit fee, proponents must show that their work 'substantially benefitted' the cases to be taxed."[1] Professor Rubenstein has reported to the Court that "no factual support" in the form of any "supporting affidavits or documents" were filed by the PEC to legitimize their argument that satellite cases received any substantial benefit from the PEC's efforts.[2] The PEC simply demanded an order diverting potentially billions of dollars to them without proof. Professor Rubenstein also reported that the PEC's motion was met with "dire" "warnings" to the effect that acceding to the PEC's demand might "'disrupt' settlement progress 'irreparably,'" "would 'seriously jeopardize' global settlement possibilities," and "would 'sabotage' global settlement efforts."[3] Thus, the PEC's unsubstantiated demand jeopardized settlement efforts occurring outside of this case. The PEC cannot possibly meet the substantial benefit standard.

The County of Harris, Texas, is an interested party opposed to the entry of the PEC's Amended Motion for Entry of Order Establishing Common Benefit Fund. [Doc. #: 3112]. This brief is filed pursuant to this Court's Order. [Doc. #: 3320].

---

[1]   Report and Recommendation Addressing Motion for Common Benefit Fund (hereinafter R&R), p. 2 [Doc. #: 3319, PageID #: 494888].

[2]   R&R, p. 4 n. 2 ("Some opponents point out that the moving papers, at present, proffer no factual support for any of these statements. *See, e.g.,* Doc. #: 3189 at 5. To the extent that the movants aim to demonstrate factually that their efforts have substantially benefited the many satellite cases they seek to tax, and the time and costs expended to achieve that end, the record would be stronger if their legal arguments were substantiated with proper supporting affidavits or documents.") [Doc. #: 3319, PageID #: 494890].

[3]   R&R, p. 6 (internal citations omitted) [Doc. #: 3319, PageID #: 494892].

Harris County responds to Professor Rubenstein's Question 3, and provides a relevant factual update bolstering the substantial federalism concerns that are an obstacle to granting the PEC's request. Harris County is included in the recent Texas settlement, which falls within the jurisdiction of the Texas State Court MDL (Factual Background *infra*). Harris County owes no money to the PEC because the PEC was, if anything, an obstacle to that settlement—much less can the PEC show that it conferred a substantial benefit (Factual Background, Argument § II *infra*). Independently, both the substantial federalism concerns noted by Professor Rubenstein and the strict limitations on federal subject matter jurisdiction are obstacles to the PEC's overreaching fee demand (Argument § I *infra*).  These obstacles to granting the PEC's common benefit demand cannot be overcome by renaming the common benefit award a "lien" (Argument § III *infra*).

### FACTUAL BACKGROUND AND RECENT DEVELOPMENTS

On June 13, 2018, the Texas Multidistrict Litigation Panel established the Texas MDL, *In Re Texas Opioid Litigation*, No. 18-0358.[4] The Honorable Robert Schaffer, Judge of the 152nd Judicial District Court, Harris County, Texas, was appointed to preside over the State's MDL.[5] This proceeding includes claims brought by more than 43 Texas counties, and the Texas Attorney General, against numerous defendants.

The parties to the State of Texas' *In Re Texas Opioid Litigation* have heavily litigated the claims of Texas governmental entities for years without any assistance from the PEC. Since his appointment, Judge Schaffer has not only presided over pre-trial motions and discovery, but has

---

[4]  Exhibit 1, Order of Multidistrict Litigation Panel, *In re Texas Opioid Litig.*, No. 18-0358 (Tex. MDL Panel June 13, 2018).
[5]  Exhibit 2, Order of Multidistrict Litigation Panel, *In re Texas Opioid Litig.*, No. 18-0358 (Tex. MDL Panel Sept. 5, 2018).

set three bellwether cases for trial. Dallas and Bexar County are set for trial on April 12, 2021.[6]
Arduous trial preparation has been ongoing in Judge Schaffer's court, including several hearings resolving substantive Texas state law issues, and ongoing regularly scheduled status conferences and resolution of scores of discovery disputes.[7] The Texas litigants maintain a document depository and are reviewing documents produced by defendants in the Texas state litigation. The manufacturer defendants moved to dismiss the Texas Counties' claims, and after voluminous briefing and oral argument, Judge Schaffer denied this motion. The distributor defendants' dismissal motion suffered the same fate. Both sets of motions challenged the viability of claims under Texas law, and the hundreds of pages of legal briefing called upon Judge Schaffer to resolve Texas state law issues. Both orders were unsuccessfully challenged in the Texas Court of Appeals in Houston, and that failing, to the Texas Supreme Court, which also denied the defendants' writ requests.[8] All of these proceedings have followed Texas state law, and the PEC has had no productive involvement in any of the litigation over which Judge Schaffer has presided for years.

On May 28, 2020, the Texas Attorney General announced the successful negotiation of an agreement entitled Texas Opioid Abatement Fund Council and Settlement Allocation Term Sheet, (hereinafter "Term Sheet"), between it and lawyers representing Texas political

---

[6]  Exhibit 3, 1st Am. Bellwether One Docket Control Order, *In re Texas Opioid Litig.*, No. 18-0358 (152nd Jud. Dist., Tex. March 31, 2020) (setting Dallas and Bexar Counties for trial). Kendall County will be the Defendants' trial pick.

[7]  *See* Exhibit 4, Docket Sheet, *In re Texas Opioid Litig.*, No. 18-0358.

[8]  Exhibit 5, Memorandum Opinion, *In re Distributors, Relators*, No. 01-19-00550-CV (Tex. App.—Houston [1st Dist.] Aug. 23, 2019); Exhibit 6, Memorandum Opinion, *In re Purdue Pharma LP, et al., Relators*, No. 01-19-00551-CV (Tex. App.—Houston [1st Dist.] Aug. 23, 2019); Exhibit 7, Texas Supreme Court Orders Pronounced October 18, 2019, denying *In re Distributors*, No. 19-0783 (Tex. Oct. 18, 2019), and *In re Purdue Pharma, L.P.*, No. 19-0785 (Tex. Oct. 18, 2019).

subdivisions, concerning the division of future settlement proceeds and attorneys' fees.[9] Driven by the progress of ongoing discussions with certain defendants concerning settlement, the parties have agreed that the proceeds of any settlement will be directed 15% to the State of Texas through the office of the Texas Attorney General, 15% to the political subdivisions, and 70% to an opioid council to be established to disburse the money throughout the State for opioid treatment and abatement. In addition, a separate fund for payment of attorneys' fees will be established from which the lawyers representing political subdivisions will be paid. This is the first agreement of its kind in the nation and illustrates how much farther along Texas is toward an aggregate settlement. It is likely this Term Sheet will serve as a template for similar agreements in other states.

The entire process will be administered by Judge Shaffer through the Texas MDL.  He will have jurisdiction to resolve any complaints associated with the disbursement of funds, attorneys' fees,  or any other issues that might arise.  It is reasonable to assume that he may also direct that a common benefit fund be established to pay the Texas lawyers,  who have been engaged in arguing and briefing motions applying substantive Texas law, and discovery proceedings under Texas Rules of Procedure, all of which have facilitated the settlement of the cases under his care. It is easy to imagine the disruption created by a federal court order taxing such settlements for common benefit fees, (whether designated an "assessment" or "lien"), where Judge Schaffer may have issued a similar order affecting those very cases.  The major difference, of course, is that Judge Shaffer would actually have jurisdiction to issue such an order.

---

[9]  Exhibit 8, Term Sheet. *See also* Press Release, Texas Attorney General Ken Paxton, AG Paxton Reaches Bipartisan Agreement with Texas Counties and Cities in Preparation for Settlement with Opioid Defendants (May 28, 2020), available at https://www.texasattorneygeneral.gov/news/releases/ag-paxton-reaches-bipartisan-agreement-texas-counties-and-cities-preparation-settlement-opioid (last visited June 17, 2020).

This agreement was negotiated by the office of the Texas Attorney General along with lawyers for the Texas political subdivisions. Fifteen percent of the proceeds of any settlement will be paid to the Texas Attorney General. This Court has no authority to assess or impose any lien on those proceeds, and has recognized that limitation in at least two prior orders.[10]

The agreement also includes Texas political subdivisions that were wrongfully removed to the federal MDL and which have languished there for up to two years without a ruling on their motions to remand.  The most egregious circumstances involve Harris County, Texas.  No Texas statewide settlement can be reached without Harris County, the largest in Texas and the third largest in the nation.[11] The Texas Attorney General has for that reason included Harris County, (and other Texas counties wrongfully removed), in the negotiation of the Term Sheet. An assessment or lien by this Court on the settlement proceeds earmarked for Harris County, despite the Court's lack of jurisdiction over the underlying case, could jeopardize the Term Sheet agreement negotiated by the Texas Attorney General.

This Court has recognized the importance of the involvement of state attorneys general in state proceedings, "because their participation is critical if there is to be any global resolution."[12] The Texas Attorney General, and lawyers for the Texas political subdivisions have been engaged in serious discussions with certain defendants, creating the Term Sheet to establish a protocol for the receipt and distribution of settlement proceeds. As of this writing, Texas and Ohio are the

---

[10] *See*  Order of 1/24/18 [Doc. #:94, PageID #: 523] ("the Court recognizes it has no jurisdiction over (i) the AGs or their representatives, (ii) the State cases they have filed, or (iii) any civil investigations"); Order of 2/27/18 [Doc. #: 146, PageID #: 806] ("The Court recognizes it has no jurisdiction over (i) the AGs or their representatives, (ii) the State cases they have filed, or (iii) any civil investigations they may be conducting.").

[11]  *See* https://www.census.gov/newsroom/press-releases/2020/pop-estimates-county-metro.html; https://www.census.gov/content/dam/Census/newsroom/press-kits/2020/popest/popest-table1.png.

[12]  Order of 2/27/2018 [Doc. #: 146, PageID #: 806].

only states that have done so and Texas alone enjoys the benefit of a mature state MDL proceeding through which settlement can be effectuated.  If global resolution of the opioid litigation is the goal of this Court, then the sensible course would be to lift the moratorium and remand Harris County, and the other Texas cases wrongfully removed, to the Texas MDL, (without assessment or lien), for participation in any  upcoming resolution of these cases.

**ARGUMENT**

> Q3: (a) How likely is it that the PEC and state court litigants can reach an agreement on a common benefit contribution? (b) If an agreement seems unlikely, identify and discuss the obstacles to agreement, how they might be resolved, and whether a lien approach is an appropriate and viable alternative.

I.      **One Obstacle to Harris County Agreeing to a Common Benefit Order Is that This Court Does Not Have Subject Matter Jurisdiction over Harris County's Case.**

Harris County brought its suit in the 133rd Judicial District Court of Harris County, Texas, in 2017.[13] Notwithstanding a wholesale lack of federal subject matter jurisdiction, three of the dozens of defendants removed the case to the United States District Court for the Southern District of Texas, Houston Division (Case No. 4:18-cv-004590) on February 15, 2018.[14] Certain that federal jurisdiction was lacking, Harris County filed its motion to remand a mere five days later, on February 20, 2018.[15] More than two years later, that motion to remand remains pending.

After refusing to help Harris County secure a remand, the PEC cannot benefit by collecting a tax on Harris County's recovery. The PEC's obstructionist behavior threatened rather than substantially benefited the Texas settlement. That Harris County's case is stalled in a

---

[13]  *See* Plaintiff's Original Petition, *County of Harris v. Purdue Pharma, L.P. et al*, No. 2017-83618 (133 Jud. Dist., D.C. Tex. Dec. 13, 2007) [1:18-op45677-DAP, Doc. #: 144-3].

[14]  Distributor Defendants' Notice of Removal [1:18-op-45677-DAP, Doc. #: 114-2].

[15]  Exhibit 9, Motion to Remand and Brief, *County of Harris v. Purdue Pharma, L.P., et al*, No. 4:18-cv-00490 (S.D. Tex. Feb. 20, 2018) [1:18-op-45677-DAP, Doc. #: 114-4].

court lacking subject matter jurisdiction is no substitute for the substantial benefit test that the PEC must meet.

### A. In the absence of federal subject matter jurisdiction, this Court cannot adjudicate attorney fees.

No federal statute, no federal rule, no controlling authority, and no apposite practice justifies the PEC's fee demand (*see* §II *infra*). There is, however, an abundance of controlling authority compelling the return of Harris County's case to state court and forbidding any federal ruling beyond a remand order.

Pursuant to the black letter of federal law, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case **shall** be remanded." 28 U.S.C. § 1447(c) (emphasis added). The use of the word "shall" is mandatory.[16]

Remand of a case upon the exposure of a jurisdictional defect is not only a statutory mandate, but it is also the outcome decreed in controlling jurisprudence. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)); *see also Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 84 (2009) (parenthetically quoting *Steel*); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (quoting *Steel*). "[J]urisdiction . . . is always our first and fundamental question." *Anderson as trustee for next-of-kin of Anderson v. City of Minneapolis*, 934 F.3d 876, 880 (8th Cir. 2019), *cert. denied,* No. 19-656, 2020 WL 3146690 (U.S. June 15, 2020) (quoting *Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017)). "As a threshold matter, this Court must determine whether it has subject matter jurisdiction over the

---

[16] *See Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) ("The word 'shall' is ordinarily 'the language of command.'") (citation omitted).

lawsuit." *Gravel v. Am. Leadership Project*, 249 F.R.D. 264, 265 (N.D. Ohio 2008) (citing *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007)).

To the degree that the PEC intends that this Court impose a fee order or lien upon a case without subject matter jurisdiction, this jurisdictional overreach would stand in defiance of controlling precedent. "When a court lacks jurisdiction, it '**cannot proceed at all** in any cause.'" *State by and through Tennessee Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019), pet. docketed (March 17, 2020) (quoting *Steel*, 523 U.S. at 94 (quoting *McCardle*, 74 U.S. at 514)) (emphasis added).[17] "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Unlike most arguments, challenges to subject-matter jurisdiction may be raised by the defendant 'at any point in the litigation,' and courts must consider them *sua sponte*." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). *See also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (Federal Courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.") (citation omitted). Therefore, a ruling cannot be made in Harris County's case because there is no subject matter jurisdiction in the first instance.

---

[17]  *See also Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)") (citing *Steel*, 523 U.S. at 93—102); *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 899 F.3d 437, 445 (6th Cir. 2018) ("Without jurisdiction the court cannot proceed at all in any cause.") (parenthetically quoting *Steel*, 523 U.S. at 94 (quoting *McCardle*, 74 U.S. at 514)).

**B. Substantial federalism concerns further compel the conclusion that the PEC cannot be rewarded for undermining the *In re Texas Opioid Litigation* MDL.**

The limits on federal subject matter jurisdiction are mandatory in all circumstances, but disregard of jurisdictional limits is all the more troubling where, as here, state sovereignty over its own courts is threatened. The Texas State Legislature enacted a state multidistrict litigation procedure engineered to afford efficient pretrial proceedings. *See* Tex. Gov't Code §§ 74.161 - 74.163. Like its federal counterpart, Texas' multidistrict protocol authorizes transfer, by order of a judicial panel, of civil actions involving common questions of fact to a specified district court for consolidated or coordinated pretrial proceedings where the transfer furthers convenience for the parties and where it will promote just and efficient conduct of the actions. *See* Tex. Gov't Code § 74.162. As explained above, Texas has established an *In re Texas Opioid* Multidistrict litigation, and the Texas settlement falls under the jurisdiction of Texas Judge Schaffer.

Our "system of 'dual sovereignty'" protects the States from encroachment by the federal government. *Printz v. United States*, 521 U.S. 898, 918 (1997) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991)). "'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.'" *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)). The policy underlying removal statutes "is one calling for the strict construction of such legislation." *Shamrock*, 313 U.S. at 108; *see also Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (parenthetically quoting same). Just last year, the United States Supreme Court in *Fort Bend* recognized that policing the boundary between state and federal jurisdiction remains the task of every federal judge when the Court reiterated that objections to subject matter jurisdiction must be considered *sua sponte*. *See Fort Bend*, 139 S. Ct. at 1849 (citing *Gonzalez*, 565 U.S. at 141).

9

The limitations on federal subject matter jurisdiction and the sovereignty of state courts would be violated if cases, properly in the state MDL, are subjected to a federal fee order.

## II. Another Obstacle to Harris County Agreeing to Pay the PEC Is that the County Does Not Owe Anything to the PEC.

Pursuant to the American Rule, attorneys' fees are paid by the party who contracted to pay counsel for their representation.[18] There are statutory exceptions to the American Rule,[19] but when Congress promulgated Title 28, United States Code, Section 1407, Congress omitted any fee-shifting provision allowing payment to MDL counsel.[20] This Congressional inaction alone should give serious pause to an extra-jurisdictional expansion of the common benefit fund practice, if not the practice itself. The Supreme Court said last year that, "Congress must provide a sufficiently 'specific and explicit' indication of its intent to overcome the American Rule's presumption against fee shifting." *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 372 (2019) (citation omitted). Congress omitted an exception to the American Rule in the MDL statute, and the Supreme Court has never stated that the common benefit fund doctrine applies in MDLs.[21]

---

[18] *See Key Tronic Corp. v. United States*, 511 U.S. 809, 814–15 (1994) ("Our cases establish that attorney's fees generally are not a recoverable cost of litigation 'absent explicit congressional authorization.' . . . Recognition of the availability of attorney's fees therefore requires a determination that 'Congress intended to set aside this longstanding American rule of law.'") (citations omitted).

[19] *See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602-03 (2001) (explaining that the "American Rule" is a general practice of not awarding fees to a prevailing party absent explicit statutory authority, and collecting statutory exceptions to American Rule). *Buckhannon* was superseded on other grounds, i.e., amendments to FOIA and the catalyst theory, 5 U.S.C. § 552(a)(4)(E).

[20] *See* 28 U.S.C. § 1407 (omitting fee-shifting provision); Charles Silver, Geoffrey P. Miller, *The Quasi-Class Action Method of Managing Multi-District Litigations: Problems and a Proposal,* 63 VAND. L. REV. 107, 120 (2010) ("The source of an MDL judge's power to remunerate is not obvious . . . . The MDL statute says nothing about fees.") (notes omitted).

[21] *See* Silver and Miller, *supra* note 20, at 109 ("This practice supposedly rests on the common fund doctrine, a creature of the law of restitution which undergirds fee awards in class actions. Yet the Supreme Court has never said the doctrine applies in MDLs").

The statutory omission is compounded by the lack of any rule addressing common benefit fees. Class action fees are allowed in, and policed through, Federal Rule of Civil Procedure 23; no Rule has been promulgated to allow, much less compel, a PEC award to a Committee in Multidistrict Litigation.[22] Exacerbating the lack of statutory authority and the omission of authority in any federal rule, Professor Rubenstein identified four factors distinguishing the PEC's MDL request from the chartered waters of other litigation. R&R, pp. 5-6 [Doc. #: 3319, PageID #: 494891-92]. Thus, the question of what could justify forcing Harris County or its contractually retained counsel to compensate the PEC is no trivial matter.

The only raison d'être that could possibly justify the PEC's demand is that, absent this Court's intervention on the PEC's behalf, the PEC will not receive adequate compensation for its work substantially benefiting parties who have not hired the PEC to represent them. That the PEC must thread its fee demand through the eye of this needle is manifestly clear from Professor Rubenstein's report. The underlying justification for a common benefit award is that "other lawyers are doing some portion of their work," his report explains. R&R, p. 1 [Doc. #: 3319, PageID #: 494887]. Professor Rubenstein identifies what the PEC must show to succeed in its motion: "To demonstrate their entitlement to a common benefit fee, proponents must show that their work 'substantially benefitted' the cases to be taxed." R&R, p. 2 [Doc. #: 3319, PageID #: 494888]. But, as Professor Rubenstein found, the PEC presented "no factual support." R&R, p. 4 n.2 [Doc. #: 3319, PageID #: 494890]. The PEC felt entitled to demand payouts potentially in the billions ***without any proof.***

Here, the PEC cannot prove that it substantially contributed to the Texas settlement, over which Judge Schaffer will exercise jurisdiction. The opposite is true. In response to the PEC's

---

[22] *See* Silver and Miller, *supra* note 20, at 120-21 (explaining that the federal class action rule does not provide authority for entry of fee awards in MDLs under the common benefit doctrine).

common benefit motion, which was both factually unsubstantiated and legally unprecedented, many opponents filed "dire" "warnings." *See* R&R, p. 6 (collecting quotes from opposition briefs); *accord id.* at p. 4 n. 2 (explaining lack of factual support), pp. 5-6 (listing four factors that reveal lack of prior apposite precedent) [Doc. #: 3319, PageID #: 494891-93]. The National Association of Attorneys General, certain Governmental Plaintiffs, and the Defendants themselves filed a chorus of disapproval, explaining the threat that the PEC was imposing by filing its motion in this Court. In opposition to the PEC's motion, the dire warnings included: "the National Association of Attorneys General suggests a common benefit fee might 'disrupt' settlement progress 'irreparably,' . . . the Defendants argue that a common benefit order would 'seriously jeopardize' global settlement possibilities, . . . and certain Governmental Plaintiffs contend that the order would 'sabotage' global settlement efforts[.]" R&R, p. 6 (internal citations omitted) [Doc. #: 3319, PageID #: 494892].[23]

Therefore, jurisdiction aside, the PEC cannot meet the substantial benefit test justifying recovery of settlement proceeds where, as here, its efforts only harmed the settlement negotiations.

### III. The Lien Approach Is Not an Appropriate or Viable Alternative Allowing the PEC to Be Paid for Settlements and Judgements of Harris County's Case.

In his report to this Court, Professor Rubenstein references the proposal advanced by "other parties" to avoid the "significant federalism concerns" associated with a common benefit assessment on state court settlements, through the use of a "lien" against those very cases. R&R, pp. 7-8 [Doc. #: 3319, PageID #: 494893-94]. As quoted in Professor Rubenstein's report, any lien would be brought "in state court" (R&R, p. 8 (parenthetically quoting Doc. #: 3192 at 11));

---

[23] *Cf.* Silver and Miller, *supra* note 20, at 131 ("lead attorneys are fiduciaries who must put the interests of claimants and non-lead lawyers ahead of their own. Recently, however, lead attorneys have used their control of settlement negotiations to increase their compensation").

therefore, the charging lien theory, as it was raised in the brief quoted by Professor Rubenstein, cannot be a vehicle for an order of this Court awarding the PEC compensation. If members of the PEC choose to appear before Judge Schaffer and explain to him how they have garnered recovery in his court, as to justify a lien under Texas law, then that is an issue for another day.

To the extent that the Professor's Query 3(b) asks whether attorney liens could legitimize the PEC's motion soliciting a fee order from **this Court**, the lien theory is unavailing. As explained above, the obstacle to the PEC's overreaching more than raises the substantial federalisms concern cited by Professor Rubenstein, because the lack of subject matter jurisdiction means the Court cannot issue an order in Harris County's case. Whether described as an "assessment" or "lien," the imposition of either by a federal court on a state court is prohibited. For several reasons, a lien cannot possibly be a vehicle for directing funds to the PEC where, as here, the settlement arose from a state court MDL. Most fundamentally, an attorney charging lien is limited to the suit in which the judgment was recovered. 7 Am. Jur. 2d Attorneys at Law § 320 ("In the absence of a statute or a special agreement, a charging lien does not extend beyond the charges and fees in the suit in which the judgment was recovered."). Therefore, this Court has no authority over recovery, under the guise of a "lien" or otherwise, in cases not properly before the Court. The Texas settlement that has given rise to Harris County's settlement opportunity is before Judge Schaffer's court, not this Court.

Relatedly, a lien by its very nature is tied to the encumbered property.[24] There is no jurisdictional basis for this Court to force payment to a set of lawyers this Court appointed, to

---

[24]  *See Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 198 (2007) (quoting Black's Law Dictionary definitions that, a "lien" was defined as "[a] charge or security or incumbrance upon property" and, concluding that, "The practical effects of a lien bear out these definitions of liens as interests in property."); *see also* Black's Law Dictionary 941 (8th ed. 2004) (defining "lien" as a "legal right or interest that a creditor has in another's property");

work up federal cases, where the settlement commits the *res* to Judge Schaffer's authority and oversight. In *Kalyawongsa v. Moffett*, 105 F.3d 283, 286-87 (6th Cir. 1997), the Sixth Circuit recognized the district court's supplemental jurisdiction to award attorneys' fees where the plaintiffs' lawyer sought recovery for his work in the case before that district court, and looked to state law on the fee issue. The court reasoned that fees are part of "the underlying litigation," and quoted a Ninth Circuit case that, "fee disputes arising from litigation **pending before a district court** fall within that court's ancillary jurisdiction." *Id*. at 287 (quoting *Curry v. Del Priore*, 941 F.2d 730, 731 (9th Cir. 1991)) (emphasis added). A subsequent decision interpreting *Kalyawongsa* did not exercise jurisdiction over an attorneys' lien, even where the asserted lien applied to rights in a settlement of the case pending before that court, where the plaintiffs' counsel sought to recover against the defendants rather than the party plaintiff.[25]

Moreover, even assuming a jurisdictional basis, which is strongly denied, a nationwide "lien" cannot be issued because state law requirements for such a lien have not been met, making the lien theory "too crude an approach."[26] For example, under the operative law in certain

---

*United States v. Kentucky Home Mut. Life Ins. Co*., 292 F.2d 39, 42 (6th Cir. 1961) ("A lien is a charge or encumbrance upon property to secure the payment or performance of a debt, duty, or other obligation.").

[25] *TC Power Ltd. v. Guardian Indus. Corp*., 969 F. Supp. 2d 839, 842 (E.D. Mich. 2013) (even though plaintiffs' attorney was attempting to recover legal fees earned in the litigation, court would not exercise supplemental jurisdiction over fee dispute and found it insufficiently related to the main action, reasoning that plaintiffs' firm was "seeking to recover fees from *Defendants*, based not on any written agreement with Defendants, but instead on claims of having a charging lien and/or third-party beneficiary rights in the Settlement Agreement").

*Cf. Youghiogheny & Ohio Coal Co. v. Vahalik*, 970 F.2d 161, 162 (6th Cir. 1992) (recognizing that jurisdiction over a lien can be distinct from jurisdiction over benefits, court held that the Administrative Law Judge and Benefits Review Board did not have subject matter jurisdiction to enforce lien).

[26] *Cf.* R&R, p. 5 [Doc. 3319, PageID #: 494891] (discussing challenge of different types of settlements and parties).

jurisdictions, attorney's charging liens are asserted against clients, not against other lawyers.[27] Under Texas law, the attorney's lien has been described as a lien that an attorney has over money *actually collected*, and arising from the case *in which the attorney performed services*.[28] At this point, a lien could not possibly be established under Texas law, because there is no money that the PEC collected for Harris County, nor did the PEC perform work in Judge Schaffer's court. In fact, the PEC has only served to harm Harris County's recovery by failing to assist in the remand and, instead, prosecuting the common benefit motion.[29] The PEC does not possibly have a lien over monies Harris County collects as a result of the Texas AG settlement and funds distributed by Texas state Judge Schaffer.

## REQUEST FOR HEARING

Harris County respectfully requests that this Honorable Court conduct a hearing and grant the County an opportunity to be heard on its objection to the imposition of any fee arising from settlement or judgment of Harris County's case. In addition, and/or in the alternative, the County also asks to be heard on its pending remand motion.

---

[27] *See Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n*, 941 F.2d 1217, 1219 (D.C. Cir. 1991) ("Attorney's liens are asserted by counsel against the client.").

[28] *E.g., Madeksho v. Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679, 689 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (en banc) (plurality op.) ("After judgment, attorneys who earn a contingency fee are equitable owners (not mere claimants) of their portion of the judgment.") (note omitted); *Tarrant Cty. Hosp. Dist. v. Jones*, 664 S.W.2d 191, 196 (Tex. App.—Fort Worth 1984, no writ) ("It is well settled that an attorney has a lien for attorney's fees on money collected by him for his client."); *Smith v. State*, 490 S.W.2d 902, 910 (Tex. Civ. App.—Corpus Christi 1972), *writ refused NRE* (Apr. 25, 1973) ("to raise the issue of a possessory lien, the attorney must make a demand for the unpaid amount or balance").

[29] Upon information and belief, this point may be better substantiated if the Motion to Unseal filed this day is granted, and the undersigned is allowed access to the closed-door proceedings. *See also* § II *supra*.

## CONCLUSION

The PEC's common benefit motion has instigated a firestorm of controversy for good reason. The PEC demanded potentially billions in fees *sans* proof. The PEC has done nothing to assist the Texas settlement, and if anything threatened the settlement by filing its extra-jurisdictional fee demand. If one group of lawyers is allowed to take a percentage of settlement proceeds arising out of different jurisdictions, without proof, then why cannot Judge Schaffer order that the PEC lawyers who are subject to personal jurisdiction in Texas pay the Texas MDL? Texas is the first and most comprehensive settlement, and Harris County is of the opinion that the PEC is riding on Texas' coattails. Or, for that matter, what about the States that have, unlike the PEC, actually tried opioid cases? Why not force the PEC to pay compensation because of the settlement momentum generated by those trials? There are excellent reasons why the American Rule has survived for as long as it has.

Professor Rubenstein articulated a standard the PEC cannot meet, at least not as to Harris County, that the PEC's work somehow "substantially benefited" Harris County's recovery. (R&R, p. 2). That is one obstacle to any agreement. A second is that this Court lacks subject matter jurisdiction over Harris County's case. If there is a jurisdiction that would allow a "lien" in these circumstances, it is not Texas. The answers to Professor Rubenstein's Query, as is relevant to Harris County, only compels the conclusion that any common benefit award to the PEC cannot include cases over which there is no federal subject matter jurisdiction in the first instance.

Date: June 23, 2020

| | |
|---|---|
| Respectfully submitted,<br><br>OFFICE OF HARRIS COUNTY ATTORNEY, VINCE RYAN | */s/ Michael T. Gallagher*<br>THE GALLAGHER LAW FIRM |

| | |
|---|---|
| /s/ Vince Ryan<br>Vince Ryan<br>Harris County Attorney<br>Texas Bar No. 17489500<br>Robert W. Soard<br>First Assistant Harris County Attorney<br>Texas Bar No. 18819100<br>Terence L. O'Rourke<br>Special Assistant Harris County Attorney<br>Texas Bar No. 15311000<br>John W. Odam, Jr.<br>General Counsel<br>Texas Bar No. 15192000<br>Pegi S. Block<br>Assistant County Attorney<br>Texas Bar No. 02498250<br>1019 Congress, 15th Floor<br>Houston, Texas 77002<br>Telephone:  (713) 274-5103<br>Facsimile (713) 755-1553<br>Vince,Ryan@cao,hetx.net<br>Robert.Soard@cao.hetx.net<br>Terence.Orourke@cao.hetx.net | Michael T. Gallagher<br>SDOT Bar No. 5395<br>Texas State Bar No.07586000 Pamela<br>McLemore<br>Texas State Bar No. 24099711 Boyd<br>Smith<br>Texas State Bar No. 18638400 SDOT<br>Bar No.: 8203<br>2905 Sackett Street<br>Houston, Texas 77098<br>(713) 222-8080<br>(713) 222-0066 – facsimile  mike@gld-law.com<br>COUNSEL FOR PLAINTIFF<br><br>Tommy Fibich<br>Texas State Bar No. 06952600 SDOT<br>Bar #: 5482<br>Jay Henderson<br>Texas State Bar No. 09424050 Sara J.<br>Fendia<br>Texas State Bar No. 06898800<br>FIBICH, LEEBRON, COPELAND BRIGGS<br>1150 Bissonnet Street<br>Houston, Texas 77005<br>Telephone:  (713) 751-0025<br>Facsimile:   (713) 751-0030  Email:<br>tfibich@fibichlaw.com<br>COUNSEL FOR PLAINTIFF |
| | Dan Downey<br>Dan Downey, P.C.<br>SDOT Bar # 459<br>Texas State Bar No.  06085400 1609<br>Shoal Creek Blvd. #100<br>Austin, TEXAS 78701<br>Telephone: (713) 907-9700<br>Dandowney427@gmail.com<br>COUNSEL FOR PLAINTIFF |

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of June, 2020, a copy of the foregoing document was served on all counsel of record listed below via the Court's ECF system and/or via U.S. Mail.

_/s/ Micheal T. Gallagher_
Michael T. Gallagher