UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>ALL CASES | MDL No. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

**DEFENDANTS' RESPONSE TO THE COURT'S ORDER REGARDING PROFESSOR RUBENSTEIN'S REPORT AND RECOMMENDATION**

Defendants respectfully submit this response to the Court's Order (Dkt. No. 3320) directing the Plaintiffs Executive Committee ("PEC") and interested parties to address the questions in Professor William B. Rubenstein's Report and Recommendation (Dkt. No. 3319) regarding the PEC's motion for a Common Benefit Fund (Dkt. Nos. 3112, 3212, 3212-1).[1]

**I.  The Proposed Order Is Unlawful and Beyond This Court's Jurisdiction to Enter.**

The Report and Recommendation does not discuss the jurisdictional and other legal barriers to granting the PEC's motion. As explained in prior filings by Defendants and other parties, the proposed order is unlawful and beyond this Court's jurisdiction to enter. *See* Dkt. Nos. 3186, 3228-1. Among other things, the order would improperly impose assessments on resolutions outside the MDL, *In re Genetically Modified Rice Litigation*, 764 F.3d 864, 873-74 (8th Cir. 2014), and in violation of state sovereignty, *In re Showa Denko K.K. L-Tryptophan Products Liability*

---

[1] This response is submitted by the following Defendants: AmerisourceBergen Corporation; AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; Cardinal Health 110, LLC; McKesson Corporation; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Hanssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Cephalon, Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., Warner Chilcott Company, LLC, Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, Actavis Totowa LLC, Actavis Kadian LLC, Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City, and Actavis Laboratories FL, Inc., and f/k/a Watson Laboratories, Inc.-Florida.

*Litigation-II*, 953 F.2d 162, 166 (4th Cir. 1992). Neither the "negotiation class" nor personal jurisdiction over a party can provide this Court subject matter jurisdiction over all opioid-related cases in the country in violation of these principles. *See Toth v. United Auto. Aerospace & Agr. Implement Workers of Am. UAW*, 743 F.2d 398 (6th Cir. 1984). Nor may a common benefit fund add a premium to completed settlements or shift fees and costs "as an added penalty to the defendants," as the PEC's proposal would do. *See Schell v. OXY USA Inc.*, 814 F.3d 1107, 1126 (10th Cir. 2016). Therefore, regardless of how the Court intends to analyze responses to the Report and Recommendation, the Court should deny the PEC's premature motion outright on the basis of the arguments presented in Defendants' previous briefing. The Defendants respond below to the specific questions posed in the Report and Recommendation without waiving these objections.

## II. Question One

The Court has asked:

(a) How likely is it that a global settlement will have specific funds to compensate all attorneys in these matters such that the Court will not need to render a common benefit order? (b) Can the Court simply wait to see if such settlement structures emerge before taking the more intrusive step of requiring common benefit holdbacks and, if not, why not?

Dkt. No. 3319 at 7.

### a. Part (a)—The Global Settlement Will Include Attorneys' Fees.

All parties within and outside of the MDL understand that provisions to pay reasonable fees and costs for qualifying representation of settled claims will be part of any global settlement to achieve complete peace at the scale contemplated by the parties. While Defendants will not violate confidentiality with respect to these settlement discussions, any final settlement would contain provisions for attorneys' fees.

**b.    Part (b)—The Court Should Wait to See Settlement Structures Before Requiring Common Benefit Holdbacks.**

As discussed, the Court should reject the PEC's motion as a matter of law. But practicalities also counsel in favor denying the motion, as requiring holdbacks at this stage could significantly impede efforts at global settlement. Defendants therefore agree with the Report and Recommendation's suggestion that holdbacks are an intrusive step and should be avoided at this stage. As the Court is aware, many of those potentially affected by or involved in a settlement are not within the MDL. If the Court allows the PEC to tax *all* opioid-related resolutions with an upfront assessment in the middle of settlement negotiations, it could affect the willingness of other parties to participate in a global settlement and, therefore, the ability of Defendants to achieve the requisite level of peace. At minimum, an order that would redistribute the funds as dramatically as the PEC proposes could wipe out significant progress already made.

In addition, the proposed order's considerable legal flaws risk delaying or ending progress towards settlement, particularly if it is challenged on jurisdictional or other bases. And, as the Attorneys General emphasize in their filings, the proposed order purports to tax non-cash settlements, thereby impeding the ability of defendants without available liquid assets to settle via contributions of products and services. *See* Dkt. Nos. 3181, 3225.

Paragraph 4(b) of the amended proposed order does not resolve these concerns. That paragraph provides that "[n]othing in this Order precludes the parties from negotiating, agreeing on, and proposing a different fee structure in a global settlement of claims against any defendant that provides a different fund or mechanism for fairly compensating common benefit work and costs." Dkt. No. 3212-1 at 11. This merely states the obvious—that the parties are allowed to continue negotiating—and acknowledges that other mechanisms can fairly compensate plaintiffs' attorneys. But it provides no guarantee that a final settlement's carefully negotiated terms would

3

be upheld if they conflict with the PEC's own preferred terms and payment mechanisms that they are prematurely asking this Court to set in place now. Although the Court should deny the order entirely, at the very least it should decline to enter an order imposing common benefit holdbacks while a settlement structure is still taking shape. *See In re Terrorist Attacks on September 11, 2001*, No. 03-MDL-01570, 2019 U.S. Dist. LEXIS 169698, at *294-295 (S.D.N.Y. Sep. 30, 2019*)* (noting that "courts usually defer setting the common benefit fee until the MDL is resolved" and that uncertainty in the recovery sum is a reason to delay the creation of a common benefit fund).

### III.     Question Two

The Court has asked:

(a) How likely is it that the parties and lawyers in the upcoming exemplary cases can reach an agreement on a common benefit contribution?  (b) If an agreement seems unlikely, identify and discuss the obstacles to agreement and how they might be resolved.

Dkt. No. 3319 at 7.

Defendants are not in a position to speculate in response to this question.

### IV.     Questions Three and Five

In question three, the Court has asked:

(a) How likely is it that the PEC and state court litigants can reach an agreement on a common benefit contribution?  (b) If an agreement seems unlikely, identify and discuss the obstacles to agreement, how they might be resolved, and whether a lien approach is an appropriate and viable alternative.

Dkt. No. 3319 at 8.  In question five, the Court asked:

(a) How should a common benefit assessment account for the size of the underlying IRPAs' contingent fee, if at all?  (b) Does the PEC's proposed 7% common benefit assessment properly account for the level of these IRPAs' contingent fee contracts? If so, explain how.  If not, identify what evidence there is of the contingent fee levels in the underlying contracts and discuss how the common benefit fee should be adjusted to take account of that evidence.

Dkt. No. 3319 at 9.

Defendants understand these questions to be primarily addressed to Plaintiffs. Defendants are not in a position to speculate about fee negotiations between the PEC and other plaintiffs' counsel. However, these questions illustrate the complexity of the various litigations inside and outside this MDL, and the significant federalism and equity concerns implicated by the PEC's motion, further indicating the impropriety of the PEC's proposed order.

## IV. Question Four

The Court has asked:

(a) How should a common benefit assessment account for the potential size of the taxed settlements, if at all? (b) Does the PEC's proposed 7% common benefit assessment properly account for the potential size of settlements in this matter? If so, explain how. If not, explain how it should be adjusted to do so.

Dkt. No. 3319 at 9.

### a. Part (a)—Assessments Should Account for Potential Settlement Size.

A common benefit assessment should account for the potential size of the taxed settlement. A common benefit fee taxes individual attorneys "who benefit[] from the work done by the common benefit attorneys" by redistributing attorneys' fees, which ensures that clients are not "charged twice." William Rubenstein, *On What A "Common Benefit Fee" Is, Is Not, and Should Be*, 3 Class Action Attorney Fee Digest 89 (2009). Common benefit assessments are meant to fairly compensate attorneys for their work, but awarding a percentage of the recovery can result in an unfair windfall in unusually large settlements such as the global resolution currently under discussion. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994) ("[T]here is nothing inherently reasonable about an award of [a] percent of a fund regardless of its size."); *see also Manual for Complex Litigation* § 14.121 (4th ed. 2004) ("The application of a benchmark percentage for unusually large funds may result in a windfall."). Here, the PEC emphasizes that 7% assessments are "not uncommon in contemporary MDLs." Dkt. No. 3112 at

5

4.  But this is not an ordinary MDL, and the common percentages should not be the Court's guide. *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 340 (3d Cir. 1998) (remanding a 6.7% assessment remanded "for a more thorough examination and explication of the proper percentage . . . in light of the magnitude of the recovery").

Indeed, such a windfall is particularly problematic in the current MDL, where this Court has repeatedly expressed its intent that the vast majority of settlement funds be used for remediation, abatement, and treatment as soon as possible.  Far from providing just compensation for legal services, the PEC's proposed 7% recovery on a potentially eleven-figure global settlement would take a vast amount of abatement resources away from those who need it most.

  **b.**  **Part (b)—The Proposed 7% Assessment Does Not Account for Potential Settlement Size.**

The proposed 7% assessment does not properly account for the size of the potential settlement in this case.  Courts considering common benefit assessments should assign a percentage that will estimate fair compensation for work done for the common benefit, and no more.  *See* Dkt. No. 3186 at 13-14 (collecting cases).  The PEC does not once mention the potential settlement size when justifying their proposed tax.  Rather, they assert that 7% is a standard percentage *and* emphasize the amount of work they have performed.

Therefore, even setting aside the significant legal infirmities of the PEC's motion, the proposed 7% figure is reason alone to deny the request.  The appropriate percentage should be determined only with reference to an amount that would fairly compensate attorneys for work done for the common benefit.  The PEC has failed to show how 7% of such a potentially massive settlement satisfies this requirement.  Instead, the PEC's request is a clear effort to achieve an enormous windfall at the expense of their clients and of those personally affected by the opioid abuse crisis.

## CONCLUSION

For the reasons discussed above and in Defendants' previous filings, the Court should deny the PEC's motion to create a common benefit fund.


Dated: June 24, 2020

Respectfully submitted,

*s/ Mark H. Lynch*
Mark H. Lynch
Geoffrey E. Hobart
Sonya D. Winner
Christian J. Pistilli
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001
Tel.:  (202) 662-5281
ghobart@cov.com
mlynch@cov.com
swinner@cov.com
cpistilli@cov.com

*Counsel for McKesson Corporation*

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel.:  (215) 851-8100
Fax:  (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation and AmerisourceBergen Corporation*

*/s/ Elaine Golin*
Elaine Golin
Kevin M. Jonke
51 W. 52nd Street
WACHTELL, LIPTON, ROSEN & KATZ
New York, NY 10019
Tel.:  (212) 403-1000
Fax:  (212) 403-2000
EPGolin@wlrk.com
KMJonke@wlrk.com

Enu Mainigi
F. Lane Heard
Steven M. Pyser
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc. and Cardinal Health 110, LLC*

| | |
|---|---|
| */s/ Charles C. Lifland*<br>Charles C. Lifland<br>Sabrina H. Strong<br>O'MELVENY & MYERS LLP<br>400 South Hope Street<br>Los Angeles, CA 90071<br>Tel.:  (213) 430-6000<br>clifland@omm.com<br>sstrong@omm.com<br><br>*Counsel for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.* | */s/ Eric W. Sitarchuk*<br>Eric W. Sitarchuk<br>Rebecca J. Hillyer<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA 19103-2921<br>Tel.:  (215) 963-5000<br>eric.sitarchuk@morganlewis.com<br>rebecca.hillyer@morganlewis.com<br><br>*Counsel for Cephalon, Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., Warner Chilcott Company, LLC, Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, Actavis Totowa LLC, Actavis Kadian LLC, Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City, and Actavis Laboratories FL, Inc., and f/k/a Watson Laboratories, Inc.-Florida* |

## CERTIFICATE OF SERVICE

I, Mark H. Lynch, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Mark H. Lynch*
Mark H. Lynch