```
 1            IN THE DISTRICT COURT OF THE UNITED STATES
               FOR THE NORTHERN DISTRICT OF OHIO
 2                       EASTERN DIVISION

 3
      IN RE:                         Case No. 1:17MD2804
 4    NATIONAL PRESCRIPTION          Cleveland, Ohio
      OPIATE LITIGATION
 5                                   June 25, 2020
                                     1:02 p.m.
 6

 7

 8                            - - - - -

 9

10        TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

11          BEFORE THE HONORABLE DAN A. POLSTER,

12           UNITED STATES DISTRICT JUDGE, AND

13      DAVID A. RUIZ, UNITED STATES MAGISTRATE JUDGE.

14

15                            - - - - -

16

17

18

19

20   Official Court Reporter: Susan Trischan,RMR,CRR,FCRR,CRC
                              7-189 U.S. Court House
21                            801 West Superior Avenue
                              Cleveland, Ohio  44113
22                            216-357-7087
                              Susan_Trischan@ohnd.uscourts.gov
23

24

25
```

```
 1   APPEARANCES:

 2
     For the Plaintiffs:        Peter H. Weinberger, Esq.
 3                              Hunter J. Shkolnik, Esq.
                                Donald A. Migliori, Esq.
 4                              W. Mark Lanier, Esq.
                                Paul J. Hanly, Jr., Esq.
 5                              Paul Farrell, Esq.
                                Salvatore C. Badala, Esq.
 6                              Joseph Rice, Esq.
                                Frank L. Gallucci, III, Esq.
 7                              Linda Singer, Esq.

 8

 9   For Walgreen Defendants:   Kaspar J. Stoffelmayr, Esq.
                                Kate Swift, Esq.
10

11   For CVS Defendants:        Eric R. Delinsky, Esq.
                                Sasha Miller, Esq.
12                              Graeme Bush, Esq.

13   For HBC/Giant Eagle
     Defendants:                Robert M. Barnes, Esq.
14                              Josh Kobrin, Esq.

15   For Defendant Discount
     Drug Mart:                 Timothy D. Johnson, Esq.
16

17   For Rite Aid Defendants:   Kelly A. Moore, Esq.
                                John Lavelle, Esq.
18                              Greg Fouts, Esq.

19
     For Walmart Defendants:    Tina M. Tabacchi, Esq.
20                              John Majoras, Esq.
                                Tara Fumerton, Esq.
21

22   ALSO PRESENT:              Special Master David Cohen
                                Special Master Cathy Yanni
23

24
     Proceedings recorded by mechanical stenography;
25   transcript produced by computer-aided transcription.
```

1          THURSDAY, JUNE 25, 2020, 1:02 P.M.

2              THE COURT: Okay. I guess, Molly, are we
3   ready to begin?

4              THE CLERK: Yes, I think so, Judge. We've
5   been having a clicking issue like we had the last time,
6   and someone is looking into it, but it seems like it's
7   kind of off and on and may be -- may be getting better.

8              THE COURT: Okay. We've got our court
9   reporter ready?

10             THE CLERK: Yes. Sue, can you hear better
11  now?

12             THE REPORTER: A little bit.

13             THE CLERK: Okay.

14             THE CLERK: That's Sue Trischan, Judge.

15             THE COURT: I'm sorry, what, Mary?

16             THE CLERK: That's Sue Trischan, and we
17  need to make sure she can hear what everybody says.

18             THE COURT: Well, Sue, can you hear me all
19  right?

20             THE REPORTER: Yes, Judge.

21             THE COURT: Okay. All right. Well, this
22  is our monthly status call in the Opioid MDL 1:17MD2804.

23             It's really at this point, it's the
24  plaintiffs and the pharmacies in the two cases that are
25  pending, we've called Track One B which is set for trial

1    in November -- that's Summit County and Cuyahoga County

2    with the distribution claims -- and then Track Three

3    which is set for trial in May of 2022. The plaintiffs

4    there are Lake County and Trumbull County, and that

5    covers both distribution and dispensing claims.

6            I received the parties' status report, the

7    thorough report which I've received and reviewed. There

8    really don't seem to be any action items in there.

9            There are a few things I wanted to discuss.

10    I think the first one is earlier this week there was a

11    motion to lift the sealing or unseal the transcript of

12    the status conference that we held on January 29th.

13            At the request of the parties, I

14    unsealed -- I think I unsealed the transcript of the

15    conference we had at the end of May, and this conference

16    is not going to be sealed, but earlier ones were. They

17    were available only to the parties.

18            Unsealing the one in January and the ones

19    in February and March, April, but I wanted to hear from

20    the parties before I did anything. I don't think there's

21    anything confidential.

22            The one thing is in one of them there's a

23    mention of the fact that the parties had selected a

24    private mediator; I think identified him by name. But,

25    of course, there was no discussion of the contents of any

1  discussions.  But unless someone thinks that that in and
2  of itself shouldn't be disclosed, I couldn't see anything
3  that can't be disclosed to this lawyer -- the motion was
4  filed by a lawyer in Texas who has one or more of the
5  State cases -- or anyone else.
6           So anyone have any -- have any problem
7  granting this, the motion to unseal this transcript?  And
8  if I did it, I probably would just unseal all the ones
9  subsequent to January as well.
10          MR. WEINBERGER:  Your Honor, this is Peter
11  Weinberger.  Just I want to give you some context.
12          The Harris County, Texas lawyers who filed
13  the motion to unseal the January 29th transcript from
14  your status conference apparently are operating under a
15  misconception that at that status conference, or,
16  frankly, in subsequent status conferences, there was a
17  discussion about the PEC's motion for a common benefit
18  fund because that is the -- that is what they're
19  addressing in this motion to unseal.
20          I reviewed the January 29th transcript, and
21  as I suspected, the motion was never discussed.  It was
22  purely a discussion of the Track One B case.
23          And subsequent statuses, status conferences
24  since that time, have always involved primarily, if
25  not -- if not exclusively, the Track One B and now the

1 Track Three cases.

2 So it was my intent to simply communicate
3 that to the lawyers who had filed the motion informally
4 by e-mail.

13:08:30 5 But to answer your question directly, I
6 don't think that the plaintiffs have any objection to
7 unsealing the transcripts of the -- of your status
8 conferences since January 29th, 2020.

9 THE COURT: All right. Thanks, Peter.
13:08:48 10 I should have mentioned that. I did the
11 same thing. Clearly this arose out of the fact that
12 there is a motion addressed to me to create a common
13 benefit fund, and there were a whole lot of filings that
14 came in yesterday, and this lawyer does believe that we
13:09:09 15 had some discussion about the common benefit fund on
16 January 29th, which we didn't.

17 So, I mean, I could just say that. But, I
18 mean, it's easier to just unseal it, unless anyone has a
19 problem with it.

13:09:23 20 So the plaintiffs don't.
21 Do any of the defendants -- I think you,
22 the defendants, are the ones who actually requested that
23 these transcripts, these monthly status conferences, be
24 unsealed, but I didn't want to presume that you didn't
13:09:38 25 have a problem with prior ones.

| | |
|---|---|
| 1 | MR. DELINSKY: Good afternoon, Your Honor. |
| 2 | Eric Delinsky for CVS. |
| 3 | I believe I'm speaking for the pharmacy |
| 4 | defendants in saying that we -- we concur in the request |
| 13:09:52  5 | to unseal the transcripts and certainly do not object. |
| 6 | THE COURT: Okay. Thank you, Eric. |
| 7 | Well, then, we'll -- I'll just -- I'll just |
| 8 | unseal. We'll grant the motion. We'll unseal January, |
| 9 | February, March and April. |
| 13:10:08 10 | Okay. What I wanted to talk to everyone |
| 11 | about is the upcoming Track One B trial. |
| 12 | As everyone knows, our Court, the Northern |
| 13 | District of Ohio, has not had any jury trials since the |
| 14 | middle of March because of the Covid-19. |
| 13:10:40 15 | Our plan is to try to resume criminal jury |
| 16 | trials in August. Our plan is to have at least one trial |
| 17 | in the Cleveland courthouse in August, and it may very |
| 18 | well be one of mine that's set for August 17th. |
| 19 | And so we'll get a lot of -- a lot of |
| 13:11:07 20 | knowledge and learning as to whether we're able to do |
| 21 | criminal jury trials and, if so, how best to protect |
| 22 | everyone. |
| 23 | We're putting in place a number of measures |
| 24 | that we think will keep everyone safe, but, of course, |
| 13:11:23 25 | there's no way to determine how prospective jurors will |

1     feel until they're summoned.

2                    So that's -- that's our plan,

3     to -- because, one, we need to start doing criminal

4     trials at some point, at least try.  And if we can do

13:11:51  5     them, great.  If we can't do them, at least we'll have

6     demonstrated that we've tried.

7                    So I am hopeful we will be able to resume

8     jury trials, but again no one wants to coerce jurors into

9     serving.  I mean, I guess everyone is somewhat coerced,

13:12:07 10     but most people voluntarily respond to the summons.  If

11     they have certain reasons, they ask for excuses.  But

12     otherwise, people understand it's their civic

13     responsibility.

14                    But no one wants to coerce a juror who is

13:12:23 15     seriously concerned about his or her health or the health

16     of a family member or losing a job or whatever, and all

17     they'll be thinking about is that rather than the

18     testimony.

19                    So it remains to be seen how jurors are

13:12:45 20     going to react.

21                    And, of course, you know, from this

22     criminal trial, I'll probably summon 40, 50 jurors.  It's

23     a three-day trial.  I think it's going to be a lot easier

24     finding jurors who are willing to sit -- willing and able

13:13:05 25     to sit for three days versus a month, which is what we've

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | got for our November trial.                                  |
|          | 2  | But I want people to understand that                         |
|          | 3  | although the plan is to do this trial, that obviously        |
|          | 4  | there are a lot of issues.                                   |
| 13:13:21 | 5  | I'm also mindful of the fact that there are                  |
|          | 6  | a lot of people, particularly people in my age group, who    |
|          | 7  | don't feel safe getting on an airplane. And there will       |
|          | 8  | be people, obviously many of the lawyers, are out of         |
|          | 9  | town. A lot of the client reps are out of town. I            |
| 13:13:38 | 10 | assume many of the witnesses don't live in Northeast Ohio    |
|          | 11 | and will need to fly in.                                     |
|          | 12 | And I'm mindful of that, and I don't know                    |
|          | 13 | how -- you know, the lawyers and parties should start        |
|          | 14 | talking about that and how we're going to work that out.     |
| 13:13:55 | 15 | It's a civil trial. I don't have a problem                   |
|          | 16 | with jurors -- with witnesses testifying by                  |
|          | 17 | videoconference, if everyone consents. It's a lot easier     |
|          | 18 | to do that in a civil case than a criminal one because we    |
|          | 19 | won't have a Sixth Amendment confrontation clause, so        |
| 13:14:13 | 20 | that's something you can discuss.                            |
|          | 21 | My plan is to use the same procedure that                    |
|          | 22 | worked very well in Track One A. The plaintiffs, of          |
|          | 23 | course, are familiar with it, because you were there for     |
|          | 24 | that. The pharmacies were not, so these lawyers are          |
| 13:14:34 | 25 | probably not familiar.                                       |

 1                What we did was about roughly two months
 2     before the trial, we send out -- we sent out a summons to
 3     roughly a thousand jurors, giving them basically one
 4     question, are you willing and able to serve for a
 5     one-month, roughly one-month trial -- that one might have
 6     been five or six weeks, but whatever -- beginning on such
 7     and such a date.
 8                And then those jurors who didn't have a
 9     real problem doing that, we then sent them the detailed
10     questionnaire that the parties are working on now, and
11     presumably you will use as the model for yours, the one
12     we used last October.
13                We sent that questionnaire out, and then
14     when we got the responses, the lawyers looked at them.  A
15     number of them, the lawyers could agree that those jurors
16     shouldn't be seated and so we immediately excluded those.
17     And then a lot of them no one had a problem with so we
18     put them in another group.
19                And then I sat down and spent a couple
20     hours going through with the lawyers those jurors who one
21     side thought had a for cause -- one side had a for cause
22     challenge but the other side, there was nothing wrong
23     with those jurors, and I worked a lot of those out.
24                And the ones that there was still a
25     disagreement, I ruled on them, and then we brought in the

1 remaining jurors in batches of 50, and by the second
2 morning we had our jury. And so it went very well.
3 　　　　　And I would do that same procedure. And
4 since our trial is scheduled to begin, I believe,
5 November 9th, that would mean the last week of August,
6 first week of September, we would send the summons out to
7 the very large group seeing who -- who's available for a
8 one-month trial beginning November the 9th. And then we
9 would follow the same procedure.
10 　　　　　So I take it no one has any strong
11 objection to following that procedure again?
12 　　　　　MR. WEINBERGER: No objection from the
13 plaintiffs.
14 　　　　　MR. DELINSKY: No objection from the
15 defense, Your Honor.
16 　　　　　THE COURT: All right.
17 　　　　　THE REPORTER: Wait. Who was that? Who
18 was that that said "No objection from the defense"?
19 　　　　　MR. DELINSKY: Eric Delinsky.
20 　　　　　I apologize for not identifying myself.
21 　　　　　THE COURT: It worked, it worked very well.
22 Much better, candidly, than I thought it would.
23 　　　　　So and then, of course, we'll have the
24 learning from whatever trial we conduct here in the
25 Cleveland criminal trial of how to do things.

1              But my point is I think it is going to be a
2     lot harder now, because of the pandemic, finding jurors
3     who are willing and able to serve for a month in
4     November, December of 2020 than it was in October of 2019
5     because of the pandemic.
6              And it also may be difficult, you know, for
7     people to be flying around the country, and people are
8     not going to want to do it, and I'm very mindful of that.
9              Of course, I'm in the age group where I've
10    got to really think about that.  And I don't know if the
11    lawyers have been talking about that, or if you have any
12    plans, but my thought is that's an additional reason why
13    the parties should redouble their efforts with Mr. Gandhi
14    to try to come up with a resolution.
15             Does anyone have any thoughts as to how,
16    how we would be able to do this trial, given the
17    pandemic?
18             MR. LANIER:  Your Honor, Mark Lanier
19    speaking for the plaintiffs.
20             Mr. Weinberger and Mr. Shkolnik and
21    Mr. Migliori and I have talked about this extensively.
22             We're fortunate in that the travel issue is
23    not an issue with us and with our teams, and we'll be
24    able to travel.  We'll be able to get there safely, we
25    believe, and we'll be able to do it.

1 How the dynamic of the trial works out, it
2 seems to us that if you go through the same process you
3 went through last time for jury selection, that that was
4 so efficient and should also be even doubly efficient now
5 in light of the Covid problem because you'll be able to
6 look each juror in the eye and get a good assessment from
7 a dialogue of how they may be about it and how they may
8 be concerned.

9 Your courtroom, it seems to us, was so
10 spacious that it will be easy to seat an adequate jury,
11 even if you do every other seat or something like that,
12 if anybody is nervous over that.

13 The well was plenty crowded last time, but
14 it was one where every team was off to itself with its
15 own table, so that you're not really interacting in close
16 distance with other teams; just with the people that
17 you're interacting with over on your team.

18 As far as the video, live video
19 transmission, we've done that in five other cases at this
20 point, and it's worked well as long as it's done
21 strategically and done carefully.

22 And we'll be glad to work with Special
23 Master Cohen on making sure that the parties can agree on
24 a protocol that works well for them.

25 And so we think that you have postured it

1    as best as you possibly can for us to try it, assuming
2    that, you know, the Sun is out and the wind is behind us
3    and we're able to do so.
4              So that's our two cents' worth from the
5    plaintiffs' side.
6              THE COURT: All right. Thank you, Mark.
7              You know, the procedure worked well last
8    time, but, of course, we didn't have the Covid and so no
9    one was concerned about their health.
10             So they -- and that's a -- you know, I just
11   think there will be a lot of jurors who won't want to sit
12   for a month.
13             I mean, we do have, I mean, for the
14   criminal trial, I worked out -- I'm using -- I will
15   probably use an empty courtroom for the jurors to meet
16   and deliberate rather than the small -- my small
17   conference room. It would be very hard for a jury to
18   socially distance.
19             So there are things we can do.
20             All right. What about from the defense
21   side?
22             MR. DELINSKY: Your Honor, Eric Delinsky
23   for CVS. And again, I think I'm speaking for all
24   pharmacy defendants, but they'll speak up if I get
25   something wrong.

1                We are concerned, Your Honor.  We
2     appreciate that you are raising these issues.  We're
3     concerned about jury selection.  We're concerned about
4     the health of counsel and our witnesses as well.
5                We are relying on commercial travel.  We're
6     concerned about that.
7                That being said, we've been in a
8     wait-and-see approach.  It seems that every week or two
9     weeks the situation's changing.  This seems to be
10    changing for the worse.  In four weeks it may be changing
11    for the better.  We hope it is.
12               So I think that fairly states where we are,
13    Judge.  But we're hoping, you know, for purposes of this
14    trial and for purposes of the nation more generally that
15    we are in a healthier place this fall, but if we're not,
16    we are concerned and we're very appreciative that the
17    Court's raising these issues.
18               I wish I --
19               THE COURT:  I mean, I'm concerned, too, and
20    I hope for the health of -- forget the trial -- the
21    health of our citizens that we are in a better place in
22    October, November than we are now, but obviously I have
23    no control over that.  We just have to deal the hand
24    we're dealt with.
25               So, all right, well, we're doing the best

1  we can, but again I, you know, I -- given all this, I
2  think that's a further reason that the parties should
3  work very hard to resolve it because again, you know,
4  fine, you know, we do Track One B and we do Track Three
5  and then there's hundreds and hundreds of others in
6  Federal Court and State Court, and it would just drag on
7  and on.
8         So I think the parties should really focus
9  their attention, particularly since not a lot needs to be
10 done to get Track One B ready.  All the motions will be
11 done.  Again I think that you use -- the juror
12 questionnaire we used last October should be a very good
13 model for what we use now.
14        I mean, the one thing that, of course, will
15 be different, most jurors didn't have a clue of who
16 Cardinal, McKesson and Amerisource were, but everyone is
17 going to be familiar with all of the defendants because
18 every juror regularly goes into one or more of the
19 pharmacies regularly.
20        So that will be a big difference, you know,
21 and presumably many or most of them will have a favorable
22 impression of their pharmacy or else they wouldn't be
23 using it.  So but that's, you know, I don't think
24 that's -- but that will be a difference.
25        Okay.  No one -- virtually no one knew the

1        names of the distributors or anything about them or had
2        any connection, but every juror will be a regular
3        customer of one or more of our pharmacy defendants.
4                    So we'll address --
5                    MR. WEINBERGER:  Your Honor, this
6        is -- Your Honor, this is Pete Weinberger.
7                    Actually Walgreen's participated in the
8        jury, in the jury selection process.
9                    THE COURT:  Oh, that's right, Pete.  You're
10       right.  You're right, because we did have a few people,
11       we had a couple prospective jurors who were employees of
12       Walgreen's or -- all right, so we had a little sense of
13       that.
14                   All right.  Well, we'll just, you know,
15       obviously monitor things, and certainly if I or another
16       Judge -- I mean, someone in our courtroom's going to have
17       a trial in August and so we'll learn a lot from that.
18                   All right.  I didn't -- I didn't have
19       anything else really that I thought needed discussing
20       other than I'll pick a day for our next status call,
21       which we'll definitely do by phone.
22                   There weren't any other real action items
23       or anything in the status report that anyone put forth as
24       needing any action.
25                   Obviously, the -- we had the one what I'll

```
 1   call the substantive motion to dismiss by all the
 2   pharmacies, which we'll get a response to, and then we
 3   have the two what I'll call jurisdictional motions -- CVS
 4   filed one and Rite Aid filed one -- challenging
 5   jurisdiction over their respective holding companies.
 6               And I understand the lawyers are having
 7   some discussion about that.  I think there was a motion
 8   to postpone the response, which I -- if I haven't already
 9   granted, I will grant.  So I expect the lawyers to talk
10   about that.
11               And then the other ones, obviously I'll
12   read the responses -- response and then the replies and
13   get to those.
14               That's for the Track Three.
15               All right.  Is there anything that anyone
16   wanted to raise at this point?
17               And Judge Ruiz or Special Master Cohen or
18   Yanni, did I forget anything that we needed to bring up?
19               SPECIAL MASTER COHEN:  I don't believe so,
20   Judge.
21               This is David.
22               MAGISTRATE JUDGE RUIZ:  This is Magistrate
23   Judge Ruiz.
24               No.
25               THE COURT:  Okay.  Well, thank you.
```

| | |
|---|---|
| 1 | Anything from the plaintiffs or the |
| 2 | defendants that anyone would like to bring up while we're |
| 3 | all together? |
| 4 | MR. WEINBERGER: Nothing from the |
| 13:28:07  5 | plaintiffs' perspective. Thank you, Your Honor. |
| 6 | MR. DELINSKY: And nothing from defendants' |
| 7 | prospective as well, Your Honor. Thank you. |
| 8 | THE COURT: All right. Well, it's hard to |
| 9 | believe I seemed to have covered it all. |
| 13:28:18 10 | All right. I'm thinking of having -- we've |
| 11 | been generally having these status conferences the last |
| 12 | week of the month. |
| 13 | I'm thinking of doing it Wednesday, August |
| 14 | 5th, because then by August 5th I think we'll have a |
| 13:28:38 15 | better idea of how -- at least how the jurors' summons |
| 16 | process has worked for our criminal trial, if it's mine |
| 17 | or one of my colleagues in August. |
| 18 | I may know more than the last week of July, |
| 19 | so I'm thinking of doing it on Wednesday, August 5th at |
| 13:29:00 20 | 1:00 o'clock, unless there's a strong objection to that. |
| 21 | Okay. We'll send in call-in -- send out |
| 22 | call-in instructions for Wednesday, August 5th at 1:00 |
| 23 | o'clock. |
| 24 | And I wish everyone a good 4th of July, and |
| 13:29:25 25 | stay safe. |

```
 1              MR. WEINBERGER:  Your Honor, status report?
 2              THE COURT:  Oh, right.  The status, I think
 3   how about noon on Monday, Monday, August the 3rd for a
 4   status report?
 5              MR. WEINBERGER:  That's fine, Your Honor.
 6              THE COURT:  Monday, 8/3, status report.
 7              And obviously if something comes up between
 8   now and then, you address it with me or Special Master
 9   Cohen.
10              Okay.  Thanks, everyone.
11              MR. WEINBERGER:  Thank you, Judge.
12              THE COURT:  All right.
13              (Proceedings concluded at 1:32 p.m.)
14                          - - - -
15                      C E R T I F I C A T E
16              I certify that the foregoing is a correct
     transcript from the record of proceedings in the
17   above-entitled matter.
18
19   /s/Susan Trischan
     /S/ Susan Trischan, Official Court Reporter
20   Certified Realtime Reporter
21   7-189 U.S. Court House
     801 West Superior Avenue
22   Cleveland, Ohio 44113
     (216) 357-7087
23
24
25
```