# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*County of Lake, Ohio v. Purdue Pharma L.P., et al.*,<br>Case No. 18-op-45032<br><br>*County of Trumbull, Ohio v. Purdue Pharma, L.P., et al.*,<br>Case No. 18-op-45079 | **MDL No. 2804**<br>**Case No. 17-md-2804**<br>**Judge Dan Aaron Polster** |

**PHARMACY DEFENDANTS' MOTION TO COMPEL LIMITED ADDITIONAL DATA FROM THE OHIO BOARD OF PHARMACY'S OARRS DATABASE**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 2

BACKGROUND .................................................................................................................... 3

STANDARD ........................................................................................................................... 7

ARGUMENT .......................................................................................................................... 7

    I.      The Court Has Already Found That the Pharmacy Defendants Have a Substantial Need for the Limited Additional Data Requested from the OARRS Database.................................................................................................. 7

    II.     The Court Has Already Found That the Board Cannot Show Good Cause for Noncompliance with the Subpoena. .................................................................. 9

CONCLUSION...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Everitt v. Brezzel*,
 750 F. Supp. 1063 (D. Colo. 1990) .................................................................................... 11

*Seattle Times Co. v. Rhinehart*,
 467 U.S. 20 (1984) ................................................................................................................ 8

*Sharon Steel Corp. v. Travelers Indem. Co.*,
 26 F.R.D. 113 (N.D. Ohio 1960) ........................................................................................ 11

**Other Authorities**

8 C. WRIGHT & A. MILLER,
 FEDERAL PRACTICE & PROCEDURE § 2005 (3d ed. 2019) .......................................... 12

9A C. WRIGHT & A. MILLER,
 FEDERAL PRACTICE & PROCEDURE § 2463.2 (3d ed. 2017) ........................................ 8

**Rules**

FED. R. CIV. P. 26(b)(1) ................................................................................................................ 7

FED. R. CIV. P. 34 ....................................................................................................................... 12

FED. R. CIV. P. 45(a)(l)(D) ........................................................................................................... 8

FED. R. CIV. P. 45(g) .................................................................................................................... 8

## INTRODUCTION

In MDL Track 1B, this Court granted the Pharmacy Defendants'[1] motion to compel the production of limited but critical additional data from the Ohio Board of Pharmacy's Ohio Automated Rx Reporting System ("OARRS"). Dkt. 3168. The Court withdrew that Order as moot following the Sixth Circuit's order to strike the Track 1B plaintiffs' amended complaints adding dispensing claims. But the Court explained that it would likely order the data produced in Track 3, which includes dispensing claims. Dkt. 3313 at 2. The Pharmacy Defendants served a new subpoena seeking the same OARRS data in Track 3. The Board refused to comply.

As in Track 1B, the Pharmacy Defendants' Track 3 Subpoena seeks the identity of the prescribers and of the dispensers associated with prescription data the Board produced in Track 1A. The Subpoena does not seek patient information such as name, address, or date of birth, which the Pharmacy Defendants agree is protected health information of the utmost sensitivity.

The prescriber and dispenser data in question is critical to the Pharmacy Defendants' ability to defend against plaintiffs' dispensing claims. This Court has stated repeatedly that the Pharmacy Defendants are entitled to this data. *See* 12/4/19 Hr'g Tr. 49:1-10 ("[Y]ou can get that data….[The Pharmacy Defendants] can defend the case that way."); 12/27/19 Order on Reconsideration, Dkt. 3055 at 3 ("The Court agrees that third-party discovery of the OARRS database may be helpful and necessary…"); Dkt. 3168 at 7 ("the Pharmacy Defendants' need for the data in this litigation outweighs any countervailing concerns").

---

[1] "Pharmacy Defendants" are CVS Rx Services, Inc., CVS Indiana, L.L.C., CVS Pharmacy, Inc., CVS TN Distribution, L.L.C., and Ohio CVS Stores, L.L.C. ("CVS"), Rite Aid of Maryland, Inc., Rite Aid of Ohio, Inc., Rite Aid Hdqtrs. Corp., and Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center ("Rite Aid"), Walgreen Co., Walgreen Eastern Co., and Walgreens Boots Alliance Inc. ("Walgreens"), Giant Eagle, Inc. and HBC Service Company ("Giant Eagle"), and Walmart Inc., Wal-Mart Stores East, LP, WSE Management, LLC, WSE Investment LLC, and Wal-Mart Stores East, Inc. ("Walmart").

Without this data, it is impossible to identify the pharmacy where any prescription in the OARRS database was filled, including the roughly 42 percent of the dispensing market in Track 3 that plaintiffs have not sued, and which, under plaintiffs' litigation theory, may be largely or even entirely responsible for the alleged harms plaintiffs claim due to the filling of improper prescriptions.[2]  The absence of such data also makes it impossible to identify the physicians who wrote those prescriptions.  The Pharmacy Defendants need dispenser and prescriber information for ***all*** relevant prescriptions in the OARRS database to defend against plaintiffs' claims.

This information is indisputably relevant.  It may absolve the Pharmacy Defendants completely.  It also is uniquely in the hands of the Board, and there is no burden to producing it.  The Board already ***has*** produced it, but with the requested fields anonymized.  All the Pharmacy Defendants ask is for the Board to update its production, with the requested fields included.  The Court should grant the Pharmacy Defendants' motion, as it did in Track 1B.

## BACKGROUND

The Board is charged with regulating the practice of pharmacy and the legal distribution of drugs in Ohio.  As part of those duties, the Board has developed and maintains OARRS.  OARRS consists of two databases: a patient database that contains records of all controlled substances dispensed to outpatients, and an ARCOS-like database that contains records of shipments of those medications by wholesalers and others.  This motion concerns the former.

The OARRS patient database includes a variety of information about all controlled substance prescriptions filled in Ohio.  In Track 1A—before plaintiffs amended their complaints to add dispensing claims against the Pharmacy Defendants—McKesson served a subpoena for

---

[2] This percentage of the market is based on morphine milligram equivalents of prescription opioids received by all dispensers, as reported in the ARCOS data.  The ARCOS data says nothing about prescriptions filled by any pharmacy or other dispenser.

3

***all*** OARRS data, including patient-identifying information that the Pharmacy Defendants do not seek. Initially, the Board refused to comply, citing privacy and confidentiality concerns. McKesson moved to compel. The Court denied McKesson's motion. Following that ruling, however, McKesson and the Board continued to meet and confer, and ultimately, the Board voluntarily produced statewide OARRS data from 2008 to 2018, identifying all of the information listed below, ***except*** pharmacy name and address; pharmacy number; physician name and address; physician number; and patient name, address, and condition.

| Data Field | Produced? |
|---|---|
| Date Prescription Filled | yes |
| Prescription Number | yes |
| Date Prescription Written | yes |
| Quantity | yes |
| Number of Refills | yes |
| Number of Days Supply | yes |
| NDC Code | yes |
| Payment Type | yes |
| Pharmacy Name | NO |
| Pharmacy Address | NO |
| OBOP Pharmacy Number | NO |
| OBOP Pharmacy Business Activity Codes and Subcodes | yes |
| Physician Name | NO |
| Physician Address | NO |
| OBOP Physician Number | NO |
| OBOP Physician Business Activity Codes and Subcodes | yes |
| Patient Name | NO* |
| Patient Sex | yes |
| Patient Address | NO |
| Patient Age | yes |
| Patient Condition | NO |

\* Unique Patient ID number supplied instead

4

*See* Dkt. 3168 at 3.  In place of patient names, the Board produced data identifying patients by a unique number, allowing the same patient to be followed from prescription to prescription.  It is undisputed that the produced OARRS data cannot be used to identify the *pharmacy* that filled any prescription or the *prescriber* who wrote any prescription.

When the Board produced this data, the only claims pending against the Pharmacy Defendants related to their distribution of prescription opioids to their own stores, not their dispensing practices.  On November 20, 2019, following the workup for trial of the distribution claims, the empaneling of a jury, and the eve-of-trial settlement of all but one of the remaining non-severed defendants in Track 1, the Court allowed plaintiffs to amend their complaints to add dispensing claims.  The Court then granted the Pharmacy Defendants' motion to compel additional OARRS data, concluding the data was necessary to the new dispensing claims.  Dkt. 3168.  On April 15, the Sixth Circuit ruled that the Track 1 plaintiffs' amendments should not have been allowed, and this Court struck the dispensing claims from Track 1.  The Court subsequently withdrew its order granting the pharmacies' motion to compel, but explained, "it is likely the Track Three Pharmacy Defendants will again move for production of the same OARRS data from OBOP, and that this Court will order it be produced."  Dkt. 3313 at 2.

On April 30, 2020, the Court established the Lake and Trumbull County, Ohio cases as MDL Track 3, and allowed those plaintiffs to amend their complaints to include dispensing claims alleging that the Pharmacy Defendants filled improper prescriptions, and that doing so was a public nuisance that caused the opioids crisis in Lake and Trumbull Counties.  Dkt. 3282.  Yet, according to the ARCOS data, the Pharmacy Defendants make up just 58 percent of the dispensing market in those two counties between 2006 and 2014.  The Pharmacy Defendants have no information about most of the prescribers, prescriptions, or dispensing practices

5

associated with the dispensers that make up the other 42 percent. Those non-defendant dispensers received more than 71 million dosage units of opioids between 2006 and 2014, according to ARCOS data.

On June 10, the Pharmacy Defendants served a new subpoena on the Board seeking, among other things, the limited additional OARRS data at issue here, i.e., data identifying the dispensers and prescribers associated with the millions of opioids prescriptions in Lake and Trumbull Counties that the Pharmacy Defendants did not fill.[3] The Board objected, raising privacy concerns.

By contrast to the Board's position here, on December 13, 2019, in related state-court opioids litigation, the State of New York voluntarily produced data from its own prescription monitoring program, I-STOP, including prescriber and dispenser data similar to what the Pharmacy Defendants seek here. The produced I-STOP data covers the entire timeframe that New York's prescription monitoring program has been in effect.

The Pharmacy Defendants met and conferred with the Board multiple times, but the Board refused to produce any additional OARRS data. The Pharmacy Defendants therefore bring this motion to compel, seeking production of prescriber and dispenser information from the OARRS database, as well as a general update of the Board's previous production from OARRS, to cover the entire timeframe of 2006 to the present. The Pharmacy Defendants agree that the Board may designate the production under the Court's existing HIPAA Protective Order.

The Court should grant the motion, and order the Board to produce the data in time for the Pharmacy Defendants' experts to opine upon it in advance of the Track 3 trial.

---

[3] The Pharmacy Defendants' Track 3 subpoena is narrower than the Track 1B subpoena. It is limited to the list of prescription opioids and other medications that the Court has ordered the Pharmacy Defendants to produce.

6

**STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). The rules allow for inquiry into the affairs of both litigants and third parties. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 n.15 (1984). Thus, "[a] command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials." FED. R. CIV. P. 45(a)(l)(D).

Under Rule 45, the party refusing to comply bears the burden of showing good cause. 9A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2463.2 (3d ed. 2017). "At any time, on notice to the commanded person, the serving party may move the court ... for an order compelling production or inspection," FED. R. CIV. P. 45(d)(1)(B)(i), and the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena," FED. R. CIV. P. 45(g).

**ARGUMENT**

I.  **The Court Has Already Found That the Pharmacy Defendants Have a Substantial Need for the Limited Additional Data Requested from the OARRS Database.**

The Pharmacy Defendants cannot fairly defend themselves against plaintiffs' public nuisance claims without the limited additional information sought from OARRS. OARRS is the only source for identifying the prescribers and dispensers associated with each opioid prescription filled in Ohio. That information is necessary to show widespread alternative causes

7

of the alleged nuisance, e.g., the large number of "over-prescribers," "pill mills," and other dispensers plaintiffs chose not to sue.[4]

This Court has already held that "the Pharmacy Defendants' need for the data in this litigation outweighs any countervailing concerns." Dkt. 3168 at 7. The Court has recognized the need for this data to show alternative causation repeatedly. At a court conference in December, the Court stated, "you can get that data and you can run things and you can put in that, hey, those are the people who caused the public nuisance, not us….You're free to do that….[The Pharmacy Defendants] can defend the case that way." 12/4/19 Hr'g Tr. 49:1-10; *see also* Dkt. 3055 at 3 ("discovery of the OARRS database may be helpful and necessary"). The Pharmacy Defendants cannot do that, however, unless the Court once again orders the Board to produce the data.

The OARRS data is also necessary to identify "doctor shoppers" in a de-identified fashion. The Board has already anonymized patient-identifying information. The produced OARRS data identifies each patient by a unique number that travels with that patient from prescription to prescription, doctor to doctor, pharmacy to pharmacy. By contrast, the Pharmacy Defendants' own data contains only their own dispensing information. The parties will not be able to use the Pharmacy Defendants' own data to identify patients who filled prescriptions at multiple pharmacies—or prescribers who wrote multiple prescriptions for such patients.

---

[4] For example, the OARRS data is necessary to identify the dispensing practices of "pill mills" such as those that recently closed in Scioto County, and the prescribing practices of the criminal doctors associated with those pill mills, both of which clearly contributed to the opioids crisis. *See* John Caniglia, *The end of an era: Pill mills are gone at Ohio's epicenter, but crisis continues*, Cleveland Plain Dealer (Dec. 1, 2019) *and* John Caniglia, *Key players convicted in Scioto County's pill mills*, Cleveland Plain Dealer (Dec. 1, 2019), *both available at* https://www.cleveland.com/news/2019/12/the-end-of-an-era-pill-mills-are-gone-at-ohios-opioid-epicenter-but-crisis-continues.html.

***OARRS is the only dataset anywhere that allows the tracing of individuals across prescribers and pharmacies.*** Therefore, it is the only dataset that allows the identification of doctor shoppers who sought pills from multiple places, as well as the over-prescribers who wrote those patients' prescriptions. Identifying those patients and prescribers is a primary purpose of OARRS. *See* https://www.ohiopmp.gov/About.aspx. The Board has argued that the Pharmacy Defendants should be required to issue scores of third-party subpoenas to obtain this data from the non-defendant pharmacies that filled those prescriptions. But as this Court has already recognized, collecting the data from third parties—even if possible—would not allow the cross-referencing of prescriptions or patients, as each pharmacy uses its own unique identifiers to de-identify patient information. *See* Dkt. 3168 at 4–5.[5]

Because the Court has ordered the Pharmacy Defendants to produce statewide dispensing data, Dkt. 3341 at 3 n.4, the Pharmacy Defendants need the Board to produce statewide OARRS data as well. Likewise, the Pharmacy Defendants need OARRS data from 2006 to the present, because that is the temporal scope of the data that the Court has ordered the Pharmacy Defendants to produce. *Id.*

**II.    The Court Has Already Found That the Board Cannot Show Good Cause for Noncompliance with the Subpoena.**

This Court previously ruled that there is no countervailing interest that would justify the Board's withholding of this limited additional data. *See* Dkt. 3168 at 7. First, it is indisputably,

---

[5] Attempts to collect this data from third parties also would grind fact discovery to a halt while subpoenas are issued, negotiated, and litigated. The Pharmacy Defendants served subpoenas on some of these third parties in Track 1B and hit a brick wall. None of them produced a single line of data. The Board, on the other hand, has already produced much of the data the pharmacies seek. It should not take long or impose any significant burden for the Board to produce the rest.

9

critically relevant, and potentially even case dispositive. The data may well show that any public nuisance relates to non-party dispensing or prescribing conduct, not the Pharmacy Defendants.

Second, there is little burden to the Board in producing it. The Board already has pulled the data in question, taken the extra step of anonymizing it, and produced it in this litigation. In fact, the Board conceded in its previous opposition to McKesson's motion to compel that the Board pulls OARRS data routinely, every few months, for research purposes. All the Pharmacy Defendants ask is that the same data previously produced be updated and reproduced with the ***dispenser*** and ***prescriber*** fields included.

Third, the privacy concerns raised by the Board, though certainly real and substantial, cannot bar production here. The Court previously found that the Pharmacy Defendants "clearly take seriously the privacy of their patients," dismissing the Board's privacy concerns. Dkt. 3168 at 6.[6] And the Court has already ordered the Pharmacy Defendants to produce their own dispensing data, over objection, holding that any privacy concerns are adequately addressed by the Court's protective orders. The Pharmacy Defendants are entitled to OARRS data, subject to the same protective orders, to defend against plaintiffs' claims.

Finally, the Board's objections that certain federal and state confidentiality statutes preclude production of the data are misplaced. As this Court previously concluded, "these statutes are premised entirely on the concern that disclosure of data would allow identification of patients." Dkt. 3168 at 7. But the Pharmacy Defendants do not seek patient-identifying information such as patient name, address, or date of birth.

---

[6] The Court also concluded that the Board's "argument that Pharmacy Defendants should be required to gather and collate the equivalent of OARRS data themselves [from other third parties], rather than obtain it in one complete package from OBOP, reveals OBOP is concerned more with data-proprietorship than the privacy of the information the data contains." Dkt. 3168 at 6.

Moreover, these statutes inform, but do not limit, the Court's discretion regarding the scope of discovery under Rule 45. *See, e.g.*, *Everitt v. Brezzel*, 750 F. Supp. 1063, 1065–1066 (D. Colo. 1990) (holding that the Federal Rules of Civil Procedure, rather than Colorado case law, governed discovery of police files in civil rights action: "Discovery in the federal courts is governed by federal law as set forth in the Federal Rules of Civil Procedure, whether federal jurisdiction is based on the existence of a federal question or on diversity of citizenship."); *Sharon Steel Corp. v. Travelers Indem. Co.*, 26 F.R.D. 113, 116 (N.D. Ohio 1960) (granting motion to compel production of general counsel's notes prepared in anticipation of trial based on good cause shown under FED. R. CIV. P. 34 despite contrary state ruling and explaining, "we cannot afford to allow state court rulings to influence what we consider to be the proper interpretation of the federal rules concerning discovery"); *see also* 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2005 (3d ed. 2019) ("State law is of very little relevance to discovery in a federal action.").

The fact that the Board has already voluntarily produced much of the information in the OARRS database, coupled with the State of New York's production of its own prescription monitoring data in related state court proceedings—including the same type of data sought here—also significantly undercuts the Board's arguments against production. The Board's concerns do not trump the Pharmacy Defendants' genuine need for this data under Rule 45.

## CONCLUSION

Because the benefit substantially outweighs any burden from producing the limited data sought, the Pharmacy Defendants ask this Court to order the Board to reproduce the statewide OARRS data, from 2006 to present, identifying the prescribers and pharmacies associated with the dispensing data the Board has already produced.

11

Dated: July 1, 2020  Respectfully submitted,

/s/ *Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com
E-mail: kate.swift@bartlit-beck.com

*Attorneys for Walgreens Boots Alliance, Inc., Walgreen Co. and Walgreen Eastern Co.*

/s/ *Tina M. Tabacci* (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc. f/k/a Wal-Mart Stores, Inc., Wal-Mart Stores East, LP, WSE Management, LLC, WSE Investment LLC, and Wal-Mart Stores East, Inc.*

/s/ *Alexandra W. Miller* (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Rx Services, Inc., CVS Indiana, L.L.C., CVS Pharmacy, Inc., CVS TN Distribution L.L.C, and Ohio CVS Stores, L.L.C.*

/s/ Kelly A. Moore (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

John P. Lavelle, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: john.lavelle@morganlewis.com

*Attorneys for Rite Aid of Maryland, Inc., Rite Aid of Ohio, Inc., and Rite Aid Hdqtrs. Corp., and Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center*

/s/ Robert M. Barnes (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc., and HBC Service Company*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record on July 1, 2020.

/s/   *Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Attorneys for Walgreens Boots Alliance, Inc., Walgreen Co. and Walgreen Eastern Co.*