EXHIBIT C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*All Cases* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO AMERISOURCEBERGEN DRUG CORPORATION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure as well as the Case Management Order in In re National Prescription Opiate Litigation (Dkt. No. 232 in No.:17-cv- 2804), Plaintiffs hereby request that Defendant AmerisourceBergen Drug Corporation (herein "AmerisourceBergen") respond to the following Requests for Production (the "Requests") in accordance with their obligations under the Federal Rules of Civil Procedure. Responses to the Requests shall be provided in the manner required by Rule 34(b)(2), the Local Rules of the Northern District of Ohio, the Court's Case Management Order One, filed April 11, 2018, Doc. No. 232, and any other applicable law or rules, within thirty (30) days of the service of these Requests.

If Defendant finds any term or other aspect of the Requests vague, ambiguous or otherwise objectionable and intends to so object, counsel for the Plaintiffs offer to promptly meet with counsel for Defendant to resolve any issues.

## 1.     __DEFINITIONS__

"You" or "Your," means Defendant AmerisourceBergen Corporation and their officers, directors, employees, partners, representatives, agents, corporate parent, subsidiaries, affiliates, divisions, predecessors or successors-in-interest, and other persons or entities acting on its behalf or controlled by it.

"Document" is defined to be synonymous in meaning and equal in scope of the usage of this term in Fed. R. Civ. P. 34. A draft or non-identical copy is a separate Document within the meaning of this term.  In all events, the definition of "Document" shall include "Communication," as defined below.

"Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral communication, includes any Document evidencing such oral communication.  It includes the transmittal of information by any means, including email, SMS, MMS or other "text" messages, messages on "social networking" sites (including but not limited to, Facebook, Google+, MySpace, and Twitter), shared applications from cell phones, or by any other means. "Communication" also shall include, without limitation, all originals and copies that are provided by you or to you by others.

"Customer" means any entity from which You secure revenue related to Your distribution of Opioids or Opioid Products, or from the provision of services and/or solutions including:

    a.        manufacturers, suppliers, distributors and/or wholesalers of Opioids or Opioid Products, regardless of geographic location;

    b.        retail, national and regional pharmaceutical accounts, independent

retail pharmacies, franchises, institutional healthcare providers, payors, physicians, integrated delivery networks, long-term care providers, mail order pharmacies, mass merchandisers, hospitals and specialty practices located in either Cuyahoga or Summit counties in Ohio;

c.        all payors that provide reimbursement or costs or charges arising out of the sale, provision and/or prescription of Opioids or Opioid Products, regardless of geographic location.

"Person" is defined as any natural person or any business, legal, or governmental entity, or association.

"Opioid" or "Opioids" refers to that class of drugs, legal or illegal, natural or synthetic, used to control pain, including, but not limited to, the drugs referenced in Plaintiffs' Complaint in the above-referenced matter.

"Opioid Product" or "Opioid Products" refers to the Opioids that You distributed. This includes coatings, capsule configurations, delivery systems or mechanisms that include, but are not limited to, anti-abuse, tamper resistant and crush-proof mechanisms and mechanisms to deter immediate release.  Opioid Products is also intended to include rescue medication for break through pain.

"Suspicious Order" shall be as defined by the DEA and shall include, but not be limited to, orders for Opioids or Opioid Products of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency and/or by any policy, procedure or criteria established by You.

"Controlled Substances" shall be defined by the Controlled Substances Act.

3

"Quotas" mean aggregate, manufacturing, and procurement quotas established pursuant to 21 U.S.C. § 826 in accordance with 21 CFR 1303.11 and/or any other governmental entity.

## 2.    INSTRUCTIONS

The time period covered by these requests is January 1, 1990 through the date of Your response, unless otherwise specified.

All ESI shall be produced in its original native form, including all metadata, and as otherwise provided in the to-be-agreed/ordered ESI protocol.

All video and audio files must be produced in the manner in which you store and retrieve them, *i.e.*, in their native formats and as otherwise provided in the to-be-agreed/ordered ESI protocol.

## REQUEST FOR PRODUCTION

### I.    Corporate Structure and Relationships, Business Model and Financial Information

**Request No. 1.**    All agreements to purchase, procure and/or distribute Opioids or Opioid Products between You and any of the Defendants in this matter, and/or any manufacturer, supplier, wholesaler or any entity in the supply chain, including Documents sufficient to show Your compensation under those agreements.

**RESPONSE:**


**Request No. 2.**    All agreements with any Customers to whom You distribute Opioid Products or provide services or solutions, including but not limited to data analytics, outcomes research, reimbursement and pharmaceutical consulting services, niche

logistics services, inventory management, pharmacy automation, pharmacy management, and packaging solutions, assistance with product launches, promotional/marketing services, product data reporting, logistical support, generic product purchasing/private label services, hospital/pharmacy consulting to improve operation efficiencies, and packaging solutions, outcome research, contract field staffing, patent assistance and copay programs, adherence programs, risk mitigation services. Documents should be sufficient to show Your compensation under said agreements.

**RESPONSE:**

**Request No. 3.**    All Documents regarding the safety or efficacy of Opioids or Opioid Products, including but not limited to all Documents evidencing any actions You took to evaluate, analyze, study or ensure that the Opioid Products You distributed were safe and effective and/or were safe and effective for chronic pain and long-term use.

**RESPONSE:**

**Request No. 4.**    All financial statements, revenue statements, costs incurred and projections, budgets, cash flow analysis, and profit and loss statements for each Opioid Product You have distributed.

**RESPONSE:**

5

**Request No. 5.**    All committee, departmental and/or Board of Directors meeting minutes, agendas, handouts, and attendance logs, including all draft versions of the same, relating to the marketing, sale, distribution, franchises, safety, efficacy, reimbursement, or diversion of Opioids or Opioid Products

**RESPONSE:**


**Request No. 6.**    Your marketing plans, business plans or strategic plans both nationally and by state and region for all Your business segments including but not limited to AmerisourceBergen Specialty Group, AmerisourceBergen Drug Corporation and Pharmaceutical Distribution Services, from 1990 to present, including any marketing or business plans relating to Opioids or Opioid Products.

**RESPONSE:**


**Request No. 7.**    All Documents concerning training of Your agents, employees or contractors (including but not limited to Your marketing and sales personnel) for all Your business segments including but not limited to AmerisourceBergen Specialty Group, AmerisourceBergen Drug Corporation and Pharmaceutical Distribution Services business segments, including but not limited to: (a) training manuals outlining the identification and reporting of evidence concerning abuse, Suspicious Orders, or potential criminal activity and any measures You take regarding prevention of diversion, abuse or misuse of Opioid Products; (b) management training manuals instructing

managers or trainers on how to provide such training; (c) job descriptions for each marketing or sales position related to Your Opioid Products, including any officer(s) and vice presidents in charge of sales.

**RESPONSE:**

**Request No. 8.**     All Documents regarding the role of Your sales or marketing departments or any other departments with respect to Suspicious Orders from 1990 to present, including (a) whether persons responsible for overseeing, monitoring or reporting Suspicious Orders report, directly or indirectly, to persons in the sales or marketing departments; and (b) the role or authority of Your sales or marketing departments in the hiring, firing, promotion, compensation, demotion, admonition, discipline, commendation, or periodic performance reviews of persons responsible for overseeing, monitoring or reporting Suspicious Orders.

**RESPONSE:**

**Request No. 9.**     All marketing and/or other Documents from 1990 to the present provided to Customers relating to the distribution of Opioids or Opioid Products and/or the provision of services or solutions including but not limited to data analytics, outcomes research, reimbursement and pharmaceutical consulting services, niche logistics services, inventory management, pharmacy automation, pharmacy management, and packaging solutions, assistance with product launches,

promotional/marketing services, product data reporting, logistical support, generic product purchasing/private label services, hospital/pharmacy consulting to improve operation efficiencies, and packaging solutions, outcome research, contract field staffing, patent assistance and copay programs, adherence programs, risk mitigation services.

**RESPONSE:**


**Request No. 10.** All Documents provided to any Customer regarding Opioids or Opioid Products whether created by You, received by You, or used or distributed by You from 1990 to present, regarding the safety, efficacy or risk of Opioids or Opioid Products or prevention of diversion, abuse or misuse of Opioids or Opioid Products. This should include but not be limited to education and educational materials provided by industry organizations like Healthcare Distribution Alliance or Healthcare Distribution Management Association or distributed to You at any DEA Conference (such as DEA's Pharmaceutical Industry Conference).

**RESPONSE:**


**Request No. 11.** All Documents regarding Your agreements with, membership in, attendance, participation, or involvement in any meeting, council, committee, task force, or working group of any industry trade group or association about the manufacture, development, formulation, marketing, advertising, sale, reimbursement, pricing,

distribution, Quotas or diversion of Opioids or an Opioid Product or laws, rules or regulations or proposed laws, rules or regulations applying to Opioids or Opioid Products, including but not limited to:

    a.     Healthcare Distribution Management Association (HDMA);

    b.     Healthcare Distribution Alliance (HDA);

    c.     Pain Care Forum (PCF);

    d.     National Association of Chain Drug Stores (NACDS); and

    e.     Pharmaceutical Research and Manufacturers of America (PhRMA).

**RESPONSE:**


## II.    Quotas and Supply

**Request No. 12.**    All Documents regarding the assessment and establishment of thresholds, needs, Quotas, or rescheduling[1] for Opioids or Opioid Products. This should include, but not be limited to, Documents sent or received between You and any governmental entity, Customer, third party, manufacturer of Opioids or Opioid Products, distributor of Opioid or Opioid Products, lobbyist or lobbying entity and any trade association or member or employee thereof, as well as data and analyses prepared in connection with proposed Quotas, such as projected demand estimates, net disposal information, inventories and production cycles.

**RESPONSE:**

---

[1] This is specifically intended to include all Documents regarding the rescheduling of hydrocodone combination products from a Schedule III to a Schedule II drug in 2014, and any actions related to said rescheduling dating back to 1996.

**Request No. 13.**    All Documents related to any thresholds or Controlled Substance limits for each Customer of Your Opioid Products from January 1, 1990 to the present or Communications between You and any Customer regarding thresholds or Controlled Substance Limits, including but not limited to, all Documents, data or analytics generated from or used in Your Controlled Substances Threshold Management Program or any similar program, committee,  or data analytics system.

**RESPONSE:**


**Request No. 14.**    All Documents analyzing, examining or describing the effect that a reduction or failure to increase any Quota, threshold or Controlled Substance Limits for Opioids or an Opioid Product would have on Your business, profits, sales or financial outcome for any year between 1990 and the present.

**RESPONSE:**


   **III.    Interactions with the DEA and Other Government Entities**

**Request No. 15.**    All Documents related to Your DEA registration to distribute Controlled Substances from January 1, 1990 to the present, including all Form DEA-225 and Form DEA-225A applications submitted by You regarding any of Your distribution centers that sold prescription Opioids or Opioid Products from January 1, 1990 to the present, and all Documents regarding any government actions affecting or potentially affecting Your DEA registration to distribute.

10

**RESPONSE:**

**Request No. 16.**    All Documents You sent to or received from any governmental entity, including but not limited to the United States Congress, Food and Drug Administration (FDA), Drug Enforcement Agency (DEA), United States Department of Justice (DOJ), United States Patent Office, United States Government Accountability Office fka General Accounting Office or any state attorney general regarding (a) Opioids or Opioid Products or (b) any government investigation, inquiry, administrative action or criminal proceeding involving Opioids or an Opioid Product from 1990 to the present. This request is intended to include, but not be limited to:

- All Documents related to Suspicious Orders of Controlled Substances and any Suspicious Order or Controlled Substance monitoring programs, including but not limited to Documents regarding Your Suspicious Order Monitoring System or Controlled Substances Monitoring Program;

- All Documents related to the February 7, 2007, December 27, 2007 and September 27, 2006 correspondence sent to You from the United States Drug Enforcement Administration (DEA) related to Suspicious Orders of Controlled Substances and Your response to those DEA Documents;

- All Documents related to "guidance letters" and/or "Dear Registrant" letters sent to You by the DEA related to the distribution of Controlled Substances, the reporting of Suspicious Orders or Suspicious Order monitoring programs;

- All Documents related to the DEA's Distributor Initiative Program, including but not limited to briefings provided by the Diversion Control Division.

- All Documents related to any DEA briefings, Letters of Admonitions (LOA), Orders to Show Cause (OTSC), Immediate Suspension Orders (ISO), Memoranda of Understanding (MOU), Notices of Inspection (NOI) and/or Administrative Inspection Warrants (AIW).

**RESPONSE:**


**Request No. 17.**    All Documents concerning Communications with any legislative or administrative body including efforts to lobby government officials or entities with respect to laws, regulations or administrative actions or determinations concerning Opioids or Opioid Products as well as all Documents and Communications with third parties You employed, worked with or collaborated with respect to those interactions with any legislative, governmental or administrative body or government official(s), including but not limited to Documents concerning lobbying or advocacy related to Opioids or Opioid Products (including Documents evidencing the money spent by You on lobbying or advocacy), statements of work or agreements with those third parties, and any work product You received from those third parties.  Your response should include but is certainly not limited to any such information regarding:

- All Documents related to Communications with Rep. Tom Marino [R-PA] regarding distribution of controlled substances.

- All Documents related to the Ensuring Patient Access and Effective Drug Enforcement Act of 2016 enacted by the 114th United States Congress and signed into law by President Barack Obama on April 19, 2016.

- All Documents regarding Your response to or Communications with the Subcommittee on Oversight and Investigations of the United States House of Representatives Energy and Commerce Committee arising out of the *Letters to Distributors and the DEA Regarding Alleged Pill Dumping in West Virginia* dated May 9, 2017.

**RESPONSE:**


**Request No. 18.**    Transcripts of testimony, as well as any video-taped testimony by any of Your current or former employees, officers or directors, or agents, in any court case, mediation, government investigation, government hearing or arbitration regarding the distribution of Opioids or any Opioid Products, including any exhibits referred to in that testimony.

**RESPONSE:**


### IV.    Data, Internal Controls and Compliance

**Request No. 19.**    All Documents, data, electronic data interchange (EDI) and databases You received, generated, had access to or maintained from 1990 to present regarding sales, distribution or channel data monitoring of Opioids or Opioid Products, including those received, generated or available from any Customer, and/or any EDI

844 (Product Transfer Account Adjustment/Chargeback submission), EDI 849 (chargeback reconciliation), EDI 845 (Contract notification), EDI 850 (purchase order), EDI 852 (Inventory & Sales), EDI 856 (Advanced Ship Notice), EDI 867 (Detailed Sales reconciliation), IMS Health, QuintilesIMS, Iqvia, Pharmaceutical Data Services, Source Healthcare Analytics, NDS Health Information Services, Verispan, Quintiles, SDI Health, ArcLight, Scriptline, ValueCentric, Wolters Kluwer, and/or PRA Health Science, and all of their predecessors or successors in interest (the "Data Vendors") and all agreements between You and any Data Vendor, Customer, or third party providing such data, including any fee-for-service and/or inventory management agreements.  This should include any analysis of that data and all Documents sufficient to show all individuals who had knowledge of, created, received or participated in that analysis and sufficient to show Your ownership interest in any Data Vendor.  This should also include, but is not limited to, all analysis of the supply or shipments into a particular geographic location in relation to the population size and past supply history, diversion or abuse.

**RESPONSE:**


**Request No. 20.**    Any Documents, reports, submission, data, or information that You were required to maintain, deliver, make, or submit for or to the DEA pursuant to 21 U.S.C. § 801 et seq. and 21 C.F.R. § 1301.01 et seq. as well as all drafts of those Documents.

**RESPONSE:**

**Request No. 21.**    All Documents regarding Your establishment and design of a system to detect, investigate and/or address any Suspicious Orders of Opioids or Opioid Products, monitor Controlled Substances (such as Your Controlled Substance Monitoring Program), or detect, investigate and/or address signs of diversion, abuse or misuse of Opioids or Opioid Products.

**RESPONSE:**

**Request No. 22.**    All Documents related to the basis for Your compensation of persons responsible for addressing, overseeing, monitoring or reporting Suspicious Orders or who ran Your Controlled Substances Monitoring Program from 1990 to present, including Documents that evidence whether compensation is based, in whole or part, on levels of sales of Controlled Substances, revenue or profitability and all annual or periodic performance reviews or evaluations of all persons responsible for overseeing, monitoring or reporting Suspicious Orders from 1990 to present, including all metrics or goals used for each review or evaluation, and all Documents regarding each review or evaluation, including any recommendation of adverse employment decisions due to the level of sales of controlled substances.

**RESPONSE:**

15

**Request No. 23.**   All Documents related to Your procedures, policies, protocols, systems, oversight committees, internal controls or instructions to identify, prevent, investigate, report and/or halt potential abuse, diversion, unlawful sales, distribution or transfer of Opioids or Opioid Products, including but not limited to any procedures, policies, protocol, internal controls or instructions from 1990 to present regarding:

   a.  the detection and reporting of Suspicious Orders and/or to maintaining effective controls against diversion of Controlled Substances;

   b.  monitoring sales of controlled substances;

   c.  conducting an analysis of Suspicious Orders prior to completing a sale to determine whether the Controlled Substances are likely to be/being diverted from legitimate channels to illegitimate channels;

   d.  Your Suspicious Order Monitoring System (SOMS) and/or U.S. Pharmaceutical Controlled Substances Monitoring Program ("CSMP") including any metrics, tools, models, workflows, platforms, computer program[s] and/or protocol[s] used or utilized in that program or system;

   e.  defining, discussing, referring or related to criteria used to determine Suspicious Orders such as set forth in 21 C.F.R. § 1301.74(b);

   f.  Customer due diligence to evaluate whether Customers are engaged in excessive and/or Suspicious Purchasing and/or dispensing, including but not limited to, utilization reports, questionnaires, order histories, survey responses, and records of site visits;

   g.  threshold limits of controlled substances and/or the methodology used to establish thresholds and/or threshold limits; and

   h.  Standard Operating Procedures related to the monitoring, investigation, and reporting of Suspicious Orders.

This Request seeks but is not limited to All Documents related to Your procedures, policies, protocols, internal controls or instructions related to compliance with Your duty to:

16

- "maintain effective controls against diversion of prescription opiates into other than legitimate medical, scientific, and industrial channels," 21 U.S.C.A. § 823(b)(1);

- "design and operate a system to disclose to the registrant Suspicious Orders of Controlled Substances," 21 CFR 1301.74(b);

- "inform the Field Division Office of the Administration" of "Suspicious Orders when discovered by the registrant," 21 CFR 1301.74(b);

- address "orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency," 21 CFR 1301.74(b);

- address the shipment, fulfillment, prevention, or the halting of Suspicious Orders;

- act with due diligence regarding the discovery of Suspicious Orders;

- establish a "Know Your Customer" program; and

- conduct any due diligence performed for new customers prior to filling orders of Opioids.

**RESPONSE:**



**Request No. 24.**     All Documents generated by the policies, procedures, protocols and controls described in Request 26 above from 1990 to present.  This includes, but is not limited to, orders, order histories, pharmacy utilization reports, customer Communication, sales representative notes, on site visit summaries, Customer files, due diligence files, "Know Your Customer" questionnaires, survey responses, Documentation of actual or proposed threshold limits and/or controlled substance limits,

records of investigations, Communication with governmental entities, data and data analysis.

**RESPONSE:**


**Request No. 25.**    All Documents concerning any audit, review, investigation or due diligence performed following any indication of Suspicious Orders received by You, including the date of the audit or investigation, the outcome, and any subsequent actions by You, including any restrictions in the supply of Opioid Products as a result of such an audit, review, investigation or due diligence.

**RESPONSE:**


**Request No. 26.**    All Documents relating to the ARCOS database or the data and information derived from the ARCOS database, including, but not limited to, all reports, analysis and/or summaries utilizing data contained in the ARCOS database; all statements, reviews, evaluations and/or comments regarding the value and/or utilization of the ARCOS database; and all policies, procedures and internal controls or instructions regarding ARCOS database reporting.

**RESPONSE:**

**Request No. 27.**    All  Documents  relating  to  the  Ohio  Automated  Rx  Reporting

Systems  (OARRS)  database  or  the  data  and  information  derived  from  the  OARRS

database including but not limited to all reports, analysis and/or summaries utilizing data

contained  in  the  OARRS  database  and  all  statements,  reviews,  evaluations  and/or

comments regarding the value and/or utilization of the OARRS database.

**RESPONSE:**


**Request No. 28.**    All Documents sufficient to show how You track and secure from

receipt to delivery Your Opioid Products, Your interactions with Customers regarding

volume of deliveries or Suspicious Orders, including Documents sufficient to show how

You deliver Opioid Products and any data You provide to any manufacturers regarding

the  distribution  or  delivery  of  Opioid  Products  or  the  volume  of  Opioid  Products

delivered to each Customer.

**RESPONSE:**


**Request No. 29.**    All    Documents    summarizing,    documenting,    or    evidencing

reimbursement  to  any  Customers  for  Opioids  or  Opioid  Products,  including,  but  not

limited  to,  Rebate  Management  System  (RMS)  Letters,  Customer  or  manufacturer

reimbursement, rebates, spot reduction discounts, or chargeback programs and/or fee-

for-service,  inventory  management  or  other  agreements  pertaining  to  any  such

reimbursements,  rebates,  chargebacks,  or  discounts.   This  request  is  intended  to

19

include any and all Documents or information that was provided to any Customer relating to or in exchange for chargebacks or any other type of rebate.

**RESPONSE:**


**Request No. 30.**    All Documents related to the ongoing operational commitments You announced         on         December         7,         2017.         *See* https://www.amerisourcebergen.com/abcnew/newsroom/press-releases/amerisourcebergen-announces-operating-commitments-to-address-opioid-diversion-and-abuse , ("Operating Commitments") including but not limited to:  (a) all Documents regarding the development of the Operating Commitments; (b) all aspects of the Operating Commitments that were considered but not implemented and the reasons why; (c) all committees or task forces assigned to develop and implement the Operating Commitments; (d) all presentations, slide decks, white papers, meeting minutes or briefings regarding the Operating Commitments and all Documents regarding whether any aspect of the Operating Commitments had ever been considered for implementation by You;  and (e) why it was not implemented.  This should include but is not limited to Documents evidencing whether You ever considered implementing these programs or operating commitments prior to December 2017.

**RESPONSE:**

**Request No. 31.**    All Documents relating to Your role, input or contribution, whether direct or indirect, monetary or otherwise, in any marketing, sales, educational or promotional program conducted or created by any of Your Customers relating to Opioid or Opioid Products as well as any Documents that describes any of Your marketing, sales, educational or promotional program relating to Opioids or Opioid Products.

**RESPONSE:**


**Request No. 32**.    Please produce a transactional log or any Document that shows all distributions of prescription Opioids or Opioid Products for Summit and Cuyahoga Counties and the City of Cleveland separately from January 1, 1990 to present.  This transactional log or other Document should include the following fields of information and be provided in a format that is readily searchable:

       a.  Reporter DEA Number
       b.  Reporter Business Activity Description
       c.  Reporter Name
       d.  Reporter Address
       e.  Reporter City
       f.  Reporter State
       g.  Reporter Zip
       h.  Reporter County
       i.  Buyer DEA Number
       j.  Buyer Business Activity Description
       k.  Buyer Name
       l.  Buyer Address
       m. Buyer City
       n.  Buyer State (Ohio)
       o.  Buyer Zip Code
       p.  Buyer County
       q.  Transaction Code
       r.  Drug Code (oxycodone(9143), hydrocodone (9193), hydromorphone(9150), and fentanyl (9801))

21

    s.  NDC Number
    t.   Drug Name
    u.  Drug Quantity
    v.  Unit
    w.  Action Indicator
    x.  Order Form Number
    y.  Correction Number
    z.  Strength
    aa. Transaction Date (mmddyyyy)
    bb. Calculated Base Weigh in Grams (Weight of Drug)
    cc. Dosage Unit
    dd. Transaction ID

**RESPONSE:**

**Request No. 33.**     Produce all Documents related to any and all Suspicious Orders that were identified by You or any system You employ related to orders for Opioid or Opioid Products from January 1, 1990 to present for Summit and Cuyahoga Counties and the City of Cleveland.  This request includes but is not limited to all Documents related to due diligence regarding each Suspicious Order, the results of the due diligence, any reporting that was done to the DEA related to the Suspicious Order, any Documents or Communications regarding the decision not to report to the DEA, and any Documents that indicate whether the order was shipped or not.

**RESPONSE:**

**Request No. 34.**     Please produce all Documents to and/or from the DEA related to You consenting or objecting to the disclosure of ARCOS data to a third-party arising out of a FOIA request or otherwise.  This request includes but is not limited to all responses

to notices provided under 28 C.F.R. §16.8(e) and Your detailed written statement that specifies all grounds for withholding the particular information. *Also see Madel v. U.S. Dep't of Justice*, 784 F.3d 448 (8th Cir. 2015).

**RESPONSE:**

**Request No. 35.**    Please produce any and all Documents related to the DEA's release of ARCOS data to the West Virginia Attorney General including but not limited to correspondence with the federal government and any compact or agreement with any governmental entity related to the future release of ARCOS data.

**RESPONSE:**

Dated:  April 26, 2018

s/Peter H. Weinberger
Peter H. Weinberger (0022076)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
*pweinberger@spanglaw.com*
Plaintiffs' Co-Liaison Counsel

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 26th day of April 2018, the foregoing has been served via email only to the following defense liaison counsel:

Mark Cheffo, Esq.
Quinn Emanuel
51 Madison Avenue
New York, NY  10010
markcheffo@quinnemanuel.com

Carol Rendon, Esq.
Baker Hostetler
Key Tower, 127 Public Square
Cleveland, OH  44114
crendon@bakerlaw.com

Enu Mainigi, Esq.
Williams & Connolly
725 Twelfth Street, NW.
Washington, DC  20005
emainigi@wc.com

Shannon McClure, Esq.
ReedSmith
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA  19103
smcclure@reedsmith.com

Geoffrey E. Hobart, Esq.
Covington & Burling
One CityCenter
850 Tenth Street, NW.
Washington, DC  20001
ghobart@cov.com

Kaspar Stoffelmayr, Esq.
Bartlit Beck
54 West Hubbard Street, Ste 300
Chicago, IL  60654
Kaspar.stoffelmayr@bartlit-beck.com

Tina Tabacchi, Esq.
Jones Day
77 West Wacker Drive
Chicago, IL  60601
tmtabacchi@jonesday.com

Tyler Tarney, Esq.
Gordon & Rees
41 S. High Street, Suite 2495
Columbus, OH  43215
ttarney@grsm.com

s/Peter H. Weinberger
Peter H. Weinberger
Plaintiffs' Co-Liaison Counsel
