**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) ) | **MDL No. 2804** |
| | ) | |
| **This document relates to:** *All Cases* | ) ) | **JUDGE DAN AARON POLSTER** |
| | ) ) | **Case No. 1:17-md-2804** |
| | ) | |

## PLAINTIFFS' REPLY TO AMERISOURCEBERGEN'S SUPPLEMENTAL RESPONSE PURSUANT TO THE COURT'S JUNE 17, 2020 ORDER (DOC. NO. 3343)

The Court ordered ABDC to provide a supplemental response regarding the 110 sample documents previously submitted by Plaintiffs.  The answers from ABDC's 7/1/2020 supplemental response (Doc. No. 3365) ("ABDC Supp. Resp.") add-up to the following:

– **110 of 110** documents were created prior to the close of CT1 discovery.

– **110 of 110** documents were produced in the MDL after the resolution of CT1.

– **103 of 110** documents included agreed search terms.

– **109 of 110** documents were in the custodial file of a witness deposed in CT1.

According to ABDC, 102 of the 110 sample documents included CT1 search terms *and* were within CT1 deponent custodial files,[1] but were not produced until *after* CT1.[2]  Plaintiffs Exhibit "A" charts ABDC's supplemental responses for each of the 110 sample documents, together with Plaintiffs' responses thereto (furthest right column).

---

[1] ABDC Supp. Resp. at p. 4, fn 5 & p. 78 (ABDC states that "Plaintiffs' Motion Document Nos. 1, 3; Plaintiffs' Reply Document Nos. 32, 33, 34, 84" did not include agreed CT1 search terms, and ABDC states that "Plaintiffs' Reply Document No. 70" was not within a CT1 custodial file).

[2] *Id.* at pp. 8-101.  This number should be 103 of 110.  Plaintiffs' Reply Document No. 70 is an email from a CT1 deponent (Bruce Gundy) to 5 ABDC employees, 3 of which are also CT1 deponents (Chris Zimmerman, Steve Mays, Edward Hazewski).  Moreover, at some point these 103 sample documents, by definition, were responsive and collected by ABDC for production to Plaintiffs *during* CT1.

## Plaintiffs' Response to ABDC's "Executive Summary"

ABDC's Supp. Resp. contains an "Executive Summary" which sets-forth 7 categories of alleged bases for why ABDC did not produce the 110 sample documents in CT1.[3]  ABDC does *not* submit that a computer glitch, vendor error, or similar problem, was a basis for its post-CT1 production of any of these 110 documents.  Plaintiffs hereby respond to ABDC's assertions in the 7 "Executive Summary" categories.  Please note that all documents within categories 1, 2, 3, 4, 6 & 7 (103 documents) hit agreed search terms and were within the custodial file of a CT1 deponent.[4]

### 1.    "Documents Erroneously Not Produced"

ABDC states that 28 of the sample late-produced documents "with the benefit of hindsight, were erroneously not produced during Track One".[5]  ABDC does not state what it learned since CT1, and does not provide a reason for omission of these documents from its CT1 production.

### 2.    Documents Incorrectly Designated/Maintained as Privileged

As its reason for not timely producing 27 of the sample documents, ABDC states that it withdrew/downgraded privilege on the documents and produced them *after* CT1.  It did this because "ABDC's privilege analysis was informed by the general principals regarding privilege reflected in the Court's and Special Master's rulings during Track One."[6]  There are two problems with ABDC's answer.  First, the Court's and Special Master's privilege rulings and directives were made *during* CT1.[7]  ABDC's privilege analysis was fully informed 6+ months prior to the

---

[3] ABDC Supp. Resp. at pp. 2-7.  (ABDC claims that, of the 110 sample documents: 28 were "erroneously not produced", 27 were previously "withheld as privileged", 23 were "exact duplicates, near duplicates or substantially similar", 17 were "not responsive" to discovery, 7 did not contain CT1 search terms, 6 were Category Two, and 2 were "created after the May 29, 2018 discovery cut-off").

[4] Category No. 5 ("Search Terms") covers 7 documents which did not hit agreed search terms.

[5] *Id*. at p. 7.  *See also* 6/17/2020 Order (Doc. No. 3343) at p. 4 ("whether the document falls within Category One, and if not, why not;" and "why the document was not produced in Track One").

[6] *Id.* at p. 6.

[7] *See e.g.*, 11/21/2018 Order (Doc. No. 1147), at p. 1, ¶ 1 ("Defendants shall not interpose attorney-client privilege as a reason for not producing discovery of all details of their SOMS."); 12/6/2018 Discovery

resolution of CT1, and ABDC should not have maintained privilege over (and failed to produce) these documents through CT1.  ABDC's post-CT1 production of these documents are "delinquent privilege downgrades".

Second, many of the 27 documents should not have been designated as privileged in the first place.  The 27 documents include communications: a) with third parties, b) without any attorney involvement, c) without legal advice being sought or provided, and/or d) which provide details of ABDC's SOMS.[8]  Thus, while all 27 documents identified by ABDC are "delinquent privilege downgrades", many are also "invalid original privilege designations", and are identified as such on Plaintiffs' attached chart.

### 3.    "Exact Duplicate, Near Duplicate, and Substantially Similar Documents"

ABDC states it "has identified 23 documents for which an exact duplicate document, a near duplicate document, or a substantially similar document was produced during Track One discovery."[9]  Notably, only 2 of the 23 documents are "exact duplicates" (which are allowed to be removed from production *if* the producing party engages in "de-duplication").[10]  The 21 late-produced "near duplicate" and "substantially similar" documents contain significant distinctions from documents produced in CT1, and they were not allowed to be removed from production.[11]

---

Teleconference Transcript at 22:5-10 (Special Master Cohen: "construe attorney-client privilege extremely narrowly if it has anything to do with suspicious order reports, suspicious order monitoring or due diligence"); 1/10/2019 Status Conference Transcript at p. 5:20-24 ("And I again want to emphasize I don't want to see any overdesignation of privilege documents because if I -- if I see that, I'm going to have to impose sanctions.  Special Master Cohen has power to impose them.  And if he doesn't, I'll have to.").  *See also*, Discovery Ruling No. 14, Parts 1 through 9 (Doc. Nos. 1321, 1353, 1359, 1380, 1387, 1395, 1498, 1593, 1610, & 1666).

[8] *See e.g.*, Plaintiffs' Motion Document No. 7 (no attorney, no legal advice); Plaintiffs' Reply Document Nos. 2 (no attorney on various emails, no legal advice), 18 (no legal advice), 70 (details of ABDC's SOMS, no legal advice), 76 (third party involvement, no attorney).

[9] ABDC Supp. Resp. at p. 6 (Doc. No. 3365).

[10] The 2 duplicates are Doc. Nos. 27-28.  ABDC's Supp. Resp. does not state or indicate whether it engaged in any de-duplication.  Thus, it is still unknown why the 2 exact duplicates were not produced in CT1.

[11] The non-duplicates are: Reply Doc. Nos. 4, 21, 24, 29, 31, 36, 41-43, 52, 65, 66-69, 73, 75, 82-83, 85, 100.

CMO No. 3 *prohibits* parties from de-duping unless the document is a "bit-for-bit" exact duplicate.  Any removal of the 21 "near duplicates" and "substantially similar documents," was expressly prohibited by CMO No. 3.[12]  While ABDC glosses over these distinctions, there are good reasons why CMO No. 3 prohibits this very conduct.[13]  Attached hereto is a separate chart (Ex. B) listing each of these 23 documents, providing ABDC's claim (verbatim), and Plaintiffs' response detailing the distinctions and/or relevant facts which mandated production in CT1.

### 4.    Responsiveness to Plaintiffs' Discovery Requests

ABDC claims its "analysis of Plaintiffs' selected list of 110 documents identified 17 documents that were not responsive to Plaintiffs' Requests for Production ("RFPs"), and thus were not produced during Track One discovery."[14]  However, all 17 documents are responsive to one or more of Plaintiffs' RFPs propounded to ABDC.[15]  Attached hereto is a separate chart (Ex. C) listing for each of these 17 documents: a) ABDC's claim (verbatim), b) a description of the document and its content, and c) the primary RFP (verbatim) to which the document is responsive.

---

[12] *See* 5/15/2018 CMO No. 3 Regarding Document and ESI Production Protocol (Doc. No. 443), at pp. 6-7, ¶¶ 5.a., 5.b. & 5.d. ("To the extent exact duplicate documents reside within a Party's ESI data set, the Party shall produce only a single, deduplicated copy of a responsive document. 'Exact duplicate' shall mean bit-for-bit identity of the document content with exact hash value matches; ***so-called 'near duplicates' will not be included within this definition***. . . . To the extent a party de-duplicates its documents, it shall de-duplicate stand-alone documents or entire document families in their ESI sources by the use of MD5, SHA-1, or SHA256 hash values. Where any such documents have attachments, ***hash values must be identical for both the document plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone***. . . . No Party shall identify and/or eliminate duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.").  (Emphasis added).

[13] One missing email in a chain can be very significant; knowing *all* custodians can be very valuable; seemingly benign emails can be important for context and/or to know who else received an attachment.  For example, ABDC failed to produce the family for Doc. Nos. 82-83, for which deponent Chris Zimmerman is a custodian. The document that ABDC suggests is a duplicate is instead a standalone attachment in the custodial files of Ed Hazewski and omits the accompanying parent email, in which Chris Zimmerman is copied. As a result, Plaintiffs did not have the opportunity to question Zimmerman about this document.

[14] ABDC Supp. Resp. at p. 4.

[15] *See* Exhibits C & E to ABDC's Supp. Resp. (Plaintiffs' 4/26/2018 Requests for Production of Documents to ABDC, and Plaintiffs' 7/1/2018 (First) Combined Discovery Requests to Distributor Defendants, respectively).

### 5.    Search Terms

ABDC states that 7 documents did not hit the agreed Track One search terms. Plaintiffs agree.

### 6.    Alleged "Category Two" Documents

ABDC chose not to produce 6 of the sample documents, each of which is an e-mail, because the e-mails were purportedly "Category Two" documents.  First, custodial e-mail was not a subject of the geographic scope limitations addressed by Category Two (which "related to decentralized, customer-specific materials, such as sales call notes and transactional data.")  *See* DR-2 (Doc. No. 693); *see also* DR-3 at pp. 2-3 (Doc. No. 762).  Custodial email is centralized.  Second, each of the 6 documents involves a *national* Category One subject, as defined in DR-2.  The Category One topic applicable to each of the 6 documents is specified in Plaintiffs' chart (Ex. A).

### 7.    Documents Created After May 29, 2018

ABDC chose to not produce 2 of the sample documents because they were "created after the May 29, 2018 discovery cut-off as set forth in ABDC's Responses and Objections to Plaintiffs First Set of Requests for Production of Documents".[16]  However, ABDC's self-created discovery cut-off did not allow it to ignore the Federal Rules of Civil Procedure and the duty to supplement. Moreover, *the Court's* discovery cut-off was, at the earliest, October 25, 2018.[17]  Finally, the importance of these documents further show why they should have been produced during CT1.[18]

Dated: July 10, 2020

---

[16] ABDC Supp. Resp. at p. 3.  *See also*, Ex. B to ABDC's Supp. Resp. at p. 4, ¶ 4 ("ABDC will produce documents and information from January 1, 2013 to the date of this [5/29/18] Response.").

[17] Case Management Order No. 7 (Doc. No. 876).

[18] Plaintiffs' Reply Document No. 6 is an October 10, 2018 email to multiple CT1 custodians (Guerreiro, May, Hartman) forwarding, describing, and commenting upon Plaintiffs' Reply Document No. 7, which is a report compiled by CT1 custodian, Marcelino Guerreiro, and "identifies Order of Interest statistics by Associate for the past two years including action taken".  Moreover, these documents were created almost 6 months prior to Mr. Guerreiro's April 3, 2019 deposition.

Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

/s/Joseph F. Rice
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

/s/ Paul T. Farrell, Jr.
Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth St., 3rd Floor
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*


/s/Peter H. Weinberger
Peter H. Weinberger
SPANGENBERG SHIBLEY &
LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

6

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 10th day of July, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

/s/Peter H. Weinberger
Peter H. Weinberger

*Plaintiffs' Liaison Counsel*