**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*All Cases* | MDL NO. 2804<br><br>Civ. No. 1:17-md-02804-DAP<br><br>HON. JUDGE DAN A. POLSTER |

**AMERISOURCEBERGEN DRUG CORPORATION'S
SUPPLEMENTAL SUR-REPLY IN FURTHER OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS**

AmerisourceBergen Drug Corporation ("ABDC") respectfully files this Supplemental Sur-Reply in Further Opposition to Plaintiffs' Motion to Compel and for Sanctions to respond to new factual assertions and arguments raised in Plaintiffs' Reply to ABDC's Supplemental Response Pursuant to the Court's June 17, 2020 Order ("Plaintiffs' Supplemental Reply") (ECF No. 3376).

**I.   INTRODUCTION**

The matter before this Court is a request for sanctions, which may be imposed only when there has been willful or bad faith conduct by the party against whom sanctions are sought and prejudice to the party seeking sanctions. Sanctions are not warranted here. ABDC submits this Sur-Reply to respond to new factual allegations and arguments, and to briefly explain why Plaintiffs' Supplemental Reply *confirms* that sanctions are not warranted under the controlling legal standards.

Plaintiffs originally asserted that ABDC "wrongfully withheld 'Category One Discovery' documents until after resolution of the first bellwether trial," pointing to ten such documents they claimed were wrongfully withheld during Track One. Motion at 1. Over the ensuing weeks and in their two additional submissions, Plaintiffs repeatedly have shifted the narrative. When it

became apparent that they could not establish sanctionable conduct based on the ten documents cited in their Motion, Plaintiffs tried to pile on by identifying an additional 100 produced documents in their Reply (falsely claiming that all 100 hit the search terms), and amped up their allegations to accuse ABDC of "consciously culling" documents.  Then, when ABDC's Supplemental Response explained, for example, that many of these additional documents were not hidden—they were, in fact, identified and logged as privileged during Track One—Plaintiffs shifted the narrative again, lobbing in a brand new accusation of over-designation.  Plaintiffs also raised, for the very first time, new and unfounded arguments about the scope of Track One discovery.

Although Plaintiffs' sanctions request has been a moving target, three things have not changed:  the legal standard for the imposition of sanctions; Plaintiffs' outright refusal to engage on that legal standard; and the absence of any evidence meeting that legal standard.  Simply put, Plaintiffs' Motion and other supporting papers do not reflect an exercise in applying *sanctions* law to the facts.  Instead, it is an effort to weaponize what are, at most, routine discovery disagreements—years after the fact, applying Plaintiffs' own subjective, post hoc standards.  In the end, Plaintiffs are asking this Court to impose extreme relief without any showing of an entitlement to it.

**II.    ARGUMENT**

Tellingly, Plaintiffs have never acknowledged—but cannot dispute—the relevant legal test for imposition of sanctions.  The Sixth Circuit has identified four factors:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Doe v. Lexington-Fayette Urban Cnty. Gov.*, 407 F.3d 755, 765-66 (6th Cir. 2005).  All four factors are relevant and important.  And, here, all four factors counsel *against* the imposition of sanctions.

Because there is no dispute that the third and fourth factors cannot be satisfied, ABDC focuses its analysis on the first two.  First, the record—including ABDC's Supplemental Response and Plaintiffs' Supplemental Reply—shows that ABDC has *not* engaged in any willful, bad faith conduct.  And second, the record is entirely devoid of *any* evidence of prejudice to Plaintiffs.

> A. **The Supplemental Submissions Confirm that ABDC Did Not Act Willfully or in Bad Faith**

The Court asked ABDC to provide certain information about each of the 110 documents Plaintiffs identified, including *why* the document was not produced during Track One.  This inquiry goes to the heart of the first factor.  ABDC's responses to the Court's question, and Plaintiffs' Reply, highlight the complete lack of evidence of any willfulness or bad faith.

***Documents Withheld as Privileged.***  ABDC's Supplemental Response demonstrated that for 27 documents—a full quarter of the 110 documents identified by Plaintiffs—the document (or a duplicate or near duplicate of the document) was identified and logged as privileged during Track One.  The critical point—as it relates to the sanctions inquiry—is that these documents were *not* "consciously culled" or hidden from Plaintiffs.  Instead, ABDC told Plaintiffs about the documents by listing them on a privilege log that was produced to Plaintiffs.  Plaintiffs could, and routinely did, challenge ABDC's (and other Defendants') privilege designations.

In their Supplemental Reply, Plaintiffs shift their sanctions theory in a scrambling effort to respond to this point, arguing that the documents should not have been designated as privileged in the first instance, or that it took too long for ABDC to withdraw its privilege designations.  This is a red herring—the propriety of ABDC's privilege designations is not the issue.  The privilege issues presented in this developing litigation have been deeply complex—involving the intersection of legal, regulatory, and business functions related to the distribution of controlled substances, all in the context of bare-bones regulatory guidance *and* already ongoing civil litigation

about this very topic. And these issues often were litigated by other Defendants, with rulings not directly applicable to ABDC and based on different factual records.

ABDC stands by its original privilege designations as good faith efforts to protect its privileged information. But it also must be emphasized that ABDC de-designated and/or subsequently produced all of these documents. ABDC did this both unilaterally and as part of a cooperative process initiated by Plaintiffs and encouraged by the Special Master that began almost immediately after the settlement of the Track One trial. These negotiations were amicable and cooperative, as Plaintiffs' counsel agreed on several occasions. Neither ABDC's initial privilege designations nor the timing of the de-designations amounts to willful, bad faith conduct.

*Near Duplicate Documents.* ABDC's Supplemental Response identified 23 documents for which a duplicate, near duplicate, or substantially similar document was produced. Plaintiffs' Reply takes a hyper-technical approach, arguing that these near duplicate documents did not satisfy the terms of the relevant case management orders. This too misses the point. The issue here is whether there is evidence supporting the imposition of sanctions under the relevant legal standard. The production of a near duplicate document is highly probative of the lack of willful, bad faith conduct because it directly undercuts Plaintiffs' conspiracy theory that ABDC was intentionally holding back documents due to the *contents and substance* of those documents.

*Category 2 Documents.* Plaintiffs' Motion purported to focus specifically on Category 1 documents, but ABDC's Supplemental Response identified six documents that fall within Category 2. These included emails that, on their face, related to specific ABDC customers located in other states, like Michigan and New Jersey. Plaintiffs Supplemental Reply argued—for the first time—that *all* custodial emails were, by definition, Category 1. This position is not supported by Discovery Ruling Nos. 2 or 3, or the Parties' negotiations and agreements during discovery.

ABDC's negotiated and agreed-upon search terms for custodial files included a "customer block" search term. This extensive search term—single-spaced and nine pages long when printed—lists the name and unique DEA number of every single ABDC customer *in Summit and Cuyahoga Counties*, which is the scope of Category 2 discovery specified by Discovery Ruling Nos. 2 and 3. Plaintiffs knew and affirmatively agreed to ABDC's application of this "customer block" search term to its custodial emails, and their argument to the contrary is a last-ditch fiction. Regardless, a disagreement about whether any particular document is a Category 1 or Category 2 document amounts only to a garden-variety discovery dispute. It certainly does not evidence willful, bad faith conduct.

*Documents Not Responsive to Plaintiffs' Discovery Requests.* ABDC's Supplemental Response identified 17 documents that were not responsive to Plaintiffs' Requests for Production. Not surprisingly, Plaintiffs disagree with ABDC's assessment of these documents. But, again, the most that Plaintiffs have shown is a post hoc, good faith discovery dispute, not evidence of bad faith conduct.

This is best illustrated by example. Document 59 cited in Plaintiffs' Reply is an email chain related to a "prepaid envelope that is sold by the pharmacy to the end consumer" that allows the end consumer (i.e., the patient) to return unused product to a pharmacy. Document 59 states that ABDC does not sell this product to its pharmacy customers. In their Supplemental Reply, Plaintiffs contend this email chain is responsive to their RFP No. 28:

> All Documents sufficient to show how You track and secure from receipt to delivery Your Opioid Products, Your interactions with Customers regarding volume of deliveries or Suspicious Orders, including Documents sufficient to show how You deliver Opioid Products and any data You provide to any manufacturers regarding the distribution or delivery of Opioid Products or the volume of Opioid Products delivered to each Customer.

The product described in Document 59—which both is not an "Opioid Product" and is not sold by

ABDC—has nothing to do with ABDC's delivery of opioid products to any customer, suspicious order reporting, data provided to manufacturers, or the volume of opioid products delivered. This document, on its face, is not responsive. Plaintiffs may disagree, but that disagreement does not justify the imposition of sanctions.[1] And while others of the 17 documents may be closer calls, the key points are these: parties routinely disagree over whether a given document is responsive, and good faith discovery disputes are not grounds for sanctions.

***Documents that Did Not Hit Search Terms or Postdate the Discovery Cut-Off.*** Plaintiffs admit, as they must, that seven of their 110 documents do not hit the negotiated, agreed-upon search terms. This includes five documents cited in their Reply, in which Plaintiffs falsely attested that all 100 documents "were trigged by one or more CT1 search terms." Plaintiffs' Reply at 1. This is notable for two reasons. First, ABDC already had pointed out that two of Plaintiffs' original ten documents did not hit the search terms. And second, whether a document hits the search terms is not a matter of degree or interpretation: it is an objective fact. Accusations of the nature Plaintiffs have made here deserve more careful attention. And Plaintiffs' mistakes are especially telling: this is not a random sampling of documents, but instead Plaintiffs' cherry-picked collection of documents presumably chosen to make their strongest case.

Likewise, Plaintiffs now complain about the May 29, 2018 discovery cut-off imposed in ABDC's responses to Plaintiffs' discovery requests (which were themselves served on May 29, 2018). But, once again, this post hoc complaint has nothing to do with the sanctions inquiry—far

---

[1] To provide two more examples: Document 3 cited in Plaintiffs' Reply is a solicitation email from a third party for a product that ABDC does not, and has never, used. This document is not responsive to Plaintiffs' RFP No. 31, which seeks information about ABDC's establishment and design of its own SOM program. Likewise, Document 9 cited in Plaintiffs' Reply is a job description for Sharon Hartman, a member of ABDC's diversion control team. This document is not responsive to Plaintiffs' RFP No. 8, which relates to the sales and marketing departments. Ms. Hartman does not work, and has never worked, with sales or marketing, and neither sales not marketing has ever had the authority to hire, fire, promote, compensate, demote, admonish, discipline, commend, or provide performance reviews for her.

from it. ABDC explicitly established that cut-off more than two years ago; Plaintiffs never objected. And the duty to supplement, referenced by Plaintiffs, did not operate to extend that existing discovery cut-off; it merely required production of newly discovered materials that would have been responsive in the first instance. In short, the timing of the production of these documents is not evidence of any bad faith or willful conduct. It is evidence of the discovery process functioning as agreed to and intended.

### B. The Supplemental Submissions Provide No Evidence of Prejudice

Equally important to the sanctions inquiry is the prejudice—or lack thereof—to the moving party. Plaintiffs have made no effort to establish—or even explain—how they have been prejudiced. Indeed, and incredibly, the word "prejudice" is not used even once in *any* of Plaintiffs' papers—despite the fact that ABDC has pointed out the lack of prejudice at every turn, and despite the law that places the burden to show prejudice squarely on the Plaintiffs. In light of Plaintiffs' wholesale failure, ABDC will briefly emphasize three additional points related to prejudice.

First, to the extent there was a legitimate basis for ABDC to *not* produce any of the 110 documents during Track One, there is plainly no prejudice, and it was reckless to suggest otherwise. To give an example, Plaintiffs cannot argue they were prejudiced by the fact that ABDC did not produce documents that did not hit on the Track One search terms. The parties negotiated and agreed on the search terms, and ABDC's compliance with that agreement is per se not prejudicial to Plaintiffs. This is likewise true for those documents that were created after the discovery cut-off, documents that were not responsive to Plaintiffs' discovery requests, documents that were Category 2 documents and outside the scope of Track One discovery, and documents that were logged as privileged.

Second, the production of duplicate and near duplicate documents is highly relevant to the prejudice analysis because that shows that Plaintiffs had access to nearly identical or substantially

similar documents during Track One.  In other words, Plaintiffs had all the information.  Where Plaintiffs used those documents (in a deposition, for example), they cannot claim prejudice.  And the instances where they chose not to use the document even further undercut any suggestion of prejudice, because Plaintiffs had the opportunity to use the documents but apparently concluded the topics covered in them were not important enough for examination.

Finally, and as noted, Plaintiffs still have not explained how specifically they were prejudiced.  This is because they cannot.  It bears emphasis that Plaintiffs have all the documents at issue, and have had them for many months.  And yet, the only thing they have done with the documents is file this Motion.  The most they muster is a vague implication that they might have used some of these documents as exhibits during Track One depositions.  But Track One has concluded, and it concluded via settlement before trial.  While Track One may have been the first case, it is far from the only case.  To the extent Plaintiffs want to use these documents in *active litigation*, they can do so.  This is not prejudice, and Plaintiffs do not need a sanctions ruling to make use of these documents in other pending cases.

### III.  CONCLUSION

For the reasons set forth above, and in ABDC's Opposition Brief (ECF No. 3322), Sur-Reply (ECF No. 3342), and Supplemental Response (ECF No. 3365), and specifically because the factual record and the relevant legal standard does not support the imposition of sanctions, ABDC respectfully requests that Plaintiffs' Motion to Compel and for Sanctions be denied.

Dated:  July 13, 2020                             Respectfully submitted,

                                                  */s/ Robert A. Nicholas*
                                                  Robert A. Nicholas
                                                  Shannon E. McClure
                                                  REED SMITH LLP
                                                  Three Logan Square
                                                  1717 Arch Street, Suite 3100
                                                  Philadelphia, PA 19103

- 9 -

        Tel: (215) 851-8100
        Fax: (215) 851-1420
        rnicholas@reedsmith.com
        smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*