IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*THIS DOCUMENT RELATES TO:*<br><br>*County of Lake, Ohio v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45032 (N.D. Ohio)<br><br>*The County of Trumbull, Ohio v. Purdue Pharma L.P., et al.*<br>Case No. 18-op-45079 (N.D. Ohio)<br><br>"Track Three Cases" | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

## NON-PARTY STATE OF OHIO BOARD OF PHARMACY'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL

**I.  INTRODUCTION**

The Pharmacy Defendants[1] have asked this Court to compel the State of Ohio Board of Pharmacy ("the Board") to produce data from the Ohio Automated Rx Reporting System ("OARRS"). When a patient goes into a pharmacy to fill a prescription for a controlled substance, the pharmacy is required to submit information about that dispensation into the OARRS database – including details about the patient.  For over the last decade, pharmacists around the state have been

---

[1] The Pharmacy Defendants are CVS Rx Services, Inc. CVS Indiana, LLC, CVS Pharmacy Inc. and Ohio CVS Stores, LLC, Rite Aid of Maryland, Inc. Rite Aid Hdqtrs. Corp., Walgreen Co., Walgreen Eastern Co., HBC Service Company, Giant Eagle, Inc., Discount Drug Mart, and Walmart Inc.

1

diligently entering information about their dispensation of controlled substances into OARRS. More than half of all Ohioans are listed as patients in the OARRS database.

This Court should deny the motion to compel for two reasons: (1) the information is privileged under Ohio law and (2) the Pharmacy Defendants already have the information that they need to defend against the counties' claims.

Because of the extreme sensitivity of its contents, the OARRS data is confidential under state law – specifically O.R.C. 4729.80 and 4729.86. The Board is only authorized to release OARRS information for certain reasons.  The statute prohibits the Board from releasing OARRS data that will "identify a person, including any licensee or registrant of the board or other entity[.]" O.R.C. 4729.80(C).  Moreover, the statue statute expressly prohibits the use of OARRS information in civil cases.  Under Fed. R. Evid. 501 and *Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir. 1990), this Court is obligated to apply Ohio confidentiality law because this case is proceeding only under a state law nuisance claim.

In addition, the research extract already provides all of the information the Pharmacy Defendants will need.  They want to identify "doctor shoppers" in a deidentified fashion, they already have all the tools to do so.  They want to identify pharmacists and prescribers who were far outside the bounds of acceptable behavior.   The research extract already allows them to do so.

Simply put, the Board not only had good cause to challenge the subpoena, the Board has binding precedent that mandates that this Court deny the motion to compel.

## II. STATEMENT OF FACTS

***The OARRS Program.***  OARRS records are highly confidential, and the Board tightly controls access.  *See* Acceptable Use Policies at https://www.ohiopmp.gov/Documents.aspx.  The confidentiality and security of data is central to the operation of all prescription drug monitoring

programs ("PDMP"). *See Whalen v. Roe*, 429 U.S. 589, 600-602 (1977) (affirming New York's PDMP in part because of its confidentiality).

OARRS includes a patient database which contains records of all controlled substances and drugs of concern dispensed to outpatients. The patient database has a portal limited only to an authorized user, which is intended to be used by both law enforcement and other statutorily-designated categories of users to ensure compliance with Ohio law. *See* https://www.ohiopmp.gov/. In a typical patient database transaction, a patient presents a prescription for a controlled substance to a licensed pharmacist in the state of Ohio. After dispensing that medication, the pharmacist logs the following information into OARRS pursuant to Ohio Adm. Code 4729:8-3-02:

1. Pharmacy Drug Enforcement Administration registration number
2. Pharmacy name
3. Pharmacy address
4. Pharmacy telephone Number
5. Patient full name
6. Patient residential address
7. Patient telephone number
8. Patient date of birth
9. Patient gender
10. Prescriber's full name (first name and last name)
11. Prescriber's Drug Enforcement Administration registration number
12. Date prescription was issued by the prescriber
13. Date the prescription was dispensed or sold by the pharmacy
14. Indication of whether the prescription dispensed is new or a refill
15. Number of the refill being dispensed
16. National drug code of the drug dispensed
17. Number of refills authorized by the prescriber
18. Quantity of the drug dispensed
19. Number of days' supply of the drug dispensed
20. Serial or prescription number assigned to the prescription order
21. Source of payment for the prescription

3

| | | | |
|---|---|---|---|
| 22. | Pharmacy national provider identification (NPI) number | 24. | ICD-10-CM or CDT diagnosis/procedure code |
| 23. | Prescriber's national provider identification (NPI) number | | |

Access to the patient database is tightly controlled; no one outside of the limited OARRS staff at the Board has unfettered access – not even Board investigators. Limited access to the patient database is granted to pre-approved individuals for specific authorized purposes. *See* O.R.C. 4729.80(A). Access is granted to specific individuals, not offices or roles. For example, an individual police officer or government agent may be granted an OARRS account in his or her own name for use in connection with his or her own investigation of drug abuse. Agencies or departments do not have a "universal" account. Nor may anyone access the database for anything other than in connection with a specific case. And the scope of information OARRS makes available to any account holder is limited to only that information which would be appropriate for them to access. In the case of law enforcement officials, for instance, authorization to access an individual's OARRS data is only granted after entry of a case number and approval for access by their supervisor. *See* Ohio Admin. Code 4729-37-08(B); *State v. Meyers*, 12th Dist. App. No. CA2014-02-002, 2015-Ohio-160, 27 N.E.3d 895, ¶ 13. Even then, the official would only have access to the records necessary to complete that particular investigation.

The same access restrictions are true of any other type of user. Each user's access is limited to only the type of information necessary to perform their official duties. Among those granted access to OARRS are health care professionals who prescribe reportable medications and pharmacists who dispense those medications. Those authorized to access the OARRS database may only do so to the extent necessary. For instance, physicians may only access those records directly related to patients presently under their care or to their own prescribing. O.R.C.

4

4729.80(A)(5).  When the Board discovers abuse or misuse of the database, it both refers violators for criminal prosecution and revokes or restricts access for egregious abuses of the database. Improper access to, or use or distribution of, information contained within the OARRS database can be punishable by a felony.  *See* O.R.C. 4729.99(J); *Meyers*, 27 N.E.3d at 899.

***The Board Provided A "Research Extraction."***  As part of an amicable agreement with McKesson, a defendant that has since settled its case, the Board provided a "research extraction" of the entire OARRS database, which contained dispensations of controlled substances made by Ohio pharmacies dating back to 2008.  Notably, the Pharmacy Defendants also received this research extraction.

The research extraction only included some of the database fields.  And for some of the fields, a randomized "hash" was given to each individual patient, along with separate "hash" fields for prescriber names and pharmacy names.

**III.    This Information Is Confidential Under State Law**

    **A.    This Court Must Apply State Law In Diversity Jurisdiction Cases.**

Under Fed. R. Evid. 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  In reviewing a claim of psychotherapist-client privilege, the Supreme Court noted that "if only a state-law claim had been asserted in federal court, the second sentence in Rule 501 would have extended the privilege to that proceeding."  *Jaffee v. Redmond*, 518 U.S. 1, 15, n.15 (1996).

In diversity jurisdiction cases it is black-letter law in this Circuit that Fed. R. Evid. 501 provides that the existence of confidentiality is "determined in accordance with state, not federal law."  *Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir. 1990).  Applying O.R.C. 2317.12 and Ohio case law, the *Jewell* court concluded that (1) physician-patient privileged

5

applied, (2) had not been waived, and (3) a party could not raise the issue of invocation of patient-client privilege before the jury.  *Id.* at 1513-1514.

"District courts within the Sixth Circuit have applied Rule 501's principle—that is, that state law governs privilege where state law supplies the rule of decision—in a broad spectrum of cases."  *SBAV LP v. Porter Bancorp, Inc.*, 2015 U.S. Dist. LEXIS 41162, at *16 (W.D. Ky. 2015).  Numerous district courts in this Circuit have applied Jewell in diversity cases and evaluated state law confidentiality provisions established in state statutes.  See e.g.s *State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*, 399 F. Supp. 3d 708, 711 (E.D.Mich.2019) (applying marital privilege found in MCL 600.2162(4)); *Babcock & Wilcox Power Generation Group, Inc. v. Cormetech, Inc.*, 81 F. Supp. 3d 632, 640 (N.D.Ohio 2015) (applying mediation communication privilege found in O.R.C. 2710.03); *SBAV LP*, 2015 U.S. Dist. LEXIS 41162, at *16 (W.D. Ky. 2015) (finding that K.R.S. §286.3-470 does not prohibit disclosure of bank examination documents); *Freudeman v. Landing of Canton*, 2010 U.S. Dist. LEXIS 55273, at *7 (N.D. Ohio, 2010) (applying peer-review and physician patient privileges under O.R.C. 2317.02, 2305.252 and 2305.253).

Ohio law "supplies the rule of decision" because the Track Three cases against the Pharmacy Defendants are based on O.R.C. 4729.35 and Ohio common law.  In their second amended complaints, Trumbull and Lake Counties allege that the Pharmacy Defendants have created a "common law absolute public nuisance" under O.R.C. 4729.35 by "marketing, distributing, dispensing, and selling opioids in ways that unreasonably interfere with the public health, welfare, and safety in Plaintiff's community."  *Lake County Second Amended Complaint*, Doc. #19, p. 197, 198 (PageID #1011, 1012); *Trumbull County Second Amended Complaint*, Doc. #13, p. 197, 198 (PageID #639, 640).

6

There are no federal causes of action pending in the Track Three cases.  Both Trumbull and Lake Counties stated in their Second Amended Complaints that, consistent with this Court's order, "only claims against pharmacy defendants for public nuisance will proceed in Track Three[.]" *Lake County Second Amended Complaint,* Doc. #19, p. 1, n.1 (PageID# 822); *Trumbull County Second Amended Complaint,* Doc. #19, p.1, n.1 (PageID# 443).[2]

Pharmacy Defendants rely on three citations to support its claim that state law is irrelevant.  None of them are binding precedent or even purport to overrule the Sixth Circuit's binding precedent found in *Jewell.*  For example, Pharmacy Defendants cite to dicta in *Everitt v. Brezzel,* 750 F.Supp 1063, 1065-1066 (D.Colo. 1990).  That court expressly noted that there was a critical difference between a case premised on federal law and state law.  "In order to determine whether plaintiffs are asking for 'privileged' information, I must first consider whether to look at federal law or state law."  *Id.* at 1066.  The court concluded – unremarkably – that since that lawsuit was premised under 42 U.S.C. §1983 that "the federal common law of privileges will govern." *Id.*

Nor does *Sharon Steel Corp. v. Travelers Indem. Co.,* 26 F.R.D. 113, 116 (N.D. Ohio 1960) compel a different result.  That court was faced with the situation where a state court judge in a "companion" case pending in state court found that some materials were not discoverable as work product.  The court concluded that it would apply the federal rules, not Ohio rules of procedure.  But that is beside the point – the Board agrees that the *federal* rules of evidence apply here: specifically Fed. R. Evid. 501.  The *Jewett* court has conclusively held that in resolving privilege

---

[2] Neither Trumbull nor Lake Counties have expressly invoked federal common law as a basis for their claims.  Notably, this Court rejected such an effort in *Blackfeet Tribe of the Blackfeet Indian Reservation v. AmerisourceBergen Drug Corp.* (In re Natl. Prescription Opiate Litigation), 2019 U.S. Dist. LEXIS 101659, at *95 (N.D. Ohio, Apr. 1, 2019).

issues in discovery, federal courts are required to apply state law privileges when the case is premised on a state law cause of action.

Finally, the Pharmacy Defendants cite to Wright & Miller for the statement that "State law is of very little relevance to discovery in a federal action." Motion at 11 (quoting 8 Wright & Miller [sic], § 2005 (3rd Ed. 2019)). Immediately thereafter Wright & Miller identified two key exceptions, one of which is that "Fed. R. Evid. 501 decrees that, as to issues on which state law provides the rule of decision, state law should determine whether there is a privilege." 8 Wright, Miller & Marcus, § 2005, p. 51, n.6 (3rd Ed. 2018). This case meets one of those exceptions because the Track Three cases brought by Trumbull and Lake counties only involve state-law nuisance claims.

**B.  The Identities of Licensees In The OARRS Database Is Confidential.**

Under O.R.C. 4729.80, the Board is permitted to release information from OARRS only under several specific circumstances. While there is a provision that authorizes the Board to comply with a court order "in connection with the investigation or prosecution of a possible or alleged criminal offense" (O.R.C. 4729.80(A)(4)) and a provision for responding to grand jury subpoenas (O.R.C. 4729.80(A)(3)), there is no such provision for such disclosure in a civil case.

Ohio law regarding the admissibility of OARRS information in civil cases cannot be clearer: "A person shall not use information obtained pursuant to division (A) of section 4729.80 of the Revised Code as evidence in any civil or administrative proceeding." O.R.C. 4729.86(B).

Under O.R.C. 4729.86(A)(1), it is unlawful to improperly disseminate information from the OARRS database except for the limited exceptions listed in O.R.C. 4729.80(A) and (B). Improper disclosure of OARRS data is a criminal offense under O.R.C. 4729.99. There is no grant of immunity nor protection that can be afforded to the Board's Executive Director or Director of

the OARRS database for disclosing OARRS content other than for express purposes set forth in the governing confidentiality statutes.

`The Pharmacy Defendants are asking this Court to order the Board to disclose the names of pharmacies and prescribers. Such an order would flatly contradict an Ohio statute expressly prohibiting the Board from releasing information which will "identify a person, **including any licensee or registrant of the board or other entity**[.]" O.R.C. 4729.80(C) (emphasis added).

The Board licenses Ohio pharmacies. See O.R.C. 4729.01(Q) (definition of terminal distributor of dangerous drugs includes pharmacies) and 4729.54 (terminal distributors must obtain a license). Individuals who prescribe controlled medications are licensed by various entities, including the State of Ohio Medical Board (O.R.C. 4731.09 and 4730.10), the Ohio Board of Nursing (O.R.C. 4723.41), the Ohio State Dental Board (O.R.C. 4715.10), and the Veterinary Medical Licensing Board (O.R.C. 4741.11).

Simply put, the Pharmacy Defendants cannot require the Board to violate Ohio law and disclose OARRS data that will identify state of Ohio licensees. The purposes for which the Board may release information from the database are limited and express. See O.R.C. 4729.80(A). This does not fall under any of the acceptable reasons for disclosure.

**C.       Pharmacy Defendants Are Indirectly Seeking Patient Identities.**

Revealing the unique identifying numbers for each and every pharmacy and prescriber to Pharmacy Defendants would be tantamount to providing the Defendants with the unique identifying numbers of individual patients for well over half of all Ohioans. O.R.C. 4729.80(C) prohibits the release of data from OARRS that can be used to "identify a person" including patients.

It is difficult to understate the breadth of information that is contained in the OARRS database. This is not the medical file for a single patient or even the patient files for every patient who saw a single doctor. Or even every patient who went to a specific hospital. These are the private medical records of over seven million Ohioans – sweeping up the personal matters of both public figures and private individuals, from children to adults in the state. The information would permit the Defendants to unlock millions of people's prescribing history.

The Pharmacy Defendants are not limiting their requests to a specific time frame, or those that prescribed or dispensed to patients from Trumbull and Lake Counties. The research database in the possession of the Pharmacy Defendants is not limited to prescription opioids. Medicines like testosterone cream, Ambien, Xanax and Ritalin are also controlled substances under Ohio and federal law and are wholly included in the data.[3] These drugs are not part of these lawsuits, but the Pharmacy Defendants will receive the keys to unlocking that information as well.

Make no mistake, the Pharmacy Defendants expressly state that they are seeking this information in order to identify "doctor shoppers." Motion at 9. That is, the Pharmacy Defendants are seeking to identify specific patients. (As will be discussed below, the Pharmacy Defendants already have the tools at their disposal to make that determination using existing deidentified data.)

The Pharmacy Defendants here are the biggest pharmacy chains in Northeast Ohio. They have extensive privately-held databases detailing what medications they each have dispensed to

---

[3] The Pharmacy Defendants subpoena in this case also demands all OARRS data about a number of medications. That part of the request is *not* part of this motion to compel. The motion to compel before this Court involves the names and addresses of *all* pharmacies and prescribers in the OARRS database – not just ones that prescribed or dispensed the more limited list of medications found in the subpoena. . Regardless, the Board objects to any order that would require disclosure of all pharmacies and prescribers or those limited to the drug dispensations specified in the subpoena.

10

patients. Providing the Pharmacy Defendants with the identity of all prescribers and pharmacies for each prescription listed in the Research Extraction (which the Defendants already have received) will essentially provide them the identities of countless patients in the OARRS database with only a modicum of reverse engineering.

For example, if Walgreens (one of the Pharmacy Defendants) was supplied with all information for a particular prescription that was filled at a Walgreens pharmacy – the drug prescribed, the date the prescription was written, the date the prescription was filled, quantity, number of refills, prescriber name, and specific pharmacy name and address at which the prescription was filled – Walgreens could locate that particular prescription within its records. Walgreens' records would necessarily include the patient name for the prescription, thus, revealing the identity of that patient. Walgreens would then know the unique identifying number, or hash, used for that patient in the Research Extraction.

Walgreens would have then the ability to search the database for every purchase that patient has ever made at any pharmacy (not just Walgreens) even years before or years after that patient was a Walgreens customer.

But if the data being provided can be used to "identify a person" then it is barred from disclosure by O.R.C. 4729.80(C), even if the Pharmacy Defendants promise that they won't peek behind the curtain.

**IV. The Pharmacy Defendants Already Have The Information To Identify "Doctor Shoppers" and "Pill Mills" in De-Identified Fashion.**

The Pharmacy Defendants insist that they are seeking this information solely to identify pill mills by name and "'doctor shoppers' in a de-identified fashion." Motion at 8. They already have the tools at their disposal necessary to make these determinations.

11

As noted above, the Board has already provided a research extraction. Here is a single entry of the research extraction already in the Pharmacy Defendants' possession:[4]

| | |
|---|---|
| DateFilled | 01/01/2015 |
| RxNumber | 123456 |
| RefillCode | 0 |
| Quantity | 30 |
| DaysSupp | 30 |
| NDC | 54092038101 |
| Drug | ADDERALL XR 5 MG CER |
| TherClassCode | 2820040010 |
| TherClassDesc | Amphetamine & Comb. |
| DateWritten | 01/01/2015 |
| NumOfRefillsAuth | 0 |
| PaymentType | 4 |
| PharmacyHash | 1111AAAAA11AA1111A11AA1AA11AA1111AAAAA |
| PharmacyZip | 445 |
| PharmacyBACCode | A |
| PharmacyBACSubCode | 3 |
| PrescriberHash[5] | 1AA11AA111A1111AA111111AA11A111111AA111A1 |
| PrescriberZip | 445 |
| PrescriberBACCode | C |
| PrescriberBACSubCode | |
| PrescriberSpecialty | Pediatric medicine |
| PatientGroupIDHash | A1A1111A11111A11AAAAAAA1AA11111A11111A11A1 |
| PatientAge | 8 |
| PatientSex | 2 |
| PatientZip | 445 |

---

[4] This is based on an actual prescription. Out of an abundance of caution, counsel has randomized the date the prescription was written and filled, the RX number, the zip code, and for the unique identifiers, changed any numbers to a 1 and any letters to an A. The research extraction provides the first three numbers of a zip code.

[5] In the chart listed on page 4 of the motion, the Pharmacy Defendants state that the Board did not provide patient names, pharmacy names or physician names with an asterisk saying "Unique Patient ID number supplied instead." Motion at 4. This is misleading. The research extraction included unique numbers for pharmacies and prescribers as well.

12

Using the unique "hash" for each patient, the Pharmacy Defendants can sort the entire database by patient. This "hash" will be identical for a specific patient for all transactions in the database. Thus, the Pharmacy Defendants can identify every prescription filled for a specific patient that is stored in OARRS – but the Pharmacy Defendants would not know the name of the patient.

For instance, if the Pharmacy Defendants wanted to identify patients that received prescriptions for Oxycontin 40 mg (an opioid that was particularly abused) from more than five prescribers, they could simply filter the database for entries in the "Drug" field that state Oxycontin 40, then sort the database so that only those patients with at least five different individuals in the "PresciberHash" are listed, allowing Pharmacy Defendants to identify a list of de-identified patients that likely were doctor shoppers.

The Pharmacy Defendants could do the same for the pharmacies and prescribers – again, without knowing their name, as there is a hash assigned to each pharmacy and prescriber in the same manner as that assigned to a patient. So, if the Pharmacy Defendants want to know which pharmacies have the highest number of Oxycontin 40 dispensations, then they can simply sort from the database already in their possession. They could do the same for prescribers. The Pharmacy Defendants will have to rely on the individual "PharmacyHash" and "PrescriberHash" used in the research extractions.

In addition to being able to identify prescribers and pharmacies with a unique hash, the Board annually produces data detailing doctor shopper statistics in its reports. Those documents were requested and produced months ago in response to an earlier subpoena. Those documents are readily available on the Board's website and are a viable alternative should Defendants be

seeking to use information pertaining to doctor shoppers in its case, see for example https://www.ohiopmp.gov/documents/Annual%20Report%20(2018).pdf.

## V. This Information Is Confidential Under Federal Law.

### A. 42 U.S.C. § 290dd-2 Bars Disclosure of Some OARRS records

Supplying Pharmacy Defendants with the tools to discover individual patient information would violate federal law.  An unidentifiable number of records are explicitly precluded from disclosure by federal law.  Among the records contained within OARRS are records of prescriptions for drugs used in the treatment of substance abuse.  For instance, two common drugs used in the treatment of substance abuse are the opioids methadone and suboxone.  Both are opioids and controlled substances monitored by the OARRS database.[6]  Additionally, medical practitioners frequently prescribe other medications, such as benzodiazepines, to assist in substance abuse treatment. *See* S. Nielsen et al, *Concurrent buprenorphine and benzodiazepines use and self-reported opioid toxicity in opioid substitution treatment*, ADDICTION, 102(4):616-22 (2007)(two thirds of those using suboxone for substance abuse treatment report concurrent benzodiazepine use).  Records of substance abuse treatment are confidential and not subject to disclosure except in very limited circumstances, not applicable here, by operation of 42 U.S.C. § 290dd-2.  Violation of this provision is punishable by federal criminal penalties. *See* 42 U.S.C. §290dd-2(f).  Defendants' ability to identify specific patients by utilizing the requested information would lead to Defendants gaining information regarding those patients' prescriptions for drugs used in the treatment of substance abuse.  This is precisely what is prohibited by § 290dd-2.

### B. NASPER Prohibits Disclosure of the Information Contained in the OARRS Database

---

[6] Suboxone (buprenorphine) is a Schedule III controlled substance; Methadone is a Schedule II controlled substance. *See* 21 C.F.R. §§ 1308.12; 1308.13.

Defendants are not entitled to even those records in the database not prohibited from disclosure by § 290dd-2. The millions of people with prescription drug records in OARRS have a right to privacy in that information. *See Whalen v. Roe*, 429 U.S. 589 (1977); *Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005). *See also Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 928-29 (7th Cir. 2004). The Board has access to this information only because it is fulfilling the important governmental purpose of monitoring the flow of dangerous drugs within Ohio's borders. To provide access to identified patient information, whether directly or indirectly as Defendants are currently requesting, in connection with a civil suit for monetary damages would be a gross violation of the privacy rights of millions of people and would interfere with the Board's and other law enforcement agencies' efforts to combat the opioid crisis. This Court should deny Defendants' motion to compel because the OARRS database is confidential by law. But even if the federal and Ohio statutes protecting the confidentiality of the OARRS database are insufficient to warrant protection here, this Court should find that the information contained within the database is privileged within the meaning of Rule 501.

In order to receive federal funding under the National All Schedules Prescription Electronic Reporting ("NASPER") Act, Ohio had to enact its confidentiality laws. Accordingly, Ohio's confidentiality laws for OARRS are, in essence, federal confidentiality laws. *See South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (Congress may "further broad policy objectives" by conditioning federal funding.) From the very beginning, the need to protect the security of the information to be contained in a state PDMP database was well-understood. When the federal government decided that it was in the national interest to encourage the development of state PDMPs, security of the information was paramount. NASPER specified not only what information should be

contained within a state PDMP database, but also that use and disclosure of that information should be limited to approved individuals for proper purposes. *See* Pub. L. No. 109-60 Sec. 399O(f), (g). Specifically, NASPER required that states seeking funding develop a statutory scheme authorizing release of PDMP database information to: 1) healthcare practitioners "for the purpose of providing medical or pharmaceutical treatment or evaluating the need for such treatment to a bona fide current patient;" 2) law enforcement personnel only when "related to an individual investigation or proceeding involving the unlawful diversion or misuse of a schedule II, III, or IV substance, and such information will further the purpose of the investigation or assist in the proceeding;" 3) another state PDMP; 4) agents of certain specified federal agencies who certify "that the requested information is necessary for research to be conducted by such department, program, or administration, respectively, and the intended purpose of the research is related to a function committed to such department, program, or administration by law that is not investigative in nature;" 5) state agents charged with the implementation of the PDMP database. *See* Pub. L. No. 109-60 Sec. 399(O)(f). NASPER also required that States seeking funding from HHS enact legislation imposing penalties for the unauthorized use and disclosure of information retained within a PDMP. *See* Pub. L. 109-60 Sec. 399(O)(a)(2); (c)(2).

Consistent with the requirements set by NASPER, the Ohio General Assembly enacted O.R.C. 4729.80 to restrict access to the database. The individuals who can access OARRS tracks the language of NASPER, with only the following being eligible to access the database: 1) healthcare practitioners;[7] 2) law enforcement and Court personnel;[8] 3) another state PDMP;[9] 4)

---

[7] O.R.C. 4729.80(A)(5), (6), (12), (21); (B)(1), (2).
[8] O.R.C. 4729.80(A)(1), (2), (3), (4), (16), (17)
[9] O.R.C. 4729.80(A)(14).

other state agencies required to use prescription data to carry out their designated functions;[10] 5) an individual seeking their own records;[11] 6) peer review committees[12], and 7) the Director of Health for the purpose of implementing the Ohio violent death reporting system.[13] And, as previously noted, improper access to, or distribution of, OARRS data may be a felony. As the state law confidentiality provisions applicable to OARRS are mere reflections of the federal prerogative to preserve the confidentiality of sensitive patient information, this Court should find that any de-identified OARRS information is privileged and not subject to disclosure.

**VI. What Occurred In New York Is Irrelevant.**

The Pharmacy Defendants raise the curious argument that OARRS data is not protected because the State of New York apparently chose to turn some or all of this data over during state court proceedings. Notably, they have not attached any documents to actually support this claim, so the Board is not in any position to actually comment on what was turned over, why New York did so, or what protections were in place.

What happened in New York is irrelevant. O.R.C. 4729.80 and 4729.86 obviously would not apply to New York's PDMP. And even if New York voluntarily waived protections for patient data, that does not mean that the Board is required to follow suit – especially where binding Sixth Circuit precedent establishes that the plain language of Ohio's confidentiality statutes will bar disclosure.

**VII. The Existing Protective Orders Are Insufficient**

---

[10] O.R.C. 4729.80(A)(8), (9), (10), (11).
[11] O.R.C. 4729.80(A)(7), (19).
[12] O.R.C. 4729.80(A)(21).
[13] O.R.C. 4729.80(A)(13).

In the event this Court grants the motion to compel (which it should not), it should require a far more stringent protective order than is currently in place. The dataset in the Pharmacy Defendants already contains the dispensing data for more than half of the people in Ohio. As noted above, disclosing the identities of pharmacies and prescribers is tantamount to giving the Pharmacy Defendants the identities of millions of patients.

If this Court orders that the Board produce the requested information, in addition to the other existing orders, it should order that only a single attorney and a single consultant for each Pharmacy Defendant be permitted to have access to the OARRS data. The Board is not meaning to cast aspersions on any of the counsel. But the sensitivity of this data is extraordinarily high and there are obviously dozens (if not hundreds) of law firm personnel and consultants working on the Ohio litigation. Unlike the OARRS database itself, there is no mechanism to track impermissible access so limiting the individuals that may view it is a reasonable protection to mitigate the risk.

### VIII. Conclusion

In the end, this is pretty simple. In the Sixth Circuit, federal courts apply "state law privileges when reviewing a claim or defense for which state law supplies the rule of decision." This case involves claims of public nuisance under Ohio law. Ohio privileges apply.

Ohio law forbids the Board from releasing information in the OARRS database about "any person" – including licensees – unless an exception applies. And while OARRS data can be provided in a criminal case, there is no comparable provision for civil cases. On the contrary, "A person shall not use information obtained pursuant to division (A) of section 4729.80 of the Revised Code as evidence in any civil or administrative proceeding." O.R.C. 4729.86(B).

This Court should deny the motion to compel.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

/s/ *Henry G. Appel*
HENRY G. APPEL (0068479)
Principal Assistant Attorney General
30 East Broad Street, 26th Floor
Columbus, Ohio 43215
(614) 466-8600; (866) 441-4738 (fax)
henry.appel@ohioattorneygeneral.gov

Counsel for Interested Party Ohio State Board of Pharmacy

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served by operation of this Court's electronic filing system on the day of filing to all counsel of record.

/s/ *Henry G. Appel*
HENRY G. APPEL (0068479)
Principal Assistant Attorney General