UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION  ) | MDL 2804 |
| ) | |
| ) | Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO:  ) | |
| ) | Judge Dan Aaron Polster |
| *Track Three Cases*  ) | |
| ) | **ORDER** |

Before the Court is Pharmacy Defendants' Motion to Compel Limited Additional Data from the Ohio Board of Pharmacy's OARRS Database. Doc. #: 3364. For the reasons stated below, the Motion is **GRANTED**.

## I. Background

In Track One-A of the MDL, defendant McKesson served a subpoena upon the Ohio Board of Pharmacy ("OBOP") seeking production of *all* dispensing data from OBOP's database known as the Ohio Automated Rx Reporting System ("OARRS").[1] OBOP refused to comply with the subpoena, so McKesson moved to compel. The Court denied the motion as overbroad, but suggested McKesson was entitled to *some* of the data it was seeking and directed the parties to try and work things out.[2] Ultimately, OBOP agreed to provide to defendants certain OARRS data statewide from 2008 to 2018. The chart on the following page shows which data fields OBOP agreed to produce.[3] (The blue highlighting is explained further below.)

---

[1] "OARRS consists of two databases: a patient database that contains records of all controlled substances dispensed to outpatients, and an ARCOS-like database that contains records of shipments of those medications by wholesalers and others. This motion concerns only the former." Motion at 3 (doc. #: 3364); *see* Response at 3 (doc. #: 3380).

[2] *See* Order at 2 (doc. #: 1292) ("Some access to the information contained in the OARRS database may be important for a full and complete understanding of the contours of liability in this litigation," but "McKesson's request must be tailored to include geographic and temporal restrictions. Nonproduction or redaction of certain data-fields might be appropriate as well. * * * McKesson and OBOP are directed to continue negotiating to appropriately limit the scope of the data produced by OBOP.").

[3] *See* Mot. at 4 (doc. #: 3364); Response at 12 n.5 (doc. #: 3380).

| Data Field | Produced? |
|---|---|
| Date Prescription Filled | yes |
| Prescription Number | yes |
| Date Prescription Written | yes |
| Quantity | yes |
| Number of Refills | yes |
| Number of Days Supply | yes |
| NDC Code | yes |
| Payment Type | yes |
| Pharmacy Name | NO* |
| Pharmacy Address | NO |
| OBOP Pharmacy Number | NO |
| OBOP Pharmacy Business Activity Codes and Subcodes | yes |
| Physician Name | NO* |
| Physician Address | NO |
| OBOP Physician Number | NO |
| OBOP Physician Business Activity Codes and Subcodes | yes |
| Patient Name | NO* |
| Patient Sex | yes |
| Patient Address | NO |
| Patient Age | yes |
| Patient Condition | NO |

*Unique ID number supplied instead

At the time OBOP produced this data during Track One-A, the only claims pending against the Pharmacy Defendants related to their *distribution* of opioids to their own stores. Now, Plaintiffs in Track Three also assert claims related to the Pharmacy Defendants' *dispensing*

practices.[4] Accordingly, in order to defend against these additional allegations, the Pharmacy Defendants have served a subpoena upon OBOP seeking additional OARRS data – specifically, the data fields highlighted above in blue.[5] Notably, the Pharmacy Defendants are *not* seeking information that identifies patients; rather, they seek information identifying doctors and pharmacies.

OBOP refused to comply with the subpoena, so the Pharmacy Defendants move to compel. OBOP argues the Court should deny the motion because the Pharmacy Defendants already have all the information they need to defend against the Plaintiffs' claims, and the data they seek is privileged under Ohio law.[6] For the reasons stated below, the Court finds OBOP's arguments unconvincing.

## II. Analysis

### a. Defendants' need for OARRS data

The Pharmacy Defendants explain the relevance of and their need for the additional OARRS data as follows:

> [A]ccording to the ARCOS data [obtained from the U.S. DEA], the Pharmacy Defendants make up just 58 percent of the dispensing market in [the Track Three plaintiff] counties between 2006 and 2014. The Pharmacy Defendants have no information about most of the prescribers, prescriptions, or dispensing practices associated with the pharmacies and other dispensers that make up the other 42 percent of the market. Those non-defendant dispensers received more than 71 million dosage units of opioids between 2006 and 2014, according to ARCOS data.

---

[4] As the Motion explains, after OBOP's production during Track One, the Plaintiffs amended their Complaints to add allegations based on the Pharmacies' dispensing conduct. In preparation for defending against those allegations, the Pharmacies served a subpoena seeking additional data from OBOP, and the Court granted the Pharmacies' motion to compel production of the data. Doc. #: 3168. The Court withdrew that Order as moot after the Sixth Circuit ordered the Court to strike the amendments in Track One. Doc. #: 3313. Thus, the current motion is the second time the Pharmacy Defendants have sought to compel OBOP to produce additional OARRS data.
[5] *See* Mot. at 10 (doc. #: 3364) ("All the Pharmacy Defendants ask is that the same [OARRS] data previously produced be updated and reproduced with the ***dispenser*** and ***prescriber*** fields included.").
[6] OBOP does not argue the Pharmacy Defendants have failed to demonstrate good cause for seeking the data.

> On June 10, the Pharmacy Defendants served a new subpoena on [OBOP] seeking, among other things, the limited additional OARRS data at issue here, i.e., data identifying the dispensers and prescribers associated with the millions of opioids prescriptions in Lake and Trumbull Counties that the Pharmacy Defendants did not fill.
>
> * * *
>
> [This] information is necessary to show widespread alternative causes of the alleged nuisance, e.g., the large number of "over-prescribers," "pill mills," and other dispensers Plaintiffs chose not to sue.
>
> * * *
>
> The OARRS data is also necessary to identify "doctor shoppers" in a de-identified fashion.
>
> * * *
>
> OARRS is the only dataset anywhere that allows the tracing of individuals across doctors and pharmacies. Therefore, it is the only dataset that allows the identification of doctor shoppers who sought pills from multiple places, as well as the over-prescribers who wrote those patients' prescriptions.

Mot. at 5-9 (doc. #: 3364); *see id.* at 9 (further explaining that the Pharmacy Defendants' own, different databases do not allow cross-referencing between them of patients or prescribers, or between other non-defendant dispensers).

OBOP responds that the data it already produced, including a unique identifier for each patient, physician, and pharmacy, sufficiently fulfills the Pharmacy Defendants' need to identify alternative causes of the alleged nuisance. But the Pharmacies aim to identify specific non-party pill mills and over-prescribers, with the goal of showing it was these other actors (and not the Pharmacy defendants) who caused any alleged public nuisance. The Pharmacies cannot make this showing with de-identified data. Put simply, the Pharmacies cannot pursue a potential defense without the actual identities contained in the OARRS data fields they seek.

OBOP further argues that, as a practical matter, if the Pharmacy Defendants receive the additional data they seek – which does *not* include patient names or addresses – the Defendants will nonetheless be able to identify each patient and all of her prescriptions. OBOP explains:

> For example, if Walgreens … was supplied with all information for a particular prescription that was filled at a Walgreens pharmacy – the drug prescribed, the date the prescription was written, the date the prescription was filled, quantity, number of refills, prescriber name, and specific pharmacy name and address at which the prescription was filled – Walgreens could locate that particular prescription within its records. Walgreens' records would necessarily include the patient name for the prescription, thus, revealing the identity of that patient. Walgreens would then know the unique identifying number, or hash, used for that patient in the Research Extraction.

Response at 11 (doc. #: 3380).

While this may be true, it ignores several facts. First, during a discovery conference, the Pharmacy Defendants agreed they will not do this, and even invited the Court to enter an order prohibiting it. The Defendants do not need to identify specific *patients* to assert their defense; they only need to identify the prescribers and pharmacies associated with a specific patient, which they can do utilizing OBOP's de-identified patient ID number. Accordingly, the Pharmacy Defendants are ordered not to use their own data to "reverse-engineer" patient-identifying information contained in the de-identified OARRS data they receive.

Second, all of the OARRS data will be subject to the numerous protective orders entered by the Court in this MDL, *see, e.g.*, doc. #: 2987 at 1 (listing all such orders), and the Pharmacy Defendants have explicitly recognized this. *See* Mot. at 6 (doc. #: 3364) ("The Pharmacy Defendants agree that [OBOP] may designate the production under the Court's existing HIPAA Protective Order."). Accordingly, the privacy concerns raised by OBOP are mitigated.

And third, as reflected in the other filings related to dispensing data (*see* doc. ##: 3084, 3149), the Pharmacy Defendants clearly take seriously the privacy of their patients. Indeed, the Pharmacy Defendants *already have* and are required to safeguard the precise types of data they now seek from OBOP. OBOP is rightly concerned about preserving the privacy of patient prescriptions, but that is exactly what the Pharmacy Defendants already do routinely regarding

5

prescriptions they fill themselves. Allowing the Pharmacy Defendants access to information regarding prescriptions filled at other pharmacies does not meaningfully increase the types and amounts of private information the Defendants already have.[7]

In sum, the undersigned is convinced that production of the requested OARRS data to the Pharmacy Defendants will not lead to actual invasions of patient privacy beyond that which patients already experience whenever they fill a prescription. The relevance of the data is clear and the Pharmacies' need for it outweighs any countervailing concerns.

### b. Confidentiality and privilege

OBOP also objects that various federal and state statutes preclude production of the additional OARRS data. But these statutes are premised entirely on the concern that disclosure of data would allow identification of *patients*. Because the Pharmacy Defendants are *not* seeking patient-identifying data (such as name or address), and given the conclusion above regarding the unlikelihood of invasion of patient privacy, these objections are also not well-taken.[8]

Moreover, the state and federal statutes cited by OBOP may inform, but do not limit, this Court's discretion regarding scope of discovery. The federal statute cited by OBOP contains an explicit exception that data may be produced pursuant to a court order. *See* 42 U.S.C § 290dd-2 (b)(2)(C) ("Whether or not the patient. . . gives written consent, the content of such record may be disclosed . . . [i]f authorized by an appropriate order of a court of competent jurisdiction . . . ."). The state statute, Ohio Rev. Code §4729.80, does not contain a similar exception, but it likewise

---

[7] OBOP asks the Court to order only a single attorney and a single consultant for each Pharmacy Defendant be permitted to access the data. Response at 18 (doc. #: 3380). Like their clients, the Pharmacies' counsel are experienced in handling and protecting sensitive information, and the Court will not impose the unnecessary and impractical limits OBOP requests.

[8] It is notable that, in related state-court opioid litigation, the State of New York has voluntarily agreed to produce to the Pharmacy Defendants the same pharmacy and prescriber fields from its analogous database; this suggests OBOP's concerns about privacy and statutory restrictions are overblown.

does not limit the scope of discovery.[9]

OBOP argues the Court should find the database is privileged within the meaning of Federal Rule of Evidence 501. *See* response at 5. OBOP is generally correct regarding application of state law privileges in federal cases based on diversity jurisdiction. But the general rules cited by OBOP do not end the analysis; OBOP must show a specific state law privilege exists that governs this precise issue. *See Cleveland Clinic Health Sys.-E. Region v. Innovative Placements, Inc.*, 283 F.R.D. 362, 365 (N.D. Ohio 2012) (citation omitted) (holding that a party claiming privilege has the burden of proving the privilege applies).

OBOP makes no argument for the application of any specific privilege, instead it merely suggests that Ohio statutes that address the *confidentiality* of the OARRS database create a privilege. But "[c]onfidentiality is not … the same as privilege." *Lawrence v. Aken*, 316 F. Supp. 2d 547, 554 (W.D. Mich. 2004) (rejecting privilege claim and finding confidentiality order sufficiently protects confidentiality interests embodied in state statute); *Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679, 685 (W.D. Tenn. 2010) (citation omitted) ("The term 'privilege' is a specific and well-defined term in the legal community…. Had our legislature intended to enact a privilege, the General Assembly, being versed in the legal lexicon, likely would have used the precise term 'privilege.'"). Thus, state statutes providing for confidentiality "do not automatically imply the creation of evidentiary privileges binding on courts." *Seales v. Macomb Cty.*, 226 F.R.D. 572, 576 (E.D. Mich. 2005) ("Merely asserting that a state statute declares that the records in question are

---

[9] *See Doan v. Allstate Ins. Co.*, No. 5:07cv13957, 2009 WL 10680123, at *3 n.2 (E.D. Mich. May 14, 2009) ("Discovery in federal courts is generally governed by the Federal Rules of Civil Procedure regardless of whether federal jurisdiction is based on a federal question or diversity of citizenship."); *Everitt v. Brezzel*, 750 F. Supp. 1063, 1065-1066 (D. Colo. 1990) (same); *Sharon Steel Corp. v. Travelers Indem. Co.*, 26 F.R.D. 113, 116 (N.D. Ohio 1960) (granting a motion to compel production of general counsel's notes prepared in anticipation of trial under Fed. R. Civ. P. 34, despite a contrary state ruling, explaining: "we cannot afford to allow state court rulings to influence what we consider to be the proper interpretation of the federal rules concerning discovery"); *see also* 8 Fed. Prac. & Proc. Civ. §2005 (3rd ed. 2019) ("State law is of very little relevance to discovery in a federal action.").

confidential does not make out a sufficient claim that the records are privileged within the meaning of Fed. R. Civ. P. 26(b)(1) and Fed R. Evid. 501."). Furthermore, in the absence of any express statutory language or judicial interpretation creating an evidentiary privilege, courts in this Circuit decline to read a privilege into statutes. *See, e.g.*, *id.* at 576 (granting in part a motion to compel over objection that state confidentiality statutes create a privilege over information sought); *Lawrence*, 316 F. Supp. 2d at 552 ("Where privileges have been extended, the text of a state rule normally makes explicit reference to privilege.").

OBOP fails to identify any Ohio law evincing a privilege prohibiting the production of this data. OBOP primarily relies on a case applying Ohio Rev. Code. § 2317.02, which is entitled "Privileged Communications and Acts" and expressly creates various testimonial privileges. *See Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir. 1990).[10] Unlike that statute, the provisions upon which OBOP relies do not contain any reference to privilege. If the General Assembly intended to create an evidentiary privilege, it easily could have done so in express terms, as it did in § 2317.02. Thus, the Court finds OBOP has not shown a state law privilege exists that protects the data from discovery. As previously stated, the Court's protective orders sufficiently address the confidentiality interests reflected in the state statutes.

### III.   Conclusion

Accordingly, the Pharmacy Defendants' motion to compel is **GRANTED**. OBOP shall promptly provide to the Pharmacy Defendants the same OARRS data it previously produced, but

---

[10] Like *Jewell*, nearly every case OBOP cites involved a state statute containing express language creating privileges. *See* response at 6 (doc. #: 3364) (citing *State Farm. Mut. Auto. Ins. Co. v. Elite Heath Ctrs., Inc.*, 399 F. Supp. 3d 708, 711 (E.D. Mich. 2019); *Babock & Wilcox Power Generation Group, Inc. v. Cormetech, Inc.*, 81 F. Supp. 3d 632, 640 (N.D. Ohio 2015); *Freudeman v. Landing of Canton*, No. 5:09cv00175, 2010 WL 2196460, at *11 (N.D. Ohio May 31, 2010)). OBOP mistakenly relies on one case that addressed the distinction it failed to make here – between privilege and confidentiality – and concluded a state confidentiality statute did not prohibit disclosure under Federal Rule of Evidence 501. *SBAV LP v. Porter Bancorp, Inc.*, No. 3:13cv00710, 2015 WL 1471020, at *5–8 (W.D. Ky. Mar. 31, 2015), *vacated as moot*, 2015 WL 8004502 (W.D. Ky. Dec. 1, 2015).

updated and with the pharmacy and prescriber fields included. Pharmacy Defendants shall ensure counsel for OBOP promptly receives a copy of this Ruling.

As before, the Court does not believe it is appropriate to, and will not, authorize immediate appeal of this *Discovery Ruling* pursuant to 28 U.S.C. §1292(b). *See* case no. 18-OP-45090, docket entry dated Mar. 17, 2020 (denying OBOP's motion to amend order to authorize an appeal).

**IT IS SO ORDERED.**

    **/s/ Dan Aaron Polster_July 24, 2020_**
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**