# Exhibit A

**To Motion for Leave to File Motion for Remand Procedure, or in the Alternative, Suggestion of Remand to the JPML**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| THIS DOCUMENT RELATES TO: | Judge Dan Aaron Polster |
| *City of Santa Fe v. Purdue Pharma, et al.*, Case No. 1:20-op-45137-DAP | |
| *City of Albuquerque v. Teva Pharma. USA, Inc. et al.*, Case No. 1:20-op-45136-DAP | |

## PLAINTIFFS CITY OF ALBUQUERQUE AND CITY OF SANTA FE'S MOTION FOR REMAND PROCEDURE, OR IN THE ALTERNATIVE, SUGGESTION OF REMAND TO THE JPML

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

   A.   The Cases Were Removed on Purported Grounds of Complete Diversity Notwithstanding the Presence of New Mexico Citizens on Both Sides. .......................2

   B.   The City of Albuquerque and the City of Santa Fe Filed Motions, Briefs, and Even Letters Attempting to Return Their Cases to the State Tribunal with Subject Matter Jurisdiction. ...................................................................................................................4

III.   ARGUMENT AND AUTHORITIES ..................................................................8

   A.   Subject Matter Jurisdiction Must Be Decided First in Priority. ................................8

   B.   A Procedure for Prompt Remands Should be Instituted. ..........................................10

   C.   The Pending Motions to Remand Require No Arduous Inquiry; There Obviously Is No Federal Subject Matter Jurisdiction. ..................................................................11

   D.   In the Alternative, the Court Should Suggest That the JPML Remand to the Transferor Court. ......................................................................................................15

   E.   The Disregard of the Limits of Federal Subject Matter Jurisdiction Offends Considerations of Comity. .........................................................................................18

   F.   The Disregard of Significant Federalism Concerns Unfairly Benefits the PSC. ........19

IV.   CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.,*
  840 F. Supp. 2d 1193 (D. Minn. 2012) .......................................................................15, 16

*Alabama v. Bozeman,*
  533 U.S. 146 (2001) ...........................................................................................................8

*Am. Telecom Co. v. Republic of Lebanon,*
  501 F.3d 534 (6th Cir. 2007) .............................................................................................8

*Anderson v. Yungkau,*
  329 U.S. 482 (1947) ...........................................................................................................8

*Anne Arundel Cty., Maryland v. Purdue Pharma L.P.,*
  No. CV GLR-18-519, 2018 WL 1963789 (D. Md. Apr. 25, 2018) ...................................13

*Arbaugh v. Y&H Corp.,*
  546 U.S. 500 (2006) ...........................................................................................................9

*In re Asbestos Prod. Liab. Litig. (No. VI),*
  545 F. Supp. 2d 1362 (J.P.M.L. 2008) .............................................................................16

*In re: Asbestos Prod. Liab. Litig. (No. VI),*
  560 F. Supp. 2d 1351 (J.P.M.L. 2008) .............................................................................16

*BancOhio Corp. v. Fox,*
  516 F.2d 29 (6th Cir. 1975) ...............................................................................................9

*In re Baseball Bat Antitrust Litig.,*
  112 F. Supp. 2d 1175 (J.P.M.L. 2000) .............................................................................15

*In re Brand-Name Prescription Drugs,*
  264 F. Supp. 2d 1372 (J.P.M.L. 2003) .............................................................................16

*Cabell County Comm'n v. AmerisourceBergen Drug Corp., et al.,*
  No. 17-OP-45053, *City of Huntington, W.V. v. AmerisourceBergen Drug
  Corp., et al.,* No. 17-OP-45054 (Jan. 6, 2020)...................................................................18

*Capital One Bank (USA) N.A. v. Jones,*
  710 F. Supp. 2d 630 (N.D. Ohio 2010) ............................................................................17

*City and County of San Francisco, Cal., et al. v. Purdue Pharma L.P. et al.*,
  No. 1:19-OP-45022, *City of Chicago v. Purdue Pharma L.P. et al.*,
  No. 1:17-OP-45169, *Cherokee Nation v. McKesson Corp. et al.*,
  No. 1:18-OP-45695 (Nov. 19, 2019)..................................................................18

*City of Albuquerque v. Teva Pharmaceuticals USA, Inc., et al.*,
  No. 1:19-CIV-01168-JB/JHR (D.N.M. Jan. 24, 2020) ............................... 4, 5, 6, 7

*City of Huntington, W.V. v. AmerisourceBergen Drug Corp., et al.*,
  No. 17-OP-45054 (Jan. 6, 2020)........................................................................18

*City of Santa Fe v. Cephalon Inc.*,
  No. D-101-CV-2019-01809 (1st Jud. Dist. Ct. May 13, 2020) ...............................6

*County of Carbon v. Purdue Pharma L.P., et al.*,
  Case No. 19-OP-45337, *Delaware County, Pennsylvania v. Purdue Pharma
  L.P., et al.*, Case No. 19-OP-45285 (July 2, 2019) ............................................18

*Cty. of Anderson v. Rite Aid of S.C., Inc.*,
  No. 8:18-CV-1947-BHH, 2018 WL 8800188 (D.S.C. Aug. 20, 2018) ...............13

*Cty. of Delta v. Purdue Pharma, L.P.*,
  No. 4:18-CV-095, 2018 WL 1440485 (E.D. Tex. Mar. 22, 2018) ......................14

*Cty. of Falls v. Purdue Pharma, LP*,
  No. 6:18-CV-47-RP-JCM, 2018 WL 1518849 (W.D. Tex. Mar. 28, 2018) .........14

*Cty. of Travis v. Purdue Pharma*,
  LP, No. 1:18-CV-254-RP, 2018 WL 1518848 (W.D. Tex. Mar. 28, 2018)..........14

*In re Darvocet*,
  106 F. Supp. 3d 849 (E.D. Ky. 2015)................................................................16

*Davis v. Detroit Pub. Sch. Cmty. Dist.*,
  899 F.3d 437 (6th Cir. 2018) ...............................................................................9

*Dinwiddie County, Virginia v. Purdue Pharma, L.P.*,
  3:19-CV-242, 2019 WL 2518130 (E.D. Va. June 18, 2019)........................ 12, 14

*In re Evergreen Valley Project Litig.*,
  435 F. Supp. 923 (J.P.M.L. 1977)......................................................................16

*In re Express Scripts, Inc.*,
  No. 4:05CV1064 HEA, 2010 WL 5149270 (E.D. Mo. Dec. 13, 2010)................16

*In re Ford Motor Co./Citibank N.A. Cardholder Rebate Program Litig.*,
  245 F. Supp. 2d 1381 (J.P.M.L. 2003) .................................................................9

*Franklin v. Peterson*,
    878 F.3d 631 (8th Cir. 2017) ............................................................. 8

*Ft. Bend Cnty., Texas v. Davis*,
    139 S. Ct. 1843 (2019) ................................................................... 19

*GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*,
    888 F.3d 29 (3d Cir. 2018) ............................................................. 17

*In re Genetically Modified Rice Litig.*,
    764 F.3d 864 (8th Cir. 2014) ............................................................. 9

*Gravel v. Am. Leadership Project*,
    249 F.R.D. 264 (N.D. Ohio 2008)....................................................... 8

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991) ..................................................................... 18

*Hampton v. Insys Therapeutics, Inc.*,
    319 F. Supp. 3d 1204 (D. Nev. 2018) ................................................ 14

*Healy v. Ratta*,
    292 U.S. 263 (1934) ..................................................................... 18

*In re Heparin Prod. Liab. Litig.*,
    No. 1:09HC60148, 2012 WL 3758439 (N.D. Ohio June 25, 2012) ....................... 9

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
    498 F. Supp. 2d 25 (D.D.C. 2007) .................................................... 16

*Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC*,
    417 F.3d 953 (8th Cir. 2005) ............................................................. 9

*Jefferson County, et al. v. Williams, et al.*,
    No. 1:19-OP-45371 (July 24, 2019) .................................................... 18

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998)....................................................................... 15

*Loren v. Blue Cross & Blue Shield of Mich.*,
    505 F.3d 598 (6th Cir. 2007) ............................................................. 8

*Mayor & City Council of Baltimore v. Purdue Pharma L.P.*,
    No. CV GLR-18-800, 2018 WL 1963816 (D. Md. Apr. 25, 2018).................... 13

*Ex parte McCardle*,
    7 Wall. 506, 19 L.Ed. 264 (1868) .................................................... 8, 9

*Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.*,
No. 3:19-CV-463, 2019 WL 3207795 (E.D. Va. July 16, 2019)....................................12, 14

*In re Motor Fuel Temperature Sales Practices Litig.*,
No. 07-MD-1840-KHV, 2012 WL 1963350 (D. Kan. May 30, 2012)..................................16

*In re Multidistrict Civil Actions Involving Air Crash Disaster Near Dayton, Ohio,*
*on Mar. 9, 1967,*
386 F. Supp. 908 (J.P.M.L. 1975).....................................................................................16

*In re Nat'l Prescription Opiate Litig.*,
956 F.3d 838 (6th Cir. 2020).............................................................................................10

*In re Nat'l Prescription Opiate Litig.*,
No. 1:17-MD-2804, 2019 WL 180246 (N.D. Ohio Jan. 14, 2019).....................................11

*In re Nat'l Prescription Opiate Litig.*,
No. 17-MD-2804, 2018 WL 4019413 (N.D. Ohio Aug. 23, 2018)......................................11

*In re National Prescription Opiate Litigation,*
MDL 2804 (N.D. Ohio Feb. 16, 2018)................................................................................5

*of Anderson v. City of Minneapolis,*
934 F.3d 876 (8th Cir. 2019).............................................................................................8

*Printz v. United States,*
521 U.S. 898 (1997)...........................................................................................................18

*In re Richardson-Merrell, Inc. Bendectin Prod. Liab. Litig. (No. II),*
606 F. Supp. 715 (J.P.M.L. 1985)......................................................................................17

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574 (1999)...........................................................................................................9

*Shamrock Oil & Gas Corp. v. Sheets,*
313 U.S. 100 (1941)...........................................................................................................18

*In re Showa Denko K.K. L–Tryptophan Prods. Liab. Litig.–II,*
953 F.2d 162 (4th Cir. 1992).............................................................................................9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007)...........................................................................................................9

*State by & through Tennessee Gen. Assembly v. United States Dep't of State,*
931 F.3d 499 (6th Cir. 2019), pet. docketed (March 17, 2020)...............................................8

*State of Ohio v. Wright,*
992 F.2d 616 (6th Cir. 1993) (en banc)..............................................................................19

v

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ................................................................. 8, 9

*Syngenta Crop Prot., Inc. v. Henson,*
    537 U.S. 28 (2002) ............................................................... 12, 18

*Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of*
    *Adjustment, Cent. Region,*
    558 U.S. 67 (2009) ................................................................... 8

## Statutes

28 U.S.C.A. § 1407(a) ................................................................. 15

28 U.S.C.A. § 1447(c) ................................................................. 8

28 U.S.C. § 1404(a) ................................................................... 9

28 U.S.C. § 1407 ............................................................... *passim*

28 U.S.C. §1441(b)(2) ................................................................ 2

NMSA 1978, Section 26-1-18, 16.19.8.13 ........................................... 3

## Other Authorities

*Civil Litigation Management Manual* 61–62 (2010) ............................... 10

Code of Judicial Conduct Rule 21-102 .............................................. 7

Code of Judicial Conduct Rule 21-210(A) ........................................... 7

Fed. Judicial Ctr., *Manual for Complex Litigation* § 22.36 (4th ed. 2004) ........ 10

Fed. Judicial Ctr., *Ten Steps for Better Case Management: A Guide for*
    *Multidistrict Litigation Transferee Judges* 5 (2d ed. 2014) ................... 10

Federal Rule of Civil Procedure 19 ................................................ 13

Federal Rule of Civil Procedure 21 ................................................ 13

J.P.M.L. Rules 10.1 ................................................................. 15

**INDEX**

**Exhibits to Plaintiffs City of Albuquerque and Santa Fe's Motion for Remand Procedure or, in the Alternative, Suggestion of Remand to JPML**

| | |
|---|---|
| Exhibit 1 | *Albuquerque* First Am. Complaint [DNM 1:19-cv-01168, Doc. 1-1, Page 5 of 275] |
| Exhibit 2 | *Santa Fe* First Am. Complaint [DNM 1:19-cv-01105, Doc. 1-3, Page 153 of 278] |
| Exhibit 3 | Plaintiff City of Albuquerque's Motion to Remand [DNM No. 1:19-cv-01168, Doc. 11] |
| Exhibit 4 | Plaintiff City of Santa Fe's Motion to Remand [DNM 1:19-cv-01105,  Doc. 14] |
| Exhibit 5 | Plaintiff City of Albuquerque's Motion to Expedite Motion to Remand [DNM No. 1:19-cv-01168,  Doc. 16] |
| Exhibit 6 | Plaintiff City of Santa Fe's Motion to Expedite Motion to Remand [DNM 1:19-cv-01105,  Doc. 19] |
| Exhibit 7 | Tr. of Mot. Hr'g, *City of Albuquerque v. Teva Pharmaceuticals USA, Inc., et al.*, 1:19-CIV-01168-JB/JHR (D. N.M. Jan. 24, 2020) |
| Exhibit 8 | Letter from S. Ann Saucer and Pia Salazar to the Honorable Carl J. Butkus (April 21, 2020) (without enclosures) |
| Exhibit 9 | Letter from S. Ann Saucer and Pia Salazar to the Honorable Bryan Biedscheid (April 21, 2020) (without enclosures) |
| Exhibit 10 | Tr. of Proceedings, *City of Santa Fe v. Cephalon Inc.*, No. D-101-CV-2019-01809 (1st Jud. Dist. Ct. May 13, 2020) |
| Exhibit 11 | Mot. to Vacate CTO-125 and Br. in Supp., MDL No. 2804, Doc. 6663, Doc. 6663-1 |
| Exhibit 12 | Mot. to Vacate CTO-127 and Br. in Supp., MDL 2804, Doc. 6808, 6808-1 |
| Exhibit 13 | Letter from Joanne Cicala *et al.* to Hon. Dan Aaron Polster *et al.* (Nov. 6, 2019) [Doc. 114-15, PageID 1362-63] |

## I.     INTRODUCTION

To serve the public health and safety of its citizens, the Cities of Albuquerque and Santa Fe, New Mexico, initiated legal action in State court to protect citizens from the scourge of debilitating addiction, overdoses, and deaths caused by prescription opioids. *See* **Exhibit 1**, First Am. Complaint ("Albuquerque FAC") [DNM 1:19-cv-01168, Doc. 1-1, Page 5 of 275]; **Exhibit 2**, First Am. Complaint ("Santa Fe FAC") [DNM 1:19-cv-01105, Doc. 1-3, Page 152 of 278]. Notwithstanding the significant public health threats at stake, the cases were wrongfully removed to federal court, depriving the Cities of the right to proceed in a forum with jurisdiction.

There is no federal subject matter jurisdiction over the Cities' cases against opioid manufacturers, distributors, pharmacies, and prescribers. *See* § III.C *infra*. The specious removals to federal court were based on purported diversity of citizenship—notwithstanding the uncontested presence of New Mexico citizens as both the Plaintiff, and as seven Defendants in Albuquerque's case and as two Defendants in Santa Fe's case. Each City filed multiple motions and briefs in an attempt to return its respective case to a tribunal with subject matter jurisdiction. *See* § II.B *infra*. The illegitimacy of these removals is apparent from the shifting false claims and accusations levied as distractions from the controlling legal standards, court orders, and pleadings. *See id*. Nonetheless, despite the Cities' multi-pronged efforts, both cases were transferred from one court without subject matter jurisdiction to another court lacking jurisdiction, and are subject to this Court's moratorium on remand filings.

Hundreds of cases filed by governmental entities to address and abate a man-made public health epidemic are stalled in this Court on the basis of groundless removals. The injustice of halting public health abatement efforts has been recognized by this Court, which acknowledged that, "it's not fair to me to hold cases. . . . [A]ll these cities and counties are clamoring for their

1

trials." Tr. of Status Conference Proceedings at 10:12-14, *In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804 [Doc. #: 3113, PageID 482022]. In light of this unfairness, the Court should lift the moratorium and institute a procedure for resolving the fundamental question of federal subject matter jurisdiction, and remand these cases for lack thereof. *See* § III.B *infra*. Alternatively, the Court should suggest transfer to the transferor court, the District of New Mexico. *See* § III.D *infra*. The interests of justice compel timely remand of the Cities' cases. *See* § III.E *infra*.

Remand creates no new risk of divergent or inconsistent rulings by differing federal district courts. Maintenance of Albuquerque's and Santa Fe's opioid cases in this MDL undermines the economies multidistrict litigation is meant to achieve. Retention ensures only that when the remand motions ultimately are resolved, the Cities' claims will have needlessly idled in a federal court system that lacks subject matter jurisdiction. To avoid that deleterious result, the City of Santa Fe and the City of Albuquerque respectfully request that this Court act to return their cases to a tribunal with subject matter jurisdiction.

## II.    BACKGROUND

### A. The Cases Were Removed on Purported Grounds of Complete Diversity Notwithstanding the Presence of New Mexico Citizens on Both Sides.

The removal notices are divorced from the pleadings and unsupported by any apposite authority. In Albuquerque's case, seven Defendants are New Mexico citizens, thereby destroying complete diversity seven times over, and foreclosing removal under the plain language of 28 U.S.C. §1441(b)(2). *See* **Exhibit 1**, Albuquerque FAC. Four causes of action against all Defendants are alleged, i.e., causes of action for public nuisance, for negligence and negligence per se, for gross negligence and punitive damages, and for unjust enrichment. *Id.* at ¶¶279-294, 354-405. The seven New Mexico citizen Defendants abdicated their duties by prescribing large quantities of dangerously addictive opioids illegitimately and/or mishandling these dangerous

2

drugs in derogation of mandatory state law duties. *See id.* at ¶¶233-241, 361. Defendant Michael L. Gallegos, for example, operated as a New Mexico pharmacist, and he was cited by the State New Mexico Board of Pharmacy with regard to his mishandling of opioids. *See id.* at ¶234. **All** of the Defendants named by the City of Albuquerque—New Mexico citizens and non-citizens alike— breached their duties to protect the supply chain of dangerously addictive drugs. Specifically, all of the Defendants repeatedly breached their duties under state laws and regulations, including NMSA 1978, Section 26-1-18, 16.19.8.13 NMAC, and 16.19.20.48 NMAC, all of which are public safety laws. Albuquerque FAC ¶¶361-363. *See also* **Exhibit 3,** Plaintiff City of Albuquerque's Motion to Remand, pp. 2-6 [DNM 1:19-cv-01168, Doc. 11].

Likewise, in Santa Fe's case, four causes of action are brought against each and every one of the Defendants, including the first cause of action for public nuisance. **Exhibit 2**, Santa Fe FAC ¶¶277-295, 353-403. Two Defendants are New Mexico citizens, thereby destroying complete diversity. New Mexico citizens Dr. Bray-Morris and nurse practitioner Broderson abdicated their duties by prescribing large quantities of dangerously addictive opioids illegitimately. *See id.* at ¶¶4, 47-48, 53-54. Santa Fe's Complaint explains how these two prescribers worked hand in glove with the other Defendants to create the opioid public nuisance in the City of Santa Fe. *See, e.g.*, *id.* at ¶237. The City's Complaint further explains their culpability, including how these Santa Fe prescribers have lost their licenses and/or been prosecuted for their prescribing of highly addictive opioids into illicit channels. *See id.* at ¶¶4, 47-48, 53-54, 235-237, 359. These two New Mexico citizens are part of the same opioid diversion supply chain, acting in concert with the other opioid Defendants. *See id.*; *see also* **Exhibit 4**, Plaintiff City of Santa Fe's Motion to Remand, pp. 2-5 [DNM 1:19-cv-01105, Doc. 14].

Defendants' removal theory, which has been rejected by courts nationwide, consists of the implausible claim that Cities and Counties cannot file a single lawsuit to abate **one** public nuisance, but rather have to sue the Defendants that caused that nuisance in **two** different lawsuits. No apposite authority supports Defendants' removal theory. During subsequent hearings in New Mexico, Defendants have proven to be unable to cite any authority requiring a governmental entity to break up a public nuisance suit into different pieces, litigating abatement of **the same jointly caused nuisance** in two different cases before two different tribunals.

**B.  The City of Albuquerque and the City of Santa Fe Filed Motions, Briefs, and Even Letters Attempting to Return Their Cases to the State Tribunal with Subject Matter Jurisdiction.**

Shortly after the wrongful removals to federal court, the Cities filed motions to remand. **Exhibit 3,** Plaintiff City of Albuquerque's Motion to Remand [DNM 1:19-cv-01168,  Doc. 11]; **Exhibit 4,** Plaintiff City of Santa Fe's Motion to Remand [DNM 1:19-cv-01105,  Doc. 14]. The Cities also moved to expedite the proposed transferor courts' consideration of the remand motions. **Exhibit 5**, Plaintiff City of Albuquerque's Motion to Expedite Motion to Remand [DNM 1:19-cv-01168,  Doc. 16]; **Exhibit 6**, Plaintiff City of Santa Fe's Motion to Expedite Motion to Remand [DNM 1:19-cv-01105,  Doc. 19].

The Honorable James O. Browning, United States District Court Judge, District of New Mexico, granted the City of Albuquerque a hearing, wherein he announced his decision to take no action. **Exhibit 7**, Tr. of Mot. Hr'g, *City of Albuquerque v. Teva Pharmaceuticals USA, Inc., et al.*, No. 1:19-CIV-01168-JB/JHR (D.N.M. Jan. 24, 2020) (occ. "Hr'g Tr."). During the hearing, Judge Browning noted:

- "[I]t does seem to me that the jurisdictional basis for this [removal] is suspect" (*id*. at 38:8-10);

- Removing Defendant Endo's removal theory is "rarely used" (*id*. at 40:10-11);

4

- "[J]oinder in the federal courts is extremely broad" (*id.* at 42:10-11);

- Endo's argument "seems like a very unprincipled doctrine" (*id*. at 51:13-14);

- "That [Endo's argument] seems very unprincipled to me" (*id*. at 51:22-23);

- "I don't think you can articulate a principled rule that allows a district judge to" follow Endo's argument (*id*. at 52:14-15);

- "[I]t seems to me that it's very difficult to come up with a principled rule to say, 'Well, okay, we're just going to drop these people so that it remains in federal court.' That's where the corporation wants to be" (*id*. at 52:18-22);

- Endo "just do[esn't] like these people in there" (*id*. at 53:12-13).

Judge Browning concluded that, "[s]o it's with some reservation that I don't go ahead and reach the remand issues, but I do think that the better course of MDL practice in the nation and an orderly federal court suggest that I wait and see if this one gets transferred." *Id*. at 111:15-19.

The removing Defendants, Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. (occ. "Endo"), distracted from the law and facts via a stratagem of false accusations delivered with contrived outrage. In response to the City of Albuquerque's argument **quoting this Court's moratorium orders**,[1] Endo claimed to be personally "bothered" "the most" by "this extraordinarily misleading argument" (Hr'g Tr., 79:15-17), and misrepresented the City's argument as being "not only false and misleading" but also "diametrically opposed to" the record (*id*. at 81:3-5). Upon questioning from Judge Browning, Endo claimed that "two weeks ago [i.e., two weeks before January 24, 2020] Judge Polster ordered remand in two Missouri cases" (*id*. at

---

[1] *E.g.,* **Exhibit 3,** Albuquerque Motion to Remand, p. 1 n.1 [Doc. 11, Page 8 of 32] (quoting and attaching as exhibit 1 Order Regarding Remands, *In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio Feb. 16, 2018); and quoting and attaching as exhibit 2 Case Management Order No. 1 at ¶6.g (N.D. Ohio April 11, 2018)); **Exhibit 5,** Albuquerque Motion to Expedite, p. 2 n.1 [Doc. 16, Page 6 of 16] (quoting same).

82:23-24), and that "[t]he state court actually reached out to the MDL." *Id*. at 83:6-7. The time cited by Endo's counsel (two weeks before January 24, 2020), is significant, because Endo strongly suggested, if not said, that these remands were sufficiently recent such that the City could obtain comparable relief. Endo brought up the Missouri remands as part of its argument explaining why it was extraordinarily misleading and false for the City to point to a moratorium on remands.[2]

After Endo's counsel's accusation that the City was "extraordinarily misleading" by pointing to this Court's moratorium orders, and that cases had been remanded at the request of state Judges as recent as two weeks before January 24, 2020, both Cities wrote letters to the respective state Judges asking that they, too, reach out to this Court. **Exhibit 8**, Letter from S. Ann Saucer and Pia Salazar to the Honorable Carl J. Butkus (April 21, 2020); **Exhibit 9**, Letter from S. Ann Saucer and Pia Salazar to the Honorable Bryan Biedscheid (April 21, 2020).

The Honorable Bryan Biedscheid, presiding in *City of Santa Fe v. Cephalon Inc.*, D-101-CV-2019-01809 (1st Jud. Dist. Ct.), granted the City of Santa Fe a hearing. Endo's counsel switched their attack from the contention that the moratorium point is extraordinarily misleading, now complaining that counsel did not tell Judge Biedscheid that this remand-upon-judicial-request process was (allegedly) shut down in June 2019—in other words, that the City's counsel was at

---

[2] Endo's counsel stated that by "Plaintiff point[ing] to a filing moratorium on certain pleadings in this MDL" Plaintiff was making an "extraordinarily misleading argument." **Exhibit 7**, Tr. 79:17-21. Endo's counsel said that the pointing to a filing moratorium argument by Plaintiffs was "false, and it is demonstrably false." *Id*. at 80:2-3. Endo's counsel then described why it was false, repeating that it is "false and misleading." *Id*. at 81:3. Judge Browning asked if remand motions had been granted. *Id*. at 81:16-17. When asked whether the number of remands was three, Endo's counsel said the number was more than that. *Id*. at 82:1-2. One of the examples Endo gave was "two weeks ago Judge Polster ordered remand in two Missouri cases." *Id*. at 82:23-24. When asked about the circumstances, Endo said, "[t]he state court actually reached out to the MDL." *Id.* at 83:6-7. Endo did not say to Judge Browning that the reaching out was inappropriate, that it violated any judicial canons, or that it was unavailable to the City. To the contrary, the Missouri remands of (allegedly) two weeks ago were raised by Endo as an example of why it was false and misleading to say that any moratorium on remands affected the City's case.

fault for failing to tell Judge Biedscheid that Endo's counsel's own argument to Judge Browning, i.e. remands in January 2020, was problematic. *See* **Exhibit 10**, Tr. of Proceedings at 16:3-17, *City of Santa Fe v. Cephalon Inc.*, No. D-101-CV-2019-01809 (1st Jud. Dist. Ct. May 13, 2020).[3]

Endo then quoted both Code of Judicial Conduct Rule 21-102 and Code of Judicial Conduct Rule 21-210(A) in support of the argument that the letters to your Honor "represent a violation of the principle of judicial independence" and that such letters are "forbidden in the Rule." **Exhibit 10**, Tr., 16:18 – 17:21.[4] Endo's counsel rounded out its accusations regarding the letter-writing remand procedure that had occurred in this Court with the opinion that, "it's a remarkably bad idea. It would set a terrible precedent." **Exhibit 10**, Tr., 18:4-5.[5] Thus, according to Endo, the City of Albuquerque was "extraordinarily misleading" by pointing to the moratorium, then the City of Santa Fe was faulted for not uncovering the inaccuracy in Endo's own arguments

---

[3] Endo told Judge Browning that "two weeks ago [i.e., two weeks before January 24, 2020] Judge Polster ordered remand in two Missouri cases," and that the state court "reached out to the MDL." **Exhibit 7**, Hr'g Tr., 82:23-24, 83:6-7. Then, Endo told Judge Biedscheid that this Court stated that in June 2019 "I will not entertain additional requests of this nature" and that the fact that state requests were cut off in June "is something, in my opinion, that counsel [for Plaintiff] should have shared with you." **Exhibit 10**, Tr. of Proceedings, 16:9-12. In other words, Endo told Judge Browning that Judge Polster ordered remand in two Missouri cases two weeks before January 24, 2020, then told Judge Biedscheid there was a June cut-off of some sort, and then blamed Plaintiff's counsel for not "shar[ing]" the June date with Judge Biedscheid.

[4] As Plaintiff's counsel pointed out, because one such letter on its face referenced a preceding conversation with this Court, Endo's accusation might also be an accusation against this Court. *Id.* at 22:16-21.

[5] Endo's counsel attempted to reconcile the fact that the (allegedly) recent Missouri remands were raised and argued by Endo as an example to Judge Browning, with its argument to Judge Biedscheid, by arguing that Endo's counsel told Judge Browning he was shocked. **Exhibit 10**, Tr., 14:13-15, 16:12. The "shock[]" was in response to Judge Browning's question whether the state courts said "'[w]e don't have enough work? We want some other cases'?" **Exhibit 7**, Tr. 83, 9-11.

in Albuquerque's case,[6] and then Endo shifted its criticisms to the judiciary by quoting Judicial Canon violations.

In addition to the Cities' federal motions and state letters attempting to secure remands to the state courts with jurisdiction, in motions and briefing before the Judicial Panel on Multidistrict Litigation, the Cities opposed the transfers of the cases from the United States District Court, District of New Mexico. *E.g.,* **Exhibit 11**, Mot. to Vacate CTO-125 and Br. in Supp., MDL No. 2804, Doc. 6663, Doc. 6663-1; **Exhibit 12**, Mot. to Vacate CTO-127 and Br. in Supp., MDL 2804, Doc. 6808, Doc. 6808-1. Obviously, those efforts also failed.

## III.  ARGUMENT AND AUTHORITIES

### A.  Subject Matter Jurisdiction Must Be Decided First in Priority.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case **shall** be remanded." 28 U.S.C.A. § 1447(c). The use of the word "shall" is mandatory.[7] The cases should have been remanded last year, instead of being transferred and stalled in a Court without federal subject matter jurisdiction.

Remand of a case upon the exposure of a jurisdictional defect is not only a statutory mandate, but it is also the outcome decreed in controlling jurisprudence. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)); *see also Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent.*

---

[6] Specifically, two weeks before January 24, 2020 (Endo's counsel to Judge Browning, **Exhibit 7,** Tr. at 82:23), versus disallowed since June 2019 (Endo's counsel to Judge Biedscheid, **Exhibit 10**, Tr., 16:9-11).
[7] *See Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) (the word "shall" is ordinarily the language of command) (citing *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947)).

*Region*, 558 U.S. 67, 84 (2009) (parenthetically quoting same); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (quoting *Steel*). "[J]urisdiction … is always our first and fundamental question." *Anderson as trustee for next-of-kin of Anderson v. City of Minneapolis*, 934 F.3d 876, 880 (8th Cir. 2019) (quoting *Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017)). "As a threshold matter, this Court must determine whether it has subject matter jurisdiction over the lawsuit." *Gravel v. Am. Leadership Project*, 249 F.R.D. 264, 265 (N.D. Ohio 2008) (citing *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007)). "When a court lacks jurisdiction, it '**cannot proceed at all** in any cause.'" *State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019), pet. docketed (March 17, 2020) (quoting *Steel*, 523 U.S. at 94 (quoting *McCardle*, 74 U.S. at 514)) (emphasis added).[8] Federal Courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). The Cities' cases should not have been transferred. "[A] transfer [under 28 U.S.C. § 1407] cannot be made unless the district court properly has jurisdiction of the subject matter of the case." *BancOhio Corp. v. Fox*, 516 F.2d 29, 32 (6th Cir. 1975).[9]

---

[8] *See also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)") (citing *Steel*, 523 U.S. at 93-102); *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 899 F.3d 437, 445 (6th Cir. 2018) ("Without jurisdiction the court cannot proceed at all in any cause.") (parenthetically quoting *Steel*, 523 U.S. at 94 (quoting *McCardle*, 74 U.S. at 514)).

[9] *See also Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC*, 417 F.3d 953, 957 (8th Cir. 2005) ("a court without subject matter jurisdiction cannot transfer a case to another court under 28 U.S.C. § 1404(a)") (citation omitted). Put another way, a transfer cannot cure the lack of federal subject matter jurisdiction in the first instance. *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 873–74 (8th Cir. 2014) ("[t]he authority for consolidating cases on the order of the judicial panel on multi-district litigation ... is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred.") (quoting *In re Showa Denko K.K. L–Tryptophan*

The course of the proceedings in the Cities' cases have, to date, fallen short of those principles. Moreover, it has been alleged that this Court will not rule on the outstanding remand motions until June 2021, at the earliest.[10] The longer the Cities' cases are stuck in a limitless abeyance, the longer that the plain language of Title 28, Section 1447, is violated.

The transfer of the case into an MDL did not cure the fundamental lack of subject matter jurisdiction. "The rule of law applies in multidistrict litigation under 28 U.S.C. § 1407 just as it does in any individual case. Nothing in § 1407 provides any reason to conclude otherwise." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020). "[A]s the Supreme Court has made clear, every case in an MDL . . . retains its individual character. That means an MDL court's determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases[.]" *Id.*

### B. A Procedure for Prompt Remands Should be Instituted.

Guidelines for federal judges encourage MDL courts to rule promptly on remand motions. *See, e.g.*, Fed. Judicial Ctr., *Manual for Complex Litigation* § 22.36 (4th ed. 2004) ("If the transferor courts have not decided remand motions before the MDL Panel order is issued, the transferee court should try to resolve remand motions promptly"); Fed. Judicial Ctr., *Ten Steps for Better Case Management: A Guide for Multidistrict Litigation Transferee Judges* 5 (2d ed. 2014) ("Take these [remand] motions seriously and rule upon them as soon as reasonably possible."); Judicial Conf. of the U.S., *Civil Litigation Management Manual* 61–62 (2010) ("You should

---

*Prods. Liab. Litig.–II*, 953 F.2d 162, 165 (4th Cir. 1992)); *In re Heparin Prod. Liab. Litig.,* No. 1:09HC60148, 2012 WL 3758439, at *1 (N.D. Ohio June 25, 2012) ("The fact that a case becomes part of a multidistrict proceeding does not, however, broaden this court's jurisdiction to hear cases over which it lacks in the first instance subject-matter jurisdiction.") (citing *In re Ford Motor Co./Citibank N.A. Cardholder Rebate Program Litig.,* 245 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003)).

[10] **Exhibit 13**, Letter from Joanne Cicala *et al.* to Hon. Dan Aaron Polster *et al.* (Nov. 6, 2019) [Doc. 114-15, PageID 1362-63].

always address all motions for remand as soon as possible to avoid potentially duplicative, costly, and unnecessary federal proceedings."). In light of the best practices embodied in these guidelines for federal judges, this Court should enter an order establishing a procedure for prompt consideration of this Court's subject matter jurisdiction over removed cases.

The preeminent issue of subject matter jurisdiction can be resolved in these hundreds of cases by an efficient procedure, and the Cities propose a protocol that relies on categorizing the removal grounds and issuing show cause orders. *See* [Proposed] Order Establishing Remand Procedures (filed herewith). Motions for remand are already on file in hundreds of cases, and the Court could also order a period of time within which additional motions could be filed and briefed. The cases can be divided into buckets based on the removal grounds. This Court has already ruled on substantial federal question jurisdiction,[11] and therefore it is proper at this time to order remand of the cases to state court unless the removing defendants can show cause why specific factors in a particular case except that case from this Court's prior analysis. As to cases removed on other grounds, including purported complete diversity of citizenship, a Magistrate Judge can issue opinions in exemplar motions representing each category. After the Court rules on the exemplar cases, then the defendants should be ordered to show cause why a different decision should issue in a particular case. The proposed order filed herewith outlines how the fundamental issue of federal subject matter jurisdiction can be efficiently resolved on a systematic, streamlined basis.

### C. The Pending Motions to Remand Require No Arduous Inquiry; There Obviously Is No Federal Subject Matter Jurisdiction.

---

[11] *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 180246, at *1 (N.D. Ohio Jan. 14, 2019) (granting the State of Kentucky's Motion to Remand); *In re Nat'l Prescription Opiate Litig.*, No. 17-MD-2804, 2018 WL 4019413, at *3 (N.D. Ohio Aug. 23, 2018) (granting the State of Montana's Motion to Remand).

There is no federal subject matter jurisdiction over either of the Cities' cases. Complete diversity jurisdiction does not exist because Defendants in each case are New Mexico citizens. Defendants' removal theory, which has been rejected by courts nationwide, consists of the remarkable claim that the City could not file a single lawsuit to abate the same public nuisance, but rather had to sue the Defendants that caused the opioid crisis in two different lawsuits. No apposite authority supports Defendants' removal theory.

It is uncontested that complete diversity of citizenship is lacking on the face of each City's Complaint, and, yet, diversity of citizenship is the only purported basis for removing the cases to federal court. In its Notice of Removal of the City of Santa Fe's case, the removing Endo Defendants claimed that the Plaintiff is a citizen of New Mexico for purposes of diversity jurisdiction, and that the New Mexico citizenship of two Defendants named in the case, Dr. John Bray-Morris and nurse practitioner Nicole Renee Broderson, should be "ignored" and that these two defendants are "fraudulently misjoined." *See, generally,* Notice of Removal [DNM No. 1:19-cv-01105, Doc. 1]. Similarly, in its Notice of Removal of the City of Albuquerque's case, Endo argued that the Plaintiff is a citizen of New Mexico for purposes of diversity jurisdiction, and that the New Mexico citizenship of **seven** Defendants named in the case—Michael Gallegos, Bitu Sheth, PA, Laura LeBlanc, NP, Peter Pacheco, PA, Rebecca Duchon, PA, Marchell Woodruff, PA, and Andrei Marchenko, CNP—all should be "ignored" and that these seven defendants are "fraudulently misjoined." *See, generally,* Notice of Removal [DNM No. 1:19-cv-01168, Doc. 1].

No authority stands for the proposition that a governmental entity must bring two separate cases, in two different jurisdictions, to abate the same public nuisance. By removing on grounds that lack a scintilla of apposite support, Endo brazenly ignores controlling authority requiring a diametrically opposed approach to removal. "[R]emoval is entirely a creature of statute" and the

removal statutes "are to **be strictly construed**." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (emphasis added).

Endo does not come close to meeting this strict standard. As one court rejecting removal of a governmental entity's opioid case explained: "The Court has not been notified of any decision in these similar cases in which a court has found that there was federal jurisdiction." *Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.,* No. 3:19-CV-463, 2019 WL 3207795, at *2 (E.D. Va. July 16, 2019); *see also Dinwiddie County, Virginia v. Purdue Pharma, L.P.*, 3:19-CV-242, 2019 WL 2518130, at *2 (E.D. Va. June 18, 2019) ("The Court has not been notified **of *any* decision** in these similar cases in which a court has found that there was federal jurisdiction.") (emphasis added). Multiple additional federal decisions have rejected the same severance arguments the Endo Defendants allege, specifically finding that claims against medical care providers should not be severed from the claims against manufacturer and/or distributor defendants:

- "[T]he County's claims against the Prescriber Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor Defendants. First, the County brings a public nuisance claim against all Defendants. Specifically, the County alleges that the Manufacturer and Distributor Defendants contributed to the public nuisance by neglecting to investigate, report, or terminate suspicious orders from the Prescriber Defendants named in the Complaint."[12]

- "[T]he City's claims against the Rosen-Hoffberg Defendants [healthcare providers and medical practice] are factually and legally intertwined with its claims against the Manufacturer Defendants. First, the City brings public nuisance and negligence claims against all Defendants, alleging that all Defendants contributed to the opioid crisis in Baltimore. . . .
Because the City's claims against the Rosen-Hoffberg Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor Defendants, the Court concludes that the Rosen-Hoffberg Defendants are necessary and indispensable under Rule 19."[13]

---

[12] *Anne Arundel Cty., Maryland v. Purdue Pharma L.P.*, No. CV GLR-18-519, 2018 WL 1963789, at *5 (D. Md. Apr. 25, 2018).

[13] *Mayor & City Council of Baltimore v. Purdue Pharma L.P.,* No. CV GLR-18-800, 2018 WL 1963816, at *5 (D. Md. Apr. 25, 2018).

- "This Court joins Judge Cain and its own prior ruling in finding the recent holdings of the Maryland District Court in *Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, No. GLR-18-800, 2018 WL 1963816 (D. Md. April 25, 2018), and *Anne Arundel Cty., Md. v. Purdue Pharma, L.P.*, No. GLR-18-519, 2018 WL 1963789 (D. Md. April 25, 2018), to be most persuasive on the severance question. In those cases, similar issues and arguments were raised and the court found that the claims were factually and legally intertwined. The plaintiffs alleged that all of the defendants contributed to the [opioid] crisis in Baltimore and Anne Arundel County, and the court found that the healthcare provider-defendants were necessary and indispensable, and therefore not severable under Rule 21."[14]

- "[Opioid] Defendant Insys provides no insight or explanation as to why it did not promptly seek severance in state court prior to removal, and the undersigned declines to sanction its removing first and answering questions later approach."[15]

In addition, employing similar reasoning, courts have found that the manufacturers of opioid drugs are properly joined with other participants in the supply chain. One court reasoned, for example, that all defendants participated in the same vast scheme:

> This case involves claims against Defendants for engaging in a financial scheme to fraudulently market and fuel the sale of opioids. The similarities between the Defendants do overshadow any differences. The alleged acts are sufficiently intertwined with respect to the Defendants. The claims at issue are not so separate and distinct such that joinder would constitute injustice. Joinder promotes efficiency and will reduce delay, inconvenience, and expense to the parties. By contrast, Plaintiff will be highly prejudiced if the Distributor Defendants are severed and the Manufacturer Defendants are able to shift blame on to the absent Distributor Defendants. Joinder actually serves the interest of judicial economy in this case. Therefore, the Court finds that joinder is proper.

*Cty. of Delta v. Purdue Pharma, L.P.,* No. 4:18-CV-095, 2018 WL 1440485, at *4 (E.D. Tex. Mar. 22, 2018).[16]

---

[14]  *Cty. of Anderson v. Rite Aid of S.C., Inc*., No. 8:18-CV-1947-BHH, 2018 WL 8800188, at *7 (D.S.C. Aug. 20, 2018) (note omitted).

[15]  *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204, at 1213 (D. Nev. 2018) (quotation marks omitted).

[16]  *See also Mecklenburg*, 2019 WL 3207795, at *5 ("Actavis argues that the claims against the Manufacturer Defendants and the PBM Defendants are legally distinct from those against the

It will be no arduous inquiry for the Magistrate Judge to recommend remand, and for this Court to enter remand orders.

### D. In the Alternative, the Court Should Suggest That the JPML Remand to the Transferor Court.

The power to remand a case to the transferor court lies with the JPML. *See* 28 U.S.C. § 1407. The transferee court is expected to suggest remand to the JPML at some point after the referral.[17] The suggestion is weighty but not controlling.[18]

Pursuant to the plain statutory language, remand does not require that all pretrial matters be concluded. Rather, actions transferred by the JPML "shall be remanded by the panel at **or before** the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated[.]" 28 U.S.C.A. § 1407(a) (emphasis added). This remand provision constitutes "a duty [imposed] on the Panel." *Lexecon Inc. v. Milberg Weiss*

Distributor Defendants . . . . But that is not so. The Complaint alleges that all the defendants . . . participated in a vast scheme to enrich themselves by manufacturing, delivering, and prescribing opioids all at the cost of the public. . . . And many of the Counts within the Complaint allege that all defendants are responsible for the harm to Mecklenburg County."); *Dinwiddie*, 2019 WL 2518130, at *5 ("Mallinckrodt argues that the claims against the Manufacturer Defendants and the PBM Defendants are legally distinct from those against the Distributor Defendants . . . . But that is not so. The Complaint alleges that all the defendants . . . participated in a vast scheme to enrich themselves by manufacturing, delivering, and prescribing opioids all at the cost of the public. . . . And many of the Counts within the Complaint allege that all defendants are responsible for the harm to Dinwiddie County."); *Cty. of Travis v. Purdue Pharma*, LP, No. 1:18-CV-254-RP, 2018 WL 1518848, at *4 (W.D. Tex. Mar. 28, 2018) ("In light of the overlapping fact allegations, it is likely that the county would marshal some of the same evidence to prove its claims against both sets of defendants."); *Cty. of Falls v. Purdue Pharma, LP*, No. 6:18-CV-47-RP-JCM, 2018 WL 1518849, at *4 (W.D. Tex. Mar. 28, 2018) ("In light of the overlapping fact allegations, it is likely that the county would marshal some of the same evidence to prove its claims against both sets of defendants.").

[17] *See* R.P. J.P.M.L. Rules 10.1 – 10.3 (provisions for transferee court's suggestion of remand); *see also In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d 1193, 1198 (D. Minn. 2012) ("at some point after the JPML's referral, the transferee court is expected to suggest to the JPML that the matter should be returned to the transferor court for final resolution.") (citation omitted).

[18] *See, e.g., In re Baseball Bat Antitrust Litig.*, 112 F. Supp. 2d 1175, 1176 (J.P.M.L. 2000) ("The Panel's decision . . . departs from the suggestion received from the transferee judge").

*Bershad Hynes & Lerach*, 523 U.S. 26, 28 (1998).[19] "It is not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him by the Panel," but rather that discretion will dictate appropriate common proceedings.[20] Retention in this MDL offers no convenience or benefit to the Cities or to the courts, because rulings by a court lacking subject matter jurisdiction are moot, and the Federal Rules are inapplicable to the Cities' cases in the first instance. Continued retention of the City of Santa Fe's and the City of Albuquerque's cases will result in significant inefficiency, and is preventing the cases from proceeding before the state courts with subject matter jurisdiction over the claims.

"The exercise of . . . discretion to remand 'generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL.'" *In re Darvocet,* 106 F. Supp. 3d 849, 857–58 (E.D. Ky. 2015) (quoting *In re Express Scripts, Inc.*, No. 4:05CV1064 HEA, 2010 WL 5149270 at *1 (E.D. Mo. Dec. 13, 2010); further citation omitted).[21] Here, the

---

[19]  Specifically, *Lexecon* explains that:

> Title 28 U.S.C. § 1407(a) authorizes the Judicial Panel on Multidistrict Litigation to transfer civil actions with common issues of fact "to any district for coordinated or consolidated pretrial proceedings," but imposes a duty on the Panel to remand any such action to the original district "at or before the conclusion of such pretrial proceedings." *Ibid.*

523 U.S. at 28.

[20]  *In re Multidistrict Civil Actions Involving Air Crash Disaster Near Dayton, Ohio, on Mar. 9, 1967*, 386 F. Supp. 908, 909 (J.P.M.L. 1975); *see also In re Evergreen Valley Project Litig*., 435 F. Supp. 923, 924 (J.P.M.L. 1977) (same); *In re Brand-Name Prescription Drugs*, 264 F. Supp. 2d 1372, 1375 (J.P.M.L. 2003) (the "plain language of section 1407 accords the Panel discretion to remand cases before the conclusion" of pretrial proceedings).

[21]  "[T]he primary purpose behind assigning multidistrict litigation to a transferee court is to promote efficiency through the coordination of discovery." *In re Activated Carbon-Based Hunting Clothing, supra*, 840 F. Supp. 2d at 1198 (quoting and collecting cases). *See also In re Motor Fuel Temperature Sales Practices Litig*., No. 07-MD-1840-KHV, 2012 WL 1963350, at *2 (D. Kan. May 30, 2012) (generally, the decision turns on whether the cases will benefit from continued inclusion in the MDL); *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 38 (D.D.C. 2007) (whether to suggest remand should be guided in large part by

answer is a resounding no. This federal MDL has not benefitted the Cities of Santa Fe or Albuquerque, either in terms of a ruling that would apply in one of the City's cases or in terms of settlement opportunities.[22]

There is no federal subject matter jurisdiction over Albuquerque or Santa Fe's cases. *See* § III.C *supra*. There can be no benefit from centralization of a case where there is no subject matter jurisdiction, both because the Federal Rules on pretrial proceedings are inapplicable, and because the lack of federal subject matter jurisdiction divests the Court of authority to rule. "A fundamental principle of federal procedure is that federal courts have limited subject-matter jurisdiction and are impotent to decide cases beyond that limited jurisdiction." *Capital One Bank (USA) N.A. v. Jones*, 710 F. Supp. 2d 630, 631 (N.D. Ohio 2010). Any federal district court judgment entered absent jurisdiction must be vacated by the court of appeals. *Id*. (citation omitted).[23]

Here, the Cities' cases are misplaced in the same queue as cases that actually have federal subject-matter jurisdiction, which are merely awaiting the conclusion of coordinated pretrial proceedings to be remanded to the transferor courts, where the pretrial rulings made in the MDL will be apposite. Santa Fe and Albuquerque, however, do not share a legal posture with cases which belong here and may benefit from federal coordinated pretrial proceedings. Independently, to the extent that there are common pretrial issues appropriate for resolution in a national MDL

---

whether one option is more likely to insure the maximum efficiency for all parties and the judiciary) (citation omitted).

[22] *See In re: Asbestos Prod. Liab. Litig. (No. VI)*, 560 F. Supp. 2d 1351, 1352 (J.P.M.L. 2008) ("This success rate makes us particularly reluctant to depart from the transferee court's conclusions with respect to the appropriateness of remand."); *In re Asbestos Prod. Liab. Litig. (No. VI)*, 545 F. Supp. 2d 1362, 1363 (J.P.M.L. 2008) ("This success rate makes us particularly reluctant to overrule the transferee court's conclusions with respect to the appropriateness of remand.").

[23] *See also GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018) ("It is fundamental that federal courts must have subject matter jurisdiction before reaching the merits of a case").

court, the Court already made the pretrial judicial determinations raised in association with the track one trial setting.[24]

The Cities have received disparate treatment compared to other cases that this Court has suggested for remand. This Court will not allow the Cities to file renewed remand motions in this Court.[25] However, the Court has suggested remand of other cases.[26] This disparate treatment is unfair. The Cities are particularly plagued by the opioid epidemic and have been designated as high intensity drug trafficking areas, and did everything possible to avoid the delays incident to an MDL transfer. **Exhibit 1,** Albuquerque FAC, p. 80 ¶ 232; **Exhibit 2**, Santa Fe FAC, pp. 80-81 ¶ 233; *accord* § II.B *supra*.

### E. The Disregard of the Limits of Federal Subject Matter Jurisdiction Offends Considerations of Comity.

Our "system of 'dual sovereignty'" protects the States from encroachment by the federal government. *Printz v. United States*, 521 U.S. 898, 918 (1997) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991)). "'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.'" *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100,

---

[24] *Cf. In re Richardson-Merrell, Inc. Bendectin Prod. Liab. Litig. (No. II)*, 606 F. Supp. 715, 716 (J.P.M.L. 1985) (after conclusion of trial conducted by transferee judge, transferee judge advised Panel that he had completed his task under Section 1407 as transferee judge).

[25] *See* Order Regarding Remands [Doc. #: 130]; Case Management Order No. 1, at p. 11 ¶6.g ("No party may file any motion not expressly authorized by this Order absent further Order of this Court or express agreement of the parties.") [Doc. #: 232].

[26] *See* Suggestions of Remand, *Cabell County Comm'n v. AmerisourceBergen Drug Corp., et al.,* No. 17-OP-45053, *City of Huntington, W.V. v. AmerisourceBergen Drug Corp., et al*., No. 17-OP-45054 (Jan. 6, 2020) [Doc. #: 3059]; Suggestions of Remand, *City and County of San Francisco, Cal., et al. v. Purdue Pharma L.P. et al.,* No. 1:19-OP-45022, *City of Chicago v. Purdue Pharma L.P. et al.,* No. 1:17-OP-45169, *Cherokee Nation v. McKesson Corp. et al.,* No. 1:18-OP-45695 (Nov. 19, 2019) [Doc. #: 2941]; Order of Severance and Order of Remand, *Jefferson County, et al. v. Williams, et al.,* No. 1:19-OP-45371 (July 24, 2019) [Doc. #: 1987]; Remand Order, *County of Carbon v. Purdue Pharma L.P., et al.,* Case No. 19-OP-45337, *Delaware County, Pennsylvania v. Purdue Pharma L.P., et al.*, Case No. 19-OP-45285 (July 2, 2019) [Doc. #: 1800].

109 (1941) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)). The policy underlying removal statutes "is one calling for the strict construction of such legislation." *Shamrock*, 313 U.S. at 108; *see also Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (parenthetically quoting same). Just last year, the United States Supreme Court in *Fort Bend* recognized that policing the boundary between state and federal jurisdiction remains the task of every federal judge when the Court reiterated that objections to subject matter jurisdiction must be considered *sua sponte*. *See Ft. Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citation omitted). The indefinite moratorium on remanding cases offends substantial federalism concerns.

The Sixth Circuit has recognized the inherent injustice in allowing removal as a delay tactic, which is clearly what the Defendants have done in removing hundreds of cases here. In the context of appellate jurisdiction, the appeals court explained that, "[p]arties to state litigation should not be delayed by procedural fencing over the intricacies and perplexities of removal jurisdiction, and state courts should not be long interrupted in the conduct of their litigation by removal petitions." *State of Ohio v. Wright*, 992 F.2d 616, 617 (6th Cir. 1993) (en banc). The Sixth Circuit rejected an interpretation of the federal removal statutes that would turn removal into a means of substantially delaying justice. *Id.* at 619 (footnote omitted). Here, the injustice of these delays has been previously recognized by this Court.

### F. The Disregard of Significant Federalism Concerns Unfairly Benefits the PEC.

As their cases lingers in a Court that lacks subject matter jurisdiction, the Cities have now been subjected to the PEC's attempt to assess 7% against any settlement—with any defendant-- based upon the happenstance of the claim remaining warehoused in this MDL. *See Amended Mot. for Entry of Order Establishing Common Benefit Fund* (January 28, 2020) [Doc. #: 3112]. By virtue of the moratorium on remands, the PEC seeks to obtain a common fund assessment from

19

cases that were improvidently removed. That outcome defies the jurisdictional limits of federal courts. *See* Opp. to Mot. for Entry of Order Establishing Common Benefit Fund [Doc. #: 3189]; Negotiation Class Opt Out Resp. to Prof. Rubenstein's R&R [Doc. #: 3348]; County of Harris' Br. in Resp. to Prof. Rubenstein's R&R [Doc. #: 3350] (which the Cities adopt).

The PEC's motion was met with "dire" "warnings" to the effect that acceding to the PEC's demand might "'disrupt' settlement progress 'irreparably,'" "would 'seriously jeopardize' global settlement possibilities," and "would 'sabotage' global settlement efforts." Report and Recommendation Addressing Motion for Common Benefit Fund (hereinafter R&R), p. 6 (internal citations omitted) [Doc. #: 3319, PageID #: 494892]. In his Report and Recommendation to the Court, Professor William B. Rubenstein found that "significant federalism concerns" were raised by the PEC's common benefit fee demand. R&R, at p. 8.

## IV.    CONCLUSION

Keeping Santa Fe's and Albuquerque's cases in this MDL serves no benefit to the Court or parties. The totality of the circumstances weighs overwhelmingly in favor of permitting a prompt determination of the jurisdictional question here. Accordingly, the City of Santa Fe and the City of Albuquerque respectfully request that this Court promulgate a procedure for the expeditious consideration of remand motions, and remand the cases accordingly. In the alternative, the Cities request that this Court issue to the United States Judicial Panel on Multidistrict Litigation a suggestion of remand of their causes to the United States District Court for the District of New Mexico, where the issue of subject-matter jurisdiction may be swiftly decided.

Date:   July 25, 2020                          Respectfully Submitted,

                                               */s/ Matthew R. McCarley*
                                               Matthew R. McCarley
                                               Texas Bar No. 24041426
                                               mccarley@fnlawfirm.com

20

S. Ann Saucer
Texas Bar No. 00797885
Louisiana Bar No. 21368
asaucer@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Tel. (214) 890-0711
Fax (214) 890-0712

Pia Salazar
pia@salazar-sullivanlaw.com
Patrick Sullivan
pat@salazar-sullivanlaw.com
**SALAZAR, SULLIVAN & JASIONOWSKI**
100 Gold Avenue SW, Suite 201
Albuquerque, New Mexico 87102
Tel. (505) 314-1414
Fax. (505) 31401419

Matthew S. Daniel
Texas Bar No. 24047575
mdaniel@lawyerworks.com
**FERRER POIROT & WANSBROUGH**
2603 Oak Lawn Ave. Ste. 300
Dallas, Texas 75219
Tel. (214) 521-4412
Fax (866) 513-0115

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record at their email-addresses on file with the Court.

*/s/ Matthew R. McCarley*
Matthew R. McCarley

21