# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| CITY OF ALBUQUERQUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-01168-JFR-SCY |
| | ) | |
| TEVA PHARMACEUTICALS USA, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF CITY OF ALBUQUERQUE'S MOTION TO REMAND

### TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   ALBUQUERQUE'S COMPLAINT STATES CAUSES OF ACTION AGAINST
      NEW MEXICO CITIZENS FOR THEIR CULPABLE PARTICIPATION IN THE
      OPIOID SUPPLY CHAIN. ...................................................................................... 2

III.  ARGUMENT AND AUTHORITIES .................................................................... 6

  A.  Defendants Must Carry a Heavy Burden of Demonstrating that, After Resolving All
      Doubts in Favor of Remand, the Removal Was Proper. ................................................ 7

  B.  Prescribing Defendants Cannot be "Ignored." .............................................................. 8

      1. All Defendants are properly joined under the Rules. ................................................ 8

      2. Defendants' logic is circular. .................................................................................... 9

      3. Courts nationwide in opioid litigation have remanded to state court, rejecting the
         same severance arguments advanced by Endo Defendants in this case. ................ 11

      4. Severance is not possible because it will prejudice the City of Albuquerque. ........ 14

  C.  The Fraudulent Misjoinder Theory Alternatively Alleged Is Inapplicable and,
      Independently, Has Not Been Adopted in the Tenth Circuit. .................................... 17

      1. Courts nationwide in opioid litigation have rejected the same fraudulent
         "misjoinder" argument advanced by Endo Defendants in this case. ...................... 18

      2. The fraudulent "misjoinder" doctrine has been widely criticized outside of the
         Eleventh Circuit and has not been adopted in the Tenth Circuit. ........................... 21

  D.  The Removal Is Procedurally Defective Because All Served Defendants Have Not
      Joined in the Removal. ................................................................................................ 22

IV.   STATEMENT REGARDING ORAL ARGUMENT ........................................ 23

V.    CONCLUSION AND PRAYER FOR RELIEF ............................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anne Arundel Cty., Maryland v. Purdue Pharma L.P.*,
    No. CV GLR-18-519, 2018 WL 1963789 (D. Md. Apr. 25, 2018) ......................11, 12, 19, 20

*Ash v. Providence Hosp.*,
    No. 08–0525–WS–M, 2009 WL 424586 (S.D.Ala. Feb. 17, 2009) ..................................10, 14

*New Mexico, ex rel. Balderas v. Preferred Care, Inc.*,
    158 F. Supp. 3d 1226 (D.N.M. 2015) .....................................................................................7

*New Mexico ex rel. Balderas v. Purdue Pharma L.P.*,
    323 F. Supp. 3d 1242 (D.N.M. 2018) .....................................................................................7

*In re Bard IVC Filters Prods. Liab. Litig.*,
    No. CV-16-00344-PHX-DGC, 2016 WL 2347430 (D. Ariz. May 4, 2016) ..........................10

*In re Bard IVC Filters Prods. Liab. Litig.*,
    No. CV-16-00786-PHX-DGC, 2016 WL 2956557 (D. Ariz. May 23, 2016) ........................17

*Brady v. Lovelace Health Plan*,
    504 F.Supp.2d 1170 (D.N.M. 2007) .....................................................................................23

*Brown v. Endo Pharms., Inc.*,
    38 F. Supp. 3d 1312 (S.D. Ala. 2014)......................................................................................9

*Cordill v. Purdue Pharma, L.P.*,
    No. 1:02CV00121, 2002 WL 31474466 (W.D. Va. Nov. 5, 2002).........................................20

*Couch v. Astec Indus., Inc.*,
    71 F.Supp.2d 1145 (D.N.M.1999) .........................................................................................18

*Cty. Comm'n of McDowell Cty. v. McKesson Corp.*,
    263 F. Supp. 3d 639 (S.D. W. Va. 2017)...............................................................................20

*Cty. of Anderson v. Rite Aid of S.C., Inc.*,
    No. 8:18-CV-1947-BHH, 2018 WL 8800188 (D.S.C. Aug. 20, 2018) ........................1, 12, 19

*Cty. of Delta v. Purdue Pharma, L.P.*,
    No. 4:18-CV-095, 2018 WL 1440485 (E.D. Tex. Mar. 22, 2018) ..............................13, 14, 20

*Cty. of Falls v. Purdue Pharma, LP*,
    No. 6:18-CV-47-RP-JCM, 2018 WL 1518849 (W.D. Tex. Mar. 28, 2018)...............13, 14, 20

*Cty. of Travis v. Purdue Pharma*,
    LP, No. 1:18-CV-254-RP, 2018 WL 1518848 (W.D. Tex. Mar. 28, 2018) ...............13, 14, 20

*Cuevas v. BAC Home Loans Servicing, LP*,
    648 F.3d 242 (5th Cir.2011) ................................................................................18

*Curry v. U.S. Bulk Transp., Inc.*,
    462 F.3d 536 (6th Cir. 2006) ...............................................................................16

*Dinwiddie Cty., Virginia v. Purdue Pharma, L.P.*,
    No. 3:19-CV-242, 2019 WL 2518130 (E.D. Va. June 18, 2019) .....................................13, 20

*Dutcher v. Matheson*,
    733 F.3d 980 (10th Cir. 2013) ...........................................................................7, 18

*Dutcher v. Matheson*,
    840 F.3d 1183 (10th Cir. 2016) ..............................................................................7

*Echols v. OMNI Med. Group, Inc.*,
    751 F.Supp.2d 1214 (N.D.Okla.2010) .........................................................10, 11, 14

*Ferry v. Bekum Am. Corp.*,
    185 F. Supp. 2d 1285 (M.D. Fla. 2002) ...................................................................16

*Flores-Duenas v. Briones*,
    No. CIV 13-0660 JB/CG, 2013 WL 6503537 (D.N.M. Dec. 1, 2013) .....................................18

*Gallup Med Flight, LLC v. Builders Tr. of New Mexico*,
    240 F. Supp. 3d 1161 (D. N.M. 2017) ...................................................................7, 8

*U.S. ex rel. Grynberg v. Praxair, Inc.*,
    389 F.3d 1038 (10th Cir. 2004) ..............................................................................7

*Gunn v. Minton*,
    568 U.S. 251 (2013)...........................................................................................7

*United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*,
    190 F.3d 1156 (10th Cir. 1999) ..............................................................................7

*Hagensicker v. Bos. Sci. Corp.*,
    No. 12-5018-CV-SW-RED, 2012 WL 836804 (W.D. Mo. Mar. 12, 2012) .....................11, 14

*Hampton v. Insys Therapeutics, Inc.*,
    319 F. Supp. 3d 1204 (D. Nev. 2018)........................................................... *passim*

*Hart v. Bayer Corp.*,
    199 F.3d 239 (5th Cir. 2000) ...............................................................................18

*Ibarra v. Kennedy Funding, Inc.*,
No. CIV 13-2371 TUC JGZ, 2014 WL 1878750 (D. Ariz. May 12, 2014) ...........................16

*Joseph v. Baxter Int'l*,
614 F.Supp.2d 868 (N.D. Ohio 2009)...............................................................................17

*Karnes v. Boeing, Co*.,
335 F.3d 1189 (10th Cir. 2003) .........................................................................................7

*Lafalier v. State Farm Fire & Cas. Co.*,
391 F. App'x 732 (10th Cir. 2010) ...................................................................................21

*Lopez v. Pfeffer*,
No. 13-CV-03341 NC, 2013 WL 5367723 (N.D. Cal. Sept. 25, 2013)................................10

*Mayfield v. London Women's Care, PLLC*,
No. 15-19, 2015 WL 3440492 (E.D. Ky. May 28, 2015)......................................................17

*Mayor & City Council of Baltimore v. Purdue Pharma L.P.*,
No. CV GLR-18-800, 2018 WL 1963816 (D. Md. Apr. 25, 2018)............................12, 19, 21

*Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.*,
No. 3:19-CV-463, 2019 WL 3207795 (E.D. Va. July 16, 2019)................................13, 19, 20

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*,
478 U.S. 804 (1996)............................................................................................................8

*Montano v. Allstate Indemnity Co*.,
211 F.3d 1278, 2000 WL 525592 (10th Cir.2000) (unpublished table opinion)...................18

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989).............................................................................................15, 16, 17

*Nolan v. Olean Gen. Hosp*.,
No. 13-CV-333-A, 2013 WL 3475475 (W.D.N.Y. July 10, 2013) .........................................11

*Ohler v. Purdue Pharma, L.P.*,
No. CIV.A. 01-3061, 2002 WL 88945 (E.D. La. Jan. 22, 2002)...........................................20

*Pampillonia v. RJR Nabisco, Inc.*,
138 F.3d 459 (2d Cir.1998)...............................................................................................18

*Perry v. Luu*,
No. 13–cv–00729–AWI–JLT, 2013 WL 3354446 (E.D. Cal. July 3, 2013)...........................10

*Perry v. Norwest Fin'l Ala., Inc.*,
Case No. Civ. A 98-0260-CB-C, 1998 WL 964987 (N.D. Ala. Dec. 9, 1998) ......................10

iv

*Prempro Prods. Liability Litig.,*
    591 F.3d 613 (8th Cir. 2010) ................................................................22

*United States ex rel. Precision Co. v. Koch Indus., Inc.,*
    971 F.2d 548 (10th Cir. 1992) ................................................................7

*Robinson v. Swedish Health Servs.,*
    10-cv-0113, 2010 WL 816818 (W.D. Wash. Mar. 5, 2010)..................14

*Rost v. Pfizer Inc.,*
    502 Fed.Appx. 51 (2d Cir. 2012)...........................................................14

*Saviour v. Stavropoulos,*
    No. CV 15-5362, 2015 WL 6810856 (E.D. Pa. Nov. 5, 2015)..............14

*Smith v. Am. Med. Sys., Inc.,*
    No. 2:09-CV-168-TMP, 2009 WL 10688480 (N.D. Ala. Aug. 25, 2009) .............................17

*Spann v. Northwestern Mut. Life Ins.,*
    795 F. Supp. 386 (M.D. Ala.1992) ........................................................16

*Sta-Rite Indus., Inc. v. Allstate Ins. Co.,*
    96 F.3d 281 (7th Cir. 1996) ...................................................................16

*Staubus v. Purdue Pharma, L.P.,*
    No. 2:17-CV-122-TAV-CLC, 2017 WL 4767688 (E.D. Tenn. Oct. 20, 2017) ....20, 21, 22, 23

*Syngenta Crop Prot., Inc. v. Henson,*
    537 U.S. 28 (2002)..................................................................................7

*Tapscott v. MS Dealer Serv. Corp.,*
    77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office
    Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000)...............................20, 21, 22

*Thee Sombrero, Inc. v. Murphy,*
    No. EDCV 15-001004-VAP, 2015 WL 4399631 (C.D. Cal. July 17, 2015) .........................22

*U.S. for Use & Benefit of Gen. Rock & Sand Corp. v. Chuska Dev. Corp.,*
    55 F.3d 1491 (10th Cir. 1995) ...............................................................15

*Ullman v. Safeway Ins. Co.,*
    995 F. Supp. 2d 1196 (D.N.M. 2013) ....................................................23

*United States v. Kemp & Assocs., Inc.,*
    907 F.3d 1264 (10th Cir. 2018) ...............................................................7

*Zamora v. Wells Fargo Home Mortg.,*
    831 F. Supp. 2d 1284 (D. N.M. 2011) .....................................................7

**Statutes**

28 U.S.C. Section 1332(a) ............................................................................22

28 U.S.C. § 1446(b)(2)(A) .......................................................................22, 23

NMSA 1978, Section 26-1-18 .......................................................................6

**Other Authorities**

FED. R. CIV. P. 19 ..................................................................................8, 10

FED. R. CIV. P. 20 ..................................................................................8, 10

FED. R. CIV. P.  21 .........................................................................9, 10, 11, 12

FED. R. CIV. P.  82 .................................................................................6, 11

14 Moore's Federal Practice, § 82.02 ..............................................................11

NMRA, Rule 1-019(A) .................................................................................8

NMRA, Rule 1-020(A) .................................................................................8

## I.        INTRODUCTION

The City of Albuquerque, New Mexico, initiated legal action in State court to protect its citizens from the worst man-made epidemic in modern medical history – the scourge of debilitating addiction, overdoses, and deaths caused by prescription opioids. Unlike the crack cocaine and crystal methamphetamine epidemics that proceeded it, this drug crisis began with a corporate business plan. *See* First Am. Complaint ("FAC") ¶1 [Doc. 1-1, Page 5 of 275].  Defendants had a duty to guard against diversion of highly addictive drugs into illicit channels, but for profit, unleashed a flood of these drugs into Albuquerque. *See, generally*, FAC [Doc. 1-1]. The City has taken legal action in order to protect its citizens and abate the scourge of opioid addiction. In response, Defendants have removed the case as a ploy to secure a cross-country transfer to an MDL court that will refuse to allow the City to even file a remand motion.[1] Defendants' removal theory, which has been rejected by courts nationwide, consists of the remarkable claim that the City could not file a single lawsuit to abate the same public nuisance, but rather had to sue the Defendants that caused the opioid crisis in two different lawsuits. No apposite authority supports Defendants' demand.

There is no federal subject matter jurisdiction. Complete diversity jurisdiction does not exist because seven Defendants are New Mexico citizens. In its Notice of Removal, the removing Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. (occ. "Endo") state that the

---

[1] *See* Order Regarding Remands, *In re National Prescription Opiate Litigation,* MDL 2804 (N.D. Ohio Feb. 16, 2018) (Ex. 1) (entering moratorium on motions to remand); Case Management Order No. 1 (N.D. Ohio April 11, 2018) (Ex. 2), at ¶6.g ("No party may file any motion not expressly authorized by this Order absent further Order of this Court or express agreement of the parties."); *see also Cty. of Anderson v. Rite Aid of S.C., Inc*., No. 8:18-CV-1947-BHH, 2018 WL 8800188, at *2 (D.S.C. Aug. 20, 2018) ("The MDL Court has issued a moratorium on all substantive filings, including motions to remand, and has indicated that it is not going to rule on any pending motions to remand at the present time.").

Plaintiff is a citizen of New Mexico for purposes of diversity jurisdiction, and that the New Mexico citizenship of *seven* Defendants named in the case--Michael Gallegos, Bitu Sheth, PA, Laura LeBlanc, NP, Peter Pacheco, PA, Rebecca Duchon, PA, Marchell Woodruff, PA, and Andrei Marchenko, CNP--all should be "ignored" and that these seven defendants are "fraudulently misjoined." *See, generally,* Notice of Removal ("NoR") [Doc. 1]. Thus, it is uncontested that complete diversity of citizenship is lacking on the face of the City's Complaint, and, yet, diversity of citizenship is the only purported basis for removing the case to federal court. Numerous courts across the country facing the same severance and misjoinder arguments from opioid defendants have rejected them and remanded governmental entities' cases against opioid defendants to the state courts wherein they were filed. This body of jurisprudence is substantively indistinguishable. Simply put, Endo is repeating arguments that have been flatly rejected elsewhere.

II.     **ALBUQUERQUE'S COMPLAINT STATES CAUSES OF ACTION AGAINST NEW MEXICO CITIZENS FOR THEIR CULPABLE PARTICIPATION IN THE OPIOID SUPPLY CHAIN.**

        The opioid epidemic did not unfold in a vacuum. The closed system regulating controlled substances was designed to protect the public health and safety from ubiquitous availability of highly addictive opioids, but Defendants caused that system to fail. The controls on these drugs failed at different levels, and the synchronicity of these avarice-driven failures allowed these drugs to flood Albuquerque in dangerous, massive quantities. The Manufacturer Defendants who made these drugs misrepresented their properties and engaged in the diversion into illicit channels.[2] The wholesale drug Distributors, who were required to act as anti-diversion stop gaps, deliberately

_____

[2]  Defined in the FAC at ¶¶20-33.

2

flooded the market with quantities of drugs in excess of any legitimate therapeutic need.[3] The Pharmacy Defendants consistently ignored unresolvable red flags of diversion, filling prescriptions that allowed the dangerously addictive drugs to flow into illicit channels.[4] New Mexico pharmacist Michael Gallegos was cited by the State of New Mexico Board of Pharmacy as it relates to his negligence.[5] The final group of Defendants, Albuquerque medical practitioners Bitu Sheth, PA, Laura LeBlanc, NP, Peter Pacheco, PA, Rebecca Duchon, PA, Marchell Woodruff, PA, and Andrei Marchenko, CNP, abdicated their state-law duties by initiating improper prescriptions, thereby causing the diversion of highly addictive opioids into the wrong hands.[6] These dangerous opioids were diverted into illicit channels by flowing through these four tiers in the manufacture and supply chain, and the six New Mexico Defendants writing the prescriptions are indispensable actors in the chain.

Four of the seven causes of action in the City of Albuquerque's state court complaint are addressed to **all** of these Defendants, resident and non-resident alike. The public health crisis in Albuquerque was caused by each Defendant, and they are joined together because their actionable wrongdoings contributed to the public nuisance. The first cause of action against all Defendants seeks to abate the public nuisance caused by the scourge of opioid addiction and abuse.  FAC ¶¶279-294 [Doc. 1-1, Pages 100-106 of 275]. The fifth, sixth, and seventh causes of action, also against all Defendants, allege negligence and negligence per se, gross negligence and punitive damages, and unjust enrichment. FAC ¶¶354-405 [Doc. 1-1, Pages 120-129 of 275].

---

[3]  The Distributor Defendants are defined in the FAC at ¶¶34-42.
[4]  The Pharmacy Defendants are Walgreens, Wal-Mart, and CVS. FAC at ¶¶43-44.
[5]  FAC at ¶ 234.
[6]  *See* FAC at ¶¶ 47-52, 234-240, 361.

In demanding that this Court "ignore" the seven New Mexico citizen Defendants who were part of the prescription opioid supply chain, the Endo Defendants overlook the pleadings against them. The Complaint explains that medical practitioners profited from the dangerous marketplace of prescription opioids. FAC ¶233 [Doc. 1-1, Page 84 of 275]. The Albuquerque prescribing Defendants had unique duties under New Mexico law, by virtue of their professional licenses, not to prescribe outside the usual course of practice and for other than a legitimate medical purpose. FAC ¶361 [Doc. 1-1, Page 122 of 275]. Each of the seven New Mexico Defendants abdicated their duties under State law by failing to exercise due diligence before prescribing, by failing to report suspicious orders, and/or by contributing to the diversion of these dangerously addictive drugs into illicit channels in the City of Albuquerque. *See* FAC ¶¶234-0241 [Doc. 1-1, Pages 84-85 of 275].

Defendant Michael Gallegos was cited by the State New Mexico Board of Pharmacy regarding his handling of dangerous opioids. The Complaint avers that Defendant Gallegos is at fault for failing to adequately maintain his annual controlled substance inventory.[7] Defendant Andrei Marchenko, CNP, is currently under investigation by the DEA. Defendant Marchenko is among Albuquerque's highest opioid prescribers, and he is charged in the Complaint with negligently overprescribing these drugs.[8]

---

[7] FAC ¶234 [Doc. 1-1, Page 84 of 275] ("Upon information and belief, Defendant Michael Gallegos negligently did not comply with keeping his annual controlled substance inventory and was cited by the State of New Mexico Board of Pharmacy as it relates to dangerous opioid controlled substances.").

[8] FAC ¶240 [Doc. 1-1, Page 85 of 275] ("Upon information and belief, Andrei Marchenko, CNP was one of the highest prescribers of opioids in Albuquerque and is currently under investigation by the DEA. Upon information and belief, Andrei Marchenko, CNP negligently prescribed dangerous opioid controlled substances to his patients.").

Defendant Bitu Sheth, PA is another of the high prescribers of opioids in Albuquerque.[9] The Complaint charges her with negligently overprescribing dangerous opioids. Similarly, Defendant Laura LeBlanc, NP, is one of the highest prescribers of opioids in Albuquerque, and she too is alleged to have negligently overprescribed these drugs.[10] Similarly, Defendant Peter Pacheco, PA is another one of the highest prescribers of opioids in Albuquerque and has negligently overprescribed opioids, as alleged in the Complaint.[11] Defendant Rebecca Duchon, PA is another high prescriber of opioids in Albuquerque, and the Complaint also charges her with negligently overprescribing these dangerous drugs.[12] Defendant Marchell Woodruff, PA is one of the highest prescribers of opioids in Albuquerque, and she has negligently overprescribed dangerous opioids.[13] All seven of these individuals are New Mexico citizens, thus destroying complete diversity.

The seven New Mexico citizens acted in tandem with the out-of-state Defendants in causing the public nuisance plaguing the City of Albuquerque. All of these Defendants breached their duties to protect the supply chain of these dangerously addictive drugs. Specifically, all of the Defendants repeatedly breached their duties under state laws and regulations, including without

---

[9]  FAC ¶235 [Doc. 1-1, Page 84 of 275] ("Upon information and belief, Defendant Bitu Sheth, PA is one of the highest prescribers of opioids in Albuquerque and has negligently overprescribed dangerous opioid controlled substances throughout her practice.").

[10]  FAC ¶236 [Doc. 1-1, Page 84 of 275] ("Upon information and belief, Defendant Laura LeBlanc, NP is one of the highest prescribers of opioids in Albuquerque and has negligently overprescribed dangerous opioid controlled substances to her patients.").

[11]  FAC ¶237 [Doc. 1-1, Page 85 of 275] ("Upon information and belief, Defendant Peter Pacheco, PA is one of the highest prescribers of opioids in Albuquerque and has negligently overprescribed dangerous opioid controlled substances to his patients.").

[12]  FAC ¶238 [Doc. 1-1, Page 85 of 275] ("Upon information and belief, Defendant Rebecca Duchon, PA is one of the highest prescribers of opioids in Albuquerque and has negligently overprescribed dangerous opioid controlled substances to her patients.").

[13]  FAC ¶239 [Doc. 1-1, Page 85 of 275] ("Upon information and belief, Defendant Marchell Woodruff, PA is one of the highest prescribers of opioids in Albuquerque and has negligently overprescribed dangerous opioid controlled substances to her patients.").

limitation NMSA 1978, Section 26-1-18, 16.19.8.13 NMAC, and 16.19.20.48 NMAC, all of which are public safety laws. FAC ¶¶361-363 [Doc. 1-1, Page 122 of 275]. Both the resident and the non-resident Defendants "have duties under *inter alia* these laws to protect against diversion of prescription opioids for non-medical and non-scientific purposes and to guard against, prevent, and report suspicious orders of opioids." FAC ¶¶362-363 [Doc. 1-1, Page 122 of 275]. The causes of action against all of the Defendants thereby share common issues of law and of fact.

Notably, Endo Defendants do not deny that valid causes of action are stated against the seven Defendants that are  New Mexico citizens; rather, Endo Defendants quite incredibly claim that Albuquerque should have filed two lawsuits to abate the same opioid crisis.

## III.   ARGUMENT AND AUTHORITIES

Endo Defendants cannot carry the heavy burden of justifying removal. Defendants' "ignore"-via-severance theory should be rejected for multiple, independent reasons: i) the Court cannot create jurisdiction by exercising jurisdiction, the logic is circular; ii) the stratagem of using the Rules to create jurisdiction violates Federal Rule of Civil Procedure 82; iii) even under the authority relied upon by Endo, severance is not possible because it prejudices the Plaintiff; and, finally, iv) the Defendants are properly joined, and no authority whatsoever requires a plaintiff to abate the same public nuisance in two separate lawsuits. *See* § III.B *infra*. The fraudulent "misjoinder" doctrine has not been adopted in the Tenth Circuit and is independently inapposite. *See* § III.C *infra*. Finally, the removal is procedurally defective. *See* § III.D *infra*.

## A. Defendants Must Carry a Heavy Burden of Demonstrating that, After Resolving All Doubts in Favor of Remand, the Removal Was Proper.

"It is axiomatic that federal courts are courts of limited jurisdiction."[14] Recognizing the limitations on federal jurisdiction is "a foundational premise of American federalism."[15] "[R]emoval is entirely a creature of statute" and the removal statutes "are to **be strictly construed**."[16] Federal courts "'presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction' that jurisdiction exists; that showing must be made by a preponderance of the evidence."[17] "Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that courts must deny such jurisdiction if not affirmatively apparent on the record."[18] The Tenth Circuit has "emphasize[d] that the burden is on [the removing party] to show jurisdiction."[19]

Simply put, "courts should construe removal statutes strictly and resolve all doubts in favor of remand."[20] "Indeed, the Supreme Court has 'forcefully reiterated' that district courts must

---

[14] *United States v. Kemp & Assocs., Inc*., 907 F.3d 1264, 1268 (10th Cir. 2018); *see also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute.") (cit. & quot. om.).

[15] *New Mexico, ex rel. Balderas v. Preferred Care, Inc*., 158 F. Supp. 3d 1226, 1229 (D.N.M. 2015) (citing *Gunn*).

[16] *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (emphasis added; citation omitted); *see also New Mexico ex rel. Balderas v. Purdue Pharma L.P*., 323 F. Supp. 3d 1242, 1248 (D.N.M. 2018) ("Removal statutes are to be strictly construed, and the party invoking federal jurisdiction bears the burden of proof with a presumption against federal jurisdiction.") (citing *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013)).

[17] *Dutcher v. Matheson*, 840 F.3d 1183, 1189 (10th Cir. 2016) (quoting *Dutcher*, 733 F.3d at 985 (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc*., 190 F.3d 1156, 1160 (10th Cir. 1999)); *see also U.S. ex rel. Grynberg v. Praxair, Inc*., 389 F.3d 1038, 1048 (10th Cir. 2004) ("Because federal courts are courts of limited jurisdiction, 'we presume no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction.'") (quoting *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir. 1992)).

[18] *Gallup Med Flight, LLC v. Builders Tr. of New Mexico*, 240 F. Supp. 3d 1161, 1211 (D. N.M. 2017) (cit. & int. quot. marks om.).

[19] *Karnes v. Boeing, Co*., 335 F.3d 1189, 1194 (10th Cir. 2003) (remanding case).

[20] *Zamora v. Wells Fargo Home Mortg*., 831 F. Supp. 2d 1284, 1304–05 (D. N.M. 2011).

exercise 'prudence and restraint' when determining whether a state cause of action presents a federal question, because 'determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system.'"[21]

Particularly considering that the Notice of Removal repeats arguments that have been rejected by courts nationwide, the Endo Defendants cannot carry their strict burden of resolving all doubts in favor of removal.

### B. Prescribing Defendants Cannot be "Ignored."

#### 1. All Defendants are properly joined under the Rules.

Defendants are properly joined because four causes of action are brought jointly against all Defendants, because the liability of each and every Defendant arises out of the same transactions and series of transactions, because numerous questions of law and fact are common to all Defendants' liability, and because a court cannot accord the City complete relief if the New Mexico resident Defendants are missing.[22] Severance will prejudice the City by allowing the nonresident Defendants to point to an empty chair, and other United States District Courts in opioid litigation have expressly so found. *See* §III.B.4 *infra*. Nonetheless, the Endo Defendants' removal notice

---

[21] *Gallup*, 240 F. Supp. 3d at 1205 (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 810 (1996); further citation omitted).

[22] NMRA, Rule 1-019(A) ("A person who is subject to service of process shall be joined as a party in the action if: (1) in his absence complete relief cannot be accorded among those already parties"); NMRA, Rule 1-020(A) ("All persons may be joined in one action as defendants if there is asserted against them jointly, severally or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action."). *Compare also* FED. R. CIV. P. 19(a) ("A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties"); FED. R. CIV. P. 20 (a)(2) (Defendants "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.").

claims that the Court should create subject matter jurisdiction—which does not exist on the face of the Complaint-- by severing the claims against seven Defendants pursuant to Rule 21 of the Federal Rules of Civil Procedure. NoR ¶¶36-47 [Doc. 1, Pages 10-16 of 30]. Removal cannot be justified on these grounds.

*All* Defendants created and fed the opioid crisis in Albuquerque, causing the City to incur substantial economic expenses in *inter alia* health care and law enforcement costs. Albuquerque's Complaint explains the connection and interplay of all Defendants, as all participated in the supply chain of these dangerously addictive drugs. The New Mexico practitioner Defendants, the drug dispensing pharmacy Defendants, and the wholesale distributor Defendants are the channels through which opioids wrongfully flowed from the opioid manufacturer Defendants and into the City of Albuquerque. The City has pleaded these connections between the non-resident and resident Defendants. *See* § II *supra*. The New Mexico Defendants wrote the prescriptions, and the other Defendants' participation **in the same supply chain** made the resulting harm possible. For each prescription for which practitioner Defendants are culpable, the pharmacy Defendants filled the prescriptions, the distributor Defendants ignored red flags in delivering the drugs to the pharmacies, and the manufacturer Defendants likewise participated in diversion of the drugs they misrepresented. Simply put, each category of Defendants named here are part of the same series of transactions that delivered dangerously addictive drugs into illicit channels.

## 2.  **Defendants' logic is circular.**

"Federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204, 1213–14 (D. Nev. 2018) (quoting *Brown v. Endo Pharms., Inc.*, 38 F. Supp. 3d 1312, 1326 (S.D. Ala. 2014) (collecting cases)). "[A] defendant lacking 'the proper jurisdictional key

with which to open the doors of federal court' cannot rely on Rule 21 severance as a surreptitious means 'to climb in the window.'" 319 F. Supp. 3d at 1214 (quoting *Perry v. Norwest Fin'l Ala., Inc.*, Case No. Civ. A 98-0260-CB-C, 1998 WL 964987, at *2 (N.D. Ala. Dec. 9, 1998)).  Put another way, it is confounding circular logic to exercise jurisdiction to sever claims for the sole purpose of creating jurisdiction:

> The Court is confounded by the concept's circular logic in that it requires the Court first—in full recognition of the lack of diversity jurisdiction—sever part of the case and only then find it has jurisdiction. However, the authority to sever misjoined claims or defendants under Rule 20 presumes the Court has jurisdiction to act.

*Lopez v. Pfeffer*, No. 13-CV-03341 NC, 2013 WL 5367723, at *5 (N.D. Cal. Sept. 25, 2013) (quoting *Perry v. Luu*, No. 13–cv–00729–AWI–JLT, 2013 WL 3354446, at * 5 (E.D. Cal. July 3, 2013)).[23] "The better approach is to have such severance arguments addressed to, and adjudicated by, the state court." *Hampton*, 319 F. Supp. 3d at 1214 (citations omitted).

The rejection of severance as a post-removal maneuver to create non-existing subject matter jurisdiction in federal court specifically has been rejected where, as here, opioid manufacturers try to sever healthcare providers, as one court explained:

> [T]he treating healthcare defendants were not misjoined in this action. Thus, if the Court were to sever the treating healthcare defendants, it would be severing parties that were properly joined in order to create subject-matter jurisdiction where it would not otherwise exist. *See Echols v. OMNI Med. Group, Inc*., 751 F.Supp.2d 1214, 1216 (N.D.Okla.2010) (finding severance inappropriate in part, because it would extend federal jurisdiction where it would otherwise not exist by severing the nondiverse parties); *Ash v. Providence Hosp*., No. 08–0525–WS–M, 2009 WL 424586, at *9 n. 19 (S.D.Ala. Feb. 17, 2009) (same and citing cases in support).

---

[23] S*ee also Hampton,* 319 F. Supp. 3d at 1214 ("Courts have flatly rejected this [sever] approach as relying on the same 'confound[ing] ... circular logic' by which a removing defendant asks the court to act without jurisdiction as a means to create jurisdiction.") (quoting *Lopez*); *In re Bard IVC Filters Prods. Liab. Litig*., No. CV-16-00344-PHX-DGC, 2016 WL 2347430, at *8 (D. Ariz. May 4, 2016) ("a court's use of Federal Rule of Civil Procedure 21 presumes that the court has subject matter jurisdiction over the claims").

*Hagensicker v. Bos. Sci. Corp.*, No. 12-5018-CV-SW-RED, 2012 WL 836804, at *4 (W.D. Mo. Mar. 12, 2012).

Another reason why "an independent ground for subject matter jurisdiction must exist before the Rules are applied"[24] is because Rule 21 severance of claims is also limited by Federal Rules Civil Procedure 82 which states: "These rules do not extend or limit the jurisdiction of the district courts." FED. R. CIV. P. 82; *see also Echols*, 751 F. Supp. 2d at 1215 (Rule 21 severance of claims is also limited by the language of Fed.R.Civ.P. 82: '[t]hese rules do not extend or limit the jurisdiction of the district courts.'").

> ### 3. Courts nationwide in opioid litigation have remanded to state court, rejecting the same severance arguments advanced by Endo Defendants in this case.

Multiple federal decisions have rejected the same severance arguments the Endo Defendants allege here, specifically finding that claims against medical care providers should not be severed from the claims against manufacturer and/or distributor defendants:

- "[T]he County's claims against the Prescriber Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor Defendants. First, the County brings a public nuisance claim against all Defendants. Specifically, the County alleges that the Manufacturer and Distributor Defendants contributed to the public nuisance by neglecting to investigate, report, or terminate suspicious orders from the Prescriber Defendants named in the Complaint."[25]

- "[T]he City's claims against the Rosen-Hoffberg Defendants [healthcare providers and medical practice] are factually and legally intertwined with its claims against the Manufacturer Defendants. First, the City brings public nuisance and negligence claims against all Defendants, alleging that all Defendants contributed to the opioid crisis in Baltimore. . . .
  Because the City's claims against the Rosen-Hoffberg Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor

---

[24] *Nolan v. Olean Gen. Hosp.*, No. 13-CV-333-A, 2013 WL 3475475, at *5 (W.D.N.Y. July 10, 2013) (citing 14 Moore's Federal Practice, § 82.02 (Matthew Bender 3d ed.)).

[25] *Anne Arundel Cty., Maryland v. Purdue Pharma L.P.*, No. CV GLR-18-519, 2018 WL 1963789, at *5 (D. Md. Apr. 25, 2018).

11

Defendants, the Court concludes that the Rosen-Hoffberg Defendants are necessary and indispensable under Rule 19."[26]

- "This Court joins Judge Cain and its own prior ruling in finding the recent holdings of the Maryland District Court in *Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, No. GLR-18-800, 2018 WL 1963816 (D. Md. April 25, 2018), and *Anne Arundel Cty., Md. v. Purdue Pharma, L.P.*, No. GLR-18-519, 2018 WL 1963789 (D. Md. April 25, 2018), to be most persuasive on the severance question. In those cases, similar issues and arguments were raised and the court found that the claims were factually and legally intertwined. The plaintiffs alleged that all of the defendants contributed to the opioid crisis in Baltimore and Anne Arundel County, and the court found that the healthcare provider-defendants were necessary and indispensable, and therefore not severable under Rule 21."[27]

- "[Opioid] Defendant Insys provides no insight or explanation as to why it did not promptly seek severance in state court prior to removal, and the undersigned declines to sanction its removing first and answering questions later approach."[28]

In addition, employing similar reasoning, courts have found that the manufacturers of opioid drugs are properly joined with other participants in the supply chain. One court reasoned, for example, that all defendants participated in the same vast scheme:

This case involves claims against Defendants for engaging in a financial scheme to fraudulently market and fuel the sale of opioids. The similarities between the Defendants do overshadow any differences. The alleged acts are sufficiently intertwined with respect to the Defendants. The claims at issue are not so separate and distinct such that joinder would constitute injustice. Joinder promotes efficiency and will reduce delay, inconvenience, and expense to the parties. By contrast, Plaintiff will be highly prejudiced if the Distributor Defendants are severed and the Manufacturer Defendants are able to shift blame on to the absent Distributor Defendants. Joinder actually serves the interest of judicial economy in this case. Therefore, the Court finds that joinder is proper.

---

[26] *Mayor & City Council of Baltimore v. Purdue Pharma L.P.,* No. CV GLR-18-800, 2018 WL 1963816, at *5 (D. Md. Apr. 25, 2018).

[27] *Cty. of Anderson v. Rite Aid of S.C., Inc.*, No. 8:18-CV-1947-BHH, 2018 WL 8800188, at *7 (D.S.C. Aug. 20, 2018) (note omitted).

[28] *Hampton*, 319 F. Supp. 3d at 1213 (quotation marks omitted).

*Cty. of Delta v. Purdue Pharma, L.P.,* No. 4:18-CV-095, 2018 WL 1440485, at *4 (E.D. Tex. Mar. 22, 2018). *See also Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.*, No. 3:19-CV-463, 2019 WL 3207795, at *5 (E.D. Va. July 16, 2019) ("Actavis argues that the claims against the Manufacturer Defendants and the PBM Defendants are legally distinct from those against the Distributor Defendants . . . . But that is not so. The Complaint alleges that all the defendants . . . participated in a vast scheme to enrich themselves by manufacturing, delivering, and prescribing opioids all at the cost of the public. . . . And many of the Counts within the Complaint allege that all defendants are responsible for the harm to Mecklenburg County."); *Dinwiddie Cty., Virginia v. Purdue Pharma, L.P.*, No. 3:19-CV-242, 2019 WL 2518130, at *5 (E.D. Va. June 18, 2019) ("Mallinckrodt argues that the claims against the Manufacturer Defendants and the PBM Defendants are legally distinct from those against the Distributor Defendants . . . But that is not so. The Complaint alleges that all the defendants . . . participated in a vast scheme to enrich themselves by manufacturing, delivering, and prescribing opioids all at the cost of the public. . . . And many of the Counts within the Complaint allege that all defendants are responsible for the harm to Dinwiddie County."); *Cty. of Travis v. Purdue Pharma*, LP, No. 1:18-CV-254-RP, 2018 WL 1518848, at *4 (W.D. Tex. Mar. 28, 2018) ("In light of the overlapping fact allegations, it is likely that the county would marshal some of the same evidence to prove its claims against both sets of defendants."); *Cty. of Falls v. Purdue Pharma, LP*, No. 6:18-CV-47-RP-JCM, 2018 WL 1518849, at *4 (W.D. Tex. Mar. 28, 2018) ("In light of the overlapping fact allegations, it is likely that the county would marshal some of the same evidence to prove its claims against both sets of defendants.").

### 4.  Severance is not possible because it will prejudice the City of Albuquerque.

Among the reasons that courts around the country have determined that joinder of all opioid supply chain participants is proper is the resulting prejudice to the governmental entity if these culpable parties cannot be pursued in the same litigation, thereby allowing Defendants in both cases to blame the proverbial empty chairs.[29]

It is well recognized that having to litigate against one defendant in state court while simultaneously litigating claims against other defendants in an MDL centralized in a different state's federal court is prejudicial. *See, e.g., Saviour v. Stavropoulos*, No. CV 15-5362, 2015 WL 6810856, at *4 (E.D. Pa. Nov. 5, 2015) (medical device case).  Collecting cases, the *Saviour* court concluded that:

> A number of courts have declined to sever non-diverse parties under circumstances similar to those presented in this case, even where the remaining claims could have been transferred to an MDL. *See, e.g., Echols v. OMNI Med. Grp., Inc*., 751 F. Supp. 2d 1214, 1217 (N.D. Okla. 2010); *Robinson v. Swedish Health Servs*., 10-cv-0113, 2010 WL 816818, at *2 (W.D. Wash. Mar. 5, 2010); *Ash v. Providence Hosp*., No. 08-cv-0525, 2009 WL 424586, at *9 n.19 (S.D. Ala. Feb. 17, 2009); *see also Rost v. Pfizer Inc*., 502 Fed.Appx. 51, 53 (2d Cir. 2012) (holding that the district court did not abuse its discretion by denying a motion to sever a non-diverse defendant in order to avoid litigating "one [case] in federal court against the diverse defendants and one [case] in state court"). This Court agrees with these cases.

*Saviour*, 2015 WL 6810856, at *5; *see also Hagensicker, supra*, 2012 WL 836804, at *4 ("Plaintiff and the treating healthcare defendants could both be prejudiced if the treating healthcare defendants were severed.") (citing *Echols*, 751 F.Supp.2d at 1217).

---

[29]  *Cty. of Travis, supra*, 2018 WL 1518848, at *4 ("Should the Court sever this action, the county would be prejudiced by Defendants' ability to assign blame to an absent party in each case."); *Cty. of Falls, supra,* 2018 WL 1518849, at *4 ("Should the Court sever this action, the county would be prejudiced by Defendants' ability to assign blame to an absent party in each case."); *Cty. of Delta, supra*, 2018 WL 1440485, at *4 (quoted above).

The prejudice to the City of Albuquerque is one reason why Endo misplaces heavy reliance on *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989), and a minority representation of its progeny. In *Newman-Green,* the case was before Judge Easterbrook for appellate oral argument in the Seventh Circuit when he raised a jurisdictional defect that had been apparently overlooked by counsel and the District Court Judge. *Id*. at 828. The Supreme Court accepted certiorari, deciding that the Seven Circuit had the authority to dismiss the nondiverse dispensable party, but that "we emphasize that such authority should be exercised sparingly. In each case, the appellate court should carefully consider whether the dismissal of a nondiverse party **will prejudice any of the parties in the litigation**." *Id*. at 837-38 (emphasis added). In the *Newman-Green* case, the nondiverse party could have been dismissed by the appeals court, but only because "none of the parties will be harmed by [the] dismissal," for reasons articulated by the Supreme Court. *Id*. at 838.[30] Here, in stark contrast, the City of Albuquerque will not only be deprived of its chosen forum, but will be further substantially prejudiced by a stay of the litigation in seeming perpetuity (*see* note 1 *supra*). In addition, the City of Albuquerque will be prejudiced by any severance, as it will be forced to pursue its lawsuit in two different courts, may face an "empty chair" argument with different defendants in different cases, and risks inconsistent or conflicting judgments.

*Newman-Green* is distinguishable for the additional reasons that the Court did not rule that the Rules of Civil Procedure could be used to expand the scope of removal jurisdiction after the fact or that severance was proper over the plaintiff's objection, as the Sixth Circuit explained:

> *Newman–Green* is fundamentally different from the circumstances of this case because *Newman–Green* **did not involve removal**, but was rather an instance where the plaintiff originally filed suit in federal court and wished to resolve its

---

[30]  *See also U.S. for Use & Benefit of Gen. Rock & Sand Corp. v. Chuska Dev. Corp*., 55 F.3d 1491, 1496 (10th Cir. 1995) (the prerequisites for discretionary relief under *Newman-Greene* are "that these defendants are dispensable and that their dismissal at this stage would not prejudice any of the parties involved").

> dispute in that forum. Importantly, in *Newman–Green* it was the plaintiff, who
> wished to be in federal court all along, who sought to dismiss the nondiverse
> defendant that it had identified, when the problem with complete diversity became
> apparent.
>
> . . . [I]n . . . *Newman–Green*. . ., the triggering factor for the appellate authority to
> dismiss the nondiverse defendants to cure the lack of jurisdiction was the *plaintiff's*
> motion to enable it to proceed with the case against diverse defendants in federal
> court. This is a far cry from the circumstances in this case. Here Curry wished to
> bring this lawsuit against all three defendants in state court. As the plaintiff, Curry
> is the master of his complaint, . . . . and he properly chose to pursue his tort claims
> . . . in one lawsuit in state court.

*Curry v. U.S. Bulk Transp., Inc*., 462 F.3d 536, 542 (6th Cir. 2006) (emphasis added; citation

omitted). *See also Ferry v. Bekum Am. Corp*., 185 F. Supp. 2d 1285, 1289 (M.D. Fla. 2002)

(*Newman-Green* does not "support dropping a nondiverse *plaintiff*, over the *plaintiff's* objection,

in order to retain (or create) subject matter jurisdiction"); *id*. at 1290 ("The fact that the Plaintiffs,

who have a choice of a state forum, have objected to severing or dropping the claims of Ms.

Watchus weighs against the Defendants' proposal.") (citation omitted); *Spann v. Northwestern*

*Mut. Life Ins.*, 795 F. Supp. 386, 390–91 (M.D. Ala.1992) (rejecting defendant's request to drop

nondiverse defendant to establish diversity in removed case, since plaintiff had not made this

request); *Ibarra v. Kennedy Funding, Inc*., No. CIV 13-2371 TUC JGZ, 2014 WL 1878750, at *5

(D. Ariz. May 12, 2014) ("in *Newman–Green* the plaintiff filed a motion to dismiss the defendant

that defeated diversity. The Supreme Court held that the court of appeals had the authority to grant

the plaintiff's motion to dismiss a dispensable defendant that destroys diversity. It did not hold that

a defendant that destroys diversity always must be dismissed. Here, there has been no such motion

to dismiss. *Newman–Green* is inapposite to the instant case."), *report and recommendation*

*adopted*, No. CV-13-02371-TUC-JGZ, 2014 WL 2711837 (D. Ariz. June 16, 2014).[31]

---

[31] *Cf. Sta-Rite Indus., Inc. v. Allstate Ins. Co*., 96 F.3d 281, 287 (7th Cir. 1996) (distinguishing
*Newman-Green* and reasoning that, "here, there is presently pending a state court action involving
all the parties and the same issues. No such alternative forum existed in *Newman–Green*.").

Other cases cited in Endo's removal notice are similarly unavailing. In addition to citing *Newman-Green*, Endo's removal notice devotes two paragraphs to a disquisition regarding *Joseph v. Baxter Int'l*, 614 F.Supp.2d 868 (N.D. Ohio 2009), and states in a third paragraph that other courts have followed "the same approach" as *Joseph*. NoR, ¶¶39-41 [Doc. 1, Pages 11-12 of 30]. *Joseph* has been heavily criticized as "simply wrong." *Smith v. Am. Med. Sys., Inc.*, No. 2:09-CV-168-TMP, 2009 WL 10688480, at *4 (N.D. Ala. Aug. 25, 2009), *adopted*, No. 2009 WL 10688481 (N.D. Ala. Sept. 25, 2009). *Joseph* misplaced reliance on *Newman-Green*, because there the **plaintiff** voluntarily moved to dismiss the non-diverse defendant. That was not the case in *Joseph*, where the court apparently "dropped" the non-diverse defendant over the objection of the plaintiff. *See Smith,* 2009 WL 10688480 (criticizing *Joseph*). Favorably citing *Smith* and rejecting Defendant Insys' reliance on *Joseph*, the United States District Court for the District of Nevada observed that *Joseph* has "not enjoyed broad support."[32] Other decisions cited in the removal notice have likewise been rejected by other courts.[33]

Finally, *Newman-Green* is inapplicable because there the party that the plaintiff had agreed to dismiss was **dispensable**, but here, the opioid defendants are not dispensable, as several courts have found in opioid cases quoted above. *See* § III.B.3 *supra*.

C.  **The Fraudulent Misjoinder Theory Alternatively Alleged Is Inapplicable and, Independently, Has Not Been Adopted in the Tenth Circuit.**

Endo Defendants do not attempt to carry the heavy burden of establishing fraudulent joinder, and the removal notice omits any explanation as to how the claims against the prescribers

---

[32]  *Hampton*, 319 F. Supp. 3d at 1214 n.10. *See also In re Bard IVC Filters Prods. Liab. Litig*., No. CV-16-00786-PHX-DGC, 2016 WL 2956557, at *7 (D. Ariz. May 23, 2016) (declining to follow *Joseph*).

[33]  *See, e.g., Bard IVC, supra,* 2016 WL 2956557, at *7 (declining to follow *Mayfield v. London Women's Care, PLLC*, No. 15-19, 2015 WL 3440492 (E.D. Ky. May 28, 2015)); *Hampton*, 319 F. Supp. 3d at 1214 n.10 (declining to follow *Mayfield*).

17

are not viable as a matter of state law.[34] Instead, the Endo Defendants rely on a suspect "fraudulent misjoinder" theory manufactured in an Eleventh Circuit case which has not been adopted in the Tenth Circuit. This alternative theory of removal should be rejected for two, independent reasons: it has not been adopted by the Tenth Circuit (*see* §III.C.2 *infra*); and, it is inapplicable (*see* §III.C.1 *infra*).

### 1.   Courts nationwide in opioid litigation have rejected the same fraudulent "misjoinder" argument advanced by Endo Defendants in this case.

The City's claims against the prescribers are not fraudulently misjoined with the other Defendants participating in the opioid supply chain because the "claims against all the defendants are factually, legally, and logically related, arising out of the alleged interconnected activities, from

---

[34]  "To establish [fraudulent] joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir.2011)). "The defendant seeking removal **bears a heavy burden** of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988 (quoting *Pampillonia v. RJR Nabisco, Inc*., 138 F.3d 459, 461 (2d Cir.1998)) (emphasis added). The heavy burden means:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.

*Montano v. Allstate Indemnity Co*., 211 F.3d 1278, 2000 WL 525592, at *2 (10th Cir.2000) (unpublished table opinion) (quoting *Hart v. Bayer Corp*., 199 F.3d 239, 246 (5th Cir. 2000)). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." *Couch v. Astec Indus., Inc*., 71 F.Supp.2d 1145, 1146–47 (D.N.M.1999); *see also Flores-Duenas v. Briones*, No. CIV 13-0660 JB/CG, 2013 WL 6503537, at *18 (D.N.M. Dec. 1, 2013) (quoting *Couch*).

manufacturing the opioids to delivering them to patients."[35]  Multiple federal decisions have rejected the same fraudulent misjoinder argument the Endo Defendants make here, explaining that causes of action against prescribing and treating medical professionals share common issues of fact with the manufacturers and/or distributors of opioids:

- "[I]t is clear that the County's claims against the Prescriber Defendants are logically related to its claims against the Manufacturer and Distributor Defendants. . . . [T]he County brings a public nuisance claim against all Defendants. The County alleges, among other things, that the Manufacturer and Distributor Defendants created a public nuisance by failing to identify and report suspicious behavior by the Prescriber Defendants. . . . Because the County's claims against the Prescriber Defendants are logically related to its claims against the Manufacturer and Distributor Defendants, the Court concludes that the claims arise from the same transaction or occurrence."[36]

- "[I]t is clear that the City's claims against the Rosen-Hoffberg Defendants [healthcare providers and medical practice] are logically related to its claims against the Manufacturer and Distributor Defendants. . . . [T]he City brings public nuisance and negligence claims against all Defendants, alleging that all Defendants contributed to the opioid crisis in Baltimore. . . . Because the City's claims against the Rosen-Hoffberg Defendants are logically related to its claims against the Manufacturer and Distributor Defendants, the Court concludes that the claims arise from the same transaction or occurrence."[37]

- "The claims against [opioid Defendants, including pharmacy and a clinic] clearly have a logical relationship to one another and arise from the same or substantially related series of transactions and occurrences. At the very least, . . . the claims against the Manufacturer Defendants and the Distributor and Dealer Defendants are logically related, as all of these defendants are integral players in the prescription drug supply chain that provides opioids and other prescription drugs to people in South Carolina."[38]

- "[I]f this Court were to adopt the fraudulent misjoinder doctrine and apply state procedural law, then the state law claim that plaintiffs assert against Provider

---

[35]  *See Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.*, No. 3:19-CV-463, 2019 WL 3207795, at *6 (E.D. Va. July 16, 2019) (further quoted below).

[36]  *Anne Arundel Cty., Maryland v. Purdue Pharma L.P.*, No. CV GLR-18-519, 2018 WL 1963789, at *5 (D. Md. Apr. 25, 2018) (citation and quotation marks omitted).

[37]  *Mayor & City Council of Baltimore v. Purdue Pharma L.P.*, No. CV GLR-18-800, 2018 WL 1963816, at *5 (D. Md. Apr. 25, 2018) (citation and quotation marks omitted).

[38]  *Cty. of Anderson v. Rite Aid of S.C., Inc*., No. 8:18-CV-1947-BHH, 2018 WL 8800188, at *6 (D.S.C. Aug. 20, 2018).

Defendants and Manufacturer Defendants allows the plaintiffs to join defendants in one action. Because the presence of Provider Defendants defeats diversity jurisdiction, under the fraudulent misjoinder doctrine, plaintiffs would prevail."[39]

Similarly, courts have rejected the argument that other categories of opioid defendants have been "misjoined."[40]

In the face of this national body of caselaw overwhelmingly rejecting the same jurisdictional theory floated in the removal notice, the Endo Defendants cite two inapposite West Virginia opinions that rely on the idiosyncrasies of that State's laws.[41]

---

[39] *Staubus v. Purdue Pharma, L.P.,* No. 2:17-CV-122-TAV-CLC, 2017 WL 4767688, at *5 (E.D. Tenn. Oct. 20, 2017). *See also Ohler v. Purdue Pharma, L.P.,* No. CIV.A. 01-3061, 2002 WL 88945, at *7 (E.D. La. Jan. 22, 2002) (finding connexity between causes of action against opioid manufacturer and prescriber, rejecting misjoinder argument, and remanding case); *Cordill v. Purdue Pharma, L.P.*, No. 1:02CV00121, 2002 WL 31474466 (W.D. Va. Nov. 5, 2002) (rejecting fraudulent joinder and remanding case where prescribing defendants (doctor and clinic) and five pharmaceutical companies, including manufacturers, were named as defendants).

[40] *See Mecklenburg, supra*, 2019 WL 3207795, at *6 ("Even assuming that fraudulent misjoinder is a proper basis for removal (which is not clear since the Fourth Circuit has not expressly recognized it), the doctrine would not apply here because the claims asserted against the Distributor Defendants are clearly connected to those made against the Manufacturer and PBM Defendants."); *Dinwiddie Cty., Virginia v. Purdue Pharma, L.P.*, No. 3:19-CV-242, 2019 WL 2518130, at *5 (E.D. Va. June 18, 2019) ("The claims against all the defendants are factually, legally, and logically related, arising out of the alleged interconnected activities, from manufacturing the opioids to delivering them to patients. Thus, the claims against the Distributor Defendants were not misjoined. Indeed, the Distributor Defendants are the crucial link between the Manufacturer Defendants and patients who received the opioids. Fraudulent misjoinder is not a proper basis for removal."); *Cty. of Travis v. Purdue Pharma, LP*, No. 1:18-CV-254-RP, 2018 WL 1518848, at *4 (W.D. Tex. Mar. 28, 2018) ("This case does not present the sort of extreme case for which fraudulent misjoinder is reserved. . . . [T]he claims against each set of defendants are hardly wholly distinct or lacking any real connection; on the contrary, they raise a host of common factual and legal issues."); *Cty. of Falls v. Purdue Pharma, LP*, No. 6:18-CV-47-RP-JCM, 2018 WL 1518849, at *4 (W.D. Tex. Mar. 28, 2018) ("This case does not present the sort of extreme case for which fraudulent misjoinder is reserved. . . ."); *Cty. of Delta v. Purdue Pharma, L.P.*, No. 4:18-CV-095, 2018 WL 1440485, at *4 (E.D. Tex. Mar. 22, 2018) ("the Court finds that the Distributor Defendants do not allege facts that illustrate that the alleged misjoinder was 'egregious.' . . . The Court finds no fraudulent misjoinder under *Tapscott*.").

[41] The notice of removal relies upon *Cty. Comm'n of McDowell Cty. v. McKesson Corp*., 263 F. Supp. 3d 639, 644 (S.D.W. Va. 2017), which announces itself as "the rare case" and is based on a West Virginia statute that has no application here. This case is unconvincing as a reason to retain jurisdiction. *See Anne Arundel Cty., supra,* 2018 WL 1963789, at *5 (citing *McDowell* for

2.    **The fraudulent "misjoinder" doctrine has been widely criticized outside of the Eleventh Circuit and has not been adopted in the Tenth Circuit.**

The fraudulent misjoinder theory can be rejected for the independent reason that the Tenth Circuit declined the invitation to adopt it. The Endo Defendants claim that the doctrine is hypothetically available in the Tenth Circuit, but conspicuous by omission is a citation to a decision in which federal subject matter jurisdiction was recognized in this District or Circuit on the basis of this doctrine. *See* NoR ¶¶ 48-49 [Doc. 1, Pages 16-17 of 30]. The Notice of Removal misplaces reliance on *Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732 (10th Cir. 2010), suggesting that *Lafalier* is authority for the theory's recognition in this Circuit. NoR ¶48 [Doc. 1, Page 16 of 30]. In truth, however, this opinion expressly declines to adopt the fraudulent misjoinder/procedural misjoinder doctrine. *Lafalier*, 391 F. App'x at 739 ("we need not decide that issue today, because the record before us does not show that adopting the doctrine would change the result in this case."). The Tenth Circuit, along with the majority of courts, "have declined to adopt the fraudulent misjoinder doctrine."[42]

The fraudulent misjoinder doctrine was created by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072–76 (11th Cir. 2000). *Tapscott* has come under intense scrutiny by skeptical courts outside the Eleventh Circuit. There is a "sheer volume of . . . case law rejecting the fraudulent misjoinder doctrine."[43] "The reasons against the doctrine are many and

---

proposition that the district courts are split on whether the fraudulent misjoinder doctrine is even viable; remanding case to state court); *Baltimore, supra,* 2018 WL 1963816, at *5 (same).

[42] *Staubus, supra,* 2017 WL 4767688, at *4 (citing *Lafalier* and collecting cases).

[43] *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204, 1211 (D. Nev. 2018) (collecting cases within Ninth Circuit).

persuasive."[44] "The fraudulent misjoinder doctrine is complex, ambiguous, and perhaps even unnecessary. Few courts have acknowledged it as a viable doctrine. Fewer still have affirmatively adopted it."[45] As one United States District Court summarized the doctrine's widespread rejection:

> The criticism has focused largely on the fact that the fraudulent misjoinder doctrine runs afoul of the well-settled rule that federal jurisdiction is to be construed narrowly, that the fraudulent misjoinder doctrine creates an unpredictable and complex rule, and that questions of joinder under state law do not implicate federal subject matter jurisdiction. *See, e.g., Prempro Prods. Liability Litig.*, 591 F.3d [613, 621–22 (8th Cir. 2010)]. Numerous courts have found that the better approach is to require the defendant to challenge the claimed misjoinder in state court and, if that court severs the claims and diversity exists, to then seek removal to federal court. *See, e.g., Osborn [v. Metro Life Ins. Co.*, 341 F.Supp.2d 1123, 1127 (E.D. Cal. 2004)].
> . . . .
> Application of the fraudulent misjoinder doctrine also requires federal court action at a point when the court admittedly has no jurisdiction over the case . . . .
> [T]he doctrine raises more questions than answers . . . .[46]

Finally, the Endo Defendants mischaracterize the fraudulent misjoinder theory by claiming that egregiousness is not the standard. According to the decision creating the doctrine, fraudulent/procedural misjoinder applies only to "egregious" cases where the claims against the non-diverse party are "wholly distinct" from the claims against the diverse party. *Tapscott*, 77 F.3d at 1360.

**D.  The Removal Is Procedurally Defective Because All Served Defendants Have Not Joined in the Removal.**

The consent of all defendants is required for removal on grounds of diversity of citizenship under 28 U.S.C. Section 1332(a). 28 U.S.C. § 1446(b)(2)(A).  "The failure of one defendant to join in the notice renders the removal notice procedurally defective, which requires that the district

---

[44]  319 F. Supp. 3d at 1211 (quoting *Thee Sombrero, Inc. v. Murphy*, No. EDCV 15-001004-VAP, 2015 WL 4399631, at *4 (C.D. Cal. July 17, 2015)).
[45]  *Staubus*, 2017 WL 4767688, at *6 (declining to adopt the doctrine).
[46]  *Hampton*, 319 F. Supp. 3d at 1211-1212 (citations and quotation marks omitted).

court remand the case."[47] Six of the seven New Mexico Defendants were properly served in this case. Exhibits 3, 4, 5, 6, 7, and 8.  None consented to the removal. See NoR, ¶60 [Doc. 1, Page 20 of 30] (claiming consent not required); *id.* at Signature Pages [Doc. 1, pages 21-26 of 30]. "[I]t appears that no court has ever used the doctrine of fraudulent misjoinder for the purpose of determining whether the unanimous consent requirement has been met."[48] This is another reason compelling remand to state court.

## IV.    STATEMENT REGARDING ORAL ARGUMENT

Because the City of Albuquerque respectfully requests that this Court rule on this matter before a decision of the Judicial Panel of Multidistrict Litigation transferring this case to a court that will stay the City's case indefinitely (*see* note 1 *supra*), and because the removal notice is clearly baseless, the City does not request oral argument, but would be happy to appear if this Honorable Court chooses to set oral argument.

## V.    CONCLUSION AND PRAYER FOR RELIEF

In the midst of the gravest man-made public health crisis of our time, the Endo Defendants removed this case on the grounds of diversity of citizenship, while simultaneously alleging that the City of Albuquerque and seven of the Defendants are citizens of the State of New Mexico. There is no removal jurisdiction because there is no complete diversity. Endo cannot meet its heavy burden of demonstrating beyond any ambiguity that the federal judiciary's limited jurisdiction reaches the City's Complaint. Therefore, this case must be remanded.

The City respectfully requests that this Honorable Court grant this motion to remand; order that this case be remanded to the Second Judicial District Court, County of Bernalillo, State of

---

[47]  *Ullman v. Safeway Ins. Co.*, 995 F. Supp. 2d 1196, 1225 (D.N.M. 2013) (quoting *Brady v. Lovelace Health Plan*, 504 F.Supp.2d 1170, 1172–73 (D.N.M. 2007)).
[48]  *Staubus, supra*, 2017 WL 4767688, at *6.

New Mexico, for further proceedings; order that a certified copy of the order of remand be mailed by the United States clerk to the clerk of the New Mexico court, and rule on this matter prior to the next JPML Panel Hearing on March 26, 2020.[49]

Dated: December 17, 2019

**City of Albuquerque, New Mexico**

/s/ Pia Salazar
Pia Salazar
pia@salazar-sullivanlaw.com
Patrick Sullivan
pat@salazar-sullivanlaw.com
**SALAZAR, SULLIVAN & JASIONOWSKI**
100 Gold Avenue SW, Suite 201
Albuquerque, New Mexico 87102
Tel. (505) 314-1414
Fax. (505) 31401419


Matthew R. McCarley*
mccarley@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Tel. (214) 890-0711
Fax. (214) 890-0712


Matthew S. Daniel*
mcdaniel@lawyerworks.com
**FERRER POIROT & WANSBROUGH**
2603 Oak Lawn Ave. Ste. 300
Dallas, Texas 75219
Tel. (214) 521-4412
Fax (866) 513-0115


* indicates Pro Hac Vice to be submitted


**ATTORNEYS FOR THE PLAINTIFF
CITY OF ALBUQUERQUE**

---

[49]  At this time, it is probable that the City of Albuquerque's transfer opposition will be set for hearing on March 26, 2020, and not January 30, 2020; if there is an earlier setting, then the City will request an earlier ruling.

## CERTIFICATE OF CONFERENCE

Matthew McCarley conferred with counsel for Endo Health Solutions Inc. and Endo Pharmaceuticals, Inc. on December 13, 2019, and the Endo Defendants oppose the City of Albuquerque's Motion to Remand. John Pound, counsel for Endo stated to Matthew McCarley that the motion was opposed.

/s/ Pia Salazar

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of December 2019, a true and correct copy of the foregoing document was electronically filed and served to all counsel of record.

/s/ Pia Salazar
Pia Salazar

25

# Exhibit 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION | ) | CASE NO. 1:17-MD-2804 |
| OPIATE LITIGATION | ) | |
| | ) | JUDGE POLSTER |
| | ) | |
| | ) | **ORDER REGARDING REMANDS** |

On December 14, 2017, the Court issued a "moratorium on all filings" (Doc. #4), and later continued "the moratorium on all substantive filings" by order dated January 11, 2018 (Doc. #70). It has come to the Court's attention that the parties are concerned this moratorium may result in a waiver of certain rights and obligations of the parties to seek remand to state court.  Therefore, it is hereby ordered that:

•  the moratorium  on all substantive filings shall include all motions to remand;

•  all statutory deadlines are hereby suspended regarding motions to remand;

•  upon lifting the moratorium by subsequent order of this Court, the parties shall be allowed to file motions to remand without waiver of any rights or obligations related to timeliness;

•  in order to avoid unnecessary motion practice during the pendency of the moratorium, the parties will not be deemed to have waived any right to seek remand by failing to move for remand in the transferor court, or by agreeing not to oppose a Conditional Transfer Order allowing the cases to be transferred to this Court.

Furthermore, the existing moratorium does not apply to entry on the docket of executed waivers of service of process – these waivers may be filed.  Filing on the docket of waivers of service of

process, however, does not change the effect of the moratorium, such that: (1) the parties may not file responsive pleadings (e.g. answers or motions to dismiss): and (2) upon lifting of the moratorium by subsequent order of this Court, the parties shall be allowed to file responsive pleadings and motions without waiver of any rights or obligations related to timeliness.

   **IT IS SO ORDERED.**

                                    /s/ *Dan Aaron Polster*
                                    **DAN AARON POLSTER**
                                    **UNITED STATES DISTRICT JUDGE**

**Dated: February 16, 2018**

2

Case 1:19-cv-01168-JFR-SCY   Document 11-2   Filed 12/17/19   Page 1 of 21

# Exhibit 2

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*APPLIES TO ALL CASES* | Case No. 1:17-CV-2804<br><br>Hon. Dan A. Polster |

## CASE MANAGEMENT ORDER ONE

The parties in this case have been pursuing, and are continuing to pursue, settlement discussions, and they have made good progress. The parties have indicated, however, they believe settlement will be made more likely if, in addition to the "settlement track" they are currently pursuing, the Court also creates a "litigation track." Accordingly, the Court hereby enters this Case Management Plan, which directs the parties to engage in motion practice, discovery, and trial preparation for certain cases in this MDL.

1. **APPLICABILITY AND SCOPE OF ORDER**

   a. **Scope.** This CMO is intended to conserve judicial resources, reduce duplicative service, avoid duplicative discovery, serve the convenience of the parties and witnesses, and promote the just and efficient conduct of this litigation. *See* Fed. R. Civ. P. 1. This Order and, unless otherwise specified, any subsequent pretrial or case management orders issued in this MDL, shall govern the practice and procedure in: (1) those actions transferred to this Court by the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to its order entered on December 5, 2017, (2) any tag-along actions transferred to this Court by the JPML pursuant to Rules 7.1 and 7.2 of the Rules of Procedure of the Panel, after the filing of the final transfer order by the Clerk of the Court, and (3) all related actions originally filed in this Court or transferred or removed to this Court and assigned thereto as part of *In re: National Prescription Opiate*

*Litigation*, MDL No. 2804 ("MDL 2804").   These cases will be referred to as the "MDL proceedings."

The provisions of this Order, and any subsequent pretrial order or case management order issued in the MDL proceedings, shall supersede any inconsistent provisions of the Local Rules for the United States District Court, Northern District of Ohio ("Local Rules").  The coordination of MDL Proceedings, including certain of these cases that have been or may be directly filed into this MDL, does not constitute a waiver of any party's rights under *Lexecon v.  Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).  This CMO shall not be construed to affect the governing law or choice-of-law rules in any case subject to the CMO.

b.      **Application to All Parties and Counsel.**  This Order and all subsequent pretrial or case management orders shall be binding on all parties and their counsel in all cases currently pending, or subsequently transferred to, removed to, or pending in the MDL proceedings, and shall govern each case in the MDL proceedings unless the order explicitly states that it relates only to specific cases.

c.      **Amendment and Exceptions.**  This Order may be amended by the Court on its own motion, and any party may apply at any time to this Court for a modification or exception to this Order.  The Court expects it will issue subsequent case management orders addressing the cases mentioned in this CMO and other MDL proceedings.

2.      **MOTIONS TO DISMISS**

a.      The parties and Court agree that it will be efficient and informative to proceed with briefing on threshold legal issues on common claims.  Accordingly, the Court sets out below a process for choosing certain cases to brief these threshold legal issues, where these cases: (1) are filed in a representative variety of jurisdictions, (2) by a representative variety of

Plaintiffs, (3) against a representative variety of Defendants, and (4) which raise a representative variety of issues.

        b.     **Cases filed by local governmental entities in Ohio and Illinois**.  **No later than Wednesday, April 25, 2018**, and subject to paragraph 2.j, Plaintiffs in the following cases shall amend their Complaints or provide notice that the Complaint will not be amended, and Defendants may file motions to dismiss in any or all of these cases within **28 days thereafter**: (1)  *The County of Summit, Ohio. v. Purdue Pharma L.P.*, Case No. 18-OP-45090 (N.D. Ohio); and (2) *The City of Chicago, Illinois v. Purdue Pharma L.P.,* Case No. 17-OP-45169 (N.D. Ohio).

        c.     **Cases filed by local governmental entities in West Virginia, Michigan, and Florida.  No later than Wednesday, April 25, 2018**, and subject to paragraph 2.j, Plaintiffs in the following cases shall amend their Complaints or provide notice that the Complaint will not be amended, and Defendants may file motions to dismiss in any or all of these cases within **42 days thereafter**: (1) *Cabell County Commission, West Virginia v. AmerisourceBergen Drug Corp.*, Case No.  17-OP-45053 (N.D. Ohio); (2) *County of Monroe, Michigan v. Purdue Pharma L.P.*, Case No. 18-OP-4515 (N.D. Ohio); and (3) *Broward County, Florida v. Purdue Pharma L.P.*, Case No. 18-OP-45332 (N.D. Ohio).

        d.     **Cases filed by Sovereigns – Alabama and Indian Tribes.  No later than Wednesday, May 9, 2018,** and subject to paragraph 2.j, Plaintiff in the following case shall amend the Complaint or provide notice that the Complaint will not be amended, and Defendants may file motions to dismiss within **42 days thereafter**: *The State of Alabama v. Purdue Pharma L.P.,* Case No. 18-OP-45236 (N.D. Ohio).  In addition, the Court will issue a supplemental case management order addressing the Indian Tribes cases.

      e.     **Cases filed by Hospitals and Third-Party Payors.  No later than Friday, May 11, 2018**, the Hospital Representative of the Plaintiffs' Executive Committee ("PEC") shall identify for the parties and the Court a single MDL case filed by a hospital, the claims of which are governed by the law of one of the States listed in paragraphs 2.b and 2.c. Furthermore, **no later than Friday, May 11, 2018**, Defendants shall notify the parties and the Court that they have identified a single MDL case filed by a third-party payor, the claims of which are governed by the law of one of the States listed in paragraphs 2.b and 2.c.  The Court will issue a subsequent case management order setting deadlines in these cases.

      f.     Plaintiffs may respond to the motions in each of the above actions within **28 days** after the motions are filed, and Defendants may file replies within **21 days** thereafter. State Attorneys General may file amicus briefs in response to any motions to dismiss filed in *State of Alabama v. Purdue Pharma L.P.*

      g.     The parties shall endeavor to coordinate and consolidate briefing on all of the motions to dismiss and avoid duplicative briefing by incorporating similar arguments by reference.  For example: (1) manufacturer Defendants shall endeavor to file a single motion to dismiss in each case, addressing issues common to all manufacturers; (2) distributor Defendants shall endeavor to file a single motion to dismiss in each case, addressing issues common to all distributors; (3) manufacturer and distributor Defendants shall endeavor to present common issues together; (4) the parties shall not repeat arguments in subsequent cases or briefs; (5) Defendants shall raise only those issues they believe are most critical and most relevant to the settlement process; and so on.

      h.     The Court will strictly enforce provisions regarding length of memoranda filed in support of motions; and the Court will apply limitations applicable to complex cases. *See*

Local Rule 7.1.  Motions for relief from the length restrictions must show good cause for such relief and must be made <u>sufficiently in advance</u> to permit the Court to rule and the Clerk's Office to issue the ruling by regular mail.  Motions for relief from length restrictions which are filed contemporaneously with the memorandum exceeding the page limits will be denied.  In no event shall the request to exceed page limitations extend the time for filing of the underlying memorandum.

      i.     Chambers will not accept courtesy copies of motions or briefs unless expressly requested by the Court.  Exception: motions or briefs filed within two (2) business days of a conference/hearing/trial shall be emailed to the Court as well as opposing counsel on the same day it is filed.  The Court's email address for these filings is Polster_Chambers@ohnd.uscourts.gov.  Also, counsel shall provide to Special Master Cohen: (1) three-hole-punched, two-side-printed, written copies of all papers related to the motions to dismiss; and (2) thumb-drives containing as-filed PDFs of all papers related to the motions to dismiss, and also PDFs of all cases cited.

      j.     Defendants do not waive and shall be deemed to have preserved any defenses not addressed in the initial motions filed pursuant to the foregoing provisions, including but not limited to insufficient service of process and lack of personal jurisdiction.  Further, nothing in this Order is intended to waive any Defendant's right to file an individual motion to dismiss in any or all of the above-listed cases in the future on any grounds, including lack of personal jurisdiction.

      k.     Nothing in this Order is intended to waive any Plaintiff's right to move to file further amended pleadings in the above-listed cases if deemed appropriate.  Defendants reserve all rights related to any such motion or filings.

3.    **CASE TRACKS**

a.    **Track One.**  The following three cases are included in Track One: (1) *The County of Summit, Ohio. v. Purdue Pharma L.P.*, Case No. 18-OP-45090 (N.D. Ohio); (2) *The County of Cuyahoga v. Purdue Pharma L.P.*, Case No. 17-OP-45004 (N.D. Ohio); and (3) *City of Cleveland v. AmerisourceBergen Drug Corp.*, Case No. 18-OP-45132 (N.D. Ohio).

b.    **Amendments to Track One Complaints.  No later than Wednesday, April 25, 2018**, Plaintiffs in Track One Cases shall amend their Complaints or provide notice that the Complaint will not be amended at this time.

c.    **Written Discovery in Track One.**  Subject to the parameters in paragraph 9 below, written discovery in Track One Cases shall commence upon entry of this Order.

d.    **Insurance Information in Track One Cases**.  Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), the parties shall produce any insurance agreements under which an insurance business may be liable to satisfy all or part of a possible judgment in the Track One Cases, or to indemnify or reimburse for payments made to satisfy any judgment.  This includes agreements insuring against general liability, product liability, druggist liability, directors and officers liability, and any other applicable agreements.  The parties shall also produce charts that depict the insurance coverage that is or may be applicable to the claims in the Track One Cases.  The insurance agreements and coverage charts shall be produced within **30 days of the issuance of the protective order** referred to in paragraph 9.d.  The protective order shall include a provision that permits the parties' insurance companies to have access to, and communicate concerning, the materials produced in the Track One Cases.

      e.     **Depositions in Track One Cases**.  Depositions of parties will proceed in the Track One Cases as set forth below.

      i.     The parties will meet and confer and submit a proposal, **no later than Monday, May 21, 2018**, regarding numerical limits on fact witness depositions.

      ii.     Beginning on **June 4, 2018**, the parties may begin noticing fact witness depositions, which shall be completed by **August 31, 2018**.

      f.     **Close of Fact Discovery in Track One Cases.**  Fact discovery in the Track One Cases shall be completed by **August 31, 2018**.

      g.     **Expert Discovery in Track One Cases.**

      i.     By **September 7, 2018**, Plaintiffs shall serve expert reports in the Track One Cases and, for each expert, provide two proposed deposition dates between **September 17 and October 5, 2018**.

      ii.     By **October 12, 2018**, Defendants shall serve expert reports in the Track One Cases and, for each expert, provide two proposed deposition dates between **October 22 and November 9, 2018**.

      h.     **Schedule for Daubert and Dispositive Motions in Track One Cases.**

| | |
|---|---|
| **November 16, 2018** | Deadline for *Daubert* and dispositive motions in Track One trial cases. |
| **December 14, 2018** | Deadline for responses to *Daubert* and dispositive motions. |
| **January 7, 2019** | Deadline for replies in support of *Daubert* and dispositive motions. |
| **Week of January 14, 2019** | Hearing on *Daubert* and dispositive motions, or as otherwise set by the Court, if necessary. |

      i.     **Initial Trial Setting.**  The Court's current intention is to consolidate all three Track One Cases for trial, and to try all then-surviving claims against all then-surviving

Defendants.  The Court intends to begin the trial at **9:00 a.m. Eastern Time on Monday, March 18, 2019**, to last for a period of three weeks.  The parties shall meet and confer and submit to the Court, **no later than Friday, January 25, 2019,** joint or competing proposals addressing issues relating to the structure of the first trial and deadlines for other pretrial submissions and additional activities through trial.  The Court may accept or modify completely the parties' proposals.

       j.     **Additional Case Tracks.**  The parties and the Special Masters shall confer by **August 17, 2018**, to adopt a process and schedule for additional case tracks, which shall involve cases from the state and tribal <u>jurisdictions</u> identified in paragraph 2.  These additional cases need not necessarily be the cases listed in paragraph 2.  The parties and the Special Masters shall confer regularly as the Track One cases progress, to determine whether any modifications to this CMO are necessary, including whether any other cases should be set for discovery.

     4.     <u>**ELECTRONIC FILING PROCEDURES**</u>

The parties are expected to follow the Northern District of Ohio's policies and procedures on Electronic Case Filing.  All counsel of record are hereby directed to take steps as necessary to be registered as electronic filers in the master docket, No. 1:17-MD-2804.  All filings discussed in this CMO shall be filed electronically in the master MDL docket.  Any document that pertains to one or multiple specific cases shall be electronically filed in each case docket *and* in the master MDL docket.  Electronic case filing of a document, other than an initial pleading, in the master docket shall be deemed to constitute proper service on all parties.  Discovery and other documents not filed with the Court shall be served by electronic mail on the appropriate Lead and Liaison Counsel and other appropriate counsel as set forth below in paragraph 9.c.

5.     **COMMUNICATIONS WITH THE COURT**

Unless otherwise ordered by the Court, all substantive communications with the Court shall be filed.  Excepted from this rule is correspondence with the Special Masters and discovery disputes, which are governed by paragraph 9.o below.

6.     **PLEADINGS AND MOTIONS**

a.     **Direct Filing.**  In order to eliminate delays associated with transfer to this Court of cases filed in or removed to other federal district courts, any Plaintiff whose case would be subject to transfer to these MDL proceedings may file its case directly in this District.  Direct filing shall not constitute a waiver of any party's contention that jurisdiction or venue is improper or that the action should be dismissed or transferred.  Direct filing shall not impact the choice of law to be applied in the case.

At the conclusion of pretrial proceedings, should the parties agree that a case filed directly in the MDL proceedings should be transferred <u>and</u> the district to which it should be transferred, the parties will jointly advise the Court of the district to which the case should be transferred at the appropriate time.  Should the parties disagree as to the district to which a case should be transferred, nothing in this Order precludes any party from filing a motion to transfer pursuant to 28 U.S.C. §1404(a) or §1406 at the conclusion of pretrial proceedings.

b.     **Amendment of Pleadings and Addition of Parties.**  In cases other than those mentioned in paragraphs 2 and 3, Plaintiffs shall file any amended pleading, including any amendment to add a party to a case, **no later than Friday, May 25, 2018**.  After that date, no complaint shall be amended by Plaintiffs to add a party or otherwise, absent leave of Court or stipulation of the parties.  The deadline for Defendants to add a party without leave of Court shall be **45 days before the close of fact discovery** applicable to a particular case.

       c.     **Service of Summons and Complaint.**  Defendants are encouraged to avoid unnecessary expenses associated with serving the summons and, absent good cause, shall grant requests to waive service pursuant to Fed. R. Civ. P. 4(d)(1).

       d.     Plaintiffs shall not name as a Defendant, nor seek to serve, any entity as to which Plaintiffs lack a good faith basis to assert that the entity is subject to personal jurisdiction in this Court.  Notwithstanding the foregoing, waiving service of a summons does not waive any objection to personal jurisdiction or to venue.  Fed. R. Civ. P. 4(d)(5).  **No later than Wednesday, April 25, 2018**, each Defendant shall file a notice in the master docket that attaches a proper form of a waiver request and a designated person to electronically accept the same.  Such waiver requests shall be timely executed and returned to the requesting party for filing with the Court.  The Court previously tolled the deadline to achieve service of the summons and complaints through **May 18, 2018**.  The Court expects the Plaintiffs in all filed cases as of the date of this Order to effectuate service by **Wednesday, July 18, 2018**.  Service on a foreign corporation is suspended until further order of the Court.

       e.     **Voluntary Dismissal.**  At this point, with the parties actively engaged in working towards global resolution, including through a litigation track, dismissal without prejudice of Trial Track cases or cases designated for motion to dismiss briefing has a potentially detrimental effect on the Court, the parties, and the MDL process.  Accordingly, because the timeframe for responsive pleading has been extended beyond that ordinarily contemplated by Fed. R. Civ. P. 41(a)(1)(A)(i), and notwithstanding the fact that Defendants may not yet have answered, any voluntary dismissals pending in this MDL as of the date of this Order or filed hereafter that would result in the dismissal of any such action against all named Defendants shall require leave of Court.

    f.  **General Motions and Briefing Requirements.** Except as otherwise provided herein, all motions and briefs shall conform to Local Rule 7.1.  All motions on behalf of Plaintiffs or PEC or Plaintiffs' Steering Committee must be signed by Plaintiffs' Lead Counsel. All motions on behalf of all Defendants or a Defendants' Steering Committee must be signed by Lead Counsel for each moving Defendant.

    g.  **Motions.** No party may file any motion not expressly authorized by this Order absent further Order of this Court or express agreement of the parties.   However, nothing in this Order limits the right of a State Attorney General to seek remand of any case brought by the Attorney General that is removed to the MDL. The Court shall decide any such motion on the merits.

   7.  **<u>COORDINATION WITH STATE COURT PROCEEDINGS</u>**

   The Court acknowledges it has no jurisdiction over related State court proceedings.  To achieve the full benefits and efficiencies of the MDL proceedings, however, this Court intends to coordinate with State courts presiding over related cases to the greatest extent possible, in order to avoid unnecessary duplication and inconsistency.  This includes efforts at coordination of written discovery and deposition protocols and cross-noticing of depositions.  The Court appoints Special Master Yanni to oversee these efforts.

   8.  **<u>PRESERVATION</u>**

    a.  All parties and their counsel are reminded of their duty, consistent with the Federal Rules of Civil Procedure, to take reasonable measures to preserve documents, electronically stored information ("ESI"), and things that are potentially relevant.

    b.  The parties will meet and confer regarding a procedure for directing third-party records custodians to preserve records.

9.    **PRELIMINARY DISCOVERY PLAN AND PROCEDURES**

    a.    **Discovery Under the Plan.**  No party may conduct any discovery of another party in this MDL proceeding not expressly authorized by this Order absent further Order of this Court or express agreement of the parties.

    b.    **Waiver of Initial Disclosures.**  For all cases in the MDL proceedings, the parties are relieved from complying with the requirements of Fed. R. Civ. P. 26(a)(1) unless otherwise directed by the Court.

    c.    **Service of Discovery.**  Unless otherwise directed by this Court, the parties shall serve all papers that are not to be filed with the Court, including, but not limited to, discovery requests or responses, deposition notices, and certificates of service thereof, by electronic mail on Plaintiffs' Liaison Counsel and Defendant's Liaison Counsel.  Such papers are not to be filed with the Clerk, nor are courtesy copies to be delivered to the Court, except when specifically ordered by the Court or to the extent needed in connection with a motion, and only in accordance with the protective order governing the MDL proceedings.  Where a paper is applicable to all cases or substantially all cases, or such categories of cases as may be defined in subsequent Orders, Plaintiffs' Liaison Counsel also shall electronically serve such paper on counsel of record for the individual Plaintiff(s) to whom the paper is applicable.  Where a paper to be served by a Defendant is applicable to a particular case, Defendants' Liaison Counsel shall electronically serve such paper on the counsel of record for the individual Plaintiff(s) in that case as well as Plaintiffs' Liaison Counsel.

    All discovery directed to Defendants and non-party witnesses on behalf of Plaintiffs shall be undertaken by, or under the direction of, the PEC on behalf of all Plaintiffs with cases in these MDL proceedings.

      d.    **Protective Order.**  Disclosure and discovery in this proceeding may involve production of confidential, proprietary, and private information for which special protection from public disclosure and from any purpose other than prosecuting this litigation would be warranted, including insurance information discussed in paragraph 3.d.  The parties will meet and confer and submit to the Court, **no later than Monday, April 30, 2018**, a proposed Protective Order, binding on all parties and counsel, to ensure the protection of confidential information, including any HIPAA-protected information.

      e.    **Format of Production.**  The parties will meet and confer and submit to the Court, **no later than Monday, April 30, 2018**, a proposed Document Production Protocol governing the format of production of documents.

      f.    **Deposition Protocol.**  The parties will meet and confer and submit to the Court, **no later than Monday, May 21, 2019**, a protocol governing depositions, including with respect to the scheduling, noticing, taking, and recording of depositions, and procedures to ensure that, absent agreement or court order, a witness will not be deposed more than once across any state or federal cases.

      g.    **Assertion of Privilege.**  Any party that withholds the production of requested documents or materials on the ground of any privilege or application of the work-product doctrine must provide a Privilege Log.  Each Privilege Log shall describe each document or thing for which a privilege or the work product doctrine is asserted in sufficient detail to reasonably permit the party seeking discovery to assess whether to dispute any such assertion.  This will include but is not limited to information regarding the document's subject, date, author, and all recipients, the specific privilege asserted, and the factual basis for the privilege.  Each party withholding materials shall provide opposing counsel a copy of the Privilege Log within **45 days**

**after the production**, absent agreement of the parties.  If a partial production is made, the party shall produce a privilege log relating to such partial production.  The parties will raise privilege issues with Magistrate Judge Ruiz, in accord with the procedures set out in paragraph 9.0, as soon as reasonably possible.

       h.    **Ex Parte Communications with Treating or Prescribing Healthcare Providers.**  Absent further order of the Court, contact with a non-party treating or prescribing healthcare provider for any patient whose medical care or treatment is the basis of any Plaintiff's claims shall be governed by the relevant procedural rules in the jurisdiction in which the healthcare provider resides.  The parties reserve the right to seek a further order governing ex parte communications with such non-party healthcare providers.

       i.    **Fact Sheets.**  The parties shall meet and confer and submit to the Court, **no later than Monday, April 30, 2018,** a proposed Order regarding Plaintiff Fact Sheets and Defendant Fact Sheets.  The fact sheets shall apply to each case within MDL 2804, and in all other cases that become part of this MDL by virtue of being filed in, removed to, or transferred to this Court.  The parties may agree to an exception regarding whether they will produce Fact Sheets, or their content, with regard to Track One Cases.

       j.    **Joint Records Collection.**  The parties are directed to confer and reach an agreement regarding the selection of one or more Joint Custodian(s) to collect and retain certain medical or other records from any third-party designated as a record custodian by either Plaintiffs or Defendants and present to the Court a protocol and Stipulated Joint Records Collection Order **no later than Monday, April 30, 2018**.

k.      **Prior Document Disclosures.**

i.      Upon entry of this Order, all documents, including ESI, that were previously produced by any Defendant in *City of Chicago v. Purdue Pharma L.P.*, Case No. 14-CV-04361 (N.D. Ill.), shall be deemed produced to all Plaintiffs in MDL 2804 and shall be made immediately available to the PEC by any parties or counsel in possession of same, at no cost to the party or counsel in possession.

ii.     **No later than Monday, June 11, 2018**, all Defendants shall review documents previously produced pursuant to any civil investigation, litigation, and/or administrative action by federal (including Congressional), state, or local government entities involving the marketing or distribution of opioids and shall produce to the PEC non-privileged documents relevant to the claims in this MDL proceeding.  Defendants shall engage in rolling production of previously-produced documents during this 61-day period, and shall engage in rolling production of privilege logs and lodging of objections.

iii.    After Defendants complete the foregoing document productions, to the extent the PEC believes there are other documents that were produced by a Defendant in another proceeding that are discoverable in this proceeding, the PEC shall notify the Defendant and identify the specific document(s) and basis for requesting production, and the parties shall meet and confer to attempt to resolve the issue.  To the extent the parties are unable to resolve the issue, the PEC shall bear the burden to demonstrate to the Court that the document(s) should be produced in this proceeding.

iv.     Unless and until other arrangements are made by this Court regarding these specific materials, and in the interests of expediting discovery, Plaintiffs in MDL 2804 will be subject to any pre-existing Protective Orders or confidentiality agreements

15

governing this material. As such, at this time, review by Plaintiffs and their experts of

discovery that has been produced in other cases and which is deemed produced in this MDL is

subject to any Protective Orders or confidentiality agreements entered in those cases. The entry

of a Protective Order in this MDL proceeding, however, will supersede any pre-existing

Protective Order.

       l.    **Written Discovery.**

       i.    Any written discovery served on a Defendant pursuant to

paragraph 3 above shall be coordinated and served by the PEC. Absent leave of Court, the PEC

may serve up to 35 Requests for Production and up to 35 Interrogatories on each Defendant

Family in cases in Track One and subsequent Case Tracks identified pursuant to paragraph

3. For purposes of this requirement, a "Defendant Family" shall consist of all corporate

affiliates that are named as a Defendant in any action that is part of this MDL. For illustration

purposes only, Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company

Inc. shall be treated as a single Defendant Family.

       ii.    Each group of Defendants named in a case (e.g., the Manufacturer

Defendants, the Distributor Defendants, and the Retail Pharmacy Defendants) may serve up to

35 Requests for Production and up to 35 Interrogatories on each Plaintiff in cases in Track One

and subsequent Case Tracks identified pursuant to paragraph 3.

       iii.    **No later than, Monday, July 16, 2018**, each Plaintiff in cases in

Track One that alleges money damages based upon unnecessary prescriptions shall identify: (a)

the prescriptions that each Plaintiff asserts were medically unnecessary or medically

inappropriate, to whom they were written, and whether Plaintiff reimbursed for them; (b) the

physicians or healthcare providers who wrote the prescriptions; and (c) Plaintiff's basis for

identifying the prescriptions that it asserts are medically unnecessary or medically inappropriate.

        m.      **Third-Party Discovery.**  The parties may conduct appropriate third-party discovery in Track One cases, including discovery to identify the information discussed in paragraph l.iii.  Any party intending to serve third-party discovery shall comply with Fed. R. Civ. P. 45(a)(4).

        n.      **Extension of Discovery Deadlines.**  Nothing in this Order shall be interpreted to restrict the ability of the parties to move, separately or (preferably) jointly, for an extension of discovery deadlines as permitted by the Rules.  Please note that the granting of an extension of any discovery deadline <u>shall not change the trial date, and the Court does not intend to move the trial date of the Track One case(s)</u>.  Should any of the deadlines set forth above become infeasible as a result of an unexpected technical or similar matter, the responding party shall provide advance notice and an estimated date for the response.  If, after meeting and conferring in good faith, the receiving party objects to any modified date, it may seek a conference with the Court.

        o.      **Discovery Dispute Resolution.**  Counsel shall comply with Local Rule 37.1.  Specifically, the parties shall resolve discovery disputes by following these steps: (1) good faith resolution efforts by counsel; (2) telephone conference-call to Judge Polster's chambers, at which time the Court will direct the parties how and when they will present their issues to either Judge Polster or Magistrate Judge Ruiz; (3) if requested by the Court, position letters (normally not to exceed 3 pages); and (4) if required, discovery motion pursuant to Fed. R. Civ. P. 37.

        p.      **Filing of Discovery Materials.**  No discovery materials shall be filed without leave of Court, except as necessary to support dispositive motions.  If a party intends to

rely on deposition testimony in support of a motion, the Court prefers the filing of the entire

deposition in condensed form rather than excerpts, unless the party truly believes that excerpts are

sufficient.  If any other party believes the excerpts offered are not sufficient, that party is free to

file the entire deposition in condensed form.  In any event, discovery material submitted in support

of a party's position shall be filed at the same time as that party's memorandum setting forth its

position.

       10.     **EXPERT REPORTS AND EXPERT MATERIALS**

       a.     The designation of experts whose opinions may be submitted at trial must

be accompanied by a report that complies with Fed. R. Civ. P. 26(a)(2)(B).  The report must be

provided contemporaneously with the expert designation.  All parties' experts whose opinions may

be submitted at trial shall be subject to deposition as directed in Fed. R. Civ. P. 26(b)(4)(A) prior

to the close of expert discovery.

       b.     Unless otherwise stipulated or ordered by the Court, each disclosed expert

will produce his or her final report pursuant to and consistent with Fed. R. Civ. P. 26(a)(2)(B),

together with identification of all documents that the expert has considered in preparing and/or

rendering the expert's opinion.  No other documents relating to expert reports will be produced,

provided, however, that nothing in this order is intended to bar discovery of documents that are

otherwise discoverable from a party or third party outside of the context of expert discovery.

Consistent with Fed. R. Civ. P. 26(b)(4), no party will seek discovery of any experts' notes, drafts

of expert reports, or communications with counsel, provided, however, that counsel may serve

discovery or inquire at a deposition about any facts, data, or assumptions provided to the expert by

counsel and upon which such expert is relying in expressing the expert's opinions.  Each party also

agrees to bear its own expert costs.

11.    **SUBSEQUENT TRIAL SETTINGS**

The parties shall meet and confer to discuss pretrial and trial schedules for subsequent trial settings, including as to cases that may be remanded to transferor courts for trial.  The  parties shall inform the Court if a proposed trial schedule would result in overlapping trial settings.

12.    **MOTIONS FOR REMAND**

In accord with paragraph 6.f, the Court will adopt a procedure, based on input from the parties, to efficiently address the filing and briefing of motions for remand at an appropriate time in the MDL proceedings.

13.    **REGULAR TELEPHONIC STATUS CONFERENCES**

The Court will hold regularly-scheduled telephonic status conferences, on roughly a biweekly basis.  Lead and Liaison Counsel for Plaintiffs and Defendants shall confer before each status conference and submit a joint status report three (3) business days before the conference. This joint report should include:  (a) a list of expected participants, (b) a summary of resolution discussions or efforts conducted since the last status conference; (c) a summary of discovery conducted since the last status conference; (d) a summary of any pending motions; (e) updates about related state cases; (f) any scheduling issues or other issues that the parties wish to raise with the Court; and (g) if the parties have differing views on issues raised with the Court, a brief statement of their respective positions on these issues.  The first such status conference shall be on **Wednesday, April 18, 2018 at noon Eastern Time**, and the second shall be on **Wednesday, May 2, 2018 at noon Eastern Time**.  A call-in number will be provided.

14.    **CONDUCT**

Pursuant to the Statement on Professionalism issued by the Supreme Court of Ohio on February 3, 1997, counsel are directed to be courteous and civil in all oral and written

communications with each other and the Court.  Submissions that do not conform to this

standard will be rejected.  Nothing in this Order precludes the Court from entering sanctions

against a party or counsel if warranted.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE

Dated:  April 11, 2018

Case 1:19-cv-01168-JFR-SCY   Document 11-3   Filed 12/17/19   Page 1 of 2

# Exhibit 3

**AFFIDAVIT OF SERVICE**

**State of New Mexico**                                                    **County of Bernalillo**

Case Number: D-202-CV-201905386

Plaintiff:                                                               **FILED**
**City of Albuquerque**                                    **2nd JUDICIAL DISTRICT COURT**
                                                                 **Bernalillo County**
vs.                                                              **11/14/2019 3:52 PM**
                                                                 **James A. Noel**
Defendant:                                                    **CLERK OF THE COURT**
**Teva Pharmaceuticals USA Inc Et Al**                         **Thomas Wilson**

For:
Salazar Sullivan & Jasionowski
100 Gold Ave., S.W., Ste. 201
Albuquerque, NM 87102

Received these papers on the 8th day of November, 2019 at 10:59 am to be served on **Michael L Gallegos, 4236 New Vistas Ct NW, Albuquerque, NM 87114**.

I, Felycia Aranda, being duly sworn, depose and say that on the **10th day of November, 2019** at **7:45 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **First Amended Complaint for Declaratory and Injunctive Relief, Summons - First Amended Complaint** to: **Michael L Gallegos** at the address of: **4236 New Vistas Ct NW, Albuquerque, NM 87114**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
11/10/2019  7:45 pm  Felycia Aranda personally served Michael L Gallegos at 4236 New Vistas Ct NW, Albuquerque, NM 87114.

**Description** of Person Served: Age: ~37, Sex: M, Race/Skin Color: Hispanic, Height: 5'11", Weight: 225, Hair: Light Brown, Glasses: Y

I certify that I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the 11th
day of November, 2019 by the affiant who is                    Felycia Aranda
personally known to me.                                        Process Server

                                                              Number: MPP-2019014934
NOTARY PUBLIC        Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.1c
STATE OF NEW MEXICO
My Commission Expires:

# Exhibit 4

## AFFIDAVIT OF SERVICE

**State of New Mexico**

Case Number: D-202-CV-201905386

Plaintiff:
**City of Albuquerque**

vs.

Defendant:
**Teva Pharmaceuticals USA Inc Et Al**

**County of Bernalillo**

**FILED**
**2nd JUDICIAL DISTRICT COURT**
**Bernalillo County**
**11/21/2019 12:08 PM**
**James A. Noel**
**CLERK OF THE COURT**
**Edna Kasuse**

For:
Salazar Sullivan & Jasionowski
100 Gold Ave., S.W., Ste. 201
Albuquerque, NM 87102

Received these papers on the 8th day of November, 2019 at 10:59 am to be served on **Bitu Sheth PA, 9501 Glendale Ave NE, Albuquerque, NM 87122**.

I, Felycia Aranda, being duly sworn, depose and say that on the **20th day of November, 2019** at **3:09 pm, I**:

served an **AUTHORIZED** entity by delivering a true copy of the **First Amended Complaint for Declaratory and Injunctive Relief, Summons - First Amended Complaint** to: **Thomas Mack** at the address of: **500 Marquette Ave, Albuquerque, NM 87102**, who stated they are authorized to accept service for **Bitu Sheth PA**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
11/20/2019  3:09 pm  Felycia Aranda served Bitu Sheth PA at 500 Marquette Ave Albuquerque NM 87102 by hand delivering documents to Thomas Mack as the authorized party to accept service.

**Description** of Person Served: Age: ~58, Sex: M, Race/Skin Color: White, Height: 6'2", Weight: 190, Hair: Grey, Glasses: N

I certify that I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the 21st day of November, 2019 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

OFFICIAL SEAL
Natasha Nocera
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: _____

_____
Felycia Aranda
Process Server

Our Job Serial Number: MPP-2019014936

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.1c

# Exhibit 5

# AFFIDAVIT OF SERVICE

**State of New Mexico**

Case Number: D-202-CV-201905388

Plaintiff:
**City of Albuquerque**

vs.

Defendant:
**Teva Pharmaceuticals USA Inc Et Al**

**County of Bernalillo**

FILED
**2nd JUDICIAL DISTRICT COURT**
**Bernalillo County**
**11/21/2019 12:08 PM**
**James A. Noel**
**CLERK OF THE COURT**
**Edna Kasuse**

For:
Salazar Sullivan & Jasionowski
100 Gold Ave., S.W., Ste. 201
Albuquerque, NM 87102

Received these papers on the 8th day of November, 2019 at 10:59 am to be served on **Laura LeBlanc NP, 5101 Timan Ave NW, Albuquerque, NM 87114.**

I, Felycia Aranda, being duly sworn, depose and say that on the **16th day of November, 2019 at 2:52 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **First Amended Complaint for Declaratory and Injunctive Relief, Summons - First Amended Complaint** to: **Laura LeBlanc NP** at the address of: **5101 Timan Ave NW, Albuquerque, NM 87114,** and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
11/16/2019  2:52 pm  Felycia Aranda personally served Laura LeBlanc NP at 5101 Timan Ave NW, Albuquerque, NM 87114.

**Description** of Person Served: Age: ~63, Sex: F, Race/Skin Color: White, Height: 5'6", Weight: 140, Hair: Grey, Glasses: Y

I certify that I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the 21st day of November, 2019 by the affiant who is personally known to me.

NOTARY PUBLIC

OFFICIAL SEAL
Natasha Nocera
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires:

Felycia Aranda
Process Server

Our Job Serial Number: MPP-2019014935

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.1c

# Exhibit 6

**AFFIDAVIT OF SERVICE**

State of New Mexico                                                                                  **County of Bernalillo**

Case Number: D-202-CV-201905386

Plaintiff:
**City of Albuquerque**

vs.

Defendant:
**Teva Pharmaceuticals USA Inc Et Al**

For:
Salazar Sullivan & Jasionowski
100 Gold Ave., S.W., Ste. 201
Albuquerque, NM 87102

Received these papers on the 8th day of November, 2019 at 10:59 am to be served on **Peter Pacheco, 15 Calle Alfredo, Algodones, NM 87001**.

I, Sinai Gonzalez, being duly sworn, depose and say that on the **6th day of December, 2019** at **1:16 pm**, I:

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **First Amended Complaint for Declaratory and Injunctive Relief, Summons - First Amended Complaint** to: **Peter Pacheco** at the address of: **15 Calle Alfredo, Algodones, NM 87001**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
12/6/2019  1:16 pm  Sinai Gonzalez personally served Peter Pacheco at 15 Calle Alfredo, Algodones, NM 87001.

**Description** of Person Served: Age: ~54, Sex: M, Race/Skin Color: Hispanic, Height: 5'9", Weight: 175, Hair: Black, Glasses: N

I certify that I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the 10th
day of December, 2019 by the affiant who is
personally known to me.

NOTARY PUBLIC

OFFICIAL SEAL
Natasha Nocera  Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.1c
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires:

**Sinai Gonzalez**
Process Server

Our Job Serial Number: MPP-2019014932

# Exhibit 7

# AFFIDAVIT OF SERVICE

**State of New Mexico**                                                    **County of Bernalillo**

Case Number: D-202-CV-201905386

Plaintiff:
**City of Albuquerque**

vs.

Defendant:
**Teva Pharmaceuticals USA Inc Et Al**

FILED
2nd JUDICIAL DISTRICT COURT
Bernalillo County
11/21/2019 12:08 PM
James A. Noel
CLERK OF THE COURT
Edna Kasuse

For:
Salazar Sullivan & Jasionowski
100 Gold Ave., S.W., Ste. 201
Albuquerque, NM 87102

Received these papers on the 8th day of November, 2019 at 10:59 am to be served on **Rebecca Duchon PA, 1911 Cozumel Way NE, Apt 2602, Rio Rancho, NM 87124**.

I, Sinai Gonzalez, being duly sworn, depose and say that on the **16th day of November, 2019 at 11:30 am, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **First Amended Complaint for Declaratory and Injunctive Relief, Summons - First Amended Complaint** to: **Rebecca Duchon PA** at the address of: **1911 Cozumel Way NE, Apt 2602, Rio Rancho, NM 87124**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
11/16/2019 11:30 am  Sinai Gonzalez personally served Rebecca Duchon PA at 1911 Cozumel Way NE, Apt 2602, Rio Rancho, NM 87124.

**Description** of Person Served: Age: ~60, Sex: F, Race/Skin Color: White, Height: 5'4", Weight: 130, Hair: Light Brown, Glasses: N

I certify that I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the 21st day of November, 2019 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

OFFICIAL SEAL
Natasha Nocera
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires _07/4/23_

**Sinai Gonzalez**
Process Server

Our Job Serial Number: MPP-2019014933

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.1c

# Exhibit 8

## AFFIDAVIT OF SERVICE

**State of New Mexico**

Case Number: D-202-CV-201905386

Plaintiff:
**City of Albuquerque**

vs.

Defendant:
**Teva Pharmaceuticals USA Inc Et Al**

For:
Salazar Sullivan & Jasionowski
100 Gold Ave., S.W., Ste. 201
Albuquerque, NM 87102

**County of Bernalillo**

**FILED
2nd JUDICIAL DISTRICT COURT
Bernalillo County
11/21/2019 12:08 PM
James A. Noel
CLERK OF THE COURT
Edna Kasuse**

Received these papers on the 8th day of November, 2019 at 10:59 am to be served on **Marchell Woodruff PA, 51 Black Bear Loop NE, Albuquerque, NM 87122**.

I, Felycia Aranda, being duly sworn, depose and say that on the **12th day of November, 2019** at **7:31 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **First Amended Complaint for Declaratory and Injunctive Relief, Summons - First Amended Complaint** to: **Marchell Woodruff PA** at the address of: **51 Black Bear Loop NE, Albuquerque, NM 87122**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
11/12/2019  7:31 pm  Felycia Aranda personally served Marchell Woodruff PA at 51 Black Bear Loop NE, Albuquerque, NM 87122.

**Description** of Person Served: Age: ~51, Sex: F, Race/Skin Color: White, Height: 5'6", Weight: 145, Hair: Blonde, Glasses: Y

I certify that I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the 21st day of November, 2019 by the affiant who is personally known to me.

NOTARY PUBLIC

OFFICIAL SEAL
Natasha Nocera
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires:

Felycia Aranda
Process Server

Our Job Serial Number: MPP-2019014938

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.1c