# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| CITY OF SANTA FE,<br><br>Plaintiff,<br><br>v.<br><br>PURDUE PHARMA L.P., et al.,<br><br>Defendants. | ) | Case No. 1:19-cv-01105-KG-JHR |

**PLAINTIFF CITY OF SANTA FE'S MOTION TO REMAND**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. SANTA FE'S COMPLAINT STATES CAUSES OF ACTION AGAINST NEW MEXICO CITIZENS FOR THEIR PART IN THE OPIOID SUPPLY CHAIN. .......... 2

III. ARGUMENT AND AUTHORITIES .......... 5

A. Defendants Must Carry a Heavy Burden of Demonstrating that, After Resolving All Doubts in Favor of Remand, the Removal Was Proper. .......... 6

B. Prescribing Defendants Cannot be "Ignored." .......... 7

1. All Defendants are properly joined under the Rules. .......... 7

2. Defendants' logic is circular. .......... 8

3. Courts nationwide in opioid litigation have remanded to state court. .......... 10

4. Severance is impossible because it will prejudice Santa Fe. .......... 13

C. The Fraudulent Misjoinder Theory Alternatively Alleged Is Inapplicable and, Independently, Has Not Been Adopted in the Tenth Circuit. .......... 17

D. The Removal Is Procedurally Defective Because All Served Defendants Have Not Joined in the Removal. .......... 22

IV. STATEMENT REGARDING ORAL ARGUMENT .......... 22

V. CONCLUSION AND PRAYER FOR RELIEF .......... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anne Arundel Cty., Maryland v. Purdue Pharma L.P.*,
No. CV GLR-18-519, 2018 WL 1963789 (D. Md. Apr. 25, 2018)......................10, 11, 18, 20

*Ash v. Providence Hosp.*,
No. 08–0525–WS–M, 2009 WL 424586 (S.D.Ala. Feb. 17, 2009) ................................10, 13

*New Mexico, ex rel. Balderas v. Preferred Care, Inc.*,
158 F. Supp. 3d 1226 (D.N.M. 2015) ........................................................................6

*New Mexico ex rel. Balderas v. Purdue Pharma L.P.*,
323 F. Supp. 3d 1242 (D.N.M. 2018) ........................................................................6

*In re Bard IVC Filters Prods. Liab. Litig.*,
No. CV-16-00344-PHX-DGC, 2016 WL 2347430 (D. Ariz. May 4, 2016) ............................9

*In re Bard IVC Filters Prods. Liab. Litig.*,
No. CV-16-00786-PHX-DGC, 2016 WL 2956557 (D. Ariz. May 23, 2016) ........................16

*Brady v. Lovelace Health Plan*,
504 F.Supp.2d 1170 (D.N.M. 2007) ........................................................................22

*Brown v. Endo Pharms., Inc.*,
38 F. Supp. 3d 1312 (S.D. Ala. 2014)........................................................................9

*Cordill v. Purdue Pharma, L.P.*,
No. 1:02CV00121, 2002 WL 31474466 (W.D. Va. Nov. 5, 2002)......................................19

*Couch v. Astec Indus., Inc.*,
71 F.Supp.2d 1145 (D.N.M.1999) ........................................................................17

*Cty. Comm'n of McDowell Cty. v. McKesson Corp.*,
263 F. Supp. 3d 639 (S.D. W. Va. 2017)....................................................................20

*Cty. of Anderson v. Rite Aid of S.C., Inc.*,
No. 8:18-CV-1947-BHH, 2018 WL 8800188 (D.S.C. Aug. 20, 2018) ...........................11, 19

*Cty. of Delta v. Purdue Pharma, L.P.*,
No. 4:18-CV-095, 2018 WL 1440485 (E.D. Tex. Mar. 22, 2018) ............................12, 13, 19

*Cty. of Falls v. Purdue Pharma, LP*,
No. 6:18-CV-47-RP-JCM, 2018 WL 1518849 (W.D. Tex. Mar. 28, 2018)...............12, 13, 19

*Cty. of Travis v. Purdue Pharma*,
LP, No. 1:18-CV-254-RP, 2018 WL 1518848 (W.D. Tex. Mar. 28, 2018) ................12, 13, 19

*Cuevas v. BAC Home Loans Servicing, LP*,
648 F.3d 242 (5th Cir.2011) ....................17

*Curry v. U.S. Bulk Transp., Inc.*,
462 F.3d 536 (6th Cir. 2006) ....................15

*Dinwiddie Cty., Virginia v. Purdue Pharma, L.P.*,
No. 3:19-CV-242, 2019 WL 2518130 (E.D. Va. June 18, 2019) ....................12, 19

*Dutcher v. Matheson*,
733 F.3d 980 (10th Cir. 2013) ....................6, 17

*Dutcher v. Matheson*,
840 F.3d 1183 (10th Cir. 2016) ....................6

*Echols v. OMNI Med. Group, Inc.*,
751 F.Supp.2d 1214 (N.D.Okla.2010)....................9, 10, 13

*Ferry v. Bekum Am. Corp.*,
185 F. Supp. 2d 1285 (M.D. Fla. 2002)....................15

*Flores-Duenas v. Briones*,
No. CIV 13-0660 ....................17

*Gallup Med Flight, LLC v. Builders Tr. of New Mexico*,
240 F. Supp. 3d 1161 (D. N.M. 2017)....................6, 7

*U.S. ex rel. Grynberg v. Praxair, Inc.*,
389 F.3d 1038 (10th Cir. 2004) ....................6

*Gunn v. Minton*,
568 U.S. 251 (2013)....................6

*United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*,
190 F.3d 1156 (10th Cir. 1999) ....................6

*Hagensicker v. Bos. Sci. Corp.*,
No. 12-5018-CV-SW-RED, 2012 WL 836804 (W.D. Mo. Mar. 12, 2012)....................10, 13

*Hampton v. Insys Therapeutics, Inc.*,
319 F. Supp. 3d 1204 (D. Nev. 2018).................... *passim*

*Hart v. Bayer Corp.*,
199 F.3d 239 (5th Cir. 2000) ....................17

*Ibarra v. Kennedy Funding, Inc.*,
No. CIV 13-2371 TUC JGZ, 2014 WL 1878750 (D. Ariz. May 12, 2014) ....15

*Joseph v. Baxter Int'l*,
614 F.Supp.2d 868 (N.D. Ohio 2009)....16

*Karnes v. Boeing, Co.*,
335 F.3d 1189 (10th Cir. 2003) ....6

*Lafalier v. State Farm Fire & Cas. Co.*,
391 F. App'x 732 (10th Cir. 2010) ....20

*Lopez v. Pfeffer*,
No. 13-CV-03341 NC, 2013 WL 5367723 (N.D. Cal. Sept. 25, 2013)....9

*Mayfield v. London Women's Care, PLLC*,
No. 15-19, 2015 WL 3440492 (E.D. Ky. May 28, 2015)....16

*Mayor & City Council of Baltimore v. Purdue Pharma L.P.*,
No. CV GLR-18-800, 2018 WL 1963816 (D. Md. Apr. 25, 2018)....11, 18, 20

*Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.*,
No. 3:19-CV-463, 2019 WL 3207795 (E.D. Va. July 16, 2019)....12, 18, 19

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*,
478 U.S. 804 (1996)....7

*Montano v. Allstate Indemnity Co.*,
211 F.3d 1278, 2000 WL 525592 (10th Cir.2000) (unpublished table opinion) ....17

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989)....14, 15, 16, 17

*Nolan v. Olean Gen. Hosp.*,
No. 13-CV-333-A, 2013 WL 3475475 (W.D.N.Y. July 10, 2013) ....10

*Ohler v. Purdue Pharma, L.P.*,
No. CIV.A. 01-3061, 2002 WL 88945 (E.D. La. Jan. 22, 2002)....19

*Osborn v. Metro Life Ins. Co.*,
341 F.Supp.2d 1123 (E.D. Cal. 2004)....20

*Pampillonia v. RJR Nabisco, Inc.*,
138 F.3d 459 (2d Cir.1998)....17

*Perry v. Luu*,
No. 13–cv–00729–AWI–JLT, 2013 WL 3354446 (E.D. Cal. July 3, 2013)....9

*Perry v. Norwest Fin'l Ala., Inc.*,
Case No. Civ. A 98-0260-CB-C, 1998 WL 964987 (N.D. Ala. Dec. 9, 1998) ........................9

*United States ex rel. Precision Co. v. Koch Indus., Inc.*,
971 F.2d 548 (10th Cir. 1992) ........................6

*Prempro Prods. Liability Litig.*,
591 F.3d 613 (8th Cir. 2010) ........................20

*Robinson v. Swedish Health Servs.*,
10-cv-0113, 2010 WL 816818 (W.D. Wash. Mar. 5, 2010)........................13

*Rost v. Pfizer Inc.*,
502 Fed.Appx. 51 (2d Cir. 2012)........................13

*Saviour v. Stavropoulos*,
No. CV 15-5362, 2015 WL 6810856 (E.D. Pa. Nov. 5, 2015)........................13

*Smith v. Am. Med. Sys., Inc.*,
No. 2:09-CV-168-TMP, 2009 WL 10688480 (N.D. Ala. Aug. 25, 2009) ........................16

*Spann v. Northwestern Mut. Life Ins.*,
795 F. Supp. 386 (M.D. Ala.1992) ........................15

*Sta-Rite Indus., Inc. v. Allstate Ins. Co.*,
96 F.3d 281 (7th Cir. 1996) ........................16

*Staubus v. Purdue Pharma, L.P.*,
No. 2:17-CV-122-TAV-CLC, 2017 WL 4767688 (E.D. Tenn. Oct. 20, 2017) ....19, 20, 21, 22

*Syngenta Crop Prot., Inc. v. Henson*,
537 U.S. 28 (2002)........................6

*Tapscott v. MS Dealer Serv. Corp.*,
77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)........................20, 21, 22

*Thee Sombrero, Inc. v. Murphy*,
No. EDCV 15-001004-VAP, 2015 WL 4399631 (C.D. Cal. July 17, 2015) ........................21

*U.S. for Use & Benefit of Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*,
55 F.3d 1491 (10th Cir. 1995) ........................14

*Ullman v. Safeway Ins. Co.*,
995 F. Supp. 2d 1196 (D.N.M. 2013) ........................22

*United States v. Kemp & Assocs., Inc.*,
907 F.3d 1264 (10th Cir. 2018) ........................6

*Zamora v. Wells Fargo Home Mortg.*,
831 F. Supp. 2d 1284 (D. N.M. 2011) ..........7

**Statutes**

28 U.S.C. Section 1332(a) ..........22

28 U.S.C. § 1446(b)(2)(A) ..........22

**Other Authorities**

FED. R. CIV. P. 19(a) ..........7, 11

FED. R. CIV. P. 20 (a)(2) ..........7, 9

FED. R. CIV. P. 21 ..........8, 9, 10, 11

FED. R. CIV. P. 82 ..........5, 10

14 Moore's Federal Practice, § 82.02 ..........10

NMRA, Rule 1-019(A) ..........7

NMRA, Rule 1-020(A) ..........7

## I. INTRODUCTION

The City of Santa Fe, New Mexico, initiated legal action in State court to protect its citizens from the worst man-made epidemic in modern medical history – the scourge of debilitating addiction, overdoses, and deaths caused by prescription opioids. Unlike the crack cocaine and crystal methamphetamine epidemics that proceeded it, this drug crisis began with a corporate business plan. *See* First Am. Complaint ("FAC") ¶1 [Doc. 1-3, Page 153 of 278]. Defendants had a duty to guard against diversion of highly addictive drugs into illicit channels, but for profit, unleashed a flood of these drugs into Santa Fe. *See, generally*, FAC [Doc. 1-3]. The City has taken legal action in order to protect its citizens and abate the scourge of opioid addiction. In response, Defendants have removed the case as a ploy to secure a cross-country transfer to an MDL court that will refuse to allow the City to even file a remand motion.[1] The removal theory, which has been rejected by courts nationwide, consists of the remarkable claim that the City could not file a single lawsuit to abate the same public nuisance, but rather had to sue the Defendants that caused the opioid crisis in two different lawsuits. No apposite authority supports this.

There is no federal subject matter jurisdiction. Complete diversity jurisdiction does not exist because two Defendants are New Mexico citizens. In its Notice of Removal, the removing Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. (occ. "Endo") state that the Plaintiff is a citizen of New Mexico for purposes of diversity jurisdiction, and that the New Mexico citizenship of two Defendants named in the case, Dr. John Bray-Morris and nurse practitioner

---

[1] *See* Order Regarding Remands, *In re National Prescription Opiate Litigation,* MDL 2804 (N.D. Ohio Feb. 16, 2018) (Ex. 1) (entering moratorium on motions to remand); Case Management Order No. 1 (N.D. Ohio April 11, 2018) (Ex. 2), at ¶6.g ("No party may file any motion not expressly authorized by this Order absent further Order of this Court or express agreement of the parties.").

Nicole Renee Broderson, should be "ignored" and that these two defendants are "fraudulently misjoined." *See, generally,* Notice of Removal ("NoR") [Doc. 1]. Thus, it is uncontested that complete diversity of citizenship is lacking on the face of the City's Complaint, and, yet, diversity of citizenship is the only purported basis for removing the case to federal court. Numerous courts across the country facing the same severance and misjoinder arguments from opioid defendants have rejected them and remanded governmental entities' cases against opioid defendants to the state courts wherein they were filed. This body of jurisprudence is substantively indistinguishable, and Endo's removal notice is repeating arguments that have been flatly rejected elsewhere.

## II. SANTA FE'S COMPLAINT STATES CAUSES OF ACTION AGAINST NEW MEXICO CITIZENS FOR THEIR PART IN THE OPIOID SUPPLY CHAIN.

The opioid epidemic did not unfold in a vacuum. The closed system regulating controlled substances was designed to protect the public health and safety from ubiquitous availability of highly addictive opioids, but that system failed. The controls on these drugs failed on four levels, and the synchronicity of these avarice-driven failures allowed these drugs to flood Santa Fe in dangerous, massive quantities. The Manufacturer Defendants who made these drugs misrepresented their properties and engaged in the diversion into illicit channels.[2] The wholesale drug Distributors, who were required to act as anti-diversion stop gaps, deliberately flooded the market with quantities of drugs in excess of any legitimate therapeutic need.[3] The Pharmacy Defendants consistently ignored unresolvable red flags of diversion, filling prescriptions that allowed the dangerously addictive drugs to flow into illicit channels.[4] The final group of

---

[2] Defined in the FAC at ¶¶22-35.
[3] The Distributor Defendants are defined in the FAC at ¶¶36-44.
[4] The Pharmacy Defendants are Walgreens, Wal-Mart, and CVS. FAC at ¶¶45-46.

Defendants, Santa Fe prescribers Dr. Bray-Morris and nurse practitioner Broderson, abdicated their duties by prescribing large quantities of these drugs illegitimately.[5] These highly addictive drugs were diverted into illicit channels by flowing through these four tiers in the manufacture and supply chain, and the New Mexico Defendants, as prescribers, are indispensable actors in the chain.

Four of the seven causes of action in the City of Santa Fe's state court complaint are addressed to **all** of these Defendants. The public health crisis in Santa Fe was caused by each Defendant, and they are joined together because their actionable wrongdoings contributed to the public nuisance. The first cause of action against all Defendants seeks to abate the public nuisance caused by the scourge of opioid addiction and abuse. FAC ¶¶277-295 [Doc. 1-3, Pages 247-253 of 278]. The fifth, sixth, and seventh causes of action, also against all Defendants, allege negligence and negligence per se, gross negligence and punitive damages, and unjust enrichment. FAC ¶¶353-403 [Doc. 1-3, Pages 267-276].

In demanding that this Court "ignore" the prescribing doctor and nurse practitioner who were part of the prescription opioid supply chain, the Endo Defendants overlook the pleadings against them. The Complaint explains that, as a direct consequence of the actions of practitioners, including Defendants Bray-Morris and Broderson, the rampant use, overuse, and abuse of opioids has overwhelmed the City of Santa Fe and its residents. FAC ¶4 [Doc. 1-3, Page 154 of 278]. Dr. Bray-Morris and Nurse Broderson had unique duties under the law, as licensed health care professionals, not to prescribe outside the usual course of practice and for other than a legitimate medical purpose. FAC ¶359 [Doc. 1-3, Page 269 of 278]. In derogation of their duties, these

[5] *See* FAC at ¶¶ 4, 47-48, 53-54.

Defendants prescribed to patients in and around Santa Fe for illegitimate and illicit purposes. FAC ¶¶47, 48 [Doc. 1-3, Page 166 of 278]. The Complaint explains how these two Santa Fe prescribers worked hand in glove with the other Defendants to create the opioid public nuisance in the City of Santa Fe. For example:

> Nurse Broderson and Dr. Bray-Morris contributed to the region-wide opioid epidemic, encouraged by Manufacturer Defendants' misleading statements and marketing, facilitated by Pharmacy Defendants' failure to uphold their duties to monitor for red flags of diversion, and assisted by Distributor Defendants' failure to implement a system to monitor and report suspicious orders.

FAC ¶237 [Doc. 1-3, Page 233 of 278].

Defendant Bray-Morris, a doctor who operated a medical practice in Santa Fe, surrendered his license to practice medicine in New Mexico based upon his illegal prescribing of dangerous opioids. FAC ¶¶4, 81 [Doc. 1-3, Pages 154, 232 of 278]. The New Mexico Medical Board Found that, *inter alia*:

a. Dr. Bray-Morris violated a prior stipulated agreement;
b. He forged signatures on mandatory urine drug screenings;
c. He prescribed large amounts of controlled substances to patients without medical justification, specifically including placing patients on a potentially deadly regimen of at least one opioid, one benzodiazepine, and carisoprodol, a muscle relaxer;
d. He failed to screen patients for substance abuse disorders;
e. He falsified medical records; and
f. He failed to obtain prescription monitoring reports as required by law when treating chronic pain.

FAC ¶ 236 [Doc. 1-3, Pages 233-233 of 278].[6]

---

[6] *See* http://docfinder.docboard.org/nm_orders/Bray-Morris,%20John.pdf (cited in FAC at note 104).

Defendant Broderson, a Santa Fe nurse practitioner, was convicted in 2017 of unlawfully dispensing opioids. FAC ¶¶4, 235 [Doc. 1-3, Page 154, 232 of 278]. She pled guilty to issuing patients multiple, often overlapping prescriptions for hydrocodone that significantly exceeded the medically recommended dosages.[7] Nurse Broderson also admitted to prescribing and retaining hydrocodone without any legitimate medical purpose, and in derogation of the course of professional practice. FAC ¶¶4, 235 [Doc. 1-3, Page 154, 232 of 278]. Other wrongful conduct is described in the complaint. *Id.*

Notably, Endo Defendants do not deny that valid causes of action are stated against these Defendants; rather, Endo Defendants quite incredibly claim that Santa Fe should have filed two lawsuits to abate the same opioid crisis.

## III. ARGUMENT AND AUTHORITIES

Endo Defendants cannot carry the heavy burden of justifying removal. Defendants' "ignore"-via-severance theory should be rejected for multiple, independent reasons: i) the Court cannot create jurisdiction by exercising jurisdiction, the logic is circular; ii) the stratagem of using the Rules to create jurisdiction violates Federal Rule of Civil Procedure 82; iii) even under the authority relied upon by Endo, severance is not possible because it prejudices the Plaintiff; and, finally, iv) the Defendants are properly joined, and no authority whatsoever requires a plaintiff to abate the same public nuisance in two separate lawsuits. *See* § III.B *infra*. The fraudulent "misjoinder" doctrine has not been adopted in the Tenth Circuit and is independently inapposite. *See* § III.C *infra*. Finally, the removal is procedurally defective. *See* § III.D *infra*.

---

[7] *See* https://www.justice.gov/usao-nm/pr/nurse-practitioner-santa-fe-sentenced-probation-unlawful-possession-controlled-substances (cited in FAC at note 103).

**A. Defendants Must Carry a Heavy Burden of Demonstrating that, After Resolving All Doubts in Favor of Remand, the Removal Was Proper.**

"It is axiomatic that federal courts are courts of limited jurisdiction."[8] Recognizing the limitations on federal jurisdiction is "a foundational premise of American federalism."[9] "[R]emoval is entirely a creature of statute" and the removal statutes "are to **be strictly construed**."[10] Federal courts "'presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction' that jurisdiction exists; that showing must be made by a preponderance of the evidence."[11] "Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that courts must deny such jurisdiction if not affirmatively apparent on the record."[12] The Tenth Circuit has "emphasize[d] that the burden is on [the removing party] to show jurisdiction."[13]

[8] *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1268 (10th Cir. 2018); *see also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute.") (cit. & quot. om.).

[9] *New Mexico, ex rel. Balderas v. Preferred Care, Inc.*, 158 F. Supp. 3d 1226, 1229 (D.N.M. 2015) (citing *Gunn*).

[10] *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (emphasis added; citation omitted); *see also New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242, 1248 (D.N.M. 2018) ("Removal statutes are to be strictly construed, and the party invoking federal jurisdiction bears the burden of proof with a presumption against federal jurisdiction.") (citing *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013)).

[11] *Dutcher v. Matheson*, 840 F.3d 1183, 1189 (10th Cir. 2016) (quoting *Dutcher*, 733 F.3d at 985 (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999)); *see also U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1048 (10th Cir. 2004) ("Because federal courts are courts of limited jurisdiction, 'we presume no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction.'") (quoting *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir. 1992)).

[12] *Gallup Med Flight, LLC v. Builders Tr. of New Mexico*, 240 F. Supp. 3d 1161, 1211 (D. N.M. 2017) (cit. & int. quot. marks om.).

[13] *Karnes v. Boeing, Co.*, 335 F.3d 1189, 1194 (10th Cir. 2003) (remanding case).

Simply put, "courts should construe removal statutes strictly and resolve all doubts in favor of remand."[14] "Indeed, the Supreme Court has 'forcefully reiterated' that district courts must exercise 'prudence and restraint' when determining whether a state cause of action presents a federal question, because 'determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system.'"[15]

**B. Prescribing Defendants Cannot be "Ignored."**

**1. All Defendants are properly joined under the Rules.**

Defendants are properly joined because four causes of action are brought jointly against all Defendants, because the liability of each and every Defendant arises out of the same transactions and series of transactions, because numerous questions of law and fact are common to all Defendants' liability, and because a court cannot accord the City complete relief if the prescribers are missing.[16] Severance will prejudice the City by allowing the nonresident Defendants to point to an empty chair, and other United States District Courts in opioid litigation have expressly so

---

[14] *Zamora v. Wells Fargo Home Mortg*., 831 F. Supp. 2d 1284, 1304–05 (D. N.M. 2011).

[15] *Gallup*, 240 F. Supp. 3d at 1205 (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 810 (1996); further citation omitted).

[16] NMRA, Rule 1-019(A) ("A person who is subject to service of process shall be joined as a party in the action if: (1) in his absence complete relief cannot be accorded among those already parties"); NMRA, Rule 1-020(A) ("All persons may be joined in one action as defendants if there is asserted against them jointly, severally or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action."). *Compare also* FED. R. CIV. P. 19(a) ("A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties"); FED. R. CIV. P. 20 (a)(2) (Defendants "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.").

found. *See* §III.B.4 *infra*. Nonetheless, the Endo Defendants' removal notice claims that the Court should create subject matter jurisdiction—which does not exist on the face of the Complaint-- by severing the claims against Dr. Bray-Morris and Nurse Broderson pursuant to Rule 21 of the Federal Rules of Civil Procedure. NoR ¶¶57-67 [Doc. 1, Pages 13-19 of 32]. Removal cannot be justified on these grounds.

***All*** Defendants created and fed the opioid crisis in Santa Fe, causing the City to incur substantial economic expenses in *inter alia* health care and law enforcement costs. Santa Fe expressly alleges the connection and interplay of all Defendants, as all participated in the supply chain of these dangerously addictive drugs. The prescribers (Defendants Bray-Morris and Broderson), the drug dispensing pharmacies, and the wholesale distributors are the channels through which opioids wrongfully flowed from the opioid manufacturers and into the City of Santa Fe. The City has pleaded these connections between the non-resident and resident Defendants. *See* § II *supra*. The New Mexico Defendants wrote the prescriptions, and the other Defendants' participation **in the same supply chain** made the resulting harm possible. For each prescription for which Defendants Bray-Morris and Broderson are culpable, the pharmacy Defendants filled the prescriptions, the distributor Defendants ignored red flags in delivering the drugs to the pharmacies, and the manufacturer Defendants likewise participated in diversion of the drugs they misrepresented. Simply put, each category of Defendants named here are part of the same series of transactions that delivered dangerously addictive drugs into illicit channels.

**2. Defendants' logic is circular.**

"Federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp.

3d 1204, 1213–14 (D. Nev. 2018) (quoting *Brown v. Endo Pharms., Inc*., 38 F. Supp. 3d 1312, 1326 (S.D. Ala. 2014) (collecting cases)). "[A] defendant lacking 'the proper jurisdictional key with which to open the doors of federal court' cannot rely on Rule 21 severance as a surreptitious means 'to climb in the window.'" 319 F. Supp. 3d at 1214 (quoting *Perry v. Norwest Fin'l Ala., Inc*., Case No. Civ. A 98-0260-CB-C, 1998 WL 964987, at *2 (N.D. Ala. Dec. 9, 1998)). Put another way, it is confounding circular logic to exercise jurisdiction to sever claims for the sole purpose of creating jurisdiction:

> The Court is confounded by the concept's circular logic in that it requires the Court first—in full recognition of the lack of diversity jurisdiction—sever part of the case and only then find it has jurisdiction. However, the authority to sever misjoined claims or defendants under Rule 20 presumes the Court has jurisdiction to act.

*Lopez v. Pfeffer*, No. 13-CV-03341 NC, 2013 WL 5367723, at *5 (N.D. Cal. Sept. 25, 2013) (quoting *Perry v. Luu*, No. 13–cv–00729–AWI–JLT, 2013 WL 3354446, at * 5 (E.D. Cal. July 3, 2013)).[17] "The better approach is to have such severance arguments addressed to, and adjudicated by, the state court." *Hampton*, 319 F. Supp. 3d at 1214 (citations omitted).

The rejection of severance as a post-removal maneuver to create non-existing subject matter jurisdiction in federal court specifically has been rejected where, as here, opioid manufacturers try to sever healthcare providers, as one court explained:

> [T]he treating healthcare defendants were not misjoined in this action. Thus, if the Court were to sever the treating healthcare defendants, it would be severing parties that were properly joined in order to create subject-matter jurisdiction where it would not otherwise exist. *See Echols v. OMNI Med. Group, Inc*., 751 F.Supp.2d

[17] S*ee also Hampton,* 319 F. Supp. 3d at 1214 ("Courts have flatly rejected this [sever] approach as relying on the same 'confound[ing] ... circular logic' by which a removing defendant asks the court to act without jurisdiction as a means to create jurisdiction.") (quoting *Lopez*); *In re Bard IVC Filters Prods. Liab. Litig*., No. CV-16-00344-PHX-DGC, 2016 WL 2347430, at *8 (D. Ariz. May 4, 2016) ("a court's use of Federal Rule of Civil Procedure 21 presumes that the court has subject matter jurisdiction over the claims").

> 1214, 1216 (N.D.Okla.2010) (finding severance inappropriate in part, because it would extend federal jurisdiction where it would otherwise not exist by severing the nondiverse parties); *Ash v. Providence Hosp.*, No. 08–0525–WS–M, 2009 WL 424586, at *9 n. 19 (S.D.Ala. Feb. 17, 2009) (same and citing cases in support).

*Hagensicker v. Bos. Sci. Corp.*, No. 12-5018-CV-SW-RED, 2012 WL 836804, at *4 (W.D. Mo. Mar. 12, 2012).

Another reason why "an independent ground for subject matter jurisdiction must exist before the Rules are applied"[18] is because Rule 21 severance of claims is also limited by Federal Rules Civil Procedure 82 which states: "These rules do not extend or limit the jurisdiction of the district courts." FED. R. CIV. P. 82; *see also Echols*, 751 F. Supp. 2d at 1215 (Rule 21 severance of claims is also limited by the language of Fed.R.Civ.P. 82: '[t]hese rules do not extend or limit the jurisdiction of the district courts.'").

**3. Courts nationwide in opioid litigation have remanded to state court.**

Multiple federal decisions have rejected the same severance arguments the Endo Defendants allege here, specifically finding that claims against medical care providers should not be severed from the claims against manufacturer and/or distributor defendants:

- [T]he County's claims against the Prescriber Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor Defendants. First, the County brings a public nuisance claim against all Defendants. Specifically, the County alleges that the Manufacturer and Distributor Defendants contributed to the public nuisance by neglecting to investigate, report, or terminate suspicious orders from the Prescriber Defendants named in the Complaint.[19]

- [T]he City's claims against the Rosen-Hoffberg Defendants [healthcare providers and medical practice] are factually and legally intertwined with its

[18] *Nolan v. Olean Gen. Hosp.*, No. 13-CV-333-A, 2013 WL 3475475, at *5 (W.D.N.Y. July 10, 2013) (citing 14 Moore's Federal Practice, § 82.02 (Matthew Bender 3d ed.).
[19] *Anne Arundel Cty., Maryland v. Purdue Pharma L.P.*, No. CV GLR-18-519, 2018 WL 1963789, at *5 (D. Md. Apr. 25, 2018).

> claims against the Manufacturer Defendants. First, the City brings public nuisance and negligence claims against all Defendants, alleging that all Defendants contributed to the opioid crisis in Baltimore. . . .
> Because the City's claims against the Rosen-Hoffberg Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor Defendants, the Court concludes that the Rosen-Hoffberg Defendants are necessary and indispensable under Rule 19.[20]
>
> - This Court joins Judge Cain and its own prior ruling in finding the recent holdings of the Maryland District Court in *Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, No. GLR-18-800, 2018 WL 1963816 (D. Md. April 25, 2018), and *Anne Arundel Cty., Md. v. Purdue Pharma, L.P.*, No. GLR-18-519, 2018 WL 1963789 (D. Md. April 25, 2018), to be most persuasive on the severance question. In those cases, similar issues and arguments were raised and the court found that the claims were factually and legally intertwined. The plaintiffs alleged that all of the defendants contributed to the opioid crisis in Baltimore and Anne Arundel County, and the court found that the healthcare provider-defendants were necessary and indispensable, and therefore not severable under Rule 21.[21]
>
> - [Opioid] Defendant Insys provides no insight or explanation as to why it did not promptly seek severance in state court prior to removal, and the undersigned declines to sanction its removing first and answering questions later approach.[22]

In addition, employing similar reasoning, cases have found that the manufacturers of opioid drugs are properly joined with other participants in the supply chain, reasoning that all defendants participated in the same vast scheme:

> This case involves claims against Defendants for engaging in a financial scheme to fraudulently market and fuel the sale of opioids. The similarities between the Defendants do overshadow any differences. The alleged acts are sufficiently intertwined with respect to the Defendants. The claims at issue are not so separate and distinct such that joinder would constitute injustice. Joinder promotes efficiency and will reduce delay, inconvenience, and expense to the parties. By contrast, Plaintiff will be highly prejudiced if the Distributor Defendants are severed and the Manufacturer Defendants are able to shift blame on to the absent

---

[20] *Mayor & City Council of Baltimore v. Purdue Pharma L.P.,* No. CV GLR-18-800, 2018 WL 1963816, at *5 (D. Md. Apr. 25, 2018).
[21] *Cty. of Anderson v. Rite Aid of S.C., Inc.*, No. 8:18-CV-1947-BHH, 2018 WL 8800188, at *7 (D.S.C. Aug. 20, 2018) (note omitted).
[22] *Hampton*, 319 F. Supp. 3d at 1213 (quotation marks omitted).

> Distributor Defendants. Joinder actually serves the interest of judicial economy in this case. Therefore, the Court finds that joinder is proper.

*Cty. of Delta v. Purdue Pharma, L.P.,* No. 4:18-CV-095, 2018 WL 1440485, at *4 (E.D. Tex. Mar. 22, 2018). *See also Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.*, No. 3:19-CV-463, 2019 WL 3207795, at *5 (E.D. Va. July 16, 2019) ("Actavis argues that the claims against the Manufacturer Defendants and the PBM Defendants are legally distinct from those against the Distributor Defendants . . . . But that is not so. The Complaint alleges that all the defendants . . . participated in a vast scheme to enrich themselves by manufacturing, delivering, and prescribing opioids all at the cost of the public. . . . And many of the Counts within the Complaint allege that all defendants are responsible for the harm to Mecklenburg County."); *Dinwiddie Cty., Virginia v. Purdue Pharma, L.P.*, No. 3:19-CV-242, 2019 WL 2518130, at *5 (E.D. Va. June 18, 2019) ("Mallinckrodt argues that the claims against the Manufacturer Defendants and the PBM Defendants are legally distinct from those against the Distributor Defendants . . . But that is not so. The Complaint alleges that all the defendants . . . participated in a vast scheme to enrich themselves by manufacturing, delivering, and prescribing opioids all at the cost of the public. . . . And many of the Counts within the Complaint allege that all defendants are responsible for the harm to Dinwiddie County."); *Cty. of Travis v. Purdue Pharma*, LP, No. 1:18-CV-254-RP, 2018 WL 1518848, at *4 (W.D. Tex. Mar. 28, 2018) ("In light of the overlapping fact allegations, it is likely that the county would marshal some of the same evidence to prove its claims against both sets of defendants."); *Cty. of Falls v. Purdue Pharma, LP*, No. 6:18-CV-47-RP-JCM, 2018 WL 1518849, at *4 (W.D. Tex. Mar. 28, 2018) ("In light of the overlapping fact allegations, it is likely that the county would marshal some of the same evidence to prove its claims against both sets of defendants.").

**4. Severance is impossible because it will prejudice Santa Fe.**

Among the reasons that courts around the country have determined that joinder of all opioid supply chain participants is proper is the resulting prejudice to the governmental entity if these culpable parties cannot be pursued in the same litigation, thereby allowing Defendants in both cases to blame the proverbial empty chairs.[23]

It is well recognized that having to litigate against one defendant in state court while simultaneously litigating claims against other defendants in an MDL centralized in a different state's federal court is prejudicial. *See, e.g., Saviour v. Stavropoulos*, No. CV 15-5362, 2015 WL 6810856, at *4 (E.D. Pa. Nov. 5, 2015). Collecting cases, the *Saviour* court concluded that:

> A number of courts have declined to sever non-diverse parties under circumstances similar to those presented in this case, even where the remaining claims could have been transferred to an MDL. *See, e.g., Echols v. OMNI Med. Grp., Inc.*, 751 F. Supp. 2d 1214, 1217 (N.D. Okla. 2010); *Robinson v. Swedish Health Servs*., 10-cv-0113, 2010 WL 816818, at *2 (W.D. Wash. Mar. 5, 2010); *Ash v. Providence Hosp*., No. 08-cv-0525, 2009 WL 424586, at *9 n.19 (S.D. Ala. Feb. 17, 2009); *see also Rost v. Pfizer Inc*., 502 Fed.Appx. 51, 53 (2d Cir. 2012) (holding that the district court did not abuse its discretion by denying a motion to sever a non-diverse defendant in order to avoid litigating "one [case] in federal court against the diverse defendants and one [case] in state court"). This Court agrees with these cases.

*Saviour*, 2015 WL 6810856, at *5; *see also Hagensicker, supra*, 2012 WL 836804, at *4 ("Plaintiff and the treating healthcare defendants could both be prejudiced if the treating healthcare defendants were severed.") (citing *Echols*, 751 F.Supp.2d at 1217).

---

[23] *Cty. of Travis, supra*, 2018 WL 1518848, at *4 ("Should the Court sever this action, the county would be prejudiced by Defendants' ability to assign blame to an absent party in each case."); *Cty. of Falls, supra,* 2018 WL 1518849, at *4 ("Should the Court sever this action, the county would be prejudiced by Defendants' ability to assign blame to an absent party in each case."); *Cty. of Delta, supra*, 2018 WL 1440485, at *4 (quoted above).

The prejudice to the City of Santa Fe is one reason why Endo misplaces heavy reliance on *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989), and a minority representation of its progeny. In *Newman-Green,* the case was before Judge Easterbrook for appellate oral argument in the Seventh Circuit when he raised a jurisdictional defect that had been apparently overlooked by counsel and the District Court Judge. *Id*. at 828. The Supreme Court accepted certiorari, deciding that the Seven Circuit had the authority to dismiss the nondiverse dispensable party, but that "we emphasize that such authority should be exercised sparingly. In each case, the appellate court should carefully consider whether the dismissal of a nondiverse party **will prejudice any of the parties in the litigation**." *Id*. at 837-38 (emphasis added). In the *Newman-Green* case, the nondiverse party could have been dismissed by the appeals court, but only because "none of the parties will be harmed by [the] dismissal," for reasons articulated by the Supreme Court. *Id*. at 838.[24] Here, in stark contrast, the City of Santa Fe will not only be deprived of its chosen forum, but will be further substantially prejudiced by a stay of the litigation in seeming perpetuity (*see* note 1 *supra*). In addition, Santa Fe will be prejudiced by any severance, as it will be forced to pursue its lawsuit in two different courts, may face an "empty chair" argument with different defendants in different cases, and risks inconsistent or conflicting judgments.

*Newman-Green* is distinguishable for the additional reasons that the Court did not rule that the Rules of Civil Procedure could be used to expand the scope of removal jurisdiction after the fact or that severance was proper over the plaintiff's objection, as the Sixth Circuit explained:

[24] *See also U.S. for Use & Benefit of Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1496 (10th Cir. 1995) (the prerequisites for discretionary relief under *Newman-Greene* are "that these defendants are dispensable and that their dismissal at this stage would not prejudice any of the parties involved").

> *Newman–Green* is fundamentally different from the circumstances of this case because *Newman–Green* **did not involve removal**, but was rather an instance where the plaintiff originally filed suit in federal court and wished to resolve its dispute in that forum. Importantly, in *Newman–Green* it was the plaintiff, who wished to be in federal court all along, who sought to dismiss the nondiverse defendant that it had identified, when the problem with complete diversity became apparent.
> . . . [I]n . . . *Newman–Green. . .*, the triggering factor for the appellate authority to dismiss the nondiverse defendants to cure the lack of jurisdiction was the *plaintiff's* motion to enable it to proceed with the case against diverse defendants in federal court. This is a far cry from the circumstances in this case. Here Curry wished to bring this lawsuit against all three defendants in state court. As the plaintiff, Curry is the master of his complaint, . . . . and he properly chose to pursue his tort claims . . . in one lawsuit in state court.

*Curry v. U.S. Bulk Transp., Inc*., 462 F.3d 536, 542 (6th Cir. 2006) (emphasis added; citation omitted). *See also Ferry v. Bekum Am. Corp*., 185 F. Supp. 2d 1285, 1289 (M.D. Fla. 2002) (*Newman-Green* does not "support dropping a nondiverse *plaintiff*, over the *plaintiff*'s objection, in order to retain (or create) subject matter jurisdiction"); *id*. at 1290 ("The fact that the Plaintiffs, who have a choice of a state forum, have objected to severing or dropping the claims of Ms. Watchus weighs against the Defendants' proposal.") (citation omitted); *Spann v. Northwestern Mut. Life Ins.*, 795 F. Supp. 386, 390–91 (M.D. Ala.1992) (rejecting defendant's request to drop nondiverse defendant to establish diversity in removed case, since plaintiff had not made this request); *Ibarra v. Kennedy Funding, Inc*., No. CIV 13-2371 TUC JGZ, 2014 WL 1878750, at *5 (D. Ariz. May 12, 2014) ("in *Newman–Green* the plaintiff filed a motion to dismiss the defendant that defeated diversity. The Supreme Court held that the court of appeals had the authority to grant the plaintiff's motion to dismiss a dispensible defendant that destroys diversity. It did not hold that a defendant that destroys diversity always must be dismissed. Here, there has been no such motion

to dismiss. *Newman–Green* is inapposite to the instant case."), *report and recommendation adopted*, No. CV-13-02371-TUC-JGZ, 2014 WL 2711837 (D. Ariz. June 16, 2014).[25]

For the same reasons articulated by the Sixth Circuit, other cases cited in Endo's removal notice are unavailing. In addition to citing *Newman-Green*, Endo's removal notice devotes two paragraphs to a disquisition regarding *Joseph v. Baxter Int'l*, 614 F.Supp.2d 868 (N.D. Ohio 2009), and states in a third paragraph that other courts have followed "the same approach" as *Joseph*. NoR, ¶¶ 58-61 [Doc. 1, Pages 14-15 of 32]. *Joseph* has been heavily criticized as "simply wrong." *Smith v. Am. Med. Sys., Inc*., No. 2:09-CV-168-TMP, 2009 WL 10688480, at *4 (N.D. Ala. Aug. 25, 2009), *adopted*, No. 2009 WL 10688481 (N.D. Ala. Sept. 25, 2009). *Joseph* misplaced reliance on *Newman-Green*, because there the **plaintiff** voluntarily moved to dismiss the non-diverse defendant. That was not the case in *Joseph*, where the court apparently "dropped" the non-diverse defendant over the objection of the plaintiff. *See Smith,* 2009 WL 10688480 (criticizing *Joseph*). Favorably citing *Smith* and rejecting Defendant Insys' reliance on *Joseph*, the United States District Court for the District of Nevada observed that *Joseph* has "not enjoyed broad support."[26] Other decisions cited in the removal notice have likewise been rejected by other courts.[27]

---

[25] *Cf. Sta-Rite Indus., Inc. v. Allstate Ins. Co*., 96 F.3d 281, 287 (7th Cir. 1996) (distinguishing *Newman-Green* and reasoning that, "here, there is presently pending a state court action involving all the parties and the same issues. No such alternative forum existed in *Newman–Green.*").

[26] *Hampton*, 319 F. Supp. 3d at 1214 n.10. *See also In re Bard IVC Filters Prods. Liab. Litig*., No. CV-16-00786-PHX-DGC, 2016 WL 2956557, at *7 (D. Ariz. May 23, 2016) (declining to follow *Joseph*).

[27] *See, e.g., Bard IVC, supra,* 2016 WL 2956557, at *7 (declining to follow *Mayfield v. London Women's Care, PLLC*, No. 15-19, 2015 WL 3440492 (E.D. Ky. May 28, 2015)); *Hampton*, 319 F. Supp. 3d at 1214 n.10 (declining to follow *Mayfield*).

Finally, *Newman-Green* is inapplicable because there the party that the plaintiff had agreed to dismiss was **dispensable**, but here, the opioid defendants are not dispensable, as several courts have found in opioid cases quoted above. *See* § III.B.3 *supra*.

### C. The Fraudulent Misjoinder Theory Alternatively Alleged Is Inapplicable and, Independently, Has Not Been Adopted in the Tenth Circuit.

Endo Defendants do not attempt to carry the heavy burden of establishing fraudulent joinder, and the removal notice omits any explanation as to how the claims against the prescribers are not viable as a matter of state law.[28] Instead, the Endo Defendants rely on a suspect "fraudulent misjoinder" theory manufactured in an Eleventh Circuit case which has not been adopted in the Tenth Circuit.

---

[28] "To establish [fraudulent] joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir.2011)). "The defendant seeking removal **bears a heavy burden** of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988 (quoting *Pampillonia v. RJR Nabisco, Inc*., 138 F.3d 459, 461 (2d Cir.1998)) (emphasis added). The heavy burden means:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.

*Montano v. Allstate Indemnity Co*., 211 F.3d 1278, 2000 WL 525592, at *2 (10th Cir.2000) (unpublished table opinion) (quoting *Hart v. Bayer Corp*., 199 F.3d 239, 246 (5th Cir. 2000)). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." *Couch v. Astec Indus., Inc*., 71 F.Supp.2d 1145, 1146–47 (D.N.M.1999); *see also Flores-Duenas v. Briones*, No. CIV 13-0660 JB/CG, 2013 WL 6503537, at *18 (D.N.M. Dec. 1, 2013) (quoting *Couch*).

Even assuming for the sake of argument that this theory is viable in this Circuit, which is denied (as explained below), the City's claims against the prescribers are not fraudulently misjoined with the other Defendants participating in the opioid supply chain because the "claims against all the defendants are factually, legally, and logically related, arising out of the alleged interconnected activities, from manufacturing the opioids to delivering them to patients."[29] Multiple federal decisions have rejected the same fraudulent misjoinder argument the Endo Defendants make here, explaining that causes of action against prescribing and treating medical professionals share common issues of fact with the manufacturers and/or distributors of opioids:

- [I]t is clear that the County's claims against the Prescriber Defendants are logically related to its claims against the Manufacturer and Distributor Defendants. . . . [T]he County brings a public nuisance claim against all Defendants. The County alleges, among other things, that the Manufacturer and Distributor Defendants created a public nuisance by failing to identify and report suspicious behavior by the Prescriber Defendants. . . . Because the County's claims against the Prescriber Defendants are logically related to its claims against the Manufacturer and Distributor Defendants, the Court concludes that the claims arise from the same transaction or occurrence.[30]

- [I]t is clear that the City's claims against the Rosen-Hoffberg Defendants [healthcare providers and medical practice] are logically related to its claims against the Manufacturer and Distributor Defendants. . . . [T]he City brings public nuisance and negligence claims against all Defendants, alleging that all Defendants contributed to the opioid crisis in Baltimore. . . . Because the City's claims against the Rosen-Hoffberg Defendants are logically related to its claims against the Manufacturer and Distributor Defendants, the Court concludes that the claims arise from the same transaction or occurrence.[31]

- The claims against [opioid Defendants, including pharmacy and a clinic] clearly have a logical relationship to one another and arise from the same or substantially

---

[29] *See Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.*, No. 3:19-CV-463, 2019 WL 3207795, at *6 (E.D. Va. July 16, 2019) (further quoted below).

[30] *Anne Arundel Cty., Maryland v. Purdue Pharma L.P.*, No. CV GLR-18-519, 2018 WL 1963789, at *5 (D. Md. Apr. 25, 2018) (citation and quotation marks omitted).

[31] *Mayor & City Council of Baltimore v. Purdue Pharma L.P.*, No. CV GLR-18-800, 2018 WL 1963816, at *5 (D. Md. Apr. 25, 2018) (citation and quotation marks omitted).

related series of transactions and occurrences. At the very least, . . . the claims against the Manufacturer Defendants and the Distributor and Dealer Defendants are logically related, as all of these defendants are integral players in the prescription drug supply chain that provides opioids and other prescription drugs to people in South Carolina.[32]

- [I]f this Court were to adopt the fraudulent misjoinder doctrine and apply state procedural law, then the state law claim that plaintiffs assert against Provider Defendants and Manufacturer Defendants allows the plaintiffs to join defendants in one action. Because the presence of Provider Defendants defeats diversity jurisdiction, under the fraudulent misjoinder doctrine, plaintiffs would prevail.[33]

In addition, courts have reached the same decisions in rejecting the argument that other categories of opioid defendants have been "misjoined."[34]

---

[32] *Cty. of Anderson v. Rite Aid of S.C., Inc.*, No. 8:18-CV-1947-BHH, 2018 WL 8800188, at *6 (D.S.C. Aug. 20, 2018).

[33] *Staubus v. Purdue Pharma, L.P.,* No. 2:17-CV-122-TAV-CLC, 2017 WL 4767688, at *5 (E.D. Tenn. Oct. 20, 2017). *See also Ohler v. Purdue Pharma, L.P.,* No. CIV.A. 01-3061, 2002 WL 88945, at *7 (E.D. La. Jan. 22, 2002) (finding connexity between causes of action against opioid manufacturer and prescriber, rejecting misjoinder argument, and remanding case); *Cordill v. Purdue Pharma, L.P.*, No. 1:02CV00121, 2002 WL 31474466 (W.D. Va. Nov. 5, 2002) (rejecting fraudulent joinder and remanding case where prescribing defendants (doctor and clinic) and five pharmaceutical companies, including manufacturers, were named as defendants).

[34] *See Mecklenburg, supra*, 2019 WL 3207795, at *6 ("Even assuming that fraudulent misjoinder is a proper basis for removal (which is not clear since the Fourth Circuit has not expressly recognized it), the doctrine would not apply here because the claims asserted against the Distributor Defendants are clearly connected to those made against the Manufacturer and PBM Defendants."); *Dinwiddie Cty., Virginia v. Purdue Pharma, L.P.*, No. 3:19-CV-242, 2019 WL 2518130, at *5 (E.D. Va. June 18, 2019) ("The claims against all the defendants are factually, legally, and logically related, arising out of the alleged interconnected activities, from manufacturing the opioids to delivering them to patients. Thus, the claims against the Distributor Defendants were not misjoined. Indeed, the Distributor Defendants are the crucial link between the Manufacturer Defendants and patients who received the opioids. Fraudulent misjoinder is not a proper basis for removal."); *Cty. of Travis v. Purdue Pharma, LP*, No. 1:18-CV-254-RP, 2018 WL 1518848, at *4 (W.D. Tex. Mar. 28, 2018) ("This case does not present the sort of extreme case for which fraudulent misjoinder is reserved. . . . [T]he claims against each set of defendants are hardly wholly distinct or lacking any real connection; on the contrary, they raise a host of common factual and legal issues."); *Cty. of Falls v. Purdue Pharma, LP*, No. 6:18-CV-47-RP-JCM, 2018 WL 1518849, at *4 (W.D. Tex. Mar. 28, 2018) ("This case does not present the sort of extreme case for which fraudulent misjoinder is reserved. . . ."); *Cty. of Delta v. Purdue Pharma, L.P.*, No. 4:18-CV-095, 2018 WL 1440485, at *4 (E.D. Tex. Mar. 22, 2018) ("the Court finds that

In the face of this national body of caselaw overwhelmingly rejecting the same jurisdictional theory floated in the removal notice, the Endo Defendants cite two inapposite West Virginia opinions that rely on the idiosyncrasies of that State's laws.[35]

The fraudulent misjoinder theory can be rejected for the independent reason that the Tenth Circuit declined the invitation to adopt it. The Endo Defendants claim that the doctrine is hypothetically available in the Tenth Circuit, but conspicuous by omission is a citation to a decision in which federal subject matter jurisdiction was recognized in this District or Circuit on the basis of this doctrine. *See* NoR ¶¶ 68-69. The Notice of Removal misplaces reliance on *Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732 (10th Cir. 2010), suggesting that *Lafalier* is authority for the theory's recognition in this Circuit. NoR ¶68 [Doc. 1, Page 19 of 32]. In truth, however, this opinion expressly declines to adopt the fraudulent misjoinder/procedural misjoinder doctrine. *Lafalier*, 391 F. App'x at 739 ("we need not decide that issue today, because the record before us does not show that adopting the doctrine would change the result in this case."). The Tenth Circuit, along with the majority of courts, "have declined to adopt the fraudulent misjoinder doctrine."[36]

The fraudulent misjoinder doctrine was created by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v.*

---

the Distributor Defendants do not allege facts that illustrate that the alleged misjoinder was 'egregious.' . . . The Court finds no fraudulent misjoinder under *Tapscott*.").

[35] The notice of removal relies upon *Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 263 F. Supp. 3d 639, 644 (S.D. W. Va. 2017), which announces itself as "the rare case" and is based on a West Virginia statutory law that has no application here. This case is unconvincing as a reason to retain jurisdiction here. *See Anne Arundel Cty., supra,* 2018 WL 1963789, at *5 (citing *McDowell* for proposition that the district courts are split on whether the fraudulent misjoinder doctrine is even viable; remanding case to state court); *Baltimore, supra,* 2018 WL 1963816, at *5 (same).

[36] *Staubus, supra,* 2017 WL 4767688, at *4 (citing *Lafalier* and collecting cases).

*Office Depot, Inc.*, 204 F.3d 1069, 1072–76 (11th Cir. 2000). *Tapscott* has come under intense scrutiny by skeptical courts outside the Eleventh Circuit. There is a "sheer volume of . . . case law rejecting the fraudulent misjoinder doctrine."[37] "The reasons against the doctrine are many and persuasive."[38] "The fraudulent misjoinder doctrine is complex, ambiguous, and perhaps even unnecessary. Few courts have acknowledged it as a viable doctrine. Fewer still have affirmatively adopted it."[39] As one United States District Court summarized the doctrine's widespread rejection:

> The criticism has focused largely on the fact that the fraudulent misjoinder doctrine runs afoul of the well-settled rule that federal jurisdiction is to be construed narrowly, that the fraudulent misjoinder doctrine creates an unpredictable and complex rule, and that questions of joinder under state law do not implicate federal subject matter jurisdiction. *See, e.g., Prempro Prods. Liability Litig.*, 591 F.3d [613, 621–22 (8th Cir. 2010)]. Numerous courts have found that the better approach is to require the defendant to challenge the claimed misjoinder in state court and, if that court severs the claims and diversity exists, to then seek removal to federal court. *See, e.g., Osborn [v. Metro Life Ins. Co.*, 341 F.Supp.2d 1123, 1127 (E.D. Cal. 2004)].
>
> . . . .
>
> Application of the fraudulent misjoinder doctrine also requires federal court action at a point when the court admittedly has no jurisdiction over the case . . . . [T]he doctrine raises more questions than answers . . . .[40]

Finally, the Endo Defendants mischaracterize the fraudulent misjoinder theory by claiming that egregiousness is not the standard. According to the decision creating the doctrine, fraudulent/procedural misjoinder applies only to "egregious" cases where the claims against the

---

[37] *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204, 1211 (D. Nev. 2018) (collecting cases within Ninth Circuit).

[38] 319 F. Supp. 3d at 1211 (quoting *Thee Sombrero, Inc. v. Murphy*, No. EDCV 15-001004-VAP, 2015 WL 4399631, at *4 (C.D. Cal. July 17, 2015)).

[39] *Staubus*, 2017 WL 4767688, at *6 (declining to adopt the doctrine).

[40] *Hampton*, 319 F. Supp. 3d at 1211-1212 (citations and quotation marks omitted).

non-diverse party are "wholly distinct" from the claims against the diverse party. *Tapscott*, 77 F.3d at 1360.

### D. The Removal Is Procedurally Defective Because All Served Defendants Have Not Joined in the Removal.

The consent of all defendants is required for removal on grounds of diversity of citizenship under 28 U.S.C. Section 1332(a). 28 U.S.C. § 1446(b)(2)(A). "The failure of one defendant to join in the notice renders the removal notice procedurally defective, which requires that the district court remand the case."[41] Dr. Bray-Morris and Nurse Broderson were properly served in this case. Exhibit 3, 4. Neither consented to the removal. See NoR, ¶80 [Doc. 1, Page 23 of 32] (claiming consent not required); *id*. at Signature Pages [Doc. 1, pages 23-29 of 32]. "[I]t appears that no court has ever used the doctrine of fraudulent misjoinder for the purpose of determining whether the unanimous consent requirement has been met."[42] This is another reason compelling remand to state court.

## IV. STATEMENT REGARDING ORAL ARGUMENT

Because the City of Santa Fe respectfully requests that this Court rule on this matter before a decision of the Judicial Panel of Multidistrict Litigation transferring this case to a court that will stay the City's case indefinitely (*see* note 1 *supra*), and because the removal notice is clearly baseless, the City does not request oral argument, but would be happy to appear if this Honorable Court chooses to set oral argument.

---

41 *Ullman v. Safeway Ins. Co.*, 995 F. Supp. 2d 1196, 1225 (D.N.M. 2013) (quoting *Brady v. Lovelace Health Plan*, 504 F.Supp.2d 1170, 1172–73 (D.N.M. 2007)).
42 *Staubus, supra*, 2017 WL 4767688, at *6.

## V. CONCLUSION AND PRAYER FOR RELIEF

In the midst of the gravest man-made public health crisis of our time, the Endo Defendants removed this case on the grounds of diversity of citizenship, while simultaneously alleging that the City of Santa Fe and two of the Defendants are citizens of the State of New Mexico. There is no removal jurisdiction because there is no complete diversity. Endo cannot meet its heavy burden of demonstrating beyond any ambiguity that the federal judiciary's limited jurisdiction reaches the City's Complaint. Therefore, this case must be remanded.

The City respectfully requests that this Honorable Court GRANT this motion to remand; order that this case be remanded to the First Judicial Court, County of Santa Fe, State of New Mexico, for further proceedings; order that a certified copy of the order of remand be mailed by the United States clerk to the clerk of the New Mexico court, and rule on this matter prior to the next JPML Panel Hearing on January 30, 2020.[43]

Dated: December 9, 2019

**City of Santa Fe, New Mexico**

/s/ Pia Salazar
Pia Salazar
pia@salazar-sullivanlaw.com
Patrick Sullivan
pat@salazar-sullivanlaw.com
**SALAZAR, SULLIVAN & JASIONOWSKI**
100 Gold Avenue SW, Suite 201
Albuquerque, New Mexico 87102
Tel. (505) 314-1414
Fax. (505) 31401419

[43] At this time, it is unknown whether the City of Santa Fe's transfer opposition will be set for hearing on January 30, 2020 or March 26, 2020.

Matthew R. McCarley*
mccarley@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Tel. (214) 890-0711
Fax. (214) 890-0712

Matthew S. Daniel*
mcdaniel@lawyerworks.com
**FERRER POIROT & WANSBROUGH**
2603 Oak Lawn Ave. Ste. 300
Dallas, Texas 75219
Tel. (214) 521-4412
Fax (866) 513-0115

* indicates Pro Hac Vice to be submitted

**ATTORNEYS FOR THE PLAINTIFF CITY OF SANTA FE**

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of December 2019, a true and correct copy of the foregoing document was electronically filed and served to all counsel of record.

/s/ Pia Salazar
Pia Salazar

## CERTIFICATE OF CONFERENCE

Matthew McCarley conferred with counsel for Endo Health Solutions Inc. and Endo Pharmaceuticals, Inc., and the Endo Defendants oppose the City of Santa Fe's Motion to Remand. Counsel for Endo stated to Matthew McCarley that the motion was opposed.

/s/ Pia Salazar
Pia Salazar