# Exhibit 5

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| CITY OF ALBUQUERQUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-01168-JFR-SCY |
| ) | |
| TEVA PHARMACEUTICALS USA, ) | |
| INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF CITY OF ALBUQUERQUE'S MOTION TO EXPEDITE MOTION TO REMAND

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................................. 4

III.  ARGUMENT ........................................................................................................................ 6

  A.  Controlling Precedent Commands that Federal Subject Matter Jurisdiction Must Be Considered First in Priority. ................................................................................................. 6
  B.  An Indeterminate Stay of Litigation Aimed at Ameliorating a Deadly Public Health Crisis Is Not Justified. ..................................................................................................................... 8

IV.  STATEMENT REGARDING ORAL ARGUMENT ......................................................... 11

V.  CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*New Mexico ex rel. Balderas v. Purdue Pharma L.P.*,
  323 F. Supp. 3d 1242 (D.N.M. 2018) ................................................................................3, 9

*Clinton v. Jones*,
  520 U.S. 681 (1997) ............................................................................................................3, 8

*Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*,
  713 F.2d 1477 (10th Cir. 1983) ..............................................................................................8

*Cty. of Anderson v. Rite Aid of S.C., Inc.*,
  No. 8:18-CV-1947-BHH, 2018 WL 8800188 (D.S.C. Aug. 20, 2018) ......................2, 10, 11

*Dinwiddie County, Virginia v. Purdue Pharma, L.P.*,
  3:19-CV-242, 2019 WL 2518130 (E.D. Va. June 18, 2019) ............................................2, 10

*Dunaway v. Purdue Pharma L.P.*,
  391 F. Supp. 3d 802 (M.D. Tenn. 2019) ...............................................................................10

*Dutcher v. Matheson*,
  733 F.3d 980 (10th Cir. 2013) ................................................................................................3

*Garling v. United States Envtl. Prot. Agency*,
  849 F.3d 1289 (10th Cir. 2017) ..............................................................................................7

*Great Divide Wind Farm 2 LLC v. Aguilar*,
  *No*. CIV 19-0099 ....................................................................................................................8

*U.S. ex rel. Grynberg v. Praxair, Inc.*,
  389 F.3d 1038 (10th Cir. 2004) ..............................................................................................7

*Karnes v. Boeing, Co.*,
  335 F.3d 1189 (10th Cir. 2003) ..............................................................................................3

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ................................................................................................................7

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ............................................................................................................3, 8

*In re Lang*,
  414 F.3d 1191 (10th Cir. 2005) ..............................................................................................7

*Mansfield, C. & L.M.R. Co. v. Swan*,
    111 U.S. 379 (1884) ...........................................................................................................7

*Ex parte McCardle*,
    7 Wall. 506, 514 (1868) ....................................................................................................6

*Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.*,
    No. 3:19-CV-463, 2019 WL 3207795 (E.D. Va. July 16, 2019) ..................................2, 9

*Meister v. Pub. Serv. Co. of New Mexico*,
    No. CV 03-227 ............................................................................................................. 8-9

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ....................................................................................................6, 7, 8

*Syngenta Crop Prot., Inc. v. Henson*,
    537 U.S. 28 (2002) .............................................................................................................3

*United States v. Cotton*,
    535 U.S. 625 (2002) ...........................................................................................................7

**Statutes**

NMSA 1978, Section 26-1-18 .........................................................................................4

28 U.S.C. §1441(b)(2) .....................................................................................................4

**I.      INTRODUCTION**

Plaintiff City of Albuquerque, New Mexico, instituted a state court action against Defendants responsible for the epidemic of opioid abuse, crippling addiction, and overdoses that have caused damages to the City. *See* First Amended Complaint in *City of Albuquerque v. Teva Pharmaceuticals USA, Inc., et al.,* D-202-CV-2019-05386, in the 2nd Jud. Dist. Ct., Bernalillo County, New Mexico ("FAC"). The City seeks to hold the participants in the opioid supply chain responsible for the scourge of opioid addiction and abuse plaguing Albuquerque. Four causes of action against *all* Defendants are alleged, i.e., causes of action for public nuisance, for negligence and negligence per se, for gross negligence and punitive damages, and for unjust enrichment. FAC ¶¶279-294, 354-405 [Doc. 1-1, Pages 100-106, 120-129, of 275].

Removing Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. (occ. "Endo") state that the Plaintiff is a citizen of New Mexico for purposes of diversity jurisdiction, and that the New Mexico citizenship of *seven* Defendants named in the case--Michael L. Gallegos, Andrei Marchenko, CNP, Bitu Seth, PA, Laura LeBlanc, NP, Peter Pacheco, PA, Rebecca Duchon, PA, and Marchell Woodruff, PA--should be "ignored," and that these seven defendants are "fraudulently misjoined." *See, generally,* Notice of Removal [Doc. 1]. Thus, it is uncontested that complete diversity of citizenship is lacking on the face of the City's Complaint, and yet, diversity of citizenship is the only purported basis for removing the case to federal court.

Numerous courts have rejected federal jurisdiction, recognizing that these cases belong in state court, and that no apposite authority supports the opioid Defendants' removals. *See* Pl. City of Albuquerque's Mot. to Remand [Doc. 11]. Two of these decisions even explain the unanimous rejection of opioid Defendants' arguments: "The Court has not been notified of any decision in

1

these similar cases in which a court has found that there was federal jurisdiction." *Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.,* No. 3:19-CV-463, 2019 WL 3207795, at *2 (E.D. Va. July 16, 2019); *see also Dinwiddie County, Virginia v. Purdue Pharma, L.P*., 3:19-CV-242, 2019 WL 2518130, at *2 (E.D. Va. June 18, 2019) ("The Court has not been notified **of *any* decision** in these similar cases in which a court has found that there was federal jurisdiction.") (emphasis added).

The stated purpose of the removal is to dissuade this Court from even entertaining the baseless claim of federal subject matter jurisdiction; rather, the Endo Defendants admit that they seek a cross-country transfer to the federal Multidistrict Litigation without this Court even considering whether federal subject matter jurisdiction exists in the first instance. *See* Notice of Removal ¶4 [Doc. 1, Page 3 of 30] ("all remand questions should be resolved by the MDL court"). What the removal notice omits, however, is that the proposed transferee court **will refuse to allow the filing of, and will refuse to rule on, any Cities' remand motions**.[1] Unless this Court rules, the City will be stranded in perpetuity for the foreseeable future, in a court that will refuse to even consider that it is without subject matter jurisdiction to take any action—much less grant a stay. Therefore, the purpose of this Motion is to respectfully request that this Honorable Court remand

---

[1] *See* Order Regarding Remands, *In re National Prescription Opiate Litigation,* MDL 2804 (N.D. Ohio Feb. 16, 2018) (filed at Doc. 11-1, as exhibit 1 to City's Remand Motion) (entering moratorium on motions to remand); Case Management Order No. 1 (N.D. Ohio April 11, 2018) (filed at Doc. 11-2, as exhibit 2 to City's Remand Motion), at ¶6.g ("No party may file any motion not expressly authorized by this Order absent further Order of this Court or express agreement of the parties."); *see also Cty. of Anderson v. Rite Aid of S.C., Inc*., No. 8:18-CV-1947-BHH, 2018 WL 8800188, at *2 (D.S.C. Aug. 20, 2018) ("The MDL Court has issued a moratorium on all substantive filings, including motions to remand, and has indicated that it is not going to rule on any pending motions to remand at the present time.").

2

this case on or before March 26, 2020, which is the anticipated hearing date for the cross-country transfer by the Judicial Panel on Multidistrict Litigation.

Inaction by this Honorable Court will doom the City's case for an indeterminate time period, notwithstanding the obvious lack of federal jurisdiction. The City is grappling with the worst man-made medical catastrophe of our times, and Defendants are gaming the automatic removal and MDL system by removing a case on overwhelmingly rejected grounds solely to secure an indefinite delay, which is manifestly unjust to the citizens of Albuquerque. If successful, Defendants' obstructionist stratagems would violate two well-established legal principles: 1) that removal jurisdiction is strictly construed, with removing defendants carrying the burden of establishing jurisdiction;[2] and 2) that litigation cannot be stayed without first establishing the prerequisites of need and the propriety of a stay.[3] A great injustice will be done, in violation of these bedrock legal principles, if the Court does not rule prior to the Panel's transfer to the Ohio court.

---

[2] *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) ("[R]emoval is entirely a creature of statute" and the removal statutes "are to **be strictly construed**.") (emphasis added; citation omitted); *Karnes v. Boeing, Co.*, 335 F.3d 1189, 1194 (10th Cir. 2003) (the Tenth Circuit has "emphasize[d] that the burden is on [the removing party] to show jurisdiction.") (remanding case); *New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242, 1248 (D.N.M. 2018) ("Removal statutes are to be strictly construed, and the party invoking federal jurisdiction bears the burden of proof with a presumption against federal jurisdiction.") (citing *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013)); *see also* Pl. City of Albuquerque's Motion to Remand, pp. 7-8 [Doc. 11, Pages 14-15 of 32].
[3] *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need.") (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)); *see also* § III.B *infra.*

3

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

On July 10, 2019, the City of Albuquerque initiated legal action in New Mexico State Court, Second Judicial District, against opioid manufacturers, distributors, pharmacies, a pharmacist, and prescribers responsible for causing the worst man-made medical epidemic to plague the City and its residents. *See* Complaint [Doc. 1-1, Page 132 of 275]. After certain bankruptcy filings, the City amended its Complaint to drop the bankrupt Defendants. *See* FAC [Doc. 1-1, Pages 5-131 of 275].

There is no federal subject matter jurisdiction. Seven Defendants are New Mexico citizens, thereby destroying complete diversity seven times over, and foreclosing removal under the plain language of 28 U.S.C. §1441(b)(2). The New Mexico citizen Defendants abdicated their duties by prescribing large quantities of dangerously addictive opioids illegitimately and/or mishandling these dangerous drugs in derogation of mandatory state law duties. *See* FAC at ¶¶233-241, 361 [Doc. 1-1, Pages 84-85, 122 of 275]. Defendant Michael L. Gallegos operated as a New Mexico pharmacist, and he was cited by the State New Mexico Board of Pharmacy with regard to his mishandling of opioid drugs. *See* FAC ¶234 [Doc. 1-1, Page 84 of 275]. **All** of the Defendants named by the City of Albuquerque--New Mexico citizens and non-citizens alike--breached their duties to protect the supply chain of dangerously addictive drugs. Specifically, all of the Defendants repeatedly breached their duties under state laws and regulations, including without limitation NMSA 1978, Section 26-1-18, 16.19.8.13 NMAC, and 16.19.20.48 NMAC, all of which are public safety laws. FAC ¶¶361-363 [Doc. 1-1, Page 122 of 275].

Four causes of action are brought against each and every one of the Defendants, including the first cause of action for public nuisance. FAC ¶¶279-294, 354-405 [Doc. 1-1, Pages 100-106,

4

120-129 of 275]. Endo Defendants are unable to cite any authority requiring a governmental entity to break up a public nuisance suit into two different pieces, litigating abatement of **the same jointly caused nuisance** in two different cases before two different tribunals. Nonetheless, Endo Defendants removed this case on this remarkable theory, conceding that there is no complete diversity on the face of the City's Complaint, but arguing that it should be severed into two cases so as to create federal subject matter jurisdiction that does not exist in the first instance. *See, generally*, Notice of Removal [Doc. 1].

On December 17, less than one week after the wrongful removal, the City of Albuquerque moved to remand this case to State court on the grounds that the removal is substantively and procedurally defective. [Doc. 11]. The Notice of Removal admits that the purpose of the removal is to have this Court **not even consider** the lack of federal subject matter jurisdiction.[4] Consistently, a mere two days after the baseless removal, a Tag-Along notice was filed, initiating the process for an MDL transfer. *See* Exhibit 1 (Notice of Potential Tag-Along Actions). Once the Judicial Panel on Multidistrict Litigation issues a Conditional Transfer Order, the City of Albuquerque will file notice of its opposition pursuant to Rule of Procedure of the JPML 7.1(c), and move to vacate the transfer order pursuant to Rule of Procedure of the JPML 7.1(f). The next hearing before the Panel is January 30, 2020, but the City anticipates that the transfer will be set for hearing on March 26, 2020.[5] The basis for the instant motion is to request that this Honorable Court honor the limits of federal subject matter jurisdiction and remand this case on or before

---

[4] *See* Notice of Removal ¶4 [Doc. 1, Page 3 of 30] ("all remand questions should be resolved by the MDL court").
[5] https://www.jpml.uscourts.gov/hearing-information. If the City is wrong and the case is set for an earlier time, then the City reserves the right to amend this motion accordingly.

5

March 26, 2020. The proposed transferee Court, presiding over the *In re Nat'l Prescription Opiate Litigation* MDL, has issued a moratorium expressly forbidding Cities (but not States) from even filing a remand motion. *See* note 1 *infra*. Thus, if this Honorable Court does not rule on Albuquerque's remand motion prior to the Panel's decision to transfer the case to the federal MDL, then the City's state case—over which federal subject matter jurisdiction is obviously lacking—will be stayed for an indeterminate amount of time.

### III. ARGUMENT

If this case is transferred on March 26, 2020, before this Honorable Court rules on the obvious lack of federal subject matter jurisdiction, then the litigation will be indefinitely stalled, potentially for several years, because the proposed transferee Court will not allow the City to file a remand motion. Endo Defendants know this, and even confess their intent to have this Court simply ignore "all remand questions"[6] so the case can be transferred to the federal MDL court. The effect will be to grant the opioid Defendants an indeterminate stay of state court litigation over which there is no federal subject matter jurisdiction. This grave injustice violates two legal principles well-established in the jurisprudence: that federal subject matter jurisdiction must be established first in priority (*see* §III.A *infra*); and, that a stay cannot be granted without specific showings that have not been met here (*see* §III.B *infra*).

### A. Controlling Precedent Commands that Federal Subject Matter Jurisdiction Must Be Considered First in Priority.

"Without jurisdiction the court cannot proceed **at all in any cause**." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868))

---

[6] *See* Notice of Removal ¶4 [Doc. 1, Page 3 of 30].

(emphasis added). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id*. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . , which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994) (citations omitted). "Questions of jurisdiction, of course, **should be given priority**—since if there is no jurisdiction there is no authority to sit in judgment of anything else." *U.S. ex rel. Grynberg v. Praxair, Inc*., 389 F.3d 1038, 1048 (10th Cir. 2004) (citations omitted).

Defendants' expectation that this Court will abdicate its obligation to correct the lack of federal subject matter jurisdiction is irreconcilable with proclamations that the United States Supreme Court and Tenth Circuit have made on the paramount necessity of subject matter jurisdiction. "The Supreme Court has made it clear that a court's threshold determination of its jurisdiction is a prerequisite to *any* judicial action." *In re Lang*, 414 F.3d 1191, 1195 (10th Cir. 2005) (citing *Steel,* 523 U.S. at 94); *see also, e.g*., *Garling v. United States Envtl. Prot. Agency*, 849 F.3d 1289, 1293 (10th Cir. 2017) ("To reach the issue of timeliness . . . the district court needed to have had subject matter jurisdiction.") (citing *Steel*, 523 U.S. at 94). "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is '**inflexible and without exception**.'" *Steel Co*., 523 U.S. at 94–95 (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884); emphasis added). "[D]efects in subject-matter jurisdiction require correction[.]" *United States v. Cotton*, 535 U.S. 625, 630 (2002) (explaining subject matter jurisdiction can never be waived). This honorable Court has an obligation "to satisfy itself" that jurisdiction is proper. *See Steel*, 523 U.S. at 95

("Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.") (citation and quotation marks omitted). Thus, the Endo Defendants' demand that this Court ignore the lack of subject matter jurisdiction stands at odds with settled precedent.

### B. An Indeterminate Stay of Litigation Aimed at Ameliorating a Deadly Public Health Crisis Is Not Justified.

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). "The party seeking a stay generally faces a **difficult** burden." *Great Divide Wind Farm 2 LLC v. Aguilar, No*. CIV 19-0099 JB\CG, 2019 WL 6330207, at *11 (D.N.M. Nov. 26, 2019) (citing *Clinton*; further citation omitted; emphasis added). "[W]here a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). A litigant should be compelled to step aside only in "rare circumstances." *Landis*, 299 U.S. at 255. "The underlying principle clearly is that '[t]he right to proceed in court should not be denied except under the most extreme circumstances.'" *Commodity Futures Trading Comm'n*, 713 F.2d at 1484 (citation omitted).

If this case is transferred without a ruling on the lack of subject matter jurisdiction, then the harm to the City of Albuquerque is clear. Delay "increase[s] the danger of prejudice resulting from the loss of evidence." *Clinton,* 520 U.S. at 707–08. Here, the de facto stay has no set limitation, because the proposed transferee Court has imposed a moratorium without any end date. *See* note 1 *infra*. Moreover, the stay is inequitable to the City because it will impose unnecessary litigation expenses that the City has a right to avoid. *See, e.g., Meister v. Pub. Serv. Co. of New*

8

*Mexico*, No. CV 03-227 JB/RHS, 2003 WL 27384756, at *2 (D.N.M. Dec. 31, 2003) ("A stay of proceedings would be inequitable to PNM. The Defendant has an interest in proceeding expeditiously to the conclusion of this litigation and avoiding unnecessary litigation expenses.").

Federal courts have recognized the prejudice to governmental entities if their state court cases are stalled in a federal court lacking jurisdiction over the claims. After the State of New Mexico's opioid case was removed, defendants moved to stay pending an MDL transfer, and the State argued that "bouncing this case between federal courts lacking subject matter jurisdiction would result in needless delay and waste judicial resources." *New Mexico ex rel. Balderas v. Purdue Pharma L.P*., 323 F. Supp. 3d 1242, 1248 (D.N.M. 2018) (brackets and quotes omitted; citing State's response). The United States District Court for the District of New Mexico remanded the case and denied the stay motion as moot. *See id.*

More recently, the United States District Court for the Eastern District of Virginia rejected the opioid defendants' arguments that a stay would allegedly be brief and that there was no meaningful prejudice to the Plaintiff in that case, ruling that:

> The Court finds that a stay is not warranted. First, Mecklenburg County notes that, even if a stay is brief in this case, any decision on the motion to remand could take a significant amount of time, maybe even over a year. **This extensive delay is a significant prejudice to Mecklenburg County as it will not be able to effectively prosecute its case even though there is no federal jurisdiction**. Further, judicial efficiency will not be promoted because the case should proceed in state court as soon as possible since there is no basis for federal jurisdiction in this case. Thus, a stay is not warranted.

*Mecklenburg Cty., Virginia v. Purdue Pharma*, L.P., No. 3:19-CV-463, 2019 WL 3207795, at *7 (E.D. Va. July 16, 2019) (emphasis added). In another decision remanding a different opioid case, the court similarly explained that a stay of opioid litigation was unwarranted, because it could cause "extensive delay" and "significant prejudice to [the] County as it will not be able to

9

effectively prosecute its case even though there is no federal jurisdiction. Further, judicial efficiency will not be promoted." *Dinwiddie County*, 2019 WL 2518130, at *7.

Consistently, the United States District Court for the Middle District of Tennessee outlined the impropriety of indefinitely postponing a jurisdictional ruling in opioid litigation:

> [T]he risk of hardship resulting from a postponement of a jurisdictional determination is great. If transferred, this case will join a veritable sea of others in the MDL court. . . . **The prospect of indefinitely postponing a jurisdictional ruling is especially troubling**, given that this case involves Tennessee public officials, charged with representing the interests of the citizens of their respective judicial districts, seeking access to the state's courts to assert claims under the state's laws. . . . If . . . jurisdiction is lacking, . . . the case should be returned to the state courts as soon as reasonably practicable. Otherwise, the federal courts will not only waste the parties' time but impair the state's interest in the administration of justice.

*Dunaway v. Purdue Pharma L.P.*, 391 F. Supp. 3d 802, 808-09 (M.D. Tenn. 2019) (emphasis added).

In another opioid case, the District of South Carolina addressed Defendants' contention "that the Court should stay this action, including any decision regarding remand, pending a final decision from the JPML on transfer to the MDL." *Cty. of Anderson v. Rite Aid of S.C., Inc.*, No. 8:18-CV-1947-BHH, 2018 WL 8800188, at *2 (D.S.C. Aug. 20, 2018). There, "[t]he JPML ha[d] already issued a Conditional Transfer Order ("CTO") in this case, conditionally transferring this action to the MDL." *Id*. Crucial here, the court recognized that, "[t]he MDL Court has issued a moratorium on all substantive filings, including motions to remand, and has indicated that it is not going to rule on any pending motions to remand at the present time." *Id*. The South Carolina court found that allowing a transfer to the MDL court would not promote judicial economy, that a prompt ruling on jurisdiction would not prejudice the opioid defendants, and that "there is a real risk that prejudice would result to Plaintiff if a stay was granted, because Anderson County would be forced

10

to sit on the sidelines for an indeterminate period." *Id*. at *3. The Court therefore remanded the case to state court before it could be transferred by the MDL. *Id.*

The well-reasoned analysis of these United States District Courts applies with equal force to the City of Albuquerque. The City respectfully requests that this Honorable Court rule before this case is transferred.

## IV.     STATEMENT REGARDING ORAL ARGUMENT

Because the City of Albuquerque respectfully requests that this Court rule on this matter before a decision of the Judicial Panel of Multidistrict Litigation transferring this case to a court that will stay the City's case indefinitely, and because the removal notice is clearly baseless, the City does not request oral argument, but would be happy to appear if this Honorable Court chooses to set oral argument.

## V.     CONCLUSION

Plaintiff the City of Albuquerque respectfully requests that the Court GRANT this motion to expedite and accordingly grant Albuquerque's remand motion [Docket 11] on or before March 26, 2020.

Dated: December 19, 2019

/s/ Pia Salazar
Pia Salazar
pia@salazar-sullivanlaw.com
Patrick Sullivan
pat@salazar-sullivanlaw.com
**SALAZAR, SULLIVAN & JASIONOWSKI**
100 Gold Avenue SW, Suite 201
Albuquerque, New Mexico 87102
Tel. (505) 314-1414
Fax. (505) 31401419

    Matthew R. McCarley*
mccarley@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Tel. (214) 890-0711
Fax. (214) 890-0712

Matthew S. Daniel*
mcdaniel@lawyerworks.com
**FERRER POIROT & WANSBROUGH**
2603 Oak Lawn Ave. Ste. 300
Dallas, Texas 75219
Tel. (214) 521-4412
Fax (866) 513-0115

* indicates Pro Hac Vice to be submitted

**ATTORNEYS FOR THE PLAINTIFF
CITY OF ALBUQUERQUE**

## CERTIFICATE OF CONFERENCE

    Matthew McCarley conferred with counsel for the Endo Defendants on December 13, 2019. The Endo Defendants oppose the City's motion to expedite the motion to remand.

    /s/ Pia Salazar
    Pia Salazar

## CERTIFICATE OF SERVICE

    I hereby certify that on the 19th day of December, 2019, a true and correct copy of the foregoing document was electronically filed and served to all counsel of record.

    /s/ Pia Salazar
    Pia Salazar