# Exhibit 7

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF NEW MEXICO

 3    CITY OF ALBUQUERQUE,

 4                     Plaintiff,

 5        vs.              NO:  1:19-CIV-01168-JB/JHR

 6    TEVA PHARMACEUTICALS USA, INC., et al.,

 7                     Defendants.

 8

 9        Transcript of Motions Hearing before The

10    Honorable James O. Browning, United States District

11    Judge, Albuquerque, Bernalillo County, New Mexico,

12    commencing on January 24, 2020.

13    For the Plaintiff:  S. Ann Saucer
                          Pia D. Salazar
14                        Kinzer Jackson

15    For the Defendants Teva Pharmaceuticas USA, Inc. and
      Cephalon:          Eric M. Sommer (by phone)
16
      For the Defendants Johnson & Johnson, Janssen
17    Pharmaceuticals, Inc., and Ortho-McNeil-Janssen
      Pharmaceuticals, Inc.:
18                        Benjamin W. Allison
                          Sina Aria (by phone)
19
      For the Defendants Endo Health Solutions, Inc. and
20    Endo Pharmaceuticals, Inc.:
                          Eliseo Puig
21                        John B. Pound (by phone)

22    For the Defendant Cardinal Health, Inc.:
                          Abigail Yates (by phone)
23
      For the Defendant Mallinckrodt, LLC, Mallinckrodt
24    PLC, SPEGCX, LLC, and Mallinckrodt Brand
      Pharmaceuticals, Inc.:
25                        Meghan Dimond Stanford
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




DEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   For the Defendant McKesson Corporation:
                          Larry D. Maldegen (by phone)
 2
     For the Defendant AmerisourceBergen Drug Corporation:
 3                        Douglas A. Baker

 4   For the Defendant Walgreens Boots Alliance, Inc.:
                          Mark T. Baker
 5
     For the Defendant Wal-Mart Stores, Inc.:
 6                        Brandon Myers (by phone)

 7   For the Defendant CVS Health:
                          Sean Olivas
 8                        Michael Cardel (by phone)
                          Conor O'Croinin (by phone)
 9
     For the Defendant Gallegos:  Jesse D. Hale
10
     For the Defendants Sheth, Pacheco, Duchon, and
11   Woodruff:         Max A. Jones

12   For the Defendant LeBlanc:  Jessica Marshall

13
             Jennifer Bean, FAPR, RDR, CRR, RMR, CCR
14              Certified Realtime Reporter
                United States Court Reporter
15                    NM CCR #94
                  333 Lomas, Northwest
16            Albuquerque, New Mexico 87102

17

18

19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

3

```
 1              THE COURT:  All right.  Good afternoon,
 2    everyone.  I appreciate everybody making themselves
 3    available here on a Friday afternoon.  Court will
 4    call City of Albuquerque versus Teva Pharmaceuticals
 5    USA, Inc., et al., Civil Matter No. 19-CV-01168
 6    JB/JHR.
 7              If counsel will enter their appearances for
 8    the City.
 9              MS. SAUCER:  S. Ann Saucer for the City of
10    Albuquerque, Your Honor.
11              THE COURT:  All right.  Ms. Saucer, good
12    afternoon to you.
13              MS. SAUCER:  Good afternoon, Your Honor.
14              MS. SALAZAR:  Pia Salazar representing the
15    plaintiff, City of Albuquerque.
16              THE COURT:  Ms. Salazar, good afternoon to
17    you.
18              MS. JACKSON:  Kinzer Jackson representing
19    the City of Albuquerque, Your Honor.
20              THE COURT:  Ms. Jackson, good afternoon.
21              All right.  For the defendant -- if I have
22    this correct, Teva Pharmaceuticals and Cephalon,
23    Inc.?
24              MR. SOMMER:  Eric Sommer on the phone, Your
25    Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1             THE COURT:  Mr. Sommer, good afternoon to

 2   you.

 3             And then there is a whole group that I

 4   believe is Johnson & Johnson, Janssen

 5   Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc.,

 6   Ortho-McNeil, and then Janssen Pharmaceuticals, Inc.

 7   I think I repeated that.

 8             MR. ALLISON:  Good afternoon, Your Honor.

 9   Ben Allison.

10             THE COURT:  All right.  Mr. Allison, we can

11   find you a seat up here if you want to come on in.

12   Y'all can at least sit inside the well, if you want

13   to.  Don't want to do that?  Sometimes I wanted to

14   sit as far away from the judge as I could, too.

15             All right.  And then for Endo Health

16   Solutions and Endo Pharmaceuticals, Inc.

17             MR. POUND:  John Pound, Your Honor, on the

18   phone.

19             THE COURT:  Let me start with the counsel

20   that are in the courtroom.  All right?

21             MR. PUIG:  Eliseo Puig, Your Honor, for

22   Endo.

23             THE COURT:  And what is your name?

24             MR. PUIG:  Eliseo is my first name

25   E-L-I-S-E-O.  My last name is Puig, P-U-I-G.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  Mr. Puig, good afternoon to

 2  you.

 3                Mr. Pound, are you on the phone?

 4                MR. POUND:  I am.

 5                THE COURT:  Good afternoon to you,

 6  Mr. Pound.

 7                Cardinal Health?

 8                MS. YATES:  On the phone, Your Honor,

 9  Abigail Yates.

10                THE COURT:  All right, Ms. Yates.  Good

11  afternoon to you.

12                MS. YATES:  Good afternoon.

13                THE COURT:  And for SPEGCX, LLC,

14  Mallinckrodt Brand Pharmaceuticals, and Mallinckrodt,

15  LLC?

16                MS. STANFORD:  Meghan Stanford, Your Honor.

17                THE COURT:  All right, Ms. Stanford.  Do

18  you represent anybody else.  Is it that three?

19                MS. STANFORD:  It's the Mallinckrodt, LLC,

20  SPEGCX --

21                MR. ARIA:  Your Honor, I did not have a

22  chance to speak earlier.  My name is Sina Aria,

23  counsel for Johnson & Johnson and Janssen

24  Pharmaceuticals.  Apologies for that.

25                THE COURT:  Say your name again?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                MR. ARIA:  Sina, S-I-N-A.  Aria, A-R-I-A.

 2                THE COURT:  All right.

 3                All right.  Ms. Stanford, do you represent

 4      any individuals, or are you just the corporations?

 5                MS. STANFORD:  Yes, Your Honor.

 6                THE COURT:  McKesson Corporation?

 7                MR. MALDEGEN:  Your Honor, Larry Maldegen

 8      on behalf of McKesson.

 9                THE COURT:  All right.  Mr. Maldegen, good

10      afternoon to you.

11                AmerisourceBergen Drug Corporation?

12                MR. DOUG BAKER:  Doug Baker for

13      AmerisourceBergen, Your Honor.

14                THE COURT:  Mr. Baker, good afternoon to

15      you.

16                For Walgreens Boots Alliance, Inc?

17                MR. MARK BAKER:  Mark Baker, Your Honor.

18                THE COURT:  Mr. Baker, good afternoon to

19      you.

20                For the Wal-Mart Stores?

21                MR. MYERS:  Good afternoon, Your Honor.

22      This is Brandon Myers on behalf of Wal-Mart.

23                THE COURT:  All right, Mr. Myers.  Good

24      afternoon to you.

25                For CVS Health?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. OLIVAS:  Sean Olivas, Your Honor.

2          MR. CARDEL:  Good afternoon, Your Honor.

3    Michael Cardel on behalf of CVS on the phone.

4          THE COURT:  Mr. Cardel, good afternoon.

5          MR. O'CROININ:  Conor O'Croinin as well,

6    Your Honor.

7          THE COURT:  Who?

8          MR. O'CROININ:  Conor O'Croinin.

9          THE COURT:  And then I think we're getting

10   into individuals now.  For Michael L. Gallegos?

11         MR. HALE:  Jesse Hale, Your Honor.

12         THE COURT:  All right, Mr. Hale.  Good

13   afternoon to you.

14         And then for Bitu Sheth, P.A., Peter

15   Pacheco, Rebecca Duchon, P.A., and Marchell Woodruff,

16   P.A.?  I think those are four.

17         MR. JONES:  Good afternoon, Your Honor.  My

18   name is Max Jones.

19         THE COURT:  Mr. Jones, good afternoon to

20   you.

21         And then Laura LeBlanc.

22         Jessica Marshall on behalf of Laura

23   LeBlanc.

24         THE COURT:  Ms. Marshall, good afternoon to

25   you.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8

1              Anybody else that needs to enter an

2    appearance?  I think we've got some John Does.

3    Anybody else?

4              All right.  Well, I pretty much got plowed

5    through all this stuff.  There might be an exhibit or

6    two that I didn't get to.  I think we can argue these

7    all together.  I'll certainly listen to what anybody

8    wants to say.

9              When I was taking political science at Yale

10   40-plus years ago, I found out that doing nothing is

11   an option, and I really think this is probably what

12   ought to be done here.  I don't think I ought to be

13   staying the case if I don't have jurisdiction.  I

14   have some questions about whether I have jurisdiction

15   over this case.  But I think that the MDL panel is

16   going to do something with this case, and I don't

17   think I probably should be interfering with that.  I

18   am handling an MDL for the Nation right now, and

19   you've got to be careful about interfering with

20   another judge that's handling these.  These are

21   complex cases and I go to the schools and conferences

22   for the people handling these MDLs.  I think in the

23   past I have probably granted or at least

24   considered -- I can't remember what I did, but I

25   think I had an MDL and nobody raised concerns about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   me dealing with a motion to remand.  I don't know if

2   that was because it was before the MDL got cranked up

3   and they were doing conditional transfers or actual

4   transfers.

5           But it seems in this posture, you know --

6   you can correct me if I'm wrong -- this thing is

7   likely to get transferred in fairly short order.  It

8   doesn't seem to me I ought to be interfering with the

9   judge that's trying to do that.  It seems to me that

10  if I did, I'd be putting my thumbs on the scale, and

11  I'm not sure that I really ought to be doing that.  I

12  might not be handling the MDL just as the judge in

13  Ohio would handle it.  But nonetheless, that's whom

14  the transfer committee has asked to handle it, and

15  he's doing it this way.  And I think eventually the

16  motions to remand will have to be ruled on.

17          They do come back here.  I just got one

18  products liability case from an MDL.  I got it last

19  week or the week before and it's now on a trial

20  setting.  So they do come back, and he may decide to

21  handle some of these motions to remand a different

22  way.

23          But it seems to me in the current posture

24  it probably should just be -- we shouldn't do

25  anything right now.  I wanted to give the City an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  opportunity to speak, since they had requested

2  expedited review, and I have read everything.  But I

3  still am of the conclusion that probably the best

4  thing to do is do nothing here.  I agree with the

5  City that it wouldn't be appropriate for me to start

6  staying or entering orders if I don't have

7  jurisdiction.  But I think the MDL panel will take

8  care of that, and I don't have to do anything but

9  transfer it.  I think they will take care of the

10  transfer.

11          So I'm inclined just to do nothing for a

12  while.  We can put a time limit on it and if the

13  transfer panel doesn't move it out quickly, then we

14  can come back to the motion to remand.  But I'm

15  inclined just to not do anything at the present time.

16          But Ms. Saucer, are you going to take the

17  lead here?

18          MS. SAUCER:  Yes, Your Honor, thank you.

19          THE COURT:  Ms. Saucer, if you wish to

20  speak in support of your motion to remand, and if you

21  want to go ahead and address the other motions, you

22  can.  Otherwise, we'll take them one at a time.

23          MS. SAUCER:  I would like to start where

24  Your Honor left off and respectfully request that

25  Your Honor do take action and rule on the lack of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    federal subject matter jurisdiction before the JPML

2    panel.  The JPML panel is set to hear, I believe it

3    is, March 26.  And we are in agreement, the parties

4    in this case, that once they do hear this case, they

5    will transfer it to the Northern District of Ohio

6    where the MDL is pending.

7            The City of Albuquerque thanks Your Honor

8    for the opportunity to speak to this hearing.

9            THE COURT:  But by doing that, am I not

10   sort of taking sides?  I'm sort of saying that I

11   favor the plaintiffs and the plaintiffs' bar in this

12   opioid litigation and want to try to kick it back to

13   state court?  I mean, isn't that sort of putting my

14   thumbs on the scale and signaling that I don't like

15   the pharmaceutical companies, I prefer the

16   plaintiffs' bar, and I'm going to help them out by

17   preempting the MDL?

18           MS. SAUCER:  Respectfully, Your Honor, I

19   disagree.  In fact, as a member of the plaintiffs'

20   bar, if you would write a remand motion that goes out

21   of your way to insult us, I would be perfectly happy

22   to accept that.

23           This issue here is federal subject matter

24   jurisdiction and what the United States Supreme Court

25   has said on the subject.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  But if I don't do anything, I
 2   don't violate that rule.  If I just sit here, it's
 3   going to take care of itself.  So it's not that I'm
 4   violating any rule of determining jurisdiction; I'm
 5   just kind of putting this one back on the back
 6   burner, and there's a lot of stuff ahead of it
 7   anyway.
 8              MS. SAUCER:  Respectfully, Your Honor,
 9   there are a growing number of United States district
10   courts --
11              THE COURT:  But I read those opinions and
12   there seems to be a tone to them.  I mean, it seems
13   like, you know, I guess I just -- respectfully, you
14   know, it just seems a little bit of anger at the
15   pharmaceutical companies.  And I guess, you know, it
16   just seems to me that everybody gets a fair shake in
17   federal court, work hard to do that, and it just
18   seemed to me those opinions seemed to have a tone to
19   them.
20              MS. SAUCER:  Your Honor is free to write an
21   opinion with a completely different tone and insult
22   all of those judges and me personally.  The issue
23   here really is the limits of federal subject matter
24   jurisdiction.  And those limits don't have to do with
25   whether you're a plaintiff or a defendant or a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    pharmaceutical company or the City of Albuquerque.

2         If I may start in a somewhat different

3    location.  One thing that I did not have the

4    opportunity to respond to yet is the reply brief that

5    was filed this week by the defendant in support of

6    their motion to stay.  And one of the things that is

7    said in that refly brief is that the City of

8    Albuquerque has ignored these three cases which, up

9    until right now, is true.  I did ignore them, there

10   wasn't any citation to a decision provided, there was

11   just a name of three cases and some numbers and there

12   was no exhibit attached.

13        Those three cases are the County of Mora,

14   the County of Rio Arriba, and the County of

15   Roosevelt.  And the defendant has particularly taken

16   issue with the fact that the City of Albuquerque has

17   not responded.

18        I'd like to respond now, if I may.  In one

19   of those three cases, the County of Rio Arriba, the

20   reason why the district court judge did not grant the

21   motion to remand is because there was none filed.  I

22   actually happen to have the docket sheet for that

23   case, if the Court would like it.

24        THE COURT:  Who is the judge on that?

25        MS. SAUCER:  So the judge on the Rio Arriba



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

14

 1   case:  Assigned to Magistrate Judge Jerry H. Ritter,

 2   referred to Magistrate Judge Karen B. Molzen.  And

 3   there was no remand motion decided or granted because

 4   the plaintiffs were happy, apparently, to be in the

 5   federal MDL Court.  Your Honor --

 6          THE COURT:  It seems to me that probably

 7   the more persuasive case would be -- I think it's

 8   Judge Herrera that has -- with the state case did go

 9   ahead and grant the motion to remand, and I guess my

10   question on that is again probably what your docket

11   sheets are saying.  At the time that she granted

12   that, where was the MDL procedure?  Had there been a

13   conditional transfer order at that point?

14          MS. SAUCER:  The argument was made in that

15   case --

16          THE COURT:  That it was coming; right?

17          MS. SAUCER:  Well, actually --

18          THE COURT:  There wasn't any MDL action at

19   the time that she made her motion to remand, was

20   there?  Or her opinion remanding?

21          MS. SAUCER:  I don't know that that is

22   correct, Your Honor.  It may have been that there --

23          THE COURT:  I could be wrong on it.

24          MS. SAUCER:  Well, because in the course of

25   the opinion, and we quote the language, the Court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    references the argument by Attorney General Hector

2    Balderas in which he specifically says there is no

3    point to bouncing cases between two federal courts

4    that lack subject matter jurisdiction over the

5    claims.

6          THE COURT:  I saw that, but I didn't think

7    at the time -- and you know, I didn't go back -- and

8    I should have -- and look at my own work in the past.

9    But I think I had a situation just like Judge

10   Herrera, where everybody was talking that there might

11   be an MDL, but there wasn't an MDL yet.

12         MS. SAUCER:  Yes, Your Honor did.

13         THE COURT:  That's the difference, I think,

14   between where Judge Herrera was when she granted her

15   motion to remand and where I am.  And I think I've

16   been where she has been before, and you know, you've

17   got to do your work, you have a motion to remand,

18   people are talking about an MDL, but it's not there

19   yet.  It seems to me that's a different situation, if

20   I'm understanding where she was on the opinion and

21   where I was in the past.

22         MS. SAUCER:  I believe that I have it at my

23   desk, and if I have a rebuttal, I will look at it.

24   But --

25         THE COURT:  I'll give you rebuttal.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




Bean & Associates, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    don't kick anybody out.

2              MS. SAUCER:  No, I believe that it was

3    either -- here it is conceded by both parties,

4    everyone agrees that once the JPML panel reaches this

5    case, which I believe they will on March 26, that

6    they will -- there is already a CTO and they will

7    transfer it, and that was conceded by Judge Herrera.

8    Your Honor, I have some materials about the coming --

9              THE COURT:  You could be right.  I just

10   didn't know if hers was as advanced as where our case

11   is, the City of Albuquerque case is.  Do you think it

12   was?

13             MS. SAUCER:  I do, in all material

14   respects.  And I guess that's because the CTOs are

15   granted pretty early in the case.

16             And if I may talk about the County of Mora,

17   because Your Honor is correct.  You just said at the

18   time of the County of Mora case, the motion was on

19   file to create the JPML and it had not been granted

20   yet.  And the County of Mora is one of the three

21   decisions that the City has not responded to yet that

22   I would like to take the opportunity to respond to

23   now.  There is more than one thing that distinguishes

24   that case, not just the fact that there had been no

25   decision yet to create a panel.  It was in 2017.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    There had been no decision yet to create the MDL, and

 2    there certainly was no known -- if it were to be

 3    created, where it would go, where the case would go.

 4            One of the things about the case, though,

 5    is that a suggestion of bankruptcy was filed in that

 6    case on behalf of a defendant who is not here.  Here

 7    Purdue filed for bankruptcy, but the City of

 8    Albuquerque got them out of the case in state court

 9    before that became any type of jurisdictional issue.

10            The docket sheet in the County of Mora case

11    which was before Your Honor says in the right-hand

12    corner, "Bank stay, closed."  So there was a

13    bankruptcy issue, and a suggestion of bankruptcy that

14    is not before the Court today.

15            Moreover, and I think this is more to Your

16    Honor's overarching concern, which is, you know, in

17    the past these cases were transferred, all of these

18    cases were transferred; why don't I just transfer --

19    I mean, why don't I just sit here and let it be

20    transferred?  Nothing forces me to take action.

21            The reason why the City of Albuquerque asks

22    that Your Honor respectfully change your mind on

23    this, it actually goes back to the County of Mora

24    case.  In the County of Mora case, I have the briefs

25    filed by the defendants.  And what they said to the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

18

```
1    Court over and over again is:  Don't do anything

2    because this stay is going to be brief.  Brief,

3    brief, brief, brief.  May I approach the bench?

4    Would the Court like to see?

5              THE COURT:  You may.  I mean, I think what

6    they're saying -- you know, they can speak for

7    themselves -- I think they're saying it's going to be

8    brief in this case, that it's not going to be

9    necessarily brief in the MDL.  I agree with you, once

10   it goes to the MDL -- I can't remember the docket

11   number I have on my MDL, but it's getting on up

12   there, you know, and I know that it will be delayed.

13   I would assume that the Ohio judge is probably going

14   to come up with some procedure on these remands,

15   don't you?

16             MS. SAUCER:  Not anytime soon, Your Honor.

17   Absolutely not.

18             One of the things that -- so County of Mora

19   was allegedly briefed in 2017, and here we are in

20   2020.  And one of the things that has happened in

21   other cases where the Court sided with the defendants

22   is, the plaintiffs failed to file the orders from

23   that MDL, the proposed transferring court.  Here we

24   filed those orders.  One of them is a flat-out

25   moratorium on remand motions.  The other one is CMO
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

19

1    number 1, which flatly says that you're not allowed

2    to file anything.  It makes a carve-out -- and this

3    is an important point -- for states.  One of the

4    things the defendants have said is, "Oh, look, here

5    we have three decisions where the MDL court has ruled

6    on federal subject matter jurisdiction," but that

7    does not apply to a county or a city.

8            THE COURT:  Well, the bottom line on

9    this -- correct me if I'm wrong -- it's got my

10   initials on it, so I have a vague memory of this

11   case.  It's like you said; there wasn't a motion to

12   remand in this case; right?

13           MS. SAUCER:  Oh, no, I'm sorry, there was

14   in that one.  There wasn't in the Rio Arriba, Your

15   Honor.  In that one, there was a motion to remand,

16   although it was another plaintiff's firm and they

17   didn't do a particularly good job.  In fact, one of

18   the potshots taken by the defendants there is at one

19   point in the briefing they used the wrong client's

20   name.

21           THE COURT:  But this one got transferred?

22           MS. SAUCER:  It got transferred and it's

23   been sitting there since 2017, and now we're in the

24   year 2020.

25           THE COURT:  What happened to the motion to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    remand in this case?

 2              MS. SAUCER:  Nothing.  Nothing.

 3              THE COURT:  Well, I know.  But what

 4    happened in my court?

 5              MS. SAUCER:  It got transferred without it

 6    being ruled on, is my understanding.  But I'm not

 7    sure if that's because --

 8              THE COURT:  I think it was with me a

 9    nanosecond.  I remember this thing coming in and I

10    was kind of excited about it.  Then it's gone.

11              MS. SAUCER:  But it looks to me like the

12    suggestion of bankruptcy had something to do with

13    that.

14              THE COURT:  Could have been.  I don't

15    remember that.  It seemed like they might have

16    cleared that out like you did, but I don't remember.

17    I don't remember.  It wasn't with me long, I remember

18    that.

19              MS. SAUCER:  If I may speak to Your Honor's

20    comment a moment ago that, well, they said the stay

21    would be brief, but they weren't talking about

22    overall; they were talking about just in this Court.

23              THE COURT:  Well, it's going to be brief

24    here.

25              MS. SAUCER:  Yes, that's right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          THE COURT:  It's not going to be brief in

 2    the MDL.  We can all agree with that; right?

 3          MS. SAUCER:  That's true.  But this is a

 4    very relevant point according to Newman-Green.

 5          So getting to the remand motion and the

 6    first argument made, which is basically:  We admit

 7    we've only removed on diversity.  We admit that on

 8    the face of this, there is no complete diversity of

 9    citizenship, which has been a requirement since the

10    Supreme Court opinion in, what, Strawbridge versus

11    Curtis.  There's one plaintiff which is deemed to be

12    a citizen of New Mexico for the purposes of

13    diversity, and there are seven New Mexico defendants

14    in two defense categories, not just from prescribers,

15    but also a pharmacist.  So two categories of seven.

16    So complete diversity is destroyed seven times over.

17    They're seven times wrong on their complete diversity

18    argument.  But they say, "Oh, it's okay," because

19    even though there is no complete diversity in the

20    face of this, when we filed a notice of removal, Your

21    Honor can retroactively -- or some other federal

22    judge can cure that by severing it after the fact.

23    So when we removed it, it didn't exist; but if you

24    fix it for us, and then pretend that that fix existed

25    when we removed it, then we removed it properly.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

22

1           This has been rejected across the country,
2    and here's why.  The excuse for this is the
3    Newman-Green decision decided by the United States
4    Supreme Court.  And the courts that have looked at
5    that have noticed the Supreme Court in that case --
6    the case was before the Seventh Circuit; I think it
7    was Judge Easterbrook -- said, "Hey, wait.  There's
8    no federal subject matter jurisdiction."
9           And the plaintiff said, "Oh, no.  Well,
10   we'll dismiss whoever we need to dismiss," because as
11   a plaintiff, you can't get a judgment from a court
12   that doesn't have any federal subject matter
13   jurisdiction.  That's worthless.  So the plaintiff
14   said, "Please, Judge Easterbrook, let us dismiss this
15   so that we fix the jurisdictional defect that you've
16   noticed for the first time on appeal.  And the
17   Supreme Court said you could do it."  But the Supreme
18   Court said this can only be done sparingly and the
19   Court has to look at whether a party will be
20   prejudiced.
21           And so this is why it's relevant that if
22   this case is shipped off to a federal court in Ohio,
23   the City of Albuquerque will be prejudiced.  The
24   Supreme Court said the Court has to look at whether a
25   party will be prejudiced.  That's what the Supreme

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

23

1    Court said was a requirement for this retroactive

2    time travel -- you know -- trick; that it's wrong

3    when we did it, but, hey, Judge, you can make it good

4    now.

5           And the defendants have no -- looking at

6    their remand briefing, they have no real response to

7    that, Your Honor.  Their response to the fact that

8    the United States Supreme Court in Newman-Green said

9    this trick only -- they didn't call it a trick.

10   Sorry, I'm paraphrasing.  But it only works if the

11   Court has ascertained that no one is prejudiced.  And

12   the Tenth Circuit has the same reading in the Tenth

13   Circuit case we've cited for Your Honor as well.  The

14   only response the defendants have is to cite these

15   three cases:  The Sullivan, the Cook-Bates case, and

16   another case -- is it Mayfield?

17          Here's the thing.  If Your Honor looks at

18   everything that's cited in the defendants' remand

19   brief, all of it is a completely inapposite body of

20   case law.  The three cases they cite, the Sullivan

21   case, the Cook case, the third case -- I think it's

22   Mayfield -- those cases are completely different.

23   They're about plaintiffs trying to link in the same

24   case their complaint about a thing with their

25   complaint about an action.  They're plaintiffs -- and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

24

1    actually plaintiffs usually can do this, but anyway,

2    a couple cases they can't, including the ones the

3    defendants have marshaled here, where the plaintiffs

4    have filed a products liability case and they're

5    complaining about the thing, and they marry it with a

6    case against the doctors.  And a couple courts have

7    said, "No, that's different."

8          That is the only response that the

9    defendants have.  All of their cases on pages 6 to 10

10   of their remand briefing fall into that category

11   where they're talking about Rule 19 and joinder,

12   they're talking about cases where the plaintiffs were

13   marrying together in one litigation a complaint about

14   the thing with a complaint about the action.

15         That's completely different here.  Here we

16   have a situation where there is one public nuisance,

17   and the City of Albuquerque -- as have municipal

18   governments all over the country, unable to deal with

19   this deadly -- the worst man-made medical catastrophe

20   in our times, where people are dying -- the City of

21   Albuquerque is one of many municipal governments from

22   coast to coast that have said, "It's our duty, our

23   responsibility, to protect the health, safety, and

24   welfare of the citizens in the city, and we don't

25   have the resources to do it.  And this is a play.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   And we are going to use the common law action of

2   abatement, abatement of a public nuisance," which

3   looking at cases in which municipal governments have

4   sued, public nuisance is a standard, it's a very

5   frequently recognized role of local governments where

6   the community is suffering, to come and abate the

7   public nuisance.

8           And the defendants -- where I'm going with

9   this is that none of these defendants, with the

10  exception of two cases out of West Virginia that have

11  since been repudiated with a "but see" cite, with the

12  exception of that, they cannot cite a single decision

13  in which a government entity sued to abate a public

14  nuisance in an opioid case or even any other case,

15  and the Court said, "You can't try your case in one

16  jurisdiction.  You have one public nuisance and

17  you've got to break it up and you've got to file one

18  case in federal court and one case in state court."

19          And what are the defendants going to do?

20  They are going to blame the empty chair, and that's

21  the prejudice.  That's the prejudice.  And the hook

22  for this, the excuse for this, for allowing federal

23  subject matter jurisdiction and diversity grounds on

24  the face of this seven times over, there is no

25  subject matter jurisdiction.  The excuse is:  Sever

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

26

1    it and pretend that the removal was proper at the

2    time.  And again, Newman-Green is the excuse; that

3    requires no prejudice.

4           Here, of course, the City is going to be

5    prejudiced by the delay, but it's also going to be

6    prejudiced if it's forced to try one public nuisance,

7    one harm.  I mean, there is one damage model for

8    this, but they've got to try the case in two

9    jurisdictions.  So it can't be consolidated for any

10   purpose.  So they're in federal --

11          THE COURT:  Well, if it's going to be

12   tried, it's going to be tried by me; right?

13          MS. SAUCER:  Part of it.  I mean, if they

14   have their way, though --

15          THE COURT:  I mean, the pretrial

16   proceedings will by done in Ohio, but I'm going to be

17   the one that's going to try the case, if it's going

18   to be tried.

19          MS. SAUCER:  But under their theory,

20   though, the Court can't do it because they removed as

21   the case is filed.  What the Court has to do is let

22   seven of these defendants go.  One of them is in the

23   category of the pharmacy defendants, and then

24   everybody who is in the category of the prescribers.

25          THE COURT:  Well, we'll see.  We'll see

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    what they do in Ohio.  They may surprise you.  They

2    may say these cases that have defendants like you've

3    joined in this case, federal court doesn't have

4    jurisdiction over them, and that will knock out a

5    whole bunch of transferred cases.

6            MS. SAUCER:  Your Honor, the federal court

7    in Ohio won't rule.  The federal court in Ohio will

8    not even allow us to make this --

9            THE COURT:  Well, right now, he's trying to

10   get a handle on a rather large number of cases.  But

11   he'll get around to it.

12           MS. SAUCER:  Your Honor, it is true, there

13   is a large number of cases, and the scope of that --

14   the scope of that MDL has grown in terms of

15   categories of defendants.

16           THE COURT:  You're helping it to grow;

17   right?

18           MS. SAUCER:  Well, plaintiffs' lawyers who

19   want to avoid the prejudice that's going to happen at

20   trial if the defendants are allowed to point to an

21   empty chair and blame -- I mean, I'm familiar with --

22           THE COURT:  When I go to these conferences,

23   it's usually the defendants that are complaining

24   about MDLs.  They think that the MDLs are favoring

25   the plaintiffs' bar.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

28

 1          MS. SAUCER:  Your Honor, thank you.  Write

 2     that remand decision.  Say, "I don't like the

 3     plaintiffs' bar, the defendants don't like MDLs.  I'm

 4     remanding the City of Albuquerque's case."

 5          THE COURT:  I don't dislike plaintiffs'

 6     bars.

 7          MS. SAUCER:  Well, okay, I'm so sorry.  I

 8     didn't mean to say that.  I was just trying to be

 9     funny, and so frequently I fail.  I'm sorry.

10          What I meant to say was, earlier the Court

11     expressed a concern that every single -- and I just

12     want to say this again.  Every single court that has

13     ruled on this has ruled in our favor with the

14     exception of these outlier West Virginia cases that

15     hinged on West Virginia law and now have been "but

16     see" cited.

17          THE COURT:  You can tell me if I'm wrong.

18     It would seem to me that most judges are doing what

19     I'm doing, probably sitting on their hands and

20     letting the MDL process -- and you've got a handful

21     of judges that you persuaded to get in there and do a

22     remand back to state court before the MDL can do

23     anything.  So yes, you have some cases, but the

24     overwhelming number of cases are being transferred.

25          MS. SAUCER:  Your Honor, we have a trend.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   And -- okay, so let me --

2          THE COURT:  You've got a handful of judges,

3   is the way I'd describe it.  You've got some judges

4   who are wanting to be active in sending some of these

5   cases back to state court.  But the overwhelming

6   number of cases are moving.  They're moving to the

7   MDL.

8          MS. SAUCER:  Your Honor, can I break that

9   down?  Because I think --

10          THE COURT:  Hundreds.  You've got 12

11  decisions scattered across some judges that are doing

12  remands.  But you literally have got hundreds of

13  these cases moving to the MDL.

14          MS. SAUCER:  In many of those cases, in 33

15  percent of the cases that the defendants have chosen

16  to talk about here, there was no motion to remand

17  even filed.  So to look at a list, that really

18  doesn't answer the question, because the question is:

19  Where a plaintiff has said to the Court there is no

20  federal subject matter jurisdiction, and where the

21  plaintiff has proven, as we have here, that the

22  federal MDL court will not even allow us to say to

23  this Court there is no federal subject matter

24  jurisdiction, and where we're trying to abate a

25  public nuisance that is deadly where the scourge of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   opoid abuse and death is something that the City of

2   Albuquerque needs resources and is trying to abate

3   this public nuisance and avail itself of the state

4   court system, which Albuquerque is allowed to do, and

5   this trick of removing these cases without any basis

6   so that they can be stuck in a court that won't even

7   allow us to say to the Court there is no federal

8   subject matter jurisdiction -- that is prejudicial.

9           And the growing -- but to break down the

10  cases, yes, there are thousands of cases in the MDL.

11  Many of these plaintiffs want to be there.  I mean,

12  many of them, they file them, they have reasons for

13  filing them in the district court where the plaintiff

14  is.  Some of them have to do with they're familiar

15  with those state laws and there is an issue for an

16  MDL, which law.  And so where you file your case --

17  and so many of these plaintiffs decide to file it and

18  let it be transferred, and they never file a remand

19  motion.  And then you just have the effect of time.

20          Then you have the courts that -- so some

21  of -- they stay decisions they cite.  And again, they

22  have nothing in their favor other than these

23  idiosyncratic two West Virginia cases that have since

24  been repudiated by their own "but see" cite.  Other

25  than that, they have no judge that's looked at this,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    no one, and said that if you are a public

2    governmental entity and you are suing to abate the

3    scourge of opoid abuse and addiction in your

4    community, that you have to do that in two different

5    jurisdictions in two different cases:  In state court

6    against the in-state defendants and in federal courts

7    against the federal defendants so that in these

8    different trials in these different cases, they can

9    point the finger at one another.

10            They have no decision on the merits.  They

11    have this argument of, look, all these cases ended up

12    in the MDL.  The thing is, though, that as time has

13    gone on, the courts that have looked at this have

14    said it's wrong.  This is a public health and safety

15    issue by a local governmental entity.

16            THE COURT:  That's what makes me

17    uncomfortable about saying it's wrong.  I mean, that

18    seems to me to be taking sides.  When you read those

19    opinions, it just makes me a little uncomfortable

20    saying it's wrong.  I mean, it seems to me that it's

21    not yet time to say that.

22            MS. SAUCER:  Okay.  Then do not say that.

23    How about:  The United States Supreme Court in the

24    Syngenta opinion and in other opinions, a long list

25    of Supreme Court opinions, has said that subject

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    matter jurisdiction is -- it's the first primary

2    issue.  Because without federal subject matter

3    jurisdiction, a Court cannot act at all.  And to

4    respect -- to be, in fact -- one could argue in

5    addition to the fact that defendants complain about

6    MDLs and don't like them, one could argue that it's

7    the conservative thing to do to respect the limits of

8    federal subject matter jurisdiction as those limits

9    have been repeatedly promulgated and stated and

10   explained by the United States Supreme Court.

11           So Your Honor, just don't write a decision

12   that likes plaintiffs or that says that anybody is

13   wrong.  It can be the Supreme Court has said federal

14   subject matter jurisdiction is the primary issue,

15   because without it, federal courts cannot act.  And

16   then say there are seven New Mexico defendants and

17   one New Mexico plaintiff.  Removal statutes are

18   strictly construed.  The defendants have the burden.

19   Again, that's all controlling law, all the

20   controlling standards say that.  Every Court that's

21   looked at this, except for these two outliers that

22   have since been distinguished even in West Virginia,

23   has said that this theory of federal subject matter

24   jurisdiction is wrong, that their theory, their

25   subject matter jurisdiction arguments are clearly

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

33

 1   wrong.  They're clearly wrong because a plaintiff is

 2   allowed to and, in fact, should sue all the culpable

 3   defendants in one case so they cannot point the

 4   finger at the empty chair.

 5          Here again, all the Courts that have looked

 6   at this have said this, that we have a scourge of

 7   these dangerously addictive drugs and there was a

 8   closed system that's set up, and the closed system

 9   failed.  And there are four different categories of

10   defendants:  The manufacturers, the wholesale

11   distributors, the pharmacies, and the prescribers.

12   And here we have New Mexico defendants destroying

13   complete diversity in two of those categories.  We

14   have a pharmacist, Michael Gallegos, and then we have

15   six New Mexico -- heavy New Mexico opioid

16   prescribers.  And every court that has looked at this

17   has agreed, yes, you can sue all of the defendants in

18   the supply chain.  It's the same public nuisance that

19   you're trying to abate.  We don't break up nuisance

20   abatement cases and have one in federal court against

21   one group and one in state court against another

22   group.  Which is -- again, that is their theory that

23   they admit there's no complete diversity.  They admit

24   there's no complete diversity seven times over, but

25   they say, "Well, break up the case," so the City of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

34

1    Albuquerque is in state court against these seven

2    defendants and they're going to blame the others that

3    are in federal court.  Meanwhile, in federal court,

4    they'll blame all the others that are in state court.

5           And no court that has looked at this has

6    said that that theory of federal subject matter

7    jurisdiction has any validity.  And literally nothing

8    that the defendants have cited is comparable.  If

9    Your Honor looks at their cases in their remand

10   motion, they're all of these cases.

11          Can we talk about the Temple case?  That's

12   a case from the United States Supreme Court.  It was

13   decided in the year 1990.  Can we talk about that

14   case?  That case is cited by the defendants for the

15   proposition that, well, under Rule 19, joint

16   tortfeasors are not indispensable.  What happened in

17   that case, it was a case about a bone screw plate

18   screwed into someone's spine.  Bad idea.  Never do

19   that.  Didn't end well.

20          The plaintiff sues the manufacturer of the

21   plate and the screw.  The defendant says, "You can't

22   sue me because you haven't added the doctor who put

23   it in and the hospital where you got it."  They

24   didn't third-party them; they just said, "The case is

25   defective."

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          The Fifth Circuit agreed, so the case was

2     dismissed because there was only one manufacturer

3     defendant in it.  And the U.S. Supreme Court said,

4     No, you can't dismiss a case because of that."

5     That's their case.  That's what they're relying on,

6     the United States Supreme Court saying it's not

7     grounds for dismissal that these other defendants

8     aren't there where the defendant didn't rouse himself

9     to third-party them anyway.  That's the Temple case.

10          That has nothing to do with this.  It has

11     nothing to do with a public entity trying to abate

12     the same public nuisance in one courtroom in one

13     jurisdiction to prevent the defendants from pointing

14     the finger of blame against those that are not before

15     the Court.

16          We're not asking that Your Honor take

17     sides.  We're not.  We're pointing to the law.  We're

18     pointing to what the Supreme Court has said.  We're

19     pointing to the standard that removal statutes are

20     strictly construed.  And not to act is an action,

21     because not to act means that the City of Albuquerque

22     will be sitting there for years and years in the

23     future without the ability to be before a court with

24     jurisdiction over their claims to seek relief to

25     abate this crisis.  To not act will doom the City for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

36

```
 1   years without any ability to even make their
 2   arguments in a court that has subject matter
 3   jurisdiction over the claims.  Inaction is a
 4   decision, respectfully, Your Honor.
 5            THE COURT:  All right.  Anything else you
 6   want to say on your motion to remand?
 7            MS. SAUCER:  No, Your Honor.
 8            THE COURT:  All right.  Thank you,
 9   Ms. Saucer.
10            All right.  Let me make -- is it Mr. Puig?
11            MR. PUIG:  The way that I explain it, Your
12   Honor, is "wig" with a P in front of it.
13            THE COURT:  All right.
14            MR. PUIG:  Thank you for inviting us to
15   your courtroom today, Your Honor.  I'm going to start
16   where Your Honor started, which is, yes, you're
17   absolutely right.  The course here, the best course
18   here, is for Your Honor to either grant the motion to
19   stay or otherwise defer ruling on the remand motion
20   and allow this case to transfer to the MDL.
21            There are four reasons why it's important
22   to do that.  Number one, in substantially similar
23   opioid lawsuits removed to this Court on identical
24   jurisdictional grounds; not similar -- identical
25   jurisdictional grounds.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Are these theories that the

2     City of Albuquerque is bringing in this case of a

3     public nuisance, is that something that is common to

4     a large number of cases that are being brought?

5          MR. PUIG:  The vast majority of opoid cases

6     are brought by cities and counties against

7     distributors, manufacturers, and retailers, retail

8     pharmacies, and they allege public nuisance among

9     other claims.

10          But Your Honor, to ensure consistent

11     treatment of the opioid cases that have been removed

12     to this Court on, again, not similar but identical

13     jurisdictional grounds, this Court should again defer

14     remand of the pending remand motion.

15          Second, Your Honor, federal district courts

16     around the country, including the District of New

17     Mexico, have repeatedly recognized and applied a

18     general rule that district courts should defer ruling

19     on pending remand motions in cases bound for an MDL

20     to allow the JPML to render a final decision on

21     transfer.

22          Third, the interests that undergird the MDL

23     system in this case, including uniform treatment of

24     like legal issues and the promotion of judicial

25     economy and efficiency, are both furthered if Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Honor defers ruling on a remand motion in this case.

2              And fourth and finally, the balance of

3    hardships in this case uniformly favor a stay.

4              So I'm going to take each of those

5    arguments in turn, Your Honor, and respond to some

6    things that plaintiff's counsel said as I go.

7              THE COURT:  Let me ask, since the City

8    argued their motion to remand, it does seem to me

9    that the jurisdictional basis for this motion -- for

10   this case is suspect.  I mean, I didn't see a lot of

11   argument that the pharmaceuticals and these seven

12   individuals could not be -- there were not causes of

13   action, viable causes of action, against every

14   defendant that's here.  Would you agree with that,

15   that this isn't a fraudulent joinder issue in which

16   the people that have been named as individuals, the

17   City has stated causes of action against them?

18             MR. PUIG:  I'm not here to say anything

19   about the causes of action or the viability of the

20   causes of action.

21             THE COURT:  But if you're not doing that,

22   you're telling me basically that there is not

23   fraudulent joinder here.

24             MR. PUIG:  Oh, we didn't assert that there

25   was fraudulent joinder, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            THE COURT:  That's all I'm asking.

 2            MR. PUIG:  We asserted three legal

 3    doctrines with which this Court is incredibly

 4    familiar because he has addressed them at length in

 5    two decisions and adopted the doctrine, though he

 6    didn't apply it on the facts.

 7            THE COURT:  But I guess my point is that at

 8    least fraudulent joinder we can put aside.

 9            MR. PUIG:  We're not arguing fraudulent

10    joinder, Your Honor.

11            THE COURT:  These, unlike a lot of times

12    when I have a motion to remand, they're saying, well,

13    they shouldn't have sued this employee and created a

14    nondiverse situation.  That's not this case.

15            MR. PUIG:  Right.  As Your Honor

16    explained --

17            THE COURT:  So for me to get jurisdiction

18    over this case or some judge to get jurisdiction,

19    they're going to have to do something.

20            MR. PUIG:  They're going to have to apply

21    the Doctrine of Procedural Misjoinder.

22            THE COURT:  Which I have recognized.

23            MR. PUIG:  Right.

24            THE COURT:  I know the plaintiffs don't

25    like it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                   MR. PUIG:  Right.

2                   THE COURT:  They use all sorts of

3        derogatory terms about it.  But I've never also used

4        it.

5                   MR. PUIG:  You've never applied it, but

6        that is because --

7                   THE COURT:  Never applied it.

8                   MR. PUIG:  -- because of the facts of the

9        case.

10                  THE COURT:  It's rarely used, isn't it?

11       It's recognized, but it's rarely used.

12                  MR. PUIG:  Your Honor, I submit if there is

13       a case --

14                  THE COURT:  You think this is it?

15                  MR. PUIG:  If you're going to see a case

16       where procedural misjoinder is appropriate, let me

17       tell you something, Your Honor, this is the one.

18                  THE COURT:  Tell me why.

19                  MR. PUIG:  So I'm going to turn to the

20       remand argument, I guess.  I still have several

21       things I want to say about the stay issue.

22                  THE COURT:  I know.  I'm kind of interested

23       in this remand.

24                  MR. PUIG:  So Your Honor, it's important to

25       call a spade a spade in this case.  And the fact of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

41

```
 1    the matter is, we have a situation in this case that

 2    we have seen all over the country in opioid cases,

 3    and that is plaintiff lifting a form opioid complaint

 4    that has been filed in dozens of other cases, if not

 5    hundreds of other cases, but because this case was

 6    filed in New Mexico, they have tacked on claims

 7    against local doctors, including threadbare and

 8    unrelated allegations of wrongdoing.

 9            Under well-established law which Your Honor

10    has recognized in circumstances like this when a

11    plaintiff brings distinct claims and unrelated

12    allegations of wrongdoing against nondiverse

13    defendants to deprive a defendant who is diverse of a

14    federal forum, especially when there is an MDL

15    involved, the Court can and should drop these

16    defendants to preserve diversity jurisdiction.

17            And Your Honor, before I get into the

18    jurisdictional merits of the argument, I think it's

19    incredibly important that we spend some time briefly

20    looking at this complaint, and that's for two

21    reasons.

22            First, as Your Honor recognized and

23    explained at length in Flores-Duenas, the Doctrine of

24    Procedural Misjoinder exists for a purpose, and that

25    purpose is to prevent clever plaintiffs' attorneys
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

42

```
1    from abusing procedural rules to deny diverse
2    defendants a federal forum to which they would
3    otherwise be entitled.  And I will submit to you,
4    Your Honor, if you take a cursory look at this
5    complaint, it will be abundantly clear to you that
6    that is precisely the game that is afoot in this
7    case, and it provides important context to the
8    jurisdictional analysis.
9           THE COURT:  Well, but you will agree with
10   me that joinder in the federal courts is extremely
11   broad, and I've always had trouble finding the limits
12   of it, and have not been very happy with treatises or
13   other cases trying to define when there is
14   misjoinder.  So you end up with a situation that
15   involves opioids, probably it's very difficult to say
16   that it's not the same subject matter or transaction
17   or series of transactions.  So you're really pushing
18   the limits to get the Court to say that this is the
19   one case that you have a misjoinder.
20          MR. PUIG:  Well, I think, Your Honor, if we
21   take a look at the allegations, which brings me to
22   the second reason why I think it's important to
23   review the complaint with Your Honor, Your Honor has
24   adopted the Procedural Misjoinder Doctrine, which, by
25   the way, is different than the Rule 1921 tributary of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1   the severance argument that we also address in our

2   notice of removal and motion to remand.  I didn't

3   hear much of a distinction made in that arena with

4   respect to plaintiff's counsel's argument, but there

5   are definitely two separate doctrines that we're

6   looking at here today.

7           But it's important, as Your Honor

8   demonstrated in Flores-Duenas and Ullman that you

9   actually look at the facts of the case.  So let's do

10  that, Your Honor.  Let's look at what this complaint

11  actually alleges about these nondiverse defendants.

12          And first of all, Your Honor, when I said

13  that this was a form opioid complaint, I wasn't

14  making that accusation idly.  I know that because I

15  have seen this complaint many, many times in my two

16  and a half years of working on jurisdictional issues

17  in opioid cases.  This complaint is actually a

18  complaint that is typically filed in federal court.

19  And it typically only names -- surprise --

20  manufacturers, distributors, and pharmacies.

21          If you're wondering how there is typically

22  subject matter jurisdiction for this complaint, it's

23  because it typically includes a RICO claim, which the

24  plaintiffs in this case have obviously removed.

25          And I want to make something really clear

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

44

1    here, Your Honor.  When I say that the complaint is

2    lifted, I don't mean that it names generally the same

3    parties and includes generally the same allegations.

4    I mean chapter and verse, entire sections and

5    paragraphs, to the tune of 95 percent of this

6    complaint, are lifted directly from other opioid

7    lawsuits filed in other states against the same core

8    group of defendants but not naming medical provider

9    defendants.  Curiously, Your Honor -- well, not

10   curiously, but this complaint includes something

11   called a "Preliminary Statement," like most

12   complaints do.  If you look at paragraph 1 -- and by

13   the way, Your Honor, do you have a copy of the

14   complaint?

15            THE COURT:  I don't have it with me.

16            MR. PUIG:  Would you like one?  I've got

17   one right here.  May I approach?

18            THE COURT:  You may.

19            MR. PUIG:  Here you go, Your Honor.  If you

20   look at the section of the complaint entitled

21   "Preliminary Statement," you see sections in

22   complaints like this all of the time.  And the

23   purpose of a preliminary statement is to frame the

24   lawsuit, describe the allegations, list the parties,

25   et cetera.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1              Paragraph 1 of this complaint describes and

 2     identifies a category of defendants called the

 3     manufacturer defendants.  It goes on to list them and

 4     characterize the allegations against them as being

 5     they engaged in a deceptive marketing campaign with

 6     respect to opioid products.

 7              Paragraphs 2 and 3 describe in sequence the

 8     distributor defendants and then the pharmacy

 9     defendants, and describe the misconduct purportedly

10     committed by these defendants which can be broadly

11     generalized as failing to notice and report

12     suspicious orders and prescription of opioid

13     products.

14              Then paragraph 4 of the complaint ties it

15     all together and says, "The City brings this action

16     to redress defendants' campaign of unfairly,

17     deceptively, and fraudulently marketing, promoting,

18     and distributing opioids."

19              If Your Honor takes the time to read the

20     rest of the 16 paragraphs that form the preliminary

21     statement, noticeably absent will be any discussion

22     of the nondiverse defendants or the conduct in the

23     case.

24              I want to turn your attention to page 6.

25     Again, not uncommon in many complaints, this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1     complaint has a section that lists the parties.
 2     You'll notice that plaintiff has listed on page 6,
 3     including jurisdictional recitals, then you'll notice
 4     that they start to list the defendants on page 7,
 5     first listing the manufacturer defendants, then on
 6     page 11 listing the distributor defendants, then on
 7     page 4 listing the pharmacy defendants.  There is no
 8     mention of the nondiverse defendants in the section
 9     of the complaint that purports to list the parties
10     named as defendants.  And again, Your Honor, that is
11     because this is a sloppy, lifted complaint from other
12     opioid actions which the plaintiffs transparently
13     tacked on nondiverse defendants for the purpose of
14     defeating diversity jurisdiction.
15             So let's look at what the complaint
16     actually says about the nondiverse defendants.
17     They're mentioned a grand total of three times.  The
18     first is on page 15, where plaintiff lists certain
19     personal jurisdiction recitals regarding the
20     nondiverse defendants, alleging that each of them
21     operates a medical practice in the city.  There are
22     no allegations of wrongdoing with respect to the
23     nondiverse defendants here.  It just says that they
24     operate a medical practice.
25             And you know, just briefly, as a detour,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   plaintiff's counsel mentioned that Michael Gallegos

2   is actually a pharmacist instead of a doctor.  It's

3   all very difficult to tell from this complaint

4   because here it suggests that he operates a medical

5   practice, which at least to my mind sounds something

6   different than a pharmacy.

7           The second time that the nondiverse

8   defendants are mentioned in this case is on page 80.

9   And over the course of I think nine paragraphs, each

10  of the seven nondiverse defendants is mentioned once.

11  And the allegations against them are essentially that

12  they negligently overprescribed dangerous opioid

13  controlled substances through their practices.

14          The third and final time that the

15  nondiverse defendants are mentioned in this claim, in

16  a complaint that is hundreds of pages long and

17  includes 453 paragraphs, the third and final place

18  where these nondiverse defendants are mentioned in

19  this complaint is paragraph 361, where it lists the

20  nondiverse defendants and then says that the

21  nondiverse defendants had, quote, "unique duties

22  under the law as licensed health care professionals

23  not to prescribe outside the usual course of practice

24  for other than a legitimate medical purpose."  That

25  is all the complaint says about the nondiverse

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

48

1    defendants.  For the purposes of the Court's

2    jurisdictional analysis, those are the factual inputs

3    that you need to look at for the transaction or

4    occurrence test of Rule 20 and the factual

5    allegations or common legal questions prong of Rule

6    20.  It's also relevant to the Rule 1921 tributary of

7    the jurisdictional analysis that's relevant to the

8    first argument Endo made in its notice of removal.

9            But what you won't see in this complaint,

10   Your Honor, is any allegation that a nondiverse

11   defendant, for example, relied on a misrepresentation

12   made by a pharmaceutical manufacturer in prescribing

13   an opioid product.  You will see no allegation that

14   one of the nondiverse defendants prescribed an opioid

15   product that was brought into New Mexico using a

16   distribution channel controlled by one of the

17   distributor defendants.  And you will not find any

18   allegation in the complaint that one of these

19   nondiverse defendants prescribed an opioid product in

20   a prescription filled by a retail pharmacy named in

21   this complaint.

22           So with that in mind, Your Honor, let's

23   talk about the jurisdictional issues.  And as I

24   mentioned, when Endo removed this case, we actually

25   provided three distinct grounds for federal

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   jurisdiction.  The removal was predicated on

2   diversity, but we argue that the nondiverse

3   defendants could be dropped or severed using one of

4   three doctrines.  Two of the doctrines flow from Rule

5   21.  The third is the Procedural Misjoinder Doctrine.

6        With respect to the Rule 1921 tributary,

7   the issue there is whether or not the nondiverse

8   defendants are necessary or dispensable parties to

9   the action.  And if they are not, pursuant to

10  well-settled law, this Court has the ability, the

11  discretion to sever them for the purpose of

12  perfecting diversity jurisdiction.

13        The Rule 20 and 21 tributary and the

14  Procedural Misjoinder Doctrine, they vary from

15  district to district.  In this district, Your Honor,

16  Flores-Duenas and Ullman has effectively collapsed

17  the two doctrines into a single doctrine, because

18  Your Honor has concluded that the egregiousness

19  overlay that usually sits on top of the Rule 20

20  analysis for procedural misjoinder is unnecessary.

21  So as a matter of housekeeping, despite the fact that

22  those arguments are made differently in the notice of

23  removal, I'm going to address them collectively in

24  this case.

25        So Your Honor, I'm going to start with the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Rule 19 analysis.  So pursuant to well-settled

2    precedence of the United States Supreme Court and the

3    Tenth Circuit, district courts have the authority to

4    sever unnecessary and dispensable parties for the

5    express purpose of preserving diversity jurisdiction.

6    It is true, as plaintiff's counsel said, that

7    Newman-Green is a case that didn't involve a remand.

8    In Newman-Green, the Supreme Court, as plaintiff's

9    counsel explained, was wrestling with the issue of

10   whether or not an appellate court could use Rule 21

11   to sever a party for the purpose of perfecting

12   diversity jurisdiction.  The Supreme Court in a 7-2

13   opinion concluded that appellate courts had the same

14   discretion that had long been recognized in district

15   courts to use Rule 21 to sever those parties.

16           Interestingly, in the dissent to

17   Newman-Green, Justice Kennedy raised the very concern

18   that plaintiff's counsel raised here.  He said,

19   "Look, I disagree with what the Supreme Court has

20   said with respect to this issue, but they've also

21   included this affirmation of a district court's

22   ability to use Rule 21 to sever unnecessary

23   dispensable parties for the purpose of perfecting

24   diversity jurisdiction."

25           And that gives me a lot of pause.  What you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   don't see in the majority is any effort in light of
 2   that dissent to suggest that's not precisely what
 3   they meant district courts were invested with
 4   authority to do.  So district courts from around the
 5   country have looked to the Newman-Green line of
 6   precedent and also guidance from the respective
 7   circuits that essentially say the exact same thing
 8   that Newman-Green says.  And they have on several
 9   occasions across the country used Rule 19 to sever
10   nondiverse defendants who are dispensable and
11   unnecessary for the purpose of perfecting diversity
12   jurisdiction.
13           THE COURT:  That seems like a very
14   unprincipled doctrine.  It just seems like it just
15   gives -- you may have the authority, but I don't know
16   what guidance you would have to say.  You'd just say,
17   "Well, I agree with the defendants; this case ought
18   to be in federal court, so I'm going to chop off the
19   nondiverse parties."
20           MR. PUIG:  So Your Honor, it's very
21   similar --
22           THE COURT:  That seems very unprincipled to
23   me.
24           MR. PUIG:  It's very similar to procedural
25   misjoinder in that it is a doctrine that has been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  created by judges that is traceable to federal

2  jurisdictional statute and Rules of Civil Procedure.

3  And ultimately and most importantly, Rule 21's

4  command that a district court may sever defendants --

5  or drop defendants, rather -- I know Your Honor is

6  keyed in to the difference between the word "sever"

7  and "drop" in Rule 21 -- on any terms that are just.

8  That's where it comes from.  And the fact of the

9  matter is that district courts around the country

10 have applied the doctrine in exactly the way that

11 I've described to sever nondiverse defendants for the

12 purpose --

13         THE COURT:  I don't understand what guides

14 them.  I don't think you can articulate a principled

15 rule that allows a district judge to do that.  I

16 mean, I think you want a brushback pitch to the

17 plaintiffs' bar that they can't join everybody in the

18 world.  But in the end, it seems to me that it's very

19 difficult to come up with a principled rule to say,

20 "Well, okay, we're just going to drop these people so

21 that it remains in federal court."  That's where the

22 corporation wants to be.

23         MR. PUIG:  Well, it's not that simple, Your

24 Honor.

25         THE COURT:  It's not that simple?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            MR. PUIG:  The district court had to

2     conclude that the parties are unnecessary and

3     dispensable.

4            THE COURT:  Well, okay.  Tell me that.

5            MR. PUIG:  How does that happen?

6            THE COURT:  Yeah.  You tell me how these

7     people are unnecessary to an abatement, because

8     they're saying they're going to have to bring two

9     suits if you sever them out.

10            MR. PUIG:  The test that the district

11     courts have developed --

12            THE COURT:  You just don't like these

13     people in there.

14            MR. PUIG:  No, Your Honor, the test that

15     the district courts have developed is whether

16     resolving the claims against the nondiverse

17     defendants would necessarily resolve the claims

18     against the diverse defendants.  And if the answer to

19     that question is no, then they are not necessary and

20     dispensable parties and are subject to severance

21     under Rule 19.  That is precisely what the district

22     court in the Northern District of Ohio did in Joseph

23     v. Baxter.  It's precisely what the district courts

24     around the country have done in other cases, as we

25     cite in our papers, including Sullivan v. Calvert

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    from Maryland, Cook v. Bates from the Eastern

2    District of Virginia, and others.

3            And courts have recognized that this

4    authority should be used sparingly, but have also

5    identified cases in which it is particularly

6    appropriate to use.  And one of those cases is when

7    there is an MDL involved, because an application of

8    the Severance Doctrine will help further the

9    objective of the MDL, which is the uniform treatment

10   of legal issues and judicial efficiency and economy.

11           Sullivan makes this point clearly.

12   Severance is "particularly appropriate because it

13   would allow for the transfer of plaintiff's claims

14   against the diverse defendants to the multidistrict

15   litigation."  So courts have fashioned what I think

16   is a principled rule for the application of this

17   doctrine and recognized that it shouldn't be applied

18   in every situation, but that there are situations in

19   which it is especially appropriate for the doctrine

20   to be applied.

21           So plaintiffs respond to this argument

22   mostly by articulating arguments to counteract the

23   Rule 20 tributary of the Rule 21 Severance Doctrine.

24   They say things like, "Well, this arises out of the

25   same transaction or series of transactions."  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    disagree with that for reasons I can talk about, but

2    that's not the relevant inquiry.  As I mentioned, the

3    relevant inquiry is whether the nondiverse parties

4    are unnecessary and dispensable.

5         And they also lean in heavily on the

6    prejudice argument.  And first of all, the prejudice

7    argument depends on an assumption that you're

8    wrongfully in federal court, which obviously, that's

9    a premise that I don't adopt.  I think that this case

10   belongs in federal court because the Court should use

11   Rule 19 and Rule 20 to sever the defendants.

12        But several courts around the country have

13   looked at the exact same arguments that plaintiff are

14   making in this case, specifically delays in the MDL

15   proceedings and also the empty-chair argument, and

16   have flatly rejected them.

17        Also, Your Honor, I would note that whether

18   or not the nondiverse defendants are in this case,

19   there is a high degree of likelihood that defendants

20   are going to argue about the respective culpability

21   of other classes of defendants.  And so I just don't

22   particularly find the empty-chair argument persuasive

23   in this case, and neither have other courts who have

24   repeatedly rejected that argument in considering

25   these questions.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          So I'm going to transition to discussing

2     Rule 20, Your Honor, unless you have any other

3     questions.

4          THE COURT:  No.  Go ahead.

5          MR. PUIG:  So separate and apart from

6     severance under Rule 19, as this Court has

7     recognized, Rule 21 and Rule 20 allow a district

8     court to sever misjoined parties under Rule 20.  And

9     I'm not going to spend a lot of -- despite the fact

10    that plaintiffs spend probably 60 to 70 percent of

11    their papers telling this Court, which is a court

12    that has already adopted the Procedural Misjoinder

13    Doctrine, why the doctrine is essentially kooky and

14    should be rejected, I am not going to spend time,

15    unless Your Honor wants me to, discussing why this

16    doctrine is viable, because Your Honor has covered

17    that doctrine at length in Flores-Duenas, in addition

18    to Ullman.  I am going to talk about the application

19    of the doctrine to the facts.

20          THE COURT:  Let me ask this on their

21    criticisms of the doctrine.  They certainly have

22    found cases that criticized it.  I guess my thoughts

23    were that they involved a large number of district

24    judges from the Ninth Circuit.  Has any of the

25    academic literature been more kind to the doctrine,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    or other district courts outside of the Fifth that

2    have been kinder to the doctrine than the cases that

3    they cite?

4           MR. PUIG:  So I'd say that the academic

5    literature is about in the state that it was when

6    Your Honor wrote Flores-Duenas a few years ago; that

7    is to say, divided.  There are obviously courts

8    across the country, as Your Honor recognized in

9    deciding Flores-Duenas that have rejected the

10   doctrine, and there are those that have adopted it.

11          I will say that Your Honor would not be the

12   first district court in the Tenth Circuit to not only

13   find that the doctrine is viable, but also to apply

14   it.  A district court in the Western District of

15   Oklahoma both acknowledged that the doctrine is

16   viable and decided to apply it in a case a few years

17   ago.  That case is Bunnell v. Oklahoma MH Properties,

18   Westlaw 2012 12863916.  The division in the doctrine

19   is one of the reasons why I think it is so important

20   that the Court defer ruling on this remand motion,

21   which I'm going to return to when I have an

22   opportunity to argue the motion to stay.  I know Your

23   Honor wanted me to focus on the jurisdictional issues

24   first.

25          But Your Honor has recognized that the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    doctrine is viable.  Your Honor has considered two

2    cases, and on both cases decided that the facts did

3    not warrant severance or dropping the defendants

4    pursuant to the doctrine.

5           Let's look at Flores-Duenas.  That case

6    involved a car accident.  And there was a lawyer who

7    didn't do his job and did not bring a lawsuit against

8    the insurance company of an underinsured motorist in

9    time.  So the plaintiff sued both her lawyer and the

10   insurance company, and on the basis that the

11   transaction or occurrence that united these claims

12   and allegations under Rule 20 was the car accident;

13   right?  And Your Honor concluded that that made good

14   sense.

15          There are a lot of car accident cases in

16   the procedural misjoinder arena, so I'm going to use

17   a car accident example that I think will illustrate

18   precisely what is going on with respect to this case.

19   Plaintiffs want to take the transactional relatedness

20   requirement of Rule 20 and distort it until it has

21   virtually no meaning.  And they do that by asserting

22   that the transactional relatedness requirement is

23   satisfied because all of the claims have something to

24   do with opioid-related harm.  And what they do is:

25   They recast a test that requires you to identify a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    transaction or occurrence and say, "As long as this

2    has to do with opioid harm, these claims are properly

3    joined."

4            So using a car accident analogy, imagine

5    that somebody had the misfortune of being in three

6    car accidents in a month, and each car accident was

7    caused by another irresponsible driver who was

8    insured by its own insurance company.  And then

9    imagine the person who had the misfortune of being in

10   those three accidents or being affected by those

11   three drivers bringing lawsuits against all three

12   drivers and all three insurance companies, and then

13   when asked, "Wait a minute, what is the transaction

14   or occurrence that unites these cases such that Rule

15   20's requirement is satisfied?" and responding by

16   saying, "Well, all of these cases have something to

17   do with me being hurt in a car accident."

18           That is precisely what is going on in this

19   case.  Plaintiffs have said that the transactional

20   relatedness requirement of Rule 20 is satisfied

21   because every single allegation against these various

22   groups of defendants has something to do with

23   opioid-related harm.  And if you take what they're

24   saying to its logical conclusion, that means that

25   they could name, for the purpose of defeating

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    diversity jurisdiction, someone who was standing on a

2    street corner selling illicit fentanyl in an action

3    against manufacturers of prescription opioid

4    medications.  They would be able to name somebody who

5    was driving a vehicle overdosed on opioid medications

6    and caused an accident because that person had some

7    role in causing opioid-related harm to the county --

8    or to the City of Albuquerque.

9            Your Honor, I submit to you that that

10   construction of Rule 20's transactional relatedness

11   test takes the test to a level of absurdity that

12   renders it completely meaningless.  And courts around

13   the country, in considering this very issue, have

14   warned that, quote, "Courts must avoid viewing the

15   transaction or occurrence standard as too high a

16   level of generality lest claims be capriciously

17   joined in one lawsuit even though the only thing they

18   have in common is a solitary fact or set of facts

19   that are not tied together."  That's reFX Audio

20   Software, which is cited in our papers.

21            THE COURT:  What Court is that?

22            MR. PUIG:  That's the Northern District of

23   Illinois, Your Honor.  Other courts that have reached

24   similar conclusions for substantially the same

25   reasons.  For example, the District of D.C.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

61

1    concluded, "It is immaterial that the claims are

2    linked in some sense as plaintiff claims.  If the

3    manufacturer had never manufactured the device, the

4    health care provider could never have implanted it.

5    However, the applicable test for joinder requires

6    more."  That's In Re: Stryker, Your Honor, from the

7    District of Minnesota, 2013 Westlaw 6511855.

8         And Your Honor, you know, these cases are

9    legion out there recognizing that the transactional

10   test under Rule 20, while permissive, is not

11   unlimited, and it must not be unlimited; otherwise,

12   it would be meaningless.

13        So to join defendants together in an action

14   and say, "Well, instead of identifying a transaction

15   here, I'm going to just say all of these defendants

16   were engaged in causing opioid harm and that's

17   enough," makes a mockery of the requirements of Rule

18   20.

19        The second thing that Rule 20 requires is

20   that there be an overlap in the facts or legal

21   issues; right?  And here we reviewed the facts in

22   this case with respect to what is alleged as to the

23   nondiverse defendants.  By plaintiff's own admission,

24   the nondiverse defendants had unique duties as

25   medical providers.  And though there is some overlap

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   in the claims, specifically the public nuisance

 2   claims, the negligence claims, the gross negligence

 3   and punitive damages claims, and the unjust

 4   enrichment counts, courts have repeatedly found in

 5   the context of procedural misjoinder that just

 6   because you have an overlap in claims doesn't mean

 7   that you satisfied the requirements under Rule 20.

 8   That is because just because a defendant is named in

 9   the same claim as another defendant and that claim

10   shares elements, it doesn't mean that the facts or

11   legal duties that are going to be applied to those

12   claims are the same or that there is any overlap.

13           Your Honor, I would like to return to the

14   arguments related to the motion to stay, unless Your

15   Honor has any questions regarding Rule 20.

16           THE COURT:  Oh, go ahead.  Why don't you go

17   on to the stay.

18           MR. PUIG:  So Your Honor, as I mentioned

19   when I got up here, your intuition is exactly right.

20   I think that the best course of action here is to

21   either stay the case -- and although you framed it as

22   doing nothing, I would refer it or instead of staying

23   the case, deferring ruling on the motion to remand.

24   And there were four reasons that I was getting

25   through for that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          The first one is that doing so is going to

2   promote consistency with respect to how this Court --

3   and by "this Court" I mean judges in this district

4   and also Your Honor -- has handled materially

5   identical opioid cases removed to this district.  So

6   plaintiff's counsel noted that last -- well, in 2017,

7   2018, three cases were removed to federal district

8   court in New Mexico that are substantially identical.

9   They're cases in which the plaintiffs name

10  manufacturers, distributors, and pharmacies.  And

11  then they tacked on nondiverse defendants who were

12  doctors accused of overprescribing opioids.

13         Endo removed the cases to this Court not on

14  a similar jurisdictional theory but on an identical

15  jurisdictional theory.  Your Honor, in City of Mora,

16  which was drawn to Your Honor after its removal,

17  allowed the case to transfer to the MDL without

18  resolving a remand motion.

19         Now, plaintiff's counsel got up here and

20  said, "Well, maybe there was a bankruptcy issue and

21  maybe that's why the Court didn't act on the remand

22  issue."

23         Well, Your Honor, actually, I have a

24  special relationship to the Mora County case.  I

25  started working at Arnold & Porter in October of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   2017, and the Mora County case was the first case

2   that I was assigned in connection with this opioid

3   litigation.  And I prepared the papers and I prepared

4   the response to the motion to remand.  And I remember

5   exactly the jurisdictional issues that were raised in

6   that case, and they had nothing to do with a

7   bankruptcy stay.  I think the bankruptcy issue was

8   manifested after we filed our papers, if I'm

9   remembering correctly, and it had to do with one of

10  the nondiverse defendants who was a doctor who I

11  believe may have been incarcerated.

12          But the bottom line is that your Court

13  allowed that case to transfer to the opioid MDL and

14  to promote consistency with the treatment of these

15  issues in this district, the Court should again do

16  that in this case.

17          And the Court's approach to the County of

18  Mora case brings me to my second reason.  It's

19  consistent with a widely accepted practice and widely

20  applied practice in district courts around the

21  country, including the District of New Mexico, to

22  stay or otherwise defer a decision on a remand in

23  cases that are bound for MDL litigation.  Of the more

24  than 2,000 cases that have been consolidated for

25  coordinated proceedings before Judge Polster, over

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    200 of them were removed not using a similar but an

2    identical jurisdictional argument to the one Endo

3    used in this case.  In each of those cases, by

4    definition, district courts either deferred ruling on

5    pending remand motions or entered a stay order.  In

6    fact, dozens of these substantially similar opioid

7    cases removed on identical grounds started life in

8    the Tenth Circuit.

9            I worked, in particular, in Oklahoma on

10   dozens of these cases.  More than 30, actually close

11   to 40 cases brought by cities and counties in

12   Oklahoma, again naming manufacturers, distributors,

13   and pharmacies, and then tacking on nondiverse

14   doctors accused of overprescribing opioid medications

15   were removed to federal courts in Oklahoma by Endo.

16   Several district courts in the Northern District and

17   Eastern District of Oklahoma entered stay orders.

18   The remaining cases deferred ruling on remand

19   motions.  Every single case in Oklahoma that's been

20   removed to Oklahoma federal court using identical

21   jurisdictional arguments has transferred to the MDL.

22   In fact, if this Court grants the motion to remand in

23   this case, it will be the only district court in the

24   Tenth Circuit to order remand on a case removed using

25   the jurisdictional theory that Endo raised in this



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    case.

 2              THE COURT:  What do you do with Judge

 3    Herrera's opinion in the Balderas case?

 4              MR. PUIG:  I'm glad you asked, Your Honor.

 5    Number one and most importantly, that case was

 6    removed on federal question jurisdiction, not

 7    diversity jurisdiction.  So to the extent that the

 8    Court evaluated the merits of the jurisdictional

 9    issues and thought them lacking, it has no bearing on

10    the jurisdictional issues in this case.

11              Second, Your Honor -- and I'm going to talk

12    a little bit about the way that this general rule has

13    been applied in the District of New Mexico, but if

14    you read Judge Herrera's order in that case, it is

15    completely silent with respect to the stay analysis.

16    So she does the jurisdictional analysis on the motion

17    to remand, finds that there is no jurisdiction, finds

18    that there is no federal question jurisdiction, and

19    then remands the case, and in one sentence says, "And

20    I'm also denying the stay motion because it is moot."

21    There is no substantive discussion of the stay motion

22    whatsoever.

23              So district courts in New Mexico, judges in

24    New Mexico, have repeatedly recognized the general

25    rule that I'm talking about.  We cite a couple of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    them in our papers.  One that we do cite is New

2    Mexico State Investment Council v. Alexander, which

3    is a 2004 decision from Judge Vazquez, where Judge

4    Vazquez applies the general rules, grants a motion to

5    stay, and the case later transfers to MDL.

6         Another case that's helpful for Your Honor

7    to look at is a case called Torrez v. Johnson &

8    Johnson.  It's a Gonzales decision from 2014, 2014

9    Westlaw 6910478.  That case is particularly helpful

10   because it also collects several cases from judges in

11   the District of New Mexico doing precisely the same

12   thing.

13        In Alexander, the Court also recognized

14   that a stay or a deferral of the decision to remand

15   is particularly appropriate in cases where, quote,

16   "the jurisdictional issues raised in plaintiff's

17   motion to remand are both difficult and similar or

18   identical to those in other cases that have been or

19   will be transferred to the MDL."

20        So let's take each of those one at a time.

21   On the similarity issue there can be no dispute, Your

22   Honor.  There are hundreds of cases before Judge

23   Polster that are raising identical jurisdictional

24   questions, and more are being transferred every day.

25   When plaintiff's counsel said that they are winning

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the trend, I just winced, Your Honor, because the

2    fact of the matter is that dozens of these cases are

3    being transferred every other month.  On the

4    conditional transfer order that the JPML is hearing

5    at the end of this month, on January 31, there are, I

6    believe, an additional 18 of these cases raising this

7    identical jurisdictional issue that are going to be

8    transferred at the end of January.  So this idea that

9    there is this great awakening in the district courts

10   and that the tide is turning with respect to this

11   issue is simply false.

12          THE COURT:  Well, what do you make of these

13   judges, some of whom I think very highly of, that are

14   granting these remand motions?

15          MR. PUIG:  I'm glad that you asked, Your

16   Honor.  So in response to the motion to stay, Your

17   Honor probably recalls seeing on pages 2 to 4 a

18   bulleted list of 21 cases where a district court

19   denied a stay motion and then ordered remand.  I'm

20   sad to report, Your Honor, that I read all of them.

21   And the majority of those cases were removed on

22   aggressive federal question or CAFA arguments.  In

23   fact, only four of the cases that are cited in that

24   list of 21 were removed on the jurisdictional basis

25   at issue in this case, which is the severance of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     nondiverse tertiary defendants using Federal Rule of

2     Civil Procedure 21 and the Doctrine of Fraudulent

3     Misjoinder.

4          For example, all of the Texas cases, though

5     they were removed on the basis of diversity

6     jurisdiction and severance, they were removed by the

7     distributors, and the distributors argued that the

8     manufacturers were dispensable parties subject to

9     severance.  So I'm not surprised that those arguments

10    didn't prevail.

11         But the fact of the matter is that when you

12    actually look, when you appropriately frame the

13    jurisdictional question, and then look at the cases

14    that --

15         THE COURT:  Would you say the same about

16    Judge Barbara Lynn in the Northern District of Texas

17    involving, I think, the County of Dallas?

18         MR. PUIG:  Your Honor, the County of Dallas

19    case is one of those cases where the distributor is

20    removed, arguing that the manufacturers should be

21    severed, which, again, I think is a different and a

22    difficult argument to make.

23         THE COURT:  Did the motion to remand in

24    County of Mora just not get set for a hearing before

25    the case got transferred to the MDL?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. PUIG:  It was set for a hearing, Your

 2   Honor, and then, before the hearing could occur, I

 3   want to say three days before the hearing could

 4   occur --

 5            THE COURT:  It got transferred?

 6            MR. PUIG:  -- it got transferred.  Exactly.

 7   And I think it is important that Your Honor treats

 8   these cases similarly.  And the fact of the matter

 9   is:  Whether Your Honor or anyone intended it, there

10   are cases before Judge Polster removed from New

11   Mexico by cities and counties that are materially

12   identical and removed on similar jurisdictional

13   issues.

14            And the animating principles of MDL

15   litigation in the first instance, which are the

16   uniform treatment of legal issues and the promotion

17   of judicial efficiency and economy, are clearly best

18   served if Your Honor does what he said he was

19   inclined to do when he took the bench, which is to

20   defer a ruling on this motion to remand.

21            Your Honor, I just want to say a couple

22   more points, a few more points, and I appreciate you

23   for giving me an opportunity to argue at length on

24   these issues.

25            As I mentioned, the District of New Mexico,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   judges in the District of New Mexico, have not only

2   acknowledged but routinely applied the general rule

3   that a district court should defer ruling on a remand

4   motion in a case bound for the MDL to allow the JPML

5   to issue a final decision on transfer.  Those cases

6   include some of the ones that I've cited.  Alexander.

7   Judge Vazquez commented, quote, "Deference to the MDL

8   Court for resolution of a motion to remand provides

9   the opportunity for the uniformity, consistency, and

10  predictability in litigation that underlies the MDL

11  system."

12          Judge Armijo, in a case called New Mexico

13  v. Volkswagen Group of America, which is 2016 Westlaw

14  4072342, recognized, quote, "It would be a waste of

15  this Court's judicial resources to consider a motion

16  to remand on a case that ultimately may be

17  transferred to the MDL.  The MDL judge will rule on

18  the motion to remand.  There is no need to duplicate

19  work or risk inconsistent results."

20          I could keep going, but let me just

21  represent this to Your Honor:  Last night I did

22  several searches trying to isolate every District of

23  New Mexico decision where a district court was

24  confronted with this question:  Do I take up the

25  motion to remand or do I stay when there is an MDL

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   proceeding?

 2           I found about 15 of the cases, and with the

 3   exception of one, every single judge who has

 4   considered this question has granted a motion to stay

 5   and deferred ruling on any remand motion in

 6   litigations bound for an MDL.  The one exception that

 7   I could find was -- excuse me, Your Honor -- the one

 8   exception I could find was a case decided by

 9   Magistrate Judge Lynch.  It's called Herbison v.

10   Chase USA, Westlaw 2009, 10708265.  And after reading

11   it, I could understand why the court didn't apply the

12   general rule.

13           First of all, it was an extremely

14   aggressive CAFA removal.  Second of all, and more

15   importantly, it turned out that there were no other

16   cases in that particular MDL that were removed using

17   that jurisdictional theory.  So Magistrate Judge

18   Lynch, I think wisely, concluded that taking up the

19   stay issue was not important at that time.

20           THE COURT:  Did you find a case that -- I

21   keep in the back of my mind that I had a case in

22   which there was the specter of an MDL.  It wasn't yet

23   out there, but everybody was saying it's coming, it's

24   coming, but I didn't have conditional transfer

25   orders, I didn't have anything more than people just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    saying it's going to happen.  Did you find when I had

 2    a remand issue?

 3              MR. PUIG:  I didn't, Your Honor.

 4              Before I sit down --

 5              THE COURT:  Why don't we do this:  I need

 6    to give Ms. Bean a break, and I'll let you figure out

 7    what you want to say before you sit down.  But let me

 8    have a recess for about 15 minutes, let her rest, and

 9    I'll come in and let you finish, and then we'll see

10    if any of the other defendants have anything they

11    want to say on it.

12              MR. PUIG:  Of course, Your Honor.

13              THE COURT:  All right.  We'll be in recess

14    for about 15 minutes.

15              (The Court stood in recess.)

16              THE COURT:  All right, Mr. Puig, if you

17    wish to continue your argument.

18              MR. PUIG:  Yes, Your Honor, just a few more

19    minutes.  Where I left off, I was discussing a number

20    of decisions from judges in the District of New

21    Mexico that have confronted this precise issue and

22    have applied this general rule concerning the

23    deferral of remand motions.

24              THE COURT:  Are there a few district

25    judges, though, around the country -- looked to me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

74

 1    like maybe a dozen, maybe a little more -- that are

 2    doing what the City is wanting me to do?

 3          MR. PUIG:  Sure, Your Honor.  Yes, Your

 4    Honor.  They're cited in their papers.

 5          THE COURT:  And you don't think Barbara

 6    Lynn's opinion there is one of them?

 7          MR. PUIG:  No.  Okay, well, I want to be

 8    absolutely clear here, Your Honor.  They cite a

 9    number of cases in their papers.  The vast majority

10    of those cases implicate cases that were removed on

11    entirely different jurisdictional grounds.  And I

12    think that is a critically important distinction, so

13    I want to be careful about that.

14          Judge Lynn's opinion was a severance case,

15    but it was not a case removed on the theory that is

16    at issue in this case.  It was a case removed on the

17    theory that manufacturers of opioid products were not

18    properly joined in an action with distributors of

19    opioid products.  I think that is a very different

20    argument.

21          So are there decisions of district courts

22    addressing the exact jurisdictional argument at issue

23    in this case where courts have denied motions to stay

24    and remanded?  Yes.  Do they outnumber the hundreds

25    of cases that are already before Judge Polster where

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the district courts decided that the appropriate

2    course was to stay or defer?  No, they don't, and not

3    by a long shot.  It's not even close.

4           But in terms of the District of New Mexico

5    outside of the opioid context, again, out of 15 cases

6    that I was able to locate, only one district court

7    judge, a magistrate judge, decided that an MDL case

8    should not be stayed pending a remand motion and a

9    decision on transfer, and that was a case where the

10   jurisdictional issue raised was not common to the

11   jurisdictional issues that were already pending in

12   the MDL.

13          I've cited those cases into the record,

14   Your Honor.  I've also cited several of them in our

15   papers.  But in terms of the purpose for doing this,

16   the general rule is not just recognized by this Court

17   and other courts, the wisdom of the general rule.

18   It's recognized by the Manual for Complex Litigation,

19   which is prepared by the Federal Judicial Law Center,

20   which provides in relevant part, quote, "a stay

21   pending the panel's decision can increase efficiency

22   and consistency, particularly when the transfer court

23   believes the transfer order is likely."

24          And in the Tenth Circuit we've seen courts

25   applying, in the context of opioid cases, this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    general rule and staying cases removed on identical

2    grounds over objections concerning prejudice, over

3    objections concerning delayed adjudication of the

4    remand motion, over objections concerning appropriate

5    choice of forum from plaintiffs.  Universally in the

6    Tenth Circuit, courts have stayed those cases or

7    deferred ruling on remand motions in cases that are

8    removed on identical grounds.  I'll direct the

9    Court's attention to the Osage decision, where Chief

10   Judge Frizzell, in the Northern District of Oklahoma,

11   said, quote, "A stay will allow for centralized

12   consideration of the jurisdictional issues and

13   conservation of judicial resources.  The Court finds

14   that under the circumstances, the gains in judicial

15   efficiency and consistency allowed by a stay outweigh

16   the potential prejudice to the plaintiffs resulting

17   from delay in adjudication of the motion to remand."

18            And then, you know, with regard to the

19   prejudice issue, Your Honor, the central prejudice

20   that Endo is presenting here that has been recognized

21   in opioid litigation, but also in those District of

22   New Mexico cases that I discussed, is a risk of

23   inconsistent treatment of similar jurisdictional

24   issues and an undermining of the essential purpose of

25   MDL proceedings in the first instance.  This Court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and others have uniformly recognized that that is a
 2    serious hardship to defendants and it also undermines
 3    the MDL system, and courts, including this Court.
 4    And the decisions that I have been citing have
 5    rejected precisely the arguments that plaintiffs are
 6    making regarding a delay, regarding having to
 7    litigate in a multidistrict litigation, and the other
 8    prejudice issues that they bring up in this case.
 9            Before I sit down, Your Honor, there are a
10    few points that I want to directly respond to that
11    plaintiffs made in their papers and also in argument.
12    The first is this notion that this Court somehow
13    lacks jurisdiction to even entertain the possibility
14    of a stay.  And I may be getting myself into trouble,
15    because it seems like Your Honor shares that view.
16            THE COURT:  I'm concerned.
17            MR. PUIG:  I just want to say, Your Honor,
18    that pursuant to long-standing Supreme Court
19    precedent, quote, "the power to stay proceedings is
20    incidental to the power inherent in every Court to
21    control its dockets," and in these precise
22    situations, courts around the country obviously have
23    concluded that they have jurisdiction to enter stays
24    in opioid cases because they've done so in dozens of
25    cases in this district and in hundreds of cases
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   around the country.

2          THE COURT:  When do you think that the

3   transfer order is going to come out on this case?

4          MR. PUIG:  March 26, Your Honor, at the

5   latest March 27.

6          But with respect to, like, that threshold

7   "Can I do it, do I even have the power to ascertain

8   or to order a stay?" the District of New Mexico has

9   spoken directly on this issue as well.  In Torrez v.

10  Johnson, Judge Gonzales -- this is, again, 2014

11  Westlaw 6910478, said, quote, "This Court, as well as

12  other district courts, acknowledge that a district

13  court may in its discretion stay proceedings pending

14  an MDL transfer without first ruling on a pending

15  motion to remand."

16         Judge Armijo, in the Volkswagen case, 2016

17  Westlaw 4072342, "Granting a motion to stay is not

18  adjudicating the merits of a case, and precedent does

19  not require resolving jurisdictional matters before

20  deciding whether to grant a stay motion."

21         And in other district courts in the Tenth

22  Circuit, including my home state of Colorado, courts

23  have reached the same conclusion.  This is Franklin

24  v. Merck, from Judge Wiley Daniel in the District of

25  Colorado, Westlaw 2007 188264, quote, "Although I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

79

1  could rule on plaintiff's motion to remand prior to

2  ruling on the motion to stay, I note that the vast

3  majority of courts to consider this issue in this

4  context have chosen to rule on the pending motion to

5  stay even when a motion to remand has also been filed

6  in the MDL litigation."

7          So I want to be clear.  If Your Honor just

8  wants to defer ruling on the motion to remand, that

9  is substantially the relief that Endo has requested

10  in the motion to stay.  I'm not insisting that you

11  write a stay order.  But I do think that the Court

12  has the jurisdiction to do it, and I didn't want to

13  let that go unanswered.

14          The second thing that I want to address is

15  the thing that bothered me the most about both the

16  papers and the argument today.  And it is this

17  extraordinarily misleading argument that surfaced in

18  both plaintiff's motion for expedited treatment and

19  in response to Endo's motion to stay.  Plaintiff

20  points to a filing moratorium on certain pleadings in

21  this MDL.  And they say that the filing moratorium

22  is, quote, "a de facto death knell for this

23  litigation," and they go on to say about Judge

24  Polster, quote, "Judge Polster will refuse to even

25  consider that he is without subject matter

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   jurisdiction."

 2          That is false, Your Honor, and it is

 3   demonstrably false.  First of all, with respect to

 4   the moratorium, and at the risk of stating the

 5   obvious here, Your Honor, the moratorium is on the

 6   filing of new remand motions.  And last I checked,

 7   there is a pending remand motion in this case which

 8   will be transferred to the MDL when the JPML issues

 9   its transfer decision, if it is allowed to do so.

10          Second of all, related to the moratorium,

11   as Your Honor, I'm sure, well appreciates,

12   moratoriums on filings in MDL litigation are routine

13   and they don't reflect some kind of hostility of the

14   MDL judge with respect to deciding those issues.  For

15   example, just because the moratorium would -- you

16   know, just because an MDL judge enters a moratorium

17   on motions to dismiss certainly doesn't mean that the

18   judge is going to never decide motions to dismiss.

19   It means when you're managing 2,000-plus cases, you

20   can't have the parties, plaintiffs and defendants

21   included, filing whatever they want whenever they

22   want and drowning the court in a deluge of paper.

23          So that brings me to the last point that I

24   want to make on this issue, which is actually the

25   part that troubles me about the characterization.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   The idea that -- I wrote it down -- quote, "the

2   federal court won't rule on the motion to remand in

3   this case" is not only false and misleading, it is

4   diametrically opposed to what Judge Polster has said

5   on the record multiple times.  Judge Polster has

6   repeatedly expressed that the parties establish a

7   framework, with the Court's guidance, at an

8   appropriate time for the resolution of pending remand

9   motions.  And he has said that he wants to resolve

10  the remand issues collectively so as to ensure that

11  legal issues are resolved consistently, which, again,

12  is the purpose of MDL litigation in the first

13  instance.

14          The last point I want to make, Your Honor,

15  is this notion that --

16          THE COURT:  Has he granted some remand

17  motions?

18          MR. PUIG:  Yes.

19          THE COURT:  There have been a few?  And can

20  you tell me what the character of those were?

21          MR. PUIG:  Sure.  He's both denied and

22  ordered remands, so he's done both things.  He's

23  taken up remand issues.

24          THE COURT:  Is that about three motions

25  that he's done?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          MR. PUIG:  No, Your Honor, it's more than

 2     that.  There were a couple in the Tenth Circuit from

 3     Oklahoma that had to do with a very interesting,

 4     actually, jurisdictional argument that would be

 5     applicable in tribal cases based on federal officer

 6     jurisdiction.  So Judge Polster, I think about a year

 7     and a half ago, took those up, I think -- and this is

 8     important -- I think out of recognition that there

 9     weren't going to be a bunch of those cases in the

10     MDL.  So he said, "You know what?  I'm going to

11     decide these now."

12          And I think if you contrast that, one of

13     the explanations for why Judge Polster has not moved

14     on the diversity-based severance removals like this

15     case is because -- I'm shocked, but three years later

16     there are still cases that are being filed and

17     removed to federal court, you know, virtually every

18     week, that are being removed on this basis.  So I

19     think Judge Polster just doesn't think that now is

20     the appropriate time, because there are still more

21     cases coming in.

22          But beyond the federal officer removal

23     grounds, two weeks ago Judge Polster ordered remand

24     in two Missouri cases brought by Missouri counties

25     that were removed to federal court on the basis of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    federal question jurisdiction that had some unique

2    issues.  So this idea that he's just sitting there --

3              THE COURT:  What were the circumstances of

4    those cases?  What caused him to send those back to

5    state court?

6              MR. PUIG:  The state court actually reached

7    out to the MDL in that case and said, We have these

8    other cases that are pending."

9              THE COURT:  "We don't have enough work?  We

10    want some other cases"?

11              MR. PUIG:  I was shocked.  I was shocked.

12    But the state court actually reached out and said,

13    "We'd really love it if you address these two remand

14    motions, because we think these cases belong in a

15    coordinated proceeding down with us."

16              And Judge Polster said, "Sure, I'll take a

17    look," and he sent it back.  Again, federal question

18    removal is not related to the jurisdictional issue

19    here, but I just find it disappointing that the

20    plaintiff is characterizing Judge Polster as someone

21    who is sitting in a tower with disdain for the

22    jurisdictional issues, refusing to think about them

23    or to consider them, and that if Your Honor allows

24    the case to transfer to the MDL by deferring a

25    decision on remand, that somehow you are condemning

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

84

1    them to an eternity without any sort of resolution of

2    this issue.

3              The last thing that I will say, Your Honor,

4    before I sit down is:  Plaintiffs have come up here

5    and said, "We can't point to any single orders of

6    district courts that have accepted our jurisdictional

7    arguments."  That's not true, and we cite cases in

8    our briefs.

9              But you know, just to give you an example,

10   the only case -- there is one case in the Tenth

11   Circuit that was removed on the jurisdictional basis

12   here, where a Court provided any commentary

13   whatsoever on the jurisdictional issues at issue in

14   this case.  That was a decision from the Eastern

15   District of Oklahoma by Judge Lungstrum.  That case

16   was removed on the same basis here because it named

17   nondiverse doctors accused of overprescribing

18   opioids.

19             Judge Lungstrum issued an order staying the

20   case.  And in his order staying the case, he said

21   some things about the jurisdictional basis that was

22   asserted by Endo.  He said, and I quote, "At first

23   blush, jurisdiction does not appear to be lacking in

24   this case and therefore, the Court is not moved by a

25   likelihood that plaintiff's stay in federal court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  will be unfairly extended.  Indeed, the existence of

2  these difficult questions of jurisdiction weigh in

3  favor of their resolution by one court making similar

4  rulings in hundreds of cases, in keeping with the

5  purpose of the MDL framework."

6          And Judge Lungstrom went on to say, quote,

7  "Severance would present an attractive option for the

8  Court because it would allow the claims against the

9  other defendants to be included in the MDL."  That's

10 the only district court decision in the Tenth Circuit

11 that passes any commentary whatsoever on the

12 jurisdictional issues in this case.  There are

13 district court decisions from West Virginia that have

14 expressly adopted the argument for jurisdiction that

15 we're making here today for the express purpose of

16 perfecting diversity jurisdiction by severing

17 nondiverse doctors.

18         And Your Honor, I would submit to you that

19 the reason why there aren't a barrel full of orders

20 accepting our jurisdictional premise is because the

21 first argument that we make in response to every

22 motion to remand is that the district court should

23 defer consideration and allow Judge Polster to take

24 up similar issues alongside similar cases.  So it's

25 not particularly a surprise when district courts take

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

86

1    that invitation, even if they think that the

2    jurisdictional issue is meritorious, and allow the

3    cases to transfer to the MDL.

4              Thank you so much, Your Honor.

5              THE COURT:  Thank you, Mr. Puig.

6              Any of the other defendants want to say

7    anything?  Let me ask the ones in the courtroom

8    first.  Any of the individual defendants?  You enjoy

9    being sued by the City of Albuquerque?  Anybody want

10   to speak?

11             How about on the phone?  Anybody want to

12   speak on the defendants' side on the phone?

13             All right.  Ms. Saucer, if you wish to have

14   the last word on the motion to remand, if you want to

15   talk about the motions to stay.

16             MS. SAUCER:  Yes, Your Honor.  I'd like to

17   make six points, and I'll try to be quick.  Number

18   one, in what opposing counsel said, in trying to

19   distinguish Barbara Lynn's opinion --

20             THE COURT:  Whose opinion?

21             MS. SAUCER:  Barbara Lynn, County of

22   Dallas.  The arguments that opposing counsel made,

23   the admissions that opposing counsel made, have

24   destroyed a good number of the statements that he's

25   made to you today.




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1                Number two, I take great issue with these
 2     computer searches, which are defective.
 3                Number three, the County of Mora and the
 4     issue of doing nothing is something.
 5                Number four, what is applicable versus
 6     inapplicable?
 7                Number five, which is to talk about the
 8     gross mischaracterization of our complaint here.
 9                And finally, number six, those two Missouri
10     cases and what's going on in the MDL.
11                Number one, we all heard opposing counsel
12     just say that Judge Barbara Lynn's opinion in the
13     County of Dallas case was -- and I think I'm
14     quoting -- entirely different jurisdictional grounds.
15     Very different argument.  And that allegedly was
16     because, well, there, the distributors were making
17     the argument, and the distributors were saying,
18     "Well, we're different than the manufacturers."  And
19     that's entirely different from the argument here,
20     which is that the manufacturers and the distributors
21     together are different from the pharmacist, Michael
22     Gallegos, and the six prescribers.  Completely
23     different.
24                If that's completely different, then their
25     200 cases are not 200 cases, because the origination

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1     of these types of motions was precisely the
2     distributor making that argument of the manufacturer.
3     And if opposing counsel is going to concede that that
4     is entirely different and it has nothing to do with
5     any of -- anything, then all the numbers they've
6     given you are flatly wrong.  Because the numbers
7     they've given you are cases that were removed on
8     complete diversity.  And the first wave of those were
9     the distributors making that argument about the
10    manufacturers.  And if they're irrelevant, that
11    number isn't 200.  It's a much, much smaller number.
12              Furthermore, all of their arguments about
13    efficiency and there's not going to be any prejudice
14    because it's so efficient to have Judge Polster
15    decide this.  Really?  Well, if they've just admitted
16    that it's entirely different, entirely different, if
17    the distributors are saying this about the
18    manufacturers, well, wait a minute.  How is it
19    efficient for Judge Polster to look at the pleadings
20    of the seven people, because they would be entirely
21    different, too.  So where is the efficiency served by
22    shipping this off to Judge Polster, if it's entirely
23    different, if it's the distributor saying this about
24    the manufacturers versus the manufacturers and the
25    distributors saying this about the pharmacists and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the prescribers.  He's destroyed his own argument.

2    And the attempt to distract the Court from the

3    excellent work by Judge Barbara Lynn -- we're very

4    proud of her in the Northern District of Texas.  Love

5    her.

6              THE COURT:  She's got a house in Santa Fe,

7    too, so she pays property taxes over here as well.

8              MS. SAUCER:  Oh, Your Honor, I didn't know

9    that.  Oh, okay.

10             THE COURT:  Pretty nice house, too.

11             MS. SAUCER:  She used to have a house in

12   White Rock Lake.  I'm sorry.  I digress.  Late on a

13   Friday.

14             My second argument is the two computer

15   searches that we heard about.  So the first computer

16   search was:  I looked and I only found 15 cases where

17   anybody refused to let this just be shipped off to

18   the MDL, and that was Magistrate Judge Lynch, and

19   that was some crazy CAFA theory.  Well, that's a very

20   curious thing.  Then we heard this discussion of

21   Oklahoma, which, by the way, was a case on the stay.

22   It wasn't a case that said, "I deny the remand motion

23   because there is jurisdiction."

24             But anyway, back to these computer

25   searches.  Well, I found it very alarming for



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    opposing counsel to tell Your Honor that he did a

2    computer search and the only thing he came up with

3    was this case by Magistrate Judge Lynch, given that

4    the Court had just asked him, just asked him like

5    five minutes before, about the New Mexico ex rel

6    Attorney General Balderas versus Purdue Pharma

7    decided by Judge Judith C. Herrera and published in

8    F.Supp. 3d in the year 2018.  How is it that opposing

9    counsel's diligent search, where he only found 15

10   cases, missed this one?  I don't know.  But we heard

11   opposing counsel say, "Well, ignore Judge Herrera,

12   because she didn't discuss it enough.  She denied

13   stay.  She didn't discuss it enough."

14           I would respectfully request, Your Honor,

15   and then go back to the questions that Your Honor

16   asked me earlier, to pages 1247 and 1248 of this

17   published decision by another member of this

18   honorable Court.

19           Now, she doesn't use the term in this

20   decision about -- doesn't say CTO, that the

21   conditional transfer order was granted.  But reading

22   it, it's clear that it was.  And I say that because

23   there is a discussion of it's going to be transferred

24   to the panel on June 12, or the briefing will be

25   finalized on June 12, 2018; and that the defendant

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    argued that in two or three months, the JPML will

2    issue an order conditionally transferring this case,

3    et cetera, and therefore request a stay of all

4    proceedings.  And so there is a discussion, and then

5    there is a quote from the brief, which she did

6    consider because she's quoting the briefing on the

7    State of New Mexico saying, "Don't bounce the case

8    between federal courts lacking subject matter

9    jurisdiction."

10          And so there was a date here as we have one

11   conceded here, the conceded day here is March 26.

12   Here there was a date listed of June 12, 2018.

13          And moreover, I would say that since this

14   decision was penned, the reasons compelling rejection

15   of this argument to just say it and let it be shipped

16   off are even more acute, Your Honor.  They're even

17   more acute.  Because what we know happened after this

18   decision was penned is that there are no rulings on

19   any of these issues.  And we've just learned,

20   according to this admission by defense counsel, that

21   these issues are very different than the other

22   alleged 200 cases.  This is completely different

23   because it's different types of defendants.

24          And so even if there is, according to

25   defense counsel, a ruling, it's going to be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  completely different because it won't be these exact

2  defendants we're talking about or this category

3  defendant versus the other category defendants,

4  because defense counsel admitted that they're very

5  different.

6         So going to my third argument, okay, on

7  this issue of -- well, I can just -- okay.  On the

8  issue of doing nothing, just doing nothing is doing

9  nothing, and that's the best thing to do, because it

10  will -- it won't interfere.  And doing nothing is

11  nothing.

12         Opposing counsel's arguments prove that

13  doing nothing is something because they're arguing

14  County of Mora to you.  They are arguing that doing

15  nothing means something.  They are arguing that doing

16  nothing proves that they're right.  They just did it.

17  We just heard all this discussion of County of Mora.

18  County of Mora allegedly proves that they're right.

19  So doing nothing is doing something because doing

20  nothing is saying no to the City of Albuquerque.

21         I want to jump to my fifth argument, which

22  is to talk about the complaint.  We cite in the

23  complaint at paragraph 232, that Albuquerque has been

24  designated a high-intensity drug trafficking area by

25  the Office of National Drug Control Policy, and that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    is because of the geography and the location.  And I

 2    take great umbrage with the completely inaccurate

 3    statement by opposing counsel that allegedly our

 4    complaint is a cut-and-paste from a federal case.

 5    That's impossible and it's not true.

 6            THE COURT:  Do you have a state RICO claim

 7    in yours?

 8            MS. SAUCER:  I think that we -- there is a

 9    New Mexico RICO law that has to do with drug

10    trafficking that is I think in the state AG's case,

11    but it's not here.  And I want to say that's -- is it

12    because of standing?

13            THE COURT:  Well, the reason I ask is

14    because you do have RICO allegations in here, and I

15    thought that looked like --

16            MS. SAUCER:  Oh, I'm sorry.  I'm sorry.

17    You know what --

18            THE COURT:  Paragraph 363.

19            MS. SAUCER:  I'm sorry.  I'm sorry.  You

20    know, I'm sorry.  You're absolute right.  I blocked

21    it out because it was against the manufacturer

22    defendants only.  I'm sorry.  Yes.  That's Count 2.

23    But it's not against the defendants that we're

24    talking about, so I just didn't remember that.  I'm

25    sorry.  I'm focused like a laser on these defendants,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

94

1    Your Honor.  Yes, I'm sorry.  They're here.  But

2    that's the state -- that is all under the state law.

3    So that's one reason why it's not a cut-and-paste.

4            But that RICO, that is unusual to New

5    Mexico.  I think this is the one where it's a narrow

6    state RICO statute.  It's more narrow than the

7    federal one.

8            But what I was going to say about the

9    pleading, not just that section which I had

10   forgotten, I've been focusing on public nuisance,

11   negligence, gross negligence, unjust enrichment,

12   because those are the ones that are against all of

13   the defendants, including the ones we're fighting

14   about today.

15           But to talk about this issue of, did we cut

16   and paste from a federal complaint, in paragraph 149

17   starting on page 48, there are multiple, multiple

18   citations to New Mexico law, multiple citations to

19   16.19.8.23, to .48, to .13 in paragraph 149, 150,

20   151, 152, 153, 154, 155, 158.  In every single one of

21   these paragraphs there are multiple citations to New

22   Mexico law, to the NMAC, and to the NMSA 1978.  So

23   this idea that we cut and pasted this and it's just a

24   federal complaint is absolutely not true.

25           Also, continuing on, paragraph 171,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   paragraph 172.  Again, multiple citations to New

2   Mexico law.  Paragraph 285, paragraph 286, paragraph

3   287, paragraph 289.  There we start -- not only are

4   we citing New Mexico law, and not only are we citing

5   the statutory law, not only are we citing all the

6   regulations, we are citing case law decided by the

7   State of New Mexico.

8           On the issue of what is applicable versus

9   inapplicable, I touched on that earlier.  Here's the

10  thing.  The Oklahoma case had to do with a stay.

11  This judge -- the search that opposing counsel

12  allegedly did missed the decision on the New Mexico

13  AG's case.  Respectfully, it would be most

14  consistent, since we have a published decision in

15  which another judge of this honorable district court

16  did not stay the case and went to the merits of the

17  motion to remand for consistency within the District

18  of New Mexico, the thing to do for consistency and

19  respect for the other New Mexico judges would be to

20  follow that decision and rule on the remand notion.

21          And on this issue of -- I heard again

22  opposing counsel citing these cases that have nothing

23  to do with anything here.  Joseph versus Baxter and

24  Cook versus Bates and Sullivan.  All of those have to

25  to do with medical malpractice and doctors, the thing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and the action in the same case.  Completely

2    different.

3           The reFX Audio case.  That had to do with

4    copyright infringement.  I have a list, some of these

5    car crash cases.  My favorite is the Wesley versus

6    Progressive case cited in footnote 7, page 12 of the

7    remand brief.  It was a car crash and the local

8    Louisiana defendant, the local defendant that

9    defeated diversity, was the plaintiff's father;

10   right, for something that he did or failed to do

11   before the car crash.  So that's what they're citing

12   here.  They've searched the world over and they're

13   citing everything but cases by governmental entities

14   that are trying to abate the opioid epidemic.  All of

15   those cases that have reached this issue other than

16   that West Virginia outlier, which was based on a West

17   Virginia statute, the ones that have looked at the

18   issue, they have all said, No, plaintiffs are not

19   required to have two different cases in two different

20   jurisdictions.  It's the same damages.  It's the same

21   abatement model.  And this idea that, oh, well, we're

22   going to sue someone driving down the street high;

23   well, when I do sue someone driving down the street

24   high, then fine, I'll lose.

25           But that's not what we've done here.  What

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    the City of Albuquerque has done, in line with other

 2    governmental entities around the country, are to sue

 3    the known culpable parties.  It is very important to

 4    us that when the prescribers are blamed.  And I've

 5    been in these arguments on motions to dismiss, and

 6    sure enough:  We're not responsible, we just drive

 7    the armored trucks.  It's the prescriber.  They wrote

 8    the prescription.  We can't do anything.  Now, that's

 9    not true, but nonetheless, we want the prescribers in

10    the case to say, "You lied to us," et cetera, et

11    cetera, so that these defendants can't blame an empty

12    chair with an entire category of defendants that's

13    not there to push back.

14            Finally, on this issue of what's going on

15    in the MDL.  Okay, the two -- first, the idea that,

16    well, it doesn't matter that there is a moratorium on

17    remand motions because we already filed ours.

18            I've been doing this for a while and every

19    single time I've lost at this stage and gone to the

20    MDL, what we've done is file a renewed remand motion.

21    I mean, to my knowledge, Your Honor, there is no MDL

22    judge that's pulling every single docket to say, you

23    know, what was filed before you got here?  Which is

24    the reason for that moratorium.  So that, I

25    respectfully submit, is a distinction without a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

98

```
 1   difference.
 2          THE COURT:  That strikes me as strange.  I
 3   mean, I'm not saying that's not what you're doing,
 4   but you know, when I get cases on the MDL, I'm not
 5   requiring -- I don't want everybody to refile.  I
 6   have enough paper.  I don't want a refile.  And when
 7   I remand back to state court, simpler matter, you
 8   know, I leave the motions pending.  I don't go
 9   through and clean them out and dismiss them or
10   anything like that.  I leave them for the state
11   judge.  That's the whole purpose of remanding the
12   case is not to act on the motions that are there.  So
13   I don't know why you would need to refile them.
14          MS. SAUCER:  Well, when I have, it's
15   because we're desperate to get the case back --
16          THE COURT:  I mean, you've got a good
17   motion here.  Why do you need to redo it?
18          MS. SAUCER:  I mean, I did it in the
19   Fresenius case to get a hearing date.  And then we
20   had a lot of issues there where the judge insisted on
21   different circuit laws.  That judge said, "I don't
22   want your Fifth Circuit cites.  I want your First
23   Circuit cites."
24          THE COURT:  I understand that.
25          MS. SAUCER:  But on this issue in Missouri,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

99

1    what happened, opposing counsel just admitted that

2    the state judge in that case asked the federal judge

3    to bring the case back.  I don't know how that

4    happened, but we don't have any means of doing that.

5    I mean, this idea --

6             THE COURT:  Well, that's pretty common in

7    these MDLs, is that you've got these things going on

8    in the state, and the state and the federal judges

9    are cooperating together.  I think Judge Breyer did

10   it out with the Volkswagen cases out in California,

11   if I recall.

12            MS. SAUCER:  But the idea that, well -- so

13   I didn't see what happened.  I don't know what

14   happened in Missouri, but I think the judge is going

15   to write a letter saying, "I want the cases back."

16            THE COURT:  Well, I bet they just pick up

17   the phone and say, "You know, it would really help us

18   if you'd do those two motions to remand so that we

19   could consolidate them with the cases we have."  It

20   makes sense to me.  I don't know if that's what

21   occurred.

22            MS. SAUCER:  I would love that.  But we

23   have absolutely no way, Your Honor, of making that

24   happen.  We have no recourse to make it happen.  And

25   to my knowledge, it hasn't happened in any other of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    these cases in New Mexico.  Our only chance is you.

2    Otherwise --

3              THE COURT:  Well, isn't the problem for

4    you -- unlike Missouri, we don't have a cluster of

5    these floating around in state court -- there is not

6    over in the Second Judicial District 20 of these

7    cases and they would like to have these cases with

8    them?

9              MS. SAUCER:  Maybe -- Your Honor, I don't

10   know.  Your Honor, I don't know what happened in

11   Missouri.  I wish I did, so I could replicate it for

12   all my other clients.  I mean, maybe that is why.

13   But the thing is, that's not going to happen for

14   Albuquerque.  I mean, we need you.  And Albuquerque

15   is very hard hit.  We've cited in our complaint that

16   Albuquerque is particularly hard hit.  And we need

17   the case to be in a court with subject matter

18   jurisdiction that will allow us to proceed with

19   discovery in the case in order to grapple with this

20   horrific, medically made medical catastrophe of

21   opioid overdose, addiction, and death.

22             Does the Court have any questions for me?

23             THE COURT:  Can you remind me what you gave

24   me these for?

25             MS. SAUCER:  Okay.  Is that the City of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Mora?  It was because in 2017, the representation to

2   the Court was:  Don't worry.  This will just be

3   brief, brief, brief, brief.  And we're sitting in

4   2020, and that's not brief.

5        THE COURT:  All right.  Anything else you

6   want to say on your motion to remand, your motion for

7   expedited decision on your motion to remand, or

8   anything in response to the motion to stay that's

9   been filed by the defendants?

10       MS. SAUCER:  Unless the Court has

11  questions, I think I've talked long enough.

12       THE COURT:  All right.  Thank you,

13  Ms. Saucer.

14       MS. SAUCER:  Thank you.

15       THE COURT:  Let me let the defendants maybe

16  have the last word on the motion to stay.  Then I

17  think that will probably bring us to a conclusion

18  here.

19       MR. PUIG:  Sure.  I just have a couple of

20  things to say.

21       First of all, with respect to Balderas,

22  when I was representing that I had done a search

23  about district courts in the District of New Mexico

24  who had considered these issues, I said who had

25  undertaken the analysis related to the general rule,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1    right?  And there is a body of case law from a case

2    from the Central District of California called

3    Rivers, and a case from the Eastern District of

4    Wisconsin called Meyers that set forth standards for

5    what a district court should consider when confronted

6    with a dueling remand motion and a motion to stay in

7    MDL litigation.

8              And the point that I had with respect to

9    Balderas was, if you read the order, there is no

10   framework.  It's not like I'm setting out these

11   factors and I'm considering these issues, and having

12   considered them, I conclude X.  The judge denies the

13   remand motion and then says at the end -- or excuse

14   me, grants the remand motion, and at the end says,

15   "The motion to stay is denied as moot."

16             So in terms of the New Mexico district

17   courts that have undertaken that analysis under the

18   general rule that's reflected in these various lines

19   of cases from district courts, I was only able to

20   find one.  My searches did return Balderas.  I didn't

21   include it in the list, number one, because I was

22   already aware of it; and number two, because it

23   didn't fit that rubric that I provided to the Court.

24   So I just wanted to make that clear.

25             Second of all, Balderas is a federal

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    question removal.  It has virtually no probative

 2    value.

 3            THE COURT:  What is the federal claim in

 4    that case?

 5            MR. PUIG:  So if I'm not mistaken, it is a

 6    distributor removal theory that we see often.  And

 7    this idea is that -- so obviously, the plaintiffs who

 8    don't want to get into federal court don't plead

 9    violations of federal law; right?  But they often

10    plead violation of state analogues to the Controlled

11    Substances Act.  And the distributors around the

12    country have made these federal question arguments.

13    And by the way, when I have referred to, "It was a

14    federal question argument," throughout the day, I'm

15    basically talking about this argument.  So the

16    distributors will argue that under a line of

17    authority called Gunn and Grable, that the state

18    court duties are actually derivative of federal CSA

19    duties and, therefore, raise a substantial federal

20    question such that the Court may exercise federal

21    jurisdiction.

22            That was the jurisdictional theory that was

23    at play in Balderas.  It has virtually no probative

24    value at all with respect to this issue.  And the

25    case that does have probative value in terms of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    consistency and treatment is County of Mora, in which

2    Your Honor either intentionally or unintentionally

3    followed the general rule by allowing the MDL --

4              THE COURT:  I think we looked at it during

5    the break, and I had it a full month.  And I think I

6    was trying to be a good judge.  I set it for a

7    hearing, and then three days before --

8              MR. PUIG:  It got scooped up.  And I'm not

9    disputing that, Your Honor.  I'm just saying that it

10   would be a shame if there is a case in the MDL that

11   is substantively identical in all material respects

12   because Your Honor's Court allowed it to travel,

13   along with two others, and then all of a sudden, now

14   Your Honor pulls back a case that would otherwise go

15   to the MDL and be resolved alongside of those similar

16   cases from New Mexico.  That's the point that I'm

17   trying to make with respect to County of Mora, Your

18   Honor.

19              I also want to just talk about the

20   prejudice issues here, Your Honor.  The plaintiffs

21   have spoken eloquently today about the crisis and the

22   emergency nature and the prejudice that would flow

23   from this case being transferred to the MDL.  I would

24   point out an argument that we made in our reply brief

25   to the stay motion, which is that this case was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    pending for close to five months before they decided

2    to serve the defendants.  So I am frankly skeptical

3    about the argument that emergency adjudication and

4    anything other than emergency adjudication of

5    everything in this case is going to result in

6    significant prejudice.

7              Finally, plaintiff's counsel got up and

8    made an argument that I somehow defeated my entire

9    argument with respect to the stay or jurisdiction

10   because I recognized, in a way that I hoped was

11   intellectually honest, that the application of the

12   Severance Doctrines depends on the facts of the cases

13   and the arrangement and the relationships between the

14   parties.  So the Texas cases, which again were

15   removed on the basis of severance but relied on a

16   completely different factual argument related to the

17   doctrine that I'm sure Your Honor would have rejected

18   if we had presented it here -- there was no need

19   to -- but that relied on an argument that

20   manufacturers and distributors could be severed

21   because there was no factual nexus under Rule 20 and

22   because they were unnecessary parties.

23             I don't think I am making any great

24   concession to argue that the factual circumstances

25   where the nondiverse spoiler defendant is a doctor

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    who has been accused of overprescribing opioid

2    medications without medical need and having unique

3    duties that are unique to medical providers is an

4    entirely separate question factually, which is why I

5    made a distinction in looking at those cases that

6    plaintiff cites, 21 of which the majority of them are

7    federal question CAFA removals.  And a small handful,

8    four, are actually removals on the basis of

9    jurisdiction legally and factually that is at issue

10   in this case.

11          Then plaintiff's counsel went on to say

12   that, well, aha, the 200 number is totally bogus,

13   because all of the cases in the MDL are -- or some

14   substantial number of them, I guess impliedly, are

15   these cases where the distributors have argued that

16   manufacturers should be severed; and then she went on

17   to say that the severance argument in the context of

18   opioid litigation originated with the distributors

19   making this argument against the manufacturers.

20          Both of those things are untrue I know with

21   respect to the latter, because Endo, assisted by

22   Arnold & Porter, was, to my knowledge, the first

23   defendant of any kind in opioid litigation to even

24   raise Rule 19 and 21 severance as a basis to remove

25   opioid cases.  Though I can't provide to you with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   absolute certainty a number today, I am almost

2   certain that none of the cases before Judge Polster

3   were removed on a severance theory that was

4   predicated on a distributor argument -- that were

5   transferred to Judge Polster, i.e., currently pending

6   before Judge Polster -- where the distributors

7   suggested that the manufacturer should be severed.

8   The only state I'm aware of that happening in is

9   Texas, because one of the manufacturers there, the

10  relationship between the parties works out such that

11  if you could sever one of the manufacturers, you

12  could create diverse jurisdiction.

13          So I'm not even aware of that argument,

14  that particular flavor of this argument being made

15  anywhere outside of the state of Texas.  I guess I

16  could be wrong about that, but I certainly know that

17  it's the case that the majority of those 204 cases

18  currently pending before Judge Polster are cases in

19  which manufacturers or distributors have argued for

20  severance of tertiary defendants, i.e., defendants

21  that are not manufacturers, distributors, or

22  pharmacies.

23          THE COURT:  Doctors.

24          MR. PUIG:  Doctors, right.  Physician

25  assistants.  In some cases I think, like, drug reps,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    other folks, but not manufacturers, distributors, or

2    retailers.

3         And again, like I said, we're going to get

4    another conditional transfer order finalized on the

5    31st of this month.  And I know, because I've

6    litigated several of the cases on that CTO, that they

7    are cases removed on the basis of jurisdiction that

8    we have alleged here.

9         The last thing that I want to say, Your

10   Honor, is:  On the copy-and-paste issue, I said that

11   it is a form complaint because it is a form

12   complaint.  I didn't say every paragraph in the

13   complaint is identical.  I think I said 95 percent or

14   something like the vast majority.  And that's because

15   95 percent or the vast majority of paragraphs in the

16   complaint are copied and pasted.  And to the extent

17   that this is going to move the needle for Your Honor,

18   I would be happy to send you however many of these

19   federal complaints I'm alluding to so that you can

20   undertake your own comparative review.

21        Also, Your Honor --

22        THE COURT:  What is the total number of

23   cases that the Ohio judge has now in his MDL?

24        MR. PUIG:  It's more than 2,400.  It's more

25   than 2,400.  And many of them were filed directly in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

109

```
 1    federal court using the complaint that I'm alluding
 2    to that is this form opioid complaint.  And by the
 3    way, Your Honor, I was also aware that there were
 4    vestigial RICO allegations in paragraphs in the
 5    complaint, and I didn't bring it up because I didn't
 6    want to pile on.  But the fact of the matter is that
 7    this is a form complaint.  They have tacked on
 8    nondiversity --
 9              THE COURT:  Do they have a state RICO claim
10    in here?
11              MR. PUIG:  No, they do not, Your Honor.
12              THE COURT:  So their allegations to NMSA
13    section 30-42-3 you think are just superfluous?
14              MR. PUIG:  I can tell you what their claims
15    are, Your Honor.  Their claims are public nuisance,
16    negligence, negligence per se, gross negligence,
17    punitive damages, unjust enrichment, racketeering,
18    fraudulent misrepresentation, and negligent
19    misrepresentation.
20              THE COURT:  Isn't the racketeering, though,
21    a state racketeering claim?
22              MR. PUIG:  Oh, I may have missed that
23    connection, Your Honor.  I apologize.  But some of
24    the RICO allegations that are in the complaint are
25    identical to RICO allegations that were in federal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    complaints.

2          THE COURT:  Well, but that's not uncommon.

3    I mean, that often happens where the state RICOs --

4    the same allegation satisfies both.

5          MR. PUIG:  Your Honor, at minimum, I think

6    this is more of an atmospheric point that I brought

7    up to tie in what are the policy rationales for

8    procedural misjoinder.

9          But again, to the extent that this matters

10   to Your Honor, I'm happy to send along some

11   complaints for Your Honor to take a look at.  The

12   thing that made me notice it was, there is a line in

13   the first paragraph that says something about a

14   corporate business plan.  That's, you know, something

15   of a memorable line.

16          Unless Your Honor has any specific

17   questions for me, I have nothing else to say.

18          THE COURT:  All right.  Thank you,

19   Mr. Puig.

20          Any other defendant want to speak on --

21   probably we're down to the motion to stay.

22          Well, let me say this.  I appreciate all

23   the hard work and arguments this afternoon, but I

24   think I'm still about where I started here.  I think

25   the best course is to do nothing here and relook at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   this in April and see if it's been transferred.  If

2   it hasn't been, then I may have some work.

3          I think somebody has got some work to do on

4   these motions to remand.  I think the industry may be

5   stretching federal jurisdiction in different ways

6   with some of these removals.  And I think anytime you

7   come to federal court and you want the Court to start

8   severing parties, you have and you should have an

9   uphill burden in doing that.  And I guess that's sort

10  of my reaction here:  I would not easily find that I

11  have federal jurisdiction.  I would not easily find

12  in the other cases that I have Grable jurisdiction on

13  the defenses.  It may have been the case in the

14  Balderas case.

15         So it's with some reservation that I don't

16  go ahead and reach the remand issues, but I do think

17  that the better course of MDL practice in the nation

18  and an orderly federal court suggest that I wait and

19  see if this one gets transferred.  I think at some

20  point, some judge is going to have to tackle these

21  remand issues and decide whether these cases should

22  remain in federal court.  I don't think that's

23  necessarily a slam dunk for the industry.  I think

24  there may be some issues here.  Like I said, I've

25  recognized the doctrine that the plaintiffs don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    like, but I have been slow to apply it, and I think

 2    federal courts should be slow to apply it because

 3    joinder is broad under the Federal Rules of Civil

 4    Procedure.  So I think it's going to take some real

 5    thought and real work to decide whether these cases

 6    should remain in federal court, but I don't think

 7    right at the moment I should expedite it and be the

 8    one to decide it.  I think that I should wait and see

 9    what the MDL is going to do.

10           So I'm just not going to do anything right

11    now, and I think that's the better course for a

12    while.  We'll look at it on April 1st, and if it's

13    not in Ohio, then I may have to sit down and start

14    doing some work on this case.

15           All right.  Is there anything else we need

16    to discuss while we're together?  Anything else I can

17    do for you?  Ms. Saucer?

18           MS. SAUCER:  No, Your Honor.  Thank you for

19    the hearing.

20           THE COURT:  All right.  Thank you,

21    Ms. Saucer.

22           From the defendants?

23           MR. PUIG:  No, Your Honor.  Thank you.

24           THE COURT:  All right.  Mr. Baker?

25           MR. DOUG BAKER:  Some of the defendants

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

113

 1    would like some guidance.  We have some upcoming

 2    deadlines to file motions to dismiss and/or answers

 3    to the complaint, and I'm wondering what your ruling

 4    means with regard to those upcoming deadlines.

 5            THE COURT:  Would the plaintiffs have any

 6    objection to just holding off, you know, and not

 7    requiring anything for a little bit?  What do you

 8    think?

 9            MS. SAUCER:  I think if they consented to

10    removal, then they should be bound by the rules in

11    federal court.  But I will gracefully concede and let

12    them do nothing after removal.

13            MR. DOUG BAKER:  Thank you, Your Honor.

14            THE COURT:  Anything else from the

15    defendants?

16            All right.  I appreciate your

17    presentations.  Have safe trips back, and I

18    appreciate your hard work.  Y'all have a good

19    weekend.  I'm going to get organized up here, so

20    don't pay any attention to me.

21            (The Court stood in recess.)

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   UNITED STATES OF AMERICA

 2   STATE OF NEW MEXICO

 3

 4              C-E-R-T-I-F-I-C-A-T-E

 5       I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 6   Official Court Reporter for the State of New Mexico,

 7   do hereby certify that the foregoing pages constitute

 8   a true transcript of proceedings had before the said

 9   Court, held in the District of New Mexico, in the

10   matter therein stated.

11       In testimony whereof, I have hereunto set my

12   hand on this 28th day of January, 2020.

13

14              _____

15              Jennifer Bean, FAPR, RMR-RDR-CCR, CRR
                Certified Realtime Reporter
16              United States Court Reporter
                NM Certified Court Reporter #94
17              333 Lomas, Northwest
                Albuquerque, New Mexico 87102
18              Phone:  (505) 348-2283
                Fax: (505) 843-9492
19              License expires:  12/31/20

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com