# Exhibit 10

# City of Santa Fe vs. Purdue Pharma LP, et al.
# D-101-CV-2019-01809

**Date:**  May 13, 2020

## TELEPHONIC STATUS CONFERENCE

LOUGHRAN COURT REPORTING
110 Second Street, S.W., Ste 602
Albuquerque, New Mexico 87102
505-243-9858

Telephonic Status Conference                City of Santa Fe vs.
5/13/2020                           Purdue Pharma LP, et al.

Page 1

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

No. D-101-CV-2019-01809

CITY OF SANTA FE,

        Plaintiff,

vs.

PURDUE PHARMA, L.P., et al.

        Defendants.


                TRANSCRIPT OF PROCEEDINGS
               TELEPHONIC STATUS CONFERENCE
           BEFORE THE HONORABLE BRYAN BIEDSCHEID
               NEW MEXICO DISTRICT COURT JUDGE
                  Wednesday, May 13, 2020

APPEARANCES:

For the Plaintiff:   SHERRI ANN SAUCER
                     FEARS NACHAWATI, PLLC


For Defendant Endo   JOHN B. POUND
Health Solutions:    JOHN B. POUND, LLC


For Defendants       LARRY D. MALDEGEN
McKesson:            MALDEGEN, TEMPLEMAN & INDALL, LLP

                     NATHAN SHAFROTH
                     COVINGTON & BURLING, LLP


For Defendant        MARK T. BAKER
Walgreens:           PEIFER, HANSON, MULLINS & BAKER, P.A.

                     LESTER C. HOUTZ
                     BARTLIT BECK, LLP


Transcribed by:      MARY K. LOUGHRAN, CRR, RPR, NM CCR #65

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                              Purdue Pharma LP, et al.

```
                                                            Page 2

    1        (Court in session at 10:27 A.M.)

    2                      * * * * *

    3        THE COURT:  The Court calls the matter of the City

    4   of Santa Fe vs. Cephalon, Inc., et al.  Case No.

    5   D-101-CV-2019-01809.  We are here for the purpose of a status

    6   conference.

    7             Just to make sure everyone is aware that I do

    8   recognize jurisdictional and other authority limitations, I'm

    9   not making any substantive rulings today.  But the reason I

   10   asked you all to participate in this conference is because

   11   about the time that I started receiving e-mails and other

   12   communications from counsel in a matter that, by my

   13   understanding and from my perspective had been removed from my

   14   court and was stayed, it seemed that the best course of action

   15   was for me to get a little input from counsel and make sure

   16   that I am not failing you in some fashion and I'm not becoming

   17   an irritating bottleneck, if I can avoid being that, because I

   18   certainly strive to avoid that.

   19             So with that, if I could hear from counsel for City

   20   of Santa Fe about your ideas on what I should be doing, or have

   21   failed to do, or whatever is appropriate for me to know, you

   22   may go.  And then I'm going to want to hear from maybe not

   23   every counsel for every defendant, or else we'll be here for

   24   quite some time, but at least if you've got any representatives

   25   from defendants that you would like me to hear from, I'll want
```

LOUGHRAN COURT REPORTING                        505-243-9858
110 2nd Street, SW #602                   Albuquerque, NM 87102

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                   Purdue Pharma LP, et al.

Page 3

1    to hear that, too.  So counsel.

2            MS. SAUCER:  Thank you, Your Honor.  Ann Saucer for

3    the City of Santa Fe.

4            THE COURT:  Thank You.

5            MS. SAUCER:  Your Honor, the City of Santa Fe ──

6    thank you, Judge Biedscheid.  We respectfully ask that the

7    Court write a letter to Ohio ──

8            THE COURT:  Okay, just one second, Ms. Saucer.  Do

9    you have a volume on your computer there?  Something is just

10   not quite coming through very clearly on this end.

11           MS. SAUCER:  Does it help if I'm closer?

12           THE COURT:  Why don't you say something now, and my

13   Court Monitor will tell me if she's able to get you on the

14   record or not.

15           MS. SAUCER:  Ann Saucer for the City of Santa Fe.

16           THE COURT:  Okay.  Well, please just be close and

17   speak as loudly as you can, and we'll try to overcome our

18   technological impediments here.  Please continue, and sorry for

19   the interruption.

20           MS. SAUCER:  The City asks that Your Honor write a

21   letter to Ohio Federal Judge Polster asking that he return the

22   City's case to Your Honor's court, the Court that has subject

23   matter jurisdiction over the claim.

24           In order to address the manmade epidemic of opioid

25   abuse, addiction, overdose and death, the City filed a public

LOUGHRAN COURT REPORTING                         505-243-9858
110 2nd Street, SW #602                    Albuquerque, NM 87102

Telephonic Status Conference                          City of Santa Fe vs.
5/13/2020                                         Purdue Pharma LP, et al.

                                                                   Page 4

 1   nuisance action in state court in Your Honor's court.  There is

 2   no authority whatsoever from New Mexico, or any persuasive

 3   authority elsewhere, that says that when a governmental entity

 4   files a case to abate a single public nuisance, that somehow

 5   the case needs to be split up into two different cases, and

 6   indeed two different jurisdictions.  Nonetheless, that was the

 7   reason for removing.

 8            When the defendants removed the case from Your

 9   Honor's court to federal court, the City of Santa Fe fought

10   hard.  We filed remand motions, motions to expedite, reply

11   briefs, and we opposed the stay, and we lost all of that.  As a

12   result, the case was transferred to Ohio.  We understand from

13   statements made by the Endo defendants in a different

14   New Mexico court that the way to get the case back is to have

15   the state court judge send a letter to Judge Polster.  That was

16   somewhat surprising to me, but we searched the thousands of

17   docket entries and found two letters.  Your Honor, thank you

18   very much for taking the time to read them.

19            The Court is correct that there is a coordination

20   element assessed in those letters under Pennsylvania and

21   Missouri law that does not have a parallel in New Mexico.

22   However, there are other reasons provided in those letters by

23   the Pennsylvania and Missouri judges to Judge Polster that do

24   apply in Santa Fe.

25            Briefly, we are happy to submit everything I'm about

LOUGHRAN COURT REPORTING                                  505-243-9858
110 2nd Street, SW #602                          Albuquerque, NM 87102

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                    Purdue Pharma LP, et al.

                                                          Page 5

 1    to say to the Court in the form of a proposal, a written

 2    proposal, if the Court would like.  If I may try to highlight

 3    the four points that were made in those letters that could also

 4    be made by Your Honor.

 5            THE COURT:  Before we even get to the four points,

 6    let me just ask, I'm still new enough at this job that every

 7    time I feel comfortable in it, then there is a proposal to do

 8    something that I've not experienced before.  So with that

 9    admission, I am not accustomed to writing letters to other

10    judges asking them to do things.  Typically a party in a case

11    files a motion, and the judge does something in the other case

12    that gets that case back to me.  So why is it that that feature

13    or process wouldn't work in this case where you would go to

14    Judge Polster and say, we think that the New Mexico court

15    should be able to proceed in this matter, please send it back,

16    and that judge would make that decision, versus me writing a

17    letter saying please do that?

18            MS. SAUCER:  Your Honor, first off, we agree with the

19    Court that this is unusual.  The reason why we cannot ask

20    Judge Polster himself is because he will not allow it.  In

21    Footnote 4 to the letter that we wrote Your Honor -- and again,

22    we thank you, Judge Biedscheid, for taking the time with us --

23    we quote two of the orders that Judge Polster signed forbidding

24    cities and counties.  Now, notably he's made an exception for

25    state remand motions.  But he will not allow the City to file

Page 6

1  anything.

2          Now, we can try -- I will tell Your Honor that I also

3  represent some counties in Texas that just tried to file a

4  motion for leave to file something, just asking that the JPML

5  remand the case, and that was immediately denied within a

6  couple of days by Judge Polster in a docket entry with no

7  reason.  And that was just a motion for leave to file

8  something, asking if we could ask the JPML something.  So when

9  this was pointed out in another New Mexico court, Endo's

10  counsel said that it was false, false and misleading,

11  extraordinarily misleading, demonstrably false -- there was

12  another adjective; I think extraordinarily disingenuous,

13  something like that -- for me to say that we're not allowed to

14  file a remand in order to get a case back, and he said that

15  Missouri got a case back and that's an example of how a case

16  can be returned.

17          So pursuant to those statements made, we're asking,

18  Your Honor, we're asking Your Honor to write a letter, because

19  when we researched this, indeed, in response to those two

20  letters, Judge Polster sent those cases back.  Why is the

21  letter writing exercise appropriate?  I don't know, honestly.

22          In our last footnote to the Court, we quoted Title 28

23  united States Code Section 1447, Subsection C, which says that

24  it's the responsibility of the federal court, the word shall

25  was used by Congress, to return the case to state court.  So

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                              Purdue Pharma LP, et al.

Page 7

1   why a letter by the state court judge to the federal court is

2   necessary, I don't know.  I'm just saying this is where we are

3   now.

4            And this is a very grave problem.  Santa Fe is a

5   high-intensity drug trafficking area.  The current crisis has

6   only exacerbated the existing problems and challenges facing

7   the City in trying to address this manmade public health opioid

8   crisis.  It's very important to the City, and so we are doing

9   everything that we can.

10           THE COURT:  All right.  Thank you.  Anything further

11   that I should know about that request?

12           MS. SAUCER:  If I may, just super briefly, and just

13   cut me off if I'm talking too long, the four main points made

14   in those letters that can be made by the Court are:

15           The gravity of the harm.  That was particularly

16   stated in the Missouri letter;

17           The ability of the plaintiffs to represent the

18   population.  That is certainly true in Santa Fe.  It's a unique

19   tri-cultural city that is representative democratically of the

20   population;

21           The importance of timeliness.  Timeliness was a point

22   made in both of those letters;

23           And finally, the reasonableness of the Court.  And I

24   can put those reasons in writing.  I can expand upon them more

25   if the Court wants me to.

LOUGHRAN COURT REPORTING                          505-243-9858
110 2nd Street, SW #602                    Albuquerque, NM 87102

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                               Purdue Pharma LP, et al.

Page 8

1          THE COURT:  Okay.  Obviously I'm going to hear from

2     counsel for the defendants, as well, but again, as I understand

3     my job to be not advocating for one side or the other, but

4     rather trying to properly administer and apply the rules so

5     that things are decided fairly, you know, how likely is it that

6     you would come up with a letter that contains statements like

7     the gravity of the harm caused by the defendants is so great

8     that you should remand this to me because I'm a great judge and

9     you should trust me to do this properly, and have the

10    defendants view that as a reasonable statement as to what

11    they've done and a reasonable characterization of the case,

12    that it doesn't unfairly favor you?

13         MS. SAUCER:  Well, that's an excellent point, Your

14    Honor.  A statement was made in the Missouri letter about the

15    gravity of opioids on the criminal docket.  If the Court feels

16    that Judge Rex Burlison -- he's an excellent judge in

17    St. Louis, Missouri -- went too far in making that statement,

18    then exclude it.  We are asking for a letter.  I really

19    believe, Your Honor, that we cannot fail to take any action to

20    be able to move this case, given the gravity of the harm.  And

21    if the Court believes that that type of statement is

22    inappropriate, don't put it in.

23         A statement that the City of Santa Fe is asking me to

24    write this letter, I have the ability to try this case, just a

25    very -- you know, if less is more, then we would be thrilled to

LOUGHRAN COURT REPORTING                              505-243-9858
110 2nd Street, SW #602                        Albuquerque, NM 87102

Telephonic Status Conference                     City of Santa Fe vs.
5/13/2020                                    Purdue Pharma LP, et al.

Page 9

 1    have the Court write that letter with whatever language the

 2    Court is comfortable with.  It would be great.  Just a letter

 3    to Judge Polster saying less or more.

 4              But many of the points made in these letters could

 5    also be made here.  If the Court is uncomfortable with the

 6    gravity of the harm, then that doesn't need to be in the

 7    letter.  But simply a statement that -- how about timeliness of

 8    management.  That's a phrase used in both of these letters,

 9    that the Court can, in a timely fashion, address these claims.

10    And the ability of the Court to address these claims.  Those

11    are mutual statements that we believe the Court can make in

12    reaching out to Judge Polster.

13              THE COURT:  Okay.  Thank you, that helps me out.

14              Is there counsel for a defendant that would like to

15    take a crack at illuminating my understanding from the

16    defendants' perspective?

17              MR. POUND:  Yes, Your Honor.  This is John Pound.

18    I'm going to be the lead-off batter, anyway, and I'll try to be

19    brief.

20              I've heard what the Court has said, and I want to say

21    this first, just for the record, because the Court has already

22    made it clear that it understands our objections to the idea

23    that the Court has any jurisdiction even to be holding this

24    status conference.  So we are appearing especially and want to

25    preserve on the record our contention that, to put it in plain

LOUGHRAN COURT REPORTING                              505-243-9858
110 2nd Street, SW #602                      Albuquerque, NM 87102

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                Purdue Pharma LP, et al.

Page 10

1  English -- I don't know what we're having here, but in our

2  opinion, because the Court has no jurisdiction over the case

3  we're talking about, this isn't even really a status

4  conference.  There's no animal in the law that I know of that

5  has a label that you can put on this phone call that we're

6  having with each other this morning.

7          But let me do this, and I will be brief.  I think it

8  might be of some help just to quickly go over some of the

9  chronology here to help put things in perspective.

10          The case was filed -- the case we're talking about

11  was filed in your court on November 26, 2019.  Well, actually,

12  before that.  It was removed to the federal court on

13  November 26, 2019.  At that point in time, and I won't beat a

14  dead horse here, I think we all understand from the law that at

15  that point in time, that day, this Court lost jurisdiction over

16  the case under 12 U.S.C. Section 1446.

17          On the 9th of December 2019, the plaintiff, as

18  Ms. Saucer says, filed a motion to remand.  That motion was

19  fully briefed, by the way, by the 6th of January 2020, my

20  point being that it was up and ready for determination by the

21  federal court in New Mexico as of early January.  Prior to

22  that, though, on the 10th of December 2019, the Judicial

23  Panel on Multidistrict Litigation conditionally transferred the

24  case to the MDL litigation in the United States District Court

25  for the Northern District of Ohio.

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                  Purdue Pharma LP, et al.

Page 11

1              On the 11th of February 2020, Judge Ken Gonzales
2    granted the defendants' motion to stay all proceedings, his
3    words, "pending likely transfer to multidistrict litigation."
4    On the 30th of March 2020, the United States District Court in
5    New Mexico transferred the case to the United States District
6    Court for the Northern District of Ohio for coordinated or
7    consolidated pretrial proceedings pursuant to the Federal
8    Statute 28 U.S.C. Section 1407.
9              Now, on April the 21st of this year, Ms. Saucer --
10   I hope I'm pronouncing your name correctly -- Ms. Saucer wrote
11   a letter to you.  In that letter, she asked you to assist the
12   plaintiff in seeking to persuade Judge Polster to remand this
13   case from the MDL court in Ohio.  In other words, she was
14   asking, to put it in plain English, she was asking for special
15   treatment for her client in what is a nationally coordinated
16   and consolidated matter, which precisely, of course, marchs
17   against the very reason why the MDL procedure exists, as was
18   pointed out, I might add, when the judge in New Mexico granted
19   the defendants' motion to stay.
20             In her letter to you, Ms. Saucer characterized
21   something that Mr. Puig, who is my colleague representing Endo,
22   had said in answer to a question Judge Browning put to him in a
23   hearing that was being held in the City of Albuquerque case.
24   In answering Judge Browning's question -- and if you'll bear
25   with me, I'm going to read just a snippet from that for you

LOUGHRAN COURT REPORTING                          505-243-9858
110 2nd Street, SW #602                     Albuquerque, NM 87102

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                  Purdue Pharma LP, et al.

```
                                                        Page 12
   1    here -- it was obvious and clear that, number one, Mr. Puig was
   2    responding to a question put to him by a judge.  We all know,
   3    of course, that we owe candor, that we have an obligation of
   4    candor to the tribunal whenever we're asked a question by a
   5    judge.  But let's put this in the right perspective here.
   6    Here's what the Judge said, and I'm reading starting on Page 81
   7    of that transcript.
   8            Judge Browning says:  "Has he granted some
   9        remand motion?"  He's speaking of Judge Polster.
  10            "MR. PUIG:  Yes."
  11            "THE COURT:  There have been a few?  And can
  12        you tell me what the character of those were?"
  13            "MR. PUIG:  Sure.  He's both denied and
  14        ordered remands, so he's bone both things.  He's
  15        taken up remand issues."
  16            Judge Browning:  "Is that about three motions
  17        that he's done?"  Then skipping some material, in
  18        particular going onto the next page, Mr. Puig says
  19        this:
  20            "Two weeks ago Judge Polster ordered remand
  21        in two Missouri cases brought by Missouri counties
  22        that were removed to federal court on the basis of
  23        federal question jurisdiction that had some unique
  24        issues.  So this idea that he's just sitting
  25        there --"
```

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                     Purdue Pharma LP, et al.

```
                                                          Page 13

 1              And then Judge Browning intervened.  The Judge said:

 2              "What were the circumstances of those cases?

 3       What caused him to send those back to state

 4       court?"

 5              "MR. PUIG:  The state court actually reached

 6       out to the MDL in that case and said, 'We have

 7       these other cases that are pending.'"

 8              Judge Browning:  "'We don't have enough work?

 9       We want some other cases?'"

10              Then Mr. Puig said -- and I want you to listen to

11       this carefully, Your Honor.  I know you do always, but --

12              THE COURT:  Just to make sure, because I'm looking at

13       the transcript, which page are you on?

14              MR. POUND:  I'm on Page 82.  No, now Page 83.

15              THE COURT:  Thank you.

16              MR. POUND:  I'm sorry, I should have said that.

17              So the Judge says:  "'We don't have enough work?  We

18       want some other cases?'"  I imagine there was some laughter in

19       the courtroom at that point.

20              "MR. PUIG:  I was shocked.  I was shocked.

21       But the state court actually reached out and said,

22       'We'd really love it if you'd address these two

23       remand motions, because we think these cases

24       belong in a coordinated proceeding down with us.'"

25              Now I'll stop reading at that point to make what I
```

LOUGHRAN COURT REPORTING                               505-243-9858
110 2nd Street, SW #602                        Albuquerque, NM 87102

Telephonic Status Conference                          City of Santa Fe vs.
5/13/2020                                       Purdue Pharma LP, et al.

Page 14

1    hope is an obvious point to you.  The kickoff point for

2    Ms. Saucer's request to you, as I understand her request, is

3    that she would be sort of a scrivener for you and write a

4    letter for you to sign and send on to Judge Polster.  And the

5    kickoff point that she uses is that Mr. Puig advised Judge

6    Browning that the appropriate procedure, I think her word was

7    the proper procedure in a situation like this, where a motion

8    to remand has been filed and has not yet been ruled on, but is

9    pending, is for the Judge in the state court who used to have

10   the case, but who has lost jurisdiction, should write a letter

11   to the Judge; in this instance, Judge Polster.

12           Now, that is absolutely incorrect, as you've just

13   seen.  Mr. Puig not only did not recommend that course of

14   action, but he said he was shocked, and to make his point, he

15   said it twice.  And it is shocking.  I mean, just to call a

16   spade a spade, what we're talking about here is a letter to be

17   sent by a state court judge who once had a given case, but the

18   case has been removed, to the judge who now has the case,

19   taking on an advocate's role, doing the bidding of one of the

20   parties in the case.  The plaintiff in this case would like the

21   case to be remanded, but the defendants don't think it should

22   be remanded.  That's an issue that's going to have to be

23   decided by Judge Polster, and will be decided by him.

24           For this Court to write a letter, no matter how

25   carefully the wording might be, the very fact of the letter

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                 Purdue Pharma LP, et al.

```
                                                        Page 15
 1    would communicate not only to Judge Polster, but to anyone who
 2    got wind of it, including newspapers, the public, that our
 3    cherished -- and I don't mean to sound flowery here, I'm being
 4    sincere -- our cherished concept of judicial independence would
 5    be violated.  You'd have a situation where one judge who
 6    doesn't have a case is writing a letter to another judge who
 7    does have a case, urging that that judge do something
 8    procedurally that one of the parties to the case would like to
 9    have done and the other parties feel would be inappropriate.
10            We think in addition to the fact that this Court does
11    not have jurisdiction, to write a letter like that would be to
12    violate that principle of judicial independence and neutrality.
13    So that's an important point for us to make, and I suggest for
14    the Court to ponder.
15            The real point here, though, again, or one of the
16    most basic points, and I need to emphasize it a bit, is we all
17    must remember that once a case is removed to federal court, the
18    state court loses jurisdiction unless and until the case is
19    remanded.  The decision on a motion to remand is for the Court
20    having jurisdiction, the federal court.  That decision is based
21    on the law.  It's not based on who can write the nicest letter
22    or who would like something to happen for strategic or for
23    tactical reasons.  No one seems to be denying that here, or at
24    least Ms. Saucer, I didn't hear her deny it.  As a matter of
25    fact, I heard her say this is a very unusual thing she's
```

LOUGHRAN COURT REPORTING                        505-243-9858
110 2nd Street, SW #602                    Albuquerque, NM 87102

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                  Purdue Pharma LP, et al.

                                                        Page 16

  1    suggesting the Court do, and in that, I took it as meaning that

  2    she agrees that this Court lacks jurisdiction.

  3              Now, there's something else that needs to be pointed

  4    out.  As you will recall, Judge Polster, when he entered his

  5    order in the case in the Northern District of Ohio that we're

  6    talking about here, the one where he talked about the letters

  7    he received from the judges in Missouri and Pennsylvania, at

  8    the very end, and I think you've seen this, on Page 3 of that

  9    order, he rung off this way:  "As the Court stated at the

 10    June 19th status conference, I will not entertain additional

 11    requests of this nature."  That is something, in my opinion,

 12    that counsel should have shared with you when she wrote her

 13    initial letter to you asking you to write your letter, or to

 14    write a letter to Judge Polster.  It would have been good, I

 15    think, and more thorough had she alerted you or warned you that

 16    Judge Polster has said he will not entertain letters of this

 17    type any further.

 18              Now, you might ask, why won't he do that?  Now, he

 19    didn't say it, but I think we all know why, because such

 20    letters represent a violation of the principle of judicial

 21    independence.  How would the Bar and the public perceive our

 22    judiciary if, say, Judge Brown were to try to influence

 23    Judge Smith on a ruling in a case entrusted exclusively to

 24    Judge Smith?  Judge, it's just a breathtakingly bad idea here

 25    for all the obvious reasons.

LOUGHRAN COURT REPORTING                              505-243-9858
110 2nd Street, SW #602                     Albuquerque, NM 87102

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                   Purdue Pharma LP, et al.

                                                            Page 17

    1              This morning I came in and looked, I just looked up

    2     to see if the Code of Judicial Conduct has anything to say

    3     about this, and I found, for example, Rule 102, 21-102.  It's a

    4     quick one sentence, but it says a lot.  "A Judge shall act at

    5     all times in a manner that promotes public confidence in the

    6     independence, integrity, and impartiality of the judiciary and

    7     shall avoid impropriety and the appearance of impropriety."

    8              And then I looked at Rule 21-210 of the Code of

    9     Judicial Conduct, Subpart A, which says:  "A Judge shall not

   10     make any public statement that might reasonably be expected to

   11     affect the outcome or impair the fairness of a matter pending

   12     or impending" -- whatever that means -- "in any court, or make

   13     any nonpublic statement that might substantially interfere with

   14     a fair trial or hearing."

   15              It kind of surprised me that the Rule went so far as

   16     to anticipate a situation where a Judge might make some sort of

   17     public statement in a case that is actually before him that

   18     indicates that he favors one side or the other, and then went

   19     on to anticipate that maybe in some instances Judge A might

   20     actually try to influence Judge B in a case before Judge B.

   21     And both things are included in what's forbidden in the Rule.

   22              So what we've got here, to wrap it up, is this Court

   23     lacks jurisdiction.  I think metaphysically we're not even

   24     having this conversation, because it's more like we're a group

   25     of lawyers assembled in a field someplace discussing the law.

LOUGHRAN COURT REPORTING                              505-243-9858
110 2nd Street, SW #602                      Albuquerque, NM 87102

Telephonic Status Conference                     City of Santa Fe vs.
5/13/2020                                    Purdue Pharma LP, et al.

Page 18

1   You don't have a case in front of you, and so we have nothing,

2   no jurisdiction here.

3           At any rate, to me the telling point, even the more

4   telling point, the less technical one, is as I said, it's a

5   remarkably bad idea.  It would set a terrible precedent,

6   practical, and if I might say, a legal precedent for the

7   reasons that you, yourself, alluded to as you kicked off this

8   phone call we're all having with each other.  So we would urge

9   you in the strongest possible way to let this cup pass from

10  your lips.  It's a dangerous cup for all of the obvious

11  reasons.

12          Judge Polster is a good Judge.  He's got the case

13  before him, and he's got a motion to remand all teed up for him

14  to rule on.  There's no reason in the world to believe he won't

15  rule on it.  And you've got enough to do, if you don't mind my

16  saying so.  As Judge Browning suggested, you don't really need

17  to be going around the country asking other judges to send

18  cases to you.  That's our position.

19          THE COURT:  Thank you.

20          MS. SAUCER:  May I respond, Your Honor?

21          THE COURT:  Well, just a moment.  Let me see if

22  there's anybody else that wishes to add something briefly to

23  Mr. Pound's statement, and then we'll go back to Ms. Saucer.

24          MR. MALDENGEN:  Your Honor, this is Larry Maldengen,

25  and my co-counsel, Nathan Shafroth, is on the phone.  We are

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                  Purdue Pharma LP, et al.

```
                                                        Page 19

 1   making a special appearance on behalf of McKesson Corporation

 2   and McKesson Medical-Surgical.

 3           We filed yesterday limited entries of appearance on

 4   behalf of our clients and a number of other clients.  I don't

 5   think that we need to re-state what was laid out in our special

 6   appearance.  I would ask that the Court truly focus on the

 7   jurisdictional issue, that it's clear that this Court has no

 8   jurisdiction, and as Mr. Pound points out, even if one letter

 9   were to be written, which would be inappropriate, Judge Polster

10   is not going to listen to it.  So I think we are wasting Your

11   Honor's time under these circumstances.

12           THE COURT:  All right, thank you.

13           MR. BAKER:  Your Honor, Mark Baker, especially

14   appearing for Walgreens.  I believe my colleague, Les Houtz,

15   from the firm of Bartlit Beck is on, as well.

16           I'm not going to rehash it, but writing a letter to

17   Judge Polster when he said he doesn't want such requests coming

18   in can't help but create the appearance of you taking sides on

19   an issue that's in front of him.  There's not a way to artfully

20   enough draft that letter that doesn't convey exactly that.

21           And I would just note that Judge Browning, who was in

22   a position to have the case, and actually had jurisdiction,

23   ended his hearing in the City of Albuquerque case that the

24   plaintiffs have relied on by saying that the best course for

25   him to do in this circumstance was nothing and allow the MDL
```

Telephonic Status Conference                City of Santa Fe vs.
5/13/2020                              Purdue Pharma LP, et al.

Page 20

 1    process to run its course, and that anything short of that
 2    would convey a taking of sides.  He'd read Federal District
 3    Court orders where local judges had raised to rule on a remand
 4    issue to keep it out of the conditional transfer process and
 5    took the position that that flags the Judge taking sides in an
 6    inappropriate way.
 7              I would just say that, going a step further, where
 8    you've had jurisdiction divested while the remand issues were
 9    considered, to reach in and write a letter over an order where
10    Judge Polster says he doesn't want further such requests from
11    local judges I think would be inappropriate and send the wrong
12    signal in addition to being on a matter where you don't have
13    jurisdiction.
14              THE COURT:  All right, thank you.  And I'll say, I'm
15    sensing some overlap in the statements being made by the
16    defendants at this point, so that I think I understand where
17    they're coming from.  Ms. Saucer, you can reply, and then we'll
18    move on.
19              MS. SAUCER:  Briefly, Your Honor.  The first point
20    made, I'm not trying to be an "scrivener" in my offer.  I
21    offered to submit a written statement because apparently
22    there's a problem with the audio that the Court told me about,
23    and on that topic I apologize for screaming my way through
24    this.
25              Second, on the issue of Mr. Puig being shocked,

LOUGHRAN COURT REPORTING                        505-243-9858
110 2nd Street, SW #602                  Albuquerque, NM 87102

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                   Purdue Pharma LP, et al.

                                                          Page 21

 1    shocked that remand was going on in the federal MDL
 2    establishment, yes, yes, that was in his statement.  However,
 3    what is omitted is the why it was that Judge Browning was
 4    asking the questions that he asked.  The reason why
 5    Judge Browning was asking those questions is because Endo's
 6    counsel, Mr. Puig, made a representation to him repeatedly that
 7    the statement that there was a moratorium on remand filings by
 8    counties and cities was false.  And I'm quoting here from
 9    Pages 79 through 81 of the transcript.  He said it was false,
10    it was false and misleading, it was demonstrably false.
11          So this is not a topic that Endo's counsel asked
12    about out of the blue.  It was a topic that Endo's counsel put
13    front and center by accusing me of basically lying.  And so
14    that's why Judge Browning was incredibly, perceivably asking,
15    well, if this is false, give me examples of this happening.
16          Now, on the issue of we should have alerted the Court
17    to something that Judge Polster said in docket entry
18    2000-something, or whatever the docket entry is, I find that
19    fascinating.  The (inaudible), which is fine, except for when
20    the defendants are winning and then after they win, they're
21    changing the facts upon which they won in the first instance.
22    The idea that I should have alerted you that Judge Polster
23    allegedly said in docket entry whatever it is that he wasn't
24    going to consider this anymore, allegedly he said that in July,
25    well, opposing counsel just read for you the representation

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                    Purdue Pharma LP, et al.

                                                            Page 22

 1    opposing counsel made in court that they won on that

 2    Judge Polster had done it two weeks ago, which was January of

 3    this year.  So they're complaining that I didn't alert you to

 4    an order by Judge Polster showing that what they said to

 5    Judge Browning wasn't true.  I find that to be remarkable.

 6              And finally, on this threat, or whatever it is,

 7    whatever counsel meant by quoting judicial canons, I'd like to

 8    talk about that.  There's an inference here that Judge Rex

 9    Burlison has done something wrong.  There's an inference here

10    that Judge Barry Dozor did something wrong.  Our point is that

11    when those letters were written by these judges, Judge Polster

12    sent the cases back.  He won't let me even file anything on

13    behalf of my client.  I tried.  But these two judges wrote

14    those letters and it worked, and Judge Polster sent the cases

15    back.

16              And one thing that's interesting about these

17    citations or quotations of judicial rules, I find that to be

18    extraordinarily curious because one of the opening phrases in

19    -- there's a reference in Judge Burlison's letter that he

20    discussed this with Judge Polster.  So I wonder if this is some

21    veiled threat about Judge Polster.  I don't know.

22              But these are the facts that the City of Santa Fe has

23    to contend with.  The City of Santa Fe is a high-intensity drug

24    trafficking area.  The City of Santa Fe is even harder hit now

25    because it relies on tourism, and that's dried up.  It's not

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                 Purdue Pharma LP, et al.

Page 23

 1    because of the population numbers.  It's not a (inaudible).  So

 2    all of the revenue harm is even worse now, and the City is

 3    doing the only thing the federal courts will allow us to do,

 4    which is the thing that Endo's counsel itself said was, or

 5    suggested was an option in their arguments, which they won.

 6    And that is, this letter writing.

 7             If the Court writes a letter to say, I've been asked

 8    to write a letter -- there was a Pennsylvania letter, and

 9    Judge Polster remanded.  Those are facts.  That letter was

10    written, and after that letter, those Pennsylvania cases were

11    sent back.  So whether we should be writing letters or

12    something else should happen, it worked.  Those clients got

13    their cases back in the court of subject matter jurisdiction.

14    Same as Missouri.  That worked.  Is that how it should work?  I

15    don't know.  I don't control that.  The fact is, that's the

16    only option left to us, and that's what was suggested by Endo's

17    counsel in arguments that they're now directly contradicting.

18             They won on those representations.  Therefore, we ask

19    that they be held to the things that they said in a different

20    court, the things that they told Judge Browning.

21             THE COURT:  All right, thank you very much.

22             First of all, I'd say I very much appreciate counsel

23    participating in this call, particularly in the, I guess maybe

24    most kindly one would say, ambiguous posture, because I

25    understand that ambiguity may exist largely in my mind and on

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                    Purdue Pharma LP, et al.

                                                              Page 24

 1    my e-mail, but in the rest of the universe be fairly clear, I

 2    think, that Judge Polster at the moment has jurisdiction of

 3    this matter.

 4              That being said, I was being asked to do something

 5    that I have not been asked to do before in a procedural posture

 6    that I have not dealt with before, and rather than sit in my

 7    office and play judicial oracle, having a hearing where I could

 8    benefit from the input of counsel seemed like a far smarter way

 9    to go.  So I guess it's admitting, perhaps, that I have

10    limitations as some of these judges in the other states that

11    wrote letters don't have that necessitated my request in this

12    regard, but I very much appreciate you all participating and

13    providing your input.

14              At this time, I am not going to write a letter to

15    Judge Polster.  We will see what Judge Polster decides when he

16    decides it with respect to remand or no remand.  It is not

17    because I don't understand and appreciate the problems of my

18    community, I think I do, or at least I strive to, but rather it

19    is because of my understandings of the process and my sense of

20    what is appropriate for me.

21              Frankly, I could see myself raising as many issues

22    down the road in this litigation if Judge Polster were to

23    remand it to me by essentially writing an informal motion of

24    remand that is desired by the plaintiffs and objected to by the

25    defendants.  I can see that causing as many or more problems

Telephonic Status Conference                City of Santa Fe vs.
5/13/2020                              Purdue Pharma LP, et al.

                                                              Page 25

 1    down the road in this litigation if it's remanded than not

 2    doing so will do.  One is going to result potentially in the

 3    passage of time, the other one I think could result in me

 4    appropriately being removed from the case and/or other things

 5    by virtue of having created an appearance that I'm not neutral

 6    and that I'm not being fair, and that is certainly something I

 7    seek to avoid because I want to be those things and strive to

 8    be.

 9            So I'm not going to write a letter.  I will say in

10    the future -- I would like to say one more thing, too, which

11    is, on the basis of what was submitted to me, which includes

12    the transcript in the federal hearing that was held in

13    Albuquerque, that I did review, I've not come away from this

14    hearing and this exchange, or maybe nonhearing gathering in a

15    field, whatever we call it, I'm not coming away from this

16    interaction with counsel feeling as if any one side has acted

17    inappropriately in asking me to do this.  I just feel like it

18    would be inappropriate for me to do it.  So I just want

19    everyone to know going forward, that's where I'm coming from in

20    this matter and no one should be concerned if it is remanded

21    that I've come away with any other impression of counsel,

22    whether it be counsel being worried that somehow I think canons

23    being read to me indicate that I'm not aware of them and don't

24    strive to comply with them, or counsel leaving thinking that

25    I've been asked to write a letter that I shouldn't be.  I just

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                 Purdue Pharma LP, et al.

Page 26

1    come away thinking that in my opinion, and as the person being

2    asked to write something, that that would not be appropriate

3    for me to do at this time.

4            So, we'll see what Judge Polster does and when

5    Judge Polster does it, and depending on his decision, you all

6    will certainly be welcome here in this court to litigate this

7    matter.  And I will also say, too, that I don't know what

8    Judge Polster is dealing with in the current COVID

9    circumstance.  I will confess that in this court we are

10   struggling with ways to safely and responsibly hold jury trials

11   and come up with new and unique procedural, and even more I

12   guess difficult to overcome spatial arrangements than we've

13   normally had.  So I will say that does add to both my

14   understanding as to why this might be taking a little while,

15   and also probably reduces my confidence that I could represent

16   to Judge Polster that, oh, yes, I'll get this thing in front of

17   a jury next week.  I would struggle mightily in terms of how to

18   represent that, because we are all confronting this in the

19   judiciary, as you are all, as well.

20           So for now, I guess I think it's appropriate to

21   adjourn the meeting in the field, but know that if this comes

22   back, you should all feel comfortable with it doing so.  Notify

23   me promptly, and we will move this forward on my docket and get

24   it tried as promptly as we can.

25           Is there -- given that I'm being told that I really

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                        Purdue Pharma LP, et al.

```
                                                       Page 27
 1   could never have accomplished anything this morning, I say with

 2   more irony than usual, is there anything else we can address in

 3   this matter this morning?

 4           Okay, I'm seeing Ms. Saucer indicating to the

 5   negative, and noting that I have not heard a single counsel

 6   from the defendants state that I could have done anything

 7   anyway, I'm going to take that as we're adjourned and you're

 8   dismissed.

 9                (Court in recess at 11:48 A.M.)

10                          * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Telephonic Status Conference                    City of Santa Fe vs.
5/13/2020                                   Purdue Pharma LP, et al.

```
                                                       Page 28

 1    STATE OF NEW MEXICO
      COUNTY OF SANTA FE
 2    FIRST JUDICIAL DISTRICT COURT

 3    No. D-101-CV-2019-01809

 4    CITY OF SANTA FE,

 5              Plaintiff,

 6    vs.                          TELEPHONIC STATUS CONFERENCE
                                   WEDNESDAY, MAY 15, 2020
 7    PURDUE PHARMA, L.P., et al.

 8              Defendants.

 9    _____

10

11               C E R T I F I C A T E

12          I, MARY K. LOUGHRAN, CRR, CRC, RPR, CCR #65, DO

13    HEREBY CERTIFY that I did, in stenographic shorthand,

14    transcribe the audio taped proceedings of the Telephonic Status

15    Conference set forth herein, and the foregoing pages are a true

16    and correct transcription to the best of my ability.  The tape

17    was of fair quality.

18          I FURTHER CERTIFY that I am neither employed by nor

19    related to nor contracted with (unless excepted by the rules)

20    any of the parties or attorneys in this matter, and that I have

21    no interest whatsoever in the final disposition of this matter.

22

23
                          _____
24                        Mary K. Loughran, CRR, CRC, RPR
                          Certified Court Reporter #65
25                        License Expires:  12-31-20
```

LOUGHRAN COURT REPORTING                           505-243-9858
110 2nd Street, SW #602                    Albuquerque, NM 87102