**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | JUDGE POLSTER |
| THIS DOCUMENT RELATES TO: "All Cases" | ) ) ) | |
| | ) ) ) ) ) | **ORDER DENYING WITHOUT PREJUDICE THE PEC'S MOTION FOR COMMON BENEFIT FEE ORDER** |

On January 28, 2020, the Plaintiffs' Executive Committee ("PEC") moved for entry of an Order establishing a common benefit fee fund. *See* docket no. 3112 (supplying a proposed order). The Court directed the PEC to "promptly provide notice of the Motion widely to as many interested parties as possible" and invited any interested party to file an opposition brief if they were so inclined. Amended Scheduling Order (April 4, 2020). The Court received about a dozen opposition briefs from various entities, including MDL defendants, plaintiff political subdivisions such as cities and counties, State Attorneys General, and so on.[1]

The PEC filed a reply brief along with an amended proposed order. *See* docket no. 3212.

---

[1] *See* docket nos. 3181 (37 State Attorneys General); 3185 & 3227 (State of Idaho); 3186 (various MDL defendants); 3189 (various cities and counties in 12 States); 3190 (Sarasota Cty. Hosp. District); 3191 (Baltimore); 3192 (various cities and counties in 6 States); 3193 & 3194 (guardians of NAS Babies); 3195 (three State Attorneys General); 3197 (hospitals); 3198 (MDL pharmacy defendants); and 3214 (MDL defendant Purdue). *See also* docket no. 3228 (motion to file surreply by defendant Cardinal).

The PEC's amendments to the proposed order were "made to address the concerns raised in the oppositions and to clarify any misunderstandings." Docket no. 3231 at 2.[2] After reviewing all of these submissions, and in his role as expert consultant to the Court, Professor William B. Rubenstein recommended the Court "solicit additional briefing from interested parties" regarding a number of complex issues. Docket no. 3319 at 1. The Court adopted this recommendation, docket no. 3320, and received another round of briefs.[3]

Having reviewed carefully all of the briefing submitted by plaintiffs, defendants, and numerous interested parties, the Court obverses there is a wide consensus confirming the accuracy of the PEC's statements that: (1) "scores of attorneys from the PEC firms and others" have "performed [work] for the common benefit of plaintiffs in the [MDL] proceedings," as well as in other opioid cases, reply brief at 3, 1 (docket no. 3212); and (2) those attorneys are entitled to some measure of "reimbursement and compensation of expenses and work incurred and performed for the common benefit" of those plaintiffs, *id.* at 1. The Court shares in this consensus. But for the reasons explained below, the Court deems it prudent to decline to enter an order imposing a common benefit assessment or establishing a common benefit fund *at this time.*

\* \* \* \* \*

Although numerous interested parties object to entry of the common benefit order as proposed by the PEC – because, for example, the proposed 7% assessment is too high, and/or would

---

[2] The PEC later suggested minor additional amendments to its proposed order. *See* docket no. 352 at 7 n.3.

[3] *See* docket nos. 3348 & 3350 (various cities and counties in 13 States); 3351 & 3354 (guardians of NAS Babies); 3352 (PEC); 3355 (various MDL defendants); 3356 (various MDL manufacturer defendants); 3357 (hospitals); 3358 (36 State Attorneys General).

apply to cases over which the MDL court has no jurisdiction – it is notable that most of these objectors still concede that: (i) the PEC and other law firms have performed work that has inured to the common benefit of at least some plaintiffs in opioid cases, and (ii) these attorneys deserve compensation for common benefit work.[4] These concessions are appropriate. Indeed, having recognized that plaintiffs' attorneys would surely perform "work that is in the common interest of the MDL," the Court early on entered an order setting guidelines to allow for eventual common benefit "award[s] of attorneys' fees and expense reimbursements." Docket no. 358 at 3, 2.

The threshold question presented by the PEC's motion, however, is whether entry of a common benefit order is appropriate *at this time*. The Court concludes the time is not ripe because plaintiffs and defendants state uniformly that, given current settlement negotiations, they anticipate a global settlement will probably moot the need for a common benefit order.

The very first question that Professor Rubenstein suggested the parties answer in their supplemental submissions was: "How likely is it that a global settlement will have specific funds

---

[4] *See, e.g.,* docket no. 3181 at 1 (State Attorneys General observing that "[m]embers of the PEC and other lawyers retained by local government plaintiffs in this MDL have engaged in valuable work pursuing the litigation," and a properly-limited common benefit fund would "ensure fair compensation for private counsel"); docket no. 3186 at 14 ("Defendants acknowledge that reasonable attorneys' fees may be a part of a negotiated resolution of these cases."); docket no. 3189 at 7 (various cities and counties in 12 States suggesting a common benefit order was appropriate, but only if it included certain "exclusionary language"); docket no. 3192 at 2 (various cities and counties in 6 States stating they "do not gainsay the value of the work that [the PEC] and other plaintiffs' counsel have completed in the present multidistrict litigation" and "[t]hese attorneys are entitled to just compensation for their important work"); docket no. 3193 at 6 (guardians of NAS Babies "do not contend that the PECs' efforts have conferred 'zero' benefit to their claims"); docket no. 3195 at 1 n.1 (three State Attorneys General suggesting "the Court may consider crafting an order creating a common benefit fund that would permit State Attorneys General, in their sole discretion, to participate voluntarily as they deem appropriate"); docket no. 3197 at 3 (hospitals stating it is not "their intent to disparage or diminish the efforts of the PEC or question whether any counsel should be appropriately compensated by those who benefit from members of the PEC's work").

to compensate all attorneys in these matters such that the Court will not need to render a common benefit order?" Docket no. 3319 at 7. Defendants answered that it was virtually certain:

> All parties within and outside of the MDL understand that provisions to pay reasonable fees and costs for qualifying representation of settled claims will be part of any global settlement to achieve complete peace at the scale contemplated by the parties. While Defendants will not violate confidentiality with respect to these settlement discussions, any final settlement would contain provisions for attorneys' fees.

Docket no. 3355 at 2. Plaintiffs said the same thing: "It is likely that a global settlement will provide a separate fund and/or other mechanisms for payment of both common benefit and private contractual fees and costs." Docket no. 3352 at 12.

The PEC suggests that, even though it appears highly likely the terms of a global settlement will provide for payment of common benefit fees, the Court should still enter a common benefit fee order to "operate as a default levy on recoveries" if the parties to some future partial or global settlement don't "agree on an alternative structure." *Id.* at 13. Plaintiffs assert such an order would even "incentivize" the parties to agree to a contractual mechanism for payment of common benefit fees "by putting in place a known default assessment if they do not." *Id.* Plaintiffs may be correct, but the objectors' briefing illustrates the difficulty with ensuring the accuracy and appropriateness of such a default and hence of having confidence that such an order would set incentives appropriately. The precise terms (financial and otherwise) for an equitable common benefit order will depend upon a host of moving parts including, among others, the amount of the settlement, the types of cases settled, the amount of common benefit work attributable to that particular settlement, the scope of fee agreements of other plaintiffs' attorneys whose cases are settled, knotty

jurisdictional concerns, and so on.[5] Because of the inordinate complexity of this MDL, the Court is hesitant to enter a "one-size-fits-all" common benefit order applicable by default to every possible settlement permutation[6] – especially because, at least at this juncture, both plaintiffs and defendants believe settlement negotiations will lead to a global agreement that would moot such an order.

To repeat, the Court acknowledges – and, as noted above, shares in – the widespread consensus that any fair settlement in this MDL should provide for payment of common benefit fees and expenses. Moreover, the Court agrees with the PEC's contentions that the terms and provisions set out in its proposed order are, generally speaking, consistent with those found in similar orders entered by other courts. Yet the Court concludes it is more prudent to defer entry of a common benefit order than to attempt to re-write those generally-familiar terms to fit the specific, complex particulars of this unique MDL at this critical juncture.

If a future settlement does not incorporate "mechanisms for payment of both common benefit and private contractual fees and costs," docket no. 3352 at 12, as the parties currently believe it will, the Court will reassess the difficult questions raised in the parties' briefing to ensure the lawyers who have undertaken the significant common benefit work in this colossal and complex MDL are properly compensated. To that end, the Court directs the parties to continue to heed the

---

[5] Of course, these factors are also normally examined by the Court *after* the settlement, when reviewing common benefit fee applications.

[6] As Professor Rubenstein observed: "[In this MDL,] there are numerous different types of plaintiffs (cities, counties, tribes, hospitals, third-party-payors, and so on) and dozens and dozens of different defendants involved in distinct aspects of the pharmaceutical chain (manufacture, distribution, retail sale, etc.). The permutations of possible settlements – and settlement types – are staggering. A single common benefit assessment levied on multiple different types of settlements involving many different types of plaintiffs and multiple defendants runs the risk of being too crude an approach." Docket no. 3319 at 5.

record-keeping requirements of its initial common benefit order, docket no. 358.

In closing, the Court directs the parties to notify it if a partial or global settlement that does not include provisions for payment of common benefit fees and costs seems imminent. This Order's deferral intends no prejudice toward the entry of a carefully-tailored common benefit order at such time.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** July 27, 2020