IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE:  
NATIONAL PRESCRIPTION  
OPIATE LITIGATION

Case No. 1:17MD2804  
Cleveland, Ohio

August 5, 2020  
1:04 p.m.

- - - - -

TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

BEFORE THE HONORABLE DAN A. POLSTER,

UNITED STATES DISTRICT JUDGE, AND

DAVID A. RUIZ, UNITED STATES MAGISTRATE JUDGE.

- - - - -

Official Court Reporter: Susan Trischan,RMR,CRR,FCRR,CRC  
7-189 U.S. Court House  
801 West Superior Avenue  
Cleveland, Ohio  44113  
216-357-7087  
Susan_Trischan@ohnd.uscourts.gov

```
 1    APPEARANCES:

 2    For the Plaintiffs:         Peter H. Weinberger, Esq.
                                  Hunter J. Shkolnik, Esq.
 3                                Salvatore C. Badala, Esq.
                                  Frank L. Gallucci, III, Esq.
 4                                Linda Singer, Esq.
                                  Donald A. Migliori, Esq.
 5                                W. Mark Lanier, Esq.
                                  Steven J. Skikos, Esq.
 6                                Troy Rafferty, Esq.
                                  Joseph Rice, Esq.
 7                                Paul J. Hanly, Jr., Esq.
                                  Paul Farrell, Esq.
 8
       For Walgreen Defendants:   Kaspar J. Stoffelmayr, Esq.
 9                                Kate Swift, Esq.

10
       For CVS Defendants:        Eric R. Delinsky, Esq.
11                                Sasha Miller, Esq.
                                  Graeme Bush, Esq.
12
       For HBC/Giant Eagle
13     Defendants:                Robert M. Barnes, Esq.
                                  Josh Kobrin, Esq.
14                                Scott D. Livingston, Esq.

15     For Defendant Discount
       Drug Mart:                 Timothy D. Johnson, Esq.
16

17     For Rite Aid Defendants:   Kelly A. Moore, Esq.
                                  John Lavelle, Esq.
18                                Greg Fouts, Esq.

19
       For Walmart Defendants:    Tina M. Tabacchi, Esq.
20                                John Majoras, Esq.
                                  Tara Fumerton, Esq.
21

22     ALSO PRESENT:              Special Master David Cohen

23

24     Proceedings recorded by mechanical stenography;
       transcript produced by computer-aided transcription.
25
```

```
 1                    WEDNESDAY, AUGUST 5, 2020, 1:04 P.M.
 2                    THE COURT:  All right.  Judge Polster
 3   calling in.  The access code got denied so I had trouble.
 4                    THE CLERK:  Okay.  Judge, do you want me to
 5   list who I know, or do you just want to start?
 6                    THE COURT:  No, we'll start.
 7                    Do you have a court reporter?
 8                    THE CLERK:  We do.  Sue Trischan is on the
 9   line.
10                    THE COURT:  All right.  Good afternoon,
11   everyone.
12                    This is our monthly status conference call
13   in Track One B, the case that's set for trial November
14   the 9th against the six pharmacies.
15                    The Court has reviewed the status report.
16   I've reviewed the jury questionnaire, made what changes
17   in it I thought were appropriate.  David Cohen has or
18   will be sending that back to counsel today.
19                    Anyone who has any suggestions or
20   modifications can certainly make them.  I think that
21   would probably be sent to the jurors probably early
22   October, so we have a little time if there are any, any
23   later developments.
24                    My plan is to ask our jury -- have our jury
25   department send the initial questionnaire to several
```

1 hundred -- I don't know how many hundred -- several
2 hundred prospective jurors at the end of this month,
3 simply asking for their availability and willingness to
4 serve as a juror for about one month starting November
5 9th.  And we'll see what kind of response we get.
6         I think in Track 1 I believe they sent the
7 questionnaire, the initial questionnaire, to four or 500
8 people.  I don't know if anyone remembers for sure.  But
9 it was four or 500.
10        THE CLERK:  It might have been 600,
11 actually.  They had to do it a second -- they had to send
12 out another bunch of them.
13        THE COURT:  All right.  Well, I'll discuss
14 with them how many they think they need to send out.
15 This time it may be more than that.  But that's -- that's
16 my plan.
17        I'm working on how best to configure the
18 courtroom for the November 9th trial to address concerns
19 with COVID.
20        One of the things I'm doing, we need to
21 limit the number of counsel who are going to be in the
22 courtroom.  I'm going to have the trial close-circuited
23 into two empty courtrooms in the courthouse.  Last time
24 it was one.  This time it will be two.
25        I believe -- I think counsel should arrange

1    to have the proceedings close-circuited into their
2    respective war rooms.  I know there were plans to do that
3    in Track 1 last October.  I don't think it ever happened.
4    It wasn't a necessity then.  I think it will be a
5    necessity now.
6              So there's a company you work with, I think
7    it's called Court Connect, and so I suggest both sides
8    work with Court Connect to work that out, because I think
9    we'll just have one counsel for each defendant and the
10   client rep at the counsel table.
11             And I'm going to try and get six tables,
12   and I don't know if we'll have one, one plaintiffs' table
13   or two.  We've got two plaintiffs, two counties, so we'd
14   have one or two lawyers and two client reps, but I think
15   that's how I'll do it.
16             As I mentioned last time, we should plan to
17   have as many witnesses as possible testify by video;
18   certainly out of town people.
19             Local witnesses, some of the Cuyahoga
20   County, clearly can appear in person, but I assume many
21   of the employees for the pharmacies are -- they work out
22   of town; many of the experts are from out of town.  I
23   would expect that virtually all of them will be
24   testifying by videoconference and so that should be
25   arranged.

|        |                                                                |
|--------|----------------------------------------------------------------|
| 1      | I think from looking at the schedule most                      |
| 2      | of the -- most lawyers are close enough that they can          |
| 3      | readily drive to Cleveland, either from the east coast or      |
| 4      | Chicago.  And since everyone's going to be here for more       |
| 13:13:10 5 | than a month, you'll be in the same hotel room or          |
| 6      | extended stay room, you don't have to worry about other        |
| 7      | people coming in or out.                                       |
| 8      | So I thought we ought to discuss if any --                     |
| 9      | any counsel have any suggestions for things, other things      |
| 13:13:35 10 | we need to do or think about to make the trial safe, this |
| 11     | is a good time to raise them.                                  |
| 12     | MR. STOFFELMAYR:  Judge, it's Kaspar                           |
| 13     | Stoffelmayr.                                                   |
| 14     | We've obviously been discussing this among                     |
| 13:13:54 15 | our group.  You know, I think everyone is obviously very  |
| 16     | hopeful that by November things will look a lot different      |
| 17     | than they do today, you know, and everyone's certainly         |
| 18     | got a lot they can do in the meantime with pretrial            |
| 19     | deadlines, but, you know, like I'm sure the Court and          |
| 13:14:14 20 | everyone on the phone, you know, people have a lot of     |
| 21     | concerns about their safety, about everyone's safety, you      |
| 22     | know, being in a courtroom for, you know, several weeks        |
| 23     | on end.                                                        |
| 24     | We'll have staff we'll be asking to move to                    |
| 13:14:29 25 | Cleveland, work out of hotel conference rooms and all     |

1 that.

2 So I think like everybody, there's just a
3 lot of unknowns, and we're all going to, you know, press
4 forward on the assumption that everything will fall into
5 place, but obviously we want to keep discussing this with
6 you.

7 THE COURT: Well, yeah, Kaspar, obviously
8 that's true.

9 And our Court has not resumed jury trials.
10 We had hoped, you know, back in June that we would start
11 them at the end of August. When we met last, we
12 determined we could not safely do that. The earliest
13 we're going to have jury trials is the end of September,
14 and we're meeting at the end of August, the end of this
15 month, to make a decision whether we're going to resume
16 them. I hope we can, but we'll make a collective
17 decision.

18 So clearly our Court's monitoring things,
19 as are Courts all over the country. I hope we will be
20 able to do it, but no one can predict the course of this
21 pandemic. Most predictions -- a lot of predictions have
22 been wrong. Sadly, there are a lot of people who aren't
23 doing what they need to do to protect all of us, and you
24 can't completely control that.

25 So we can just do the best we can and

1 monitor things, and we're monitoring things daily, but if
2 there are specifics, specific suggestions as to what we
3 can do to make things safer, we'll try to do them.
4 I'm really looking carefully at the
13:16:09 5 courtroom configuration. I'm meeting with some people
6 next week, and working on that to see what we can do.
7 MR. LANIER: Your Honor.
8 THE COURT: Yes.
9 MR. LANIER: Mark Lanier.
13:16:26 10 One of the things that we have changed
11 internally within our law firm and trial practice which,
12 if given the opportunity, we'd love to talk to the
13 appropriate people about is because of the social
14 distancing that's happening in the courtrooms and with
13:16:43 15 the juries, we've managed to acquire a flat screen TV, so
16 it doesn't require a projector, that is 9-feet tall and
17 16-feet wide so that the world can see it. And it can go
18 up against a wall at any height need be, which both
19 parties or all parties would be able to use.
13:17:07 20 But at the right time, if this seems to be
21 okay with you, we would talk to Special Master Cohen
22 about whether or not that might be of use.
23 The reason I bring it to your attention
24 right now is because you may dismiss it out of hand, or
13:17:25 25 if I bring it to Special Master Cohen's opinion and we

1  talk to him about it, it does require about three or four
2  different ports -- three or four plugs for electricity.
3  It's -- it uses electricity, and we'd want to make sure
4  it doesn't mess up everybody else in the courtroom and
5  courthouse.
6         But we've got a feature like that that will
7  make it very easy for the entire courtroom to see one
8  common screen, in addition to whether or not we have
9  smaller screens if we're able to put in various places.
10        So I just throw that out there, so if you
11 want to dismiss it offhand, I won't waste anybody's time
12 with it but --
13        THE COURT:  I'm not -- Mark, I'm not going
14 to dismiss it.  No one should dismiss any suggestions out
15 of hand.  No one's ever dealt with this before, so any
16 suggestion is potentially a good one.
17        So this would -- this would go against one
18 of the walls and so you'd have either documents or if
19 witnesses were testifying by videoconference they could
20 be -- they could appear on that large TV as well as
21 people's individual monitors.
22        Is that the idea?
23        MR. LANIER:  Yes, Your Honor.
24        And my concern is if we've got a witness --
25 and I've done a few dozen -- well, not a few dozen --

1  I've done over a dozen witnesses by live video
2  transmission at trial before, and one of the biggest
3  challenges is always to have the witnesses and documents
4  big enough for people to read on one common screen.
5  And so what we can do with this is, I mean,
6  it's high definition, it is -- you'd want to watch the
7  Superbowl on it. I mean, it's an incredible screen, but
8  it will be big enough for everybody in the courtroom to
9  see not only a witness in live video, but also a document
10 very clearly next to the witness.
11 And so it's got an ability to do that quite
12 well. And we'll send the specs on it and description to
13 Special Master Cohen and to the defendants and the tech
14 people for the defendants so that everybody can start
15 planning and looking toward it, if it is a viable option.
16 THE COURT: All right. If you can do that
17 promptly, because I'm -- I'm having a meeting with some
18 people actually next week, next Tuesday I think, to
19 really take a hard look at my courtroom and what's -- and
20 what's feasible and doable and safe.
21 MR. LANIER: It will be done by tomorrow.
22 THE COURT: Okay.
23 MR. DELINSKY: Your Honor, this is Eric
24 Delinsky on behalf of CVS.
25 THE COURT: Yes, Eric.

|    |    |
|----|----|
| 1  | MR. DELINSKY: To reiterate what |
| 2  | Mr. Stoffelmayr said, I think it's fair to say that the |
| 3  | safety of the Court, its staff, the jurors, and the |
| 4  | counsel and our staff and the witnesses obviously is the |
| 13:20:18  5 | most imperative concern here. |
| 6  | The concern obviously is real and we don't |
| 7  | know where it will lead us. And without suggesting that |
| 8  | other concerns are more important than the safety |
| 9  | concern, I will just say that -- |
| 13:20:52 10 | THE REPORTER: I'm sorry, you're kind of |
| 11 | muffled. I'm sorry. I'm sorry. |
| 12 | (Record read). |
| 13 | THE REPORTER: And I couldn't -- it was all |
| 14 | muffled after that. I couldn't understand. |
| 13:20:57 15 | MR. DELINSKY: I apologize. |
| 16 | I would just like to flag some other |
| 17 | issues, Your Honor, and perhaps get the Court's guidance |
| 18 | on how to proceed, if we should proceed now at all |
| 19 | because, frankly, then they would just be premature. |
| 13:21:11 20 | But, number one, there is somewhat of a |
| 21 | tension between proceeding as safely as possible yet |
| 22 | simultaneously allowing the parties to present the most |
| 23 | effective case and have the effective assistance of |
| 24 | counsel. |
| 13:21:33 25 | Having only one attorney in the courtroom |

1 during complicated examinations by way of example, Your
2 Honor, could be extremely difficult and, frankly,
3 untenable.
4 And likewise, presenting our entire case
5 virtually through virtual witnesses presents fairness
6 concerns as well that could be exacerbated if more of one
7 side's witnesses are available to safely testify in
8 person.
9 I don't have the solution to these issues
10 now, Your Honor, and I don't even know if they'll
11 manifest. We still have a few months to go.
12 But I did want to flag that, that we do
13 have these concerns about being able to present our
14 defense -- and I'm speaking for CVS now -- in a fair
15 fashion that enables us to put on a fair presentation.
16 I'd like to raise one other issue as well.
17 THE COURT: Let me -- let me -- let me just
18 stay -- let me stay with one issue at a time, the first
19 one.
20 We're all having to deal with something
21 we've never had to deal with, and it's imperative that
22 Courts be able to start having trials. And we haven't
23 had any jury trials in our Court since March.
24 We've been doing everything else necessary
25 virtually. We're going to have to start having trials.

1  They're going to be different than the trials in the
2  past.  All right?
3              So everyone's going to have to make certain
4  concessions.
5              It's important if this case isn't settled
6  that it be tried, and it will be tried.  And if I feel I
7  can try it safely on November 9th, that's when it will
8  go.
9              You know, I thought one counsel for
10 defendant at a table and one, one client rep.  I'll look
11 carefully if the tables may be big enough to have two
12 lawyers and one client rep.  They are pretty big tables
13 so, you know, maybe we can have two lawyers and a client
14 rep, and I'll look carefully at that when I go in next
15 week.
16             Obviously any witness who wants to come,
17 you know, is free to come.  I'm not -- I mean, anyone can
18 come in live.  They're free to come.  But I don't want
19 anyone to have to fly if they feel it's unsafe.
20 Obviously they can drive.
21             And I don't think coming in and out of the
22 courtroom is going to be a big problem, but that's just
23 the reality, and everyone's going to have to deal with
24 it.
25             Obviously we're monitoring the pandemic and

 1 particularly how it's going in Ohio. That's the main

 2 issue. But everyone's going to have to make adjustments.

 3 Everyone's been making adjustments since March, and we're

 4 going to have to be making adjustments for a long time.

13:24:48 5 That's just -- that's the new reality.

 6     Okay. What was your second issue?

 7     MR. DELINSKY: The second issue, Your

 8 Honor, and perhaps it's equally premature, is the issue

 9 of school closures.

13:25:06 10     If I'm reading the papers right,

 11 that's -- that's going to have a significant impact on

 12 our jury pool, and in candor, Your Honor, it's -- at

 13 least on myself it's going to have a very Draconian

 14 impact.

13:25:25 15     It's -- we don't know where this is going,

 16 Your Honor, but again I just wanted to flag these issues,

 17 and I want to ensure that at the appropriate time we'll

 18 have the opportunity to talk to you again about them.

 19     THE COURT: Well, you can raise it now,

13:25:45 20 Mr. Delinsky.

 21     I would think that our jury pool's

 22 obviously going to be affected by the pandemic and it

 23 will be for a long time. All right?

 24     There are going to be people over 65 who

13:26:01 25 are very reluctant to go into any sort of a gathering.

1  Okay? And they would have been fine to go into a
2  gathering and be on a jury last February. Well, they're
3  not this November. That's a reality.
4  There are going to be people who have young
13:26:22  5  kids who aren't going to be in school and will not be
6  able to be on a jury. That's a reality.
7  Okay. It's not going to be easy finding
8  twelve people, but we'll find them. We'll find twelve
9  people who are willing and able to serve.
13:26:44  10  I don't think anyone wants jurors who
11  literally have to be arrested to serve. Yes, I can make
12  anyone serve as a juror. I'm not about to make someone
13  serve as a juror who's genuinely concerned about their
14  safety. No one would want that person as a juror, no one
13:27:04  15  on the plaintiffs' side, no one on the defendants' side
16  and the Court wouldn't.
17  Again, this is the reality we're in. Who
18  knows when people are going to be able to feel safe
19  traveling. Who knows when schools will be open?
13:27:24  20  I don't believe that justice and trials can
21  stop until we have all those answers, and I'm not about
22  to stop it, so everyone should plan that we're going to
23  try this case November 9th.
24  Is there anything else? Any, any other
13:27:51  25  issues that anyone wants to bring up about how --

1     suggestions so that we can try the case as safely and
2     effectively as we can?
3                All right.  Well, anyone is welcome to make
4     those suggestions to me or Special Master Cohen anytime.
13:28:21  5     You don't have to wait until our monthly status
6     conferences, because we're feeling our way through this
7     and dealing with it as best we can.
8                Anything -- is there anything else?  There
9     weren't any other issues really that seemed to be fronted
13:28:42 10     for -- that needed discussion from the joint status
11     report, but are there any other issues that are sort of
12     ripe for me to weigh in on now or that you think are
13     coming that I ought to get ready to deal with?
14                Okay.  I don't seem to hear any.
13:29:10 15                I guess the last thing is the Court's
16     curiosity.  I've had zero communication either way with
17     the mediator, Judge Gandhi, and I don't plan to.  But I'm
18     interested to know if those discussions are ongoing, if
19     they're active, if you seem to be getting anywhere.
13:29:38 20                I certainly don't want any details, but I
21     am interested to know if the discussions are ongoing and
22     if you seem to be making any progress.
23                MR. WEINBERGER:  Judge, this is Pete
24     Weinberger.  I'll respond to that question.
13:29:56 25                We have had multiple conversations with

1  Judge Gandhi.

2  One was a joint Zoom meeting with the
3  defendants, and the others have been caucus meetings with
4  each side.

13:30:17  5  The last one that the plaintiffs had was
6  about 10 days ago, and so I would say that the
7  appropriate description is that we are having ongoing
8  discussions.

9  THE COURT: Okay. That's fine. Thanks,
13:30:38  10  Pete.

11  Anything -- anyone from the defendants who
12  want to elaborate? Again, I don't want any details, but
13  I'm just -- I'm glad that you're meeting with Judge
14  Gandhi.

13:30:50  15  MS. TABACCHI: Your Honor, this is Tina
16  Tabacchi from Jones Day.

17  I'll just add that we do continue to engage
18  with Judge Gandhi, and the pharmacies met with him last
19  week by video.

13:31:03  20  THE COURT: Okay. All right. Well,
21  I'm -- you know, we're three months from trial. That's a
22  long way, but we're getting closer.

23  So I believe it's in the interests of the
24  plaintiffs and in the interests of the defendants to
13:31:23  25  resolve this case. If you don't, we'll have the trial.

1       But one trial is just one trial.

2                We've got thousands of cases around the

3       country, Federal Court and hundreds in State Court, and

4       no one can try all these cases. And I remain convinced

13:31:44  5     that a resolution is preferable to that, but so I would

6       encourage both sides, as we get closer to this trial, to

7       be willing to make the kinds of compromises that would be

8       necessary to achieve a global settlement.

9                And Judge Gandhi has a very good

13:32:09 10     reputation, and I think if anyone can do it, he can, but

11      it requires hard work by both sides.

12               So I urge both sides to work hard and make

13      some compromises that would be necessary.

14               Okay. Is there anything else that anyone,

13:32:26 15     I guess, wants to say other than I guess we should

16      set -- set a time for our next meeting. And we've

17      generally been going about a month out, so that would

18      be -- well, we could look maybe around September 3rd.

19      Let's look.

13:33:15 20              Well, we could do it 1:00 o'clock on

21      Thursday, September the 3rd.

22               I figure about a month is right. Does

23      everyone agree that about a month is -- makes sense?

24               If anyone thinks we should do it sooner, we

13:33:47 25     can do it sooner.

|    |    |
|----|----|
| 1  | MR. STOFFELMAYR:  Judge, Kaspar. |
| 2  | I think approximately a month makes sense. |
| 3  | We're in constant contact with Special Master Cohen on |
| 4  | day-to-day issues. |
| 13:34:05  5  | THE COURT:  All right.  Well, do plaintiffs |
| 6  | agree, Mr. Weinberger, Mr. Lanier? |
| 7  | Does a month, roughly a month, sound okay |
| 8  | to you? |
| 9  | MR. WEINBERGER:  Your Honor, this is Pete. |
| 13:34:18 10 | Yeah, that's fine. |
| 11 | MR. LANIER:  Yes, sir. |
| 12 | THE COURT:  All right.  If something comes |
| 13 | up and we need one sooner, then we can, you know, |
| 14 | schedule it, but how about Thursday, September 3rd at |
| 13:34:31 15 | 1:00 o'clock? |
| 16 | MR. WEINBERGER:  That's fine, Judge. |
| 17 | MR. LANIER:  Thank you. |
| 18 | THE COURT:  And then we'll follow the same |
| 19 | protocol.  I guess we'll get a -- we can get a joint |
| 13:34:44 20 | status report noon on Monday, August 31st. |
| 21 | Okay.  Well, thanks, everyone. |
| 22 | And I hope you and your families continue |
| 23 | to stay healthy and safe, and we'll move forward on this. |
| 24 | MR. WEINBERGER:  Thank you, Judge.  Same to |
| 13:35:11 25 | you. |

```
1                THE COURT:  You're welcome.
2                We're adjourned then.
3                (Proceedings concluded at 1:35 p.m.)
4                        - - - -
5                  C E R T I F I C A T E
6                I certify that the foregoing is a correct
7    transcript from the record of proceedings in the
8    above-entitled matter.
9
10
11
12   /s/Susan Trischan
13   /S/ Susan Trischan, Official Court Reporter
14   Certified Realtime Reporter
15
     7-189 U.S. Court House
16   801 West Superior Avenue
     Cleveland, Ohio 44113
17   (216) 357-7087
18
19
20
21
22
23
24
25
```