UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION | ) | **CASE NO. 1:17-MD-2804** |
| OPIATE LITIGATION | ) | |
| | ) | **SPECIAL MASTER COHEN** |
| THIS DOCUMENT RELATES TO: | ) | |
| **"*Track Three Cases*"** | ) | <u>**SECOND**</u> |
| | ) | <u>**ORDER REGARDING**</u> |
| | ) | <u>**GEOGRAPHIC SCOPE OF**</u> |
| | ) | <u>**DISCOVERY**</u> |

One month ago, the undersigned issued an Order addressing the required geographic scope

of certain types of discovery, including Suspicious Order Reports ("SORs") and related documents.

*See* docket no. 3371 ("*Geographic Order*").  The *Geographic Order* reaffirmed the requirement that

Pharmacy Defendants must produce SORs on a national basis, with the understanding that SORs

meant only "reports [of suspicious orders] *sent by a registrant to the DEA*."  *Id.* at 3 n.7 (emphasis

added).  Regarding geographic scope of other documents related to SORs, such as (i) opioid orders

a Defendant flagged as suspicious but did *not* report to the DEA, and (ii) due diligence a Defendant

did to investigate flagged opioid orders, the undersigned directed the parties to attempt to reach

agreement.  *Id.* at 12-13.  As predicted, however, "Plaintiffs seek this information for at least all of

Ohio, and Defendants resist producing this information for more than the Track Three jurisdictions,"

so the parties were unable to reach agreement.  *Id.* at 13 n.18.  Accordingly, the Special Master now

issues another ruling.

The Special Master received letters from Defendants explaining that producing the requested discovery[1] would be unduly burdensome and disproportionate to the needs of the case. Defendants also point out that, in the earlier *Geographic Order*, the undersigned ruled that the geographic scope for due diligence files was limited to the Track Three counties, *see id.* at 11 (addressing Request for Production no. 5),[2] and Plaintiffs did not object to this ruling.

Having considered the parties' submissions, the Special Master rules as follows. As a general matter, Defendants describe two categories of documents related to suspicious orders for opioids. First, there are documents that simply chronicle the initial flagging of orders as suspicious or possibly suspicious.[3] These documents might be generated by hand or by computer. For example, Defendants may have had in place: (1) log-books where an employee at a distribution center manually noted an order was possibly suspicious; or (2) computer programs that automatically identified and periodically reported orders of unusual size. Indeed, some Defendants had combinations of several methods for flagging orders, and/or used different methods at different

---

[1] The requested discovery is discussed in an email from Peter Weinberger to Kate Swift (July 7, 2020). There, Plaintiffs define "Suspicious Order Report" as follows, for purposes of Track Three discovery requests: "[A] report or documentation of an order for Opioids or Opioid Products of unusual size, an order deviating from a normal pattern, or an order of unusual frequency including any order of interest that was flagged pursuant to any of your algorithms, formulas, or tests which you ever used to identify those orders, or orders that otherwise warranted additional review or investigation to determine whether the Order was a Suspicious Order. [This] shall include any documentation of the analysis of an order of opioids which you flagged including any Due Diligence performed on that order. [This] shall further include documentation of those orders that were reported to the DEA and those that were not.").

[2] Request for Production no. 5 sought "the Due Diligence files for each of your Pharmacies in Track 3."

[3] The parties use various terms in connection with flagged orders, including "suspicious," "possibly suspicious," "potentially suspicious," "orders of interest," and so on. Regardless of terminology, documents that chronicle (i) procedures and protocols for, and (ii) recording of, initial flagging of orders for review are discoverable.

2

times.

Second, there are "due diligence" documents reflecting efforts the Defendant undertook to investigate or review a flagged order and determine whether it was, in fact, suspicious or likely to be diverted.[4]

The Special Master concludes that, with two important exceptions, the required geographic scope for both categories of documents should be limited to the Track Three jurisdictions.  Plaintiffs make strong and valid arguments that the requested documents for the entire State of Ohio – not just the Track Three jurisdictions – are relevant and discoverable.[5]  However, the undersigned largely accepts Defendants' assertions that finding and producing all of these documents for the entire State of Ohio will be burdensome and expensive.  Defendants show that the number of flagged orders for the State of Ohio are as much as 24 times the number of flagged orders for just the Track Three jurisdictions.  The Special Master concludes that production of flagged order and due diligence documents for all of Ohio will not provide a proportional benefit – Plaintiffs will discover sufficient evidence of this sort from Track Three alone to allow their claims to be decided on the merits (especially when combined with information already discovered from Track One jurisdictions).

The first exception to this ruling is that, if a responsive computer-generated report, or log-

---

[4] *See Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206, 212–13 (D.C. Cir. 2017) ("Once a distributor has reported a suspicious order, it must make one of two choices: decline to ship the order, or conduct some "due diligence" and—if it is able to determine that the order is not likely to be diverted into illegal channels—ship the order (the Shipping Requirement).") (citing *Southwood Pharmaceuticals, Inc.; Revocation of Registration*, 72 FR 36487-01, 36,500  (Drug Enf't Admin. July 3, 2007)).  *See also Discovery Ruling No. 12* at 2-4 (docket no. 1174) (describing a distributor's obligations regarding suspicious orders and due diligence).

[5] Just as "differences in a Defendant's SORs identification across the State of Ohio or the country may . . . be highly relevant," so could differences in a Defendant's flagging of possibly suspicious orders and in its due diligence efforts.  *See Geographic Order* at 6 n.11.

book, or any other responsive document, contains information for the Track Three jurisdictions and *also* any other part of Ohio, then the document must be produced with all Ohio-related information. This is because it would actually be more burdensome for a Defendant to filter or redact the otherwise relevant Ohio-related information.[6]

The second exception is that Defendants must produce for all of Ohio due diligence documents connected to SORs they sent to the DEA (as distinguished from flagged orders or suspicious orders it did not send to the DEA). As noted above, Defendants are already obligated to produce on a national basis "reports [of suspicious orders] sent by a registrant to the DEA." *Geographic Order* at 3 n.7. Defendants have indicated that due diligence documents for those SORs are usually kept together with documents chronicling the SORs, themselves; accordingly, the additional burden of locating and producing due diligence documents related to those SORs is relatively small. The cost/benefit balance set out in Fed. R. Civ. P. 26(b)(1) establishes it is appropriate for Defendants to produce related due diligence documents for those reported SORs for the entire State of Ohio.

---

[6] The Special Master has repeatedly noted to Defendants that the burden of discovery production they identify is often self-imposed. That is, Defendants frequently protest they will have to comb through many files and documents containing nationwide information to produce only jurisdiction-specific materials. The easy solution, of course, is simply to provide all of the information, rather than filter or redact, especially since the extra-jurisdictional information usually has some (at least marginal) relevance. *See, e.g.*, Discovery Ruling No. 3 at 3 (docket no. 762) (narrowing the geographic scope of discovery in Track One even though "the Special Master remains convinced that all of the evidence defendants would produce within the seven named States would have some relevance to the bellwether trial"). This solution remains available to Defendants even after the rulings set out in this Order.

4

Any objection to this Order must be filed with the Court on or before August 17, 2020.

**IT IS SO ORDERED.**

**/s/ <em>David R. Cohen</em>**

**DAVID R. COHEN**

**SPECIAL MASTER**

**Dated:** August 12, 2020

5