IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*Track One-B Trial* | Case No. 1:17-MD-2804 |

**PHARMACY DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO PRECLUDE EVIDENCE OR ARGUMENT THAT DEFENDANTS COULD HAVE STOPPED DISTRIBUTING SCHEDULE II CONTROLLED SUBSTANCES**

The Court should bar Plaintiffs from offering evidence or argument that Defendants' mere act of distributing opioid medications provides a basis for imposing liability. Plaintiffs should not be able to argue that Defendants could have avoided liability by either choosing never to start distributing opioids or by voluntarily ceasing that distribution. The Supreme Court, the Sixth Circuit, and courts across the country have rejected "stop-selling" or "never-start-selling" theories of liability, and this Court should do the same.[1] Plaintiffs should not be allowed to argue or imply to the jury that it can base liability merely on the fact that Defendants distributed opioid medications, even if they did so in substantial compliance with the Controlled Substances Act.

In *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472 (2013), the Supreme Court considered whether federal law, which "prohibit[ed] generic drug manufacturers from independently changing their drugs' labels," preempted a state law that would have required the generic drug manufacturer to change its drugs' labels (and thus violate federal law). *Id.* at 475.

---

[1] Indeed, in the Track 1-A litigation, this Court granted Teva's motion *in limine* to preclude argument that certain Defendants "should have stopped selling generic opioids." Evidentiary Order at 50, *In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804 (N.D. Ohio Jan. 3, 2020)). This motion is based on the same logic, but reaches distribution, not manufacturing, conduct.

The Court concluded such state laws were preempted, and in reaching that conclusion it rejected the argument that the drug manufacturer could have avoided liability by choosing "not to make [the drug] at all." *Id.* at 488. The Court "reject[ed] this 'stop-selling' rationale as incompatible with [its] pre-emption jurisdiction," which presumed that actors are "not required to cease acting altogether in order to avoid liability." *Id.*

In the wake of that precedent, the Sixth Circuit has recognized that the so-called "stop-selling" theory is not a valid theory of liability. *See In re Darvocet, Darvon, & Propoxyphene Prods. Liability Litig.*, 756 F.3d 917, 925 (6th Cir. 2014) ("The *Bartlett* court rejected the 'stop selling' theory, namely that a generic manufacturer could have avoided the conflict between state and federal law by refraining from selling the drug."); *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 398 (6th Cir. 2013) ("Nor can the plaintiffs proceed on a failure-to-withdraw or stop-selling theory, a theory recently rejected by the Supreme Court in *Bartlett*."). So too have other federal courts. *See, e.g.*, *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 477 (4th Cir. 2014) ("[T]he stop selling rationale is an impermissible means of avoiding preemption under *Bartlett*."); *Beswick v. Sun Pharm. Inds., Ltd.*, 2018 WL 704399, at *7 (W.D.N.Y. Jan. 30, 2018) ("Insofar as Plaintiff's [claims] can be construed as alleging Defendant should have . . . pulled [its drug] products from the market, in *Bartlett* . . . . the Court flatly rejected the so-called 'stop-selling' rationale . . . .").

The Sixth Circuit and other federal courts have recognized for similar reasons that a "never-start-selling" theory (*i.e.* a theory of liability resting on the notion that the defendant could have chosen never to start an activity allowed by federal law) is also invalid. *See, e.g.*, *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 300 (6th Cir. 2015) (rejecting argument that "defendants should never have sold" the challenged product "for the same reasons the Supreme Court in *Bartlett* rejected the stop-selling" theory of liability); *Utts v. Bristol-Myers Squibb Co.*,

226 F. Supp. 3d 166, 186 (S.D.N.Y. 2016) (rejecting argument "that the defendants should never have sold" the at-issue drug); *Brazil v. Janssen Research & Dev. LLC*, 196 F. Supp. 3d 1351, 1364 (N.D. Ga. 2016) (rejecting argument that "[d]efendants should have never sold [the drug]").

As in *Bartlett*, federal law expressly allowed Defendants to distribute Schedule II controlled substances, including the opioid medications at issue in this case, so long as they substantially complied with the Controlled Substances Act in the process. *See, e.g.*, 21 U.S.C. § 822(b). Consequently, based on the logic of *Bartlett* and its progeny, Defendants may not be held liable based on the mere fact that they chose to exercise their lawful right to distribute the opioid medications at issue in this case. Plaintiffs should not be allowed to argue that Defendants could have avoided liability simply by electing not to distribute opioid medications, irrespective of whether they complied with the Controlled Substances Act while distributing. *See, e.g.*, *Bartlett*, 570 U.S. at 488; *Yates*, 808 F.3d at 300; *Strayhorn*, 737 F.3d at 398.

## CONCLUSION

For these reasons, Defendants request respectfully that the Court enter an order barring Plaintiffs from offering evidence or argument that Defendants' mere act of distributing Schedule II controlled substances—instead of halting distribution or declining to distribute in the first instance—as a basis for imposing liability.

| | |
|---|---|
| Dated: August 14, 2020 | Respectfully submitted, |
| | /s/ Eric R. Delisnksy (consent) |
| | Eric R. Delinsky |
| | Alexandra W. Miller |
| | ZUCKERMAN SPAEDER LLP |
| | 1800 M Street, N.W., Suite 1000 |
| | Washington, D.C. 20036 |
| | Tel: (202) 778-1800 |
| | Fax: (202) 822-4106 |
| | edelinsky@zuckerman.com |
| | smiller@zuckerman.com |

*Attorneys for CVS Indiana, L.L.C. and CVS Rx Services, Inc.*

 /s/ Timothy D. Johnson   (consent)
Timothy D. Johnson (0006686)
CAVITCH FAMILO & DURKIN, CO. LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, Ohio  44114
(216)621-7860
(216)621-3415 Fax
tjohnson@cavitch.com

*Attorney for Defendant Discount Drug Mart, Inc.*


/s/ Robert M. Barnes (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc., and HBC Service Company*

/s/ Kelly A. Moore (consent)
Kelly A. Moore, Esq.
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001

John P. Lavelle, Jr., Esq.
John.lavelle@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

- 4 -

T: 215-963-5917
F: 215-963-5001

*Counsel for Rite Aid of Maryland*

/s/ *Kaspar J. Stoffelmayr* (consent)
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
Email: kaspar.stoffelmayr@bartlitbeck.com
Email: brian.swanson@bartlitbeck.com
Email: kate.swift@bartlitbeck.com
Email: sharon.desh@bartlitbeck.com
Email: sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Phone: (303) 592-3100
Fax: (303) 592-3140
Email: alex.harris@bartlitbeck.com

*Counsel for Defendants Walgreen Co.*

/s/   Tara A. Fumerton
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601

Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*