UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| **This document relates to:** | Case No. 17-md-2804 |
| *Track One Cases:* | Hon. Dan Aaron Polster |
| *County of Summit, Ohio v. Purdue Pharma L.P.*, Case No. 18-OP-45090 (N.D. Ohio);* | |
| *County of Cuyahoga v. Purdue Pharma L.P.*, Case No. 17-OP-45004 (N.D. Ohio) | |

# PLAINTIFFS' OMNIBUS MOTION *IN LIMINE* AND MOTION TO MODIFY PRIOR EVIDENTIARY RULINGS AND MEMORANDUM IN SUPPORT

August 14, 2020

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES .......................................................................................................... II

ARGUMENT ................................................................................................................................ 1

A.  PLAINTIFFS REASSERT THEIR MIL NOS. 1-37 FROM THE TRACK 1A TRIAL. ....................... 1

B.  PLAINTIFFS REQUEST THAT THE COURT MODIFY ITS PRIOR RULINGS ON PLAINTIFFS' MIL
    NOS. 5, 23-24 & 28-37 .............................................................................................. 2

C.  PLAINTIFFS OBJECT TO THE COURT'S PRIOR RULINGS ON PLAINTIFFS' MIL NOS. 6-9, 15-
    17, 22; DEFENDANTS' MIL NOS. 1, 4, 14; DISTRIBUTORS' MIL NO. D-3; AND WALGREENS'
    MIL NO. W-3. .......................................................................................................... 7

D.  PLAINTIFFS' NEW MIL NOS. 38-42 ............................................................................ 10

    38.  Any reference to, or evidence of, matters for which Defendants have withheld some
         or all related discovery. .................................................................................... 10

    39.  Any evidence to support affirmative defenses or claims that Defendants met all
         pertinent regulatory requirements and/or that their conduct was based on alleged
         DEA guidance to the extent related discovery was withheld as privileged. ............... 13

    40.  Any reference to, or evidence of, any litigation between Summit or Cuyahoga County
         and its past or present employees. ....................................................................... 15

    41.  Any reference to, or evidence of, the firing of any County employee by Summit or
         Cuyahoga County. ............................................................................................ 17

    42.  Any reference to the efforts or actions of any Defendant, or its affiliates or
         employees, in connection with COVID-19, or the impact of COVID-19 on any
         Defendant, or its affiliates or employees. ............................................................. 18

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Abrahamsen v. Trans-State Exp., Inc.*,
  92 F.3d 425 (6th Cir. 1996) ..................................................................................11

*Alexander v. Wal-Mart Stores, Inc.*,
  No. 2:11-CV-752 JCM PAL, 2013 WL 427132 (D. Nev. Feb. 1, 2013)................................18

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*,
  No. CIVA H-02-4471, 2006 WL 6503363 (S.D. Tex. Jan. 10, 2006)....................................15

*Andover Healthcare, Inc. v. 3M Co.*,
  No. CV 13-843-LPS, 2016 WL 6404111 (D. Del. Oct. 27, 2016) .........................................15

*Ansell v. Green Acres Contracting Co.*,
  347 F.3d 515 (3rd Cir. 2003) ................................................................................19

*Auer v. Fla. Neurological Ctr., LLC*,
  No. 5:17-CV-411-OC-30PRL, 2019 WL 2451624 (M.D. Fla. Jan. 7, 2019) .........................17

*Collins v. Mariners Inn*,
  No. 09-12897, 2011 WL 4805433 (E.D. Mich. Oct. 11, 2011)..............................................17

*Diczok v. Celebrity Cruises, Inc.*,
  No. 16-21011-CIV, 2017 WL 3206327 (S.D. Fla. July 26, 2017) .........................................20

*Great Am. Ins. Co. of New York v. Lowry Dev., LLC*,
  No. 1:06CV097, 2007 WL 9723665 (S.D. Miss. Nov. 16, 2007) ..........................................18

*Haley v. Kundu*,
  No. 1:11-CV-265, 2013 WL 12030022 (E.D. Tenn. May 7, 2013) .......................................12

*Hayes v. Sebelius*,
  806 F. Supp. 2d 141 (D.D.C. 2011) .......................................................................17

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
  No. 2:11-CV-1857 DMC JAD, 2013 WL 5286189 (D.N.J. Sept. 16, 2013)...................17, 18

*In re Lott*,
  424 F.3d 446 (6th Cir. 2005) ..................................................................................14

*In re United Shore Financial Services, LLC*,
  No. 17-2290, 2018 WL 2283893 (6th Cir. Jan. 3, 2018)........................................................14

*In re Vioxx Products Liab. Litig.*,
  MDL 1657, 2005 WL 3164251 (E.D. La. Nov. 18, 2005) ....................................................20

*In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and PMF Products Liab. Litig.*,
 3:09-CV-10012-DRH, 2011 WL 6740391 (S.D. Ill. Dec. 22, 2011) .....................................19

*In re: Tylenol (Acetaminophen) Mktg.*,
 2436, 2016 WL 3125428 (E.D. Pa. June 3, 2016) .................................................................19

*Indiana Ins. Co. v. Gen. Elec. Co.*,
 326 F. Supp. 2d 844 (N.D. Ohio 2004).............................................................................1, 10

*It's Just Lunch Int'l LLC v. Nichols*,
 No. EDCV061127VAPOPX, 2009 WL 10674210 (C.D. Cal. Aug. 31, 2009) ......................15

*Jordan v. John Soliday Fin. Group, LLC*,
 1:09CV0707, 2010 WL 4281807 (N.D. Ohio Oct. 20, 2010) ...................................................1

*Levinson v. Westport Nat. Bank*,
 3:09-CV-1955 VLB, 2013 WL 2181042 (D. Conn. May 20, 2013) .......................................20

*Linear Grp. Servs., LLC v. Attica Automation, Inc.*,
 No. 13-10108, 2014 WL 4206871 (E.D. Mich. Aug. 25, 2014).............................................15

*Logistec USA, Inc. v. Daewoo Int'l Corp.*,
 No. 2:13-CV-27, 2015 WL 3767564 (S.D. Ga. June 17, 2015) .............................................17

*Long v. Fairbank Farms Reconstruction Corp.*,
 No. 1:09-CV-592-GZS, 2011 WL 5386593 (D. Me. Oct. 25, 2011).......................................18

*Louzon v. Ford Motor Co.*,
 718 F.3d 556 (6th Cir. 2013) ...................................................................................................1

*McLeod v. Parsons Corp.*,
 73 F. App'x 846 (6th Cir. 2003).............................................................................................16

*Miller ex rel. Miller v. Ford Motor Co.*,
 No. 2:01CV545FTM-29DNF, 2004 WL 4054843 (M.D. Fla. July 22, 2004) .......................20

*Monsanto Co. v. Bayer Bioscience N.V.*,
 No. 4:00CV01915 ERW, 2005 WL 5989796 (E.D. Mo. Oct. 28, 2005)...........................12, 13

*Morrison v. Ocean State Jobbers, Inc.*,
 180 F. Supp. 3d 190, 193 (D. Conn. 2016).............................................................................17

*New Phoenix Sunrise Corp. v. C.I.R.*,
 408 F. App'x 908 (6th Cir. 2010)...........................................................................................14

*Niver v. Travelers Indem. Co. of Illinois*,
 433 F. Supp. 2d 968 (N.D. Iowa 2006)...................................................................................19

*Precision Seed Co. v. Consol. Grain & Barge Co.*,
    No. 3:03-CV-079, 2006 WL 1281689 (S.D. Ohio May 8, 2006) ...........................................12

*Rasberry v. Columbia Cty., Arkansas*,
    385 F. Supp. 3d 792, 795 (W.D. Ark. 2019) ...........................................................................17

*Richardson v. Missouri Pac. R. Co.*,
    186 F.3d 1273 (10th Cir. 1999) ...............................................................................................17

*Roberts v. Roberts*,
    No. 4:07-CV-0025-HLM, 2009 WL 10672377 (N.D. Ga. Sept. 23, 2009)............................15

*Ross v. Am. Red Cross*,
    No. 2:09-CV-00905-GLF, 2012 WL 2004810 (S.D. Ohio June 5, 2012), *aff'd*, 567 F.
    App'x 296 (6th Cir. 2014) ...................................................................................11, 12, 16, 17

*Sadler v. Advanced Bionics, LLC*,
    No. 3:11-CV-00450-TBR, 2013 WL 1385386 (W.D. Ky. Apr. 3, 2013) ...............................19

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
    No. 1:06CV2781, 2009 WL 10689369 (N.D. Ohio Oct. 23, 2009).................................14, 15

*Tzoumis v. Tempel Steel Co.*,
    168 F. Supp. 2d 871 (N.D. Ill. 2001) ......................................................................................17

*U.S. ex rel. Kiro v. Jiaherb, Inc.*,
    CV 14-2484-RSWL-PLAX, 2019 WL 2869186 (C.D. Cal. July 3, 2019).......................19, 20

*U.S. v. Hayes*,
    219 Fed. Appx. 114 (3d Cir. 2007).........................................................................................19

*U.S. v. Walsh*,
    654 Fed. Appx. 689 (6th Cir. 2016)..........................................................................................1

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991).............................................................................................13, 14

*United States v. Eggleston*,
    No. 19-1748, 2020 WL 4548119 (6th Cir. Aug. 6, 2020) .......................................................18

*United States v. Lee*,
    No. 1:15 CR 445, 2015 WL 13226333 (N.D. Ohio Dec. 18, 2015) ..........................................5

*United States v. Lee*,
    No. 1:15 CR 445, 2017 WL 1296448 (N.D. Ohio Feb. 10, 2017)..............................................5

*United States v. Mason*,
    No. S2 06 CR. 80 (NRB), 2008 WL 281970 (S.D.N.Y. Jan. 25, 2008) ...................................13

*United States v. Ormat Indus., Ltd.*,
  No. 3:14-cv-00325-RCJ-(VPC), 2016 WL 4107682 ............................................................14

*United States v. Yannott*,
  42 F.3d 999 (6th Cir. 1994) ..................................................................................................9

*Walton v. Best Buy Co., Inc.*,
  No. 08-CV-15084, 2011 WL 13374383 (E.D. Mich. Apr. 6, 2011)................................16, 17

*Williams v. Nashville Network*,
  132 F.3d 1123 (6th Cir. 1997) ........................................................................................17, 18

**OTHER AUTHORITIES**

FED. R. EVID. 401 ........................................................................................................16, 17, 20

FED. R. EVID. 402 ........................................................................................................16, 17, 19

FED. R. EVID. 403 ..........................................................................................................4, 16, 17

FED. R. EVID. 404 ......................................................................................................................19

FED. R. CIV. P. 37 ..................................................................................................................11, 12

*Keenan v. Budish, et al.*,
  Case No. 1:20-cv-01421 (N.D. Ohio June 27, 2020)............................................................16

"Summit County facing potential lawsuit over jail inmate's death," *Akron Beacon
  Journal*, Aug. 27, 2019, available at
  https://www.beaconjournal.com/news/20190827/summit-county-facing-potential-
  lawsuit-over-jail-inmates-death ..............................................................................................5

Before the voir dire examination of the jury panel, Plaintiffs make this motion *in limine* and motion to modify prior evidentiary rulings. Plaintiffs seek to exclude matters that are inadmissible, irrelevant, or unduly prejudicial to the material issues in this case. If Defendants inject these matters in this case through a party, an attorney, or a witness, Defendants will cause irreparable harm to Plaintiffs' case that no jury instruction would cure. In an effort to avoid prejudice and a possible mistrial, and to avoid unnecessary trial interruptions, Plaintiffs make this motion. *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) ("'[A] motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'") (citation omitted); *U.S. v. Walsh*, 654 Fed. Appx. 689, 693 (6th Cir. 2016) (unpublished) (same); *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) ("Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose."); *Jordan v. John Soliday Fin. Group, LLC*, 1:09CV0707, 2010 WL 4281807, at *1 (N.D. Ohio Oct. 20, 2010) ("A motion in limine may also be used to prevent a jury from exposure to prejudicial evidence.").

Plaintiffs ask the Court to prohibit Defendants, and their counsel and witnesses, from offering any of the matters discussed herein without first asking for a ruling from the Court, outside the jury's presence, on the admissibility of the matter.

## ARGUMENT

### A. PLAINTIFFS REASSERT THEIR MIL NOS. 1-37 FROM THE TRACK 1A TRIAL.

In preparation for the Track 1A trial, Plaintiffs submitted 37 motions *in limine*. Doc. #2652 (Ps' CT1A MILs). For the reasons discussed in Plaintiffs' prior briefing, which is incorporated by reference as if fully set forth herein (*id.*; *see also* Doc. #2805 (Ps' CT1A MIL Reply)), Plaintiffs reassert these MILs for the Track 1B trial. Plaintiffs request that the Court enforce its prior rulings

regarding these MILs, except to the extent set forth below. *Infra* at §§ B-C.

**B. PLAINTIFFS REQUEST THAT THE COURT MODIFY ITS PRIOR RULINGS ON PLAINTIFFS' MIL NOS. 5, 23-24 & 28-37.**

On January 3, 2020, the Court memorialized its evidentiary rulings on the Track 1A parties' motions *in limine* ("Evidentiary Order"). Doc. #3058 (Evid. Order). In its Evidentiary Order, the Court stated that its MIL rulings would "apply to all future cases in this MDL that are tried by this Court" and that "a party may file a motion in an MDL case to modify the contours of rulings documented in [the Evidentiary Order] only if that party can show that the particular circumstances of an individual case warrant a revision." *Id*. at pp. 1-2. More recently, the Special Master confirmed that "the parties in Track 1B should consider the rulings in the *Evidentiary Order* applicable at their trial[,]" but permitted the parties to "seek modification of a ruling contained in the *Evidentiary Order* because there are particular circumstances that warrant revision." Doc. #3398 (CT1B MIL Order) at pp. 1-2. In accordance with the Court's instructions, Plaintiffs hereby request that the Court modify its prior rulings on Plaintiffs' MIL Nos. 5, 23-24 & 28-37.

The Court previously denied, either in whole or in part, a number of Plaintiffs' MILs dealing with issues related to damages and/or the conduct of Plaintiffs or their employees (MIL Nos. 24, 28-37):[1]

- **Plaintiffs' MIL No. 24 (evidence or argument that Plaintiffs failed to mitigate damages):** The Court denied this MIL because "whether Plaintiffs failed to mitigate damages [wa]s a factual determination for the jury" in the Track 1A trial. Doc. #3058 (Evid. Order) at pp. 46-47.

- **Plaintiffs' MIL No. 28 (references to deaths of individuals while in custody of Cuyahoga County Jail or Sheriff's Office, and any reference to U.S. Marshals Service's report on jails):** The Court denied this MIL without prejudice, agreeing with Defendants "that at least some of this evidence is directly relevant to issues in this

---

[1]   *See* Doc. #2652 (Ps' CT1A MILs) at pp. 29-31, 36-40; Doc. #2805 (Ps' CT1A MIL Reply) at pp. 30-33, 35-43.

case, including whether Defendants caused Plaintiffs' alleged damages (as opposed to other causes) and whether the County took sufficient actions to mitigate its damages." *Id*. at p. 71.

- **Plaintiffs' MIL No. 29 (references or allegations regarding current or former government corruption in Cuyahoga County):**  The Court granted this MIL as to "unsubstantiated allegations of government corruption[,]" but denied it as to any "evidence showing how corruption of County officials contributed to the opioid crisis, [because] this evidence could be relevant to issues in this case, including whether Defendants' conduct caused the alleged damages and whether Plaintiffs took sufficient actions to mitigate their damages."  *Id*. at p. 72.

- **Plaintiffs' MIL No. 30 (references to grand jury proceedings involving Cuyahoga County):**  The Court granted this MIL as to the fact of grand jury proceedings, but noted that "the underlying facts that led to any grand jury proceedings remain admissible." *Id*. at p. 17.

- **Plaintiffs' MIL No. 31 (references to recent investigations or subpoenas involving Cuyahoga County):**  The Court granted this MIL as to the fact of a criminal investigation or subpoena, but noted that "the underlying facts that led to any investigation or subpoena are fair game." *Id*. at pp. 17-18.

- **Plaintiffs' MIL No. 32 (references to indictment of Ken Mills, former Director of Cuyahoga County Jails):**  The Court granted this MIL as to the fact of Mr. Mills' indictment, but noted that "the underlying facts that led to any indictment are fair game." *Id*. at p. 18.

- **Plaintiffs' MIL No. 33 (references to investigations of former Cuyahoga County Sheriff Pinkney or the Cuyahoga County Sheriff's Office):**  The Court granted this MIL as to the fact of any such investigations, but noted that "the underlying facts that led to any investigation are fair game." *Id*. at p. 18.

- **Plaintiffs' MIL No. 34 (references to any "podcast" or other media coverage regarding the Cuyahoga County Courts):**  The Court denied this MIL without prejudice, noting it could not "determine the admissibility of this evidence in the abstract and instead will decide the issues as it may arise in the context of trial." *Id*. at p. 73.  The defendants had argued that such evidence could be relevant as to "causes other than Defendants' conduct that may have led to increased drug-related offenses in the court system." *Id*.

- **Plaintiffs' MIL No. 35 (references to any investigation regarding the death of Aniya Day Garrett):**  The Court denied this MIL without prejudice, declining to issue a blanket ruling pretrial but noting that the defendants would need to convince the Court of the relevance of such evidence before introducing it.  *Id*. at pp. 73-74.  The defendants had argued such evidence was relevant to show that increases in Cuyahoga County Children and Family Services costs were caused by something other than the opioid crisis.

3

- **Plaintiffs' MIL No. 36 (references or allegations regarding current or former government corruption in Summit County):** The Court granted this MIL as to "unsubstantiated allegations of government corruption[,]" but denied it as to any "evidence showing how corruption of County officials contributed to the opioid crisis, [because] this evidence could be relevant to issues in this case, including whether Defendants' conduct caused the alleged damages and whether Plaintiffs took sufficient actions to mitigate their damages." *Id*. at p. 72.

- **Plaintiffs' MIL No. 37 (references to deaths of individuals while in the custody of the Summit County Jail or Sheriff's Office):** The Court denied this MIL without prejudice, agreeing with Defendants "that at least some of this evidence is directly relevant to issues in this case, including whether Defendants caused Plaintiffs' alleged damages (as opposed to other causes) and whether the County took sufficient actions to mitigate its damages." *Id*. at p. 71.

Plaintiffs request that the Court modify its prior rulings on these MILs by granting them in full because, unlike the Track 1A trial, the upcoming trial is limited to the issue of Defendants' nuisance liability; the jury will not be making any determinations as to remedies. Doc. #3113 (1/29/20 Status Conference Tr.) at 27:9-14, 36:21-25, 37:18 – 38:25, 39:22-25.[2] Therefore, neither the conduct of Plaintiffs nor the specific damages they have suffered is at issue in the Track 1B trial. Allowing such evidence would unduly prejudice Plaintiffs, confuse and mislead the jury, and waste trial time. FED. R. EVID. 403.

Moreover, with respect to Plaintiffs' MIL Nos. 36 & 37, even if the Court determines that such evidence is still potentially relevant to the issues in this case as a general matter, Plaintiffs request that the Court's rulings on these MILs be modified with respect to certain specific examples of such evidence. In its ruling on MIL No. 36, the Court held that unsubstantiated allegations of government corruption in Summit County would be excluded, but that evidence of such conduct that is relevant to Plaintiffs' claims in this case would be allowed. Doc. #3058 (Evid. Order) at p. 72. The Court cautioned "that any introduction of this type of evidence at trial must

---

[2]    Moreover, in the Track 1A trial, Plaintiffs were also asserting claims under federal and Ohio RICO statutes and seeking compensatory damages. That is not the case for the upcoming trial.

be directly tied to the issues in dispute in this case." *Id*.  Plaintiffs anticipate that Defendants may attempt to introduce evidence regarding the indictment and conviction of Tamela M. Lee, a former member of the Summit County Council.  Ms. Lee was found guilty of taking bribes in exchange for favorable official action (*e.g.,* obtaining approval of a liquor license).  *See United States v. Lee,* No. 1:15 CR 445, 2015 WL 13226333 (N.D. Ohio Dec. 18, 2015); *United States v. Lee,* No. 1:15 CR 445, 2017 WL 1296448 (N.D. Ohio Feb. 10, 2017).  Her indictment and conviction are unrelated to opioids and, thus, have no relevance to any issue to be decided at the upcoming trial.  Accordingly, Plaintiffs request that the ruling on their MIL No. 36 be modified to exclude any evidence or argument regarding the indictment or conviction of Ms. Lee.

Similarly, in its ruling on Plaintiffs' MIL No. 37, the Court declined to issue a blanket exclusion of references to the deaths of individuals while in the custody of the Summit County Jail or Sheriff's Office, but cautioned the parties "that any introduction of this evidence must be directly tied to the issues in dispute in this case."  Doc. #3058 (Evid. Order) at p. 71.  Plaintiffs anticipate that Defendants may attempt to introduce evidence regarding the death of Brittany Rae Schlarb while she was an inmate in Summit County Jail.  *See, e.g.*, "Summit County facing potential lawsuit over jail inmate's death," *Akron Beacon Journal*, Aug. 27, 2019, available at https://www.beaconjournal.com/news/20190827/summit-county-facing-potential-lawsuit-over-jail-inmates-death.  Ms. Schlarb died of dehydration while detoxifying from methamphetamine. *Id*.  Her death was unrelated to opioids and, thus, has no relevance to any issue to be decided at the upcoming trial.  Accordingly, Plaintiffs request that the ruling on their MIL No. 37 be modified to exclude any evidence or argument regarding the death of Ms. Schlarb.

Plaintiffs also request that the Court modify its ruling on Plaintiffs' MIL No. 5, which sought to preclude references to the accommodations of, or the use of private aircraft for

transportation by, any witness, parties, or counsel.  Doc. #2652 (Ps' CT1A MILs) at pp. 3-4; Doc. #2805 (Ps' CT1A MIL Reply) at pp. 3-5.  The Court granted this MIL in part, precluding such evidence "for counsel, the parties, and lay witnesses," but denying the MIL as to such evidence for expert witnesses.  Doc. #3058 (Evid. Order) at pp. 57-58.  The Court reasoned that "issues relating to the direct and indirect compensation received by experts—including travel accommodations and the use of private aircraft—are relevant and fair game for the jury's consideration *with respect to expert witnesses only*."  *Id.* at p. 58 (emphasis in original). Importantly, the Court's ruling was issued prior to the spread of the COVID-19 pandemic in the United States.  Given the potential health risks now associated with commercial air travel, a variety of circumstances could arise that would require one or more experts to need to travel by private aircraft.  Their use of private aircraft under these unique circumstances is not probative of any potential bias.  The unfair prejudice of allowing such evidence substantially outweighs any minimal relevance.  Plaintiffs therefore request that the Court modify its ruling on Plaintiffs' MIL No. 5 to preclude evidence as to the travel accommodations and transportation used by any expert witnesses during the pendency of the COVID-19 pandemic.

Finally, Plaintiffs request that the Court modify its ruling on Plaintiffs' MIL No. 23, which sought to preclude any argument or suggestion that the "learned intermediary" doctrine limits the liability of any Defendant or absolves any Defendant from liability.  Doc. #2652 (Ps' CT1A MILs) at pp. 27-28; Doc. #2805 (Ps' CT1A MIL Reply) at pp. 29-30.  The Court granted this MIL in part, stating:

> Here, whether Defendants provided doctors with false and misleading information is a central issue for the jury to decide; thus evidence of Defendants' warnings to doctors is clearly relevant.  Similarly, whether the advice of doctors breaks the causal chain is a question for the jury.  Thus, Defendants may argue their warnings to doctors were accurate and whatever happened after that is the doctor's responsibility.  However, Defendants may not assert the mere existence of the

> Learned Intermediary Doctrine works to insulate them from liability on Plaintiffs' claims.  The overriding question is whether the Defendants' warnings were adequate.

Doc. #3058 (Evid. Order) at p. 46.  In the Track 1A trial, however, Plaintiffs were asserting claims against manufacturer defendants based on their improper marketing of opioids.  In the Track 1B trial, on the other hand, Plaintiffs are suing only pharmacy defendants based on their improper distribution of opioids.  Notably, in the Track 3 cases, which involve claims against pharmacy defendants based on their improper distribution and dispensing conduct, this Court recently held that the learned intermediary doctrine was "wholly inapplicable" in that context:

> Plaintiffs are not seeking to hold the Defendants liable for personal injuries to opioid users for harms caused by products or related warnings.  Plaintiffs' public nuisance claims instead pertain to broad harms to the public allegedly caused by the Pharmacies' dispensing conduct that implicates legal obligations independent of manufacturers, physicians, or any other participant in the opioid supply chain. The Pharmacy Defendants have not identified any legal authority that shifts their obligation to prevent diversion to any other person or entity, or otherwise establishes that prescribers are an intervening or superseding cause of Plaintiffs' alleged injuries.

Doc. #3403 (CT3 Order Denying MTDs) at p. 32.  Defendants' distribution conduct similarly implicates legal obligations independent of other participants in the opioid supply chain.  Thus, the learned intermediary doctrine is just as inapplicable in the Track 1B cases.  Plaintiffs therefore request that the Court grant their MIL No. 23 in full for the Track 1B trial.

**C.  PLAINTIFFS OBJECT TO THE COURT'S PRIOR RULINGS ON PLAINTIFFS' MIL NOS. 6-9, 15-17, 22; DEFENDANTS' MIL NOS. 1, 4, 14; DISTRIBUTORS' MIL NO. D-3; AND WALGREENS' MIL NO. W-3.**

> The Special Master's Order re Motions *in Limine* in Track One-B provides that

> each party may file a document simply listing all of the MIL rulings contained in the *Evidentiary Order* regarding which they do *not* believe there are particular circumstances in Track 1B that warrant revision, but to which they object. This document will work to ensure each party has preserved its objection to any MIL ruling contained in the Evidentiary Order, for the reasons stated in the original MILs and related briefing.

Doc. #3398 (CT1B MIL Order) at p. 2.  In accordance with these instructions, Plaintiffs hereby note their objections to Court's rulings denying, in whole or in part, the following MILs of Plaintiffs for the reasons set forth in Plaintiffs' prior MIL briefing: **No. 6** (comments or references to philanthropy or good deeds or acts carried out by the parties or their employees unrelated to opioid addiction prevention); **No. 7** (references to alleged malpractice claims involving parties' designated experts); **No. 8** (references to experts not testifying in this litigation, experts retained in other cases, experts that were de-designated in this case, or any scientific or other disciplines for which no expert has been designated by the opposing party); **No. 9** (use of deposition video or associated technology that alters the appearance of what was displayed at the deposition); **No. 15** (any reference to the DEA "approving" or "endorsing" a particular Defendant's SOM program); **No. 16** (suggestion or argument that DEA's failure to sanction or initiate enforcement actions against a particular Defendant demonstrates a determination by the DEA that the Defendant complied with the CSA or its implementing regulations, or gives rise to a presumption that Defendants complied with same); **No. 17** (suggestion or argument that FDA's failure to sanction or initiate enforcement actions against a particular Defendant demonstrates a determination by the FDA that the Defendant complied with the Federal Food, Drug, and Cosmetic Act or FDA regulations, or gives rise to a presumption that Defendants complied with same); and **No. 22** (references to deposition or trial testimony derived from witnesses produced only in litigation in which Plaintiffs did not participate, other than testimony that has been produced to Plaintiffs during discovery in this MDL that may be offered for impeachment purposes).  *See* Doc. #3058 (Evid. Order) at pp. 22-24, 27-29, 36-37, 65-66, 68-69;  Doc. #2652 (Ps' CT1A MILs) at pp. 4-7, 12-22, 25-27; Doc. #2805 (Ps' CT1A MIL Reply) at pp. 6-7, 14-23, 26-29.

Plaintiffs also note their objections to the Court's rulings granting, in whole or in part, the following MILs filed by the Track 1A defendants to the extent Defendants choose to re-assert them for the upcoming trial, for the reasons set forth in Plaintiffs' prior MIL briefing: **Defendants' MIL No. 1** (evidence or argument regarding future damages); **Defendants' MIL No. 4** (lay and hearsay testimony about prescription opioids being a "gateway" to illicit opioid use); **Defendants' MIL No. 14** (comments regarding the absence of a corporate representative at trial); **Distributors' MIL No. D-3** (evidence of criminal indictments and investigations without corresponding proof of a final judgment of conviction); and **Walgreens' MIL No. W-3** (evidence or argument referring to DEA witness Joseph Rannazzisi as the "60 Minute Man"). *See, e.g.,* Doc. #3058 (Evid. Order) at pp. 19, 47-48, 29-30, 65, 67-68; Doc. #2815 (Ps' Opp to Ds' CT1A MILs) at pp. 4-12, 17-21, 63-64, 87-88.[3]

In addition to noting their objections for the record herein, Plaintiffs reserve the right to urge the Court, outside of the jury's presence, to re-visit any of its MIL rulings if circumstances so warrant. *See, e.g., United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) ("A ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court. . . .  However, the district court may change its ruling at trial for whatever reason it deems appropriate.  The rationale is that facts may have come to the district court's attention which it did not anticipate at the time of its initial ruling.  This same rationale supports permitting a district court to change its ruling prior to trial if the reasons would support changing the ruling at trial.") (internal citations omitted).  Plaintiffs also reserve the right to object to the introduction of particular evidence at trial, regardless of whether it falls within the scope of

---

[3]     There are several other MILs from Track 1A defendants that the Court granted in whole or in part to which Plaintiffs object (*e.g.,* Teva's MIL Nos. TAD-8 and TAD-9), but they are defendant-specific and unlikely to arise in the upcoming trial.

a denied motion *in limine*.  *See, e.g., Indiana Ins.*, 326 F. Supp. 2d at 846 ("Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.  The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine.").

### D.  Plaintiffs' New MIL Nos. 38-42.

In addition to its prior MILs, Plaintiffs hereby submit several new MILs.  In order to minimize any confusion, Plaintiffs will continue the numbering used in their Track 1A MILs.  Accordingly, Plaintiffs request that the Court grant their MIL Nos. 38-42 for the reasons discussed below.

### 38.  Any reference to, or evidence of, matters for which Defendants have withheld some or all related discovery.

Defendants should not be permitted to offer evidence, testimony, or argument regarding matters for which they have failed to produce all related discovery.  During discovery in this case, Defendants have refused to produce certain documents responsive to Plaintiffs' discovery requests or to certify that all relevant documents have been produced.  In some circumstances, a Defendant has selectively produced certain documents on a particular issue that support its case, while withholding other related documents that may harm its case.  For example, as discussed further below (*infra* at MIL No. 39), Walgreens has produced certain evidence and testimony to support its argument that it fully complied with applicable statutes and regulations, while at the same time refusing to provide details and claiming privilege over the underlying facts regarding same.  Allowing Walgreens to present its cherry-picked evidence at trial would be unduly prejudicial, as Plaintiffs have been deprived of any meaningful opportunity to sufficiently prepare their case for

trial on this issue.  Such gamesmanship should not be rewarded.  *See Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428–29 (6th Cir. 1996) ("Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case.").

Pursuant to Federal Rule of Civil Procedure 37(c)(1), a party that fails to provide information, or supplement previously disclosed information, in accordance with its discovery obligations is precluded from using that information at trial, "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).  This Court has repeatedly affirmed this general rule, stating that the parties may only introduce evidence at trial that was produced in discovery. *See, e.g.,* Doc. #1055 (10/23/18 DR 8) at p. 5 ("[A]s a general rule, no party may rely at trial on documents or data they have not produced in discovery or which are otherwise unknown to opposing parties."); Doc. #1147 (11/21/18 Order) at p. 1, ¶ 1 ("The Court will not allow defendants to rely at trial, in any motion, or for any other reason, upon any evidence of the existence or method of operation of a SOMS that is not produced by this date."); Doc. #3058 (Evid. Order) at p. 41 ("Plaintiffs may only introduce evidence that they produced in discovery.").

"Absent sufficient justification, the Court may proactively limit the information and testimony that the sanctioned party is permitted to use at trial." *Ross v. Am. Red Cross*, No. 2:09-CV-00905-GLF, 2012 WL 2004810, at *7 (S.D. Ohio June 5, 2012), *aff'd on other grounds,* 567 F. App'x 296 (6th Cir. 2014).  Indeed, courts routinely grant motions *in limine* to preclude a party from introducing evidence that was not timely produced in discovery. *See, e.g., Ross*, 2012 WL 2004810, at *8, *11 ("[T]o the extent that additional information regarding Plaintiff's alleged damages exists, and to the extent that such information was not produced or otherwise made known to the Red Cross during discovery (in depositions, for example), Plaintiff is precluded from

11

introducing that information—through documentary evidence, witness testimony, or any other means—at trial."; "Untimely disclosure of evidence, without substantial justification or indication of harmlessness, is also a valid reason to exclude evidence under Rule 37(c)."); *Precision Seed Co. v. Consol. Grain & Barge Co.*, No. 3:03-CV-079, 2006 WL 1281689, at *7 (S.D. Ohio May 8, 2006) (granting defendant's motion *in limine* to exclude any evidence relating to damages allegedly suffered by plaintiffs that was not disclosed in discovery); *Haley v. Kundu*, No. 1:11-CV-265, 2013 WL 12030022, at *2 (E.D. Tenn. May 7, 2013) (granting plaintiff's motion *in limine* to preclude documents and witnesses not previously disclosed by defendants in discovery).

Moreover, to the extent any Defendants selectively produced discovery on a particular subject matter that is helpful to their case, while withholding related discovery that is detrimental to their case, they should be precluded from offering any evidence, testimony, or argument related to that specific subject matter.  This is particularly true here where most of the discovery Defendants withheld relates to their SOMS programs, which is an issue that goes to the very heart of Plaintiffs' liability case.  *See Monsanto Co. v. Bayer Bioscience N.V.*, No. 4:00CV01915 ERW, 2005 WL 5989796, at *8, *14, *19 (E.D. Mo. Oct. 28, 2005) (precluding parties from offering evidence or testimony regarding matters for which they did not produce *all* related discovery; "[I]t would not be fair to permit Bayer to rely on only those selective documents relating to the ACE project that Bayer chose to produce during discovery."; "The fact that Monsanto produced *some* discovery to Bayer relating to MON810 alternatives is insufficient.  This Court will not allow Monsanto to cherry-pick the documents relating to [this issue] that it *chooses* to produce during discovery. . . .  This Court holds that if Monsanto has produced *all* discovery related to a particular alternative, it will be permitted to rely on evidence relating to that alternative during the trial.  If *all* discovery was not produced on a particular alternative, Monsanto will not be permitted to rely

on *any* of the evidence related to that alternative.") (emphasis in original) (internal footnote omitted); *United States v. Mason*, No. S2 06 CR. 80 (NRB), 2008 WL 281970, at *3–4 (S.D.N.Y. Jan. 25, 2008) (precluding introduction of seizure evidence at trial and rejecting government's argument that only late-produced documents should be precluded; "Such a result would reward the government for its non-disclosures and be no sanction at all. . . . The timely disclosures by the government from the Miramar search were of highly incriminating materials. . . . To allow the government to introduce this evidence when it selectively failed to produce the remainder of the seized documents would invite mischief in the discovery process.").

39. **Any evidence to support affirmative defenses or claims that Defendants met all pertinent regulatory requirements and/or that their conduct was based on alleged DEA guidance to the extent related discovery was withheld as privileged.**

For all the same reasons discussed above (*supra* at MIL No. 38), and for the additional reasons discussed herein, Defendants should be precluded from introducing into evidence, or otherwise referring to, any documents or testimony regarding affirmative defenses or claims that they met all relevant regulatory requirements and/or that their conduct was based on alleged DEA guidance. Defendants have withheld as privileged documents and testimony regarding these affirmative defenses or claims. To the extent said information has been withheld, Defendants should not be allowed to maintain their related affirmative defenses or claims.[4]

A party may not use a privilege "to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *United States v. Bilzerian*, 926 F.2d 1285,

---

[4] On July 22, 2020, Plaintiffs submitted a motion to Special Master Cohen (via email) addressing this matter as it relates to Walgreens. Said motion, which is adopted and incorporated by reference herein, seeks (among other privilege-related discovery matters) to have the Special Master either: a) overrule Walgreens' SOMS and regulatory-related privilege claims, or b) prevent Walgreens from asserting all related affirmative claims (*e.g.*, that it has met all applicable regulations, it did not understand DEA guidance, etc.).

1292 (2d Cir. 1991).  "[L]itigants cannot hide behind the privilege if they are relying on privileged communications to make their case" or, more simply, cannot use the privilege "'as a shield and a sword.'"  *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) (quoting *Bilzerian*, 926 F.2d at 1292).  "[T]he privilege may be implicitly waived when defendant asserts a claim that in fairness requires examination of the protected communications."  *In re United Shore Financial Services, LLC*, No. 17-2290, 2018 WL 2283893 at *2 (6th Cir. Jan. 3, 2018) (quoting *Bilzerian*, 926 F.2d at 1292).  Thus, when Defendants use privilege as a shield to withhold relevant documents or testimony, they must be deemed to have abandoned any defenses/claims that would give rise to a waiver of that privilege.[5]

By way of example, Walgreens' discovery responses, deposition testimony, and affirmative defenses assert that it fully complied with federal, state, and local statutes and regulations.  However, Walgreens has repeatedly refused to provide details and has claimed privilege over the underlying facts regarding its knowledge of and compliance with these regulatory requirements.  Neither Walgreens nor any other Defendant should be allowed to claim it has met all applicable regulatory requirements while asserting privilege over the very information which would allow Plaintiffs to fully examine such claim.  *See New Phoenix Sunrise Corp. v. C.I.R.*, 408 F. App'x 908, 919 (6th Cir. 2010).  Courts regularly preclude such evidence under similar circumstances.  *See, e.g., Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, No. 1:06CV2781, 2009 WL 10689369, at *11 (N.D. Ohio Oct. 23, 2009) ("The only possible

---

[5]     *See United States v. Ormat Indus., Ltd.*, No. 3:14-cv-00325-RCJ-(VPC), 2016 WL 4107682, at **6, 9 (D. Nev. Aug. 1, 2016) ("[T]he court finds that [the defendant] has waived attorney-client privilege by affirmatively asserting its good faith belief in the lawfulness of its conduct. . . . [Defendant] may proceed with its good faith defenses and produce the relevant documents, in accordance with the discussion above, or preserve the communications' confidentiality by abandoning the defenses that giving rise to the waiver.").

relevance Defendants' reliance on the advice of counsel could have would be to defend against allegations of willful inducement.  If Defendants wished to rely on this evidence to show a lack of willful inducement, they should not have asserted the privilege.  Having chosen to use the privilege as a shield, it would be unfair on the eve of trial to permit Defendants to utilize these protected conversations as a sword, as well."); *Linear Grp. Servs., LLC v. Attica Automation, Inc.*, No. 13-10108, 2014 WL 4206871, at *6 (E.D. Mich. Aug. 25, 2014) ("Thus far, Linear has withheld all advice of counsel documents on assertion of attorney-client privilege. . . .  Consequently, although Linear maintains that it does not intend to rely on any advice of counsel documents, it has waived the use of any such evidence in support at trial.").[6]

**40.  Any reference to, or evidence of, any litigation between Summit or Cuyahoga County and its past or present employees.**

The existence of any litigation between either County and its past or present employees is not probative of any issue in this case.  As previously discussed, the only issue to be decided at the upcoming trial is Defendants' nuisance liability; the jury will not be determining any remedies.

---

[6]  *See also Andover Healthcare, Inc. v. 3M Co.*, No. CV 13-843-LPS, 2016 WL 6404111, at *2 (D. Del. Oct. 27, 2016) ("3M's witnesses will not be permitted to testify that they developed their product to have no crystallinity also, at least in part, to avoid infringement, as this would impermissibly permit 3M to use privilege (which 3M repeatedly asserted in its Rule 30(b)(6) deposition) as both a sword and shield."); *Roberts v. Roberts*, No. 4:07-CV-0025-HLM, 2009 WL 10672377, at *1 (N.D. Ga. Sept. 23, 2009) ("The Court cannot permit Defendant Roberts to use her Fifth Amendment privilege as both a sword and a shield, and therefore will preclude Defendant Roberts from testifying or offering any evidence at trial that would have been disclosed or produced if Defendant Roberts had not asserted her Fifth Amendment privilege."); *It's Just Lunch Int'l LLC v. Nichols*, No. EDCV061127VAPOPX, 2009 WL 10674210, at *2 (C.D. Cal. Aug. 31, 2009) ("A party cannot wield both a shield and a sword as to discoverable information; thus, Nichols cannot claim a privilege as to his tax returns and yet rely on them when helpful for his expert's testimony.  Therefore, Resha's trial testimony will be limited to those opinions that are not based on Nichols's tax return."); *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, No. CIVA H-02-4471, 2006 WL 6503363, at *4 (S.D. Tex. Jan. 10, 2006) (granting motion to exclude evidence concerning any infringement opinion that is not produced; "To permit Nuance to avoid the repercussions of [failing to obtain a timely infringement opinion] and to refuse to disclose the contents of any opinion that it eventually did obtain, but allow it to benefit from the mere existence of such an opinion, would be to allow Nuance to use the attorney-client privilege and the applicable precedents as both shield and sword.").

Thus, the conduct of Plaintiffs or their employees is entirely irrelevant.  For example, Defendants have requested to re-depose Ms. Margaret Keenan, the former Director of the Office of Budget and Management for Cuyahoga County.  After her employment was terminated, she sued Cuyahoga County, among others, alleging various civil rights violations related to her firing.  *See Keenan v. Budish, et al.,* Case No. 1:20-cv-01421 (N.D. Ohio June 27, 2020) at Doc. #1.  Plaintiffs anticipate that Defendants may question Ms. Keenan regarding these issues.  But neither her firing nor her lawsuit has anything to do with opioids.  *Id.*  Thus, such evidence has no probative value in this case and should not be admitted at trial.

Moreover, the mere "existence of other lawsuits is not evidence that any of the claims in those lawsuits are true, and admission of those allegations would be prejudicial.'"  *Walton v. Best Buy Co., Inc.*, No. 08-CV-15084, 2011 WL 13374383, at *11 (E.D. Mich. Apr. 6, 2011) (citation omitted).  *See also Ross*, 2012 WL 2004810, at *5 ("The Court finds that evidence of the filing or content of other lawsuits involving the [defendant] is inadmissible under Fed. R. Evid. 402 and 403. . . .  Unsubstantiated allegations from other individuals, in other cases and under different circumstances, are of minimal probative value in determining whether the [defendant's] alleged negligence proximately caused Plaintiff's injuries in this case.").  Defendants' sole purpose in trying to elicit such information would be to attempt to prejudice the jury against Plaintiffs for reasons that are unrelated to the matters at issue in this litigation.  Such evidence should therefore be excluded under Rules 401, 402, and 403 because it is irrelevant to the jury questions on liability and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading or inflaming the jury.  *See, e.g., McLeod v. Parsons Corp.*, 73 F. App'x 846, 854 (6th Cir. 2003) (trial court did not abuse its discretion in excluding evidence concerning other employment discrimination lawsuits filed against defendant); *Ross*, 2012 WL 2004810, at

16

*5-6 (granting motion to preclude evidence of other past or pending lawsuits involving the defendant), *aff'd,* 567 F. App'x at 308; *Collins v. Mariners Inn*, No. 09-12897, 2011 WL 4805433, at *2 (E.D. Mich. Oct. 11, 2011) (precluding plaintiff from offering evidence related to other lawsuits against defendant filed by employee or former employee); *Walton*, 2011 WL 13374383, at *11 (excluding evidence of other employment-related lawsuits).[7]

**41.**  **Any reference to, or evidence of, the firing of any County employee by Summit or Cuyahoga County.**

For the same reasons discussed above in Plaintiffs' MIL No. 40, references to, or evidence of, the circumstances surrounding the firing of any county employee by Summit or Cuyahoga County should be excluded.  This includes evidence of Ms. Keenan's firing in late December 2019. Such evidence has no relevance to any issue to be decided in this case.  Defendants' sole purpose in trying to elicit such information would be to attempt to prejudice the jury against Plaintiffs for reasons that are unrelated to the matters at issue in this litigation.  This evidence should therefore be excluded under Rules 401, 402, and 403 because it is irrelevant to the jury questions on liability and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading or inflaming the jury.  *See, e.g., Williams v. Nashville Network*, 132 F.3d

---

[7]  *See also Richardson v. Missouri Pac. R. Co.*, 186 F.3d 1273, 1278 (10th Cir. 1999) (trial court erred admitting evidence of plaintiff's previous lawsuit because it was irrelevant and "extremely prejudicial"); *Rasberry v. Columbia Cty., Arkansas*, 385 F. Supp. 3d 792, 795 (W.D. Ark. 2019) (granting motion to exclude evidence concerning other lawsuits involving plaintiffs); *Morrison v. Ocean State Jobbers, Inc.*, 180 F. Supp. 3d 190, 193 (D. Conn. 2016) (same); *Hayes v. Sebelius*, 806 F. Supp. 2d 141, 144–45 (D.D.C. 2011) (granting motion to exclude evidence of third party's lawsuit against defendant); *Tzoumis v. Tempel Steel Co.*, 168 F. Supp. 2d 871, 875 (N.D. Ill. 2001) (granting motion to exclude evidence of lawsuits filed by other employees of defendant); *Auer v. Fla. Neurological Ctr., LLC*, No. 5:17-CV-411-OC-30PRL, 2019 WL 2451624, at *1 (M.D. Fla. Jan. 7, 2019) (granting motion to preclude evidence that defendant was previously sued by former employees); *Logistec USA, Inc. v. Daewoo Int'l Corp.*, No. 2:13-CV-27, 2015 WL 3767564, at *2 (S.D. Ga. June 17, 2015) (granting motion to preclude evidence regarding defendant's lawsuits with other parties); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 2:11-CV-1857 DMC JAD, 2013 WL 5286189, at *4 (D.N.J. Sept. 16, 2013) ("This Court agrees with Plaintiff's assertion that evidence of other litigation involving Stryker has no probative value in the present case.").

1123, 1130 (6th Cir. 1997) (in failure to hire case, trial court did not err in excluding evidence of another applicant's non-hire because that other applicant applied for a different job, with different qualifications and hiring qualifications, some six years earlier than plaintiff did); *Alexander v. Wal-Mart Stores, Inc.*, No. 2:11-CV-752 JCM PAL, 2013 WL 427132, at *7–8 (D. Nev. Feb. 1, 2013) (granting motion to preclude evidence of termination of another of defendant's employees where there was "no evidence that [his] termination was connected to plaintiff's slip and fall incident"); *Great Am. Ins. Co. of New York v. Lowry Dev., LLC*, No. 1:06CV097 LTS-RHW, 2007 WL 9723665, at *2–3 (S.D. Miss. Nov. 16, 2007) (granting plaintiff's motion to exclude evidence that one of its employees was terminated).[8]

**42.** **Any reference to the efforts or actions of any Defendant, or its affiliates or employees, in connection with COVID-19, or the impact of COVID-19 on any Defendant, or its affiliates or employees.**

Defendants should not be permitted to mention any actions taken by them, their affiliates, or their employees in connection with COVID-19.  For example, no Defendant should be permitted to discuss any COVID-19 testing taking place at any of their retail pharmacy locations.  Nor should Defendants be permitted to discuss the impacts of COVID-19 on their business or employees.  Such matters are entirely irrelevant to the issues in this trial.  Given the nature of the global COVID-19 pandemic, and the justifiable public fears associated with the disease, any reference to

---

[88] *See also Howmedica*, 2013 WL 5286189, at *3 ("This Court agrees with Plaintiff's assertion that references to Stryker's recruiting and hiring practices regarding employees not involved in the instant suit are irrelevant.  Such evidence has no probative value in this case and must be excluded under Federal Rule of Evidence 401."); *Long v. Fairbank Farms Reconstruction Corp.*, No. 1:09-CV-592-GZS, 2011 WL 5386593, at *2 (D. Me. Oct. 25, 2011) ("Finally, GOPAC seeks to exclude evidence relating to the termination of its employee Staci McKee.  GOPAC argues that her termination is irrelevant and an extraneous issue likely to distract the jury from relevant issues in the case. . . .  The Court shares GOPAC's concern that any probative value of McKee's termination may be outweighed by all of Rule 403's countervailing considerations.  Therefore, Fairbank shall not attempt to offer or publish to the jury evidence relating to Ms. McKee's termination without first making a proffer outside the hearing of the jury.").

such matters would constitute an improper attempt to garner sympathy and/or bolster Defendants' character by unfairly prejudicing the jury in their favor.[9] *See United States v. Eggleston*, No. 19-1748, 2020 WL 4548119, at *3 (6th Cir. Aug. 6, 2020) (court did not abuse its discretion in excluding evidence that "might run the risk of currying jury sympathy with no countervailing probative value"); *Sadler v. Advanced Bionics, LLC*, No. 3:11-CV-00450-TBR, 2013 WL 1385386, at *2 (W.D. Ky. Apr. 3, 2013) (excluding references to philanthropic good deeds and other bolstering activity attributable to manufacturing company and its founder as irrelevant in a products liability suit regarding cochlear implants); *In re: Tylenol (Acetaminophen) Mktg.*, 2436, 2016 WL 3125428, at *8, *11 (E.D. Pa. June 3, 2016) (granting plaintiff's motion to exclude evidence or argument concerning the societal good defendants perform by manufacturing other drugs or products; "Evidence of the defendants' 'good corporate character' is not admissible in the defendants' case-in-chief under Rule 404(a). Evidence of the defendants' charitable work would have no probative value."); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and PMF Products Liab. Litig.*, 3:09-CV-10012-DRH, 2011 WL 6740391, at *16 (S.D. Ill. Dec. 22, 2011) ("Bayer is not allowed to argue to the jury, even in the punitive damages phase, that it is the company that introduced a drug or drugs that greatly benefited society in an effort to have the jury overlook any wrong the jury might otherwise find with the contraceptive at issue here.").[10]

---

[9] Evidence of prior or subsequent "good acts" is not permitted under Federal Rule of Evidence 404(b). While Rule 404(b) is most commonly utilized to exclude "bad acts," it also applies to "good acts," in what is commonly referred to as a "reverse 404(b)." *See U.S. v. Hayes*, 219 Fed. Appx. 114, 116 (3d Cir. 2007) (unpublished) ("The rule prohibits evidence of good acts if that evidence is used to establish the defendant's good character."); *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 520 (3rd Cir. 2003).

[10] *See also Niver v. Travelers Indem. Co. of Illinois*, 433 F. Supp. 2d 968, 994-95, 1000-01 (N.D. Iowa 2006) ("The court finds that unrelated 'good acts' simply are not relevant pursuant to Rule 401, and therefore, not admissible pursuant to Rule 402…."); *U.S. ex rel. Kiro v. Jiaherb, Inc.*, CV 14-2484-RSWL-PLAX, 2019 WL 2869186, at *4 (C.D. Cal. July 3, 2019) ("Relator's MIL #7 requests that Defendant be precluded from introducing evidence regarding supposed 'good acts,' such as charitable

(footnote continues on next page)

19

Notably, in granting in part an analogous motion *in limine* in the Track 1A case, this Court stated that "evidence that the parties and/or their employees are 'good citizens' and do good deeds . . . is not relevant to the issues in this case (unless another party offers evidence to the contrary)."  Doc. #3058 (Evid. Order) at pp. 68-69.

Dated: August 14, 2020

<div style="margin-left:40%">

Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

</div>

---

contributions or community service performed by Defendant or its employees.  The Court agrees and finds that any such evidence of 'good acts' is irrelevant to the alleged scheme of whether Defendant knowingly submitted false claims to CBP to receive lower duties."); *Diczok v. Celebrity Cruises, Inc.*, No. 16-21011-CIV, 2017 WL 3206327, at *2 (S.D. Fla. July 26, 2017) (granting motion to exclude evidence of witness's philanthropic efforts); *Levinson v. Westport Nat. Bank*, 3:09-CV-1955 VLB, 2013 WL 2181042, at *4 (D. Conn. May 20, 2013) (granting plaintiff's motion *in limine* "to exclude evidence relating to the Bank's community involvement such as its charitable contributions and its practice of lending to local businesses . . . as such evidence is not relevant to any claim or defense at issue"); *In re Vioxx Products Liab. Litig.*, MDL 1657, 2005 WL 3164251, at *1 (E.D. La. Nov. 18, 2005) (granting plaintiff's motion to exclude any evidence or testimony as to the defendant's good reputation and other good acts pursuant to Rule 401); *Miller ex rel. Miller v. Ford Motor Co.*, No. 2:01CV545FTM-29DNF, 2004 WL 4054843, at *4 (M.D. Fla. July 22, 2004) (granting plaintiff's motion to preclude evidence of defendant's good acts).

Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth St., 3rd Floor
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX 77069-3804
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Lead Trial Counsel*

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

21

Linda Singer
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
(202) 386-9626 x5626
(202) 386-9622 (Fax)
lsinger@motleyrice.com

*Counsel for Plaintiff Summit County, Ohio*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of August, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

*/s/Peter H. Weinberger*
Peter H. Weinberger

*Plaintiffs' Liaison Counsel*

22