# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track One Cases | |

# PLAINTIFFS' OMNIBUS MOTION *IN LIMINE*
## AND MEMORANDUM IN SUPPORT

September 25, 2019

purpose in trying to elicit such information would be to potentially prejudice the jury. Such evidence should be excluded under Rules 401, 402 and 403. *See Welding Fume*, 2010 WL 7699456, at *78 (granting plaintiff's motion to exclude references that impugn the motives of counsel or denigrate the basis for fees, including "any observation that plaintiffs' counsel get paid on a contingent basis"); *DePuy*, 2017 WL 9807464, at *2 (granting similar motion *in limine*); *In re Vioxx Products Liab. Litig.*, MDL 1657, 2005 WL 3164251, at *1 (E.D. La. Nov. 18, 2005) (granting plaintiff's motion *in limine* to exclude "[a]ny reference that the [p]laintiff's attorneys specialize [in] representing plaintiffs in personal injury or products liability litigation").

4.    **Any reference suggesting or in any way reflecting the financial status or resources of any of the attorneys representing the parties, or those attorneys' law firms, or any of those attorneys' other businesses or cases.**

Just as the circumstances under which, and the reasons why, any client seeks legal representation are not relevant to any issue to be decided by the jury in any case, so, too, are matters related to the financial status of the client's counsel. The only possible reason why Defendants would seek to comment on or introduce information about Plaintiffs' counsel's financial status, resources, other cases, or business interests would be to prejudice the jury. Such evidence should be excluded under Rules 401, 402 and 403. *See DePuy*, 2017 WL 9807464, at *3 (granting similar motion *in limine*); *Tylenol*, 2016 WL 3125428, at *6 (same).

5.    **Any references to the accommodations of, or the use of private aircraft for transportation by, any witnesses, parties, or counsel.**

As with the discussion regarding MIL No. 4 above, the ownership or use of private aircraft by any witness, any party, or any lawyer for the parties, or the accommodations used by any witness, party, or lawyer for the parties, is not relevant to any issue in this case. The only purpose of this information would be to attempt to prejudice the jury against the parties or their lawyers, and potentially cause the jury to decide the case on improper grounds rather than the relevant, admissible evidence presented at trial. Such evidence should be excluded under Rules 401, 402 and 403. *See Welding Fume*, 2010 WL 7699456, at *71 (granting plaintiff's motion to exclude evidence of

flying on private airplanes); *DePuy*, 2017 WL 9807464, at \*3 (granting similar motion *in limine*); *Tylenol*, 2016 WL 3125428, at \*6 (same).

6.  **Any comment or reference to philanthropy or good deeds or acts carried out by the parties or their employees unrelated to opioid addiction prevention (*e.g., references to community service or charity work, or charitable donations made by Defendants or any of their employees, statements that Defendants are "good corporate citizens," etc.*).**

With one limited exception,[1] Defendants should not be allowed to argue or suggest at trial that Defendants are "good" (including statements such that Defendants are "good neighbors," "good corporate citizens," or "employ a lot of people") or benevolent companies that benefit society, donate to worthy causes, or manufacture and market life-saving drugs or products that improve people's lives. Any such evidence, argument, or implication that is unrelated to opioid addiction prevention is not relevant to any fact at issue in this matter and would constitute inadmissible character evidence used to prove conduct in conformity therewith.[2] *See Sadler v. Advanced Bionics, LLC*, No. 3:11-CV-00450-TBR, 2013 WL 1385386, at \*2 (W.D. Ky. Apr. 3, 2013) (excluding references to philanthropic good deeds and other bolstering activity attributable to manufacturing company and its founder as irrelevant in a products liability suit regarding cochlear implants).[3]

---

[1] Plaintiffs' *limine* request does not seek to preclude evidence of Defendants' work related to opioid addiction prevention, although Plaintiffs reserve the right to object to such evidence at trial.

[2] Evidence of prior or subsequent "good acts" is not permitted under Federal Rule of Evidence 404(b). While Rule 404(b) is most commonly utilized to exclude "bad acts," it also applies to "good acts," in what is commonly referred to as a "reverse 404(b)." *See U.S. v. Hayes*, 219 Fed. Appx. 114, 116 (3d Cir. 2007) (unpublished) ("The rule prohibits evidence of good acts if that evidence is used to establish the defendant's good character."); *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 520 (3rd Cir. 2003).

[3] *See also Niver v. Travelers Indem. Co. of Illinois*, 433 F. Supp. 2d 968, 994-95, 1000-01 (N.D. Iowa 2006) ("The court finds that unrelated 'good acts' simply are not relevant pursuant to Rule 401, and therefore, not admissible pursuant to Rule 402…."); *U.S. ex rel. Kiro v. Jiaherb, Inc.*, CV 14-2484-RSWL-PLAX, 2019 WL 2869186, at \*4 (C.D. Cal. July 3, 2019) ("Relator's MIL #7 requests that Defendant be precluded from introducing evidence regarding supposed 'good acts,' such as charitable contributions or community service performed by Defendant or its employees. The Court agrees and finds that any such evidence of 'good acts' is irrelevant to the alleged scheme of whether Defendant knowingly submitted false claims to CBP to receive lower duties."); *Tylenol*, 2016 WL 3125428, at \*8, \*11 (granting plaintiff's motion *in limine* to exclude evidence or argument concerning the societal good defendants perform by manufacturing (footnote continues on next page)

safeguards similar to the circumstantial guarantees of trustworthiness found in other
exceptions to the hearsay rule. Because the opportunity to develop the former
testimony is necessary to ensure the trustworthiness of that testimony, the prior
testimony should not be admitted unless such an opportunity was afforded.

*Complaint of Paducah Towing Co., Inc.,* 692 F.2d 412, 418-19 (6th Cir. 1982) (internal citations omitted)
(reversing district court for admitting the testimony into evidence); *see also Murphy v. Owens-Illinois,
Inc.,* 779 F.2d 340, 343–44 (6th Cir. 1985) (deposition from prior case in which defendant was not a
party was inadmissible); *In re Polyurethane Foam Antitrust Litig. Direct Purchaser Class*, 1:10 MD 2196,
2015 WL 12747961, at *14 (N.D. Ohio Mar. 6, 2015) (denying defendant's request to use deposition
testimony taken in a companion *Urethane Antitrust Litigation* case at trial; "Because Plaintiffs had no
predecessor or other representative at the *Urethane* depositions of these witnesses, the testimony is
not admissible.").

Moreover, the Special Master specifically limited production of such transcripts in Discovery
Ruling No. 9 to depositions taken "on or before January 25, 2019." Dkt. #1118 at 2, 4. Although
the recently-entered Discovery Ruling No. 22 has now expanded that ruling to require Defendants
to produce deposition transcripts from other proceedings on an ongoing basis, the fact remains that
Plaintiffs did not have the benefit of post-January 25 transcripts during the discovery period and
were therefore deprived of the opportunity to take meaningful discovery of their contents.

**23.    Any argument or suggestion that the "learned intermediary" doctrine limits the
liability of any Defendant or absolves any Defendant from liability.**

The "learned intermediary" doctrine is recognized in Ohio as a common law doctrine, and it
has been codified as well. The Ohio Supreme Court described the doctrine in *Seley v. G.D. Searle &
Co.,* 423 N.E.2d 831, 834 (Ohio 1981), as follows:

A manufacturer of an unavoidably unsafe ethical (prescription) drug is not strictly
liable in tort to a consumer who has suffered injury as a result of ingesting that drug
where the manufacturer has provided adequate warning to the medical profession of
all potential adverse reactions inherent in the use of the drug of which the
manufacturer, being held to the standards of an expert in the field, knew or should
have known to exist at the time of marketing.

27

The doctrine is also codified at Ohio Rev. Code Ann. § 2307.76(C), which states in relevant part as follows:

> An ethical drug is not defective due to inadequate warning or instruction if its manufacturer provides otherwise adequate warning and instruction to the physician or other legally authorized person who prescribes or dispenses that ethical drug for a claimant in question and if the federal food and drug administration has not provided that warning or instruction relative to that ethical drug is to be given directly to the ultimate user of it.

The learned intermediary doctrine modifies the normal rule that a manufacturer of a product is required to provide adequate warnings to the end user. With prescription drugs, a manufacturer is ordinarily required to provide warnings only to physicians, who assess the risks and benefits of their patient using the drug.

Defendants should be precluded from offering argument or evidence that they are absolved from liability, or that their liability should be limited in any way, or that they fulfilled their obligations under the "learned intermediary" doctrine. The focus of the "learned intermediary" doctrine is on *who* the drug manufacturer is required to warn; it permits the manufacturer to warn the prescribing doctor rather than the end-user of the product. Plaintiffs do not contend that their injuries were caused by Defendants' failure to provide an adequate warning to them or to any patient. Rather, they contend that Defendants marketed their prescription opioids through false and misleading statements which both overstated the benefits of those drugs and understated the risks associated with their use. Thus, the issue is not *who* received the warning, but rather what the Defendants said and to what it extent their statements were false and misleading. For this reason, the ability of a drug manufacturer to meet its warnings burden by warning the doctor instead of the patient is irrelevant. Plaintiffs further note that, to the extent Defendants use the term "learned intermediary" to refer to their theory that the actions of doctors break the causal chain between Defendants' fraud and Plaintiffs' injuries, that argument has nothing to do with the "learned intermediary" defense and can only serve to confuse the jury by dressing in apparent legal garb an argument that has nothing to do with the doctrine being invoked.

24.    **Any reference to, or evidence of, any alleged "failure to mitigate" by Plaintiffs.**

Defendants should be precluded from offering any evidence or argument that either Cuyahoga County or Summit County "failed to mitigate" any damages they are claiming in this case. As a general rule, Ohio law utilizes a traditional "mitigation of damages" (sometimes referred to as the "doctrine of avoidable consequences") doctrine which provides that "[o]ne injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort." *BP Exploration & Oil Co. v. Maint. Servs., Inc.*, 313 F.3d 936, 943–44 (6th Cir. 2002) (citing *Johnson v. Univ. Hosps. of Cleveland*, 540 N.E.2d 1370, 1377 (Ohio 1989)).  However, there are several reasons why that doctrine should not be applied in this case.

First, "the obligation to mitigate does not require the party to incur extraordinary expense and risk." *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 1999-Ohio-62, 719 N.E.2d 955, 961-2 (Ohio 1999) (citing *S & D Mechanical Contrs., Inc. v. Enting Water Conditioning Sys., Inc.* 593 N.E.2d 354 (Ohio App. 2 Dist. 1991)).  And, "[t]he rule requiring one injured by a wrongful act of another to minimize the resulting damages does not require a party to do what is unreasonable or impracticable." *Parrish v. Machlan*, 722 N.E.2d 529, 532 (Ohio App. 1 Dist. 1997) (citing *Four Seasons Envtl., Inc. v. Westfield Cos.*, 638 N.E.2d 91, 92 (Ohio App. 1st Dist. 1994); *Foust v. Valleybrook Realty Co.*, 446 N.E.2d 1122, 1127 (Ohio App. 6th Dist. 1981)).  It is undisputed that both counties incurred significant costs and expense, and required the use of extensive government resources, in their efforts to address the opioid crises in their respective communities.  Government expenses always represent a balance between available revenue and public need, and governments do not have the same flexibility to reallocate expenditures and resources as individuals and corporations do.  Thus, in light of the fact that these governments *did* incur extraordinary expenses, which necessarily deprived them of the ability to use those expenditures on other needs, Defendants should be precluded from arguing they should have done even more.

Second, "[w]hen both parties have the same opportunity to reduce damages, a defendant cannot later contend that the plaintiff failed to mitigate." *Chicago Title,* 719 N.E.2d at 962.  Plaintiffs

have alleged that the harms caused in their communities resulted from Defendants' false and misleading marketing of their prescription opioid medications and their failure to adequately monitor and control the distribution of those dangerous products. Defendants should be precluded from arguing the counties should have done more when it was the Defendants' conduct that caused the problem in the first place. This is particularly compelling because if the Defendants had not falsely marketed their products, or had ceased doing so when the opioid crisis became apparent, and had used adequate distribution controls from the beginning, or implemented them sooner, those actions may have helped reduce the severity of harm suffered by the Plaintiffs.

Third, the general rule of mitigation of damages/avoidable consequences is discussed in the RESTATEMENT (SECOND) OF TORTS § 918. That section states as follows:

(1) Except as stated in Subsection (2), one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.

(2) One is not prevented from recovering damages for a particular harm resulting from a tort if the tortfeasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests.

Subsection 1 describes the general mitigation rule followed in Ohio, and has been cited favorably by the Ohio Supreme Court. *See Johnson*, 540 N.E.2d at 1377. Although Subsection 2 has not been specifically cited by any Ohio case (state or federal) Plaintiffs were able to locate, the rule makes sense. Where a defendant acts intentionally or recklessly, it should not be afforded the same courtesies as one who merely acts negligently. Applying that rule to this case, Defendants should be precluded from arguing Cuyahoga County and Summit County failed to mitigate their damages when the harms were caused by Defendants' intentional conduct in fraudulently misrepresenting their prescription opioid medications and in failing to impose adequate measures to oversee and control the distribution of those drugs.

Finally, numerous courts have held that the federal government has no duty to mitigate damages in fraud actions, including those brought under the False Claims Act. *See, e.g., United States v. United Techs. Corp.*, 950 F. Supp.2d 949, 954 (S.D. Ohio 2013); *U.S. v. Associates in Eye Care, P.S.C.*,

13-CV-27-GFVT, 2014 WL 12606508, at *5 (E.D. Ky. Nov. 14, 2014); *U.S. ex rel. Garrison v. Crown Roofing Services, Inc.*, CIV.A. H-07-1018, 2011 WL 4914971, at *2 (S.D. Tex. Oct. 14, 2011); *U.S. ex rel. Monahan v. Robert Wood Johnson U. Hosp. at Hamilton*, CIV. A. 02-5702 JAG, 2009 WL 4576097, at *8 (D.N.J. Dec. 1, 2009); *U.S. v. Aging Care Home Health, Inc.*, CIVA 3-02-2199, 2006 WL 2915674, at *1 (W.D. La. Oct. 6, 2006). The same rule should apply in this case. In a False Claims Act case, the federal government (directly or through a relator) is enforcing the public right to eliminate fraudulent claims which deplete federal treasuries, and here, Plaintiffs are seeking similar relief: seeking damages and other relief caused by strains on their resources directly caused by the Defendants. Defendants should not be permitted to second guess or critique Plaintiffs efforts to address a crisis caused by Defendants themselves.

## PLAINTIFF-SPECIFIC LIMINE REQUESTS

**25. Any reference to, or evidence of, the identities of any children, including but not limited to children in child protective custody.**

*See* below at MIL No. 26. For efficiency's sake, Plaintiffs have combined their argument on MIL Nos. 25 and 26.

**26. Any reference to, or evidence of, any individually identifiable health information or medical records related to any individual patients, including but not limited to information or records that identifies babies with neonatal abstinence syndrome or persons with opioid use disorder.**

Defendants should be precluded from disclosing facts that would potentially reveal the identity of any child, and in particular any child in protective custody;[23] or from disclosing individually identifiable health information related to any individual patients.[24] Plaintiffs anticipate

---

[23]   Given the level of publicity this case has attracted, Plaintiffs do not believe that identifying information about any child (whether or not in protective custody) should be disclosed during trial. Such evidence is completely irrelevant and would be unfairly prejudicial to the child or children identified. Plaintiffs cannot imagine that Defendants would seek to admit such evidence, or make such a reference, but in an abundance of caution, Plaintiffs request that they be precluded from doing do without first receiving a ruling from the Court outside the presence of the jury.

[24]   This type of protection was agreed to by the parties during the discovery phase of this litigation. (footnote continues on next page)

28.     **Any reference to deaths of individuals while in the Cuyahoga County Jail or in the custody of the Cuyahoga County Sheriff's Office, and any reference to the U.S. Marshalls Service report on jails.**

Any evidence of or reference to deaths of individuals while in the Cuyahoga County Jail or in the custody of the Cuyahoga County Sheriff's Office, and any reference to the U.S. Marshalls Service report on jails, is not relevant to any issue to be decided in this case.  The U.S. Marshalls Service issued a Quality Assurance Review of the Cuyahoga County Correctional Center from October 30 to November 1, 2018 which does not discuss opioids or substance abuse issues at the jail.  This evidence is irrelevant, as is any reference to deaths that occurred in the jail or while an individual was in the custody of the Sheriff's Office, because this evidence is unrelated to the claims or defenses at issue in this case.  Defendants' sole purpose in trying to elicit such information would be to attempt to prejudice the jury against Cuyahoga County for reasons that are unrelated to the matters at issue in this case.  Such evidence should be excluded under Rules 401, 402 and 403 because it is irrelevant to the jury questions on liability and damages and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading or inflaming the jury.

29.     **Any reference to or allegation of current or former government corruption in Cuyahoga County.**

Any evidence of or reference to allegations of current or former government corruption in Cuyahoga County is not relevant to any issue to be decided in this case.  Defendants' sole purpose in trying to elicit such information would be to attempt to prejudice the jury.  Such evidence should be excluded under Rules 401, 402 and 403.  For example, Defendants should not be allowed to argue that Cuyahoga County mismanaged their funds or did not have the money necessary to fight opioids due to corruption because such allegations would not have "any tendency to make the existence of any fact *that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence." FED. R. EVID. 401 (emphasis added).  Moreover, even if the allegations were relevant, which they are not, they are inadmissible under Rule 403 because any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the

jury. *See Doe v. Claiborne County,* 103 F.3d 495, 515 (6th Cir. 1996) (unfair prejudice is "the undue tendency to suggest a decision based on improper considerations"). Any alleged corruption in the Cuyahoga County government, especially when that corruption has nothing to do with opioids, is irrelevant to the jury questions on liability and damages.

**30.     Any reference to grand jury testimony or proceedings involving Cuyahoga County.**

Any evidence of or reference to grand jury testimony or proceedings involving Cuyahoga County is inadmissible.  Grand jury evidence is subject to strict secrecy rules.  *See* FED. R. CRIM. P. 6(e). Defendants cannot show the required "particularized need" for such materials, which are unconnected to the issues in this case.  *See Wilson v Sheldon*, 874 F.3d 470, 477 (6th Cir. 2017); *In re Grand Jury Proceedings*, 841 F.2d 1264, 1267-68 (6th Cir. 1988) (departure from grand jury secrecy rules can only be in cases of "compelling necessity" where there is proof that without access to the grand jury materials a litigant's position would be "greatly prejudiced" or "an injustice would be done."). In addition, this evidence should be excluded under Rules 401, 402 and 403 because it is irrelevant to the jury questions on liability and damages and any probative value it might have is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury.

**31.     Any reference to recent investigations or subpoenas involving Cuyahoga County.**

Any evidence of or reference to recent investigations or subpoenas involving Cuyahoga County is not relevant to any issue to be decided in this case.  Defendants' sole purpose in trying to elicit such information would be to attempt to prejudice the jury.  Such evidence should be excluded under Rules 401, 402 and 403.  As discussed in MIL No. 29, recent investigations or subpoenas involving Cuyahoga County, which have nothing to do with opioids, are irrelevant to the jury questions on liability and damages.

32. **Any reference to the indictment of Ken Mills, former director of Cuyahoga County jails.**

Any reference to the indictment of Ken Mills, former director of Cuyahoga County jails, is not relevant to any issue to be decided in this case. The indictment is unrelated to opioids or substance abuse at the jail and he has not participated as a witness in this case either via written interrogatory responses or through a deposition. Any evidence on his indictment should be excluded under Rules 401, 402 and 403 because it is irrelevant to the jury questions on liability and damages and has no probative value. Any probative value this evidence might have is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury.

33. **Any reference to any investigations of former Cuyahoga County Sheriff Pinkney or the Cuyahoga County Sheriff's Office.**

Any evidence of or reference to any investigations of former Cuyahoga County Sheriff Pinkney or the Cuyahoga County Sheriff's Office is not relevant to any issue to be decided in this case. Similar to the arguments in MIL Nos. 28-29, the evidence Defendants would try to submit would have nothing to do with opioids or any issue the jury must determine in this case and is thus irrelevant. Defendants' sole purpose in trying to elicit such information would be to attempt to prejudice the jury against Cuyahoga County for reasons that are unrelated to the claims or defenses in this case. Such evidence should be excluded under Rules 401, 402 and 403 because it is irrelevant to the jury questions on liability and damages and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading or inflaming the jury.

34. **Any reference to any "podcast" or other media coverage regarding Cuyahoga County courts.**

Any evidence of or reference to any "podcast" or other media coverage regarding the Cuyahoga County courts is not relevant to any issue to be decided in this case and could inflame the jury. The evidence Defendants would try to submit would have nothing to do with opioids or any issue the jury must determine in this case and is thus irrelevant. For example, "Serial" is an investigative journalism podcast which focuses on criminal justice, with its most recent season centered on the courts and criminal justice system in Cleveland. *See* https://serialpodcast.org/. The

focus of the series was not on opioids or substance abuse. It, along with any other media coverage regarding the Cuyahoga County courts, is not relevant to any claim or defense in this case. Defendants' sole purpose in referring to such information would be to attempt to prejudice the jury against Cuyahoga County. This evidence should be excluded under Rules 401, 402 and 403 because it is irrelevant to the jury questions on liability and damages and has no probative value. Any probative value this evidence might have is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading or inflaming the jury.

**35.      Any reference to any investigation regarding the death of Aniya Day Garrett.**

Any reference to any investigation regarding the death of Aniya Day Garrett is not relevant to any issue to be decided in this case and could inflame or mislead the jury. Aniya Day Garrett was a four year old girl who died in March 2018. Her mother and the mother's boyfriend were found guilty of her murder. There were no allegations or findings that opioids or drug abuse were in any way related to her death. This evidence should be excluded under Rules 401, 402 and 403 because it is irrelevant to the jury questions on liability and damages and has no probative value. Any probative value this evidence might have is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading or inflaming the jury.

**36.      Any reference to or allegation of current or former government corruption in Summit County.**

Any evidence of or reference to allegations of current or former government corruption in Summit County is not relevant to any issue to be decided in this case. Defendants' sole purpose in trying to elicit such information would be to attempt to prejudice the jury. Such evidence should be excluded under Rules 401, 402 and 403. Any evidence or argument concerning any Summit County officials or former officials has nothing to do with opioids and would be irrelevant and distracting. Moreover, even if the allegations were relevant, which they are not, they are inadmissible under Rule 403 because any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury. *See Doe,* 103 F.3d at 515 (unfair prejudice is "the undue

tendency to suggest a decision based on improper considerations"). Any alleged corruption in the Summit County government, especially when that corruption has nothing to do with opioids, is irrelevant to the jury questions on liability and damages.

**37.   Any reference to deaths of individuals while in the Summit County Jail or in the custody of the Summit County Sheriff's Office.**

Any evidence of or reference to deaths of individuals while in the Summit County Jail or in the custody of the Summit County Sheriff's Office should be excluded.  Any such evidence or argument is unrelated to the claims or defenses at issue in this case.  Defendants' sole purpose in trying to elicit such information would be to attempt to prejudice the jury against Summit County for reasons that are unrelated to the matters at issue in this case.  Such evidence should be excluded under Rules 401, 402 and 403 because it is irrelevant to the jury questions on liability and damages and any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading or inflaming the jury.


Dated:  September 25, 2019


                                        Respectfully submitted,

                                        /s/Paul J. Hanly, Jr._____
                                        Paul J. Hanly, Jr.
                                        SIMMONS HANLY CONROY
                                        112 Madison Avenue, 7th Floor
                                        New York, NY 10016
                                        (212) 784-6400
                                        (212) 213-5949 (fax)
                                        phanly@simmonsfirm.com

                                        Joseph F. Rice
                                        MOTLEY RICE
                                        28 Bridgeside Blvd.
                                        Mt. Pleasant, SC  29464
                                        (843) 216-9000
                                        (843) 216-9290 (Fax)
                                        jrice@motleyrice.com