**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*Track One-B Trial* | Case No. 1:17-MD-2804 |

**RITE AID'S MOTION *IN LIMINE*
TO EXCLUDE ORDERS FROM NON-DEFENDANT DISTRIBUTORS**

Defendant Rite Aid of Maryland, Inc. respectfully files this motion *in limine* asking this Court to exclude evidence of opioid orders by Rite Aid pharmacies from non-defendant distributors.[1]  Rite Aid of Maryland does not object to general evidence regarding the total volume of opioids distributed in the Plaintiff Counties and the market share of each distributor (party and non-party), but evidence regarding specific orders placed by Rite Aid pharmacies for opioids from non-defendant distributors should be excluded.  Evidence of these orders would have no relevance to the claims against Rite Aid of Maryland, would prejudice Rite Aid of Maryland, and would confuse the issues before the jury and unduly delay the trial.

---

[1] Giant Eagle, Inc. and its distribution warehouse divisions HBC Service Company ("HBC") and Giant Eagle Rx Distribution Center ("GERX"), both of which exclusively supplied Giant Eagle pharmacies, join in this motion with respect to orders placed directly by Giant Eagle pharmacies to McKesson.  McKesson was Giant Eagle's exclusive supplier of all opioid products at issue to Giant Eagle pharmacies prior to November of 2009 (when HBC opened), the substantially exclusive supplier of opioid products at issue from November 2009 to October 2014 (during which time period HBC only distributed generic HCP products to Giant Eagle pharmacies while they were on Schedule 3), again the exclusive supplier of all opioid products at issue from October 2014 to March of 2016, and from March 2016 (when GERX opened) to May 2018 a large supplier of opioid products at issue.  None of the orders submitted by Giant Eagle pharmacies to McKesson were distributed by HBC or GERX and therefore are not at issue and should be excluded from evidence.

As this Court is aware, liability in this case will focus solely on the conduct of Defendants as distributors of opioid medications. Plaintiffs allege that Defendants caused diversion of opioids by failing to adequately monitor for "suspicious orders" placed by their affiliated pharmacies (i.e., orders that created a risk of diversion). Liability will concern whether the Defendant complied with its obligations under the CSA to adequately monitor and report "suspicious" orders placed to it.

"Rite Aid of Maryland, dba the Mid-Atlantic Customer Support Center" is the only Rite Aid entity that is a defendant in the Track 1 cases. Dkt. 3020; Dkt. 3021. The "Mid-Atlantic Customer Support Center" is a distribution center owned by Rite Aid of Maryland[2] and holds a registration with the DEA as a *distributor*. Rite Aid of Maryland's distribution of opioids into the Plaintiff counties is the conduct at issue at trial. The evidence is undisputed that Rite Aid of Maryland never distributed *any* Schedule II controlled substances. Rite Aid of Maryland distributed only to pharmacies operated by Rite Aid of Ohio, Inc., but these pharmacies also ordered opioids from McKesson, including Schedule II opioids—such as oxycodone—that Rite Aid of Maryland never distributed to anyone.

Orders placed by Rite Aid of Ohio pharmacies with McKesson could have no relevance to Plaintiffs' distribution claims against Rite Aid of Maryland. Evidence that a pharmacy ordered drugs from McKesson—particularly orders of drugs that were never distributed by Rite Aid of Maryland—would not demonstrate that Rite Aid of Maryland failed to monitor suspicious orders. Because these orders are irrelevant, evidence related to them should be excluded. Fed. R. Evid.

---

[2] Rite Aid of Maryland also owns pharmacies in Maryland that are registered with the DEA as pharmacies, but none of those pharmacies ever dispensed opioids in Ohio or anywhere outside of Maryland.

2

401, 402; *see also Surface v. Conklin*, No. 1:15-CV-40, 2018 WL 6257984, at *6 (S.D. Ohio Nov. 30, 2018) (excluding evidence that "relate[s] to claims against parties that have been dismissed" because it "is irrelevant"). Even if evidence of these orders would have been relevant to claims against McKesson, now that those claims have been settled, it is no longer relevant and should be excluded. *Davis v. Siemens Med. Sols. USA, Inc.*, 279 Fed. Appx. 378, 380 (6th Cir. 2008) (affirming the exclusion of evidence that is relevant only to dismissed claims).

Even if evidence of these orders had some marginal probative value, it would be substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time and should be excluded under Rule 403. Permitting Plaintiffs to introduce evidence of these orders would risk misleading the jury into believing that Rite Aid of Maryland can be held liable for alleged misconduct of McKesson and would prejudice Rite Aid of Maryland if the jury held it liable based on orders distributed by McKesson.

Plaintiffs' response to Rite Aid of Maryland's motion for summary judgment illustrates the likelihood of confusion. In that response, Plaintiffs stated, "Rite Aid did not identify or report, as suspicious, orders from stores dispensing opioids to customers of a notorious, convicted Ohio pill-mill doctor." Dkt. 2184 at 4. As support for this proposition, Plaintiffs cite, *inter alia*, documents related to orders for oxycodone distributed by McKesson. Rite Aid of Maryland—which never distributed oxycodone—had nothing to do with those orders and could not possibly have reported orders that it did not receive or ship as "suspicious." Plaintiffs cannot hold Rite Aid of Maryland liable for McKesson's distribution, and introducing evidence regarding McKesson's distribution of oxycodone to Rite Aid of Ohio pharmacies would confuse the jury about the source of these opioids and lead to unnecessary mini-trials regarding the drugs dispensed by McKesson and whether the orders distributed by McKesson were suspicious. Evidence of orders from

McKesson—particularly orders of oxycodone (and other Schedule II substances) never distributed by Rite Aid of Maryland—would confuse the issues and waste time with issues not relevant to claims against Rite Aid of Maryland.

## CONCLUSION

To be clear, Rite Aid of Maryland does not object to evidence regarding the total volume of various opioid medications distributed to the Plaintiff counties and each distributor's market share, but this Court should exclude evidence of specific orders placed by non-defendant Rite Aid of Ohio pharmacies with non-defendant McKesson (or any argument that the orders placed with McKesson were suspicious).

Dated:  August 14, 2020

Respectfully submitted,

*/s/ Kelly A. Moore*  (consent)
Kelly A. Moore, Esq.
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001

John P. Lavelle, Jr., Esq.
John.lavelle@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
T: 215-963-5917
F: 215-963-5001

*Counsel for Rite Aid of Maryland*

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that the foregoing document was served electronically to all counsel of record on August 14, 2020.

*/s/ Kelly A. Moore*
Kelly A. Moore
