IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*Track One-B Trial* | Case No. 1:17-MD-2804 |

**PHARMACY DEFENDANTS' MOTION *IN LIMINE* NO. 10 TO PRECLUDE EVIDENCE OR ARGUMENT RELATING TO PARTICIPATION IN TRADE ASSOCIATIONS**

The Court should preclude any evidence or argument concerning Defendants' participation in trade associations and protected petitioning activity. Any such evidence or argument is irrelevant to Plaintiffs' public nuisance claim and is also barred by the First Amendment. Further, the danger of unfair prejudice, confusion, misleading the jury, and wasting trial time substantially outweighs any probative value. Fed. Rs. Civ. P. 401-403.

Plaintiffs may seek to introduce evidence or argument concerning the Healthcare Distribution Alliance ("HDA") (f/k/a Healthcare Distribution Management Association) or the National Association of Chain Drug Stores ("NACDS"), two industry trade associations, in an effort to show that Defendant engaged in improper conduct. Although certain Defendants may have participated in events and other forums hosted by HDA, no Defendant was a member.[1] Rather, HDA was a trade association in which other distributor defendants (who did not have affiliated pharmacy stores) were members. Pharmacy Defendants or their parent corporations were members of NACDS.

---

[1] Caremark Rx Inc. was an affiliate member of HDA (or its predecessor) prior to its acquisition by CVS Corporation in 2008. Since that time, the CVS Defendants' direct or indirect parent corporation has maintained that affiliate membership, but has not held any position within HDA.

First, any participation by Defendants here in trade association activities is irrelevant to the public nuisance claim here. Unlike in Track 1A, where Plaintiffs alleged that certain manufacturer and distributor defendants engaged in a conspiracy and racketeering activity, there are no such claims here.[2] Rather, the Track 1B trial is limited to a public nuisance claim – whether a Pharmacy Defendant's distribution to its own stores involved intentional and unreasonable conduct that was intended to cause an interference with a public right, on the one hand, or involved certain, specific kinds of unlawful conduct, on the other. The claim also requires Plaintiffs to prove that a Defendant's conduct proximately caused an unreasonable interference with a public right.

In Track 1A, the Court denied without prejudice those defendants' Motion in Limine No. 5 seeking to exclude evidence about lobbying and other petitioning activities. Plaintiffs claimed that they did not seek "to impose liability for lobbying or petitioning activity, and instead [sought] to introduce this evidence to show purpose, character, motive, or intent." The Court found that lobbying or petitioning activity is "admissible for other purposes," but allowed that the defendants there "may argue that the probative value of any particular evidence on this matter is outweighed by a danger of unfair prejudice." (ECF 3052 at 50-51) Purpose, character and motive simply are not at issue here for Plaintiffs' nuisance claim. *Cf. United States Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1181 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335 (2d Cir. 1988) ("[E]xclusion of 'purpose and character' evidence consisting of conduct clearly embraced by

---

[2] *See, e.g.*, Dkt. 3021 at 294, ¶ 929 (Cuyahoga Third Am. Compl.) ("each of the RICO Marketing Defendants … had systematic links to and personal relationships with each other through joint participation in lobbying groups, trade industry organizations, contractual relationships and continuing coordination of activities."); *id*. at 164, ¶ 514 ("Defendants worked together to achieve their common purpose through trade or other organizations, such as the Pain Care Forum and the HDA."); *id*. at 165, ¶ 517 ("Distributor Defendants actively participated, and continue to participate in the PCF, at a minimum, through their trade organization, the HDA."); *id*. at 184, ¶ 575 ("Defendants, through their trade associations, HDMA and NACDS, filed an amicus brief in *Masters Pharmaceuticals*, which made the following statements …." concerning Defendants' statutory and regulatory responsibilities to prevent diversion and report suspicious orders).

*Noerr-Pennington* should be the rule rather than the exception in an antitrust case."). Participation in a trade association also does not demonstrate the intent necessary for a public nuisance claim.

Nor can Plaintiffs seek to impute public statements by the HDA or NACDS to a Defendant. These trade associations are separate entities from the Defendants and mere participation in a trade association does not render the association's public statements an admission by a member, much less a non-member.³ *In re: Asbestos School Litig.*, 46 F.3d 1284, 1290 (3d Cir. 1994) ("A member of a trade group or other similar organization does not necessarily endorse everything done by that organization or its members."); *In re Welding Fume Prod. Liab. Litig.*, 526 F. Supp. 2d 775, 805 (N.D. Ohio 2007) ("Attendance at a meeting of an organization does not necessarily signify approval of any of that organization's activities.") (quoting *In re: Asbestos School Litig.*, 46 F.3d at 1290).

Second, participation in trade associations, including lobbying activity through trade associations, represents constitutionally protected conduct under the First Amendment and the *Noerr–Pennington* doctrine. "Joining organizations that participate in public debate, making contributions to them, and attending their meetings are activities that enjoy substantial First Amendment protection." *In re: Asbestos School Litig.*, 46 F.3d at 1294. As a result, "[c]ivil liability may not be imposed merely because an individual belonged to a group …. For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *N.A.A.C.P. v. Claiborne Hardware Co.* 458 U.S. 886, 920 (1982); *Eaton v. Newport Bd. of*

---

³ *See, e.g.,* Dkt. 3021 at 160, ¶ 506 (alleging that the HDA "has long taken the position that distributors have responsibilities to 'prevent diversion of controlled prescription drugs' not only because they have statutory and regulatory obligations [to] do so, but 'as responsible members of society.' … [D]istributors … are uniquely situated to perform due diligence in order to help support the security of the controlled substances they deliver to their customers."); Dkt. 3021 at 185, ¶ 576 ("Through statements made on their behalf by their trade associations …," Defendants acknowledge their obligations under the law and affirmed their conduct complied with the law.).

*Educ.*, 975 F.2d 292, 298-99 (6th Cir. 1992) (lobbying activities by business interests "are protected by the first amendment right of petition"); *Opdyke Inv. Co. v. City of Detroit*, 883 F.2d 1265, 1273 (6th Cir. 1989) (explaining that liability can be imposed on the basis of lobbying and litigation only if such activity was a "sham").  It is improper to impose liability on a defendant based on a trade association's constitutionally protected activity.  *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140 (1961) (extending protection to "publicity campaign[s] to influence governmental action").

Trade association activity thus is irrelevant and inadmissible under Rules 401 and 402.  To the extent Plaintiffs seek to introduce evidence of such activity, they would first need to establish a foundation that (1) the trade association engaged in illegal activity; and (2) a defendant specifically intended to support such illegal activity.  *Claiborne Hardware Co.* 458 U.S. at 920.  In the absence of such a foundation, any evidence or argument impermissibly infringes on Defendants' First Amendment rights.  And because Plaintiffs have never presented any evidence that would support either prong of the *Claiborne* test, the Court should preclude such argument entirely.

Third, any evidence of trade association activity unfairly prejudices Defendants as it is likely to mislead and confuse jurors and cause them to use Defendants' constitutionally protected behavior against them.  *Weit v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 641 F.2d 457, 466 (7th Cir. 1981); *see also* Fed. R. Evid. 403.  The Court should therefore exclude evidence of trade association activity under Rule 403, given that the danger of unfair prejudice and confusion, as well as waste of trial time, substantially outweighs any probative value of the evidence or argument. Fed. R. Evid. 403; *Weit,* 641 F.2d at 467.

**CONCLUSION**

For the foregoing reasons, the Court should exclude any evidence or argument concerning Defendants' participation in any trade association activities.

Dated:  August 14, 2020　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Kelly A. Moore (consent)
　　　　　　　　　　　　　　　　　　　　Kelly A. Moore, Esq.
　　　　　　　　　　　　　　　　　　　　kelly.moore@morganlewis.com
　　　　　　　　　　　　　　　　　　　　Morgan, Lewis & Bockius LLP
　　　　　　　　　　　　　　　　　　　　101 Park Avenue
　　　　　　　　　　　　　　　　　　　　New York, NY 10178-0060
　　　　　　　　　　　　　　　　　　　　T: 212-309-6612
　　　　　　　　　　　　　　　　　　　　F: 212-309-6001

　　　　　　　　　　　　　　　　　　　　John P. Lavelle, Jr., Esq.
　　　　　　　　　　　　　　　　　　　　John.lavelle@morganlewis.com
　　　　　　　　　　　　　　　　　　　　Morgan, Lewis & Bockius LLP
　　　　　　　　　　　　　　　　　　　　1701 Market Street
　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103-2921
　　　　　　　　　　　　　　　　　　　　T: 215-963-5917
　　　　　　　　　　　　　　　　　　　　F: 215-963-5001

　　　　　　　　　　　　　　　　　　　　*Counsel for Rite Aid of Maryland*

　　　　　　　　　　　　　　　　　　　　/s/ Timothy D. Johnson (consent)
　　　　　　　　　　　　　　　　　　　　Timothy D. Johnson (0006686)
　　　　　　　　　　　　　　　　　　　　CAVITCH FAMILO & DURKIN, CO. LPA
　　　　　　　　　　　　　　　　　　　　Twentieth Floor
　　　　　　　　　　　　　　　　　　　　1300 East Ninth Street
　　　　　　　　　　　　　　　　　　　　Cleveland, Ohio  44114
　　　　　　　　　　　　　　　　　　　　(216)621-7860
　　　　　　　　　　　　　　　　　　　　(216)621-3415 Fax
　　　　　　　　　　　　　　　　　　　　tjohnson@cavitch.com

　　　　　　　　　　　　　　　　　　　　*Attorney for Defendant Discount Drug Mart, Inc.*

　　　　　　　　　　　　　　　　　　　　/s/ Robert M. Barnes (consent)
　　　　　　　　　　　　　　　　　　　　Robert M. Barnes
　　　　　　　　　　　　　　　　　　　　Scott D. Livingston
　　　　　　　　　　　　　　　　　　　　Joshua A. Kobrin
　　　　　　　　　　　　　　　　　　　　MARCUS & SHAPIRA, LLP
　　　　　　　　　　　　　　　　　　　　35th Floor, One Oxford Centre
　　　　　　　　　　　　　　　　　　　　301 Grant Street

Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc., and HBC Service Company*

*/s/ Kaspar J. Stoffelmayr* (consent)
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
Email: kaspar.stoffelmayr@bartlitbeck.com
Email: brian.swanson@bartlitbeck.com
Email: kate.swift@bartlitbeck.com
Email: sharon.desh@bartlitbeck.com
Email: sten.jernudd@bartlitbeck.com
Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Phone: (303) 592-3100
Fax: (303) 592-3140
Email: alex.harris@bartlitbeck.com

*Counsel for Defendants Walgreen Co.*

/s/   Tara A. Fumerton
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

Tina M. Tabacchi

- 6 -

- 7 -

Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*