UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION, <br><br> **THIS DOCUMENT RELATES TO:** <br><br> *"Track Three Cases"* | MDL 2804 <br><br> **Case No. 1:17-md-2804** <br><br> Judge Dan Aaron Polster |

**PLAINTIFFS' OPPOSITION TO WALGREENS'S PARTIAL OBJECTION RE: SECOND ORDER REGARDING GEOGRAPHIC SCOPE OF DISCOVERY**

Walgreens's "burden" based objection to producing due diligence documents for Ohio-wide suspicious opioid orders reported to the DEA is groundless and due to be denied.

**Introduction**

The MDL discovery record establishes that no undue burden should arise from Walgreens's production of due diligence for reported suspicious orders because there should be virtually nothing to produce, and the little that may remain to be produced will arise from centralized sources. Until 2012, Walgreens's sole means of reporting suspicious orders to the DEA was a monthly "Suspicious Control Drug Order" report. The reference to 50,000 Ohio suspicious orders listed in Walgreens's objection papers appears to arise from that report. Walgreens's corporate representative previously testified that Walgreens performed *no due diligence* on orders included in its Suspicious Control Drug Reports. Two years after Walgreens stopped sending the Suspicious Control Drug report to the DEA in 2012, Walgreens ceased all opioid distribution. During that two-year period, suspicious order monitoring and reporting was centralized through Walgreens's corporate RX Integrity Department. If Walgreens is now claiming that more due

diligence occurred than the record, including its own corporate testimony, reflects, Walgreens should be required to immediately provide the Court and the Plaintiffs the basis for seeking to change that long established factual record.

## Argument

In Walgreens's Partial Objection, it claims (for the first time) that it reported 3,000 suspicious opioid orders to the DEA for Lake and Trumbull Counties and that it reported over 50,000 suspicious orders to the DEA for the entire state of Ohio. *See* Dkt. 3430 at p. 2. Based on Walgreens's Track Three Interrogatory responses, these numbers must be drawn from the monthly Suspicious Control Drug Order reports that Walgreens sent to the DEA on a nationwide basis through 2012. Walgreens's response to Plaintiffs' Track Three Interrogatory Number 3, which asks Walgreens to "identify each suspicious order you reported to any regulatory body, including the DEA, the Ohio Board of Pharmacy and/or any other law enforcement entity," refers only to "Suspicious Control Drug Order reports to DEA regarding Opioids orders from Walgreens pharmacies in Ohio."[1] That response is consistent with Walgreens's discovery responses in Track One, in which Walgreens averred that the monthly Suspicious Control Drug Order reports were the only reports to the DEA of suspicious opioid orders that Walgreens was able to identify.[2]

Walgreens's "burden" based objection to providing the due diligence files related to Ohio orders listed in the monthly Suspicious Control Drug Reports is baseless because Walgreens's corporate representative has already testified that Walgreens *did not perform any due diligence on the orders listed in this report*, but, rather, that the reports merely reflected historical orders of

---

[1] *See* Exhibit A, Walgreens July 13, 2020 Responses to Plaintiffs' Track Three Interrogatories, at p. 12.
[2] *See* Exhibit B, Walgreens's March 4, 2019 Second Amended Objections and Responses to Plaintiffs First Set of Interrogatories at p. 11 (identifying only the Suspicious Control Drug Reports in response to Interrogatory No. 4, which sought identification of all suspicious orders); Exhibit C, Walgreens's February 19, 2020 Second Supplemental Responses to Plaintiffs First Combined Discovery requests at 12-17 (affirming in response to Request No. 3 that the Suspicious Control Drug Order reports were the only reports of suspicious order provided to the DEA that Walgreens was able to identify for CT1).

unusual size that had already been shipped by Walgreens to its stores.[3] Because Walgreens has admitted that it did not perform due diligence on the orders listed in this report, Walgreens is not subject to any burden, as there should be nothing to produce.

If Walgreens is now seeking to change its corporate testimony (yet again), a year and a half later, and now claims that due diligence was performed on these orders from 2012 and earlier, Plaintiffs request the opportunity to seek relief. Further, Walgreens should be required to immediately produce any newly claimed due diligence and provide an explanation for why this information has only newly been discovered, as it is highly relevant both to Walgreens's corporate practices (as amply addressed in the prior briefing and this Court's orders) and to the integrity of the information Walgreens has provided in discovery during the last two years.

Walgreens's Track One discovery responses aver that, until 2012, the Suspicious Control Drug Order reports were the only means through which Walgreens reported suspicious orders of opioids to the DEA.[4] Therefore, the only suspicious orders for which due diligence records might be available would be those from 2012 or later. To the extent Walgreens now claims it has evidence documenting suspicious orders of opioids reported to the DEA after 2012, those reports would only span a period of two years or less, because Walgreens ceased all opioid distribution in 2014. Accordingly, the number of Ohio-wide orders regarding which Walgreens would be required to provide due diligence would only be a small fraction of the purported "50,000" reported orders Walgreens cites in its objection. Further, any associated due diligence would be centralized, because Walgreens's discovery responses establish that all post-2012 due diligence and reporting

---

[3] *See* Exhibit D, March 5, 2019 Errata to Eric Bratton 30(b)(6) Deposition at 5 (changing Walgreens's original corporate testimony that two Walgreens employees performed due diligence on a "sampling" of the orders in the report, to state that "Walgreens is currently unaware of due diligence that was performed based on an order being flagged in the [Suspicious Control Drug Order Report]").

[4] *See* Exhibit C, Walgreens's February 19, 2020 Second Supplemental Responses to Plaintiffs First Combined Discovery requests at pp. 15-16 (confirming Walgreens sent the DEA the suspicious control drug report through 2012 and did not change its method of reporting suspicious orders until 2012).

3

regarding suspicious orders was conducted centrally by its corporate Pharmaceutical Integrity Department, thereby minimizing any burden attendant to the post-2012 production.[5]

For the reasons stated herein, and in the extensive previous briefing and correspondence on this subject, Walgreens's partial objection to the Second Order regarding Geographic Scope of Discovery is due to be denied.

    Respectfully submitted,

    */s/Paul J. Hanly, Jr.*
    Paul J. Hanly, Jr.
    SIMMONS HANLY CONROY
    112 Madison Avenue, 7th Floor
    New York, NY 10016
    (212) 784-6400
    (212) 213-5949 (fax)
    phanly@simmonsfirm.com

    Joseph F. Rice
    MOTLEY RICE
    28 Bridgeside Blvd.
    Mt. Pleasant, SC 29464
    (843) 216-9000
    (843) 216-9290 (Fax)
    jrice@motleyrice.com

    Paul T. Farrell, Jr., Esq.
    FARRELL LAW
    422 Ninth Street
    Huntington, WV 25701
    (304) 654-8281
    paul@farrell.law

    *Plaintiffs' Co-Lead Counsel*

---

[5] *See* Exhibit A, Walgreens's July 13, 2020 Responses and Objections to Plaintiffs' Track Three Interrogatories, at p. 10 ("During the timeframe from 2012 until Walgreens stopped distributing opioids to its stores, Pharmaceutical Integrity also reported such orders to the DEA" after Pharmaceutical Integrity performed review).

                */s/Peter H. Weinberger*
                Peter H. Weinberger (0022076)
                SPANGENBERG SHIBLEY & LIBER
                1001 Lakeside Avenue East, Suite 1700
                Cleveland, OH 44114
                (216) 696-3232
                (216) 696-3924 (Fax)
                pweinberger@spanglaw.com

                *Plaintiffs' Liaison Counsel*

                Frank Gallucci
                PLEVIN & GALLUCCI CO, L.P.A.
                55 Public Square, Suite 222
                Cleveland, OH 44113
                (216) 861-0804
                (216)861-5322 (Fax)
                FGallucci@pglawyer.com

                Hunter J. Shkolnik
                NAPOLI SHKOLNIK
                360 Lexington Ave., 11th Floor
                New York, NY 10017
                (212) 397-1000
                (646) 843-7603 (Fax)
                hunter@napolilaw.com

                *Counsel for Plaintiffs Lake County and*
                *Trumbull County, Ohio*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on August 20, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

                */s/Peter H. Weinberger*
                Peter H. Weinberger
                Plaintiffs' Liaison Counsel