# EXHIBIT D

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*Track One Cases.* | MDL No. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

**ERRATA TO ED BRATTON 30(b)(6) DEPOSITION**

**ERRATUM NO. 1:**

| PAGE-LINE: 99:1-12, 100:5-10, 104:18-105:2, 110:12-111:9 | CHANGE |
|---|---|
| Q. So, we don't know what the formula. We don't have any examples and there is no written guidance. Correct?<br>MR. BENSINGER: Objection.<br>BY MR. MOUGEY:<br>Q. Did I get that all right?<br>MR. BENSINGER: Objection; mischaracterization, compound.<br>BY THE WITNESS:<br>A. Again, if we know that it's greater than X, we don't know the value that they plugged into that formula, but -- there is no written documents….<br><br>Q. And we don't have any manual or operation, guidance or anything from Walgreens giving the DC SAIL coordinators about what to use or how to run the query?<br>A. Not that the folks we interviewed could recall, no….<br><br>Q. And your testimony is that due diligence was performed on those -- on those orders based on your getting prepared today and interviewing these witnesses, correct?<br>A. Correct. | A. After my 30(b)(6) deposition on December 16, 2018, Walgreens identified two written policies, one dated 2006 and one dated 2010, instructing distribution center personnel in the "SAIL" department and the computer room on how to identify and address excessive or questionable order quantities before filling those orders and shipping them to a Walgreens pharmacy. These written policies instruct DC personnel to call the pharmacy to investigate orders exceeding the threshold quantity. *See* Bish Dep. Ex. 7 (WAGMDL00757788), Bish Dep. Ex. 8 (WAGMDL00751821-23). The written policies corroborate testimony that Walgreens had such procedures in place at the time when Walgreens was distributing controlled substances. *See, e.g.*, 12/16/18 Bratton 30(b)(6) Tr. 82:17-83:15, 84:10-85:15, 105:3-12, 110:12-111:19.<br><br>Also after my 30(b)(6) deposition, Perrysburg Distribution Center Function Manager Deb Bish, former "SAIL" coordinator Jen Diebert, and IT manager Doug Peterson testified about the due diligence that distribution center personnel—including SAIL coordinators and |

| | |
|---|---|
| Q. Yet you can't find any policy and procedures that were -- that were written, correct, sir?<br>A. Correct….<br><br>Q. So, if the order popped or was flagged on the excessive quantity query, the SAIL coordinator would then call the pharmacy to inquire, correct?<br>A. The SAIL coordinator or employees of the DC.<br>Q. Employees of the DC, the distribution center?<br>A. Correct.<br>Q. I mean, like what kind of employees?<br>A. When I spoke with Deb, she called sometimes she said -- I'm -- she couldn't give me a definitive list of who might be calling, but it sounded like to me either the SAIL coordinator, herself as the function manager. Those were the ones that she mentioned.<br>Q. So, we don't really have anything in writing giving guidance to the folks calling, and we really don't even know who was calling. Is that a fair statement?<br>A. We don't know a complete list of who was calling. | computer room employees—conducted on orders of unusual quantities before filling those orders. *See* Bish Tr. 61:7-63:19; 479:21-482:2; Diebert Tr. 35:17-37:5; Peterson Tr. 21:7-29:3. In line with Walgreens' written policies (Bish Dep. Exs. 7 and 8), those personnel ran a query each day to identify orders exceeding a threshold quantity. Then, those personnel or the function manager would call the pharmacy that had placed the order to make sure the pharmacy had ordered as intended, and that the pharmacy really needed the large quantity. *See* Bish Tr. 61:7-63:19; 479:21-482:2; Diebert Tr. 35:17-37:5. |

**REASON:** My 30(b)(6) deposition was ordered to take place on December 16, 2018, a Sunday, over Walgreens' objection that additional documents may be produced after the deposition that would be relevant to the topics on which I was designated to testify. During the December 16 deposition, it was determined that the deposition would continue, at a later agreed-upon date, for an additional two hours and nine minutes, after Walgreens supplemented its interrogatory responses and document production. The deposition was scheduled to conclude on February 21, 2019, but Plaintiffs cancelled the conclusion of the deposition two days beforehand.

The written policies described in this erratum were identified after my December 16 deposition. However, the substance of those written policies is consistent with testimony describing Walgreens' policies for investigating excessive or questionable order quantities during the timeframe when Walgreens was distributing controlled substances. *See* 12/16/18 Bratton 30(b)(6) Tr. 82:17-83:15, 84:10-85:15, 105:3-12, 110:12-111:19; Bish Tr. 61:7-63:19; 479:21-482:2; Diebert Tr. 35:17-37:5; Peterson Tr. 21:7-29:3. I submit this erratum merely to correct the December 16 testimony that there was no written policy documenting those procedures. I have also annotated the chart marked as Exhibit 27 to my 30(b)(6) deposition to reflect this change. See Attachment A. The annotations related to Erratum No. 1 are marked with a "1."

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**ERRATUM NO. 2:**

| Page-Line: 141:18-143:6 | CHANGE |
|---|---|
| Q.   What is the next kind of 30,000-foot view description that you can explain to me and this jury about what Walgreens policies and procedures it had in place to detect suspicious orders?<br>A.   So --<br>MR. BENSINGER:  Objection to the characterization of the exhibit.  You can answer.<br>BY THE WITNESS:<br>A.   The next thing that comes to mind is, and we have touched on it, would be the pickers.<br>BY MR. MOUGEY:<br>Q.   What time period does the pickers encompass?<br>A.   Until we stopped distributing controls from the facility.<br>Q.   Okay. So, and they're looking for abnormal orders.  Is that fair enough?<br>A.   Correct.<br>Q.   And if they found an abnormal order, would that be considered suspicious?<br>A.   Possible suspicious order.<br>Q.   Okay. So, I will put "yes" in the next column. And was there due diligence performed on what the pickers identified?<br>A.   Based on the interviews that I conducted, yes.<br>Q.   And I think we've already established that there is no policy or procedures in writing, right?<br>A.   Correct. Not that we've been able to find.<br>Q.   And that the "Policies and Procedures Verbally," the answer, like the previous, is yes and that was to call the pharmacy?<br>A.   Correct. | After my 30(b)(6) deposition on December 16, 2018, Function Manager Deb Bish testified that, in addition to the "pickers," "auditors" in the distribution center would also escalate unusually large orders for her review, and that she would call the pharmacy to investigate such orders as well.  *See* Bish Tr. 479:21-484:24.<br><br>In addition to calling the pharmacy to investigate unusually large orders that were identified by the pickers, the auditors, or the computer room personnel, Ms. Bish testified that she also had a policy of calling Barb Martin in the Rx Inventory department about such orders, to investigate the history of the store's sales, before filling an unusually large order.  *See id.* 485:1-487:20.  Likewise, former SAIL coordinator Jen Diebert testified that for any orders that were flagged on the excessive or questionable quantity query, personnel in the distribution center would run a second query to check such orders against the store's order history before shipping the order.  *See* Diebert Tr. 35:17-37:5. |

**REASON:**  Ms. Bish and Ms. Diebert both testified after my December 16, 2018, deposition. This erratum is based on their deposition testimony.  I have also annotated the chart marked as

Exhibit 27 to my 30(b)(6) deposition to reflect this change.  See Attachment A.  The annotations related to Erratum No. 2 are marked with a "2."

**ERRATUM NO. 3:**

| PAGE-LINE:  160:1-161:7 | CHANGE |
|---|---|
| Q.   Okay.  And were there -- was there ever due diligence performed on the orders that were flagged as part of the Chemical Handler's report?<br>A.    So, it's my understanding based on discussions with folks from our inventory team and loss prevention, they would look at retrospective analysis of a sample of these orders and review them for appropriateness…. my understanding is it was Barb Martin and Marcy Ranick reviewed these reports; and there may have been other people in LP, loss prevention, but we weren't able to establish who they were….<br>Q.   Were they the ones responsible, then, for performing any due diligence on those reports?<br>A.    They would investigate the sample of the orders in the report. | A.  Walgreens is currently unaware of due diligence that was performed based on an order being flagged in the Chemical Handler's report. |

**REASON:**  To prepare for my 30(b)(6) testimony, I had three face-to-face meetings with Barb Martin.  In at least one of those meetings, Ms. Martin and I reviewed Walgreens' reports that had been compiled based on the DEA's guidance in Appendix E-3 of the Chemical Handler's Manual.  I understood her to have explained at that time that she and Marcie Ranick performed due diligence on a sample of the orders in those reports during the timeframe when Walgreens was distributing controlled substances.  That conversation, as well as certain documents (e.g., WAGMDL00659828-56, WAGMDL00660331-37) informed the state of corporate knowledge to which I attested as Walgreens' corporate designee on December 16, 2018.

After the December 16 deposition, Ms. Martin provided her own deposition testimony on January 25, 2019.  I have reviewed Ms. Martin's testimony that she did **not** perform due diligence on the reports in question.  Based on that testimony, the state of Walgreens' corporate knowledge has changed, and I have provided this erratum to reflect that.  I have also annotated the chart marked as Exhibit 27 to my 30(b)(6) deposition to reflect the state of corporate knowledge.  See Attachment A.  The annotations related to Erratum No. 3 are marked with a "3."

# ATTACHMENT A

| Date | Criteria | Possibly Suspicious Orders | Due Diligence | Policy & Procedure | Verbal | Days Filed Nine | No |
|---|---|---|---|---|---|---|---|
| 06 - present 08 | Excessive Quantity Queries | ✓ | | | | | |
| | DC SAIL Co. | | | | | | |
| 06 - 12/14 | ① Computer Room | Lie Into what he thought was Normal. Don't know specific totals | Yes | Yes | No → Yes Call for Inventory | Yes call the Pharmacy | |
| | ② Pickers "Auditors" | Abnormal Orders | Yes | Yes | No → Yes call for Inventory | Yes all for Inventory | |
| ③ | | 2X Dates of DFG010 | Yes | Yes | | | |
| | £-3 | | | | | | |
| | Chemical Handlers Report | | Yes | No she stopped | Barb Martin | | |
| | Verbal & No written Detail for BoB DEA to E-3 | Cocktail Drug List of Products Chemicals → after Date | Yes | BAD Matte Marcy Quinle Retrepeade | No | Barb | Yes I Undertaking Hard stop |
| 0000 → ? | LINE Limits | | Yes | Hard stop | No | emails 4 Barb 60 0334 2-5 | Fallon |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

| Date | Report | Criteria | Possibly Suspicious Orders | Due Diligence Written | Policy & Procedure Written | Policy & No Procedure Written Due Dil |
|---|---|---|---|---|---|---|
| 2008 - 2010 | Phase I - Not operational / proof of Concept / Pilot | Tolerance & Frequency | Delta | Delta | Delta | Delta |
| 4/10 - 5/12 | Phase II • Some changes/ updates • 45202L + attached | Some changes/ updates vs delta to Phase I | ✓ (S →) Out Reviewed Phase II No SOR to Out Based on Phase II | Nothing in Phase II | Nothing not in Due Diligence for orders that were just cit | Nothing in Due Diligence other than emails & verbal |
| 4/12 - 5/12 | Phase III Further Refinst Changes: 225172 → Final | Same as II but included Vendor Orders for consistent - just Flagging Big for old defaults | | | | |
| 8/12 - 11/12 | Phase IV Vendor Order Padd Bills | | | | | |

11/1/20 -
12/14 SL
advised of
of distribut
business for
CS

Phase V

- Trespass Release
  of ceiling
- Flags and
  Replace to 0
- Override Agent

Investigated
Orders not
were flagged
by Agnythe

Continued
Suspicions
Reports to
DEA

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

DATE | Excessive Quantity Queries | Criteria | Possibly Suspicious orders | Due Diligence

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

I declare, under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: ~~February~~ March 5th, 2019

Edward Bratton, Manager,
Pharmaceutical Integrity, on behalf of Walgreen Co. and Walgreen Eastern Co.

Adam Wolf  3/5/19

OFFICIAL SEAL
ADAM L WOLF
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/08/22