# EXHIBIT 11

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Karl Stampfl<br>To Call Writer Directly:<br>(312) 862-2595<br>karl.stampfl@kirkland.com | 300 North LaSalle<br>Chicago, IL 60654<br><br>(312) 862-2000<br><br>www.kirkland.com | Facsimile:<br>(312) 862-2200 |

August 11, 2020

*Via Electronic Mail*

Dory P. Antullis
Robbins Geller Rudman & Dowd LLP
dantullis@rgrdlaw.com

> Re: *City and County of San Francisco v. Purdue Pharma L.P.*, Case No. 3:18-cv-07591-CRB (N.D. Cal.)

Dear Dory:

I write on behalf of Defendants Allergan Finance, LLC (f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.), Allergan Sales, LLC and Allergan USA, Inc. ("Allergan") in response to Plaintiffs' July 24, 2020 letter regarding Allergan's Responses to Plaintiffs' First Set of Requests for Production.

**I. General Questions**

Your July 24 letter identifies several matters that you refer to as "Overarching Issues Common to All Responses." Allergan's response to each is below.

**MDL Discovery Rulings Generally:** Plaintiffs' Requests stated that "[n]othing in these Requests shall limit or replace Defendants' obligations to comply with discovery rulings in the MDL transferee court pertaining to common discovery" and that "[t]o the extent such productions have not been completed or need to be updated, that should be done promptly." Allergan objected, because it is not clear what Plaintiffs meant or to what rulings specifically they referred, much less which, if any, Plaintiffs contend apply in this separate action or on what basis. Regardless, we do not believe the parties have any dispute, because Allergan has complied with all rulings in the MDL.

**MDL Track One Discovery Ruling Nos. 2 and 3:** Neither of Discovery Ruling No. 2 nor Discovery Ruling No. 3 were issued in this case. As you know, both expressly state that they relate to the "Track One Cases." *See* Dkt. Nos. 693 & 762, 1:17-md-02804-DAP. Indeed, this case had not even been filed when these rulings were issued. In any case, the parties need not debate whether they apply here or not, because Allergan has complied with them.

## KIRKLAND & ELLIS LLP

Dory P. Antullis
August 11, 2020
Page 2

      Further, while you ask that Allergan "confirm" that it will "produce relevant discovery materials for all opioid drugs without regard to the DEA Schedule," Discovery Ruling Nos. 2 and 3 hold that only materials relating to Schedule II opioid pain medications need be produced.  *See id.*  If your concern is that Allergan is withholding documents on the basis that they relate to opioid pain medications that were rescheduled from Schedule III to Schedule II (such as Norco), Allergan confirms it is not.  Finally, you reference "generic opioid drugs your clients made, distributed and sold" and ask that we confirm Allergan will produce documents about opioids "without regard to whether your clients 'manufactured and/or sold' them."  As an initial matter, you are incorrect: None of the Allergan Defendants ever manufactured or sold any generic opioid pain medications.  Regardless, Allergan confirms that it is has produced the documents produced in the MDL and has confirmed with counsel for the Actavis Generics entities that they are producing the documents jointly produced by Allergan and those entities under the "Acquired Actavis" Bates labels.

      **MDL Track One Discovery Ruling No. 4:**  Discovery Ruling No. 4 also expressly relates only to the "Track One Cases."  *See* Dkt. No. 989, 1:17-md-02804-DAP.  In any case, there is no dispute: Allergan has complied with Discovery Ruling No. 4, and Allergan again confirms that it is producing documents related to the same product scope as in the MDL, and that Allergan has confirmed with counsel for the Actavis Generics entities that they are producing the documents jointly produced by Allergan and those entities under the "Acquired Actavis" Bates labels.

      **DR No. 22:**  Again, there is no dispute:  Allergan confirms that it has complied with and will continue to comply with DR No. 22.  Further, Allergan hereby agrees to deem produced in this case all materials it produces into the MDL pursuant to DR No. 22.

      **Definition of "You" and "Your":**  Plaintiffs appear to have misinterpreted Allergan's statement in its Responses that "Allergan cannot respond on behalf of the Actavis Generic Entities."  Allergan cannot respond "on behalf of" those entities, because its counsel does not represent them and because they are not affiliated with Allergan.  Allergan nonetheless confirms that it is producing the same documents produced in the MDL.  Further, while you ask that Allergan confirm that it will "produce discovery materials in the same manner as those in the 'Joint Allergan/Teva Production' in the MDL," Allergan understands that the Actavis Generics Defendants have already produced (or deemed produced) the documents to which you refer (*i.e.*, those under the Acquired_Actavis Bates numbers).

      **Definition of "Marketing":**  Allergan confirms that it is not withholding any documents on the basis of its interpretation of the term "[m]arketing."

      **Definition of "Opioids":**  You state that Allergan's objection to Plaintiffs' definition of "[o]pioid(s)" is "problematic and violates DR Nos. 2 and 3."  As explained above, Allergan agrees to use the same product scope as in the MDL, including documents related to Kadian and Norco,

## KIRKLAND & ELLIS LLP

Dory P. Antullis
August 11, 2020
Page 3

and that Allergan has confirmed with counsel for the Actavis Generics entities that they are producing the documents jointly produced by Allergan and those entities under the "Acquired Actavis" Bates labels.  There is therefore no dispute between the parties.

**Temporal Scope:**  Plaintiffs appear to object to Allergan's temporal scope, specifically to the end date of August 31, 2017; however, this was the timeframe used for Allergan's production in the MDL.  While you state that "the opioid crisis in San Francisco continues unabated to this day" and that "[i]n fact, in 2019, fentanyl overdoses more than doubled in San Francisco alone," those are arguments for an extended temporal scope for Plaintiffs' production, not Allergan's, because they relate only to the likelihood that Plaintiffs will have highly probative documents through 2019 and into 2020.  In contrast, Allergan has not conducted any marketing visits to prescribers since the end of 2012, and none of its affiliates have been DEA registrants such that they would have suspicious order monitoring obligations since the former affiliates that were DEA registrants were transferred to Teva in 2016.  Therefore, any expansion of the end date beyond that used in the MDL would not be remotely proportional.  Nor are Plaintiffs correct that the Court's setting a fact discovery deadline of January 21, 2021 means "Allergan must produce all responsive documents on a rolling basis" through that date.  January 21, 2021 is the deadline for the completion of fact discovery; it is not the end date for the parties' document productions.

**Identification of Responsive Documents by Bate Range:**  Plaintiffs appear to request the specific Bates numbers of documents that are responsive to each of Plaintiffs' broad Requests.  We are aware of no such requirement.  If you have authority that you believes supports it, please share it.  But the parties should not need to debate this issue either:  If there are aspects of particular Requests for which Plaintiffs request additional information about responsive documents by Bates number, please identify them so that we may consider your request.  If Plaintiffs do choose to make such a request, please confirm that Plaintiffs will agree to provide commensurate information by Bates number regarding Plaintiffs' production.

**Geographic Scope:**  Allergan confirms that it has not restricted its production by geographic scope; nor does Allergan intend to restrict any future productions by geographic scope.

**Documents Equally Available to Plaintiffs:**  Allergan confirms that it is not withholding documents solely on the basis that they are equally available to Plaintiffs.  Please confirm that Plaintiffs will withdraw this same objection from its responses to Manufacturer Defendants' RFPs as well.

**Attorney-Client Privilege:**   Plaintiffs ask that Allergan provide a privilege log corresponding with its productions to date.  Allergan hereby deems produced those privilege logs.  If Plaintiffs' counsel does not have access to them (we understand that they do from the MDL), please let us know.  Allergan further confirms that if it makes any additional productions in this

## KIRKLAND & ELLIS LLP

Dory P. Antullis
August 11, 2020
Page 4

case, it will provide any requisite privilege logs, and it agrees to deem produced here any privilege logs produced in the MDL pursuant to DR 22 in the future.  Please confirm that Plaintiffs will timely provide privilege logs corresponding with their productions too.

### II. Specific Requests

Your July 24 letter also raises several questions about Allergan's objections and responses to specific RFPs.  Allergan's responses to each are below.

**Incorporation of General Objections, Objections to Instructions, and Objections to Definitions:**  Plaintiffs take issue with Allergan's incorporation of its General Objections, Objections to Instructions, and Objections to Definitions into its responses to specific RFPs.  None of the authorities you cite suggest—let alone hold—that this common procedure is improper.  Nor does the requirement that objections must be stated with specificity prohibit this convention Allergan has specifically stated its objections, and in many cases even noted on which objections it is not withholding documents.  Indeed, Plaintiffs have done materially the same thing that they now criticize in their Responses to Manufacturer Defendants' First Set of RFPs.  For example, Plaintiffs purport to "object to Manufacturer Defendants' definition of 'Plaintiffs' and 'You'" in their "Preliminary Statement"—yet, Plaintiffs do not repeat that objection in response to each RFP that uses those terms.  But the parties do not need to argue over Plaintiffs' attempt to elevate form over substance:  If Plaintiffs would like to know whether any specific General Objections, Objections to Instructions, and Objections to Definitions apply to any particular RFPs, please let us know which ones so that we can consider Plaintiffs' request.

**Production of additional documents beyond those produced in other cases:**  Plaintiffs appear to quarrel with Allergan's citation of documents by Bates number from several other cases in response to Request Nos. 1-5 as well as 7-9.  As an initial matter, Allergan confirms that it does not presently intend to produce additional responsive documents (beyond those included in any future Discover Ruling No. 22 productions).  While Plaintiffs claim that "[i]t should be noted that Allergan's discovery *in the MDL* thus far has been greatly compressed" and that "[i]t is disingenuous for Allergan to simply refer to *the MDL* as though the universe of responsive documents somehow lies within it" (emphasis added), not only is that untrue but Allergan has deemed produced in this action documents far beyond those that were produced in the MDL Track One cases to which Plaintiffs refer.  Those include Allergan's full production from a case also purportedly brought on behalf of "the People of the State of California" that is pending in Orange County Superior Court, among several others.  In light of these productions, Allergan has provided Plaintiffs with many more documents than Plaintiffs would receive in a typical case.  In contrast, Plaintiffs have not produced any documents at all in response to Defendants' RFPs.  Nonetheless, if Plaintiffs believe there are additional documents/data sought by your Requests that have not

## KIRKLAND & ELLIS LLP

Dory P. Antullis
August 11, 2020
Page 5

been produced, please let us know specifically what you believe is missing so that we may consider it.

  **RFP No. 1:**  Allergan stands by its objection to the phrase "your lobbying efforts" as vague and ambiguous as used here, but the parties need not debate its meaning as Allergan confirms it is not withholding documents on this basis.  Further, Allergan disagrees that new custodians are required to reflect any lobbying by Allergan.  If Plaintiffs are requesting a specific additional custodian, please identify him or her.  Regardless, in contrast to Plaintiffs (who so far have agreed to only 18 custodians despite having hundreds more individuals with pertinent roles than Allergan does), Allergan has provided custodial documents for more than 65 custodians.  Your letter states that "in 2015 Allergan lobbied Congress on S.483, the 'Ensuring Patient Access and Effective Drug Enforcement Act of 2016"; however, Allergan registered for lobbying for activities related to that bill, but it did so out of an abundance of caution and we are aware of no lobbying that was actually done related to it.

  **RFP No. 2:**  Thank you for your clarification that the reference to "transactional data" in this Request is to the types of data Allergan produced in the MDL.  On that understanding, Allergan withdraws its objection to this term as vague and ambiguous.

  **RFP No. 3:**  Thank you for your clarification of the terms "direct customers . . . in the State of California" and "downstream customers . . in the State of California."  On that understanding, Allergan withdraws its objection to these terms as vague and ambiguous.

  **RFP No. 4:**  Allergan objected to the phrase "investigations, internal or external, concerning the distribution of opioids in the State of California" as vague and ambiguous.  Allergan confirms it is not withholding any documents on the basis of this objection.

  **RFP No. 5:**  Allergan objected to the phrase "pharmacy franchise programs or rebate or discount programs or services you offered to your customers" to the extent not related to opioid pain medications.  Your letter states that "Plaintiffs agree the relevant programs and services intended this Request are those that *relate* to opioid pain medications" but that "they need specifically reference opioids or relate *solely* to opioid pain medications be relevant and responsive."  (emphasis in original)  Allergan agrees.

  **RFP Nos. 6 and 10:**  RFP No. 6 seeks "[a]ll documents reflecting an accounting of the August 2, 2016 transaction between Allergan plc and Teva Pharmaceutical Industries, Ltd. concerning the sale of the Actavis Generics Business, including documents showing the flow of all such funds through Allergan plc and/or any other Allergan subsidiary or Allergan-affiliated entity from the date of the transaction through the present."  RFP No. 10 seeks "[a]ll documents concerning your negotiation of your 2018 settlement agreement [Teva], including, but not limited

## KIRKLAND & ELLIS LLP

Dory P. Antullis
August 11, 2020
Page 6

to, Teva Ltd.'s indemnity concerning any claim or potential claim by you for indemnity and/or assumption of liability with regard to the opioid litigation under your 2018 settlement agreement with Teva Ltd. (such as, by way of example, communications between you and Teva Ltd. regarding the indemnity obligation and/or assumption of liability, any disputes concerning the indemnity and/or assumption of liability obligations and any arbitration or other proceedings initiated to resolve any disputes concerning Teva Ltd.'s obligations under your 2018 settlement agreement)."

In response, Allergan did not agree to produce any documents but rather interposed the following objections, among others. *First*, these documents are irrelevant. Neither the flow of funds from the 2016 transfer of the generics companies to Teva (RFP No. 6) nor documents concerning the negotiation of the 2018 agreement (RFP No. 10) bears on any issue in dispute. *Second*, to the extent there is any marginal relevance (which there is none), it is so remote as to render production disproportional. *See* Fed. R. Civ. P. 26(b)(1). *Third*, RFP No. 10 in particular seeks documents that are overwhelmingly likely to be protected by the attorney work product protection, attorney-client privilege, Federal Rule of Evidence 408, and other privileges/protections precluding the production of settlement negotiations and offers.

Your letter asks Allergan to nonetheless agree to produce additional documents responsive to these Requests. None of your arguments, though, is availing. While you state that "[p]revious discovery rulings have already determined that Allergan is responsible for the production of documents relating to its relationship with Teva" and that "Special Master Cohen has specifically recognized the relevance of the contract between Allergan and Teva Ltd. and of Teva Ltd.'s agreement to indemnify Allergan," you did not cite any rulings, much less any that compel the production of these documents in particular. Allergan has already produced numerous documents bearing on the transfer of the generics companies to Teva; but, among other defects, these additional documents are irrelevant and disproportional, because neither the flow of funds from the transfer nor the "negotiation" of the 2018 agreement confirming that Allergan bears no liability relating to generics opioids have any pertinence here. Further, that "Allergan plc has consistently contested jurisdiction" (as your letter states) does not support Plaintiffs' requests, because not only has this Court not authorized jurisdictional discovery but these documents have no bearing on the jurisdictional inquiry.

Thus, because Plaintiffs have made no showing that the requested materials have any relevance at all, much less that they are proportional (especially in light of the numerous privileges/protections triggered by the documents requested by RFP No. 10), Allergan does not agree to provide additional documents responsive to these Requests. If Plaintiffs can explain why it believes these particular documents are relevant and proportional, please let us know.

## KIRKLAND & ELLIS LLP

Dory P. Antullis
August 11, 2020
Page 7

**RFP No. 7:** Thank you for your clarification of the term "indirect marketing" in this context. On that understanding, Allergan withdraws its objection to this term as vague and ambiguous.

**RFP No. 8:** Allergan objected to the phrase "relating to orders of interest" as overbroad, unduly burdensome, not proportional, vague and ambiguous, because it is not clear how closely "relate[d]" to an "order[] of interest" a document needs to be to qualify, or precisely what Plaintiffs have in mind. Allergan confirms that it has deemed produced documents about its former affiliates' suspicious order monitoring systems' flagging of orders as "orders of interest," as well as documents about such orders itself. If those are the types of documents this Request calls for, the parties have no dispute.

**RFP No. 9:** Allergan objected to the phrase "any 'audit' or other examination . . . of your process and plans to comply with the federal Controlled Substances Act and the California Uniform Controlled Substances Act" as vague and ambiguous in this context. Your letter states that "Plaintiffs cannot discern what could be vague about the phrase." Allergan agrees and withdraws the objection.

\* \* \*

We trust that the above resolves your concerns regarding Allergan's responses to Plaintiffs' RFPs. If you have additional questions, please let us know.

           Sincerely,

           /s/ Karl Stampfl
           Karl Stampfl

cc: Other Plaintiffs' counsel (via email)
   Other Defendants' counsel (xOpioidSFAllDefs@arnoldporter.com)