# EXHIBIT 18

**Robbins Geller**
**Rudman & Dowd LLP**

| | | | | |
|---|---|---|---|---|
| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Thomas E. Egler
tome@rgrdlaw.com

June 12, 2019

<u>VIA EMAIL</u>

Donna M. Welch
KIRKLAND & ELLIS LLP
200 North LaSalle
Chicago, IL  60654
donna.welch@kirkland.com

Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
rebecca.hillyer@morganlewis.com

Jennifer Levy
Catie Ventura
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
jennifer.levy@kirkland.com
catie.ventura@kirkland.com

Jonathan E. Maier
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C.  20004-2541
jonathan.maier@morganlewis.com

Re:     *In re National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio)
         Discovery Issues

Counselors:

This correspondence relates to plaintiffs' upcoming response to Allergan PLC's motion to dismiss the bellwether complaints on jurisdictional grounds, two letters sent by Donna Welch and one letter sent by Rebecca Hillyer on May 31, 2019, and subsequent correspondence regarding the issues raised in those letters.

**I.      Allergan's Failure to Produce Documents and Information Relating to Jurisdictional Discovery**

On Thursday, June 6, 2019, plaintiffs and Allergan (as well as Mallinckrodt and Teva) filed a stipulation extending the briefing deadline for the filing of the opposition to Allergan PLC's motion to dismiss (ECF No. 1258 in the MDL) until June 21, 2019.  *See* ECF No. 1600.  The basis of the extension was to "permit Plaintiffs adequate time to analyze Defendants' discovery responses." *Id*. at 1.

That schedule was based upon a May 29, 2019 representation by Donna Welch to Special Master Cohen that Allergan's "general ledger and additional materials sufficient to reflect inter-company transfers to or from" its U.S. subsidiaries would be produced by June 7, 2019 "and sooner if we are able."  *See* D. Welch May 29, 2019 email to D. Cohen et al.  On June 7, 2019, however,

Robbins Geller
Rudman & Dowd LLP

Counsel for Allergan and Teva
June 12, 2019
Page 2

Allergan announced to plaintiffs (but not the Special Master) it would not make the production that day, but might "next week." *See* T. Knapp June 7, 2019 email. The following day Allergan produced more than 300 pages of 2019 "accounting policies" that it had said did not exist a week before, but still did not produce the general ledger or other information due to be produced. All of this proceeds from an April order compelling production.

As detailed below, on the issues relating to Allergan's jurisdictional motion to dismiss, plaintiffs will seek appropriate relief from the Court, including striking the motion and the defense for non-compliance with the Court's orders, if discovery ***it was ordered to produce in April*** is not produced by Friday, June 14, 2019. The outstanding issues are as follows:

**A.     Category 4 Document Request: Allergan PLC "Policies Regarding Accounting"**

In her May 31, 2019 letter regarding jurisdictional discovery, Donna Welch stated that Allergan "conducted a good faith search for any separate Allergan plc policies related to GAAP or any other aspect of accounting and did not locate any." May 31, 2019 D. Welch Letter at 1. Subsequently, on June 8, 2019, Allergan produced a document entitled "US GAAP Allergan plc Accounting Policies" and a handful of other Allergan PLC policies regarding accounting. *See* email from T. Knapp, June 8, 2019. Those documents have now apparently been produced as Allergan_MDL_04451515 to Allergan_MDL_04451815  We have identified a number of issues with these documents:

First, the "US GAAP Allergan plc Accounting Policies" document is from this year (2019). Allergan is required produce all such manuals for "one year prior to the launch of each relevant Opioid Product through the date of Your response." The prior year policies must be produced.

Second, the policies covering Internal Controls over Financial Reporting ("ICFR"), Inter-Company Loans, and Inter-Company Accounting and Settlement, are plainly not the only three relevant policies the Company maintains. For example, they do not detail the vast majority of policy descriptions in the "Critical Accounting Estimates" referenced in the Report on Form 10-K. Allergan has been ordered to produce all of its "policies regarding accounting." *In Re: National Prescription Opiate Litigation*, No. 1:17-md-02804-DAP, ECF No. 1512 at 6-7 (N. D. Ohio, April 3, 2019). This handful of documents is not comprehensive in scope of policy, or in time frame. Allergan must produce the comprehensive set for each year the PLC has been in existence.

Third, Tim Knapp's June 8, 2019 email states that further "accounting policies" are listed in Allergan's SEC filing on Form 10-K. *See* June 9, 2019 T. Knapp email. This is incorrect. While the disclosures he points to describe some of the entity's accounting policies, these descriptions are not the policies themselves.

**Robbins Geller**
Rudman & Dowd LLP

Counsel for Allergan and Teva
June 12, 2019
Page 3

Allergan's policies are known to the Allergan accounting and financial staff, and are the subject of the PricewaterhouseCoopers LLP audits described in the 10-K.  Further, Allergan PLC represented in its 2016 and earlier Irish Statutory reports that its directors were required to "select suitable accounting policies and then apply them consistently."  Allergan Public Limited Company "2016 Irish Annual Report" at 79.  It is a finite group of documents, over a finite number of years.

The Special Master ordered defendants such as Allergan PLC to produce all of its "policies regarding accounting" on April 3, 2019.  ECF No. 1512 at 6-7.  Allergan was to produce them or object by May 10, 2019.  It did neither.  If Allergan does not fully comply with the Court's April 3, 2019 Order by June 14, 2019, we will seek relief from the Special Master.

**B.      Category 5 Document Request: Allergan PLC "Policies Regarding Corporate Management to the Extent Such Policies Bear on Opioid Related Subsidiaries"**

As it did with policies regarding accounting, Donna Welch's May 31, 2019 letter disclaims the existence of any "policies regarding corporate management to the extent such policies bear on opioid related subsidiaries."  May 31, 2019 letter from D. Welch at 1.  As Allergan has now determined such accounting policies to exist, we ask that it also provide the relevant management policies.

Again, if Allergan does not agree to produce all of the documents described above by June 14, 2019, we will seek relief from the Special Master.

**C.      Interrogatory No. 2**

Allergan refuses to identify former subsidiaries that were involved various aspects of its generic prescription opioid drug business, as well as its "corporate relationship to those subsidiaries," because it interprets the interrogatory to only apply to the present.  Welch May 31 letter at 1-2.  The interrogatories seek information from "one year prior to the launch of each relevant Opioid Product through the date of Your response" as ordered by the Court.  Plaintiffs' First Set of Interrogatories to Allergan PLC at 4.  Allergan did not object to this time frame and it must fully answer this interrogatory.

To the extent that Allergan PLC is adopting the statements and documents submitted by Steve Kaufhold in response to 30(b)(6) topic 43.1, we expect that it will do so in its interrogatory responses. If Allergan does not fully amend its responses by June 14, 2019, plaintiffs will seek relief from the Special Master.

**Robbins Geller**
**Rudman & Dowd** LLP

Counsel for Allergan and Teva
June 12, 2019
Page 4

### D.    Interrogatory No. 5

Donna Welch's May 31 letter also objects to providing a substantive answer to Interrogatory No. 5, which asks Allegan PLC to "Identify all employees hired and terminated in the United States as a result of decisions by You to hire and terminate those employees, including, but not limited to, the employees of Your direct and indirect subsidiaries."

It is not enough to respond that Allergan PLC did not have employees.  As the interrogatory makes clear, we also seek the identity of all employees of Allergan PLC's direct and indirect subsidiaries who were hired or terminated in the U.S. due to Allergan PLC's decisions.  As Kaufhold testified, he worked as treasurer for Allergan PLC's, but was paid by the Allergan Sales subsidiary. Kaufold Deposition at 96:1-4.  He testified that he was the "treasurer of several legal entities in the Allergan group of companies," including Allergan PLC.  Kaufhold Deposition at 95:21-96:8.  To the extent there are other positions at Allergan PLC that are occupied by employees of the "legal entities in the Allergan group of companies" that Kaufhold identified, we expect that you will identify them in amended interrogatory responses.

If Allergan does not fully amend its responses by June 14, 2019, plaintiffs will seek relief from the Special Master.

### E.    Interrogatory No. 8

Interrogatory No. 8 seeks the identity of "all Persons who were involved in conducting any due diligence" in the Warner Chilcott merger and tax avoidance maneuver.  Plaintiffs' First Set of Interrogatories to Allergan PLC at 5.  The May 31 letter raises a new burden objection, not made before, to producing the full list of Persons involved in due diligence.  Welch May 31 letter at 3. Instead the letter states that Allergan will decide who are the "individuals and entities most significantly involved with due diligence" and provide those names.  *Id*.  This is not acceptable. Copying the list of people and entities that provided due diligence to the merger and tax avoidance maneuver is not a burdensome task, and your late-added objection is not properly made.

If Allergan does not fully amend its responses by June 14, 2019, plaintiffs will seek relief from the Special Master.

These five issues are in addition to the general ledgers.  As to those documents, as we have previously noted, we expect that they will be produced for all years at issue, and in a manner that the reader can understand any codes, account numbers or other abbreviated information.

**Robbins Geller**
**Rudman & Dowd** LLP

Counsel for Allergan and Teva
June 12, 2019
Page 5

## II.  Other Discovery Issues

Separately, there are a number of issues remaining relating to the letter to defense counsel dated May 22, 2019, which was responded to, separately, by counsel for Allergan and counsel for Teva.  The issues are as follows:

### A.  Lisa Pehlke Deposition

As we have previously discussed, we plan to take the Pehlke deposition on July 10, 2019 in Ann Arbor, Michigan, starting at 10:00 a.m.  We will forward you the deposition subpoena in the next few days.

### B.  Cegedim-Dendrite (Buzzeo) Audits and Reports

Donna Welch's May 31 letter states that counsel for Allergan has been seeking the reports regarding work performed by the Buzzeo consultancy on behalf of Watson and Actavis from the current owner of the relevant entity, IQVIA.  Please send us a copy of any communications you sent to IQVIA or any of its subsidiaries or affiliates concerning this issue, cc us on all relevant correspondence going forward, and keep us up to date regarding any delivery of these documents.

Further, Donna Welch's letter states that you "have no reason to believe that the document was deleted or destroyed, but we have been unable to find it despite our diligent efforts."  *See* May 31, 2019 letter from D. Welch at 2.  If the documents have not been destroyed, please produce them by Monday, June 17, 2019.  Otherwise, it is clear that they once existed in the Watson and Actavis files, but no longer do, and considering that numerous contemporaneous documents have been produced, this issue is ripe for an inquiry regarding spoliation.  To that end, we will seek leave to take further discovery regarding retention and destruction of documents from the Court.

### C.  Data Offloaded to Teva

Rebecca Hillyer's May 31, 2019 letter states that the Teva defendants "collected and are in the process of producing the referenced direct sales data from the legacy Actavis QAD database and direct sales data from the legacy Actavis SAP database" and other databases.  We had asked for production of the documents by May 31, 2019, but two weeks later have received nothing.  Please tell us when these documents will be produced.

### D.  Incomplete Databases

Rebecca Hillyer's May 31, 2019 letter also references the requested reproduction of databases that were incomplete as produced, stating that Teva believed it had "no obligation to undergo this

**Robbins Geller**
**Rudman & Dowd** LLP

Counsel for Allergan and Teva
June 12, 2019
Page 6

additional effort," but agreeing to inquire and produce the documents.  Again, we have received no production or further information.  Please tell us when these documents will be produced.

We have been attempting to piece together the data produced and note that the data produced from the SAP database lacks "Ship to" identification information (either codes or actual entity names and addresses) for at least 20% of customers' orders.

We ask that the entire database, with regard to the opioid prescription drugs at issue in this action, be produced, including every available field.

### E.     DEA Reports

We had asked that Allergan clarify the details and scope of the suspicious order reports it, Actavis and Watson made to the DEA.  Donna Welch's May 31 letter states that "Allergan is unaware of any written record of all suspicious orders reported to the DEA," and therefore "cannot confirm" whether the four reports listed (TopRx, Inc., Capital Wholesale Drug Co., R & S Northeast / Dixon Shane Drug Company, Quality King Healthcare, Inc.) are a comprehensive listing of reports of suspicious orders to the DEA during the time period at issue in this action.  May 31, 2019 letter from D. Welch at 3-5.  To the extent that Allergan becomes aware of further reports of suspicious orders to the DEA, we disagree that now, after discovery has closed, it can "reserve its rights" to supplement the record.  However, to the extent Allergan finds, or knows of, any such documentation, we ask that you immediately provide us details regarding the additional reports.

### F.     IQVIA Manufacturer Codes for Pre-2018 Transactions

Allergan purchased a set of data from IQVIA for use in this litigation, and produced it as discovery in this action.  The data lists drugs that Allergan, Actavis and Watson sold.  *See* May 22, 2019 T. Egler letter.  The set, however, was created after Allergan sold its generic opioid drugs to Teva, and the six manufacturer codes that previously were assigned to Allergan, Actavis and Watson (and Teva) have now been assigned to "Teva."  The codes are as follows:  25837, 3, 26642, 25857, 27530, 26660.

We asked that you tell us which of these codes Allergan understands denotes Allergan, Actavis and/or Watson.  *Id*.  As of May 31, 2019, Allergan had not yet "conducted the analysis to determine" which code applies to the various entities.  May 31, 2019 letter from D. Welch at 5.  We ask that Allergan perform this analysis and tell us results, or refuse to perform the analysis of the six numbers by June 14, 2019, so we can ensure that we agree on the interpretation of the data or seek appropriate relief from the Court.

**Robbins Geller**
**Rudman & Dowd** LLP

Counsel for Allergan and Teva
June 12, 2019
Page 7

Thank you for your attention to these matters.

Very truly yours,

THOMAS E. EGLER

TEE:krj