# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*Track One-B* | MDL No. 2804<br>Case No. 17-md-2804<br>Judge Dan Aaron Polster |

**PHARMACY DEFENDANTS' NOTICE OF NON-CONSENT UNDER
THIS COURT'S GENERAL ORDER NO. 2020-08-2
<u>IN LIGHT OF THE COVID-19 PUBLIC HEALTH EMERGENCY</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

NOTICE OF NON-CONSENT ............................................................................................2
I.    The Court's COVID-19 General Order Appropriately Recognizes the Many Risks and Challenges of Proceeding During the COVID-19 Pandemic That This Trial Would Pose. ..................................................................................................................2
II.    This Court's General Order Contains No Exceptions. ................................................10

CONCLUSION......................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES AND ORDERS**

*Doe v. Oberlin College*,
   No. 20-cv-669, 2020 WL 1696979 (N.D. Ohio Apr. 7, 2020) .............................................. 10

*Frey v. Gangwish*,
   970 F.2d 1516 (6th Cir. 1992) ............................................................................................. 11

*In re: COVID-19 Phased-In Recovery Plan*, Order No. 2020-08-2 (N.D. Ohio
   Aug. 25, 2020) ................................................................................................. 1, 2, 4, 6, 7, 8, 10

*Kerr v. Hurd*,
   No. 07-cv-297, 2009 WL 2905591 (S.D. Ohio Sept. 1, 2009) .............................................. 10

**OTHER AUTHORITIES**

Adrienne DeMoss, *Mistrial in Brazos County After Inmate with COVID-19
   Accidentally Brought to Courthouse*, KBTX (Aug. 19, 2020),
   https://bit.ly/3jxRfdI .............................................................................................................. 9

Apoorva Mandavilli, *'A Smoking Gun': Infectious Coronavirus Retrieved From
   Hospital Air*, N.Y. Times, Aug. 11, 2020,
   https://www.nytimes.com/2020/08/11/health/coronavirus-aerosols-
   indoors.html?referringSource=articleShare .......................................................................... 3

CDC, *Considerations for Events and Gatherings* (July 7, 2020),
   https://www.cdc.gov/coronavirus/2019-ncov/community/large-
   events/considerations-for-events-gatherings.html ................................................................ 5

CDC, *COVID-19 Employer Information for Office Buildings* (July 9, 2020),
   https://www.cdc.gov/coronavirus/2019-ncov/community/office-buildings.html .................. 3

CDC, *COVID-19 Guidance for Shared or Congregate Housing* (Aug. 22, 2020),
   https://www.cdc.gov/coronavirus/2019-ncov/community/shared-congregate-
   house/guidance-shared-congregate-housing.html ................................................................. 7

CDC, *Travel During the COVID-19 Pandemic* (Aug. 26, 2020),
   https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-
   covid19.html .......................................................................................................................... 6

CDC, *U.S. COVID-19 Cases & Deaths by State*,
   https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html
   (last visited Sept. 1, 2020) ...................................................................................3

Dani Kass, *COVID-19 IP Catch-Up: Remdesivir Drama & Jury Trial Regret*
   (Aug. 7, 2020), https://bit.ly/32dJlir...................................................................1

Eric Levenson, *Staying Safe Isn't Just About Hygiene and Distance. It's About
   Time, Too*, CNN (May 19, 2020)
   https://www.cnn.com/2020/05/18/us/coronavirus-time-risk/index.html ...............5

Frances Robles, *Notre Dame, Michigan State Shifting Online as Campus
   Outbreaks Grow*, N.Y. Times, Aug. 18, 2020,
   https://www.nytimes.com/2020/08/18/us/notre-dame-coronavirus.html...............9

Jan Hoffman, *Fearing a 'Twindemic,' Health Experts Push Urgently for Flu
   Shots*, N.Y. Times, Aug. 16, 2020,
   https://www.nytimes.com/2020/08/16/health/coronavirus-flu-vaccine-
   twindemic.html ....................................................................................................3

Matt Richtel, *Going Up? Not So Fast: Strict New Rules to Govern Elevator
   Culture*, N.Y. Times, June 26, 2020,
   https://www.nytimes.com/2020/06/26/health/coronavirus-elevator-
   reopen.html .........................................................................................................7

Nick Hytrek, *COVID-19 Causes Mistrial in Dixon County Child Abuse Case*,
   Sioux City Journal (Aug. 13, 2020), https://bit.ly/3gPVu2o ..................................9

Ohio Dep't of Health, *COVID-19 Travel Advisory* (Aug. 26, 2020),
   https://coronavirus.ohio.gov/wps/portal/gov/covid-19/families-and-
   individuals/COVID-19-Travel-Advisory/ ............................................................5

Ohio Dep't of Health, COVID-19 Update (July 30, 2020),
   https://coronavirus.ohio.gov/wps/portal/gov/covid-19/resources/news-
   releases-news-you-can-use/COVID-19-Update-07-30-20 ....................................4

Ohio Jury Trial Advisory Group, *Standards and Practices Essential to the
   Resumption of Jury Trials in Ohio, Report and Recommendations* (May 12,
   2020), https://bit.ly/2QpuiwZ ..............................................................................1

Ohio Public Health Advisory System, https://coronavirus.ohio.gov/
wps/portal/gov/covid-19/public-health-advisory-system/ (last visited Sept. 1,
2020)..................................................................................................................4

R. Robin McDonald, *'The Best of Who We Are': Dougherty Probate Judge Dies
After Contracting Covid 19*, Law.com Daily Report (Apr. 3, 2020),
https://bit.ly/31SQm9P .....................................................................................1

Suzanne Rowan Kelleher, *Why You Should Avoid Hotel Elevators During The
Pandemic*, Forbes Aug. 10, 2020, https://bit.ly/3aFhJXA; .....................................7

U.S. Courts COVID-19 Judicial Task Force, Report of the Jury Subgroup,
*Conducting Jury Trials and Convening Grand Juries in the Age of COVID-19*
(June 4, 2020), https://bit.ly/3hcpsPh................................................................1

World Health Organization, *Transmission of SARS-CoV-2: Implications for
Infection Prevention Precautions* (July 9, 2020), https://bit.ly/3lniGZF ................3

Pursuant to this Court's General Order No. 2020-08-2, the Pharmacy Defendants hereby notify this Court that they do not consent to the Track One-B trial occurring as currently scheduled on November 9, 2020 because of the COVID-19 pandemic.

## INTRODUCTION

The effects on jury trials of the COVID-19 pandemic vary "state by state, district by district, and perhaps even division by division," with different States and localities having different "'gating criteria' in determining when to reconvene" juries.[1] On top of that are the "unique challenges" presented by any jury trial, and most especially large and complex ones—from navigating how to "continuously communicate with clients," to the danger of "large jury venire pools" containing a mix of pre-symptomatic or asymptomatic carriers and high-risk individuals, and even to death from an ill-advised jury trial. *In re: COVID-19 Phased-In Recovery Plan*, Order No. 2020-08-2, at 2 (N.D. Ohio Aug. 25, 2020) ("General Order").[2] All of this means that the "appropriate time" to begin jury trials depends on a "multitude" of factors; all cases—big and small, civil and criminal, long and short—cannot be treated the same. Task Force Rep. at 1.

In its recently issued General Order, the Northern District of Ohio agreed: All cases will *not* be treated the same. Some cases will begin to be tried by juries—small cases that will not be any longer than a week and in which the judge and all parties and counsel consent on the record. And even then, only one such case may occur at each courthouse at any given time. This is not

---

[1] U.S. Courts COVID-19 Judicial Task Force, Report of the Jury Subgroup, *Conducting Jury Trials and Convening Grand Juries in the Age of COVID-19*, at 1 (June 4, 2020), https://bit.ly/3hcpsPh (hereinafter "Task Force Rep."); *see also* Ohio Jury Trial Advisory Group, *Standards and Practices Essential to the Resumption of Jury Trials in Ohio, Report and Recommendations* (May 12, 2020), https://bit.ly/2QpuiwZ.

[2] *See, e.g.*, R. Robin McDonald, *'The Best of Who We Are': Dougherty Probate Judge Dies After Contracting COVID-19*, Law.com Daily Report (Apr. 3, 2020), https://bit.ly/31SQm9P; Dani Kass, *COVID-19 IP Catch-Up: Remdesivir Drama & Jury Trial Regret*, Law360 (Aug. 7, 2020), https://bit.ly/32dJlir.

1

such a case. The Track One-B trial will be a multi-week trial, with scores of out-of-state parties and counsel (not to mention staff and witnesses). It presents the worst-case scenario for the risks addressed in the General Order.

For the COVID-related reasons explained below, Pharmacy Defendants and their counsel do not consent to trial in November.

## NOTICE OF NON-CONSENT

The General Order recognizes the many risks and challenges that the pandemic poses—not just to "vulnerable individuals," but also to persons "caring for vulnerable individuals in their households" and those who "have child care issues due to the closure of schools and/or daycare centers due to COVID-19." General Order at 2. In view of those considerations and others, the General Order announces a blanket rule under which no jury trial will occur if any of the following apply: (1) the trial is longer than one week; (2) there is already a jury trial taking place at the particular courthouse; or (3) any of "the judge, plaintiff, plaintiff's counsel, defendant, [or] defendant's counsel," for a "COVID related reason," does not "consent on the record." *Id.* at 3. If any of those three conditions applies, there will be no jury trial while the Order remains in place. *See id.* Because the General Order carries no exceptions, the Track One-B trial cannot go forward under it for two separate reasons: It will be longer than a week, and it involves parties and counsel who, for COVID-related reasons, do not consent to trial.

## I. THE COURT'S COVID-19 GENERAL ORDER APPROPRIATELY RECOGNIZES THE MANY RISKS AND CHALLENGES OF PROCEEDING DURING THE COVID-19 PANDEMIC THAT THIS TRIAL WOULD POSE.

**1. Longer than One Week.** The Track One-B trial is set to begin on November 9, and will not end until the week of December 14. Doc. 3234 (Track One-B Civil Jury Trial Order) at 2 (Mar. 19, 2020). That four-plus-week trial does not qualify under the General Order.

2

**2. Lack of Consent.**  For a host of COVID-related reasons, neither the Pharmacy Defendants nor their counsel consent to the November 9 trial.

The deadly COVID-19 pandemic has created an unprecedented national emergency that has shut down much of the world around us, including our courts.  And for good reason:  More than 183,000 people have died from COVID in the past 8 months in the United States alone.[3]

The parties, their counsel, and the public are therefore legitimately concerned about the further spread of this deadly disease, especially as new evidence emerges that "aerosols contain live virus" that can travel up to 16 feet—and even farther through HVAC systems.[4]  And research has shown that much of the spread is caused by people transmitting the virus up to three days before they show any symptoms.[5]  To make matters worse, public health experts fear the pandemic could collide with the spread of seasonal influenza to overwhelm hospitals with twin outbreaks.[6]  In these unprecedented times, gathering the hundreds of potential jurors, party representatives, lawyers, public, and court staff and security in the courthouse and courtroom for five weeks or more of trial and trial-related proceedings is, to say the least, unnecessarily risky.

Defendants' trial teams include members with various health vulnerabilities (including age and certain medical conditions) and face additional challenges identified in the General Order.

---

[3] CDC, *U.S. COVID-19 Cases & Deaths by State*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Sept. 1, 2020).

[4] Apoorva Mandavilli, *'A Smoking Gun': Infectious Coronavirus Retrieved From Hospital Air*, N.Y. Times, Aug. 11, 2020, https://www.nytimes.com/2020/08/11/health/coronavirus-aerosols-indoors.html?referringSource=articleShare; *see also* CDC, *COVID-19 Employer Information for Office Buildings* (July 9, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/office-buildings.html.

[5] World Health Organization, *Transmission of SARS-CoV-2: Implications for Infection Prevention Precautions* (July 9, 2020), https://bit.ly/3lniGZF.

[6] *See* Jan Hoffman, *Fearing a 'Twindemic,' Health Experts Push Urgently for Flu Shots*, N.Y. Times, Aug. 16, 2020, https://www.nytimes.com/2020/08/16/health/coronavirus-flu-vaccine-twindemic.html.

3

There are too many issues to catalogue here, but the following, non-exhaustive list of reasons for Defendants' and their counsel's lack of consent is illustrative:

*Size of the gathering.*  One of the most important ways to slow and stop the spread is to avoid large gatherings.  That is why "[m]ass gatherings in Ohio remain limited to 10 people" under the most recent guidance issued by Governor DeWine.[7]  And that is why, with counties within this District still experiencing a high exposure and spread, state guidance recommends that people "should limit hosting or attending gatherings of any size."[8]

It would defy those limitations to have a venire of dozens, if not hundreds, of people, with scores more staff, security, witnesses, parties, lawyers, and members of the public all in one place for trial.  All of that would be true even if critical members of the trial teams were not at increased risk of illness because they are either above the age of 60, at increased risk due to pre-existing health conditions, or both—but they are.  Potential jurors and court staff would also be at an increased risk.  There is thus no avoiding violation after violation of Ohio's and the CDC's guidelines on gatherings if this trial were to go forward during the pandemic.  Until the pandemic is under control, it is too soon for a gathering like this one.

*Duration of the gathering.*  The trial will entail long days, for a long time.  "Counsel shall be present in the courtroom at 8:30 a.m.," the Court ordered, and trial days "continue until approximately 5:30 p.m."  Doc. 3234 at 2.  Counsel will need to remain in the courthouse during breaks, for full days lasting from November 9 through December 14.  And this is not to mention

---

[7]  Ohio Dep't of Health, COVID-19 Update (July 30, 2020) https://coronavirus.ohio.gov/wps/portal/gov/covid-19/resources/news-releases-news-you-can-use/COVID-19-Update-07-30-20.

[8]  *Id.*; Ohio Public Health Advisory System, https://coronavirus.ohio.gov/wps/portal/gov/covid-19/public-health-advisory-system/ (last visited Sept. 1, 2020); *see also* General Order at 1.

4

other in-court trial-related proceedings scheduled to begin on October 30.  The CDC understandably reports that "the longer [a gathering or] interaction lasts, the higher the potential risk of becoming infected with COVID-19 and COVID-19 spreading."[9]  Indeed, this gathering falls in the CDC's "highest risk" category:  a "[l]arge in-person gathering[] where it is difficult for individuals to remain spaced at least 6 feet apart and attendees travel from outside the local area."[10]

*Travel to Cleveland*.  Before trial begins, everyone would have to get to Cleveland.  And as it currently stands, that will not be easy.  Ohio Department of Health guidelines advise a 14-day self-quarantine for anyone coming to Ohio from a State "reporting positive testing rates of 15% or higher for COVID-19."[11]  Trial participants would thus either have to violate that guideline or monitor whether their State is on or added to the list and then arrive 14 days before trial-related proceedings begin.

Getting to Ohio would not be safe, either.  As Plaintiffs recently identified in their motions in limine for this trial, there are "potential health risks now associated with commercial air travel."  Doc. 3419 (Pls' Mot. To Modify Evid. Rulings) at 6 (Aug. 14, 2020).  The CDC agrees:  "Travel increases your chance of getting and spreading COVID-19."[12]  While Plaintiffs' counsel and their experts may be able to "travel by private aircraft," Doc. 3419 at 6, not everyone will.  Everyone

---

[9] CDC, *Considerations for Events and Gatherings* (July 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/considerations-for-events-gatherings.html.

[10] *Id.*; *see also, e.g.*, Eric Levenson, *Staying Safe Isn't Just About Hygiene and Distance. It's About Time, Too*, CNN (May 19, 2020) https://www.cnn.com/2020/05/18/us/coronavirus-time-risk/index.html.

[11] Ohio Dep't of Health, *COVID-19 Travel Advisory*, (Aug. 26, 2020), https://coronavirus.ohio.gov/wps/portal/gov/covid-19/families-and-individuals/COVID-19-Travel-Advisory/.

[12] CDC, *Travel During the COVID-19 Pandemic* (Aug. 26, 2020), https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html.

5

else would have to chance it, either by taking a commercial flight or by driving, and thus visiting airports, public restrooms, or gas stations—and risk picking up and carrying the virus with them to Cleveland and to the Court.  Indeed, Plaintiffs and this Court have acknowledged the dangers of scores of people—lawyers, staff, experts, party representatives, and more—converging on Cleveland all at once.  *See, e.g.*, Doc. 3405 at 6–7; General Order at 2.

*Childcare*.  As they come to court, counsel, staff, and experts—and possibly jurors too—would be forced to leave children behind.  This is nothing unusual for trial teams traveling to a lengthy trial under normal circumstances; they typically rely on conventional childcare.  But in the era of COVID—when schools are closed or limited and conventional childcare is not safely available, *see* General Order at 2—there is no normal.  Even the proverbial "new normal" changes by the day.  So the individuals involved would likely need to bring someone into their homes to take care of their children, which would pose an additional health risk.  And it still may not even be practicable:  Some childcare measures, such as the assistance of grandparents or other relatives, are themselves precluded by COVID health risks.

*Getting around court*.  The problems would not stop when trial begins.  Even coming and going to the courthouse would have its risks.  Taking transportation to the court, waiting in line for security, going up and down the elevators, getting lunch, and even going to the bathroom or seeking to wash one's hands would take an extraordinary amount of time—and even with precautions would be unsafe.  Take elevators as an example.  "There's a growing body of evidence that using an elevator can increase the risk of contracting COVID-19, including research indicating that the virus can linger in an elevator after an infected person has gotten off."[13]  All it takes is one

---

[13] Suzanne Rowan Kelleher, *Why You Should Avoid Hotel Elevators During The Pandemic*, Forbes, Aug. 10, 2020, https://bit.ly/3aFhJXA; *see also* CDC, *COVID-19 Guidance for Shared or Congregate Housing* (Aug. 22, 2020), https://www.cdc.gov/coronavirus/2019-

person, in one ride up to the courtroom. To mitigate that risk, the Court would face a "daunting puzzler": how to avoid the "logjam" that will result from getting the sheer number of people involved up to the courtroom, especially with guidance suggesting that no more than four people ride in an elevator at a given time.[14]

*Staying in Cleveland.* With few exceptions, trial teams will be living in hotels—and will therefore have constant, everyday exposure to hotel lobbies, elevators, staff, other guests, and those preparing food. Being "in the same hotel room" does not solve anything, Doc. 3405 at 6, for there will be no artificial "bubbles," like those adopted by some sports leagues (with mixed results), around the trial participants. Even quarantining as much as possible—thereby requiring the trial participants to forgo spending weekends and the Thanksgiving holiday with their families—would still leave everyone exposed.

*Communication during trial.* The trial restrictions that the Court proposed to implement to mitigate these health concerns pose their own problems. The Northern District has recognized one "particular[]" challenge: "to attorneys who must continuously communicate with clients during the course of a trial." General Order at 2. Having "just [] one counsel for each defendant and the client rep at the counsel table," and having trial "close-circuited into the[] respective war rooms," as this Court proposed (Doc. 3405 at 5), only makes communication more difficult. The changes the Court envisions might make things marginally safer, *id.*, but they would do so at the expense of effective attorney–client communications, among other things.

---

ncov/community/shared-congregate-house/guidance-shared-congregate-housing.html ("limit[] the number of individuals in an elevator at one time").

[14] Matt Richtel, *Going Up? Not So Fast: Strict New Rules to Govern Elevator Culture*, N.Y. Times, June 26, 2020, https://www.nytimes.com/2020/06/26/health/coronavirus-elevator-reopen.html.

*Avoiding other burdens and the likelihood of a mistrial*. A sprawling trial like this one in the era of COVID raises wide-ranging issues about contact-tracing, testing of others, quarantining, and so on—all of which comes with delay at best, and a cascading mass infection of trial participants, with potentially fatal consequences, at worst. To take just some practical questions the Court would have to confront:

- What, if any, protocols would be in place if someone feels ill one morning? Could trial go on that day? Would these protocols be different if the person feeling ill is a juror, lawyer, judge, witness, court or support staff member, or family member?

- Must everyone share their personal health information, including every symptom (headache, sore throat, fatigue, muscle aches, cough, congestion, shortness of breath, nausea, diarrhea, etc.) with one another, with the Court, and with the other side? Should everyone also share their family members' symptoms? What are the privacy implications of these inquiries?

- If someone tests positive, would the trial halt until everyone is tested and waits to receive results? How long must everyone quarantine? How many would be tested? How would the testing be done? Would a single negative test be enough to resume trial? How long would all of this take?

- What protocols would the Court adopt for exposure of someone participating in the trial to someone in their household or someone else near them?

- If a juror became infected, could all other jurors then opt out?

Even if everyone were able to safely assemble, and even if trial were well underway, everything could fall apart in an instant. That is what has happened with certain schools and sports

leagues.[15]  And that is what has happened with certain trials that started during the pandemic: mistrials were eventually declared.[16]  That would cost massive resources for all involved—the Court, Defendants, Plaintiffs, and the public.

Nor is there any important timing issue to this particular trial that offsets the very substantial risk, if not likelihood, that trial will come to a sudden halt, even if it were able to begin.  Plaintiffs already litigated the first phase of this case and, as a result, already have recovered more than $300 million.  This gives Plaintiffs the money to fight against opioid abuse and addiction while awaiting trial.  While Defendants are mindful of the Court's commitment to advancing the MDL, Track Three—which involves both distribution and dispensing claims—is proceeding apace.  There is no need to risk the health and wellbeing of all involved here for an incomplete bellwether.

\* \* \*

As these examples show, it is simply not possible—and certainly is not wise—to have a trial of this length and scope at this time in this pandemic.  Thus, neither Defendants nor their counsel consent to having this multi-week jury trial starting on November 9.

## II.   THIS COURT'S GENERAL ORDER CONTAINS NO EXCEPTIONS.

This Court's precedent confirms that it "must" follow "the Court's General Order[s]" on "the COVID-19 pandemic."  *Doe v. Oberlin College*, No. 20-cv-669, 2020 WL 1696979, at *1 n.1 (N.D. Ohio Apr. 7, 2020); *see, e.g.*, *Kerr v. Hurd*, No. 07-cv-297, 2009 WL 2905591, at *1 (S.D.

---

[15] *See, e.g.*, Frances Robles, *Notre Dame, Michigan State Shifting Online as Campus Outbreaks Grow*, N.Y. Times, Aug. 18, 2020, https://www.nytimes.com/2020/08/18/us/notre-dame-coronavirus.html.

[16] *See, e.g.*, Nick Hytrek, *COVID-19 Causes Mistrial in Dixon County Child Abuse Case*, Sioux City Journal (Aug. 13, 2020), https://bit.ly/3gPVu2o; Adrienne DeMoss, *Mistrial in Brazos County After Inmate with COVID-19 Accidentally Brought to Courthouse*, KBTX (Aug. 19, 2020), https://bit.ly/3jxRfdI.

9

Ohio Sept. 1, 2009) (standing orders are binding). In an earlier case during the pandemic, this Court noted that the COVID-19 General Order at issue required it to hold a "tele-hearing." *Doe*, 2020 WL 1696979, at *1. In this case, the General Order requires this Court to postpone this at-least-four-week trial in which parties and counsel do not consent. *See* General Order at 3.

By email on August 27, however, Special Master Cohen advised the parties as follows:

> Judge Polster asked me to convey to you that this provision does not apply to the Track 1B trial scheduled for this November. All Judges in the NDOH are aware that the Track 1B trial is going forward (and does not need consent from the parties), will be the only jury trial taking place in the Cleveland courthouse during its scheduled period, and will take more than one week. The General Order purposefully did not address exceptional cases.

Exhibit A, Email from David R. Cohen to the Parties, copying Judge Polster (Aug. 27, 2020). Through this email, therefore, the Court "convey[ed]" to the parties that the General Order contains an implicit exception for the Track One-B trial. *Id.*

But the General Order contains no such exception. Instead, it recites the many health concerns that COVID-19 poses for "the public, court personnel, counsel, litigants, jurors, and all other case participants," and it acknowledges that some jury trials are too dangerous to hold at this time—no matter the precautions that a given judge may implement to mitigate some risk. General Order at 2. The General Order's concerns apply fully, and even more so, to the participants in the Track 1B trial. By its terms, the General Order thus applies here in total.

Courts may not "read an exception into" a written legal instrument "that is nowhere to be found in its text," even if (unlike here) the exception were "an eminently sensible one." *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). Thus, the fact that "[t]he General Order purposefully did not address exceptional cases," Exhibit A at 1, means that there *are* no "exceptional cases"; all cases are to be treated alike under the General Order. For any jury trial to

10

take place (exceptional or not), it must meet the Northern District's three conditions. The Track One-B trial does not.

The way this case *is* "exceptional," moreover, only underscores why no trial should take place at this time: to try this case would be exceptionally dangerous. The General Order allows jury trials of a week or less; this trial would be at least four times as long. The General Order contemplates reducing the number of people at any given courthouse at any given time; this trial, with its many parties, lawyers, and witnesses, and the jury venire, would necessitate hundreds of people gathering in one place. And the General Order acknowledges the risks and challenges that the pandemic poses and requires participants to opt in; this trial would force the parties and counsel headlong into those risks and challenges, giving them no choice in the matter. To the extent this Court were right that "exceptional" cases should be treated differently under the General Order, those cases require *more* precautions, not fewer.

## CONCLUSION

For these reasons, neither the Pharmacy Defendants nor their counsel consent to the Track One-B trial on November 9.

Dated: September 1, 2020                     Respectfully submitted,


/s/   John M. Majoras
John M. Majoras
Benjamin C. Mizer
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com
E-mail: bmizer@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*



/s/   Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Rx Services, Inc. and CVS Indiana, L.L.C.*

/s/ Robert M. Barnes (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for HBC Service Company*

/s/ Kaspar Stoffelmayr (consent)
Kaspar Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Attorney for Walgreen Co.*

/s/ Kelly A. Moore (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Attorneys for Rite Aid of Maryland, Inc., d/b/a Mid-Atlantic Customer Support Center*

/s/ Timothy D. Johnson (consent)
Timothy D. Johnson
Gregory E. O'Brien
CAVITCH FAMILO & DURKIN, CO. LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, OH 44114
Phone: (216) 621-7860
Fax: (216) 621-3415
Email: tjohnson@cavitch.com
Email: gobrien@cavitch.com

*Counsel for Discount Drug Mart, Inc.*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system to the Court and all counsel of record on September 1, 2020.

/s/    John M. Majoras

John M. Majoras
JONES DAY
51 Louisiana Ave NW,
Washington, DC 20001
(202) 879-3939
E-mail: jmmajoras@jonesday.com