# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:

*Track One-B Cases*

**MDL No. 2804**

**Case No. 17-md-2804**

**Judge Dan Aaron Polster**

## <u>JOINT SUBMISSION REGARDING JURY INSTRUCTIONS AND VERDICT FORMS</u>

## TABLE OF CONTENTS

INTRODUCTION AND PARTY STATEMENTS .........................................................................1

PART I – AGREED-UPON INSTRUCTIONS ............................................................................11

PART II – PLAINTIFFS' PROPOSED INSTRUCTIONS AND VERDICT FORM
WITH DEFENDANTS' OBJECTIONS .......................................................................................17

PART III – DEFENDANTS' PROPOSED INSTRUCTIONS AND VERDICT FORM
WITH PLAINTIFFS' OBJECTIONS ...........................................................................................52

**INTRODUCTION AND PARTY STATEMENTS**

Pursuant to this Court's order, Dkt. 3308, counsel exchanged proposed jury instructions, verdict forms, and interrogatories on Wednesday, July 15, 2020.  Since that time, counsel have conferred and made diligent efforts to reach agreement on their respective proposals.

Although the parties have reached agreement in some areas—including, for example, the removal of "or should have known" from the Intentional Conduct instruction—significant areas of disagreement remain.  The parties dispute significant, substantive aspects of the causes of action, affirmative defenses, and the parties' respective burdens of proof.  These are matters on which the parties cannot agree without, in Defendants' view, compromising their rights.

Nor can the parties reach agreement regarding the verdict form, on which there is intractable disagreement regarding the level of specificity and the content of the questions that the jury should be asked.  Defendants view their requested form as necessary to preserve their right to a jury trial and their appellate rights and, therefore, cannot accept the less granulated version proposed by Plaintiffs.

Thus, although counsel have made diligent efforts to reach agreement, the remaining disputes present legal issues that must be resolved by this Court.  To assist the Court in better understanding the disagreements, Plaintiffs and Defendants have each set out a short statement below of the parties' perspectives on the disagreement.

The following sections include the parties' agreed-upon instructions (Part I), Plaintiffs' proposed instructions and verdict form, along with Defendants' objections (Part II), and Defendants' proposed instructions and verdict form, along with Plaintiffs' objections (Part III). The parties reserve their rights to revise their proposed instructions, submit additional instructions (including any instructions relating to COVID-19 related procedures or

complications), or withdraw instructions due to developments at trial, legal rulings by the Court, or for any other reason.

**Statements Regarding Areas of Disagreement**

**Plaintiffs' Statement**

As in CT1A, Defendants insist on refighting battles on which the Court has already ruled against them in connection with the jury instructions, out of some purported fear that they will somehow have waived their objections to some of the Court's prior rulings if they do not continue to press each and every point of concern. Not surprisingly, this has made agreement impossible on the vast majority of the substantive jury instructions.

But, unlike in CT1A, this time around, the Court provided the parties with clear guidance about the input it sought on jury instructions, guidance the Defendants have repeatedly chosen to ignore. Back on March 28, Special Master Cohen sent the parties an email attaching a draft of what the Court "believe[s] are clear and accurate Ohio public nuisance jury instructions for the Track 1B case." The Court invited two types of comments on the proposed instructions: comments on instructions a party thought were "incorrect as a matter of law," providing legal support for your position and proposed alternate language; and comments on any instructions a party thought "would not be understandable to the jury, or would create significant confusion." Plaintiffs readily accepted the Court's proposed instructions on public nuisance, but Defendants submitted lengthy comments and objections, to which Plaintiffs subsequently responded at the Court's request.

On May 28, Judge Polster's law clerk, Molly Rucki, sent a follow-up email attaching "the public nuisance jury instructions that Judge Polster intends to use at trial." Ms. Rucki's email did not invite or request further comment from the parties on these substantive instructions.

2

Separately, on June 24, Judge Polster's assistant, Mary Hughes sent the parties a set of Judge Polster's "boilerplate trial documents." The explicit purpose of this email to the parties was "so that you don't waste your time reinventing the wheel on banal language."

As Defendants note in their statement below, Plaintiffs Summit and Cuyahoga Counties have followed the foregoing guidance from the Court. As Defendants note, Plaintiffs' proposed instructions "track closely the draft instructions circulated by the Court on May 28." Plaintiffs suggest only a small number of minor modifications to both the Court's boilerplate instructions and the Court's substantive nuisance instructions, to improve clarity for the jury (and, in one case in which the parties agree, to avoid potential legal error). In Plaintiffs' mind, the draft instructions circulated by the Court on May 28 and June 24, should largely have been the end of the process, not the beginning.

Defendants strenuously disagree. Because the Court's Revised Civil Jury Trial Order, Dkt. 3308, included a deadline for joint submission of jury instructions, verdict forms, and interrogatories both on which the parties agreed and as to which they disagreed, Defendants have taken this as an opportunity to again attempt to relitigate their dissatisfaction with the Court's proposed instructions. On top of this, Defendants have also added additional, legally incorrect and confusing proposed instructions, including on the public nuisance claim, that they could have proposed in April, but did not.  There is simply no reason to burden the Court, and the parties, further with this task when the Court has already made its position clear on the appropriate instructions to give. That should be the end of the matter.

Nevertheless, because Defendants insist on relitigating these issues, Plaintiffs have provided their objections, which are considerable, to Defendants' proposed instructions. We will not burden the Court with a lengthy recitation of those objections here, but instead simply direct

3

the Court to the objections themselves. In brief, Plaintiffs believe that the instructions proposed by the Court accurately, succinctly, and in plain English set forth the law of public nuisance in Ohio. By contrast, Defendants' proposed nuisance instructions are permeated with legal errors, attempt to add elements to the cause of action that do not exist, and seek to relitigate legal issues on which the Court has already ruled against them on motions to dismiss and/or summary judgment. They are also overly long (substituting eleven separate nuisance instructions for the Court's five) and overly complicated, unduly argumentative, and seek to instruct the jury on numerous irrelevant and/or inappropriate issues. (Defendants' causation instruction alone runs to nearly five and a half pages.) They substitute legalese that will be confusing to the jury for the Court's plain English, are frequently redundant, and in certain respects are not even internally consistent. Defendants' proposed nuisance instructions should be rejected in their entirety.

The Defendants' proposed verdict form suffers from similar flaws. It, too, is overlong, repetitive of Defendants' jury instructions, argumentative, one-sided, includes extraneous matters, and generally has been designed to try and induce the jury to return a defense verdict, assuming that they can even make their way through the entire 10-page form. Plaintiffs, by contrast, offer a simple, three-question form that focuses the jury squarely on the three issues it needs to decide: the existence of a nuisance, whether defendants' conduct was a substantial factor in causing that nuisance, and whether that conduct was intentional or unlawful. There is no reason to further complicate the jury's task. Plaintiffs therefore urge the Court to adopt their proposed verdict form.

Defendants also seek numerous modifications to the boilerplate instructions circulated by the Court. While many of these proposed changes are of less substantive significance (and are, for the most part, purportedly drawn from language that this Court has used elsewhere), each

4

bespeaks an attempt to tweak the Court's language to grant defendants what they perceive to be a slight advantage, no matter how modest. Plaintiffs urge the Court to stick with the boilerplate instructions previously circulated, rather than, in Ms. Hughes words, "wast[ing the Court's] time reinventing the wheel on banal language."

This is not to suggest that the parties' efforts to identify areas of potential agreement have been entirely fruitless. As referenced earlier, through this process, Plaintiffs' came to the conclusion that one phrase ("or should have known") in the Court's "Public Nuisance – Intentional Conduct" instruction might not be consistent with Ohio precedent concerning absolute nuisances. To help ensure that any jury verdict rendered in this case not be vulnerable to challenge on appeal, Plaintiffs agreed with defendants to delete this one particular phrase, while making other modest adjustments to the same instruction for purposes of clarity. Plaintiffs therefore urge the Court to adopt this revised instruction concerning intentional conduct.

**Defendants' Statement**

As an initial matter, the draft instructions proposed by Plaintiffs track closely the draft instructions circulated by this Court on May 28.  As this Court, is aware, those instructions resulted from a restricted process, in which the Special Master circulated instructions and provided the parties with limited ability to respond, stating that the Court would "only entertain two types of comments."[1]  Defendants raised objections to those proposed instructions.  Ex. A at 11-24.  Those objections are hereby incorporated by reference into this submission.  This Court circulated the May 28 instructions without offering any explanation or ruling on the legal issues

---

[1] A copy of the full record of the emails and objections leading up to these instructions is attached as Exhibit A.  Plaintiffs accepted the Court's March 28 draft without comment.  Ex. A at 9.  The Special Master allowed Plaintiffs to submit a response to Defendants' comments. *Id.* at 25.

raised by the comments.  Because of the limited comments permitted by the earlier process and absence of any explanation, this Court has yet to address the full set of Defendants' objections or to provide any reasoned basis for rejecting their earlier comments.

Even Plaintiffs concede that there was at least one legal error in the May 28 instructions (*i.e.*, the inclusion of "or should have known" in the Intentional Conduct instruction).  Moreover, the earlier process did not permit Defendants to propose new instructions for the Court's consideration to address matters that were not already covered.  Although Plaintiffs now criticize Defendants for attempting to engage in the ordinary process of developing jury instructions from proposals by both sides, they offer no substantive arguments concerning many of the points covered by Defendants' proposed instructions and missing from the May 28 instructions.

As noted above, Plaintiffs have, for the most part, adopted the May 28 draft instructions—which themselves contain no citations to legal authority supporting the instructions given.  However, Plaintiffs have not offered legal authority to support those instructions, contrary to the Court's clear direction that "[a]ll proposed instructions must be supported by citations to legal authority."  Dkt. 3308 at 7.

Plaintiffs likewise, with a few exceptions, accept the Court's proposed boilerplate instructions circulated by email to the parties on June 24, 2020.  Defendants note, however, that the proposed boilerplate instructions differ in material ways from the Boilerplate Civil Jury Charge made available to the public on the Court's website, and on which Defendants have previously relied.  *See* Ex. B, available at https://www.ohnd.uscourts.gov/sites/ohnd/files/DAP-BoilerplateCivilJuryCharge.PDF.  Defendants believe that certain language from the publicly available boilerplate instructions provides helpful and necessary guidance to the jury and should be included in the jury charge in this case.  For example, the Court's public boilerplate

6

instructions instruct the jury that "corporations stand on equal footing, and size is not to be considered," that "[i]f the weight of the evidence is equally balanced, . . . the party who has the burden of proof has not established such issue by a preponderance of the evidence," and that the jury must unanimously find that Plaintiffs have proved "all of the essential elements" of their claim.  Plaintiffs oppose all of these straightforward (and inarguably correct) insertions from the Court's public boilerplate, necessitating Defendants' submission to the Court.

On the merits, there are several principal areas of disagreement: the public nuisance introduction instruction, the instruction regarding intentional conduct, the instruction regarding unlawful conduct, the instruction regarding causation, instructions regarding Defendants' apportionment and statute of limitations defenses, and the verdict form.

Plaintiffs' proposed nuisance instruction omits several important elements, including that nuisance liability based on intentional conduct requires that the conduct be intentional and unreasonable, the requirement of legal causation, and the control element.

With respect to unlawful conduct, the instruction would erroneously permit the jury to find liability based on any violation of "a statute, ordinance, or regulation that controls safety." Not only does this instruction misstate the law by suggesting that any violation could constitute a nuisance, but it delegates legal determinations to the jury—most notably, which precise violations can give rise to nuisance liability and what constitutes a violation—that by law must be made by this Court.  The instructions must explain to the jury what constitutes the specific violation of law alleged, so that the jury can make factual findings about whether such a violation occurred, and whether that conduct caused an unreasonable interference with a right common to the general public.  Plaintiffs' instruction provides no guidance about what is or is not the relevant unlawful conduct.  Moreover, it would be error not to inform the jury that

7

conduct authorized by the federal Controlled Substances Act or its implementing regulations cannot be unlawful conduct that would create liability for public nuisance.

Causation may be the area of largest and most significant disagreement.  Defendants urge this Court to instruct the jury on the black-letter law of but-for and proximate causation.  Neither phrase (or concept) appears in the proposed instruction submitted by Plaintiffs.  Rather than proving but-for causation, Plaintiffs propose instead to instruct the jury that it need only find that a Defendant's conduct was a "substantial factor."  Giving this instruction would be a serious error of law that would mandate reversal on appeal of any verdict in favor of Plaintiffs.

Regarding proximate causation, Plaintiffs' proposed instruction fails to instruct the jury that there must be a "direct relation" between the injury and the allegedly wrongful conduct.  Directness is a separate requirement from foreseeability.  The proposed instruction also errs on foreseeability, instructing the jury to consider only whether the "type of conduct" a Defendant engaged in "could reasonably be expected to cause an interference with public health or safety," rather than the actual requirement that a Defendant, from its perspective (with the knowledge available to it) and at the time it engaged in the conduct—could have foreseen the specific unreasonable interference with public health described in the substantive instruction defining the alleged nuisance.  Nor does the Plaintiffs' proposed instruction provide any guidance regarding alternative and intervening causes, concepts that are particularly important in light of Plaintiffs' admissions regarding the other entities responsible for their injuries.

The parties' disagreement regarding the verdict form concerns whether the jury will be asked vague and general questions (as Plaintiffs propose) or be asked to make specific findings necessary to establish liability in this case (as Defendants propose).  Plaintiffs' proposal neither connects the verdict to their liability theory nor limits the jury to considering only the

distribution claims at issue.  Similarly, by asking the jury to consider causation before considering whether Defendants engaged in conduct potentially giving rise to liability, Plaintiffs' proposed form fails to limit the jury to considering causation based on the specific intentional and unreasonable act and/or unlawful act at issue (as opposed to other acts).

Given the complexity of the claims, the novel legal theories, the number of different Defendants, and the different Plaintiffs, the verdict form should include interrogatories regarding all of the elements of the public nuisance claim for each Plaintiff as to each Defendant.  Such a careful and detailed approach would both aid in appellate review and may avoid the need for a retrial in the event that (as Defendants contend) some of Plaintiffs' theories are being improperly submitted to the jury.  A special verdict is necessary to make this case useful as a "bellwether." If the jury found in favor of Defendants, for example, the MDL as a whole would benefit from knowing whether the failure of the claims was due to an issue specific to Plaintiff Counties or a more general failure of the legal theory.

To the extent that Plaintiffs' proposed verdict form includes more detailed questions, they are legally incorrect.  For example, rather than asking the jury to find but-for or proximate causation, Plaintiffs propose to ask the jury only regarding "substantial factor" causation, the incorrect standard.  Plaintiffs' proposed verdict form also presumes that joint and several liability will apply, without asking the jury whether their injuries can be apportioned or how to perform that apportionment.

All of these are substantive disagreements, on which Defendants cannot compromise and which require determination by this Court.

Finally, Defendants' proposed instructions and verdict form conform in many ways to the Court's prior rulings.  For instance, although Pharmacy Defendants contend that this case should

9

be abrogated by, or at minimum governed by the two-year statute of limitations applicable to product liability claims under, OPLA, *see* Dkt. 1872 at 2 n.4, these instructions reflect the Court's prior ruling that OPLA does not abrogate the public nuisance claim or require a two-year statute of limitations, *see* Dkt. 1203 at 28, 2568 at 2.  Similarly, although Pharmacy Defendants contend that the learned intermediary doctrine applies to bar liability in this case, *see* Dkt. 497-1 at 10, these instructions reflect the Court's prior ruling that the learned intermediary doctrine does not serve as a bar to liability, *see* Dkt. 1025 at 74-79; Dkt. 1203 at 33-35.  By drafting these instructions and verdict form in light of these and others of the Court's rulings, Pharmacy Defendants do not waive their prior objections and contrary arguments, which are hereby incorporated and reaffirmed.

## PART I – AGREED-UPON INSTRUCTIONS

The parties agree to the inclusion of the following standard form instructions used by the Court, and provided to the parties in an email from Mary Hughes on June 24, 2020, as relevant and appropriate for use in this case.

1. Consideration of Evidence

2. Direct and Circumstantial Evidence

3. Inferences from Evidence

4. Credibility of Witnesses

5. Number of Witnesses

6. Charts and Summaries

7. Admissions and Interrogatory Answers

8. Stipulations of Fact

9. Lawyers' Objections

10. Introduction (Case-Specific Instructions)

11. Introduction (Deliberations)

12. Juror Notes

13. Duty to Deliberate

14. Interrogatories and Verdict Forms

15. Juror Questions

16. The Court Has No Opinion

In addition, the Parties have reached agreement on the following instructions, which include the Court's May 28, 2020 Instruction on "Corporate Defendants."

11

**<u>Opening Instruction</u>**

Members of the Jury:

You have heard all of the evidence and it is now time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain the elements, or parts, of the claims that Plaintiffs Summit County and Cuyahoga County allege Defendants Walgreen Co., CVS Indiana L.L.C., CVS Rx Services, Inc., Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support, Center, Inc., Walmart Inc. (formerly known as Wal-Mart Stores, Inc.), HBC Service Company, an operating division of Giant Eagle, Inc., and Discount Drug Mart, Inc. are liable for.

After that, the lawyers will present their closing arguments.

Following closing arguments, I will explain the rules that you must follow during your deliberations in the jury room, and the interrogatories and verdicts that you may return.

Please listen very carefully to everything I say.[2]

---

[2] This proposed instruction is a modified version of the "Boilerplate Civil Jury Instructions" provided to the Parties on June 24, 2020.

12

**<u>Corporate Defendants</u>**

The Defendants are corporations. Corporations can be held liable for their acts or omissions, just as you or I can. As corporations, they can act or fail to act only through their officers and employees. The conduct of an officer or employee acting within the scope of his or her employment should be treated as the conduct of the corporation.

During my summary of the Plaintiffs' claims, I will often use the word "person" or "persons." Please bear in mind that for all of these claims, corporations are considered persons. Each person, including each corporation, is considered a separate person under the law, whose liability must be separately determined.[3]

---

[3] This proposed instruction is identical to the language of the Public Nuisance instructions circulated by the Court on May 28, 2020.

## PUBLIC NUISANCE – CONCLUSION

When rendering your verdict on the Plaintiffs' claims of public nuisance, you must consider each claim against each Defendant separately. In other words, you must independently decide each separate Plaintiff's claim against each separate Defendant.

Thus, if you find that a particular Plaintiff has proved its public nuisance claim by the greater weight of the evidence against a particular Defendant, then your verdict must be for that Plaintiff and against that Defendant.

Similarly, if you find that a particular Plaintiff has failed to prove its public nuisance claim by the greater weight of the evidence against a particular Defendant, then your verdict must be against that Plaintiff and for that Defendant.

To repeat: you must independently decide each separate Plaintiff's claim against each separate Defendant, and render your verdict accordingly. Just because you find in favor of one Plaintiff or one Defendant does not mean you must find in favor of any other Plaintiff or any other Defendant.

The verdict form will guide you through this process.[4]

---

[4] This proposed instruction is identical to the language of the Public Nuisance instructions circulated by the Court on May 28, 2020.

14

### Experiments, Research, Investigation and Outside Communications - Admonition

Remember that you must make your decision based only on the evidence that you saw and heard here in court.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry, or computer, the Internet, any Internet service, or any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, Instagram, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

You should know that if this Admonition is violated, there could be a mistrial. A mistrial means that the case is stopped before it is finished and must be retried at a later date. This can lead to a great deal of expense for the parties and ~~for taxpayers, namely you and your neighbors~~ the Court. No one wants to see, ~~especially tax dollars,~~ money wasted. If a mistrial were to be declared based on a violation of this Admonition, the juror responsible could be required to pay the cost of the first trial and could also be punished for contempt of court.

In summary, make your decision based only on the evidence that you saw and heard here in court.[5]

---

[5] The Parties have agreed that the "Boilerplate Civil Jury Instructions" should be modified to remove references to the jurors as taxpayers.  The Parties have recently entered into an evidentiary stipulation to exclude "[a]ny reference to jurors' self-interest in the outcome of the litigation based on the jurors' status as taxpayers."  *See* Dkt. 3424 at 2.

16

**PART II – PLAINTIFFS' PROPOSED INSTRUCTIONS AND VERDICT FORM WITH DEFENDANTS' OBJECTIONS**

**GENERAL INSTRUCTIONS**

**<u>Jurors' Duties</u>**

It is your duty as jurors to follow the law as stated in the instructions of the Court, and to apply the rules of law so given to the facts as you find them from the evidence in the case.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if Plaintiff~~s has~~ <u>have</u> proven by a preponderance of the evidence that <u>one or more</u> Defendant<u>s are</u>~~is~~ liable for <u>creating and maintaining a public nuisance</u> ~~[claim(s)]~~.  It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

The lawyers will talk about the law during their arguments. But if what they say is different from what I say, you must follow what I say. What I say about the law controls.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

***Pharmacy Defendants' Objections:***

Pharmacy Defendants have no objection to much of the Court's proposed boilerplate instructions circulated by email to the parties on June 24, 2020, or to the minor modifications

17

proposed by Plaintiffs above.  Defendants note, however, that the proposed boilerplate instructions differ in material ways from the Boilerplate Civil Jury Charge made available to the public on the Court's website, and on which Defendants have previously relied.  *See* https://www.ohnd.uscourts.gov/sites/ohnd/files/DAP-BoilerplateCivilJuryCharge.PDF. Defendants believe that certain language from the publicly available boilerplate instructions provides helpful and necessary guidance to the jury and should be included in the jury charge in this case.  Despite meeting and conferring, Plaintiffs have opposed these changes.

For this instruction on Jurors' Duties, Defendants propose inserting the following text from the publicly available boilerplate at the end of the proposed boilerplate instructions:

> Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. All parties are equal in the eyes of the law. Corporations stand on equal footing, and size is not to be considered. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just decision regardless of the consequences.

## GENERAL INSTRUCTIONS

### Burden of Proof – Preponderance of the Evidence

In a civil action, like this one, the burden of proof is "by a preponderance of the evidence." To establish something "by a preponderance of the evidence" means to prove that something is more likely true than not true.

This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case. You may have also heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof that applies in criminal cases only. It does not apply in civil cases like this one. You should, therefore, put it out of your minds.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

***Pharmacy Defendants' Objections:***

Pharmacy Defendants have no objection to much of the Court's proposed boilerplate instructions circulated by email to the parties on June 24, 2020, or to the minor modification proposed by Plaintiffs above. Defendants note, however, that the proposed boilerplate instructions differ in material ways from the Boilerplate Civil Jury Charge made available to the public on the Court's website, and on which Defendants have previously relied. *See* https://www.ohnd.uscourts.gov/sites/ohnd/files/DAP-BoilerplateCivilJuryCharge.PDF. Defendants believe that certain language from the publicly available boilerplate instructions provides helpful and necessary guidance to the jury and should be included in the jury charge in this case. Despite meeting and conferring, Plaintiffs have opposed these changes.

19

For this instruction on Burden of Proof – Preponderance of the Evidence, Defendants propose making the follow edits and insertions to more closely track the Court's publicly available boilerplate:

In a civil action, like this one, ~~the burden of proof is "by a preponderance of the evidence."~~ Plaintiffs are required to prove all the elements of their claim by a preponderance of the evidence. This duty is known as the burden of proof.

To establish something "by a preponderance of the evidence" means to prove that something is more likely true than not true. Preponderance of the evidence is the greater weight of the evidence; that is, evidence that you believe because it outweighs or overbalances in your mind the evidence opposed to it. A preponderance means evidence that is more probable, more persuasive, more likely, or of greater probative value. It is the quality of the evidence that must be weighed. Quality may, or may not, be related to the quantity of witnesses.

This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case. You may have also heard of the term "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases only. It does not apply in civil cases like this one. You should, therefore, put it out of your minds.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the weight of the evidence is equally balanced, or if you are unable to determine which side of an issue has the preponderance, the party who has the burden of proof has not established such issue by a preponderance of the evidence.

## GENERAL INSTRUCTIONS

### Evidence Defined

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

Evidence is all the testimony received from the witnesses including depositions and the exhibits admitted during the trial, the stipulations that the lawyers agreed to, and any facts which the Court requires you to accept as true.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. If you remember the facts differently from the way the attorneys have stated them, you should base your decision on what you remember. The lawyers' questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. And I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all these things. Do not even think about them. Do not speculate about what a witness might have said. You may not draw any inference from an unanswered question nor may you consider testimony which has been stricken in reaching your decision.

Make your decision based only on the evidence, as I have defined it here, and nothing else.[6]

---

[6] This proposed instruction is identical to the "Boilerplate Civil Jury Instructions" provided to the Parties on June 24, 2020.

21

***Pharmacy Defendants' Objections:***

Pharmacy Defendants object to Plaintiffs' proposed instruction only to the extent that it omits "admissions of parties" from the list of evidence in this case.  *See, e.g.*, *Barnes v. Owens–Corning Fiberglas Corp.,* 201 F.3d 815, 829 (6th Cir. 2000).

## GENERAL INSTRUCTIONS

### Opinion Testimony

You have heard the testimony of numerous individuals, often referred to as expert witnesses, who testified as opinion witnesses offered their professional opinions about the matters at issue in this lawsuit.

You do not have to accept their opinions. In deciding how much weight to give each opinion, you should consider the witnesses' qualifications and how they reached their conclusions. Also, consider the other factors discussed in these instructions for weighing the credibility of witnesses.

Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.

*Pharmacy Defendants' Objections:*

Defendants have no objection to much of the Court's proposed boilerplate instructions circulated by email to the parties on June 24, 2020, or to the minor modifications proposed by Plaintiffs above.  Defendants note, however, that the proposed boilerplate instructions differ in material ways from the Boilerplate Civil Jury Charge made available to the public on the Court's website, and on which Defendants have previously relied.  *See* https://www.ohnd.uscourts.gov/sites/ohnd/files/DAP-BoilerplateCivilJuryCharge.PDF. Defendants believe that certain language from the publicly available boilerplate instructions provides helpful and necessary guidance to the jury and should be included in the jury charge in this case.  Despite meeting and conferring, Plaintiffs have opposed these changes.

For this instruction on Opinion Testimony, Defendants propose inserting the following

text from the publicly available boilerplate at the end of the proposed boilerplate instructions:

> If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

## CASE-SPECIFIC INSTRUCTIONS

## APPLICABLE LAW

I will now explain the elements of the claim(s).

## PUBLIC NUISANCE - INTRODUCTION

I will now instruct you on Plaintiffs' public nuisance claims.

Each Plaintiff alleges that each Defendant distributed opioid products in a manner that endangered public health or safety, thereby creating a public nuisance.

Let me define for you the legal term *"public nuisance."* A "public nuisance" is an unreasonable interference with a right held by the public in common. A public nuisance includes an unreasonable interference with public health or public safety.

For a Defendant to be held liable for creating a public nuisance, a Plaintiff must show, by the greater weight of the evidence, that the Defendant did one or both of the following two things:

1. The Defendant engaged in *intentional conduct* that caused a significant interference with a public right to health or safety; or

2. The Defendant engaged in *unlawful conduct* that caused a significant interference with a public right to health or safety.

Please remember that you are being asked to determine only whether one or more of the Defendants created a public nuisance. You are not being asked to determine whether there should be a remedy for this claim, or what that remedy should be. If you find that one or more of the Defendants created a public nuisance, the Court will determine the remedy.[7]

---

[7] This proposed instruction is identical to the language of the Public Nuisance instructions circulated by the Court on May 28, 2020.

25

*Pharmacy Defendants' Objections:*

Plaintiffs' proposed instruction does not comport with Ohio law and is thus legally deficient. Consequently, Defendants object to this proposed instruction as set forth in greater detail below.

*First*, this proposed instruction omits material elements of a public nuisance cause of action.  The instruction fails to inform the jury that to prove public nuisance based on intentional conduct, Plaintiffs must prove that the conduct that they allege constitutes the nuisances is *both* intentional *and* unreasonable.  Both are required elements under Ohio law.  Restatement (Second) of Torts § 826, cmt. a ("For the common law crime of public nuisance, it was necessary that the interference with the public interest be unreasonable, in the sense that its utility is outweighed by the gravity of the interference with the public right."); *Soukoup v. Republic Steel Corp.*, 78 Ohio App. 87, 88 (Oh. Ct. App. 1946) (applying "intentional and unreasonable" test to case involving alleged air pollution); OJI 621.05.  Defendants propose including language based on the Ohio model instructions. *See* OJI 621.05(4)-(6).  Defendants propose instructing the jury that nuisance liability attaches for intentional acts if conduct is both intentional "and unreasonable," which is the correct standard under Ohio law.

 *Second,* this instruction also fails to inform the jury that to prove public nuisance, Plaintiffs must prove legal causation (both but-for causation and proximate causation), which is a core element of such claim under Ohio law.  *See, e.g.*, *Comcast Corp. v. Nat. Ass'n of African American Owned Media, Inc.,* 140 S. Ct. 1009, 1014 (2020) (black letter requirement of but-for causation); *City of Cincinnati v. Deutsche Bank Nat'l Trust Co*., 863 F.3d 474, 480 (6th Cir. 2017); *Cincinnati v. Beretta USA Corp.*, 95 Oh. St. 3d 416, 426-27 (2002).  Defendants propose

instructing the jury that nuisance liability attaches only if Plaintiffs also prove legal causation, which is the correct standard under Ohio law.

*Third*, this instruction also fails to inform the jury that to prove public nuisance, Plaintiffs must prove the "control" element of a public nuisance claim.  Under Ohio law, a plaintiff must prove that the defendant presently controls the conditions interfering with public health and safety.  *See Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002); Dkt. 1203 at 34-35.  Defendants propose instructing the jury that nuisance liability attaches only if Plaintiffs also prove the control element, which is the correct standard under Ohio law.

*Fourth*, this instruction should be revised to clarify that each Plaintiff must satisfy its respective burden of proof as to each Defendant before the jury can find in favor of either Plaintiff against any Defendant.  Defendants propose instructing the jury that nuisance liability attaches to any specific Defendant only if each Plaintiff satisfies its burden of proof on all elements against that specific Defendant, which is the correct standard under Ohio law.

## PUBLIC NUISANCE – INTENTIONAL CONDUCT

Now, let me define some of the terms I just used. One of those terms is "***intentional conduct.***"

"Intentional conduct" occurs when a person acts with the purpose to produce a specific result. A person intends an act when that act is done purposely, not accidentally. The intent with which a person acts is known only to that person. There are two ways to prove a person's intentional conduct. One, when a person expresses their intent to others. Or two, when a person somehow indicates their intent by their conduct.

For you to find that a person engaged in intentional conduct, it is enough that the person intended to act and knew ~~or should have known~~ that the conditions that constitute an interference with public health or public safety would result, or ~~was~~ were substantially certain to result, from their act(s).  It is not necessary for you to find that the person intended that the act would cause ~~the~~ a public nuisance.

Whether or not a person's conduct was intentional when first engaged in, if the person continues the conduct after he knows that an interference with public health or public safety is resulting from it, that subsequent conduct is intentional.[8]

---

[8] To address what they believe to be Defendants' concerns with the final paragraph of this Instruction, Plaintiffs have proposed a modification that is both consistent with prior rulings in CT1 and commentary in the Restatement (Second) of Torts.  Specifically, Plaintiffs propose to delete the phrase "or should have known" from the third paragraph of the Court's instruction. Solely deleting that phrase, however, would create the false impression that defendants had to know that their conduct would cause, or was substantially likely to cause, the public nuisance, which is directly contrary to the Restatement, and case law, and this Court's prior holding, all of which establish that Defendants have engaged in intentional conduct if they intended to bring about the conditions that constitute a nuisance, regardless of whether they knew that those conditions would amount to a public nuisance. Plaintiffs therefore proposed adding the phrase "the conditions that constitute" before "the public nuisance."  *See, e.g.*, Opinion and Order Denying Manufacturer Defendants' Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims, *In re Nat'l Prescription Opiate Litig.*, 406 F. Supp. 3d 672, 675 (N.D. Ohio

*Pharmacy Defendants' Objections:*

Defendants agree with Plaintiffs on nearly all of the text of the Intentional Conduct instruction as proposed by the Court on May 28, 2020. Defendants also agree with Plaintiffs that "or should have known" should be stricken from the first sentence of the third paragraph of the Court's proposed instruction as legally erroneous, because it incorrectly introduces a mere negligence standard in the place of the knowingly standard required by the Restatement and Ohio law. Restatement (Second) of Torts § 825, cmt c ("It is the knowledge that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional. It is not enough to make an invasion intentional that the actor realizes or should realize that his conduct involves a serious risk or likelihood of causing the

---

Sept. 9, 2019) (explaining that: "Intentional, in this context [of absolute public nuisance], means not that a wrong or the existence of a nuisance was intended but that the creator of it intended to bring about the conditions which are in fact found to be a nuisance," and that, "[s]tated otherwise, 'Where the harm and resulting damage are the necessary consequences of just what the defendant is doing, or is incident to the activity itself or the manner in which it is conducted, *** the rule of absolute liability applies'") (quoting *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859 at 863 (N.D. Ohio 2017) and *Taylor v. City of Cincinnati*, 55 N.E.2d 724, 727 (Ohio 1944)). This comports with phrasing that Defendants (including Walgreens) in CT1A argued needed to be added to the Plaintiffs' proposed instructions. *See* Doc. 2715-4 ("Defendants object to any instruction purporting to define 'intent' that fails to include the well-settled requirement that Defendants must have intended to create the conditions found to constitute a nuisance."). Nevertheless, when Plaintiffs proposed to add the phrase to the Court's proposed instruction here, while also deleting, "or should have known," Defendants objected to adding the very same words they had previously insisted upon.

Plaintiffs' second proposed addition to this instruction concerns the meaning of "intentional conduct" when a defendant continues the conduct after becoming aware of its consequences. It is drawn directly from Restatement Section 825 on "Intentional Invasion," which states that, in the case of continuing or recurrent invasions and conduct:

> In these cases the first invasion resulting from the actor's conduct may be either intentional or unintentional; but when the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional.

Restatement (Second) of Torts § 825 cmt. d. This proposed instruction is otherwise identical to the language of the Public Nuisance instructions circulated by the Court on May 28, 2020.

invasion.  He must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from his conduct.").  But after reaching those agreements, Plaintiffs nonetheless insisted on proposing new insertions to the Court's instruction, and other tweaks to the language they find helpful, despite voicing no objections to a virtually identical instruction when the Court invited comment on its proposed instructions earlier this year.  See Ex. A at 9.

Defendants object to Plaintiffs' insertion of "the conditions that constitute" in the first sentence of the third paragraph because the language is unnecessary, incorrect, and risks confusing the jury.  The Court's proposed instruction already states that the relevant intent can be shown through a Defendant's knowledge of an "interference with public health or public safety" and that intent to "cause the public nuisance" is not necessary.  And the language is incorrect and confusing because it does not specify for the jury *what* conditions make up the alleged nuisance. While Plaintiffs claim that Defendants previously insisted on this language, that is misleading. Most of the Track One-B Defendants did not participate in the Track One-A jury instruction process—and thus cannot be bound by prior language.  In addition, the language proposed by defendants in Track One-A was "the conditions *which are found to be the nuisance*."  (Plaintiffs, the identical parties here, opposed that language.)  Unlike in Track One-A, the "conditions" language is unnecessary when what is "found to be the nuisance" is already specified in the instruction (*i.e.*, "interference with public health or public safety").

Defendants also object to Plaintiffs' insertion of the last paragraph of the above instruction.  The instruction is redundant and confusing.  To have acted intentionally at any time, the Defendant must know that an unreasonable interference with a public right will result or is substantially certain to result from its conduct *at the time of the act*.  That concept is already explained in a clear and straightforward manner in the paragraph above.  At the same time,

30

Plaintiffs' proposed additional instruction about "continuing conduct" introduces a substantial risk that the jury will be confused and incorrectly think that intent can be created retroactively.

## PUBLIC NUISANCE – UNLAWFUL CONDUCT

Next, let me define the term "***unlawful conduct***."

"Unlawful conduct" can occur either by acting in a certain way that is prohibited, or failing to act in a certain way that is required. Specifically, unlawful conduct occurs when a person engages in conduct that is prohibited by statute, ordinance, or regulation that controls safety. And unlawful conduct also occurs when a statute, ordinance, or regulation that controls safety requires a person to engage in certain conduct, but the person fails to do so.

A law controls safety if it imposes specific legal requirements for the protection of the health, safety, or welfare of others. The federal and Ohio Controlled Substances Acts and their accompanying regulations are laws that control safety.

The person does not need to know that its conduct is unlawful for an unlawful act to occur.[9]

***Pharmacy Defendants' Objections:***

Defendants object to this proposed instruction.

*First,* the definition of "unlawful conduct," as drafted, would allow the jury to base liability on *any violation* of "a statute, ordinance, or regulation that controls safety" (in some undefined manner). That is an incorrect statement of law. The Sixth Circuit has specifically noted that "not every failure to comply with [a regulation] amounts to a public nuisance." *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 479 (6th Cir. 2017). Rather, to recover, a plaintiff must show that *the violation* "rise[s] to the level of interfering with public health or safety." *Id.* ("A dilapidated building, to be sure, has the potential to implicate the public's rights

---

[9] This proposed instruction is identical to the language of the Public Nuisance instructions circulated by the Court on May 28, 2020.

to health and safety. But it does not become a nuisance until the dilapidation interferes with health or safety. Not every code violation results in such a condition. It follows that not every failure to comply with the code amounts to a public nuisance." (internal citations omitted)).

*Second,* the third paragraph of the instruction, as drafted, implies that it is the jury's function to determine what constitutes a safety statute, and what constitutes a violation of one. But such legal determinations are for the Court, not the jury.  *United States v. Hill*, 167 F.3d 1055, 1069 (6th Cir. 1999) ("Furthermore, it is within the sole province of the court to determine the applicable law and to instruct the jury as to that law" (*quoting In re Air Crash Disaster,* 86 F.3d 498, 523 (6th Cir. 1996)) (internal quotation marks omitted).  The jury can only determine whether the defendants committed whatever conduct the Court has previously ruled would be sufficient to establish nuisance liability.  To be an accurate statement of the law, the instruction must make clear that liability can only rest on particular violations previously determined by the Court to be a proper basis for liability.  Defendants previously proposed instructions to correct this error, with a placeholder for the Court to "[i]nsert specific instruction[s] on the elements of each statutory or regulatory violation the Court determines to be supported by the evidence as a possible cause of the alleged public nuisance."  *See* Ex. A at 18.

*Third,* Defendants reiterate their prior objections to the notion that the federal Controlled Substances Act and each and every one of its regulations are "laws that control safety."  Any "suspicious order" duty is not a "safety statute" for three reasons: First, the Court has already held, as to the "suspicious order duties," that the jury would need to make more than a single finding of fact to determine if those duties were violated.  *See* Dkt. 2483 at 29.  Second, there is no private right of action under the federal CSA, which cannot form the basis of a negligence per se claim.  *See* Dkt. 3177 at 52-53 (dismissing negligence per se claims based on the federal CSA

33

and Ohio law); Dkt. 1680 at 23-25; *Smith v. Hickenlooper*, 164 F. Supp. 3d 1286, 1290-91 (D. Colo. 2016).  Third, the violation of a regulation is patently insufficient for per se liability. *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 202–03 (Ohio 1998) ("[T]o bestow upon administrative agencies the ability to propose and adopt rules that alter the proof requirements between litigants 'would be tantamount to an unconstitutional delegation of legislative authority, since administrative agencies cannot dictate public policy.'").  Defendants therefore object to the penultimate sentence of the instruction as legally erroneous.

    *Fourth,* Defendants object to this this instruction because it erroneously fails to inform the jury that if conduct is authorized by a complex regulatory scheme, it cannot form the basis of nuisance liability.  *See* OJI § 621.09; *Brown v. Scioto Cty. Bd. of Commrs*., 87 Ohio App. 3d 704, 713 (1993) ("Since a pollution control facility operates under the sanction of law, it cannot be a common-law public nuisance. This is but another way of saying that although it would be a nuisance at common law, conduct which is fully authorized by statute or administrative regulation is not an actionable tort." (internal citations omitted)); Restatement (Second) of Torts § 821B, cmt. f ("Although it would be a nuisance at common law, conduct that is fully authorized by statute, ordinance or administrative regulation does not subject the actor to tort liability.").  That instruction is legally correct and necessary to prevent that jury from finding that distribution conduct authorized by the Controlled Substances Act (*i.e.* distribution in substantial compliance, *see*) can nevertheless be "unlawful" conduct sufficient to support a public nuisance.

    *Fifth,* Defendants object to the last sentence of the instruction as confusing and unnecessary.  It implies that intent is always irrelevant to the inquiry of whether conduct is unlawful.  But that is not uniformly true, as some violations of safety laws and regulations require knowledge as an element of the violation.

34

## PUBLIC NUISANCE – CAUSATION

Under either of the two ways of proving public nuisance – that is, showing intentional conduct or unlawful conduct – a Plaintiff must prove by the greater weight of the evidence that a Defendant's conduct *caused* an interference with a right to public health or safety. Let me explain something about causation.

An individual Defendant's conduct need not be independently capable, all by itself, of causing the public nuisance. There may be multiple causes of a public nuisance. The fact that some other cause or causes combined with a Defendant's conduct in creating the public nuisance does not relieve that Defendant from liability if the Plaintiff can prove that the conduct the Defendant engaged in was a *substantial factor* in creating the public nuisance. Conduct is a substantial factor if it has some effect and that effect is substantial, rather than negligible. A Defendant's conduct is "substantial" if a reasonable person would regard that conduct as the cause or one of the causes of the nuisance.

In addition, the Plaintiff must show, by the greater weight of the evidence, that the type of conduct a Defendant engaged in could reasonably be expected to cause an interference with public health or safety. A Defendant does not, however, need to foresee that their conduct would lead to the specific nuisance that occurred.[10]

***Pharmacy Defendants' Objections:***

Defendants object to Plaintiffs' proposed instruction because it is both incomplete and inaccurate.  Indeed, Plaintiffs' proposed instruction is even more deficient than the instruction

---

[10] This proposed instruction is identical to the language of the Public Nuisance instructions circulated by the Court on May 28, 2020.

Plaintiffs proposed for the Track 1A trial.  *See* Dkt. 2715-2 at 10-14.  Defendant's proposed

causation instruction should be given instead.

The proposed instruction is erroneous because it fails to convey to the jury the two

causation findings it must make: (1) was the Defendant's conduct a *but-for* cause of the

nuisance; and (2) was the Defendant's conduct a *direct* cause.  Plaintiffs have conceded that both

but-for and proximate causation must be shown, as required by hornbook tort law.  Dkt. 2204 at

33 ("Under Ohio law, a plaintiff must show that a defendant's wrongful conduct was a cause—

i.e., both a cause-in-fact and a legal/proximate cause—of damage to Plaintiffs.  *In re*

*Gadolinium-Based Contrast Agents Prod. Liab. Litig*., 2013 WL 593993, at *3 (N.D. Ohio Feb.

15, 2013).")*; see also Comcast Corp. v. Nat. Ass'n of African American Owned Media, Inc.*, 140

S. Ct. 1009, 1014 (2020) (black letter requirement of but-for causation)*; Cincinnati v. Beretta*

*USA Corp.,* 95 Oh. St. 3d 416, 426-27 (2002) (adopting proximate causation standard from

*Holmes v. Security Investor Protection Corp*., 503 U.S. 258, 268-69 (1992))*.*

In addition, the proposed instruction is incomplete because it fails to give the jury any

guidance about alternative and intervening causes.  Plaintiffs have conclusively admitted, by

alleging in their complaint, that the separate conduct of opioid manufacturers and major

distributors to change the standard for prescribing opioids caused the alleged nuisance.  In

addition, the evidence will show that the conduct of numerous independent actors intervenes

between the defendants' conduct and the alleged nuisance.  *See*  OJI, 405.05.4; *Cascone v. Herb*

*Kay Co*., 6 Ohio St. 3d 155, 159 (1983) ("Whether an intervening act breaks the causal

connection between the negligence and the injury, thus relieving one of liability for his

negligence, depends upon whether that intervening actor was a conscious and responsible agency

which could or should have eliminated the hazard, and whether the intervening cause was

reasonably foreseeable by the one who was guilty of the negligence.") (citing Restatement (Second) of Torts § 440). Defendants' proposed instruction sets out the correct standard for "but for" and proximate causation, and provides appropriate guidance with regard to alternative and intervening causes.

### But-For Causation

The jury should be introduced to the general concept of "but-for" causation before considering whether, when there are multiple "but-for" causes, the particular Defendant's conduct was a "substantial factor."   As the Restatement (Second) of Torts § 432(1) explains, unless multiple alternative but-for causes are operating, a defendant's conduct "is not a substantial factor in bringing about harm to another if the harm would have been sustained" without it—*i.e.*, unless it is a but-for cause.  The only exception applies when there are two or more causes, and "each of itself is sufficient to bring about harm to another."  *Id.* § 432(2).

The jury should be told to apply the "substantial factor" test only if it determines that conduct by others caused the nuisance (raising questions of apportionment).  As the Comment to OJI 405.01 explains: "The substantial factor test is used to determine liability when factors other than the negligence of the tortfeasor may have caused the plaintiff's damages."  *See also Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St. 3d 609 (1995), citing *Pang v. Minch*, 53 Ohio St. 3d 186 (1990); *In re Bendectin Litig.*, 857 F.2d 290, 311 (6th Cir. 1988) (substantial factor applies "where there are simultaneous actors, [any one] of whose acts could have been 'but for' causes of plaintiffs' injuries").

The jury should be instructed that Plaintiffs must prove by a preponderance of the evidence that a Defendant's conduct was  (1) sufficient to cause the alleged nuisance; and (2) if the evidence shows there are other sufficient but-for causes, that the Defendant's conduct was a

37

substantial factor in causing the harm.  The proposed instruction erroneously tells the jury, in language that was not included in Plaintiffs' proposed Track 1A instruction, that Plaintiffs *do not need to prove but-for causation*: according to Plaintiffs, a Defendant's conduct need "not be independently capable, all by itself, of causing the public nuisance."  The proposed instruction would thus allow the jury to find causation even if the Defendant's conduct could not have caused the alleged nuisance by itself and could do so only in combination with the conduct of others.  Yet in a decision addressing causation under the federal Controlled Substances Act, the Supreme Court noted that in the tort context of 1984, after the Restatement (Second), "no case has been found where the defendant's act could be called a substantial factor when the event would have occurred without it."  *Burrage v. United States*, 571 U.S. 204, 215-16  (2014) (citation omitted).  It is clear legal error to construe the substantial factor test to allow a jury to find a defendant liable for nuisance "when the [nuisance] would have occurred without it."

### *Direct and Proximate Causation*

The proposed instruction also erroneously fails to mention the concept of proximate or direct cause, and in particular the direct cause requirement the Ohio Supreme Court adopted from *Holmes* in *Beretta*.  Under Ohio law, for causation to be found in a nuisance case "there must be some direct relation between the injury asserted and the injurious conduct alleged."  *City of Cleveland v. J.P. Morgan Bank, N.A.*, 2013 WL 1183332, at *5 (Ohio App. 8th Dist. 2013) (quoting *Beretta* at ¶ 37, 768 N.E.2d 1136) (affirming dismissal on the pleadings); *City of Cincinnati v. Deutsche Bank*, 863 F.3d 464, 480 (6th Cir. 2017) (affirming dismissal); *City of Cleveland v. Ameriquest*, 615 F.3d 496, 502 (6th Cir. 2010) (affirming dismissal).   As the Sixth Circuit emphasized in *Ameriquest*: "Although not the sole element, the requirement of a direct injury is a 'central element' of proximate cause.  *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848

38

(6th Cir. 2003)."   By contrast, even Plaintiffs' proposed Track 1A instruction at least

acknowledged a proximate cause requirement.  Dkt. 2715-2 at 10 ("For a Defendant to be liable,

you must also find that the Defendant's conduct was a 'legal' or 'proximate' cause of the harm.

A person is not responsible for injury to another if his conduct is a remote cause and not a

proximate cause.")

      The instruction to determine whether "the type of conduct a Defendant engaged in could

reasonably be expected to cause an interference with public health or safety," does not explain

the direct and proximate cause standard.  First, it erroneously refers generically to a "type of

conduct," rather than the Defendant's actual conduct.  Defendant's actual conduct must be the

operative cause, otherwise liability could be imposed for conduct that played no role whatsoever

in the alleged injury.  For example, the fact that drunk driving is the "type of conduct" that could

reasonably be expected to lead to a car accident does not mean that any particular act of drunk

driving actually led to a car accident.  Second, it requires only a diluted form of foreseeability—

"can reasonably be expected"—not direct causation.   However, the direct cause "requirement is

*distinct from foreseeability* and applies even if the Defendants intentionally caused the alleged

course of events."  *Ameriquest*, 696 F.3d at 502 (citation omitted; emphasis added).   Ohio law

requires *both* direct injury and foreseeability.  *Deutsche Bank*, 863 F.3d at 480.  The directness

requirement limits the need for the jury to inquire into numerous potential intervening causes.

      The instruction should also properly define foreseeability from the perspective of the

Defendant at the time it engaged in the conduct, as in Defendants' proposed instruction: "Harm

is foreseeable if a reasonable person who had the same information available to the defendant

would have foreseen or expected the harm to occur as a result of conduct."  *See* OJI 401.07; *see*

*also Cascone v. Herb Kay Co*., 6 Ohio St. 3d at 160.  The causation inquiry does not require the

Defendant to have actually foreseen the harm (although that is required to prove absolute public nuisance based on intentional conduct), but it does require that the harm be foreseeable to the actor at the time, not to the jury in hindsight.  "[A]n injury is 'foreseeable' if the defendant knew or should have known that his act was likely to result in harm to someone.  70 Ohio Jur. 3d Negligence § 11 (citing *Bailey v. U.S.*, 115 F. Supp. 3d 882, 893 (N.D. Ohio 2015))."  *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 WL 6628898, at *18 (N.D. Ohio Dec. 19, 2018).  "[F]oresight, not retrospect, is the standard of diligence."  70 Ohio Jur. 3d Negligence § 11.  "The foreseeability of harm, which affects the extent of the duty owed, usually depends on the defendant's knowledge."  *Id.*; *see also* Restatement (Second) of Torts § 289.  Even Plaintiffs' proposed Track 1A instruction, although insufficient, came closer to the mark on foreseeability: "A cause is remote when the result could not have been reasonably foreseen or anticipated as being the natural and probable cause of any injury."  Dkt. 2715-2 at 10.

Finally, the causation question concerns whether the defendant's conduct caused the specific *unreasonable* interference with public health as described in the substantive instruction defining the alleged nuisance.  The jury must be asked to determine if the defendant caused a specific nuisance, not a generic interference with public health or public safety.

## ~~CASE-SPECIFIC INSTRUCTIONS~~

### ~~Conclusion~~

~~If you find that Defendant's conduct proximately caused Plaintiffs' injuries on a particular claim, then your verdict must be for Plaintiffs on that claim. However, if you find that Plaintiffs failed to prove, by a preponderance of the evidence, that Defendant's conduct proximately caused Plaintiffs' injuries with regard to a particular claim, then your verdict must be for Defendant on that claim.~~[11]

***Pharmacy Defendants' Objections:***

Defendants have no objection to the omission of this boilerplate instruction but disagree with Plaintiffs that "proximately" should be removed were the instruction given.

---

[11] Because the Court's May 28, 2020 Instructions for CT1B include a Conclusion instruction specific to this litigation, this instruction from the "boilerplate" is proposed to be deleted as duplicative.  If it were used instead of the case-specific instruction, it would need to be modified to remove "proximately" as incorporated in the Court's causation instructions and to refer to the public nuisance rather than injuries to the Plaintiffs.

41

## DELIBERATIONS

### <u>Unanimous Verdict</u>

Your verdict, whether it be for Plaintiff or Defendant, must be unanimous. This means that to find for Plaintiff, every one of you must agree that Plaintiff has proved its claim(s) against Defendant by a preponderance of the evidence.

And to find for Defendant, every one of you must agree that Plaintiff has failed to prove by a preponderance of the evidence its claim(s) against Defendant. Either way, your verdict must be unanimous.[12]

*Pharmacy Defendants' Objections:*

Defendants have no objection to much of the Court's proposed boilerplate instructions circulated by email to the parties on June 24, 2020.  Defendants note, however, that the proposed boilerplate instructions differ in material ways from the Boilerplate Civil Jury Charge made available to the public on the Court's website, and on which Defendants have previously relied. *See* https://www.ohnd.uscourts.gov/sites/ohnd/files/DAP-BoilerplateCivilJuryCharge.PDF. Defendants believe that certain language from the publicly available boilerplate instructions provides helpful and necessary guidance to the jury and should be included in the jury charge in this case.  Despite meeting and conferring, Plaintiffs have opposed these changes.

For this instruction on Unanimous Verdict, Defendants propose making the follow edits and insertions to more closely track the Court's publicly available boilerplate:

> Your verdict, whether it be for Plaintiff or Defendant, must be unanimous. This means that to find for Plaintiff, every one of you must agree that Plaintiff has proved each of the essential elements of its claim(s) against Defendant by a preponderance of the evidence.

_____

[12] This proposed instruction is identical to the "Boilerplate Civil Jury Instructions" provided to the Parties on June 24, 2020.

And to find for Defendant, every one of you must agree that Plaintiff has failed to prove each of the essential elements of its claim(s) by a preponderance of the evidence its claim(s) against Defendant. Either way, your verdict must be unanimous.

43

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 1:17-cv-02804<br>Judge Dan Aaron Polster<br>Magistrate Judge Ruiz |
| THE COUNTY OF CUYAHOGA, OHIO and THE COUNTY OF SUMMIT, OHIO,<br><br>Plaintiffs,<br><br>v.<br><br>CVS INDIANA, LLC; CVS RX SERVICES, INC.; DISCOUNT DRUG MART, INC.; HBC SERVICE COMPANY; RITE AID OF MARYLAND, INC., D/B/A RITE-AID MID-ATLANTIC CUSTOMER SUPPORT CENTER, INC; WALGREEN CO.; AND WALMART INC. F/K/A WAL-MART STORES, INC.<br><br>Defendants. | Case No. 1:18-op-45090<br>Case No. 17-op-45004 |

**PLAINTIFFS' [PROPOSED] VERDICT FORM**

In answering the questions on this form, use the following definitions for the Defendants:

    A. "Walgreens" refers to Walgreen Co.

    B. "CVS" refers to CVS Indiana, L.L.C. and CVS Rx Services, Inc.

    C. "Rite Aid" refers to Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic

       Customer Support Center, Inc.

    D. "Walmart" refers to Walmart Inc., formerly known as Wal-Mart Stores, Inc.

    E. "HBC" refers to HBC Service Company, an operating division of Giant Eagle, Inc.

    F. "Discount Drug" refers to Discount Drug Mart, Inc.

## I. PUBLIC NUISANCE

1. On Plaintiffs' claim for public nuisance, do you  find that Plaintiffs have proven by a preponderance of the evidence that there was an unreasonable interference with the public health and/or public safety in Cuyahoga and/or Summit County? (Answer separately for each Plaintiff.)

    a.    Cuyahoga County    Yes _____   No _____
    b.    Summit County    Yes _____   No _____

2. If you answered yes to either or both of Question 1a and 1b, do you find that plaintiffs have proven by a preponderance of the evidence that any of the Defendants' conduct was a substantial factor in creating, or maintaining the public nuisance in Cuyahoga and/or Summit Counties? (Answer separately for each Defendant and each Plaintiff.)

| | | |
|---|---|---|
| **Walgreens** | Cuyahoga: Yes _____  No _____ | Summit: Yes _____  No _____ |
| **CVS** | Cuyahoga: Yes _____  No _____ | Summit: Yes _____  No _____ |
| **Rite Aid** | Cuyahoga: Yes _____  No _____ | Summit: Yes _____  No _____ |
| **Walmart** | Cuyahoga: Yes _____  No _____ | Summit: Yes _____  No _____ |
| **Discount Drug** | Cuyahoga: Yes _____  No _____ | Summit: Yes _____  No _____ |
| **HBC** | Cuyahoga: Yes _____  No _____ | Summit: Yes _____  No _____ |

3. If you answered yes to any part of Question 2, do you find that Plaintiffs have proven by a preponderance of the evidence that the conduct of one or more of the Defendants in

creating or maintaining the nuisance was  intentional or unlawful.?  (Answer separately as to each

plaintiff and each defendant).

| | | |
|---|---|---|
| **Walgreens** | Yes \_\_\_\_\_ | No\_\_\_\_ |
| **CVS** | Yes\_\_\_\_\_ | No\_\_\_\_ |
| **Rite Aid** | Yes\_\_\_\_\_ | No\_\_\_\_ |
| **Walmart** | Yes\_\_\_\_\_ | No\_\_\_\_ |
| **Discount Drug** | Yes\_\_\_\_\_ | No\_\_\_\_ |
| **HBC** | Yes\_\_\_\_\_ | No\_\_\_\_ |

All jurors must agree and each must sign his or her name:

_____          _____

Jury Foreperson

_____          _____

_____          _____

_____          _____

Date: _____

***Pharmacy Defendants' Objections:***

Pharmacy Defendants object to Plaintiffs' proposed verdict form for multiple

independent reasons, discussed below:[13]

_____

[13] This list is not intended to be an exhaustive list of objections to Plaintiffs verdict form. Nor do these objections provide each and every argument in support of each objection. Defendants reserve the right to supplement and enhance these objections prior to submission to the jury, including based upon further refinements to jury instructions and rulings from the Court.

46

*First*, and most fundamentally, Plaintiffs propose a verdict form that is much too vague and general—and, hence, inappropriate—in a bellwether case of this complexity and magnitude. It begins with an overly vague question regarding whether "there was an unreasonable interference with the public health and/or public safety" without connecting it with the facts and theories specific to this case and defining what exactly is the claimed public nuisance.  In Plaintiffs' similar Proposed Verdict Form filed for the Track 1A trial Plaintiffs at least proposed some connection to the facts and case theory by proposing whether "the increased availability of prescription opioids has unreasonably interfered with the public health, public safety, public peace, or public comfort and therefore constitutes a public nuisance."  Dkt. 2715-4 at 1-2. Plaintiffs' new proposal would unfairly force a "yes" response simply based upon the undisputed fact that there is a drug abuse problem in the country that has existed for decades.  In addition, Plaintiffs' opening question fails to explain that Track 1B is a distribution-only case and that liability may not be based upon any dispensing conduct.  *Cf.* Defendants' Proposed Verdict Form (making clear in the opening Question A1a[14] that any alleged interference by Defendants with a right to public health must be "through their distribution of prescription opioid medications").

Further, Plaintiffs' proposed verdict form offers no meaningful interrogatories regarding the critical facts that the jury must find—merely a box to check as to each Defendant as to cherry-picked and mis-stated elements of the public nuisance claim. Consistent with Rule 49 and principles of due process, each corporate Defendant is entitled to have questions answered specifically as to each element of the public nuisance claim brought against it—rather than what amounts to little more than a general verdict form with cursory box-checking on only some of

---

[14] For simplicity, references herein to Defendants' Proposed Verdict Form are to the questions posed for Summit County (Questions A1a-A5), since the identical questions are posed for Cuyahoga County (Questions A6a-A10).

the elements.  Fed. R. Civ. P. 49(a)-(b). This is particularly so, given that six Defendants are being tried together, the differences in whom the claims are asserted against, the complexity of the issues, and Plaintiffs' novel and unprecedented application of the law.  Answers to interrogatories regarding all of the elements of the public nuisance claims as to each Defendant is critical to ensure that the jury reaches a fair result as to *each Defendant*. The same thing is true of the two Plaintiff County Governments: Each interrogatory should ask the questions as to *each County*. Proof of a claim for one county does not mean that the other county has proven its claim. Due process demands nothing less in one of the most complicated cases in legal history. *See, e.g., U. S. Fid. & Guar. Co. v. Brian*, 337  F.2d 881, 882 (5th Cir. 1964), *reh'g denied and opinion modified sub nom. U.S. Fid. & Guar. Co. v. Brian*, 339 F.2d 602 (5th Cir. 1965) ("Multi-party lawsuits, with complicated questions involving indemnification and contribution, justify the submission of special interrogatories to a jury in place of a request for a general verdict"); *Cate v. Good Bros.*, 181 F.2d 146, 148 (3d Cir. 1950) (more detailed verdict form with special interrogatories "is salutary and to be encouraged, particularly in cases such as this where interrogatories, unlike a general verdict, assure and make explicit decision upon several issues which must be resolved before a proper disposition can be made of the case").

In addition, a more detailed verdict form will be necessary to guide the parties in understanding the jury's verdict—both for appeals in this case and for subsequent cases. This "bellwether" case is being closely watched by litigants and lawyers in this MDL proceeding and across the country. To make this "bellwether" effective as a tool to provide guidance to those parties and to evaluate resolution possibilities, a special verdict form is necessary to understand the jury's thinking as to all of the elements of each claim against each Defendant. Likewise, a more detailed jury verdict form is necessary to facilitate post-trial motions and legal review by

48

the Sixth Circuit, particularly with respect to novel issues presented by this case, thereby

conserving resources and promoting judicial efficiency. Indeed, in a case "involving either

multiple claims or multiple theories where one of the claims is improperly submitted to the jury,

the use of a special verdict form may enable an appellate court to salvage the portions of the

verdict on the claims or theories properly submitted, thereby foregoing the unnecessary

inconvenience, expense, and burden on the judicial system and the parties that results from

having to retry the entire case."  *Bone v. Refco, Inc.,* 774 F.2d 235, 243 n. 10 (8th Cir. 1985); *see*

*also Hickson Corp. v. Norfolk S. Ry. Co.*, 260 F.3d 559, 568 (6th Cir. 2001) (vacating jury

verdict under Tennessee law for failing to comply with state law rule that in "case with multiple

claims, such as the ones here, the jury should also use a general verdict form accompanied by

special interrogatories or a special verdict form"); *Ford Motor Co. v. Dallas Power & Light Co*.,

499 F.2d 400, 410 n. 18 (5th Cir. 1974) (recognizing value of more detailed verdict forms with

"requisite interrogatories" in newly-developing areas of the law so that "appellate court can

determine legal consequences in the light of the controlling standards").

  *Second*, because Plaintiffs' proposed verdict form does not allow for the making of the

requisite factual findings necessary for each element of the public nuisance claim as to each

Defendant, it necessarily is flawed for the same legal reasons that Plaintiffs' underlying jury

instructions are flawed: it is predicated upon misstatements of the law. In other words, to the

extent that Plaintiffs' jury instructions are flawed, Plaintiffs' generalized verdict form necessarily

is, too. Therefore, Defendants incorporate by reference their objections to Plaintiffs' proposed

jury instructions, which are legally incorrect, as if restated herein in their entirety.

  *Third*, even the few fact-specific questions posed to the jury in Plaintiffs' proposed

verdict form are legally incorrect or misleading. For example, Plaintiffs ask the jury to make a

49

determination as to whether Defendants' conduct "was a substantial factor in creating or maintaining" the public nuisance. But this "substantial factor" test (apart from being inaccurately described in Plaintiffs' jury instructions) ignores that proximate cause—including the directness requirement—is a core element of public nuisance claims under Ohio law, even where Plaintiffs allege a nuisance with multiple possible causes. *See, e.g.*, *City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*, 863 F.3d 474, 480 (6th Cir. 2017); *cf.* Defendants' Proposed Verdict Form (Questions A2 and A3, setting forth the "but-for and proximate cause" element of a public nuisance claim and further breaking it down between diverted prescription opioids and illicit non-prescription opioids to make it clear what harms the jury finds the Defendants should abate). As another example, Plaintiffs' proposed question on the "intentional or unlawful" elements of the public nuisance claims is also incorrect and misleading because in improperly omits the requirement that Defendants are currently acting "unreasonably" and "significantly" interfering with a right to public health. *Cf.* Defendants' Proposed Verdict Form (Question A1b properly poses the question whether any Defendants "are unreasonably and significantly interfering today with a right to public health in Summit County either (a) intentionally and unreasonably; or (b) unlawfully?").

*Fourth*, Plaintiffs' proposed jury verdict form makes improper and unsupported legal assumptions that have not yet been resolved. For instance, it presumes that joint and several liability applies to their public nuisance claim, without any apportionment. As stated in Defendants' objections, this assumption is flawed. At a minimum, the Court has not resolved this issue or who is responsible for any apportionment on the public nuisance claim. (ECF No. 2572, at 6-7). The jury should answer the question of whether Plaintiffs' alleged injuries can be

apportioned and, if so, how such apportionment should be made.  *Cf.* Defendants' Proposed Verdict Form (Questions A4-apportionment, and A5-specific percentages).

*Fifth*, Defendants also object regarding the ordering of Plaintiffs' questions which asks for a determination of causation before a determination of whether they find that any Defendant's conduct was intentional or unlawful, which could cause a disconnect between the intentional or unlawful act at issue and other acts that the jury might find were a substantial factor in creating the nuisance.

*Sixth*, Defendants also object to the failure of Plaintiffs' Verdict Form to properly direct the jury to answer questions in accordance with prior findings.  For example, if the jurors answer "No" to Question 1 they should also answer "No" to Questions 2 and 3, etc.

**PART III – DEFENDANTS' PROPOSED INSTRUCTIONS AND VERDICT FORM
WITH PLAINTIFFS' OBJECTIONS**

## GENERAL INSTRUCTIONS

### Jurors' Duties

It is your duty as jurors to follow the law as stated in the instructions of the Court, and to apply the rules of law so given to the facts as you find them from the evidence in the case.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if Plaintiffs have proven by a preponderance of the evidence that Defendant is liable for [claim(s)]. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

The lawyers will talk about the law during their arguments. But if what they say is different from what I say, you must follow what I say. What I say about the law controls.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. All parties are equal in the eyes of the law. Corporations stand on equal footing, and size is not to be considered. Both the parties and the public expect that you will carefully and impartially consider all of the

evidence in the case, follow the law as stated by the Court, and reach a just decision regardless of the consequences.[15]

**Plaintiffs' Continuing Objections to Defendants' Changes to All "Boilerplate" Jury Instructions:**

Plaintiffs' object to Defendants' proposed changes to the Court's "Boilerplate" Jury Charge.  Plaintiffs understand the Court to have advised the Parties of the boilerplate charge it planned to use, and believe that Defendants' changes are inconsistent with that instruction and largely redundant of those instructions, make the instructions overlong, and increase opportunities for jury confusion, especially with respect to the instruction on "Burden of Proof – Preponderance of the Evidence," which appears to merge different version of boilerplate charges together, and the instruction on "Opinion Evidence" which includes duplicative language concerning evaluation of the testimony.  These changes are unnecessary and appear designed to seek an advantage for Defendants.

---

[15] Authority: Ex. B, Judge Dan Aaron Polster, Jury Instructions - Civil Case, available at https://www.ohnd.uscourts.gov/sites/ohnd/files/DAP-BoilerplateCivilJuryCharge.PDF.

## GENERAL INSTRUCTIONS

### Burden of Proof – Preponderance of the Evidence

In a civil action, like this one, ~~the burden of proof is "by a preponderance of the evidence."~~ Plaintiff is required to prove all the elements of its claim by a preponderance of the evidence. This duty is known as the burden of proof.[16]

To establish something "by a preponderance of the evidence" means to prove that something is more likely true than not true. Preponderance of the evidence is the greater weight of the evidence; that is, evidence that you believe because it outweighs or overbalances in your mind the evidence opposed to it. A preponderance means evidence that is more probable, more persuasive, more likely, or of greater probative value. It is the quality of the evidence that must be weighed. Quality may, or may not, be related to the quantity of witnesses.[17]

This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case. You may have also heard of the term "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases only. It does not apply in civil cases like this one. You should, therefore, put it out of your minds.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

---

[16] Authority: Ex. B, Judge Dan Aaron Polster, Jury Instructions - Civil Case, available at https://www.ohnd.uscourts.gov/sites/ohnd/files/DAP-BoilerplateCivilJuryCharge.PDF.

[17] *Id.*

If the weight of the evidence is equally balanced, or if you are unable to determine which side of an issue has the preponderance, the party who has the burden of proof has not established such issue by a preponderance of the evidence.[18]

**Plaintiffs' Continuing Objections to Defendants' Changes to All "Boilerplate" Jury Instructions:**

Plaintiffs' adopt and incorporate by reference their continuing objections to Defendants' Changes to all "Boilerplate" Jury Instructions set forth in response to Defendants' proposed instruction on "Jurors' Duties" and note again that this instruction appears to merge different version of boilerplate charges together in a manner that makes the instruction needlessly long and creates potential for confusion.

---

[18] *Id.*

55

## GENERAL INSTRUCTIONS

### Evidence Defined

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

Evidence is all the testimony received from the witnesses including depositions and the exhibits that I admitted during the trial, admissions of parties,[19] the stipulations that the lawyers agreed to, and any facts which the Court requires you to accept as true.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. If you remember the facts differently from the way the attorneys have stated them, you should base your decision on what you remember. The lawyers' questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. And I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all these things. Do not even think about them.

Do not speculate about what a witness might have said. You may not draw any inference from an unanswered question nor may you consider testimony which has been stricken in reaching your decision.

### Plaintiffs' Objections to Proposed "Evidence Defined" Instruction:

Plaintiffs object to Defendants' attempt to modify this Court's straightforward and correct Boilerplate Jury Charge.  This change may be confusing in suggesting there are admissions outside

---

[19] *See, e.g.*, *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000).

56

the testimony and documents admitted into evidence. In particular, it seems apparent that Defendants desire to add this reference to "admissions" in order to press their entirely inappropriate proposed instruction regarding Plaintiffs' alleged "admissions" concerning public nuisance. *See, infra.*

## Defendants' Proposed Instruction No. __

## Public Nuisance – Admissions[20]

Plaintiffs have admitted the following, which you should consider as true for purposes of this trial.   When rendering your verdict, you must accept them as true, and you may not consider any evidence to the contrary:

- Through a massive marketing campaign premised on false and incomplete information, companies that manufacture, sell, and market prescription opioid painkillers—including Purdue, Actavis, Cephalon, Janssen, Endo, Insys, and Mallinckrodt (collectively, "Manufacturers")—engineered a dramatic shift in how and when opioids were prescribed by the medical community and used by patients. These companies relentlessly and methodically, but untruthfully, asserted that the risk of addiction was low when opioids were used to treat chronic pain, and overstated the benefits and trivialized the risk of the long-term use of opioids.[21]

---

[20] *Kay v. Minacs Group (USA), Inc.*, 580 F. App'x 327, 331 (6th Cir. 2014) (citation omitted) ("Factual assertions in pleadings . . . , unless amended, are considered judicial admissions conclusively binding on the party who made them."); *accord Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."); *id.* ("A statement in a complaint, answer or pretrial order is a judicial admission[.]"); *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983) ("Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them[.]").

Judicial admissions are the proper subject of jury instructions.  *See Kay v. United of Omaha Life Ins. Co.*, 709 F. App'x 320, 330 (6th Cir. 2017) (noting that a party "did not seek to enforce Plaintiffs' judicial admissions by requesting that the district court instruct the jury that they must accept that the December 19 notice was sent" and forfeited the admissions argument by "introduc[ing] Plaintiffs' pleadings as evidence, and argu[ing] the issue to the jury"); *Volland-Golden v. City of Chicago*, 13 C 1477, 2016 WL 4678299, at *3 (N.D. Ill. Sept. 7, 2016) ("As for publishing those admissions to the jury, that appears to be no more problematic than the publication of a stipulation between litigants. To the extent that the right to respond sought by defendants and referred to in the preceding paragraph is needed to explain the effect of a judicial admission, appropriate language should be included in plaintiff's proposed statement of judicial admissions."); *Hallinan v. Republic Bank & Tr. Co.*, 519 F. Supp. 2d 340, 349 (S.D.N.Y. 2007), aff'd, 306 F. App'x 626 (2d Cir. 2009) ("That language was read to the jury as a judicial admission.").

[21] Summit Complaint ¶ 10; *id.* ¶ 106 (defining "Marketing Defendants"); *see also* Cuyahoga Complaint ¶ 10.  For the Court's convenience, further citations will be to the Summit Complaint.

- The plan by Manufacturers worked.  Through their publications and websites, endless stream of sales representatives, 'education' programs, and other means, Manufacturers dramatically increased their sales of prescription opioids and reaped billions of dollars of profit as a result.[22]

- From the day they made the pills to the day those pills were consumed in our communities and on to the present day, these manufacturers have had control over the information regarding addiction they chose to spread and emphasize as part of their massive marketing campaign. By providing misleading information to doctors about addiction being rare and opioids being safe even in high doses, then pressuring them into prescribing their products by arguing, among other things, that no one should be in pain, Manufacturers created a population of addicted patients who sought opioids at never-before-seen rates. The scheme worked, and through it the companies that manufacture opioids caused their profits to soar as more and more people became dependent on opioids.[23]

- Each Manufacturer made thousands of payments to physicians nationwide, including in Ohio, ostensibly for activities including participating on speakers' bureaus, providing consulting services, assisting in post-marketing safety surveillance and other services, but in fact to deceptively promote and maximize the use of opioids.[24]

- Given the history of opioid abuse in the U.S. and the medical profession's resulting wariness, the commercial success of Manufacturers' prescription opioids would not have been possible without a fundamental shift in prescribers' perception of the risks and benefits of long-term opioid use.[25]

- Manufacturers  made the following misrepresentations to physicians, patients, and the public at large:

    a. The risk of addiction from chronic opioid therapy is low

    b. To the extent there is a risk of addiction, it can be easily identified and managed

    c. Signs of addictive behavior are "pseudoaddiction," requiring more opioids

    d. Opioid withdrawal can be avoided by tapering

    e. Opioid doses can be increased without limit or greater risks

    f. Long-term opioid use improves functioning

    g. Alternative forms of pain relief pose greater risks than opioids

---

[22] Summit Complaint ¶ 12.

[23] *Id.* ¶ 15.

[24] *Id.* ¶¶ 68, 73, 84, 88, 96, 105.

[25] *Id.* ¶ 146.

h. OxyContin provides twelve hours of pain relief,

i. New formulations of certain opioids successfully deter abuse

Each of the above propositions was false. Manufacturers knew this, but they nonetheless set out to convince physicians, patients, and the public at large of the truth of each of these propositions in order to expand the market for their opioids.[26]

- Each Manufacturer, and each misrepresentation, contributed to an overall narrative that aimed to—and did—mislead doctors, patients, and payors about the risk and benefits of opioids.[27]

- The false marketing campaign not only targeted the medical community who had to treat chronic pain, but also patients who experience chronic pain.[28]

- Manufacturers created a body of false, misleading, and unsupported medical and popular literature about opioids that (a) understated the risks and overstated the benefits of long-term use; (b) appeared to be the result of independent, objective research; and (c) was likely to shape the perceptions of prescribers, patients, and payors. This literature served marketing goals, rather than scientific standards, and was intended to persuade doctors and consumers that the benefits of long-term opioid use outweighed the risks.[29]

- Manufacturers spent millions of dollars to market their drugs to prescribers and patients and meticulously tracked their return on that investment. In one recent survey published by the AMA, even though nine in ten general practitioners reported prescription drug abuse to be a moderate to large problem in their communities, 88% of the respondents said they were confident in their prescribing skills, and nearly half were comfortable using opioids for chronic non-cancer pain. These results are directly due to the fraudulent marketing campaign focused on several misrepresentations.[30]

- Manufacturers worked together to manufacture wide support for their unfounded theories and propositions involving opioids. Due to their sheer numbers and resources, they were able to create a false scientific consensus through their materials and references.[31]

- [*Insert additional admissions and allegations as relevant to issues arising at trial*]

**<u>Plaintiffs' Objections to Proposed "Public Nuisance – Admissions" Instruction:</u>**

---

[26] *Id.* ¶¶ 177-78.

[27] *Id.* ¶ 179.

[28] *Id.* ¶ 350.

[29] *Id.* ¶ 446.

[30] *Id.* ¶ 493.

[31] *Id.* ¶ 755.

Plaintiffs object to this proposed instruction, which is likely to confuse and distract the jury, in its entirety.  The proposed instruction is completely inappropriate in this trial against only pharmacy defendants, especially because the manufacturers' role in causing the opioid crisis in no way precludes the jury from determining that the Defendants' conduct was a substantial factor in bringing about, and a legal cause of, the public nuisance.  Proposed instructions on irrelevant issues or "not appropriately tailored to the[] issues" are properly rejected.  *Smith v. Justarr, Inc.*, 102 Ohio App. 3d 506, 513–14, 657 N.E.2d 542, 546–47 (1995).  Further, although Defendants include a placeholder for additional "admissions and allegations," it is unlikely they would agree, for example, to include the complaints' allegations of their conspiracy with the manufacturers, any facts admitted in their pleadings, facts admitted in their settlements with the DEA or DOJ, or any relevant excerpts of their 30(b)(6) testimony.  The decisions they cite do not support submitting a confusing and immaterial proposed instruction such as this to the jury.  *See, e.g., Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (holding that defendants could read portions of complaint into evidence because they were "relevant" and "sufficiently probative to survive Rule 403 scrutiny"); *Volland-Golden v. City of Chicago*, 13 C 1477, 2016 WL 4678299, at *3 (N.D. Ill. Sept. 7, 2016) (denying motion in limine concerning use of statements from Defendants' answer at trial, and addressing arguments concerning statement of uncontested facts in parties' joint final pretrial order).  Further, in Ohio, "[g]enerally, pleadings are not to be read or submitted to the jury, unless they are used in evidence."  *Haney v. Law*, 2008-Ohio-1843, ¶ 14; Ohio Civ. R. 8(G) ("**Pleadings Shall Not Be Read or Submitted.** Pleadings shall not be read or submitted to the jury, except insofar as a pleading or portion thereof is used in evidence.").  Plaintiffs object to this misleading, and distracting, proposed instruction, and reserve the right, if

the Court gives an instruction on admissions, to seek to include both admissions of Defendants and relevant context of the allegations in the complaint.

### Defendants' Proposed Instruction No. __
### Public Nuisance – Introduction

Each Plaintiff alleges that each Defendant's conduct in distributing opioids without adequately maintaining certain, specific controls against diversion constituted a public nuisance. "Diversion" means the transfer of a controlled substance from legitimate "medical, scientific, research, or industrial channels" (such as prescriptions written by a licensed medical prescriber for a legitimate medical purpose and in the usual course of the prescriber's professional practice),[32] to an illegal channel.

Let me define for you the legal term "public nuisance." A "public nuisance" is an unreasonable and significant interference with a right held by the public in common, including an unreasonable interference with public health.[33] A Defendant is not liable for an unreasonable interference with public health that may have existed in the past but does not still exist at the time of your verdict.

To prevail against any Defendant on this claim, a Plaintiff must prove each of the following elements as to that Defendant by the greater weight of the evidence:

---

[32] 21 U.S.C. § 823(b)(1) ("The Attorney General shall register an applicant to distribute a controlled substance in schedule I or II unless he determines that the issuance of such registration is inconsistent with the public interest. In determining the public interest, the following factors shall be considered: (1) maintenance of effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels . . . ."); 21 C.F.R. § 1306.04(a) ("A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.").

[33] Defendants maintain their continuing objection that the Plaintiffs cannot demonstrate that Defendants' alleged conduct interfered with any public right, and incorporate their objection from Footnote 14. *See* Restatement (Second) of Torts § 821B cmt. g ("It is not, however, necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large.")

First, the Defendant either (a) engaged in intentional and unreasonable conduct that was intended to cause a significant interference with the right to public health or (b) engaged in certain, specific kinds of unlawful conduct;

Second, the Defendant's conduct proximately caused an unreasonable interference with the right to public health; and

Third, the Defendant, at present, controls the interference with the right to public health.[34]

**Plaintiffs' Continuing Objections to Proposed "Public Nuisance" Instructions (From "Public Nuisance – Introduction" to "Public Nuisance – Causation"):**

Plaintiffs object to all of Defendants' Instructions on public nuisance in their entirety. Rather than overburden the Court by repeating their objections after each public nuisance instruction, Plaintiffs here set forth their general objections to all of the nuisance instructions, then incorporate them by reference in their objections to the instructions that follow.

As an initial matter, Defendants do not explain, or attempt to justify, their departure from the instructions that this Court circulated on May 28, 2020 (hereinafter referred to as "the Court's Instructions"), after Defendants had the opportunity to provide input.  The Court's Instructions set forth the legal issues clearly, concisely, and in plain, understandable language without legalese.  "A trial court has no obligation to give jury instructions in the language proposed by

---

[34] Because the Court has ruled that the only remedy available to Plaintiffs on their nuisance count is abatement (a forward-looking remedy available with respect to a present nuisance), the relevant inquiry is not whether a Defendant had control at the time of the injury but whether the Defendant, at present, controls ongoing interference with public health.  *See In re Lead Paint Litig.*, 924 A.2d 484, 499 (N.J. 2007) ("[A] public entity which proceeds against the one in control of the nuisance may only seek to abate, at the expense of the one in control of the nuisance."); *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 446 (R.I. 2008) (same); *see also Ogle v. Kelly*, 629 N.E.2d 495, 499-500 (Ohio Ct. App. 1993) (a landlord out of possession and control cannot be liable for a nuisance). California (unlike Ohio) has abandoned the traditional "control" requirement.  *People v. ConAgra Grocery Products Co.*, 227 Cal. Rptr. 3d 499, 549 (Ct. App. 2017) (under California law, nuisance "does not hinge on whether the defendant owns, possesses or controls the property, nor on whether he is in a position to abate the nuisance"). In *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), the Ohio Supreme Court confirmed that Ohio maintains "control" as an element: "Appellant's complaint alleged that appellees created a nuisance through their ongoing conduct of marketing, distributing, and selling firearms in a manner that facilitated their flow into the illegal market.  Thus, appellant alleged that appellees control the creation and supply of this illegal, secondary market for firearms[.]"  *Id.* at 1143.

the parties," but rather "has the discretion to use its own language to communicate the same legal principles." *Schnipke v. Safe-Turf Installation Group, L.L.C.*, 2010-Ohio-4173, ¶ 36, 190 Ohio App. 3d 89, 101, 940 N.E.2d 993, 1002.  Notably, Defendants' current proposed instructions are markedly, and inexplicably, different not only from this Court's Instructions, but from their own prior submission of proposed language on April 10, 2020.

Defendants' proposed public nuisance instructions share many of the flaws of their earlier, April 10, 2020 proposal, but also add a great deal of additional, legally incorrect and confusing language.  Many are not only incorrect, but attempt to reargue issues already decided in rulings on multiple summary judgment motions.  Because many of the errors are recurring ones, for the convenience of the Court, Plaintiffs make a continuing objection to Defendants' proposed instructions as follows:

*First,* the proposed instructions on public nuisance are permeated with legal errors, including:

- Failure to recognize that interference with public safety supports a public nuisance claim. *See, e.g.,* Opinion and Order [regarding the Plaintiffs' summary-judgment motion on their equitable public nuisance claims], *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4194272, at *1 (N.D. Ohio Sept. 4, 2019) (quoting *Cincinnati v. Beretta U.S.A.,* 768 N.E.2d 1136, 1142 (Ohio 2002)).

- Attempting to alter the definition of public nuisance and governing legal standards by imposing multiple, confusing "unreasonableness" and "significance" requirements in the "Introduction," "Public Right," "Conduct," "Intentional Conduct," "Unreasonable Conduct," and other instructions.  It is well-established that "a public nuisance is an unreasonable interference with a right common to the general public." *Cincinnati v. Beretta,* 768 N.E.2d at 1142.  An unreasonable interference, in turn, "includes those acts that significantly interfere with public health, safety, peace, comfort, or convenience, conduct that is contrary to a statute, ordinance, or regulation, or conduct that is of a continuing nature or one which has produced a permanent or long-lasting effect upon the public right, an effect of which the actor is aware or should be aware.'" *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4194272, at *1 (N.D. Ohio Sept. 4, 2019) (quoting *Beretta,* 768 N.E.2d at 1142) (emphasis omitted).  This Court correctly rejected similar attempts in Defendants' April 10, 2020 proposal.

65

- Multiple proposed instructions ("Interference" and "Unreasonable Conduct") include a balancing test that wrongly seeks to add yet another confusing and different requirement. Defendants' proposed instructions in this regard are incorrect and based on a selective reading of Restatement language geared toward private nuisance.  First, they ignore language in the same Restatement provisions they cite, including, for example, that an interference is unreasonable if "the harm is significant and the actor's conduct is . . . contrary to common standards of decency," Restatement (Second) of Torts § 829.  Second, they purport to apply this test to unlawful conduct, which is not addressed in the sources Defendants cite.  Third, it is unnecessary because this analysis is already built into the definition of "unreasonable interference" applied previously in CT1 and built into the Court's proposed instructions.  *See In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804, 2019 WL 4194272, at *2 n.3 (N.D. Ohio Sept. 4, 2019).  Fourth, even assuming *arguendo* a weighing were appropriate, it would be limited to the utility of *Defendants' alleged misconduct*; not the benefits of health care providers' actions towards patients, as they incorrectly suggest.

- Attempting to add elements that do not exist:

  o Defendants' "Introduction" and "Control" proposed instructions purport to add an element requiring that each Defendant "at present, controls the interference with the right to public health."  In fact, as this Court has recognized, Plaintiffs must simply show: (1) intentional or unlawful conduct or omission by the defendant; (2) that unreasonably interferes with a right common to the general public; and (3) a causal relationship between a defendant's conduct and a plaintiff's injury.  *In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804, 2019 WL 4194272, (citing *Cincinnati v. Beretta U.S.A.,* 768 N.E.2d 1136, 1142 (Ohio 2002)).  There is no added "control over the instrumentality" of the nuisance requirement.

  o Defendants also attempt the same argument under a different guise in asking the Court to instruct that "[a] Defendant is not liable for an unreasonable interference with public health that may have existed in the past but does not still exist at the time of your verdict."  There is no question as to the need for an abatement remedy if the jury determines liability, nor is there any dispute that the Court will address the nature and scope of that remedy, such that it is not part of either side's proposed jury instructions.  This Court's Instructions make clear that Defendants, to be liable, must be responsible for causing the nuisance.  Defendants proposed instruction would be relevant only if there was a question as to the ongoing existence of the public nuisance and the need for abatement relief.  There is no factual question that there exists an ongoing public nuisance in need of abatement, and this proposed instruction is inappropriate.  *See, e.g., State v. Schwendeman*, 2018-Ohio-240, ¶ 20, 104 N.E.3d 44, 50 (explaining that "the trial court, as a matter of law, could not have properly given a jury instruction on [an] affirmative defense" where there was "no credible evidence" to support it).  It also remains inconsistent with Ohio law for the reasons set forth above, and is phrased to suggest there may have been a past, but is not a present, public nuisance. Defendants' explanatory footnote makes clear that they do not intend this proposal to go to the need for abatement,

66

but as a means of reasserting their "control" argument. This Court previously rejected parallel attempts to add to the elements of a public nuisance claim, as set forth above. Here, Defendants reassert the same failed arguments, and the cases they cite do not support their arguments. *See Beretta*, 768 N.E.2d at 1143 (explaining that the city did not have to meet an added requirement of control over firearms involved in that case); *Ogle v. Kelly*, 90 Ohio App. 3d 392, 398, 629 N.E.2d 495, 499 (1993) (absolute public nuisance claim failed where defendant "did not create or maintain the obstruction" alleged to be a nuisance, which did not exist when he bought his property, and there was no showing he engaged in intentional or unlawful conduct). *Accord, e.g.*, Ohio Jur. 3d Nuisances § 22, Limitations of actions against nuisance ("A well-settled rule in Ohio is that no length of time can legalize a public nuisance and that therefore the statute of limitations does not run against an action to abate such a nuisance") (citations omitted); *Cf. People v. Conagra Grocery Prods. Co.,* 17 Cal. App. 5th 51, 227 Cal. Rptr. 3d 499 (Ct. App. 2017) (upholding public nuisance verdict against lead paint companies based on marketing for residential use more than fifty years earlier). If the Court believed there were any need for further instruction, the correct approach would be require the jury to find whether there is an ongoing need for abatement relief.

o Defendants are also wrong to attempt to add an Instruction on "Compliance with Regulation" stating: "A defendant's activity pursuant to and in compliance with specific statutory authority or a regulatory scheme cannot constitute a public nuisance." By definition, unlawful conduct is not conduct that complies with a statutory or regulatory scheme. Defendants' proposal is incorrect and falsely suggests a caveat that does not exist. Actions in violation of a statutory scheme, such as the Controlled Substances Act ("CSA"), are not expressly authorized by law, and therefore are not shielded from nuisance liability. The only reason defendants seek to include their proposed language is thus to confuse the jury. This Court rejected the same proposal before issuing the Court's Instructions.

*Second*, Defendants include argumentative language throughout their proposal that is inappropriate in the context of jury instructions. In the "Introduction," this language purports to set forth Plaintiffs' allegations in a manner that does not comport with how Plaintiffs frame their case. Throughout their proposed instructions, Defendants also use argumentative language that purports to cast themselves as part of "legitimate channels," incorrectly states the law concerning their obligations to guard against diversion, introduces unnecessary commentary on pharmacy-level conduct and the purported benefits of prescriptions dispensed by their stores, and purports to

67

comment, incorrectly, on circumstances specific to this case, rather than neutrally set forth a standard.

*Third*, Defendants frame their instructions in a confusing and redundant way that purports to instruct on certain terms or issues multiple different times, including in instructions whose title suggests they pertain to a different, more limited issue.  On a claim with three elements, Defendants propose eleven different instructions.  The overlap among them is both confusing and presented in a slanted way.  This Court is well within its discretion in rejecting proposed instructions that are "unduly repetitive and confusing."  *Alford v. Nelson*, 93CA720, 1994 WL 568490, at *16–18 (Ohio Ct. App. Oct. 12, 1994) (further noting that "[i]t is our opinion that the more concise and understandable instruction was the one given by the trial court"); *United States v. Pritchard*, 964 F.3d 513, 523 (6th Cir. 2020) ("a proposed jury instruction must be "a correct statement of law") (internal quotation marks omitted); *United States v. Rios*, 830 F.3d 403, 431 (6th Cir. 2016) ("A trial court has broad discretion in crafting jury instructions and does not abuse its discretion unless the jury charge fails accurately to reflect the law"); *State v. Ossege*, 2014-Ohio-3186, ¶¶ 44-45, 17 N.E.3d 30, 45 (Court within its discretion to reject proposed instructions that were "redundant," as well as "lengthy, biased, and emphasized [the Defendants'] position regarding the weight certain evidence should be given" and "at least in part, incorrect statements of law"); *Smith v. Justarr, Inc.*, 102 Ohio App. 3d 506, 513, 657 N.E.2d 542, 546 (1995) (Court had discretion to reject proposed instruction that "was legally incorrect" and "predicated upon a statutory ambiguity that did not exist").

*Finally*, Defendants' proposed instructions are not only legally incorrect, redundant and confusing, they are internally inconsistent.  For example, there are two different definitions of "diversion" in the "Introduction" proposal and the "Controlled Substance Security

Requirements" proposal.  One includes a parenthetical that comments regarding conduct at the pharmacy level (which Defendants claim is not at issue), and one does not.  There are also different definitions of "public nuisance" in the "Introduction" and "Public Right" proposed instructions.  Adding to this confusion, Defendants, for example, propose one "Public Right" instruction that duplicates issues addressed in earlier proposed instructions, and then another later "Interference" instruction that purports to offer another definition of public right — using argumentative language that seems intended to suggest the jury should minimize the widespread nature of the harm.  Defendants also define terms, such as diversion, that do not need a definition, while failing to define terms they use, such as "wrongful conduct," that could be confusing in light of the other defined terms related to conduct in the same proposed instructions.

69

**Defendants' Proposed Instruction No. __**
**Public Nuisance – Conduct**

Plaintiffs allege that the Defendants caused an unreasonable interference with the right to public health by the manner in which they distributed prescription opioids to their affiliated pharmacies so that the pharmacies could fill prescriptions presented by patients.

Plaintiffs' claims in this case are not based on the manner in which pharmacies filled prescriptions or any allegation that pharmacies or their pharmacists violated the law when they dispensed prescription opioid medications.[35]

Consequently, your verdict must be based on the Defendant's conduct in distributing prescription opioid medications to their affiliated pharmacies, not on the conduct of an affiliated pharmacy in filling prescriptions for opioid medications for patients. However, in deciding whether the Defendant directly caused an unreasonable interference with the right to public health, you may consider whether there is evidence that the opioids distributed by a Defendant were actually diverted outside of legitimate medical channels through an affiliated pharmacy.

**<u>Plaintiffs' Objections to Defendants' Proposed "Public Nuisance – Conduct" Instruction</u>**:

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning public nuisance in their entirety, set forth above in response to the proposed "Public Nuisance – Introduction" instruction.

---

[35] *See, e.g.*, Dkt. No. 1203 at 2 (This Court noting that "Plaintiffs have disclaimed any cause of action against Retail Pharmacies in their capacity as retailers or dispensers of opioids" and holding that "the Retail Pharmacies may only be held liable as distributors.").

**Defendants' Proposed Instruction No. __**
**Public Nuisance – Public Right**

As I mentioned before, a public nuisance is an ***unreasonable interference*** with a ***right common to the general public***.[36]  The right common to the general public involved in a particular case is the right to public health.[37]  But it is for you to decide, based on the evidence you have seen and heard, whether a Defendant engaged in wrongful conduct that unreasonably and significantly interfered with the right to public health, and whether that conduct was the but-for and the proximate cause of the alleged harm to each Plaintiff.

**<u>Plaintiffs' Objections to Defendants' Proposed "Public Nuisance – Public Right"</u>**
**<u>Instruction:</u>**

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning public nuisance in their entirety, set forth above in response to the proposed "Public Nuisance – Introduction" instruction.

---

[36] Restatement (Second) of Torts § 821B(1).

[37] Defendants believe that Plaintiffs cannot demonstrate that Defendants' alleged conduct interfered with any public right.  Accordingly, this case proceeds only subject to Defendants' continuing objection.  However, should the case proceed, the public right at issue in the case is a question of law, and the jury should be instructed what right is at issue.  *City of Hamilton v. Dilley*, 120 Oh. St. 127, 131-32 (1929)  *Dilley* involved a statutory right to travel on public streets; the question for the jury was whether the safety platform erected to protect pedestrians was, under the circumstances, an unreasonable interference with that statutory right.  Defendants interpret the Court's prior ruling to indicate that it has found the public right at issue in this case to be the right to public health, and has drafted the instruction accordingly.  Dkt. 2578.

71

### Defendants' Proposed Instruction No. __
### Public Nuisance – Interference

To hold a Defendant liable for public nuisance, each Plaintiff must prove by the greater weight of the evidence that the Defendant engaged in wrongful conduct that unreasonably and significantly interfered with a public right.  As I just instructed you, in this case, the public right at issue is the right to public health.

A public right is a collective right that is common to all members of the general public, as opposed to private rights enjoyed by many (or all) people in their individual capacities. It is a right that belongs to the community at large. A Defendant does not interfere with any public right merely because the Defendant's alleged wrongful conduct interferes with the private rights of a large number of people. Nor does a Defendant interfere with a public right just because the Defendant's alleged wrongful conduct harmed a large number of people.[38]

If you find that a Defendant's alleged wrongful conduct did not interfere with a public right, then you must find that Defendant not liable for public nuisance. If you find that a Defendant engaged in wrongful conduct and that wrongful conduct interfered with a right to public health, then you must next determine whether that Defendant "unreasonably and significantly" interfered with that public right, as explained below.

---

[38] *Kramer v. Angel's Path, L.L.C.,* 2007-Ohio-7099, ¶ 15, 174 Ohio App. 3d 359, 367, 882 N.E.2d 46, 52; *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 768 N.E.2d 1136, 2002–Ohio–2480, ¶ 8; *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App. 3d 704, 712, 622 N.E.2d 1153, 1158 (1993) ("Conduct does not become a public nuisance merely because it interferes with a large number of people. At common law, there must be some interference with a public right which is common to all members of the general public. In addition to common-law public nuisance, Ohio has adopted statutes and administrative regulations which define certain conduct as being a public nuisance. These statutes amount to a legislative declaration that the proscribed conduct is an unreasonable interference with a public right."); Restatement of the Law (Second) Torts § 821B(1) & cmt. g (1979).

72

Whether an interference with a public right is unreasonable and significant is a question of degree, requiring you to balance the need for the Defendant's conduct and its usefulness and social value against the seriousness of the harm that each Plaintiff allegedly suffered as a result of the allegedly unreasonable conduct.[39] In deciding whether a Defendant's conduct was unreasonable and significant, you must consider all of the circumstances, including the nature and purpose of the Defendant's conduct, its value to the community, the nature, extent, and frequency of the alleged interference with the public right, and whether the interference could be avoided or lessened without undue hardship to the Defendant.[40] Specifically, you should consider the benefits to patients in receiving medications lawfully prescribed by a health care provider in deciding whether plaintiffs have proved unreasonable interference with a right common to the general public. No one of these factors is conclusive, but all are to be considered together and in relation to all of the surrounding circumstances.

**Plaintiffs' Objections to Defendants' Proposed "Public Nuisance – Interference" Instruction:**

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning public nuisance in their entirety, set forth above in response to the proposed "Public Nuisance – Introduction" instruction.

---

[39] Restatement (Second) of Torts § 822.

[40] *Id.* at §§ 821b, 826-831.

**Defendants' Proposed Instruction No. \_\_\_**
**Public Nuisance – Control of the Nuisance[41]**

A Plaintiff must also prove that a Defendant presently controls the conditions interfering with public health and safety.  In this case, if a Defendant does not, at present, control the creation or supply of an illegal, secondary market of diverted prescription opioids, the Defendant cannot be liable for public nuisance.  If you find that a Defendant does not currently control those conditions, you should mark "no" for that Defendant for Questions A1a and A6a of your verdict form.

**Plaintiffs' Objections to Defendants' Proposed "Public Nuisance – Control of the Nuisance" Instruction:**

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning public nuisance in their entirety, set forth above in response to the proposed "Public Nuisance – Introduction" instruction.

---

[41] "Appellant's complaint alleged that appellees created a nuisance through their ongoing conduct of marketing, distributing, and selling firearms in a manner that facilitated their flow into the illegal market.  Thus, appellant alleged that appellees control the creation and supply of this illegal, secondary market for firearms, not the actual use of the firearms that cause injury." *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002); *see also* Dkt. 1203 at 34-35.

## Defendants' Proposed Instruction No. __
## Public Nuisance – Intentional Conduct[42]

Plaintiffs can hold a Defendant liable for public nuisance if they prove by the greater weight of the evidence that the Defendant acted ***intentionally*** and ***unreasonably*** to cause a significant interference with the right to public health.

"***Intentional conduct***" occurs when a person acts with the purpose to produce a specific result. A person intends an act when that act is done purposely, not accidentally. The intent with which a person acts is known only to that person. There are two ways to prove a person's intentional conduct. One, when a person expresses their intent to others. Or two, when a person somehow indicates their intent by their conduct.

For you to find that a person engaged in intentional conduct, it is enough that the person intended to act and knew ~~or should have known~~ that an interference with public health or public safety would result, or was substantially certain to result, from their act.[43] It is not necessary for you to find that the person intended that the act would cause the public nuisance.

---

[42] 1 CV Ohio Jury Instructions 621.05 (Rev. Mar. 18, 2002) (modified); *Nottke v. Norfolk S. Ry. Co*., 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017); *Angerman v. Burick*, 2003 WL 1524505, at *2 (Ohio Ct. App. 2003); *Kramer v. Angel's Path*, LLC, 882 N.E.2d 46, 52 (Ohio Ct. App. 2007); Restatement (Second) of Torts § 825.

[43] Defendants' only substantive change to the Court's proposed instruction on Public Nuisance – Intentional Conduct, as circulated to the parties on May 28, 2020, is the deletion of the phrase "or should have known." ***Plaintiffs agree that this phrase should be stricken.*** Instructing the jury that a Defendant engaged in intentional conduct when they "should have known that an interference with public health or public safety . . . was substantially certain to result" converts the test from one of actual knowledge to one of negligence and is directly at odds with the Restatement.  The Restatement says that "an interference with the public right[] is intentional if the actor (a) acts for the purpose of causing it, or (b) ***knows*** that it is resulting or is substantially certain to result from his conduct."  Restatement (Second) of Torts § 825 (emphasis added).  One of the comments to Section 825 explains further: "It is the ***knowledge*** that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional.  ***It is not enough*** to make an invasion intentional that the actor realizes or should realize that his conduct involves a serious risk or likelihood of causing

75

**Plaintiffs' Objections to Defendants' Proposed "Public Nuisance – Intentional Conduct" Instruction:**

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning public nuisance in their entirety, set forth above in response to the proposed "Public Nuisance – Introduction" instruction.  Plaintiffs note that they have attempted to compromise with Defendants through a proposed modification of the final paragraph of the Court's Instructions on "Intentional Conduct," as set forth in Plaintiffs' Proposed Jury Instructions.[44]

---

the invasion.  He must either act for the purpose of causing it or ***know*** that it is resulting or is substantially certain to result from his conduct."  *Id.*, cmt. c (emphasis added).

[44] Specifically, Plaintiffs propose to delete the phrase "or should have known" from the third paragraph of the Court's instruction.  Solely deleting that phrase, however, would create the false impression that defendants had to know that their conduct would cause, or was substantially likely to cause, the public nuisance, which is directly contrary to the Restatement, and case law, and this Court's prior holding, all of which establish that Defendants intended to bring about the conditions that constitute a nuisance, regardless of whether they knew that those conditions would amount to a public nuisance.  Plaintiffs therefore proposed adding the phrase "the conditions that constitute" before "the public nuisance."  *See, e.g.*, Opinion and Order Denying Manufacturer Defendants' Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims, *In re Nat'l Prescription Opiate Litig.*, 406 F. Supp. 3d 672, 675 (N.D. Ohio Sept. 9, 2019) (explaining that: "Intentional, in this context [of absolute public nuisance], means not that a wrong or the existence of a nuisance was intended but that the creator of it intended to bring about the conditions which are in fact found to be a nuisance," and that, "[s]tated otherwise, 'Where the harm and resulting damage are the necessary consequences of just what the defendant is doing, or is incident to the activity itself or the manner in which it is conducted, *** the rule of absolute liability applies.'") (quoting *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859 at 863 (N.D. Ohio 2017) and *Taylor v. City of Cincinnati*, 55 N.E.2d 724, 727 (Ohio 1944)).  This comports with phrasing that Defendants (including Walgreens) in CT1A argued needed to be added to the Plaintiffs' proposed instructions.  *See* Doc. 2715-4 ("Defendants object to any instruction purporting to define 'intent' that fails to include the well-settled requirement that Defendants must have intended to create the conditions found to constitute a nuisance.").  Nevertheless, when Plaintiffs proposed to add the phrase to the Court's proposed instruction here, while also deleting, "or should have known," Defendants objected to adding the very same words they had previously insisted upon.

**Defendants' Proposed Instruction No. __**
**Public Nuisance -- Unreasonable Conduct**[45]

Even if a Defendant's conduct was "intentional," to form the basis for nuisance liability, the conduct must also be ***"unreasonable."*** Conduct is ***"unreasonable"*** when the gravity of the harm to Plaintiff outweighs the utility of the Defendant's conduct.

When deciding the ***gravity of the harm*** to the plaintiff, if any, you should consider factors such as the extent of the harm, the character of the harm, and the ease or difficulty with which the plaintiff could avoid the harm.

When deciding the ***utility of the Defendant's conduct***, if any, you should consider factors such as the social value of the primary purpose of the Defendant's conduct and the impracticability of preventing or avoiding the Defendant's conduct.

**Plaintiffs' Objections to Defendants' Proposed "Public Nuisance -- Unreasonable Conduct" Instruction:**

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning public nuisance in their entirety, set forth above in response to the proposed "Public Nuisance – Introduction" instruction.

---

[45] OJI 621.05(4)-(6) (modified).

**Defendants' Proposed Instruction No. ___**
**Public Nuisance – Compliance with Regulation[46]**

A Defendant's activity pursuant to and in compliance with specific statutory authority or a regulatory scheme cannot constitute a public nuisance.

**Plaintiffs' Objections to Defendants' Proposed "Public Nuisance – Compliance with Regulation" Instruction:**

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning public nuisance in their entirety, set forth above in response to the proposed "Public Nuisance – Introduction" instruction.

---

[46] OJI 621.09; *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App. 3d 704, 713 (1993) ("Since a pollution control facility operates under the sanction of law, it cannot be a common-law public nuisance. This is but another way of saying that although it would be a nuisance at common law, conduct which is fully authorized by statute or administrative regulation is not an actionable tort." (internal citations omitted)); Restatement (Second) of Torts § 821B, cmt. f ("Although it would be a nuisance at common law, conduct that is fully authorized by statute, ordinance or administrative regulation does not subject the actor to tort liability.").

**Defendants' Proposed Instruction No. ___**
**Public Nuisance – Unlawful Conduct[47]**

Plaintiffs can also prove nuisance liability is by showing that a Defendant acted unlawfully.  A Defendant acts ***unlawfully*** for purposes of this element of Plaintiffs' claim either by acting in a way that is prohibited by, or failing to act in a way that is required by, a "safety statute," which is a statute that imposes a specific legal requirement for the protection of others. To act "unlawfully," a Defendant must act culpably.  Mere negligence is not sufficient. [48]

Not all unlawful conduct can form the basis for a nuisance claim—only violations of particular "safety statutes" can do that.  It is not your function to determine what statutes qualify as a "safety statute" or what any statute requires of Defendants. That function is the Court's alone. Therefore, you may not find liability based on any unlawful conduct other than what I am about to describe to you in this instruction. After I instruct you about what conduct counts as "unlawful conduct" for purposes of Plaintiffs' nuisance claim, it is your function to determine whether each Plaintiff has proven by the greater weight of the evidence that a Defendant acted in the described unlawful manner.

In this case, a Defendant has committed unlawful conduct and violated a safety statute if that Defendant violated the requirements on which I will now instruct you.[49]

---

[47] OJI § 621.01; Taylor v. City of Cincinnati, 55 N.E.2d 724, 728 (Ohio 1944); City of Cincinnati v. Deutsche Bank Nat'l Tr. Co., 863 F.3d 474, 479 (6th Cir. 2017); United States v. Hill, 167 F.3d 1055, 1069 (6th Cir. 1999); OJI § 621.09; Brown v. Scioto Cty. Bd. of Commrs., 87 Ohio App. 3d 704, 713 (1993); Restatement (Second) of Torts § 821B, cmt. f.

[48] *Kramer v. Angels Path LLC*, 882 N.E.2d 47 at ¶ 19 (Ohio Ct. App. 2007) (citing Metzger v. Pennsylvania, Ohio & Detroit RR. Co., 146 Ohio St. 406 (1946)).

[49] In proposing this instruction, Defendants do not waive their argument that the statutes Plaintiffs rely on are not "safety statutes" containing a private right of action, as required to support such a claim.  *See* OJI § 621.01; *Uland v. S.E. Johnson Companies*, No. WM-97-005, 1998 WL 123086, at *5 (Ohio Ct. App. Mar. 13, 1998) (liability for an absolute nuisance based on the violation of a safety statute is equivalent to liability for negligence per se); *Smrtka v. Boote*, 88 N.E.3d 465, 474 (Ohio Ct. App. 2017) ("A negligence per se claim is not appropriate

**Plaintiffs' Objections to Defendants' Proposed "Public Nuisance – Unlawful Conduct" Instruction:**

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning public nuisance in their entirety, set forth above in response to the proposed "Public Nuisance – Introduction" instruction.[50]

In addition, Plaintiffs note that this Court has already considered, and rightly rejected, similar language before circulating the Court's Instructions.  Any concerns Defendants had concerning language about a "safety statute" were addressed at that time.

This proposed instruction also incorrectly purports to add requirements absent from the law and in direct contradiction to this Court's Instructions, which correctly state that a "person

---

when 'the legislative enactment in question does not define a civil liability but instead only makes provision to secure the safety or welfare of the public.'" (quoting *Moreland v. Oak Creek OB/GYN, Inc.*, 970 N.E.2d 455, 462 (Ohio Ct. App. 2005)).  A statute is a "safety statute" only if it sets forth a "<u>specific</u> legal requirement for the protection of others." *Taylor v. City of Cincinnati*, 55 N.E.2d 724, 728 (Ohio 1944) (emphasis added).  A statute sets forth a "specific" requirement where "a jury may determine whether there has been a violation thereof by finding a single issue of fact." *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 201 (Ohio 1998).  Any "suspicious order" duty is not a "safety statute" for three reasons: *First*, the Court has already held, as to the "suspicious order duties," that the jury would need to make more than a single finding of fact to determine if those duties were violated.  *See* ECF No. 2483 at 29.  *Second*, there is no private right of action under the federal CSA, which cannot form the basis of a negligence *per se* claim.  *See* ECF No. 3177 at 52-53 (dismissing negligence *per se* claims based on the federal CSA and Ohio law); ECF No. 1680 at 23-25; *Smith v. Hickenlooper*, 164 F. Supp. 3d 1286, 1290-91 (D. Colo. 2016).  *Third*, the violation of a <u>regulation</u> is patently insufficient for *per se* liability.  *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 202–03 (Ohio 1998) ("[T]o bestow upon administrative agencies the ability to propose and adopt rules that alter the proof requirements between litigants 'would be tantamount to an unconstitutional delegation of legislative authority, since administrative agencies cannot dictate public policy.'").  Accordingly, while any instruction on absolute public nuisance based on unlawful conduct must identify the specific statutory requirements the Court finds are a proper basis for liability, Plaintiffs are not entitled to any such instruction because they have failed to identify a safety statute.

[50] This is also another example of confusing terminology, as the proposed instruction asks the Court to instruct, incorrectly, on whether the unlawful conduct is also "culpabl[e]" or "negligent," and does so without defining these terms, although a layperson may not understand what "negligence" is.

does not need to know that their conduct is unlawful for an unlawful act to occur."  *See* 1 CV Ohio Jury Instructions 621.01 ("Comment: *The violation of a safety statute creates absolute liability if it is determined that the statute establishes a specific legal requirement for the protection of others. In these circumstances the degree of care exercised is not in issue. . . ..*"); *Taylor v. City of Cincinnati*, 143 Ohio St. 426, 434, 55 N.E.2d 724, 728 (1944) ("if harm is caused to another by reason of any unlawful act on the part of the defendant, the latter is liable without reference to the care exercised in the commission of such act"); *accord Kramer v. Angel's Path, L.L.C.*, 2007-Ohio-7099, ¶ 19, 174 Ohio App. 3d 359, 368, 882 N.E.2d 46, 53 (recognizing that conduct giving rise to an absolute public nuisance claim may be intentional "or" unlawful).

**Defendants' Proposed Instruction No. \_\_\_**
**Public Nuisance – Controlled Substance Security Requirements[51]**

Plaintiffs contend that each Defendant acted unlawfully by failing to monitor and report to the United States Drug Enforcement Administration, or DEA, "suspicious" orders for its prescription opioid medicines. "Suspicious" orders include orders of unusual size, orders deviating substantially from a normal pattern, or orders of unusual frequency, and it is up to the Registrant to determine how it applies these factors to identify suspicious orders in its operations and overall security system. A Defendant's filling of orders that it receives for prescription opioid medications is not, on its own, unlawful.

A Defendant does not have any obligations with respect to suspicious order monitoring unless that Defendant is a DEA Distribution[52] Registrant. Federal regulations governing the registration process state that DEA Distribution Registrants shall "provide effective controls and procedures to guard against theft and diversion" which is called the "Security Requirement."[53] Federal regulations contain various security requirements, including a requirement to "design and operate a system to disclose" to each DEA Distribution Registrant "suspicious orders of controlled

---

[51] Defendants continue to maintain, as a matter of law, that they owe no legal obligation or duty to Plaintiffs to monitor or report suspicious orders or that such a theory can form the basis for Plaintiffs' absolute public nuisance theory, and further that their interpretation of the Controlled Substances Act as set forth in Motions for Summary Judgment and response to Plaintiffs' Motion for Summary Judgment related to duties under the Controlled Substances Act (*e.g.,* Dkts. 1883, 1885, 2159) are correct. Accordingly, Defendants continue to maintain that Plaintiffs' public nuisance theory is legally flawed and continue to object to any holding to the contrary. *See* Dkt. 2159. Defendants also renew their objection to any ruling that they have a "duty" to refuse to ship suspicious orders without first undertaking an investigation. *See, e.g., id.*

[52] Technically, "non-practitioner registrants" but modified for clarity.

[53] 21 C.F.R. § 1301.71(a) ("All applicants and registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances."); 21 U.S.C. §823(b).

substances."[54]  A registrant may be in substantial compliance with the Security Requirement "after evaluation of the overall security system and needs of the applicant or registrant,"[55] taking into consideration multiple factors including: the type of activity being conducted; the type, form and quantity of controlled substances handled; location of the premises; building construction and physical security controls; and the adequacy of the Registrant's system for monitoring the receipt, manufacture, distribution and disposition of controlled substances in its operations.[56]  Whether or not a Distribution Registrant has substantially complied with the Security Requirement therefore depends upon multiple factors and an overall evaluation of the Distribution Registrant's security system and needs.

One of many factors considered for substantial compliance with the Security Requirement is the Registrant's system for disclosing suspicious orders to the Distribution Registrant.

Federal laws and regulations do not specify a particular type of system to be used to disclose suspicious orders to the Distribution Registrant or how that system should be designed or operated.   A DEA Distribution Registrant may "design and operate" any system based upon its own needs that provides effective controls against diversion and discloses to the Distribution Registrant suspicious orders of controlled substances. You have heard evidence that the systems

---

[54] 21 C.F.R. § 1301.74(b) ("The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances.  The registrant shall inform the Field Division Office of the [DEA] in his area of suspicious orders when discovered by the registrant.  Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.").

[55] 21 C.F.R. § 1301.71(b) ("Substantial compliance with the standards set forth in Secs. 1301.72-1301.76 may be deemed sufficient by the Administrator after evaluation of the overall security system and needs of the applicant or registrant. In evaluating the overall security system of a registrant or applicant, the Administrator may consider any of the following [listed] factors as he may deem relevant . . . ."

[56] *Id.*

83

designed and operated by the Defendants, in some instances, differed from one another.  This is not evidence that a given system violated any laws.  In determining whether or not a Defendant that is a DEA Distribution Registrant substantially complied with the Security Requirement, you must only consider each such Defendant's overall security system in light of their respective needs, including overall physical and operational controls and whether the system discloses suspicious orders received by that Defendant for its opioid medications.

The federal laws and regulations refer to "diversion."  Diversion means the transfer of a controlled substance from legitimate "medical, scientific, research, or industrial channels"[57] to illegal channels.  Legitimate medical channels include prescriptions written by a licensed medical prescriber for a legitimate medical purpose and in the usual course of the prescriber's professional practice.[58]  Consequently, legitimate medical channels also include the shipping of orders of controlled substances to pharmacies to fill prescriptions for legitimate medical purposes.

A Defendant that is a DEA Distribution Registrant does not have any obligation with respect to orders for prescription opioid medicines that were not placed directly with that Defendant.  You may not find that a Defendant that is a DEA Distribution Registrant unreasonably and substantially interfered with the right to public health by failing to monitor and/or report suspicious orders of prescription opioid medicines that were placed by customers with other Defendants or third parties.

---

[57] 21 U.S.C. § 823(b)(1) ("The Attorney General shall register an applicant to distribute a controlled substance in schedule I or II unless he determines that the issuance of such registration is inconsistent with the public interest. In determining the public interest, the following factors shall be considered: (1) maintenance of effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels . . . .").

[58] 21 C.F.R. § 1306.04(a) ("A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.").

You may find that orders shipped by a Defendant unreasonably and significantly interfered with the right to public health only if you conclude by the greater weight of the evidence that those orders:  (1) were "suspicious" under the directions I have given you; (2) were placed directly with that Defendant; (3) were not reported to the DEA; (4) were ultimately shipped to Cuyahoga County or Summit County—depending on which Plaintiff's claim you are considering—without a sufficient investigation by the Defendant; and (5) were subsequently diverted by the pharmacy placing the order from a lawful to an unlawful channel of distribution or use.  You may not rely on orders that do not meet these conditions to find that a Defendant unreasonably and significantly interfered with the right to public health.  Even if you find that these conditions were met as to certain orders placed with a Defendant, you are not required to conclude that the Defendant's conduct unreasonably and significantly interfered with the right to public health.  Rather, it is merely a factor that you may consider in determining, based on the totality of the circumstances and my other instructions, whether the Defendant's conduct unreasonably and significantly interfered with the right to public health.

**<u>Plaintiffs' Objections to Defendants' Proposed "Public Nuisance – Controlled Substance Security Requirements" Instruction:</u>**

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning public nuisance in their entirety, set forth above in response to the proposed "Public Nuisance – Introduction" instruction. This proposed instruction is legally incorrect, confusing, and argumentative.  It also purports to conflate causation issues with an instruction on the CSA, and omits any reference to the Ohio laws and regulations Defendants are also alleged to have violated.

As a threshold matter, the Court has already identified the controlled substances laws and regulations as the statutes at issue in the Court's Instructions.  Although it might wish to add the

85

language of those provisions, it is not necessary to do so, and it would be inappropriate not to focus on the plain language.  *See Smith v. Justarr, Inc.*, 102 Ohio App. 3d 506, 512, 657 N.E.2d 542, 545 (1995) (explaining that if "the body of applicable law includes a statutory enactment, the trial court should ordinarily focus upon the actual language used in the statute").  Only "if the statute contains words or phrases of doubtful or ambiguous meaning" would further instruction be appropriate.  *Id.*  Even then, any explanation would have to be "calculated to prevent the jury from being misled or confused about how to apply the statute to the evidence presented in the case." *Smith*, 102 Ohio App. 3d at 512, 657 N.E.2d at 545.

Here, Defendants' proposed instructions are, if anything, designed to mislead.  For example, they include a lengthy discussion of "substantial compliance" with the "Security Requirement" as the relevant standard.  That of course, is not the law, nor is there any evidence that their inadequate systems were ever "deemed sufficient."  (Although there is evidence they were repeatedly sanctioned for violating the CSA.)  Defendants verbose and confusing language also appears to reargue issues of aggregate proof that this Court has decided against them, *see, e.g.*, Op. and Order Regarding Defendants' Summary Judgment Motions on Causation, *In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804, (Doc. No. 2561), 2019 WL 4178617, at *3 (N.D. Ohio Sept. 3, 2019), as it suggests there must be evidence a given order was in fact diverted.  They incorrectly state the law in multiple respects, and add legally incorrect language that appears geared toward the causation inquiry, not the CSA's requirements.

If the Court were to instruct on the requirements of the CSA, the place to look for language would be its summary judgment ruling on Defendants' duties under the CSA (which is conspicuously absent from Defendants' proposed instructions).  There, this Court explained that "as a matter of law, Section 1301.74 [a regulation implementing the CSA] imposes a legal duty on

86

registrants[59] to: (1) design and operate a system to disclose to the registrant suspicious orders; and (2) inform the DEA of suspicious orders when discovered by the registrant."  Opinion and Order Regarding Plaintiffs' Summary Judgment Motions Addressing the Controlled Substances Act, *In re: National Prescription Opiate Litig.*, 2019 WL 3917575, at *7 (N.D. Ohio Aug. 19, 2019).  It further explained that, "based on the CSA statutory and regulatory requirements, 'it is clear that distributors are required to identify suspicious orders from pharmacies and cannot ship those orders unless investigation [first] shows them to be legitimate.'"  *Id.* at *9 (quoting Special Master's Discovery Ruling No. 12).

---

[59] There has never been any dispute that all distributors of controlled substances, such as opioid painkillers, must obtain a registration under the CSA (as well as applicable state registrations or licenses).  If this term is used, the Court would likely incorporate the definition as well.

**Defendants' Proposed Instruction No. __**
**Public Nuisance – Causation**

Under either of the two ways of proving public nuisance that I have described to you—that is, intentional conduct or unlawful conduct—a plaintiff must prove by the greater weight of the evidence that a particular defendant's conduct caused an unreasonable interference with the right to public health. Legal causation involves both proof that the defendant's conduct was necessary to bring about the harm and that the connection between the conduct and the harm is direct, foreseeable, and substantial. We call the first idea "but for" cause, and the second idea "proximate cause."[60]

*But-for causation*

To find that a Defendant's conduct caused an unreasonable interference with the right to public health, you must find that the injury would not have occurred without the Defendant's conduct. In this case, if the unreasonable interference with the right to public health would have occurred even if a Defendant did not distribute opioids to pharmacies in Cuyahoga and Summit counties in a manner that you find to be (1) intentional and unreasonable or (2) unlawful, then that Defendant's conduct is not a but-for cause.

---

[60] *Comcast Corp. v. Nat. Ass'n of African American Owned Media, Inc.* 140 S. Ct. 1009, 1014 (2020) (black letter requirement of but for causation); *Cincinnati v. Beretta USA Corp.*, 95 Oh. St. 3d 416, 426-27 (2002) (adopting proximate causation standard from *Holmes v. Security Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992)). Plaintiffs have conceded that both are required. ECF 2204 at 33 ("Under Ohio law, a plaintiff must show that a defendant's wrongful conduct was a cause—i.e., both a cause-in-fact and a legal/proximate cause—of damage to Plaintiffs. *In re Gadolinium-Based Contrast Agents Prod. Liab. Litig.*, 2013 WL 593993, at *3 (N.D. Ohio Feb. 15, 2013).").

In deciding whether Plaintiffs have proved but for causation, you may consider evidence of reasons other than the Defendant's alleged conduct for any interference with the right to public health.[61]

Plaintiffs allege that Defendants interfered with the right to public health by wrongfully shipping suspicious orders of prescription opioid medications to their affiliated pharmacies.  A Defendant has not caused an unreasonable interference with the right to public health when the prescription opioids it ships are distributed and dispensed to legitimate medical channels.  Similarly, pharmacists are permitted to dispense prescriptions in legitimate medical channels.  Therefore, prescription opioid medications distributed by a Defendant to an affiliated pharmacy, which then dispensed the medication to patients with valid prescriptions, cannot be considered a but-for cause of unreasonable interference with the right to public health. [62]

*Proximate causation*

In addition to proving but-for causation, each Plaintiffs must prove by the greater weight of the evidence that the Defendant's conduct was a proximate cause of an unreasonable and

---

[61] Defendants reserve the right to propose specific instructions directing the jury to consider evidence at trial pointing to specific alternative causes.  Plaintiffs have already identified alternative causes in their complaints.  *See* Summit County, Second Amended Complaint ¶ 9 (""by a marketing scheme involving the false and deceptive marketing of prescription opioids, which was designed to dramatically increase the demand for and sale of opioids and opioid prescriptions."); *id.* ¶ 15 ("By providing misleading information to doctors about addiction being rare and opioids being safe even in high doses, then pressuring them into prescribing their products by arguing, among other things, that no one should be in pain, the [opioid manufacturers and non-pharmacy distributors] created a population of addicted patients who sought opioids at never-before-seen rates. The scheme worked, and through it the [opioid manufacturers [and non-pharmacy distributors] caused their profits to soar as more and more people became dependent on opioids."); *id.* ¶ 17 (""[P]ill mills," often styled as "pain clinics," sprouted nationwide and rogue prescribers stepped in to supply prescriptions for non-medical use. These pill mills, typically under the auspices of licensed medical professionals, issue high volumes of opioid prescriptions under the guise of medical treatment."); *see also id.* ¶ 710 ((effect of southern Ohio pill mills in Summit County).

[62] *See* 21 C.F.R. § 1306.04(a).

significant interference with a right to public health.  Proximate cause is an act or failure to act that in the natural and continuous sequence directly produced the injury, and without which it would not have occurred. A Defendant is not responsible for any injury to another if its conduct is a remote cause and not a proximate or direct cause.[63] There must be some direct relation between the injury asserted and the injurious conduct alleged." To find that a Defendant's conduct was a cause of a nuisance, you must find that there is a direct causal relationship between the Defendant's conduct and the nuisance.

If you do not find that a Defendant's conduct was a direct cause of the nuisance, you must find that plaintiffs have failed to prove causation. This is so even if you find that the nuisance was foreseeable, and even if you find that Defendants intentionally caused the course of events leading to the nuisance.

*Intervening causes*

If you find that the independent and unforeseeable conduct of a person other than the defendant produced the unreasonable interference with the right to public health , the chain of causation beginning with the defendant's conduct is broken.[64]  We call that interruption in a chain of causation an "intervening cause."  An intervening cause does not break the chain of

---

[63] 12-gd-50004-DAP, ECF 161-5 (citing OJI §§ 405.01, 405.03 and ORC § 2307.73); *Berretta*, 95 Oh. St. 3d 416, *Id.* at ¶ 37, 768 N.E.2d 1136.

[64] *Adams v. Lift-a-Loft Corp.*, 1999 WL 33105610, *3 (S.D. Oh.  Nov. 12, 1999); OJI 405.05(4).  *Federal Steel & Wire v. Ruhlin Constn.*, 45 Ohio St.3d 171, 175 (1989); *id.* at 177 (discussing Restatement (Second of Torts §§ 448 and 449).  *See also Feichtner v. City of Cleveland*, 95 Ohio App. 3d 388 (1994); *Evans v. Ohio State Univ.*, 112 Ohio App. 3d 724 (1996); *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 617 N.E.2d 1068,1071-72 (1993)  (quoting *Cascone v. Herb Kay Co.*, 6 Ohio St. 3d 155, 451 N.E.2d 815, 819 (1983)); *Berdyck v. Shinde*, 66 Ohio St.3d 573, 613 N.E.2d 1014, 1025 (1993); *Thropp v. Bache Halsey Stuart Shields, Inc.*, 650 F.2d 817, 821 (6th Cir. 1981); *Chapman v. Milford Towing & Service*, 499 Fed. Appx. 437, 442-43 (6th Cir. 2012).  *See also* Restatement (Second) of Torts § 442 (considerations to determine if an intervening cause is a superseding cause).

90

causation unless it was unforeseeable to the defendant when the defendant engaged in the conduct which plaintiffs alleged caused the unreasonable interference with the right to public health.[65] Harm is foreseeable if a reasonable person who had the same information available to the defendant would have foreseen or expected the harm to occur as a result of conduct.[66] Foreseeability, however, may not be established merely by proof that opioid abuse and addiction existed in the community.  It must have been foreseeable to Defendants that that  the prescription opioid medications they shipped would be diverted from legitimate medical, scientific, or industrial channels to  illegal channels.

If you find an intervening cause in this case, you must find that Defendants were not the cause of any unreasonable and significant interference with the right to public health in Plaintiffs' counties.

*Multiple causes*

If you find that multiple wrongdoers each contributed to a combined harm, a Plaintiff must prove by the greater weight of the evidence that each Defendant's conduct was a substantial factor in creating the unreasonable interference with the right to public health.[67]  A Defendant's

---

[65] Adapted from OJI, 405.05.4.  *See Cascone v. Herb Kay Co.*, 6 Ohio St. 3d 155, 159, 451 N.E.2d 815, 819 (1983) ("Whether an intervening act breaks the causal connection between the negligence and the injury, thus relieving one of liability for his negligence, depends upon whether that intervening actor was a conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who was guilty of the negligence.") (citing Restatement (Second) of Torts § 440).

[66] Adapted from OJI 401.07.  *See also Cascone v. Herb Kay Co.*, 6 Ohio St. 3d 155, 160, 451 N.E.2d 815, 819 (1983).

[67] Ohio has adopted the "substantial factor" causation standard from the Restatement (Second) of Torts.  *See, e.g., Pang v. Minch*, 559 N.E.2d 1313, 1324 (Ohio 1990) ("Where a plaintiff suffers a single injury as a result of the tortious acts of multiple defendants, the burden of proof is upon the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm." (citing Restatement (Second) of Torts § 433B(1)); *Horton v. Harwick Chem. Corp.*, 653 N.E.2d 1196 (Ohio 1995) (adopting § 431); *Person v. Gum*, 455 N.E.2d 713, 716 (Ohio App. 1983) (concluding that a defendant was not liable because its

91

conduct is a "substantial" factor if it has such an effect that a reasonable person would regard that conduct as the cause or one of the causes of an unreasonable interference with a right to public health. In determining whether a Defendant's conduct is a substantial factor in bringing about harm to another, you should consider: (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; (c) lapse of time.[68]

If you find that a Plaintiff has proved that a Defendant's conduct was a substantial factor in directly causing an unreasonable interference with the right to public health, but was not the only cause of the interference, you should find that the Defendant caused the unreasonable interference.  You should next determine whether responsibility can be divided between different causes, under the instructions I will soon give you about apportionment.

**Plaintiffs' Objections to Defendants' Proposed "Public Nuisance – Causation" Instruction:**

---

conduct was not "a 'substantial factor' in bringing about appellee's harm" and citing Restatement of Torts 2d § 431); *see also In re Bendectin Litig*. 857 F.2d 290, 310 (6th Cir. 1988).  Plaintiffs acknowledged: "Under Ohio law, when multiple wrongdoers each contribute to a combined harm, courts routinely apply the 'substantial factor' test to the issue of causation." ECF 2204 at 33 (emphasis added); *see id*. at n.8 (collecting authority).

Under these principles, "In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. Except as stated in § 432 (2)  this is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm."  Restatement (Second) Torts § 431, cmt. a (emphases added).  So to hold any particular defendant liable, the jury must find that but for the defendants' combined conduct, the harm would not have occurred, and that the particular defendant's conduct was a substantial rather than negligible factor in causing it.  *See also* OJI 405.01(3)(B).

[68] Restatement (Second) Torts § 431, cmt. a; Restatement (Second) of Torts § 433.

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning public nuisance in their entirety, set forth above in response to the proposed "Public Nuisance – Introduction" instruction.

This instruction is legally incorrect in multiple respects, including asking the Court to instruct on "but for" causation when, as this Court correctly recognized, the issue is whether Defendants were a "substantial factor" in causing the public nuisance. *See, e.g., Pang v. Minch*, 53 Ohio St. 3d 186, 559 N.E.2d 1313 (1990) (quoting Restatement (Second) of Torts § 433B(2)); OJI 405.01(3) (Multiple Contributing Causes); Prosser and Keeton, Law of Torts § 41, p. 267 (5th ed. 1984) (explaining that in such cases the substantial factor test "has found general acceptance" and "is an improvement over the 'but-for' rule"). Compounding this error, Defendants also propose a subsequent "multiple causes" instruction that suggests there is still *more* to be proved in case involving harm from more than one wrongdoer. This aspect of Defendants' proposed instruction also includes a list copied from the Restatement (Second) of Torts § 433 of considerations to evaluate in determining if conduct is a substantial factor which is absent from the Ohio Pattern Jury Instructions and unnecessary.[69]

With respect to proximate cause, Defendants' proposed instruction is both incorrect and confusing. It makes arguments about "direct" and remote causes four or five times without articulating any clear standard. It also, in effect, seeks to overturn prior summary judgment rulings in CT1. In its Opinion and Order denying summary judgment motions challenging causation, the Court reasoned that "[b]ecause Plaintiffs have presented evidence that shows they have suffered the sort of injury that would be an expected consequence of the alleged wrongful conduct,

---

[69] Neither Defendants' April 10, 2020 submission nor the CT1A Defendants' proposed instructions proposed this language. *See* Doc. 2715-3.

93

Plaintiffs have done enough to withstand summary judgment on this issue," showing they could establish causation by meeting this standard.   Opinion and Order Regarding Defendants' Summary Judgment Motions on Causation, *In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804, 2019 WL 4178617, at *4 (N.D. Ohio Sept. 3, 2019) (explaining that "a factfinder could reasonably infer these failures were a substantial factor in producing the alleged harm suffered by Plaintiffs"); *see also, e.g.*, *Empire Title Servs., Inc. v. Fifth Third Mortg. Co.*, 2013 WL 1337629, at *9 (N.D. Ohio Mar. 29, 2013) ("Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, he has done enough to withstand summary judgment on the ground of absence of causation.'") (quoting *BCS Services, Inc. v. Heartwood*, 88, LLC, 637 F.3d 750, 758 (7th Cir. 2011).[70]

Adding to the confusion, Defendants proposed instruction includes "remote cause" language that does not explain the concept.   It also fails to make clear that under Ohio law, the issue is that: "A person is not responsible for injury to another if his negligence is a remote cause and not a proximate cause. A cause is remote when the result could not have been reasonably foreseen or anticipated as being the natural or probable cause of any injury." *Halloran v. Barnard*, 2017-Ohio-1069, ¶ 5.  This issue is already covered by the Court's Instructions on causation and would be confusing to present as a separate, unexplained requirement with Defendants' proposed language.

---

[70] If the court wished to give a different "proximate cause" or "direct cause" instruction that the one it already developed after input from all parties, it could use the language from the Pattern Instructions, which provides only: *See* CV 405.01 Proximate cause [Rev. 2/11/17], 1 CV Ohio Jury Instructions 405.01 ("PROXIMATE CAUSE DEFINED. '(Proximate) (Direct) cause' is an act or failure to act that in the natural and continuous sequence directly produced the (injury) (death) (damages) and without which the (injury) (death) (damages) would not have occurred.')." As explained above, however, the substantial factor language proposed, and the avoidance of legalese, is both a correct and preferred approach.

Defendants' proposed instruction also includes an incorrect and argumentative "intervening cause" provision.  This instruction fails to acknowledge that *Defendants* have the burden of proving an allegedly intervening cause as an affirmative defense.  *Compare Leibreich v. A.J. Refrigeration, Inc.*, 1993-Ohio-12, 67 Ohio St. 3d 266, 269, 617 N.E.2d 1068, 1071 (describing intervening cause as a defense). Because Plaintiffs have alleged, and this Court has already found, that the consequences of Defendants' alleged misconduct were exactly the sorts of consequences that would be expected to follow from the alleged misconduct, there is no reason to include an intervening cause instruction.[71]

Defendants also propose an argumentative definition of foreseeability that would comment on specific evidence and say that it does not establish foreseeability, but does not make clear what would.  In addition to being inappropriately argumentative, this proposed instruction is so selective

---

[71] If Defendants provide evidence to support any unforeseeable, intervening cause, a correct instruction would be:

> I will now instruct you on an issue on which Defendants bear the burden of proof.  The standard is the same – a preponderance of the evidence.

> Defendants argue that there are "intervening causes" of the public nuisance. An "intervening cause" is an act of another that was not foreseeable to Defendants and is fully independent of Defendants' conduct.

> In this context, the term "independent" means the absence of any connection or relationship of cause and effect between the original and subsequent act.

> To absolve Defendants of responsibility, the unforeseeable, independent action must completely remove the effects of their conduct in causing the conditions that constitute an interference with the public health or public safety.

CV 405.05 Intervening and superseding cause [Rev. 2/11/17], 1 CV Ohio Jury Instructions 405.05; *Leibreich v. A.J. Refrigeration, Inc.*, 1993-Ohio-12, 67 Ohio St. 3d 266, 269, 617 N.E.2d 1068, 1071–72.

a modification of the Ohio Pattern Instruction as to be both confusing and incorrect. That instruction states that:

> The test for foreseeability is not whether a person should have foreseen the (injuries) (damages) exactly as it happened to the specific (person) (property). The test is whether under the circumstances a reasonably careful person would have anticipated that an act or failure to act would likely (result in) (cause) (injuries) (damages).

CV 401.07 Foreseeability [Rev. 8/5/15], 1 CV Ohio Jury Instructions 401.07. Defendants' proposed instruction, by contrast, incorrectly suggests that Defendants do have to foresee the precise harm. *Compare Mudrich v. Standard Oil Co.*, 153 Ohio St. 31, 39, 90 N.E.2d 859, 864 (1950) (proposed intervening cause instruction incorrect in failing to recognize that "[t]he test was . . . whether in the light of all the circumstances an injury was likely to result to some one").

Not only in this regard, but throughout, Defendants' proposed instruction is also needlessly long and confusing and includes inappropriate, argumentative commentary. This language misstates the law not only on causation, but on Defendants' legal duties in guarding against diversion. It also ignores that both intentional and unlawful conduct can underlie a public nuisance claim and includes inappropriate commentary on potential other causes, as well as Defendants' shipping and dispensing. *Compare Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 33, 142 Ohio St. 3d 257, 266, 29 N.E.3d 921, 931 ("Abstract rules of law or general propositions . . . ought not to be given unless specifically applicable to facts in issue."); *State v. Guster,* 66 Ohio St. 2d 266, 271, 421 N.E.2d 157 (1981) ("an instruction that draws attention to irrelevant issues may be objectionable"). This instruction also improperly references apportionment, for the reasons set forth in Plaintiffs' objections to the subsequent proposed instruction on that subject.

**Defendants' Proposed Instruction No. ___**
**Public Nuisance – Statute of Limitations**[72]

Plaintiffs' claims for public nuisance are subject to a four-year statute of limitations. Because Plaintiffs first sued CVS Indiana, L.L.C., CVS Rx Services, Inc., Rite Aid of Maryland, Walgreens Co., and Walmart Inc. on April 25, 2018, they may only recover against these Defendants based on conduct that occurred within the previous four years, after April 25, 2014. You may not base any finding of liability against any Defendant on conduct of that Defendant before April 25, 2014.

Plaintiffs first sued Giant Eagle/HBC Service Company and Discount Drug Mart, Inc. on May 18, 2018.  You may not base any finding of liability against Giant Eagle/HBC Service Company and Discount Drug Mart, Inc. on conduct of that Defendant before May 18, 2014.

**Plaintiffs' Objections to Proposed "Public Nuisance – Statute of Limitations" Instruction:**

As Defendants acknowledge, this instruction is inconsistent with this Court's prior ruling that there is no statute of limitations for public nuisance claims such as these.  Op. and Order Denying Defendants' Motions for Summary Judgment Based on Statutes of Limitations, *In re Natl. Prescription Opiate Litig.*, 2019 WL 4194296, *2 (N.D. Ohio Sept. 4, 2019) (Dkt. 2568). Plaintiffs therefore will not further discuss the language of this instruction, but note that Defendants' proposed instructions from "Public Nuisance – Statute of Limitations" through

---

[72] Defendants continue to maintain that Plaintiffs' claims are subject to the Ohio Product Liability Act and (among other effects) governed by a two-year statute of limitations.  Without waiving this argument but recognizing that the Court has rejected it, this instruction reflects the four-year limitations period from Ohio Rev. Code § 2305.09.

Defendants also acknowledge this Court's ruling that no statute of limitations applies to claims for public nuisance.  Dkt. 2568 at 2.  Defendants respectfully disagree and believe that jury should be instructed regarding limitations.

"Laches" fail to acknowledge their burden of proof and object to these instructions on that basis as well.

## Defendants' Proposed Instruction No. __
## Noerr-Pennington Doctrine[73]

Plaintiffs have presented evidence that certain Defendants participated in trade associations, including the Healthcare Distribution Alliance ("HDA"), and engaged in lobbying efforts, including supporting legislation (such as the "Marino Bill"), filing amicus briefs, challenging regulations, and opposing certain DEA actions.  You cannot find any Defendant liable based on that conduct because it is protected by the First Amendment. The Constitution and laws of this country give everyone the right, whether acting alone or with others, to petition or appeal to all government agencies for official governmental action. The law recognizes that, when people petition or appeal to government agencies, they will seek official governmental action that favors them and that may also be unfavorable to others.

The Constitution and laws of this country also give everyone the right, whether acting alone or with others, to participate in groups that take collective action to pursue the interests of their members. The law also recognizes that, when people participate in groups that take collective action to pursue the interests of their members, they might pursue interests that favor them and that may also be unfavorable to others.

Concerted action by trade associations for the purpose of influencing or promoting official legislative, judicial, or administrative action is protected by the First Amendment and is not "unlawful activity" that can support public nuisance liability.  If you find that any of the Plaintiffs' injuries were the result of efforts by a Defendant merely to participate in a trade association, or to

---

[73] *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140 (1961); *United Mine Works of Am. v. Pennington*, 381 U.S. 657, 671 (1965); *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508-11 (1972); *Horsemen's Benev. & Protective Ass'n v. Penn. Horse Racing Comm'n*, 530 F. Supp. 1098, 1099 (E.D. Pa. 1982); 7 Bus. & Com. Litig. Fed. Cts. § 75:111 (4th ed.); 14 Bus. & Com. Litig. Fed. Cts. § 143:60 (4th ed.).

influence or promote official legislative, judicial or administrative action, then your verdict must be for the Defendants as to those injuries.

Finally, you cannot infer any sort of wrongdoing from the fact that Defendants have defended themselves in this litigation.  They have a constitutional right to do so.  You may not draw any negative conclusions about, or base any negative finding upon, the fact that Defendants chose to exercise that right.[74]

**Plaintiffs' Objections to Proposed "Noerr-Pennington Doctrine Instruction:**

Plaintiffs object to this proposed instruction in its entirety.  Plaintiffs have not attempted to argue that Defendants are liable based merely on participation in trade associations or honest lobbying activity.  Defendants' proposed instruction incorrectly states the law and is argumentative and needlessly repetitive in attempting to portray Defendants' conduct as protected by "[t]he Constitution and laws of this country."  This proposed instruction would sweep in conduct that is not protected by the First Amendment or *Noerr-Pennington* doctrine.  *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123-24 (D.C. Cir. 2009) (explaining that "Defendants' attempt to invoke *Noerr–Pennington* as protection fails because the doctrine does not protect deliberately false or misleading statements" and quoting earlier precedent stating that "neither the *Noerr–Pennington* doctrine nor the First Amendment more generally protects petitions predicated on fraud or deliberate misrepresentation").  Plaintiffs would not categorically object to an instruction that the evidence of certain Defendants participated in trade associations, including the Healthcare

_____

[74] *See Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2002) (The "Due Process Clause prohibits a State from punishing an individual without first providing that individual with an opportunity to present every available defense." (internal quotations and citations omitted)); *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . ." (citation omitted)).

100

Distribution Alliance ("HDA"), and engaged in lobbying efforts, including supporting legislation (such as the "Marino Bill"), filing amicus briefs, challenging regulations, and opposing certain DEA actions cannot be the basis for a liability finding because it is protected by the First Amendment, provided it makes clear that the jury may consider evidence of that conduct when evaluating the Defendants' state of mind, intent, knowledge, motive, plan, or purpose.

To the extent Defendants seek a paragraph concerning blame for defense in litigation, Plaintiffs do not intend to argue that they caused a public nuisance by defending themselves in this litigation.

**Defendants' Proposed Instruction No. __**
**Preemption[75]**

During this case you have heard evidence about the role of the FDA and DEA in regulating the conduct of the Defendants. I instruct you that FDA or DEA action or inaction is not dispositive, but is a factor you may consider in your deliberations.

In addition, because of the authority of those agencies and as a matter of federal law, there are certain kinds of conduct for which you may not impose liability.

Because federal law authorizes FDA-approved medications to be sold by licensed entities, and federal law authorizes distributors to distribute prescription opioid medications, you cannot hold a Defendant liable simply because it distributed, or did not stop distributing, prescription opioid medications approved by the DEA and pursuant to DEA registrations and state licenses.[76]

**<u>Plaintiffs' Objections to Proposed "Preemption" Instruction:</u>**

Plaintiffs object to this proposed instruction in its entirety as legally incorrect, likely to confuse the jury, and inconsistent with this Court's rulings repeatedly rejecting Defendants' preemption arguments. *See, e.g.,* Op. and Order, *In re Natl. Prescription Opiate Litig.*, 1:17 MD 2804, (Doc. No. 2565), 2019 WL 4178591, at *6 & *12 (N.D. Ohio Sept. 3, 2019). It is also inconsistent with this Court's summary judgment ruling holding that Defendants do have a duty to halt suspicious orders unless and until due diligence disproves the suspicion. *See In re Nat'l*

---

[75] *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 538 (6th Cir. 1993).

[76] *Muscogee*, 1:18-op-45459, ECF No. 109, at 42; *Blackfeet*, 1:18-op-45749, ECF No. 56, at 15, Report and Rec.; *In Re Nat'l Prescription Opiate Litig.*, 1:17-md-02804, ECF No. 1680, Order (adopting relevant portions of R&R); 21 U.S.C. § 355(j)(2)(A); *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014); *Mut. Phar. Co., v. Bartlett*, 570 U.S. 472, 488 (2013); *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 612, 618 (2011); *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 935-36 (6th Cir. 2014); *Strayhorn v. Wyeth Pharma.*, 737 F.3d 378, 391 (6th Cir. 2014).

*Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3917575, at *18-19 (N.D. Ohio Aug. 19, 2019) (explaining that this is among the "more basic requirements" of the CSA). Defendants offer no explanation or justification for why the jury should be told that "FDA or DEA action or inaction . . . is a factor you may consider in your deliberations," or why those factors, as opposed to any other evidence admitted at trial, deserves explicit mention in the jury instructions.  The commentary regarding FDA approval is also irrelevant and likely to be confusing.  *Compare Alford*, 1994 WL 568490, at *16–18.

**Defendants' Proposed Instruction No. __**
**Public Nuisance – Apportionment[77]**

If you find that one or both Plaintiffs have established by the greater weight of the evidence that one or more Defendants proximately caused an unreasonable and significant interference with the right to public health that caused harm to one or both Plaintiffs, you will be asked to decide what percentage of the overall harm is attributed to: 1) each of the Defendants, 2) the Plaintiffs themselves, and 3) other entities and individuals that are not parties in this trial, but that you find were a substantial factor in causing a significant interference with the right to public health at issue in this trial.  There are two steps to this inquiry.

First, you must decide whether Defendants have shown by the greater weight of the evidence that Plaintiffs' harm can be apportioned among actors other than the Defendants, including, but not limited to, opioid manufacturers, internet pharmacies, non-party pharmacies, other pharmaceutical distributors, physicians, or users of opioids.  A harm can be apportioned if responsibility for the harm can be divided among the substantial factors for that harm in any logical or reasonable basis.[78]

Second, if the harm can be apportioned, you must decide what percentage of fault can be assigned to the people and entities listed on the verdict form.  That list includes the Plaintiffs, the Defendants, and other people and entities that are not party to this lawsuit. The percentages of responsibility you assign to the people and entities listed on the verdict form should add up to 100%.  If you do not believe an entity or individual caused any portion of the Plaintiffs' harm, you should assign that entity 0%.

---

[77] *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 2572.

[78] *Pang v. Minch*, 559 N.E.2d 1313, 1323 (Ohio 1990).

Once you have decided issues concerning apportionment, you will render a verdict on Defendants' affirmative defenses.  Apportionment and the affirmative defenses are all separate issues that should be considered individually.

**Plaintiffs' Continuing Objections to Defendants' Proposed Instructions on Affirmative Defenses (From "Public Nuisance – Apportionment" to "Laches"):**

Plaintiffs make a continuing objection to Defendants' proposed instructions on apportionment and affirmative defenses, as there is no evidence to support these Defenses.  *See, e.g., State v. Schwendeman*, 2018-Ohio-240, ¶ 20, 104 N.E.3d 44, 50 (explaining that "the trial court, as a matter of law, could not have properly given a jury instruction on [an] affirmative defense" where there was "no credible evidence" to support it); *Tannenbaum v. Fed. Ins. Co.*, 608 Fed. Appx. 316, 319–20 (6th Cir. 2015) ("A trial judge has authority to refuse to give a proposed instruction if insufficient evidence supports it."); *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 33, 142 Ohio St. 3d 257, 266, 29 N.E.3d 921, 931 ("Abstract rules of law or general propositions . . .  ought not to be given unless specifically applicable to facts in issue.").

**Plaintiffs' Objections to Proposed "Public Nuisance – Apportionment" Instruction:**

Plaintiffs object to this proposed instruction in its entirety as legally incorrect and likely to confuse the jury.  "[U]nder Ohio common law, where a nuisance is caused by the conduct of multiple parties acting either independently or in concert, all are jointly and severally liable for abating the nuisance."  Opinion and Order [regarding the Plaintiffs' summary-judgment motion on their equitable public nuisance claims], *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4194272, at *4 (N.D. Ohio Sept. 4, 2019).  Abatement costs by their nature are aggregate and forward-looking costs.  Plaintiffs preserve their objection that nothing in the Restatement or Ohio law permits apportionment of abatement relief.  Further, the same decision Defendants reference states that "[i]t is undoubtedly true that the determination of whether the harm sustained by the

105

plaintiff is capable of apportionment constitutes a judicial function." *Pang v. Minch*, 53 Ohio St. 3d 186, 559 N.E.2d 1313, 1324 (1990).   Whether Defendants have carried their burden of proof of establishing that harm can be apportioned, therefore, is not an appropriate question for inclusion in a jury instruction.

Defendants also incorrectly propose to instruct that "[i]f you find that [defendants have caused a nuisance], you will be asked to decide what percentage of the overall harm is attributed to [Defendants and others]."  That is not correct, because, even if the Court concludes that abatement relief may be subject to apportionment, Defendants would first bear the burden of proving that "harm can be ascertained on a proportional basis," before the issue of percentages of fault would ever go to the jury.  Opinion and Order [regarding the Plaintiffs' summary-judgment motion on their equitable public nuisance claims], *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4194272, at *4 (N.D. Ohio Sept. 4, 2019).   They also bear the burden of proving that that any person other than themselves was a substantial factor in causing the public nuisance and the proportionate amount that they seek to apportion to others.

Further, Defendants also have not shown any evidence they would be entitled to an apportionment instruction. *Compare U.S. Bank Nat. Ass'n v. U.S. E.P.A.*, 563 F.3d 199, 210 (6th Cir. 2009) (affirming summary judgment because "U.S. Bank failed to introduce evidence sufficient to create a genuine issue of material fact as to whether the harm at the Olson Well is 'distinct' from that at the manufacturing facility or whether there is a 'reasonable basis' for apportioning liability between it and another party"); *United States v. Cantrell*, 92 F. Supp. 2d 704, 718 (S.D. Ohio 2000) (granting partial summary judgment "because [defendant] has not put forward  any  affirmative  evidence  that  the  harm  at  the  Site  was  divisible"  and  holding  that defendant was "jointly and severally liable for the response costs incurred by the United States at

the Site"); Restatement (Second) of Torts § 821B, comment i (1979) ("There are numerous differences between an action for tort damages and an action for an injunction or abatement, and precedents for the two are by no means interchangeable. . . . This Chapter is concerned primarily with rules governing actions for damages.") (emphasis added); Restatement (Third) of Torts: Apportionment Liab. § 26, comment g (2000) ("Unless sufficient evidence permits the factfinder to determine that damages are divisible, they are indivisible."). Defendants' acknowledge that they bear the burden of proving that "harm can be ascertained on a proportionate basis." Opinion and Order [regarding the Plaintiffs' summary-judgment motion on their equitable public nuisance claims], *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4194272, at \*4 (N.D. Ohio Sept. 4, 2019). Assuming *arguendo* an instruction on apportionment were appropriate, Defendants' proposed instruction is legally incorrect and needlessly confusing. Among other errors, it repeats the legal errors concerning the public nuisance claim set forth in the continuing objections set forth above in response to the "Public Nuisance – Introduction" proposed instruction, and also incorrectly asserts that the jury could apportion liability to vaguely-alluded-to groups, rather than specific persons. It is also overlong and fails to acknowledge that Defendants cannot be assigned 0% fault once Plaintiffs have established the elements of their claims. It also fails to set forth any standard for judging the conduct of other parties alleged to have been a substantial factor. Any instruction on apportionment would need to make clear that responsibility for abatement could not occur unless all of the same elements of a public nuisance claim found as to Defendants were also present as to the specific persons alleged to share responsibilities.

107

## Defendants' Proposed Instruction No. __
## Unclean Hands[79]

Defendants have raised as an affirmative defense the allegation that Plaintiffs have come into court with unclean hands. You should find in favor of Defendants on this defense if you believe that Defendants have proved, by the greater weight of the evidence, that a Plaintiff has acted reprehensibly, unconscionably, or in a grossly unfair manner in connection with the subject matter of its nuisance claim.

The only conduct on which you may make a finding of unclean hands is conduct directly related to the subject matter at issue in this litigation.

Unclean hands does not mean that someone is a bad person in general or in some other respect; you may find unclean hands only if you find a direct connection between any reprehensible, unconscionable, or grossly unfair conduct and the facts of this case.

**Plaintiffs' Objections to Proposed "Unclean Hands" Instruction:**

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning affirmative defenses, listed in Plaintiffs' objections to Defendants' proposed instruction on apportionment, in their entirety.

Plaintiffs further object to this proposed instruction in its entirety as legally incorrect and likely to confuse the jury.  This proposed instruction is Defendants' modification of other state's precedents and pattern instructions.  It purports to be broader than Ohio law.  To assert such a

---

[79] Because Ohio does not have a form jury instruction on this issue, the proposed instruction is a modified version of the California pattern instruction. *See* 2 Cal. Affirmative Def. § 45:18 (2d ed.); *see also Crick v. Starr*, 2009-Ohio-6754, ¶ 38 (Ohio Ct. App. 2009) (to support defense of unclean hands, the plaintiff's conduct must be "reprehensible, grossly inequitable, or unconscionable"); *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 2013-Ohio-3867 ¶ 16 (Ohio 2013) (unclean hands defense requires showing that plaintiff acted "reprehensibly" with respect to subject matter of litigation).

defense would require evidence Defendants were prejudiced by reprehensible conduct by Plaintiffs in connection with the litigation. *See, e.g., Downie-Gombach v. Laurie*, 2015-Ohio-3584, ¶¶ 45-47, 41 N.E.3d 858, 865 (an unclean hands defense "precludes one who has defrauded his adversary in the subject matter of the action from equitable relief" and "does not apply where there is no allegation that the plaintiffs defrauded the defendant"); *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 2013-Ohio-3867, ¶ 16, 136 Ohio St. 3d 371, 373, 995 N.E.2d 1194, 1197 (framing the defense in terms of "reprehensible conduct with respect to the subject matter of the action"). Further, the doctrine is an equitable one in the court's discretion and unavailable where legal remedies are present. *Graham v. Szuch*, 2014-Ohio-1727, ¶¶ 32-33.

**Defendants' Proposed Instruction No. __**
**Waiver by Estoppel**[80]

Defendants have raised as an affirmative defense the doctrine of waiver by estoppel. Waiver by estoppel applies if Defendants can show by the greater weight of the evidence that a Plaintiff's actions were inconsistent with an intent to claim a right, and have misled Defendants to their prejudice.

In order to establish waiver by estoppel, Defendants need not show the intent behind Plaintiffs' actions.  Waiver by estoppel focuses on Plaintiffs' actions, rather than Plaintiffs' state of mind.

**<u>Plaintiffs' Objections to Proposed "Waiver by Estoppel" Instruction:</u>**

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning affirmative defenses, listed in Plaintiffs' objections to Defendants' proposed instruction on apportionment, in their entirety.

Plaintiffs further object to this proposed instruction in its entirety as legally incorrect and likely to confuse the jury.  In addition, Defendants' proposed instruction takes language from contract cases out of context and fails to acknowledge that there must be a *known* right, as well as reliance by Defendants on conduct inconsistent with an intent to claim that right.  *See Bank v. Rini*, 2005-Ohio-4041, ¶ 24, 162 Ohio App. 3d 662, 668, 834 N.E.2d 836, 840 ("Generally, waiver is the voluntary relinquishment of a known right. . . . The waiver of a contract provision may be express or implied. . . . In particular, waiver by estoppel exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it.") (internal

---

[80] *See Natl. City Bank v. Rini*, 834 N.E.2d 836, 840 (Ohio Ct. App. 2005) (setting forth elements of the defense).

110

citations and alteration omitted); *Griffith v. Linton*, 130 Ohio App. 3d 746, 751, 721 N.E.2d 146, 149 (1998) ("A party asserting waiver has to prove two elements: that the party waiving the right knew of the existing right of arbitration, and that it acted inconsistently with that right.").

**Defendants' Proposed Instruction No. __**
**In Pari Delicto[81]**

Defendants have raised an affirmative defense of the doctrine of *in pari delicto*. The

doctrine of *in pari delicto* applies if the Defendants prove by the greater weight of the evidence

that a Plaintiff knew or should have known of the risk of harm for which it now seeks recovery,

had it within its power to protect the public by preventing the risk of harm, and failed to take

such preventative steps.

**<u>Plaintiffs' Objections to Proposed "In Pari Delicto" Instruction:</u>**

Plaintiffs herein repeat and incorporate by reference their continuing objections to

Defendants' proposed jury instructions concerning affirmative defenses, listed in Plaintiffs'

objections to Defendants' proposed instruction on apportionment, in their entirety.

Plaintiffs further object to this proposed instruction in its entirety as legally incorrect and

likely to confuse the jury.  As an initial matter, there is no evidence to support it.  *See, e.g., State*

*v. Schwendeman*, 2018-Ohio-240, ¶ 20, 104 N.E.3d 44, 50 (explaining that "the trial court, as a

matter of law, could not have properly given a jury instruction on [an] affirmative defense"

where there was "no credible evidence" to support it).  Further, this proposed instruction does

not state the elements of an affirmative defense.  It presents Defendants' characterization of an

inapposite case.  *See Lattea v. City of Akron*, 9 Ohio App. 3d 118, 126, 458 N.E.2d 868, 876

(1982) (addressing issues concerning activities "carried on by a state contractor, which the state,

under the contract, has a right to stop and prevent" and in the context of an agency liability

---

[81] *See Lattea v. City of Akron*, 458 N.E.2d 868, 876 (Ohio Ct. Ap. 1982) (doctrine of *in pari delicto* applied where government "knew or should have known . . . of the risk of the sidewalk collapsing . . . and it had it within its power to protect the public by stopping Ruhlin's work until adequate safety precautions were taken"); *Sharon Inv. Corp. v. the Spaghetti Place, Inc*, 1981 WL 3923, at *3 (Ohio Ct. App. Apr. 1, 1981) ("The common law defense of 'in pari delicto' is an affirmative defense.").

theory).  "The doctrine of in pari delicto "refers to the plaintiff's participation in the same wrongdoing as the defendant."  *Downie-Gombach v. Laurie*, 2015-Ohio-3584, ¶¶ 47-49, 41 N.E.3d 858, 865.  Additionally, the "doctrine is only applicable when the plaintiff bears equal fault to, or more fault than, the defendant for the alleged wrong."  *Id.* (internal quotations omitted).

**Defendants' Proposed Instruction No. __**
**Laches[82]**

Defendants have raised as an affirmative defense the doctrine of Laches. Laches applies if Defendants can show by the greater weight of the evidence that Plaintiffs failed to assert a right for an unreasonable and unexplained length of time despite actual or constructive knowledge of the wrongful conduct under circumstances that are prejudicial to Defendants.

**Plaintiffs' Objections to Proposed "Laches" Instruction:**

Plaintiffs herein repeat and incorporate by reference their continuing objections to Defendants' proposed jury instructions concerning affirmative defenses, listed in Plaintiffs' objections to Defendants' proposed instruction on apportionment, in their entirety. Plaintiffs further object to this proposed instruction in its entirety as legally incorrect and likely to confuse the jury.  As an initial matter, there is no evidence to support it.  *See, e.g., State v. Schwendeman*, 2018-Ohio-240, ¶ 20, 104 N.E.3d 44, 50 (explaining that "the trial court, as a matter of law, could not have properly given a jury instruction on [an] affirmative defense" where there was "no credible evidence" to support it).  Further, Defendants offer no authority to support application of a laches defenses in an action such as this by governmental plaintiffs to abate a public nuisance.  *See Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917) ("As a general rule, laches or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest.").  Finally, this proposed instruction fails to state that delay must be "without excuse" and is confusing in

---

[82] *See State ex rel. Beard v. Hardin*, 153 Ohio St.3d 571, 2018-Ohio-1286, 109 N.E.3d 1174 (2018); *KB Resources, LLC v. Patriot Energy Partners, LLC,* 7th Dist. No. 17 CO 0002, 2018-Ohio-2771, 116 N.E.3d 728, ¶ 102, *appeal not allowed sub nom. KB Resources, L.L.C. v. Patriot Energy Partners, L.L.C.*, 153 Ohio St.3d 1505, 2018-Ohio-4285, 109 N.E.3d 1260, ¶ 102 (2018).

vaguely alluding to "circumstances" that are prejudicial without instructing that prejudice cannot be inferred from mere lapse of time.  *See State ex rel. Beard v. Hardin*, 2018-Ohio-1286, 153 Ohio St. 3d 571, 575, 109 N.E.3d 1174, 1178, *reconsideration denied,* 2018-Ohio-1418, 152 Ohio St. 3d 1433, 95 N.E.3d 417 (setting forth elements); *State ex rel. Lapp Roofing & Sheet Metal Co., Inc. v. Indus. Comm.*, 2008-Ohio-850, ¶ 28, 117 Ohio St. 3d 179, 183, 882 N.E.2d 911, 915 ("material prejudice" required); *KB Res., LLC v. Patriot Energy Partners, LLC*, 2018-Ohio-2771, ¶ 92, 116 N.E.3d 728, 749, *appeal not allowed sub nom. KB Res., L.L.C. v. Patriot Energy Partners, L.L.C.*, 2018-Ohio-4285, ¶ 92, 153 Ohio St. 3d 1505, 109 N.E.3d 1260 ("Case law indicates prejudice "may not be inferred from a mere lapse of time." …"Instead, to establish material prejudice,' the party invoking the laches doctrine must show either: (1) the loss of evidence helpful to the case; or (2) a change in position that would not have occurred if the right been promptly asserted.").

*Summit County v. Purdue Pharma, L.P.* (18-op-5090)
*Cuyahoga County v. Purdue Pharma, L.P.* (17-op-45004)

# Defendants' Proposed Verdict Form

## PUBLIC NUISANCE

**A1a.**

**Has Summit County proven by the greater weight of the evidence that any of the following Defendants are unreasonably and significantly interfering today with a right to public health in Summit County through their distribution of prescription opioid medications?**

| | | |
|---|---|---|
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| Discount Drug Mart, Inc. | Yes _____ | No _____ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid of Maryland | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walmart Inc. | Yes _____ | No _____ |

*If you answered "yes," as to any Defendant for Question A1a, please move on to Question A1b. If you marked "no" for any Defendant on question A1a, please mark "no" for that Defendant in question A1b as well. If you marked "no" for all Defendants in Question A1a, please skip the following questions and proceed to Question A6a.*

**A1b.**

**Has Summit County proven by the greater weight of the evidence that any of the following Defendants are unreasonably and significantly interfering today with a right to public health in Summit County either (a) intentionally and unreasonably; or (b) unlawfully? If you marked "no" for any Defendant on Question A1a, you should mark "no" for that Defendant in this question as well.**

| | | |
|---|---|---|
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| Discount Drug Mart, Inc. | Yes _____ | No _____ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |

116

| | | | |
|---|---|---|---|
| Rite Aid of Maryland | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walmart Inc. | Yes _____ | No _____ |

*If you answered "yes," as to any Defendant for Question A1b, please move on to Question A2.  If you marked "no" for all Defendants in Questions A1b, please skip the next questions and proceed to Question A6.*

**A2.**

**If you answered question A1b "yes" as to a particular Defendant, has Summit County proven by the greater weight of the evidence that the Defendant's conduct in distributing prescription opioid medications is a but-for and proximate cause of the interference with the right to public health in Summit County? If you marked "no" for a Defendant in Question A1b, you should mark "no" for that Defendant in this question as well.**

| | | | |
|---|---|---|---|
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| Discount Drug Mart, Inc. | Yes _____ | No _____ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid of Maryland | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walmart Inc. | Yes _____ | No _____ |

*If you marked "no" for all Defendants in Question A2, please skip the following questions and proceed to question A6a. If you answered "yes" for any Defendant in Question A2, please continue to Question A3.*

**A3.**[83]

**If you answered Question A2 "yes" for a Defendant, has Summit County proven by the greater weight of the evidence that the Defendant's conduct is the but-for and proximate cause of an interference with the public health in Summit County based on the abuse of <u>diverted prescription opioids</u>?  If you marked "no" for a Defendant in Question A2, you should mark "no" for that Defendant in this question as well.**

| | | |
|---|---|---|
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| Discount Drug Mart, Inc. | Yes _____ | No _____ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid of Maryland | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walmart Inc. | Yes _____ | No _____ |

**If you answered Question A2 "yes" for a Defendant, has Summit County proven by the greater weight of the evidence that the Defendant's conduct is the but-for and proximate cause of an interference with the right to public health in Summit County based on the abuse of <u>illicit, non-prescription opioids</u> such as heroin or illicit fentanyl?  If you marked "no" for a Defendant in Question A2, you should mark "no" for that Defendant in this question as well.**

| | | |
|---|---|---|
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| Discount Drug Mart, Inc. | Yes _____ | No _____ |

---

[83] It is Defendants' position that neither harm caused by prescription opioids previously distributed by Defendants or illicit opioids are appropriate harm to consider when assessing Plaintiffs' forward-looking claim to abatement.  Because Defendants have ceased distributing opioid medications, this case proceeds only subject to Defendants' continuing objection, and the jury would be allowed to find causation based on prior distribution or illicit opioids only over Defendants' continuing objection.  However, Defendants interpret the Court's prior rulings to indicate that the Court plans to allow Plaintiff to present evidence of harms caused within their county by both opioids distributed in their counties by Defendants in the past, as well as harms relating to consumption of illicit opioids such as heroin and Chinese fentanyl.  *See, e.g.,* Dkt. 2561, 2578. Should such evidence be submitted over Defendants' objection, the jury should be questioned about what sort of harm it finds Defendants responsible to abate.

| | | |
|---|---|---|
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid of Maryland | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walmart Inc. | Yes _____ | No _____ |

*Please continue to Question A4.*

**A4.**

> **Did Defendants prove by the greater weight of the evidence that the injury to Summit County from the interference with the right to public health can be apportioned to the wrongful conduct of anyone other than Defendants, such as Summit County itself, opioid manufacturers, internet pharmacies, other non-party pharmacies, other pharmaceutical distributors, physicians, patients, or illegal opioid suppliers or users of illegal opioids?**
>
> Yes _____    No _____

*If you answered yes to Question A4, please proceed to Question A5.  If you answered no to Question A4, please skip Question A5 and proceed to Question A6.*

**A5.**

> **State the percentage of the interference with the right to public health in Summit County that you find is attributable to each of the following.  Your percentages must add up to 100%.  If you answered "no" for any Defendant in Question A2, you should assign that Defendant 0% in this question.**
>
> **Summit County** _____
>
> **Opioid**
> **Manufacturers** _____
>
> **Prescribing**
> **Practitioners** _____
>
> **Hospitals** _____
>
> **Patients** _____
>
> **Individuals who abuse opioids**
> **or use opioids illegally** _____
>
> **Non-party pharmacies**
> **(including**
> **internet pharmacies)** _____

119

**Criminal opioid suppliers** _____

**Federal, state, and local
government entities, such
as the DEA and
the State Pharmacy Board** _____

**Non-Party Opioid Distributors,
such as AmerisourceBergen Drug Corp.,
Cardinal Health, Inc.,
 and McKesson Corp.** _____

**CVS Indiana, LLC** _____

**CVS Rx Service, Inc.** _____

**Discount Drug Mart, Inc.** _____

**Giant Eagle/
HBC Service Co.** _____

**Rite Aid of Maryland** _____

**Walgreen Co.** _____

**Walmart Inc.** _____

**Other** _____

**TOTAL:**  ___**100%**___

*Please proceed to Question A6a.*

**A6a.**

**Has Cuyahoga County proven by the greater weight of the evidence that any of the
following Defendants are unreasonably and significantly interfering today with a right to
public health in Cuyahoga County through their distribution of prescription opioid
medications?**

CVS Indiana, L.L.C.                     Yes _____    No _____

CVS Rx Services, Inc.                   Yes _____    No _____

Discount Drug Mart, Inc.                Yes _____    No _____

Giant Eagle/HBC Service Co.             Yes _____    No _____

| | | |
|---|---|---|
| Rite Aid of Maryland | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walmart Inc. | Yes _____ | No _____ |

*If you answered "yes" as to any Defendant for Question A6a, please move on to Question A6b.  If you marked "no" for all Defendants in (1) both Question A6a **and** A1a or A1b, or (2) both Question A6a **and** Question A2, please sign and date the verdict form and return it to the bailiff.  If you marked "no" for all Defendants on Question A6a but "yes" for at least one Defendant on Question A2, please proceed to Section B.*

**A6b.**

**Has Cuyahoga County proven by the greater weight of the evidence that any of the following Defendants are unreasonably and significantly interfering today with a right to public health in Cuyahoga County either (a) intentionally and unreasonably; or (b) unlawfully? If you marked "no" for any Defendant on Question A6a, please mark "no" for that Defendant in this question as well.**

| | | |
|---|---|---|
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| Discount Drug Mart, Inc. | Yes _____ | No _____ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid of Maryland | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walmart Inc. | Yes _____ | No _____ |

*If you answered "yes" as to any Defendant for Question A6b, please answer Question A7.  If you marked "no" for all Defendants in (1) both Questions A1a or A1b **and** A6b, or (2) both Questions A2 **and** A6b, please sign and date this verdict form and return it to the bailiff. If you marked "no" for all Defendants in Question A6b, but "yes" for at least one defendant in Question A2, please proceed to Section B.*

**A7.**

**If you answered question A6b "yes," as to a particular Defendant, has Cuyahoga County proven by the greater weight of the evidence that the Defendant's conduct in distributing prescription opioid medications is a but-for and proximate cause of the interference with the right to public health in Cuyahoga County? If you marked "no" for any Defendant on Question A6b, please mark "no" for that Defendant in this question as well.**

| | | |
|---|---|---|
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| Discount Drug Mart, Inc. | Yes _____ | No _____ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid of Maryland | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walmart Inc. | Yes _____ | No _____ |

*If you marked "yes" for any Defendant in Question A7, please proceed to Question A8. If you marked "no" for all Defendants in (1) both Questions A1a or A1b **and** A7, or (2) both Questions A2 **and** A7, please sign and date this verdict form and return it to the bailiff.  If you marked "no" for all Defendants in Question A7, but "yes" for a Defendant in Question A2, please proceed to Section B.*

**A8.**[84]

**If you answered Question A7 "yes" for a Defendant, has Cuyahoga County proven by the greater weight of the evidence that the Defendant's conduct is the but-for and proximate cause of an interference with the public health in Cuyahoga County based on the abuse of <u>diverted prescription opioids</u>?  If you marked "no" for a Defendant in Question A7, you should mark "no" for that Defendant in this question as well.**

| | | |
|---|---|---|
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| Discount Drug Mart, Inc. | Yes _____ | No _____ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid of Maryland | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walmart Inc. | Yes _____ | No _____ |

**If you answered Question A7 "yes" for a Defendant, has Cuyahoga County proven by the greater weight of the evidence that the Defendant's conduct is the but-for and proximate cause of an interference with the right to public health in Cuyahoga**

---

[84] Defendants reiterate their continuing objection noted with respect to Question A3.

County based on the abuse of <u>illicit, non-prescription opioids</u> such as heroin or illicit fentanyl?  If you marked "no" for a Defendant in Question A7, you should mark "no" for that Defendant in this question as well.

| | | |
|---|---|---|
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| Discount Drug Mart, Inc. | Yes _____ | No _____ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid of Maryland | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walmart Inc. | Yes _____ | No _____ |

*Please continue to Question A9.*

**A9.**

**Did Defendants prove by the greater weight of the evidence that the injury to Cuyahoga County from the interference with the right to public health can be apportioned to the wrongful conduct of anyone other than Defendants, such as Cuyahoga County itself, opioid manufacturers, internet pharmacies, other non-party pharmacies, other pharmaceutical distributors, physicians, patients, or illegal opioid suppliers or users of illegal opioids?**

Yes _____     No _____

*If you answered yes to Question A9, please proceed to Question A10.  If you answered no to Question A9, please skip Question A10 and proceed to Section B.*

**A10.**

**State the percentage of the interference with the right to public health in Cuyahoga County that you find is attributable to each of the following.  Your percentages must add up to 100%.  If you answered "no" for any Defendant in Question A7, you should assign that Defendant 0% in this question.**

**Cuyahoga County** _____

**Opioid Manufacturers** _____

**Prescribing Practitioners** _____

123

**Hospitals** _____

**Patients** _____

**Individuals who abuse opioids
 or use opioids illegally** _____

**Non-party pharmacies
(including
internet pharmacies)** _____

**Criminal opioid suppliers** _____

**Federal, state, and local
government entities, such
as the DEA and
the State Pharmacy Board** _____

**Non-Party Opioid Distributors,
such as AmerisourceBergen Drug Corp.,
Cardinal Health, Inc.,
 and McKesson Corp.** _____

**CVS Indiana, LLC** _____

**CVS Rx Service, Inc.** _____

**Discount Drug Mart, Inc.** _____

**Giant Eagle/
HBC Service Co.** _____

**Rite Aid of Maryland** _____

**Walgreen Co.** _____

**Walmart Inc.** _____

**Other** _____

**TOTAL:** _____**100%**_____

_Please proceed to Section B._

124

## B. **AFFIRMATIVE DEFENSES**

### B1. **Unclean Hands**

Have Defendants established by the greater weight of the evidence that Summit County has acted reprehensibly, unconscionably, or in a grossly unfair manner in connection with the subject matter of its nuisance claim?

Yes _____      No _____

Have Defendants established by the greater weight of the evidence that Cuyahoga County has acted reprehensibly, unconscionably, or in a grossly unfair manner in connection with the subject matter in connection with its nuisance claim?

Yes _____      No _____

*Please proceed to Question B2.*

### B2. **Waiver by Estoppel**

Have Defendants established by the greater weight of the evidence that Summit County's actions were inconsistent with an intent to claim a right, and that it misled Defendants to their prejudice?

Yes _____      No _____

Have Defendants established by the greater weight of the evidence that Cuyahoga County's actions were inconsistent with an intent to claim a right, and that it misled Defendants to their prejudice?

Yes _____      No _____

*Please proceed to Question B3.*

### B3. **In Pari Delicto**

Have Defendants established by the greater weight of the evidence that Summit County knew or should have known of the risk of harm for which it now seeks recovery, had it within its power to protect the public by preventing the risk of harm, and failed to take such preventative steps?

Yes _____      No _____

Have Defendants established by the greater weight of the evidence that Cuyahoga County knew or should have known of the risk of harm for which it now seeks recovery, had it within its power to protect the public by preventing the risk of harm, and failed to take such preventative steps?

Yes _____      No _____

125

**B4.  Laches**

Have Defendants established by the greater weight of the evidence that Summit County failed to assert a right for an unreasonable and unexplained length of time despite actual or constructive knowledge of the wrongful conduct under circumstances that are prejudicial to Defendants?

Yes _____     No _____

Have Defendants established by the greater weight of the evidence that Cuyahoga County failed to assert a right for an unreasonable and unexplained length of time despite actual or constructive knowledge of the wrongful conduct under circumstances that are prejudicial to Defendants?

Yes _____     No _____

*Once you have completed the verdict form, please sign and date it, and return it to the bailiff.*

SO SAY WE ALL, this _____ of _____, 2020,

_____
Foreperson

## Plaintiffs' Objections to Defendants' Proposed Verdict Form:

Plaintiffs object to Defendants' proposed verdict form in its entirety.  Defendants' proposed verdict form repeats the legal errors discussed in Plaintiffs' objections to Defendants' proposed jury instructions.  It is also needlessly long and likely to be confusing to the jury, as discussed therein.  Plaintiffs' proposed verdict form addresses each of the essential elements the jury needs to find to impose liability—the existence of a nuisance, causation, and intentional or unlawful conduct—and does so in two pages and three questions. There is simply no need for a properly-instructed jury to be asked to wade through each of the issues Defendants request in a ten-page verdict form.  *See Alford v. Nelson*, 93CA720, 1994 WL 568490, at *17 (Ohio Ct. App. Oct. 12, 1994) (proposed interrogatories appropriately rejected where they "were as redundant and

confusing as their proposed jury instructions which they parallel"); *compare Sanders v. Fridd*, 2013-Ohio-4338, ¶¶ 53-54, 998 N.E.2d 526, 541 (explaining that in Ohio the "trial court . . . retains the discretion to reject submitted interrogatories where the proposed interrogatories are ambiguous, confusing, redundant, or otherwise legally objectionable" and "[p]roper jury interrogatories must address determinative issues and must be based upon the evidence presented") (internal quotation marks omitted).

Finally, even if the framing of the questions regarding the public nuisance claim were proper—which they are not, it would be highly inappropriate to present the jury with special interrogatories to answer regarding affirmative defenses, unless and until the defendants establish a factual predicate for asserting those defenses.

Dated:  September 2, 2020                    Respectfully submitted,

                                            /s/ Kaspar J. Stoffelmayr
                                            Kaspar J. Stoffelmayr
                                            Brian C. Swanson
                                            Katherine M. Swift
                                            Sharon Desh
                                            Sten A. Jernudd
                                            BARTLIT BECK LLP
                                            54 West Hubbard Street
                                            Chicago, IL 60654
                                            Phone: (312) 494-4400
                                            Fax: (312) 494-4440
                                            Email: kaspar.stoffelmayr@bartlitbeck.com
                                            Email: brian.swanson@bartlitbeck.com
                                            Email: kate.swift@bartlitbeck.com
                                            Email: sharon.desh@bartlitbeck.com
                                            Email: sten.jernudd@bartlitbeck.com

                                            Alex J. Harris
                                            BARTLIT BECK LLP
                                            1801 Wewatta Street, 12th Floor
                                            Denver, CO 80202
                                            Phone: (303) 592-3100
                                            Fax: (303) 592-3140
                                            Email: alex.harris@bartlitbeck.com

                                            *Attorneys for Defendant Walgreen Co.*

                                            /s/ Eric R. Delinsky (consent)
                                            Eric R. Delinsky
                                            Alexandra W. Miller
                                            ZUCKERMAN SPAEDER LLP
                                            1800 M Street, N.W., Suite 1000
                                            Washington, D.C. 20036
                                            Tel:  (202) 778-1800
                                            Fax:  (202) 822-4106
                                            edelinsky@zuckerman.com
                                            smiller@zuckerman.com

                                            *Attorneys for CVS Indiana, L.L.C. and CVS Rx
                                            Services, Inc.*

*/s/ Timothy D. Johnson* (consent)_____
Timothy D. Johnson (0006686)
CAVITCH FAMILO & DURKIN, CO. LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, Ohio  44114
(216)621-7860
(216)621-3415 Fax
tjohnson@cavitch.com

*Attorney for Defendant Discount Drug Mart, Inc.*

*/s/ Robert M. Barnes* (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc., and HBC Service
Company*

*/s/ Kelly A. Moore* (consent)
Kelly A. Moore, Esq.
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001

John P. Lavelle, Jr., Esq.
John.lavelle@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
T: 215-963-5917
F: 215-963-5001

129

*Attorneys for Rite Aid of Maryland*

*/s/ John M. Majoras* (consent)
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

*s/Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com
*Plaintiffs' Co-Lead Counsel*

*s/ Joseph F. Rice*
Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com
*Plaintiffs' Co-Lead Counsel*

130

*s/ Paul T. Farrell, Jr.*
Paul T. Farrell, Jr.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com
*Plaintiffs' Co-Lead Counsel*

*s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com
*Plaintiffs' Liaison Counsel*

*s/ W. Mark Lanier*
W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX 77069-3804
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com
*Lead Trial Counsel*

*s/ Hunter J. Shkolnik*
Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com
*Counsel for Plaintiff Cuyahoga County, Ohio*

*s/ Linda Singer*
Linda Singer
Louis Bograd
MOTLEY RICE LLC
401 9th St. NW, Suite 1001

131

Washington, DC 20004
(202) 386-9626 x5626
(202) 386-9622 (Fax)
lsinger@motleyrice.com
lbograd@motleyrice.com
*Counsel for Plaintiff Summit County, Ohio*

*s/Donald A. Migliori*
Donald A. Migliori
Lisa Saltzburg
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843-216-9241
843-416-5481 (Fax)
dmigliori@motleyrice.com
lsaltzburg@motleyrice.com
*Counsel for Plaintiff Summit County, Ohio*

132