1

1    IN THE DISTRICT COURT OF THE UNITED STATES
     FOR THE NORTHERN DISTRICT OF OHIO
2    EASTERN DIVISION

3
     IN RE:                          Case No. 1:17MD2804
4    NATIONAL PRESCRIPTION           Cleveland, Ohio
     OPIATE LITIGATION
5                                    September 3, 2020
                                     1:01 p.m.
6

7

8                    - - - - -

9

10      TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

11        BEFORE THE HONORABLE DAN A. POLSTER,

12         UNITED STATES DISTRICT JUDGE, AND

13    DAVID A. RUIZ, UNITED STATES MAGISTRATE JUDGE.

14

15                    - - - - -

16

17

18

19

20   Official Court Reporter: Susan Trischan,RMR,CRR,FCRR,CRC
                              7-189 U.S. Court House
21                            801 West Superior Avenue
                              Cleveland, Ohio  44113
22                            216-357-7087
                              Susan_Trischan@ohnd.uscourts.gov
23

24

25

```
 1    APPEARANCES:

 2
      For the Plaintiffs:        Peter H. Weinberger, Esq.
 3                               Hunter J. Shkolnik, Esq.
                                 Salvatore C. Badala, Esq.
 4                               Frank L. Gallucci, III, Esq.
                                 Donald A. Migliori, Esq.
 5                               W. Mark Lanier, Esq.
                                 Jayne Conroy, Esq.
 6                               Steven J. Skikos, Esq.
                                 Troy Rafferty, Esq.
 7                               Paul Farrell, Esq.
                                 Joseph F. Rice, Esq.
 8

 9

10    For Walgreen Defendants:   Kaspar J. Stoffelmayr, Esq.
                                 Kate Swift, Esq.
11

12    For CVS Defendants:        Sasha Miller, Esq.
                                 Graeme Bush, Esq.
13
      For HBC/Giant Eagle
14    Defendants:               Robert M. Barnes, Esq.
                                 Josh Kobrin, Esq.
15                               Scott D. Livingston, Esq.

16    For Defendant Discount
      Drug Mart:                Timothy D. Johnson, Esq.
17

18    For Rite Aid Defendants:   Kelly A. Moore, Esq.
                                 John Lavelle, Esq.
19                               Greg Fouts, Esq.

20
      For Walmart Defendants:    Tina M. Tabacchi, Esq.
21                               Tara Fumerton, Esq.
                                 John Majoras, Esq.
22
      ALSO PRESENT:              Special Master David Cohen
23

24    Proceedings recorded by mechanical stenography;
      transcript produced by computer-aided transcription.
25
```

1          THURSDAY, SEPTEMBER 3, 2020, 1:01 P.M.

2               THE COURT:  We need to know who's on for

3     the court reporter's record, but I don't need to go

4     through one by one.

13:01:50 5               THE CLERK:  Okay.  I'll just read it out

6     then who I've heard from.  And you can tell me who else

7     you want.

8               Before I -- before I get much further, I

9     would ask do I have Salvatore Badala for plaintiffs?

13:02:08 10              MR. BADALA:  Good afternoon.  I'm on the

11     line.

12               THE CLERK:  How about Frank Gallucci?

13               MR. GALLUCCI:  Yes, I am on the line.

14               THE CLERK:  And Linda Singer?  Not heard

13:02:18 15     from Linda.

16               How about Paul Hanly?

17               MS. CONROY:  It's Jayne Conroy.

18               Paul Hanly will not be on the call today,

19     but I'm here from his office.

13:02:32 20              THE CLERK:  Perfect.

21               So now I'm going to go ahead and read off

22     this list.

23               I'll be right with you.  More people are

24     joining all the time.

13:02:38 25              So, Judge, for Cuyahoga County, Lake

         1   County, Trumbull County, I have Hunter Shkolnik,

         2   Salvatore Badala, Frank Gallucci.

         3                THE COURT:  We don't -- everyone has to get

         4   to Helen.

13:02:58 5                Everyone, make sure Helen knows that you're

         6   on so we can make the record.

         7                We don't need to go through 70, 75 names.

         8                THE CLERK:  Okay.  How about everybody send

         9   a list to David Cohen?  David Cohen will get it to me.

13:03:14 10                I know everyone has David's e-mail address,

        11   and then I will forward it to the court reporter.

        12                Sue, I will scan the participant list and

        13   send it to you now.  These are the people I am well aware

        14   of.

13:03:26 15                Judge, you can go ahead when ready.

        16                THE COURT:  All right.  This is our what's

        17   been a monthly phone conference in the Opioid MDL,

        18   particularly the Track One B and Track Three cases with

        19   the pharmacies and two counties in each of the two cases.

13:03:49 20                I received and appreciate the status

        21   report.

        22                I've got a number of things I want to

        23   cover.

        24                The first one is most important, the

13:04:03 25   November trial.

1          I received the defendants' motion or notice

2     of nonconsent.

3          Respectfully, I don't need any lawyer or

4     any party to tell me what our general order says, what it

13:04:28 5     means, how to construe it.

6          I know that.  I'm part of the Court.  I'm

7     at the regular Judges' meetings, all right, so it's

8     not -- it's not a good use of anyone's resources to file

9     things telling me what orders, general orders mean or

13:04:45 10     what to do.

11          The fact is our Court has not had jury

12     trials since the middle of March.

13          We voted a couple of weeks ago, last week,

14     to attempt to begin short jury trials starting September

13:05:07 15     21st with limitations.

16          We're doing one -- well, first of all,

17     we're only doing trials that can be concluded within a

18     week.  We're only doing one trial per courthouse, and

19     these limitations are for September and October, starting

13:05:25 20     September 21st.

21          Then three, if the participants, the

22     parties or counsel are reluctant because of COVID

23     concerns to go to trial in September or October, we're

24     postponing it.  We're not making anyone do it.

13:05:44 25          But this only applies to September and

1    October.  We've made no decision as to what to do in

2    November.

3                    Any trials scheduled for November are on as

4    scheduled, subject to whatever we decide at our

13:05:59  5    October 5th meeting.  And we obviously have made no

6    decision.  It's September the 3rd.

7                    On October 5th, in the morning, we will

8    decide what we'll do about trials in November and going

9    forward, and we'll base that decision on the Court

13:06:19 10    experience with the September and early October trials

11    and on the COVID numbers for this area of the country.

12                    And that's what we'll do.  But this trial

13    is on until the Court decides it's not.  And we'll make a

14    collective decision.

13:06:38 15                    All my colleagues were made aware at the

16    last Judges meeting and when this general order was

17    issued that I have a trial scheduled for November 11th.

18    They all are aware of it.

19                    They all are aware that our Clerk's Office

13:06:52 20    sent out, I believe last week, inquiries to roughly 1,000

21    people inquiring of their availability and willingness to

22    serve as jurors for approximately a month beginning in

23    November.  And we're getting those responses in.

24                    So and everyone knows that there are two

13:07:18 25    opioid trials, long opioid trials that Judges in this

part of the country are planning to conduct in October.
It wasn't on the status report, but there's an Ohio State
opioid trial that visiting Judge McMonagle is
conducting -- that's a jury trial -- sometime in October.
I think it's Madison County.  It's one of the two cases
that AG Yost filed.

                And then, of course, there's the MDL trial
that is on the status report that Judge Faber is
conducting.  I think he's locked in two months in West
Virginia starting sometime in October.  That's a bench
trial.

                So other Judges are conducting live trials,
complex opioid trials in October.

                So now since I've raised that, the trial
that Judge Faber is conducting in October was originally
slated to be a jury trial.  I think both sides had
demanded a jury, and then recently both sides waived jury
and so he's doing the bench trial.

                This trial, both sides requested a jury,
all parties requested a jury.  That's fine.  But I don't
know if anyone -- the parties have discussed jury waiver,
but it should at least be discussed.

                I mean, I prefer having a jury decide these
complex cases, but clearly picking a jury, seating a
jury, having a jury adds, during COVID, a whole layer of

1    difficulties and dangers that would not be there with a

2    bench trial.

3              I mean, in theory with the parties'

4    consent, a bench trial could be conducted remotely in

13:09:21  5    whole or in part, if the parties consent.  The jury trial

6    needs to be in person.

7              We've taken a lot of steps in our court to

8    provide for juries.  I've already laid out my courtroom

9    with a lot of tables.

13:09:34  10              My plan is not to use the jury box, but to

11   use the gallery for jurors so they can be spread out.

12   And there won't be any spectators.  The members of the

13   public, the media, will watch the trial in one of two

14   overflow courtrooms.

13:09:52  15              And we're doing the jury -- the voir dire

16   will be done downstairs in our large naturalization room

17   where people can be spread out.

18              So we have -- we have steps to accommodate

19   a jury, but clearly that adds a whole range of issues.

13:10:08  20              So I suggest the parties at least discuss

21   this.

22              I don't know, have you -- if you've already

23   discussed it, and there's not agreement, that's fine.

24   But I'd like to know if you have discussed this.  But if

13:10:22  25   not --

1          MR. WEINBERGER:  Your Honor.

2          THE COURT:  -- you should do so.

3          MR. WEINBERGER:  Your Honor, this is Pete

4    Weinberger for the plaintiffs.

13:10:27  5          THE COURT:  Yes.

6          MR. WEINBERGER:  We have not discussed the

7    issue of jury waiver with the other side.

8          THE COURT:  Okay.  All right.  Well, that's

9    fine.

13:10:38 10          I suggest that all parties discuss this.

11    And again, you know, it's now set for jury trial and we

12    can handle it and we will handle it, but since the

13    parties in West Virginia agreed to convert from a jury

14    trial to bench trial, you ought to consider it.

13:10:58 15          And again, if you opt for a bench trial,

16    and the parties consent, I -- I don't see any reason why

17    the entire trial could not be done remotely, if the

18    parties agree.

19          We have the technology.  We've all been

13:11:19 20    doing virtually everything remotely for six months.

21    We're pretty good at it.

22          So that's something the parties can

23    consider.

24          The next thing is in the event that the

13:11:46 25    plaintiffs prevail against at least one defendant, there

1    needs to be a second phase of this trial, a bench

2    proceeding on remedy.  And, you know, everyone's busy and

3    scheduling things in advance, and I need to find out a

4    little more about it.

13:12:02  5              I guess my first question is will the

6    parties need different discovery on -- for the remedy

7    phase?

8              MR. WEINBERGER:  Your Honor, this is Pete

9    Weinberger again.

13:12:22  10              The damage or the remedy phase or the

11    abatement phase has been fully worked up, and expert

12    depositions, expert reports and depositions have been

13    done of those experts on both sides.

14              And my only hesitation is to the extent

13:12:51  15    that there's been significant time that has taken place

16    between the reports, the depositions, and ultimately the

17    second phase of trial, there -- there might be some

18    desire to supplement reports and perhaps take some short

19    depositions related to any supplementation that changes

13:13:18  20    opinions or modifies opinions.

21              But other than that, I think we're -- we

22    would be ready to go into the second phase.

23              I don't know whose phone that is that's

24    going on.

13:13:35  25              THE COURT:  That was mine.

1          MR. WEINBERGER:  Oh, okay.

2          THE COURT:  That's my house phone.

3          MR. WEINBERGER:  Oh, okay.

4          THE COURT:  Sorry.

13:13:41  5          All right.  That's from the plaintiffs'

6     side.

7          Anyone from the defendants?

8          MR. STOFFELMAYR:  Yeah, Judge, hi.  Kaspar

9     Stoffelmayr for the defendants.

13:13:52 10          I would certainly agree that when we were

11     ready to try the case last year, you know, damages issues

12     were fully prepared, but those aren't -- that was going

13     to be part of the trial, but those aren't part of the

14     case any longer.

13:14:07 15          As to other abatement issues, I would

16     appreciate if we could come back to the Court on that.

17     It's not something, honestly, that we focused on for some

18     time, and I don't want to speak for everybody else

19     without, you know, having a chance to make sure

13:14:27 20     everyone's on the same page.

21          The other thing I don't know is when other

22     parties were severed out relevant -- relative to that

23     discovery.

24          So if they may feel that -- you know, I

13:14:38 25     can't speak for them, but they may feel or may not; I

1     just don't want to get ahead of ourselves, but we can

2     certainly submit a report to the Court within --

3                    THE COURT:  All right.  That's fine,

4     Mr. Stoffelmayr.

13:14:49  5                    I'd like the parties to discuss this and,

6     hopefully, you can come to some agreement.

7                    I mean, if you need -- if you need

8     discovery, what it is and roughly how -- how long it will

9     take.

13:15:01  10                    So I guess my second question is does

11    anyone have a sense of how long this proceeding will be,

12    how many witnesses?

13                    I gather it's primarily experts.  How long

14    do you think it will take?

13:15:24  15                    MR. WEINBERGER:  Your Honor, this again is

16    Pete Weinberger for the plaintiffs.

17                    It is primarily experts, but there will be

18    testimony from some of the local witnesses for Summit and

19    Cuyahoga who will provide testimony about specific needs

13:15:50  20    for abatement and input they may have given to experts

21    who then did abatement calculations.

22                    This is a pure guess on my part, but I

23    would assume that the second phase probably could be

24    done, both -- with both sides' presentations in about, in

13:16:19  25    about two weeks.

1          MR. STOFFELMAYR:  Judge, Kaspar

2    Stoffelmayr.

3               As a -- you know, in the realm of guesses,

4    that doesn't sound like a crazy guess to me, but we

13:16:31  5    obviously would need to discuss it and understand better,

6    you know, who the witnesses would be and how many.

7               THE COURT:  All right.  Well, why don't, as

8    part of your discussions on discovery, whether you need

9    discovery, how much, how long it would take, why don't

13:16:47 10    you also just to me -- I mean, ultimately it's my

11    decision on limitations, but I've never conducted

12    a -- I've never conducted a public nuisance trial, I've

13    never conducted a public nuisance abatement -- post-trial

14    abatement remedy proceeding, so I've got no historical

13:17:10 15    knowledge.

16               So if you both believe that two weeks is

17    adequate, then you should tell me, tell me that.

18               And it seems to me that since that's

19    a -- strictly to the Court, if the parties agree, that

13:17:34 20    that can be done by Zoom remotely.  But again I guess the

21    parties have to agree.

22               If someone insists on live, then obviously

23    we'll have it live in the court, but you should discuss

24    that, too.

13:17:50 25               And I think when -- I'm going to be

1    scheduling the next -- you should include that in the

2    next status report, the result of your discussions on

3    this.

4                     So it would be in the next status report,

13:18:16    5    include your -- whatever you decide on jury waiver for

6    the trial, the November trial, and then your collective

7    thoughts on what this remedy proceeding would look like,

8    again only if the plaintiffs win, but again it's -- it's

9    complex enough that I think we need to sort of plan it

13:18:39    10   out.

11                    And I, at least tentatively, will block out

12   some time, given that there are a lot of busy people

13   involved, so I didn't want to wait too long.

14                    All right.  I just saw -- well, I got this

13:19:10    15   week witness -- like, witness designations, and there

16   seems to be vastly more witnesses that have been

17   designated by each side than could conceivably testify at

18   this trial.

19                    Now, I understand you need some

13:19:34    20   flexibility, but the witness lists are so long as to be

21   meaningless.

22                    Remember, each side has only 70 hours for

23   direct and cross-examination, all right.  I mean, if you

24   split it in half, 35/35, and your witness -- your direct

13:19:55    25   testimony of a witness averages an hour, that's 35

1    witnesses.  All right?  Some may be less than an hour.

2    Some will be longer.  But if an hour is average, you've

3    got 35 witnesses.

4                I didn't count up how many, but, like, it

5    was multiples of 35 on each side, so I -- they're

6    meaningless to me and, candidly, they're meaningless to

7    each side.

8                So I suggest both sides get real.  I mean,

9    that's -- and the same thing with deposition

10   designations.  I just saw this, Special Master Cohen

11   forwarded this to me.  "Plaintiffs agree to reducing our

12   affirmative designations to 75 hours and will do so by

13   Wednesday."

14               All right.  You're only allowed 70 hours

15   for direct and cross, all right.  Having 75 hours of

16   affirmative depositions, again, that's way more than you

17   can conceivably ever use.

18               So that's meaningless to the Court, it's

19   meaningless to defendants.  I don't even know what the

20   defendants have designated.

21               But I can tell you this:  The Court and

22   Special Master have limited time, and we're not going to

23   be wading through hundreds and hundreds of objections to

24   deposition transcripts.

25               And so what's going to happen is if, when

1     we get these, I just think there are way too many, I'll

2     just say, "The heck with it, we're not going to have any

3     testimony by depositions; call everyone live."

4                     Again I've said any witness who wants to,

13:21:47  5     can testify by video.

6                     So if there are objections to questions,

7     I'll rule on them, I'll rule on them live.  But the Court

8     doesn't have the time or the interest or inclination to

9     be wading through hundreds and thousands of

13:22:03 10     deposition -- objections to deposition

11     experts -- deposition excerpts, particularly since the

12     parties have grossly overdesignated.

13                     So you've heard me.  You figure out what

14     you want to do.  But if, again, if you can't agree on

13:22:22 15     some meaningful limitation on this, forget about the

16     depositions altogether and call your witnesses live.

17                     Again, I've said, any witness who wants to

18     testify by video, wherever they are in the country, then

19     put them on by video.  I'll tell the jury that we're

13:22:40 20     doing a lot of things differently because of the

21     pandemic.  Everyone knows it.  And one of the things

22     we're doing differently is we'll have a lot of witnesses

23     by video, and they're to give the witness exactly the

24     same attention as if he or she was sitting right in front

13:22:54 25     of them in the courtroom.

1          All right.  The last thing I wanted to

2     cover was to find out -- I mean, we're now two months

3     from trial, and I know you've advised me you've been

4     having settlement discussions, meeting with the mediator

13:23:25  5     Judge Gandhi, and I want to know are you meeting

6     regularly with him and, you know, are you getting

7     anywhere?

8          Because if you're not,

9     something -- something isn't right and we need to change

13:23:40 10     the paradigm if you're not engaged in serious discussion

11     now two months before the trial.

12          MR. WEINBERGER:  Your Honor, this is Pete

13     Weinberger, and I'll address your comments on the issue

14     of mediation.

13:23:54 15          But before I do, I believe that the

16     supplemental -- I'd call it supplemental Cohen order with

17     respect to CT One B actually helps us address some of

18     your concerns about the significant numbers of witnesses

19     on the witness list.

13:24:18 20          Your order, which required us to exchange

21     on September 2nd, is in anticipation of both sides being

22     able to look at those lists and cull them down

23     substantially, and also to address whether or not there's

24     anyone on those lists that has not previously been

13:24:37 25     disclosed or for which we may need a discovery

1    deposition.

2                      So I can -- I can speak for the plaintiffs

3    that both with respect to the deposition designations and

4    the exhibit lists, we will be culling them down

13:24:54  5    significantly.

6                      As to the depo designations, in part that

7    will be dependent on and -- on our designation of the one

8    live witness per defendant who we are entitled to call

9    without regard to issues of subpoena power, as we did

13:25:15 10    with respect to CT One A.

11                      So we are mindful -- the plaintiffs are

12    mindful of your concerns, and I can assure you we will

13    address them and have already anticipated addressing

14    them.

13:25:30 15                      With respect to the issue of mediation --

16    and Joe Rice is on the phone -- he and I and two other of

17    our colleagues, including Hunter, have been involved

18    with -- in discussions with Judge Gandhi.

19                      The last discussion that we had with Judge

13:25:53 20    Gandhi was about two weeks ago, and we haven't exchanged

21    information with him since.

22                      I hesitate to describe anything about

23    the --

24                      THE COURT:  All right.  I don't want -- I

13:26:21 25    don't want to get -- you know, defendants don't want me

          1    involved in mediation at all, but it's appropriate for me

          2    to inquire is anything happening, so it sounds like --

          3                    MR. RICE:  Judge.

          4                    THE COURT:  -- maybe it's not at the moment

13:26:35  5    so.

          6                    MR. RICE:  Judge, this is Joe.

          7                    I think to sum it up from the plaintiffs'

          8    side, we do not think that we've made much progress in

          9    the mediation, and we have made it known to the mediator

13:26:50 10    that if we're not going to get more progress made, that

         11    we would like to terminate the mediation.

         12                    And that was the last call we had, and he

         13    was going to get back with us.

         14                    MS. TABACCHI:  Judge, this is Tina Tabacchi

13:27:11 15    from Jones Day.

         16                    I can just report that the pharmacies have

         17    been engaged on a regular basis with the mediator and met

         18    with him by video earlier this week.

         19                    MR. RICE:  We will reach out and try to get

13:27:30 20    a report, Judge.

         21                    THE COURT:  All right.  I heard from the

         22    plaintiffs that they don't think they've made much

         23    progress, and if there isn't much more progress they want

         24    to terminate, which they have the right to do.

13:27:45 25                    But I'm dismayed by this, that -- but it's

1   not -- the parties should be able to make progress, okay.

2   That doesn't mean you're going to be able to settle it,

3   but you ought to be able to make progress if both sides

4   are sincere.

5           If you're not, obviously we shouldn't have

6   bothered from the start, but I want to -- I want to have

7   something a lot more definite by our next phone call.

8           I expect, I mean, either that you're really

9   making progress or it's been terminated, and if it's

10  terminated, then I'm going to press the defendants to let

11  the Court get involved because you've had a good

12  mediator, all right.

13          And, I mean, or, or if the answer is, "We

14  don't want to settle, we don't want to mediate it," well,

15  then you should say so.  Okay?

16          I mean, no one has to settle this case or

17  any other.  You can try one case, you can try a hundred,

18  you can try 3,000 throughout the country, but no one

19  wants to waste any time.

20          So I want to have -- either hear by our

21  next call that you're making real progress, or if you've

22  terminated it and if the, you know, response is that the

23  parties don't want to try and settle, they want to keep

24  trying this one, see how it happens, maybe try others,

25  that's okay.

```
 1              All right.  This is my thought for future

 2      upcoming conferences.  We've been meeting roughly

 3      monthly.  This is my suggestion, that we have another

 4      call three weeks from today which would be September

 5      24th, and then we have another call on the afternoon of

 6      Monday, October 5th because I will know at that point

 7      whether this trial is going to go forward or not based on

 8      our -- based on our Judges' meeting.

 9              And I'll let everyone know, and I figure

10      everyone should know as soon as possible, and the soonest

11      we'll know is that afternoon.

12              Does anyone have a problem with that?  I'm

13      proposing 3:00 o'clock three weeks from today which would

14      be September 24th, and then 1:00 o'clock, Eastern Time

15      obviously, on Monday, October 5th.

16              MR. STOFFELMAYR:  Good here, Your Honor.

17      Thank you.

18              Kaspar speaking.  Sorry, Kaspar Stoffelmayr

19      speaking.

20              THE COURT:  Does anyone have a real problem

21      with those?

22              I'd rather not wait five weeks until, you

23      know, we can meet again, and I think it makes sense to

24      have the next one right after the Judges' meeting so

25      everyone will know whether we're going forward.
```

1          And obviously, I believe we've already

2    heard from the defendants that if, if the Court decides

3    we're not going to have any, any trials without the

4    consent of the parties on COVID-related concerns, then

13:31:23  5    the defendants have already made their position clear.

6          But again, no one can predict whether, you

7    know, what we're going to decide.  I mean, there are

8    about at least three or four possibilities.

9          We could decide, based on our limited

13:31:40 10    experience and the numbers, that we don't want to have

11    any trials in November or December.

12          We could decide we're going to have trials

13    with conditions, the same conditions we've had, or new

14    conditions; or we can decide we'll have trials without

13:31:54 15    any conditions and just go forward.

16          So -- or something else.

17          But we'll decide that on the 5th.

18          All right.  I think that that

19    covered -- I've covered everything that I had on my list.

13:32:17 20          MR. WEINBERGER:  When do you want status

21    reports, Your Honor -- this is Pete again -- for the

22    September 24th?

23          THE COURT:  That's a good idea, Peter.

24          Yes, why don't we keep the same, the same

13:32:30 25    schedule?

1          This one was submitted at noon --

2          MR. WEINBERGER:  On Monday.

3          THE COURT:  -- on Monday before.

4          MR. WEINBERGER:  Right.

5          THE COURT:  So why don't we have one at

6     noon on Monday, September the 21st?

7          And I want it to include the things we

8     talked about, and I think -- I think that the trial that

9     Judge McMonagle is conducting should be somewhere on the

10    report.  It's --

11          MR. WEINBERGER:  We'll see -- we'll see to

12    it that it's included.

13          THE COURT:  Yes, I think it's

14    within -- it's not -- it doesn't involve these, the

15    participants in this trial, so it would be in the section

16    state cases for other defendants.  It's the distributors.

17    I believe it's the distributors only.

18          But --

19          MR. WEINBERGER:  Yes.

20          THE COURT:  -- that's a jury trial and, to

21    my knowledge, it's going forward.

22          Okay.

23          MR. WEINBERGER:  That's what we -- that's

24    what we understand, also.

25          THE COURT:  Yeah.

```
          1                    Is there anything else that either side
          2     wants to -- wants to raise?
          3                    MR. WEINBERGER:  Not on behalf of the
          4     plaintiffs, Your Honor.
13:33:42  5                    MR. STOFFELMAYR:  Not for the defendants
          6     either.  Thank you.
          7                    THE COURT:  All right.
          8                    Judge Ruiz and Special Master Cohen,
          9     did -- did I omit something or is there something else
13:33:52 10     that either of you think we ought to cover?
         11                    Because I've got many people helping me,
         12     and I could easily have forgotten something.
         13                    SPECIAL MASTER COHEN:  I don't think so,
         14     Judge.
13:34:08 15                    There's many issues that I'm working with
         16     the parties on, but I don't think there's anything we
         17     need to chat about today.
         18                    MAGISTRATE JUDGE RUIZ:  And this is
         19     Magistrate Judge Ruiz.
13:34:16 20                    I don't -- I don't think there's anything
         21     else for the parties and the Court to discuss today.
         22                    THE COURT:  Okay.  All right.
         23                    Thank you, everyone.
         24                    We'll talk to everyone in three weeks, and
13:34:30 25     have a good Labor Day, and everyone stay safe.
```

1      MR. WEINBERGER:  You, too.  Thank you,

2  Judge.

3      (Proceedings concluded at 1:34 p.m.)

4      -  -  -  -

5

6      C E R T I F I C A T E

7      I certify that the foregoing is a correct

8  transcript from the record of proceedings in the

9  above-entitled matter.

10

11

12  **/s/Susan Trischan**
    /S/ Susan Trischan, Official Court Reporter
13  Certified Realtime Reporter

14  7-189 U.S. Court House
    801 West Superior Avenue
15  Cleveland, Ohio 44113
    (216) 357-7087
16

17

18

19

20

21

22

23

24

25