# EXHIBIT 2

**BartlitBeck** LLP

Sharon Desh
Sharon.Desh@BartlitBeck.com

July 29, 2020

Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
main: (312) 494-4400
direct: (312) 494-4445

**VIA EMAIL**

BartlitBeck.com

Re: *MDL 2804 – Privilege Challenges*

Dear Special Master Cohen,

I write regarding the parties' discussion of outstanding privilege challenges.  Plaintiffs, simply, have engaged in a bait and switch.  They encouraged Walgreens to downgrade documents from Track One A privilege logs in reliance on Plaintiffs' agreement that doing so would resolve Agenda Items 232 and 253, then nevertheless brought challenges from those agenda items – in addition to wholly new Track One A challenges – for resolution.

This is a breach of the parties' agreement, and Plaintiffs have unjustly benefited from their tactic.  As Walgreens has repeatedly explained, Plaintiffs waited to bring their current privilege challenges until months or years after the Track One A fact discovery cut off, and clear case law states that these challenges are therefore waived.  The parties were nevertheless able to reach agreement whereby Walgreens (and Plaintiffs) would agree to downgrade certain documents if no further challenges from Track One A were brought for in camera review.  That gave both parties the benefit of additional downgraded documents, while Walgreens withheld its waiver argument.  Walgreens downgraded documents in reliance on that agreement, but Plaintiffs have not kept up their end of the bargain.

Plaintiffs make no effort to explain why they are not adhering to the parties' agreement, nor do they address the waiver argument at all.  Their remaining arguments are similarly baseless: their challenges are directly contrary to court orders that have rejected the "sword / shield" argument.  And it is Plaintiffs who have failed to comply with Court orders on downgrading documents – not Walgreens.

Finally, based on our recent meet and confers with Plaintiffs, Walgreens remains very concerned about Plaintiffs' own over-designation of privilege claims, in addition to the fact that we appear to be missing a significant number of privilege logs from Plaintiffs.  Walgreens therefore seeks relief as outlined below relating to Plaintiffs' over-designation, failure to follow Court orders, and failure to complete their Track One A privilege review.

**I.      Background**

In Track One A, Plaintiffs and Walgreens worked cooperatively on challenges to Walgreens' privilege claims.  This process resulted in Walgreens independently downgrading a

BartlitBeck LLP

series of privilege claims. Every time that Walgreens has downgraded documents, we also conducted a review for any documents implicating similar privilege claims and downgraded those as well. Ex. D, 6/26/20 Desh letter to Robertson; Ex. F, 7/7/20 Desh email to Robertson; *see also* 12/21/18 Hearing Tr. p. 64:9-24; 1/10/19 Hearing Tr. p. 91:17-21.

When Plaintiffs and Walgreens disagreed about further downgrades in Track One A, Plaintiffs filed a motion for in camera review of selected documents. That motion resulted in Discovery Ruling No. 14, Part 4 and its Amendment in February 2019. *See* Dkts. 1387; 1395. Walgreens' privilege claims were upheld for the vast majority of Plaintiffs' challenges. *Id*. Walgreens completed its production pursuant to Discovery Ruling No. 14, Part 4 and its Amendment, including production of similar documents, on March 1, 2019.

On March 14, 2019, six weeks after the close of fact discovery in Track One A, Plaintiffs purported to send Walgreens their "next round" of privilege challenges. Walgreens responded one week later, on March 21, explaining that these challenges were untimely. Because all of the documents (or privilege logs for withheld documents) had been in Plaintiffs' possession for several months, these challenges could and should have been part of Plaintiffs' challenges leading up to Discovery Ruling No. 14, Part 4. Walgreens nevertheless invited Plaintiffs to explain why any of these belated challenges merited attention after the fact discovery cut off. Ex. A, 3/21/19 Desh letter to Irpino.

Plaintiffs never responded to Walgreens' request. In fact, Walgreens did not hear from Plaintiffs again on these challenges for six months, until Plaintiffs purported to put privilege challenges on the agenda in September 2019. At no point (then or now, over a year later) have Plaintiffs provided any explanation for why their challenges to documents produced or logged in Track One A, but which Plaintiffs did not raise until long after the close of fact discovery, should be considered.

**II.     The parties' recent negotiations**

Despite the fact that Plaintiffs have never responded to Walgreens' position on their waiver of these privilege claims, in an effort to reach a compromise, Walgreens engaged in several meet and confers with Plaintiffs. After extended discussions, Walgreens and Plaintiffs reached an agreement on May 29 that Plaintiffs represented would resolve all outstanding privilege challenges. Ex. C, 5/29/20 Desh email to Cohen.

As part of this agreement, both Walgreens and Plaintiffs agreed to downgrade certain documents provided that the remaining privilege challenges would *not* be escalated for in camera review. Ex. B, 5/21/20 Desh letter to Robertson; Ex. D, 6/26/20 Desh letter to Robertson; Ex. E, 7/1/20 Robertson email to Desh; Ex. F, 7/7/20 Desh email to Roberson. This agreement represented a middle ground between Walgreens' position that Plaintiffs had waived their

## BartlitBeck LLP

outstanding privilege challenges, and Plaintiffs' desire to engage in ongoing privilege discussions with Walgreens.  *Id*.  The parties reserved only the right to raise good faith requests regarding documents downgraded to privilege-redact.  All other outstanding privilege challenges from Agenda Items 252, 232, and 253 were purported to be resolved.  Ex. C, 5/29/20 Desh email to Cohen.

In reliance on this agreement, Walgreens completed its production of privilege downgrades (a production of close to 200 previously privileged documents with their family members) on June 4.  Ex. D, 6/26/20 Desh letter to Robertson; Ex. E, 7/1/20 Robertson email to Desh.  Although not part of the parties' agreement, Walgreens also worked cooperatively with Plaintiffs to answer other questions and provide additional information regarding its privilege downgrades through June.  *Id*.  Plaintiffs even submitted new challenges to Walgreens in June 2020 – now more than a year after the fact discovery cut off.  Although not required by the parties' agreement, Walgreens agreed to review those challenges for potential downgrades, under the same understanding that the parties would resolve all issues cooperatively and not engage the Special Master.  Ex. D, 6/26/20 Desh letter to Robertson; Ex. E, 7/1/20 Robertson email to Desh; Ex. F, 7/7/20 Desh email to Robertson.

Regretfully, however, Plaintiffs have not abided by the parties' agreement.  Instead – without warning - they brought additional challenges to documents raised in Agenda Items 232 and 253 to the Court for in camera review.  Walgreens never would have agreed to engage in the lengthy meet and confer process and produced the associated documents had Plaintiffs had been clear that they had no intention of abiding by the parties' agreement.

As we have explained to Plaintiffs, in the course of our recent negotiations, Walgreens has also uncovered systemic problems with Cuyahoga's privilege logs.  First, we are concerned that the privilege logs we have received to date contain over-designation.  Second, based on the information we have received, it appears that large numbers of privilege logs from Cuyahoga still have not been produced, though they were due more than a year ago.  Third, it appears that Cuyahoga has not been following the Court's orders to downgrade documents involving similar privilege claims – something that they incorrectly accuse Walgreens of failing to do.  Walgreens was hoping to resolve all of these issues cooperatively, but it now appears that is not possible.

### ARGUMENT

In their submission, Plaintiffs attempt to present for in camera review privilege challenges that they brought in September 2019, February 2020, and June 2020, months to years after fact discovery closed in Track One A and Walgreens completed production of its privilege logs.  Plaintiffs have waived all of these privilege challenges.  Plaintiffs' challenges also fail on the merits as they are a) based on previously-rejected arguments, and b) are based on factual inaccuracies.

BartlitBeck<sub>LLP</sub>

### I.   Plaintiffs have waived their challenges to Walgreens' Track One A privilege claims.

Fact discovery in Track One A closed in January 2019.  Plaintiffs, however, are asking this Court to re-open fact discovery for the purpose of bringing additional privilege challenges months to years after that date.  Re-opening fact discovery to consider privilege challenges – as with any motion to compel – requires a showing of good cause.  *See United States v. Barron Collier Co.*, 2015 WL 13811188, at *4 (D. Ariz. Dec. 24, 2015).  Plaintiffs have plainly failed to establish that here.

Under Rule 16(b), district courts are required to enter scheduling orders "that limit the parties' time to complete discovery."  *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011) (citations omitted).  Re-opening discovery for the purpose of a motion to compel after the discovery period has closed requires a showing of good cause.  *Id.*  That is because "[a] district court's case-management powers apply with particular force to the regulation of discovery and the reconciliation of discovery disputes."  *Burgos-Martinez v. City of Worcester*, 345 F. Supp. 3d 105, 106 (D. Mass. 2018) (collecting cases).  "Where a party is aware of the existence of documents or other information before the close of fact discovery and propounds requests after the deadline has passed, those requests should be denied."  *Gucci,* 790 F. Supp. 2d at 140 (collecting cases).  "Numerous courts . . . have found that absent special circumstances, motions to compel discovery filed after the close of discovery are untimely."  *FedEx Corp. v. United States*, No. 08-2423 MA/P, 2011 WL 2023297, at *4 (W.D. Tenn. Mar. 28, 2011) (collecting cases).

That applies equally to privilege challenges.  In *Barron Collier*, the Court held that good cause was not satisfied when a party "wait[ed] almost eight months to challenge the Government's assertion of privilege."  2015 WL 13811188, at *4.  Instead, the Court declined to re-open fact discovery where the challenging party could have brought the challenges "in time for the Court to rule on the privilege before the close of discovery."  *Id*.  Similarly, in *Cardiac Pacemakers*, the Court rejected challenges that a privilege log did not sufficiently set forth the required elements for maintaining a privilege.  The Court observed that the privilege log had been served years before, and the challenges came "far too late" when they were asserted "long after discovery closed and just ten weeks before the long-scheduled trial."  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc*., 2001 WL 699889, at *1 (S.D. Ind. Apr. 26, 2001).  Other Courts similarly acknowledge that privilege challenges must be made in a timely manner or are waived.  *See, e.g., Acosta v. Min & Kim, Inc*., No. CV 15-14310, 2017 WL 11317619, at *1 (E.D. Mich. June 21, 2017) (good cause did not exist to re-open discovery where the basis for the privilege was asserted before the fact discovery cut off).

The requirement to adhere to Court-ordered deadlines was recently emphasized in the Sixth Circuit's mandamus order.  *In re Nat'l Prescription Opiate Litig*., 956 F.3d 838, 843-44

BartlitBeck LLP

(6th Cir. 2020).  That order emphasized that deadlines and good cause standards cannot be ignored simply because it would be more efficient for future cases.  *Id.*

Plaintiffs could have brought all of their privilege challenges at issue before the close of fact discovery and have not identified any good cause for their failure to follow this schedule.  It is notable that even though Plaintiffs knew this issue would be briefed if they attempted to submit documents for in camera review, they have made no attempt to identify any basis at all – much less good cause – for their failure to comply with the Court's schedule.  Nor have they provided any legal explanation for why they should be permitted to bring privilege challenges years after privilege logs have been submitted and fact discovery closed.

Plaintiffs' clear waiver of these challenges is the fundamental reason why Plaintiffs and Walgreens both had something to gain from reaching an agreement on Agenda Items 232, 252, and 253.  The agreement represented a middle ground between Walgreens' position that all privilege challenges had been waived, and Plaintiffs' desire to engage in ongoing privilege discussions with Walgreens.  Walgreens explained to Plaintiffs several times that it was holding back its waiver argument on the express condition that Plaintiffs would agree to forego additional untimely privilege challenges.  Plaintiffs, however, have played both sides of this issue – encouraging Walgreens to downgrade documents in reliance on that agreement, but then walking away when the agreement no longer suited them.  For the reasons stated above, Walgreens has already provided Plaintiffs far more information than they are entitled to given their belated privilege challenges – including Walgreens' recent production of privilege downgrades.  The Court should reject all other privilege challenges as untimely.

Because Plaintiffs have waived these challenges, there is no need to address them on the merits.  For the reasons explained below, however, Plaintiffs' arguments fail there as well.

## II. Plaintiffs have mischaracterized Walgreens' privilege review.

Plaintiffs assert that Walgreens has "unjustly" and "inexcusably" maintained its original privilege designations over some unspecified universe of documents.  That is incorrect.  As the Court and Special Master Cohen have instructed, each time Walgreens downgrades a document previously withheld or redacted as privileged, we review our entire privilege log and downgrade any similar documents.  Ex. D, 6/26/20 Desh letter to Robertson; Ex. F, 7/7/20 Desh email to Robertson; *see also* 12/21/18 Hearing Tr. p. 64:9-24.; 1/10/19 Hearing Tr. p. 91:17-21.[1]  Walgreens also previously expressed a willingness to engage with Plaintiffs on an ongoing, cooperative basis if they believed certain types of documents should be re-reviewed as a whole.

---

[1] Plaintiffs appear to also cite to this transcript in Footnote 3 of their submission, but we think that is in error as we are unable to locate the cited text.

- 5 -

BartlitBeck LLP

Ex. D, 6/26/20 Desh letter to Robertson; Ex. F, 7/7/20 Desh email to Robertson. But Plaintiffs declined to do so.

Plaintiffs have articulated no basis for the generalized assertion that Walgreens' privilege claims run afoul of any rulings and require intervention. Notably, when Plaintiffs previously submitted Walgreens' privilege claims to Special Master Cohen for in camera review, the Court upheld the vast majority of those claims as privileged. And unlike other Defendants, Walgreens did not use a third-party consultant to design its SOM system. As a result, Walgreens did not categorically claim privilege over communications relating to its SOM design and evolution due to communications with third parties or otherwise. Instead, Walgreens has produced thousands of documents detailing every aspect of its SOM system since the earliest stages of this case.

Plaintiffs point to a small handful of documents produced on June 4 as evidence of over-designation. *See* 7/22/20 Irpino Letter Ex. A. That argument fails for two reasons. First, Walgreens worked cooperatively with Plaintiffs downgrade these documents (in addition to any similar documents), as explained above. Second, the substance of these documents was already available to Plaintiffs in other, non-privileged documents produced in Track One A, including documents that were marked in depositions. *See, e.g.*, WAGMDL00045766; WAGMDL00047448; WAGMDL00132147; WAGMDL00303186; WAGMDL00312091; WAGMDL00358578; WAGMDL00407724; WAGMDL00580319; WAGMDL00060739; WAGMDL00675680, WAGMDL00675689, WAGMDL00704545; WAGMDL00709220. In summary, Plaintiffs have identified no factual information about Walgreens' SOM system that has not been produced.

At this stage, it is unclear to Walgreens what relief Plaintiffs are seeking other than for Walgreens to downgrade "more" documents. To the extent Plaintiffs assert there is some problem with Walgreens' privilege claims because we have stood by most of them, that is baseless. Of course, Walgreens stands by the bulk of its privilege challenges; they were correctly made – as confirmed by the high percentage of Walgreens' privilege challenges previously upheld by Special Master Cohen. If Plaintiffs feel that certain categories of documents need additional attention, they should have identified them to us, as we were expecting Plaintiffs to do as part of our cooperative agreement. Ex. D, 6/26/20 Desh letter to Robertson; Ex. F, 7/7/20 Desh email to Robertson.

### III. The Court has already rejected Plaintiffs' "sword / shield" argument.

Plaintiffs' July 22 submission also asserts that Walgreens is inappropriately using privilege as a sword and a shield, on the one hand stating that it complied with applicable laws, while also asserting privilege over certain other documents. Of course, the fact that a party asserts it has complied with the law is not a subject matter waiver of attorney client privilege. This Court has already rejected that argument:

**BartlitBeck**LLP

> Plaintiffs state defendants have made factual assertions or pled affirmative defenses that cannot be fairly evaluated without access to any withheld document that addresses the defendants' Suspicious Order Monitoring Systems. Although there is Sixth Circuit authority supporting a broad reading of waiver, there are also numerous cases that take a more measured position and hold, as defendants argue, that *unless the party asserting privilege has put the particular document at issue, it has not waived the privilege. The Special Master declines to follow the more expansive approach to waiver urged by plaintiffs* in the context of these SOMS audits and related documents.

Dkt. 1666 at 2-3 (emphasis added) (distinguishing *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2nd Cir. 1991); *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996)).[2]

Plaintiffs further argue that Walgreens' 30(b)(6) deposition in Track One A provides evidence that Walgreens has used privilege as a "sword" and a "shield." But Special Master Cohen oversaw that 30(b)(6) deposition and permitted Walgreens' objections to questions regarding Suspicious Order Monitoring that implicated attorney client privilege. *See* 7/22/20 Irpino Letter Ex. B at 1, 9-11. Plaintiffs' time to appeal those objections and rulings has long since passed. If Plaintiffs believed that *any* attorney instruction or document withheld on the basis of privilege was inappropriate, the time to raise that was in Track One A.

Plaintiffs' argument essentially amounts to a statement that no party can claim privilege over documents involving suspicious order monitoring. That is incorrect. The Special Master has already held, including during a previous in camera review of Walgreens' privilege claims, that it is proper to assert attorney client privilege over such documents as long as that privilege is narrowly tailored. The Special Master upheld the majority of Walgreens' privilege claims on this basis, Dkts. 1387; 1395, and has upheld privilege claims by other parties on similar grounds. *See, e.g.*, Dkts. 1353; 1593; 1666; 1678.

Walgreens has produced thousands of documents and dozens – if not hundreds – of hours of deposition testimony on the topics Plaintiffs identify in their submission. And this Court has already rejected Plaintiffs' sword / shield argument multiple times, both in the abstract and as

---

[2] This argument was also previously made by Plaintiffs in Agenda Item 232. If Plaintiffs believed that specific documents existed that merited further discussion on this topic, they should have identified those documents in connection with the parties' meet and confers before that Agenda Item was resolved. They did not do so, and the parties' resolution of this Agenda Item moots this argument.

- 7 -

BartlitBeck LLP

applied to Walgreens' privilege claims.  Plaintiffs' attempt to re-argue those rulings years after they were issued should be rejected.

**IV.      Plaintiffs' specific privilege challenges to Walgreens should be rejected.**

As explained above, all of Plaintiffs' privilege challenges at issue in their submission are from September 2019, February 2020, or June 2020.  *See* 7/22/20 Irpino letter at 6.  In other words, these challenges came months to years after Walgreens' privilege logs were submitted and fact discovery closed.  All of Plaintiffs' outstanding challenges were resolved via the parties' agreement and Walgreens' document production in June 2020.  Any further challenges are waived, and any attempt to re-argue orders of this Court should be denied.

Plaintiffs' challenges also fail on their merits as shown from Walgreens' privilege log and as further explained directly to Plaintiffs' counsel in multiple meet and confers, which spanned several hours and involved the parties reviewing the documents closely in seriatim.  *See, e.g.*, Ex. E, 7/1/20 Robertson email to Desh.  As Walgreens explained to Plaintiffs in its privilege logs and multiple follow up conversations, Plaintiffs' challenges to communications with in house and outside counsel seeking and rendering legal advice are properly privileged under any standard.

**V.       Plaintiffs have recently shown structural problems with their own Track One A review.**

The parties' discussions regarding Agenda Items 232, 252, and 253 not only involved Plaintiffs' challenges to Walgreens – they also involved Walgreens' challenges to Plaintiffs.  While Walgreens received privilege downgrades from Plaintiffs consistent with the parties' discussions, the meet and confer process revealed other fundamental problems with Plaintiffs' privilege review.  Walgreens has attempted to meet and confer with Plaintiffs on these issues for more than a month but has not received any response on Plaintiffs' issues.  Ex. D, 6/26/20 Desh letter to Robertson.  Walgreens has repeatedly explained to Plaintiffs that any attempt to brief privilege disputes would require us to bring these issues to the Special Master's attention.  *Id*.  However, Plaintiffs once again make no effort in their submission to respond to Walgreens' challenges, which we re-state below.

*First*, out of the 1,000 sample privilege challenges that Walgreens was able to submit to Plaintiffs based on Cuyahoga privilege logs that we have received to date, Plaintiffs agreed that approximately *half* of the documents were not privileged and should be produced.  Ex. B, 5/21/20 Desh letter to Robertson.  This raises concerns about over-designation throughout the remainder of Plaintiffs' logged documents, not to mention the documents for which no log was provided.

BartlitBeck LLP

*Second,* we are very concerned that a significant number of Cuyahoga County privilege logs from Track One A remain missing.  According to our records Cuyahoga has not provided a privilege log for custodians Caraffi, Kochevar, Delos Reyes, Gray, Kippes, or Corraro, who together had custodial file productions of more than 14,000 documents.  Cuyahoga has also not provided a privilege log from any of its centralized files, which comprise millions of documents.  Ex. D, 6/26/20 Desh letter to Robertson.  Cuyahoga should be ordered to provide these privilege logs to Defendants or confirm that no privilege review was conducted on these documents.

*Third*, based on our review, Cuyahoga recently downgraded documents specifically identified by Walgreens but did not search their production for other similar documents to downgrade.  We are therefore concerned that Cuyahoga is not following the Court's orders to apply downgrade decisions to other, similar documents.  Cuyahoga should confirm whether they have followed the process required by the Court, and, if not, be ordered to do so not only with respect to the parties' recent challenges, but also any other downgrades they have made through Track One A.

In summary, Walgreens has reason to believe that we did not receive from Plaintiffs a full accounting of their privilege claims in Track One.  Therefore, we request that Plaintiffs be ordered to provide the privilege logs referenced above (or confirm that no such privilege logs exist) and that Plaintiffs be ordered to describe whether they are engaging in the Court-ordered process of searching their privilege logs for similar documents to downgrade.  We can then better understand the nature of the over-designation problem we are observe.

We are also attaching to this submission additional challenges reflecting the deficiencies in Cuyahoga's privilege logs from Track One A.  Ex. G, Cuyahoga Privilege Log Challenges.  If the Court decides to move forward with additional in-camera review, we will submit a selection of them for that purpose.  For the reasons stated above, however, we believe the case law on that issue is settled.

Thank you,

*[signature]*

Sharon Desh

- 9 -