# EXHIBIT 4

**BartlitBeck** LLP

Sharon Desh
Sharon.Desh@BartlitBeck.com

September 9, 2020

Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
main: (312) 494-4400
direct: (312) 494-4445

**VIA EMAIL**

BartlitBeck.com

Re: *MDL 2804 – Privilege Challenges*

Dear Special Master Cohen,

Walgreens writes to seek reconsideration of Part II.B of Discovery Ruling 23 (ECF 3455), regarding Plaintiffs' waiver of their Track One A privilege challenges. That ruling issued before Walgreens had an opportunity to reply to arguments Plaintiffs raised for the first time in their August 26 submission, and thus without the benefit of case law clearly rebutting those arguments.

Walgreens also seeks confirmation that, pursuant to Part II.A of Discovery Ruling 23, all privilege challenges subject to the parties' May 2020 agreement have been resolved by that agreement, not just those in the eight documents exemplified in Plaintiffs' submission. As explained on in Section III below, more than eight documents were subject to that agreement.

**I.  Plaintiffs' waiver argument is contrary to binding case law**

Plaintiffs argued for the first time in August 2020, 18 months after the close of fact discovery in Track One A, that they can continue to bring privilege challenges to Track One A privilege logs forever, without limitation. This is contrary to case law governing this MDL—as well as other case law in the MDL context—and must be rejected.

Plaintiffs' submission ignores the Sixth Circuit's mandamus order, attempting to limit it artificially to its facts while missing the unmistakable rule the Sixth Circuit laid down for this case and all MDLs: "The rule of law applies in multidistrict litigation under 28 U.S.C. § 1407 just as it does in any individual case. . . . **That means an MDL court's determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases, as applied to the record in that case alone**. . . . The rules at issue here are the Federal Rules of Civil Procedure, which have the same force of law that any statute does." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020) (emphasis added). This is also why Plaintiffs' primary argument for distinguishing the extensive authority Walgreens cited—i.e., that those cases did not involve an MDL—is beside the point. There is no special "MDL precedent" that alters the timeliness requirements of Rule 16 in MDLs. *Id.* at 844 ("[T]he requirements of the Civil Rules in an MDL case . . . 'are the same as those for ordinary litigation on any ordinary docket.'" (quoting *In re Korean Air Lines Co.*, 642 F.3d 685, 700 (9th Cir.

- 1 -

BartlitBeck<sub>LLP</sub>

2011)); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332 (N.D. Ill. 2005) (MDL court citing exclusively non-MDL cases in determining the timeliness of a motion to compel filed the day discovery closed).[1]

It is not surprising, then, that MDL courts, just like other federal courts, routinely deny untimely privilege challenges in circumstances exactly like those presented here.  For example, in *In re Seroquel Products Liability Litigation*, plaintiffs brought a motion to compel de-designation of documents on a privilege log served ten months before, arguing that documents were being improperly withheld as privileged "most likely in violation of this Court's and others' privilege rulings."  No. 6:06-md-1769, 2009 WL 3739347, at *1 (M.D. Fla. Nov. 6, 2009) (internal quotation marks omitted).  The defendant filed a motion to strike for untimeliness, arguing that plaintiffs had raised the privilege challenge "nearly a year late without even attempting to show reasonable cause for the delay."  *Id.* at *4 (internal quotation marks omitted). The MDL court agreed, denying the motion to compel as untimely.  *Id.* at *6.  And the court did so despite the fact that discovery had not yet closed and even though earlier privilege challenges had been sustained in part.  *Id.* at *1-2.

Indeed, Plaintiffs' own authority proves the point.  After claiming (without citation or explanation) that non-MDL cases are not relevant authority, Plaintiffs themselves rely on the non-MDL case of *Durand v. Hanover Ins. Group, Inc.*, 294 F. Supp. 3d 659 (W.D. Ky. Feb 16, 2018), as "more analogous to the matter at hand."  8/26/20 Robertson Letter at 4.  But the court in *Durand* still applied the "good cause" standard under Rule 16 to untimely privilege challenges, noting that a court "must first find that the moving party proceeded diligently," and that "the movant who fails to show 'good cause' will not be accorded relief . . . merely because the opposing party will not suffer substantial prejudice."  *Durand*, 294 F. Supp. 3d at 671 (citing *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014) and *Interstate Packaging Co. v. Century Indemnity Co.*, 291 F.R. 139, 145 (M.D. Tenn. 2013)).  The *Durand* court permitted the privilege challenges in that case to proceed *only* after expressly finding that

---

[1] Plaintiffs cite *Seifu v. Postmaster Gen., U.S. Postal Serv.*, No. 1:19-cv-572, 2020 WL 2085197 (S.D. Ohio Apr. 30, 2020) as "showing the scope of the Sixth Circuit's mandamus order narrowly applied to amendment of pleadings." But *Seifu* shows nothing of the kind.  The court merely described as "dictum" the Sixth Circuit's discussion of Rule 12(b) motions.  The Sixth Circuit's "observation[]" that "the district court may *not* refuse to adjudicate motions properly filed under [Civil Rule 12(b)]" was dictum only because the Sixth Circuit had already directed the Court to strike the Amendments by Interlineation to which the Pharmacy Defendants' motions to dismiss were directed.  *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 846.  That fact in no ways narrows the application of the Sixth Circuit's central holding that "the requirements of the Civil Rules in an MDL case . . . 'are the same as those for ordinary litigation on any ordinary docket,'" *id.* at 844 and that it was error for the district court "to think it had authority to disregard the Rules' requirements in the Pharmacies' cases in favor of enhancing the efficiency of the MDL as a whole," *id.*

# BartlitBeck LLP

plaintiffs were "[u]nquestionably . . . diligent" and that "good cause exist[ed]" under Rule 16. *Id.* at 672.

Plaintiffs' other attempts to distinguish Walgreens' cases are similarly unavailing. They argue that none of them involve "the proponent of a privilege failing to apply bellwether privilege rulings." 8/26/20 Robertson Letter at 4. But as explained below, Plaintiffs cannot show any failure by Walgreens to "apply bellwether privileged rulings." Nor do immaterial factual distinctions bear on the settled legal principle for which those cases stand: that an untimely motion to compel the production of documents withheld as privileged, brought after the close of discovery, requires a showing of good cause. *See, e.g., United States v. Barron Collier Co.*, 2015 WL 13811188, at *4 (D. Ariz. Dec. 24, 2015) (collecting cases on the content and application of the "good cause" standard for reopening discovery based on disputed privilege claims); *Burgos-Martinez v. City of Worcester*, 345 F. Supp. 3d 105, 106 (D. Mass. 2018) (collecting cases denying motions to compel as untimely); *FedEx Corp. v. United States*, No. 08-2423 MA/P, 2011 WL 2023297, at *4 (W.D. Tenn. Mar. 28, 2011) (collecting cases from "[n]umerous courts" finding that "absent special circumstances motions to compel discovery filed after the close of discovery are untimely").

## II.     Plaintiffs cannot show good cause

Plaintiffs cannot show good cause for their belated privilege challenges. All of Walgreens' Track One A privilege logs have been in Plaintiffs possession for more than a year. *See* Ex. 1.[2] And Plaintiffs have been on notice of the basis of their purported privilege challenges (including the previously-rejected "sword/shield" argument[3] and the factually inapposite argument that "suspicious Ordering processes or policies are not privileged and should not be withheld"[4]) since 2018, when this Court first established that SOMs-related privilege claims should be narrowly construed. Plaintiffs point to nothing in any subsequent "bellwether" ruling that changes these principles sufficient to permit endless challenges to Track One A privilege logs.

It is undisputed that the parties resolved all of their privilege disputes that were outstanding as of May 2020. ECF 3455 at 3. Plaintiffs point to no privilege rulings after May 2020—nor anything else—that would enable them to continue to challenge Walgreens' privilege logs after the conclusion of the parties' agreement. Plaintiffs also point to no privilege

---

[2] Walgreens does not dispute that Plaintiffs may bring certain challenges to CT1B or CT3 privilege logs, including those captured by Plaintiffs' June 2020 challenges.

[3] ECF 1666 at 3.

[4] Walgreens has produced hundreds of such policies, across various iterations, going back to at least 2006, as identified specifically for Plaintiffs in our discovery responses.

BartlitBeck LLP

downgrades from Walgreens—either before or after that date—that provide information they did not previously have. Instead, as Walgreens has explained in previous submissions, the substance of the documents Walgreens downgraded in reliance on the May 2020 agreement was already included in other, non-privileged documents produced in Track One A, including documents that were marked by Plaintiffs in depositions. Plaintiffs do not dispute this.[5] In other words, there is no category of documents among Plaintiffs' privilege challenges that Plaintiffs do not already have access to—whether downgraded in response to prior privilege rulings or otherwise.[6]

As Walgreens has also explained, we make all of our privilege decisions cognizant of the dictates of the bellwether privilege rulings in the MDL. And every time we downgrade documents in response to a privilege ruling or agreement with Plaintiffs, we review and downgrade similar documents alongside them. 7/29/20 Desh letter to Cohen. Plaintiffs have shown nothing to the contrary that even remotely establishes good cause. To the contrary, when Plaintiffs previously submitted Walgreens' privilege claims to Special Master Cohen for in camera review, the Court upheld the vast majority of those claims as privileged. ECF 1387; 1395.

Plaintiffs cannot use Track One A privilege rulings to bootstrap their untimely privilege challenges indefinitely. Instead, as you have recognized, in this MDL as in any other case "deadlines must be respected." ECF 3305 at 6.

### III. The parties' agreement encompassed more than 8 outstanding privilege claims

Plaintiffs also aver that only in June 2020 did they finally come to appreciate the importance of challenging certain documents. But the record shows the opposite: in addition to the eight documents Plaintiffs acknowledge were part of their earlier challenges, ***multiple additional*** documents in Plaintiffs' June 2020 challenges were part of their earlier

---

[5] *See* 7/29/20 Desh letter to Cohen (citing WAGMDL00045766; WAGMDL00047448; WAGMDL00132147; WAGMDL00303186; WAGMDL00312091; WAGMDL00358578; WAGMDL00407724; WAGMDL00580319; WAGMDL00060739; WAGMDL00675680, WAGMDL00675689, WAGMDL00704545; WAGMDL00709220); *see also* WAGMDL00670686; WAGMDL00670695; WAGMDL00751804; WAGMDL00752211; WAGMDL00752212; WAGMDL00752215; WAGMDL00752216; WAGMDL00752218; WAGMDL00752219; WAGMDL00752227 (non-privileged documents available to Plaintiffs covering additional topics mentioned in their 8/26/20 submission).

[6] Walgreens also observes that its total privilege percentage is very similar to other pharmacy Defendants, including both Walmart and CVS. Unlike other Pharmacy Defendants, however, Walgreens did not apply a date cut-off to its production and continued to log documents post-dating the Complaint. If those documents are removed from the calculation, as they would be in a standard case, Walgreens' total privilege percentage is closer to 7%. Given the size of Walgreens' production, it is undisputed that Plaintiffs are in possession of several times the number of non-privileged documents from Walgreens than any other Pharmacy Defendant. Walgreens further observes that Plaintiffs have indirectly conceded that they did not conduct a full privilege review, so their privilege percentage is not an adequate comparison to that of Defendants. 8/17/20 Telecon.

BartlitBeck LLP

**challenges and therefore explicitly resolved by the parties' May 2020 agreement.**  For example, documents WAGMDL00757193 and WAGMDL00757222 (starting at page WAGMDL00757225) were listed as Exhibits E and F to Agenda Item 232, which was resolved by the parties' agreement.  *See* Ex. 2 (excerpts from May 19, 2020 agenda reflecting the first page of documents 232E and 232F); *see also* ECF 3455 at 3; 5/29/20 Desh email to Cohen ("[T]he parties have resolved agenda items 252, 232, and 253 regarding outstanding privilege challenges.").  Plaintiffs gloss over this fact and attempt to re-issue challenges to these same documents (in addition to other documents that are duplicates or substantially similar)[7] under their purported "list of 53" new challenges.  Walgreens seeks confirmation that, per your order, all privilege claims subject to the parties' agreement have been resolved.

                Thank you,

                Sharon Desh

---

[7] *See also* WAGMDL00752433 (duplicate of Exhibit F to Agenda Item 232); WAGMDL00771951; WAGMDL00773030 (containing pages that are substantive duplicates of the above).

- 5 -