# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: "*All Cases*" | ) ) ) ) ) ) | MODIFIED DISCOVERY RULING NO. 23 REGARDING WALGREENS' AND PLAINTIFFS' PRIVILEGE CLAIMS |

**AGENDA ITEM NOS. 265 AND 272**

**PROCEDURAL BACKGROUND**

The Special Master issued Discovery Ruling 23 (Doc. # 3455) on September 7, 2020. Walgreens promptly requested clarification and reconsideration by email dated September 9, 2020. That same day, the Special Master by email denied the request for reconsideration but did issue a clarification. On September 10, 2020, the parties submitted additional argument contesting the factual basis for the clarification. The Special Master now submits this slightly-modified Discovery Ruling 23, which replaces in its entirety the original Discovery Ruling 23. The language below is identical to the original Discovery Ruling 23 except where highlighted in yellow.

\*    \*    \*    \*    \*

During Track One discovery, defendant Walgreens withheld production of certain documents based on attorney-client privilege. Plaintiffs seek *in camera* review of two sets of documents listed on Walgreens' privilege logs.[1]

---

[1] Pearl Robertson Letter Brief, dated August 26, 2020.

1

Walgreens argues plaintiffs' challenges are untimely and thus waived. Walgreens further argues that, in continuing to seek this *in camera* review, plaintiffs are violating an oral agreement the parties reached in May 2020, under which Walgreens and plaintiffs would each voluntarily downgrade and forego certain privilege claims so long as neither party sought *in camera* review of any additional privilege claims.[2]

Walgreens also brings its own challenges of plaintiffs' conduct related to privilege designation: Walgreens raises a number of issues related to plaintiffs' production of privilege logs, as well as plaintiffs' alleged over-designation of documents as privileged. Walgreens also complains that plaintiffs' failed to complete their Track One-A privilege review.

The Special Master analyzes all of these issues below and provides rulings at the end of this document.

**I. The Documents Challenged by Plaintiffs.**

**A. The First Set: Eight Documents Originally Challenged in September 2019.**

On September 25, 2019, plaintiffs challenged the privilege designations of a sampling of documents on Walgreens' privilege logs. On March 9, 2020, the undersigned ordered Walgreens to submit a set of these documents for *in camera* review. The parties, to their credit, then engaged in a collaborative process to resolve these privilege disputes without the need for the Special Master's intervention. This process appears to have resulted in an oral agreement reached on or about May 29, 2020, pursuant to which Walgreens downgraded and produced a set of documents in exchange for plaintiffs' commitment not to seek *in camera* review of withheld documents. Plaintiffs do not dispute the existence of this agreement, but there is significant dispute about its

---
[2] Sharon Desh Letter Brief, dated July 29, 2020.

precise scope.[3]  On June 4, 2020 Walgreens produced the documents per the agreement.  Plaintiffs object to the continued privilege designation of eight documents from the June 4 production, however, and now seek *in camera* review of those eight documents.[4]

### B. The Second Set: Fifty-three Documents Challenged in June 2020.

Plaintiffs also seek *in camera* review of 53 documents first challenged on June 19, 2020.  Plaintiffs assert they offered to meet and confer with Walgreens to resolve these challenges, but Walgreens refused to do so unless plaintiffs agreed not to seek *in camera* review in the event the parties could not resolve the challenges.

## II. Analysis.

### A. Existence and Scope of the May 29, 2020 Agreement.

The Special Master concludes the parties did reach an agreement on May 29, 2020.  As noted, plaintiffs do not disagree.[5]  After carefully reviewing the parties' submissions, the Special Master further concludes the agreement encompassed only: (1) the privilege designations plaintiffs challenged on September 25, 2019, and (2) the documents the parties addressed in early 2020 under Agenda Item Nos. 252 and 253.  Given the parties' sharply diverging view concerning the precise scope of the agreement, the Special Master is unable to conclude that the agreement reached the 53 documents plaintiffs challenged on June 19, 2020.  The Special Master thus denies plaintiffs' request for *in camera* review of the first set of eight documents, but grants plaintiffs'

---

[3] Indeed, Walgreens concedes "[t]he parties did not fully come to resolution on future discrete challenges to Track 1-A logs (as relevant here, those submitted in June 2020)." Email form Sharon Desh to Pearl Robertson (Aug. 13, 2020).
[4] Plaintiffs do not argue that Walgreens' continued non-production of these eight documents is in violation of the May 29 agreement.
[5] Although the parties' agreement was not in writing, emails sent by the parties before and after the agreement was reached chronicle its negotiation and existence.  Moreover, after Walgreens asserted in a letter to the undersigned that the agreement had been reached, plaintiffs did not argue otherwise.  The only real dispute was over the scope of the agreement.

3

request as to the second set of 53 documents. This leaves the question of whether plaintiffs waived their right to challenge the second set of documents.

### B. Walgreens' Waiver Argument.

Walgreens argues plaintiffs have waived their right to challenge any of Walgreens' Track One-A privilege claims because their challenge is untimely. The Special Master does not agree.

Walgreens asserts plaintiffs "are asking this Court to re-open fact discovery for the purpose of bringing additional privilege challenges months to years after" the close of discovery in January 2019.[6] Walgreens cites a number of cases indicating that plaintiffs must show good cause to re-open fact discovery. *United States v. Barron Collier Company*, 2015 WL 13811188, at *4 (D. Ariz. Dec. 24, 2015) ("To reopen discovery, Collier must show good cause, which in turn requires a showing of diligence."); *FedEx Corp. v. United States*, No. 08-2423 MA/P, 2011 WL 2023297, at *4 (W.D. Tenn. Mar. 28, 2011) ("Numerous courts . . . have found that absent special circumstances, motions to compel discovery filed after the close of discovery are untimely."); *Acosta v. Min & Kim, Inc.*, No. CV 15-14310, 2017 WL 11317619, at *1 (E.D. Mich. June 21, 2017) (good cause did not exist to re-open discovery where movant knew the basis for the informer's privilege before the end of fact discovery).

Although diligence in pursuing the resolution of privilege disputes is an important consideration here, the facts that form the background of the current dispute compel a different conclusion than the ones reached in the cases Walgreens cites. None of the cited cases involved the volume and complexity of discovery issues present in this case. While recognizing that MDL cases are not, *per se,* different from other federal precedent, the Special Master emphasizes that this case, like all others, must be assessed within its own circumstances, especially the unique

---

[6] Desh Letter Brief dated July 29, 2020 at 4.

4

manner in which initial discovery and the bellwether process have unfolded. As one MDL court put it, "[t]he answer then must necessarily be found in the entire complex of circumstances that gave rise to the motion, and what is untimely in one case, may not be in another." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 333 (N.D. Ill. 2005) (denying in part and granting in part plaintiffs' motion to compel discovery).[7]

Moreover, plaintiffs do not seek to *re-open* discovery; rather, they seek the Court's assistance in confirming Walgreen's *compliance* with a series of bellwether discovery rulings issued from February 2019 through April 2020. The Special Master has ordered all parties to treat those discovery rulings as instructive in setting the bounds of attorney-client privilege in this MDL, and to re-review their privilege designations in light of those rulings. Consequently, the relevant temporal benchmark against which to measure the timeliness of challenges to privilege designations is not the close of discovery, but rather the ongoing issuance of those rulings. Plaintiffs have submitted a plausible basis for their belief that Walgreens has not adequately applied prior discovery rulings to its own privilege claims and ask the Special Master's assistance in ascertaining Walgreens' compliance. Walgreens insists it has complied, and plaintiffs insist it has not.

In addition, throughout this MDL, Plaintiffs have continually engaged Walgreens in a Court-ordered meet-and-confer process to check and test Walgreens' privilege designations. And

---

[7] Walgreens notes correctly that the Sixth Circuit ruled on mandamus in this case that "[t]he rule of law applies in multidistrict litigation under 28 U.S.C. § 1407 just as it does in any individual case. * * * That means an MDL court's determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases, as applied to the record in that case alone." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020). But the Sixth Circuit also quickly followed this statement with the observation that, "[w]ithin the limits of those rules, of course, an MDL court has broad discretion to create efficiencies and avoid duplication—of both effort and expenditure—across cases within the MDL." *Id*. The critical difference between the instant case and the ones cited by Walgreens is that this Court issued **bellwether exemplar discovery rulings**, which the parties were required to apply going forward to both the Track One cases and all other MDL cases.

5

Walgreens itself has made challenges to Track One-A privilege claims after the close of Track One-A discovery, including throughout the months leading up to this Ruling.

Due to the complexity of this MDL and the enormous challenges of discovery herein, the Court relies heavily on the meet-and-confer process and appreciates any agreements the parties can reach with respect to discovery disputes (often with the assistance of the undersigned as mediator). As with everything else in this MDL, the parties' discovery negotiations are often time-consuming, and delay is inevitable. Without the ongoing cooperation of the parties, this Court would lack the capacity to address privilege challenges on a reasonable timetable. What is more, without the meet-and-confer process, and the agreements it produces, the Special Master would be unable to ensure compliance with the Court's orders.

Nothing in the parties' submissions convinces the Special Master that plaintiffs have, at this juncture, acted without reasonable diligence regarding the privilege challenges in question here. Accordingly, the Special Master concludes plaintiffs have not waived their right to challenge the 53 privilege designations challenged on June 19, 2020.[8] The Special Master is mindful of the need for closure on discovery issues, and there will certainly come a time when Walgreens' waiver argument is well-taken; but that time has not yet arrived.

---

[8] Although the conclusion on waiver is explicitly couched primarily in terms of "diligence," rather than "good cause," the principal reasoning is also grounded in good cause. Specifically, good cause for any putative delay by Plaintiffs inheres in: (1) the context of the parties' ongoing duty in the MDL to comply with serially-released Discovery Orders; (2) the need to test and check parties' compliance with those Orders (often with the Special Master's help); (3) the parties' time-consuming process of creating for the undersigned periodic, 1000-plus-page Discovery Agendas to seek resolution of ongoing disputes (along with many associated teleconferences); (4) the overwhelming volume and complexity of discovery issues absorbing everyone's time and attention; and (5) the often drawn out meet-and-confer process required of the parties. Moreover, the Special Master's own prioritization of *other* discovery disputes has played into the timing of the raising and resolution of the parties' privilege challenges. These considerations amount to good cause.

### C. Plaintiffs' Privilege Logs.

Walgreens complains about several issues related to plaintiffs' assertions of privilege. First, Walgreens asserts plaintiffs have failed to provide privilege logs for several custodians, as well as for its centralized files. Next, Walgreens expresses concern that plaintiffs have not downgraded their own privilege claims in accordance with various discovery orders. In that connection, Walgreens notes that, in response to some 1,000 sample privilege challenges Walgreens submitted to plaintiffs, plaintiffs downgraded approximately one-half of the challenged documents, which is a high percentage. Given this large proportion of downgrades, Walgreens seeks clarification of the process by which Plaintiffs initially designated those documents as privileged. Finally, although Walgreens argues the parties have waived review of privilege designations made during Track One, Walgreens seeks *in camera* review of a sampling of documents plaintiffs designated as privileged.

In correspondence to the Special Master, plaintiffs generally deny Walgreens' assertions, but sometimes offer no real answers or explanations.[9] For example, plaintiffs somewhat elliptically deny Walgreens' assertion concerning missing privilege logs, but plaintiffs do not directly and affirmatively represent that the reason they have not provided certain privilege logs is because plaintiffs did not withhold any relevant documents. Without such a direct representation, plaintiffs do not satisfactorily respond to Walgreens' concerns.

With respect to plaintiffs' downgrade of approximately one-half of Walgreens' 1,000 sample privilege challenges, however, plaintiffs point out that, of the nearly five million Cuyahoga County documents produced, plaintiffs designated only 36,001 (0.7%) as privileged. By contrast, Plaintiffs note Walgreens withheld as privileged slightly more than 10% of its entire production.

---

[9] Email from Salvatore C. Badala to the Special Master, August 5, 2020.

7

Plaintiffs assert that their willingness to downgrade approximately half of Walgreens' sample challenges reflected plaintiffs' "spirit of compromise and [was] not indicative that no colorable privilege claim existed."[10]  Taking into account the parties' respective percentages of initial privilege claims (plaintiffs' 0.7% versus Walgreens' 10%), the Special Master finds no reason to require plaintiffs to explain the process by which they made their initial privilege designations, nor to confirm their compliance with prior Discovery Rulings.  That said, the Special Master concludes it is still appropriate to allow Walgreens to identify for *in camera* review a small sample of documents of concern.

### III.  Rulings.

In light of the analyses above, the Special Master rules as follows:

1. Plaintiffs request for *in camera* review of the eight documents remaining from plaintiffs' 9/25/2019 challenges is **DENIED**.  The parties' submissions reveal they resolved their differences with respect to these documents pursuant to the May 29 agreement.

2. Plaintiffs' request for *in camera* review of the 53 privilege claims challenged by plaintiffs on June 19, 2020 is **GRANTED**.  After the original issuance of this Order (Doc. # 3455), plaintiffs voluntarily eliminated 23 of the original 53 privilege claims and have submitted a shortened list of 30 documents. Walgreens must submit the documents by Wednesday, September 16, 2020.

3. Plaintiffs must either: (a) provide privilege logs with respect to centralized files and to custodians Caraffi, Kochevar, Delos Reyes, Gray, Kippes, and Corraro, or (b) state affirmatively there are no logs because plaintiffs did not withhold any documents as

---

[10] Robertson Letter Brief dated August 14, 2020 at 1.

    privileged. If option (b), plaintiffs must so state by Wednesday, September 9, 2020. If option (a), plaintiffs must supply privilege logs as soon as reasonably possible.

4. Walgreens' request for *in camera* review of a sampling of documents is **GRANTED**, but Walgreens is ordered to submit a list of the smallest number of exemplar documents that would address their concerns, and in no event more than 40 documents (spread across the six categories of concern Walgreens lists). Walgreens must submit its list by Wednesday, September 9, 2020 and plaintiffs must submit the documents by Friday, September 11, 2020.

### IV. Objections.

Any party choosing to object to any aspect of this Modified Ruling must do so on or before Tuesday, September 15, 2020.

        **RESPECTFULLY SUBMITTED,**

        /s/ David R. Cohen
        **David R. Cohen**
        **Special Master**

**Dated: September 13, 2020**