UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track One-B Cases | |

PLAINTIFFS' OMNIBUS RESPONSE TO PHARMACY DEFENDANTS' MOTIONS *IN LIMINE*
(DOCS. #3411, #3413-3418, #3420-3423, #3425-3426) AND MEMORANDUM IN SUPPORT

September 14, 2020

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ..................................................................................................... III

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD ............................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

    A.    PLAINTIFFS' RESPONSE TO PHARMACY DEFENDANTS' JOINT MOTIONS *IN LIMINE*. ..3

        1.    Pharmacy Defendants' MIL No. 1: To preclude evidence, argument or comments regarding: 1) the military service, employment, religious affiliation or personal experiences of counsel and staff, and 2) the waiving or donation of attorney's or expert fees, or any portion of any recovery, to charity or for the benefit of the community.  (Doc. #3413) ........3

            i.    *Military Service, Employment, Religious Affiliation or Personal Experiences of Counsel and Staff*.................................................................4

            ii.    *Waiving or Donation of Attorney's or Expert Fees, or Any Portion of Any Recovery, to Charity or for the Benefit of the Community*...........................6

        2.    Pharmacy Defendants' MIL No. 2: To preclude evidence, argument or comments regarding the absence, presence or identity of Defendant's corporate representatives at trial.  (Doc. #3414) ................................................8

        3.    Pharmacy Defendants' MIL No. 3: To preclude testimony or argument negatively characterizing Defendants as large corporations.  (Doc. #3415) ....................................................................................................9

        4.    Pharmacy Defendants' MIL No. 4: To preclude evidence, argument, and testimony comparing Defendants' conduct to wars, national tragedies, terrorist attacks, the tobacco industry, or any comparison of Defendants to such actors.  (Doc. #3416) ..............................................................12

        5.    Pharmacy Defendants' MIL No. 5: To preclude evidence or argument that Defendants could have stopped distributing Schedule II controlled substances.  (Doc. #3417) ...............................................................15

        6.    Pharmacy Defendants' MIL No. 6: To preclude evidence of civil or criminal investigations or other litigation.  (Doc. #3418)...............................17

            i.    *Evidence of Investigations Involving Defendants* .............................................18

|  |  | ii. | *Evidence of Other Litigation Involving Defendants* | ...22 |
|  |  | iii. | *Media Coverage of Investigations or Other Litigation* | ...26 |
|  | 7. | | Pharmacy Defendants' MIL No. 7: To preclude evidence of settlements. (Doc. #3420) | ...28 |
|  |  | i. | *Dollar Amounts of Settlements* | ...31 |
|  |  | ii. | *Settlements Reached After the Relevant Time Period in this Case* | ...31 |
|  |  | iii. | *Settlements Relating to Pharmacies Outside of the Counties* | ...32 |
|  |  | iv. | *Settlements Relating to Corporate Entities Other than Defendants in this Case* | ...36 |
|  |  | v. | *Settlements Unrelated to Opioid Medications* | ...37 |
|  | 8. | | Pharmacy Defendants' MIL No. 8: To preclude evidence of extraterritorial conduct without establishing a specific nexus to Cuyahoga or Summit County and a Track 1-B Defendant.  (Doc. #3421) | ...37 |
|  | 9. | | Pharmacy Defendants' MIL No. 9: To limit testimony of Craig McCann. (Doc. #3425) | ...44 |
|  | 10. | | Pharmacy Defendants' MIL No. 10: To preclude evidence or argument relating to participation in trade associations.  (Doc. #3426) | ...47 |
| B. | | | PLAINTIFFS' RESPONSE TO RITE AID'S MOTION *IN LIMINE* TO EXCLUDE ORDERS FROM NON-DEFENDANT DISTRIBUTORS (DOC. #3423) | ...52 |
| C. | | | PLAINTIFFS' RESPONSE TO THE PHARMACY DEFENDANTS' PRESERVED OBJECTIONS TO THE COURT'S PRIOR EVIDENTIARY RULINGS. (DOC. #3411, 3422) | ...54 |
| CONCLUSION | | | | ...55 |

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Barbo v. Kroger Co.*,
No. 3:07-CV-14-S, 2007 WL 2350183 (W.D. Ky. Aug. 13, 2007) ........................................28

*Baxter Health Care Corp. v. Spectramed Inc.*,
No. SA CV 89-131 AHSRWRX, 1992 WL 340763 (C.D. Cal. Aug. 27, 1992)....................20

*Beech Aircraft Corp. v. Rainey*,
488 U.S. 153 (1988).............................................................................................................23

*Beswick v. Sun Pharm. Indus., Ltd.*,
No. 10-CV-00357A(F), 2018 WL 704399 (W.D.N.Y. Jan. 30, 2018), *report and
recommendation adopted,* No. 10-CV-00357A(F), 2018 WL 4858746 (W.D.N.Y.
Mar. 30, 2018).............................................................................................................15, 16

*Bispo v. Robertshaw Controls Co.*,
No. 3:05-CV-01223-BR, 2012 WL 13048223 (D. Or. Mar. 14, 2012) ...........................44, 45

*Blancha v. Raymark Indus.*,
972 F.2d 507 (3d Cir. 1992)..................................................................................................26

*Brazil v. Janssen Research & Dev. LLC*,
196 F. Supp. 3d 1351 (N.D. Ga. 2016) ..................................................................................16

*City of Cleveland v. Peter Kiewit Sons' Co.*,
624 F.2d 749 (6th Cir. 1980) .................................................................................................11

*Cohen v. Jaffe Raitt Heuer & Weiss, P.C.*,
768 F. App'x 440 (6th Cir. 2019), *reh'g denied* (Apr. 23, 2019) ...........................................24

*Cousins v. Bray*,
No. 2:03-CV-1071, 2005 WL 8161508 (S.D. Ohio Feb. 28, 2005) .........................................7

*Davis v. Siemens Med. Sols. USA, Inc.*,
279 F. App'x 378 (6th Cir. 2008)...........................................................................................54

*Dortch v. Fowler*,
588 F.3d 396 (6th Cir. 2009) ..................................................................................................2

*Drager v. PLIVA USA, Inc.*,
741 F.3d 470 (4th Cir. 2014) ...........................................................................................15, 16

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)..............................................................................................................52

*Eaton v. Newport Bd. of Educ.*,
   975 F.2d 292 (6th Cir. 1992) ........................................................................52

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
   No. 210CV1494JCMGWF, 2017 WL 4038858 (D. Nev. Sept. 13, 2017) ..............14

*Evans v. Troutman*,
   817 F.2d 104, 1987 WL 37221 (6th Cir. 1987) ................................................30

*Fed. Ins. Co. v. Mertz*,
   No. 12-CV-1597-NSR-JCM, 2016 WL 1572995 (S.D.N.Y. Apr. 18, 2016) ..........20

*Francois v. Colonial Freight Sys., Inc.*,
   No. CIV.A.3:06CV434WHB-L, 2007 WL 4564866 (S.D. Miss. Dec. 21, 2007) ..........4, 5

*Fujisawa Pharm. Co. v. Kapoor*,
   No. 92 C 5508, 1999 WL 543166 (N.D. Ill. July 21, 1999) ........................22, 32, 33

*Griffith v. Goodyear Dunlop Tires N. Am. Ltd.*,
   No. 11-CV-761S, 2018 WL 4658721 (W.D.N.Y. Sept. 28, 2018) ...............11, 14, 15, 28

*Guardian Life Ins. Co. of Am. v. Andraos*,
   No. CV0705732SJOFMOX, 2009 WL 10674144 (C.D. Cal. Sept. 10, 2009) ..........11, 12

*Hedge v. Walt's Drive-A-Way Serv. Inc.*,
   No. 06-CV-0498, 2008 WL 11508968 (S.D. Ill. Jan. 16, 2008)............................22

*In re Actos® (Pioglitazone) Prod. Liab. Litig.*,
   No. 6:11-MD-2299, 2014 WL 12653759 (W.D. La. Jan. 14, 2014) ......................46

*In re Asbestos Sch. Litig.*,
   46 F.3d 1284 (3d Cir. 1994)............................................................................51

*In re Chocolate Confectionary Antitrust Litig.*,
   801 F.3d 383 (3d Cir. 2015)......................................................................35, 44

*In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*,
   756 F.3d 917 (6th Cir. 2014) ..........................................................................15

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
   888 F.3d 753 (5th Cir. 2018) ...................................................................7, 18, 25

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*,
   No. MDL 3:11-MD-2244-K, 2017 WL 9807464 (N.D. Tex. Sept. 19, 2017) ..........29

*In re: E. I. Du Pont De Nemours & Co. C-8 Pers. Injury Litig.*,
   No. 2:13-CV-170, 2016 WL 659112 (S.D. Ohio Feb. 17, 2016) ..........................54

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007)..................................................................................25, 44

*In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*,
   No. 2:12-CV-4301, 2014 WL 505234 (S.D.W. Va. Feb. 5, 2014)..........................................35

*In re Natl. Prescription Opiate Litig.*,
   406 F. Supp. 3d 672, 675 (N.D. Ohio 2019)...................................................................51

*In re Packaged Ice Antitrust Litig.*,
   723 F. Supp. 2d 987 (E.D. Mich. 2010).......................................................................44

*In re Richardson-Merrell, Inc. Bendectin Prod. Liab. Litig.*,
   624 F. Supp. 1212 (S.D. Ohio 1985), *aff'd sub nom. In re Bendectin Litig.*, 857 F.2d
   290 (6th Cir. 1988)........................................................................................4

*In re Vioxx Prod. Liab. Litig.*,
   No. MDL 1657, 2005 WL 3164254 (E.D. La. Nov. 21, 2005) ..............................................6

*In re Welding Fume Products Liab. Litig.*,
   526 F. Supp. 2d 775 (N.D. Ohio 2007).......................................................................51

*Indiana Ins. Co. v. Gen. Elec. Co.*,
   326 F. Supp. 2d 844 (N.D. Ohio 2004).................................................................. passim

*Infinity Prod., Inc. v. Premier Plastics, LLC*,
   No. CIV.00-36, 2001 WL 1631423 (D. Minn. Aug. 20, 2001) .............................................11

*John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau*,
   195 F. Supp. 3d 9, 19 (D.D.C. 2016).......................................................................20, 21

*Johnson v. Land O' Lakes, Inc.*,
   181 F.R.D. 388 (N.D. Iowa 1998) ..........................................................................26

*Jordan v. John Soliday Fin. Group, LLC*,
   1:09CV0707, 2010 WL 4281807 (N.D. Ohio Oct. 20, 2010) .......................................1, 2, 3, 5

*Keys v. Washington Metro. Area Transit Auth.*,
   272 F.R.D. 243 (D.D.C. 2011), *aff'd*, 523 F. App'x 727 (D.C. Cir. 2013) .............................20

*King v. Lowe's HIW, Inc.*,
   No. CV-03-146-BLG-RFC, 2006 WL 8435705 (D. Mont. Apr. 20, 2006) .................................12

*Knight v. Boehringer Ingelheim Pharm., Inc.*,
   323 F. Supp. 3d 837 (S.D.W. Va. 2018).....................................................................46

*Kuhne v. Reynolds*,
   No. 3:01CV1090 (WWE), 2019 WL 959678 (D. Conn. Feb. 27, 2019)..................................7

*Lindsay v. Yates*,
  578 F.3d 407 (6th Cir. 2009) ........................................................29

*Louzon v. Ford Motor Co.*,
  718 F.3d 556 (6th Cir. 2013) ...................................................3, 46

*Lucijanic v. Ball*,
  No. 2:04-CV-751, 2006 WL 8442257 (S.D. Ohio Aug. 30, 2006) ................................43, 44

*Lupescu v. Napolitano*,
  No. 07 C 4821, 2011 WL 1342996 (N.D. Ill. Apr. 6, 2011)......................................4

*Manko v. United States*,
  87 F.3d 50 (2d Cir. 1996).............................................................29

*Mascarenas v. Cooper Tire & Rubber Co.*,
  No. CV208-009, 2010 WL 11534359 (S.D. Ga. Jan. 11, 2010)..........................9, 43

*McLeod v. Parsons Corp.*,
  73 F. App'x 846 (6th Cir. 2003)......................................................25

*Michael v. Caterpillar Fin. Servs. Corp.*,
  496 F.3d 584 (6th Cir. 2007) .........................................................23

*Morningstar v. Circleville Fire & EMS Dept.*,
  2:15-CV-3077, 2018 WL 3721077 (S.D. Ohio Aug. 6, 2018) .............................1, 3

*Mut. Pharm. Co. v. Bartlett*,
  570 U.S. 472 (2013)..........................................................15, 16, 17

*N. A. A. C. P. v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982).............................................................51, 52

*Niles v. Owensboro Med. Health Sys., Inc.*,
  No. 4:09-CV-00061-JHM, 2011 WL 3205369 (W.D. Ky. July 27, 2011)..........................4, 5

*Nuutinen v. CBS Corp.*,
  No. 97-C-678, 2015 WL 3645899 (E.D. Wis. June 9, 2015) .............................9, 27

*Nwegbo v. Borough*,
  No. 12-CV-05063, 2013 WL 3463504 (E.D. Pa. July 10, 2013)...........................26

*Opdyke Inv. Co. v. City of Detroit*,
  883 F.2d 1265 (6th Cir. 1989) .......................................................52

*Palmer v. Bd. of Regents of Univ. Sys. of Ga.*,
  208 F.3d 969 (11th Cir. 2000) .......................................................26

*Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*,
No. 2:08-CV-12247, 2010 WL 848689 (E.D. Mich. Mar. 8, 2010) ........................................20

*Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*,
No. 2:08-CV-12247, 2010 WL 987772 (E.D. Mich. Mar. 12, 2010) ...............................23, 28

*Pearson v. Illinois Cent. R.R.*,
No. 06-CV-0822-DRH, 2008 WL 905915 (S.D. Ill. Mar. 28, 2008) ....................................12

*Reeder v. Cty. of Wayne*,
No. 15-CV-10177, 2016 WL 3548217 (E.D. Mich. June 30, 2016) ......................................25

*Regalado v. City of Chicago*,
No. 96 C 3634, 1998 WL 919712 (N.D. Ill. Dec. 30, 1998) ..................................................14

*Riley v. Ford Motor Co.*,
No. 2:09-CV-148, 2011 WL 3273592 (S.D. Miss. July 29, 2011).......................................8, 9

*Robinson v. Runyon*,
149 F.3d 507 (6th Cir. 1998) ............................................................................................2, 5

*Ross v. Am. Red Cross*,
No. 2:09-CV-00905-GLF, 2012 WL 2004810 (S.D. Ohio June 5, 2012), *aff'd,* 567 F.
App'x 296 (6th Cir. 2014) ..............................................................................................25, 29

*Ruffalo's Truck. Serv. v. Nat'l Ben-Franklin Ins. Co.*,
243 F.2d 949 (2d Cir. 1957).................................................................................................19

*Salinero v. Johnson & Johnson*,
No. 1:18-CV-23643-UU, 2019 WL 7753445 (S.D. Fla. Sept. 25, 2019) ..............................35

*Schram v. Schwan's Sales Enterprises, Inc.*,
No. C-1-02-241, 2006 WL 8442815 (S.D. Ohio Sept. 1, 2006)...........................................24

*Securities and Exch. Commn. v. Jacobs*,
1:13 CV 1289, 2014 WL 12597832 (N.D. Ohio Feb. 25, 2014) .............................................3

*Smith v. Pfizer Inc.*,
714 F. Supp. 2d 845 (M.D. Tenn. 2010)...................................................................24, 25, 46

*Smith Wholesale Co., Inc. v. R. J. Reynolds Tobacco Co.*,
No. 2:03-CV-30, 2005 WL 8162569 (E.D. Tenn. Feb. 23, 2005)....................................10, 11

*Spencer v. McDonald*,
705 F. App'x 386 (6th Cir. 2017)..........................................................................................19

*Sperberg v. Goodyear Tire & Rubber Co.*,
519 F.2d 708 (6th Cir. 1975) .................................................................................................1

*St.-Gobain Autover USA, Inc. v. Xinyi Glass N.A., Inc.*,
  1:06CV2781, 2009 WL 10689369 (N.D. Ohio Oct. 23, 2009) ...........................................1, 2

*Stern v. Shouldice*,
  706 F.2d 742 (6th Cir. 1983) ...........................................................................................13, 43

*Strayhorn v. Wyeth Pharm., Inc.*,
  737 F.3d 378 (6th Cir. 2013) ...........................................................................................15, 16

*Surface v. Conklin*,
  No. 1:15-CV-40, 2018 WL 6257984 (S.D. Ohio Nov. 30, 2018) ...........................................54

*Turner v. City of Taylor*,
  412 F.3d 629 (6th Cir. 2005) ...........................................................................................27

*TVT Records v. Island Def Jam Music Grp.*,
  250 F. Supp. 2d 341 (S.D.N.Y. 2003)...........................................................................19, 20

*U.S. Football League v. Natl. Football League*,
  634 F. Supp. 1155 (S.D.N.Y. 1986)...........................................................................51

*U.S. Football League v. Natl. Football League*,
  842 F.2d 1335 (2d Cir. 1988)...........................................................................51

*U.S. v. Sanon*,
  738 Fed. Appx. 655 (11th Cir. 2018)...........................................................................23

*United States ex rel. George v. Fresenius Med. Care Holdings, Inc.*,
  No. 2:12-CV-00877-AKK, 2016 WL 5361666 (N.D. Ala. Sept. 26, 2016)...........................46

*United States v. Akers*,
  No. 7:19-CR-7-REW-EBA, 2019 WL 4934948 (E.D. Ky. Oct. 7, 2019) ...................... passim

*United States v. Ayers*,
  924 F.2d 1468 (9th Cir. 1991) ...........................................................................................32

*United States v. Bozeman*,
  No. 3:11-CR-129, 2012 WL 1071207 (E.D. Tenn. Mar. 29, 2012) ......................................43

*United States v. Chance*,
  306 F.3d 356 (6th Cir. 2002) ...........................................................................................19

*United States v. Emuegbunam*,
  268 F.3d 377 (6th Cir. 2001) ...........................................................................................4, 8

*United States v. Franks*,
  511 F.2d 25 (6th Cir. 1975) ...........................................................................................32

*United States v. Garza*,
    608 F.2d 659 (5th Cir. 1979) .................................................................................14

*United States v. Goffer*,
    721 F.3d 113 (2d Cir. 2013)..................................................................................32

*United States v. Hadaway*,
    681 F.2d 214 (4th Cir. 1982) ...............................................................................32

*United States v. Hathaway*,
    798 F.2d 902 (6th Cir. 1986) ...............................................................................23

*United States v. Heine*,
    No. 3:15-CR-238-SI, 2017 WL 4423408 (D. Or. Oct. 5, 2017).......................15, 21

*United States v. Holbrook*,
    34 F.3d 1068, 1994 WL 419585 (6th Cir. 1994) .................................................23

*United States v. Johnson*,
    27 F.3d 1186 (6th Cir. 1994) ...............................................................................43

*United States v. Johnson*,
    71 F.3d 539 (6th Cir. 1995) .................................................................................23

*United States v. Mancuso*,
    444 F.2d 691 (5th Cir. 1971) ...............................................................................32

*United States v. Merriweather*,
    78 F.3d 1070 (6th Cir. 1996) ..........................................................................42, 43

*United States v. Poulsen*,
    655 F.3d 492 (6th Cir. 2011) ...............................................................................43

*United States v. Segal*,
    649 F.2d 599 (8th Cir. 1981) ...............................................................................14

*United States v. Semak*,
    536 F.2d 1142 (6th Cir. 1976) .............................................................................43

*United States v. Shannon*,
    766 F.3d 346 .........................................................................................................44

*United States v. Solivan*,
    937 F.2d 1146 (6th Cir. 1991) .............................................................................13

*United States v. Thomas*,
    593 F.3d 752 (8th Cir. 2010) ...............................................................................32

ix

*United States v. Ward*,
190 F.3d 483 (6th Cir. 1999) ...................................................43

*Utts v. Bristol-Myers Squibb Co.*,
226 F. Supp. 3d 166, 178 (S.D.N.Y. 2016)...........................................15

*Weit v. Contl. Illinois Nat. Bank and Tr. Co. of Chicago*,
641 F.2d 457 (7th Cir. 1981) ...................................................51

*Whitfield v. Harris*,
474 F. Supp. 2d 822 (N.D. Miss. 2007).............................................5

*Williams v. City of Lansing*,
No. 1:10-CV-1028, 2011 WL 5553782 (W.D. Mich. Nov. 15, 2011) ............................27, 28

*Worldwide Basketball & Sports Tours, Inc. v. Nat'l Collegiate Athletic Ass'n*,
No. 2:00-CV-1439, 2003 WL 21750835 (S.D. Ohio July 11, 2003).......................................44

*Yates v. Ortho-McNeil-Janssen Pharm., Inc.*,
808 F.3d 281 (6th Cir. 2015) ...................................................15, 16

**STATUTES**

21 U.S.C. § 822(b) ...................................................17

**OTHER AUTHORITIES**

1 CV Ohio Jury Instructions 305.03 ...................................................4

3 Fishman & McKenna, Jones on Evidence § 17:34 (7th ed.) ...................................................20

"At height of crisis, Walgreens handled nearly one in five of the most addictive opioids,"
*The Washington Post*, Nov. 9, 2019, *available at*
https://www.washingtonpost.com/investigations/2019/11/07/height-crisis-walgreens-
handled-nearly-one-five-most-addictive-opioids/...................................................37

FED. R. EVID. 401 ...................................................1, 2

FED. R. EVID. 402 ...................................................1

FED. R. EVID. 403 ...................................................passim

FED. R. EVID. 404 ...................................................18, 42, 43

FED. R. EVID. 408 ...................................................28, 29

FED. R. EVID. 608 ...................................................6, 7

FED. R. EVID. 801 ...................................................22, 23

FED. R. EVID. 803 ............................................................................................................23

FED. R. EVID. 804 ............................................................................................................23

FED. R. EVID. 807 ............................................................................................................23

*Masters Pharmaceuticals, Inc. v. U.S. Drug Enforcement Admin.*,
   2016 WL 1321983 (D.C. Cir. April 4, 2016) .......................................................24

RESTATEMENT (SECOND) OF TORTS § 825     51

## INTRODUCTION

Plaintiffs submit this omnibus response to the Pharmacy Defendants' motions *in limine* nos. 1-10 (Doc. #3413-3418, #3420-3421, #3425-2426) and Rite Aid's motion *in limine* (Doc. #3423).  This omnibus response is designed to reduce the documents on this Court's docket and promote brevity.

As set forth below, Plaintiffs agree to several of the Pharmacy Defendants' MILs in part.  The remaining MILs proposed by the Pharmacy Defendants should be denied.  Their legal and factual arguments in support of exclusion are without merit.  Many of the cases they cite do not even address motions *in limine* or evidentiary issues, and those that do are easily distinguishable.  The Pharmacy Defendants do not come close to satisfying their burden to demonstrate that the evidence sought to be excluded is clearly inadmissible on all grounds.  And most of their MILs are overly broad and vague.  Accordingly, these MILs should be denied and any evidentiary ruling should be deferred until trial so that questions of relevancy and potential prejudice may be resolved in proper context.

## LEGAL STANDARD

The Sixth Circuit states: "Orders in limine which exclude broad categories of evidence should rarely be employed.  A better practice is to deal with questions of admissibility of evidence as they arise."  *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).[1]  Thus, the Court "has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds."  *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).[2]  Relevant evidence is generally admissible.  FED. R. EVID. 402.  "Evidence is relevant if: (a) it has **any** tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  FED. R. EVID. 401

---

[1] *See also Morningstar v. Circleville Fire & EMS Dept.*, 2:15-CV-3077, 2018 WL 3721077, at *1 (S.D. Ohio Aug. 6, 2018) (same).

[2] *See also Jordan v. John Soliday Fin. Group, LLC*, 1:09CV0707, 2010 WL 4281807, at *1 (N.D. Ohio Oct. 20, 2010) (same); *St.-Gobain Autover USA, Inc. v. Xinyi Glass N.A., Inc.*, 1:06CV2781, 2009 WL 10689369, at *1 (N.D. Ohio Oct. 23, 2009).

(emphasis added).  This is an "'extremely liberal'" standard.  *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (citation omitted).

Courts may exclude relevant evidence, however, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.  To be excluded on prejudice grounds, the evidence cannot just be prejudicial; it must be **unfairly** prejudicial.  *Robinson v. Runyon*, 149 F.3d 507, 514 (6th Cir. 1998).  "'Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis.'"  *Id.* at 515 (citation omitted).  Even when the evidence is "shaky," "'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking' such evidence, not exclusion."  *Id.* (citation omitted).

The moving party bears the burden of demonstrating that the evidence sought to be excluded is clearly inadmissible on all potential grounds.  *See Jordan*, 2010 WL 4281807, at *1 ("'A court will generally not grant a motion in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible.'") (citation omitted).  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Indiana Ins.*, 326 F. Supp. 2d at 846.[3]  The Court has broad discretion in determining whether to grant or deny a motion *in limine*.  *St.-Gobain*, 2009 WL 10689369, at *1 ("Ultimately, the determination whether to grant or deny a motion in limine is within the sound discretion of the trial court.").

Moreover, motions *in limine* are meant to address evidentiary issues; they should not be

---

[3] *See also Jordan*, 2010 WL 4281807, at *1 ("If this burden is not met, evidentiary rulings should be deferred and resolved in the context of the trial."); *St.-Gobain*, 2009 WL 10689369, at *1 ("If the court is unable to determine whether or not certain evidence is clearly inadmissible, it should defer ruling until trial so that questions of foundation, relevancy, and potential prejudice can be evaluated in the proper context.").

used to resolve non-evidentiary factual or legal disputes.  As the Sixth Circuit explained:

> [A] mechanism already exists in civil actions to resolve non-evidentiary matters prior to trial—the summary-judgment motion.  Allowing a party to litigate matters that have been or should have been resolved at an earlier stage not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment.

*Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013).  Thus, when a motion *in limine* "is no more than a rephrased summary-judgment motion, the motion should not be considered.  *Id*. at 563.  *See also Morningstar*, 2018 WL 3721077, at *7 (same).

The fact that the Court denies a motion *in limine* "does not necessarily mean that all evidence contemplated by the motion will be admitted at trial."  *Indiana Ins.*, 326 F. Supp. 2d at 846.[4]  It simply means that "without the context of trial, the [C]ourt is unable to determine whether the evidence in question should be excluded."  *Indiana Ins.*, 326 F. Supp. 2d at 846.[5]  The movant may still raise objections to the introduction of the evidence during the trial.[6]

## ARGUMENT

A.  **PLAINTIFFS' RESPONSE TO PHARMACY DEFENDANTS' JOINT MOTIONS *IN LIMINE*.**

1.  <u>**Pharmacy Defendants' MIL No. 1**</u>**: To preclude evidence, argument or comments regarding: 1) the military service, employment, religious affiliation or personal experiences of counsel and staff, and 2) the waiving or donation of attorney's or expert fees, or any portion of any recovery, to charity or for the benefit of the community.  (Doc. #3413)**

In their MIL No. 1, the Pharmacy Defendants seek to preclude evidence, testimony or argument, or comment upon: (i) "their counsel's or staff's military experience, employment, religious affiliation or personal experiences;" and (ii) "the waiving or donation of attorney's fees

---

[4]    *See also Securities and Exch. Commn. v. Jacobs*, 1:13 CV 1289, 2014 WL 12597832, at *2 (N.D. Ohio Feb. 25, 2014); *Jordan*, 2010 WL 4281807, at *1.

[5]    *See also Securities*, 2014 WL 12597832, at *2 ("Where a court denies a motion *in limine*, it is, in essence, a finding that the court cannot determine whether it can exclude the evidence without the context of trial."); *Jordan*, 2010 WL 4281807, at *1.

[6]    *Indiana Ins.*, 326 F. Supp. 2d at 846 ("The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine."); *Jordan*, 2010 WL 4281807, at *1 (same).

or expert fees, or any portion of any recovery, to charity or for the benefit of the community." Doc. #3413 at p. 1. They claim such evidence is irrelevant and prejudicial. *Id.*

>   i.   *Military Service, Employment, Religious Affiliation or Personal Experiences of Counsel and Staff*

Although Plaintiffs previously stipulated to an MIL precluding reference to the military service, employment, religious affiliation or personal experiences of counsel and staff, upon reconsideration Plaintiffs believe this MIL is overly broad and may unduly restrain counsel's presentation at trial. As a preliminary matter, what an attorney says is not evidence, and the jury will be instructed accordingly. *See, e.g.,* 1 CV Ohio Jury Instructions 305.03; *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001) (noting that instructing the jury that the lawyers' arguments were not evidence "generally cure[s] any improprieties in a closing argument"). Counsel should be given some leeway to use personal stories or anecdotes to connect with the jury and make their arguments relatable. *See, e.g., In re Richardson-Merrell, Inc. Bendectin Prod. Liab. Litig.*, 624 F. Supp. 1212, 1226 (S.D. Ohio 1985) (court did not err by allowing defense counsel to relate his medical school experience during argument; "Final argument has traditionally been just that—argument—an opportunity for counsel to persuade, cajole or convince jurors. Plaintiffs' counsel were not limited in any anecdotes that they told. Plaintiffs' counsel were not limited as to any experience that they might bring to the Courtroom. A defense counsel, in seeking to persuade the jury, should be given the same entitlement."), *aff'd sub nom. In re Bendectin Litig.*, 857 F.2d 290 (6th Cir. 1988); *Niles v. Owensboro Med. Health Sys., Inc.*, No. 4:09-CV-00061-JHM, 2011 WL 3205369, at *5 (W.D. Ky. July 27, 2011) ("Generally, courts afford counsel great latitude in making opening and closing argument to the jury. Anecdotes and personal experiences, including those involving counsel's family members, are common place in both opening and closing arguments.").[7]

---

[7]   *See also Lupescu v. Napolitano*, No. 07 C 4821, 2011 WL 1342996, at *6 (N.D. Ill. Apr. 6, 2011) ("The court will not micromanage the parties' arguments via a motion *in limine* ruling[.]"); *Francois v. Colonial Freight Sys., Inc.*, No. CIV.A.3:06CV434WHB-L, 2007 WL 4564866, at *8 (S.D. Miss. Dec. 21, 2007) (denying without prejudice motion to prevent plaintiffs' counsel from including

The Pharmacy Defendants seem particularly concerned with the possibility that Mr. Lanier will mention his position as a Baptist pastor and preacher.  Doc. #3413 at p. 2.  But the case they cite in support of their argument simply prohibited counsel from referring to

> the religious beliefs or affiliations of any party or counsel **in such a manner as can reasonably be construed to indicate that the jury should consider the religious beliefs or affiliations of the party**, unless such matters are probative of an issue raised at trial.

*Whitfield v. Harris*, 474 F. Supp. 2d 822, 825 (N.D. Miss. 2007) (emphasis added).  Plaintiffs' counsel has no intention of making any argument of that sort.  Notably, the *Whitfield* court acknowledged that "references to religion are often proper during voir dire" and that "parables, stories or religious aphorisms may be appropriate when used in argument to promote an idea, rather than to unfairly bias or prejudice the jury or counsel."  *Id*. at 824.  *See also Niles*, 2011 WL 3205369, at *5 (denying motion to preclude defense counsel from informing the jury "that his father is a retired Lutheran minister and his mother teaches brain damaged children").

Finally, although the Pharmacy Defendants state, in conclusory fashion, that such arguments or evidence would be "prejudicial" (Doc. #3413 at pp. 1-2), they provide no explanation as to why they would be **unfairly** prejudicial.  *See Robinson*, 149 F.3d at 514 (Rule 403 "prohibits the admission of evidence if there is a danger of unfair prejudice, not mere prejudice").  Thus, they have not satisfied their high burden of demonstrating that the evidence is clearly inadmissible on "unfair prejudice" grounds.  *See Jordan*, 2010 WL 4281807, at *1.  For these reasons, a blanket pretrial ruling is inappropriate.  *Cf.* Doc. #3058 (Evidentiary Order) at pp. 66-67 (denying without prejudice defendants' MIL seeking "to preclude counsel from offering personal opinions or using visual aids or other conduct to belittle or improperly influence witnesses"; "The Court agrees with Plaintiffs that this motion is overly broad and vague and raises matters that can only be properly addressed in the context of trial.  Accordingly, the Court will not make a blanket ruling at this time.  The Court expects all counsel to adhere strictly to the Ohio Rules of Professional

religious references in the arguments made at trial; "'Counsel may draw upon literature, history, science, religion, and philosophy for material for his argument.'") (citation omitted).

Conduct . . . and high standards of courtroom decorum.") (internal citation omitted).

> ii. *Waiving or Donation of Attorney's or Expert Fees, or Any Portion of Any Recovery, to Charity or for the Benefit of the Community*

Similarly, a blanket ruling precluding "any evidence or argument regarding the waiving or donation of attorney's or expert fees, or any portion of any recovery, to charity or community purposes" is not warranted. The Pharmacy Defendants claim such evidence must be excluded because: (i) it is "not relevant[;]" (ii) "any marginal probative value is substantially outweighed by the danger of confusing the issues and/or misleading the jury[;]" and (iii) "such evidence improperly appeals to the personal and community interests of the jury." Doc. #3413 at pp. 2-3.

So long as the Pharmacy Defendants do not attack Plaintiffs' attorneys' fees in front of the jury, Plaintiffs have no intention of referencing any waiver or donation of those fees. However, the remainder of the Pharmacy Defendants' request is overly broad. To the extent any of Plaintiffs' experts are waiving or donating a portion of their fee, Plaintiffs do not intend to offer such evidence during the expert's **direct** examination. However, such evidence may become relevant to the extent the Pharmacy Defendants attempt to portray the expert as a hired gun or biased based on the amount he or she was paid in this case. As this Court previously noted, "issues relating to the direct and indirect compensation received by experts . . . are relevant and fair game for the jury's consideration[.]" Doc. #3058 (Evidentiary Order) at p. 58. Accordingly, the Pharmacy Defendants' MIL No. 1 should be denied to the extent it seeks to preclude evidence of an expert's waiver or donation of his or her fee. *See In re Vioxx Prod. Liab. Litig.*, No. MDL 1657, 2005 WL 3164254, at *1 (E.D. La. Nov. 21, 2005) (reserving ruling on motion *in limine* seeking to preclude "the fact that certain experts chose to donate their fees to charity"; "Contextual. Will have to be dealt with on an issue by issue basis at trial.").

The legal authority upon which the Pharmacy Defendants rely is either inapposite or supports Plaintiffs' position. Rule 608(a) "applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness." FED. R. EVID. 608, Advisory Comm. Notes, 2003 Amendments. Plaintiffs would be introducing such evidence, if at

all, to rebut any claims of expert bias.  *Id.* (noting the "admissibility of extrinsic evidence offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) [is left] to Rules 402 and 403").[8]  Moreover, even if Rule 608(a) applied, Plaintiffs would satisfy its requirements as they would only introduce evidence of the waiver or donation of expert fees, if at all, **after** the expert has been attacked for bias.  FED. R. EVID. 608(a) ("[E]vidence of truthful character is admissible only after the witness's character for truthfulness has been attacked").  Notably, in one of the cases cited by the Pharmacy Defendants, the court indicated that this was a proper use of such evidence.  *See Kuhne v. Reynolds*, No. 3:01CV1090 (WWE), 2019 WL 959678, at *2 (D. Conn. Feb. 27, 2019) (granting motion to exclude evidence that plaintiff's expert donates a portion of his fees "as to direct examination but may allow the evidence if the door is opened on cross examination").  Finally, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753 (5th Cir. 2018), is distinguishable.  In that case, the issue was not whether testimony regarding an expert's donation of fees is admissible in and of itself, but rather whether certain payments made post-trial rendered the experts' testimony that they donated their fees inaccurate.  *Id*. at 792.

The rest of MIL No. 1, seeking exclusion of "evidence or argument regarding the planned use of any portion of any award for charity or community purposes[,]" is overly broad.  Doc. #3413 at p. 3.  Arguably the entirety of any recovery will be used for "community purposes," as it is meant to abate the public nuisance the Pharmacy Defendants created in Plaintiffs' communities. As the only issue to be decided in the upcoming trial is nuisance liability, Plaintiffs do not intend to offer evidence of the costs of abatement.  However, in demonstrating the existence of a public nuisance, Plaintiffs may offer evidence of the impact of the Pharmacy Defendants' conduct on

---

[8]  The Pharmacy Defendants also cite *Cousins v. Bray* in support of their Rule 608(a) argument, but that case is factually distinguishable.  No. 2:03-CV-1071, 2005 WL 8161508, at *3-5 (S.D. Ohio Feb. 28, 2005) (in employment discrimination case, defense counsel repeatedly "questioned Plaintiffs' witnesses so as to deliberately elicit testimony prohibited by the Court and evidentiary rules[,]" including testimony regarding one plaintiff's son's criminal background and another plaintiff's alleged child support arrearage).

community-based programs related to opioids within the Counties.[9]  To the extent the Pharmacy Defendants' MIL No. 1 encompasses such evidence, it should be denied as overbroad.

    2.    **Pharmacy Defendants' MIL No. 2**: To preclude evidence, argument or comments regarding the absence, presence or identity of Defendant's corporate representatives at trial.  (Doc. #3414)

Plaintiffs understand that this Court previously granted the Track 1A defendants' motion *in limine* to preclude any comments regarding the absence of a corporate representative at trial. Doc. #3058 (Evidentiary Order) at pp. 67-68 ("The Court grants Defendants' request to preclude argument or comment about whether a corporate representative does not attend all or part of the trial.  The Court agrees this information is not relevant to the merits of Plaintiffs' claims."). Plaintiffs have preserved their objection to this ruling, for the reasons set forth in their prior motion *in limine* briefing, but have not sought reconsideration.  Doc. #3419 (CT1B Ps' MILs) at p. 9; Doc. #2815 (Ps' CT1A MIL Opp.) at pp. 51-52.

However, the Pharmacy Defendants now seek to expand the Court's ruling to preclude references to the presence or identity of their corporate representatives at trial.  Doc. #3414.  Their sole basis for this expansion is one case cited by the Court in its Evidentiary Order for the proposition that "the presence, absence, or identity of defendant's corporate representative is wholly irrelevant to plaintiffs' claims[.]"  Doc. #3058 at p. 68 n.141 (citing *Riley v. Ford Motor Co.,* No. 2:09-CV-148, 2011 WL 3273592, at *3 (S.D. Miss. July 29, 2011)).  In *Riley*, the defendants asked the court to exclude "any reference to their corporate representatives."  2011 WL 3273592, at *3.  The plaintiffs appear to have only contested the portion of this motion *in limine* that would have precluded them from commenting on the absence of the defendants' corporate

---

    [9]    Such evidence cannot be construed as an "improper" appeal to the personal or community interests of the jury.  The case cited by the Pharmacy Defendants (*Emuegbunam*) is not only factually distinguishable, but in that case the Sixth Circuit ultimately held that the prosecutors' arguments did not rise to the level of inciting the passions or prejudices of the jury.  268 F.3d at 406-07 (prosecutor's closing argument in defendant's drug trial which extolled the virtues of the American criminal justice system and his rebuttal remarks referring to defendant, a Nigerian citizen, exchanging Nigerian currency in Canada for U.S. currency did not appeal to jury's nationalism).

representatives at trial. *Id.* The court granted the defendants' motion in its entirety, stating that "[t]he presence, absence, or identity of Defendants' corporate representatives is wholly irrelevant to Plaintiffs' claims." *Id.*

Here, unlike in *Riley*, Plaintiffs do contest the portion of this MIL that seeks to preclude references to the presence or identity of the Pharmacy Defendants' corporate representatives at trial because it is vague and overly broad. First, it is unclear whether the request refers to "corporate representatives" in the Rule 30(b)(6) sense, or if it refers to any individual representative of the corporation. Certainly if any party presents the deposition testimony of a Rule 30(b)(6) corporate representative at trial, counsel should be permitted to identify the witness as such so that the jury understands that he or she is testifying on behalf of the corporation itself. And if the MIL is to be interpreted in its broadest sense, any employee or executive of a Pharmacy Defendant that testifies at trial is arguably representing the company. Counsel should certainly be permitted to identify corporate witnesses and the corporations they work for. The Pharmacy Defendants' request is so broad, it arguably precludes their own counsel from introducing the corporate representatives sitting at counsels' table to the jury.

Thus, Pharmacy Defendants' request to prelude reference to the presence or identities of corporate representatives is overbroad and impractical. For these reasons, their MIL No. 2 should be denied. *See, e.g., Nuutinen v. CBS Corp.*, No. 97-C-678, 2015 WL 3645899, at *6 (E.D. Wis. June 9, 2015) (denying in part defendant's motion to preclude reference to the absence or identity of its corporate representative "because plaintiff intends to call a designated witness from Westinghouse"); *Mascarenas v. Cooper Tire & Rubber Co.*, No. CV208-009, 2010 WL 11534359, at *10 (S.D. Ga. Jan. 11, 2010) (denying defendant's motion to preclude reference to the absence and/or identity of its corporate representative).

### 3. <u>Pharmacy Defendants' MIL No. 3</u>: To preclude testimony or argument negatively characterizing Defendants as large corporations. (Doc. #3415)

In their MIL No. 3, the Pharmacy Defendants seek to preclude "argument or testimony referring to or characterizing [the Pharmacy] Defendants as large corporations." Doc. #3415 at

9

p. 2.  Although they claim in a footnote to only be seeking to preclude "improper attempts by Plaintiffs to appeal to jurors' emotions by negatively characterizing Defendants as large corporations" (*id*. at p. 2 n.1), their request is worded much more broadly than that.  Because their MIL is overly broad and vague, it should be denied.

Plaintiffs have no intention of improperly inflaming the jury's emotions or appealing to its biases by negatively characterizing the Pharmacy Defendants as large corporations.[10]  However, evidence of their large size is certainly relevant to various issues in this case.  For example, Walmart is the largest private employer in the United States, with over 1.5 million employees. Yet it assigned only three employees to review orders from its approximately 4,000 Walmart pharmacies nationwide.  Doc. #1956-1 (Abernathy Tr.) at 75:23 − 76:10, 219:12-21.  This evidence demonstrates the insufficiency of Walmart's SOMS program and indicates that its failure to implement effective controls against diversion was intentional.  *Cf.* Doc. #3058 (Evidentiary Order) at p. 59 (agreeing that "information regarding the revenues and profits that Defendants earned from opioid sales is relevant to show . . . Defendants had the resources from their opioid business to design and maintain appropriate SOMS (and thus their failure to do so was by deliberate choice)).  Additionally, pointing out that a Pharmacy Defendant has numerous pharmacies in the Counties to which it distributed opioids is arguably a reference to its size, but it is clearly relevant to determining whether that defendant's distribution conduct constituted a substantial interference with a public right in those Counties.  Just as the Pharmacy Defendants are permitted to "introduce and describe themselves accurately to the jury, including *relevant* information about the people they employ and the work they do" (Doc. #3058 (Evidentiary Order) at p. 68), so to should Plaintiffs be permitted to introduce comparable evidence.[11]  Any objections

---

[10]  Moreover, the jury will not be making any determination as to remedies, so there is no risk of it inflating a damage award based on a defendant's large size.

[11]  Indeed, it should come as no surprise to the jury that Walmart, Walgreens, CVS, and Rite Aid are "large" corporations.  *See Smith Wholesale Co., Inc. v. R. J. Reynolds Tobacco Co.*, No. 2:03-CV-30, 2005 WL 8162569, at *11 (E.D. Tenn. Feb. 23, 2005) ("Hiding the fact that defendant is a 'large' corporation is tantamount to hiding an ostrich in a hen house.").

the Pharmacy Defendants have to this evidence should be deferred until trial when they can be resolved in the proper context. *See Smith Wholesale*, 2005 WL 8162569, at *11 ("[C]ommon sense and the nuances of how the evidence develops at trial will indicate the relevance of the defendant's 'size' depending upon the context.").[12]

The cases cited by the Pharmacy Defendants are factually distinguishable. *See City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756–57 (6th Cir. 1980) (in case seeking recovery for property damage, plaintiff's counsel improperly referenced defendant's large size and sought to convey defendant as a "giant" in the field of marine engineering "**almost continuously**"; "Since the Kiewit name is not, among the general public, synonymous with a 'corporate giant,' as, for example, IBM or General Motors would be, it is unlikely that the jurors would have been aware of defendant's size had [counsel] not strived to so inform them **at every opportunity**.  It was obviously an appeal to passion and prejudice.") (emphasis added);[13] *Guardian Life Ins. Co. of Am. v. Andraos*, No. CV0705732SJOFMOX, 2009 WL 10674144, at *1, 3 (C.D. Cal. Sept. 10, 2009) (in case involving breach-of-contract and other business tort claims, court precluded evidence of plaintiff's wealth and size where defendants provided minimal explanation and cited no authority supporting the relevance of such evidence in that case); *Pearson v. Illinois Cent. R.R.*, No. 06-CV-

_____

[12]  *See also Griffith v. Goodyear Dunlop Tires N. Am. Ltd.*, No. 11-CV-761S, 2018 WL 4658721, at *9 (W.D.N.Y. Sept. 28, 2018) (denying motion to preclude plaintiffs from referencing defendant's size or financial status; "Because this Court cannot make such a determination without knowing the specific evidence, testimony, or argument at issue, it cannot enter a pretrial ruling.  If Defendant has an objection to a specific piece of evidence based on relevance and prejudice, it should raise it at trial."); *Infinity Prod., Inc. v. Premier Plastics, LLC*, No. CIV.00-36 (PAM/JGL), 2001 WL 1631423, at *3 (D. Minn. Aug. 20, 2001) (denying motion to preclude references to company size; "Again, individual determinations of the admissibility of particular references to . . . the relative size of Prodesign and Infinity can be more appropriately made during the trial of this case.").

[13]  In determining a new trial was warranted based on those and other errors, the court noted: "This, as alluded to previously, was not a case of a single, isolated, or inadvertent comment.  Rather, the improprieties permeated the entire trial, from opening statement through closing argument, in 'a continuing pattern of misconduct.'  The remarks 'were persistently made over the recurring and almost constant objection of counsel for the appellant,' and were repeated even though Judge Green sustained the objections and admonished the jury.  Indeed, plaintiff's counsel even persisted after the trial court explicitly reprimanded him for his misconduct.  The cumulative effect of counsel's remarks undoubtedly served to leave the intended, indelible impression upon the minds of the jurors."  *Id.* at 758 (internal citations omitted)

0822-DRH, 2008 WL 905915, at *1 (S.D. Ill. Mar. 28, 2008) (in personal injury action, court granted defendant's **unopposed** motion *in limine* to preclude "any reference to the Defendant being a large corporation or the difference in the status of Plaintiff as an individual and this Defendant as a corporation[,]" noting "[t]his evidence is irrelevant and immaterial"); *King v. Lowe's HIW, Inc.*, No. CV-03-146-BLG-RFC, 2006 WL 8435705, at *1 (D. Mont. Apr. 20, 2006) (precluding plaintiff from offering evidence or attempting to characterize defendant as a "large" company, noting such evidence "has no probative value" to his wrongful discharge and wage claims against his former employer).

The Pharmacy Defendants certainly have not demonstrated all evidence of their large size is "clearly inadmissible on all potential grounds." *Indiana Ins.*, 326 F. Supp. 2d at 846. Accordingly, the Pharmacy Defendants' MIL No. 3 should be denied.

4. **Pharmacy Defendants' MIL No. 4: To preclude evidence, argument, and testimony comparing Defendants' conduct to wars, national tragedies, terrorist attacks, the tobacco industry, or any comparison of Defendants to such actors.  (Doc. #3416)**

In their MIL No. 4, the Pharmacy Defendants seek to preclude

> any testimony or argument during any phase of the trial . . . comparing Defendants' conduct or the alleged consequences of it to wars, national tragedies, terrorist attacks, the tobacco industry or other corporate scandals (e.g. Exxon Valdez, Enron, Tyco, British Petroleum, Ford Motor Company, Toyota, etc.), or any actors that participate in that other conduct (*i.e.* terrorists, instigators of national tragedies, tobacco companies or executives, etc.).

Doc. #3416 at p. 1.  They argue such testimony or argument is irrelevant, highly prejudicial, and would have a tendency to inflame jurors' emotions.  *Id.*

The Pharmacy Defendants' request is overly broad.  Plaintiffs have no intention of improperly inflaming the jury with irrelevant comparisons.  However, their MIL would also encompass relevant documents in which opioid distributors made similar comparisons themselves. For example, in a powerpoint presentation entitled "State of Prescription Drug Abuse," McKesson's Vice President of Regulatory Affairs and former DEA employee, Gary Boggs, included imagery of wars, terrorist attacks, and national tragedies.  Doc. #2397-4 (PSJ2 Ex. 137)

at 7199 (planes crashing), 7208 (collapsed building), 7211 (explosion), 7212 (providing "Historical Comparison" to BP oil spill), 7214 (corpses in body bags).  These images illustrate how serious a former DEA employee found the opioid epidemic to be.[14]  This presentation is relevant to a number of issues in this case, including the existence of a nuisance.

The cases cited by the Pharmacy Defendants do not support granting such an overly broad motion *in limine* in this case.  *See United States v. Solivan*, 937 F.2d 1146, 1151-55 (6th Cir. 1991) (in criminal case, prosecutor's appeal to community conscience in context of war on drugs and suggestion that drug problem facing jurors' community would continue if they did not convict defendant constituted reversible error);[15] *Stern v. Shouldice*, 706 F.2d 742, 750 (6th Cir. 1983) (in professor's suit against college based on professor's termination which allegedly resulted from professor's advice that student seek legal counsel about his suspension, trial court did not abuse its discretion in excluding evidence that marijuana was found in the car the student took from college during the episode which gave rise to the student's suspension on ground that it would inflame or confuse the jury); *United States v. Akers*, No. 7:19-CR-7-REW-EBA, 2019 WL 4934948, at *4–5 & n.9 (E.D. Ky. Oct. 7, 2019) (noting that "arguments or evidence intended specifically to inflame the jury or produce an emotional response would be improper and/or inadmissible[,]" but ultimately denying defendant's motion *in limine* to categorically preclude evidence about the effect of prescription drug abuse on individuals or the community; "[W]ithout specific testimony or other evidence before it, the Court cannot make particularized determinations as to ultimate admissibility."); *United States v. Segal*, 649 F.2d 599, 604 (8th Cir. 1981)

---

[14]  Moreover, many of the Pharmacy Defendants worked closely with McKesson on SOM-related issues. *See, e.g.,* Doc. #2182 (PSJ3 Conspiracy MSJ Opp.) at pp. 68-71 (and exhibits cited therein).

[15]  In rendering its decision, the court focused extensively on the heightened standard of conduct required of government prosecutors in criminal cases: "Because the jury will normally place great confidence in the faithful execution of the obligations of a prosecuting attorney, improper insinuations or suggestions are apt to carry more weight against a defendant than such statements by witnesses. . . . 'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *Id*. at 1150-51 (citation omitted).

(prosecutor's explanation in closing argument of decision to grant immunity to particular government witnesses did not constitute expression of personal assurances of their veracity or bolster their credibility by reference to matters outside the record, nor did he improperly express his personal opinion on the merits of the case); *United States v. Garza*, 608 F.2d 659, 662–63 (5th Cir. 1979) (prosecutor's closing argument expressing his view as to the credibility of two government witnesses and implying that the prosecution would not have commenced unless it had already been determined that defendant was guilty amounted to plain error; "It is particularly improper, even pernicious, for the prosecutor to seek to invoke his personal status as the government's attorney or the sanction of the government itself as a basis for conviction. The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says."); *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, No. 210CV1494JCMGWF, 2017 WL 4038858, at *4 & n.5 (D. Nev. Sept. 13, 2017) (granting defendants' motion "to exclude inappropriate arguments of counsel[,]" noting that "the 'limitation' defendants request in essence asks the court to enforce the rules and law governing procedure and evidence at trial").

Because the Pharmacy Defendants have not demonstrated all such comparison evidence is "clearly inadmissible on all potential grounds[,]" their MIL No. 4 should be denied. *Indiana Ins.*, 326 F. Supp. 2d at 846. Any objections they may have to this evidence are more properly raised at trial. *See, e.g., Regalado v. City of Chicago*, No. 96 C 3634, 1998 WL 919712, at *2 (N.D. Ill. Dec. 30, 1998) (denying defendant's motion to preclude reference to current events, noting its unwillingness to muzzle plaintiff's counsel at this early stage; "Again defense counsel have sought to obtain a bar order in advance of trial on a subject that far better lends itself to consideration in the trial environment.").[16]

---

[16] *See also Griffith*, 2018 WL 4658721, at *9 ("In this Court's view, a pretrial order constraining the arguments of counsel is unnecessary. This Court expects all counsel to comport themselves within the applicable rules. If either side has an objection to a specific argument, it should raise it at trial."); *United States v. Heine*, No. 3:15-CR-238-SI, 2017 WL 4423408, at *13 (D. Or. Oct. 5, 2017) (denying motion to preclude government from using "inflammatory language" regarding defendant during jury addresses and witness examinations; "The Court declines to rule on this issue in the abstract. The

5. **Pharmacy Defendants' MIL No. 5**: To preclude evidence or argument that Defendants could have stopped distributing Schedule II controlled substances. (Doc. #3417)

In their MIL No. 5, the Pharmacy Defendants seek to preclude Plaintiffs from offering evidence or argument that their "mere act of distributing opioid medications provides a basis for imposing liability[,]" or that they "could have avoided liability by either choosing never to start distributing opioids or by voluntarily ceasing that distribution." Doc. #3417 at p. 1. They claim that "stop-selling" or "never-start-selling" theories of liability have been rejected by the Supreme Court, the Sixth Circuit, and courts across the country. *Id*. Their arguments are without merit and should be rejected. As a preliminary matter, Plaintiffs do not intend to argue that the Pharmacy Defendants are liable based merely on the fact that they distributed opioids. It is their distribution of opioids **without implementing effective controls against diversion** that forms the basis of their liability in this case.

More importantly, this MIL should be denied because the legal authority upon which the Pharmacy Defendants rely is not applicable here. In **all** the cases cited by the Pharmacy Defendants, the issue was whether the plaintiff's claims were preempted. *See Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 475 (2013); *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 293-300 (6th Cir. 2015); *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 924-29 (6th Cir. 2014); *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 383 (6th Cir. 2013); *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 473 (4th Cir. 2014); *Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166, 178 (S.D.N.Y. 2016); *Brazil v. Janssen Research & Dev. LLC*, 196 F. Supp. 3d 1351, 1364 (N.D. Ga. 2016); *Beswick v. Sun Pharm. Indus., Ltd.*, No. 10-CV-00357A(F), 2018 WL 704399, at *3, 6-7 (W.D.N.Y. Jan. 30, 2018), *report and recommendation adopted,* No. 10-CV-00357A(F), 2018 WL 4858746 (W.D.N.Y. Mar. 30, 2018). Specifically, the Supreme Court and others held that claims that were otherwise preempted under the impossibility-preemption doctrine could not be saved by arguing that there is no conflict between state and federal law

---

parties may raise any specific objection at trial.").

because the defendant could have stopped selling, or never started selling, its defective product:

> The Court of Appeals reasoned that Mutual could escape the impossibility of complying with both its federal- and state-law duties by "choos[ing] not to make [sulindac] at all."  We reject this "stop-selling" rationale **as incompatible with our pre-emption jurisprudence**.  Our pre-emption cases presume that an actor seeking to satisfy both his federal- and state-law obligations is not required to cease acting altogether in order to avoid liability.  Indeed, if the option of ceasing to act **defeated a claim of impossibility**, **impossibility pre-emption** would be "all but meaningless."

*Bartlett*, 570 U.S. at 488 (internal citation omitted) (emphasis added).[17]  The context in which this issue typically arises is when a plaintiff sues a manufacturer of generic drugs for failure to warn or defective design.  Because generic drug manufacturers are not permitted to change the labels or the active ingredients of their drugs, these state law claims are typically preempted, as it is impossible for the generic manufacturer to comply with both federal and state law.  *See, e.g., Bartlett*, 570 U.S. at 477, 480, 483-87; *Yates*, 808 F.3d at 296 ("Important to the preemption findings in *Bartlett* . . . is the fact that generic drug manufacturers are prohibited from making any unilateral changes to the drug's composition or label[.]").[18]  The cases cited by the Pharmacy Defendants simply hold that a plaintiff cannot **overcome preemption** by arguing that the

---

[17]  *See also, e.g., Yates*, 808 F.3d at 296, 300 ("[T]he *Bartlett* Court did not reach the sweeping conclusion that all design defect claims are preempted by federal law, but rather applied the impossibility preemption analysis to the plaintiff's design defect claim regarding a generic drug, and clarified that preemption cannot be avoided if the only way a manufacturer can comply with both federal and state law is to exit the market."; "We reject this never-start rationale for the same reasons the Supreme Court in *Bartlett* rejected the stop-selling rationale[.]"); *Strayhorn*, 737 F.3d at 390 (in *Bartlett*, "the Supreme Court rejected the First Circuit's 'stop-selling' rationale as a basis for finding that the generic manufacturer could comply with both state and federal laws"); *Drager*, 741 F.3d at 476 ("In other words, courts may not avoid preempting a state law by imposing liability on a generic manufacturer for choosing to continue selling its product.").

[18]  This was precisely the context in which this Court granted Teva's motion *in limine* in the Track 1A case.  Doc. #3058 (Evidentiary Order) at p. 50 ("Citing the Court's previous rulings on preemption, Teva seeks to preclude arguments that, with respect to the sale of generic medicines, the Actavis Generic Defendants should have given additional warnings or communications, or should have stopped selling generic opioids.  The Court agrees that preemption applies to any claims that generic manufacturers should have stopped selling opioids or given additional warnings.  Thus, the Court will exclude any evidence or argument that Defendants should have given additional warnings or stopped selling generic opioids.") (internal citations omitted).

defendant could have exited the market or never started selling the drug in the first place.

That is simply not an issue here.  In this case, the Court has already held that Plaintiffs' claims against the Pharmacy Defendants are not preempted.  Doc. #2565 (Preemption MSJ Order) at p. 22.  It was not impossible for the Pharmacy Defendants to comply with both state and federal law, nor have they ever argued as much.[19]  The Pharmacy Defendants point out that 21 U.S.C. § 822(b) authorized them to distribute opioids "so long as they substantially complied with the [CSA] in the process."  Doc. #3417 at p. 3.  No one disputes that.  The point is that the Pharmacy Defendants **did not** comply with the CSA when distributing their opioid products.  There is no preemption issue, and thus, the "logic of Bartlett and its progeny" does not apply.  *Id.*  Significantly, the Pharmacy Defendants fail to cite a single case where a "stop-selling" theory or "never-start-selling" theory was rejected outside the context of preemption.  Accordingly, Plaintiffs should be permitted to argue that if a Pharmacy Defendant was not able to implement effective controls against diversion, it should not have been distributing opioids at all.  For these reasons, the Pharmacy Defendants' MIL No. 5 should be denied.

### 6. __Pharmacy Defendants' MIL No. 6__: **To preclude evidence of civil or criminal investigations or other litigation.  (Doc. #3418)**

In their MIL No. 6, the Pharmacy Defendants seek to preclude "evidence, testimony, or argument related to: (1) civil or criminal investigations involving a Defendant or its employees; (2) other litigation involving a Defendant or its employees; and (3) media coverage or other secondhand accounts of the aforementioned evidence."  Doc. #3418 at p. 1.  Notably, the Pharmacy Defendants do not identify any specific pieces of evidence they seek to preclude.  Their MIL No. 6 seeking blanket preclusion of all investigation- or litigation-related evidence should be denied as overbroad, vague, and premature.

---

[19]  The Pharmacy Defendants never argued impossibility preemption in this case; they have only ever argued obstacle preemption.  Doc. #1772-5 (Pharmacies' Preemption MSJ); Doc. #2565 (Preemption MSJ Order) at p. 22 ("Pharmacy and Distributor Defendants contend the imposition of state tort liability would stand as an obstacle to DEA's ability to regulate and enforce the [CSA].").

The Pharmacy Defendants argue that a "pre-trial, *in limine* ruling on this issue is critical[,]" citing a Fifth Circuit opinion in another case involving one of Plaintiffs' counsel.  Doc. #3418 at pp. 1-2 (citing *DePuy Orthopaedics*, 888 F.3d 753).  In *DePuy Orthpaedics*, the Fifth Circuit granted a new trial based in part on the trial court's admission of a deferred prosecution agreement ("DPA") relating to Foreign Corrupt Practices Act allegations involving certain non-party subsidiaries of the defendant.  *Id.* at 784-86.  The Fifth Circuit held that such evidence was inadmissible under Rule 404(b) because it involved the conduct of non-defendants and products not at issue in the litigation and the jury could have inferred liability based solely on certain admissions by the defendant in the DPA.  *Id.* at 784-86.  Its ruling was fact-specific as to the admissibility of that particular piece of evidence in the context of that particular trial.  *Id.*  The Fifth Circuit's ruling provides no basis for this Court to grant a sweeping motion *in limine* precluding all evidence of investigations or litigation involving the Pharmacy Defendants.

As explained below, certain investigation-related or litigation-related evidence may be highly probative to Plaintiffs' claims.  The Pharmacy Defendants certainly have not demonstrated that all such evidence is "clearly inadmissible on all potential grounds."  *Indiana Ins.*, 326 F. Supp. 2d at 846.  The admissibility of any particular piece of such evidence should be determined at trial "so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."  *Id.*  Accordingly, the Pharmacy Defendants' MIL No. 6 should be denied.

        *i.   Evidence of Investigations Involving Defendants*

In Track 1A, this Court denied in part and granted in part a motion *in limine* filed by the distributor defendants seeking to exclude evidence of criminal investigations and indictments, absent corresponding proof of a final judgment of conviction.  Doc. #3058 at p. 19.  The Court ruled:

> [A]bsent proof of a corresponding final judgment or conviction, the Court will exclude evidence of the *fact* of an indictment or criminal investigation.  However, the Court will allow evidence of criminal *investigative reports*, unless the opponent demonstrates that the source of information or other circumstances indicate a lack of trustworthiness under Rule 803(8).

*Id.*; *see also id.* at pp. 15-17.  Plaintiffs recently noted their partial objection to this ruling in their affirmative motions *in limine*, but did not seek reconsideration of the ruling.  Doc. #3419 (CT1B Ps' MILs) at p. 9.

The Pharmacy Defendants now seek to expand the Court's ruling beyond criminal investigations and indictments to include civil investigations as well.  Doc. #3418 at pp. 2 n.1, 4. Yet they provide no legal authority justifying a blanket preclusion of evidence of all civil investigations.  Presumably their request includes evidence of DEA investigations, yet this Court has already ruled that "it intends to have 'a very wide strike zone for evidence about what the federal government, the DEA and the [FDA] did or did not do in connection with opioid regulation, as this information is an essential part of the story regarding the claims and defenses in this case." Doc. #3058 at pp. 11-12 ("Consistent with this 'very wide strike zone,' the Court will generally admit evidence relating to action or inaction taken by the DEA or other governmental entities, subject to objections of undue prejudice raised in the context of trial.").[20]

The majority of the cases cited by the Pharmacy Defendants involve evidence of **criminal** investigations and indictments.  *See United States v. Chance*, 306 F.3d 356, 382, 385 (6th Cir. 2002) (criminal indictments and prosecutions of other employees of the sheriff's department); *Spencer v. McDonald*, 705 F. App'x 386, 387 (6th Cir. 2017) (unrelated sexual assault investigation); *Ruffalo's Truck. Serv. v. Nat'l Ben-Franklin Ins. Co.*, 243 F.2d 949, 953–54 (2d Cir. 1957) (criminal indictment and conviction); *TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 346–47 (S.D.N.Y. 2003) (criminal investigation); *Fed. Ins. Co. v. Mertz*, No. 12-CV-1597-NSR-JCM, 2016 WL 1572995, at *4 (S.D.N.Y. Apr. 18, 2016) (criminal investigation); *Baxter Health Care Corp. v. Spectramed Inc.*, No. SA CV 89-131 AHSRWRX, 1992 WL 340763,

---

[20]  *See also id.* at pp. 9-10 (denying Schein's MIL to preclude references to DEA fines, investigations or admonitions concerning HIS's opioid distributions to locations other than Summit County), pp. 20-21 (denying McKesson's MIL seeking to preclude evidence about investigation by U.S. House of Representatives Energy and Commerce Committee), p. 22 (denying McKesson's MIL to exclude evidence or argument about allegations contained in letters from the DEA or DOJ; "The Court agrees the letters are relevant to show McKesson's knowledge of the investigation and the statements contained therein.").

at *2–3 (C.D. Cal. Aug. 27, 1992) (criminal indictment); 3 Fishman & McKenna, Jones on Evidence § 17:34 (7th ed.) ("[A] prior arrest or indictment should not be admitted as proof that the defendant committed underlying act . . . . [b]ut such evidence may be admissible for other purposes."). However, not all government investigations implicate the same risks of unfair prejudice as a criminal investigation. *See John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau*, 195 F. Supp. 3d 9, 19 (D.D.C. 2016) ("The disclosure of an ongoing criminal investigation, for example, is more likely to inflict severe reputational damage on the subject than the disclosure of a garden-variety regulatory investigation.").

The few cases they cite dealing with evidence of civil investigations are entirely distinguishable. In *Park W. Galleries, Inc. v. Glob. Fine Art Registry*, the court granted a motion to preclude "evidence regarding **ongoing** criminal or governmental investigations" in a defamation action. No. 2:08-CV-12247, 2010 WL 848689, at *1-2 (E.D. Mich. Mar. 8, 2010) (emphasis added). The court reasoned that where "there is no evidence that any conclusions or findings have been made in any such investigation[,]" admitting such evidence would "require the jury to predict the outcome of the pending investigations." *Id*. at *2. In *Keys v. Washington Metro. Area Transit Auth.*, the court dismissed plaintiff's case after she repeatedly violated the court's evidentiary orders on a number of issues during trial. 272 F.R.D. 243, 244–45 (D.D.C. 2011), *aff'd*, 523 F. App'x 727 (D.C. Cir. 2013). Among her many violations, the plaintiff introduced evidence of the transit authority's Office of Civil Rights (OCR) investigation, which the court had previously deemed irrelevant. *Id*. at 245. Indeed, "[m]ultiple court orders, issued over the course of several years, prohibited [the] plaintiff from introducing such evidence." *Id*. The court never held that all civil investigation evidence is inadmissible in all cases.

In *John Doe*, the issue was whether the plaintiffs' identities should remain under seal in their lawsuit against the Consumer Financial Protection Bureau (CFPB). 195 F. Supp. 3d at 12. The court had sealed this information based on the plaintiffs' argument that "revealing that they were subject to an ongoing CFPB investigation would cause them reputational and economic damage." *Id*. Upon the CFPB's motion for reconsideration, the court determined that this

20

information should remain sealed "while the investigation remains ongoing." *Id*. at 13 (noting that "the subjects of **ongoing** government investigations often have a legitimate interest in ensuring that the existence of **otherwise confidential** government investigations are not publicly disclosed **while they are ongoing**") (emphasis added). The CFPB investigation was otherwise confidential and the plaintiffs had submitted sufficient evidence that public disclosure "would likely cause them debilitating reputational and financial hardship." *Id*. at 19, 21, 23-24 ("This is not to say that this balance cannot—or will not—change over time. If the CFPB were to commence a public enforcement action, for example, the need for confidential treatment would likely recede.").

Finally, in *Heine*, two bank officers (Heine and Yates) were criminally charged with "conspiring to commit bank fraud and making false bank entries, reports, or transactions[.]" 2017 WL 4423408, at *1. Yates moved to preclude Heine from offering evidence of a prior FDIC investigation of the transactions at issue in which the FDIC ultimately issued sanctions against Yates, but not Heine. *Id*. at *7-8, 23. The court granted this motion in part, excluding "any evidence, reference, or argument relating to the FDIC's civil investigation to extent that it seeks to show that the FDIC decided to bring a civil enforcement action against Yates **but not Heine**." *Id*. at *23 (emphasis added). The court deferred its ruling on other evidence relating to the FDIC investigation until trial. *Id*. at *7 ("The Court will wait until trial to rule on objections to specific questions or exhibits."), *23.

Unlike in those cases, here, evidence of certain investigations conducted by the DEA or other government agencies may be highly probative to Plaintiffs' nuisance claims in this case. For example, they can demonstrate the Pharmacy Defendants' knowledge of their noncompliance with the CSA and the resulting diversion that was occurring, and provide context for why they took certain actions with respect to their SOMS programs.[21] This evidence is certainly relevant to the

---

[21] *See, e.g.,* Doc. #2205 (PSJ18 WAG MSJ Opp.) at pp. 6-7 (and exhibits cited therein) (discussing April 2012 DEA investigation of Walgreens and the actions taken by Walgreens as a result of that investigation); Doc. #2208 (PSJ11 CVS MSJ Opp.) at p. 8 (and exhibits cited therein) (discussing 2013 investigation of CVS distribution center); Doc. #2169-30 (Nicastro Tr.) at 65:3 – 78:20 (discussing actions taken by CVS in response to 2010 DEA audit); Doc. #1971-15 (Vernazza Tr.) at 292:2 – 298:24, 300:2 - 351:8 (same); Doc. #1971-8 (Swords Tr.) at 66:21 – 67:19, 91:23 – 92:7, 254:6 – 255:22;

question of whether they intentionally or unlawfully contributed to a public nuisance.  For these reasons, the Pharmacy Defendants' MIL on this issue should be denied as overbroad and premature.  *See, e.g., Hedge v. Walt's Drive-A-Way Serv. Inc.*, No. 06-CV-0498, 2008 WL 11508968, at *4 (S.D. Ill. Jan. 16, 2008) (denying motion to preclude unrelated disciplinary proceedings or investigations involving defendant "as over broad and lacking required specificity" and noting that "the admissibility of this evidence substantially depends upon the facts developed at trial and the laying of an appropriate foundation; thus a ruling at this juncture would be premature"); *Fujisawa Pharm. Co. v. Kapoor*, No. 92 C 5508, 1999 WL 543166, at *12 (N.D. Ill. July 21, 1999) (denying motion to bar evidence of FDA's investigations of plaintiff for regulatory violations where such evidence was relevant to "a central issue in this case").

      *ii.*    *Evidence of Other Litigation Involving Defendants*

The Pharmacy Defendants also seek to preclude Plaintiffs "from offering evidence of or making arguments about other litigation involving Defendants" because it is irrelevant, unduly prejudicial, and constitutes inadmissible hearsay.  Doc. #3418 at pp. 4-6.  This request is both overly broad and premature.

Plaintiffs do not dispute that allegations in other lawsuits are typically considered hearsay. But out-of-court statements only constitute hearsay if they are offered "to prove the truth of the matter asserted in the statement."  FED. R. EVID. 801(c).  They would not be considered hearsay if they were offered for another purpose, such as to provide context to the responses or statements of the recipient, or to prove: (i) the statement was made; (ii) the falsity of the matter asserted; (iii) notice to, or knowledge of, the declarant or recipient of the statement; (iv) motive, intent, bias, or state of mind; or (v) association among persons or entities.[22]  Nor would they constitute hearsay

---

Doc. #1968-2 (Mills Tr.) at 124:9-23.

[22]   *See, e.g., Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 173 n.18 (1988) (rejecting hearsay objection when statement "was offered simply to prove what Rainey had said about the accident six months after it happened, and to contribute to a fuller understanding of the material the defense had already placed in evidence"); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) (rejecting hearsay objection when statements offered to demonstrate state of mind and motive); *United States v.*

if they were statements of a party-opponent pursuant to Rule 801(d)(2).  FED. R. EVID. 801(d)(2).
And even if offered for its truth, hearsay evidence may still be admissible if it falls within one of
the many hearsay exceptions.  FED. R. EVID. 803-804, 807.

"In order to determine if a statement constitutes inadmissible hearsay, facts must be
presented regarding the purpose for which the statement will be introduced and the identity of the
declarant."  *Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*, No. 2:08-CV-12247, 2010
WL 987772, at *1 (E.D. Mich. Mar. 12, 2010) ("*Park II*").  For these reasons, hearsay
determinations are best left for trial, once such statement has been identified and the purpose for
which it is offered has been explained.  *See id.* at *2 ("Here, Plaintiff raises the blanket assertion
that all first party narratives constitute inadmissible hearsay and that no exception to the hearsay
rule applies.  However, Plaintiff has not provided the Court with any of the statements it seeks to
redact, the purposes for which the statements will be introduced, or the identity of any of the
declarants.  Without this information, the Court is unable to evaluate the merits of Plaintiff's
arguments.");  *Akers*, 2019 WL 4934948, at *6 ("[W]ithout context or specific
testimony/statements before it, the Court has insufficient information to conclusively resolve the
raised hearsay questions.").

The Pharmacy Defendants next argue that evidence of other lawsuits should be precluded
as irrelevant.  They claim that "[o]ther lawsuits involving Defendants necessarily involve different
geographic locations, different alleged misconduct, and were brought by different plaintiffs" and,
thus, "say nothing about whether any alleged misconduct occurred in Cuyahoga or Summit

---

*Johnson*, 71 F.3d 539, 543 (6th Cir. 1995) (statement not hearsay when offered as "evidence of
defendant's knowledge that he was prescribing medication without a legitimate medical purpose and
outside the course of professional practice"); *United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir.
1986) ("We therefore join those courts which have concluded that statements offered to prove the falsity
of the matter asserted are not hearsay."); *United States v. Holbrook*, 34 F.3d 1068, 1994 WL 419585,
at *5 (6th Cir. 1994) (evidence "'which is not offered to prove the truth of an out-of-court statement,
but is offered instead for the more limited purpose of providing relevant context or background, is not
considered hearsay.'"); *U.S. v. Sanon*, 738 Fed. Appx. 655, 659 (11th Cir. 2018) ("[T]he government
offered the Google Earth evidence not to prove that Sanon lived at the address marked on the
screenshot, but to show an association between Huang and Sanon.  That was a non-hearsay purpose.").

23

Counties." Doc. #3418 at p. 5. However, as explained in detail below (*infra* at § A.8), evidence of extraterritorial conduct may be relevant to numerous issues in this case. Similarly, evidence of other litigation involving the Pharmacy Defendants (whether in or outside of the Counties) may be relevant to demonstrating their intent, knowledge, motive, or purpose.[23] *Cf. Cohen v. Jaffe Raitt Heuer & Weiss, P.C.*, 768 F. App'x 440, 445–46 (6th Cir. 2019), *reh'g denied* (Apr. 23, 2019) (trial court did not abuse its discretion admitting evidence of separate lawsuit involving plaintiffs where it "had at least some probative value and only questionable prejudicial effect when viewed in light of the other financial evidence in the record suggesting mismanagement at [company]"); *Smith v. Pfizer Inc.*, 714 F. Supp. 2d 845, 855 (M.D. Tenn. 2010) (noting that other lawsuits may be relevant to show notice). Whether a particular piece of evidence is relevant, and whether its probative value is outweighed by the risk of undue prejudice, are context-specific determinations that should be made at trial. *See*, *e.g.*, *Schram v. Schwan's Sales Enterprises, Inc.*, No. C-1-02-241, 2006 WL 8442815, at *2 (S.D. Ohio Sept. 1, 2006) (denying defendant's motion to preclude evidence of other discrimination claims because "this matter is contextual" and defendant "has directed the Court to no specific evidence which it seeks to exclude"); *Smith*, 714 F. Supp. 2d at 855 (denying motion to preclude evidence of other claims or lawsuits because "the specifics of the proposed evidence is unclear—for example, the court does not know the number of lawsuits at issue, the specific subject matter of the suits, or when they were filed"); *Reeder v. Cty. of Wayne*, No. 15-CV-10177, 2016 WL 3548217, at *4 (E.D. Mich. June 30, 2016) (denying motion to preclude evidence of prior litigation involving plaintiff; "Here, there is not sufficient information provided

---

[23] For example, many of the Pharmacy Defendants (through their trade associations) filed an amicus brief in the *Masters Pharmaceuticals* litigation in which they acknowledged their duties to prevent diversion under the CSA and the "public health dangers associated with the diversion and abuse of controlled prescription drugs[.]" *See, e.g., Masters Pharmaceuticals, Inc. v. U.S. Drug Enforcement Admin.,* 2016 WL 1321983, at *3-4 (D.C. Cir. April 4, 2016); Doc. #1963-9 (Kaleta Tr.) at 398:1 – 399:3, 412:14 – 413:19; Doc. #1962-31 (1/23/19 Hiland Tr.) at 152:16 – 153:17. Moreover, evidence of other lawsuits may be relevant to the extent the Pharmacy Defendants were aware of them, discussing them internally or with others, and/or taking action based on such litigation. *See, e.g.,* Doc. #1956-20 (Belli Tr.) at 179:21 – 180:16, 187:20 – 188:3; Doc. #1962-22 (1/31/19 Hart Tr.) at 244:7 – 245:5; Doc. #2169-31 (Novack Tr.) at 393:3 – 394:4; Doc. #1956-16 (Beam Tr.) at 119:18 – 123:18; Doc. #1961-18 (Ducote Tr.) at 126:11-20, 129:7-19.

about the suits for the Court to make a decision as to their relevance to the present suit, or the prejudice they might engender in a jury.").

The cases cited by the Pharmacy Defendants do not support the granting of this sweeping motion *in limine* in the present case.  *See McLeod v. Parsons Corp.*, 73 F. App'x 846, 854 (6th Cir. 2003) (in employment discrimination case, trial court did not err in excluding evidence of other employment discrimination lawsuits filed against employer where it was "not apparent" that such evidence "was relevant, because there was no clear nexus between these lawsuits and this case"); *Ross v. Am. Red Cross*, No. 2:09-CV-00905-GLF, 2012 WL 2004810, at *5–6 (S.D. Ohio June 5, 2012) (in personal injury action, court granted motion to exclude evidence of the filing or content of other lawsuits against defendant where plaintiff failed to explain how such evidence was relevant to her negligence claim; "Unsubstantiated allegations from other individuals, in other cases and under different circumstances, are of minimal probative value in determining whether the Red Cross's alleged negligence proximately caused Plaintiff's injuries in this case."), *aff'd,* 567 F. App'x 296 (6th Cir. 2014); *DePuy Orthopaedics*, 888 F.3d at 787 n.71 (declining to address various evidentiary challenges by defendants, including the admission of evidence regarding other lawsuits involving the defective product, because the case would be remanded for a new trial on other grounds); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 51–52 (2d Cir. 2007) (trial court properly dismissed plaintiffs' antitrust conspiracy claims because plaintiffs failed to provide a sufficient "factual basis for their assertions of a worldwide conspiracy affecting a global market for elevators and maintenance services"; "Allegations of anticompetitive wrongdoing in Europe— **absent any evidence of linkage between such foreign conduct and conduct here**—is merely to suggest (in defendants' words) that 'if it happened there, it could have happened here.'") (emphasis added); *Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 972-73 (11th Cir. 2000) (in religious discrimination action, trial court did not abuse its discretion in precluding plaintiff from offering evidence of other lawsuits filed against defendant for discriminating against Jewish people; plaintiff "sought to introduce such evidence in order to bolster the credibility of her witness, and to prove that the [defendant's] stated reasons for not hiring her were pretextual" but

the complaints "she sought to introduce involved different decision-makers, different departments, and different hiring processes"); *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992) (in discussing Rule 403 generally, the court mentioned as an example that "[e]vidence relating to previous litigation involving the parties" is typically excluded under the Rule; the court also noted that "in determining the probative value under Rule 403, 'we must consider not only the extent to which it tends to demonstrate the proposition which it has been admitted to prove, but also the extent to which that proposition was directly at issue in the case'") (citation omitted); *Johnson v. Land O' Lakes, Inc.*, 181 F.R.D. 388, 390 (N.D. Iowa 1998) (granting plaintiffs' motion to preclude evidence of other "hedge-to-arrive" contract lawsuits where defendant had "no objection to this evidentiary limitation" and court had previously "observed that each HTA case is dependent upon the specific contracts and circumstances involved"); *Nwegbo v. Borough*, No. 12-CV-05063, 2013 WL 3463504, at *2-3 (E.D. Pa. July 10, 2013) (granting motion to preclude evidence of other lawsuits involving defendants, noting that "the relevance of the issues involved in these other actions to determining Plaintiff's claims of malicious prosecution, false arrest, false imprisonment and a First Amendment violation is questionable, at best" and that these other lawsuits were "all in their preliminary stages and have not been decided on their merits"; the court specifically analyzed the four lawsuits at issue and explained why each was not relevant to the case before it).

### iii. *Media Coverage of Investigations or Other Litigation*

Finally, the Pharmacy Defendants argue that Plaintiffs should be precluded from offering evidence of media coverage or other secondhand accounts of other investigations or litigation involving the Pharmacy Defendants. Doc. #3418 at pp. 6-7. They claim such evidence is irrelevant and unduly prejudicial, and constitutes inadmissible hearsay. *Id.* As explained above, hearsay determinations are context-specific and should deferred until trial. *Supra* at § A.6.ii. Similarly, the probative value and risk of prejudice depends on the specific evidence at issue and the purpose for which it is offered. *Id.*; *see also Nuutinen*, 2015 WL 3645899, at *6 (motion to preclude reference to media reports regarding the parties, other cases, or issues with asbestos "[d]enied in

the absence of a more specific proffer of evidence"). For example, a Pharmacy Defendant's awareness or internal discussion of certain media coverage may be relevant to demonstrate its knowledge of diversion or the opioid epidemic generally.[24]

The Pharmacy Defendants' cases are distinguishable, as they all involved the preclusion of media coverage when offered to prove the truth of the matter asserted. *See Turner v. City of Taylor*, 412 F.3d 629, 651–52 (6th Cir. 2005) (in support of his claim against city for engaging in a pattern of permitting or condoning the use of excessive force against prisoners at city jail, detainee offered on summary judgment a newspaper article that referred to unidentified individuals who were allegedly treated poorly at the jail; "[T]he newspaper article contains information about the experiences of anonymous persons, and Plaintiff submitted no other corroborating documentation that the incidents had occurred. Because the newspaper article was inadmissible hearsay and Defendants have not conceded its evidentiary reliability, it could not create a genuine issue of material fact for trial."); *Williams v. City of Lansing*, No. 1:10-CV-1028, 2011 WL 5553782, at *3 (W.D. Mich. Nov. 15, 2011) (in gender discrimination action, newspaper article detailing circumstances of a male employee not being discharged for similar conduct was not competent summary judgment evidence to establish that plaintiff was treated differently than a similarly situated, non-protected employee); *Park II*, 2010 WL 987772, at *3 ("Plaintiff's motion [*in limine*] is GRANTED to the extent newspaper articles and television segments are offered into evidence to prove the truth of the matter asserted, and Plaintiff's motion **is DENIED to the extent such evidence falls within one of the exceptions to the hearsay rule**.") (emphasis added); *Barbo v. Kroger Co.*, No. 3:07-CV-14-S, 2007 WL 2350183, at *1–2 (W.D. Ky. Aug. 13, 2007) (in

---

[24] *See, e.g.,* Doc. #1968-2 (Mills Tr.) at 26:7-14, 218:17-25; Doc. #2169-16 (George Tr.) at 103:4-19, 211:8 – 213:5, 238:20 – 241:11; Doc. #2169-26 (Merritello Tr.) at 74:3 – 75:14; Doc. #1961-21 (Dymon Tr.) at 256:11-15, 260:17-20, 328:4-16; Doc. #2169-11 (Daugherty Tr.) at 75:20 – 76:21, 77:22 – 78:5, 79:5-17, 83:1 – 84:19, 91:9-20, 92:17 – 93:9, 231:1-10, 346:21 – 348:7; Doc. #2169-4 (10/22/18 Barnes Tr.) at 139:15 – 140:2, 162:15 – 168:15, 201:4-21; Doc. #1962-22 (1/31/19 Hart Tr.) at 241:19 – 242:9, 245:6-22; Doc. #2169-31 (Novack Tr.) at 148:5 – 149:8, 213:3-9, 391:14 – 394:4, 400:3-16; Doc. #1956-16 (Beam Tr.) at 119:18 – 125:4, 188:21 – 189:23, 355:21 – 358:17; Doc. #1961-18 (Ducote Tr.) at 127:2-22, 128:9-14; Doc. #1962-31 (1/23/19 Hiland Tr.) at 219:1 – 221:16.

premises liability action, newspaper articles submitted on summary judgment to prove defendant owned and operated the premises were inadmissible hearsay because they were offered "to prove the facts stated therein" and "none of [the hearsay] exceptions apply here"); *Griffith*, 2018 WL 4658721, at \*8 (in product liability action arising out of motorcycle accident, court granted defendant's motion to preclude plaintiffs from introducing evidence pertaining to media coverage of the accident where plaintiffs responded that they were "unaware of any media coverage of the specific accident at issue" and had "no intention of introducing any media-coverage-type evidence").[25]

### 7. **Pharmacy Defendants' MIL No. 7**: To preclude evidence of settlements. (Doc. #3420)

In their MIL No. 7, the Pharmacy Defendants seek to preclude "any evidence of, reference to, or arguments about [civil and administrative] settlements [entered into by certain Defendants] (or consent decrees or fines), and media coverage or other secondhand accounts of the aforementioned evidence at trial." Doc. #3420 at p. 1. They argue such evidence is inadmissible under Rule 408 and there is no basis to introduce it for any other purpose. *Id*. They further argue that such evidence is irrelevant and unduly prejudicial. *Id*. at 3-9.

The Pharmacy Defendants acknowledge that this Court has already rejected these arguments in its Evidentiary Order from Track 1A. *Id*. at pp. 1, 3-4. Specifically, the Court stated:

> Here, Plaintiffs assert that evidence of prior enforcement actions and settlements establish a pattern of conduct that demonstrates: (1) Defendants knew their SOM systems were inadequate and likely to cause harm; and (2) Defendants' conduct was intentional and persisted over a lengthy period of time. The Court agrees this evidence is relevant and permissible and therefore denies these motions.

---

[25] Contrary to the Pharmacy Defendants' parenthetical description of this case, there is no indication the court granted this motion *in limine* "on the basis that such media-coverage evidence is irrelevant, unfairly prejudicial, and constitutes inadmissible hearsay." Doc. #3418 at p. 7 (quoting *Griffith*, 2018 WL 4658721, at \*8). The quoted language describes the arguments **the defendant made** as to why such evidence should be excluded. *Griffith*, 2018 WL 4658721, at \*8. However, it appears that the court granted this motion because the plaintiffs indicated they had no intention of introducing such evidence. *Id.* ("Plaintiffs respond that they are unaware of any media coverage of the specific accident at issue and they express no intention of introducing any media-coverage type evidence. **Accordingly**, Defendant's motion . . . is granted[.]") (emphasis added)

28

Doc. #3058 (Evidentiary Order) at p. 13; *see also id.* at pp. 12, 14-15.[26]

In their MIL, the Pharmacy Defendants first note their objection to the Court's ruling regarding Rule 408, stating it is "incorrect, and ask[ing] the Court to reconsider." *Id*. at pp. 1, 3. In support of their position, however, the Pharmacy Defendants simply make the same arguments (citing almost all of the same cases)[27] that the Track 1A defendants made. *Compare* Doc. #3420 at pp. 2-3 *with* Doc. #2666 (CT1A Distributors' MILs) at pp. 3-4, Doc. #2648 (CT1A WAG MILs) at p. 5, and Doc. #2668 (CT1A Teva MILs) at pp. 6-7. The Court previously rejected these arguments and the Pharmacy Defendants provide no explanation as to why it should reconsider its ruling with respect to Rule 408.

Similarly, in arguing that settlement evidence is unduly prejudicial under Rule 403, the Pharmacy Defendants repeat the same arguments (citing almost all of the same cases)[28] that the Track 1A defendants made. *Compare* Doc. #3420 at pp. 8-9 *with* Doc. #2666 (CT1A Distributors' MILs) at p. 6, Doc. #2648 (CT1A WAG MILs) at pp. 5-6, and Doc. #2668 (CT1A Teva MILs) at pp. 7-8. The Court implicitly rejected these arguments when it denied the Track 1A defendants'

---

[26]   Moreover, as previously noted, the Court separately ruled that "it intends to have 'a very wide strike zone for evidence about what the federal government, the DEA and the [FDA] did or did not do in connection with opioid regulation, as this information is an essential part of the story regarding the claims and defenses in this case." Doc. #3058 at pp. 11-12.

[27]   The only new cases they cite are *Lindsay v. Yates*, 578 F.3d 407, 416 n.8 (6th Cir. 2009), which merely states the general proposition that Rule 408(a) prohibits "the use of offers to compromise a claim as evidence of liability for that claim[,]" and *Manko v. United States*, 87 F.3d 50, 54 (2d Cir. 1996), which states the general public policy considerations underlying Rule 408. Doc. #3420 at pp. 2-3.

[28]   The only new cases they cite are *Ross*, 2012 WL 2004810, and *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, No. MDL 3:11-MD-2244-K, 2017 WL 9807464 (N.D. Tex. Sept. 19, 2017). In *Ross*, the court granted a motion to preclude evidence of a consent decree involving the defendant because the risk of unfair prejudice and jury confusion substantially outweighed the minimal probative value of such evidence in that particular case. 2012 WL 2004810, at *3-4 ("The existence or nonexistence of the Consent Decree does not inform the key issue of whether the Red Cross was negligent in attempting to draw Plaintiff's blood on September 12, 2008, or in its 'aftercare' following the needlestick injury."). In *Depuy*, the court granted the defendants' motion to preclude evidence of other civil or criminal actions or investigations involving defendant Johnson & Johnson or its non-defendant affiliates, including "any fines, monetary penalties, or disgorgements of any sums of money by Johnson & Johnson or any of its subsidiaries or affiliated entities." 2017 WL 9807464, at *4. The court did not explain the basis for its ruling in its opinion. *Id.*

29

motions *in limine*.  Except as set forth below (*infra* at § A.7.i-v), the Pharmacy Defendants provide no explanation as to any circumstances particular to this case warranting reconsideration.

Finally, the Pharmacy Defendants argue that, regardless of the Court's prior ruling, "certain categories of settlement-related evidence . . . .  which the Court did not consider when making its Track 1-A ruling" should be excluded because they "are patently irrelevant, could not possibly establish notice, and can be excluded wholesale before trial ever begins."  Doc. #3420 at p. 4.  As explained below, their arguments are without merit and should be denied.  *Infra* at § A.7.i-v.  As a preliminary matter, although the Pharmacy Defendants appear to assume the Court denied the Track 1A defendants' MILs solely on the basis that settlement evidence could be relevant to notice, the Court's order is not so limited.  Doc. #3058 at pp. 12-13 (noting that, under Rule 408(b), "the Court may admit this evidence for 'another purpose,' **such as** to show a particular Defendant's knowledge or notice of potential harm") (emphasis added); *see also id.* at p. 13 (agreeing that "evidence of prior enforcement actions and settlements establish a pattern of conduct that demonstrates: (1) Defendants knew their SOM systems where inadequate and likely to cause harm; **and** (2) Defendants' conduct **was intentional and persisted over a lengthy period of time**") (emphasis added).  Thus, notice is not the only purpose for which settlement evidence may be relevant.  *See, e.g., Evans v. Troutman*, 817 F.2d 104, 1987 WL 37221, at *3 (6th Cir. 1987) (trial court did not abuse its discretion in admitting evidence of reinstatement offer because it was relevant to defendants' discriminatory intent"); *Akers*, 2019 WL 4934948, at *2–4 (denying defendant's motion to exclude evidence of Agreed Order entered into between defendant and the Kentucky Board of Medical Licensure because certain "factual and legal stipulations [contained therein] regarding his controlled substance prescribing conduct, patient management and oversight procedures, and record-keeping practices" were highly probative to government's claim that defendant "conspired to distribute opioids outside the scope of his professional practice and not for any legitimate purpose").[29]

---

[29] Specifically, the court held that such evidence: (i) was "exceptionally probative of [defendant's] course of prescribing conduct and patient oversight/management during the relevant period and, consequently,

    i.  *Dollar Amounts of Settlements*

   Plaintiffs agree that the parties should not reference the dollar amount of any settlements. However, Plaintiffs should be permitted to generally reference the size of a settlement (*e.g.*, that the settlement was "substantial," etc.) to rebut any argument the Pharmacy Defendants may make that their violations were minor or immaterial.

    ii.  *Settlements Reached After the Relevant Time Period in this Case*

   The Pharmacy Defendants next argue that evidence of settlements "that were entered into or involve alleged conduct that occurred after the relevant time frame in this dispute are patently irrelevant" because they "could not even arguably have given a party notice, for example, of wrongful conduct, or at least not in any sense that is relevant to the issues the jurors will be asked to decide."  Doc. #3420 at p. 5.  They further argue that any settlement reached by a defendant after it ceased distributing opioids, "by definition, is not relevant to show the defendant's state of mind before that time, when it was still distributing."  *Id*.  The Pharmacy Defendants cite no legal authority in support of their arguments.

   Contrary to the Pharmacy Defendants' assertions, evidence of settlements reached or involving conduct after the relevant time period can be relevant to demonstrating "a pattern of conduct that demonstrates . . . [the Pharmacy] Defendants' conduct was intentional and persisted over a lengthy period of time."  Doc. #3058 (Evidentiary Order) at p. 13.  Courts regularly admit evidence of subsequent acts to demonstrate earlier intent or other issues.  *See United States v. Franks*, 511 F.2d 25, 36 (6th Cir. 1975) (where defendant charged with unlawful interstate transportation of explosives, evidence of later interstate transportation of explosives "was proper

---

   centrally relevant to whether [his] conduct was within usual professional scope and for legitimate medical purposes[;]" (ii) "further illuminate[d] [his] record-keeping practices during the at-issue timeframe and [we]re similarly probative of practice legitimacy[;]" and (iii) "probative of his knowledge and intent and, thus, directly relevant to the criminal charges in this case[,]" given his "entrance into the Agreed Order and adoption of its content—including consulting doctors' characterizations of his practice and prescribing habits, and [his] own concession of statutory/regulatory violations[.]"  *Id*. at *3.  The court further noted that "[t]he admitted statutory violations . . . surely make it more probable that [defendant] engaged in conduct equal to the crimes charged in the Indictment."  *Id*. at *3 n.7.

as showing 'scheme or plan, motive, knowledge, intent, absence of mistake or accident, (or) identity'") (citation omitted); *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir. 1982) ("[S]ubsequent conduct may be highly probative of prior intent.  That one has thought in a particular illegal way over a period of time is evidence that one's thought patterns had already been so developed and were so operating on another previous occasion.").[30]

The Pharmacy Defendants have not demonstrated that all evidence of settlements reached after the relevant time period is "clearly inadmissible on all potential grounds."  *Indiana Ins.*, 326 F. Supp. 2d at 846.  The admissibility of any particular piece of such evidence should be determined at trial "so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."  *Id*.  This portion of the Pharmacy Defendants' MIL should be denied. *See, e.g., Fujisawa*, 1999 WL 543166, at *14 (denying in part plaintiff's motion to preclude reference to certain post-acquisition events because despite such evidence not being relevant to damages, "it might be relevant to other issues"; "At this point, it cannot be said that such evidence 'is clearly inadmissible for any purpose.'") (citation omitted).

iii.    *Settlements Relating to Pharmacies Outside of the Counties*

The Pharmacy Defendants next argue that evidence of settlements related to their dispensing activities outside the Counties should be excluded as "patently irrelevant."  Doc. #3420 at pp. 6-7.  They note that the Court's prior ruling only addressed the admissibility of distribution

---

[30]    *See also United States v. Goffer*, 721 F.3d 113, 124 (2d Cir. 2013) ("Subsequent acts are frequently probative as to intent."); *United States v. Thomas*, 593 F.3d 752, 758-59 (8th Cir. 2010) ("Additionally, the mere subsequency of an act to that charged in an indictment does not on that ground alone make it incompetent to establish intent or motive. . . .  Considering the similarities between the crimes charged and the subsequent-acts evidence, we cannot say the mere passage of four years' time renders the evidence irrelevant to show knowledge or intent.") (citations and internal quotation marks omitted); *United States v. Ayers*, 924 F.2d 1468, 1473–74 (9th Cir. 1991) ("We have previously held that 'acts both prior and subsequent to the indictment period may be probative of the defendant's state of mind.' While most of the cases addressing other acts evidence, admitted pursuant to Rule 404(b), involve prior crimes or acts of misconduct, it is clear that evidence of subsequent crimes or acts of misconduct is admissible if it is relevant to an issue at trial.") (internal citation omitted); *United States v. Mancuso*, 444 F.2d 691, 695 (5th Cir. 1971) ("[S]ubsequent acts of a similar nature are admissible as proof of intent as they indicate the intent and motive of appellants during the acts charged in the indictment.").

settlements in a distribution case, "and the Court has not ruled whether dispensing settlements are relevant to distribution claims." *Id*. at p. 6.  They further claim that dispensing settlements do not address the sufficiency of their SOM systems "[a]nd the conduct they do concern is subject to different regulations and different standards of care." *Id*.  Finally, they argue that these dispensing settlements concerned pharmacies outside the Counties, so "their relationship to the distribution issues in this case (i.e., to the alleged suspicious orders placed by pharmacies in Cuyahoga and Summit Counties) is even more attenuated." *Id*.

Each of the Pharmacy Defendants' arguments is without merit and should be rejected. First, some of the settlements at issue involved **both** dispensing and distribution activities.[31]  But even settlements that solely involved dispensing conduct are relevant to Plaintiffs' claims in this case.  Evidence of diversion occurring in their retail pharmacies is certainly relevant to the Pharmacy Defendants' distribution obligations.  *See, e.g.,* Doc. #2816-1 (WAGMDL00049752) at 767 ("DEA regulations require that distributors (i.e.; the Walgreen distribution centers) *must* take reasonable measures to identify its customers, understand the *normal and expected* transactions conducted by those customers, and identify transactions that are *suspicious* in nature.") (emphasis in original).  These settlements show that they knew diversion was occurring from their own retail pharmacies.[32]  They also refute the Pharmacy Defendants' repeated defense that they cannot have caused a public nuisance because they did not distribute to unscrupulous pain clinics and pill mills.[33]  To the extent the Pharmacy Defendants intend and are permitted to argue that they relied

---

[31]  *See, e.g.,* Doc. #2213-25 (PSJ11 Ex. 25) at 799-801 (CVS settlement); Doc. #2205-9 (PSJ18 Ex. 9) at PageID #333309-310 (WAG settlement).

[32]  *See, e.g.,* Doc. #2213-25 (PSJ11 Ex. 25); Doc. #2213-24 (PSJ11 Ex. 24); Doc. #2205-9 (PSJ18 Ex. 9); Doc. #3009-11 (PSJ13 Ex. 10) at 003-005 (GE settlement); Doc. #1962-21 (1/30/19 Hart Tr.) at 64:13 – 67:2 (RA settlement); Doc. #1962-22 (1/31/19 Hart Tr.) at 191:7 – 194:20; Doc. #1968-4 (Mitchell Tr.) at 116:17 – 117:12, 118:3-12; Doc. #1968-5 (Mollica Tr.) at 92:8-22, 94:7-24, 99:19 – 101:21, 201:9 – 202:24.

[33]  *See, e.g.,* Doc. #3141-1 (WAG MSJ) at p. 1 ("Unlike wholesale distributors, Walgreens never distributed to any independent pharmacy, internet pharmacy, pain clinic, or 'pill mill.'  That undisputed fact is a big reason why . . . Plaintiffs still have not identified any evidence to establish liability against Walgreens on any of their claims.") (internal citation omitted); Doc. #3118-2 (CVS MSJ) at p. 4 ("CVS only distributed HCPs to its own CVS pharmacies; it did not distribute to rogue internet pharmacies,

on their pharmacies to monitor for suspicious orders (*e.g.*, Doc. #2000-22 (Rafalski Rep.) at p. 25), evidence of the multitude of settlements involving their pharmacies demonstrates that they knew their pharmacies were not monitoring for suspicious orders sufficiently.  Moreover, evidence that some of the Pharmacy Defendants were repeatedly sanctioned by the DEA around the country with respect to their obligations under the CSA is evidence that they had undertaken a deliberate and long-running course of conduct to evade their responsibilities to prevent diversion.[34]  Doc. #3058 (Evidentiary Order) at p. 13 ("Here, Plaintiffs assert that evidence of prior enforcement actions and settlements establish a pattern of conduct that demonstrates: (1) Defendants knew their SOM systems were inadequate and likely to cause harm; and (2) Defendants' conduct was intentional and persisted over a length period of time.  The Court agrees this evidence is relevant and permissible and therefore denies these motions.").  Such evidence also provides context for why the Pharmacy Defendants took certain actions with respect to their SOMS programs or other efforts to prevent diversion.[35]

Contrary to the Pharmacy Defendants' assertions, Plaintiffs are not relying on an "if it happened there, it must be happening here" premise to justify admission of extraterritorial settlements.  As explained in further detail below (*infra* at § A.8), evidence of the Pharmacy Defendants' extraterritorial conduct (including settlements) is probative to a number of material issues in this case.  For these reasons, the cases cited by the Pharmacy Defendants are distinguishable.  *See In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 402–04 (3d Cir. 2015) (in antitrust case, court concluded that plaintiffs had "not adequately linked the Canadian

---

rogue pain clinics, or dispensing practitioners."); Doc. #1864-3 (Walmart MSJ) at pp. 1, 3, 7, 13; Doc. #1888-1 (RA MSJ) at pp. 2, 6; Doc. #1862-1 (DDM MSJ) at p. 1.

[34]  In some of these settlements, a Pharmacy Defendant expressly admitted that it had not complied with its CSA obligations.  *See, e.g.,* Doc. #2205-9 (PSJ18 Ex. 9) at PageID #333309-310; Doc. #2213-25 (PSJ11 Ex. 25) at 798; Doc. #2182 (PSJ3 Conspiracy MSJ Opp.) at p. 42 n.242 & n.243.

[35]  *See, e.g.,* Doc. #1971-2 (Stahmann Tr.) at 40:16-23 (Walgreens formed pharmaceutical integrity group as part of settlement with DEA); Doc. #1968-2 (Mills Tr.) at 124:15-23; Doc. #1962-21 (1/30/19 Hart Tr.) at 67:4 – 68:6; Doc. #1968-4 (Mitchell Tr.) at 127:19 – 131:11; Doc. #1968-5 (Mollica Tr.) at 105:24 – 107:4, 204:12 – 207:6; Doc. #1962-30 (1/22/19 Hiland Tr.) at 73:18 – 79:5.

conspiracy to the purported U.S. conspiracy to justify using the former to support an inference of the latter"); *Salinero v. Johnson & Johnson*, No. 1:18-CV-23643-UU, 2019 WL 7753445, at *2-3 (S.D. Fla. Sept. 25, 2019) (in product liability action, evidence that certain products or conduct of non-defendant affiliates "have been the subject of fines, consent decrees, recalls, and misdemeanor guilty pleas" would be excluded as irrelevant; however, court also noted that plaintiffs "may introduce any relevant admissions made by [defendant] in other lawsuits, claims, or investigations, to the extent the admissions would be admissible, including under Rules 801or 803"); *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:12-CV-4301, 2014 WL 505234, at *4 (S.D.W. Va. Feb. 5, 2014) (declining to admit evidence of unrelated settlements or fines with government agencies "because it is clearly irrelevant").

The Pharmacy Defendants reference one extraterritorial settlement in their motion: "CVS's Florida settlement concern[ing] the dispensing conduct of two particular pharmacies in one Florida town." Doc. #3420 at p. 7. They do not attach or cite to the specific settlement, nor do they even identify the date of the settlement. *Id.* Plaintiffs presume they are referring to CVS's 2015 settlement with the U.S. Attorney's Office for the Middle District of Florida, acting on behalf of the DEA. Doc. #2213-25 (PSJ11 Ex. 25). But that settlement covered not only CVS's dispensing failures in Florida in 2011, but also the failures of CVS's Florida distribution center in distributing controlled substances to its Florida pharmacies. *Id.* at 799-801; *see also* Doc. #3007-21 (Rafalski Rep.) at p. 26. This settlement agreement, and the 2012 Orders to Show Cause and Immediate Suspension of Registration upon which it is based, demonstrate that CVS knew that diversion of its opioids was occurring and that the DEA had determined that CVS had failed to maintain effective controls against diversion. Doc. #2213-25 (PSJ11 Ex. 25); Doc. #2213-24 (PSJ11 Ex. 24). Moreover, as explained in greater detail below, the fact that the conduct addressed in the settlement occurred outside of the Counties does not negate its relevance in this case. *Infra* at § A.8.[36]

---

[36]  For example, Walgreens' 2013 settlement with the DEA and DOJ related in part to the SOM failures of its Jupiter, Florida distribution center. Doc. #2205-9 (PSJ18 Ex. 9) at PageID #333309-310. That

The Pharmacy Defendants have not demonstrated that all evidence of settlements relating to pharmacies outside the Counties is "clearly inadmissible on all potential grounds." *Indiana Ins.*, 326 F. Supp. 2d at 846.  The admissibility of any particular piece of such evidence should be determined at trial "so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* This portion of the Pharmacy Defendants' MIL should be denied.

### iv.    *Settlements Relating to Corporate Entities Other than Defendants in this Case*

In conclusory fashion, and citing no legal authority, the Pharmacy Defendants next argue that settlements related to corporate entities that are not defendants in this action should be precluded because they "are irrelevant to whether Plaintiffs' allegations against *Defendants* are true." Doc. #3420 at p. 7.  It is not entirely clear, but Plaintiff presume the Pharmacy Defendants are referring to any settlements relating to non-Track 1 defendants (as opposed to any settlements relating to non-Pharmacy Defendants).  Either way, this request should be denied.  Settlements or fines involving other corporate entities may be relevant to the extent the Pharmacy Defendants were aware of them, discussing them internally or with others, and/or taking actions based on such settlements.[37]

The Pharmacy Defendants have not demonstrated that all evidence of settlements involving non-defendants is "clearly inadmissible on all potential grounds."  *Indiana Ins.*, 326 F. Supp. 2d at 846.  The admissibility of any particular piece of such evidence should be determined at trial "so that questions of foundation, relevancy and potential prejudice may be resolved in proper

---

particular distribution center is one of several that distributed opioids into the Counties.  Doc. #2000-22 (Rafalski Rep.) at p. 114.

[37]    *See, e.g.,* Doc. #2169-38 (Schiavo Tr.) at 277:6-22 (CVS discussing DEA investigations and penalties against other distributors and pharmacies); Doc. #1956-20 (Belli Tr.) at 186:11 – 187:18 (RA internally discussing recent DEA fines against other distributors); Doc. #2169-10 (R. Chapman Tr.) at 179:18 – 180:21 (same); Doc. #1962-22 (1/31/19 Hart Tr.) at 241:14 – 244:3 (same); Doc. #2169-31 (Novack Tr.) at 387:5-22, 390:4 – 391:12, 392:20 – 393:2; Doc. #1971-5 (Strang Tr.) at 209:1-13; Doc. #1968-15 (Nameth Tr.) at 331:24 – 334:13; Doc. #1956-1 (Abernathy Tr.) at 243:23 – 245:7; Doc. #1959-20 (G. Chapman Tr.) at 233:1-15, 325:14 – 326:5; Doc. #1961-3 (Coleman Tr.) at 287:13 – 291:13; Doc. #1961-18 (Ducote Tr.) at 125:15 – 126:5, 127:2-22, 129:7-19; Doc. #1962-31 (1/23/19 Hiland Tr.) at 190:25 – 194:13, 203:17 – 206:5, 210:12 – 214:19, 217:21 – 221:16.

context." *Id.* This portion of the Pharmacy Defendants' MIL should be denied.

      *v.*    *Settlements Unrelated to Opioid Medications*

Plaintiffs have no intention of presenting evidence of settlements that are not related to opioid medications.[38] To the extent Plaintiffs believe any such settlement has become relevant based on the evidence adduced at trial, they will seek leave from the Court outside the presence of the jury before offering any such evidence.

**8.**     **Pharmacy Defendants' MIL No. 8: To preclude evidence of extraterritorial conduct without establishing a specific nexus to Cuyahoga or Summit County and a Track 1-B Defendant. (Doc. #3421)**

In their MIL No. 8, the Pharmacy Defendants seek to preclude Plaintiffs from introducing "evidence, testimony, or argument concerning alleged conduct that occurred outside of Cuyahoga and Summit Counties" unless "Plaintiffs first establish—outside the presence of the jury—a foundation showing a specific nexus connecting that extraterritorial conduct to harm suffered by one of the Counties *and* a specific Defendant's distribution conduct." Doc. #3421 at p. 1 (emphasis in original). Notably, the Pharmacy Defendants do not identify any specific pieces of evidence they seek to preclude, although they generally reference evidence of opioid migration from Florida to Ohio. *Id.* at pp. 2-3.

This MIL should be denied because it is overbroad, vague, and premature. The amount of evidence this MIL could potentially encompass would make it highly impractical and inefficient

---

[38] To be clear, a settlement may be related to opioids even if the term "opioids" is not used in the settlement agreement itself. For example, in 2011, Walgreens entered into a settlement with the DEA regarding its dispensing and diversion prevention practices. Doc. #2205-9 (PSJ18 Ex. 9) at PageID #333326-332. The Administrative Memorandum of Agreement references "controlled substances" but not opioids specifically. *Id.* However, as the DEA noted in its investigation, the underlying conduct giving rise to this settlement involved the dispensing of opioids. *See* "At height of crisis, Walgreens handled nearly one in five of the most addictive opioids," *The Washington Post*, Nov. 9, 2019, *available at* https://www.washingtonpost.com/investigations/2019/11/07/height-crisis-walgreens-handled-nearly-one-five-most-addictive-opioids/ (accessed on 9/11/20) ("[A San Diego Walgreens] had dispensed prescriptions to people the pharmacy 'knew or should have known were diverting the controlled substances,' agency enforcement records show. One customer over seven months obtained prescriptions for hydrocodone issued by four Florida physicians—an indication that she was 'doctor-shopping' to procure pain pills, the DEA record shows.").

to enforce at trial.  Indeed, much of the conduct that created a nuisance within the Counties actually occurred outside of the Counties.  For example, the Pharmacy Defendants' corporate policies and procedures regarding suspicious order monitoring typically were created and implemented outside of the Counties.[39]  And often the distribution centers ("DCs") from which they shipped their opioids, and at which they were obligated to monitor suspicious orders, were located outside of the Counties.[40]  Moreover, evidence relating to their knowledge and intent typically involved conduct of the Pharmacy Defendants that occurred outside of the Counties (*e.g.*, communicating with the DEA, enforcement actions, attending conferences, etc.).[41]

Given the sheer breadth of evidence arguably encompassed within this overly broad MIL, granting it would unnecessarily prolong the trial.  Plaintiffs would be forced to request numerous

---

[39]  *See, e.g.,* Doc. #2169-1 (K. Baker Tr.) at 70:13 – 71:5, 72:19-23, 167:24 – 168:4, 218:17-22; Doc. #1959-13 (Burtner Tr.) at 52:4-9; Doc. #2169-30 (Nicastro Tr.) at 154:24 – 155:14; Doc. #2169-3 (Bancroft Tr.) at 118:15-24; Doc. #1959-2 (Bish Tr.) at 34:1 – 37:17; Doc. #1956-1 (Abernathy Tr.) at 14:3-16, 75:23 – 76:10, 219:12-21; Doc. #1956-16 (Beam Tr.) at 62:16-23; Doc. #1956-20 (Belli Tr.) at 16:3 – 17:3, 27:19 – 28:14, 42:20-25, 44:10-15, 99:18-24, 102:11-12, 113:17-22, 173:17-19; Doc. #2169-10 (R. Chapman Tr.) at 43:5-21; Doc. #1959-21 (Chase Tr.) at 47:20-22, 122:9 – 123:5; Doc. #2169-14 (Frost Tr.) at 49:8-18, 62:8-16, 302:7 – 303:2; Doc. #1968-4 (Mitchell Tr.) at 26:10-18, 27:4-22; Doc. #2169-5 (Bianco Tr.) at 102:11 – 103:2; Doc. #1959-18 (Carlson Tr.) at 19:25 – 20:4, 58:17 – 59:1, 199:8-9, 218:16 – 219:4, 252:18 – 253:1; Doc. #1961-20 (Durr Tr.) at 63:4-16, 87:22 – 88:1; Doc. #1962-27 (Heiser Tr.) at 18:15 – 20:8, 28:8-15, 36:16-21, 38:3-11, 53:17-24; Doc. #1971-12 (Tsipakis Tr.) at 99:1-18; Doc. #1959-11 (Briscoe Tr.) at 34:24 – 35:17, 144:6-9, 253:14-18; Doc. #1971-5 (Strang Tr.) at 14:21 – 15:13; Doc. #1968-15 (Nameth Tr.) at 25:10-23, 66:11-13.

[40]  *See, e.g.,* Doc. #2000-22 (Rafalski Rep.) at p. 114 (Walgreens distributed prescription opioids to the Counties from DCs located in: Perrysburg, Ohio; Mt. Vernon, Illinois; Jupiter, Florida; Bethlehem, Pennsylvania; and Orlando, Florida); Doc. #1959-11 (Briscoe Tr.) at 34:24 – 35:17 (DDM's sole DC located in Medina County, Ohio); Doc. #2169-30 (Nicastro Tr.) at 18:8 – 20:12 (CVS pharmacies in Counties supplied by DCs in Pennsylvania and Indiana); Doc. #1956-1 (Abernathy Tr.) at 34:25 – 35:8, 259:8-13 (Walmart pharmacies supplied by DC in Arkansas); Doc. #1956-16 (Beam Tr.) at 320:21-24; Doc. #1959-20 (G. Chapman Tr.) at 71:7-24; Doc. #1956-20 (Belli Tr.) at 22:24 – 23:2 (Rite Aid pharmacies in Ohio serviced by DC in Perryman, Maryland); Doc. #1959-21 (Chase Tr.) at 18:24 – 19:3; Doc. #1961-20 (Durr Tr.) at 62:1-3, 121:24 – 122:4 (HBC warehouse located in Washington, Pennsylvania).

[41]  *See, e.g,* Doc. #2205 (PSJ18 WAG MSJ Opp.) at pp. 4, 6-11 (and exhibits cited therein); Doc. #1956-1 (Abernathy Tr.) at 30:21-23; Doc. #1956-16 (Beam Tr.) at 64:19 – 65:11, 88:7-17, 297:12-17; Doc. #1968-15 (Nameth Tr.) at 356:21 – 357:24; Doc. #1956-20 (Belli Tr.) at 14:14-23, 148:22-24; Doc. #2169-10 (R. Chapman Tr.) at 89:22 – 91:3, 92:23 – 93:7; Doc. #1962-21 (1/30/19 Hart Tr.) at 76:16-23; Doc. #1959-18 (Carlson Tr.) at 47:25 – 48:6; Doc. #1970-8 (Rogos Tr.) at 26:17 – 30:22; Doc. #1959-10 (12/16/18 Bratton Tr.) at 242:11 – 243:23; *see also supra* at §§ A.6-7; *infra* at § A.10.

disruptive and time-consuming hearings or conferences outside the jury's presence every time an evidentiary issue encompassed by this MIL arises. This Court can address the issues sufficiently and much more efficiently at trial without unfairly prejudicing Defendants.

Notably, this Court previously denied similar MILs filed by the Track 1A defendants that were much narrower in scope than the MIL proposed here. Doc. #3058 (Evidentiary Order) at pp. 8-10 (denying: Defendants' MIL No. 6, "seeking to exclude evidence of alleged wrongful shipments to places outside the *Track One* Counties;" Schein's MIL No. 8, "seeking to preclude references to opioid distributions to places outside Summit County;" Schein's MIL No. 9, "seeking to preclude references to DEA fines, investigations, or admonitions concerning HIS's opioid distributions to locations other than Summit County;" and Teva's MIL No. 5, "seeking to exclude evidence of shipments and marketing-related statements directed to areas outside the *Track One* Counties").[42]

In their Motion, the Pharmacy Defendants acknowledge the Court's ruling on the Track 1A defendants' MIL No. 6, but claim that the Court denied that MIL based only on two types of evidence presented in Plaintiffs' response: "evidence concerning prescriptions from or filled at unscrupulous pain clinics or 'pill mills' in Florida that Plaintiffs alleged has 'migrated' to Ohio[;]" and "the expected expert testimony of James Rafalski." Doc. #3421 at p. 2. They argue that such evidence does not apply for the upcoming trial because (i) "Rafalski does not offer *any* opinions about most Track 1-B defendants[,]" and (ii) "evidence involving unscrupulous third-party 'pill mills' and pain clinics in Florida . . . simply does not implicate *the distribution conduct* of *Track 1-B Defendants*" because they "distributed only to themselves, and not to third-party 'pill mills' or pain clinics." *Id*. at pp. 2-3 (emphasis in original).

The Pharmacy Defendants' arguments are without merit. As a preliminary matter, the Court denied the CT1A Defendants' MIL No. 6 because those defendants "provide[d] no valid

---

[42]  Plaintiffs hereby incorporate by reference the arguments set forth in their prior briefing opposing those CT1 MILs as if fully set forth herein. Doc. #2815 (CT1A Ps' MIL Opp.) at pp. 31-34 (and exhibits cited therein).

grounds to exclude evidence of these shipments [to places outside the *Track One* Counties]." Doc. #3058 at p. 9.  Although the Court noted that the Plaintiffs had presented evidence of "Rafalski's expert testimony that Defendants had a 'nationwide' and 'systemic' failure to report suspicious orders and maintain effective controls against diversion, and knew that opioids distributed in Florida were migrating to Ohio[,]" it never stated that these were the only types of evidence that would warrant denial of that MIL.  *Id*.  Rather, in denying multiple MILs on this issue, the Court stated generally:

> [E]vidence of what occurred outside the Track One Counties is generally relevant to Defendants' conduct within the *Track One* Counties, and the damages allegedly caused therein.  For example, the shipment of suspicious orders to locations outside the *Track One* Counties tends to show (and is thus relevant to) whether Defendants shipped suspicious orders to the *Track One* Counties.  This is particularly true because there is evidence that Defendants acted pursuant to practices and policies that were national in scope.

*Id*. at p. 8; *see also id.* at p. 8 n.15 ("The Court has previously also ruled that evidence of national trends and national shipments is relevant to demonstrate the national scope of the opioid crisis."), pp. 9-10 (citing Doc. #2542 (Cutler Daubert Order) at pp. 4-5).

Here, there is substantial evidence that many of the Pharmacy Defendants' SOMS policies and procedures, to the extent they had them, were national (or company-wide)[43] in scope.[44] Moreover, contrary to their assertions otherwise, Rafalski's expert testimony and evidence of pill

---

[43]  Two of the Pharmacy Defendants (DDM and Giant Eagle) had only regional businesses.  Doc. #1959-11 (Briscoe Tr.) at 87:5-16 (DDM only does business in Ohio); Doc. #1959-18 (Carlson Tr.) at 29:23 – 30:5 (Giant Eagle had pharmacies in five states: Pennsylvania; Ohio; West Virginia; Maryland; Indiana).

[44]  *See, e.g.,* Doc. #3013-1 (Ps' CSA Compliance MSJ) at pp. 133-135 (and exhibits cited therein); Doc. #1971-2 (Stahmann Tr.) at 34:5-13, 288:10-25; Doc. #1959-2 (Bish Tr.) at 34:1 – 37:17; Doc. #2169-3 (Bancroft Tr.) at 118:15-24; Doc. #2213 (PSJ11 Ex. 11) at 76115; Doc. #2169-1 (K. Baker Tr.) at 42:17 – 43:4, 70:13 – 71:5, 72:19-23; Doc. #2169-30 (Nicastro Tr.) at 137:17 – 138:1; Doc. #1956-1 (Abernathy Tr.) at 75:23 – 76:10, 219:12-21; Doc. #1956-20 (Belli Tr.) at 99:18-24, 100:12-18, 173:17-19; Doc. #2169-10 (R. Chapman Tr.) at 43:5-21, 99:14-24; Doc. #1959-21 (Chase Tr.) at 119:14-20, 125:24 – 126:9; Doc. #1968-4 (Mitchell Tr.) at 99:6-21, 220:2-8; Doc. #2169-5 (Bianco Tr.) at 102:11 – 103:2; Doc. #1970-8 (Rogos Tr.) at 76:18 – 77:18; Doc. #1959-11 (Briscoe Tr.) at 34:24 – 35:17, 144:6-9, 253:14-18; Doc. #1968-15 (Nameth Tr.) at 25:10-23, 66:11-13.

migration from Florida are just as applicable in the Track 1B trial. Although Rafalski does not analyze the SOMS programs of every Pharmacy Defendant, he provides extensive opinions regarding the SOMS programs of Walgreens and CVS. Doc. #2000-22 (Rafalski Rep.) at pp. 40-46, 94-135. And pill migration from Florida or elsewhere is not limited to prescriptions filled at "pill mills" and pain clinics; it can also occur with prescriptions filled at chain pharmacies, a fact of which at least some of the Pharmacy Defendants were aware.[45]

For example, as part of the Orders to Show cause leading up to the 2013 Memorandum of Agreement and $80 million fine, the DEA cited Walgreens for multiple "'red flags' of controlled substance diversion" in Florida which included "individuals presenting prescriptions for controlled substances issued by practitioners located long distances from the pharmacy… individuals residing long distances from the pharmacy; and individuals residing long distances from the practitioners from whom the prescriptions were obtained." Doc. #2205-9 (PSJ18 Ex. 9) at PageID #333412. The DEA listed as examples Walgreens for Florida dispensing to persons who lived in geographically distant locations, including Kentucky, Tennessee, Georgia, Alabama, and multiple locations in Ohio. *Id*. at PageID #333412-414. In the summary of the testimony the DEA planned to give at the regulatory hearing, the DEA stated it planned to provide testimony that Florida Walgreens had "dispensed controlled substances to customers residing in numerous states and commonwealths outside of Florida," including "the Appalachia regions of Kentucky, Ohio and Tennessee" in a manner that was:

> particularly problematic when one considers information developed by DEA that
> as a result of long-standing prescription monitoring programs in Kentucky and
> Ohio, and with the increased difficulty in obtaining controlled substances from

---

[45] *See, e.g.,* Doc. #2815 (CT1A Ps' MIL Opp.) at pp. 32-33 (quoting Doc. #2000-22 (Rafalski Rep.) at p. 121 and Doc. #1969-19 (5/14/19 Rafalski Tr.) at 552:13 – 554:6); Doc. #2816-1 (WAGMDL00049752) at 758-759; Doc. #2816-5 (WAGMDL00289068-178) at 153, 165; Doc. #2816-4 (US-DEA-00000001-141) at 019, 028-030, 032-033, 051-053, 063-067, 071-072; Doc. #1971-2 (Stahmann Tr.) at 207:2-21, 227:8-24, 228:18 – 229:2; Doc. #2169-11 (Daugherty Tr.) at 346:21 – 348:7, 349:7-24; Doc. #1961-21 (Dymon Tr.) at 66:22 – 67:7, 144:7 – 145:1; Doc. #1963-9 (Kaleta Tr.) at 126:8-19, 126:24 – 127:5; Doc. #2397-4 (PSJ2 Ex. 137) at 7242 ("Pain clinic issue became a retail pharmacy issue"); Doc. #1966-6 (Little Tr.) at 401:10 – 402:16; Doc. #1968-15 (Nameth Tr.) at 60:12-19; Doc. #2169-31 (Novack Tr.) at 159:20 – 160:1, 166:17 – 167:9.

licensed physicians in these jurisdictions, many individuals have found creative ways to circumvent state prescription monitoring programs. As a result of the restricted access to controlled substances in their states, many individuals from Ohio, Kentucky and other states have travelled by the carloads to "pain" clinics located Florida to obtain prescriptions for oxycodone, alprazolam, and carisoprodol. This troublesome trend is particularly acute in the Appalachia region where individuals return to the region with drugs dispensed or prescribed by physicians working at Florida clinics. Because of the easy availability of drugs from these cash-only clinics, drug seeking individuals in the Appalachia region have obtained these drugs and abuse or sell them on the streets both to support drug habits and finance later car trips to Florida. The financing of these trips include the costs charged by the clinics for doctor visits and for drugs dispensed by the clinics.

*Id.* at PageID #333441-442; *see also id.* at PageID #333448.

Finally, the Pharmacy Defendants argue that evidence of extraterritorial conduct is inadmissible because it is unfairly prejudicial and constitutes inadmissible "other bad acts" evidence under Rule 404. Doc. #3421. Again, they identify no specific evidence that they seek to exclude, making it impossible for this Court to determine the applicability of Rule 404 and its exceptions, or balance the evidence's probative value against the risk of unfair prejudice, at this time. *See, e.g., United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996) ("It is true that whether 404(b) evidence is admissible for a particular purpose will sometimes be unclear until late in the trial because whether a fact is 'in issue' often depends on the defendant's theory and the proofs as they develop."); *United States v. Bozeman*, No. 3:11-CR-129, 2012 WL 1071207, at *11 (E.D. Tenn. Mar. 29, 2012) (noting that "the majority of 404(b) issues must be decided within the context of the trial"); *Mascarenas*, 2010 WL 11534359, at *6 (denying defendant's motion to preclude evidence related to shock absorbers in foreign countries, holding the "admissibility of this evidence will be determined at trial"). Certainly not all evidence of extraterritorial conduct constitutes "other bad acts" evidence, and even if a particular piece of evidence falls within Rule 404's scope, it may still be admissible if offered for another purpose under Rule 404(b). *See United States v. Poulsen*, 655 F.3d 492, 508 (6th Cir. 2011) ("Other bad acts are probative and admissible if relevant to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake of accident.' This list is 'neither exhaustive nor conclusive.'") (internal citations

omitted).[46]

None of the cases cited by the Pharmacy Defendants support granting this sweeping MIL. *See United States v. Ward*, 190 F.3d 483, 489–90 (6th Cir. 1999) (trial court erred in instructing jury as to all the purposes for which the jury could consider Rule 404(b) evidence when the only purpose relevant in that case was intent); *Merriweather*, 78 F.3d at 1074-79 (same); *United States v. Johnson*, 27 F.3d 1186, 1193-94 (6th Cir. 1994) (same); *Stern*, 706 F.2d at 750 (in professor's suit against college based on professor's termination which allegedly resulted from professor's advice that student seek legal counsel about his suspension, trial court did not abuse its discretion in excluding evidence that marijuana was found in the car the student took from college during the episode which gave rise to the student's suspension on ground that it would inflame or confuse the jury); *United States v. Semak*, 536 F.2d 1142, 1144–45 (6th Cir. 1976) ("[E]vidence of a defendant's prior misconduct is admissible to show motive, intent, or absence of mistake whenever any one of these is material in a prosecution, and there exists a dispute about it."); *Lucijanic v. Ball*, No. 2:04-CV-751, 2006 WL 8442257, at *4 (S.D. Ohio Aug. 30, 2006) (granting motion to preclude evidence of defendant's prior uses of mace or force; the only purpose for which plaintiff offered such evidence was to show identity, but identity was not an issue in the case); *Worldwide Basketball & Sports Tours, Inc. v. Nat'l Collegiate Athletic Ass'n*, No. 2:00-CV-1439, 2003 WL 21750835, at *1, 5 (S.D. Ohio July 11, 2003) (prior to permanent injunction hearing, court denied in part and granted in part defendant's motion *in limine* to exclude testimony from plaintiffs lacking standing to sue; "The Court finds that in order to seek relief, the Plaintiffs must be able to establish that they have suffered harm. To the extent that Plaintiffs can provide such evidence, the Defendant's motion is without merit. If, however, testimony is elicited from one who has suffered no harm as a promoter of events, the Defendant may raise the issue at the hearing. Obviously, a non-party which has suffered harm is entitled to no relief in this action."); *Chocolate*, 801 F.3d at

---

[46] Even if some of these other purposes are not applicable in this case (*e.g.*, identity), others are (*e.g.*, intent, knowledge, motive, etc.).

402–04 (in antitrust case, court concluded that plaintiffs had "not adequately linked the Canadian conspiracy to the purported U.S. conspiracy to justify using the former to support an inference of the latter"); *United States v. Shannon*, 766 F.3d 346, 348 n.1, 352 n.9 (3d Cir. 2014) (declining to decide whether trial court abused its discretion by admitting evidence of defendant's two prior convictions despite their being more than twenty years old because case was being remanded for new trial on other grounds, but observing that when prior bad act evidence is admitted for another purpose under Rule 404(b), that purpose must be at issue in the case); *Elevator*, 502 F.3d at 51–52 (trial court properly dismissed plaintiffs' antitrust conspiracy claims because plaintiffs failed to provide a sufficient "factual basis for their assertions of a worldwide conspiracy affecting a global market for elevators and maintenance services"; "Allegations of anticompetitive wrongdoing in Europe—**absent any evidence of linkage between such foreign conduct and conduct here**—is merely to suggest (in defendants' words) that 'if it happened there, it could have happened here.'") (emphasis added);[47] *Bispo v. Robertshaw Controls Co.*, No. 3:05-CV-01223-BR, 2012 WL 13048223, at *2–3 (D. Or. Mar. 14, 2012) (denying plaintiff's motion exclude evidence of his misuse of water heater in violation of California codes "with leave to renew if Defendant fails to establish an adequate foundation for admitting such evidence" at trial).

The Pharmacy Defendants certainly have not demonstrated all evidence of their extraterritorial conduct is "clearly inadmissible on all potential grounds."  *Indiana Ins.*, 326 F. Supp. 2d at 846.  Accordingly, the Pharmacy Defendants' MIL No. 8 should be denied.

9. **Pharmacy Defendants' MIL No. 9**: To limit testimony of Craig McCann. (Doc. #3425)

To support his opinions as to the estimated number of suspicious orders shipped by the Pharmacy Defendants into the Counties, Dr. McCann analyzes ARCOS shipping data using five

---

[47]  As noted by one district court in this circuit, the *Elevator* court "did not hold that such a theory could never be viable, only that it hadn't been sufficiently alleged[.]"  *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1010 (E.D. Mich. 2010).  "[U]nder certain circumstances, the 'if there, then here' argument certainly can have merit."  *Id*. at 1011.

different methodologies provided by Mr. Rafalski.  The Pharmacy Defendants claim that Dr. McCann's calculations based on four of these methodologies "are irrelevant" because Plaintiffs have no witness to "opine that these calculations are based on a reliable methodology for identifying suspicious orders."  Doc. #3425 at p. 2.  They note that Mr. Rafalski vouched for only one of these methodologies and testified that the other four were not suitable suspicious order systems.  *Id.* at pp. 1-2.  Thus, according to the Pharmacy Defendants, any testimony from Dr. McCann regarding those four methodologies would confuse the issues, mislead the jury, and waste time.  *Id.* at p. 2.

The Pharmacy Defendants' arguments are entirely without merit and should be rejected. As a preliminary matter, the Track 1A defendants, including Walgreens, previously made similar arguments in their motion to exclude McCann's testimony.  Doc. #1783-3 at pp. 2-3, 7-8. Significantly, the Court **denied** that motion in relevant part, stating:

> Rafalski's opinions regarding methods that are *available* to Distributors to flag potentially suspicious orders, including McCann's application of those methods to Defendants' data, are both relevant and helpful to resolving issues in this case, including: (1) whether Defendants employed reasonable measures to identify potentially suspicious orders; (2) the number of orders Defendants could have reasonably flagged; and (3) whether Defendants conducted adequate due diligence to stop shipment of suspicious orders.  Of course, at trial, Defendants may show, based on individual circumstances, why Rafalski's methods may not have been appropriate for them to use, or why other methods were equally or more effective. On this record, the Court finds that McCann's opinions are relevant and would aid the jury's determination of material issues in the case.

Doc. #2494 (Rafalski/McCann Daubert Opinion) at pp. 18-19.[48]  The Pharmacy Defendants are attempting to re-litigate an issue the Court has already decided, without providing any new basis for why the Court should reconsider its prior ruling.  This is not an appropriate use of a motion *in limine*.  *cf. Louzon*, 718 F.3d at 558, 563.

Moreover, the Pharmacy Defendants' arguments are substantively without merit.  As

---

[48]  *See also id.* at p. 12 ("Moreover, in determining whether Defendants employed effective measures to identify, investigate, and stop shipment of suspicious orders, it would be helpful to the finder of fact to hear evidence about the number of suspicious orders that each methodology would have flagged.").

explained in Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motion to Exclude Craig McCann and James Rafalski (PD4, Doc. #2997-1),[49] the other four methodologies are variations of methodologies **used by several of the defendants in this litigation** at various times. *Id* at pp. 16-21.[50][51]  In fact, one of the algorithms is meant to approximate the test set forth in Appendix E-3 to the Chemical Handler's Manual, **which Walgreens itself used from 2006 until at least 2012**.[52]  Certainly if Walgreens wishes to point out at trial that the methodology it used for years is unreliable, it is welcome to do so.  However, Dr. McCann's testimony regarding that methodology is certainly relevant to demonstrating the number of suspicious orders Walgreens could have, and should have, flagged.  Similarly, methodologies used by other distributors in the industry are relevant to demonstrating the number of suspicious orders any of the Pharmacy Defendants could have, and should have, flagged.  This is especially true where many of the Pharmacy Defendants worked closely with other distributors with respect to their SOMS

---

[49] The unredacted/less redacted version of this motion and several of its exhibits were filed as Doc. #2997-1-5.  The original redacted version with all its exhibits were filed as Doc. #2260, 2262-2264.

[50] *See also, e.g.,* Doc. #2000-22 (Rafalski Rep.) at pp. 40-41, 59-60 (Cardinal), 71 (McKesson), 82 (ABDC), 162-164 (Mallinckrodt); Doc. #1969-18 (5/13/19 Rafalski Tr.) at 163:8-13, 164:4-12, 173:9-17, 174:12-16, 352:4-11, 353:4-10, 391:3-6; Doc. #1969-19 (5/14/19 Rafalski Tr.) at 571:20 – 572:6; Doc. #2262 (PD4 Ex. 8); Doc. #2262-1 (PD4 Ex. 9) at 345; Doc. #2262-6 (PD4 Ex. 14); Doc. #2997-5 (PD4 Ex. 15); Doc. #1970-4 (Reardon Tr.) at 429:3-14; Doc. #1972-16 (8/3/18 Zimmerman Tr.) at 121:12-21, 122:18-23, 131:7 – 133:22.

[51] Experts often rely on a defendant's internal data and records in forming their opinions.  *See, e.g., Smith*, 714 F. Supp. 2d at 857 (expert "may properly testify as to his interpretation of internal marketing-related documents that he relied on in forming his opinions"); *Knight v. Boehringer Ingelheim Pharm., Inc.*, 323 F. Supp. 3d 837, 848 (S.D.W. Va. 2018) ("Not only did Dr. Baruch offer a thorough, amply supported opinion, but he also relied, in large part, upon information, studies, and models published by Defendant and its researchers."); *United States ex rel. George v. Fresenius Med. Care Holdings, Inc.*, No. 2:12-CV-00877-AKK, 2016 WL 5361666, at *9 (N.D. Ala. Sept. 26, 2016) (rejecting defendant's argument that expert's "testimony is unreliable simply because he relied on [the defendant's] own internal documents that are, apparently, inaccurate"); *In re Actos® (Pioglitazone) Prod. Liab. Litig.*, No. 6:11-MD-2299, 2014 WL 12653759, at *7 (W.D. La. Jan. 14, 2014) ("[The expert's] opinions are directed to conclusions about what the Defendants knew, or should have known, *based on their own documents*, and how that did effect, or, in her opinion, should have affected, the Defendants' marketing, regulatory, and promotional activities") (emphasis in original).

[52] *See, e.g.,* Doc. #2000-22 (Rafalski Rep.) at pp. 36, 125-128, 130; Doc. #1969-19 (5/14/19 Rafalski Tr.) at 465:18 – 466:6, Doc. #2260-7 (PD4 Ex. 7); Doc. #2262-2 (PD4 Ex. 10) at pp. 14-16.

46

programs.[53]

The Pharmacy Defendants emphasize that Mr. Rafalski only vouched for one of these methodologies, stating the other four were not suitable.  But the reason Mr. Rafalski deems these methodologies unsuitable is because they would significantly **undercount** "suspicious orders."[54] Mr. Rafalski does not opine, and Plaintiffs do not concede, that any of these metrics necessarily would have satisfied the Pharmacy Defendants' obligations under the CSA.  But they are still relevant to show the large numbers of orders that would have been flagged even under the inadequate systems used by distributors in the industry, which demonstrates how far below the threshold of compliance the Pharmacy Defendants' actual conduct fell.  Seeing the number of suspicious orders that each methodology would have flagged will help provide the jury with a reasonable range of the total number of orders each Pharmacy Defendant should have identified as suspicious and investigated.  For these reasons, the Pharmacy Defendants' MIL No. 9 should be denied.

### 10.    Pharmacy Defendants' MIL No. 10: To preclude evidence or argument relating to participation in trade associations.  (Doc. #3426)

In their MIL No. 10, the Pharmacy Defendants seek to preclude "any evidence or argument concerning [their] participation in trade associations and protected petitioning activity." Doc. #3426 at p. 1.  They largely repeat the same legal arguments posited by the Track 1A defendants in their previous motions *in limine*.  *Id.* at pp. 3-4.  The Court properly rejected these arguments in Track 1A and should do so again in Track 1B.  Doc. #3058 (Evidentiary Order) at pp. 51-53; *see also* Doc. #2815 (CT1A Ps' MIL Opp.) at pp. 21-31, 109-112.

The Pharmacy Defendants argue that the circumstances are different in this case because

---

[53]  *See, e.g.,* Doc. #2182 (PSJ3 Conspiracy MSJ Opp.) at pp. 39, 59-73 (and exhibits cited therein); Doc. #2208 (PSJ11 CVS MSJ Opp.) at pp. 9-11 (and exhibits cited therein); Doc. #2205 (PSJ18 WAG MSJ Opp.) at pp. 12-14 (and exhibits cited therein).

[54]  *See, e.g,* Doc. #2000-22 (Rafalski Rep.) at pp. 36, 54-62, 71, 75-76, 78-84, 86-87, 92-93, 125-130; Doc. #1969-18 (5/13/19 Rafalski Tr.) at 356:20 – 357:2; Doc. #1969-19 (5/14/19 Rafalski Tr.) at 477:4-7, 477:22 – 478:6, 478:15 – 479:1, 504:2-14, 669:18-20.

the only claim at issue is public nuisance; there are no RICO or conspiracy claims being asserted in Track 1B. Doc. #3426 at p. 2. They claim this evidence is irrelevant because: (i) "[p]urpose, character and motive simply are not at issue here for Plaintiffs' nuisance claim[;]" and (ii) "[p]articipation in a trade association also does not demonstrate the intent necessary for a public nuisance claim." *Id.* at pp. 2-3. Not so. Plaintiffs intend to demonstrate at trial that the Pharmacy Defendants deliberately facilitated and encouraged the flow and diversion of opioids into an illegal, secondary market and that the opioid epidemic was a necessary consequence of their intentional conduct. As part of their plan, the Pharmacy Defendants used various trade associations as front groups to coordinate a number of joint strategies to protect the supply chain, influence policy related to opioid drug abuse and diversion, and subvert their CSA duties.[55]

For example, the National Association of Chain Drug Stores ("NACDS") is a national trade association that represents traditional drug stores, supermarkets, and mass merchants with pharmacies. Almost all of the Pharmacy Defendants were members of the NACDS.[56] Indeed, many of the Pharmacy Defendants have their own representatives serving on NACDS's Board of Directors, which determines the "strategic vision" of the organization.[57] Their representatives have also served on and run key governing committees and working groups within the organization, including the Policy Council (which "helps establish policy positions and makes recommendations to the Board of Directors"),[58] the DEA compliance working group, the legal

---

[55] *See, e.g.*, Doc. #2182 (PSJ3 Conspiracy MSJ Opp.) at pp. 6-7, 30-31, 42-57 (and exhibits cited therein); Doc. #2169-16 (George Tr.) at 242:16 – 246:14, 256:15 – 259:5; Doc. #1963-9 (Kaleta Tr.) at 397:4 – 399:12; Doc. #2169-28 (Moffatt) at 146:11 – 151:6; Doc. #1962-31 (1/23/19 Hiland Tr.) at 152:16 – 153:17, 156:11 – 159:4, 160:9 – 171:25, 177:18 – 179:17, 180:12 – 182:11, 184:14 – 224:14, 226:2-17, 234:7-20.

[56] *See, e.g.*, Doc. #1963-9 (Kaleta Tr.) at 176:2-7, 390:18 – 391:2, 421:4-20; Doc. #1961-21 (Dymon Tr.) at 289:8-17; Doc. #2169-28 (Moffatt) at 140:7-10; Doc. #1962-30 (1/22/19 Hiland Tr.) at 342:16-20, 352:2-5, 459:18-21; Doc. #1962-31 (1/23/19 Hiland Tr.) at 149:5-21, 159:10 – 160:8; Doc. #1971-12 (Tsipakis Tr.) at 260:2-8.

[57] *See, e.g.*, Doc. #1963-9 (Kaleta Tr.) at 402:23 – 403:15, 414:8 – 415:1; Doc. #2169-28 (Moffatt) at 143:21 – 144:20; Doc. #1962-31 (1/23/19 Hiland Tr.) at 174:1 – 177:17.

[58] Doc. #1963-9 (Kaleta Tr.) at 403:17 – 404:1; *see also id.* at 408:2-12 ("We help determine policy priorities and policy positions for NACDS and make recommendations to the board. The board then

48

working group, the federal working group, and the controlled substance report group.[59]

The Pharmacy Defendants were active participants in the NACDS.  They have contributed millions of dollars over the years to fund the organization.[60]  They regularly attended NACDS meetings and events.[61]  They provided input and edits as to NACDS's policy decisions and positions.[62]  And the NACDS provided them with information, resources, and guidance related to their roles and responsibilities as distributors.[63]  Additionally, the NACDS often worked hand-in-hand with the Healthcare Distribution Alliance ("HDA"), formerly known as the Healthcare Distribution Management Association ("HDMA"), a national trade association representing the interests of distributors.[64]  As the Pharmacy Defendants themselves acknowledge, "the CVS

---

decides whether to approve or decline those . . . recommendations.").

[59]  *See, e.g.*, Doc. #1963-9 (Kaleta Tr.) at 176:8-10, 402:15-22, 403:17 – 404:1, 408:2-12, 408:16-22, 409:5-16, 410:14 – 413:19, 416:6 – 417:11; Doc. #2169-16 (George Tr.) at 44:24 – 45:9, 283:12 – 287:3; Doc. #1971-8 (Swords Tr.) at 26:24 – 27:4, 72:7 – 74:2, 94:11 – 95:13; Doc. #1959-20 (G. Chapman Tr.) at 320:8 – 322:23, 323:18 – 324:25, 326:6-17; Doc. #1962-30 (1/22/19 Hiland Tr.) at 343:21 – 344:6; Doc. #1962-31 (1/23/19 Hiland Tr.) at 103:22 – 104:8, 149:25 – 151:10, 152:16 – 153:17, 156:11 – 160:8, 172:23 – 173:12, 235:13 – 239:4; Doc. #1962-21 (1/30/19 Hart Tr.) at 241:4 – 242:9.

[60]  *See, e.g.*, Doc. #1963-9 (Kaleta Tr.) at 18:11-15, 417:21 – 421:3 (Walgreens has paid approximately $10.2 million to NACDS over the last decade); Doc. #2169-28 (Moffatt) at 140:19 – 143:13.

[61]  *See, e.g.*, Doc. #1969-10 (Polster Tr.) at 376:9-15 ("We were part of the opioid task force with NACDS. We went to numerous meetings."); Doc. #1959-20 (G. Chapman Tr.) at 320:8 – 322:23, 323:18 – 324:25; Doc. #1962-30 (1/22/19 Hiland Tr.) at 351:10-13; Doc. #1962-31 (1/23/19 Hiland Tr.) at 149:25 – 151:10; Doc. #1962-21 (1/30/19 Hart Tr.) at 217:2-12, 241:4 – 242:9.

[62]  *See, e.g.*, Doc. #1963-9 (Kaleta Tr.) at 176:11-13, 177:8 – 178:21, 180:3-14; Doc. #1961-21 (Dymon Tr.) at 289:18 – 290:6; Doc. #2169-16 (George Tr.) at 46:20 – 47:9; Doc. #1962-31 (1/23/19 Hiland Tr.) at 221:17 – 224:14.

[63]  *See, e.g.*, Doc. #1959-10 (12/16/18 Bratton Tr.) at 242:11 – 243:23; Doc. #1959-20 (G. Chapman Tr.) at 60:4-18 ("Q: And how do you help represent Walmart at the NACDS?  A: It would be by learning what topics are going on, either within state legislation, federal legislation, billing practices, Medicaid changes.  It could be a variety of issues that are discussed."), 325:14 – 327:6; Doc. #1962-30 (1/22/19 Hiland Tr.) at 459:24 – 465:2; Doc. #1962-31 (1/23/19 Hiland Tr.) at 154:3-9, 183:3 – 184:5, 239:7 – 241:20; Doc. #1962-21 (1/30/19 Hart Tr.) at 69:23 – 70:10, 75:12-23, 241:4-8 ("Q: You mentioned NACDS before as a resource that you used to determine how Rite Aid was to comply with various regulations regarding controlled substances, though.  Right?  A: Yes."); Doc. #1971-12 (Tsipakis Tr.) at 260:9-14.

[64]  *See, e.g.*, Doc. #2182 (PSJ3 Conspiracy MSJ Opp.) at p. 7 & n.21, 30-31, 44-45, 48-51, 53-57 (and exhibits cited therein); Doc. #1963-9 (Kaleta Tr.) at 396:9-15 ("Q: Through your association and

Defendants' direct or indirect parent corporation" has been an affiliate member of the HDA (f/k/a HDMA) since 2008.  Doc. #3426 at p. 1 n.1.  Indeed, in 2010, the HDMA stated: "The continued support and participation of CVS Caremark is critical to our success and enable HDMA to provide a wide variety of services that inform your key business decisions and help facilitate connections with your clients and trading partners[.]" **Ex. A** (CVS-MDLT1-000099537-540) at 539.  *See also* **Ex. B** (CVS-MDLT1-000099569-570) at 569.

Thus, evidence of the Pharmacy Defendants' participation in trade associations and lobbying efforts demonstrates their intent, knowledge, purpose, and motives as it relates to their distribution of opioids.  These issues are certainly relevant to the ultimate question the jury will decide: whether the Pharmacy Defendants engaged in unlawful **or intentional** conduct that caused a substantial interference with a public right.[65]  Accordingly, the Pharmacy Defendants' argument that such evidence is irrelevant is entirely without merit.[66]

As previously noted, Plaintiffs have already addressed most of the Pharmacy Defendant's legal arguments (Doc. #3426 at pp. 2-4) in their prior motion *in limine* briefing.  Doc. #2815 (CT1A Ps' MIL Opp.) at pp. 21-31 (addressing First Amendment, *Noerr-Pennington*, and

---

membership in NACDS, do you ever interact with HDA and HDMA as it comes to common interest in lobbying? A: So, Walgreens interacts, has historically, with HDA on different issues, yes.") (internal objection omitted), 396:17-24 ("Q: Has Walgreens interacted with HDA on issues related to opioids? A: I would say the answer is yes in that we have spent extensive time working with HDA on the Drug Supply Chain Security Act that passed in 2014 that was dealing with trying to update the technology in the supply chain and, so, on a de facto basis that impacts opioids.  So, yes.").

[65] "Intentional" conduct "'means not that a wrong or the existence of a nuisance was intended but that the creator of it intended to bring about the conditions which are in fact found to be a nuisance.'"  *In re Natl. Prescription Opiate Litig.*, 406 F. Supp. 3d 672, 675 (N.D. Ohio 2019) (quoting *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017)).  In other words, "'[w]here the harm and resulting damage are the necessary consequences of just what the defendant is doing, or is incident to the activity itself or the manner in which it is conducted, . . . the rule of absolute liability applies."  *Id.* (quoting *Taylor v. City of Cincinnati*, 55 N.E.2d 724, 727 (Ohio 1944)).  Moreover, a defendant will be considered to have intentionally contributed to a public nuisance if it becomes aware that harm is resulting from its conduct and continues to act in the same manner.  *See* RESTATEMENT (SECOND) OF TORTS § 825, cmt. d ("[W]hen the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional.").

[66] That this evidence is also relevant to demonstrate a conspiracy does not negate its relevance to Plaintiffs' public nuisance claim.

Rule 403 arguments and distinguishing *Weit v. Contl. Illinois Nat. Bank and Tr. Co. of Chicago*, 641 F.2d 457 (7th Cir. 1981); *U.S. Football League v. Natl. Football League*, 634 F. Supp. 1155 (S.D.N.Y. 1986); and *U.S. Football League v. Natl. Football League*, 842 F.2d 1335 (2d Cir. 1988)), pp. 109-112 (addressing trade association arguments and distinguishing *In re Welding Fume Products Liab. Litig.*, 526 F. Supp. 2d 775 (N.D. Ohio 2007) and *In re Asbestos Sch. Litig.*, 46 F.3d 1284 (3d Cir. 1994)).

The Pharmacy Defendants do cite a few new cases in their current motion, but none of them justify granting this MIL.  In all these cases, none of which deal with evidentiary issues, the plaintiffs were seeking to impose liability on the defendants based solely on their lobbying or trade association activity.  *See N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 920, 924 (1982) (holding that individuals' mere attendance and participation at NAACP meetings was "an insufficient predicate on which to impose liability" where there was no suggestion "that any illegal conduct was authorized, ratified, or even discussed at any of the meetings"; "Civil liability may not be imposed **merely** because an individual belonged to a group, some members of which committed acts of violence. For liability to be imposed **by reason of association alone**, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims.") (emphasis added);  *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 129, 138-45 (1961) (defendant railroads could not be held liable for antitrust conspiracy based on their publicity campaign to influence legislative action; "[W]e think it clear that the Sherman Act does not apply to the activities of the railroads at least insofar as those activities comprised mere solicitation of governmental action with respect to the passage and enforcement of laws."); *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 297-99 (6th Cir. 1992) (public lobbying by teachers' union and local managing agent labeling principal as racist and urging his dismissal was not actionable under § 1983; "Under the *Noerr-Pennington* doctrine, **liability** may not be assessed under § 1983 or the anti-trust laws except in very limited circumstances, for actions taken when petitioning authorities to take official action, regardless of the motives of the petitioners, even where the petitioning activity has the intent or effect of

51

depriving another of property interests.") (emphasis added); *Opdyke Inv. Co. v. City of Detroit*, 883 F.2d 1265, 1273 (6th Cir. 1989) (city's non-frivolous prosecution of lawsuit regarding its effort to keep professional hockey team at city stadium could not form the basis for antitrust liability). But as Plaintiffs have repeatedly stated, they are not seeking to impose liability on the Pharmacy Defendants based on their mere participation in trade associations or lobbying efforts; rather, they seek to use evidence of such conduct for other purposes, including to demonstrate the Pharmacy Defendants' knowledge, motive, and intent.

The Pharmacy Defendants certainly have not demonstrated that all trade association and lobbying evidence is "clearly inadmissible on all potential grounds." *Indiana Ins.*, 326 F. Supp. 2d at 846. The admissibility of any particular piece of such evidence should be determined at trial "so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id*. Accordingly, the Pharmacy Defendants' MIL No. 10 should be denied.

**B.  PLAINTIFFS' RESPONSE TO RITE AID'S MOTION *IN LIMINE* TO EXCLUDE ORDERS FROM NON-DEFENDANT DISTRIBUTORS (DOC. #3423).**

In this MIL, Defendant Rite Aid, joined by Defendants Giant Eagle and HBC (Doc. #3423 at p. 1 n.1), (collectively, the "Moving Defendants") seek to preclude evidence of opioid orders by Rite Aid or Giant Eagle pharmacies from non-defendant distributors (*i.e.*, McKesson). *Id*. at p. 1. They claim such evidence is irrelevant, unfairly prejudicial, and "would confuse the issues before the jury and unduly delay the trial." *Id*. at p. 1. Specifically, the Moving Defendants claim that evidence of their pharmacies' opioid orders from McKesson is irrelevant because such evidence does not demonstrate that the Moving Defendants failed to monitor suspicious orders. Id. at pp. 1-3 & n.1. Their arguments are groundless and should be rejected.

In addition to self-distributing, the Moving Defendants knew their pharmacies also received shipments of opioids from outside distributors, like McKesson.[67] And because they had complete visibility into all dispensing-level data from their own pharmacies, they had access to

---

[67]  *See, e.g.*, Doc. #2169-10 (R. Chapman Tr.) at 29:24 – 30:23; Doc. #2169-5 (Bianco Tr.) at 18:13-20; Doc. #1961-20 (Durr Tr.) at 133:17-21; Doc. #1966-18 (McClune Tr.) at 123:25 – 124:15.

data regarding the amount of opioids their pharmacies were receiving from these outside distributors.[68]  In order to properly monitor suspicious orders, they should have been taking into consideration the **total** amount of opioids (Schedule II and Schedule III) received by their pharmacies.  Instead, they worked closely with McKesson to circumvent any meaningful limit on opioid distribution to their pharmacies.  For example, McKesson would notify the Moving Defendants when their pharmacies were approaching or exceeding McKesson's thresholds and regularly granted threshold increases without conducting any due diligence.[69]  This evidence is directly relevant to the sufficiency of the Moving Defendants' SOMS programs, as well as to their knowledge and intent.  There is no risk of unfair prejudice or jury confusion, as Plaintiffs have no intention of arguing at trial that the Moving Defendants are liable for McKesson's distribution misconduct.  If and when this evidence is introduced at trial, the Moving Defendants can request a reasonable limiting instruction if they believe further clarification is needed.  *See, e.g., In re: E. I. Du Pont De Nemours & Co. C-8 Pers. Injury Litig.*, No. 2:13-CV-170, 2016 WL 659112, at *53 (S.D. Ohio Feb. 17, 2016); *Akers*, 2019 WL 4934948, at *4.

For these reasons, the cases cited by the Moving Defendants are inapposite.  In *Davis v. Siemens Med. Sols. USA, Inc.*, the plaintiff sued his former employer, asserting a number of claims, including breach of contract, fraudulent misrepresentation, and intentional infliction of emotional distress.  279 F. App'x 378, 378-79 (6th Cir. 2008).  All but his fraudulent misrepresentation claim were dismissed on summary judgment.  *Id*. at 379.  At trial, the plaintiff sought to introduce evidence that one year after the purported fraud took place, the plaintiff and certain fellow

---

[68]  *See, e.g.*, Doc. #1962-21 (1/30/19 Hart Tr.) at 151:4 – 153:2; Doc. #2169-10 (R. Chapman Tr.) at 153:11-25; Doc. #1956-20 (Belli Tr.) at 138:8 – 139:9; Doc. #2169-14 (Frost Tr.) at 162:18 – 164:6, 170:20 – 171:20; Doc. #1966-18 (McClune Tr.) at 127:12-17; Doc. #1971-12 (Tsipakis Tr.) at 222:20 – 223:5, 223:18-25, 225:2-22.

[69]  *See, e.g.*, Doc. #2182 (PSJ3 Conspiracy MSJ Opp.) at pp. 69-71 (and exhibits cited therein); Doc. #2169-10 (R. Chapman Tr.) at 152:14 – 153:10; Doc. #2169-31 (Novack Tr.) at 99:4-13, 149:9 – 151:16, 152:16-21, 190:8-20, 282:8 – 283:7, 296:8-19, 359:19 – 360:14, 362:15-22, 363:9-13, 364:14-19, 369:12 – 370:8; Doc. #2169-5 (Bianco Tr.) at 171:4-16, 172:7 – 179:5; Doc. #1959-18 (Carlson Tr.) at 105:22 – 106:10, 234:2-16; Doc. #1966-18 (McClune Tr.) at 190:16 – 194:17.

employees were mistreated by a management official not involved in the underlying fraud. *Id*. at 380-81. The Sixth Circuit held that such evidence was properly excluded because it was irrelevant to the plaintiff's misrepresentation claim. *Id*. Although the evidence may have been relevant to the plaintiff's claim for intentional infliction of emotional distress, that claim had already been dismissed. *Id*. at 380. Similarly, in *Surface v. Conklin*, the defendant sought to preclude five opinions of the plaintiff's expert witness, arguing they were "irrelevant because they concern dismissed parties and claims no longer before the Court." No. 1:15-CV-40, 2018 WL 6257984, at *6 (S.D. Ohio Nov. 30, 2018). After noting that "[c]ourts will exclude expert testimony where it applied **only** to already dismissed claims[,]" the court determined that four of the expert's opinions should be excluded as irrelevant because they "all relate to claims against parties that have been dismissed." *Id*. (emphasis added). The court declined to exclude the fifth opinion, noting that it was still relevant to the plaintiff's remaining claims. *Id*.

Unlike in *Davis* and *Surface*, in the present case evidence of pharmacy orders from non-defendant distributors **is** relevant to Plaintiffs' nuisance claims against the Moving Defendants. Thus, as the Moving Defendants have not demonstrated that this evidence is "clearly inadmissible on all potential grounds[,]" their MIL should be denied. *Indiana Ins.*, 326 F. Supp. 2d at 846.

## C. PLAINTIFFS' RESPONSE TO THE PHARMACY DEFENDANTS' PRESERVED OBJECTIONS TO THE COURT'S PRIOR EVIDENTIARY RULINGS. (DOC. #3411, 3422)

In accordance with the Special Master's order (Doc. #3398), the Pharmacy Defendants jointly, and Walgreens individually, filed documents preserving their objections to certain evidentiary rulings previously made by the Court (i) denying, in whole or in part, certain Track 1A defendants' motions *in limine*, and (ii) granting, in whole or in part, Plaintiffs' prior motions *in limine*. Doc. #3411 (Pharmacy Defendants' Omnibus Motion Preserving Objections to Prior Motions *in Limine*); Doc. #3422 (Walgreen Co.'s Omnibus Document to Preserve Arguments and Objections Related to Prior Motions *in Limine*). Plaintiffs request that the Court enforce its prior rulings on these motions *in limine* for the reasons set forth in its Evidentiary Order and in Plaintiffs' prior *limine* briefing. Doc. #3058 (Evidentiary Order); Doc. #2652 (CT1A Ps' MILs); Doc. #2815

54

(CT1A Ps' MIL Opp.); Doc. #2805 (CT1A Ps' MIL Reply).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny each of the Pharmacy Defendants' joint and individual MILs, except as otherwise indicated above.

Dated: September 14, 2020

Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth Street
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX  77069-3804
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Lead Trial Counsel*

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY  10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

Linda Singer
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
(202) 386-9626 x5626
(202) 386-9622 (Fax)
lsinger@motleyrice.com

*Counsel for Plaintiff Summit County, Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/ Peter H. Weinberger*
Peter H. Weinberger