**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*Track One-B Trial* | Case No. 1:17-MD-2804 |

**PHARMACY DEFENDANTS' RESPONSE AND OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION *IN LIMINE* AND MOTION TO MODIFY PRIOR EVIDENTIARY RULINGS**

# TABLE OF CONTENTS

**Page**

I.  RESPONSES TO PLAINTIFFS' RENEWED MOTIONS *IN LIMINE* ............................. 1

    A.  Plaintiffs' Motion *in Limine* No. 5 (Use of private aircraft by expert witnesses) ......... 1

    B.  Plaintiffs' Motion *in Limine* No. 23 (Learned-intermediary doctrine)......................... 2

    C.  Plaintiffs' Motion *in Limine* Nos. 24 and 28–37 ................................................... 3

    D.  Preservation Objections Regarding Plaintiffs' Motions *in Limine* 6–9, 15–17, and 22; Defendants' Motions *in Limine* 1, 4, and 14; Distributors' Motion *in Limine* D-3; and Walgreens' Motion *in Limine* W-3 .................................................... 6

II.  RESPONSES TO PLAINTIFFS' NEW MOTIONS *IN LIMINE* NOS. 38–42.................... 6

    A.  Plaintiffs' Motion *in Limine* No. 38:  Any reference to, or evidence of, matters for which Defendants have withheld some or all related discovery............................ 6

    Plaintiffs' Motion *in Limine* No. 39:  Any evidence to support affirmative defenses or claims that Defendants met all pertinent regulatory requirements and/or that their conduct was based on alleged DEA guidance to the extent related discovery was withheld as privileged............................................................ 6

    B.  Plaintiffs' Motion *in Limine* No. 40:  Any reference to, or evidence of, any litigation between Summit or Cuyahoga County and its past or present employees ............................................................................................. 14

    C.  Plaintiffs' Motion *in Limine* No. 41:  Any reference to, or evidence of, the firing of any County employee by Summit or Cuyahoga County............................... 14

    D.  Plaintiffs' Motion *in Limine* No. 42:  Any reference to the efforts or actions of any Defendant, or its affiliates or employees, in connection with COVID-19, or the impact of COVID-19 on any Defendant, or its affiliates or employees ............... 15

    E.  Plaintiffs' Motion *in Limine* No. 43: Reference to class actions filed against Pharmacy Defendants relating to dispensing conduct ................................................. 17

CONCLUSION.......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alvarez v. King Cty.*,
2017 WL 3189025 (W.D. Wash. July 27, 2017) ....................................................16

*Gerling & Assocs. v. Gearhouse Broad. Pty*,
2013 U.S. Dist. LEXIS 160165 (S.D. Ohio Nov. 8, 2013) ...................................15

*In re Lott*,
424 F.3d 446 (6th Cir. 2005) ...............................................................................9

*In re United Shore Financial Servs.*,
2018 WL 2283893 (6th Cir. Jan. 3, 2018) .............................................................8

*Monsanto Co. v. Bayer Bioscience N.V.*,
2005 WL 5989796 (E.D. Mo. Oct. 28, 2005) .......................................................11

*Moore v. Publicis Groupe*,
287 F.R.D 182 (S.D.N.Y. 2012) ..........................................................................11

*New Phoenix Sunrise Corp. v. C.I.R.*,
408 F. App'x 908 (6th Cir. 2010) ..........................................................................8

*Ross v. Am. Red Cross*,
2012 U.S. Dist. LEXIS 77475 (S.D. Ohio June 5, 2012) .....................................15

*United States v. Fresenius Med. Care Holdings, Inc.*,
2014 WL 11517841 (N.D. Ga. May 13, 2014) .....................................................11

*United States v. Mason*,
2008 WL 281970 (S.D.N.Y. Jan. 25, 2008) .........................................................11

*William F. Shea, LLC v. Bonutti Research, Inc.*,
2013 U.S. Dist. LEXIS 78267 (S.D. Ohio June 4, 2013) .....................................15

*Zander v. Orlich*,
2017 WL 2972452 (N.D. Ind. July 12, 2017) .......................................................16

**OTHER AUTHORITIES**

Fed. R. of Civ. P. 26(g)(1)(A)......................................................................................................11

## I.    RESPONSES TO PLAINTIFFS' RENEWED MOTIONS *IN LIMINE*

In the first portion of their omnibus motion, Plaintiffs seek to modify several of the Court's prior rulings on Plaintiffs' own Track 1A motions *in limine* that they previously litigated and lost. Specifically, Plaintiffs request modification of the Court's rulings on Plaintiffs' MIL Nos. 5 (use of private aircraft by their experts), 23 (learned-intermediary doctrine), 24 (failure to mitigate damages), and 28–37 (indictments, investigations, and allegations of government corruption, and references to deaths of individuals in the custody of Plaintiffs' jails or Sheriffs' offices).   As Plaintiffs acknowledge, a party may seek to modify one of the rulings in the Evidentiary Order "only if that party can show that the particular circumstances . . . warrant a revision."  Dkt. 3058 at 2.  In each instance, Plaintiffs fail to establish any change in circumstances from Track 1A—or meaningful differences between the Track 1A and Track 1B parties—that supports the modifications Plaintiffs seek.  The Court should deny Plaintiffs' requests for modifications, except as specifically set out below.

### A.    <u>Plaintiffs' Motion *in Limine* No. 5</u> (Use of private aircraft by expert witnesses)

In the Evidentiary Order, the Court held that "issues relating to the direct or indirect compensation received by experts—including travel accommodations and the use of private aircraft—are relevant and fair game for the jury's consideration."  Dkt. 3058 at 58.  Plaintiffs ask the Court to modify its ruling to preclude evidence of travel accommodations and transportation used by experts because "circumstances could arise that would ***require*** one or more experts to need to travel by private aircraft" given "the potential health risks now associated with commercial air travel" during the COVID-19 pandemic.  Pls.' Omnibus MIL at 6 (emphasis added).

There are no circumstances that would ***require*** an expert witness to travel by private aircraft to the trial.  Private air travel is a luxury, not a necessity.  The "potential health risks now associated with commercial air travel," *id.*, that Plaintiffs point to only serve to demonstrate that private air

travel represents an even *greater* value than it would in ordinary circumstances. Such evidence therefore remains "relevant and fair game for the jury's consideration." Dkt. 3058 at 58. There is no basis for the Court to revisit its prior ruling on this issue.

This evidence is even more necessary now. If trial proceeds during the pandemic, it will be necessary to help explain to the jury why Plaintiffs' witnesses are testifying in-person whereas Pharmacy Defendants' witnesses are not. Many defense counsel and defense witnesses do not have access to private planes. In contrast to Plaintiffs' witnesses who may choose to accept Plaintiffs' offer of private flights, many defense witnesses may elect to testify remotely to avoid the risks of commercial air travel. The resulting disparity between in-person and remote testimony would be fundamentally unfair in itself—indeed, a reason to continue trial.[1] And at a minimum, the explanation for the disparity in in-person testimony is relevant and needed to at least partially mitigate the prejudice to Pharmacy Defendants. Plaintiffs' request to modify the Court's ruling on Plaintiffs' MIL No. 5 should also be denied on this basis.

### B. **Plaintiffs' Motion *in Limine* No. 23 (Learned-intermediary doctrine)**

Plaintiffs ask the Court to change its ruling on Plaintiffs' MIL No. 23 regarding the learned-intermediary doctrine because Plaintiffs are no longer asserting claims against Manufacturer Defendants based on their improper marketing of opioids. *See* Pls.' Omnibus MIL at 7. But the Court's ruling was not limited to the Manufacturer Defendants; it applied to "Defendants" in the Track 1A trial, which included Distributor Defendants and one Pharmacy Defendant. Dkt. 3058 at 46. As the Court recognized, "whether the advice of doctors breaks the causal chain is a question for the jury." *Id.* This is true even though Manufacturer Defendants will not be at counsels' table

---

[1] *See* Dkt. 3447 (Notice of Non-Consent to Trial in Light of COVID-19 Health Emergency).

for the Track 1B trial.  Pharmacy Defendants should be allowed to introduce this causation evidence at trial.[2]

Plaintiffs point to the Court's recent order denying the motion to dismiss the Track 3 cases as holding that the learned-intermediary doctrine is "wholly inapplicable" to Pharmacy Defendants' distribution and dispensing conduct.  Pls.' Omnibus MIL at 7.  But in declining to find that "a doctor's prescribing decision breaks the causal chain . . . *as a matter of law*," Dkt. No. 3403 at 31 (emphasis added), the Court twice noted that causation should be left to the trier of fact. *Id.* (noting that "Ohio law calls for the same result" as Florida and Oklahoma law); *id.* at 32 ("Ohio law instructs that proximate cause is ordinarily a questions of fact for the jury. . . . Because Defendants have not demonstrated Plaintiffs' allegations of proximate cause fail as a matter of law, the Court declines to dismiss Plaintiffs' claims.").  These statements are consistent with the Court's Evidentiary Order, which held that "whether the advice of doctors breaks the causal chain is a question for the jury."  Dkt. No. 3058 at 46.  Plaintiffs' request to modify the Court's ruling on Plaintiffs' MIL No. 23 should be denied.

## C.  Plaintiffs' Motion *in Limine* Nos. 24 and 28–37

Plaintiffs' MIL Nos. 24 and 28–37 relate to Plaintiffs' failure to mitigate damages, indictments, investigations, and allegations of government corruption, and references to deaths of individuals in the custody of Plaintiffs' jails or Sheriffs' offices.  *See* Pls.' Omnibus MIL at 3–4. Plaintiffs seek to modify the Court's rulings on Plaintiffs' MIL Nos. 24 and 28–37, asking the Court to grant them in full, on the basis that "neither the conduct of Plaintiffs nor the specific damages they have suffered is at issue in the Track 1B trial."  *Id.* at 4.

---

[2] Although the parties disagree about how causation applies to a public-nuisance claim, Plaintiffs acknowledge that they must prove causation at trial.  *See* Dkt. 3449 at 35 (Plaintiffs' proposed jury instruction on causation).

While it is true that Plaintiffs are not seeking compensatory damages in Track 1B, their conduct undeniably remains at issue in the Track 1B trial.  Plaintiffs' conduct is relevant to both causation and apportionment of harm.  *See* Opinion and Order, Dkt. 2572 at 2–3 (stating that, to prove an absolute public nuisance, "evidence must establish . . . a causal relationship between a defendant's conduct and a plaintiff's injury"); *id.* at 6 ("The Court agrees that any apportionment decision depends on the factual issues to be determined at trial . . . ."); *see also* Dkt. 3449 at 88– 92 (Pharmacy Defendants' proposed jury instructions regarding causation), 104–05 (Pharmacy Defendants' proposed jury instructions regarding apportionment).

Evidence that Plaintiffs themselves contributed to the harms they have allegedly suffered remains relevant.  For example, Pharmacy Defendants should be allowed to present evidence that Plaintiffs failed to prevent County-employed guards at their jails from smuggling illicit opioids to inmates, or that Plaintiffs did not adequately address opioid-related activities (including criminal activity) that had nothing to do with Pharmacy Defendants yet caused Plaintiffs harm.  Such evidence is relevant to whether, and to what extent, Pharmacy Defendants caused or contributed to Plaintiffs' alleged harms.  It is also relevant to whether any of the harms Plaintiffs claim to have suffered should be apportioned to Plaintiffs (or non-parties), rather than Pharmacy Defendants.

This evidence is also relevant to the extent Plaintiffs introduce evidence relating to the effects the opioid crisis has had on their agencies.  Such evidence about Plaintiffs' conduct would be necessary to show that the effects are actually the result of Plaintiffs' own conduct, such as corrupt or illegal activities by Plaintiffs' employees, or the result of different causes altogether. One example of an alternate cause would be the death of Aniya Day Garrett and the impact that the publicity related to her death had on the Cuyahoga County Children and Family Services.  If Plaintiffs introduce evidence about the burdens on Children and Family Services due to opioids,

Pharmacy Defendants should be allowed to show that other events, such as media attention related to child deaths, led to increases in services by the agency.  *See* Bellwether Trial Defs.' Opp'n to Pls.' Mot. *in Limine*, Dkt. 2725 at 45–47.  Indeed, the Court's rulings on these motions *in limine* acknowledge that such evidence could be relevant to causation.  *See* Dkt. 3058 at 70–74 (regarding Plaintiffs' MIL Nos. 28, 29, 34-37).[3]

Additionally, in ruling on Plaintiffs' MIL Nos. 28–29 and 34–37, the Court, rather than making blanket rulings in the abstract, stated that it would determine admissibility as it arises in the context of trial.  *Id.*  Other than Plaintiffs' MIL Nos. 36 and 37 (discussed below), Plaintiffs have not provided any further specifics regarding what evidence they would like excluded.  The Court should follow its initial ruling and determine the admissibility of specific evidence during trial.

Regarding Plaintiffs' MIL No. 37 in particular, Plaintiffs seek to specifically exclude evidence relating to the death of Brittany Rae Schlarb because her "death was unrelated to opioids."  Pls.' Omnibus MIL at 5.  The Court should not rule on Plaintiffs' request at this time and should instead, consistent with its initial ruling, wait until trial to determine whether evidence relating to Ms. Schlarb's death should be admitted.  The treatment of Ms. Schlarb is potentially relevant to rebut claims that Plaintiffs provided adequate care and treatment to individuals in their jails who have histories of substance abuse and/or addiction.  Even the news article Plaintiffs cite reports that Ms. Schlarb's mother "said Schlarb had used drugs since her early 20s and had been known to abuse methamphetamine, prescription opiate medications and fentanyl."  *See* Pls.'

---

[3] The Court's rulings related to Plaintiffs' MIL Nos. 30–33 do not mention causation, damages, or remedies at all.  *See* Dkt. 3058 at 17–18.  Instead, the Court generally excluded the fact of an indictment or investigation while noting that "the underlying facts that led to any investigation are fair game."  *Id.* at 18.  Those underlying facts remain fair game for the reasons set forth above.

Omnibus MIL at 5 (citing Emily Mills, *Summit County facing potential lawsuit over jail inmate's death*, Akron Beacon Journal (Aug. 27, 2019), available at https://www.beaconjournal.com/news/20190827/summit-county-facing-potential-lawsuit-over-jail-inmates-death).

Plaintiffs also request that the Court, with respect to Plaintiffs' MIL No. 36, exclude evidence relating to the indictment and conviction of Tamela M. Lee, a former member of the Summit County Council.  Unless Plaintiffs themselves open the door to it and/or make it relevant for rebuttal, Pharmacy Defendants, at this time, do not intend to introduce such evidence. Otherwise, there is no basis for any further modification of the Court's ruling on Plaintiffs' MIL No. 36, for the reasons stated above.

### D. Preservation Objections Regarding Plaintiffs' Motions *in Limine* 6–9, 15–17, and 22; Defendants' Motions *in Limine* 1, 4, and 14; Distributors' Motion *in Limine* D-3; and Walgreens' Motion *in Limine* W-3.

Plaintiffs have also renewed certain motions *in limine* from Track 1A, as well as objections they made to certain Track 1A Defendants' motions *in limine*.  There are no changed circumstances warranting a modification of the Court's ruling in Track 1B.  Defendants hereby incorporate Track 1A Defendants' responses to the Plaintiffs' motions at issue as well as the Track 1A Defendants' motions at issue into this response.  Those filings are attached as **Exhibit A**.

## II. RESPONSES TO PLAINTIFFS' NEW MOTIONS *IN LIMINE* NOS. 38–42.

### A. <u>Plaintiffs' Motion *in Limine* No. 38</u>:  Any reference to, or evidence of, matters for which Defendants have withheld some or all related discovery.

<u>Plaintiffs' Motion *in Limine* No. 39</u>:  Any evidence to support affirmative defenses or claims that Defendants met all pertinent regulatory requirements and/or that their conduct was based on alleged DEA guidance to the extent related discovery was withheld as privileged.

Plaintiffs bring two motions seeking the blanket exclusion of entire categories of evidence based on their dissatisfaction with discovery disputes they lost long ago.  Plaintiffs' MIL No. 38 fails to identify a single concrete example—beyond a vague reference to a discovery dispute

involving Walgreens, addressed in Plaintiffs' MIL No. 39—and seeks to broadly exclude *all* evidence of matters for which Defendants have withheld *any* related discovery.  Plaintiffs' MIL No. 39 narrows the requested relief only slightly, seeking the exclusion of *all* evidence of Defendants' SOMS compliance, guidance from DEA, and other related matters to the extent Defendants have withheld *any* relevant documents based on privilege.

The Court should deny both motions.  They are foreclosed by the Court's prior rulings, wildly overbroad, and seek blanket rulings on abstract disputes.

*First*, Plaintiffs' motions are directly at odds with the Court's prior evidentiary and discovery rulings.  While Plaintiffs seek to prevent Defendants from claiming that their conduct was based on DEA guidance, the Court has made clear that "evidence as to what the DEA did or did not do – and what the parties produced or communicated to the DEA – is fair game for either side."  Dkt. 3058 at 48; *see also id.* at 11–12 ("[T]he Court . . . intends to have 'a very wide strike zone' for evidence about what the federal government, the DEA, and the Food and Drug Administration ('FDA') did or did not do in connection with opioid regulation, as this information is an essential part of the story regarding the claims and defenses in this case."); *id.* at 25–26 (clarifying that Defendants "are *not* preclude[d] . . . from presenting evidence that the DEA's guidance has been inconsistent or shifted over time, to the extent such evidence may be relevant to determining issues regarding Defendants' intent or state of mind, or whether Defendants substantially complied with their duties under the CSA").

As for Plaintiffs' specific legal argument regarding Defendants' assertion of privilege, *see* Pls.' Omnibus MIL at 13–15, that argument already has been rejected.  In a privilege dispute involving SOMS audit documents in Track 1A, Plaintiffs made the exact same "sword and shield" arguments and cited the same caselaw.  The Special Master expressly rejected them:

- 7 -

> [T]he Special Master notes that plaintiffs have argued . . . that defendants have waived *wholesale* any privilege or work-product protection by putting the subject matter of the contested documents at issue. Plaintiffs state defendants have made factual assertions or pled affirmative defenses that cannot be fairly evaluated without access to any withheld document that addresses the defendants' Suspicious Order Monitoring Systems. Although there is Sixth Circuit authority supporting a broad reading of waiver, there are also numerous cases that take a more measured position and hold, as defendants argue, that unless the party asserting privilege has put the *particular* document at issue, it has not waived the privilege. ***The Special Master declines to follow the more expansive approach to waiver urged by plaintiffs in the context of those SOMS audits and related documents.***

Dkt. 1666 at 2–3 (emphasis added) (citing *In re Lott*, 424 F.3d 446 (6th Cir. 2005); *United States v. Bilzerian*, 926 F.2d 1285 (2nd Cir. 1991); *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996); *U.S. v. Ohio Edison Co.*, 2002 WL 1585597 (S.D. Ohio July 11, 2002); *Denman v. Youngstown State Univ.*, 2007 WL 2781351 (N.D. Ohio Sept. 21, 2007)).

Plaintiffs did not object to the Special Master's decision then, and they cannot do so now. Under the Federal Rules and the Court's orders, Plaintiffs have waived all objections and the Special Master's report constitutes an order of the Court. *See* Dkt. 69 at 4–5 ("Pursuant to Rule 53(f)(2), any party may file an objection to a[] . . . report . . . by the Special Masters within 21 calendar days of the date it was filed; failure to meet this deadline results in ***permanent waiver*** of any objection to the Special Masters' . . . reports . . . . ***Absent timely objection, the*** . . . ***reports*** . . . ***of the Special Masters shall be deemed approved, accepted, and ordered by the Court*** . . . ." (emphasis added)).[4]

---

[4] Even if Plaintiffs had not already lost their argument and waived any objections, the Court should reject it now. The cases Plaintiffs' cite do not stand for the proposition that Defendants' mere denial of unlawful conduct waives privilege over all documents relevant to that defense. In fact, they hold exactly the opposite, making clear that there cannot be waiver unless a party has taken the ***affirmative step*** of putting the contents of a ***particular*** communication at issue. *See, e.g.*, *New Phoenix Sunrise Corp. v. C.I.R.*, 408 F. App'x 908, 919 (6th Cir. 2010) (concluding that where defendant raised a defense premised on a claim of reasonable reliance on a particular tax opinion, defendant had "put the subject matter of the tax opinion at issue, making its disclosure appropriate"); *In re United Shore Financial Servs.*, 2018 WL 2283893, at *1-2 (6th Cir. Jan. 3,

*Second,* Plaintiffs' requested relief is wildly overbroad.  As Plaintiffs note, *see* Pls.' Omnibus MIL at 11, the Court has already made clear that it will not permit parties to rely at trial on evidence that was not produced in discovery.  *See, e.g.*, Dkt. 1055 at 5 ("[A]s a general rule, no party may rely at trial on documents or data they have not produced in discovery or which are otherwise unknown to opposing parties."); Dkt. 1147 at 1 ("The Court will not allow defendants to rely at trial, in any motion, or for any other reason, upon any evidence of the existence or method of operation of a SOMS that is not produced by this date."); Dkt. 3058 at 41 ("Plaintiffs may only introduce evidence that they produced in discovery.").  The Court has taken that position even when a party has selectively produced only some of the ***non-privileged,*** responsive evidence in its possession; here, Pharmacy Defendants merely appropriately withheld privileged documents.  *See* Dkt. 3058 at 42 (denying motion *in limine* to exclude "cherry-picked" examples of individual transactions, allowing "evidence of individual shipments and prescriptions to the extent the parties produced it in discovery and it is otherwise admissible").

---

2018) (concluding that where defendant claimed it was not at fault based on the findings of a privileged investigation, it was attempting to prove a defense "by disclosing or describing the attorney-client communications" and waived privilege over the investigation).

In fact, the only published Sixth Circuit decision cited by Plaintiffs forcefully rejects the very rule they propose.  In *Lott*, the Court granted mandamus relief and reversed a finding of waiver, rejecting the district court's reasoning because, "[r]ather than finding that Lott . . . took affirmative action to waive the privilege, the court finds waiver ***in Lott's assertion . . . that he is innocent***."  424 F.3d 446, 454 (6th Cir. 2005) (emphasis added).  The Sixth Circuit emphasized the need to "cabin the implied waiver of privileges to instances where the holder of the privilege has taken some ***affirmative step*** to place the ***content*** of the confidential communication into the litigation," *id.* at 455 (emphasis added), and warned that finding waiver based on assertion of innocence—whether in the criminal or civil context—"abandon[s] centuries of jurisprudence concerning the scope of the attorney-client privilege," *id.* at 456.  Plaintiffs' "rule" is contrary to law and would mean that privilege—whether attorney-client privilege or other privileges—would be waived in every case where a criminal defendant pleads not guilty or a civil defendant denies unlawful conduct.  *See id.* at 455–56; *see also id.* at 454 ("We have not been able to discover a single case where a court has found that implied waiver applied in a similar fashion.").

Yet Plaintiffs seek to exclude entire categories of evidence, argument, or testimony "to the extent any Defendants selectively produced discovery on a particular matter that is helpful to their case, while withholding related discovery that is detrimental to their case."  Pls.' Omnibus MIL at 12.  The Court's prior statements do not support Plaintiffs' position.  Those statements prevent a party from relying on documents that were not produced in discovery; they do not prevent a party from using documents that were produced just because other documents were properly withheld as privileged.

Plaintiffs' motions are an improper attempt to win the trial by evidentiary motion and prevent Defendants from mounting a defense.  According to Plaintiffs, "most of the discovery Defendants withheld relates to their SOMS programs," which they argue Defendants withheld improperly on the basis of privilege, *id.* at 12–13, and so Defendants should be forbidden from arguing to the jury that their SOMS programs complied with the law.  But Plaintiffs have not identified any actual discovery violations that would justify even a minor sanction, let alone any authority justifying the blanket exclusion of any argument or evidence about a core issue of liability whenever a party withheld "some" related discovery.  Plaintiffs' motions also ignore that they already have a wealth of discovery on Defendants' SOMS programs—belying the incredible claim that Plaintiffs have somehow been "deprived of any meaningful opportunity to sufficiently prepare their case for trial on this issue," *id.* at 10–11.[5]

Plaintiffs cite just two cases as supporting their categorical exclusion request, neither of which provides support for the expansive rule they claim.  *See id.* at 12–13 (citing *Monsanto Co.*

---

[5] Plaintiffs presumably would object if Defendants sought to exclude all evidence, argument, or reference to an opioid crisis in Cuyahoga or Summit Counties because Plaintiffs have withheld "some" related discovery and have failed to "certify" that every responsive document has been produced.  But that is precisely the "rule" Plaintiffs ask the Court to apply.

*v. Bayer Bioscience N.V.*, 2005 WL 5989796 (E.D. Mo. Oct. 28, 2005) and *United States v. Mason*, 2008 WL 281970 (S.D.N.Y. Jan. 25, 2008)).  In *Monsanto*, the court did not—contrary to Plaintiffs' characterization—broadly preclude the parties "from offering evidence or testimony regarding matters for which they did not produce *all* related discovery," Pls.' Omnibus MIL at 12, but rather excluded specific evidence based on clear discovery violations.[6]  The only other case Plaintiffs cite is a ***criminal*** case where the government inexplicably failed to produce highly incriminating evidence to the criminal defendant until just weeks before trial, in clear violation of disclosure obligations under Rule 16 of the Federal Rule of ***Criminal*** Procedure.  *Mason*, 2008 WL 281970, at *2–3.  Neither case bears any resemblance to the situation here.

*Third,* while Plaintiffs make general references to Pharmacy Defendants "withholding related discovery," Pls.' Omnibus MIL at 12, Plaintiffs have failed to identify any concrete discovery violations or prejudice to support either motion, relying on vague and unsubstantiated insinuations.  *See, e.g.*, *id.* at 12 ("[T]o the extent any Defendants selectively produced discovery . . . ."); *id.* at 13 ("To the extent said information has been withheld . . . .").[7]  This Court has

---

[6] The defendant in *Monsanto* committed two discrete discovery violations the court found warranted exclusion.  First, the defendant had not produced an entire category of documents relating to the failure of technologies in a peripheral, later-filed patent.  *See* 2005 WL 5989796, at *8.  The evidence excluded was only marginally relevant to the core issues of the case.  *See id.* (describing plaintiff's first argument for exclusion as being that the evidence from the later-filed patent was "not relevant" to the actual patent at issue).  Second, the defendant defeated a motion to compel based on representations that a category of evidence was "irrelevant to any issue in the case," only to later submit an expert report on damages that relied in part on some of that very same evidence.  *Id.* at *18-19.  In that context, the court concluded that permitting the defendant to rely on a partial production would be "fundamentally unfair."  *Id.* at *19.

[7] Plaintiffs complain in passing that Defendants have "refused . . . to certify that all relevant documents have been produced."  Pls.' Omnibus MIL at 10.  Plaintiffs do not develop this argument or cite any authority for such a requirement.  While parties are directed to certify the completeness of initial disclosures under Federal Rule of Civil Procedure 26(g)(1)(A), there is no certification requirement for document production.  *See, e.g.*, *United States v. Fresenius Med. Care Holdings, Inc.*, 2014 WL 11517841, at *5–6 (N.D. Ga. May 13, 2014); *Moore v. Publicis Groupe*,

repeatedly declined to issue blanket evidentiary rulings or to rule on abstract disputes.  *See, e.g.*, Dkt. 3058 at 43 n.85 ("The Court cannot rule on these arguments in the abstract.  At trial, the test for each witness's testimony will include whether Plaintiffs produced the information in discovery."); *id.* at 66 ("[T]he Court declines to make a blanket ruling and instead will address this issue as it may arise in the context of trial."); *id.* at 67 ("The Court agrees with Plaintiffs that this motion is overly broad and vague and raises matters that can only be properly addressed in the context of trial.").

Indeed, with one limited exception, Plaintiffs fail to identify ***any*** specific discovery withheld by ***any*** Defendant.  That is reason enough to deny the motions.  As their sole example of an actual dispute, Plaintiffs "adopt[] and incorporate[] by reference" a discovery motion emailed to the Special Master in late July 2020, challenging privilege claims by Walgreens and requesting the same relief they now seek in these motions.  *See* Pls.' Omnibus MIL at 13 n.4.[8]  The Special Master has now ruled that Walgreens and Plaintiffs previously resolved all of their disputes over certain sets of documents by agreement, and further ruled that the parties may continue with challenges to specific exemplar documents from other sets of documents.  *See* Dkts. 3455, 3461. The Special Master did ***not*** rule on any individual privilege claims, much less hold that Walgreens was improperly using privilege as a "sword and shield."  That result is no surprise.  As described above, the Special Master already rejected the Plaintiffs' exact legal argument—in the identical SOMS context—when Plaintiffs made it against defendants in Track 1A.

---

287 F.R.D 182, 188 (S.D.N.Y. 2012).  In addition, and as noted above, Plaintiffs also have not certified that they have produced all relevant documents.  Nor could they.

[8] To the extent the Court is inclined to consider Plaintiffs' July 22, 2020 discovery motion before the Special Master, Pharmacy Defendants adopt and incorporate by reference Walgreens' responsive submissions.

*Finally,* unable to identify any concrete examples of actual discovery violations, Plaintiffs accuse Defendants of "cherry-picking" based on the mere fact that Defendants have claimed privilege over certain SOMS-related documents or testimony.  Plaintiffs do not allege that Defendants have improperly withheld clearly ***non-privileged*** responsive documents, or selectively produced some ***privileged*** documents but not others, they simply disagree with Defendants' privilege designations.  Defendants are under no obligation to waive privilege because a document is otherwise responsive, however.  Nor does producing only responsive, non-privileged material constitute "cherry-picking."[9]  Under Plaintiffs' rule, Defendants could never claim privilege over any SOMS-related documents or testimony without conceding liability.  The Special Master has repeatedly held otherwise.[10]  The Sixth Circuit has rejected any such a theory of implied waiver.  *See supra* at 8 n.4.  And as noted above, the Court has repeatedly denied motions to exclude broad categories of evidence, instead permitting the parties to rely on otherwise admissible evidence so long as it was produced in discovery.  *See supra.*

Because they are exceedingly overbroad, rely almost entirely on abstract complaints, and are foreclosed by the Court's decisions, Plaintiffs' MIL Nos. 38 and 39 should be denied.

---

[9] The frequency with which parties to litigation challenge each other's privilege logs further demonstrates how wildly overbroad Plaintiffs' requested rule would be, allowing any party that disagrees with any privilege designation to seek exclusion of the entire subject matter.

[10] For example, in Plaintiffs' July 22, 2020 discovery motion, Plaintiffs argued that Walgreens' 30(b)(6) deposition in Track 1A was an example of Walgreens using privilege as a "sword" and a "shield."  But the Special Master oversaw that 30(b)(6) deposition and permitted Walgreens' objections to questions regarding SOMS that implicated attorney-client privilege.  And the Special Master has likewise held, including during *in camera* review of certain of Walgreens' privilege claims, that it is proper to assert attorney-client privilege over SOMS documents as long as that privilege is narrowly tailored.  The Special Master previously upheld the vast majority of Walgreens' privilege claims on this basis, *see, e.g.*, Dkts. 1387 and 1395, and has upheld privilege claims by other parties on similar grounds, *see, e.g.*, Dkts. 1353, 1593, 1666, and 1678.

**B.**  **Plaintiffs' Motion *in Limine* No. 40**:  **Any reference to, or evidence of, any litigation between Summit or Cuyahoga County and its past or present employees.**

Pharmacy Defendants do not currently intend to present evidence or argument regarding the fact of litigation between Summit or Cuyahoga County and its past or present employees, unless Plaintiffs open the door to it or otherwise make it relevant to rebuttal.  Should circumstances change in that regard, Defendants will raise the matter outside of the presence of the jury to seek a ruling before offering such evidence or argument.  This motion is premature.

**C.**  **Plaintiffs' Motion *in Limine* No. 41**:  **Any reference to, or evidence of, the firing of any County employee by Summit or Cuyahoga County.**

Plaintiffs argue that "references to, or evidence of, the circumstances surrounding the firing of any county employee by Summit or Cuyahoga County should be excluded."  Pls.' Omnibus MIL at 17.  A motion to exclude such evidence in the abstract and without an evidentiary record is premature.  Defendants currently have no plans to offer evidence regarding the firing of any Summit or Cuyahoga employees, and there surely may be certain reasons for termination that are inappropriate to disclose to a jury.  Depending on the evidence ***actually*** introduced at trial, however, the circumstances surrounding employment termination could become relevant in connection with particular witnesses.  Plaintiffs identified over 120 trial witnesses on their Joint Proposed Witness List, including two dozen county employees.  Setting aside the fact that this is clearly impracticable in light of the trial schedule, Defendants do not know—and realistically cannot know—which, if any, of their employees Plaintiffs actually plan to call at trial.  Under the circumstances, Defendants cannot speculate as to the potential relevance of the evidence surrounding the termination of employment of all of those potential witnesses.

Once Plaintiffs call an employee witness, or if Defendants decide to call any of Plaintiffs' employees, the parties can then evaluate the relevance of any such evidence and raise appropriate objections thereto.  In the event that Defendants seek to introduce any such evidence, Plaintiffs

- 14 -

will have the opportunity to object at that time.  This motion is more appropriately raised if the issue arises at trial, and the Court should therefore deny it as premature.  *See, e.g.*, *William F. Shea, LLC v. Bonutti Research, Inc*., 2013 U.S. Dist. LEXIS 78267, at *4–7 (S.D. Ohio June 4, 2013) ("How the Court could possibly be expected to preclude testimony . . . in a vacuum is a mystery."); *Gerling & Assocs. v. Gearhouse Broad. Pty*, 2013 U.S. Dist. LEXIS 160165, at *21 (S.D. Ohio Nov. 8, 2013) (denying motion *in limine* as premature where opposing party did not intend to offer the evidence in question); *Ross v. Am. Red Cross*, 2012 U.S. Dist. LEXIS 77475, at *19 (S.D. Ohio June 5, 2012) (same).

D.  **Plaintiffs' Motion** *in Limine* **No. 42**:  **Any reference to the efforts or actions of any Defendant, or its affiliates or employees, in connection with COVID-19, or the impact of COVID-19 on any Defendant, or its affiliates or employees.**

Plaintiffs seek a broad ruling generally prohibiting Defendants from "mention[ing] any actions taken by them, their affiliates, or their employees in connection with COVID-19," or the impact COVID-19 has had on themselves or their employees.  *See* Pls.' Omnibus MIL at 24. Plaintiffs' motion is purely hypothetical, and their request is overbroad and premature.  There are numerous ways in which the impact of COVID-19 on Defendants and their employees, or their response to the pandemic, could be relevant and admissible at trial.

*First*, the reality of the COVID-19 pandemic is such that various employees of Defendants may be unable to attend all, or portions of, the trial in person. Defendants must be permitted to explain why their employees are not present in person, even if those reasons concern the effect of COVID-19 on Defendants or their employee-witnesses or employee-representatives.  Those reasons could include the witness's own safety (particularly if the witness has a COVID-19 risk factor), the constraints of the court's trial procedures designed to limit the number of individuals present at counsel table, the need to quarantine due to the laws of their home state or the State of

- 15 -

Ohio, or the need to quarantine due to possible exposure or to protect a vulnerable household member.

*Second*, as the Court recognized in the Track 1A litigation, Defendants should be permitted to offer evidence of "good deeds" if "another party offers evidence to the contrary." Dkt. 3058 at *67–68; *see also Alvarez v. King Cty.*, 2017 WL 3189025, at *1 (W.D. Wash. July 27, 2017) (noting the parties' agreement that Defendants may "present evidence regarding the 'good character' or other 'good' acts of the Defendants" if "Plaintiff 'opens the door' by placing the Defendants' . . . character at issue"); *Zander v. Orlich*, 2017 WL 2972452, at *2 (N.D. Ind. July 12, 2017) (concluding that "should Plaintiff . . . open the door to the general character or general reputation of Defendant . . . then [Defendant] may, within the court's discretion, present evidence and argument showing specific good acts"). For example, if Plaintiffs are permitted to introduce evidence or argument suggesting that Pharmacy Defendants are out-of-state corporations who allegedly do not care about Ohio communities, Pharmacy Defendants should be permitted to respond with countervailing evidence of the positive things they have done for those communities. These "good acts" may include, but are not limited to, the steps various Pharmacy Defendants have taken to respond to the COVID-19 pandemic.

*Third*, and relatedly, on multiple occasions in the MDL and other opioid litigation, Plaintiffs have argued that various Pharmacy Defendants have valued "profits over people." *See, e.g.*, Dkt. 2218 at *2 (argument from Track 1A plaintiffs that "properly controlling opioid distribution was too costly and would have limited Walmart's profits from opioids"). To the extent Plaintiffs attempt to make similar arguments during the Track 1B trial, evidence of Defendants' responses to the COVID-19 pandemic may be relevant to refute such claims. *See, e.g.*, *Alvarez*, 2017 WL 3189025, at *1; *Orlich,* 2017 WL 2972452, at *2.

These are just a few of the ways in which a Pharmacy Defendant's response to the COVID-19 epidemic, or its impact on Pharmacy Defendants and their employees, might be relevant at trial. There are other examples where these came from. It is too early now to determine categorically that Pharmacy Defendants' responses to COVID-19 are not relevant to trial.

E. **Plaintiffs' Motion *in Limine* No. 43:** **Reference to class actions filed against Pharmacy Defendants relating to dispensing conduct**

Finally, Plaintiffs ask the Court not to allow Pharmacy Defendants to introduce evidence regarding class action lawsuits filed against certain Pharmacy Defendants alleging that they wrongfully refused to dispense opioid medications. *See generally* Dkt. 3448. Pharmacy Defendants agree with many of the points raised in this Motion.[11] For example, Pharmacy Defendants agree that allegations—whether in a lawsuit, news article, settlement agreement, or other medium—are not admissible for the truth of the matter asserted. The Court should apply this prohibition across the board. *See id.* at 2.

Pharmacy Defendants have no intention at this time to seek admission of the referenced dispensing-related class action lawsuits (or similar class actions) in Track 1B, unless Plaintiffs somehow open the door to such evidence and/or make it relevant for rebuttal. In the event Plaintiffs do, Pharmacy Defendants will raise the issue outside of the presence of the jury. This motion is thus premature.

**CONCLUSION**

For the reasons set forth above, the Defendants respectfully request that the Court DENY both Plaintiffs' renewed and new motions *in limine*.

Dated:  September 14, 2020                    Respectfully submitted,

---

[11] The Pharmacy Defendants obviously disagree with the truly bizarre insinuation that they are somehow involved in a conspiracy to sue themselves. *See* Dkt. 3448 at 1–2.

- 17 -

/s/ Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel:  (202) 778-1800
Fax:  (202) 822-4106
edelinsky@zuckerman.com
smiller@zuckerman.com

*Attorneys for CVS Indiana, L.L.C. and CVS Rx Services, Inc.*


/s/ Timothy D. Johnson  (consent)
Timothy D. Johnson (0006686)
CAVITCH FAMILO & DURKIN,
CO. LPA
Twentieth Floor
1300 East Ninth Street
Cleveland, Ohio  44114
(216)621-7860
(216)621-3415 Fax
tjohnson@cavitch.com

*Attorney for Defendant Discount Drug Mart, Inc.*


/s/ Robert M. Barnes (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc., and HBC Service Company*

/s/ Kelly A. Moore (consent)
Kelly A. Moore, Esq.
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001

John P. Lavelle, Jr., Esq.
John.lavelle@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
T: 215-963-5917
F: 215-963-5001

*Counsel for Rite Aid of Maryland*

*/s/ Kaspar J. Stoffelmayr* (consent)
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
Email:
kaspar.stoffelmayr@bartlitbeck.com
Email:
brian.swanson@bartlitbeck.com
Email: kate.swift@bartlitbeck.com
Email: sharon.desh@bartlitbeck.com
Email: sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Phone: (303) 592-3100
Fax: (303) 592-3140
Email: alex.harris@bartlitbeck.com

*Counsel for Defendants Walgreen Co.*

/s/   John M. Majoras
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*