**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: | Case No. 17-md-2804 |
| *Track One Cases* | Hon. Dan Aaron Polster |

**TEVA DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. Years Before Any Opioid Litigation, The Report At Issue Was Sent To An Employee Of Watson Manufacturing, Whose Custodial File Was Not Transferred to the Teva Defendants. ..... 3

B. The Teva Defendants Searched Diligently for the SOM Assessment But Have Never Located It. ..... 4

C. Even IQVIA Could Not Locate the SOM Assessment During Track 1 Discovery. ..... 5

D. The Teva Defendants Produced The SOM Assessment Immediately After Obtaining It. ..... 5

III. ARGUMENT ..... 6

A. Plaintiffs Have Not Shown And Cannot Show Any Discovery Failure By The Teva Defendants. ..... 7

B. Plaintiffs Fail To Establish The Other Elements Necessary to Warrant Sanctions. ..... 9

1. The Teva Defendants Did Not Engage In Any Discovery Violations, Much Less Willfully Or In Bad Faith. ..... 9

2. Plaintiffs Do Not And Cannot Show That They Have Been Prejudiced. ..... 10

3. Plaintiffs Fail To Establish The Remaining Two *Doe* Factors. ..... 11

C. The Particular Sanctions Plaintiffs Seek Are Extreme And Not Justified By Any Alleged Discovery Failure. ..... 12

D. The Court Should Conduct A Hearing Before Imposing Any Sanctions. ..... 13

IV. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bradley J. Delp Revocable Tr. v. MSJMR 2008 Irrevocable Tr.*,
665 F. App'x 514 (6th Cir. 2016) ....................9

*Wilson ex rel. Doe v. Columbus Bd. of Educ.*,
No. CIV. A. 2:06-CV-642, 2008 WL 2839475 (S.D. Ohio July 21, 2008) ....................12

*Doe v. Lexington-Fayette Urban Cty. Gov't.*,
407 F.3d 755 (6th Cir. 2005) ....................7, 9, 11

*Ferron v. Echostar Satellite, LLC*,
658 F. Supp. 2d 859 (S.D. Ohio 2009), *aff'd,* 410 F. App'x 903 (6th Cir. 2010) ....................9, 13

*Fuchs v. Selene Fin., LP*,
No. 2:15-CV-895, 2017 WL 680495 (S.D. Ohio Feb. 21, 2017) ....................6

*Little Hocking Water Assn., Inc. v. E.I. du Pont de Nemours & Co.*,
94 F. Supp. 3d 893, 935 (S.D. Ohio 2015) ....................10

*Peltz v. Moretti*,
292 F. App'x 475 (6th Cir. 2008) ....................6, 9

**Other Authorities**

Fed. R. Civ. P. 37(b)(2)(A) ....................2, 6, 7

## I. INTRODUCTION

Plaintiffs' Motion seeks to have this Court impose drastic sanctions for ***all future cases*** over a ***single document*** that the Teva Defendants[1] ***produced as soon as they obtained a copy of it***. Plaintiffs attempt to manufacture grounds for those sanctions on the false and unsupported contention that the Teva Defendants willfully withheld or otherwise failed to search for the document during discovery in the Track 1 litigation, a case that settled over a year ago.[2] That document—a 2011 report concerning a historical suspicious order monitoring system—was not among the millions of documents that the Teva Defendants have collected in opioid litigations across the country. Further, the one custodial file from which Plaintiffs claim this report should have been produced was never in the custody, control, or possession of the Teva Defendants. In fact, after extensive investigation, the Teva Defendants still have not been able to locate the report in any file or source.[3] Plaintiffs' Motion should be denied for at least three reasons:[4]

[1] The Teva Defendants are Teva Pharmaceuticals USA, Inc. ("Teva USA"), Cephalon, Inc. ("Cephalon"), Actavis LLC, Watson Laboratories, Inc. and Actavis Pharma, Inc.

[2] Plaintiffs improperly define the "Teva Defendants" that made the productions at issue as "Teva Pharmaceutical Industries, Ltd.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Warner Chilcott Company, LLC; Actavis Pharma, Inc.f/k/a Watson Pharma, Inc.; Actavis South Atlantic LLC; Actavis Elizabeth LLC; Actavis Mid Atlantic LLC; Actavis Totowa LLC; Actavis LLC; Actavis Kadian LLC; Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City; and Actavis Laboratories FL, Inc. f/k/a Watson Laboratories, Inc.-Florida." (Mot. at 1.) While these entities have been named in several other opioid-related cases in the MDL, and the Teva Defendants searched and produced documents relating to and in the possession of these entities, only Teva Pharmaceutical Industries Ltd. ("Teva Ltd."), Teva USA, Cephalon, Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. were named defendants in Track 1. Plaintiffs' inappropriate attempt to seek sanctions against entities that were not even named as defendants or required to produce anything in Track 1 should be rejected. Moreover, Teva Ltd. is a foreign company based in Israel that does not have direct contact with the United States and does not engage in any marketing of opioids in the United States. Thus, personal jurisdiction does not exist over Teva Ltd. and Teva Ltd. is not included as a "Teva Defendant" here.

[3] Allergan plc, Allergan Finance, LLC, Allergan Sales, LLC, and Allergan USA, Inc. are collectively referred to as "Allergan".

[4] The term "Plaintiffs" is not defined in their Motion and, thus, it is unclear which plaintiffs in the MDL proceedings bring this Motion.

*First*, the Teva Defendants satisfied their discovery obligations and did not violate any order by this Court, which is a requirement under Fed. R. Civ. P. 37(b)(2)(A) for the sanctions Plaintiffs seek. The Teva Defendants could not have produced the report because it did not (and still does not) exist in their vast trove of data collected and produced in Track 1 and related opioid cases around the country. The Teva Defendants searched the custodial files of every Teva Defendant custodian that was collected in the course of dozens of opioid-related litigations and investigations, and searched every non-custodial source likely to contain the report. The report is not in those materials. Similarly, the report has never been located by Allergan in its vast document collections. Even after repeated requests and a subpoena to IQVIA (the successor entity to the company that created the report), IQVIA took over a year to locate the report, at which point the Teva Defendants promptly produced it. This does not amount to a discovery violation.

*Second*, Plaintiffs fail to demonstrate any of the other factors necessary to support sanctions. Plaintiffs do not show there was any bad faith or willful misconduct by any Teva Defendant. To the contrary, the Teva Defendants' extensive yet futile efforts to locate the document, and their prompt production of it once IQVIA found it, belie any bad faith or willful misconduct. Nor have Plaintiffs been prejudiced, given that the Track 1 matter settled with respect to the Teva Defendants and Plaintiffs received full productions of all requested discovery pertaining to the Teva Defendants' SOM systems. Plaintiffs now have the document and can use it in all cases going forward.

*Third* and finally, Plaintiffs offer no legal authority or factual basis for the draconian sanctions they seek, including what would amount to summary judgment for all future cases on a disputed legal issue based upon a non-existent discovery violation concerning a single document

that Plaintiffs now have. Moreover, the sanctions Plaintiffs seek would not only grossly prejudice the Teva Defendants, but would violate their due process rights.

Plaintiffs' Motion should be denied.

## II. FACTUAL BACKGROUND

### A. Years Before Any Opioid Litigation, The Report At Issue Was Sent To An Employee Of Watson Manufacturing, Whose Custodial File Was Not Transferred to the Teva Defendants.

The report at issue consisted of a cover letter and Suspicious Order Monitoring (SOM) Assessment (together, the "SOM Assessment"), attached to an email. That email (the "Cegedim Email") was sent by an employee of an outside vendor called Cegedim, to an employee of Watson Manufacturing Services, Inc. ("Watson Manufacturing") named Thomas Napoli on September 22, 2011—years before any opioid litigation was commenced, including the Track 1 cases. (*See* Jonathan Maier Declaration ("Decl."), attached as Exhibit 1, ¶ 2.) Watson Manufacturing is not a Teva Defendant and, at the time of the Cegedim Email in 2011, was an affiliate of Allergan. In his role at Watson Manufacturing, Mr. Napoli oversaw the SOM program of Watson Pharma Inc., a Teva Defendant. Mr. Napoli is the only custodian in this litigation or any opioid-related litigation involving any Teva Defendant who received the Cegedim Email. (*Id.* ¶ 4.)

In July 2016, Watson Manufacturing, Watson Pharma, Inc., and other generic entities and business lines from Allergan (collectively, the "Acquired Actavis Entities") became indirect subsidiaries of Teva USA. (*Id.* ¶ 5.) However, as part of the acquisition, neither Teva USA nor the Acquired Actavis Entities received, among other documents that were retained by Allergan, the custodial file of Mr. Napoli who left the company as a result of acquisition. (*Id.* ¶¶ 6-7.)

### B. The Teva Defendants Searched Diligently for the SOM Assessment But Have Never Located It.

Pursuant to a September 2, 2018 Order from Special Master Cohen, Allergan and Track 1 Plaintiffs negotiated certain custodians and search terms to be used in collecting additional documents related to generic opioid products that were in Allergan's possession. (*Id.* ¶ 8.) Because some of these documents related to the Acquired Actavis Entities, Allergan and the Teva Defendants jointly produced these documents. (*Id.* ¶¶ 8-9.) To make those joint productions, Allergan collected the agreed custodial files and applied the search terms. (*Id.* ¶ 10.) After performing an initial review to identify and remove privileged documents, Allergan sent the remainder of the documents that contained search terms and their family members—and only those documents—to the Teva Defendants for review and production. (*Id.* ¶¶ 10-11.) The documents provided by Allergan contained the results of the search of Mr. Napoli's files, but did not contain the Cegedim Email or the SOM Assessment. (*Id.* ¶ 12.)

The Teva Defendants' extensive document collections in the course of this action and dozens of other opioid-related actions throughout the country spanned all non-custodial sources that would have contained the Cegedim Email and SOM Assessment (and various other sources), but those sources simply did not contain the Cegedim Email or the SOM Assessment. (*Id.* ¶¶ 14-15.) Moreover, during Track 1, the Teva Defendants requested from IQVIA any reports or work product related to SOM services provided to the Teva Defendants by any entities related to Buzzeo (a Cegedim company) and/or IQVIA, as well as any communications concerning SOM system audits, SOM design, and SOM generally. (*Id.* ¶ 17.) IQVIA did not provide the Cegedim Email or the SOM Assessment to the Teva Defendants in response to that request. (*Id.*)

During discovery, the Track 1 Plaintiffs requested that Allergan and the Teva Defendants produce the SOM Assessment. (*Id.* ¶ 18.) Despite the Teva Defendants' and Allergan's extensive

investigations, the SOM Assessment had not been located but was referenced in other produced documents and discussed during depositions. (*Id.*) The Teva Defendants conducted additional searches and still could not locate the document. (*Id.*)

### C. **Even IQVIA Could Not Locate the SOM Assessment During Track 1 Discovery.**

During discovery in Track 1 the Teva Defendants asked IQVIA, Cegedim's successor, for, among other things, reports or work product related to suspicious order monitoring service provided to the Teva Defendants and any related communications to suspicious order monitoring. (*Id.* ¶ 17.) IQVIA did not provide the Teva Defendants with the Cegedim Email or SOM Assessment. (*Id.*) Allergan further asked IQVIA if it could locate the SOM Assessment several times in response to Plaintiffs' inquiry during Track 1. (*Id.* ¶ 19.) IQVIA responded that it could not. (*Id.*)

Plaintiffs in Track 1 issued a subpoena to IQVIA. (*Id.* ¶ 20.) The documents that IQVIA planned to produce that related to the Teva Defendants were provided to the Teva Defendants in August 2019, so that the Teva Defendants could review them for privilege. (*Id.* ¶ 21.) Those documents included the Cegedim Email as part of an email chain, but did not contain the SOM Assessment. (*Id.*)

Though Plaintiffs knew of the report and did not have it, they proceeded through the close of fact discovery, expert discovery, and summary judgment, and they prepared for trial in Track 1. Track 1 settled on October 21, 2019.

### D. **The Teva Defendants Produced The SOM Assessment Immediately After Obtaining It.**

On August 6, 2020, nearly 10 months after the Track 1 case settled, counsel for IQVIA alerted counsel for the Teva Defendants that it located the SOM Assessment after it had conducted further searches in response to a July 29, 2020 email inquiry from Plaintiffs. (*Id.* ¶ 24.) Plaintiffs'

email was the first inquiry that Plaintiffs made to IQVIA regarding the SOM Assessment since the Cegedim Email was produced 11 months earlier; Plaintiffs' email posited that the SOM Assessment had been inadvertently excluded from IQVIA's productions in Track 1. (*Id.* ¶ 24.) Following receipt of the SOM Assessment, counsel for the Teva Defendants were able for the first time to run additional targeted searches using the SOM Assessment and once again confirmed that it was not in the many millions of documents that they collected across dozens of opioid litigations. (*Id.* ¶ 27.) Indeed, the SOM Assessment does not exist in any of the documents the Teva Defendants collected in Track 1 or any other opioid-related litigation, any of the documents sent to the Teva Defendants by Allergan or IQVIA in the course of Track 1 or any other opioid-related litigation or investigation, any of the documents withheld for privilege by the Teva Defendants in Track 1 or any other opioid-related litigation, or any of the documents produced by any party in Track 1. (*Id.*)

The Teva Defendants produced the SOM Assessment (that they obtained from IQVIA's counsel) to Plaintiffs on August 20, 2020. (*Id.* ¶ 29.)

## III. <u>ARGUMENT</u>

"[S]anctions are discretionary and are a drastic remedy that courts should be cautious in imposing." *Fuchs v. Selene Fin., LP*, No. 2:15-CV-895, 2017 WL 680495, at *4 (S.D. Ohio Feb. 21, 2017). Under Rule 37(b)(2)(A), sanctions may not even been considered unless the plaintiff can prove that a party has "fail[ed] to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A); *see Peltz v. Moretti*, 292 F. App'x 475, 479 (6th Cir. 2008). Moreover, even if there is such a failure, a court may not impose sanctions under Rule 37 and controlling Sixth Circuit law unless the moving party shows that they are justified under a four-factor test that evaluates: (1) whether the party failed to cooperate in discovery due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether

the party was warned that failure to cooperate could lead to the sanction; and (4) if dismissal as a sanction is sought, whether less drastic sanctions were first imposed or considered. *Doe v. Lexington-Fayette Urban Cty. Gov't.*, 407 F.3d 755, 765-66 (6th Cir. 2005).

Plaintiffs fail to show how any sanction here would be justified. For several independent reasons, their Motion should be denied.

**A. Plaintiffs Have Not Shown And Cannot Show Any Discovery Failure By The Teva Defendants.**

Plaintiffs seek to impose drastic sanctions upon the Teva Defendants for failure to obey a discovery order under Rule 37(b)(2)(A). Plaintiffs contend that the Teva Defendants violated DR 14 and 15 in Track 1 because they never produced the Cegedim Email or the SOM Assessment. (Mot. at 6.) This argument fails for one fundamental reason: the Teva Defendants have never been able to locate them in their files, or obtain them from other entities, despite exhaustive investigations, searches, and collections.

Plaintiffs have failed to show that the Teva Defendants had the necessary possession, custody, or control of the Cegedim Email or the SOM Assessment or that the Teva Defendants otherwise failed to reasonably search for them. The Teva Defendants could not have failed to produce a document that was not located through extensive investigation. Plaintiffs do not dispute that Cegedim sent the documents to Mr. Napoli, an employee of Watson Manufacturing. (Decl. ¶ 3.) Mr. Napoli was never an employee of any Teva Defendant, and the Teva Defendants did not receive Mr. Napoli's custodial file in the usual course of business.[5]

The Teva Defendants also were not involved in the collection of Mr. Napoli's custodial file for production in Track 1. (Decl. ¶¶ 10-11.) Only Allergan possessed Mr. Napoli's file, from

5 Nor do Plaintiffs dispute that the SOM Assessment itself was created and distributed by Cegedim (the predecessor to IQVIA) and was not created by a company affiliated with Allergan or the Teva Defendants. (Mot. at 3; *see also* Ex. 1 to Mot.).

when Watson Manufacturing was one of its affiliates, and Allergan conducted the custodial collection, applied search terms, and then sent the resulting relevant documents to the Teva Defendants' counsel. (*Id*. ¶¶ 10-12.) The Cegedim Email and SOM Assessment were not included in those files. (*Id*.) The Teva Defendants even conducted a search of their own files for any additional custodial files for Mr. Napoli and confirmed that they did not have the Cegedim Email or SOM Assessment. (*Id*. ¶ 13.)

The Teva Defendants have satisfied their discovery obligations, and produced millions of pages of documents in this case, including myriad documents pertaining to their SOM systems. This includes the custodial files of more than 100 current and former employees (including those collected by Allergan) and documents from various non-custodial sources, including the Teva Defendants' DEA compliance folder, the Teva Defendants' SOM folder, non-custodial folders identified by key anti-diversion personnel in the course of the Teva Defendants' investigation, and hard copies of historical documents found at Teva Defendant facilities that were collected and scanned for production. (Decl. ¶ 14.) Nothing has been concealed from the Plaintiffs. Indeed, when Plaintiffs specifically inquired about this document, counsel for the Teva Defendants conducted additional searches and confirmed that it was not within the collected files. (*See* Mot., Ex. 7; Decl. ¶ 13.)

Importantly, the Teva Defendants produced the SOM Assessment as soon as they received a copy of it. IQVIA produced the Cegedim Email transmitting the SOM Assessment in the Track 1 litigation in August 2019 in response to a third-party subpoena from Plaintiffs. (Decl. ¶¶ 21-22.) For reasons unknown to the Teva Defendants, the SOM Assessment was not included along with the Cegedim Email. A year later, IQVIA located the SOM Assessment it previously indicated it did not possess and alerted the Teva Defendants' counsel of its existence. (*Id*. ¶ 24.) The Teva

Defendants' counsel produced the document within two weeks of obtaining it.[6] (*Id.* ¶ 29.) They hid nothing. They violated no court order. And "sanctions may not be used against a party who never defied a court order compelling discovery." *Peltz v. Moretti*, 292 F. App'x at 479.

### B. Plaintiffs Fail To Establish The Other Elements Necessary to Warrant Sanctions.

Plaintiffs' Motion also provides no justification for the imposition of any sanctions, much less the extreme sanctions they seek. Plaintiffs do not show that: (1) Teva Defendants failed to cooperate in discovery due to willfulness, bad faith, or fault; (2) Plaintiffs were prejudiced by the Teva Defendants' failure to cooperate in discovery; (3) the Teva Defendants were warned that failure to cooperate could lead to the sanctions that Plaintiffs seek here; and (4) if dismissal as a sanction is sought, that less drastic sanctions were first imposed or considered. *See Doe*, 407 F.3d at 765-66. The absence of each of these fundamental factors warrants denial of Plaintiffs' Motion.

#### 1. The Teva Defendants Did Not Engage In Any Discovery Violations, Much Less Willfully Or In Bad Faith.

For a discovery failure "to be motivated by bad faith, willfulness, or fault, [the] conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [the] conduct on those proceedings." *Bradley J. Delp Revocable Tr. v. MSJMR 2008 Irrevocable Tr.*, 665 F. App'x 514, 521–22 (6th Cir. 2016) (citation and quotation omitted). Plaintiffs have not shown and cannot show that the Teva Defendants engaged in any bad faith or willful behavior. *See Ferron v. Echostar Satellite, LLC*, 658 F. Supp. 2d 859, 864 (S.D. Ohio 2009), *aff'd,* 410 F. App'x 903 (6th Cir. 2010) (finding that plaintiff did not "me[e]t his burden of establishing that [defendant] acted in bad faith or exhibited conduct that was 'tantamount to bad faith'" regarding

---

[6] The SOM Assessment was produced in a PDF form because the Teva Defendants' document vendor could not, after repeated attempts, process the SOM Assessment in a manner that would retain its metadata. (*Id.*)

the discovery violation.) To the contrary, the Teva Defendants did not have the Cegedim Email or the SOS Assessment in their document collections, so they could not have intentionally withheld them. When Plaintiffs inquired about the SOM Assessment in 2019, the Teva Defendants acted diligently by conducting a targeted search for it and could not identify it within the extensive universe of collected documents. (Decl. ¶¶ 18, 27.) A year later, once they received the document from IQVIA, the Teva Defendants quickly produced the document to Plaintiffs. This is a far cry from "willful" or "bad faith" conduct.[7]

**2. Plaintiffs Do Not And Cannot Show That They Have Been Prejudiced.**

Plaintiffs fail to show – or even allege in their Motion – that they have been prejudiced in any way. (Mot. at 11, 13.) This alone justifies denial of their Motion. *Little Hocking Water Assn., Inc. v. E.I. du Pont de Nemours & Co.*, 94 F. Supp. 3d 893, 935 (S.D. Ohio 2015) (concluding that "sanction is unwarranted" where the moving party "fail[ed] to clearly articulate how th[e discovery] failure worked to its prejudice.").

The Track 1 case settled before trial, after the Court denied the Teva Defendants' motions for summary judgment. And, long before then, Plaintiffs were aware of the SOM Assessment and its contents. (*See* Mot. at 8 (citing testimony from the January 17, 2019 Thomas Napoli deposition).) Indeed, they obtained deposition testimony about the SOM Assessment and presentations and materials describing the document. (*Id.*; *see also* Ex. 2 to Mot.) Plaintiffs

---

[7] Plaintiffs' demand for sanctions also must be evaluated in the context of the herculean efforts taken by the Teva Defendants to collect, review, and produce documents in the Track 1 proceedings—in a timely way. The Teva Defendants searched the files of more than 100 custodians, and conducted an extensive document review for SOM-responsive documents. This included searching through non-custodial sources such as the Teva Defendants' DEA compliance folder, SOM folders, non-custodial folders identified by key anti-diversion personnel in the course of the Teva Defendants' investigation, and hard copies of historical documents found at Teva Defendant facilities that were manually scanned for production. The Teva Defendants produced more than 16 million pages of documents in Track 1 discovery. (*Id.* ¶ 14.)

received, analyzed, and used documents regarding the SOM system review, and obtained testimony regarding the September 8, 2011 meeting with Cegedim and the findings from that meeting resulting in the SOM Assessment.[8] (Thomas Napoli January 17, 2019 Deposition Transcript ("Tr."), attached as Exhibit 2, 181:11-194:9; 250:22-252:6.) And Mr. Napoli even testified about plans to implement the SOM system that Cegedim recommended. (Tr. 255:14-256:6; 280:12-281:12; 322:16-323:12.) Plaintiffs settled with the Teva Defendants, with full knowledge of the existence of the SOM Assessment. At a minimum, the SOM Assessment did not prevent the Plaintiffs from litigating their case past a motion to dismiss, past summary judgment, and to the eve of trial—where they obtained what they presumably believed was a favorable settlement.

Plaintiffs now have the SOM Assessment. They can now use that document in any active case going forward. Thus, Plaintiffs cannot show that they have been prejudiced and make no effort to do so.

**3. Plaintiffs Fail To Establish The Remaining Two *Doe* Factors.**

In addition, Plaintiffs fail to establish the other two factors. The Teva Defendants were never "warned that failure to cooperate could lead to the sanction[s]" that Plaintiffs specifically seek here. *Doe*, 407 F.3d at 766. Indeed, they complied with their discovery obligations and no such warnings were needed. The fourth factor (relating to dismissal as a sanction) "is whether less drastic sanctions were first imposed or considered." *Id*. Although Plaintiffs do not seek dismissal here, this factor—if applicable—weighs in favor of the Teva Defendants, because Plaintiffs seek similarly extreme remedies (including in the form of adverse evidentiary findings) and no sanctions previously had been imposed on the Teva Defendants.

---

8 In the transcript, Cegedim is used interchangeably with the name Buzzeo, who is the consultant that conducted the review resulting in the SOM Assessment. (*See* Mot. at 7.)

### C. The Particular Sanctions Plaintiffs Seek Are Extreme And Not Justified By Any Alleged Discovery Failure.

"[S]anctions must be tempered by both restraint and discretion," and any sanctions imposed here against any Teva Defendant would violate this fundamental principle. *Wilson ex rel. Doe v. Columbus Bd. of Educ.*, No. CIV. A. 2:06-CV-642, 2008 WL 2839475, at *3 (S.D. Ohio July 21, 2008). The sanctions that Plaintiffs seek are extreme and unwarranted, and Plaintiffs cite no authority supporting them.

First, reopening fact discovery in Track 1 for purposes of use in all MDL cases is not proper or warranted. (Mot. at 12.) Track 1 has settled and all claims against the Teva Defendants have been dismissed. There is, therefore, nothing to "reopen" as to the Teva Defendants. Nor is there any basis to do so. All relevant documents collected by Teva Defendants during Track 1 were identified and produced during discovery and every relevant document that was collected, identified, and produced in any other opioid litigation has been produced to Plaintiffs pursuant to Discovery Ruling No. 22 (Dkt. No. 2576). The Teva Defendants did not have the custodial files of any pre-acquisition employees, including Mr. Napoli. In addition, Mr. Napoli was deposed in Track 1 regarding the SOM processes he oversaw, including those discussed in the SOM Assessment. Finally, Plaintiffs can try to use the SOM Assessment during discovery for any future active cases involving the Teva Defendants.

Second, Plaintiffs' proposed sanction to direct as an established fact that the SOM system subject to the SOM Assessment did not comply with applicable law is nonsensical and has no basis in law. (Mot. at 12.) Plaintiffs effectively seek summary judgment on a critical and disputed legal issue for all future MDL cases. They cite no legal authority for such a sanction. Nor can they, given that the Track 1 case has already settled and Plaintiffs can use the SOM Assessment on a going-forward basis in all other cases. Plaintiffs' gross overreach should be rejected.

Moreover, the SOM Assessment does not support the conclusion Plaintiffs seek to impose as a sanction: that the relevant SOM system did not comply with applicable law. The SOM Assessment is just one document and merely contains the view of one outside company that had a commercial interest in obtaining a contract with Watson Pharma to create a new SOM system as a paid consultant. (*See* Ex. 1 to Mot.) It carries little to no weight, and certainly does not establish any violation of the CSA or any other law as a factual matter. (*Id.*) Their request should be denied. *See Ferron*, 658 F. Supp. 2d at 864 ("Considering the need to exercise cautious discretion in exercising its inherent authority . . . the Court concludes that the requested sanction, *i.e.*, an adverse inference that the disputed emails purportedly . . . violated Ohio law, is unwarranted.").

Lastly, Plaintiffs' request for "additional monetary or other relief the Court deems appropriate" is similarly not justified. (Mot. at 12.) As noted above, there has been no discovery failure by the Teva Defendants, nor have Plaintiffs been able to show they have been prejudiced. This request for relief should also be denied.

### D. <u>The Court Should Conduct A Hearing Before Imposing Any Sanctions.</u>

The Teva Defendants have demonstrated that Plaintiffs' motion is flawed and that no sanctions are warranted or appropriate. Nonetheless, to the extent the Court is considering entertaining Plaintiffs' motion, the Teva Defendants respectfully request that the Court hold an evidentiary hearing on this motion, including making factual determinations.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Teva Defendants respectfully request that the Court enter an order denying the Plaintiffs' Motion.

Dated: September 14, 2020

Respectfully submitted,

*/s/ Wendy West Feinstein*
Wendy West Feinstein
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219
Telephone: (412) 560-3300
wendy.feinstein@morganlewis.com

Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

*Attorneys for Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Actavis Pharma, Inc., Watson Laboratories, Inc., and Actavis LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 14, 2020, the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF System, and will be served via the Court's CM/ECF filing system on all attorneys of record.

*/s/ Wendy West Feinstein*
Wendy West Feinstein