# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*Track One Cases* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

## DECLARATION OF JONATHAN MAIER

I, Jonathan Maier, declare as follows:

1. I am an attorney at Morgan, Lewis & Bockius LLP ("Morgan Lewis") in Washington, DC. Morgan Lewis represents Teva Pharmaceuticals USA, Inc. ("Teva USA"), Cephalon, Inc. ("Cephalon"), and Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc., Warner Chilcott Company, LLC, Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, Actavis Totowa LLC, Actavis Kadian LLC, and other entities acquired from Allergan plc in 2016 (collectively, the "Teva-Acquired Actavis Defendants") (Teva USA and Cephalon are collectively referred to as "Teva." Teva and the Teva-Acquired Actavis Defendants are collectively referred to as the "Teva Defendants.") in the above-captioned action and in various other litigations related to the promotion and sale of opioid products. This included the representation of Teva, Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. (the "Track 1 Teva Defendants") in Track 1 of the above-captioned action. Through that representation, I have personal knowledge of the facts described in this declaration.

### A. The Documents At Issue

2. This declaration relates to the recent discovery by IQVIA and production by the Teva Defendants of an email dated September 22, 2011 (the "Cegedim Email") from Robert Williamson at Cegedim Compliance Solutions and the cover letter dated September 21, 2011 and Suspicious Order Monitoring (SOM) Assessment (together, the "SOM Assessment") that was attached to it.

3. The SOM Assessment was attached to the Cegedim Email when it was sent on September 22, 2011 to, among others, Tom Napoli ("Napoli").  Mr. Napoli is a former employee of Watson Manufacturing Services, Inc. ("Watson Manufacturing").

4. Napoli is the only person who received the Cegedim Email who is a custodian in this litigation or other opioid-related litigation currently pending in other courts.

### B. Teva's Acquisition of the Teva-Acquired Actavis Entities

5. Watson Manufacturing, the Teva-Acquired Actavis Defendants, and other entities were affiliates of Allergan plc ("Allergan") in 2011 and became indirect subsidiaries of Teva USA in 2016.  The entities that became indirect subsidiaries of Teva USA in 2016 are referred to collectively as the "Teva-Acquired Actavis Entities."  The transaction by which the Teva-Acquired Actavis Entities became indirect subsidiaries of Teva USA is referred to as the "Acquisition." Prior to the Acquisition, the Teva-Acquired Actavis Entities were subsidiaries and/or affiliates of Allergan and Teva USA had no ownership, control, or other interest in them.

6. Through the Acquisition, Teva received from Allergan various documents and data related to the historic and then-current business operations of the Teva-Acquired Actavis Entities. Teva did not, however, receive all files and documents relating to, or generated in the course of, the Teva-Acquired Actavis Entities' business operations prior the Acquisition.

7. Teva did not receive in the course of the Acquisition the custodial email files of Allergan personnel or the custodial email files of employees of the Teva-Acquired Actavis Entities that predated the Acquisition, which based on information and belief were retained by Allergan. Thus, Teva did not receive the custodial email file of Napoli.

    **C.**    **Collection and Production of Documents by the Teva Defendants in Track 1**

8. On September 2, 2018, Special Master Cohen issued an order, attached hereto as Attachment B, requiring Allergan to produce in Track 1 documents regarding the Teva-Acquired Actavis Entities' business related to generic opioid products that were in Allergan's possession. Specifically, Special Master Cohen ordered that Allergan and Plaintiffs negotiate custodians to be collected and that search terms negotiated between the Plaintiffs and the Track 1 Teva Defendants be applied to those custodial files. On September 21, 2018, Special Master Cohen issued another order regarding Allergan's generic productions stating, among other things, that the Teva Defendants and Allergan could "produce and Bates-stamp one set of documents jointly, in order to avoid duplication." (Dkt. No. 989.)

9. Allergan and Plaintiffs agreed to the production of the certain email custodial files, including the custodial file of Napoli. In accordance with Special Master Cohen's orders, Allergan and the Track 1 Teva Defendants subsequently produced those documents. Also in accordance with Special Master Cohen's orders and because Plaintiffs sought the same documents from both Allergan and the Track 1 Teva Defendants, Allergan and the Track 1 Teva Defendants did so jointly and with a unique Bates stamp to make it clear to all parties that these documents pertained to the Teva-Acquired Actavis Defendants' generic opioid operations prior to the Acquisition.

10. In order to make those joint productions, Allergan collected the agreed custodial files, which were in Allergan's (not the Teva Defendants') possession, and applied the search terms

3

mandated by the Production Order. After performing an initial review to identify and remove privileged documents and documents related solely to Allergan's branded opioid products, Allergan's counsel sent the remainder of the documents that contained search terms and their family members – and only those documents – to Morgan Lewis. Morgan Lewis and the Teva Defendants' document vendor then reviewed and produced those documents as appropriate on behalf of Allergan and the Teva Defendants.

11. Following this process, between September and October 2018, Allergan's counsel provided Morgan Lewis with the documents from Napoli's custodial files and the files of other custodians that hit on the applicable search terms.

12. The documents that Allergan's counsel provided to Morgan Lewis from Napoli's files (or any other custodian's files) did not contain the Cegedim Email or the SOM Assessment.

13. The Teva Defendants subsequently searched their own files for additional documents from Napoli's custodial file. Those searches located neither the Cegedim Email nor the SOM Assessment.

14. Neither the Cegedim Email nor the SOM Assessment were included in any of the extensive document collections conducted by the Teva Defendants in the course of this action and dozens of other opioid-related actions and investigations throughout the country. Those collections included the custodial files of more than 100 current and former employees (including those collected by Allergan) and documents from various non-custodial sources, including the Teva Defendants' DEA compliance folder, the Teva Defendants' Suspicious Order Monitoring ("SOM") folder, non-custodial folders identified by key anti-diversion personnel in the course of the Teva Defendants' investigation, and hard copies of historical documents found at Teva Defendant facilities that were collected and scanned for production.

15. Based on my knowledge of the document sources available to the Teva Defendants and the thoroughness of the Teva Defendants' collections, I believe that the Teva Defendants' document collections included all sources agreed to by the Parties and all additional sources available to the Teva Defendants in which one could reasonably expect to locate the SOM Assessment. The Teva Defendants exhausted all reasonable measures to locate the SOM Assessment, and there is no indication that they ever possessed it.

### D. The Teva Defendants' Requests for Documents from IQVIA, Plaintiffs' Inquiry to Allergan, and Plaintiffs' Subpoena to IQVIA

16. In November 2018, the Teva Defendants requested from IQVIA, the successor to Cegedim, any contracts and statements of work related to services provided by IQVIA and its related entities and produced the documents that IQVA could locate. The documents that IQVIA produced in response to those requests did not include the Cegedim Email or the SOM Assessment.

17. On February 7, 2019, the Teva Defendants requested from IQVIA any reports or work product related to suspicious order monitoring services provided to the Teva Defendants by any entities related to Buzzeo (a Cegedim company) and/or IQVIA, as well as any communications concerning SOM system audits, SOM design, and SOM generally between any Buzzeo-related entities and/or IQVIA and any of the Teva Defendants. IQVIA did not produce to the Teva Defendants the Cegedim Email or the SOM Assessment in response to that request.

18. In April 2019, Plaintiffs requested a copy of the SOM Assessment, which no party had been unable to locate but had been referenced in other produced documents and during depositions, from Allergan and the Teva Defendants. In response to that inquiry, Morgan Lewis conducted additional searches but could not locate the document and understood that Allergan did the same.

19. In response to the same inquiry from Plaintiffs, Allergan repeatedly asked IQVIA from April 2019 to June 2019 if IQVIA could locate the SOM Assessment. To my and Morgan Lewis's knowledge, IQVIA informed Allergan that it could not locate the SOM Assessment.

20. During Track 1 discovery, Plaintiffs served IQVIA with a third party subpoena to produce documents related to services provided by IQVIA and is predecessors to various defendants, including the Teva Defendants.

21. In response to that subpoena, IQVIA gathered documents related to the Teva Defendants and provided them to the Teva Defendants in August 2019 to allow the Teva Defendants to conduct a privilege review. Those documents included the Cegedim Email as part of an email chain, but not the SOM Assessment.

22. The Track 1 Teva Defendants produced the Cegedim Email in August 2019 with the remainder of the non-privileged documents collected by IQVIA.

23. Upon information and belief, at all times, Allergan, IQVIA, and their counsel acted in good faith to diligently search for and produce the SOM Assessment or any other document responsive to any document request by Plaintiffs.

E. **IQVIA'S Discovery of the SOM Assessment and the Teva Defendants' Production of It**

24. On August 6, 2020, Patrick Oot, outside counsel for IQVIA, informed me that in response to a July 29, 2020 inquiry from Plaintiffs, IQVIA had located the original, standalone Cegedim Email (rather than the one that was produced as part of an email chain) and that this version of the Cegedim Email had the SOM Assessment attached to it. Mr. Oot sent me Plaintiffs' July 29, 2020 email to him, which stated that Plaintiffs "were concerned that concerned that during a de-duplication process or due to some other production issue, IQVIA's DR-15 production [the production made by the Teva Defendants in July 2019] may have inadvertently removed or

6

otherwise failed to capture the initial email in this string, together with the attached SOM report." Mr. Oot's August 6, 2020 email to me is attached hereto as Attachment C. To my knowledge, this is the first time since the relevant document production was made in July 2019 that Plaintiffs inquired about the SOM Assessment.

25. Mr. Oot attached the SOM Assessment to his email. Later that day, Mr. Oot informed Plaintiffs that IQVIA had located the SOM Assessment and sent it to Morgan Lewis for review.

26. This was the first time that I, or anyone at Morgan Lewis, had possession of the Cegedim Email and attached SOM Assessment.

27. After Mr. Oot sent me the SOM Assessment, Morgan Lewis was able for the first time to run targeted searches on its text. Doing that, I was able to confirm again that the SOM Assessment did not exist in any of the documents collected by the Teva Defendants in this or any other opioid-related litigation or investigation, any of the documents sent to the Teva Defendants by Allergan or IQVIA in the course of this or any other opioid-related litigation, any of the documents withheld for privilege by the Teva Defendants in this or any other opioid-related litigation, or documents produced by any party in this litigation.

28. On August 14, 2020, I informed Plaintiffs that the Teva Defendants would produce the SOM Assessment in the same manner as the previously-produced IQVIA documents.

29. On August 20, 2020, I informed Plaintiffs that the Teva Defendants' document vendor could not, after repeated attempts, process the SOM Assessment in a manner that would retain its metadata and that the Teva Defendants were planning to produce the document as a PDF later that day. Plaintiffs' counsel did not respond to that email and, in order to prevent unnecessary delay, the Teva Defendants produced the document later that same day.

7

I declare under penalty of perjury under the applicable laws of the United States of America and the District of Columbia that the foregoing is true and correct.

Date: September 14, 2020     By: _____
                                  Jonathan Maier

I declare under penalty of perjury under the applicable laws of the United States of America and the District of Columbia that the foregoing is true and correct.

Date: September 14, 2020

By: _____
Jonathan Maier

# ATTACHMENT A

**Ruling re: Allergan Generic Drug Discovery**
**September 2, 2018**

I have reviewed the parties' letter submissions regarding discovery related to Allergan generic products acquired by Teva. (Specifically: L. Singer's August 24, 2018 letter; D. Welch's & S. Reed's August 29, 2018 letter; P. Geller's August 30, 2018 letter; and related documents, such as all attached exhibits.)

I conclude as follows:
- Allergan has a duty to undertake searches for and production of documents related to generic opioids that (a) were manufactured by Allergan-affiliated entities, but (b) are now affiliated with Teva.
- The search terms Allergan must use shall be the same as those negotiated between counsel for Plaintiffs and Teva; there will be no separate negotiation of search terms between different counsel for Plaintiffs and Allergan. Plaintiffs and Allergan shall negotiate Allergan custodians. Teva may participate in this custodian negotiation if Teva and Allergan agree.
- This is obvious, but: Allergan must search documents and data that it has in its possession, custody, or control <u>at this time</u>. Any data or documents that are no longer in Allergan's possession, custody, or control need not be searched.
- Allergan also has a duty in discovery to provide interrogatory responses, and fact and 30(b)(6) witnesses, related to generic opioids that (a) were manufactured by Allergan-affiliated entities, but (b) are now affiliated with Teva.

# ATTACHMENT B

| | |
|---|---|
| **From:** | Oot, Patrick L. (SHB) <OOT@shb.com> |
| **Sent:** | Thursday, August 06, 2020 9:54 AM |
| **To:** | Maier, Jonathan E. |
| **Cc:** | Shoshtari, Adam M. (SHB) |
| **Subject:** | FW: SOM Report Referenced at Teva IQVIA 00004558 |
| **Attachments:** | Teva_IQVIA_00004558_image.pdf; Follow up report |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

[EXTERNAL EMAIL]
Hi Jonathan.

I hope you are doing well.  Evan Janush sent us the email below last week.

We found the attached e-mail that Janush is looking for below.

Do you have time to catch up today?

We have not responded substantively yet.

Thanks,

Patrick

**Patrick Oot**
Shook, Hardy & Bacon L.L.P.
1800 K Street NW - Suite 1000
Washington, DC 20006
202.639.5645 | m 703.472.6576
oot@shb.com

MAY CONTAIN CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION CONTAINING WORK PRODUCT AND/OR ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS FROM RETAINED OUTSIDE COUNSEL

---

**From:** Evan M. Janush
**Sent:** Wednesday, July 29, 2020 1:12 PM
**To:** Oot, Patrick L. (SHB)
**Cc:** Shoshtari, Adam M. (SHB) ; 'Anthony Irpino' ; Fuller, Mike ; Tom Egler
**Subject:** SOM Report Referenced at Teva IQVIA 00004558

EXTERNAL

Dear Patrick:

I hope this e-mail finds you to be well. I am writing concerning a narrow and specific production issue arising from IQVIA's document production pursuant to Discovery Ruling No. 15 in MDL 2804 ("DR-15").

Plaintiffs seek a suspicious order monitoring ("SOM") report drafted by Cegedim following a 9/8/2011 Cegedim site visit at Watson Pharmaceuticals.  As shown below, this SOM report was transmitted by Cegedim employee Robert Williamson (an agreed IQVIA e-mail custodian) to at least one Watson Pharmaceuticals (now Allergan/Actavis/Teva) employee at 9:07 a.m. on 9/22/2011.  However, this SOM report was not included in IQVIA's production and we hereby request a copy of same.

For background and identification, IQVIA produced a 9/22/2011 email chain involving Robert Williamson which shows that he sent the SOM report to Tom Napoli at Watson Pharmaceuticals (now Allergan/Actavis/Teva), copying IQVIA employee Paul Hambly, among others.  Attached is a copy (Teva_IQVIA_00004558-9).  This email chain included 3 emails.  The top email (i.e., most recent) in the chain was sent by Mr. Williamson at 9:37 a.m. on 9/22/2011.  The bottom email in the chain is Mr. Williamson's initial email (from 9:07 a.m.) which states: "[p]lease find attached a follow up report from our visit to Watson on September 8th."  *See* Teva_IQVIA_00004558-9, attached hereto.  Unfortunately, the email chain IQVIA produced does not include the SOM report since the report was sent with the bottom email and not the top email.

We are concerned that during a de-duplication process or due to some other production issue, IQVIA's DR-15 production may have inadvertently removed or otherwise failed to capture the initial email in this string, together with the attached SOM report.

Prior to bringing this matter to you, we have searched the remainder of IQVIA's production and have not located this SOM report.  Given the fact that Mr. Williamson forwarded the SOM report with his 9/22/2011 (9:07 am) email, we are asking IQVIA to produce same.  We believe that our request is both narrow and specific, and we do not believe that this will be a difficult task.  However, if there are any questions or if you would like to discuss any of the above, we are happy to meet and confer with you at your convenience.

Respectfully,
Evan Janush



**Evan M. Janush**
**Managing Attorney - New York**
p: 212-421-2800
126 East 56th Street, 6th Floor
New York • NY • 10022
www.LanierLawFirm.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.