**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*ALL CASES* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**ALLERGAN DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SANCTIONS**

i

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 3 |
| | A. | Allergan undertook agreed-upon discovery, providing discovery summarizing the report. | 3 |
| | B. | Allergan searched its own files for the report. | 4 |
| | C. | Allergan asked IQVIA for the report three times. | 6 |
| | D. | As Plaintiffs were aware before filing their motion, IQVIA's delay in finding the report was due to its own vendor's error. | 7 |
| III. | ARGUMENT | | 7 |
| | A. | Sanctions are not warranted against Allergan. | 7 |
| | B. | The particular sanctions Plaintiffs request are baseless. | 9 |
| IV. | CONCLUSION | | 11 |

**I.      INTRODUCTION**

Plaintiffs' motion for sanctions is factually unfounded and purposefully misleading. Plaintiffs allege that Allergan intentionally withheld a third-party vendor's report related to the SOM system of Watson Pharma, Inc., a *former* Allergan subsidiary.[1]  That is flatly untrue.  To the contrary, Plaintiffs learned about the existence of the report in the first instance directly from Allergan's production, which included documents referencing the report and summarizing its findings and recommendations.  Dkt. No. 3443-3.  Indeed, Plaintiffs deposed the vendor's primary client contact, Tom Napoli, about the report and its findings.  Ex. 3, Excerpt from T. Napoli Dep. at 238:21-256:24.[2]

The report purports to be an "assessment" of Watson Pharma, Inc.'s SOM system by an outside vendor—Buzzeo/Cegedim, which was later acquired by IQVIA—pitching its services to perform additional consulting work.  In the ordinary course of discovery in the Fall of 2018, Allergan ran heavily negotiated search terms over a set of agreed upon custodians and produced several documents relating to the report.  When Plaintiffs reviewed the Allergan-produced

---

[1] While not relevant to the merits or outcome of this motion, Plaintiffs are incorrect that the SOM system being reviewed belonged to Watson Pharmaceuticals, Inc., which is now known as Allergan Finance, LLC.  Plaintiffs are also wrong that Watson Pharmaceuticals, Inc. "commissioned" the report at issue.  Dkt. No. 3443, Pls.' Motion for Sanctions ("Mot.") at 3 n.6. As Plaintiffs know, Watson Pharmaceuticals, Inc. is not and was not a DEA registrant and thus has no suspicious order monitoring or reporting obligations under the Controlled Substances Act or its implementing regulations.  Dkt. No. 2079-8, Jonathan R. Macey Expert Report at ¶ 81; 21 C.F.R. § 1301.74(b) (cabining obligation to "[t]he registrant"); 21 C.F.R. § 1301.71(a) (obligations run to "applicants and registrants").  The Master Agreement—produced to Plaintiffs—that related to the report at issue was signed by Watson Pharma, Inc., a former subsidiary of Watson Pharmaceuticals, Inc. that was sold to Teva. Ex. 1, TEVA_MDL_A_13647407 at -413. And the Statement of Work dated August 3, 2011—also produced to Plaintiffs—which led to the report was between Watson Pharma, Inc. and BuzzeoPDMA, specifically defined the Customer as Watson Pharma, Inc., and provided for a review and assessment of Watson Pharma, Inc.'s "current SOM system."  Ex. 2, ALLERGAN_MDL_02467194.

[2] References to "Ex." are to exhibits attached to the Declaration of Karl Stampfl, which is being filed concurrently with this brief.

1

materials identifying the report in early 2019, they requested that Allergan locate and produce the report itself.  In response to Plaintiffs' request, Allergan searched its own files and asked IQVIA to search its files for a copy, but was unable to locate the report.  Allergan's counsel further consulted with Mary Woods, a current Allergan employee who was involved with Buzzeo/Cegedim's work at Watson Pharma, Inc. in 2011, and who served as Allergan's corporate representative on SOM-related issues, and asked whether she had the report or knew where to find it.  Ms. Woods did not have the report, but suggested that the most likely place to search further would be the files of Tom Napoli, former Associate Director of Controlled Substance Compliance.  Allergan's counsel searched Mr. Napoli's files, as well as all of the documents collected for potential production in the nationwide opioid litigation, using search terms that would have hit on the report had it existed in those files.  Allergan's counsel also searched its privilege logs to ensure that the report had not been inadvertently withheld.  These steps were consistent with the spirit and direction set out in DRs 14-15, but Allergan was unable to locate the report.

In seeking sanctions, Plaintiffs claim that Allergan "failed" to "seek and produce" the report directly from IQVIA. Mot. at 6.  That statement is knowingly false.  Allergan's counsel requested the report (and other responsive documents) from IQVIA not once but three separate times, beginning in February 2019.  Ex. 4, 2/5/2019 C. Ventura Letter.  Allergan provided Plaintiffs with copies of all three of these requests over a year ago. Ex. 5, June 14, 2019 D. Welch Letter (sending correspondence with IQVIA to Plaintiffs).  Plaintiffs thus knew that Allergan had complied fully with DR 15 but said precisely the opposite in their filed motion.

IQVIA did not locate the report, despite undertaking a diligent search in response to Allergan's three requests.[3]  In July 2020, without copying Allergan, Plaintiffs requested the report from IQVIA and suggested that the report had not previously been produced because of a technical error.  Dkt. 3443-9 at 7/29/2020 E. Janush Email.  When IQVIA eventually located the report in August 2020 and Plaintiffs moved for sanctions, Allergan followed up with IQVIA to understand why the report had not been provided earlier in response to Allergan's multiple requests.  IQVIA informed Allergan that the reason was that IQVIA's vendor had made an "error"—and that IQVIA had confirmed that fact to Plaintiffs' counsel in an email before Plaintiffs filed their motion.  *See* Ex. 6 at 8/25/2020 P. Oot Email; Hamby Decl. at ¶¶ 16-21.[4]  Plaintiffs' motion does not disclose to the Court IQVIA's email to Plaintiffs documenting that error was indeed what had caused IQVIA to not provide the report to Allergan previously.  It is startling that Plaintiffs omit this key fact, which makes clear that IQVIA's delay in locating and producing the report had nothing to do with Allergan.

Stripped of Plaintiffs' omissions and outright misrepresentations, the motion for sanctions is baseless and should be denied.

## II.      BACKGROUND

### A.      Allergan undertook agreed-upon discovery, providing discovery summarizing the report.

In 2018, Plaintiffs and Allergan negotiated a set of search terms and custodians, which formed the basis of Allergan's production of millions of pages of documents.  Among those were a number of documents about Buzzeo's/Cegedim's work, including the Statement of Work

---

[3] Allergan has obtained a sworn Declaration from IQVIA, which Allergan is filing concurrently with this brief.  *See* Paul Hamby Decl. ("Hamby Decl.").

[4] Allergan has obtained a sworn Declaration from IQVIA's vendor, Epiq, explaining its error, which Allergan is filing concurrently with this brief.  *See* Karl Lomberk Declaration ("Lomberk Decl.").

describing the engagement[5] as well as documents about a September 2011 meeting with the vendor during which the vendor gathered information about Watson Pharma, Inc.'s SOM system in preparation for the report.[6]  Allergan also produced several documents that reflected the findings outlined in the report at issue in this motion.  For example, Allegan produced a June 2013 presentation that referenced the report:  "The deliverable for the onsite assessment review was a report which identified gaps and other recommended changes to assist Watson in enhancing the SOM system to comply with DEA regulations and associated memorandum regarding SOM."  Ex. 8, ALLERGAN_MDL_03824296.

Most notably, Allergan produced an April 2012 presentation summarizing the report's key content.  Dkt. No. 3443-3 at ALLERGAN_MDL_02468989 to -993.  In January 2019, Plaintiffs deposed Mr. Napoli.  Ex. 3, Excerpts from T. Napoli Dep.  During that deposition, Plaintiffs had the opportunity to and in fact did question Mr. Napoli about Buzzeo/Cegedim's work, the report and its findings.  *Id.* at 238:21-256:24.  In other words, even though Plaintiffs did not have the report itself, they had documents summarizing the report's key findings and conducted discovery about them.

> **B.**    **Allergan searched its own files for the report.**

After Mr. Napoli's deposition, Plaintiffs requested that Teva/Watson Pharma, Inc. or Allergan produce the Buzzeo/Cegedim report.  *E.g.*, Dkt. No. 3443-15.  In response, Allergan ran searches across all documents it had collected since the inception of the litigation, including from both custodial and non-custodial sources, but did not locate the report in its files.  Allergan also

---

[5] Ex. 2, ALLERGAN_MDL_02467194 (Statement of Work No. 1 describing Buzzeo/Cegedim's scope of work).

[6] Ex. 7, ALLERGAN_MDL_03826436 (presentation that appears to have been prepared for September 8, 2011 meeting between Buzzeo/Cegedim and Watson Pharma, Inc.); Dkt. No. 3443-11 (meeting minutes from same).

4

asked Ms. Woods, its corporate representative on SOM issues and a current Allergan employee directly involved with Cegedigm/Buzzeo's work in 2011, for her views on where to search for it. Ms. Woods searched her own files and confirmed she did not have a copy of the report, and she suggested the best place to look would be Mr. Napoli's custodial files.  Before he left the company in 2016, Mr. Napoli had been the primary contact for Buzzeo/Cegedim with respect to their SOM-related work.

Allergan ran a series of additional searches in its efforts to locate the document or confirm it did not have it.  For example, Allergan:

- Searched all produced documents for the terms ("Buzzeo" or "BuzzeoPDMA" or "Cegedim" or "Dendrite" or "IQVIA") and ("SOM" or "SOMS" or "suspicious")

- Searched all produced, unproduced, and collected documents for robert.williamson@cegedim.com, the email address for the Manager from Buzzeo/Cegedim involved in the project.

- Searched produced and unproduced documents in Allergan's review database, namely those between July 2011 and April 2012 that hit on broad terms such as "Buzzeo*," "Cegedim*," "SOM*" and "suspicious."

- Searched unproduced documents in Allergan's collection database, namely all documents that hit on (Cegedim OR Buzzeo OR BuzzeoPDMA OR Dendrite) AND (audit OR assessment OR review) AND (SOM OR SOMS OR Suspicious).

Allergan ran these searches across all collected files, which included dozens of custodians and more than 10 million documents.  Had this report existed among any of the documents Allergan had ever collected for the various opioid-related cases pending across the country, Allergan's searches would have revealed it.  For example, the cover email to the report includes robert.williamson@cegedim, which means it would have been revealed via searches for all documents that included that email address.  Dkt. No. 3443-2.  Allergan also searched all documents on its privilege log and confirmed that Allergan had not inadvertently withheld the

5

document as privileged.  Allergan did not locate this document in any of its searches, as Allergan repeatedly told Plaintiffs,[7] and to this day has not located a copy.

### C. Allergan asked IQVIA for the report three times.

In addition to conducting reasonable searches in its own files, and contrary to Plaintiffs' claims otherwise (*e.g.*, Mot. at 4, 6, 12-13), Allergan repeatedly requested that IQVIA locate and produce the report.  On February 5, 2019, Allergan requested for the *first time* that IQVIA provide any "audits, reports, evaluations, assessments, or other work product," including but not limited to any reports relating to the August 3, 2011 Statement of Work that gave rise to the report at issue. Ex. 4, 2/5/2019 C. Ventura Letter; Hamby Decl. at ¶ 4.  On February 15, 2019, IQVIA agreed to provide a "final set of readily-accessible deliverables with Buzzeo-related entities," if any existed, within a week.  Ex. 9, 2/15/2019 P. Oot Letter at 2; Hamby Decl. at ¶ 4.  IQVIA was unable to locate any responsive documents.  *Id.* at ¶¶ 6-7.

In May 2019, Allergan again wrote to IQVIA, specifically requesting the report a *second time*.  Ex. 10, 5/29/2019 C. Ventura Letter at 2; Hamby Decl. at ¶ 8.  The following month, Allergan wrote to IQVIA a *third time*, requesting that IQVIA "please confirm whether or not you have a copy of [the report] (or related documents) as soon as possible."  Ex. 11, 6/13/2019 C. Ventura Letter at 1; Hamby Decl. at ¶ 8.  In response, in August 2019, IQVIA provided 35 documents to Allergan.  *Id.* at ¶ 13.  Allergan's counsel reviewed them and produced 15 of the 35; the others were irrelevant.  The report was not included in the documents IQVIA provided to Allergan for review.

---

[7] *E.g.*, Dkt. No. 3443-7, 4/24/2019 C. Ventura Email; Ex. 5, 6/14/2019 D. Welch Letter at 5-6.

> **D.  As Plaintiffs were aware before filing their motion, IQVIA's delay in finding the report was due to its own vendor's error.**

In August 2020, IQVIA located the report, which was produced to Plaintiffs. Dkt. No. 3443-10; Hamby Decl. at ¶ 18. To understand why the report had not been provided in response to Allergan's multiple requests, Allergan contacted IQVIA. Ex. 12, 9/3/2020 C. Ventura Email. In response, IQVIA reported that the reason the report was not previously supplied was an error by IQVIA's vendor. *See* Hamby Decl. at ¶¶ 18-21; *see generally* Lomberk Decl. (explaining Epiq's error).

Allergan did not know about IQVIA's vendor's error, but Plaintiffs did. On August 25, 2020, a week before this motion, IQVIA wrote to Plaintiffs' counsel to inform them that its investigation had revealed "that a vendor processing error may have inadvertently removed some attachments from the review process." Ex. 6, 8/25/2020 P. Oot Email. Although Plaintiffs received IQVIA's email informing them that the issue had been caused by IQVIA's vendor's error six days before they filed their motion (*id.*), Plaintiffs filed their motion without mentioning the true cause of the delayed production. In fact, Plaintiffs' motion attached as exhibits two earlier iterations of Plaintiffs' email chain with IQVIA. Dkt. No. 3443-9; Dkt. No. 3443-10. But Plaintiffs withheld from the Court the iteration of this chain that culminates in IQVIA informing Plaintiffs' counsel that the document was not produced because of IQVIA's vendor's error. Ex. 6.

## III. ARGUMENT

### A.  Sanctions are not warranted against Allergan.

Plaintiffs' motion does not identify a single instance of discovery misconduct by Allergan. Plaintiffs claim that Allergan is "at fault" for allegedly "failing to produce, or seeking the production of, the audit report." Mot. at 12. But, as explained above, Allergan (i) produced the

7

summary findings of this report, which is totally inconsistent with attempting to conceal the report itself, (ii) extensively searched its own files for the report, and (iii) sought the report from IQVIA on three separate occasions.  As Plaintiffs are aware, IQVIA's delay in producing the document was caused not by Allergan, but by IQVIA's vendor's technical error.[8]

On these facts, imposing any sanctions against Allergan would be both unjust and unsupported by any legal authority.  Indeed, Plaintiffs have not cited a single case or authority in which a court imposed discovery sanctions based on facts remotely resembling those here.  This is not, for instance, a situation where Allergan had the document at issue and simply chose not to produce it, or even delayed production of a document.  While Plaintiffs rely on *Doe v. Lexington-Fayette Urban Cnty. Gov't*, there the Sixth Circuit reversed the district court, holding that it had abused its discretion in granting sanctions.  407 F.3d 755, 765-66 (6th Cir. 2005) (cited in Mot. at 6, 12).  The only other case that Plaintiffs cite is *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, where the sanctioned parties' conduct was egregious, as they defied "repeated orders from the court to provide the requested material," the court "warned" them of a possible sanction, the parties "repeatedly agreed to comply with the discovery orders within specific time periods," and yet they "failed to comply with their agreements."  456 U.S. 694, 707-08 (1982) (cited in Mot. at 7).

Further, none of the four *Doe* factors supports sanctions against Allergan; indeed, the *Doe* factors highlight that Plaintiffs' motion is an overreach (at best).  *See* Mot. at 6-7 (citing *Doe*, 407 F.3d a 765-66 (6th Cir. 2005)).  *First*, there was no "failure to cooperate in discovery," much less

---

[8] Plaintiffs' allegation that Allergan has engaged in "obstructive tactics" is untrue and irrelevant to this motion. *See* Mot. at 6. Allergan never objected to producing this report; it simply did not locate a copy in it is files despite collecting and searching over ten million documents.  In any event, objecting to discovery is not discovery misconduct; Plaintiffs have objected to aspects of Defendants' discovery in every case track, necessitating numerous motions to compel.

one "due to willfulness, bad faith, or fault." *Doe*, 407 F.3d at 766. To the contrary, Allergan affirmatively tried to find this report and repeatedly requested it from IQVIA.

*Second*, Plaintiffs were not prejudiced. *Id.* As explained in detail above, Allergan produced a presentation summarizing the report's findings, and Plaintiffs deposed Mr. Napoli about it at length. That Plaintiffs decided to settle with Allergan and never proceeded to trial—knowing full well that the report had not been located, but having had the opportunity to take discovery regarding the underlying findings and recommendations—renders Plaintiffs' claim that they were prejudiced in "trial preparation" (Mot. at 13) a particularly specious overreach. As for all other case tracks, including the remanded *City of Chicago* and *San Francisco* cases where fact discovery is ongoing, Plaintiffs now have the report itself.

*Third*, Allergan specifically was never "warned that failure to cooperate could lead to the sanction." *Doe*, 407 F.3d at 766. Nor was there any need for any warning, because Allergan complied with all discovery orders and obligations. Indeed, Allergan went beyond documents in its possession, custody, and control in searching for this report by requesting it from IQVIA on three separate occasions. This factor weighs in Allergan's favor. *Finally*, the "fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered." *Id.* Here, no sanctions have been previously imposed or considered. Nor could they have been, as Allergan has engaged in no sanctionable conduct whatsoever. Accordingly, this factor too weighs in Allergan's favor.

      **B.**      **The particular sanctions Plaintiffs request are baseless.**

Plaintiffs specifically ask for three categories of sanctions. Mot. at at 12. Plaintiffs' primary request is that the Court "[r]eopen[] fact discovery against Allergan." *Id.* But Plaintiffs leave unclear in what case discovery would be reopened. To the extent Plaintiffs seek additional discovery in the Track One cases, Allergan has settled those cases, and no purpose would be served

9

by conducting additional discovery.  Nor can this Court issue any order that purports to govern discovery in the remanded *San Francisco* or *City of Chicago* cases, because the Court lacks jurisdiction over both.[9]  As this Court put it in the context of the cases remanded to West Virginia, discovery disputes in "remanded cases are no longer within this Court's jurisdiction" and "[a]ny further resolution of discovery disputes is within the purview of the transferor court."  *See* Dkt. No. 3263.

To the extent Plaintiffs request that Allergan provide discovery in the MDL untethered to any case, it should be rejected as legally unsupported, impractical and unnecessary.  If Plaintiffs believe they are entitled to additional discovery in any particular case, they should seek it in that case.  If Allergan objects, and the plaintiffs move to compel, the Court with jurisdiction over that case will decide the motion, with reference to relevance and proportionality in that case under the applicable law of that jurisdiction.  If the requested discovery is ordered, it will be ported into the MDL by virtue of Discovery Ruling No. 22.

Plaintiffs' secondary request is that the Court "[d]irect[] as an established fact" a proposition that is false:  "that the SOM system subject to the September 2011 Cegedim audit report did not comply with applicable law as set forth in the report."  Mot. at 12 (also requesting that the Court prohibit Allergan from asserting that it "had a reasonable and/or good faith basis to believe otherwise").  Plaintiffs provide no support for *any* evidentiary sanction about a document that is now in the record, let alone authority for treating the *opinions* of a third party pitching

---

[9] *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) ("After an MDL action is remanded, the transferor court resumes exclusive jurisdiction over further proceedings*.")*; *Denton on behalf of Plaintiffs' Steering Comm. v. Danko Meredith*, 2020 WL 759205, at *2 (S.D. Ill. Feb. 14, 2020) ("[O]nce a case is remanded the transferor court resumes exclusive jurisdiction over further proceedings.")*.*

10

consulting services in 2011 as fact. It would be unjust, unnecessary, and unsupportable to order such opinions "established" in any case where this document will be and is part of the record.

Further, this would be an extreme sanction that is not remotely supported by the circumstances. Having themselves withheld key facts from the Court regarding Allergan's efforts to obtain and produce the document and the circumstances under which IQVIA finally located the document, Plaintiffs nonetheless seek the highest form of sanction: a finding that Watson Pharma, Inc.'s SOM system was unlawful. Where deeming certain facts established is so significant that doing so equates to a default judgment, courts in the Sixth Circuit "review the sanctions as being equivalent to a grant of default judgment under Rule 37(b)(2)(C)." *Peltz v. Moretti*, 292 Fed.Appx. 475, 478 (6th Cir. 2008) (internal citations omitted) (reversing district court's grant of sanctions). The sanction of default (or deeming established facts that would amount to one) is "only" appropriate where "*no alternative sanction* would protect the integrity of the pretrial process." *Id.* at 480 (internal quotations omitted and emphasis in original). Here, the integrity of the pretrial process needs no protecting, because Allergan acted with utmost diligence, as set out above, and this document is now a part of the record.

Finally, Plaintiffs suggest "[o]rdering any additional monetary or other relief the Court deems appropriate." Mot. at 12. No such sanction is appropriate here in light of Allergan's numerous attempts to find and produce the report.

## IV.  CONCLUSION

The Court should deny Plaintiffs' misleading, inaccurate and legally unsupported motion.

11

consulting services in 2011 as fact. It would be unjust, unnecessary, and unsupportable to order such opinions "established" in any case where this document will be and is part of the record.

Further, this would be an extreme sanction that is not remotely supported by the circumstances. Having themselves withheld key facts from the Court regarding Allergan's efforts to obtain and produce the document and the circumstances under which IQVIA finally located the document, Plaintiffs nonetheless seek the highest form of sanction: a finding that Watson Pharma, Inc.'s SOM system was unlawful. Where deeming certain facts established is so significant that doing so equates to a default judgment, courts in the Sixth Circuit "review the sanctions as being equivalent to a grant of default judgment under Rule 37(b)(2)(C)." *Peltz v. Moretti*, 292 Fed.Appx. 475, 478 (6th Cir. 2008) (internal citations omitted) (reversing district court's grant of sanctions). The sanction of default (or deeming established facts that would amount to one) is "only" appropriate where "*no alternative sanction* would protect the integrity of the pretrial process." *Id.* at 480 (internal quotations omitted and emphasis in original). Here, the integrity of the pretrial process needs no protecting, because Allergan acted with utmost diligence, as set out above, and this document is now a part of the record.

Finally, Plaintiffs suggest "[o]rdering any additional monetary or other relief the Court deems appropriate." Mot. at 12. No such sanction is appropriate here in light of Allergan's numerous attempts to find and produce the report.

## IV.  CONCLUSION

The Court should deny Plaintiffs' misleading, inaccurate and legally unsupported motion.

Dated: September 14, 2020                   Respectfully submitted,

                                                     By: */s/ Donna M. Welch*
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com

*Attorney for Defendants Allergan Finance, LLC (f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.), Allergan plc (n/k/a Allergan Limited f/k/a Actavis plc), Allergan Sales, LLC, Allergan USA, Inc. and Allergan, Inc.*[10]

---

[10] Allergan plc (n/k/a Allergan Limited f/k/a Actavis plc) is not subject to personal jurisdiction in this Court. Nor has it been served with process in many of the cases in the MDL. By responding to Plaintiffs' motion for sanctions against it, Allergan plc does not waive but rather expressly reserves all rights to challenge personal jurisdiction and service of process.

12

## **LOCAL RULE 7.1(F) CERTIFICATION**

  I certify that this Memorandum adheres to the page limitations set forth in L.R. 7.1(f).

Dated: September 14, 2020      By: */s/ Donna M. Welch*
                  Donna M. Welch, P.C.
                  KIRKLAND & ELLIS LLP
                  300 North LaSalle, Chicago, IL 60654
                  Tel: (312) 862-2000
                  donna.welch@kirkland.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2020, a copy of the foregoing **Opposition to Plaintiffs' Motion for Sanctions** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Donna M. Welch
Donna M. Welch
