IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*ALL CASES* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

## DECLARATION OF PAUL W. HAMBY

I, Paul W. Hamby, hereby declare under penalty of perjury as follows:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration. The foregoing Declaration is based on my personal knowledge.

2. I am a Group Director, U.S. Regulatory Compliance (formerly BuzzeoPDMA) at IQVIA and submit this Declaration in connection with Allergan's Opposition to Plaintiffs' Motion for Sanctions Against the Allergan and Teva Defendants (Doc. # 3443) ("Allergan's Opposition").

3. At no time should this Declaration be construed as a waiver of the attorney-client privilege or the attorney work product doctrine.

4. On February 5, 2019, IQVIA received a request from Catie Ventura, Kirkland & Ellis, LLP and counsel for Allergan, for copies of audits, reports, evaluations, assessments, or other work product related to suspicious order monitoring ("SOM") systems that BuzzeoPDMA may have created for Actavis Inc., Actavis Pharma, Inc. and Watson Pharma, Inc.

5. In response to Ms. Ventura's request, Machelle Neal, Principal, Regulatory Consulting, U.S. Regulatory Compliance (formerly BuzzeoPDMA), searched for deliverables that BuzzeoPDMA may have created for Actavis Inc., Actavis Pharma, Inc. and Watson Pharma, Inc., as referenced in Ms. Ventura's letter on February 5, 2019.

6. On February 13, 2019, Ms. Neal confirmed that she was unable to locate deliverables that BuzzeoPDMA may have created for Actavis Inc., Actavis Pharma, Inc. and Watson Pharma, Inc. after a search of IQVIA centralized repositories where SOM-related deliverables would typically be located in the ordinary course of business.

7. On February 15, 2019, in a letter to Ms. Ventura, IQVIA described the scope of its search efforts, which included searches for readily accessible agreements, statements of work ("SOWs"), and deliverables from BuzzeoPDMA-related entities.

8. On May 29, 2019 and June 13, 2019, Ms. Ventura sent additional letter correspondence requesting deliverables between Actavis Inc., Actavis Pharma, Inc., Watson Pharma, Inc. and BuzzeoPDMA-related entities, including the report referenced in Statement of Work #1 between Watson Pharma, Inc. and BuzzeoPDMA.

9. In response to Ms. Ventura's correspondence, I performed searches of the IQVIA centralized repositories where SOM-related deliverables would be located in the ordinary course of business, my company-issued computer, and my readily accessible e-mail.

10. I was unable to locate the deliverable related to Statement of Work #1 between Watson Pharma, Inc. and BuzzeoPDMA, related to an April 7, 2011 agreement.

11. I also made an additional request via e-mail to Ms. Neal for the deliverable referenced in Statement of Work #1 between Watson Pharma, Inc. and BuzzeoPDMA. On July 2, 2019, Ms. Neal confirmed that after her search she was unable to locate the deliverable.

12. On July 3, 2019, IQVIA agreed to expand the scope of its search to custodial data from company repositories and off-site network locations (e.g., hard drives) for agreed upon custodians identified by the PEC and subsequently agreed to by IQVIA.

13. As a result of IQVIA's review of data from company repositories and off-site network locations (e.g., hard drives and loose media) for the agreed upon custodians, IQVIA provided Allergan additional documents for potential production.

14. On July 29, 2020, IQVIA received an e-mail from Evan Janush, on behalf of the PEC, seeking a SOM report drafted by Cegedim (a predecessor owner of BuzzeoPDMA) following a September 8, 2011 Cegedim site visit at Watson Pharma, Inc. The e-mail stated that this SOM report was transmitted by Cegedim employee Robert Williamson (an agreed upon custodian) to at least one Watson Pharma, Inc. employee on September 22, 2011.

15. Mr. Janush's July 29, 2020 e-mail stated that the SOM report provided to Watson Pharma, Inc. was an attachment to an earlier in time e-mail that was a part of an e-mail chain.

16. Mr. Janush's July 29, 2020 e-mail also suggested a potential vendor error – specifically, "that during a de-duplication process or due to some other production issue, IQVIA's DR-15 production may have inadvertently removed or otherwise failed to capture the initial email in this string, together with the attached SOM report."

17. That same day, IQVIA advised Epiq Systems ("Epiq"), IQVIA's service provider, of Mr. Janush's request and requested an investigation into the potential vendor error.

18. As a result of Epiq's investigation, on August 6, 2020, IQVIA e-mailed Mr. Janush and stated that we located the document and provided it to counsel for Teva, Jonathan Maier, Morgan, Lewis & Bockius LLP, to follow the process that we used in the original production.

19. On September 3, 2020, Ms. Ventura e-mailed IQVIA requesting it to provide information in response to Plaintiffs' Motion for Sanctions Against the Allergan and Teva Defendants.

20. On September 8, 2020, I attempted to again locate the SOM report requested by Ms. Ventura and still could not locate it within my reasonably accessible files.

21. It is my understanding that Karl Lomberk, Epiq, has submitted a Declaration that the SOM report was inadvertently not provided as a result of vendor error.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of September 2020.

_____
Paul W. Hamby