# Exhibit 9

February 15, 2019

                                                                             Patrick L. Oot

VIA ELECTRONIC MAIL                           1155 F Street, N. W., Suite 200
                                                                             Washington, D.C. 20004
                                                                                      **t** 202.783.8400

Catie Ventura                                                                      **dd** 202.639.5645
Associate                                                                               **f** 202.783.4211
Kirkland & Ellis                                                                  oot@shb.com
655 Fifteenth Street, N.W.
Washington, D.C. 20005
T: 202.879.5907
E: catie.ventura@kirkland.com

Re:   IQVIA's clients affected by the *In re National Prescription Opiate Litigation*, MDL No. 2804 in the Northern District of Ohio

Dear Catie:

We write you to confirm that on behalf of IQVIA, Shook, Hardy & Bacon, LLP has received requests from certain Defendant manufacturers, distributors, retailers, and others ("Clients") seeking that IQVIA provide Clients with documents regarding their Suspicious Order Monitoring ("SOM") engagement with BuzzeoPDMA, LLC, Cegedim, Dendrite, and Cegedim Dendrite ("Buzzeo-related entities"). We understand that Clients' requests seek documents in response to Plaintiffs' demands in the *In re National Prescription Opiate Litigation, MDL No. 2804* litigation in the Northern District of Ohio.

On September 14, 2018, IQVIA properly objected to Plaintiffs' Rule 45 subpoena but agreed to work with Clients to assist them in fulfilling their discovery obligations if such requests did not present an undue hardship or burden on IQVIA, which is not a party in this litigation. Over the last few months, IQVIA assisted Clients in fulfilling their productions related to sales and prescription data, and it is our understanding that the PEC has conveyed to the Court that Plaintiffs are satisfied with Clients' sales and prescription data productions. Now, all that is left are the SOM-related requests. This letter addresses those requests.

Since August 2018, Shook has worked diligently with IQVIA to identify Defendants' SOM-related engagements. In that regard, efforts to locate SOM-related engagements have been a significant burden as no single employee, data source or location exists that contains SOM-related engagement materials. The search for SOM-related information for multiple Clients has required, among other things, hundreds of hours of IQVIA employee and outside counsel time that has included, but is not limited to, disruptive



employee interviews, document collection, and significant manual line-by-line, page-by-page analysis for necessary redactions in order to protect IQVIA's confidential commercial information. As Clients have reviewed their own repositories and found gaps or deficiencies, Clients have requested IQVIA to fill those gaps, and IQVIA diligently has endeavoured to do so, to the extent the documents are readily accessible and still exist.

In our January 29, 2019 letter to the PEC, we summarized the results of IQVIA's efforts. IQVIA continues to provide Clients with information, upon request, to the extent that it still exists, on a first-in-first-out basis:

- On January 7, 2019, IQVIA began providing Clients with readily accessible agreements and statements of work ("SOWs") with Buzzeo-related entities via a secure download link and password.

- On February 11, 2019, IQVIA began providing Clients with readily-accessible deliverables with Buzzeo-related entities via a secure download link and password.

- By February 22, 2019, barring any unforeseen circumstances, IQVIA will provide Clients with the final set of readily-accessible deliverables with Buzzeo-related entities via a secure download link and password.

Recently, in addition to requests for contracts, SOWs and deliverables, IQVIA has received requests for *all* existing communications between Buzzeo-related entities and Defendants. On September 14, 2018, in IQVIA's Responses and Objections to Plaintiffs' Rule 45 Subpoena, IQVIA objected to this request, as it is overly broad, not proportional to the needs of the case, and seeks to impose undue burden and expense on a non-party for what is likely duplicative information. Instead, we agreed to cooperate with Clients on a cohesive and targeted approach to identify information within the scope of discovery and provide Clients with what is proportional to the needs of a case from a non-party. IQVIA's cohesive and targeted approach included contracts, SOWs, and deliverables and asked Clients to tell IQVIA what they believe might be missing.

As we have previously conveyed, parties must search their own document repositories, including e-mail sources before burdening a non-party. *See* Fed. R. Civ. P. 45(d)(1); *see also Waite, Schneider, Bayless & Chesley Co. v. Davis*, No.1:11-cv-0851, 2013 WL 146362, at *4-5 (D.D. Ohio Jan. 14, 2013); *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 253-54 (S.D. Ohio Jan. 3 2013) (quashing non-party subpoena because "[Plaintiff] must first establish that it cannot obtain the discoverable information from its party-opponent before subpoenaing those documents from a non-party"); *Musarra v. Digital Dash, Inc.*, No. 2:05-cv545, 2008 WL 4758699, at *3-4 (S.D. Ohio Oct. 30, 2008) (refusing to require non-party to produce documents when they were available



from a party to the litigation); *Recycled Paper Greetings v. Davis*, No. 1:08—mc—13, 2008 WL 440458, at *4-5 (N.D. Ohio Feb. 13, 2008) (granting a motion to quash subpoena, in part, because "the vast majority of the relevant documents" could have or had been produced by a party to the litigation).

Parties in the litigation, not IQVIA, are the best source for this information. *See* Fed. R. Civ. P. 26(B)(2)(C)(i) (the court must limit the frequency or extent of discovery allowed by these rules or by local rule if it determines that "discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *see also* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

IQVIA has objected and continues to object to the production of likely duplicative e-mail correspondence. The unreasonable burden and expense of searching for, collecting, processing, reviewing and producing e-mail messages for multiple SOM Clients will only inflict costs of exponential magnitude on IQVIA, a non-party, when it is far more efficient, less burdensome and proportional for each individual Client to first search its own e-mail repositories. Forcing this undue burden on IQVIA violates the Rules and common sense.

In addition, IQVIA did not participate in the development of the ESI Protocol, negotiate the Protective Order, or negotiate the search terms to be applied in this litigation. *See United States v. Columbia Broad. Sys., Inc.,* 666 F.2d 364, 371 (9th Cir. 1982) (because "[n]onparty witnesses are powerless to control the scope of litigation and discovery, [they] should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party."). To embark upon a duplicative e-mail fishing expedition beyond the cohesive and targeted approach that IQVIA has undertaken would cost hundreds of thousands of dollars, if not millions, and the expenditure of significant internal resources, that a non-party should not be forced to bear.

It is our understanding that the PEC has asked Defendants if they have produced all existing communications in their possession concerning SOM between any of the Buzzeo-related entities and Clients. IQVIA understands that Defendants are in the process of confirming the completeness of their productions to the PEC. At this time, Defendants have not identified to IQVIA any lost, missing or deficient e-mail productions from Defendants to the PEC and IQVIA does not believe that inflicting duplicative discovery of exponential effort is warranted for a non-party to this litigation. Accordingly, prior to requesting IQVIA to produce all e-mail communications, Defendants should first turn to their own internal resources to identify and produce relevant e-mails. If they have not done so already, Defendants should identify their own



custodians, and search criteria to locate SOM-related communications before propounding IQVIA with burdensome discovery.

*\*\*\**

IQVIA has undertaken significant discovery efforts to assist Clients in satisfying their discovery obligations in response to Plaintiffs' requests. IQVIA will continue to do so, as appropriate and consistent with its reasonable objections. We believe the approach taken by IQVIA in producing to Clients any contracts and deliverables, upon request, is consistent with the Special Master's instructions and undoubtedly has been working.

IQVIA will continue to update our Clients on the status of the efforts described above in the coming days, and I am happy to address any questions or concerns.

Best regards,

*Patrick Oot*

Patrick L. Oot
Partner