UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) ) ) | MDL NO. 2804 <br><br> CASE NO. 1:17-MD-2804 <br><br> Judge Dan Aaron Polster |

## WALGREENS' OBJECTION TO MODIFIED DISCOVERY RULING 23

Walgreen Co. ("Walgreens") submits the following Objection to Special Master's Modified Discovery Ruling 23. ECF No. 3461. That Ruling concluded that in an MDL, unlike an ordinary federal case, there is no limit to a party's ability to raise privilege challenges after fact discovery closes. That holding is contrary to the mandamus order that the Sixth Circuit previously issued in this case and other binding precedent. The Sixth Circuit stated in no uncertain terms that "an MDL court's determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases, as applied to the record in that case alone. . . . The rules at issue here are the Federal Rules of Civil Procedure, which have the same force of law that any statute does." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020). That settled principle fully applies here.

### BACKGROUND

**I.      The parties negotiated privilege challenges during fact discovery.**

During fact discovery in Track One A, Plaintiffs and Walgreens worked cooperatively on challenges to Walgreens' privilege claims. This process resulted in Walgreens independently withdrawing a series of privilege claims. As explained in prior correspondence to the Special Master, Walgreens makes all of its privilege decisions cognizant of this Court's bellwether privilege rulings. *See* Ex. 1 at 4, 9/9/20 Desh letter to Cohen. Every time Walgreens has

produced documents in response to a privilege ruling or an agreement with Plaintiffs, it has also reviewed and produced similar documents alongside them. *Id*.; *see also* Ex. 2 at 2, 7/29/20 Desh letter to Cohen.

When Plaintiffs and Walgreens disagreed about further production of documents withheld as privileged in Track One A, Plaintiffs filed a motion for *in camera* review of selected documents. That motion resulted in Discovery Ruling No. 14, Part 4 and its Amendment in February 2019. *See* ECF No. 1387; ECF No. 1395. In those rulings, the Court overruled the vast majority of Plaintiffs' challenges to Walgreens' privilege assertions. *See id*. Walgreens completed its production pursuant to Discovery Ruling No. 14, Part 4 and its Amendment, including the production of similar documents implicated by that ruling, on March 1, 2019.

On March 14, 2019, six weeks after the close of fact discovery, Plaintiffs purported to send Walgreens their "next round" of challenges to documents on Walgreens' Track One A privilege logs. Ex. 3 at 2, 3/14/19 Irpino letter to Desh. Walgreens responded that Plaintiffs' challenges were untimely. Ex. 4 at 3, 3/21/19 Desh letter to Irpino. Because all of the challenged documents (or privilege logs listing withheld documents) had been in Plaintiffs' possession for several months, these challenges could and should have been included among Plaintiffs' earlier challenges. *Id*. Despite this tardiness, Walgreens nevertheless invited Plaintiffs to explain why any of their belated challenges merited attention after the close of fact discovery. *Id*.

Plaintiffs never responded to that invitation. Instead, Walgreens did not hear from Plaintiffs again on these challenges for six months. Then, without attempting to meet and confer with Walgreens, and in anticipation of the upcoming Track One A trial, Plaintiffs abruptly requested that the Special Master review the documents in question *in camera*. Ex. 5, 9/25/19

2

Irpino letter to Cohen.  In that correspondence, Plaintiffs offered no reason why they could not have brought these privilege challenges prior to the close of fact discovery.

**II.     The parties agreed to resolve outstanding privilege challenges raised after the close of fact discovery.**

The parties continued to negotiate discovery issues following the cancellation of the Track One A trial.  But over the following eight months, and despite Walgreens' repeated requests, Plaintiffs never offered any reason—much less good cause—for why any of their privilege challenges should be considered after the close of fact discovery.  Plaintiffs did, however, raise still more privilege challenges to Walgreens' Track One A privilege logs.

In March 2020, Plaintiffs and Walgreens engaged in several meet and confers for the purpose of resolving outstanding discovery issues, which included extended discussions regarding Plaintiffs' outstanding privilege challenges.  In the course of these negotiations, Plaintiffs represented that if Walgreens produced certain documents from its Track One A privilege logs, then Plaintiffs would withdraw their challenges to the privilege claims that they had raised in September 2019 and later submissions.  *See, e.g.*, Ex. 6 at 3, 8/12/20 Robertson email to Cohen; Ex. 7 at 2, 5/29/20 Desh email to Cohen.  Walgreens agreed and, on May 29, 2020, reported to the Special Master that the parties had resolved all outstanding privilege challenges, as recognized by the Special Master in Discovery Ruling 23.  Ex. 7 at 2, 5/29/20 Desh email to Cohen; ECF No. 3455 at 7.  Plaintiffs later confirmed that the parties' May 2020 agreement resolved "the outstanding disputes relative to Plaintiffs' CT1A challenges."  Ex. 6 at 3, 8/12/20 Robertson email to Cohen.

In reliance on that agreement, Walgreens produced additional documents in June 2020.  Although not part of the parties' agreement, Walgreens also worked cooperatively with Plaintiffs to answer other questions and provide additional information regarding its production of

documents previously withheld pursuant to a claim of privilege.  Plaintiffs raised no issue with Walgreens' compliance with this agreement.

### III. Plaintiffs breached the parties' agreement and raised additional privilege challenges more than a year after the close of fact discovery.

Plaintiffs, unfortunately, refused to abide by their side of the agreement.  Plaintiffs not only attempted to revive challenges the parties already resolved by agreement, they also attempted to raise entirely new challenges to Track One A privilege claims in June 2020, more than a year after the fact discovery cut off in Track One A.

By the time Plaintiffs attempted to raise these challenges, all of Walgreens' privilege logs relating to Track One A had been in Plaintiffs' possession for at least a year.  Yet again, Plaintiffs did not provide any explanation, let alone good cause, for why their June 2020 privilege challenges should be considered after the close of fact discovery.  Walgreens attempted to negotiate these privilege challenges with Plaintiffs without Court intervention, but Plaintiffs refused and filed a motion for *in camera* review.  Discovery Ruling 23 and its modification followed, which misinterpreted the scope of the parties' May 2020 agreement resolving Track One A privilege challenges, and held that there was no limit to Plaintiffs' ability to bring additional privilege challenges after the close of fact discovery given the "complexity" of the MDL.  Walgreens files this objection.

## ARGUMENT

Plaintiffs waited for more than a year after the close of fact discovery before raising the challenges at issue to Walgreens' Track One A privilege claims.  They offered no good cause for that significant delay.  Under binding precedent, Plaintiffs have waived these challenges.

4

I.   **Plaintiffs must show good cause to bring privilege challenges after the close of fact discovery.**

Fact discovery in Track One A closed in January 2019.  Now, more than 18 months after the close of discovery, and in breach of the parties' agreement resolving Track One A privilege challenges, Plaintiffs ask this Court to overrule Walgreens' privilege claims and compel production of additional documents.  As with any motion to compel filed after the close of fact discovery, that requires a showing of good cause.  *See United States v. Barron Collier Co.*, 2015 WL 13811188, at *4 (D. Ariz. Dec. 24, 2015).

Under Rule 16(b), district courts are required to enter scheduling orders "that limit the parties' time to complete discovery."  *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011) (citations omitted).  "Where a party is aware of the existence of documents or other information before the close of discovery and propounds requests after the deadline has passed, those requests should be denied."  *Id.* at 140 (collecting cases). "Numerous courts . . . have found that absent special circumstances, motions to compel discovery filed after the close of discovery are untimely."  *FedEx Corp. v. United States*, No. 08-2423 MA/P, 2011 WL 2023297, at *4 (W.D. Tenn. Mar. 28, 2011) (collecting cases).

That rule applies equally to privilege challenges.  In *Barron Collier*, the court held that good cause was not satisfied when a party "wait[ed] almost eight months to challenge the Government's assertion of privilege."  2015 WL 13811188, at *4.  Instead, the court denied a motion to compel where the challenging party could have brought the challenges "in time for the court to rule on the privilege well before the close of discovery."  *Id.*  Similarly, in *Cardiac Pacemakers*, the court rejected challenges that a privilege log did not sufficiently set forth the required elements for maintaining a privilege.  The court observed that the privilege log had been served years before, and the challenges came "far too late" when they were asserted

5

"long after discovery closed and just ten weeks before the long-scheduled trial." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 2001 WL 699889, at *1 (S.D. Ind. Apr. 26, 2001). Other courts similarly acknowledge that privilege challenges must be made in a timely manner or are waived. *See, e.g.*, *Acosta v. Min & Kim, Inc.*, No. CIV 15-14310, 2017 WL 11317619, at *1 (E.D. Mich. June 21, 2017) (good cause did not exist to compel production where the basis for the privilege was asserted before the fact discovery cut off).

The Sixth Circuit emphasized the requirement to adhere to Court-ordered deadlines in its recent mandamus order in this case. *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 843-44 ("[T]he requirements of the Civil Rules in an MDL case . . . are the same as those for ordinary litigation on an ordinary docket."). In this case as in any other, it is not permissible to ignore deadlines and good cause standards on the assertion that it might somehow be more efficient for future cases. *See id.*

Plaintiffs seek to limit the mandamus order artificially to its facts—suggesting that it only applies to motions to amend pleadings. That misses the mark. The Sixth Circuit expressly recognized that there is no special "MDL precedent" that alters the timeliness requirements of Rule 16 for an MDL. *Id.* at 844; *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332 (N.D. Ill. 2005) (MDL court citing exclusively non-MDL cases in determining the timeliness of a motion to compel filed the day discovery closed).

It is not surprising, then, that MDL courts, just like other federal courts, routinely deny untimely privilege challenges in circumstances exactly like those presented here. For example, in *In re Seroquel Products Liability Litigation*, plaintiffs brought a motion to compel documents that appeared on a privilege log served ten months before. *See* No. 6:06-md-1769, 2009 WL 3739347, at *1 (M.D. Fla. Nov. 6, 2009). The defendant filed a motion to strike for

6

untimeliness, arguing that plaintiffs had raised the privilege challenge "nearly a year late without even attempting to show reasonable cause for the delay." *Id*. at *4.  The MDL court agreed, denying the motion as untimely.  *See id*. at *6.  The court did so despite the fact that discovery had not yet closed and even though plaintiffs argued that the defendant was improperly withholding documents in violation of the court's privilege rulings.  *See id*. at *1-2; see also Durand v. Hanover Ins. Group, Inc*., 294 F. Supp. 3d 659, 671 (W.D. Ky. 2018) (a court "must first find that the moving party proceeded diligently," and "the movant who fails to show 'good cause' will not be accorded relief . . . merely because the opposing party will not suffer substantial prejudice.").

**II.      Plaintiffs cannot show good cause for their belated privilege challenges.**

In order to show good cause, Plaintiffs must demonstrate that "despite their diligence they could not meet the original deadline."  *In re Nat'l Prescription Opiate Litig.,* 956 F.3d at 843-44 (quoting *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)).  The burden of establishing good cause lies with Plaintiffs.  *See id*.  Plaintiffs fail to meet that standard here.

Plaintiffs make three arguments in an effort to justify their belated privilege challenges: (1) the Court issued "bellwether" privilege rulings through December 2019, which they say should permit Plaintiffs to challenge Track One A privilege logs forever; (2) the general complexity of the MDL prevented them from bringing these challenges earlier; and (3) further factual development led them to determine the significance of additional documents withheld as privileged that they sought to challenge.  Each of these arguments fails.

   A.     *The Court's earlier privilege rulings provide no basis for Plaintiffs' delay.*

Both Plaintiffs and the Special Master focus heavily on privilege rulings that issued after the close of fact discovery as a purported basis for "good cause."  But this is not sufficient to justify what Plaintiffs request here.  The Court's last privilege ruling cited by Plaintiffs issued in

7

December 2019.  *See* Ex. 8 at 3, 8/26/20 Robertson letter to Cohen.  That was several months *before* the parties resolved all of their disputes regarding outstanding privilege challenges in May 2020.  *See* Ex. 7 at 2, 5/29/20 Desh email to Cohen; Ex. 6 at 3, 8/12/20 Robertson email to Cohen.  Plaintiffs have identified no rulings after December 2019 that could form the basis for new privilege challenges at this stage.  Plaintiffs also fail to explain why *any* privilege ruling post-dating the close of fact discovery changed the privilege landscape in the MDL in a way that would justify additional challenges after January 2019.

The MDL court in *Seroquel* rejected almost identical arguments to Plaintiffs' argument here.  In that case, the defendant was obligated to comply with ongoing privilege rulings just like Defendants in this MDL.  Despite waiting nearly a year before bringing their motion, the plaintiffs argued that the defendant was "erroneously shielding" documents in violation of the court's prior privilege rulings.  2009 WL 3739347, at *3.  The court nonetheless held that plaintiffs' additional challenges—to a privilege log that the defendant "provided ten months prior to the motion"—were "untimely."  *Id*. at *6.  The same applies here.

B. *The complexity of the MDL provides no basis for Plaintiffs' delay.*

Plaintiffs next argue that "good cause" exists because this MDL is so complex that they did not have time to bring all of their privilege challenges before the close of fact discovery.  But the fact "[t]hat Plaintiff's counsel was busy is not a satisfactory justification for the untimely motion" to extend scheduling deadlines.  *Burgos-Martinez v. City of Worcester,* 345 F. Supp. 3d 105, 107 (D. Mass. 2018).  In *Burgos-Martinez*, the court observed that this same justification "has been tried before, and regularly found wanting . . . [m]ost attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences."  *Id*. (quoting *de la Torre v. Cont'l Ins. Co*., 15 F.3d 12, 15 (1st Cir. 1994)).

Nonetheless, the Special Master ultimately concluded that "good cause" exists here largely because of the unique complexity of this MDL:

> Good cause for any putative delay by Plaintiffs inheres in: (1) the context of the parties' ongoing duty in the MDL to comply with serially-released Discovery Orders; (2) the need to test and check parties' compliance with those Orders (often with the Special Master's help); (3) the parties' time-consuming process of creating for the undersigned periodic, 1000-plus-page Discovery Agendas to seek resolution of ongoing disputes (along with many associated teleconferences); (4) the overwhelming volume and complexity of discovery issues absorbing everyone's time and attention; and (5) the often drawn out meet-and-confer process required of the parties. Moreover, the Special Master's own prioritization of other discovery disputes has played into the timing of the raising and resolution of the parties' privilege challenges. These considerations amount to good cause.

ECF No. 3641 at 6 n. 8.

This reads the "good cause" standard out of Rule 16 altogether. None of these explanations excuses Plaintiffs' failure to respond to Walgreens on their belated privilege challenges for six months after the close of fact discovery (at which point most of the above-referenced factors already had been resolved), or explains why Plaintiffs waited more than a year after the close of fact discovery to bring new challenges in June 2020. The Sixth Circuit has specifically instructed this Court that it cannot "distort or disregard the rules of law" applicable to an individual case by imputing "good cause" under Rule 16 in service of the "MDL as a whole." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 844. That is "simply no substitute for the showing of diligence required by the Rule." *Id*.

Discovery Ruling 23 relies on *Sulfuric Acid* in an attempt to establish that the "unique manner in which initial discovery and the bellwether process have unfolded" can be sufficient to establish good cause here. ECF No. 3641 at 4-5. But that case does not bear the weight that is placed on it. In *Sulfuric Acid*, the court permitted plaintiffs to pursue belated discovery based on evidence of diligence in the face of a specific misunderstanding about whether a party would make an individual available for deposition. *See* 231 F.R.D. at 342-43. *Sulfuric Acid* does not

9

stand for the proposition that a "complex [set] of circumstances" obviates the need to show good cause. To the contrary, *Sulfuric Acid* acknowledged that even in a complex MDL "motions to compel filed after the close of discovery are almost always deemed untimely." 231 F.R.D. at 332. And indeed, that same case rejected a motion to compel filed *before* the close of fact discovery as untimely, because it was filed eight months after plaintiffs were put on notice of the motion's basis. *Id*. at 341. In *Sulfuric Acid* the Court observed that whatever prejudice plaintiffs "suffered was the result of their own inaction." *Id*. at 339. Once again, the same holds here.

    C.  *The development of discovery provides no basis for Plaintiffs' delay.*

  Plaintiffs also argue that they did not appreciate the importance of challenging certain privilege designations until discovery had progressed. But the record shows the opposite: multiple documents in Plaintiffs' June 2020 challenges were included in their earlier challenges, all of which were resolved by the parties' May 2020 agreement. For example, documents WAGMDL00757193 and WAGMDL00757222 (starting at WAGMDL00757225) were listed as Exhibits E and F to Agenda Item 232 (reflecting September 2019 challenges), which was resolved by the parties' agreement. *See* Ex. 9, Excerpts from May 19, 2020 agenda (reflecting Exhibits E and F); *see also* ECF No. 3455 at 3; Ex. 7 at 2, 5/29/20 Desh email to Cohen ("[T]he parties have resolved agenda items 252, 232, and 253 regarding outstanding privilege challenges.").

  This is a perfect example of the problems with Plaintiffs' argument: Plaintiffs have been in possession of the aforementioned documents since January 2019 and have been in possession of privilege logs for these documents since March 2019. No good cause can exist where Plaintiffs have possessed the challenged documents and associated privilege logs for at least 18 months, and where Plaintiffs have been on notice of the basis for these challenges for at least an entire year. If such circumstances constituted good cause, it would render the rule meaningless.

10

The Special Master's Modified Order states that "there will certainly come a time when Walgreens' waiver argument is well-taken," but under the Modified Order it is difficult to imagine when that will be.  ECF No. 3461 at 6.

> D. *Discovery Ruling 23 inappropriately shifts the burden to Walgreens to show Plaintiffs' lack of diligence.*

The Modified Order acknowledges that Plaintiffs have identified no specific reason why they could not have brought their challenges before the close of fact discovery.  Instead, the primary conclusion is that "[n]othing in the parties' submissions convinces the Special Master that plaintiffs have, at this juncture, acted *without* reasonable diligence."  ECF No. 3461 at 6 (emphasis added).  That approach flips things on their head.  As a matter of well-settled law, it is *Plaintiffs' burden* to establish "good cause" under Rule 16.  *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 843-44.  This Court cannot rewrite that rule and shift the burden to Walgreens to rebut the Special Master's baseline assumption that in a complex MDL "good cause" exists unless Defendants show otherwise.

Plaintiffs failed to meet their burden of showing good cause for their untimely privilege challenges, as the Federal Rules require.  They failed to act with any diligence to bring those challenges for more than 18 months following the fact discovery cut off.  Walgreens' objection to the Special Master's Ruling allowing Plaintiffs' June 2020 challenges to Walgreens' Track One A privilege claims should be sustained.

**III.** **The May 29, 2020 agreement encompassed all outstanding privilege challenges.**

In Discovery Ruling 23, the Special Master correctly ruled that Plaintiffs could not challenge privilege claims that the parties had resolved by agreement in May 2020.  *See* ECF No. 3461 at 3.  Having failed in their scheme to renege on that agreement, Plaintiffs now take a different approach to bring belated challenges to certain of these documents.  For the first time

11

ever, Plaintiffs now argue that the parties' agreement actually did *not* resolve all challenges outstanding as of May 2020. Not so.

Following a meet and confer in May 2020, the parties issued a joint statement that Agenda Items 232 and 253 were resolved, which reflected all outstanding privilege challenges to Walgreens as of that date. *See* Ex. 7 at 2, 5/29/20 Desh email to Cohen. Plaintiffs responded that they reserved their right to bring *other*, *future* challenges to Walgreens' privilege logs. *See id*. at 1, 5/30/20 Mougey email to Cohen; Ex. 6 at 3, 8/12/20 Desh email to Robertson. But Walgreens clarified at the time—and Plaintiffs did not dispute—that no challenges remaining from Agenda Items 232 and 253 required resolution. *See* Ex. 7 at 1, 6/1/20 Desh email to Cohen; *see also* Ex. 6 at 3, 8/12/20 Desh email to Robertson. In response to a direct question from the Special Master, **Plaintiffs confirmed that the parties' May 2020 agreement resolved "the outstanding disputes relative to Plaintiffs' CT1A challenges" encompassed by "Agenda Items 232 & 253."** Ex. 6 at 3, 8/12/20 Robertson email to Cohen (emphasis added).

Nevertheless, Plaintiffs still attempted to raise new challenges in June 2020 to documents that had been included in Agenda Items 232 and 253. *See supra* at 10. When Walgreens raised this issue with the Special Master, Plaintiffs for the first time disputed the scope of the agreement. *See* ECF No. 3461 at 2-3.

As explained above, the record does not support Plaintiffs' position. The parties repeatedly confirmed to the Special Master that they had resolved **all** challenges included in Agenda Items 232 and 253. Walgreens complied with the agreement by producing the required documents. Plaintiffs should be required to comply with the agreement, too.

## CONCLUSION

Discovery Ruling 23 violates clear Sixth Circuit law by rewriting the "good cause" standard out of Rule 16. There is no precedent for this holding. Instead, as in all other cases,

12

Plaintiffs must establish that they were unable to bring the instant challenges before the close of fact discovery. Plaintiffs have not met this burden, and a generalized reference to the "complexity" of this case is no substitute. The Court should sustain Walgreens' objection to the Special Master's Modified Order and deny Plaintiffs' motion to compel production of the privileged documents Plaintiffs challenged in June 2020 as untimely or otherwise barred by the parties' May 2020 agreement.[1]

Dated: September 15, 2020

Respectfully submitted,

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
Email: kaspar.stoffelmayr@bartlitbeck.com
Email: brian.swanson@bartlitbeck.com
Email: kate.swift@bartlitbeck.com
Email: sharon.desh@bartlitbeck.com
Email: sten.jernudd@bartlitbeck.com

---

[1] Walgreens also objects to the short deadline for filing this Objection. Discovery Ruling 23 issued on September 7, 2020. The Special Master required that "[a]ny party choosing to object to any aspect of this Ruling must do so on or before Thursday, September 10, 2020." ECF No. 3455 at 8. The Special Master refused to extend this deadline at Walgreens' request, including while the parties were submitting motions for clarification and reconsideration. *See* Ex. 6 at 1, 9/9/20 Cohen email to Desh and Robertson. Modified Discovery Ruling 23 issued on September 13, and ordered that objections must be filed by two days later, on September 15. *See* ECF No. 3461 at 9. These shortened deadlines are inconsistent with the Federal Rules, and with the Appointment Order governing this case, both of which provide for a minimum of 21 days to file an objection to the report of a Special Master. *See* Fed. R. Civ. P. 53(f)(2); ECF No. 69 at 4 & n.2. Walgreens also objects to the deadline to submit documents for *in camera* review, ECF No. 3455 at 8; ECF No. 3461 at 8, while an active objection is pending.

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Phone: (303) 592-3100
Fax: (303) 592-3140
Email: alex.harris@bartlitbeck.com

*Counsel for Walgreen Co.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, this 15th day of September 2020, I served a copy of the foregoing via the Court's ECF system to all counsel of record.

                                       */s/ Kaspar J. Stoffelmayr*
                                       Kaspar J. Stoffelmayr

                                       *Counsel for Walgreen Co.*