# EXHIBIT 8



August 26, 2020

Special Master David Cohen
David R. Cohen CO. LPA
24400 Chagrin Blvd., Suite 300
Cleveland, OH 44122

*via Electronic Mail*
**David@SpecialMasterLaw.com**

      Re:    *In re National Prescription Opiate Litigation*, MDL 2804
             Response to Walgreens' Waiver Argument to the PEC's challenges

      Special Master Cohen has requested that the PEC respond to Walgreens' argument regarding alleged waiver of privilege challenges.  This letter shall serve as the PEC's response.

## **Overview**

      Plaintiffs have been challenging Walgreens' privilege claims since 2018 and continued doing so by way of issuing separate written challenges to Walgreens in January, February, and March of 2019.  Plaintiffs also followed-up with Walgreens repeatedly in writing during each of these months, and Walgreens represented that it had made all of its downgrades.  Subsequent thereto, several additional and important bellwether privilege Discovery Rulings were issued in May and June of 2019, and Defendants were reminded of their obligation to downgrade accordingly.  While other defendants continued to implement the privilege Discovery Rulings and downgrade their privilege claims, Walgreens did nothing more.  On September 25, 2019, Plaintiffs submitted a motion further challenging Walgreens' privilege claims.

      Because Walgreens has failed to follow the court's directives and orders on its claimed assertion of privilege, Walgreens frames this as an alleged "waiver of privilege challenges".  The Special Master and the Court have issued various privilege-specific rulings applicable to all MDL cases, and repeatedly directed Defendants to apply same.[1]  However, it is evident that Walgreens has not properly applied these privilege rulings to its privilege claims.  This forms the primary basis for Plaintiffs' pending privilege challenges and complaints – which date back to CT1.[2]

---

[1] *See e.g.,* 4/24/2019 Discovery Hearing Transcript at p. 53 ("As I noted earlier, discovery ruling 14-5 is what I call a bellwether evidentiary ruling, and I believe it was understood to be that by the parties as it was being addressed."); 5/26/2020 Discovery Teleconference Transcript at p. 96 ("And my recollection is that there are statements by the court or me saying that the privilege reviews that I undertook were of exemplar documents and that the **defendants are and have been since obligated** to go back and apply those rulings to every other document that they've identified."). (Emphasis added).

[2] *See e.g.,* Plaintiffs' 9/25/2019 letter submission and exhibits A – E thereto (adopted and incorporated by reference herein).  Plaintiffs' 9/25/2019 motion set forth that, "[c]onsistent with prior Discovery Rulings, these (and any similar) documents should be produced because they are not entitled to privileged treatment.



      Plaintiffs are not seeking new discovery or the re-opening of depositions. Rather, Plaintiffs' challenges to Walgreens' privilege claims seek to enforce the Court's bellwether privilege Discovery Rulings. Thus, any alleged waiver argument misses the mark. There is no time limit to ensuring that the Court's privilege rulings have been followed. The Court itself recognized same in a recent order addressing failure to fully downgrade CT1 privilege claims.[3]

      Walgreens' position also ignores the realities of MDL cases and particularly this MDL – one of the most complex in history. As the Special Master has recognized on multiple occasions, addressing all the hundreds of thousands of CT1 privilege claims asserted by dozens of Defendants and third parties was not possible, particularly within a single case track.[4] Walgreens' claim that all privilege-related issues had to be resolved by the close of CT1 (let alone by the close of CT1 discovery) is not reasonable nor fair. Instead, it promotes a defendant's overt violation of the court's rulings. And not surprisingly, Walgreens presents no MDL jurisprudence supporting its waiver argument.

      The MDL realities (particularly those in this MDL) are highlighted by the fact that many of the bellwether privilege Discovery Rulings were necessarily finalized after either of the different discovery deadlines Walgreens inconsistently asserts.[5] In fact, nearly all privilege Discovery Rulings were finalized after discovery, including continuing after resolution of CT1 and through the end of 2019.[6]

| Privilege Discovery Ruling ("DR14, Part#") | Date Finalized |
|---|---|
| DR 14, Part 1 (Amended) (Doc. #: 1380) | March 11, 2019 (objection overruled – Doc. #: 1428) |
| DR 14, Part 2 (Doc. #: 1353) | February 15, 2019 (objection overruled – Doc. #: 1376) |
| DR 14, Part 3 (Doc. #: 1359) | March 7, 2019 (objection overruled – Doc. #: 1422) |

---

Separately, even if any of these documents were determined to be privileged, Walgreens has waived privilege as a consequence of its various affirmative claims." *Id*. at p. 1.

[3] *See* 7/20/2020 Order (Doc. #: 3385) ("No later than August 21, 2020, ABDC shall re-examine the documents it continues to withhold as privileged and determine whether it should remove or reduce its privilege claim for any documents.").

[4] *See e.g.*, 5/30/2019 Discovery Teleconference transcript at p. 14 ("I don't see any other way to do this. I don't have time. No one has time to go through it document by document.")

[5] Walgreens has previously asserted that March 2019 was the deadline for fact discovery, however, Walgreens claims in its 7/29/2020 submission that the deadline was January 2019.

[6] Additional privilege Discovery Rulings were issued in 2020. *See* Revised DR 14, Part 10 (issued 1/8/2020) (Doc. #: 3071), DR 14, Part 12 (issued 3/30/2020) (Doc. #: 3245). Discovery Rulings became finalized after objections were overruled or when an objection was not taken.



| DR 14, Part 4 (Doc. #: 1387) | March 1, 2019 (objection not filed) |
|---|---|
| DR 14, Part 5 (Doc. #: 1498) | April 16, 2019 (objection overruled – Doc. #: 1553) |
| DR 14, Part 6 (Doc. #: 1593) | May 7, 2019 (objection not filed) |
| DR 14, Part 7 (Doc. #: 1610) | May 3, 2019 (objection not applicable) |
| DR 14, Part 8 (Doc. #: 1666) | June 14, 2019 (objections not filed) |
| DR 14, Part 9 (Doc. #: 1678) | June 19, 2019 (objection not filed) |
| DR 14, Part 10 (Doc. #: 2968) | December 7, 2019 (reconsideration granted – *see* fn 6) |
| DR 14, Part 11 (Doc. #: 2979) | December 16, 2019 (objection not filed) |

The repeated directives from the Court obligated Defendants to apply these privilege Discovery Rulings to their respective privilege claims. Many Defendants continued to downgrade their respective privilege claims in the wake of the above rulings. However, it was apparent that Walgreens was an outlier - not reasonably applying these rulings. Thus, after: a) continuous privilege challenges and follow up (including questioning of Walgreens' lack of downgrades) by Plaintiffs in January, February and March of 2019, and b) several subsequent privilege rulings in April, May and June (which further supported and confirmed Plaintiffs' position and concerns regarding Walgreens' privilege claims), Plaintiffs again challenged sample Walgreens' privilege claims on September 25, 2019. Moreover, these problems remain, and thus support the continued need to enforce the Discovery Rulings through further *in camera* review of sample Walgreens' privilege claims.

### **Alleged Privilege Waiver – Walgreens' Cases**

Walgreens' reliance on the Sixth Circuit's mandamus order is misplaced. The Sixth Circuit's mandamus order speaks only to the timeliness and Rule 16 "good cause" in the context of a Party's right to amend pleadings and parties to an action already under a Case Management Plan and Trial Order.[7]

---

[7] *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843-44 (6th Cir. 2020). *See also*, *Burghardt v. Ryan*, No. 5:19-cv-325, 2020 WL 4350049 (N.D. Ohio Jul. 29, 2020); *Oatly AB v. D's Naturals LLC*, 1:17-cv-840, 2020 WL 2912105 (S.D. Ohio Jun. 3, 2020) (relying on *In re Nat'l Prescription Opiate Litig.* in denying various parties' motions to amend). *Cf. Seifu v. Postmaster General, U.S. Postal Service*, 1:19-cv-



As for the three privilege-specific cases cited to by Walgreens, none involve an MDL nor the complex issues and tight deadlines faced in this litigation. Moreover, none of these cases involve the proponent of a privilege failing to apply bellwether privilege rulings. Further, each of the three cases involve other significantly different circumstances from the matter herein. For example, in the off-circuit case of *Barron Collier*, the Court ruled that challenging party waited too long to challenge the Government's privilege over <u>clawed-back materials</u> and otherwise could not reopen discovery to take a 30(b)(6) deposition regarding documents related to the deliberative process privilege. *United States v. Barron Collier Company,* 2015 WL 13811188 at *2 & 4 (D. Ariz. Dec. 23, 2015). The operation of FRE 502 is not applicable here, and the PEC does not seek a 30(b)(6) or any other deposition relative to these privilege challenges. The other two cases are equally inapplicable.[8]

While the three cases cited by Walgreens are distinguishable, a case within the Sixth Circuit, *Durand v. Hanover Insurance* Group, 294 F. Supp. 3d 659 (W.D. Ky, Feb. 16, 2018), is more analogous to the matter at hand. In *Durand*, the Court carefully weighed prejudice to the parties and directed *in camera* review of certain logged privilege claims even though fact discovery had closed. *Id*. at 687-693. Overall, the *Durand* Court considered the relevance of the each of the challenged entries as well as whether similar documents were previously ruled not privileged. *Id.* Like the defendant in *Durand*, Walgreens has failed to properly downgrade similar or analogous privilege claims, despite Rule 26 and directives from this Court.[9]

## **Argument**

Even if this Court entertains Walgreens' timeliness argument, Plaintiffs previously submitted privilege challenges and issues that were left outstanding upon resolution of CT1A.[10] Thus, the overarching problems and complaints at issue herein are not even "new". Moreover, Plaintiffs are not raising or trying to litigate new theories (e.g., crime-fraud) for why the challenged

---

572, 2020 WL 2085197 (S.D. Ohio Apr. 30, 2020) (showing the scope of the Sixth Circuit's mandamus order narrowly applied to amendment of pleadings.).

[8] In *Cardiac Pacemakers*, the court provided several substantive reasons why the privilege challenges had no merit, and also found that waiting until after the discovery deadline - <u>four years from service of the privilege log</u> – was too late. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 2001 WL 699889 (S.D. Ind. Apr. 26, 2001). Specific to timeliness, the court stated that "[t]he documents are identified in a detailed privilege log that defendants have had since 1997 [4 years prior to bringing the motion] . . . Defendants filed their motion challenging those claims of privilege long after discovery closed and just ten weeks before the long-scheduled trial, which is now just six weeks off." *Id*. at *1. In *Acosta*, the court found <u>no substantive support</u> for the privilege challenges and that "even if those arguments had merit, they have been raised too late." *Acosta v. Min & Kim, Inc.*, 2017 WL 11317619, at *1 (E.D. Mich. June 21, 2017). Further, the lateness of the challenges in *Acosta* centered upon a strict discovery deadline as well as the challenging side's misrepresentation about when the issue first arose (one day instead of eight months prior to the discovery deadline). *Id*.

[9] Plaintiffs' July 22, 2020 letter brief at pp. 1-3; Plaintiffs' September 25, 2019 letter brief at pp. 2-3

[10] Plaintiffs' September 25, 2019 submission.



claims are not privileged. Rather, Plaintiffs merely seek application of the bellwether rulings which have already been made.

Also, the logic of Walgreens's waiver argument would lead to unworkable consequences and unfair results. If Plaintiffs were indeed obligated to address each of Defendants' privilege claims by the close of CT1 (let alone by the close of CT1 discovery), it would not have been possible and/or would have overburdened the Court. In fact, it would have required litigation of privilege claims involving topics that were asserted by Defendants and/or found by the Court to be limited in the context of CT1. For example, using Walgreens' logic, Plaintiffs would be required to challenge thousands of Defendants' dispensing-related CT1 privilege claims even though various rulings limited discovery regarding same.[11]

Walgreens' waiver argument is a distraction from its non-application of the Court's privilege rulings. Walgreens is claiming that it was near perfect with its privilege claims; that the subsequent privilege orders and rulings have no significant impact on its privilege claims; and that it is justified in maintaining about 99% of its original privilege claims. Plaintiffs' narrow set of specific privilege challenges seek to test Walgreens' assertions – particularly since Walgreens' recent downgrades show that it was withholding documents which are not privileged.[12] Moreover, Plaintiffs' sample privilege challenges are brought relative to documents and information which, if allowed to be redacted/withheld, will unjustly prejudice plaintiffs.[13]

Plaintiffs cannot be denied their right, in current and future cases, to raise challenges against privilege claims lodged by Defendants – particularly with respect to privilege claims which should have been "self-downgraded" consistent with privileged-related discovery rulings. Otherwise, it unjustly reverses the burden of applying the Court's privilege rulings, is inconsistent with the purpose and intent of an MDL court's power,[14] and reduces or eliminates the efficiencies created by the prior privilege Discovery Rulings rendered by this Court. Even if one were to say that Summit and Cuyahoga should have fully resolved all Defendants' (hundreds of thousands of) privilege claims in CT1, that should in no way impact the ability of Lake and Trumbull Counties to address Defendants' privilege claims in their case. In fact, such a rule would be contrary to the

---

[11] *See e.g.*, Discovery Ruling No. 18 (Doc. #: 1476) (filed 3/26/2019) at p. 6 fn.2 ("As the Special Master noted in DR No. 8, '[a]t some future juncture (e.g. after the first trial), the balance the Court must weigh under Fed. R. Civ. P. Rule 26(b)(1) may well shift, making plaintiffs' additional requested [dispensing related] discovery appropriate'").

[12] *See* Plaintiffs' July 22, 2020 letter brief at pp. 1-3, and Ex. A (example downgrades) attached thereto.

[13] *See* exhibit E to 7/22/2020 submission (showing privilege claims involving topics such as: "Meeting Notes for Suspicious Ordering Phase 5", "Suspicious Controlled Substance Order Monitoring", "Suspicious Drug process").

[14] The Sixth Circuit acknowledged that the purpose of an MDL court is to create efficiencies, *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 846 (6th Cir. 2020), which is exactly what Plaintiffs have asked this Court to do.

2216 Magazine Street  New Orleans, LA 70130
P 504.525.1500  /  F 504.525.1501



Order governing CT3.[15] Accordingly, Plaintiffs respectfully request the relief sought in our 9/25/2019 and 7/22/2020 submissions.

Thank you for your attention to this matter.

Sincerely,

Pearl A. Robertson

PAR/

cc. (via e-mail only)
Sharon Desh

---

[15] *See* Doc #: 3371 at p. 10 fn.16 ("Put more simply: a party may seek discovery in Track Three of information not produced in Track One, including information that was requested in Track One but not produced.").

2216 Magazine Street  New Orleans, LA 70130
P 504.525.1500  /  F 504.525.1501