

O'Melveny & Myers LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071-2899

T: +1-213-430-6000
F: +1-213-430-6407
omm.com

File Number: 427,892-00311

September 16, 2020

**Charles C. Lifland**
D: +1 213 430 6665
clifland@omm.com

**Richard B. Goetz**
D: +1 213 430 -6400
rgoetz@omm.com

**Houman Ehsan**
D: +1 213 430 6326
hehsan@omm.com

**Shara Venezia-Walerstein**
D: +1 212 728 5728
sveneziawalerstein@omm.com

<u>**VIA EMAIL**</u>

The Honorable Dan Aaron Polster
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, OH 44113-1837

Re:   *In re: National Prescription Opiate Litigation*, Case No. 1:17-md-2804, NAS Class Action

Dear Judge Polster:

We write to express our dismay with a statement that Plaintiffs' counsel Thomas E. Bilek recently made during a deposition in the NAS Class Action and to request that this Court address, sanction, and remedy Mr. Bilek's misconduct. On September 10, 2020, while taking the deposition of defense expert Dr. Lewis Rubin, M.D., Mr. Bilek compared Dr. Rubin to a "Nazi at the gas chamber." The offensiveness of Mr. Bilek's remark speaks for itself—such commentary has no place in this or any other proceeding.

District courts possess inherent authority to sanction "various impermissible litigation practices," including the "inherent power to sanction an attorney for his behavior at a deposition." *First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 514-15 n.12 (6th Cir. 2002). To ensure that this impermissible line is not crossed again, we request that the Court take appropriate remedial steps, including at minimum: (1) issue an order rebuking Mr. Bilek's offensive conduct and formally prohibiting similar inflammatory attacks on a witness's religion, race, nationality, or background; (2) order Mr. Bilek to submit a written apology to Dr. Rubin, who lost family in the Holocaust; and (3) bar Mr. Bilek from participating in any further depositions or other activities relating to class certification in the NAS Class Action.

The following excerpt and emphasis from the deposition transcript, attached as Exhibit A to this letter, provides the context for Mr. Bilek's slur, injected argumentatively in the middle of one of Dr. Rubin's answers:

> MR. BILEK:  So in this case, you understand that your opinions are to help the drug companies, right?
>
> DR. RUBIN:  No.
>
> DR. EHSAN [Dr. Rubin's counsel]:  Object to the form.

O'Melveny

MR. BILEK: Your opinion -- you're in opposition to my clients who are the guardians of these NAS children. You are filing a report that's against their interest. You agree with that, right?

DR. EHSAN: Object to the form.

DR. RUBIN: No.

MR. BILEK: You don't think that this report is going to be used by the drug company to try to prevent recoveries by my client. Is that your testimony?

DR. EHSAN: Object to the form.

DR. RUBIN: Let me reiterate. Because, you know, it's not that you are accusing me but you are sort of implicitly, you know, giving me purposes and goals that I don't have. I was asked by -- you know, in effect, four attorneys to write a report based on my knowledge of neonatal abstinence syndrome. That is exactly what I have done. I have submitted my report, and I have discharged that responsibility. I am not in control of how that report then will be utilized, misutilize, whatever, by anybody else. I didn't write it[ --]

MR. BILEK: *We got the Nazi at the gas chamber, right? I mean I don't know what's going to happen.*

DR. EHSAN: Whoa, whoa, whoa, Tom. Objection. … [Y]ou just accused someone of -- equivalent to being a Nazi and that is unacceptable. … That is uncalled for.

MR. BILEK: I apologize, and I withdraw my comment.

DR. RUBIN: I will --

MR. BILEK: My point is --

DR. RUBIN: *No. Let me say something. I will accept your apology, but I'm shocked that you would say that to me as somebody who lost relatives, one and two generations ago in the Holocaust. I'm kind of appalled that you would say that.* My point is that -- no, no, no. Let me finish. My point is that I wrote a report that is a factual and evidence-based report. I didn't write a supportive document leaning one way or the other on any issue.

2



There is no justification for Mr. Bilek's behavior.  Comparing any witness to a "Nazi at the gas chamber" shocks the conscience; it is all the more repugnant when that witness has himself lost family to the atrocities of the Holocaust.  And while the transcript does not fully convey the tone of the exchange, Mr. Bilek's half-hearted apology—only after he was admonished by Dr. Rubin's counsel—offered no genuine consolation.

Defendants respectfully request that the Court send a clear message that it will not tolerate such conduct.

Sincerely,

/s/ *Charles C. Lifland*
Charles C. Lifland
Richard B. Goetz
Houman Ehsan
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA  90071
Tel: (213) 430-6000
clifland@omm.com
rgoetz@omm.com
hehsan@omm.com

Shara C. Venezia-Walerstein
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
sveneziawalerstein@omm.com

*Counsel for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.*