# EXHIBIT 5

Highly Confidential - Subject to Further Confidentiality Review

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              FOR THE NORTHERN DISTRICT OF OHIO
 3                        EASTERN DIVISION
 4     ------------------------------X

       IN RE: NATIONAL PRESCRIPTION    MDL No. 2804
 5     OPIATE LITIGATION,
                                       Case No. 17-MD-2804
 6     This document relates to:
 7     All Cases                       Hon. Dan A. Polster
 8     ------------------------------X
 9
10       * * HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER * *
11              * * CONFIDENTIALITY REVIEW * *
12                   VIDEOTAPED DEPOSITION
13                            OF
14                    THOMAS P. NAPOLI
15                   New York, New York
16              Thursday, January 17, 2019
17
18
19
20
21
22
       Reported by:
23     ANNETTE ARLEQUIN, CCR, RPR, CRR, RSA
24
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    January 17, 2019

 2                    9:06 a.m.

 3

 4          Videotaped deposition of PURDUE PHARMA,

 5     through its representative, THOMAS P.

 6     NAPOLI, held at the offices of LIEFF

 7     CABRASER HEIMANN & BERNSTEIN LLP, 250

 8     Hudson Street, New York, New York, pursuant

 9     to Notice, before Annette Arlequin, a

10     Certified Court Reporter, a Registered

11     Professional Reporter, a Realtime Systems

12     Administrator, a Certified Realtime

13     Reporter, and a Notary Public of the State

14     of New York and New Jersey.

15

16

17

18

19

20

21

22

23

24
```

```
1        A.    I met with the gentleman seated next
2    to me, just to really go through what is
3    entailed in a deposition, kind of the process.
4        Q.    Have you ever given a deposition
5    before?
6        A.    Civilly.  It would be many years ago.
7        Q.    About when was it?
8        A.    1990s.  It was a personal injury
9    thing.
10       Q.    Have you ever given testimony under
11   oath in a court of law?
12       A.    No, sir.
13       Q.    All right.  Did you talk with anyone
14   other than your counsel about the deposition
15   today?
16       A.    My wife.
17       Q.    All right.  Anyone else?
18       A.    No.
19       Q.    Okay.  So I'm going to hand you what
20   we'll mark as Exhibit 5.
21       A.    Can I correct -- I did have a
22   conversation with Mary Woods.
23             MR. LUXTON:  You should correct that,
24        yeah.
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1          A.     I think that needs to be corrected.
 2          Q.     Sure.
 3          A.     Last week I had a half-hour call with
 4     counsel and Mary Woods regarding deposition.
 5          Q.     What did she tell you?
 6          A.     She was just looking for some
 7     clarification, procedural clarifications from
 8     when we administered the SOMS program.  Nothing
 9     about the deposition.
10          Q.     Is it fair to say she asked you
11     questions in preparation for her deposition?
12          A.     Correct.
13          Q.     All right.  Great.  Thank you.
14          A.     You're welcome.
15          Q.     And I'll hand you what we'll mark as
16     Exhibit 5.
17          A.     Sure.
18          Q.     Mr. Napoli, can you look generally at
19     Exhibit 5.  As you're looking at it, I'll read
20     into the record.  It's Bates-stamped
21     ALLERGAN_MDL_03738524 through 8528.
22                 (Napoli Exhibit 5, Document entitled
23          "Customer Communication for SOMS,"
24          ALLERGAN_MDL_03738524 through 8528, marked
```

1     before.
2        A.    Um-hmm.
3        Q.    Who is Scott Soltis?
4        A.    Scott was our executive director of
5     securities and DEA affairs.
6        Q.    So was he on an organizational chart
7     above you or below you.
8        A.    Above me.  He was responsible for
9     security and DEA compliance for the
10    organization.
11       Q.    And then you cc Gary Stewart?
12       A.    Yes.
13       Q.    Who is Gary Stewart?
14       A.    Gary Stewart was our supply chain
15    security manager based out of Gurnee, Illinois,
16    distribution center.
17       Q.    And then Ed J. Grover?
18       A.    Yes.
19       Q.    Who is Mr. Grover?
20       A.    Ed Grover was our head of
21    distribution in Gurnee, Illinois.
22       Q.    And you write, "Scott, in regards to
23    the recent DEA request for product, I would
24    suggest the following course of action:  Special