**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | Case No. 1:17-MD-2804 |
| *APPLIES TO ALL CASES* | Hon. Dan A. Polster |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO WALGREENS'S OBJECTION
TO MODIFIED DISCOVERY RULING NO. 23**

Walgreens's objection to Modified Discovery Ruling No. 23 ("DR-23") (Doc. # 3461)

should be denied, and DR-23 upheld, for at least four reasons:

*First*, contrary to Walgreens's mischaracterization, DR-23 was in accordance with the Civil

Rules, and not issued simply because this is an MDL case.[1]  Rather DR-23 was issued based on

"the volume and complexity of discovery issues present in this case," and particularly the

"enormous challenges" of addressing hundreds of thousands of Track One privilege claims as well

as countless discovery issues.[2]  The Court's use and continued implementation of this process is

entirely consistent with the April 15, 2020 Sixth Circuit mandamus which stated that, "an MDL

court has broad discretion to create efficiencies and avoid duplication—of both effort and

expenditure—across cases within the MDL."[3]

---

[1] In fact, the Special Master explicitly stated that the ruling was not made solely due to the status of this case as an MDL.  *See* Doc. # 3461 at 4-5 ("While recognizing that MDL cases are not, *per se*, different from other federal precedent, the Special Master emphasizes that this case, like all others, must be assessed within its own circumstances, especially the unique manner in which initial discovery and the bellwether process have unfolded.").

[2] Doc. # 3461 at 4 & 6.

[3] *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020).  Further, "whether discovery is 'proportional to the needs of the case' under Rule 26(b)(1) must—per the terms of the Rule—be based on the court's determination of the needs of the particular case in which the discovery is ordered.  That limitation does not prevent the MDL court from creating efficiencies in the MDL generally; to the contrary, presumably the very reason the cases were transferred to the MDL court in the first place is that the needs of some cases are the same as those of many others."  *Id*. at 846.

*Second*, Walgreens is incorrect that Plaintiffs' challenges are "too late".  DR-23 found, on numerous grounds, that Plaintiffs have shown diligence as well as good cause for *in camera* review of sample Walgreens privilege claims.  In fact, separate from recognizing the repeated efforts by Plaintiffs, DR-23 also listed *several* additional bases for its finding of both diligence and good cause.[4] As outlined further below, Plaintiffs have been diligent in steadily and consistently challenging Defendants' privilege claims, including those asserted by Walgreens. This process has resulted in ongoing privilege Discovery Rulings being issued throughout 2019 and into 2020 – necessitating continued privilege downgrading and follow-up by the parties subsequent to CT1A.

*Third*, DR-23 allows for continued *in camera* review of sample Track One privilege claims to ensure compliance with bellwether privilege rulings made from February 2019 through April 2020.  DR-23 also properly found that through this process of ensuring compliance with bellwether privilege rulings, "plaintiffs do not seek to re-open discovery," and that "the relevant temporal benchmark against which to measure the timeliness of challenges to privilege designations is not the close of discovery, but rather the ongoing issuance of [bellwether privilege] rulings."[5]  There is no time limit on the Court ensuring compliance with its privilege orders.[6]

---

[4] Doc. # 3461 at 6, fn.8 ("Although the conclusion on waiver is explicitly couched primarily in terms of 'diligence,' rather than 'good cause,' the principal reasoning is also grounded in good cause. Specifically, good cause for any putative delay by Plaintiffs inheres in: (1) the context of the parties' ongoing duty in the MDL to comply with serially-released Discovery Orders; (2) the need to test and check parties' compliance with those Orders (often with the Special Master's help); (3) the parties' time-consuming process of creating for the undersigned's periodic, 1000-plus-page Discovery Agendas to seek resolution of ongoing disputes (along with many associated teleconferences); (4) the overwhelming volume and complexity of discovery issues absorbing everyone's time and attention; and (5) the often drawn out meet-and-confer process required of the parties. Moreover, the Special Master's own prioritization of *other* discovery disputes has played into the timing of the raising and resolution of the parties' privilege challenges. These considerations amount to good cause.").

[5] *Id*. at 4.

[6] The Court itself recognized the same in a recent order addressing failure to fully downgrade Track One privilege claims.  *See* 7/20/2020 Order (Doc. # 3385) ("No later than August 21, 2020, ABDC shall re-examine the documents it continues to withhold as privileged and determine whether it should remove or reduce its privilege claim for any documents.").

*Finally*, Walgreens's own actions belie its timeliness argument: Walgreens itself challenged specific Track One privilege claims of Plaintiff Cuyahoga County for the first time in 2020, far after the purported deadline on which Walgreens's objection relies. *See* September 18, 2020, Discovery Ruling No. 14, Part 14 (Doc. 3477) (regarding *in camera* review of Walgreens's selection of 33 sample Cuyahoga County Track one privilege claims). Plaintiffs' challenges to 30 sample Walgreens's privilege claims should be allowed on this basis alone.

## Background

### Privilege Challenges in MDL Case Tracks

With hundreds of thousands of privilege claims asserted by more than twenty parties and third-parties in Track One, the discovery Special Master implemented an efficient approach to addressing these claims, understanding that the approach would not fully resolve by the end of Track One discovery.[7] Specifically, Special Master Cohen would issue bellwether privilege rulings based on exemplar documents, and then *all* parties were required to follow and implement these rulings.[8] Thus, when bellwether rulings on privilege claims are made relative to any party, the *other* parties are also obligated to withdraw any of their own similar, representative, or emblematic privilege claims and produce the underlying documents.[9] Compliance with this requirement has been critical. It helps prevent unjust withholding of documents, creates

---

[7] As the Special Master has recognized on multiple occasions, addressing all the hundreds of thousands of CT1 privilege claims asserted by dozens of Defendants and third parties was not possible, particularly within a single case track. *See e.g.*, 5/30/2019 Discovery Teleconference transcript at p. 14 ("I don't see any other way to do this. I don't have time. No one has time to go through it document by document.")

[8] *See e.g.*, docket nos. 1321, 1353, 1359, 1380, 1387, 1395, 1498, 1593, 1610, 1666, 1678, 2968, 2979, 3071, 3245, 3249 & 3477.

[9] *See e.g.*, 10/29/2019 Order at 1 (Doc. # 2882) ("These rulings made include Discovery Ruling No. 14, Parts 1 through 9. See Doc. Nos. 1321, 1353, 1359, 1380, 1387, 1395, 1498, 1593, 1610, & 1666. These rulings and related principles/standards outlined therein shall be taken into consideration when deciding whether to claim privilege over a document or communication."); Doc. # 3461 at 4 ("The Special Master has ordered all parties to treat those discovery rulings as instructive in setting the bounds of attorney-client privilege in this MDL, and to re-review their privilege designations in light of those rulings.").

efficiencies, compels the party claiming privilege (with visibility of the material) to make the necessary corrections, and helps to unburden the Court.  Moreover, no party (including Walgreens) has ever objected to this bellwether privilege procedure.

Plaintiffs have been consistently and diligently addressing Defendants' privilege claims through the entirety of this litigation.  In fact, from late 2018 through the end of Track One A and into 2020, there was not a time when Plaintiffs' privilege challenges were not pending as part of the Special Master's regular Discovery Agendas.  However, the volume and complexity of discovery issues (including privilege challenges) in this litigation necessarily resulted in bellwether privilege rulings being issued over time and across various Defendant and third-party privilege claims. Consequently, nearly all privilege Discovery Rulings were finalized after the CT1A discovery period, continuing after resolution of CT1A and into 2020 as CT1B, CT2, CT3, and other MDL case tracks continued against these same Defendants (including Walgreens).[10]

| Privilege Discovery Ruling ("DR14, Part#") | Date Finalized |
|---|---|
| DR 14, Part 1 (Amended) (Doc. # 1380) | March 11, 2019 (objection overruled – Doc. # 1428) |
| DR 14, Part 2 (Doc. # 1353) | February 15, 2019 (objection overruled – Doc. # 1376) |
| DR 14, Part 3 (Doc. # 1359) | March 7, 2019 (objection overruled – Doc. # 1422) |
| DR 14, Part 4 (Doc. # 1387) | March 1, 2019 (objection not filed) |
| DR 14, Part 5 (Doc. # 1498) | April 16, 2019 (objection overruled – Doc. # 1553) |
| DR 14, Part 6 (Doc. # 1593) | May 7, 2019 (objection not filed) |
| DR 14, Part 7 (Doc. # 1610) | May 3, 2019 |

---

[10] Additional privilege Discovery Rulings were issued in 2020.  *See e.g.,* Revised DR 14, Part 10 (issued 1/8/2020) (Doc. # 3071), DR 14, Part 12 (issued 3/30/2020) (Doc. # 3245).  Discovery Rulings became finalized after objections were overruled or when an objection was not taken.

| | (objection not applicable) |
|---|---|
| DR 14, Part 8 (Doc. # 1666) | June 14, 2019<br>(objections not filed) |
| DR 14, Part 9 (Doc. # 1678) | June 19, 2019<br>(objection not filed) |
| DR 14, Part 10 (Doc. # 2968) | December 7, 2019<br>(reconsideration granted – *see* fn.10) |
| DR 14, Part 11 (Doc. # 2979) | December 16, 2019<br>(objection not filed) |

The repeated directives from the Court obligated Defendants to apply these privilege Discovery Rulings to their respective privilege claims. Many Defendants have largely adhered to these rulings and have continued to downgrade their privilege claims in the wake of same.[11] Moreover, because the privilege rulings were issued over time, Defendants' resulting privilege downgrades of CT1A privilege claims have also occurred over time. In fact, not only have tens of thousands of Defendants' CT1A privilege downgrades been made after the CT1A discovery deadline, but tens of thousands have been made by various Defendants in 2020 – well after the resolution of CT1A.[12]

**Plaintiffs' Challenges to Walgreens's Privilege Assertions**

Unlike the majority of the other Defendants in active MDL case tracks, Walgreens has not reasonably applied the Court's privilege rulings to other privilege claims. Thus, after: a) repeated privilege challenges and follow up by Plaintiffs in January, February and March of 2019, and b) several subsequent privilege rulings in April, May and June (which further supported and

---

[11] *See e.g.,* Doc. #'s 3091, 3381 & 3384.

[12] *Id.* While follow-up consent judgments have been entered for a few of the privilege downgrades, the vast majority of downgrades (tens of thousands) have occurred informally. Post CT1A downgrades (of CT1A privilege claims) have been made repeatedly by Defendants (e.g., ABDC, Cardinal, CVS, Janssen, and McKesson, Purdue, Walmart, etc.). *See* Ex. A (compilation of example production letters for privilege downgrades made by Defendants from April 2019 through September 2020).

confirmed Plaintiffs' positions and concerns regarding Walgreens's privilege claims), Plaintiffs again challenged sample Walgreens's privilege claims on September 25, 2019.[13]

The first determination involving Plaintiffs' September 25, 2019 motion challenging Walgreens privilege claims came in March of 2020, when Special Master Cohen ordered Walgreens to produce for *in camera* review the documents underlying the challenged privilege claims.[14] At Walgreens's request, Plaintiffs agreed to temporarily forego this *in camera* review, if Walgreens would work with Plaintiffs "in a collaborative manner … as Plaintiffs have already done with nearly all other Defendants" regarding Plaintiffs' September 2019 motion as well as Plaintiffs' outstanding March 2019 and recently served February 2020 privilege challenges.[15] While the parties had yet to address privilege claims at issue in the September 2019 motion, Walgreens did provide written feedback to some of the privilege challenges from the other two lists, and Plaintiffs were able to reach an agreement with Walgreens on some of those documents.[16] Based on this partial progress, in May 2020, Plaintiffs agreed to remove Walgreens related privilege challenges from Special Master Cohen's discovery agenda *at that time*, subject to the understanding that meet and confers would continue, including "weekly calls" and Walgreens's agreement to "again review" its privilege claims "based on previous orders" from the Court.[17]

Unfortunately, Walgreens did not provide additional information, did not provide further downgrades of its existing privilege claims based on the Court's rulings, and did not engage in substantive discussions about Plaintiffs' remaining and additional privilege challenges, including

---

[13] Dispositive motions (including determinations of how and what briefs, exhibits, depositions and expert reports, could be public filed) were being addressed between June and September, 2019.
[14] Doc. # 3461 at 2.
[15] *See* Ex. B (March 25, 2020 Email from Pearl Robertson to Special Master Cohen).
[16] *See* Ex. C (April 8, 2020 Email from Desh to Robertson, attaching additional information regarding the March 2019 and February 2020 privilege challenges, but not the September 2019 challenges).
[17] *See* Ex. D (May 30, 2020 Email from P. Mougey to Special Master Cohen).

Plaintiffs' June 2020 challenges Walgreens's privilege claims.[18]  Rather, Walgreens demanded that further discussions include an agreement not to escalate future privilege disputes to the Special Master.  Plaintiffs would not agree to such a demand, and in July 2020 submitted to the Special Master for *in camera* review the outstanding June 2020 privilege challenges.[19]  Thus, though the parties were able to narrow some matters in May 2020, there was certainly no agreement to resolve *all* privilege disputes, nor was there an agreement to resolve all exemplar privilege challenges.  As stated by the Special Master, who directly participated in these matters, "[i]ndeed, Walgreens concedes '[t]he parties did not fully come to resolution on future discrete challenges to Track 1-A logs (as relevant here, those submitted in June 2020).'"[20]

Walgreens claims that it was near perfect in its initial assertion of its privilege claims; that the subsequent privilege orders and rulings have no significant impact on its privilege claims; and that it is justified in maintaining approximately 99% of its original privilege claims.  Plaintiffs' narrow set of specific privilege challenges seek to test Walgreens's assertions – particularly since Walgreens's limited downgrades to date show that it was withholding documents which are clearly not privileged.[21]

***Walgreens's Continuing Challenges to the CT1 Plaintiffs' Privilege Assertions***

Walgreens's argument that all challenges regarding privilege logs served during the CT1A discovery period are "late" and "waived" is contradicted by Walgreens's own ongoing privilege challenges to Plaintiffs' CT1A privilege logs.  This contradiction is magnified by "the parties'

---

[18] *See* Ex. E (Plaintiffs' June 2020 challenges to Walgreens's privilege claims).
[19] *See* Ex. F (July 22, 2020 motion regarding the June 2020 privilege challenges).
[20] *Id.* at 3, fn.3 (citing 8/13/2020 email from Desh to Robertson).  Special Master Cohen's finding is particularly noteworthy because he directly oversaw and participated in several of the applicable meet and confers (and was included on much of the related correspondence) between Plaintiffs and Walgreens.
[21] *See* Ex. F at pp. 8-31 (attachments to Plaintiffs' July 22, 2020 submission to Special Master Cohen - showing example Walgreens's downgrades made in June 2020).

respective percentages of initial privilege claims (plaintiffs' 0.7% versus Walgreens's 10%)",[22] the fact that Walgreens only first challenged specific Cuyahoga County CT1A privilege clams after the conclusion of CT1A, and the fact that Walgreens *has continued* to assert challenges to Cuyahoga County's privilege claims.[23]  Walgreens inconsistent actions belie its claim that parties can no longer address privilege issues which remain from CT1A.

## Argument

Walgreens seeks to hide its own failures to follow the Court's directives and orders regarding its privilege claims behind a manufactured "waiver" argument, falsely premised on "timeliness." Walgreens's position misrepresents both the underlying facts and the nature of the litigation - one of the most complex cases in history.  Worse, Walgreens misconstrues and seeks to expand the Sixth Circuit's narrow mandamus ruling.

Walgreens's position ignores the above-stated realities of this highly complex litigation, one in which a single discovery Special Master was charged with addressing hundreds of thousands of privilege claims – in addition to voluminous and complex additional discovery issues[24] – among the four Plaintiffs and more than twenty Defendants in CT1A, such that not all issues were fully resolved in advance of the CT1A trial.  As Walgreens knows, the CT1 Plaintiffs and the CT1 Defendants are still in ongoing litigation with each other in CT1B, where many of these same discovery issues that first arose in the CT1A case track issues - including privilege issues - continue to be litigated by both sides in the context of that case track.  Further, the Defendants' CT1 productions are also part of each successive MDL track, and – pursuant to the logic of Walgreens's own argument that each case track should be treated as its own case - each

---

[22] Doc. # 3461, at p.8.

[23] Doc. # 3477.

[24] Doc. # 3461, at p.6 n.4.

MDL Plaintiff has a renewed right to challenge improper privilege claims in its own case. Accordingly, Walgreens's claim that all privilege-related issues that arose – or potentially could have arisen – during CT1A had to be resolved by the close of CT1A discovery or be waived forever in each and every case track is both illogical and incorrect. Such a conclusion would only serve to endorse overt and longstanding violations of the Court's privilege rulings and instructions, as it is evident that Walgreens has broadly overclaimed privilege and has not fully applied the Court's privilege rulings to its own privilege claims.  It is in this specific context that the Special Master, as the one closest to the history and adjudication of discovery issues, specifically found that Plaintiffs acted with reasonable diligence and that any putative delay was justified by good cause.[25]

As such, Walgreens's reliance on the Sixth Circuit's mandamus order to circumvent its discovery obligations is misplaced. The Sixth Circuit's mandamus order speaks only to the timeliness and Rule 16 "good cause" in the context of a Party's right to amend pleadings and parties to an action already under a Case Management Plan and Trial Order.[26]  Even so, "good cause" exists here, as set out above, as demonstrated by the history of the discovery disputes, Walgreens's own actions – including its ongoing privilege challenges to the CT1 Plaintiffs - and the Plaintiffs' diligence in pursuing its challenges against Walgreens and others.

As for the privilege-specific cases cited by Walgreens, none involved the complex issues, volume of discovery, volume of privilege claims, number of parties, and tight deadlines faced in this litigation. Moreover, none of those cases involved the proponent of a privilege failing to apply

---

[25] Doc. # 3461, at 6 fn.4.

[26] *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843-44 (6th Cir. 2020).  *See also*, *Burghardt v. Ryan*, No. 5:19-cv-325, 2020 WL 4350049 (N.D. Ohio Jul. 29, 2020); *Oatly AB v. D's Naturals LLC*, 1:17-cv-840, 2020 WL 2912105 (S.D. Ohio Jun. 3, 2020) (relying on *In re nat'l Prescription Opiate Litig.* in denying various parties' motions to amend). *Cf. Seifu v. Postmaster General, U.S. Postal Service*, 1:19-cv-572, 2020 WL 2085197 (S.D. Ohio Apr. 30, 2020) (showing the scope of the Sixth Circuit's mandamus order narrowly applied to amendment of pleadings.).

bellwether privilege rulings. Further, the cases cited by Walgreens differ in other significant respects from the matter herein.[27] For example, in the out-of-circuit district court decision in *Barron Collier*, the Court ruled that the challenging party waited too long to challenge the Government's assertion of privilege over *clawed-back materials* and otherwise could not reopen discovery to take a 30(b)(6) deposition regarding documents related to the deliberative process privilege. *United States v. Barron Collier Company,* 2015 WL 13811188 at *2 & 4 (D. Ariz. Dec. 23, 2015). The operation of FRE 502 is not applicable here, and the PEC does not seek a 30(b)(6) deposition relative to these privilege challenges.

The Magistrate Judge's discovery ruling in *In re Seroquel Products Liability Litigation* is likewise not only inapplicable to, but incompatible with the facts herein and DR-23.[28] *Seroquel* specifically found that the defendant's privilege downgrades were "consistent with the Court's rulings", thus providing no basis or need for de-designation of additional privilege claims.[29] Also, the Defendant in Seroquel did not itself simultaneously challenge Plaintiffs' privilege claims after a purported deadline. Further, the Magistrate in Seroquel determined that Plaintiffs' motion was pretextual – specifically stating it was "less related to their concern over the actual entries on the privilege log", but rather "related more to the timing of the Court's suggestion of remand" made

---

[27] In *Cardiac Pacemakers*, the court provided several substantive reasons why the privilege challenges had no merit, and also found that waiting until after the discovery deadline - <u>four years from service of the privilege log</u> – was too late. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 2001 WL 699889 (S.D. Ind. Apr. 26, 2001). Specific to timeliness, the court stated that "[t]he documents are identified in a detailed privilege log that defendants have had since 1997 [4 years prior to bringing the motion] . . . Defendants filed their motion challenging those claims of privilege long after discovery closed and just ten weeks before the long-scheduled trial, which is now just six weeks off." *Id*. at *1. In *Acosta*, the court found <u>no substantive support</u> for the privilege challenges and that "even if those arguments had merit, they have been raised too late." *Acosta v. Min & Kim, Inc.*, 2017 WL 11317619, at *1 (E.D. Mich. June 21, 2017). Further, the lateness of the challenges in *Acosta* centered upon a strict discovery deadline as well as the challenging side's misrepresentation about when the issue first arose (one day instead of eight months prior to the discovery deadline). *Id*.
[28] *See* No. 6:06-md-1769, 2009 WL 3739347 (M.D. Fla. Nov. 6, 2009).
[29] *Id*. at *4 ("AstraZeneca's 'Summary of Principles' and application of the Summary is consistent with the Court's rulings").

two days prior to Plaintiffs' motion.[30] Conversely, in the instant matter, "Plaintiffs have submitted a plausible basis for their belief that Walgreens has not adequately applied prior discovery rulings to its own privilege claims",[31] Walgreens itself challenged Cuyahoga County's Track One privilege claims after the close of CT1A,[32] and no ulterior motive exists (or has even been claimed) for Plaintiffs' requested relief.

A recent case within the Sixth Circuit, *Durand v. Hanover Insurance* Group, 294 F. Supp. 3d 659 (W.D. Ky, Feb. 16, 2018), is more analogous to the matter at hand. In *Durand*, the Court carefully weighed prejudice to the parties and directed *in camera* review of certain logged privilege claims even though fact discovery had closed. *Id*. at 687-693. Overall, the *Durand* Court considered the relevance of the each of the challenged entries as well as whether similar documents were previously ruled not privileged. *Id*. Like the defendant in *Durand*, Walgreens has failed to properly downgrade similar or analogous privilege claims, despite Rule 26 and directives from this Court.[33]

Walgreens's waiver argument is nothing but an attempt to distract from its failure to apply the Court's privilege rulings. Neither these Plaintiffs, nor other plaintiffs in current or future cases, should be denied their right to raise challenges against privilege claims lodged by Defendants – particularly with respect to privilege claims which should have been "self-downgraded" consistent with bellwether privilege-related discovery rulings. The result Walgreens seeks would unjustly reverse the burden of applying the Court's privilege rulings, would be inconsistent with the

---

[30] *Id*. at *6.
[31] Doc. # 3461, at 5.
[32] *See* 9/18/2020 Discovery Ruling 14, Part 14 Regarding Cuyahoga County's Privilege Claims (Doc. 3477).
[33] Ex. F (Plaintiffs' July 22, 2020 letter brief to Special Master Cohen) at pp. 1-3; Ex. G (Plaintiffs' September 25, 2019 submission to Special Master Cohen) at pp. 2-3.

purpose and intent of the MDL court's power,[34] and would reduce or eliminate the efficiencies created by the prior privilege Discovery Rulings rendered by this Court.

It is unclear what Walgreens hopes to gain from its objection to Modified Discovery Ruling 23, apart from delay, because there can be no doubt that—consistent with the Sixth Circuit mandamus ruling on which Walgreens relies—any other MDL plaintiff may seek discovery of the purportedly privileged documents and there can be no valid argument that such plaintiffs have waived their rights to challenge those privilege designations.

As Walgreens repeatedly reminds the Court, the Court of Appeals, in its April mandamus ruling, emphasized that "every case in an MDL . . . retains its individual character." *In re Nat'l Prescription Opiate Litig*., 956 F.3d 838, 841 (6th Cir. 2020); *id.* at 845 ("the cases within an MDL 'retain their separate identities'") (quoting *Gelboim v. Bank of America Corp.,* 574 U.S. 405, 413 (2015)). Therefore, "a party's rights in one case [cannot] be impinged to create efficiencies in the MDL generally." *Id.* at 845.  Yet no MDL case apart from CT1 has yet passed a court-imposed deadline for the completion of fact discovery.[35] Thus, all other MDL plaintiffs, including plaintiffs in CT3 which is before this Court on a parallel track, retain their rights to seek all relevant discovery from Walgreens. Indeed, it was precisely for that reason that the Special Master noted in his CT3 order on the geographic scope of discovery that "a party may seek discovery in Track Three of information not produced in Track One, including information that was requested in Track One but not produced." Doc. #3371 at 10, n. 16. It makes no sense whatsoever to waste the

---

[34] The Sixth Circuit acknowledged that the purpose of an MDL court is to create efficiencies, *In re Nat'l Prescription Opiate Litig*., 956 F.3d 838, 846 (6th Cir. 2020), which is exactly what Plaintiffs have asked this Court to do.

[35] With respect to CT1B, Special Master Cohen specifically ordered that discovery disputes that "relate back" to Track One-A would be allowed to continue in CT1B. *See* Order Regarding Pretrial Discovery in Track One-B, Doc. # 3305 at 7. Plaintiffs' privilege challenges in the wake of Walgreens's non-compliance with CT1 privilege rulings fall squarely within the ambit of such expressly permitted CT1B discovery.

Court's time re-evaluating Plaintiffs' "reasonable diligence" and "good cause" for challenging Walgreen's assertions of privilege after the close of discovery in CT1A, when those very same privilege claims unquestionably remain subject to challenge in CT3 and all subsequent MDL cases.

<u>**Conclusion**</u>

For the foregoing reasons, Walgreens's Objection to Modified Discovery Ruling No. 23 should be overruled.

Dated: September 23, 2020                    Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth St., 3rd Floor
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

/s/Peter H. Weinberger
Peter H. Weinberger
SPANGENBERG SHIBLEY &
LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of September, 2020, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.


/s/Peter H. Weinberger
Peter H. Weinberger

14