<pre>
 1                     UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
 2                          EASTERN DIVISION

 3      ------------------------------------X
        IN RE: NATIONAL PRESCRIPTION        :  Case No. 1:17-md-2804
 4      OPIATE LITIGATION                   :  Cleveland, Ohio
                                            :
 5                                          :
        THIS DOCUMENT RELATES TO:           :  Thursday,
 6                                          :  September 24, 2020
        Track One-B Cases/Track Three       :  2:55 p.m.
 7      Cases                               :
                                            :
 8      ------------------------------------X

 9

10                    TRANSCRIPT OF TELEPHONIC
                 JOINT STATUS CONFERENCE PROCEEDINGS
11            BEFORE THE HONORABLE DAN AARON POLSTER
                   UNITED STATES DISTRICT JUDGE
12                          - AND -
              BEFORE THE HONORABLE DAVID A. RUIZ
13               UNITED STATES MAGISTRATE JUDGE

14
        SPECIAL MASTER:          DAVID R. COHEN
15


16
        Court Reporter:          Donnalee Cotone, RMR, CRR, CRC
17                               United States District Court
                                 801 West Superior Avenue
18                               Court Reporters 7-189
                                 Cleveland, Ohio 44113
19                               donnalee_cotone@ohnd.uscourts.gov

20

21

22

23

24      Proceedings recorded by mechanical stenography, transcript

25      produced by computer-aided transcription.
</pre>

```
 1      APPEARANCES (ALL PARTICIPANTS APPEARING TELEPHONICALLY):

 2

 3          On behalf of Plaintiffs:

 4
                    PETER H. WEINBERGER, ESQ.
 5                  Spangenberg, Shibley & Liber
                    1001 Lakeside Avenue, Suite 1700
 6                  1900 East Ninth Street
                    Cleveland, Ohio 44114
 7                  216-696-3232
                    pweinberger@spanglaw.com
 8

 9                  SALVATORE C. BADALA, ESQ.
                    HUNTER J. SHKOLNIK, ESQ.
10                  400 Broadhollow Road, Suite 305
                    Melville, New York 11747
11                  212-397-1000
                    sbadala@napolilaw.com
12                  hunter@napolilaw.com

13
                    DONALD MIGLIORI, ESQ.
14                  LINDA SINGER, ESQ.
                    JOSEPH F. RICE, ESQ.
15                  Motley Rice LLC
                    28 Bridgeside Boulevard
16                  Mount Pleasant, South Carolina 29465
                    843-216-9140
17                  dmigliori@motleyrice.com
                    lsinger@motleyrice.com
18                  jrice@motleyrice.com

19
                    PAUL J. HANLY, JR., ESQ.
20                  Simmons Hanly Conroy LLC
                    112 Madison Avenue
21                  New York, New York 10016
                    212-784-6400
22                  phanly@simmonsfirm.com

23

24

25
```

1    APPEARANCES (*ALL PARTICIPANTS APPEARING TELEPHONICALLY*):

2

3        On behalf of Plaintiffs:

4            **STEVEN SKIKOS, ESQ.**
             Skikos, Crawford, Skikos & Joseph, LLP
5            One Sansome Street, Suite 2830
             San Francisco, California  94104,
6            (415) 546-7300
             sskikos@skikos.com
7

8            **TROY RAFFERTY, ESQ.**
             Levin, Papantonio, Thomas, Mitchell, Rafferty &
9            Proctor, P.A.
             316 South Baylen Street, Suite 600
10           Pensacola, Florida 32502
             850-435-7500
11           trafferty@levinlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     APPEARANCES (*ALL PARTICIPANTS APPEARING TELEPHONICALLY*):

2

3          On behalf of Defendants Walgreen Co. and Walgreen
           Eastern Co.:
4
                 **KASPAR J. STOFFELMAYR, ESQ.**
5                Bartlit Beck LLP
                 54 West Hubbard Street, Suite 300
6                Chicago, Illinois  60654
                 312-494-4400
7                kaspar.stoffelmayr@bartlitbeck.com

8
           On behalf of Defendants CVS Pharmacy, Inc. and Ohio
9          CVS, L.L.C. ("CVS"):

10               **ERIC R. DELINSKY, ESQ.**
                 **SASHA MILLER, ESQ.**
11               **GRAEME W. BUSH, ESQ.**
                 Zuckerman Spaeder
12               1800 M Street, NW
                 Washington, DC 20036
13               202-778-1831
                 edelinsky@zuckerman.com
14               smiller@ zuckerman.com
                 gbush@zuckerman.com

15

16         On behalf of Defendants HBC Service Company, an
           unincorporated operating division of Giant Eagle,
17         Inc. ("HBC/Giant Eagle"):

18               **ROBERT M. BARNES, ESQ.**
                 **JOSH A. KOBRIN, ESQ.**
19               **SCOTT D. LIVINGSTON, ESQ.**
                 Marcus & Shapira
20               35th Floor
                 One Oxford Centre
21               301 Grant Street
                 Pittsburgh, PA 15219
22               412-471-3490
                 rbarnes@marcus-shapira.com
23               kobrin@marcus-shapira.com
                 livingston@marcus-shapira.com

24

25

```
1     APPEARANCES (ALL PARTICIPANTS APPEARING TELEPHONICALLY):

2

3         On behalf of Defendant Discount Drug Mart, Inc.:

4             TIMOTHY D. JOHNSON, ESQ.
              Cavitch Familo & Durkin
5             20th Floor
              1300 East Ninth Street
6             Cleveland, OH 44114
              216-621-7860
7             tjohnson@cavitch.com

8
          On behalf of Defendants Rite Aid of Maryland, Inc.
9         d/b/a Mid-Atlantic Customer Support Center, Rite Aid
          of Ohio,Inc. and Rite Aid Hdqtrs. Corp. ("Rite Aid"):
10

11            KELLY A. MOORE ESQ.
              Morgan, Lewis & Bockius
12            101 Park Avenue
              New York, NY 10178
13            212-309-6612
              kelly.moore@morganlewis.com
14
                - and -
15
              JOHN P. LAVELLE, JR., ESQ.
16            Morgan, Lewis & Bockius LLP
              1701 Market St.
17            Philadelphia, PA 19103-2921
              215-963-5000
18            john.lavelle@morganlewis.com

19              - and -

20            GREGORY T. FOUTS, ESQ.
              Morgan, Lewis & Bockius LLP
21            77 West Wacker Dr.
              Chicago, IL 60601-5094
22            312-324- 1776
              gregory.fouts@morganlewis.com
23

24

25
```

```
 1    APPEARANCES (ALL PARTICIPANTS APPEARING TELEPHONICALLY):

 2

 3         On behalf of Defendant Walmart, Inc.:

 4              TINA M. TABACCHI, ESQ.
                TARA A. FUMERTON, ESQ.
 5              JOHN M. MAJORAS, ESQ.
                Jones Day
 6              77 West Wacker
                Suite 3500
 7              Chicago, Illinois 60601
                312-782-3939
 8              ttabacchi@jonesday.com
                tfumerton@jonesday.com
 9              jmajoras@jonesday.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          AFTERNOON SESSION, THURSDAY, SEPTEMBER 24, 2020

2                    (Proceedings commenced at 2:55 p.m.)

3                              - - -

4                    THE CLERK:  Okay.  Who do I have for

14:56:26  5   plaintiff?

6          I have no one for plaintiff?

7                    MR. BADALA:  Hi.  This is Salvatore Badala for

8    Cuyahoga County.

9                    THE CLERK:  Who do I have for Walgreens?

14:56:49 10                   MR. STOFFELMAYR:  Hi.  Kaspar Stoffelmayr.

11   Just joined.

12                   MS. MILLER:  Sasha Miller for CVS.

13                   MR. BUSH:  Eric Delinsky and Sasha Miller will

14   be, too, I'm sure.

15                   MR. DELINSKY:  Yep.  This is Eric.  I'm on as

16   well.

17                   THE CLERK:  Okay.  So I heard Eric.

18          And was that Graeme Bush?

19                   MR. BUSH:  Right.  Thank you.

14:57:11 20                   MS. MILLER:  Sasha Miller, too.

21                   THE CLERK:  Very good.

22          Okay.  How about for Giant Eagle, who do I have there?

23                   MR. LIVINGSTON:  Scott --

24                   MR. BARNES:  Robert Barnes and

14:57:25 25   Scott Livingston.

1          THE CLERK:  I heard Robert Barnes and

2     Scott Livingston.

3          How about for Discount Drug Mart?

4                    (No response.)

5          THE CLERK:  How about Rite Aid?

6          MS. MOORE:  Kelly Moore for Rite Aid.

7          MR. LAVELLE:  John Lavelle for Rite Aid.

8          MR. FOUTS:  Greg Fouts for Rite Aid.

9          THE CLERK:  Very good.

10         Who do I have for Walmart?

11         MS. TABACCHI:  Tina Tabacchi.  Tara Fumerton

12    and John Majoras are also on.

13         THE CLERK:  Did I hear John Majoras and Tara

14    Fumerton?

15         MR. MAJORAS:  Yes.

16         MS. FUMERTON:  Hi.  Yes.

17         Sorry, John.

18         MR. MIGLIORI:  Don Migliori is on for Summit

19    County.

20         MR. SHKOLNIK:  And Hunter Shkolnik for

21    Cuyahoga.  Good afternoon.

22         THE CLERK:  Hi.

23         Okay.  So for Cuyahoga I have Hunter and Salvatore

24    Badala.

25         Do I have Frank Gallucci?

1          MS. SINGER:  And Linda Singer is on for Summit

2    as well.  Good afternoon.

3          THE CLERK:  Okay.  For Summit I hear

4    Linda Singer and Don Migliori.

5       Do I have Pete Weinberger on here?

6          MR. WEINBERGER:  Yes, Helen.  I'm on.  Thank

7    you.

8          THE CLERK:  Very good.

9       How about Steve Skikos?

10      Oh, there's a bunch of you.

11          SPECIAL MASTER COHEN:  Hi, Helen.  It's David.

12          THE CLERK:  All right.  Perfect.

13      David, is Judge Ruiz going to be on this line?

14          SPECIAL MASTER COHEN:  I don't --

15          MAGISTRATE JUDGE RUIZ:  Yes, Helen, I'm on.

16          THE CLERK:  Okay.  Very good.  Okay.

17          MR. RAFFERTY:  Troy Rafferty is on.

18          MR. KOBRIN:  Josh Kobrin for Giant Eagle.

19          MR. RICE:  Joe Rice is on.

20          THE CLERK:  Is Tim Johnson on yet for Drug

21    Mart?

22          MR. JOHNSON:  I am.

23          THE CLERK:  Very good.

24      I'm just going to look for a couple of people and then

25    I think we're ready to go, because I know we have

1    representatives for all the defendants.

2        Is Troy Rafferty on?

3            MR. RAFFERTY:  Yes, I'm on.

4            THE CLERK?  How about Mark Lanier?

5            MR. WEINBERGER:  Mark is tied up in another

6    hearing.  He may try to join if the hearing -- if the other

7    hearing ends.

8            THE CLERK:  Okay.  Paul Hanley or Paul

9    Farrell?

10            MR. HANLEY:  Hanley is on.

11            THE CLERK:  Okay.  That's good.

12        That's pretty much all the plaintiffs on this list.

13        So I'm going to talk to Judge Polster.  I don't think

14    I'm going to be doing a roll call.  I'm just going to let

15:00:33 15    him know who is here, and we'll be with you shortly.

16        Thank you.

17            THE COURT:  All right.  Good afternoon.  I

18    hope everyone is staying safe.

19        All right.  I received the status report, so, as I

15:02:03 20    understand it, while the plaintiff waived jury, the

21    defendant will not.

22        Oh, I just want to make sure we have a court reporter;

23    is that correct?

24            THE REPORTER:  Yes, Your Honor.  I'm on.

15:02:21 25        I'm having a little hard time hearing you compared to

1    the last hearing.

2                    THE COURT:  Well, I'm now in my office.  All

3    right?

4        This is obviously a status call in the Opioid MDL

15:02:28  5    1:17-md-2804 with the lawyers for the plaintiffs and the

6    pharmacies who -- so we're discussing the trial that's now

7    scheduled in November and the following.

8        And I think there's someone on the phone who is not

9    muted, so everyone please mute unless you're speaking.

15:02:57  10    While the plaintiffs will waive jury; the defendants

11    will not.  So the November trial will be in front of the

12    jury.

13        The parties believe that in the event the plaintiffs

14    prevail, the abatement phase, which will be to the Court,

15:03:16  15    will take approximately two weeks, and the parties are

16    working on determining how to supplement it.

17        Our Court began jury trials this week.  So Judge Gwin

18    had a short trial.  He was able to do it successfully.  A

19    couple of other judges will be having trials later this

15:03:48  20    month and in October.

21        Our Court is meeting on Monday, October the 5th, to

22    determine what we're going to do in November and December.

23    We will make a collective decision, and then I anticipate

24    that all judges will abide by it.  I certainly will, and

15:04:08  25    that will dictate whether or not we'll be able to keep with

1    the schedule for November 9th.  But at this point that trial

2    is on.

3         The last time I checked, roughly -- we had sent -- the

4    jury department had sent inquires to about a thousand

15:04:30  5    people, prospective jurors, to ask whether they were willing

6    and able to serve for a four- to five-week trial in

7    November.

8         The last time I checked, roughly 600 of the 1,000 had

9    responded, and about 150 had said they were able to do so.

15:04:52  10         So if we go forward, I'm confident we'll have -- we'll

11    have jurors -- to pick jurors in the venire, and we'll be

12    able to find 12 jurors who can be fair and impartial.

13         Toward that end, I will be sending to the clerk's

14    office later this week the case specific jury questionnaire

15:05:22  15    the Court fashioned with the parties.  We've added in all

16    the witnesses.

17         I was dismayed to see that that witness list is over

18    200 people.  Obviously, everyone knows we can't have even

19    have a small fraction of 200 people in a four-week trial,

15:05:39  20    but -- I mean, so be it.  They'll go through those names.

21         If the trial is going forward, that questionnaire will

22    be sent out the afternoon of October 5th and October 6th.

23    We can stay on schedule.

24         And then we have another status conference the

15:06:08  25    afternoon of October 5th, so I can report to everyone

1      whether the trial is going forward.

2             The status report reflects, of course, that mediation

3      with Judge Gandhi is ongoing.

4             Is anything of significance happening?

15:06:32  5             Are you making any progress is all I want to know.

6                   MS. TABACCHI:  Your Honor, this is

7      Tina Tabacchi from Jones Day.

8             Judge Gandhi has asked all the parties to the

9      mediation to sign a confidentiality agreement, which really

15:06:47 10      precludes any characterization of the mediation on the

11      record.

12                   THE COURT:  Well, I don't want to know any

13      details.  I want to know, are you having -- are you having

14      serious discussions?  All right.  Because there need to be

15:07:05 15      serious discussions, and if Judge Gandhi is not able to

16      facilitate them, you need to do something else.

17             I just -- everyone knows what serious discussion is.

18      I mean, if -- at the last -- at the last status conference,

19      the plaintiffs basically said that nothing was happening and

15:07:24 20      they were prepared to just end them.

21             I gather they haven't ended or else that would be in

22      the report.

23                   MS. TABACCHI:  Your Honor, I can report that

24      the pharmacy defendants have had numerous discussions with

15:07:39 25      Judge Gandhi and with representatives of the plaintiffs

1        since our last status hearing.

2                  THE COURT:  All right.

3                  MS. TABACCHI:  The discussions are ongoing.

4                  THE COURT:  All right.  Well, that's fine.

15:07:48  5  That's all I need to know, that they are ongoing and active.

6        All right?  That's fine.

7             All right.  And that's all I needed to know, but it

8        was my obligation to at least learn that.

9             And then there are some matters that I'm still working

15:08:09 10  on.  I issued an order earlier this week on the motion for

11       reconsideration, so that's taken care of.

12            There are a couple of other pending motions that we're

13       dealing with.  I'm expecting replies on the motions *in*

14       *limine*.

15:08:30 15       There's an objection to Special Master Cohen's

16       Discovery Ruling 23 that I'm...

17            So is there anything else that I've overlooked or that

18       anyone wants to bring up?

19                  MR. WEINBERGER:  Your Honor, this is -- this

15:09:00 20  is Pete Weinberger for the plaintiffs.

21            On page 6 of the status report, we've raised a couple

22       of issues, not that they have to be dealt with today, but I

23       wanted to -- the plaintiffs wanted to make sure that the

24       Court knew that those were issues that were on the agenda,

15:09:24 25  and I'm assuming that we can deal with many of these issues

1    with Special Master Cohen.  And to the extent that we need

2    assistance of the Court, we will seek that assistance.

3         The fact that the Court raised the issue of the number

4    of witnesses that are on the appendix to the jury

15:09:53  5    questionnaire leads me to this issue:

6         The plaintiffs have identified approximately 50

7    witnesses, and that as we've indicated to Special Master

8    Cohen, we intend to prune that down, you know, as we -- as

9    we approach trial.

15:10:18 10        With respect to the defendants' witnesses, which

11   number about 200 among the six defendants, there

12   are -- there are a number of witnesses that were not

13   previously disclosed in any discovery, which we will deal

14   with through Special Master Cohen.

15:10:43 15        But one of the categories of witnesses that the

16   defendants have disclosed are approximately 12 physicians in

17   the Northern District of Ohio whose names have not

18   previously appeared in any discovery.  They are -- there's

19   some orthopedic surgeons.  There are some pain management

15:11:14 20   doctors.  There are -- there's an anesthesiologist and a

21   pain management.  There's a family doctor.  Among

22   those -- there's a hematologist, oncologist -- among the --

23   among the physicians who they've named.  And we intend to

24   file a motion to strike those witnesses to prevent them from

15:11:44 25   testifying on the basis that they were never previously

1    disclosed.

2         So I wanted the Court to be --

3              THE COURT:  I mean, obviously, the defendants

4    are going to have to have a very good justification for

15:11:54  5    coming up with new witnesses on the eve of trial.  Maybe

6    they have it, maybe they don't.

7         So the defendants need to understand they're going to

8    have to have a very compelling reason why 12 doctors have

9    just materialized now on the eve of trial.

15:12:12  10        And obviously, the plaintiff -- the defendants are

11    going to have to make those doctors available for deposition

12    if I allow you -- if I allow you to call them, put them on

13    the witness list.  And if they're not willing to be deposed,

14    they're off.  That's the rule.  So I'll wait and see what

15:12:30  15    happens with that.

16        Also not going to spend a lot of my time or Special

17    Master Cohen's time dealing with complaints about

18    authenticity.  All right?  You all work that out.

19        ARCOS data, documents produced (indiscernible), again,

15:12:52  20    you know, if there's a real question about authenticity,

21    fine.  But most of those documents would be.

22        So I have very limited time and I'm not -- I'm going

23    to cut through a lot of objections quickly if the parties

24    don't themselves.

15:13:10  25        But, again, I don't know why -- 200 witnesses, in my

1    opinion, is ridiculous.  You each only have a relatively

2    small number of hours.  There couldn't be anywhere close to

3    200 witnesses, defense witnesses, that will get anywhere

4    near the witness stand, but ...

15:13:34    5          MR. STOFFELMAYR:  Judge, it's Kaspar

6    Stoffelmayr.

7          I don't know if you were looking for a response to any

8    of those comments.  You know, we certainly understand and

9    hear your views.

15:13:44   10          I don't think there's a ripe issue.  I think there

11    will be a very small number of authenticity issues, if any,

12    that are in front of the Court, true authenticity issues.

13    There may be other admissibility questions that are more

14    difficult, but I don't think authenticity is one of them

15:14:06   15    except in the very unusual case.

16          And I think everyone knows that the witness lists are

17    going to have to get a lot shorter.  You know, plaintiffs

18    have 52 people on their witness list.  We know that the real

19    number is something like 10 or 15.  Their number will drop

15:14:22   20    as will ours.  But that's something that's going to happen

21    between now and -- you know, now and the start of trial, I'm

22    sure.

23          THE COURT:  All right.  Well, this means the

24    prospective jurors have to go through 200 names, and quite

15:14:39   25    frankly, they may get glazed over, so -- but they've got all

1    those names.

2         All right.  Well, then I guess we'll be confirmed

3    again on October the 5th in the afternoon, and I'll address

4    the things that are on my plate, the pending motions, by

15:15:06  5    then.  Whether I'll resolve the motions *in limine* by then, I

6    don't know.  Maybe some of them.  Some I can deal with, some

7    may have to wait until trial.  It depends on

8    what (indiscernible) understands that.

9              THE REPORTER:  It depends on what, Your Honor?

15:15:27  10             THE COURT:  On what happens at trial.

11        So there may be some I can't resolve as a practical

12   issue.

13        All right.  Stay safe, everyone.

14        Those who celebrated New Year, Happy New Year, and

15:15:44  15   we'll convene again on October the 5th.

16        Thank you.

17             MR. WEINBERGER:  Your Honor, this is Peter --

18             THE COURT:  People are signing off.

19        Go ahead, Pete.

15:15:54  20             MR. WEINBERGER:  You have before you --

21   they're not motions, but both sides submitted preliminary

22   statements to the jury for your review.  We couldn't arrive

23   at an agreed preliminary statement, so I'm assuming that's

24   on your agenda.

15:16:14  25             THE COURT:  Peter, I haven't even looked at

1    it.  How you couldn't even agree on a preliminary statement,

2    that's pretty pathetic.  Maybe I'll get it -- maybe I'll

3    figure it out at trial.  I'm -- you know, I'm not worried

4    about that.  I'm pretty dismayed that the parties couldn't

15:16:31 5    even agree on that.  Couldn't agree on jury instructions,

6    I'm doing that myself.

7         So it will get done when it gets done.  When you'll

8    see it, maybe the morning of trial.  But, obviously, I'm

9    going to instruct the jury something.  I don't really care

15:16:51 10   if the parties don't agree.  You know what?  I'll give them

11   the -- I'll give them the statement that I'll give them.

12        So if they don't agree on it, I'll tell them what I

13   want to tell them.  If you don't like it, you can object.

14   Either way.

15:17:08 15        But I haven't given it a minute thought, candidly,

16   Pete.

17        All right.  Anything else anyone wants to bring up?

18             MR. WEINBERGER:  Well, Your Honor, this is

19   Pete again.

15:17:21 20        I fully expected your reaction to that, and I can just

21   tell you that, you know, we worked hard to reach an

22   agreement.  But the reason that I raised the preliminary

23   statement is that this agreement revolves around the

24   fundamental question of to what extent these pharmacy

15:17:51 25   defendants are able to talk about and point fingers at the

1    claims that -- at the other defendants who

2    are -- whose -- who are not going to be in this trial, some

3    of whom settled, and its relevance to a particular case, and

4    certainly, what the focus of this case will be.

15:18:18   5        And that's where the fundamental disagreement is.  You

6    know, it's our -- you know, our statement and it's our

7    belief that this case revolves primarily around the conduct

8    of these defendants and whether or not they created a public

9    nuisance or substantially contributed to it.

15:18:36  10        Whereas, the defendants believe that --

11               THE CLERK:  Hang on, everybody.  Judge Polster

12    got disconnected.  I'm just reconnecting him.  Give me just

13    a moment, please.

14               MR. WEINBERGER:  Okay.

15:19:05  15               THE COURT:  All right.  I got disconnected.

16        But Pete was saying something and I got disconnected.

17               MR. WEINBERGER:  Right.

18        So I'll sort of start from the beginning.

19        The reason that I raised the question about the

15:19:18  20    preliminary statements is that it -- they certainly make

21    clear that we have two divergent views on what this trial is

22    going to be about.

23        The plaintiffs believe the case is about the conduct

24    of the pharmacy defendants and whether or not they

15:19:39  25    substantially contributed to create the public nuisance.

1          Whereas, the defendants clearly want to focus on the

2     conduct of non- -- of nondefendants, some of whom settled,

3     some of whom didn't so, and believe that the focus of the

4     case should, to a large extent, be on the conduct of either

15:20:03  5     defendants who previously settled, defendants who didn't

6     settle, or non- -- nondefendants.

7          And so that's why I raise the issue of your view of

8     the preliminary -- at least the preliminary statement to the

9     jury.  So that's why I raised it, Your Honor.

15:20:25 10          MR. STOFFELMAYR:  And, Judge, it's

11     Kaspar Stoffelmayr.

12          I don't think this is the time or the place to sort of

13     argue a motion *in limine* that -- I'm not sure if it's been

14     filed.  I don't think so.  You know, the Court will

15:20:40 15     obviously look at the preliminary statements and do what it

16     thinks is right.

17          But I guess it's sort of stating the obvious that

18     plaintiffs are free to focus on whatever they want to.  But

19     it's not up to plaintiff to tell defendants what they must

15:20:55 20     focus on.

21          And, obviously, one of the important questions at this

22     trial is going to be what did cause the opioid crisis, and I

23     don't think there's any view in the world where that's not a

24     relevant question.

15:21:11 25          THE COURT:  All right.  I was going to say

1    pretty much that.  Each side has a certain number of hours.

2         The plaintiffs' burden is to show that one or more

3    defendants caused the public nuisance.  Defendants can

4    defend however they want.

15:21:31  5         If the defendants want to spend their limited hours

6    showing that if there was a public nuisance caused by

7    others, they can do that.  If they simply want to say, Hey,

8    we didn't do anything wrong and they can -- they've got the

9    out.

15:21:50 10         I'm not going to be -- my neutral statement is not

11   going to talk about others.  All right?  I'll just say what

12   the plaintiffs have to prove.  All right?

13         Okay.  You know, they've got to prove that one or more

14   defendants caused a public nuisance.  And I'll probably tell

15:22:10 15   the jury something about what a public nuisance is.  I'm not

16   going to try anyone's case in the preliminary statement to

17   jurors.

18         But, again, the defendants can defend however they

19   want within the rules, of course.

15:22:28 20         All right.  Was there anything else?

21              MR. WEINBERGER:  Not from the plaintiffs'

22   perspective.

23         Thank you, Judge.

24              THE COURT:  Okay.  From the defendants?

15:22:39 25              MR. STOFFELMAYR:  No.

1    It's Kaspar.

2    No.  Thank you, Judge.

3        THE COURT:  All right.  Thank you.

4    Stay safe, everyone.

15:22:49  5                 - - -

6    (Proceedings adjourned at 3:22 p.m.)

7

8

9            **C E R T I F I C A T E**

10

11    I certify that the foregoing is a correct transcript

12    from the record of proceedings in the above-entitled matter.

13

14    */s/ Donnalee Cotone            25th of September, 2020*
       DONNALEE COTONE, RMR, CRR, CRC                       DATE
15    Realtime Systems Administrator

16

17

18

19

20

21

22

23

24

25