**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **In re: NATIONAL PRESCRIPTION** | ) | **MDL NO. 2804** |
| **OPIATE LITIGATION** | ) | |
| | ) | **CASE NO. 1:17-MD-2804** |
| *This document relates to:* | ) | |
| *Track One A ("CT1A")* | ) | **Judge Dan Aaron Polster** |

**WALGREENS' REPLY IN SUPPORT OF ITS OBJECTION TO MODIFIED
DISCOVERY RULING NO. 23**

The CT1A Plaintiffs acknowledge that, following DR 23, "[t]here is no time limit" for bringing CT1A privilege challenges. ECF No. 3502 at 2. Instead of pointing to any diligence on their part, or other good cause for waiting more than a year after the close of fact discovery to bring their current challenges, the CT1A Plaintiffs make two arguments in support of this extreme result. First, they argue that the complexity of this MDL and its ongoing bellwether privilege rulings somehow demonstrates good cause for any delay of any length whatsoever. But they do not even attempt to tie their Walgreens privilege challenges to any bellwether ruling. Second, CT1A Plaintiffs argue that they can bring privilege challenges forever because ***other*** plaintiffs, in other MDL cases, might someday be allowed to do so—ignoring that, as members of the Plaintiffs' Executive Committee, it is their responsibility to conduct bellwether discovery on behalf of ***all*** MDL plaintiffs. Because the CT1A Plaintiffs have waived these challenges, Walgreens' Objection to DR 23 should be sustained.

**I.      Neither the Court's bellwether rulings, nor the complexity of the MDL generally, demonstrates good cause for the CT1A Plaintiffs' delay.**

The CT1A Plaintiffs argue that "the relevant temporal benchmark against which to measure the timeliness of challenges to privilege designations is not the close of discovery, but

rather the ongoing issuance of [bellwether privilege] rulings."  ECF No. 3502 at 2 (quoting ECF No. 3461 at 4).  But they offer no support for this position.  And, critically, CT1A Plaintiffs have **never** tied their current challenges to Walgreens' privilege claims to **any** bellwether privilege ruling post-dating the close of discovery—certainly none that would justify waiting more than a year to raise those challenges.

Nor can CT1A Plaintiffs show "good cause" by referring generally to the complexities of this MDL.  There is no dispute that Walgreens engaged in extensive correspondence with Plaintiffs during CT1A fact discovery, explaining its process for reviewing documents for privilege and for producing documents it later determined were not privileged—including following the Court's bellwether privilege rulings.  *See* Exs. 1-5.  Neither then, nor now, have CT1A Plaintiffs identified any deficiencies in that process.

Plaintiffs had more than enough time in the six months following the close of fact discovery in CT1A to address any remaining issues they observed with Walgreens' privilege claims.  It is no excuse that "[d]ispositive motions . . . were being addressed between June and September 2019."  ECF No. 3502 at 6 n. 13.  Even if the point were relevant, it does not account for the months between March and June 2019, or the fact that the PEC has access to "scores of attorneys," ECF No. 3212 at 3, including a law firm dedicated solely to privilege challenges.  ECF No. 3470-4.  There is no reason to depart from settled precedent that privilege challenges filed "long after discovery close[s] and just . . . weeks before the long-scheduled trial," as in this case, come far too late.  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, No. IP961718CHG, 2001 WL 699889, at *1 (S.D. Ind. Apr. 26, 2001).

It is also no excuse that, more than a year later, CT1A Plaintiffs can point generally to documents on Walgreens' privilege log that they now believe should be produced.  Courts have

2

routinely considered and rejected this argument.  *See, e.g., United States v. Barron Collier Co*., 2015 WL 13811188, at *4 (D. Ariz. Dec. 24, 2015). ("Collier does not explain how waiting almost eight months to challenge the Government's assertion of a privilege is acting with diligence.  Collier's argument that the Government should have never asserted the privilege does not assist it in demonstrating diligence because ***if, as Collier asserts, there is no merit to the Government's assertion of the privilege, Collier should have made that challenge much earlier***, in time for the Court to rule on the privilege well before the close of discovery.") (emphasis added).[1]

It does not help CT1A Plaintiffs to cite a non-MDL case, *Durand v. Hanover Insurance Group*, 294 F. Supp. 3d 659 (W.D. Ky. 2018), that simply reached the unremarkable conclusion that "good cause" was satisfied for making belated privilege challenges when documents were produced ***after the close of fact discovery. Id.* at 671-72.  Plaintiffs make no such claim here, and *Durand* does not stand for the proposition that Plaintiffs may continue to bring CT1A privilege challenges indefinitely due to the "complexity" of an MDL.

Nor can CT1A Plaintiffs distinguish the cases cited in Walgreens' motion, which are squarely applicable here.  In the *Seroquel* MDL, for example, AstraZeneca explained how it was conducting its privilege review and then, "having heard no further objections from Plaintiffs about privilege issues, continued to review, produce, and withhold hundreds of thousands of documents pursuant to AstraZeneca's understanding of the Court's rulings."  *In re Seroquel Prod. Liab. Litig*., 2009 WL 3739347, at *2 (M.D. Fla. Nov. 6, 2009).  Walgreens did the same

---

[1] CT1A Plaintiffs also misrepresent *Baron Collier*, suggesting it is distinguishable because it relies on waiver under FRE 502.  That is wrong.  The relevant holding in that case is a simple application of the "good cause" standard that "a party [does] not exercise diligence when it delay[s] challenging [an assertion of] privilege for almost eight months, and wait[s] until only a week before discovery close[s] to do so."  *Barron Collier Co*., 2015 WL 13811188, at *5.

here.  Plaintiffs in *Seroquel*, much like the CT1A Plaintiffs, took "more than ten months" to respond, and primarily argued that AstaZeneca had produced an insufficient number of documents from its privilege log to comply with "bellwether" privilege rulings.  *See id*. at *2-3.  The court held this was insufficient to justify the belated challenges, regardless of the complexity of the litigation.  *See id*. at *4.  The same is true here.[2]

If the Court endorses the CT1A Plaintiffs' view, it will ensure there is no end to CT1A discovery.  Instead, every CT1A privilege challenge brought to the Special Master (including this one) will extend the schedule, creating a never-ending cycle.  CT1A Plaintiffs acknowledge as much, asserting that "*[t]here is no time limit*" on privilege challenges in this case.  ECF No. 3502 at 2 (emphasis added).  That result is plainly prejudicial and contrary to Rule 16.

## II.   CT1A Plaintiffs cannot justify their position with reference to the purported needs of other plaintiffs in different cases.

The CT1A Plaintiffs devote the majority of their argument to the proposition that "each MDL Plaintiff has a renewed right to challenge improper privilege claims in its own case," and therefore those challenges to CT1A privilege logs should be allowed to continue as long as this MDL does.  ECF No. 3502 at 8-9.  This argument does not help CT1A Plaintiffs in their case, however, when the Sixth Circuit's mandamus order makes clear that the district court has no authority "to disregard the Rules' requirements in the Pharmacies' cases in favor of enhancing

---

[2] CT1A Plaintiffs' argument that Walgreens is acting contrary to its interests in asserting offensive privilege challenges is a red herring.  Walgreens submitted its challenges to Cuyahoga in compliance with the Special Master's Order, while reserving its rights and instructing Cuyahoga to wait for resolution of this Objection before providing documents for *in camera* review.  Ex. 6.  Cuyahoga chose not to do so, presumably believing that it could discharge its privilege obligations quickly.  But in doing so, Cuyahoga has revealed the fundamental problem with Plaintiffs' argument—Cuyahoga failed to apply the subsequent bellwether ruling to its own documents, confirming that CT1A Plaintiffs have no interest in satisfying the amorphous standard they accuse Walgreens of violating.  Ex. 7.

the efficiency of the MDL as a whole." *In re Nat'l Prescription Opiate Litig*., 956 F.3d 838, 844 (6th Cir. 2020).

Pointing to the needs of plaintiffs in other cases (which may or may not be litigated at some point in the future) also ignores the role that the PEC has represented to the Court that it will serve in this MDL.  The PEC—not the plaintiffs in those other cases—is responsible for "coordinating and conducting pre-trial proceedings" in the bellwether cases.  ECF No. 34 at 10. That is the only way to "effectively litigate an MDL of this magnitude." *Id* at 4.  In seeking the establishment of a common benefit fund, the CT1A Plaintiffs' lawyers also emphasized that their work was in service of "all parties with like interests and their lawyers" in order to make "manageable litigation that otherwise would run out of control."  ECF No. 3212 at 10 (quoting *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1016 (5th Cir. 1977)).

It is not the case, as CT1A Plaintiffs argue, that any plaintiff in any subsequent MDL case track can re-do the work the PEC was selected to perform on behalf of the entire MDL in CT1A. Plaintiffs cite no authority in support of that proposition, and it is contrary to the case management orders in this case, *e.g.,* ECF No. 37, as well as MDL procedure generally, *see, e.g., In re Heritage Bonds Litig*., 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002) (purpose of an MDL is to ensure "that common parties and witnesses are not subjected to discovery demands which duplicate activity occurring in other actions.").

### III.  Plaintiffs offer no evidence to contradict that the May 2020 agreement encompassed all outstanding privilege claims.

CT1A Plaintiffs should also be prohibited from bringing challenges to Walgreens' documents (or their duplicates or near duplicates) that were specifically listed in the Agenda Items that the parties resolved by agreement in May 2020.  ECF No. 3470 at 11-12.  Plaintiffs do not dispute the existence of this agreement, nor the fact that it resolved "the outstanding disputes

relative to Plaintiffs' CT1A challenges" that were pending as of May 2020.  ECF No. 3470 at 3; *see also* ECF No. 3470-6 at 4.  Although CT1A Plaintiffs make a passing reference in their "background" section to the fact that in May 2020 "the parties had yet to address privilege claims at issue in the September 2019 motion," they offer no support for this position.  ECF No. 3502 at 6.  It is also contrary both to their own representations, *see* Ex. 8, and to the rest of their argument—which is premised on the fact that CT1A Plaintiffs were ***unable*** to bring their June 2020 challenges to Walgreens at any earlier time.  DR 23 should be reversed in part on this basis alone.

## CONCLUSION

Parties have a right to rely on the deadlines the Court imposes for the end of discovery in individual cases.  That right cannot be "impinged to create efficiencies in the MDL generally," and any extensions in the court's schedule must be based on Rule 16's "good cause" standard.  *See In re Nat'l Prescription Opiate Litig*., 956 F.3d at 845.  Because the CT1A Plaintiffs have not met that standard here, the Court should sustain Walgreens' Objection to Special Master Cohen's Modified Order and deny CT1A Plaintiffs' motion to compel.


Dated: September 25, 2020                    Respectfully submitted,

                                      /s/ Kaspar J. Stoffelmayr
                                      Kaspar J. Stoffelmayr
                                      Brian C. Swanson
                                      Katherine M. Swift
                                      Sharon Desh
                                      Sten A. Jernudd
                                      BARTLIT BECK LLP
                                      54 West Hubbard Street
                                      Chicago, IL 60654
                                      Phone: (312) 494-4400
                                      Fax: (312) 494-4440
                                      Email: kaspar.stoffelmayr@bartlitbeck.com

Email: brian.swanson@bartlitbeck.com
Email: kate.swift@bartlitbeck.com
Email: sharon.desh@bartlitbeck.com
Email: sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Phone: (303) 592-3100
Fax: (303) 592-3140
Email: alex.harris@bartlitbeck.com

*Counsel for Walgreen Co.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, this 25th day of September 2020, I served a copy of the foregoing via the Court's ECF system to all counsel of record.

/s/ Kaspar Stoffelmayr
Kaspar Stoffelmayr

*Counsel for Walgreen Co.*