**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br>*Track One-B Trial* | Case No. 1:17-MD-2804 |

**PHARMACY DEFENDANTS' REPLY TO PLAINTIFFS' OMNIBUS RESPONSE TO
PHARMACY DEFENDANTS' MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

REPLIES IN SUPPORT OF MOTIONS IN LIMINE ......................................................... 2

I.    The Court Should Preclude Evidence, Argument, Or Comments Regarding: 1) The
      Military Service, Employment, Religious Affiliation or Personal Experiences of
      Counsel and Staff, and 2) The Waiving or Donation of Attorney's or Expert Fees,
      or Any Portion of Any Recovery, to Charity or for the Benefit of the Community ............. 2

      A.   Argument involving military service, employment, religious affiliation, or
           personal experiences of counsel and staff ...................................................... 2

      B.   Evidence or Argument regarding waiving or donation of attorney or expert fees ........ 3

II.   The Court Should Preclude Evidence, Argument, Or Comments Regarding the
      Absence, Presence, or Identity of Defendant's Corporate Representatives at Trial ............. 5

III.  The Court Should Preclude Testimony or Argument Negatively Characterizing
      Defendants as Large Corporations .................................................................................... 6

IV.   The Court Should Preclude Evidence, Argument, and Testimony Comparing
      Defendants' Conduct to Wars, National Tragedies, Terrorist Attacks, the Tobacco
      Industry, or Any Comparison of Defendants to Such Actors ............................................. 8

V.    The Court Should Preclude Evidence or Argument that Defendants Could Have
      Stopped Distributing Schedule II Controlled Substances .................................................. 10

VI.   The Court Should Preclude Evidence of Civil or Criminal Investigations or Other
      Litigation .......................................................................................................................... 11

VII.  The Court Should Preclude Evidence of Settlements ........................................................ 16

VIII. The Court Should Preclude Evidence of Extraterritorial Conduct Without
      Establishing a Specific Nexus to Cuyahoga or Summit County and a Track 1B
      Defendant .......................................................................................................................... 20

IX.   The Court Should Limit Testimony of Craig McCann ...................................................... 22

X.    The Court Should Preclude Evidence or Argument Relating to Participation in
      Trade Associations ............................................................................................................ 25

CONCLUSION .................................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Page**

### CASES

*Choice v. Coleman*,
2009 WL 4113936 (E.D. Mich. Nov. 23, 2009) ....................................................................19

*Dear v. Crown Castle S., LLC*,
2016 U.S. Dist. LEXIS 198750 (S.D. Miss. June 16, 2016) ....................................................5

*Fed. Ins. Co. v. Mertz*,
2016 WL 1572995 (S.D.N.Y. Apr. 18, 2016).........................................................................13

*Guardian Life Ins. Co. of Am. v. Andraos*,
2009 WL 10674144 (C.D. Cal. Sept. 10, 2009) ......................................................................6

*Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*,
772 F.3d 1031 (5th Cir. 2014) ...............................................................................................19

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
888 F.3d 753 (5th Cir. 2018) ...................................................................................................4

*John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau*,
195 F. Supp. 3d 9 (D.D.C. 2016) .....................................................................................13, 14

*Keys v. Wash. Metro. Area Transit Auth.*,
272 F.R.D. 243 (D.D.C. 2011)...............................................................................................14

*Kline v. Checker Notions Co.*,
2010 WL 750149 (N.D. Ohio Mar. 1, 2010) .......................................................................8, 9

*Mascarenas v. Cooper Tire & Rubber Co.*,
2010 U.S. Dist. LEXIS 157533 (S.D. Ga. Jan. 11, 2010).....................................................2, 6

*McLeod v. Parsons Corp.*,
73 F. App'x 846 (6th Cir. 2003) .............................................................................................15

*Mut. Pharm. Co. v. Bartlett*,
570 U.S. 472 (2013).................................................................................................................11

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982).................................................................................................................25

*Nuutinen v. CBS Corp.*,
  2015 U.S. Dist. LEXIS 75134 (E.D. Wis. June 9, 2015).........................................................6

*Park W. Galleries, Inc. v. Glob. Fine Art Registry*,
  2010 WL 848689 (E.D. Mich. Mar. 8, 2010) ...................................................................13, 14

*United States v. Franks*,
  511 F.2d 25 (6th Cir. 1975) ...............................................................................................17

*United States v. Hadaway*,
  681 F.2d 214 (4th Cir. 1982) ............................................................................................17

*United States v. Heine*,
  2017 WL 4423408 (D. Or. Oct. 5, 2017)............................................................................14

*United States v. Solivan*,
  937 F.2d 1146 (6th Cir. 1991) .........................................................................................9, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a)(2)(B)(ii)...........................................................................................23

Fed. R. Evid. 401 ....................................................................................................8, 11, 24

Fed. R. Evid. 402 ................................................................................................................11

Fed. R. Evid. 403 .........................................................................................................11, 15

Fed. R. Evid. 407 ...............................................................................................................14

Fed. R. Evid. 801 ....................................................................................................8, 11, 15

Fed. R. Evid. 802 ..........................................................................................................8, 11

Fed. R. Evid. 803 ..........................................................................................................8, 11

Fed. R. Evid. 804 ................................................................................................................8

## INTRODUCTION

Plaintiffs' omnibus response to Pharmacy Defendants' motions *in limine*, Dkt. 3464, reveals that Plaintiffs do not dispute the core premises of Pharmacy Defendants' motions.  In many instances, Plaintiffs do not even offer any substantive legal argument for why a motion *in limine* should be denied.  And to the extent Plaintiffs disagree with aspects of the Pharmacy Defendants' motions, for the most part, they cannot point to a single, concrete piece of evidence or argument that would be wrongly precluded by granting the motion.  That failure is telling, given that by this point in the litigation, the parties have exchanged witness lists and exhibit lists.  Yet, Plaintiffs repeatedly insist that the motions *in limine* are premature and should be decided at trial—presumably after the Plaintiffs have already raised before the jury the very evidence or argument the motion seeks to prohibit.

Plaintiffs' plea for delay rings hollow.  Dkt. 3464 at 1.  If at this stage of trial planning Plaintiffs are unable to identify a single exhibit or likely testimony that both falls within the category of information that one of Pharmacy Defendants' motions *in limine* seeks to preclude and is otherwise admissible, then they have tacitly conceded that Pharmacy Defendants' motions are well-founded.  At a minimum, if any of Pharmacy Defendants' motions *in limine* are to be deferred to trial, Plaintiffs should be required to raise issues subject to the motion first outside of the presence of the jury and with full opportunity for Pharmacy Defendants to be heard on the issue.

Pharmacy Defendants' additional, specific replies in support of their joint motions *in limine*, *see* Dkts. 3413–18, 3420–21, 3425–26, are set out below.

- 1 -

## REPLIES IN SUPPORT OF MOTIONS *IN LIMINE*

I.  **The Court Should Preclude Evidence, Argument, Or Comments Regarding: 1) The Military Service, Employment, Religious Affiliation or Personal Experiences of Counsel and Staff, and 2) The Waiving or Donation of Attorney's or Expert Fees, or Any Portion of Any Recovery, to Charity or for the Benefit of the Community.**

A.  **Argument involving military service, employment, religious affiliation, or personal experiences of counsel and staff**

Plaintiffs' response admits that they have reversed course from the stipulation they entered into in Track 1A and now plan to delve into the military service, other or prior employment, religious affiliations or positions, or other personal experience of the parties' counsel or staff during the Track 1B trial.  Dkt. 3464 at 3–5.  Plaintiffs had it right the first time: such evidence is not relevant, is prejudicial, and should be excluded.

Plaintiffs' about-face relies on the unremarkable propositions that counsels' statements are not evidence and that some leeway should be allowed in opening and closing statements.  *Id.* at 4.  But these general propositions are no answer to the fundamental question of whether references to, for instance, counsel's military service should be excluded due to its lack of relevance and/or its prejudicial impact.  Plaintiffs' response fails to offer any legitimate reason why counsels' (or staffs') military service, employment, religious affiliation or other personal experience have any relevance to their claims.[1]  With a Baptist preacher as lead trial counsel, it is likely (and Plaintiffs do not deny) that Plaintiffs plan to refer to such religious position in order to appeal to the passions and/or prejudices of the jury.

---

[1] Plaintiffs cite *Mascarenas v. Cooper Tire & Rubber Co.*, 2010 U.S. Dist. LEXIS 157533 (S.D. Ga. Jan. 11, 2010) in their brief on the corporate representative issue, *see infra*, but that case supports Defendants' argument here, because in that case the court granted the defendant's motion *in limine* and precluded the parties from "making improper comments to the jury and from referencing the size of the law firms involved or the number of attorneys or legal assistants in these law firms." *Id.* at *28.  *Mascarenas* highlights the lack of relevance of information about a party's counsel.

- 2 -

As Plaintiffs likely recognized when entering into the Track 1A stipulation that they now disavow, opening the door to these types of statements invites irrelevant and prejudicial comparisons of counsels' military record, prior employment, or religious affiliation, as well as irrelevant and potentially prejudicial inferences by the jury based on, for example, counsel's particular religious affiliation (whether that be positive or negative feelings about a particular affiliation).  The Court should head this off by granting Pharmacy Defendants' motion *in limine*.[2]

**B.    Evidence or Argument regarding waiving or donation of attorney or expert fees**

Plaintiffs state in their response that they "have no intention of referencing any waiver or donation of [their attorney's] fees" but only "[s]o long as the Pharmacy Defendants do not attack Plaintiffs' attorneys' fees in front of the jury."  Dkt. 3464 at 6.  This aspect of Pharmacy Defendants' motion *in limine* is therefore agreed because Defendants have no intention of attacking Plaintiffs' attorney's fees at trial unless Plaintiffs somehow open the door to such an issue.

Plaintiffs' position is different, however, with respect to their experts' fees: "To the extent any of Plaintiffs' experts are waiving or donating a portion of their fee, Plaintiffs do not intend to offer such evidence during the expert's **direct** examination.  However, such evidence may become relevant to the extent the Pharmacy Defendants attempt to portray the expert as a hired gun or biased based on the amount he or she was paid in this case."  *Id.*  In other words, if Defendants cross examine Plaintiffs' experts with respect to their fees, Plaintiffs plan to elicit testimony that their experts are donating all or a portion of their fees to charity.  Notably, Plaintiffs provide no

---

[2] The Court can, of course, deal with the appropriate amount of "leeway" to be granted to counsel during opening and closing statements at trial, having established appropriate guideposts by granting this motion *in limine*.

details about any such fee-donation arrangements, and instead simply state that they plan to raise that issue if Defendants cross examine their experts about fees.

The dangers of attempting to bolster the credibility of experts by eliciting testimony and arguing in closing argument that plaintiffs' experts are donating their fees is best exemplified by *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Product Liability Litig.*, 888 F.3d 753, 788–92 (5th Cir. 2018), where the Fifth Circuit Court of Appeals reversed a jury verdict for half-a-billion dollars and ordered a new trial as a result of "counsel's misrepresentations" about plaintiffs' experts' alleged pro bono compensation arrangements.  In *DePuy*, Mark Lanier elicited testimony and argued in closing that plaintiffs' experts were more credible than defendants' hired experts because they were working pro bono, but it was discovered after trial that the experts were in fact paid before and after the trial.

Plaintiffs' response, which could have simply stated (but does not) that none of their experts have any pro bono or charitable fee arrangements, raises the likelihood that Plaintiffs plan to argue that one or more of their experts is more credible than Defendants' experts because of undisclosed fee arrangements. As noted by the Firth Circuit in *DePuy*, an analysis of such arrangements is required in order to determine whether, in fact, they are actually disguised compensation.  As a result, Pharmacy Defendants' motion *in limine* should be granted to preclude any such evidence.

Finally, while Plaintiffs claim that they do not plan on introducing evidence regarding the costs of abatement, in the same breath they state that they "may offer evidence of the impact of the Pharmacy Defendants' conduct on community-based programs within the Counties".  *See* Dkt. 3464 at 7–8.  But such "impact" evidence is only relevant to the abatement phase and the use of such evidence in the liability trial would be nothing more than an improper appeal to the personal

and community interests of the jury which the Plaintiffs have previously recognized in their Track 1A Evidentiary Stipulations.  *See* Dkt. 2724 (stipulating that plaintiffs shall make no reference to the jurors' self-interest in the outcome of the litigation based on the jurors' status as taxpayers).

## II.  The Court Should Preclude Evidence, Argument, Or Comments Regarding the Absence, Presence, or Identity of Defendant's Corporate Representatives at Trial.

Plaintiffs acknowledge the Court's prior ruling that evidence or argument about whether a corporate representative does or does not attend all or part of the trial is precluded because such information "is not relevant to the merits of Plaintiffs' claims," Dkt.  3058 at 67–68, and simply state that they object to that prior ruling.  *See* Dkt. 3464 at 8.

Plaintiffs, however, take issue with the cases the Court cited in support of its ruling which hold that "the presence, absence, or identity of defendant's corporate representative is wholly irrelevant to plaintiffs' claims[.]"  Dkt. 3058 at 68 n.141 (citing *Riley v. Ford Motor Co.,* 2011 WL 3273592, at *3 (S.D. Miss. July 29, 2011)).  But the issue of the presence or identity of a corporate representative is nearly identical to the absence issue—neither has any relevance to the merits of Plaintiffs' claims.  *See Dear v. Crown Castle S., LLC*, 2016 U.S. Dist. LEXIS 198750, at *3 (S.D. Miss. June 16, 2016) (granting motion *in limine* because: "The Court finds that as '[t]he presence, absence, or identity of Defendants' corporate representatives is wholly irrelevant to [the Dear] Plaintiffs' claims.'" (citing *Riley*, 2011 WL 3273592, at *3)).

Plaintiffs protest that the requested ruling is too broad with respect to commenting on the presence or identity of a corporate witness because it could be interpreted to apply to the identification of Rule 30(b)(6) witnesses or a trial witness' testimony about their relationship to a Pharmacy Defendant. This argument is a red herring.  The purpose of the motion *in limine* is to prevent commentary or argument about whether a corporate party did or did not have a representative at all or part of the trial, and who that person was, because such information is

entirely irrelevant. The identification of testifying witnesses at trial is not impacted.[3] Therefore, Pharmacy Defendants' motion *in limine* should be granted.

### III. The Court Should Preclude Testimony or Argument Negatively Characterizing Defendants as Large Corporations.

Plaintiffs concede that negatively characterizing the Pharmacy Defendants as large corporations would "improperly inflame[e] the jury's emotions" and "appeal[] to its biases." Dkt. No. 3463 at 12. The parties are thus in agreement that any such evidence is inadmissible under Rule 403. In fact, Plaintiffs' only argument in opposition to this motion is that the Pharmacy Defendants have not demonstrated that "all evidence of their large size is 'clearly inadmissible on all potential grounds.'" *Id.* (quoting *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).[4] But, of course, the Pharmacy Defendants never argued it was. *See* Dkt. 3415 at 2 n.1 ("As this Court has held, each Defendant is allowed to 'introduce and describe themselves accurately to the jury and explain how many people it employs and the work they do to ensure the safe . . . delivery of necessary medication to the people living in the Track One counties.' Dkt.

---

[3] Plaintiffs' reliance on *Nuutinen v. CBS Corp.*, 2015 U.S. Dist. LEXIS 75134, at *16 (E.D. Wis. June 9, 2015) is misplaced because that case merely addressed whether plaintiffs could identify a witness as defendant's corporate representative when calling him at trial, a point that is not disputed here. And, Plaintiffs' reliance on *Mascarenas*, 2010 U.S. Dist. LEXIS 157533, at *28 is also no help because, unlike here, the defendant in that case failed to support its motion *in limine* with appropriate argument or case law.

[4] In a footnote, Plaintiffs also suggest that, because the jury "will not be making any determination as to remedies," there is "no risk of it inflating a damage award based on a defendant's large size"—as if that somehow minimizes any risk of unfair prejudice. Dkt. 3464 at 10 n.10. But, of course, improperly inflaming the jury's emotions and appealing to its biases by negatively characterizing Pharmacy Defendants as large corporations would not affect only a determination of remedies but also the threshold determination of liability. *See, e.g.*, *Guardian Life Ins. Co. of Am. v. Andraos*, 2009 WL 10674144, *3 (C.D. Cal. Sept. 10, 2009) (describing "danger that such evidence might unfairly prejudice the jury **into finding for [plaintiffs]**") (emphasis added).

No. 3058 at 68.  This motion seeks only to preclude improper attempts by Plaintiffs to appeal to jurors' emotions by negatively characterizing Defendants as large corporations.").

Indeed, Plaintiffs' lead example of why the motion is purportedly "overbroad" shows exactly why it is necessary.  Plaintiffs insist that they should be allowed to argue to the jury that "Walmart is the largest private employer in the United States, with over 1.5 million employees. Yet, it assigned only three employees to review orders from its approximately 4,000 Walmart pharmacies nationwide."  Dkt. 3464 at 10.  That argument is inappropriate, first and foremost, because it is wrong.[5]  But it is also inappropriate because it invites the exact prejudicial inferences the motion *in limine* seeks to avoid.  The number of employees serving other aspects of a defendant's business (e.g. home office, retail, grocery, distribution, logistics, and other work wholly unrelated to pharmacy operations) has absolutely no bearing on the adequacy of the Pharmacy Defendants' SOM programs.  The only purpose in mentioning them is to imply to the jury that the defendants has deep pockets and therefore (1) should have done even more than the law requires or (2) should be held liable regardless of whether or not they were a substantial factor in causing the nuisance Plaintiffs allege.  Both of these highly prejudicial inferences are barred by Rule 403.

---

[5] As Plaintiffs are well aware at this point, throughout the time that Walmart self-distributed controlled substances, Walmart devoted significant resources to maintaining effective controls and procedures to guard against theft and diversion of controlled substances. Every employee at each pharmacy distribution center played a role in monitoring and reviewing orders for controlled substances, including orders of interest, and preventing diversion. Walmart also used a myriad of suspicious order monitoring systems during the time it self-distributed which also leveraged many different departments and countless employees, from employees in the field to employees at Home Office, including Global Investigations and Asset Protection, Logistics, the Pharmacy Order Monitoring team, and Practice Compliance.  Plaintiffs cannot change these facts through one, out-of-context snippet of deposition testimony.

The Court should grant the Pharmacy Defendants' motion *in limine* to preclude testimony or argument negatively characterizing them as large corporations.  *See* Dkt. 3415.

## IV. The Court Should Preclude Evidence, Argument, and Testimony Comparing Defendants' Conduct to Wars, National Tragedies, Terrorist Attacks, the Tobacco Industry, or Any Comparison of Defendants to Such Actors.

Plaintiffs agree with Pharmacy Defendants that any comparison of Pharmacy Defendants' conduct to wars, national tragedies, terrorist attacks, the tobacco industry or other corporate scandals, or any actors that participate in such other conduct would "improperly inflam[e] the jury with irrelevant comparisons."  Dkt. 3464 at 12.  And they do not even attempt to argue that comparing Pharmacy Defendants' conduct to such situations would have a "tendency to make a fact more or less probable."  Fed. R. Evid. 401(a).  They have thus tacitly conceded that any such evidence is inadmissible under Rules 401, 402, and 403.

Plaintiffs only argument in opposition to this motion is that a single PowerPoint presentation, produced by McKesson, who is not a party to Track 1B, and purportedly authored by a former DEA agent, Gary Boggs, contains "imagery of wars, terrorist attacks, and national tragedies." Dkt. 3464 at 12–13.  Plaintiffs argue that this document may be admissible to "illustrate how serious a former DEA employee found the opioid epidemic to be."  *Id.*  This is a distraction. For one thing, irrespective of Pharmacy Defendants' motion, this document is at best inadmissible and unreliable hearsay.[6]  *See* Fed. R. Evid. 801–04; *see also, e.g.*, *Kline v. Checker Notions Co.*, 2010 WL 750149, at *3 n.1 (N.D. Ohio Mar. 1, 2010) (refusing to admit testimony that was "contained in an unauthenticated document" and was "unsworn hearsay that does not fall within any exception").

---

[6] Mr. Boggs is not on Plaintiffs' exhibit list, and could not possibly be cross examined regarding the statements and sentiments Plaintiffs attribute to him through this presentation.

- 8 -

For another thing, the "imagery" in the presentation referenced in Plaintiffs' response, *see* Dkt. 3464 at 12–13, does not reference any national tragedies.  Instead, the "planes crashing," "collapsed building," and "explosion" imagery, *see id.*, are illustrating words in the presentation.  The "planes crashing" imagery illustrates the title of a presentation slide: "***Collision*** Course."  *See* Dkt. 2397-4 (PSJ2 Ex. 137) at 7199 (emphasis added).  The "collapsed building" imagery illustrates a presentation slide titled "When can happen when these checks and balances ***collapse***?"  *See id.* at 7208 (emphasis added).  And the "explosion" imagery illustrates a presentation slide referencing an "***Explosion*** of 'Pain Clinics.'"  *See id.* at 7211 (emphasis added).  Plainly, this imagery is not "comparing" anything, let alone Pharmacy Defendants, to a war, national tragedy, terrorist attack, or corporate scandal.

That being said, the portions of the presentation that Plaintiffs fail to discuss illustrate exactly why this motion *in limine* is necessary.  The presentation contains two highly inflammatory slides that (1) make a "Historical Comparison" of the opioid epidemic to the BP oil spill, and (2) discuss oxycodone deaths in Florida accompanied by an unrelated image of an apparent outdoor morgue populated by numerous corpses in body bags, apparently taken during some sort of mass casualty event.  *See* Dkt. 2397-4 at 7212, 7214.  The only purpose for such comparison and imagery would be to bias and inflame the jury against Pharmacy Defendants.  Rule 403 prohibits such tactics.  *See, e.g.*, *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991) (stating "appeals to the jury . . . calculated to incite the passions and prejudices of the jurors" are inadmissible).

Plaintiffs also attempt to distinguish the case law cited in Pharmacy Defendants' motion on the facts, but they ignore the unifying underlying legal principle in those cases.  *See* Dkt. 3464 at 13–14.  If anything, the factual distinctions show that other courts have excluded evidence much less prejudicial than the sort of evidence that the Pharmacy Defendants' motion seeks to exclude.

For example, in *Solivan* the Sixth Circuit concluded that a new trial was necessary after plaintiffs' counsel compared "defendant's participation in the drug trade in northern Kentucky" to the "all of the other drug dealers like her" during closing argument. 937 F.2d at 1148, 1153. The Sixth Circuit concluded that this statement prejudicially "appeal[ed] to the community conscience in the context of the War on Drugs." *Id.* at 1153. Here, by contrast, Pharmacy Defendants seek to bar explicit references to unrelated wrongful conduct, references that are even more overt, less relevant, and at least as prejudicial as those made in *Solivan*.

In short, Plaintiffs offer no plausible explanation for how comparing Pharmacy Defendants' alleged conduct to a war, national tragedy, terrorist attack, or the tobacco industry or other corporate scandal would be relevant, nor do they make any effort to explain how such comparison would be anything but unduly prejudicial. On the contrary, all Plaintiffs can muster in response is a tenuous explanation of how one inadmissible and unfairly prejudicial third-party hearsay document could in theory be relevant and barred by the motion *in limine*, while ignoring the myriad other reasons that document is inadmissible. The Court should grant the Pharmacy Defendants' motion *in limine* in full. *See* Dkt. 3416.

## V. The Court Should Preclude Evidence or Argument that Defendants Could Have Stopped Distributing Schedule II Controlled Substances.

Plaintiffs concede, as they must, that they are precluded from arguing that the mere fact that the Pharmacy Defendants distributed FDA-approved medications is the basis for nuisance liability. Dkt. 3464 at 15 (Plaintiffs representing that they "do not intend to argue that the Pharmacy Defendants are liable based merely on the fact that they distributed opioids"); *see also* Dkt. 3417. Nor do they question that, as the Court has recognized, such preempted theories of liability must be excluded. *See* Dkt. 3058 at 50 ("The Court agrees that preemption applies to any claims that generic manufacturers should have stopped selling opioids . . . ."). They emphasize

that they plan to rest liability on Pharmacy Defendants' alleged failure to "comply with the CSA when distributing their opioid products."  Dkt. 3464 at 17.

If that is the case, Pharmacy Defendants' motion *in limine* is uncontested.  All parties agree that Plaintiffs cannot, consistent with Supreme Court or Sixth Circuit precedent, argue that the Pharmacy Defendants should be held liable merely for distributing the legal products at issue in this case.  While the Court's prior rulings give Plaintiffs the right to argue that the Pharmacy Defendants were not in substantial compliance with the CSA, that alleged noncompliance is the only hook for their nuisance claim.  "Stop-selling" and "never-start-selling" theories cannot be tolerated.  Pharmacy Defendants' motion *in limine* should be granted.[7]

## VI. The Court Should Preclude Evidence of Civil or Criminal Investigations or Other Litigation.

The Court should bar evidence, testimony, or argument related to: (1) civil or criminal investigations involving a Defendant or its employees; (2) other litigation involving a Defendant or its employees; and (3) media coverage or other secondhand accounts of that evidence.  Such evidence is hearsay, irrelevant, and would be unduly prejudicial.  *See* Fed. R. Evid. 401–03, 801–03.  Plaintiffs offer no meaningful explanation as to why any of these categories of evidence is admissible.

*First*, and tellingly, Plaintiffs do not seek reconsideration of the Court's prior Track 1A ruling prohibiting "references to criminal investigations and indictments that did not result in a conviction," as well as references to grand jury proceedings.  Dkt. 3058 at 16–17.  Thus, the aspect

---

[7] To the extent Plaintiffs argue that *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472 (2013), is inapposite because it is a preemption case, *see* Dkt. 3464 at 16–17, that argument falls flat because *Bartlett*'s key holding that when an action is authorized by law, a party is "not required to cease acting altogether in order to avoid liability," 570 U.S. at 488, is plainly applicable outside the preemption context.

of Pharmacy Defendants' motion that seeks to bar evidence, testimony, or argument regarding criminal investigations is unopposed.

But Plaintiffs attempt to differentiate between criminal and civil investigations, arguing that civil investigations "may be highly probative to Plaintiffs' nuisance claims" by purportedly "demonstrat[ing] the Pharmacy Defendants' knowledge of their noncompliance with the CSA and the resulting diversion."  Dkt. 3464 at 21.[8]  But Plaintiffs never explain how the fact of the investigation—as opposed to the *facts underlying* the investigation—is relevant to their claims or how any relevance would outweigh the substantial risk of unfair prejudice.

If Plaintiffs are permitted to suggest that the fact a civil investigation *occurred*, in and of itself, was relevant to show Pharmacy Defendants' liability, that will confusingly suggest to the jury that investigated conduct was *necessarily unlawful*.  That is exactly the inference that numerous courts have held is impermissible, and it is particularly unfair when the investigating agency never obtained a judgment in its favor on the issue.  *See* Dkt. 3418 at 3–4 (collecting cases).  Any legitimate arguments to be made about conduct that was subject to civil investigation can be made through admissible evidence of the conduct itself and/or a Pharmacy Defendant's knowledge of that conduct.  It is those alleged facts—to the extent they are otherwise admissible—that Plaintiffs can use to argue that Pharmacy Defendants had "knowledge of their noncompliance with the CSA and [] resulting diversion," not the fact of the investigation itself.  Any evidence or argument regarding the fact of investigation is irrelevant and unfairly prejudicial.

---

[8] At least some of the "investigations" to which Plaintiffs cite are in fact routine DEA inspections of Pharmacy Defendants' distribution centers.  *Id.* at 21 & n. 21.  Pharmacy Defendants' motion does not seek to exclude evidence related to such routine inspections.  However, to the extent the DEA, as the result of a routine inspection, then opened an investigation into a Pharmacy Defendant, the fact of the investigation—as opposed to the facts underlying the investigations—should be excluded as irrelevant and unfairly prejudicial.

Plaintiffs' argument that the case law precluding evidence of civil investigations is "entirely distinguishable" is without merit. Dkt. 3464 at 20. For example, Plaintiffs argue that *Park West Galleries, Inc. v. Global Fine Art Registry*, 2010 WL 848689 (E.D. Mich. Mar. 8, 2010), is different because in that case "there [wa]s no evidence that any conclusions or findings ha[d] been made in any such investigation," and admitting such evidence would "require the jury to predict the outcome of the pending investigations." Dkt. 3464 at 20 (quoting *Park W. Galleries*, 2010 WL 848689, at *2). They attempt to draft a similar distinction with respect to *John Doe Co. No. 1 v. Consumer Financial Protection Bureau*, 195 F. Supp. 3d 9 (D.D.C. 2016). *See* Dkt. 3464 at 20–21. But the fact that an investigation is ongoing, as opposed to concluded without any resolution in the Government's favor, is a distinction without a difference. The core holding of those cases—that introducing the fact of an investigation incorrectly suggests wrongdoing—is true for both ongoing cases and those that were abandoned without any adverse finding against a Pharmacy Defendant. Indeed, the *John Doe* court emphasized that releasing evidence of an ongoing investigation "would likely cause [a defendant] debilitating reputational and financial hardship." 195 F. Supp. 3d at 21.

The Pharmacy Defendants' motion is even more justified where an investigation has concluded without any final finding of wrongdoing or judgment in the government's favor. Investigations that do not result in a finding of wrongdoing cannot show noncompliance or knowledge of noncompliance. However, jurors might mistakenly conclude that if there was an investigation then wrongdoing must have occurred. *See, e.g.*, *Fed. Ins. Co. v. Mertz*, 2016 WL 1572995, at *4 (S.D.N.Y. Apr. 18, 2016) (concluding "[e]ven if relevant," testimony regarding an investigation was inadmissible under Rule 403 because "it risks the jury concluding that [defendant] has a propensity to be involved in [the alleged wrongdoing]"). Such a conclusion

would be unfairly prejudicial.  Plaintiffs vaguely argue that closed investigations would "provide context" to a Pharmacy Defendant's actions with respect to their SOMS programs, Dkt. 3464 at 21, but they do not explain how, or why the minimal relevance of providing "context" outweighs the unfair prejudice associated with mentioning the closed investigation.[9]  If Plaintiffs believe that the ***conduct being investigated*** provides context, nothing in the motion *in limine* would prevent them from discussing that conduct.

In short, the fact of a government investigation, whether criminal or civil, is inadmissible because that fact reflects only that an authority ***investigated*** whether wrongdoing occurred.  It does nothing to show whether any particular conduct occurred, let alone whether that conduct was wrongful.  *See, e.g.*, *United States v. Heine*, 2017 WL 4423408, at \*23 (D. Or. Oct. 5, 2017); *John Doe Co. No. 1*, 195 F. Supp. 3d at 13; *Keys v. Wash. Metro. Area Transit Auth.*, 272 F.R.D. 243, 245 (D.D.C. 2011); *Park W. Galleries*, 2010 WL 848689, at \*2.

As for evidence regarding litigation with third parties, Plaintiffs concede that "allegations in other lawsuits are typically considered hearsay."  Dkt. 3464 at 22; *see also* Dkt. 3418 at 4–6.  Nevertheless, Plaintiffs argue that "evidence of other litigation involving the Pharmacy Defendants (whether in or outside of the Counties) may be relevant to demonstrating their intent, knowledge, motive, or purpose."  Dkt. 3464 at 24.  But Plaintiffs cannot point to a single instance where the fact of a lawsuit, as opposed to the circumstances underlying the lawsuit, would provide such information to the jury.

---

[9] To the extent Plaintiffs would argue that changes to Pharmacy Defendants' SOM systems over time (whether in response to investigations or not) suggest that earlier versions did not comply with the CSA, such an argument is foreclosed by Rule 407, which provides that "evidence of [] subsequent measures is not admissible to prove . . . culpable conduct."

Moreover, because allegations in other lawsuits are unproven and necessarily hearsay, even if the fact of a lawsuit were somehow relevant (and it is not), the content of the allegations in that lawsuit are independently inadmissible and prejudicial (as the jury could wrongly conclude that simply because allegations have been made, they must be true). *See* Fed. R. Evid. 403, 801; *see also, e.g.*, *McLeod v. Parsons Corp.*, 73 F. App'x 846, 854 (6th Cir. 2003) (concluding the district court did not err in excluding evidence of other lawsuits where "there was no clear nexus between th[o]se lawsuits and this case").[10]

Finally, Plaintiffs largely ignored Pharmacy Defendants' argument that evidence of media coverage or other secondhand accounts of investigations or other litigation would be inadmissible hearsay.  Instead, Plaintiffs argue that "a Pharmacy Defendant's awareness or internal discussion of certain media coverage may be relevant to demonstrate its knowledge of diversion or the opioid epidemic generally."  Dkt. 3464 at 27.  But Plaintiffs do not provide a single example of an otherwise admissible document showing a Pharmacy Defendant discussing a hearsay article, let alone explain how they would solve the double-hearsay problem in any such document, or how that document would show knowledge of anything relevant to this case.  Moreover, Plaintiffs fail to address the fact that, even setting hearsay issues aside, media coverage of investigations or other litigation involving Pharmacy Defendants would be unfairly prejudicial, as it could erroneously be

---

[10] Plaintiffs argue that allegations in lawsuits may be used for a purpose other than the truth of the matter asserted, but they fail to provide any example of how an unproven allegation by a plaintiff in a lawsuit unrelated to these cases could be used to "provide context" to anything relevant to these cases or otherwise fall within a hearsay exception.  Nor do Plaintiffs explain how an allegation in a complaint could be admitted as a statement of a party-opponent.  To the extent Plaintiffs are referring to alleged statements by any Pharmacy Defendant contained in any complaint, Plaintiffs should use the underlying testimony or document itself, not a complaint that quotes from the testimony or document.

viewed by jurors as proof that Pharmacy Defendants have already been determined responsible for the opioid crisis.

The Court should grant Pharmacy Defendants' motion *in limine* to exclude evidence, including media and other secondhand coverage, relating to criminal or civil investigations involving a Pharmacy Defendant or its employees or other litigation involving a Pharmacy Defendant or its employees.

## VII. The Court Should Preclude Evidence of Settlements.

It is well-settled that evidence of civil and administrative settlement agreements, consent decrees, or fines, as well as media coverage or other secondhand accounts of such evidence, are not admissible under Rule 408.  *See* Dkt. 3420.  Pharmacy Defendants thus requested respectfully that, in light of the weight of authority, *see id.* at 1–4, 8–9, the Court reconsider its ruling in the Track 1A litigation regarding the admissibility of settlement evidence.

But even if the Court adheres to its prior ruling on Rule 408, Plaintiffs offer no convincing argument why the Court should not rule in the Pharmacy Defendants' favor on the arguments that were raised for the first time during the Track 1B motions *in limine*.

*First*, Plaintiffs concede that they should not be permitted to "reference the dollar amount of any settlements."  Dkt. 3464 at 31.  But the Court should also bar Plaintiffs from "generally referenc[ing] the size of a settlement," *id.*, because describing a settlement as "substantial" or "large" implicates the same dangers of unfair prejudice, issue confusion, and misleading the jury as would identifying a specific dollar amount.  *See* Dkt. 3420 at 4–5.  Indeed, Plaintiffs provide no authority for their claim that referencing the general size of a settlement is permissible.

*Second*, Plaintiffs offer no authority to support their argument that "evidence of settlements reached or involving conduct after the relevant time period"—that is, settlements dated *after* a defendant stopped distributing—may be admissible to show notice in an earlier time frame.

Plainly, a document created after conduct occurred cannot itself provide notice at the time the earlier conduct occurred, when the document did not even exist. To the extent Plaintiffs seek to use settlements for reasons other than notice, i.e., "to demonstrate earlier intent or other[, undefined] issues," Dkt. 3464 at 31, they go far beyond the Court's prior ruling and run headlong into Rule 408's prohibition on using settlement agreements for the truth of the matter asserted. Moreover, Plaintiffs do not identify any settlements that would provide insight into a Pharmacy Defendant's earlier intent, or explain how that would even be possible. Nor do they cite a single case admitting evidence of a settlement agreement reached after the conduct at issue in the case.[11]

*Third*, Plaintiffs' arguments for why settlements relating to pharmacies outside of the Counties may be admissible are not persuasive.

Plaintiffs begin by arguing that extraterritorial "settlements that solely involved dispensing conduct are relevant" because those settlements "show that [Pharmacy Defendants] knew diversion was occurring from their own retail pharmacies." Dkt. 3464 at 21. But isolated conduct by particular pharmacies in other, far away jurisdictions—staffed by altogether different pharmacists—are irrelevant to whether diversion occurred at any particular pharmacy in Cuyahoga or Summit county. In other words, the fact that conduct of three or four particular pharmacists at two pharmacies in Sanford, Florida led to a settlement[12] does not mean that diversion occurred in

---

[11] Neither of the cases Plaintiffs cite, *United States v. Franks*, 511 F.2d 25, 36 (6th Cir. 1975), and *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir. 1982), involved the issue of whether to allow evidence of the fact of a subsequent settlement, whether to prove earlier intent or for any other purpose. Instead, each allowed evidence of subsequent acts under Rule 404(b)'s exceptions regarding "other acts" evidence. *See* Dkt. 3464 at 32 & n.30. But as Pharmacy Defendants have established, most of the Rule 404(b) exceptions are, on their face, inapplicable here. *See* Dkt. 3421 at 4 & n.1.

[12] Plaintiffs incorrectly characterize a settlement involving two CVS retail pharmacies in Sanford, Florida as relating to both dispensing and distribution activities. Dkt. 3464 at 35; *id.* at 33 & n.31. While the settlement agreement includes a broad *release* covering all CVS retail pharmacies and distribution centers in Florida, *see* Dkt. 2213-25 at ¶¶ 2, 5, there is no mention in

any other pharmacies, especially pharmacies hundreds of miles away that never have been the subject of an enforcement action.[13]  Moreover, even assuming that pharmacies in other jurisdictions knew that some third parties diverted prescriptions after they were dispensed, that would not show that Pharmacy Defendants lacked effective systems to monitor for suspicious wholesale orders of prescription opioids in Plaintiffs' jurisdictions.  The fact that Plaintiffs would suggest otherwise shows why this motion *in limine* is necessary.  Such evidence is patently inadmissible under Rule 403.[14]

Plaintiffs argue that evidence of extraterritorial settlements are admissible to show that Pharmacy Defendants "had undertaken a deliberate and long-running course of conduct to evade their responsibilities to prevent diversion," as well as "a number of material issues in this case."[15] Dkt. 3464 at 34.  But even assuming that this argument is something more than an "if it happened there, it could have happened here" argument, *see* Dkt. 3464 at 34, Plaintiffs have failed to explain why evidence of the *settlement,* as opposed to the underlying conduct, is necessary.  The only

_____

the recitals of any conduct by any CVS distribution center or relating to any distribution activities, including suspicious order monitoring.

[13] Moreover, the dispensing conduct at issue in those settlement agreements involved different regulations and different standards of care than the regulations and standards that allegedly apply to Pharmacy Defendants' distributing conduct.

[14] Plaintiffs also argue that settlements relating to dispensing activity might "refute the Pharmacy Defendants' repeated defense that they cannot have caused a public nuisance because they did not distribute to unscrupulous pain clinics and pill mills." Dkt. 3464 at 33.  But tellingly, Plaintiffs do not identify a single dispensing settlement that involved a Track 1B Defendant distributing to a pill mill or pain clinic.  And in any event, Plaintiffs could not "refute the Pharmacy Defendants' repeated defense" without relying on the settlements or their contents to prove liability—exactly what Rule 408 prohibits.

[15] Plaintiffs cite to their response to Pharmacy Defendants' motion *in limine* #8 as elaborating on these supposed "material issues." Dkt. 3464 at 34.  But as explained in Pharmacy Defendants' reply in support of motion *in limine* #8, evidence of conduct (including settlements) outside of the Counties that lacks a nexus to both a specific Pharmacy Defendant's conduct and an alleged County injury is both irrelevant to any "material issue" in this case and unduly prejudicial. *See infra* Section VIII.

purpose of mentioning the settlement would be to imply that the settling defendant had committed wrongdoing.  That is precisely why other courts have excluded settlement evidence.  *See, e.g.*, *Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*, 772 F.3d 1031, 103–34 (5th Cir. 2014) (concluding district court did not abuse discretion in granting new trial where "the close fit between the jury's damages award and the settlement offer left it with no fair assurance that the jury had ignored the inadmissible [settlement] evidence"); *Choice v. Coleman*, 2009 WL 4113936, at *3 (E.D. Mich. Nov. 23, 2009) (granting motion *in limine* "to the extent it requests that evidence of the . . . settlement be excluded pursuant to Rule 408 if offered to prove that Defendant acted badly or was liable for wrongdoing").

*Fourth*, without citing any authority, Plaintiffs argue that some unidentified, hypothetical "[s]ettlements or fines involving other corporate entities may be relevant to the extent the Pharmacy Defendants were aware of them, discussing them internally or with others, and/or taking actions based on such settlements."  Dkt. 3464 at 36.  But the mere fact that Pharmacy Defendants were aware of other settlement agreements has no bearing on the question whether a particular defendant knew that a violation had occurred at another company, let alone whether an individual Pharmacy Defendant's own distribution conduct complied with the application regulations and standards of care.  Any limited probative value in demonstrating knowledge to one defendant by showing the settlement of another is far outweighed by the prejudice to the settling defendant of admitting the fact of the settlement.  In any event, Plaintiffs cannot point to any specific settlement agreement involving a non-party that has any connection to a Pharmacy Defendants' conduct. Plaintiffs' argument for denying this aspect of Pharmacy Defendants' motion is based entirely on logically flawed conjecture and speculation, and should be rejected.

*Fifth*, and finally, Plaintiffs represent that they "have no intention of presenting evidence of settlements that are not related to opioid medications," Dkt. 3464 at 37, so this aspect of Pharmacy Defendants' motion has been conceded.

The Court should grant Pharmacy Defendants' motion to exclude evidence relating to settlements, consent decrees, or fines entered into or imposed on a Defendant or its employees and media coverage regarding the same.  At minimum, the Court should prohibit Plaintiffs from offering evidence regarding the five specific categories of settlement-related evidence discussed above and in Plaintiffs' opposition.  *See* Dkt. 3420 at 4–8.

## VIII. The Court Should Preclude Evidence of Extraterritorial Conduct Without Establishing a Specific Nexus to Cuyahoga or Summit County and a Track 1B Defendant.

The Court should bar evidence, testimony, or argument regarding alleged conduct that occurred outside of Cuyahoga or Summit Counties unless Plaintiffs first establish, outside the presence of the jury, a foundation connecting that evidence to both (1) a Defendants' distribution conduct and (2) an alleged harm suffered by one of the Counties.[16]  *See* Dkt. 3421.

In response, Plaintiffs misconstrue and overstate the scope of Pharmacy Defendants' motion.  Plaintiffs argue that granting the motion would result in barring evidence of "the conduct that created a nuisance within the Counties [but] actually occurred outside of the Counties," and activities at distribution centers that "were located outside of the Counties."  Dkt. 3464 at 38.  Not so.  Pharmacy Defendants' motion is clear—it would not exclude conduct that occurred outside the Counties ***provided such conduct is connected*** "to harm suffered by one of the Counties ***and*** a specific Defendant's distribution conduct."  Dkt. 3421 at 1 (emphasis added).

---

[16] Pharmacy Defendants reserve the right to object on an individualized basis to extraterritorial conduct that does have a nexus to a harm suffered by one of the Counties and a Defendants' distribution conduct, should that evidence otherwise be inadmissible.

Plaintiffs' purported evidence that a Pharmacy Defendant's extraterritorial distribution conduct "created a nuisance within the Counties" would plainly fall outside the scope of Pharmacy Defendant's motion.  For example, Plaintiffs cite page 114 of Doc. #2000-22 (Rafalski Rep.) as an example of evidence that, in Plaintiffs' view, would be barred by the motion.  *See* Dkt. 3464 at 38 n.40.  But that document purportedly shows that "Walgreens distributed prescription opioids **to the Counties** from [distribution centers] located" outside the Counties.  *Id.* (emphasis added).  If true, that is clearly a specific nexus to a Plaintiff and a Pharmacy Defendant, even though the distribution originated extraterritorially.

Similarly, Plaintiffs argue that Pharmacy Defendants' motion would bar the admission of "corporate policies and procedures regarding suspicious order monitoring [that] were created and implemented outside of the Counties."  Dkt. 3464 at 38.  But if Pharmacy Defendants' policies are truly nationwide, as Plaintiffs contend, it is self-evident that such policies have a nexus to the Counties—they would govern the conduct of Pharmacy Defendants **in those Counties** that allegedly harmed Plaintiffs.  And to the extent there is a dispute over whether a specific Pharmacy Defendant's policy or policies were nationwide, or were otherwise in effect in one or both Counties, that dispute may be resolved quickly by the parties or, if necessary, the Court outside the presence of the jury.

Plaintiffs also claim that granting this motion would create an unworkable trial procedure.  But that concern is not grounded in reality.  It will be challenging for Plaintiffs to discuss all of the events that occurred **inside** their counties under the time constraints imposed by the Court for trial.  There should not be a need for significant discussion of extraterritorial conduct.  And many categories of extraterritorial events that will likely be discussed (*e.g.* creation of nationwide policies, distribution centers that deliver to the Counties, etc.) can be easily agreed to by the parties

ahead of time. Indeed, a handful of rulings from the Court on certain key categories of disagreement can likely give the parties sufficient guidance to agree on most issues that might come up. To the extent it is unworkable for Plaintiffs to clearly and succinctly articulate why extraterritorial evidence has a nexus to their case, that shows why this motion *in limine* is necessary.

For these reasons, the Court should bar Plaintiffs from introducing evidence of extraterritorial conduct without first establishing, by agreement or at a hearing outside the presence of a jury, a foundation tying such conduct to both a concrete harm in one of the Counties **and** a specific Defendant's distribution conduct.

## IX. The Court Should Limit Testimony of Craig McCann.

As Pharmacy Defendants described in their motion, McCann describes himself as only "a calculator" and "a computer," without any expertise in suspicious order monitoring and who performed calculations according to methods devised by others. MIL Ex. C, McCann Tr. 129:6–15; 135:14–24. Unless there is testimony from another expert that the underlying methodologies are reliable methods for detecting suspicious orders, then McCann's testimony regarding the estimated number of suspicious orders based on those methodologies is irrelevant and should be excluded.

Plaintiffs do not dispute that James Rafalski testified that only one of the five methods used by McCann is "potentially suitable" for detecting suspicious orders. Ex. E, Rafalski Tr. 174:5–10; 356:19–357:2. The other four methodologies, he testified, "aren't suitable suspicious order systems." Ex. E, Rafalski Tr. 174:5–10; 356:19–357:2.

In response, Plaintiffs fail to identify any reason that the jury should hear McCann's testimony based on these other methodologies. No one—not Plaintiffs, not Rafalski, and not

Pharmacy Defendants—will present evidence that these methodologies should have been used to identify suspicious orders.

Plaintiffs misstate the record (apparently relying on Track 1A briefing) when they assert that the other four methodologies "are variations of methodologies **used by several of the defendants in this litigation**." *See* Dkt. 3464 at 46 (emphasis in original).  Even if McCann's calculations were based on variations of methodologies used by Cardinal, McKesson, ABDC, or Mallinckrodt, *id.* at 46 n.50, they have no relevance to any claims against current Pharmacy Defendants. Allowing Plaintiffs to present this evidence would merely confuse the jury.

Nor do Plaintiffs actually identify any evidence that these methodologies are "meant to approximate" methodologies used by Pharmacy Defendants.  Neither McCann nor Rafalski testified in this case that McCann's calculations are based on methodologies used by various defendants in their SOM systems.  To the contrary, McCann testified that he did not even look at any Defendant's SOM system.  MIL Ex. C, McCann Tr. 273:19-22.  And McCann never discussed his work in this case with Rafalski, so Rafalski cannot testify one way or the other regarding McCann's calculations.  *Id.* at 414:6-7 ("I didn't discuss the report with Mr. Rafalski in any way.").  Plaintiffs have only attorney argument connecting McCann's calculations to anything relevant to the case—this is not enough for reliable expert testimony.

Plaintiffs try to confuse the issue by arguing that experts can "rely on a defendant's own internal documents and records in forming their conclusions." *Id.* at 46 n.51.  But McCann did no such thing.  McCann knows only that he was told to use these methodologies by Plaintiffs' counsel, MIL Ex. C, McCann. Tr. 134:16-17 ("From discussions with counsel."), and he cannot testify otherwise at trial.  *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring that an expert's report contain "a complete statement of all opinions the witness will express and the basis and reasons for them.").

If Plaintiffs had an expert to testify that McCann's calculations were based on and thus comparable to some defendant's internal documents and records, perhaps McCann's testimony would be relevant and admissible.  But without such expert testimony, McCann's calculations applying these methodologies must be excluded.

Plaintiffs' arguments also fail factually.  According to Plaintiffs, Rafalski testified that these methods were unreliable because they undercount suspicious orders (compared to the one methodology that he vouched for).  Dkt. 3464 at 47 ("But the reason Mr. Rafalski deems these methodologies unsuitable is because they would significantly undercount 'suspicious orders.'").  But this argument is demonstrably false.  Under McCann's calculations, the fifth method, for example, identifies more suspicious orders than the first, purportedly reliable, method in Cuyahoga County.  *See* McCann Report at 75; *see generally* McCann Report at 56–75.  Admitting evidence of McCann's calculations—which no expert will testify are based on reliable methods of identifying suspicious orders—would confuse the issues before the jury and delay the trial unnecessarily.

Nor are Plaintiffs correct to accuse Defendants of attempting to evade this Court's *Daubert* order.  Defendants are not seeking to limit the admission of Rafalski's opinions or challenging McCann's application of Rafalski's opinions.  Instead, Defendants seek only to limit the admission of McCann's calculations to those methodologies that, based on Rafalski's testimony, might have "any tendency to make a fact more or less probable than it would be without the [calculations." Fed. R. Evid. 401.  In the alternative, even if McCann's calculations under the other algorithms had some marginal probative value, it would be substantially outweighed by the danger of confusing the issues, misleading the jury, undue delay, or wasting time.  Fed. R. Evid. 403.

- 24 -

McCann's opinions should be limited to his calculations based on the Six-Month Trailing Threshold, the only potentially relevant algorithm in light of Rafalski's testimony.

## X.  The Court Should Preclude Evidence or Argument Relating to Participation in Trade Associations.

In seeking to exclude trade association activity, the Pharmacy Defendants made two basic arguments, neither of which Plaintiffs address: (1) trade association activity is not relevant to purpose, character, motive and intent; and (2) the First Amendment fully protects their participation in political activity through trade associations.

As to the former issue, Plaintiffs never identify *any* specific trade association activity or explain how that undisclosed activity relates to—much less supports—intent, knowledge, purpose, and motive, or how any of those is relevant to their public nuisance claim.  At most, Plaintiffs generically say they "intend to demonstrate at trial that the Pharmacy Defendants *deliberately facilitated and encouraged the flow and diversion of opioids into an illegal, secondary market* and that the opioid epidemic was a necessary consequence of their intentional conduct."  Dkt. 3464 at 48 (emphasis added).  The relevant "intent" thus is "deliberately" facilitating *and* encouraging the flow and diversion of opioids *into* an "illegal, secondary market."  But Plaintiffs never explain how any trade association activity relates to that putative intent, and certainly not how any such activity could be imputed to individual Pharmacy Defendants consistent with the standard the Supreme Court set forth in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982).

Their suggestion of concerted activity concerning trade associations likewise lacks a relevant, admissible evidentiary predicate. Plaintiffs argue: "*As part of their plan*, the Pharmacy Defendants used various trade associations as front groups to *coordinate a number of joint strategies to protect the supply chain, influence policy related to opioid drug abuse and diversion*, and subvert their CSA duties."  Dkt. 3464 at 48 (emphasis added).  But, in contrast to the

Manufacturer Defendants, Plaintiffs have never alleged that the Pharmacy Defendants "used various trade associations as front groups." Rather, Plaintiffs' Third Amended Complaint accuses Manufacturer Defendants, "Marketing Defendants," and the "Opioid Marketing Enterprise" of using front groups, not the Pharmacy Defendants.[17]  *See, e.g.,* Cuyahoga Compl., Dkt. 3021, ¶¶ 159, 172, 189, 334–40, 374–75, 391, 396, 424, 430, 795, 818, 859, 861–66, 870, 879, 923–25. Plaintiffs thus are trying to force-fit a theory onto the Pharmacy Defendants that Plaintiffs asserted against other, differently situated defendants.  Moreover, the Track 1B trial will not include any conspiracy claims against the Pharmacy Defendants, and Plaintiffs' supposed "joint strategies" is in any case unfounded.  Plaintiffs have no evidentiary basis to use Pharmacy Defendants' trade association activity to show that they "engaged in unlawful or intentional conduct that caused a substantial interference with a public right," and so Pharmacy Defendants' motion *in limine* cannot be avoided on that basis.  Dkt. 3464 at 50.

As for the Pharmacy Defendants' First Amendment argument, Plaintiffs purportedly seek to introduce evidence of how the Pharmacy Defendants sought to "influence policy related to opioid drug abuse and diversion," which activity plainly is protected by the First Amendment. Dkt. 3464 at 48.  Plaintiffs seek to distinguish Pharmacy Defendants' case authorities by suggesting that "[i]n all these cases, … the plaintiffs were seeking to impose liability on the defendants based solely on their lobbying or trade association activity." Dkt. 3464 at 51.  That does not distinguish those cases from this one. Plaintiffs focus is also on Pharmacy Defendants' membership and constitutionally protected activity.  *Id.* at 48–49 ("Almost all of the Pharmacy Defendants were … active participants in the NACDS" who "provided input and edits as to

---

[17] The Third Amended Complaint alleges that the Distributor Defendants, Marketing Defendants and RICO Supply Chain Defendants participated in HDA.  *See* Cuyahoga Compl., Dkt. 3021 ¶¶ 517–18, 523, 897, 953.

NACDS's policy decisions and positions.")  Plaintiffs' claim that "they are not seeking to impose liability on the Pharmacy Defendants based on their mere participation in trade associations or lobbying efforts," *id*. at 52, rings hollow, given that they defended against this motion relying on Defendants' participation in NACDS and lobbying efforts.

Conclusory rhetoric aside, Plaintiffs' opposition does not warrant deferral of this issue until the time of trial.  *Id*.  The Court should preclude Plaintiffs from misleading and confusing the jury with evidence relating to protected trade association activity.

## CONCLUSION

For all the foregoing reasons, Pharmacy Defendants request respectfully that the Court grant Pharmacy Defendants' motions *in limine* Nos. 1–10.  *See* Dkts. 3413–18, 3420–21, 3425–26.

 Dated:  September 28, 2020                     Respectfully submitted,

                                               /s/ Eric R. Delinsky (consent)
                                               Eric R. Delinsky
                                               Alexandra W. Miller
                                               ZUCKERMAN SPAEDER LLP
                                               1800 M Street, N.W., Suite 1000
                                               Washington, D.C. 20036
                                               Tel:  (202) 778-1800
                                               Fax:  (202) 822-4106
                                               edelinsky@zuckerman.com
                                               smiller@zuckerman.com

                                               *Attorneys for CVS Indiana, L.L.C. and CVS Rx Services, Inc.*

                                               /s/ Timothy D. Johnson  (consent)
                                               Timothy D. Johnson (0006686)
                                               CAVITCH FAMILO & DURKIN, CO. LPA
                                               Twentieth Floor
                                               1300 East Ninth Street
                                               Cleveland, Ohio  44114
                                               (216)621-7860

(216)621-3415 Fax
tjohnson@cavitch.com

*Attorney for Defendant Discount Drug
Mart, Inc.*

/s/ Robert M. Barnes (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-
shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc., and
HBC Service Company*

/s/ Kelly A. Moore (consent)
Kelly A. Moore, Esq.
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001

John P. Lavelle, Jr., Esq.
John.lavelle@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
T: 215-963-5917
F: 215-963-5001

*Counsel for Rite Aid of Maryland, Inc.
d/b/a Rite Aid Mid-Atlantic Customer
Support Center*

/s/ Kaspar J. Stoffelmayr (consent)
Kaspar J. Stoffelmayr

Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
Email:
kaspar.stoffelmayr@bartlitbeck.com
Email:
brian.swanson@bartlitbeck.com
Email: kate.swift@bartlitbeck.com
Email: sharon.desh@bartlitbeck.com
Email: sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Phone: (303) 592-3100
Fax: (303) 592-3140
Email: alex.harris@bartlitbeck.com

*Counsel for Defendants Walgreen Co.*

/s/   John M. Majoras
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*