UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| *Track One Cases:* | |
| *County of Summit, Ohio v. Purdue Pharma L.P.*, Case No. 18-OP-45090 (N.D. Ohio); | |
| *County of Cuyahoga v. Purdue Pharma L.P.*, Case No. 17-OP-45004 (N.D. Ohio) | |

# REPLY IN SUPPORT OF PLAINTIFFS' OMNIBUS MOTION *IN LIMINE* AND MOTION TO MODIFY PRIOR EVIDENTIARY RULINGS (DOC. #3419) AND MEMORANDUM IN SUPPORT

September 28, 2020

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ..................................................................................................................... 1

A.   PLAINTIFFS' MIL NO. 5 (REFERENCES TO USE OF PRIVATE AIRCRAFT BY EXPERT
     WITNESSES).…........................................................................................................ 1

B.   PLAINTIFFS' MIL NO. 23 (LEARNED INTERMEDIARY DOCTRINE) ......................... 2

C.   PLAINTIFFS' MIL NOS. 24 & 28-37 (REFERENCES TO PLAINTIFFS' FAILURE TO MITIGATE
     DAMAGES, INDICTMENTS, INVESTIGATIONS, AND ALLEGATIONS OF GOVERNMENT
     CORRUPTION, AND REFERENCES TO DEATHS OF INDIVIDUALS IN THE CUSTODY OF
     PLAINTIFFS' JAILS OR SHERIFFS' OFFICES) ........................................................... 4

D.   PLAINTIFFS' MIL NOS. 38-39 (REFERENCES TO MATTERS FOR WHICH DEFENDANTS HAVE
     WITHHELD SOME OR ALL RELATED DISCOVERY AND ANY EVIDENCE TO SUPPORT
     AFFIRMATIVE DEFENSES OR CLAIMS THAT DEFENDANTS MET ALL PERTINENT REGULATORY
     REQUIREMENTS AND/OR THAT THEIR CONDUCT WAS BASED ON ALLEGED DEA GUIDANCE
     TO THE EXTENT RELATED DISCOVERY WAS WITHHELD AS PRIVILEGED) .............................. 6

E.   PLAINTIFFS' MIL NO. 40 (REFERENCES TO ANY LITIGATION BETWEEN SUMMIT OR
     CUYAHOGA COUNTY AND ITS PAST OR PRESENT EMPLOYEES) ........................................... 17

F.   PLAINTIFFS' MIL NO. 41 (REFERENCES TO THE FIRING OF ANY COUNTY EMPLOYEE BY
     SUMMIT OR CUYAHOGA COUNTY) .................................................................... 17

G.   PLAINTIFFS' MIL NO. 42 (REFERENCES TO THE EFFORTS OR ACTIONS OF ANY DEFENDANT,
     OR ITS AFFILIATES OR EMPLOYEES, IN CONNECTION WITH COVID-19, OR THE IMPACT OF
     COVID-19 ON ANY DEFENDANT, OR ITS AFFILIATES OR EMPLOYEES)............................. 18

H.   PLAINTIFFS' MIL NO. 43 (REFERENCES TO PHARMACY CLASS ACTIONS AND SIMILAR
     LITIGATION) ................................................................................................... 20

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Alvarez v. King Cty.*,
   No. C16-0721RAJ, 2017 WL 3189025 (W.D. Wash. July 27, 2017) ....................................20

*Andover Healthcare, Inc. v. 3M Co.*,
   No. CV 13-843-LPS, 2016 WL 6404111 (D. Del. Oct. 27, 2016) ..........................................15

*Arista Records LLC v. Lime Grp. LLC*,
   No. 06 CV 5936 KMW, 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011).....................11, 15, 16

*Barker ex rel. U.S. v. Columbus Reg'l Healthcare Sys., Inc.*,
   No. 4:12-CV-108 CDL, 2014 WL 4287744 (M.D. Ga. Aug. 29, 2014) ..........................11, 14

*Beery v. Thomson Consumer Elecs., Inc.*,
   218 F.R.D. 599 (S.D. Ohio 2003) ......................................................................................9, 11

*Cady v. Cty. of Arenac*,
   No. 07-CV-11369, 2007 WL 4181563 (E.D. Mich. Nov. 27, 2007), *objections
   overruled,* No. 07-11369-BC, 2008 WL 126584 (E.D. Mich. Jan. 14, 2008) ..........................9

*Canon, Inc. v. Color Imaging, Inc.*,
   227 F. Supp. 3d 1303 (N.D. Ga. 2016) ..................................................................................15

*Chabot v. Walgreens Boots All., Inc.*,
   No. 1:18-CV-2118, 2020 WL 3410638 (M.D. Pa. June 11, 2020)...........................................12

*Chen-Oster v. Goldman, Sachs & Co.*,
   293 F.R.D. 547 (S.D.N.Y. 2013) ...........................................................................................10

*Clevenger v. Dillard's Dep't Stores, Inc.*,
   No. CIV.A.1:02-CV-558, 2007 WL 127978 (S.D. Ohio Jan. 11, 2007) ...................................9

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
   259 F.3d 1186 (9th Cir. 2001) ...............................................................................................15

*Cox v. Adm'r U.S. Steel & Carnegie*,
   17 F.3d 1386 (11th Cir. 1994), *opinion modified on reh'g on other grounds,* 30 F.3d
   1347 (11th Cir. 1994).............................................................................................10, 12, 14

*Denman v. Youngstown State Univ.*,
   No. 4:05CV1910, 2007 WL 2781351 (N.D. Ohio Sept. 21, 2007) .........................................11

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*,
    No. C 06-3359 JF (RS), 2009 WL 10696044 (N.D. Cal. June 23, 2009) ..............................16

*Edwards v. KB Home*,
    No. 3:11-CV-00240, 2015 WL 4430998 (S.D. Tex. July 18, 2015) ......................................13

*Gales v. Leaf River Cellulose, LLC*,
    No. 3:16-CV-953-HSO-JCG, 2017 WL 11451203 (S.D. Miss. Nov. 8, 2017) ................11, 12

*Gerling & Assocs., Inc. v. Gearhouse Broad. Pty Ltd.*,
    No. 2:10-CV-1074, 2013 WL 5964397 (S.D. Ohio Nov. 8, 2013) ......................................18

*In re Lott*,
    424 F.3d 446 (6th Cir. 2005) ......................................................................................9, 13

*In re United Shore Fin. Servs., LLC*,
    No. 17-2290, 2018 WL 2283893 (6th Cir. Jan. 3, 2018) ...............................................9, 13

*Maar v. Beall's, Inc.*,
    237 F. Supp. 3d 1336, 1340 (S.D. Fla. 2017) ..................................................................10, 14

*Manning v. Buchan*,
    357 F. Supp. 2d 1036 (N.D. Ill. 2004) ...........................................................................10, 15

*Matsuura v. E.I. du Pont de Nemours & Co.*,
    No. CV 00-00328, 2006 WL 8436370 (D. Haw. Dec. 27, 2006) ..........................................16

*New Phoenix Sunrise Corp. v. Comm'r*,
    408 F. App'x 908 (6th Cir. 2010) ..............................................................................9, 10, 13

*Phelps v. MC Commc'ns, Inc.*,
    No. 2:11-CV-00423-PMP, 2013 WL 3944268 (D. Nev. July 22, 2013) ..............................11

*Ross v. Am. Red Cross*,
    No. 2:09-CV-00905-GLF, 2012 WL 2004810 (S.D. Ohio June 5, 2012), *aff'd,* 567 F.
    App'x 296 (6th Cir. 2014) ...........................................................................................18

*Ross v. City of Memphis*,
    423 F.3d 596 (6th Cir. 2005) ......................................................................................9, 13

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
    No. 1:06CV2781, 2009 WL 10689369 (N.D. Ohio Oct. 23, 2009) .......................................15

*Scott v. Chipotle Mexican Grill, Inc.*,
    67 F. Supp. 3d 607, 611 (S.D.N.Y. 2014) ..................................................................9, 10, 12

*Traficant v. Comm'r*,
    884 F.2d 258 (6th Cir. 1989) ......................................................................................15, 16

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991)................................................................9, 10, 12, 13

*United States v. Exxon Corp.*,
    94 F.R.D. 246 (D.D.C. 1981).............................................................10, 11

*United States v. Ohio Edison Co.*,
    No. C2-99-1181, 2002 WL 1585597 (S.D. Ohio July 11, 2002)......................................11, 12

*United States v. Ormat Indus., Ltd.*,
    No. 314CV00325RCJVPC, 2016 WL 4107682 (D. Nev. Aug. 1, 2016) .............10, 12, 14, 16

*United States v. Sixty Thousand Dollars ($60,000.00) in U.S. Currency*,
    763 F. Supp. 909 (E.D. Mich. 1991).......................................................16

*Wellin v. Wellin*,
    No. 2:13-CV-1831-DCN, 2016 WL 7626536 (D.S.C. Mar. 8, 2016) ....................................12

*William F. Shea, LLC v. Bonutti Research, Inc.*,
    No. 2:10-CV-00615-GLF, 2013 WL 2424382 (S.D. Ohio June 4, 2013) ...............................18

*Zander v. Orlich*,
    No. 2:14-CV-400-PRC, 2017 WL 2972452 (N.D. Ind. July 12, 2017)..................................20

**OTHER AUTHORITIES**

http://fortune.com/fortune500/............................................................1

http://ilrg.com/nlj250 .........................................................................1

Plaintiffs file this Reply in support of their Omnibus Motion *in Limine* and Motion to Modify Prior Evidentiary Rulings to address certain specific points raised by the Pharmacy Defendants in their response.  In the interests of brevity and judicial efficiency, Plaintiffs will not reiterate the facts, law, and argument set forth in their Motion, but instead incorporate them by reference as if fully set forth herein.  *See* Doc. #3419.  The Court should not interpret Plaintiffs' lack of a response to a particular point as conceding that the Pharmacy Defendants' arguments are correct, but instead as an acknowledgement that Plaintiffs' Motion adequately stated the reason for the MIL and nothing further needs to be argued.

## ARGUMENT

### A.  Plaintiffs' MIL No. 5 (references to use of private aircraft by expert witnesses).

The bulk of the Pharmacy Defendants' argument is centered on the purported unfairness of Plaintiffs' experts being able to testify live while the Pharmacy Defendants' experts testify remotely.  They claim that "[m]any defense counsel and defense witnesses do not have access to private planes[.]"  Doc. #3465 at p. 2.  Their complaints seem somewhat disingenuous given that four of the six Pharmacy Defendants (or their parent companies) are Fortune 500 companies: Walmart (ranked #1); CVS Health (ranked #5); Walgreens Boots Alliance (ranked #19); Rite Aid (ranked #150).[1]  Similarly, Jones Day (Walmart's counsel), Morgan, Lewis & Bockius LLP (Rite Aid of Maryland's counsel), and King & Spalding (where defense expert Bradshaw works) are some of the largest law firms in the United States (ranked #6, #9, and #24, respectively).[2]  Additionally, even without access to private planes, at least five of the Pharmacy Defendants'

---

[1]    *See* http://fortune.com/fortune500/ (last accessed 9/18/20).

[2]    *See* http://ilrg.com/nlj250 (last accessed 9/18/20).

1

experts live within half a day's driving distance from the courthouse (*e.g.*, Bell (Boston); Bialecki (Chicago); Bradshaw (Washington, D.C.); Murphy (Chicago); Ross (Boston)). Thus, if these experts truly wished to testify live, they could do so and still avoid commercial air travel.

Moreover, contrary to the Pharmacy Defendants' assertions, there is no need to introduce evidence of an expert's private air travel to explain "the disparity in in-person testimony" and "to at least partially mitigate the prejudice to Pharmacy Defendants." Doc. #3465 at p. 2. This Court previously stated it would explain to the jury why certain witnesses may be testifying remotely:

> Again, I've said, any witness who wants to testify by video, wherever they are in the country, then put them on by video. I'll tell the jury that we're doing a lot of things differently because of the pandemic. Everyone knows it. And one of the things we're doing differently is we'll have a lot of witnesses by video, and they're to give the witness exactly the same attention as if he or she was sitting right in front of them in the courtroom.

Doc. #3453 (9/3/20 Status Conf. Tr.) at 18:17-25.

Finally, at a minimum, there is no need to identify whose private plane an expert flew on. In other words, if the issue is that private air travel constitutes expert compensation, it is sufficient to note that the expert was flown by private aircraft at no cost to the expert. The identity of the owner of the plane on which the expert flew is of no relevance and unfairly prejudicial.

For these reasons, Plaintiffs request that the Court reconsider its prior ruling and grant Plaintiffs' MIL No. 5 in its entirety.

**B. Plaintiffs' MIL No. 23 (learned intermediary doctrine).**

Plaintiffs do not dispute that causation is an issue to be determined by the jury. The point here is that the learned-intermediary doctrine has nothing to do with whether the Pharmacy Defendants' **distribution** conduct caused a public nuisance. Their distribution conduct "implicates legal obligations independent of manufacturers, physicians, or any other participant in the opioid supply chain." Doc. #3403 (CT3 Order Denying MTDs) at p. 32; *see also id.* at p. 31

n.34 ("The Court has also concluded the Pharmacies cannot transfer to prescribers their liability (if any) to Plaintiffs, because Plaintiffs' liability theory relies on legal obligations and evidence independent of prescriber conduct.") (citing Doc. #3246 (Order Striking Third-Party Complaints) at pp. 4-5).  The Pharmacy Defendants have cited no legal authority "that shifts their obligation to prevent diversion to any other person or entity, or otherwise establishes that prescribers are an intervening or superseding cause of Plaintiffs' alleged injuries."  *Id*. at p. 32.  Whether or not the learned-intermediary doctrine breaks the causal chain for claims against a manufacturer based on its marketing conduct is irrelevant because the Manufacturer Defendants are not parties to the upcoming trial nor is their nuisance liability being decided by the jury.

The Pharmacy Defendants focus on the Court's use of the term "Defendants" in its prior Evidentiary Order as indicating that its ruling was not limited to Manufacturer Defendants. Doc. #3465 at p. 2.  But the entirety of the Court's ruling demonstrates that the Court was describing the doctrine's relevance to claims based on **marketing** conduct:

> Plaintiffs seek to preclude Defendants from asserting that the "Learned Intermediary Doctrine" absolves Defendants from liability.  Under this doctrine, so long as a **Manufacturer** of a prescription drug **has properly warned and instructed the physician**, *i.e.*, a Learned Intermediary, **the Manufacturer** "may reasonably assume that the physician will exercise his informed judgment in the patient's best interests."
>
> Here, whether Defendants **provided doctors with false and misleading information** is a central issue for the jury to decide; thus evidence of Defendants' **warnings to doctors** is clearly relevant.  Similarly, whether the advice of doctors breaks the causal chain is a question for the jury.  **Thus**, Defendants may argue **their warnings were accurate** and whatever happened after that is the doctor's responsibility.  However, Defendants may not assert the mere existence of the Learned Intermediary Doctrine works to insulate them from liability on Plaintiffs' claims.  **The overriding question is whether the Defendants' warnings were adequate**.

Doc. #3058 at pp. 45-46 (internal citation and footnote omitted) (emphasis added).  Unlike in Track 1A, Plaintiffs are not asserting any marketing-based claims in the upcoming trial.  Plaintiffs are

not seeking to hold the Pharmacy Defendants liable for false marketing or inadequate warnings to doctors. Thus, the learned-intermediary doctrine is entirely irrelevant to the claims at issue in Track 1B. Accordingly, Plaintiffs ask the Court to reconsider its prior ruling and grant Plaintiffs' MIL No. 23.

### C. Plaintiffs' MIL Nos. 24 & 28-37 (references to Plaintiffs' failure to mitigate damages, indictments, investigations, and allegations of government corruption, and references to deaths of individuals in the custody of Plaintiffs' jails or Sheriffs' offices).

The only issues to be decided by the jury in the upcoming trial are: the existence of a nuisance; whether the **Pharmacy Defendants'** conduct was a substantial factor in causing **that nuisance**;[3] and whether that conduct was intentional or unlawful. The evidence at issue in Plaintiffs' MIL Nos. 24 & 28-37 has no relevance to these determinations.

The Pharmacy Defendants claim that evidence of Plaintiffs' conduct "is relevant to both causation and apportionment of harm." Doc. #3465 at p. 4. But "apportionment of harm" will not be decided in the upcoming trial. And with respect to causation, the Pharmacy Defendants are conflating two different issues: whether the Pharmacy Defendants' conduct caused a public nuisance in the relevant jurisdictions; and whether (and the extent to which) the public nuisance they caused harmed Plaintiffs. The jury in the upcoming trial will only be determining the former question.[4] The evidence sought to be excluded under Plaintiffs' MIL Nos. 24 & 28-37 could only

---

3    As this Court has recognized: "There may be multiple causes of a public nuisance. The fact that some other cause or causes combined with a Defendant's conduct in creating the public nuisance does not relieve that Defendant from liability if the Plaintiff can prove that the type of conduct the Defendant engaged in was a ***substantial factor*** in creating the public nuisance." Doc. #3449-1 (Court's Proposed Jury Instructions) at p. 7 (emphasis in original).

4    The Pharmacy Defendants point to language from this Court's prior summary judgment ruling stating that: (i) "[t]o prove an absolute public nuisance cause of action, evidence must establish . . . a causal relationship between a defendant's conduct and a plaintiff's injury[;]" and (ii) "any apportionment decision depends on factual issues to be determined at trial[.]" Doc. #2572 (Order Denying Ps' Nuisance MSJ) at pp. 2-3, 6. But they are ignoring the fact that the trial in this case has been
(footnote continues on next page)

4

be potentially relevant, if at all, to the latter question.

The Pharmacy Defendants' arguments are entirely focused on the purported relevance of such evidence to whether the Pharmacy Defendants caused or contributed to specific harms suffered by Plaintiffs.  Doc. #3465 at pp. 4-5.[5]  But they utterly fail to explain how such evidence is relevant to the actual causation question being decided by the jury: whether the Pharmacy Defendants caused a public nuisance.  Doc. #3449-1 (Court's Proposed Jury Instructions) at p. 4 ("Please remember that you are being asked to determine only whether one or more of the Defendants caused a public nuisance.  You are not being asked to determine whether there should be a remedy for this claim, or what that remedy should be.  If you find that one or more of the Defendants caused a public nuisance, the Court will determine the remedy."), p. 7 ("Under both of the two ways of proving a public nuisance, a Plaintiff must prove by the greater weight of the evidence that a Defendant's conduct *caused* an interference with a right to public health or safety.") (emphasis in original).  Because the evidence sought to be precluded has no relevance to the issues to be tried in the upcoming trial, Plaintiffs ask that the Court reconsider its prior rulings and grant Plaintiffs' MIL Nos. 24 & 28-37.

---

bifurcated.  To the extent one or more of the Pharmacy Defendants is found liable for public nuisance in the upcoming liability trial, the Court will then hold a **separate** trial where issues related to Plaintiffs' injuries and any apportionment of remedies will be resolved.

[5]  For example, the Pharmacy Defendants argue that evidence relating to the death of Brittany Rae Schlarb "is potentially relevant to rebut claims that Plaintiffs provided adequate care and treatment to individuals in their jails who have histories of substance abuse and/or addiction."  Doc. #3465 at p. 5.  Similarly, they argue that evidence of the death of Aniya Day Garrett is relevant to their argument that some of the negative impacts to Plaintiffs' agencies were caused by Plaintiffs' own conduct rather than by the opioid epidemic.  *Id.* at pp. 4-5.  But even assuming, *arguendo*, that such evidence is potentially relevant to determining the extent of Plaintiffs' harm attributable to the Pharmacy Defendants' conduct, that issue is not being determined in the upcoming trial.

**D. Plaintiffs' MIL Nos. 38-39 (references to matters for which Defendants have withheld some or all related discovery and any evidence to support affirmative defenses or claims that Defendants met all pertinent regulatory requirements and/or that their conduct was based on alleged DEA guidance to the extent related discovery was withheld as privileged).**

The Pharmacy Defendants are misinterpreting the purpose of Plaintiffs' MIL Nos. 38 & 39.  By these MILs, Plaintiffs are not seeking to re-litigate whether the Pharmacy Defendants' prior privilege assertions were appropriate, or even whether they waived privilege at any point prior to trial.[6]  Rather, Plaintiffs seek a ruling that, to the extent the Pharmacy Defendants successfully withheld discovery regarding certain subject matters on the basis of attorney-client privilege, they be prohibited from offering argument or evidence **at trial** that in fairness would require examination of those protected communications.[7]  In particular, Plaintiffs anticipate that, at trial, the Pharmacy Defendants may attempt to rebut Plaintiffs' contention that they intentionally caused or contributed to a public nuisance by affirmatively arguing, or offering evidence to show, that they believed their distribution conduct was lawful (*e.g.*, that they believed their SOMS programs complied with the CSA, etc.), and/or that they did not know their distribution conduct was unlawful.  They should not be permitted to offer such evidence or argument.

---

[6]  Plaintiffs do not concede that the Pharmacy Defendants' prior assertions of privilege were proper.  Nor do they concede that the Pharmacy Defendants have accurately described the Special Master's prior discovery rulings related to privilege.  *See, e.g.,* Doc. #1498 (Discovery Ruling 14, Part 5) at pp. 18-19 ("Plaintiffs' make a strong argument that 'privilege may be implicitly waived when defendant asserts a claim that in fairness requires examination of the protected communications,' . . . for this additional reason, the Special Master concludes Cardinal must produce the Dendrite Audit, along with other, related documents.") (citations omitted).  However, for purposes of these MILs, these issues are irrelevant.  The Special Master's prior acceptance as well as his purported rejection of the sword/shield argument was in the context of what evidence would be produced **in discovery**.  Plaintiffs' MIL Nos. 38 & 39 relate to what arguments and evidence the Pharmacy Defendants are permitted to offer **at trial**, given that they successfully withheld certain discovery based on privilege.

[7]  Plaintiffs also request that, as a general matter, the Pharmacy Defendants be held to the Court's prior rulings that the parties may only introduce evidence at trial that was produced in discovery. *See, e.g.,* Doc. #1055 (10/23/18 DR 8) at p. 5; Doc. #1147 (11/21/18 Order) at p. 1, ¶ 1; Doc. #3058 (Evidentiary Order) at p. 41.

During their depositions, many of the Pharmacy Defendants' employees, executives, and corporate representatives explicitly testified that they relied, at least in part, on the opinions of counsel in determining their CSA duties and/or the adequacy of their SOMS programs.  *See, e.g.,* Doc. #1971-8 (Swords Tr.) (WAG) at 103:15 – 104:3 ("Q: So, that was the – your education and understanding of the details of Walgreens' responsibilities under the Controlled Substance Act came from counsel, Walgreens' counsel?  A: With respect to suspicious order monitoring and distributing, yes."), 104:10-17, 105:5-7, 227:3-9; Doc. #2169-43 (Vanelli Tr.) (CVS) at 153:23 – 154:5 ("Q: And the reason why you did that is because that's required in order to meet your obligations under the DEA regulations, isn't it?  A: The reason we complete that is it was guidance from legal counsel as part of the team that these are requirements that we must meet.") (internal objection omitted); Doc. #1959-20 (G. Chapman Tr.) (Walmart) at 44:14 – 46:14, 203:10-15, 204:22 – 205:14, 250:23 – 251:9 ("Q: So the basis for your conclusion that Walmart was complying with the DEA's regulations, when compliance took over SOMs, is based exclusively on reports that you received from Ms. Spruell and Ms. Johnson?  A: It would have been their analysis, and legal would have been involved at some point in the analysis of our requirement under the CFR.") (internal objection omitted), 252:4 – 253:15, 258:1-14; Doc. #1971-12 (Tsipakis Tr.) (HBC) at 90:12 – 92:15 ("Q: Compliance with the Controlled Substance Act and compliance with the regulation we looked at earlier regarding having a suspicious order monitoring program would be some of the areas that are discussed with the two legal counsel that you just mentioned?  A: Sure . . .").[8]  Yet the Pharmacy Defendants have repeatedly asserted attorney-client privilege

---

[8]    *See also* Doc. #1959-9 (11/30/18 Bratton Tr.) (WAG) at 49:18 – 50:11, 50:13-18, 50:21 – 53:13; Doc. #1961-16 (Domzalski Tr.) (WAG) at 43:7-13, 44:11-19, 45:14-21, 50:24 – 51:12, 81:22 – 82:14, 114:11-15, 133:2 – 134:2, 155:18 – 156:7, 157:19 – 158:3, 216:24 – 217:8, 218:1-11; Doc. #2169-11 (Daugherty Tr.) (WAG) at 111:5-16, 126:20 – 127:2, 143:1-9; Doc. #2169-16 (George Tr.) (WAG) at 68:13-21, 68:22 – 69:2; Doc. #2169-30 (Nicastro Tr.) (CVS) at 228:2 – 233:17; Doc. #2169-28 (Moffatt (footnote continues on next page)

when questioned on these matters.  *See, e.g.,* Doc. #1971-8 (Swords Tr.) (WAG) at 100:16 – 103:10, 104:4 – 107:5, 108:9-20, 127:12 – 130:9, 221:18 – 222:2, 225:11 -226:14 ("Q: Correct, sir?  You've been instructed not to testify today repeatedly about your educational process of what the policies and procedures were at Walgreens on suspicious order monitoring when you took over, correct, sir? . . . .  A: I have been instructed not to divulge attorney-client privilege.  Q: About your communications with counsel to educate yourself on the details on what Walgreens' suspicious order monitoring policies and procedures were, correct, sir?  A: Again, I've been instructed by my attorney not to divulge the conversations that took place under attorney-client privilege.  Q: About suspicious order monitoring policies and procedures at Walgreens, correct, sir?  A: About many things including those.") (internal objections omitted).[9]

---

Tr.) (CVS) at 60:17 – 61:9; Doc. #2169-20 (P. Hinkle Tr.) (CVS) at 248:18-21; Doc. #2169-12 (Devlin Tr.) (CVS) at 189:24 – 190:12; Doc. #1971-15 (Vernazza Tr.) (CVS) at 18:10 – 19:4; Doc. #1963-3 (D. Hodges Tr.) (Walmart) at 195:13 – 196:2, 254:8 – 255:2, 255:24 – 256:11, 260:14 – 261:15; Doc. #1962-30 (1/22/19 Hiland Tr.) (Walmart) at 449:15 – 450:6, 452:6-12; Doc. #1961-18 (Ducote Tr.) (Walmart) at 108:11-16, 188:6-23; Doc. #1956-16 (Beam Tr.) (Walmart) at 31:20-23, 32:19 – 33:18; Doc. #2169-33 (Palmer Tr.) (RA) at 75:4-10, 103:9-13; Doc. #1962-21 (1/30/19 Hart Tr.) (RA) at 60:8 – 63:21; Doc. #1959-18 (Carlson Tr.) (HBC) at 59:2-21, 68:23 – 69:7, 88:16-23, 184:5 – 185:2; Doc. #1971-10 (Tommasi Tr.) (HBC) at 48:19 – 49:23; Doc. #1962-27 (Heiser Tr.) (HBC) at 23:24 – 24:10, 31:10-23, 41:16-21; Doc. #1971-5 (Strang Tr.) (DDM) at 35:14-15; Doc. #1970-2 (Ratycz Tr.) (DDM) at 27:21-24, 110:16-20.

[9]  *See also* Doc. #1959-9 (11/30/18 Bratton Tr.) (WAG) at 50:3-11, 52:1-9; Doc. #2169-11 (Daugherty Tr.) (WAG) at 111:5 – 112:13, 126:6 – 127:2, 155:8 – 156:20, 159:5-11; Doc. #3026-37 (Meritello Tr.) (WAG) at 110:5 – 113:7, 209:6 – 210:18; Doc. #3027-7 (Polster Tr.) (WAG) at 189:1 – 191:10; Doc. #2169-30 (Nicastro Tr.) (CVS) at 193:9 – 194:1; Doc. #2169-28 (Moffatt Tr.) (CVS) at 58:6 – 62:11; Doc. #2169-20 (P. Hinkle Tr.) (CVS) at 239:24 – 240:18, 248:5-16; Doc. #2169-12 (Devlin Tr.) (CVS) at 189:24 – 190:22; Doc. #1971-15 (Vernazza Tr.) (CVS) at 18:10-17, 20:12 – 21:17; Doc. #1963-3 (D. Hodges Tr.) (Walmart) at 97:20 – 100:24; Doc. #1962-30 (1/22/19 Hiland Tr.) (Walmart) at 447:15 – 449:14, 450:7 – 451:4, 452:13 – 455:6; Doc. #1961-18 (Ducote Tr.) (Walmart) at 105:1 – 108:16, 189:4 – 190:12; Doc. #1959-20 (G. Chapman Tr.) (Walmart) at 45:18-25, 46:15 – 50:1, 116:10-20, 203:23 – 204:16, 265:1-18, 269:21 – 270:18, 274:1 – 276:14, 280:5 – 281:7, 282:10 – 283:5, 359:14-21; Doc. #1956-16 (Beam Tr.) (Walmart) at 293:16 – 294:2; Doc. #2169-33 (Palmer Tr.) (RA) at 85:9-21, 102:23 – 103:8, 104:6 – 105:7, 110:2 – 112:18; Doc. #1962-21 (1/30/19 Hart Tr.) (RA) at 62:6 – 63:5; Doc. #1971-12 (Tsipakis Tr.) (HBC) at 91:14 – 92:3; Doc. #1971-10 (Tommasi Tr.) (HBC) at 25:3 – 26:7, 27:9-14, 28:2-6.

The Pharmacy Defendants should not be permitted to withhold evidence of their communications with counsel regarding these issues and then offer testimony at trial regarding their understanding of the CSA's regulations or their belief that their SOMS programs complied with same.[10]  It is axiomatic that the attorney-client privilege cannot be used as both a shield and a sword.  *See In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005); *New Phoenix Sunrise Corp. v. Comm'r*, 408 F. App'x 908, 919 (6th Cir. 2010).  When a party injects an issue or makes an assertion which in fairness requires disclosure of otherwise privileged communications, the privilege is implicitly waived.  *See Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005) ("'[T]he privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications.'") (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *In re United Shore Fin. Servs., LLC*, No. 17-2290, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018) (same).[11]  "'Forfeiture of this type is premised on the *unfairness* to the adversary of *having to defend* against the privilege holder's claim without access to pertinent privileged materials that might refute the claim.'"  *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 611 (S.D.N.Y.

---

[10]  The Pharmacy Defendants' argument that Plaintiffs' MIL Nos. 38 & 39 "are directly at odds" with the Court's prior rulings regarding the admissibility of DEA-related evidence is without merit.  Doc. #3465 at p. 7.  These MILs do not seek to exclude SOMS-related evidence based on relevance.  Rather, they seek to preclude the Pharmacy Defendants from using their attorney-client privilege as both a sword and a shield.

[11]  *See also Beery v. Thomson Consumer Elecs., Inc.*, 218 F.R.D. 599, 604 (S.D. Ohio 2003); *Clevenger v. Dillard's Dep't Stores, Inc.*, No. CIV.A.1:02-CV-558, 2007 WL 127978, at *4 (S.D. Ohio Jan. 11, 2007); *Cady v. Cty. of Arenac*, No. 07-CV-11369, 2007 WL 4181563, at *2–3 (E.D. Mich. Nov. 27, 2007) (plaintiff waived privilege by raising issue of whether he voluntarily signed an agreement; "Plaintiff's allegations that he signed the Agreement involuntarily 'are tantamount to a claim that [his] attorney did not give [him] accurate legal advice.'. . .  I further conclude that '[i]t would be unfair to allow [Plaintiff] to make this claim without permitting the opposing parties to investigate [his] attorney's version of the relevant events.'") (citation omitted), *objections overruled,* No. 07-11369-BC, 2008 WL 126584 (E.D. Mich. Jan. 14, 2008).

2014) (citation omitted) (emphasis in original).  *See also Manning v. Buchan*, 357 F. Supp. 2d 1036, 1050 (N.D. Ill. 2004).

The clearest example of this type of waiver is when a defendant expressly asserts a reliance on counsel defense.  *See, e.g., New Phoenix*, 408 F. App'x at 919; *United States v. Ormat Indus., Ltd.*, No. 314CV00325RCJVPC, 2016 WL 4107682, at *4 (D. Nev. Aug. 1, 2016) ("The 'quintessential example' is a defendant who raises an affirmative defense that he relied on the advice of counsel, and is thereby deemed to have waived the attorney-client privilege with respect to that advice.").[12]  But privilege may also be waived when a defendant asserts a good faith belief in the lawfulness of its actions.  *See, e.g., Cox*, 17 F.3d at 1418–20, 1423 ("Where a party asserts that he believed his actions to be lawful, he waives the attorney-client privilege as to what his attorney told him about the legality of his actions[.]"); *Bilzerian*, 926 F.2d at 1292 ("This waiver principle is applicable here for [defendant's] testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue.  His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.");[13]

---

[12]  However, "[t]he defendant need not raise an affirmative defense to inject a new issue into the case, although it frequently occurs that way." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994), *opinion modified on reh'g on other grounds,* 30 F.3d 1347 (11th Cir. 1994).

[13]  *See also Maar v. Beall's, Inc.*, 237 F. Supp. 3d 1336, 1340 (S.D. Fla. 2017) ("It is the articulation of a claim or defense explicitly *relying* on the litigant's subjective thinking, as potentially influenced by advice from legal counsel, that activates the doctrine of implied waiver."); *Scott*, 67 F. Supp. 3d at 611 ("'[A]dvice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim o[r] defense. Because legal advice that a party received may well demonstrate the falsity of its claim of good belief, waiver in these instances arises as a matter of fairness . . .'") (citation omitted); *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 547, 556 (S.D.N.Y. 2013) ("When a defendant places at issue what it knew or believed regarding the conduct in question, it implicitly waives the privilege because its adversary, in fairness, must be allowed inquiry into the basis of that knowledge or belief."); *United States v. Exxon Corp.*, 94 F.R.D. 246, 248-49 (D.D.C. 1981) (defendant waived its attorney-client privilege by raising defense of good-faith reliance on Department of Energy's representations because "the only way to

(footnote continues on next page)

10

*cf. Denman v. Youngstown State Univ.*, No. 4:05CV1910, 2007 WL 2781351, at *4–5 (N.D. Ohio Sept. 21, 2007) (recognizing that "where a party seeks to raise a good faith defense in reliance on advice of counsel[,]" "the attorney-client privilege is waived"); *Beery*, 218 F.R.D. at 605 (recognizing that principles of unfairness justify the waiver of attorney-client privilege when a defendant relies on the substance of an attorney's advice as a good faith defense to willful infringement; "In those cases, the substance of the attorney's advice either supports or defeats the defendant's assertion of good faith."); *United States v. Ohio Edison Co.*, No. C2-99-1181, 2002 WL 1585597, at *3, *5 (S.D. Ohio July 11, 2002) (recognizing that if the defendant had "necessarily and affirmatively put its subjective understanding of the regulations at issue in this case by pleading [certain] defenses[,]" "principles of fundamental fairness would appear to require that [the defendant] disclose all of the information in its possession which is relevant to [those] defenses").

---

assess the validity of [this defense] is to investigate attorney-client communications where Exxon's interpretation of various DOE policies and directives was established and where Exxon expressed its intentions regarding compliance with those policies and directives"; "Most courts considering the matter have concluded that a party waives the protection of the attorney-client privilege when he voluntarily injects into the suit the question of his state of mind."); *Gales v. Leaf River Cellulose, LLC*, No. 3:16-CV-953-HSO-JCG, 2017 WL 11451203, at *2 (S.D. Miss. Nov. 8, 2017) ("There is a 'longstanding recognition that asserting a claim or defense that depends on a belief in the lawfulness of one's conduct waives privilege.'") (citation omitted); *Barker ex rel. U.S. v. Columbus Reg'l Healthcare Sys., Inc.*, No. 4:12-CV-108 CDL, 2014 WL 4287744, at *3 (M.D. Ga. Aug. 29, 2014) ("[Defendant] clearly intends to assert affirmatively that it had a good faith belief that it complied with the [relevant statutes]. Thus, [defendant] injected its belief as to the lawfulness of its conduct into the case and waived its attorney-client privilege as to communications relating to the legality of the transactions that form the basis of Plaintiff's claims."); *Phelps v. MC Commc'ns, Inc.*, No. 2:11-CV-00423-PMP, 2013 WL 3944268, at *18 (D. Nev. July 22, 2013) ("A defendant waives the attorney-client privilege where its good faith defense places knowledge of the law and its communications with counsel directly at issue."); *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) ("Plaintiffs are correct that a party may not assert that it believed its conduct was lawful, and simultaneously claim privilege to block inquiry into the basis for the party's state of mind or belief. Indeed, a party 'cannot be permitted, on the one hand, to argue that it acted in good faith and without an improper motive and then, on the other hand, to deny . . . access to the advice given by counsel where that advice . . . played a substantial and significant role in formulating actions taken by [the defendant].'") (internal citation omitted).

This is true even if the defendant does not expressly invoke counsel's advice or attempt to make use of a privileged communication.  *See, e.g., Cox*, 17 F.3d at 1418-19 (defendant waived privilege by taking position that it believed its conduct to be lawful, despite denying "any intent to assert a defense of advice of counsel or to rely on any privileged attorney-client communications in its defense").[14]  As one court explained:

> Communications from lawyers—whose very job is to advise the company on the lawfulness of its policies—concerning the company's classification decision necessarily influence the reasonableness of any belief the company has about the lawfulness of its policy.  Otherwise, why seek legal advice (which isn't cheap) at all?  And as a psychological matter, it seems very difficult, if not impossible, for a witness to compartmentalize his reliance on what he may have independently understood regarding the law and what he was told by attorneys.
>
> ***
>
> Indeed, recognizing the distinction [defendant] purports to draw—between a good faith defense that relies on advice of counsel and one that does not even though such advice was given—would essentially result in a good faith defense never resulting in waiver of adverse legal advice. . . .  This "heads I win, tails you lose" result—in which a party asserting good faith could use attorney communications that help its cause, but shield the communications when they do not by

---

[14]  *See also Scott*, 67 F. Supp. 3d at 618 ("Although the defendant attempts to disclaim any reliance on the advice of counsel, the parties have demonstrated that the defendant did in fact possess the advice of counsel on this issue.  Where the defendant has clearly benefited from the advice of counsel on the very issue on which it asserts good faith, it puts its relevant attorney-client communications at issue and thereby waives its privilege."); *Chabot v. Walgreens Boots All., Inc.*, No. 1:18-CV-2118, 2020 WL 3410638, at *5–6 (M.D. Pa. June 11, 2020) ("[T]he party seeking privilege need not directly say that counsel was relied upon.  '[Waiver] may also arise from more indirect evidence where a party affirmatively raises an inference of reliance on counsel for the party's own benefit.'") (internal citation omitted); *Gales*, 2017 WL 11451203, at *2 ("'[F]orfeiture of the privilege may [also] result where the proponent asserts a good faith belief in the lawfulness of its actions, even without expressly invoking counsel's advice.'  'Because legal advice that a party received may well demonstrate the falsity of its claim of good faith belief, waiver in these instances arises as a matter of fairness . . .'") (internal citation omitted); *Ormat*, 2016 WL 4107682, at *4 ("Consistent with *Bilzerian*, courts 'have found implied waiver of attorney-client privilege in instances in which the magic words 'advice of counsel' are not used but where the circumstances underlying an affirmative defense necessarily rely on otherwise privileged material.'  The asserting party need not make actual use of the privileged communications.") (internal citation omitted); *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2016 WL 7626536, at *8 (D.S.C. Mar. 8, 2016) ("Waiver is often found in cases in which the client asserts an 'advice of counsel' defense, but 'it has also been applied more broadly to cover circumstances in which a client does not expressly claim that he has relied on counsel's advice, but where the truth of the parties' position can only be assessed by examination of a privileged communication.'") (citations omitted).

> characterizing the defense as one that does not rely on advice of counsel—would undo, and is at odds with the fairness concerns that animate, the longstanding recognition that asserting a claim or defense that depends on a belief in the lawfulness of one's conduct waives privilege.

*Edwards v. KB Home*, No. 3:11-CV-00240, 2015 WL 4430998, at *2, *3 (S.D. Tex. July 18, 2015).

The Pharmacy Defendants claim that the cases previously cited by Plaintiffs make "clear that there cannot be waiver unless a party has taken the ***affirmative step*** of putting the contents of a ***particular*** communication at issue."  Doc. #3465 at p. 8 n.4 (emphasis in original).  Not so.  Certainly privilege is waived if the withholding party explicitly relies on a specific privileged document.  *See, e.g, Lott*, 424 F.3d at 454 ("To be sure, litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case."); *Ross*, 423 F.3d at 605 ("Crews certainly could not assert that he relied on privileged communications and then hide behind the privilege, if he ever had it.").  But the cases referenced by the Pharmacy Defendants did not hold implicit waiver was limited only to those specific circumstances.  Rather, they relied on the broader principle that implicit waiver is warranted when the withholding party asserts any claim or defense that in fairness would require examination of privileged communications.[15]

Moreover, contrary to the Pharmacy Defendants' assertions, Plaintiffs do not contend that the Pharmacy Defendants would waive attorney-client privilege merely by denying unlawful conduct.  Doc. #3465 at p. 8 n.4.  Arguing at trial that they believed their conduct to be lawful, or

---

[15]  *See Lott*, 424 F.3d at 454 (holding district court erred in applying implicit waiver, reasoning: "Rather than finding that Lott had put his attorney's performance or strategic decisions at issue and determining that he took the affirmative action to waive the privilege, the [district] court f[ound] waiver in Lott's assertion that the police invented the confession and in his assertion that he is innocent.  Neither of Lott's assertions relate to what his attorney knew or did in this case."); *United Shore*, 2018 WL 2283893, at *2 ("'Thus, the privilege may be implicitly waived when defendant asserts a claim that in fairness requires examination of the protected communications.'") (quoting *Bilzerian,* 926 F.2d at 1292); *New Phoenix*, 408 F. App'x at 919 (petitioner voluntarily waived privilege "with respect to [tax] opinion" and any 'disclosed and undisclosed communications or information concern[ing] the same subject matter' that 'ought in fairness . . . be considered' with the tax opinion" by asserting "reasonable cause defense premised on a claim of reasonable reliance on the . . . tax opinion").

that they did not know their conduct was unlawful, would go beyond mere denial.  This would constitute an "affirmative step" that puts the contents of any communications with counsel regarding the lawfulness of their conduct at issue.  *See, e.g., Cox*, 17 F.3d at 1419 ("[I]n the present case, USX could have denied criminal intent without affirmatively asserting that it believed that its change in pension fund policy was legal.  Having gone beyond mere denial, affirmatively to assert good faith, USX injected the issue of its knowledge of the law into the case and thereby waived the attorney-client privilege."); *Maar*, 237 F. Supp. 3d at 1340 ("[A] defendant can always deny the element of a plaintiff's claim alleging a certain mental state 'without affirmatively asserting' a good faith belief in an act's legality.") (citation omitted).[16]

It would be manifestly unfair to Plaintiffs if the Pharmacy Defendants were permitted to make such arguments at trial when Plaintiffs have been forced to conduct discovery and prepare their case without the benefit of obtaining material information that would have tested those assertions.  Having made the tactical decision to withhold, based on a claim of privilege, the information and documents Plaintiffs sought in discovery concerning the Pharmacy Defendants' state of mind regarding their legal obligations, the Pharmacy Defendants should not now be allowed to offer any evidence, testimony, or arguments at trial concerning such matters.  Accordingly, Plaintiffs request that the Pharmacy Defendants be precluded from offering any

---

[16]  *See also Ormat*, 2016 WL 4107682, at *4 (finding waiver where defendant's affirmative defenses went "beyond mere denial of scienter to put its state of mind and knowledge of the [statutory] requirements at issue"; "Because such good faith defenses are asserted 'with respect to [defendant's] understanding and compliance with the law, '[defendant's] knowledge about the law is vital, and the advice of counsel is highly relevant to the legal significance of [its] conduct.'"") (citations omitted); *Barker*, 2014 WL 4287744, at *4 ("But [defendant] intends to do more than merely deny the essential elements of Plaintiff's claim.  [Defendant] does not plan simply to argue that Plaintiff failed to carry his burden of proof.  [Defendant] understandably intends to explain fully why its conduct was not knowingly and intentionally unlawful.  *Cox* is clear that this type of assertion goes 'beyond mere denial.'  By making such assertion, [defendant] waives the attorney-client privilege as to any communications that relate to the legality of the transactions at issue in this action.") (internal citation omitted).

14

argument, testimony, or evidence at trial that in fairness would require examination of communications or other evidence that the Pharmacy Defendants successfully withheld as privileged. *See, e.g., Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, No. 1:06CV2781, 2009 WL 10689369, at *10-11 (N.D. Ohio Oct. 23, 2009) (granting plaintiff's motion to exclude evidence of redesigned products where defense witness had "testified in his deposition that the redesign occurred 'after attorney suggestions'" and when plaintiff "attempted to explore the nature of these suggestions, [defendant] asserted the attorney-client privilege"; "If Defendants wished to rely on this evidence to show a lack of willful inducement, they should not have asserted the privilege. Having chosen to use the privilege as a shield, it would be unfair on the eve of trial to permit Defendants to utilize these protected conversations as a sword, as well.");[17] *cf. Traficant v. Comm'r*, 884 F.2d 258, 265 (6th Cir. 1989) ("We believe it was proper

---

[17]   *See also Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (district court within its discretion in precluding defendant from offering evidence of his reliance on advice of counsel to demonstrate that his infringement was not willful where defendant refused to answer questions regarding relevant communications with counsel during discovery); *Canon, Inc. v. Color Imaging, Inc.*, 227 F. Supp. 3d 1303, 1309 (N.D. Ga. 2016) ("Defendants may not provide testimony or argument that suggests or implies they thought their challenged infringing actions were legal based on knowledge gleaned from their general or overall consultations with counsel, without waiving the privilege as to the relevant attorney-client communications."); *Manning*, 357 F. Supp. 2d at 1049 ("Defendants seem to think that having succeeded in sustaining the privilege, they now have free rein to use the unnamed informants' information for whatever purpose they believe is appropriate.  The defendants . . . have it backwards. Having succeeded in sustaining the privilege and in stymieing Manning's ability to challenge their reliance on the informants' information, defendants have relinquished the right to use that information for their own benefit at trial."); *Andover Healthcare, Inc. v. 3M Co.*, No. CV 13-843-LPS, 2016 WL 6404111, at *2 (D. Del. Oct. 27, 2016) ("3M's witnesses will not be permitted to testify that they developed their product to have no crystallinity also, at least in part, to avoid infringement, as this would impermissibly permit 3M to use privilege (which 3M repeatedly asserted in its Rule 30(b)(6) deposition) as both a sword and shield."); *Arista Records*, 2011 WL 1642434, at *1, *2 (granting motion to preclude defendants "from offering any argument or evidence at the trial regarding [their] purported good faith belief in the lawfulness of their conduct" where defendants "repeatedly invoked privilege to block Plaintiffs' inquiry into any facts that may have served as the basis for Defendants' alleged good faith belief in the lawfulness of their conduct"; "In filing the instant motion, Plaintiffs are not seeking privileged communications; rather they are seeking to preclude argument and testimony where Defendants have already blocked inquiry on the basis of privilege."); *Dong Ah Tire & Rubber Co. v.*

(footnote continues on next page)

under principles of reciprocity for the Tax Court to bar Traficant, once he had invoked the privilege against self-incrimination on the authenticity of the statement and the tapes, from introducing other evidence on *that matter*.") (emphasis in original); *United States v. Sixty Thousand Dollars ($60,000.00) in U.S. Currency*, 763 F. Supp. 909, 913–14 (E.D. Mich. 1991) ("A defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial.").   Alternatively, if the Pharmacy Defendants are permitted and choose to make such assertions at trial, they should be deemed to have waived attorney-client privilege on these issues and ordered to produce all evidence pertaining to their communications with counsel regarding their legal obligations under the CSA that were previously withheld as privileged.  *See, e.g., Ormat*, 2016 WL 4107682, at *5 ("[T]he court finds it appropriate to give [defendant] a choice.  [Defendant] may proceed with its good faith defenses and produce the relevant documents . . . or preserve the communications' confidentiality by abandoning the defenses that giv[e] rise to the waiver.") (internal citation omitted).

---

*Glasforms, Inc.*, No. C 06-3359 JF (RS), 2009 WL 10696044, at *2 (N.D. Cal. June 23, 2009) (granting motion to exclude selective disclosure of privileged communications; "The Court agrees that Defendants may not use the subject evidence to strengthen the credibility of their witnesses while invoking the attorney-client privilege to prevent Glasforms' discovery of related documents."); *Matsuura v. E.I. du Pont de Nemours & Co.*, No. CV 00-00328 SOM-LEK, 2006 WL 8436370, at *1– 2 (D. Haw. Dec. 27, 2006) (granting plaintiff's motion *in limine* to preclude defendant "from offering testimony on 'any point on which it refused to answer and asserted a privilege or protection in response to Plaintiffs' discovery requests or questions during depositions'").

**E.  Plaintiffs' MIL No. 40 (references to any litigation between Summit or Cuyahoga County and its past or present employees).**

The Pharmacy Defendants state that they do not currently intend to present such evidence and that if "Plaintiffs open the door to it or otherwise make it relevant to rebuttal[,]" that they "will raise the matter outside of the presence of the jury to seek a ruling before offering such evidence or argument."  Doc. #3465 at p. 14.  Since this is precisely the relief requested by Plaintiffs, their MIL No. 40 is not premature and should be granted as unopposed.  *Cf.* Doc. 3058 (Evidentiary Order) at pp. 17-18, 60 (granting various MILs as unopposed).

**F.  Plaintiffs' MIL No. 41 (references to the firing of any County employee by Summit or Cuyahoga County).**

The Pharmacy Defendants state they "currently have no plans to offer evidence regarding the firing of any Summit or Cuyahoga employees" and concede that "there surely may be certain reasons for termination that are inappropriate to disclose to a jury."  Doc. #3465 at p. 14.  Yet they still request that Plaintiffs' MIL No. 41 be denied as premature because such evidence may become relevant depending on the witnesses Plaintiffs end up calling at trial.  *Id.* at pp. 14-15.

As discussed above (*supra* at § C), the conduct of Plaintiffs or their employees has no bearing on the questions to be tried in the upcoming trial.  Given the high risk of unfair prejudice to Plaintiffs should these issues be raised in front of the jury, Plaintiffs simply ask that if the Pharmacy Defendants believe that evidence of a particular employee's firing has become relevant based on the evidence adduced at trial, that they first raise the issue outside the presence of the jury to obtain a ruling from the Court before offering such evidence.  This issue is discrete and unlikely to arise often, if at all.  Thus, requiring the Pharmacy Defendants to seek a ruling from the Court outside of the jury's presence imposes no undue burden and will not materially disrupt or prolong the trial.

The cases cited by the Pharmacy Defendants are distinguishable and do not support the denial of Plaintiffs' MIL No. 41. *See Gerling & Assocs., Inc. v. Gearhouse Broad. Pty Ltd.*, No. 2:10-CV-1074, 2013 WL 5964397, at *7–8 (S.D. Ohio Nov. 8, 2013) (denying plaintiff's motion *in limine* to preclude evidence and argument related to defendant's subjective understanding of contract as premature where defendant indicated it did not intend to introduce evidence related to its "subjective understanding" of the contract, but argued that it should be permitted to introduce parol evidence regarding the meaning of contract terms if the contract terms are ambiguous); *William F. Shea, LLC v. Bonutti Research, Inc.*, No. 2:10-CV-00615-GLF, 2013 WL 2424382, at *1-2 (S.D. Ohio June 4, 2013) (denying motion *in limine* to preclude plaintiffs' experts "from testifying to (1) legal conclusions concerning disputed contracts and (2) personal views on the weight of the evidence" because the testimony defendant "seeks to exclude may or may not be admissible based on how it is introduced or stated at trial"); *Ross v. Am. Red Cross*, No. 2:09-CV-00905-GLF, 2012 WL 2004810, at *6 (S.D. Ohio June 5, 2012) (denying as premature defendants' motion *in limine* to preclude plaintiff from offering evidence related to defendant's payment of plaintiff's medical expenses for the purposes of proving liability pursuant to Federal Rule of Evidence 409 where plaintiff indicated she had no intention of offering such evidence to demonstrate negligence and there was "no indication that the evidence Defendants request this Court to exclude will be used for an improper purpose"), *aff'd,* 567 F. App'x 296 (6th Cir. 2014).

**G. Plaintiffs' MIL No. 42 (references to the efforts or actions of any Defendant, or its affiliates or employees, in connection with COVID-19, or the impact of COVID-19 on any Defendant, or its affiliates or employees).**

Plaintiffs' MIL No. 42 does not seek to preclude the Pharmacy Defendants from referencing COVID-19 as the reason why one or more of their witnesses is unable to attend all, or portions of, the trial in person. As noted above, the Court intends to inform the jury itself that

some witnesses may testify remotely because of the pandemic. *Supra* at § A. Rather, this MIL seeks to preclude the Pharmacy Defendants from referring to, or offering evidence of, their "good deeds" related to COVID-19 or the impacts of COVID-19 on their businesses or employees (other than any impacts related to the trial attendance of their employees or witnesses).

The Pharmacy Defendants fail to explain how evidence of their "good deeds" relating to COVID-19 has any relevance whatsoever to the questions to be decided in the upcoming trial. They claim that they should be permitted to offer "good deeds" evidence if Plaintiffs offer evidence to the contrary. Doc. #3465 at p. 16. But Plaintiffs do not intend to offer evidence of the Pharmacy Defendants' "bad deeds" relating to COVID-19. Moreover, the hypothetical examples they reference in their response do not justify inclusion of this evidence. First, Plaintiffs do not intend on arguing that the Pharmacy Defendants do not care about Ohio communities simply because they are out-of-state corporations. Rather, they plan on demonstrating that the Pharmacy Defendants' **distribution-related conduct** demonstrates their disregard for, and interference with, public health and safety, including in the Counties, as it relates to their distribution of **opioids**. Similarly, Plaintiffs will demonstrate that the Pharmacy Defendants prioritized profits over safety specifically in regards to their **opioid** business. This evidence goes to the very heart of Plaintiffs' public nuisance claims. Offering such evidence should not then "open the door" to every other unrelated positive act the Pharmacy Defendants have ever performed for the community.[18] And evidence of their COVID-19-related efforts in particular raises an even greater risk of unfair prejudice, given the seriousness of the pandemic and the fact it remains ongoing. In order to avoid this risk, to the extent the Pharmacy Defendants believe Plaintiffs have opened the door to evidence

---

[18] Under the Pharmacy Defendants' reasoning, their introduction of evidence of their unrelated "good acts" involving COVID-19 should then open the door for Plaintiffs to introduce evidence of the Pharmacy Defendants' unrelated bad acts involving other products and services.

of their COVID-19-related acts at trial, they should be required to raise the issue with the Court outside of the jury's presence before offering that evidence.

Finally, the cases cited by the Pharmacy Defendants do not support denial of this MIL. *See Alvarez v. King Cty.*, No. C16-0721RAJ, 2017 WL 3189025, at *1 (W.D. Wash. July 27, 2017) (motion *in limine* regarding evidence of "good acts" was mutually agreed to by the parties); *Zander v. Orlich*, No. 2:14-CV-400-PRC, 2017 WL 2972452, at *2 (N.D. Ind. July 12, 2017) (holding that plaintiff's motion *in limine* to preclude evidence or argument that defendant "has done specific good acts in an attempt to bolster his general character or reputation" "is generally **GRANTED** in this regard; however, should [plaintiff] open the door to the general character or general reputation of [defendant] then he may, **within the court's discretion**, present evidence and argument showing specific good acts by him") (emphasis added).

## H. Plaintiffs' MIL No. 43 (references to pharmacy class actions and similar litigation).

The Pharmacy Defendants state they do not currently intend to present such evidence and that if "Plaintiffs open the door to such evidence and/or make it relevant to rebuttal[,]" that they "will raise the issue outside of the presence of the jury." Doc. #3465 at p. 17. Since this is precisely the relief requested by Plaintiffs, their MIL No. 43 is not premature and should be granted as unopposed. *Cf.* Doc. 3058 (Evidentiary Order) at pp. 17-18, 60 (granting various MILs as unopposed).

September 28, 2020

Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL LAW
422 Ninth Street
Huntington, WV  25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

21

W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX  77069-3804
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Lead Trial Counsel*

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY  10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

Linda Singer
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
(202) 386-9626 x5626
(202) 386-9622 (Fax)
lsinger@motleyrice.com

*Counsel for Plaintiff Summit County, Ohio*

## CERTIFICATE OF SERVICE

I certify that the foregoing instrument was served via the Court's ECF system to all counsel of record on September 28, 2020.

/s/ Peter H. Weinberger
Peter H. Weinberger