UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) MDL 2804 ) ) Case No. 1:17-md-2804 |
| **THIS DOCUMENT RELATES TO:** | ) ) Judge Dan Aaron Polster |
| *Track One* | ) ) **OPINION AND ORDER** ) |

Before the Court is Walgreens' *Objection to Modified Discovery Ruling 23* ("*Objection*"). Doc. #: 3470.[1] Walgreens filed its *Objection* on September 15, 2020. On September 23, 2020, pursuant to the Courts September 16, 2020 scheduling order, Plaintiffs filed a response. Doc. #: 3502. Walgreens filed a reply on September 25, 2020. Doc. #: 3505. In his *Modified Discovery Ruling 23* ("*Modified DR-23*"), Doc. #: 3461, the Special Master, *inter alia*, granted "Plaintiffs' request for *in camera* review of the 53 privilege claims challenged by plaintiffs on June 19, 2020."[2] *Modified DR-23* at 8.

In March 2019, Plaintiffs raised concern with a representative sample of privilege designations made by Walgreens on its privilege logs.[3] *See Objection*, Ex. 3, Doc. #: 3470-3 (3/14/19 Irpino Letter to Desh). Plaintiffs then added these challenges to the Special Master's

---

[1] Walgreens also objected to the original *Discovery Ruling No. 23*, Doc. #: 3455. *See Partial Objection re Discovery Ruling 23*, Doc. #: 3459. Upon reviewing both documents, the Court concludes that, just as the *Modified DR-23* replaced and superseded the original, Walgreens' present objection replaces and supersedes its previous objection. Thus, Walgreens' *Partial Objection*, Doc. #: 3459, is moot and is not addressed.

[2] In his modified ruling, the Special Master notes that Plaintiffs "voluntarily eliminated 23 of the original 53 privilege claims and have submitted a shortened list of 30 documents." *Modified DR-23* at 8. Thus, Walgreens only needs to produce those 30 documents.

[3] Although Walgreens characterized these challenges as "raised in September 2019," *see Objection* at 3, Walgreens' own exhibits make it clear that the challenges were brought to Walgreens' attention by Plaintiffs in March of 2019. *See Objection*, Ex. 3, Doc. #: 3470-3 (3/14/19 Irpino Letter to Desh). Thus, the challenges that form the basis of the parties' May 2020 agreement are more accurately characterized as March 2019 privilege challenges.

Discovery Agenda in May 2019 as Agenda Item 232. *See Objection*, Ex. 9, Doc. #: 3470-9 (Excerpt from Discovery Agenda). Plaintiffs also submitted a letter brief regarding those challenges to the Special Master in September of 2019. *See id.* While awaiting resolution of that dispute, Plaintiffs submitted another round of privilege challenges to Special Master Cohen in February 2020.[4] *See Objection*, Ex. 2, Doc. #: 3470-2 at 3; *see also Objection*, Ex. 9.

In a March 2020 discovery conference, the Special Master ordered Walgreens to produce a sample of documents from Plaintiffs' two rounds of outstanding privilege challenges to him for *in camera* review. *See Modified DR-23* at 2; *Response* at 6. Rather than produce the documents, the parties continued to meet and confer through March and eventually reached an agreement to resolve most or all of the outstanding privilege disputes. *See Modified DR-23* at 2; *Objection* at 3; *Response* at 6. Then, on June 19, 2020, Plaintiffs raised "entirely new challenges to Track One A privilege claims."[5] *Objection* at 4. In his modified discovery ruling, the Special Master ordered 30 of the original 53 challenged documents from Plaintiffs' June 2020 challenges to be produced to him for *in camera* review. Walgreens objects to that ruling.

Walgreens asserts that "[t]he Court should sustain Walgreens' objection to the Special Master's Modified Order and deny Plaintiffs' motion to compel production of the privileged documents Plaintiffs challenged in June 2020 as untimely or otherwise barred by the parties' May 2020 agreement." *Objection* at 13. Additionally, Walgreens also objects, in a footnote, to the Special Master's shortened deadline for filing an objection to his ruling. *Id.* at 13 n.1.[6] For the

---

[4] Agenda Item 253. Added to the Discovery Agenda in March 2020. *See Objection*, Ex. 9

[5] Plaintiffs also objected to Walgreens' continued privilege designation of eight documents from the March 2019 challenges, but the Special Master ruled that those were subject to the parties' May agreement and denied *in camera* review of those documents. *See Modified DR-23* at 3. That portion of *Modified DR-23* was not objected to, and is not addressed here.

[6] This objection is not well-taken. Walgreens asserts that Rule 53(f)(2) of the Federal Rule of Civil Procedure and this Court's *Appointment Order*, Doc. #: 69, "provide for a ***minimum*** of 21 days to file an objection to the report of a

following reasons, Walgreens' objections are **OVERRULED**. The Court hereby affirms and adopts *Modified DR-23*.

## I. Background

Due to the size and complexity of the proceedings leading up to the first opioid bellwether trial, the discovery period for Track One is difficult to define with great precision. The Court offers the following background information to put this dispute and Walgreens' objection into context.

### A. The Track One Discovery Deadline

On April 11, 2018, the Court issued *Case Management Order One* ("*CMO-1*"), which applied to "all cases," and created "Track One," the first opioid bellwether trial track. Doc. #: 232. At the outset, the Court set an aggressive trial schedule for Track One.[7] As discovery progressed and Track One proceeded to trial, it became clear that the Court's initial trial schedule was too aggressive given the unprecedented amount of discovery that was taking place and, more significantly, the enormous number of disputes arising as a result. About a month before the initial discovery deadline, the parties requested more time.

> On August 2, 2018, the Court held an in-person conference at the parties' request. At that time, the Plaintiffs and Manufacturing Defendants jointly proposed that the

---

Special Master." Doc. #: 3470 at 13 n.1 (emphasis added). That is not what those references provide. The Court's *Appointment Order* (expressly relying on Fed. R. Civ. P. 53(f)(2)) states:

> Rule 53(f)(2) provides that parties may file objections "***no later than*** 21 days after a copy of the [Special Masters' order, report, or recommendations] is served, unless the court sets a different time." Motions for extensions of time to file objections will not normally be granted unless good cause is shown. The Special Masters ***may***, however, provide in an order, finding, report, or recommendation that the period for filing objections to that particular document is some period longer than 21 calendar days, if a longer period appears warranted.

*Appointment Order*, Doc. #: 69 at 4 n.2 (quoting Fed. R. Civ. P. 53(f)(2)) (emphasis added). Twenty-one days is the default maximum; not the minimum as Walgreens suggests. The Special Master was within his discretion to set the deadline for objecting to his ruling at a time that he considered appropriate under the circumstances.

[7] *CMO-1* provided that "[f]act discovery in the Track One Cases shall be completed by **August 31, 2018**." *CMO-1* at 7 (paragraph 3.f.).

3

> Court extend the Track One discovery schedule and trial date so that the parties [could] complete the discovery necessary to present an intelligible trial.

*Order Regarding Discovery Rulings Nos. 2 & 3*, Doc. #: 868.

The Court acquiesced, resulting in *Case Management Order No. 7* ("*CMO-7*"), and set January 25, 2019 as the new close of fact discovery. *See CMO-7*, Doc. #: 876, at 2. Even with the five month extension and the Special Master resolving disputes as quickly as possible, the parties were still unprepared for the close of discovery by the new deadline. On the day discovery was set to close, the parties again jointly moved for another extension of both the discovery deadline and the trial. *See Joint Motion to Modify CMO-7 to Extend the Trial Date to October 21, 2019*, Doc. #: 1303. The Court again acquiesced and, on January 29, 2019, adopted the parties' newly agreed-upon deadlines, resulting in Case Management Order No. 8 ("*CMO-8*"). Doc. #: 1306. The proposed language regarding the close of fact discovery from the parties' joint motion was carried over verbatim into *CMO-8*. *Compare Motion to Modify CMO-7* at 2, *with CMO-8* at 2 ("within seven (7) days of this Case Management Order, the parties shall agree on a close of discovery date or submit their positions to Special Master Cohen for a ruling").

It is not clear whether an official close of fact discovery date was ever agreed upon pursuant to the parties' jointly proposed language. However, given the fact that the Special Master continued to receive and resolve discovery disputes into the summer of 2019 and beyond, it appears that all parties at least implicitly accepted that the discovery period would remain open beyond January 2019. That said, the fact discovery period did, eventually, close. In the recently issued *Order Regarding Pretrial Discovery in Track One-B*, Special Master Cohen states that "the fact discovery period for Track One-A closed, at the latest, in the summer of 2019." Doc. #: 3305 at 4. Despite the "summer of 2019" discovery cut-off, the parties continued to engage the Special Master in the Court's discovery dispute resolution process (described in section I.B. below) all the

4

way up to the October trial, even requesting that some discovery be allowed during the trial. *See id.* at 4-5 ("The parties sought to conduct additional fact discovery . . . as late as during the Track One-A trial itself, but the [Special Master] did not allow it.").

On the eve of the Track One trial, all of the then remaining Track One trial defendants except Walgreens settled with the Track One Plaintiffs, and on November 19, 2019, the Court set a new trial ("Track One-B") against the previously severed defendants and Walgreens for October 2020. *See Track One-B Case Management Order* ("*CT1B CMO-1*"), Doc. #: 2940. The *Order Regarding Pretrial Discovery in Track One-B* provides an excellent summary of events that occurred between the cancellation of the first scheduled Track One trial ("Track One-A") and the order's issuance in May 2020.

In short, the Special Master and the parties saw the additional time created by the scheduling of the Track One-B trial as an opportunity to clear out some of the backlog on the Special Master's discovery agenda. *See Order Regarding Pretrial Discovery in Track One-B* at 5 ("The most significant change that has since occurred is there is now much more time available before trial"). Therefore, some limited additional "Track One" discovery was allowed if it could be shown to "relate back" to disputes identified prior to the Track One-A trial.[8] *See id.* at 1-8 ("the Special Master remains empowered to resolve discovery disputes that "relate back" to Track One-A"). After setting (and subsequently extending) the Track One-B discovery deadline, the close of

---

[8] Additional discovery was primarily allowed for Plaintiffs' then-recently-amended "***dispensing claims***." Although the Sixth Circuit's mandamus opinion, *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838 (6th Cir. 2020), unquestionably closed any such ***dispensing-related*** discovery, it did not reach "relation-back" discovery. Track One-A only concerned ***distribution claims***, therefore, disputes that related back to Track One-A necessarily only applied to ***distribution***. Thus, relation-back discovery, as defined by the Special Master, remained subject to the Track One-B discovery deadlines. *See CT1B CMO-1*; *Track One-B Case Management Order No. 2* ("*CT1B CMO-2*"), Doc. #: 3116; *Discovery Order Regarding Case Management*, Doc. #: 3175; *see also cf. Order Regarding Track One-B and Track Three*, Doc. #: 3261 at 1-2 (recognizing that "most," but not all, of the discovery had been done regarding Track One-B distribution claims).

fact discovery for all of Track One was ultimately set for June 15, 2020.[9] *See Discovery Order Regarding Case Management* at 3. It is thus undisputed that Special Master Cohen—with the parties consent and frequently at their request—continued to hear and resolve disputes, especially those related to privilege claims, well beyond the close of Track One-A, including one as recently as last month. *See, e.g. Discovery Ruling No. 14, Part 14*, Doc. #: 3477 (Sep. 18, 2020).[10]

### B. The Discovery Dispute Resolution Process

Recognizing that discovery disputes in a case of this importance and magnitude would arise, Paragraph 9 of *CMO-1*—titled "***Preliminary*** Discovery Plan and Procedures"—contained a provision for "Discovery Dispute Resolution." *CMO-1* at 12 (emphasis added); 17 (paragraph 9.o.). Paragraph 9.o. provided that:

> the parties shall resolve discovery disputes by following these steps: (1) good faith resolution efforts by counsel; (2) telephone conference-call to Judge Polster's chambers, at which time the Court will direct the parties how and when they will present their issues to either Judge Polster or Magistrate Judge Ruiz;[11] (3) if requested by the Court, position letters (normally not to exceed 3 pages); and (4) if required, discovery motion pursuant to Fed. R. Civ. P. 37.

*Id.* at 17. Notably, *CMO-1* does not expressly provide a deadline for making privilege challenges. Instead, in the section dedicated to assertions of privilege, the Court ordered that "The parties will raise privilege issues with [Special Master Cohen], in accord with the procedures set out in paragraph 9.o, ***as soon as reasonably possible***." *CMO-1* at 14 (paragraph 9.g.) (emphasis added).

---

[9] *See CT1B CMO-1* at 4 (setting March 6, 2020 as the close of fact discovery); *CT1B CMO-2* at 3 (directing the parties to meet and confer with Special Master Cohen to set appropriate discovery deadlines); *Discovery Order Regarding Case Management* at 3 (setting June 15, 2020 as the close of fact discovery).

[10] *See also Discovery Ruling No. 14, Part 10*, Doc. #: 2968 (Dec. 7, 2019); *Discovery Ruling No. 14, Part 11*, Doc. #: 2979 (Dec. 11, 2019); *Revised Discovery Ruling No. 14, Part 10*, Doc. #: 3071 (Jan. 8, 2020); *Discovery Ruling No. 14, Part 12*, Doc. #: 3245 (Mar. 30, 2020); *Discovery Ruling No. 14, Part 13*, Doc. #: 3249 (Apr. 2, 2020).

[11] Special Master Cohen subsequently replaced Magistrate Judge Ruiz as the Discovery Special Master. *See Order Reassigning Workload*, Doc. #: 549.

The preliminary procedure described in *CMO-1*, however, quickly evolved due to the enormous number of disputes that arose.[12]

One of the first changes to the Preliminary Discovery Plan and Procedures was that Special Master Cohen was forced to assume a substantially larger role in the discovery dispute resolution process. Disputes arose at a frenetic pace, and the Special Master was forced to engage in "triage"—ruling as quickly as possible on those disputes that were most important for trial and recognizing (and telling the parties) that many issues would simply not be resolved before the Track One trial. *See, e.g., Order Regarding Pretrial Discovery in Track One-B* at 7 ("because the number of issues pending immediately before the Track One-A trial began was overwhelming; the Special Master was forced to engage in triage, and simply ignored and never resolved certain discovery disputes").[13]

Another important change to the discovery dispute resolution process is the issuance of what became known as "bellwether discovery rulings." In these rulings, the Special Master ordered all parties to apply the legal reasoning, as applied to the specific privilege claims resolved by the

---

[12] Generally, the procedure now works as follows: The parties first engage each other in a collaborative meet and confer process. Disputes that cannot be resolved between the parties are raised to the Special Master via telephone, email, position paper, letter brief, or orally at a discovery hearing. The Special Master attempts to resolve these disputes quickly and may, if he is able, resolve smaller disputes as they are raised.

When disputes involve issues that are too complicated or time consuming for immediate resolution, the party raising the dispute can add it to an electronic "discovery agenda" spreadsheet. Those agenda items are then briefed by the parties either orally at discovery hearings and teleconferences or via emails and letter briefs to the Special Master; frequently both. The Special Master then issues rulings to resolve these agenda-item disputes either informally (orally or via email), or formally with a filed discovery ruling.

If a ruling is made informally, that ruling may, pursuant to the *Appointment Order*, Doc. #: 69, be formalized at the request of an objecting party within three days and then finally brought before the Court by way of a filed objection. *See Appointment Order* at 4-5; *see also cf. Order re Objections to Discovery Ruling No. 14, Part* 1, Doc. #: 1349 (stating that "the Court will strike any party's objection to a special master's ruling that raises, for the first time before the Court, new evidence or legal theories not first provided to the special master for consideration.").

[13] The Court notes here that were it not for the Herculean efforts of Special Master Cohen, administration of the pretrial proceedings in the MDL would have been unworkable and the Court never would have been able to get Track One prepared to go to trial.

ruling, to other similar documents over which the parties had asserted privilege.[14] *See, e.g., Objection, Ex. 8,* Doc. #: 3470-8 at 1 n.1 (8/26/20 Letter Brief from Robertson to Cohen) ("As I noted earlier, discovery ruling 14-5 is what I call a bellwether evidentiary ruling, and I believe it was understood to be that by the parties as it was being addressed.") (citing 4/24/2019 Discovery Hearing Transcript at 53). Due to the vast number of documents over which the parties asserted privilege, these discovery bellwether rulings were crucial to reaching any meaningful resolution regarding privilege challenges. *See id.* at 2 n.4 ("I don't see any other way to do this. I don't have time. No one has time to go through it document by document.") (citing 5/30/2019 Discovery Teleconference Transcript at 14). All Defendants are, thus, required to review documents marked privileged and to "self-downgrade" privilege claims as appropriate pursuant to these bellwether privilege rulings. No party has ever objected to the bellwether ruling process.

In summary, the close of fact discovery for Track One, at least with respect to disputes that the Special Master determines "relate back" to Track One-A, was June 15, 2020. Furthermore, due to the enormous number of discovery disputes, the dispute resolution process often takes significant time. It is reasonable, therefore, that rulings on some of those disputes, brought timely and in good faith, do not get resolved as quickly as the parties would like. The parties nevertheless must apply these rulings. The Court and the Special Master rely heavily on the parties to police themselves and to faithfully apply discovery rulings to the best of their abilities. Ultimately, however, the parties from time to time call on the Special Master to confirm the parties' compliance with the bellwether discovery rulings.

---

[14] A similar example of this process is the November 5, 2019 *Discovery Order re Redacting and Sealing of Documents*, Doc. #: 2909 at 2-3 ("[T]he parties submitted a number of exemplar documents and ask for rulings from the Special Master, which they will then apply to other disputed documents. . . . The parties must adhere to these rulings regarding . . . already-filed documents, as well as any documents that are later filed.").

## II. Analysis

Walgreens makes two arguments against having to produce any documents to the Special Master for *in camera* review. First, they assert that Plaintiffs' June 2020 challenges have already been resolved subject to the parties May agreement. Second they argue that the June 2020 challenges are untimely, and thus, waived. The Court finds neither of these arguments persuasive.

### A. The Parties' May 2020 Agreement

In *Modified DR-23*, the Special Master concluded that the parties did reach an agreement to resolve outstanding privilege challenges, but he was unable to conclude that the agreement reached future challenges, including those made by Plaintiffs in June of 2020. *Modified DR-23* at 3-4. The Court affirms those conclusions.

Walgreens characterizes the agreement as: "Plaintiffs represented that if Walgreens produced certain documents from its Track One A privilege logs, then Plaintiffs would withdraw their challenges to the privilege claims that they had raised in September 2019 *and later submissions*." *Objection* at 3 (emphasis added). Plaintiffs characterize the agreement as: "Walgreens represented that they would downgrade documents from Plaintiffs prior challenges (Agenda Items 232, 253) only if Plaintiffs did not push challenges to the Court." *Objection*, Ex. 6, Doc. #: 3470-6 at 3 (8/12/20 Robertson email to Cohen) (emphasis in original). Thus, both parties concede that there was an agreement. What remains unclear is whether the agreement can be understood to encompass all hypothetical future submissions or only those submissions that (1) were raised after September 2019 and (2) were pending at the time of the agreement.

Contemporaneously with the formation of the agreement, counsel for Walgreens provided an update to the Special Master on the status of the dispute. *See Objection*, Ex. 7, Doc. #: 3460-7 at 2 (5/29/20 Desh email to Cohen). Walgreens stated that the parties had resolved "outstanding"

privilege challenges but did not indicate whether the resolution also reached potential future challenges. *Id.* ("By means of an update, the parties have resolved agenda items 252, 232, and 253 regarding outstanding privilege challenges.")[15] The language of Walgreens' update appears to indicate that the agreement was only intended to reach then-pending privilege disputes and not future disputes. Indeed, in a later email between the parties, Walgreens appears to concede that future challenges would be dealt with separately from the agreement. *See Objection*, Ex. 6 at 2 (8/13/20 Desh email to Robertson) ("[W]e agreed that future challenges would be dealt with separately.").

Based on these statements, the Court agrees with the Special Master's decision to treat the parties' agreement as not reaching the 53 documents Plaintiffs challenged on June 19, 2020. Accordingly, Section II.A. of *Modified DR-23* is affirmed, and to the extent Walgreens' *Objection* challenges that section, it is **OVERRULED**.

### B. Timeliness

Pursuant to Rule 16(b), "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Under Sixth Circuit precedent, "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir.2001). "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.* (citing *Bradford*, 249 F.3d at 809). Thus, once diligence has been shown, the Court will look to whether it should, nevertheless, refuse to alter its scheduling order due to possible prejudice to the non-moving party.

---

[15] It is not clear from the briefs to what Agenda Item 252 refers, however, because it was purportedly resolved as of May 29, 2020, it cannot reasonably refer to Plaintiffs' June 2020 privilege challenges at issue here.

10

*See Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992)) ("[C]ourts consider the extent of prejudice to the nonmoving party only if the movant proceeded diligently, and then only to ascertain whether there exist 'additional reasons to deny a motion.'").

Walgreens asserts that Plaintiffs' June 2020 challenges should not be allowed because they were raised "more than 18 months after the close of discovery" and that "[a]s with any motion to compel filed after the close of fact discovery, that requires a showing of good cause." *Objection* at 5 (citing *United States v. Barron Collier Co.*, 2015 WL 13811188, at *4 (D. Ariz. Dec. 24, 2015)). In response, Plaintiffs assert that they "have been consistently and diligently addressing Defendants' privilege claims through the entirety of this litigation." *Response* at 4. Plaintiffs also assert that they ought to be able to test Walgreens' compliance with discovery rulings in particular because, "[u]nlike the majority of the other Defendants in active MDL case tracks, Walgreens has not reasonably applied the Court's privilege rulings to other privilege claims." *Id.* at 5.

In light of the analysis in Section I, *supra*, Walgreens' characterization of Plaintiffs' privilege challenges as more than 18 months after the close of discovery does not accurately reflect the reality of discovery in Track One. Based on the combination of party requests for extension of discovery deadlines, the parties continuing pursuit of discovery disputes after discovery deadlines came and went, the settling of Track One-A, and the subsequent scheduling of Track One-B, the Court concluded above that the operative close of fact discovery—at least for disputes that relate back to Track One-A[16]—was June 15, 2020. *See Discovery Order Regarding Case Management* at 3.

---

[16] Walgreens' privilege logs were originally produced in Track One-A and, as described further below, were updated and revised throughout the relevant time period. Thus, disputes over the privilege logs relate back to Track One-A.

11

Additionally, at all relevant times throughout the discovery process, Walgreens affirmatively engaged both Plaintiffs and the Special Master in the discovery dispute resolution process. *See Objection* at 3 ("The parties continued to negotiate discovery issues following the cancellation of the Track One A trial."). Thus, to whatever extent their objection can be properly characterized as objecting to the fact that the Court's discovery dispute resolution process has gone on for as long as it has, that objection is waived.

It is also not entirely correct to say that Plaintiffs "have been in possession of privilege logs for these documents since March 2019." *Objection* at 10. Walgreens was required to review its privilege logs after each privilege-related discovery ruling and downgrade its privilege claims as appropriate. Thus, both (1) the universe of documents that could be challenged[17] and (2) the parties' understanding of the types of documents over which privilege could be claimed[18] changed with each subsequent privilege-related discovery ruling. Because of these rolling—often nuanced—changes, there were likely documents that Plaintiffs did not spend time and resources challenging until after the Special Master had provided guidance as to the viability of such challenges.

Once the Special Master does make a ruling, Walgreens then has to review all of the tens of thousands of privileged documents in response to each new discovery ruling and provided a list of downgraded documents to Plaintiffs. Plaintiffs, in return, must conduct their own review all of the documents that remain on the privilege logs to ensure that none are inadvertently overlooked

---

[17] That is, the contents of the privilege logs necessarily changed when the parties self-downgraded appropriate documents and removed them from the privilege logs.

[18] For example, Court orders and several discovery rulings concluded that privilege could not be claimed over various types of documents related to Suspicious Order Monitoring Systems ("SOMS"). *See, e.g. Order Regarding Rulings from the Bench*, Doc. #: 1147 at 1 ("Defendants shall not interpose attorney-client privilege as a reason for not producing discovery of all details of their SOMS."); *Discovery Ruling No. 14, Part 5*, Doc. #: 1498 (regarding Cardinal's SOMS audit reports); *Discovery Ruling No. 14, Part 8*, Doc. #: 1666 (regarding several other defendants' SOMS audit reports).

by Walgreens. This review process, alone, takes time. If a disagreement over a privilege claim follows and the parties engage the dispute resolution process, it takes even longer.

Contextually, Plaintiffs have good reason to be especially vigilant with respect to Walgreens. Walgreens has self-downgraded very few documents in response each discovery ruling,[19] and more, Walgreens has a history in this MDL of inadvertently not producing documents that should have been produced.[20] Thus, the constantly shifting landscape of privilege rulings have created an ongoing obligation for Plaintiffs to diligently review and reassess each defendants' privilege logs on a continuing basis.

Furthermore, the Court and the Special Master have an obligation to ensure that all parties comply with their discovery obligations, which include the Special Master's discovery rulings. Given the vast number of discovery disputes in this case, verifying compliance with its orders and rulings would be impossible—and an enormous use of limited judicial resources—without the diligent assistance of all parties. As the Special Master points out, "without the meet-and-confer process, and the agreements it produces, the Special Master would be unable to ensure compliance with the Court's orders." *Modified DR-23* at 6. All parties have been directed, therefore, under *CMO-1*, to "raise privilege issues . . . in accord with the [Court's dispute resolution] procedures . . . ***as soon as reasonably possible***." *CMO-1* at 14 (paragraph 9.g) (emphasis added). Put another way, Plaintiffs are permitted (arguably obligated) to test and check whether Walgreens is complying with the Special Master's discovery rulings so long as they do so within a reasonable time period, which the Court concludes they have.

---

[19] This is in contrast to many other Defendants who have self-downgraded tens of thousands of documents pursuant to the Special Master's discovery rulings. *See, e.g., Response*, Ex. A.

[20] Walgreens has been reprimanded by the Court for questionable compliance with its discovery obligations. *See Order Regarding Pretrial Discovery in Track One-B* at 8-11 (discussing Walgreens' failure to produce documents related to suspicious orders: "That Walgreens did not identify or produce these important documents during Track One discovery is concerning.").

Therefore, the Court agrees with the Special Master that Plaintiffs acted diligently in pursuing their privilege challenges. *See Modified DR-23* at 6 (concluding that Plaintiffs acted with reasonable diligence). Plaintiffs have been actively challenging Walgreens' privilege designations and Walgreens has been actively engaged in resolving those disputes. Furthermore, the Special Master has, himself, been involved with these disputes since early in Track One-A and, therefore, his observations bear considerable weight. While it is true that Plaintiffs have been in possession of at least some iteration of Walgreens' privilege logs since 2019, Plaintiffs' challenges could not necessarily have been made earlier because they did not yet have the benefit of all of the Special Master's rulings on exemplar documents.

The Court also concludes that there can be very little prejudice to Walgreens in allowing the Special Master to review the documents. Although framed as a motion to compel, Plaintiffs do not seek any new or additional discovery. These documents have already been searched, identified, carefully reviewed, and set aside by Walgreens. Producing them to Plaintiffs if, and only if, the Special Master determines they are not privileged is, at most, a minimal burden. In fact, Walgreens does not even make an argument that allowing *in camera* review of the 30 exemplar documents challenged by Plaintiffs in June 2020 will prejudice them. Accordingly, Section II.B. of *Modified DR-23* is affirmed, and Walgreens' *Objection* is **OVERRULED**.

### III. The Close of Fact Discovery

The Court notes in closing that Walgreens' primary concern is not without some merit. Walgreens asserts that the Special Master's ongoing discovery rulings, if interpreted as the Court has, will "permit Plaintiffs to challenge Track One A privilege logs forever." *Objection* at 7. This concern has the potential to be exacerbated by the recent postponement of the Track One-B trial.

14

On October 5, 2020, the Court held a status teleconference with the Track One-B parties where it postponed the trial and stayed pretrial deadlines. *See* 10/05/2020 Minutes of Proceeding, Case No. 17-MD-2804 ("Due to the ongoing COVID-19 pandemic and the General Orders of the Court, the Track One-B trial scheduled to begin on November 9, 2020 is postponed, and all pre-trial deadlines are stayed."). To be perfectly clear, Track One discovery is now closed. The Court will not resolve any new disputes except by making the appropriate showing on a motion to reopen discovery.[21] The parties, as always, remain free to settle their discovery disputes amongst themselves through mutual agreement, but the Court and the Special Master must now turn our attention to Track Three.

Plaintiffs also express some concern that Walgreens' is attempting to limit the rights of future plaintiffs in future case tracks to challenge privilege claims that have not been challenged and resolved in Track One. *See Response* at 8-9. The Court does not interpret Walgreens' *Objection* as making such an argument. In fact, Walgreens explicitly states that were these privilege claims raised in the context of CT3, for example, they would not have raised objections to Plaintiffs challenges. *See Objection*, Ex. 1 at 3 n.2 (Doc. #: 3470-1) ("Walgreens does not dispute that Plaintiffs may bring certain challenges to CT1B or CT3 privilege logs, including those captured by Plaintiffs' June 2020 challenges."). So long as future parties to future case tracks challenge privilege designations in good faith and within the applicable period for discovery, the Court trusts its colleagues handling those future cases to address those challenges as they see fit.

---

[21] This Order only impacts the raising of new discovery disputes associated with the Track One cases. If there are disputes associated with Track One that are on the Special Master's discovery agenda as of the issuance of this Order, the Special Master may, at his discretion, resolve those disputes through the normal dispute resolution process.

Accordingly, Walgreens' *Objection to Modified Discovery Ruling 23*, Doc. #: 3470, is **OVERRULED**. *Modified Discovery Ruling 23* is **AFFIRMED** and **ADOPTED**.

      **IT IS SO ORDERED.**


                               **/s/ Dan Aaron Polster  October 13, 2020**
                               **DAN AARON POLSTER**
                               **UNITED STATES DISTRICT JUDGE**