IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| In re: NATIONAL PRESCRIPTION | ) | MDL 2804 |
| OPIATE LITIGATION | ) | |
| | ) | Case No.: 1:17-MD-2804-DAP |
| DOCUMENT RELATES TO: | ) | |
| *"Case Track Three"* | ) | Judge Dan Aaron Polster |


**PLAINTIFFS' RESPONSE TO RITE AID'S OBJECTIONS TO ORDER REGARDING
PERSONAL JURISDICTION DISCOVERY OVER RITE AID CORPORATION**

# <u>TABLE OF CONTENTS</u>

FACTUAL AND PROCEDURAL BACKGROUND...................................................................2

LEGAL STANDARD ..............................................................................................................7

ARGUMENT.............................................................................................................................9

I.     The Discovery Ordered by the Special Master is Consistent with the Court's Prior Orders. ...............................................................................................................................9

II.    The Special Master Properly Ordered Discovery as to Whether RAC and RAHC Are Alter Egos...........................................................................................................................11

    A.  The Court should disregard Rite Aid's new arguments that are irrelevant to the issue of jurisdictional discovery. ..................................................................................11

    B.  Rite Aid has waived any argument that Delaware law applies, which it does not. ........15

III.   The Discovery Ordered by the Special Master Was Reasonably Tailored........................18

CONCLUSION.........................................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anwar v. Dow Chem. Co.*,
876 F.3d 841 (6th Cir. 2017) .......................................................................................*passim*

*Beightler v. Produkte Fur Die Medizin AG*,
2007 WL 2713907 (N.D. Ohio Sept. 17, 2007)...................................................................13

*Bridgeport Music, Inc. v. Still N the Water Publ'g*,
327 F.3d 472 (6th Cir. 2003) ..............................................................................................12

*Burnshire Dev., LLC v. Cliffs Reduced Iron Corp*,
198 F. App'x 425 (6th Cir. 2006) .......................................................................................12

*Cabell Fin. Corp. v. Gurr*,
No. 1:12 CV 473, 2012 WL 6568237 (N.D. Ohio Nov. 27, 2012)......................................12

*Calphalon Corp. v. Rowlette*,
228 F.3d 718 (6th Cir. 2000) ..............................................................................................16

*Carr v. DJO Inc.*,
No. 3:12-CV-42, 2012 WL 3257666 (S.D. Ohio Aug. 8, 2012) ...........................................8

*Credit Life Ins. Co. v. Uniworld Ins. Co. Ltd.*,
94 F.R.D. 113 (S.D. Ohio 1982) .........................................................................................19

*Dombroski v. WellPoint, Inc.*,
2008-Ohio-4827, 119 Ohio St. 3d 506, 895 N.E.2d 538......................................................18

*Drexel Chemical Co. v. SGS Depauw & Stokoe*,
59 F.3d 170, 1995 WL 376722 (6th Cir. 1995) .............................................................8, 13

*Estate of Thomson v. Toyota Motor Corp. Worldwide*,
545 F.3d 357 (6th Cir. 2008) .......................................................................................*passim*

*Garlock v. The Ohio Bell Tel. Co. Inc.*,
No. 1:13CV02200, 2014 WL 2006781 (N.D. Ohio May 15, 2014) .....................................17

*Glover v. Small Bone Innovations, Inc.*,
No. 1:11 CV 2709, 2012 WL 2412068 (N.D. Ohio June 26, 2012) .....................................17

*In re Nat'l Prescription Opiate Litig.*,
956 F.3d 838 (6th Cir. 2020) ..............................................................................................10

*In re Nat'l Prescription Opiate Litig.*,
No. 1:17-MD-2804, 2019 WL 3553892 (N.D. Ohio Aug. 5, 2019) .................................9, 16

*In re Refco Securities Litig.*,
  759 F. Supp. 2d 342 (S.D.N.Y. 2011) .................................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2011 WL 10967617 (N.D. Cal. Aug. 1, 2011) ........................7

*Kafele v. Javitch, Block, Eisen & Rathbone*,
  No. 03-638, 2005 WL 5095186 (S.D. Ohio Apr. 20, 2005)..................................21

*Keene Bldg. Prods. Co. v. Stuc-O-Flex Int'l, Inc.*,
  No. 110CV1511, 2010 WL 3781606 (N.D. Ohio Sept. 23, 2010) ..................16, 18

*Kerry Steel, Inc. v. Paragon Indus.*,
  106 F.3d 147 (6th Cir. 1997) ..............................................................................13

*KNC Investments, LLC v. Lane's End Stallions, Inc.*,
  579 F. App'x 381 (6th Cir. 2014) .......................................................................13

*Lindsey v. Cargotec USA, Inc.*,
  2010 WL 3397355 (W.D. Ky. Aug. 26, 2010) .......................................................8

*MA Equip. Leasing I LLC v. Tilton*,
  No. 2:09-CV-880, 2010 WL 11538520 (S.D. Ohio Aug. 19, 2010)......................17

*Malone v. Windsor Casino Ltd*,
  14 Fed. Appx. 634 (6th Cir. 2001) ......................................................................11

*Microsys Computing, Inc. v. Dynamic Data Sys., LLC*,
  2006 WL 2225821 (N.D. Ohio Aug. 2, 2006) ................................................11, 18

*Ohio Edison Co. v. Frontier N. Inc.*,
  No. 5:14CV321, 2014 WL 6389564 (N.D. Ohio Nov. 14, 2014) .........................17

*Pinney Dock & Transp. Co. v. Penn Cent. Corp.*,
  838 F.2d 1445 (6th Cir. 1988) ............................................................................16

*Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*,
  904 F. Supp. 644 (N.D. Ohio 1995) ....................................................................17

*Quantum Sail Design Group, LLC v. Jannie Reuvers Sails, Ltd.*,
  2014 WL 266409 (W.D. Mich. Jan. 23, 2014) ......................................................8

*Scales v. J.C. Bradford and Co.*,
  925 F.2d 901 (6th Cir. 1991) ..............................................................................20

*Swagelok Co. v. Dansk Ventil & Fittings APS*,
  2006 WL 8454625 (N.D. Ohio March 9, 2006) ...................................................13

*Sung Hwan Co., Ltd. v. Rite Aid Corp.*,
　Index No. 112444/2001 (N.Y. Sup. Ct. Jan. 5, 2015), *aff'd*, 52 N.Y.S. 3d 627
　(App. Div. 2017) ........................................................................................................ 15

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*,
　474 F.3d 288 (6th Cir. 2007) ................................................................................... 20

*Tech. & Services, Inc. v. TACS Automation*,
　LLC, 2010 WL 2640047 (S.D. Ohio June 29, 2010) ................................................ 8

*Theunissen v. Matthews*,
　935 F.2d 1454 (6th Cir. 1991) ............................................................................. 7, 12

*Tomlinson v. Combined Underwriters Life Ins. Co.*,
　No. 08-CV-259-TCK-(FHM), 2009 WL 2601940 (N.D. Okla. Aug. 21, 2009) ................... 18

*Welsh v. Gibbs*,
　631 F.2d 436 (6th Cir. 1980) ................................................................................... 16

*Winner Acceptance Corp. v. Return on Capital Corp.*,
　No. CIV.A. 3088-VCP, 2008 WL 5352063 (Del. Ch. Dec. 23, 2008) ................................ 17

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ...................................................................................... 18, 20

Fed. R. Civ. P. 26(b)(2)(C)(i) ................................................................................... 20

Fed. R. Civ. P. 34(b) ............................................................................................ 5, 23

Fed. R. Civ. P. 34(b)(2)(E)(i) ..................................................................................... 5

Fed. R. Civ. P. 53(f) ................................................................................................... 7

Fed. R. Civ. P. 53(f)(5) ............................................................................................... 7

**Other Authorities**

Restatement (Second) of Conflict of Laws § 52 ...................................................... 18

Restatement (Second) of Conflict of Laws § 307 .................................................... 18

**PLAINTIFFS' RESPONSE TO RITE AID'S OBJECTIONS TO ORDER REGARDING PERSONAL JURISDICTION DISCOVERY OVER RITE AID CORPORATION**

Rite Aid Corporation ("RAC") and Rite Aid Hdqtrs. (RAHC) (collectively, "Rite Aid") object to the Special Master's Ruling Regarding Jurisdictional Discovery of Rite Aid Corp. ("Order," Doc. 3457). Doc. 3510. This Court should overrule Rite Aid's Objections and affirm the Special Master's Order. The Order, insofar as it granted Plaintiffs' motion to compel, is consistent with the Special Master's and this Court's prior personal jurisdiction discovery orders, both as to other defendants and as to Rite Aid in Track One-B, and simply requires Rite Aid to produce discovery that it was previously ordered to produce. Rite Aid's opportunity to litigate the merits of those discovery orders has long since passed and it should not be afforded a second bite of the apple now.

In addition, insofar as the Special Master denied Rite Aid's motion for a protective order and ordered Rite Aid to produce discovery on the issue of whether RAC and RAHC are alter egos, Rite Aid's objections are baseless. Contrary to Rite Aid's arguments, it was well within the Special Master's discretion to order such jurisdictional discovery to enable the parties to eventually brief (and this Court to resolve) the merits of whether this Court may exercise personal jurisdiction over RAC. Such jurisdictional discovery is particularly appropriate in light of Rite Aid's clear intent to rely on its assertions that RAC has no employees or assets, and no involvement in activities related to opioids, in challenging this Court's jurisdiction over RAC. Rite Aid's further contention that the jurisdictional discovery ordered is overbroad and unduly burdensome lacks merit. The Special Master carefully weighed each of Plaintiffs' requests in light of the factors for establishing personal jurisdiction pursuant to the alter ego theory, limited the scope of some of those requests, and determined that the remaining requests were relevant and proportional to the jurisdictional dispute. Rite Aid fails to demonstrate that that analysis was an abuse of discretion.

Moreover, Rite Aid's Objections are premised on several new arguments, which Rite Aid may not raise in this Court for the first time. Rite Aid also fundamentally misconstrues the applicable standard for jurisdictional discovery, repeatedly arguing that Plaintiffs have failed to satisfy the "prima facie" standard for establishing personal jurisdiction over RAC. Rite Aid puts the cart before the horse. Whether this Court has personal jurisdiction over RAC is not immediately before this Court; rather, pending before this Court is the precursor question of whether the Special Master appropriately resolved the scope of jurisdictional discovery. He did.

For all of these reasons, this Court should overrule Rite Aid's Objections.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute dates back, in part, to Track One-B. The Track One-B plaintiffs sued various Rite Aid corporate entities, including RAC and RAHC. *See, e.g.*, Doc. 3042-1 at 2. On December 23, 2019, Rite Aid filed a motion to dismiss RAC for lack of personal jurisdiction, asserting that RAC is a holding company and does not distribute or dispense prescription opioids or "continuously and systematically conduct business in Ohio." *Id.* at 1-2. RAC denied establishing national policies or procedures for its subsidiaries governing the dispensing of controlled substances. *Id.* at 3. RAC also disputed that it was the "alter ego" of any of its subsidiaries operating in Ohio. *Id.* at 7-11.

The Track One-B Plaintiffs sought jurisdictional discovery, initially focusing their requests on a 2018 report to RAC stockholders that appeared to contradict Rite Aid's assertion that RAC did not establish national policies related to opioid dispensing. *See* Ex. 1, Track One-B Plaintiffs' Email of Feb. 14, 2020; Doc. 3180 at 1 (noting "Plaintiffs' position is that only once RAC produces the requested documents will they be able to determine the appropriate scope of jurisdictional discovery"). RAC disputed the need for any jurisdictional discovery. The Special Master attempted to resolve the parties' dispute, but the matter eventually came before this Court.

2

The Court noted that the Special Master had previously "laid out the legal standards for allowing jurisdictional discovery and determining its appropriate scope," and had permitted jurisdictional discovery against other defendants who had moved to dismiss for lack of personal jurisdiction. *See* Doc. 3180 at 2 (citing Doc. 1512 "as instructive"). This Court "adopted" and "incorporated" those standards. Doc. 3180 at 2-4; *see also* Doc. 1512 at 2 (explaining that jurisdictional discovery is within the court's discretion and that court should allow jurisdictional discovery "unless the plaintiff's claim is 'clearly frivolous'"); *id.* at 5 (allowing jurisdictional discovery as to whether defendants had direct contacts with Ohio and on alter ego theory).

Applying those standards, this Court ordered Rite Aid to respond to Plaintiffs' written discovery requests (served in October 2019), and to the Plaintiffs' February e-mail request. Doc. 3180 at 2-3. On March 2, 2020, the Special Master issued an email clarifying the scope of the Court's jurisdictional discovery order. The Special Master specified that the discovery requested by Plaintiffs' February email includes the following: (a) documents sent or received by the Board of Directors or its Committees, including documents sent by internal subject matter experts and external advisors, and (b) the names and titles of individuals who served on the Board of Directors or its Committees or Subcommittees and who sent or received those documents, as well as the names and titles of the experts, advisors, and others who sent those documents. Ex. 2.

Rite Aid made a jurisdictional discovery production on April 3, 2020. Although the parties scheduled a meet and confer to discuss numerous deficiencies that Plaintiffs had identified, the Sixth Circuit subsequently struck the amendments by interlineation in Track One-B, meaning that RAC was no longer a defendant in that case. As a result, RAC cancelled the meet and confer.

Subsequently, the Track 3 Plaintiffs named RAC, RAHC, Rite Aid of Maryland d/b/a Mid-Atlantic Customer Support Center, Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center, and

Rite Aid of Ohio, Inc. as defendants.  Rite Aid once again moved to dismiss RAC for lack of personal jurisdiction.  Doc. 3339.  The Track 3 motion closely resembled that filed in Track One-B, though the Track 3 motion added new language, noting without explanation that "some Rite Aid Hdqtrs. Corp. documents were mislabeled as RAC documents."  Doc. 3339-1 at 5 n.5; *see also id.* at 9 n.7 (again referencing the mislabeled documents).  The Track 3 motion also argued that "Plaintiffs cannot obtain jurisdiction over RAC by arguing that a wholly-owned subsidiary operates in Ohio" and cited to Sixth Circuit law on how to determine whether a parent corporation operates as an alter ego of a subsidiary.  *Id.* at 8 (citing *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008)).

During a meet and confer on June 30, 2020, Plaintiffs detailed multiple deficiencies with the April 3 production, including that RAC had not produced documents from "internal subject matter experts" and "external advisors" provided to the Board of Directors, or identified such individuals, as required by the Special Master's March 2, 2020 email.  Ex. 3, 7/7/20 Letter from G. Fouts to A. Irpino at 3.  Plaintiffs also asked Rite Aid to identify which RAHC documents were "mislabeled" as RAC documents.  Rite Aid refused to provide any more information as to these requests.  *Id.*  On July 29, 2020, Plaintiffs filed a letter Motion to Compel.  Ex. 4.  The Motion to Compel noted that of the 119 jurisdictional discovery documents produced by Rite Aid, 115 of them "were produced with redactions – many of which were not only heavily applied, but which merely state 'Redaction' (purportedly for material not related to opioids subject matter)," and argued that such redactions were improper.  *Id.* at 2.  The Motion also sought RAC's compliance with the Special Master's prior order on subject matter experts and external advisors.  *Id.* at 8.

In light of the new language in Rite Aid's Track 3 motion and documents produced by Rite Aid, which cast doubt on the validity of RAC's factual assertions, including that RAC observed

corporate formalities, Plaintiffs propounded additional document requests on Rite Aid on June 23, 2020 (June 2020 Requests), to explore whether RAC was, in fact, operating as the alter ego of RAHC.  Ex. 5.  On July 23, 2020, Rite Aid filed a Letter Motion for a Protective Order Regarding Additional Jurisdictional Discovery, which wholesale objected to the June 2020 Requests (Ex. 6).  Plaintiffs opposed Rite Aid's motion (Ex. 7), and Rite Aid filed a reply (Ex. 8).

### The Special Master's Order

After extensive briefing by the parties, the Special Master granted in part both Plaintiffs' Motion to Compel and Defendants' Motion for a Protective Order.  Doc. 3457.  On Plaintiffs' Motion to Compel, the Special Master ordered, in relevant part, that RAC could not redact responsive documents based only on relevance, but that RAC could redact information consistent with the Court's CMO No. 2, which allows redaction of certain confidential or highly confidential information.  *Id*. at 9.  The Special Master rejected Rite Aid's argument that his prior order, which limited jurisdictional discovery to opioid subject matter, permitted it to redact unrelated material from responsive documents.  *Id*. at 7.  The Special Master noted that the Federal Rules require parties to produce documents as they are kept in the usual course of business, *id*. (citing Fed. R. Civ. P. 34(b)(2)(E)(i)), and that "[n]either Rule 34(b) – nor any other rule – authorizes a party to unilaterally redact information it believes to be irrelevant or non-responsive."  *Id.* (cit. om.).

On the Motion to Compel, the Special Master also ordered that Rite Aid identify internal subject matter experts, external advisors, or others who sent relevant documents to RAC's Board of Directors or its committees.  *Id*. at 14-15.  The Special Master rejected Rite Aid's contention that its internal process—by which RAC Board members do not receive information directly from experts but instead through a point person who uploads those materials to an application called "Boardbooks," (*id;* Ex. 9, Rite Aid's Opposition to Plaintiffs' Motion to Compel Jurisdictional Discovery, at 7)—meant that RAC needed only to name the point person.  Doc. 3457 at 15; *see*

*also* Ex. 2, Special Master's March 2 email (RAC is required to produce "[t]he names and titles of all of the individuals who, during the relevant period comprise … the experts, advisors, and others who sent" documents regarding opioids-related topics to the Board or its Committees).[1]

The Special Master largely denied Rite Aid's Motion for a Protective Order as to the June 2020 Requests.  The Special Master ruled that jurisdictional discovery need not be limited to what was ordered produced in Track One-B for several reasons:  (1) the plaintiffs were different in Track One-B and Track 3; (2) jurisdictional discovery in Track One-B was abruptly discontinued as a result of the Sixth Circuit's ruling; and (3) the Track 3 plaintiffs had identified information suggesting that RAC is an alter ego of RAHC.  Doc. 3457 at 16-18.  The Special Master rejected Rite Aid's argument that Plaintiffs were foreclosed from seeking alter ego jurisdictional discovery in Track 3 because all of the purportedly relevant documents were previously known to Plaintiffs in Track One-B and should have been raised then.  As the Special Master explained, some of the documents on which Plaintiffs rely were produced later and, in any event, it was likely Plaintiffs would have raised the alter ego theory in Track One-B if jurisdictional discovery had not been suspended.  *Id.* at 17.  Accordingly, the Special Master concluded that, "the balance of equities weighs in favor of allowing the Track 3 plaintiffs to conduct circumscribed jurisdictional discovery with respect to their alter ego theory.  Plaintiffs have provided a colorable basis for pursuing this discovery." *Id*. at 17-18.  "This conclusion is further buttressed by 'the well-established preference for allowing claims to be decided on the merits where possible.'"  *Id.* at 18 (citing *Burkeen v. A.R.E. Accessories, LLC*, 758 Fed. Appx. 412, 416 (6th Cir. 2018)).

---

[1] Rite Aid has not objected to the remainder of the Special Master's Order (at 9-14) as it pertains to Plaintiffs' Motion to Compel.  Plaintiffs have not objected to any part of the Special Master's Order.

After considering Plaintiffs' evidence that RAC and RAHC share employees, engage in the same business, and fail to maintain separate records, and that RAC may exert control over its subsidiaries, the Special Master ordered jurisdictional discovery, but limited its scope to RAC's relationship with RAHC.  *Id*. at 20-21.  The Special Master then analyzed each of the 10 categories of documents requested in light of the factors used by the Sixth Circuit to determine whether an alter ego relationship exists.  *Id*. at 21-27.  The Special Master allowed discovery on each of the 10 categories, but to the extent specific requests included other RAC subsidiaries, the Special Master limited the requests to RAC and RAHC.

On September 29, 2020, Rite Aid filed its Objection to the Order. Doc. 3510.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 53(f) and this Court's Appointment Order, this Court shall review *de novo* all objections to legal conclusions or recommendations made by the Special Master, and shall set aside a ruling on "a procedural matter only for abuse of discretion." Doc. 69 at 5; Fed. R. Civ. P. 53(f)(5); *see, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 10967617, at *1 (N.D. Cal. Aug. 1, 2011) (Special Master's discovery order is procedural matter reviewed for abuse of discretion); *In re Refco Securities Litig.*, 759 F. Supp. 2d 342, 344 (S.D.N.Y. 2011) (same, in MDL).

It is well established in this Circuit that when a defendant moves to dismiss for lack of personal jurisdiction and the plaintiff opposes the motion, the court may: (1) decide the issue based on the affidavits; (2) permit jurisdictional discovery; or (3) hold an evidentiary hearing. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The court has broad discretion on which of these methods it chooses and the scope of the discovery ordered.  *Id*. and at 1465. "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is

'clearly frivolous.'" *Carr v. DJO Inc.*, No. 3:12-CV-42, 2012 WL 3257666 at *3 (S.D. Ohio Aug. 8, 2012), *report and recommendation adopted*, No. 3:12-CV-42, 2012 WL 4050165 (S.D. Ohio Sept. 13, 2012) (cit. om.).

The threshold for jurisdictional discovery on an alter ego theory is not high; courts in the Sixth Circuit have ordered alter ego jurisdictional discovery where there is a "close relationship" between the corporate parent and the subsidiary, even if there is "little proof to support [the] jurisdictional allegations." *Quantum Sail Design Group, LLC v. Jannie Reuvers Sails, Ltd.*, 2014 WL 266409, at *7 (W.D. Mich. Jan. 23, 2014); *Drexel Chemical Co. v. SGS Depauw & Stokoe*, 59 F.3d 170, 1995 WL 376722 at *2 (6th Cir. 1995) (unpublished opinion) (where "the written submissions raised disputed issues of fact with regard to cross-corporate entanglements … the district court should [allow] further discovery"); *see also Tech. & Services, Inc. v. TACS Automation*, LLC, 2010 WL 2640047, at *3-4 (S.D. Ohio June 29, 2010) (allowing jurisdictional discovery on alter ego theory); *Mofield v. FNX Mining Co., USA*, Inc., 2009 WL 819493, *3 (M.D. Tenn. March 26, 2009) (same); *Lindsey v. Cargotec USA, Inc.*, 2010 WL 3397355, at *1 (W.D. Ky. Aug. 26, 2010) (same).

In order to determine whether a parent corporation operates as an alter ego of a subsidiary over which a court may exercise personal jurisdiction, the Sixth Circuit examines whether the parent and the subsidiary: (1) share the same employees and corporate officers; (2) engage in the same business enterprise; (3) have the same address and phone lines; (4) share the same assets; (5) complete the same tasks; (6) maintain separate books, tax returns, and financial statements; and (7) exert control over the daily affairs of the other corporation. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362-63 (6th Cir. 2008) (considering additional factors under Ohio law); *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 849 (6th Cir. 2017). "The alter-ego theory provides

for personal jurisdiction if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Anwar*, 876 F.3d at 848 (internal quotation marks omitted).

## ARGUMENT

### I.    The Discovery Ordered by the Special Master is Consistent with the Court's Prior Orders.

Rite Aid first contends that the Special Master's Order deviates from all other jurisdictional discovery orders previously entered against other MDL defendants and specifically from what has been previously ordered with respect to RAC.  Doc. 3510 at 7-9.  Nothing could be further from the truth.  As indicated above, the Special Master allowed alter ego jurisdictional discovery in Track One against several defendants.  *See* Doc. 1512 at 5; *see also In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3553892, at *3-4 (N.D. Ohio Aug. 5, 2019) (refusing to dismiss Mallinckrodt plc and Teva Ltd. from Track One case after plaintiffs presented evidence, obtained through jurisdictional discovery, on alter ego theory).  In Track One-B, this Court adopted and incorporated this prior order, allowing alter ego discovery.  Doc. 3180 at 2.

In addition, the Special Master and Court never indicated that their initial orders in Track One-B were the only jurisdictional discovery that would be permitted as to RAC.  To the contrary, the Court explicitly recognized that the Track One-B Plaintiffs' discovery requests were just initial requests.  *Id.* at 1.  Then, in Track 3, the Court ordered the parties to "meet and confer as soon as possible to discuss whether and the extent to which jurisdictional discovery may be necessary, and shall incorporate the reasoning set out in the Court's Order referenced at docket no. 3180."  Doc. 3325 at 2.  As the Special Master correctly found, the CMO for Track 3 therefore contemplates that further discovery may be necessary, and referred to the Court's prior ruling incorporating the Special Master's order permitting alter ego discovery.  Doc. 3457 at 16 n.16 (wording of CMO for

Track 3 "suggests some modifications or amendments may be appropriate" on the scope of jurisdictional discovery). Rite Aid concedes in its Objection that the CMO for Track 3 did not bar Plaintiffs from seeking additional discovery, but fails to acknowledge that the prior rulings on jurisdictional discovery expressly allowed for alter ego discovery. Doc. 3510 at 7-8.

Moreover, while the Special Master stated that the Track 3 Plaintiffs' "theory of personal jurisdiction has evolved" from that of the Track One-B plaintiffs (Doc. 3457 at 16), Plaintiffs have not, as Rite Aid argues, "change[d] tack." Doc. 3510 at 8. Plaintiffs' Motion to Compel is premised on RAC's failure to fully respond to previously-ordered discovery.[2] To the extent Plaintiffs are also pursuing additional discovery to support another basis for jurisdiction (*i.e.*, alter ego), there is nothing unfair about that, given that RAC's own jurisdictional assertions put that issue in dispute.

Allowing jurisdictional discovery on Plaintiffs' alter ego theory is also not inconsistent with discovery in multi-district litigation. *Id.* at 8. In fact, the Sixth Circuit recently reaffirmed that discovery in MDL proceedings should be proportional to the needs of the particular case. *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 846 (6th Cir. 2020). The Special Master's Order ensures exactly that, by allowing discovery consistent with what has been ordered for other MDL defendants, but tailored to the needs of the Track 3 Plaintiffs. The jurisdictional dispute with RAC is in its infancy compared to the jurisdictional disputes with other defendants in Track One. Plaintiffs had just begun jurisdictional discovery as to RAC when the Track One-B amendments were struck earlier this year. No further discussions were held until Track 3 began. Track 3 is the

---

[2] The Special Master explicitly recognized that some of Plaintiffs' evidence shows that RAC promulgated opioid policies and conducted global oversight and risk management with regard to opioid dispensing for its subsidiaries, which is relevant to whether personal jurisdiction is proper over RAC. Plaintiffs have not abandoned this theory. *See* Doc. 3457 at 20 n.19.

first time the Court will decide the issue of personal jurisdiction against RAC.  Moreover, the Track 3 CMO, suggesting that additional discovery might be permitted, was issued in June, the same month that Plaintiffs propounded the June 2020 Requests.  Thus, there is nothing inefficient or unfair about the Court allowing the alter ego discovery.  Instead, as the Special Master noted, it is preferable for personal jurisdiction to be decided on the merits, with the Court having as much information as possible before it does so.  *See* Doc. 3457 at 18.[3]

## II.     The Special Master Properly Ordered Discovery as to Whether RAC and RAHC Are Alter Egos.

Rite Aid makes several arguments in support of its position that the Special Master erred in ordering discovery on Plaintiffs' alter ego theory.  These arguments lack merit.

### A.     The Court should disregard Rite Aid's new arguments that are irrelevant to the issue of jurisdictional discovery.

Rite Aid argues for the first time that Plaintiffs are not entitled to alter ego discovery because they have not pleaded it.  Doc. 3510 at 9.  Because Rite Aid failed to raise this argument before the Special Master, it is waived.  Doc. 1349 at 2 (Court will not consider legal theories not raised before the Special Master).  In any event, the alter ego theory of personal jurisdiction does not need to be explicitly stated in the complaint; courts look to "all pleadings, motions and facts presented" by the plaintiff.  *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, 2006 WL 2225821, at *4 (N.D. Ohio Aug. 2, 2006); *see also Malone v. Windsor Casino Ltd*, 14 Fed. Appx.

---

[3] To the extent that Rite Aid is arguing that the Track 3 Plaintiffs are somehow legally bound by the discovery sought by the Track One-B plaintiffs (*see* Doc. 3510 at 9 n.3), the Special Master found that the parties had not briefed this issue.  Doc. 3457 at 17 ("The Special Master will not engage in a lengthy fact-finding exercise to determine what the Track 1-B plaintiffs should have known and when they should have known it (which is not fully developed on this record, and would be a poor use of the Court's time in any event), and then perform a complicated analysis of whether the Track 3 plaintiffs should be bound by the jurisdictional theories asserted in Track 1-B (which has not been briefed by the parties).").  Thus, this Court should not consider this argument for the first time.  Doc. 1349 at 2 (Court will not consider legal theories not raised before the Special Master).

634, 636 (6th Cir. 2001) (considering whether plaintiff presented a prima facie case for personal jurisdiction by examining the complaint as well as the facts presented in other pleadings and affidavits).  Nor do the cases cited by Rite Aid (Doc. 3510 at 9-10) hold that alter ego is a theory that must be pleaded or that jurisdictional discovery should be denied unless the facts supporting the alter ego theory are pled in the complaint.  None of the cases even involved jurisdictional discovery,

In addition, Rite Aid repeatedly contends (*Id*. at 10, 13-15) that Plaintiffs have not met the "prima facie" standard to justify alter ego discovery.  But that is not the applicable standard as to whether jurisdictional discovery should be permitted, which is the issue presently before this Court.  The "relatively slight" prima facie standard is what a plaintiff must prove to establish personal jurisdiction over a defendant when no evidentiary hearing is allowed.  *See, e.g., Cabell Fin. Corp. v. Gurr*, No. 1:12 CV 473, 2012 WL 6568237, at *1 (N.D. Ohio Nov. 27, 2012), *report and recommendation adopted,* No. 1:12CV473, 2012 WL 6568228 (N.D. Ohio Dec. 17, 2012) ("The plaintiff's burden in cases resolved on written submission is 'relatively slight' and is met by 'a *prima facie* showing that personal jurisdiction exists.'") (footnotes omitted); *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 476-78 (6th Cir. 2003) (prima facie standard applies to motion to dismiss decided *after* discovery); *Theunissen*, 935 F.2d at 1458.  Thus, Rite Aid's invocation of the prima facie standard is premature here, where the Special Master's order concerns only jurisdictional discovery, not whether the Court may exercise personal jurisdiction over RAC.

Determining whether jurisdictional discovery should be allowed, and the scope of it, is left to the court's discretion.  *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp*, 198 F. App'x 425, 434 (6th Cir. 2006) ("[T]he decision whether to grant discovery ... before ruling on a 12(b)(2) motion

is discretionary."); *see also KNC Investments, LLC v. Lane's End Stallions, Inc.*, 579 F. App'x 381, 385 (6th Cir. 2014) (same). However, in a case such as this one, with "disputed issues of fact with regard to cross-corporate entanglements[,] … the district court should [allow] further discovery." *Drexel Chemical Co. v. SGS Depauw & Stokoe*, 59 F.3d 170, 1995 WL 376722 at *2 (6th Cir. 1995) (unpublished opinion).

For these same reasons, Rite Aid's assertion that "[t]he Special Master failed to engage in any serious analysis regarding whether Plaintiffs established a prima facie case for alter ego jurisdiction over RAC" (Doc. 3510 at 14) also has no relevance here. The Special Master was not required to determine whether Plaintiffs had established a prima facie case before he ordered discovery.[4]

The evidence Plaintiffs presented to the Special Master clearly demonstrates why additional jurisdictional discovery is necessary. For example, the Special Master cited the bonus plans that RAC had for its stores, which show a level of control over Rite Aid stores and that RAC engages in the same business enterprise as its stores. Doc. 3457 at 17, (citing Ex. K and Ex. L of Plaintiffs' 8/6/20 Response to RAC's motion for a protective order). The Special Master also cited

---

[4] Plaintiffs acknowledge that the Special Master stated that, "[b]efore granting jurisdictional discovery, the Court must find Plaintiffs have presented a prima facie basis for asserting jurisdiction," (Doc. 3457 at 19), but respectfully suggest this is not the standard in the Sixth Circuit, as shown by the cases cited above. In addition, the first case the Special Master cited, *Beightler v. Produkte Fur Die Medizin AG*, 2007 WL 2713907, at *4 (N.D. Ohio Sept. 17, 2007), contains such a statement, and cites to *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 149 (6th Cir. 1997) for support. But *Kerry Steel,* in which jurisdictional discovery had already taken place, contains no such requirement, and instead acknowledges the general prima facie standard that applies when there has been no evidentiary hearing. The other case cited by the Special Master, *Swagelok Co. v. Dansk Ventil & Fittings APS*, 2006 WL 8454625, at *2 (N.D. Ohio March 9, 2006), relies on law outside of the Sixth Circuit for its statement that a plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery is allowed. Both *Beightler* and *Swagelok* also acknowledged that it is within the discretion of the trial court to determine whether discovery should be allowed. *Beightler*, 2007 WL 2713907, at *4; *Swagelok*, 2006 WL 8454625, at *1.

other evidence that relates to whether RAC and RAHC are alter egos, such as documents that suggest that RAC and RAHC share employees, engage in the same business, fail to maintain separate records, and that RAC exerts control over its subsidiaries, including RAHC.  *Id.* at 20 (citing Plaintiffs' 8/6/20 Response to RAC's motion for a protective order (attached hereto as Ex. 7) at 4-9 and Exhs. E, H, I, J, M).[5]  The documents that Plaintiffs have received so far from Rite Aid and other defendants show, for example, RAC requesting threshold increases for Ohio Rite Aid Stores.  *See* Ex. 7 at 7.  Far from being merely evidence that RAC as a parent "[held] itself out to the public" (Doc. 3510 at 13) without distinguishing between itself and its subsidiaries, the evidence presented to the Special Master shows RAC also internally identified several key witnesses as RAC employees, including in employment evaluations and emails, and that many of those employees engaged in work related to opioids such as compliance issues and threshold increases.  *See* Ex. 7 at 6.

Rite Aid's arguments again go to the substance of whether the evidence Plaintiffs have presented thus far is enough to confer personal jurisdiction over RAC in Ohio.  But the dispute before this Court is whether jurisdictional discovery is appropriate, and the evidence the Special Master reviewed shows that it is.[6]  The Special Master properly analyzed the Sixth Circuit factors on whether a subsidiary is an alter ego of its parent and found that the evidence Plaintiffs have uncovered so far demonstrates that further discovery is warranted.  This was well within his discretion.

---

[5] Because the exhibits to Plaintiffs' 8/6/20 Response to RAC's motion for a Protective Order are marked confidential, Plaintiffs have not attached them here, but will file them under seal at the Court's request.

[6] For a more complete recounting of the evidence, Plaintiffs direct the Court to Plaintiffs' 8/6/20 Response to RAC's motion for a Protective Order.  *See* Ex. 7 at 6-9.

The New York case cited by Rite Aid (Doc. 3510 at 14-15) regarding its relationship with a different subsidiary is not even about jurisdictional discovery.  What a New York court found in a different case with different underlying facts concerning a different subsidiary has no bearing on whether RAC and RAHC are alter egos, let alone whether jurisdictional discovery is appropriate here.[7]  Rite Aid's remark that "[t]he facts recited in [the New York] opinion are uncontroverted by Plaintiffs and are equally controlling here" misses the point entirely:  even if the New York dispute were relevant, Plaintiffs are unable to counter these facts here absent jurisdictional discovery, which is precisely why the Special Master's order should be affirmed.

**B.      Rite Aid has waived any argument that Delaware law applies, which it does not.**

Rite Aid contends for the first time that Delaware law governs whether RAC and RAHC are alter egos because RAC is incorporated in Delaware.  Doc. 3510 at 10-13.  But pursuant to this Court's own prior order, Rite Aid may not raise any new arguments that were not raised before the Special Master:

> Submitting new evidence, case law, or legal theories to the Court for *de novo* review in an objection to a special master's ruling without first submitting them to the special master undermines this purpose and wastes judicial resources.  Therefore, going forward, the Court will strike any party's objection to a special master's ruling that raises, for the first time before the Court, new evidence or legal theories not first provided to the special master for consideration.

---

[7] While the New York *Sung Hwan Co.* case is irrelevant, many points in the factual findings show that, although RAC argued there, as here, that it has no employees, at least one person was employed by RAC from 1990-2010, and others thought they were employed by RAC, or had employment contracts with RAC and also worked for RAHC, or were confused as to which entity employed them.  Doc. 3510-6 at 14 (employment contract with RAC), 15 ("Somewhat confusing, however, was his own employment status. He testified that he was employed by HQ and its subsidiaries, but his employment contract was with RAC, a corporation he insisted had no employees"); 20 (two employees testified that they were employees of RAC); 21 (employment contract with RAC), and 22 ("Kindler was employed by RAC from 1990 through 2010, when he retired.").  *Sung Hwan Co., Ltd. v. Rite Aid Corp.*, Index No. 112444/2001 (N.Y. Sup. Ct. Jan. 5, 2015), *aff'd*, 52 N.Y.S. 3d 627 (App. Div. 2017).

Doc. 1349 at 2.  *See also* Doc. 1422 at 1 (reaffirming that Court will strike party's objection that raises new legal theories not first presented to the Special Master); *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988).  Rite Aid has never argued that Delaware law applies.  *See, e.g.*, Doc. 3042-1 at 8-10; Doc. 3339-1 at 8-9; Ex. 6, Rite Aid 7/23/20 Motion for a Protective Order Regarding Additional Jurisdictional Discovery.  Indeed, to the contrary, Rite Aid has at least implicitly conceded that the Sixth Circuit's *Thomson/Anwar* factors apply.  Ex. 8, Rite Aid 8/13/20 Letter Reply in Support of Protective Order at 2, 6, 7, 8.  This Court should therefore decline to consider Rite Aid's argument that Delaware law applies.

In any event, Rite Aid's assertion that Delaware law applies is incorrect.  When Ohio is the forum state, as it is here, federal courts apply Ohio and Sixth Circuit law to determine whether personal jurisdiction exists.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980).  Similarly, Ohio and Sixth Circuit law also govern whether parent and subsidiary corporations are alter egos for jurisdictional purposes, even if the parent is not an Ohio resident or not incorporated in Ohio.  *See Estate of Thomson*, 545 F.3d at 362 ("In applying the alter-ego theory of personal jurisdiction [where the out of state parent contested jurisdiction] we must look to Ohio law"); *Keene Bldg. Prods. Co. v. Stuc-O-Flex Int'l, Inc.*, No. 110CV1511, 2010 WL 3781606, at *2 (N.D. Ohio Sept. 23, 2010) (Polster, J.) (where the parent corporation contested jurisdiction "the Court must look to the law of the forum state [Ohio] to determine whether personal jurisdiction exists").  Federal courts in Ohio use the factors laid out in *Thomson* and *Anwar* to determine whether a parent is the alter ego of a subsidiary for jurisdictional purposes.  *See, e.g., In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3553892, at *3 (N.D. Ohio Aug. 5, 2019) ("in determining whether a subsidiary is

an alter ego of the parent corporation, Ohio courts consider factors such as [those laid out in *Thomson*]" and *Anwar*).

As the cases cited by Rite Aid recognize, even when the parent company that contests jurisdiction is incorporated in Delaware, federal courts in Ohio consistently apply Ohio law and use the *Thomson/Anwar* factors to determine whether the parent and subsidiary are alter egos for jurisdictional purposes. *See Garlock v. The Ohio Bell Tel. Co. Inc.*, No. 1:13CV02200, 2014 WL 2006781, at *5 (N.D. Ohio May 15, 2014) ("in order to apply the alter-ego theory of personal jurisdiction, the Court must consider Ohio's alter-ego test" comprised of the factors in *Thomson*); *Ohio Edison Co. v. Frontier N. Inc.*, No. 5:14CV321, 2014 WL 6389564, at *9 (N.D. Ohio Nov. 14, 2014) ("the Court must apply Ohio's alter ego doctrine … [and] may … rely on Sixth Circuit case law applying the alter ego theory of personal jurisdiction as long as the cases are consistent with Ohio law"); *see also Glover v. Small Bone Innovations, Inc.*, No. 1:11 CV 2709, 2012 WL 2412068, at *6 (N.D. Ohio June 26, 2012) (same). Because the forum here is Ohio, Ohio law (including the Sixth Circuit's *Thomson/Anwar* factors) governs the alter ego analysis for personal jurisdiction, regardless of whether RAC is a Delaware corporation.

Rite Aid mistakenly relies (Doc. 3510 at 10-12) upon cases deciding whether the corporate veil can be pierced to hold a parent liable for its subsidiary's condut to suggest that the bar for obtaining alter ego discovery is essentially insurmountable. But these cases do not address personal jurisdiction under the alter ego theory, but rather substantive liability, and are therefore inapplicable. *See, e.g.*, *MA Equip. Leasing I LLC v. Tilton*, No. 2:09-CV-880, 2010 WL 11538520 (S.D. Ohio Aug. 19, 2010) (determining whether corporate veil could be pierced for liability purposes where personal jurisdiction is not at issue); *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 655 (N.D. Ohio 1995) (same); *Winner Acceptance Corp. v. Return on*

17

*Capital Corp.*, No. CIV.A. 3088-VCP, 2008 WL 5352063, at *4 (Del. Ch. Dec. 23, 2008) (same);

*Dombroski v. WellPoint, Inc.*, 2008-Ohio-4827, 119 Ohio St. 3d 506, 895 N.E.2d 538 (addressing

the second prong of Ohio's test for the equitable remedy of piercing corporate veil for liability

purposes).  Under Ohio and Sixth Circuit law, whether a parent and its subsidiary may be treated

as alter egos for jurisdictional purposes "requires application of a less onerous standard than that

necessary for piercing the corporate veil for liability purposes."  *Keene Bldg. Prod. Co.,* 2010 WL

3781606, at *2; *accord Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05 CV 2205,

2006 WL 2225821, at *6 (N.D. Ohio Aug. 2, 2006).  As discussed above, the factors in

*Thomson/Anwar* set the standard for determining whether a parent and subsidiary are alter egos

for jurisdictional purposes in Ohio.[8]

## III.   The Discovery Ordered by the Special Master Was Reasonably Tailored.

Rite Aid contends (Doc. 3510 at 16) that, in ordering jurisdictional discovery, the Special

Master failed to consider whether the requested discovery is relevant and proportional as required

by Federal Rule of Civil Procedure 26(b)(1).  That is simply not true.  Indeed, the Special Master

acknowledged that, although the Court has broad discretion in determining whether jurisdictional

discovery is appropriate, the Court should limit unduly burdensome and overly broad requests.

Doc. 3457 at 15.  The Special Master then specifically addressed Rite Aid's argument that the June

2020 Requests were unduly burdensome and whether Plaintiffs' requests were "narrowly tailored"

to obtain information necessary to establish personal jurisdiction based on the theory that RAC is

---

[8] Even Rite Aid's choice of law analysis conflates piercing the corporate veil for liability purposes
with the alter ego theory of personal jurisdiction.  The Oklahoma case Rite Aid cites, *Tomlinson
v. Combined Underwriters Life Ins. Co.*, No. 08-CV-259-TCK-(FHM), 2009 WL 2601940, *1
(N.D. Okla. Aug. 21, 2009) (citing Restatement (Second) of Conflict of Laws § 307), is not related
to personal jurisdiction, but concerns veil piercing for *liability purposes*.  A different section of
the Restatement specifically discusses alter ego theory for *jurisdictional purposes*.  *See*
Restatement (Second) of Conflict of Laws § 52.

an alter ego of RAHC.  Doc. 3457 at 18.  The Special Master limited a number of Plaintiffs' requests on grounds of relevance.  *See, e.g.*, Doc. 3457 at 20 (generally limiting alter ego discovery to RAC's relationship with RAHC only, and not any other subsidiaries); *id.* at 24 (RAHC need not respond to requests for production of its finances derived from subsidiaries, its business in Ohio, its pharmacies, or its sales of controlled substances because income derived from RAHC's subsidiaries is not relevant to alter ego jurisdiction over RAC); *id.* at 27 (RAHC need not respond to requests for production of documents relating to its contacts with Ohio, since RAHC does not contest personal jurisdiction).  The Special Master reviewed Plaintiffs' requests for production and generally determined that each request, subject to the Special Master's limitations, was "reasonably tailored" to obtain information relevant to alter ego discovery.  *Id.* at 21-27.  Thus, the Special Master concluded that each request was both relevant and proportional.

Rite Aid specifically contends that requests related to its financial information, information related to employees of RAC and RAHC, and information regarding the two companies' organizational structures are overly broad and disproportionate.  Doc. 3510 at 17-19.  But the Special Master carefully considered requests related to each of these and concluded that they addressed the Sixth Circuit factors used to evaluate whether two companies are alter egos.  Doc. 3457 at 21-22, 24-25 (citing *Anwar,* 876 F.3d at 849; *Estate of Thomson*, 545 F.3d at 362-63).  For example, Plaintiffs' request for RAC financial documents directly relates to several alter ego factors such that discovery into whether the finances of RAC and RAHC are entangled is appropriate.  *See, e.g., Anwar,* 876 F.3d at 849; *Estate of Thomson*, 545 F.3d at 362-63; *Credit Life Ins. Co. v. Uniworld Ins. Co. Ltd.*, 94 F.R.D. 113, 117–21 (S.D. Ohio 1982) (ordering jurisdictional discovery, including broad financial documents such as tax returns, because, as the Defendants "are alleged to be financially intertwined, to the extent of being alter egos … the income of [the

Defendants] has been placed in issue"). Similarly, the Special Master found that Plaintiffs' requests related to RAC's and RAHC's organizational structures and employees are not overly burdensome because they also mirror the Sixth Circuit factors. *See* Doc. 3457 at 22 (citing *Anwar*, 876 F.3d at 849); *see also Estate of Thomson*, 545 F.3d at 363.

Rite Aid asserts (Doc. 3510 at 16-18) that because there was a less burdensome way to obtain the same information (*i.e.*, by using interrogatories), the Special Master necessarily failed to appropriately consider whether the requests were too burdensome. But the Court has "broad discretion" in determining the scope of discovery. *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007); *Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 906 (6th Cir. 1991) ("[T]he trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."). In determining whether discovery is "proportional," the court considers, *inter alia*, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The court "must limit" discovery "if it determines" that discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Here, the Special Master, in largely denying Rite Aid's request for a protective order, plainly concluded that the potential usefulness of the requested information outweighed any burden asserted by Rite Aid. And Rite Aid never argued that the same information could be obtained from another, less burdensome source. That determination was well within the Special Master's discretion.

Even assuming, *arguendo*, that the Court's obligation to limit burdensome discovery extends to a different method of discovery from the same source, Rite Aid did not establish that Plaintiffs could have obtained the requested discovery through interrogatories, as Rite Aid suggests. For example, as Rite Aid itself concedes (Doc. 3510 at 17), if the Court had ordered Rite

Aid to respond to interrogatories regarding its financial information, Rite Aid would have simply affirmed its position that RAC has no assets and receives no income from RAHC, such that the interrogatories would have had little jurisdictional discovery value to Plaintiffs. And Plaintiffs have indicated that there is reason to distrust Rite Aid's assertions that RAC is merely a holding company with no assets or employees, *see, e.g*., Ex. 7, Plaintiffs' 8/6/20 Response to Rite Aid's Motion for a Protective Order at 1 ("Plaintiffs' investigation has uncovered evidence that directly contradicts . . . that RAC is a holding company, with no employees or business operations"), which is precisely why Plaintiffs requested production of documents instead. Thus, even if the requests for production are more burdensome than interrogatories, the expected benefit is also greater, such that the ordered discovery is proportional.

Moreover, in its briefing to the Special Master, Rite Aid never argued that the requests for production were overly burdensome such that the Court should only permit interrogatories. *See, e.g., Kafele v. Javitch, Block, Eisen & Rathbone*, No. 03-638, 2005 WL 5095186, *2 n.8 (S.D. Ohio Apr. 20, 2005) (objecting party "must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden"). Instead, Rite Aid broadly argued that all alter ego discovery should be precluded, primarily because the Court's prior orders purportedly foreclosed such discovery. *See, e.g.*, Ex. 6 Rite Aid 7/23/20 Motion for a Protective Order at 10; Ex. 8, Rite Aid 8/13/20 Letter Reply in Support of Protective Order at 2-3. Rite Aid, therefore, is precluded from arguing for the first time that the Court should only have permitted interrogatories. *See* Doc. 1349 at 2 (Court will not consider legal theories not raised before the Special Master).

To further support its argument that the discovery ordered by the Special Master is overly burdensome, Rite Aid cites two specific examples: (1) the requirement that RAC identify internal

subject matter experts who provided information to the Board of Directors (Doc. 3510 at 16) and (2) the requirement that Rite Aid produce confidential Board materials (*id*. at 19-20).  These examples, however, are inapt, because neither of these productions was ordered as part of the additional alter ego discovery, in which the Special Master was considering for the first time the relevance and proportionality of the requested discovery.  Instead, both of these productions were ordered in response to Plaintiffs' motion to compel, because RAC had failed to produce such discovery in response to prior rulings.  *See* Doc. 3457 at 6-9, 14-15.  Rite Aid does not now get a second bite at the apple to relitigate the merits of those prior discovery rulings.  The time for substantive challenges to those rulings has long since passed.  Indeed, Rite Aid has urged that the Court is bound by those prior rulings.  *See, e.g.*, Doc. 3510 at 7 ("[t]his Court has already determined the scope of jurisdictional discovery of RAC," such that Plaintiffs should not be able "to serve broad requests for *additional discovery*") (emphasis added).

In any event, Rite Aid's substantive objections to these ordered productions fail.  As to the requirement that RAC identify internal subject matter experts, external advisors, and others who provided information to the Board of Directors and its Committees, Rite Aid contends (*id*. at 16) that such discovery is "practically impossible," and is "unrelated to any alter ego factor and unrelated to jurisdictional discovery."  But Rite Aid has never explained in any meaningful way why it cannot identify the internal subject matter experts and external advisors who provided information to its Board or why the burden to do so would be unjustified.  And there is no need that such discovery be related to any alter ego factor because such discovery was not ordered on that basis.

As to the requirement that RAC produce confidential Board materials, Rite Aid argues (*id*. at 19) that that order "appears to conflict with this Court's Case Management Order, which

22

expressly permits defendants to redact 'segregated, non-responsive, Confidential or Highly Confidential information' from documents, materials, or other things produced.  Doc. 441 at 9." Rite Aid's argument lacks merit.  Contrary to Rite Aid's assertion (Doc. 3510 at 20), Rite Aid never asserted confidentiality of its Board materials as a ground for its redactions.  *See, e.g.*, Doc. 3457 at 7 n.9 (observing that RAC cited only relevance, not confidentiality, as a reason for its redactions); *id.* at 8-9 ("RAC does ***not*** assert the redactions are warranted because the material is highly confidential or sensitive.  Rather, RAC merely contends that the redacted material is *irrelevant* to the subject of opioids.").  Instead, Rite Aid redacted information from its Board materials solely on grounds of relevance.  *See* Ex. 9, Rite Aid's Opposition to Plaintiffs' Motion to Compel at 6-7 (citing cases where "relevance redactions" were permitted for Board materials).  Accordingly, Rite Aid cannot now argue, after-the-fact, that its redactions were justified because its Board materials were confidential under this Court's Case Management Order.  *See* Doc. 1349 at 2 (Court will not consider legal theories not raised before the Special Master).  In any event, the Special Master expressly permitted RAC, in producing unredacted documents, to redact information that fits within Case Management Order No. 2.  Doc. 3457 at 9.  However, as the Special Master correctly recognized, RAC is required to produce responsive "documents," and therefore is not permitted to unilaterally redact information that it considers to not be relevant, unless that information can be redacted on other grounds permitted under CMO No. 2.  *See* Doc. 3457 at 7 ("Neither Rule 34(b)—nor any other rule—authorizes a party to unilaterally redact information it believes to be irrelevant or non-responsive."); *id.* at 9 (permitting redaction under CMO 2 for highly confidential or confidential information related to non-opioid products).

Finally, Rite Aid argues (Doc. 3510 at 19) that Plaintiffs' alter ego discovery requests are vague.  But Rite Aid failed to raise that argument before the Special Master, so it is now waived.

Doc. 1349 at 2.  Nor did Rite Aid ever argue during the meet and confers that it did not understand Plaintiffs' requests.

## CONCLUSION

Rite Aid fails to raise any argument that would warrant sustaining its Objections.  Instead, Rite Aid attempts to argue its Motion to Dismiss on the merits, making several entirely new arguments that it did not bring before the Special Master and that are, in any event, irrelevant and wrong.  The Order is consistent with this Court's prior orders permitting jurisdictional discovery and Rite Aid must produce the discovery previously ordered.  Similarly, the Special Master was well within his discretion to order Rite Aid to respond to Plaintiffs' June 2020 Requests on the alter ego theory, and appropriately tailored those requests.  This Court should overrule Rite Aid's Objection.

Dated: October 13, 2020               Respectfully submitted,

*/s/Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL LAW
422 Ninth Street
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

*/s/Peter H. Weinberger*
Peter H. Weinberger (0022076) SPANGENBERG
SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Frank Gallucci
PLEVIN & GALLUCCI COMPANY, L.P.A.
55 Public Square, Suite 222
Cleveland, OH 44113
(216) 861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiffs Lake County and Trumbull
County, Ohio*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 13, 2020, a copy of the foregoing has been filed electronically using the Court's CM/ECF system and will be served *via* the Court's CM/ECF filing system, which will send notification of such filing to the attorneys of record at their e-mail addresses on file with the Court.

*/s/ Peter H. Weinberger*
Peter H. Weinberger