# EXHIBIT 4

# SPANGENBERG
## SHIBLEY & LIBER
### TRIAL LAWYERS

— COMMITMENT. INTEGRITY. RESULTS. —

PETER H. WEINBERGER, OF COUNSEL
WILLIAM HAWAL
PETER J. BRODHEAD, OF COUNSEL
DENNIS R. LANSDOWNE
STUART E. SCOTT
NICHOLAS A. DICELLO
JEREMY A. TOR
DUSTIN B. HERMAN
MICHAEL P. LEWIS
KEVIN C. HULICK
JERADON Z. MURA

CRAIG SPANGENBERG
(1914-1998)

NORMAN W. SHIBLEY
(1921-1992)

JOHN D. LIBER
(1938-2013)

July 29, 2020

**Sent via email at david@specialmaster.law**
Special Master David Cohen
24400 Chagrin Blvd., Suite 30
Cleveland, OH 44122

**RE: Motion To Compel Rite Aid To Produce Jurisdictional Discovery**

Dear Special Master Cohen:

This Court previously ruled that Plaintiffs are entitled to jurisdictional discovery to oppose Rite Aid Corporation's Motion to Dismiss for Lack of Personal Jurisdiction. Because Rite Aid Corporation (RAC) has largely flouted those discovery orders, Plaintiffs hereby move for an order to compel production.[1]

The Court precisely defined the appropriate scope of jurisdictional discovery and ordered RAC to produce the following:

(1) corporate organizational charts;

(2) policies regarding branding, marketing, sales, promotion, distribution, dispensing, regulatory affairs, and pharmacovigilance, to the extent they apply to opioids;

(3) policies regarding corporate management to the extent such policies bear on opioid related subsidiaries;

(4) annual reports;

(5) a response to written discovery previously served on October 29, 2019;

---

[1] This dispute is related to, but separate from, the parties' dispute over Track 3 Plaintiffs' June 23, 2020 discovery requests, for which Rite Aid has moved for a Protective Order. *See* June 23, 2020 letter from G. Fouts to Special Master Cohen. Plaintiffs will respond to that motion on as ordered by the Special Master.

(6) documents sent or received by RAC's Board of Directors, and/or any of the Board's Committees, regarding opioid-related policies and procedures (to include documents sent to the Board or its Committees by internal subject matter experts and external advisors);

(7) the names and titles of the individuals who comprise RAC's Board or its Committees, as well as the names and titles of the experts, advisors, and others who sent the above documents; and

(8) the case captions of any case in which RAC was named as a defendant and argued that the court lacked personal jurisdiction over RAC.

*See* Doc. 3180 at 2-3; Ex. A, SM Cohen e-mail of Mar. 2, 2020 (defining the discovery requested in Plaintiffs' e-mail, which Doc. 3180 required to be produced).

To date, Rite Aid has produced only: responses to written discovery served on October 29, 2019 (item 5); a limited number of documents sent to or received by RAC's Board or its Committees (a subset of item 6); the names and titles of individuals who served on RAC's Board or its Committees (a subset of item 7); and the case captions in which RAC challenged personal jurisdiction (item 8). Relative to this jurisdictional discovery, Rite Aid produced a total of only 119 documents (110 documents on April 13, 2020 and 9 documents on July 23, 2020). Many of these documents appear on their face to be incomplete.[2] Moreover, 115 of the 119 documents were produced with redactions[3] - many of which were not only heavily applied, but which merely state "Redaction" (purportedly for material not related to opioid subject matter).[4] Such redactions are improper under this Court's governing orders.[5] Additionally, Rite Aid has over-designated privilege relative to its jurisdictional discovery, *making 275 privilege claims* while producing 119 (mostly heavily redacted) documents.

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs hereby move this Court to compel Rite Aid to produce the remaining discovery ordered forthwith, as well as to reproduce the documents already produced in their full/complete form and without relevance redactions. Plaintiffs certify that they have attempted to resolve this dispute with Rite Aid, but have been unable to do so.

---

[2] *See* Ex. B, Rite_Aid_OMDL_0062933 (90-page document with 85 pages *fully redacted*, and which indicates on PDF pages 61, 62 and 90 that they are pages 196, 197 and 225 respectively). Many other documents were similarly produced by Rite Aid as heavily redacted and incomplete.

[3] Of the 4 documents produced without redactions, 3 appear only to be partial documents (merely 1 page of a multi-page document), thus, making them improperly produced. Specifically, Rite_Aid_OMDL_0061311 is a single page but is marked as page 26 of a larger document, Rite_Aid_OMDL_0061317 is a single page but is marked as page 30 of a larger document, and Rite_Aid_OMDL_0061397 is a single page but is marked as page 25 of a larger document). *See* Ex. C (containing each of these documents as produced by Rite Aid).

[4] *See* Ex. B *passim*.

[5] Case Management Order ("CMO") No. 2 (Doc #: 441) states that any non-responsive and/or confidentiality redactions are only allowed under a few limited circumstances (as outlined in ¶¶ 29 & 30). Paragraph 29 (involving personal identifying information, privileged information, or third-party confidential information) does not apply. Paragraph 30 requires that any redacted material be: 1) segregated, 2) non-responsive, *and* 3) about the Producing Party's non-opioid product. All three bases must be met for the redaction to be justified – and Rite Aid has not satisfied these requirements. *See also*, Amendments to CMO No. 2 (Doc #: 2688) at ¶ 29 (same).

**FACTUAL AND PROCEDURAL BACKGROUND**

The Track 1B plaintiffs sued various Rite Aid corporate entities: Rite Aid Corporation (RAC); Rite Aid Hdqtrs. Corp. (RAHC); Rite Aid of Maryland, Inc. d/b/a Mid-Atlantic Customer Support Center; and Rite Aid of Ohio, Inc. *See, e.g.,* Doc. 3042-1 at 2. On December 23, 2019, Rite Aid filed a motion to dismiss RAC for lack of personal jurisdiction, asserting that RAC is a holding company and does not distribute or dispense prescription opioids or "continuously and systematically conduct business in Ohio." *Id.* at 1-2. RAC denied establishing national policies or procedures for its subsidiaries governing the dispensing of controlled substances. *Id.* at 3. RAC also disputed that it was the "alter ego" of any its subsidiaries operating in Ohio. *Id.* at 7-11. RAC supported its motion to dismiss with a declaration from Ron S. Chima, Vice President of Litigation and Commercial Law for Rite Aid Hdqrts. Corp. *See* Doc. 3042-2 at 1-2. In pertinent part, that declaration asserted that RAC "is a separate and distinct company from [its] subsidiaries, each of which observes corporate formalities," that "RAC does not have any direct involvement in directing, managing, or supervising the operations or the employees of any of its subsidiary companies," and that "[c]orporate policies and procedures are set by [RAHC] employees." *Id.* at 2.

The Track 1B Plaintiffs observed that RAC's assertion that it does not establish national policies for its subsidiaries governing opioid dispensing was contrary to the "2018 Rite Aid Corporation's Report to Stockholders on Oversight of Risks Related to Opioids," *see* https://web.archive.org/web/20191016192034/https://www.riteaid.com/board-report-on-opioids-oversight,[6] and therefore sought discovery related to information in that report, including documents related to oversight and risk management of opioid dispensing by RAC and its Board of Directors. *See* Track 1B Plaintiffs' Email of Feb. 14, 2020; Doc. 3180 at 1. In response, RAC disputed the need for any jurisdictional discovery. The Special Master attempted to resolve the parties' dispute, but the matter eventually came before this Court.

This Court noted that the Special Master had previously resolved disputes with other defendants who had similarly moved to dismiss for lack of personal jurisdiction and, in doing so, had permitted jurisdictional discovery. *See* Doc. 3180 at 2 (citing Doc. 1512 "as instructive"). The Court explained that, in Doc. 1512, "Special Master Cohen laid out the legal standards for allowing jurisdictional discovery and determining its appropriate scope." Doc. 3180 at 2. The Court "adopted" and "incorporated" those standards, concluding that Plaintiffs were entitled to jurisdictional discovery from Rite Aid. Doc. 3180 at 2-4; *see also* Doc. 1512 at 2 (explaining that jurisdictional discovery is within the court's discretion and that court should allow jurisdictional discovery "unless the plaintiff's claim is 'clearly frivolous'").

---

[6] While Plaintiffs discovered the "2018 Rite Aid Corporation's Report to Stockholders on Oversight of Risks Related to Opioids" on Rite Aid's public website, Rite Aid has since removed the document from its website, but it remains available at the internet archive address cited.

The Court ordered Rite Aid to produce information similar to what other defendants contesting personal jurisdiction were required to produce, including:

>   (1) corporate organizational charts;
>
>   (2) policies regarding branding, marketing, sales, promotion, distribution, dispensing, regulatory affairs, and pharmacovigilance, to the extent they apply to opioids;
>
>   (3) policies regarding corporate management to the extent such policies bear on opioid related subsidiaries; and
>
>   (4) annual reports.

Doc. 3180 at 2-3.  The Court also ordered Rite Aid to respond to plaintiffs' written discovery requests (served on October 29, 2019), and to the plaintiffs' February e-mail request.  *Id.* at 3.  Finally, the Court permitted plaintiffs to take two corporate 30(b)(6) depositions.  *Id.* at 3.

Subsequently, on March 2, 2020, the Special Master issued an email further clarifying the scope of the Court's order regarding jurisdictional discovery.  The Special Master specified that the Plaintiffs' February e-mail requests, to which RAC must respond, "are as follows":

>   a.  Documents sent or received by RAC's Board of Directors, and/or any of the Board's Committees, during the relevant period, regarding: (1) opioid dispensing policies, (2) opioid distribution policies, (3) risk assessment and management related to distribution/dispensing of opioids; and (4) compliance with laws and regulations, and policies and procedures, governing opioids.  [Note that all four of these categories are limited to **opioid** subject matter.] These documents include (but are not limited to) opioid-related documents sent to the Board and/or its Committees by (a) internal subject matter experts, (b) external advisors . . . , to the extent those documents are not privileged;
>
>   b.  The names and titles of all of the individuals who, during the relevant period, comprise: (1) RAC's Board of Directors and/or any of the Board's Committees and sub-committees who sent or received the above-described documents; and (2) the experts, advisors, and others who sent the above-described documents;
>
>   c.  The case captions, including jurisdiction and case number, of any case in which RAC was named defendant and argued the court had no personal jurisdiction over RAC.

Ex. A, Mar. 2, 2020 E-mail of Special Master Cohen.

With the exception of certain documents that Rite Aid contends it could not access because its corporate offices were closed due to COVID-19, Rite Aid made its jurisdictional discovery production

on April 3, 2020.  *See* Ex. D, April 3, 2020 Production Cover Letter.[7]  That production included RAC's responses to the written discovery requests of Oct. 29, 2019; identification of the members of RAC's Board and its Audit Committee; and the case captions of cases in which RAC challenged personal jurisdiction.  *Id.* at 1-3.  The production also included some "documents received by or prepared for RAC's Board of Directors and Audit Committee."  *Id.* at 1.  That production of Board documents consisted of only 110 documents, all of which were Powerpoint presentations (or excerpts of such presentations), except for six documents, five of which were Board Minutes, and one memorandum entitled "COSO –Adoption Memorandum," dated November 30, 2014.  *See e.g.,* Ex. F *in globo,* Rite_Aid-OMDL_0061354 (Board Minutes), Rite_Aid-OMDL_0061692 (same), Rite_Aid-OMDL_0061830 (same), Rite_Aid-OMDL_0061840 (same), Rite_Aid-OMDL_0064351 (same); Ex. G Rite_Aid-OMDL_0063490 (11/30/2014 COSO adoption memorandum).  All of the documents produced were heavily redacted.  RAC stated that it "redacted material that is not related to 'opioid subject matter.'"  Ex. D, April 3, 2020 Production Cover Letter.  In addition, many of the documents are just extracted pages from larger Powerpoint presentations without any context, dates, or other identifying information as to why or when these documents were prepared, or what they were used for.

The production did not include any of the first four categories of required production listed in Judge Polster's order (i.e., corporate organizational charts, various opioid policies, and annual reports).  *See* Doc. 3180 at 2-3.  Nor did the production include any Board documents discussing opioid-related policies (as described in Special Master Cohen's e-mail), except for the Powerpoint presentations (and six documents described above).  *See* Ex. A, Mar. 2, 2020 Email of SM Cohen.  Nor did the production identify any experts, external advisors, or others who sent documents to the Board, as required by SM Cohen's order, *id.*

The parties scheduled a meet and confer and exchanged correspondence to discuss the production's deficiencies.  Before that meet and confer could occur, the Sixth Circuit issued a writ of mandamus, striking the amendments by interlineation in Track 1B, *see In re National Prescription Opiate Litigation*, 956 F.3d 838 (6th Cir. 2020), which had included the addition of RAC as a defendant.  As a result, RAC cancelled the meet and confer.

Subsequently, the Track 3 Plaintiffs named RAC, RAHC, Rite Aid of Maryland d/b/a Mid-Atlantic Customer Support Center, Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center, and Rite Aid of Ohio, Inc. as defendants.  Rite Aid once again moved to dismiss RAC for lack of personal jurisdiction.  Doc. 3339.  The Track 3 motion, which closely resembled the Track 1B motion, was premised on the same declaration of Mr. Chima that was appended to the Track 1B motion.  Doc. 3339 at 3 & n.4.

The parties scheduled another meet and confer to discuss the Track 3 motion and the deficiencies that Plaintiffs identified in the April 3 production.  During a meet and confer on June 30, 2020, Plaintiffs detailed the numerous deficiencies they had detected in the April 3 production.  The parties have continued to negotiate over those deficiencies, but have been unable to reach agreement.  On July

---

[7] On July 23, 2020, RAC produced documents received by or prepared by RAHC's Data Protection Sub-Committee, which RAC had previously been unable to access due to the COVID-19 closure of their offices.  *See* Ex. E, July 23, 2020 Production Cover Letter.  These documents were almost entirely redacted as well.

Special Master David Cohen
July 29, 2020
Page 6 of 8

17, 2020, Plaintiffs' counsel (P. Weinberger) sent a letter to the Special Master summarizing the status and impasse of the jurisdictional discovery disputes.

## LEGAL STANDARD

When a defendant moves to dismiss for lack of personal jurisdiction and the plaintiff opposes the motion, the court may:  (1) decide the issue based on the pleadings and affidavits; (2) permit jurisdictional discovery; or (3) hold an evidentiary hearing.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  If the court decides to rely solely on the pleadings and affidavits, the plaintiff must make only a prima facie showing that personal jurisdiction exists.  *Id.*; *see also Wuliger v. Positive Living Resources*, 410 F. Supp. 2d 701, 704 (N.D. Ohio 2006) (noting that this standard "is minimal").  In assessing whether a plaintiff has met this standard, the court may *not* weigh defendant's controverting assertions.  *Theunissen*, 935 F.2d at 1459 (noting that this is to preclude defendants from filing an affidavit that simply denies the alleged jurisdictional facts); *see also Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).  A court may only grant dismissal for lack of personal jurisdiction if the plaintiff's uncontroverted affidavits are insufficient to make a prima facie case for jurisdiction.  *Theunissen*, 935 F.2d at 1459.  Put another way, courts are "to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'"  *Carr v. DJO Inc.*, 2012 WL 3257666 at *3 (S.D. Ohio Aug. 8, 2012).

Thus, where a defendant offers evidence in support of its motion to dismiss for lack of jurisdiction, a court may not consider such evidence without offering the plaintiff an opportunity to conduct jurisdictional discovery and/or holding an evidentiary hearing.  *See Theunissen*, 935 F.2d at 1459; *Conn*, 667 F.3d at 711.

## ARGUMENT

### THIS COURT SHOULD COMPEL RAC TO PRODUCE JURISDICTIONAL DISCOVERY THAT THIS COURT HAS ALREADY ORDERED PRODUCED

Applying these standards, both the Special Master and this Court already determined that Plaintiffs were entitled to jurisdictional discovery as to RAC and defined the appropriate scope of that discovery.  *See* Doc. 3180; *see also* Ex. A, March 2, 2020 E-mail of SM Cohen.  There is no basis for RAC to relitigate the propriety of that jurisdictional discovery or its scope.  Indeed, Rite Aid has conceded as much.  *See* July 23, 2020 RAC Letter Motion for a Protective Order Regarding Additional Jurisdictional Discovery at 2 (dated July 23, 2020) ("The Court and the Special Master have already defined the scope of jurisdictional discovery regarding RAC, and there is no need to revisit that determination.").

Because Defendants have failed to comply with those orders establishing the required jurisdictional discovery, this Court should compel Rite Aid's compliance.  Specifically, the April 3 production was deficient in numerous ways.

First, the documents produced were incomplete and almost entirely redacted.  *See, e.g.,* Exs. B, C, F & G, sample RAC documents produced.  Rite Aid explained that it had redacted the documents for relevance, excising information that did not relate to "opioid subject matter."  *See* Ex. D April 3, 2020 RAC production letter, at 2.  The Special Master's order, however, made clear that RAC had to produce

"[d]ocuments," not just information, related "to opioid subject matter." Mar. 2, 2020 Email of SM Cohen. Moreover, Federal Rule of Civil Procedure 34 provides that a party must produce documents as kept in the ordinary course of business. *See* F.R.C.P. 34(b)(2)(E)(i). And RAC identifies no authority that permitted it to redact the documents to exclude information that it considered to be irrelevant to Plaintiffs' discovery request. The authority actually *prevents* RAC from redacting information it unilaterally determines to be irrelevant.[8] Moreover, RAC's action has made document production unnecessarily more difficult (preventing full review of materials, necessitating motion practice, possibly requiring *in camera* review, etc.) in spite of the fact that protective orders exist which reduce or eliminate any need for the redactions.

Second, RAC over-designated privilege relative to its jurisdictional discovery productions. RAC has made 275 privilege claims while only producing 119 documents. In fact, RAC has *fully withheld nearly twice as many documents* (235 documents) as it has produced (119 documents).[9] RAC's wide-sweeping privilege designations, including over SOMS-related matters, contradict various directives from the Court,[10] and RAC's privilege claims should be rejected.[11]

Third, RAC's production did not include any documents responsive to the first four categories of required jurisdictional discovery set out in Judge Polster's Order. *See* Doc. 3180 at 2-3. Defendants failed to produce: (1) corporate organizational charts; (2) policies regarding branding, marketing, sales, promotion, distribution, dispensing, regulatory affairs, and pharmacovigilance, to the extent they apply to opioids; (3) policies regarding corporate management to the extent such policies bear on opioid related subsidiaries; or (4) annual reports.

Fourth, RAC did not produce all "[d]ocuments sent to or received by RAC's Board of Directors, and/or any of the Board's Committees, during the relevant period, regarding: (1) opioid dispensing policies, (2) opioid distribution policies, (3) risk assessment and management related to distribution/dispensing of opioids; and (4) compliance with laws and regulations, and policies and procedures, governing opioids." *See* Ex. A, March 2, 2020 E-mail of Special Master Cohen (specifying that such documents

---

[8] *See, e.g.,* fn. 5 (orders regarding redacting of documents, which do not permit redactions for relevance except for in very limited circumstances - which are not applicable or proven herein); *Tween Brands Investment, LLC v. Bluestar Alliance, LLC*, No. 2:15-cv-2663, 2015 WL 6955177, at * 1-2 (S.D. Ohio Nov. 10, 2015) (requiring production of unredacted documents responsive to discovery requests, noting that defendant's "unilateral assertion that the redacted material is irrelevant . . . leaves too many open questions about [defendant's] definition of 'relevant' and about whether additional relevant information was 'inadvertently' redacted"); *Melchior v. Hilite Intern., Inc.*, No. 13- 50177, 2013 WL 2238754, at * 3 (E.D. Mich. May 13, 2013) ("'redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request'"). The Court should compel RAC to re-produce the documents without redactions for relevance.

[9] *See* Ex. H-1 (RAC's 4/10/2020 Jurisdictional Privilege Log – 203 privilege claims, with 163 fully withholding documents); Ex. H-2 (RAC's 7/23/2020 Jurisdictional Privilege Log – 72 privilege claims, with all 72 documents fully withheld).

[10] *See e.g.*, 1/10/2019 Hearing Tr. at p. 5:20-23 ("And I again want to emphasize I don't want to see any overdesignation of privilege documents because if I -- if I see that, I'm going to have to impose sanctions"); 12/6/2018 Discovery Conf. Tr. at 22:5-10 ("construe attorney-client privilege extremely narrowly if it has anything to do with suspicious order reports, suspicious order monitoring or due diligence").

[11] *See also*, 7/17/2020 Plaintiffs' (P. Weinberger) letter submission to Special Master Cohen at 3-5.

were also to include opioid-related documents sent to the Board or its Committees by internal subject matter experts and external advisors).  Rite Aid's April 3 production of documents provided to the Board consisted entirely of Powerpoint presentations, except for six other documents, described above.  There were no documents authored by internal subject matter experts or external advisors.  Nor were there any other type of documents discussing the policies enumerated above.  This is clearly a flouting of the Court's and Special Master's orders.  *See, e.g.,*  Ex. D, April 3, 2020 RAC production letter.

Fifth, although RAC identified individuals who comprised RAC's Board of Directors and its Committees, it did not identify internal subject matter experts, external advisors, or others who sent relevant documents to the Board or its Committees, as required by Special Master Cohen's clarification.  *See* Mar. 2, 2020 Email of SM Cohen.

Because the Court already ordered that all of this information was to be produced, *see* Doc. 3180; Ex. A, Mar. 2, 2020 Email of SM Cohen, the Court should now compel RAC to cure these deficiencies.

**CONCLUSION**

For the forgoing reasons, Plaintiffs respectfully request that this Court compel Rite Aid to produce the jurisdictional discovery already ordered produced by this Court and without redactions for relevance.

Respectfully,

*[signature: Peter H. Weinberger]*

Peter H. Weinberger
Plaintiffs' Liaison Counsel
pweinberger@spanglaw.com

PHW/ss
Enclosure

cc:  Gregory Fouts, Esq.
     John Lavelle, Esq.
     Kelly Moore, Esq.
     Anthony Irpino, Esq.
     Mark Pifko, Esq.
     Pearl Robertson, Esq.