# EXHIBIT 6

# Morgan Lewis

**Gregory T. Fouts**
Partner
+1.312.324.1776
gregory.fouts@morganlewis.com

July 23, 2020

VIA E-MAIL

Special Master David Cohen
24400 Chagrin Boulevard
Suite 350
Cleveland, Ohio 44122
david@specialmaster.law

> Re: **MDL 2804: Rite Aid Corporation and Rite Aid Hdqtrs. Corp.'s Letter Motion for a Protective Order Regarding Additional Jurisdictional Discovery**

Dear Special Master Cohen,

Defendants Rite Aid Corporation ("RAC")[1] and Rite Aid Hdqtrs. Corp. ("RAHC") submit this letter motion for a protective order forbidding the unauthorized new jurisdictional discovery requests served by Plaintiffs on June 23, 2020 ("June 2020 Requests"). We discussed the June 2020 Requests with Plaintiffs during meet and confer conferences on June 30 and July 13, and advised that RAC and RAHC object to the June 2020 Requests as unauthorized and untimely. As reflected in their July 17 correspondence to the Special Master regarding

---

[1] RAC has filed a motion to dismiss for lack of personal jurisdiction (Doc. 3339). RAC submits this motion without waiver of the arguments in that motion.

Morgan, Lewis & Bockius LLP

77 West Wacker Drive
Chicago, IL 60601-5094          +1.312.324.1000
United States                   +1.312.324.1001

jurisdictional discovery issues, Plaintiffs maintain the June 20 Requests are appropriate. RAC and RAHC seek the Special Master's assistance in resolving this dispute.

The June 2020 Requests seek to expand dramatically the scope of the jurisdictional discovery of RAC previously ordered by the Court and the Special Master. Plaintiffs offer no reason to revisit the Court's earlier order and further expand jurisdictional discovery. Nothing—not allegations in the amended complaints, nor discovery responses, nor RAC's motion to dismiss in Track 3—justifies the expansive additional discovery that Plaintiffs seek.

The Court and the Special Master have already considered and determined the scope of jurisdictional discovery of RAC. The parties should focus on completing that discovery so that they can efficiently brief RAC's motion to dismiss—not revisit and expand the scope of jurisdictional discovery. RAC and RAHC respectfully request that the protective order issue.

## BACKGROUND

This motion concerns personal jurisdiction over RAC, a corporation "organized under the laws of Delaware and has its principal place of business in Pennsylvania." Doc. 3042-2 ¶3. "RAC is a holding company with no operations other than those related to its status as a holding company." Doc. 3042-2 ¶4. "RAC has no offices, facilities, assets, income, employees, or operations in Ohio, and RAC does not manufacture, distribute, or dispense opioids in Ohio or elsewhere." Doc. 3042-2 ¶4.

The Court and the Special Master have already defined the scope of jurisdictional discovery regarding RAC, and there is no need to revisit that determination. Plaintiffs named RAC as a defendant in the Track 1 amended complaints when they initially sued Rite Aid entities in May 2018. RAC filed a motion to dismiss for lack of personal jurisdiction. Plaintiffs then voluntarily dismissed RAC. Doc. 622. Plaintiffs named RAC as a defendant again when they

2

filed their amended Track 1B complaints by interlineation on November 20, 2019.  Docs. 2493-94.  RAC again filed a motion to dismiss for lack of personal jurisdiction.  Doc. 3042.  The motion to dismiss was supported by the declaration of Ron S. Chima.  Doc. 3042-2.

In rulings in February and March 2020, the Special Master and the Court determined the scope of jurisdictional discovery relating to RAC based on Plaintiffs' arguments that RAC created corporate policies concerning opioid dispensing and risk oversight.  After RAC filed its motion to dismiss, the parties discussed the motion in a conference with the Special Master on January 10, 2020.  On February 10, 2020, Plaintiffs' counsel sent an email to RAC's counsel threatening Rule 11 sanctions based on a Rite Aid Corporation Board of Directors Report to Stockholders on Oversight of Risk related to Opioids ("Board Report") and a 2018 proxy statement in response to a shareholder request for an opioids report, which counsel claimed proved that RAC was "intimately involved in opioid dispensing oversight and risk management."  Ex. 1, 2/10/20 P. Weinberger Email to K. Moore.  RAC's counsel responded that because Plaintiffs clearly believed the Board Report was sufficient to defeat RAC's motion (and, indeed, rendered the motion frivolous), no jurisdictional discovery was necessary.  Ex. 2, 2/12/20 Email.

On February 12, 2020, the Special Master stated in an email that "Plaintiffs will be allowed to take jurisdictional discovery" but suggested that "the necessary discovery need not exceed a small handful of depos and interrogatories."  *Id.*  Two days later, Plaintiffs' counsel responded, seeking vastly overbroad document discovery covering more than a decade of time.  Ex. 3, P. Weinberger Email to K. Moore, 2/14/2020.

Plaintiffs' requested discovery was based entirely on statements in RAC's Board Report.  *Id.*  Far from the "small handful of deps and interrogatories" envisioned by the Special Master, Plaintiffs  requested, among other things, the custodial files of every member of RAC's Board of

Directors, the files of numerous RAC and RAHC committees and subcommittees, the custodial files of external advisors, and "copies of all types of documents" referenced in the Board Report, all from 2006-2020. *Id.* Although the jurisdictional discovery Plaintiffs sought in their submission was broad, Plaintiffs notably did not seek any discovery based on an alter ego theory, or any discovery purportedly based on the Chima declaration submitted in support of RAC's motion to dismiss.

Consistently, when the parties met and conferred and when they presented their positions to the Special Master, Plaintiffs continued to seek discovery based only on RAC's purported development of policies. RAC counsel's explained that this "corporate policies" theory of personal jurisdiction was legally meritless, but Plaintiffs relied on it exclusively in demanding broad, intrusive and burdensome discovery of Board of Directors meetings and communications.

The Court ordered jurisdictional discovery over RAC's objections. *See* Order Regarding Jurisdictional Discovery of Rite Aid Corp., Doc. 3180. The Court's order recognized that Plaintiffs' requested discovery was based on the Board Report: "[i]n addition to earlier formal discovery, plaintiffs informally propounded via email several requests for production based on information available in the *2018 Rite Aid Corporation's Report to Stockholders on oversight of Risks related to Opioids*." *Id.* at 1, italics in original. The Court then set forth the scope of jurisdictional discovery of RAC. In making its ruling, the Court relied expressly on the Special Master's earlier order regarding jurisdictional discovery of Teva and other manufacturer defendants, which the Court "adopted and incorporated" by reference. Doc. 3180, at 2. With respect to document production, the Court ordered RAC to produce the same categories of documents it had required the manufacturer defendants to produce (with slight modifications to account for dispensing of opioids): i) corporate organizational charts; (ii) policies regarding

4

branding, marketing, sales, promotion, distribution, dispensing, regulatory affairs, and pharmacovigilance, to the extent they apply to opioids; (iii) policies regarding corporate management to the extent such policies bear on opioid-related subsidiaries; and (iv) annual reports. *Id.* at 2-3. Additionally, the Court ordered RAC to produce documents in response to "the requests for productions made in Mr. Weinberger's [February 14] e-mail." *Id.* at 3. The Court ordered RAC to respond to this discovery in just one week. *Id.*

On March 2, 2020, the Special Master convened another telephone conference on jurisdictional discovery. Following that conference, the Special Master issued an order clarifying the scope of jurisdictional discovery of RAC and adjusting the deadlines set by the Court for completion of that discovery. Ex. 4, Email from Special Master to Parties, 3/2/2020. Plaintiffs did not object to the Special Master's order.

Although the Special Master extended the deadlines set by the Court, RAC still was required to search for, collect, review, and produce a large amount of material in a short timeframe. On April 3, RAC responded to the discovery, and on April 10 RAC served a privilege log. The parties scheduled a meet and confer to discuss RAC's responses and its privilege log, which was to take place on April 14. Before that meet and confer, the Sixth Circuit's mandamus order struck the amendments to the Track 1 complaints, including the allegations against RAC, mooting the issue of personal jurisdiction in Track 1.

The same issue then arose in Track 3, when RAC was added as a defendant in the amended complaints filed on May 15, 2020. The Track 3 complaints make no allegations at all regarding the conduct of RAC specifically, other than the conclusory allegations that Rite Aid "practices and procedures" for distributing and dispensing opioids were "established by Rite Aid Corporation" (an allegation that is consistent with Plaintiffs' jurisdictional theory in Track 1B);

5

and that Rite Aid of Ohio, Inc. operated pharmacies in the Track 3 jurisdictions "on behalf of its parent company Rite Aid Corporation." *See* Lake County Am. Compl. ¶ 44. On June 5, 2020, the Court entered the Track 3 Case Management Order ("CMO"). Doc. 3325. The CMO provided that defendants may file motions to dismiss on jurisdictional grounds, and directed the parties to meet and confer "to discuss whether and the extent to which jurisdictional discovery may be necessary, ***and shall incorporate the reasoning set out in the Court's order [] at docket no. 3180.***" *Id.* at 2, emphasis added. Docket No. 3180 is the Court's order on jurisdictional discovery of RAC. On June 16, 2020, RAC filed a motion to dismiss the Track 3 complaints for lack of personal jurisdiction. Doc. 3339. The motion to dismiss was supported by the same declaration of Ron S. Chima that RAC submitted in support of the Track 1B motion to dismiss. Doc. 3339-2.

After the Track 3 complaints were filed, RAC and Plaintiffs resumed meeting and conferring on issues related to RAC's responses to the previously-ordered jurisdictional discovery. The parties are in the process of presenting issues related to that discovery to the Special Master. On June 23, without leave of the Court or the Special Master—and without meeting and conferring with RAC as to jurisdictional discovery as the CMO requires—Plaintiffs served the June 2020 Requests on RAC. Ex. 5. Plaintiffs served a similar set of jurisdictional discovery on RAHC, even thought RAHC is a defendant in Track 3 and is not contesting jurisdiction. Ex. 6. In an email accompanying the June 2020 Requests, Plaintiffs claimed the requests were justified because in a footnote to its motion to dismiss, RAC noted that some RAHC documents were mislabeled as RAC documents. *See* Doc. 3339-1 at 5 n.5. Although Plaintiffs were already aware of the issue of mislabeled documents before RAC filed its motion to dismiss, Plaintiffs claimed that in light of the mislabeled documents they "require discovery to

6

explore whether Rite Aid Headquarters Corp is really the alter ego of RAC." Ex. 7, P. Weinberger Email to Rite Aid, 6/23/20.

The June 2020 Requests far exceed the scope of jurisdictional discovery ordered by the Court and the Special Master—as to RAC or any other defendant that has contested personal jurisdiction—and are untethered to any issue of misidentification of documents. The requests seek a vast and amorphous amount of information unconnected to RAC's involvement in oversight of opioids, including, for example, "All documents relating to the nature and extent of RAC's relationship with" RAHC and numerous other Rite Aid entities (RFP No. 1); "All Documents relating to the identities, formation, and role of RAC's subsidiaries" (RFP No. 3); "All Documents relating to RAC's finances" (RFP No. 5); and "all documents relating to RAC's relationship with Rite Aid pharmacies." (RFP No. 7). The requests to RAHC mirror the requests to RAC and are equally sweeping.

RAC and RAHC now seek a protective order against this additional discovery based on a new and unpleaded alter ego theory, asking the Court to adhere to its prior discovery ruling.

## LEGAL STANDARDS

Rule 26(c) provides that the court, upon motion by any party from whom discovery is sought, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (1) forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1). Whether to permit jurisdictional discovery— and the scope of such discovery—is left to the discretion of the Court. *Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991). District courts "have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017). This is as true of

7

jurisdictional discovery as any other discovery. *See id.* (affirming the entry of a protective order that limited jurisdictional discovery).

## ARGUMENT

### I. The Court Should Enter a Protective Order.

The Court should enter a protective order forbidding the new and unauthorized June 2020 Requests. Several grounds justify such an order. First, the Court and the Special Master have already defined the scope of jurisdictional discovery, based on the discovery Plaintiffs represented was necessary to respond to RAC's motion to dismiss and adopting the same approach to jurisdictional discovery as to manufacturer defendants in Track 1. Nothing has happened in the interim to impact that considered analysis. The June 2020 Requests are an unwarranted and dramatic expansion of the broad jurisdictional discovery that was already ordered. Adding this additional discovery to the jurisdictional discovery that is ongoing, (as well as to ongoing merits discovery), would be highly burdensome and disproportionate.

Second, the "mislabeled document" issue that Plaintiffs claim prompted them to seek further jurisdictional discovery is not new. Plaintiffs were aware of the issue before they requested jurisdictional discovery in February, before the Court ruled on the scope of jurisdictional discovery of RAC, and before Plaintiffs amended their complaints in May, yet Plaintiffs never previously cited this issue in seeking jurisdictional discovery. Third, contrary to Plaintiffs' representations, the Court has not ordered such sweeping jurisdictional discovery of other defendants in this MDL, and it should not expand the scope of jurisdictional discovery now.

8

### A. The June 2020 Requests Exceed the Scope of Jurisdictional Discovery Ordered by the Court and the Special Master.

As discussed above, in February and March 2020 the Court and the Special Master entered orders defining the scope of jurisdictional discovery of RAC. Those orders came after Plaintiffs detailed exactly what discovery they believed they needed to respond to RAC's motion to dismiss in Track 1B based on their "corporate policies and procedures" theory; after the parties met and conferred; and after the Special Master held two discovery conferences at which the parties explained their positions and the Special Master considered issues of scope, timing, and burden. The Court has considered carefully what information is necessary to respond to a jurisdictional motion to dismiss. There is no reason to revisit—and vastly expand—that decision now. Though expansive (and as RAC argued, irrelevant), the jurisdictional discovery the Court ordered was at least tied to RAC's activities related to opioids, the subject matter of this lawsuit. *See* Doc. 3108, at 2-3; Ex. 4 (restricting production of materials in Mr. Weinberger's 2/14 email to "**opioid** subject matter") (emphasis in original).

The June 2020 Requests seek documents that go dramatically beyond what this Court previously permitted with respect to RAC or any other defendant. They ignore the Court and the Special Master's previous rulings, as well as the CMO. They are untethered to RAC's activities related to opioids, instead seeking wide swathes of information about RAC's corporate structure, its finances, its corporate recordkeeping, and its relationship to its subsidiaries. Ex. 5.[2]

---

[2] The only exception is RFP 8, which requests "All Documents relating to RAC's role in the Rite Aid entities' response to address the opioid crisis, including but not limited to Rite Aid Corporation's Board Report to Stockholders On Oversight of Risk Related to Opioids and how RAC ensures that its decisions are enforced or implemented at its subsidiaries." Ex. 5, at 6. As noted, that report was the centerpiece of the discovery Plaintiffs already sought and obtained, and there is no reason for Plaintiffs to obtain any more information than they already have based on the Court's and the Special Master's previous orders.

9

Producing information in response to the June 2020 Requests would be incredibly time-consuming and burdensome.  For example, Plaintiffs seek "all documents related to RAC's finances," including income related to opioids and pharmacies, as well as RAC's assets and liabilities.  *Id.*  RFP 5.  They seek the same information from RAHC.  Ex. 6, RFP 5.  Plaintiffs also seek extensive information about RAC's relationship to its subsidiaries—requests that are not tied to RAC's activities related to opioids.  Ex. 5, RFP 3-4.  Plaintiffs request similar information from RAHC, even though RAHC is not even contesting personal jurisdiction and therefore should not be subject to jurisdictional discovery at all  *See Alperin v. Vatican Bank*, 2006 WL 1663847, at *3 (N.D. Cal. June 15, 2006) ("Plaintiffs have not made a sufficient showing to justify jurisdictional discovery at this stage when [the defendant] is not challenging jurisdiction").  Ex. 6, RFP 3-4.

It would be overly burdensome and unfair to require RAC and RAHC to respond to this expansive new discovery.  The Court did not grant such sweeping discovery against RAC in Track 1B, nor against the manufacturer defendants in Track 1A.  There is no reason to do so now, particularly where issues related to the previously-ordered discovery are being litigated, and while Track 3 merits discovery is proceeding on a tight schedule.

The June 2020 Requests also ignore the theory of jurisdiction upon which Plaintiffs requested and received jurisdictional discovery in the first place.  The discovery requests Plaintiffs made in February 2020 all were tied directly to the RAC Board Report and it was on that basis that the Court and Special Master made their previous discovery rulings.  Ex. 3.  In obtaining jurisdictional discovery, Plaintiffs relied on their "corporate policies and procedures" theory and never claimed to need extensive discovery about RAC's finances or its relationship to its subsidiaries to respond to RAC's motion to dismiss.

10

Nothing has changed since February that would justify the June 2020 Requests. Plaintiffs now claim to be pursuing the question "whether Rite Aid Headquarters Corp. is really the alter ego of RAC"—an inquiry they claim is justified because in its motion to dismiss, RAC noted that some policies and procedures written by RAHC employees had been mislabeled as RAC documents. Ex. 7. More recently, Plaintiffs cited the Court's prior orders purportedly authorizing alter ego discovery of other defendants, and also argued they are entitled to "test the veracity of Mr. Chima's declaration." Ex. 8, 7/17 Ltr. from PEC to Special Master.[3] Plaintiffs' arguments are specious for several reasons. They do not justify any change in the Court's approach to jurisdictional discovery as reflected in its prior orders.

*First*, even taking at face value Plaintiffs' claim that a footnote in RAC's motion to dismiss prompted them to issue the June 2020 Requests, the requests have nothing to do with whether particular RAHC documents were mislabeled. Plaintiffs do not (and cannot) explain why mislabeled documents should lead to unfettered discovery without any ties to the facts of the case.

*Second*, Plaintiffs' stated rationale for the June 2020 Requests cannot be taken at face value in any event. The issue of "mislabeled" RAC documents is not new. It was discussed at a discovery conference on January 20, 2020, where Plaintiffs' counsel discussed documents referencing "Rite Aid Corporation" and Rite Aid's counsel explained that RAHC personnel were sometimes "sloppy" in writing "Rite Aid Corporation" instead of "Rite Aid Headquarters Corporation." Ex. 9, 1/20/20 Discovery Conference Tr. at 58-62. This conference occurred

---

[3] The parties are currently presenting to the Special Master issues relating to RAC's production in response to the prior RAC discovery orders, including issues related to RAC's privilege claims. Those issues are not the subject of this motion. RAC cites Plaintiffs' July 17 letter only for the purpose of explaining why RAC is entitled to a protective order as to the new Jurisdictional Discovery Requests.

11

weeks before Plaintiffs detailed the discovery the jurisdictional discovery they claimed to need from RAC—and months before Plaintiffs amended their complaints without referencing any RAC or RAHC documents. Plaintiffs' claim that they were prompted to serve the June 2020 Requests because they learned of "mislabeled" documents when RAC filed its motion to dismiss does not bear scrutiny.

Moreover, the "mislabeled" policies and procedures referenced in RAC's motion to dismiss have already been produced to Plaintiffs in discovery. If Plaintiffs believe such documents are relevant to their arguments in opposition to RAC's motion to dismiss, Plaintiffs are free to make those arguments in responding to the motion. However, none of this justifies revisiting this Court's orders regarding the scope of jurisdictional discovery, and it certainly does not justify the massive expansion of that scope in the June 2020 Requests.

***Third***, Plaintiffs' newfound arguments that they should be entitled to broad discovery on an alter ego theory because the Court supposedly authorized similar alter ego discovery as to different defendants, or to "test the veracity" of Mr. Chima's declaration, are also meritless. Ex. 8, at 2-3. Contrary to Plaintiffs' arguments, the Court did not authorize alter ego discovery of other defendants in any scope comparable to the June 2020 Requests. To the contrary: as noted, the Court "adopted and incorporated" the Special Master's order on jurisdictional discovery of the manufacturer defendants in ordering RAC to produce the same categories of documents as those defendants. *See* Doc. 1512 (Special Master Order on jurisdictional discovery of Allergan, Teva, and Mallinckrodt); Doc. 3180, at 2 (adopting and incorporating that order in the RAC jurisdictional discovery order "with respect to document production"). The Court ordered RAC to produce the same categories of documents as the manufacturers. The only difference is that the document discovery the Court ordered of RAC is ***broader*** than the Court's

earlier order because it also requires RAC to produce the extensive documents requested in Mr. Weinberger's February 14 email (a requirement that was later clarified by the Special Master). Doc. 3180, at 3. And the Chima declaration submitted in support of RAC's motion to dismiss the Track 3 complaints is *exactly the same* as the declaration submitted in support of the Track 1B motion to dismiss. Plaintiffs made no mention of that declaration in setting out exactly what jurisdictional discovery they needed in February 2020.

The Court and the Special Master set the parameters of jurisdictional discovery of RAC months ago. Those parameters were based on the Court's considered analysis of what discovery was necessary, based on Plaintiffs' own representations, to determine whether the Court had personal jurisdiction of RAC. RAC has complied with the discovery orders at considerable burden and expense. The June 2020 Requests open a new front of discovery that is inconsistent with the Court's and the Special Master's previous rulings. The June 2020 Requests are not based on a legitimate need for discovery: they are Plaintiffs' attempt to force RAC's to drop a valid personal jurisdiction objection. The Court should not endorse these tactics.

## CONCLUSION

For the foregoing reasons, the Court should issue a protective order relieving RAC and RAHC from any obligation to respond to the June 2020 Requests.

Sincerely,

*/s/ Gregory T. Fouts*
Gregory T. Fouts

cc:
Track 3 Plaintiffs' Counsel
Track 3 Defendants' Counsel

13