# EXHIBIT 7



800.887.6989
direct 818.839.2325
fax 818.986.9698
email mpifko@baronbudd.com

Encino Plaza
15910 Ventura Blvd.
Suite 1600
Encino, CA 91436

August 6, 2020

**VIA E-MAIL: david@specialmaster.law**

Special Master David Cohen
U.S. District Court for the
Northern District of Ohio
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113

      RE:    **In Re National Prescription Opiate Litigation**
                  **U.S. District Court for the Northern District of Ohio**
                  **Case No. 1:17-md-2804**

Dear Special Master Cohen:

      Track 3 Plaintiffs submit this letter in response to Rite Aid's July 23, 2020 Letter Motion for a Protective Order (Rite Aid PO Motion) regarding the Track 3 Plaintiffs' June 23, 2020 discovery requests (June 2020 Requests) on Rite Aid Corporation (RAC) and Rite Aid Hdqtrs Corporation (RAHC). The Track 3 Plaintiffs served the June 2020 Requests because RAC and RAHC or other Rite Aid subsidiaries are alter egos such that RAC is subject to personal jurisdiction in Ohio based on the forum's jurisdiction over RAHC or another one of its subsidiaries named as Defendants in the Track 3 Complaints. The Special Master should deny Rite Aid's motion and order RAC and RAHC to respond to the June 2020 Requests.

      The Special Master and this Court have previously ordered jurisdictional discovery from Rite Aid to clarify disputed issues of fact related to personal jurisdiction. Rite Aid argues that the discovery ordered in Track 1B should define the complete scope of jurisdictional discovery ordered in Track 3, even though the Plaintiffs and claims are different. Granting Rite Aid's request to limit Track 3 discovery is unwarranted and unjust.

      Plaintiffs' investigation has uncovered evidence that directly contradicts the central themes of Rite Aid's Track 3 Motion to Dismiss: that RAC is a holding company, with no employees or business operations, and has no involvement in the distribution or dispensing of opioids in Ohio. *See* Doc. 3339-1 at 1-3, 5-8, 10. In fact, Rite Aid has produced documents that undermine these representations and suggest that RAC and RAHC are so intertwined they are operating as alter egos. Corporate documents identify purported RAHC employees as RAC employees and show



Special Master David Cohen
August 6, 2020
Page 2

that RAC employees engage in the opioid distribution business and exert control over RAC subsidiaries. Recently uncovered publicly available information also confirms these facts. The documents Plaintiffs have identified thus far go beyond the policies and procedures that Rite Aid has stated were "mislabeled" in prior productions,[1] (notably, Rite Aid has never provided an explanation for this alleged mislabeling). Rite Aid cannot simply wave a magic wand over the documents and make "Rite Aid Corporation" go away – wishing it was a mistake does not make it so.

Moreover, Plaintiffs' June 2020 Requests are appropriately limited to the factors the Sixth Circuit has held should be analyzed to determine whether one corporation is the alter ego of another. And because courts in the Sixth Circuit have consistently ordered jurisdictional discovery from the alleged alter ego corporation, even if that entity is not contesting jurisdiction, discovery should include the requests propounded on RAHC.

This Court previously recognized that jurisdictional discovery is appropriate to allow a plaintiff to establish an alter ego theory. Because the June 2020 Requests are appropriate to test RAC's claims that it has no connection to Ohio and no operations or employees, the Track 3 Plaintiffs respectfully request that the Special Master deny Rite Aid's Motion and order Rite Aid to respond to the Track 3 Plaintiffs' June 2020 Requests.

## **FACTUAL AND PROCEDURAL BACKGROUND**[2]

On December 23, 2019, Rite Aid filed a motion to dismiss RAC for lack of personal jurisdiction in Track 1B, asserting that RAC is a holding company and does not distribute or dispense prescription opioids. Doc. 3042-1 at 1-2. Among other arguments, RAC disputed that it was the "alter ego" of any of its subsidiaries operating in Ohio. *Id*. at 7-11. RAC supported its motion to dismiss with a declaration from Ron S. Chima, Vice President of Litigation and Commercial Law for RAHC. *See* Doc. 3042-2 at 1-2.

---

[1] The "mislabeling" is not a Bates labeling or litigation-related document production issue. Rather, Rite Aid claims the documents were mislabeled when originally created (e.g., RAHC putting RAC's logo on the documents when first drafted).

[2] Recognizing that the procedural history of this dispute is intertwined with the procedural history of Track 3 Plaintiffs' Motion to Compel, filed July 29, 2020, Plaintiffs will attempt to limit their recitation of the procedural history here to that which is necessary for resolution of Defendants' motion. Plaintiffs direct the Special Master to their July 29, 2020 Motion to Compel for additional details. Plaintiffs note that while Rite Aid is attempting to frame these two motions as distinct, it recites the history of its motion to dismiss and jurisdictional discovery in CT1B in great detail in its motion for a protective order. *See* RAC PO Motion at 1-5.



The Track 1B Plaintiffs sought jurisdictional discovery, beginning with requests related to a 2018 report to RAC stockholders that appeared to contradict Rite Aid's assertion that RAC did not establish national policies related to opioid dispensing. The Track 1B Plaintiffs were clear that this was only an initial request, not intended to foreclose or limit further jurisdictional discovery of Rite Aid in Track 1B. *See* Ex. 3 to Rite Aid's PO Motion, Track 1B Plaintiffs' Email of Feb. 14, 2020; Doc. 3180 at 1 (noting "Plaintiffs' position is that only once RAC produces the requested documents will they be able to determine the appropriate scope of jurisdictional discovery"). In response, RAC disputed the need for any jurisdictional discovery.

The Court ordered jurisdictional discovery from RAC. *See* Doc. 3180; *see also* Doc. 1512 (which Doc. 3180 adopted and incorporated by reference). Rite Aid made a jurisdictional discovery production on April 3, 2020 and then the Sixth Circuit struck the amendments by interlineation in Track 1B, meaning that RAC was no longer a defendant in that case.

The Track 3 Plaintiffs named RAC, RAHC, Rite Aid of Maryland d/b/a Mid-Atlantic Customer Support Center, Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center, and Rite Aid of Ohio, Inc. as defendants and Rite Aid once again moved to dismiss RAC for lack of personal jurisdiction. Doc. 3339. The Track 3 motion closely resembled that filed in Track 1B, though the Track 3 motion added new language noting without explanation that "some Rite Aid Hdqtrs. Corp. documents were mislabeled as RAC documents." Doc. 3339-1 at 5 n.5. Rite Aid also argued that "other plaintiffs have attempted to argue that they are entitled to jurisdictional discovery as to RAC based on securities filings, such as proxy statements and reports by RAC's Board" and again referenced the mislabeled documents. *Id*. at 9 & n.7. The Track 3 motion also raised alter ego arguments, although it incorrectly implied that Plaintiffs needed to allege an alter ego relationship in the Complaint in order for the Court to have personal jurisdiction over RAC. Doc. 3339-1 at 8-9.

Documents produced by Rite Aid cast doubt on the validity of RAC's factual assertions, including the assertion that RAC "is a separate and distinct company from [its] subsidiaries" and is not the alter ego of any of its subsidiaries. Track 3 Plaintiffs propounded document requests on Rite Aid on June 23, 2020 in order to explore whether RAC was, in fact, operating as the alter ego of RAHC. On July 23, 2020, instead of responding to the June 2020 Requests, Rite Aid filed a Letter Motion for a Protective Order Regarding Additional Jurisdictional Discovery and wholesale objected to the Track 3 Plaintiffs' June 2020 Requests.

## **LEGAL STANDARD**

When a defendant moves to dismiss for lack of personal jurisdiction and the plaintiff opposes the motion, the court may: (1) decide the issue based on the pleadings and affidavits; (2)



permit jurisdictional discovery; or (3) hold an evidentiary hearing. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If the court does not hold an evidentiary hearing, the plaintiff must make only a prima facie showing that personal jurisdiction exists. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017) (noting that the "burden is relatively slight"); *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *Theunissen*, 935 F.2d at 1458; *see also Wuliger v. Positive Living Resources*, 410 F. Supp. 2d 701, 704 (N.D. Ohio 2006) (noting that this standard "is minimal"). In assessing whether a plaintiff has met this standard, the court may *not* weigh the defendant's controverting assertions. *Theunissen*, 935 F.2d at 1459 (noting that this is to preclude defendants from filing an affidavit that simply denies the alleged jurisdictional facts); *see also Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). A court may only grant dismissal for lack of personal jurisdiction if the plaintiff's uncontroverted affidavits are insufficient to make a prima facie case for jurisdiction. *Theunissen*, 935 F.2d at 1459. Put another way, courts are "to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Carr v. DJO Inc.*, 2012 WL 3257666 at *3 (S.D. Ohio Aug. 8, 2012).

Thus, where a defendant offers evidence in support of its motion to dismiss for lack of jurisdiction, a court may not consider such evidence without offering the plaintiff an opportunity to conduct jurisdictional discovery and/or holding an evidentiary hearing. *See Theunissen*, 935 F.2d at 1459; *Conn*, 667 F.3d at 711.

## ARGUMENT

I. **Because Rite Aid's Documents Have Raised Disputed Issues of Fact as to Whether RAC and RAHC are Alter Egos, This Court Should Deny Rite Aid's Motion for a Protective Order and Compel Responses to Plaintiffs' Discovery Related to the Alter Ego Theory.**

    A. **Alter Ego Law and Jurisdictional Discovery in the Sixth Circuit**

The Court and Special Master have already ordered some jurisdictional discovery to clarify disputed issues of fact related to RAC's claim that it is not subject to personal jurisdiction in Ohio. *See* Special Master Cohen's Email of Mar. 2, 2020; Doc. 3180, *see also* Doc. 1512 at 2 (explaining that the court should allow jurisdictional discovery "unless the plaintiff's claim is 'clearly frivolous'"). This has included jurisdictional discovery to allow a plaintiff to establish that a subsidiary and its corporate parent operate as alter egos such that the parent company may be subject to personal jurisdiction based on personal jurisdiction over the subsidiary. *See, e.g.*, Doc. 3180, citing Doc. 1512; *see also* Doc. 1512 at 5 & n.5, 9-10 (permitting jurisdictional discovery as to an alter ego theory); *see also Anwar*, 876 F.3d 841, 848 (6th Cir. 2017) ("[t]he alter-ego theory provides for personal jurisdiction if the parent company exerts so much control over the


subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction") (internal quotation marks omitted); *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (a court may "exercise personal jurisdiction over an individual or corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to jurisdiction in that court").

In order to determine whether a parent corporation operates as an alter ego of a subsidiary over which a court may exercise personal jurisdiction, the Sixth Circuit examines seven factors: (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) sharing the same assets; (5) completing the same tasks; (6) not maintaining separate books, tax returns, and financial statements; and (7) exerting control over the daily affairs of the other corporation. *Thomson*, 545 F.3d 357 at 363; *Anwar*, 876 F. 3d at 849. The Sixth Circuit has said that where "the written submissions raised disputed issues of fact with regard to cross-corporate entanglements…the district court should [allow] further discovery or [hold] an evidentiary hearing." *Drexel Chemical Co. v. SGS Depauw & Stokoe,* 59 F.3d 170, 1995 WL 376722 at *2 (6th Cir. 1995) (remanding for further jurisdictional fact-finding); *see also Tech. & Services, Inc. v. TACS Automation*, LLC, 2010 WL 2640047, at *3 (S.D. Ohio June 29, 2010); *Mofield v. FNX Mining Co., USA*, Inc., 2009 WL 819493, *3 (M.D. Tenn. March 26, 2009); *Lindsey v. Cargotec USA, Inc.*, 2010 WL 3397355, at *1 (W.D. Ky. Aug. 26, 2010).

The threshold for additional discovery on an alter ego theory is not high; courts in the Sixth Circuit have ordered jurisdictional discovery related to an alter ego theory where there is a "close relationship" between the corporate parent and the subsidiary even if there is "little proof to support [the] jurisdictional allegations." *Quantum Sail Design Group, LLC v. Jannie Reuvers Sails, Ltd.*, 2014 WL 266409, at *7 (W.D. Mich. Jan. 23, 2014). The alter ego theory of personal jurisdiction does not need to be explicitly stated in the complaint, courts look to "all pleadings, motions and facts presented" by the plaintiff. *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, 2006 WL 2225821, at *4 (N.D. Ohio Aug. 2, 2006); *see also Malone v. Windsor Casino Ltd*, 14 Fed. Appx. 634, 636 (6th Cir. 2001) (considering whether plaintiff presented a prima facie case for personal jurisdiction by examining the complaint as well as the facts presented in other pleadings and affidavits).

    B.   **Plaintiffs' Threshold Showing that RAC Operates as an Alter Ego of RAHC**

Here, Rite Aid's minimal jurisdictional document production, other documents it has produced, documents produced by other Defendants, and Rite Aid's recent motion to dismiss, raise



disputed issues of fact as to the *Anwar/Thomson* factors and whether RAC operates as an alter ego of RAHC. Consistent with the Court's prior orders and with well-established Sixth Circuit precedent, the Special Master should allow jurisdictional discovery requests based on the alter ego theory.

Rite Aid's document productions raise a disputed issue of fact as to whether RAC and RAHC share employees. Rite Aid contends that RAC has no employees (Doc. 3339-1 at 1, 3, 5, 7, 10; Doc. 3339-2 at ¶ 4), but it has produced numerous documents that identify key witnesses as employees of RAC, including in email, performance reviews, and other formal corporate documents. *See, e.g.*, Ex. A, Rite_Aid_OMDL_0038035 (Andrea Bucher); Ex. B, Rite_Aid_OMDL_0050847 (Janet Hart); Ex. C, Rite_Aid_OMDL_050666 (Andy Palmer). For example, Andrea Bucher consistently holds herself out as working for "Rite Aid Corporation" as the "Specialist, DEA Compliance" with an address of 30 Hunter Lane, Camp Hill, PA. *See* Ex. A, Rite_Aid_OMDL_0038035; Ex. D, Rite_Aid_OMDL_0038658 (issuing a threshold increase for an Ohio pharmacy). Similarly, Andy Palmer is listed as the Director, Pharmacy Loss Prevention for RAC at the same Camp Hill, PA address in his email signature block in multiple emails and an RAC employee in performance evaluations. *See, e.g.*, Ex. C, Rite_Aid_OMDL_050666 (employee evaluation); Ex. E, MCKMDL00628212 (email). Janet Hart, Rite Aid's 30(b)(6) designee, was consistently called an RAC employee in multiple years of performance reviews. *See* Ex. B, Rite_Aid_OMDL_0050847.

Other materials Plaintiffs have identified from their own investigation show employees holding themselves out as being employed by "Rite Aid Corporation." For example, a 2007 letter written on Rite Aid Corporation letterhead from Michael C. Yount, R.Ph., J.D., Vice President, Regulatory Law, states "Rite Aid Corporation is one of the nation's leading drugstore chains, operating approximately 5,100 pharmacies in 31 states and the District of Columbia." *See* Ex. F. Surely, Rite Aid Corporation's legal counsel would know better than to make a "mistake" about his affiliation and who operates the company's stores.



RITE AID Corporation

LEGAL DEPARTMENT

MICHAEL C. YOUNT, R.Ph., J.D.
Vice President, Regulatory Law
Compliance Officer
Privacy Officer

- MAILING ADDRESS
P.O. Box 3165
Harrisburg, PA 17105

- GENERAL OFFICE
30 Hunter Lane
Camp Hill, PA 17011

- Telephone (717) 761-2633

July 23, 2007



Special Master David Cohen
August 6, 2020
Page 7

Similarly, in testimony provided to the United States House of Representatives, one of Rite Aid's employees stated, "My name is Jesse McCullough and I am the Director of Field Clinical Services for the Rite Aid Corporation. Rite Aid is one of the nation's leading drugstore chains with nearly 4,600 stores in 31 states and the District of Columbia. On behalf of our company's nearly 90,000 employees, including 12,000 pharmacists, I am honored to be here today." *See* Ex. G.

These documents and statements contradict RAC's assertions in their motion to dismiss and elsewhere that RAC is merely a holding company that has no employees. Either Rite Aid's statement is completely false, or RAC and RAHC share employees. "Sharing the same employees" is one of the factors that the Sixth Circuit uses to determine whether a subsidiary and corporate parent act as alter egos. *Thomson*, 545 F.3d 357 at 363; *Anwar*, 876 F. 3d at 849.

The documents Plaintiffs have received thus far from Rite Aid and other Defendants also raise questions as to whether RAC and RAHC engage in the same business enterprise and whether RAC exerts control over the affairs of RAHC. McKesson documents show that Andy Palmer requested threshold increases for Ohio Rite Aid Stores. *See*, *e.g.*, Ex. E, MCKMDL00628212, Ex. H, MCKMDL00628183, Ex. I, MCKMDL00627812.[3] Another McKesson document shows that RAC submitted a threshold increase form to McKesson on behalf of Rite Aid Pharmacies. *See* Ex. J, MCKMDL01391288.[4] By requesting and submitting threshold increases, RAC effectively engaged in the business enterprise of prescription opioid distribution. By doing so on behalf of its subsidiaries, RAC may be exerting control over their operations. Moreover, documents also show that RAC had bonus plans for its stores, which also shows a level of control over Rite Aid stores and that it engages in the same business enterprise as its stores. *See* Ex. K, Rite_Aid_OMDL_0060638 (FY 2006 Bonus Program); Ex. L, Rite_Aid_OMDL_0060717 (FY 2009 Bonus Program). Documents identified by Plaintiffs on Rite Aid's supplier portal (https://raportal.riteaid.com/) show that "Rite Aid Corporation" is involved in supply operations at its distribution centers. *See* Ex. M.

---

[3] Notably, Andy Palmer is identified in these documents as Director, Pharmacy Loss Prevention for "Rite Aid Corporation". Moreover, his address is that of Rite Aid Corporation (30 Hunter Lane, Camp Hill, PA).

[4] The "[r]eason for change" (for the threshold increase) is also instructive, as it states: "*RITE AID CORPORATION* HAS A DEA MONITORING PROGRAM IN PLACE AT THE CORPORATE LEVEL THAT INCLUDES THEIR LOSS PREVENTION DEPARTMENT. AS A RESULT, RITE AID CORPORATION AND MCKESSON AGREED TO INCREASE ALL CII BASE CODES BY 50%". *Id.* at p. 2. (Emphasis added).



Special Master David Cohen
August 6, 2020
Page 8

[Image: Rite Aid Corporation 810 - Invoice for Distribution Center (DC) Version 4010, ANSI X12 Version 004010 810, showing a table with columns "Segment ID", "Description", "Segment Attributes", "Location"]

These documents are directly contrary to RAC's assertions that RAC "does not direct and implement policies and procedures for dispensing controlled substances by any of its subsidiaries," that "RAC has no operations other than those related to its status as a holding company," and that "RAC does not have any direct involvement in directing, managing, or supervising the operations or the employees of any of its subsidiary companies."  Doc. 3339-1 at 3.  This creates disputed issues of fact as to whether RAC engages in the same business enterprise as its subsidiaries and/or exerts control over their operations, two factors that the Sixth Circuit uses to determine if a parent corporation and its subsidiaries are acting as alter egos.  *Thomson*, 545 F.3d 357 at 363; *Anwar*, 876 F. 3d at 849.  These disputed issues warrant more complete discovery of these alter ego claims.

Rite Aid's Track 3 motion to dismiss states that some RAHC documents were "mislabeled" as RAC documents.  This undermines RAC's assertion that RAC maintains separate records – "mislabeled" documents point to shared, muddled, or intertwined corporate records between RAC and RAHC.  Additional documents show that multiple employees had signature blocks indicating they worked for RAC.  *See, e.g.*, Ex. N, Rite_Aid_OMDL_0038075 (email regarding a "Suspicious Order Monitoring Project" that include signature blocks for the "Systems Manager – Store Replenishment/E3 for "Rite Aid Corporation" and  the "Director of Pharmacy Loss Prevention" for  "Rite Aid Corporation" showing an address of 30 Hunter Lane, Camp Hill, PA); *see also* documents referenced *supra*.  Rite Aid argues that because "mislabeled" policies and procedures have already been produced, no further discovery is needed.  Rite Aid PO motion at 10; *see also* 3339-1 at 5 n.5 and 9 n.7.  This misses the point of jurisdictional discovery and the relevance of the purported "mislabeling."  "Mislabeling" itself raises a disputed factual issue as to whether RAC and RAHC maintain separate corporate records.  Failure to maintain separate records is another factor that the Sixth Circuit uses to identify "two entities acting as one." *Thomson*, 545 F.3d 357 at 363; *Anwar*, 876 F. 3d at 849.

Rite Aid argues, without citation to any law, that because the issue of the mislabeled documents was raised in a discovery conference in January 2020, the Track 3 Plaintiffs are precluded from propounding related jurisdictional discovery.  Rite Aid PO Motion at 11.



Notwithstanding that the Court explicitly recognized Track 1B Plaintiffs' discovery requests were just initial requests, Doc. 3180 at 1, the Track 3 Plaintiffs should be allowed jurisdictional discovery for any theory for which there is evidence, including whether allegedly mislabeled documents were mislabeled because RAC and RAHC fail to maintain separate records. In addition, the Track 1B Plaintiffs had not yet asked for, so the Court had not yet considered, the propriety of alter ego jurisdictional discovery.

Moreover, the January 2020 conference did not explore which Rite Aid documents were purportedly mislabeled and Rite Aid has never offered a witness to provide an explanation. Instead, Rite Aid's attorney stated that she "suspected" that references to RAC "are probably sloppy people not writing down 'Headquarters' because it's easier to say 'Rite Aid Corp.' than 'Rite Aid Headquarters Corp.,' but technically, Rite Aid's Corp. has no employees and it has no (docs?). [sic] And to the extent that people use that phrase, they mean 'Headquarters'." Ex. 9 to Rite Aid's PO Motion at page 62, lines 4-10. However, the performance evaluations and email signature blocks that consistently say "Rite Aid Corporation" are indicative not of some individual person being sloppy, but solid evidence that either RAC has employees and documents and directs opioid activities, or that RAC's activities are so entangled with those of RAHC that they are alter egos. Regardless, the evidence gathered thus far warrants further jurisdictional discovery.

Rite Aid's discovery production and Track 3 motion to dismiss have raised factual disputes regarding whether RAC is, as it asserts, merely a holding company or whether it is sufficiently intertwined with RAHC to be its alter ego. Further jurisdictional discovery is warranted under this Court's prior rulings and Sixth Circuit precedent. *See*, *e.g.*, Doc. 1512 at 2 ("When the evidence relevant to jurisdiction is too 'sketchy' for the Court to make an informed ruling, limited discovery relating to jurisdiction should be allowed."); *Theunissen*, 935 F.2d at 1458-59; *see also Drexel Chemical Co.*, 59 F.3d 170, 1995 WL 376722 at *2. Accordingly, this Court should allow Plaintiffs' jurisdictional discovery requests based on the alter ego theory.

II. **Plaintiffs' June 2020 Requests for Production are Appropriately Limited as the Requests Inquire into the Relevant Factors of Control for the Alter Ego Theory.**

Sixth Circuit courts have considered jurisdictional discovery requests based on an alter ego theory to be "appropriate" and "limited" when plaintiffs "inquire into the relevant factors of control, such as those outlined above [in *Thomson* and reiterated in *Anwar*], for establishing personal jurisdiction under the alter-ego theory." *Tech. & Services, Inc.*, 2010 WL 2640047, at *4–5; *see also Thomson*, 545 F.3d at 363; *Anwar*, 876 F. 3d at 849. Rite Aid argues that Plaintiffs' requests are too broad. However, even requests for extensive financial documents or for documents concerning the relationship between the parent and subsidiary in any capacity are



Special Master David Cohen
August 6, 2020
Page 10

appropriate based on an alter ego theory as these requests are directly relevant to the jurisdictional issue. *Credit Life Ins. Co. v. Uniworld Ins. Co. Ltd.*, 94 F.R.D. 113, 117–21 (S.D. Ohio 1982); *see also In re Porsche Cars N. Am., Inc.*, 2012 WL 4361430, at *5-7 (S.D. Ohio Sept. 25, 2012) (ordering the defendants produce a search methodology to show whether they had in fact produced "all documents between or among [the corporate parent] and [subsidiary] concerning the carrying on of business together in any capacity").

Track 3 Plaintiffs' June 2020 Requests all seek documents directly related to the relevant factors for establishing whether RAC is the alter ego of RAHC.

Plaintiffs' first request seeks "all documents relating to the nature and extent of RAC's relationship with RAHQ, Rite Aid of Maryland, Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center, and Rite Aid of Ohio." *See* Ex. O, June 2020 Requests at RFP No. 1. By asking directly for documents relating to the relationship between the corporate parent and subsidiaries, this request is appropriate as it enquires into the "relevant factors of control" outlined in *Anwar* and *Thomson* to show whether RAC is acting as the alter ego of RAHC or another subsidiary. *Tech. & Services, Inc.*, 2010 WL 2640047, at *4–5; *Thomson*, 545 F.3d 357 at 363; *Anwar*, 876 F. 3d at 849.

Request for Production No. 2 asks for documents relating to RAC's organizational structure, including documents related to: a. its corporate officers, b. "the business enterprise(s) in which RAC is engaged," c. RAC's employees, and d. the location and ownership of offices, "including whether any location is shared with any RAC subsidiary, including but not limited to shared office space, facilities and phone numbers." *See* Ex. O, June 2020 Requests at RFP No. 2. These requests directly mirror the factors laid out by the Sixth Circuit in *Anwar*: sharing corporate officers, "engaging in the same business enterprise," "sharing the same employees," "sharing the same assets," and "having the same address and phone lines." *Anwar*, 876 F.3d at 849; *Thomson*, 545 F.3d 357 at 363.

Similarly, Plaintiffs' third request asks for documents directly relevant to several *Anwar* factors, including "the extent that RAC exerts control over its subsidiaries," and the extent of "sharing/overlap of employees or corporate officers." *See* Ex. O, June 2020 Requests at RFP No. 3.

The fourth request, which asks for documents related to RAC's involvement in ensuring regulatory compliance for itself and the named subsidiaries, is directly relevant to whether RAC exerts control over and/or engages in the same business enterprise as its subsidiaries. *See* Ex. O, June 2020 Requests at RFP No. 4.



Plaintiffs' fifth request asks for RAC financial documents, which directly relate to several *Anwar* factors.  *See* Ex. O, June 2020 Requests at RFP No. 5.  Since Plaintiffs allege that RAC and RAHC are alter egos, discovery into whether their finances are entangled is appropriate.  *See Credit Life Ins. Co.*, 94 F.R.D. at 117–21 (ordering production in jurisdictional discovery including broad financial documents such as tax returns because as the Defendants "are alleged to be financially intertwined, to the extent of being alter egos…the income of [the Defendants] has been placed in issue").

Document request No. 6 asks for documents related to "RAC's retention of corporate records," which is directly relevant to whether RAC maintains separate records from its subsidiaries.  *See* Ex. O, June 2020 Requests at RFP No. 6.

Plaintiffs' seventh, eighth, and ninth requests all ask for documents relating to how RAC ensures that its decisions are implemented by its subsidiaries, which is directly relevant to the extent of control RAC exerts over the affairs of its subsidiaries. *See* Ex. O, June 2020 Requests at RFP Nos. 7-9.

Finally, Plaintiffs' tenth request simply asks for documents relating to RAC's contacts and business contracted in Ohio.  This request is relevant to whether RAC engages in the same business enterprise as its subsidiaries and could show whether due process and Ohio's long-arm statute allow for personal jurisdiction over RAC regardless of the alter ego theory. *See* Ex. O, June 2020 Requests at RFP No. 10.

Jurisdictional discovery is appropriate to allow a plaintiff to establish an alter ego theory of personal jurisdiction.  Each of the Track 3 Plaintiffs' June 2020 Requests inquire into the relevant factors of control to support an alter ego theory under *Anwar* and *Thomson*.  Accordingly, Rite Aid's motion for a protective order should be denied and Rite Aid should be ordered to respond to the requests propounded on RAC.

**III.    Because there are Factual Issues as to Whether RAC and RAHC are Alter Egos and Because RAC and RAHC Documents and Employees Appear Intermingled, This Court Should Order Rite Aid to Respond to the Requests for Production from RAHC.**

Courts in the Sixth Circuit have consistently ordered jurisdictional discovery from parties not contesting jurisdiction who are alleged to be alter egos of their corporate parents who do contest personal jurisdiction.  *In re Porsche Cars N. Am., Inc.*, 2012 WL 4361430, at \*\*5-7; *Credit Life Ins. Co.*, 94 F.R.D. at 117–21.  Courts order this discovery because documents from both the corporate parent and the non-contesting subsidiary are relevant to the relationship, which goes to



"the crux of the alter-ego theory… that courts are to look for two entities acting as one." *Anwar*, 876 F.3d at 848; *Credit Life Ins. Co.*, 94 F.R.D. at 120–21.

    As stated above, Rite Aid's document production and Track 3 motion, and documents from other Defendants, raise multiple disputed issues of fact as to whether there is an alter ego relationship between RAC and RAHC. Rite Aid acknowledges that the Track 3 Plaintiffs' June 2020 Requests ask for the essentially the same information from RAHC as from RAC. Rite Aid PO motion at 10. The discussion above demonstrates that each of the ten requests are directly relevant to the alter ego theory of personal jurisdiction over RAC. As any relationship has two sides, RAHC documents also are relevant to the issue of whether RAC and RAHC act as alter egos. These documents should be produced. *See Credit Life Ins. Co.*, 94 F.R.D. at 117–21 (where plaintiffs alleged that defendants were alter egos of a third defendant, which was not contesting jurisdiction, the court ordered production of documents from all three defendants "which were relevant to the jurisdictional issues pending before the court," including 1) "merits discovery properly obtainable" from the non-contesting defendant, 2) documents from the non-contesting defendant and alleged alter egos "which were relevant to the jurisdictional issues pending before the Court" and 3) documents from the non-contesting defendant and alleged alter egos "in which the jurisdictional facts contained in the specific documents were so intertwined with the merits that discovery must be ordered, since the particular item would have relevancy on the jurisdictional question").

    Moreover, Rite Aid's motion to dismiss claims "[a]lthough some Rite Aid Hdqtrs Corp. documents were mislabeled as RAC documents, because RAC has no employees, there is no question that these policies were truly prepared by Rite Aid Hdqtrs. Employees." Doc. 3339-1 at 5 n.5. But the evidence uncovered so far contravenes both these points and warrants further investigation. Plaintiffs are entitled to information that could explain this "mislabeling" and why several Rite Aid employees, in both their emails and in official performance reviews, are identified as RAC employees when Rite Aid claims RAC has no employees. In order to ensure that documents relevant to the jurisdictional issue are produced, the Special Master should order RAHC to respond to the Track 3 Plaintiffs' requests and should require RAC and RAHC to produce all responsive documents in each entity's possession. *See In re Porsche Cars N. Am., Inc.*, 2012 WL 4361430, at *5-7 (ordering both the foreign corporate parent that contested personal jurisdiction and the non-contesting subsidiary to "produce all records in each entity's possession" responsive to the requests in jurisdictional discovery "rather than relying on each other's searches for information").

    In arguing that it should not need to respond to the request for production from RAHC, Rite Aid relies on a case from the Northern District of California that is not in any way applicable



here.  RAC PO motion at 10 (citing *Alperin v. Vatican Bank*, No. C 99-04941 MMC(EDL), 2006 WL 1663847, at *3 (N.D. Cal. June 15, 2006)).  *Alperin* did not involve an alter ego theory of personal jurisdiction, but instead dealt with whether jurisdictional discovery should be allowed when the defendant had not raised lack of personal jurisdiction as defense.  The court denied the motion for jurisdictional discovery as premature.  *Alperin*, 2006 WL 1663847, at *3.  As shown above, under the facts and procedural posture of this case, and well-established Sixth Circuit law, jurisdictional discovery of RAHC on Plaintiffs' alter ego theory is warranted here.

As a disputed issue of fact exists as to whether RAHC and RAC are alter egos, documents from both sides of the relationship are directly relevant.  The Track 3 Plaintiffs' June 2020 Requests are limited to the relevant Sixth Circuit factors of control to establish alter ego personal jurisdiction.  This Court should deny Rite Aid's motion for a protective order and order Rite Aid to respond to the Track 3 Plaintiffs' June 2020 Requests from RAHC.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Rite Aid's Letter Motion for a Protective Order and compel Rite Aid to respond to Plaintiffs' June 23, 2020 requests for production.

Best regards,

/s/ Mark P. Pifko

Mark P. Pifko

cc:  Defendants' Counsel
     Plaintiffs' Counsel