# EXHIBIT 8

# Morgan Lewis

**Gregory T. Fouts**
Partner
+1.312.324.1776
gregory.fouts@morganlewis.com

August 13, 2020

<u>VIA E-MAIL</u>

Special Master David Cohen
24400 Chagrin Boulevard
Suite 350
Cleveland, Ohio 44122
david@specialmaster.law

      Re:    <u>**MDL 2804: Rite Aid Corporation and Rite Aid Hdqtrs. Corp.'s Letter Reply in Support of their Motion for a Protective Order Regarding Additional Jurisdictional Discovery**</u>

Dear Special Master Cohen,

    Defendants Rite Aid Corporation ("RAC") and Rite Aid Hdqtrs. Corp. ("RAHC") submit this reply in support of their letter motion for a protective order forbidding the unauthorized new jurisdictional discovery requests served by Plaintiffs on June 23, 2020 ("June 2020 Requests").

    Plaintiffs' response confirms that the June 2020 Requests represent an attempt to relitigate and expand upon the Court and the Special Master's orders defining the scope of jurisdictional discovery of RAC. Notably absent from the response is any compelling argument for why the Court should reconsider those rulings. This is particularly true because the evidence Plaintiffs claim justifies the June 2020 Requests was available to Plaintiffs when they first pursued jurisdictional discovery. The Court and the Special Master carefully considered the

Morgan, Lewis & Bockius LLP

77 West Wacker Drive
Chicago, IL 60601-5094     T +1.312.324.1000
United States     F +1.312.324.1001

1

parties' arguments—drawing on earlier rulings on personal jurisdiction discovery involving Teva, Allergan, and Mallinckrodt—and decided the appropriate scope of jurisdictional discovery as to RAC.  Nothing in the June 2020 Requests or in Plaintiffs' arguments should change that analysis, or cause the Court to revisit its earlier rulings.  RAC and RAHC respectfully request that the Court enter a protective order forbidding the June 2020 Requests.

<u>Argument</u>

I. **The Court Should Enter a Protective Order**

As with any discovery, the Court has discretion to define the scope of jurisdictional discovery.  *Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991).  Plaintiffs recite the standards for jurisdictional discovery at length.  Resp. at 3-5.  But Plaintiffs gloss over the Court's and the Special Master's prior orders on jurisdictional discovery—and Plaintiffs' own arguments that led to those rulings.

    A. **The Court and the Special Master already have defined the scope of jurisdictional discovery of RAC**

In ruling on the appropriate scope of jurisdictional discovery as to RAC, the Court was not writing on a blank slate.  Instead, the Court "adopted and incorporated" the legal standards "for allowing jurisdictional discovery and determining its appropriate scope" set out in the Special Master's order on jurisdictional discovery of Allergan, Teva, and Mallinckrodt, Doc. 1512. Doc. 3180, at 2-3. Considering those standards, the Court ordered RAC to produce the same categories of documents it previously required the manufacturer defendants to produce (except that the Court did not order RAC to produce tax returns or policies regarding accounting).  *Id.*  The Court found this discovery was "consistent with" the jurisdictional discovery factors a court should consider when determining whether a parent company is subject to jurisdiction.  *Id.* at 3 n.1, citing *Anwar v. Dow Chem. Corp.*, 876 F.3d 841 (6th Cir. 2017).  The

2

Court also ordered RAC to produce the documents requested by Plaintiffs in their February 14, 2020 e-mail, a ruling that was clarified by the Special Master on March 2, 2020. Ltr. Mot. Ex. 4. In the Track 3 Case Management Order—a document Plaintiffs never mention—the Court directed parties to "incorporate the reasoning set out in the Court's order" when discussing any Track 3 jurisdictional discovery.[1]  Doc. 3325, at 2.

The Court's and the Special Master's rulings, grounded in earlier discovery rulings on similar issues, and incorporated in the Track 3 Case Management Order, fully addressed the parties' arguments and defined the scope of jurisdictional discovery as to RAC. Plaintiffs claim their February 14, 2020 e-mail was "only an initial request, not intended to foreclose or limit further jurisdictional discovery of Rite Aid." Resp. at 3. However, nothing in the Court's order on jurisdictional discovery suggests that the Court was merely ruling on an initial round of jurisdictional discovery that could be expanded later at Plaintiffs' election. To the contrary, the Court's ruling set "the scope of jurisdictional discovery from RAC." Doc. 3180, at 3.[2] Moreover, Plaintiffs make no attempt to connect the June 2020 Requests to any documents produced pursuant to the Court's order, so any claim that this information is "necessary to determine the appropriate scope of jurisdictional discovery" is baseless. The Court and the

---

[1] The CMO also required that the parties "shall meet and confer" to discuss jurisdictional discovery. Doc. 3325, at 2. Plaintiffs never met and conferred before serving the June 2020 Requests.

[2] Plaintiffs claim the Court "explicitly recognized" that "Track 1B Plaintiffs' discovery requests were just initial requests." Resp. at 9. This is wrong. The Court began by summarizing both parties' positions. Doc. 3180, at 1-2 ("Plaintiffs' position is that only once RAC produces the requested documents will they be able to determine the appropriate scope of jurisdictional discovery, including deposition topics and what additional interrogatories and requests for production, if any, need to be propounded. Defendants contend Plaintiffs' refusal to discuss the scope of discovery until after receipt of the currently-requested documents constitutes an unwillingness to have meaningful discussions regarding the scope of discovery."). The Court did not adopt either party's position. Notably, the Court set a discovery schedule that did not contemplate either interrogatories or additional requests for production. *Id.* at 3-4.

3

Special Master should not redefine the scope of jurisdictional discovery based on Plaintiffs' new alter ego theory.

> **B.      The evidence Plaintiffs cite does not justify reconsideration of the Court's earlier rulings.**

Despite the Court's ruling defining "the scope of jurisdictional discovery from RAC,"[3] Plaintiffs claim the June 2020 requests are justified because "Plaintiffs' investigation has uncovered evidence that directly contradicts the central themes of Rite Aid's Track 3 Motion to Dismiss." Resp. at 1. The "central themes" of RAC's motion to dismiss, as Plaintiffs define them, are "that RAC is a holding company, with no employees or business operations, and has no involvement in the distribution or dispensing of opioids in Ohio." *Id.* These "central themes" are the same themes in RAC's Track 1B motion to dismiss, which was before the Court when the Court defined the scope of jurisdictional discovery of RAC. Plaintiffs recognize that the Track 3 motion to dismiss "closely resembled that filed in Track 1B." Resp. at 3. RAC supported both motions with the same declaration. *Compare* Doc. 3042-2 (Chima declaration in support of Track 1B motion to dismiss) *with* Doc. 3339-2 (Chima declaration in support of Track 3 motion to dismiss). Against this backdrop, Plaintiffs' argument that they have "uncovered evidence" justifying further discovery is wrong for several reasons.

*First*, Plaintiffs' response notably fails to mention that nearly every document Plaintiffs cite was "uncovered" *before* Plaintiffs set forth exactly what jurisdictional discovery they required of RAC in February 2020. Plaintiffs cite several documents they argue "raise a disputed issue" as to whether RAC has employees. Resp. at 6, 8. All of these documents were produced in Track 1A. Plaintiffs also point to documents they claim "raise questions as to

---

[3] Doc. 3180, at 3.

4

whether RAC and RAHC engage in the same business enterprise and whether RAC exerts control over the affairs of RAHC." *Id.* at 7.  In support, Plaintiffs cite documents produced by McKesson in October 2018 (Exs. E, H, I) and December 2019 (Ex. J).  Plaintiffs also cite a letter from a Rite Aid attorney and Congressional testimony from a Rite Aid employee, which Plaintiffs presumably uncovered in their investigation.  *Id.* at 6-7.  These documents date from 2007 and 2015 respectively, and were available to Plaintiffs when they requested jurisdictional discovery.  The only documents Plaintiffs cite that had not been produced at the time of Mr. Weinberger's February 14 e-mail are two Rite Aid Store Bonus Program policies that were produced on February 21, 2020.  *See* Resp. at 7, Exs. K, L.  These policies were produced during the time the parties were engaging in discussions and correspondence regarding jurisdictional discovery, and Plaintiffs do not explain how these documents justify an expansion of jurisdictional discovery in any event.

Plaintiffs had all this information available to them when they formulated their jurisdictional discovery requests in February 2020.  The Court considered the arguments presented by the parties and resolved the issue of the scope of jurisdictional discovery.  The Court should decline Plaintiffs' invitation to revisit those rulings, particulary when the evidence Plaintiffs claim justifies the expansion was available at the time RAC filed its Track 1B motion to dismiss.

*Second*, nothing in RAC's Track 3 motion to dismiss justifies the June 2020 Requests.  As noted, Plaintiffs recognize that RAC's Track 3 motion closely resembles its Track 1 motion.  Plaintiffs point to a footnote in RAC's Track 3 motion in which RAC stated that some RAHC documents were "mislabeled" as RAC documents.  Resp. at 8.  Plaintiffs claim this "raises a disputed factual issue as to whether RAC and RAHC maintain separate corporate records."  *Id.*

5

Again, though, this "mislabeling" issue is not new:  it was known to Plaintiffs when they propounded their Track 1B jurisdictional discovery, both through the produced documents and through discussion at the January 20, 2020 discovery conference, and was never cited as a basis for jurisdictional discovery.  Plaintiffs complain that "Rite Aid has never offered a witness to provide an explanation" of the mislabeled documents.  *Id.*  But the Court ordered RAC to produce witnesses for depositions on jurisdictional issues, and Plaintiffs may ask these witnesses any questions about "mislabeled documents" they deem necessary.
 Doc. 3180, at 3.

>    ***Third***, based on their response, Plaintiffs already have compiled extensive documents they believe are relevant to RAC's jurisdictional arguments.  Plaintiffs are free to rely on these documents in any way they believe is appropriate in responding to RAC's motion.  But nothing in these documents—or in Plaintiffs' arguments—justifies the vast new expansion of jurisdictional discovery the June 2020 Requests represent.  If Plaintiffs wish to pursue their alter ego theory, they may do so based on the documents RAC has already produced, without disturbing the Court's prior orders on this issue.

>    ***Fourth***, Plaintiffs argue that the June 2020 Requests are grounded in the *Anwar* factors. Resp. at 5.  But the Court already considered the *Anwar* factors in defining the appropriate scope of document production.  *See* Doc. 3180, at 3 n.1.  Some of the June 2020 Requests simply ignore the Court's ruling.  For example, the Court did not require RAC to produce tax returns, but the June 2020 Requests encompass tax returns.  *See* Ltr. Mot. Ex. 5, RFP 5(f).  RAC was also not required to produce policies regarding accounting, but several requests relate to accounting issues.  *See id.* RFP 5.  The Court analyzed the scope of jurisdictional discovery under the appropriate legal standard, and there is no reason to revisit that ruling now.

6

***Fifth***, the evidence Plaintiffs rely on in attempting to reopen issues the Court already settled does not support their arguments. *See Anwar*, 876 F.3d at 847. Plaintiffs' evidence consists largely of documents where Rite Aid employees refer to "Rite Aid Corporation" in e-mail signature blocks (Resp. Exs. A, D, E, H, I, M), or in Congressional testimony or correspondence with third parties (*id.* Exs. F, G). However, "the fact that [parent company] does not distinguish services which it offers through [subsidiaries] is insufficient to establish alter ego liability." *Ohio Edison Co. v. Frontier North, Inc.*, 2014 WL 6389564, at *11 (N.D. Ohio Nov. 14, 2014) (quoting *Garlock v. Ohio Bell Tel. Co.*, 2014 WL 2006781, at *1 (N.D. Ohio May 15, 2014)). For the same reason, that a third party, McKesson, referred to "Rite Aid Corporation" as its customer is not proof of an alter ego relationship. Plaintiffs' reliance on these documents, which were available when they first sought jurisdictional discovery, does not justify reconsideration of the Court's prior conclusions on the scope of jurisdictional discovery.

## II.     The June 2020 Requests are Overbroad Unduly Burdensome, and Far Exceed the Scope of Any Jurisdictional Discovery Ordered in this MDL

Plaintiffs contend that "[t]he Court previously recognized that jurisdictional discovery is appropriate to allow a plaintiff to establish an alter ego theory." Resp. at 2; *id.* at 4 (citing Docs. 3180 & 1512). The June 2020 Requests, however, go far beyond any jurisdictional discovery ordered by the Court or the Special Master in the MDL. In ruling on jurisdictional discovery relating to the manufacturer defendants, the Court ordered six categories of documents to be produced, four of which categories the Court later ordered RAC to produce. Doc. 3180 at 2-3; Doc. 1512 at 7. The Court did not order the manufacturer defendants to produce ***any*** other documents. Doc. 1512, at 7.[4]

---

[4] The Court did require Allergan to respond to two jurisdictional interrogatories, but Plaintiffs served no interrogatories on RAC or RAHC and, in any event, the interrogatories were narrow (one required Allergan to

7

The June 2020 Requests are much broader than the discrete categories of documents the Court ordered produced in its jurisdictional discovery rulings. Even Plaintiffs concede the requests are "extensive." Resp. at 10. Plaintiffs attempt to tie the requests to the *Anwar* factors, but many of the requests are so broad and amorphous as to be nearly impossible to respond to. For example, Plaintiffs seek all documents related to "RAC's relationship with its subsidiaries"; "The extent that RAC exerts control over its subsidiaries"; "the extent of RAC's involvement in ensuring regulatory and legal compliance for itself . . . or any of its subsidiaries"; "All Documents related to RAC's finances"; and "All Documents relating to RAC's relationship with Rite Aid pharmacies." Ltr. Mot. Ex. 5, at 3-5. Courts have recognized that unlimited jurisdictional discovery of this kind is overly burdensome and improper. *See Anwar*, 876 F.3d at 854 (affirming lower court's limitations placed on jurisdictional discovery and noting that plaintiff had requested broad discovery without making a showing that "any information from either would relate to the narrow jurisdictional questions for which discovery was narrowly permitted"); *In re Porsche Cars N. Am., Inc.*, 2012 WL 4361430 (denying discovery from corporate subsidiaries because "the burden of Plaintiffs' demand outweighs the speculative benefit to Plaintiffs in the context of this jurisdictional discovery"); *TailGate Beer, LLC v. Boulevard Brewing Co.*, 2019 WL 2366948, at *7 (M.D. Tenn. June 5, 2019) (denying request for additional jurisdictional discovery because "[t]he Court will not allow the parties to conduct a fishing expedition into this issue").

Even if the June 2020 Requests had been served when RAC filed its Track 1B motion, they vastly exceed the scope of any jurisdictional discovery previously ordered in this MDL.

---

identify individuals involved in due diligence for the sale of its generics business, and the other required Allergan to identify reports to its board of directors related to opioids). Doc. 1512, at 7-8.

8

That the June 2020 Requests come months after the Court issued its order defining "the scope of jurisdictional discovery from RAC," Doc. 3180 at 3, only exacerbates the prejudice, unfairness, and burden of the June 2020 Requests.  The Court should grant the Protective Order for this reason as well.

### III. Jurisdictional Discovery of RAHC Is Not Appropriate.

Plaintiffs also argue that they should be permitted to conduct jurisdictional discovery of RAHC as broad as the discovery they seek from RAC, even though RAHC is not contesting personal jurisdiction.  Resp. at 11-12.  Because no further jurisdictional discovery of either entity should be permitted, this argument fails at the outset.  Even as to RAHC specifically, however, the argument should be rejected.

Plaintiffs claim this discovery is necessary because "RAHC documents are also relevant to the issue of whether RAC and RAHC act as alter egos." *Id.* at 12.  But the discovery Plaintiffs seek from RAHC extends to nearly every aspect of its operations, not just its relationship to RAC.  Ltr. Mot. Ex. 6.  To the extent the June 2020 Requests overlap with documents requested in merits discovery, RAHC will produce those documents in the course of discovery.  But there is no basis for Plaintiffs to request this information in the guise of jurisdictional discovery.

The authorities Plaintiffs cite do not support their argument for broad jurisdictional discovery of RAHC.  In *Credit Life Ins. Co. v. Uniworld Ins. Co., Ltd.*, 94 F.R.D. 113, 121 (S.D. Ohio 1982), the court ordered the defendant not contesting jurisdiction to produce a single narrow category of documents (tax returns).  *In re Porsche* also did not involve separate discovery of a defendant conceding jurisdiction.  There, the court required both the defendant contesting jurisdiction and its corporate affiliate to produce records relevant to the issue of jurisdiction to the extent the records were in the possession of both parties.  2012 WL 4361430,

9

at *5.  RAHC has already produced (or logged as privileged) documents determined by the Court and the Special Master to be relevant to the jurisdictional inquiry, including policies and procedures on dispensing and distribution and documents related to RAHC's Compliance Committee and Pharmacy Compliance Sub-Committee.  Plaintiffs' attempt to expand this jurisdictional discovery is unwarranted and should be rejected.

## Conclusion

The Court and the Special Master have defined the scope of jurisdictional discovery as to RAC, and there is no basis to relitigate those decisions.  For the foregoing reasons, and for the reasons stated in the Letter Motion, the Court should issue a protective order relieving RAC and RAHC from any obligation to respond to the June 2020 Requests.

Sincerely,

*/s/ Gregory T. Fouts*
Gregory T. Fouts

cc:
Track 3 Plaintiffs' Counsel
Track 3 Defendants' Counsel