# EXHIBIT 9

# Morgan Lewis

**Gregory T. Fouts**
Partner
+1.312.324.1776
gregory.fouts@morganlewis.com

August 12, 2020

<u>VIA E-MAIL</u>

Special Master David Cohen
24400 Chagrin Boulevard
Suite 350
Cleveland, Ohio 44122
david@specialmaster.law

      Re:    <u>Rite Aid's Opposition to Plaintiffs' Motion to Compel Jurisdictional Discovery</u>

Dear Special Master Cohen,

      I write in opposition to Mr. Weinberger's letter of July 29, 2020 ("July 29 Letter") seeking an order compelling Rite Aid to produce jurisdictional discovery. For the following reasons, the motion to compel should be denied.

      Contrary to Plaintiffs' assertions, Rite Aid Corporation ("RAC") has complied with both the Court's and the Special Master's Orders. Plaintiffs' July 29 Letter raises several purported issues with RAC's compliance with the Court's February 24, 2020 Order that were never raised in the parties' multiple meet and confer sessions on jurisdictional discovery. Had Plaintiffs raised these issues, we would have explained that RAC has already produced the organizational charts and policies and procedures required by the Court's order. And RAC has now produced its publicly-available annual reports for 2006-2020. With regard to your March 2 order, Plaintiffs rehash many of the arguments already addressed by Plaintiffs' letter dated July 17, 2020. As RAC explained in its response to that letter, *see* Exhibit A, Plaintiffs' challenges to RAC's document production and to RAC's privilege claims are baseless.

      <u>**The Court's February 24, 2020 Order**</u>

      In its February 24, 2020 order regarding jurisdictional discovery from RAC, the Court ordered RAC to produce several categories of documents, including (1) corporate organizational charts; (2) policies regarding branding, marketing, sales, promotion, distribution, dispensing,

Morgan, Lewis & Bockius LLP

77 West Wacker Drive
Chicago, IL 60601-5094    T +1.312.324.1000
United States    F +1.312.324.1001

regulatory affairs, and pharmacovigilance, to the extent they apply to opioids; (3) policies regarding corporate management to the extent such policies bear on opioid related subsidiaries; and (4) annual reports. Doc. 3180 at 2-3. Plaintiffs argue that RAC has not complied with the Court's order because it has not produced these documents. Plaintiffs are wrong. The organizational charts and policies and procedures were produced in the course of fact discovery in Track 1, and RAC produced its annual reports from 2006-2020 promptly upon receiving Plaintiffs' motion to compel. (Ex. B).[1]

As an initial matter, Plaintiffs never raised RAC's purported noncompliance with the Court's order in any of the meet and confers that preceded Plaintiffs' motion. If they had, RAC would have explained to Plaintiffs the matters we explain below, without burdening the Special Master with needless motion practice on these issues.

***Corporate Organizational Charts***. Rite Aid Hdqtrs. Corp. ("RAHC") has produced corporate organizational charts in both Track 1(A) and Track 1(B) discovery. These documents can be found at the following Bates numbers: Rite_Aid_OMDL_0039255 - Rite_Aid_OMDL_0039257; Rite_Aid_OMDL_0044549; Rite_Aid_OMDL_0044538; Rite_Aid_OMDL_0044539; Rite_Aid_OMDL_0044565 - Rite_Aid_OMDL_0044566; Rite_Aid_OMDL_0044558 - Rite_Aid_OMDL_0044559; Rite_Aid_OMDL_0044180; Rite_Aid_OMDL_0044175 - Rite_Aid_OMDL_0044179; Rite_Aid_OMDL_0044205 - Rite_Aid_OMDL_0044210; Rite_Aid_OMDL_0044212 - Rite_Aid_OMDL_0044220; Rite_Aid_OMDL_0044190 - Rite_Aid_OMDL_0044198; Rite_Aid_OMDL_0044181 - Rite_Aid_OMDL_0044189; Rite_Aid_OMDL_0035941 - Rite_Aid_OMDL_0035958; Rite_Aid_OMDL_0035389 - Rite_Aid_OMDL_0035402; and Rite_Aid_OMDL_0036017 - Rite_Aid_OMDL_0036335. Organizational charts were also identified by Bates number in Rite Aid of Maryland, Inc.'s Second Supplemental Objections and Answers to Plaintiffs' First Set of Interrogatories (Exhibit C), as well as RAC's June 30, 2020 letter to Plaintiffs (Exhibit D).

***Policies and Procedures.*** RAHC and other Rite Aid distribution and dispensing entities have produced the policies and procedures concerning corporate management, distribution, dispensing, regulatory affairs, and pharmacovigilance that are required by the Court's order. Specifically, Rite Aid refers Plaintiffs to (i) their February 21, 2020 cover letter, identifying by Bates number policies and training materials concerning the dispensing of controlled substances, anti-diversion measures at pharmacies, and red flag analyses (Exhibit E); (ii) a February 27, 2020 email to Special Master Cohen, copying Plaintiffs' counsel, identifying by Bates number policies regarding opioid dispensing (Exhibit F); and (iii) Rite Aid of Maryland, Inc.'s Second Supplemental Objections and Answers to Plaintiffs' First Set of Interrogatories, which identifies by Bates number distribution-related policies and procedures. It is unclear why Plaintiffs continue to claim that Rite Aid has not produced these documents. RAC (or any other Rite Aid entities) do not have policies or procedures regarding branding, marketing, sales, or promotion of opioids.

---

[1] The Court's order on jurisdictional discovery from RAC "adopted and incorporated" the Court's prior order on jurisdictional discovery from Teva, Allergan, and Mallinckrodt. Doc. 3180, at 2, citing Doc. 1512. The Court's earlier order made clear that jurisdictional discovery documents were to be produced "to the extent such documents . . . have not already been produced." Doc. 1512, at 6.

*Annual Reports.*  RAC produced its Annual Reports from 2006 to 2020 on July 31, 2020 (*see* Exhibit B).  RAC notes that annual reports dating back to 1994 are publicly available and accessible at https://www.riteaid.com/corporate/investor-relations/sec-filings.

### Documents Sent to or Received by RAC's Board of Directors

The Court's Order also required RAC to produce "the documents already requested by Plaintiffs in Mr. Weinberger's Feb. 14, 2020, 8:04 AM email."  Doc. 3180 at 3.  Following a teleconference on March 2, the Special Master clarified the documents RAC was required to produce.  Specifically, the Special Master required production of "[d]ocuments sent to or received by RAC's Board of Directors, and/or any of the Board's Committees,[ ] during the relevant period, regarding: (1) opioid dispensing policies, (2) opioid distribution policies, (3) risk assessment and management related to distribution/dispensing of opioids; and (4) compliance with laws and regulations, and policies and procedures, governing opioids."  The Special Master limited the production to "opioid subject matter."

Plaintiffs challenge RAC's compliance with the Special Master's March 2 order.  Plaintiffs first claim that RAC has not produced all "[d]ocuments sent to or received by RAC's Board of Directors, and/or any of the Board's Committees" related to opioids.  July 29 Letter at 7.  Plaintiffs' argument is based solely on the fact that RAC's production "consisted entirely of Powerpoint presentations, except for six other documents."  July 29 Letter at 8.  Contrary to Plaintiffs' argument, RAC performed an appropriate search for responsive materials, and is not withholding any responsive, non-privileged documents.  RAC reviewed all materials provided to the Board of Directors and its Committees from 2006 to 2020, identified material related to "opioid subject matter," and either produced that material or withheld it as privileged.

It is not surprising that these documents largely comprise PowerPoint presentations. The Board of Directors and Audit Committee receive presentations concerning regulatory and legal risk, documents in which references to opioids are most likely to appear.  References to opioids may also occur in legal updates provided by Rite Aid's General Counsel, which were appropriately withheld as privileged.  While Board members or Audit Committee members receive other documents relating to other topics, RAC reviewed these documents and determined they are non-responsive because they do not relate to "opioid subject matter."

### Privilege Designations

Plaintiffs allege—without detail or explanation—that RAC improperly withheld documents as privileged based purely on the number of documents produced versus the number of documents withheld.  July 29 Letter at 7.  Matters regarding regulatory or legal compliance or legal enforcement efforts frequently involve seeking legal advice from in-house or outside counsel.  Many of the documents withheld relate to RAHC's Compliance Committee and Pharmacy Compliance Sub-Committee concerning legal or regulatory matters.  These committees' evaluation—with the assistance of counsel—of compliance with laws and regulations served a legal function, regardless of whether it also served a business function.  RAHC attorneys were intimately involved with these committees.  They attended and participated in committee meetings in their capacity as counsel to RAHC, in contrast to, for

3

example, creation of audit reports without any indication that a lawyer is giving or intends to give legal advice pertaining to the reports. *See* DR 14-8, Dkt. No. 1666.

Plaintiffs have suggested that documents relating to regulatory compliance automatically implicate business, not legal, issues and the attorney-client privilege therefore does not apply. *See* Ex. G at 3 n.2. This is inaccurate, and inappropriately characterizes the Special Master's Discovery Rulings and relevant caselaw. While the Special Master has concluded in prior Discovery Rulings that "compliance with regulations is usually a business matter, not a legal one" (DR 14-10, Dkt. No. 2968), the Special Master has not created a bright-line rule characterizing regulatory compliance as a purely business function. A communication may be made ***both*** for the purpose of making a business decision and rendering or seeking legal advice, and such a dual purpose does not render the attorney-client privilege inapplicable. *See, e.g.*, *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 685-86 (W.D. Mich. 1996) ("'[L]egal and business considerations may frequently be inextricably intertwined. This is inevitable when legal advice is rendered . . . in the operations of a business in a corporate setting. The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege.'" (internal citations omitted)).

*In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014), is instructive on this point as applied to regulatory compliance issues.[2] In *Kellogg Brown & Root*, the D.C. Circuit reversed a district court ruling that the attorney-client privilege did not apply to documents concerning an internal investigation "undertaken pursuant to regulatory law and corporate policy rather than for the purpose of obtaining legal advice." *Id.* at 756 (internal quotation marks and citations omitted). The appellate court explained that the district court was incorrect in concluding that the "primary purpose of a communication is to obtain or provide legal advice only if the communication would not have been made 'but for' the fact that legal advice was sought." *Id.* at 759 (internal quotation marks omitted). The court found that the "but for" articulation of the "primary purpose" test

> would eliminate the attorney-client privilege for numerous communications that are made for both legal and business purposes and . . . would eradicate the attorney-client privilege for internal investigations conducted by the businesses that are required by law to maintain compliance programs, which is now the case in a significant swath of American industry . . . [T]he primary purpose test, sensibly and properly applied, cannot and does not draw a rigid distinction between a legal purpose on the one hand and a business purpose on the other. After all, trying to find *the* one primary purpose for a communication motivated by two sometimes overlapping purposes (one legal and one business, for example) can be an inherently impossible task.

---

[2] The Sixth Circuit has also followed the "primary purpose" test. *Compare Kellogg Brown & Root*, 756 F.3d at 759 ("many courts (including this one) have used . . . the 'primary purpose' test . . . to resolve privilege disputes when attorney-client communications may have had both legal and business purposes"), *with Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 572 (6th Cir. 2015) (evaluating whether "primary purpose" of meeting was "to obtain legal advice").

4

*Id.* (emphasis in original).  The appellate court rejected the district court's distinction of the Supreme Court's *Upjohn* decision "on the ground that the internal investigation here was conducted pursuant to a compliance program mandated by federal regulations." *Id.* at 762.  The court reasoned that such a logic would work to prevent companies required by federal regulation to maintain internal controls or compliance programs "from invoking the attorney-client privilege" with respect to documents or communications made as part of such a compliance program.  *Id*.

While communications relating to regulatory compliance may be based in part on business considerations, such communications are protected by the attorney-client privilege if the communications also involve giving or requesting legal advice.  Courts within the Sixth Circuit and elsewhere agree.  *See, e.g.*, *United States v. Micro Cap KY Ins. Co.*, No. 5:16-cv-278-JMH-REW, 2017 WL 1745626, at *1 (E.D. Ky. Feb. 8, 2017), *report and recommendation adopted*, 246 F. Supp. 3d 1194 (E.D. Ky. 2017) (legal advice concerning maintenance of legal and regulatory compliance properly withheld under attorney-client privilege); *Amco Ins. Co. v. Madera Quality Nut LLC*, No. 1:04-cv-06456-SMS, 2006 WL 931437, at *8-9 (E.D. Cal. Apr. 11, 2006) (upholding privilege for materials where "one purpose of the report was to comply with obligations under various statutes and regulations, including the Sarbanes Oxley Act"); *Aetna Inc. v. Mednax, Inc.*, No. 18-CV-02217-WB, 2019 WL 6467349, at *1 (E.D. Pa. Dec. 2, 2019) ("If getting or receiving legal advice 'was one of the significant purposes of the [communication]' the privilege should apply, even if there were additional purposes, and even if the communication was mandated by government regulation." (internal citation omitted)).

The documents reflected on RAC's privilege logs were appropriately withheld.  The Compliance Committee focuses on compliance with laws and regulations relating to RAHC's overall business (including laws and regulations concerning controlled substances), and the Pharmacy Compliance Sub-Committee guides RAHC's regulatory, policy and operational compliance efforts with respect to pharmacy operations specifically.  The committee materials RAC and RAHC withheld necessarily concern Rite Aid's interpretation of, and adherence with, federal and state laws and regulations that apply to Rite Aid's business (and to controlled substances in particular).  In-house counsel sit on these committees and regularly attend their meetings for the purpose of providing legal advice.  *See* Ex. D.  Redacted or withheld Board of Directors and Audit Committee materials reflect privileged analyses and discussions concerning legal and regulatory matters.  The withheld materials therefore contain RAHC in-house and outside counsel's advice concerning ongoing legal matters, and requirements under federal and state laws.

That these materials relate to regulatory compliance—and thus implicate business as well as legal purposes—does not render the attorney-client privilege inapplicable.  Even if the ultimate decisions reached by the Compliance Committee and Pharmacy Compliance Sub-Committee could be categorized as "business decisions," the examination of legal implications in coming to those conclusions still implicates the attorney-client privilege.  *In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir. 1997), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) (if strategy committee decision was driven "principally by profit and loss, economics, marketing, public relations, or the like, it was also infused with legal

5

concerns, and was reached only after securing legal advice" and "disclosure of the documents would reveal that legal advice").

The Board of Directors, Audit Committee, Compliance Committee and Pharmacy Compliance Sub-Committee materials were properly withheld as privileged. *See Georgandellis v. Holzer Clinic, Inc.*, No. 2:08-cv-626, 2010 WL 1839027, at *1 (S.D. Ohio May 4, 2010) (finding (i) risk management committee minutes privileged because counsel was present at and participated in the committee's meetings, and (ii) board of directors minutes appropriately redacted material protected by the attorney-client privilege). RAC did not "over-designate" materials as privileged in connection with its production of jurisdictional discovery.

### Redactions of Documents Produced

Plaintiffs challenge RAC's redaction on relevance grounds of material not related to opioids.[3] This issue was raised in passing in Plaintiffs' correspondence, but was never discussed in a meet and confer. RAC's redaction was proper under the Special Master's Order. RAC is aware that CMO No. 2 generally does not permit redaction for relevancy. Doc. 441 ¶¶ 29, 30. However, the Special Master's Order on jurisdictional discovery specifically limits RAC's production to "**opioid** subject matter." July 29 Letter, Exhibit A (emphasis in original). Consistent with this order, RAC produced non-privileged information related to "opioid subject matter." Plaintiffs have confirmed their jurisdictional inquiry focuses on "discovery related to information in [the 2018 Rite Aid Corporation's Report to Stockholders on Oversight of Risks Related to Opioids], including documents related to oversight and risk management of opioid dispensing by RAC and its Board of Directors." July 29 Letter at 3. Material unrelated to opioids is irrelevant to Plaintiffs' inquiry, as the Special Master recognized in his March 2, 2020 order.

The Special Master's order is also consistent with cases recognizing that board materials are extremely sensitive, warranting relevance redactions. *See, e.g.*, *Georgandellis*, 2010 WL 1839027, at *1 (board of directors minutes were appropriately redacted to remove "information unrelated to the claims and defenses asserted in this action"); *Ajuba Int'l, LLC v. Saharia*, No. 11-CV-12936, 2014 WL 4793846, at *3 (E.D. Mich. Sept. 25, 2014) (permitting redaction of non-responsive information from board minutes); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in Gulf of Mex.*, No. MDL 2179, 2011 WL 12663484, at *1 (E.D. La. July 1, 2011) (approving redaction of board meeting minutes because "confidential" and "highly confidential" are "inadequate to describe the level of confidentiality required for Board Minutes"); *Beauchem v. Rockford Prods. Corp.*, No. 01 C 50134, 2002 WL 1870050, at *2 (N.D. Ill. Aug. 13, 2002) (finding that portion of board minutes relating to retirement plans at issue was "small" and "large

---

[3] Plaintiffs also claim that some documents produced are "incomplete." July 29 Letter at 6. Board materials prior to September 2011 are maintained in hard copy format. RAC's counsel conducted a review of these hard copy materials at Rite Aid's Pennsylvania headquarters in early March 2020, and completed this review shortly before the facility was shut down due to the pandemic. When RAC performed this review, only responsive pages (i.e., those related to opioids) were collected, for the same reasons RAC redacted electronic Board materials. As with numerous other issues discussed in this response, Plaintiffs never raised this issue with RAC's counsel before including it in their Letter.

portions of the Board Minutes relate to other aspects of the company's operation and administration," and therefore good cause existed to redact for relevancy).[4]

### Identification of Internal and External Subject Matter Experts

Plaintiffs also claim RAC has failed to "identify internal subject matter experts, external advisors, or others who sent relevant documents to the Board or its Committees." July 29 Letter at 8. RAC addressed this baseless argument in its July 24, 2020 Letter (*see* Exhibit A at 2), but briefly summarizes its response here. The Special Master's March 2, 2020 Order required RAC to produce "opioid-related documents *sent to* the [RAC] Board and/or its Committees by," among others, "(a) internal subject matter experts, [and] (b) external advisors" (emphasis added). RAC has complied with this Order because it has produced all opioid-related updates that were provided to RAC's Board of Directors.

As RAC explained to Plaintiffs in a June 30 letter (Exhibit D), in a subsequent meet and confer, and in its July 24, 2020 letter (Exhibit A), RAC Board members receive materials in advance of meetings through a centralized process whereby materials are provided directly via an application called BoardBooks. RAC reviewed and produced any responsive, non-privileged documents provided to the Board through the BoardBooks app. This is the only manner in which Board members receive documents relevant to their responsibilities. The Board does not receive information informally, such as through e-mails. Board members do not even have Rite Aid e-mail addresses. Internal subject matter experts, such as members of RAHC's Pharmacy Compliance Sub-Committee (who have been identified), may provide information for these updates, but Board members do not receive documents directly from internal subject matter experts or outside advisors (or anyone else). Instead, Board updates are compiled by Andy Palmer (previously Tony Bellezza) based on information received by these internal or external subject matter experts. Identifying every person who may have provided relevant information in advance of a Board or Audit Committee meeting would require an extensive email review from 2006 to 2020, which would go far beyond the scope of the Court's and Special Master's orders.

Because BoardBooks is the only mechanism through which Board members receive updates and subject matter experts do not separately provide Board members with updates or documents, RAC has complied with the Special Master's direction to produce "opioid-related documents sent to the [RAC] Board and/or its Committees."[5]

---

[4] The cases cited by Plaintiffs are inapposite. In *Tween Brands Investment, LLC v. Bluestar Alliance, LLC*, the defendant redacted irrelevant information from "branding materials that it sent to potential licensees," not highly sensitive internal documents, and in *Melchior v. Hilite International, Inc.*, the defendant made no argument concerning the sensitive or highly confidential nature of the documents redacted. No. 2:15-cv-2663, 2015 WL 6955177, at * 1-2 (S.D. Ohio Nov. 10, 2015); No. 13–50177, 2013 WL 2238754, at *3 (E.D. Mich. May 21, 2013).

[5] Plaintiffs have previously claimed that RAC should produce communications or documents sent to the individuals who compile Board or Committee updates. Special Master Cohen's March 2 order does not require production of these documents, and is expressly limited to opioid-related documents "sent to the **[RAC] Board and/or its Committees**" (emphasis added).

      For these reasons, and those stated in RAC's July 24, 2020 letter (Ex. A), Plaintiffs' motion to compel should be denied in its entirety.

                                              Sincerely,

                                              */s/ Gregory T. Fouts*

                                              Gregory T. Fouts

Cc:    Plaintiffs' Counsel