**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO: "*All Cases*" | ) ) ) ) ) ) | JUDGE POLSTER <br><br> **ORDER REGARDING** <br> **MOTION FOR SANCTIONS** |

Plaintiffs move the Court for an order granting sanctions against the Allergan and Teva defendants (Doc. #: 3443). For the reasons and to the extent stated below, the motion is **GRANTED IN PART**. Plaintiffs will be allowed to pursue certain additional discovery against Allergan and Teva, but Plaintiffs' request for additional sanctions is denied.

\* \* \* \* \*

The Court does not set out the full procedural history leading up to Plaintiffs' motion. The parties' briefs lay it out in detail. *See* Doc. ##: 3443, 3466, 3467, & 3496. The essence of the issue raised is whether Plaintiffs are entitled to some relief, given that they only recently received a critical document ("the Cegidim Report"), even though the Court ordered the Report must be produced and even though Plaintiffs asked Allergan and Teva for it numerous times during discovery in the last 18 months.

An abbreviated history is as follows. In 2011, Allergan contracted with Cegidim to audit its Suspicious Order Monitoring System ("SOMS"). Cegidim met with about a dozen Allergan employees as a part of its audit, and then sent Allergan the Cegidim Report. Specifically, Cegidim

emailed the Report to Allergan officers Tom Napoli and Scott Soltis. The Cegidim Report was highly critical of Allergan's SOMS – for example, it noted the SOMS allowed Allergan's customers "to move more of a controlled substance per month, even if it is for unknown and potentially unacceptable reasons," including simply because "inventory is low." Napoli promptly made plans to hire Cegidim to help create a new and improved SOMS.

Shortly thereafter, however, Allergan decided to sell its generic opioid business to Teva, so Napoli's project to improve and replace Allergan's SOMS was suspended. When Allergan transferred its generic opioid business to Teva, many Allergan employees also went to Teva – for example, Soltis moved over, but Napoli did not. (Napoli's employment at Allergan was discontinued). Teva also obtained from Allergan the files and documents related to the generic opioid business, including employees' files.

The relevance of documents like the Cegidim Report to this litigation cannot be overstated. *See, e.g.* Doc. #: 3305 at 8 (noting that the sufficiency of defendants' SOMS are "[a]t the heart of plaintiffs' distribution claims"). Accordingly, Plaintiffs repeatedly pushed Allergan and Teva to produce the Report. Moreover, Special Master Cohen ordered defendants to produce it, and to work with Cegidim's successor, IQVIA, to ensure production. *See Discovery Rulings No. 14-5 and 15* (Doc. ##: 1498 & 1375).

Allergan, Teva, and IQVIA all undertook numerous searches for the Cegidim Report, but could not find it. Of course, if a party cannot find a document after an appropriate search, it cannot be sanctioned for failing to produce it. Allergan and Teva assert their efforts to find the Report were "exhaustive." But defendants' diligence was wanting. Eventually, Plaintiffs suggested to IQVIA that its search protocol might have been insufficient – that is, the email thread de-duplication

technique used by Epiq (IQVIA's e-discovery vendor) might have failed to collect email attachments, like the Cegidim Report. Plaintiffs' suggestion proved correct. Epic located the Report and provided it to IQVIA; IQVIA provided the Report to Teva; and Teva produced it to Plaintiffs.[1]

Plaintiffs complain that both Allergan and Teva did not conduct an adequate search for the Cegidim Report. Allergan and Teva both object, insisting they repeatedly reviewed their document collections trying to locate the Cegidim Report, and repeatedly asked IQVIA to look for it. The Court credits these efforts. However, the Court still concludes that Allergan and Teva's efforts were insufficient. As noted, Allergan and its counsel have long known that Cegidim sent its Report to *two* Allergan officers – Napoli and Soltis – but Allergan and Teva looked only at Napoli's custodial files. Furthermore, Allergan and its counsel have long known that, in addition to Napoli and Soltis, Cegidim met with 10 *other* Allergan employees in order to prepare its Report, suggesting a likelihood that Soltis or Napoli might have shared the Report with some of these ten; but Allergan and Teva searched none of these other employees' custodial files.[2] In addition, given the importance of the Cegidim Report to Allergan's business, and in light of Napoli's plan to hire Cegidim to remediate identified inadequacies with Allergan's SOMS, there is also a likelihood that Napoli or

---

[1] Plaintiffs add that, "just before the document was produced, Teva's counsel advised Plaintiffs that there was a 'problem' with how Teva received the document; therefore, the metadata that would otherwise accompany the production and show details concerning to whom the document was sent was purportedly not able to be produced." Motion at 9 (Doc. #: 3443); *see also* Teva's response at 9 n.6 (Doc. #: 3466) ("The [Cegidim Report] was produced in a PDF form because the Teva Defendants' document vendor could not, after repeated attempts, process the [Report] in a manner that would retain its metadata.").

[2] The ten other employees were Mary Woods, Larry Schaffer, Justin Park, Laura Pinti, Sandra Simmons, Lisa Scott, Lynn DaCunha, Jaydeep Shukla, Rick Robbins, and Napoleon Clarke. Allergan asked Wood where she believed the Cegidim file might be located, and she suggested Napoli's custodial file. Allergan did not search any of the other employees' custodial files.

Soltis shared the Report with still other employees; but again, neither Allergan nor Teva pursued this possibility. In light of the known, critical importance of the Cegidim Report, and Plaintiffs' repeated requests that Allergan and Teva search for it, defendants cannot protest that their search of documents collected only from pre-agreed custodians was sufficient.[3]

Further, defendants offer no explanation for why it was Plaintiffs' counsel, instead of themselves, who identified IQVIA's problem with Epiq's email-threading protocol. Knowing that IQVIA sent the email to Allergan, it was just as easy (and just as required) for Teva's or Allergan's counsel to "double-check" IQVIA's email production. A simple question by Teva or Allergan of IQVIA – e.g., "You emailed the Cegidim Report and produced the email, are you sure you located and produced all email attachments?" – might have done it.

To be clear, neither plaintiffs nor defendants nor third-parties have an endless obligation to chase down any old responsive document just because they know it once existed and know where it should be found; a reasonably diligent search (as defined by the circumstances), even if unproductive, is usually enough. Nor are parties normally required to ensure the adequacy of third-parties' discovery protocols. But the Cegidim Report is not any old document, and defendants were not diligent in following obvious clues. Indeed, if the Cegidim Report supported, rather than contradicted, assertions Teva and Allergan made in their summary judgment briefing, it seems awfully likely the defendants would have worked more diligently to find it. And it is that level of diligence that was required, regardless.

In sum, Plaintiffs have shown Teva and Allergan "fail[ed] to obey an order to provide or

---

[3] It is also concerning that even the bare email chain between Cegidim and Allergan (*without* the attached Report) also was not produced by Teva or Allergan from Napoli's custodial file. The email chain was produced only by IQVIA. Motion at 11 (Doc. #: 3443).

permit discovery." Fed. R. Civ. P. 37(b)(2)(A). This failure caused prejudice to Plaintiffs in several ways, including having to conduct deposition discovery and negotiate settlements without the Report. Therefore, sanctions are appropriate.

Plaintiffs ask for imposition of various penalties, up to and including "prohibiting Allergan and Teva from asserting *in any MDL case* that they had a reasonable and/or good faith basis to believe" that "the SOM system subject to the [Cegidim Report]" complied with applicable law. Motion at 12 (Doc. #: 3443) (emphasis in original). This level of sanction, however, would be excessive. Instead, the Court concludes the following discovery allowances are proportional and appropriate, and provide sufficient redress for Allergan's and Teva's failures:

- Teva and Allergan shall search for and produce from the files of the following custodians any and all non-privileged SOMS-related materials: Tom Napoli, Scott Soltis, Mary Woods, Larry Schaffer, Justin Park, Laura Pinti, Sandra Simmons, Lisa Scott, Lynn DaCunha, Jaydeep Shukla, Rick Robbins, and Napoleon Clarke.

- Plaintiffs may re-depose Napoli for up to two hours.

- Plaintiffs may depose Soltis for up to two hours.

- After receiving the documents mentioned in the first bullet-point above, Plaintiffs may seek from the Court an order allowing them to depose other individuals. (Plaintiffs should do so only if they can show good reason for additional discovery and that the depositions of Napoli and Soltis are not sufficient. The parties should attempt to come to agreement on this issue before Plaintiffs seek an order from the Court.)

- Teva and Allergan shall work with IQVIA and undertake best efforts to produce the metadata from the Cegidim Report.

- Teva and Allergan shall work with IQVIA to ensure that any and all *other* documents that should have been produced in connection with *all* MDL defendants have been correctly searched for and produced, and IQVIA shall provide an explanation to Plaintiffs of what it has done to ensure production.[4]

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** October 14, 2020

---

[4] Allergan explains that IQVIA worked with Epiq to rectify the email-threading issue, but Epiq notes its investigation revealed there were "a *set* of unique attachment*s* to emails that were neither identified nor included in the Epiq review universe." Doc #: 3467-2 at ¶17 (Epiq affidavit) (emphasis added). In other words, IQVIA's failure to locate the Cegidim Report (which it blames on Epiq, which in turn blames it on "Equivio software") was not isolated; IQVIA also apparently failed to locate and produce other relevant "email attachment" documents.
    This failure implicates far more than just discovery related to Allergan and Teva. IQVIA worked with numerous defendants on their SOMS, and the Court ordered all of these defendants and IQVIA to collaborate and produce relevant discovery. *See Discovery Ruling No. 15*. Accordingly, IQVIA must now rectify the email-threading issue in connection with *all* of these defendants and ensure it has produced all relevant discovery.