## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804** |
| THIS DOCUMENT RELATES TO: | **Case No. 17-md-2804 Hon.** |
| *County of Lake, Ohio v. Purdue Pharma, L.P., et al.*, Case No. 18-op-45032 | **Dan Aaron Polster** |
| *County of Trumbull, Ohio v. Purdue Pharma, L.P., et al.*, Case No. 18-op-45079 | |
| "Track Three Cases" | |

## PLAINTIFFS' MOTION TO STRIKE
## DEFENDANTS' THIRD-PARTY COMPLAINTS

**TABLE OF CONTENTS**

**Page**

INTRODUCTION................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

    I.  The Court Should Strike Pharmacy Defendants' Third-Party Claims ........................... 3

        A.  Plaintiffs' Claims are Independent of Pharmacy Defendants' Third-Party Claims against Prescribers ........................................................................................................ 3

        B.  Third-Party Claims Will Improperly Delay and Prejudice Plaintiffs' Claims...................... 6

        C.  Defendants' Counts Fail to State Meritorious Claims ........................................................ 7

    II.  Alternatively, the Third-Party Claims Should be Severed and Deferred................................... 10

CONCLUSION ................................................................................................................. 12

## INTRODUCTION

This is Pharmacy Defendants' second ill-founded attempt to drag putative third-party Prescriber Defendants into this streamlined MDL. On March 31, 2020, this Court struck Pharmacy Defendants' near-identical third-party complaints in Case Track One-B, reasoning that "third-party Prescribers' liability to the Pharmacies is not dependent on Plaintiffs' claims[,]" and that "the addition of these claims and parties will cause the trial to be much more complex and will force significant delay." *In re Nat Prescription Opiate Litig.*, 2020 WL 1526726, at *2-3 (N.D. Ohio Mar. 31, 2020). Here, as in Case Track One-B, Pharmacy Defendants' Third-Party Complaints do not meet the requirements for impleading under Rule 14 and are a delay tactic interposed to prevent a timely trial; they should, therefore, again be struck. *See* Fed. R. Civ. P. 14(a)(4).

Wholly apart from the substantive deficiencies of these new third-party claims, discussed below, the insertion of as many as *ten thousand* new defendants and five new claims a mere seven months before this carefully streamlined Pharmacy bellwether trial, weeks before the deadline for production of documents, and two months before the fact discovery cutoff, is completely unworkable. These putative Prescriber Defendants represent an entirely new class of individual defendants against whom no discovery has yet been taken in the MDL, who have not yet had an opportunity to conduct their own discovery, and whose inclusion in the bellwether trial would do little to advance the course of the MDL as a whole. Thus, should the Court exercise its discretion to permit impleader of these unknown putative defendants instead of striking the Third-Party Complaints, Plaintiffs submit that these claims should be severed and deferred.

1

**LEGAL STANDARD**

Rule 14(a) of the Federal Rules of Civil Procedure provides that, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." However, the third-party claim cannot simply be an independent or related claim but must be based upon plaintiff's claim against defendant. *See Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805–06 (6th Cir. 2008). As this Court has explained when striking nearly identical third-party complaints in Case Track One-B:

> ***The essential criterion of a third-party claim is a "defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant."*** *Am. Zurich. Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). ***"The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough."*** *Stiles v. Porter Paint Co.*, 75 F.R.D. 617, 619 (E.D. Tenn. 1976) (quoting Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1446 (3d ed.)).

2020 WL 1526726, at *1 (emphasis added).

Moreover, it is in the sound discretion of the trial court to "decline to allow third-party claims that will prejudice plaintiff or unduly delay or complicate trial." *Id.* (citing *Gutierrez-Morales v. Planck*, 318 F.R.D. 332, 335 (E.D. Ky. 2016)); *see also Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 237 F.R.D. 679, 681 (N.D. Okla. 2006) (judicial economy warranted severance and stay of the third-party claims where action was originally brought by two plaintiffs against 14 defendants, while defendants named over 160 third-party defendants and 150 "Doe" defendants including new categories of defendants, and ultimate potential third-party defendants could number in the thousands.).

Here, those factors weigh against allowing the third-party claims to proceed at this time and dictate that the claims should be struck in their entirety or, in the alternative, severed and deferred.

2

## ARGUMENT

### I.   The Court Should Strike Pharmacy Defendants' Third-Party Claims

#### A.  Plaintiffs' Claims are Independent of Pharmacy Defendants' Third-Party Claims against Prescribers

Plaintiffs' claims against Pharmacy Defendants are not derivative of any potential claims against the putative Prescriber Defendants, but are, instead, independent claims based upon a separate and independent duty. That is, Plaintiffs' theories (and methods of proof) do not rely on whether prescribers negligently prescribed opioids, and instead focus on Pharmacy Defendants' policies and procedures, their own duties under state and federal law, and the information Pharmacy Defendants had available to them when dispensing opioids.

This Court has previously come to an identical conclusion in Case Track One-B, observing:

> The third-party Prescribers' liability to the Pharmacies is not dependent on Plaintiffs' Claims . . . . [A] finding of Defendants' liability will be based on the distinct duties of the Pharmacies, involving facts largely independent of any individual Prescriber or prescription . . . . The Pharmacies do not identify any authority imposing on a prescriber liability for a pharmacist's failure to fulfill its corresponding responsibility, or apportioning liability between prescribers and pharmacies for injuries caused by illegitimate prescriptions. The Court finds no basis on which the Pharmacies can simply transfer to Prescribers their liability to Plaintiffs for failing to rely upon (or ignoring) information beyond an individual prescription or Prescriber's representations when dispensing opioids. Therefore, the Pharmacies have not asserted third-party claims within Rule 14.

2020 WL 1526726, at *4-5. More recently, this Court applied this ruling to Case Track Three cases at the motion to dismiss stage. Rejecting Pharmacy Defendants' proximate cause arguments based on the "learned intermediary doctrine," this Court stated:

> The Court has also concluded the Pharmacies cannot transfer to prescribers their liability (if any) to Plaintiffs, because Plaintiffs' liability theory relies on legal obligations and evidence independent of prescriber conduct. Order Regarding Plaintiffs ' Motion to Strike or Sever Third-Party Complaints, In re Nat 7 Prescription Opiate Litig., 2020 WL 1526726, at *2-3 (N.D. Ohio Mar. 31, 2020)

(Doc. #: 3246 at 4-5).

*In re Nat Prescription Opiate Litig*., Dkt. 3403 at fn. 31 (N.D. Ohio Aug. 6, 2020).

This Court was correct on both occasions and should reach the same result here. As they did in Case Track One-B, Pharmacy Defendants base their third-party claims entirely upon their erroneous allegation that "if the . . . Pharmacy Chains were found to be found liable . . . it would be only because the pharmacists relied in good faith on facially valid prescriptions written and/or authorized by one of the Prescriber Defendants." Third-Party Complaints at ¶ 33. However, the law makes it clear that is precisely what Pharmacy Defendants are not allowed to do. Rather, their duty is to look beyond the existence of a prescription signed by a doctor or a doctor's representations. If reliance on the prescriber was sufficient, then the "corresponding responsibility" would be non-existent.

It is well-accepted that "federal law does not apportion the responsibility for dispensing unlawful prescriptions between a prescribing practitioner and a pharmacist. Rather, federal law imposes separate and independent duties on the prescriber and the pharmacist." *East Main Street Pharmacy*, 75 Fed. Reg. at 66157, n.30. *See also Medic-Aid Pharmacy*, 55 Fed.Reg. 30,043, 30,044 (DEA July 24, 1990) (internal quotation marks omitted) ("corresponding responsibility . . . means . . . that a pharmacist is obligated to refuse to fill a prescription if he knows or has reason to know that the prescription was not written for a legitimate medical purpose."). This Court has come to a similar conclusion. *See* 2020 WL 1526726, at *2 ("pharmacists exercise their responsibility separately and independently of the prescriber and cannot simply rely on the prescribers' representations.").

Accordingly, both the DEA and courts have long rejected the proposition that a pharmacist is entitled to simply rely on the prescriber. *See United States v. Henry*, 727 F.2d

4

1373, 1378–79 (5th Cir.), on reh'g, 749 F.2d 203 (5th Cir. 1984) (rejecting the argument that a pharmacist "must rely on the judgment of the physician" to satisfy its corresponding duty and finding the pharmacist must look beyond representations by the physician to red flags, such as "prescriptions brought in at frequent intervals by the same individual."); *Holiday CVS, LLC*, Fed. Reg. Vol. 77, No. 198 (2012), at 62333 (citing evidence that certain red flags might not be resolvable, even in the face of a written prescription, and evidence that prescribers could be complicit in diversion). "Under Federal law, a pharmacist is not required to fill a prescription merely because a physician has authorized a prescription . . . ." *In the Matter of Holiday CVS, L.L.C.*, Dkt. No. 12-37 and 12-38 (U.S. Dept. Of Justice, Drug Enf't Admin.) (April 13, 2012). To find that a pharmacist simply could rely on the representations of the prescriber, or the existence of a written prescription, in fulfillment of the corresponding duty "would render the corresponding responsibility imposed on registrants under the regulations to be a nullity and . . . stand[] in conflict with the regulations and Agency precedent." *Id.* at 8-9.

Further, Plaintiffs' claims are not based merely upon the fact that the prescriptions were improperly filled, but that Pharmacy Defendants failed to have in place and/or utilize effective systems to screen for red flags and failed to perform due diligence to resolve red flags prior to filling prescriptions.

Because the duties owed by pharmacist and prescriber are "separate" and cannot be "apportion[ed]," because a pharmacist is not entitled to merely rely on a prescriber's representation in order to fulfill the corresponding duty, and because Pharmacy Defendants' failures to implement and utilize effective red flag systems do not hinge on representations made by prescribers, it is a legal fallacy that the prescribers may be held responsible for Pharmacy Defendants' failures to fulfill their legal duties. Accordingly, Pharmacy Defendants' third-party

claims against the putative Prescriber Defendants may not appropriately be impleaded under Rule 14. *See Am. Zurich Ins. Co.*, 512 F.3d at 805-06.

### B. Third-Party Claims Will Improperly Delay and Prejudice Plaintiffs' Claims

This Court should also strike the Third-Party Complaints because the addition of as many as ten thousand new defendants who have never participated in offensive or defensive discovery and five new claims a mere seven months before trial, weeks before the deadline for production of documents, and two months before the fact discovery cutoff, will result in improper delay and undue prejudice.[1] As this Court found in Case Track One-B when striking Pharmacy Defendants' third-party complaints:

> Additionally, ***it is undisputed that the addition of these claims and parties will cause the trial to be much more complex and will force significant delay*** . . . The current schedule contemplates trial will begin November 9, 2020 . . . ***This schedule cannot be maintained if the currently-unidentified third-party defendants are added to the case***. The Pharmacies state they will identify prescribers after Plaintiffs identify red flag prescriptions, which Plaintiffs did on March 20th. ***The Pharmacies will first need to identify the Prescriber corresponding to each relevant prescription, amend the Complaint to name these Prescribers, then locate and serve each Prescriber. Only after that time-consuming process is complete will the parties be able to begin discovery of these new parties and claims. This additional discovery, including written***

---

[1] As this Court has recognized, and as discussed above, it is well-established that a court may exercise its discretion to strike the third-party claims where they would overly complicate the litigation and/or delay the trial. *See e.g., Laborers' Dist. Council Pension & Disability Trust Fund No. 2 v. Geofreeze, Inc.*, 298 F.R.D. 300, 302-04 (D. Md. 2014) (court exercised discretion to strike third-party claims for fraud in the inducement and negligent misrepresentation where factual dichotomy existed between those claims and the pending claim for unpaid employer contributions, such that Court would be conducting dual proceedings resulting in excessive complications, additional expense to Plaintiffs, and delay of disposition of Plaintiffs' claims); *Hensley v. U.S.*, 45 F.R.D. 352, 353 (D. Mont. 1968) (court may properly "strike a third-party complaint … because the court might deem that under the circumstances of a particular case it would be unfair to delay the trial of the principal case until the third-party defendant was ready for trial, or unfair to push the third-party defendant into an immediate trial."); *Railey v. Southern Ry. Co.*, 31 F.R.D. 519, 523 (E.D. S.C. 1963) (third-party complaint dismissed where different legal claims and standards were at issue); *McPherrin v. Hartford Fire Ins. Co.*, 1 F.R.D. 88, 90 (D. Neb. 1940) (court vacated its earlier order to implead stating: "Suffice it to say that the third party procedure in this case: (a) Complicates the procedure. (b) Has delayed and will delay a speedy trial. (c) Adds expense to the litigation.").

*discovery and depositions of possibly hundreds of Prescribers, undoubtedly would take many months*. The Pharmacies have not suggested a timeline, but *permitting the third-party claims would require an indefinite postponement of the November 9, 2020 trial*.

As in Case Track One-B, the putative Prescriber Defendants here (currently named only as Doe Defendants) would not be identified for months. Moreover, these putative Prescriber Defendants represent an entirely new class of defendants against whom no discovery has yet been taken in the MDL and who have not yet had the opportunity to conduct their own discovery, and whose inclusion in the bellwether trial would necessarily engender delay while doing little to advance the course of the MDL as a whole. Accordingly, the Third-Party Complaints should be struck as part of the Court's case management discretion.

## C.  Defendants' Counts Fail to State Meritorious Claims

Defendants' Third-Party Complaints are also unmeritorious. *See* Fed. R. Civ. P. 14, Advisory Committee Note to 1963 Amendments (Court has discretion to strike the third-party claim if it is obviously unmeritorious). First, indemnification (Count IV of Third-Party Complaints), is not available to parties, such as Pharmacy Defendants, whose damages arise from their own affirmative misconduct. *See Pinney Dock & Transp. Co. v. Penn Cent. Corp*., 196 F.3d 617, 620 (6th Cir. 1999). Indeed, Ohio law provides that indemnification "is available only when the party seeking indemnification is an innocent actor whose liability stems from some legal relationship with the truly culpable party . . . . " *Wills Trucking*, 1999 WL 357775, at *3 (citing *Ohio Cas. Ins. Co. v. Ford Motor Co*., 502 F.2d 138, 140 (6th Cir. 1974)). If Pharmacy Defendants are held liable to the Plaintiffs, it will not be because they were "innocent actor[s]," but because they breached their affirmative duties. Accordingly, the Pharmacy Defendants may not seek indemnification for any judgment issued against them for breach of their duties.

The indemnification claims also fail because Pharmacy Defendants do not allege an

7

agreement or relationship between themselves and the putative Prescriber Defendants that establishes secondary liability. In Ohio, "[i]ndemnity arises from contract, either express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *CSX Transp, Inc. v. Columbus Downtown Dev. Corp.*, 307 F. Supp. 3d 719, 728 (S.D. Ohio 2018) (citing *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987)). And, "[a]n implied right to indemnification is recognized under Ohio law 'in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other.'" *Id.* (citing *Reynolds v. Physicians Ins. Co.*, 623 N.E.2d 30, 31 (Ohio 1993)). "Secondary liability generally arises in situations, like vicarious liability, where a relationship exists between the tortfeasors that permits one tortfeasor to be held liable for the consequences of the other's actions." *Id.* (citing *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 617 N.E.2d 737, 743 (Ohio Ct. App. 1992)); *see also Reynolds*, 623 N.E.2d at 3 ("Relationships which have been found to meet this standard are the wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant.").

The key to the right of implied indemnification is a relationship in which the tortfeasors owe a "common duty" to the injured party. *See CSX Transportation, Inc. v. Columbus Downtown Development Corp.*, 307 F. Supp. 3d 719 (S.D. Ohio 2018). Here, there is no common duty owed to Plaintiffs. Rather, as discussed above, the duties on the prescriber and pharmacist are "separate and independent." *East Main Street Pharmacy*, 75 Fed. Reg. at 66157, n.30. The Pharmacy Defendants do not allege any express contract or contracts that establish a right to indemnity, nor do they allege facts showing the existence of a relationship establishing secondary liability between themselves and the Prescriber Defendants. Thus, Count IV of the

Third-Party Complaints fails to state claims for indemnification and should be struck.

Pharmacy Defendants also fail to state a plausible contribution claim (Count V of Third-Party Complaints). Because Plaintiffs have alleged absolute nuisance, i.e. that Pharmacy Defendants' nuisance-creating conduct was intentional and unlawful, Pharmacy Defendants are not entitled to seek contribution. Under Ohio law, contribution is not available for intentional torts. Ohio Rev. Code § 2307.25 ("There is no right of contribution in favor of any tortfeasor against whom an intentional tort claim has been alleged and established."); *Relizon Co. v. Seybold*, 2014 U.S. Dist. LEXIS, at *22 (S.D. Ohio June 26, 2014) (finding that if a party is found liable on an intentional tort claim, "there is no question that [a] contribution claim would be barred by Ohio Revised Code § 2307.25(A)."). Thus, Count V of the Third-Party Complaints fails to state a claim for contribution and should be struck.

Pharmacy Defendants' Third-Party Complaints' remaining counts (Count I: Negligent Misrepresentation; Count II: Common Law Negligence; and County III: Intentional Fraud) also fail to state proper claims for relief under Rule 14. Each is premised on the flawed theory that Pharmacy Defendants were entitled to rely on the representations of the putative Prescriber Defendants and fails to state a derivative claim for relief. *See American Zurich Ins. Co.*, 512 F.3d at 805 (citations omitted); *Ukasick v. Street (In re Street)*, 283 B.R. 775, 780 (Bankr. D. Ariz. 2002) (citing *Hawkins v. Eads (In re Eads)*, 135 B.R. 387, 395 (Bankr. E.D. Cal. 1991)) ("The third-party defendant's 'liability must be derivative and must flow to the third-party plaintiff.'").

To the extent that Counts I, II, and III merely state facts to support Pharmacy Defendants' claims for indemnity and contribution, they fail for the same reasons that Pharmacy Defendants' claims for indemnity and contribution fail. Accordingly, Counts I-III of the Third-Party Complaints fail to meet the requirements of Rule 14 and should be struck.

## II.  Alternatively, the Third-Party Claims Should be Severed and Deferred

Should the Court, despite the foregoing, exercise its discretion to permit the third-party claims to stand at this time, the claims should properly be severed and deferred until after completion of the May 2021 Case Track Three trial. Severance of the third-party claims into a later trial or track would be entirely consistent with the role intended for this Court in shepherding the MDL and bellwether litigation by the JPML. *See* Transfer Order, Dkt. #1 (recommending that the transferee judge "establish different tracks for the different types of parties or claims.") *See also* Fed. R. Civ. P. 21 ("The Court may also sever any claim against a party.").

Because insertion of the third-party claims at this time would cause significant delay, would derail the current discovery schedule and trial setting, would add additional complication through the introduction of thousands of new individual defendants and as many as five new claims, and would prejudice efficient trial of the current pending claims, the third-party claims should properly be severed and deferred. *See Kosters v. Seven-Up Co.*, 595 F.2d 347, 355-56 (6th Cir. 1979) (court properly severed third-party claim for separate trial given the confusion that surrounded the questions of indemnity and contribution and the difficulty of clarifying the factors that the jury would have to consider); *In re Air Crash Disaster*, 86 F.3d 498, 517-18 (6th Cir. 1996) (court "properly exercised discretion" to sever third-party claims and adhere to original discovery schedule where defendant filed third-party claims on the last day such filing was permitted, allowing third-party claims would have thwarted the court's trial date goal, and defendant could pursue its contribution or indemnity claims in a subsequent action); *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 237 F.R.D. 679, 682-84 (N.D. Okla. 2006) (judicial economy warranted severance of the third-party claims where action was originally brought by

two plaintiffs against 14 defendants, while defendants named over 160 third-party defendants, including new categories of defendants, potential third-party defendants could number in the thousands); *Arthur Andersen LLP v. Standard & Poor's Credit*, 260 F. Supp. 2d 1123, 1125 (N.D. Okla. 2003) (severance of third-party claims for indemnity or contribution was warranted when the action was complicated and joinder occurred late in the course of the litigation); *In re CFS-Related Securities Fraud Litigation*, 213 F.R.D. 435, 437-441 (N.D. Okla. 2003) (severance of third-party claims was warranted where the action was already complicated, document discovery was completed, depositions were about to begin, no claims against similar parties were currently pending in the litigation, and potential claim was known by the third-party plaintiff more than two years); *U.S. v. Kramer*, 770 F. Supp. 954, 958-60 (D.N.J. 1991) (severance of third-party claims for contribution appropriate where trial of the third-party claims would unduly complicate and overburden trial of the primary suit, would bog down the trial of the primary claims, and would significantly multiply the number of parties and issues).

Severance is particularly appropriate in actions where determination of an earlier issue might moot the third-party claims, as must be the case with Pharmacy Defendants' third-party claims, which, in order to be pled under Rule 14, must necessarily be dependent on their being found liable for Plaintiffs' primary claims. *See In re Beverly Hills Fire Litig*., 695 F.2d 207, 216 (6th Cir. 1982) (severance appropriate where resolution of initial issue could be dispositive of or moot remaining claims). Additionally, assuming *arguendo* Pharmacy Defendants had actionable claims for contribution or indemnification, such claims have not yet accrued, making them particularly appropriate for severance and deferral. *See, e.g.*, Ohio Rev. Code § 2307.26 (contribution claims do not accrue until there is a "judgment for the injury or loss . . . against the tortfeasor seeking contribution"); *National Mut. Ins. Co. v. Whitmer*, 435 N.E.2d 1121, 1123

11

(Ohio 1982) (the right to indemnity and/or contribution becomes complete and enforceable only upon a payment by the claimant satisfying the whole of the obligation.); *McPherson v. Cleveland Punch & Shear Co.*, 816 F.2d 249, 250–51 (6th Cir. 1987) ("[A] cause of action for contribution does not accrue until the joint tortfeasor has paid more than his proportionate share of liability.").

Accordingly, should the Court permit the third-party claims to survive at this time, the claims should be severed and deferred so as not to prejudice or delay the streamlined Case Track Three bellwether trial setting.

## CONCLUSION

For the reasons set forth above, this Court should strike the Pharmacy Defendants' Third-Party Complaints, or, in the alternative, sever and defer the third-party claims.

Dated: October 26, 2020                            Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr., Esq.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

/s/Joseph F. Rice
Joseph F. Rice, Esq.
MOTLEY RICE LLC
28 Bridgeside Blvd. Mt.
Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

12

/s/Paul T. Farrell, Jr.
Paul T. Farrell, Jr., Esq.
FARRELL LAW
422 Ninth Street, 3rd Floor
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger, Esq. (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Frank Gallucci, Esq.
PLEVIN & GALLUCCI COMPANY, L.P.A.
55 Public Square, Suite 2222
Cleveland, Ohio 44113
(216) 861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

Hunter J. Shkolnik, Esq.
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiffs Lake County and
Trumbull County, Ohio*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of October, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF System.

/s/Peter H. Weinberger
Peter H. Weinberger

*Plaintiffs' Liaison Counsel*