**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** ) ) ) **THIS DOCUMENT RELATES TO:** ) ) *Track Three Cases* ) ) ) ) | **MDL 2804** **Case No. 1:17-md-2804** **Judge Dan Aaron Polster** **ORDER** |

Before the Court is the *Objection to Order Regarding Personal Jurisdiction Discovery Over Rite Aid Corporation* filed by Rite Aid Corporation ("RAC") and Rite Aid Hdqtrs. Corp. ("RAHC") (collectively, "Rite Aid"). Doc. #: 3510. Plaintiffs filed a response. Doc. #: 3528. Rite Aid filed a reply. Doc. #: 3532. For the following reasons, the Objection is **SUSTAINED in part and OVERRULED in part.**

### I. Background

This dispute began in the Track One-B cases. The Track One-B Plaintiffs sued RAC and RAHC, and RAC filed a motion to dismiss for lack of personal jurisdiction. *See* Doc. #: 3042. RAC asserted it is a holding company that does not distribute or dispense opioids or have offices, employees, or operations in Ohio. Doc. #: 3042-2 at ¶ 4. The Track One-B Plaintiffs sought jurisdictional discovery, and after the parties could not agree on the scope of such discovery, the Court issued an Order setting the parameters. *See Order Regarding Jurisdictional Discovery of Rite Aid Corp.* ("*Track One-B Order*"), Doc. #: 3180. The Court incorporated the standard for jurisdictional discovery and scope set forth in an earlier order regarding other defendants. *Id.* at 2

(citing Doc. #: 1512). After the parties sought clarification from Special Master Cohen, he issued clarifications of the *Track One-B Order* via email. *See Resp.*, Ex. 2 (Doc. #: 3528-2).

On April 3, 2020, RAC made a production pursuant to the *Track One-B Order*. Before the parties could meet and confer regarding RAC's responses, the Sixth Circuit struck the amendments to the Track One-B Plaintiffs' complaints and RAC's motion to dismiss became moot.

The Track Three Plaintiffs ("Plaintiffs") added RAC as a defendant in the amended complaints filed on May 15. Plaintiffs allege various Rite Aid entities' "practices and procedures" for distributing and dispensing opioid were "established by Rite Aid Corporation." Doc. #: 3326 at ¶ 43; Doc. #: 3327 at ¶ 44. The Track Three Case Management Order directed the parties to meet and confer regarding jurisdictional discovery and to incorporate the reasoning in the *Track One-B Order*. Doc. #: 3329 at 2. The parties resumed conferring on issues related to RAC's responses provided under the *Track One-B Order*, and the Track Three Plaintiffs filed a letter motion to compel with Special Master Cohen.

On June 16, RAC filed a motion to dismiss the Track Three Plaintiffs' complaints for lack of personal jurisdiction. Doc. #: 3339. One week later, on June 23, Plaintiffs' counsel served new jurisdictional discovery requests on RAC and RAHC.[1] Plaintiffs' counsel explained the requests were based on a footnote in RAC's motion to dismiss asserting that some RAHC documents were mislabeled as RAC documents, so Plaintiffs intended to explore whether RAHC is the alter ego of RAC. *See Obj.*, Ex. 5 (Doc. #: 3510-5). Rite Aid filed a letter motion for protective order with Special Master Cohen.

---

[1] The Court agrees with the Special Master that, as directed by the CMO, Plaintiffs should have met and conferred with RAC before issuing these requests, but the failure to do so does not extinguish Plaintiffs' right to obtain discovery.

Special Master Cohen addressed Plaintiffs' motion to compel and Rite Aid's motion for protective order in a combined *Ruling Regarding Jurisdictional Discovery of Rite Aid Corp.* (the "*Ruling*"). Doc. #: 3457. The Special Master granted in part Plaintiffs' motion to compel and ordered Rite Aid to produce certain documents covered by the *Track One-B Order*. Doc. #: 3457 at 9, 13–14. The Special Master largely denied Rite Aid's motion for protective order and required RAC and RAHC to respond to Plaintiffs' June requests but limited the scope to RAC's relationship with RAHC (rather than other subsidiaries). Doc. #: 3457 at 17–20. Rite Aid objects to the *Ruling* and asks the Court to reverse it and grant RAC's motion to dismiss for lack of personal jurisdiction.

## II.     Legal Standard

The Court reviews *de novo* objections to the Special Master's legal conclusions and will set aside a ruling on a procedural matter only for abuse of discretion. Doc. #: 69 at 5; Fed. R. Civ. P. 53(f)(5).

## III.    Analysis

Rite Aid argues (1) the *Ruling* orders discovery that exceeds the jurisdictional discovery permitted against any other defendant and that is inconsistent with the Court's previous orders; (2) Plaintiffs failed to establish a prima facie case of "alter ego"; and (3) the *Ruling* allows discovery that is overbroad and excessively burdensome.

### a.    Consistency with prior orders

Rite Aid argues the Special Master erred by disregarding the prior jurisdictional discovery orders and permitting Plaintiffs to serve broad requests for additional discovery. *Obj.* at 7. Rite Aid does not object to incorporating the *Track One-B Order* into the scope of jurisdictional discovery in Track Three. In ruling that Rite Aid is required to respond to some of Plaintiffs' June 2020 requests, the Special Master determined the Track Three CMO did not limit Plaintiffs' ability

3

to propound additional requests, and it even suggested some amendments to those made in Track One-B may be appropriate. Doc. #: 3457 at 16 n.16. Rite Aid acknowledges the CMO "did not expressly bar Plaintiffs from seeking additional discovery," but claims the Special Master disturbed the prior rulings and "dramatically expand[ed]" the scope of jurisdictional discovery that they set. *Obj.* at 7–8.

The Court agrees that the CMO does not limit the scope of jurisdictional discovery in Track Three to that ordered in Track One-B. As the Special Master noted, jurisdictional discovery in Track One-B was abruptly discontinued as a result of the Sixth Circuit's mandamus ruling. Nothing in the *Track One-B Order* precluded additional jurisdictional discovery in that case, and the Court will not bind the parties in other cases based on an incomplete process. The Court will allow jurisdictional discovery if a party makes the necessary showing.[2] This leaves the question of whether Plaintiffs made the requisite showing here to obtain jurisdictional discovery at all, or of the scope ordered by the Special Master.

### b. Alter ego discovery

Rite Aid argues the Special Master erred by allowing Plaintiffs to take discovery regarding the "alter ego" theory of personal jurisdiction because Plaintiffs have not pleaded it. *Obj.* at 9. Plaintiffs do not contest that they have not pleaded allegations supporting this theory, but they argue (1) Rite Aid waived this argument by failing to raise it before the Special Master, and (2) this theory or facts supporting it do not need to be in the complaint in order to obtain jurisdictional discovery. *Resp.* at 11–12.[3]

---

[2] The Court's prior jurisdictional discovery orders make clear that "alter ego" theory is a basis for pursuing jurisdictional discovery. Doc. #: 1512 at 5.

[3] While Rite Aid did not raise the failure to plead as a basis for its motion for protective order before the Special Master, it did identify the alter ego basis for jurisdiction as "unpleaded." *See Resp.*, Ex. 6 at 7 (Doc. #: 3528-6); *see also Resp.*, Ex. 8 at 4 (Doc. #: 3528-8) (referring to alter ego theory as "new" in letter reply in support of motion for protective order).

4

In arguing for waiver, Plaintiffs misconstrue the Court's prior order. The Court did not conclude that a party waives arguments not raised before a special master; rather, it determined that submitting new legal theories to the Court in an objection to a special master ruling undermines the purpose of special masters assisting the Court and wastes judicial resources. Doc. #: 1349 at 2. Although the Court indicated it would strike—and therefore would not consider—new evidence or theories not raised before the Special Master, the Court did not say it *could not* consider new evidence or theories. In that instance, the Court required the parties to resubmit their arguments to Special Master Cohen for further consideration. *Id.* Here, the Court finds it can efficiently address Rite Aid's argument without requiring resubmission to the Special Master because whether Plaintiffs alleged the alter ego theory in their complaints is critical to analyzing whether they made a prima facie showing that this theory provides a basis for jurisdiction, which is an issue that clearly was before the Special Master.[4]

Defendants object to the Special Master's determination that Plaintiffs made a prima facie showing that alter ego theory provides a basis for jurisdiction. Plaintiffs argue they are not required to make a prima facie showing to pursue jurisdictional discovery. *Resp.* at 13. They offer no alternative standard, other than reiterating that whether and how much jurisdictional discovery to allow is within the Court's discretion and suggesting that the Court should allow discovery in a case with "disputed issues of fact with regard to cross-corporate entanglements." *Id.* (citing *Drexel Chem. Co. v. SGS Depauw & Stokoe* 59 F.3d 170, 1995 WL 376722 at *2 (6th Cir. 1995)).[5]

---

[4] The parties should not construe this determination to indicate that, in reviewing objections to special master rulings, the Court will make a routine practice of considering arguments not first presented to the special master.

[5] The Sixth Circuit in *Drexel Chemical Co.* did not explain the disputed factual issues or the nature of the "cross-corporate entanglements" that led it to remand to the district court for further fact finding after the district court initially denied the motion to dismiss.

Courts routinely deny requests for jurisdictional discovery where plaintiffs fail to allege in the complaint a prima facie basis for jurisdiction. *See, e.g.*, *Milligan Elec. Co. v. Hudson Constr. Co.*, 886 F. Supp. 845, 850 (N.D. Fla. 1995) ("It is the obligation of the plaintiff to undertake at least enough minimal investigation prior to filing a complaint as to permit it to allege a basis for jurisdiction in the complaint. It would be an abuse of the discovery process to allow discovery when the plaintiff fails to meet the minimal jurisdictional requirements."); *Clockwork IP, LLC v. Clearview Plumbing & Heating Ltd.*, 127 F. Supp. 3d 1020, 1030 (E.D. Mo. 2015) ("Numerous cases hold that district courts have the discretion to deny jurisdictional discovery when, as here, the complaint fails to make a prima facie case of personal jurisdiction."); *see also Reply* at 4 n.4 (citing additional cases). Where a plaintiff has not made factual allegations regarding the "requisite disregard of corporate formalities," allowing "discovery into the alter ego theory of personal jurisdiction would constitute no more than 'a fishing expedition in the hopes of discovering some basis of jurisdiction.'" *Krausz Indus. Ltd. v. Smith-Blair, Inc.*, 188 F. Supp. 3d 545, 557 (E.D.N.C. 2016) (quoting *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 (4th Cir. 2002)). In *Drexel Chemical Co.*, on which Plaintiffs and Rite Aid both rely, the Sixth Circuit made clear, "[i]f, in the complaint, it is unrefuted that the court has no jurisdiction, certainly no hearing or further development of the facts is necessary." 1995 WL 376722, at *2.

The Special Master correctly considered whether Plaintiffs made a prima facie showing of a basis for jurisdiction in considering whether to allow jurisdictional discovery. Defendants argue the Special Master came to the wrong conclusion under the right standard. *Obj.* at 10–14; *Reply* at 2–5. This contention is undisputed; because Plaintiffs disagree with the application of this

6

standard,[6] they make no argument that they satisfied it. *Resp.* at 11–12, 13 n.4.[7] Plaintiffs also do not and cannot dispute that this theory of jurisdiction is not alleged in their complaints.[8] They merely argue, "the evidence presented to the Special Master clearly demonstrates why additional jurisdictional discovery is necessary." *Id.* at 13. Plaintiffs point to several documents they already have to support the argument that they need more to demonstrate personal jurisdiction.

The Court finds that the Special Master erred in determining that Plaintiffs made the requisite showing. It is undisputed that Plaintiffs did not allege alter ego theory as a basis for jurisdiction in their complaints. That typically is enough to find Plaintiffs have not made a prima facie showing sufficient to obtain jurisdictional discovery. *See, e.g.*, *Milligan Elec. Co.*, 886 F. Supp. at 850; *Clockwork IP, LLC*, 127 F. Supp. 3d at 1030. That is particularly true here, where at the time Plaintiffs amended their complaints to add Rite Aid Corporation as a Defendant, they had many, if not all, of the documents and information on which they rely to attempt to advance their alter ego theory and obtain additional discovery.[9] As the Plaintiffs repeatedly recognize, allowing jurisdictional discovery is within the Court's discretion. *Resp.* at 12, 13 n.4. And on this record,

---

[6] Plaintiffs criticize the Special Master's reliance on *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 149 (6th Cir. 1997), but that case makes clear a district court is not required to allow jurisdictional discovery when the plaintiff has not made a prima facie showing of facts supporting personal jurisdiction. *See also Visser v. Caribbean Cruise Lines, Inc.*, No. 1:13-CV-1029, 2014 WL 12921353, at *11 (W.D. Mich. Apr. 4, 2014).

[7] In disputing Rite Aid's argument regarding Plaintiffs' prima facie showing, Plaintiffs only contest Rite Aid's position on the applicable law, but they do not argue they made a prima facie showing under any jurisdiction's standard. *See Resp.* at 15–20.

[8] Plaintiffs might be right that the words "alter ego" need not be "explicitly stated in the complaint," but the authority they cite for this argument demonstrates that facts supporting this theory must be alleged. *See Microsys Computing, Inc. v. Dynamic Data Sys, LLC*, 2006 WL 2225821, at *4 (noting plaintiff's reliance on facts asserted in the complaint to respond to motion to dismiss); *Malone v. Windsor Casino Ltd.*, 14 F. App'x 634, 636 (6th Cir. 2006) (Plaintiff "must allege in his pleading the facts essential to show jurisdiction.") (quoting *McNutt v. General Motors*, 298 U.S. 178, 189 (1936)).

[9] In propounding the discovery requests, Plaintiffs relied on a footnote in RAC's motion to dismiss regarding "mislabeled" documents as giving rise to their alter ego theory. *Obj.* at 6. However, Plaintiffs' arguments here and before the Special Master in response to Rite Aid's motion for protective order make clear their theory relies on documents unrelated to that footnote.

7

where it is undisputed that Plaintiffs have not alleged in their complaints the alter ego theory of personal jurisdiction, they have not convinced the Court that it is an appropriate exercise of discretion to allow jurisdictional discovery on that theory. However, because Plaintiffs assert an alternate theory of personal jurisdiction, the Court must address the scope of the *Ruling*.

### c. Scope of jurisdictional discovery

In addition to arguing that Plaintiffs' failure to plead their alter ego theory requires the Court to deny them jurisdictional discovery, Rite Aid argues this defect also compels granting RAC's motion to dismiss. *Obj.* at 9–10 (citing *Kraemer v. WhizCut Am. Inc.*, 2017 WL 2119342, at *4 (N.D. Ohio May 16, 2017) (granting motion to dismiss for lack of personal jurisdiction where plaintiff "has not pled sufficient information to support an alter-ego finding")). However, Plaintiffs assert that they have not abandoned their alternate theory that RAC is subject to jurisdiction because it created policies and conducted oversight of its subsidiaries regarding opioid dispensing. *Resp.* at 10 n.2.[10] Rite Aid's Objections rely only on Plaintiffs' failure to plead, and the impossibility of satisfying, the alter ego theory,[11] so whether the alternate "policies" theory is a meritorious basis for jurisdiction is not before the Court. Accordingly, it would be premature to grant Rite Aid's motion to dismiss, and the Court must determine whether any jurisdictional discovery still is warranted.

As previously described, the *Ruling* addressed (i) Plaintiffs' motion to compel, which generally pertains to Rite Aid's compliance with discovery required under the *Track One-B Order*

---

[10] Plaintiffs claim the Special Master "explicitly recognized" that some of Plaintiffs' evidence shows that RAC promulgated opioid policies and conducted global oversight and risk management with regard to opioid dispensing for its subsidiaries. *Resp.* at 10 n.2 (citing *Ruling* at 20 n.19). The Court notes that the footnote from the *Ruling* that Plaintiffs cite recognizes only that this evidence is relevant to Plaintiffs' alternate theory of jurisdiction, but it does not recognize as fact anything RAC allegedly promulgated and conducted.

[11] Rite Aid mistakenly claims that Plaintiffs' have conceded that their "policies" theory of personal jurisdiction is meritless. *Obj.* at 3, 9.

and the Special Master's March 2 email; and (ii) Rite Aid's motion for protective order, which pertains to Plaintiffs' June 2020 discovery requests. The latter can be dealt with first, as Plaintiffs' June 2020 requests were propounded for the express purpose of supporting Plaintiffs' alter ego theory. *See Obj.*, Ex. 5 (Doc. #: 3510-5) (cover email noting requests served to explore alter ego theory "as a result" of motion to dismiss). Based on the foregoing conclusion that Plaintiffs are not entitled to discovery on this theory, Rite Aid's objection is sustained as it pertains to the portion of the *Ruling* addressing the motion for protective order, Doc. #: 3457 at 15–27. Rite Aid is not required to respond to the June 2020 requests, and the Court will not address the Special Master's rulings as to the scope of those requests.

Plaintiffs' motion to compel addressed RAC's compliance with the *Track One-B Order*. Rite Aid has argued the Court is bound by that Order in Track Three, but also objects to portions of the Special Master's *Ruling* interpreting it. In order to clarify the *Ruling* and Rite Aid's challenges to it, the Court will address the two specific issues Rite Aid raises regarding (i) identities of individuals and (ii) document redactions.[12]

In the motion to compel, Plaintiffs argued RAC had not complied with its requirement to produce "[t]he names and titles of … the experts, advisors, and others who sent [certain documents regarding opioid related topics to the Board of Directors or its Committees]." *Ruling* at 14 (citing Special Master's 03/02/20 email (Doc #: 3528-2)). RAC claimed that it complied with this requirement by producing "all opioid-related updates that were provided to RAC's Board of Directors," and it argued that since Board members receive the materials through a centralized

---

[12] In addressing the motion to compel, the Special Master ruled on five distinct issues. *Ruling* at 6–15. Rite Aid's arguments regarding the scope of the *Ruling* as it pertains to the motion to compel do not directly address all five issues, and—other than the two issues the Court addresses—Rite Aid makes only generalized arguments as to inappropriate scope. *See Obj.* at 16 ("With much of the rest of the discovery, the Special Master failed to consider its proportionality.").

system and not directly from experts, RAC is not required to identify who provided the materials to the company point person to provide to the Board. RAC further argued that "identifying every person who may have provided relevant information in advance of a Board of Audit Committee meeting" would exceed the Court's orders. The Special Master disagreed with RAC's arguments and ordered RAC to identify the individuals subject to its initial obligation. Rite Aid now objects, claiming that the Special Master reinterpreted this obligation to include all persons who "indirectly generated or contributed to materials that were incorporated into documents sent to the Board over a 14-year period." *Obj.* at 16. The Court agrees that such a requirement would be impractical, but this problem can be remedied by not reading the *Ruling* so broadly. The Court now clarifies: RAC is required to provide the names and titles of all the experts, advisors, and others who provided the subject materials to the Board of Directors or its Committees, whether they provided the materials directly or via the company point person and centralized system. RAC is not required to identify all persons who indirectly generated or contributed to materials incorporated into these documents. Accordingly, Rite Aid's objection as to this requirement is overruled.

Rite Aid's remaining objection to the *Ruling* on the motion to compel, regarding the propriety of its document redactions, is moot. *See Obj.* at 19–21; *Reply* at 7–8. The *Ruling* makes clear, and the parties and the Court agree, that RAC can redact responsive documents in accordance with CMO-2. The Court cautions RAC that, as always with redactions, it should make an individualized determination as to whether each responsive document fits squarely within CMO-2. And RAC cannot, as it initially argued, redact information solely based on irrelevance. Going forward RAC (and all parties) should make clear the basis for any redactions in the first instance.

### IV. Conclusion

For the foregoing reasons, Rite Aid's Objection, Doc. #: 3510, is **SUSTAINED in part and OVERRULED in part**. The Special Master's *Ruling Regarding Jurisdictional Discovery of Rite Aid Corp.*, Doc. #: 3457, is **OVERRULED** as it pertains to Rite Aid's motion for protective order, and **AFFIRMED** and **ADOPTED** as it pertains to Plaintiffs' motion to compel.

**IT IS SO ORDERED.**

                                             **/s/ Dan Aaron Polster  November 3, 2020**
                                             **DAN AARON POLSTER**
                                             **UNITED STATES DISTRICT JUDGE**