# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | MDL 2804 |
| | ) | Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) ) | |
| | ) | Judge Dan Aaron Polster |
| *All Cases* | ) ) | |
| | ) | **EVIDENTIARY ORDER** |
| | ) | |

The Track One-B trial was scheduled to begin on November 9, 2020. On October 5, 2020, the Court postponed the trial due to the ongoing COVID-19 pandemic and the General Orders of the Court.[1] The Court stayed all remaining pre-trial deadlines. Because the Track One-B parties' motions *in limine* were fully briefed and the issues are pertinent to the Track Three cases scheduled for trial to begin May 10, 2021,[2] and to other cases in the MDL, the Court indicated it would still issue rulings on those motions.

As the Court has previously stated, these rulings will normally apply to all future cases in the MDL tried by this Court. *See Evidentiary Order*, Doc. #: 3058 at 1. Additionally, as a general matter, these rulings apply to remanded cases tried by transferor courts. *See* David F. Herr, *Multidistrict Litigation Manual* § 10:5 (May 2019 update) ("The transferor court (court to which the actions are remanded) receives the cases in the condition they are in at the time of remand.

---

[1] On October 5, Chief Judge Gaughan issued General Order No. 2020-08-3, which allows jury trials only under certain conditions, including that the trial could be completed in no more than five trial days. Because the Track One-B trial is expected to take four weeks, the Court was required to postpone it.

[2] Like the Track One-B cases, the Track Three cases involve county plaintiffs' claims against Pharmacy Defendants. Due to the postponement of the Track One-B trial, the Track Three cases now will be the next to proceed to trial. Although Track Three includes claims against Pharmacy Defendants based on both distributing and dispensing conduct, and Track One-B includes only the former, these rulings on motions *in limine* will apply fully in Track Three.

Decisions that have been made in the case continue to apply unless circumstances change warranting their modification. The decisions made by the transferee court are considered 'law of the case.'") (footnotes omitted); *see also Manual for Complex Litigation, Fourth* § 20.132 at 224–25 (2004) (before remand of cases to transferor courts, the transferee court should enter "a pretrial order that fully chronicles the proceedings, summarizes the rulings that will affect further proceedings, outlines the issues remaining for discovery and trial, and indicates the nature and expected duration of further pretrial proceedings"); *In re Welding Fume Prods. Liab. Litig.*, MDL No. 1535, 2010 WL 7699456 (N.D. Ohio June 4, 2010) (entering this type of order).

In the future, the parties should generally not file in any MDL case a motion (including a motion for reconsideration) addressing an evidentiary issue already addressed herein or in the prior *Evidentiary Order*, Doc. #: 3058. Going forward, a party may file a motion in an MDL case to modify the contours of prior rulings only if that party can show that the particular circumstances of an individual case warrant a revision.

### A. Motions Seeking Modification of Prior Rulings

In the motions listed below, the movant requests modification of the rulings in the Court's prior *Evidentiary Order*, Doc. #: 3058.[3] The Court will adhere to those rulings unless a party shows that the circumstances of this case warrant a revision. *See* Doc. #: 3058 at 1.

---

[3] In addition to allowing limited requests for modification, the Court instructed the parties to file "a document simply listing all of the MIL rulings contained in the evidentiary order regarding which they do *not* believe there are particular circumstances in Track One-B that warrant revision, but to which they object. Doc. #: 3398 at 2. These objections are listed and preserved in Plaintiffs' Omnibus Motion *in Limine* at 7–10, Doc. #: 3419; Pharmacy Defendants' Omnibus Motion Preserving Objections to Prior Motions *in Limine*, Doc. #: 3411; Pharmacy Defendants' Summary Sheet, Doc. #: 3412; and Walgreen Co.'s Omnibus Document to Preserve Arguments and Objections Related to Prior Motions *in Limine*, Doc. #: 3422.

▪ **Plaintiffs' MIL No. 5[4] (travel accommodations and use of private aircraft for expert witnesses) – DENIED.**

In Track One-A, Plaintiffs sought to bar references to the accommodations or travel arrangements (including the use of private aircraft) for witnesses, the parties, or counsel. Doc. #: 3058 at 57–58. Defendants agreed such references were inappropriate with respect to counsel, lay witnesses, and clients, but objected as to expert witnesses. The Court agreed with Defendants, ruling: "issues relating to the direct and indirect compensation received by experts – including travel accommodations and the use of private aircraft – are relevant and fair game for the jury's consideration *with respect to expert witnesses only*." *Id.* at 58 (emphasis in original). Accordingly, the Court held such evidence was permissible as to expert witnesses. *Id.*

In Track One-B, Plaintiffs ask the Court to modify this ruling in light of the COVID-19 pandemic. Specifically, Plaintiffs assert, because of the potential health risks associated with commercial air travel, "a variety of circumstances could arise that would *require* one or more experts to need to travel by private aircraft." Doc. #: 3419 at 6 (emphasis added). Plaintiffs further contend that, under these circumstances, an expert's use of private aircraft "is not probative of any potential bias." *Id.*

As a preliminary matter, the Court notes it has already stated it will freely allow witnesses to testify by video, and will instruct the jury to give such video testimony the same attention as if the witness were sitting in the courtroom. *See* 09/03/20 Status Conf. Tr. at 18:17–25 (Doc. #: 3453). Thus, it is difficult to imagine an instance in which an expert witness will be *required* to travel by private aircraft. Moreover, regardless of the pandemic, the fact remains that an expert's travel arrangements, including the use of private aircraft and the identity of the owner of the plane

---

[4] Pls.' Mot. at 5–6 (Doc. #: 3419); Pharms.' Opp. at 1–2 (Doc. #: 3465); Pls.' Reply at 1–2 (Doc. #: 3508).

on which the expert has flown, directly relates to compensation received by the expert and is thus relevant to show potential bias.[5] The Court agrees with Pharmacy Defendants that the parties should be allowed to explain the circumstances behind an expert's ability to travel or not travel due to the COVID-19 pandemic.[6] Accordingly, the Court declines to modify its evidentiary ruling on this ground.

- **Plaintiffs' MIL No. 23[7] (learned intermediary doctrine) – DENIED.**

In Track One-A, Plaintiffs asked the Court to preclude Defendants from asserting the learned intermediary doctrine absolved Defendants from liability.[8] *See* Doc. #: 3058 at 45–46. The Court granted the motion in part, noting that whether Defendants' warnings were adequate, and whether the advice of doctors may have served to break the causal chain, were clearly questions for the jury. *Id.* at 46. The Court concluded that, while Defendants were free to argue their warnings were adequate and whatever happened after that was the doctor's responsibility, Defendants could not assert the *mere existence* of the learned intermediary doctrine worked to insulate them from liability on Plaintiffs' claims. *Id.*

---

[5] *See, e.g., Sturm v. Beard*, No. SA CV 11-0448, 2013 WL 6732909, at *34 (C.D. Cal. Dec. 19, 2013) (inquiry into the compensation paid to an expert witness is relevant to show bias); *Button v. Royal Caribbean Cruises Ltd.*, No. 12-23624, 2013 WL 12064490, at *3 (S.D. Fla. July 12, 2018) (the total compensation paid to an expert witness is "highly relevant to show a potential bias").

[6] Defendants assert evidence of the use private aircraft is arguably even more relevant now to help explain to the jury the possible reasons behind any disparities as to why some expert witnesses may be testifying in person at trial, while others are testifying by video. *See* Doc. #: 3465 at 2.

[7] Pls.' Mot. at 6–7 (Doc. #: 3419); Pharms.' Opp. at 2–3 (Doc. #: 3465); Pls.' Reply at 2–4 (Doc. #: 3508).

[8] Under the learned intermediary doctrine, "so long as a Manufacturer of a prescription drug has properly warned and instructed the physician, *i.e.* a Learned Intermediary, the Manufacturer 'may reasonably assume that the physician will exercise his informed judgment in the patient's best interests.'" Doc. #: 3058 at 45–46 (quoting *Tracy v. Merrell Dow Pharm., Inc.*, 569 N.E.2d 875, 878 (Ohio 1991) (the learned intermediary doctrine applies in strict liability cases "if the warning is adequate")).

4

Plaintiffs ask the Court to extend this ruling in Track One-B to preclude Pharmacy Defendants from asserting the advice of doctors may have broken the causal chain or caused the alleged harm. Plaintiffs assert this modification is warranted because Track One-B involves *distribution* claims against Pharmacies, whereas Track One-A included *marketing* claims against Manufacturers. *See* Doc. #: 3419 at 7. As an initial matter, Plaintiffs' argument overlooks the fact that Track One-A also involved *distribution* claims against Manufacturers, Distributors, and Pharmacies. *See, e.g.*, Doc. #: 2561 at 2. The Court's Track One-A ruling did not distinguish between these types of claims. Rather, the Court stated that, under the learned intermediary doctrine, a Manufacturer who has given proper warnings and instructions may reasonably assume the prescribing physician will exercise informed judgment in the patient's best interests. Doc. #: 3058 at 45–46. The Court went on to conclude that, whether Defendants provided false and misleading information to doctors, and "whether the advice of doctors breaks the causal chain," were questions for the jury. *Id.* at 46. The Court's ruling did not specifically address whether (and certainly did not rule out the possibility that) the advice or other acts by doctors could serve to break the causal chain with respect to *distribution* claims.

Plaintiffs argue the Court's recent order in Track Three demonstrates the learned intermediary doctrine is "wholly inapplicable" to *distribution*-related claims in Track One-B.[9] Doc. #: 3419 at 7 (quoting Doc. #: 3403 at 32). In Track Three, the Court overruled the Pharmacy Defendants' motion to dismiss Plaintiffs' claims based on the Pharmacy Defendants' *dispensing* conduct, finding the learned intermediary doctrine was "wholly inapplicable" to claims relating to:

---

[9] As noted, in Track One-B, Plaintiffs assert claims against Pharmacy Defendants only based on their *distribution* conduct. In Track Three, different Plaintiffs' claims against Pharmacy Defendants are based on *distribution* and *dispensing* conduct. The Court's Track Three order addressed only the *dispensing* conduct.

"broad harms to the public allegedly caused by the Pharmacies' *dispensing* conduct that implicates legal obligations independent of manufacturers." Doc. #: 3403 at 32 (emphasis added). The Court declined to dismiss the *dispensing*-related claims as a matter of law, finding that, under Ohio law, the question of proximate cause is ordinarily a question of fact for the jury, and Pharmacy Defendants did not identify "any legal authority that shifts their obligation to prevent diversion to any other person or entity, or otherwise establishes [as a matter of law] that prescribers are an intervening or superseding cause of Plaintiffs' alleged injuries." *Id.* at 32.

The fact that the Court in Track Three found the learned intermediary doctrine did not foreclose *dispensing* liability as a matter of law does not mandate the conclusion Plaintiffs assert here, that, as a matter of law, the advice or acts of doctors cannot serve to break the causal chain with respect to *distribution* liability. To the contrary, as this Court has previously found: "proximate cause is ordinarily a question of fact for the jury." Doc. #: 3403 at 32 (citation omitted). As in Track One-A, the Court rules Defendants may not assert they are insulated from liability based on the *mere existence* of the learned intermediary doctrine; however, Defendants remain free to argue the advice or acts of doctors (or other third-parties) broke the causal chain or caused the alleged nuisance. Doc. #: 3058 at 46. Accordingly, the Court denies Plaintiffs' motion to modify its ruling on this issue.

- ▪ **Plaintiffs' MIL No. 24[10] (Plaintiffs' failure to mitigate damages) – GRANTED.**

In Track One-A, Plaintiffs sought to exclude any evidence or argument that they failed to mitigate damages. *See* Doc. #: 3058 at 46–47. The Court overruled the motion, finding whether

---

[10] Pls.' Mot. at 2–4 (Doc. #: 3419); Pharms.' Opp. at 3–6 (Doc. #: 3465); Pls.' Reply at 4–5 (Doc. #: 3508).

Plaintiffs had failed to mitigate damages was a factual determination for the jury.[11] *Id.* at 47. Plaintiffs ask the Court to modify this ruling in Track One-B, asserting that, unlike Track One-A, the Track One-B trial will be limited to the issue of public nuisance liability, which will not require the jury to determine damages.[12] Thus, Plaintiffs assert, neither Plaintiffs' conduct nor the specific damages they incurred will be at issue in the Track One-B trial. *See* Doc. #: 3419 at 2–4.

Plaintiffs are correct that, in the first phase of the Track One-B trial, the jury will decide only the issue of absolute public nuisance liability, i.e., whether Defendants' conduct was a substantial factor in creating the alleged public nuisance. *See* Doc. #: 3449 at 35 (replicating the Court's tentative jury instruction regarding "Public Nuisance – Causation"). In making this determination, the jury may also consider whether other factors, including the conduct of Plaintiffs or third parties, actually caused or contributed to the alleged harm. *See id.* The jury will not be asked, however, to determine any remedy of abatement.[13] Rather, if the jury finds any Defendant liable for creating an absolute public nuisance, the Court will then determine an appropriate remedy.[14] The Court will also determine whether the harm is capable of being apportioned among

---

[11] In so ruling, the Court noted: "Ohio law generally precludes an injured party from 'recover[ing] damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.'" Doc. #: 3058 at 46 (quoting *BP Exploration & Oil Co. v. Maint. Servs., Inc.*, 313 F.3d 936, 943–44 (6th Cir. 2002) (citation omitted)). The Court rejected Plaintiffs' assertions that the obligation to mitigate did not apply because: (1) Plaintiffs had incurred extraordinary expense and risk; or (2) Defendants had the same opportunity to reduce damages. *See* Doc. #: 3058 at 46–47.

[12] In Track One-A, the Court planned for a jury to render a verdict on plaintiffs' federal RICO, Ohio Corrupt Practices Act, and civil conspiracy claims, all of which involved compensatory damages, and to also determine nuisance liability. *See, e.g.*, Doc. #: 2629 at 10 (Track One-A order regarding adjudication of absolute public nuisance claims).

[13] Abatement is an equitable remedy "intended to compensate the plaintiff for the costs of rectifying the nuisance, going forward." Doc. #: 2519 at 2 (Track One-A *Daubert* order regarding abatement costs and efforts).

[14] *See* 01/29/20 Status Conf. Tr. 7:11–19, 36:19–25, 37:7–38:17 (Doc. #: 3331) (public nuisance liability is the only issue for the jury's determination in the Track One-B trial; any prospective injunctive or monetary relief will be decided by the Court in a subsequent evidentiary proceeding).

responsible wrongdoers. *See, e.g.*, *Pang v. Minch*, 559 N.E.2d 1313, 1323–24 n.4 (Ohio 1990) (where a single harm has been inflicted by multiple wrongdoers, responsible defendants are jointly and severally liable unless they can show the harm is capable of apportionment). Thus, the jury will not be asked to determine issues relating to damages or abatement.[15]

Pharmacy Defendants agree compensatory damages will not be an issue in the trial. *See* Doc. #: 3465 at 4. However, Pharmacy Defendants contend evidence regarding whether Plaintiffs contributed to or caused the alleged harms will remain relevant to the issue of causation.[16] *See id.* at 4–5. While evidence of Plaintiffs' conduct may well be relevant to the issue of causation, that issue involves a separate evidentiary determination. The fact remains that compensatory damages will not be at issue in the Track One-B trial. Accordingly, the Court agrees with Plaintiffs that evidence or argument regarding an alleged failure to mitigate damages would be irrelevant and unnecessary. Accordingly, the Court grants Plaintiffs' motion on this ground.

- ▪ **Plaintiffs' MIL Nos. 28 and 37[17] (deaths of individuals while in custody of Plaintiffs' jails or sheriff's offices) – DENIED.**

In Track One-A, Plaintiffs sought to exclude any reference to the deaths of individuals while in the custody of Plaintiffs' jails or sheriff's offices, asserting such evidence was irrelevant or unduly prejudicial. *See* Doc. #: 3058 at 71. Defendants objected, arguing that at least some of this evidence was directly relevant to issues in the case, including "whether Defendants caused

---

[15] *See, e.g.*, Doc. #: 2572 at 5 (Track One-A summary judgment order on abatement) ("an equitable claim to abate a nuisance is not a tort claim seeking compensatory damages").

[16] Defendants also assert that evidence of Plaintiffs' conduct is relevant to the issue of apportionment, i.e., "whether any of the harms Plaintiffs claim to have suffered should be apportioned to Plaintiffs (or non-parties), rather than Pharmacy Defendants." Doc. #: 3465 at 4. The Court declines to address this issue until after it decides whether the alleged harm is capable of being apportioned among responsible wrong-doers.

[17] Pls.' Mot. at 2–4 (Doc. #: 3419); Pharms.' Opp. at 3–6 (Doc. #: 3465); Pls.' Reply at 4–5 (Doc. #: 3508).

Plaintiffs' alleged damages (as opposed to other causes) and whether [Plaintiffs] took sufficient actions to mitigate [their] damages." *Id.* The Court found Defendants' points well-taken and declined to make a blanket ruling of exclusion before trial. *Id.* The Court cautioned the parties, however, that any introduction of this evidence must be directly tied to the issues in dispute in the case. *Id.*

Plaintiffs ask the Court to modify this ruling, asserting that, because the Track One-B trial will involve only nuisance liability, neither Plaintiffs' conduct nor the specific damages incurred will be at issue. Doc. #: 3419 at 2–4. Contrary to Plaintiffs' assertion, however, evidence of Plaintiffs' own conduct remains relevant to the issue of causation. As discussed above, in determining whether Defendants' conduct was a substantial factor in creating the alleged public nuisance, the jury may consider whether other factors, including Plaintiffs' own conduct, actually caused or contributed to the alleged harm. Accordingly, the Court declines to make a blanket ruling of exclusion at this time.[18] As in Track One-A, any introduction of this evidence must be directly tied to the issues in dispute in the case.[19]

---

[18] Plaintiffs also raise specific arguments regarding the admissibility of evidence relating to the death of Brittany Rae Schlarb, who was an inmate in the Summit County jail. Doc. #: 3419 at 5. Specifically, Plaintiffs contend that, because Ms. Schlarb died of dehydration while detoxifying from methamphetamine, her death was unrelated to opioids and, thus, is irrelevant to any issue to be decided at trial. *Id.* Pharmacy Defendants respond such evidence may be relevant to rebut any claims that Plaintiffs provided adequate care and treatment of inmates who had histories of substance abuse or addiction. Doc. #: 3465 at 5. For the reasons discussed, the Court declines to make a blanket ruling of exclusion and will instead decide the relevance of this evidence as it may arise in the context of trial.

[19] To be clear, this evidence—and any pertaining to Plaintiffs' conduct—will only be relevant to the extent it involves the particular Plaintiff Counties at trial (i.e., the Track One-B Plaintiffs' conduct will not be relevant in Track Three).

- **Plaintiffs' MIL Nos. 29 and 36[20] (current or former government corruption) – DENIED.**

In Track One-A, Plaintiffs sought to exclude any reference or allegation regarding current or former government corruption in their Counties. *See* Doc. #: 3058 at 72. The Court agreed that unsubstantiated allegations of government corruption were irrelevant or unduly prejudicial. *See id.* However, the Court found: "to the extent Defendants have evidence showing how corruption of County officials contributed to the opioid crisis, this evidence could be relevant to issues in the case, including whether Defendants' conduct caused the alleged damages and whether Plaintiffs took sufficient actions to mitigate their damages." *Id.* Again, the Court cautioned the parties that any introduction of this evidence at trial must be directly tied to the issues in dispute in the case. *Id.*

Plaintiffs ask the Court to modify this ruling, asserting neither Plaintiffs' conduct nor the specific damages incurred will be at issue in the Track One-B trial. Doc. #: 3419 at 2–4. For the reasons discussed, Plaintiffs' conduct remains relevant to the jury's causation determination (even though damages will not be at issue). Accordingly, the Court declines to make a blanket ruling of exclusion at this time. As in Track One-A, any introduction of this evidence must be directly tied to the issues in dispute in the case.[21]

---

[20] Pls.' Mot. at 2–4 (Doc. #: 3419); Pharms.' Opp. at 3–6 (Doc. #: 3465); Pls.' Reply at 4–5 (Doc. #: 3508).

[21] Plaintiffs raise specific arguments regarding the admissibility of evidence relating to the indictment and conviction of Tamela M. Lee, a former member of the Summit County Council, who was found guilty of taking bribes in exchange for favorable official action (*e.g.* obtaining approval of a liquor license). Doc. #: 3419 at 4–5. Plaintiffs assert Ms. Lee's indictment and conviction are unrelated to opioids and, therefore, irrelevant to any issues to be decided in the Track One-B trial. *See id.* at 5. In response, Pharmacy Defendants state they do not intend to introduce such evidence unless Plaintiffs open the door and make the issue relevant for rebuttal. *See* Doc. #: 3465 at 6. In light of Pharmacy Defendants' response, the Court declines to make a blanket ruling in advance of trial.

- **Plaintiffs' MIL Nos. 30, 31, 32, and 33[22] (criminal investigations, grand jury proceedings, and indictments) – DENIED.**

In Track One-A, Plaintiffs sought to exclude any evidence or reference relating to: (1) grand jury testimony or proceedings involving Cuyahoga County; (2) recent investigations or subpoenas involving Cuyahoga County; (3) the indictment of Ken Mills (the former Director of Cuyahoga County jails); and (4) any investigations of former Cuyahoga County Sheriff Pinkney (or the Cuyahoga County Sheriff's office). *See* Doc. #: 3058 at 17–18. Defendants agreed that, absent a conviction, the fact of a grand jury proceeding, investigation, subpoena, or indictment is ordinarily inadmissible. *See id.* The Court thus concluded it would exclude such evidence, but noted the underlying facts that led to any of these actions would remain admissible. *Id.*

Plaintiffs ask the Court to modify this ruling, again asserting neither Plaintiffs' conduct nor the specific damages incurred will be at issue in the Track One-B trial. Doc. #: 3419 at 2–4. For the reasons discussed, the underlying facts that led to these actions may still be relevant to the issue of causation. Accordingly, the Court declines to make a blanket ruling of exclusion and will instead determine the admissibility of this evidence in the context of trial.

- **Plaintiffs' MIL No. 34[23] (podcast or other media coverage regarding Cuyahoga County courts) – DENIED.**

In Track One-A, Plaintiffs sought to exclude evidence or references to any "podcast" or other media coverage regarding the Cuyahoga County courts. *See* Doc. #: 3058 at 73. Defendants objected that any statement Plaintiffs made, authorized, or adopted in such programs could be relevant as a party admission with respect to, for example, causes other than Defendants' conduct

---

[22] Pls.' Mot. at 2–4 (Doc. #: 3419); Pharms.' Opp. at 3–6 (Doc. #: 3465); Pls.' Reply at 4–5 (Doc. #: 3508).

[23] Pls.' Mot. at 2–4 (Doc. #: 3419); Pharms.' Opp. at 3–6 (Doc. #: 3465); Pls.' Reply at 4–5 (Doc. #: 3508).

that may have led to increased drug-related offenses in the court system. *See id.* The Court decided it could not determine the admissibility of this evidence in the abstract and would instead decide the issue in the context of trial. *See id.*

Plaintiffs ask the Court to modify this ruling, raising the same arguments discussed above. Doc. #: 3419 at 2–4. For the same reasons discussed, Plaintiffs' conduct remains relevant to the issue of causation. Accordingly, the Court declines to modify its ruling on this ground.

- **Plaintiffs' MIL No. 35[24] (any investigation regarding the death of Aniya Day Garrett) – DENIED.**

In Track One-A, Plaintiffs sought to exclude evidence relating to a highly publicized incident involving the tragic death of a four-year old child. *See* Doc. #: 3058 at 73–74. The parties disputed the relevance of this evidence, with Defendants asserting the well-publicized incident provided an explanation (other than the opioid crisis) for increases in the Cuyahoga County Children and Family Services' costs. *See id.* The Court declined to issue a blanket ruling, but cautioned the parties that: "Before introducing evidence on this topic, Defendants will need to convince the Court that this evidence is relevant to the issues at hand." *Id.* at 74.

Plaintiffs ask the Court to modify this ruling, again arguing neither Plaintiffs' conduct nor the specific damages incurred will be at issue in the Track One-B trial. Doc. #: 3419 at 2–4. For the reasons discussed, Plaintiffs' conduct remains relevant to the jury's causation determination. The Court therefore declines to modify its ruling on this ground. Nevertheless, the Court repeats its admonition that, before introducing evidence on this topic, Defendants must convince the Court that this evidence is relevant to the issues at hand.

---

[24] Pls.' Mot. at 2–4 (Doc. #: 3419); Pharms.' Opp. at 3–6 (Doc. #: 3465); Pls.' Reply at 4–5 (Doc. #: 3508).

**B. New Motions**

The following rulings address new issues not previously raised by the parties or addressed by the Court.

- **Plaintiffs' MIL No. 38 (matters for which Defendants have withheld some or all related discovery) AND Plaintiffs' MIL No. 39[25] (evidence to support affirmative defenses or claims that Defendants met all pertinent regulatory requirements and/or that their conduct was based on alleged DEA guidance to the extent related discovery was withheld as privileged) – DENIED without prejudice.**

In MIL #38, Plaintiffs ask the Court to exclude any reference to, or evidence of, matters for which Defendants withheld some or all related discovery. Doc. #: 3419 at 10. In MIL #39, Plaintiffs make a slightly less broad request seeking to preclude Defendants from introducing into evidence, or otherwise referring to, any documents or testimony regarding affirmative defenses or claims that they met all relevant regulatory requirements and/or that their conduct was based on alleged DEA guidance, to the extent Defendants withheld as privileged documents and testimony regarding these claims. Doc. #: 3419 at 13.[26] Plaintiffs further argue that, to the extent this information has been withheld, Defendants should not be allowed to maintain the related affirmative defenses or claims.[27] *Id.* Because these requests rely on overlapping and repetitive arguments, the Court considers them together.

---

[25] Pls.' Mot. at 10–15 (Doc. #: 3419); Pharms.' Opp. at 6–13 (Doc. #: 3465); Pls.' Reply at 6–16 (Doc. #: 3508).

[26] In arguing these motions together in reply, Plaintiffs state their request is to exclude "any argument, testimony, or evidence at trial that in fairness would require examination of communications or other evidence that the Pharmacy Defendants successfully withheld as privileged." Doc. #: 3508 at 14–15.

[27] Plaintiffs requested this relief specifically as to Walgreens in a motion submitted to the Special Master, which has now been resolved by him and further addressed by this Court. *See* Doc. #: 3419 at 13, n.4; Doc. #: 3461; Doc. #: 3527. The Special Master did not determine Walgreens is prevented from asserting defenses related to meeting or misunderstanding applicable regulations and DEA guidance.

First, the Court has made plain that the parties cannot rely at trial on evidence that was not produced in discovery. *See* Doc. #: 3058 at 41 ("Plaintiffs may only introduce evidence that they produced in discovery."); Doc. #: 1147 at 1 ("The Court will not allow defendants to rely at trial, in any motion, or for any other reason, upon any evidence of the existence or method of operation of a SOMS that is not produced by this date."); Doc. #: 1055 at 5 ("[A]s a general rule, no party may rely at trial on documents or data they have not produced in discovery or which are otherwise unknown to opposing parties."). And the Court previously denied an attempt to preclude introduction of evidence where certain related evidence was not produced in discovery. Doc. #: 3058 at 42 (denying motion *in limine* to exclude cherry-picked examples of individual transactions). These rulings also do not prevent a party from relying on evidence where related information was properly withheld as privileged, and the Court will not impose such a broad restriction.[28]

Second, Plaintiffs do not identify any discovery violations or prejudice that would justify granting either of these requests. Plaintiffs merely claim "in some circumstances" a Defendant selectively produced certain documents that would support its case on an issue while withholding related documents that might harm its case. Doc. #: 3419 at 10; *see also id.* at 12 (asserting "most" discovery Defendants withheld relates to SOMS and not identifying any other topics). Similarly, Plaintiffs do not argue Defendants have improperly withheld non-privileged responsive documents, or that they selectively produced some privileged documents but not others.[29] The

---

[28] Neither of the cases cited by Plaintiffs support such a broad exclusion. *See Monsanto v. Bayer Bioscience N.V.*, No. 4:00cv01915, 2005 WL 59897976, at *8, 19 (excluding specific evidence on particular issue *if* all related information was not produced); *United States v. Mason*, No. S206cr80, 2008 WL 281970, at *3–4 (excluding evidence under Fed. R. Crim. P. 16 where government conceded shortfalls in providing discovery to defendants).

[29] The Special Master has overseen several privilege disputes and repeatedly and properly has allowed tailored privilege claims on highly relevant issues, such as SOMS documents. *See, e.g.*, Doc. ##: 1678, 1593, 1395. Plaintiffs do not identify any specific examples of "sword and shield" documents, even though Plaintiffs have had several opportunities to ask the Special Master for *in camera* review of documents that a Defendant claimed were privileged,

Court will not issue sanctions or blanket evidentiary rulings based on an abstract dispute; this issue is exactly the kind better addressed in the context of trial and a concrete dispute. *See* Doc. #: 3058 at 66 ("The Court declines to make a blanket ruling and instead will address this issue as it may arise in the context of trial.").

Finally, Plaintiffs appear to make this motion in anticipation of the Pharmacy Defendants offering evidence to show they believed their opioid dispensing and distribution conduct was lawful. Doc. #: 3508 at 6; *id.* at 13–14. But at this stage the evidentiary implications of this defense and the evidence offered to support it are purely hypothetical. The Court questions the relevance of the Pharmacy Defendants' beliefs as to the lawfulness of their actions. But it would be premature to determine that any Defendant has put their privileged communications at issue and, absent that, the Court will not make any determination as to waiver.

In sum, these requests, as phrased, are overbroad and premature. The Court declines to exclude possibly wide swathes of evidence based only on abstract arguments. Accordingly, Plaintiffs' Motions *in Limine* Nos. 38 and 39 are denied.

- **Plaintiffs' MIL No. 40[30] (litigation between Summit or Cuyahoga County and its past or present employees) – DENIED.**

Plaintiffs argue any reference to litigation between a Plaintiff County and its past or present employees is not probative of any issue in this case and should therefore be excluded. Doc. #: 3419 at 15–16. Pharmacy Defendants claim they do not plan to introduce any such evidence at trial, but it may become relevant depending on the witnesses and evidence introduced by Plaintiffs. Doc.

---

and that Plaintiffs believed should be produced nonetheless based on the "sword and shield" argument. The Court will not now exclude all related evidence that Pharmacy Defendants did produce.

[30] Pls.' Mot. at 15–17 (Doc. #: 3419); Pharms.' Opp. at 14 (Doc. #: 3465); Pls.' Reply at 17 (Doc. #: 3508).

#: 3465 at 14–15. Based on the Pharmacy Defendants' representation, the Court rules that, absent

seeking and obtaining leave of Court beforehand, the parties shall not present evidence regarding

litigation between a Plaintiff County and its past or present employees.

- **Plaintiffs' MIL No. 41[31] (the firing of any County employee by Summit or Cuyahoga County) – DENIED.**

Plaintiffs argue any reference to the firing of any employee of a Plaintiff County is not

probative of any issue in this case and should therefore be excluded. Doc. #: 3419 at 17–18.

Pharmacy Defendants claim they do not plan to introduce any such evidence at trial but it may

become relevant depending on the witnesses and evidence introduced by Plaintiffs. Doc. #: 3465

at 14–15. Based on the Pharmacy Defendants' representation, the Court rules that, absent seeking

and obtaining leave of Court beforehand, the parties shall not present evidence regarding the firing

of any Plaintiff County employee.

- **Plaintiffs' MIL No. 42[32] (the efforts or actions of any Defendant, or its affiliates or employees, in connection with COVID-19, or the impact of COVID-19 on any Defendant, or its affiliates or employees) – GRANTED.**

Plaintiffs argue Pharmacy Defendants should not be permitted to mention any actions by

them, their affiliates, or their employees in connection with COVID-19. Doc. #: 3419 at 18.

Plaintiffs argue this evidence has no probative value and is not permitted under Rule 404(b), which

excludes prior or subsequent "good acts." *Id.* at 19 n.9.

Pharmacy Defendants argue this request is overbroad and premature because: (1) they must

be permitted to explain COVID-19's effect on their representatives' and witnesses' presence at

trial; (2) the Court has recognized parties may offer evidence of "good deeds" if "another party

---

[31] Pls.' Mot. at 17–18 (Doc. #: 3419); Pharms.' Opp. at 14–15 (Doc. #: 3465); Pls.' Reply at 17–18 (Doc. #: 3508).

[32] Pls.' Mot. at 18–20 (Doc. #: 3419); Pharms.' Opp. at 15–17 (Doc. #: 3465); Pls.' Reply at 18–20 (Doc. #: 3508).

offers evidence to the contrary;" and (3) this evidence may be relevant to refute any claims put forth by Plaintiffs that Pharmacy Defendants have valued "profits over people." Doc. # 3465 at 15–16.

First, the Court does not read this motion to seek to preclude, nor will the Court preclude, references to COVID-19 to explain why employees or witnesses are not present in person at trial, or any references to COVID-19 that pertain to trial procedure. Second, the parties correctly point out that the Court previously addressed a similar, but broader, motion by Plaintiffs to preclude references to philanthropy or good deeds by parties or employees that are unrelated to preventing opioid addiction. Doc. #: 3058 at 68. The Court determined "evidence that the parties and/or their employees are 'good citizens' and do good deeds such as providing scholarships, community service, or charitable contributions is not relevant to the issues in this case (unless another party offers evidence to the contrary)." *Id.* at 68–69. The prior ruling sufficiently addresses this narrower issue, as Defendants' "good deeds" related to COVID-19 similarly are irrelevant unless Plaintiffs offer evidence to the contrary. Accordingly, Plaintiffs' Motion *in Limine* No. 42 is granted.

- **Plaintiffs' MIL No. 43[33] (pharmacy class actions and similar litigation) – GRANTED.**

Plaintiffs seek to exclude any reference to or evidence of class actions or similar litigation against Pharmacy Defendants. This motion arises out of the filing in August of two class actions against certain Pharmacy Defendants based on their alleged practices in "refusing to fill, without a legitimate basis, valid and legal prescriptions for opioid medication." Doc. #: 3448 at 1. Plaintiffs anticipate Pharmacy Defendants may intend to use these class actions in an attempt to justify or excuse their failure to comply with obligations under the CSA, and Plaintiffs argue this evidence

---

[33] Doc. #: 3448; Pharms.' Opp. at 17 (Doc. #: 3465); Pls.' Reply at 20 (Doc. #: 3508).

is not relevant and would prejudice the jury. *Id.* at 2. Pharmacy Defendants generally agree that the allegations are not admissible for the truth of the matter asserted.[34] Further, they say they have no intention at this time to seek admission of the referenced class actions unless Plaintiffs open the door or make them relevant. Doc. #: 3465 at 17.

The Court finds that the existence of the lawsuit and the lawsuits filed in August and the allegations are not relevant, and the allegations are inadmissible if offered for the truth of the matter asserted. Accordingly, Plaintiffs' Motion *in Limine* No. 43 is granted.

- **Pharmacy Defendants' MIL No. 1[35] (the military experience, employment, religious affiliation, or personal experience of counsel or staff; and the waiving or donation of attorney's or expert fees, or any portion of any recovery, to charity or community purposes) – GRANTED as to the donation of expert fees; otherwise DENIED without prejudice.**

Pharmacy Defendants seek to preclude Plaintiffs from presenting evidence, testimony, argument, or comment regarding: (1) counsel's or staff's military experience, employment, religious affiliation, or personal experiences; or (2) the waiving or donation of attorney's or expert fees, or any portion of any recovery, to charity or community purposes, on grounds such information is irrelevant or unduly prejudicial. *See* Doc. #: 3413 at 1–4.

1. <u>Military experience, employment, religious affiliation, or personal experiences of counsel or staff</u>

In Track One-A, the parties stipulated they would not offer evidence or argument regarding "any reference to or mention of military service, other or prior employment, religious affiliations or positions, or other personal experiences of the parties' counsel (including staff)." *In Limine*

---

[34] Pharmacy Defendants also filed their own motion *in limine* seeking to preclude reference to any lawsuit involving them or their employees. *See infra* at 28.

[35] Doc. #: 3413; Pls.' Opp. at 3–8 (Doc. #: 3464); Pharms.' Reply at 2–5 (Doc. #: 3507).

Evidentiary Stipulations ¶ 2 (Doc. #: 2647). In Track One-B, however, Plaintiffs declined to enter into the same stipulation, asserting: "upon reconsideration Plaintiffs believe this MIL is overly broad and may unduly restrain counsel's presentation at trial." Doc. #: 3464 at 4.

Pharmacy Defendants ask the Court to preclude Plaintiffs from presenting this information in the Track One-B trial, essentially arguing Plaintiffs should not be allowed to change course from the stipulation they entered into in Track One-A.[36] Specifically, Pharmacy Defendants assert Plaintiffs' change in position is "particularly troubling" because Plaintiffs' lead trial counsel is a Baptist pastor and preacher, and Plaintiffs may "now plan to highlight and/or refer to such position(s) or similar positions of other counsel at trial." Doc. #: 3413 at 2. Pharmacy Defendants cite no authority, however, that suggests the Court must hold Plaintiffs to a previous stipulation they entered into with different defendants in a different trial in this MDL.[37]

Plaintiffs, on the other hand, cite several cases supporting that counsel "should be given some leeway to use personal stories or anecdotes to connect with the jury and make their arguments relatable." Doc. #: 3464 at 4; *see also In re Richardson-Merrell, Inc. Bendectin Prods. Liab. Litig.*, 624 F. Supp. 1212, 1226 (S.D. Ohio 1985) (final argument has traditionally been an opportunity for counsel to tell anecdotes and bring their experience to the courtroom "to persuade, cajole or

---

[36] *See* Doc. #: 3413 at 1–2 (asserting the Track One-A stipulation "recognized" this information was irrelevant and likely prejudicial); Doc. #: 3507 at 2 ("Plaintiffs had it right the first time: such evidence is not relevant, is prejudicial, and should be excluded.").

[37] The only case Pharmacy Defendants cite is distinguishable. *See* Doc. #: 3413 at 2 (citing *Whitfield v. Harris*, 474 F. Supp. 2d 822, 825 (N.D. Miss. 2007)). In *Whitfield*, the court did not address the admissibility of the mere experiences or affiliations of counsel. Rather, the court held: "any arguments or references to religion which suggest jurors apply a standard of judgment beyond what the law requires are improper and will be barred." *Id.* at 824 (citation and quotation omitted). The court further noted: "parables, stories or religious aphorisms may be appropriate when used in argument to promote an idea, rather than to unfairly bias or prejudice the jury or counsel." *Id.* Although Walgreens was a defendant in Track One-A and remains a defendant in Track One-B, the Court will not enforce the earlier stipulation as between Walgreens and Plaintiffs due to the different makeup of Defendants in Track One-B.

convince jurors"), *aff'd*, 857 F.2d 290 (6th Cir. 1988); *Niles v. Owensboro Med. Health Sys., Inc.*, No. 4:09-CV-00061-JHM, 2011 WL 3205369, at *5 (W.D. Ky. July 27, 2011) (declining to preclude counsel from informing jurors of counsel's parents' employment, stating: "Generally, courts afford counsel great latitude in making opening and closing arguments to the jury. Anecdotes and personal experiences . . . are common place in both opening and closing arguments.").

On this record, the Court declines to make a blanket ruling precluding counsel (or staff) from discussing their personal or work experiences. However, the Court cautions counsel that any such references may only be made at appropriate times, for appropriate and non-gratuitous purposes, and not in a manner designed to unduly influence or prejudice the jury.

2.  <u>Waiving or donation of attorney's or expert fees, or any portion of any recovery, to charity or community purposes</u>

Pharmacy Defendants ask the Court to preclude any evidence or argument regarding the waiving or donation of attorney's or expert fees, or any portion of any recovery, to charity or community purposes. Doc. #: 3413 at 2–3. As to attorney's fees, Plaintiffs respond they have no intention of referencing any waiver or donation of fees, so long as "Defendants do not attack Plaintiffs' attorneys' fees in front of the jury." Doc. #: 3464 at 6. Pharmacy Defendants reply they "have no intention of attacking Plaintiffs' attorney fees at trial unless Plaintiffs somehow open the door to such an issue." Doc. #: 3507 at 3. In light of the parties' representations, the Court declines to make a blanket ruling as to the waiver or donation of attorney's fees.  As a general matter, however, evidence of attorney's fees is not relevant and the Court expects the parties to avoid the topic.

As to expert fees, Plaintiffs state they do not intend to offer evidence regarding any waiver or donation of fees during direct examination. Doc. #: 3464 at 6. However, Plaintiffs assert such

evidence may become relevant, to the extent Defendants: "attempt to portray the expert as a hired gun or biased based on the amount he or she was paid in the case." *Id.* As this Court has previously found: "issues relating to the direct and indirect compensation received by experts … are relevant and fair game for the jury's consideration." Doc. #: 3058 at 58. Thus, to the extent an expert may be foregoing or waiving compensation, such information would also be fair game for the jury's consideration. *See, e.g., Sturm*, 2013 WL 6732909, at *34 (inquiry into the compensation paid to an expert witness is relevant to show bias); *Button*, 2013 WL 12064490, at *3 (the total compensation paid to expert witnesses is "highly relevant to show a potential bias").

The donation of an expert's fee to charitable or community purposes, however, is a different matter. This Court has previously found: "evidence that the parties … are 'good citizens' and do good deeds such as providing … charitable contributions is not relevant to the issues in this case." Doc. #: 3058 at 68–69. Moreover, an expert's decision to donate his or her fee to benevolent purposes may well bring personal reward or recognition to the expert and, therefore, would not necessarily show that such expert is less biased than if the fee were going directly into his or her pocket. The Court therefore finds that evidence or argument regarding the donation of an expert's fee to charitable or community purposes is irrelevant and should be excluded. *See, e.g., Stogsdill v. Roman*, No. 4:08CV00207, 2010 WL 11530415, at *2 (E.D. Ark. Sept. 22, 2010) (granting motion to exclude testimony that expert witness donated his fee from the case to a charitable organization).

Finally, as to the donation of any recovery for the benefit of the community, Plaintiffs assert that, arguably, the entirety of any recovery will be used for "community purposes," in that it will be used to abate the harms of the alleged public nuisance. Doc. #: 3464 at 7–8. The Court notes the Track One-B trial will involve only the determination of nuisance liability, with the

21

possibility of remedies to be decided by the Court at a later date. Under this bifurcated trial plan, it is difficult to see how the use of any potential recovery for community purposes would be relevant during the liability phase of trial. Nevertheless, the Court declines to make a blanket ruling and will instead address this issue if and when it arises in the context of trial.

- ▪ **Pharmacy Defendants' MIL No. 2**[38] **(absence, presence or identity of Defendants' corporate representatives at trial) – GRANTED.**

Pharmacy Defendants assert that the Court should bar Plaintiffs from introducing "evidence, testimony or argument, or comment upon, the absence, presence ***and/or identity*** of the Pharmacy Defendants' corporate representatives at trial" because it is irrelevant. Doc. #: 3414 at 1 (emphasis added). In Track One-A, the Court ruled that "argument or comment about whether a corporate representative does not attend all or part of the trial . . . is not relevant to the merits of Plaintiffs' claims" and precluded such comments and arguments at trial. Doc. #: 3058 at 68. Plaintiffs do not challenge the Court's prior ruling. Plaintiffs' primary concern is with the addition of the language "and/or identity," which was not present in the Track One-A Defendants' motion. *See* Doc. #: 2661 at 36–37. In their reply, Pharmacy Defendants clarify that "[t]he purpose of the motion *in limine* is to prevent commentary or argument about whether a corporate party did or did not have a representative at all or part of the trial, and who that [absent] person was, because such information is entirely irrelevant." Doc. #: 3507 at 5–6.

This motion does not appear to need resolution as much as it needs clarification. The Court concludes that this motion is identical to the motion filed by the Track One-A Defendants, and thus, rules the same way. "[A]rgument or comment about whether a corporate representative does not attend all or part of the trial . . . is not relevant to the merits of Plaintiffs' claims" and is

---

[38] Doc. #: 3414; Pls.' Opp. at 8–9 (Doc. #: 3464); Pharms.' Reply at 5–6 (Doc. #: 3507).

precluded. Doc. #: 3058 at 68. As a practical and procedural matter, trial counsel will, of course, be able to identify corporate representatives for the purposes of presenting deposition testimony of Rule 30(b)(6) corporate deponents, acknowledging which Defendant a corporate witness works for, and/or introducing the corporate representatives sitting at counsels' table. It is not appropriate, however, for counsel to point out that a party's representative is (for example) not the CEO or not the Mayor, and "only" someone of lesser rank.

- **Pharmacy Defendants' MIL No. 3[39] (negatively characterizing Defendants as large corporations) – DENIED.**

Pharmacy Defendants ask the Court to preclude Plaintiffs from arguing or suggesting that Defendants are large corporations. Pharmacy Defendants assert that such testimony or argument is irrelevant and highly prejudicial and will "have a tendency to inflame jurors' emotions and/or appeal to their biases." Doc. #: 3415 at 1. Plaintiffs respond by asserting that they have "no intention of improperly inflaming the jury's emotions or appealing to its biases by negatively characterizing the Pharmacy Defendants as large corporations." Doc. #: 3464 at 10.

Without knowing the specific evidence that Plaintiffs intend to introduce or how Plaintiffs intend to characterize that evidence, the Court cannot preemptively rule that all evidence that might suggest a Defendant is a large corporation is precluded. It is simply a matter of fact that in this trial some of the Defendants are large corporations. Their size is relevant to their ability to distribute opioids and to control against diversion. Furthermore, the mere fact that some of the Defendants are large corporations is not likely to be very prejudicial. Any jury the Court empanels will undoubtedly recognize that some of these Defendants, Walmart for example, are large corporations. Instead, the Court takes Plaintiffs at their word and expects them to conduct

---

[39] Doc. #: 3415; Pls.' Opp. at 9–12 (Doc. #: 3464); Pharms.' Reply at 6–8 (Doc. #: 3507).

themselves accordingly. The Court can address any improper characterization of any Defendant if and when it arises in the context of trial.

- **Pharmacy Defendants' MIL No. 4[40] (comparing Defendants' conduct to wars, national tragedies, terrorist attacks, the tobacco industry, or any comparison of Defendants to such actors) – DENIED.**

Pharmacy Defendants ask the Court to bar any testimony or argument that compares Defendants' conduct or the alleged consequences thereof to "wars, national tragedies, terrorist attacks, . . . or . . . corporate scandals" or any actors that perpetrated such incidents. Pharmacy Defendants assert that such testimony or argument is irrelevant to Plaintiffs' claims, highly prejudicial to Defendants, and would "have a tendency to inflame jurors' emotions." Doc. #: 3416 at 1. Plaintiffs respond by asserting that they have "no intention of improperly inflaming the jury with irrelevant comparisons" and also assert that the Pharmacy Defendants' request is overly broad and might preclude otherwise relevant and admissible evidence. Doc. #: 3464 at 12.

Without knowing the specific arguments that Plaintiffs intend to make or the evidence Plaintiffs intend to use, the Court will not preemptively bar Plaintiffs from making hypothetical future arguments or rule in the abstract that any or all evidence that might compare a Defendant or its conduct to any kind of national tragedy is precluded. If a Pharmacy Defendant objects to a specific argument made or evidence introduced by Plaintiffs, it can raise that objection in the context of trial. *See Griffith v. Goodyear Dunlop Tires N. Am. Ltd.*, No. 11-CV-761S, 2018 WL 4658721, at *9 (W.D.N.Y. Sept. 28, 2018); *Regalado v. City of Chicago*, No. 96 C 3634, 1998 WL 919712, at *2 (N.D. Ill. Dec. 30, 1998). The Court expects Plaintiffs to conduct themselves

---

[40] Doc. #: 3416; Pls.' Opp. at 12–14 (Doc. #: 3464); Pharms.' Reply at 8–10 (Doc. #: 3507).

appropriately in all phases of the trial, "including voir dire, opening statement, witnesses' testimony, and closing argument." *See* Doc. #: 3416 at 1.

- **Pharmacy Defendants' MIL No. 5[41] (Defendants could have stopped distributing Schedule II controlled substances) – DENIED.**

Pharmacy Defendants ask the Court to "bar Plaintiffs from offering evidence or argument that Defendants' mere act of distributing opioid medications provides a basis for imposing liability." Doc. #: 3417 at 1. They assert that "Plaintiffs should not be able to argue that Defendants could have avoided liability by either choosing never to start distributing opioids or by voluntarily ceasing that distribution." *Id.* Plaintiffs respond by arguing that the legal authority upon which Pharmacy Defendants rely, including the Court's prior evidentiary ruling regarding preemption, is inapplicable to the Pharmacy Defendants' distribution conduct. The Court agrees with Plaintiffs.

In the *Evidentiary Order*, the Court ruled that "preemption applies to any claims that generic manufacturers should have stopped selling opioids or given additional warnings." Doc. #: 3058 at 50. Pharmacy Defendants now ask the Court to extend the logic of that evidentiary ruling to their distribution practices. *See* Doc. #: 3417 at 1 n.1. The context of that prior ruling, however, was "impossibility preemption," which occurs when "compliance with both federal and state laws is a physical impossibility," *Opinion and Order Regarding Preemption*, Doc. #: 2565 at 3 n.6 (citing *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 293–94 (6th Cir. 2015)). This circumstance is not present here. Furthermore, as Plaintiffs note, "[t]he Pharmacy Defendants never argued impossibility preemption in this case; they have only ever argued obstacle

---

[41] Doc. #: 3417; Pls.' Opp. at 15–17 (Doc. #: 3464); Pharms.' Reply at 10–11 (Doc. #: 3507).

preemption."[42] Doc. #: 3464 at 17 n.19 (citing the Pharmacy Defendants' *Motion for Summary Judgment on Preemption*, Doc. #: 1772–5).

In Track One-A, the choice faced by Teva—which formed the basis of the Court's ruling—was either to provide additional warnings for its opioid products in violation of federal law or to continue to sell its products without those warnings in violation of state law. Or, as some have argued, to stop selling those drugs altogether. The Supreme Court, however, made it clear that in those situations, "an actor seeking to satisfy both his federal- and state-law obligations is not required to cease acting altogether in order to avoid liability." *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 475 (2013); *see also* Yates, 808 F.3d at 293–300. Thus, this Court ruled it would "exclude any evidence or argument that Defendants should have given additional warnings or stopped selling generic opioids." Doc. #: 3058 at 50.

Unlike Teva's labeling-related conduct in Track One-A, however, it is not impossible for Pharmacy Defendants to comply with **both** the federal Controlled Substances Act **and** its Ohio state law equivalent. Impossibility preemption simply does not apply to the Pharmacy Defendants' distribution practices, thus the logic underlying the Court's prior ruling also does not apply here.

Additionally, Plaintiffs have stated they "do not intend to argue that the Pharmacy Defendants are liable based merely on the fact that they distributed opioids." Doc. #: 3464 at 15. Doc. #: 3464 at 15. Pharmacy Defendants contend this indicates their motion is uncontested. *See* Doc. #: 3507 at 11. However, the better reading of Plaintiffs' statement is that it makes the Pharmacy Defendants' motion moot. Accordingly, the Pharmacy Defendants' Motion *In Limine* No. 5 is denied.

---

[42] The Pharmacy Defendants' obstacle preemption theory was expressly rejected by this Court. *See* Doc. #: 2565 at 22 ("The Court has previously rejected this obstacle preemption argument, albeit with respect to the FDA, and now does so with respect to the DEA.").

- **Pharmacy Defendants' MIL No. 643 (civil or criminal investigations or other litigation involving a Defendant or its employees) – DENIED without prejudice.**

Pharmacy Defendants ask the Court to bar evidence, testimony, or argument regarding: (1) civil or criminal investigations involving a Pharmacy Defendant or its employees; (2) other litigation involving a Pharmacy Defendant or its employees; and (3) media coverage or other secondhand accounts of any such investigations or litigation, on grounds such evidence is inadmissible hearsay, irrelevant, or unfairly prejudicial. Doc. #: 3481 at 1–7.

### 1. Civil or criminal investigations

In Track One-A, the Court ruled that, absent proof of a corresponding final judgment or conviction, the *fact* of an indictment or *criminal investigation* is inadmissible.[44] Doc. #: 3058 at 15–19. Pharmacy Defendants ask the Court to expand this ruling in Track One-B to include *civil investigations*. Doc. #: 3418 at 2 n.1. In other words, Pharmacy Defendants ask the Court to rule that the *fact* of a *civil investigation* is inadmissible. Pharmacy Defendants point to no authority, however, demonstrating a blanket ruling is warranted on this issue in advance of trial.[45]

---

[43] Doc. #: 3418; Pls.' Opp. at 17–28 (Doc. #: 3464); Pharms.' Reply at 11–16 (Doc. #: 3507).

[44] In Track One-B, Plaintiffs noted their objection to this ruling, but did not seek reconsideration of it. *See, e.g.*, Doc. #: 3419 at 9; Doc. #: 3464 at 19.

[45] The cases Pharmacy Defendants cite primarily involve *criminal* or *ongoing* investigations and are easily distinguishable from the facts of this case. *See, e.g.*, *Park West Galleries, Inc. v. Global Fine Art Registry, LLC*, No. 2:08-cv-12247, 2010 WL 848689, at *1–2 (E.D. Mich. March 8, 2010) (finding the probative value of *ongoing* criminal or governmental investigations was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, particularly where "there [was] no evidence that any conclusions or findings [had] been made in any such investigation" and presenting such evidence "would therefore require the jury to predict the outcome of the pending investigations"); *John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau*, 195 F. Supp. 3d 9, 13 (D.D.C. 2016) (finding continued pseudonymous treatment for the plaintiffs was warranted, at least while a confidential governmental investigation remained *ongoing*); *see also* Doc. #: 3418 at 3–4 (citing criminal cases and/or cases involving criminal investigations).

Of course, Plaintiffs may not point to the mere *fact* of a civil investigation as evidence of *liability*. However, as Plaintiffs point out, information relating to civil investigations may be relevant to show other factors, such as a Defendant's knowledge of its noncompliance, or to provide context as to why a Defendant took certain actions with respect to its suspicious order monitoring system (SOMS). *See* Doc. #: 3464 at 21. This Court has previously informed the parties that it: "intends to have 'a very wide strike zone' for evidence about what the federal government, the DEA, and the Food and Drug Administration ('FDA') did or did not do in connection with opioid regulation, as this information is an essential part of the story regarding the claims and defenses in this case." Doc. #: 3058 at 11–12 (quoting 10/15/19 Final Pretrial Conf. Tr. at 5:6–10 (Doc. #: 2828)). Depending on how the evidence unfolds at trial, this evidence may very well include civil investigations conducted by governmental agencies. Accordingly, the Court declines to make a blanket ruling at this time.[46]

### 2. Other Litigation

Pharmacy Defendants ask the Court to preclude evidence of other lawsuits, or allegations made in those lawsuits, arguing such evidence would be inadmissible hearsay, irrelevant, or unduly prejudicial. Doc. #: 3418 at 4–6. Plaintiffs agree that allegations made in other lawsuits are not admissible to prove the truth of the matter asserted. *See* Doc. #: 3464 at 22. However, Plaintiffs contend evidence relating to other lawsuits may be relevant and admissible for other purposes, such as to show notice, knowledge, motive, intent, or admissions made by a party-opponent. *See*

---

[46] In Track One-A, the Court found evidence of *criminal investigative reports* is admissible, "unless the opponent demonstrates that the source of information or other circumstances indicate a lack of trustworthiness under Rule 803(8)." Doc. #: 3058 at 16–19. The same analysis applies to *civil investigative reports*. *See, e.g.*, *Jones v. Sandusky Cty., Ohio*, 652 F. App'x 348, 356 (6th Cir. 2016) (even those portions of a civil investigative report consisting of conclusions and opinions formed as a result of a factual investigation, are admissible under Rule 803(8)) (citing *Alexander v. CareSource*, 576 F.3d 551, 561–62 (6th Cir. 2009) (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, (1988))).

*id.* at 22–24. The Court agrees with Plaintiffs that such determinations are better made in the context of specific evidence presented at trial. Accordingly, the Court declines to make a blanket ruling in this regard.

### 3.  Media Coverage

Pharmacy Defendants ask the Court to preclude evidence regarding any media coverage of governmental investigations or lawsuits involving Defendants or their employees. Doc. #: 3418 at 6–7. As with the evidence discussed above, the Court declines to make a blanket ruling and will instead address these matters as they arise in the context of trial.  The Court warns the parties, however, that evidence of media coverage should not be introduced if it has only tangential relevance, which is often the case.

- **Pharmacy Defendants' MIL No. 7[47] (evidence of settlements) – GRANTED as to the dollar amounts or size of settlements and settlements unrelated to opioids; otherwise DENIED without prejudice.**

In Track One-A, the Court denied Defendants' motions to exclude evidence of civil settlements with governmental entities, finding that, although such evidence was not admissible to prove the validity or amount of a disputed claim, it could be relevant and admissible for another purpose, such as to show, among other things: "the Distributors' knowledge of their duties under the CSA and whether their conduct was in violation of those duties." Doc. #: 3058 at 12–15. In other words, the Court ruled such evidence could be admissible for purposes other than to show liability, that is, to show, *inter alia*, a Defendant's knowledge, state of mind, or notice of potential harm. *Id.* at 14–15.

---

[47] Doc. #: 3420; Pls.' Opp. at 28–37 (Doc. #: 3464); Pharms.' Reply at 16–20 (Doc. #: 3507).

Pharmacy Defendants ask the Court to reconsider this ruling in Track One-B; however, they present no argument or authority demonstrating the ruling is incorrect.[48] *See* Doc. #: 3420 at 2–4. Accordingly, the Court declines to alter its previous ruling. Alternatively, Pharmacy Defendants ask the Court to exclude certain categories of settlement-related evidence (listed below), that they contend are: "patently irrelevant, could not possibly establish notice, and can be excluded wholesale before trial ever begins."[49] Doc. #: 3420 at 4.

First, Pharmacy Defendants assert the particular dollar amounts of settlements should be excluded. Doc. #: 3420 at 4–5. Plaintiffs agree, but contend they should be allowed to reference the general size of a settlement as rebuttal to any argument suggesting Defendants' violations were minor or immaterial. Doc. #: 3464 at 31. In light of Plaintiffs' response, the Court orders that, except for proper rebuttal evidence, the parties shall not refer to the dollar amounts or general size of settlements.

Second, Pharmacy Defendants ask the Court to exclude evidence of settlements that were entered into or involved conduct occurring *after* the relevant time frame in this case. Doc. #: 3420 at 5. Specifically, Pharmacy Defendants assert any settlements reached *after* a Defendant stopped distributing is not relevant to show notice or state of mind with respect to *prior* distribution activities. *Id.* Plaintiffs respond such evidence may be relevant to show a "pattern" of conduct, or

---

[48] In support of their argument, Pharmacy Defendants cite cases holding that evidence of settlement agreements cannot be used to establish liability. *See* Doc. #: 3420 at 2–3. As discussed, the Court agrees with this proposition. As to whether evidence of a settlement agreement may be admitted for another purpose, such as to show a particular Defendant's knowledge or notice of potential harm, Pharmacy Defendants state they "believe" the Court's ruling is incorrect. *Id.* at 3. However, they cite no authority substantiating their belief. *See id.* at 3–4.

[49] As a preliminary matter, the Court notes that "notice" is not the only purpose for which this type of evidence may be admitted. *See, e.g.*, Doc. #: 3058 at 15 (settlement evidence is admissible to show purposes other than liability, *including* knowledge, notice of potential harm, and state of mind). Thus, even if a particular piece of settlement-related evidence "could not possibly establish notice," it does not necessarily lead to the conclusion that a blanket exclusion is required.

that a Defendant's conduct was intentional and persisted over a lengthy period of time. Doc. #: 3464 at 31–32. The Court declines to rule on this issue in the abstract and instead will address the admissibility of this evidence based on the context in which it arises at trial.

Third, Pharmacy Defendants seek to preclude evidence of settlements relating to pharmacies located outside the Track One Counties. Doc. #: 3420 at 6–7. More specifically, Pharmacy Defendants assert most of the settlements involving pharmacies relate to *dispensing* activities,[50] and none involve pharmacies located in the Track One Counties. *Id.* at 6. This Court has previously found: "evidence of what occurred outside the Track One Counties is generally relevant to Defendants' conduct within the Track One Counties, and … [t]his is particularly true because there is evidence that Defendants acted pursuant to practices and policies that were national in scope." Doc. #: 3058 at 8 (emphasis omitted). Consistent with this statement, in Track One-A, the Court found settlements occurring in West Virginia and Florida were admissible to demonstrate purposes other than liability, including to show a particular Defendant's knowledge or state of mind with respect to *distribution* claims involving the Track One Counties. *Id.* at 13–15. Similarly, the Court here declines to enter a blanket ruling excluding evidence of settlements involving conduct that occurred outside the Track One Counties and instead will address this issue when it arises in the context of trial.

Fourth, Pharmacy Defendants ask the Court to exclude evidence of settlements relating to corporate entities other than the Pharmacy Defendants in this case. Doc. #: 3420 at 7. Plaintiffs respond such settlements "may be relevant to the extent the Pharmacy Defendants were aware of them, discussing them internally or with others, and/or taking actions based on such settlements."

---

[50] As noted, the Track One-B claims involve claims against the Pharmacy Defendants for their *distribution* conduct. The Court will decide in the context of trial whether particular settlements are relevant to such claims.

31

Doc. #: 3464 at 36. The Court cannot determine the admissibility of this evidence in the abstract and instead will decide the matter as it may arise in the context of trial.

Finally, Pharmacy Defendants seek to preclude evidence of settlements unrelated to opioid medications. Doc. #: 3420 at 7–8. Plaintiffs respond they have no intention of presenting this evidence. Doc. #: 3464 at 37. Plaintiffs further assert that, if they change their mind based on the evidence adduced at trial, they will seek leave from Court outside the presence of the jury before offering any such evidence. Based on Plaintiffs' representation, the Court rules that, absent seeking and obtaining leave of Court beforehand, the parties shall not present evidence regarding settlements unrelated to opioid medications.

- **Pharmacy Defendants' MIL No. 8[51] (extraterritorial conduct without establishing a specific nexus to Cuyahoga or Summit County and a Track One-B Defendant) – DENIED.**

Pharmacy Defendants assert "[t]he Court should bar [evidence, testimony, or argument concerning alleged conduct that occurred outside of Cuyahoga or Summit Counties] unless Plaintiffs first establish—outside of the presence of the jury[52]—a foundation showing a specific nexus connecting that extraterritorial conduct to harm suffered by one of the Counties and a specific Defendant's distribution conduct." Doc. #: 3421 at 1. Plaintiffs argue in response that the request is overbroad and premature. *See* Doc. #: 3463 at 37.

As stated above regarding settlements, the Court has addressed the relevance of various evidence from outside the Plaintiff Counties and specifically ruled that "evidence of national trends and national shipments is relevant to demonstrate the national scope of the opioid crisis."

---

[51] Doc. #: 3421; Pls.' Opp. at 37–44 (Doc. #: 3464); Pharms.' Reply at 20–22 (Doc. #: 3507).

[52] The Pharmacy Defendants do not attempt to explain why they believe these foundational hearings ought to occur outside the presence of the jury nor do they cite to any precedent that tends to support such a requirement.

Doc. #: 3058 at 8 n.15 (citing *Daubert Order regarding Cutler*, Doc. #: 2542 at 4–5). Notwithstanding this prior ruling, Pharmacy Defendants assert that Track One-B is different because (1) "[Plaintiffs' SOMS expert,] Rafalski[,] does not offer any opinions about most Track 1-B defendants," Doc. #: 3421 at 2, and (2) "Track 1-B Pharmacy Defendants distributed only to themselves, and not to third-party 'pill mills' or pain clinics." *Id.* at 3.

The Court is not persuaded that there is any reason to revisit its prior rulings on the issues of extraterritoriality, but it offers these clarifying comments. The context of the Court's prior rulings were made with broad-scope aggregate evidence in mind. What that means is, where evidence tends to show nation-wide trends and shipments, national policies and procedures, or systemic failures that are national in scope and become clear in the aggregate, the Court will *generally* permit such evidence—so long as it is otherwise admissible under the Federal Rules. Additionally, the Court will also *generally* allow specific extraterritorial evidence that has some demonstrable nexus to the Plaintiff Counties. For example, evidence that a distribution center located outside the Plaintiff Counties distributes prescription opioids into them is admissible; and evidence that CSA violations by distribution centers in other parts of the country for failure to follow a national policy or protocol also applicable to distribution centers that shipped to the Plaintiff Counties may also be admissible. On the other hand, evidence that is specific in nature and does not have a nexus to the Plaintiff Counties, without more, will *generally* not be permitted.

Accordingly, the Pharmacy Defendants' Motion *In Limine* No. 8 is denied.

- **Pharmacy Defendants' MIL No. 9[53] (limit testimony of Craig McCann) – DENIED.**

Pharmacy Defendants ask the Court to "exclude portions of Craig McCann's opinion, which other evidence has revealed to be irrelevant and likely to confuse the jury." Doc. #: 3425 at 1. In response, Plaintiffs assert that "[t]he Pharmacy Defendants are attempting to re-litigate an issue the Court has already decided, without providing any new basis for why the Court should reconsider its prior ruling." Doc. #: 3464 at 45.

The Court agrees with Plaintiffs. Pharmacy Defendants never make clear in their motion or their reply what they believe has changed between Track One-A and Track One-B that would necessitate the Court revisiting its prior conclusions in its *Opinion and Order Regarding Rafalski and McCann* (Doc. #: 2494). The only distinction they cite appears to be that "Rafalski offers no opinion as to many of the Track One-B Defendants." Doc. #: 3425 at 1. Of course, that means that Rafalski does offer *some* opinion as to *some* of the Track One-B Defendants. Pharmacy Defendants also argue that, even if McCann's testimony is relevant and admissible, its probative value would be "substantially outweighed by the danger of confusing the issues, misleading the jury, undue delay, or wasting time." Doc. #: 3507 at 24 (citing Fed. R. Evid. 403). The Court concludes again now, as it did previously, that "McCann's opinions are relevant and would aid the jury's determination of material issues in the case." Doc. #: 2494 at 19.

Accordingly, the Pharmacy Defendants' Motion *In Limine* No. 9 is denied.

---

[53] Doc. #: 3425; Pls.' Opp. at 44–47 (Doc. #: 3464); Pharms.' Reply at 22–25 (Doc. #: 3507).

- **Pharmacy Defendants' MIL No. 10[54] (Pharmacy Defendants' participation in trade associations) – DENIED.**

Pharmacy Defendants assert "[t]he Court should preclude any evidence or argument concerning Defendants' participation in trade associations and protected petitioning activity." Doc. #: 3426 at 1. In Track One-A, the Court ruled it would not preclude evidence of "participation in, and funding of, trade and advocacy groups." Doc. #: 3058 at 51. The Court also ruled that evidence of lobbying and petitioning activity "is admissible for other purposes." *Id.* at 52.

The Court's prior trade associations ruling was expressly based on the relevance of the Track One-A Defendants' participation in those groups to the existence or non-existence of a RICO enterprise or conspiracy. *See id.* Neither of those claims are present here. As a result, Pharmacy Defendants argue that "[p]urpose, character and motive simply are not at issue here for Plaintiffs' nuisance claim," and "[p]articipation in a trade association also does not demonstrate the intent necessary for a public nuisance claim." Doc. #: 3426 at 2–3. Plaintiffs respond by asserting that "evidence of the Pharmacy Defendants' participation in trade associations and lobbying efforts demonstrates their intent, knowledge, purpose, and motives as it relates to their distribution of opioids." Doc. #: 3464 at 50. In other words, Plaintiffs argue that the Pharmacy Defendants' participation in trade groups is still admissible for other purposes despite the absence of RICO and conspiracy claims.

Although RICO and conspiracy claims are not at issue in Track One-B, intentional conduct is a way in which Plaintiffs can prove public nuisance; thus, the Pharmacy Defendants' intent remains an important element of Plaintiffs' nuisance claim. Pharmacy Defendants concede this point. *See* Doc. #: 3426 at 2 ("[Track One-B Plaintiffs must prove] whether a Pharmacy

---

[54] Doc. #: 3426; Pls.' Opp. at 47–50 (Doc. #: 3464); Pharms.' Reply at 25–27 (Doc. #: 3507).

Defendant's distribution to its own stores involved ***intentional*** and unreasonable conduct that was ***intended*** to cause an interference with a public right.") (emphasis added). Therefore, with respect to participation in trade associations, the Court agrees with Plaintiffs that this evidence is admissible for other purposes.

Furthermore, the Court's Track One-A ruling regarding lobbying and petitioning activity was not expressly based on any particular claim, and thus the Court sees no reason to revisit that ruling. As before, "[i]n the context of trial, Defendants may argue that the probative value of any particular evidence on this matter is outweighed by a danger of undue prejudice." Doc. #: 3058 at 52 (citing *In re Brand Name Prescript. Drugs Antitrust Litig.*, 186 F.3d 781, 789 (7th Cir. 1999)).

Pharmacy Defendants are correct that evidence of their lobbying and petitioning activity in isolation may not be relevant, but Plaintiffs may show that such activity goes to issues that are relevant, such as knowledge of the DEA's position regarding SOMS.  Accordingly, the Pharmacy Defendants' Motion *In Limine* No. 10 is denied.

- **Rite Aid and Giant Eagle MIL[55] (orders from non-defendant distributors) – DENIED without prejudice.**

A select group of Pharmacy Defendants—Rite Aid of Maryland Corp. ("Rite Aid") and Giant Eagle entities[56]—seek to preclude reference to their pharmacies' opioid orders from non-defendant distributors. The moving Defendants argue such evidence is irrelevant to demonstrating whether they failed to monitor suspicious orders, and it would be unfairly prejudicial, confuse the issues, and mislead the jury into believing these Defendants can be liable for alleged misconduct of other distributors. Doc. #: 3423 at 2–3 (citing Fed. R. Evid. 403). Rite Aid adds that its stores'

---

[55] Doc. #: 3423; Pls.' Opp. at 52 (Doc. #: 3464); Doc. #: 3508.

[56] The Giant Eagle entities are Giant Eagle, Inc., HBC Service Company, and Giant Eagle Rx Distribution Center.

orders from other defendants were not reported to it, but to another Rite Aid entity that is not a defendant. Doc. #: 3506 at 2–3.

Plaintiffs argue the evidence is relevant because Pharmacy Defendants had "complete visibility into dispensing-level data from their own pharmacies," and the non-defendant distributor orders are relevant to whether Pharmacy Defendants properly monitored suspicious orders because they should have been considering the total amount of opioids (Schedule II and Schedule III) their pharmacies received. Doc. #: 3464 at 52–53. Plaintiffs claim there is no risk of prejudice or jury confusion because they do not intend to argue Pharmacy Defendants are liable for another distributor's misconduct. *Id.*

The Court tends to agree with the moving Defendants that orders from non-defendant distributors are not relevant to whether Defendants properly monitored suspicious orders *if they were not required to and did not in fact have knowledge of these orders*. The Plaintiffs have not persuaded the Court that all Schedule II and Schedule III opioid orders by an individual pharmacy to any distributor are relevant to claims against a distributing entity in the same corporate family as that pharmacy. On the other hand, if a Pharmacy Defendant knew or had reason to know that one of its pharmacy stores was ordering opioids from both the Defendant's own distribution center and also a non-defendant, that evidence may be relevant. Accordingly, the Court declines to make a blanket ruling of exclusion and will instead determine the admissibility of this evidence in the context of trial.[57] The Court certainly will not allow argument that any Defendant is liable for another distributor's conduct.

---

[57] As the moving Defendants point out, liability in Track One-B is focused solely on the conduct of Pharmacy Defendants as distributors of opioid medications. The relevance and admissibility of orders from non-defendant distributors might be viewed differently in a trial where the Pharmacy Defendants' dispensing conduct is at issue, i.e., the Track Three cases.

## CONCLUSION

These rulings, along with those made in the Court's prior *Evidentiary Order* (Doc. #: 3058), will normally apply to all future MDL cases tried by this Court and any transferor court on remand. The parties' objections to these rulings are preserved for all future trials and any appeals thereof. Accordingly, a party should file a pretrial motion addressing these same evidentiary issues in future trials only if the party sincerely believes the particular circumstances of an individual case warrant a modification.

Further, although this Order documents the Court's rulings, the parties still have an obligation to object at trial if they believe the opposing party is not complying with the Court's conclusions regarding admissibility. As the Court presides over future bellwether trials, it will enter additional evidentiary orders memorializing rulings on issues that are applicable to all MDL cases, so that the parties will not need to file repetitious motions *in limine*.

Finally, in numerous instances the Court has ruled in this Order and the *Evidentiary Order* that it would not enter a blanket ruling before trial excluding certain types of evidence and instead will address the issues as they arise at trial.  The parties are directed to make best efforts to raise these issues with the Court each morning during trial, before presentation to the jury begins, in order to obtain timely contextual rulings.

**IT IS SO ORDERED.**


 **/s/ Dan Aaron Polster  November 3, 2020**
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**