# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*County of Lake, Ohio v. Purdue Pharma, et al.*, Case No. 18-op-45032<br><br>*County of Trumbull, Ohio v. Purdue Pharma, et al.*, Case No. 18-op-45079 | MDL No. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

## OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE THE
## PHARMACY DEFENDANTS' THIRD-PARTY COMPLAINTS

Plaintiffs Lake and Trumbull Counties rest their motion to strike on a fiction: that any dispute between the Pharmacy Defendants and the Third-Party Defendants is "independent" of, and has nothing to do with, Plaintiffs' own claims against the Pharmacy Defendants. In fact, however, the Third-Party Defendants ("Prescriber Defendants") are the very healthcare providers who wrote the prescriptions that, Plaintiffs claim, pharmacists employed by the Pharmacy Defendants should not have filled when purported "red flags of diversion" indicated that the Prescriber Defendants wrote them for improper purposes.

Plaintiffs expressly fault pharmacists employed by the Pharmacy Defendants for not doing enough to "look beyond" prescriptions (Mot. 4) to identify cases where a Prescriber Defendant broke the law by prescribing improperly. They allege that the Pharmacy Defendants did not have in place "effective systems" or require sufficient "due diligence" (Mot. 5) to catch the Prescriber Defendants in the act of illegally writing bogus prescriptions.

To be sure, as the Court said in its order on the Track 1B third-party complaints, Plaintiffs' dispensing claims rely on allegations that the Pharmacy Defendants breached their

own duties that, according to Plaintiffs, they do not share with others. But that is the beginning, not the end, of the analysis. Each of these alleged duties involves steps that Plaintiffs say the Pharmacy Defendants should have taken to police the conduct of healthcare providers like the Prescriber Defendants—to identify the Prescriber Defendants' improper prescriptions and then to turn away their "patients" attempting to fill the prescriptions.

Let there be no doubt: The Pharmacy Defendants disagree in strongest possible terms with Plaintiffs' position that a vast number of healthcare providers across northern Ohio practice medicine with such disregard for the law, their professional obligations, and the health and safety of their patients and communities. The evidence at trial will show the opposite. Nevertheless, that is the basis of Plaintiffs' dispensing claims. And if Plaintiffs were to succeed in proving their cases, it would follow as a matter of law and common sense that responsibility does not end with the Pharmacy Defendants, but must also lie with the original wrongdoers who successfully evaded the efforts of the Pharmacy Defendants to block their misconduct.

## **Background**

Lake and Trumbull Counties, unlike many other plaintiffs in this litigation, expressly assert dispensing claims against the Pharmacy Defendants, alleging that their pharmacists dispensed prescription opioid medications when they should have refused the prescription instead. Plaintiffs assert that these improperly dispensed medications were diverted and contributed to the opioid crisis in their counties.

Rather than address the actual causes of opioid abuse and addiction in their communities, Lake and Trumbull Counties confine their focus to five chain pharmacies. They overlook the "pill mills" and unscrupulous pain clinics for which Ohio is famous, the internet pharmacies that drove the crisis, and the pharmacies that operate without the same standards and controls as the

major chains. Missing, too, from Plaintiffs' truncated analysis is any recognition that behind every improper prescription (other than the odd case of forgery, which Plaintiffs do not allege) is a medical professional who wrote a prescription that never should have been written.

The Court might have expected that Plaintiffs' dispensing claims would focus on a discrete number of prescriptions that Plaintiffs could plausibly allege (and attempt to prove) were actually written for improper purposes and then actually diverted after leaving the pharmacy. Not so. Interrogatory No. 25 asked Plaintiffs to "Identify each prescription which you contend (i) supports Your claims in this case, (ii) caused harm for which You seek to recover in this case, or (iii) should not have been filled." Ex. 1 at 2. Lake and Trumbull Counties came back with a list of over ***1,000,000 prescriptions*** written by more than ***7,500 physicians*** across northern Ohio, including at some of the most prestigious medical centers in the world. *Id.* at 3; Lake County Third-Party Cmplt. ¶ 2 & Trumbull County Third-Party Cmplt. ¶ 2.

While some of the supposed "red flags" Plaintiffs used to compile this list are meant to suggest misconduct by criminals masquerading as patients—*e.g.*, "doctor shoppers" who managed to deceive both the prescribing doctor and the pharmacist—many others purport to identify misconduct by healthcare providers who took an active role in drug diversion by writing improper prescriptions. For example, Plaintiffs' "red flags" Nos. 10, 11, and 12 are described as detecting illegitimate "pattern prescribing" by a doctor who writes numerous identical prescriptions for impermissible reasons; Nos. 18, 19, 20, and 21 expressly indicate, in Plaintiffs' own words, "illegitimate prescribing" by a healthcare provider; and Nos. 22 and 23 occur when a prescriber writes a prescription for an "illegitimate cocktail[] or combination[]" of medications. Ex. 1 at Ex. A 9-10. The prescribers who wrote these (and any other) allegedly illegitimate prescriptions are the subject of the Pharmacy Defendants' third-party complaint.

3

**Argument**

Rule 14 authorizes a defendant to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The purpose of the rule is to allow "additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). "Courts have recognized that third-party practice under Rule 14 enables a party to avoid '[t]he costs and pitfalls associated with litigating multiple suits on the same subject matter, and the attendant possibility of inconsistent verdicts,' which 'are not insubstantial or abstract.'" *Heubel Materials Handling Co. v. Universal Underwriters Ins. Co.*, 704 F.3d 558, 565 (8th Cir. 2013) (quoting *Hecht v. Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1241 (D. Nev. 2008)).

**I.     The Third-Party Claims Are Factually and Legally Dependent on the Outcome of Plaintiffs' Intertwined Dispensing Claims Against the Pharmacy Defendants.**

Plaintiffs cannot attempt to deprive the Pharmacy Defendants of their rights against the Prescriber Defendants by asserting, in reliance on the Court's Track 1B ruling, that their claims are "based" on duties they ascribe directly to the Pharmacy Defendants and that they intend to "focus on" the Pharmacy Defendants' "policies and procedures, their own duties under state and federal laws, and the information . . . available to them when dispensing opioids." Mot. 3. Their selective decisions about what to "focus" on and which duties to assert have no bearing on whether these third-party claims are properly before the Court.

Rather, the question under Rule 14 is whether the third-party claims are derived from the Prescriber Defendants' "actual or potential liability" to the Pharmacy Defendants "for all or part of" Plaintiffs' claims against the Pharmacy Defendants. Fed. R. Civ. P. 14(a)(1). The validity of

4

a third-party claim turns on whether "the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party." *Trane U.S. Inc. v. Meehan*, 250 F.R.D. 319, 322 (N.D. Ohio 2008) (quoting Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1446 (2d ed.)).

This Court's decision in *Trane* is on-point. After the plaintiff brought claims against its franchisee for failing to comply with accounting policies governing certain transactions, the defendants sought to implead several employees who profited from the transactions at issue. *Trane*, 250 F.R.D. at 321. The court accepted the third-party complaint, because "the factual issues in the primary and the third-party complaint overlap" and "[t]he legal issues are also related." *Id.* at 322. While adding third-party defendants introduced "new issues into the case," the third-party claims were proper because "there is still a **logical relationship** between the third party claims and the transaction or occurrence that is the subject matter of the complaint." *Id.* (quotation marks omitted) (emphasis added).

Just such a "logical relationship" also exists here. Were Lake and Trumbull Counties to succeed in holding the Pharmacy Defendants liable for not doing enough to police misconduct by the Prescriber Defendants, which then resulted in harm to Plaintiffs' communities, the Prescriber Defendants would in turn be liable to the Pharmacy Defendants with respect to the **same prescriptions** and the **same harm**. The Pharmacy Defendants' claims against the Prescriber Defendants are clearly "dependent on the outcome of the main claim," *Trane*, 250 F.R.D. at 322, and could hardly be more closely intertwined with Plaintiffs' underlying claims. And far from being a "legal fallacy" (Mot. 5), the Prescriber Defendants' liability to the Pharmacy Defendants is straightforward under well-established Ohio law. *See* Wright & Miller, 6 Fed. Prac. & Proc.

5

Civ. § 1446 n.8 (3d ed.) ("[I]mpleader has been successfully utilized when the basis of the third-party claim is . . . indemnity [or] contribution," as well as "misrepresentation" and "negligence").

Finally, the alternative of adjudicating the Pharmacy Defendants' claims against the Prescriber Defendants in a separate proceeding would create an unacceptable risk of inconsistent outcomes resulting in a manifest injustice. Suppose Plaintiffs were to succeed before this Court in showing that prescriptions written by the Prescriber Defendants should not have been filled because it should have been apparent that they were not written for any legitimate medical purpose. The Pharmacy Defendants should not be put at risk that a second jury, in a separate case just between the Pharmacy Defendants and the Prescriber Defendants, will conclude that the prescriptions were legitimate after all and that Plaintiffs thus never should have recovered from the Pharmacy Defendants in the first place. *See*, *e.g.*, *Heubel*, 704 F.3d at 565 (third-party practice appropriate to "avoid . . . the possibility of inconsistent verdicts"); *NVZ Capital, LLC v. Gentry*, 2015 WL 5076993, at *2 (E.D. Ky. 2015) (permitting third-party complaint "to avoid inconsistent results"); *Bridge Capital Investor v. Coated Sales, Inc.*, 1991 WL 190552, at *2 (S.D.N.Y. 1991) ("Deciding the third-party complaint in the same action as the primary suit would effectuate Rule 14(a)'s policy of promoting judicial efficiency and would avoid the possibility of multiple actions and inconsistent judgments.").

**II.     Plaintiffs' Concerns About Complexity and Delay Do Not Justify Striking or Severing the Third-Party Complaints.**

Plaintiffs' concern that impleading the Prescriber Defendants might complicate and delay the prosecution of their cases (Mot. 6-7, 10-12), is a problem of Plaintiffs' own making. And with a full six months left before trial, the solution is entirely in Plaintiffs' own hands.

Lake and Trumbull Counties made a choice to rest their lawsuits on the proposition that thousands upon thousands of doctors in northern Ohio wrote prescriptions that, according to

6

Plaintiffs, no pharmacist should have filled. But it is also clear that Plaintiffs will never proceed to trial on the wild theory that all of these local healthcare providers participated in criminal drug diversion by writing over a million prescriptions without any legitimate medical purpose. Plaintiffs know—as will every juror—that there are not 7,500 such doctors anywhere in Ohio. There may not be 75.

It is up to Plaintiffs to narrow their claims in a realistic manner and identify the much smaller number of prescriptions for which they might actually hope to demonstrate improper prescribing and subsequent diversion. As soon as they do, the Pharmacy Defendants will be able to narrow their third-party complaint accordingly. And since the doctors who wrote these allegedly illegitimate prescriptions will be subject to discovery and are likely trial witnesses in any event, the additional complexity of their participation as party defendants should be minimal.

At the same time, to strike or sever the third-party claims risks a significant duplication of effort and waste of judicial resources. Because the third-party claims and Plaintiffs' dispensing claims—including the necessary discovery for both—are so inextricably intertwined, "[i]t is more efficient to centralize all claims and dispose of all issues." *Acosta v. RAB Comms., Inc.*, 2019 WL 7282347, *5 (S.D. Ohio Dec. 27, 2019); *see also Am. Zurich*, 512 F.3d at 805 (purpose of Rule 14 is to "expedite the final determination of the rights and liabilities of all the interested parties in one suit"). Severing the third-party claims against the Prescriber Defendants would be far *less* efficient, requiring a second trial with much of the same evidence presented to a second jury and inviting inconsistent verdicts.[1]

---

[1] To the extent relevant, inclusion of the third-party claims also serves the broader goals of the MDL by ensuring that the Track 3 trial is a meaningfully representative bellwether proceeding and that important third-party claims are tested before a jury. Similar third-party complaints are, or soon will be, pending in other courts across the country.

7

**III.     The Third-Party Complaints State Meritorious Claims.**

Plaintiffs rely on an Advisory Committee Note that courts have discretion to strike third-party complaints that are "obviously unmeritorious." Mot. 7 (quoting Fed. R. Civ. P. 14 Advisory Comm. Note to 1963 amend.). But in these cases, Ohio law plainly authorizes each of the five claims for relief in the third-party complaints.

***Negligent Misrepresentation, Negligence, and Fraud (Counts I, II, and III).*** Plaintiffs do not dispute that the Pharmacy Defendants have properly pleaded all the elements of their claims for negligent misrepresentation, negligence, and intentional fraud. Instead, Plaintiffs make only a cursory argument that, as a matter of law, it is never reasonable for a pharmacist to rely on any representation made by a prescribing doctor about the appropriateness of a prescription for an individual patient under the doctor's care. Mot. 9. Of course, no law even remotely suggests such a rule. At most, Plaintiffs' argument establishes that it may be a factual question for the jury whether it was reasonable, under the circumstances of a particular prescription, for the pharmacist to rely on the prescriber in light of the other information available to the pharmacist.

***Indemnification (Count IV).*** A claim for indemnification is precisely the type of claim for which Rule 14 was designed. *See* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1446 (3d ed.). Neither of Plaintiffs' arguments suggests the Pharmacy Defendants' indemnification claim is not proper here.

First, Plaintiffs assert that Ohio law allows indemnification only for the benefit of wholly "innocent actors," while, Plaintiffs say, their claims allege that the Pharmacy Defendants breached affirmative duties. Mot. 7.

In fact, "Ohio law generally recognizes that implied indemnification is appropriate in certain limited circumstances"—whether or not the party seeking indemnification is

8

"innocent"—when "a party owes only secondary legal responsibilities and is passively negligent." *Mahathiraj v. Columbia Gas of Ohio*, 84 Ohio App. 3d 554, 563-64 (Ohio Ct. App. 1992). Applying this rule, the *CSX* decision, which Plaintiffs rely on, explains why the Pharmacy Defendants are entitled to indemnification from the Prescriber Defendants.

Surveying Ohio law on "passive negligence," the court held that "a right of indemnification exists where the secondary party becomes liable to a third person for failing to discover or to remedy the harm caused by the primary party's negligence or misconduct." *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, 307 F. Supp. 3d 719, 731 (S.D. Ohio 2018) (quotation marks omitted). In *CSX*, the third-party plaintiffs implemented the third-party defendant's design and engineering plans for work necessary to protect a bridge's structure. *Id.* at 732. While the third-party plaintiffs were "potentially liable" to the plaintiffs in the underlying lawsuit for work later needed to repair the bridge, they alleged that it was ultimately the "flawed plans" that "caused the damage." *Id.* The court found that "these allegations support an inference" that the third-party plaintiffs were "passively negligent (in the sense of failing to discover or remedy the flaws in the plans)," such that a claim for indemnification against the third-party defendants was proper. *Id.* Likewise here, the Prescriber Defendants' "flawed" prescriptions are what "caused the damage," while the Pharmacy Defendants are allegedly at fault for "failing to discover or remedy" the Prescriber Defendants' improper prescribing.

Second, Plaintiffs argue that the Pharmacy Defendants fail to allege facts showing the existence of "a relationship establishing secondary liability." Mot. 7-9. Citing *CSX*, Plaintiffs suggest that the Prescriber Defendants and the Pharmacy Defendants have no "common duty" to Plaintiffs. *Id.* at 9. In *CSX*, however, the court held that a "common duty" could be inferred from allegations that the third-party plaintiffs and the third-party defendant "had specific and

9

interrelated involvement in providing" the measures necessary to protect the bridge, with the third-party defendant designing the plans and the third-party plaintiffs "relying on and complying with" those plans. 307 F. Supp. 3d at 731. The Pharmacy Defendants make counterpart allegations here that demonstrate the sufficiency of their indemnification claim.[2] Indeed, the regulation on which Plaintiffs rely for their dispensing claims against the Pharmacy Defendants expressly gives a pharmacist a "corresponding responsibility" to that of the prescriber: "The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription." 21 C.F.R. § 1306.04(a).

*Contribution (Count V).* As to contribution, Plaintiffs offer only the assertion that it is unavailable for intentional torts like, they say here, their public nuisance claim. Mot. 9. Accepting for the sake of argument Plaintiffs' characterization of Ohio law, their argument is directly at odds with the position Plaintiffs have taken everywhere else that their nuisance claim does not require a showing of intent. *See*, *e.g.*, Lake County Cmplt. ¶ 620 & Trumbull County Cmplt. ¶ 620 (alleging that "Defendants' nuisance creating conduct was intentional and unreasonable and/or violated statutes which established specific legal requirements for the protection of others"). Plaintiffs cannot have it both ways.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion to Strike the Pharmacy Defendants' Third-Party Complaints should be denied.

---

[2] *See* Lake County Third-Party Cmplt. ¶¶ 8-9, 26-27, 29-31, 36-38, 55-58 & Trumbull County Third-Party Cmplt. ¶¶ 8-9, 26-27, 29-31, 36-38, 55-58 (describing the interrelated roles of the Prescriber Defendants and the Pharmacy Defendants); Lake County Third-Party Cmplt. ¶ 36 & Trumbull County Third-Party Cmplt. ¶ 36 (alleging a "special relationship" between the Prescriber and Pharmacy Defendants).

Dated: November 9, 2020

Respectfully submitted,

/s/ Eric R. Delinsky (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Ste. 1000
Washington, DC 20036
(202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Pharmacy, Inc. and Ohio CVS Stores, LLC*

/s/ Kelly A. Moore (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6612
kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5917
elisa.mcenroe@morganlewis.com

*Counsel for Rite Aid Hdqtrs. Corp. and Rite Aid of Ohio, Inc.*

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
kate.swift@bartlitbeck.com

*Counsel for Walgreen Co.*

/s/ Robert M. Barnes (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
(412) 471-3490
rbarnes@marcus-shapira.com
livingston@marcus-shapira.com
kobrin@marcus-shapira.com

*Counsel for Giant Eagle, Inc.*

/s/ Tina M. Tabacchi (consent)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

**Certificate of Service**

I hereby certify that on this 9th day of November 2020, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

    */s/ Kaspar J. Stoffelmayr*
    Kaspar J. Stoffelmayr

    *Counsel for Walgreen Co.*