# EXHIBIT 11

```
1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-rdd

4    Adv. Case No. 19-08289-rdd

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    PURDUE PHARMA L.P.,

9

10           Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   PURDUE PHARMA L.P., et al.,

13                 Plaintiffs,

14           v.

15   COMMONWEALTH OF MASSACHUSETTS, et al.,

16                 Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19

20

21

22

23

24

25
```

1               United States Bankruptcy Court

2               300 Quarropas Street, Room 248

3               White Plains, NY 10601

4

5               September 30, 2020

6               10:08 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  UNKNOWN

1    HEARING re Notice of Agenda / Amended Agenda for September

2    30, 2020 Hearing Motion to File Proof of Claim After Claims

3    Bar Date (ECF #1645)

4

5    HEARING re Stipulation and Agreed Order for Withdrawal

6    without Prejudice of Scott County, Mississippi's Motion to

7    Allow/ Deem Timely Late Filing of Proof of Claim (related

8    document(s)1645, 1647) Filed by James I. McClammy on behalf

9    of Purdue Pharma L.P. (ECF #1711)

10

11    HEARING re Ex Parte Motion of the Debtors for Entry of an

12    Order Shortening Notice with Respect to Motion of the

13    Debtors for Entry of an Order (I) Approving Sale of Debtors

14    Coventry Facility and Related Assets Free and Clear of

15    Liens, Claims, Interests and Encumbrances, (II) Approving

16    Debtors Entry into a Long-Term API Supply Agreement, (III)

17    Authorizing Assumption and Assignment or Assignment, as

18    Applicable, of Executory Contracts and Unexpired Lease and

19    (IV) Granting Related Relief filed by Eli J. Vonnegut on

20    behalf of Purdue Pharma L.P. (related document #1687)

21    (ECF #1685)

22

23    HEARING re Motion for Entry of Order Pursuant to 11 U.S.C.

24    105(a), 107(b) and Fed. R. Bankr. P. 9018 Authorizing the

25    Filing of Certain Information and Exhibits Under Seal in

1  Connection with the Motion of the Debtors for Entry of an

2  Order (I) Approving Sale of Debtors Coventry Facility and

3  Related Assets Free and Clear of Liens, Claims, Interests

4  and Encumbrances, (II) Approving Debtors Entry into a Long-

5  Term API Supply Agreement, (III) Authorizing Assumption and

6  Assignment or Assignment, as Applicable, of Executory

7  Contracts and Unexpired Leases and (IV) Granting Related

8  Relief (related document #1687)(ECF #1686)

9

10  HEARING re Motion of the Debtors for Entry of an Order (I)

11  Approving Sale of Debtors Coventry Facility and Related

12  Assets Free and Clear of Liens, Claims, Interests and

13  Encumbrances, (II) Approving Debtors Entry into a Long-Term

14  API Supply Agreement, (III) Authorizing Assumption and

15  Assignment or Assignment, as Applicable, of Executory

16  Contracts and Unexpired Leases and (IV) Granting Related

17  Relief (related documents #1685 and #1686)(ECF #1687)

18

19  HEARING re Declaration of Rafael J. Schnitzler in Support of

20  Motion of the Debtors for an Order (I) Approving Sale of

21  Debtors Coventry Facility and Related Assets Free and Clear

22  of Liens, Claims, Interests and Encumbrances, (II) Approving

23  Debtors Entry into a Long- Term API Supply Agreement, (III)

24  Authorizing Assumption and Assignment or Assignment, as

25  Applicable, of Executory Contracts and Unexpired Leases and

1    (IV) Granting Related Relief filed by Eli J. Vonnegut on

2    behalf of Purdue Pharma L.P. (ECF #1688)

3

4    HEARING re Adversary proceeding: 19-08289-rdd Purdue Pharma

5    L.P. et al v. Commonwealth of Massachusetts et al

6    Motion to Extend Time / Motion to Extend the Preliminary

7    Injunction (related document(s)1) (ECF #197)

8

9    HEARING re Memorandum of Law in Support of Motion to Extend

10   the Preliminary Injunction (related document(s)197) filed by

11   Benjamin S. Kaminetzky on behalf of Avrio Health L.P.,

12   Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma

13   Manufacturing L.P., Purdue Pharma of Puerto Rico, Purdue

14   Pharmaceutical Products L.P., Rhodes Pharmaceuticals L.P.,

15   Rhodes Technologies (ECF #198)

16

17   HEARING re Declaration of Benjamin S. Kaminetzky in Support

18   of Debtors' Motion to Extend the Preliminary Injunction

19   (related document(s)197) filed by Benjamin S. Kaminetzky on

20   behalf of Avrio Health L.P., Purdue Pharma Inc., Purdue

21   Pharma L.P., Purdue Pharma Manufacturing L.P., Purdue Pharma

22   of Puerto Rico, Purdue Pharmaceutical Products L.P., Purdue

23   Pharmaceuticals L.P., Purdue Transdermal Technologies L.P.,

24   Rhodes Pharmaceuticals L.P., Rhodes Technologies (ECF #199)

25   Reply Declaration of Benjamin S. Kaminetzky in Support of

Page 6

1    Debtors' Motion to Extend the Preliminary Injunction

2    (ECF #206)

3

4    HEARING re Adversary proceeding: 19-08289-rdd Purdue Pharma

5    L.P. et al v. Commonwealth of Massachusetts et al

6    Objection to Motion /Second Restatement of Limited Objection

7    and Reservation of Rights of Tennessee Public Officials in

8    Response to Debtors Motion to Extend the Preliminary

9    Injunction for Richard Sackler (related document(s)197)

10   (ECF #201)

11

12   HEARING re Adversary proceeding: 19-08289-rdd Purdue Pharma

13   L.P. et al v. Commonwealth of Massachusetts et al

14   The Non-Consenting States' Voluntary Commitment and Limited

15   Objection in Response to Purdue's Motion to Extend the

16   Preliminary Injunction (related document(s)197) filed by

17   Andrew M. Troop on behalf of Ad Hoc Group of Non- Consenting

18   States (ECF #202)

19

20   HEARING re Adversary proceeding: 19-08289-rdd Purdue Pharma

21   L.P. et al v. Commonwealth of Massachusetts et al

22   Limited Objection to Extension of the Preliminary Injunction

23   (related document(s)197) filed by Paul A. Rachmuth on behalf

24   of Ad Hoc Committee on Accountability (ECF#205)

25

```
 1    HEARING re Adversary proceeding: 19-08289-rdd Purdue Pharma

 2    L.P. et al v. Commonwealth of Massachusetts et al

 3    Reply Memorandum of Law in Support of Motion to extend the

 4    Preliminary Injunction (related document(s)197) filed by

 5    Benjamin S. Kaminetzky on behalf of Avrio Health L.P.,

 6    Purdue Pharma L.P., Purdue Pharma Manufacturing L.P., Purdue

 7    Pharma of Puerto Rico, Purdue Pharmaceutical Products L.P.,

 8    Purdue Pharmaceuticals L.P., Purdue Transdermal Technologies

 9    L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies

10    (ECF #205)

11

12    HEARING re Independent Emergency Room Physicians' Motion to

13    Allow Class Treatment (related document(s)1629)

14

15    HEARING re Debtors' Objection to Movant, Independent

16    Emergency Room Physician's Motion for Class Treatment

17    (ECF #1717)

18

19    HEARING re The Official Committee of Unsecured Creditors

20    Response to Movant Independent Emergency Room Physician's

21    Motion for Class Treatment Pursuant to Fed. Bankr. P.

22    9014 and 7023 for an Order Making Fed. R. Civ. P. 23

23    Applicable to These Proceedings, and Granting Related Relief

24    (ECF #1718)

25
```

Page 8

1    HEARING re Objection to Motion / Public Claimants' Joint

2    Objection to Independent Emergency Room Physicians' Motion

3    to Permit the Filing of a Class Proof of Claim (related

4    document(s)1629) filed by Kenneth H. Eckstein on behalf of

5    Ad Hoc Committee of Governmental and Other Contingent

6    Litigation Claimants (ECF #1720)

7

8    HEARING re Joint Statement of Debtors and Public Claimants

9    in Response to Movant Independent Emergency Room Physician's

10   Request to Adjourn [Related to ECF No. 1731] filed by

11   James I. McClammy on behalf of Purdue Pharma L.P.

12   (ECF #1743)

13

14   HEARING re Reply to Motion ER Physician's Motion for Class

15   Treatment (related document(s)1629) filed by Paul S

16   Rothstein (ECF #1731)

17

18   HEARING re Debtors' Omnibus Objection to Motions by Certain

19   Claimants for an Order Allowing them to Proceed with a Class

20   Proof of Claim and Certifying Class (ECF #1421)

21

22   HEARING re Public Claimants' Omnibus Objection to Motions

23   for Leave to File Class Proofs of  Claim (related

24   document(s)1330, 1362, 1211) filed by Kenneth H. Eckstein on

25   behalf of Ad Hoc Committee of Governmental and Other

```
                                                         Page 9

 1    Contingent Litigation Claimants (ECF #1431)

 2

 3    HEARING re Notice of Withdrawal of ER Physician's Motion

 4    Except as to Specifically Reserving Indiv Request to

 5    Participate in Ongoing Mediation for the Limited Purpose of

 6    Implementation of the Plan (related document(s)1629) filed

 7    by Paul S Rothstein on behalf of Paul S Rothstein

 8    (ECF #1746)

 9

10    HEARING re Motion to Authorize / Motion of Debtors for Entry

11    of an Order Authorizing Implementation of a Key Employee

12    Incentive Plan and a Key Employee Retention Plan

13    (ECF #1674)

14

15    HEARING re Objection to Motion For Order Authorizing

16    Implementation of a Key Employee Incentive Plan and a Key

17    Employee Retention Plan (related document(s)1674) filed by

18    Paul Kenan Schwartzberg on behalf of United States Trustee

19    (ECF #1708)

20

21    HEARING re Objection to Motion (related document(s)1674)

22    filed by Paul A. Rachmuth on behalf of Ad Hoc Committee on

23    Accountability (ECF #1709)

24

25
```

Page 10

1    HEARING re Memorandum of Law In Support of Ad Hoc Committee

2    on Accountability's Objection to Debtors' Motion to Pay

3    Bonuses (related document(s)1674) filed by Paul A.

4    Rachmuth on behalf of Ad Hoc Committee on Accountability

5    (ECF #1710)

6

7    HEARING re Debtors' Omnibus Reply in Support of Motion of

8    Debtors for Entry of an Order Authorizing Implementation of

9    a Key Employee Incentive Plan and a Key Employee Retention

10   Plan (related document(s)1674) filed by Eli J. Vonnegut on

11   behalf of Purdue Pharma L.P. (ECF #1742)

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1    A P P E A R A N C E S :

 2

 3    DAVIS POLK & WARDWELL LLP

 4         Attorneys for the Debtor

 5         450 Lexington Avenue

 6         New York, NY 10017

 7

 8    BY:  MARSHALL HUEBNER (TELEPHONICALLY)

 9         JAMES MCCLAMMY (TELEPHONICALLY)

10         CHRISTOPHER ROBERTSON (TELEPHONICALLY)

11

12    PILLSBURY WINTHROP SHAW PITTMAN LLP

13         Attorneys for Ad Hoc Non-Consenting States

14         31 West 52nd Street

15         New York, NY 10019

16

17    BY:  ANDREW TROOP (TELEPHONICALLY)

18

19    EISENBERG & BAUM, LLP

20         Attorneys for Ad Hoc Committee on Accountability

21         24 Union Square East

22         New York, NY 10003

23

24    MICHAEL QUINN (TELEPHONICALLY)

25
```

Page 12

1    JAMES RAND (TELEPHONICALLY)

2         Pro Se

3         C/O Court

4         White Plains, NY

5

6    ALSO PRESENT TELEPHONICALLY:

7

8    JOSEPHINE GARTRELL

9    LOWELL FINSON

10   SHEILA BRINBAUM

11   SARA BRAUNER

12   HAYDEN COLEMAN

13   SETH MEYER

14   CHRISTOHPER ROBERTSON

15   SARA ROITMAN

16   ALEX DRAVILLAS

17   JASMINE BALL

18   JEFFREY ROSEN

19   NATASHA LABOVITZ

20   EMILY F. MACKAY

21   MAURA MONAGHAN

22   DANIEL E. STROIK

23   HAROLD WILLIFORD

24   ADAM HABERKOM

25   MARC SKAPOF

```
 1   CHRISTOPHER PERKINS
 2   PETER ARONOFF
 3   MARC HIRSCHFEILD
 4   BROOKS BARKER
 5   MITCHELL P. HURLEY
 6   ANN LANGLEY
 7   KEVIN MACLAY
 8   ARIK PREIS
 9   CHRISTOPHER SHORE
10   MICHELE MEISES
11   CYRUS MEHRI
12   GERARD UZZI
13   HUNTER BLAIN
14   GREGORY JOSEPH
15   BENJAMIN KAMINETZKY
16   NICHOLAS PRETY
17   HARRISON CULLEN
18   KENNETH H. ECKSTEIN
19   JEREMY KLEINMAN
20   RAMON NAGUIAT
21   M. VIOLA SO
22   KATIE STADLER
23   JAMES STEMPLEL
24   BARBARA VAN ROOYAN
25   ANNE WALLICE
```

Page 14

1   CATRINA SHEA

2   DENNIS CHU

3   MARIA CHUTCHIAN

4   MEGAN KAPLER

5   MARA LEVENTHAL

6   PAUL ROTHSTEIN

7   DONALD CREADORE

8   CYNTHIA MUNGER

9   STEVEN SKALTE

10  KELSEY MCELVEEN

11  JAKE HOLDREIGHT

12  AISHA RICH

13  OREN LANGER

14  RONALD BASS

15  JOSHUA KARSH

16  SCOTT BICKFORD

17  ARTEM SKOROSTENSKY

18  DIETRICH KNAUTH

19  JEFFREY GARFINKLE

20  BRANDAN MONTMINY

21  SHARA CORNELL

22  PAUL SCHWARTZBERG

23  HAYLEY THEISEN

24  SCOTT FLAHERTY

25  NANCY GOLDIN

1              P R O C E E D I N G S

2              THE COURT:  Good morning.  This is Judge Drain.

3     We're here in In re Purdue Pharma, LP, et al.  This is a

4     completely telephonic omnibus hearing.  I'll ask you to

5     identify yourself and your client the first time that you

6     speak.  It's probably a good idea to do that if you speak

7     later to make sure that the court reporter can put together

8     your voice with your name and client.

9              There's one authorized recording of these

10    hearings.  It's taken by Court Solutions which provides a

11    copy of a daily basis to our clerk's office.  If you want to

12    order a transcript, you should contact the clerk's office to

13    arrange for the preparation of one.

14             So with that introduction --

15             MAN:  Sir, can you hear me?

16             THE COURT:  Yes.

17             MAN:  All right.  I'm in inmate at USP Terra Haute

18    and I'm -- me and my counsel are attempting the follow these

19    instructions.

20             THE COURT:  Okay.

21             MAN:  I have a telephonic court hearing before

22    Drain.  So --

23             THE COURT:  All right.  I am Judge Drain, sir.

24    Just keep listening --

25             MAN:  How do you do, sir?  Thank you very much for

1    accepting my call, sir.

2              THE COURT:  All right.  Very well.  All right.  So

3    with that introduction by me, I have the amended agenda

4    submitted by the debtors and I'm prepared to go down that

5    agenda.

6              MR. HUEBNER:  (Indiscernible), Your Honor.  Can I

7    be heard clearly and shall I proceed?

8              THE COURT:  Yes.  You can go ahead.

9              MR. HUEBNER:  Thank you, Your Honor.  Good

10   morning.  For the record, this is Marshall Huebner of Davis,

11   Polk & Wardwell on behalf of the Purdue debtors.

12              Your Honor, this is the first hearing since we

13   passed our one-year anniversary in Chapter 11 on September

14   15 of last year, and I did want to take just a minute to

15   note in particular there's something that was filed on the

16   docket a couple weeks ago that was not the subject of a

17   hearing but, in fact, is one of the most momentous

18   documents, frankly, that I think is related to this debtors

19   in a very long time.  And that document is the mediator's

20   report.  I do want to spend just a minute to advise,

21   formally, the Court and the public and they're exactly what

22   that represents because I actually think it is, in fact, a

23   momentous event in these cases.

24              THE COURT:  Okay.

25              MR. HUEBNER:  As requested in the mediator's

Page 17

1    report, the non-federal public claimants which is really the

2    states and the cities and the counties and the tribes have

3    agreed that all value received by them through these Chapter

4    11 cases will be exclusively dedicated to program designed

5    to abate the opioid crisis and cannot be used for any other

6    purpose other than small amounts used to fund administration

7    of the programs themselves and legal fees and costs.

8              As the mediator's report sets forth, to their

9    knowledge, this is the first time that states, territories,

10   native American tribes, and local governments have agreed to

11   be bound by such a commitment which will be embedded both in

12   the plan of reorganization and the confirmation order

13   approving such plans.  We have been talking since the very

14   early days of this case -- in fact, the very first day of

15   the case -- about what I think is a shared value of so many

16   people in this case, that 100 percent of the assets of

17   Purdue and hopefully a very substantial sum from the

18   shareholders as part of a global settlement will all be used

19   100 percent to address and abate the opioid crisis.

20             You have many people early in the case spoke about

21   their experience in tobacco and other settlements where they

22   were all sorts of scandalous articles later about what money

23   was used for and we have all, I think, have committed that

24   (indiscernible).  I can remember that this was not going to

25   have those attributes to it.  And that is now getting locked

1    in in the way that I think is really quite important.

2           A second thing that happened in that mediation

3    report and in phase one of the mediation which went on for

4    months with incredible good faith participation by so many

5    people under the guidance of our able mediators during a

6    national pandemic and times of almost unprecedented pain and

7    dislocation for our country in so many ways are that the

8    value allocation among the non-consenting groups, the ad hoc

9    groups, the MSG, and the native American tribes, including

10   culturally appropriate abatement programs for these

11   communities was also addressed and advanced very

12   substantially.  Again, with respect to abatement and local

13   participation mechanisms in determining what programs will

14   be funded and the NAACP and the non-federal public claimants

15   have also committed to continue to engage regarding concern

16   that that could lead to implementation.

17          And so on the government's side with a wide

18   variety, obviously, of sort of levels of government

19   (indiscernible) on the non-federal side, of political

20   perspectives of views about this case and situation -- a

21   truly set of agreements was reached.

22          The progress is actually no less remarkable on the

23   private side.  AS the Court knows, there were essentially

24   five groups of pods of private claimants that were sole

25   phase one mediation parties, and in essence, I think the

1   simplest way to summarize it is that agreements in principle

2   and then for the (indiscernible) of term sheets -- one was

3   done too late to get to a term sheet before the mediation

4   report was filed, that it's moving along -- were reached.

5   There are issues still to be resolved, but I think they are

6   more along the lines of implementation issues by and large.

7   Some of the issues are not tiny, but I think we will get

8   through them.

9           And there as well, for every group other than the

10  personal injury claimants themselves will be eligible to get

11  cash distributions through, and I quote, fair and equitable

12  trust distribution procedures developed by the personal

13  injury claimant's but subject to the consent of the non-

14  federal public claimants, (indiscernible) such to not to be

15  unreasonably withheld and approval by the Court as part of a

16  confirmed plan of reorganization with participation also

17  (indiscernible) the NES committee.  Other than the personal

18  injury claimants, the other groups have all agreed to

19  dedicate substantially all their allocations, again, to

20  abatement, specific to the opioid crisis.

21          And so this is really just a tremendous,

22  tremendous achievement for which many people who pulled, you

23  know, all-nighters, late-nighters, weekends, and, of course,

24  the mediators really do deserve to take a moment and pause,

25  because, you know, we had said all along that, you know,

1    intercreditor allocation was obviously not only a seismic

2    issue but a gating issue that simply had to be resolved

3    before we could turn to the next phase of the case and,

4    frankly, hopefully, as we discussed accelerate that next

5    phase appropriately.

6              As the meditator's report sets out and this will

7    be my last comment on the mediator's report, the term sheets

8    are conditioned on a plan of reorganization that includes

9    participation by the Sackler family, and three of the four

10   term sheets are also conditioned on the resolution of the

11   United States' claims on terms reasonably acceptable to the

12   non-federal public claimants.  And so as we always knew, you

13   know, one of the meta-issues in the case was intercreditor

14   allocation.  Another was, where was the money going to go.

15   And those issues have, in essence, have now been resolved,

16   subject to some final issues that I said before that need to

17   be addressed which now we're able to, I think, you know,

18   fully and hopefully completely to the remaining issues which

19   include involving -- resolving the claims of the Department

20   of Justice and, obviously, ideally, resolving the claims of

21   the state and the parties against the shareholders and going

22   to a resolution that has the type of sort of all-in global

23   structure that we've been talking about since the beginning.

24             So that is something that I think I did want to

25   pause on.  The second thing that I do want to pause on just

1    for a minute before literally turning to the individual

2    items on the agenda, is that the agenda letter itself is

3    actually another kind of noteworthy document.  As we

4    promised the Court on the first day of the case and I

5    believe that we have kept that promise at every hearing, you

6    know, we would all work like the dickens to narrow, to

7    resolve, to restructure and to hopefully obviate the need

8    for -- to resolve whatever issues we possible could.  As

9    this Court know from other experience, in many cases, you

10   have three, five, seven, nine contested matters on,

11   seemingly at each and every omnibus hearing in the Medica

12   case.  We've approached this case differently as we always

13   do and so, you know, the reason we filed so many amended

14   agenda letters in the days leading up to the hearing is

15   because we just don't stop until the hearing actually begins

16   trying to narrow and resolve things.

17          And so when you look at the agenda for today, at

18   least the way we see it, you know, we're not here litigating

19   five, six, seven, eight class claim motions which

20   originally, actually, was (indiscernible) to be what

21   September was going to be consumed with and now it's not

22   happening at all, not even one based on the recent

23   withdrawal.  We will potentially be going to be commencing a

24   multi-month extremely, complicated, difficult, involved

25   aggregate claims estimation process.  Our belief is that is

1    now obviated in its entirety and we hope for the duration of

2    the case.  With respect to the deals that were reached in

3    the phase one mediation, we might well have had to litigate

4    the injunction against multiple core constituencies in this

5    case.  Instead, while -- with no disrespect to the objectors

6    who of course we need to discuss and resolve, I think the

7    issues are fair, fair more narrow, certainly with the core

8    constituencies for the most involved in this case, then

9    frankly, we though they might in the beginning which itself

10   is sort of a negative milestone of sorts.  So with respect

11   to the wages motion, as the Court will hear when we get to

12   that, again, what is often very difficult and very

13   inflammatory and we all well understand why.  These are

14   complicated issues and words like, (indiscernible) and

15   compensation and, you know, millions are all terribly

16   difficult words in the context of any Chapter 11 case, not

17   just ones that are also politically and medically and --

18   sort of charged with sort health and human safety issues --

19   but all of them.

20           I think this Chapter 11 is difficult place where

21   many people are suffering losses but there as well, the

22   issues, frankly, with our core constituencies for today,

23   other than the U.S. Trustee -- we also do have the ad hoc

24   committee of accountability which is (indiscernible)

25   comprised of five individual people who have filed proofs of

Page 23

```
 1    claim against Purdue -- those issues (indiscernible) also
 2    consensual, which is itself is, I think, is another
 3    milestone.  And there's Coventry which is, you know, people
 4    as I said at one of the other hearings -- people sometimes
 5    forget that this is actually an operating pharmaceutical
 6    company that every day hundreds of people have to come to
 7    work and, you know, do dangerous, complicated things and,
 8    you know, sell products and make products in ways that are
 9    appropriate in the manufacturing facilities.  And, you know,
10    we are relentless in our quest to increase the value of the
11    company, to engage in rational economic transactions, and
12    the Coventry transactions are actually very large material
13    transactions that are completely uncontested in another way
14    that, I think, people are working to add value to the pot so
15    that we can, frankly, get all these professionals out of the
16    way and turn all of our meters off and start getting this
17    value out to the American people for the abatement purposes
18    that every single creditor constituency has agreed that it
19    is going to.
20            So with that, you know -- and forgive me, sir, a
21    ten-minute stage setting to mark or acknowledge our sort of
22    one-year anniversary.  We certainly have some very hard work
23    ahead.  I don't think anybody is sanguine about that.  The
24    issues that remain in front of us are complicated, and as I
25    sometimes say, you know, you still have river to cross but
```

```
 1    it doesn't mean that you should forget that you've already

 2    crossed a lake that's behind you.  And I feel a little bit

 3    that that's where we are.

 4             So with that, Your Honor, unless the Court has any

 5    questions, I'd like to turn the podium over to Mr. Robertson

 6    who I think will rip us through us to uncontested matters

 7    and then we can begin with the things that are contested.

 8             THE COURT:  Okay.  Well, before that, let me say a

 9    few things.  First, just a mechanical point.  I would urge

10    everyone, again -- not urge -- tell them to put their phones

11    mute so that those who are speaking can be heard and only

12    unmute yourself when it's time to speak.

13             Secondly, I do want to highlight the filing of the

14    mediator's report dated September 23, which of course, I

15    read.  First, I want to thank both mediators, Mssrs.

16    Phillips and Feinberg.  Obviously, they were well

17    compensated for their work, but their work was, looking at

18    it from afar, remarkable and of great benefit, I believe, to

19    the parties and interests, the estate, and the case in

20    general.

21             I also want to think the people who participated

22    in the mediation which was a very wide group and a diverse

23    group -- a remarkably diverse group.  The non-federal public

24    claimants include the ad hoc committee of governmental and

25    other contingent litigation claimants, the multi-state
```

1   governmental entity group and the ad hoc group of non-

2   consenting states.  With the exception of two states that

3   settled their issues with these debtors pre-bankruptcy, this

4   group of non-federal public claimants includes all of the

5   states in the union, as well as territories, as well as a

6   wide array of governmental entities that are not states.

7           The group also included a widely dispersed group

8   of personal injury claimants and their respective counsel,

9   third-party payors and insurance health carrier plaintiffs,

10  an ad hoc group of hospitals throughout the country, the NSA

11  committee, that is the ad hoc committee of NSA children,

12  insurance purchasers, Native American tribes, and in an

13  important observational role, the federal government, the

14  Department of Justice, and as included partway through the

15  mediation, public school districts and the NAACP.

16          It's rare -- perhaps unprecedented -- to have the

17  level of consensus that occurred in the mediation occur in

18  this country.  And it is due, not only to the mediators, but

19  also as the mediators recognized in their report, the good

20  faith and hard efforts of the parties that I've just listed.

21          I'm also gratified to see that the parties and

22  interests have acknowledge the importance of devoting

23  substantially all of the resources of these debtors to

24  abatement which uniquely in a bankruptcy case can be binding

25  for all time if a plan is confirmed.  That was a goal of key

1    parties in this case and me since the beginning of this case

2    and is a great achievement given the diverse interests

3    involved.

4         The work as Mr. Huebner noted is not complete but

5    the agreements main terms are hammered out by the mediators

6    and the parties are going forward in reliance on them.  So I

7    want to thank all of the parties for participating in a such

8    a constructive way in the mediation.

9         So why don't we then continue with the uncontested

10   matters that are on agenda item Roman numeral one.

11        MR. MCCLAMMY:  Good morning, Your Honor.  It's Jim

12   McClammy from Davis Polk on behalf of the debtors.  Can you

13   hear me?

14        THE COURT:  Yes.  Thanks.

15        MR. MCCLAMMY:  Excellent.  I have the first item

16   on the agenda.  That is the Scott County late filed claim

17   motion.  That had been resolved with thanks to the

18   consultation with the UCC and counsel for Scott County by

19   stipulation that presented to the Court on November 22nd.

20   There have been no further responses.  The overview of the

21   resolution is essentially that the motion is withdrawn

22   without prejudice allowing time for Scott County to see how

23   the plan is formulated, believing that with respect to how

24   the current agreements have shaped up and the expectation of

25   how the plan will be implemented, that there won't be a need

```
 1    for them to pursue their claim in the bankruptcy.  But if
 2    things do not, you know, play out that way, they reserve
 3    their ability to refile their motion with parties saying
 4    that there's any prejudice to them from having waited but
 5    all parties' defenses and positions are preserved as of the
 6    date of the filing of their late claim and can be contested
 7    at a later time should it be needed.
 8           Unless the Court has any questions on the form of
 9    the stipulation, we would request that the stipulation be
10    entered.  I'm not sure that I saw counsel for Scott County
11    among the parties on the line, but Mr. Coxwell for Scott
12    County did sign the stipulation.
13           THE COURT:  Okay.  Does anyone have anything
14    further to say on this matter?  All right.  I will so order
15    the stipulation.  This agreement, it appears to me, is one
16    of many that the mediation has helped along to avoid what
17    would otherwise be a contested issue.  If in fact the plan
18    does go forward with the abatement that have -- has been
19    agreed to by non-governmental entities in other respects is
20    confirmed, I would assume that since Scott County would not
21    have its own dollar claim but rather benefit like other
22    governmental entities and third parties from the expenditure
23    of the debtor's resources in abatement that motion really
24    loses much of its, if not all, of its meaning, that is the
25    motion for the claim to be deemed timely filed similar to
```

1    the treatment of the various class proof of claim motions

2    that have been adjourned sine die.

3              So you can email the stipulation in Word format to

4    chambers to be so ordered.

5              MR. MCCLAMMY:  Thank you very much, Your Honor.

6    With that, I will turn the podium over to Mr. Robertson who

7    will be handling agenda item number 2.

8              THE COURT:  Okay.

9              MR. ROBERTSON:  Good morning, Your Honor.  For the

10   record, Christopher Robertson, Davis, Polk & Wardwell on

11   behalf of the debtors.  Can I be heard clearly?

12             THE COURT:  Yes.  Fine, thanks.

13             MR. ROBERTSON:  Thank you, Your Honor.  This next

14   three items on the agenda today are related.  They are the

15   Coventry facility sale motion, the motion to shorten notice

16   with respect to the sale motion, and the related motion to

17   seal.  These three motions are unopposed.  We filed a

18   certificate of no objection with respect to the sale motion

19   and the motion to seal on Monday the 28th at docket number

20   1735.  A revised form of sale order which addresses informal

21   comments from two parties was attached as an exhibit to the

22   certificate of no objection.

23             If I may, Your Honor, very briefly.  Debtor Rhodes

24   Technologies operates an active pharmaceutical ingredient or

25   API manufacturing facility in Coventry, Rhode Island.  The

Page 29

1   Coventry facility sale motion describes a proposed

2   transaction whereby the debtors would sell the Coventry

3   facility and related assets to an affiliate of Nuramco, LLC

4   and would enter into a long-term API supply agreement with

5   Nuramco.

6          As described in the Coventry facility sale motion

7   and the accompanying declaration of Mr. Rafael Schnitzler of

8   PJT Partners who is present telephonically this morning as

9   well, the debtors believe that the transaction will provide

10  the debtors with a stable and secure source of critical APIs

11  at substantially below current cost, while unburdening their

12  estates from the costs associated with the ownership and

13  operation or potential closure of the Coventry facility.

14         The debtors conducted an extensive private

15  marketing and negotiation process and believe that the

16  proposed transaction represents the best available offer, is

17  value maximizing, and it's in the best interest of the

18  debtors and their estates.

19         Your Honor, I believe it makes sense to turn to

20  the motion to shorten, docket number 1875, at this time.

21  For the reasons set forth in that motion, the debtors

22  believe that cause exist to have the sale motion heard on

23  16-days notice and that the notice of the sale motion was

24  timely and sufficient under the circumstances.  No parties

25  have objected to the adequacy of notice.  I'm happy to

1     address any questions that Your Honor may have, and

2     otherwise, we respectfully request that the motion to

3     shorten be granted.

4              THE COURT:  Well, on the notice that was given, in

5     addition to noticing the party of interest under the case

6     management order, did you provided notice of the motion to

7     counterparties, to the executory contracts proposed to be

8     assumed and assigned?

9              MR. ROBERTSON:  Your Honor, yes, we did.  We

10    provided notice to all contract counterparties, all parties

11    on the parties of interest list.  We also provided notice to

12    all know claimants of Rhodes Technologies.  We didn't serve

13    the full, you know, sort of motion and declaration but we

14    served a notice of hearing.  We also published notice in the

15    Wall Street Journal.

16             THE COURT:  And did you serve governmental

17    entities that would be affected by the order including the

18    provisions providing for transfer of authority to

19    manufacture these products?

20             MR. ROBERTSON:  Yes, we did, Your Honor.  We

21    served notice on all regulatory entities that we believe

22    have any interest in the Rhodes Tech facility and also on

23    sort of the major governmental entities listed in the motion

24    -- DOJ, EA and the like.

25             THE COURT:  All right.  Okay.  Does anyone have

1    anything to say on the motion to shorten which would shorten

2    the time for the hearing on this motion by five days?  All

3    right.  I will grant the motion.  As most of you know unlike

4    other judges, I normally will not enter these types of

5    motion to shorten on an ex parte basis if I believe that

6    there might be a basis -- a good basis -- to shorten.  I'll

7    schedule the hearing on the motion to shorten for the same

8    day as the hearing on the request for underlying relief to

9    give parties and interests an opportunity to say that the

10   matter doesn't need to be heard on a shortened notice.

11            No one has objected here.  Based on my review of

12   the motion, the motion does establish sufficient cause to

13   shorten the notice by a handful of days.  So you can email

14   that order to chambers.

15            MR. ROBERTSON:  Thank you, Your Honor.  Turning to

16   the Coventry facility sale motion and the motion to seal,

17   rather than belabor the Court with a further recitation of

18   our papers, I'm happy to address any questions that Your

19   Honor may have.  Otherwise, as these motions are unopposed,

20   we would respectfully request that each be granted.

21            THE COURT:  Okay.  Well, let me deal with the

22   sealing motion first.  Does anyone have anything to say on

23   it, including the U.S. Trustee?  Okay.

24            I have reviewed the redacted and unredacted motion

25   and based on that review coupled with the absence of an

```
 1    objection, I've concluded that the limited redactions that

 2    are sought here are consistent with Section 107(b) of the

 3    bankruptcy code and Rule 9018.  They're targeted directly at

 4    what would appear to me to be properly protected

 5    confidential commercial information that if disclosed would

 6    be detrimental to the debtor's business and the ongoing

 7    relationship with the purchaser.  So I'll grant the motion

 8    to redact and to file the redacted version under seal.

 9              As far as the underlying motion is concerned,

10    you've answered my question on notice.  I want to focus on

11    the closing date.  When do the parties contemplate at this

12    point in the calendar closing this transaction?

13              MR. ROBERTSON:  So, Your Honor, the APA provides

14    that the closing date cannot be before January 1st of next

15    year without the consent of the parties and my understanding

16    is that the target closing date is on or around January 1.

17              THE COURT:  Okay.  And in the meantime, the

18    parties are working on a transition services agreement or

19    working under one?

20              MR. ROBERTSON:  They are working on the TSI.

21    That's correct.

22              THE COURT:  Okay.  And there have no glitches with

23    that so far?

24              MR. ROBERTSON:  None that I'm aware of, Your

25    Honor.  Counsel to the purchaser is also on the line if he
```

1    has different views but none that I'm aware of.

2              THE COURT:  Okay.  And as I understand it,

3    although the assumption and assignment of contracts would be

4    approved as part of the order that you would be submitting

5    to me after this hearing if I grant the motion, you're

6    actually providing a cure notice and a notice of specific

7    contracts later in time around the period of the closing

8    date.  Correct?

9              MR. ROBERTSON:  That's correct.  I'm happy to give

10   more color on that if it's helpful.

11             THE COURT:  Okay.  Why don't you go through that?

12   I just want to make sure I understand the mechanic.  I think

13   I do, but I just want to make sure how it's supposed to

14   work.

15             MR. ROBERTSON:  Sure.  Certainly.  So there are

16   three buckets of contracts.  There are the sellers pre-

17   petition contracts that are eligible to be assumed and

18   assigned to the purchaser.  There are certain excluded

19   contracts which just simply cannot be assigned to the

20   purchaser which are scheduled under the APA.  And there are

21   post-petition contracts, all of which are going to assigned

22   to the purchaser.

23             The debtor sent the notice attached to Exhibit C

24   to the sale motion to all counterparties, the pre-petition

25   contract that could be or might be assumed in the sign, and

1    also to all counterparties that post-petition contracts.  So

2    those are all the contracts of buckets one and three that I

3    mentioned but not bucket two, the excluded contracts.

4         Proposed cure amounts for notice for all pre-

5    petition contracts, counterparties had until the assumption

6    of the assignment objection deadline which was September

7    27th -- I believe that was Sunday -- at 4:00 p.m. to raise

8    objections the cure amounts.  We received one informal

9    objection in the amount of about $6,000 which we resolved

10   with the counterparty.  Those counterparties did, Your

11   Honor, receive, you know, sort of full notice for an

12   assumption and assignment of contracts.  They had more than

13   14 days before today's hearing notice in that regard.

14        And then before the closing date, the purchaser

15   can choose which contracts -- which pre-petition contracts

16   that are not excluded contracts -- it will take assignment

17   of.  Within five days or five business days after the

18   closing date, the debtors will send a notice and file the

19   notice with the Court informing the counterparties to the

20   contracts that have been selected as assigned contracts as

21   their contracts have indeed assumed and assigned.  That's in

22   paragraph 26 of the proposed order.

23        Then there's a second date under the APA which is

24   called the designation deadline -- 60 days post-closing or

25   the effective date of the plan if that comes sooner which

1    kind of gives the purchaser a second opportunity to

2    designate contracts that weren't designated as assigned

3    contracts (indiscernible) closing date as assigned contracts

4    and they'll be another notice, you know, the same as the

5    first one, essentially, published -- or I should say filed

6    with the Court and served on the contract counterparties

7    notifying them that their contracts have been selected.

8             I believe that -- you know, that is an overview of

9    the process as we see it.

10            THE COURT:  Okay.  So to summarize then, the

11   motion seeks and the order would provide that I am approving

12   the assumption and assignment of the contracts subject to

13   the procedure that you just set forth, i.e., it may be that

14   certain of those contracts would not be assumed, ultimately,

15   and assigned because the purchaser has the right up to the

16   designation date to included or exclude from that basket.

17   But I am making a finding -- you're asking me to based on

18   the absence of objection after due notice -- that the

19   purchaser is provided adequate assurance of future

20   performance and the cure claims have been fixed as

21   identified by the debtors to the contract counterparties.

22   Correct?

23            MR. ROBERTSON:  That is exactly correct, Your

24   Honor.

25            THE COURT:  All right.  Okay.  All right.  I guess

1    one last question.  I think I (indiscernible) too.  There

2    have been no higher and better offers expressed and there's

3    no one on the phone who wants to make a higher and better

4    offer for this set of assets?

5            MR. ROBERTSON:  Your Honor, I can confirm that we

6    have not received any higher or better offers either before

7    filing the motion or subsequently.  Obviously, you know, I

8    will allow others to speak up if there's anyone on the

9    phone.

10           THE COURT:  Okay.  All right.  I will grant the

11   motion approving the sale as set forth in the attached

12   agreement as well as the (indiscernible) related long-term

13   API supply agreement as well as authorize the assumption and

14   assignment or assignment as applicable of the executory

15   contracts on expired leases as we just discussed.

16           The sale motion and supporting declaration by the

17   debtor's financial advisor Mr. Schnitzler coupled with the

18   absence of any objection to this motion that has not

19   resolved by the proposed revised order established that this

20   is the proper exercise of business judgment in the best

21   interests of the debtors and their estate -- estates,

22   including in respect to the seller Rhodes Technologies.

23   Further, although it's not clear to me that there really are

24   any interests or liens that were on this property or these

25   assets that would be protected by 363(f), I'm prepared to

1    make the 363(f) findings and enter the 363(f) portion of the

2    order given the widespread notice and there being no

3    objection.  Finally, based on the declaration in the motion

4    and again the fact that the motion's unopposed, I can make

5    the other findings in the order including to respect of

6    Section 363(m) assuming of course that the sale actually

7    closes and the parties go forward with -- in related

8    transaction for the manufacturing agreement.

9            The free and clear provisions of this order are

10   fine with me given, again, the wide notice and the lack of

11   objection.  So I have the blacklined proposed order which

12   was all statements filed by a couple of parties -- contract

13   parties.  Are there other proposed changes to the order?

14            MR. ROBERTSON:  No, Your Honor.  I don't believe

15   so.

16            THE COURT:  Okay.  So you can email that order as

17   well as the sealing order to chambers and they will be

18   entered.

19            MR. ROBERTSON:  Thank you, Your Honor.  At this

20   time, I would cede the podium back to Mr. McClammy to

21   address the preliminary injunction extension motion.

22            THE COURT:  Okay.  Very well.

23            MR. KAMINETZKY:  Actually, Your Honor, this is

24   Benjamin Kaminetzky, Davis Polk, and I'll be doing the

25   preliminary injunction motion.  Can you hear me okay?

1              THE COURT:  I can hear you fine.  I'm going to

2    suggest that we change the order, though, slightly in the

3    agenda.  We had down on the agenda the ER physician class

4    claim motion.  The movant in respect to that motion

5    yesterday filed a notice of withdrawal of the motion and it

6    expressed a desire to participate in the mediation or

7    reservation of rights to try to participate in the

8    mediation, but given their withdrawal of the motion, I don't

9    think we should keep people on the phone who were just for

10   that.  So unless I'm missing something, the withdrawal, to

11   me, obviously move the motion and I just want to confirm

12   that on the record before we move to the two contested

13   matters -- the preliminary injunction and the

14   (indiscernible) motion.

15             MR. KAMINETZKY:  I will turn it back to Mr.

16   McClammy for that.  Go ahead.

17             MR. MCCLAMMY:  Your Honor, this is Jim McClammy

18   for the debtors.  The debtors would agree with that, but I

19   understand Mr. Rothstein is probably on the phone for the ER

20   physician and if there's anything to address after speaks I

21   would be grateful to have the opportunity to do that.

22             THE COURT:  Okay.

23             MR. ROTHSTEIN:  Your Honor, this is Paul Rothstein

24   on behalf of Dr. Michael Masiowski.  Just on his behalf now,

25   we did file last night that notice of withdrawal except as

1    to a certain request that was contained in the original

2    motion.  So from a procedural standpoint, I feel that we

3    preserve the issue of allowing us to participate in the

4    mediation if the Court so deems that appropriate.  We think

5    it's appropriate for Dr. Masiowski to participate for the

6    following reasons.

7            Number one, the hospital's and emergency room

8    physicians, although a lot of people are not aware of that,

9    are separate entities.  The emergency room physicians are

10   the frontline providers.  Given the mediation report in

11   paragraph number 7 -- and this is my second point -- given

12   the mediation report, it indicates that right now the

13   mediation is going into the phase of implementation.  There

14   is no better person than an emergency room physician to be

15   able to participate directly with the Court approval in the

16   implementation of the program.

17           Number three, Dr. Masiowski has been an emergency

18   physician for more than 20 years.  He has dealt with, as we

19   indicated, opioid related conditions.  He has a significant

20   knowledge on all the issues related to abatement for opioid

21   related conditions and having him participate in the actual

22   implementation program would be an excellent contribution.

23           Now, number four as to the issues dealing with

24   both the debtor in possession and the creditors -- unsecured

25   creditor committee concern that this may open up a

1    floodgate.  We disagree for a number of reasons.  Our

2    original class claim was filed in June.  Nobody else has

3    come forward to request what we're requesting as relief.

4    And most importantly, nobody who would request relief at

5    this point in time would be able in our perspective to be

6    able to meet the credentials that we have, and I compare

7    this the education context.  My wife who happens to have a

8    doctorate in education is a retired educator who has taught

9    teachers, who has taught professors how to teach -- when she

10   was a principal in her situation, the first frontline people

11   were the teacher and here, the first frontline people are

12   the ER, just as she would always be consulting with them in

13   order to make sure that the education of the student is

14   maximized as the teacher is the most critical role, here,

15   the emergency room physician would play a critical role in

16   regards to how programs are going to implemented, be able to

17   present information in a formal way if this Court approves

18   the participation, where we know that administrative issues

19   are going to be dealt with independently from the hospital

20   because the emergency room physician, Dr. Masiowski, has the

21   knowledge and the expertise to do that.

22           So we don't feel it's duplicative.  We don't feel

23   that it's excessive.  We don't feel that we're just a johnny

24   come lately, given where the mediation is.  The mediation

25   had said that everything was done.  The implementation was

Page 41

1     done and so forth and so on.  Obviously, we want to be here

2     now.  We're not requesting a reallocation of any resources.

3     That was the guts of the mediation.  We understand the based

4     on when our papers were filed, we were not able to

5     participate because we came in too late and that's why we

6     withdrew the motion.  We were convinced of that by the

7     committee along with debtors in possession.  But we feel

8     that this narrow request is appropriate and is going to help

9     in terms of implementing the program through this Court.

10              That's all I have to say.

11              THE COURT:  Okay.  Well, the withdrawal is not

12    conditioned on my granting that request, though.  Correct?

13              MR. ROTHSTEIN:  That's correct.

14              THE COURT:  Okay.  I am not going to grant that

15    request for the following reasons.  First, the mediation or

16    at least the allocation mediation was scheduled for a set

17    time and in fact that time is supposed to expire under the

18    mediation order today, the 30th September.  The parties to

19    the mediation had engaged in that mediation over months.  To

20    bring a new party into it at this point, I believe, is not

21    appropriate.  I also believe that you are misreading the

22    mediation report which discusses and actually uses the word

23    implementation once in paragraph 4 where the mediators state

24    that the NAACP, whom I did, on a consensual basis, with all

25    the parties to the mediation and with the agreement of the

Page 42

1    mediators, weeks ago, belatedly include in the mediation as

2    a non-claimant in the case but with its unique position in

3    our society -- again, the mediation report states, quotes,

4    the NAACP and the non-federal public claimants are also

5    committed to continuing to engage regarding concerns about

6    the equitable implementation of the abatement program in

7    each state.  This discussion has not ended and will

8    continue.

9            The mediators then say that they also will

10   continue to try to negotiate with the public school

11   districts and will seek a resolution between the public

12   school district and the non-federal government entities.

13   Again, that group joined a little bit later, although,

14   again, several weeks ago.  But I think to add another party

15   to the mediation at this point given the state of the

16   mediation is not appropriate.

17           On the other hand, I will note two things.  First,

18   although your client has a self-sustaining ER practice, the

19   hospitals also have emergency rooms and should be sensitive

20   to the concerns of abatement in the emergency room context.

21   Secondly, there is nothing to stop your client from coming

22   up with a list of what he believes are improper abatement

23   terms of procedures and suggest those to the hospital's

24   group or the creditor's committee and if they make sense,

25   I'm sure they get a hearing.

1         But I don't want to open up again to a new party

2    of one at this point a remarkably successful and

3    comprehensive mediation that took place over months at

4    significant cost to the estate and that resulted in

5    significant benefit to the estate.  So I'm not by any means

6    denigrating your client or the work that he does.  I just

7    think that he needs to make his concerns known in a

8    different way, not in a formal mediation.  And I suggest

9    that that way be communicating with the hospital's group and

10   the official creditor's (indiscernible).

11        So why don't we turn, then, back to the motion to

12   extend the preliminary injunction.

13        MR. KAMINETZKY:  Thank you, Your Honor.  Once

14   again, this is, if it please the Court, Benjamin Kaminetzky

15   from Davis, Polk & Wardwell on behalf of the

16   (indiscernible).  Can you hear me clearly?

17        THE COURT:  Yes, although I'm getting a little bit

18   of feedback so again I'm going to ask people who are --

19   whose phones are not mute, put them on mute so that we don't

20   get an echo or side noises.

21        MR. KAMINETZKY:  So I'll address the debtor's

22   motion to extend the preliminary injunction until March 1st,

23   2021.

24        Your Honor, three objections were filed.  I think

25   it's fair to characterize two of those objections as largely

1      pro forma.  A third, by the self-styled ad hoc committee on

2      accountability unfortunately requires a brief response.

3                  That said, the debtor's position is fully set

4      forth in its papers, including the reply brief that we filed

5      on Monday night.  I know Your Honor has read those papers

6      carefully so I'll be keeping my opening remarks short and

7      then end reserve the right to offer any appropriate rebuttal

8      if necessary.

9                  Simply put, Your Honor, the case for a preliminary

10     injunction today is even stronger than it was when the Court

11     last extended it in March.  The preliminary injunction

12     halted the value destructive litigation chaos race to the

13     courthouse that had reigned through the first weeks of

14     debtor's bankruptcy.  It is the foundation for the orderly,

15     productive, and cooperative efforts that have led to the

16     progress made in these cases over the past year, and in

17     particular, over the past months, and with respect to the

18     mediation as we've discussing, over the past weeks.  And the

19     wisdom of granting the preliminary injunction has been

20     affirmed by Chief Judge MaMahon on appeal.

21                 Now, Your Honor, just a few of the key

22     achievements since March 2020 when the injunction was

23     extended.  They include, number one, as we've been talking

24     about today, a successful mediation.  As the mediator's

25     reported, the core constituencies have reached agreement in

1    principle that resolved in large part the critically

2    important issue of allocation of the value of the debtor's

3    estate, a truly monumental achievement exceeding

4    expectations.

5            Two, the ongoing exhaustive information sharing.

6    The debtors have continued to produce.  They have produced

7    millions of pages of documents and due diligence materials

8    to key creditor constituencies and have published on the

9    docket year another multi-hundred-page report by the

10   debtor's special committee detailing, among other things,

11   non-cash transfers to or for the benefit of the Sacklers.

12           Number three, the ongoing searching discovery of

13   the Sacklers and their related entities.  The Sacklers and

14   associated entities have now produced over 3 million pages

15   of discovery and discovery is continuing against them and

16   those entities.

17           Number four, centralization of claims against the

18   estate.  AS Your Honor's aware, we successfully completed

19   the debtor's unprecedented noticing plan which resulted in

20   the filing of approximately 613,000 claims against the

21   estate.  In addition, there's the ongoing compliance with

22   the voluntary injunction under the supervision of the

23   monitor.  The debtors and their professionals continue to

24   work diligently to address observations and recommendations

25   contained the monitor's recent reports.

1          Number six, continued engagement with key

2     constituencies on post-emergent corporate and governance

3     structures to enable the timely filing of a consensual plan

4     of reorganization.  And finally, significant progress on

5     many other important initiatives including securing court

6     approval to fund HRT's development of the low-cost, over-

7     the-counter naloxone opioid overdose rescue medication that

8     has the potential to save many, many lives.

9          Now all of the immense and hard-won progress so

10    far, quite frankly, would likely have impossible with the

11    protection afforded by the preliminary injunction.  It is

12    injunction that steered and focused parties with vastly

13    divergent interests towards a value maximizing consensual

14    resolution of the debtor's Chapter 11 cases.  And extension

15    of the injunction is now critical to bring this thing home,

16    to providing the space necessary for all parties and

17    interests to work to bring these cases to a successful

18    conclusion.  Hard work surely lays ahead but there can no

19    doubt at this point that this work can be accomplished only

20    under the continued protection of an extended preliminary

21    injunction.

22          Now perhaps the most telling proof of this Court's

23    wisdom in entering the initial preliminary injunction last

24    year and extending it in March is that the claimants

25    continues to be largely in agreement that the preliminary

1    injunction should be extended today.  No one -- no one --

2    has objected to the continuation of the preliminary

3    injunction with respect to the debtors.

4           No one has objected to the continuation of the

5    preliminary injunction with respect to any of the related

6    parties except for certain members of the Sackler family.

7    And the vast majority of parties and interests have not

8    objected to the extension of injunction even as to those

9    members of the Sackler families.  This broad consensus is no

10   doubt a reflection of the significant time and resources

11   that the debtors and many other estate constituencies have

12   invested in recent months to lay the foundation for success

13   of these Chapter 11 cases.

14          Now, Your Honor, I'd like to turn then briefly to

15   the three objections that have been filed which in my view

16   are just as powerful on indicator of the continuing wisdom

17   of the injunction.  First, the Tennessee plaintiffs filed a

18   pro forma objection to the continued injunction of their

19   claims against one member of the Sackler family and that's

20   Dr. Richard Sackler.  These plaintiffs Your Honor will

21   recall have objected to the injunction twice before,

22   including on jurisdictional grounds.  The Tennessee

23   plaintiffs appealed Your Honor's injunction orders.  Chief

24   Judge McMahon rejected their arguments and confirmed in a

25   nearly 40-page opinion back in August.

1            In their short objection, they concede that it is,

2      in their words, quote, a virtual certainty, unquote, that

3      this Court will grant debtor's motion to extend and have

4      also laid their right to present argument at the hearing.

5      In light of that, I'm going to simply move on to the next

6      objection.

7            Now, the second objection was that of the non-

8      consenting states.  They filed a two-page limited objection

9      to the injunction insofar as it bars them from litigating

10      against nine members of the Sackler families.  In that

11      pleading, they also objected to the debtor's proposed order

12      which allowed any party complying with the injunction to

13      move in December to shorten the injunction as to members of

14      the Sackler families.  The non-consenting states proposed an

15      alternative offramp structure for the members of their

16      group.

17            As (indiscernible) matter, Your Honor, I'm happy

18      to report that the non-consenting states objection to the

19      form of order has been resolved through discussion and

20      certain revisions to the proposed order.  The revised

21      proposed order is attached to my reply declaration as

22      Exhibit A and we've included a blackline of that order as

23      Exhibit B.

24            The revised proposed order permits those parties

25      who are bound of are voluntarily abiding by the preliminary

1   injunction to move in either December or January to

2   terminate or shorten the injunction with respect to members

3   of the Sackler families.  The debtors and it appears most of

4   the parties and interests believe that the injunction

5   through March 1, 2021, is fully justified and should be

6   entered, but this agreed upon procedure provides an

7   efficient and appropriate mechanism for raising

8   particularized concerns a party might have with continuing

9   the injunction as to those certain Sacklers and an

10  opportunity for the debtors and others to respond to address

11  any concerns as appropriate before the Court reevaluates

12  whether an injunction should continue.

13          Now, with respect to their objection to extending

14  the preliminary injunction for the nine Sacklers, the non-

15  consenting states simply reiterate through incorporation by

16  reference the arguments they advanced in prior briefing and

17  assert that the preliminary injunction, quote, interferes

18  with enforcement of state law and harms the public, unquote.

19  This Court of course has already carefully weighed and

20  rejected these arguments multiple time over.

21          The non-consenting state have all but conceded

22  that a continuation of the injunction in its current form is

23  appropriate and essential to success of these cases.  The

24  non-consenting states do not grapple with the arguments and

25  evidence the debtors advance in their moving briefs.  Again,

1    it's a four-page pleading and they merely incorporate by

2    reference.  They do not dispute the preliminary injunction

3    provided the space necessary for key estate constituencies,

4    including themselves -- the non-consenting states -- to

5    obtain extensive discovery from the Sacklers and their

6    affiliate entities.

7             Finally, and this is most telling, the non-

8    consenting states do not dispute that an extended

9    preliminary injunction covering the nine Sacklers will be

10   critical to enabling negotiations and resolution of the

11   amount and contours of the Sackler contribution to the

12   debtor's estates.  It simply is inconceivable that

13   productive discussions with the Sacklers on this critical,

14   perhaps last, issue can occur with the noise and disruption

15   and race to the court that the preliminary injunction has

16   prevented.  For all of the reasons, the non-consenting

17   states objection should be overruled.

18             Finally, the objection of the so-called ad hoc

19   committee on accountability.  The debtors were frankly taken

20   aback by this filing and it's hard to know where to begin.

21   As best as the debtors can tell, the ad hoc committee on

22   accountability which first appeared in these cases in May

23   2020 and represent five persons, none of the whom the

24   debtors, based on the records, believe have ever actually

25   sued the Sacklers demand that the preliminary injunction be

1    modified as to permit an identified and amorphous, quote,

2    credible and public test of the Sacklers' allegations,

3    unquote.

4            Although admittedly unclear, I assume that this

5    means what they're looking for is allowing certain civil

6    litigation through trial of some sort of claims against

7    members of the Sackler family.  Their arguments are largely

8    untethered to the applicable legal standards.  To the extent

9    they actually do address the elements of the preliminary

10   injunction standard, such as the likelihood of successful

11   organization, the objection makes a series of arguments

12   attacking -- what seem to be attacking or making objections

13   to a plan of reorganization that hasn't been filed yet.

14           These arguments are wrong and utterly irrelevant

15   to the question before the Court today.  There is no plan on

16   file and indeed, negotiation among the parties, including

17   members of the Sackler families, must continue before any

18   plan could be filed.  As the district courts head, the very

19   fact that settlement discussions are continuing provides

20   support for the finding that continuing the injunction

21   increases the likelihood of a successful reorganization.

22   And that was a quote from page 16 of Judge McMahon's

23   opinion.  And this is plainly satisfied here.  The ad hoc

24   committee on accountability does not address and thus

25   concedes irreparable harm and the balance of equities,

Page 52

1    prongs to the preliminary injunction standard.

2              Finally, the remainder of their objection evinces

3    a basic lack of familiarity with what has transpired in

4    these Chapter 11 cases, recycles inflammatory arguments that

5    have been advanced and rejected repeatedly in the past, and

6    goes so far as to disparage this Court and its motives.  To

7    be honest, we really didn't know what to do with all of that

8    and we would perhaps have preferred to just let the

9    objection or this part of the objection stand and fall on

10   its own.  But the debtors as stewards of this reorganization

11   recognize and deeply appreciate that confidence and accurate

12   information regarding the conduct of these Chapter 11 cases

13   is important.  For that reason, the debtors attempted in

14   their reply brief to set the record straight with respect to

15   many, although by no means all, of the outright falsehoods

16   contained in the ad hoc committee of accountability's

17   objection.

18             Now, just a subset for today, Your Honor.  The ad

19   hoc committee on accountability argues that the reason the

20   preliminary injunction protects the Sacklers is -- and this

21   is quote -- because they are billionaires and they argue

22   that there is strong and growing public concern that these

23   cases are going run not for the benefit of the creditors or

24   the public but instead for the Sacklers.  The debtors have

25   proved time and time again that this is utterly and

1   absolutely false.  The debtors sought the preliminary

2   injunction and this Court granted the preliminary injunction

3   to maximize value and protect the debtors, these Chapter 11

4   cases, and all parties and interests.

5           The preliminary injunction was not sought or

6   entered to shield members of the Sackler families from

7   anything.  From day one, the debtors in conjunction with key

8   constituencies have worked extremely hard to preserve

9   potentially billions of dollars in value that can be put to

10  productive use ameliorating the opioid crisis, and the

11  simple proof of the fact that the preliminary injunction is

12  intended to protect the debtors, not the Sacklers, is that

13  many parties who have no interest in protecting the

14  Sacklers, just the opposite, such as the unsecured creditors

15  committee, continued to support the injunction.

16          They also claim that the preliminary injunction in

17  these cases have prevented estate constituencies from

18  getting answers that the justice system would otherwise

19  provide, and again, I'm quoting, at official committee of

20  victim representative or an individual examiner is required,

21  quote, to hold the Sacklers accountable.  These assertions

22  are also just plain wrong.  Put simply, these Chapter 11

23  cases have facilitated information sharing in a way that no

24  civil litigation in diaspora throughout the country could do

25  or have ever done.

1              The Sacklers and their associated entities, for

2      example, have already produced about a half-a-million

3      documents totally 3 million pages in these cases alone.

4      Thus, the suggestion that another committee or an

5      independent examiner is somehow necessary in these cases is

6      almost offensive to the numerous parties, the debtors, the

7      UCC, and many state's attorney generals in both the

8      consenting and non-consenting states who have been working

9      for many, many months and have invested tens of million of

10     dollars and countless of hours analyzing, assessing, and

11     looking at potential claims against the Sacklers and

12     evaluating information relevant to any third-party release

13     that may be included in an ultimate plan of reorganization.

14             And finally, the argument that a public trial is

15     necessary to find, quote, answers or to be transparent has

16     been rejected multiple times for good reason.  First, the

17     proof is what has happened in this case to date.  The

18     parties have obtained in discovery these cases much more

19     than they could have obtained in civil litigation.  Ending

20     the injunction and restarting the civil litigation would

21     actually be a huge step backwards in transparency and

22     accountability.

23             Second, as this Court has recognized, it hardly

24     follows that the outcome of a public trial will resoundingly

25     be accepted as, quote, the truth.  Your Honor pointed to the

1    Triangle Shirtwaist Factory fire trial and the Chicago Black

2    Socks trial as examples, and I'm sure we can think of highly

3    public and frankly highly political trials where reasonable

4    people continued to disagree about whether the verdict was

5    correct or just.

6            And third, the outcome of a trial is always

7    uncertain, as Your Honor also notes last year.  Injunction

8    preserves the estate value by allowing the parties to

9    continue to conduct discovery regarding estate or other

10   claims against the Sacklers and continued to explore the

11   parties can reach a largely consensual negotiated resolution

12   of such claims.

13           I will address just one other assertion.  The ad

14   hoc committee on accountability says that -- and this is a

15   quote -- it appears that the Court has placed a thumb on the

16   scale in favor of the Sacklers.  This assertion is

17   absolutely false and inappropriate.  Far from placing a

18   thumb on the scale in favor of the Sacklers, the Court has

19   repeatedly emphasized that the Sacklers are not getting a

20   free pass in these Chapter 11 cases.  The Court has also

21   made clear the expectation that the debtors, UCC, and others

22   will be doing the utmost to maximize the value of the

23   debtor's estates and distribute and agree on a reasonable

24   allocation of how it is to be distributed.  That's a quote

25   from Your Honor from the March 18th hearing.  The debtors

1    correct a number of other mischaracterization or outright

2    falsehood as to the Court's observation and ruling their

3    reply brief.

4          Let me conclude where I began.  All of the success

5    I have mentioned have been made possible in large part by

6    the wrested from the value destruction litigation free-for-

7    all afforded by the preliminary injunction.  These cases,

8    however, are now entering what will likely prove to be

9    decisive phase.  There's absolutely no reason today to alter

10   what has been the status quo for a year now and every reason

11   to keep the injunction in place through March 1st, 2021.

12         With that, unless the Court has any questions, I'm

13   happy to turn the podium over.  I'm not sure -- Your Honor,

14   who would you like to hear from next?  Would it be those

15   supporting the injunction or would it be Mr. Troop?

16         THE COURT:  I think it probably makes sense to

17   hear from the non-consenting states depending on -- and then

18   the other objector -- depending on how that goes.  I'm happy

19   to hear from those who support the injunction in reply, but

20   I think I should hear from the objectors at this time.

21         MR. TROOP:  Thank you, Your Honor.  This is Andrew

22   Troop from Pillsbury, Winthrop, Shaw, Pittman.  Your Honor,

23   I am relegated to my cell today so I hope that you're able

24   to hear me clearly.

25         THE COURT:  You're coming through clearly.

Page 57

1    Thanks.

2              MR. TROOP:  Thank you, Your Honor.  Your Honor, I

3    find it interesting, at best, that the non-consenting states

4    get hoisted by Mr. Kaminetzky for being efficient and

5    focused in connection with both this case.

6              The bottom line when you strip everything away

7    from Mr. Kaminetzky's position and arguments is that there

8    is a strong belief by the debtors that it is impossible vis-

9    à-vis the Sacklers for other parties and interests and

10   frankly the Sacklers to walk and chew gum at the same time.

11   And they draw the conclusion that, but for the cessation of

12   litigation, there would have not been or could not have been

13   success, progress -- pick whatever word Mr. Kaminetzky used

14   -- in terms of where we've gotten today.

15             Almost a year ago, Your Honor, you and I have a

16   colloquy about the effect of the obligation of parties and

17   interests to participate in good faith in the Chapter 11

18   process.  And I told you then and I tell you now, that the

19   non-consenting states would have and will continue to do so

20   and would have will, continue to do so whether or not there

21   is litigation proceeding against the Sacklers in recognition

22   of the particular interests of state's sovereigns with

23   regard to the advancement, protection, prosecution of their

24   state laws.

25             I've recognized, Your Honor, that the results of

```
 1    doing so are uncertain, but as I've said before, the value
 2    from doing so is not merely economic, and it is reflective
 3    of the responsibility that states have to their citizens
 4    with regard to their own laws, their own police power
 5    actions, and the like.  And those arguments, Your Honor, are
 6    primarily legal arguments.  They are arguments that we have
 7    briefed before and there was no reason to burden anyone --
 8    although in this virtual world, I can't say the trees that
 9    would have killed to do so -- but with the hundreds of pages
10    of briefing that has been carried before.
11            The issue raised by Mr. Kaminetzky with regard to
12    the side-by-side discovery that is going on in the Chapter
13    11 cases with regard to the Sacklers.  I note only the
14    following, Your Honor, which is that their process vis-à-vis
15    the Sacklers and as you -- you may not have read them yet.
16    I wouldn't expect you to -- but the motions that were filed
17    last night by the creditor's committee with regard to a
18    variety of objections, exceptions, privileges being
19    asserted, not only vis-à-vis by the Sacklers but in this
20    case the debtors with regard to discovery demonstrates that
21    that process is not an easy one or one that is even close to
22    done.  And it's one that is not going to be easily
23    completed.  I simply note that since an understanding was
24    reached about the next phase of mediation with the Sacklers,
25    somewhere between four or six scheduled depositions by
```

```
 1    Sackler-side deponents have -- we've received notice that

 2    they can no longer go forward in the next month and they

 3    need to continued.

 4            So the power of continued litigation is, in my

 5    opinion as I've expressed before, clear, but being

 6    realistic, Your Honor, which is what I think you above -- I

 7    won't say above all else -- but equally have cautioned and

 8    urged all of us to be in connection with our approach to

 9    litigating issue before you, did result in our engagement as

10    Mr. Kaminetzky reported, talking specifically about the

11    mechanics that have been set in place for the continuation

12    of voluntary compliance not enjoined compliance by the non-

13    consenting states and potentially others and we have in that

14    regard, reached an acceptable understanding with the

15    debtors, demonstrating, I think, precisely, Your Honor, that

16    the non-consenting states absolutely can walk and chew gum

17    at the same time.

18            So, Your Honor, I could go into more detail but I

19    think the points are clear.  The idea that we would object

20    and preserve our objections in connection with the request

21    also was not a possibility.  Our objections are preserved.

22    Our ability to appeal is preserved should we exercise the

23    offramps.  And we have, as we did back in March, recognized

24    the -- and accepted -- the length of the extension on a

25    voluntary basis, vis-à-vis the debtors, and have focused in
```

1    on the Sacklers who are a different category of issues,

2    concerns and, frankly, Your Honor, could be separated from

3    the debtor's reorganization plans and still provide for a

4    fruitful discussion with the debtors on their own

5    reorganization.

6              So, Your Honor, unless you have any specific

7    questions for me, that's all I have today.

8              THE COURT:  Okay.  Thank you.  Okay.

9              MR. QUINN:  Your Honor --

10             THE COURT:  Why don't I hear from Mr. Quinn, I

11   think it is.

12             MR. QUINN:  Thank you, Your Honor.  Good morning.

13   This is Michael of Quinn of Eisenberg and Baum for the ad

14   hoc committee on accountability.

15             In listening to the debtors speak -- I'm a bit

16   remiss in saying it -- but it made me think of a quote from

17   Ronald Reagan.  Trust but verify.  In its current form, the

18   debtors have failed to sustain their burden to establish

19   that the preliminary injunction promotes reorganization and

20   the public interest.  Unless the debtors can propose a

21   mechanism to provide a public and credible test of the

22   Sackler allegations, the preliminary injunction to be

23   modified for the following two reasons.

24             First, because there will be public or credible

25   way to test the allegations against the Sacklers, it's not

1    clear how any disclosure statement can satisfy the adequate

2    information standard of Section 1125 or that the plan can

3    satisfy the best interest of creditor's test of 1129.  All

4    of the negotiations and discovery that the debtor talked

5    about -- the millions of documents, the depositions -- made

6    be laudable but it's entirely beside the point.  They are

7    done in secret and in great part focus on questions about

8    estate claims and the Sackler's credit worthiness, none of

9    which are at issue here.

10          We're not saying, too, as the debtor suggests that

11    full trials or more examiners or yet another committee is

12    necessary to this case.  We brought them up as examples that

13    -- as ways that other courts have addressed our concerns in

14    other mass tort cases.  Regardless, it's tough pill to

15    swallow to say that we stand by and wait patiently for a

16    plan in order to receive information on the Sackler

17    allegations.  Based on the current schedule --

18          THE COURT:  Isn't that what normally happens in

19    Chapter 11 cases when there are significant settlements

20    being negotiated?

21          MR. QUINN:  Well, the issue, Your Honor, is that

22    this isn't a normal Chapter 11 case.

23          THE COURT:  Well, how else would one do it?  I

24    mean, that is the mechanism in Chapter 11 and in fact that

25    is what a disclosure statement and a 9019 motion are for.

1    That --

2              MR. QUINN:  Your Honor, we're going to welcome --

3    excuse me, Your Honor.  We will welcome a disclosure

4    statement.  Our issue is being able to verify the disclosure

5    statement and we're -- all we're hoping --

6              THE COURT:  You have the ability to take discovery

7    in the context of a motion for approval in this voter

8    statement or a request for confirmation of a plan.  That's -

9    - those are both contested matters that you have a right to

10   take discovery on if you want to.

11             MR. QUINN:  Well, I appreciate, Your Honor, and

12   we'll reserve our right to do that in the --

13             THE COURT:  Well, what you said earlier suggests

14   that you didn't understand that so I wanted to make clear

15   you have that right.

16             MR. QUINN:  Thank you.

17             THE COURT:  Okay.

18             MR. QUINN:  May I continue?

19             THE COURT:  Go ahead.

20             MR. QUINN:  Based on the current schedule, we

21   recognize that a plan is due shortly.  We are not to try to

22   disrupt this schedule.  We do, however, question whether

23   parties can complete discovery, analyze that discovery, and

24   negotiate a resolution based on that analysis in such a

25   short period of time.

1         Additionally, any preliminary injunction that

2    makes it impossible to have a public and credible test to

3    the Sackler allegations cannot be in public interests.  We

4    certainly appreciate that in the debtor's reply they've

5    clarified the current injunction applies only the civil

6    cases.  The form of order they submitted, however, is not so

7    limited.  It provides that the Court will enjoin the

8    governmental defendants and private defendants from

9    commencement or continuation of their active judicial

10   administrative or other actions or proceedings and that

11   commencement or continuation of other actions alleging

12   substantially similar facts or cause of action.  We take the

13   debtor's replay to mean that they will submit a revised and

14   corrected order to this Court that specifically shows that

15   these are -- this injunction is related only to civil

16   claims.

17         This clarification -- and we appreciate it --

18   hardly addresses the core public interest concern here which

19   is there's a -- that the preliminary injunction in its

20   current form makes it impossible for -- to be transparent

21   about Sackler allegations in any legally actionable way.  We

22   understand that the Sackler firmly dispute having any

23   liability.  We also know that they've lost two motions to

24   dismiss.  We're not here today, Your Honor, to address

25   whether the Sacklers are liable, only that there will never

1    be a true way for anyone other than the small group of

2    insiders to this case to know the truth.

3              Thank you, Your Honor.

4              THE COURT:  Can I interrupt you there?  You

5    understand --

6              MR. QUINN:  Sure.

7              THE COURT:  -- that what you refer to as the small

8    group of insiders include the attorney generals from 48

9    states, representatives of thousands of governmental

10   entities, and a official creditors committee.  It's broadly

11   based.

12             MR. QUINN:  Yes, Your Honor, and I appreciate the

13   hard work that each of these groups is doing, and I no doubt

14   respect of these groups, however, my issue is that there's

15   no information to personal injury, wrongful death-type

16   creditors to evaluate these claims.

17             THE COURT:  You understand that thousands of

18   personal injury claimants engaged in the mediation through

19   several capable lawyers and law firms?

20             MR. QUINN:  Yes, Your Honor, I do understand that.

21   And as I believe the creditors committee approached me and

22   asked if I would sign the voluntary confidential order -- I

23   don't think those clients or their representatives will be

24   able to get the information either.  I think their lawyers

25   are able to -- it's like for the lawyers to be able to see,

1    but they can't transmit that information to creditors to

2    actually vote whether to -- you know, to confirm the plan.

3              THE COURT:  do you have anything more to say?  You

4    can continue.

5              MR. QUINN:  Well, I think that's it, Your Honor.

6    I appreciate it.

7              THE COURT:  Okay.  Very well.  So I don't know if

8    anyone else has anything to say on this.  Mr. Kaminetzky, I

9    don't know if you want to respond.

10             MR. JOSEPH:  Well, Your Honor -- this is Gregory

11   Joseph.  May I just respond briefly to a couple of points

12   that were made in the argument?

13             THE COURT:  Okay.

14             MR. JOSEPH:  Mr. Troop mistakenly said that there

15   are four to six depositions that are not going forward in

16   the next month.  The fact is that I'm aware of -- that for

17   three of the five, all have been offered dates in October.

18   One of the witnesses had a stroke and was delayed by a

19   month.  Another's a medical family issue for counsel, but

20   everything is still going forward quickly.

21             The last lawyer's suggestion that depositions do

22   not address all claims and they're focused on issues like

23   location of assets is false.  Three of our depositions have

24   been taken, starting in August, two on the A side have been

25   taken.  The non-consenting states question all those and

Page 66

```
1     both the UCC and non-consenting states go into what the last

2     lawyer would refer as the merits of the case.

3              Thank you, Your Honor.  I just wanted to make sure

4     the factual record was clear.

5              THE COURT:  Okay.

6              MR. KAMINETZKY:  Your Honor, very briefly.  This

7     is Ben Kaminetzky in from Davis Polk.  Just a few points.

8     Just with respect to Mr. Troop's comments about walking and

9     chewing gum at the same time, Mr. Troop did not say that --

10    and did not deny -- that more discovery has happened here

11    than could ever have possibly had in connection with any

12    amount of civil litigation.  He also, Your Honor -- I mean,

13    just logic dictates that it's extraordinarily unlikely that

14    the Sacklers would continue to provide the diligence that

15    they're providing in these case while litigating against the

16    -- you know, the non-consenting states, and, clearly, when

17    the non-consenting states have -- the stay would be lifted

18    with respect to them, the consenting states would also have

19    to jump in.  It's extraordinarily unlikely that having 50

20    state litigations or 48 state litigations against the

21    Sacklers wouldn't delay, perhaps for a significant amount of

22    time if not year or decades, the resolution of these Chapter

23    11 cases.

24              What's more, Your Honor, once this (indiscernible)

25    of litigation, as Your Honor knows, 2004 discovery is no
```

1   longer appropriate so that would all grind to a halt which

2   is the information sharing mechanism that's being employed

3   in this case.

4           Clearly, the -- again, just to underscore, the

5   amount of information that's being provided in this case --

6   not only the amount but the type of information that's being

7   provided by the Sacklers in these cases is extraordinary and

8   could never by provided in civil litigation.  Just, for

9   example, the Sacklers are offering discovery and have given

10  discovery about the nature of their wealth, the nature of

11  their assets overseas.  We even had a deposition in

12  Australia.  None of that could possibly ever happen in civil

13  litigation.  And one final point, Your Honor, is that all of

14  -- we've talked a lot about the mediation and about the term

15  sheets.  Your Honor will note that all of the term sheets,

16  all of the individual deals that were struck with the

17  private side are all contingent upon a final deal with the

18  Sacklers and Sackler participation.

19          It is just certain -- simply incredible to believe

20  that renewed litigation by the entire country of -- by the

21  attorney generals of all the states -- wouldn't severely,

22  severely undermine, if not completely kill, those deals that

23  we have and set us back to square one with respect to the

24  private sides.

25          Finally, let me just turn to the ad hoc committee.

1    I'm not quite sure what to say because it doesn't seem like

2    any of what they're talking about has anything to do with

3    the preliminary injunction.  It seems like they're launching

4    a objection to a disclosure statement that hasn't been

5    released, plan that hasn't been proposed, and actually, what

6    they're mostly talking about is they're trying to mount a

7    belated objection to the protective order that was entered

8    in this case.

9            I'm not quite sure what they envision, but to --

10    they seem to conceive of a situation where discovery and

11    litigation is not done by professionals and is not done by

12    the UCC, the non-consenting states, and all of the groups

13    here that are involved and inside the protective order and

14    have worked diligently for hundreds of thousands of hours

15    and for -- costing millions of dollars to these states --

16    but somehow that the entire world should be privy to every

17    deposition, to every document that's been produced.  It's

18    just simply not the way things work.

19            It couldn't work that way.  And the attempt to

20    somehow disparage the work of the UCC and the attorney

21    generals and to suggest that the Sacklers are getting some

22    sort of free pass, and absent them being satisfied at the

23    pace of discovery and them being satisfied by seeing

24    absolutely every document or deposition that has been

25    produced in this case, is simply inconceivable.

1                So with that, Your Honor, I will pause.

2                THE COURT:  Okay.

3                MR. ECKSTEIN:  Your Honor?

4                MAN:  Go ahead, Ken.  Sorry, (indiscernible).

5                MR. ECKSTEIN:  No problem.  No problem.  Your

6      Honor, this is Ken Eckstein of Kramer, Levin.  If it's

7      appropriate, I can -- I have some brief remarks I'd like to

8      make on this motion.

9                THE COURT:  Okay.  And you should just state who

10     you're on behalf of for the record.

11               MR. ECKSTEIN:  Sure, Your Honor, yes.  Your Honor,

12     this is Kenneth Eckstein of Kramer, Levin.  I'm appearing on

13     behalf of the ad hoc committee of consenting states and

14     governmental entities.

15               Your Honor, first, I would like to -- you know, in

16     connection with our support of the motion, I do want to

17     acknowledge the remarkable progress that has been achieved

18     in the case to date and that was described in detail by Mr.

19     Huebner and describe by Mr. Kaminetzky.  The progress to

20     date in fact has been extraordinary and we're pleased that

21     it implements many of the key elements of the term sheet

22     that the ad hoc committee had agreed to at the outset of

23     this case.  And we're hopeful that it will be the foundation

24     for, ultimately, reaching a successful and consensual plan

25     in this case.

1          We do think that in light of the progress that has

2     made and in light of the process that the Court has put into

3     place, both with respect to active and expedited litigation

4     that is ongoing in the bankruptcy case, as well as the

5     ongoing mediation process that the Court has recently

6     endorsed, we think that there is good reason to continue to

7     have confidence that we have a framework that ultimately

8     will lead to a successful and near-term plan of

9     reorganization.

10          As Mr. Kaminetzky said, the agreements that were

11     reached in the mediation all specifically do contemplate

12     that an ultimate agreement with the Sacklers needs to be a

13     component of a plan of reorganization and we're very mindful

14     of the fact that the time is now to address that issue while

15     the discovery continues actively in the case.  We're also

16     mindful of that fact that the proposed order contemplates

17     the opportunity for an offramp on December 15th, if parties

18     believe that that is appropriate.  And we believe that that

19     is significant, particularly in light of the expressed

20     intention by the debtor to propose plan before the end of

21     this year.  And we think that the deadlines that have been

22     provided for are consistent with the goal of presenting a

23     plan expeditiously and for the issues with respect to the

24     Sacklers' contribution to this case to ultimately be fully

25     addressed and hopefully resolved within the time frames that

1   all parties have specifically targeted.

2          So based upon those factors, the ad hoc committee

3   is supportive of the debtor's request to extend the

4   injunction.  Thank you, Your Honor.

5          THE COURT:  Okay.

6          MR. PREIS:  Your Honor, this is Arik Preis from

7   Akin, Gump on behalf of the creditors committee.  May I be

8   heard?

9          THE COURT:  Sure.  Good morning.

10         MR. PREIS:  First of all, can you hear me?

11         THE COURT:  Yes, I can hear you fine.  Thank you.

12         MR. PREIS:  Thank you.  Your Honor, again, Arik

13  Preis from Akin, Gump, Strauss, Hauer & Feld on behalf on

14  the creditors committee.  I'll be very brief.

15         As you know, we support the relief -- request for

16  the preliminary injunction motion.  The underlying reason

17  for us doing so has not really changed since the beginning

18  of the case.  I'm not going to reiterate all of the reasons

19  that we supported it at the beginning of the case.  We

20  further support the amended proposed form of order.  We

21  think those changes actually make the order better.

22         To be clear, however, we do not endorse for agree

23  with some of the statements that the debtors made in the

24  preliminary injunction motion, in their reply brief, or in

25  Mr. Kaminetzky's statements earlier regarding, among other

 1    things, discovery.  We hope that that's evident by the two

 2    motions we filed last night that Mr. Troop alluded to.  We

 3    note that the ad hoc group of accountability made some

 4    statements as well.  To the extent that their statements in

 5    some way are read to mean that we are not doing our job,

 6    which frankly includes thing that we know that they're

 7    interested because we've had conversations with them, we

 8    obviously disagree.

 9            Finally, Your Honor, there was some colloquy about

10    the schedule regarding five depositions.  Mr. Troop

11    mentioned something about that and Mr. Joseph attempted to

12    create -- to correct the record.  I feel the need because we

13    were going to raise this with you in another context just to

14    briefly, if you're okay with that, just correct a little bit

15    about what was said and explain to you why this -- why Mr.

16    Troop raised it because it does deal with the discovery that

17    Mr. Kaminetzky had been talking about.

18            Specifically, we were all in your chambers on

19    September 17.  There has been eight business days since then

20    and since that day, five deponents who had previously agreed

21    to and were offered dates for depositions have told us that

22    they're no longer available on the dates previously agreed

23    or offered, but instead, they either asked to delay their

24    deposition for a week or a number of weeks or in one

25    instance, not even offered up certain dates in the future.

Page 73

1     In one instance, as Mr. Joseph correctly point out, it's due

2     to a health issue of the deponent.  In one instance, it's

3     due to the health of the father of the lawyer who is

4     preparing the deponent.  In one instance, it's due to the

5     deponent's position that he doesn't want to sit for a

6     deposition while a privilege's motion is pending.  And in

7     two instances, the individual simply didn't give a reason.

8              We're raising this, Your Honor, as we do with a

9     lot of things in this case when various issues come up

10    because, frankly, we hope the trend doesn't continue, but if

11    it does, we're going to be back to Your Honor seeking Your

12    Honor's assistance.  I know that doesn't really relate to

13    the preliminary injunction motion, but it does relate in

14    general to the discovery efforts that Mr. Kaminetzky was

15    talking about and that Mr. Troop and Mr. Joseph alluded to.

16             But again, to round out to where I started, the

17    creditors committee does support the relief requested in the

18    preliminary injunction motion.  Thank you, Your Honor.

19             THE COURT:  Okay.  Thanks.  Does anyone else wish

20    to speak?  All right.  I have before me the debtor's motion

21    to continue the preliminary injunction entered in the early

22    stages of this case into March of 2021 with an opportunity

23    to have second look or has a couple of parties on the phone

24    have said a potential offramp to be heard by the Court in

25    January with a notice to be filed in December.

1       This is clearly a subject that the Court has dealt

2   with before in this case.  In fact, I have had now four

3   hearings on the topic, the first being on October 11, 2019;

4   second, on November 6, 2019; the third, March 18th, 2020;

5   and then today's hearing.  Obviously, there was a lot more

6   time spent on the record, when one reviews the transcripts,

7   at the earlier hearings.  The underlying bases of the

8   arguments were more thoroughly set forth, but I rereviewed

9   all of those transcripts and the briefing in connection with

10  them, as well as the briefing for today.  In particular,

11  because two of the objectors -- the Tennessee parties and

12  the ad hoc committee of non-consenting states -- have in

13  essence incorporated their arguments from the prior hearings

14  and their present objections.

15       I agree with Mr. Troop who represents the non-

16  consenting state group that in doing so, neither they or I

17  in considering their arguments belittle the importance of

18  these issues or the extent of the record upon which we are

19  all relying, going back to October of 2019.  These are

20  important issues and need care in their analysis.

21       I also agree with Mr. Troop, as was I think

22  implicit in my remarks about the mediator's report that was

23  filed last week, that it appears clear to me that now and

24  during the course of these cases, these clients have engaged

25  in these matters in good faith, including in negotiating

1    towards a Chapter 11 plan in these cases, and keeping open

2    the possibility that that plan would include a material

3    payment by members of the Sackler family, another

4    consideration provided by them.

5            I will address first the objections that relate

6    back to arguments previously made in these cases, namely the

7    Tennessee parties, and the non-consenting ad hoc state

8    committee.  The standard here for issuing the preliminary

9    injunction is clear and has been clearly stated in these

10   cases.  The debtor has the burden of establishing four

11   factors where third parties are be to enjoined and

12   furtherance of their reorganization effort.

13           First, as with any preliminary injunction, they

14   need to show a likelihood of irreparable harm to them if the

15   injunction is not issued.  However, irreparable harm in this

16   context is demonstrated if the actions to be enjoined would

17   embarrass or delay or otherwise impede the debtor's estate

18   and reorganization prospects as noted by Chief Judge -- that

19   is, District Judge -- McMahon in Dunaway v Purdue Pharma,

20   LP, 2020, U.S. District Lexus 143799, SDNY August 11th,

21   2020.  See also, In re Lyondell Chemical Flow, 2 B.R. 571,

22   590 through 91, Bankruptcy SDNY 2009.

23           The second circuit is noted that Section 105(a)

24   which is the statutory basis for such an injunction is to

25   be, quote, construed literally to enjoin suits that might

1    impede the reorganization process, close quote, Lautenberg

2    Foundation v Pickard, 512 to that appendix 18, 2nd Circ.

3    2013, citing MacArthur Company v Johns-Manville Corp., 837

4    F2nd, 89-93, 2nd Circ., 1988.  That literal construction

5    reflects the underlying principle of preserving the debtor's

6    estate for the creditors and funneling claims to one

7    proceeding in the bankruptcy court, ibid. at 94.

8            In other cases, the circuit has held that such an

9    injunction is properly used to enjoin creditors' lawsuit

10   against third parties where, quote, the injunction plays an

11   important part of the debtor's reorganization plan, close

12   quote, FCC v Drexel Burnham Lambert Group, Inc., 960 F2nd

13   285-293, 2nd Circ., 1992 or where the action to be enjoined,

14   quote, will have an immediate adverse economic consequence

15   for the debtor's estate, close quote.  That's now Justice

16   Sotomayor writing in Queenie Limited v Nygard,

17   International, 321 F3rd, 282-287, 2nd Circ., 2003.

18           Having reviewed an extensive record in the fall of

19   last year as well in March of this year, I believe the

20   debtors then established and the record even more so

21   supports today, a preliminary injunction of the third-party,

22   non-criminal claims against the parties covered by the

23   proposed extension of the preliminary injunction, including

24   as objected to by the Tennessee parties, Dr. Richard Sackler

25   and is object to by the ad hoc committee of non-consenting

1    states, the nine Sackler family members, including Richard

2    Sackler.   Those parties not objecting otherwise to the

3    injunction.

4            The two objectors' arguments essentially come down

5    to a view that, notwithstanding the irreparable harm

6    generally to these estates and the reorganization prospect

7    of permitting the lawsuits to go forward that the injunction

8    seeks to continue to enjoin, that progress and that harm

9    will not take -- can still take place and the harm will not

10   occur if just the litigation is permitted to proceed against

11   Richard Sackler and as far as the non-consenting states are

12   occurred, the other nine Sacklers as well.

13           I dealt with this primarily in the March hearing

14   and I continue to believe there what I believe -- to believe

15   now what I believed then, which is that the proposed carve-

16   outs from the injunction would be highly detrimental to the

17   debtor's estates and the prospect of a confirmable Chapter

18   11 plan here without unduly harming the governmental

19   entities.  As I noted than and continue to believe now,

20   first, the pursuit of the litigation that the Tennessee and

21   non-consenting states seek necessarily would also involve

22   the debtors and therefore, sidetrack no only negotiations

23   with the Sacklers, but also involve the debtors materially

24   in such litigation.

25           And secondly and perhaps even more importantly,

Page 78

1    because those claims are similar to those brought by other

2    governmental entities, it is clear to me that those other

3    governmental entities would want to pursue their litigation

4    as well and my not letting them do that would put them at a

5    disadvantage, in terms of timing on litigation outcomes, as

6    well as negotiation leverage in negotiations with the

7    Sacklers if I let the non-consenting states pursue their

8    matters.

9            Going back to the first point, it is and has been

10   clear to me since the October 2019 hearing the case that the

11   multi-jurisdictional, thousands of lawsuits, state of play

12   without this injunction is not beneficial to these debtors

13   and to their estates and creditors.  It would result first

14   in multiplication of costs and discovery as well as a

15   limitation of the type of discovery that is available and in

16   place and going forward in this case before me.  Discovery

17   that has been agreed by the Sacklers in well-negotiated

18   orders in which not only the official creditors committee

19   but also the non-consenting states had a major role;

20   discovery under bankruptcy 2004 which would not available in

21   non-bankruptcy proceedings; discovery that is well underway

22   and being supervised by me and that will continue.

23           Moreover, it is a clear public interest that

24   litigation, if possible, be resolved promptly, efficiently,

25   and by consensus.  From the Supreme Court, the Second

Page 79

```
 1    Circuit to the most local court, that is a fundamental
 2    proposition of our law.  Experienced litigators and
 3    certainly judges know that when parties control litigation
 4    outcome by well-informed negotiations that lead to
 5    agreements, the legal system is working.  They know that
 6    trials are just that -- matters that result in an outcome of
 7    either liable or not liable.  They are not some form of
 8    public truth serum.  No litigator would tell you otherwise.
 9            So it appears to me that while I agree again with
10    Mr. Troop that the debtors could confirm a plan in these
11    cases that did not have a substantial contribution by the
12    Sacklers, it appears to me to have always been the case and
13    will continue to be the case that such a plan in which they
14    do make a material contribution that satisfies the second
15    circuit's test in In re Metromedia Fiberwork, Inc., 460
16    F3rd, 136, 2nd Circ., 2005, is not only possible but the
17    most likely outcome in this case.
18            I recognize that the Tennessee counties and the ad
19    hoc committee of non-consenting states do indeed have an
20    obligation to their citizens to seek to enforce their laws,
21    but I'm sure they recognize, being lawyers, that that
22    obligation is frequently, if not indeed usually, embodied in
23    a negotiation process rather than a litigation process.  I
24    have concluded and continue to believe that the continuation
25    of the injunction as proposed furthers that process and that
```

1    to limit it as suggested would cause irreparable harm to the

2    estates and creditors and prospect for a successful

3    reorganization.

4         The remarkable achievement by the parties,

5    including the non-ad hoc -- I'm sorry -- including the ad

6    hoc committee of non-consenting states in resolving as set

7    for the mediator's report, the allocation of value in these

8    cases among creditors, only enhances or increases my view

9    that the injunction as proposed should be granted.

10        The settlements outlined in the mediator's report

11   are truly a gatekeeping item.  They recognize the importance

12   of a plan that does resolve claims against and a

13   contribution by the Sacklers.  They also continue the focus

14   of these cases on abatement and using the debtors'

15   resources, including their claims against the Sacklers and

16   third parties' right against the Sacklers, to resolve as

17   promptly, efficiently, and with as much value as possible,

18   the opioid crisis.

19        The balance of the harms here also tilts in favor

20   of the debtors, the second of the analysis.  It is far from

21   clear to me -- in fact, it would not be the case that if I

22   carved these particular people out of the preliminary

23   injunction and left it at that and no other state or

24   governmental entity would say, me too, which I highly doubt

25   -- but if that were the case and it was just limited to

Page 81

1    proceeding against nine people in Tennessee and up to 24

2    other states, I do not believe there would be meaningful

3    outcome within the period where the parties are pursuing in

4    good faith a potential negotiated resolution of those claims

5    for the collective creditor body.

6              I will need to recognize that that collective

7    creditor body, as I've said many times before, could be

8    almost every person in the United States, given the claims

9    that have filed, including claims filed by hospitals,

10   states, governmental entities and the like.

11             I know Mr. Troop -- at least maybe just to butter

12   me up -- enjoys movie references.  Having read the

13   mediator's report, the image of James Dean telling the

14   lettuce to grow in East of Eden came to my mind.  The

15   parties have an incredible opportunity at this moment to

16   move forward quickly to end these cases and get the money

17   out to abate the opioid crisis.  They should do it.  And

18   anything that distracts them from that process is not worth

19   the candle.  They need to make that effort and they are

20   making that effort and I encourage them to continue it.

21             It is clear to me that the public interest favors

22   that effort, not just the public interest generally in

23   settlements, but in getting the value out where it's needed

24   most which I believe all of the parties who have objected

25   today understand and will do their best to ensure.  That,

Page 82

1    too, is even more important today as we read time and time

2    again that the pandemic has hurt those trying to overcome

3    their addictions more than most.

4              I will note that I am fully aware of the discovery

5    process that has been unfolding in this case.  It is clear

6    to me that an immense amount of disclosure has occurred --

7    over 5 million pages, hundreds of thousands of documents,

8    depositions, et cetera, and it will continue to occur.  I

9    will note further that both sides on the discovery process -

10   - that is the Sackler side and the committee and other party

11   and interest side on the other hand -- have engaged so far

12   in that process professionally and efficiently.

13   Notwithstanding airing discovery issues with me, I have yet

14   to have to rule on any beyond simply giving guidance to the

15   parties.  I have made it clear -- crystal clear -- that the

16   Sacklers will continue to have to provide disclosure in

17   these cases if they expect to get a release.

18                    They obviously have rights including

19   basic rights in respect to privilege and the like and I

20   don't require them to waive privilege.  But on the other

21   hand, I don't expect them or third parties in the case who

22   are also targets of discovery to unduly or improperly delay

23   any of that discovery.  I also expect the parties to

24   negotiate, now that we're in this important and critical

25   second phase of the case.

Page 83

1           Clearly, this case more than most, but all Chapter

2      11 cases really are collective proceedings.  There will

3      always be holdouts in collective proceedings.  They have a

4      right, if Congress has circumscribed to do so.  That right

5      includes disclosure so that they can understand what a plan

6      and disclosure statement are about.  They have a right on a

7      limited basis, or depending on their willingness to

8      participate and engage in well-recognized procedures for

9      participating, to engage in a less-limited basis -- I'm

10     sorry -- a more full basis in a case.

11           Clearly, here, that collective principle exists in

12     spades.  We have had an extremely active and well

13     represented and thoughtful official Creditors' Committee.

14     Then we have every state in the union that has not already

15     settled with the Sacklers intimately involved in these

16     cases.

17           And we have thousands of other governmental

18     entities, as well as hundreds, and in some cases thousands,

19     of third parties who have banded together to make their

20     views known and have also engaged thoughtfully and in good

21     faith in the case, including with respect to the private

22     claimants, other than saying they want to have a resolution

23     with the Sacklers, not looking to the Sacklers for value.  A

24     remarkable result in return for what they did negotiate and

25     receives in the mediation.

1          So it is clear to me that the public interest is

2     also served by continuation of the preliminary injunction,

3     including in respect of the nine people, that the two

4     governmental groups would have the carveout.

5          As far as the group of five personal injury

6     creditors who have also objected, much of what I said

7     applies to their objection as well.  The objection is

8     premised on the objectors' belief that there, "needs to be a

9     public and credible test of claims against the Sacklers."

10          During oral argument, counsel for that group

11     appears to have walked back from the notion that such a

12     public and credible test would be some sort of test

13     litigation, in which it appears from the objection the group

14     itself would not participate in, but would want other

15     parties to bring and fund, or the appointment of an

16     examiner.

17          I will note that either of those two options

18     rightly makes little sense in this context.  Where you have

19     an extremely active group of creditors with an extremely

20     broad base, there's no reason to have a third-party

21     examiner, who in any event can only make recommendations and

22     conclusions, which as many cases where examiners have been

23     appointed illustrate are often contested by the parties

24     thereafter as being simply one party's view based on a

25     nonpublic record, because most of what an examiner is told

1    is not public, and is not even a basis for a particular

2    person commencing litigation.  I'm not sure what else is

3    left other than that.

4              I will note, as did Chief Judge McMahon in the

5    Purdue opinion that I cited earlier, the Debtors'

6    commitment, which has been there since the beginning, to

7    make public the record in this case after a plan is

8    confirmed and goes effective, will clearly enable the most

9    light to be shed by people who actually do look for truth,

10   i.e. writers, scholars and the like.

11             As far as whether there should be some sort of

12   test case, again, the public interest is as much served by a

13   negotiation process, particularly with the parties involved

14   in that process are so representational of parties in

15   interest, as is the case here.

16             I really don't know more what I could say about

17   what else is in the objection by the five creditors.  If

18   there is any concern about transparency and disclosure in

19   this case, it appears to have been a self-generated concern

20   without conducting any due diligence, and in fact, as noted

21   on the record today, refusing the right to conduct due Joe

22   legends offered by the Creditors' Committee.  I said on

23   March 18th and I'll say today again, one can make public

24   statements using the nonlegal side of one's brain, but in a

25   courtroom, you have to have more to back it up.

1         So I will grant the motion, having overruled all

2    three objections, and enter the order that has been revised

3    in consultation, with among others, and appropriately so,

4    the ad hoc committee of nonconsenting states.

5         But I have not addressed, because I don't believe

6    I need to, but maybe I should just for the record, the

7    underlying jurisdictional issue here.  It is clear to me

8    that I have related to jurisdiction, which is all I need,

9    since this is not a final order but rather a preliminary

10   injunction, as discussed by Judge McMahon in her Purdue

11   opinion, and also as set forth in SPV Osus v. UBS AG, 82

12   F.3d, 333, 340 (2d Cir. 2018), and Picard v.  Fairfield

13   Greenwich Ltd., 762 F.3d 199, 211 (2d Cir. 2014), as well

14   as, of course, the truly controlling case here, Celotex

15   Corp. v. Edwards, 514 U.S. 300 (1994).

16         It was also, I believe, clear to me under the case

17   law, as well as the legislative history to the Bankruptcy

18   Code, namely the legislative history of Section 362(b)(4)

19   and (b)(5) (indiscernible) "United States Code Congressional

20   & Administrative News" (1978) at Page 52, that I clearly

21   have the power to issue an injunction here, notwithstanding

22   that enjoined parties include governmental entities.  See,

23   for example, In re Commonwealth Companies, 913 F.3d 518 (8th

24   Cir. 1990); In re T.K. Holdings, Inc. and District of

25   Delaware; In re Ionosphere Clubs, Inc., 111 B.R. 423, 431

Page 87

1    (Bankr. S.D.N.Y. 1990); and Browning v. Navarro, 743 F.2d

2    !069, 1084 (5th Cir. 1984).

3              So, Mr. Kaminetzky, you can email the revised

4    proposed order to chambers.

5              MR. KAMINETZKY:  Thank you, Your Honor.  We will

6    do so.

7              THE COURT:  Okay.

8              MR. HUEBNER:  Your Honor, this is Marshall

9    Huebner.  I guess I will probably take the podium back now,

10   with Mr. Kaminetzky's consent.  And thank you, Your Honor,

11   for your ruling on this injunction.  I think that brings us

12   to the last contested matter for today, the last matter for

13   today, giving Your Honor's restructuring of the agenda to

14   deal with the E.R. Physicians' motion first.

15             Let me first verify that I can be heard clearly by

16   the Court?

17             THE COURT:  Sorry.  You just cut out, Mr. Huebner.

18             MR. HUEBNER:  I was just seeking to verify that I

19   could be heard clearly --

20             THE COURT:  Oh.  Well, yes, you can.  You were so

21   silent, but that's just because you fell silent.

22             MR. HUEBNER:  No worries.  So, Your Honor,

23   ironically, I probably see fewer movies than maybe anyone on

24   this entire hearing, but it happens that I do have two movie

25   references relevant to this case, both from the iconic film,

 1    "The Adventures of Buckaroo Bonsai", that hopefully will

 2    take us forward in our last few months here.  One is, "The

 3    future begins tomorrow."  And the other is, "Wherever you

 4    go, there you are."  And hopefully, we will all be going

 5    somewhere together, as admonished and directed by the Court,

 6    and will be able at long last to have the future we all hope

 7    for with the right use of these assets to indeed begin.

 8            With respect to wages, Your Honor, as I alluded to

 9    in the opening, we have resolved huge slugs of objections

10    that might have been and have a narrowed motion on for

11    today.  And we're down to two objections to deal with to

12    that substantially narrowed relief.

13            So let me begin by reporting that the very good

14    news is that, as we set forth in our reply papers, the

15    Debtors have reached agreement with the UCC, the

16    nonconsenting state group, the ad hoc committee of

17    consenting states and other governmental entities, and the

18    multi-state governmental entities group on all aspects of

19    the compensation of related relief that are up for today

20    with respect to the motion at Docket 1674, which is now

21    limited to the key employee retention plan, the key employee

22    retention plan, which relates to, at the time of its filing,

23    the eight insiders of the company that were found to be

24    insiders at our suggestion and request last year.  Two of

25    those people have actually resigned since the motion was

Page 89

1    even filed.  So that group of eight is now down to a group

2    of six.  But that is not on for today.

3            We're going to continue to work with those core

4    creditor groups, both on the six insiders, and then there

5    are eight other people they still had some questions about.

6    And so we're going to keep working on that as well, and as

7    always, you know, in an ideal world, resolve all those

8    issues consensually before October 28th.

9            But at a minimum, I certainly have a high degree

10   of confidence, given our track record, that we will

11   substantially narrow any remaining issues as to those few

12   remaining folks, and that the sort of 608 or so people we're

13   moving forward on today -- 606, I think -- are fully

14   consensual, other than an objection by the U.S. Trustee and

15   an objection by the self-styled committee on accountability,

16   which as Your Honor knows, it's five individual claimants.

17           I don't mean to denigrate them.  I certainly

18   don't mean to denigrate or minimize any individual's loss,

19   whether their own, or God forbid, a child or family member.

20   But, you know, it does bear mention that it is actually five

21   individual claimants.  It's not a sort of a broad thing as

22   represented as a committee the way, obviously, that groups

23   like, you know 24 AG's or, you know, 30 governmental

24   entities, or thousands of municipalities, or UCC obviously

25   is.

1           But I think that that context does make a

2     difference, as does the fact that while we cherish and

3     respect the U.S. Trustee's office, they are not an economic

4     creditor in this case.  And given that we have, frankly,

5     hundreds, actually thousands of governmental entities who

6     are involved every single day in this case, I think that,

7     frankly, their consent to today's relief, ultimately, in my

8     mind at least with -- again, no disrespect to the U.S.

9     Trustee's office -- weighs rather heavily against both the

10    lone governmental objection of the U.S. Trustee, which I'll

11    address on the merits in a couple of minutes.

12          So with that introduction, Your Honor, let me note

13    that, as the Court no doubt is aware, since I again have no

14    doubt that the Court is sitting there with our 11-inch

15    binder with many yellow tape flags and post-its on it, much

16    of this is extremely familiar to Your Honor, as in many ways

17    it is in fact nearly identical to the relief that we sought

18    and received from this Court last year.  And I actually

19    think that, again, with the exception of the U.S. Trustee,

20    the relief that we are seeking today was not objected to by

21    any party.

22          We also have reached an accommodation with the

23    Creditors' Committee on an amended set of proposals and

24    plans.  And I think that with the exception of the CEO,

25    which is not on for today, there was no objection by any

 1    other party in the case, other than the U.S. Trustee.

 2            What we did this year was again put in place

 3    successor programs, as the two declarations made clear, to

 4    the Debtors' very long-standing annual compensation programs

 5    that have been in place, I think, in one case for more than

 6    20 years, and in one case for something like 30 years.  The

 7    specifics of the plan are set forth in the motion and in the

 8    declaration, and so I'm going to be actually relatively

 9    brief, and not sort of retread what I know that the Court,

10    and I'm sure others, have read closely as well.

11            With respect to the evidence for today, Your

12    Honor, we have confirmed with the U.S. Trustee and the

13    accountability group that they have agreed that the Debtors'

14    two supporting declarations, one from John Lowne and the

15    other from Josephine Gartrell, can come into evidence today.

16    And I'd like to move their admission.

17            I do note that since the KEIP, which is also

18    covered by their declaration, is not on for today, that the

19    parties for whom you've extended their objection deadline,

20    mainly the UCC and the three non-federal governmental

21    groups, want to -- and the U.S. Trustee as well -- I don't

22    mean to (indiscernible) on this -- to the extent that they,

23    in the end, are not at peace with us by the 28th of October

24    and want to cross-examine the witnesses on the KEIP issues

25    at that second hearing, we certainly understand that that's

Page 92

1    the case.

2            But as to the KERP, there is not going to be any

3    such cross-examination by agreement of the parties.  And we

4    would ask that the declarations be moved into evidence as

5    the Debtors' factual support for the relief being requested.

6            THE COURT:  Okay.

7            MR. PREIS:  Your Honor --

8            THE COURT:  No, let me just make sure -- maybe

9    this will head off some remarks.  What you're asking me to

10   admit into evidence are those portions of John Lowne's

11   declaration, which is dated September 9th, and Josephine

12   Gartrell's declaration, which is dated September 9 as well,

13   that pertain to the key employee retention plan, except with

14   respect to the eight people that are still under discussion,

15   that would be otherwise within that plan?

16           MR. HUEBNER:  It's a little bit different than

17   that, Your Honor, because we don't actually need to come

18   back and get a second order, if and as we get the

19   governmental groups comfortable with their questions about

20   those eight.  And so that I think that as to the KERP, it's

21   probably right to say that they're just admitted into

22   evidence period.

23           THE COURT:  All right.

24           MR. HUEBNER:  Because if there are questions

25   remaining about the eight, they'll be raising if they need

Page 93

1    to.

2              THE COURT:  But it wouldn't be --

3              MR. HUEBNER:  With respect to the KEIP --

4              THE COURT:  But it wouldn't be admitted as to the

5    key employee incentive plan?

6              MR. HUEBNER:  Yeah.  They are --

7              (Overlapping speakers)

8              THE COURT:  As to the (indiscernible) object --

9              MR. HUEBNER:  Yeah.  So that's a technical point

10   that I guess you could (indiscernible).  Mr. Preis and I

11   were actually emailing each other 20 minutes ago about this

12   question.  The way I had sort of thought about it -- and I

13   don't think he disagreed -- was that I don't know that you

14   can admit only certain paragraphs of the declaration.  So

15   our thought was that the declarations get admitted into

16   evidence, period -- not only certain sections or sentences

17   of them, because some of it is sort of blended, like

18   attrition and things like that -- but that it's understood

19   that there will be a right to cross-examine the witnesses on

20   the KEIP on October 28th, if anybody deems that necessary.

21             THE COURT:  Okay.

22             MR. HUEBNER:  But if --

23             THE COURT:  I understand that now.  So does anyone

24   have an objection to the declarations being admitted with

25   that understanding?

1          MR. PREIS:  Your Honor, this is Arik Preis, from

2     Akin Gump, on behalf of the Committee.  Can I just say one

3     thing?

4          THE COURT:  Sure.

5          MR. PREIS:  We don't object to what Mr. Huebner

6     just said and how you correctly corrected it.  One thing

7     though, I'm going to guess that at some point Mr. Huebner or

8     the Debtors are going to mention something about

9     uncontroverted evidence, and forget to mention that they are

10    referring only to that portion of the declarations that

11    regard the KERP.

12         THE COURT:  Well, I --

13         MR. PREIS:  So just want to make sure --

14         THE COURT:  I could tell you, I've read both of

15    the declarations, of course read the Debtors' honor this

16    reply, which details the subsequent agreement with the

17    Committee, the NCSGs, the ad hoc committees, and the MSGE.

18    So when I reviewed these declarations, I reviewed them

19    focusing on the key employee retention plan, and as Mr.

20    Huebner said, the portions that just discuss the Debtors'

21    business and attrition issues and the like.  So whether

22    someone inadvertently says uncontroverted, it doesn't really

23    pertain to anything other than what's before me today.

24         MR. PREIS:  Okay.

25         MR. HUEBNER:  And Your Honor, now I'll quote --

```
 1              MR. PREIS:  Thank you.

 2              MR. HUEBNER:  -- after you -- I'll quote the

 3      eighth chapter of Matthew, which is, I guess, "Oh, ye of

 4      little faith."  I in fact would not have done that.  I'm not

 5      sure why someone thought I would.  So I think we're all

 6      good, which is the evidence is actually sort of open with

 7      respect to --

 8              THE COURT:  Well, I might have said it, so there

 9      you go.

10              MR. HUEBNER:  So, all good.  So, anyway, back to

11      the subject.  So, Your Honor, with that, with those clear

12      and, I think, understood and agreed caveats, may we formally

13      move the two declarations into evidence?

14              THE COURT:  Yes.  They're admitted as Mr. Lowne's

15      and Ms. Gartrell's direct testimony.

16              (Declarations of John Lowne and Josephine Gartrell

17      admitted into evidence.)

18              MR. HUEBNER:  Very good.  Thank you, Your Honor.

19      So, Your Honor, as to the substance of the program that is

20      up for today, which is the KERP, we essentially made three

21      changes at the request for three categories of changes, at

22      the request of the UCC and the governmental groups, that can

23      be worked upon these issues.

24              Number one, a reduction in the total amount of the

25      claimants by a little over $4 million, which is a 40 percent
```

1    or so cut off of the 2023 payable, 2020 (indiscernible).

2            Number two, that have asked that we move around

3    some of the timing on payment and clawback provisions to

4    make the KERP somewhat more retentive.  You have one payment

5    that's a little bit later, other payments are a little bit

6    later, clawbacks still a little bit later in some

7    circumstances.  It's all laid out in our reply brief.

8            And then, three, as requested, actually, by the

9    creditor groups, not by us, an acceleration of the LTRP

10   payments that were already largely earned, but in order to

11   keep them retentive, they're going to be payable in '22 and

12   '23.  We were asked actually to do those on emergence,

13   subject to a clawback if the employee leaves without good

14   reason or is fired for cause, until the originally proposed

15   payment date.

16           So we would propose that they pay essentially, I

17   think -- and I don't want to speak for them -- but people

18   just didn't want the post-emergence company having to make

19   payments for the pre-emergence period.  And so they asked

20   that we accelerate them.  In one case, we said that's fine.

21   But we actually want them to stay retentive, because we

22   actually think it's very important to keep the right people

23   here, obviously post-bankruptcy.  And so we added a clawback

24   in to ensure that that remained an important goal of the

25   programs, which, frankly, is important to all of us, and of

```
 1    course, everyone agreed with that.  And now (indiscernible)

 2    deferral as to the eight people that I talked about before.

 3              THE COURT:  Do those --

 4              MR. HUEBNER:  So --

 5              THE COURT:  Do those -- I'm sorry, just on that

 6    point, on the clawback point -- do those people, if they

 7    left, say a week after the effective date of a plan, would

 8    there be other payments that the company would otherwise owe

 9    them that could be set off against a clawback?

10              MR. HUEBNER:  Yeah.  So, it depends, frankly, I

11    think, on individual -- as probably an individual basis when

12    exactly they left, when things had been settled up.  You

13    know, I'm guessing as a general rule, the answer may be no,

14    because I think on your final day of employment, you know,

15    assuming another pay cycle finishes after your departure,

16    you know, VPs are obviously not the key executives, and so

17    they don't have other things that are due over time.  Again,

18    the request was not ours to accelerate the payments, but I

19    think we'll have to look to the clawback as a vehicle for

20    getting the money back, you know --

21              THE COURT:  Right.  Well --

22              MR. HUEBNER:  -- should people leave under the

23    right circumstances or the wrong circumstances.

24              THE COURT:  I mean, you still can, I guess,

25    commence a lawsuit to get it back.
```

1          MR. HUEBNER:  Correct.  Correct.

2          THE COURT:  Right.

3          MR. HUEBNER:  And I'll just leave it at that, I

4     think, for now.

5          THE COURT:  Okay.  All right.

6          MR. HUEBNER:  So that leaves us with only two

7     outstanding objections, as I said before.  One from the U.S.

8     Trustee and one from the five individuals represented by Mr.

9     Quinn.

10          So, Your Honor, in sum, the rejections asked the

11     Court just to do a wholesale rejection of this important

12     aspect of the long-standing annual compensation.  They don't

13     actually really offer either factual or legal support for

14     this request.  And I also think they sort of sidestep what

15     is in fact the governing legal standard for this, including

16     this Court's ruling that there were not one, not two, but

17     three hearings on analogous issues last years.  Actually,

18     four, if you count the mini, mini-plan that we did very

19     early in the case for the six junior folks that we're doing

20     (indiscernible).

21          What the U.S. Trustee's objection I think really

22     unfairly overlooks is that these are not bankruptcy bonuses.

23     This is not a second round of bonuses.  This is annual

24     compensation that has been part of annual compensation

25     literally for decades.  And so we made this motion for a

```
1    second time in the case because the case has now gone more

2    than a year and the end of the year approaches.

3            And obviously, we could have done something that

4    would have been very much against the interests of these

5    estates, which is just simply move all these things into

6    base salary, pay it over 12 months, not have the ability to

7    incentivize performance, not have a strong retentive element

8    of having the payments paid, you know, in some cases well

9    after the calendar year ends.

10           But that actually would have been a terrible idea.

11   I guess it would have obviated the need for anybody like

12   (indiscernible) to object, because it wouldn't have had the

13   word "bonus" attached to it.  But it actually would have

14   been so much worse for the estate and for the maximization

15   of value, and for the running of this actually relatively

16   large and complicated enterprise.

17           As Your Honor has recognized several times over

18   this case and predecessor cases, non-insider compensation

19   outside the ordinary course -- and there was, by the way, a

20   strong argument, as I understand, last year that this is

21   ordinary course.  It's ordinary course because we've been

22   doing it for decades.  It's ordinary course because many

23   companies do it.  But we invariably take the more

24   conservative route and put things out in full so I might

25   even seek Court approval, and Your Honor has held that these
```

1    things are governed by 503(c)(3), and that that language

2    essentially incorporates the traditional business judgment

3    rule set out in Section 363(b).

4           And so again, reminiscent of last year, we went

5    through the Dana II factors at extreme but appropriate

6    length -- not extreme -- appropriate length in both our

7    opening papers and our reply papers.  And the Trustee just

8    doesn't really address that.  In fact, there's a grand total

9    of about a page and a quarter in their objection actually

10   about the KERP, and it actually doesn't really cite law,

11   including the six factors in Dana that we went through in

12   detail.

13          Here in particular, we're not writing on a blank

14   slate because the Debtors are seeking essentially to

15   continue an existing program that this Court already ruled,

16   including overruling the Trustee meets the standard.  And

17   this year, we have even more evidence than we had last year.

18          We've already discussed at length at this hearing

19   and its predecessors the likelihood of a successful

20   reorganization, the fact that as Your Honor said, you know,

21   at a prior relevant hearing, "This process does not happen

22   overnight."  It certainly does not.  This is a very long and

23   hard-fought (indiscernible) for all of us, no matter what

24   our views are about the right outcome here.

25          But at the end of the day, we need employee's

1    every day, you know, running the corona gauntlet, showing up

2    at the manufacturing plant, working next to colleagues, and

3    producing the FDA approved medications and over-the-counter

4    medications that we sell into the market under a self-

5    injunction with a highly-respected monitor that we all

6    agreed on.

7              So they're just not bonuses.  As Your Honor noted

8    last year -- and I'm quoting you again -- this is

9    "essentially salary with some modifications or risks on

10   either side, depending on how the employee performs and the

11   company performs."  December 4, 2019, Page 113, Lines 17-18.

12             And so the compensation, as we set forth at

13   length, is marked.  You know, it may be that the Trustee

14   gets his sort of percentile thing from thinking about this

15   as if it were a KERP, on top of TBC, total direct

16   compensation.  But of course, that's not right because, as

17   we lay out in some detail, rather than having the AIP and

18   the LTRP and the KERP and all that together, the KERP

19   replaces the AIP.  And so, without it, people would be very

20   substantially undercompensated.

21             And as it was last year, it remains true this

22   year, that Purdue, you know, continues to suffer from

23   relatively material attrition.  And not only did two of our

24   eight insiders resign literally since we filed the motion,

25   which is about three weeks, and that's 25 percent of our

1   most senior executives right there, but in addition to them,

2   as of the time of the filing of the motion, another 85, or

3   more than 85, have left since the petition date, which is an

4   annual attrition rate approaching 14 percent.

5           And as you might imagine, getting new people into

6   Purdue Pharma during a pandemic to replace these positions,

7   many of which, as the Court knows, are you know, technical

8   people, you know, people with doctorates, people with

9   expertise, and anti-diversion, all sorts of things like

10  that, it's very difficult.

11          And so again, you know, people sometimes lose

12  sight of the fact that this is a company with complex vendor

13  factoring operations that needs to continue to run its

14  business safely and well for the benefit of all during times

15  that are, without any possible question, unprecedented.

16          And so I'm actually going to, I think, leave the

17  U.S. Trustee's objection at that, because I think that the

18  motion and the weight of authority we cite in our papers,

19  the uncontested evidence as to the KERP is the two

20  declarations, coupled with the overwhelming creditor

21  support, you know, probably, I think, leaves me able to say

22  no more than that on the U.S. Trustee's objection.

23          As to the ad hoc committee on accountability, I

24  would note that there as well, as the Court noted before,

25  you know, this about applying the facts to the law.  And the

1    legal standard is, is it a proper exercise of the business

2    judgment of the Debtors?  And I should know it is.

3              Of course, our papers make clear, this was the

4    Board of Directors of the Debtors.  The compensation

5    committee of the Board of Directors, guided by Willis Towers

6    Watson, you know, one of the sort of premier firms in the

7    field, and obviously, counsel, and ultimately also

8    negotiated with the creditor groups that have been with us

9    on every issue large and small, sometimes in different

10   chairs, but always with us on the issues with their opinions

11   across the board.

12             What they do instead, unfortunately, is sort of

13   similar to what they did on the injunction, which is just,

14   frankly, make a series of extremely sharp and completely

15   counterfactual and unsupported claims and attacks on the

16   Debtors.  They seemingly just don't understand, or are

17   refusing to acknowledge, the changes that have taken place

18   in the last several years, and that the Debtors, you know,

19   if they want (indiscernible) -- Purdue and the Sacklers,

20   like as I think everyone in this case knows, except maybe

21   seemingly they don't know, it has now been almost two years

22   since any Sackler held any position at Purdue.

23             And this company has been under the very watchful

24   eye of this Court and the bankruptcy system.  You know, the

25   detailing or promotion of opioids stopped almost three years

Page 104

```
1     ago.  We've had a monitor now for moving towards a year.

2     We've had a 15-page self-injunction, the most intense one

3     probably on the planet -- I've heard no one correct me when

4     I've sort of suggested that before -- in place now also.

5              So, you know, just attacking the company and

6     saying that it's just sort of a terrible thing and therefore

7     nobody should be paid, really just has no basis, and it's

8     really time, hopefully, for those things to stop.

9              But more importantly, if the relief requested were

10    denied and compensation that hundreds of people, including

11    rank-and-file people and hourly wage earners and engineers

12    and technicians and plant operators and anti-diversion

13    people were all to be told that suddenly they're going to be

14    making a fraction of both market compensation and a fraction

15    of the compensation they have come to reasonably rely on

16    that is reasonable and appropriate, the consequences for the

17    value that we can deliver to address the opioid epidemic and

18    the consequences to this case, for example, as Mr.

19    Kaminetzky said before in the preliminary injunction

20    context, if "this all falls apart, the private deals all

21    fall away."

22             And if the private deals all fall away, we're back

23    to hundreds of thousands of filed claims seeking trillions

24    of dollars of damages that actually would cost billions of

25    dollars to fully go through and resolve, it would sort of be
```

```
 1    like Lehman, but without the trillion dollars of value that

 2    Lehman actually has.

 3            We actually have far more claims than Lehman in a

 4    much higher amount than Lehman, and all of those deals are

 5    at risk if the value that we hope to deliver essentially to

 6    the country to ameliorate this epidemic evaporates because,

 7    you know, things like the (indiscernible) of this motion

 8    ultimately lead to a cascade of departures, which leads to

 9    the destruction of the Debtors' business, let alone the harm

10    to patients from having FDA approved medication sort of

11    yanked from them, potentially with little to notice, because

12    we just have to shut down.

13            So Your Honor, this is all things you have thought

14    about many times before in this and other cases.  You

15    actually rejected claims exactly like this last year, almost

16    verbatim.  And you actually specifically said on the October

17    11th hearing at Page 117 to 122 of the transcript, things

18    like, it would actually be "bad exercise of business

19    judgment to simply withhold payment."

20            Finally, Your Honor, I do want to note that the

21    proposed order of course pertains, and did from the outset,

22    the language that was extensively negotiated with multiple

23    creditor groups, including the dissenting states, the

24    consenting states, and the UCC last year -- I think Your

25    Honor actually added some tweaks to it as well -- modified
```

1    from the language that had previously been approved by the

2    Court in (indiscernible) that provides for safeguards to

3    address issues with respect to finding out in the future the

4    employees who got bonuses potentially engaged in this

5    conduct.  And that language, of course, is right in the

6    order where it should be.

7              And so, Your Honor, I actually will leave it at

8    that.  You know, again, these are not, in our view, really

9    sort of bonuses in the way that bonuses sometimes become,

10   you know, I think very politically charged.  This is really

11   annual compensation that is thoughtfully designed and,

12   frankly, withheld until the end of the year and beyond to

13   make it retentive.

14             And as I said, and I'll say it one last time, I

15   think the overwhelming support we have from groups that as

16   Your Honor may -- very often do not agree with us on all

17   topics, or some do and some don't, or some agree and others

18   disagree bitterly, I think speaks massive volumes about the

19   extreme, thoughtful, good faith engagement of the Debtors

20   and how they designed the programs, adjusted the programs,

21   and thoughtfulness and good faith of the other parties in

22   working with us to come up with something that everybody

23   could live with, and address some of their both social and

24   economic concerns.

25             So, Your Honor, that is what I have to say about

1     the KERP.  Obviously, as things come up in response to oral

2     argument of either of the two remaining objectors, I would

3     ask for the indulgence of a few minutes to address anything

4     that seems necessary.

5                 THE COURT:  Okay.  I had a question, and maybe you

6     can answer it.  Maybe Ms. Cartrell needs to answer it.  I'm

7     sorry, Gartrell.  Excuse me.  I think I said Cartrell.

8                 Her declaration at Paragraph 49 has a table, and

9     it says the aggregate market positioning of the KERP

10    participants in the aggregate is shown in the table below.

11    And I'm really focusing on the two boxes at the bottom of

12    that table.  And my question really goes -- I'm focusing on

13    the 50th percentile in both of the boxes.  And I'm just

14    wondering how the agreement negotiated with the UCC and

15    other parties, particularly the reduction by 4 million,

16    would change the variance to market numbers for the 50th

17    percentile?

18                MS. GARTRELL:  Your Honor, this is Josephine

19    Gartrell, from Willis Towers Watson, on behalf of the

20    Debtors.

21                THE COURT:  Yes.

22                MS. GARTRELL:  The answer to your question is that

23    it doesn't change because the $4 million reduction in the

24    program was a specific reduction in the 2020 grant, which

25    went from a little over $10 million to, I believe, down to

1    about $6 million.  And so this market TDC analysis, when you

2    see Purdue based plus proposal, takes into consideration the

3    aggregate base salaries of these two groups, plus the KERP

4    program itself.

5              And then when you see the second box that says

6    Purdue based plus proposal, plus retention, that reflects

7    the base salary, plus the KERP, plus the targeted retention

8    for the subset of employees who would receive that.

9              THE COURT:  So, I'm sorry, why isn't the $4

10   million -- why doesn't it change any of this?

11             MS. GARTRELL:  Because the LTRP grant is not

12   included in the aggregate positioning for TDC analysis.

13             THE COURT:  I got it.

14             MR. HUEBNER:  Your Honor, let me help for a

15   second, which may help clear things up.  Because that LTRP

16   was not due to be paid until 2023, and now it has the

17   potential of being (indiscernible).  And so the effective

18   date, it's not compensation that's paid in 2020.  And so

19   this chart just has different elements in it with respect to

20   2020 TDC.

21             THE COURT:  So this is just 2020?

22             MR. HUEBNER:  Ms. Gartrell, please correct me.  I

23   don't want to misstate why it wasn't in the chart.

24             MS. GARTRELL:  That's correct.

25             THE COURT:  Okay.  All right.  So I'm right that

1    if the midpoint in aggregate market positioning, for

2    executives, at a low you're 12 percent under at the midpoint

3    of the market, and the high point for the Purdue based plus

4    proposal is five percent over 50 percent for the non-

5    insider, middle management group?

6              MS. GARTRELL:  That's correct.

7              THE COURT:  Okay.  All right.  And this is based

8    on other pharmaceutical companies, or companies in Chapter

9    11?

10             MS. GARTRELL:  This is based on Willis Towers

11   Watson's 2019 pharma survey.  So it's only pharmaceutical

12   companies.

13             THE COURT:  Okay.  So this does not reflect

14   additional burdens on people in Chapter 11?

15             MS. GARTRELL:  It does not.

16             THE COURT:  I mean, not burdens, but the pressures

17   that call people away from employment when they're working

18   for a Chapter 11 debtor.

19             MS. GARTRELL:  That's correct.

20             THE COURT:  Okay.  All right.

21             MR. HUEBNER:  And Your Honor, in order to be

22   clear, I mean, there is a lot that we say in our papers that

23   I'm not belaboring, but I think it goes almost without

24   saying that working right now at Purdue Pharma in Chapter

25   11, with you know, at least some uncertainty, to say the

1    least, about one's future and the company's ultimate

2    pathway, it's certainly very different than being at a

3    healthy, exciting, non-Chapter 11, you know, working on a

4    COVID vaccine type environment.  And so the motion will be -

5    - can afford to be substantially below the 50th percentile

6    and have any hope of a 14 percent very painful attrition

7    level, not become a torrent that could be extremely

8    dangerous to the enterprise, that actually speaks for

9    itself.

10            THE COURT:  No, I understand that.  Although, I

11   would hope that at least a large number of people would want

12   to see this through to make something truly good happen from

13   this.

14            MR. HUEBNER:  Yes.  And they do, Your Honor.  And

15   I want to be equally clear about that, which is, you know,

16   the transformation of Purdue is in fact in no small part

17   what is keeping, I think, many people at the company -- and

18   obviously, you know, whatever one's view is, I think there

19   are very few people who don't want to see a page turned to a

20   new chapter for this company.  And I think, you know, the

21   employees are certainly being told and deriving, frankly,

22   energy and satisfaction and enthusiasm from the fact that,

23   you know, things like the mediation report I gave earlier

24   with, you know, an agreement by all acknowledged parties,

25   that all the assets are going to be used to abate the opioid

1    crisis.  That's a huge driver of people getting up in the

2    morning and sort of covering through the pandemic long

3    enough to come to work.

4               THE COURT:  And then one more question for Ms.

5    Gartrell.  The Willis Tower survey of pharmaceutical

6    companies, at one of the earlier hearings you testified that

7    the relevant companies that you looked at within that survey

8    comparable in size to Purdue were about 84 companies.  Is

9    that still the same case for this analysis?

10              MS. GARTRELL:  I don't recall the exact number

11   that was used, but based on the participation rates, I would

12   say that it's around that same number.

13              THE COURT:  Okay.  Great.  Okay.  Those were my

14   questions.  I'm happy to hear from the U.S. Trustee and from

15   Mr. Quinn.

16              MR. SCHWARTZBERG:  Good afternoon, Your Honor.

17   Paul Schwartzberg, for the U.S. Trustee's office.

18              THE COURT:  Good afternoon.

19              MR. SCHWARTZBERG:  Your Honor, I know you have

20   read the pleadings and I don't want to repeat what's in

21   them.  And as you can see from our Footnote 1, we understand

22   that the relief sought here is similar to what was

23   previously before the Court back in 2019.  But since we were

24   here before the Court at that time, issues have evolved that

25   lead us to believe that the payment of the awards are not

1    justified at this point.

2              Specifically, Your Honor, as you are well aware,

3    Your Honor had urged the creation of an emergency fund to

4    help those who are suffering from opioid addictions.

5    Unfortunately, that was not created, and funds have not yet

6    gone out to help opioid victims --

7              THE COURT:  Well, these people have nothing to do

8    with that.  That wasn't their decision.

9              MR. SCHWARTZBERG:  At the lower level, that's

10   correct, Your Honor.  But in terms of the facts of the case

11   --

12             THE COURT:  I mean --

13             MR. SCHWARTZBERG:  -- if management could focus on

14   getting funds out to those who are victims of the opioid

15   epidemic, rather than paying extra awards to --

16             THE COURT:  I'm not -- you know, I'm sorry.  This

17   is just so wrongheaded.  I rarely say this about your

18   office, but these people, A, are not the decision-makers,

19   and B, even the decision-makers here for the company are not

20   responsible for there not being an emergency fund.  It's

21   just -- it doesn't have any bearing on anything.  And it's

22   really -- it's just so wrongheaded.  I'm sorry.  I rarely

23   have this problem, but I really do on this point.  It just

24   doesn't make any sense to me.

25             MR. SCHWARTZBERG:  Then, Your Honor, I'll move on.

1    The other issue we brought forth in our objection was the

2    $8.1 million targeted retention fund, which out of all of

3    the awards being sought, it's the least arguably

4    compensation and seems to be an award that from the reading

5    of the motion seems to be more of a discretionary award.

6    The method by which it's going to be paid, the amount that's

7    going to be paid, to whom it's going to be paid, are very

8    vague and not possible to determine from the motion.  And

9    based on that, we didn't think that was justified by the

10   facts and circumstances of the case.

11              THE COURT:  Okay.  So are you -- is your office

12   going to be part of the discussions on the eight people that

13   the settling parties have carved out of this order?

14              MR. SCHWARTZBERG:  Your Honor, we're always happy

15   to talk to the Debtor or any of the parties on the KEIP, and

16   we're open to discussions if people would invite us.

17              THE COURT:  I mean, the reason I ask this is that,

18   first, I don't think there's any argument that those people

19   are insiders.  In fact, they're not insiders.  So they can

20   be provided with a retention payment.  And the reason I

21   think that it makes sense to be part of the discussion, as

22   opposed to just saying I don't know, is that it's a highly

23   counterproductive exercise to identify public the people who

24   are so important, people who are not insiders and who are so

25   important that you need to pay them more to stay, than

1    rather to share the information with the economic parties in

2    interest, who can then double check your analysis.

3              To me, this is very similar to the argument that

4    has been refuted by me a number of times, recently by Judge

5    Seidel, affirming me in the Windstream case, as well as by

6    Judge Hoffman, very respected judge from Ohio in the Murray

7    Energy case, that you have to disclose all of the necessary

8    vendors in the motion, which ensures that you're going to be

9    paying more and angering more people than if you had a

10   process to identify them that has checks and balances within

11   it.

12             So it seems to me that the approach taken by the

13   Committee and the two ad hoc committees and the governmental

14   entity committee is the right one, which is we want to do

15   the due diligence on this and see if there's something we

16   disagree with the Debtors about, as opposed to laying out

17   publicly, you know, who the Debtors think they really need

18   to pay more to keep, which in this context, Congress

19   expressly permits, than to pay more to keep them, because it

20   recognized that unless you're feathering your nest, you're

21   authorized to pay a retention plan.

22             So anyway, if you have a concern about that, I

23   would urge you to be on the call, or at least have a

24   debrief, as you often do -- I'm not faulting you on this --

25   you often do have a debrief.  And it's not ready yet.  But I

1    urge you to do it, to get it, as opposed to just saying we

2    don't know.  Because I think there's a good reason why you

3    don't publicly disclose this, just as there's a good reason

4    why the Committee and the other parties in interest said,

5    well, we want to know more.

6              MR. SCHWARTZBERG:  Yes, Your Honor.

7              THE COURT:  Okay.  Is there anything else?

8              MR. SCHWARTZBERG:  No, Your Honor.

9              THE COURT:  Okay.  All right.  Anyone else?

10             MR. QUINN:  Your Honor --

11             MR. PREIS:  This is our -- sorry.

12             THE COURT:  I'm sorry.

13             MR. QUINN:  This is Michael Quinn.

14             THE COURT:  Go ahead, Mr. Quinn.

15             MR. QUINN:  Arik, would you like to go first?

16             MR. PREIS:  No, I think probably you should go

17    first because you're objecting.

18             MR. QUINN:  Your Honor, this is Michael Quinn

19    again, from Eisenberg & Baum, from the ad hoc committee on

20    accountability.  Our argument here for not authorizing the

21    KERP is that Purdue should not be granting companywide

22    bonuses when it's been engaged in multiple crimes.

23             This plan, as constructed by the compensation

24    committee of the Board of Directors, promotes companywide

25    bonuses, or whatever term the Debtors would like to call

Page 116

1    them, without regard to who it's going to.

2              One caveat to that, which the Board approved was

3    that these bonuses wouldn't go to hourly wage workers.  Six

4    weeks before they filed their motion for you to approve

5    these bonuses, the Department of Justice filed its claims in

6    this case.  Within those claims, the Department of Justice

7    stated that Purdue's misconduct gave rise to criminal

8    liability.

9              Both states also provide their claims to this

10   Court in the summary, and both the consenting states and the

11   nonconsenting states agreed that all unlawful conduct

12   persisted.

13             Our issue is that the plant is not accounted all

14   for carving out any employees that engaged in wrongdoing,

15   let alone alleged wrongdoing.  Take, for example, in --

16             THE COURT:  Is it the other way around?

17             MR. QUINN:  Well, yeah, I think you're right.

18   It's the other way around.  My apologies.

19             THE COURT:  Okay.

20             MR. QUINN:  Take, for example, Your Honor, in the

21   DOJ's claims, they cite -- the summary claims -- they cite

22   the Practice Fusion case.  Now, our committee is aware of

23   this case, as we brought it up last spring.  In the original

24   Practice Fusion information that was filed last January,

25   U.S. Attorney for the District of Vermont recognized that

1    the coconspirators of the case, who the DOJ in their claim

2    showed it to be the pharmaceutical company, Purdue, were

3    engaged in those crimes.

4              The information further specified specific titles,

5    without giving names, such as a brand manager, a director of

6    e-marketing, and a physician.  This, to me, shows that those

7    type of individuals, those type of titles, are squarely

8    within the KERP plan as potential employees to receive these

9    bonuses.

10             My concern is that, A, it's possible those

11   employees are still retained and will be getting bonuses,

12   but also that the Board of Directors didn't evaluate whether

13   this companywide plan is great, considering the potential

14   crimes.

15             THE COURT:  But you --

16             MR. QUINN:  Now --

17             THE COURT:  Have you --

18             MR. QUINN:  Now, I under --

19             THE COURT:  Have you read Paragraph 10 of the

20   order?

21             MR. QUINN:  I don't have it in front of me, Your

22   Honor, but I'm assuming it has to do with a mechanism

23   they've created that says if they're convicted in a court,

24   the bonuses will be clawed back.  Is that what you're

25   referring to?

Page 118

1          THE COURT:  Yes.

2          MR. QUINN:  Well, the problem with that is it puts

3   a strong onus on the government to conduct the kind of

4   activities that should be left to the Board of Directors.

5   You know, it sort of shifts the burden for the government to

6   prosecute a case, to bring it to court, to conduct laborious

7   discovery, and to reach some kind of conclusion regarding

8   these crimes.

9          Now, Your Honor, as you can probably imagine,

10  having spent some time with me today, there's been years

11  where, especially in my early days as an associate, I didn't

12  receive bonuses.  My firm wasn't going to give me a bonus

13  and depend that -- you know, if there's a finding in a court

14  that Mr. Quinn can't do his business at an extraordinary

15  level, that we should claw back those bonuses.  And I think

16  the same applies here, Your Honor.

17         My other issue -- and I'll conclude with this --

18  is that it's just another sign that while Purdue, as the

19  Debtor says and as Debtors' counsel says, is trying to

20  become an asset in the fight against the opioid crisis, some

21  of these long-term plans that have been in place, as the

22  Debtor mentioned, for 20 or more years are still persistent.

23  So this why I'm asking for the KERP plan to not be

24  authorized at this time.  Thank you.

25         THE COURT:  Okay.

```
 1              MR. HUEBNER:  Your Honor, I don't -- Mr. Preis, I
 2      need to say just a couple of things, but why don't you go
 3      first, and then I guess I will (indiscernible).
 4              MR. PREIS:  Your Honor, is it okay if I speak
 5      now.
 6              THE COURT:  Yes.
 7              MR. PREIS:  Okay.  For the record, again, Arik
 8      Preis, from Akin Gump Strauss Hauer & Feld, on behalf of the
 9      official Creditors' Committee.
10              Your Honor, I just wanted to make (indiscernible).
11      I want to speak briefly about the compromise that we've
12      reached with the Debtors regarding the insider bonus and
13      non-insider retention plans.  I'm not going to reiterate
14      what was in the Debtors' papers for what they said on the
15      record regarding the agreement, but I wanted to give you
16      some background as to why we reached the deal that we did.
17      I'm not going to comment on some of the things Mr. Huebner
18      said that we disagree with, including some things he said
19      about the attrition rate and how he characterized that.  But
20      it's not (indiscernible) --
21              THE COURT:  You faded out.  Can you hear me, Mr.
22      Huebner?
23              MR. HUEBNER:  Yes, Your Honor.  You're perfectly
24      clear.  I think Mr. Preis was unfortunately --
25              THE COURT:  Mr. Preis?  Mr. Preis faded out
```

1    though.  I can't hear him.

2            MR. HUEBNER:  Yeah.  I -- is there a problem --

3            THE COURT:  Mr. Preis, can you just check to make

4    sure you're not on mute?

5            MR. HUEBNER:  Can somebody from Akin Gump text

6    him, please?

7            MR. HURLEY:  Marshall, I texted him.

8            THE COURT:  Okay.  That was Mr. Hurley?

9            MR. HURLEY:  Yes, Your Honor.  Yes.

10           THE COURT:  Okay.  All right.  Well, you know

11   what, Mr. Huebner, why don't you just respond while Mr.

12   Preis is getting back on the phone?

13           MR. HUEBNER:  Sure.  Your Honor, just very

14   quickly, as unfortunately, I may not give him enough time to

15   get back on the phone.  I don't really have very much to

16   say.

17           With respect to the U.S. Trustee's comments, I

18   want to be very clear.  I think the Court echoed the

19   sentiments.  It is very, very unfortunate that funds have

20   not yet gone out.  It's also unfortunate, if it were

21   possible, that this case was not already over and all the

22   funds going out.

23           But the people who object to this plan have no

24   control whatsoever over the fact, as this Court knows well

25   and I think everyone else on this call knows well,

Page 121

1    essentially that there are five of the creditor groups in

2    this case just could not agree on an ERF, and at the end of

3    the day directed us to stop pushing for it because it would

4    not have gone well, given their fundamentally different

5    positions.

6              To say that someone out of the plant in Wilson,

7    North Carlina or up in Rhode Island shouldn't get paid the

8    part of their compensation that had been withheld for 30

9    years and paid at year end because of differing views at the

10   high levels in government and otherwise over ERF, simply

11   doesn't make any sense.

12             But we share the frustration that money is not yet

13   out to help people.  This is not the right way to address

14   that.

15             With respect to the smaller number of people in

16   the retention plan, Your Honor, just so the record is clear,

17   I think our papers are clear on this point.  The targeted

18   retention is actually just a continuation of the plan that

19   was approved last year.  We're trying to spend money

20   judiciously and only where we need to, because we know where

21   every dollar that's there now is not going, and I think we

22   try to be sensitive to that everywhere we can.

23             With respect to Mr. Quinn's relatively limited

24   comments, I'll also be limited.  What Mr. Quinn may not know

25   is that last year, we already were, I think, collectively

Page 122

1    quite sensitive to not paying people for (indiscernible) in

2    the company's history that were, at a minimum, much more

3    complex and under generally very strong views by the

4    company's conduct.  And we did things with respect to the

5    various programs that essentially cut out the period that

6    ended very early in 2018, when detailing stopped.  We're now

7    free of that, and so, you know, the reality is that this is

8    2020 compensation when Purdue was in Chapter 11, under the

9    watchful eye of frankly hundreds of people, and dozens of

10    staff, and 48 attorneys general, and the DOJ, and a monitor,

11    and a self-injunction.

12              So I understand that people have very strong views

13    about Purdue's past in all direction, and certainly with Mr.

14    Quinn's clients, and I actually read some of their stories

15    last night.  And obviously, I have nothing but endless

16    sympathy and pain for people who have suffered addiction, or

17    lost children, or the like, which is just unspeakable, and

18    there's no response to that.  But the reality is that this

19    is for 2020, when maintaining the value of these assets so

20    that they can be deployed to god-willing stop, and

21    ameliorate, and address the current crisis raging, is what

22    this is for, and we believe it's carefully and appropriately

23    tailored to do so, and I will leave my remarks at that.

24              THE COURT:  Well, let me ask you, obviously

25    Secretary, former Governor Vilsack is the monitor in this

1    case.  Is there a reporting mechanism whereby if he

2    determines that someone is engaging in misconduct, he'll

3    report that to the board, and the board can take appropriate

4    action, including cancelling payments.

5              MR. HUEBNER:  Your Honor, the company has a very

6    broad compliance program, that as you might imagine gets  a

7    lot of attention, and there compliance reports.  I've

8    probably been at every board meeting for the last now,

9    almost three years.

10             And it's not just Secretary Vilsack, although I

11   think that is also true, that he certainly has brought to

12   the board, you know, whatever concerns he has, either

13   structural or otherwise.  I don't believe, to my knowledge,

14   I don't want to sort of (indiscernible), so I don't believe

15   that he has, in fact, ever pointed at an individual

16   employee, because his current practice analysis is really

17   about structures, and policies, and procedures, and best

18   practices.

19             But there's actually a broad array of other

20   mechanisms in place that are designed to ensure that the

21   behavior of the company in the current period would

22   hopefully be above anybody's reproach, even its most severe

23   critics.  And obviously I can -- I'm not getting

24   (indiscernible) anybody to say that if obviously the company

25   found out that people were engaged in this conduct at

1   present, immediate, decisive action would unquestionably be

2   taken.

3              THE COURT:  So, Mr. Preis, I see you're back on.

4   I decided to go ahead, because you had other colleagues on

5   the phone, with just letting Mr. Huebner respond briefly to

6   the two objections.  But you cut out pretty early in your

7   remarks.

8              MR. PREIS:  Okay, and thank you, Your Honor, and I

9   apologize for that.  And I was, I did catch up, I did ask my

10  colleagues what Mr. Huebner was saying, so I think I am

11  caught up.  May I start over?

12             THE COURT:  Well, where you left off that you

13  weren't going to say why you might disagree with the Debtors

14  on their view of attrition, but then you cut out.

15             MR. PREIS:  Okay, so then what I was going to say

16  is, what I really want to address the reasons why we reached

17  the deal that we did.  And I think that if I provide you

18  these five points, it may help you as you consider the

19  objections that were raised.  I'm also going to address the

20  two objections that were raised specifically.

21             So first and foremost, I want to thank the

22  advisors to the ad hoc committee, and the nonconsenting

23  state group, and the MSEG, as well as many of the actual AGs

24  in the nonconsenting group, who we worked closely with and

25  coordinated with over the past few weeks, in reaching a

1    compromise with the Debtors.  As the Debtors said, the

2    compromise was supported by all of our of us.  We think that

3    this full agreement by all the four groups is an important

4    factor here.

5            The second point I want to make is that the fact

6    that the four groups, we all view the non-insiders as very

7    different than the six insiders that remain as part of the

8    KEIP.  We were very adamant about the fact that we needed

9    more time to consider the request regarding the six

10   insiders, and that more thoughtful and careful consideration

11   and analysis as needed for the programs that were proposed

12   for then.  And frankly the analysis for then will include

13   both economic and non-economic factors.

14           Conversely, with regard to the non-insiders, while

15   the creditors' committee was not excited about the fact that

16   the Debtors requested retention payments of $51 million to

17   virtually all of their 614 employees over the next three

18   years, the UCC made the decision that, as you correctly

19   pointed out earlier, that penalizing the non-insiders for

20   the situation we're in doesn't seem appropriate, and as

21   such, we focused on the discrete issues with the non-

22   insiders, and I'm going to raise those.

23           That being said, I don't want there to be any

24   misunderstanding about the following, which is the fact that

25   we were able to reach agreement on the non-insiders, and the

1    way that we reached agreement on them should not be viewed

2    as a roadmap of any sort with regard to each of the

3    insiders.  We'll negotiate and discuss the insiders

4    separately.

5            The third thing I wanted to raise is a key facet

6    of the compromise, is that the retention program does not

7    bind the hand of the reorganized Debtors.  I think you

8    alluded to this earlier, but all payments to the non-

9    insiders were made as for the effective date if not sooner,

10   subject to claw back that we talked about.  This is designed

11   to give the reorganized Debtors the flexibility going

12   forward, and frankly, finality looking backward.  I think

13   you also, you realize as well, because you've made an

14   illusion to it earlier, that this is actually better, in

15   some ways, for the employees, because they get their dollars

16   earlier.

17           Fourth, we, that all four groups appreciate the

18   Debtor's agreement, both with regard to economics, which are

19   the eight percent reduction, the overall plan from the non-

20   insiders, and the timing of the payments, which are slightly

21   delayed.  I further point out something that you raised with

22   the Debtor's experts, which is that the eight percent

23   reduction only applies to 131 of the Debtor's 614 employees.

24   Meaning that roughly 79 percent of the workforce is not

25   affected by the economic reduction.

1          And I actually thought your question was perfect,

2    Your Honor, about the question about how the employees are

3    affect, or how that chart was affected by the decrease.  And

4    in fact the Willis Towers Lawson person said that it wasn't.

5    And in fact, you know, because, as you correctly solicited

6    from the Willis Towers Lawson person, that chart deals with

7    2020 compensation.  And in fact, we have now frontloaded

8    2020 compensation.  And so one might argue that employees

9    are actually better off in looking at that chart.

10          Fifth, and finally, I do want to flag for the

11   Court the deferral of the approval of payment, of the

12   retention payments to eight non-insider employees, until the

13   October omnibus hearing.  There was some back and forth

14   between both you and the Office of the United States

15   Trustee, as well as the ad hoc group of accountability

16   regarding certain items.  And I would just say that we hope

17   to work with the Debtors on an appropriate resolution for

18   those employees, between now and the objection deadline, and

19   we are happy to include the ad hoc group of accountability

20   and the Office of the United States Trustee in those

21   discussions.  I think they would benefit, and they would

22   understand why we asked for the deferral.  With that, Your

23   Honor --

24          THE COURT:  Can I interrupt you on that point?

25          MR. PREIS:  Sure.

```
 1            THE COURT:  The U.S. Trustee is a government

 2    official.  I certainly trust the exercise of his discretion.

 3    I'm assuming your discussions, which cover fairly personal

 4    matters with the Debtors on that topic are confidential.  I

 5    would not want this five-person group, which has already

 6    made unfounded and inflammatory statements, to go into such

 7    a review untethered by confidentiality.  I just don't trust

 8    them.  So you may, you may invite them, and if they're

 9    willing to get under the tent, fine.  But otherwise, no.

10            MR. HUEBNER:  Your Honor, for what it's worth,

11    Your Honor, this obviously was -- we were not consulted.

12    This is our information about our employees.  With all due

13    respect to Mr. Preis, we will have to talk later, I think,

14    about the mechanics for (indiscernible) people, and I don't

15    really think that should be offered in open court,

16    (indiscernible) information?

17            THE COURT:  That's fine, you know where I'm coming

18    from.

19            MR. PREIS:  Understood, Your Honor, and I should

20    have correctly pointed out that this would be subject to

21    confidentiality.  I didn't mean anything otherwise, given

22    the sensitive nature of the reason for the deferral.

23            With that, Your Honor, I have nothing else to add,

24    but as I mentioned at the outset, I thought it would be

25    helpful for you in considering the objections, to understand
```

1    the position -- our position as to why we reached the

2    compromise.  I don't know if either of the three

3    governmental groups have anything they would like to add as

4    well?

5              MR. TROOP:  Your Honor, this is Andrew Troop of

6    the nonconsenting states.  I would just reiterate Mr.

7    Preis's point that the compromise we've reached is

8    independent of the actual representations, that the Debtors

9    had made on a variety of points, and that all of those

10   issues are potentially in play in the future.  This was a

11   compromise reached in recognition of the people involved and

12   the specific concerns that we have with respect to some of

13   them, which is why there is a deferral mechanism.  And

14   unless you have any other questions for me, in particular,

15   Your Honor, that's all we have to say on this one.

16             THE COURT:  Okay, thanks.

17             MR. HUEBNER:  So Your Honor, if I may, just

18   because we had to go out of order because of those

19   connection problems.  I just need about 60 more seconds, I'm

20   going to cover Mr. Preis's things.  I will be extremely

21   brief.

22             Number one, just because Your Honor has noted at a

23   prior hearing that the media sometimes pics up on things in

24   ways that are not accurate and unhelpful, with apologies to

25   Mr. Preis, to call this $51 million of retention, it's

Page 130

1   actually in fact just completely inaccurate.  This is a

2   combination of long-term incentives that have been earned

3   over a three-year period, that then would be repaid in 2021,

4   2022, and 2023, and the company's annual incentive program,

5   and a much smaller actual retention program, that I believe

6   is only about $8.1 million.

7           I just, I really -- (indiscernible) to all of us,

8   if there was a headline that came out that said, you know,

9   51 million in retention bonuses approved, because that's

10  just flatly wrong.  It's not what it is, there are many

11  components to it, and I think it's important that everyone

12  understand that clearly.  I think we have been very clear.

13          With respect to the second point  about the

14  request not to bind the hands of the post-emergence entity,

15  again or the exact reasons the Court asked about, we

16  actually at first were quite surprised and taken aback by

17  that request, because our goal is to create an enterprise

18  tant no matter want, people want to do it post-emergence, is

19  designed to be durable and to hold its people to maximize

20  value during whatever period it runs, in whatever form it

21  runs.

22          And obviously one of the reasons you have a long-

23  term incentive plan that is earned year by year, but paid on

24  a three-year schedule, is to hold people.  And I don't think

25  I've ever had anybody in my whole career ask me, you know,

1    those payments due in '23 and '22, I want to pay them much

2    earlier, which is why as I said before, we understood it,

3    and we agreed to it as frankly our CFO and others were

4    concerned about the loss of the ten-foot hold.

5           Because somebody having to wait to actually get a

6    payment is frankly going to be viewed differently than the

7    risk of being sued for a claw back, especially for

8    potentially a more modest amount, or the cost of legal fees

9    just might not justify it, if someone were being rationale.

10   So we asked them, and added a claw back back in for some of

11   those, so at least we had that tool to hold the company

12   together, in all the ways we knew how, for the benefit of

13   stakeholders.

14          But again, we're not the ones that asked to

15   accelerate everybody's payments.  I just, I don't want

16   people to think that this is sort of one of those situations

17   where the Debtors have thoughtlessly asked for quite big

18   bonuses, and to pay them too early to people.  It's not true

19   at all.  We were asked by the creditors to accelerate the

20   payments, which we did, and put a claw back back in.  And I

21   think that that's really a very important point.

22          And then with respect to participation, again, I

23   have no disrespect at all, at all, to the five individuals,

24   and their life stories and experiences on the core committee

25   for accountability.  But we have many, many cooks in this

1    kitchen with a lot of people, many people who are official

2    representatives, whether they are governmental officials, or

3    the UCCs for all creditors, or the U.S. trustee's office.

4    It's not going to be simple, frankly, I think, to

5    convenience the Debtors of Mr. Preis's quote, "offer", close

6    quote, that we should have individual employee information,

7    and data, and compensation data, and the like, be share with

8    yet another constituency.  We're open to listen, but that's

9    actually something that's best discussed behind closed

10   doors, not at a hearing with 50, 70, 80 people listening in.

11           So with that, Your Honor, I appreciate at the end

12   of the day, we are, I think (indiscernible) again, which is

13   that we have non-objection, or support for this program,

14   from all of the major creditor consistency and economic

15   stakeholders in this case.  The only two objections are that

16   of the trustee and the five individuals, who are represented

17   by the committee on accountability.  And we would ask that

18   the modified form of order that of course includes the, what

19   if there is wrongdoing found language, be approved.

20           THE COURT:  Okay.  All right, anything else?  All

21   right.  I have before me that portion of the Debtor's

22   motion, dated September 9, 2020, for approval of a key

23   employee retention plan, which has various features in it,

24   but would basically cover 2020 through 2023 with the timing

25   adjustment laid out in the motion, and as modified, as laid

1    out in the Debtor's omnibus reply in support of the motion

2    the other day.

3              When evaluating such a plan, which I'll refer to

4    as the KERP, even though it has various elements to it, the

5    Court must first determine whether the employees to be paid

6    are insiders or not.  That is because in Section 503(c)(1),

7    the Congress precluded, effectively, given the conditions in

8    that section, the application or approval of a key employee

9    retention plan for insiders.

10             The motion sets out how the Debtors went about

11   concluding whether the participants in the KERP are insiders

12   or not, under Section 101(31) of the Bankruptcy Code, in

13   large part based on, entirely based on prior rulings by me

14   in these cases, which in turn relied on well-established

15   case law, including In re Borders Group, Inc. 453 B.R. 459,

16   Bankr. S.D.N.Y. 2011, and In re Charles P. Young Company,

17   145 B.R. 131, Bankr. S.D.N.Y. 1996, and other cases that I

18   had previously cited.

19             No one has contended here that any of the

20   participants in the KERP is an insider, which means that

21   instead of having to meet the, essentially impossible test

22   to meet in Section 503(c)(1), the Debtors have to satisfy

23   the requirement of 11 U.S.C. Section 503(c)(3), see for

24   example, In re Patriot Coal Corp., 492 B.R. 518, Bankr. E.D.

25   Missouri 2013.  In re Residential Capital, LLC, 491 B.R. 73

1   Bankr. S.D.N.Y. 2013, and In re Global Aviation Holdings,

2   Inc., 478 B.R. 142, Bankr E.D.N.Y. 2012.

3           That test, as set forth in the statute, says that

4   there shall not, neither be allowed nor paid other transfers

5   or obligations that are outside the ordinary course of

6   business, and not justified by the facts and circumstances

7   of the case, including transfers made to or obligations

8   incurred for the benefit of officers, managers, or

9   consultants hired after the date of the filing of the

10  petition.

11          The case law is clear that the facts and

12  circumstances of the case requirement is to be interpreted

13  generally, as one interprets an action out of the ordinary

14  course by a Debtor in possession, or trustee, under Section

15  363(b) of the Bankruptcy Code, which is often referred to as

16  a business judgment standard, although that standard is not

17  the deferential corporate law business judgment standard,

18  but rather a standard laid out, I believe, by the Second

19  Circuit, in, among another cases In re Orion Pictures, 4

20  F.3d 1092, that requires the bankruptcy judge to determine

21  whether under the facts and circumstances, the KERP is the

22  proper exercise of business judgment, or makes good business

23  sense.

24          See also In re Velo Holdings, 472 B.R. 201-212,

25  Bankr. SDNY 2012.  The Borders Group case that I previously

Page 135

1    cited at Page 473, and most appropriately In re Dana Corp,

2    358 B.R. 567, Bankr. SDNY 2006, where in the context of a

3    determination under Section 503(c)(3), Judge Lifland laid

4    out a number of factors that would be worth considering when

5    determining whether an employee plan passes the facts and

6    circumstances test, i.e. as a proper exercise of business

7    judgment.

8              Those factors are well-recognized, and have been

9    applied by numerous other cases, including the ones that

10   I've also cited.  They are, is there a reasonable

11   relationship between the plan proposed, and the results to

12   be obtained, i.e. will the key employees stay for as long as

13   it takes for the Debtor to reorganize, or market its assets,

14   as the case may be, i.e. is it calculated to achieve the

15   desired performance?  Two, is the cost of the plan

16   reasonable in the context of Debtor's assets, liabilities

17   and earning potential?

18             Three, is the scope of the plan fair and

19   reasonable, does it apply to all employees, does it

20   discriminate unfairly?  Four, is the plan consistent with

21   industry standards?  Five, what will the due diligence

22   efforts of the Debtor and investigating the need for a plan,

23   analyzing which key employees need to be incentivized, what

24   is available, and what is generally applicable in a

25   particular industry?  And lastly, did the Debtor receive

Page 136

1       independent counsel when performing due diligence, and in

2       rating an authorizing the incentive compensation, or in this

3       case, the compensation, period.

4               Not mentioned by Judge Lifland, but very

5       important, I believe, is the notice and opportunity for a

6       hearing requirement that underlies the whole provision and

7       the business judgment standard as applied in bankruptcy

8       cases.  And the nature of the responses to the proposal in

9       particular, whether the proposal has substantial support at

10      least among the creditor body.  Not all these factors

11      necessarily will be applicable.  Ultimately the Court,

12      again, has to evaluate the business judgment of the Debtors

13      in proposing the plan.

14              Here, as modified, as set forth again in the

15      Debtor's supplemental reply, or on to this reply, excuse me,

16      in support of the motion, the relief that's being sought

17      before me now has the support, as negotiated, with the key

18      constituencies in this case, the official unsecured

19      creditors committee, the ad hoc governmental committee, the

20      ad hoc committee of nonconsenting states, and the committee

21      of nonstate governmental entities, who again, represent

22      basically all the people in the United States.  The proposal

23      is objected to by the United States Trustee, and by a group

24      of five personal injury claimants and no others.

25              In addition, it appears clear to me, indeed I

1    believe uncontroverted, that the KERP, as proposed, is at or

2    around the average, on a total basis, of all the factors

3    combined, of compensation in the Debtor's own industry, the

4    pharmaceutical industry.  It's testified to both in a

5    declaration and on the record today, by the Debtor's

6    compensation consultant on this trial, from Willis Towers --

7    that is, a broad-based database of roughly 80 to 85

8    pharmaceutical companies of the same size, or roughly the

9    same size as the Debtors -- and moreover does not take into

10   account the additional pressures on a Debtor's non-insider

11   workforce and related uncertainty, resulting from the

12   Debtors being in Chapter 11, and there not yet being a

13   proposed Chapter 11 plan.

14          Congress, in Section 503(c)(3) for non-insiders

15   clearly preserved the ability to pay more than market, to

16   retain key employees who are not insiders.  And the Debtors

17   could make a case for paying more than the 50th percentile,

18   give or take five percent above or below, with respect to

19   non-bankruptcy companies, given the pressures that are on

20   them, and their employees in this Chapter 11 case.

21          The plan further appears to me not to discriminate

22   unfairly among employees.  It's quite comprehensive.  It is

23   also consistent with the Debtor's approach, with respect to

24   their employees, for at least 20 years, and in the case of

25   most of their employees, for over 30 years.  It is

1   uncontroverted that it's consistent with industry standards.

2   It is also uncontroverted, of course, that the Debtors'

3   board and compensation committee were advised by a

4   compensation consultant that's well-recognized as well as

5   counsel, and of course there was dud diligence on what is

6   now before me by well-represented creditor groups, including

7   the official creditors' committee, which have the resources

8   to engage in the type of analysis that I've just described.

9           The U.S. Trustee has objected to the plan on two

10  grounds, one of which I find completely unjustified, even

11  frankly as being raised, which is that these employees, who

12  are concededly not insiders, should somehow have their

13  market-based comprehensive pay reduced substantially, by --

14  in light of the fact that the Debtors have not confirmed a

15  Chapter 11 plan yet, or have made an emergency fund

16  distribution, pending such confirmation.

17          I have never seen, and have been cited to no case

18  law where that would be -- where that type of analysis would

19  be relevant to these types of employees, and I can

20  understand why, given the fact that they have no say over

21  either of those things, other than just their ability to

22  keep working.  They were clearly not negotiating the

23  emergency relief fund, that wasn't their job.  And

24  similarly, they are not negotiating a Chapter 11 plan.  The

25  people who are negotiating both of these matters were the

1   Debtor's senior management, the Debtor's professionals, and

2   professionals for other key constituents in the case, and in

3   the case of plan negotiations, two highly compensated and

4   effective mediators.

5           Secondly, the Debtor -- the U.S. Trustee contends

6   that the cost of one of the portions the KERP as a

7   percentage of the Debtor's revenue, which is one of the

8   factors, arguably, in the Dana II analysis, I used the cost

9   of the plan reasonable in the context of Debtor's assets,

10  liabilities, and earning potential.  That is considerably

11  over the 50th percentile.  But I will note first that it is

12  only one of the factors, and moreover, it is just a cost

13  factor related to the Debtor's revenue, as opposed to

14  assets, liabilities, and the other factors listed by Judge

15  Lifland, including the importance of these employees and

16  whether the proposal is necessary to achieve the desired

17  result.

18          Far more important to me, frankly both in

19  connection with an evaluation of a KERP and a Key Employee

20  Incentive Program, which is not before me today, is how the

21  overall proposed compensation relates to the market in the

22  Debtor's industry, and although less meaningful, how it

23  relates to comparable companies in Chapter 11.  Here, the

24  motion's underpinnings are clearly supported by the record,

25  and I believe it is quite easy to find that the KERP, as

1    negotiated, with the proper exercise of business judgment,

2    subject to review that is far beyond any sort of review that

3    would occur out of a bankruptcy case, and justified by the

4    facts and circumstances of the case.

5              I do have some concern of the acceleration of

6    payment upon the Debtor's emergence from bankruptcy.  On the

7    other hand, that concern, which is frankly not retentive,

8    and of course one element of the Key Employee Retention Plan

9    is to retain employees.  On the other hand, I believe it's

10   more important to pay employees a market level of

11   compensation on an aggregate basis to ensure their

12   retention, and in the few circumstances here where due

13   diligence shows that even more is required, to do so on a

14   very targeted and thoughtful basis, of which there's a

15   process in place now to meet that decision.

16             Further, I'm given some comfort by the fact that I

17   noted earlier in today's hearing that the key parties in

18   interest here have acted responsibly throughout this case

19   and in good faith to maximize value, so that that value can

20   be distributed to their constituents, to abate the opioid

21   crisis.  It seems to me that they will not act foolishly to

22   cause the workforce to be unduly concerned about its future

23   following the effective date of the plan.  I think they

24   simply want to preserve flexibility as to what a plan will

25   look like.

1        But I do not view this group, who after all are

2   attorneys general, and comparable city council -- I'm sorry,

3   city, county, and other representatives, travel

4   representatives, all of whom are fiduciaries for those

5   people, to take an action that would cause the Debtors to

6   lose substantial value, by losing substantial numbers of its

7   -- of their employees.

8        The five-person ad hoc committee essentially

9   argues that the Debtors, in the past and perhaps now,

10  although they've not offered any support for that matter of

11  contention, are essentially a criminal enterprise, and

12  therefore should not have employees who are compensated.  I

13  have dealt with this in the past, that the Debtors are in a

14  highly regulated industry, their products are lawful, and

15  used in proper ways.  The Debtors have substantial checks

16  and balances in place to ensure that that continues.

17       In addition, at my request at the beginning of the

18  case, the Debtors have negotiated with the key parties of

19  interest, and agreed upon the appointment of Mr. Vilsack as

20  their monitor, over and above the regulations that they are

21  under.  I do not believe it is a propose exercise of

22  business judgment to pay employees of these companies below

23  market compensation, because of past events, pre-petition

24  events.

25       There is a, again, a provision that I had a

1    substantial hand in, a paragraph in the order that provides

2    for a claw back if past criminal activity has been

3    identified.  The Debtors are on record that no such

4    misconduct will be permitted to occur post-petition, and so

5    I am focusing again on the business judgment of whether to

6    pay these non-insider employees a fair compensation on a

7    market rate.  And to me, given the underlying premise that

8    has not been refuted here, that the value of these Debtors

9    is maximized by their continuation, and in fact that premise

10   has been if anything, strengthened by the result of the

11   mediation that just concluded, I concluded that objection

12   should be overruled.

13          One last point, I will note that there has been

14   loose language here, as loose language in prior objections,

15   that described this program as a bonus program.

16          The record is clear that these payments, in

17   addition to being, tracking a longstanding practice of over

18   30 years, in most cases, albeit reduced from what they were

19   prepetition, is necessary to compensate these employees at

20   market in their industry.

21          To me, as I've said previously, and has not been

22   refuted, but merely has just been stated again, it's a

23   bonus, without refuting my earlier finding.  This is really

24   compensation; this is not a bonus.  If there's any bonus

25   here, it's the limited stay bonus for the eight people.  So

1   with that, I'll grant the motion; the order can be submitted

2   as it has been revised.

3           The last thing I'll say, and I'll be very brief,

4   as we may lose the feed here, since we've been on for going

5   close to four hours.  I, my thinking on key employee

6   incentive plans has been evolving over the last few years.

7   And I think what I would benefit from, if the parties cannot

8   reach agreement on a key employee incentive plan for the

9   insiders is again, a focus on the market of the Debtor's

10  competitors.  And a recognition, of course, that those plans

11  often include equity, which would be difficult to include

12  here, except for post-effective date equity, and even then

13  would be problematic.

14          And I think Willis Towers and people of their like

15  would be better off focusing on how to address that simple

16  distinction between equity and cash than on focusing on

17  Chapter 11 KEIPs, key employee incentive plans.  I want to

18  know about what's the industry standard, and I want to know

19  whether the incentives are properly targeted.

20          I will note that fighting over other things

21  related to KEIPs really does not lead to much of a change,

22  if anything, but it does lead to more cost.  See, for

23  example, Jared A. Ellias, E-L-L-I-A-S, Regulating Bankruptcy

24  Bonuses, 92 California Southern Law Review, 653, March 2019.

25  It's fine to have guidelines and incentives.  I'm fully

1    onboard with that, particularly if negotiating with key

2    parties in interest.  Looking at what other Chapter 11 KEIPs

3    did is less significant to me than the marketplace

4    generally, as long as the experts can translate cash bonuses

5    from incentive bonusses, that is, from stock bonuses, taking

6    into account the risk of the latter, and the assurance of

7    the former.

8            So with that being said, I'm not sure there's

9    anything else on today's agenda.

10           MR. RAND:  Yes, Judge, can you hear me?

11           THE COURT:  Yes, I can hear you.

12           MR. RAND:  James Rand, I'm an inmate.  I am a

13   personal injury claimant creditor, I'm calling you from the

14   United States Penitentiary, Terre Haute.  I was scheduled

15   for 9:30 telephonic hearing with you, however due to the

16   perils of a maximum-security prison, it didn't happen.

17           But I'm in communication with you now, and this is

18   rather minute, but I filed a motion for tolling of filing

19   deadline.  Due to the coronavirus sequestering and being

20   incommunicado, et cetera, I didn't have access to pens,

21   pencils, stamp, et cetera.  I couldn't send my form in to

22   the Prime Clerk, and --

23           THE COURT:  Mr. Rand, can I interrupt you?

24           MR. RAND:  Yes, sir.

25           THE COURT:  And I appreciate your patience of

1   staying on the line throughout this whole hearing.  I don't

2   believe that your motion is on the agenda for today's

3   hearing as a contested matter.  When --

4           MR. RAND:  I received notice from Court Solutions

5   to be in communication with you via telephone at 9:30 today,

6   sir.

7           THE COURT:  But that's because you wanted access

8   to the hearing.  I (indiscernible) --

9           MR. RAND:  Is it necessary that I have a personal

10  communique with you in regards to a motion of tolling of

11  filing deadlines?

12          THE COURT:  I'm going to tell you what you need to

13  do, okay?

14          MR. RAND:  Yes, sir.

15          THE COURT:  Okay, I'm assuming that you have filed

16  that motion, and asked to have it served.  I doubt you've

17  actually served it yourself, given where you are.

18          MR. RAND:  I've received a docket number.  It has

19  been filed with the Bankruptcy Court.

20          THE COURT:  All right, okay.  Now you also have to

21  get a hearing date from my courtroom deputy, Ms. Lee.  It

22  will probably be the next omnibus hearing date, under the

23  order that I entered earlier in this case, establishing

24  hearing procedures.  That way the parties will know when it

25  is on the calendar, and they can address it.

```
1              If it's not on the agenda, if it's not on the
2     calendar with the hearing date, then they're not going to
3     address it, and I'm not going to address it, because it's --
4     they haven't had a chance to focus on it, and neither have
5     I.  So I again apologize for you being on this call as long
6     as you have, but this isn't on today's agenda, and you need
7     to get it on the agenda by asking my courtroom deputy to put
8     it on the agenda, Ms. Li, L-I --
9              MR. RAND:  His name is Lee?
10             THE COURT:  Yeah, her name, Dorothy Li, L-I.  You
11    can also speak to one of the Debtor's lawyers to put it on
12    the agenda as well.
13             MR. RAND:  What is the actual phone number of Ms.
14    Li, if I may ask?
15             THE COURT:  You know, I don't know, but if you
16    just call the Bankruptcy Court in White Plains, it'll get to
17    her.
18             MR. RAND:  The what court, sir?
19             THE COURT:  My court, the U.S. Bankruptcy Court,
20    S.D.N.Y, in White Plains, New York.
21             MR. RAND:  I got you, sir.  Well, I really enjoyed
22    listening, I got quite a continuing legal education, sir.
23             THE COURT:  Okay, very well.
24             MR. HUEBNER:  Your Honor, just on behalf of the
25    Debtors, we're obviously happy to try to help, obviously the
```

1    constraints the gentleman is operating under are

2    (indiscernible), and so --

3              THE COURT:  One last point, Mr. Rand, one last

4    point.  You know, you heard about the mediation, which

5    included a mediation of personal injury claims distribution,

6    not how they will be distributed among the Claimants.  So I

7    don't know whether you're looking to have your claim be

8    deemed timely filed, because it missed the bar date.  I'm

9    not quite sure what you're looking for, (indiscernible) --

10             MR. RAND:  I filed a motion due to being

11   incommunicado, that I didn't meet the any deadline, from the

12   virus.

13             THE COURT:  Fine, again you just have to get that

14   hearing date, and then it will be considered, or the Debtors

15   will deal with you on it, as they often do, and try to

16   resolve it with you without a contested hearing.

17             MR. HUEBNER:  Your Honor, we obviously don't have

18   the motion in front of us, but you know, we will endeavor to

19   get in touch with Mr. Rand.  Mr. Rand, just to help

20   everyone, Mr. McClammy from our firm, Jim McClammy is the

21   personal who is in general one of the points of intake for

22   claims and late filed claims issues.  So if you do have the

23   opportunity to either email him or call him, we'll see what

24   we can do.  Again, we don't know the substance yet, so I

25   don't want to overpromise, but you know --

1           MR. RAND:  What number would I call, sir?  Do you

2     have an actual number you can give me.

3           THE COURT:  Just look up Davis Polk.

4           MR. RAND:  Polk, how you spell?

5           THE COURT:  Is the --

6           MR. HUEBNER:  Your Honor, I think he can find it

7     on the internet, if you don't mind (indiscernible) --

8           THE COURT:  Yeah, D-A-V-I-S --

9           MR. RAND:  I don't have internet access, I'm in a

10    maximum-security prison.  Polk, P-O-L-K, huh?

11          THE COURT:  Davis Polk, like the president.  D-A-

12    V-I-S, new word, Polk.

13          MR. HUEBNER:  Yeah, why don't I just give him Mr.

14    McClammy's office line?  Because I imagine things are quite

15    challenging over there.  Which again, is available on the

16    internet, sir, I'm not giving up anything that he couldn't

17    find, (indiscernible) --

18          THE COURT:  All right, that's fine.

19          MR. HUEBNER:  Sir, it's (212) 450 --

20          MR. RAND:  (212) 450 --

21          MR. HUEBNER:  4584.

22          MR. RAND:  Well, sir, thank you for -- I'm very

23    much obliged to you.  I'm the only person in the history of

24    the United States to be convicted of witness tampering where

25    there was no crime and no witness.

Page 149

1              THE COURT:  Well, all right, but that's neither

2    here nor there as far as this hearing is concerned.  So let

3    me ask you, Mr. Huebner, is there anything else on the

4    agenda for today?  I don't think there is.

5              MR. HUEBNER:  No, Your Honor, everything else is

6    adjourned, hopefully adjourned never to return, it's mostly

7    the motion about (indiscernible).

8              THE COURT:  Okay, very well.  So I'll look for the

9    orders that I've asked you to send me, and I'll ring off at

10   this point.  Thank you, all.

11             MR. RAND:  Thank you, sir.

12             (Whereupon these proceedings were concluded at

13   1:55 PM)

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                        Page      Line

5

6    Motion to extend Preliminary Injunction

7    Granted                             86        1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 151

1                    C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  October 2, 2020

| & | | | |
| --- | --- | --- | --- |

**&**  11:3,19 16:11
28:10 43:15 71:13
86:20 115:19
119:8

**0**

**069**  87:2

**1**

**1**  5:7 32:16 49:5
111:21 133:6,22
150:7
**10**  107:25 117:19
**100**  17:16,19
**10003**  11:22
**10017**  11:6
**10019**  11:15
**101**  133:12
**105**  3:24 75:23
**10601**  2:3
**107**  3:24 32:2
**1084**  87:2
**1092**  134:20
**10:08**  2:6
**11**  3:23 16:13 17:4
22:16,20 46:14
47:13 52:4,12
53:3,22 55:20
57:17 58:13 61:19
61:22,24 66:23
74:3 75:1 77:18
83:2 90:14 109:9
109:14,18,25
110:3 122:8
133:23 137:12,13
137:20 138:15,24
139:23 143:17
144:2
**111**  86:25
**1125**  61:2
**1129**  61:3
**113**  101:11

**11501**  151:23
**117**  105:17
**11th**  75:20 105:17
**12**  99:6 109:2
**1211**  8:24
**122**  105:17
**131**  126:23 133:17
**1330**  8:24
**136**  79:16
**1362**  8:24
**14**  34:13 102:4
110:6
**142**  134:2
**1421**  8:20
**1431**  9:1
**143799**  75:20
**145**  133:17
**15**  16:14 104:2
**15th**  70:17
**16**  29:23 51:22
**1629**  7:13 8:4,15
9:6
**1645**  3:3,8
**1647**  3:8
**1674**  9:13,17,21
10:3,10 88:20
**1685**  3:21 4:17
**1686**  4:8,17
**1687**  3:20 4:8,17
**1688**  5:2
**17**  72:19
**17-18**  101:11
**1708**  9:19
**1709**  9:23
**1710**  10:5
**1711**  3:9
**1717**  7:17
**1718**  7:24
**1720**  8:6
**1731**  8:10,16
**1735**  28:20
**1742**  10:11

**1743**  8:12
**1746**  9:8
**18**  76:2
**1875**  29:20
**18th**  55:25 74:4
85:23
**19-08289**  1:4 5:4
6:4,12,20 7:1
**19-23649**  1:3
**197**  5:7,10,19 6:9
6:16,23 7:4
**1978**  86:20
**198**  5:15
**1984**  87:2
**1988**  76:4
**199**  5:24 86:13
**1990**  86:24 87:1
**1992**  76:13
**1994**  86:15
**1996**  133:17
**1:55**  149:13
**1st**  32:14 43:22
56:11

**2**

**2**  28:7 75:21
151:25
**20**  39:18 91:6
93:11 118:22
137:24
**2003**  76:17
**2004**  66:25 78:20
**2005**  79:16
**2006**  135:2
**2009**  75:22
**201**  6:10
**201-212**  134:24
**2011**  133:16
**2012**  134:2,25
**2013**  76:3 133:25
134:1
**2014**  86:13
**2018**  86:12 122:6

**2019**  74:3,4,19
78:10 101:11
109:11 111:23
143:24
**202**  6:18
**2020**  2:5 3:2 44:22
50:23 74:4 75:20
75:21 96:1 107:24
108:18,20,21
122:8,19 127:7,8
132:22,24 151:25
**2021**  43:23 49:5
56:11 73:22 130:3
**2022**  130:4
**2023**  96:1 108:16
130:4 132:24
**205**  6:24 7:10
**206**  6:2
**211**  86:13
**212**  148:19,20
**22**  96:11 131:1
**22nd**  26:19
**23**  7:22 24:14
96:12 131:1
**24**  11:21 81:1
89:23
**248**  2:2
**25**  101:25
**26**  34:22
**27th**  34:7
**282-287**  76:17
**285-293**  76:13
**28th**  28:19 89:8
91:23 93:20
**2d**  86:12,13
**2nd**  76:2,4,13,17
79:16

**3**

**3**  45:14 54:3 100:1
133:23 135:3
137:14
**30**  2:5 3:2 89:23
91:6 121:8 137:25

142:18
**300**   2:2 86:15
151:22
**30th**   41:18
**31**   11:14 133:12
**321**   76:17
**330**   151:21
**333**   86:12
**340**   86:12
**358**   135:2
**362**   86:18
**363**   36:25 37:1,1,6
100:3 134:15

**4**

**4**   41:23 86:18
95:25 101:11
107:15,23 108:9
134:19
**40**   47:25 95:25
**423**   86:25
**431**   86:25
**450**   11:5 148:19
148:20
**453**   133:15
**4584**   148:21
**459**   133:15
**460**   79:15
**472**   134:24
**473**   135:1
**478**   134:2
**48**   64:8 66:20
122:10
**49**   107:8
**491**   133:25
**492**   133:24
**4:00**   34:7

**5**

**5**   82:7 86:19
**50**   66:19 109:4
132:10
**503**   100:1 133:6
133:22,23 135:3
137:14

**50th**   107:13,16
110:5 137:17
139:11
**51**   125:16 129:25
130:9
**512**   76:2
**514**   86:15
**518**   86:23 133:24
**52**   86:20
**52nd**   11:14
**567**   135:2
**571**   75:21
**590**   75:22
**5th**   87:2

**6**

**6**   74:4 108:1
**6,000**   34:9
**60**   34:24 129:19
**606**   89:13
**608**   89:12
**613,000**   45:20
**614**   125:17 126:23
**653**   143:24

**7**

**7**   39:11
**70**   132:10
**7023**   7:22
**73**   133:25
**743**   87:1
**762**   86:13
**79**   126:24

**8**

**8.1**   113:2 130:6
**80**   132:10 137:7
**82**   86:11
**837**   76:3
**84**   111:8
**85**   102:2,3 137:7
**86**   150:7
**89-93**   76:4
**8th**   86:23

**9**

**9**   92:12 132:22
**9014**   7:22
**9018**   3:24 32:3
**9019**   61:25
**91**   75:22
**913**   86:23
**92**   143:24
**94**   76:7
**960**   76:12
**9:30**   144:15 145:5
**9th**   92:11

**a**

**aback**   50:20
130:16
**abate**   17:5,19
81:17 110:25
140:20
**abatement**   18:10
18:12 19:20 23:17
25:24 27:18,23
39:20 42:6,20,22
80:14
**abiding**   48:25
**ability**   27:3 59:22
62:6 99:6 137:15
138:21
**able**   18:5 20:17
39:15 40:5,6,16
41:4 56:23 62:4
64:24,25,25 88:6
102:21 125:25
**absence**   31:25
35:18 36:18
**absent**   68:22
**absolutely**   53:1
55:17 56:9 59:16
68:24
**accelerate**   20:4
96:20 97:18
131:15,19
**acceleration**   96:9
140:5

**acceptable**   20:11
59:14
**accepted**   54:25
59:24
**accepting**   16:1
**access**   144:20
145:7 148:9
**accommodation**
90:22
**accompanying**
29:7
**accomplished**
46:19
**account**   137:10
144:6
**accountability**
6:24 9:23 10:4
11:20 22:24 44:2
50:19,22 51:24
52:19 54:22 55:14
60:14 72:3 89:15
91:13 102:23
115:20 127:15,19
131:25 132:17
**accountability's**
10:2 52:16
**accountable**
53:21
**accounted**   116:13
**accurate**   52:11
129:24 151:4
**achieve**   135:14
139:16
**achieved**   69:17
**achievement**
19:22 26:2 45:3
80:4
**achievements**
44:22
**acknowledge**
23:21 25:22 69:17
103:17

**acknowledged**
  110:24
**act** 140:21
**acted** 140:18
**action** 63:12
  76:13 123:4 124:1
  134:13 141:5
**actionable** 63:21
**actions** 58:5 63:10
  63:11 75:16
**active** 28:24 63:9
  70:3 83:12 84:19
**actively** 70:15
**activities** 118:4
**activity** 142:2
**actual** 39:21
  124:23 129:8
  130:5 146:13
  148:2
**ad** 6:17,24 8:5,25
  9:22 10:1,4 11:13
  11:20 18:8 22:23
  24:24 25:1,10,11
  44:1 50:18,21
  51:23 52:16,18
  55:13 60:13 67:25
  69:13,22 71:2
  72:3 74:12 75:7
  76:25 79:18 80:5
  80:5 86:4 88:16
  94:17 102:23
  114:13 115:19
  124:22 127:15,19
  136:19,20 141:8
**adam** 12:24
**adamant** 125:8
**add** 23:14 42:14
  128:23 129:3
**added** 96:23
  105:25 131:10
**addiction** 122:16
**addictions** 82:3
  112:4

**addition** 30:5
  45:21 102:1
  136:25 141:17
  142:17
**additional** 109:14
  137:10
**additionally** 63:1
**address** 17:19
  30:1 31:18 37:21
  38:20 43:21 45:24
  49:10 51:9,24
  55:13 63:24 65:22
  70:14 75:5 90:11
  100:8 104:17
  106:3,23 107:3
  121:13 122:21
  124:16,19 143:15
  145:25 146:3,3
**addressed** 18:11
  20:17 61:13 70:25
  86:5
**addresses** 28:20
  63:18
**adequacy** 29:25
**adequate** 35:19
  61:1
**adjourn** 8:10
**adjourned** 28:2
  149:6,6
**adjusted** 106:20
**adjustment**
  132:25
**administration**
  17:6
**administrative**
  40:18 63:10 86:20
**admission** 91:16
**admit** 92:10 93:14
**admitted** 92:21
  93:4,15,24 95:14
  95:17
**admittedly** 51:4

**admonished** 88:5
**adv** 1:4
**advance** 49:25
**advanced** 18:11
  49:16 52:5
**advancement**
  57:23
**adventures** 88:1
**adversary** 5:4 6:4
  6:12,20 7:1
**adverse** 76:14
**advise** 16:20
**advised** 138:3
**advisor** 36:17
**advisors** 124:22
**afar** 24:18
**affect** 127:3
**affiliate** 29:3 50:6
**affirmed** 44:20
**affirming** 114:5
**afford** 110:5
**afforded** 46:11
  56:7
**afternoon** 111:16
  111:18
**ag** 86:11
**ag's** 89:23
**agenda** 3:1,1 16:3
  16:5 21:2,2,14,17
  26:10,16 28:7,14
  38:3,3 87:13
  144:9 145:2 146:1
  146:6,7,8,12
  149:4
**aggregate** 21:25
  107:9,10 108:3,12
  109:1 140:11
**ago** 16:16 42:1,14
  57:15 93:11 104:1
**agree** 38:18 55:23
  71:22 74:15,21
  79:9 106:16,17
  121:2

**agreed** 3:5 17:3
  17:10 19:18 23:18
  27:19 49:6 69:22
  72:20,22 78:17
  91:13 95:12 97:1
  101:6 116:11
  131:3 141:19
**agreement** 3:16
  4:5,14,23 27:15
  29:4 32:18 36:12
  36:13 37:8 41:25
  44:25 46:25 70:12
  88:15 92:3 94:16
  107:14 110:24
  119:15 125:3,25
  126:1,18 143:8
**agreements** 18:21
  19:1 26:5,24
  70:10 79:5
**ags** 124:23
**ahead** 16:8 23:23
  38:16 46:18 62:19
  69:4 115:14 124:4
**aip** 101:17,19
**airing** 82:13
**aisha** 14:12
**akin** 71:7,13 94:2
  119:8 120:5
**al** 1:12,15 5:5,5
  6:5,5,13,13,21,21
  7:2,2 15:3
**albeit** 142:18
**alex** 12:16
**allegations** 51:2
  60:22,25 61:17
  63:3,21
**alleged** 116:15
**alleging** 63:11
**allocation** 18:8
  20:1,14 41:16
  45:2 55:24 80:7
**allocations** 19:19

allow 3:7 7:13
36:8
allowed 48:12
134:4
allowing 8:19
26:22 39:3 51:5
55:8
alluded 72:2
73:15 88:8 126:8
alter 56:9
alternative 48:15
ameliorate 105:6
122:21
ameliorating
53:10
amended 3:1 16:3
21:13 71:20 90:23
american 17:10
18:9 23:17 25:12
amorphous 51:1
amount 34:9
50:11 66:12,21
67:5,6 82:6 95:24
105:4 113:6 131:8
amounts 17:6
34:4,8
analogous 98:17
analysis 62:24
74:20 80:20 108:1
108:12 111:9
114:2 123:16
125:11,12 138:8
138:18 139:8
analyze 62:23
analyzing 54:10
135:23
andrew 6:17
11:17 56:21 129:5
angering 114:9
ann 13:6
anne 13:25
anniversary
16:13 23:22

annual 91:4 98:12
98:23,24 102:4
106:11 130:4
another's 65:19
answer 97:13
107:6,6,22
answered 32:10
answers 53:18
54:15
anti 102:9 104:12
anybody 23:23
93:20 99:11
123:24 130:25
anybody's 123:22
anyway 95:10
114:22
apa 32:13 33:20
34:23
apart 104:20
api 3:16 4:5,14,23
28:25 29:4 36:13
apis 29:10
apologies 116:18
129:24
apologize 124:9
146:5
appeal 44:20
59:22
appealed 47:23
appear 32:4
appeared 50:22
appearing 69:12
appears 27:15
49:3 55:15 74:23
79:9,12 84:11,13
85:19 136:25
137:21
appendix 76:2
applicable 3:18
4:6,15,25 7:23
36:14 51:8 135:24
136:11

application 133:8
applied 135:9
136:7
applies 63:5 84:7
118:16 126:23
apply 135:19
applying 102:25
appointed 84:23
appointment
84:15 141:19
appreciate 52:11
62:11 63:4,17
64:12 65:6 126:17
132:11 144:25
approach 59:8
114:12 137:23
approached 21:12
64:21
approaches 99:2
approaching
102:4
appropriate
18:10 23:9 39:4,5
41:8,21 42:16
44:7 49:7,11,23
67:1 69:7 70:18
100:5,6 104:16
123:3 125:20
127:17
appropriately
20:5 86:3 122:22
135:1
approval 19:15
39:15 46:6 62:7
99:25 127:11
132:22 133:8
approve 116:4
approved 33:4
101:3 105:10
106:1 116:2
121:19 130:9
132:19

approves 40:17
approving 3:13
3:15 4:2,4,11,13
4:20,22 17:13
35:11 36:11
approximately
45:20
arguably 113:3
139:8
argue 52:21 127:8
argues 52:19
141:9
argument 48:4
54:14 65:12 84:10
99:20 107:2
113:18 114:3
115:20
arguments 47:24
49:16,20,24 51:7
51:11,14 52:4
57:7 58:5,6,6 74:8
74:13,17 75:6
77:4
arik 13:8 71:6,12
94:1 115:15 119:7
aronoff 13:2
arrange 15:13
array 25:6 123:19
artem 14:17
articles 17:22
asked 64:22 72:23
96:2,12,19 98:10
127:22 130:15
131:10,14,17,19
145:16 149:9
asking 35:17 92:9
118:23 146:7
aspect 98:12
aspects 88:18
assert 49:17
asserted 58:19
assertion 55:13,16

**assertions**  53:21
**assessing**  54:10
**asset**  118:20
**assets**  3:14 4:3,12
4:21 17:16 29:3
36:4,25 65:23
67:11 88:7 110:25
122:19 135:13,16
139:9,14
**assigned**  30:8
33:18,19,21 34:20
34:21 35:2,3,15
**assignment**  3:17
3:17 4:6,6,15,15
4:24,24 33:3 34:6
34:12,16 35:12
36:14,14
**assistance**  73:12
**associate**  118:11
**associated**  29:12
45:14 54:1
**assume**  27:20
51:4
**assumed**  30:8
33:17,25 34:21
35:14
**assuming**  37:6
97:15 117:22
128:3 145:15
**assumption**  3:17
4:5,14,24 33:3
34:5,12 35:12
36:13
**assurance**  35:19
144:6
**attached**  28:21
33:23 36:11 48:21
99:13
**attacking**  51:12
51:12 104:5
**attacks**  103:15
**attempt**  68:19

**attempted**  52:13
72:11
**attempting**  15:18
**attention**  123:7
**attorney**  54:7
64:8 67:21 68:20
116:25
**attorneys**  11:4,13
11:20 122:10
141:2
**attributes**  17:25
**attrition**  93:18
94:21 101:23
102:4 110:6
119:19 124:14
**august**  47:25
65:24 75:20
**australia**  67:12
**authority**  30:18
102:18
**authorize**  9:10
36:13
**authorized**  15:9
114:21 118:24
**authorizing**  3:17
3:24 4:5,14,24
9:11,15 10:8
115:20 136:2
**available**  29:16
72:22 78:15,20
135:24 148:15
**avenue**  11:5
**average**  137:2
**aviation**  134:1
**avoid**  27:16
**avrio**  5:11,20 7:5
**award**  113:4,5
**awards**  111:25
112:15 113:3
**aware**  32:24 33:1
39:8 45:18 65:16
82:4 90:13 112:2
116:22

**b**

**b**  2:21 3:24 32:2
48:23 86:18,19
100:3 112:19
134:15
**b.r.**  75:21 86:25
133:15,17,24,25
134:2,24 135:2
**back**  37:20 38:15
43:11 47:25 59:23
67:23 73:11 74:19
75:6 78:9 84:11
85:25 87:9 92:18
95:10 97:20,25
104:22 111:23
117:24 118:15
120:12,15 124:3
126:10 127:13
131:7,10,10,20,20
142:2
**background**
119:16
**backward**  126:12
**backwards**  54:21
**bad**  105:18
**balance**  51:25
80:19
**balances**  114:10
141:16
**ball**  12:17
**banded**  83:19
**bankr**  3:24 7:21
87:1 133:16,17,24
134:1,2,25 135:2
**bankruptcy**  1:1
2:1,23 25:3,24
27:1 32:3 44:14
70:4 75:22 76:7
78:20,21 86:17
96:23 98:22
103:24 133:12
134:15,20 136:7
137:19 140:3,6

143:23 145:19
146:16,19
**bar**  3:3 147:8
**barbara**  13:24
**barker**  13:4
**bars**  48:9
**base**  84:20 99:6
108:3,7
**based**  21:22 31:11
31:25 35:17 37:3
41:3 50:24 61:17
62:20,24 64:11
71:2 84:24 108:2
108:6 109:3,7,10
111:11 113:9
133:13,13 137:7
138:13
**bases**  74:7
**basic**  52:3 82:19
**basically**  132:24
136:22
**basis**  15:11 31:5,6
31:6 41:24 59:25
75:24 83:7,9,10
85:1 97:11 104:7
137:2 140:11,14
**basket**  35:16
**bass**  14:14
**baum**  11:19 60:13
115:19
**bear**  89:20
**bearing**  112:21
**began**  56:4
**beginning**  20:23
22:9 26:1 71:17
71:19 85:6 141:17
**begins**  21:15 88:3
**behalf**  3:8,20 5:2
5:11,20 6:17,23
7:5 8:4,11,25 9:7
9:18,22 10:4,11
16:11 26:12 28:11
38:24,24 43:15

69:10,13 71:7,13
94:2 107:19 119:8
146:24
**behavior** 123:21
**belabor** 31:17
**belaboring**
109:23
**belated** 68:7
**belatedly** 42:1
**belief** 21:25 57:8
84:8
**believe** 21:5 24:18
29:9,15,19,22
30:21 31:5 34:7
35:8 37:14 41:20
41:21 49:4 50:24
64:21 67:19 70:18
70:18 76:19 77:14
77:14,14,19 79:24
81:2,24 86:5,16
107:25 111:25
122:22 123:13,14
130:5 134:18
136:5 137:1
139:25 140:9
141:21 145:2
**believed** 77:15
**believes** 42:22
**believing** 26:23
**belittle** 74:17
**ben** 66:7
**beneficial** 78:12
**benefit** 24:18
27:21 43:5 45:11
52:23 102:14
127:21 131:12
134:8 143:7
**benjamin** 5:11,17
5:19,25 7:5 13:15
37:24 43:14
**best** 29:16,17
36:20 50:21 57:3
61:3 81:25 123:17

132:9
**better** 36:2,3,6
39:14 71:21
126:14 127:9
143:15
**beyond** 82:14
106:12 140:2
**bickford** 14:16
**big** 131:17
**billionaires** 52:21
**billions** 53:9
104:24
**bind** 126:7 130:14
**binder** 90:15
**binding** 25:24
**bit** 24:2 42:13
43:17 60:15 72:14
92:16 96:5,5,6
**bitterly** 106:18
**black** 55:1
**blackline** 48:22
**blacklined** 37:11
**blain** 13:13
**blank** 100:13
**blended** 93:17
**board** 103:4,5,11
115:24 116:2
117:12 118:4
123:3,3,8,12
138:3
**body** 81:5,7
136:10
**bonsai** 88:1
**bonus** 99:13
118:12 119:12
142:15,23,24,24
142:25
**bonuses** 10:3
98:22,23 101:7
106:4,9,9 115:22
115:25 116:3,5
117:9,11,24
118:12,15 130:9

131:18 143:24
144:4,5
**bonusses** 144:5
**borders** 133:15
134:25
**bottom** 57:6
107:11
**bound** 17:11
48:25
**box** 108:5
**boxes** 107:11,13
**brain** 85:24
**brand** 117:5
**brandan** 14:20
**brauner** 12:11
**brief** 44:2,4 52:14
56:3 69:7 71:14
71:24 91:9 96:7
129:21 143:3
**briefed** 58:7
**briefing** 49:16
58:10 74:9,10
**briefly** 28:23
47:14 65:11 66:6
72:14 119:11
124:5
**briefs** 49:25
**brinbaum** 12:10
**bring** 41:20 46:15
46:17 84:15 118:6
**brings** 87:11
**broad** 47:9 84:20
89:21 123:6,19
137:7
**broadly** 64:10
**brooks** 13:4
**brought** 61:12
78:1 113:1 116:23
123:11
**browning** 87:1
**buckaroo** 88:1
**bucket** 34:3

**buckets** 33:16
34:2
**burden** 58:7
60:18 75:10 118:5
**burdens** 109:14
109:16
**burnham** 76:12
**business** 32:6
34:17 36:20 72:19
94:21 100:2
102:14 103:1
105:9,18 118:14
134:6,16,17,22,22
135:6 136:7,12
140:1 141:22
142:5
**butter** 81:11

**c**

**c** 11:1 12:3 15:1
33:23 100:1 133:6
133:22,23 135:3
137:14 151:1,1
**calculated** 135:14
**calendar** 32:12
99:9 145:25 146:2
**california** 143:24
**call** 16:1 109:17
114:23 115:25
120:25 129:25
146:5,16 147:23
148:1
**called** 34:24 50:18
**calling** 144:13
**cancelling** 123:4
**candle** 81:19
**capable** 64:19
**capital** 133:25
**care** 74:20
**career** 130:25
**careful** 125:10
**carefully** 44:6
49:19 122:22

carlina 121:7
carried 58:10
carrier 25:9
cartrell 107:6,7
carve 77:15
carved 80:22
113:13
carveout 84:4
carving 116:14
cascade 105:8
case 1:3,4 17:14
17:15,16,20 18:20
20:3,13 21:4,12
21:12 22:2,5,8,16
24:19 25:24 26:1
26:1 30:5 42:2
44:9 54:17 57:5
58:20 61:1,22
64:2 66:2,15 67:3
67:5 68:8,25
69:18,23,25 70:4
70:15,24 71:18,19
73:9,22 74:2
78:10,16 79:12,13
79:17 80:21,25
82:5,21,25 83:1
83:10,21 85:7,12
85:15,19 86:14,16
87:25 90:4,6 91:1
91:5,6 92:1 96:20
98:19 99:1,1,18
103:20 104:18
111:9 112:10
113:10 114:5,7
116:6,22,23 117:1
118:6 120:21
121:2 123:1
132:15 133:15
134:7,11,12,25
135:14 136:3,18
137:17,20,24
138:17 139:2,3
140:3,4,18 141:18

145:23
cases 16:23 17:4
21:9 44:16 46:14
46:17 47:13 49:23
50:22 52:4,12,23
53:4,17,23 54:3,5
54:18 55:20 56:7
58:13 61:14,19
63:6 66:23 67:7
74:24 75:1,6,10
76:8 79:11 80:8
80:14 81:16 82:17
83:2,16,18 84:22
99:8,18 105:14
133:14,17 134:19
135:9 136:8
142:18
cash 19:11 45:11
143:16 144:4
catch 124:9
categories 95:21
category 60:1
catrina 14:1
caught 124:11
cause 29:22 31:12
63:12 80:1 96:14
140:22 141:5
cautioned 59:7
caveat 116:2
caveats 95:12
cede 37:20
cell 56:23
celotex 86:14
centralization
45:17
ceo 90:24
certain 3:25 8:18
33:18 35:14 39:1
47:6 48:20 49:9
51:5 67:19 72:25
93:14,16 127:16
certainly 22:7
23:22 33:15 63:4

79:3 89:9,17
91:25 100:22
110:2,21 122:13
123:11 128:2
certainty 48:2
certificate 28:18
28:22
certified 151:3
certifying 8:20
cessation 57:11
cetera 82:8
144:20,21
cfo 131:3
chairs 103:10
challenging
148:15
chambers 28:4
31:14 37:17 72:18
87:4
chance 146:4
change 38:2
107:16,23 108:10
143:21
changed 71:17
changes 37:13
71:21 95:21,21
103:17
chaos 44:12
chapter 16:13
17:3 22:16,20
46:14 47:13 52:4
52:12 53:3,22
55:20 57:17 58:12
61:19,22,24 66:22
75:1 77:17 83:1
95:3 109:8,14,18
109:24 110:3,20
122:8 137:12,13
137:20 138:15,24
139:23 143:17
144:2
characterize
43:25

characterized
119:19
charged 22:18
106:10
charles 133:16
chart 108:19,23
127:3,6,9
check 114:2 120:3
checks 114:10
141:15
chemical 75:21
cherish 90:2
chew 57:10 59:16
chewing 66:9
chicago 55:1
chief 44:20 47:23
75:18 85:4
child 89:19
children 25:11
122:17
choose 34:15
christohper 12:14
christopher 11:10
13:1,9 28:10
chu 14:2
chutchian 14:3
cir 86:12,13,24
87:2
circ 76:2,4,13,17
79:16
circuit 75:23 76:8
79:1 134:19
circuit's 79:15
circumscribed
83:4
circumstances
29:24 96:7 97:23
97:23 113:10
134:6,12,21 135:6
140:4,12
cite 100:10 102:18
116:21,21

cited  85:5 133:18
135:1,10 138:17
cities  17:2
citing  76:3
citizens  58:3
79:20
city  141:2,3
civ  7:22
civil  51:5 53:24
54:19,20 63:5,15
66:12 67:8,12
claim  3:2,7 8:3,20
8:23 21:19 23:1
26:16 27:1,6,21
27:25 28:1 38:4
40:2 53:16 117:1
147:7
claimant  42:2
144:13
claimant's  19:13
claimants  8:1,6,8
8:19,22 9:1 17:1
18:14,24 19:10,14
19:18 20:12 24:24
24:25 25:4,8
30:12 42:4 46:24
64:18 83:22 89:16
89:21 95:25
136:24 147:6
claims  3:2,15 4:3
4:12,22 20:11,19
20:20 21:25 35:20
45:17,20 47:19
51:6 54:11 55:10
55:12 61:8 63:16
64:16 65:22 76:6
76:22 78:1 80:12
80:15 81:4,8,9
84:9 103:15
104:23 105:3,15
116:5,6,9,21,21
147:5,22,22

clarification
63:17
clarified  63:5
class  7:13,16,21
8:3,14,19,20,23
21:19 28:1 38:3
40:2
claw  118:15
126:10 131:7,10
131:20 142:2
clawback  96:3,13
96:23 97:6,9,19
clawbacks  96:6
clawed  117:24
clear  3:14 4:3,12
4:21 36:23 37:9
55:21 59:5,19
61:1 62:14 66:4
71:22 74:23 75:9
78:2,10,23 80:21
81:21 82:5,15,15
84:1 86:7,16 91:3
95:11 103:3
108:15 109:22
110:15 119:24
120:18 121:16,17
130:12 134:11
136:25 142:16
clearly  16:7 28:11
43:16 56:24,25
66:16 67:4 74:1
75:9 83:1,11 85:8
86:20 87:15,19
130:12 137:15
138:22 139:24
clerk  144:22
clerk's  15:11,12
client  15:5,8
42:18,21 43:6
clients  64:23
74:24 122:14
close  58:21 76:1
76:11,15 132:5

143:5
closed  132:9
closely  91:10
124:24
closes  37:7
closing  32:11,12
32:14,16 33:7
34:14,18,24 35:3
closure  29:13
clubs  86:25
coal  133:24
coconspirators
117:1
code  32:3 86:18
86:19 133:12
134:15
coleman  12:12
colleagues  101:2
124:4,10
collective  81:5,6
83:2,3,11
collectively
121:25
colloquy  57:16
72:9
color  33:10
combination
130:2
combined  137:3
come  23:6 40:3,24
73:9 77:4 91:15
92:17 104:15
106:22 107:1
111:3
comes  34:25
comfort  140:16
comfortable
92:19
coming  42:21
56:25 128:17
commence  97:25
commencement
63:9,11

commencing
21:23 85:2
comment  20:7
119:17
comments  28:21
66:8 120:17
121:24
commercial  32:5
commitment  6:14
17:11 85:6
committed  17:23
18:15 42:5
committee  6:24
7:19 8:5,25 9:22
10:1,4 11:20
19:17 22:24 24:24
25:11,11 39:25
41:7 42:24 44:1
45:10 50:19,21
51:24 52:16,19
53:15,19 54:4
55:14 58:17 60:14
61:11 64:10,21
67:25 69:13,22
71:2,7,14 73:17
74:12 75:8 76:25
78:18 79:19 80:6
82:10 83:13 85:22
86:4 88:16 89:15
89:22 90:23 94:2
94:17 102:23
103:5 114:13,14
115:4,19,24
116:22 119:9
124:22 125:15
131:24 132:17
136:19,19,20,20
138:3,7 141:8
committees  94:17
114:13
commonwealth
1:15 5:5 6:5,13,21
7:2 86:23

**communicating**
43:9
**communication**
144:17 145:5
**communique**
145:10
**communities**
18:11
**companies** 86:23
99:23 109:8,8,12
111:6,7,8 137:8
137:19 139:23
141:22
**company** 23:6,11
76:3 88:23 96:18
97:8 101:11
102:12 103:23
104:5 110:17,20
112:19 117:2
123:5,21,24
131:11 133:16
**company's** 110:1
122:2,4 130:4
**companywide**
115:21,24 117:13
**comparable** 111:8
139:23 141:2
**compare** 40:6
**compensate**
142:19
**compensated**
24:17 139:3
141:12
**compensation**
22:15 88:19 91:4
98:12,24,24 99:18
101:12,16 103:4
104:10,14,15
106:11 108:18
113:4 115:23
121:8 122:8 127:7
127:8 132:7 136:2
136:3 137:3,6

138:3,4 139:21
140:11 141:23
142:6,24
**competitors**
143:10
**complete** 26:4
62:23
**completed** 45:18
58:23
**completely** 15:4
20:18 23:13 67:22
103:14 130:1
138:10
**complex** 102:12
122:3
**compliance** 45:21
59:12,12 123:6,7
**complicated**
21:24 22:14 23:7
23:24 99:16
**complying** 48:12
**component** 70:13
**components**
130:11
**comprehensive**
43:3 137:22
138:13
**comprised** 22:25
**compromise**
119:11 125:1,2
126:6 129:2,7,11
**concede** 48:1
**conceded** 49:21
**concededly**
138:12
**concedes** 51:25
**conceive** 68:10
**concern** 18:15
39:25 52:22 63:18
85:18,19 114:22
117:10 140:5,7
**concerned** 32:9
131:4 140:22

149:2
**concerns** 42:5,20
43:7 49:8,11 60:2
61:13 106:24
123:12 129:12
**conclude** 56:4
118:17
**concluded** 32:1
79:24 142:11,11
149:12
**concluding**
133:11
**conclusion** 46:18
57:11 118:7
**conclusions** 84:22
**conditioned** 20:8
20:10 41:12
**conditions** 39:19
39:21 133:7
**conduct** 52:12
55:9 85:21 106:5
116:11 118:3,6
122:4 123:25
**conducted** 29:14
**conducting** 85:20
**confidence** 52:11
70:7 89:10
**confidential** 32:5
64:22 128:4
**confidentiality**
128:7,21
**confirm** 36:5
38:11 65:2 79:10
**confirmable**
77:17
**confirmation**
17:12 62:8 138:16
**confirmed** 19:16
25:25 27:20 47:24
85:8 91:12 138:14
**congress** 83:4
114:18 133:7
137:14

**congressional**
86:19
**conjunction** 53:7
**connection** 4:1
57:5 59:8,20
66:11 69:16 74:9
129:19 139:19
**consensual** 23:2
41:24 46:3,13
55:11 69:24 89:14
**consensually** 89:8
**consensus** 25:17
47:9 78:25
**consent** 19:13
32:15 87:10 90:7
**consenting** 6:14
6:17 11:13 18:8
25:2 48:8,14,18
49:15,21,24 50:4
50:8,16 54:8,8
56:17 57:3,19
59:13,16 65:25
66:1,16,17,18
68:12 69:13 74:12
74:16 75:7 76:25
77:11,21 78:7,19
79:19 80:6 88:17
105:24 116:10
**consequence**
76:14
**consequences**
104:16,18
**conservative**
99:24
**consider** 124:18
125:9
**considerably**
139:10
**consideration**
75:4 108:2 125:10
**considered**
147:14

considering 74:17 117:13 128:25 135:4
consistency 132:14
consistent 32:2 70:22 135:20 137:23 138:1
constituencies 22:4,8,22 44:25 45:8 46:2 47:11 50:3 53:8,17 136:18
constituency 23:18 132:8
constituents 139:2 140:20
constraints 147:1
constructed 115:23
construction 76:4
constructive 26:8
construed 75:25
consultant 137:6 138:4
consultants 134:9
consultation 26:18 86:3
consulted 128:11
consulting 40:12
consumed 21:21
contact 15:12
contained 39:1 45:25 52:16
contemplate 32:11 70:11
contemplates 70:16
contended 133:19
contends 139:5
contention 141:11
contested 21:10 24:7 27:6,17

38:12 62:9 84:23 87:12 145:3 147:16
context 22:16 40:7 42:20 62:7 72:13 75:16 84:18 90:1 104:20 114:18 135:2,16 139:9
contingent 8:5 9:1 24:25 67:17
continuation 47:2 47:4 49:22 59:11 63:9,11 79:24 84:2 121:18 142:9
continue 18:15 26:9 42:8,10 45:23 49:12 51:17 55:9 57:19,20 62:18 65:4 66:14 70:6 73:10,21 77:8,14,19 78:22 79:13,24 80:13 81:20 82:8,16 89:3 100:15 102:13
continued 45:6 46:1,20 47:18 53:15 55:4,10 59:3,4
continues 46:25 70:15 101:22 141:16
continuing 42:5 45:15 47:16 49:8 51:19,20 146:22
contours 50:11
contract 30:10 33:25 35:6,21 37:12
contracts 3:18 4:7 4:16,25 30:7 33:3 33:7,16,17,19,21

34:1,2,3,5,12,15 34:15,16,20,20,21 35:2,3,3,7,12,14 36:15
contribution 39:22 50:11 70:24 79:11,14 80:13
control 79:3 120:24
controlling 86:14
convenience 132:5
conversations 72:7
conversely 125:14
convicted 117:23 148:24
convinced 41:6
cooks 131:25
cooperative 44:15
coordinated 124:25
copy 15:11
core 22:4,7,22 44:25 63:18 89:3 131:24
cornell 14:21
corona 101:1
coronavirus 144:19
corp 76:3 86:15 133:24 135:1
corporate 46:2 134:17
correct 32:21 33:8 33:9 35:22,23 41:12,13 55:5 56:1 72:12,14 98:1,1 104:3 108:22,24 109:6 109:19 112:10
corrected 63:14 94:6

correctly 73:1 94:6 125:18 127:5 128:20
cost 29:11 43:4 46:6 104:24 131:8 135:15 139:6,8,12 143:22
costing 68:15
costs 17:7 29:12 78:14
council 141:2
counsel 15:18 25:8 26:18 27:10 32:25 65:19 84:10 103:7 118:19 136:1 138:5
count 98:18
counter 46:7 101:3
counterfactual 103:15
counterparties 30:7,10 33:24 34:1,5,10,19 35:6 35:21
counterparty 34:10
counterproducti... 113:23
counties 17:2 79:18
countless 54:10
country 18:7 25:10,18 53:24 67:20 105:6 151:21
county 3:6 26:16 26:18,22 27:10,12 27:20 141:3
couple 16:16 37:12 65:11 73:23 90:11 119:2

coupled 31:25
36:17 102:20
course 19:23 22:6
24:14 37:6 49:19
74:24 86:14 94:15
97:1 99:19,21,21
99:22 101:16
103:3 105:21
106:5 132:18
134:5,14 138:2,5
140:8 143:10
court 1:1 2:1 12:3
15:2,7,10,16,20
15:21,23 16:2,8
16:21,24 18:23
19:15 21:4,9
22:11 24:4,8
26:14,19 27:8,13
28:8,12 30:4,16
30:25 31:17,21
32:17,22 33:2,11
34:19 35:6,10,25
36:10 37:16,22
38:1,22 39:4,15
40:17 41:9,11,14
43:14,17 44:10
46:5 48:3 49:11
49:19 50:15 51:15
52:6 53:2 54:23
55:15,18,20 56:12
56:16,25 60:8,10
61:18,23 62:6,13
62:17,19 63:7,14
64:4,7,17 65:3,7
65:13 66:5 69:2,9
70:2,5 71:5,9,11
73:19,24 74:1
76:7 78:25 79:1
87:7,16,17,20
88:5 90:13,14,18
91:9 92:6,8,23
93:2,4,8,21,23
94:4,12,14 95:8

95:14 97:3,5,21
97:24 98:2,5,11
99:25 100:15
102:7,24 103:24
106:2 107:5,21
108:9,13,21,25
109:7,13,16,20
110:10 111:4,13
111:18,23,24
112:7,12,16
113:11,17 115:7,9
115:12,14 116:10
116:16,19 117:15
117:17,19,23
118:1,6,13,25
119:6,21,25 120:3
120:8,10,18,24
122:24 124:3,12
127:11,24 128:1
128:15,17 129:16
130:15 132:20
133:5 136:11
144:11,23,25
145:4,7,12,15,19
145:20 146:10,15
146:16,18,19,19
146:19,23 147:3
147:13 148:3,5,8
148:11,18 149:1,8
court's 46:22 56:2
98:16
courthouse 44:13
courtroom 85:25
145:21 146:7
courts 51:18
61:13
coventry 3:14 4:2
4:11,21 23:3,12
28:15,25 29:1,2,6
29:13 31:16
cover 128:3
129:20 132:24

covered 76:22
91:18
covering 50:9
111:2
covid 110:4
coxwell 27:11
creadore 14:7
create 72:12
130:17
created 112:5
117:23
creation 112:3
credentials 40:6
credible 51:2
60:21,24 63:2
84:9,12
credit 61:8
creditor 23:18
39:25 45:8 81:5,7
89:4 90:4 96:9
102:20 103:8
105:23 121:1
132:14 136:10
138:6 144:13
creditor's 42:24
43:10 58:17 61:3
creditors 7:19
39:24 52:23 53:14
64:10,16,21 65:1
71:7,14 73:17
76:6,9 78:13,18
80:2,8 83:13 84:6
84:19 85:17,22
90:23 119:9
125:15 131:19
132:3 136:19
138:7
crime 148:25
crimes 115:22
117:3,14 118:8
criminal 76:22
116:7 141:11
142:2

covered 76:22
crisis 17:5,19
19:20 53:10 80:18
81:17 111:1
118:20 122:21
140:21
critical 29:10
40:14,15 46:15
50:10,13 82:24
critically 45:1
critics 123:23
cross 23:25 91:24
92:3 93:19
crossed 24:2
crystal 82:15
cullen 13:17
culturally 18:10
cure 33:6 34:4,8
35:20
current 26:24
29:11 49:22 60:17
61:17 62:20 63:5
63:20 122:21
123:16,21
cut 87:17 96:1
122:5 124:6,14
cycle 97:15
cynthia 14:8
cyrus 13:11

**d**

d 2:22 15:1 148:8
148:11 150:1
daily 15:11
damages 104:24
dana 100:5,11
135:1 139:8
dangerous 23:7
110:8
daniel 12:22
data 132:7,7
database 137:7
date 3:3 27:6
32:11,14,16 33:8
34:14,18,23,25

35:3,16 54:17
69:18,20 96:15
97:7 102:3 108:18
126:9 134:9
140:23 143:12
145:21,22 146:2
147:8,14 151:25
**dated**  24:14 92:11
92:12 132:22
**dates**  65:17 72:21
72:22,25
**davis**  11:3 16:10
26:12 28:10 37:24
43:15 66:7 148:3
148:11
**day**  17:14 21:4
23:6 31:8 53:7
72:20 90:6 97:14
100:25 101:1
121:3 132:12
133:2
**days**  17:14 21:14
29:23 31:2,13
34:13,17,17,24
72:19 118:11
**deadline**  34:6,24
91:19 127:18
144:19 147:11
**deadlines**  70:21
145:11
**deal**  31:21 67:17
72:16 87:14 88:11
119:16 124:17
147:15
**dealing**  39:23
**deals**  22:2 67:16
67:22 104:20,22
105:4 127:6
**dealt**  39:18 40:19
74:1 77:13 141:13
**dean**  81:13
**death**  64:15

**debrief**  114:24,25
**debtor**  1:10 11:4
28:23 33:23 39:24
61:4,10 70:20
75:10 109:18
113:15 118:19,22
134:14 135:13,22
135:25 139:5
**debtor's**  27:23
32:6 36:17 43:21
44:3,14 45:2,10
45:19 46:14 48:3
48:11 50:12 55:23
60:3 63:4,13 71:3
73:20 75:17 76:5
76:11,15 77:17
126:18,22,23
132:21 133:1
135:16 136:15
137:3,5,10,23
139:1,1,7,9,13,22
140:6 143:9
146:11
**debtors**  3:11,13
3:13,16 4:1,2,4,10
4:11,13,20,21,23
5:18 6:1,8 7:15
8:8,18 9:10 10:2,7
10:8 16:4,11,18
25:3,23 26:12
28:11 29:2,9,10
29:14,18,21 34:18
35:21 36:21 38:18
38:18 41:7 45:6
45:23 47:3,11
49:3,10,25 50:19
50:21,24 52:10,13
52:24 53:1,3,7,12
54:6 55:21,25
57:8 58:20 59:15
59:25 60:4,15,18
60:20 71:23 76:20
77:22,23 78:12

79:10 80:14,20
85:5 88:15 91:4
91:13 92:5 94:8
94:15,20 100:14
103:2,4,16,18
105:9 106:19
107:20 114:16,17
115:25 118:19
119:12,14 124:13
125:1,1,16 126:7
126:11 127:17
128:4 129:8
131:17 132:5
133:10,22 136:12
137:9,12,16 138:2
138:14 141:5,9,13
141:15,18 142:3,8
146:25 147:14
**decades**  66:22
98:25 99:22
**december**  48:13
49:1 70:17 73:25
101:11
**decided**  124:4
**decision**  112:8,18
112:19 125:18
140:15
**decisive**  56:9
124:1
**declaration**  4:19
5:17,25 29:7
30:13 36:16 37:3
48:21 91:8,18
92:11,12 93:14
107:8 137:5
**declarations**  91:3
91:14 92:4 93:15
93:24 94:10,15,18
95:13,16 102:20
**decrease**  127:3
**dedicate**  19:19
**dedicated**  17:4

**deem**  3:7
**deemed**  27:25
147:8
**deems**  39:4 93:20
**deeply**  52:11
**defendants**  1:16
63:8,8
**defenses**  27:5
**deferential**
134:17
**deferral**  97:2
127:11,22 128:22
129:13
**degree**  89:9
**delaware**  86:25
**delay**  66:21 72:23
75:17 82:22
**delayed**  65:18
126:21
**deliver**  104:17
105:5
**demand**  50:25
**demonstrated**
75:16
**demonstrates**
58:20
**demonstrating**
59:15
**denied**  104:10
**denigrate**  89:17
89:18
**denigrating**  43:6
**dennis**  14:2
**deny**  66:10
**department**  20:19
25:14 116:5,6
**departure**  97:15
**departures**  105:8
**depend**  118:13
**depending**  56:17
56:18 83:7 101:10
**depends**  97:10

deployed  122:20
deponent  73:2,4
deponent's  73:5
deponents  59:1
72:20
deposition  67:11
68:17,24 72:24
73:6
depositions  58:25
61:5 65:15,21,23
72:10,21 82:8
deputy  145:21
146:7
deriving  110:21
describe  69:19
described  29:6
69:18 138:8
142:15
describes  29:1
deserve  19:24
designate  35:2
designated  35:2
designation  34:24
35:16
designed  17:4
106:11,20 123:20
126:10 130:19
desire  38:6
desired  135:15
139:16
destruction  56:6
105:9
destructive  44:12
detail  59:18 69:18
100:12 101:17
detailing  45:10
103:25 122:6
details  94:16
determination
135:3
determine  113:8
133:5 134:20

determines  123:2
determining
18:13 135:5
detrimental  32:6
77:16
developed  19:12
development  46:6
devoting  25:22
diaspora  53:24
dickens  21:6
dictates  66:13
die  28:2
dietrich  14:18
difference  90:2
different  33:1
43:8 60:1 92:16
103:9 108:19
110:2 121:4 125:7
differently  21:12
131:6
differing  121:9
difficult  21:24
22:12,16,20
102:10 143:11
diligence  45:7
66:14 85:20
114:15 135:21
136:1 138:5
140:13
diligently  45:24
68:14
direct  95:15
101:15
directed  88:5
121:3
direction  122:13
directly  32:3
39:15
director  117:5
directors  103:4,5
115:24 117:12
118:4

disadvantage
78:5
disagree  40:1 55:4
72:8 106:18
114:16 119:18
124:13
disagreed  93:13
disclose  114:7
115:3
disclosed  32:5
disclosure  61:1,25
62:3,4 68:4 82:6
82:16 83:5,6
85:18
discovery  45:12
45:15,15 50:5
54:18 55:9 58:12
58:20 61:4 62:6
62:10,23,23 66:10
66:25 67:9,10
68:10,23 70:15
72:1,16 73:14
78:14,15,16,20,21
82:4,9,13,22,23
118:7
discrete  125:21
discretion  128:2
discretionary
113:5
discriminate
135:20 137:21
discuss  22:6 94:20
126:3
discussed  20:4
36:15 86:10
100:18 132:9
discusses  41:22
discussing  44:18
discussion  42:7
48:19 60:4 92:14
113:21
discussions  50:13
51:19 113:12,16

127:21 128:3
dislocation  18:7
dismiss  63:24
disparage  52:6
68:20
dispersed  25:7
dispute  50:2,8
63:22
disrespect  22:5
90:8 131:23
disrupt  62:22
disruption  50:14
dissenting  105:23
distinction  143:16
distracts  81:18
distribute  55:23
distributed  55:24
140:20 147:6
distribution  19:12
138:16 147:5
distributions
19:11
district  1:2 42:12
51:18 75:19,20
86:24 116:25
districts  25:15
42:11
divergent  46:13
diverse  24:22,23
26:2
diversion  102:9
104:12
docket  16:16
28:19 29:20 45:9
88:20 145:18
doctorate  40:8
doctorates  102:8
document  3:8,20
4:8 5:7,10,19 6:9
6:16,23 7:4,13 8:4
8:15,24 9:6,17,21
10:3,10 16:19
21:3 68:17,24

documents 4:17
16:18 45:7 54:3
61:5 82:7
doesn't 125:20
doing 37:24 55:22
58:1,2 64:13
71:17 72:5 74:16
98:19 99:22
doj 30:24 117:1
122:10
doj's 116:21
dollar 27:21
121:21
dollars 53:9 54:10
68:15 104:24,25
105:1 126:15
donald 14:7
don't 96:17 115:2
120:15 123:13,14
123:14 125:23
128:7,14 131:15
145:1 147:17,24
147:25 148:7,9,13
doors 132:10
dorothy 146:10
double 114:2
doubt 46:19 47:10
64:13 80:24 90:13
90:14 145:16
dozens 122:9
dr 38:24 39:5,17
40:20 47:20 76:24
drain 2:22 15:2
15:22,23
dravillas 12:16
draw 57:11
drexel 76:12
driver 111:1
dud 138:5
due 25:18 35:18
45:7 62:21 73:1,3
73:4 85:20,21
97:17 108:16

114:15 128:12
131:1 135:21
136:1 140:12
144:15,19 147:10
dunaway 75:19
duplicative 40:22
durable 130:19
duration 22:1

**e**

e 2:21,21 11:1,1
12:22 15:1,1
117:6 143:23
150:1 151:1
e.d. 133:24
e.d.n.y. 134:2
e.r. 87:14
ea 30:24
earlier 62:13
71:25 74:7 85:5
110:23 111:6
125:19 126:8,14
126:16 131:2
140:17 142:23
145:23
early 17:14,20
73:21 98:19
118:11 122:6
124:6 131:18
earned 96:10
130:2,23
earners 104:11
earning 135:17
139:10
easily 58:22
east 11:21 81:14
easy 58:21 139:25
ecf 3:3,9,21 4:8,17
5:2,7,15,24 6:2,10
6:18,24 7:10,17
7:24 8:6,10,12,16
8:20 9:1,8,13,19
9:23 10:5,11

echo 43:20
echoed 120:18
eckstein 8:4,24
13:18 69:3,5,6,11
69:12
economic 23:11
58:2 76:14 90:3
106:24 114:1
125:13,13 126:25
132:14
economics 126:18
ecro 2:25
eden 81:14
education 40:7,8
40:13 146:22
educator 40:8
edwards 86:15
effect 57:16
effective 34:25
85:8 97:7 108:17
126:9 139:4
140:23 143:12
effectively 133:7
efficient 49:7 57:4
efficiently 78:24
80:17 82:12
effort 75:12 81:19
81:20,22
efforts 25:20
44:15 73:14
135:22
eight 21:19 72:19
88:23 89:1,5
92:14,20,25 97:2
101:24 113:12
126:19,22 127:12
142:25
eighth 95:3
eisenberg 11:19
60:13 115:19
either 36:6 49:1
64:24 72:23 79:7
84:17 98:13

101:10 107:2
123:12 129:2
138:21 147:23
element 99:7
140:8
elements 51:9
69:21 108:19
133:4
eli 3:19 5:1 10:10
eligible 19:10
33:17
ellias 143:23
email 28:3 31:13
37:16 87:3 147:23
emailing 93:11
embarrass 75:17
embedded 17:11
embodied 79:22
emergence 96:12
96:18,19 130:14
130:18 140:6
emergency 7:12
7:16,20 8:2,9 39:7
39:9,14,17 40:15
40:20 42:19,20
112:3,20 138:15
138:23
emergent 46:2
emily 12:20
emphasized 55:19
employed 67:2
employee 9:11,12
9:16,17 10:9,9
88:21,21 92:13
93:5 94:19 96:13
101:10 123:16
132:6,23 133:8
135:5 139:19
140:8 143:5,8,17
employee's
100:25
employees 106:4
108:8 110:21

116:14 117:8,11
125:17 126:15,23
127:2,8,12,18
128:12 133:5
135:12,19,23
137:16,20,22,24
137:25 138:11,19
139:15 140:9,10
141:7,12,22 142:6
142:19
**employment**
97:14 109:17
**enable** 46:3 85:8
**enabling** 50:10
**encourage** 81:20
**encumbrances**
3:15 4:4,13,22
**endeavor** 147:18
**ended** 42:7 122:6
**endless** 122:15
**endorse** 71:22
**endorsed** 70:6
**ends** 99:9
**energy** 110:22
114:7
**enforce** 79:20
**enforcement**
49:18
**engage** 18:15
23:11 42:5 83:8,9
138:8
**engaged** 41:19
64:18 74:24 82:11
83:20 106:4
115:22 116:14
117:3 123:25
**engagement** 46:1
59:9 106:19
**engaging** 123:2
**engineers** 104:11
**enhances** 80:8
**enjoin** 63:7 75:25
76:9 77:8

**enjoined** 59:12
75:11,16 76:13
86:22
**enjoyed** 146:21
**enjoys** 81:12
**ensure** 81:25
96:24 123:20
140:11 141:16
**ensures** 114:8
**enter** 29:4 31:4
37:1 86:2
**entered** 27:10
37:18 49:6 53:6
68:7 73:21 145:23
**entering** 46:23
56:8
**enterprise** 99:16
110:8 130:17
141:11
**enthusiasm**
110:22
**entire** 67:20 68:16
87:24
**entirely** 61:6
133:13
**entirety** 22:1
**entities** 25:6 27:19
27:22 30:17,21,23
39:9 42:12 45:13
45:14,16 50:6
54:1 64:10 69:14
77:19 78:2,3
81:10 83:18 86:22
88:17,18 89:24
90:5 136:21
**entity** 25:1 80:24
114:14 130:14
**entry** 3:11,13,16
3:23 4:1,4,10,13
4:23 9:10 10:8
**environment**
110:4

**envision** 68:9
**epidemic** 104:17
105:6 112:15
**equally** 59:7
110:15
**equitable** 19:11
42:6
**equities** 51:25
**equity** 143:11,12
143:16
**er** 8:14 9:3 38:3
38:19 40:12 42:18
**erf** 121:2,10
**especially** 118:11
131:7
**essence** 18:25
20:15 74:13
**essential** 49:23
**essentially** 18:23
26:21 35:5 77:4
95:20 96:16 100:2
100:14 101:9
105:5 121:1 122:5
133:21 141:8,11
**establish** 31:12
60:18
**established** 36:19
76:20 133:14
**establishing** 75:10
145:23
**estate** 24:19 36:21
43:4,5 45:3,18,21
47:11 50:3 53:17
55:8,9 61:8 75:17
76:6,15 99:14
**estates** 29:12,18
36:21 50:12 55:23
77:6,17 78:13
80:2 99:5
**estimation** 21:25
**et** 1:12,15 5:5,5
6:5,5,13,13,21,21
7:2,2 15:3 82:8

144:20,21
**evaluate** 64:16
117:12 136:12
**evaluating** 54:12
133:3
**evaluation** 139:19
**evaporates** 105:6
**event** 16:23 84:21
**events** 141:23,24
**everybody** 106:22
**everybody's**
131:15
**evidence** 49:25
91:11,15 92:4,10
92:22 93:16 94:9
95:6,13,17 100:17
102:19
**evident** 72:1
**evinces** 52:2
**evolved** 111:24
**evolving** 143:6
**ex** 3:11 31:5
**exact** 111:10
130:15
**exactly** 16:21
35:23 97:12
105:15
**examination** 92:3
**examine** 91:24
93:19
**examiner** 53:20
54:5 84:16,21,25
**examiners** 61:11
84:22
**example** 54:2 67:9
86:23 104:18
116:15,20 133:24
143:23
**examples** 55:2
61:12
**exceeding** 45:3
**excellent** 26:15
39:22

exception  25:2
  90:19,24
exceptions  58:18
excessive  40:23
excited  125:15
exciting  110:3
exclude  35:16
excluded  33:18
  34:3,16
exclusively  17:4
excuse  62:3 107:7
  136:15
executives  97:16
  102:1 109:2
executory  3:18
  4:6,15,25 30:7
  36:14
exercise  36:20
  59:22 103:1
  105:18 113:23
  128:2 134:22
  135:6 140:1
  141:21
exhaustive  45:5
exhibit  28:21
  33:23 48:22,23
exhibits  3:25
exist  29:22
existing  100:15
exists  83:11
expect  58:16
  82:17,21,23
expectation  26:24
  55:21
expectations  45:4
expedited  70:3
expeditiously
  70:23
expenditure
  27:22
experience  17:21
  21:9

experienced  79:2
experiences
  131:24
expertise  40:21
  102:9
experts  126:22
  144:4
expire  41:17
expired  36:15
explain  72:15
explore  55:10
expressed  36:2
  38:6 59:5 70:19
expressly  114:19
extend  5:6,6,9,18
  6:1,8,15 7:3 43:12
  43:22 48:3 71:3
  150:6
extended  44:11,23
  46:20 47:1 50:8
  91:19
extending  46:24
  49:13
extension  6:22
  37:21 46:14 47:8
  59:24 76:23
extensive  29:14
  50:5 76:18
extensively
  105:22
extent  51:8 72:4
  74:18 91:22
extra  112:15
extraordinarily
  66:13,19
extraordinary
  67:7 69:20 118:14
extreme  100:5,6
  106:19
extremely  21:24
  53:8 83:12 84:19
  84:19 90:16
  103:14 110:7

129:20
eye  103:24 122:9

**f**

f  2:21 12:20 36:25
  37:1,1 151:1
f.2d  87:1
f.3d  86:12,13,23
  134:20
f2nd  76:4,12
f3rd  76:17 79:16
facet  126:5
facilitated  53:23
facilities  23:9
facility  3:14 4:2
  4:11,21 28:15,25
  29:1,3,6,13 30:22
  31:16
fact  16:17,22
  17:14 27:17 37:4
  41:17 51:19 53:11
  61:24 65:16 69:20
  70:14,16 74:2
  80:21 85:20 90:2
  90:17 95:4 98:15
  100:8,20 102:12
  110:16,22 113:19
  120:24 123:15
  125:5,8,15,24
  127:4,5,7 130:1
  138:14,20 140:16
  142:9
factor  125:4
  139:13
factoring  102:13
factors  71:2 75:11
  100:5,11 125:13
  135:4,8 136:10
  137:2 139:8,12,14
factory  55:1
facts  63:12 102:25
  112:10 113:10
  134:6,11,21 135:5
  140:4

factual  66:4 92:5
  98:13
faded  119:21,25
failed  60:18
fair  19:11 22:7,7
  43:25 135:18
  142:6
fairfield  86:12
fairly  128:3
faith  18:4 25:20
  57:17 74:25 81:4
  83:21 95:4 106:19
  106:21 140:19
fall  52:9 76:18
  104:21,22
falls  104:20
false  53:1 55:17
  65:23
falsehood  56:2
falsehoods  52:15
familiar  90:16
familiarity  52:3
families  47:9
  48:10,14 49:3
  51:17 53:6
family  20:9 47:6
  47:19 51:7 65:19
  75:3 77:1 89:19
far  32:9,23 46:10
  52:6 55:17 77:11
  80:20 82:11 84:5
  85:11 105:3
  139:18 140:2
  149:2
father  73:3
faulting  114:24
favor  55:16,18
  80:19
favors  81:21
fcc  76:12
fda  101:3 105:10
feathering  114:20

features  132:23
fed  3:24 7:21,22
federal  17:1 18:14
    18:19 19:14 20:12
    24:23 25:4,13
    42:4,12 91:20
feed  143:4
feedback  43:18
feel  24:2 39:2
    40:22,22,23 41:7
    72:12
fees  17:7 131:8
feinberg  24:16
feld  71:13 119:8
fell  87:21
fewer  87:23
fiberwork  79:15
fiduciaries  141:4
field  103:7
fifth  127:10
fight  118:20
fighting  143:20
file  3:2 8:23 32:8
    34:18 38:25 51:16
    104:11
filed  3:8,19 5:1,10
    5:19 6:16,23 7:4
    8:4,10,15,24 9:6
    9:17,22 10:3,10
    16:15 19:4 21:13
    22:25 26:16 27:25
    28:17 35:5 37:12
    38:5 40:2 41:4
    43:24 44:4 47:15
    47:17 48:8 51:13
    51:18 58:16 72:2
    73:25 74:23 81:9
    81:9 89:1 101:24
    104:23 116:4,5,24
    144:18 145:15,19
    147:8,10,22
filing  3:7,25 8:3
    24:13 27:6 36:7

45:20 46:3 50:20
    88:22 102:2 134:9
    144:18 145:11
film  87:25
final  20:16 67:13
    67:17 86:9 97:14
finality  126:12
finally  37:3 46:4
    50:7,18 52:2
    54:14 67:25 72:9
    105:20 127:10
financial  36:17
find  54:15 57:3
    138:10 139:25
    148:6,17
finding  35:17
    51:20 106:3
    118:13 142:23
findings  37:1,5
fine  28:12 37:10
    38:1 71:11 96:20
    128:9,17 143:25
    147:13 148:18
finishes  97:15
finson  12:9
fire  55:1
fired  96:14
firm  118:12
    147:20
firmly  63:22
firms  64:19 103:6
first  15:5 16:12
    17:9,14 21:4 24:9
    24:15 26:15 31:22
    35:5 40:10,11
    41:15 42:17 44:13
    47:17 50:22 54:16
    60:24 69:15 71:10
    74:3 75:5,13
    77:20 78:9,13
    87:14,15 113:18
    115:15,17 119:3
    124:21 130:16

133:5 139:11
five  18:24 21:10
    21:19 22:25 31:2
    34:17,17 50:23
    65:17 72:10,20
    84:5 85:17 89:16
    89:20 98:8 109:4
    121:1 124:18
    128:5 131:23
    132:16 135:21
    136:24 137:18
    141:8
fixed  35:20
flag  127:10
flags  90:15
flaherty  14:24
flatly  130:10
flexibility  126:11
    140:24
floodgate  40:1
flow  75:21
focus  32:10 61:7
    80:13 112:13
    143:9 146:4
focused  46:12
    57:5 59:25 65:22
    125:21
focusing  94:19
    107:11,12 142:5
    143:15,16
folks  89:12 98:19
follow  15:18
following  39:6
    41:15 58:14 60:23
    125:24 140:23
follows  54:24
foolishly  140:21
foot  131:4
footnote  111:21
forbid  89:19
foregoing  151:3
foremost  124:21

forgive  23:5 24:1
    94:9
forgive  23:20
form  27:8 28:20
    48:19 49:22 60:17
    63:6,20 71:20
    79:7 130:20
    132:18 144:21
forma  44:1 47:18
formal  40:17 43:8
formally  16:21
    95:12
format  28:3
former  122:25
    144:7
formulated  26:23
forth  17:8 29:21
    35:13 36:11 41:1
    44:4 74:8 86:11
    88:14 91:7 101:12
    113:1 127:13
    134:3 136:14
forward  26:6
    27:18 37:7 40:3
    59:2 65:15,20
    77:7 78:16 81:16
    88:2 89:13 126:12
fought  100:23
found  88:23
    123:25 132:19
foundation  44:14
    47:12 69:23 76:2
four  20:9 39:23
    45:17 50:1 58:25
    65:15 74:2 75:10
    98:18 125:3,6
    126:17 135:20
    143:5
fourth  126:17
fraction  104:14
    104:14
frames  70:25

**framework** 70:7
**frankly** 16:18
20:4 22:9,22
23:15 46:10 50:19
55:3 57:10 60:2
72:6 73:10 90:4,7
96:25 97:10
103:14 106:12
110:21 122:9
125:12 126:12
131:3,6 132:4
138:11 139:18
140:7
**free** 3:14 4:3,12
4:21 37:9 55:20
56:6 68:22 122:7
**frequently** 79:22
**front** 23:24
117:21 147:18
**frontline** 39:10
40:10,11
**frontloaded** 127:7
**fruitful** 60:4
**frustration**
121:12
**full** 30:13 34:11
61:11 83:10 99:24
125:3
**fully** 20:18 44:3
49:5 70:24 82:4
89:13 104:25
143:25
**fund** 17:6 46:6
84:15 112:3,20
113:2 138:15,23
**fundamental** 79:1
**fundamentally**
121:4
**funded** 18:14
**funds** 112:5,14
120:19,22
**funneling** 76:6

**further** 26:20
27:14 31:17 36:23
71:20 82:9 117:4
126:21 137:21
140:16
**furtherance** 75:12
**furthers** 79:25
**fusion** 116:22,24
**future** 35:19
72:25 88:3,6
106:3 110:1
129:10 140:22

**g**

**g** 15:1
**garfinkle** 14:19
**gartrell** 12:8
91:15 95:16 107:7
107:18,19,22
108:11,22,24
109:6,10,15,19
111:5,10
**gartrell's** 92:12
95:15
**gatekeeping**
80:11
**gating** 20:2
**gauntlet** 101:1
**general** 24:20
73:14 97:13
122:10 141:2
147:21
**generally** 77:6
81:22 122:3
134:13 135:24
144:4
**generals** 54:7 64:8
67:21 68:21
**generated** 85:19
**gentleman** 147:1
**gerard** 13:12
**getting** 17:25
23:16 43:17 53:18
55:19 68:21 81:23

97:20 102:5 111:1
112:14 117:11
120:12 123:23
**give** 31:9 33:9
73:7 118:12
119:15 120:14
126:11 137:18
148:2,13
**given** 26:2 30:4
37:2,10 38:8
39:10,11 40:24
42:15 67:9 81:8
89:10 90:4 121:4
128:21 133:7
137:19 138:20
140:16 142:7
145:17
**gives** 35:1
**giving** 82:14
87:13 117:5
148:16
**glitches** 32:22
**global** 17:18
20:22 134:1
**go** 16:4,8 20:14
27:18 33:11 37:7
38:16 59:2,18
62:19 66:1 69:4
77:7 88:4 95:9
104:25 115:14,15
115:16 116:3
119:2 124:4 128:6
129:18
**goal** 25:25 70:22
96:24 130:17
**god** 89:19 122:20
**goes** 52:6 56:18
85:8 107:12
109:23
**going** 17:24 20:14
20:21 21:21,23
23:19 26:6 33:21
38:1 39:13 40:16

40:19 41:8,14
43:18 48:5 52:23
58:12,22 62:2
65:15,20 71:18
72:13 73:11 74:19
78:9,16 88:4 89:3
89:6 91:8 92:2
94:7,8 96:11
102:16 104:13
110:25 113:6,7,7
113:12 114:8
116:1 118:12
119:13,17 120:22
121:21 124:13,15
124:19 125:22
126:11 129:20
131:6 132:4 143:4
145:12 146:2,3
**goldin** 14:25
**good** 15:2,6 16:9
18:4 25:19 26:11
28:9 31:6 54:16
57:17 60:12 70:6
71:9 74:25 81:4
83:20 88:13 95:6
95:10,18 96:13
106:19,21 110:2
111:16,18 115:2,3
134:22 140:19
**gotten** 57:14
**governance** 46:2
**governed** 100:1
**governing** 98:15
**government** 18:18
25:13 42:12 118:3
118:5 121:10
128:1
**government's**
18:17
**governmental** 8:5
8:25 24:24 25:1,6
27:19,22 30:16,23
63:8 64:9 69:14

77:18 78:2,3
80:24 81:10 83:17
84:4 86:22 88:17
88:18 89:23 90:5
90:10 91:20 92:19
95:22 114:13
129:3 132:2
136:19,21
**governments**
17:10
**governor** 122:25
**grand** 100:8
**grant** 31:3 32:7
33:5 36:10 41:14
48:3 86:1 107:24
108:11 143:1
**granted** 30:3
31:20 53:2 80:9
150:7
**granting** 3:19 4:7
4:16 5:1 7:23
41:12 44:19
115:21
**grapple** 49:24
**grateful** 38:21
**gratified** 25:21
**great** 24:18 26:2
61:7 111:13
117:13
**greenwich** 86:13
**gregory** 13:14
65:10
**grind** 67:1
**grounds** 47:22
138:10
**group** 6:17 19:9
24:22,23,23 25:1
25:1,4,7,7,10
42:13,24 43:9
48:16 64:1,8 72:3
74:16 76:12 84:5
84:10,13,19 88:16
88:18 89:1,1

91:13 109:5
124:23,24 127:15
127:19 128:5
133:15 134:25
136:23 141:1
**groups** 18:8,9,24
19:18 64:13,14
68:12 84:4 89:4
89:22 91:21 92:19
95:22 96:9 103:8
105:23 106:15
108:3 121:1 125:3
125:6 126:17
129:3 138:6
**grow** 81:14
**growing** 52:22
**guess** 35:25 87:9
93:10 94:7 95:3
97:24 99:11 119:3
**guessing** 97:13
**guidance** 18:5
82:14
**guided** 103:5
**guidelines** 143:25
**gum** 57:10 59:16
66:9
**gump** 71:7,13
94:2 119:8 120:5
**guts** 41:3

**h**

**h** 8:4,24 13:18
**haberkom** 12:24
**half** 54:2
**halt** 67:1
**halted** 44:12
**hammered** 26:5
**hand** 42:17 82:11
82:21 126:7 140:7
140:9 142:1
**handful** 31:13
**handling** 28:7
**hands** 130:14

**happen** 67:12
100:21 110:12
144:16
**happened** 18:2
54:17 66:10
**happening** 21:22
**happens** 40:7
61:18 87:24
**happy** 29:25
31:18 33:9 48:17
56:13,18 111:14
113:14 127:19
146:25
**hard** 23:22 25:20
46:9,18 50:20
53:8 64:13 100:23
**harm** 51:25 75:14
75:15 77:5,8,9
80:1 105:9
**harming** 77:18
**harms** 49:18
80:19
**harold** 12:23
**harrison** 13:17
**hauer** 71:13 119:8
**haute** 15:17
144:14
**hayden** 12:12
**hayley** 14:23
**he'll** 123:2
**head** 51:18 92:9
**headline** 130:8
**health** 5:11,20 7:5
22:18 25:9 73:2,3
**healthy** 110:3
**hear** 15:15 22:11
26:13 37:25 38:1
43:16 56:14,17,19
56:20,24 60:10
71:10,11 111:14
119:21 120:1
144:10,11

**heard** 16:7 24:11
28:11 29:22 31:10
71:8 73:24 87:15
87:19 104:3 147:4
**hearing** 3:1,2,5,11
3:23 4:10,19 5:4,9
5:17 6:4,12,20 7:1
7:12,15,19 8:1,8
8:14,18,22 9:3,10
9:15,21 10:1,7
15:4,21 16:12,17
21:5,11,14,15
30:14 31:2,7,8
33:5 34:13 42:25
48:4 55:25 74:5
77:13 78:10 87:24
91:25 100:18,21
105:17 127:13
129:23 132:10
136:6 140:17
144:15 145:1,3,8
145:21,22,24
146:2 147:14,16
149:2
**hearings** 15:10
23:4 74:3,7,13
98:17 111:6
**heavily** 90:9
**held** 76:8 99:25
103:22
**help** 41:8 108:14
108:15 112:4,6
121:13 124:18
146:25 147:19
**helped** 27:16
**helpful** 33:10
128:25
**high** 89:9 109:3
121:10
**higher** 36:2,3,6
105:4
**highlight** 24:13

**highly**  55:2,3
77:16 80:24 101:5
113:22 139:3
141:14
**hired**  134:9
**hirschfeild**  13:3
**history**  86:17,18
122:2 148:23
**hoc**  6:17,24 8:5,25
9:22 10:1,4 11:13
11:20 18:8 22:23
24:24 25:1,10,11
44:1 50:18,21
51:23 52:16,19
55:14 60:14 67:25
69:13,22 71:2
72:3 74:12 75:7
76:25 79:19 80:5
80:6 86:4 88:16
94:17 102:23
114:13 115:19
124:22 127:15,19
136:19,20 141:8
**hoffman**  114:6
**hoisted**  57:4
**hold**  53:21 130:19
130:24 131:4,11
**holdings**  86:24
134:1,24
**holdouts**  83:3
**holdreight**  14:11
**home**  46:15
**hon**  2:22
**honest**  52:7
**honor**  16:6,9,12
24:4 26:11 28:5,9
28:13,23 29:19
30:1,9,20 31:15
31:19 32:13,25
34:11 35:24 36:5
37:14,19,23 38:17
38:23 43:13,24
44:5,9,21 47:14

47:20 48:17 52:18
54:25 55:7,25
56:13,21,22 57:2
57:2,15,25 58:5
58:14 59:6,15,18
60:2,6,9,12 61:21
62:2,3,11 63:24
64:3,12,20 65:5
65:10 66:3,6,12
66:24,25 67:13,15
69:1,3,6,11,11,15
71:4,6,12 72:9
73:8,11,18 87:5,8
87:10,22 88:8
89:16 90:12,16
91:12 92:7,17
94:1,15,25 95:11
95:18,19 98:10
99:17,25 100:20
101:7 105:13,20
105:25 106:7,16
106:25 107:18
108:14 109:21
110:14 111:16,19
112:2,3,10,25
113:14 115:6,8,10
115:18 116:20
117:22 118:9,16
119:1,4,10,23
120:9,13 121:16
123:5 124:8 127:2
127:23 128:10,11
128:19,23 129:5
129:15,17,22
132:11 146:24
147:17 148:6
149:5
**honor's**  45:18
47:23 73:12 87:13
**hope**  22:1 56:23
72:1 73:10 88:6
105:5 110:6,11
127:16

**hopeful**  69:23
**hopefully**  17:17
20:4,18 21:7
70:25 88:1,4
104:8 123:22
149:6
**hoping**  62:5
**hospital**  40:19
**hospital's**  39:7
42:23 43:9
**hospitals**  25:10
42:19 81:9
**hourly**  104:11
116:3
**hours**  54:10 68:14
143:5
**hrt's**  46:6
**huebner**  11:8 16:6
16:9,10,25 26:4
69:19 87:8,9,17
87:18,22 92:16,24
93:3,6,9,22 94:5,7
94:20,25 95:2,10
95:18 97:4,10,22
98:1,3,6 108:14
108:22 109:21
110:14 119:1,17
119:22,23 120:2,5
120:11,13 123:5
124:5,10 128:10
129:17 146:24
147:17 148:6,13
148:19,21 149:3,5
**huge**  54:21 88:9
111:1
**huh**  148:10
**human**  22:18
**hundred**  45:9
**hundreds**  23:6
58:9 68:14 82:7
83:18 90:5 104:10
104:23 122:9

**hunter**  13:13
**hurley**  13:5 120:7
120:8,9
**hurt**  82:2
**hyde**  10:25 151:3
151:8

**i**

**i.e.**  35:13 85:10
135:6,12,14
**ibid**  76:7
**iconic**  87:25
**idea**  15:6 59:19
99:10
**ideal**  89:7
**ideally**  20:20
**identical**  90:17
**identified**  35:21
51:1 142:3
**identify**  15:5
113:23 114:10
**ii**  3:15 4:4,13,22
100:5 139:8
**iii**  3:16 4:5,14,23
**illusion**  126:14
**illustrate**  84:23
**image**  81:13
**imagine**  102:5
118:9 123:6
148:14
**immediate**  76:14
124:1
**immense**  46:9
82:6
**impede**  75:17
76:1
**implementation**
9:6,11,16 10:8
18:16 19:6 39:13
39:16,22 40:25
41:23 42:6
**implemented**
26:25 40:16

implementing
41:9
implements 69:21
implicit 74:22
importance 25:22
74:17 80:11
139:15
important 18:1
25:13 45:2 46:5
52:13 74:20 76:11
82:1,24 96:22,24
96:25 98:11
113:24,25 125:3
130:11 131:21
136:5 139:18
140:10
importantly 40:4
77:25 104:9
impossible 46:10
57:8 63:2,20
133:21
improper 42:22
improperly 82:22
inaccurate 130:1
inadvertently
94:22
inappropriate
55:17
incentive 9:12,16
10:9 93:5 130:4
130:23 136:2
139:20 143:6,8,17
144:5
incentives 130:2
143:19,25
incentivize 99:7
incentivized
135:23
inch 90:14
include 20:19
24:24 42:1 44:23
64:8 75:2 86:22
125:12 127:19

143:11,11
included 25:7,14
35:16 48:22 54:13
108:12 147:5
includes 20:8 25:4
72:6 83:5 132:18
including 18:9
30:17 31:23 36:22
37:5 44:4 46:5
47:22 50:4 51:16
74:25 76:23 77:1
80:5,5,15 81:9
82:18 83:21 84:3
98:15 100:11,16
104:10 105:23
119:18 123:4
133:15 134:7
135:9 138:6
139:15
incommunicado
144:20 147:11
inconceivable
50:12 68:25
incorporate 50:1
incorporated
74:13
incorporates
100:2
incorporation
49:15
increase 23:10
increases 51:21
80:8
incredible 18:4
67:19 81:15
incurred 134:8
independent 7:12
7:15,20 8:2,9 54:5
129:8 136:1
independently
40:19
indicated 39:19

indicates 39:12
indicator 47:16
indiscernible 16:6
17:24 18:19 19:2
19:14,17 21:20
22:14,24 23:1
35:3 36:1,12
38:14 43:10,16
48:17 66:24 69:4
86:19 91:22 93:8
93:10 96:1 97:1
98:20 99:12
100:23 103:19
105:7 106:2
108:17 119:3,10
119:20 122:1
123:14,24 128:14
128:16 130:7
132:12 145:8
147:2,9 148:7,17
149:7
indiv 9:4
individual 21:1
22:25 53:20 67:16
73:7 89:16,21
97:11,11 123:15
132:6
individual's 89:18
individuals 98:8
117:7 131:23
132:16
indulgence 107:3
industry 135:21
135:25 137:3,4
138:1 139:22
141:14 142:20
143:18
inflammatory
22:13 52:4 128:6
informal 28:20
34:8
information 3:25
32:5 40:17 45:5

52:12 53:23 54:12
61:2,16 64:15,24
65:1 67:2,5,6
114:1 116:24
117:4 128:12,16
132:6
informed 79:4
informing 34:19
ingredient 28:24
initial 46:23
initiatives 46:5
injunction 5:7,10
5:18 6:1,9,16,22
7:4 22:4 37:21,25
38:13 43:12,22
44:10,11,19,22
45:22 46:11,12,15
46:21,23 47:1,3,5
47:8,17,18,21,23
48:9,12,13 49:1,2
49:4,9,12,14,17
49:22 50:2,9,15
50:25 51:10,20
52:1,20 53:2,2,5
53:11,15,16 54:20
55:7 56:7,11,15
56:19 60:19,22
63:1,5,15,19 68:3
71:4,16,24 73:13
73:18,21 75:9,13
75:15,24 76:9,10
76:21,23 77:3,7
77:16 78:12 79:25
80:9,23 84:2
86:10,21 87:11
101:5 103:13
104:2,19 122:11
150:6
injury 19:10,13
19:18 25:8 64:15
64:18 84:5 136:24
144:13 147:5

inmate  15:17
144:12
inside  68:13
insider  99:18
109:5 119:12,13
127:12 133:20
137:10 142:6
insiders  64:2,8
88:23,24 89:4
101:24 113:19,19
113:24 125:6,7,10
125:14,19,22,25
126:3,3,9,20
133:6,9,11 137:14
137:16 138:12
143:9
insofar  48:9
instance  72:25
73:1,2,4
instances  73:7
instructions  15:19
insurance  25:9,12
intake  147:21
intended  53:12
intense  104:2
intention  70:20
intercreditor  20:1
20:13
interest  29:17
30:5,11,22 53:13
60:20 61:3 63:18
78:23 81:21,22
82:11 84:1 85:12
85:15 114:2 115:4
140:18 141:19
144:2
interested  72:7
interesting  57:3
interests  3:15 4:3
4:12,22 24:19
25:22 26:2 31:9
36:21,24 46:13,17
47:7 49:4 53:4

57:9,17,22 63:3
99:4
interferes  49:17
international
76:17
internet  148:7,9
148:16
interpreted
134:12
interprets  134:13
interrupt  64:4
127:24 144:23
intimately  83:15
introduction
15:14 16:3 90:12
invariably  99:23
invested  47:12
54:9
investigating
135:22
invite  113:16
128:8
involve  77:21,23
involved  21:24
22:8 26:3 68:13
83:15 85:13 90:6
129:11
involving  20:19
ionosphere  86:25
ironically  87:23
irrelevant  51:14
irreparable  51:25
75:14,15 77:5
80:1
island  28:25 121:7
issue  20:2,2 27:17
39:3 45:2 50:14
58:11 59:9 61:9
61:21 62:4 64:14
65:19 70:14 73:2
86:7,21 103:9
113:1 116:13
118:17

issued  75:15
issues  19:5,6,7
20:13,15,16,18
21:8 22:7,14,18
22:22 23:1,24
25:3 39:20,23
40:18 60:1 65:22
70:23 73:9 74:18
74:20 82:13 89:8
89:11 91:24 94:21
95:23 98:17
103:10 106:3
111:24 125:21
129:10 147:22
issuing  75:8
it'll  146:16
item  26:10,15
28:7 80:11
items  21:2 28:14
127:16
iv  3:19 4:7,16 5:1

**j**

j  3:19 4:19 5:1
10:10
jake  14:11
james  3:8 8:11
11:9 12:1 13:23
81:13 144:12
january  32:14,16
49:1 73:25 116:24
jared  143:23
jasmine  12:17
jeffrey  12:18
14:19
jeremy  13:19
jim  26:11 38:17
147:20
job  72:5 138:23
joe  85:21
john  91:14 92:10
95:16
johnny  40:23

johns  76:3
joined  42:13
joint  8:1,8
joseph  13:14
65:10,11,14 72:11
73:1,15
josephine  12:8
91:15 92:11 95:16
107:18
joshua  14:15
journal  30:15
judge  2:23 15:2
15:23 44:20 47:24
51:22 75:18,19
85:4 86:10 114:4
114:6,6 134:20
135:3 136:4
139:14 144:10
judges  31:4 79:3
judgment  36:20
100:2 103:2
105:19 134:16,17
134:22 135:7
136:7,12 140:1
141:22 142:5
judicial  63:9
judiciously
121:20
jump  66:19
june  40:2
junior  98:19
jurisdictional
47:22 78:11 86:7
jurisdiction  86:8
justice  20:20
25:14 53:18 76:15
116:5,6
justified  49:5
112:1 113:9 134:6
140:3
justify  131:9

## k

**k**  148:10
**kaminetzky**  5:11
  5:17,19,25 7:5
  13:15 37:23,24
  38:15 43:13,14,21
  57:4,13 58:11
  59:10 65:8 66:6,7
  69:19 70:10 72:17
  73:14 87:3,5
  104:19
**kaminetzky's**
  57:7 71:25 87:10
**kapler**  14:4
**karsh**  14:15
**katie**  13:22
**keep**  15:24 38:9
  56:11 89:6 96:11
  96:22 114:18,19
  138:22
**keeping**  44:6 75:1
  110:17
**keip**  91:17,24
  93:3,20 113:15
  125:8
**keips**  143:17,21
  144:2
**kelsey**  14:10
**ken**  69:4,6
**kenan**  9:18
**kenneth**  8:4,24
  13:18 69:12
**kept**  21:5
**kerp**  92:2,20
  94:11 95:20 96:4
  100:10 101:15,18
  101:18 102:19
  107:1,9 108:3,7
  115:21 117:8
  118:23 133:4,11
  133:20 134:21
  137:1 139:6,19,25

**kevin**  13:7
**key**  9:11,12,16,16
  10:9,9 25:25
  44:21 45:8 46:1
  50:3 53:7 69:21
  88:21,21 92:13
  93:5 94:19 97:16
  126:5 132:22
  133:8 135:12,23
  136:17 137:16
  139:2,19 140:8,17
  141:18 143:5,8,17
  144:1
**kill**  67:22
**killed**  58:9
**kind**  21:3 35:1
  118:3,7
**kitchen**  132:1
**kleinman**  13:19
**knauth**  14:18
**knew**  20:12
  131:12
**know**  19:23,25,25
  20:13,17 21:6,9
  21:13,18 22:15
  23:3,7,8,9,20,25
  27:2 30:12,13
  31:3 34:11 35:4,8
  36:7 40:18 44:5
  50:20 52:7 63:23
  64:2 65:2,7,9
  66:16 69:15 71:15
  72:6 73:12 79:3,5
  81:11 85:16 89:7
  89:20,23,23 91:9
  93:13 97:13,14,16
  97:20 99:8 100:20
  101:1,13,22 102:7
  102:8,11,21,25
  103:2,6,18,21,24
  104:5 105:7 106:8
  106:10 109:25
  110:3,15,18,20,23

110:24 111:19
112:16 113:22
114:17 115:2,5
118:5,13 120:10
121:20,24 122:7
123:12 127:5
128:17 129:2
130:8,25 143:18
143:18 145:24
146:15,15 147:4,7
147:18,24,25
**knowledge**  17:9
  39:20 40:21
  123:13
**known**  43:7 83:20
**knows**  18:23
  66:25 89:16 102:7
  103:20 120:24,25
**kramer**  69:6,12

## l

**l**  143:23,23 146:8
  146:10 148:10
**l.p.**  1:8,12 3:9,20
  5:2,5,11,12,13,14
  5:14,20,21,21,22
  5:23,23,24 6:5,13
  6:21 7:2,5,6,6,7,8
  7:9,9 8:11 10:11
**laborious**  118:6
**labovitz**  12:19
**lack**  37:10 52:3
**laid**  48:4 96:7
  132:25,25 134:18
  135:3
**lake**  24:2
**lambert**  76:12
**langer**  14:13
**langley**  13:6
**language**  100:1
  105:22 106:1,5
  132:19 142:14,14
**large**  19:6 23:12
  45:1 56:5 99:16

103:9 110:11
133:13
**largely**  43:25
  46:25 51:7 55:11
  96:10
**lastly**  135:25
**late**  3:7 19:3,23
  26:16 27:6 41:5
  147:22
**lately**  40:24
**laudable**  61:6
**launching**  68:3
**lautenberg**  76:1
**law**  5:9 7:3 10:1
  49:18 64:19 79:2
  86:17 100:10
  102:25 133:15
  134:11,17 138:18
  143:24
**lawful**  141:14
**laws**  57:24 58:4
  79:20
**lawson**  127:4,6
**lawsuit**  76:9 97:25
**lawsuits**  77:7
  78:11
**lawyer**  66:2 73:3
**lawyer's**  65:21
**lawyers**  64:19,24
  64:25 79:21
  146:11
**lay**  47:12 101:17
**laying**  114:16
**lays**  46:18
**lead**  18:16 70:8
  79:4 105:8 111:25
  143:21,22
**leading**  21:14
**leads**  105:8
**lease**  3:18
**leases**  4:7,16,25
  36:15

**leave** 8:23 97:22
98:3 102:16 106:7
122:23
**leaves** 96:13 98:6
102:21
**led** 44:15
**ledanski** 10:25
151:3,8
**lee** 145:21 146:9
**left** 80:23 85:3
97:7,12 102:3
118:4 124:12
**legal** 17:7 51:8
58:6 79:5 98:13
98:15 103:1 131:8
146:22 151:20
**legally** 63:21
**legends** 85:22
**legislative** 86:17
86:18
**lehman** 105:1,2,3
105:4
**length** 59:24
100:6,6,18 101:13
**letter** 21:2
**letters** 21:14
**letting** 78:4 124:5
**lettuce** 81:14
**level** 25:17 110:7
112:9 118:15
140:10
**levels** 18:18
121:10
**leventhal** 14:5
**leverage** 78:6
**levin** 69:6,12
**lexington** 11:5
**lexus** 75:20
**li** 146:8,10,14
**liabilities** 135:16
139:10,14
**liability** 63:23
116:8

**liable** 63:25 79:7
79:7
**liens** 3:15 4:3,12
4:22 36:24
**life** 131:24
**lifland** 135:3
136:4 139:15
**lifted** 66:17
**light** 48:5 70:1,2
70:19 85:9 138:14
**likelihood** 51:10
51:21 75:14
100:19
**limit** 80:1
**limitation** 78:15
**limited** 6:6,14,22
9:5 32:1 48:8 63:7
76:16 80:25 83:7
83:9 88:21 121:23
121:24 142:25
**line** 27:11 32:25
57:6 145:1 148:14
150:4
**lines** 19:6 101:11
**list** 30:11 42:22
**listed** 25:20 30:23
139:14
**listen** 132:8
**listening** 15:24
60:15 132:10
146:22
**literal** 76:4
**literally** 21:1
75:25 98:25
101:24
**litigate** 22:3
**litigating** 21:18
48:9 59:9 66:15
**litigation** 8:6 9:1
24:25 44:12 51:6
53:24 54:19,20
56:6 57:12,21
59:4 66:12,25

67:8,13,20 68:11
70:3 77:10,20,24
78:3,5,24 79:3,23
84:13 85:2
**litigations** 66:20
66:20
**litigator** 79:8
**litigators** 79:2
**little** 24:2 42:13
43:17 72:14 84:18
92:16 95:4,25
96:5,5,6 105:11
107:25
**live** 106:23
**lives** 46:8
**llc** 29:3 133:25
**llp** 11:3,12,19
**local** 17:10 18:12
79:1
**location** 65:23
**locked** 17:25
**logic** 66:13
**lone** 90:10
**long** 3:16 4:4,13
4:23 16:19 29:4
36:12 88:6 91:4
98:12 100:22
111:2 118:21
130:2,22 135:12
144:4 146:5
**longer** 59:2 67:1
72:22
**longstanding**
142:17
**look** 21:17 73:23
85:9 97:19 140:25
148:3 149:8
**looked** 111:7
**looking** 24:17
51:5 54:11 83:23
126:12 127:9
144:2 147:7,9

**loose** 142:14,14
**lose** 102:11 141:6
143:4
**loses** 27:24
**losing** 141:6
**loss** 89:18 131:4
**losses** 22:21
**lost** 63:23 122:17
**lot** 39:8 67:14
73:9 74:5 109:22
123:7 132:1
**low** 46:6 109:2
**lowell** 12:9
**lower** 112:9
**lowne** 91:14 95:16
**lowne's** 92:10
95:14
**lp** 15:3 75:20
**ltrp** 96:9 101:18
108:11,15
**lyondell** 75:21

**m**

**m** 6:17 13:21 37:6
**macarthur** 76:3
**mackay** 12:20
**maclay** 13:7
**main** 26:5
**maintaining**
122:19
**major** 30:23
78:19 132:14
**majority** 47:7
**makers** 112:18,19
**making** 7:22
35:17 51:12 81:20
104:14
**mamahon** 44:20
**man** 15:15,17,21
15:25 69:4
**management** 30:6
109:5 112:13
139:1

manager 117:5
managers 134:8
manufacture 30:19
manufacturing 5:13,21 7:6 23:9 28:25 37:8 101:2
manville 76:3
mara 14:5
marc 12:25 13:3
march 43:22 44:11,22 46:24 49:5 55:25 56:11 59:23 73:22 74:4 76:19 77:13 85:23 143:24
maria 14:3
mark 23:21
marked 101:13
market 101:4 104:14 107:9,16 108:1 109:1,3 135:13 137:15 138:13 139:21 140:10 141:23 142:7,20 143:9
marketing 29:15 117:6
marketplace 144:3
marshall 11:8 16:10 87:8 120:7
masiowski 38:24 39:5,17 40:20
mass 61:14
massachusetts 1:15 5:5 6:5,13,21 7:2
massive 106:18
material 23:12 75:2 79:14 101:23
materially 77:23

materials 45:7
matter 1:6 27:14 31:10 48:17 87:12 87:12 100:23 130:18 141:10 145:3
matters 21:10 24:6 26:10 38:13 62:9 74:25 78:8 79:6 128:4 138:25
matthew 95:3
maura 12:21
maximization 99:14
maximize 53:3 55:22 130:19 140:19
maximized 40:14 142:9
maximizing 29:17 46:13
maximum 144:16 148:10
mcclammy 3:8 8:11 11:9 26:11 26:12,15 28:5 37:20 38:16,17,17 147:20,20
mcclammy's 148:14
mcelveen 14:10
mcmahon 47:24 75:19 85:4 86:10
mcmahon's 51:22
mean 24:1 61:24 63:13 66:12 72:5 89:17,18 91:22 97:24 109:16,22 112:12 113:17 128:21
meaning 27:24 126:24

meaningful 81:2 139:22
means 43:5 51:5 52:15 133:20
mechanic 33:12
mechanical 24:9
mechanics 59:11 128:14
mechanism 49:7 60:21 61:24 67:2 117:22 123:1 129:13
mechanisms 18:13 123:20
media 129:23
mediation 9:5 18:2,3,25 19:3 22:3 24:22 25:15 25:17 26:8 27:16 38:6,8 39:4,10,12 39:13 40:24,24 41:3,15,16,18,19 41:19,22,25 42:1 42:3,15,16 43:3,8 44:18,24 58:24 64:18 67:14 70:5 70:11 83:25 110:23 142:11 147:4,5
mediator's 16:19 16:25 17:8 20:7 24:14 44:24 74:22 80:7,10 81:13
mediators 18:5 19:24 24:15 25:18 25:19 26:5 41:23 42:1,9 139:4
medica 21:11
medical 65:19
medically 22:17
medication 46:7 105:10

medications 101:3 101:4
meditator's 20:6
meet 40:6 133:21 133:22 140:15 147:11
meeting 123:8
meets 100:16
megan 14:4
mehri 13:11
meises 13:10
member 47:19 89:19
members 47:6,9 48:10,13,15 49:2 51:7,17 53:6 75:3 77:1
memorandum 5:9 7:3 10:1
mention 89:20 94:8,9
mentioned 34:3 56:5 72:11 118:22 128:24 136:4
merely 50:1 58:2 142:22
merits 66:2 90:11
meta 20:13
meters 23:16
method 113:6
metromedia 79:15
meyer 12:13
michael 11:24 38:24 60:13 115:13,18
michele 13:10
middle 109:5
midpoint 109:1,2
milestone 22:10 23:3
million 45:14 54:2 54:3,9 82:7 95:25

107:15,23,25
108:1,10 113:2
125:16 129:25
130:6,9
**millions** 22:15
45:7 61:5 68:15
**mind** 81:14 90:8
148:7
**mindful** 70:13,16
**mineola** 151:23
**mini** 98:18,18
**minimize** 89:18
**minimum** 89:9
122:2
**minute** 16:14,20
21:1 23:21 144:18
**minutes** 90:11
93:11 107:3
**mischaracteriza...**
56:1
**misconduct** 116:7
123:2 142:4
**misreading** 41:21
**missed** 147:8
**missing** 38:10
**mississippi's** 3:6
**missouri** 133:25
**misstate** 108:23
**mistakenly** 65:14
**misunderstanding**
125:24
**mitchell** 13:5
**modest** 131:8
**modifications**
101:9
**modified** 51:1
60:23 105:25
132:18,25 136:14
**moment** 19:24
81:15
**momentous** 16:17
16:23

**monaghan** 12:21
**monday** 28:19
44:5
**money** 17:22
20:14 81:16 97:20
121:12,19
**monitor** 45:23
101:5 104:1
122:10,25 141:20
**monitor's** 45:25
**month** 21:24 59:2
65:16,19
**months** 18:4
41:19 43:3 44:17
47:12 54:9 88:2
99:6
**montminy** 14:20
**monumental** 45:3
**morning** 15:2
16:10 26:11 28:9
29:8 60:12 71:9
111:2
**motion** 3:2,6,11
3:12,23 4:1,10,20
5:6,6,9,18 6:1,6,8
6:15 7:3,12,16,21
8:1,2,14,14 9:3,10
9:10,15,21 10:2,7
22:11 26:17,21
27:3,23,25 28:15
28:15,16,16,18,19
29:1,6,20,21,22
29:23 30:2,6,13
30:23 31:1,2,3,5,7
31:12,12,16,16,22
31:24 32:7,9 33:5
33:24 35:11 36:7
36:11,16,18 37:3
37:21,25 38:4,4,5
38:8,11,14 39:2
41:6 43:11,22
48:3 61:25 62:7
69:8,16 71:16,24

73:6,13,18,20
86:1 87:14 88:10
88:20,25 91:7
98:25 101:24
102:2,18 105:7
110:4 113:5,8
114:8 116:4
132:22,25 133:1
133:10 136:16
143:1 144:18
145:2,10,16
147:10,18 149:7
150:6
**motion's** 37:4
139:24
**motions** 8:18,22
21:19 28:1,17
31:19 58:16 63:23
72:2
**motives** 52:6
**mount** 68:6
**movant** 7:15,20
8:9 38:4
**move** 38:11,12
48:5,13 49:1
81:16 91:16 95:13
96:2 99:5 112:25
**moved** 92:4
**movie** 81:12 87:24
**movies** 87:23
**moving** 19:4
49:25 89:13 104:1
**mseg** 124:23
**msg** 18:9
**msge** 94:17
**mssrs** 24:15
**multi** 21:24 24:25
45:9 78:11 88:18
**multiple** 22:4
49:20 54:16
105:22 115:22
**multiplication**
78:14

**munger** 14:8
**municipalities**
89:24
**murray** 114:6
**mute** 24:11 43:19
43:19 120:4

**n**

**n** 11:1 15:1 150:1
151:1
**naacp** 18:14 25:15
41:24 42:4
**naguiat** 13:20
**naloxone** 46:7
**name** 15:8 146:9
146:10
**names** 117:5
**nancy** 14:25
**narrow** 21:6,16
22:7 41:8 89:11
**narrowed** 88:10
88:12
**natasha** 12:19
**national** 18:6
**native** 17:10 18:9
25:12
**nature** 67:10,10
128:22 136:8
**navarro** 87:1
**ncsgs** 94:17
**near** 70:8
**nearly** 47:25
90:17
**necessarily** 77:21
136:11
**necessary** 44:8
46:16 50:3 54:5
54:15 61:12 93:20
107:4 114:7
139:16 142:19
145:9
**need** 20:16 21:7
22:6 26:25 31:10
59:3 72:12 74:20

75:14 81:6,19
86:6,8 92:17,25
99:11 100:25
113:25 114:17
119:2 121:20
129:19 135:22,23
145:12 146:6
**needed**  27:7 81:23
125:8,11
**needs**  43:7 70:12
84:8 102:13 107:6
**negative**  22:10
**negotiate**  42:10
62:24 82:24 83:24
126:3
**negotiated**  55:11
61:20 78:17 81:4
103:8 105:22
107:14 136:17
140:1 141:18
**negotiating**  74:25
138:22,24,25
144:1
**negotiation**  29:15
51:16 78:6 79:23
85:13
**negotiations**
50:10 61:4 77:22
78:6 79:4 139:3
**neither**  74:16
134:4 146:4 149:1
**nes**  19:17
**nest**  114:20
**never**  63:25 67:8
138:17 149:6
**new**  1:2 11:6,15
11:22 41:20 43:1
102:5 110:20
146:20 148:12
**news**  86:20 88:14
**nicholas**  13:16
**night**  38:25 44:5
58:17 72:2 122:15

**nighters**  19:23,23
**nine**  21:10 48:10
49:14 50:9 77:1
77:12 81:1 84:3
**noise**  50:14
**noises**  43:20
**non**  6:14,17 11:13
17:1 18:8,14,19
19:13 20:12 24:23
25:1,4 27:19 42:2
42:4,12 45:11
48:7,14,18 49:14
49:21,24 50:4,7
50:16 54:8 56:17
57:3,19 59:12,16
65:25 66:1,16,17
68:12 74:12,15
75:7 76:22,25
77:11,21 78:7,19
78:21 79:19 80:5
80:6 91:20 99:18
109:4 110:3
119:13 125:6,13
125:14,19,21,25
126:8,19 127:12
132:13 137:10,14
137:19 142:6
**nonconsenting**
86:4 88:16 116:11
124:22,24 129:6
136:20
**nonlegal**  85:24
**nonpublic**  84:25
**nonstate**  136:21
**normal**  61:22
**normally**  31:4
61:18
**north**  121:7
**note**  16:15 42:17
58:13,23 67:15
72:3 82:4,9 84:17
85:4 90:12 91:17
102:24 105:20

139:11 142:13
143:20
**noted**  26:4 75:18
75:23 77:19 85:20
101:7 102:24
129:22 140:17
**notes**  55:7
**noteworthy**  21:3
**notice**  3:1,12 9:3
28:15 29:23,23,25
30:4,6,10,11,14
30:14,21 31:10,13
32:10 33:6,6,23
34:4,11,13,18,19
35:4,18 37:2,10
38:5,25 59:1
73:25 105:11
136:5 145:4
**noticing**  30:5
45:19
**notifying**  35:7
**notion**  84:11
**notwithstanding**
77:5 82:13 86:21
**november**  26:19
74:4
**nsa**  25:10,11
**number**  28:7,19
29:20 39:7,11,17
39:23 40:1 44:23
45:12,17 46:1
56:1 72:24 95:24
96:2 110:11
111:10,12 114:4
121:15 129:22
135:4 145:18
146:13 148:1,2
**numbers**  107:16
141:6
**numeral**  26:10
**numerous**  54:6
135:9

**nuramco**  29:3,5
**ny**  2:3 11:6,15,22
12:4 151:23
**nygard**  76:16

**o**

**o**  2:21 12:3 15:1
148:10 151:1
**object**  59:19
76:25 93:8 94:5
99:12 120:23
**objected**  29:25
31:11 47:2,4,8,21
48:11 76:24 81:24
84:6 90:20 136:23
138:9
**objecting**  77:2
115:17
**objection**  6:6,6,15
6:22 7:15 8:1,2,18
8:22 9:15,21 10:2
28:18,22 32:1
34:6,9 35:18
36:18 37:3,11
47:18 48:1,6,7,8
48:18 49:13 50:17
50:18 51:11 52:2
52:9,9,17 68:4,7
84:7,7,13 85:17
89:14,15 90:10,25
91:19 93:24 98:21
100:9 102:17,22
113:1 127:18
132:13 142:11
**objections**  34:8
43:24,25 47:15
51:12 58:18 59:20
59:21 74:14 75:5
86:2 88:9,11 98:7
124:6,19,20
128:25 132:15
142:14
**objector**  56:18

**objectors** 22:5
56:20 74:11 77:4
84:8 107:2
**obligation** 57:16
79:20,22
**obligations** 134:5
134:7
**obliged** 148:23
**observation** 56:2
**observational**
25:13
**observations**
45:24
**obtain** 50:5
**obtained** 54:18,19
135:12
**obviate** 21:7
**obviated** 22:1
99:11
**obviously** 18:18
20:1,20 24:16
36:7 38:11 41:1
72:8 74:5 82:18
89:22,24 96:23
97:16 99:3 103:7
107:1 110:18
122:15,24 123:23
123:24 128:11
130:22 146:25,25
147:17
**occur** 25:17 50:14
77:10 82:8 140:3
142:4
**occurred** 25:17
77:12 82:6
**october** 65:17
74:3,19 78:10
89:8 91:23 93:20
105:16 127:13
151:25
**offensive** 54:6
**offer** 29:16 36:4
44:7 98:13 132:5

**offered** 65:17
72:21,23,25 85:22
128:15 141:10
**offering** 67:9
**offers** 36:2,6
**office** 15:11,12
90:3,9 111:17
112:18 113:11
127:14,20 132:3
148:14
**officers** 134:8
**official** 7:19 43:10
53:19 64:10 78:18
83:13 119:9 128:2
132:1 136:18
138:7
**officials** 6:7 132:2
**offramp** 48:15
70:17 73:24
**offramps** 59:23
**oh** 87:20 95:3
**ohio** 114:6
**okay** 15:20 16:24
24:8 27:13 28:8
30:25 31:21,23
32:17,22 33:2,11
35:10,25 36:10
37:16,22,25 38:22
41:11,14 60:8,8
62:17 65:7,13
66:5 69:2,9 71:5
72:14 73:19 87:7
92:6 93:21 94:24
98:5 107:5 108:25
109:7,13,20
111:13,13 113:11
115:7,9 116:19
118:25 119:4,7
120:8,10 124:8,15
129:16 132:20
145:13,15,20
146:23 149:8

**old** 151:21
**omnibus** 8:18,22
10:7 15:4 21:11
127:13 133:1
145:22
**onboard** 144:1
**once** 41:23 43:13
66:24
**one's** 85:24 110:1
110:18
**ones** 22:17 131:14
135:9
**ongoing** 9:5 32:6
45:5,12,21 70:4,5
**onus** 118:3
**open** 39:25 43:1
75:1 95:6 113:16
128:15 132:8
**opening** 44:6 88:9
100:7
**operates** 28:24
**operating** 23:5
147:1
**operation** 29:13
**operations** 102:13
**operators** 104:12
**opinion** 47:25
51:23 59:5 85:5
86:11
**opinions** 103:10
**opioid** 17:5,19
19:20 39:19,20
46:7 53:10 80:18
81:17 104:17
110:25 112:4,6,14
118:20 140:20
**opioids** 103:25
**opportunity** 31:9
35:1 38:21 49:10
70:17 73:22 81:15
136:5 147:23
**opposed** 113:22
114:16 115:1

139:13
**opposite** 53:14
**options** 84:17
**oral** 84:10 107:1
**order** 3:5,12,13
3:23 4:2,10,20
7:22 8:19 9:11,15
10:8 15:12 17:12
27:14 28:20 30:6
30:17 31:14 33:4
34:22 35:11 36:19
37:2,5,9,11,13,16
37:17 38:2 40:13
41:18 48:11,19,20
48:21,22,24 61:16
63:6,14 64:22
68:7,13 70:16
71:20,21 86:2,9
87:4 92:18 96:10
105:21 106:6
109:21 113:13
117:20 129:18
132:18 142:1
143:1 145:23
**ordered** 28:4
**orderly** 44:14
**orders** 47:23
78:18 149:9
**ordinary** 99:19,21
99:21,22 134:5,13
**oren** 14:13
**organization**
51:11
**original** 39:1 40:2
116:23
**originally** 21:20
96:14
**orion** 134:19
**osus** 86:11
**outcome** 54:24
55:6 79:4,6,17
81:3 100:24

outcomes  78:5
outlined  80:10
outright  52:15
  56:1
outs  77:16
outset  69:22
  105:21 128:24
outside  99:19
  134:5
outstanding  98:7
overall  126:19
  139:21
overcome  82:2
overdose  46:7
overlapping  93:7
overlooks  98:22
overnight  100:22
overpromise
  147:25
overruled  50:17
  86:1 142:12
overruling  100:16
overseas  67:11
overview  26:20
  35:8
overwhelming
  102:20 106:15
owe  97:8
ownership  29:12

p

p  3:24 7:21,22
  11:1,1 13:5 15:1
  133:16 148:10
p.m.  34:7
pace  68:23
page  45:9 47:25
  48:8 50:1 51:22
  86:20 100:9
  101:11 104:2
  105:17 110:19
  135:1 150:4
pages  45:7,14
  54:3 58:9 82:7

paid  99:8 104:7
  108:16,18 113:6,7
  113:7 121:7,9
  130:23 133:5
  134:4
pain  18:6 122:16
painful  110:6
pandemic  18:6
  82:2 102:6 111:2
papers  31:18 41:4
  44:4,5 88:14
  100:7,7 102:18
  103:3 109:22
  119:14 121:17
paragraph  34:22
  39:11 41:23 107:8
  117:19 142:1
paragraphs  93:14
part  17:18 19:15
  33:4 45:1 52:9
  56:5 61:7 76:11
  98:24 110:16
  113:12,21 121:8
  125:7 133:13
parte  3:11 31:5
participants
  107:10 133:11,20
participate  9:5
  38:6,7 39:3,5,15
  39:21 41:5 57:17
  83:8 84:14
participated
  24:21
participating  26:7
  83:9
participation  18:4
  18:13 19:16 20:9
  40:18 67:18
  111:11 131:22
particular  16:15
  44:17 57:22 74:10
  80:22 85:1 100:13
  129:14 135:25

136:9
particularized
  49:8
particularly
  70:19 85:13
  107:15 144:1
parties  18:25
  20:21 24:19 25:20
  25:21 26:1,6,7
  27:3,5,11,22
  28:21 29:24 30:10
  30:11 31:9 32:11
  32:15,18 37:7,12
  37:13 41:18,25
  46:12,16 47:6,7
  48:24 49:4 51:16
  53:4,13 54:6,18
  55:8,11 57:9,16
  62:23 70:17 71:1
  73:23 74:11 75:7
  75:11 76:10,22,24
  77:2 79:3 80:4,16
  81:3,15,24 82:15
  82:21,23 83:19
  84:15,23 85:13,14
  86:22 91:19 92:3
  106:21 107:15
  110:24 113:13,15
  114:1 115:4
  140:17 141:18
  143:7 144:2
  145:24
partners  29:8
partway  25:14
party  25:9 30:5
  41:20 42:14 43:1
  48:12 49:8 54:12
  76:21 82:10 84:20
  90:21 91:1
party's  84:24
pass  55:20 68:22
passed  16:13

passes  135:5
pathway  110:2
patience  144:25
patiently  61:15
patients  105:10
patriot  133:24
paul  6:23 8:15 9:7
  9:7,18,22 10:3
  14:6,22 38:23
  111:17
pause  19:24 20:25
  20:25 69:1
pay  10:2 96:16
  97:15 99:6 113:25
  114:18,19,21
  131:1,18 137:15
  138:13 140:10
  141:22 142:6
payable  96:1,11
paying  112:15
  114:9 122:1
  137:17
payment  75:3
  96:3,4,15 105:19
  111:25 113:20
  127:11 131:6
  140:6
payments  96:5,10
  96:19 97:8,18
  99:8 123:4 125:16
  126:8,20 127:12
  131:1,15,20
  142:16
payors  25:9
peace  91:23
penalizing  125:19
pencils  144:21
pending  73:6
  138:16
penitentiary
  144:14
pens  144:20

**people** 17:16,20
18:5 19:22 22:21
22:25 23:3,4,6,14
23:17 24:21 38:9
39:8 40:10,11
43:18 55:4 80:22
81:1 84:3 85:9
88:25 89:5,12
92:14 96:17,22
97:2,6,22 101:19
102:5,8,8,8,11
104:10,11,13
109:14,17 110:11
110:17,19 111:1
112:7,18 113:12
113:16,18,23,24
114:9 120:23
121:13,15 122:1,9
122:12,16 123:25
128:14 129:11
130:18,19,24
131:16,18 132:1,1
132:10 136:22
138:25 141:5
142:25 143:14
**percent** 17:16,19
95:25 101:25
102:4 109:2,4,4
110:6 126:19,22
126:24 137:18
**percentage** 139:7
**percentile** 101:14
107:13,17 110:5
137:17 139:11
**perfect** 127:1
**perfectly** 119:23
**performance**
35:20 99:7 135:15
**performing** 136:1
**performs** 101:10
101:11
**perils** 144:16

**period** 33:7 62:25
81:3 92:22 93:16
96:19 122:5
123:21 130:3,20
136:3
**perkins** 13:1
**permit** 8:3 51:1
**permits** 48:24
114:19
**permitted** 77:10
142:4
**permitting** 77:7
**persisted** 116:12
**persistent** 118:22
**person** 39:14 81:8
85:2 127:4,6
128:5 141:8
148:23
**personal** 19:10,12
19:17 25:8 64:15
64:18 84:5 128:3
136:24 144:13
145:9 147:5,21
**persons** 50:23
**perspective** 40:5
**perspectives**
18:20
**pertain** 92:13
94:23
**pertains** 105:21
**peter** 13:2
**petition** 33:17,21
33:24 34:1,5,15
102:3 134:10
141:23 142:4
**pharma** 1:8,12
3:9,20 5:2,4,12,12
5:12,13,20,21,21
5:21 6:4,12,20 7:1
7:6,6,7 8:11 10:11
15:3 75:19 102:6
109:11,24

**pharmaceutical**
5:14,22 7:7 23:5
28:24 109:8,11
111:5 117:2 137:4
137:8
**pharmaceuticals**
5:14,23,24 7:8,9
**phase** 18:3,25
20:3,5 22:3 39:13
56:9 58:24 82:25
**phillips** 24:16
**phone** 36:3,9 38:9
38:19 73:23
120:12,15 124:5
146:13
**phones** 24:10
43:19
**physician** 38:3,20
39:14,18 40:15,20
117:6
**physician's** 7:16
7:20 8:9,14 9:3
**physicians** 7:12
8:2 39:8,9 87:14
**picard** 86:12
**pick** 57:13
**pickard** 76:2
**pics** 129:23
**pictures** 134:19
**pill** 61:14
**pillsbury** 11:12
56:22
**pittman** 11:12
56:22
**pjt** 29:8
**place** 22:20 43:3
56:11 59:11 70:3
77:9 78:16 91:2,5
103:17 104:4
118:21 123:20
140:15 141:16
**placed** 55:15

**placing** 55:17
**plain** 53:22
**plainly** 51:23
**plains** 2:3 12:4
146:16,20
**plaintiffs** 1:13
25:9 47:17,20,23
**plan** 9:6,12,12,16
9:17 10:9,10
17:12 19:16 20:8
25:25 26:23,25
27:17 34:25 45:19
46:3 51:13,15,18
54:13 61:2,16
62:8,21 65:2 68:5
69:24 70:8,13,20
70:23 75:1,2
76:11 77:18 79:10
79:13 80:12 83:5
85:7 88:21,22
91:7 92:13,15
93:5 94:19 97:7
98:18 114:21
115:23 117:8,13
118:23 120:23
121:16,18 126:19
130:23 132:23
133:3,9 135:5,11
135:15,18,20,22
136:13 137:13,21
138:9,15,24 139:3
139:9 140:8,23,24
143:8
**planet** 104:3
**plans** 17:13 60:3
90:24 118:21
119:13 143:6,10
143:17
**plant** 101:2
104:12 116:13
121:6
**play** 27:2 40:15
78:11 129:10

plays 76:10
pleading 48:11
  50:1
pleadings 111:20
please 43:14
  108:22 120:6
pleased 69:20
plus 108:2,3,6,6,7
  108:7 109:3
pm 149:13
podium 24:5 28:6
  37:20 56:13 87:9
pods 18:24
point 24:9 32:12
  39:11 40:5 41:20
  42:15 43:2 46:19
  61:6 67:13 73:1
  78:9 93:9 94:7
  97:6,6 109:3
  112:1,23 121:17
  125:5 126:21
  127:24 129:7
  130:13 131:21
  142:13 147:3,4
  149:10
pointed 54:25
  123:15 125:19
  128:20
points 59:19
  65:11 66:7 124:18
  129:9 147:21
police 58:4
policies 123:17
political 18:19
  55:3
politically 22:17
  106:10
polk 11:3 16:11
  26:12 28:10 37:24
  43:15 66:7 148:3
  148:4,10,11,12
portion 37:1
  94:10 132:21

portions 92:10
  94:20 139:6
position 42:2 44:3
  57:7 73:5 103:22
  129:1,1
positioning 107:9
  108:12 109:1
positions 27:5
  102:6 121:5
possession 39:24
  41:7 134:14
possibility 59:21
  75:2
possible 21:8 56:5
  78:24 79:16 80:17
  102:15 113:8
  117:10 120:21
possibly 66:11
  67:12
post 33:21 34:1,24
  46:2 90:15 96:18
  96:23 130:14,18
  142:4 143:12
pot 23:14
potential 29:13
  46:8 54:11 73:24
  81:4 108:17 117:8
  117:13 135:17
  139:10
potentially 21:23
  53:9 59:13 105:11
  106:4 129:10
  131:8
power 58:4 59:4
  86:21
powerful 47:16
practice 42:18
  116:22,24 123:16
  142:17
practices 123:18
pre 25:3 33:16,24
  34:4,15 96:19
  141:23

precisely 59:15
precluded 133:7
predecessor 99:18
predecessors
  100:19
preferred 52:8
preis 13:8 71:6,6
  71:10,12,13 92:7
  93:10 94:1,1,5,13
  94:24 95:1 115:11
  115:16 119:1,4,7
  119:8,24,25,25
  120:3,12 124:3,8
  124:15 127:25
  128:13,19 129:25
preis's 129:7,20
  132:5
prejudice 3:6
  26:22 27:4
preliminary 5:6
  5:10,18 6:1,8,16
  6:22 7:4 37:21,25
  38:13 43:12,22
  44:9,11,19 46:11
  46:20,23,25 47:2
  47:5 48:25 49:14
  49:17 50:2,9,15
  50:25 51:9 52:1
  52:20 53:1,2,5,11
  53:16 56:7 60:19
  60:22 63:1,19
  68:3 71:16,24
  73:13,18,21 75:8
  75:13 76:21,23
  80:22 84:2 86:9
  104:19 150:6
premier 103:6
premise 142:7,9
premised 84:8
preparation
  15:13
prepared 16:4
  36:25

preparing 73:4
prepetition
  142:19
present 12:6 29:8
  40:17 48:4 74:14
  124:1
presented 26:19
presenting 70:22
preserve 39:3
  53:8 59:20 140:24
preserved 27:5
  59:21,22 137:15
preserves 55:8
preserving 76:5
president 148:11
pressures 109:14
  137:10,19
pretty 124:6
prety 13:16
prevented 50:16
  53:17
previously 72:20
  72:22 75:6 106:1
  111:23 133:18
  134:25 142:21
primarily 58:6
  77:13
prime 144:22
principal 40:10
principle 19:1
  45:1 76:5 83:11
prior 49:16 74:13
  100:21 129:23
  133:13 142:14
prison 144:16
  148:10
private 18:23,24
  29:14 63:8 67:17
  67:24 83:21
  104:20,22
privilege 82:19,20
privilege's 73:6

privileges 58:18
privy 68:16
pro 12:2 44:1
  47:18
probably 15:6
  38:19 56:16 87:9
  87:23 92:21 97:11
  102:21 104:3
  115:16 118:9
  123:8 145:22
problem 69:5,5
  112:23 118:2
  120:2
problematic
  143:13
problems 129:19
procedural 39:2
procedure 35:13
  49:6
procedures 19:12
  42:23 83:8 123:17
  145:24
proceed 8:19 16:7
  77:10
proceeding 5:4
  6:4,12,20 7:1
  57:21 76:7 81:1
proceedings 7:23
  63:10 78:21 83:2
  83:3 149:12 151:4
process 21:25
  29:15 35:9 57:18
  58:14,21 70:2,5
  76:1 79:23,23,25
  81:18 82:5,9,12
  85:13,14 100:21
  114:10 140:15
produce 45:6
produced 45:6,14
  54:2 68:17,25
producing 101:3
productive 44:15
  50:13 53:10

products 5:14,22
  7:7 23:8,8 30:19
  141:14
professionally
  82:12
professionals
  23:15 45:23 68:11
  139:1,2
professors 40:9
program 17:4
  39:16,22 41:9
  42:6 95:19 100:15
  107:24 108:4
  123:6 126:6 130:4
  130:5 132:13
  139:20 142:15,15
programs 17:7
  18:10,13 40:16
  91:3,4 96:25
  106:20,20 122:5
  125:11
progress 18:22
  44:16 46:4,9
  57:13 69:17,19
  70:1 77:8
promise 21:5
promised 21:4
promotes 60:19
  115:24
promotion 103:25
promptly 78:24
  80:17
prongs 52:1
proof 3:2,7 8:3,20
  28:1 46:22 53:11
  54:17
proofs 8:23 22:25
proper 36:20
  103:1 134:22
  135:6 140:1
  141:15
properly 32:4
  76:9 143:19

property 36:24
proposal 108:2,6
  109:4 136:8,9,22
  139:16
proposals 90:23
propose 60:20
  70:20 96:16
  141:21
proposed 29:1,16
  30:7 34:4,22
  36:19 37:11,13
  48:11,14,20,21,24
  68:5 70:16 71:20
  76:23 77:15 79:25
  80:9 87:4 96:14
  105:21 125:11
  135:11 137:1,13
  139:21
proposing 136:13
proposition 79:2
prosecute 118:6
prosecution 57:23
prospect 77:6,17
  80:2
prospects 75:18
protect 53:3,12
protected 32:4
  36:25
protecting 53:13
protection 46:11
  46:20 57:23
protective 68:7,13
protects 52:20
prove 56:8
proved 52:25
provide 29:9
  35:11 53:19 60:3
  60:21 66:14 82:16
  116:9 124:17
provided 30:6,10
  30:11 35:19 50:3
  67:5,7,8 70:22
  75:4 113:20

providers 39:10
provides 15:10
  32:13 49:6 51:19
  63:7 106:2 142:1
providing 30:18
  33:6 46:16 66:15
provision 136:6
  141:25
provisions 30:18
  37:9 96:3
public 6:7 8:1,8
  8:22 16:21 17:1
  18:14 19:14 20:12
  24:23 25:4,15
  42:4,10,11 49:18
  51:2 52:22,24
  54:14,24 55:3
  60:20,21,24 63:2
  63:3,18 78:23
  79:8 81:21,22
  84:1,9,12 85:1,7
  85:12,23 113:23
publicly 114:17
  115:3
published 30:14
  35:5 45:8
puerto 5:13,22
  7:7
pulled 19:22
purchaser 32:7,25
  33:18,20,22 34:14
  35:1,15,19
purchasers 25:12
purdue 1:8,12 3:9
  3:20 5:2,4,12,12
  5:12,13,13,20,20
  5:21,21,22,22,23
  6:4,12,20 7:1,6,6
  7:6,7,8,8 8:11
  10:11 15:3 16:11
  17:17 23:1 75:19
  85:5 86:10 101:22
  102:6 103:19,22

108:2,6 109:3,24
110:16 111:8
115:21 117:2
118:18 122:8
**purdue's** 6:15
116:7 122:13
**purpose** 9:5 17:6
**purposes** 23:17
**pursuant** 3:23
7:21
**pursue** 27:1 78:3
78:7
**pursuing** 81:3
**pursuit** 77:20
**pushing** 121:3
**put** 15:7 24:10
43:19 44:9 53:9
53:22 70:2 78:4
91:2 99:24 131:20
146:7,11
**puts** 118:2

**q**

**quarropas** 2:2
**quarter** 100:9
**queenie** 76:16
**quest** 23:10
**question** 32:10
36:1 51:15 62:22
65:25 93:12
102:15 107:5,12
107:22 111:4
127:1,2
**questions** 24:5
27:8 30:1 31:18
56:12 60:7 61:7
89:5 92:19,24
111:14 129:14
**quickly** 65:20
81:16 120:14
**quinn** 11:24 60:9
60:10,12,13 61:21
62:2,11,16,18,20
64:6,12,20 65:5

98:9 111:15
115:10,13,13,14
115:15,18,18
116:17,20 117:16
117:18,21 118:2
118:14 121:24
**quinn's** 121:23
122:14
**quite** 18:1 46:10
68:1,9 122:1
130:16 131:17
137:22 139:25
146:22 147:9
148:14
**quo** 56:10
**quote** 19:11 48:2
49:17 51:1,22
52:21 53:21 54:15
54:25 55:15,24
60:16 75:25 76:1
76:10,12,14,15
94:25 95:2 132:5
132:6
**quotes** 42:3
**quoting** 53:19
101:8

**r**

**r** 2:21 3:24 7:22
11:1 15:1 151:1
**race** 44:12 50:15
**rachmuth** 6:23
9:22 10:4
**rafael** 4:19 29:7
**raging** 122:21
**raise** 34:7 72:13
125:22 126:5
**raised** 58:11
72:16 124:19,20
126:21 138:11
**raising** 49:7 73:8
92:25
**ramon** 13:20

**rand** 12:1 144:10
144:12,12,23,24
145:4,9,14,18
146:9,13,18,21
147:3,10,19,19
148:1,4,9,20,22
149:11
**rank** 104:11
**rare** 25:16
**rarely** 112:17,22
**rate** 102:4 119:19
142:7
**rates** 111:11
**rating** 136:2
**rational** 23:11
**rationale** 131:9
**rdd** 1:3,4 5:4 6:4
6:12,20 7:1
**reach** 55:11 118:7
125:25 143:8
**reached** 18:21
19:4 22:2 44:25
58:24 59:14 70:11
88:15 90:22
119:12,16 124:16
126:1 129:1,7,11
**reaching** 69:24
124:25
**read** 24:15 44:5
58:15 72:5 81:12
82:1 91:10 94:14
94:15 111:20
117:19 122:14
**reading** 113:4
**ready** 114:25
**reagan** 60:17
**realistic** 59:6
**reality** 122:7,18
**realize** 126:13
**reallocation** 41:2
**really** 17:1 18:1
19:21,24 27:23
36:23 52:7 71:17

73:12 83:2 85:16
94:22 98:13,21
100:8,10 104:7,8
106:8,10 107:11
107:12 112:22,23
114:17 120:15
123:16 124:16
128:15 130:7
131:21 142:23
143:21 146:21
**reason** 21:13
52:13,19 54:16
56:9,10 58:7 70:6
71:16 73:7 84:20
96:14 113:17,20
115:2,3 128:22
**reasonable** 55:3
55:23 104:16
135:10,16,19
139:9
**reasonably** 20:11
104:15
**reasons** 29:21
39:6 40:1 41:15
50:16 60:23 71:18
124:16 130:15,22
**rebuttal** 44:7
**recall** 47:21
111:10
**receive** 34:11
61:16 108:8 117:8
118:12 135:25
**received** 17:3 34:8
36:6 59:1 90:18
145:4,18
**receives** 83:25
**recitation** 31:17
**recognition** 57:21
129:11 143:10
**recognize** 52:11
62:21 79:18,21
80:11 81:6

**recognized** 25:19
54:23 57:25 59:23
83:8 99:17 114:20
116:25 135:8
138:4
**recommendations**
45:24 84:21
**record** 16:10
28:10 38:12 52:14
66:4 69:10 72:12
74:6,18 76:18,20
84:25 85:7,21
86:6 89:10 119:7
119:15 121:16
137:5 139:24
142:3,16 151:4
**recording** 15:9
**records** 50:24
**recycles** 52:4
**redact** 32:8
**redacted** 31:24
32:8
**redactions** 32:1
**reduced** 138:13
142:18
**reduction** 95:24
107:15,23,24
126:19,23,25
**reevaluates** 49:11
**refer** 64:7 66:2
133:3
**reference** 49:16
50:2
**references** 81:12
87:25
**referred** 134:15
**referring** 94:10
117:25
**refile** 27:3
**reflect** 109:13
**reflection** 47:10
**reflective** 58:2

**reflects** 76:5
108:6
**refusing** 85:21
103:17
**refuted** 114:4
142:8,22
**refuting** 142:23
**regard** 34:13
57:23 58:4,11,13
58:17,20 59:14
94:11 116:1
125:14 126:2,18
**regarding** 18:15
42:5 52:12 55:9
71:25 72:10 118:7
119:12,15 125:9
127:16
**regardless** 61:14
**regards** 40:16
145:10
**regulated** 141:14
**regulating** 143:23
**regulations**
141:20
**regulatory** 30:21
**reigned** 44:13
**reiterate** 49:15
71:18 119:13
129:6
**rejected** 47:24
49:20 52:5 54:16
105:15
**rejection** 98:11
**rejections** 98:10
**relate** 73:12,13
75:5
**related** 3:7,14,19
3:20 4:3,7,8,11,16
4:17,21 5:1,7,10
5:19 6:9,16,23 7:4
7:13,23 8:3,10,15
8:23 9:6,17,21
10:3,10 16:18

28:14,16 29:3
36:12 37:7 39:19
39:20,21 45:13
47:5 63:15 86:8
88:19 137:11
139:13 143:21
**relates** 88:22
139:21,23
**relationship** 32:7
135:11
**relatively** 91:8
99:15 101:23
121:23
**release** 54:12
82:17
**released** 68:5
**relegated** 56:23
**relentless** 23:10
**relevant** 54:12
87:25 100:21
111:7 138:19
**reliance** 26:6
**relied** 133:14
**relief** 3:19 4:8,17
5:1 7:23 31:8 40:3
40:4 71:15 73:17
88:12,19 90:7,17
90:20 92:5 104:9
111:22 136:16
138:23
**rely** 104:15
**relying** 74:19
**remain** 23:24
125:7
**remainder** 52:2
**remained** 96:24
**remaining** 20:18
89:11,12 92:25
107:2
**remains** 101:21
**remarkable** 18:22
24:18 69:17 80:4
83:24

**remarkably** 24:23
43:2
**remarks** 44:6
69:7 74:22 92:9
122:23 124:7
**remember** 17:24
**reminiscent** 100:4
**remiss** 60:16
**renewed** 67:20
**reorganization**
17:12 19:16 20:8
46:4 51:13,21
52:10 54:13 60:3
60:5,19 70:9,13
75:12,18 76:1,11
77:6 80:3 100:20
**reorganize** 135:13
**reorganized**
126:7,11
**repaid** 130:3
**repeat** 111:20
**repeatedly** 52:5
55:19
**replace** 102:6
**replaces** 101:19
**replay** 63:13
**reply** 5:25 7:3
8:14 10:7 44:4
48:21 52:14 56:3
56:19 63:4 71:24
88:14 94:16 96:7
100:7 133:1
136:15,15
**report** 16:20 17:1
17:8 18:3 19:4
20:6,7 24:14
25:19 39:10,12
41:22 42:3 45:9
48:18 74:22 80:7
80:10 81:13
110:23 123:3
**reported** 44:25
59:10

reporter 15:7
reporting 88:13
  123:1
reports 45:25
  123:7
represent 50:23
  136:21
representational
  85:14
representations
  129:8
representative
  53:20
representatives
  64:9,23 132:2
  141:3,4
represented 83:13
  89:22 98:8 132:16
  138:6
represents 16:22
  29:16 74:15
reproach 123:22
request 8:10 9:4
  27:9 30:2 31:8,20
  39:1 40:3,4 41:8
  41:12,15 59:20
  62:8 71:3,15
  88:24 95:21,22
  97:18 98:14 125:9
  130:14,17 141:17
requested 16:25
  73:17 92:5 96:8
  104:9 125:16
requesting 40:3
  41:2
require 82:20
required 53:20
  140:13
requirement
  133:23 134:12
  136:6
requires 44:2
  134:20

rereviewed 74:8
rescue 46:7
reservation 6:7
  38:7
reserve 27:2 44:7
  62:12
reserving 9:4
residential 133:25
resign 101:24
resigned 88:25
resolution 20:10
  20:22 26:21 42:11
  46:14 50:10 55:11
  62:24 66:22 81:4
  83:22 127:17
resolve 21:7,8,16
  22:6 80:12,16
  89:7 104:25
  147:16
resolved 19:5 20:2
  20:15 26:17 34:9
  36:19 45:1 48:19
  70:25 78:24 88:9
resolving 20:19
  20:20 80:6
resoundingly
  54:24
resources 25:23
  27:23 41:2 47:10
  80:15 138:7
respect 3:12 18:12
  22:2,10 26:23
  28:16,18 36:22
  37:5 38:4 44:17
  47:3,5 49:2,13
  52:14 64:14 66:8
  66:18 67:23 70:3
  70:23 82:19 83:21
  84:3 88:8,20 90:3
  91:11 92:14 93:3
  95:7 106:3 108:19
  120:17 121:15,23
  122:4 128:13

129:12 130:13
  131:22 137:18,23
respected 101:5
  114:6
respectfully 30:2
  31:20
respective 25:8
respects 27:19
respond 49:10
  65:9,11 120:11
  124:5
response 6:8,15
  7:20 8:9 44:2
  107:1 122:18
responses 26:20
  136:8
responsibility
  58:3
responsible
  112:20
responsibly
  140:18
restarting 54:20
restatement 6:6
restructure 21:7
restructuring
  87:13
result 59:9 78:13
  79:6 83:24 139:17
  142:10
resulted 43:4
  45:19
resulting 137:11
results 57:25
  135:11
retain 137:16
  140:9
retained 117:11
retention 9:12,17
  10:9 88:21,22
  92:13 94:19 108:6
  108:7 113:2,20
  114:21 119:13

121:16,18 125:16
  126:6 127:12
  129:25 130:5,9
  132:23 133:9
  140:8,12
retentive 96:4,11
  96:21 99:7 106:13
  140:7
retired 40:8
retread 91:9
return 83:24
  149:6
revenue 139:7,13
review 31:11,25
  128:7 140:2,2
  143:24
reviewed 31:24
  76:18 94:18,18
reviews 74:6
revised 28:20
  36:19 48:20,24
  63:13 86:2 87:3
  143:2
revisions 48:20
rhode 28:25 121:7
rhodes 5:14,15,24
  5:24 7:9,9 28:23
  30:12,22 36:22
rich 14:12
richard 6:9 47:20
  76:24 77:1,11
rico 5:13,22 7:7
right 15:17,23
  16:2,2 27:14
  30:25 31:3 35:15
  35:25,25 36:10
  39:12 44:7 48:4
  62:9,12,15 73:20
  80:16 83:4,4,6
  85:21 88:7 92:21
  92:23 93:19 96:22
  97:21,23 98:2,5
  100:24 101:16

102:1 106:5
108:25,25 109:7
109:20,24 114:14
115:9 116:17
120:10 121:13
132:20,21 145:20
148:18 149:1
**rightly**  84:18
**rights**  6:7 38:7
82:18,19
**ring**  149:9
**rip**  24:6
**rise**  116:7
**risk**  105:5 131:7
144:6
**risks**  101:9
**river**  23:25
**road**  151:21
**roadmap**  126:2
**robert**  2:22
**robertson**  11:10
12:14 24:5 28:6,9
28:10,13 30:9,20
31:15 32:13,20,24
33:9,15 35:23
36:5 37:14,19
**roitman**  12:15
**role**  25:13 40:14
40:15 78:19
**roman**  26:10
**ronald**  14:14
60:17
**room**  2:2 7:12,16
7:20 8:2,9 39:7,9
39:14 40:15,20
42:20
**rooms**  42:19
**rooyan**  13:24
**rosen**  12:18
**rothstein**  8:16 9:7
9:7 14:6 38:19,23
38:23 41:13

**roughly**  126:24
137:7,8
**round**  73:16
98:23
**route**  99:24
**rule**  32:3 82:14
97:13 100:3
**ruled**  100:15
**ruling**  56:2 87:11
98:16
**rulings**  133:13
150:3
**run**  52:23 102:13
**running**  99:15
101:1
**runs**  130:20,21

## s

**s**  3:8 5:7,10,11,17
5:19,19,25 6:9,16
6:23 7:4,5,13 8:4
8:15,15,24 9:6,7,7
9:17,21 10:3,10
11:1 15:1 143:23
148:8,12
**s.d.n.y**  146:20
**s.d.n.y.**  87:1
133:16,17 134:1
**sackler**  6:9 20:9
47:6,9,19,20
48:10,14 49:3
50:11 51:7,17
53:6 59:1 60:22
61:16 63:3,21,22
67:18 75:3 76:24
77:1,2,11 82:10
103:22
**sackler's**  61:8
**sacklers**  45:11,13
45:13 49:9,14
50:5,9,13,25 51:2
52:20,24 53:12,14
53:21 54:1,11
55:10,16,18,19

57:9,10,21 58:13
58:15,19,24 60:1
60:25 63:25 66:14
66:21 67:7,9,18
68:21 70:12,24
77:12,23 78:7,17
79:12 80:13,15,16
82:16 83:15,23,23
84:9 103:19
**safeguards**  106:2
**safely**  102:14
**safety**  22:18
**salaries**  108:3
**salary**  99:6 101:9
108:7
**sale**  3:13 4:2,11
4:20 28:15,16,18
28:20 29:1,6,22
29:23 31:16 33:24
36:11,16 37:6
**sanguine**  23:23
**sara**  12:11,15
**satisfaction**
110:22
**satisfied**  51:23
68:22,23
**satisfies**  79:14
**satisfy**  61:1,3
133:22
**save**  46:8
**saw**  27:10
**saying**  27:3 60:16
61:10 83:22 104:6
109:24 113:22
115:1 124:10
**says**  55:14 94:22
107:9 108:5
117:23 118:19,19
134:3
**scale**  55:16,18
**scandalous**  17:22
**schedule**  31:7
61:17 62:20,22

72:10 130:24
**scheduled**  33:20
41:16 58:25
144:14
**schnitzler**  4:19
29:7 36:17
**scholars**  85:10
**school**  25:15
42:10,12
**schwartzberg**
9:18 14:22 111:16
111:17,19 112:9
112:13,25 113:14
115:6,8
**scope**  135:18
**scott**  3:6 14:16,24
26:16,18,22 27:10
27:11,20
**sdny**  75:20,22
134:25 135:2
**se**  12:2
**seal**  3:25 28:17,19
31:16 32:8
**sealing**  31:22
37:17
**searching**  45:12
**second**  6:6 18:2
20:25 34:23 35:1
39:11 48:7 54:23
73:23 74:4 75:23
78:25 79:14 80:20
82:25 91:25 92:18
98:23 99:1 108:5
108:15 125:5
130:13 134:18
**secondly**  24:13
42:21 77:25 139:5
**seconds**  129:19
**secret**  61:7
**secretary**  122:25
123:10
**section**  32:2 37:6
61:2 75:23 86:18

100:3 133:6,8,12
133:22,23 134:14
135:3 137:14
**sections** 93:16
**secure** 29:10
**securing** 46:5
**security** 144:16
148:10
**see** 21:18 25:21
26:22 35:9 64:25
75:21 86:22 87:23
108:2,5 110:12,19
111:21 114:15
124:3 133:23
134:24 143:22
147:23
**seeing** 68:23
**seek** 42:11 77:21
79:20 99:25
**seeking** 73:11
87:18 90:20
100:14 104:23
**seeks** 35:11 77:8
**seemingly** 21:11
103:16,21
**seen** 138:17
**seidel** 114:5
**seismic** 20:1
**selected** 34:20
35:7
**self** 42:18 44:1
85:19 89:15 101:4
104:2 122:11
**sell** 23:8 29:2
101:4
**seller** 36:22
**sellers** 33:16
**send** 34:18 144:21
149:9
**senior** 102:1
139:1
**sense** 29:19 42:24
56:16 84:18

112:24 113:21
121:11 134:23
**sensitive** 42:19
121:22 122:1
128:22
**sent** 33:23
**sentences** 93:16
**sentiments** 120:19
**separate** 39:9
**separated** 60:2
**separately** 126:4
**september** 2:5 3:1
16:13 21:21 24:14
34:6 41:18 72:19
92:11,12 132:22
**sequestering**
144:19
**series** 51:11
103:14
**serum** 79:8
**serve** 30:12,16
**served** 30:14,21
35:6 84:2 85:12
145:16,17
**services** 32:18
**set** 18:21 29:21
35:13 36:4,11
41:16 44:3 52:14
59:11 67:23 74:8
80:6 86:11 88:14
90:23 91:7 97:9
100:3 101:12
134:3 136:14
**seth** 12:13
**sets** 17:8 20:6
133:10
**setting** 23:21
**settled** 25:3 83:15
97:12
**settlement** 17:18
51:19
**settlements** 17:21
61:19 80:10 81:23

**settling** 113:13
**seven** 21:10,19
**severe** 123:22
**severely** 67:21,22
**shaped** 26:24
**shara** 14:21
**share** 114:1
121:12 132:7
**shared** 17:15
**shareholders**
17:18 20:21
**sharing** 45:5
53:23 67:2
**sharp** 103:14
**shaw** 11:12 56:22
**shea** 14:1
**shed** 85:9
**sheet** 19:3 69:21
**sheets** 19:2 20:7
20:10 67:15,15
**sheila** 12:10
**shield** 53:6
**shifts** 118:5
**shirtwaist** 55:1
**shore** 13:9
**short** 44:6 48:1
62:25
**shorten** 28:15
29:20 30:3 31:1,1
31:5,6,7,13 48:13
49:2
**shortened** 31:10
**shortening** 3:12
**shortly** 62:21
**show** 75:14
**showed** 117:2
**showing** 101:1
**shown** 107:10
**shows** 63:14 117:6
140:13
**shut** 105:12
**side** 18:17,19,23
43:20 58:12,12

59:1 65:24 67:17
82:10,11 85:24
101:10
**sides** 67:24 82:9
**sidestep** 98:14
**sidetrack** 77:22
**sight** 102:12
**sign** 27:12 33:25
64:22 118:18
**significant** 39:19
43:4,5 46:4 47:10
61:19 66:21 70:19
144:3
**silent** 87:21,21
**similar** 27:25
63:12 78:1 103:13
111:22 114:3
**similarly** 138:24
**simple** 53:11
132:4 143:15
**simplest** 19:1
**simply** 20:2 33:19
44:9 48:5 49:15
50:12 53:22 58:23
67:19 68:18,25
73:7 82:14 84:24
99:5 105:19
121:10 140:24
**sine** 28:2
**single** 23:18 90:6
**sir** 15:15,23,25
16:1 23:20 144:24
145:6,14 146:18
146:21,22 148:1
148:16,19,22
149:11
**sit** 73:5
**sitting** 90:14
**situation** 18:20
40:10 68:10
125:20
**situations** 131:16

**six** 21:19 46:1
58:25 65:15 89:2
89:4 98:19 100:11
116:3 125:7,9
**size** 111:8 137:8,9
**skalte** 14:9
**skapof** 12:25
**skorostensky**
14:17
**slate** 100:14
**slightly** 38:2
126:20
**slugs** 88:9
**small** 17:6 64:1,7
103:9 110:16
**smaller** 121:15
130:5
**social** 106:23
**society** 42:3
**socks** 55:2
**sole** 18:24
**solicited** 127:5
**solutions** 15:10
145:4 151:20
**somebody** 120:5
131:5
**somewhat** 96:4
**sonya** 10:25 151:3
151:8
**sooner** 34:25
126:9
**sorry** 69:4 80:5
83:10 87:17 97:5
107:7 108:9
112:16,22 115:11
115:12 141:2
**sort** 18:18 20:22
22:10,18,18 23:21
30:13,23 34:11
51:6 68:22 84:12
85:11 89:12,21
91:9 93:12,17
95:6 98:14 101:14

103:6,12 104:4,6
104:25 105:10
106:9 111:2 118:5
123:14 126:2
131:16 140:2
**sorts** 17:22 22:10
102:9
**sotomayor** 76:16
**sought** 32:2 53:1
53:5 90:17 111:22
113:3 136:16
**source** 29:10
**southern** 1:2
143:24
**sovereigns** 57:22
**space** 46:16 50:3
**spades** 83:12
**speak** 15:6,6
24:12 36:8 60:15
73:20 96:17 119:4
119:11 146:11
**speakers** 93:7
**speaking** 24:11
**speaks** 38:20
106:18 110:8
**special** 45:10
**specific** 19:20
33:6 60:6 107:24
117:4 129:12
**specifically** 9:4
59:10 63:14 70:11
71:1 72:18 105:16
112:2 124:20
**specifics** 91:7
**specified** 117:4
**spell** 148:4
**spend** 16:20
121:19
**spent** 74:6 118:10
**spoke** 17:20
**spring** 116:23
**spv** 86:11

**square** 11:21
67:23
**squarely** 117:7
**stable** 29:10
**stadler** 13:22
**staff** 122:10
**stage** 23:21
**stages** 73:22
**stakeholders**
131:13 132:15
**stamp** 144:21
**stand** 52:9 61:15
**standard** 51:10
52:1 61:2 75:8
98:15 100:16
103:1 134:16,16
134:17,18 136:7
143:18
**standards** 51:8
135:21 138:1
**standing** 91:4
98:12
**standpoint** 39:2
**start** 23:16 124:11
**started** 73:16
**starting** 65:24
**state** 20:21 24:25
41:23 42:7,15
49:18,21 57:24
66:20,20 69:9
74:16 75:7 78:11
80:23 83:14 88:16
88:18 124:23
**state's** 54:7 57:22
**stated** 75:9 116:7
142:22
**statement** 8:8
61:1,25 62:4,5,8
68:4 83:6
**statements** 37:12
71:23,25 72:4,4
85:24 128:6

**states** 1:1 2:1 6:14
6:18 9:18 11:13
17:2,9 20:11 25:2
25:2,5,6 42:3 48:8
48:14,18 49:15,24
50:4,8,17 54:8
56:17 57:3,19
58:3 59:13,16
64:9 65:25 66:1
66:16,17,18 67:21
68:12,15 69:13
74:12 77:1,11,21
78:7,19 79:19
80:6 81:2,8,10
86:4,19 88:17
105:23,24 116:9
116:10,11 127:14
127:20 129:6
136:20,22,23
144:14 148:24
**status** 56:10
**statute** 134:3
**statutory** 75:24
**stay** 66:17 96:21
113:25 135:12
142:25
**staying** 145:1
**steered** 46:12
**stemplel** 13:23
**step** 54:21
**steven** 14:9
**stewards** 52:10
**stipulation** 3:5
26:19 27:9,9,12
27:15 28:3
**stock** 144:5
**stop** 21:15 42:21
104:8 121:3
122:20
**stopped** 103:25
122:6
**stories** 122:14
131:24

**straight**  52:14
**strauss**  71:13
  119:8
**street**  2:2 11:14
  30:15
**strengthened**
  142:10
**strip**  57:6
**stroik**  12:22
**stroke**  65:18
**strong**  52:22 57:8
  99:7,20 118:3
  122:3,12
**stronger**  44:10
**struck**  67:16
**structural**  123:13
**structure**  20:23
  48:15
**structures**  46:3
  123:17
**student**  40:13
**styled**  44:1 89:15
**subject**  16:16
  19:13 20:16 35:12
  74:1 95:11 96:13
  126:10 128:20
  140:2
**submit**  63:13
**submitted**  16:4
  63:6 143:1
**submitting**  33:4
**subsequent**  94:16
**subsequently**  36:7
**subset**  52:18
  108:8
**substance**  95:19
  147:24
**substantial**  17:17
  79:11 136:9 141:6
  141:6,15 142:1
**substantially**
  18:12 19:19 25:23
  29:11 63:12 88:12

89:11 101:20
  110:5 138:13
**success**  47:12
  49:23 56:4 57:13
**successful**  43:2
  44:24 46:17 51:10
  51:21 69:24 70:8
  80:2 100:19
**successfully**  45:18
**successor**  91:3
**suddenly**  104:13
**sued**  50:25 131:7
**suffer**  101:22
**suffered**  122:16
**suffering**  22:21
  112:4
**sufficient**  29:24
  31:12
**suggest**  38:2
  42:23 43:8 68:21
**suggested**  80:1
  104:4
**suggestion**  54:4
  65:21 88:24
**suggests**  61:10
  62:13
**suite**  151:22
**suits**  75:25
**sum**  17:17 98:10
**summarize**  19:1
  35:10
**summary**  116:10
  116:21
**sunday**  34:7
**supervised**  78:22
**supervision**  45:22
**supplemental**
  136:15
**supply**  3:16 4:5
  4:14,23 29:4
  36:13
**support**  4:19 5:9
  5:17,25 7:3 10:1,7

51:20 53:15 56:19
  69:16 71:15,20
  73:17 92:5 98:13
  102:21 106:15
  132:13 133:1
  136:9,16,17
  141:10
**supported**  71:19
  125:2 139:24
**supporting**  36:16
  56:15 91:14
**supportive**  71:3
**supports**  76:21
**supposed**  33:13
  41:17
**supreme**  78:25
**sure**  15:7 27:10
  33:12,13,15 40:13
  42:25 55:2 56:13
  64:6 66:3 68:1,9
  69:11 71:9 79:21
  85:2 91:10 92:8
  94:4,13 95:5
  120:4,13 127:25
  144:8 147:9
**surely**  46:18
**surprised**  130:16
**survey**  109:11
  111:5,7
**sustain**  60:18
**sustaining**  42:18
**swallow**  61:15
**sympathy**  122:16
**system**  53:18 79:5
  103:24

|  **t**  |
| --- |

**t**  151:1,1
**t.k.**  86:24
**table**  107:8,10,12
**tailored**  122:23
**take**  16:14 19:24
  34:16 62:6,10
  63:12 77:9,9 87:9

88:2 99:23 116:15
  116:20 123:3
  137:9,18 141:5
**taken**  15:10 50:19
  65:24,25 103:17
  114:12 124:2
  130:16
**takes**  108:2
  135:13
**talk**  113:15
  128:13
**talked**  61:4 67:14
  97:2 126:10
**talking**  17:13
  20:23 44:23 59:10
  68:2,6 72:17
  73:15
**tampering**  148:24
**tant**  130:18
**tape**  90:15
**target**  32:16
**targeted**  32:3 71:1
  108:7 113:2
  121:17 140:14
  143:19
**targets**  82:22
**taught**  40:8,9
**tbc**  101:15
**tdc**  108:1,12,20
**teach**  40:9
**teacher**  40:11,14
**teachers**  40:9
**tech**  30:22
**technical**  93:9
  102:7
**technicians**
  104:12
**technologies**  5:15
  5:23,24 7:8,9
  28:24 30:12 36:22
**telephone**  145:5
**telephonic**  15:4
  15:21 144:15

**telephonically**
11:8,9,10,17,24
12:1,6 29:8
**tell** 24:10 50:21
57:18 79:8 94:14
145:12
**telling** 46:22 50:7
81:13
**ten** 23:21 131:4
**tennessee** 6:7
47:17,22 74:11
75:7 76:24 77:20
79:18 81:1
**tens** 54:9
**tent** 128:9
**term** 3:16 4:5,13
4:23 19:2,3 20:7
20:10 29:4 36:12
67:14,15 69:21
70:8 115:25
118:21 130:2,23
**terminate** 49:2
**terms** 20:11 26:5
41:9 42:23 57:14
78:5 112:10
**terra** 15:17
**terre** 144:14
**terrible** 99:10
104:6
**terribly** 22:15
**territories** 17:9
25:5
**test** 51:2 60:21,25
61:3 63:2 79:15
84:9,12,12 85:12
133:21 134:3
135:6
**testified** 111:6
137:4
**testimony** 95:15
**text** 120:5
**texted** 120:7

**thank** 15:25 16:9
24:15 26:7 28:5
28:13 31:15 37:19
43:13 56:21 57:2
60:8,12 62:16
64:3 66:3 71:4,11
71:12 73:18 87:5
87:10 95:1,18
118:24 124:8,21
148:22 149:10,11
**thanks** 26:14,17
28:12 57:1 73:19
129:16
**theisen** 14:23
**they've** 141:10
**thing** 18:2 20:25
46:15 72:6 89:21
94:3,6 101:14
104:6 126:5 143:3
**things** 21:16 23:7
24:7,9 27:2 42:17
45:10 68:18 72:1
73:9 93:18 97:12
97:17 99:5,24
100:1 102:9 104:8
105:7,13,17 107:1
108:15 110:23
119:2,17,18 122:4
129:20,23 138:21
143:20 148:14
**think** 16:18,22
17:15,23 18:1,25
19:5,7 20:17,24
22:6,20 23:2,14
23:23 24:6,21
33:12 36:1 38:9
39:4 42:14 43:7
43:24 55:2 56:16
56:20 59:6,15,19
60:11,16 64:23,24
65:5 70:1,6,21
71:21 74:21 87:11
89:13 90:1,6,19

90:24 91:5 92:20
93:13 95:5,12
96:17,22 97:11,14
97:19 98:4,14,21
102:16,17,21
103:20 105:24
106:10,15,18
107:7 109:23
110:17,18,20
113:9,18,21
114:17 115:2,16
116:17 118:15
119:24 120:18,25
121:17,21,25
123:11 124:10,17
125:2 126:7,12
127:21 128:13,15
130:11,12,24
131:16,21 132:4
132:12 140:23
143:7,14 148:6
149:4
**thinking** 101:14
143:5
**third** 25:9 27:22
44:1 54:12 55:6
74:4 75:11 76:10
76:21 80:16 82:21
83:19 84:20 126:5
**thoroughly** 74:8
**thought** 93:12,15
95:5 105:13 127:1
128:24
**thoughtful** 83:13
106:19 125:10
140:14
**thoughtfully**
83:20 106:11
**thoughtfulness**
106:21
**thoughtlessly**
131:17

**thousands** 64:9,17
68:14 78:11 82:7
83:17,18 89:24
90:5 104:23
**three** 20:9 21:10
28:14,17 33:16
34:2 39:17 43:24
45:12 47:15 65:17
65:23 86:2 91:20
95:20,21 96:8
98:17 101:25
103:25 123:9
125:17 129:2
130:3,24 135:18
**thumb** 55:15,18
**tilts** 80:19
**time** 5:6 15:5
16:19 17:9 24:12
25:25 26:22 27:7
29:20 31:2 33:7
37:20 40:5 41:17
41:17 47:10 49:20
52:25,25 56:20
57:10 59:17 62:25
66:9,22 70:14,25
74:6 82:1,1 88:22
97:17 99:1 102:2
104:8 106:14
111:24 118:10,24
120:14 125:9
**timely** 3:7 27:25
29:24 46:3 147:8
**times** 18:6 54:16
81:7 99:17 102:14
105:14 114:4
**timing** 78:5 96:3
126:20 132:24
**tiny** 19:7
**titles** 117:4,7
**tobacco** 17:21
**today** 21:17 22:22
28:14 41:18 44:10
44:24 47:1 51:15

52:18 56:9,23
57:14 60:7 63:24
74:10 76:21 81:25
82:1 85:21,23
87:12,13 88:11,19
89:2,13 90:20,25
91:11,15,18 94:23
95:20 118:10
137:5 139:20
145:5 149:4
**today's** 34:13 74:5
90:7 140:17 144:9
145:2 146:6
**told** 57:18 72:21
84:25 104:13
110:21
**tolling** 144:18
145:10
**tomorrow** 88:3
**tool** 131:11
**top** 101:15
**topic** 74:3 128:4
**topics** 106:17
**torrent** 110:7
**tort** 61:14
**total** 95:24 100:8
101:15 137:2
**totally** 54:3
**touch** 147:19
**tough** 61:14
**tower** 111:5
**towers** 103:5
107:19 109:10
127:4,6 137:6
143:14
**track** 89:10
**tracking** 142:17
**traditional** 100:2
**transaction** 29:2,9
29:16 32:12 37:8
**transactions**
23:11,12,13

**transcribed** 10:25
**transcript** 15:12
105:17 151:4
**transcripts** 74:6,9
**transdermal** 5:23
7:8
**transfer** 30:18
**transfers** 45:11
134:4,7
**transformation**
110:16
**transition** 32:18
**translate** 144:4
**transmit** 65:1
**transparency**
54:21 85:18
**transparent** 54:15
63:20
**transpired** 52:3
**travel** 141:3
**treatment** 7:13,16
7:21 8:15 28:1
**trees** 58:8
**tremendous** 19:21
19:22
**trend** 73:10
**trial** 51:6 54:14
54:24 55:1,2,6
137:6
**trials** 55:3 61:11
79:6
**triangle** 55:1
**tribes** 17:2,10
18:9 25:12
**trillion** 105:1
**trillions** 104:23
**troop** 6:17 11:17
56:15,21,22 57:2
65:14 66:9 72:2
72:10,16 73:15
74:15,21 79:10
81:11 129:5,5

**troop's** 66:8
**true** 64:1 101:21
123:11 131:18
151:4
**truly** 18:21 45:3
80:11 86:14
110:12
**trust** 19:12 60:17
128:2,7
**trustee** 9:18 22:23
31:23 89:14 90:10
90:19 91:1,12,21
98:8 100:7,16
101:13 111:14
127:15,20 128:1
132:16 134:14
136:23 138:9
139:5
**trustee's** 90:3,9
98:21 102:17,22
111:17 120:17
132:3
**truth** 54:25 64:2
79:8 85:9
**try** 38:7 42:10
62:21 121:22
146:25 147:15
**trying** 21:16 68:6
82:2 118:19
121:19
**tsi** 32:20
**turn** 20:3 23:16
24:5 28:6 29:19
38:15 43:11 47:14
56:13 67:25
133:14
**turned** 110:19
**turning** 21:1
31:15
**tweaks** 105:25
**twice** 47:21
**two** 25:2 28:21
34:3 38:12 42:17

43:25 45:5 48:8
60:23 63:23 65:24
72:1 73:7 74:11
77:4 84:3,17
87:24 88:11,24
91:3,14 95:13
96:2 98:6,16
101:23 102:19
103:21 107:2,11
108:3 114:13
124:6,20 132:15
135:15 138:9
139:3
**type** 20:22 64:15
67:6 78:15 110:4
117:7,7 138:8,18
**types** 31:4 138:19

---

**u**

**u.s.** 2:23 22:23
31:23 75:20 86:15
89:14 90:3,8,10
90:19 91:1,12,21
98:7,21 102:17,22
111:14,17 116:25
120:17 128:1
132:3 138:9 139:5
146:19
**u.s.c.** 3:23 133:23
**ubs** 86:11
**ucc** 26:18 54:7
55:21 66:1 68:12
68:20 88:15 89:24
91:20 95:22
105:24 107:14
125:18
**uccs** 132:3
**ultimate** 54:13
70:12 110:1
**ultimately** 35:14
69:24 70:7,24
90:7 103:7 105:8
136:11

unburdening
  29:11
uncertain  55:7
  58:1
uncertainty
  109:25 137:11
unclear  51:4
uncontested
  23:13 24:6 26:9
  102:19
uncontroverted
  94:9,22 137:1
  138:1,2
undercompensa...
  101:20
underlies  136:6
underlying  31:8
  32:9 71:16 74:7
  76:5 86:7 142:7
undermine  67:22
underpinnings
  139:24
underscore  67:4
understand  22:13
  33:2,12 38:19
  41:3 62:14 63:22
  64:5,17,20 81:25
  83:5 91:25 93:23
  99:20 103:16
  110:10 111:21
  122:12 127:22
  128:25 130:12
  138:20
understanding
  32:15 58:23 59:14
  93:25
understood  93:18
  95:12 128:19
  131:2
underway  78:21
unduly  77:18
  82:22 140:22

unexpired  3:18
  4:7,16,25
unfairly  98:22
  135:20 137:22
unfolding  82:5
unfortunate
  120:19,20
unfortunately
  44:2 103:12 112:5
  119:24 120:14
unfounded  128:6
unhelpful  129:24
union  11:21 25:5
  83:14
unique  42:2
uniquely  25:24
united  1:1 2:1
  9:18 20:11 81:8
  86:19 127:14,20
  136:22,23 144:14
  148:24
unjustified
  138:10
unknown  2:25
unlawful  116:11
unmute  24:12
unopposed  28:17
  31:19 37:4
unprecedented
  18:6 25:16 45:19
  102:15
unquestionably
  124:1
unquote  48:2
  49:18 51:3
unreasonably
  19:15
unredacted  31:24
unsecured  7:19
  39:24 53:14
  136:18
unspeakable
  122:17

unsupported
  103:15
untethered  51:8
  128:7
urge  24:9,10
  114:23 115:1
urged  59:8 112:3
use  53:10 88:7
uses  41:22
usp  15:17
usually  79:22
utmost  55:22
utterly  51:14
  52:25
uzzi  13:12

v

v  1:14 5:5 6:5,13
  6:21 7:2 75:19
  76:2,3,12,16
  86:11,12,15 87:1
  148:8,12
vaccine  110:4
vague  113:8
value  17:3,15 18:8
  23:10,14,17 29:17
  44:12 45:2 46:13
  53:3,9 55:8,22
  56:6 58:1 80:7,17
  81:23 83:23 99:15
  104:17 105:1,5
  122:19 130:20
  140:19,19 141:6
  142:8
van  13:24
variance  107:16
variety  18:18
  58:18 129:9
various  28:1 73:9
  122:5 132:23
  133:4
vast  47:7
vastly  46:12

vehicle  97:19
velo  134:24
vendor  102:12
vendors  114:8
verbatim  105:16
verdict  55:4
verify  60:17 62:4
  87:15,18
veritext  151:20
vermont  116:25
version  32:8
victim  53:20
victims  112:6,14
view  47:15 77:5
  80:8 84:24 106:8
  110:18 124:14
  125:6 141:1
viewed  126:1
  131:6
views  18:20 33:1
  83:20 100:24
  121:9 122:3,12
vilsack  122:25
  123:10 141:19
viola  13:21
virtual  48:2 58:8
virtually  125:17
virus  147:12
vis  57:8,9 58:14
  58:14,19,19 59:25
  59:25
voice  15:8
volumes  106:18
voluntarily  48:25
voluntary  6:14
  45:22 59:12,25
  64:22
vonnegut  3:19 5:1
  10:10
vote  65:2
voter  62:7
vps  97:16

## w

**wage** 104:11
116:3
**wages** 22:11 88:8
**wait** 61:15 131:5
**waited** 27:4
**waive** 82:20
**walk** 57:10 59:16
**walked** 84:11
**walking** 66:8
**wall** 30:15
**wallice** 13:25
**want** 15:11 16:14
16:20 20:24,25
24:13,15,21 26:7
32:10 33:12,13
38:11 41:1 43:1
62:10 65:9 69:16
73:5 78:3 83:22
84:14 91:21,24
94:13 96:17,18,21
103:19 105:20
108:23 110:11,15
110:19 111:20
114:14 115:5
119:11 120:18
123:14 124:16,21
125:5,23 127:10
128:5 130:18,18
131:1,15 140:24
143:17,18 147:25
**wanted** 62:14
66:3 119:10,15
126:5 145:7
**wants** 36:3
**wardwell** 11:3
16:11 28:10 43:15
**wasn't** 127:4
138:23
**watchful** 103:23
122:9
**watson** 103:6
107:19

**watson's** 109:11
**way** 18:1 19:1
21:18 23:13,16
26:8 27:2 40:17
43:8,9 53:23
60:25 63:21 64:1
68:18,19 72:5
89:22 93:12 99:19
106:9 116:16,18
121:13 126:1
145:24
**ways** 18:7 23:8
61:13 90:16
126:15 129:24
131:12 141:15
**we've** 20:23 21:12
44:18,23 48:22
57:14 59:1 67:14
72:7 99:21 100:18
104:1,2 119:11
129:7 143:4
**wealth** 67:10
**week** 72:24 74:23
97:7
**weekends** 19:23
**weeks** 16:16 42:1
42:14 44:13,18
72:24 101:25
116:4 124:25
**weighed** 49:19
**weighs** 90:9
**weight** 102:18
**welcome** 62:2,3
**went** 18:3 100:4
100:11 107:25
133:10
**west** 11:14
**whatsoever**
120:24
**white** 2:3 12:4
146:16,20
**wholesale** 98:11

**wide** 18:17 24:22
25:6 37:10
**widely** 25:7
**widespread** 37:2
**wife** 40:7
**williford** 12:23
**willing** 122:20
128:9
**willingness** 83:7
**willis** 103:5
107:19 109:10
111:5 127:4,6
137:6 143:14
**wilson** 121:6
**windstream** 114:5
**winthrop** 11:12
56:22
**wisdom** 44:19
46:23 47:16
**wish** 73:19
**withdrawal** 3:5
9:3 21:23 38:5,8
38:10,25 41:11
**withdrawn** 26:21
**withdrew** 41:6
**withheld** 19:15
106:12 121:8
**withhold** 105:19
**witness** 148:24,25
**witnesses** 65:18
91:24 93:19
**won** 46:9
**wondering** 107:14
**word** 28:3 41:22
57:13 99:13
148:12
**words** 22:14,16
48:2
**work** 21:6 23:7,22
24:17,17 26:4
33:14 43:6 45:24
46:17,18,19 64:13
68:18,19,20 89:3

111:3 127:17
**worked** 53:8
68:14 95:23
124:24
**workers** 116:3
**workforce** 126:24
137:11 140:22
**working** 23:14
32:18,19,20 54:8
79:5 89:6 101:2
106:22 109:17,24
110:3 138:22
**world** 58:8 68:16
89:7
**worries** 87:22
**worse** 99:14
**worth** 81:18
128:10 135:4
**worthiness** 61:8
**wrested** 56:6
**writers** 85:10
**writing** 76:16
100:13
**wrong** 51:14
53:22 97:23
130:10
**wrongdoing**
116:14,15 132:19
**wrongful** 64:15
**wrongheaded**
112:17,22

## x

**x** 1:5,11,17 150:1

## y

**yanked** 105:11
**ye** 95:3
**yeah** 93:6,9 97:10
116:17 120:2
146:10 148:8,13
**year** 16:13,14
23:22 32:15 44:16
45:9 46:24 55:7
56:10 57:15 66:22

70:21 76:19,19
88:24 90:18 91:2
99:2,2,9,20 100:4
100:17,17 101:8
101:21,22 104:1
105:15,24 106:12
121:9,19,25 130:3
130:23,23,24
**years**  39:18 91:6,6
98:17 103:18,21
103:25 118:10,22
121:9 123:9
125:18 137:24,25
142:18 143:6
**yellow**  90:15
**yesterday**  38:5
**york**  1:2 11:6,15
11:22 146:20
**young**  133:16
**you've**  126:13

**à**

**à**  57:9 58:14,19
59:25