# EXHIBIT 24

HIGHLY CONFIDENTIAL

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF OHIO
 3   ------------------------------------------x
 4   IN RE: NATIONAL PRESCRIPTION   MDL No. 2804
     OPIATE LITIGATION
 5
     This Document Relates to:     MASTER DOCKET NO.
 6                                 1:17-MD-2804
 7   Jennifer Artz v Endo Health .
     Solutions, Inc.,et al.,
 8   Case No. 1:19-op-4549
 9   Darren and Elena Flanagan v.
     McKesson Corporation, et al.,
10   Case No. 1:18-op-45405
11   Michelle Frost, et al., v.
     Endo Health Solutions Inc., et al.,
12   Case No. 1:18-op-46327
13   Walter and Virginia Salmons, et al., v.
     McKesson Corporation, et al.,
14   Case No. 1:18-op-45268
15   ------------------------------------------x
16              *HIGHLY CONFIDENTIAL*
17          DEPOSITION OF MELISSA BARNWELL
18
19   DATE:        Friday, February 7, 2020
20   TIME:        9:28 a.m.
21   LOCATION:    Hotel De Anza
                  233 West Santa Clara Street
22                San Jose, California 95113
23
24   Reported By: Lynne Ledanois, CSR 6811
25   Job No. 3971084
```

HIGHLY CONFIDENTIAL

Page 16

```
 1              MELISSA BARNWELL,
 2   having been duly sworn, testified as follows:
 3                  EXAMINATION
 4  BY MR. BURMAN:
 5        Q    Ms. Barnwell, we met out in the hall.
 6   But again, my name is Dave Burman with Tyler
 7   Roberts.  I represent Costco in this matter, and
 8   I'll do most of the questioning today.
 9        A    Okay.
10        Q    Can you state your full name for us?
11        A    Melissa Phyllis Barnwell.
12        Q    Was that your birth name?
13        A    Yes.
14        Q    Have you used any other name over
15   time?
16        A    No.
17        Q    Are you represented by counsel today?
18        A    Yes.
19        Q    Who is your counsel?
20        A    Marc and Stephen and Stephen.
21        Q    When did you retain them or arrange to
22   have them as counsel?
23        A    I want to say it's been about a year,
24   maybe within a year's time.
25        Q    And have they explained to you the
```

Veritext Legal Solutions

HIGHLY CONFIDENTIAL

Page 19

1       Q     Roughly how many documents do you

2   think you read?

3       A     A lot.

4       Q     More than 50?

5       A     Two binders, almost two binders full.

6       Q     And did you review those in advance of

7   meeting with the lawyers yesterday?

8       A     Some of it.

9       Q     Okay.  And were some of those

10  documents that you reviewed materials that you

11  had collected for the lawyers or were they all

12  new to you?

13      A     It wasn't -- it was new to me.

14      Q     Now, you mentioned that you live with

15  your two daughters.  That's █████ and ███████?

16      A     That's correct.

17      Q     And are you a legal guardian of either

18  of them separate from being their birth mother?

19      A     I am their birth mother --

20           MR. DANN:  Objection to the extent it

21    calls for a legal conclusion.

22          Go ahead and answer that.

23  BY MR. BURMAN:

24      Q     To your knowledge.

25      A     I'm their legal guardian and I'm their

HIGHLY CONFIDENTIAL

Page 20

1    birth mother.

2         Q     Legal guardian because a court

3    appointed you in some way or because you're

4    their birth mother?

5         A     Because I'm their birth mother and I

6    have been the one taking care of them.

7         Q     Have you ever not been their legal

8    guardian?

9         A     No.

10        Q     And have they both always lived with

11   you during their lives?

12        A     Yes.

13        Q     Now, there was an indication or some

14   additional information, as I mentioned

15   yesterday.  But let me understand, is ███████

16   your only child with an NAS diagnosis?

17        A     No.

18        Q     ███████   also has that diagnosis?

19        A     Yes, that's correct.

20        Q     How about your two older children?

21        A     My two older children don't have that.

22   They were born perfectly fine.

23        Q     Were you also using opioid pain

24   medication during those two pregnancies, your

25   earlier children?

HIGHLY CONFIDENTIAL

Page 50

```
 1        A      Just recently.

 2               MR. DANN:  Do you think we could take

 3        a break?  I would like to explore bringing

 4        the temperature cooler in here.

 5               MR. BURMAN:  Sure.

 6               MR. DANN:  Thank you.

 7               MR. BURMAN:  Short break.

 8               MR. DANN:  Ten minutes?

 9               MR. BURMAN:  Okay.

10                     (Recess Taken.)

11   BY MR. BURMAN:

12        Q      Ms. Barnwell, you've had an

13     opportunity to talk with counsel during the

14     break; correct?

15        A      Yes.

16        Q      Is there anything that you want to

17     correct or supplement from your testimony this

18     morning?

19        A      Yes.

20        Q      What would that be?

21        A      When you were asking me about being a

22     class representative, can you ask that question

23     again?

24        Q      Sure.  Did you participate in the

25     decision to make this a class action?
```

Veritext Legal Solutions

HIGHLY CONFIDENTIAL

Page 51

1        A      Yes.

2        Q      How did you -- why did you want it to

3     be a class action?

4        A      I wanted it to be a class action so

5     that way other children that are born, going to

6     be born or have already been born, so some type

7     of protocol can be done, a medical monitoring,

8     that's what this suit right here is about.

9        Q      So the suit now is limited to medical

10    monitoring?

11       A      Medical monitoring and protocols more

12    from birth to 18, better monitoring, maybe

13    information, more information.  Things for the

14    children -- I mean for the parents that are

15    brought -- you know what I mean, the kids that

16    are brought home with the parents so the parents

17    can also have information how to handle and how

18    to deal with the children, what's the best

19    interest of the child.

20       Q      And if the medical monitoring was

21    provided, for example, by hospitals and

22    pediatricians, and in your case you didn't want

23    to talk to them because they had offended you,

24    would you force the medical monitoring on the

25    mother?