# EXHIBIT 25

```
                                                          Page 1

 1            IN THE UNITED STATES DISTRICT COURT
 2                 NORTHERN DISTRICT OF OHIO
 3                      EASTERN DIVISION
 4
                    ~~~~~~~~~~~~~~~~~~~~
 5
 6     IN RE:   NATIONAL PRESCRIPTION     MDL No. 2804
       OPIATE LITIGATION
 7                                        Master Docket No.
                                          17-MD-2804
 8
       This document relates to:          Judge Dan Aaron
 9                                        Polster
10     Jennifer Artz v. Endo Health
       Solutions, Inc., et al.
11     Case No. 1:19-op-45459
12     Darren and Elena Flanagan
       v. McKesson Corporation, et al.
13     Case No. 1:18-op-45405
14     Michelle Frost, et al. vs.
       Endo Health Solutions, Inc., et al.
15     Case No. 1:18-op-46327
16     Walter and Virginia Salmons, et al.
       vs. McKesson Corporation, et al.
17     Case No. 1:18-op-45268
18                  ~~~~~~~~~~~~~~~~~~~~
19              Videotaped deposition of
                       ASHLEY POE
20
21                September 1, 2020
                     10:03 a.m.
22
                       Taken at:
23                     Dann Law
                 875 North High Street
24                  Columbus, Ohio
25
              Renee L. Pellegrino, RPR, CLR
```

```
                                                      Page 32
 1    Poe?
 2          A.    Yes, he is.
 3          Q.    And what is Mr. Poe's date of birth?
 4          A.    ████████.
 5          Q.    And what is his address?
 6          A.    I'm not aware of his current
 7    address by heart.
 8          Q.    Do you know what state he lives in?
 9          A.    Yes, ma'am.  He lives in
10    Washington.
11          Q.    Do you and Mr. Poe have a formal
12    custody agreement relating to ████?
13          A.    We do not.
14          Q.    Do you have an informal agreement?
15          A.    We do.
16          Q.    And what is that?
17          A.    I retain full custody of ████.
18          Q.    Does Mr. Poe see ████?
19          A.    No, he does not.
20          Q.    When was the last time Mr. Poe saw
21    ████?
22          A.    2017, when I left Washington.
23          Q.    Does Mr. Poe communicate with
24    ████?
25          A.    No, he does not.
```

Page 139

1  destroy or throw out that journal.  If you could
2  just hang on to it and keep it in a safe place.
3      A.   Okay.
4      Q.   Do you keep a journal about your
5  drug use?
6      A.   I do not.
7      Q.   I guess I should have said did you
8  keep a journal about your drug use.
9      A.   No.
10     Q.   How did you become involved in this
11 litigation?  And I don't want to know any
12 conversations that you've had with any of your
13 lawyers.
14     A.   I was contacted after being
15 involved with another class action case through
16 New York, and then my lawyer contacted me
17 asking me if I would like to represent this
18 case.
19     Q.   What was the subject -- I'm sorry.
20 Strike that.
21          Were you a party to the other class
22 action that you just referenced?
23     A.   Yes.
24     Q.   And what was the subject of that
25 other class action lawsuit?

Page 140

1  A. It was against opioid companies.
2  Q. Do you recall what court that was
3  in?
4  A. I know it was in New York.
5  Q. Is that other class action lawsuit
6  still ongoing?
7  A. I'm not sure.
8  Q. Are you still involved in it?
9  A. I believe so.
10  MR. DANN: Lauren, do you have a
11  long way to go here?
12  MS. O'DONNELL: I don't, but I'm
13  not sure if others are going to have questions.
14  So if you want to take a quick break. I can
15  look over my notes. I mean, I literally have
16  half a page left, but would also like to look
17  everything over first. So if you want to take
18  a break and I can finish my questions and then
19  everybody else will be ready to ask whatever
20  they may want.
21  MR. DANN: Great.
22  Is five minutes enough time or do
23  you need a little more?
24  MS. O'DONNELL: I'm sorry?
25  THE WITNESS: He wants to know if

Page 141

```
 1   five minutes is enough or if you need a little
 2   more.
 3              MS. O'DONNELL:  We might need a
 4   little bit more than five.
 5              MR. DANN:  Okay.  Why don't we
 6   do -- I'm supposed to do a call at 2 o'clock.
 7   Can we start at like 2:05?  Or -- I have to
 8   take a quick break at 2 o'clock.  It's up to
 9   you, Lauren.  I don't want to impose on
10   everybody.  Let me see if I can move that call.
11   Let's come back in 15 minutes.
12              MS. O'DONNELL:  Okay.
13              THE VIDEOGRAPHER:  Off the record.
14   The time is 1:41.
15                   (Recess had.)
16              THE VIDEOGRAPHER:  We're on the
17   record.  The time is 2:05.
18   BY MS. O'DONNELL:
19        Q.    Good afternoon, Ms. Poe.  Are you
20   okay to continue?
21        A.    Yes.
22        Q.    You had mentioned a class action in
23   New York.  What's the name of your attorney in
24   this case?
25        A.    So I would like to clarify
```

Page 142

1  something, actually.  All of this is connected.
2  I saw an ad for the class action in New York
3  and I filled that out, and -- with them, they
4  got me in contact with the people that got me
5  to be the representative of this case.  So it's
6  all in one.
7       Q.   Understood.
8            Do you have any knowledge about the
9  distributors of the opioids that you used in
10 your past?
11      A.   I have personal experience,
12 knowledge of the distributors, meaning back in
13 2009, 2010 a lot of people in my neighborhood
14 were going down to Florida to get prescription
15 narcotics, large quantities of prescription
16 narcotics from doctors.  They would pay cash to
17 get these medicines.  They would go to the back
18 of a semi truck to get an MRI done.  They would
19 write them prescriptions for 240 perc 30s, 240
20 OxyContin.  Then they would turn around and, on
21 the way back to Ohio, they would stop in West
22 Virginia, Virginia, Georgia, at Walgreens,
23 Rite-Aid, Giant Eagle, and get those filled out
24 of state, and then they would bring those back.
25 And I know that there isn't a neighbor or a

```
                                              Page 145
 1    classes of medication, and opioids were a
 2    controlled substance.
 3         Q.    Do you recall learning whether
 4    opioids are addictive?
 5         A.    Yes, I do remember.
 6         Q.    That was something that you were
 7    taught?
 8         A.    Yes.
 9         Q.    What relief are you seeking by
10    filing this lawsuit?
11         A.    I am seeking information and
12    answers on just what exactly is going on with
13    my son and what caused it.
14         Q.    Are you claiming that any of the
15    Defendants in this case are responsible for
16    paying ▓▓▓▓▓▓ past medical expenses?
17         A.    No.
18         Q.    Are you claiming that the Defendants
19    in this case are responsible for paying any
20    other expenses that you believe you've incurred
21    as a result of ▓▓▓▓▓▓ neonatal abstinence
22    syndrome?
23         A.    No.
24         Q.    When ▓▓▓▓▓▓ was born, did any
25    healthcare providers tell you that ▓▓▓▓▓ had
```