# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*Jennifer Artz, et al. v. Endo Health Solutions Inc., et al.*<br>Case No. 1:19-OP-45459<br><br>*Michelle Frost v. Endo Health Solutions Inc. et al.*<br>Case No. 1:18-OP-46327<br><br>*Salmons v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-OP-45268 | MDL No. 2804<br><br>**Case No. 17-md-2804**<br><br>**Judge Dan Aaron Polster** |

## DEFENDANTS' SURREPLY IN OPPOSITION TO NAS PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

In their reply in support of their motion for class certification, Plaintiffs make several new factual and legal assertions.  This surreply addresses just three of them:

- Plaintiffs offer yet another new class definition, requiring "(1) guardianship over (2) a child diagnosed with NAS (3) whose birth mother had a prescription for opioids prior to that birth, or alternatively and more narrowly, (4) a prescription during pregnancy," Dkt. 3555 at 2-3;

- Plaintiffs belatedly offer a new declaration from their expert, Dr. Anand, allegedly reflecting Dr. Anand's recent review of individual medical records, from which he now purports to opine that the children of the proposed class representatives suffered from NAS;

- Plaintiffs introduce a new request for the certification of an issue class (although without specifying the issues on which certification is sought).[1]

---

[1] Plaintiffs also newly assert in their reply that their "conspiracy allegation is the centerpiece of this litigation."  Dkt. 3555 at 5.  This argument fails for the reasons set out in Defendants'

It is black letter law that arguments raised for the first time in a reply brief are waived. *See Hunt v. Big Lots Stores, Inc.*, 244 F.R.D. 394, 397 (N.D. Ohio 2007) (collecting Sixth Circuit cases). Likewise, Rule 26, Rule 37(c), and the Court's scheduling order all bar parties from submitting belated expert opinions in support of motion papers. *See, e.g.*, *Hobart Corp. v. Dayton Power & Light Co.*, 2020 WL 5106743, at *3-4 (S.D. Ohio Aug. 31, 2020); *Moonbeam Capital Investments, LLC v. Integrated Construction Solutions, Inc.*, 2020 WL 1502004, at *6 (E.D. Mich. Mar. 30, 2020); *see also* Opinion & Order, Dkt. 2131, at 3-4 (striking expert affidavit when untimely disclosed in support of motion instead of on schedule set by Court). But even if the Court were to consider these new arguments and opinions, Plaintiffs still do not meet their burden to prove that their proposed class meets the requirements of Rule 23. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). Indeed, Plaintiffs' shifting positions further underscore why this class should not be certified.

**Plaintiffs' New Class Definition**

Plaintiffs' motion for class certification sets forth their proposed class and subclass definitions multiple times, and at length. *See* Dkt. 3066 at 1-2, 5, 10-12; Dkt. 3066-1 at 4-6; Dkt. 3066-2 at 1, 4, 7, 9-10. There were numerous contradictions and inconsistencies among those definitions, but in *every instance*, Plaintiffs explicitly described their proposed class as limited to guardians of children "medically diagnosed with ***opioid-related*** NAS ***at or near birth***." *See id.* (emphases added). Plaintiffs have repeatedly stressed that the class they seek consists of

---

Opposition. Allegations of conspiracy are insufficient for purposes of the Rule 23 factors to overcome the fact that the birth mothers of class members' children consumed opioids that were manufactured, distributed, and dispensed by different Defendants. *See* Dkt. 3536 at 28-29, 39-40, 48 n.29, 52-53. Moreover, not all proposed class representatives have even *pled* conspiracy against all of the Defendants, under either federal or state law. *Id.* at 8, 40-41.

guardians of "infants born addicted to opioids from *in utero* exposure," among other limitations. *See, e.g.*, Dkt. 3066 at 2 n.3.  But in response to Defendants' opposition, which demonstrated that the children of the proposed class representatives were not "medically diagnosed with opioid-related NAS" at birth, Plaintiffs bizarrely accuse Defendants of "improperly graft[ing] an additional requirement onto the class definition."  *Id.* at 3.

Recognizing that their class representatives do not satisfy their originally proposed class definitions, Plaintiffs now seek to abandon those definitions and switch to the new class definition quoted above.  Significantly, their new proposed definition eliminates the requirement that the child's NAS diagnosis have any connection whatsoever to the birth mother's use of opioids — the reinvented definition presents the birth mother's use of opioids and the child's NAS diagnosis as two entirely siloed requirements.  It also eliminates the requirement that the NAS diagnosis be "at or near birth," thereby allowing belated purported diagnoses for litigation purposes.  Furthermore, Plaintiffs have not stated whether they are abandoning the other components of their prior class definitions, including that the children in question be born after March 16, 2000; that the "opioids or opiates [be] manufactured, distributed, or filled by a Defendant or Purdue entity"; that children not have been "treated with opioids after birth, other than for pharmacological weaning"; and that the guardians not be political subdivisions.  Dkt. 3066 at 1-2.[2]

---

[2] Nor have Plaintiffs addressed how this new definition relates to the various proposed classes, subclasses, and state-specific classes set forth in their original motion.

Plaintiffs make no effort to explain how the requirements of Rule 23 could be satisfied if these significant limitations are removed.[3]  In fact, Plaintiffs' proposed redefined classes would have *greater* challenges under Rule 23.  For example, in their opening brief Plaintiffs argued that all proposed class members would satisfy the elements of medical monitoring claims, such as the level of substance exposure and increased risk as a result of that exposure, because any child meeting the class definition would have experienced and been diagnosed with NAS related to opioid exposure.  *See* Dkt. 3066-1 at 20-21, 36-37.  Even if this argument had merit (which it does not, as demonstrated in Defendants' opposition), Plaintiffs' new class definition would abandon it, as Plaintiffs' class would include guardians of children whose NAS diagnosis had nothing to do with opioid exposure.  Plaintiffs' redefined class would even include the guardian of a child whose birth mother received an opioid prescription in her childhood, did not fill the prescription and never ingested an opioid, and years later had a child diagnosed with NAS related to her use of a *different* substance during pregnancy.[4]  Accordingly, like the originally proposed class definition, the new class definition unquestionably requires individualized evidence to establish each element of a medical monitoring claim against Defendants.  And the

---

[3] For example, Plaintiffs fail to explain how a class member could possibly have a claim against these Defendants if the opioids consumed by the birth mother were not marketed, distributed, or dispensed by any of the Defendants, or if the pertinent events occurred so long ago that the statute of limitations necessarily bars recovery.

[4] Plaintiffs argue that NAS is a diagnosis that is made *only* as a result of *in utero* opioid exposure.  Dkt. 3555 at 14-15.  This argument is contrary to the overwhelming evidence presented by the experts in this case, including the admission of Plaintiffs' expert Dr. Anand that infants can receive scores on the Finnegan diagnostic scale that lead to an NAS diagnosis without being exposed to opioids *in utero*.  Ex. A, Anand Deposition at 266:12-269:18.  Dr. Anand also admits that other drugs can cause abstinence syndromes in neonates and that the characteristics of those other abstinence syndromes and abstinence syndrome caused by opioids overlap.  *Id.* at 77:13-78:3.  And whether any particular infant was correctly diagnosed with NAS or whether that infant's symptoms were caused by another substance would still require case-by-case examination.  *See* Dkt. 3523-3, Rubin Report, at 2.

4

necessity of that individualized evidence precludes findings of typicality, commonality, or adequacy under Rule 23(a), and findings of predominance and superiority or cohesion under Rule 23(b).  *See* Dkt. 3536 at 27-35, 46, 56, 58-59.

## The "Supplemental" Declaration of Plaintiffs' Expert Dr. Anand

Plaintiffs offer in support of their reply a new "supplemental" declaration from their expert, Dr. Anand, in which he asserts that Melissa Barnwell, Jacqueline Ramirez, and Ashley Poe "meet the class definition of clients with children suffering from NAS."  Anand Supplemental Decl., Dkt. 3557, at 2.  Dr. Anand bases this assertion on a chart in which he assesses whether each child met factors including a "positive" "maternal history" and "medication assisted therapy."  *See id.*

As an initial matter, the declaration is procedurally barred because it is nearly a year late. As required by this Court's scheduling order, Plaintiffs disclosed their expert reports in support of class certification in December 2019.  Dkts. 2738, 2969.  Defendants deposed Dr. Anand on January 28, 2020.  At that time, Dr. Anand had not reviewed *any* records related to individual proposed class representatives and had not relied on them in reaching his opinion.  He testified that the materials served on Defendants before his deposition contained a "complete statement" of his opinions and that he had identified all of the materials on which he intended to rely.[5]  Ex.

---

[5] In this regard, Plaintiffs' assertion that Defendants have not challenged the methodology of Plaintiffs' experts falls flat.  Dkt. 3555 at 21-22.  First, Defendants could not have challenged these new opinions of Dr. Anand before now.  Second, insofar as Plaintiffs' experts' opinions relate to class certification at all — and most of them do not — they support Defendants in acknowledging the variation between individuals that bars class treatment.  Defendants reserve the right to challenge the admissibility of these opinions as to the *merits* of Plaintiffs' claims at the appropriate time.

A, Anand Deposition at 55:23-56:17, 59:3-11.  In short, Dr. Anand's tardy supplemental declaration is foreclosed by the scheduling order and Dr. Anand's own testimony.

Moreover, while styled as "supplemental," Dr. Anand's new declaration offers wholly new opinions based on the review of medical evidence Dr. Anand did not previously consider. Plaintiffs never sought leave to supplement Dr. Anand's opinions or otherwise indicated that they would offer him as an expert on the individual medical conditions of each class representative's child.  Defendants have had no opportunity to test through cross-examination the accuracy and basis of Dr. Anand's new opinions (much less to offer responsive opinions from their own experts).  Moreover, Dr. Anand's declaration fails to identify the basis of these new opinions:  It offers no citations to specific medical records and assesses the children on criteria different from those set forth in his prior declaration (which did not include "maternal history" or "medication assisted therapy" criteria).  *Compare* Dkt. 3557 at 2 *with* Dkt. 3067-5 at 134. Accordingly, the Court should disregard this untimely filing.

Even if the Court considers Dr. Anand's new report, the opinions set forth in the report fail to demonstrate that the proposed class representatives are members of the class.  Neither the criteria set forth in Dr. Anand's initial report nor those reflected in his supplemental report satisfy Plaintiffs' originally proffered class requirement that the children have been "medically diagnosed with opioid-related NAS at or near birth." *See* Dkt. 3536 at 8-9, 21.  Nor do they satisfy Plaintiffs' new class requirement that the children simply be "diagnosed" with NAS.  And Dr. Anand's proffered *conclusion* about each child ("suffering from NAS") also does not match any of Plaintiffs' varying class definitions.  In fact, Dr. Anand's supplemental declaration explicitly admits that the medical records for the child of Jacqueline and Roman Ramirez do *not* contain an NAS diagnosis, although Dr. Anand still claims that the child was "suffering from

NAS." Dkt. 3557 at 2.  Accordingly, Dr. Anand's new opinions do not render any of these guardians members of either the original proposed class or the new proposed class.

Even more significantly, Plaintiffs' reliance on expert testimony to purportedly establish that specific children could have been diagnosed as having NAS — by asking Dr. Anand to apply "the published medical literature [and] [his] knowledge, training and clinical experience" to the children's medical records — *proves* that these cases are unsuitable for class treatment. Class membership must be objectively defined and may not require "individualized fact-finding." *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009).  Dr. Anand's need to review and evaluate hundreds of pages of individual medical records is a prime example of individualized fact-finding.

## Plaintiffs' Request for Issue Class Certification

Despite having filed multiple amended complaints and a motion for class certification nearly a year ago, Plaintiffs ask for an issue class to be certified for the first time in their reply. Dkt. 3555 at 40.  While Rule 23(c)(4) permits an action "[w]hen appropriate" to be "brought or maintained as a class action with respect to *particular issues*" (emphasis added), Plaintiffs do not identify in their class definitions (or otherwise) any "particular issues" for which they seek certification; nor do they demonstrate how any such issues satisfy the Rule 23 requirements. Instead, they merely purport to cite "example[s]" of issues that they assert "can be resolved once for all class members on the basis of common evidence." *Id.*  This falls far short of satisfying their burden under Rule 23.  To support certification of an issue class, Plaintiffs must prove that the selected "particular issue" meets all of the requirements under Rule 23(a) and (b).  *See In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 775 (6th Cir. 2020); *see also Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413 (6th Cir. 2018) (requiring predominance and

superiority requirements to be met for issue class).  Plaintiffs have made no such showing in the single, conclusory paragraph they devote to this issue.

Moreover, Plaintiffs' "example" issues, unlike those certified in *Martin*, are demonstrably not "questions that need only be answered once because the answers apply in the same way" to each plaintiff.  *Martin*, 896 F.3d at 415.  For example, Plaintiffs suggest as a possible "issue" for class treatment "the ***potential*** of exposure to opioids *in utero* to cause harm." Dkt. 3555 at 40 (emphasis added).  But that issue cannot be resolved on a class-wide basis. Plaintiffs' own expert Dr. Howard admitted that the potential of opioids to cause particular harms to a fetus varies by factors including the type of harm, the timing of exposure, the duration of exposure, and the genetics and medical history of the mother and father.  *See, e.g.*, Howard Deposition, Dkt. 3523-7, at 44:3-45:5, 181:11-182:18, 397:2-18.  The potential of exposure to opioids *in utero* to cause harm, therefore, is a question that must be examined for each plaintiff with respect to the opioids involved with that plaintiff's case, the times and quantities in which they were taken, and the particular harms alleged.  And even were Plaintiffs to establish that their children's exposure to opioids *in utero* could cause them harm, such a conclusion would prove nothing as to any other, let alone every other, absent class member.

## CONCLUSION

Plaintiffs' ongoing revisions to their class definition, supporting evidence, and rationale and continued inability to satisfy the requirements of Rule 23 demonstrate that their claims are fundamentally unsuitable for treatment as a class action.  For the reasons set forth in Defendants' opposition to class certification and in the foregoing, Plaintiffs' motion for class certification should be denied.

/s/ Mark H. Lynch
Geoffrey E. Hobart
Mark H. Lynch
Sonya D. Winner
Emily S. Ullman
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC  20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
swinner@cov.com
eullman@cov.com

*Counsel for McKesson Corporation*

/s/ Tina M. Tabacchi
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/ Enu Mainigi
WILLIAMS & CONNOLLY LLP
Enu A. Mainigi
Steven M. Pyser
Ashley W. Hardin
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
spyser@wc.com
ahardin@wc.com

*Counsel for Defendant Cardinal Health, Inc.*

/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Health Corporation; CVS
Rx Services, Inc.; CVS Indiana, LLC*

/s/ John J. Haggerty
John J. Haggerty
FOX ROTHSCHILD LLP
2700 Kelly Road, Suite 300
Warrington, PA 18976-3624
Tel.: (215) 345-7500
Fax: (215) 345-7507
jhaggerty@foxrothschild.com

*Counsel for Prescription Supply Inc.*

*/s/ Angela R. Vicari*
Andrew Solow
Angela R. Vicari
ARNOLD & PORTER KAYE SCHOLER
LLP
250 W. 55th St.
New York, NY 10019
Telephone: (212) 836-7408
Facsimile: (212) 836-6495
andrew.solow@arnoldporter.com
angela.vicari@arnoldporter.com

Jonathan L. Stern
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., NW
Washington DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
Jonathan.Stern@arnoldporter.com

Sean Morris
ARNOLD & PORTER KAYE SCHOLER
LLP
777 South Figueroa Street, 44 Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
sean.morris@arnoldporter.com

*Counsel for Endo Pharmaceuticals Inc., Endo Health Solutions Inc., Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc.*

*/s/ Daniel G. Jarcho*
Daniel G. Jarcho
D.C. Bar No. 391837
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Tel: (202) 239-3254
Fax: (202) 239-333
Email: daniel.jarcho@alston.com

Cari K. Dawson
Georgia Bar No. 213490
Jenny A. Hergenrother
Georgia Bar No. 447183
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777
Email: cari.dawson@alston.com
jenny.hergenrother@alston.com

*Counsel for Noramco, Inc.*

*/s/ David J. Burman*
David J. Burman
Abha Khanna
Nitika Arora
PERKINS COIE LLP
1201 Third Ave., Suite 4900
Seattle, WA  98101-3099
(206) 359-8000
dburman@perkinscoie.com

*Counsel for Costco Wholesale Corporation*

/s/ Donna M. Welch
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com

*Attorney for Defendants Allergan Limited
(f/k/a Allergan plc) (appearing specially),
Allergan Finance, LLC (f/k/a Actavis, Inc.
f/k/a Watson Pharmaceuticals, Inc.),
Allergan, Inc., Allergan Sales, LLC, and
Allergan USA, Inc.*

/s/ Robert M. Barnes
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
Matthew R. Mazgaj
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com
Email: mazgaj@marcus-shapira.com

*Attorneys for HBC Service Company*

/s/ James W. Matthews
James W. Matthews
Katy E. Koski
Ana M. Francisco
Graham D. Welch
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel:    617.342.4000
Fax:    617.342.4001
Email: jmatthews@foley.com
        kkoski@foley.com
        afrancisco@foley.com
        gwelch@foley.com

*Counsel for Defendant Anda, Inc.*

/s/ John P. Lavelle, Jr.
John P. Lavelle, Jr.
Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: john.lavelle@morganlewis.com
        elisa.mcenroe@morganlewis.com

Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

*Counsel for Rite Aid of Maryland, Inc.*

/s/ Charles C. Lifland
Charles C. Lifland
Richard B. Goetz
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000
clifland@omm.com

*Attorneys for Defendants Johnson &
Johnson; Janssen Pharmaceuticals, Inc.;
Ortho-McNeil-Janssen Pharmaceuticals, Inc.
n/k/a Janssen Pharmaceuticals, Inc.; and
Janssen Pharmaceutica, Inc. n/k/a Janssen
Pharmaceuticals, Inc.*

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Sharon Desh
Sten A. Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
Email: kaspar.stoffelmayr@bartlitbeck.com
Email: sharon.desh@bartlitbeck.com
Email: sten.jernudd@bartlitbeck.com

*Counsel for Defendants Walgreens Boots
Alliance, Inc., Walgreen Co., and Walgreen
Eastern Co.*

/s/ Rebecca C. Mandel
Rebecca C. Mandel
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, D.C. 20004
Phone: (202) 637-5488
Fax: (202) 637-5910
rebecca.mandel@hoganlovells.com

*Counsel for Mylan Pharmaceuticals Inc.\**

*\*Joining as to the Salmons case only*

/s/ Terry M. Henry
Terry M. Henry, Esquire
Lauren E. O'Donnell, Esquire
Melanie S. Carter, Esquire
Justina L. Byers, Esquire
BLANK ROME LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA  19103
Tel.:  (215) 569-5644
Fax:  (215) 832-5644
THenry@blankrome.com
ODonnell@blankrome.com
MCarter@blankrome.com
Byers@blankrome.com

*Attorneys for Defendants,
Teva Pharmaceutical Industries Ltd.,
Teva Pharmaceuticals USA, Inc.,
Cephalon, Inc.; Watson Laboratories, Inc.,
Actavis LLC and Actavis Pharma, Inc.
f/k/a Watson Pharma, Inc.*

/s/ Robert A. Nicholas
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug
Corporation and AmerisourceBergen
Corporation*

/s/ Andrew J. O'Connor
Brien T. O'Connor
Andrew J. O'Connor
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 235-4650
Brien.OConnor@ropesgray.com
Andrew.OConnor@ropesgray.com

*Counsel for Mallinckrodt LLC, SpecGx LLC,
and specially appearing for Mallinckrodt plc*

/s/ William E. Padgett
William E. Padgett (IN No. 18819-49)
Kathleen L. Matsoukas (IN No. 31833-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel:      (317) 236-1313
Fax:      (317) 231-7433
william.padgett@btlaw.com
kathleen.matsoukas@btlaw.com

*Counsel for Defendants H. D. Smith, LLC,
f/k/a. H. D. Smith Wholesale Drug Co.; H. D.
Smith Holdings, LLC and H. D. Smith
Holding Company*

/s/ Maria R. Durant
Maria R. Durant
Sara E. Silva
Safa W. Osmani
HOGAN LOVELLS US LLP
125 High Street, Suite 2010
Boston, MA 02110
Tel: (617) 371-1000
Fax: (617) 371-1037
maria.durant@hoganlovells.com
sara.silva@hoganlovells.com
safa.osmani@hoganlovells.com

*Counsel for Indivior Inc.*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*Jennifer Artz, et al. v. Endo Health Solutions Inc., et al.*<br>Case No. 1:19-OP-45459<br><br>*Michelle Frost v. Endo Health Solutions Inc. et al.*<br>Case No. 1:18-OP-46327<br><br>*Salmons v. Purdue Pharma L.P., et al.*<br>Case No. 1:18-OP-45268 | **MDL No. 2804**<br><br>**Case No. 17-md-2804**<br><br>**Judge Dan Aaron Polster** |

### DECLARATION OF EMILY ULLMAN IN SUPPORT OF DEFENDANTS' SURREPLY IN OPPOSITION TO NAS PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

I, Emily Ullman, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am an attorney at the law firm of Covington & Burling LLP, counsel for Defendant McKesson Corporation.  I am a member in good standing of the bars of the State of New York and the District of Columbia.  I have personal knowledge of the facts set forth in this Declaration, which I make to place before the Court documents and information relevant to its determination of Defendants' Opposition to NAS Plaintiffs' Motion for Class Certification.

2. Attached hereto as **Exhibit A** is a true and accurate copy of excerpts from the deposition transcript of Dr. Kanwaljeet Anand, dated January 28, 2020.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

/s/ Emily S. Ullman
Emily S. Ullman

# Exhibit A

Page 1

1                 UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF OHIO

2                      EASTERN DIVISION

   _____

3   IN RE: NATIONAL PRESCRIPTION   |

4   OPIATE LITIGATION              | MDL No. 2804

5   This document relates to:      | Case No. 17-md-2804

6   Jennifer Artz v. Endo Health   | Judge Dan Aaron Polster

7   Solutions Inc., et al.         |

8   Case No. 1:19-OP-45459         |

9   Darren and Elena Flanagan v.   |

10  McKesson Corporation, et al.   |

11  Case No. 1:18-OP-45405         |

12  Michelle Frost, et al., v.     |

13  Endo Health Solutions Inc.,    |

14  et al.                         |

15  Case No. 1:18-OP-46327         |

16  Walter and Virginia Salmons,   |

17  et al., v. McKesson            |

18  Corporation, et al.            |

19  Case No. 1:18-OP-45268         |

20

21              VIDEOTAPED DEPOSITION OF

22             DR. KANWALJEET ANAND, M.D.

23                  January 28, 2020

24                  Chicago, Illinois

Page 2

1    A P P E A R A N C E S:

2

3    ON BEHALF OF PLAINTIFFS:

4    THOMPSON BARNEY LAW FIRM

5         2030 Kanawha Boulevard, East

6         Charleston, West Virginia 25311

7         304.343.4401

8    BY:  KEVIN W. THOMPSON, ESQ.

9         kwthompson@gmail.com

10   - also -

11        THE BILEK LAW FIRM, L.L.P.

12        700 Louisiana, Suite 3950

13        Houston, Texas 77002

14        713.227.7720

15   BY:  THOMAS E. BILEK, ESQ.

16        tbilek@bileklaw.com

17   - also -

18   MARTZELL, BICKFORD & CENTOLA

19        338 Lafayette Street

20        New Orleans, Louisiana 70130

21        504.581.9065

22   BY:  SCOTT R. BICKFORD, ESQ.

23        srb@mbfirm.com

24

```
                                                    Page 3
 1   A P P E A R A N C E S:   (Continued)

 2

 3   ON BEHALF OF DEFENDANT McKESSON CORPORATION:

 4        SHOOK, HARDY & BACON L.L.P.

 5        Jamboree Center

 6        5 Park Plaza, Suite 1600

 7        Irvine, California 02614-8502

 8        949.475.1500

 9   BY:  MICHELLE M. FUJIMOTO, ESQ.

10        mjfujimoto@shb.com

11   - also -

12        COVINGTON & BURLING LLP

13        One CityCenter

14        850 Tenth Street, NW

15        Washington, DC 20001-4956

16        202.662.6000

17   BY:  EMILY S. ULLMAN, ESQ.

18        eullman@cov.com

19

20

21

22

23

24
```

```
                                                   Page 4

1   A P P E A R A N C E S:   (Continued)

2

3   ON BEHALF OF DEFENDANT H.D. SMITH:

4        BARNES & THORNBURG LLP

5        11 South Meridian Street

6        Indianapolis, Indiana46204-3535

7        317.236.1313

8   BY:  KATHLEEN L. MATSOUKAS, ESQ.

9        kmatsoukas@btlaw.com

10

11  ON BEHALF OF DEFENDANT ALLERGAN:

12        KIRKLAND & ELLIS LLP

13        300 North LaSalle

14        Chicago, Illinois 60654

15        312.862.2000

16  BY:  MARIA PELLEGRINO RIVERA, ESQ.

17        mrivera@kirkland.com

18

19

20

21

22

23

24
```

1    A P P E A R A N C E S: (Continued)

2

3    ON BEHALF OF DEFENDANTS MALLINCKRODT LLP and

4    SPECGX LLC:

5         ROPES & GRAY LLP

6         Prudential Tower

7         800 Boylston Street

8         Boston, Massachusetts 0219903600

9         617.951.7000

10   BY:  JENNIFER PANTINA, ESQ.

11        jennifer.pantina@ropesgray.com

12

13   ON BEHALF OF DEFENDANT TEVA PHARMACEUTICALS USA

14   and RELATED ENTITIES:

15        BLANK ROME

16        One Logan Square

17        130 North 18th Street

18        Philadelphia, Pennsylvania 19103

19        215.569.5500

20   BY:  TERRY M. HENRY, ESQ.

21        thenry@blankrome.com

22        LAUREN O'DONNELL, ESQ.

23        (Telephonic appearance)

24        odonnell@blankrome.com

Page 6

1  A P P E A R A N C E S:  (Continued)

2

3  ON BEHALF OF DEFENDANT CARDINAL HEALTH:

4        WILLIAMS & CONNOLLY LLP

5        725 Twelfth Street NW

6        Washington, DC 20005

7        202.434.5000

8  BY:  MICHAEL R. FISHMAN, ESQ.

9        mfishman@wc.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 7

1   A P P E A R A N C E S:   (Continued)

2

3   ON BEHALF OF DEFENDANT WALGREENS:

4        BARTLIT BECK LLP

5        Courthouse Place

6        54 West Hubbard Street, Suite 300

7        Chicago, IL 60654

8        312.494.4400

9   BY:  SHARON DESH, ESQ.

10       sharon.desh@bartlitbeck.com

11

12  ON BEHALF OF ENDO and PARR DEFENDANTS:

13       ARNOLD & PORTER KAYE SCHOLER LLP

14       250 West 55th Street

15       New York, New York 10019-9710

16       212.836.8000

17  BY:  ANGELA R. VICARI, ESQ.

18       angela.vicari@arnoldporter.com

19

20

21

22

23

24

Page 8

1    A P P E A R A N C E S: (Continued)

2

3    ON BEHALF OF DEFENDANT AMERISOURCEBERGEN:

4         REED SMITH LLP

5         Three Logan Square

6         1717 Arch Street, Suite 3100

7         Philadelphia, Pennsylvania 19103

8         215.851.8100

9    BY:  JENNIFER B. JORDAN, ESQ.

10        jennifer.jordan@reedsmith.com

11        KRISTEN ASHE, ESQ.

12        kashe@reedsmith.com

13

14   ON BEHALF OF DEFENDANT WALMART:

15        JONES DAY

16        77 West Wacker, Suite 3500

17        Chicago, Illinois 60601-1692

18        312.782.3939

19   BY:  NICOLE C. HENNING, ESQ.

20        nhenning@jonesday.com

21

22

23

24

Page 9

1   A P P E A R A N C E S:   (Continued)

2

3   ON BEHALF OF THE RITE AID DEFENDANTS:

4        MORGAN LEWIS & BOCKIUS LLP

5        77 West Wacker Drive

6        Chicago, Illinois 60601-5094

7        312.324.1000

8   BY:   GREGORY T. FOUTS, ESQ.

9        (Telephonic appearance)

10       gregory.fouts@morganlewis.com

11

12  ON BEHALF OF DEFENDANTS GIANT EAGLE and HBC:

13       MARCUS & SHAPIRA LLP

14       301 Grant Street, 35th Floor

15       One Oxford Centre

16       Pittsburgh, Pennsylvania 15219-6401

17       412.471.3490

18  BY:   MATTHEW MAZGAJ, ESQ.

19       (Telephonic appearance)

20       mazgaj@marcus-shapira.com

21

22

23

24

Page 10

1    A P P E A R A N C E S: (Continued)

2

3    ON BEHALF OF DEFENDANT PRESCRIPTION SUPPLY, INC.

4         FOX ROTHSCHILD LLP

5         2700 Kelly Road, Suite 300

6         Warrington, Pennsylvania 18976

7         215.345.7500

8    BY:  STEPHANIE B. FINEMAN, ESQ.

9         (Telephonic appearance)

10        sfineman@foxrothschild.com

11

12   ON BEHALF OF DEFENDANTS JANSSEN and JOHNSON &

13   JOHNSON:

14        O'MELVENY & MYERS LLP

15        400 South Hope Street, 18th Floor

16        Los Angeles, California 90071-2899

17        213.430.6000

18   BY:  HOUMAN EHSAN, MD, ESQ.

19        hehsan@omm.com

20

21

22

23   ALSO PRESENT:

24        Mr. Kevin Duncan, Videographer



Page 55

1  until you get there.

2       A.    Yes.

3       Q.    And it has an execution date of

4  December 8, 2019, correct?

5       A.    That is correct.

6       Q.    Is this document a significant work

7  product you submitted in this litigation in

8  December of 2019?

9       A.    That is correct.

10      Q.    When submitting this declaration,

11 did you have an understanding of what were the

12 requirements, not the subject matter but the

13 requirements of what goes in -- into the

14 declaration?

15      A.    Yes, I did.

16      Q.    Okay.  What were your understandings

17 of those requirements?

18      A.    My understanding was that this

19 declaration was requested in order to define a

20 class of individuals that had been damaged due

21 to opioid exposure during their prenatal period

22 through use by the mother, by the birth mother.

23      Q.    Is this declaration intended to be a

24 complete statement of all the opinions you

Page 56

1   intend to express related to NAS as risk

2   factors and as long-term consequences?

3        A.    That is correct.

4        Q.    And -- I apologize, go ahead.

5        A.    I'd just like to direct your

6   attention to the last paragraph of this

7   declaration saying that:

8            With the Court's permission, I would

9   like to reserve the right to update this report

10  in order to reflect the accumulating scientific

11  and medical evidence as necessary.

12       Q.    I appreciate the clarification,

13  Doctor.

14           At the time you submitted this

15  declaration, was it intended to be complete as

16  of that point in time?

17       A.    Yes, it is.

18       Q.    Do you have opinions you have formed

19  but chosen about NAS, its risk factors and it's

20  long-term consequences, that you have chosen

21  not to include in this declaration?

22       A.    No.  For the most part, this is an

23  accurate summary of my opinions.

24       Q.    And let me ask the question slightly

Page 57

1   differently:

2               Are there any opinions you've

3   already formed and intend to provide that you

4   chose not to include in this declaration?

5       A.    I have reviewed additional evidence

6   that I became aware of and provided that

7   evidence as of January 24th, so other than its

8   relationship to the content of this

9   declaration, there was, you know, perhaps minor

10  changes, mostly semantic or of a minor nature

11  that may have occurred in the light of that new

12  evidence.

13      Q.    The January 24, 2020, submission

14  that you're speaking of had substance additions

15  from your December 2019 declaration?

16      A.    So the declaration itself has not

17  been changed, but the additional evidence that

18  I have reviewed may have affected my opinions

19  to a minor degree.

20      Q.    Have you thought about whether or

21  not -- strike that.

22              Let me ask the question differently:

23              Have you thought about how the

24  additional evidence in 2020 has impacted any

1   specific opinions you've given in your

2   December 2019 declaration?

3       A.    As I stated, this was probably of a

4   minor nature, simply confirming or adding

5   additional references, which was

6   related -- which is reported in those five

7   documents that I had e-mailed to counsel on the

8   24th.

9           MR. BILEK:  And for the record, I

10      e-mailed them to Emily that day.

11          MR. EHSAN:  Understood.

12  BY MR. EHSAN:

13      Q.    I'm not suggesting that you did not

14  provide additional literature but my question

15  was simply:

16          To the extent you know that those

17  five articles have changed any of your

18  opinions, sitting here today, can you

19  articulate that?  Or you may not know how it's

20  changed any of your opinions.  I'm just asking

21  that question more generally.

22      A.    Yeah, so, in general, like I said,

23  there has been no substantial change in my

24  opinions.  Some of those opinions have been

1 validated and confirmed by the accumulating

2 data.

3      Q.   To the extent that you have

4 references in this declaration and you provided

5 some additional supporting material, does that

6 collective body of citations represent a

7 complete list of all the external, meaning not

8 in your head from your training, information

9 you intend to rely on in supporting the

10 opinions you provide?

11      A.   That is correct.

12      Q.   Did you consider any facts or data

13 outside what's listed in your declaration in

14 forming your opinions?

15      A.   Other than what's listed in the

16 references of this document, I relied on my

17 clinical experience.

18      Q.   You didn't perform any data analysis

19 that's not identified in this declaration; is

20 that correct?

21      A.   That is correct.

22      Q.   Did you provide -- let me strike

23 that.

24            In connection with preparing your

*    *    *

1   neonatal opioid withdrawal syndrome are terms

2   used to denote a group of problems that occur

3   in children who are exposed to opioids or

4   opiate drugs in the mother's womb.

5                Do you see that?

6        A.   Yes.

7        Q.   What is your understanding of the

8   distinction between NAS and NOWS?

9        A.   They're essentially the same thing.

10  There are -- they describe a clinical diagnosis

11  manifesting the signs and symptoms of opiate

12  withdrawal.

13       Q.   Are opioids the only class of

14  medication that can cause an abstinence

15  syndrome in a child?

16       A.   No, there are other classes of drugs

17  that can cause an abstinence syndrome.

18       Q.   And those abstinence syndromes,

19  would they present in a clinically unique way

20  that's distinguishable from opioid withdrawal

21  syndrome in a neonate?

22       A.   Yes, to a great extent, they would.

23       Q.   Are there any other characteristics

24  that overlap between abstinence syndrome from

Page 78

1   opioids and abstinence syndrome from some other

2   drug of abuse?

3       A.    There may be some overlap.

4       Q.    So just because a neonate is

5   diagnosed with NAS doesn't necessarily mean the

6   birth mother had mild, moderate or severe OUD,

7   correct?

8       A.    So the birth mother may not have an

9   opioid use disorder, may have been prescribed

10  opiates for a particular condition, which then

11  exposed the fetus to significant levels and

12  durations of opiates and resulted in NAS

13  manifesting after birth.

14      Q.    The diagnostic approach to a neonate

15  and whether or not that neonate has NAS is

16  distinct from the diagnostic approach to the

17  mother and whether the mother has OUD, correct?

18      A.    That is correct.

19      Q.    Do you have, sitting here today, an

20  opinion as to what the minimum exposure would

21  be necessary to cause a neonate to undergo an

22  abstinence syndrome from the maternal exposure

23  to an opioid?

24      A.    There is no minimum exposure.



Page 266

1        Q.     Now, you mentioned this is a

2   clinical diagnosis.

3              Do you -- is that to distinguish it

4   from a laboratory diagnosis or a radiological

5   diagnosis?

6        A.     That is correct.

7        Q.     So, for example, in diabetes, if you

8   have two hemoglobin A1Cs greater than 6 1/2 and

9   3 months apart that would be sufficient to make

10  the diagnosis of diabetes, correct?

11       A.     That is correct.

12       Q.     And here, you want 8 numbers on here

13  or a total score of 8, at least four hours

14  apart though we are not sure how -- what the

15  other end of the spectrum is, correct?

16       A.     That is correct.

17       Q.     You have to get the 8 points the

18  same way, i.e., do you have to check off the

19  same boxes in that 4-hour interval?

20       A.     No, no.  The way this is set up

21  is -- is you reach a score of 8 because the

22  pattern of NAS changes as time goes on.

23       Q.     So you may, at Time Interval 1, you

24  may score 8, let's say with just a GI -- well,

Page 267

1   yeah, you get to just a GI stuff.  You could

2   score an 8 just for the GI stuff, GI

3   symptomatology, and on Time Interval 2, you

4   could score 8 for the central nervous system

5   disturbances?

6        A.    Yeah.

7        Q.    Now, I'm just going to specifically

8   ask about a couple of these.  Here's a -- the

9   first one is high-pitched cry.

10            Do you see that?

11       A.    Yes, I do.

12       Q.    Is that specific to opioid

13  withdrawal?

14       A.    It is indicative.  It's not

15  pathognomonic.  It's not -- you can get a

16  high-pitched cry from, say, other conditions,

17  like there's a Cri du chat syndrome, which is a

18  genetic disorder which has a high-pitched cry,

19  or there are other conditions that lead to a

20  high-pitched cry.

21       Q.    Sleeping less than an hour after

22  feeding, is that specific to opioid withdrawal?

23       A.    No, it's not specific to opioid

24  withdrawal.

Page 268

```
 1        Q.    How about sleeping less than two
 2   hours after feeding?
 3        A.    Not specific either.
 4        Q.    How about sleeping greater than
 5   three hours after feeding?
 6        A.    That is not specific either.
 7        Q.    Fever of -- so going down to the
 8   next section, Metabolic Disturbances, fever of
 9   37 point -- or 38.3, is that something you
10   can -- a child can have without being exposed
11   to opioids?
12        A.    Yes, they can.
13        Q.    Fever greater than 38.4?
14        A.    Yes.
15        Q.    How about nasal stuffiness?
16        A.    Yes, they can have that from some
17   other cause.
18        Q.    Can a child sneeze greater than
19   three to four times without having been exposed
20   to opioids?
21        A.    Yes, they can.
22        Q.    How about -- how about nasal
23   flaring?
24        A.    They can have nasal flaring from
```

1   other causes.

2       Q.    There's in fact a series of diseases

3   that a mother can pass on to a child that are

4   pneumonically called the TORCH syndromes,

5   correct?

6       A.    That is correct.

7       Q.    And some of those TORCH syndromes

8   could also cause some of the symptoms that are

9   described here, correct?

10      A.    That is correct.

11      Q.    So is it possible for a child

12  without any opioid exposure, by just having the

13  right combination of symptoms, and putting

14  aside the likelihood of whether that occurs or

15  not, but is it possible for a child to hit

16  8 points on this scale without ever having been

17  exposed to opioids?

18      A.    It is possible, yes.

19           MR. EHSAN:  So I don't have any more

20       questions for you, Doctor.  I appreciate

21       your time and your patience with me today.

22       I will only say that -- that I've been told

23       that we are going to get a copy of your --

24       an additional publication that was from



VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.