IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION ) ) ) | MDL 2804 |
| THIS DOCUMENT RELATES TO: ) ) | Case No. 1:19-op-46042-DAP |
| BOARD OF EDUCATION OF CHICAGO PUBLIC SCHOOLS, DISTRICT 299, et al., on behalf of themselves and others similarly situated, ) ) ) ) ) | [Consolidated with 1:19-op-45913-DAP]<br><br>Judge Dan Aaron Polster |
| v. ) ) | |
| CEPHALON, INC., et al. ) ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF SCHOOL DISTRICTS' MOTION FOR LEAVE TO FILE FIRST AMENDED CONSOLIDATED COMPLAINT**

Defendants' objections to Plaintiff School Districts' Motion for Leave to File First Amended Consolidated Complaint lack merit and display a fundamental misapprehension of both the nature of the claims asserted and the consequences, procedurally, if the motion were to be denied. Defendants' tactics should not be permitted to prevent School Districts from playing a meaningful role in these proceedings, where they have a uniquely vital contribution to make in abating the ravages of the opioid crisis.

**I.      School Districts' Claims**

America's public schools perform one of the most important services of any public entity in our nation: providing a quality education to every student, regardless of disability. Public schools fulfill a federal mandate to identify special education needs of children early in life and to provide children with special education needs services and life skills up through and

sometimes beyond high school. The vast majority of the nation's public schools are independent governmental entities: their claims here are distinct from claims that have been asserted or indeed can be asserted by any other governmental claimants (such as municipalities), let alone by private claimants (such as the NAS Plaintiffs).

The opioid crisis—a direct product of Defendants' wrongful conduct —has wreaked havoc on American families, including hundreds of thousands of innocent children. The injuries caused to children who are exposed to opioids before birth represent among the most tragic and long-lasting consequences of the opioid epidemic. And as state and national data have made clear, these widespread injuries to children have put a huge strain on the budgets of our nation's public schools. Children exposed to opioids *in utero* disproportionately receive special education and related[1] services which federal law mandates be provided to all students in need. Special education services must be provided free of cost to all students who need them, but they are not free of cost to the public schools. Indeed, special education services are costly, and the impact of the opioid epidemic on the cost of special education has been dramatic. The aggregate damage to public schools is quantifiable—totaling over $127 billion nationally—and it is directly attributable to Defendants' actions. In addition, because of their unique expertise in providing special education services, public schools are particularly well suited to effectively abate the consequences of the opioid epidemic on children moving forward.

Public schools remain at the forefront of America's battle with the opioid epidemic. Exposure to opioids *in utero* frequently causes children to suffer cognitive and behavioral

---

[1] Under Section 504 of the Rehabilitation Act, schools must provide appropriate educational services designed to meet the individual needs of students with disabilities to the same extent the needs of students without disabilities are met. This may consist of supplementary services beyond formal special education under the Individuals with Disabilities Education Act ("IDEA"). In this brief, we refer to services under Section 504 and services required by the IDEA collectively as "special education."

disabilities, which are often severe. As a result, these children require extra intervention and support throughout their education. Public schools, in turn, are obligated under state and federal law to identify children with disabilities and provide them with special education services from ages 3 to 21. *See* 34 C.F.R. §§ 300.20-24 (IDEA regulations); 34 C.F.R. § 104.35 (Section 504 regulations); 20 U.S.C. § 1412 (a)(10) (school districts must also pay for services for students with disabilities at private schools within their boundaries). School Districts have always performed these vital services on limited budgets, but because of Defendants' human-made epidemic, public schools' resources have been stretched to the brink, and because more children are born with prenatal opioid exposure every day, public schools will bear these tremendous added expenses well into the future.

      The claims of public schools also provide the Court with an opportunity to further the stated purpose of focusing the recovery and outcome of this litigation on efforts to abate and remediate the tragic impact of the opioid crisis. Funding these services through public schools will yield unmatched returns both now and well into the future. For these reasons, granting School Districts leave to amend their complaint is the most effective and procedurally efficient way to ensure their voices are heard and, as a practical matter, is the most effective means to abate the developmental injuries suffered by children with prenatal opioid exposure.

      School Districts seek to focus and simplify proceedings by consolidating public school claims, including the class action complaint filed by Chicago Public Schools, the complaint filed by Miami-Dade County Public Schools, and the claims of an additional 56 named school district plaintiffs not yet parties to these proceedings—in a single complaint. The named plaintiffs in the proposed amended complaint represent a cross section of the nation's public schools, ranging from additional urban communities such as Baltimore, to medium size cities such as Manchester,

New Hampshire and Rochester, New York to hard hit rural communities in Kentucky and Maine. If this motion to amend is not granted, then the 56 school districts that seek to join these proceedings as parties to a single consolidated complaint on behalf of all independent public schools, will instead file, and have an absolute right to file, their own complaints (or consolidated complaint). But why needlessly complicate these proceedings? Common sense and efficiency point to allowing a single complaint on behalf of all School Districts rather than multiple complaints.

By way of background, Plaintiffs Chicago Public Schools and Miami-Dade County Public Schools filed cases against Defendants on November 20, 2019 and September 30, 2019, respectively. Chicago Public Schools pled a nationwide class of public schools. On October 26, 2020, the two parties filed a motion seeking leave to file a consolidated amended class action complaint, adding a broad national coalition of 56 public school district named plaintiffs from eight states, none of which had yet filed claims against Defendants in this MDL. Doc. 3547. In recognition of the Court's moratorium on substantive filings, School Districts sought leave to file their first amended consolidated complaint under Fed. R. Civ. P. 16(b)(4). Pharmacy Defendants filed an objection on November 24, 2020 (Doc. 3566), and Distributor and Manufacturing Defendants each filed a motion to join in the Pharmacy Defendants' objection (Docs. 3568, 3569), which the Court granted. Distributor and Manufacturing Defendants did not raise new arguments in their motions for joinder.

**II.     Defendants' Objections Have No Merit.**

    **A.     School District Plaintiffs Have A Right To Bring Claims Against Defendants**

First, as Defendants rightly point out, School Districts seek to add 56 named plaintiffs to join Chicago Public Schools to represent a proposed national class of public school districts.

4

These 56 do not currently have claims on file. Each has a right to assert new claims against Defendants. From the vantage of judicial administration, bringing all School Districts' claims under one consolidated school district complaint, rather than forcing school districts to file multiple separate complaints, is eminently sensible.

Defendants argue incorrectly that School Districts should not be permitted to file their amended complaint because doing so would violate the Court's moratorium on substantive filings. Fed. R. Civ. P. 16(b)(4) establishes a good cause standard for any party wishing to modify a pretrial schedule, a standard which School Districts have met. As explained in School Districts' motion to amend, thanks to advances in educational and medical research about the financial impact of the opioid epidemic on public education, public schools only recently identified their claims against Defendants. Considering these advances, School Districts exercised diligence in evaluating their claims, and only filed suit after determining this new information formed both a strong basis for claims against Defendants and a sound method to calculate damages.

Regardless, the 56 newly named school district plaintiffs have not previously filed claims, and thus have every right to state claims and plead causes of action based on the most up-to-date information about Defendants' egregious wrongdoing.[2] Like Chicago Public Schools and Miami-Dade County Public Schools, the new school district plaintiffs and the putative class of

---

[2] The "five new causes of action against all Defendants" that Defendants take issue with do not add any new theories of liability. School Districts merely sought leave to add causes of action for violations of state consumer protection laws of some of the new plaintiffs' states. In its original complaint, Chicago Public Schools included a cause of action under the Illinois Consumer Fraud Act, which has elements in common with the consumer protection statutes of many other states. However, Chicago Public Schools may not have standing to assert claims under the consumer protection laws of other states. Therefore, for example, School Districts seek to add a claim under the Maryland Consumer Protection Act because new plaintiff Baltimore City Public Schools has standing to state a claim under Maryland state law.

public school districts have been grievously harmed by Defendants.

If Chicago Public Schools and Miami-Dade County Public Schools are not allowed to amend their existing pleadings with the Amended Consolidated Complaint, the new school district plaintiffs will file a separate originating complaint, and then request leave to consolidate their case with CPS and Miami-Dade County Public Schools when the moratorium on substantive filings is lifted. Amending and consolidating School Districts' actions now is the most efficient way forward.

> **B.    NAS Plaintiffs' Motion for Class Certification Has No Bearing On School Districts' Motion To Amend.**

The Defendants' suggestion that a ruling on this motion should wait because it may be shaped by a ruling on the NAS Plaintiffs' pending class certification motion makes no sense.

First, as a matter of due process, School Districts' rights are completely separate from the rights of NAS Plaintiffs.

Second, a ruling, under Rule 23, determining the NAS Plaintiffs' rights to proceed as a class has no legal, or logical, bearing on allowing School Districts' amendment, under Fed. R. Civ. P. 15.

Third, even if the first two points were not dispositive (and they are), a ruling on the NAS Plaintiffs' motion to certify a class will have no legal or logical bearing on the viability of a School District class. Indeed, the Defendants themselves have already implicitly acknowledged as much by emphasizing the "vast difference" between (a) claims by governmental plaintiffs, based on the aggregate harm that governmental units have suffered, on the one hand, and (b) claims by individual private personal injury plaintiffs that cannot be proven without reference to each plaintiff's individual exposure and facts showing individual causation, on the other. *See* Defendants' Opposition to NAS Plaintiffs' Motion for Class Certification, 37, Doc. 3523. As the

6

Defendants have thus asserted, because governmental units base their claims on the aggregate harm they have suffered and support their claims with aggregate data regarding the consequences of opioid exposure *in utero* on subsequent public expenditures, their claims do not depend on the same individualized assessments and child-by-child personal injury proofs as would the claims of NAS Plaintiffs. Rather, aggregate data may be used to show a governmental plaintiffs' injuries, which this Court has already recognized. *See, e.g.,* Opinion and Order Regarding Defendants' Summary Judgement Motions on Causation, 8, Doc. 2561 (finding "Plaintiffs' aggregate proof of causation sufficient to overcome summary judgment"). And in their Opposition to NAS Plaintiffs' Motion for Class Certification, Defendants strongly and decisively distinguish claims based on aggregate data, like School Districts' class claims, from the NAS Plaintiffs' class claims. Doc. 3523, 36-37.

Unlike the NAS Plaintiffs and their personal injury claims, School Districts are able to show common injuries and calculate out-of-pocket damages, both in the aggregate and for each district, based on state and nationwide data showing diagnosed NAS births and the costs of special education and related services, to calculate the staggering costs that Defendants' misconduct has imposed on public education nationwide. The model builds on statistical evidence that reliably estimates the percentage of children who suffer permanent neurological harm from *in utero* opioid exposure, and the percentage who develop resulting cognitive and/or behavioral disabilities requiring special education and related services in school.

The data show that public school districts across the United States have shouldered the costs of providing such services to students who were exposed to opioids *in utero*. The School Districts' damages model also enables Plaintiffs to fairly allocate any class-wide recovery among the nation's approximately 13,000 public school districts. The recovery would go directly to the

abatement efforts that School Districts are already set up to do: provide special education and related services to children born with neurological damage because of Defendants' wrongdoing.

Although School Districts do not need, at this stage of the proceedings, to either prove the viability of their damages model or show conclusively that their case meets the criteria for class certification, these factors show that the Court's disposition of NAS Plaintiffs' class certification motion should not affect the entirely separate question of whether School Districts may amend their complaint. The Court should permit School Districts to promptly file their First Amended Consolidated Complaint.

**Conclusion**

School Districts have a vital role to play in addressing the opioid crisis. They, by statutory mandate, have been providing special education and related services since the passage of the Education for all Handicapped Children Act of 1975 (now known as the IDEA). School Districts are in a superior position to provide direct, remediating services to ameliorate the devastating effects of the opioid epidemic on children—indeed, they have already been doing so on shoestring budgets. If given a meaningful chance of recovery, School Districts can more immediately affect positive outcomes for children and families whose lives were impacted by the opioid epidemic than just about any other public or governmental plaintiff in these proceedings. Granting School Districts' leave to amend their complaint will enable a broad national cross section of the nation's public schools to serve as named plaintiff school districts and constructively participate in these proceedings. School Districts will ensure that any plans for global recovery will go toward the most promising efforts to benefit children impacted by the opioid crisis—providing them with a quality education. Doing so will in turn advance the Court's stated mission in this MDL: to focus efforts on abatement and remediation of the opioid

crisis. *See, e.g.,* Doc. 70.

Defendants' objections fail to contend with the nature and procedural posture of School Districts' claims and should be overruled. For these reasons, School Districts respectfully request that the Court grant them leave to file their First Amended Consolidated Class Action Complaint.


Date:   December 7, 2020                                         Respectfully submitted,


                                                                 */s/ Matthew J. Piers*
                                                                 One of the Attorneys for Plaintiffs


| | |
|---|---|
| Cyrus Mehri | Matthew J. Piers |
| cmehri@findjustice.com | mpiers@hsplegal.com |
| Steve Skalet | Charles D. Wysong |
| sskalet@findjustice.com | cwysong@hsplegal.com |
| Aisha Rich | Emily R. Brown |
| arich@findjustice.com | ebrown@hsplegal.com |
| MEHRI & SKALET, PLLC | Margaret E. Truesdale |
| 1250 Connecticut Ave., NW | mtruesdale@hsplegal.com |
| Washington, D.C. 20036 | HUGHES SOCOL PIERS |
| 202.822.5100 | RESNICK &DYM, LTD. |
| | 70 W. Madison Street, Suite 4000 |
| | Chicago, IL 60602 |
| Neil Henrichsen | 312.580.0100 |
| nhenrichsen@hslawyers.com | |
| HENRICHSEN LAW GROUP, PLLC | |
| 301 W. Bay Street, Suite 1400 | Wayne Hogan |
| Jacksonville, FL 32202 | hogan@terrellhogan.com |
| 904.381.8183 | Leslie Goller |
| | lgoller@terrellhogan.com |
| | TERRELL HOGAN YEGELWEL, P.A. |
| | 233 E. Bay Street, Suite 800 |
| | Jacksonville, FL 32202 |
| | 904.722.2228 |
| | |
| | *Attorneys for the Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2020, I electronically filed the attached **REPLY IN SUPPORT OF SCHOOL DISTRICTS' MOTION FOR LEAVE TO FILE FIRST AMENDED CONSOLIDATED COMPLAINT** with the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

    Respectfully submitted,

    */s/ Matthew J. Piers*
    One of the Attorneys for Plaintiffs