UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | Case No. 1:17-MD-2804 |
| *APPLIES TO ALL CASES* | Hon. Dan A. Polster |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO WALGREENS' OBJECTION TO DISCOVERY RULING NO. 14, PART 15**

Walgreens's objection to Discovery Ruling No. 14, Part 15 ("DR 14-15") (Doc. #: 3562) should be denied. Notably missing from Walgreens' objection is the required explanation of how and why the documents at issue – which appear to address predominantly business/regulatory matters – involve primarily *legal* advice. Ignoring its burden of proof as well as other fundamental privilege standards (e.g., the privilege must be applied as narrowly as possible, business advice is not protected, regulatory advice for a business purpose is not privileged, etc.). Walgreens attempts to redefine the requirements it must meet in order to maintain privilege claims.

The primary reasoning behind the privilege analysis conducted in DR 14-15 was articulated as follows:

> First, many of the claims required determination of whether the relevant communication involved a request for or provision of *legal advice* as opposed to *regulatory advice for a business purpose*. If [Walgreens] did not carry its burden of showing the communication was for legal advice, then the privilege claim was overruled. The Special Master repeatedly applied this distinction in previous Discovery Rulings. The Special Master highlights it again, however, because Walgreens repeatedly claims a document is privileged merely because it provides legal advice, and the Special Master then finds this assertion not well-taken. To repeat, simply *saying* a document contains legal advice – and not simply regulatory advice for a business purpose – is insufficient; it is Walgreens' burden to show how and explain why this is true.[1]

---

[1] *See* DR 14-15 at 2-3.  (Emphasis in original).

As set forth below, DR 14-15 applied established principles and standards for evaluating privilege claims.

### Applicable Legal Standards

DR 14-15 is well supported by a variety of legal standards. These standards include that: a) the party claiming privilege has the burden of proof and must present affirmative evidence to carry its burden, b) privileges must be narrowly construed – and do not protect documents/communications which would have been made regardless of a privilege, c) communications and documents involving in-house counsel are not presumed privileged, d) legal advice must be the primary or predominant purpose, and e) regulatory advice is not legal advice. These standards, which are ignored in Walgreens' objection, support the findings of DR 14-15.

**A.  Burden of Proof**

"The burden of establishing the existence of the privilege rests with the person asserting it."[2]  "The burden is not satisfied by mere conclusive or *ipsa dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the privilege."[3]  Moreover, "[t]he risk of non-persuasion arising from a failure to establish facts supporting a claim of privilege falls upon the party asserting it."[4]

**B.  Narrowest Possible Limits**

"Claims of attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit.'"[5]  "The privilege

---

[2] *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir.2000) ("The burden of establishing the existence of the privilege rests with the person asserting it.").
[3] *In re Trans-Industries, Inc.*, 2011 WL 1130431, *2 (N.D. Ohio Mar. 28, 2011) (quoting *Lewis v. U.S.*, 2005 WL 1926655, at *1 (W.D. Tenn. June 20, 2005).
[4] *Amway Corp. v. Proctor & Gamble Co.*, 2001 WL 1818698, at *4 (W.D. Mich. Apr. 3, 2001).
[5] *In Re Columbia/HCA Healthcare Corporate Billing Practices*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997)).

cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purpose."[6] As a result, the privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege."[7]

### C. Communications with In-House Counsel are not Presumed Privileged.

"[T]he participation of general counsel in the business of the corporation [ ] does not automatically cloak the business activity with the protection of the attorney-client privilege."[8] "The increasing inclusion of attorneys in business discussions and decisions has 'increased the burden that must be borne by the proponent of corporate privilege claims relative to in-house counsel.'"[9]  "When lawyers produce both documents containing business advice and documents containing legal advice, courts place a particularly heavy burden upon the proponent of the privilege to make a clear showing that an allegedly privileged document actually concerns legal, as opposed to business, advice."[10]  Because of this, "communications between in-house counsel and corporate representatives, unlike those between a client and outside counsel, are not presumed

---

[6] *United States v. Skeddle*, 989 F. Supp. 890, 900 (N.D. Ohio 1997) (citing *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2nd Cir.1991)).  *See also, In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) (because the privilege "is in derogation of the public's right to every man's evidence," it is "not favored by the federal courts" and "is to be strictly confined within the narrowest possible limits consistent with the logic of its principle.").
[7] *Nice v. City of Akron*, 2019 WL 6771156 at * 3 (N.D. Ohio Dec. 12, 2019) (citing *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 48 L.Ed.2d 39 (1976)).
[8] *Tucker v. Jefferson Operator, LLC*, 2013 WL 6592194, at *3 (E.D. Tenn. Dec.16, 2013) (quoting *In re So. Industrial Banking Corp.*, 35 B.R. 643, 647 (Bankr. E.D. Tenn.1983)).
[9] *Acosta v. Target Corp.*, 281 F.R.D. 314, 322 (N.D. Ill. 2012) (quoting *In re Vioxx Products Liab. Litig.*, 501 F.Supp.2d 789, 799 (E.D. La. 2007)).
[10] *Flagstar Bank v. Fed. Ins. Co.*, 2006 WL 6651780, at *4 (E.D. Mich. Aug. 21, 2006) (citing *In re Feldberg*, 862 F.2d 622, 626–27 (7th Cir. 1988); *Amway*, 2001 WL 1818698, at * 5).

to be made for the purpose of obtaining legal advice."[11]  Accordingly, "[t]here is no presumption that a company's communications with counsel are privileged."[12]

### D. Legal Advice Must Be the Primary or Predominant Purpose

The Sixth Circuit has held that "[i]t is, of course, well established that attorney-client communications related to areas other than legal counseling, such as business advice, are not privileged."[13]  Thus, "for investigations, communications, and the like that are 'of a nature that the business would ordinarily have conducted in all events,' the privilege does not attach."[14]

In order to meet its burden, the proponent of a privilege claim must prove that the "dominant intent" of the communication was to seek or provide "legal advice".[15]  A "communication is not privileged simply because it is made by or to a person who happens to be an attorney.  To be privileged, the communication must have the *primary* purpose of soliciting legal, rather than business, advice."[16]  Moreover, [t]his predominant purpose 'should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.'"[17]  This fact-based determination is made based on the contextual evidence required to be *proven* by the party seeking to withhold the documents.

---

[11] *Dewitt v. Walgreen Co.*, 2012 WL 3837764 at *3 (D. Idaho Sept. 4, 2012) (citing *U.S. v. ChevronTexaco Corp.*, 241 F.Supp.2d 1065, 1076 (N.D. Cal. 2002)).
[12] *Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017).
[13] *In re Search Warrant Executed at Law Offices of Stephen Garea*, 173 F.3d 429 (6th Cir. 1999), citing *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984).
[14] *Boltz v. United Process Controls*, 2017 WL 9938047, at *3 *8 (S.D. Ohio Jun. 23, 2017) (quoting *U.S. v. ISS Marine Services*, 905 F.Supp.2d 121, 129–130 (D.D.C. 2012)).
[15] *In re Behr Dayton Thermal Products, LLC*, 298 F.R.D. 369, 375 (S.D. Ohio 2013).
[16] *Zigler v. Allstate Ins. Co.*, 2007 WL 1087607 at *1 (N.D. Ohio Apr. 9, 2007) (internal quotation marks and citations omitted, emphasis in original).
[17] *Alomari v. Ohio Dep't of Pub. Safety*, 626 Fed. Appx. 558, 570 (6th Cir. 2015) (citing *In re Cty. of Erie*, 473 F.3d 413, 420-21 (2d Cir. 2007).

### E. Regulatory Advice for a Business Purpose is Not Privileged

As established by multiple prior Discovery Rulings, including those which have been upheld and affirmed after objection, the "attorney-client privilege does not apply . . . if the client seeks regulatory advice for a business purpose".[18] This law of the case is not only consistent with the aforementioned standards underlying the attorney-client privilege, it is fully supported by extensive jurisprudence.

The privilege does not extend to "communications made to secure or provide [regulatory] advice" when such is a fundamental or necessary part of conducting the business.[19] In other words, when a company operates in an industry regulated as a matter of course, regulatory compliance advice "is part of the day-to-day operation of a business; it is not a privileged legal activity."[20] Accordingly, documents cannot be withheld as privileged if "prepared in the ordinary course of business or pursuant to regulatory requirements".[21] Moreover, when analyzing documents created in the context of regulatory compliance, the proponent of the privilege has the "burden to show

---

[18] *See e.g.*, Discovery Ruling 14-5 (Doc. 1498) at 12 (quoting *Fed. Trade Comm'n v. Abbvie, Inc.*, 2015 WL 8623076 at *9 (E.D. Pa. Dec. 14, 2015)); 4/16/2019 Order (Doc. #: 1553) affirming Discovery Ruling 14-5.

[19] *Intl. Brotherhood of Elec. Workers Loc. 212 v. American Laundry Machinery, Inc.*, No. 07–cv–324, 2009 WL 81114, at *3 (S.D. Ohio Jan.9, 2009). *See also*, *Glazer v. Chase Home Finance LLC*, 2015 WL 12733394 at *4 (N.D. Ohio Aug. 5, 2015) ("The privilege does not permit an attorney to conduct his client's business affairs in secret.") (citations omitted).

[20] *Koumoulis v. Independent Financial Marketing Group, Inc.*, 29 F. Supp. 3d 142, 146 (E.D.N.Y. 2014). *See also*, *Solis v. Milk Specialties Co.*, 854 F.Supp.2d 629, 633–35 (E.D. Wis. 2012) (denying privilege where attorney's advice as to "how to come into compliance with OSHA's understanding of regulatory requirements" was, "at bottom, business advice" and not legal advice); *In re Grand Jury Matter*, 147 F.R.D. 82, 85-86 (E.D. Pa. 1992) (documents and communications related to preparation of waste management plan to "achieve regulatory compliance" as part of regular business operation not privileged).

[21] *National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992). *See also*, *Rowe v. E.I. duPont de Nemours and Co.*, 2008 WL 4514092, at *9 (D. N.J. Sept. 30, 2008) ("The Court concludes that [the document] does not reflect the exercise of a predominantly legal function as opposed to business advice in a regulatory industry, and thus is not protected from disclosure by the attorney-client privilege.").

how and explain why" a document or communication is "legal advice – and not simply regulatory advice for a business purpose".[22] Courts throughout the country recognize and apply this distinction.[23]

**<u>Argument</u>**

There are several different deficiencies with Walgreens' objection to DR 14-15, each of which warrant overruling its objection.

*First*, Walgreens has not explained or even referenced any facts in its objection to carry its burden relative to the privilege claims which were rejected by DR 14-15. It has presented no facts to overturn the Special Master's ruling rejecting privilege claims where Walgreens "did not carry its burden of showing the communication was for legal advice".[24] This is especially true because Special Master Cohen not only made decisions on a document by document, page by page, and redaction by redaction basis,[25] but also because the context (or lack thereof) was important.[26]

---

[22] *See* DR 14-15 at 3.

[23] *Sherwood v. BNSF Ry. Co.*, 325 F.R.D. 652, 662 & 665 (D. Idaho 2018) (documents drafted with in-house counsel were not privileged where "there are also readily-apparent business needs related to operational safety and, in some circumstances, regulatory requirements"); *Marquette Transportation Company, LLC v. M/V Century Dream*, 2016 WL 11686640 at *2 (E.D. La. Dec. 13, 2016) ("No proof has been submitted by plaintiff in support of its work product or privilege claims; e.g. whether the materials were made in anticipation of litigation or to assist counsel in trial preparation, as opposed to some other non-protected purposes, such as regulatory compliance, safety enhancement or other ordinary course of business function;"); *U.S. ex rel. Fields v. Sherman Health Systems*, 2004 WL 905934, at *1 (N.D. Ill. 2004) (privilege not proven for document regarding "procedures for monitoring government regulations and implementing compliance standards); *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F.Supp.3d 1319, 1329 (N.D. Ga. 2015) (denying privilege where "the e-mail's purpose is almost entirely business-oriented . . . [t]he first three lines of the e-mail describe a routine business practice of maintaining a compliance program [and] [t]he next three lines direct [the corporate employee] a non-attorney—to meet with counsel alongside 'business to correct' the issue).

[24] *See* DR 14-15 at 3.

[25] *Id.* at 4 (listing rulings by document, and even by page – where some redactions were sustained and some overruled within the same document).

[26] *Id.* at 3 ("[S]ome of these privilege rulings were close calls requiring subtle judgments about the context, intent, and nature of the communications, and whether Walgreens carried its burden.").

Further, what can be gleaned from the unredacted portions of the partially produced documents, as well as from Walgreens' privilege log, is that many of the rejected privilege claims involve regulatory compliance and/or business matters surrounding "controlled substance dispensing", "suspicious order monitoring", "suspicious controlled drug order processing and reporting", etc.[27] The lack of information provided by Walgreens regarding these known topics supports the finding of DR 14-15 that "simply *saying* a document contains legal advice – and not simply regulatory advice for a business purpose – is insufficient".[28]

*Second*, because the attorney-client privilege is to be "strictly confined within the narrowest possible limits underlying its purpose",[29] the privilege "protects only those disclosures necessary to obtain informed legal advice *which might not have been made absent the privilege*."[30] Accordingly, as part of carrying its burden of proof, Walgreens is required to prove how and why the communications or documents in question would not have been made/created unless they were going to be kept confidential.  This requirement is especially important against the factual background that Walgreens needed to do this work, and likely made/created these communications and documents in the normal course of its regulatory compliance responsibilities.

*Third*, unlike communications and documents involving outside counsel, those involving in-house counsel are *not presumed* privileged.[31]  While some of the privilege claims at issue do not appear to involve any counsel at all, the privilege claims that do, involve only *in-house* counsel and are not presumed privileged.  This deficiency is magnified because Walgreens' in-house

---

[27] *See* Doc. 3501-5 (under seal copy of Walgreens' privilege log excerpts regarding the documents at issue herein – submitted as Ex. E to Plaintiffs' 9/23/2020 opposition to Walgreens' objection to Discovery Ruling No. 23).
[28] *See* DR 14-15 at 3.
[29] *Skeddle*, 989 F. Supp. at 900 (citation omitted).
[30] *Nice*, 2019 WL 6771156 at * 3 (citation omitted) (emphasis added).
[31] *See* Section "C", *supra*.

counsel routinely worked in business roles. For example, several of the privilege claims involve Dwayne Piñon – in-house counsel who also served as Walgreens' Controlled Substance Compliance Officer ("CSCO") – designated to answer employees' questions regarding controlled substances.[32] Walgreens failed to distinguish the roles of its in-house counsel, and did not prove how and why any such counsel were *necessarily* involved in providing *legal* advice relative to the overruled documents and communications at issue.

*Fourth*, the party asserting the privilege must prove that the *primary purpose* of the document or communication was the solicitation or provision of legal, rather than business, advice.[33] This includes proving the relevant background facts as well as distinguishing between "advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer."[34] Moreover, since regulatory advice is primarily for a business purpose, it is incumbent on the proponent of the privilege to differentiate how and why predominantly *legal* advice was involved and required in the communications at issue.[35] These requirements are particularly relevant because Walgreens has an entire "Pharmaceutical Integrity" team, led by non-lawyers, responsible for developing and implementing programs and procedures to address regulatory compliance.[36] But, Walgreens has not provided the necessary evidence distinguishing how and why the overruled documents at issue: a) went beyond what was done in order to satisfy the ordinary requirements of Walgreens's business, b) could not have been created by non-attorneys, and c) involved and required *legal* advice from attorneys acting in their role as counsel.

---

[32] *See* Ex. F to PEC's 7/22/2020 submission to Special Master Cohen at p. 4 (5/11/2011 Walgreens' Pharmacy and Health Care Code of Conduct).
[33] *See* Section "D", *supra*.
[34] *Alomari*, 626 Fed. Appx. at 570 (citation omitted).
[35] *See* Section "E", *supra*.
[36] *See* 7/19/2019 Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment (Doc. #: 1910-1) at 117-121.

8

Based on its objection and the language of DR 14-15, Walgreens did not meet its burden relative to those privilege claims overruled by Special Master Cohen.

Consistent with these points, DR 14-15 correctly found as "insufficient" those privilege claims where Walgreens was "simply *saying* a document contains legal advice – and not simply regulatory advice for a business purpose" because it was "Walgreens' burden to show how and explain why this [wa]s true", and it failed to do so.[37] Further, the statement in DR 14-15 that "if a document reflects (for example) Walgreens' internal discussion with counsel on how to comply with DEA regulations *as a matter of normal business operations*, then it is not privileged",[38] – is equally supported by the jurisprudence as well as by Walgreens' failures to provide the necessary factual evidence proving how and why any such communications were *primarily* legal as opposed to business-driven.

## **Cases Cited by Walgreens**

Walgreens cites two unpublished discovery rulings from Magistrate Judges within the Southern District of Ohio in support of its objection regarding the meaning of regulatory compliance in the context of proving attorney-client privilege. As an initial matter, each of these cases confirm that "when a client's goal is not legal advice, but is rather accounting, medical, or environmental advice, the privilege is inapplicable."[39] Moreover, each of these cases are distinguishable from the instant matter, as they involved outside counsel, and the privilege

---

[37] *See* DR 14-15 at 3. (Emphasis in original).
[38] *Id.* (Emphasis added). Notably, DR 14-15 did not simply overrule all privilege claims. Special Master Cohen evaluated each document (as well as each redaction), and the proof (or lack thereof) provided by Walgreens. The result was a finding that Walgreens met its burden of proof relative to some privilege claims and failed in carrying its burden relative to others. *Id.* at 3-4.
[39] *Graff v. Haverhill N. Coke Co.*, 2012 WL 5495514, at *10 (S.D. Ohio Nov. 13, 2012) (quoting *In re Grand Jury Matter*, 147 F.R.D. 82, 84–85 (E.D.Penn.1992)). *See also*, *Wilkinson v. Greater Dayton Reg'l Transit Auth.*, 2014 WL 953546, at *3 (S.D. Ohio March 11, 2014) (quoting *Alomari v. Ohio Dep't of Pub. Safety*, 2013 WL 5180811 at *2 (S.D.Ohio Sept.13, 2013)).

proponents proved that the documents at issue "involved a request for or provision of legal advice as opposed to regulatory advice for a business purpose."[40]

*Wilkinson v. Greater Dayton Reg'l Transit Auth.*, addresses "confidential communications between Defendant and its outside legal counsel, who are labor—and employment-litigation attorneys.  The communications arose during labor arbitrations and federal lawsuits and in connection with unfair labor practice charges and administrative agency complaints."[41]  Moreover, "the legal advice provided by outside counsel in the documents predominates over other information.  Indeed, it is impossible to glean any substantive business advice given by outside counsel on the face of the documents."[42]  *Graff v. Haverhill N. Coke Co.*, also involved outside counsel – this time requesting a regulatory audit to provide legal advice.[43]  Importantly, the *Graff* court found that the Defendant carried its burden, in part, because the special audit project was "discretely maintained and not intermingled with any other day-to-day business".[44]  Further, a subsequent Southern District of Ohio case explicitly rejected the broad reading of *Graff* suggested by Walgreens herein.[45]

---

[40] *See* DR 14-15 at 2-3.
[41] 2014 WL 953546, at *1.
[42] *Id*. at *3.
[43] 2012 WL 5495514, at *9 ("correspondence from [Defendant's] outside counsel . . . establishes that the audit was requested by counsel for SunCoke . . . to provide legal advice to SunCoke").
[44] *Id*. at *9-10.
[45] *See Shahbabian v. Trihealth, Inc.*, 2019 WL 6467213, at *4 (S.D. Ohio Dec. 2, 2019) ("The undersigned also discussed and specifically *rejected* the application of the legal authorities relied upon by [Defendant] in support of its assertion of privilege, including . . . an unpublished decision from this Court . . . *Graff v. Haverhill North Coke Co.*, Case No. 1:09-cv-670, 2012 WL 5495514 at **9-10 (S.D. Ohio Nov. 13, 2012) . . . Given the varied business and regulatory purposes . . . in the highly regulated industry of healthcare, the undersigned must respectfully disagree with the breadth of the *Graff* analysis in this particular context.  Such a broad reading of *Graff* also runs counter to the basic principle that privileges should be construed narrowly, and that much of the underlying accounting 'factual' data is not privileged.") (Emphasis in original).

## **Conclusion**

For the foregoing reasons, Walgreens' Objection to Discovery Ruling No. 14, Part 15 should be overruled.

Dated: December 8, 2020                                        Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

/s/Joseph F. Rice
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

/s/ Paul T. Farrell, Jr.
Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth St., 3rd Floor
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*


/s/Peter H. Weinberger
Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of December, 2020, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

/s/Paul T. Farrell, Jr.
Paul T. Farrell, Jr.

*Plaintiffs' Liaison Counsel*