# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION ) ) ) THIS DOCUMENT RELATES TO: ) *"Track Three Cases"* ) ) ) ) ) | CASE NO. 1:17-MD-2804 Judge Dan Aaron Polster **ORDER REGARDING APPORTIONABILITY AND APPORTIONMENT** |

Over a year ago, on September 4, 2019, the Court issued an order ruling on "the Motion of Plaintiffs Cuyahoga and Summit Counties for Partial Summary Adjudication of their Equitable Claims for Abatement of an Absolute Public Nuisance." *See* docket no. 2572 at 1 ("*Nuisance SJ-Order*"). The Court explained the issues raised in that motion by the Track One Plaintiffs as follows:

> Plaintiffs move for an order ruling as a matter of law that: (i) the opioid crisis constitutes a public nuisance, an essential element of their claim of absolute public nuisance; and (ii) upon a finding of nuisance liability, Defendants will be jointly and severally responsible for the equitable abatement of the alleged public nuisance, and may not rely on their affirmative defenses to the contrary.

*Id.* The Court denied both aspects of Plaintiffs' motion.

Regarding the second aspect, the Court concluded that Ohio Rev. Code. §2703.22 "does not bar joint and several liability," but "neither does the statute bar Defendants from arguing at trial that the fault of any Defendants found liable for creating the nuisance should be determined on a proportional basis." *Nuisance SJ-Order* at 6. The Court then ruled that "any apportionment decision

depends on factual issues to be determined at trial," and "denie[d] Plaintiffs' motion to the extent it seeks a ruling that public nuisance liability is joint and several as a matter of law." *Id.* at 6, 7.

The Pharmacy Defendants – apparently relying on the Court's statement it would determine "at trial" whether their liability (if any) would be joint and several, or instead apportioned – have submitted proposed jury instructions for Track One-B addressing apportionment. *See* docket no. 3449 at 106 (proposing that, if the jury determines a defendant caused a plaintiff to suffer a public nuisance, the jury should then be asked whether the harm is divisible (that is, apportionable); and if so, what the apportionment should be).[1]

The Court will issue a future Order explaining the jury instructions and verdict form it will use in Track Three, and setting out its rulings on the parties' positions and objections in that regard.[2] The Court issues this order now, however, to make clear that, if the jury finds a defendant is liable for public nuisance, then ***the Court*** will determine: (i) whether the harm is divisible and may be apportioned; and (ii) if so, what the apportionment will be. The parties should prepare for evidentiary presentations during the two phases of trial accordingly.

\* \* \* \* \*

The Court first addressed the roles the jury and the Court would play at trial over a year ago,

---

[1] The Pharmacy Defendants propose a verdict form that would ask the jury to determine whether numerous other entities besides themselves may also have contributed to the same public nuisance (and their contribution percentage), including: (1) other unnamed Pharmacies and Dispensers, (2) the Manufacturer Defendants, (3) the Distributor Defendants, (4) the Plaintiffs, themselves, (5) prescribing doctors, (6) hospitals, (7) the United States Drug Enforcement Agency, (8) the Ohio Board of Pharmacy, and (9) various other non-parties. *See* docket no. 3449 at 121-22.

[2] The Court is considering the parties' jury instruction proposals and objections submitted in Track One-B to draft the Track Three instructions (docket no. 3449), as well as their proposals in Track Three (docket nos. 3548 & 3550).

after seeking briefing from the parties. The Court concluded that "public nuisance *liability* will be determined by the jury. If liability attaches, the Court will separately fashion remedies." *Opinion and Order Regarding Adjudication of Plaintiffs' Public Nuisance Claims* at 1 (docket no. 2629) ("*Adjudication Order*") (emphasis in original). The parties' briefs made clear that virtually all of them agreed to this division of responsibility. *See id.* at 2 ("Plaintiffs . . . indicat[ed] acquiescence with the Court's intended approach. [And] [n]umerous defendants submitted a position paper explicitly consenting to a two-phase trial, where (i) the jury will determine nuisance liability and (ii) the Court will determine remedies, if any."); *see also id.* at 3 (after the jury determines liability, "[t]he Court will then render any decisions regarding equitable nuisance remedies, as agreed to by all parties.").[3]

Moreover, in the context of resolving a *Daubert* motion, the Court had earlier observed as follows:

> In Ohio, "[w]hen a nuisance is established, the form and extent of the relief designed to abate the nuisance is within the discretion of the court." 72 Ohio Jur. 3d Nuisances §49. Thus, the Court, exercising its equitable powers, has the discretion to craft a remedy that will require Defendants, if they are found liable, to pay the prospective costs that will allow Plaintiffs' to abate the opioid crisis.

Order at 3 (docket no. 2519).

These two statements underscore the point that the quintessential questions **for the jury** in this case are: (i) whether a public nuisance exists; and (ii) if so, was any defendant a substantial

---

[3] *See also* docket no. 2620 at 2 ("[Track One-A trial] Defendants do not object to separating the trial into separate phases addressing liability and remedies, and Defendants agree that (1) the issue of liability on Plaintiffs' nuisance claims is for the jury, Dkt. No. 2599, at 2-5; (2) whether any nuisance can be equitably abated, and if so, the crafting of a bona fide equitable remedy are for the Court to decide, *id.* at 6 n.7; and (3) the jury should not hear any evidence regarding any such remedy, *id.* at 6-7.").

factor in causing it? If the answers are yes, then it is *for the Court* to decide all matters connected to abatement, including: (a) whether and how the nuisance can be abated; (b) if abatement is possible, whether the costs of abatement can be apportioned to the defendants on some logical or reasonable basis, or instead those costs must be borne by defendants jointly and severally; and (c) if the costs can be apportioned, what the apportionment should be.[4]

Notably, the Court's conclusion that a jury will decide public nuisance liability was based at least in part on the fact that, in Track One-A, the Court was originally going to try both equitable and legal claims together: "The sequence of the trial must be so arranged that any issues common to both the legal and equitable claims are tried to the jury before the court decides the equitable aspects of the action without the jury." *Adjudication Order* at 5 (quoting Wright & Miller, 9 Fed. Prac. & Proc. §2302.1). In Track Three, the Court will be trying only an equitable claim (public nuisance), so it may not be strictly necessary to use a jury at all. Indeed, at least two other courts trying only public nuisance claims in opioid cases are not using a jury.[5] And courts in similar public nuisance cases have also tried questions of liability, abatement, and apportionment only to the

---

[4] This means that, to the extent the Pharmacy Defendants' evidentiary presentations to the jury at phase one of trial address whether *other actors* were substantial causes of the public nuisance, these presentations will be limited to the defense that Defendants, themselves, were not a substantial factor, and the nuisance was caused by others. Presentation of "other actor" evidence going to apportionability and apportionment will be made only to the Court at phase two of trial.

[5] The parties in the MDL Track Two cases in West Virginia have agreed the public nuisance claims will be tried without a jury. *See City of Huntington, W.V. v. AmerisourceBergen Drug Corp.*, case no. 3:17-CV-1362 (S.D.W.V. Aug. 12, 2020) (Order at docket no. 858). Similarly, the opioid public nuisance claim in Oklahoma state court was tried only to the bench. *State v. Purdue Pharma LP*, No. CJ-2017-816, 2019 WL 4019929 (Okl. Dist. Ct. Aug. 26, 2019).

bench.[6]

Even if not mandatory, this Court will still use a jury in Track Three to determine liability, for the salutary reasons stated. *See, e.g., id.* at 8-9 ("While a bench trial may insulate litigants from the inflamed passions of a jury, there is also great virtue in entrusting the judgment of any case – especially one with such broad social significance – to the collective deliberation of twelve citizens representing a cross-section of society, properly instructed by the Court, rather than reposing the entire responsibility in the mind and sensibilities of just one individual."). But it is clear that questions related to equitable abatement, including divisibility and apportionment of the costs of abatement, may be and should be determined by the Court. Therefore, the Court will not instruct the jury on apportionment as requested by Defendants, and presentation of evidence during the two phases of trial will be limited accordingly.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** December 9, 2020

---

[6] *See, e.g., People v. ConAgra Grocery Prod. Co.*, 227 Cal. Rptr. 3d 499, 568 (Cal. Ct. App. 2017) (cited with approval in *City & Cty. of San Francisco v. Purdue Pharma L.P.*, 2020 WL 5816488 at *36 (N.D. Cal. Sept. 30, 2020)) (in a claim for public nuisance caused by lead paint, affirming there was no right to a jury trial).