**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE NATIONAL PRESCRIPTION | ) | MDL 2804 |
| | ) | |
| OPIATE LITIGATION | ) | Case No. 1:17-md-2804 |
| | ) | |
| *This Document Relates to*: | ) | Hon. Dan Aaron Polster |
| | ) | |
| *All Cases* | ) | |
| | ) | |

**PLAINTIFFS' EXECUTIVE COMMITTEE'S REPLY MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR LEAVE TO TAKE TRIAL PRESERVATION DEPOSITION OF DAVID KESSLER M.D.**

The Plaintiffs' Executive Committee (PEC), on behalf of all MDL Plaintiffs with cases pending in the MDL, submits this reply in support of its motion for leave to take the deposition of David Kessler, M.D. on January 13, 2021, for the purpose of preserving his expert witness testimony for its possible use at forthcoming trials of MDL cases.

Dr. Kessler is a former Commissioner of the Food and Drug Administration (FDA) who provided an expert report for Plaintiffs in this MDL in the context of the CT1 bellwether case. *See* Ex. 1 hereto (Kessler Rpt.). The subjects of his expert opinions, as this Court recognized in ruling them admissible, were MDL-wide. They include:

> the [FDA] regulatory scheme, FDA practice and procedure, the FDA's relationship with pharmaceutical companies, the standard of care applicable to the pharmaceutical industry based on Kessler's training and experience, the Manufacturers' compliance with FDA regulations and industry standards, and the impact of the Manufacturers' compliance or lack thereof.

Opinion and Order Granting in Part and Denying in Part Motion to Exclude Kessler and Perri (Dkt. 2558) at 1-2. Defendants deposed Dr. Kessler on the facts he is aware of and on his opinions on these topics over two days in CT1. He later provided an expert report

2111158.1

and discovery deposition and *Frye* hearing testimony on the same topics and opinions in the New York litigation.

Defendants now raise a smattering of arguments for why Plaintiffs with MDL cases should not be permitted to take a preservation deposition of Dr. Kessler to preserve the possibility of using these same opinions at trial. All or nearly all of Defendants' arguments go to the future admissibility of these opinions, an issue that is not now before this Court, rather than to the question of whether Plaintiffs may *take* the deposition, that is presented. Indeed, one of the cases Defendants attached to their Opposition makes this exact point *in holding that the plaintiff in another litigation may take a preservation deposition of Dr. Kessler. See Hamilton v. Novartis Pharms. Corp.*, No. 37-2013-00070440-CU-MM-CTL (Cal. Super. Ct. Dec. 22, 2020) (Dkt. 3598-2 herein) at pdf pp. 6-7 ("Alright, Plaintiffs have persuaded me at this point to allow the deposition. I am not making any ruling on whether that deposition will ever see the light of day in front of a jury, if, in fact, Dr. Kessler ends up being the head of the FDA."); *see also Weist v. E.I. Dupont De Nemours & Co.*, 2009 U.S. Dist. LEXIS 138325, at *8 (W.D.N.Y. Aug. 27, 2009) ("[T]he better course is to preserve Dr. Michaels' testimony now and permit defendant to raise issues regarding the admissibility of that testimony before the trial judge when the trial is imminent and when facts have replaced speculation as to Dr. Michaels' availability, notoriety, and necessity as a witness."). In any event, Defendants' arguments also are incorrect or at least highly suspect, and Plaintiffs expect that Dr. Kessler's deposition testimony will be ruled admissible by the trial courts.

2

Defendants contend that a trial preservation deposition of Dr. Kessler would cause them "extreme prejudice" because his opinions are specific to "the practice of medicine *in a plaintiff's jurisdiction*" and jurisdiction-specific discovery has not taken place yet in pending cases. Mfr. Defs' Opp. (Dkt. 3598) at 12 (emphasis in original). This is incorrect. Dr. Kessler's opinions on FDA practice and pharmaceutical industry standards of care are quintessential MDL-wide or national evidence. Defendants cherry pick three Ohio-specific references from the 320-page CT1 report to try to show otherwise, *see id.*, but each clearly is a specific or localized "example" of a defendant's national marketing practice. Moreover, to the extent any jurisdiction-specific evidence truly *were* necessary to a defendant's cross-examination, *see id.* at 11 ("[A] premature deposition of Dr. Kessler . . . would deprive defendants of the right to cross examine him with those [New York] documents in hand."), that defendant can raise that as an objection to admissibility of the deposition testimony in that specific case. This is not an argument for prohibiting *every* Plaintiff from trying to preserve Dr. Kessler's opinion testimony for their cases.

Defendants also contend that the expert reports and discovery depositions that Dr. Kessler has already given in both CT1 and the New York case are "irrelevant" because these do not relate to any other case. *See id.* at 10 ("This trial preservation deposition is not related to Track 1 . . . ."); *id.* at 10 n.5 ("The lack of report [in any other case] in and of itself should be enough to bar plaintiffs from deposing Dr. Kessler."). This, too, is incorrect. Dr. Kessler's opinions about FDA practice and pharmaceutical industry standards of care are equally applicable to other MDL cases addressing the exact same conduct as in CT1, and there is no prohibition against Plaintiffs in other cases using his

3

CT1 report on this conduct.[1] Dr. Kessler's CT1 and New York reports, and the testimony these same defendants elicited from him in depositions and at his New York *Frye* hearing, thus *may* provide the basis for Plaintiffs' use of his trial deposition testimony in their cases, which again involves a question of admissibility to be decided by the remand courts at the time of trial.[2]

Defendants also argue that a "rushed January 13 date in the middle of a COVID-19 spike also does not allow [them] adequate time to prepare for Dr. Kessler's trial examination." Mfr. Opp. at 10; *see also id.* at 1 (referencing deposition to be taken "just seven days" after issuance of notice). Defendants are not prejudiced by this schedule. Defendants have been on notice of a possible trial preservation deposition of Dr. Kessler since at least mid-December. *See* New York Plaintiffs' request for conference re Kessler preservation deposition, filed Dec. 24, 2020 (Ex. 2 hereto) at 3 ("Plaintiffs met and conferred with Defendants on December 18 regarding the scheduling of this deposition . . . ."). Moreover, since the subject of the preservation deposition is the opinions in Dr. Kessler's CT1 and New York reports on which Defendants have deposed him in both cases (and obtained *Frye* hearing testimony in New York), they cannot credibly claim

---

[1] *See, e.g., Ohio State Troopers Ass'n v. Point Blank Enterprises, Inc.*, 2020 U.S. Dist. LEXIS 58984, at *39 (S.D. Fla. Apr. 3, 2020) ("The Prior Case is only important to mention because Stromborn's affirmative expert report in this case is the exact same affirmative expert report tendered in the prior case."); *id.* at *45 (finding admissible); *Luong v. NAPA State Hosp.*, 411 F. Supp. 3d 615, 630 (N.D. Cal. 2019) ("The expert report from Dr. Kupers was technically submitted in a different case . . . . However, Plaintiffs indicate they will be using Dr. Kupers as an expert in their case as well."); *id.* at 642 (relying on report), *rev'd on other grounds*, 2020 U.S. App. LEXIS 40057 (9th Cir. Dec. 22, 2020). Indeed, Dr. Kessler's expert report in the New York cases draws heavily upon, and is virtually identical to, his CT1 report.

[2] The Distributor and Pharmacy Defendants both state that the opinions in Dr. Kessler's CT1 and New York reports and testimony do not address them. *See* Distr. Opp. (Dkt. 3597) at 1-2; Pharm. Opp. (Dkt. 3599) at 1; Small Distr. Opp. (Dkt. 3600) at 1-2. To the extent this is so, neither set of Defendants can claim to be prejudiced by Plaintiffs taking a trial preservation deposition based on these same opinions.

2111158.1

either surprise or lack of opportunity to prepare for any cross-examination they may choose to take.

Defendants separately raise a number of arguments challenging Dr. Kessler's unavailability for trial in the pending MDL cases. They contend that Plaintiffs fail to establish the expected duration of Dr. Kessler's service on the COVID-19 Advisory Board. *See id.* at 5. This is Plaintiffs' precise point. Based on his role as Co-Chair of the COVID-19 Advisory Board and the unpredictable nature of the pandemic, Dr. Kessler has requested that the MDL Plaintiffs conduct a trial deposition on January 13, 2021 to *ensure* the preservation of his opinion testimony. *See* Motion (Dkt. 3594) at 1-2. This is grounds for finding that an expert is unavailable for purposes of now preserving his testimony.[3] The *possibility* that the pandemic might end before the next MDL trial does not change the fact that there is a substantial likelihood that it will not and that his Taskforce work will render him unavailable when the next MDL case goes to trial. In any event, whether or not Dr. Kessler actually ends up being unavailable is a question for the courts to decide if and when plaintiffs seek to use his preserved deposition testimony at the time of trial.

Defendants then argue, curiously, both that "rumors that Dr. Kessler may . . . head the FDA once again" do "not make him unavailable[,]" and that *if he does head the FDA*, then federal regulations "would plainly preclude Dr. Kessler from testifying at trial." Mfr. Opp. at 6. Both of these seemingly contradictory arguments are not only incorrect,

---

[3] *See, e.g., In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. 1493, 1502 (D. Colo. 1989) ("Plaintiffs' sole basis for their assertion of unavailability was that Mr. Langdon lived outside the 100 mile radius established by Rule 32. Plaintiffs specifically denied that Mr. Langdon was unavailable due to illness or job-related commitments.").

but also irrelevant to the pending motion. Plaintiffs' motion is based not on "rumors" about future appointments, but on Dr. Kessler's *present* appointment as COVID-19 Advisory Commission Co-Chair. Thus, it is only *Defendants'* arguments about the effect of Dr. Kessler hypothetically being re-appointed to head the FDA that are entirely speculative in nature. This Court should reject this very same speculation as grounds for finding that a preservation deposition would be futile based on any asserted bar applicable to federal employees, <u>which a federal agency may or may not choose to invoke</u>.[4]

That is precisely the flaw in Defendants' reliance on the primary case they cite and attach to their opposition. *See In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-md-2734 (N.D. Fla. Jan. 5, 2021) (Dkt. 3598-2 herein) at 9-10 ("The thrust of Plaintiffs' motion also rests on untenable speculation about Dr. Kessler's availability. Plaintiffs' suggestion that Dr. Kessler will be unavailable to testify at trial because he is a government employee is based on a news article that has already proven false in other respects."). Here, it is only Defendants themselves, not Plaintiffs, who make arguments based on Dr. Kessler's hypothetical re-appointment as FDA Commissioner. For the same reasons the court in *Abilify* rejected this speculation as grounds for finding unavailability, this Court should

---

[4] It is for this very reason—that a federal agency may or may not choose to invoke a bar to its employee testifying—that there is a serious question whether private litigants like Defendants here would ever have standing to object to Dr. Kessler's trial testimony on the ground that he is (or may again become) a federal employee. *See, e.g.*, *U.S. for Use & Benefit of Treat Bros. Co. v. Fid. & Deposit Co. of Maryland*, 986 F.2d 1110, 1119 (7th Cir. 1993) ("Thus, regardless of whether [the expert witness] received permission to testify in strict accordance with the letter of the Army regulations, we believe that [the party moving to exclude] does not have standing to claim a violation based upon the provisions at issue.").

2111158.1

reject this very same speculation as grounds for finding that a preservation deposition would be futile based on any asserted bar applicable to federal employees.[5]

In sum, Defendants in their oppositions do not and cannot establish that they will suffer any prejudice from Plaintiffs being permitted to take a trial preservation deposition of Dr. Kessler. Defendants' remaining arguments are both misplaced because they address questions of later admissibility not presented in this motion to this Court, and are either incorrect or else highly suspect in any event. Defendants will have plenty of opportunity to challenge the *use* of Dr. Kessler's testimony at any future trial once it has been preserved.

## CONCLUSION

For all of the reasons set forth herein, the Court should order that Plaintiffs may take the trial preservation deposition of Dr. Kessler on January 13, 2021.

---

[5] The *Abilify* court also disallowed the preservation deposition because it had been requested after the close of discovery in that specific case, which occurred after the issue with Dr. Kessler was raised. *See Abilify*, *supra*, at 1 ("Plaintiffs do not demonstrate good cause and excusable neglect to modify the Court's scheduling order to allow for this belated deposition."). Here, the Court should not adopt this argument both because there is no discovery scheduling order that the deposition would violate and also because courts in the Sixth Circuit, including this Court, hold that a trial preservation deposition *is not discovery* so that any discovery-related order would not apply to it. *See, e.g., Rayco Mfg., Inc. v. Deutz Corp.*, 2010 U.S. Dist. LEXIS 3153, at *9 (N.D. Ohio Jan. 14, 2010) ("Trial depositions . . . are not treated as part of the discovery process to which the Rule 30(a)(2)(A)(i) ten-per-side deposition limit applies."); *Burket v. Hyman Lippitt, P.C.*, 2008 U.S. Dist. LEXIS 30088, at * (E.D. Mich. Apr. 11, 2008) ("[T]his Court's scheduling order setting a date by which discovery shall be completed was intended to set a date to close discovery; it had nothing to do with *de bene esse* depositions."). The *Abilify* court also erred in holding that Rule 32(a)(1)(B) would prohibit future use of Dr. Kessler's deposition if he were re-appointed FDA Commissioner because the Rule purportedly requires treatment of deposition testimony as though it were being given live *for all purposes*. *See Abilify*, *supra*, at 11. It does not. Rule 32(a)(1)(B) says something quite different—that the deposition testimony must satisfy the same Federal Rules of Evidence requirements for admissibility that trial testimony would have to satisfy.

7

Dated: January 8, 2021

Respectfully submitted,

/s/ *Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (fax)
jrice@motleyrice.com

Paul T. Farrell, Jr.
FARRELL LAW
422 Ninth Street, 3rd Floor
Huntington, WV 25701
(304) 654-8281
paul@farrell.law

*Plaintiffs' Co-Lead Counsel*

/s/ *Peter H. Weinberger*
Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

8

2111158.1

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of January, 2021, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

/s/ *Peter H. Weinberger*
Peter H. Weinberger

*Plaintiffs' Liaison Counsel*