1          UNITED STATES OF AMERICA
      FOR THE NORTHERN DISTRICT OF OHIO
2              EASTERN DIVISION

3              - - - - -

4

5   IN RE:  NATIONAL PRESCRIPTION        )
    OPIATE LITIGATION                    )
6                                        )  Case No.
    THIS DOCUMENT RELATES TO:            )  1:17-MD-2804
7                                        )
    All cases                            )  Honorable
8                                        )  Dan A. Polster
                                         )
9

10             - - - - -

11      TRANSCRIPT OF PROCEEDINGS OF ZOO FORMAT

12    HEARING BEFORE JUDGE DAN A. POLSTER, JUDGE OF

13    SAID COURT, ON MONDAY, JANUARY 11TH, 2020,

14          COMMENCING AT 5:00 O'CLOCK P.M.

15             - - - - -

16

17  Court Reporter:        GEORGE J. STAIDUHAR
                           801 W. SUPERIOR AVE.,
18                         SUITE 7-184
                           CLEVELAND, OHIO 44113
19                         (216) 357-7128

20             - - - - -

21

22

23

24

25

1            P R O C E E D I N G S

2            THE COURT:  This is a video motion hearing,

3    an MDL, the opioid MDL, 17MD2804 on the PEC's motion to

4    take a trial preservation deposition of one of their

5    experts, Dr. David Kessler.  It was filed last week.

6    There were responses.

7            There was a reply, and there was a request

8    by the manufacturing Defendants to have oral argument.  I

9    generally don't have oral argument on motions.  I decided

10   to grant that request here.  I don't need anyone to argue

11   what they wrote.  I can read.

12           I read very carefully, looked at the cases,

13   but the reason that I granted the request was that I have

14   a number of questions that I need to have answered so I

15   can make an informed decision.

16           So I will answer the questions, and then

17   after we have that discussion, then, if counsel want to

18   add anything at the end, that's fine.

19           All right.  I am first trying to determine

20   as best as I can tell from looking at Dr. Kessler's

21   report -- it is a 300-page report.  I didn't read it

22   exhaustively but I skimmed it -- it appears that he is

23   being offered as a trial witness against only

24   manufacturers and not distributors and pharmacies.

25           Is that correct?

1          MR. LANIER:  Your Honor, Mark Lanier.  I

2     will be arguing for the Plaintiffs for most of this.

3          That is not.  We are looking to take his

4     deposition in the broader scope of the MDL, and that

5     means that he has got some opinions that he offers, that

6     will be relevant applying across the board beyond just

7     the manufacturers.

8          I am talking specifically about his opinions

9     on what is the responsibility of the FDA, what does it

10    matter whether or not people follow what the FDA

11    regulations?  What's the role of the FDA in monitoring

12    this stuff?  What does it mean to promote opioid usage

13    through key opinion leaders?  What does it mean to do it

14    through front (sic groups.

15          So he has a swath of generic testimony that

16    would be relevant, regardless of who the Defendant is.

17          THE COURT:  Okay.  On a related question

18    then, Mr. Lanier, is this testimony you are seeking to

19    preserve generic across the board?  Is anything that

20    Dr. Kessler is going to say tied to any particular

21    Plaintiff or Plaintiffs.

22          The Plaintiffs in this case, of course, are

23    cities and counties.  And in state cases they are states

24    as well as cities and county.

25          MR. LANIER:  What we are seeking to offer

1    here is generic testimony that would apply to most any

2    Plaintiff, whoever wanted to play it in their case,

3    assuming, of course, that it meets the requirements of

4    the particular jurisdiction and all of the accouterments

5    that go along with it.

6                   But this is generic.  It is not specific for

7    one of the counties like CT3 or San Francisco or Chicago,

8    one of the remanded cases or any of that.  It is across

9    the board.

10                  THE COURT:  All right.  As I understand it,

11   Dr. Kessler is co-chair of the Biden transition team's

12   COVID response, something like that.  Is that right,

13   Mr. Lanier?

14                  MR. LANIER:  Yes, your Honor.  He is the

15   COVID-19 Advisory Commission Co-chair.

16                  THE COURT:  All right.  The Biden transition

17   is going to end, I believe, at noon next Wednesday when

18   President-Elect Biden becomes President Biden.  There

19   will be no more transition.  At that point, there is a

20   Biden Administration.

21                  MR. LANIER:  Yes, your Honor.

22                  THE COURT:  Is. Kessler's role as COVID-19

23   Advisory Commission co-chair planned to continue past

24   noon on Wednesday, January 20th?

25                  MR. LANIER:  Your Honor, I personally spoke

1    with Dr. Kessler on this very subject in anticipation of

2    your question.  So I am giving you the best answer that I

3    can.  I understand my ethical requirement of candor to

4    the tribunal, which, whether it was required or not, I

5    would certainly always want to give you.  And that

6    requires me to answer this very carefully.

7              I do not know what President-Elect Joe

8    Biden will do when he becomes president, but I do not

9    want to disinform this Court; I believe based upon

10   information and belief, without with divulging any

11   announcement or fanfare that may come forward, that as of

12   noon on January the 20th, we will find that Dr. Kessler

13   is tasked with a job that is every bit as time consuming

14   but is not of an interim nature.

15             I think that's the best way I can answer the

16   question at this point in time, your Honor.

17             THE COURT:  All right.  I believe, based on

18   what I understand of the law, that a full-time Government

19   -- federal government employee may not act as a private

20   pay -- as a paid expert for parties in private

21   litigation.  You work for the Government.  You get a

22   salary.

23             You can't -- and you can't use the

24   imprimatur of the Government to weigh in on behalf of any

25   private litigant.  I believe if Dr. Kessler or anyone

1    else, me, for example, I can't testify as, you know, as

2    an expert in any private litigation.

3                So -- and I also have serious doubts as to

4    whether if a person cannot testify as an expert in a

5    trial because he or she is a full-time federal government

6    employee, whether that person's prior deposition can be

7    substituted in lieu of live testimony for exactly the

8    same reason.

9                And what everyone was dancing around with or

10    hinting in pleadings was whether the Plaintiffs' concern

11    that Dr. Kessler will be unavailable is because he will

12    have a new position, a full-time position in the Biden

13    Administration.

14                It wouldn't be a question of him just being

15    busy; he wouldn't be allowed to testify, period, because

16    he is a Government employee.  So is that what we are

17    talking about here?

18                MR. LANIER:  Yes and no, your Honor.  That

19    is a very real concern.

20                The yes part is, that's a very real concern,

21    that Dr. Kessler will have a full-time Government

22    position effective noon on January 20th.

23                The no part of it, your Honor, while he

24    can't do moonlighting and get paid as an expert while he

25    is working for the Government, he certainly is able to

7

1    give a deposition now, which then a determination can be

2    made whether it can or cannot be used later.

3              And my understanding of the law is that we

4    would have to ask permission of DOJ or whomever is

5    overseeing the work of Dr. Kessler once he has a

6    full-time position if such does arise.  We would have to

7    seek their permission for it to be played.

8              He certainly could not start moonlighting

9    and get money on the side.

10             By the same token, if he is a full-time

11   employee as the Court has seen over and over again with

12   our Toohey depositions that have been taken, we still

13   have an opportunity to depose someone with the Government

14   with testimony but not pay them for it in the process.

15             And so our view of this is, you have got an

16   MDL.  Right now it is in your care, custody, and control

17   to oversee this discovery.  We think that it is highly

18   likely that we will be allowed to play this in some way,

19   shape, form fashion in the future.  If we cannot, we

20   cannot.

21             But at least if we've got it in the bag, we

22   have got an ability to have it should we be legally

23   allowed to play it, should the Justice Department allow

24   us to play it, or can Dr. Kessler transfer from that job

25   to another job but has lost the ability to do this kind

1    of work for some reason or another, whether he goes --

2              THE COURT:  All right.

3              MR. LANIER:  These --

4              THE COURT:  First of all, any Government

5    employee, if he or she has stacked testimony, available

6    can be deposed.  You have to go through the Toohey

7    regulations, but that's as a fact witness.  You cannot

8    exempt in any way, shape, or form -- I am not exempt.

9              If someone thinks I have facts relevant to

10   litigation, they can call me as a witness.  All right.

11   Same with Dr. Kessler if he is a Government employee.

12             It is being an expert on behalf of a party

13   that is totally different.

14             All right.  Look, I had no idea, one, I

15   don't know what -- if Dr. Kessler is going to have a

16   position -- and I have no idea exactly what the law is --

17   obviously, there is a great concern about using one's

18   position directly or indirectly on behalf of a private

19   litigant, and so that really is -- that's what I thought

20   this was about.

21             And everyone was dancing around because

22   there is no way -- these trials if and when they happen

23   are between one to four months in length.  Mine is one

24   month.  The Judge in West Virginia is allowed four for

25   his.  Okay.  There is no one, no matter how busy they

1    are, that couldn't squeeze away a couple hours sometime

2    within one to four months to testify, particularly since

3    the Judge could probably let someone who is super busy

4    and out of town testify by video.  It has been done.  It

5    is no big deal.

6              So that's what we are talking about, is that

7    Dr. Kessler -- there is a good chance he will become a

8    full-time Government employee, and he would no longer be

9    able to give testimony as an expert.

10             And the question is, if he had already given

11   it and it was preserved, it might or might not be able to

12   be admissible under some circumstances.  So that's what

13   we are talking about.

14             So it is sort of what I thought, but -- it

15   would have been a lot better if, candidly, the Plaintiffs

16   had just said that.  Okay?  And that that's what you were

17   trying to do.  I surmised that, but we had a lot of time

18   wasted.  All right.

19             Dr. Kessler obviously has prepared his

20   300-page report.  Everyone has had it for sometime.  He

21   has been deposed in the MDL.  He has been deposed in the

22   New York litigation that Judge Gargiulo is overseeing,

23   and I guess he gave fry (sic) testimony as well.

24             Is his trial testimony, trial preservation

25   testimony going to be based exclusively on the expert

1    report that he has prepared and submitted to everyone?

2                    MR. LANIER:  Yes, it is, your Honor.

3                    THE COURT:  All right.  So then potentially,

4    Mr. Lanier, if Dr. Kessler could be a witness in my

5    trial, if he is -- I mean, my trial, my October trial

6    Track 3 is just pharmacies, and you said it is possible

7    he could give generic testimony.  It is not tied to

8    Trumbull or Lake County but testimony on the

9    responsibility of the FDA and FDA regulations, et cetera.

10                    Is that correct?

11                    MR. LANIER:  That is correct, your Honor.

12                    THE COURT:  All right.  Well, what I need to

13   hear then -- well, it is really from the Defendants.  I

14   need to know if Dr. Kessler's trial preservation

15   testimony is based exclusively on his report about which

16   he has already been deposed in this MDL and in the New

17   York State case, what, if any, prejudice there would be

18   to the Defendants if I direct that his trial preservation

19   testimony be taken Wednesday?

20                    And I guess he said that he is available

21   Wednesday.

22                    MR. LANIER:  That's correct, your Honor.

23                    THE COURT:  That's where the Wednesday came

24   from.

25                    MR. LANIER:  Yes.  Your Honor, I say that

1    because there was another date that he might have had

2    available.  We tried to pick the latest date we could,

3    but there is another case where they are doing this exact

4    same thing with him and taking his deposition on January

5    18th.  So our only shot is the 13th.  I looked for any

6    other advisable date.

7              THE COURT:  Okay.  So I guess I need to hear

8    from the Defendants about any prejudice.

9              Again, we are not deciding whether or not

10   this deposition would be admissible in my case, Track 3

11   in the West Virginia trial that is set for May, and any

12   of the other MDL cases that exist now or in any future

13   MDL case or any state case.

14             The admissibility, I am not even hearing

15   argument on that.  That's down the road and will have to

16   be decided by the Judge who is presiding over any trial

17   over which the Plaintiffs seek to admit the deposition.

18   I'm only deciding whether or not the Plaintiffs can take

19   Dr. Kessler's deposition on Wednesday.

20             So I would like to hear from any of the

21   defense counsel who want to speak to that.

22             MS. WELCH:  Understood, your Honor, Donna

23   Welch from Kirkland, the Allergan Defendants.  And I will

24   take the lead in the first instance for the manufacturing

25   Defendants, though others may choose to weigh in.

1        Plaintiffs have known about the appointment

2    of Dr. Kessler to the transition task force since

3    November 9th.  They have known since middle of November

4    about, at least, the rumors that he was on the short list

5    to be considered to be appointed for FDA Commissioner or

6    another senior appointment in the Biden Administration.

7        They chose to wait, your Honor, until last

8    Wednesday to notice this motion in the MDL, to notice a

9    deposition presumably in all cases pending in the MDL,

10   and to unilaterally set that deposition for two days from

11   now, January 13th.

12       At a minimum, there is significant and undue

13   pressure and undue burden and unfairness on Defendants to

14   expect us to proceed in less than a week's time to do a

15   cold cross of a causation expert for purposes of trial in

16   a hypothetical case or in every case pending in the MDL.

17       While we have his reports and opinions

18   disclosed in Track 1 and while we have his report in

19   New York, what we don't have is discovery in any of those

20   other jurisdictions that could potentially be used to

21   cross Dr. Kessler.

22       But it goes well beyond that, your Honor.

23   We should be entitled -- the Defendants should be

24   entitled to cross examine Dr. Kessler live with the

25   benefit of his opinions in that case consistent with the

1    rules, with disclosures, with opinions, with discovery in

2    hand live in front of the jury that will be seated to

3    hear a particular Plaintiff's claim, and Plaintiffs here

4    are moving to do this on an expedited emergency basis

5    when no one knows what will happen next week.

6            We don't have a crystal ball, and we

7    certainly don't have an affidavit in support of this

8    motion from Dr. Kessler, but Judge Polster, you made the

9    point better than I could, which is no matter how busy he

10   is, there will certainly be time that he can find to be

11   deposed or to be deposed or to put on testimony at trial

12   consistent with the rules and without putting Defendants

13   in a position where we are asked to cross this witness in

14   a matter of a few days time.

15           Sitting presidents, including President

16   Clinton were deposed while they were in office.  The

17   notion that, if he is appointed, he is appointed, he will

18   be immediately confirmed and become so busy that there is

19   not a single day --

20           THE COURT:  We have -- Donna, I thought I

21   made clear from my discussion with Mr. Lanier the

22   Plaintiffs aren't contending he will be too busy.  All

23   right.  They know that if he is a Government employee, he

24   cannot come on the witness stand live and testify as an

25   expert because the first question is "Dr. Kessler, where

1    do you work?" and if he says "I work for the Government,"

2    he is putting the Government, the imprimatur of the

3    federal government on one side or another.  He cannot

4    testify as an expert; as a fact witness.

5            But they cannot -- so there seems to be a

6    strong likelihood that as of January 20th Dr. Kessler

7    will become ineligible, not unavailable, ineligible,

8    legally, ineligible to be an expert witness for as long

9    as he holds that appointment.

10           Now, some people hold Government appointment

11    for a long time and some are short.  Okay.  And who knows

12    when there will be a trial, but that's what we are

13    talking about, and the Plaintiffs believe they would have

14    an argument, that since he is an important witness and

15    there may not be anyone else who can give the kind of

16    testimony that he gave, that if there is a trial

17    preservation deposition, they should be allowed to use it

18    at trial.

19           Now, I am not sure they are right.  In fact,

20    I have grave doubts about it just for a whole lot of

21    reasons, and I may have to rule on it.  So I am saying,

22    if it is me, I have grave doubts about whether or not I

23    would allow it.

24           MS. WELCH:  We do not believe --

25           THE COURT:  But I am not deciding that

1    today.  I am not deciding that today, and in fact, if it

2    turns out that there would be a whole lot of things that

3    you want and be able to do in cross-examining him when

4    and if that eventuality occurs that you can't do

5    Wednesday, that would be another argument why they

6    shouldn't be allowed to use the deposition, but again,

7    this is all speculation.

8            MS. WELCH:  We understand, your Honor.  We

9    don't think there is any authority that suggests that

10   they can depose and take testimony of Dr. Kessler today,

11   and if he becomes ineligible on January 20th, then play

12   that testimony.  So the property remedy in our view is to

13   wait and see what happens.

14           And if he is eligible as of January 20th or

15   February 20th, there is plenty of time to proceed in a

16   way that does not prejudice Defendants.  But to require

17   Defendants to move forward in two days time with a trial

18   cross of this witness under these circumstances, that's

19   patently unfair.

20           The point, your Honor, that he is an

21   important witness that they would like to present, the

22   facts, your Honor are Dr. Kessler has been disclosed as a

23   witness in two of three opioid cases involving the

24   manufacturing Defendants that have preceded to expert

25   discovery, Track 1 of the MDL in New York.

1          In the Orange County case pending before

2    Judge Wilson in California state court, which is a case

3    against it, is manufacturing Defendants' expert

4    disclosures were made in December, and Plaintiffs opted

5    not to disclose Dr. Kessler in that case.

6          It is not as if Plaintiffs can't proceed to

7    trial against the manufacturing Defendants without

8    Dr. Kessler, and if he is eligible and available to

9    testify in a case that goes to trial, that's fair, and

10   that's consistent with the rules.

11         But it is prejudicial and highly prejudicial

12   for Defendants to require us to do a remote trial cross

13   for use in potentially hundreds of cases around the

14   country on two days notice.  Plaintiffs have known about

15   this for two months.  Plaintiffs could have brought this

16   issue to us and to your Honor before there was a single

17   day that Dr. Kessler is apparently available.

18         We have significant questions whether a

19   deposition of this witness can even be accomplished in a

20   single day.  We believe Defendants at a minimum would

21   need a full day with this witness, particularly under

22   these circumstances, and again, the unfairness goes

23   beyond the procedure of, is this witness ineligible to

24   testify?  Is he truly unavailable to testify?

25         But the prejudice is a trial cross with less

1   than a week's notice of a key causation expert under

2   these circumstances.

3              THE COURT:  Well, isn't it the case -- this

4   has been teed up for several weeks in New York, the exact

5   same issue.  So Plaintiffs had raised this with the

6   Defendants in the middle of December.  They wanted to

7   take a trial preservation of Dr. Kessler before January

8   20th in the New York case.

9              So we have the same lawyers, the same

10  issues.  So everyone has been on notice since the middle

11  of December.  The thing is this:  If there is no trial

12  preservation deposition and Dr. Kessler is -- gets a

13  Government appointment on January 20th, he is lost to the

14  Plaintiffs as a witness as long as he holds his

15  Government employment.  All right?

16             So as long as he is a Government employee,

17  he may not testify as an expert witness in Track 3, West

18  Virginia, New York, anywhere else.  All right.  We know

19  that.  So you can drop him and hire another witness.

20             MS. WELCH:  Your Honor --

21             THE COURT:  So if he is deposed then and he

22  becomes a Government employee, then if they want to use

23  that deposition, then the Judge presiding over the trial

24  at which they want to use the deposition will have to

25  decide whether or not that deposition is admissible, and

1    I am sure the Defendants will oppose it for a whole lot

2    of reasons.  And the Judge will have to decide that.

3                MS. WELCH:  Your Honor, that's the status

4    quo.  The status quo for all litigants in all cases --

5    and MDL doesn't make an exceptional circumstance -- is

6    that a case goes into discovery and goes into expert

7    discovery, and if a certain expert is available or

8    willing to serve as an expert, that expert can be

9    retained and disclosed under the rules without unfair

10   prejudice.

11               There is no special right because this is an

12   MDL for Plaintiffs to try to use for time immemorial for

13   a witness who may become ineligible, who may become too

14   busy and decide those duties make him not want to serve

15   as an expert or experts.

16               But again, to force a trial cross

17   examination under these circumstances with Defendants in

18   two days is unfair.  And yes, we have known since right

19   before the holidays that they wanted to take a trial

20   preservation deposition in New York.

21               There are significant issues with respect to

22   New York, in particular, and discovery that has not been

23   produced in New York that are briefed before Judge

24   Gargiulo.  Your Honor, it wasn't until Judge Gargiulo set

25   a hearing with a Defendants' motion to preclude that

1    trial testimony on January 15th, that they rushed into

2    your Honor's courtroom seeking an MDL trial preservation

3    deposition.

4            If they want his testimony for purposes of

5    New York, Judge Gargiulo will decide whether that moves

6    forward, but they waited until the very last minute,

7    provided a single day, two days from now that this

8    witness can be available.  It is their motion.  There is

9    no affidavit as to unavailability.

10            There is no reason to believe there is not

11   another single time this individual could be deposed,

12   even before January 20th, giving Defendants at least a

13   little more time to prepare.  But again, the Plaintiffs

14   don't have some special right to use Dr. Kessler in every

15   case, and in fact, the facts show that they don't want to

16   use him in every case.

17            In the Orange County case they didn't even

18   disclose him.  It is not a requirement to go to trial

19   that they have Dr. Kessler.  He may become eligible or

20   ineligible.  He may be available or -- there is not an

21   emergency that allows them to do trial testimony on

22   Wednesday.

23            THE COURT:  Well, there is an emergency if

24   they know he is going to be ineligible on the 20th.

25   That's the emergency.  Okay?  And whether that -- whether

1  that emergency will let them use a deposition or not, I

2  have no idea, but I do know that the emergency will moot

3  the issue, and they will have to strike him as an expert

4  as long as he is a Government employee.

5  MR. SOLOW:  Your Honor, Andrew Solow for the

6  Endo Defendants.

7  Can I address your prejudice question?

8  THE COURT:  Okay.

9  MR. SOLOW:  Your Honor, you started out this

10  hearing by suggesting there is a report.  The fact is

11  that report under your Honor's order, which we looked at,

12  specifically applied only to Track 1.  There was a Track

13  1 report.  Your Honor raised New York.  New York was a

14  New York report.

15  There are references in the Track 1 report

16  to his causation opinions in Track 1; likewise, the same

17  from New York.  Mr. Lanier now indicates that Dr. Kessler

18  is offering a, quote unquote, generic opinion.  We don't

19  have a report in any case right now in the MDL.

20  Your Honor just issued the manufacturing

21  Defendants are not in it, a case management order for

22  Track 3 with disclosures.  There has been no disclosure

23  of that report there, let alone any case that we are in.

24  So why is that prejudice?  Because we have

25  not even had an opportunity, even if he serves the same

1    exact report, to depose him on these, quote unquote,

2    generic opinions.

3              And the fact that he doesn't care what

4    evidence there is in any jurisdiction in the 3,000 cases

5    in this MDL, he believes that opioid caused this

6    epidemic.  That's prejudice.  That's the federal rules.

7              THE COURT:  I assume you recognized that in

8    your questioning of him both in Track 1 and in New York.

9              MR. SOLOW:  Your Honor, but I get to raise

10   it in any case where he has a report.  If the rules say

11   -- the process is report, discovery deposition, so I can

12   ask those questions, not in front of a jury, then I can

13   decide what to ask a jury.  You asked --

14             THE COURT:  Well, weren't those questions

15   asked in Track 1?

16             MR. SOLOW:  About Track 1, and they were

17   asked in New York about New York.  Your Honor, I will

18   give you another prejudice example.  Mr. Lanier just

19   volunteered that he -- that Dr. Kessler has another

20   deposition in another case.  The whole point of one of

21   the rule 26 disclosures is, we get to see where else he

22   is an expert.

23             He doesn't get to lock in stone what he has

24   done and not disclose it to us since, his MDL Track 1

25   report.  That's the point, your Honor, there is no

1    report.  There is no deposition on these opinions, and

2    there shouldn't be a trial deposition.

3              MS. WELCH:  Your Honor, if I could make one

4    more --

5              THE COURT:  All right.  I would like to hear

6    Mr. Lanier's response to that, please.

7              MR. LANIER:  Thank you, your Honor.

8              Several matters I will give the replies to.

9    First of all, the prejudice that was listed first was

10   listed by Ms. Welch.  That was the date.  The Court on

11   its own argued my position --

12             THE COURT:  All right.  This idea of --

13             MR. LANIER:  Got it.

14             THE COURT:  There is no such thing as

15   generic testimony.

16             MR. LANIER:  Okay.  On that, your Honor, I

17   mean he is just wrong.  This is -- the report that has

18   been given for 30 hours of deposition have been given, is

19   exactly what he is going to testify to, and that is part

20   B of the report, the responsibilities under the FDA.

21   That's the report that was on file to you.

22             Part C of the report was whether or not

23   promotion deviating from FDA standards increases the risk

24   of abuse in endangering patient safety.  That's the

25   report, and that's what he is going to testify to.

1    Beyond that, the report continues to talk about whether

2    or not involvement with professional medical trade group

3    organizations expands the use of opioids and increases

4    the risk of abuse, and he will testify to that.

5              Those are generic, regardless of who the

6    Defendant is.  Those have been the report and the

7    fundamentals from the very beginning.  The Defendants

8    have known about this.  And this is no different in a way

9    than the genetically modified Rice case that Judge Perry

10   had in Missouri when there was a doctor who had testified

11   -- I can't pronounce his name very well.  It is a Greek

12   name.  It was Zandonakis.

13             And the Plaintiffs said he is old.  He

14   doesn't feel good.  He doesn't want to testify anymore.

15   Can we substitute a new expert?  She said no, you can't

16   substitute a new expert.  Just take his generic

17   deposition to be used in any generic case because they

18   are generic opinions that would apply across the board;

19   that if he doesn't want to testify, so be it.

20             You have still got to prove that he is not

21   available as a witness for some legitimate reason and

22   follow all the federal rules.  So I don't see any

23   prejudice here.  They have had well over a month to get

24   ready for the deposition.

25             The only reason we applied for it late in

1    your Court is because we realized -- not if the only

2    reason -- any reason why we applied for it late in your

3    Court is because the Judge in New York had set a hearing

4    date on it for Friday the 15th.

5              So the 13th being the deposition date makes

6    it tough to do that hearing and keep that deposition

7    date, which is two days before the hearing.

8              So immediately upon that point, while

9    everybody still had that day locked into their calendar

10   and was already prepping for that day, we noticed his

11   deposition.  So we just want to be able to take it.

12             THE COURT:  All right.  Mr. Solow,

13   Dr. Kessler isn't going to talk about causation in any

14   particular jurisdiction.  He is testifying as a general

15   matter that he believes this conduct leads to increased

16   opioid use, and he has said that, and he has been

17   cross-examined.

18             You have been able to take discovery,

19   multiple discovery depositions of him, and you can cross

20   examine him on that in the trial deposition.

21             MR. SOLOW:  And your Honor, that opinion in

22   Track 1 was that our marketing and our promotion and our

23   labels caused the opioid epidemic in Cuyahoga County and

24   Summit.  And we were entitled to discovery that your

25   Honor provided, and we were entitled to cross examine him

1    on other causes that were in Cuyahoga and Summit County,

2    and we will do the same in the state of New York and

3    Nassau and Suffolk.

4                    But you are prejudicing us by having him

5    give these generic opinions not tethered to any case and

6    not giving us the ability to cross examine these opinions

7    with the actual evidence that we are entitled to, in

8    fact, discovery and expert discovery in over 3,000 cases.

9                    So your Honor, that is the point, is in any

10   case down the pike, either as a bellwether or on remand,

11   just like in San Francisco and Chicago and West Virginia,

12   there is fact discovery, then expert disclosures, then

13   expert depositions, then if there is a trial.

14                   And your Honor, they are putting based on

15   a candidly a madeup unavailability on a week's notice,

16   they are telling us we are not giving you any fact

17   discovery.

18                   THE COURT:  It is not a madeup

19   unavailability.  If the man becomes a Government

20   employee, he is flatout unavailable.  It is not

21   madeup.

22                   MR. SOLOW:  Right.  But your Honor, so I was

23   addressing a prejudice point, but you raised a bigger

24   point.  How can it not be prejudicial to us that we are

25   going to take his deposition without any fact discovery

1    in the jurisdiction where it is possibly played without

2    any deposition discovery of the opinions in that

3    jurisdiction all because he may not be available.

4              Your Honor, we are going forward on a

5    shotgun schedule for a reason that you just said, this

6    will never see the light of day.  He cannot do today or

7    Wednesday what he can't do live.

8              And your Honor, if he is the Commissioner of

9    the FDA or any of the -- to quote Mr. Lanier -- with a

10   prominent position, and he is all over television before

11   jury selection, even after some Judge tells them not to

12   look, you are going to have him on the stand giving

13   opinions when he is taking press conferences from --

14             THE COURT:  I agree.  Mr. Solow, that's why

15   I said it is very unlikely that there is -- I have grave

16   doubts as to whether if Dr. Kessler is the Commissioner

17   of the FDA next October, whether he can -- whether his

18   deposition, even if I allowed it to be taken, can even be

19   played.

20             MR. SOLOW:  Exactly.  But I didn't address

21   that, your Honor.

22             In light of those grave concerns, then, you

23   are asking what's the prejudice of going forward

24   tomorrow, and I have given you two solid examples of

25   actual prejudice.  We have no discovery to cross examine

1      him for 3,000 cases.  We have no expert report.

2                  THE COURT:  First of all, you wouldn't have

3      -- you are not going to have discovery in 3,000 cases if

4      they call him in West Virginia in May.  You are not going

5      to have discovery in 3,000 cases if they call him in my

6      case in October.  You will have the discovery you have in

7      that case.

8                  MR. SOLOW:  Your Honor, I am --

9                  THE COURT:  Nothing else.

10                 MR. SOLOW:  My clients aren't in West

11     Virginia.  They are not in your case in Track 3.  So

12     let's talk about where my clients are:  Chicago and

13     San Francisco.  Okay?

14                 They have cross noticed that, and we will

15     address that and have motions pending there.  We are

16     getting case specific discovery there.  That's not done.

17     We will get an expert report.  We would get an expert

18     deposition.  So by letting this go forward, it is doing

19     exactly what I am talking about.  So yeah, there may

20     never be 3,000 opioid cases, but there are going to be

21     those four, and this is circumventing the orderly process

22     of the federal rules.

23                 MS. WELCH:  Your Honor, Donna Welch.

24                 Could I make one point about the report

25     because Mr. Lanier in his remarks talked again and again

1    about the fact that we have the report and we were able

2    to depose him on the report.

3              In addition to the fact that the

4    jurisdiction changes, a lot else has changed since the

5    Track 1 report was issued.  When Dr. Kessler put in his

6    Track 1 report, two thirds of that report are opinions

7    about Perdue.

8              The vast majority of deposition questioning

9    of Dr. Kessler for purposes of the discovery deposition

10   in Track 1 as a result was by Perdue about his Perdue

11   opinions.  And other things changed as well.  The

12   Defendants in a case change over time.  The claims in the

13   case change over time.

14             Just looking at the examples of the two

15   cases that have been remanded out, MDL, the first thing

16   Plaintiffs did when the Chicago case was remanded out of

17   the MDL was amend their complaint and drop the public

18   nuisance claim.

19             And they are proceeding on other claims with

20   different standards of proof where -- and we believe

21   reliance is required for purposes of all these claims --

22   but where it is clear that reliance by prescribers on the

23   actual statements made is critical.

24             So a lot changes jurisdiction to

25   jurisdiction that is not just discovery.  We have a

1    report, but it was a Perdue centric report, literally --

2    my client's name is not mentioned until page 200 of the

3    report.  A lot has changed, and the prejudice is immense

4    to move forward, to assume what he is going to say now

5    about my client that hasn't been disclosed.

6           THE COURT:  All right.  Mr. Lanier, I am not

7    going -- we are not going to drag this on too long.  The

8    Defendants are basically saying in this MDL there is no

9    such thing as a generic expert report that can be used

10    anywhere.

11           And so you don't have one, and so you can't

12    take a generic trial preservation deposition of an

13    expert.  That's what they are saying, and I understand

14    that argument.

15           What is your response to that?

16           MR. LANIER:  My argument is that they are

17    wrong.  There are generic arguments that are going to be

18    made in every case.

19           THE COURT:  That's different, of course.

20    They are not saying there aren't arguments that can be

21    made against a given Defendant, whether it is Summit or

22    Cuyahoga County or Lake or Trumbull County or the state

23    of New York.  You can make some of the same arguments.

24           But what they are saying, there is no such

25    thing as just a generic expert who can render opinions

1    that apply to everyone.

2                MR. LANIER:  Well, and I disagree.  I think

3    that's exactly what we are offering here with

4    Dr. Kessler, someone who can talk about the role of the

5    FDA, how information about a drug must be truthful, the

6    risks and benefits of the drug must be presented in a

7    balanced fashion, promotional statements --

8                THE COURT:  I understand he can make

9    generalizations, but it is only admissible if he ties it

10   to the particular case that is on trial.

11               MR. LANIER:  But you Honor --

12               THE COURT:  Say you call him next October, I

13   am not going to let him testify unless he says my

14   conclusions apply to the allegations in this case.

15               MR. LANIER:  Right.

16               THE COURT:  Brought by these two counties,

17   brought by these Defendants.  If he testifies in Chicago,

18   he has got to say my conclusions apply to whatever

19   Defendants there are and whatever claims the city of

20   Chicago has brought against them.

21               MR. LANIER:  Right.  But your Honor, within

22   the framework of that, it doesn't have to apply in a

23   singular fashion in the sense of only this case right

24   here and only this opinion applies here.

25               He can say in the United States of America

1    this is the situation, and that means it is all -- it is

2    a lesser included offense to talk about one county, but

3    it is talking about in a huge -- a national perspective

4    and then becomes relevant in an individual case that is

5    being tried.

6            So it doesn't have to try -- he doesn't have

7    to be the one to offer the opinion specifically to that

8    county.  For example, Dr. Limke is another one that we

9    have got who is a generic expert in a lot of ways, and

10   she will talk about the way that opioids work in the

11   brain.

12           Now, opioids don't work in the brain

13   differently in Cuyahoga County or in Trumbull County or

14   in Chicago or in San Francisco.  That's --

15           MR. WEINBERGER:  Your Honor, can I jump in

16   for just a second and add to that argument?

17           Your Honor, if you go back to your

18   Gadolinium case, just like in every MDL that involves a

19   drug or a product, a medical device, there are experts

20   that offer generic testimony on a lot of issues including

21   causation.  They keep calling Dr. Kessler a causation

22   expert.

23           Indeed, that is true, but it is a general

24   causation opinion that applies whether it is Cuyahoga or

25   some county in Utah with respect to how the conduct of

1  the Defendants, the manufacturing Defendants contributed
2  to cause the opioid epidemic.
3          That's -- in every MDL, that is in a
4  parallel situation involving a drug product.  You have
5  these generic experts, and then you have experts who
6  testify as to specific causation.  That's not -- the
7  latter specific causation is not what Dr. Kessler's
8  testimony is all about;
9          Rather, it is the general nature of how this
10  drug was approved?  What is the limitations of that
11  approval?  What did the Defendants' conduct do once they
12  got approval?  And does the FDA have or not have
13  jurisdiction over those issues?
14          You know, this is not that unusual a
15  situation, your Honor, in the course of this kind of
16  litigation.
17          MS. WELCH:  Your Honor, if I could
18  respond --
19          THE COURT:  A causation expert is not a
20  specific causation expert.  So Plaintiffs have stipulated
21  that he will give no testimony whatsoever that's tied to
22  any city, county or state.  So there is no reason to
23  cross examine him based on any evidence you would get.
24          MR. SOLOW:  We haven't taken a discovery
25  deposition on that, your Honor.  That's the whole point.

1             THE COURT:  There was -- there was a

2    discovery deposition.

3             MR. SOLOW:  Your Honor, respectfully, there

4    wasn't.  Just because they want him now to be this

5    generally causation witness, that's not the facts.  The

6    facts are he gave an opinion in Track 1 that was tied to

7    Track 1.  Okay?

8             THE COURT:  Wait a minute.  What did he say?

9    What opinion did he give tied to Cuyahoga and Summit

10   counties?

11            MR. SOLOW:  He tied to local call notes,

12   local doctors, and those things, and that's how he tied

13   it home.  Okay?  He did the same thing in New York.

14   Okay?

15            And now, your Honor, if they --

16            THE COURT:  Is that true, Mr. Weinberger and

17   Mr. Lanier, that Dr. Kessler testified about local

18   doctors in Summit and Cuyahoga County?

19            MR. WEINBERGER:  Your Honor, he was asked

20   questions -- he had opinions, for example, on what was

21   the methodology that Perdue and these other Defendants

22   used in calling on the doctors.

23            And so he had call notes for certain doctors

24   within the jurisdiction that he reviewed and which

25   supported his opinions about the marketing or improper

1    marketing aspects of the Defendants' conduct.

2              But that is the only real area that was

3    jurisdictional specific, and he testified that, you know,

4    also in general that when you send these sales reps out,

5    this is what happens in general, and these are what the

6    call notes demonstrate is happening in terms of the

7    effective marketing on these doctors.

8              MS. WELCH:  Your Honor, things don't happen

9    in a vacuum.

10             MR. LANIER:  We are specifically telling you

11   we are not going to be asking county-specific opinions in

12   this case.  He has got no basis for giving those.  This

13   is not tied to a case.

14             This is an MDL generic expert, and we will

15   be asking the questions that are entirely contained

16   within the confines of his report that had been given to

17   the Defendants and that they have known about forever.

18             Those matters that I read to you just now, I

19   was quoting from the report that he will be answering.

20             MS. WELCH:  Your Honor, respectfully,

21   causation doesn't happen in a vacuum, and marketing

22   doesn't cause a result, and conduct isn't unlawful in a

23   vacuum.  It is specific conduct by specific Defendants

24   that has or doesn't have an impact in a jurisdiction.

25             I understand what they want to do --

1          THE COURT:  Well, he is going to talk about

2     specific conduct, but he is not going to be talking about

3     the impact on any jurisdiction.  I wouldn't permit that.

4          So the Plaintiffs have stipulated they will

5     not ask any question of Dr. Kessler directed to any

6     specific jurisdiction, city, county, or state.  They will

7     ask him about what the Defendants did.

8          MR. SOLOW:  So why don't we, your Honor, get

9     a discovery deposition of these new opinions because they

10    are new.  There is no report that they are tethered to.

11    Your Honor, the fact is that Mr. Lanier can put on

12    whatever direct he wants.  We are entitled to put on

13    whatever we want.

14          As Ms. Welch said, these do not occur in a

15    vacuum.  We spent time because we had a deposition in

16    Track 1 of lining up --

17          THE COURT:  All right.  Look, I will tell

18    you what, number one, I have grave doubts whether, should

19    it come to pass, that if Dr. Kessler is a Government

20    employee the Plaintiffs will ever be allowed to put his

21    deposition on when they can't call him live for a whole

22    host of reasons.  But --

23          MR. SOLOW:  So what's the prejudice of

24    waiting?

25          THE COURT:  Well, because if he becomes a

1    Government employee, then he is lost as a witness.

2                    MR. SOLOW:  Right.  But if he is not and

3    they were able to use it, then he is available.  That's

4    the totality that you are only seeing one way, your

5    Honor.

6                    If you are never going to be able to do it

7    after January 20th, why should he be allowed to do it

8    today, like if it can never be played after January 20th.

9    If he is not a future Government employee in ten days,

10   then they have, as your Honor said, they can find any day

11   to do a general causation disclosure.  We can have an

12   orderly process.

13                   There is no reason it has to happen in two

14   days.  That's the point.  You talk about the prejudice to

15   us.  Where is the prejudice to them?  Right?  If he is

16   not a future Government employee, they can have

17   Mr. Weinberger, Mr. Lanier, they can roll out their

18   generic causation opinion.  We can have discovery.  We

19   can have a deposition and --

20                   THE COURT:  Well, the prejudice is if he

21   does become a Government employee, which is quite likely,

22   he is permanently lost to them as an expert for any trial

23   that occurs while he is a Government employee, which

24   could be several years.  All right.  That's the

25   prejudice.  So --

1           MS. WELCH:  And they can use any of the

2    experts they disclosed in Orange County, your Honor, or

3    other experts.  That's what litigators do.

4           MS. FEINSTEIN:  And your Honor, this is

5    Wendy Feinstein on behalf of the Teva Defendants.  I know

6    they are very practical --

7           THE COURT:  Let me hear from the Plaintiffs.

8    Are you saying Dr. Kessler is the only person who can

9    testify to what he said in his report and what you want

10   him to testify?  There is no one else?

11          MR. LANIER:  Your Honor, I have been doing

12   this for a long time.  I don't know anyone else who meets

13   his qualifications and can do it -- I mean, he was the

14   head of the FDA.

15          THE COURT:  I know he was ahead of the FDA

16   30 years ago, the FDA.

17          MR. LANIER:  Right.  And he was in that

18   unique position in that time capsule of history to see

19   this unfold.  He has both a law degree and a medical

20   degree.  So he has got a unique perspective that I don't

21   know of anyone else who has.

22          I think it is an unmatched perspective, and

23   that's why in candor well over a million dollars has been

24   spent.  He spent well over 1,500 hours in this case.

25          THE COURT:  I know.  And much of it is on

1    Perdue, and quite frankly, Perdue pleaded guilty.  So it

2    is all relevant.  He will not be giving any testimony

3    about Perdue.  They are not going to be on trial.

4              MR. LANIER:  Yes, your Honor, that is true,

5    but it is still background information that allows him to

6    have a good full understanding of what's going on.  I

7    don't know anyone else who has got that.

8              THE COURT:  Do you believe you can ask him

9    questions and make it clear that his testimony is not

10   tied in any way to evidence, any particular evidence, in

11   any individual city, county or state, that he is just

12   offering general opinion testimony?

13             MR. LANIER:  Absolutely, your Honor.  That's

14   all we would be asking him.  I will represent that to the

15   Court, and it is -- yeah, absolutely, absolutely.

16             THE COURT:  It seems to me if they want to

17   take that deposition, they can, and that's another

18   argument the Defendants can make to any Judge if they

19   seek to use the deposition, that it is not tied to

20   anything, so it shouldn't be admissible.

21             MR. PISTILLI:  Your Honor, this is Kristen

22   Pistilli from McKesson and speaking for distributors

23   Defendants today.

24             THE COURT:  All right.

25             MR. PISTILLI:  I wanted to just briefly add

1    that from the distributors perspective to get back to

2    your question, to the question at the outset of the

3    hearing to Mr. Lanier where I don't think we got an

4    entirely straight answer.

5           The justification for proceeding with this

6    deposition from Plaintiffs' perspective is that these

7    opinions have already been disclosed.  They have been

8    subject to discovery in the form of depositions in the

9    New York action in Track 1.

10          As to distributors, that's simply not the

11   case.  Dr. Kessler disallowed having any opinions

12   relevant to distributors in the Track 1 case and in the

13   New York case.

14          And so if he is going to --

15          THE COURT:  If that's the case, then I will

16   specifically say that his deposition cannot be used

17   against anyone but manufacturers.

18          MR. PISTILLI:  In our submission to your

19   Honor, we have given you the excerpts of the deposition

20   transcripts involved in those cases.  Says "I don't have

21   any opinions about distributors" and so if he is going to

22   offer opinions about distributors --

23          THE COURT:  If that's what he said, then you

24   can't use it against distributors.  What did he say about

25   pharmacies?

```
 1              MR. STOFFELMAYR:  Judge, Casper Stoffelmayr
 2    for the pharmacy Defendants and his -- in his MDL
 3    deposition testimony about the pharmacy Defendants was:
 4              "Question:  You do not have any opinions as
 5    we sit here today that you intend to offer with respect
 6    to the retail chain pharmacies?
 7              "Answer:  At trial, no.
 8              "Question:  You don't have any in the report
 9    that you served?  Is that correct?
10              "Answer:  That's correct."
11              He could not have been clearer --
12              THE COURT:  All right.
13              MR. STOFFELMAYR:  -- that he was offering
14    any opinions of the pharmacy Defendants.
15              THE COURT:  Well, it seems to me based on
16    that and since that's your -- the Plaintiffs' argument
17    that the Defendants have had discovery deposition, that
18    you can't use -- if I allow it, you can't use it against
19    distributors or pharmacies.
20              MR. LANIER:  Your Honor, we are not going to
21    bring him in to testify about what a distributor or
22    pharmacy did wrong.  I don't think it should be played in
23    that situation.
24              If there are accusations in the trial where
25    the Defendant tries to accuse Perdue and say this is all
```

1    Perdue's fall or all the manufacturers' fault -- I am not

2    saying the deposition might not become relevant -- but we

3    are not playing him to say "here is what the distributors

4    did wrong," or "here is what the pharmacies did wrong."

5            Those aren't his opinions in his report,

6    and we are going to keep him in the confines of his

7    report.

8            THE COURT:  Well --

9            MS. WELCH:  Your Honor --

10           THE COURT:  If I allowed you to take it, you

11   aren't going to be able to ask any questions about the

12   distributors or pharmacies, and the testimony is not

13   going to be -- if I have anything to do with it, you are

14   not going to be able to offer it against any distributor

15   or pharmacy.

16           MR. LANIER:  Understood, your Honor.  And we

17   will refrain from asking any of those questions in the

18   deposition.

19           THE COURT:  All right.

20           MS. FEINSTEIN:  Your Honor, this is Wendy

21   Feinstein on behalf of the Teva Defendants.  I am not

22   sure if my mike is working.  I tried to jump in a few

23   times here.

24           Just in addition to what Ms. Welch said and

25   what Mr. Solow said about the absence of an operative

1    report and the report focusing on different Defendants

2    who are no longer a part of this case, we are faced with

3    going into a trial examination of a key expert without

4    exhibits, without an exhibit list, some generic sort of

5    examination without even a hint of what documents the

6    Plaintiffs may use, and we have got two days to prepare

7    for this.   That's yet another example of the prejudice we

8    are facing.

9              THE COURT:   Didn't Dr. Kessler produce -- I

10   mean, I assume he produced everything he was given and

11   used and reviewed to give his report in Track 1, right?

12             MS. FEINSTEIN:   Your Honor, he had literally

13   a room of binders with him at his discovery deposition in

14   Track 1; similarly in his New York deposition, there was

15   a room of binders.   Many of those things were

16   jurisdiction specific.   Many of those things we asked him

17   about with respect to defenses that we have in those

18   jurisdictions.

19             And for us to prepare on such short notice

20   to take a generic trial testimony that could be used in

21   any jurisdiction without the ability to defend in that

22   jurisdiction, without the ability to have some limitation

23   even on the parameters of what documents and exhibits may

24   be used is highly prejudicial.

25             MR. LANIER:   Your Honor, to the extent they

1    assert any kind of prejudice there, we will supply them

2    with a list of the documents to be used in the

3    deposition.  We will do it before midnight tonight so

4    they have got them.  This does not -- there is no gotcha;

5    there is no surprise documents; there is nothing that

6    they haven't deposed him over that is not in his report.

7              This is just standard vanilla, can we please

8    get the guy in the box in case we ever get to use him?

9              MS. WELCH:  Again, your Honor, to be clear,

10   when they get him in the box, they are entitled to ask

11   all sorts of generic questions if that's how they want to

12   try to present their case, but the notion that we would

13   be forced to cross examine for purposes -- it is not for

14   purposes of nothing.

15             We are being asked to cross examine for

16   purposes of a trial, and trials like causation don't

17   happen in a vacuum.  Some trial is going to happen in

18   some jurisdiction, and what we would do for Allergan is

19   cross examine Dr. Kessler about whether his opinions hold

20   up with respect to our client in respect to the

21   jurisdiction bringing those claims.

22             And we can't do that on Wednesday not

23   knowing what the claims are.  Is public nuisance the

24   claim or not?  Are we being tried with other Defendants

25   or not?  What are the claims?  What are their theories

1    against my client, and what happened in the jurisdiction

2    that is suing my client?  That's the context of a

3    lawsuit.  Lawsuits don't happen in a vacuum.  Neither do

4    trial cross-examinations.

5              THE COURT:  Well, I agree with that, and

6    that's another reason why I think it is highly unlikely

7    that this deposition ever can be used, but if I don't

8    allow it, then Dr. Kessler is lost as a witness, and he

9    may be the best person, the most knowledgeable person to

10   testify about these things, and that would be a big loss.

11             All right.  Defendants are always able to

12   cross examine him, but if he is the best person to

13   testify about the FDA and the role of the FDA, then the

14   jury ought to be able to hear him in whatever

15   jurisdiction.

16             All right.  The 13th -- all right, we have

17   got up through the 19th.  If I allow this, I don't have

18   to tie it to the 13th.  If Plaintiffs want to do it, they

19   can work it out with Dr. Kessler if he wants to do it.

20             Obviously, it can't be the 20th.  The last

21   day would be the 19th.  The 18th is a federal holiday,

22   but apparently, he has already got something on the able

23   18th.

24             MS. WELCH:  And your Honor, to be clear, we

25   absolutely do not believe this deposition can happen in

1        one day, even if Plaintiffs only took an hour to do their

2        generic direct examination of this witness.

3                    The Defendants are entitled, particularly in

4        light of the fact that we haven't taken a discovery

5        deposition about these opinions, and a discovery

6        deposition that did happen was largely done by Perdue's

7        counsel, and they are no longer in the case.

8                    We have a lot to cover for trial cross

9        examination purposes.  We don't think it can be done in a

10       single day, so we think it needs to be two days or, at

11       least, whatever time Plaintiffs need and full day for

12       Defendants.

13                   THE COURT:  All right.  Mr. Lanier, how

14       long do you envision Dr. Kessler's direct testimony to

15       be?

16                   MR. LANIER:  Three hours max.

17                   THE COURT:  Well, we have at least -- how

18       many manufacturing Defendants do we have?  We have Teva;

19       we have Allergan; we have Endo; we have Johnson &

20       Johnson.  Malcroft and Perdue are bankrupt.  They are

21       out.  So we have got four:  Teva, Allergan, Endo, J & J,

22       those entities.

23                   MS. WELCH:  Your Honor, those are the four

24       that were in Track 1.  I can't speak to other

25       manufacturing Defendants that may be named Defendants in

1     other pending cases in the MDL where this deposition

2     theoretically could be played.

3              But we don't believe that four hours is

4     sufficient for four Defendants.

5              THE COURT:  I think that's right.

6              MR. LANIER:  We will cut ours down, your

7     Honor, from --

8              THE COURT:  It seems to me that each

9     Defendant is entitled to two hours if you are taking

10    three.  So that's a day and-a-half deposition, at least,

11    so it is -- so I think we need a day and-a-half.

12             MS. WELCH:  And your Honor, without

13    obviously waiving any of the arguments we've made in

14    light of the fact that this is -- they are purporting to

15    preserve trial testimony, we believe we need Court

16    supervision of the proceedings in real-time.

17             So I don't know if Special Master Cohen, for

18    example, is available to preside over the deposition for

19    the day and-a-half, but we don't think that this could

20    proceed -- we need objections and issues ruled on in

21    real-time, again not waiving any of our rights.

22             We don't think this should go forward, but

23    if your Honor at the end of the day concludes it will, we

24    believe we need supervision for the deposition.

25             THE COURT:  Well, we will provide that

1    between Special Master Cohen and Judge Ruiz and I, again

2    the three of us we will cover it.  We will figure it out.

3    We have got two judicial officers on the case plus a

4    special master.

5            MS. WELCH:  We would ask, then, your Honor,

6    for the last day and-a-half available before noon on the

7    20th to alleviate what they think is significant

8    prejudice.  We don't think it will alleviate it in its

9    entirety or even a lot --

10           THE COURT:  I understand that.  The

11   Defendants are objecting on the whole thing.  All right.

12   So I think that's a fair request.  So it will be -- I

13   mean, we could use the 20th.  Okay?  The 20th could be a

14   half day.

15           MS. WELCH:  We agree, your Honor.

16           THE COURT:  So we could do it the 19th and

17   needs to wrap up around noon on the 20th.  I doubt -- it

18   doesn't have to end quite by 1:00 o'clock.  I mean,

19   nothing is going to -- well, some of us might want to

20   listen to what our new President says.

21           So I think we should wrap it up at noon out

22   of respect for the inauguration.  So I for one would like

23   to listen to what our new President says.

24           MS. JOHNSON:  Your Honor, this is

25   Kristen Johnson.  I am counsel to Blue Cross Blue Shield

1    in the MDL, but I am also counsel in the Ranbaxy fraud

2    litigation pending in the District of Massachusetts.

3              And I certainly don't intend to throw a

4    wrench into these proceedings, but because I am

5    listening, I wanted to inform the Court that

6    Dr. Kessler's deposition is being taken in the Ranbaxy

7    fraud case on the 18th and 19th of January.

8              We have noticed it for then, and we are

9    proceeding as such.  Obviously, if this Court were to

10   order that Dr. Kessler participate in a deposition in

11   your case, that would affect us, but I did want to share

12   with the Court.

13             THE COURT:  Well, I don't know what to do

14   about that.  I suppose I can -- has a judge directed

15   that?

16             MS. JOHNSON:  No, your Honor, they have not,

17   and without getting too in the weeds because I am sure no

18   one cares about the very particulars, I will say that we

19   are differently situated, and that the scheduling order

20   in our case provides that expert depositions may be taken

21   up to April 23rd.

22             So this is actually pursuant to Court order

23   that it is being taken, at least, in the sense from the

24   Plaintiffs' position.  So we have not sought Court

25   permission to do that.  We did advise the Court in the

1    Ranbaxy litigation today in a joint status report that

2    there is a dispute among the parties as to whether that

3    deposition should proceed, but as of now, we intend to go

4    forward.

5                    Of course, if your Honor makes a ruling --

6                    THE COURT:  There is a dispute.  So it is

7    not clear it is going to happen.  It is one thing if the

8    Judge had ordered it and you disagreed and it is actually

9    happening.  What you are saying, it might or might not

10   happen?

11                   MR. LANIER:  Your Honor, one thing that

12   might help, your Honor, is we could do the direct on the

13   13th and then try to find a time to do the cross later,

14   so get that half day done that also helps obviate the

15   concerns of the Defendants of "gee, we don't know what he

16   is going to say, and we don't know what the documents

17   are."

18                   Kudos to Hunter.

19                   THE COURT:  That's not a bad idea,

20   Mr. Lanier.  Just do the direct on the 13th, and then you

21   need to find eight hours, so that's one long day.  You

22   know, it could even be four hours one day and four hours

23   another day, put it in.  All right.  That's a good idea.

24                   Do the direct on the 13th, and then you got

25   to find eight hours, two for Teva, two for Allergan, two

1  for Endo, and two for J & J over -- by noon on the

2  20th.

3              MR. SOLOW:  Your Honor, Andrew Solow again

4  for Endo.  If I can just make a request just for federal

5  rule of appellate procedure 8.  Your Honor, if you are

6  going to now grant the Plaintiffs leave to take this

7  deposition with the conditions that you've stated, we

8  would ask that you stay the deposition pending the

9  outcome of a petition for a Writ of Mandamus to the Sixth

10  Circuit.

11              THE COURT:  You are going to bother with

12  this again?

13              MR. SOLOW:  Your Honor, respectfully, if

14  I --

15              THE COURT:  Well, do whatever you want.  No,

16  I am not staying it.  What I am going to do, I am going

17  to do.  You want to file for a Mandamus, you are, you

18  know, free to file.

19              MR. SOLOW:  Understood, your Honor.

20              In the order that grants the Plaintiffs'

21  motion, could you deny the request for leave to stay for

22  the purpose of --

23              THE COURT:  It is denied.  I am denying it

24  now.  This thing is happening on the 13th.  Your cross

25  examination will be done, and again, if Dr. Kessler -- if

1      the Plaintiffs can't find the eight hours, then the thing

2      is moot because if the cross examination isn't done,

3      obviously the deposition can't be played.

4              So if Dr. Kessler says I cannot do it then,

5      the whole issue becomes moot as does the Mandamus.  So

6      there is no prejudice from the direct.  And obviously,

7      you need to advise everyone as soon as possible, you

8      know, when the -- when it will be since I will have to

9      arrange for supervision by either me or Judge Ruiz or

10     Special Master Cohen, and it will probably be a

11     combination.  It may be a combination.

12             MS. WELCH:  And your Honor, just for an

13     abundance of clarity, typically how the Defendants have

14     done these depositions in the past is that we use our

15     time collectively.  So I assume you are giving Defendants

16     eight hours collectively for purposes of cross

17     examination?

18             THE COURT:  If Endo wants to use one

19     and Allergan wants to use three, yeah, you don't have to

20     --

21             MS. WELCH:  Thank you, your Honor.

22             THE COURT:  -- you don't have to have two

23     hours to the dot.  It is collectively.  You can --

24     obviously, don't waste time and ask the same questions,

25     so you can use it however you want.

1              And I am doing this, again, I am not in any

2    way ruling on whether this deposition would ever be

3    admissible anywhere, in my cases or anywhere, but

4    Judge Ruiz, was anything you wanted to ask or say?

5              MAGISTRATE JUDGE RUIZ:  No, Judge Polster.

6              THE COURT:  All right.  So again -- and

7    Mr. Lanier, you said by midnight tonight you would give

8    the Defendants a list of the documents you plan to use?

9              MR. LANIER:  Yes, your Honor.

10             MS. WELCH:  Your Honor, in addition to that

11   -- I'm sorry.  It is Donna Welch again.

12             THE COURT:  Yes.

13             MS. WELCH:  -- in addition to a list of

14   documents and again reserving all of our other rights, we

15   would also ask for invoices through today from

16   Dr. Kessler for his work on the opioid cases generally or

17   any specific opioid case pending in the MDL.

18             To the extent Plaintiffs or Dr. Kessler said

19   he is simply not prepared and submitted invoices, which

20   we have heard in the past in deposing this witness, we

21   would ask by midnight tonight for the amount and the

22   number of hours in total that have been expended,

23   regardless whether invoices have been submitted.

24             And we would like an updated disclosure

25   consistent with the rules of all of the retentions and

 1    testimony that he has given again through today.

 2              MR. LANIER:  Your Honor, in regards to those

 3    matters, we would be glad to give them those, but we are

 4    going to be pushed by midnight tonight to get the

 5    documents.  That's just -- that's just the difference

 6    between X dollars and Y dollars.  If we get those by

 7    midnight tomorrow night, if that's okay.

 8              THE COURT:  All right.  That's fine.

 9              MS. WELCH:  Fine.

10              THE COURT:  The documents by midnight

11    tonight and midnight tomorrow the other two, the invoices

12    and the retentions.

13              MR. LANIER:  Yes, sir.

14              MR. STOFFELMAYR:  Judge, Casper Stoffelmayr,

15    if I can ask one question --

16              THE COURT:  Yes, Mr. Stoffelmayr.

17              MR. STOFFELMAYR:  -- I notice you didn't

18    allocate cross examination time to the pharmacies or

19    distributors.

20              THE COURT:  No.  I categorically said that

21    this testimony cannot be offered against pharmacies or

22    distributor.

23              MR. STOFFELMAYR:  And I was just going to

24    request that your order make that clear because this

25    could be coming up at any point in the future before any

1    number of other courts.

2              THE COURT:  All right.  The Plaintiffs have

3    stipulated they won't ask Dr. Kessler for any opinions

4    about what the pharmacists did or didn't do or what the

5    distributors did or didn't do, and the testimony is not

6    going to be offered against them at trial --

7              MR. STOFFELMAYR:  Thank you, Judge.

8              THE COURT:  -- manufacturers.

9              MR. LANIER:  Yes, your Honor, we make that

10   representation on questioning.

11             THE COURT:  Okay.  Thank you, Mr. Lanier.

12   That will go in the order.

13             MR. PISTILLI:  I'm sorry, Mr. Lanier.  Did

14   you mean to limit the representation?

15             THE COURT:  No.  He said he accepts the

16   limitation.

17             MR. PISTILLI:  Okay.  Thank you.  Just

18   clarifying.

19             THE COURT:  Okay.  I appreciate everyone's

20   participation in this.  We had to do it on fairly short

21   notice, and I had a number of questions, and I appreciate

22   the answers.  So everyone stay safe.  With that, we are

23   adjourned.

24             MS. WELCH:  Thank you, your Honor.

25             MS. FEINSTEIN:  Thank you, your Honor.

1          MR. LANIER:  Thank you, your Honor.

2              (Many said thank you.)

3              (Oral motion concluded 6:25 p.m.)

4                  - - - - -

5                  C E R T I F I C A T E

6          I, George J. Staiduhar, Official Court

7     Reporter in and for the United States District Court,

8     for the Northern District of Ohio, Eastern Division,

9     do hereby certify that the foregoing is a true

10    and correct transcript of the proceedings herein.

11

12

13

14                  s/George J. Staiduhar
                   George J. Staiduhar,
15                 Official Court Reporter

16                 U.S. District Court
                   801 W. Superior Ave., Suite 7-184
17                 Cleveland, Ohio 44113
                   (216) 357-7128
18

19

20

21

22

23

24

25