UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL NO. 2804** |
| | **Case No. 17-MD-2804** |
| **THIS DOCUMENT RELATES TO:** | **Judge Dan Aaron Polster** |
| *Salmons v. Purdue Pharma L.P., et al.* MDL Case #1:18-OP-45268; | |
| *Flanagan v. Purdue Pharma L.P., et al.* MDL Case #1:18-OP-45405 | |
| *Doyle v. Purdue Pharma L.P., et al.* MDL Case No. #1:18-op-46327 | |
| *Artz v. Purdue Pharma, L.P., et al.* MDL Case No. #1:19-op-45459 | |

## MOTION FOR RECONSIDERATION

### I.     Procedural History

In August 2019, certain counsel representing numerous putative class representatives in state law class actions relating to NAS Children that were transferred into the MDL requested that this Court allow consideration of Rule 23 class treatment which had, at that point, been allowed only for motions filed by the PEC. Thereafter, the Court ordered of its own initiative a unique "procedural bellwether" proceeding that allowed a maximum of four putative "test" classes relating to NAS Children to move forward under a consolidated motion. Doc. # 2738. In January 2020, a Motion for Class Certification was filed requesting certification arising out of two of the numerous Complaints on file[1] of (1) an Ohio state law class, (2) a California state law class, (3) a nationwide class arising out of federal law, and (4) a more narrowly tailored nationwide class also

---

[1] Notably, Defendants never filed answers to the two cases from which the request for Rule 23 treatment arose.

arising out of federal law.[2]  Discovery of Plaintiffs and their experts was allowed, while discovery of Defendants was limited to their experts only.  After all of Plaintiffs' class experts were deposed in January 2020, but before discovery of Defense experts, multiple delays occurred due to the ongoing COVID-19 pandemic.  Almost one year after Plaintiffs' Consolidated Motion for Class Certification was filed, the responsive and reply briefing followed and, on February 1, 2021, this Court entered its order denying the certification of all four classes requested through the procedural bellwether.

In denying certification of the four putative classes before it, this Court has (1) relied on clearly erroneous findings of fact, (2) applied the wrong legal standard, (3) applied the incorrect legal standard when reaching its conclusion, and (4) also made clear errors of judgment.  As a result, this Court has abused its discretion and it must reconsider its Order,[3] or, alternatively, vacate that order. It is also important to note that because the Court made such fundamental errors on the preliminary questions of whether the putative classes were (1) adequately defined and (2) clearly ascertainable, that it essentially "gave up" on the remainder of its opinion, such that Plaintiffs have no way of knowing whether it even bothered considering the remainder of the Rule 23 elements. And, in so doing, the Court also failed to follow its own prior reasoning on strikingly similar certification issues and admonished Plaintiffs for reminding the Court of its own words within this same MDL, despite the fact that this belies the entire purpose of an MDL—the avoidance of conflicting orders and streamlining of procedures so that the court need not consider the same matters ad nauseum.  See 28 U.S.C. § 1407.  Instead, by going out of its way to chastise Plaintiffs

---

[2] The federal law at issue in the nationwide classes was RICO and Plaintiffs followed this Court's order that parties to the MDL were to adopt the *Summit County* RICO pleadings by reference.
[3] Because of significant page limits for this Motion, Plaintiffs cannot raise all matters that they would otherwise assert on appeal.  Regardless, failure to raise those matters for appeal, may not be construed as a waiver by Plaintiffs.

and enact a "no citation rule" so contrary to the purpose of an MDL, the result of the Court's action is to create a dual procedural system within one MDL—one standard for claims asserted by the PEC and a different, and much more stringent standard for claims not championed by the PEC for its own individual clients.  If such is to be, then this MDL is necessarily failing of its essential purpose and the Court's order on the Motion for Class Certification should be vacated by it *sua sponte* and the Poe and Artz cases remanded to their originating court.

**II. Standard of Review**

Before final judgment, a court may alter or amend an order that grants or denies class certification.  Fed. R. Civ. P. 23(c)(l)(C).  In considering this Motion, the Court should be cognizant of the appellate standard of review.  Regarding this, the Sixth Circuit writes:

> The district court has broad discretion to decide whether to certify a class, *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.,* 678 F.3d 409, 416 (6th Cir.2012), and this court reviews class certification for an abuse of discretion, *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.,* 654 F.3d 618, 629 (6th Cir.2011), *cert. denied,*— U.S. —, 132 S.Ct. 1757, 182 L.Ed.2d 532 (2012). A district court's decision to certify a class is subject to "very limited" review and will be reversed only if a strong showing is made that the district court clearly abused its discretion. *Olden v. LaFarge Corp.,* 383 F.3d 495, 507 (6th Cir.2004). **An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment.** *Pipefitters Local 636 Ins. Fund,* 654 F.3d at 629. This court should not find an abuse of discretion unless it has a "definite and firm conviction that the trial court committed a clear error of judgment." *Miami Univ. Wrestling Club v. Miami Univ.,* 302 F.3d 608, 613 (6th Cir.2002) (citation and internal quotation marks omitted).

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012) (emphasis added).

Furthermore, this Court must also be cognizant in deciding this Motion to Reconsider that at the certification stage, a party need not prove the merits of her case, nor even establish that the

action will be ultimately successful. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *see also Hargrove v. Sleepy's*, 974 F.3d 467, 470 (6th Cir. 2020) (holding that the heightened standard for a motion for reconsideration does not apply to a renewed motion for class certification). Regardless, the movant should provide "some evidence" favoring her claims so that the deciding court may conduct its "rigorous analysis;" however, a court may not decide unilaterally to reject the existence of qualified evidence, especially where, as here, there is no contravening evidence offered by the opposing party. Unfortunately, on many central factual matters at issue in this motion, this Court has done precisely that. *See, e.g.,* entering a finding of fact that two putative class representatives do not meet the objective criteria of the class definition despite significant documentary evidence and expert opinion in support, and absolutely no contravening evidence other than base allegations by defense counsel that are wholly unsupported by evidence or expert opinion.

**II.     Clearly Erroneous Findings of Fact**

**A. The Court Applies an Inaccurate Standard In Its Analysis of Pharmacological Weaning and Disregards the Documentary Evidence and Expert Proof in the Record on the Pharmacological Weaning of Two of the Three NAS Children at Issue in the Motion**

Without any evidentiary support and in direct contravention of the evidence that was in the record, as well as the expert opinion evidence in the record, the Court wrongly concluded that two of the three NAS cases at issue in the Motion[4] were not, in fact, cases involving NAS Children and therefore, the putative class members were not themselves class members.

---

[4] In the fourteen months since the Class Motion was filed, one putative class representative (Frost) withdrew her request for appointment. *See* Plaintiffs' Reply Brief. While it is not appropriate for counsel to comment on the underlying merits of that claim, counsel should not be vilified for withdrawing her request . It is quite common for putative class representatives to withdraw claims and for new representatives to appear in substitution. At the time of the Court's decision, there were only three requests for appointment as class representative—Ramirez (albeit appointment sought by both parents), Barnwell, and Poe—arising out of three cases of NAS-diagnosed children. In clear error, the Court found that only the NAS Child related to

All three cases of NAS at issue in the Motion involved pharmacological weaning, *i.e.* the treatment of a newborn for its symptom of NAS by dosing it with opioids which were necessitated by its withdrawal from the opioids it had been exposed to *in utero* by the birth mother. See Anand Report, Ex. 5 of Decl. of Marc Dann, Doc. #3067-5 and Supplemental Anand Declaration, Doc #3555-28.

The Court is (1) fundamentally confused on the topic of pharmacological weaning and (2) has written an opinion that has the potential to create massive confusion within both the judiciary and the public on this important topic.

The Court has determined that the pharmacological weaning of the NAS Children at issue in this matter cannot be related to *in utero* opioid exposure, because the weaning occurred too late after birth. Opinion on Class Cert., Doc. # 3622, at 21-22. The Court, supplanting its own judgment in contravention of the only expert testimony before it,[5] improperly acted as a "super expert" on the medical weaning of a child born with NAS.  In fact, the only evidence was to the contrary— that these children were suffering from NAS.  (*See* Anand Supplemental Declaration filed in support of Plaintiffs' Reply.)  The Court is simply not qualified to make this medical finding and is totally unsupported by any evidence is contrary to the undisputed evidence in the record.

And so that this Court might once again appreciate the wholly inaccurate and unsubstantiated allegations of fact promulgated by Defendants and adopted by this Court, Plaintiffs offer a **Second Supplemental Expert Declaration** on the matter.  (See Anand Declaration, filed under seal, as Ex.

---

the Barnwell claim met the class definition.  Even if the Court was not clearly erroneous, in such cases where a court has found that a putative class representative does not satisfy the class definition or otherwise has unique individual issues, the obvious next step is to allow the substitution of class representatives, where, as here, at least one of the class representatives was found to meet the class definition.

[5] No defense expert in this case opined that any of the Guardians' children were not weaned from opioids as a result of being born with NAS nor that any of the children were born without NAS.  **Indeed, not one of Defendants' experts even mentions the putative class representatives or the NAS Children at issue in their reports.**  Defense Expert Reports, *passim*.

A.) Simply put, it is beyond dispute that Ramirez and Poe are guardians of children diagnosed with NAS at birth and are members of the class.

**B. The Status of a Guardian is Readily Ascertainable and the Court's Decision to the Contrary Is Based on a Clearly Erroneous Finding of Fact**

Plaintiffs did not anticipate, nor did any Defendant argue in opposition, that whether a putative class member is a "Guardian" is not readily ascertainable.[6] Indeed, these are obvious factual matters that can be ascertained by reference to public records: parents can refer to/offer proof of a birth certificate (or certificate of adoption) or a guardian can similarly refer/offer proof using a court order of guardianship. Thus, determining guardianship is hardly a complex process. It is established as a result of one of three documents.[7] Also, the Court seems to imply that a person who has the obligation to take care of a child (by virtue of the fact that they are the natural or adoptive parents of a child, or else applied to be appointed the guardian of a child), would somehow be unaware of this fact and would not know if they are members of the class, beggars belief, and is based on a clearly erroneous finding of fact. If a person can know that they bought a security during a certain time period (and are a member of a securities class action), then certainly they can know whether they are the parent or guardian of a child born after a certain date. *See Simer v. Rios*, 661 F.2d 655, 670 (7th Cir. 1981) (a properly defined class alerts the parties and the court to

---

[6] In the case of NAS Children, many are no longer in the custody of their parents, thus, a class definition of "parents of NAS Children" would be under-inclusive. Thus, the slightly broader term of "Guardian" was used to capture both parents and persons who had later been appointed as guardians of NAS Children.

[7] "Finding that the class properly could be certified without the 100% accuracy Defendants assume to be requisite, the district court agreed with Plaintiffs that the subclasses can be 'discerned with reasonable accuracy' using Defendants' electronic records and available geocoding software, though the process may require additional, even substantial, review of files. ("Even if it takes a substantial amount of time to review files and determine who is eligible for the [denied] discount, that work can be done through discovery."); *Slapikas v. First Am. Title Ins. Co.,* 250 F.R.D. 232, 250 (W.D. Pa. 2008) (finding class action manageable despite First American's assertion that "no database exists easily and efficiently to make the determination that would be required for each file"). *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 540 (6th Cir. 2012).

the burdens of identifying members of the class and allows the individuals actually harmed by the defendants to be the recipients of any relief awarded).  It is axiomatic that unless someone is a parent or guardian of a child diagnosed with NAS, it would be impossible for them to be the "recipient of any relief awarded" herein because all requested monitoring and surveillance relief goes towards the extant care duty owed to that child.  The class "guardian" element of the class definition is both readily ascertainable and appropriately limits the recipients of a potential recovery and the Court's opinion to the contrary is clearly erroneous.

C. **The Court's Attempt to Amend the Class Definition to Include the Additional Requirement that a Birth Mother Have Been an Opioid "Addict" in Order for a Child to Have Been "Diagnosed with NAS" Is A Clearly Erroneous Finding of Fact**

The Court has attempted to rewrite the Plaintiffs' class definition to require an additional factual element: that the birth mother not only have been prescribed opioids, but that she also must have been "addicted" to opioids.  (Doc. # 3623 at 24.)  This too is a serious factual error that has the potential to sow significant confusion in the public and judiciary, as it presents and applies an inaccurate standard    on the topic of how a child is medically diagnosed with NAS.

Whether a birth mother was or was not "addicted" to opioids prior to the birth of a child, is irrelevant to the child's status as having been diagnosed with NAS.[8]  Plaintiffs' medical experts have provided the Court with the commonly-used medical diagnostic criteria employed by treating physicians to determine whether a child is born dependent on opioids, and **every single one of those diagnostic criteria are a function of the child, not the birth mother.** Record, *passim*. Furthermore, Plaintiffs' experts opined that there is no safe dose of opioids for a fetus. *Id.*  These

---

[8] Once you have a diagnosis of NAS, the fact that the mother had filled a prior prescription for opioids means that the NAS was in part caused by exposure to opioids.  The prescription was "a cause" of the NAS for every class member in the class in which the prescription was filled during pregnancy.  See Anand; Reply Brief at 14-16.  Defendants' own experts, including Lee, conceded this as well.  See Lee Dep. at 175:15-19.

expert opinions were *supported by the medical literature and unchallenged by Defendants*. This Court cannot ignore expert opinion on this matter, nor create of whole cloth a new NAS definition that seriously conflicts with the facts and expert opinion before it.[9]

### D. The Court's Fact Finding that a Medical Diagnosis of NAS Is Not Ascertainable Is Clearly Erroneous

The Court found that whether a child was diagnosed with NAS was not ascertainable because it was too "difficult" of an inquiry for it. In so doing, the Court (1) ignores the fact that the putative class only includes those cases in which a child has already been **medically diagnosed** with NAS, and (2) substitutes its own judgment (while also saying that it cannot make this decision because it is too difficult) for that of the treating doctors who did not have any such difficulty. No one is asking the Court to diagnose a child with NAS. Instead, the Court's inquiry is whether **a prior diagnosis** of NAS is an objective criteria. *See Young v. Nationwide Mut. Ins.*, 693 F.3d 532, 538-39 (6th Cir. 2012) (objective criteria for including or excluding class members include whether class members "can reference damages or injuries" caused by the Defendants).

The fact that this is not a difficult question is established by the fact that sixteen states already require that NAS-diagnosed birth be enrolled on their own state registry.[10] Additionally, the countries of Austria, Canada, Czech Republic, Denmark, France, Norway, Sweden, Taiwan, and

---

[9] By interjecting an additional requirement of maternal "addiction" into the Plaintiffs' class definition and asserting that such "addiction" requirement is actually proof of contributory negligence or is otherwise a defense, the Court has made the mistake of attempting to create a **defensive "fail-safe" class**. *See, e.g., Humphrey v. Stored Value Cards*, No. 1:18-CV-1050, at *8 (N.D. Ohio Nov. 16, 2018) ("Indeed, if the… class *were* defined in terms of Defendants' liability, the class would be an uncertifiable "failsafe" class. The Plaintiff's proposed… class is defined by objective criteria that may (or may not) give rise to liability[.] By those criteria, she is a class member.")

[10] See Binkin, Neonatal Abstinence Syndrome (NAS): Environmental Scan and Key Informant Interview Analysis Report, *Council of State and Territorial Epidemiologists* (April 2019), *available at* NAS_Environmental_Scan_Repor.pdf (ymaws.com).

the United Kingdom have nationwide registries.[11] Indeed the CDC has recently opined that a similar nationwide data base based on the commonly-accepted diagnostic criteria used by Plaintiffs' experts should be established in the U.S. that requires each physician to report a diagnosis of NAS.[12] The fact that these databases for NAS births exist and, in many cases, have been functioning for almost a decade belies the court's finding that "it is too hard" for a third party to determine whether there was an "NAS diagnosis." The Court's finding to the contrary is clearly erroneous.

In this case, Plaintiffs have identified to the Court the objective criteria substantiating an NAS diagnosis (see, e.g., Finnegan scores, pharmacological weaning,[13] hospital diagnostic codes, positive toxicological screenings, etc. which are the exact same criteria used for inclusion on the NAS registries.) A records review for these criteria is hardly more difficult than the records review associated with the purchase of a security in a class action securities case.

---

[11] Somayyeh Zakerabasali, Reza Safdari, Maliheh Kadivar, Sharareh Rostam Niakan Kalhori, Mehrshad Mokhtaran, Zahra Karbasi, Azadeh Sayarifard & Shahabeddin Abhari (2019): Neonatal abstinence syndrome: a systematic review of current databases and registries, *The Journal of Maternal-Fetal & Neonatal Medicine*, DOI: 10.1080/14767058.2019.1618827.

[12] Jilani SM, Frey MT, Pepin D, et al. Evaluation of State-Mandated Reporting of Neonatal Abstinence Syndrome — Six States, 2013–2017. MMWR Morb Mortal Wkly Rep 2019; 68:6–10. DOI: http://dx.doi.org/10.15585/mmwr.mm6801a2external icon

[13] **If this Court believed that pharmacological weaning is the only "trustworthy" diagnostic criteria, despite expert opinion to the contrary that there are other reliably objective criteria, it was required to fashion a more limited class following that definition**. The court in *Treviso v. Nat'l Football Museum, Inc.*, recently discussed the obligation on a court to craft a new or different class definition, stating:

> This alone does not defeat class certification as the Court may modify the class definition. See *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 302 F.R.D. 448, 462-63 (N.D. Ohio 2014) (The Court's duty to ensure that Rule 23 prerequisites are met "**includes the obligation to create a new [class]definition *sua sponte* if the parties' own proposals are not adequate or accurate.**").

*Treviso v. Nat'l Football Museum, Inc.*, Case No.1:17CV472, at *8 (N.D. Ohio Sep. 25, 2018) (emphasis added).

### III. The Court Applied the Wrong Legal Standard, and/or Misapplied the Correct Legal Standard when Reaching Certain Conclusions

#### a. The Court Failed to Follow Controlling Sixth Circuit Law on Ascertainability

The Court notes in its opinion that in the Sixth Circuit classes seeking 23(b)(2) certification need not meet the ascertainability requirement in order to certify the case. Order at 8 (citing *Cole v. City of Memphis*, 839 F.3d 541 (6th Cir. 2016). Inexplicably, the Court then goes on to state in a footnote and without any legal analysis or authority that it is not going to follow Sixth Circuit authority. This is equally inexplicable because the Court's primary basis for denying certification in this 23(b)(2) case is due to an alleged absence of ascertainability, which is directly contrary to Sixth Circuit precedence. This is clear error because the wrong legal standard has been applied when the Court admittedly refuses to follow the law.

#### b. The Court Erroneously Applied the Typicality Standard because It Failed to Analyze Plaintiffs' Claims for Typicality

It is almost impossible to analyze the Court's finding on typicality because there is no actual analysis by it of the typicality of Plaintiffs' legal claims and any potential defenses.[14] [15]Indeed, in discussing typicality, the Court fails to consider the legal claims at issue in this case and, of course, typicality is necessarily a function of the claim. Whether claims are "typical" is determined by whether they (1) arise from the same event, pattern, or practice and (2) are based

---

[14] Notably, no defenses have been pleaded and the Court cannot speculate as to what defenses might be alleged, if the Defendants failed to put Plaintiffs or the Court on notice of them.

[15] How this Court treated the PEC local government claims versus the rest of the claimants in the MDL is striking. When the Court certified the PEC local government claims in its negotiation class, it found that typicality existed for the governmental RICO claims. Although the negotiation class ultimately was reversed by the Sixth Circuit, the Sixth Circuit did not criticize the Court's typicality analysis. Why would the typicality analysis under RICO not apply equally to the Guardians' claims? This Court found with apparent ease that typicality was satisfied because the claims arise from the same core of practices and same legal theory. Plaintiffs here have alleged the same underlying facts and legal theories from which typicality arose. Certainly then, the Guardians' claims should also meet this Rule 23 requirement.

on the same legal theories.¹⁶ Instead of examining the relevant issues arising from the nature of the named Plaintiffs' legal claims, the Court instead returns its consideration solely back to the theory that a child cannot have been diagnosed with NAS unless its birth mother's use of opioids arose to the level of "addiction." **And, again, Plaintiffs must reiterate that there is no scientific evidence in the record to support the Court's attempt to add an additional diagnostic criteria to the medical diagnosis of NAS, nor, of course, have the Defendants pleaded any defenses,**¹⁷ **much less that a birth mother has contributory negligence in the birth of an NAS Child.**¹⁸

Furthermore, Defendants did not contend in their responsive pleadings that the birth mother's negligence is an individual issue, and certainly, their experts testified that the birth

---

¹⁶ "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."
1 *Newberg on Class Actions*, Section(s) 3-13, at 3-76 (footnote omitted).

¹⁷ Even if there were valid individual defenses, they need not defeat Rule 23 typicality and commonalty:
"As Plaintiffs concede, Defendants will have some individualized defenses against certain policyholders; however, the existence of these defenses does not defeat the commonality requirement under the theory asserted by Plaintiffs. *See Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988) (holding that the presence of questions peculiar to each individual member of the class was no bar when liability arose from a single course of conduct). The court did not abuse its discretion in finding commonality under Rule 23(a)(2). Because Plaintiffs allege both a single practice or course of conduct on the part of each Defendant… that gives rise to the claims of each class member and a single theory of liability, the court did not abuse its discretion in finding that named Plaintiffs' claims are typical of the class as required by Rule 23(a)(3). *In re Am. Med. Sys.,* 75 F.3d at 1082 ("[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.")."
*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

¹⁸ In that the Court has severed claims against physicians who wrote medical prescriptions for opioids in other related class actions in the MDL, it is unclear why the Court would treat that matter differently in the instant putative class actions. *See*, discussion, *infra*.

mothers held no fault in using prescribed opioids. See Summary of Testimony of Tricia Wright, at Bilek Dec., Ex. 1 at 9.

It also bears reminding the Court that the class definition requires each birth mother to have had a medical prescription for opioids prior to the birth of the NAS Child at issue, thereby excluding those cases in which the birth mother solely sourced opioids from the diversionary market. Regardless, the Court offers no explanation of why birth mother "addiction" is at issue in the adjudication of every single one of Plaintiffs' state and federal legal claims, either as an element of liability for Plaintiffs, or as a defense.[19]

Even a cursory review of Plaintiffs' claims reveals that had the Court conducted the appropriate typicality analysis, which it did not, Plaintiffs have satisfied that certification criteria. Plaintiffs allege violations of California and Ohio State law, as well as violations of federal RICO law. The gravamen of these claims is that Defendants illegally marketed, sold, distributed, and failed to control the supply of opioids, which are controlled substances. Plaintiffs' primary contention is that opioids should have never been marketed or distributed to women who were pregnant, or who could become pregnant, and that liability flows from this most basic premise. And, of course, Plaintiffs contend that Defendants should have controlled their drugs, such that no secondary, diversionary market existed, and a pregnant woman could not have obtained opioids from that source either.

Had the Court properly analyzed the typicality of Plaintiffs' RICO claims in the same manner that it has in cases brought by the PEC, it would have come to a different result and

---

[19] "The fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012).

typicality would have been recognized. The Court has on numerous occasions in those cases, e.g. on Motion to Dismiss the *Summit County* pleadings, found that Defendants' conduct, if true, violated RICO. Those plaintiffs were not required to prove that every citizen who took opioids became addicted, nor did the Court concern itself that Defendants would need to assert third party liability against users of opioids within those jurisdictions. Similarly, the birth mother's "addiction" is not a viable defense to the Guardians' statutory claims of RICO or the California UCL, because third party contributory negligence is not a defense to those claims, which are statutory.[20] And, as stated, the Court has entered orders in the claims brought by the PEC's local governments clients which prevents the joinder of doctors, as potential third parties. *See* Case: 1:17-md-02804 Doc #: 3561 Filed: 11/18/20 (Order on Track Three Cases). The Court's same analysis that prevented the joinder of the prescribing doctors in those cases applies here. As the doctors' possible third-party liability under a RICO claim is entirely irrelevant to, so too the potential culpability (which this Court describes as the "addiction" status of the birth mother) is entirely irrelevant under RICO and the California UCL statutory claims.

Finally, the entire purpose of the MDL process is to provide for uniformity and consistency and, yet, the Court, with no explanation, fails to follow its prior typicality analysis. (And the Court cannot circumvent the basic tenet of MDL practice by claiming to designate some opinions as "hands-off" for other MDL claimants, much less that upon review, the 6th Circuit may not consider the Court's prior words on the exact same matter.) The Court did not state that the nuisance cases

---

[20] Defendants might avail themselves of is entirely hypothetical. Instead, the record before the Court is that Defendants have asserted no legal defenses to Plaintiffs' claims. See *Humphrey v. Stored Value Cards*, No. 1:18-CV-1050, at *13-14 (N.D. Ohio Nov. 16, 2018) (emphasis added) ("Defendants' insistence that Plaintiff and class members are subject to **unspecified defenses are not sufficient to defeat class certification.**") Regardless, a "blame the mother" defense for the NAS birth is necessarily a third party claim (or counterclaim if the birth mother is also the guardian) contributory negligence claim.

should be denied certification because each County would have a different level of addiction rate to support its nuisance claim. Regardless, since the level of addiction is not part of any claim or defense, the issue cannot be the basis for denial of class certification based on typicality.

### E. The Court Erroneously Failed to Follow State Law in Analyzing Plaintiffs' State Law Claims

The Court noted only that Plaintiffs are seeking certification under State law. (Opinion at 4.) The Court makes no mention of what those State laws claims are, what their elements are, nor whether those state law claims are routinely certified for Rule 23 treatment under state law. The most glaring example is the failure of the Court to do any analysis of Plaintiffs' UCL claim under California law. As noted in the reply brief, in one of the cases that this Court remanded to California, Justice Breyer wrote an extensive 100-page opinion on the elements of the UCL and the fact the Defendants' wrongful conduct in the marketing, sale and distribution of opioids violated this act, which opinion was issued after Plaintiffs filed their Motion for Class Certification. *City & Cty. of S.F. v. Purdue Pharma L.P.*, No. 3:18-cv-07591-CRB, 2020 U.S. Dist. LEXIS 181274 (N.D. Cal. Sep. 30, 2020). Not only did Defendants fail to attempt to distinguish the holding in their Response, they never even cited the contravening authority which they were obligated to do as officers of the court owing duties of candor. Response, *passim*. Neither Defendants, nor this Court, offered any analysis of why Plaintiffs' UCL claims cannot be certified, which is common practice under Rule 23 in California courts, nor why Justice Breyer wrongfully interpreted the UCL in finding that Defendants could be found liable and that Rule 23 treatment was appropriate.

Significantly the UCL statute focuses solely on the Defendants' conduct and expressly provides for equitable relief and for class certification for violations. Like most statutory claims, contributory negligence is not a defense to liability under the UCL. See Plaintiffs' Reply Brief at

27. Thus, Defendants' and the Court's default position to "blame the addicted mother" or "blame the prescribing doctor" is no defense to the UCL claim, and so there are no individual issues that can arise.

Similarly, the Court undertook no analysis of Ohio state law. Plaintiffs cited a recent decision that found that medical monitoring is an appropriate remedy under Ohio law and stated that they may be brought as a class action. Plaintiffs' Reply Brief at 27-30. The Court ignored this holding in its entirety, as well as failing to analyze the potential of certification of any of the Ohio state law claims.

Given the refusal of this Court to properly consider the state law issues, Plaintiffs believe the best practice is for this Court to vacate its orders and immediately transfer the two cases at issue in the procedural bellwether out of the MDL and back to their originating courts. These courts would be better equipped to analyze the applicability of State law to the Guardians' various State claims. This transfer would also be consistent with the other numerous recent transfers of cases by this Court. At this point, the Court seems to be overloaded and is engaging in conflicting decisions. These are the very circumstances in which a transfer from the MDL court should be made.

## CONCLUSION

In denying certification of the four putative classes before it in the bellwether procedure, this Court (1) relied on clearly erroneous findings of fact, (2) applied the wrong legal standard, (3) applied the incorrect legal standard when reaching its conclusion, and (4) also made clear errors of judgment. As a result, this Court has abused its discretion and it must reconsider its Order and grant certification, or, alternatively, vacate that order and transfer these two actions back to their originating jurisdictions.

Respectfully submitted,

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Emily C. White (0085662)
Dann Law
P.O. Box 6031040
Cleveland, OH 44115
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Putative Class Liaison Counsel for Guardians of NAS Children*

Thomas E. Bilek
Kelly Cox Bilek
The Bilek Law Firm, L.L.P.
700 Louisiana, Ste. 3950
Houston, TX 77002
Telephone: (713) 227-7720
tbilek@bileklaw.com
kbilek@bileklaw.com

*Putative Class Co-Lead Counsel for Guardians of NAS Children*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on February 16, 2021 with the Clerk of Court and served upon all parties via CM/ECF at the party's registered email address.

/s/ *Marc E. Dann*
Marc E. Dann (0039425)