**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: | ) | |
| *"All Cases"* | ) | |
| | ) | DISCOVERY RULING NO. 14, PART 18 |
| | ) | REGARDING PLAINTIFFS' |
| | ) | PRIVILEGE CLAIMS |

**AGENDA ITEM 288**

During Track Three discovery, Plaintiffs produced certain documents that were subsequently introduced by defendants during the deposition of Lake County employee, Joel A. DiMare, Jr.  When defense counsel attempted to ask DiMare about the documents, Plaintiffs' counsel interjected and demanded claw-back, on the ground that the documents were attorney work-product.[1]  Thereafter, the parties engaged in a meet-and-confer process in an attempt to resolve the status of the documents.

The parties have been unable to reach agreement about the attorney-client privilege or work-product status of the documents, and whether claw-back is appropriate.[2]  Plaintiffs submitted the disputed documents to the Special Master for *in camera* review.  Both parties submitted letter

---

[1] The documents in question, LAKE000625584-86, consist of (1) an email from an employee of Lake County to an employee of a firm known as Compensable Benefits – which administered Lake County's workers' compensation claims – requesting claims data; and (2) the requested list of claims.

[2] Although there is some reference in the parties' submissions to both attorney-client privilege and the work-product doctrine, the briefing is focused almost entirely on the latter.  Accordingly, and because the Sixth Circuit has ruled that the standards for waiver are the same under both doctrines, the Special Master considers the applicability of the work-product doctrine to be dispositive of this dispute.  *See In re Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 306 (6th Cir. 2002) ("[T]here is no compelling reason for differentiating waiver of work-product from waiver of attorney-client privilege.").

1

briefs and supporting documents detailing their arguments.  Having considered these submissions carefully, the Special Master now rules as follows.

## I.        Legal Standards.

The Special Master has applied the legal standards and authorities set out in **all** prior "Discovery Rulings No. 14, Part x," and incorporates them by reference.[3]  *See, e.g., Zigler v. Allstate Ins. Co.*, 2007 WL 1087607 at *1 (N.D. Ohio Apr. 9, 2007) (a "communication is not privileged simply because it is made by or to a person who happens to be an attorney.  To be privileged, the communication must have the *primary* purpose of soliciting legal, rather than business, advice.") (internal quotation marks and citations omitted, emphasis in original); *see also Fed. Trade Comm'n v. Abbvie, Inc.*, 2015 WL 8623076 at *9 (E.D. Pa. Dec. 14, 2015) ("attorney-client privilege does not apply . . . if the client seeks regulatory advice for a business purpose").  Also, when asserting attorney-client privilege, "[t]he burden of establishing the existence of the privilege rests with the person asserting it."  *United States v. Dakota*, 197 F.3d 821 at 825 (6th Cir. 2000).  *See also* docket no. 3584 at 1 ("The burden is on the proponent to prove that the documents are privileged; and to be privileged, the communication must have the primary purpose of soliciting or receiving legal, as opposed to business, advice.  That line is sometimes very difficult to draw when . . . [a company] operates in a heavily regulated business and regulatory compliance advice from in-house counsel is therefore part of [the company's] day-to-day business operations.").  "Claims of attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit.'"  *In re*

---

[3] *See, e.g.,* docket nos. 1321, 1353, 1359, 1380, 1387, 1395, 1498, 1593, 1610, and 1666.

*Columbia/HCA*, 293 F.3d 289 at 294 (quoting *United States v. Collins*, 128 F.3d 313, 320 (6ᵗʰ Cir. 1997)).

The work-product doctrine "is distinct from and broader than the attorney-client privilege." *In re Antitrust Grand Jury*, 805 F.2d at 163 (quoting *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975)). The doctrine is designed to allow an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 51 (1947). The doctrine is set out in Fed. R. Civ. P. 26(b)(3)(A): "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," but those materials may be discovered if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

So-called "fact" work-product, which is the "written or oral information transmitted to the attorney and recorded as conveyed by the client," *In re Antitrust Grand Jury*, 805 F.2d at 163, may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship. *Toledo Edison Co. v. G.A. Technologies, Inc.*, 847 F.2d 335, 339–40 (6th Cir.1988). Absent waiver, however, a party may not obtain the "opinion" work-product of his adversary – that is, "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories." *In re Antitrust Grand Jury*, 805 F.2d at 163–64 (citations omitted). Documents "prepared by a corporation as part of efforts to ensure compliance with federal regulatory agencies . . . and not because of possible litigation, are not protected by work-product doctrine." *Graff v. Haverhill N. Coke Co.*, 2012 WL 5495514 at *6 (S.D. Ohio Nov. 13, 2012)

3

(quoting *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, 2009 WL 4641707 at

*3 (E.D. Pa. Dec.7, 2009)).

## II.      Ruling.

Walgreens advances four arguments against Plaintiffs' assertion that the documents are

entitled to work-product protection and the Court should therefore allow claw-back.   First,

Walgreens asserts Plaintiffs have failed to establish the documents contain work-product at all,

observing they contain "no opinions about the claims in this lawsuit," they reflect "a response from

a third party provided in the ordinary course of business," and "no attorney is copied or referred

to in the email."[4]   The Special Master disagrees.  Plaintiffs explain the documents were created

"due to a request by [Plaintiffs' counsel] Napoli Shkolnik and Plevin & Gallucci."[5]   Moreover, it

is clear from the date and substance of the documents that they were requested during the pendency

of this litigation for the purpose of gathering information to prove essential elements of Plaintiffs'

case, e.g., the cost of abatement.  The documents contain fact work-product.

Next, Walgreens asserts Plaintiffs waived work-product protection by "voluntary

disclosure of private communications to third parties" – that is, Lake County sent its email seeking

litigation-related information to its outside claims-administrator firm, Compensable Benefits.[6]

Here, again, the Special Master disagrees.  The work-product doctrine "protects from discovery

documents and tangible things prepared in anticipation of litigation by or for a party or by or for

that party's representative."  *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006); *see

also* FRCP Rule 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things

---

[4] Walgreens' letter brief from Sharon Desh to Special Master at 1 (Feb. 5, 2021).
[5] Plaintiffs' letter brief from Hunter Shkolnik to Special Master at 1 (Feb. 11, 2021).
[6] Walgreens' letter brief at 2.

that are prepared in anticipation of litigation or trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, *or agent*.)") (emphasis added).  Here, Compensable Benefits was Lake County's agent, so the information it gathered and the communications regarding its gathering was work-product.

Third, Walgreens maintains Plaintiffs "waived any claim of privilege by affirmatively producing dozens of emails from other Lake County employees asking *internal departments* to link their expenses to 'the opioid crisis' in order to 'strengthen our case.'"[7]  Walgreens submitted numerous examples of such emails.  In response, Plaintiffs explain that the other documents Walgreens points to, which Plaintiffs do *not* claim are privileged, were created "*in the absence of direction from counsel.*"[8]  In contrast, Plaintiffs explain, the documents it seeks to claw back *were* created at the specific request of counsel.  Plaintiffs therefore concluded they had a legitimate basis to claim privilege over only the two documents they seek to claw back, but did not have a valid privilege claim regarding the other documents Walgreens identified.

The Special Master reviewed all of these documents critically and asked questions of Plaintiffs' counsel in order to understand the factual and legal distinctions undergirding Plaintiffs' assertions.  (Due to the nature of this inquiry, which principally addressed attorney-client communications, these questions and answers were *ex parte*.)  Although the Special Master initially believed Walgreens' waiver argument appeared strong, careful assessment of the facts reveals there was no waiver.  Put simply, the other documents identified by Walgreens were not located or created or assembled at the direction or request of counsel, and this distinction makes a difference: the documents Plaintiffs seek to claw back were "prepared in anticipation of litigation,"

---

[7] Walgreens' letter brief at 2 (emphasis in original).
[8] Plaintiffs' letter brief at 2 (emphasis in original).

while the others were not.  Fed R. Civ. P. 23(b)(3)(A).  Production of these other documents in discovery does not work to waive privilege with respect to LAKE000625584-86.

Finally, however, Walgreens argues that "the factual information in the document[s] at issue is central to this case and unavailable to Defendants by other means."[9]  Plaintiffs failed to respond to this fourth contention and so apparently concede it.  As Walgreens explains, the documents show that: (1) employees of Plaintiff Lake County received opioid prescriptions dispensed by pharmacies with County approval; and (2) Lake County made no effort to review the opioid claims with special diligence.[10]  The documents also provide payment calculations related to these claims.  This factual matter is clearly relevant to Walgreens' defenses, and the Special Master accepts as uncontroverted Walgreens' assertion that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed R. Civ. P. 23(b)(3)(A)(ii).

Accordingly, Plaintiffs' request to claw back LAKE000625584-86 is **OVERRULED.**

### III.    Objections.

Any party choosing to object to any aspect of this Ruling must do so on or before March 5, 2021.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**Dated: March 1, 2021**

---

[9] Walgreens' letter brief at 2.
[10] *See id.*

6