# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION  ) ) ) | MDL 2804 |
| | Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO:  ) ) | |
| | Judge Dan Aaron Polster |
| *Doyle v. Purdue Pharma L.P., et al.* No. 1:18-op-46327  ) ) ) | **OPINION AND ORDER REGARDING NAS GUARDIANS' MOTION FOR RECONSIDERATION** |
| *Artz v. Purdue Pharma L.P., et al.* No. 1:19-op-45459  ) ) ) | |
| *Salmons v. Purdue Pharma L.P., et al.* No. 1:18-op-452681  ) ) | |

Before the Court is the NAS Guardians' Motion for Reconsideration of the Court's Opinion and Order denying their motion for class certification. Doc. #: 3630. On March 1, 2021, Defendants collectively filed a response in opposition. Doc. #: 3638.[1]

Defendants begin their response with the assertion: "Plaintiffs' motion for reconsideration of the Court's order denying class certification fundamentally misconstrues both the order itself and the governing case law." *Id.* at 1. The Court fully agrees. Accordingly, for all of the reasons stated in Defendants' response—and as briefly discussed below—the Guardians' Motion for Reconsideration is **DENIED**.

\* \* \* \* \*

---

[1] A redacted version is available at Doc. #: 3636-1.

The Court has recently articulated the standard for considering a motion for reconsideration as follows:

> "Traditionally, courts will find justification for reconsidering interlocutory orders [only] when there is . . . a need to correct a clear error or prevent manifest injustice. "*Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004). "Motions for reconsideration are disfavored, and a motion for reconsideration is unfounded unless it either calls . . . attention to an argument or controlling authority that was overlooked or disregarded in the original ruling, presents evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law." *Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003).

Order denying reconsideration of Pharmacy Defendants' motion to dismiss, Doc. #: 3499 at 2-3.

The Guardians assert the Court committed clear error and/or abused its discretion with respect to its findings of fact by: (1) misunderstanding pharmacological weaning; (2) concluding that putative class members' guardian status is not readily ascertainable; (3) amending the class definition to include a requirement that the birth-mother be addicted to opioids; and (4) concluding that a diagnosis of NAS is not ascertainable. Motion at 4-9. These characterizations of the Court's Opinion are so wholly incorrect that the Court is compelled to address them briefly below.

First, the Guardians assert "[t]he Court has determined that the pharmacological weaning of the NAS Children at issue in this matter cannot be related to *in utero* opioid exposure." *Id.* at 5. That is not remotely what the Court determined. What the Court did determine, in complete agreement with the Guardians' own proposed class definition, is that medical treatment of a child with opioids for reasons **other than** pharmacological weaning means the child's guardian is, by definition, not a member of the class.

By its own explicit language, the Guardians' proposed class excludes "any infants and children who were treated with opioids after birth, other than for pharmacological weaning." Motion for Class Certification, Doc. 3066-1 at 5. The Court determined, based on evidence provided by the Guardians themselves, that children of two of the three proposed class

2

representatives were treated with opioids many years after their birth. This treatment was (obviously) wholly unrelated to pharmacological weaning. The Court never concluded that the two children of the class representatives were *not* pharmacologically weaned from opioids *at or near birth*; the Court only observed these children were *much later* treated with opioids *for reasons other than weaning*, which disqualified their guardians as class members under the Guardians' own class definition. If the Guardians' are now attempting to argue that, for example, opioid use following tonsil surgery at age 10 should still be considered pharmacological weaning, then the Court must conclude it is the Guardians who are "fundamentally confused on the topic of pharmacological weaning." Motion at 5.

Second, the Guardians complain no defendant even argued a class of guardians is not ascertainable, and insist the Court got it wrong when it so concluded. Motion at 6. The Guardians then go on to reiterate previously-made arguments, relying especially on their contention that "determining guardianship is hardly a complex process." *Id.* This misses the point of the Court's ruling. The Court agreed in part with the Guardians when it explicitly stated "it is uncontested that legal guardianship can be objectively ascertained by documentary evidence." Doc. #: 3622 at 12. The Court went on to state, however, that the existence of documentary evidence "alone cannot make a class ascertainable where class membership is even modestly in flux over a long period of time." *Id.* (citing *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982)). The Guardians do not even attempt to address whether, or to what extent, the Court's conclusion on this point is in error. The Court stands by its conclusion that a class of guardians is not sufficiently ascertainable when class membership must be assessed for a period of many years, during which time critical qualifying facts will change.

3

Third, the Guardians assert the Court "attempted to rewrite the Plaintiffs' class definition to require an additional factual element: that the birth mother not only have been prescribed opioids, but that she also must have been 'addicted' to opioids." Motion at 7 (citing Opinion at 24). This assertion reflects a misreading of the Court's opinion that is so stark, it is hard to understand. The Court was very explicit when it chose to rewrite the Guardians' proposed class definition: "the Court rewrites [the birth mother's opioid prescriptions] component [of their class definition] to be: 'the child's mother filled a prescription for opioids in the 10 months prior to the child's birth.'" Opinion at 18. This rewrite makes no reference whatsoever to addiction, much less adding a requirement that the birth mother be addicted to opioids. Instead, the portion of the Opinion that the Guardians cite comes from an entirely different discussion, addressing Rule 23's typicality requirement. There, the Court noted that: (1) one of the class representatives who had ***never*** been addicted to opioids ***was*** a member of the proposed class; and (2) this class representative was not legally or factually typical of other class members, who ***were*** addicted. *Id.* at 24. The Guardians' third basis for reconsideration, like the first, misreads the Court's opinion and is completely devoid of merit.

Fourth, the Guardians contend "[t]he Court found that whether a child was diagnosed with NAS was not ascertainable because it was too 'difficult' of an inquiry for it." Motion at 8. The Guardians then complain the Court "ignore[d] the fact that the putative class only includes those cases in which a child has already been medically diagnosed with NAS," and "No one is asking the Court to diagnose a child with NAS. Instead, the Court's inquiry is whether a prior diagnosis of NAS is an objective criteria." *Id.*

What the NAS Guardians refuse to accept, however, or fail to grasp, is that they have provided no administratively feasible way for the Court to determine whether and how a prior

4

diagnosis of NAS was made. The Guardians cite to an April 2019 Report by the Council of State and Territorial Epidemiologists (the "Report")[2] for the proposition that "sixteen states already require that NAS-diagnosed birth be enrolled on their own state registry."[3] *Id.* But the Guardians do not disclose that the Report then goes on at length to describe how difficult it is to "define and operationalize a definition of NAS." Report at 5. *See also id.* ("efforts to examine trends in NAS at state and national levels and to compare incidence across jurisdictions have been hampered by the lack of standardized case definitions."); *id.* at 9 ("the case definition for reporting purposes varies widely"); *id.* at 12 ("Jurisdictions were asked, '*How would you propose to standardize the NAS case definition?*' As shown in Table 4, there was no consensus."); *id.* at 18 (listing "issues and limitations of using administrative data and ICD-CM diagnosis codes"); *id.* ("The limitations of administrative records are clearly recognized; infants could be missed because the physician forgets to record the diagnosis or fears stigmatizing mothers and infants. Conversely, infants may erroneously be counted as cases of NAS because of clerical error.").

For these reasons, the Court easily stands by its conclusion that it is not administratively feasible to make individualized, case-by-case determinations of whether each potential class member's ward received a diagnosis of opioid-related NAS at or near birth.

Finally, the Guardians also argue the Court made clear errors of law. But these arguments rely on the same mischaracterizations addressed above. Accordingly, for the reasons stated herein and also for all of the reasons stated in Defendants' response, the NAS Guardians' Motion

---

[2] Nancy Binkin, Neonatal Abstinence Syndrome (NAS): Environmental Scan and Key Informant Interview Analysis Report, Council of State and Territorial Epidemiologists (April 2019), *available at* https://cdn.ymaws.com/www.cste.org/resource/resmgr/pdfs/pdfs2/NAS_Environmental_Scan_Repor.pdf

[3] It is worth noting that the Report surveyed "all 50 states, the District of Columbia, [and] the Northwest Portland Area Indian Health Board." Report at 8. Thus, of the 52 responding jurisdictions, the 16 states to which the NAS Guardians refer represent only 31%. *Id.*

for Reconsideration is **DENIED**.

**IT IS SO ORDERED.**

      <u> /s/ Dan Aaron Polster  March 4, 2021</u>
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**