1          **UNITED STATES OF AMERICA**

           FOR THE NORTHERN DISTRICT OF OHIO
2                    EASTERN DIVISION

3                    - - - - -

4    IN RE:  NATIONAL PRESCRIPTION       )
     OPIATE LITIGATION                   )
5                                        )   Case No.
                                         )
6    THIS DOCUMENT RELATES TO:           )   1:17MD2804
                                         )
7    Case Track 3                        )   Hon. Dan A. Polster
                                         )
8

9                    - - - - -

10        TRANSCRIPT OF TELECONFERENCE STATUS BEFORE

11       HONORABLE JUDGE DAN A. POSTER, JUDGE OF SAID

12         COURT, ON WEDNESDAY, MARCH 10TH, 2021,

13             COMMENCING AT 1:30 O'CLOCK P.M.

14                   - - - - -

15

16   Court Reporter:            GEORGE J. STAIDUHAR
                                801 W. SUPERIOR AVE.,
17                              SUITE 7-184
                                CLEVELAND, OHIO 44113
18                              (216) 357-7128

19                   - - - - -

20

21

22

23

24

25

1               P R O C E E D I N G S

2               THE COURT:  Okay.  We have got the court

3    reporter?

4               COURT REPORTER:  Yes, Judge.  It's George.

5               THE COURT:  Okay.  Hi, George.  All right.

6               Well, this is our monthly status call in

7    Track 3.  I appreciate the status report.  This one is

8    not going to be pro forma like some of the more recent

9    calls because I want to -- that's why I required the

10   party representatives.

11              The first thing is that the Track 3 trial

12   that is now scheduled for October, my intent is it is

13   going forward.  Our Court is resuming jury trials

14   beginning of May.

15              For May and June, we are keeping the

16   conditions we had last fall, trials no more than five

17   days, and no significant COVID objections, but I don't

18   expect those limitations.

19              We will be continuing, and Judge Gaughan

20   knows that I have this case scheduled for October, and

21   she has okayed it.  And if by some chance -- you know, by

22   then, anyone who wants a shot will have been able to get

23   them, and if by some chance the pandemic takes a really

24   bad turn, we can always do this trial virtually.

25              But my intent would be to pick the jury in

1    person, and they will probably deliberate in person, but

2    if we have got to do the testimony by zoom, so be it.

3    So everyone should make plans, if we have to try it, we

4    will try it in October as scheduled.

5                    And Robert Pitts from our Clerk's Office

6    will be courtroom deputy for the trial, and James Jones

7    from our IT department will be handling all the IT work,

8    so people can coordinate with them.

9                    The second thing is, I need to discuss

10   really the balance of the MDL, which is now in my view

11   primarily with the pharmacy Defendants.  Everyone knows

12   because they have been reading in the paper that over the

13   last year-and-a-half the PEC and the AGs have been

14   negotiating to try and put together a global deal with

15   the three big distributors and J & J.  That almost

16   happened a year ago.  Everyone knows what the dollar

17   amounts are because that has been in the paper, too.

18                   I expect that that's going to happen.  There

19   is enough pressure because of imminent trials that I

20   think it is going to happen soon.  A couple of

21   manufacturers, there are various discussions going on

22   there.  That leads to the pharmacies.  There are five

23   Defendants in this case.

24                   Giant Eagle is pretty local.  The other four

25   are national.  The only pharmacy Defendant in Judge

1    Breyer's case in San Francisco, I believe, is Walgreens.

2    The other three are not in there, and while the

3    pharmacies are included as Defendants in the state case

4    in New York, it has just been moved from March to June.

5    And I am sure will go forward, my understanding is that

6    they only have distribution claims, not dispensing

7    claims.

8            So it is not the full set of claims.  I had

9    urged the parties a year ago to engage in some serious

10   settlement discussions.  The pharmacies didn't want me

11   doing it.  I said okay.  Then, you need to do it

12   privately.  Pick a mediator.  Everyone picked Judge

13   Gandhi.  He had a number of meetings.

14           He has not communicated with me, but I have

15   been told that he has ended his mediation efforts, and

16   that there are no discussions going on now.

17           Is that correct, that there are no ongoing

18   discussions with Jay Gandhi?

19           MS. TABACCHI:  Tina Tabacchi from Jones Day,

20   your Honor.  That is correct, that the mediation has been

21   terminated before Judge Gandhi.

22           THE COURT:  All right.  Well, again, he

23   didn't communicate that with me, but I had learned that.

24   So I don't know what happened over the last year.  I

25   think a whole year was wasted.

1          You know, I don't know -- I know that the

2     PEC and the AGs are willing to seriously discuss global

3     settlement because they have done it with other

4     Defendants.  So I don't know if the impediment was that

5     the pharmacies were not interested in global resolution,

6     or while both sides were interested, they were so far

7     apart that Judge Gandhi felt he couldn't do anything

8     further.

9          But as I've said many times, I think

10    settlement would be harder, not easier, after we conclude

11    this October trial, and if there needs to be a bench

12    proceeding afterward after that, if the Defendants win,

13    the Defendants are going to say "at least we said there

14    is no liability.  We are not going to pay anything."

15         If the Plaintiffs win, then, every county in

16    the country is going to say, "you know, our case is just

17    as strong as Trumbull and Lake Counties, and we want that

18    much if not more" and be impossible to resolve.

19         So unless someone has any better

20    suggestions, I see no alternative but to tee up some

21    number of additional cases for trial, and the number we

22    will discuss now.  The number needs to be number of cases

23    that are tried to verdict.

24         Both sides will feel we have a good sense of

25    how this is going to shake out, and we will use it to

1    resolve the balance, and what number it is, we can

2    discuss that.  I have some idea, but my thought is that I

3    would keep these cases for discovery because it is going

4    to be far more efficient for me along with Special Master

5    Cohen to manage them and keep them coordinated and moving

6    forward than to have a bunch of different judges doing

7    it.  Obviously, if the cases need trial, they will need

8    to be remanded to those Districts.

9            Whether or not I keep them also for

10   dispositive motions and Daubert motions, that's something

11   I would probably discuss with Judge Caldwell who chairs

12   the JPML.  I can decide that down the proceed.

13           So unless, you know, -- my preference of

14   course, is to have the PEC and the AGs and these

15   Defendants engage in significant settlement discussions,

16   but of course, I can't order that or mandate that.  If it

17   is not -- there is no willingness on both sides to do it

18   now, then I have just got to proceed with this other

19   approach.

20           And my thought is these additional trials

21   should be streamlined and focused like this one involve

22   only the pharmacies.  And I don't think they need Giant

23   Eagle.  My guess is Giant Eagle, they told me they only

24   operate in Ohio.

25           So there is no -- they wouldn't be involved

1  in the other cases around the country, and it probably

2  makes sense to just have public nuisance just like this.

3          There will be -- public nuisance is

4  different in each state.  I don't know if there is some

5  compelling to have RICO, but I think it complicates

6  things, but I will leave that to the parties to structure

7  and streamline these cases, so they can be tried in a

8  reasonable time, and everyone can look at the results.

9          So I guess my question is -- and it is

10  probably -- well, both sides, but I will start with the

11  Defendants, how many verdicts do you think will be

12  necessary to give you a sense of whether these cases

13  overall should be settled?  How many additional -- in

14  addition to the one we will get here in my case, how many

15  additional?

16          MR. STOFFELMAYR:  Judge, its Caspar

17  Stoffelmayr.  If I could say a couple things.  I don't

18  have an answer to your question, what's the right number,

19  but --

20          THE COURT:  We are going to come up with it

21  today, Kaspar.

22          MR. STOFFELMAYR:  But I did want to comment

23  on something you did say earlier because I think it makes

24  this -- I don't want to make it more complicated, but

25  there is something else going on here when you put it

1    like that.

2            First, the point, a factual clarification,

3    as far as federal cases that are currently going forward,

4    of course, there is also the Cherokee Nation case and

5    some of the pharmacies --

6            THE COURT:  I understand that, but there is

7    no trial set, Kaspar.  So I have no idea -- the

8    pharmacies are in there and eventually, but it is not --

9    I don't control the timing or anything.

10           MR. STOFFELMAYR:  The other thing I think we

11   need to keep in mind that, you know, you made a point

12   about Giant Eagle being in this case, not being in other

13   cases, but in every case -- or I shouldn't say every

14   case -- in virtually every case, there is a Giant Eagle.

15           There are very significant local players who

16   are sometimes part of the litigation, sometimes not.  It

17   might not be Giant Eagle.  It could be a different

18   supermarket chain.  It could be a major regional drug

19   chain.

20           At one point Discount DrugMart was in the

21   Track 1 cases.  And so if the way you structure it is to

22   say we are only working for a nuisance case and we are

23   only working for a case involving these four chains,

24   there are other chains that are not maybe as big as

25   Walgreens or CVS but certainly approaching in size, a

1    Rite Aid or a Wal-Mart, you are already sort of

2    gerrymandering the universe of cases that are available

3    for consideration.

4            I mean, you would have to find Plaintiffs

5    who are willing to say, you know, forget about the major

6    local players.  We are happy to litigate only against

7    these four and also Plaintiffs who are willing to say we

8    will dispense with all but our nuisance claims.

9            Surely such Plaintiffs exist, but you are

10   giving Plaintiffs, you know, sort of complete control

11   over which are going to be the cases that are candidates,

12   and maybe that's okay, but we should all understand, if

13   you are asking us how many cases would we have to try to

14   feel like we understand what the board really looks like,

15   that's not going to happen, at least not very easily if

16   the only cases that are tried are cases in which the

17   parties and the claims have been sort of gerrymandered in

18   a way that makes them seem very unrepresentative.

19           And there are effectively cases hand

20   selected by Plaintiffs because we have given them veto

21   power to exclude cases simply by saying, you know what?

22   I don't want to give up my RICO claims.  I don't want to

23   give up my claim against Supermarket Chain X.

24           THE COURT:  Well, I was going to assume that

25   both sides are going to work together.  I was going to

1    request Plaintiffs, the parties to work together, and see

2    how many you can agree on, and if you can't, you know,

3    the Plaintiffs can suggest X and the defense can suggest

4    X, and I will probably pick some from each of the list.

5              I mean, I have done that in the prior MDL.

6    So again, you all have to figure this out.  I mean, my

7    preference is we have meaningful settlement discussions

8    now.  I think candidly everyone knows the dollar amounts

9    that the distributors and J & J are paying.  All right.

10   That's there.  It seems to me that's the benchmark.

11             Now, I am sure these Defendants will say we

12   are going to pay far less.  The Plaintiffs probably

13   should say, well, you should pay far more, but it is

14   there.  But if you need multiple verdicts, then we got to

15   start moving toward that.

16             And the question is, how many?  And you

17   know, I don't know what to do about these local players

18   candidly.  You all have to figure this out.  The question

19   is, how many trials do we need?  So that's a question to

20   the Plaintiffs and the Defendants.

21             If the Plaintiffs have a suggestion as to

22   the number -- I mean, I understand how expensive this is

23   for both the Plaintiffs and -- everyone knows the

24   Plaintiffs' lawyers are laying out all this time and

25   money on the if-come.  It is a staggering amount so far,

1    but I understand that.  They will do it.

2              Defendants all have tons of money.  Clearly,

3    I can't imagine that the Defendants' strategy is to try

4    hundreds of these.  I mean, if that happens, the only one

5    left will be Wal-Mart.  There will be a monopolist.  I

6    can see why they want it, but I don't see why the others

7    would.

8              So I am assuming that there is some number

9    we need.  So I would like to hear from both sides as to

10   what you think, what number you think that is, and we

11   will start the process.

12             MR. DELINSKY:  Your Honor, this is Eric

13   Delinsky for CVS.  It is a fair question.

14             The factor that we have to consider in

15   answering that are the trials that are set in state cases

16   because they bear on the exact same question, and they

17   inform the analysis in the same way that another federal

18   trial would.

19             In other words, we currently have a trial

20   date in a West Virginia state bellwether case for

21   November.  That date may or may not remain in that case,

22   may or may not include dispensing claims as opposed to

23   only distribution claims or in them.

24             There is a date in a Florida AG suite for

25   the spring of the 2022 that includes two of us.  There is

1    another date in the spring of 2022 that includes another

2    state AG case, that includes three of us, and the list

3    goes on.

4              My only point in speaking up is to raise

5    the fact that there are these other state suits out

6    there that will provide the benchmarking that you are

7    raising.

8              THE COURT:  It may or may not.  If they go

9    forward, I have zero control over any of those cases,

10   what those judges do, what claims are in, what Defendants

11   if they ever go forward, so all I can do is the ones I am

12   in charge of, which is all the federal ones, so I agree

13   you may get some input.

14             If some of these go to trial, you can factor

15   that in.  The question is -- but I have got to make sure

16   that regardless in case none of those cases go to trial,

17   we will have a meaningful number of federal verdicts if

18   that's what the Defendants want and what they need.

19             Are you telling me you need those before

20   you can meaningfully get down and try to resolve

21   this?

22             MR. DELINSKY:  At this point in time, your

23   Honor, we do not -- and speaking only for CVS --  need

24   additional federal bellwethers.  We feel as though we

25   have a sufficient number of bellwethers as currently

1    structured.

2              THE COURT:  Except we don't know, Eric, if

3    any these are going to happen, and they don't -- I don't

4    know if they include dispensing claims, distributor

5    claims, whatever though --

6              MR. DELINSKY:  Your Honor, I understand your

7    concerns and your questions.  I am hearing them.  I would

8    just like to go back to something that Mr. Soffelmayr

9    said.

10             Speaking for CVS, I would predict, speaking

11   for the other pharmacies -- and I know it is not what you

12   had envisioned for today -- I do think it would be

13   helpful if we could have a few days at least or a week to

14   go back, look at the trial schedules, put in a submission

15   to you setting forth when they are, where they are, what

16   kinds of claims they may or may not have included.  It is

17   a puzzle piece, it is.  And it requires some thought, at

18   least on my part.

19             THE COURT:  Any of the other Defendants want

20   to say anything?

21             Do the Plaintiffs want to say anything as to

22   what they think I should set?

23             MR. RICE:  From past experience, I think you

24   should set five cases for trial for -- to work them up

25   geographically disbursed.  I know that you -- I think you

1    take senior status -- I think I read that -- so I know in

2    some MDLs, the judges that have taken senior status will

3    actually go to another jurisdiction through the proper

4    channels.

5           THE COURT:  I am not planning to do that,

6    Joe.  These will go to different judges.  They will go to

7    five different judges in those districts.  I am not going

8    to be doing that.

9           MR. RICE:  Well, we think you should take

10   five cases and work them up, that in conjunction with

11   what may or may not take place in state court, but over

12   two thirds of the cases are in your courthouse and maybe

13   more than that, a higher percentage than that.

14          So I don't think five federal cases is too

15   many at all, and we should be able to get to know where

16   everybody is at the conclusion of those.

17          THE COURT:  All right.  Well, I was actually

18   thinking of five.  All right.  Plus I have got this one,

19   and that would give six, plus whatever you get out of the

20   state court, you know, whatever happens there.

21          So I think that's what I am inclined to do,

22   just direct the parties to come up with these cases.  And

23   again, I don't want to do this.  It is a huge amount of

24   work for me and Special Master Cohen.  Everyone is paying

25   him.  This results in a huge amount of work for those

1    five judges.  Don't blame me, but I will take that peak.

2               Again, if the Defendants -- if Defendants

3    say they need -- you know, they are not willing to

4    seriously explore resolution now, then, I have no other

5    choice, and I can't get any, you know, I can't make the

6    Defendants to talk to me privately.  They have chosen not

7    to.

8               I just have to go with what I see and what I

9    know from my experience, and if the Defendants are

10   willing to talk to me privately, I am happy to have those

11   discussions, but in the absence of that, I see no other

12   alternative.

13              So I will direct -- I am going to direct the

14   parties to come up with five cases, and hopefully, you

15   can agree on some or all of them.

16              MR. STOFFELMAYR:  Judge, it is Kaspar.  May

17   I offer a few thoughts before you issue a final order or

18   put something in writing?

19              THE COURT:  Yes.

20              MR. STOFFELMAYR:  One, is because some of us

21   have a much heavier state court trial schedule than

22   others, we may propose anyway that these five cases not

23   all necessarily be five cases that involve all four

24   Defendants because some of us will end next year with

25   three or four verdicts and some with one or two, and so

1    that calculus will -- may be a little different depending

2    on the Defendant.

3              The other thing I would ask you to consider

4    is that we not lock ourselves into trying to try cases

5    that are simultaneously supposed to be representative and

6    only public nuisance cases only involving a small subset

7    of Defendants.

8              And I don't just mean that in the abstract,

9    but on the public nuisance cause of action, you know, we

10   already know, for example from the state court

11   litigation, that numerous state judges have rejected

12   those claims.

13             They said there can't be a public nuisance

14   claim like that under the laws of their case, and in some

15   states, that has conflicted with orders in the MDL Court

16   under the same state law.  And even so, unless you are in

17   a state where the law is very clear and there are only a

18   handful of those, anyone is going to know that a public

19   nuisance verdict is going to be very vulnerable on appeal

20   just on the question whether a public nuisance claim even

21   exists here.

22             So I would suggest we, at least, have the

23   option of thinking about whether there are instances

24   where the, quote unquote, representative case we should

25   be trying to make it actually representative isn't

1    exclusively a public nuisance case.

2    THE COURT:  I really don't care.  If you

3    want to forget public nuisance, you want to go with RICO

4    all around the country, RICO is the same everywhere,

5    federal law.  That's fine.  You want to forget public

6    nuisance and just go RICO, all right, fine.

7    MR. STOFFELMAYR:  And I hope you are not

8    misunderstanding me.  I am not saying, telling anyone is

9    saying we want to forget public nuisance.  I was just

10   asking the Court not to enter an order saying we are

11   absolutely limited on all sides to public nuisance.

12   THE COURT:  Well, but I think they have got

13   to include all the national Defendants.  The idea of

14   having two or three -- everyone should be in.  If you

15   want to include a bunch of regional people -- I don't

16   think you should be cluttering these trials up with too

17   many Defendants.

18   MS. MOORE:  Your Honor, this is Kelly Moore

19   for Rite Aid.  I would just point out that Rite Aid has

20   never been a national chain.  At its biggest, it was in

21   30 states, and currently, it is in 18.  So I don't know

22   it is in the same category.

23   THE COURT:  Well, look, I can't -- you know,

24   you all are going to have to work this out.  This is why

25   -- I don't want to do any of these other trials, but

1 again, the pharmacists aren't giving me a lot of choice.

2 The pharmacies are not giving me much choice.  That's why

3 I have got the clients on here.  All right.  The clients

4 have to decide what they want to do.

5     They want to hemorrhage money trying these

6 cases all over the country in state and federal court

7 forever, they have a legal right to do it until they

8 drop, go bankrupt, or win them all, the Plaintiffs might

9 quit.  But no other -- I can say categorically no other

10 Defendants in this MDL is operating that way.

11     They have all been willing to, at least

12 seriously, explore resolution.  Some have gone into

13 bankruptcy because that was their only option, but I

14 believe every other Defendant expects a willingness to

15 explore resolution, but if the pharmacies choose not to,

16 that's their right.

17     Okay.  But, then they are going to be

18 litigating all over the country.  That's the only thing I

19 can do.  So you all figure this out.  You get me the

20 cases.  If you don't get them, I will pick them myself.

21 All right.  So --

22     MS. MOORE:  Your Honor, once again, Kelly

23 Moore --

24     THE COURT:  -- if you figure out something

25 better and you want to engage in some significant

1    settlement discussions and you want my help, everyone

2    knows how to reach me.

3              Yes, Kelly?

4              MS. MOORE:  Once again, for Rite Aid, your

5    Honor, I don't think it is a fair assumption to say the

6    Defendants have not been willing to engage in serious

7    settlement negotiations.  I know your Honor is not fully

8    aware of the negotiations and discussions with

9    Judge Gandhi, but from my standpoint, I would not say

10   that's an accurate or fair characterization.

11             THE COURT:  Well, I meant to say, it is

12   either that or the parties are so far apart in the way

13   they see things that there wasn't anything to do, and

14   that they need verdicts.  So I said it is one of the two.

15             But again, since, you know -- I would only

16   know if I were involved I can only guess, speculate.

17   That's put me at a real disadvantage, but they need to

18   understand that they are the ones who put me at the

19   disadvantage because I have to operate without knowledge,

20   so you can't complain that I don't have knowledge, full

21   knowledge.  That's on you.

22             I got to do the best I can.  I have this

23   Herculean task that the judicial branch has given me;

24   didn't ask for it, but I will do it the best I can.  So I

25   am thinking that we need five federal cases.  I am hoping

1    that over the next few weeks the parties will sit down

2    and figure out which are the best ones and what -- you

3    know, again, maybe some are public nuisance, and some are

4    RICO.  Maybe they are all public nuisance.  Maybe they

5    are all RICO.  I don't think it should be both public

6    nuisance and RICO.  I think that makes the case too

7    complicated.  You only get one set of damages anyway.

8            So I was going to suggest to give the

9    parties until March 31st.  That's about three weeks to

10   get me -- to work together to try and get me five cases,

11   and you know who the Plaintiffs are going to be, who the

12   Defendants are going to be and what causes of action, and

13   if you agree on all five, that's fine.

14           If you agree on two, then I will need

15   Plaintiffs' list of three and Defendants' list of three,

16   and I will need enough data in there, so I know what you

17   are talking about and why you think that's a good case so

18   I can decide, you know, fill up the other three.

19           If you agree on only one, then it is four

20   and four.  If you agree on none, then you each give me

21   your five, and I will pick them.

22           And again -- what I thought is, we will have

23   our next status call I am thinking April 7th, Wednesday,

24   April 7th, at noon.  That will give me a week to study

25   it, and I may have some questions at that time if there

1     are follow-up questions to help me decide, and then, at

2     that conference or shortly thereafter, we will finalize

3     the list of five, and then, I will direct the parties to

4     come up with a litigating schedule.

5              And off you will go.  Again, I really don't

6     want to do this, but unless someone has a better idea, I

7     don't see any other thing I can do.  Again, I am mindful

8     of the tremendous expense on both sides that this will

9     entail, and from where I sit, I don't think -- I think

10    everyone knows enough to seriously, at least, try to

11    settle these cases, but that's me, and I respect the fact

12    that one side or the other thinks they need a lot more

13    data, this is the way to get it.

14              And so I know there was a motion that the

15    Plaintiffs filed about adjusting time for expert

16    depositions.  I don't care.  I mean, when you figure out

17    -- you know, we figure out these extra trials, there is

18    five additional trials, you know, the parties should

19    confer.  The point the Plaintiffs are making I agree

20    with.  It is wasteful, wasteful time and money to depose

21    the same expert multiple times on the same testimony.

22              If there is generic testimony that applies

23    to all five of these trials, well, you should only depose

24    the expert once on that.  And if there is case specific

25    things for a particular county, obviously, that has to be

1    probed for each time.

2             I think that's the thrust of the Plaintiffs'

3    motion, but I am not sure what they propose as the way to

4    do it, and I will just leave that to the parties to work

5    out.  If you can't and you need Special Master Cohen's

6    help, he can do it, but I am not going to change anything

7    at the moment.

8             All right.  Anything else that anyone wanted

9    to bring up?

10            MR. STOFFELMAYR:  Not today for the

11   Defendants.  Thank you, Judge.  Caspar Stoffelmayr

12   speaking.

13            THE COURT:  All right.  Anything from the

14   Plaintiffs' side.

15            MR. WEINBERGER:  This is Pete, your Honor.

16   No, nothing more from the Plaintiffs.

17            THE COURT:  All right.  And again, if the

18   Defendants choose to reconsider my offer to engage

19   everyone -- and by everyone I mean both the PEC and the

20   attorneys general because, again, there is no way to do

21   -- every time in this MDL over the last four years anyone

22   has tried to do something piecemeal, it has run aground,

23   and it always will.

24            So if the Defendants want my help trying to

25   bring everyone together, you know, it is always

1   available.   I am available.   So you know how to reach me.

2                     Okay.   Thanks, everyone.   Stay safe.   We are

3   adjourned.

4                     (Hearing concluded at 2:08 p.m.)

5                             - - - - -

6

7                       C E R T I F I C A T E

8                     I, George J. Staiduhar, Official Court

9   Reporter in and for the United States District Court,

10  for the Northern District of Ohio, Eastern Division,

11  do hereby certify that the foregoing is a true

12  and correct transcript of the proceedings herein.

13

14

15

16                         s/George J. Staiduhar
                           George J. Staiduhar,
17                         Official Court Reporter

18                         U.S. District Court
                           801 W. Superior Ave., Suite 7-184
19                         Cleveland, Ohio 44113
                           (216) 357-7128
20

21

22

23

24

25