UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: "*Track Three Cases*" | ) ) ) | |
| | ) ) ) | **ORDER REGARDING VARIOUS DISCOVERY ISSUES** |

As the end of the fact-discovery period in the Track Three cases draws near, the parties have asked the undersigned to resolve several disputes. Plaintiffs (Trumbull County and Lake County, Ohio) and Pharmacy Defendants (Walmart, Walgreens, Rite Aid, CVS, and Giant Eagle) each seek rulings limiting what they must produce in discovery. The Special Master orders as follows.

**Agenda Item 307**

The Pharmacy Defendants request an Order compelling Plaintiffs to produce pharmacy claims data "related to [Plaintiffs'] employee benefit plans and workers' compensation program[s] for the Relevant Time Period." Letter from Kristin Morrison to Special Master at 1 (Feb. 19. 2021). Defendants explain they "are entitled to seek this data in discovery because it will reveal the extent to which Plaintiffs paid or approved claims (and continue to do so) for prescriptions they now argue Defendants should have refused to fill." *Id.* at 2. Defendants also note that: (1) the undersigned "previously ordered that pharmacy and medical claims data be produced by the plaintiff counties in Track 1;" and (2) Defendants now seek *less* data in Track Three: "Defendants seek only pharmacy

claims for persons who have received an opioid prescription and do not seek the full medical claims history, which significantly limits the scope of the production as compared to Track 1." *Id.*

Plaintiffs offer several arguments against production, but the Special Master is not persuaded. Plaintiffs assert it is expensive and time-consuming to compile, sort, and de-identify the requested data, and point out that Defendants' experts in Track One did not analyze or rely upon the plaintiffs' pharmacy claims data in their expert reports. This shows, according to Plaintiffs, that production of the claims data is unduly burdensome, irrelevant, and not proportional to the needs of the case.

Defendants are correct, however, that the claims data is relevant to their defense because it will "reflect whether Plaintiffs voluntarily covered, and paid for, the same types of prescriptions that Plaintiffs now argue Defendants should not have filled." Morrison letter at 2; *see also id.* ("Plaintiffs allege that Defendants should not have dispensed opioids for certain prescriptions that Plaintiffs themselves may have knowingly and repeatedly authorized and covered under their self-insured benefit plans.").[1] Further, "[w]hether produced data was *used* in a prior case in a particular way says little about whether it was *discoverable* in that case, and [says] nothing about whether it is discoverable in a different case for different purposes" – especially when Track Three includes distribution claims *and pharmacy dispensing claims*, while Track One included only the former. *Id.* at 3 (emphasis in original). And while the Special Master is sympathetic to Plaintiffs' complaint that production of the claims data will burden their already-strained municipal budgets, the Special

---

[1] Plaintiffs note they "do not handle benefit adjudication and payment within their plans, their Third-Party Administrators do." Shkolnik letter at 1. This fact may temper the strength of Defendants' defense, but it does not so negate the defense that the requested discovery becomes irrelevant.

Master has weighed equally the same complaint by Defendants in numerous other discovery contexts. In sum, the discovery requested is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

Plaintiffs do make one valid point, however, which is that Defendants waited to bring this issue to the undersigned until the very end of the discovery period, despite having many months' notice of the dispute. Plaintiffs repeatedly objected to production of the pharmacy claims data, dating back to July of 2020, and Defendants did not move for an order to compel until two weeks before the close of fact discovery. Accordingly, Plaintiffs ask the undersigned to "make clear that Defendants—having delayed seven months before raising this dispute—are not entitled to any continuances or extensions of deadlines based upon the production of this data." Letter from Hunter Shkolnik to Special Master at 4 (Feb. 24, 2021). This request is granted, with the understanding that Plaintiffs will not drag their feet, either.[2] Further, Plaintiffs are correct that: (1) they may redact and de-identify their claims data in order to comply with HIPAA, using an approach similar to the one Defendants took with production of their dispensing data; and (2) the parties may not conduct discovery of patients or doctors identified in Plaintiffs' production.

**Agenda Item 304**

The Special Master has issued several orders addressing the geographic scope of defendants' required discovery productions. In the first such ruling, *Discovery Ruling No. 2*, the undersigned drew a distinction between "Category One Discovery" – which defendants had to produce on a

---

[2] The parties should generally follow the procedures set out in the *Track One Discovery Order Regarding Health-Related Information* at 2-3 (docket no. 703).

national basis – and "Category Two Discovery," which was much more limited in geographic scope. Category One included "defendants' policies and actions regarding . . . subjects [that] are (and were) primarily centralized and over-arching, applying broadly to their opioid products," such as "marketing and promotion, . . . distribution monitoring, . . . diversion, suspicious order reports, adverse event reports, and regulatory activity." Docket no. 693 at 4. Category Two included "decentralized, customer-specific materials, such as sales call notes and transactional data." *Id.* In contrast to the countrywide scope of Category One discovery, Category Two discovery is normally limited to just the Plaintiff County jurisdictions, or sometimes the State those Counties are in. *See, e.g.*, docket no. 3371 at 10-12 (ruling the geographic scope of various Category Two discovery requests was either "Ohio" or "Lake and Trumbull Counties"), *affirmed* at docket no. 3389.

Notably, the Special Master has always concluded that Category Two discovery from a larger geographic scope "would have some relevance" in a given bellwether trial, but the "discovery burden on the defendants" of a multi-State or national scope of Category Two discovery outweighed the likely increment of additional benefit to Plaintiffs, and so was not required given "the needs of the case." Docket no. 762 at 3; *see also* docket no. 3410 at 3 (ruling that, although Plaintiffs offered "strong arguments" that documents related to suspicious orders in all of Ohio were "relevant and discoverable," Defendants were correct that "finding and producing all of these documents for the entire State of Ohio will be burdensome and expensive" such that production of documents addressing orders outside of the Plaintiff-County jurisdictions "will not provide a proportional benefit").

Of course, not all types of discovery fall neatly into Category One or Two, and the burden of producing certain subspecies of Category Two discovery is less onerous than other types. That

this is true is illustrated by the parties' current dispute. Plaintiffs assert Walmart has refused to produce "communications by employees in Walmart's Home Office about potential diversion and dispensing red flags" when those communications discuss specific, *local* conduct at Walmart stores. Letter from Derek Loeser to Special Master at 2 (Jan. 29, 2021). Plaintiffs support this assertion with several examples of Walmart letters and emails that Plaintiffs obtained through other sources, such as discovery from other defendants, or discovery Walmart produced to other parties in different opioid litigation, but which Walmart did not produce in the MDL. One such document is an email thread between three Walmart employees: (1) Mike Mullin, the General Manager of Walmart's sole distribution center for Schedule II controlled substances; (2) Susanne Hiland, the Senior Director of Quality Improvement in Walmart's home office; and (3) Warren Moore, a Divisional Senior Director of Health & Wellness Operations. The email discusses a Las Vegas Walmart pharmacy that is "continuing to order large amounts of CII product, especially Oxcycodone [sic] 30mg." Loeser letter at 8 (quoting WMT_NV_000001210). Mullin expresses concern that "We cut their Oxycodone 30s on Wednesday from 42 bottles down to 20, and today they are attempting to order 53 more bottles." *Id.* Plaintiffs contend that

> Ms. Hiland's awareness of potential problems at this [Las Vegas] pharmacy and any subsequent communications go to Walmart's national-level knowledge and actions—i.e., Category One discovery. This is underscored by the fact that Ms. Hiland was Walmart's corporate testimony designee under Rule 30(b)(6) in Track One.

*Id.*

Plaintiffs also point to numerous other, similar communications with Walmart's "central national-level compliance personnel" regarding specific pharmacies. *Id.* at 7. Plaintiffs assert these documents show "Walmart's corporate-level awareness" of the effectiveness (or not) of Walmart's

5

dispensing and distribution policies and procedures to prevent opioid diversion. *Id.* at 2. Plaintiffs insist this type of document is therefore Category One Discovery: "Walmart's knowledge of problems in its pharmacies goes directly to its responsibility to address these issues on a national level, with policies that would affect stores in Ohio." *Id.* Plaintiffs conclude their letter with a request that Walmart "be ordered to produce documents from the custodial files of [14 named] custodians from the Practice Compliance and Global Investigations departments without geographic limitations." *Id.* at 17 (listing the custodians).

Walmart responds that the fundamental premise of Plaintiffs' argument is simply wrong: "each of the documents that plaintiffs reference in support of their motion relates to specific issues occurring at a pharmacy outside of Ohio and has nothing to do with whether Walmart created a public nuisance in the Track 3 Counties." Letter from Tara Fumerton to Special Master at 2 (Feb. 5, 2021). Walmart argues that "Plaintiffs' demand for discovery 'without geographic limitation' is contrary to both the federal rules and the Court's other discovery rulings in this case." *Id.*

Addressing the factors recited in Fed. R. Civ. P. 26(b)(1), Walmart observes it "has already produced tens of thousands of documents from [the 14] custodians regarding relevant nationwide policies and procedures generally (as applied to pharmacies nationwide) and the implementation of those policies in the Track 3 Counties." *Id.* at 3. Accordingly, "[r]equiring Walmart to produce additional documents from these custodians about specific issues arising in stores that have no connection to the Track 3 Counties—would be far from proportional to what plaintiffs need for the Track 3 litigation." *Id.* Moreover, production of the requested documents "would also be burdensome, as Walmart would need to go back and re-review documents for both relevance and privilege before any documents could be produced." *Id.*

Beyond the strictures of Rule 26(b)(1), Walmart also points to other examples of "similar" Category Two Discovery where the undersigned limited the geographic scope to the State of Ohio or the Plaintiff-Counties. For example, Plaintiffs earlier requested Walmart to produce "all documents reflecting Due Diligence (such as site visits, pharmacy questionnaires, threshold reviews, or other reports or dashboards) related to potentially suspicious conduct related to the dispensing of Opioids" – which appears to encompass the Mullin email thread discussed above, if applied nationally – but the undersigned limited the geographic scope of this request to the Track Three Counties, even though Plaintiffs requested a Statewide scope. Fumerton letter at 6 (referring to RFP 20 and citing docket no. 3371 at 12). Similarly, Plaintiffs requested national production of distribution due diligence files for all Walmart Pharmacies, but the Special Master again limited the scope to the Track Three Counties. *Id.* at 5 (referring to RFP 5). Walmart observes these rulings were consistent with the Court's characterization of a Category One document as a "nonspecific jurisdictional type of document that applies to an overriding policy or procedure," as compared to Category Two discovery, which is "intended to exclude 'information for cities and counties whose claims are not being tried.'" *Id.* at 4 (citations omitted). Walmart insists Plaintiffs' request seeks *local*, Category Two discovery from outside of the Track Three Counties and even outside of Ohio, so the request is improper.

As noted at the outset, not all types of discovery fall neatly into Category One or Two. Quintessential Category One Discovery includes a Suspicious Order Monitoring Policy that applies equally and broadly to every Walmart distribution center across the country; documents setting forth this Policy would typically emanate from headquarters, and be found in the custodial files of a relatively small number of employees. In contrast, quintessential Category Two Discovery includes

documentation of pharmacists' refusals to fill specific opioid prescriptions because they appear suspicious; such documents would typically emanate from each local pharmacy store across the country, and be found in the custodial files of a relatively large number of employees. In this case, Plaintiffs seek discovery of documents from a relatively small number of headquarter-executive custodians, but the subject matter of those documents addresses local issues outside of Ohio. Resolution of this dispute cannot be found by simple classification of the documents at issue as falling within Category One or Two.

The ultimate question the Special Master must answer, which also provides the animating principle undergirding the bright-line rules set out in *Discovery Ruling No. 2*, is whether the requested discovery is "proportional to the needs of the case" – which requires assessments, most critically, of (i) relevance (e.g., importance of the discovery in resolving the issues), and (ii) whether the burden of discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). The undersigned agrees with Plaintiffs that the documents at issue are relevant and important. In a similar context, the Discovery Commissioner overseeing West Virginia's State Court Consolidated Opioid Mass Litigation concluded:

> Information or knowledge that Walmart became aware of through a dispensing related investigation, including information Walmart either did review or could have reviewed, is relevant to Walmart's knowledge of the effect of its policies. Because Walmart implemented policies, procedures, and protocols for its pharmacies on a national a [sic] basis, any investigation that showed Walmart's policies were failing to prevent diversion in one state is evidence that Walmart knew those policies would fail in West Virginia. * * * The Discovery Commissioner also finds that materials related to investigations outside of West Virginia are also relevant. Walmart's policies and procedures apply nationwide and any investigation into Walmart's corporate practices necessarily has relevance to Walmart's conduct in West Virginia.

*In re: Opioid Litigation*, 2020 WL 7087276 at *2 (W.Va. Cir. Ct. Oct. 20, 2020). Put simply,

documents showing Walmart executives' knowledge that implementation of its national policies was problematic or ineffective – even if those documents address how the policy was working (or not) in stores outside of the Track Three Counties – is highly relevant.

As for burden, Plaintiffs note they are not seeking "production of custodial files from Field Leadership custodians outside of the bellwether geographic area;" rather, they seek only "communications to and from [14 individuals who are] Walmart's central, national-level compliance personnel about potential illegitimate prescribing and diversion in Walmart pharmacies." Loeser letter at 7. This is unlike typical Category Two Discovery, such as refusal to fill documents that emanate from each local pharmacy store across the country. More to the point, Walmart has already gathered, reviewed, and produced documents from these 14 individuals, so nearly all of the burden of doing so has already been incurred. Plaintiffs now simply ask that Walmart be ordered to remove the "Track-Three-Only" geographic screen it applied to this production. It may be true that Walmart will have to "go back and re-review documents for both relevance and privilege before any documents could be produced," Fumerton letter at 3, but this additional burden does not outweigh the likely benefit of production or the importance of the discovery to the issues at stake.

In sum, the Special Master concludes Plaintiffs are entitled to an order directing Walmart to produce documents from the 14 listed custodians without geographic limitation.

**Agenda Item 314**

Plaintiffs' allege that CVS's "performance metrics posed speed and volume pressure that undermined their already-deficient anti-diversion policies." Letter from Michael Elsner to Special Master at 1 (Jan. 8, 2021). Specifically, Plaintiffs suspect CVS pharmacists did not "conduct

9

adequate due diligence on red flag prescriptions because of inadequate staffing and the high numbers of prescriptions that they are expected to fill in a shift." *Id.* at 3.

To test this suspicion, Plaintiffs have pursued "metrics discovery" from CVS. The parties had a four-part dispute regarding the scope of this discovery, but settled two parts on their own. The parties initially disagreed upon, but eventually resolved: (1) what search terms would be used; and (2) which custodians' files would be searched. The parties were unable, however, to resolve whether CVS could then still limit production of documents that hit on search terms, based upon: (3) a geographic limitation; and (4) relevance. The Special Master resolves these two remaining aspects as follows.

Regarding geographic limitation, the discussion above – about Walmart documents contained in executive custodial files that discuss diversion and red flags at local pharmacies in other jurisdictions – helps resolve this question. Plaintiffs claim that, in the same way as with Walmart, the CVS documents show corporate knowledge: "CVS metrics and staffing programs are national," so that if documents from other jurisdictions discuss "deficiencies, warnings and other issues" related to these metrics, then "that knowledge will or should impact pharmacists' conduct across the country." *Id.* at 2. Put differently, Plaintiffs believe CVS was "often informed by [its] pharmacists and staff across the country of potential risks and safety concerns from certain policies and procedures such as metrics and staffing. These documents are highly relevant to the corporation's notice and potentially relevant to whether a particular policy is effective." *Id.* at 3. Plaintiffs add that a less-than-national scope of metrics discovery is not only insufficient but potentially misleading: "Even assuming that there are one or two complaints from pharmacists in the fifteen CVS stores in Track Three, CVS may more easily seek to explain that these few unfounded

10

complaints are not reflective of inadequate policies and procedures than they would otherwise be able to do if hundreds of other complaints were received from around the country." *Id.*

CVS responds that the documents Plaintiffs seek are "pharmacy, prescriber, or transaction-specific," and so are clearly Category Two Discovery. Letter from Paul Hynes to Special Master at 2 (Jan. 18, 2021).[3] CVS avers that "[c]omplaints from pharmacists in other jurisdictions cannot be imputed to pharmacists in the Track Three jurisdictions. If CVS's Track Three pharmacists did not complain about metrics or staffing, then it does not matter that a CVS pharmacist in California did." *Id.* at 3.

CVS is correct that the critical question at trial will be "whether the working conditions ***in the Track Three jurisdictions*** impacted pharmacists' ability to identify improper opioid prescriptions." *Id.* at 3-4 (emphasis in original). But Plaintiffs are entitled to discover whether CVS ***gained knowledge*** that its metrics policies had a detrimental effect on pharmacists' working conditions ***globally***. This information is relevant, for all the reasons explained above; the question thus becomes whether "the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1).

The parties agreed that CVS will search the files of only four custodians for metrics

---

[3] Like Walmart, CVS compares the discovery discussed in this Order to earlier requests for production where the Special Master imposed tight geographic boundaries. *See* Hynes letter at 2; Fumerton letter at 5-6. But the comparison is inapt. For example, RFP 16 requested "all records related to ***any prescriber*** that you refused to fill . . . and/or ***each prescription*** you determined was doubtful, questionable, of suspicious origin, potentially related to diversion, and/or not issued for a legitimate medical purpose in Track 3." (Emphasis added.) This request implicates an enormous number of custodians, non-custodial document locations, and corporate databases; accordingly, the Special Master limited the geographic scope of this RFP to the Plaintiff-County jurisdictions. *See* docket no. 3371 at 12. In contrast, the discovery discussed in this Order relates only to a narrower scope of documents from a limited number of custodians, whose files are already being searched.

discovery documents. Thus, the burden on CVS is not great – Plaintiffs are not requesting, for example, that CVS search the files of all pharmacy managers at each of its 10,000 stores across the country. Furthermore, it will actually take CVS more time and effort to identify and cull non-Track-Three responsive documents than to simply produce all such documents without geographic limitation. Indeed, as Plaintiffs note, under CVS's approach it would have to "re-search the same custodian files to make piecemeal productions in other jurisdictions," once the next MDL case is scheduled. Elsner letter at 4. Precluding a geographic limitation, then, works in the long run to promote discovery economy and efficiency.

In sum, the Special Master concludes the factors recited in Rule 26(b)(1) weigh in favor of requiring CVS to produce metrics discovery documents from the four agreed custodians without a geographic limitation.

CVS next asserts it should be allowed to withhold metrics discovery documents that hit on search terms, but are related to topics other than opioids or controlled substances. Thus, for example, CVS seeks to withhold as irrelevant documents addressing metrics, or quotas, for in-store flu immunizations, or for patients signing up for CVS's ExtraCare card. The Special Master agrees these documents have, at best, low relevance. CVS may choose not to produce documents addressing metrics for matters other than prescriptions.

CVS further seeks to withhold metrics discovery documents that *are* related to prescriptions, but for drugs that are not controlled substances. This request must be denied. If a pharmacist is incentivized (by bonuses or penalties) to dispense, say, 40 prescriptions per hour, and meeting this goal prevents the pharmacist from having or taking time to recognize red flags, then it does not matter whether the 40 prescriptions were for controlled substances or other drugs. Metrics discovery

on all prescriptions is relevant.

**Objections**

Any party choosing to object to any aspect of this Order must do so on or before March 24, 2021, and must attach as exhibits to their Objection the letters cited in this Order.

    **IT IS SO ORDERED.**

                                                    /s/ *David R. Cohen*
                                                  **DAVID R. COHEN**
                                                  **SPECIAL MASTER**

**Dated:** March 16, 2021