# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*The Track Three Cases* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## CVS'S OBJECTION TO THE ORDER
## REGARDING VARIOUS DISCOVERY ISSUES

CVS hereby objects to the portion of the Special Master's March 16, 2021, Order Regarding Various Discovery Issues (the "Order") that addresses Agenda Item 314. Doc. 3655 at 9-13. CVS and Plaintiffs negotiated performance metrics and staffing search terms but disagreed on the scope of the documents hitting on those search terms that are to be produced. That dispute was submitted to the Special Master, and he issued the Order compelling CVS to produce (1) documents related to metrics and staffing at any of CVS's nearly 10,000 retail pharmacies, the vast majority of which are located outside the Track Three jurisdictions and even Ohio, and (2) documents related to metrics that do not apply to the dispensing of controlled substances. *Id.* CVS objects to both of these rulings.

## GEOGRAPHIC SCOPE

The geographic scope ruling—which impacts what is termed "Category Two" discovery because it concerns pharmacy-specific documents related to individual pharmacies as opposed to documents related to policies and procedures that have national applicability—goes beyond any prior ruling on geographic scope in this MDL. *See, e.g.*, Doc. 762 at 4 (limiting Category Two discovery in Track One to the two plaintiff counties); Doc. 3371 at 7-12 (limiting Category Two

discovery in Track Three to the two plaintiff counties or to the State of Ohio, depending on the request); Doc. 3410 at 2-4 (limiting the production of SOM "due diligence" files in Track Three to the plaintiff counties or, in limited instances, to the State of Ohio). The ruling contravenes Rule 26's relevance standard insofar as it sweeps in individualized issues at pharmacies nowhere near the Track Three jurisdictions. It also runs afoul of Sixth Circuit's holding that the "question whether discovery is 'proportional to the needs of the case' under Rule 26(b)(1) must—per the terms of the Rule—be based on the court's determination of the needs of the particular case in which the discovery is ordered." *In re Nat'l Opiate Litig.*, No. 20-30705, slip op. at 9 (Apr. 15, 2020).

The subject matter of the discovery at issue—pharmacy staffing and performance metrics—is at best tangential to Plaintiffs' claims that CVS knowingly filled opioid prescriptions that were not written for a legitimate medical purpose. But even if the Court accepts the premise that metrics and staffing discovery is relevant (it is not), CVS already has agreed to produce document related to national policies on metrics and staffing (*i.e.*, "Category One" discovery) and pharmacy-specific documents related to metrics and staffing for pharmacies in the Track Three jurisdictions. That is consistent with the parameters of other discovery produced in this MDL. No showing has been made as to why pharmacy-specific discovery on metrics and staffing requires a ***broader*** geographic scope than core discovery on the actual distribution and dispensing of prescription opioids.

Indeed, the Order concluded that, to the extent metrics and staffing discovery is permitted to be introduced at trial, the "critical question . . . will be 'whether the working conditions ***in the Track Three jurisdictions*** impacted pharmacists' ability to identify improper prescriptions.'"

Doc. 3655 at 11 (emphasis in original).[1]  Yet, the Order determined that "Plaintiffs are entitled to discover whether CVS *gained knowledge* that its metrics policies had a detrimental effect on pharmacists' working conditions *globally*."  Doc. 3655 at 11 (emphasis in original).  This determination was in error.  Any "global" effect of the metrics policies is irrelevant if it did not have an impact on the Track Three pharmacies.  If any such "global" effect did have an impact on the Track Three pharmacies, then any documents related to that impact that hit on the negotiated search terms will be produced to Plaintiffs.

While CVS's metrics and staffing policies generally have national applicability, the implementation of those policies by thousands of field and pharmacy personnel across the country is inherently local and may vary from pharmacy to pharmacy.  Only fifteen of CVS's approximately 10,000 retail pharmacies are located in the Track Three jurisdictions.  Documents about metrics and staffing at CVS's 9,900-plus pharmacies outside the Track Three jurisdictions say nothing about the working conditions at CVS's fifteen Track Three pharmacies.  Put differently, if a pharmacy in Spokane, Washington, requested an additional pharmacist or did not perform well on a metric, that has absolutely no bearing on the metrics, staffing, or overall operation of a Track Three pharmacy thousands of miles away.

The Order also determined that the burden on CVS "is not great."  Doc. 3655 at 12.  This misconstrues the document review process.  The lack of a geographic limitation will not create efficiencies.  CVS will still need to perform a document-by-document responsiveness review.  But the volume of documents that will need to undergo second-level review and privilege review— also on a document-by-document basis—will be *much* greater.  Thus, the burden on CVS will be

---

[1] CVS preserves, and does not waive, all objections to the admissibility of staffing and metrics discovery at trial.

greatly increased due to the need to review documents related to non-Track Three pharmacies that are not relevant to these cases. Moreover, the need to prepare defenses for pharmacies outside Track Three—including, possibly, identifying and calling witnesses from those pharmacies—will further increase the burden on CVS. Simply put, requiring the production of pharmacy-specific documents related to pharmacies outside the Track Three jurisdictions is not proportional to the needs of the Track Three cases.

## **DRUG SCOPE**

The Order's ruling compelling CVS to produce documents related to metrics that do not apply to the dispensing of controlled substances also goes beyond any prior ruling in this MDL. *See* Doc. 693 at 3 (ruling that the "drug scope" of discovery is limited to prescription opioids "that are or ever were classified as Schedule II under the Controlled Substances Act"); Doc. 3106 at 3-6 (requiring dispensing data to be produced for eight prescription opioids, fourteen benzodiazepines, and four muscle relaxers). The basis for this ruling is that "[i]f a pharmacist is incentivized (by bonuses or penalties) to dispense, say, 40 prescriptions per hour, and meeting this goal prevents the pharmacist from having or taking time to recognize red flags, then it does not matter whether the 40 prescriptions were for controlled substances or other drugs." Doc. 3655 at 12. But no such metric exists at CVS. And, in any event, the only possible question is whether metrics impacted the dispensing of prescription opioids, not whether they impacted the dispensing of antibiotics, cholesterol medications, or other non-controlled drugs. Moreover, even if policy-level discovery of metrics for non-controlled drugs is relevant and proportional (it is not), discovery on how 9,900-plus pharmacies outside the Track Three jurisdictions performed on those irrelevant metrics decidedly is not.

\*\*\*

For the foregoing reasons, the Special Master's ruling on CVS issues in the Order should be modified. Production of pharmacy-specific documents related to staffing and metrics should be limited to the Track Three jurisdictions, and production of metrics-related discovery should be limited to metrics that apply to the dispensing of controlled substances.

Dated: March 24, 2021

Respectfully submitted,

/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Indiana, L.L.C., CVS Rx Services, Inc., CVS TN Distribution, L.L.C., CVS Pharmacy, Inc., and Ohio CVS Stores, L.L.C.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record on March 24, 2021.

/s/ Eric R. Delinsky
Eric R. Delinsky