# IN THE UNITED STATES DISTRICT
# COURT FOR THE NORTHERN DISTRICT
# OF OHIO EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*Track Three Cases*[1] | MDL NO. 2804<br><br>Civ. No. 1:17-md-02804-DAP<br><br>HON. JUDGE DAN A. POLSTER |

**WALMART INC.'S OBJECTION TO SPECIAL MASTER COHEN'S ORDER ON AGENDA ITEM 304 REGARDING GEOGRAPHIC SCOPE (DOC. 3655)**

Walmart Inc. ("Walmart") objects to the portion of the Special Master's Order Regarding Various Discovery Issues, issued on March 16, 2021 (Doc. 3655), concerning Agenda Item 304 (the "Ruling," attached as Ex. A). Under the Special Master's Ruling, Walmart must produce responsive communications from 14 custodians from Walmart's Home Office—even if they relate only to a specific pharmacy—*without any geographic limitation* or nexus to the Track Three Counties. In other words, the Special Master selectively overturned precedent that the parties had extensively litigated and relied upon for years, all to allow discovery of the kind of specific extraterritorial evidence that the Court has clarified is generally inadmissible at trial. *See* Doc. 3546 at 33. Worse, he did so after the close of fact discovery following an eleventh-hour motion that Plaintiffs could have filed years earlier. This last-minute course-change not only upsets Walmart's reliance interest in the Court's prior orders, it threatens to create further discovery

---

[1] The Track Three Cases are: *County of Lake, Ohio v. Purdue Pharma, et al.*, Case No. 18-op-45032 and *County of Trumbull, Ohio v. Purdue Pharma, et al.*, Case No. 18-op-45079.

disputes that could impact the October trial date in this case. The Ruling is contrary to the standards set by the Federal Rules and Sixth Circuit precedent, and it should be reversed.

I.      INTRODUCTION AND BACKGROUND

This objection requires the Court to consider, once again, the type and scope of discovery that Walmart is required to produce in the Track Three cases. Because the Track Three public nuisance claim concerns only two Ohio counties—Trumbull and Lake Counties—the Special Master has largely limited discovery to documents relating to those same two counties or policy documents of nationwide applicability. As this Court has confirmed, the Special Master's approach—"a request-by-request determination of geographic scope"—has "reflect[ed] careful consideration of what is proportional to the needs of this case regarding an alleged public nuisance in Trumbull and Lake Counties" and "strike[s] an appropriate balance of the factors in Fed. R. Civ. P. 26(b)(1)." Ex. B, July 21, 2020 Judge Polster Order (Doc. 3389) at 3.

This approach shaped Discovery Rulings 2 and 3, where the Special Master distinguished the proper scopes of two different categories of documents. Category One encompassed documents revealing Walmart policies that are not limited to a particular local pharmacy or region—that is, "nonspecific jurisdictional type of document[s] that appl[y] to an *overriding* policy or procedure." Ex. C, excerpts of June 11, 2020 Discovery Conference Tr. at 154:25-155:4 (emphasis added). As to these documents concerning nationwide policies, the Special Master granted nationwide discovery.

By contrast, when it came to Category Two documents—reflecting issues specific to discrete local pharmacies (Doc. 693 at 4)—discovery was typically limited to Trumbull and Lake Counties. Indeed, in his own words, the Special Master "has always concluded" that even if a Category Two document "would have some relevance" to a bellwether trial in another jurisdiction, the "discovery burden . . . of a multi-State or national scope of Category Two discovery

outweighed the likely" marginal benefit, "and so [would] not [be] required." Ex. A, Ruling at 4 (internal quotation marks omitted) (quoting Docket no. 762 at 3).

Simply put, Category Two geographic limitations were intended to exclude "information for cities and counties whose claims are not being tried." July 17, 2018 Special Master Cohen Discovery Ruling 3 (Doc. 762) at p. 2-4; *see also* Ex. C, June 11, 2020 Discovery Conference Tr. at 157:1-8 ("…category 2 documents or anywhere other than Ohio . . . don't need to be produced just as any other category 2 documents for anywhere outside of Ohio from any other source don't need to be produced."). This Court has since clarified the limited relevance of documents concerning specific, extraterritorial pharmacies, writing in its order on the Track 1B motions *in limine*, "evidence that is specific in nature and does not have a nexus to the Plaintiff Counties, without more, will *generally* not be permitted" at trial.  Doc. 3546 at 33 (emphasis in original).

Until last Tuesday, the Special Master repeatedly enforced geographic limitations on localized discovery concerning only specific pharmacies, essentially limiting it to the Track Three Counties. *See* Ex. D, July 8, 2020 Special Master Order Regarding Geographic Scope of Discovery (Doc. 3371) at 11-12 (limiting the geographic scope for RFPs 5, 16, 17, 18, 20 to the Track Three Counties); *see also id.* at 13 ("[T]he geographic scope of this discovery [on order monitoring investigations] will **not** be national.") (emphasis in original); *see also* Ex. E, Aug. 12, 2020 Special Master Second Order Regarding Geographic Scope of Discovery (Doc. 3410) at 3 ("Plaintiffs will discover sufficient evidence of [documents reflecting efforts to investigate or review flagged orders] from Track Three alone to allow their claims to be decided on the merits . . . ").[2]

---

[2] This ruling included two exceptions, not applicable here, for which the geographic scope was expanded to Ohio only.

Relying on these orders, Walmart produced to MDL Plaintiffs responsive, non-privileged documents with a direct nexus to the Track Three Counties, as well as documents relevant to nationwide policies and procedures. Indeed, it produced tens of thousands of documents regarding nationwide policies and procedures—including documents regarding the rationale, drafting, circulation, and analysis of those policies and procedures, and their implementation in the Track Three Counties—from the 14 custodians at issue in Plaintiffs' motion alone. *See* Ex. F, Feb. 5, 2021 Letter from T. Fumerton to Special Master Cohen at 3.

On January 29, 2021—over seven months since Plaintiffs first served Track Three discovery requests and only weeks before the close of fact discovery in Track Three—Plaintiffs asked Special Master Cohen to order Walmart to produce documents from 14 specific Home Office custodians without any geographic limitation. (Ex. G, Pltfs' Mot. at 4-7, 9-15.)[3] Although Walmart had completed the vast majority of its production (including as to those custodians) months before, Plaintiffs claimed that prior orders should be re-visited in light of purportedly relevant documents that had come to Plaintiffs' attention through the DOJ's complaint against Walmart or discovery from other sources. But Plaintiffs' motion cited facts and documents that had been disclosed to Plaintiffs well before they filed their motion—some more than two years beforehand—and none of which relate to Track Three Counties. For example, one document related to a specific pharmacy in Nevada, while another concerned a question from a Pennsylvania Market Director regarding a Pennsylvania prescriber. *Id.* at 7, 8. Notably, most of the documents

---

[3] Walmart has filed contemporaneously herewith a motion for leave to file Ex. G under seal. Walmart has not included Ex. G in the publicly-filed version of this Objection, but has separately transmitted the Objection with all exhibits, including Ex. G, to the Court and plaintiffs' counsel.

4

attached to Plaintiffs' motion have been produced to MDL Plaintiffs through the re-production of discovery into the MDL depository.[4]

Walmart opposed Plaintiffs' motion, as discovery was about to close, the request sought irrelevant information, and because it was contrary to the Federal Rules of Civil Procedure, Sixth Circuit precedent, and numerous prior rulings in this case regarding the geographic scope of discovery. *See* Ex. F, Feb. 5, 2021 Letter from T. Fumerton to Special Master Cohen. Moreover, Walmart argued, Plaintiffs' request was unfairly burdensome and not proportional to the needs of Plaintiffs' case in that it would require re-review of the 14 custodians' files. *Id.*

On March 16—eleven days after the close of fact discovery—Special Master Cohen issued the Ruling now under appeal. That Ruling reversed course on years of precedent in this litigation. Ex. A, Doc. 3655. The Special Master acknowledged that the parties had long been operating under the "Category 1" and "Category 2" distinctions. *Id.* at 4. However, because, in his view, "the burden of producing certain subspecies of Category Two discovery is less onerous than other types," he granted the Plaintiffs' eleventh-hour request. *Id.* at 4. While acknowledging that much of Category 2 discovery is irrelevant (such as documentation of an individual pharmacist's refusal to fill a prescription), the Special Master reasoned that a problem at any pharmacy in the country could, in theory, be relevant to "Walmart's knowledge of the effect of its policies." *Id.* at 7-8 (citing *In re: Opioid Litig.*, 2020 WL 7087276 at *2 (W. Va. Cir. Ct. Oct. 20, 2020). The Special Master did not consider whether any of the discovery Plaintiffs sought would likely be admissible

---

[4] Walmart has been continuously reproducing into the MDL depository documents it is producing in similar opioid litigation brought by other states and jurisdictions. *See* June 15, 2020 Opinion and Order (Doc. 3333) at 3. In fact, in recent weeks, Walmart made available through the MDL depository a voluminous production of documents it provided to the DOJ in the course of that agency's investigation. These reproductions together provide localized information from more than 20 states.

5

at trial (the only use for additional productions at this late stage of fact discovery), nor did he consider the volume of such information that the Plaintiffs had already obtained through other forms of discovery, such as reproduced discovery from State litigation. Instead, he moved straight to a traditional proportionality analysis. *Id.* at 8.

The Special Master found the Plaintiffs' request proportional to their undefined need for the additional discovery. He concluded that because Walmart had already gathered, reviewed, and produced documents from the 14 custodians, "nearly all of the burden" concerning Plaintiffs' request had "already been incurred." *Id.* at 9. However, two sentences later, the Special Master acknowledged that Walmart might well be required to "go back and re-review documents for both relevance and privilege before any documents could be produced." *Id.* (quoting Fumerton letter at 3). Nevertheless, the Special Master found that this additional burden was acceptable, even at this late date in discovery. *Id.* With that, the Special Master "conclud[ed] Plaintiffs are entitled to an order directing Walmart to produce documents from the 14 listed custodians without geographic limitation." *Id.*

## II.   ARGUMENT

The Ruling compels the production of documents limited neither to national Walmart policies and procedures nor to issues involving pharmacies in the two Track Three Counties. In doing so, the order effectively rewards Plaintiffs' efforts to re-litigate discovery issues long settled against them by the Special Master and by this Court. It unfairly upsets Walmart's reliance on those prior orders, and does so weeks *after* the close of discovery, thus threatening the Court's broader schedule for this litigation.

The Court should review the Special Master's ruling *de novo*. *See* Doc. 69 at 5; Fed. R. Civ. P. 53(f) (4, 5) (Special Master's rulings on issues of law and issues of fact reviewed *de novo*). But even if the Court applies an abuse of discretion standard, it should still reverse the Ruling,

which flouts the Federal Rules' and Sixth Circuit's command to limit discovery to documents relevant enough to justify the burdens of production—even in bellwether MDL cases. Under either standard, the errors in the Ruling warrant reversal.

> A. **The Discovery Granted in the Ruling Imposes Burdens Disproportionate to Its Benefits.**

The Ruling should be overturned, first and foremost, because it is contrary to the Federal Rules of Civil Procedure. There is a reason that both this Court and the Special Master have previously rejected Plaintiffs' requests for the kind of extraterritorial discovery the Ruling grants. As this Court has itself stated, information regarding specific, localized conduct outside of the Plaintiff counties is generally irrelevant and inadmissible in trial. Doc. 3564 at 33 ("[E]vidence that is specific in nature and does not have a nexus to the Plaintiff Counties, without more, will *generally* not be permitted.") (emphasis in original). Requiring Walmart to expend the effort to re-create the proverbial wheel with respect to more than a dozen custodians over more than a dozen-year time frame is totally disproportionate to Plaintiffs' need (or, more appropriately, lack of need) for the additional information that effort will provide them. *See* Fed. R. Civ. P. Rule 26(a)(1).

In multidistrict litigation, as in all civil litigation, discovery must be proportional to the needs of the case. *See e.g., United States ex rel. CKD Project, LLC v. Fresenius Med. Care AG & Co. KGAA*, No. 14-cv-6646, 2019 WL 6223828, at *2 (E.D.N.Y. Nov. 8, 2019) (finding nationwide discovery disproportionate where claims were limited to a single state); *United States ex rel. Conroy v. Select Med. Corp.*, 307 F. Supp. 3d 896, 904 (S.D. Ind. 2018) (same). Moreover, "the court need not compel discovery of material, even if relevant, if it concludes that the request is "unreasonably cumulative or duplicative . . . [or] the burden or expense of the proposed discovery outweighs its likely benefit." *See Mehmedi v. La Dolce Vita Bistro, LLC*, No. 1:10-cv-

1591, 2011 WL 13160124, at *2 (N.D. Ohio Aug. 9, 2011) (denying motion to compel in part because movants' "requests are unreasonably cumulative"); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

The Sixth Circuit has confirmed the rules are no different in this MDL, explaining that "whether discovery is 'proportional to the needs of the case' under Rule 26(b)(1) must—per the terms of the Rule—be based on the court's determination of the needs ***of the particular case in which the discovery is ordered***." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 846 (6th Cir. 2020) (emphasis added). Along the same lines, this Court has confirmed that the geographic scope of Track Three discovery must be proportional to the specific needs of the case. *See* Ex. B, July 21, 2020 Order (Doc. 3389) at 3 (noting that the Special Master's ruling regarding the geographic scope of discovery "reflects careful consideration of what is ***proportional to the needs of this case regarding an alleged public nuisance in Trumbull and Lake Counties.***") (emphasis added). That is precisely why the Sixth Circuit confirmed that nationwide discovery in these bellwether cases is not appropriate, observing in the context of dispensing data, for example, that, even if the Pharmacy Defendants produced nationwide dispensing data, "the parties could use very little of that data" in a given bellwether track. 956 F.3d at 846.

Plaintiffs' request—particularly when viewed in the context of their individual claim, as Sixth Circuit precedent requires—is not proportional to their needs. Plaintiffs have yet to offer an explanation for exactly how pharmacy-specific documents with no nexus to a Track Three county even help their case, let alone how *additional* documents from other jurisdictions along the same lines would be even remotely likely to be admissible at trial.[5] Most importantly, they have not

---

[5] Because fact discovery has now concluded, the only possible use discovery produced beyond this point could have is to provide a document that is itself admissible at trial.

8

shown how discovery above and beyond what they already possess is necessary to bolster any aspect of their claim.

In fact, Walmart has already produced pharmacy-specific documents originating from localities in more than 20 states and touching every category raised in Plaintiffs' motion:

- Plaintiffs' motion attached multiple documents discussing concerns relating to a specific provider with no nexus to Plaintiffs' counties. *See* Ex. G, Pltfs' Mot. at 7 (document containing communications from a specific pharmacy in Wisconsin regarding a specific prescriber in Florida). But Walmart has produced substantial documents regarding prescriber issues, including guidance on such issues from the Home Office. *See*, e.g., WMT_MDL_000459663 (forwarding a pharmacist's summary regarding an Ohio prescriber to the Home Office); *see also* WMT_MDL_000327758, WMT_MDL_000502921 (circulating Mr. Nelson's commentary among Practice Compliance custodians); WMT_MDL_000118337 (Controlled Substances Update webinar discussing Home Office message to pharmacists regarding review of controlled substance prescriptions, including red flags); WMT_MDL_000042962 (POM 1311, which concerns evaluation and resolution of potential red flags); WMT_MDL_000665095 (script for Home Office video message to pharmacists about review of controlled substance prescriptions, including red flags).

- Plaintiffs also included in their submission documents concerning so-called "Over 20 Reports"[6] that do not identify any Ohio pharmacies and related discussions about specific non-Ohio pharmacies. Ex. G, Pltfs' Mot. at 9-12. Walmart has produced many documents showing follow-up on Over 20 Reports that—unlike the documents identified in Plaintiffs' motion—actually concern a Track Three pharmacy. *See, e.g.*, WMT_MDL_000016380 (follow-up by a Walmart Home Office custodian, based on order data circulated in an Over 20 Report that includes a Track Three store). The production also includes documents in which Home Office custodians discuss the involvement of Global Investigations in that follow-up. *See, e.g.*, WMT_MDL_000032882 (G. Beam email to S. Hiland, G. Chapman regarding review of Over 20 Reports and related follow up).

- Finally, Plaintiffs' motion highlights documents concerning specific orders placed by pharmacies outside the Track Three Counties and reviewed by McKesson. *Id.* at 16. Walmart has produced a large volume of communications with McKesson regarding order monitoring procedures that apply generally and, thus, are relevant

---

[6] The Over 20 Reports were not suspicious order reports and were not submitted to the DEA. They were used by Walmart to monitor opioid orders and flag potential orders of interest placed by specific stores for further follow up. Thus, Walmart's production of Over 20 Reports was appropriately limited to those relating to the Track Three Counties pursuant to the Special Master's Aug. 12, 2020, order.

9

to orders distributed by McKesson nationwide as well as in the pharmacies of Trumbull and Lake Counties. *See, e.g.*, WMT_MDL_000431152 (notes from a "McKesson due diligence call," including reflecting McKesson processes for order monitoring). And, of course, Plaintiffs have received substantial discovery from McKesson itself.

In short, Plaintiffs already have the discovery they need. The additional discovery the Special Master ordered would not be of any use at trial. Nor is it necessary to Plaintiffs' claim. Yet Walmart will be required to expend substantial effort to re-review documents that it reasonably believed were outside the geographic scope of discovery in reliance on this Court's prior rulings. Plaintiffs' request is thus not proportional to the needs of their case. *See* Fed. R. Civ. P. 26(b)(1). The Ruling should be reversed.

**B. The Ruling rewards Plaintiffs' effort to re-litigate discovery issues that have been repeatedly and uniformly decided against them.**

Plaintiffs' request to Special Master Cohen sought to re-litigate long-settled issues regarding discovery in this litigation, and their effort paid off. Plaintiffs should not be permitted to upend the many rulings designed to guide the course of this sprawling litigation in an orderly manner. The inevitable result would be a never-ending and unmanageable stream of repetitive discovery disputes that tax the resources of both the parties and the Court. *See Markus v. Rozhkov*, 615 B.R. 679, 698 (S.D.N.Y. 2020) ("Because Worms could have challenged the July 30 order immediately but declined or neglected to, he is now barred from attempting to relitigate a question that was already definitively determined [and that he] failed timely to appeal.") (internal quotation marks omitted); *In re Hollar*, 184 B.R. 243, 247 (Bankr. M.D.N.C. 1995) ("If parties are permitted to avoid discovery orders by attempting to relitigate the same objections previously determined to be defective, the rules of discovery would be rendered meaningless, discovery could never be completed and our already crowded court dockets would be burdened with frivolous motions.").

10

Again and again—until the present order—the Special Master has held fast to the approach reflected in his earliest Discovery Orders. Those trend-setting orders allowed nationwide discovery for Category One documents (discussing Walmart's truly national policies and practices) while sharply limiting the geographic scope of Category Two discovery (concerning discrete issues specific to particular pharmacies or individuals). Any doubt about that is immediately dissolved by the following chart, which contrasts Plaintiffs' *earlier* sweeping requests with the Special Master's consistently narrowing rulings:

| RFP | Request | PEC Scope[7] | Special Master Ruling[8] |
|---|---|---|---|
| 5 | Please produce the *[distribution] Due Diligence files* for each of your Pharmacies in Track 3. Please identify the Bates range which corresponds to each Due Diligence file to enable the correlation between each Due Diligence file to each of your customers. | Category Two (Ohio) (later amended to request national production) | Lake and Trumbull Counties |
| 16 | Please produce all records related to any prescriber that you refused to fill in Track 3 and/or *each prescription you determined was doubtful, questionable, of suspicious origin, potentially related to diversion, and/or not issued for a legitimate medical purpose in Track 3*. | Category Two (Ohio) | Lake and Trumbull Counties |
| 17 | Please produce all documents in your possession, custody and/or control related to *any physician engaged in diversion and or inappropriate prescribing* of Opioids and "cocktail drugs" include in your response, but do not limit your response to, all documents related to the following prescribers: [23 individual prescribers licensed in OH or PA]. | Category Two (Ohio) | Lake and Trumbull Counties, and individual prescribers listed |

---

[7] Ex. H, June 30, 2020 P. Weinberger email to D. Cohen (attaching copies of discovery requests with handwritten notes reflecting plaintiffs' position as to whether each request is Category One or Category Two); *see also* Ex. I, July 7, 2020 P. Weinberger email to K. Swift.

[8] Ex. D, July 8, 2020 Special Master Order Regarding Geographic Scope of Discovery (Doc. 3371); Ex. E, Aug. 12, 2020 Special Master Second Order Regarding Geographic Scope of Discovery (Doc. 3410); *see also* Ex. B, July 21, 2020 Order (Doc. 3389) (overruling objections to the Special Master's July 8, 2020 Order and finding that ruling reflected "careful consideration of what is proportional to the needs of this case").

11

| RFP | Request | PEC Scope[7] | Special Master Ruling[8] |
|-----|---------|--------------|--------------------------|
| 18 | Please produce all documents related to *any potential dispensing and/or prescribing and/or pharmacist misconduct you investigated or discovered in Track 3* and the investigation and corrective action you undertook. | Category Two (Ohio) | Lake and Trumbull Counties |
| 20 | Please produce all documents reflecting *Due Diligence (such as site visits, pharmacy questionnaires, threshold reviews, or other reports or dashboards) related to potentially suspicious conduct related to the dispensing of Opioids in Track 3*, whether or not reported, including lists of prescribers, patients, pharmacies, or other individuals or entities on "do not fill" or "do not ship" lists." | Category Two (Ohio) | Lake and Trumbull Counties |

If the Ruling stands, the Plaintiffs will have successfully re-litigated these orders by forcing Walmart to produce just the sort of "information for cities and counties whose claims are not being tried" that had previously been excluded under several discovery rulings. Plaintiffs' motion itself showed that the documents Plaintiffs wish to compel concern individual prescribers, stores, and practices that are specific to particular jurisdictions located outside Ohio (Ex. G, Pltfs' Mot. at 4-7, 9-15). The Special Master had previously expressly limited such discovery to the Track Three Counties. *See* Ex. D, July 8, 2020 Special Master Order Regarding Geographic Scope of Discovery (Doc. 3371) at 11-12 (limiting the geographic scope for RFPs 5, 16, 17, 18, 20 to the Track Three Counties); *see also id.* at 13 ("[T]he geographic scope of this discovery [on order monitoring investigations] will not be national.") (emphasis in original); *see also* Ex. E, Aug. 12, 2020 Special Master Second Order Regarding Geographic Scope of Discovery (Doc. 3410) at 3 ("Plaintiffs will discover sufficient evidence of [documents reflecting efforts to investigate or review flagged orders] from Track Three alone to allow their claims to be decided on the merits. . . .").

In sum, the Ruling grants Plaintiffs documents that were squarely and repeatedly excluded from production by the Special Master and this Court up until now. To reverse those prior rulings in response to Plaintiffs' latest effort to upend them would only invite Plaintiffs to try to reopen every other question settled against them to date. *See Ritz v. Wipro Corp.*, No. 14-61273-CIV, 2015 WL 846853, at *6 (S.D. Fla. Feb. 26, 2015) (describing rejection of a party's motion to compel production that "was simply attempting to re-litigate issues previously resolved against him" in a prior discovery order) (cleaned up). The Ruling should be reversed for that reason alone.

### C. The Ruling is burdensome because it would upset Defendants' reliance on earlier rulings and require Walmart to re-review the 14 custodians' documents.

The Ruling does not simply reward Plaintiffs' attempt to rehash long-settled questions concerning discovery in this trial. It effectively punishes Defendants' reliance on those earlier orders and—given the timing—threatens to upset the trial schedule for everyone.

Walmart has already reviewed and produced communications with each of the 14 Home Office custodians at issue in the Ruling. It did so in reliance on the prior orders that have governed discovery in this litigation. And if the Ruling stands, it will require Walmart to go back to those same documents and re-review them for responsiveness (and privilege) in light of the broader scope of the Ruling—a fact that the Special Master acknowledged in passing. *See* Ex. A at 9. That second pass would have been unnecessary had the governing principles—heeded by Walmart at every step—stayed constant throughout. Moreover, the Ruling's after-the-fact change to the rules of the game would unfairly create additional burden for Walmart and reward Plaintiffs for waiting to bring their complaints to the Court's and Walmart's attention.

The unfairness is only compounded by the fact that Plaintiffs waited to ask for this second pass-through until January 29, 2021—mere weeks before the close of fact discovery on March 5. That delay is inexcusable, particularly because many of the documents on which Plaintiffs based

13

their motion had been produced by Walmart or other defendants long before Plaintiffs filed their motion—some more than two years before.  As a result of Plaintiffs' timing, the Special Master's Order came down 11 days *after* the close of discovery.  Thus, in addition to upsetting Defendants' reliance on the principles guiding discovery to date, the lateness of Plaintiffs' request now threatens to upset Walmart's—and everyone else's—reliance on the broader Track Three trial schedule.  That would be unacceptable in the best of circumstances, but it is particularly unjustified where the additional discovery at issue is of at best tangential relevance and largely already available to Plaintiffs.  *See supra* Section A.

### III.  CONCLUSION

Special Master Cohen's Ruling would reverse numerous prior discovery rulings, upset reliance interests after the close of discovery, and defy the standards set for such orders by the Federal Rules and the Sixth Circuit.  For those reasons, the Ruling as it pertains to Agenda Item 304 should be vacated.

Dated:  March 24, 2021                    Respectfully submitted,

/s/   *Tara A. Fumerton*
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

## CERTIFICATE OF SERVICE

    I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record on March 24, 2021.

/s/   *Tara A. Fumerton*
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Counsel for Walmart Inc.*