# EXHIBIT I

| | |
|---|---|
| **From:** | Peter H. Weinberger <PWeinberger@spanglaw.com> |
| **Sent:** | Tuesday, July 7, 2020 8:45 AM |
| **To:** | David R. Cohen |
| **Cc:** | EXT Track1BDefendants; Swift (External), Kate |
| **Subject:** | Suspicious Order Report definition.   For today's 1130 am call. |

**\*\* External mail \*\***

SM Cohen:

Yesterday, we forwarded to the pharmacy defendants our definition of "Suspicious Order Reports".   See the email below.  We thought it would be helpful in light of our ongoing discussions about the discoverability (and scope) of these documents.

This definition is intended to capture reports that were transmitted to the DEA and the defendants' internal reports of orders that were not sent to the DEA.   Each of the pharmacy defendants were required to have in place and implement an effective SOMs system.   Those systems were required in order  for the defendants to fulfill their obligations under the CSA.  Indeed, Judge Polster granted summary judgement regarding the defendants' duty to not ship a suspicious order without the performance of due diligence on that order.    The SOMS systems that these defendants utilized, and modified over time, included formulas, tests, or algorithms which were supposed to flag any order that exhibited unusual size, frequency, or deviation from a normal pattern.  Plaintiffs are entitled to discover what happened after an order was flagged.   If for example,  a threshold system was used to flag, was the threshold increased and why?    If a look back system was used, what factors or criteria were utilized to approve the order and how was that documented.  If an order was flagged but then filled, plaintiffs are entitled to discover the documentation regarding that decision.

How the defendants' SOM systems worked, and how the systems were implemented on a national basis is critical to plaintiffs' ability to prove liability.  That is true not just because the pills migrated.  It is true because the defendants' knowledge on a nationwide basis that their systems did not work and that they were responsible for flooding our nation with opioid pills is highly relevant to the case.  The duty is established as a matter of law.  Whether that duty was violated is at the heart of this case and this discovery is warranted as a result.

Pete

---

**From:** Peter H. Weinberger
**Sent:** Monday, July 6, 2020 10:52 AM
**To:** Kate Swift <kate.swift@bartlitbeck.com>; EXT Track1BDefendants <EXT_Track1BDefendants@jonesday.com>
**Subject:** M/C Noon Eastern today - Suspicious Order Report definition.

Kate –

Since our discussions about scope of discovery began with our entitlement to Suspicious Order Reports (SOR) on a national basis as a Category 1 item, I thought it would be helpful for us to provide a definition of SOR.

*"Suspicious Order Report" is defined as a report or documentation of an order for Opioids or Opioid Products of unusual size, an order deviating  from a normal pattern, or an order of unusual frequency including any*

1

*order of interest that was flagged pursuant to any of your algorithms, formulas, or tests which you ever used to identify those orders, or orders that otherwise warranted additional review or investigation to determine whether the Order was a Suspicious Order. "Suspicious Order Report" shall include any documentation of the analysis of an order of opioids which you flagged including any Due Diligence performed on that order.  "Suspicious Order Report" shall further include documentation of those orders that were reported to the DEA and those that were not.*

Pete