# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Cases* | **MDL No. 2804**<br>**Case No. 17-md-2804**<br>**Judge Dan Aaron Polster** |

## PHARMACY DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 11 ORDER REGARDING ADDITIONAL BELLWETHERS AND SUPPORTING MEMORANDUM

Pursuant to Federal Rule of Civil Procedure 54(b), Pharmacy Defendants[1] hereby move for reconsideration of the Court's March 11, 2021 Order announcing that five additional cases will be set for "bellwether trials" against pharmacies only for the purpose of advancing a global settlement, and that these cases must include certain Pharmacy Defendants, specifically "the four national pharmacies that are in Track Three." The Order was entered without any opportunity for written submissions or argument, is based on clear errors of fact and law that undermine its stated purpose, and, if not reconsidered, would constitute an abuse of discretion.

---

[1] "Pharmacy Defendants" are CVS Pharmacy, Inc. and its subsidiaries ("CVS"), Rite Aid of Maryland, Inc., d/b/a Mid-Atlantic Customer Support Center, Rite Aid of Ohio, Inc., and Rite Aid Hdqtrs. Corp. ("Rite Aid"), Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co. ("Walgreens"), and Walmart Inc. ("Walmart").

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT ............................................ 1

BACKGROUND .................................................................................................................. 3

STANDARD......................................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

I.    The Order Will Not Facilitate a Global Settlement and Ignores Less
      Burdensome Alternatives for Addressing Sources of Uncertainty ...................................... 9

II.   The Order Appears to Use the Court's Case-Management Authority Improperly
      to Single Out Certain Pharmacy Defendants for Reasons Related to Settlement.............. 16

CONCLUSION.................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brooks v. Great Atl. & Pac. Tea Co.*,
    92 F.2d 794 (9th Cir. 1937) ..................................................................................18

*City of Cleveland v. Ameriquest Mortg. Sec., Inc.*,
    621 F. Supp. 2d 513 (N.D. Ohio 2009) ...............................................................14

*Del Rio v. N. Blower Co.*,
    574 F.2d 23 (1st Cir. 1978) ..................................................................................18

*Gevas v. Ghosh*,
    566 F.3d 717 (7th Cir. 2009) ...............................................................................18

*In re Ashcroft*,
    888 F.2d 546 (8th Cir. 1989) ...............................................................................18

*In re Chevron U.S.A., Inc.*,
    109 F.3d 1016 (5th Cir. 1997) .............................................................................13

*In re Gen. Motors LLC Ignition Switch Litig.*,
    Nos. 14-MD-2543 & 14-MC-2543, 2016 WL 1441804
    (S.D.N.Y. Apr. 12, 2016) ...............................................................................11, 12

*In re Nat'l Prescription Opiate Litig.*,
    927 F.3d 919 (6th Cir. 2019) .....................................................................2, 17, 19

*In re NLO, Inc.*,
    5 F.3d 154 (6th Cir. 1993) ...................................................................................17

*Jackson v. City of Cleveland*,
    219 F. Supp. 3d 639 (N.D. Ohio 2016) .................................................................8

*Kothe v. Smith*,
    771 F.2d 667 (2d Cir. 1985) ................................................................................18

*Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*,
    590 F.3d 381 (6th Cir. 2009) .................................................................................8

*Michigan ex rel. Nessel v. Cardinal Health*,
    No. 19-016896-NZ (Mich. Cir. Ct. Wayne Cnty. Nov. 17, 2020) .........................13

*Newton v. A.C. & S., Inc.*,
    918 F.2d 1121 (3d Cir. 1990) ..............................................................................17

*Rodriguez v. Tenn. Laborers Health & Welfare Fund*,
    89 F. App'x 949 (6th Cir. 2004) ............................................................................7

*Tejero v. Portfolio Recovery Assocs., L.L.C.*,
    955 F.3d 453 (5th Cir. 2020) ...............................................................................18

*Tuscola Wind III, LLC v. Almer Charter Twp.*,
    No. 17-cv-10497, 2018 WL 1250476 (E.D. Mich. Mar. 12, 2018) .......................17

## TABLE OF AUTHORITIES
(continued)

<strong>Page(s)</strong>

**STATUTES**

Ohio Rev. Code Ann. § 2307.71 ................................................................................14

**OTHER AUTHORITIES**

Eldon E. Fallon et al.,
*Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323 (2008) .....................13, 14

Fed. Judicial Center & Judicial Panel on Multidistrict Litig.,
*Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges* (2019) ........11, 12, 14

Jan Hoffman,
*Drug Giants Close In on a $50 Billion Settlement of Opioid Cases*,
THE NEW YORK TIMES (Oct. 16, 2019) ..................................................................13

Nate Raymond,
*McKesson says states seek $21 billion from drug distributors in opioid settlement*,
REUTERS (Nov. 3, 2020) ...........................................................................................5

## STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT

The Court has directed the Plaintiffs' Executive Committee ("PEC") and the "Track 3" Pharmacy Defendants to identify five additional bellwether cases to proceed to trial for the express purpose of "advanc[ing] a global settlement."  ECF Doc. No. 3649 ("Order") at 1.  The Court's order marks a dramatic and unjustified departure from prior practice.  Until recently, the Court has incrementally selected bellwether and selective-remand cases representing samples from the range of cases pending in this MDL.  One of those—the Track 3 trial against Pharmacy Defendants—is set for trial in October.  In addition, Pharmacy Defendants are currently expected to go to trial in nearly a dozen state and federal bellwethers over the next two years and are in discovery in many others.  This plethora of upcoming trials, across multiple jurisdictions and presenting claims arising under the laws of an array of states, will provide Pharmacy Defendants with ample information regarding the strengths and weaknesses of the cases against them.

Despite all of this—and without briefing or a meaningful opportunity for input from Pharmacy Defendants—the Court determined that five *additional* pharmacy bellwether cases will be set for trial and that *all five* must include CVS, Rite Aid, Walgreens, and Walmart—the four Pharmacy Defendants who already are approaching trial in Track 3, their first bellwether trial.  This Order is premised on clear errors that will defeat its stated purpose and unfairly single out these four Pharmacy Defendants.

The Court's stated purpose in ordering these additional bellwethers was to "provide the parties with the necessary data to advance a global settlement," *id.*, and the Court repeatedly asserted that it saw no other alternative to this plan.  But the four Pharmacy Defendants do not need more trial-level proceedings—or, in the Court's words, more trial-level "data."  *Id.*  Many trials involving Pharmacy Defendants already are scheduled in 2021 and 2022.  The plan set forth

1

in the Order—essentially, ordering five more repeats of Track 3, which itself has not yet gone to trial—cannot reasonably be expected to provide new information that will bring the parties closer to a global settlement.  If the Court wishes to "advance a global settlement," a range of more effective (and less burdensome) alternatives are available.  One such option would be certifying interlocutory appeals.  Appellate review of the Court's decisions on critical legal issues—not more trials—would provide meaningful and necessary information to all parties.

Moreover, the Order singles out the Track 3 Pharmacy Defendants for more onerous treatment than the ***hundreds*** of other defendants in the MDL.  Indeed, the Court's statements at the March 10 conference—including, for example, that it was "proceed[ing] with this other approach" because these Pharmacy Defendants had not reached a global settlement or consented to allow the Court to personally mediate settlement discussions, ECF Doc. No. 3654 ("Tr.") at 6:13–19—create the appearance that the Court is either penalizing Pharmacy Defendants for exercising their right to maintain separation between the Court's adjudication and mediation functions, unduly pressuring them to settle, or both.  This would be an abuse of discretion.  The Sixth Circuit previously has held in this litigation that a discretionary ruling cannot be justified by a desire to pressure certain parties to settle.  *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 933 (6th Cir. 2019).

Pharmacy Defendants respectfully ask the Court to reconsider its Order.  For the reasons detailed below, Pharmacy Defendants submit that no additional pharmacy bellwether cases are needed at this time and that the Order should be withdrawn in its entirety.  If the Court will not withdraw the Order, however, Pharmacy Defendants ask the Court to amend the Order to defer selection of any additional bellwether cases until after the conclusion of the Track 3 bellwether trial.  Alternatively, the Court should amend the Order: (1) to state that only one additional

bellwether case will be selected and set for discovery and trial; (2) to allow the additional bellwether to include, at a minimum, doctors who wrote the prescriptions at issue; and (3) to provide for immediate remand of the additional bellwether, in keeping with the Court's approach to the selective remands to West Virginia, Illinois, California, and Oklahoma. And regardless of whether the Court withdraws the Order, modifies it, or keeps it in place, the Court should separately implement a timetable for the parties to identify key issues for interlocutory appellate review, and to certify those issues once identified.

## BACKGROUND

On March 10, 2021, the Court held its monthly status conference for the Track 3 trial. *See* Tr. 2:6–7. After the Court confirmed its intent to proceed with the Track 3 trial in October 2021, the Court turned to its desire for Pharmacy Defendants to reach a global settlement with Plaintiffs.

The Court stated that it "need[ed] to discuss . . . the balance of the MDL, which is now in [its] view primarily with the [P]harmacy Defendants." *Id.* at 3:9–11. The Court explained that, as has been publicly reported since at least October 2019, the "Big 3" pharmaceutical distributors and Johnson & Johnson "have been negotiating to try and put together a global deal," and that the Court "expect[s]" a global settlement will be reached because "[t]here is enough pressure because of imminent trials." *Id.* at 3:11–20. The Court stated that it had "urged the parties a year ago to engage in some serious settlement discussions," that the mediator "has ended his mediation efforts," and that "there are no discussions going on now" between the Plaintiffs and Pharmacy Defendants. *Id.* at 4:8–16. In the Court's view, even though the parties have been extremely busy readying the Track 3 cases (and others) for trial, "a whole year was wasted." *Id.* at 4:24–25.

Moreover, the Court believed that "settlement would be harder, not easier," after the Track 3 trial because, according to the Court, if Pharmacy Defendants are found not liable, they "are not

going to pay anything," and if the Plaintiffs prevail, "every county in the country" is going to want to go to trial, confident their cases are "just as strong" as the Track 3 counties' case. *Id.* at 5:9–18. Accordingly, the Court saw "no alternative but to tee up some number of additional cases for trial," even though neither Plaintiffs nor Pharmacy Defendants had indicated that they wanted or needed any more bellwethers, much less that setting additional bellwethers would facilitate settlement. *Id.* at 5:19–21.

The Court then asked Plaintiffs and Pharmacy Defendants "how many additional" bellwethers they thought would be necessary. *Id.* at 7:9–15. Pharmacy Defendants—having no notice that additional bellwethers would be discussed at this status conference—did not suggest a number and instead objected to additional bellwethers as the Court had proposed them. Specifically, liaison counsel for Pharmacy Defendants explained the inequities of ordering additional bellwethers against only CVS, Rite Aid, Walgreens, and Walmart, highlighting that "[t]here are very significant local players who are sometimes part of the litigation," and that "if the way [the Court] structure[s] [the additional bellwethers] is to say we are only [looking] for a nuisance case and we are only [looking] for a case involving these four chains . . . [the Court is] gerrymandering the universe of cases that are available for consideration." *Id.* at 8:15–9:3. The Court responded that it "was going to assume that both sides are going to work together" in identifying the additional bellwethers, and that the Court's "preference is we have meaningful settlement discussions now." *Id.* at 9:24–10:8. The only question for the Court was "how many trials do [the parties] need" to reach a global settlement. *Id.* at 10:16–20.

The Court continued to focus on its desire for a global settlement, stating that "[i]t seems to me" that "the dollar amounts that the distributors and [Johnson & Johnson] are paying" is "*the*

*benchmark*" for what Pharmacy Defendants should pay.  *Id.* at 10:8–10 (emphasis added).[2]  The Court continued: "Now, I am sure these Defendants will say we are going to pay far less.  The Plaintiffs *probably should say*, well, you should pay far more, but it is there."  *Id.* at 10:11–14 (emphasis added).  The Court elaborated: "Defendants all have tons of money.  Clearly, I can't imagine that the Defendants' strategy is to try hundreds of these."  *Id.* at 11:2–4.

The Court expressed its view that additional bellwethers were the only way to give the parties enough information to facilitate a global settlement—to give them "a lot more data" and more "verdicts."  *Id.* at 7:11–13, 21:9–13.  On that point, counsel pointed out that each Pharmacy Defendant already is involved in numerous opioid cases scheduled for trial in state and federal courts in the near future, including a West Virginia state bellwether case set for trial in November 2021 and two state Attorneys General cases set for trial in Spring 2022.  *See id.* at 11:19–12:3.[3]  Counsel explained that those three cases—among many others, *infra* p. 10—"will provide the benchmarking that [the Court is] raising" here.  Tr. 12:4–7.  Put simply, Pharmacy Defendants "have a sufficient number of bellwethers as currently structured."  *Id.* at 12:24–13:1.  Counsel also requested that, at minimum, Pharmacy Defendants be afforded "a few days at least or a week to . . . look at the trial schedules, [and] put in a submission to [the Court] setting forth when they are, where they are, [and] what kinds of claims they may or may not have included."  *Id.* at 13:10–16.

Instead, the Court asked Plaintiffs' counsel if they "want to say anything as to what [Plaintiffs] think I should set?"  *Id.* at 13:21–22.  Counsel for the PEC responded that the Court

---

[2] According to public press reports, this combined settlement exceeds $20 billion.  *See* Nate Raymond, *McKesson says states seek $21 billion from drug distributors in opioid settlement*, REUTERS (Nov. 3, 2020), *available at* www.reuters.com/article/us-usa-opioids-litigation/mckesson-says-states-seek-21-billion-from-drug-distributors-in-opioid-settlement-idUKKBN27J1UC.

[3] In addition, as noted below, *infra* p. 10, Pharmacy Defendants are involved in a bellwether case set for trial in New York, with jury selection set to begin in June 2021.

"should take five cases and work them up." *Id.* at 14:9–10.  The Court replied that it "was actually

thinking of five," and "direct[ed] the parties to come up with the[] [list of five] cases." *Id.* at

14:17–22.   Although  Pharmacy  Defendants  had  participated  in  Court-directed  confidential

mediation with a third-party mediator agreed on by the parties, the Court declared that Pharmacy

Defendants were "not willing to seriously explore resolution *now*," so it had "no other choice"

than to order additional bellwethers. *Id.* at 15:2–5 (emphasis added).  The Court explained further:

> I don't want to do any of these other trials, but again, the [Pharmacy Defendants]
> aren't  giving  me  a  lot  of  choice.   The  pharmacies  are  not  giving  me  much
> choice. . . . They want to hemorrhage money trying these cases all over the country
> in state and federal court forever . . . . I can say categorically no other Defendants
> in this MDL [are] operating that way.   They have all been willing to, at least
> seriously,  explore  resolution  . . . .  [E]very  other  Defendant  expects  [sic]  a
> willingness to explore resolution, but if the pharmacies choose not to, that's their
> right. . . . But, then they are going to be litigating all over the country. *That's the*
> *only thing I can do.*

*Id.* at 17:25–18:19 (emphasis added).

Counsel  attempted  to  explain  that  it  is  not  "a  fair  assumption  to  say  the  [Pharmacy]

Defendants have not been willing to engage in serious settlement negotiations." *Id.* at 19:4–7.  The

Court  dismissed  this  explanation,  stating  that  because  Pharmacy  Defendants  had  previously

declined to have the Court—which has already stated it will act as the factfinder for a portion of

the Track 3 trial—personally mediate the case and instead opted for an independent, confidential

mediation,  the  Court  has  "to  operate  without  knowledge,  so  [Pharmacy  Defendants]  can't

complain that I don't have knowledge, full knowledge.  That's on you." *Id.* at 19:15–21.[4]

---

[4] The Court has previously expressed its view that it is the only person who could
successfully mediate a settlement and that "if . . . any defendants . . . are serious about resolving
their case, . . . I don't see how you're going to do that without utilizing my involvement."  ECF
Doc. No. 3573 at 40–41; *see also id.* ("I cannot imagine any defendant wanting to settle cases with
the subdivisions without settling with the states. . . . [I]t's my understanding that no one has yet
involved any of the [state] AGs in these discussions with [the mediator].  I am the one person who
speaks directly to Attorney[s] General.  I have been doing this regularly from the beginning of this
MDL. . . . I speak to them frequently. . . . Maybe [the mediator] can do that, but I don't think you

The Court concluded the conference by instructing the PEC and Pharmacy Defendants to either agree to, or provide separate lists of, five additional proposed bellwethers by March 31, 2021, and stated that it will "finalize the list of five" at the status conference scheduled for April 7, 2021. *Id.* at 20:8–9, 20:22–21:4.

The Court formalized its instructions in a March 11, 2021 Order.  In that Order, the Court confirmed that "five cases would be selected to proceed to trial in new litigation tracks."  Order at 1.  The Court explained that the parties must work with Special Master Cohen to identify the five new bellwethers, and "must sufficiently explain how the submitted list . . . will provide the parties with the necessary data to advance a global settlement." *Id.*  The Court instructed that all five new bellwethers "must include the four national pharmacies that are in Track Three"—CVS, Rite Aid, Walgreens, and Walmart—and that there is no requirement to include any other "regional or local pharmacies." *Id.*  Going further still, the Court ordered that each of the five new bellwethers is to be limited to a single cause of action: "presumably either public nuisance or RICO." *Id.*  The Court also explained that the purpose of these additional bellwethers "is to provide a sufficient and representative number of verdicts, along with Track Three and any state cases that are tried, to provide a basis for global settlement." *Id.*

## STANDARD

"District courts have authority both under common law and [Fed. R. Civ. P.] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004).

---

can pick up the phone and call an Attorney General.  I can.  I do it all the time.  And if they're not available, they get back to me within 24 hours. . . . I can't see how you're going to get any resolution without involving the states, and I don't know how you do that without me."); ECF Doc. No. 2676 at 13 ("I do not believe that any of the settlements that have so far been achieved [in this MDL] would have happened without my active participation . . . .").

Reconsideration is warranted where, among other things, "there is . . . a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez*, 89 F. App'x at 959). A court may grant a motion for reconsideration if it "calls . . . attention to an argument or controlling authority that was overlooked or disregarded in the original ruling, presents evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law." *Jackson v. City of Cleveland*, 219 F. Supp. 3d 639, 642 (N.D. Ohio 2016) (internal quotation marks omitted).

## ARGUMENT

Without affording Pharmacy Defendants any advance notice or opportunity for written submissions, the Court has determined that five additional pharmacy bellwether cases will be prepared for trial. Although the Court's stated purpose is to "provide the parties with the necessary data to advance a global settlement," Order at 1, the Order will not achieve that end. Instead, it will impose a massive and unjustified additional litigation burden—particularly on the four Pharmacy Defendants in question, who already are running a gauntlet of opioid trials in state and federal courts across the country. The bellwether plan announced in the Order cannot be squared with MDL guidance and established best practices, and it overlooks a range of much less burdensome alternatives for promoting settlement. Moreover, taking all circumstances together, the Order appears to reflect a determination to use the Court's case-management discretion to single out four Pharmacy Defendants for different treatment from all other defendants and to pressure them to settle. This would be an abuse of discretion. The Court should reconsider its Order.

I.   **The Order Will Not Facilitate a Global Settlement and Ignores Less Burdensome Alternatives for Addressing Sources of Uncertainty.**

In announcing its plan for five additional "pharmacy" bellwether trials, the Court repeatedly stated that it did not "see any other thing [it] can do" to facilitate the resolution of MDL plaintiffs' claims against Pharmacy Defendants.  Tr. 21:6–7; *see also id.* at 5:20–23 ("I see no alternative but to tee up some number of additional cases for trial, and . . . [t]he number needs to be [the] number of cases that are tried to verdict."); *id.* at 6:16–19 ("If . . . there is no willingness on both sides to [settle] now, then I have just got to proceed with this other approach."); *id.* at 11:8–9 ("I am assuming that there is some number [of additional trials] we need."); *id.* at 15:11–12 ("I see no other alternative."); *id.* at 17:25–18:2 ("I don't want to do any of these other trials, but . . . [t]he pharmacies are not giving me much choice.").  The notion that the Court had "no other alternative" than to set these multiple additional bellwether trials requires at least three assumptions: (1) the parties would not be able to engage in serious settlement discussions without additional verdict "data" points beyond those already on the horizon, *id.* at 21:12–13; Order at 1; (2) repeated trials of the same one or two claims against the same Pharmacy Defendants in cases shaped by the same pre-trial rulings would be "representative" of the cases pending in this MDL and thus offer meaningful "data" points for a global settlement, Order at 1; and (3) there was no "better" way for the parties to assess the strength of their claims and defenses, Tr. 5:19–20, 21:6.  All three assumptions are unfounded.  The Order will not advance settlement.  Moreover, it ignores more effective and less burdensome alternatives for addressing some of the sources of uncertainty that have so far made settlement elusive.  *Infra* pp. 14–16.

*First*, the Court's hypothesis that "a lot more data" is "need[ed]" and that setting multiple additional bellwethers is "the way to get it" is, at best, entirely premature.  Tr. 21:12–13; *see also id.* at 12:14–18.  To start with, the Track 3 trial is set to begin in a matter of months, and—as

Pharmacy Defendants attempted to explain at the March 10 conference—many more cases involving similar theories are rapidly approaching trial in federal and state courts across the country.  In federal court, selective remand cases are pending against certain Pharmacy Defendants in *Cherokee Nation* (E.D. Okla.) and *San Francisco* (N.D. Cal.), and the Track 2 trial against the Distributors, currently scheduled for May 2021, may also be informative.  If that were not enough, Pharmacy Defendants simultaneously are engaged in nine cases (in addition to Track 3) to be tried in state courts within the next two years:

- **CVS:** New York (June 2021); West Virginia (November 2021); Florida (April 2022); Nevada (April 2022); Alabama (May 2022); Missouri (June 2022); Massachusetts (expected Summer 2022); New Mexico (September 2022).

- **Rite Aid:** New York (June 2021); West Virginia (November 2021); Alabama (May 2022); Massachusetts (expected Summer 2022).

- **Walgreens:** New York (June 2021); West Virginia (November 2021); Florida (April 2022); Nevada (April 2022); Alabama (May 2022); Missouri (June 2022); Massachusetts (expected Summer 2022); New Mexico (September 2022); Michigan (October 2022).

- **Walmart:** New York (June 2021); West Virginia (November 2021); Nevada (April 2022); Alabama (May 2022); Missouri (June 2022); Massachusetts (expected Summer 2022); New Mexico (September 2022).

This is to say nothing of the multitude of other cases that are proceeding in state court but have not yet been set for trial.  Simply put, the parties already have ample opportunities to see their claims and defenses put to the test, and Pharmacy Defendants in particular face an incredibly demanding schedule.

The Court expressed concern that not all these other cases may ultimately be tried, *see id.* at 12:15–18, but such speculation is no reason to set additional trials *now*, while all these cases are

actively being litigated.[5]  To the contrary, the Federal Judicial Center and JPML instruct MDL

courts to account for "related proceedings in state courts in order to . . . avoid scheduling scenarios

that might inadvertently give one party or set of parties a strategic advantage," and further advise

MDL courts "to postpone MDL bellwether trials" if doing so would "allow judges more familiar

with particular governing state law to conduct early trials."  Fed. Judicial Center & Judicial Panel

on Multidistrict Litig., *Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges*

(2019), at 37, *available at* www.fjc.gov/sites/default/files/materials/19/Bellwether%20Trials%20

in%20MDL%20Proceedings.pdf ("FJC & JPML, *Bellwether Trials*").  Working up additional

cases will not achieve verdicts any faster, but it will certainly (as the Court recognized) impose "a

huge amount of work" and "tremendous" burdens on Pharmacy Defendants, Plaintiffs, and the

Court's own resources. Tr. 14:23–24, 21:8.  Those costs are unjustifiable at this juncture.

 ***Second***, even supposing the parties were in need of additional representative verdict data

points (and Pharmacy Defendants certainly are not), the five gerrymandered bellwethers the Court

announced would not provide such information.  The "primary purpose" of bellwether trials "is to

provide data points for settlement discussions *with respect to the universe of cases*," so "the goal"

of bellwether case selection "is to select the 'best' representatives of th[at] universe."  *In re Gen.*

*Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543 & 14-MC-2543, 2016 WL 1441804, at *9

(S.D.N.Y. Apr. 12, 2016) (emphasis added).  What is more, "[i]n order to provide reliable

---

[5] Indeed, to the extent the Court intends that the five new bellwether cases go to trial, any trial setting must be made by the district court that will actually try them.  In light of the extensive discovery and motions practice that would have to take place before the cases could be ready for trial, no trial could be set for well over a year—and probably longer.  And that is assuming the cases survive Pharmacy Defendants' motions to dismiss and motions for summary judgment.  (If the Court's determination that these new bellwether cases will go to trial reflects that it already intends to deny Pharmacy Defendants' motions to dismiss and motions for summary judgment, that would be troubling for additional reasons.)

information about . . . global settlement value, bellwether cases must be representative of the range of cases included in the MDL proceeding . . . [and] both sides must consider the selected bellwether case pool a fair sample of the docket."  FJC & JPML, *Bellwether Trials*, at 22.

The cases specified by the Court's Order are anything but "representative[] of the universe of cases" pending in the MDL.  *In re Gen. Motors*, 2016 WL 1441804, at *9.  The Court ordered that the additional bellwethers must be "against pharmacies only," a small subset of the defendants named in the pending cases.  Order at 1.  Cases with no manufacturers, no other distributors, and no doctors are hardly representative.  Indeed, even as to pharmacies alone, the market share of pharmacies varies substantially from region to region and state to state, so focusing only on four Pharmacy Defendants is not representative.  Furthermore, as Rite Aid detailed in a recent submission, it is not—and has never been—a "national pharmacy."  *See* ECF Doc. No. 3663. Requiring that Walgreens be named in all five cases is also particularly unnecessary and unjust. In addition to the Track 3 trial, Walgreens is the only Pharmacy Defendant in *two* MDL cases that have been remanded for bellwether trials (along with CVS and Walmart, it is involved in *Cherokee Nation*, and it is the only Pharmacy Defendant in *San Francisco*), and it has two more trials scheduled this year and next than any other Pharmacy Defendant, *see supra* p. 10.

The Court's insistence on setting five additional bellwether cases and delaying remand of those cases—in contrast to its position on prior selective remands—further undermines their utility.  Tr. 6:2–12 (stating the Court plans to "keep these cases for discovery" and potentially for "dispositive motions and Daubert motions" as well).  "Representativeness must also include the substantive law that will be applied."  FJC & JPML, *Bellwether Trials*, at 22.  Other judges already have taken very different views than the Court of the novel and unsettled legal issues presented by the relevant claims against retail pharmacies—even when applying the same state's law.  *Compare,*

*e.g.*, ECF Doc. No. 3285 (denying pharmacy motion to dismiss common-law public nuisance claim under Michigan law), *with* Order, *Michigan ex rel. Nessel v. Cardinal Health*, No. 19-016896-NZ (Mich. Cir. Ct. Wayne Cnty. Nov. 17, 2020) (granting pharmacy motion to dismiss equivalent common-law public nuisance claim under Michigan law).  No single judge's view could give a representative look at how pretrial rulings—and thus substantive results—are likely to play out in the universe of pending litigation.

By imposing these limitations on case selection, the Order ensures that the additional bellwether cases will be no more than clones of Track 3, which itself is not representative of the cases in this MDL.  *See* ECF Doc. No. 3303 at 6–7 (explaining that "[a] trial of just one cause of action against only the Pharmacy Defendants would bear no resemblance to the trial of any other case in the MDL").[6]  As Judge Fallon has explained, "unrepresentative cases, even if they are successful at trial, will do little to resolve the entire litigation and will have little predictive value." Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2349 (2008); *see also In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) (observing "[t]he notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement . . . is a sound one," but only if the selected group is "representative").  Where, as here, bellwethers are intended for informational purposes only, any "pool" of bellwether cases should account for "the major variables" across a census of *all* MDL

---

[6] The Court's belief that "the balance of the MDL . . . is now in my view primarily with the pharmacy Defendants" is not borne out by the facts. Tr. 3:10–11. Although Track 3 is limited to Pharmacy Defendants, there are manufacturers, distributors, and other pharmacies that remain in the MDL.  Indeed, there are hundreds of other defendants named in MDL cases, yet fewer than a dozen defendants have been (or are scheduled to be) participants in a bellwether case.  The "Big 3" Distributor Defendants, meanwhile, reportedly have been on the verge of settlement for well over a year, but no settlement has yet been reached.  *See* Jan Hoffman, *Drug Giants Close In on a $50 Billion Settlement of Opioid Cases*, THE NEW YORK TIMES (Oct. 16, 2019), *available at* www.nytimes.com/2019/10/16/health/opioids-settlement-distributors.html.

cases, while still being "small enough to be manageable and time-efficient."  Fallon, *supra*, at 2345–47.  In devising a bellwether plan, moreover, courts should "be vigilant of the law of diminishing returns."  *Id.* at 2346 n.91.  Conducting five more iterations of a case that has limited predictive value to begin with will serve only to escalate litigation costs, not move the ball forward.

*Third*, other options are available to the Court if the goal is to encourage settlement among the parties.  It bears repeating that Pharmacy Defendants have not yet reached trial in a single case, much less obtained a verdict.  The Court could and should allow *at least* one currently set trial to play out before determining whether any additional bellwethers may be warranted.  Replicating trials of the same causes of action against the same parties in cases shaped by the same Court will do nothing to resolve the fundamental uncertainty that, so far, has made mediation unsuccessful.

In this vein, the single largest point of uncertainty—and one that is within this Court's power to alleviate—is the legal viability of Plaintiffs' claims and how appellate courts will view them.  For example, Plaintiffs and Pharmacy Defendants dispute the requirements of the Controlled Substances Act; the proof needed to establish causation; the degree to which Plaintiffs' common-law claims are preempted; and whether Plaintiffs' public nuisance theory has been abrogated under Ohio law, *see* Ohio Rev. Code Ann. § 2307.71(A)(13)—or, even if not abrogated, whether their unprecedented theory is available as a matter of law, *see City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 621 F. Supp. 2d 513, 526–36 (N.D. Ohio 2009).  *See* ECF Doc. No. 497-1 at 8, 14–20; ECF Doc. No. 1883-1 at 1–7; ECF Doc. No. 1885-1 at 1–4; ECF Doc. No. 3340-1 at 14–20.  If the Court truly wants to help the parties acquire information that may facilitate settlement, it should certify interlocutory appeals on these dispositive legal issues.  *See* FJC & JPML, *Bellwether Trials*, at 44–45 (approving of the strategic use of interlocutory appeals or certification of issues to state court).  What is missing and needed now is appellate scrutiny of the

14

viability of Plaintiffs' claims—not more, duplicative trials.  Moreover, the Court could accomplish this with respect to nearly all of these issues without delaying the Track 3 trial by amending orders issued in Track 1 to authorize interlocutory appeals of these issues under 28 U.S.C. § 1292(b).  *See* ECF Doc. No. 1203 at 22–28 (regarding abrogation by Ohio Products Liability Act); ECF Doc. No. 2561 at 8–9 (regarding proof needed to establish causation); ECF Doc. No. 2565 at 22 (regarding preemption); ECF Doc. No. 3102 at 5–6 (regarding whether alleged regulatory violations may support an absolute public nuisance claim).

Even if the Court believes that more verdicts are ultimately needed to facilitate settlement, there is no reason to take action immediately, much less to add five cases at once.  Prudence dictates that the Court start with a single additional bellwether, as the Court did with Track 2.  *See* ECF Doc. No. 1218 (setting Track 2 bellwether); ECF Doc. No. 2990 (severing all defendants but "Big 3" Distributors).[7]  Pharmacy Defendants also respectfully suggest that, if the Court were to take this approach, it should allow the parties to reach agreement or submit proposals regarding what type of additional case would be most informative, in light of the composition of Track 3 and the array of other upcoming trials.  In this regard, Pharmacy Defendants previously have explained that Plaintiffs have pled their cases in such a way as to make the doctors who wrote the prescriptions in question critical to the cases, and accordingly those prescribers should be included among any representative array of defendants.  Finally, remanding any additional bellwethers to the transferor court before dispositive motions would adhere to the Court's past practice and give the parties critical information about how other judges view the legal merits of Plaintiffs' claims against retail pharmacies.  *See supra* pp. 12–13.

---

[7] Although there are technically two cases within the Track 2 bellwether, they are two cases brought by "overlapping jurisdictions," as "the City of Huntington, West Virginia, lies within Cabell County, West Virginia, which brought its own case."  ECF Doc. No. 2941 at 3.

All in all, the March 11 Order will not achieve its stated purpose and overlooks at least three better options: (1) the Court could instead certify key dispositive issues for appeal to the Sixth Circuit and/or to the Ohio Supreme Court; (2) the Court could wait to see how the other actively litigated cases proceed—*at least* until the October 2021 Track 3 trial is over, in a matter of months—before setting any additional bellwethers; or (3) the Court could add a single additional bellwether, giving the parties leeway to agree on what additional case would be most informative and what defendants should be included, and then remand that case for dispositive motions, rather than mandating five redundant, unrepresentative, and highly burdensome additional trials.

## II.  The Order Appears to Use the Court's Case-Management Authority Improperly to Single Out Certain Pharmacy Defendants for Reasons Related to Settlement.

The Court previously has made clear that if "you're [not] really making progress or [if the mediation is] terminated, then I'm going to press the [Pharmacy] [D]efendants to let the Court get involved."  ECF Doc. No. 3453 at 20.  Recently, the Court appears to have cemented its opinion that it is the "one person" who can successfully mediate a settlement: "I can't see how you're going to get any resolution without involving the states, and I don't know how you do that without me." ECF Doc. No. 3573 at 40–41; *see also* ECF Doc. No. 2676 at 13 ("I do not believe that any of the settlements that have so far been achieved [in this MDL] would have happened without my active participation . . . .").

The Order appears to attempt to "press" Pharmacy Defendants "to let the Court get involved" in settlement discussions.  ECF Doc. No. 3453 at 20.  At the March 10 conference, the Court made clear that its "preference is we have meaningful settlement discussions now" (that is, settlement discussions mediated by the Court) and that it "ha[d] no other choice" than to issue the Order because "Defendants . . . are not willing to seriously explore resolution now . . . and . . . I can't make the Defendants [] talk to me privately."  Tr. 10:6–8, 15:2–7; *see also id.* at 6:13–19

16

(similar); *id.* at 22:17–23:1 ("And again, if the [Pharmacy] Defendants choose to reconsider my offer [to mediate] . . . . you know how to reach me."). In fact, the Court appeared to link the litigation burden imposed by the Order to Pharmacy Defendants' choice to respect the distinction between adjudication and mediation: "[I]f the Defendants are willing to talk to me privately, I am happy to have those discussions, but in the absence of that, I see no other alternative." *Id.* at 15:9–12.

To be sure, it is appropriate for judges in complex litigation to help facilitate settlement, but only in a reasoned and even-handed manner. As the Sixth Circuit has explained, a Court's desire to pressure certain parties into settling is not a proper basis for a discretionary ruling. In 2019, the Sixth Circuit vacated this Court's order regarding the disclosure of ARCOS data to third parties, in large part because the Sixth Circuit concluded the order "might have been [motivated by] a desire to use the threat of publicly disclosing the data as a bargaining chip in settlement discussions." *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 933. "If this was a motivation for its holding, then the district court abused its discretion by considering an improper factor." *Id.* This decision aligns with long-standing Sixth Circuit precedent. *See, e.g.*, *In re NLO, Inc.*, 5 F.3d 154, 157 (6th Cir. 1993) ("[J]udges should encourage and aid early settlement, however, they should not attempt to coerce that settlement."); *see also Tuscola Wind III, LLC v. Almer Charter Twp.*, No. 17-cv-10497, 2018 WL 1250476, at *10 (E.D. Mich. Mar. 12, 2018) ("The law does not countenance attempts by courts to coerce settlements." (citation omitted)).

Like the Sixth Circuit, other appellate courts recognize that a court's discretionary case-management powers may not be used to compel settlements. *See, e.g.*, *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1128 (3d Cir. 1990) (concluding that it was improper for a district court to "attempt[] to persuade [defendants] to change . . . tactics because [the court] believe[s] that this

would promote earlier and more frequent settlements" and holding that a court may not "create[]

impermissible pressure on the defendants to alter their course in settling cases"); *Kothe v. Smith*,

771 F.2d 667, 669 (2d Cir. 1985) ("Although the law favors the voluntary settlement of civil suits,

it does not sanction efforts by trial judges to effect settlements through coercion. . . . In short,

pressure tactics to coerce settlement simply are not permissible" (citations omitted)).[8]

It appears that here, as before, the Court's driving motivation in ordering these five

additional bellwethers is to compel certain defendants to reach a global settlement before any of

those bellwethers are tried.  For example, during the March 10 conference, at which the Court

announced these new bellwethers:

- The Court noted that the "pressure . . . of imminent trials" was necessary for the "Big 3" Distributor Defendants and Johnson & Johnson to reach a global settlement.  Tr. 3:11–20.[9]

- The Court stated that because it believed "settlement w[ill] be harder" after the Track 3 trial, it had "no alternative but to tee up some number of additional cases for trial."  *Id.* at 5:9–21.

- The Court stated that it desired the parties be engaged in "meaningful settlement discussions *now*," and that its only concern in ordering additional bellwethers was "how many trials do [the parties] need" to reach a global settlement.  *Id.* at 9:24–10:9, 10:16–20 (emphasis added).

---

[8] *See also, e.g.*, *Gevas v. Ghosh*, 566 F.3d 717, 719 (7th Cir. 2009) ("A judge may not coerce a party into settling.  Coercion occurs when a judge threatens to penalize a party that refuses to settle." (citations omitted)); *In re Ashcroft*, 888 F.2d 546, 547 (8th Cir. 1989) ("The law does not countenance attempts by courts to coerce settlements.  Pretrial-conference discussion of settlement . . . is not designed to impose settlement upon unwilling litigants." (citations omitted)); *Del Rio v. N. Blower Co.*, 574 F.2d 23, 26 (1st Cir. 1978) ("[T]he court should never work to coerce or compel a litigant to make a settlement."); *Brooks v. Great Atl. & Pac. Tea Co.*, 92 F.2d 794, 796 (9th Cir. 1937) ("The judge must not compel agreement by arbitrary use of his power . . . ."); *cf. Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 458–59 (5th Cir. 2020) ("[T]he Fifth Circuit and a number of our sister circuits have held that courts do not have the power to compel parties to make settlement offers, and that the failure to make an offer is not sanctionable.").

[9] As previously noted, no global settlement has actually been reached by the Distributor Defendants, despite reports of a potential deal as early as October 2019—well over a year ago.

18

- The Court opined on what it considered to be the appropriate "benchmark" for a global settlement with Pharmacy Defendants, and recommended that Plaintiffs "probably should say" that Pharmacy Defendants should pay more than the "Big 3" Distributor Defendants and Johnson & Johnson. *Id.* at 10:8–14.

- The Court stated that because—in its view—Pharmacy Defendants "are not willing to seriously explore resolution *now*," it had "no other choice" than to order additional bellwethers. *Id.* at 15:2–5 (emphasis added).

- The Court reiterated its view that Pharmacy Defendants "aren't giving [it] a lot of choice," and told Pharmacy Defendants that if they will not "seriously[] explore resolution" now, "they are going to be litigating all over the country." *Id.* at 17:25–18:19.

The Court's Order then restated that the driving motivation for the additional bellwethers is "to provide a basis for global settlement." Order at 1. These statements run contrary to the Sixth Circuit's ruling that settlement pressure is an improper rationale for discretionary rulings. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 933.[10]

What is more, the structure of these additional bellwethers unreasonably targets CVS, Rite Aid, Walgreens, and Walmart to the exclusion of all other defendants (pharmacies and other actors in the prescription-opioid supply chain alike) among the *more than 400* defendants that have been

---

[10] Earlier statements by the Court reinforce the conclusion that the Court's primary "objective" is "to do something meaningful to abate this crisis" by "get[ting] some amount of money to the government agencies for treatment," with all defendants' "responsibility" for the crisis of opioid overuse taken as a given. ECF Doc. No. 71 at 4–5; *see also id.* ("I can get the parties, and I can involve the states . . . [and] I'm confident we can do something to dramatically reduce the number of opioids that are being disseminated" and to "get some amount of money to the government agencies for treatment"); *id.* ("everyone shares some of the responsibility, and no one has done enough to abate it"); *id.* ("People aren't interested in . . . trials. People aren't interested in figuring out the answer to interesting legal questions like preemption and learned intermediary . . . ."); *id.* at 9 ("We don't need . . . a lot of briefs and we don't need trials. They're not going to . . . solve what we've got."); ECF Doc. No. 2590 at 2 ("settlement is especially important [in this litigation] as it would expedite relief to communities so they can better address this devastating national health crisis"); ECF Doc. No. 2676 at 3 (concluding that defendants bear responsibility "for having created the opioid crisis" and for "fixing it"); ECF Doc. No. 3113 at 4 ("you and your clients need to understand that the only things I can accomplish in an MDL are through those private discussions").

named in the thousands of cases consolidated in the MDL for pre-trial proceedings.  As discussed above, *supra* Part I, there is no legitimate basis to start five additional bellwether trials dedicated to these four Pharmacy Defendants, especially when all other defendants in the MDL are involved in a much smaller number of bellwethers, if any at all.  Indeed, if two remanded cases to be set for bellwether trials are sufficient for manufacturers, for example, there is no sound reason to set up to *eight* for Pharmacy Defendants.  Again, one of the Pharmacy Defendants, Walgreens, already is in two remanded MDL cases set for bellwether trials (both *San Francisco* and *Cherokee Nation*), Walmart and CVS already are in the *Cherokee Nation* case as well, and all four Pharmacy Defendants are already in Track 3.

With respect to dispensing claims, many other pharmacies are named as defendants in cases in this MDL, including other regional and national pharmacy chains.  Many cases in this MDL also include independent pharmacies, small local chains, or mail-order pharmacies.  Many of these entities have significant market shares in specific cities, counties, or states.  As for distribution claims, there are also many other distributors, and the four targeted pharmacies represent a small fraction of the total distribution market.  This is true both at the national level, and in any given locality.

The only difference between these many other defendants and the four Pharmacy Defendants is that the Pharmacy Defendants have objected to ex parte mediation communications so long as the Court continues to preside over the merits, *see* ECF Doc. No. 2963, or have not settled (or been reported to settle) any cases in the MDL.  Because no other distinctions exist, the degree to which the Order singles out the four Pharmacy Defendants exacerbates the concern that it is driven by settlement-related considerations.

## CONCLUSION

For the foregoing reasons, Pharmacy Defendants ask the Court to withdraw the March 11 Order.  If the Court does not withdraw the Order, Pharmacy Defendants ask the Court to amend the Order to defer selection of any additional bellwether cases until after the conclusion of the Track 3 bellwether trial.  Alternatively, the Court should amend the Order: (1) to state that only one additional bellwether case will be selected and set for discovery and trial; (2) to allow the additional bellwether to include, at a minimum, doctors who wrote the prescriptions Plaintiffs challenge as improper; and (3) to provide for the immediate remand of the additional bellwether, in keeping with the Court's approach to other selective remands.  Separately, the Court should also implement a timetable for the parties to identify key issues for interlocutory appellate review, and so certify those issues once identified.

Dated:  March 29, 2021

Respectfully submitted,

/s/   *Tara A. Fumerton*
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

/s/   *Eric R. Delinsky* (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106

E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Attorneys for CVS Rx Services, Inc., CVS Indiana, L.L.C., CVS Pharmacy, Inc., and Ohio CVS Stores, L.L.C.*

/s/    *Kelly A. Moore* (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Attorneys for Rite Aid of Maryland, Inc., d/b/a Mid-Atlantic Customer Support Center, Rite Aid of Ohio, Inc., and Rite Aid Hdqtrs. Corp.*

/s/    *Kaspar Stoffelmayr* (consent)
Kaspar Stoffelmayr
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlit-beck.com

*Attorney for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co.*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that the foregoing document was served via the Court's

ECF system to all counsel of record on March 29, 2021.

/s/ *Tara A. Fumerton*
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Counsel for Walmart Inc.*