# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) No. 1:17-MD-2804 |
| | ) |
| | ) Judge Dan A. Polster |
| | ) |
| | ) **MOTION TO ALLOW DEFENDANT** |
| | ) **WORLEY TO FILE MOTION TO** |
| | ) **DISMISS AND MOTION TO DISMISS** |
| | ) |
| | ) |
| | ) |

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

BACKGROUND .........................................................................................................3

STANDARD.................................................................................................................6

ARGUMENT...............................................................................................................9

I.     The Court Should Consider Worley's Motion To Prevent Him From Suffering
Any Further Prejudice...........................................................................................9

II.    The Court Should Dismiss The Complaints For Failure Of Service.................................9

III.   The Court Should Dismiss The Complaints Because The Plaintiffs Lack Standing. .......10

IV.   The Complaints Fail To State Viable Claims Against Worley.........................................11

       A.     Plaintiffs Fail To Allege A Viable Claim For Unjust Enrichment Against
Worley..........................................................................................................11

       B.     Plaintiffs Cannot Allege A Viable Negligence Per Se Claim Against
Worley..........................................................................................................12

       C.     Plaintiffs Fail To Allege A Viable Consumer Sales Practices Act Claim
Against Worley.............................................................................................14

       D.     Plaintiffs Fail To Allege Any Fraud By Worley With Particularity.....................16

       E.     Plaintiffs Fail To Allege A Viable Negligence Claim Against Worley...............18

       F.     Plaintiffs Fail To Allege A Viable Negligent Misrepresentation Claim
Against Worley.............................................................................................19

       G.     Plaintiffs Cannot State A Viable Public Nuisance Claim Against Worley............22

CONCLUSION...........................................................................................................24

TABLE OF AUTHORITIES

Cases              Page(s)

*Abington Emerson Cap., LLC v. Adkins,*
   No. 2:17-CV-143, 2018 WL 4771526 (S.D. Ohio Oct. 3, 2018)........................................6, 9

*Alexander v. Smith & Nephew, P.L.C.,*
   98 F. Supp. 2d 1310 (N.D. Okla. 2000) .............................................................................12

*Amann v. Clear Channel Commcn's,*
   165 Ohio App. 3d 291 (2006).......................................................................................21, 22

*Angerman v. Burick,*
   2003-Ohio-1469 (Ohio App. 2003)..............................................................................23, 24

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .............................................................................................................8

*Baker v. Danek Med.,*
   35 F. Supp. 2d 875 (N.D. Fla. 1998)..................................................................................13

*Bank One of Cleveland, N.A. v. Abbe,*
   916 F.2d 1067 (6th Cir. 1990) .............................................................................................7

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 554 (2007) ...........................................................................................8, 16, 18

*Bish v. Smith & Nephew Richards, Inc.,*
   No. W1998-00373-COA-R9-CV, 2000 WL 1294324 (Tenn. App. Aug. 23,
   2000)....................................................................................................................................13

*Blinn v. Smith & Nephew Richards, Inc.,*
   55 F. Supp. 2d 1353 (M.D. Fla. 1999) ..............................................................................13

*Cali v. Danek Med., Inc.,*
   24 F. Supp. 2d 941 (W.D. Wis. 1998)................................................................................13

*Chambers v. St. Mary's Sch.,*
   82 Ohio St. 3d 563 (1998) ...........................................................................................13, 14

*City of Cleveland v. J.P. Morgan Chase Bank, N.A.,*
   2013-Ohio-1035 (Ohio App. 2013)..............................................................................22, 24

*Combs v. Mgmt. & Training Corp.,*
   No. 3:15-CV-2698, 2018 WL 3060001 (N.D. Ohio June 20, 2018)......................................7

*Cook v. Ohio Nat'l Life Ins. Co.*,
    961 F.3d 850 (6th Cir. 2020) ............................................................. 11

*Delman v. City of Cleveland Heights*,
    41 Ohio St. 3d 1 (1989) ............................................................. 19, 20

*Dernis v. Amos Fin.*,
    701 F. App'x 449 (6th Cir. 2017) ......................................................... 7

*Drescher v. Mancino*,
    No. 50922, 1986 WL 11037 (Ohio App. Sept. 18, 1986)  ................................ 7, 10

*Dryer v. Flower Hosp.*,
    383 F. Supp. 2d 934 (N.D. Ohio 2005) ...................................................... 18

*Estep v. Danek Med., Inc.*,
    No. 1:96-CV-2580, 1998 WL 1041330 (N.D. Ohio 1998) .................................... 12

*F.T.C. v. E.M.A. Nationwide, Inc.*,
    767 F.3d 611 (6th Cir. 2014) ........................................................... 6, 9

*Firelands Reg'l Med. Ctr. v. Jeavons*,
    2008-Ohio-5031 (Ohio App. 2008)........................................................ 23

*Firestone v. Galbreath*,
    747 F. Supp. 1556 (S.D. Ohio 1990)...................................................... 17

*Fla. Carpenters Reg'l Council Pension Plan v. Eaton Corp.*,
    964 F. Supp. 2d 875 (N.D. Ohio 2013) ............................................... 8, 19, 20

*Hambleton v. R.G. Barry Corp.*,
    12 Ohio St. 3d 179 (1984) .............................................................. 11

*Hayes v. Computer Assoc. Inc.*,
    No. 03:02-CV-7452, 2003 WL 21478930 (N.D. Ohio June 24, 2003)........................ 20, 21

*Kemp v. Medtronic, Inc.*,
    No. 99-3720, 2001 WL 91119 (6th Cir. 2001) ............................................. 13

*Jackson v. Cleveland Civic Foundation*,
    Case No. 1:11-cv-1334, 2011 WL 4007732 (N.D. Ohio 2011).................................. 11

*Lang v. Holly Hill Motel, Inc.*,
    122 Ohio St. 3d 120 (2009) ............................................................. 13

*Lilly v. Hewlett–Packard Co.*,
    No. 1:05-CV-465, 2006 WL 1064063 (S.D. Ohio Apr. 21, 2006) ........................ 14, 15, 16

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ....................................................................................................7, 10

*Manno v. St. Felicitas Elementary Sch.,*
    831 N.E.2d 1071 (Ohio App. 2005) ...................................................................................19

*Marcellino v. Sears, Roebuck & Co.,*
    No. 1:12 CV 398, 2012 WL 2568079 (N.D. Ohio July 2, 2012)....................................18, 19

*Mathias v. Am. Online, Inc.,*
    No. 79427, 2002 WL 377159 (Ohio App. Feb. 28, 2002).............................................14, 15

*Meehan v. Mardis,*
    146 N.E.3d 1266 (Ohio App. Oct. 4, 2019)..................................................................8, 17

*Miller v. Connaught Lab'ys, Inc.,*
    No. 93-1420-PFK, 1995 WL 579969 (D. Kan. Sept. 13, 1995) ...........................................13

*In re: Nat'l Prescription Opiate Litig.,*
    No. 1:17-MD-02804-DAP ................................................................................................6

*Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs., LLC,*
    813 F. Supp. 2d 871 (S.D. Ohio 2011).............................................................................21

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,*
    484 U.S. 97 (1987) ..........................................................................................................7

*Paulus v. Citicorp N. Am., Inc.,*
    No. 2:12-CV-856, 2014 WL 4557603 (S.D. Ohio Sept. 12, 2014) ................................22, 23

*Picker Int'l, Inc. v. Mayo Found.,*
    6 F. Supp. 2d 685 (N.D. Ohio 1998)................................................................................20

*In re Porsche Cars N. Am., Inc.,*
    880 F. Supp. 2d 801 (S.D. Ohio 2012) .........................................................................14, 16

*Prince George's Cnty., Md. v. Levi,*
    79 F.R.D. 1 (D. Md. 1977) ..............................................................................................11

*Radford v. Daimler Chrysler Corp.,*
    168 F. Supp. 2d 751 (N.D. Ohio 2001) ........................................................................15, 16

*Richards v. Beechmont Volvo,*
    127 Ohio App. 3d 188 (1998)..........................................................................................14

*Roane Cnty., Tenn. v. Jacobs Engineering Group, Inc.,*
    429 F. Supp. 3d 494 (E.D. Tenn. 2019) ...........................................................................11

*Rogozinsky v. Danek Med., Inc.*,
No. 4:96-CV-2572, 1999 WL 33537323 (N.D. Ohio July 8, 1999) ................................ 12, 13

*Spit Shine A One Detailer, L.L.C. v. Rick Case Hyundai*,
100 N.E.3d 1231 (Ohio App. 2017) ................................................................................ 17

*Talley v. Danek Med., Inc.*,
179 F.3d 154 (4th Cir. 1999) ........................................................................................... 13

*Temple v. Fleetwood Enters., Inc.*,
133 F. App'x 254 (6th Cir. 2005) ..................................................................................... 14

*Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*,
115 Ohio App. 3d 137 (1996) .......................................................................................... 19

*U.S. v. City of Pittsburg, Cal.*,
661 F.2d 783 (9th Cir. 1981) ........................................................................................... 11

*Uribe v. Sofamor, S.N.C.*,
No. 8:95-CV-464, 1999 WL 1129703 (D. Neb. Aug. 16, 1999) ........................................ 13

*Valente v. University of Dayton*,
438 Fed. App'x 381 (6th Cir. 2011) ........................................................................... 17, 18

*Volbers-Klarich v. Middletown Mgt., Inc.*,
125 Ohio St. 3d 494 (2010) ............................................................................................. 17

*Wick v. Ach*,
139 N.E.3d 480 (Ohio App. 2019) ............................................................................ 12, 17, 18

*Woods v. Ohio Dep't of Rehab. & Corr.*,
132 Ohio App. 3d 780 (1999) .......................................................................................... 14

*Ziegler v. Findlay Indus.*,
464 F. Supp. 2d 733 (N.D. Ohio 2006) ............................................................................. 20

Statutes

Class Action Fairness Act ..................................................................................................... 6

Food, Drug and Cosmetics Act .......................................................................... 3, 5, 12, 13

Ohio Administrative Code .................................................................................. 3, 5, 13, 14

Ohio Consumer Sales Practice Act, Ohio Rev. Code § 1345.01, *et seq.* .................... 4, 14, 15, 16

Ohio Rev. Code § 2307.71 ............................................................................................... 22

<u>Other Authorities</u>

Fed. R. Civ. P. 9 ...................................................................................................................... 8

Fed. R. Civ. P. 12 .................................................................................................................. 7, 8

Ohio R. Civ. P. 4 ................................................................................................................ 7, 10

Ohio R. Civ. P. 9 ..................................................................................................................... 8

Ohio R. Civ. P. 12 .................................................................................................................. 7

Rest. 2d Torts § 552 ......................................................................................................... 19, 21

## INTRODUCTION

As this MDL drags on, with no apparent end in sight, the Court needs to step in to prevent any further prejudice to Defendant Brandon Worley, who served as a sales representative for Purdue Pharma briefly more than a decade ago.  Worley finds himself as a lone individual defendant among corporate giants as various Ohio municipalities look to assign blame (and recover damages) for the opioid crisis in their communities.  Whatever the merits of their claims against other defendants, there is no merit to their claims against Worley, who was never even properly served with any of the complaints filed against him.  Nevertheless, he has been trapped in a multi-district litigation purgatory for over two years with no way to defend against baseless claims hanging over his head or extricate himself from litigation in which he never properly belonged in the first place.  Fairness and equity call out for this situation to be remedied now.

In 2018, three Ohio counties named Worley as a defendant in identical suits blaming a laundry list of corporate actors up and down the pharmaceutical supply and distribution chain for the opioid crisis.  Why Worley was named among these defendants remains a mystery to this day.  The complaints shed no light as they contain essentially no factual allegations about Worley or anything he supposedly did wrong.  Communications to plaintiffs' counsel – including to seek information on what this is all about – go entirely unanswered.  And the progress of the related MDL cases indicates that Worley's inclusion was some kind of mistake or misguided procedural expediency that had no relevance then and certainly has no relevance now.

Because these counties' complaints were consolidated into this MDL, immediately stayed, and subject to the Court's prophylactic filing moratorium, the existence of serious and unanswered – but wholly unfounded and legally meritless – claims against Worley has taken an ineluctable but unfair toll on his personal and professional life.  That is particularly troubling given Worley *does* have strong defenses to these claims that, if considered, should hasten his

-1-

dismissal from this litigation.  Importantly, none of these complaints was ever served on Worley. That failure alone deprives this Court of jurisdiction, and warrants dismissal.

But aside from that basic and fatal procedural defect, the plaintiffs lack standing to bring claims against Worley.  Plaintiffs do not articulate any injury traceable to any action by Worley. And because plaintiffs are not States, they cannot sue under a theory of *parens patriae* in any event.  But even if the plaintiffs had standing, the complaints fail to state any cognizable claims against Worley anyway.  All of plaintiffs' claims are premised on sweeping allegations against all of the defendants, reliant on conclusory allegations, and bereft of a single factual allegation detailing anything wrong Worley supposedly did.  Thus, plaintiffs allege a claim for "unjust enrichment" against Worley, without spelling out any benefit they supposedly conferred on him. Of course, there is none.

Plaintiffs' other claims similarly consist of empty boilerplate.  Their fraud claims are vapid: they allege not a single fact concerning the time, place, or content of *any statement* allegedly made by Worley, to anyone, let alone a statement that was *false*, or anything from Worley they supposedly relied to their detriment.  Plaintiffs' claims for violation of Ohio's Consumer Sales Practice Act and negligent misrepresentation similarly fail to identify any material misrepresentation, deceptive act or omission, or affirmatively false statement by Worley that impacted their decision to purchase any opioids.  Because plaintiffs do not point to a single statement made by Worley, they also fail to allege they were aware of any affirmative misrepresentations made by him.  Nor do they offer any factual allegations demonstrating they justifiably relied on any allegedly affirmatively false statements made by Worley, or that he failed to exercise reasonable care or engaged in anything other than traditional arms-length transactions with plaintiffs and their residents, if any at all.

-2-

While plaintiffs also allege claims for negligence per se, they do not allege any facts relevant to Worley, and Ohio does not permit negligence per se claims based on either the Food, Drug and Cosmetics Act ("FDCA") or the Ohio Administrative Code ("OAC") in any event. Their negligence claims similarly consist of nothing more than conclusory recitations of each element of negligence, without specific allegations articulating any duty, breach, or causation making him liable for the plaintiffs' alleged damages.  Plaintiffs' public nuisance claims also fail to allege Worley interfered with any public right, much less that he acted intentionally to create the "nuisance" plaintiffs complain of.  Nor do plaintiffs allege any causal relationship between Worley's conduct and plaintiffs' alleged injuries, which are too far removed from any action by Worley to give rise to cognizable claims.

In the face of claims that are clearly procedurally defective and facially absurd and misdirected, Worley should no longer be left to languish in this MDL in a state of legal limbo without any ability to defend himself.  The existence of these unanswered claims is causing him grave prejudice that this Court should no longer tolerate.  Accordingly, the Court should grant this Motion and dismiss the claims against Worley.

## BACKGROUND

In 2018, three Ohio counties – Noble County, Washington County, and Meigs County – filed lawsuits against numerous corporate defendants alleging they harmed plaintiffs and their residents by manufacturing, distributing, and mass-marketing opioids to the counties' residents and medical professionals.  Amid its pharmaceutical, manufacturer, and distributor defendants, the counties named Worley as a sales representative defendant.  Cmplt., Noble Cty. (attached as

Exhibit 1 ("Ex. 1")); Cmplt., Wash. Cty. (attached as Exhibit 2 ("Ex. 2")); Cmplt., Meigs Cty.

(attached as Exhibit 3 ("Ex. 3")).[1]

The complaints are virtually identical and allege the same eight claims.  Exs. 1-3.  But

while the complaints broadly reference "all defendants," they include virtually no allegations

about Worley's involvement in the underlying dispute whatsoever:

- Count one – alleging violations of the Ohio Consumer Sales Practices Act, Chapter

1345 – includes conclusory statements about "deceptive acts or practices" by manufacturer

defendants and sales representative defendants related to marketing, distribution, and purportedly

misleading statements.  Ex. 1 ¶¶ 339-55; Ex. 2 ¶¶ 340-56; Ex. 3 ¶¶ 340-56.  Plaintiffs allege that

sales representative defendants made false representations regarding addiction risks, marketed

negligently, and downplayed the potential risks of prescribing and consuming opioids, but they

include no factual allegations concerning Worley.  Ex. 1 at ¶ 342.  They further allege – again

without any allegations related to Worley – that sales representative defendants' "deceptive

representations . . . deceive[d] Plaintiff[s] and its residents."  *Id.* at ¶ 346.

- Count two – fraud – is based on the same allegations as Count I, without any specific

factual allegations concerning Worley.  *See, e.g.*, Ex. 1 at ¶¶ 342 & 357; *see* Ex. 1 ¶¶ 356-64; Ex.

2 ¶¶ 357-65; Ex. 3 ¶¶ 357-65.

- Count three – unjust enrichment – alleges "defendants have profited and benefited

from opioid purchases made by Plaintiffs and their residents," and "defendants have been

unjustly enriched in the form of increased revenue and profits."  Ex. 1 ¶¶ 365-72; Ex. 2 ¶¶ 366-

73;  Ex. 3 ¶¶ 366-73.  But again, there are no factual allegations about Worley or any benefit the

plaintiffs supposedly conferred on him.

---

[1]  Worley is the sole "sales representative" defendant in two of the cases.

- Count four – negligence – recites the bare elements of the claim without a single allegation concerning Worley.  Ex. 1 ¶¶ 373-79; Ex. 2 ¶¶ 374-80; Ex. 3 ¶¶ 374-80.

- Count five – negligent misrepresentation – is a copy and paste job of Counts I and II, and includes no allegations against Worley.  Ex. 1 ¶¶ 380-89; Ex. 2 ¶¶ 381-90; Ex. 3 ¶¶ 381-90; Ex 1 at ¶¶ 342, 357 & 381.  Plaintiffs lodge the same bare allegations of fraud, but include no allegations specific to Worley.  *Id.* at ¶¶ 362 & 387.

- Count six – public nuisance – alleges that sales representative defendants falsely represented the potential risks of opioid addiction but fails to include any specific allegations against Worley.  Ex. 1 ¶¶ 390-96; Ex. 2 391-97; Ex. 3 ¶¶ 391-37.  Plaintiffs allege all defendants acted willfully and maliciously toward the public without referencing Worley at all.  *Id.* at ¶ 395.

- Count seven – constructive fraud – includes repetitive allegations related to sales representatives without any factual allegations concerning Worley.  *See* Ex. 1 ¶¶ 397-406; Ex. 2 ¶¶ 398-407; Ex. 3 ¶¶ 398-407.

- Count eight – negligence per se under the Federal Food, Drug, and Cosmetic Act ("FDCA") and the Ohio Administrative Code ("OAC") – includes no factual allegations related to Worley.  *See* Ex. 1 ¶¶ 406-16; Ex. 2 ¶¶ 408-17; Ex. 3 ¶¶ 408-17.

Despite the seriousness of the charges, none of these complaints was ever served on Worley.  In Noble County, Worley received a Summons addressed to "Cardinal Health Inc." on November 7, 2018.  Summons Return Receipt, Noble Cty. (Ex. 4).  Washington County court records show there is no copy of process directed to Worley, nor a return receipt confirming Worley's receipt of any service.  *See* File Copy Summons, Wash. Cty. (Ex. 5).  Instead, court records only contain a File Copy of the Summons listing all defendants, without addresses.  *Id.*

Meigs County sent the summons addressed to Worley by certified mail on November 8, 2018.  Summons, Meigs Cty. (Ex. 6).  But Worley never received the service, and the certified mail was returned to the court and recorded as a "failure of service" in the Meigs County Court of Common Pleas on March 15, 2019.  Failure of Service, Meigs Cty. (Ex. 7).

Defendant CVS Indiana, LLC, removed the Noble County case to the Southern District of Ohio on November 6, 2018, under the Class Action Fairness Act ("CAFA").  *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-MD-02804-DAP ("MDL"), Dkt. 1.  On November 15, 2018, defendant Cardinal Health, Inc., filed a Notice of Potential Tag-Along Actions with the Judicial Panel on Multidistrict Litigation ("JPML").  JPML Dkt. 1.  On November 21, 2018, the JPML filed a Conditional Transfer Order ("CTO"), JPML Dkt. 2.  JPML Dkt. Nos. 23 & 24.  Then, on April 3, 2019, the JPML transferred the original Washington County and Meigs County cases into the *In re: Nat'l Prescription Opiate Litig.* MDL.  JPML Dkt. 1510.

The MDL Court issued a "moratorium on all filings" on December 14, 2017.  MDL Dkt. No. 4.  The Court renewed that moratorium by order dated January 11, 2018, and again by order dated February 16, 2018.  MDL Dkt. Nos. 70 & 130.  As of this filing, the moratorium remains in place while Track 1 cases in the MDL have settled, Track 2 cases are preparing for remand to the Southern District of West Virginia, and Track 3 cases are in discovery.  MDL Dkt. Nos. 2950 & 3595.  None of Worley's cases has been scheduled for trial.

## STANDARD

This motion is governed by familiar standards.  As an initial matter, the Court has "inherent authority to control its own docket," including discretion to lift any filing moratoria.  *Abington Emerson Capital, LLC v. Adkins*, No. 2:17-CV-143, 2018 WL 4771526, at *2 & *4 (S.D. Ohio Oct. 3, 2018), *on reconsideration in part*, 2018 WL 6427683 (S.D. Ohio Dec. 7, 2018) (citing *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626-27 (6th Cir. 2014)).  And

where a party is "stuck in limbo" as a result of a stay, the Court may lift the stay to prevent

further prejudice, "reduce the burden of litigation," and "simplify the case's issues." *Id.* at *3-4.

The Court also has authority to dismiss complaints for failure of service. Fed. R. Civ. P.

12(b)(5); *see also* Ohio R. Civ. P. 12(b)(5).  Where, as here, a plaintiff attempts service of

process prior to removal of a case to federal court, the Court looks to "the relevant state law to

determine if a defendant has been properly served." *Combs v. Mgmt. & Training Corp.*, No.

3:15-CV-2698, 2018 WL 3060001, at *6 n.3 (N.D. Ohio June 20, 2018); *see also Dernis v. Amos

Fin.*, 701 F. App'x 449, 453 (6th Cir. 2017) (stating state rules of civil procedure "concerning

service of process" apply in "state court actions prior to removal to federal court").  In Ohio, a

plaintiff must serve a defendant "within six months after filing of the complaint." Ohio R. Civ.

P. 4(E).  Where a plaintiff fails to serve a defendant without good cause, "the action *shall be

dismissed*" by the Court *sua sponte*, *id.*, or on a motion to dismiss by the defendant under Ohio

R. Civ. P. 12(b)(5).  Good cause does not exist where a plaintiff neglects to request follow-up

service when original service failed. *See Drescher v. Mancino*, No. 50922, 1986 WL 11037, at

*1-2 (Ohio App. Sept. 18, 1986).  Without proper service, a Court lacks personal jurisdiction.

*See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (holding

"[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural

requirement of service of summons must be satisfied"); *Bank One of Cleveland, N.A. v. Abbe*,

916 F.2d 1067, 1081 (6th Cir. 1990).

A party must also have standing to invoke federal court jurisdiction.  To establish

standing, a plaintiff must show a "concrete and particularized" injury that is "fairly traceable to

the challenged action of the defendant, and not the result of the independent action of some third

party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)

(internal punctuation omitted).  That "actual or imminent injury" also must be capable of "redress[ ] by a favorable decision."  *Id.*

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)); Fed. R. Civ. P. 12(b)(6).  A claim is plausible only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  That is, the "factual allegations must be enough to raise a right to relief above the speculative level."  *Fla. Carpenters Reg'l Council Pension Plan v. Eaton Corp.*, 964 F. Supp. 2d 875, 883 (N.D. Ohio 2013), *aff'd sub nom. In re KBC Asset Mgmt. N.V.*, 572 F. App'x 356 (6th Cir. 2014).  "[M]ere legal conclusions unsupported by factual allegations" will not do, nor will rote recitals of "the elements of a cause of action, supported by mere conclusory statements."  *Fla. Carpenters Reg'l Council Pension Plan*, 964 F. Supp. 2d at 883.

Any claims of fraud, moreover, must allege "with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b). [2]  That is, the plaintiff needs to allege "the time, place, and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud."  *Meehan v. Mardis*, 146 N.E.3d 1266, 1272 (Ohio App. Oct. 4, 2019).  Under these standards, the Court should entertain Worley's motion and dismiss the complaints against him.

---

[2]  Ohio also requires a plaintiff to allege fraud with sufficient particularity.  Ohio R. Civ. P. 9(B) (explaining "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity").

## ARGUMENT

I.     **The Court Should Consider Worley's Motion To Prevent Him From Suffering Any Further Prejudice.**

The Court has and should exercise discretion to consider Worley's motion.  *F.T.C.*, 767 F.3d at 626; *Abington Emerson Capital*, 2018 WL 4771526, at *2; Case Management Order One, Dkt. 232 at 2 (noting "any party may apply at any time to this Court for a modification or exception" to the Order).  Worley never belonged in this litigation and has nothing to add to the proceedings, yet has needlessly suffered in "limbo" for years as procedurally and substantively deficient claims against him live on in this MDL.  *Id.*  This MDL purgatory has had serious consequences for his personal and professional life, negatively impacting his ability to obtain life insurance and damaging his reputation in his community.  As the MDL drags on, with no end in sight, or any opportunity for Worley to defend or extricate himself, that prejudice only grows more acute and inequitable.

The prejudice Worley is facing is particularly unjust given he was never even served with the complaints against him, which are meritless in any event.  In a 134-page complaint with 416 paragraphs, Worley is mentioned in only three paragraphs – two of which relate to his citizenship and job description.  Ex. 1 at ¶¶ 87, 321 & 326.  Leaving the moratorium in place as to him will neither "simplify this case's issues nor will it reduce the burden of litigation for both parties and the Court."  *Abington Emerson Capital*, 2018 WL 4771526, at *4.  Dismissing Worley, by contrast, will remove an improper party and lift the unjust burden he has born for years.

The Court should consider Worley's motion to dismiss.

II.    **The Court Should Dismiss The Complaints For Failure Of Service.**

The complaints against Worley are properly dismissed for a basic procedural failing: he was never served.  Noble County mailed a Summons to Worley, but it addressed the Summons to

"Cardinal Health Inc." with no reference to Worley.[3]  Summons Return Receipt, Noble Cty. (Ex. 4).  Washington County has neither a copy of the service directed to Worley specifically, nor a return receipt confirming Worley's receipt of any service.  *See* File Copy of Summons, Wash. Cty. (Ex. 5).  While Meigs County sent a Summons to Worley via certified mail on November 8, 2018, Worley never received service of process and the certified mail returned to the Meigs County Court unclaimed, with the Court recording it as "failure of service" on March 15, 2019. *See* Summons, Meigs Cty. (Ex. 6).  Failure of Service, Meigs Cty. (Ex. 7).

Worley was thus not served "within six months after filing the complaint[s]."  Ohio R. Civ. P. 4(E).  Because plaintiffs made no effort to serve Worley after their service attempts failed, they cannot show any good cause for their failures to serve him.  *Drescher*, 1986 WL 11037, at *1-2.  Accordingly, the Court should dismiss all claims against Worley.

## III.    The Court Should Dismiss The Complaints Because The Plaintiffs Lack Standing.

Even if the counties had properly served Worley, they lack standing to pursue claims against him.  Plaintiffs do not allege any "concrete and particularized" injury that is "fairly traceable" to any action by Worley.  *Lujan*, 504 U.S. at 560-61.  Nor do plaintiffs offer more than conclusory allegations explaining how they were allegedly harmed at all.  Instead, plaintiffs offer a laundry list of vague economic harms across the State of Ohio, without alleging how each individual plaintiff was injured.  *See, e.g.*, Ex. 1 at ¶¶ 23, 32-36; Ex. 2 at ¶¶ 23, 32-36; Ex. 3 at ¶¶ 23, 32-36.  For example, while plaintiffs allege children were born with Neonatal Abstinence Syndrome, they do not allege they bore the cost of their treatment, or how any action by Worley proximately caused any injury here.  Ex. 1 at ¶ 32; Ex. 2 at ¶ 32; Ex. 3 at ¶ 32.

---

[3]  Pursuant to Ohio R. Civ. P. 4(B), a summons must include "the name of the first party on each side and the name and address *of the party to be served*." (emphasis added).

Plaintiffs cannot cure this deficiency by asserting they are *parens patriae* of their citizens. Ex. 1 at ¶ 42; Ex. 2 at ¶ 43; Ex. 3 at ¶ 42.  Only States, not counties or other political subdivisions of States, can sue as *parens patriae*.  *See, e.g.*, *U.S. v. City of Pittsburg, Cal.*, 661 F.2d 783, 786-87 (9th Cir. 1981) (holding "only the states and the federal government may sue as *parens patriae*"); *Roane Cnty., Tenn. v. Jacobs Engineering Group, Inc.*, 429 F. Supp. 3d 494, 495 (E.D. Tenn. 2019) (noting "*parens patriae* standing . . . is available only to sovereign states, not cities and counties"); *Jackson v. Cleveland Civic Foundation*, Case No. 1:11-cv-1334, 2011 WL 4007732, at *6 (N.D. Ohio 2011); *Prince George's Cnty., Md. v. Levi*, 79 F.R.D. 1, 4 (D. Md. 1977) (explaining "[t]he power of a political subdivision of a state is derivative and not sovereign, and it may only sue to vindicate its own interests").  Without any concrete and particularized injury to the individual plaintiffs proximately caused by Worley, plaintiffs lack standing to pursue any claims against him.

## IV. The Complaints Fail To State Viable Claims Against Worley.

While the complaints should be dismissed against Worley for failure of service and lack of standing, they also fail to state any cognizable claim against him.

### A. Plaintiffs Fail To Allege A Viable Claim For Unjust Enrichment Against Worley.

Plaintiffs' unjust enrichment claim cannot proceed against Worley because they allege no benefit they conferred on him.  To make out a claim for unjust enrichment under Ohio law, the plaintiffs must allege: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."  *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 858 (6th Cir. 2020); *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984).  Because unjust enrichment is an "equitable remedy that arises in specific

circumstances," when a plaintiff fails to "indicat[e] in the pleading" the specific benefit conferred on the specific defendant, the pleading "leaves too much to the imagination" and is properly dismissed. *Wick v. Ach*, 139 N.E.3d 480, 486 (Ohio App. 2019486; *see also Firelands Reg'l Med. Ctr. v. Jeavons*, 2008-Ohio-5031, at ¶¶ 32-33 (Ohio App. 2008) (holding allegation "[defendant] has been unjustly enriched at the expense of [plaintiff]" was "too speculative").

Here, plaintiffs fail plausibly to allege they conferred any benefit on Worley.  While they allege "defendants have profited and benefited from opioid purchases made by plaintiffs and their residents," and "defendants have been unjustly enriched in the form of increased revenue and profits,"  Ex. 1 at ¶¶ 367 & 372, they offer no allegations related to Worley at all, let alone explain any benefit conferred on him. Ex. 1 at ¶¶ 365-72; Ex. 2 at ¶¶ 366-73; Ex. 3 at ¶¶ 366-73. Such bare and conclusory allegations "leave too much to the imagination." *See Wick*, 139 N.E.3d at 486; *see also Firelands Reg'l Med. Ctr.*, 2008-Ohio-5031, at ¶¶ 32-33.

### B. Plaintiffs Cannot Allege A Viable Negligence Per Se Claim Against Worley.

Plaintiffs' negligence per se claims against Worley cannot proceed under Ohio law.  That is because "a negligence per se claim cannot succeed if the underlying statute does not allow for a private right of action." *Rogozinsky v. Danek Med., Inc.*, No. 4:96-CV-2572, 1999 WL 33537323, at *2 (N.D. Ohio July 8, 1999).  Here, the FDCA "does not allow for a private right of action." *Rogozinsky*, 1999 WL 33537323 at *2 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 487 (1996) (holding FDCA permits no private right of action)); *see also Estep v. Danek Med., Inc.*, No. 1:96-CV-2580, 1998 WL 1041330, at *2 (N.D. Ohio 1998) ("Congress did not intend to create a private cause of action" under the FDCA and "[s]tate law allowing negligence per se claims under the FDCA would circumvent Congress' intent to preclude private enforcement").[4]

---

[4]  State and federal courts in many other jurisdictions have similarly held the FDCA does not provide any private rights of action.  *See Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d

As such, plaintiffs' claims for negligence per se based on Worley's violation of the FDCA

obviously fails as a matter of law.  *See, e.g., Rogozinsky*, 1999 WL 33537323, at *2 (holding

plaintiff's negligence per se claim based on violation of the FDCA "must fail").

Moreover, plaintiffs cannot maintain a claim for negligence per se in Ohio based on a

violation of an administrative rule or regulation, even if they had alleged facts supporting

Worley's supposed violation of Section 4729-9 of the OAC.  As the Ohio Supreme Court has

squarely held, "the violation of an administrative rule does not constitute negligence per se."

*Chambers v. St. Mary's Sch.*, 82 Ohio St. 3d 563, 568 (1998) (holding violation of administrative

rules does not constitute negligence per se, given the "virtual impossib[ility]" for individuals to

strictly comply with "such a multitude" of administrative rules); *see also Kemp v. Medtronic,

Inc.*, No. 99-3720, 2001 WL 91119, at *1 (6th Cir. 2001) (following *Chambers* in holding

violation of administrative rules and regulations does not constitute negligence per se under Ohio

law) (internal quotations omitted); *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St. 3d 120, 124

(2009) (holding "administrative-rule violations do not create a . . . finding of duty or breach" to

---

1310, 1321 (N.D. Okla. 2000) (holding violations of FDA regulations do not give rise to a
private cause of action for negligence per se in Oklahoma); *Bish v. Smith & Nephew Richards,
Inc.*, No. W1998-00373-COA-R9-CV, 2000 WL 1294324, at *3 (Tenn. Ct. App. Aug. 23, 2000)
(holding no negligence per se claim under Tennessee law based on FDCA violations); *Talley v.
Danek Med., Inc.*, 179 F.3d 154, 161 (4th Cir. 1999) (holding no negligence per se claim under
Virginia law because FDA regulations lacked substantive content); *Blinn v. Smith & Nephew
Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999) (holding no negligence per se claim
under Florida law for violations of the FDCA); *Uribe v. Sofamor, S.N.C.*, No. 8:95-CV-464,
1999 WL 1129703, at *16 (D. Neb. Aug. 16, 1999) (holding violation of FDCA requirements
does not support a claim of negligence per se); *Baker v. Danek Med.*, 35 F. Supp. 2d 875, 878
(N.D. Fla. 1998) (holding no negligence per se claim under Florida law because the FDCA does
not provide for a private right of action); *Cali v. Danek Med., Inc.*, 24 F. Supp. 2d 941, 954
(W.D. Wis. 1998); *Miller v. Connaught Lab'ys, Inc.*, No. 93-1420-PFK, 1995 WL 579969, at *9
(D. Kan. Sept. 13, 1995) (holding no negligence per se claim under Wisconsin law because
Congress did not intend to create private right of action under the FDCA for claims of
misbranding or mislabeling).

constitute negligence per se as it related to Building Code).  But here, the OAC is only a collection of administrative rules.  *See Woods v. Ohio Dep't of Rehab. & Corr.*, 132 Ohio App. 3d 780, 783 (1999) (applying *Chambers* to a section of the OAC, and holding violation of the OAC did not constitute negligence per se).  As such, plaintiffs cannot maintain a claim of negligence per se against Worley for any alleged violation of the OAC.  *See Woods*, 132 Ohio App. at 783; *see also Chambers*, 82 Ohio St. 3d at 568.

### C.    Plaintiffs Fail To Allege A Viable Consumer Sales Practices Act Claim Against Worley.

Plaintiffs fail to allege a prima facie claim that Worley materially misrepresented, deceived, or omitted information regarding opioids as a sales representative.  To maintain a prima facie claim under the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01, *et seq.*, plaintiffs must show a "material misrepresentation, deceptive act or omission that *impacted* [their] decision to purchase the item at issue."  *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 265 (6th Cir. 2005) (citing *Mathias v. Am. Online, Inc.*, No. 79427, 2002 WL 377159, at *5 (Ohio App. Feb. 28, 2002)) (emphasis added); *see also Richards v. Beechmont Volvo*, 127 Ohio App. 3d 188, 191 (1998) ("[I]n order to be deceptive, and therefore actionable, a seller's act must not only be at variance with the truth but must also concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved").

Where a plaintiff alleges a defendant has made such material representations or misstatements, "there must be a cause and effect relationship between the defendant's acts and the plaintiff's injuries," or rather, a plaintiff must allege he "saw or was . . . aware of the alleged misrepresentations at any time before or during the purchase of the [allegedly defective product]."  *Lilly v. Hewlett–Packard Co.*, No. 1:05-CV-465, 2006 WL 1064063, at *5 (S.D. Ohio Apr. 21, 2006); *see, e.g., In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 870 (S.D. Ohio

-14-

2012) (granting defendant's motion to dismiss for failure to state a claim under OCSPA when complaint failed to establish that "at any time before or during the purchase" of allegedly defective product plaintiff saw or was aware of alleged affirmative misrepresentation). Critically, "mere non-disclosure of a defect, without more, does not fall within the purview of deceptive or unconscionable practices prohibited by the [OCSPA]." *Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001) (quoting *Bierlein v. Bernie's Motor Sales, Inc.*, No. 9590, 1986 WL 6757, at *7 (Ohio App. June 12, 1986)) (internal quotations omitted).

Plaintiffs fail to state a viable claim against Worley for multiple reasons here.  *First*, plaintiffs fail to allege any statements made by Worley materially impacted their decision to purchase opioid products.  The complaints only include a list of alleged actions by sales representative defendants generically and a blanket statement that their "deceptive representations… deceive[d] plaintiff and its residents."  Cmplt., Noble Cty. ¶ 346 (Ex. 1); Cmplt., Wash. Cty. ¶ 347 (Ex. 2); Cmplt., Meigs Cty. ¶ 347 (Ex. 3).  But these "generalized comments" about Worley's "purported dissemination of false information" do not reflect a material reliance by plaintiffs in making their purchases.  *See Mathias*, 2002 WL 377159 at *5. Without any allegations bearing on the impact of any specific statements made by Worley on the plaintiffs' decision-making, plaintiffs cannot make out a viable OCSPA claim.

*Second*, plaintiffs do not allege they were aware of the alleged affirmative misrepresentations before or during purchases, and thus fail to plead any cause and effect relationship between Worley's supposed statements and their purchasing decisions.  Plaintiffs allege various "deceptive acts or practices" by sales representative defendants in connection with the sale of opioids.  Ex. 1 ¶ 342; Ex. 2 ¶ 343; Ex. 3 ¶ 343.  But they fail to allege they were even aware of any such alleged misrepresentations when purchasing opioids.  *Lilly*, 2006 WL

1064063, at *5.  While they allege the sales representative defendants' representations were "likely to mislead," "had the tendency to influence the consumer choices of plaintiff and its residents," and "did in fact deceive plaintiff and its residents," such conclusory statements will not do.  Ex. 1 at ¶¶ 341, 343 & 346; *In re Porsche Cars N. Am.*, 880 F. Supp. 2d at 817 (citing *Twombly*, 550 U.S. at 554)).  Without any plausible factual allegations of a cause and effect relationship between Worley's alleged acts and the plaintiffs' alleged injuries, plaintiffs cannot state viable a claim against him.  *Lilly*, 2006 WL 1064063, at *5.

*Third*, there are no allegations that Worley's alleged statements rise above the level of mere non-disclosure of a defect.  While plaintiffs allege the sales representative defendants made "consistent, repeated, deceptive representations that their opioids had properties unsupported by medical literature," they do not identify what the statements were, which sales representative defendant supposedly made them, where or to whom they were made, or which marketing materials were distributed containing the statements.  Ex. 1 at ¶ 346.  Because plaintiffs do not allege *any* statements Worley allegedly made at all, at any time, to anyone, they fail to allege the circumstances surrounding his alleged affirmative misrepresentations.  *See In re Porsche Cars N. Am.*, 880 F. Supp. 2d at 870.  Simply alleging sales representatives "downplayed" the side effects or "overstated the benefits" of opioid therapy does not rise above mere non-disclosure of potential defects in opioid products, and does not come within the deceptive practices prohibited by the OCSPA.  Ex. 1 at ¶ 342; *see Radford*, 168 F. Supp. 2d at 754.

### D. Plaintiffs Fail To Allege Any Fraud By Worley With Particularity.

Plaintiffs fail to allege any particularized fraud by Worley.  To satisfy Rule 9's particularity requirement, a plaintiff needs to allege "the time, place, and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a

consequence of the fraud." *Meehan v. Mardis*, 146 N.E.3d at 1272.  A plaintiff must also "specify the statements claimed to be false." *Spit Shine A One Detailer, L.L.C. v. Rick Case Hyundai*, 100 N.E.3d 1231, 1237-38 (Ohio App. 2017) (dismissing fraud claim where plaintiff failed "to allege when [the fraudulent statement] was made and by whom").

Under Ohio law, the elements of a fraud claim include: "(1) a misrepresentation of a material fact; (2) made with knowledge of its falsity, or with such utter disregard as to its truth that knowledge may be inferred; (3) with the intent to induce another's reliance on it; (4) justifiable reliance upon the representation or concealment; and (5) a resulting injury proximately caused by the reliance." *Valente v. University of Dayton*, 438 Fed. App'x 381, 388 (6th Cir. 2011) (citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St. 3d 69, 73 (1986)); *see also Volbers-Klarich v. Middletown Mgmt., Inc.*, 125 Ohio St. 3d 494, 501 (2010).  Because a plaintiff must specifically allege each element, "a failure to specifically plead the operative facts that form the basis of a fraud claim renders the claim defective." *Wick*, 139 N.E.3d at 485 (affirming dismissal of fraud claim because complaint did not specifically allege operative facts for each element).[5]

Here, the plaintiffs fail to allege any facts concerning the time, place, and content of Worley's allegedly false representations.  Cmplt., Noble Cty. ¶¶ 356-64 (Ex. 1); Cmplt., Wash. Cty. ¶¶ 357-65 (Ex. 2); Cmplt., Meigs County ¶¶ 357-65 (Ex. 3).  While plaintiffs generically allege that sales representative defendants "falsely represent[ed]" and "negligently and reckless market[ed], advertis[ed], and promot[ed]" opioids, they fail to allege any statement by Worley at all.  Ex. 1 at ¶ 357; *see Spit Shine A One Detailer*, 100 N.E.3d at 1237-38.

---

[5]  To make out a claim for constructive fraud, Ohio law requires a plaintiff to prove all elements of a fraud claim, except fraudulent intent.  *See Firestone v. Galbreath*, 747 F. Supp. 1556, 1569 (S.D. Ohio 1990) (citing *Perlberg v. Perlberg*, 18 Ohio St. 2d 55, 58 (1969)).

Plaintiffs likewise fail to allege additional necessary elements with sufficient particularity.  Plaintiffs make factually unsupported and threadbare recitals of the misrepresentation of material fact, the "knowledge of falsity," and the "intent to induce reliance" elements.  Ex. 1 at ¶¶ 357-59.  But such "opaque" recitals are insufficient both as a matter of general pleading and specifically for a fraud claim.  *See Twombly*, 550 U.S. at 555; *Wick*, 139 N.E.3d at 485.  Plaintiffs also just recite the reasonable reliance element without any detailed factual allegations.  *Id.* at ¶ 362.  Without "any facts to show that [plaintiffs] actually relied on these statements to [their] detriment," or that plaintiffs justifiably relied on them, their claims necessarily fail.  *Wick*, 139 N.E.3d at 485-86.

Plaintiffs' claims are further subject to dismissal because they wholly fail to allege any *proximate* cause whatsoever.  *See Valente*, 438 Fed. App'x at 388; *Wick*, 139 N.E. 3d at 485-86.  Plaintiffs only state they and "their residents suffered actual pecuniary damage directly caused by defendants," Ex. 1 at ¶ 363, and their failure to allege any proximate cause is in and of itself grounds for dismissal.  *See Valente*, 438 Fed. App'x at 388; *Wick*, 139 N.E. 3d at 485-86.

### E.    Plaintiffs Fail To Allege A Viable Negligence Claim Against Worley.

Plaintiffs also have failed to allege a cognizable negligence claim against Worley.  To make out a negligence, plaintiffs must allege: "(1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach."  *Dryer v. Flower Hosp.*, 383 F. Supp. 2d 934, 942 (N.D. Ohio 2005) (citing *Mussivand v. David,* 544 N.E.2d 265, 270 (Ohio 1989)).  In doing so, a plaintiff must allege "more than the bare assertion of legal conclusions" and include direct "allegations respecting all the material elements."  *Marcellino v. Sears, Roebuck & Co.*, No. 1:12-CV-398, 2012 WL 2568079, at *3 (N.D. Ohio July 2, 2012) (dismissing negligence claim for failure to allege sufficient facts).

But here, plaintiffs only offer conclusory recitals of the elements of their negligence claim.  While they allege sales representative defendants have some duty "to exercise reasonable care in the . . . advertising of opioids," they do not allege factual allegations bearing on the actual duty Worley supposedly owed to them.  Cmplt., Noble Cty. ¶ 378 (Ex. 1); Cmplt., Wash. Cty. ¶ 379 (Ex. 2); Cmplt., Meigs Cty. ¶ 379 (Ex. 3); *Marcellino*, 2012 WL 2568079 at *3.  They similarly fail to allege any plausible factual allegations about how Worley breached whatever duty he supposedly owed them, let alone how Worley's breach proximately caused them any injury.  Ex. 1 at ¶¶ 373-79; *Fla. Carpenters Reg'l Council Pension Plan*, 964 F. Supp. 2d at 883.

### F.   Plaintiffs Fail To Allege A Viable Negligent Misrepresentation Claim Against Worley.

To bring a claim for negligent misrepresentation, plaintiffs must allege "one who . . . in the course of his profession . . . supplies false information for the guidance of others in their business transactions" and that those "others" justifiably relied upon the information.  *Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4 (1989) (citing Rest. 2d Torts (1965) 126–27, § 552(1)).  A plaintiff cannot, however, allege a claim based solely on omissions: "there must be some affirmative false statement."  *Manno v. St. Felicitas Elementary Sch.*, 831 N.E.2d 1071, 1077 (Ohio App. 2005) (citing *Leal v. Holtvogt* 123 Ohio App. 3d 51, 62 (Ohio App. 1998)); *see also Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 149 (1996).

That is what plaintiffs try here.  They do not allege Worley made any affirmatively false statements to them or their residents.  While they allege a laundry list of conclusory statements that sales representative defendants "made misrepresentations and omissions of facts material" regarding the "marketing, advertising, and promotion" of opioids by "overstating the benefits," "downplaying the serious risks," and "overstating OxyContin's superiority," they fail to allege any *affirmatively* false statements that Worley made.  Cmplt., Noble Cty. ¶ 381 (Ex. 1); Cmplt.,

Wash. Cty. ¶ 382 (Ex. 2); Cmplt., Meigs Cty. ¶ 382 (Ex. 3).  And Worley's alleged downplaying

of potential opioid consumption risks are not affirmative false statements that could give rise to a

cognizable negligent misrepresentation claim.  *See Picker Int'l, Inc. v. Mayo Found.*, 6 F. Supp.

2d 685, 689-90 (N.D. Ohio 1998).

A plaintiff must also demonstrate the defendant "fail[ed] to exercise reasonable care or

competence in obtaining or communicating the information" properly to assert a negligent

misrepresentation claim.  *Delman*, 41 Ohio. St. 3d at 4.  But plaintiffs do not allege any such

failure by Worley.  While they generically allege the defendants "kn[e]w or should have

known… their misrepresentations and omissions" were false and their "conduct was willful,

wanton, and malicious,"  Ex. 1 at ¶¶ 387 & 389, such unsupported conclusions are not sufficient

to withstand a motion to dismiss.  *See Fla. Carpenters Reg'l Council Pension Plan*, 964 F. Supp.

2d at 883.  Absent any allegations that Worley actually "failed to exercise reasonable care in

representing" the benefits and side-effects of opioid use, plaintiffs cannot bring a negligent

misrepresentation claim against him.

Negligent misrepresentation also requires an allegation of a special relationship "under

which the defendant supplied information to the plaintiff."  *Ziegler v. Findlay Indus.*, 464 F.

Supp. 2d 733, 738 (N.D. Ohio 2006).  Such relationships do not exist in "ordinary business

transactions."  *Hayes v. Computer Assoc. Inc.*, No. 03:02-CV-7452, 2003 WL 21478930, at *6

(N.D. Ohio June 24, 2003).  They only exist in limited circumstances, such as when the

defendant is a professional "in the business of rendering opinions to others for their use in

guiding their business, and the plaintiff is a member of a limited class."  *Hayes*, 2003 WL

21478930, at *7; *see also Picker Int'l*, 6 F. Supp. 2d at 689 (dismissing negligent

misrepresentation claim where arms-length contractual duties do not create any special

relationship). But plaintiffs do not allege any special relationship existed between Worley and the plaintiffs at the time he provided information about opioids, and nor could they. While plaintiffs allege sales representative defendants "market[ed], advertis[ed], and promot[ed] OxyContin" their counties, Ex. 1 at ¶ 381, they nowhere allege the parties were engaged in anything other than typical arms-length transactions. *Id.* at ¶¶ 380-89; *see also Hayes*, 2003 WL 21478930, at *6-7. Absent plausible allegations of a special relationship, plaintiffs' negligent misrepresentation claim is properly dismissed against Worley for this failure too. *Id.*

Finally, a party may be liable for negligent misrepresentation "only if the disseminator . . . intends to supply it to a specific person or a limited group of people." *Amann v. Clear Channel Commcn's*, 165 Ohio App. 3d 291, 297 (2006) (referencing Rest. 2d Torts § 552(2)(a)). A disseminator of information owes no duty to an "extensive, faceless, and indeterminable . . . public-at-large." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs., LLC*, 813 F. Supp. 2d 871, 880 (S.D. Ohio 2011), *aff'd*, 700 F.3d 829 (6th Cir. 2012). Yet, plaintiffs fail to offer any plausible allegations that Worley intended to supply the alleged misrepresentations to specific persons or limited groups of people. They allege "defendants . . . made misrepresentations . . . to plaintiffs and their residents." Ex. 1 at ¶ 381. But plaintiffs are municipal counties with more than 97,000 residents, [6] and nowhere do they allege their populations are part of a limited class to whom Worley intended to disseminate information regarding the use and potential side-effects of opioids. *See Amann*, 165 Ohio App.

---

[6] According to the United States Census Bureau, as of July 1, 2019, Noble County had a population of 14,424 (U.S. Census Bureau QuickFacts: Noble County, Ohio; United States), Washington County had a population of 59,911 (U.S. Census Bureau QuickFacts: Washington County, Ohio), and Meigs County had a population of 22,907 (U.S. Census Bureau QuickFacts: Meigs County, Ohio), totaling 97,242 people.

3d at 297.  Absent allegations Worley intended to promote opioids to specific people or a limited group of people, plaintiffs' negligent misrepresentation claims cannot proceed.  *See id.*

### G.  Plaintiffs Cannot State A Viable Public Nuisance Claim Against Worley.

The *sin qua non* of a public nuisance claim is the "unreasonable interference with a right common to the general public."  *City of Cleveland v. J.P. Morgan Chase Bank, N.A.*, 2013-Ohio-1035, ¶ 9 (Ohio App. 2013).  An "unreasonable interference" is one that "significantly interfere[s] with public health, safety, peace, comfort, or convenience, conduct that is contrary to a statute, ordinance, or regulation, or conduct that is of a continuing nature or one which has produced permanent or long-lasting effect upon the public right, an effect of which the actor is aware or should be aware."  *Id.*  A public nuisance can be either absolute or qualified.  *Angerman v. Burick*, 2003-Ohio-1469, ¶ 9 (Ohio App. 2003).  Absolute nuisance requires either a culpable, intentional act or a nonculpable act that is so dangerous that absolute liability attaches, while a qualified nuisance "consists of an act lawfully but so negligently or careless done as to create a potential and unreasonable risk of harm."  *Id.*

Here, plaintiffs do not specifically allege an absolute public nuisance or a qualified nuisance, but either way they have failed to state a claim against Worley.[7]  As a threshold matter, plaintiffs fail to allege Worley violated a right common to the general public.  Ohio follows the traditional definition of a public right under which the right is one "collective in nature," not something enjoyed by many or all in their *individual* capacities.  *Paulus v. Citicorp N. Am., Inc.*,

---

[7] In addition to a common law public nuisance claim, plaintiffs also allege a claim for public nuisance under the Ohio Product Liability Act.  Ohio Rev. Code ("ORC") § 2307.071.  Under that statute, a product liability claim can include "any public nuisance claim or cause of action at common law in which it is alleged that the . . . marketing, [or] distribution . . . of a product unreasonably interferes with a right common to the general public."  *Id.* § 2307.71(A)(13); Ex. 1 at ¶ 393.  But as further explained below, plaintiffs fail to allege any specific marketing or distribution efforts by Worley, any public right Worley purportedly violated, or any causal relationship between plaintiffs' alleged harm and Worley's conduct.

No. 2:12-CV-856, 2014 WL 4557603, at *16 (S.D. Ohio Sept. 12, 2014).  Yet, Plaintiffs only allege defendants "interfer[ed] with a right common to the general public" to be free from "substantial injury to public health, safety, peace, comfort and convenience."  Ex. 1 at ¶¶ 391-92.  Such a bare recitation, without identifying any public right Worley supposedly violated or interfered with, will not do.  *See Paulus*, 2014 WL 4557603 at *16.

Nor have plaintiffs alleged any culpable, intentional act by Worley sufficient to state a claim for absolute nuisance.  *Angerman*, 2003-Ohio-1469 at ¶ 10.  To meet the intentional conduct requirement, a plaintiff must establish that "the creator of [the alleged nuisance] intended to bring about the conditions which are in fact found to be a nuisance."  *Id.* at ¶ 10.  But plaintiffs make only conclusory allegations of conduct by "sales representative defendants," alleging they "falsely represent[ed] to prescribers and the public concerning the risk of addiction, abuse and diversion of OxyContin and of its relative safety."  Cmplt., Noble Cty. ¶ 393 (Ex. 1); Cmplt., Wash. Cty. ¶ 394 (Ex. 2); Cmplt., Meigs Cty. ¶ 394 (Ex. 3).  They nowhere allege any specific statements Worley allegedly made, or that Worley intentionally sought to bring about any of the conditions plaintiffs claim to be nuisances.  *See Angerman*, 2003-Ohio-1469, at ¶ 10.  Nor have they even alleged that selling opioids is so dangerous that absolute liability attaches.

Plaintiffs have likewise failed to state a claim for a qualified public nuisance, which "requires proof of negligence because, otherwise, there is no nuisance."  *Angerman*, 2003-Ohio-1469, at ¶ 12.  Plaintiffs have not alleged Worley breached any duty owed to plaintiffs, or that Worley proximately caused their alleged injuries.  *Supra* Section III(E).  Nor have they alleged any proximate causal link between Worley's alleged false representations and their injuries.  *See, e.g.*, Ex. 1 at ¶¶ 393-94.  That deficiency is particularly glaring given the many intervening events between Worley's alleged actions as a sales representative and any harm to the plaintiffs,

including a doctor prescribing opioids, a pharmacy filling that prescription, the patient

consuming and misusing/ abusing prescribed opioids, and so on.  Plaintiffs' alleged injuries are

far too removed from Worley's alleged conduct to support any cognizable public nuisance claim.

*See City of Cleveland v. J.P. Morgan Chase Bank*, 2013-Ohio-1035, at ¶ 20 (dismissing absolute

public nuisance claim where "so many other factors led to the City's claimed injury").

## **CONCLUSION**

The Court should take up and grant Worley's Motion.

Dated:  March 31, 2021                         Respectfully Submitted,

By:
Paul A. Werner
Hannah J. Wigger
Charles Spencer-Davis
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006-6801
Tel. (202) 747-1900
Fax (202) 747-1901
pwerner@sheppardmullin.com
hwigger@sheppardmullin.com
cspencerdavis@sheppardmullin.com

*Attorneys for Defendant Brandon Worley*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Northern District of Ohio Local Rule 7.1(f), I hereby certify this memorandum complies with the dispositive motion page limit for complex cases because it is less than 30 pages.  See Dkt. 232, Section 2(h) (Case Management Order).

_____

Paul Werner

## <u>CERTIFICATE OF SERVICE</u>

On March 31, 2021, I electronically filed the foregoing document through the CM/ECF system, which will send a notice of electronic filing to the attorneys of record.

_____

Paul Werner