UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO: | ) ) ) | Hon. Dan Aaron Polster |
| "*Track Three Cases*" | ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT CVS'S OBJECTIONS
TO THE ORDER REGARDING VARIOUS DISCOVERY ISSUES**

CVS objects to the Special Master's order requiring it to provide discovery from four custodians as to whether CVS knew or had notice that its national performance metrics and staffing policies were exacerbating its ability to prevent diversion of opioids.  Because the Special Master correctly held that this discovery should not be limited in geographic scope to only stores located in the Track Three counties and should encompass metrics discovery related to all prescription drugs, this Court should overrule CVS's objections.

### BACKGROUND

A central allegation in Plaintiffs' complaints is that the performance metrics imposed by Defendants, including CVS, on their pharmacists and staffs posed speed and volume pressure that undermined their already-deficient anti-diversion policies.  *See* Exhibit A, Ltr. from Michael Elsner to Special Master, Jan. 8, 2021, at 1.  Indeed, as reported by *The New York Times* (and as cited in Plaintiffs' complaints), CVS may be the "most aggressive chain in imposing performance metrics," according to pharmacists willing to speak publicly.[1]  Plaintiffs have alleged that "[n]ot only did the Chain Pharmacies lack (and fail to implement) adequate policies and procedures to

---

[1] *See* Dkt. 2325 (Trumbull Compl.) at ¶ 418 (citing Ellen Gabler, *How Chaos at Pharmacies is Putting Patients at Risk*, N.Y. TIMES (Jan. 31, 2020), https://www.nytimes.com/2020/01/31/health/pharmacists-medication-errors.html.

guard against diversion, but CVS . . . compounded this problem by implementing performance metrics and prescription quotas for retail stores that contributed to supplying of a black market, including in the [Plaintiff] Count[ies]." Dkt. 3326 (Trumbull Compl.) at ¶ 411.

Plaintiffs accordingly seek discovery relating to CVS's national performance metrics and staffing policies, including discovery as to complaints, concerns and issues raised throughout the country about the national policies. After meeting and conferring with CVS, Plaintiffs agreed to limit their discovery requests to searches of agreed terms against the files of only four custodians (even though many other CVS executives and employees have potentially relevant and responsive information). Three of these custodians have or had executive responsibility for CVS's metrics and staffing policies globally, and the fourth custodian is the district leader for CVS's Track Three pharmacies. CVS does not dispute that it will produce what it characterizes as Category One discovery – "documents related to policies and procedures that have national applicability." Dkt. 3659, CVS Obj. at 1; *see also* Exhibit B, Ltr. from Paul Hynes to Special Master, Jan. 18, 2021, at 1 ("There is no dispute over documents related to policies and procedures (*i.e.*, 'Category One' documents), which CVS already has agreed to produce on a nationwide basis."). But CVS insists that it is entitled to cull so-called Category Two discovery – "discovery . . . that concerns pharmacy-specific documents" (Dkt. 3659, CVS Obj. at 1) – from the production. *See also* Ex. B at 1 ("CVS should be required to produce Category Two documents related to metrics and staffing only for the Track Three jurisdictions."). CVS also claims it should be required to produce metrics data only for opioids and not for any other prescription drugs. The Special Master disagreed with both of CVS's proposed limitations and CVS now objects.

#### ARGUMENT

### I. The Special Master properly held that CVS could not limit production to only documents that concern Track Three pharmacies.

Despite the narrowness of Plaintiffs' requests, CVS invokes the Category One/Category Two distinction to limit the scope of documents it is obligated to produce, asserting that discovery of national performance metrics and staffing issues and concerns raised at pharmacies outside of Trace Three pharmacies is Category Two discovery and therefore limited to Track Three pharmacies. CVS argues that information in the files of the four custodians that allegedly concerns metrics at non-Track Three pharmacies has no bearing on the working conditions of the pharmacists in the Track Three pharmacies. Dkt. 3659, CVS Obj. at 2-3.

The Special Master rejected CVS's argument. The Special Master recognized that not all discovery fits neatly into Category One or Category Two and that, in particular, the dispute here cannot be resolved by simple application of those categories. The Category One/Category Two distinction was designed in a different context and draws a bright line that simply does not apply when discovery from a very limited set of national executives concerns local issues outside the bellwether jurisdictions, but sheds light on a defendant's knowledge of the effect of its national policies within the jurisdiction. Recognizing that the discovery sought has both national and local implications, the Special Master correctly held that the ultimate question is whether the discovery at issue is proportional to the needs of the case, the standard set forth in Rule 26(b)(1). Dkt. 3655, Order at 11 and n.3. He correctly found that, in this instance, it is. This Court should affirm that ruling.

The discovery sought here, regardless of how categorized, is highly relevant to Plaintiffs' claims. Information about implementation of CVS's performance metrics and staffing policies, even in non-Track Three pharmacies, goes to "whether CVS ***gained knowledge*** that its metrics

3

policies had a detrimental effect on pharmacists' working conditions *globally*." *Id*. at 11 (emphasis in original). Invoking the reasoning of his resolution of a similar dispute involving Walmart, the Special Master noted that corporate awareness of a national policy's or procedure's effect on pharmacies, wherever located, is relevant to what is happening at *all* pharmacies, including those in the particular area at issue. *Id*. at 8, 11. Quoting an opinion from the Discovery Commissioner overseeing West Virginia's State Court Consolidated Opioid Mass Litigation, the Special Master reasoned, "Because [the pharmacy chain] implemented policies, procedures, and protocols for its pharmacies on a national . . . basis, any investigation that showed [the pharmacy chain's] policies were failing to prevent diversion in one state is evidence that [the pharmacy chain] knew those policies would fail in [other states]." *Id*. at 8 (quoting *In re: Opioid Litig.*, 2020 WL 7087276 at *2 (W.Va. Cir. Ct. Oct. 20, 2020)).

CVS concedes that its "metrics and staffing policies generally have national applicability." Dkt. 3659, CVS Obj. at 3. It argues, however, that "the implementation of those policies by thousands of field and pharmacy personnel across the country is inherently local and *may* vary from pharmacy to pharmacy." *Id*. (emphasis added). This is a *non-sequitur*. If CVS was on notice that pharmacies across the country were being adversely impacted in their efforts (if any) to stem diversion of opioids, that knowledge is directly relevant to what happened at all of CVS's pharmacies, including those in the Track Three locations. Although it may be true that one or two issues at pharmacies outside Track Three might not be indicative of problems within Track Three, if the reports of problems were frequent and distributed around the country, that would surely put CVS on notice that the same problems could be occurring within Track Three as well. Moreover, limiting discovery of metrics and staffing issues at particular pharmacies to only those in Track Three locations would be potentially misleading: "Even assuming that there are one or two

4

complaints from pharmacists in the fifteen stores in Track Three, CVS may more easily seek to explain that these few unfounded complaints are not reflective of inadequate policies and procedures than they would otherwise be able to do if hundreds of other complaints were received from around the country." Ex. A at 3.

Turning to the question of whether the burden or expense of the proposed discovery outweighs its likely benefit, the Special Master drew a distinction between the discovery here and earlier discovery disputes in which the Special Master imposed a geographic scope limitation. Specifically, the Special Master explained that, unlike in those earlier disputes, which implicated an enormous number of custodians, non-custodial document locations, and corporate databases, here, the discovery is limited to four custodians whose files are going to be searched anyway. Dkt. 3655, Order at 11 and n.3. Moreover, the Special Master noted that requiring CVS to produce all responsive documents, without culling documents for any geographic scope limitation, may actually reduce CVS's time and effort needed to respond to the discovery. *Id*. at 12.

CVS admits that the only additional burden it will face because of the Special Master's ruling regarding geographic scope is that CVS will have to engage in "second-level review and privilege review" across a broader number of documents from the files of the four custodians. Dkt. 3659, CVS Obj. at 3-4. CVS fails to make any showing, however, that this burden will be onerous, particularly in light of the fact that they are relieved of the burden of culling through documents to exclude those that do not pertain to Track Three pharmacies.

CVS's citation to the Sixth Circuit's April 15, 2020 opinion regarding the proportionality of discovery is inapposite. *See* Dkt. 3659, CVS Obj. at 2, *citing In re Nat'l Prescription Opiate Litig*., 956 F.3d 838 (6th Cir. 2020). The Special Master assessed the relevance of the discovery sought *to the Track Three cases* and weighed the purported burden of discovery in that context.

5

The ruling in no way falls afoul of any guidance from the Sixth Circuit. Because the Special Master correctly found that all of the documents from the four identified custodians that are responsive to the agreed-upon search terms, without geographic limitation, are proportional to the needs of the Track Three cases, this Court should affirm that ruling.

> II. **The Special Master properly held that CVS must produce performance metrics data for all prescriptions.**

CVS makes a cursory objection to the Special Master's order that it should be able to exclude metrics discovery that does not directly relate to the dispensing of controlled substances. Dkt. 3659, CVS Obj. at 4. The Special Master agreed that CVS did not need to produce metrics data related to non-prescription drug matters, such as loyalty card programs and in-store immunizations. Dkt. 3655, Order at 12. Plaintiffs do not contest this holding. But the Special Master denied CVS's request to withhold metrics discovery related to prescriptions for non-controlled substances. *Id.* The Special Master explained that, "If a pharmacist is incentivized (by bonuses or penalties) to dispense, say, 40 prescriptions per hour, and meeting this goal prevents the pharmacist from having or taking time to recognize red flags, then it does not matter whether the 40 prescriptions were for controlled substances or other drugs." *Id.* CVS's primary response is that "no such metric exists at CVS." Dkt. 3659, CVS Obj. at 4. But that simply begs the question: What metrics *do* exist, and what impact, if any, are those metrics having on pharmacies' ability to prevent diversion? Plaintiffs are entitled to discovery on this issue, which is directly relevant to Plaintiffs' claims about the adverse impact of performance metrics on prevention of diversion.

CVS also contends that the impact of performance metrics on dispensing of other kinds of drugs is irrelevant to the impact on the dispensing of controlled substances. As the Special Master recognized, this is simply not so. The impact of the required metrics on the time available to

6

pharmacists to counsel patients, check for drug interactions, answer questions, or, more generally, perform their jobs with adequate care surely reflects on the impact of those same metrics on the pharmacists' ability, in the time allowed, to perform the more onerous due diligence required for controlled substances.

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, this Court should overrule CVS's objections to the Special Master's order regarding Plaintiffs' discovery requests on metrics and staffing matters, and should adopt the Special Master's order as its own. Plaintiffs further seek such other relief to which they may be justly entitled.

Dated: April 5, 2021

Respectfully submitted,

Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
phanly@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR 00907
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

/s/Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Frank L. Gallucci
PLEVIN & GALLUCCI CO., L.P.A.
55 Public Square, Suite 222
Cleveland, OH 44113
(216) 861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiffs Lake County and Trumbull County, Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

/s/Peter H. Weinberger
Peter H. Weinberger