# EXHIBIT A

**MotleyRice** LLC
ATTORNEYS AT LAW
www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o. 843.216.9000  f. 843.216.9450

**Michael E. Elsner**
*Licensed in NY, SC, VA*
direct: 843.216.9250
melsner@motleyrice.com

January 8, 2021

***Via Electronic Mail (david@specialmaster.law)***
Special Master David Cohen
24400 Chagrin Boulevard, Suite 300
Cleveland, OH 44122

     **Re:    MDL 2804 – Motion to Compel CVS on Metrics and Staffing**

Dear Special Master Cohen:

     Plaintiffs respectfully request a ruling concerning CVS Defendants' desire to cull relevant, responsive documents from the three custodial files searched in response to Plaintiffs' "metrics"-related discovery requests on the basis of geographic scope. A central allegation in Plaintiffs' complaints is that Defendants' performance metrics posed speed and volume pressure that undermined their already-deficient anti-diversion policies. A recent media report, cited in the complaints, described CVS as the "most aggressive chain in imposing performance metrics," according to pharmacists willing to speak publicly.[1] CVS seeks to curtail a fulsome review of this conduct. This information, however, is probative of Plaintiffs' claims and well within CVS's discovery obligations under Rule 26. This is particularly true given the limited number of documents at issue. There is no undue burden in producing these documents. If anything, CVS may do *more* work to cull and exclude non-Track Three related responsive documents. Meanwhile, artificially narrowing the scope of these requests will undermine the goals of efficient, centralized discovery in this MDL, and Plaintiffs' trial preparation.

     Central to the claims against CVS are allegations that "[n]ot only did the Chain Pharmacies lack (and fail to implement) adequate policies and procedures to guard against diversion, but CVS . . . compounded this problem by implementing performance metrics and prescription quotas for retail stores that contributed to supplying of a black market, including in the Count[ies]." Dkt. 3326, (Trumbull Compl.) ¶ 411. As such, CVS's performance metrics, and their impacts, are a key area of discovery. In addition, adequate staffing of the pharmacies plays an important role in the pharmacies' ability to conduct due diligence on suspicious prescriptions. CVS has sought to restrict this discovery to the fifteen stores in Track Three.

---

[1] *See*, Docket #3326, (Trumbull Compl.) ¶ 418, *citing*, Ellen Gabler, *How Chaos at Pharmacies Is Putting Patients at Risk*, New York Times, (Jan. 31, 2020), https://www.nytimes.com/2020/01/31/health/pharmacists-medication-errors.html

M. Elsner to Special Master Cohen
January 8, 2021
Re: Motion to Compel CVS re: Metrics and Staffing
Page 2

CVS has agreed to produce the files of three custodians with information pertinent to its metrics and staffing. These include: Tom Davis, a Vice President, Pharmacy Professional Services and Senior Director, Pharmacy Operations; Nicole Harrington, a Senior Director, Pharmacy Professional Services and Director, Pharmacy Professional Practice; and, Jared Tancrelle, Vice President, Store Operations and Business Support. Plaintiffs have also requested that these search terms be run on the e-mail records of the CVS District Leaders, who oversee the Track Three pharmacies. Plaintiffs made every effort to compromise with CVS, including by limiting the total number of custodians, even though other individuals' files, we believe, should be searched. Additionally, Plaintiffs made significant compromises on the search terms to be run.

Nevertheless, CVS seeks to constrain discovery still further. It insists that out of the documents it collects and reviews, it would limit production of responsive documents to only: (1) documents that contain information particular to Lake and Trumbull Counties, and (2) content that CVS subjectively views as general metrics discussions. If the documents collected include evidence pertaining to the conduct alleged in the complaint, but which CVS considers focused on other jurisdictions, it will withhold those responsive documents. This is unacceptable to Plaintiffs, and the Parties, after extended meet and confers, have reached impasse. CVS metrics and staffing programs are national and if deficiencies, warnings and other issues arise in other jurisdictions those experiences and that knowledge will or should impact pharmacists' conduct across the country. Plaintiffs are entitled to know these facts and use this evidence at trial. There is no geographic limitation to the impact on pharmacists' performance caused by working conditions.

CVS's proposal to withhold responsive documents from a discrete and narrow subset of custodial files is untenable for several reasons. First, as the Special Master has already recognized, national information is important to the claims of trial track plaintiffs. *See* Discovery Ruling No. 2 (Dkt. 693); Discovery Ruling No. 3 (Dkt. 762); Order Regarding Geographic Scope of Discovery, Dkt. 3371. The importance of the particular "national" discovery at issue here is illustrated by Plaintiffs' complaints themselves. As supporting detail, Plaintiffs cited, among other information, the complaints of pharmacists outside the Counties as evidence of the existence and impact of CVS's practices. *See, e.g.*, Dkt. 3326 (Trumbull Compl.) ¶¶ 420-21 (including examples of a North Carolina pharmacist describing the conditions at CVS as unsafe, and a Texas pharmacist who cautioned: "I am a danger to the public working for CVS"). Because of the limited public information available, however, Plaintiffs' ability to demonstrate CVS's notice regarding the impact and risks posed by its national staffing and metrics policies is severely curtailed. Importantly, the scope of the metrics and staffing discovery requests was not limited in the July 2020 rulings on geographic scope of these specific requests. *See*, Docket # 3371, p. 12. (Plaintiffs' Track Three Requests for Production 27-29 were identified by Plaintiffs as Category One requests

M. Elsner to Special Master Cohen
January 8, 2021
Re: Motion to Compel CVS re: Metrics and Staffing
Page 3

seeking national information[2] and Special Master Cohen did not alter or confine that determination.)

The federal government's recent complaint against Walmart, which provides a window into the national conduct of that retailer, further illustrates the import of this information. The U.S. Department of Justice ("DOJ") alleged that "Walmart made it difficult for its pharmacists to follow the rules," as its managers "put enormous pressure on pharmacists to fill prescriptions—requiring pharmacists to process a high volume of prescriptions as fast as possible, while at the same time denying them the authority to categorically refuse to fill prescriptions issued by prescribers the pharmacists knew were continually issuing invalid prescriptions." *United States of America v. Walmart Inc. et al.*, 1:20-cv-01744-CFC, Doc. 1, ¶ 6 (Dec. 22, 2020 D. Del.). In setting forth national allegations, the DOJ illustrated managers' individual admonitions that "filling prescriptions 'is a battle of seconds' and '[w]ait times are our Achilles heel!," and "acknowledged in an email that "rather than analyzing the refusal-to-fill reports, the compliance unit viewed '[d]riving sales and patient awareness' as 'a far better use of our Market Directors and Market Manager's time.'" *Id.* ¶¶ 19-20. Various e-mails from around the country revealed internal admonitions "urg[ing] that if prescriptions were not filled quickly, customers would shop elsewhere," and that pharmacists must "hustle." *Id.* ¶ 115-116. Pharmacy employees also responded to surveys with pleas for more staffing and time, compiled by Walmart. *Id.* ¶ 122 (citing for example, understaffing as "a huge red flag for possible errors" and time pressure that caused "the pharmacy to take short cuts").

As those allegations illustrate, headquarters of a national chain pharmacy are often informed by their pharmacists and staff across the country of potential risks and safety concerns from certain policies and procedures such as metrics and staffing. These documents are highly relevant to the corporations notice and potentially relevant to whether a particular policy is effective. CVS wants to limit the jury's knowledge of the inadequacies and risks of its metrics and staffing policies to only those documents that reflect conduct in the Track Three stores. If, for example, CVS headquarters received hundreds of complaints from pharmacists around the country stating their inability to conduct adequate due diligence on red flag prescriptions because of inadequate staffing and the high numbers of prescriptions that they are expected to fill in a shift, Plaintiffs would be deprived of that evidence. Even assuming that there are one or two complaints from pharmacists in the fifteen CVS stores in Track Three, CVS may more easily seek to explain that these few unfounded complaints are not reflective of inadequate policies and procedures than they would otherwise be able to do if hundreds of other complaints were received from around the country.

---

[2] Correspondence from P. Weinberger to Special Master Cohen and Defendants dated June 30, 2020, attaching Track Three Requests for Production identifying which requests Plaintiffs seek Category I, National Discovery. Attached hereto as Exhibit 1.

M. Elsner to Special Master Cohen
January 8, 2021
Re: Motion to Compel CVS re: Metrics and Staffing
Page 4

"The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad," and the documents at issue here are well within it. *Kent State Univ. v. roundCorner, Inc.*, 2018 WL 3242309, at \*3 (N.D. Ohio May 4, 2018) (citing *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). This is particularly true given the relevance of the information to Plaintiffs' claims.

*Second*, there is no undue burden to CVS. To the extent the Special Master limited the scope of national discovery in Track One, that ruling responded to Defendants' concerns about the burden of making a complete production of responsive documents. *See* Dkts. 693 & 762. Given an inch, Defendants now seek a mile. The Discovery Rulings, Plaintiffs believe, arose out of concern that ensuring compliance with a nationwide scope for all "Category 2" discovery would entail additional work for Defendants to search substantially more custodial files and obtain documents from different locations. It would not have been intended to allow Defendants to do *more* work to avoid disclosing damaging documents to Plaintiffs. If anything, the attorney time and judgment involved in an effort to cull and withhold responsive documents may be *more* burdensome than producing them. As a practical matter, doing so also means that Defendants must re-search the same custodian files to make piecemeal productions in other jurisdictions. This undermines the purpose of an MDL in providing centralized, efficient discovery. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378–80 (U.S. Jud. Pan. Mult. Lit. 2017) (explaining that the MDL was intended to "reduce the risk of duplicative discovery").[3] It also, importantly, deprives Plaintiffs from knowing what CVS and each specific witness knew, on a national basis when seeking testimony.

The documents at issue will be those triggered by a narrow set of search terms[4] for three national CVS custodians charged with responsibility for the metrics program and national pharmacy practice and procedures. If an e-mail or document hits their inbox concerning metrics and/or staffing issues triggered by the negotiated search terms, it is highly likely that it implicates CVS' national policies, procedures and practices. Given the relatively small number of documents at issue, pertaining to just three national custodians, with a narrow set of search terms, there is no need for CVS to conduct a geographic relevancy review to restrict production of those documents selected by the search terms. It is far more work to remove the documents from the production, than simply producing them.

---

[3] Applying geographic criteria to cull and limit the production of responsive documents, entails a certain amount of subjectivity. Without casting aspersions on CVS, Plaintiffs note that another Defendant, ABDC claimed difficulty in discerning which documents were truly "Category One" in an unfounded attempt to avoid sanctions for its selective withholding of national discovery until after the Track One cases settled. *See* Dkt. 3322 & 3365.

[4] The negotiated search terms for the metrics and staffing request is attached hereto as Exhibit 2.

M. Elsner to Special Master Cohen
January 8, 2021
Re: Motion to Compel CVS re: Metrics and Staffing
Page 5

Where national conduct is at issue, a national scope of discovery is appropriate. *Cf. Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 217-18 (D. Del. 1985) (recognizing that an anti-trust conspiracy "may involve actors outside of the plaintiff's geographic market and the scheme of monopolization may involve an area larger than the plaintiff's own limited sphere of operations" and "broad discovery may be needed to uncover evidence of invidious design, pattern or intent"); *United States ex rel. Rost v. Pfizer, Inc.*, 253 F.R.D. 11, 17 (D. Mass. 2008) (stating that court will allow "nationwide" discovery if initial discovery shows that drug company's sales region was following a national directive to pay kickbacks to doctors for off-label prescriptions). Plaintiffs' allege CVS's national policies and practices caused harm in their communities, and are entitled to this narrow, and reasonable, discovery.

Plaintiffs respectfully request that the Special Master order CVS to produce all responsive documents from the three national custodians concerning metrics and staffing issues that hit on the negotiated search terms, without culling and refusing to produce such documents based on geography. In addition, Plaintiffs request an order requiring CVS to run the same search terms on the Track 3 District Leaders' e-mail accounts. There can be no basis to object on geographic grounds to the production of their documents and they are highly relevant to Plaintiffs' claims.

Respectfully submitted,

Michael Elsner

cc:    All Counsel of Record

# EXHIBIT
# 1

**Unterreiner, Amanda**

| | |
|---|---|
| **From:** | Unterreiner, Amanda |
| **Sent:** | Friday, January 8, 2021 9:14 AM |
| **To:** | Unterreiner, Amanda |
| **Subject:** | FW: [CT1B_Opioid_Team] FW: Discovery t/c - Track 3 - Cohen call at 2 pm Wednesday re geographic scope of discovery. |

**From:** Peter H. Weinberger
**Sent:** Tuesday, June 30, 2020 4:42 PM
**To:** David R. Cohen (David@SpecialMaster.Law) <david@specialmaster.law>; kaspar.stoffelmayr@bartlitbeck.com
**Cc:** EXT Track1BDefendants <EXT_Track1BDefendants@jonesday.com>
**Subject:** RE: Discovery t/c - Track 3

SM Cohen:

In response to your email below, attached are the following documents:

1. The first Combined Discovery requests served on the defendants in Track 1 B
2. The Discovery Requests (Documents and Rogs) served on the defendants in Track Three.

I have handwritten notes next to each request that references Category 1 vs Category 2.

Also attached is my email to defense counsel for the Pharmacy defendants dated June 12, 2020 in which I indicated that after the Walmart Hearing and the partie'trs submissions regarding geographic scope under Categories 1 and 2, I would provide our position regarding which of our discovery requests implicated Category 1 vs Category 2. Which is what I have done now with this submission.

With respect to the telecon at 2 pm tomorrow, the Pharmacy defendants and I will have to be on a zoom call with Judge Gandhi at 3 pm.

Pete

**From:** David R. Cohen (David@SpecialMaster.Law) <david@specialmaster.law>
**Sent:** Tuesday, June 30, 2020 11:36 AM
**To:** kaspar.stoffelmayr@bartlitbeck.com; Peter H. Weinberger <PWeinberger@spanglaw.com>
**Subject:** Discovery t/c - Track 3

Greetings. Having reviewed the parties' position papers regarding geographic scope of discovery, I would like to have a telecon to discuss "Category Two Discovery." Defendants write in their letter that they "must guess as to precisely what discovery Plaintiffs seek." Hynes letter at 1. I assume by now Plaintiffs have propounded Track 3 RFPs and ROGs, and can point to which requests address what Ps believe is Cat-2 discovery. Ps should please forward to me those discovery requests and, if possible: (1) identify the Cat-2 requests, and (2) state for which of those (if any) they seek a geographic scope of Lake and Trumbull Ctys only, and which of those they seek a wider scope (presumably Ohio-wide).

We will then discuss these discovery requests at a telecon on Wednesday July 1, 2020 at 2:00p EST, using the numbers below.

Thanks.

-David

Dial-in Number: 1.888.346.3950
Participant Entry Code: 7763-3882#


========================
This email sent from:
David R. Cohen Co. LPA
24400 Chagrin Blvd., Suite 300
Cleveland, OH 44122
216-831-0001 tel
866-357-3535 fax
www.SpecialMaster.law

---------------------------------------------------------------------------
*Post your message to the list by sending it to CT1B_Opioid_Team@mail-list.com.*

*To contact the list owner, send your message to*
*CT1B_Opioid_Team-list-owner@mail-list.com.*

*mail-list.com 1302 Waugh Dr. #438 Houston, Texas 77019 USA*


*To unsubscribe or change your email address, click here.*
*https://member.mail-list.com/u?ln=ct1b_opioid_team&nm=melsner%40motleyrice.com*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: NATIONAL PRESCRIPTION | ) | **MDL NO. 2804** |
| OPIATE LITIGATION | ) | |
| | ) | **CASE NO. 1:17-MD-2804** |
| THIS DOCUMENT RELATES TO: | ) | |
| *"Case Track Three"* | ) | **Judge Dan Aaron Polster** |

**PLAINTIFFS (FIRST) COMBINED TRACK THREE REQUESTS FOR PRODUCTION
CHAIN PHARMACY DEFENDANTS**

COMES now the Case Track Three Plaintiffs, LAKE COUNTY and the TRUMBULL
COUNTY, by counsel, and submit the following discovery requests pursuant to Rule 34 of the
Federal Rules of Civil Procedure to the Defendants.

**I. DEFINITIONS**

1. "You" or "Your" means Defendant and its officers, directors, employees, partners,
representatives, agents, divisions, predecessors or successors-in- interest and other persons or
entities acting on their behalf or controlled by them. These terms also include any pharmacies
providing Defendant with income.

2. "Cocktail Drugs" means muscle relaxants, stimulants and/or benzodiazepines
taken, prescribed, or dispensed in combination with opiate drugs.

3. "Communications" means the transmittal of information (in the form of facts, ideas,
inquiries or otherwise) and, with respect to oral communications, includes any document
evidencing such oral communications or in-person meetings. It includes the transmittal of
information by any means, including e-mail, SMS, MMS or other "text" messages, messages on
messaging apps or communication platforms (e.g. Slack, Microsoft Teams, etc.), messages on
"social networking" sites (including, but not limited to, Facebook, Google+, MySpace, Instagram,

Snapchat and Twitter), messages through sales platforms (e.g. Salesforce and its partners), shared applications from cell phones or by any other means. "Communications" also shall include, but is not limited to, all originals and copies that are provided by you or to you by others.

4.      "Controlled Substances" shall be defined by the Controlled Substances Act.

5.      "DEA" means the U.S. Drug Enforcement Agency.

6.      "Document" is defined to be synonymous in meaning and equal in scope of the usage of this term in Rule 33. A draft or non-identical copy is a separate document within the meaning of this term. In all events, the definition of "document" shall include "communications" as defined above.

7.      "Due Diligence" shall be defined to include any and all investigatory materials related to each distribution order, prescription, particular pharmacy's dispensing practices and all documents relating to the decision to hold or ship the order, increase the threshold or quota for a particular pharmacy and/or whether to dispense the medication.

8.      "Marketing" refers to any effort undertaken with the goal, at least in part, of increasing sales.

9.      "Opioid(s)" means that class of analgesic drugs, legal or illegal, natural or synthetic, including but not limited to the drugs referenced in Plaintiffs' Supplemental and Amended Allegations in the above-referenced matter regardless of schedule designation and whether alone or in combination pill form. Opioid(s) further includes Opioid-related products, including coatings, capsule configurations, delivery systems or mechanisms that include, but are not limited to, anti-abuse, tamper resistance and crush-proof mechanisms and mechanisms to deter immediate release. Opioids include both name-brand and generic products.

2

10. "Person" means any natural person or any business, legal or governmental entity or association.

11. "Plaintiffs" means all the named Plaintiffs in the above-captioned matter.

12. "Red Flag" is defined as indicia that a prescription for an Opioid should not be dispensed in the absence of due diligence.

## II. INSTRUCTIONS

1. **Relevant time period:** These requests seek information for the period consistent with *Discovery Ruling 3* (Doc #: 762) (Filed: 07/17/18) except where noted in the requests.

2. **Non-duplication of prior discovery or production**: Plaintiffs do not intend to seek duplicative discovery to the discovery previously propounded in Track 1 in view of the Court's Order in its Track 3 CMO (Doc# 3325) that all discovery propounded or produced in Track 1 shall be deemed propounded and/or produced in Track 3. To the extent an Interrogatory was propounded and answered in Track 1 discovery, Plaintiffs' seek an updated response and/or supplementation as required by the Civil Rules.

## COMBINED DISCOVERY REQUESTS

1. Produce all minutes of Your Board of Directors meetings (including committees and subcommittees) from 1996 to the present that generally refer to Opioids and that refer to diversion, Suspicious Order Monitoring, Due Diligence and DEA Investigations related to dispensing or distribution of controlled substances. Include all materials prepared for or utilized in conjunction with any board or committee meeting or any board or committee package relating to these two topics.

*Category 1*

3

*Category 1*

2. Produce all Documents concerning the risk of misuse, abuse, addiction, overdose, diversion, or death associated with the use of any Opioid which You distributed to and/or sold and/or dispensed in Ohio.

*Category 1*

3. Produce all Documents and Communications concerning the Opioid epidemic or crisis, including, but not limited to, the Opioid epidemic or crisis in Ohio. To the extent not previously produced in Track 1, produce documents sufficient to show the relationship between each of Your Corporate entities and the roles they play in all matters related to the dispensing and distribution of Opioids.

## DISTRIBUTION ISSUES

*Category 2 Ohio*

4. Please produce all **transactional data** related to the distribution of prescription Opioids in Track 3 from January 1, 1996, to the present.

*Category 2 Ohio*

5. Please produce the **Due Diligence files** for each of your Pharmacies in Track 3. Please identify the Bates range which corresponds to each Due Diligence file to enable the correlation between each Due Diligence file to each of your customers.

*Category 2 Ohio*

6. Please produce all Documents related to internal investigations, audits or reviews referencing, or related to, the distribution of Opioids in Track 3.

*Category 2 Ohio*

7. Please produce all presentations, including PowerPoints or slide decks, referencing the distribution of prescription Opioids in Ohio.

*Category 2 Lake Trumbull*

8. Produce Documents sufficient to identify those distributions centers or facilities You owned or operated that delivered Opioids to Lake and Trumbull Counties from 1996 through the present, including, and for each, identify the Ohio Board of Pharmacy registration number, DEA license, and any other licenses or permits required to operate in the state where the facility is located and to distribute Opioids in Ohio. Please include every application pertaining to

4

controlled substances that You submitted to a regulatory agency in order to obtain the requisite license or permit to distribute Opioids to Ohio.

9.      Produce all organizational charts for all employees with relevant knowledge of the claims asserted in Plaintiffs' complaints or Your defenses. Please include work charts for all of Your employees participating in Your Suspicious Order Monitoring System and Your Due Diligence review of Opioid orders from pharmacies located in  Lake and Trumbull Counties throughout the Relevant Time Period. In addition, please provide work charts for Your professional practice employees for pharmacists and any other groups responsible for pharmacies in Lake and Trumbull Counties including regional pharmacy managers, district leaders, and pharmacy employees.

*Category 1*

## DISPENSING ISSUES

10.     Please produce all data related to the dispensing of Opioids and "cocktail drugs" regarding prescriptions or scripts submitted to or filled by You in any and all pharmacies in Ohio from January 1, 2006, to the present. For each prescription, produce the data fields contained in "Exhibit A – List of Data Fields the Pharmacy Defendants Must Produce" to MDL 2804 Document 3106, Special Master Cohen's "Discovery Ruling Regarding Pharmacy Data Production" dated January 27, 2020 (the "Dispensing Data Order").[1]  For purposes of this request, the term "cocktail drugs" shall mean the list of drugs contained in "Exhibit B – List of Drugs Plaintiffs want for a 'Red Flag' analysis" attached to the Dispensing Data Order. Consistent with the Dispensing Data Order, "[e]ach Defendant may choose to simply produce all of its data for benzodiazepine and muscle relaxer prescriptions, without limitation; or instead produce only data for such prescriptions

*Category 2*
*Ohio*

---

[1] To the extent that a Defendant refers to any other data field in its defense, all records in those data fields shall be produced throughout the relevant time period.

5

where it dispensed a benzodiazepine or muscle relaxer to a patient and also dispensed an Opioid to the same patient within 14 days (before or after)." See Dispensing Data Order DE 3106 at 6.

11.    Please produce all data, information, policies, procedures, training materials, and reports available to You, reviewed by You, or created by You to determine, review, audit, or otherwise analyze dispensing and prescribing practices, potential diversion or compliance with statutory, regulatory, or other duties to prevent the diversion of Opioids in the context of Your dispensing of controlled substances.

*Category 1*

12.    Please produce all data, information, and reports You obtained or maintained, from internal or external sources, that You used during the relevant time period to track, record, review, audit, or otherwise analyze Your dispensing of prescription drugs.

*Category 1*

13.    Please produce all Transactional data and reports for each pharmacy with sufficient detail to determine by year: (a) the actual number of controlled substances dispensed and the actual number of non-controlled substances dispensed; (b) the ratio of controlled substances dispensed to non-controlled substances dispensed; and (c) the ratio of payments for Opioids and "cocktail" prescriptions paid in cash to those paid by a third-party payer.

*Category 2 Ohio*

14.    Produce all Documents containing information related to Communications between You and third-party Distributors related to Opioids including the following:

(a) All contracts and/or agreements and policies and practices between You and Cardinal, McKesson and/or any other outside vendors servicing Your pharmacies in Ohio relating to sales of Opioids, Opioid quotas or thresholds, due diligence investigations, reporting of suspicious orders and/or sales of Opioids to the DEA and/or other government authorities; and

*Category 1*

(b) All documents concerning suspicious order monitoring programs, policies, procedures or systems to prevent the diversion of Opioids, the investigation, review and/or due diligence concerning any order of an Opioid or Opioid Product placed by You to an outside Distributor or to be shipped from an outside vendor directly to You in Track 3.

*Category 1*

6

*Category 1*

15.     Please produce all *policies and procedures* and *training materials* regarding the proper dispensing of controlled substances and the identification, reporting, and dispensing of Opioid prescriptions which were potentially suspicious or related to diversion and/or not issued for a legitimate medical purpose.

*Category 2*
*Ohio*

16.     Please produce all records related to any prescriber that you refused to fill in Track 3 and/or each prescription you determined was doubtful, questionable, of suspicious origin, potentially related to diversion, and/or not issued for a legitimate medical purpose in Track 3.

*Category 1*
*Ohio*

17.     Please produce all documents in your possession, custody and/or control related to any physician engaged in diversion and or inappropriate prescribing of Opioids and "cocktail drugs" include in your response, but do not limit your response to, all documents related to the following prescribers:

- **Adolph Harper Jr.** (OH MD license #35.044503) formerly practicing medicine at 2569 Romig Rd, Akron, Summit County, OH.
- **Brian Heim** (OH MD license #35.071122) formerly practicing medicine at 3562 Ridge Park Drive Suite A, Akron, Summit County, OH.
- **Syed Jawed Akhtar-Zaidi** (OH MD license #35.068528) formerly practicing medicine at 34055 Solon Rd. 210, Solon, Cuyahoga County, OH.
- **Maged Fouad** (OH MD license #35.092644) formerly practicing medicine at 1934 Niles Cortland Rd. NE, STE B, Warren, Trumbull County, OH.
- **Jerome Yokiel** (OH MD license #35.059140) formerly practicing medicine at 3755 Orange Pl Ste 103, Beachwood, Cuyahoga County, OH.
- **Lorenzo Lalli** (OH MD license #35.055703) formerly practicing medicine at 18099 Lorain Ave Ste 312, Cleveland, Cuyahoga County, OH.
- **Frank Lazzerini** (OH MD license #35.092741) formerly practicing medicine at 7452 Fulton Dr. NW, Massillon, Stark County, OH.
- **Ronald Celeste** (OH MD license #35.066648) formerly practicing medicine at 29099 Health Campus Dr. 370, Westlake, Cuyahoga County, OH.
- **Christopher Stegawski** (OH MD license #35.044751) formerly practicing medicine at 4322 Airway Rd. Dayton, Montgomery County, OH.
- **Guang Yang** (OH MD license #35.088219) formerly practicing medicine at 2215 E Waterloo Rd. Ste 313, Akron, Summit County, OH.

- **James Bressi** (OH MD license #34.004592) formerly practicing medicine at 4302 Allen Rd. Suite 300, Stow, Summit County, OH.
- **Jerome Yokiel** (OH MD license #35.059140) formerly practicing medicine at 755 Orange PL Ste, 103, Beachwood, Ohio.
- **Reuben Gobezie** (OH MD license #35.088096) formerly practicing medicine at 9000 Mentor Ave 107, Mentor, Ohio.
- **James D'Ambrogio** (OH MD license #34.001861) formerly practicing medicine at 212 North Main St, Hubbard, Ohio.
- **Richard Hart** (OH MD license #35.056133) formerly practicing medicine at 213 Perkinswood NE, Warren, Ohio.
- **Frank Veres** (OH MD license #34.001609) formerly practicing medicine at 4861 Mahoning Ave NW, Warren, Ohio.
- **Genevieve Tryon** (OH RN license #APRN.CNP.03068) formerly practicing medicine at 1005 Oakwood Dr SE, Warren, Ohio.
- **Victor Georgescu** (PA MD license #MD417450) formerly practicing medicine at 2120 Likens Lane, Farrell, Pennsylvania.
- **Philip G Wagman** (PA MD license #MD045270E) formerly practicing medicine at 1712 Gretchen Road, New Castle, PA.
- **William Sonnenberg** (PA MD license #MD025681E) formerly practicing medicine at 119 E. Mechanic St, Titusville, PA.
- **Thomas Ranieri** (PA MD license #MD037844E) formerly practicing medicine at 3124 Wilmington Rd #305, New Castle, PA.
- **Thomas Wilkins** (PA Chiropractic license #AJ007143L) formerly practicing medicine at 2017 W State St, New Castle, PA.
- **Van Scott** (PA MD license #MD064157L) formerly practicing medicine at 214 Enclave Dr, New Castle, PA.

18. Please produce all documents related to any potential dispensing and/or prescribing and/or pharmacist misconduct you investigated or discovered in Track 3 and the investigation and corrective action you undertook.

*Category 2 Ohio*

19. Please produce all reports to the DEA and the Ohio Board of Pharmacy and any other government agency regarding pharmacies, employees, patients, prescribers, or others related to Opioid prescriptions that were potentially suspicious, related to diversion, and/or not issued for a legitimate medical purpose in Track 3.

*Category 2 Ohio*

8

20.    Please produce all documents reflecting Due Diligence (such as site visits, pharmacy questionnaires, threshold reviews, or other reports or dashboards) related to potentially suspicious conduct related to the dispensing of Opioids in Track 3, whether or not reported, including lists of prescribers, patients, pharmacies, or other individuals or entities on "do not fill" or "do not ship" lists.

*Category 2
< Ohio*

21.    Please produce all DEA Form 224 (New Pharmacy Registration), all DEA Form 224a ("Renewal of Pharmacy Registration"), all DEA Form 224b ("Affidavit for Renewal of Retail Chain Pharmacy Registration") and your DEA registration certificate for all pharmacies in Lake and Trumbull counties and all documents related thereto.

*Category 2
Lake
Trumbull*

22.    For each pharmacy you acquired in Track 3, produce all purchase agreements, evaluations of liabilities and evaluations related to that pharmacy's purchasing and dispensing of Opioids and any investigation into that pharmacy related to its handling of controlled substances.

*Category 2
Lake
Trumbull*

23.    Please produce all documents related to Your participation in pharmacy or prescription discount and/or savings cards or programs, including but not limited to certain Manufacturers' savings cards programs as well as Walgreens Prescription Saving Club Program, CVS Reduced RX, CVS ExtraCare Pharmacy & Health Rewards, Rite Aid Rx Savings Program as it concerns Opioid or Cocktail Drug prescriptions, and data created by or associated with such cards or programs.

*Category 1*

24.    Please produce all Documents and Communications with Pharmacy Benefit Managers (PBM), as it pertains to Opioids, buprenorphine-naloxone, and naltrexone in Ohio, concerning: (a) the inappropriate dispensing and/or prescribing of Opioids; (b) restricted benefit coverage; (c) formulary drugs; (d) fraud, waste, and abuse investigations and audits; (e) policies and procedures for handling prescriptions not approved by a customer's PBM.

*Category 2
Ohio*

9

25.    Please produce all Documents and Communications reflecting any policies and procedures You may have in place to ensure that Opioids are not dispensed to: (a) patients receiving treatment for Opioid addiction; (b) patients with histories of substance use disorder or Opioid overdoses; and/or (c) concurrent prescriptions or other drugs indicative of substance use disorder, including Documents and Communications concerning the sufficiency and implementation of such policies and procedures and the findings of any reviews You conducted.

26.    Please produce all Documents concerning or reflecting complaints, litigation, settlements, payments, enforcement or disciplinary actions related to Your distribution centers distributing Opioids to Ohio and/or Your pharmacies dispensing Opioids in Lake and Trumbull counties. These records shall include, but shall not be limited, to any civil complaints filed against You by any entity or person related to the dispensing of Opioids in Ohio.

### PHARMACY PERFORMANCE METRICS AND STAFFING

27.    Please produce documents sufficient to detail and describe the systems and programs in place to track prescriptions filled at each of Your stores including the amount of time it takes to fill each prescription, the "promised time" given to each patient, whether a consultation with a patient was conducted, the length of that consultation, whether any criteria or "Red Flags" were identified related to diversion or a non-legitimate medical purpose for the medication, whether any investigation was performed on any Opioid prescriptions and the amount of time taken to perform that investigation.  Include all documents and reports related to these issues at Your Track 3 pharmacies.

28.    Please produce documents sufficient to detail and describe the systems and programs in place to monitor pharmacist performance including the accuracy in filling prescriptions, the speed in which prescriptions are filled, whether "promised time" goals were met,

10

time calculations to review voicemails, administer flu shots, the number of patients signed up for automatic refills each month, bonus or performance review standards for pharmacists, as well as documents regarding any other duties or benchmarks pharmacists were required to perform in addition to filling prescriptions that would have been used to determine a determine a store's performance or a pharmacist's compensation.  Include all documents and reports related to these issues at Your Track 3 pharmacies.

29.     Please produce all Documents related to pharmacy staffing, dispensing incidents and errors, alert fatigue, and the issues described in December 15, 2016 Chicago Tribune article *Pharmacies Miss Half of Dangerous Drug Combinations* article, available at https://www.chicagotribune.com/investigations/ct-drug-interactions-pharmacy-met-20161214-story.html and the January 13, 2020 New York Times article, *How Chaos at Chain Pharmacies is Putting Patients at Risk* available at https://www.nytimes.com/2020/01/31/health/pharmacists-medication-errors.html.  Please include all Documents related to these or other similar articles, any related audits or investigations and any refinements or enhancements to Your systems.  Include all documents, data and/or statements provided to or created by Tata Consulting Services and information described in the February 21, 2020 New York Times article *At Walgreens, Complaints of Medication Errors Go Missing,* available at https://www.nytimes.com/2020/02/21/health/pharmacies-prescription-errors.html?searchResultPosition=1.  In addition, please produce all Documents related to investigations brought by the Ohio Board of Pharmacy for improperly dispensing Opioid medications and any complaints submitted by patients concerning staffing, medication errors and improperly filling prescriptions at Your stores in Track 3.

11

## OPIOID PRICING AGREEMENTS, THRESHOLDS AND QUOTAS

30.     Please produce all Documents relating to any joint venture, partnership, equity agreement or other agreement with any other entity or party pertaining to the supply, sourcing and/or pricing of Opioids, in Lake and Trumbull Counties. This includes, but is not limited to, contracts and agreements establishing or amending the venture, partnership and/or agreement; strategic or business plans, forecasts and reports regarding sales, revenue, volume, data, or profits related to the joint venture, partnership, and/or agreement; and reports to Your Directors and Officers regarding the joint venture, partnership and/or agreement.  Produce Documents or Communications sufficient to show the following on a monthly and yearly basis in Track 3: (a) costs incurred and projections for each Opioid Product You have dispensed; (b) cash flow for each Opioid Product You have dispensed; (c) profit for each Opioid Product You have dispensed; and (d) all rebates, discounts, guaranteed payments, or other benefits from manufacturers, distributors, or other entities, from the purchase and sales of Opioids.

## OPIOID NOTICE AND PROMOTION

31.     Please produce all Documents and communications or agreements from 1996 to the present with Opioid manufacturers and distributors related to the theft of Opioids, marketing, sale, promotion, adherence programs, dangers or medical efficacy of Opioids, training, or supply of Opioids with or without Cocktail Drugs, including without limitation Your utilization of continuing education or training programs provided or prepared by manufacturers, distributors, and/or trade organizations (e.g. National Association of Chain Pharmacies and Healthcare Distribution Alliance and Pain Care Forum), front groups (e.g. Partners Against Pain), key opinion leaders (e.g. Kenneth Jackson and Jennifer Bolen), or speaker bureaus[2].

---

[2] *See*, The County of Lake Supplemental and Amended Allegations to be added to Short Form for Supplementing Complaint and Amending Defendants and Jury Demand, ¶¶ 121-127, 457-461, 471-476;

12

32.    Please produce all Documents from 1996 to the present related to any of the following entities including but not limited to documents demonstrating your support of, participation with or funding, payment, reimbursement, or the giving of anything of value to the following entities:

*Category 1*

(a) American Academy of Pain Medicine;

(b) American Pain Society;

(c) American Pain Foundation;

(d) American Geriatrics Society;

(e) American Chronic Pain Association;

(f) American Society of Pain Educators;

(g) The National Pain Foundation;

(h) Pain and Policy Studies Group;

(i) Federation of State Medical Boards;

(j) American Society of Pain Management Nursing;

(k) Academy of Integrative Pain Management;

(l) U.S. Pain Foundation;

(m) Cancer Action Network;

(n) Washington Legal Foundation;

(o) The Center for Practical Bioethics;

(p) The Joint Commission;

(q) Pain Care Forum;

(r) Conrad & Associates;

---

The County of Trumbull Supplemental and Amended Allegations to be added to Short Form for Supplementing Complaint and Amending Defendants and Jury Demand, ¶¶ 120-126, 457-461, 471-476

(s) Manufacturer Defendant(s); and

(t) Any other organization known to You to have published, issued, or developed guidelines concerning pain management or Opioid use.

33.  Please produce all Documents regarding Your agreements with, membership in, attendance, participation, or involvement in any meeting, council, committee, task force, or working group of any industry trade group or association about the manufacture, development, formulation, marketing, advertising, sale, dispensing, reimbursement, pricing, distribution, Quotas or diversion of Opioids or Opioid Products or laws, rules or regulations or proposed laws, rules or regulations applying to Opioids or Opioid Products, including but not limited to:

(a)  Healthcare Distribution Management Association (HDMA);

(b)  Healthcare Distribution Alliance (HDA);

(c)  Pain Care Forum (PCF);

(d)  National Association of Chain Drug Stores (NACDS); and

(e)  Pharmaceutical Research and Manufacturers of America (PhRMA).

Dated: June 11, 2020

Respectfully Submitted,

LAKE COUNTY

TRUMBULL COUNTY

/s/ *Frank Gallucci*
Frank Gallucci (0072680)
**PLEVIN & GALLUCCI COMPANY, L.P.A**
55 Public Square Suite 2222
Cleveland, Ohio 44113
FGallucci@pglawyer.com

/s/ *Frank Gallucci*
Frank Gallucci (0072680)
**PLEVIN & GALLUCCI COMPANY, L.P.A**
55 Public Square Suite 2222
Cleveland, Ohio 44113
FGallucci@pglawyer.com

Hunter Shkolnik
Joseph L. Ciaccio
Salvatore C. Badala
**NAPOLI SHKOLNIK, PLLC**
400 Broadhollow Road – Suite 350
Melville, New York 11747

Hunter Shkolnik
Joseph L. Ciaccio
Salvatore C. Badala
**NAPOLI SHKOLNIK, PLLC**
400 Broadhollow Road – Suite 350
Melville, New York 11747

Leo M. Spellacy, Jr. (0067304)
**THRASHER DISMORE & DOLAN LPA**
1111 Superior Avenue, Suite 412
Cleveland, OH 44114
lspellacy@tddlaw.com

Leo M. Spellacy, Jr. (0067304)
**THRASHER DISMORE & DOLAN LPA**
1111 Superior Avenue, Suite 412
Cleveland, OH 44114
lspellacy@tddlaw.com

Scott Elliot Smith (003749)
**SCOTT ELLOT SMITH LPA**
5003 Horizons Dr. Ste. 200
Columbus, OH 43220
ses@sestriallaw.com

Scott Elliot Smith (003749)
**SCOTT ELLOT SMITH LPA**
5003 Horizons Dr. Ste. 200
Columbus, OH 43220
ses@sestriallaw.com

James A. Marinella, Esq (0073449)
**DEMER & MARNIELLA, LLC**
2 Berea Commons, Suite 200
Berea, OH 44017

Peter H. Weinberger (0022076)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue, Ste 1700
Cleveland, OH  44114
pweinberger@spanglaw.com
Plaintiffs' Liaison Counsel

15

## CERTIFICATE OF SERVICE

The foregoing document has been served via email only this 11th day of June, 2020 to the following:

Katherine M Swift, Esq.
Bartlit Beck
Courthouse Place
54 West Hubbard Street
Chicago, IL 60654
kate.swift@bartlitbeck.com

Eric Delinsky, Esq.
Zuckerman Spaeder
1800 M Street NW, Suite 1000
Washington,  Dc 20036-5807
edelinsky@zuckerman.com

Kelly A. Moore, Esq.
Morgan Lewis
101 Park Avenue
New York, NY  10178
Kelly.Moore@MorganLewis.com

Robert M. Barnes, Esq.
Marcus Shapira
One Oxford Centre, 35th Floor
Pittsburgh, PA  15219
rbarnes@marcus-shapira.com

Tara A. Fumerton, Esq.
Jones Day
77 West Wacker, Ste 3500
Chicago, IL  60601
tfumerton@JonesDay.com

*/s/Peter H. Weinberger*
Peter H. Weinberger
Plaintiffs' Liaison Counsel

16

# EXHIBIT
# 2

## 2020-11-17 CVS Additional Metrics Search Terms

 ("Backlog" or "Key Performance" or "patient care score" OR "Understaff*" or "Timely" or "alert fatigue" or "store health card" or wecare or "quality assurance" or "triage time" or "wait time" or "ready when promised" or "promise time" or "promised time" or "completion time" or "speed" or "Workload" or "adequate staffing") w/20 [METRICS DRUG BLOCK]

("Backlog" or "Key Performance" or "patient care score" OR "Understaff*" or "Timely" or "alert fatigue" or "store health card"  or wecare or "quality assurance" or "triage time" or "wait time" or "ready when promised" or "promise time" or "promised time" or "completion time" or "speed" or "Workload" or "adequate staffing") w/20 [CT3 STORE BLOCK] OR [CT3 GEOGRAPHIC BLOCK]

("Backlog" or "Key Performance" or "patient care score" OR "Understaff*" or "Timely" or "alert fatigue" or "store health card"  or wecare or "quality assurance" or "triage time" or "wait time" or "ready when promised" or "promise time" or "promised time" or "completion time" or "speed" or "Workload" or "adequate staffing") w/20 ([METRICS GENERAL TERMS] AND ("corresponding responsibility" OR [METRICS DRUG BLOCK] OR counseling OR investing* OR "red flag*" OR "due diligence" OR  ("professional practice" w/5 standard*) OR (policy OR policies OR procedure* OR protocol OR guidelines))

***

[METRICS DRUG BLOCK]:  opioid* OR opiate* OR C2 OR CII OR "schedule II" OR "schedule 2" OR "controlled drug*" OR "controlled substance*" OR "acute maintenance" OR "acute medication* OR narcotic* OR cocktail OR "pain med*"

[METRICS GENERAL TERMS]: ("Chicago Trib*" OR TRIBUNE OR "Pharmacies Miss Half of Dangerous Drug Combinations" OR "How Chaos at Chain Pharmacies is Putting Patients at Risk" OR "Tata" OR Audit* OR ("Ohio Board of Pharmacy" or "OH BOP") or "Adequate Staffing Rules for Pharmacists and pharmacies")

[METRIC STORE BLOCK]: (store OR CVS) w/5 (4351 OR 3326 OR 7686 OR 5941 OR 3304 OR 4606 OR 4327 OR 3044 OR 2486 OR 4348 OR 3356 OR 3305 OR 17388 OR 16484 OR 16644)

[CT3 GEOGRAPHIC BLOCK]: Lake OR Trumbull OR Willoughby OR Mentor OR Painesville OR Warren OR Hubbard OR Niles OR "North Madison" OR "N. Madison" OR "N Madison" OR Willowick OR Wickliffe OR Eastlake OR Kirtland OR Mentor-on-the-Lake OR "Willoughby Hills" OR Fairport Harbor OR Lakeline OR Perry OR "Grand River" OR Madison OR Timberlake OR "North Perry" OR "N. Perry" OR "N Perry" OR "Waite Hill" OR Concord OR Leroy OR Cortland OR Hubbard OR Girard OR Youngstown OR Lordstown OR McDonald OR "Newton Falls" OR Orangeville OR "West Farmington" OR "Yankee Lake" OR Bazetta OR Brookfield OR Greene OR Hubbard OR Mecca OR Vernon OR Bloomfield OR Champion OR Gustavus OR Johnston OR Mesopotamia OR Vienna OR Braceville OR Farmington OR Hartford OR Kinsman OR Newton OR Bristol OR Fowler OR Howland OR Liberty OR Southington OR Weathersfield

7500387.2
7513700.1
7532562.1
7545051.1