# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*The Track Three Cases* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## CVS AND WALGREENS' OBJECTION TO THE ORDER REGARDING FLORIDA DISPENSING DATA

CVS and Walgreens hereby object to the Special Master's Order Regarding Florida Dispensing Data (Doc. 3667) (hereinafter, the "Florida Data Order"). The order compels the production of Florida prescription data, produced in a Florida state-court suit brought by the Florida Attorney General, into the general MDL repository.

In compelling production of this data, the Florida Data Order recognized that the data contained protected health information. Doc. 3667 at 4. It simultaneously recognized that Discovery Ruling 22—the prior standing order on which it is based—states that "HIPAA-protected information" is exempt from production. *Id.* at 3. It further recognized that Plaintiffs did not even argue that the data met the Rule 26 standard for production required by this Court and the Sixth Circuit. *Id.* at 2. But it nevertheless compelled production.

Because prescription data has been produced not only in Florida, but also in other state-court opioid cases, the net effect of the ruling would be to create a repository of millions of protected patient health records for the myriad of private lawyers and law firms in the MDL (not to mention the private data analysts they have retained). It would create such a repository even though the standing order pertaining to state-court discovery exempts it, even though this Court

7683042.1

rejected plaintiffs' prior request to create such a repository, and even though the standard for production set forth in the Federal Rules of Civil Procedure has admittedly not been met.

For these reasons and those set forth below, CVS and Walgreens respectfully request that the Court overrule the Florida Data Order.

## BACKGROUND

Plaintiffs previously sought to compel the production of prescription data outside of Ohio, and this Court previously denied that motion. Doc. 3341. Noting the Sixth Circuit's decision to stay discovery of dispensing data outside of Ohio, and that court's subsequent holding that the proportionality of discovery must be measured by the "needs of the particular case," this Court declined to order production of data "untethered to the Track Three cases" and instead outlined the "appropriate procedure" moving forward if plaintiffs sought additional data. *Id.* at 4-5. This Court held that plaintiffs were required to propound discovery requests for such data, that the pharmacy defendants were to have the opportunity to object, and that the Special Master and the Court were then to rule on those objections "within the context of Track Three, applying Rule 26's relevance and proportionality requirements." *Id.* None of this ever happened, however, because plaintiffs chose not to pursue this procedure for data outside of Ohio.

Nevertheless, on March 14, 2021, after the fact discovery cut-off in Track 3, plaintiffs requested that the Special Master order CVS and Walgreens to produce into the MDL unrelated dispensing data that they had produced in a Florida state-court opioids case brought by the Florida Attorney General. *See* Exhibit A. Plaintiffs conceded that they did not seek the data under the terms of this Court's data order. *Id.* at 3 ("this dispute presents *not* a CT3 proportionality question, but a DR-22 question…"). And for good reason. Plaintiffs had failed to even commence the

2

7683042.1

procedure required by this Court.  They never even propounded a Track Three discovery request for data outside of Ohio.

Instead, in an attempted end run around this Court's order, plaintiffs argued for the Florida data pursuant to Discovery Ruling 22, arguing that it should be produced in the MDL simply because it already had been produced in another opioids case.

This marked a sea change.  Lawyers on the Plaintiffs' Executive Committee—as lead counsel not only in the MDL, but simultaneously for the plaintiff-counties in the New York state court litigation—sought and obtained dispensing data on behalf of the New York bellwether counties more than one year ago.  The PEC never even suggested that the New York dispensing data should be reproduced into the MDL, perhaps recognizing that such data contained HIPAA-protected information and thus was excluded from DR-22.

CVS and Walgreens timely opposed plaintiffs' request for Florida dispensing data.  *See* Exhibit B.  They explained that plaintiffs failed to comply with this Court's order on requests for dispensing data.  They further explained that Discovery Ruling 22 expressly exempted discovery that contained protected health information.  Doc. 2712 at 2.  In doing so, CVS and Walgreens outlined the fields in the Florida data that, by the plain terms of HIPAA regulations, contain protected health information.

Nevertheless, on March 30, 2021, the Special Master ruled for plaintiffs.  CVS and Walgreens timely filed this objection.  *See* Doc. 69 ¶ D ("any party may file an objection to an order . . . within 21 calendar days").  Exhibits A to D contain all of the letter briefs submitted to the Special Master.

**ARGUMENT**

The Florida Data Order must be overruled for three independent reasons.

*First*, this Court previously outlined the process plaintiffs needed to follow to seek dispensing data "untethered" to Track Three and the Rule 26 showing plaintiffs would have to make to obtain such data—namely, that it is relevant and proportional to the particular case being litigated. Doc. No. 3341. Plaintiffs failed to meet these terms. In fact, they admitted that they were not even attempting to meet these terms. *See* Exhibit A ("this dispute presents *not* a CT3 proportionality question, but a DR-22 question…"). The Special Master confirmed this. *See* Doc. 3667 at 2 n.1 ("the Court has not been presented with arguments regarding the relevance … of Florida dispensing data in the Track Three cases"). The Special Master therefore did not find— nor could he have found—that plaintiffs had met the standard for obtaining additional dispensing data set by this Court and Rule 26. The Florida Data Order therefore violates both.

*Second*, the production of Florida dispensing data is separately and independently precluded by the plain terms of Discovery Ruling 22. Discovery Ruling 22 expressly excludes from production "any discovery provided to a government entity that contains HIPAA-protected information." Doc. 2712 at 2. For each of the many millions of prescription records produced in the Florida case, the data contains such protected information. Specifically, it contains:

(1) the patient's full zip code—45 CFR §164.514(b)(2)(i)(B);

(2) the date of the prescription, and the date it was filled—45 CFR § 164.514(b)(2)(i)(C);

--and--

(3) the unique identifying number assigned to each prescription by each pharmacy—45 CFR § 164.514(b)(2)(i)(R).

4

7683042.1

The Special Master agreed that the Florida data contained PHI.  Doc. 3667 at 4 ("The Special Master notes that the Florida dispensing data is 'Protected Health Information[.]'").  That should have ended the inquiry, given that Discovery Ruling 22 expressly exempts discovery "that contains HIPAA-protected information."  Doc. 2712 at 2.

But instead, the Florida Data Order compelled production based on a determination that such an order would not *violate* HIPAA.  In doing so, the Florida Data Order attempted to alter Discovery Ruling 22 *sub silentio*.  The issue under the plain terms of Discovery Ruling 22 simply is whether information is "HIPAA-protected," *not* whether an order requiring its disclosure would violate HIPAA.  And this makes perfect sense—when material is so intensely local that it contains the private health information of local residents, it falls far outside the universe of discovery that may achieve efficiencies for litigants across all other jurisdictions.  In any event, the plain terms of Discovery Ruling 22 say what they say, and the Special Master had no basis to rewrite them.  There is no dispute that the Florida dispensing data contains HIPAA-protected information.  Under Discovery Ruling 22's plain terms, it therefore is not subject to production.

*Finally*, the Florida Data Order violates HIPAA.  The net result of the order would be to build a repository—accessible to scores of private attorneys, private law firms, and private consultants—of protected patient health data from throughout the country.  Defendants have produced dispensing data not only in Florida, but also in cases in New York, Massachusetts, Pennsylvania, and California.  Soon defendants will produce dispensing data in other states as well.  Especially given the absence of any showing that such data would be relevant and proportional to any case outside the one in which it was produced, this violates not only Rule 26, but also the principle in HIPAA that disclosure of protected health information be limited "to the minimum necessary to accomplish the intended purpose."  45 C.F.R. § 164.502(b).  The Florida

5

Data Order—requiring production of data to a broad swath of litigants who have demonstrated no Rule 26 entitlement to it in their respective cases—is far from the "the minimum necessary."

Noting that Ohio data already has been produced, the Florida Data Order states that production of Florida data to scores of attorneys and law firms makes it "no more likely" that individual information may be identified.  Doc. 3667 at 3.  Aside from ignoring the basic HIPAA principle that disclosure be limited to "the minimum necessary," this attempt to minimize the intrusions and risks here is misplaced.  The risks of identification are well established.  *See, e.g.*, Brief of the American Civil Liberties Union at 14 n. 10, 11 & accompanying text, *In re CVS Pharmacy, Inc.,* No. 20-3075, 2020 WL 736023 (6th Cir Jan. 24, 2020); Stuart A. Thompson and Charlie Warze, *Twelve Million Phones, One Dataset, Zero Privacy*, N.Y. Times (Dec. 19, 2019); Boris Lubarsky, *Re-Identification of "Anonymized" Data*, 1 GEO. L. TECH. REV. 202, 212 (2017). The more data produced, the greater those risks become.

In keeping with not only HIPAA but also the ACLU's position, any order compelling the production of prescription data in the MDL should be "narrowly tailored" to account for the privacy interests at stake.  Brief of the American Civil Liberties Union at 1.  Because the Florida Data Order compels production of prescription data untethered to any active case in the MDL in contravention of the requirements for discovery set out in Rule 26, and because it would indiscriminately make that data accessible to countless attorneys, law firms and consultants, the order does not come close to meeting this standard.

\*\*\*

For the foregoing reasons, the Florida Data Order should be overruled.

Dated:  April 16, 2021  Respectfully submitted,

/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Pharmacy, Inc.*

/s/    Kaspar Stoffelmayr
Kaspar Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlitbeck.com
E-mail: kate.swift@bartlitbeck.com

*Attorneys for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co.*

7683042.1

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record on April 16, 2021.

/s/ Eric R. Delinsky  
Eric R. Delinsky