# EXHIBIT A

MotleyRice LLC
ATTORNEYS AT LAW
www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

401 9th St. NW, Suite 1001
Washington, DC 20004
**o.** 202.232.5504   **f.** 202.232.5513

**David I. Ackerman**
*Licensed in DC, NJ, NY*
direct:  202.849.4962
dackerman@motleyrice.com

March 14, 2021

**_VIA EMAIL_**

Special Master David Cohen
2400 Chagrin Boulevard, Suite 300
Cleveland, OH 44122
david@specialmaster.law

Re:     *In re National Prescription Opioid Litigation*, Case No. 17-md-2804
               Dispute regarding Defendants' Production of Florida Dispensing Data

Dear Special Master Cohen,

We write on behalf of both Plaintiffs in CT3 and all MDL Plaintiffs concerning the CVS and Walgreens Defendants' violation of DR-22 (Dkt. 2576, 2712, 3291, 3333) in refusing to produce dispensing data that a Florida state court has ordered them to produce in *State of Florida v. Purdue Pharma L.P. et al.*, No. 2018-CA-001438 (Fl. Cir. Ct., Pasco Cty.) (Nov. 20, 2020—Walgreens Order) (copy attached).[1] Counsel for Plaintiffs and CVS have conferred regarding this issue and confirmed the parties are at impasse.

The Florida court ordered Defendants to produce dispensing data for 39 listed drugs covering 54 data fields for the period from 1996 to the present. *See id.* at 2 and App's 1-2. We are advised that Defendants have produced the dispensing data described in the Order. This clearly meets the definition of "documents and discovery that [Defendants] produce in any court case," DR-22 (Dkt. 2576) at 4, which Defendants are required to produce in this MDL.

The Florida dispensing data is highly relevant both to the MDL cases generally and specifically to the CT3 cases, which makes its production time-sensitive. As the Special Master is aware, the CT3 Plaintiffs (like many other Plaintiffs in this MDL) allege that "pill migration," *i.e.*, the movement of opioids Defendants dispensed in high-supply areas like Florida to high-demand areas like Ohio, contributed substantially to the opioid epidemic in Plaintiffs' communities:

> When authorities in states such as Ohio and Kentucky cracked down on opioid suppliers, out-of-state suppliers filled the gaps. Florida in particular assumed a prominent role, as its lack of regulatory oversight created a fertile ground for pill mills. Residents of Ohio and other states would simply drive to Florida, stock up on pills from a pill mill, and transport them back to home to sell. The practice became so common that authorities dubbed these individuals 'prescription tourists.'

---

[1] Although the attached Order relates only to Walgreens, Plaintiffs' understanding is that CVS has also produced dispensing data in the Florida litigation. Indeed, counsel for CVS participated in the meet-and-confer on this issue and has been Plaintiffs' primary point of contact with respect to this dispute.

MT. PLEASANT, SC | PROVIDENCE, RI | HARTFORD, CT | NEW YORK, NY | WASHINGTON, DC
MORGANTOWN, WV | CHARLESTON, WV | NEW ORLEANS, LA | KANSAS CITY, MO

Special Master David Cohen
March 14, 2021
Re: Dispute regarding Defendants' Production of Florida Dispensing Data
Page 2

Lake County Suppl. and Amended Allegations (Dkt. 3294-1), ¶ 547; *see also id.*, ¶ 551 ("The route from Florida and Georgia to Kentucky, Ohio, and West Virginia was so well traveled that it became known as the Blue Highway, a reference to the color of the 30mg Roxicodone pills manufactured by Mallinckrodt."); *see also* Order Denying Motion to Exclude Gruber (Dkt. 2531) at 8-9 and n.3 ("An example of the 'transshipment problem' has been referred to colloquially as the 'Blue Highway,' referring to opioids originally shipped to Florida that were then purchased and transferred north to other States."). Defendants' Florida dispensing data thus is both required to be produced under DR-22 and highly relevant to the CT3 Plaintiffs' claims.

Defendants offer three arguments against production, none of which is correct. *First*, they claim that the dispensing data contains personal health information and thus is exempt from disclosure under DR-22. *See* Amendment to DR-22 (Dkt. 2712) at 2 ("Pharmacy Defendants are not obligated by DR-22 to produce in the MDL any discovery provided to a government entity that contains HIPAA-protected information."). But this material is not exempt from disclosure. The Florida court-ordered data fields do not include patient-identifying information like name, street address, or Social Security number. *See* Walgreens Order at App. 1. Moreover, the Florida court addressed any HIPAA concerns as to the State's requests by ordering redaction of narrative inputs for three fields—patient counseling, relationship of person picking up prescription to patient, and prescription consult activity. *See id.* at 2 and App. 1, Fields 40, 43, 44.

Defendants may argue that the separate field of "Patient DOB year (or age)," Field 31, is HIPAA-protected. Judge Polster has already rejected this argument. *See* Feb. 13, 2020 Op. and Order (Dkt. 3170) at 3 ("When viewed in the set of data fields to be produced, production of birth year or age does not risk patient privacy."). And that decision is consistent with HIPAA regulations, which do not require redaction of a person's birth year. *See* 45 C.F.R. § 164.514(b)(2)(i)(C) (requiring "remov[al]" of "[a]ll elements of dates (*except year*) directly related to an individual . . .") (emphasis added). The data fields the Florida court ordered produced are not HIPAA-protected and substantially overlap with fields this Court has likewise ordered to be produced with respect to Ohio dispensing data.

*Second*, Defendants contend that the Sixth Circuit's April 2020 decision granting their petition for writ of mandamus on issues pertaining to complaint amendments, *see In re Nat'l Prescr. Opiate Litig.: In re CVS Pharm, Inc.*, 956 F.3d 838 (6th Cir. 2020), bars this Court from requiring production of their Florida dispensing data. It does not. The Sixth Circuit held that its ruling on amendment rendered Defendants' petition as to other issues, including the scope of discovery, moot. *See id.* at 846 ("That relief renders the petition moot as to the other grounds on which the Pharmacies sought relief—namely, that the district court refused to adjudicate their motions to dismiss, and that the court had ordered nationwide discovery of prescription data in a case where the parties could use very little of that data."). Judge Polster similarly found: "The Sixth Circuit did not reach the merits regarding the relevance and proportionality of the nationwide dispensing discovery the MDL Court ordered in Track One-B." *See* June 17, 2020 Order (Dkt. 3341) at 4.

Moreover, in commenting on this issue, the Sixth Circuit recognized that Rule 26's requirement of proportionality as to the needs of a particular case "does not prevent the MDL court from creating efficiencies in the MDL generally; to the contrary, presumably the very reason the cases were transferred to the MDL court in the first place is that the needs of some cases are the same as those of many others." 956 F.3d at 846. It was precisely this recognition that Judge Polster seized upon in affirming the Special Master's rejection of Defendants' motion to vacate DR-22 in its entirety after remand from the Sixth Circuit. *See* June 15, 2020 Op. and Order (Dkt. 3333) at 3 ("Moreover, the Court finds nothing in the Sixth Circuit's mandamus ruling that mandates vacating DR 22. . . . Discovery Ruling 22 . . . undoubtedly promotes efficiency by requiring Defendants to reproduce in the MDL documents and information they already have produced elsewhere. Furthermore, the key word is '**re**-produce' – the information that DR 22 requires

Special Master David Cohen
March 14, 2021
Re: Dispute regarding Defendants' Production of Florida Dispensing Data
Page 3

Defendants to produce in the MDL is discovery that Defendants have already located, collected, filtered for privilege, and produced elsewhere.  The burden imposed by DR 22 is virtually zero."); *see also id.* at 4 ("Nothing in DR 22 is inconsistent with these objectives or with the Sixth Circuit's guidance; it remains an effective and appropriate order."). Defendants' arguments for resisting production of the Florida dispensing data under DR-22 thus are nothing more than an impermissible attempt to revisit the Special Master's and Judge Polster's Orders that should be rejected.

Nor *should* DR-22 be revisited. As the Special Master recognized in rejecting Defendants' motion to vacate:

> [I]t is simply wrong to contend the *Repository Orders* fail to create efficiencies or avoid duplication, or that they require production of documents that 'do not have broad relevance to cases in the MDL.' These conclusory assertions are belied by the procedural and substantive history of this case (and related state court cases). Indeed, it is obvious that defendants have faced far fewer total discovery requests from far fewer total parties by virtue of the Repository; and plaintiffs in this court and other courts across the country have engaged in generous sharing of precisely the information required by the *Repository Orders* because it is broadly relevant.

*Nunc Pro Tunc* Order Regarding Requested Modifications to Discovery Ruling No. 22 (Dkt. 3291) at 4-5. The Special Master undoubtedly is correct. Repository orders like DR-22 further the objectives of MDL consolidation to "promote the fair and efficient conduct" of cases presenting common fact questions, 28 U.S.C. § 1407(a), by leveling the playing field for plaintiffs in affording them access to the same discovery related to their common claims, and by streamlining defendants' discovery obligations in eliminating the need to answer duplicate requests for the same information.

*Third*, Defendants contend that Judge Polster's subsequent Order denying Plaintiffs' motion for production of nationwide dispensing data precludes Plaintiffs from obtaining the Florida dispensing data. It does not. Judge Polster denied the CT3 Plaintiffs leave to take nationwide dispensing discovery as "premature" based on the fact that a motion to dismiss was then pending. *See* June 17, 2020 Order (Dkt. 3341) at 4. He further observed that if the CT3 Plaintiffs pursued the nationwide discovery and Defendants resisted, the Special Master and the Court "will have an opportunity to rule on these specific objections within the context of Track Three, applying Rule 26's relevance and proportionality requirements." *Id.* at 4-5.

That proportionality determination is not implicated here, however, because the Florida dispensing data already is ordered to be produced in another case. That is why this dispute presents *not* a CT3 proportionality question, but a DR-22 question where the Court already has recognized that the burden on Defendants is "virtually zero" because it involves "discovery that Defendants have already located, collected, filtered for privilege, and produced elsewhere." Dkt. 3333 at 3. Since the DR-22 discovery at issue is both clearly producible under prior Court orders and would impose little or no burden on Defendants, the Special Master should order Defendants to produce the Florida dispensing data in the MDL immediately.

Respectfully,

/s/ *David I. Ackerman*

David I. Ackerman

cc: All counsel of record

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA

STATE OF FLORIDA, OFFICE OF THE
ATTORNEY GENERAL, DEPARTMENT
OF LEGAL AFFAIRS,

    Plaintiff,

v.

Case No. 2018-CA-001438

PURDUE PHARMA L.P.,
PURDUE PHARMA, INC., THE
PURDUE FREDERICK COMPANY, INC.,
ENDO HEALTH SOLUTIONS INC.,
ENDO PHARMACEUTICALS INC.,
JANSSEN PHARMACEUTICALS, INC.,
JOHNSON & JOHNSON, CEPHALON, INC.,
TEVA PHARMACEUTICALS USA, INC.,
ALLERGAN FINANCE, LLC,
ACTAVIS PHARMA, INC., ACTAVIS LLC,
INSYS THERAPEUTICS, INC.,
AMERISOURCEBERGEN DRUG
CORPORATION, CARDINAL HEALTH,
INC., MCKESSON CORPORATION,
MALLINCKRODT LLC, WALGREEN CO.,
CVS HEALTH CORPORATION, and
CVS PHARMACY, INC.,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AMENDED FIRST MOTION TO COMPEL DIRECTED TO WALGREEN CO.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND SECOND SET OF REQUESTS FOR PRODUCTION**

**THIS CAUSE** is before the Court on Plaintiff's Amended First Motion to Compel Directed to Walgreen Co.'s Objections and Responses to Plaintiff's First Set of Interrogatories and Second Set of Requests for Production, filed October 13, 2020 ("Plaintiff's Motion"). Upon consideration of the parties' briefing, status reports, and arguments held on October 27, 2020, and November 10, 2020, it is hereby

**ORDERED AND ADJUDGED:**

1. Plaintiff's Motion is **GRANTED IN PART, AND DENIED IN PART**, as follows. Walgreen Co. ("Walgreens") is hereby ordered to produce dispensing data for (a) the data fields listed in Appendix 1 to this Order, (b) the drugs listed in Appendix 2 to this Order, and (c) for the time period 1996 to present, subject to the following: Walgreens shall redact the content of all narrative inputs in fields 40, 43, and 44 in Appendix 1.

2. Walgreens shall produce the dispensing data within 90 days of the entry of this Order.

3. Walgreens shall provide a Status Report to the Court by November 24, 2020, with an update on the status of its efforts to produce the dispensing data.

**DONE AND ORDERED** in Chambers at New Port Richey, Pasco County, Florida, this 20th day of Nov, 2020.

Honorable Kimberly Sharpe Byrd
Circuit Court Judge

Copy to R. Frank Melton, II, Esq. who will provide all counsel with copies via email.

## APPENDIX 1

|     | Plaintiff's Dispensing Data Field Requests to Walgreens |
| --- | --- |
| 1   | Drug name |
| 2   | NDC number |
| 3   | Date filled |
| 4   | Quantity dispensed |
| 5   | Dosage form |
| 6   | Days' supply |
| 7   | Prescriber's name |
| 8   | Prescriber's DEA number |
| 9   | Dispensing pharmacist |
| 10  | Patient's zip code |
| 11  | Patient ID # (Unique ID) |
| 12  | Quantity prescribed |
| 13  | Number of refills authorized (if any) |
| 14  | Diagnostic code |
| 15  | Method of payment |
| 16  | Patient paid amount |
| 17  | Whether prescription covered by third-party payer |
| 18  | Control / Non-Control ratio |
| 19  | Pharmacy DEA # |
| 20  | Pharmacy Store # |
| 21  | Pharmacy address (at the zip code level or finer) |
| 22  | Prescriber address (at the zip code level or finer) |
| 23  | Prescription date written |
| 24  | Refill indicator (whether the Rx is a refill or the original) |
| 25  | Prescriber specialty |
| 26  | Rejection indicator (whether the pharmacy rejected to fill) |
| 27  | Prescriber's NPI number |
| 28  | Patient DOB year (or age) |
| 29  | DEA override |
| 30  | DEA schedule (same as control/non-control) |
| 31  | Dispense Hour |
| 32  | Dispense Minute |
| 33  | Drop Off Hour |
| 34  | Drop Off Minute |
| 35  | Prescription number |
| 36  | Drug price (the regular sale price without markup or discount) |

3

| 37 | Cost of drug to the pharmacy |
|---|---|
| 38 | Amount charged to third-party payer |
| 39 | Medicaid payment |
| 40 | All data fields related to patient counseling, including but not limited to whether counseling was required, requested, and/or provided |
| 41 | Identification type for person picking up |
| 42 | Issuing authority of ID for person picking up |
| 43 | Relationship of person picking up prescription to patient (e.g., patient, parent/legal guardian, spouse, caregiver, mail order, etc.) |
| 44 | All data fields related to prescription consult activity, including but not limited to consult request comments, consult resolution comments, and prescription comments |
| 45 | Partial fill indicator |
| 47 | Dispensing as written indicator |
| 49 | Prescriber license status |
| 50 | State prescriber licensed in |
| 52 | Prescription image available indicator |
| 58 | Identification of person verifying fill of controlled substance |
| 60 | Name of pharmacist who filled prescription |
| 61 | Indicator whether drug was compounded |
| 70 | Indicator or data sufficient to show that pharmacist complied with Fla. Stat. § 465.026 in filling or refilling transferred prescription |
| 71 | Indicator whether only controlled substances were prescribed for patient |

## APPENDIX 2

| | Plaintiff's Requested Drug List to CVS for Dispensing Data | |
|---|---|---|
| | **Drug Category** | **Base Drug** |
| 1 | Benzodiazepines | alprazolam |
| 2 | Benzodiazepines | chlordiazepoxide |
| 3 | Benzodiazepines | clobazam |
| 4 | Benzodiazepines | clonazepam |
| 5 | Benzodiazepines | clorazepate |
| 6 | Benzodiazepines | diazepam |
| 7 | Benzodiazepines | estazolam |
| 8 | Benzodiazepines | flurazepam |
| 9 | Benzodiazepines | lorazepam |
| 10 | Benzodiazepines | midazolam |
| 11 | Benzodiazepines | oxazepam |
| 12 | Benzodiazepines | quazepam |
| 13 | Benzodiazepines | temazepam |
| 14 | Benzodiazepines | triazolam |
| 15 | Muscle relaxers | carisoprodol |
| 16 | Muscle relaxers | cyclobenzaprine |
| 17 | Muscle relaxers | orphenadrine |
| 18 | Muscle relaxers | tizanidine |
| 19 | Opioid | codeine |
| 20 | Opioid | dihydrocodeine |
| 21 | Opioid | fentanyl |
| 22 | Opioid | hydrocodone |
| 23 | Opioid | hydromorphone |
| 24 | Opioid | levorphanol |
| 25 | Opioid | meperidine |
| 26 | Opioid | morphine |
| 27 | Opioid | opium |
| 28 | Opioid | oxycodone |
| 29 | Opioid | oxymorphone |
| 30 | Opioid | tapentadol |
| 31 | Opioid | buprenorphine |
| 32 | Opioid | methadone |
| 33 | Opioid Treatment | naloxone |
| 34 | Sleep aid | eszopiclone |
| 35 | Sleep aid | ramelteon |
| 36 | Sleep aid | suvorexant |

| 37 | Sleep aid | trazodone |
|----|-----------|-----------|
| 38 | Sleep aid | zaleplon |
| 39 | Sleep aid | zolpidem tartrate |