**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: "*All Cases*" | ) ) ) ) ) ) ) ) ) | **_CORRECTED_** **_ORDER SETTING DEADLINES_** **_RE: DISCOVERY RULING NO. 22_** **ORDER GRANTING MOTIONS TO COMPEL AND FOR SANCTIONS** |

The Special Master and the Court have issued numerous rulings addressing *Discovery Ruling No. 22* ("DR-22"), which generally requires "Defendants to produce in this MDL, on an ongoing basis, certain discovery that they are required to produce in other matters, including 'any [other] court case, government investigation, or government hearing, regarding the marketing, sales, distribution, or dispensing of Opioids or Opioid Products.'" Docket no. 2576 at 4. *See* docket nos. 2712, 3178, 3291, & 3333 (each clarifying or applying DR-22); *see also* CMO-1 at 15, ¶9.k.ii (docket no. 232) (initially setting out this obligation), and *Discovery Ruling No. 2* at 6 (docket no. 693) (discussing, early in the MDL, the scope of this provision from CMO-1).

With these Orders, the Court has rejected all attempts by Defendants to read DR-22 narrowly. Thus, the most recent Order from the undersigned applying DR-22 overruled Defendants' objection to producing, to the MDL Repository, prescription dispensing data that Defendants had

produced in Florida State court: the Court made clear that DR-22 "appl[ies] to dispensing data as much as any other discovery." Docket no. 3667 at 2 (objection pending). The undersigned stated once again that the cardinal precept animating DR-22 is that the burden of "***re***-production of discovery already produced" in other fora "is virtually zero." *Id.* at 4 (quoting docket no. 3333 at 3). This compares with an obviously more-than-zero level of relevance and benefit of opioid-related discovery to every MDL opioid case.[1]

The latest issue regarding DR-22 comes in the context of two motions to compel and for sanctions. The Special Master addresses these motions below.

**First Motion to Compel**

In the first motion, Plaintiffs assert Walmart produced certain documents in an opioid case pending in Massachusetts State court, but did not produce them in the MDL (and has refused to do so). These documents include: (1) PowerPoint presentations to the Department of Justice, which was investigating Walmart's opioid-related conduct, (2) a nationwide listing of Blanket Refusals to Fill, and (3) a nationwide listing of Blocked Prescribers.[2]

---

[1] Of course, some of the discovery produced in an opioid-related matter outside of the MDL may have less relevance to a *particular* MDL bellwether case chosen for trial; but that outside discovery still nearly always has more than "virtually zero" relevance to a particular bellwether trial case, and certainly is highly relevant to numerous MDL cases.

[2] *See* First Letter from James Cecchi *et al* to Special Master at 1-2 (April 1, 2021); Second Letter from James Cecchi *et al* to Special Master at 1-2 (April 10, 2021). If an ***individual pharmacist*** has concerns about a doctor's opioid prescribing practices, the pharmacist may refuse to fill all of that doctor's opioid prescriptions – this is a "Blanket Refusal to Fill." In comparison, a Pharmacy Defendant may place a "corporate block" prohibiting ***all of its pharmacists*** from filling a doctor's opioid prescriptions – this doctor is then a "Blocked Prescriber."

Regarding the PowerPoint presentations, Walmart responds it earlier stated to Plaintiffs it was not producing the documents in Track Three discovery, because they were protected by Fed. R. Evid. 408 & 410; and Plaintiffs did not object to non-production. The biggest problem with this response is that Walmart made this statement to Plaintiffs on January 28, 2021, but it had produced the PowerPoint presentations in the Massachusetts litigation four weeks earlier, on December 30, 2020.³ Thus, the overriding obligation set out in DR-22 to produce the PowerPoint presentations to the MDL Repository had already ripened fully at the time Walmart objected to production in Track Three.  What is more, Plaintiffs only learned Walmart had produced the PowerPoint presentations on March 26, 2021, when counsel for Springfield, Massachusetts (a non-MDL plaintiff) introduced them at a 30(b)(6) deposition of Walmart corporate representative, Susanne Hiland.⁴ Had Plaintiffs known the truth about the December 30th production, they would surely have challenged Walmart's January 28th objection.

Regarding the nationwide lists, Walmart responds the lists "comprise data specific to jurisdictions outside of Ohio that have no nexus to the Track 3 counties."⁵ Walmart points to other discovery rulings limiting the geographic scope of discovery to less-than-nationwide, and contends it is "interpreting and applying [DR-22] consistent with these prior rulings."⁶ The biggest problem

---

³ *See* First Letter from Tara Fumerton to Special Master at 3 (April 9, 2020).

⁴ Springfield's counsel questioned Walmart 30(b)(6) witness Hiland pursuant to a cross-notice of deposition ***after*** the MDL Plaintiffs had finished their own questioning.  It is certain that Plaintiffs' questioning of Hiland would have been meaningfully different had Walmart timely produced the PowerPoint presentations and other Massachusetts discovery to the MDL Repository, as required.

⁵ First Fumerton letter at 3.

⁶ *Id.*

with this response is that Walmart's parsimonious interpretations are fully ***inconsistent*** with the plain wording of DR-22 and its animating logic.

The Special Master now makes what was clear even more clear: DR-22 pre-exists and trumps every other one of the Court's discovery rulings. If a Defendant produces discovery in another opioid-related forum, that Defendant must ***promptly*** produce those discovery materials to the MDL Repository – **meaning within one week.** This includes discovery that the MDL Court itself did not order must be produced. Thus, for example, if a Defendant produces discovery in a State court action (including over objection), it is of no moment that the MDL Court earlier ruled (explicitly or inferentially) that the Defendant need not produce the same or related discovery in a bellwether case. The MDL Court's ruling, when made, necessarily involved weighing "whether the burden or expense of the proposed discovery outweighs its likely benefit" in the context of a specific case. Fed. R. Civ. P. 26(b)(1). But, to repeat, if a Defendant later produces opioid-related discovery in another forum, the calculus as to that discovery becomes dramatically different because **the burden of *re*-production is virtually zero**. Thus, once Walmart produced its national Blanket Refusal and Blocked Prescriber lists in the Massachusetts litigation, it is essentially irrelevant that the MDL Court earlier agreed Walmart could limit the geographic scope of similar discovery in Track Three to Ohio.[7] The new weighing, and the plain language of DR-22, require prompt production to the

---

[7] To address what appears to be another nascent, related discovery dispute, the Special Master adds that the instant order does ***not*** address the opioid-prescription dispensing data produced by Walmart to the Department of Justice ("DOJ"). The Special Master earlier stated this data must be addressed separately, with separate briefing. *See* discovery hearing transcript at 38 (Jan. 21, 2021). This is in part because it is unclear the extent to which the data produced to DOJ contains fields that would allow identification of the patient who received the prescription – which is not the case with the Florida data, *see* docket no. 3677 at 3 ("The end result is that no person who obtains the data will learn what medications any identifiable individual has received.").

MDL Repository.[8]

Accordingly, the first motion to compel is granted.  Walmart must produce to the MDL Repository all documents it produced in the Massachusetts case *within five calendar days of the date of this Order*.

**Second Motion to Compel**

In their second motion, Plaintiffs assert Walmart produced certain documents in three cases pending in Delaware State court, but did not produce them in the MDL (and has refused to do so). Unlike the Massachusetts case discussed above, where the claims are highly similar to those in MDL cases – that is, a municipality claiming Defendants' opioid manufacturing, distribution, and dispensing failures caused various harms, including a public nuisance – the three Delaware cases are shareholder lawsuits seeking inspection of Walmart corporate records.

Still, the essence of each Delaware action is that the shareholder-plaintiff "demand[s] to inspect the books and records of Walmart" *because* plaintiff suspects "corporate misconduct" stemming from the "lack[] [of] legally-required controls designed to flag and stop the diversion of opioid prescriptions into illicit channels prior to 2011, in direct violation of the Controlled Substances Act and its implementing regulations."[9] The story each Delaware complaint tells, begins: "As shown below, the publicly known facts about Walmart's role in spreading and worsening America's opioid crisis provide more than the minimally requisite

---

[8] Beyond these reasons, the Court has also earlier explained the efficiency-related justifications for DR-22.  *See* docket no. 3291 at 4-5; docket no. 3333 at 2.

[9] *Ontario Provincial Council of Carpenters' Pension Trust Fund v. Walmart, Inc.*, Complaint at ¶¶1, 2(a).

'credible basis' to infer potential fiduciary misconduct warranting a Section 220 investigation of Walmart's books and records."[10]  The content of nearly every substantive allegation thereafter in the Delaware complaints could be (and probably is) also set forth in the MDL Track Three complaint.

The Delaware court found plaintiffs' demand was proper and ordered Walmart to produce certain documents, including: (1) "policies, procedures, and manuals concerning Walmart's dispensing and self-distribution of opioids;" (2) "documents related to the Company's Opioid Stewardship program;" and (3) "Board-level Materials relating to Walmart's self-distribution and dispensing of controlled substances."[11]  It is beyond argument that this discovery is related to core issues in this MDL.  Indeed, that the Delaware lawsuits have a close nexus to this MDL is most clearly demonstrated by the State court further ordering Walmart to produce the "materials cited in the Opioid MDL by United States District Judge Polster in his two summary judgment rulings concerning Walmart's motions for summary judgment."[12]

After the Delaware court ruled, Plaintiffs asked Walmart to adhere to DR-22 and produce the Delaware discovery to the MDL Repository.  Walmart refused, saying the Delaware lawsuits are not "proceedings 'regarding the marketing, sales, distribution, or dispensing of Opioids or Opioid Products.'"[13]  Rather, asserts Walmart, "[t]he primary issues in the [Delaware] actions were the shareholders' desire for records concerning potential governance failures and/or potential corporate

---

[10]  *Id.* at ¶7.

[11]  *Id.*, Order at ¶2.a.

[12]  *Id.*, Order at ¶2.c.iii.

[13]  Second Letter from Tara Fumerton to Special Master at 3 (April 15, 2020).

mismanagement by Walmart's board of directors and senior management."[14]

Walmart's argument is not even colorable. The "primary issue" in the Delaware actions is Walmart's "potential governance failures and/or potential corporate mismanagement" ***regarding the distribution and dispensing of opioids.*** The Delaware lawsuits do not address abstract mismanagement in the ether. Walmart observes that "[n]early all of the documents" it produced in the Delaware lawsuits "have already been produced in the MDL," apparently trying to suggest there is no need for Walmart now to re-produce them in the MDL again.[15] What this observation highlights most distinctly, however, is that the Delaware cases therefore ***must be*** related to distribution and dispensing of opioids. Documents produced in those cases that were not already produced in the MDL now must be.

In June of 2018, Defendants undertook their first attempt to cabin the scope of their obligation to produce documents from other fora into the MDL Repository, arguing ¶9.k.ii of CMO-1 did "not obligate[] [them] to produce in the MDL prior productions made in private ('non-governmental') litigation." Docket no. 693 at 6. The undersigned squarely rejected this argument, stating: "If a defendant produced discovery in ***any prior litigation that involved the marketing or distribution of opioids***, that discovery must be produced in the MDL." *Id.* (emphasis added). Thus, Defendants' obligation has been set forth with clear language for three years, and the Court has rejected each attempt since by Defendants to suggest the obligation should be constrained. It is clear the Delaware lawsuits involve "the marketing, sales, distribution, or dispensing of Opioids

---

[14] *Id.* at 2.

[15] *Id.*

or Opioid Products." Docket no. 2576 at 4.[16] Walmart's contortions trying to characterize the Delaware lawsuits as something else are in vain.

Accordingly, the second motion to compel is also granted. Walmart must produce the Delaware documents to the MDL Repository *within five calendar days of the date of this Order.*[17]

**Sanctions**

Put simply, there was and is no valid basis for Walmart's refusal to produce the Massachusetts and Delaware discovery materials to the MDL Repository. Walmart was clearly required to do so by ¶9.k.ii of CMO-1 and DR-22, as explained and clarified by all of the other related orders cited above. Walmart's excuses for not timely producing this discovery require convoluted or illogical understandings of the Court's clear and repeated messages to the parties. It is vexatious for Walmart to reach and pretend to see exceptions where none exist, and then use these phantom exceptions as a means to delay or avoid complying with clear Court Orders.

Plaintiffs assert that, "[h]ad Walmart produced [the Massachusetts discovery] as required by

---

[16] While the Special Master allowed that "defendants need not produce discovery of prior productions made in cases, such as patent litigation, that only tangentially address[] marketing and distribution of opioids," docket no. 693 at 6, the present circumstance is in no way analogous.

[17] Walmart's discovery production in the three Delaware books-and-records **State**-court cases apparently led to a Delaware **federal** lawsuit: "In February 2021, a Walmart shareholder filed a derivative action in the United States District Court for the District of Delaware. The shareholder-derivative action stems from alleged breaches of fiduciary duty due to a supposed failure by a majority of the Board of Directors to engage in proper oversight [of opioid distribution and dispensing]. No discovery (including production of documents) has occurred in that case." Second Fumerton Letter at 3. Because no discovery has occurred in that federal case, DR-22 is not (yet) implicated. The Special Master notes, however, that defendant McKesson was also named as a defendant in a similar shareholder-derivative action in California federal court, and McKesson produced to the MDL Repository discovery from that California action. It is extremely likely the same obligation will adhere to Walmart.

court order, Plaintiffs could have avoided hours of duplicative testimony and identified additional discovery from the refusal to fill lists."[18] As sanction, Plaintiffs ask for additional 30(b)(6) deposition time, re-opening of other depositions to ask about the non-produced documents, new depositions of additional witnesses, and a fine of $10 per page of non-produced discovery.[19] Plaintiffs add that, to remedy Walmart's non-production of the Delaware discovery, the Court should also allow "an extension of time to serve affirmative expert reports."[20]

Walmart argues sanctions are inappropriate because: (1) it did not engage in discovery misconduct; (2) even if it did engage in discovery misconduct, it was not willful; (3) Plaintiffs have not suffered prejudice; (4) Plaintiffs did not meet and confer with Walmart before seeking sanctions; and (5) the requested sanctions are merely a forced mechanism to extend the expired fact discovery deadline.

All of these contentions are incorrect. Especially with respect to the Massachusetts discovery, including the PowerPoint presentations and the national Blanket Refusal and Blocked Prescriber lists, Walmart chose deliberately not to produce material that clearly fell within the purview of DR-22. Even after the revelation at the March 26, 2020 Hiland deposition that Walmart had produced the PowerPoint presentations and other documents in the Massachusetts case three months earlier, Walmart still maintains the PowerPoint presentations need not be produced in the MDL. But Walmart's reliance on Plaintiffs' purported acceptance of the Rule 408- and 410-based objection to production is utterly untenable; once Plaintiffs learned the truth about the production

---

[18] Second Cecchi letter at 2.

[19] First Cecchi letter at 3.

[20] Third Letter from James Cecchi *et al* to Special Master at 1 (April 9, 2021).

of the documents, Plaintiffs immediately moved to compel their production and for sanctions.

As for prejudice, as Plaintiffs note, "[w]hat took two hours to develop during [Walmart's] 30(b)(6) deposition (which [the Special Master] attended) could have been accomplished in a few minutes had [the 2/27/19 PowerPoint presentation] been produced prior to the deposition."[21] Moreover, on October 5, 2020, when requesting the documents that had recently been ordered by the Delaware court, Plaintiffs informed Walmart that those documents would guide them in selecting deponents in Track Three.[22] Given how clear it is that Walmart was required to produce the Massachusetts and Delaware materials – and given that, even now, Walmart refuses to do so – Walmart cannot take shelter behind the "meet and confer" requirement of Local Rule 37.1(a)(1).[23] And if the prejudice to Plaintiffs can only be cured through allowing additional discovery, that is not tantamount to a deadline contrivance.

In sum, the Special Master agrees with Plaintiffs that Walmart's failure to timely produce the Massachusetts and Delaware discovery to the MDL Repository deserves sanction. *See Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999) ("In order to impose sanctions under Rule 37, there must be an order compelling discovery, a willful violation of that order, and prejudice to the

---

[21] Second Cecchi letter at 1.

[22] *See* Third Cecchi letter, exh. 3 (October 5, 2020 email from Linda Singer to Tara Fumerton, *et al*) ("We believe that the documents that are the subject of the [Delaware] Court's order will be relevant to the selection of deponents and the taking of depositions in CT3, and ask that you expedite production of these documents pursuant to DR22.").

[23] Further, over the last three years, Plaintiffs have repeatedly raised with all Defendants during prior "meet and confers" their obligations under DR-22.

other party.").[24] That said, the Special Master agrees with Walmart that many of the sanctions requested by Plaintiffs exceed what is appropriate or necessary. The Special Master concludes that, to mitigate the prejudice to Plaintiffs, and also in order to deter similar conduct,[25] the following remedies are the minimum necessary and also sufficient, and shall be imposed pursuant to Fed. R. Civ. P. 37(b)(2)(C) and 30(d)(2):

- Plaintiffs may depose Walmart's 30(b)(6) witness (Ms. Hiland) for an additional 1.5 hours, at Walmart's cost,[26] to take place as soon as reasonably possible. Questioning will be limited to information contained in the Massachusetts and Delaware documents.

- Plaintiffs may depose, for 1.5 hours each, two additional fact witnesses of Plaintiffs' choosing, at Walmart's cost,[27] to take place as soon as reasonably possible. These witnesses may be individuals whom Plaintiffs already deposed, or new witnesses. Questioning will

---

[24] *See also Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997) (setting out a four-factor test regarding whether to impose sanctions: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in the discovery; (3) whether the party was warned that failure to cooperate could lead to the sanction; and (4) whether less drastic sanctions were first imposed or considered). All prongs are met here. The Special Master has warned all parties several times during discovery conferences that discovery failures can and will lead to sanction, and has considered whether lesser sanctions would be sufficient in this particular context.

[25] *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (sanctions are meant "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but [also] to deter those who might be tempted to such conduct in the absence of such a deterrent").

[26] Walmart shall pay any costs associated with the deposition (e.g. cost of the court reporter), as well as attorney fees for a single plaintiffs' attorney to question the witness. *See Wheatt v. City of E. Cleveland*, 2017 WL 5483148, at *4 (N.D. Ohio Nov. 15, 2017) (ordering "Defendants to pay [as a sanction] the court reporter and transcript costs of this deposition, as well as Plaintiffs' reasonable attorneys' fees incurred taking this deposition").

[27] *See* footnote 26; the same rules apply.

be limited to information contained in the Massachusetts and Delaware documents.[28]

- There will be no deadline extension for submission of expert reports. However, on or before May 21, 2021, Plaintiffs' experts may (if appropriate) submit a short addendum to their reports based only on information obtained from the Massachusetts and Delaware documents and the above-listed additional depositions. The deadline for deposition of Plaintiffs' experts will not be extended, nor will the deadline for Defendants' expert reports.

No other sanction will be allowed.

Finally, the Special Master notes that any failures in the future by any party to produce materials pursuant to DR-22 will be addressed sternly, including with possible imposition of serious monetary fines. The requirements set out by DR-22 are clear and the parties may not seek to avoid them with sharp interpretations or strained limitations, as Walmart has done here.

**Objections**

Any party choosing to object to any aspect of this Ruling must do so on or before April 23, 2020. The filing of an objection by Walmart will *not* postpone the deadline for Walmart to produce the Massachusetts and Delaware documents to the MDL Repository within five calendar days of the date of this Order. A successful objection may, however, support claw-back of those documents.

**IT IS SO ORDERED.**

/s/ *David R. Cohen*
**DAVID R. COHEN**
**SPECIAL MASTER**

**Dated:** April 16, 2021

---

[28] If requested, the Special Master will attend the three listed depositions.