UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Cases* | ) CASE NO. 1:17-MD-2804<br>)<br>) Hon. Dan Aaron Polster<br>)<br>)<br>)<br>) |

**OPPOSITION TO CERTAIN DEFENDANTS' OBJECTION
TO THE PROTECTIVE ORDER PERMITTING
THE SHARING OF CONFIDENTIAL MDL NON-DISPENSING DATA DISCOVERY
WITH THE ATTORNEYS GENERAL OF HAWAII, MICHIGAN AND MISSISSIPPI**

Certain Pharmacy Defendants[1] object to an Order (Doc. 3666) from the Special Master denying them a protective order regarding the sharing of confidential MDL discovery with the Attorneys General of Hawaii, Michigan, and Mississippi ("the Requesting AGs") under Case Management Order No. 2 ("CMO 2"). Defendants contend that this information should not be shared with the Requesting AGs because these Defendants are not parties to any litigation with the Requesting AGs and the Requesting AGs have not demonstrated that they need the discovery for any law enforcement purpose or other "legitimate need." But the Special Master correctly found that under the plain language of CMO 2, MDL discovery may be shared with the Requesting AGs. Defendants ignore that the burden is on them to demonstrate that they will be harmed in some way by the disclosure of this MDL information to the Requesting AGs, and they have failed to meet this burden. For this reason, the Court should overrule Defendants' objection and confirm that this information may be shared with the Requesting AGs pursuant to CMO 2.

---

[1] The objection is brought by Giant Eagle, Rite Aid and Kroger. Walmart and Walgreens joined in these Defendants' briefing before the Special Master and also submitted separate letters on a related issue which the Special Master's Order covers. Walmart and Walgreens have not objected to the Special Master's Order or joined in this objection.

**BACKGROUND**

Defendants object to the Special Master's Order which granted in part Defendants' request for an order prohibiting Plaintiffs from sharing the Defendants' Ohio dispensing data and other MDL discovery with the Requesting AGs. The Special Master prohibited the sharing of the Ohio dispensing data. Doc. 3666 at 8-9. However, the Special Master allowed the disclosure of Confidential and Highly Confidential Information other than dispensing data. *Id*. at 4-8. The Special Master found that sub-paragraphs 33.j and 34.h of CMO 2 allow the sharing of this MDL discovery. *Id*. at 7-8. Paragraphs 33.j and 34.h permit the release of Confidential Information (33.j) and Highly Confidential Information (34.h) to "State or federal law enforcement agencies, but only after such persons have completed the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound." Doc. 441 at ¶¶ 33.j, 34.h. "The plain language of these sub-paragraphs allow Plaintiffs to share confidential information with the three AGs." Doc. 3666 at 7-8.

**LEGAL STANDARD**

Defendants' request for a protective order is governed by Rule 26(c) of the Federal Rules of Civil Procedure. CMO 2 states that none of the "documents or information designated as Confidential or Highly Confidential by counsel or the parties is subject to protection under Rule 26(c) … or otherwise until" the Court specifically rules it as such. *See* Doc. #441 at ¶ 85. Subparagraphs 33.j and 34.h enable the party which has designated the discovery Confidential or Highly Confidential to object to the disclosure and "seek a protective order from the Court." *Id.* at ¶¶ 33.j, 34.h.

Under Rule 26(c), a court may, "for good cause," issue a protective order to "[a] party or any person from whom discovery is sought," to prevent "annoyance, embarrassment, oppression, or undue burden or expense." The party seeking the protective order bears the burden of

establishing that there is good cause for the protective order. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. May 24, 2001) (citing *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)). "To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)). The movant must establish annoyance, embarrassment, oppression, or undue burden or expense "with a particularized and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004)).

## ARGUMENT

Defendants raise several challenges to the Special Master's ruling. They contend that the Requesting AGs have not established that they are exercising a law enforcement "function" —a term that nowhere appears in CMO 2—in connection with their receipt of this discovery or demonstrated that they have any legitimate need for the information. Obj. at 2, 6. But these arguments improperly attempt to shift the burden to the Requesting AGs and insert conditions that do not exist in CMO 2. Defendants also argue that the Special Master incorrectly "retroactively modified" CMO 2 to allow this information to be shared outside the MDL to the Requesting AGs even though the Requesting AGs do not have MDL cases and have not sued these particular Defendants. Obj. at 2-5. This Court should reject these arguments because the Special Master properly read the CMO to ensure that the law enforcement clause was not rendered meaningless. Moreover, MDL discovery has been shared routinely with state attorneys general throughout this litigation, who need it to be able to effectively collaborate and communicate with each other regarding global resolution of this and related litigation.

3

**I.  Defendants are Incorrectly Attempting to Shift the Burden to the Requesting AGs to Fulfill Requirements that do not Exist in CMO 2.**

Defendants improperly attempt to shift the burden to the Requesting AGs.  By arguing that the Requesting AGs have not shown that they are exercising a law enforcement function or that they have a "legitimate need" for the discovery, Defendants are attempting to add a relevance requirement to the CMO where none exists, and in contravention of Rule 26(c) governing protective orders.  The Court should not allow non-existent and misleading bases to prevent the sharing of MDL discovery.

Defendants do not dispute that the Requesting AGs qualify as "State … law enforcement agencies" who have completed the necessary certification.  There is nothing in the plain language of paragraphs 33.j and 34.h, or anywhere else in CMO 2, that requires state law enforcement agencies to demonstrate that they are exercising a law enforcement function when they request or obtain the MDL discovery.  Because Attorneys General are the chief law enforcement officers of their states,[2] these sections of CMO 2 acknowledge that this information can be disclosed to them.  As the Special Master correctly found, "[s]ub-paragraphs 33.j and 34.h … do not limit sharing of confidential MDL discovery only to circumstances where the law enforcement agency is 'exercising law enforcement authority.'" Doc. 3666 at 7.  "Moreover, this Court is not in a position to ascertain or second-guess whether a State AG is actually or intending to exercise law enforcement authority or instead only considering whether to pursue a civil lawsuit." *Id*.

There is nothing in the CMO requiring a state law enforcement agency to demonstrate a "legitimate need" for, or why it needs, the information.  Indeed, the words "legitimate need" do

---

[2] *See, e.g., Amemiya v. Sapienza*, 63 Haw. 424, 424, 629 P.2d 1126, 1127 (1981) (acknowledging attorney general's role as the state's chief law enforcement officer); *Shirvell v. Dep't of Att'y Gen.*, 308 Mich. App. 702, 758, 866 N.W.2d 478, 510 (2015) (same); *Smith v. Hood*, 238 So. 3d 1125, 1127–28 (Miss. 2018) (same).

not appear in CMO 2.  Again, Defendants attempt to introduce into CMO 2, and paragraphs 33 and 34 specifically, prerequisites that simply do not exist.  *See* Obj. at 6.  Similarly, CMO 2 does not command that AGs prove how much business a particular defendant has conducted in a certain jurisdiction in order for already produced documents to be shared.  And CMO 2 does not demand that an AG's office (or any other law enforcement agency) have a case pending in the MDL in order to receive MDL discovery.  *See* Obj. at 4.  In fact, Paragraphs 33.j and 34.h of CMO 2 do not require that *any* litigation be filed by an AG.

Rather, there is a presumption in paragraphs 33 and 34 that the MDL discovery can be shared with the entities and persons listed in the subparagraphs, unless, in some circumstances, defendants make a showing of harm.  The plain language of paragraphs 33 and 34 permits disclosure, with subparagraphs 33.j and 34.h authorizing the party which has designated the discovery Confidential or Highly Confidential to object to the disclosure and then "seek a protective order from the Court."  Doc. 441, ¶¶ 33.j, 34.h.  Simply marking something as confidential does not establish that the information is confidential, or that a party is harmed by its release.  *See* Doc. 441 at ¶ 85.  Thus, when Defendants state, "there is no legitimate reason for the Requesting AGs to receive such confidential information" (Obj. at 2), they are creating a burden on the Requesting AGs that does not come from CMO 2 or Rule 26(c).  Instead, subparagraphs 33.j and 34.h create an exception to automatic disclosure by which the Defendants can object and seek a protective order.  In doing so, Defendants must demonstrate the harm they will suffer from the sharing of the MDL discovery at issue.

Here, Defendants have not even attempted to show how they would be harmed.  They have provided no evidence or argument to establish how "disclosure will work a clearly defined and serious injury." *Nix*, 11 F. App'x at 500.  Defendants' failure to provide such information is fatal,

particularly when, as here, the disclosure at issue requires nothing more from Defendants. The Requesting AGs are not seeking any new discovery, and Defendants do not need to do anything with the discovery in terms of review or reproduction. Meanwhile, the release is limited to the Requesting AGs who: (a) have executed the certification to be bound by CMO 2; (b) will not be sharing the information other than permitted by CMO 2; and (c) will use the information consistent with CMO 2. Defendants have not met their burden to show good cause under Rule 26(c).

## II. The Plain Language of CMO 2 Allows the MDL Discovery to be Shared with the Requesting AGs.

The Special Master correctly found that the plain language of CMO 2 permits MDL discovery to be shared with the Requesting AGs. Subparagraphs 33.j and 34.h explicitly allow disclosure of this information to "State or federal law enforcement agencies." Doc. 441 at ¶¶ 33.j, 34.h. Those paragraphs specifically permit the sharing of MDL discovery with state law enforcement agencies like the Requesting AGs.

Defendants contend that the Special Master improperly amended CMO 2 retroactively. Obj. at 2-3. To the contrary, the Special Master appropriately interpreted subsections 33.j and 34.h to ensure they were not rendered meaningless. Paragraph 34 states that all of the exceptions in sub-paragraphs 34(a)-(k), except for 34.j, require that the "Highly Confidential Information . . . shall be used solely for purposes of this Litigation"[3] and paragraph 33 requires the same for Confidential Information, except for sub-paragraph 33.l. Doc. 441 at ¶¶ 33, 34. However, as the Special Master correctly noted, subparagraphs 33.j and 34.h would be rendering meaningless if they were limited to "law enforcement agencies" only using the MDL discovery for the MDL litigation because such entities do not need 33.j and 34.h to access the discovery at issue. Doc. 3666 at 8 n.5 ("by definition, there is no *outside* 'state or federal law enforcement agency' that *is*

---

[3] "The Litigation" is defined to include only cases in the MDL. Doc. 441, ¶ 2.

6

a part of the MDL, and a law enforcement agency that is an arm of an MDL Plaintiff does not need sub-paragraphs 34.h [and 33.j] to obtain discovery access) (emphasis in original). "For sub-paragraph 34.h to make sense, then, it must be excepted along with 34.j. Analogously, for sub-paragraph 33.j to make sense, it must be excepted along with 33.l." *Id.*[4]

This interpretation is consistent with the well-established principle that agreements, including agreements that a Court enters as an order, must be construed so that no provision is rendered meaningless. *See, e.g.*, *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 807 F.2d 1433, 1438 (8th Cir. 1986) ("In analyzing [agreed-to court] order, we apply ordinary rules of construction. The order should be viewed as a whole, and an interpretation that gives effect to all parts of the order will be preferred over one that leaves portions of the order meaningless or insignificant."); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 363 (6th Cir. 2014) ("a contract must be construed in its entirety and in a manner that does not leave any phrase meaningless or surplusage.") (cit. om.); *Bank of New York Mellon Tr. Co. Nat'l Ass'n v. BCC Sandusky Permanent, LLC*, No. 3:16 CV 393, 2016 WL 10592225, at *1 (N.D. Ohio Dec. 29, 2016) (in interpreting agreements courts "must give effect to all of their provisions and should avoid—if possible—any interpretation that would render one of those provisions meaningless."); *Mohawk Rubber Co. v. United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO*, 462 F. Supp. 993, 1003 (N.D. Ohio 1978) ("The clause in question must either be interpreted as the Court did in its original Order, or as being meaningless. It is a

---

[4] Moreover, subparagraphs 33.l and 34.j apply to **claimants** (not law enforcement agencies) with litigation pending outside the MDL, and that is what invokes those paragraphs' requirement that the Producing Party be a defendant in that litigation. *See* Doc. 441 at ¶¶ 33.l, 34.j. Defendants also contend that "the law enforcement provisions in the CMO are for the MDL parties' benefit only" (Obj. at 5) even though the CMO says nothing of the kind and includes paragraphs which allow for disclosure outside the MDL, provided that the recipient agrees to be bound by the CMO.

cardinal rule of construction that a court should not 'adopt an interpretation' which will operate to leave a 'provision of a contract . . . without force and effect.'") (cit. om.).

Defendants argue that the Special Master's reasoning that law enforcement agencies which are "an arm of an MDL Plaintiff" do not need to use CMO 2's law enforcement provisions "makes no sense" because "many law enforcement agencies are not part of a Plaintiff and would need to utilize" the law enforcement provisions from 33.j and 34.h. Obj. at 5. But they do not identify what kinds of law enforcement agencies would fall under such an exception or how the MDL discovery would be used by them "for purposes of this Litigation." Indeed, no federal law enforcement agency is part of the MDL, and the parties' practices thus far – until these Defendants objected – was to share this information with state AGs. *See* Ex. A (March 2021 email chain identifying AGs provided with MDL discovery and dates of notification regarding same) at 1-2. The parties have clearly understood that the law enforcement provisions of 33.j and 34.h mean that MDL discovery can be shared with state AGs whether or not they have a case pending against a specific Defendants in their state court cases.[5]

There are obviously good reasons for the Requesting AGs to have access to this MDL discovery even if they have not sued a particular Defendant or a specific Defendant has not done business in that state. As the Special Master and this Court are aware, state AGs from across the country have worked together on the opioid litigation, as they frequently do on a number of issues.

---

[5] Defendants also contend that the Special Master should have applied the same reasoning to the MDL discovery that he used to find that the Requesting AGs were not entitled to receive the Ohio dispensing data. Obj. at 3-4. Defendants' argument ignores that this data includes Protected Health Information which is governed by a completely separate section of the CMO. Doc. 3666 at 8 (citing Doc. 441 at ¶¶ 72, 75); *see also id.* at 9 ("Unlike paragraphs 33 and 34, there are no exceptions regarding disclosure of Protected Health Information to entities who are not parties in the MDL.").

8

This has included taking the lead, often at defendants' request, in negotiating with them.  The participation of the AGs has primarily been collective, and not on a state-by-state basis.  The Requesting AGs, along with the other AGs, cannot practically and efficiently collaborate and communicate with each other when they do not all have equal access to information.

For example, if there were specific documents that the AGs were discussing, it would be impractical and unwieldy for some of the AGs to be able to view and discuss such documents while others would have to leave the room or drop off a call.  The MDL discovery often contains information that has significance beyond any particular Defendant – such as guidance from the DEA, evidence of concerted marketing or lobbying through trade associations, data sources such as the nationwide IQVIA data produced by Allergan in Track 1, and Defendants' conduct in other states (which is valuable due to nationwide policies, comparisons of action/inaction, etc.).  If MDL discovery could only be shared on a Defendant-by-Defendant basis, AGs would not have access to (and would not know they were missing) information of broader import. As a result, certain AGs, including the Requesting AGs, would be disadvantaged in not having the same information and the efforts of all the AGs would be affected.  Moreover, the ongoing collaboration and communication among the AGs would suffer.  The process necessitates that all AGs have equal access to the MDL discovery, so long as the AGs agree to be bound by CMO 2, regardless of whether or not a particular Defendant has been sued in any particular jurisdiction.[6]

---

[6] In addition, the AGs are working collectively on settlement discussions with defendants in the Litigation.  This provides a separate basis for sharing the information, even if this Court were to rule that paragraphs 33.j and 34.h require the information be shared for use in the MDL Litigation.

**CONCLUSION AND REQUEST FOR RELIEF**

For the foregoing reasons, this Court should overrule Defendants' objection to the Special Master's Order regarding sharing MDL discovery with the Requesting AGs, and should rule that MDL discovery can be shared with state AGs under the law enforcement provisions of CMO 2.

Dated: April 27, 2021

RESPECTUFLLY SUBMITTED:

/s/Mark P. Pifko
Mark P. Pifko
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Los Angeles, CA 91436
(818) 839-2333
mpifko@baronbudd.com

Jennifer Fountain Connolly
BARON & BUDD, P.C.
600 New Hampshire Ave. NW, 10th Floor
Washington, DC 20037
(202) 333-4562
jconnolly@baronbudd.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

/s/Mark P. Pifko
Mark P. Pifko