UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Track Three Cases* | MDL 2804<br><br>CASE NO. 1:17-MD-2804<br><br>SPECIAL MASTER COHEN<br><br>**ORDER GRANTING IN PART DEFENDANTS' REQUEST TO COMPEL PRODUCTION FROM CMS** |

Pharmacy Defendants seek an order compelling the Centers for Medicare & Medicaid Services ("CMS") to produce certain documents demanded in a June 18, 2020 subpoena. Specifically, the Pharmacy Defendants seek the following two sets of documents:

- **"The Formularies Data":** "All documents regarding coverage of Prescription Opioids under Medicaid and/or Medicare, and/or the placement of Prescription Opioids on Medicaid and/or Medicare drug formularies, either alone or in combination with benzodiazepines and/or muscle relaxers (including, but not limited to, any limitations on coverage for treatment that (a) includes a combination of opioids, benzodiazepines, and/or muscle relaxers within a given time period; or (b) based on quantity or dosage limits)."

- **"The Claims Data":** "All documents regarding volume of Prescription Opioids, either alone or in combination with benzodiazepines and/or muscle relaxers, paid for in whole or in part under Medicaid and/or Medicare, including, but not limited to, information sufficient to show such volume on [an] annual basis at both the state and county level."

For the reasons and to the extent set forth below: (1) the motion to compel is **GRANTED** with regard to the Formularies Data; and (2) CMS is **ORDERED** to provide the Pharmacy Defendants with an estimate of the *actual costs* (defined below) of producing the Claims Data **within seven calendar days of the date of this Order**.

I. **The Formularies Data.**

On April 14, 2021, CMS explained it is in the process of producing the Formularies Data, including certain drug files the relevance of which CMS had previously questioned. CMS estimated that production of this data would be complete on or before April 23, 2021. To the extent not already completed, CMS shall promptly provide the Formularies Data to the Pharmacy Defendants.

II. **The Claims Data.**

CMS does not object that the Claims Data sought by Defendants is not relevant, but CMS does object to production without compensation. CMS points to its long-existing, pre-set fee schedule, which it says applies to all requests for medical data from third parties – including academic institutions, non-profit foundations, and even other federal agencies – and insists the cost for the requested Claims Data will be $130,000.[1] CMS says it will produce the data only if Defendants pay the pre-set fee.

Defendants object this amount is too high and goes beyond what is allowed in the context of a litigation subpoena (as opposed to, say, an academic request), which is governed by Fed. R. Civ. P. 45. Defendants observe the $130,000 fee includes costs that would not strictly "result from compliance" with the subpoena. For example, CMS admits its $130,000 figure includes allocation of fixed-overhead costs to operate and maintain its data storage system. CMS asserts that "expense[s] resulting from compliance may include the costs of maintaining a system specifically designed to accommodate requests of the type made by the plaintiffs, among others."[2] The

---

[1] CMS calculates the requested fee is by applying its "retail pricing" as follows: (1) Defendants' data request encompasses about 2 million beneficiaries over 13 years; (2) the normal fee is $10,000 per year for data containing between 1 and 5 million beneficiaries; (3) accordingly, the total retail cost is 13 x $10,000 = $130,000.
[2] April 5, 2021 CMS Letter at 3.

Pharmacy Defendants, however, argue the quoted price does not reflect the *actual cost* to comply with the subpoena, which is all that Rule 45 allows.

The Special Master agrees with Defendants that CMS's insistence it be paid $130,000 before it will comply with the subpoena is unsupported by law.

Rule 45(d)(2)(B)(ii) states that, if a court orders a non-party to comply with a subpoena, the court's order "must protect [the non-party] from significant expense ***resulting from compliance***." (Emphasis added). The Sixth Circuit Court of Appeals has applied this language to "disallow[] those [costs] that [the non-party] had ***not*** shown were reasonable or resulted from their compliance with the subpoenas." *In re: Mod. Plastics Corp.*, 890 F.3d 244, 253 (6th Cir. 2018) (emphasis added). Other courts are also careful to impose upon the requesting party only those costs related directly to the third party's compliance with the subpoena. *See United States v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014) ("First, courts must determine what counts as an 'expense.' The touchstone is whether the expense 'result[s] from compliance' with the court's order compelling production.") (quoting Fed. R. Civ. P. 45(d)(2)(B)(ii)) (internal citation omitted); *G & E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 316 (D.D.C. 2016) ("It is critical, therefore, that only expenses that result from, and therefore, are caused by, the order of compliance are potentially compensable").[3]

---

[3] CMS cites *Brewster v. City of Los Angeles,* 2019 WL 6620505 (C.D. Cal. Sept. 5, 2019), as an example where a court ordered the requesting party to pay the fixed-overhead cost of data storage maintenance and not just the variable, additional, job-specific cost of data extraction and production. This case is distinguishable, however, as the computer system from which data was requested in *Brewster* had the ***primary purpose*** of responding to litigation-related requests, and the California legislature specifically set fees to reimburse the Department of Motor Vehicles for those costs.

The other case CMS cites, *Linglong Americas, Inc. v. Horizon Tire, Inc.*, 2018 WL 1631341 (N.D. Ohio 2018), is more on point, and actually supports Defendants' position. In *Linglong*, Judge Nugent agreed that costs for "data processing, time spent searching for records custodians, querying collections of electronic records, and reviewing the results" should be reimbursed – but not "overhead" costs for data storage and maintenance. April 14, 2021 CMS Letter at 2 (citing *Linglong* at *8-10).

The Special Master agrees with CMS that reimbursement is appropriate for some of the data production costs it recites, such as employees' and contractors' time for supplying technical assistance, data extraction, data de-identification, and data export.[4] But CMS also seeks reimbursement for "use of CMS's data storage and management systems as well as a CMS mainframe computer."[5] Reimbursement for these fixed-cost elements necessary for CMS's normal operation is not appropriate. Defendants correctly note that "[s]toring and maintaining Medicare claims data is essential to CMS's function and would be done independent of subpoenas from Pharmacy Defendants or any other party."[6] Therefore, fixed-overhead costs associated with normal data storage and maintenance do not "result from compliance" with the subpoena.

CMS also argues that whether the cost of producing the Claims Data can be shifted to the Pharmacy Defendants "is not ripe for adjudication until . . . the costs of production can be reliably estimated."[7] But CMS understands the parameters of Defendants' request enough to estimate the number of hours its employees and a contractor will need to spend to fill it.[8] Courts have mandated estimates in similar circumstances.[9] Of course, the actual cost may ultimately vary somewhat from a good-faith estimate; but as it stands, CMS's demand for $130,000 is not an estimate at all of what it will *actually cost* to respond to the subpoena. Defendants are entitled to that estimate before deciding whether to proceed.

---

[4] *See* April 14, 2021 CMS Letter at 5 ("CMS estimates that the Extraction and Export phases will require approximately nineteen hours from CMS contractors, including three hours by a project manager, twelve hours by systems analysts, and four hours by a developer. * * * CMS further estimates that these two phases will require approximately three hours from CMS employees. . . .").
[5] *Id*.
[6] March 29, 2021 Defendants' Letter at 5. *See also id*. ("the data is stored and maintained [on CMS's computers] so that CMS can carry out the functions it is required to carry out by law, not for purposes of the Pharmacy defendants' subpoena").
[7] April 14, 2021 CMS Letter at 2.
[8] *Id.* at 4–5.
[9] *See, e.g.*, *U.S. v. Blue Cross Blue Shield of Michigan*, 2012 WL 4513600, at *8 (E.D. Mich. Oct. 1, 2012) (ordering hospitals to provide "a detailed estimate of the reasonable costs that will be incurred as a consequence of their compliance with Plaintiff's subpoenas").

All of that said, CMS does make a simple, reasonable, threshold request: Defendants have asked about the cost for different variations of Claims Data productions, and have not yet *clearly* landed on "the final parameters" of exactly what Claims Data they want.[10] Accordingly, Defendants must clearly set forth for CMS what Claims Data they seek, and CMS must then set forth the actual costs that will result from compliance, in accord with the principles stated above. Defendants can then determine whether to proceed.[11]

Pharmacy Defendants shall ensure counsel for CMS receives a copy of this Order.

**IT IS SO ORDERED.**

                                                      /s/ David R. Cohen
                                                      **DAVID R. COHEN**
                                                      **SPECIAL MASTER**

**Dated:** April 29, 2021

---

[10] April 14, 2021 CMS Letter at 3.
[11] The Special Master encourages the Pharmacy Defendants and CMS to negotiate resolution of any remaining issues related to this dispute, if there are any.