**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IN RE: NATIONAL PRESCRIPTION**
**OPIATE LITIGATION**

THIS DOCUMENT RELATES TO:

    *The Track Three Cases*

**MDL No. 2804**

**Case No. 17-md-2804**

**Judge Dan Aaron Polster**

**Motion to Strike Untimely Identified Prescriptions That**
**Plaintiffs Contend Caused Harm for Which They Seek Relief**

## INTRODUCTION

The Track 3 Scheduling Order required Plaintiffs to identify "the prescriptions they (and their experts) conclude caused them the harm for which they seek relief" by no later than June 19, 2020, at the outset of Track 3 fact discovery.  Doc. 3329 at 3.  An early deadline for Plaintiffs to identify so-called "red flag" prescriptions was necessary because, as the Court explained, ██ ████████████████████████████████████████████████████████████████  Ex. 1, 12/4/19 Hr'g Tr. at 61:14-17 (Under Seal).  Plaintiffs agreed.  *Id.* at 51:1-2; *see also id.* 50:18-19 ████████████████████ ████████████████████████████

Yet, ***nearly a year after*** identifying their "red flag" prescriptions in June 2020, and without even bothering to seek this Court's leave, Plaintiffs now have identified 16 new "red flags" in their expert reports.  Plaintiffs have said that they plan to focus their case on just 11 of those new "red flags," none of which were identified by the June 2020 deadline, but which by themselves nearly ***double*** the number of flagged prescriptions previously identified to more than 2 million prescriptions.  Plaintiffs appear to want to start over from scratch, at the tail end of the case, with ***1 million new "red flag" prescriptions that were never previously identified*** to Defendants.  Defendants have had no opportunity to take discovery on ***any*** of these untimely disclosed prescriptions, and would be severely prejudiced if Plaintiffs were allowed to rely on them at trial absent such discovery.

There is no good cause for Plaintiffs' violations of the Court's schedule.  Federal Rule 16 requires that Plaintiffs' late disclosures be excluded.  Alternatively, the Court must extend the schedule to allow the additional discovery that Plaintiffs' violations would necessitate.

## BACKGROUND

### I.      The December 2019 Status Conference

At the December 4, 2019, status conference in Track 1B, Plaintiffs laid out for the Court

that they planned to prove a dispensing case against the Pharmacy Defendants by establishing

that the pharmacies either did not have systems or policies in place to monitor their pharmacists'

dispensing practices or, if they did, that the pharmacies did not use their systems appropriately.

The Court then asked Plaintiffs, ████████████████████████████████████████

████████████████████████████████████████████████████ Ex. 1,

12/4/19 Hr'g Tr. at 16:12-16 (Under Seal).  Plaintiffs' counsel responded, ████████████

████████████████████████████████████████████████████████

████████████████ *Id.* at 17:11-18:11.

During the same conference, Defendants explained that they needed time to take fact

discovery after Plaintiffs identified their "red flag" prescriptions.  ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ *Id.* at 45:15-21.  ████████████████████████

████████████████████████████████ *Id.* at 45:24-46:1.

Plaintiffs again agreed with Defendants.  In fact, Mr. Weinberger told this Court, ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ *Id.* at 50:18-51:2 (emphases added).

The Court agreed, too, and ruled at the December 2019 conference that ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████  *Id.* at

55:3-6 (emphasis added).

## II.     The Track 3 Scheduling Orders

In light of the directive from the Court, the parties included in the Track 3 schedule an early deadline for Plaintiffs' identification of "red flag" prescriptions, or any other "prescriptions they (and their experts) conclude caused them the harm for which they seek relief."  Doc. 3329 at 3.  Plaintiffs were required to identify those prescriptions (along with the methodologies, electronic scripts, and analytical programs used to implement those methodologies) by no later than June 19, 2020, after which the parties had six months to conduct fact discovery (later extended for an additional three months).  *See id.*  The Court subsequently extended the Track 3 close of party fact discovery from December 21, 2020, to March 5, 2021.  *See* Doc. 3595.

## III.    Plaintiffs' Untimely Identification of Prescriptions They Claim Caused Harm

### A.     Plaintiffs' June 2020 "Red Flag" Analysis

Accordingly, on June 19, 2020, Plaintiffs produced a "dispensing red flag analysis" based on 27 disclosed "red flag criteria."  *See* Ex. 2 (Red Flag Criteria); Ex. 3 (Dispensing Red Flag Analysis).  These criteria included purported red flags related to "doctor shopping," "pharmacy shopping," "pattern prescribing," "excessive dispensing," "illegitimate prescribing," and "illegitimate cocktails or combinations."  Ex. 2.

The June 2020 analysis applying these criteria flagged 25% of the defendants' prescription records from their Lake and Trumbull County pharmacies—a total of more than a million prescriptions for all five defendants.  *See* Ex. 3 at 2.

B.      **Defendants' Reliance on Plaintiffs' June 2020 "Red Flag" Analysis**

Defendants spent the next nine months analyzing and preparing to defend the flagged prescriptions.  Defendants worked with their experts, data analysts, and fact witnesses to evaluate each of Plaintiffs' 27 flagging methods, whether those methods actually identify prescriptions with red flags, and whether those methods had been applied correctly.  Defendants also have taken depositions of prescribers, Ohio Board of Pharmacy agents, plaintiffs' fact witnesses, and others, and have interviewed many other fact witnesses, all based on the understanding that the "red flags" at issue were those that Plaintiffs disclosed in June 2020, the deadline the Court set for that disclosure.

Throughout fact discovery, Defendants relied on Plaintiffs' June 2020 "red flag" analysis as identifying the only universe of flagged prescriptions at issue in this case.

C.      **Plaintiffs' Experts' April 2021 Identification of Brand New "Red Flags"**

More than a month after the March 5 fact discovery deadline, on April 16, 2021, Plaintiffs served expert reports from Carmen Catizone and Craig McCann, disclosing 16 new red flags, in addition to the 27 red flags that Plaintiffs disclosed in June 2020.  *See* Ex. 4, Excerpt of Catizone Report at 32-50; Ex. 5, Excerpt of McCann Report at 150-56 (describing new red flags, numbered 1-16, and the initial 27 red flags, numbered 17-43); *cf.* Ex. 1, June 19, 2020, Red Flag Criteria (describing initial 27 red flags).  The following week, Plaintiffs represented to the Special Master that Mr. Catizone, their pharmacy expert, intends to rely on just the 11 new red flags disclosed in his report and Mr. McCann's report.  *See* Ex. 6, 4/23/21 Hr'g Tr. at 5:3-13.

Even focusing on just those 11 new red flags, Plaintiffs' new analysis now identifies ***45%*** of Defendants' prescriptions, nearly double the 25% that were flagged in June 2020.  *See* Ex. 7, Excerpt of McCann Appendix 12, page 38 (showing number of prescriptions flagged for each of

the 11 new red flags, a total of more than 2 million prescriptions).  Applying all 16 of the newly

disclosed red flags, in conjunction with the initial 27 flags, Plaintiffs' new expert analysis flags a

whopping ***54%*** of defendants' prescriptions—***more than doubling*** the number of prescriptions

previously at issue from just over 1 million to well over 2 million.  *Compare* Ex. 4 at 2 *with* Ex.

7, Excerpt of McCann Appendix 12, page 245.

Plaintiffs' untimely disclosure came just weeks before Plaintiffs' expert depositions are

scheduled to take place (all of Plaintiffs' experts are set to be deposed between May 12 and May

21), and just a month before Defendants' expert reports are due on May 28.  *See* Doc. 3595 at 2.

The current schedule provides no additional time for fact discovery on any of Plaintiffs'

untimely disclosed prescriptions.  *See id.*  Indeed, Plaintiffs' shifting disclosures have left

Defendants in the dark as to which prescriptions Plaintiffs plan to attack at trial.

## ARGUMENT

### I.  Plaintiffs Have Violated the Scheduling Order Without Justification or Excuse.

Federal Rule of Civil Procedure 16 requires the Court to issue a scheduling order, and

permits the Court to modify the timing of expert disclosures under Rule 26.  *See* Fed. R. Civ. P.

16(b)(1), (3)(B).  That is what the Court did here.  Recognizing Defendants' need for significant

time to analyze Plaintiff's so-called "red flag" prescriptions, the Court entered a schedule that

required Plaintiffs to identify at the outset, in June 2020, the prescriptions they claim caused

them harm, and then provided six months of fact discovery to allow Defendants the time they

needed to investigate and develop their defenses against the more than 1 million prescriptions

Plaintiffs identified in June 2020 as having "red flags."  *See* Doc. 3329 (fact discovery cutoff of

December 2020); Doc. 3595 (extending fact discovery by another three months).

"A schedule may be modified only for good cause and with the judge's consent."  Fed. R.

Civ. P. 16(b)(4); *see In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843-44 (6th Cir. 2020)

("district court could grant leave to amend only if the Counties demonstrated that 'despite their diligence they could not meet the original deadline'") (internal citations omitted).  Here, Plaintiffs never sought to modify the schedule, as they were required to do if they intended to rely on different "red flag" prescriptions than those they disclosed by the June 2020 deadline. There is no good cause to allow Plaintiffs to identify one million *new* "red flag" prescriptions, or any other prescriptions they claim caused harm for which they seek relief, for the first time more than a month after the close of fact discovery, and almost a year after the disclosure deadline.

Plaintiffs have flouted the Court's schedule without any justification or excuse whatsoever.

## II.    Defendants Would Be Severely Prejudiced If Plaintiffs Were Allowed to Rely on Untimely Disclosed Prescriptions.

Rule 16 provides the Court with wide latitude to craft remedies to prevent prejudice where a party "fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f); *see, e.g.*, *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 311 (M.D.N.C. 2002) ("The Court has broad discretion in employing sanctions" under Rule 16(f).").  The Court "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)." Fed. R. Civ. P. 16(f).

Rule 37, in turn, mandates exclusion of expert materials for failure to comply with the disclosure requirements of Rule 26, unless the failure is substantially justified or harmless.  *See* Fed. R. Civ. P. 37(c)(1); *Keener v. United States*, 181 F.R.D. 639, 641 (D. Mont. 1998) ("If full compliance with Rule 26(a) and 26(e)(1) is not made, Rule 37(c)(1) mandates some sanction, the degree and severity of which are within the discretion of the trial judge.").

Here, exclusion of Plaintiffs' untimely disclosed prescriptions and red flags is not only appropriate, it is necessary.  *See, e.g.*, *Akeva*, 212 F.R.D. at 310 (striking untimely expert opinion because it "was not supplementation, but merely an out-of-time disclosure").  Plaintiffs' late-

identified disclosures are not just one or two months late. They came ***almost a year*** after the Court-ordered deadline that Plaintiffs agreed should be imposed, without any warning or justification. Even a much shorter delay would warrant exclusion. *See, e.g.*, *Quevedo v. Trans–Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (excluding expert report due to one-and-a-half month delay); *Keener*, 181 F.R.D. at 641-42 (excluding expert report due to one month delay and a dramatically different opinion); *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 257–58 (5th Cir. 1997) (affirming denial of motion to supplement report only ten days late, prior to the end of discovery period, where party failed to justify delay).

The prejudice to Defendants is enormous. In Walgreens' dispensing data alone, Plaintiffs' experts disclosed ***hundreds of thousands*** of flagged prescriptions for the very first time in their April 16, 2021, expert reports, almost a year after the June 19, 2020, deadline. Overall for all Defendants, plaintiffs disclosed more than ***one million*** flagged prescriptions almost a year late.

Worse, Plaintiffs have conceded that their pharmacy expert, Mr. Catizone, does not intend to rely on ***any*** of the original 27 red flags Plaintiffs identified in June 2020 but instead plans to rely solely on 11 of the late-disclosed red flags described in the expert reports. *See* Ex. 6, 4/23/21 Hr'g Tr. at 5:3-13; Ex. 4, Excerpt of Catizone Report at 32-50; Ex. 5, Excerpt of McCann Report at 150-152. Plaintiffs have effectively conceded that they intend to start over with a new set of red flags that identifies double the number of flagged prescriptions that were previously disclosed.

On the current schedule, there is no time for any discovery at all on Plaintiffs' untimely disclosed prescriptions, much less the months that would be needed to re-do the work Defendants conducted throughout the Track 3 schedule. *See* Doc. 3595.

8

Plaintiffs should not be allowed to sandbag Defendants (and the Court) with an enormous new set of so-called "red flag" prescriptions so late in the game.  Plaintiffs' 16 new red flags (including the subset of 11 new red flags that Mr. Catizone intends to rely on), the prescriptions newly identified by those flags, and any other untimely disclosed prescriptions that Plaintiffs contend caused harm for which they seek relief, should be struck from the case.  Plaintiffs should not be allowed to rely on them at trial, either in expert or factual presentation, or in argument.

In the alternative, the Court should modify the schedule to allow Defendants an additional five months for fact discovery on Plaintiffs' untimely disclosed "red flag" prescriptions.  Defendants need this time to assess the new red flags with their experts and fact witnesses, and to take whatever additional depositions and other discovery that may be necessary.  Plaintiffs' expert depositions, and the rest of the Court's deadlines, including the trial date, should be postponed accordingly.

## CONCLUSION

For the reasons set forth above, Defendants move to strike Plaintiffs' untimely disclosures of so-called "red flag" prescriptions and any and all other untimely disclosed prescriptions that Plaintiffs claim caused them harm for which they seek relief.  In the alternative, Defendants move to extend the schedule by five months for good cause, so that Defendants may take the necessary fact discovery on those late-disclosed prescriptions, and to push back all other dates accordingly.

Dated:  May 3, 2021                          Respectfully submitted,


                                             /s/   Kaspar J. Stoffelmayr
                                             Kaspar J. Stoffelmayr
                                             Katherine M. Swift
                                             BARTLIT BECK LLP
                                             54 West Hubbard Street

Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlitbeck.com
E-mail: kate.swift@bartlitbeck.com

*Attorneys for Walgreens Boots Alliance, Inc.,*
*Walgreen Co., and Walgreen Eastern Co., Inc.*

*/s/ Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Pharmacy, Inc.*

*/s/ Kelly A. Moore*
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Attorneys for Rite Aid of Maryland, Inc., d/b/a Mid-*
*Atlantic Customer Support Center, Rite Aid of Ohio,*
*Inc., Rite Aid Hdqtrs. Corp., and Eckerd*
*Corporation*

*/s/ Robert M. Barnes*
Robert M. Barnes

10

Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA  15219
Phone: (412) 471-3490
Fax: (412) 391-2315
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Counsel for Giant Eagle, Inc. and*
*HBC Service Company*

/s/   *Tara A. Fumerton*
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, this 3rd day of May 2021, I served a copy of the foregoing via the Court's ECF system to all counsel of record.

<div style="margin-left: 50%;">

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr

*Attorney for Walgreens Boots Alliance,*
*Walgreen Co., Walgreens Eastern Co., Inc.*

</div>

# EXHIBIT 1

# FILED UNDER SEAL

# EXHIBIT 2

# <u>Red Flag Criteria</u>

<u>Doctor Shopping – Patient Traveled Abnormal Distance to a Prescriber</u>

(1) An opioid was dispensed to a patient that traveled for more than 25 miles to visit their prescriber **and** [the patient received at least 1 other opioid prescription from the same prescriber on a different day in any 30-day period **or** the patient received a benzodiazepine or muscle relaxer prescription from the same prescriber, written on the same day as the original opioid prescription].[1, 2]

(2) An opioid was dispensed to a patient that traveled for more than 25 miles to visit their prescriber **and** the patient received at least 1 other opioid prescription (written by a different prescriber) within 20 days of the original opioid prescription.[1]

(3) An opioid was dispensed to a patient that traveled for more than 25 miles to visit their prescriber and the patient received at least 2 other opioid prescriptions (written by different prescribers) in any 45-day period. [1]

(4) An opioid was dispensed to a patient that received opioids from at least 2 other prescribers in any 45-day period. [1]

(5) An opioid was dispensed to a patient that received opioids from at least 2 other prescribers (such that all the prescribers have different zip codes) in any 60-day period. [1]

<u>Pharmacy Shopping – Patient Traveled Abnormal Distance to Pharmacy</u>

(6) An opioid was dispensed to a patient that traveled for more than 25 miles to visit the pharmacy **and** the patient subsequently received at least 1 other opioid prescription dispensed from at least 1 other pharmacy within 20 days of the original opioid prescription. [1, 2]

(7) An opioid was dispensed to a patient that traveled for more than 25 miles to visit the pharmacy **and** the patient was dispensed at least 2 other opioid prescriptions (written by any prescribers and dispensed by at least 1 other pharmacy) in any 45-day period. [1, 2]

---

[1] Plaintiffs allege that once a patient is identified for filling a flagged prescription, every prescription that the patient fills thereafter is subject to flagging to demonstrate that the prescription should not have been dispensed in the absence of due diligence. We have presented both the originally flagged prescription and any prescription subject to flagging as a result of the original prescription.

[2] Plaintiffs allege that once a prescriber writes a script that is flagged, every prescription that the doctor writes is subject to flagging to demonstrate that the prescription should not have been dispensed in the absence of due diligence. However, in doing so, we assume that the prescriber does not have visibility into the actions of other prescribers. We have presented both the originally flagged prescription and any prescription subject to flagging as a result of the original prescription.

(8) An opioid was dispensed to a patient that had received opioids from at least 1 other pharmacy (such that both pharmacies have different zip codes) in any 45-day period. [1, 2]

### Pattern Prescribing - Prescriber Writes Same Drug of Same Strength to Multiple Patients

(9) An opioid was dispensed to at least 4 different patients on the same day **and** the opioid prescriptions were for the same drug and strength **and** were written by the same prescriber. [1, 2]

(10) An opioid was dispensed to at least 3 different patients within an hour **and** the opioid prescriptions were for the same drug and strength **and** were written by the same prescriber. [1, 2]

(11) An opioid was dispensed on the same day by the same pharmacy to at least 2 different patients from the same zip code that is more than 25 miles away from the pharmacy, **and** the opioid prescriptions were for the same drug and strength (written by any prescriber) **and** were paid by cash. [1, 2]

(12) An opioid was dispensed on the same day by the same pharmacy to at least 2 different patients from the same zip code that is more than 25 miles away from the pharmacy, **and** the opioid prescriptions were for the same drug and strength **and** were written by the same prescriber. [1, 2]

### Excessive Dispensing – Dispensing Too Frequently or Abnormal Volume

(13) An opioid prescription was refilled (indicated when the number of the fill of the prescription is 2 or more) more than 5 days before the patient's previous prescription should have run out (as indicated by the "days of supply" of the previous prescription). Only the refill is flagged. [1, 2]

(14) An opioid prescription was filled more than 5 days before the patient's last opioid prescription should have run out **and** the two opioid prescriptions were for the same drug and strength, regardless of the number of dosage units being filled. Only the subsequent prescription is flagged. [1, 2]

(15) The "days of supply" in any 6-month period for any individual type/dosage of opioid is greater than 210 days (this is done separately for each type/dosage of opioid the patient received, e.g., Oxy 15 and Oxy 30 prescriptions are counted separately). [1, 2]

(16) A patient was dispensed the same opioid in excess of 90 dosage units at least 2 times in a 20-day period **and** the payment indicates cash or other non-insurance payment for at least one of the prescriptions. [1, 2]

(17) A patient was dispensed more than 1 immediate-release opioid **and** more than 1 extended-release opioid in a 20-day period. [1,2]

## Illegitimate Prescribing – Abnormal Quantity, Strength, or Frequency

(18) At least 3 opioid prescriptions of the same drug and strength were written to a patient by the same prescriber on the same day. [1,2]

(19) At least 4 opioid prescriptions were written to a patient by the same prescriber over a 45-day period, **and** each prescription was written on a different date within the 45-day period. [1,2]

(20) A prescriber wrote opioid prescriptions to at least 2 patients over a 5-day period, and each patient resides in a zip code that is more than 25 miles away from the prescriber. [1,2]

(21) A pharmacy filled an opioid prescription written by a prescriber that is a top 5% prescriber (in terms of total dosage units) for any opioid, **and** the specific opioid for which the prescriber is a top 5% prescriber accounts for more than 50% of the total opioid prescriptions issued by the prescriber (measured by volume of dosage units prescribed and regardless of pharmacy dispensing ), **and** more than 50% of the patients who received these specific opioid prescriptions paid cash (regardless of pharmacy dispensing). [1,2]

## Suspicious or Illicit Use – Illegitimate Cocktails or Combinations

(22) An opioid and a [benzodiazepine or muscle relaxer] were dispensed to a patient on the same day (by any pharmacy in the chain) **and** both prescriptions were written by the same prescriber. [1,2]

(23) An opioid, a benzodiazepine and a muscle relaxer were dispensed to a patient on the same day (by any pharmacy in the chain) **and** all the prescriptions were written by the same prescriber. [1,2]

(24) 3 or more opioid prescriptions were dispensed to a patient on the same day (by any pharmacy in the chain). [1,2]

(25) A patient received an opioid and a [benzodiazepine or muscle relaxer] on two separate days within a 30-day period. [1,2]

(26) A patient received at least 2 opioid prescriptions and at least 2 [benzodiazepine or muscle relaxer] prescriptions within a 14-day period. [1,2]

<u>**Multiple Opioids, Cocktails, Combination and Cash Payments**</u>

(27) At least 3 opioid prescriptions were dispensed to a patient within a 30-day period (written by any prescriber and filled by any pharmacy); **and** the patient paid cash for each of these prescriptions and had no other non-cash payment transactions for controlled substances during the same 30-day period; **and** this patient had at least 2 [benzodiazepine or muscle relaxer] prescriptions (written by any prescriber and filled by any pharmacy) filled in the same 30-day period. [1,2]

# EXHIBIT 3

# CT3 Summary of Dispensing Red Flag Analysis - Recurrent Flagging[1]

| Defendant | CVS | | Walgreens | | Walmart | | HBC | | Rite Aid | |
|---|---|---|---|---|---|---|---|---|---|---|
| Data Date Range | 1/1/2006 - 11/29/2019 | | 1/3/2006 - 1/3/2020 | | 1/2/2006 - 4/25/2018 | | 1/1/2006 - 12/3/2019 | | 1/1/2009 - 11/19/2019 | |
| Data Geographic Range | CT3 | | CT3 | | CT3 | | CT3 | | CT3 | |
| # of Rx Produced | 851,198 | | 1,007,556 | | 275,700 | | 1,399,920 | | 809,945 | |
| # of Opioid Rx Produced | 701,467 | | 806,193 | | 229,006 | | 774,690 | | 649,234 | |
| Red Flag Method | Recurrent Flagged | % | Recurrent Flagged | % | Recurrent Flagged | % | Recurrent Flagged | % | Recurrent Flagged | % |
| Prescriptions Flagged for Any Reason | 639,793 | 75.16% | 755,002 | 74.93% | 195,943 | 71.07% | 714,420 | 51.03% | 608,979 | 75.19% |
| Red Flag 1 | 405,135 | 47.60% | 513,745 | 50.99% | 107,911 | 39.14% | 365,032 | 26.08% | 394,257 | 48.68% |
| Red Flag 2 | 88,862 | 12.67% | 86,941 | 10.78% | 22,137 | 9.67% | 77,494 | 10.00% | 72,175 | 11.12% |
| Red Flag 3 | 44,014 | 6.27% | 44,763 | 5.55% | 9,564 | 4.18% | 36,585 | 4.72% | 35,944 | 5.54% |
| Red Flag 4 | 112,096 | 15.98% | 145,398 | 18.04% | 23,232 | 10.14% | 107,291 | 13.85% | 101,933 | 15.70% |
| Red Flag 5 | 90,049 | 12.84% | 104,937 | 13.02% | 17,898 | 7.82% | 78,652 | 10.15% | 82,855 | 12.76% |
| Red Flag 6 | 106,192 | 15.14% | 202,409 | 25.11% | 0 | 0.00% | 48,463 | 6.26% | 172,968 | 26.64% |
| Red Flag 7 | 113,057 | 16.12% | 190,462 | 23.62% | 0 | 0.00% | 40,772 | 5.26% | 166,250 | 25.61% |
| Red Flag 8 | 482,070 | 68.72% | 669,107 | 83.00% | 0 | 0.00% | 563,337 | 72.72% | 515,376 | 79.38% |
| Red Flag 9 | 227,525 | 32.44% | 325,926 | 40.43% | 32,828 | 14.33% | 244,720 | 31.59% | 263,405 | 40.57% |
| Red Flag 10 | 236,375 | 33.70% | 317,177 | 39.34% | 54,715 | 23.89% | 407,968 | 52.66% | 240,807 | 37.09% |
| Red Flag 11 | 404 | 0.06% | 515 | 0.06% | 874 | 0.38% | 0 | 0.00% | 6,053 | 0.93% |
| Red Flag 12 | 20,494 | 2.92% | 46,969 | 5.83% | 952 | 0.42% | 3,423 | 0.44% | 55,499 | 8.55% |
| Red Flag 13 | 258,917 | 36.91% | 343,409 | 42.60% | 58,576 | 25.58% | 302,899 | 39.10% | 280,656 | 43.23% |
| Red Flag 14 | 467,622 | 66.66% | 589,145 | 73.08% | 135,493 | 59.17% | 518,281 | 66.90% | 504,440 | 77.70% |
| Red Flag 15 | 297,797 | 42.45% | 428,767 | 53.18% | 80,104 | 34.98% | 327,024 | 42.21% | 378,931 | 58.37% |
| Red Flag 16 | 154,930 | 22.09% | 204,109 | 25.32% | 60,430 | 26.39% | 85,886 | 11.09% | 120,194 | 18.51% |
| Red Flag 17 | 230,295 | 32.83% | 310,607 | 38.53% | 41,872 | 18.28% | 205,843 | 26.57% | 261,271 | 40.24% |
| Red Flag 18 | 103,319 | 14.73% | 140,591 | 17.44% | 27,964 | 12.21% | 112,121 | 14.47% | 131,457 | 20.25% |
| Red Flag 19 | 405,386 | 57.79% | 494,221 | 61.30% | 85,977 | 37.54% | 411,456 | 53.11% | 383,123 | 59.01% |
| Red Flag 20 | 307,120 | 43.78% | 363,405 | 45.08% | 69,637 | 30.41% | 225,129 | 29.06% | 285,099 | 43.91% |
| Red Flag 21 | 475 | 0.07% | 816 | 0.10% | 2,043 | 0.89% | 636 | 0.08% | 476 | 0.07% |
| Red Flag 22 | 558,458 | 65.61% | 663,107 | 65.81% | 165,557 | 60.05% | 605,759 | 43.27% | 526,948 | 65.06% |
| Red Flag 23 | 231,376 | 27.18% | 314,185 | 31.18% | 58,835 | 21.34% | 226,269 | 16.16% | 262,174 | 32.37% |
| Red Flag 24 | 161,775 | 23.06% | 250,207 | 31.04% | 30,740 | 13.42% | 140,691 | 18.16% | 222,362 | 34.25% |
| Red Flag 25 | 406,135 | 47.71% | 527,412 | 52.35% | 117,963 | 42.79% | 449,518 | 32.11% | 439,884 | 54.31% |
| Red Flag 26 | 405,403 | 47.63% | 538,700 | 53.47% | 103,878 | 37.68% | 441,958 | 31.57% | 448,620 | 55.39% |
| Red Flag 27 | 128,218 | 15.06% | 128,127 | 12.72% | 31,034 | 11.26% | 46,040 | 3.29% | 90,352 | 11.16% |

[1] For the Red Flags indicated in Exhibit A, Plaintiffs allege that once a patient or prescriber is identified with a flagged prescription, every opioid prescription that the patient fills or prescriber writes thereafter is subject to flagging to demonstrate that the prescription should not have been dispensed in the absence of due diligence. For example, if a patient fills prescriptions for the "Holy Trinity" and there is no adequate due-diligence, every subsequent opioid prescription is Red-Flagged. The calculations on this page reflect both the originally flagged prescription and any prescription subject to flagging as a result of the original prescription.

# CT3 Summary of Dispensing Red Flag Analysis

| Defendant | CVS | | Walgreens | | Walmart | | HBC | | Rite Aid | |
|---|---|---|---|---|---|---|---|---|---|---|
| Data Date Range | 1/1/2006 - 11/29/2019 | | 1/3/2006 - 1/3/2020 | | 1/2/2006 - 4/25/2018 | | 1/1/2006 - 12/3/2019 | | 1/1/2009 - 11/19/2019 | |
| Data Geographic Range | CT3 | | CT3 | | CT3 | | CT3 | | CT3 | |
| # of Rx Produced | 851,198 | | 1,007,556 | | 275,700 | | 1,399,920 | | 809,945 | |
| # of Opioid Rx Produced | 701,467 | | 806,193 | | 229,006 | | 774,690 | | 649,234 | |
| | | | | | | | | | | |
| Red Flag Method | Flagged | % | Flagged | % | Flagged | % | Flagged | % | Flagged | % |
| Prescriptions Flagged for Any Reason | 237,178 | 27.86% | 306,241 | 30.39% | 68,624 | 24.89% | 232,463 | 16.61% | 261,664 | 32.31% |
| Red Flag 1 | 34,244 | 4.02% | 28,808 | 2.86% | 9,949 | 3.61% | 19,447 | 1.39% | 35,246 | 4.35% |
| Red Flag 2 | 13,931 | 1.99% | 11,872 | 1.47% | 3,783 | 1.65% | 12,160 | 1.57% | 9,123 | 1.41% |
| Red Flag 3 | 5,986 | 0.85% | 6,069 | 0.75% | 1,424 | 0.62% | 5,100 | 0.66% | 4,488 | 0.69% |
| Red Flag 4 | 17,036 | 2.43% | 22,460 | 2.79% | 3,697 | 1.61% | 16,791 | 2.17% | 15,094 | 2.32% |
| Red Flag 5 | 14,169 | 2.02% | 15,273 | 1.89% | 2,754 | 1.20% | 11,453 | 1.48% | 11,285 | 1.74% |
| Red Flag 6 | 292 | 0.04% | 530 | 0.07% | 0 | 0.00% | 135 | 0.02% | 335 | 0.05% |
| Red Flag 7 | 407 | 0.06% | 698 | 0.09% | 0 | 0.00% | 131 | 0.02% | 643 | 0.10% |
| Red Flag 8 | 19,426 | 2.77% | 41,047 | 5.09% | 0 | 0.00% | 14,216 | 1.84% | 25,136 | 3.87% |
| Red Flag 9 | 8,297 | 1.18% | 18,333 | 2.27% | 1,121 | 0.49% | 6,505 | 0.84% | 12,095 | 1.86% |
| Red Flag 10 | 6,829 | 0.97% | 9,262 | 1.15% | 2,320 | 1.01% | 19,603 | 2.53% | 5,984 | 0.92% |
| Red Flag 11 | 3 | 0.00% | 2 | 0.00% | 8 | 0.00% | 0 | 0.00% | 3 | 0.00% |
| Red Flag 12 | 77 | 0.01% | 76 | 0.01% | 39 | 0.02% | 4 | 0.00% | 512 | 0.08% |
| Red Flag 13 | 1,931 | 0.28% | 1,731 | 0.21% | 443 | 0.19% | 2,663 | 0.34% | 2,400 | 0.37% |
| Red Flag 14 | 8,949 | 1.28% | 10,752 | 1.33% | 3,400 | 1.48% | 10,864 | 1.40% | 11,996 | 1.85% |
| Red Flag 15 | 7,431 | 1.06% | 10,094 | 1.25% | 2,647 | 1.16% | 7,080 | 0.91% | 16,474 | 2.54% |
| Red Flag 16 | 1,092 | 0.16% | 829 | 0.10% | 726 | 0.32% | 364 | 0.05% | 620 | 0.10% |
| Red Flag 17 | 2,326 | 0.33% | 7,328 | 0.91% | 777 | 0.34% | 2,550 | 0.33% | 9,439 | 1.45% |
| Red Flag 18 | 1,907 | 0.27% | 3,456 | 0.43% | 1,198 | 0.52% | 3,479 | 0.45% | 4,655 | 0.72% |
| Red Flag 19 | 27,227 | 3.88% | 37,798 | 4.69% | 5,666 | 2.47% | 21,158 | 2.73% | 35,345 | 5.44% |
| Red Flag 20 | 31,272 | 4.46% | 12,942 | 1.61% | 3,463 | 1.51% | 9,856 | 1.27% | 18,541 | 2.86% |
| Red Flag 21 | 319 | 0.05% | 550 | 0.07% | 1,059 | 0.46% | 474 | 0.06% | 231 | 0.04% |
| Red Flag 22 | 108,259 | 12.72% | 152,224 | 15.11% | 38,761 | 14.06% | 120,561 | 8.61% | 123,522 | 15.25% |
| Red Flag 23 | 5,680 | 0.67% | 8,577 | 0.85% | 2,454 | 0.89% | 6,177 | 0.44% | 6,492 | 0.80% |
| Red Flag 24 | 1,778 | 0.25% | 5,244 | 0.65% | 846 | 0.37% | 3,132 | 0.40% | 6,402 | 0.99% |
| Red Flag 25 | 34,295 | 4.03% | 58,771 | 5.83% | 12,754 | 4.63% | 37,016 | 2.64% | 52,451 | 6.48% |
| Red Flag 26 | 11,905 | 1.40% | 16,654 | 1.65% | 4,256 | 1.54% | 13,274 | 0.95% | 16,892 | 2.09% |
| Red Flag 27 | 625 | 0.07% | 237 | 0.02% | 605 | 0.22% | 238 | 0.02% | 262 | 0.03% |

## Lake County, OH Summary of Dispensing Red Flag Analysis - Recurrent Flagging[1]

| Defendant | CVS | | Walgreens | | Walmart | | HBC | | Rite Aid | |
|---|---|---|---|---|---|---|---|---|---|---|
| Data Date Range | 1/1/2006 - 11/29/2019 | | 1/3/2006 - 1/3/2020 | | 1/2/2006 - 4/25/2018 | | 1/1/2006 - 12/3/2019 | | 1/1/2009 - 11/19/2019 | |
| Data Geographic Range | Lake | | Lake | | Lake | | Lake | | Lake | |
| # of Rx Produced | 539,147 | | 514,287 | | 183,292 | | 596,575 | | 225,932 | |
| # of Opioid Rx Produced | 448,762 | | 418,820 | | 151,933 | | 325,813 | | 181,283 | |
| Red Flag Method | Recurrent Flagged | % | Recurrent Flagged | % | Recurrent Flagged | % | Recurrent Flagged | % | Recurrent Flagged | % |
| Prescriptions Flagged for Any Reason | 408,537 | 75.77% | 387,622 | 75.37% | 132,608 | 72.35% | 293,000 | 49.11% | 167,266 | 74.03% |
| Red Flag 1 | 267,685 | 49.65% | 265,058 | 51.54% | 83,408 | 45.51% | 172,360 | 28.89% | 122,942 | 54.42% |
| Red Flag 2 | 55,717 | 12.42% | 45,221 | 10.80% | 16,531 | 10.88% | 31,592 | 9.70% | 22,391 | 12.35% |
| Red Flag 3 | 27,847 | 6.21% | 22,608 | 5.40% | 7,382 | 4.86% | 15,027 | 4.61% | 11,688 | 6.45% |
| Red Flag 4 | 75,840 | 16.90% | 76,226 | 18.20% | 17,977 | 11.83% | 45,572 | 13.99% | 34,079 | 18.80% |
| Red Flag 5 | 57,947 | 12.91% | 57,847 | 13.81% | 13,552 | 8.92% | 31,534 | 9.68% | 27,952 | 15.42% |
| Red Flag 6 | 88,396 | 19.70% | 120,414 | 28.75% | 0 | 0.00% | 28,952 | 8.89% | 43,404 | 23.94% |
| Red Flag 7 | 95,195 | 21.21% | 118,082 | 28.19% | 0 | 0.00% | 26,501 | 8.13% | 50,446 | 27.83% |
| Red Flag 8 | 329,312 | 73.38% | 346,379 | 82.70% | 0 | 0.00% | 226,331 | 69.47% | 133,975 | 73.90% |
| Red Flag 9 | 153,936 | 34.30% | 153,616 | 36.68% | 28,369 | 18.67% | 77,591 | 23.81% | 57,089 | 31.49% |
| Red Flag 10 | 155,041 | 34.55% | 145,978 | 34.85% | 44,165 | 29.07% | 142,853 | 43.85% | 51,728 | 28.53% |
| Red Flag 11 | 402 | 0.09% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 6,011 | 3.32% |
| Red Flag 12 | 20,400 | 4.55% | 24,595 | 5.87% | 76 | 0.05% | 5 | 0.00% | 28,876 | 15.93% |
| Red Flag 13 | 173,690 | 38.70% | 156,861 | 37.45% | 44,345 | 29.19% | 111,946 | 34.36% | 70,034 | 38.63% |
| Red Flag 14 | 300,137 | 66.88% | 289,411 | 69.10% | 96,490 | 63.51% | 201,245 | 61.77% | 138,290 | 76.28% |
| Red Flag 15 | 192,626 | 42.92% | 200,837 | 47.95% | 61,874 | 40.72% | 113,010 | 34.69% | 104,528 | 57.66% |
| Red Flag 16 | 130,211 | 29.02% | 109,220 | 26.08% | 51,185 | 33.69% | 49,061 | 15.06% | 47,306 | 26.10% |
| Red Flag 17 | 172,517 | 38.44% | 170,467 | 40.70% | 37,653 | 24.78% | 73,438 | 22.54% | 83,486 | 46.05% |
| Red Flag 18 | 83,916 | 18.70% | 92,709 | 22.14% | 24,090 | 15.86% | 43,800 | 13.44% | 55,684 | 30.72% |
| Red Flag 19 | 271,412 | 60.48% | 256,064 | 61.14% | 69,948 | 46.04% | 161,823 | 49.67% | 114,401 | 63.11% |
| Red Flag 20 | 216,783 | 48.31% | 206,545 | 49.32% | 56,777 | 37.37% | 122,725 | 37.67% | 97,550 | 53.81% |
| Red Flag 21 | 371 | 0.08% | 648 | 0.15% | 1,900 | 1.25% | 333 | 0.10% | 200 | 0.11% |
| Red Flag 22 | 357,423 | 66.29% | 335,350 | 65.21% | 112,416 | 61.33% | 245,904 | 41.22% | 147,837 | 65.43% |
| Red Flag 23 | 144,733 | 26.84% | 142,654 | 27.74% | 42,830 | 23.37% | 80,885 | 13.56% | 64,847 | 28.70% |
| Red Flag 24 | 119,138 | 26.55% | 137,811 | 32.90% | 25,141 | 16.55% | 44,734 | 13.73% | 65,978 | 36.40% |
| Red Flag 25 | 256,830 | 47.64% | 252,160 | 49.03% | 83,261 | 45.43% | 162,416 | 27.22% | 119,278 | 52.79% |
| Red Flag 26 | 267,402 | 49.60% | 269,141 | 52.33% | 78,030 | 42.57% | 169,344 | 28.39% | 120,565 | 53.36% |
| Red Flag 27 | 93,802 | 17.40% | 85,811 | 16.69% | 23,043 | 12.57% | 28,676 | 4.81% | 27,311 | 12.09% |

[1] For the Red Flags indicated in Exhibit A, Plaintiffs allege that once a patient or prescriber is identified with a flagged prescription, every opioid prescription that the patient fills or prescriber writes thereafter is subject to flagging to demonstrate that the prescription should not have been dispensed in the absence of due diligence. For example, if a patient fills prescriptions for the "Holy Trinity" and there is no adequate due-diligence, every subsequent opioid prescription is Red-Flagged. The calculations on this page reflect both the originally flagged prescription and any prescription subject to flagging as a result of the original prescription.

## Lake County, OH Summary of Dispensing Red Flag Analysis

| Defendant | CVS | | Walgreens | | Walmart | | HBC | | Rite Aid | |
|---|---|---|---|---|---|---|---|---|---|---|
| Data Date Range | 1/1/2006 - 11/29/2019 | | 1/3/2006 - 1/3/2020 | | 1/2/2006 - 4/25/2018 | | 1/1/2006 - 12/3/2019 | | 1/1/2009 - 11/19/2019 | |
| Data Geographic Range | Lake | | Lake | | Lake | | Lake | | Lake | |
| # of Rx Produced | 539,147 | | 514,287 | | 183,292 | | 596,575 | | 225,932 | |
| # of Opioid Rx Produced | 448,762 | | 418,820 | | 151,933 | | 325,813 | | 181,283 | |
| | | | | | | | | | | |
| Red Flag Method | Flagged | % | Flagged | % | Flagged | % | Flagged | % | Flagged | % |
| Prescriptions Flagged for Any Reason | 145,944 | 27.07% | 139,752 | 27.17% | 47,056 | 25.67% | 86,148 | 14.44% | 71,114 | 31.48% |
| Red Flag 1 | 21,147 | 3.92% | 15,419 | 3.00% | 7,210 | 3.93% | 8,962 | 1.50% | 14,116 | 6.25% |
| Red Flag 2 | 8,823 | 1.97% | 6,373 | 1.52% | 2,716 | 1.79% | 5,283 | 1.62% | 3,101 | 1.71% |
| Red Flag 3 | 3,863 | 0.86% | 3,220 | 0.77% | 1,028 | 0.68% | 2,202 | 0.68% | 1,701 | 0.94% |
| Red Flag 4 | 11,718 | 2.61% | 12,650 | 3.02% | 2,680 | 1.76% | 7,426 | 2.28% | 5,567 | 3.07% |
| Red Flag 5 | 9,172 | 2.04% | 8,910 | 2.13% | 1,976 | 1.30% | 4,870 | 1.49% | 4,134 | 2.28% |
| Red Flag 6 | 237 | 0.05% | 335 | 0.08% | 0 | 0.00% | 88 | 0.03% | 155 | 0.09% |
| Red Flag 7 | 336 | 0.07% | 458 | 0.11% | 0 | 0.00% | 81 | 0.02% | 307 | 0.17% |
| Red Flag 8 | 16,132 | 3.59% | 25,111 | 6.00% | 0 | 0.00% | 6,942 | 2.13% | 5,577 | 3.08% |
| Red Flag 9 | 7,060 | 1.57% | 6,211 | 1.48% | 870 | 0.57% | 1,753 | 0.54% | 882 | 0.49% |
| Red Flag 10 | 5,569 | 1.24% | 3,081 | 0.74% | 2,016 | 1.33% | 5,408 | 1.66% | 527 | 0.29% |
| Red Flag 11 | 3 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 3 | 0.00% |
| Red Flag 12 | 75 | 0.02% | 24 | 0.01% | 1 | 0.00% | 0 | 0.00% | 394 | 0.22% |
| Red Flag 13 | 1,241 | 0.28% | 517 | 0.12% | 347 | 0.23% | 998 | 0.31% | 776 | 0.43% |
| Red Flag 14 | 5,965 | 1.33% | 4,942 | 1.18% | 2,539 | 1.67% | 4,527 | 1.39% | 4,608 | 2.54% |
| Red Flag 15 | 4,325 | 0.96% | 3,817 | 0.91% | 2,061 | 1.36% | 2,427 | 0.74% | 5,509 | 3.04% |
| Red Flag 16 | 966 | 0.22% | 476 | 0.11% | 663 | 0.44% | 218 | 0.07% | 338 | 0.19% |
| Red Flag 17 | 1,747 | 0.39% | 2,600 | 0.62% | 718 | 0.47% | 625 | 0.19% | 1,834 | 1.01% |
| Red Flag 18 | 1,327 | 0.30% | 2,101 | 0.50% | 1,001 | 0.66% | 1,973 | 0.61% | 2,103 | 1.16% |
| Red Flag 19 | 18,312 | 4.08% | 18,946 | 4.52% | 4,697 | 3.09% | 7,037 | 2.16% | 8,565 | 4.72% |
| Red Flag 20 | 21,859 | 4.87% | 8,310 | 1.98% | 2,757 | 1.81% | 5,000 | 1.53% | 8,501 | 4.69% |
| Red Flag 21 | 250 | 0.06% | 456 | 0.11% | 959 | 0.63% | 287 | 0.09% | 68 | 0.04% |
| Red Flag 22 | 57,499 | 10.66% | 58,607 | 11.40% | 24,007 | 13.10% | 40,555 | 6.80% | 27,402 | 12.13% |
| Red Flag 23 | 2,833 | 0.53% | 3,120 | 0.61% | 1,646 | 0.90% | 1,704 | 0.29% | 1,444 | 0.64% |
| Red Flag 24 | 986 | 0.22% | 1,826 | 0.44% | 669 | 0.44% | 1,022 | 0.31% | 2,550 | 1.41% |
| Red Flag 25 | 15,986 | 2.97% | 18,990 | 3.69% | 8,347 | 4.55% | 9,347 | 1.57% | 11,838 | 5.24% |
| Red Flag 26 | 7,870 | 1.46% | 8,487 | 1.65% | 3,550 | 1.94% | 4,442 | 0.74% | 4,560 | 2.02% |
| Red Flag 27 | 322 | 0.06% | 121 | 0.02% | 447 | 0.24% | 150 | 0.03% | 88 | 0.04% |

## Trumbull County, OH Summary of Dispensing Red Flag Analysis - Recurrent Flagging[1]

| Defendant | CVS | | Walgreens | | Walmart | | HBC | | Rite Aid | |
|---|---|---|---|---|---|---|---|---|---|---|
| Data Date Range | 1/1/2006 - 11/29/2019 | | 1/3/2006 - 1/3/2020 | | 1/2/2006 - 4/25/2018 | | 1/1/2006 - 12/3/2019 | | 1/1/2009 - 11/19/2019 | |
| Data Geographic Range | Trumbull | | Trumbull | | Trumbull | | Trumbull | | Trumbull | |
| # of Rx Produced | 312,051 | | 493,269 | | 92,408 | | 803,345 | | 584,013 | |
| # of Opioid Rx Produced | 252,705 | | 387,373 | | 77,073 | | 448,877 | | 467,951 | |
| Red Flag Method | Recurrent Flagged | % | Recurrent Flagged | % | Recurrent Flagged | % | Recurrent Flagged | % | Recurrent Flagged | % |
| Prescriptions Flagged for Any Reason | 231,256 | 74.11% | 367,380 | 74.48% | 63,335 | 68.54% | 421,420 | 52.46% | 441,713 | 75.63% |
| Red Flag 1 | 137,450 | 44.05% | 248,685 | 50.42% | 24,503 | 26.52% | 192,672 | 23.98% | 271,315 | 46.46% |
| Red Flag 2 | 33,145 | 13.12% | 41,720 | 10.77% | 5,606 | 7.27% | 45,902 | 10.23% | 49,784 | 10.64% |
| Red Flag 3 | 16,167 | 6.40% | 22,155 | 5.72% | 2,182 | 2.83% | 21,558 | 4.80% | 24,256 | 5.18% |
| Red Flag 4 | 36,256 | 14.35% | 69,172 | 17.86% | 5,255 | 6.82% | 61,719 | 13.75% | 67,854 | 14.50% |
| Red Flag 5 | 32,102 | 12.70% | 47,090 | 12.16% | 4,346 | 5.64% | 47,118 | 10.50% | 54,903 | 11.73% |
| Red Flag 6 | 17,796 | 7.04% | 81,995 | 21.17% | 0 | 0.00% | 19,511 | 4.35% | 129,564 | 27.69% |
| Red Flag 7 | 17,862 | 7.07% | 72,380 | 18.68% | 0 | 0.00% | 14,271 | 3.18% | 115,804 | 24.75% |
| Red Flag 8 | 152,758 | 60.45% | 322,728 | 83.31% | 0 | 0.00% | 337,006 | 75.08% | 381,401 | 81.50% |
| Red Flag 9 | 73,589 | 29.12% | 172,310 | 44.48% | 4,459 | 5.79% | 167,129 | 37.23% | 206,316 | 44.09% |
| Red Flag 10 | 81,334 | 32.19% | 171,199 | 44.19% | 10,550 | 13.69% | 265,115 | 59.06% | 189,079 | 40.41% |
| Red Flag 11 | 2 | 0.00% | 515 | 0.13% | 874 | 1.13% | 0 | 0.00% | 42 | 0.01% |
| Red Flag 12 | 94 | 0.04% | 22,374 | 5.78% | 876 | 1.14% | 3,418 | 0.76% | 26,623 | 5.69% |
| Red Flag 13 | 85,227 | 33.73% | 186,548 | 48.16% | 14,231 | 18.46% | 190,953 | 42.54% | 210,622 | 45.01% |
| Red Flag 14 | 167,485 | 66.28% | 299,734 | 77.38% | 39,003 | 50.61% | 317,036 | 70.63% | 366,150 | 78.25% |
| Red Flag 15 | 105,171 | 41.62% | 227,930 | 58.84% | 18,230 | 23.65% | 214,014 | 47.68% | 274,403 | 58.64% |
| Red Flag 16 | 24,719 | 9.78% | 94,889 | 24.50% | 9,245 | 12.00% | 36,825 | 8.20% | 72,888 | 15.58% |
| Red Flag 17 | 57,778 | 22.86% | 140,140 | 36.18% | 4,219 | 5.47% | 132,405 | 29.50% | 177,785 | 37.99% |
| Red Flag 18 | 19,403 | 7.68% | 47,882 | 12.36% | 3,874 | 5.03% | 68,321 | 15.22% | 75,773 | 16.19% |
| Red Flag 19 | 133,974 | 53.02% | 238,157 | 61.48% | 16,029 | 20.80% | 249,633 | 55.61% | 268,722 | 57.43% |
| Red Flag 20 | 90,337 | 35.75% | 156,860 | 40.49% | 12,860 | 16.69% | 102,404 | 22.81% | 187,549 | 40.08% |
| Red Flag 21 | 104 | 0.04% | 168 | 0.04% | 143 | 0.19% | 303 | 0.07% | 276 | 0.06% |
| Red Flag 22 | 201,035 | 64.42% | 327,757 | 66.45% | 53,141 | 57.51% | 359,855 | 44.79% | 379,111 | 64.91% |
| Red Flag 23 | 86,643 | 27.77% | 171,531 | 34.77% | 16,005 | 17.32% | 145,384 | 18.10% | 197,327 | 33.79% |
| Red Flag 24 | 42,637 | 16.87% | 112,396 | 29.01% | 5,599 | 7.26% | 95,957 | 21.38% | 156,384 | 33.42% |
| Red Flag 25 | 149,305 | 47.85% | 275,252 | 55.80% | 34,702 | 37.55% | 287,102 | 35.74% | 320,606 | 54.90% |
| Red Flag 26 | 138,001 | 44.22% | 269,559 | 54.65% | 25,848 | 27.97% | 272,614 | 33.93% | 328,055 | 56.17% |
| Red Flag 27 | 34,416 | 11.03% | 42,316 | 8.58% | 7,991 | 8.65% | 17,364 | 2.16% | 63,041 | 10.79% |

[1] For the Red Flags indicated in Exhibit A, Plaintiffs allege that once a patient or prescriber is identified with a flagged prescription, every opioid prescription that the patient fills or prescriber writes thereafter is subject to flagging to demonstrate that the prescription should not have been dispensed in the absence of due diligence. For example, if a patient fills prescriptions for the "Holy Trinity" and there is no adequate due-diligence, every subsequent opioid prescription is Red-Flagged. The calculations on this page reflect both the originally flagged prescription and any prescription subject to flagging as a result of the original prescription.

# Trumbull County, OH Summary of Dispensing Red Flag Analysis

| Defendant | CVS | | Walgreens | | Walmart | | HBC | | Rite Aid | |
|---|---|---|---|---|---|---|---|---|---|---|
| Data Date Range | 1/1/2006 - 11/29/2019 | | 1/3/2006 - 1/3/2020 | | 1/2/2006 - 4/25/2018 | | 1/1/2006 - 12/3/2019 | | 1/1/2009 - 11/19/2019 | |
| Data Geographic Range | Trumbull | | Trumbull | | Trumbull | | Trumbull | | Trumbull | |
| # of Rx Produced | 312,051 | | 493,269 | | 92,408 | | 803,345 | | 584,013 | |
| # of Opioid Rx Produced | 252,705 | | 387,373 | | 77,073 | | 448,877 | | 467,951 | |
| | | | | | | | | | | |
| Red Flag Method | Flagged | % | Flagged | % | Flagged | % | Flagged | % | Flagged | % |
| Prescriptions Flagged for Any Reason | 91,234 | 29.24% | 166,489 | 33.75% | 21,568 | 23.34% | 146,315 | 18.21% | 190,550 | 32.63% |
| Red Flag 1 | 13,097 | 4.20% | 13,389 | 2.71% | 2,739 | 2.96% | 10,485 | 1.31% | 21,130 | 3.62% |
| Red Flag 2 | 5,108 | 2.02% | 5,499 | 1.42% | 1,067 | 1.38% | 6,877 | 1.53% | 6,022 | 1.29% |
| Red Flag 3 | 2,123 | 0.84% | 2,849 | 0.74% | 396 | 0.51% | 2,898 | 0.65% | 2,787 | 0.60% |
| Red Flag 4 | 5,318 | 2.10% | 9,810 | 2.53% | 1,017 | 1.32% | 9,365 | 2.09% | 9,527 | 2.04% |
| Red Flag 5 | 4,997 | 1.98% | 6,363 | 1.64% | 778 | 1.01% | 6,583 | 1.47% | 7,151 | 1.53% |
| Red Flag 6 | 55 | 0.02% | 195 | 0.05% | 0 | 0.00% | 47 | 0.01% | 180 | 0.04% |
| Red Flag 7 | 71 | 0.03% | 240 | 0.06% | 0 | 0.00% | 50 | 0.01% | 336 | 0.07% |
| Red Flag 8 | 3,294 | 1.30% | 15,936 | 4.11% | 0 | 0.00% | 7,274 | 1.62% | 19,559 | 4.18% |
| Red Flag 9 | 1,237 | 0.49% | 12,122 | 3.13% | 251 | 0.33% | 4,752 | 1.06% | 11,213 | 2.40% |
| Red Flag 10 | 1,260 | 0.50% | 6,181 | 1.60% | 304 | 0.39% | 14,195 | 3.16% | 5,457 | 1.17% |
| Red Flag 11 | 0 | 0.00% | 2 | 0.00% | 8 | 0.01% | 0 | 0.00% | 0 | 0.00% |
| Red Flag 12 | 2 | 0.00% | 52 | 0.01% | 38 | 0.05% | 4 | 0.00% | 118 | 0.03% |
| Red Flag 13 | 690 | 0.27% | 1,214 | 0.31% | 96 | 0.12% | 1,665 | 0.37% | 1,624 | 0.35% |
| Red Flag 14 | 2,984 | 1.18% | 5,810 | 1.50% | 861 | 1.12% | 6,337 | 1.41% | 7,388 | 1.58% |
| Red Flag 15 | 3,106 | 1.23% | 6,277 | 1.62% | 586 | 0.76% | 4,653 | 1.04% | 10,965 | 2.34% |
| Red Flag 16 | 126 | 0.05% | 353 | 0.09% | 63 | 0.08% | 146 | 0.03% | 282 | 0.06% |
| Red Flag 17 | 579 | 0.23% | 4,728 | 1.22% | 59 | 0.08% | 1,925 | 0.43% | 7,605 | 1.63% |
| Red Flag 18 | 580 | 0.23% | 1,355 | 0.35% | 197 | 0.26% | 1,506 | 0.34% | 2,552 | 0.55% |
| Red Flag 19 | 8,915 | 3.53% | 18,852 | 4.87% | 969 | 1.26% | 14,121 | 3.15% | 26,780 | 5.72% |
| Red Flag 20 | 9,413 | 3.72% | 4,632 | 1.20% | 706 | 0.92% | 4,856 | 1.08% | 10,040 | 2.15% |
| Red Flag 21 | 69 | 0.03% | 94 | 0.02% | 100 | 0.13% | 187 | 0.04% | 163 | 0.03% |
| Red Flag 22 | 50,760 | 16.27% | 93,617 | 18.98% | 14,754 | 15.97% | 80,006 | 9.96% | 96,120 | 16.46% |
| Red Flag 23 | 2,847 | 0.91% | 5,457 | 1.11% | 808 | 0.87% | 4,473 | 0.56% | 5,048 | 0.86% |
| Red Flag 24 | 792 | 0.31% | 3,418 | 0.88% | 177 | 0.23% | 2,110 | 0.47% | 3,852 | 0.82% |
| Red Flag 25 | 18,309 | 5.87% | 39,781 | 8.06% | 4,407 | 4.77% | 27,669 | 3.44% | 40,613 | 6.95% |
| Red Flag 26 | 4,035 | 1.29% | 8,167 | 1.66% | 706 | 0.76% | 8,832 | 1.10% | 12,332 | 2.11% |
| Red Flag 27 | 303 | 0.10% | 116 | 0.02% | 158 | 0.17% | 88 | 0.01% | 174 | 0.03% |

# EXHIBIT 4

# FILED UNDER SEAL

# EXHIBIT 5

# FILED UNDER SEAL

# EXHIBIT 6

1     IN THE UNITED STATED DISTRICT COURT

      THE NORTHERN DISTRICT OF OHIO

2       EASTERN DIVISION

3

4

5 IN RE:       )

 NATIONAL PRESCRIPTION  ) MDL 2804

6 OPIATE LITIGATION   ) Case No. 1:17-MD-2804

 LITIGATION     ) Hon. Dan A. Polster

7

8

9

10

11      AUDIO TRANSCRIBED

12    OPIATE DISCOVERY TELECONFERENCE

13   BEFORE:  SPECIAL MASTER DAVID R. COHEN

14     FRIDAY, APRIL 23, 2021

15

16

17

18   Discovery Teleconference Hearing conducted on

19 April 23, 2021, transcribed before Jennifer A. Dunn,

20 Registered Professional Reporter, Certified Court Reporter.

21

22

23

24     GOLKOW LITIGATION SERVICES

    877.370.3377 ph | 917.591.5672 fax

25      deps@golkow.com

1    reports that I've looked at talk about -- well, 43 red flags

2    and then a subset of 11.

3              And, Pete, it sounds like what you just said is

4    that Catizone is relying on 11 of the 43 in particular, in

5    his opinion; is that right?  And that the other 43 red flags

6    may be, for example, something that was mentioned in a case

7    or a DEA report or the defendant's own documents, but

8    Catizone's relying, for his opinions, on the 11; is that

9    right?

10              MR. WEINBERGER:  Correct.

11              SPECIAL MASTER COHEN:  I'm sorry, I didn't

12   hear; is that yes?

13              MR. WEINBERGER:  That is correct.

14              SPECIAL MASTER COHEN:  Okay.

15              MR. WEINBERGER:  I said that is correct.

16              SPECIAL MASTER COHEN:  Okay.  So here's why I

17   ask those questions.

18              As you know, you all know, the background of the

19   notes field -- and I've received letters from you all

20   arguing over the extent to which and whether notes fields

21   should now be divulged, with the defendant saying, first of

22   all, it was waived, and, second of all, we're not -- we have

23   no intention of referring at trial to any, you know, note

24   field content, we're not going to trot out a prescription

25   and say, look, here in this note field it says such and

# EXHIBIT 7

# FILED UNDER SEAL