# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*The County of Lake, Ohio v. Purdue Pharma L.P., et al.,*<br>Case No. 18-OP-45032<br><br>*The County of Trumbull, Ohio v. Purdue Pharma L.P., et al.,*<br>Case No. 18-OP-45079 | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

# PLAINTIFFS' DISCOVERY SUBMISSION PURSUANT TO CASE MANAGEMENT ORDER AND RESPONSES AND OBJECTIONS TO PHARMACY DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Case Management Order in *In re National Prescription Opiate Litigation,* No. 1:17-cv-2804 (Dkt. No. 3325), the County of Lake, Ohio, and the County of Trumbull, Ohio (together "Bellwether Plaintiffs") hereby respond[1] to the Pharmacy Defendants' First Set of Interrogatories to Plaintiffs as follows:

**Preliminary Objections and Legal Limitations**

Bellwether Plaintiffs' responses are made without waiving their rights to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of their responses in any subsequent stage or proceeding in this action or any other action. Bellwether Plaintiffs

---

[1] Bellwether Plaintiffs respond herein only to Interrogatory 25, as it requests information that is similar, though not identical to the information that Bellwether Plaintiffs are required to identify pursuant to Dkt. 3325 ("Plaintiffs shall identify for Defendants (i) the prescriptions they (and their experts) conclude caused them the harm for which they seek relief; (ii) the methodology or methodologies they (and their experts) used to reach such a conclusion; and (iii) the electronic scripts or analytical programs used by Plaintiffs and/or their experts to implement that methodology.').

respond herein based upon information they have been reasonably able to gather at the time of making these responses. Bellwether Plaintiffs reserve their right to amend and/or to supplement their objections and responses to the Requests, consistent with further investigation and discovery.

This discovery submission is based solely on Bellwether Plaintiffs' red flag analysis of the Defendants' dispensing data currently available. The Bellwether Plaintiffs reserve the right to supplement this response if, or when, the Pharmacy Defendants fully and transparently respond to discovery, including the production of additional transactional dispensing data fields. For the purposes of this submission, Plaintiffs have not attempted to identify every suspicious or "red flag" prescription, nor applied every reasonable method for identifying suspicious or "red flag" prescriptions. The Bellwether Plaintiffs also reserve the right to supplement this response with additional prescriptions based upon further review of the dispensing data. The Bellwether Plaintiffs reserve the right to supplement this response with additional dispensing data sources and to the extent that additional information becomes available. The Bellwether Plaintiffs further reserve the right to supplement this response if, or when the Pharmacy Defendants disclose the system(s) designed, maintained and operated sufficient to detect suspicious or "red flag" prescriptions using Pharmacy Defendants' own metrics. In addition, the Bellwether Plaintiffs reserve the right to supplement this response through expert witnesses pursuant to the Scheduling Order entered by the Court.

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 25**

Identify each prescription which you contend (i) supports Your claims in this case, (ii) caused harm for which You seek to recover in this case, or (iii) should not have been filled. For each prescription, identify the same 34 fields that the Pharmacy Defendants were ordered to provide in the Court's 1/27/20 Discovery Ruling Regarding Pharmacy Data Production, Case No. 17-md-2804, Doc. 3106 at 8.

**Response**

The Bellwether Plaintiffs here renew and incorporate by reference the CT1 Bellwether Plaintiffs' responses and objections to CT1 discovery responses propounded by Pharmacy Defendants. Bellwether Plaintiffs specifically incorporate any and all prior responses to discovery requests, including responses to discovery served during Tracks "1A" and "1B" of this litigation. This response is not intended to supersede or replace those prior responses. The Bellwether Plaintiffs have

identified prescriptions that the Bellwether Plaintiffs contend support the Bellwether Plaintiffs' claims on the basis of a red flag analysis in this case in files provided individually to each defendant, listing every prescription that meets one or more of the "red flag" criteria listed on Exhibit A ("Red Flag Criteria"), attached hereto. The Bellwether Plaintiffs contend that the prescriptions identified herein should not have been dispensed in the absence of adequate due diligence. ("Red Flagged Prescriptions"). The Red Flagged Prescriptions attached herein identify both the initial prescription and, separately, identify both the initial prescription and all subsequent prescriptions that are flagged as a result of the initial prescription ("Recurrent Red Flagged Prescriptions"). The Recurrent Red Flagged Prescriptions highlight the cumulative effect of the failure to perform due diligence. For example, if a patient fills prescriptions for the "Holy Trinity"[2] and there is no adequate due-diligence, every subsequent opioid prescription for that specific patient is Red Flagged ("Recurrent Prescription"). Similarly, once a prescriber writes a prescription that meets one of the Red Flag Criteria, every subsequent opioid prescription that the prescriber writes is flagged. A total of 1,106,170 prescriptions, 25.46% of the total prescriptions produced, were flagged by at least one Red Flag Criteria. In the absence of due diligence, the subsequent "Recurrent Red Flagged Prescriptions" bring the number of flagged prescriptions to 2,914,137, or 67.08% of the total prescriptions produced. Attached as Exhibit B ("Summary of Dispensing Red Flag Analysis") is a summary of Red Flagged Prescriptions and Recurrent Red Flagged Prescriptions. Exhibit C ("Patients with High Annual Dosage Units") identifies the number patients who received more than 3,000 dosage units increasing in increments of 1,000 dosage units to 10,000. Exhibit D ("Subset - Eight Flags") identifies the number of prescriptions that trigger any one of eight of the (8) Red Flag Criteria that are contained in Exhibit A (i.e., Doctor Shopping and Excessive Number of Prescriptions (Criteria 5); Excessive Volume (Criteria 16, 17, 18, and 24); Drug Cocktails (Criteria 23 and 26); and Excessive Volume, Cash, and Drug Cocktails (Criteria 27)). Exhibit E ("Prescriptions Flagged Multiple Times") identifies the prescriptions that triggered at least four and up to 12 of the 27 Red Flag Criteria in Exhibit A.

---

[2] Alprazolam is a type of benzodiazepine and is the active ingredient in Xanax. Carisoprodol is the active ingredient in Soma. These two drugs in combination with an opioid are known colloquially as the "Holy Trinity" or the "Houston Cocktail." *See* Pharmacy Times, *The Perfect Storm: Opioid Risks and 'The Holy Trinity*,' http://bit.ly/HolyTrinityMDL ("'The Holy Trinity' is a drug regimen that includes at least [one] opioid, a benzodiazepine, and carisoprodol. This combination has been rising in popularity and is commonly prescribed by 'pill mills.'"); Superior HealthPlan, *Deadly Drug Combination: The Houston Cocktail*, http://bit.ly/HoustonCocktailMDL ("The Houston Cocktail, also known as the Holy Trinity, is made up of a combination of hydrocodone, alprazolam [a benzodiazepine], and carisoprodol that, when taken together, can be lethal for patients. The combination of these medications do not show clinical benefits and may be viewed as drug-seeking behavior.").

Dated: June 19, 2020.

        Respectfully submitted:

        s/ *Peter J. Mougey*
        Peter J. Mougey
        Page A. Poerschke
        Laura S. Dunning
        Jeff R. Gaddy
        **LEVIN, PAPANTONIO, THOMAS, MITCHELL,**
            **RAFFERTY & PROCTOR, P.A.**
        316 S. Baylen Street, Suite 600
        Pensacola, FL 32502-5996
        Tel.: 850-435-7068
        Fax: 850-436-6068
        pmougey@levinlaw.com
        ppoerschke@levinlaw.com
        ldunning@levinlaw.com
        jgaddy@levinlaw.com
        For the PEC


        *s/ Paul J. Hanly, Jr.*
        Paul J. Hanly, Jr.
        **SIMMONS HANLY CONROY LLC**
        112 Madison Avenue
        New York, NY 10016
        Tel.: 212-784-6400
        Fax: 212-213-5949
        phanly@simmonsfirm.com
        Co-Lead Plaintiffs' Counsel

        *s/ Paul T. Farrell, Jr.*
        Paul T. Farrell, Jr. (OH Bar No. 0070257)
        **FARRELL LAW**
        422 Ninth Street, 3rd Floor (25701)
        PO Box 1180
        Huntington, West Virginia 25714-1180
        Mobile: 304-654-8281
        paul@farrell.law
        Co-Lead Plaintiffs' Counsel


        *s/ Joseph F. Rice*
        Joseph F. Rice

**MOTLEY RICE LLC**
28 Bridgeside Blvd. Mt. Pleasant, SC 29464 Tel.: 843-216-9159
Fax: 843-216-9290
jrice@motleyrice.com
Co-Lead Plaintiffs' Counsel

*s/ Troy Rafferty*
Troy Rafferty
**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Tel.: 850-435-7163
Fax: 850-436-6163
Co-Liaison Plaintiffs' Counsel

*s/ Steven J. Skikos*
Steven J. Skikos
**SKIKOS CRAWFORD SKIKOS & JOSEPH**
One Sansome Street, Suite 2830 San Francisco, CA 94104
Tel.: 415-546-7300
Fax: 415-546-7301
sskikos@skikoscrawford.com
Co-Liaison Plaintiffs' Counsel

*s/ Peter H. Weinberger*
Peter H. Weinberger
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East,
Suite 1700
Cleveland, Ohio 44114
Tel.: 216-696-3232
Fax: 216-696-3924
PWeinberger@spanglaw.com
Co-Liaison Plaintiffs' Counsel

*/s/ Frank Gallucci*
Frank Gallucci
**PLEVIN & GALLUCCI COMPANY, L.P.A.**
55 Public Square
Suite 2222
Cleveland, Ohio 44113
(216) 861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

        */s/ Hunter J. Shkolnik*
        Hunter J. Shkolnik
        **NAPOLI SHKOLNIK**
        360 Lexington Ave., 11th Floor
        New York, NY 10017
        (212) 397-1000
        (646) 843-7603 (Fax)
        hunter@napolilaw.com
        Counsel for Plaintiffs Lake County, Ohio and Trumbull County, Ohio

# EXHIBIT A

# Red Flag Criteria

**Doctor Shopping – Patient Traveled Abnormal Distance to a Prescriber**

(1) An opioid was dispensed to a patient that traveled for more than 25 miles to visit their prescriber **and** [the patient received at least 1 other opioid prescription from the same prescriber on a different day in any 30-day period **or** the patient received a benzodiazepine or muscle relaxer prescription from the same prescriber, written on the same day as the original opioid prescription].[1,2]

(2) An opioid was dispensed to a patient that traveled for more than 25 miles to visit their prescriber **and** the patient received at least 1 other opioid prescription (written by a different prescriber) within 20 days of the original opioid prescription.[1]

(3) An opioid was dispensed to a patient that traveled for more than 25 miles to visit their prescriber and the patient received at least 2 other opioid prescriptions (written by different prescribers) in any 45-day period.[1]

(4) An opioid was dispensed to a patient that received opioids from at least 2 other prescribers in any 45-day period.[1]

(5) An opioid was dispensed to a patient that received opioids from at least 2 other prescribers (such that all the prescribers have different zip codes) in any 60-day period.[1]

**Pharmacy Shopping – Patient Traveled Abnormal Distance to Pharmacy**

(6) An opioid was dispensed to a patient that traveled for more than 25 miles to visit the pharmacy **and** the patient subsequently received at least 1 other opioid prescription dispensed from at least 1 other pharmacy within 20 days of the original opioid prescription.[1,2]

(7) An opioid was dispensed to a patient that traveled for more than 25 miles to visit the pharmacy **and** the patient was dispensed at least 2 other opioid prescriptions (written by any prescribers and dispensed by at least 1 other pharmacy) in any 45-day period.[1,2]

---

[1] Plaintiffs allege that once a patient is identified for filling a flagged prescription, every prescription that the patient fills thereafter is subject to flagging to demonstrate that the prescription should not have been dispensed in the absence of due diligence. We have presented both the originally flagged prescription and any prescription subject to flagging as a result of the original prescription.

[2] Plaintiffs allege that once a prescriber writes a script that is flagged, every prescription that the doctor writes is subject to flagging to demonstrate that the prescription should not have been dispensed in the absence of due diligence. However, in doing so, we assume that the prescriber does not have visibility into the actions of other prescribers. We have presented both the originally flagged prescription and any prescription subject to flagging as a result of the original prescription.

(8) An opioid was dispensed to a patient that had received opioids from at least 1 other pharmacy (such that both pharmacies have different zip codes) in any 45-day period. [1,2]

**Pattern Prescribing - Prescriber Writes Same Drug of Same Strength to Multiple Patients**

(9) An opioid was dispensed to at least 4 different patients on the same day **and** the opioid prescriptions were for the same drug and strength **and** were written by the same prescriber. [1,2]

(10) An opioid was dispensed to at least 3 different patients within an hour **and** the opioid prescriptions were for the same drug and strength **and** were written by the same prescriber. [1,2]

(11) An opioid was dispensed on the same day by the same pharmacy to at least 2 different patients from the same zip code that is more than 25 miles away from the pharmacy, **and** the opioid prescriptions were for the same drug and strength (written by any prescriber) **and** were paid by cash. [1,2]

(12) An opioid was dispensed on the same day by the same pharmacy to at least 2 different patients from the same zip code that is more than 25 miles away from the pharmacy, **and** the opioid prescriptions were for the same drug and strength **and** were written by the same prescriber. [1,2]

**Excessive Dispensing – Dispensing Too Frequently or Abnormal Volume**

(13) An opioid prescription was refilled (indicated when the number of the fill of the prescription is 2 or more) more than 5 days before the patient's previous prescription should have run out (as indicated by the "days of supply" of the previous prescription). Only the refill is flagged. [1,2]

(14) An opioid prescription was filled more than 5 days before the patient's last opioid prescription should have run out **and** the two opioid prescriptions were for the same drug and strength, regardless of the number of dosage units being filled. Only the subsequent prescription is flagged. [1,2]

(15) The "days of supply" in any 6-month period for any individual type/dosage of opioid is greater than 210 days (this is done separately for each type/dosage of opioid the patient received, e.g., Oxy 15 and Oxy 30 prescriptions are counted separately). [1,2]

(16) A patient was dispensed the same opioid in excess of 90 dosage units at least 2 times in a 20-day period **and** the payment indicates cash or other non-insurance payment for at least one of the prescriptions. [1,2]

(17) A patient was dispensed more than 1 immediate-release opioid **and** more than 1 extended-release opioid in a 20-day period. [1,2]

**Illegitimate Prescribing – Abnormal Quantity, Strength, or Frequency**

(18) At least 3 opioid prescriptions of the same drug and strength were written to a patient by the same prescriber on the same day. [1,2]

(19) At least 4 opioid prescriptions were written to a patient by the same prescriber over a 45-day period, **and** each prescription was written on a different date within the 45-day period. [1,2]

(20) A prescriber wrote opioid prescriptions to at least 2 patients over a 5-day period, and each patient resides in a zip code that is more than 25 miles away from the prescriber. [1,2]

(21) A pharmacy filled an opioid prescription written by a prescriber that is a top 5% prescriber (in terms of total dosage units) for any opioid, **and** the specific opioid for which the prescriber is a top 5% prescriber accounts for more than 50% of the total opioid prescriptions issued by the prescriber (measured by volume of dosage units prescribed and regardless of pharmacy dispensing ), **and** more than 50% of the patients who received these specific opioid prescriptions paid cash (regardless of pharmacy dispensing). [1,2]

**Suspicious or Illicit Use – Illegitimate Cocktails or Combinations**

(22) An opioid and a [benzodiazepine or muscle relaxer] were dispensed to a patient on the same day (by any pharmacy in the chain) **and** both prescriptions were written by the same prescriber. [1,2]

(23) An opioid, a benzodiazepine and a muscle relaxer were dispensed to a patient on the same day (by any pharmacy in the chain) **and** all the prescriptions were written by the same prescriber. [1,2]

(24) 3 or more opioid prescriptions were dispensed to a patient on the same day (by any pharmacy in the chain). [1,2]

(25) A patient received an opioid and a [benzodiazepine or muscle relaxer] on two separate days within a 30-day period. [1,2]

(26) A patient received at least 2 opioid prescriptions and at least 2 [benzodiazepine or muscle relaxer] prescriptions within a 14-day period. [1,2]

**Multiple Opioids, Cocktails, Combination and Cash Payments**

(27) At least 3 opioid prescriptions were dispensed to a patient within a 30-day period (written by any prescriber and filled by any pharmacy); **and** the patient paid cash for each of these prescriptions and had no other non-cash payment transactions for controlled substances during the same 30-day period; **and** this patient had at least 2 [benzodiazepine or muscle relaxer] prescriptions (written by any prescriber and filled by any pharmacy) filled in the same 30-day period. [1,2]