UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: NATIONAL PRESCRIPTION
OPIATE LITIGATION

THIS DOCUMENT RELATES TO:

*The Track Three Cases*

MDL No. 2804

Case No. 17-md-2804

Judge Dan Aaron Polster

**Motion to Strike Millions of Additional Untimely Identified Prescriptions**

**INTRODUCTION**

The Track 3 Schedule required Plaintiffs to identify "the prescriptions they (and their experts) conclude caused them the harm for which they seek relief" by June 19, 2020. Doc. 3329 at 3. On that deadline, Plaintiffs identified *one million* prescriptions that they asserted caused them harm. Defendants spent ten months analyzing these prescriptions and conducting discovery to defend them. Nearly a year later, Plaintiffs identified more than *two million* prescriptions that they claimed hit on different red flags newly disclosed in their April 2021 expert reports. Defendants moved to strike. The Court granted the motion but gave Plaintiffs a choice: "should Plaintiffs opt to use the universe of 2 million prescriptions, then the trial currently set for October 2021 would be postponed likely until May 2022 to provide Pharmacy Defendants time to conduct fact discovery on the additional prescriptions." Doc. 3726 at 2.

To keep the October 2021 trial date, Plaintiffs assured Defendants (and the Court) that they would disclaim the universe of two million prescriptions in favor of the 840,000 overlapping prescriptions identified in both their June 2020 disclosure and their April 2021 disclosure. Remarkably, Plaintiffs' supplemental report from data consultant Craig McCann does no such thing. Instead, it *expands* that universe to a whopping *four million* prescriptions— more than 90% of the total prescriptions produced in the case.

To dodge the consequences of putting so many new prescriptions at issue, Plaintiffs assert that this vastly larger universe "does not introduce any additional red flag algorithms or additional flagged transactions." Ex. 1 at 1, 5/24/21 Weinberger Email. But Plaintiffs nonetheless assert that the new prescriptions "are illustrative of the continuing ramifications of the Defendants' due diligence failures." *Id.* No matter what they call them, if Plaintiffs assert that these prescriptions support their claims, then Defendants must defend them. As this Court

2

recognized when Plaintiffs previously sought to double the number of prescriptions in play for trial, that would require an enormous amount of analysis, additional discovery, and a new trial date. The only alternative is for the Court to strike the new prescriptions from the case and to preclude Plaintiffs from relying on them at trial (either in expert or factual presentation) or in argument.

## BACKGROUND

I.  **The Court's Ruling on Defendants' Earlier Motion to Strike**

The background of Defendants' earlier motion to strike is set forth at Doc. 3716. The Court heard argument on that motion and granted it during the May 2021 status conference. The Court reasoned, "The case implicating one million prescriptions is not the same as a case implicating two million prescriptions, and there's no way that it's fair for the plaintiffs to change their case at this late date and not give defendants [] time to, you know, develop a defense. So I'm not going to do that." Ex. 2, 5/7/21 Tr. 6:25-7:6. "[T]he defendants have a right to know what [] prescriptions the plaintiffs believe are suspect and should have been, you know, kicked out, monitored, flagged, whatever, by a valid system or at least some checks, some inquiry. And this is now a totally different case." *Id.* 7:9-14.

The Court allowed Plaintiffs to choose among three options "regarding which universe of prescriptions they may use at trial: (1) the original 1 million prescriptions identified in June 2020; (2) the 840,000 overlapping prescriptions; or (3) the 2 million prescriptions identified in April 2021." Doc. 3726 at 1-2. The Court ruled that Option 3 would require a new trial date, likely in May 2022, to allow Defendants the time necessary to conduct additional discovery. *Id* at 2.

**II.     Plaintiffs' May 19 Supplemental Expert Report from Craig McCann**

Plaintiffs chose Option 2. On May 19, however, Plaintiffs served a supplemental report from data consultant Craig McCann that identifies far more than just the 840,000 overlapping prescriptions that were included in Option 2. Indeed, Part V of McCann's report identifies more than ***four million*** prescriptions associated with the doctors and patients who wrote and filled the overlapping "red flag" prescriptions. *See* Ex. 3, McCann May 19 Report at 10.[1] This section of the May 19 McCann report states, "The Combination Red Flagged Prescriptions were written by at least 15,788 unique prescribers. After writing the initial prescription identified in the Combination Red Flagged Prescriptions, these same prescribers wrote 3,144,183 additional prescriptions for opioids, 733,452 additional prescriptions for benzodiazepines, and 408,356 additional prescriptions for muscle relaxers that were dispensed by these Defendants, as reflected in the produced dispensing data." *Id.* The McCann report then also identifies the number of unique patients to whom each of the Pharmacy Defendants dispensed "red flag" prescriptions, and provides the number of additional prescriptions each defendant pharmacy filled for those patients after filling their "red flag" prescriptions. *See id.* In all, this section of the May 19 McCann report identifies at least ***4.285 million*** prescriptions, ***94%*** of all of the prescriptions produced by the Pharmacy Defendants in this case.

On May 21, the Pharmacy Defendants asked Plaintiffs to confirm that they will not mention at trial any of the prescriptions disclosed in this section of McCann's May 19 report, as reference to these prescriptions would be an impermissible end run around the limitation Plaintiffs chose for themselves in order to keep the October trial date, i.e., that they would only

---

[1] McCann's May 19 report also discloses 884,166 overlapping "red flag" prescriptions identified in both Plaintiffs' June 2020 disclosure and their April 2021 expert reports, an increase above the 840,000 prescriptions Plaintiff previously estimated.

4

use at trial the universe of 840,000 overlapping prescriptions identified in both Plaintiffs' June 2020 disclosure and their April 2021 disclosure.  *See* Ex. 1 at 2, 5/21/21 Swift Email.  In response, Plaintiffs confirmed the exact opposite, proclaiming that they fully intend to rely on this expanded universe of four million prescriptions at trial to illustrate "the continuing ramifications of the Defendants' due diligence failures."  *See id.* at 1, 5/24/21 Weinberger Email.

## ARGUMENT

Plaintiffs' radical expansion of the number of prescriptions at issue violates both the Court's schedule and the order on the motion to strike.  It comes even later than Plaintiffs' previous untimely disclosure, and just days before expert depositions are set to begin (after already having been rescheduled to allow Plaintiffs to revise their expert reports following the Court's order on the previous motion to strike).  The Court's schedule provides no time for any analysis or fact discovery on Plaintiffs' latest set of prescriptions, much less the substantial amount of time that would be necessary to investigate and defend these prescriptions.  *See* Doc. 3735.  Yet again, Plaintiffs' shifting disclosures have left the Pharmacy Defendants in the dark as to which prescriptions Plaintiffs will attack at trial and unable to fairly defend themselves against such attacks.  The Court should either strike the prescriptions disclosed in Part V of McCann's May 19 report, or continue the trial date as it previously advised would be necessary.

**I.    Plaintiffs Again Violated the Scheduling Order Without Justification or Excuse.**

Federal Rule of Civil Procedure 16 requires the Court to issue a scheduling order, and permits the Court to modify the timing of expert disclosures under Rule 26.  *See* Fed. R. Civ. P. 16(b)(1), (3)(B).  That is what the Court did here.  Recognizing Defendants' need for significant time to analyze the prescriptions Plaintiffs put at issue, the Court entered a schedule that required Plaintiffs to identify at the outset, in June 2020, the prescriptions they claim caused them harm, in advance of the fact discovery deadlines set by the Court.  *See* Doc. 3329; Doc. 3595.

5

When Plaintiffs violated the scheduling order in their April 2021 expert reports by doubling the number of prescriptions at issue (from one million prescriptions to two million prescriptions), the Court ruled that Plaintiffs could not rely on the untimely new prescriptions absent a continuance of the trial date until at least May 2022.  *See* Doc. 3726 at 2.

Now, Plaintiffs have violated both the Court's scheduling order (again) and the order on the motion to strike by disclosing ***quadruple*** the number of prescriptions originally at issue, even later in the schedule.  "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843-44 (6th Cir. 2020) ("district court could grant leave to amend only if the Counties demonstrated that 'despite their diligence they could not meet the original deadline'") (internal citations omitted).  There is no good cause to allow Plaintiffs to identify four million prescriptions in support of their claims in a supplemental expert report and so late in the schedule.  Plaintiffs have flouted the Court's orders without any justification or excuse.

**II.      Defendants Would Be Even More Severely Prejudiced If Plaintiffs Were Allowed to Rely on This Radically Expanded Universe of Untimely Disclosed Prescriptions.**

Rule 16 provides the Court with wide latitude to craft remedies to prevent prejudice where a party "fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f); *see, e.g.*, *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 311 (M.D.N.C. 2002) ("The Court has broad discretion in employing sanctions" under Rule 16(f).").  The Court "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)."  Fed. R. Civ. P. 16(f).

Rule 37, in turn, mandates exclusion of expert materials for failure to comply with the disclosure requirements of Rule 26, unless the failure is substantially justified or harmless.  *See* Fed. R. Civ. P. 37(c)(1); *Keener v. United States*, 181 F.R.D. 639, 641 (D. Mont. 1998) ("If full

compliance with Rule 26(a) and 26(e)(1) is not made, Rule 37(c)(1) mandates some sanction, the degree and severity of which are within the discretion of the trial judge.").

Here, the need to exclude Plaintiffs' second set of untimely disclosed prescriptions is even more compelling than it was following their first set of untimely disclosed prescriptions. Plaintiffs' latest disclosure includes a much larger universe of prescriptions and it comes even later in the schedule. *See, e.g.*, *Akeva*, 212 F.R.D. at 310 (striking untimely expert opinion because it "was not supplementation, but merely an out-of-time disclosure"); *Quevedo v. Trans–Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (excluding expert report due to one-and-a-half month delay); *Keener*, 181 F.R.D. at 641-42 (excluding expert report due to one month delay and a dramatically different opinion); *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 257–58 (5th Cir. 1997) (affirming denial of motion to supplement report only ten days late, prior to the end of discovery period, where party failed to justify delay).

The prejudice to the Pharmacy Defendants, likewise, is even greater than it was before. The Court provided ten months to develop discovery to defend against the original one million prescriptions Plaintiffs disclosed in June 2020. Now fact discovery is closed and there is simply no opportunity for Defendants to address these newly identified prescriptions in the middle of expert discovery, let alone before trial. That is true whether Plaintiffs call the new prescriptions "red flags," prescriptions illustrating "the continuing ramifications of the Defendants' due diligence failures," or some other lawyer cant. No matter how Plaintiffs characterize these newly identified prescriptions, the assertion that this enormous, expanded universe is "illustrative" of the Pharmacy Defendants' "due diligence failures" would require the Pharmacy Defendants to investigate them to prepare their defense.

## CONCLUSION

For these reasons, the Court should strike all but the 884,166 overlapping "red flag" prescriptions from the case (this number is already an increase of 40,000 prescriptions beyond what Plaintiffs represented they would restrict themselves to). Plaintiffs should not be allowed to rely on any other prescriptions at trial, either in expert or factual presentation, or in argument, and Plaintiffs should not be allowed to assert that any other prescriptions are potentially problematic. In the alternative, the Court should continue the trial date to allow the Pharmacy Defendants sufficient time to conduct analysis and fact discovery on Plaintiffs' untimely disclosed prescriptions. The Pharmacy Defendants would need this time to assess the new prescriptions with their experts and fact witnesses, and to take additional necessary depositions and other discovery. Plaintiffs' expert depositions, and the rest of the Court's deadlines, including the trial date, should be postponed accordingly.

Dated: May 26, 2021                    Respectfully submitted,


                                                       */s/   Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlitbeck.com
E-mail: kate.swift@bartlitbeck.com

*Attorneys for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*

*/s/ Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP

1800 M Street, NW, Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Pharmacy, Inc.*

/s/ *Kelly A. Moore*
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
Fax: (212) 309-6001
E-mail: kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Fax: (215) 963-5001
E-mail: elisa.mcenroe@morganlewis.com

*Attorneys for Rite Aid of Maryland, Inc., d/b/a Mid-Atlantic Customer Support Center, Rite Aid of Ohio, Inc., Rite Aid Hdqtrs. Corp., and Eckerd Corporation*

/s/ *Robert M. Barnes*
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA  15219
Phone: (412) 471-3490
Fax: (412) 391-2315
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Counsel for Giant Eagle, Inc. and*

*HBC Service Company*

/s/   *Tara A. Fumerton*
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that, this 26th day of May 2021, I served a copy of the foregoing via the Court's ECF system to all counsel of record.

                                        */s/ Kaspar J. Stoffelmayr*
                                        Kaspar J. Stoffelmayr

                                        *Attorney for Walgreens Boots Alliance, Inc., Walgreen Co., Walgreens Eastern Co., Inc.*