UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 1:17-md-2804 |
| *ALL CASES* | Judge Dan Aaron Polster |

**(PROPOSED) ORDER GRANTING PLAINTIFFS' EXECUTIVE COMMITTEE'S AND PLAINTIFFS SUMMIT AND CUYAHOGA COUNTIES'  AGREED MOTION FOR PAYMENT OF SUMMIT/CUYAHOGA HOLDBACK INTO, AND ESTABLISHING, MDL NO. 2804 COMMON BENEFIT FUND AND DIRECTING REIMBURSEMENT OF BELLWETHER LITIGATION COSTS**

On January 4, 2018, the Court appointed a Plaintiffs' leadership structure charged with advancing this MDL litigation for the common benefit of all Plaintiffs. (Doc #37).  The Court's *Order Regarding Plaintiff Attorneys' Fees and Expenses – Protocol for Work Performed and Expenses Incurred* (Doc. #358) ("Protocol Order") sets forth detailed instructions for the performance of common benefit work, and for the type of work and expenses that could qualify for potential compensation and reimbursement.  Under this authority and guidance, Plaintiffs' Co-Lead Counsel, Liaison Counsel, the members of the Plaintiffs' Executive Committee, and others duly authorized to perform common benefit work, have done so on an entirely contingent basis. These counsel have invested more than one million hours and approximately one hundred ten million dollars to fund the substantial expenses of conducting extensive discovery against dozens of  Defendants, in what many call the most complex civil litigation, and the most far-reaching public health crisis, our courts have faced. A substantial amount of these costs, approximately $13.7 million, as documented in the Declaration of Peter H. Weinberger  in support of the Agreed Motion (Doc. #____), were advanced and expended to prepare the Summit and Cuyahoga CT1

1

bellwether cases for trial, in effect creating a comprehensive trial package, that may inure to the benefit of plaintiffs generally, as well as enabling the Summit/Cuyahoga cases to settle on the literal eve of the trial itself. Those counsel who expended the litigation expenses on this important project now seek reimbursement of a portion of such costs, in the amount of $7.1 million, equivalent to 2.5% of the CT1 net monetary recoveries.

Given this background, the Court concludes it is just, timely, and appropriate to direct the reimbursement of costs as requested by the Agreed Motion, and to establish an MDL No. 2804 Common Benefit Fund into which future common benefit amounts may be deposited, pursuant to further Order of this Court. The 5% assessment, in the amount of $14.2 million, as requested in the Agreed Motion, will be used as the initial deposit into this Common Benefit Fund.

Various surveys of common benefit assessments in historical and contemporary MDLs have been conducted documenting a wide range of assessments, with many clustering in a range of 4-6%. *See, e.g.*, Rubenstein, "On What A Common Benefit Order Is, Is Not, and Should Be," Class Action Attorney Fee Digest 87 (March 2009); *In re Avandia Marketing, Sales Practices, and Prods. Liab. Litig.* (MDL No. 1871), 2012 WL 6923367 (E.D. Pa. 2012) (surveying cases and awarding 6.25%). Assessments in the 7%-9% range are also not uncommon in contemporary MDLs. *See, e.g., In re Aqueous Film-Forming Foam Prods. Liab. Litig.*, case no. 2:28-MN-2873, docket no. 72 (D.S.C. Apr. 29, 2019) (9%); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 274 F. Supp. 3d 485, 510 (W.D. La. 2017) (8.6%); *In re Bard IVC Filters Prods. Liab. Litig.*, case no. 2-15- MD-02641, docket no. 372 ( D. Ariz. Dec. 18, 2015) (8%); *see also Bard IVC Filters,* 2018 WL 4279834 at *1; *In re Invokana Prods. Liab. Litig.*, case no. 3:16-md-02750, docket no. 58 (D.N.J. Mar. 21, 2017) (7%). In the *Gadolinium MDL*, this Court ordered a 6% assessment (5% fees/1% costs) in the exercise of its case management authority. *See In re Gadolinium Based Contrast Agents Prods. Liab. Litig.*, case no. 08-GD-50000, docket no. 277 (N.D. Ohio Feb. 20,

2009). These cases provide ample support for similar costs and fees assessments from the CT 1 plaintiffs and their private counsel given the common benefit work done to develop them as bellwethers in These MDL proceedings.

**ACCORDINGLY, it is hereby ORDERED as follows:**

    1.    <u>**The CT1 Common Benefit Fee Assessment**</u>

A payment of 5% ($14.2 million) of the net monetary recovery received by Summit County and Cuyahoga County, will be made as a contribution to the MDL No. 2804 Common Benefit Fund, to be paid by or on behalf of each County based on its share of the total recovery. The Common Benefit Fee Fund shall be funded from fees charged pursuant to each counties' contract with private counsel. As appropriate, the 5% holdback for fees shall either be used for payment to the MDL No. 2804 Common Benefit Fee Fund or reimbursed to the respective County.

    2.    <u>**Establishment of MDL No. 2804 Common Benefit Fund**</u>

An interest-bearing account will be established at a financial institution to be proposed by the PEC, under this Court's ongoing jurisdiction, to receive the Summit/Cuyahoga assessment and any future assessments, to be held pending further Orders of this Court. These funds will be held as funds subject to the direction of this Court and are hereinafter referred to as the "Common Benefit Fund." No party or attorney has any individual right to any of these funds except to the extent of amounts directed to be disbursed to such person by order of this Court. These funds do not constitute the separate property of any party or attorney and are not subject to garnishment or attachment for the debts of any party or attorney except when and as directed to be disbursed to a specific person as provided by Court order.

        a.    The Court will appoint by subsequent Order upon PEC recommendation a qualified certified public accountant (the "CPA") to maintain this account and act as escrow agent, keep detailed records of all deposits and

        withdrawals, and to prepare tax returns and other tax filings. Summit and Cuyahoga Counties shall within seven (7) days of the order appointing the Common Benefit Fund CPA an amount equivalent to five percent (5%) of their recoveries from their bellwether settlement and previously subject to this Court's December 11, 2019 Order Regarding Track One Settlement Funds (Doc. #2980).

b.   The sum of $7,100,000.00, to be paid as partial reimbursement of the CTI expenses described in the Declaration of Peter H. Weinberger, shall be payable to the PEC MDL Capital Account to fund future litigation expenses incurred by the PEC in this matter. The unreimbursed portion of these litigation costs may be submitted for payment, as appropriate, in connection with any future common benefit assessments ordered by this Court.

c.   Amounts in excess of the total of the 5% common benefit assessment and the 2.5% approved costs reimbursements shall be returned to Summit and Cuyahoga Counties, pro rata, based on their contributions to the Holdback described in Doc. #2980.

d.   If the Common Benefit Fund ultimately exceeds the amount needed to make all future payments of Court-approved costs, fees, and any Court-approved multiplier on any fees, this Court may order a refund to those plaintiffs whose settlements have contributed to the Common Benefit Fund, including Summit and Cuyahoga Counties. Any such refund will be made in proportion to the amount of the contributions.

    e.    Nothing in this Order shall be deemed to modify, alter, or change the term of any fee contracts between plaintiffs' counsel and their individual clients.

**3.**     **<u>Further Proceedings and Continuing Jurisdiction</u>**

    a.    This Order is without prejudice to such other assessments of or awards of fees and costs as may be ordered by this Court under Rule 23(h), the common benefit doctrine, a Court-approved agreement among the parties to any global or comprehensive settlement with any defendant, or that may be provided by contract between attorneys and clients. The intent of this Order is to establish, secure, and supervise a fund to promote the purposes and policies of the common benefit doctrine and provide a source for equitable payment of services rendered and costs incurred for the benefit of Opioids plaintiffs.

    b.    Nothing in this Order precludes the parties from negotiating, agreeing on, and proposing a different fee structure in a global settlement of claims against any defendant that provides a different fund or mechanism for fairly compensating common benefit work and costs.

    c.    Any disputes or requests for relief from or modification of this Order will be decided by this Court in the exercise of its continuing jurisdiction over the parties subject to this Order, and its authority and discretion under the common benefit doctrine.

**IT IS SO ORDERED.**

                                              Honorable Dan Aaron Polster