UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*The Track Three Cases* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

### PHARMACY DEFENDANTS' MOTION TO ENLARGE THE TIME TO PRESENT THEIR DEFENSE

Pharmacy Defendants hereby move to enlarge the time for them to call and cross-examine witnesses, introduce evidence, and otherwise present their defense at the upcoming Track Three trial. The time currently allotted by the Court is insufficient for Pharmacy Defendants to present their defenses, violates the Federal Rules and Due Process, and is manifestly unjust.[1]

In support of this motion, Pharmacy Defendants state as follows:

1.  At issue in this case is the nature and cause of an alleged public health epidemic that occurred in Lake and Trumbull Counties over a period of many years. Plaintiffs seek billions of dollars to address the alleged crisis. Their claims purport to cover no less than 14 years of conduct by each of the five Pharmacy Defendants. Unlike other opioid trials proceeding in other courts, all set for lengthier trials, the claims here reach not one, but two functions of each Pharmacy Defendant: distribution and dispensing. Plaintiffs challenge *many hundreds of thousands* of orders for prescription opioids shipped by Pharmacy Defendants and prescriptions filled by their pharmacists as allegedly improper. Their claims involve the details of how each Pharmacy

---

[1] Pharmacy Defendants objected to the trial limits at issue in this motion long ago. *See e.g.,* Doc. 3573 at 31; December 15, 2020 Joint Submission on Track Three CMO at nn. 2 & 3, attached at Ex. 1.

7819842.1

Defendant developed and operated its unique suspicious order monitoring systems at different points in time, as well as the details of their dispensing operations at different points in time, which involve more than 50 individual pharmacies in the Track Three Counties and each defendant's corporate office. Both sets of claims depend on fact and expert evidence specific to each individual defendant and to individual pharmacies, pharmacists, and prescriptions. Additional critical evidence includes the conduct of the plaintiffs, the roles played by government regulators, the promotional efforts of prescription drug manufacturers, and the conduct of doctors, as well as the role of street-level diversion and illicit opioids. The broad scope of these claims (and the correspondingly broad scope of evidence necessary for Pharmacy Defendants to present their defenses) is entirely Plaintiffs' choice.

2. Now that fact discovery—and discovery of plaintiffs' experts—is complete, Pharmacy Defendants have identified 253 fact witnesses for trial. This includes 196 party witnesses and 57 third-party witnesses. Pharmacy Defendants also have disclosed 22 expert witness.

3. The Court has strictly limited the time for trial. The two plaintiffs, in the aggregate, shall have 75 hours to examine witnesses, and the five Pharmacy Defendants, in the aggregate, shall have the same 75 hours. Doc. 3758 at 2. These time limits include all direct examinations and cross-examinations of witnesses. This allows each defendant only 15 hours to cross-examine plaintiffs' 60 witnesses (50 fact and 10 expert) and examine its own witnesses. Each plaintiff, in contrast, has more than double that amount of time—37.5 hours instead of 15 hours. While Pharmacy Defendants will work diligently to coordinate efforts and avoid duplication, 15 hours per defendant in a multi-billion dollar case involving claims of extraordinary breadth is untenable. This case necessarily involves extensive defendant-specific fact and expert testimony and other

evidence. Other courts are providing more time for opioid trials involving fewer issues (*i.e.,* either manufacturer marketing-only or distributor distribution-only claims rather than, as here, both distribution *and* dispensing claims). In one of those cases, Track Two, there are fewer defendants. The 75-hour limit placed on defendants here, in a more complex case with more legal theories, untethered as it is to any evaluation of the needs of the case, is arbitrary and prejudicial and does not adequately consider Pharmacy Defendants' witness lists and trial time estimates.

4. Compounding the prejudice to Pharmacy Defendants, the Court has ordered the parties to identify, three months before trial, a list of 50 "most likely" witnesses per side. Doc. 3329 at 6. Further, it has ordered that parties only can call a witness who does not appear on that list upon a showing of good cause. *Id.* Fifty witnesses—to be allocated among five distinct defendants—is inadequate to defend a case of this magnitude, breadth, and potential consequence. Moreover, the per-side limitation is inequitable in that it gives each individual plaintiff far more witnesses than any individual defendant. And it requires defendants to identify this restricted universe of witnesses months before plaintiffs even make their opening statements or put on their case. It is one thing for a court to preclude a witness under the Federal Rules of Evidence as needlessly cumulative; it is quite another to preclude non-cumulative testimony simply because it does not fit within some arbitrary witness limit. There is no basis in law for such a rule.

5. The Court's "50 most likely witnesses" rule is untenable in other respects as well, does not allow for the practicalities of trial, and inappropriately encroaches on the parties' decisions on how to present their case. It provides no defendant-specific allowances based on plaintiffs' focus. If plaintiffs, for instance, have identified large numbers of witnesses from a subset of defendants (as they have with parties such as CVS and Walgreens), that subset of defendants naturally requires additional allowances. On the other hand, other defendants (such as

3

7819842.1

Rite Aid and Giant Eagle) believe that that they will need allowance for additional witnesses because of the small of number of their witnesses identified by Plaintiffs. Either way, any limits on witnesses presented by defendants must account for how Plaintiffs try their case against each defendant. Additionally, the rule is flawed insofar as it fails to account for the fact that many important witnesses may take the stand for mere minutes, creating time for additional witness beyond 50. Indeed, a hard limit on the number of witnesses prevents short examinations of a larger number of witnesses. The Court should not use a witness limit to micromanage Pharmacy Defendants' defense in such a way. Further, the rule makes no allowances for the possibility that one or some defendants may settle. In that event, the Court's rule would appear to prohibit the remaining defendants from filling witness slots previously filled by a settling defendant without showing good cause. This would make no sense and would create needless and unwarranted prejudice.

6. Both the 75-hour and 50-witness limits, individually and in tandem, violate Pharmacy Defendants' rights under the U.S. Constitution and the Federal Rules to present a defense, to due process, and to a fair trial. *See Dassault Systèmes, SA v. Childress*, 828 F. App'x 229, 245 (6th Cir. 2020) (explaining that district courts must exercise their discretion "in a manner that ensures the 'just' resolution of a case" under Fed. R. Civ. P. 1 and concluding that the trial court's "inflexibility" in the time allowed to present evidence "deprived [the defendant] of an adequate opportunity to present his case, and for no valid stated reason," where he estimated that he would need five times that amount); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 610 (3rd Cir. 1995) ("[W]itnesses should not be excluded on the basis of mere numbers. Rather, a district court should impose time limits only when necessary, after making an informed analysis based on a review of the parties' proposed witness lists and proffered testimony, as well

as their estimates of trial time.") (citations omitted). *See also* S*ee Raynor v. G4S Secure Sols. (USA), Inc*., 805 F. App'x 170, 177 (4th Cir. 2020) (district courts have not been given "free rein to manage time limits" and "time limits that are set, managed, or revoked in an arbitrary or inflexible way" are "disfavor[ed]," but finding no abuse of discretion for 7.5 hour limit on plaintiff in two-party case with "uncomplicated facts," where the time limit was not objected to pre-trial and the judge granted additional time). "Efficiency is an important value in our judicial system, but it is not the only one. There comes a point at which the pursuit of trial efficiency undermines the fundamental fairness of a trial." *Id.* at 178. That point is here.

   7.  Pharmacy Defendants therefore seek the following relief:

   a.  *The enlargement of the time for trial.* A fair opportunity to defend this case requires, at a minimum, 35 hours for each defendant to present its case (175 hours total). This is only an estimate, and there must be leeway to extend this time further if circumstances warrant as trial proceeds and any defendant would be deprived of the opportunity to present relevant, non-cumulative evidence in its defense. For example, if one defendant or another were to settle, more time for each defendant would be necessary to ensure common issues are covered.

   b.  *The elimination of a witness limit or, alternatively, the enlargement of the 50-witness limit on "most likely witnesses" to 100 and the removal of the "good cause" requirement to call additional witnesses already listed on Pharmacy Defendants' June 15 witness lists.* Pharmacy Defendants should not be precluded from calling relevant witnesses who were disclosed many months before trial, simply because they exceed an arbitrary limit. This includes, but is not limited to, the individual prescribers who wrote the prescriptions challenged by plaintiffs and the individual pharmacists who filled them.[2]

---

[2] The Court's allowance of plaintiffs' late request for "notes" discovery has made even more acute the need to call the doctors who wrote those prescriptions and the pharmacists that filled them.

c. *The reallocation of witness-examination time.* If an individual plaintiff is to have more time for witness examination than an individual defendant (it should not), the additional time should be at most a modest increment. It should not swallow the whole, as it does here. Accordingly, assuming each defendant is allocated 35 hours to put on its defense, each plaintiff should be allocated no more than the 37.5 hours each currently is allocated. As with defendants, plaintiffs should be eligible to request additional time if a need arises at trial.

d. *The striking of plaintiffs' distribution claims as wasteful and cumulative under Rule 403.* Plaintiffs cannot, as a matter of law, prove their distribution claims without prevailing on their dispensing claims—for if they did not, plaintiffs would have failed to prove that any prescription opioid pills in an allegedly "suspicious order" left any pharmacy improperly. Indeed, plaintiffs' whole case boils down to their dispensing claims. If plaintiffs cannot establish those dispensing claims, they have no distribution claims. If plaintiffs *can* establish them, their distribution claims are duplicative and superfluous. Any public nuisance, by definition, would be measured by the breadth of the dispensing violations and the concomitant release of prescription opioids into the community. The Court has acknowledged previously these very issues. Doc. No 3428 at 19-20 ("when we had the combined trial, I really thought it would focus on the dispensing claims"); *id.* at 21 ("I don't see how we try this case in November on distribution without it morphing into dispensing on both sides"). The distribution claims add significant length and complexity to the case. By way of example, plaintiffs seek to call five fact witnesses *from CVS alone* in connection with its distribution case. Accordingly, in addition to the requests outlined above, the distribution claims should be stricken from trial under Rule 403.

WHEREFORE, Pharmacy Defendants respectfully request that the Court grant the above relief and amend the Track Three Case Management Order and Civil Jury Trial Order accordingly.

7819842.1

Date: July 1, 2021

Respectfully submitted,

/s/ *Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-4106
edelinsky@zuckerman.com
smiller@zuckerman.com

*Counsel for CVS Indiana, L.L.C., CVS Rx Services, Inc., CVS Pharmacy, Inc., CVS TN Distribution, L.L.C., and Ohio CVS Stores, L.L.C.*

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
kate.swift@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc., Walgreen Co. and Walgreen Eastern Co.*

/s/ Robert M. Barnes
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA LLP 35th Floor, One Oxford Centre 301 Grant Street
Pittsburgh, PA 15219
(412) 471-3490
rbarnes@marcus-shapira.com
livingston@marcus-shapira.com
kobrin@marcus-shapira.com

*Counsel for Giant Eagle and HBC Service Company*

7819842.1

/s/ Tina M. Tabacchi
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/ Kelly A. Moore
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6612
kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5917
elisa.mcenroe@morganlewis.com

*Counsel for Rite Aid Hdqtrs. Corp., Rite Aid of Ohio, Inc., Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-Atlantic Customer Support Center and Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center*

7819842.1