UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION, <br><br> THIS DOCUMENT RELATES TO: <br><br> *Track Three Cases* | MDL 2804 <br><br> Case No. 1:17-md-2804 <br><br> Judge Dan Aaron Polster |

**PLAINTIFFS' OPPOSITION TO PHARMACY DEFENDANTS'
MOTION TO ENLARGE TIME TO PRESENT THEIR DEFENSE**

Plaintiffs oppose Defendants' latest attempt to disrupt the schedule and the scope of this long-awaited pharmacy bellwether trial. In setting the trial length, allocating trial time, and requiring narrowed witness disclosures (to allow both sides to prepare for a trial that begins in 90 days and to prevent unfair surprise), this Court appropriately exercised its discretion to focus the trial and prevent cumulative evidence in full consideration of the nature of the claims, defenses, and evidence at issue. Pursuant to this Court's instructions,[1] Plaintiffs have sought to maximize trial time efficiencies through pretrial determination of certain evidentiary issues, but Defendants have not agreed. To that end, plaintiffs proposed that the Joint Status Report for the July 7th Status Conference include the following paragraph:

*Plaintiffs believe that the parties should work with the court to streamline the trial and to avoid unnecessarily burdening the Court and the jury with issues that should be easily agreed to and/or stipulated to and/or handled pre-trial. Those matters include issues surrounding the authentication and admissibility (subject to relevancy objections) of ARCOS data, the defendants' dispensing data, the compilation of data including Rule 1006 summaries, documents produced by the plaintiffs, defendants and third parties and maintained in the ordinary course of business, and the geographic scope of relevant evidence. It is clear from the current trials that are occurring in other jurisdictions that an inordinate amount of time is being spent to lay the foundation for evidence that should be easily and efficiently resolved before trial. Plaintiffs suggest that an in-person meeting with SM Cohen be scheduled before the next status conference to discuss this issue.*

Defendants refused to allow this into the Joint Status Report, signaling their unwillingness to work with plaintiffs and the court to streamline the trial.

---

[1] *See e.g.* Dkt. # 3758 at 4 (ordering parties to enter stipulations to uncontested facts), 5 (directing parties to resolve objections to exhibits outside of trial time, if possible); Dkt. # 3759 at 3 (expectations regarding authentication stipulations).

There is no cause to disturb the limits or procedures in the manner Defendants request – particularly as it is Plaintiffs and not Defendants who bear the burden of proof. Nor is there any proper procedural or substantive ground for granting Defendants' request to gut the distribution claims from the very bellwether case which was designed to test the "intertwined" pharmacy self-distribution and dispensing case.

## I. The Time Allocation and Witness List Procedures for Trial Should Not be Modified in the Manner Sought by Defendants.

Defendants' Motion is based on a hypothetical inability to present their defense at trial, is premature, and is not well taken. Defendants have failed to make any showing that this Court has excluded evidence in a manner prejudicial to Defendants. The case limits and witness disclosure requirements arise from this Court's deep familiarity with the issues and claims and have not been set in an arbitrary or inflexible manner. Any constraints imposed by these limitations are felt most acutely by Plaintiffs who must prove their case against each of the five Defendants, who need do nothing to prevail if the Plaintiffs fail to meet that burden.[2]

"[A] district court has broad discretion to place limits on the presentation of evidence to prevent delay, waste of time, and needless presentation of cumulative material." *Trepel v. Roadway Exp., Inc.*, 40 F. App'x 104, 107–08 (6th Cir. 2002) (imposition of time limits on the parties and allocation of equal time between the sides was not unreasonable). *See also Sutkiewicz v. Monroe Cty. Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997) (court's imposition of 25-hour time limits per side was not abuse of discretion). Such limits may include limitations on the numbers of witnesses who may testify. *See Coburn v. Potter*, No. 06 C 5397, 2008 WL 681000, at *2 (N.D. Ill. Mar. 7, 2008) ("it is beyond dispute that a district court "has the power to limit the number of witnesses" who may testify at trial."); *Lutz v. Glendale*

---

[2] As the Parties with the burden of proof against five separate Defendants, a greater allocation of time to the Plaintiffs would be appropriate. Plaintiffs, however, concede that the trial time allocation is within the Court's discretion and that any request for additional time now, when the trial has not yet begun, would be premature.

*Union High Sch.*, 403 F.3d 1061, 1070–71 (9th Cir. 2005) ("district court did not abuse its broad discretion in limiting either the number of witnesses [the party] could call to testify as to particular issues or the time it had to present its case.") (reversing on other grounds)*; Chapman v. Kleindienst*, 507 F.2d 1246, 1251 (7th Cir. 1974) (recognizing "sound discretion of a trial judge to limit the number of witnesses that may appear to present essentially cumulative evidence"); *Loux v. United States,* 389 F.2d 911, 917 (9th Cir. 1968) ("[T]he court needs the right to impose some limitation on the number of witnesses testifying about a particular fact. Decision as to how many must be left to the sound discretion of the judge.").

There is no cause to disturb the Court's trial limitations in the manner requested by Defendants here. As illustrated by the very cases cited by the Defendants, it is only where courts impose limits arbitrarily and without consideration or reason that such limits come into question. *See Dassault Systemes, SA v. Childress*, 828 F. App'x 229, 245 (6th Cir. 2020) ("question[ing]" a district court's decision to "rigidly enforce" a one hour time limit for "pro se litigant trying a fairly complex case on two separate issues" to present his case where the court "failed to cite any specific reasons for imposing or adhering to its time limits, such as the prevention of duplicative evidence or the narrowness of the issues," but even then failing to find the district court abused its discretion); *Raynor v. G4S Secure Sols. (USA), Inc.*, 805 F. App'x 170, 177–78 (4th Cir. 2020) (review of sister circuits "unanimously suggests" that setting "limitations on the overall presentation of evidence…is within the authority of the district court" and should be reviewed for abuse of discretion only where "arbitrary or inflexible."); *Duquesne Light Co. v. Westinghouse Elec. Corp*., 66 F.3d 604, 609–11 (3d Cir. 1995) (expressing "concern" about district court's mid-trial revocation of one party's previously allotted trial time without warning, though failing to find reversable error).

The witness procedures and trial structure imposed by the CT3 CMO and trial orders are neither unjust to Defendants nor are they arbitrary. Defendants' arguments to the contrary ignore the history of this action through which the Court has gained close familiarity with the issues. This is the third trial track regarding self-distributing pharmacy claims (CT1, CT1B, and CT3) and the second trial track regarding pharmacy dispensing claims (CT1B and CT3) over which this Court has presided. This Court has long been involved in a review and consideration of potentially relevant witnesses and evidence in the pharmacy distribution/dispensing case involving these Defendants[3], both directly and through constant communication with discovery Special Master Cohen, who is deeply acquainted with the parties' evidence and arguments. The Court has further taken into account that this case is being tried on the basis of aggregate proof, such that it should not be necessary to delve into certain time intensive and granular evidence, such as each prescriber who wrote a red flagged prescription.[4] *See e.g.* Dkt. # 3283 at 27 (pharmacy counsel acknowledge the aggregate nature of Plaintiffs' claims); Dkt. # 3723 at 37-38 (discussing aggregate nature of proof).

The Court has also involved the parties in the CMO schedules and limitations. The requirement to make a pretrial disclosure of 50 "most likely" trial witnesses, and the "good cause" requirement for additional trial witnesses beyond those, were initially set out in the June 8, 2020 CT3 CMO, an order

---

[3] *See e.g.* Dkt. # 3283, April 30, 2020 Hearing Transcript, at 7-8 (discussing the history of CT1B prior to the CT3 setting); Dkt. # 3307, May 28, 2020 Hearing Transcript (sealed) at 11-13 and *passim* (nature of dispensing and distribution claims and evidence regarding each); Dkt. # 3573, December 2020 Hearing Transcript (discussing trial procedures and witnesses with knowledge); Dkt. # 3723, May 7, 2021 Hearing Transcript (instructing Plaintiffs to narrow their evidence or lose the trial setting).

[4] The recent discovery regarding Defendants' documented due diligence notes is not designed for a prescription by prescription assessment of Defendants' dispensing practices, but rather to test whether they were actually using the due diligence systems on which they so heavily relied in their discovery responses and 30(b)(6) depositions. *See e.g.* Plaintiffs' March 4, 2021 Motion to Compel at 5 ("Plaintiffs are entitled to test Defendants' claims that they are conducting due diligence by examining Defendants' documentation of their efforts").

that was negotiated through significant meet and confer among the parties and the Special Master, including written submissions by both parties. Dkt. # 3329.

Those initial CMO provisions were not static. The Court remained engaged with the parties on evidentiary and trial matters and considered and made modifications to the CMO where appropriate. For example, the initial CT3 CMO included a requirement to exchange preliminary lists of "witnesses with knowledge" in order to "focus the case" and inform further discovery. Dkt. # 3573 at 11-18. Defendants chose to make a disclosure of witnesses so voluminous as to be meaningless (disclosing 75,000 witnesses, whereas Plaintiffs disclosed 100). In a December 2020 hearing, following these preliminary disclosures, the Defendants made these same arguments they are asserting here regarding trial length and number of trial witnesses. Dkt. # 3573 at 11-18. After that hearing, the parties engaged in additional meet and confers, made additional submissions, and a new negotiated CMO was entered. Dkt. # 3595. Among the modifications to that CMO was a staggered disclosure requirement, such that Plaintiffs were required to disclose their "most likely" trial witnesses earlier than Defendants, and well after substantial completion of fact discovery. *Id.* at 3.

The reasons Defendants cited in December 2020 as supporting a need for an expansive potential witness lists – such as the "early" state of discovery, a professed lack of understanding of Plaintiffs' case, the fact that most of Plaintiffs' depositions of Defendants' witnesses had not yet occurred, the fact that 3 million prescriptions had been identified by Plaintiffs' preliminary red flag analysis, and the lack of Plaintiff expert reports (*see* Dkt. # 3573 at 13-18) – hold even less weight now that they did then.

Since December 2020, fact discovery has been all but completed, Plaintiffs' expert reports have been served, and Plaintiffs' case has narrowed from approximately 3,000,000 to 884,000 prescriptions. The nature of the 50 "most likely" trial witnesses listed in Defendants' July 1, 2021 disclosure is in line

5

with Plaintiffs' streamlined case. In December 2020, Defendants said to "defend against 3 million prescriptions" Defendants wanted to "call… 50 pharmacists" as witnesses at trial. Dkt. # 3573. Now that the number of prescriptions at issue is reduced to 884,000, Defendants' July 1, 2021 "most likely" disclosure includes 11 pharmacy level personnel (dispensing pharmacists and pharmacists who serve as local supervisors)[5] – a ratio generally in line with Defendants' prior representation. *See* Exh. A, Defendants' July 1, 2021 Witness Disclosure.[6]

Defendants' argument that they should not be required to narrow their witnesses now because "we are months away from trial" rings hollow. Substantially all remaining discovery is of Defendants and their affiliated third parties, and the only remaining Plaintiff expert analysis is supplemental analysis regarding a small subset of Defendants' own due diligence files. Defendants further have the benefit of Plaintiffs' own narrowed list, served a week earlier than Defendants'. There was nothing preventing Defendants from appropriately making their disclosures now.

Further, as before, the witness disclosure requirement is not inflexible, but rather expressly permits a party "to call at trial a witness who was not among the identified 'most likely' trial witnesses" if there is "good cause." Dkt. # 3595 at 4. At trial, Defendants may, with good cause, seek to call additional witnesses beyond their 50 "most likely," including – but not limited to – the more than 100 additional "likely" witnesses appended to Defendants' July 1, 2021 disclosure.

---

[5] Of note, as before with the disclosure of witnesses with knowledge, Defendants have flouted the clear instructions and intent of this Court's order regarding witness disclosure. In addition to disclosing the 50 "most likely" trial witnesses, Defendants have also tacked on a list of nearly 100 so-called "likely" witnesses, seeking to triple the number of witnesses on the mandated disclosure. This additional list is outside of the bounds of this Court's clear instructions and should be disregarded. In a separate pleading, Plaintiffs will be seeking to strike the "likely list". Plaintiffs, accordingly, do not here address the number of pharmacy personnel included by Defendants on the additional "likely" witness list.

[6] Doubtless this Court has also considered Defendants' prior claims to need extensive evidence on certain issues, which Defendants failed to act upon. *See e.g.* Dkt. # 3723 at 37-38 (discussing Defendants' claim to need dozens of depositions and actual taking of only a handful).

If Defendants' arguments feel well-worn to this Court, they should. Defendants here have already sought to extend the length of the CT3 trial, to expand the time allocated to the Defendants, and to increase the number of "most likely" witnesses, and those arguments have already been considered and rejected. *See, e.g.* Dkt. # 3573 at 31. These same arguments for more time, different allocation, and more witnesses date back to CT1, at which time they were made by many of these same Defendants, considered by this Court, and also rejected. *See* Dkt. # No. 2133, 2682, 2692, and 2794; Dkt. # 2689; 2828 at 22.[7] The reasons underscoring this Court's rejection of those arguments in CT1 support a similar rejection now. Indeed, now they are even more compelling given the narrowed issues and claims.

The CT1 trial order split trial time 50/50 between plaintiffs and defendants and allocated each side 100 hours for presentation of evidence. Dkt. # 2594 at 1-2. Similarly, the CT3 trial order provides for a 50/50 split and allocates 75 hours of trial time to each side. *See* ECF No. 3758. However, where in CT1 the two Plaintiffs sought to proceed with six causes of action, against seven defendant families, comprising three types of defendants (manufacturers, distributors, and pharmacies) (*see* Dkt. #s 2660; 2682), in CT3, Plaintiffs are only proceeding on a single cause of action (public nuisance), against five defendant families, comprising a single type of defendant (pharmacy). The 75 hours allotted here to five defendants of the same type to defend against a single cause of action is more than ample, particularly in comparison to the 100 hours allotted in CT1. Though CT3 also directly concerns dispensing duties, the dispensing and distribution issues are so complementary and "inextricably intertwined" for the pharmacies that this Court has long expressed difficulty understanding how one

---

[7] Defendants in CT1 also complained that each defendant family would receive only 15 hours if time were split evenly and complained that each plaintiff would receive more time than each defendant. Dkt, #s 2133; 2682; 2692; 2794. *See also* Dkt. # 2810.

7

could be tried in absence of the other. Dkt. # 3283 at 19. The commonalities of issues, arguments, and evidence among the CT3 Defendants is significant.

Plaintiffs, however, have the burden of proof as to each of the five defendants and anticipate that they will need all of their currently allocated trial time to have a fair opportunity to present their case. Moreover, any increase in time to any of the defendants, would upset the 50/50 balance that this Court determined was appropriate after due consideration of all of the parties' arguments.

As before, the Defendants' attempts to expand the trial length, reallocate trial time, and avoid focused pretrial witness disclosures should be denied.

## II. Plaintiffs' Distribution Claims Should Not be Struck.

The Pharmacy Defendants' request that the court strike Plaintiffs' distribution claims under Rule 403 borders on the absurd. Pharmacy Defendants failed to cite any legal authority or precedent in support of their attempt to use an *evidentiary* rule to strike *claims* as opposed to evidence. Rule 403 contemplates that "[t]he court may exclude relevant ***evidence*** if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). Rule 403 simply does not contemplate striking *claims*. Even the exclusion of *evidence* under Rule 403 is considered "an extraordinary measure because it permits a trial court to exclude concededly probative evidence, and thus it should be used sparingly." *United States v. Caldwell*, 820 F.2d 1395 (1987), *citing United States v. Thevis*, 664 F.2d 616, 633 (5th Cir.), *cert. denied*, 459 U.S. 825 (1982). Unfair prejudice "does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *United States v. Gibbs,* 182 F.3d 408, 430 (6th Cir. 1999).

8

Pharmacy Defendants presumably attempt to employ this unorthodox route because their previous attempts to dismiss Plaintiffs' distribution claims through more legitimate avenues have failed.  *See* No. 17-md-2804, Dkt. # 3340 (Pharmacy Defendants' Motion to Dismiss Second Amended Complaints); Dkt. # 497 (Pharmacy Defendants' Motion to Dismiss); Dkt. # 1203 (Opinion and Order denying Pharmacy Defendants' Motion to Dismiss (Dkt. # 497)); Dkt. # 3403 (Opinion and Order denying Pharmacy Defendants' Motion to Dismiss Second Amended Complaints (Dkt. # 3340)).[8] Pharmacy Defendants' Motion for Reconsideration was similarly denied. *See* Dkt. # 3499.  Regardless, Pharmacy Defendants' improper attempt to use Rule 403 to strike Plaintiffs' distribution claims, which withstood their prior motions to dismiss, should be denied.

Without citing any authority, Pharmacy Defendants incorrectly assert that Plaintiffs must prove their dispensing claims in order to prevail on their distribution claims. This is simply untrue. The

---

[8] In their motion to dismiss the Track three claims, Pharmacy Defendants did not brief arguments that this Court had already rejected in the Track One proceedings. Doc 3340-1 at 30.  The Pharmacy Defendants did include a section in their memorandum incorporating by reference their briefing from the prior Track One motions solely for the purpose of preserving those arguments for appellate review.  Plaintiffs correspondingly included a section incorporating their prior briefs for the same purpose.  In its order denying the Pharmacy Defendants' motion to dismiss the Track Three claims the Court noted that it had "previously concluded under Ohio law that nearly identical claims based on the Pharmacy Defendants' *distribution* activity survive a motion to dismiss." Dkt. # 3403 at 2 (referencing *Opinion and Order in The County of Summit, Ohio v. Purdue Pharma L.P.,* Case No. 18-OP-45090 (Doc 1203)). The Court also reiterated this point later in the order stating: "As to claims based on the Pharmacies' distribution activities, this Court has previously found similar allegations sufficiently support an absolute public nuisance claim under Ohio law. *See, e.g., In re Nat'l Prescription Opiate Litig*., 440 F. Supp. 3d at 805-08 (Dkt. # #: 3177 at 41-47) (plaintiffs sufficiently pled Ohio absolute public nuisance claims based, in part, on defendants' alleged failure to maintain effective controls with respect to distribution activities); *Opinion and Order Regarding Manufacturers' Summary Judgment Motion in Track One, In re Nat'l Prescription Opiate Litig*., 406 F. Supp. 3d 672, 672-76 (N.D. Ohio 2019) (Dkt. # #: 2578 at 1-7) (material fact issues regarding defendants' alleged failure to maintain anti-diversion controls precluded summary judgment on Ohio absolute public nuisance claims); *see also Opinion and Order Regarding Motions to Dismiss West Boca, In re Nat'l Prescription Opiate Litig.*, 2020 WL 1669655, at *17-18 (N.D. Ohio Apr. 3, 2020) (Dkt. # #: 3253 at 29-33) (same under Florida law); *Report and Recommendation Regarding Motions to Dismiss Blackfeet Tribe, In re Nat'l Prescription Opiate Litig*., 2019 WL 2477416, at *9-18 (N.D. Ohio Apr. 1, 2019) (Dkt. # #: 1500 at 26-34) (same under Montana law), *adopted by* 2019 WL 3737023, at *9-11 (N.D. Ohio June 13, 2019) (Dkt. # #: 1680 at 16-20); *Report and Recommendation Regarding Motions to Dismiss Muscogee Nation, In re Nat'l Prescription Opiate Litig*., 2019 WL 2468267, at *26-33 (N.D. Ohio Apr. 1, 2019) (Dkt. # #:1499 at 50-62) (same under Oklahoma law), *adopted by* 2019 WL 3737023, at *9-11 (N.D. Ohio June 13, 2019) (Dkt. # #: 1680 at 16-20)". Doc 3403 at ft. nt. 28.

Pharmacy Defendants have separate distribution and dispensing duties and can be liable for each independently. As this court has already ruled, in their role as distributors, the Pharmacy Defendants must "(1) identify suspicious orders of controlled substances; (2) report to the Drug Enforcement Administration ("DEA") suspicious orders when discovered; and (3) decline to ship a suspicious order unless and until, through due diligence, the registrant can determine the order is not likely to be diverted into illegal channels." Dkt. # 2483. In addition to their duties as distributors, the Pharmacy Defendants also had a duty to design and implement systems to prevent diversion of controlled substances in their retail pharmacy operations and not to dispense illegitimate prescriptions. *See* Dkt. # 3366.  While Plaintiffs' distribution claims are neither duplicative nor superfluous, they are "inextricably intertwined" with Plaintiffs' dispensing claims, as this Court has previously recognized. Dkt. # 3283 at 19. As the court noted, the due diligence requirement of the distribution duty "would almost certainly require probing the dispensing practices of the store." Dkt. # 3283 at 23.  Conversely, documents produced in this case indicate that some distribution SOM systems could have been used corporately to screen for pharmacies with problematic dispensing practices. Thus, while there are distinct and separate legal duties, and separate violations of those legal duties, the evidence to prove those violations is, at least in part, overlapping.

Taking Pharmacy Defendants' argument to its logical conclusion would mean that self-distributing pharmacies would not have any distribution requirements under the CSA and would only have dispensing requirements, but that is simply not the case.  The DEA has clearly applied separate duties to dispensing and distribution. These multiple duties are complementary, but neither wholly replaces the other.  For example, Walgreens 2013 $80 million fine was based on both dispensing and distribution failures.  One also informs the other.

Finally, striking the distribution claims would defeat the purpose for which CT3 was created. At the outset, the Court directed the issues to be decided in CT3: "(1) only public nuisance claims (2) against only the pharmacy defendants [3] in their roles as distributors *and* dispensers." Dkt. # 3261 at 2 (emphasis added). *See also* Dkt. # 3315 ("Plaintiffs here will try the claim against Chain Pharmacies in their roles as distributors *and* dispensers."); Dkt. # 3283 at 7 ("We will end up with two bellwether trials. November of 2020 will be the distribution claims alone, Plaintiff Summit County, Cuyahoga County, and in May of 2021, we will have Lake County and Trumbull counties against the same pharmacies, and we will have distribution claims *and* dispensing claims.") (emphases added).

## CONCLUSION

For the reasons stated above, Defendants' Motion to Enlarge Time to Present Their Defense (Dkt. # 3773) should be denied.

Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304)654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

11

W. Mark Lanier
LANIER LAW FIRM
10940 W. Sam Houston Pkwy N., Ste 100
Houston, TX 77064
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Trial Counsel*

*/s/Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY &LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

*/s/Frank Gallucci*
Frank L. Gallucci
PLEVIN & GALLUCCI CO., L.P.A.
55 Public Square, Suite 222
Cleveland,   OH   44113
(216) 861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New   York,   NY   10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiffs Lake County and Trumbull County, Ohio*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*
Peter H. Weinberger
