```
 1                  UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
 2                        EASTERN DIVISION

 3

 4   - - - - - - - - - - - - - -

 5   IN RE:                          Case No. 1:17-md-2804
                                     Cleveland, Ohio
 6   NATIONAL PRESCRIPTION
     OPIATE LITIGATION              Tuesday, July 7, 2021
 7

 8   Case Track 3                   Telephonic Status Conference

 9   - - - - - - - - - - - - - -

10

11

12               TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE DAN A. POLSTER,
13            UNITED STATES DISTRICT JUDGE, AND
          DAVID A. RUIZ, UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19   Official Court Reporter:      Heather K. Newman, RMR, CRR
                                    United States District Court
20                                  801 West Superior Avenue
                                    Court Reporters 7-189
21                                  Cleveland, Ohio 44113
                                    heather_newman@ohnd.uscourts.gov
22

23

24

25     Proceedings recorded by mechanical stenography, transcript
              produced with computer-aided transcription.
```

```
 1    APPEARANCES:

 2    For the Plaintiffs:          Joseph Rice, Esq.
                                   Elizabeth Cabrazer, Esq.
 3                                 Paul Farrell, Esq.
                                   Peter H. Weinberger, Esq.
 4                                 Steven J. Skikos, Esq.
                                   Troy Rafferty, Esq.
 5                                 Frank Galluci, Esq.
                                   W. Mark Lanier, Esq.
 6
      For the Albertson Defendants: Francis A. Citera, Esq.
 7                                 Gretchen Miller, Esq.

 8    For CVS Defendants:          Eric Delinsky, Esq.
                                   Sasha Miller, Esq.
 9                                 Graeme Bush, Esq.

10    For HBC/Giant Eagle
      Defendants:                  Robert M. Barnes, Esq.
11                                 Josh Kobrin, Esq.
                                   Scott D. Livingston, Esq.
12
      For the Kroger Defendants:   Ronda L. Harvey, Esq.
13                                 Ashley Hardesty Odell, Esq.

14    For the Meijer Defendants:   Greg Shinall, Esq.
                                   Trevor Scheetz, Esq.
15
      For the Publix Defendants:   Gregory S. Chernack, Esq.
16                                 Kathryn Sacco Jenson, Esq.

17    For Rite Aid Defendants:     Kelly A. Moore, Esq.
                                   John Lavelle, Esq.
18
      For Walgreen Defendants:     Kaspar J. Stoffelmayr, Esq.
19
      For Walmart Defendants:      Tina M. Tabacchi, Esq.
20                                 Tara Fumerton, Esq.

21    Also Present:                Special Master David Cohen

22

23                         *   *   *   *   *

24

25
```

1           CLEVELAND, OHIO; WEDNESDAY, JULY 7, 2021; AT 1:06 P.M.

2                             --oOo--

3                       P R O C E E D I N G S

4           THE COURT:  Dan Polster calling in.  Do we have

5     everyone we need?

6           JUDICIAL ASSISTANT:  Judge, I've made sure we have at

7     least one representative for everybody.

8           THE COURT:  Okay.

9           JUDICIAL ASSISTANT:  Plaintiffs are fine with going

10    ahead.

11          Do you want me to run a list or do you --

12          THE COURT:  No.  You can keep a list for the file.

13          We've got a court reporter?

14          JUDICIAL ASSISTANT:  We do.

15          THE COURT:  All right.

16          All right.  This is our monthly Track 3 MDL Status

17    Conference.

18          All right.  Defendants filed a motion to enlarge the

19    time.  Plaintiffs filed an opposition.  Do defendants have

20    anything they want to say in reply?

21          MR. DELINSKY:  Good afternoon, Your Honor.  This is

22    Eric Delinsky for CVS and the named pharmacies on this motion.

23          Our hope was that we could put in a reply brief by

24    this Friday.

25          THE COURT:  Well, I'm going to deal with it right now.

1  I -- do you want -- I mean, I -- I plan to deal with it right
2  now and so if there's something you want to say, fine.  I'm not
3  going to spend a lot of time with -- you know, I understand the
4  plaintiffs' -- the defendants' position.  I've seen the
5  defendant -- the plaintiffs' position, and if the defendants
6  want to make an oral reply, fine.  If you don't, that's okay.
7            MR. DELINSKY:  Understood, Your Honor.
8            I think we'd make a very small number of points in
9  reply, starting with the fact that plaintiffs' analysis doesn't
10  focus in any respect on what the defendants need to defend
11  their case.  The plaintiffs focus on their view that the Court
12  has the authority to set this kind of limit and that they are
13  able to meet the authority given how they wish to defend the
14  case, but they don't address our points, which is, this is
15  unjust, vis-a-vis how we need to defend the case.  And
16  Your Honor has been clear from the get-go that the plaintiffs
17  can try the case the way they wish to try the case and the
18  defendants can try the case the way the defendants wish to try
19  the case.  That's not to say any party can put in cumulative or
20  wasteful evidence that should be precluded under Rule 403.
21  Nobody is suggesting that.  But to illustrate, Your Honor, the
22  injustice, from our perspective, of the way that these limits
23  are working, both in isolation and in tandem -- and this is
24  obviously CVS specific -- but plaintiffs have identified 12 CVS
25  witnesses on their list of 50.  Because we have to divide our

1    list of 50 with our other parties and we have to leave room for

2    third parties, too, we only can call -- we've only put on that

3    list of 50, given the time limits and the -- that witness list

4    restriction, seven CVS witnesses, and I don't think that the

5    Court intended there to be a situation where plaintiffs could

6    call nearly double the amount of witnesses from one particular

7    defendant than the defendants could itself.  And that's just

8    one illustration, Your Honor.  That's -- I don't mean that to

9    be exhaustive in any sense.

10            THE COURT:  Well --

11            MR. DELINSKY:  We have made clear from the get-go --

12            THE COURT:  They're not.  They've listed 12.  They're

13   not going to have time to call 12.  I mean, I don't -- they've

14   listed 12 for each of five defendants.  That's 60 witnesses.

15   They're not going to have time to call 60 witnesses.

16            MR. DELINSKY:  No.  No, they -- Your Honor, they've

17   put in a list of 50 and of those are, say, five -- I'm giving

18   you an example, 12 CVS witnesses, and we can't even -- we

19   can't -- and I take your point, Your Honor, and -- but we can't

20   meet that, and that's just one minor illustration.  We do not

21   believe we can try this case with 15 hours per defendant, which

22   is all we would be left at with five defendants.  It is not

23   sufficient for us for a case that really articulates two

24   separate theories of liability.

25            And we're --

```
 1              THE COURT:  What is -- what are the -- hold it.  What
 2    are the two theories of liability?
 3              MR. DELINSKY:  Distribution on one hand and dispensing
 4    on the other.
 5              THE COURT:  Well, it --
 6              MR. DELINSKY:  And --
 7              THE COURT:  As you pointed out, they go together.  All
 8    right?  They go together.  First of all, the distribution is
 9    only for a limited time, some period when the pharmacies were
10    distributing -- when some of the pharmacies were distributing
11    themselves, and again, the harm is essentially the same.  All
12    right?
13              I mean, I -- I think this case is really fairly
14    straightforward.  First and foremost the question is, did each
15    of the defendants have a system in place to enable its
16    individual pharmacies to monitor what was going on.  Did you
17    have a system?  If you didn't have a system at all, it doesn't
18    matter, in my view, whether you have, you know, 15 hours or
19    150 hours, you're going to have problems with the jury.  All
20    right?  That's the reality.  The second question is, if you had
21    a system -- and again, that question can be answered very
22    quickly.  It's -- I mean, essentially should be stipulated to;
23    you either had a system or you didn't.  You don't need a lot of
24    witnesses testifying about it.  It's neither the
25    (unintelligible) so you got one or you didn't; second, did you
```

1  use it.  Because, again, you could have the best system in the

2  world and if you didn't use it, it's not worth anything.  Well,

3  that will maybe take a little time, but, again, that shouldn't

4  take much time for either side.

5       The third issue is a little more complicated, is

6  assuming you had a system and you used it, was it sufficiently

7  robust to -- to put you on notice of most of the things that

8  were suspicious.  No system is perfect.  All right?  A system,

9  if it's -- if it's adequate, it would clue you in on the things

10 you could check further on, and that probably will take the

11 most amount of time assuming that answers to Questions A and B

12 are "yes."  If answers to Questions A and B are "no," you don't

13 need much.  There isn't much to say for either side.

14      So I -- I hear what you're saying.  I mean, again,

15 originally this was going to be a 4 -- I said 4 weeks.  I've

16 lengthened it to 5 to 6 weeks.  I don't know if all the

17 defendants are going to remain in at the end of -- you know,

18 start this trial, but I'm not going to cut the time limit if we

19 have fewer than five defendants.  Okay?  So, if there are fewer

20 than five defendants, well, then the defendants get, you know,

21 more time on average per defendant.

22      The defendants -- everyone knew from the beginning

23 when we set this that the whole idea was to get this done

24 before the holidays because no one wants long breaks,

25 everyone's going to want to travel this year because no one

1    could travel last year and we won't be able to get a jury.  All

2    right?  So the idea is this would be done before Thanksgiving,

3    and everyone understood that.  I've made that clear, and

4    everyone understood that, and it makes sense.  So the

5    plaintiffs are going to have to streamline their case and the

6    defendants will streamline their defense and the longer the

7    case drags on, a jury would lose focus and that's not fair to

8    either side.  So I have a little bit of extra -- you know, the

9    way I've factored this, the case should go to the jury, well,

10   by. . . I wrote this out.  It should go to the jury by, you

11   know, maybe the second week of November.  If it takes a few

12   more hours, I'm not going to cut off the time in the middle of

13   an expert witness of something.  If each side needs a few more

14   hours, we have it built in, but the case has to go to the jury

15   no later than I would say the Tuesday or Wednesday before

16   Thanksgiving, which gives several days for the jury to

17   deliberate.  So everyone understood that from the start and

18   that's what we're going to do and, so, I'm -- I'm denying the

19   defendants' motion.  I'll just monitor things as we go along,

20   but the defendants -- I'm not telling defendants how they can

21   defend their case, but your proposal of, you know, the time you

22   have would take everyone well past Christmas and it would be

23   totally unworkable.  So, all right.  So that takes care of

24   that.

25           The jury questionnaires are due, I think, by end of

1   the day tomorrow.  They should go both to Special Master Cohen

2   and to me.  I'm going to -- we're going to look through it

3   carefully.  Obviously, I sent the sample from what they used

4   2 years ago.  That should be a model.

5            The jury department is going to send initial summons

6   to approximately a thousand people on July the 23rd and they're

7   only going to ask one question and say the trial for which

8   you've been summoned is expected to start September 29th, and

9   that's to be put -- we put September 29th because that's the

10  day of voir dire.  I've set aside 3 days of voir dire, a

11  Wednesday, Thursday, and Friday, the last week of September --

12  and last approximately 8 weeks, and I'm counting the first week

13  and I've got some time for jury deliberations, so I'm putting

14  approximately 8 weeks.  The one question they're asked is:

15  "Would this service present an undue hardship or extreme

16  inconvenience for you?  Please circle 'yes' or 'no.'  If 'yes,'

17  please indicate the circumstances.  If 'no,' please write

18  'N/A.'"  So, that could include, you know, economic hardship.

19  Either they're -- you know, they have a job they can't get away

20  from or the employer's not paying them and -- for jury service

21  and they can't afford to miss work for 8 weeks, or they've got

22  a health issue, I've got to take care of a family member, or

23  they've got COVID concerns, anything, and they'll -- they check

24  "yes," circle "yes," they'll put the explanation in and then I

25  am going to leave to the jury department to screen -- to do the

1    screening.  I'm not going to get involved.  The lawyers aren't

2    going to get involved.  And people that have hardships will be

3    excluded.

4         And last time we did this we had roughly 500 that said

5    they were available.  We may get less this year -- this time

6    because of COVID.  I don't know.  But however many we get

7    through this screening we will then send the detailed

8    questionnaire to and they'll be responding and then we've got a

9    schedule where we'll get those questionnaires back and then

10   we'll get them to everyone and we'll review them and there's a

11   date where we're going to sit down and try and go through and

12   agree on as many people to exclude as possible.  If there's

13   disagreement, I'll have to make some decisions and then -- then

14   we'll divide the number left among the 3 days and bring them

15   in.

16        We need -- we need 22 jurors.  My plan is to seat 12

17   and however many we have left at the end will deliberate.

18   And -- but there are, I guess, five -- if we have five

19   defendants, there will be five peremptories for the defendants

20   and five for plaintiffs.  If we end up with fewer, there will

21   be fewer.  So we'll need as many as 22 to allow for full

22   peremptory challenges.  If there are fewer defendants, it may

23   be a little less.

24        Two years ago I was able to pick -- I can't

25   remember -- 19 or 20 the first day and we just need to pick a

1    couple more the next day and we were done by noon the second

2    day.  We didn't have to go the afternoon of the second day or

3    the third day.  But there's no way to predict that.  So that's

4    how we'll do it.

5             There's a submission for the remaining bellwether

6    trials that's due this Friday.  I think it's a case management

7    schedule, proposed case management schedule.  I think one's

8    been submitted from *Montgomery County*.  The other four are due

9    Friday.

10            So I don't think there's anything else pending, is

11   there?

12            MR. WEINBERGER:  Your Honor, this is Pete Weinberger

13   for the plaintiffs.

14            Just -- just to let you know that just a few minutes

15   ago I forwarded our proposed jury questionnaire and the

16   preliminary statement that was -- that's due to be exchanged

17   tomorrow, I had submitted that, both of those documents to the

18   defendants for review and invited them to confer with us on

19   both of those documents, but, obviously, with respect to the

20   jury questionnaire, we'll make sure that it gets submitted to

21   you and to Special Master Cohen by tomorrow.

22            THE COURT:  Well, that's a pretty fast turnaround.  I

23   mean, I would have thought there would have been more

24   communication -- I mean. . . I mean, it doesn't make -- I mean,

25   I can't imagine you're -- the defendants are going to be able

1   to get their response in 24 hours, Pete.  That seems -- if

2   that's how you were doing it, it was really. . . I think we're

3   going to have to extend that a little bit.

4           MR. WEINBERGER:  Well, that's why I wanted you to

5   know, Your Honor.  I apologize for --

6           THE COURT:  Well --

7           MR. WEINBERGER:  -- the fact we just submitted it

8   today.

9           THE COURT:  Well, it definitely needs -- it's not --

10  it's not going out till the end of August --

11          MR. WEINBERGER:  Right.

12          THE COURT:  -- so I think we've got to figure out

13  what's workable.  I mean, ideally, I want to get back, you

14  know, one agreed-upon questionnaire and if there are some

15  additional questions that the plaintiffs want to ask that the

16  defendants think are improper, then you can list them and vice

17  versa and then I'll obviously look at those and decide if I'm

18  going to include any of them.  But I'll certainly -- I can't

19  imagine I'm not going to include a question that everyone --

20  that both sides want to ask, unless I think it's totally

21  improper or too invasive.  That would be the only thing.

22          So, you -- I mean, you tell me when you're -- when

23  you're going to be able to get that process done.

24          MR. WEINBERGER:  So -- go ahead.

25          MR. BARNES:  I'm sorry, Pete.

1           This is Bob Barnes for Giant Eagle.

2           The defendants have a working relatively final

3   proposed jury questionnaire which we'll be able to circulate, I

4   believe, by the end of the day today, and I think the parties

5   would -- could probably use approximately 1 week to go back and

6   forth for any differences or to discuss any differences.  So

7   that would be our proposal, Judge.

8           THE COURT:  That's reasonable.

9           Pete, does -- how does that sound to you, just adding

10  another week?

11          MR. WEINBERGER:  That's fine, Your Honor.

12          THE COURT:  All right.  That's fine.  Let's just say,

13  I guess, get in touch -- let's just say noon on Friday,

14  July 16th.

15          MS. TABACCHI:  Your Honor, it's Tina Tabacchi.

16          Just for clarification.  Tomorrow was also the day, I

17  believe, for the preliminary statement.  Can we just put those

18  on the same day?

19          THE COURT:  That's fine.  That's fine.  That's fine.

20  Noon on -- for the jury questionnaire and preliminary

21  statement.  That's fine.

22          MS. TABACCHI:  Your Honor, this is Tina Tabacchi

23  again.  I have one question for clarification with respect to

24  the case management orders for the other bellwethers.

25          I believe that the deadline of this Friday was for the

```
 1   parties to submit to Your Honor position statements about the

 2   order of the cases and not to submit complete CMOs for those

 3   cases until we get further direction from Special Master Cohen,

 4   but I wanted to make sure that there was no mis- --

 5   misunderstanding on our part.

 6               THE COURT:  Maybe that's it.

 7               Special Master Cohen, is that right, they're supposed

 8   to -- I mean, everyone's agreed that Montgomery County is first

 9   and then we've got four others and they're supposed to -- each

10   side tell us which -- which -- well, what order they want them

11   in?

12               SPECIAL MASTER COHEN:  That's right, Judge, you asked

13   for position --

14               MS. TABACCHI:  Yes.

15               SPECIAL MASTER COHEN:  -- position papers on the --

16               THE COURT:  All right.  On the --

17       (Simultaneous crosstalk).

18               THE COURT:  -- on the order of the next four.  All

19   right.

20               MS. TABACCHI:  Thank you.

21               THE COURT:  So it's bellwether.  It's final Friday.

22   All right.  Position papers on -- on the proposed order of the

23   remaining four.

24               MR. WEINBERGER:  So, Your Honor, this is Pete again.

25               Our understanding and, you know, obviously we'll do
```

1  whatever the Court wants, but our understanding was that the

2  defendants' position paper was due on the 9th, which is this

3  Friday, and that we would have a chance to look at it and then

4  respond to it as opposed to submitting at the same time.

5          THE COURT:  I don't know.  I didn't do any of this

6  and, quite frankly, maybe I'll just come up with the order

7  myself and be done with it.  I mean --

8          MR. WEINBERGER:  Well, Your Honor, I'm not -- I mean,

9  obviously whatever the Court pleases, but do you -- there had

10  been a statement, I think by Special Master Cohen, that this

11  was the order and the defendants objected to it and -- and they

12  were given until the 9th to respond to state their position.

13  Again, if you want us to put our position of the order in on

14  the same day, we're happy to do that.

15          THE COURT:  Well, I assume -- did the plaintiffs agree

16  to that order and it is only defendants who objected?  If

17  that's the case, the plaintiffs don't need a --

18          MR. WEINBERGER:  We do -- we did -- we did agree with

19  the order, yes, Your Honor.

20          THE COURT:  Oh, all right.  What order -- what order

21  has been proposed?

22          JUDGE RUIZ:  Well, Judge --

23          MR. SKIKOS:  This is Steven -- go ahead, David.

24          JUDGE RUIZ:  It was going to be after *Montgomery* and

25  then the cases thereafter were going to be chosen by

1  defendants.  And the defendants objected to *Texas* being second

2  and so --

3  　　　　THE COURT:  Well, you said that the order was going to

4  be adjusted by defendants.  They can't object to their own

5  selection.  What order do you propose?

6  　　　　JUDGE RUIZ:  The way it was to happen, Judge, is

7  *Montgomery* is next and then I had directed that *Texas* would be

8  after *Montgomery* and the next three would be at defendants'

9  choosing, they would choose, because plaintiffs wanted *Texas*

10  next.  Defendants objected to *Texas* being after *Montgomery* and

11  that's what led to the briefing.  So plaintiffs -- excuse me,

12  defendants, tomorrow, will explain why they do not want *Texas*

13  to be next and what order they think should occur whereas

14  plaintiffs were accepting of having *Texas* next and the other

15  three -- other cases after that chosen by defendants.

16  　　　　THE COURT:  All right.  Well, then all I need, quite

17  frankly, is why the defendants don't think *Texas* should be 2

18  and what -- what order they -- I mean, again, the plaintiffs

19  didn't care which was 3, 4, and 5, so it really doesn't matter,

20  but I guess the defendants need to explain why they object to

21  *Texas* being Number 2 and what order they're proposing and why.

22  All right?  So it makes sense for just the defendants to file

23  something Friday.

24  　　　　MR. WEINBERGER:  Well, Your Honor -- this is Pete

25  again -- I respectfully disagree because --

```
1            THE COURT:  Well, then explain it and respond.  The
2    plaintiffs can respond.  I mean, you can't guess -- you can't
3    guess at why -- what their reasons are.
4            MR. WEINBERGER:  Exactly.  Exactly, Your Honor.
5            THE COURT:  So, again, I -- you know, this is --
6            MR. WEINBERGER:  And we can get our --
7            THE COURT:  -- taking far more time than I think is
8    warranted, but if --
9            MR. WEINBERGER:  Your Honor, we can get our response
10   in by close of business on Monday.
11           THE COURT:  Well, take a little more time -- I mean,
12   take a couple of days.  I mean, it's -- so -- so, all right.
13   The defendants -- defendants' submission is going to be noon on
14   Friday.  So the plaintiffs' response, I mean, you can take. . .
15   I'll just say, you know, make it noon on Wednesday.  All right?
16   Noon on Wednesday, and then I'll make a decision quickly.  All
17   right?  I'll look at it and basically I have to decide if *Texas*
18   is going to be Number 2 or if it's going to be 3, 4, or 5.  The
19   rest doesn't really matter.  So, that's the issue I have to
20   decide and I'll see what the defendants say and if they've got
21   some cogent reasons why *Texas* shouldn't be 2 and then I'll see
22   what the plaintiffs say and then I'll talk to Special Master
23   Cohen and I'll get something out by the end of next week.
24           All right.  So defendants' submission, noon on Friday.
25   Plaintiffs' response, noon the following Wednesday, and then
```

1  I'll make a prompt decision.

2          All right.  Anything else to do other than to set our

3  next -- our next conference?

4          MR. BARNES:  Judge, this is Bob Barnes again.

5          THE COURT:  Yes, Bob.

6          MR. BARNES:  I have a question -- I have a question

7  about the jury instructions.  The schedule set July 1st as a

8  date for the parties to exchange proposed modifications to the

9  Court's April 27th, 2021, jury instructions and verdict form

10  and then meet and confer.  We submitted -- the defendants

11  submitted to plaintiffs our proposed modifications.  We didn't

12  receive anything from plaintiffs and I just wanted to confirm

13  that that -- nothing was sent, and my understanding is that

14  that's because plaintiffs have no proposed modifications to the

15  Court's instructions.

16          MR. WEINBERGER:  Correct.

17          MR. BARNES:  All right.  Thanks, Pete.

18          THE COURT:  All right.  So the plaintiffs -- so the

19  defendants have some and the plaintiffs have none.  Well,

20  then -- well, then, I guess. . . I guess, Bob, you need to

21  submit those to us, to Special Master Cohen and me so we can

22  review them and -- well, let me ask you this:  Do the

23  plaintiffs oppose them, think they're wrong?

24          MR. WEINBERGER:  Yes, we do.  Yes, we do.

25          THE COURT:  Well, then I think that -- well, then I

1   think what -- the appropriate thing would be for the defendants

2   to submit their proposals and then the plaintiffs to submit a

3   response so we can -- you know, obviously I got it -- there has

4   to be a very compelling reason to change something.  If this is

5   simply what had been submitted before, I'm -- you know, you

6   don't need to submit what was submitted before.  I -- we've

7   considered that and rejected that.  If this is something new

8   based on some new law or whatever, or you really think we got

9   something wrong and you can cite a case as to why, obviously

10  we'll look at it.  So when -- when do the defendants --

11  defendants should just submit what -- their proposed changes,

12  modifications.

13          Bob, when do you want to do that?  I see you've got

14  them ready.

15          MR. BARNES:  Yeah.  I mean, we can -- we can submit --

16  the next date for jury instructions is July 15th, but if we're

17  going -- and on that day the parties were supposed to file a

18  single joint submission of agreed instructions with plaintiffs'

19  proposed instructions and verdict forms that defendants oppose

20  and then defendants --

21          THE COURT:  Now we've streamlined it.  The plaintiffs

22  aren't proposing anything.  So it seems to me that by July 15th

23  you just submit something and it looks like it's going to be

24  defendants' proposed modifications and plaintiffs' objections

25  to those.  The plaintiffs don't have any modifications.  So we

1  already have the July 15th.  That gives you, you know, another

2  week or so to do that.  So let's stick with the schedule.

3  So -- okay?

4          MR. BARNES:  Okay.  The only missing piece would be

5  the insertion of plaintiffs' objections.

6          THE COURT:  Well, that's -- that's what you've got

7  to -- you know, you -- you --

8      (Simultaneous crosstalk).

9          MR. WEINBERGER:  Your Honor -- Your Honor, we'll take

10  their submission --

11          THE COURT:  Right.

12          MR. WEINBERGER:  -- and we will layer our objections

13  on top it or --

14          THE COURT:  Right.

15          MR. WEINBERGER:  -- our response to it and we'll

16  create a document to be filed --

17      (Simultaneous crosstalk).

18          THE COURT:  Right.  That's all you need to do.  Right.

19  That's all you need to do.  But make sure that --

20          MR. WEINBERGER:  Okay.

21          THE COURT:  -- the defendants have authority for your

22  modification that you say, all right, why -- why, what the

23  Court has, is legally incorrect and cite the authority for it

24  so we can look at it and so the plaintiffs see it.  And then

25  the plaintiffs should cite some authority why they think the

1  defendants' modification is legally incorrect, or confusing.

2  That's another reason to object to it, if they think it's

3  confusing.  Okay?

4          MR. BARNES:  Okay.

5          THE COURT:  So we'll just stick to the schedule we've

6  got.

7          MR. BARNES:  Okay.  Thank you.

8          THE COURT:  But now we know it will just be sort of

9  one-sided because the plaintiffs aren't proposing any

10  modifications.  Okay.  Thank you for raising that.

11          All right.  We -- Wednesdays have been pretty good.

12  I'm proposing -- the first -- I'm going to be in trial the

13  first Wednesday, which is the 4th, so I'm available. . . I'm

14  suggesting that we do it Wednesday, August 11th, at 11:30.  How

15  does that look for everyone?  I'm in trial on the week of the

16  3rd.

17          MR. WEINBERGER:  That's fine for the plaintiffs,

18  Your Honor.

19          THE COURT:  All right.  Okay.  So we'll go at -- or,

20  actually, wait a minute.  Actually, let's do it at 12:30.

21  We'll do it at 12:30.  12:30 p.m. on the 11th.

22          Okay.  All right.  Well, then, last thing is -- I'm

23  going to say, I always raise it.  I think this will be a very

24  interesting trial and I'm actually eager to see some of the

25  best lawyers in the country actually try a case, try this case,

1   but I also think it -- we shouldn't try this case until there's

2   been serious efforts to achieve some sort of a global

3   resolution, and in my opinion there has not been such an

4   effort.  So I am open to trying to do it.  I think I'm the only

5   one who can.  The parties, sort of, in my view, shadowboxed for

6   a year with Judge Gandhi and didn't get anywhere, so, Special

7   Master Cohen and I are available to do it but it takes both

8   sides, if they want to either do it collectively or any

9   individual defendant who wants to do it.  So I just want to

10  make that clear.  And I -- again, I'm actually looking forward

11  to this trial, but I -- I don't think there should be any trial

12  without a serious effort to resolve it beforehand.  So I am

13  suggesting the parties engage with me and Special Master Cohen,

14  but if the parties don't want to, that's fine.

15          All right.  Thank you --

16          MR. WEINBERGER:  Your Honor, this is Pete again.  One

17  other thing.

18          I assume you want a Status Report on --

19          THE COURT:  Oh, right.  Sorry.  Yeah, the way we've

20  been doing is fine, the Tuesday -- Tuesday at noon is fine.

21          MR. WEINBERGER:  And if I could just raise one other

22  thing in terms of the protocols for the Status Report.

23          THE COURT:  All right.

24          MR. WEINBERGER:  So --

25          THE COURT:  Yeah, that's a good question -- I forgot.

1   There's something in there -- the plaintiffs wanted a meeting

2   with Special Master Cohen to try and streamline the trial.  I

3   think that's a good idea.  I candidly think that's a good idea,

4   that -- you know, now we know that it looks like we're headed

5   for this trial.  It's -- it's -- both sides have time

6   pressures, and it makes sense to, you know, work together to

7   make this an intelligible trial.  Both sides want this to be

8   intelligible and for the jury to focus on the things that the

9   jury needs to focus on.  So I think it's a -- it's a good idea

10  for the parties to meet with Special Master Cohen and to try

11  to -- try to streamline the trial.  So I -- I think I'm going

12  to direct that.  Again, I can't --

13              MR. WEINBERGER:  Your Honor --

14              THE COURT:  -- make you agree to anything in that

15  respect.

16              MR. WEINBERGER:  Your Honor, this is Pete.

17              Just to -- just to -- going back to the time frame

18  before the CT 1 trial, just to remind the Court -- and, you

19  know, Walgreens was aware of this but maybe the other pharmacy

20  defendants are not -- we actually -- I think in the time frame

21  about 10 days before trial, we had an extensive, large group

22  meeting with Special Master Cohen where we went through the

23  list of the likely exhibits and everybody was able to put on

24  the record what the issues were especially associated with

25  those exhibits, if anything, and Special Master Cohen worked

1    through it with us.  Sometimes we reached agreement.  Sometimes

2    he made ruling.  That was 10 to 8 days before trial.  I think

3    what we've learned, both in the lead-up to that trial as well

4    as from some of the other bellwether trials or -- or I should

5    say state court trials and trials around the country, is that

6    it would be, I think in this case, very helpful for us to have

7    a much earlier meeting than just 10 days before trial and

8    that's why I suggested it and would strongly suggest that an

9    early meeting that discusses the parameters of where our issues

10   are and how we might deal with them will help both sides

11   streamline this trial, which obviously is a goal of everyone,

12   including the Court.  So I'm pleased, on behalf of the

13   plaintiffs, that hopefully we can get that moving as quickly as

14   possible and see what --

15          THE COURT:  Well, what do you think -- when do you --

16   when do you think you want such a meeting?

17          MR. WEINBERGER:  Well, I would say in a -- starting or

18   looking at perhaps the week of July 21st or the following week,

19   and I think it would be helpful, as we look forward to that,

20   that it might be an in-person meeting where we can, you know,

21   have a list of the exhibits, perhaps review some of them

22   together, take a look at potential 1006 summaries, look at

23   issues associated with the data, and -- and, again, deal with a

24   lot of things that perhaps we can either resolve or have a

25   formalized pretrial hearing on so that we can streamline --

1    streamline those issues before the -- before we end up with a

2    jury in the box.

3                 MR. STOFFELMAYR:  Judge, it's Kaspar Stoffelmayr.

4    Could I offer a few comments on this idea?

5                 THE COURT:  All right.  Yes.

6                 MR. STOFFELMAYR:  One, you know, everyone's always

7    happy to meet and confer.  I would suggest doing it now before

8    we have exhibit lists is going to be very time consuming and

9    very unproductive.  You know, once there are exhibit lists and

10   people are talking about actual documents, you know, certainly

11   might be productive.  And, I think, just from our perspective,

12   we would, you know, want the Court involved for some of these

13   discussions as well, not just Special Master Cohen, because

14   you'll be --

15                THE COURT:  Well, I -- what you need to know is, July

16   and August, I'm trying as many criminal cases as I can.  All

17   right?  So I can, you know -- you know, getting ready to try

18   your case.  All right?  So you're going to have to -- you're on

19   your own with Special Master Cohen's help.  I'm not going to be

20   spending a lot of time, you know, streamlining your case.  If

21   you're not able to do it with his help then, you know, you use

22   your hours however you use your hours.  If you waste --

23                MR. STOFFELMAYR:  Understood, Judge.  That's not what

24   I was suggesting, that no one wants to streamline the case, but

25   some of these evidentiary issues are really easy and they won't

1    take a lot of them.  Some of them are very complicated and

2    closer to the time of trial, you know, I think we're going to

3    need to present them to the Court because they are going to

4    impact how the case is tried in front of the jury.

5            But in any event, my real point was before you, you

6    know, go off and order us to either fly down to Naples or

7    Cleveland or wherever the meet and confer would be, if -- you

8    know, I would suggest we do it much closer to the time of trial

9    with actual exhibit lists in hand, actual summaries in hand

10   because these discussions in the abstract, I think, are going

11   to be very time consuming and not productive.

12           THE COURT:  If you wait too long, it's worthless.  If

13   you do it too early, it's worthless.  So I don't -- you

14   know. . .

15           MR. WEINBERGER:  So right now, Your Honor -- this is

16   Pete again.  Right now we have a -- under the CMO, we have a

17   September 10th date for trial and the exhibit lists, and my

18   suggestion is -- and, you know, obviously we're looking at it

19   from the plaintiffs' perspective -- is that we can -- we can

20   put together a list of witnesses -- of exhibits significantly

21   earlier than that, and we can begin to talk, you know, with

22   Special Master Cohen and with the defendants using that exhibit

23   list so that we get a sense of, you know, are we going to need

24   additional -- are we going to need witnesses that we otherwise

25   wouldn't need because of some issue involving authentication or

1   foundational admissibility of a particular exhibit or set of

2   exhibits?  And --

3            THE COURT:  All right.  Look -- all right.

4            MR. WEINBERGER:  -- help us --

5            THE COURT:  Look -- all right.  July 21st -- July 28th

6   is too early.  After September 10th is way too late.  All

7   right?  I want the parties to meet -- work out with Special

8   Master Cohen your meeting sometime in August.  Okay?  And I

9   think it should be in person.  You figure out where and when.

10  Work on it with his schedule and come up with some -- I think

11  sometime in the middle of August should -- you know, makes

12  sense to me.  All right?  So mid to the second part of August.

13  So come up with -- so the meeting is productive.  It's not too

14  early and not too late so I -- you know -- so you can work this

15  out with Special Master Cohen.

16           MR. STOFFELMAYR:  Thank you, Judge.

17           MR. WEINBERGER:  Thank you, Your Honor.

18           THE COURT:  Is there evidentiary issues you want me to

19  deal with?  Guess what, I'm not going -- interrupting the trial

20  for any evidentiary rulings.  So things you need to raise with

21  me you got to front early and I'll deal with them in September.

22           I assume there's -- I don't know what the schedule has

23  on -- I mean, we got deadlines -- Motions in Limine but I don't

24  know, you know, I don't see anything built in for evidentiary

25  issues.  What are -- what -- I don't know how you were planning

1    to raise these.

2            MR. STOFFELMAYR:  I think, Judge -- this is Kaspar

3    again.  I think the biggest issue by far, if I can predict

4    based on what is going on in the other trials, is going to be

5    issues regarding summary exhibits, and there will be, you know,

6    one big question for the Court to address, whether the proposed

7    summaries are proper summary exhibits or not.  And, you know,

8    the parties can figure out how to present that issue to you,

9    but it will be one -- I predict that will be the largest

10   question by far and, you know, you will say yes, these are

11   admissible, or no, they're not and, you know, the parties

12   will -- can find a way to present that to you in advance of

13   trial.

14           MR. WEINBERGER:  Well, there's a lot of other issues

15   beyond just summary -- summary documents or summary exhibits

16   and -- this is Pete -- and on basic admissibility of defendant

17   documents, you know, being shown to a -- a defendants' employee

18   and whether -- whether it's and to what extent a document

19   that's part of the defendants' production can be used to

20   examine a witness who, you know, should be familiar with it but

21   claims not to be.  So there -- there are broader issues that

22   frankly bog --

23           THE COURT:  Well, I mean, you can show -- you can show

24   it -- you can show any exhibit, any defendants' document to a

25   defendant witness and if he -- he or she says I recognize it,

```
 1  fine.  If the answer is, I don't know what it is, I've never
 2  seen it, you're stuck with that.  All right?  I mean, I'm not
 3  making a --
 4            MR. WEINBERGER:  I understand, Your Honor.
 5            THE COURT:  -- ruling on that.  That's -- you know,
 6  you can show to a Walmart witness, Walmart employee, any
 7  document that Walmart's produced and ask him or her about it.
 8            MR. WEINBERGER:  Understood, Your Honor.
 9       (Simultaneous crosstalk).
10            MR. WEINBERGER:  We just need to work through some
11  issues that, frankly, from my view of some of the other trials,
12  have really bogged down and been very time consuming, and I
13  don't think we need that in this case so --
14            THE COURT:  Well, it's not going to be time consuming.
15  I can tell you, if I -- I mean, I'm going to, you know, cut
16  through them real fast if they come up at trial, a quick "yes,"
17  "no."  You know, I'm not going to delay this trial at all or
18  else I'll take the time out of both sides and you'll end up
19  with even less time.  So I can do that.  The trial is going to
20  move.
21            JUDGE RUIZ:  Judge, this is David.
22            I look forward, in August, to helping the parties
23  resolve --
24            THE COURT:  All right.
25            JUDGE RUIZ:  -- as much of that as possible --
```

```
 1              THE COURT:  All right.

 2              JUDGE RUIZ:  -- so you're not taking --

 3              THE COURT:  All right.  Why don't you, you know,

 4    confer with Special Master Cohen and figure out when works in

 5    his schedule and yours to do that.

 6              MR. STOFFELMAYR:  Thank you, Judge.

 7              THE COURT:  All right.

 8              All right.  Thanks, everyone, and stay safe.

 9         (Proceedings adjourned at 1:48 p.m.)

10

11                   C E R T I F I C A T E

12              I certify that the foregoing is a correct transcript
      of the record of proceedings in the above-entitled matter
13    prepared from my stenotype notes.

14         /s/ Heather K. Newman                    7-8-2021
           HEATHER K. NEWMAN, RMR, CRR              DATE
15

16

17

18

19

20

21

22

23

24

25
```