**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| This document relates to: Case No. 1:18-op-45274-DAP | Judge Dan Aaron Polster |
| TARRANT COUNTY, *Plaintiff*, | |
| vs. | **PLAINTIFFS' POSITION PAPER REGARDING SEQUENCING OF NEW BELLWETHER CASES** |
| PURDUE PHARMA, L.P., ET AL., *Defendants*. | |

Plaintiffs concur with the Court's selection of Tarrant County, Texas as the next bellwether case (CT 8) to follow Montgomery County, Ohio (CT 7). Tarrant County is appropriately suited to the goals of a bellwether trial of enhancing prospects of settlement and resolving common issues or claims. Defendants have failed to provide any "cogent reason" (Dkt. # 3785 at 14-17) why this Court's exercise of discretion in selecting Tarrant County should be overridden.[1] Plaintiffs also append a proposed schedule for CT 8 – 11, in keeping with this Court's requests.

As an initial matter, Defendants' characterization of bellwether selection history as a "wholesale" adoption of the PEC's recommendations and a rejection of Defendant recommendations is not accurate. *See* Dkt. # 3782 at 4. In March 2021, this Court directed the parties to suggest candidates for five additional pharmacy bellwethers. Dkt. # 3654 at 21; Dkt. # 3649. From the parties' suggestions, the Court selected two of Defendants' suggested cases (Cobb County, Georgia and Durham County, North Carolina) and two of Plaintiffs' suggested cases

---

[1] *See In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 845 (6th Cir. 2020) (citations omitted) ("[i]n discretionary matters going to the phasing, timing, and coordination of the cases, the power of the MDL court is at its peak.").

(Santa Fe, New Mexico and Tarrant County, Texas).  Dkt. # 3685 at 9-11.  For the fifth bellwether, the Court made its own "efficiency" based selection of the only Ohio case suggested by either party (Montgomery County), noting that dispensing data and other defendant Ohio-specific discovery had already been produced. Dkt. # 3685 at 9-11. Such efficiencies are compounded by the existing decisions on Ohio law from CT1, CT1B, and CT3. Defendants' failure to suggest an alternative Ohio case should not be held against this Court or Plaintiffs.

After selecting the five bellwethers, the Court "ask[ed] the parties to generate litigating schedules" with a shorter discovery period for Montgomery County. Dkt. # 3685 at 11. This "fast track" for Montgomery County is entirely in keeping with the FJC and JPML efficiency goals cited by Defendants. *See* Dkt. # 3782 at 3.

The parties were unable to agree on the schedule for the non-Ohio bellwethers; after reviewing the parties' meet and confer emails, the Court instructed that Tarrant County should be the first non-Ohio bellwether, followed by the other three in whatever order the defendants chose. *See* Exh. A, June 27 and June 28, 2021 emails from Special Master Cohen, at 3; Dkt. # 3771. Defendants objected, and the Court directed the parties to submit position papers on the "sequence" of the four non-Ohio bellwethers (Dkt. # 3771) and the "question of how the parties should order discovery and briefing in the[se] . . . four bellwethers." Exh. A.  *See also* Dkt. # 3785 at 14-17.

Plaintiffs agree with the Court's selection of Tarrant County as CT-8.  In selecting these new bellwethers, the Court stressed the importance of providing "a meaningful number of opportunities for the plaintiffs to test their theories and facts supporting liability, and the pharmacies to test their defenses" (Dkt. # 3685 at 9) and the goal of giving the parties "a sense of

whether these cases overall should be settled." Dkt. 3654 at 7. The Tarrant County case achieves each of these objectives.[2]

Tarrant County most strongly serves the goal of "enhancing prospects of settlement" and "resolving common issues or claims."[3] Texas is populous and large, including more than 8% of the nations' counties (254 of the 3,141 counties nationwide),[4] all of which would eventually be required to achieve a global settlement. As such, the bellwether value of Tarrant County is significant.

Similarly, Defendants' estimation that there are 250 pharmacies in Tarrant County supports, rather than undercuts, its selection as CT-8. Many of these pharmacies belong to the three largest national chain pharmacy defendants, each of which has significant market share in Tarrant County. *See* Dkt. # 3672-1 at 2 (bellwether market share chart). The numerous pharmacies and robust market share help to ensure Tarrant County pharmacy discovery will not be an examination of outliers. As Defendants note in their submission, it is important to be able to "extrapolate[e] case specific findings and valuations from bellwether cases to other cases in the litigation,' in order to "facilitate, a global resolution." Dkt. #3782 at 4 (citing FJC & JPML, *Bellwether Trials* at 10.)

Further, Texas public nuisance law is sound and provides a good testing ground for bellwether nuisance claims. In the pending Texas opioids state court MDL, the court rejected the defendants' nuisance-based motions to dismiss, and the Texas Supreme Court refused the defendants' associated writs. Exh. B, Writ Denial.  Texas nuisance law also supports a claim for punitive damages, which Tarrant County has pled. That Defendants may object to the

---

[2] *See also* Federal Judicial Center & Judicial Panel on Multidistrict Litigation, *Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges* (2019) (hereinafter FJC & JPML, Bellwether Trials), at 4-5, available at https://www.fjc.gov/sites/default/files/materials/19/Bellwether%20Trials%20in%20MDL%20Proceedings.pdf.
[3] FJC & JPML, Bellwether Trials at 3
[4] U.S. Census Bureau, *States, Counties, and Statistically Equivalent Entities*, at 4-11, available at https://www2.census.gov/geo/pdfs/reference/GARM/Ch4GARM.pdf.

recoverability of punitive damages is of no moment: the very purpose of bellwether trials is to allow the parties to test legal theories to practically engage in settlement discussions.[5] Indeed, for that reason, the Federal Judicial Center has expressly encouraged courts to consider the availability of punitive damages in selecting bellwether cases.[6]

It is also notable that Tarrant County is represented by Mark Lanier, one of the lead trial counsel for the PEC.  As the FJC and JPML note, representation of a bellwether is an important consideration: "If leading players are involved in the bellwether trial process, results may be perceived as providing more valuable information to facilitate global settlement." FJC & JPML, *Bellwether Trials* at 23.

Additionally, there are likely to be discovery efficiencies found in the Tarrant County case – contrary to Defendants' argument. Significant third-party discovery has already been accomplished in the Texas state court MDL.[7] Additional discovery has been developed in the context of the DOJ's investigation of Walmart and Walmart's unsuccessful opioid dispensing declaratory action against the DOJ in the Eastern District of Texas. Tarrant County borders the Eastern District, and publicly available documents demonstrate that the DOJ's investigation of Walmart's dispensing practices involved doctors and law enforcement from the Dallas-Fort Worth Metroplex (Fort Worth being Tarrant County's seat).[8]

---

[5] FJC & JPML, Bellwether Trials at 4-6, 17.

[6] *Id.* at 17 ("The transferee judge should also consider how substantive law variations will impact the liability and potential value of bellwether case . . . For example, the availability of certain claims, defenses, and punitive damages may all differ.") and 22-23 ("Representativeness must also include the substantive law that will be applied. . . . Substantive law may differ in a number of ways, including the availability of . . . punitive damages.").

[7] Such third-party discovery includes discovery from the North Texas High Intensity Drug Trafficking Area law enforcement coalition, the North Texas Behavioral Health Authority, the Texas Health and Human Services Commission, hospitals in the Dallas/Fort Worth area, and the Texas State Board of Pharmacy

[8] The DOJ filed a complaint against Walmart that, when coupled with a press release, shows that the DOJ investigation covered the "Dallas-Fort Worth Metroplex," which includes Tarrant County. Ex. C, DOJ Complaint at ¶ 227-242; Ex. D, DOJ Press Release. The DOJ complaint identifies a pill-mill doctor, "H.D.," who practiced in Richardson, Texas, a town in a county bordering Tarrant County; similarly, a DOJ press release identifies a Dr. Howard Diamond – likely "H.D." – who was indicted in nearby Plano, Texas "because of great law enforcement partnerships that are investigating opiate abuse in the Dallas-Fort Worth Metroplex." *Id.*

4

The Pharmacy Defendants' objections to Tarrant County succeeding Montgomery County are self-contradictory and hollow. On the one hand, Defendants object that Tarrant County is a Plaintiff recommendation, and on the other hand Defendants argue that Santa Fe County, also a Plaintiff recommendation, should come next instead.  Dkt. 3782 at 5. As such, they have failed to demonstrate this Court's discretion should be overruled.

Finally, with respect to the remaining bellwethers CT9-11, Plaintiffs defer to the Court and the Defendants as to the order. Plaintiffs have no objection to Santa Fe proceeding after Tarrant, as Defendants seem to prefer, and only initially suggested that Santa Fe proceed last to allow Defendants' recommendations to be prioritized ahead of Plaintiffs' other recommendation.

Moving the CT-8 through CT-11 trials forward efficiently and expeditiously is achievable on a reasonable schedule. Attached is a proposed schedule (Exh. E) which adheres to the Court's instruction that the cases "proceed in parallel, rather than seriatim, but also take into account everyone's bandwidth[,]" (*see* Exh. A), and accordingly staggers the CT-7, CT-8, and CT-9 deadlines by two weeks, with the Motions for Dismiss for CT-9-11 all due on the same date.  The remainder of the dates for CT 9-11 are staggered by one month to enable the parties' experts to address jurisdiction specific issues.  While an order of the cases after Tarrant is suggested in this schedule, the CT9-11 bellwethers may be reordered within this same framework.

For all of the above-stated reasons, Plaintiffs respectfully submit that CT8 should remain Tarrant County, Texas, followed by Santa Fe, Cobb, and Durham Counties, ordered as the Defendants choose or the Court sees fit.

2276071.2

Dated: July 14, 2021

Respectfully Submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304)654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

*s/W. Mark Lanier*
W. Mark Lanier
LANIER LAW FIRM
10940 W. Sam Houston Pkwy
Houston, TX  77064
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Trial Counsel*

6

2276071.2

*/s/Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY &LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of July, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System, which electronically serves all counsel of record in the case.

*/s/Peter H. Weinberger*
Peter H. Weinberger

7

2276071.2