# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  July 14, 2021

Mr. Michael Timothy Gallagher
Law Offices
2905 Sackett Street
Houston, TX 77098

Ms. Sherri Ann Saucer
Fears Nachawati
5473 Blair Road
Dallas, TX 75231

Re:  Case No. 21-3637, *In re: Harris County, TX, et al*
Originating Case Nos. 1:17-md-02804, 1:18-op-45677, 1:19-op-45859, 1:19-op-45860,
1:20-op-45136, 1:20-op-45137

Dear Counsel:

The petition for writ of mandamus has been docketed as case number **21-3637** with the caption listed above.  If you have not already done so, you must mail a copy of the petition to the lower court judge and counsel for all the other parties.

Counsel for petitioner must file an Appearance of Counsel form and, if not admitted, apply for admission to the 6th Circuit Bar by **July 28, 2021**.  The forms are available on the court's website.

The district court judge to whom this petition refers has been served with this letter.

Sincerely yours,

s/Amy E. Gigliotti
Case Management Specialist
Direct Dial No. 513-564-7012

cc:  Ms. Sandy Opacich

No. _____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re County of Harris, Texas; County of Rockwall, Texas; County of Ellis, Texas; City of Albuquerque, New Mexico; City of Santa Fe, New Mexico | § § § § § | United States District Court for the Northern District of Ohio Eastern Division |
| County of Harris v. Purdue Pharma L.P., et al. | § § | District Court Case Nos. 1:18-op-45677-DAP |
| Rockwall County v. CVS Health Corporation, et al. | § § | 1:19-op-45859-DAP 1:19-op-45860-DAP |
| Ellis County v. Walgreens Boots Alliance, Inc., et al. | § § | 1:20-op-45136-DAP 1:20-op-45137-DAP |
| City of Albuquerque v. Teva Pharmaceuticals USA, Inc., et al. | § § | [relates to: In re National |
| City of Santa Fe v. Purdue Pharma L.P., et al. | § § § | Prescription Opiate Litigation, 1:17-md-02804 |

## PETITION FOR WRIT OF MANDAMUS
## OF HARRIS, ROCKWALL, ELLIS COUNTIES, TEXAS AND
## ALBUQUERQUE AND SANTA FE CITIES, NEW MEXICO
_____

S. Ann Saucer
TX Bar 00797885, LA Bar 21368
Matthew R. McCarley
Texas Bar No. 24041426
FEARS NACHAWATI, PLLC
5473 Blair Road
Dallas, Texas 75231
Tel. (214) 890-0711
asaucer@fnlawfirm.com

Michael T. Gallagher
Texas State Bar No.07586000
THE GALLAGHER LAW FIRM
Tel. (713) 222-8080
mike@gld-law.com

Dan Downey
Texas State Bar No. 06085400
DAN DOWNEY, P.C.
Tel. (713) 907-9700
Dandowney427@gmail.com

Tommy Fibich
Texas State Bar No.
FIBICH, LEEBRON, COPELAND, & BRIGGS
Tel. (713) 804-6501
tfibich@fibichlaw.com

*Counsel for Petitioners; Additional Counsel on Signature Page*

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..........................................................................................1

II.    STATEMENT OF RELIEF SOUGHT ........................................................3

III.   STATEMENT OF ISSUE PRESENTED .....................................................3

IV.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND NECESSARY TO UNDERSTAND THE ISSUES PRESENTED. ...............4

    A.  For Years, Hundreds of County and City Cases Have Been Stayed in a Court Lacking Subject Matter Jurisdiction Over the Claims. ........................4

    B.  The District Court Has Admitted This Is Unfair. ...........................................4

    C.  Other Plaintiffs Have Received Preferential Treatment Under Questioned Circumstances. ............................................................................................5

    D.  Petitioners Unsuccessfully Fought for Compliance with the Black Letter of Statutory Law, 28 U.S.C. § 1447(c). ...........................................................6

    E.  Petitioners Received No Notice or Opportunity to be Heard in MDL 2804. 10

V.    REASONS WHY A WRIT OF MANDAMUS SHOULD ISSUE .............12

    A.  A Mandamus Writ Is the Only Adequate Means in the Face of the District Court's Refusal to Rule. ..............................................................................13

    B.  The District Court Has Clearly Erred as a Matter of Law by Refusing to Consider Its Lack of Subject Matter Jurisdiction. .......................................15

    C.  The District Court Has Persistently Disregarded 28 U.S.C. § 1447(c) and the Supreme Court Authority Requiring Federal Subject Matter Jurisdiction. 20

        1.  Judge Polster persists in ignoring his own opinion on the lack of substantial federal question jurisdiction. .................................................22

        2.  Defendants' shifting complete diversity theories have been exposed as baseless. ....................................................................................................24

        3.  Defendants should be sanctioned for removing under CAFA. ................25

    D.  Petitioners and the Constituent Communities Are Prejudiced in a Way Not Correctable on Appeal. ...............................................................................26

E.    This Writ Raises Important Problems Plaguing Multidistrict Litigation and Affecting Hundreds of Governmental Entity Plaintiffs. .............................27

VI.    CONCLUSION .................................................................................31

CERTIFICATE OF COMPLIANCE ........................................................35

CERTIFICATE OF SERVICE ................................................................36

APPENDIX ...............................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anne Arundel Cty., Maryland v. Purdue Pharma L.P.*,
No. CV-GLR-18-519, 2018 WL 1963789 (D. Md. Apr. 25, 2018) ...................24

*Armstrong v. Manzo*,
380 U.S. 545 (1965) ..............................................................................................18

*New Mexico ex rel. Balderas v. Purdue Pharma L.P.*,
323 F. Supp. 3d 1242 (D.N.M. 2018) ...................................................................22

*Caterpillar Inc. v. Lewis*,
519 U.S. 61 (1996) ................................................................................................17

*City of Galax, Virginia v. Purdue Pharma, L.P.*,
No. 7:18-CV-00617, 2019 WL 653010 (W.D. Va. Feb. 14, 2019) ....................26

*City of Granite City, Ill. v. AmerisourceBergen Drug Corp.*,
No. 18-CV-1367-SMY-DGW, 2018 WL 3408126 (S.D. Ill. July
13, 2018) ...............................................................................................................23

*City of Holly Springs v. Johnson & Johnson*,
477 F. Supp. 3d 547 (N.D. Miss. 2020) ..........................................................24, 25

*City of Las Vegas v. Purdue Pharma, L.P.*,
No. 2:19-CV-2128-JC-MDJA, 2020 WL 223614 (D. Nev. Jan. 15,
2020) ................................................................................................................22, 25

*City of N. Las Vegas v. Walgreens Boots All., Inc.*,
No. 2:19-CV-2143-JC-MDJA, 2020 WL 109795 (D. Nev. Jan. 9,
2020) ................................................................................................................22, 25

*City of Reno v. Purdue Pharma, L.P.*,
No. 3:18-cv-00454-MMD-WGC, 2018 WL 5730158 (D. Nev.
Nov. 2, 2018) ........................................................................................................22

*Clinton v. Jones*,
  520 U.S. 681 (1997).......................................................................19, 20

*County Bd. of Arlington County, Virg. v. Purdue Pharma L.P., et al.*,
  No. 1:19-cv-402 (E.D. Virg. May 6, 2019) ........................................25

*County of Dallas v. Purdue Pharma L.P., et al.*,
  No. 3:18-cv-0426-M (N.D. Tex. March 7, 2018)................................25

*County of Van Zandt v. Amerisourcebergen Corp.*,
  No. 6:18-CV-00064-RWS (E.D. Tex. April 16, 2018) .......................25

*Cty. of Anderson v. Rite Aid of S.C., Inc.*,
  No. 8:18-CV-1947-BHH, 2018 WL 8800188 (D.S.C. Aug. 20,
  2018) ...............................................................................................22, 24

*Cty. of Delta v. Purdue Pharma, L.P.*,
  No. 4:18-CV-095, 2018 WL 1440485 (E.D. Tex. Mar. 22, 2018)....24

*Cty. of Falls v. Purdue Pharma, LP*,
  No. 6:18-CV-47-RP-JCM, 2018 WL 1518849 (W.D. Tex. Mar. 28,
  2018) .....................................................................................................24

*Cty. of Travis v. Purdue Pharma*,
  LP, No. 1:18-CV-254-RP, 2018 WL 1518848 (W.D. Tex. Mar. 28,
  2018) .....................................................................................................24

*DCH Health Care Auth. v. Purdue Pharma L.P.*,
  No. CV19-0756-WS-C, 2019 WL 6493932 (S.D. Ala. Dec. 3,
  2019) ...............................................................................................22, 25

*Delaware ex rel. Denn v. Purdue Pharma L.P.*,
  No. 1:18-cv-383-RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018) ................23

*Dinwiddie County, Virginia v. Purdue Pharma, L.P.*,
  3:19-CV-242, 2019 WL 2518130 (E.D. Va. June 18, 2019)......................*passim*

*In re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir.
  2018) (per curiam) .........................................................................13, 15

*Dunaway v. Purdue Pharma L.P.*,
  391 F. Supp. 3d 802 (M.D. Tenn. 2019) .....................................22, 27

iv

*F.T.C. v. E.M.A. Nationwide, Inc.*,
   767 F.3d 611 (6th Cir. 2014) ............................................................................19

*In re Genetically Modified Rice Litigation*,
   764 F.3d 864 (8th Cir. 2014) ............................................................................30

*Hartland v. Alaska Airlines*,
   544 F.2d 992 (9th Cir. 1976) ............................................................................30

*Mississippi ex rel. Hood v. AU Optronics*,
   571 U.S. 161 (2014).............................................................................................25

*In re Hood*,
   135 F. App'x 709 (5th Cir. 2005) (per curiam) ...............................................15

*Illinois Pub. Risk Fund v. Purdue Pharma L.P.*,
   No. 19C3210, 2019 WL 3080929 (N.D. Ill. July 15, 2019)........................22, 27

*Ins. Co. v. Comstock*,
   16 Wall. 258 (1873) ............................................................................................13

*John B. v. Goetz*,
   531 F.3d 448 (6th Cir. 2008) ............................................................................12

*Johnson v. Rogers*,
   917 F.2d 1283 (10th Cir. 1990) ...................................................................13, 15

*La Buy v. Howes Leather Co.*,
   352 U.S. 249 (1957).............................................................................................14

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936).......................................................................................19, 20

*Lesher v. Lavrich*,
   632 F. Supp. 77 (N.D. Ohio 1984), *aff'd*, 784 F.2d 193 (6th Cir.
   1986) ....................................................................................................................18

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998)...............................................................................................16

*Loren v. Blue Cross & Blue Shield of Mich.*,
   505 F.3d 598 (6th Cir. 2007) ............................................................................17

*Madden v. Myers*,
 102 F.3d 74 (3d Cir. 1996), *superseded in part on other grounds*..............13, 15

*Mayor & City Council of Baltimore v. Purdue Pharma L.P.*,
 No. CV-GLR-18-800, 2018 WL 1963816 (D. Md. Apr. 25, 2018)...................24

*Ex parte McCardle*,
 7 Wall. 506, 19 L.Ed. 264 (1868) ........................................................................17

*McClellan v. Young*,
 421 F.2d 690 (6th Cir. 1970) (per curiam) ...........................................13, 14, 15

*Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.*,
 No. 3:19-CV-463, 2019 WL 3207795 (E.D. Va. July 16, 2019) ..... 21, 24, 25-26

*West Virginia ex rel. Morrisey v. McKesson Corp.*,
 No. C16-1772, 2017 WL 357307 (S.D.W. Va. Jan. 24, 2017) .........................23

*In re Mujaddid*,
 762 F. App'x 124 (3d Cir. 2019) (per curiam).................................................15

*In re Nat'l Prescription Opiate Litig.*,
 927 F.3d 919 (6th Cir. 2019) ..............................................................................4

*In re Nat'l Prescription Opiate Litig.*,
 956 F.3d 838 (6th Cir. 2020) ....................................................................12, 16

*In re Nat'l Prescription Opiate Litig.*,
 MDL 2804, 2018 WL 4019413 (N.D. Ohio Aug. 23, 2018)............................22

*In re Nat'l Prescription Opiate Litig.*,
 MDL 2804, 2019 WL 180246 (N.D. Ohio Jan. 14, 2019) ..........................22, 23

*New Hampshire v. Purdue Pharma*,
 No.17-CV-427-PB, 2018 WL 333824 (D.N.H. Jan. 9, 2018)..........................26

*Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*,
 565 F.2d 393 (6th Cir. 1977) .....................................................................19, 20

*Oklahoma v. Purdue Pharma L.P.*,
 No. 5:18-cv-00574-M, Doc. 53 (W.D. Okla. Aug. 3, 2018) .............................23

*Paluck v. Sec'y of Health & Hum. Servs.*,
   111 Fed. Cl. 160 (2013) ................................................................14

*Purdue Pharma L.P. v. Kentucky*,
   704 F.3d 208 (2d Cir. 2013) ........................................................25

*Rhines v. Weber*,
   544 U.S. 269 (2005).....................................................................18

*In re Roundup Prod. Liab. Litig.*,
   No. 16-MD-02741-VC, 2021 WL 2531084 (N.D. Cal. June 22,
   2021) .........................................................................................30

*Ryan v. Gonzales*,
   568 U.S. 57 (2013).......................................................................18

*In re Showa Denko K.K. L–Tryptophan Products Liability Litigation–*
   *II*,
   953 F.2d 162 (4th Cir. 1992) .......................................................30

*In re Simons*,
   567 F.3d 800 (6th Cir. 2009) ................................................12, 14

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007).....................................................................17

*State by & through Tennessee Gen. Assembly v. United States Dep't of*
   *State*,
   931 F.3d 499 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 549 (2020) ...................17

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998).......................................................................17

*Town of Randolph, v. Purdue, Pharma, L.P.*,
   No. 19-CV-10813-ADB, 2019 WL 2394253 (D. Mass. June 6,
   2019) .........................................................................................26

*Tucson Med. Ctr. v. Purdue Pharma LP*,
   No. CV-18-00532-TUC-RCC, 2018 WL 6629659 (D. Ariz. Dec.
   19, 2018) ....................................................................................22

*Uintah County, Utah v. Purdue Pharma, L.P.*,
  No. 2:18-cv-00585-RJS, 2018 WL 3747847 (D. Utah Aug. 7,
  2018) ...................................................................................................23

*Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen.*
  *Comm. of Adjustment, Cent. Region*,
  558 U.S. 67 (2009) ..............................................................................17

*In re Univ. of Michigan*,
  936 F.3d 460 (6th Cir. 2019) ..............................................................18

*Weber County, Utah v. Purdue Pharma, L.P.*,
  No 1:18-cv-00089-RJS, 2018 WL 3747846 (D. Utah Aug. 7, 2018) .......... 22-23

*West Virginia v. McKesson Corp.*,
  No. 2:17-cv-03555, Doc. 21 (S.D. W.Virg. Feb. 15, 2018) ...............................23

*Will v. Calvert Fire Ins. Co.*,
  437 U.S. 655 (1978).............................................................................13

*Yong v. I.N.S.*,
  208 F.3d 1116 (9th Cir. 2000) ............................................................15

**Statutes**

28 U.S.C. § 1332(d) ...................................................................................7, 25

28 U.S.C. § 1407 ...........................................................................................16

28 U.S.C. § 1447(c) ...............................................................................*passim*

28 U.S.C. § 1447(d) ......................................................................................17

28 U.S.C. § 1651 ...........................................................................................14

Class Action Fairness Act (CAFA) ..........................................................7, 25

**Other Authorities**

Abbe R. Gluck, <u>Unorthodox Civil Procedure: Modern Multidistrict</u>
  <u>Litigation's Place in the Textbook Understandings of Procedure</u>,
  165 U. Pa. L. Rev. 1669, 1673 (2017)......................................... 27-28

Code of Judicial Conduct Rules 21-102 and 21-210(A) ...........................................6

Elizabeth Chamblee Burch, <u>Monopolies in Multidistrict Litigation</u>, 70
VAND. L. REV. 67, 119 (2017) .............................................................................29

Elizabeth Chamblee Burch, <u>Remanding Multidistrict Litigation</u>, 75
La. L. Rev. 399, 424 (2014)................................................................26, 27, 28, 29

Fed. R. Civ. P. 1 ...............................................................................................1, 16

Howard M. Erichson, <u>MDL and the Allure of Sidestepping Litigation</u>,
53 GA.L.REV. 1287, 1289 (2019) .......................................................................29

JPML Rule 10.3(a)....................................................................................................11

# I.    INTRODUCTION

> "[I]t's not fair to me to hold cases. . . .
>
> [A]ll these cities and counties are clamoring for their trials."
>
> > ~ Judge Dan A. Polster, in a closed-door
> > January 29, 2020 status conference. Exhibit 1,
> > 10:12-14.

Petitioners ask that this Court issue a writ of mandamus directing the District Court to correct the admittedly unfair treatment of municipal governments placed in interminable legal limbo. The first federal rule of civil procedure requires that federal courts construe, administer, and employ the rules "to secure the **just, speedy, and inexpensive** determination of **every action** and proceeding." Fed. R. Civ. P. 1 (emphasis added). What has transpired in Petitioners' five state-filed cases, and hundreds like them, makes a mockery of this primary rule. The black letter of statutory law requires that cases "shall be remanded" when "it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The District Court persists in ignoring the lack of federal jurisdiction over Petitioners' cases.

The Petitioners are five municipal governments. Lacking the formidable resources necessary to abate the manmade opioid epidemic debilitating their communities, these local governments instituted state court abatement actions against the liable parties, which diverted prescription opioids into illicit channels. Harris County's case was filed in state court in 2017, and the other Petitioners filed suits in 2019. There is no federal subject matter jurisdiction over any of the

Petitioners' cases, which were removed on a variety of different theories, one more nonsensical than the next.

The three petitioning counties and two petitioning cities, along with hundreds of others, have a right to proceed in a court with jurisdiction over the claims. Contrary to controlling law and precedent, these rights have been lawlessly thwarted for years. What has transpired in MDL 2804 is the antithesis of justice and speed. In violation of the limits of federal subject matter jurisdiction, the black letter of federal law requiring remand, and the Supreme Court's repeated pronouncements on the fundamental necessity of jurisdiction, hundreds of state-filed cases are stayed in a federal court lacking jurisdiction.

Petitioners received no due process. The District Court imposed a moratorium on remand motions before Petitioners' cases landed in MDL 2804. The removing defendants have never shown the prerequisites of a stay. Petitioners' requests that the District Court allow them to file motions seeking return to the transferor courts and/or a process for remanding to state court were all cursorily denied for no reason—indeed, without even a document order.[1] Appeal from a "final judgment"

---

[1] Exhibit 2, *Harris County* Docket Sheet, 04/08/2020 entry ("non-document" order); Exhibit 3, *Rockwall County* Docket Sheet (same); Exhibit 4, *Ellis County* Docket Sheet (same); Exhibit 5, *Harris County* Order [non-document] denying Plaintiffs' Motion for leave to File Motion Seeking Suggestion of Remand to JPML, 1:18-op-45677-DAP; Exhibit 6, *Rockwall County* Order [non-document] denying Plaintiffs' Motion for leave to File Motion Seeking Suggestion of Remand to the JPML, 1:19-op-45859-DAP; Exhibit 7, *Ellis County* Order [non-document] denying Plaintiffs'

cannot possibly remedy the injustice, because the District Court refuses to rule, and refuses to allow Petitioners to even file a motion.

## II.      STATEMENT OF RELIEF SOUGHT

Petitioners seek the return of their cases to the state tribunals with jurisdiction. The District Court will not allow Petitioners to file motions; Petitioners' requests for leave to file were denied in "non-document" orders (*see* note 1 *supra*). Thus, there are no District Court orders in Petitioners' five cases for this Court to review. Petitioners ask that this Court direct that the District Court rule either on Petitioners' motions for suggestion of remand to the transferor court or on Petitioners' motions for remand to state court.

## III.     STATEMENT OF ISSUE PRESENTED

In circumstances where the lack of federal subject matter jurisdiction is apparent, Petitioners never received due process, and Petitioners' cases have been stayed for years in a court without jurisdiction without any showing warranting such stays, should the District Court be ordered to rule on the lack of federal subject matter jurisdiction or to suggest remand so the transferor courts can make such a ruling?

---

Motion for leave to File Motion Seeking Suggestion of Remand to JPML, 1:19-op-45860-DAP; Exhibit 8, *Albuquerque and Santa Fe* Order [non-document] denying Motion for leave to File Motion for Remand Procedure or Suggestion of Remand to JPML, 1:17-md-02804.

## IV.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND NECESSARY TO UNDERSTAND THE ISSUES PRESENTED.

### A. For Years, Hundreds of County and City Cases Have Been Stayed in a Court Lacking Subject Matter Jurisdiction Over the Claims.

There are 356 removed cases stalled in MDL 2804.[2] Of those, 220 have outstanding remand motions, the overwhelming majority of which have been ignored by the District Court for years.[3] Beginning in early 2018 and continuing to this day, the District Court maintains a sweeping stay of remand motions,[4] with the exception of certain favored plaintiffs discussed below.

### B. The District Court Has Admitted This Is Unfair.

In an originally closed-door status conference, the same District Court Judge subject to this mandamus petition **admitted** that depriving *inter alia* Petitioners of their right to proceed to trial is unfair. Armed with this Court's decision in *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919 (6th Cir. 2019), Petitioners were able to uncover the transcript of closed-door meetings occurring in MDL 2804.[5] In one of

---

[2] Total reached after review of JPML CM/ECF Docket Activity Report with the specific search criteria (MDL No.: 2804; Event Category: Motion; Filed From: 12/21/2017; Filed To: 5/28/2021) and manual filtering (Event: Motion and Brief to Vacate Conditional Transfer Order.)

[3] Based on review of briefing and filings referenced above.

[4] Exhibit 9, Order Regarding Remands (N.D. Ohio Feb. 16, 2018) (entering moratorium on remand motions); Exhibit 10, CMO No. 1 (N.D. Ohio April 11, 2018), 11 ¶6.g ("No party may file any motion not expressly authorized by this Order absent further Order of this Court or express agreement of the parties.").

[5] *See* Exhibit 1, Tr. of 1/29/20 Status Conference, [1:17-MD-2804, Doc. 3113, PageID 482013] (marked "**SEALED**"); Motion to Lift Sealed Transcript of Status

these originally closed-door meetings, the District Court admitted that, "**it's not fair**

to me to hold cases. . . . [A]ll these cities and counties are clamoring for their trials."[6]

This admitted unfairness continues to this day.

### C. Other Plaintiffs Have Received Preferential Treatment Under Questioned Circumstances.

The prejudice of shutting down governmental entities' abatement cases for

years by holding them in a court without jurisdiction has not been inflicted on an

even-handed basis. States received special treatment by Judge Polster and were

carved out of his moratorium on remands.[7] But States are not the only parties treated

favorably. Select municipal governments—but not the undersigned—have had their

cases remanded after state court judges wrote letters to Judge Polster, in at least one

case following a previous discussion between the state judge and Judge Polster.[8]

Two opioid Defendants, Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.

("Endo"), succeeded in forestalling any consideration of subject matter jurisdiction

after telling the Honorable James O. Browning, United States District Court Judge,

---

Conference [1:17-MD-2804, Doc. 3349]; Exhibit 11, Order Granting Motion to Unseal.

[6] Exhibit 1,10:12-14 (emphasis added).

[7] *See* Exhibit 10, CMO No. 1, 11 ¶ 6.g.

[8] *See* Exhibit 12, Letter from Honorable Rex Burlison, Judge, Missouri 22nd Judicial Circuit Court, to Honorable Dan Polster, U.S.D.C. Judge (July 10, 2019) [1:17-MD-2804, Doc. 1828-1] ("As we previously discussed . . . ."); Exhibit 13, Letter from Honorable Barry C. Dozor, Judge, Pennsylvania 32nd Judicial District Court, to Honorable Dan Polster, U.S.D.C. Judge (June 19, 2019) [1:17-MD-2804, Doc. 1708-1].

District of New Mexico, that "two weeks" before January 24, 2020, Judge Polster had remanded two Missouri cases at the request of the state judge.[9] Taking Endo's counsel at his word (which we do not recommend), the two New Mexico Petitioners attempted to achieve remand through the method Endo described to Judge Browning. However, in a telephone hearing with a state court judge, Endo denied that such remands were available in 2020 (contradicting what it had told Judge Browning), and further argued that letter requests to Judge Polster were unethical violations of Judicial Canons.[10]

### D. Petitioners Unsuccessfully Fought for Compliance with the Black Letter of Statutory Law, 28 U.S.C. § 1447(c).

Petitioner Harris County, Texas brought its suit in the 133rd Judicial District Court of Harris County, Texas on December 13, 2017. *See* Exhibit 16, *Harris County Original Petition* [1:18-op-45677-DAP, Doc. 1-2]. The opioid wholesale distributor defendants removed the cause to federal court on February 15, 2018. *See Harris County Notice of Removal* [1:18-op-45677-DAP, Doc. 1]. Distributor defendants'

---

[9] *See* Exhibit 14, Tr. of Mot. Hr'g at 82:23-24, *City of Albuquerque v. Teva Pharmaceuticals USA, Inc.,* 1:19-CIV-01168-JB/JHR (D.N.M. Jan. 24, 2020) [1:17-md-02804, Doc. 3396-8, PageID #:497553] (Endo arguing "two weeks ago [i.e., two weeks before January 24, 2020] Judge Polster ordered remand in two Missouri cases").

[10] *See* Exhibit 15, Tr. of Proceedings at 16-17 (Endo quoted Code of Judicial Conduct Rules 21-102 and 21-210(A) in support of the argument that the state judge's requests "represent a violation of the principle of judicial independence" and that such letter requests are "forbidden in the Rule."). Petitioners did not agree with this characterization.

removal notice argued that all other defendants were fraudulently joined. *See id*. Harris County filed its motion to remand a mere five days later, on February 20, 2018.  Exhibit 17, *Harris County* Motion to Remand [1:18-op-45677-DAP, Doc. 2]. More than three years later, that motion remains pending. Holding Harris County's case in a federal court lacking jurisdiction is particularly unjust, considering that the intra-state *In re Texas Opioid* Multidistrict Litigation is pending in a Harris County Judicial District. *See* Exhibit 18, *Rockwall County* Motion for Leave at exhibit 6 [1:19-op-45859-DAP, PageID #:1525]. Thus Harris County's opioid case is missing from the state opioid litigation pending in Harris County.

On April 10, 2019, Petitioner Rockwall County, Texas, filed suit in the 439th Judicial District Court of Rockwall County, Texas, against Defendants responsible for the opioid epidemic plaguing the County. *See* Exhibit 19, *Rockwall County* Original Petition [1:19-op-45859-DAP, Doc. 1-1]. The Petition states that, "There is no federal subject matter jurisdiction pursuant to 28 U.S.C. Section 1332(d) because the Plaintiff does not bring this case as a class action[.]" *Id.,* p. 16. One of over three dozen Defendants removed the County's case to federal court, incredibly claiming jurisdiction under the Class Action Fairness Act (CAFA). *See* Rockwall County Notice of Removal [1:19-op-45859-DAP, Doc. 1]. Shortly thereafter, Rockwall County moved for remand to state court. Exhibit 20, *Rockwall County* Motion to Remand [1:19-op-45859-DAP, Doc. 10]. After the case was administratively closed

due to MDL 2804, Rockwall County moved to reopen it, again seeking remand. *Rockwall County* Motion to Reopen [1:19-op-45859-DAP, Doc. 35].

Petitioner Ellis County, Texas, brought suit in Texas's 443rd Judicial District Court on May 3, 2019. *See* Exhibit 21, *Ellis County* Original Petition [1:19-op-45860-DAP, Doc. 1-1]. Removal to federal court was based on the dual fictions that the case is a "class action" and arises under a federal question—both of which were expressly disclaimed in the pleadings. *See id*. at pp. 17-18 ¶¶ 35-36; Notice of Removal [1:19-op-45860-DAP, Doc. 1]. Shortly after Defendants' wrongful removal, Ellis County moved to remand. Exhibit 22, *Ellis County* Motion to Remand [1:19-op-45860-DAP, Doc. 12]. When the case was stayed pending an MDL transfer decision, Ellis County moved to lift the stay, again asking for remand. *Ellis County* Motion to Lift Stay, or for Reconsideration [1:19-op-45860-DAP, Doc. 33].

On July 10, 2019, Petitioner City of Albuquerque, New Mexico, initiated legal action in New Mexico's Second Judicial District Court. *See* Exhibit 23, *Albuquerque* Complaint [1:20-op-45136-DAP, Doc. 1-1]. The removing Endo Defendants did not assert any of the removal theories in the Counties' removal notices discussed above. Endo falsely asserted diversity jurisdiction, but not on the theory that wholesale distributors were fraudulently joined with other defendants. Instead, Endo argued that the New Mexico citizenship of *seven* individual healthcare provider or pharmacist defendants all should be "ignored" and they are "fraudulently

misjoined." *See* Notice of Removal [1:20-op-45136-DAP, Doc. 1]. Shortly after Endo's wrongful removal, the City of Albuquerque moved for remand on an expedited basis. Exhibit 24, *Albuquerque* Motions to Remand and Expedite [1:20-op-45136-DAP, Docs. 11, 16]. The Honorable James O. Browning, United States District Court Judge, District of New Mexico, granted the City of Albuquerque a hearing, wherein he announced that notwithstanding his reservations, and his belief that Endo's arguments seemed very unprincipled to him, he would follow the better course of MDL practice and take no action. *See* Exhibit 14, Tr. of Mot. Hr'g at 51-52, 111, *City of Albuquerque v. Teva Pharmaceuticals USA, Inc., et al.*, 1:19-CIV-01168-JB/JHR (D.N.M. Jan. 24, 2020).

On July 9, 2019, Petitioner City of Santa Fe filed an opioid nuisance abatement action in New Mexico's First Judicial District Court. *See* Exhibit 25, *Santa Fe* Complaint [1:20-op-45137-DAP, Doc. 1-3]. In the Notice of Removal of the City of Santa Fe's case, the removing Endo Defendants claimed that the New Mexico citizenship of two defendants named in the case should be "ignored" and that these two defendants are "fraudulently misjoined." *See* Notice of Removal [1:20-op-45137-DAP, Doc. 1]. Shortly after the removal, the City of Santa Fe filed a motion to remand and for expedited consideration of same. Exhibit 26, *Santa Fe* Motions [1:20-op-45137-DAP, Docs. 14, 19].

Petitioners were unsuccessful in fighting transfer into MDL 2804,[11] where the cases languish to this day, years after they were filed.

### E. Petitioners Received No Notice or Opportunity to be Heard in MDL 2804.

All five Petitioners asked Judge Polster to grant them leave to file a motion to remand their cases to the respective transferor courts. *See* Exhibit 18; Exhibit 27; Exhibit 28; Exhibit 29. In addition, the New Mexico Cities asked Judge Polster for leave to file a motion requesting an efficient remand procedure. Exhibit 29. The Cities presented a proposed order illustrating how the outstanding remand motions filed in improperly removed cases could be efficiently resolved.[12]

Notwithstanding the District Court's admission—in a closed-door conference that Petitioners later succeeded in unsealing—that holding these cases in federal court without trial was unfair,[13] the District Court would not even grant Petitioners leave to file their motions. Harris County's motion for leave to file its motion was

---

[11] *See Harris County* Motion to Vacate CTO-13 [JPML Doc. 7989-8]; *Rockwall* Motion to Vacate CTO-102 [1:19-op-45859-DAP, Doc. 41-6]; *Ellis* Motion to Vacate CTO-102 [1:19-op-45860-DAP, Doc. 39-6]; *Albuquerque* Motion to Vacate CTO-125 [1:17-MD-2804, Doc. 3396-13]; *Santa Fe* Motion to Vacate CTO-125 [1:17-MD-2804, Doc. 3396-12].

[12] Exhibit 30, [Proposed] Order Establishing Remand Procedures [1:17-MD-2804, Doc. 3396-15, PageID #:497695]. The proposal was to divide the removals into buckets and make exemplar rulings; thereafter, the removing defendants would be subject to a show cause proceeding to justify why any particular case was exceptional.

[13] *See* Exhibit 1, Tr. of Status Conference Proceedings, 10:12-14 (quoted above).

summarily denied in a "non-document" order. *See* Exhibit 5. Similarly, Rockwall and Ellis Counties' motions were immediately denied within a week of the motions' filing, again in "non-document" orders. *See* Exhibit 6, 7. As to the New Mexico Cities, the District Court waited until Endo filed a response, and then on the next day denied the Cities' motion in another "non-document" order. *See* Exhibit 8. The District Court did not articulate its reasons for the denials.

Exhausting all possible remedies, Petitioners asked the Judicial Panel on Multidistrict Litigation to order remand of the five cases to the transferor courts, which would then rule on subject matter jurisdiction. Exhibit 31; Exhibit 32; Exhibit 33; Exhibit 34. Denying these motions, the Panel reasoned that because Judge Polster would not grant Petitioners' motions, the Panel Rules required "reluctan[ce]," and that Petitioners were unable to meet their burden of overcoming this reluctance. *See* Exhibit 35, Order Denying Remand [JPML Doc. 8582]; Exhibit 36, Order Denying Remand [JPML Doc. 9019] (citing Panel Rule 10.3(a)). In denying the Texas Counties' motions, the Panel stated that, "plaintiffs are, of course, entitled to a ruling on their motion to remand. We are confident that the transferee judge will address motions to remand to state court in due course." Exhibit 35, Doc. 8582 at p. 2. This confidence was misplaced, because Judge Polster did not address the Texas Counties' motions. Nonetheless, when the Panel thereafter denied the New Mexico Cities' motion, the Panel expressed its "confiden[ce]" that the transferee

judge "will address these and other plaintiffs' motions to remand to state court in due course." Exhibit 36, Doc. 9019, at p. 2.

That was in February. To date, the transferee judge has not addressed any of these remand motions.

## V. REASONS WHY A WRIT OF MANDAMUS SHOULD ISSUE

"A party seeking relief in mandamus generally must demonstrate a 'clear and indisputable' right to that relief." *In re Simons*, 567 F.3d 800, 801 (6th Cir. 2009) (citations omitted). The Court considers, among other things:

a) "[W]hether 'the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.'" *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020) (quoting *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008)).

b) "[W]hether the district court's order is plainly incorrect as a matter of law." *Id*.

c) "[W]hether the district court's order 'manifests a persistent disregard of the federal rules.'" *Id.*

d) "[W]hether 'the petitioner will be damaged or prejudiced in a way not correctable on appeal.'" *Id*.

e) "[W]hether 'the district court's order raises new and important problems.'" *Id.*

Each of these five factors, recited by this Court in granting a writ of mandamus in MDL 2804 last year, support the conclusion that here, too, mandamus relief is warranted and necessary.

### A.    A Mandamus Writ Is the Only Adequate Means in the Face of the District Court's Refusal to Rule.

An unjustified, never-ending hold on state-filed cases prevents Petitioners' cases, and the cases of hundreds of other municipal governments, from proceeding in a tribunal with jurisdiction. Petitioners have done everything to request compliance with the black letter of statutory law. We have left no stone unturned. But being right on the law has not been enough because the system is broken. Only this Court's intervention can remedy the injustice.

"[J]ustice delayed is justice denied." *In re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir. 2018) (per curiam) (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990)). "There can be no doubt that, where a district court persistently and without reason refuses to adjudicate a case properly before it, the court of appeals may issue the writ 'in order that [it] may exercise the jurisdiction of review given by law.'" *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661–62 (1978) (plurality) (quoting *Ins. Co. v. Comstock*, 16 Wall. 258, 270 (1873)). "[A]n appellate court may issue a writ of mandamus on the ground that undue delay is tantamount to a failure to exercise jurisdiction." *Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1996), *superseded in part on other grounds* (citing *McClellan v. Young*, 421 F.2d

690 (6th Cir. 1970) (per curiam)). "Although lower courts generally have discretion with regard to their dockets, an appellate court may issue a writ of mandamus when an undue delay in adjudication is tantamount to a failure to exercise jurisdiction." *Paluck v. Sec'y of Health & Hum. Servs*., 111 Fed. Cl. 160, 167 (2013) (quotation marks and citations omitted) (instructing that decision should issue within 120 days of order).

The All Writs Act (28 U.S.C. § 1651) vests discretionary power to issue a writ of mandamus in aid of this Court's supervisory control of the District Court. *McClellan*, 421 F.2d at 691. In exercise of that power in *McClellan*, this Court issued a writ commanding action within ten days where the district court had delayed acting on twenty-six habeas corpus actions for the purpose of awaiting a Supreme Court decision in another case. 421 F.2d at 691 (citing *La Buy v. Howes Leather Co*., 352 U.S. 249 (1957)). Similarly, this Court granted a writ of mandamus where a statute required a ruling on a motion to enforce rights "forthwith" but the district court had failed to rule for three months. *Simons*, 567 F.3d at 801. *Simons* rejected the argument that because the district court had not denied the petitioner's motion, a writ of mandamus was unavailable. This Court in *Simons* directed that the district court rule within two weeks. *Id.*

Numerous other decisions recognize the propriety of granting a writ of mandamus to direct a district court to issue a timely decision in matters pending

14

before that court. *E.g., Drummond*, 886 F.3d at 450 (granting writ of mandamus and ordering district court to adjudicate two pending summary judgment motions within thirty days); *Yong v. I.N.S.,* 208 F.3d 1116, 1120–21 (9th Cir. 2000) (citing *inter alia McClellan* and *Johnson v. Rogers*; finding that while the district court "was in an unenviable position," a stay that delayed "potentially for years, any progress" on petition was an abuse of discretion; vacating district court stay and remanding); *Johnson v. Rogers*, 917 F.2d at 1285 ("unfortunately high volume of prisoner cases pending in the District of Kansas is insufficient to justify" 14 month delay; granting writ and ordering decision within sixty days) (citing *McClellan*, 421 F.2d at 691); *In re Mujaddid*, 762 F. App'x 124, 126 (3d Cir. 2019) (per curiam) ("a federal appellate court 'may issue a writ of mandamus on the ground that [the District Court's] undue delay is tantamount to a failure to exercise jurisdiction.'") (quoting *Madden*, 102 F.3d at 79, and denying petition because "little more than two to three months have lapsed since the motion [to remand to state court] has been ripe for disposition"); *In re Hood*, 135 F. App'x 709, 711 (5th Cir. 2005) (per curiam) (writ of mandamus was appropriate to address district court's seven month delay in entering judgment; writ held in abeyance until end of week).

### B. The District Court Has Clearly Erred as a Matter of Law by Refusing to Consider Its Lack of Subject Matter Jurisdiction.

The District Court is ignoring and violating 28 U.S.C. § 1447(c), due process, and the standards for staying litigation. The only excuse for the admittedly unfair

treatment of Petitioners is that their cases were transferred into a busy Multidistrict Litigation. But as this Court held last year in resolving another mandamus in this case, the existence of an MDL is no excuse for ignoring the law.

"The rule of law applies in multidistrict litigation under 28 U.S.C. § 1407 just as it does in any individual case. Nothing in § 1407 provides any reason to conclude otherwise." *In re Nat'l Prescription Opiate Litig*., 956 F.3d at 841. In *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998), "a unanimous Court stopped in its tracks the MDL courts' nascent practice of conducting trials" notwithstanding the "courts lacked power to conduct them." 956 F.3d at 844. "MDLs are not some kind of judicial border country, where the rules are few and the law rarely makes an appearance. For neither § 1407 nor Rule 1 remotely suggests that, whereas the Rules are law in individual cases, they are merely hortatory in MDL ones." 956 F.3d at 844.

The District Court is ignoring the black letter of statutory law: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Shall imposes a mandatory duty. *See Lexecon*, 523 U.S. at 35 ("the mandatory 'shall,' . . . normally creates an obligation impervious to judicial discretion") (citation omitted).

Remand of a case upon the exposure of a jurisdictional defect is not only a statutory mandate, but it is also the outcome decreed in controlling jurisprudence.

The Supreme Court has stated that remand to state court should be swift: "The well-advised defendant, we are satisfied, will foresee the likely outcome of an unwarranted removal—a **swift** and nonreviewable remand order, see 28 U.S.C. §§ 1447(c), (d), attended by the displeasure of a district court whose authority has been improperly invoked." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 77–78 (1996) (emphasis added). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)); *see also Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 84 (2009) (parenthetically quoting same); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (quoting *Steel*). Or put another way, "[w]hen a court lacks jurisdiction, it '**cannot proceed at all** in any cause.'" *State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 549 (2020) (quoting *Steel*, 523 U.S. at 94) (quoting *Ex Parte McCardle*, *supra*) (emphasis added); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)") (citing *Steel*, 523 U.S. at 93-102).

17

District Courts have discretion to weigh hardships and impose stays, but this District Court did not weigh any of the hardships facing Petitioners. The District Court did not consider whether a stay should be entered in the Petitioners' individual cases. The court issued a moratorium before the Petitioners' cases landed in the MDL, and when Petitioners asked for leave to file their motions, leave was denied without explanation. Petitioners have never been afforded an opportunity to be heard in MDL 2804. Petitioners have therefore been deprived of due process.[14]

The indefinite stays of Petitioners' cases are a usurpation of power. "Any power a lower federal court exercises must have some basis in either an act of Congress or the Constitution. Otherwise, it has no basis in law." *In re Univ. of Michigan*, 936 F.3d 460, 463 (6th Cir. 2019) (granting writ of mandamus). There is no basis here, because the prerequisites for staying Petitioners' cases have never been met.

District Courts "ordinarily have authority to issue stays, where such a stay would be a **proper** exercise of discretion." *Ryan v. Gonzales*, 568 U.S. 57, 73 (2013) (quoting *Rhines v. Weber*, 544 U.S. 269, 276 (2005)) (emphasis supplied). While the

---

[14] *See, generally,* A*rmstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is 'the opportunity to be heard.' . . . It is an opportunity which must be granted at a meaningful time and in a meaningful manner.") (citation omitted). *Cf. Lesher v. Lavrich*, 632 F. Supp. 77, 83 (N.D. Ohio 1984) ("The requirement of due process is only satisfied when the state or local agency affords a party a fair and timely hearing and decision without unreasonable and unwarranted continuances and delays."), *aff'd*, 784 F.2d 193 (6th Cir. 1986).

entry of a stay ordinarily rests with the sound discretion of the District Court, "it is also clear that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). The most important factor in considering whether to grant a stay is the balance of the hardships. *F.T.C. v. E.M.A. Nationwide, Inc*., 767 F.3d 611, 628 (6th Cir. 2014). There is a clear abuse of discretion here because the District Court stripped Petitioners of their rights without any explanation as to why this hardship can be ignored. These Petitioners, and the harm to their communities, was never considered, and the length of the stay remains unknown to this day.

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis v. N. Am. Co*., 299 U.S. 248, 255 (1936)). There has never been a need, because Judge Polster can efficiently remand these cases on a show cause basis. *See* note 12 *supra.* Defendants not only failed to carry their burden of establishing need for a stay lasting years, but removing defendants affirmatively denied that this burden would come to pass. In the transferor courts, defendants argued, inaccurately and disingenuously, that any stay allegedly would be "brief."[15]

---

[15] *See, e.g.,* Exhibit 37, *Ellis* Mem. in Supp. of Mot. for Temporary Stay, 1:19-op-45860-DAP, PageID #:439, 442, 445; Exhibit 38, *Albuquerque* Mot. to Stay, 1:20-

"Furthermore, even if the reasons for the stay are proper, the stay itself 'is immoderate and hence unlawful unless so framed in its inception that its force will be spent **within reasonable limits**, so far at least as they are susceptible of prevision and description.'" *Ohio Env't Council*, 565 F.2d at 396 (quoting *Landis*, 299 U.S. at 257) (emphasis added). Delay "increase[s] the danger of prejudice resulting from the loss of evidence." *Clinton,* 520 U.S. at 707–08. This Court held in *Ohio Env't Council* that the district court had clearly abused its discretion by entering "an order which could place this case in limbo for years" when the case had "already been delayed for more than a year and a half by successive stays." 565 F.2d at 396. *See also, Clinton*, 520 U.S. at 707 (district court abused its discretion in deferring trial until after defendant left office). Here, the District Court has stayed hundreds of cases, including cases filed in 2017. This is an abuse of discretion according to *Clinton v. Jones* and *Ohio Env't Council*.

### C. The District Court Has Persistently Disregarded 28 U.S.C. § 1447(c) and the Supreme Court Authority Requiring Federal Subject Matter Jurisdiction.

It has been clear for years that there is no federal subject matter jurisdiction over hundreds of cases removed to federal court on overwhelmingly rejected theories. The removals are so legally baseless that the removing defendants have had

---

op-45136-DAP, PageID #:481, 486-489, 492; Exhibit 39, *Santa Fe* Mot. to Stay, 1:20-op-45137-DAP, PageID #:648, 653-654, 656, 659-660.

trouble selecting among their bad arguments. All of the shifting removal grounds have been overwhelmingly rejected by the federal courts which have addressed the merits of plaintiffs' remand motions. *See, e.g., Mecklenburg Cty., Virginia v. Purdue Pharma, L.P.,* No. 3:19-CV-463, 2019 WL 3207795, at \*2 (E.D. Va. July 16, 2019) ("The Court has not been notified of any decision in these similar cases in which a court has found that there was federal jurisdiction."); *Dinwiddie County, Virginia v. Purdue Pharma, L.P.*, 3:19-CV-242, 2019 WL 2518130, at \*2 (E.D. Va. June 18, 2019) ("The Court has not been notified **of *any* decision** in these similar cases in which a court has found that there was federal jurisdiction.") (emphasis added).

The District Court's persistence in ignoring the law is exposed by the length of time that has passed, by its refusal to rule on subject matter jurisdiction even after the JPML twice stated that plaintiffs are entitled to a ruling, and by the District Court's own admission in a closed-door conference that holding the Cities' and Counties' cases is unfair (*see* Exhibit 1, 10:12-14). The refusal to follow Section 1447(c) by keeping hundreds of cases in federal court notwithstanding a lack of subject matter jurisdiction is deliberate. As explained below, Judge Polster already decided one of the wrongful removal grounds against defendants, and the other grounds have been unanimously rejected by the courts that have ruled on them.

## 1. Judge Polster persists in ignoring his own opinion on the lack of substantial federal question jurisdiction.

Substantial federal question jurisdiction has been squarely rejected in at least nineteen federal decisions in opioid litigation—including two decisions from Judge Polster himself.[16] *Dunaway v. Purdue Pharma L.P.*, 391 F. Supp. 3d 802 (M.D. Tenn. 2019); *New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242 (D.N.M. 2018); *City of Las Vegas v. Purdue Pharma, L.P.*, No. 2:19-CV-2128-JC-MDJA, 2020 WL 223614 (D. Nev. Jan. 15, 2020); *City of N. Las Vegas v. Walgreens Boots All., Inc.*, No. 2:19-CV-2143-JC-MDJA, 2020 WL 109795 (D. Nev. Jan. 9, 2020); *DCH Health Care Auth. v. Purdue Pharma L.P.*, No. CV19-0756-WS-C, 2019 WL 6493932 (S.D. Ala. Dec. 3, 2019); *Illinois Pub. Risk Fund v. Purdue Pharma L.P.*, No. 19C3210, 2019 WL 3080929 (N.D. Ill. July 15, 2019); *Dinwiddie*, 2019 WL 2518130; *In re Nat'l Prescription Opiate Litig.*, MDL 2804, 2019 WL 180246 (N.D. Ohio Jan. 14, 2019); *Tucson Med. Ctr. v. Purdue Pharma LP*, No. CV-18-00532-TUC-RCC, 2018 WL 6629659 (D. Ariz. Dec. 19, 2018); *City of Reno v. Purdue Pharma, L.P.*, No. 3:18-cv-00454-MMD-WGC, 2018 WL 5730158 (D. Nev. Nov. 2, 2018); *In re Nat'l Prescription Opiate Litig.*, MDL 2804, 2018 WL 4019413 (N.D. Ohio Aug. 23, 2018); *Cty. of Anderson v. Rite Aid of S.C., Inc.*, No. 8:18-CV-1947-BHH, 2018 WL 8800188 (D.S.C. Aug. 20, 2018); *Weber*

---

[16] The District Court will not allow Counties or Cities to file remand motions, yet made an exception for States. Exhibit 10, CMO No. 1, 11 ¶ 6.g.

*County, Utah v. Purdue Pharma, L.P.*, No 1:18-cv-00089-RJS, 2018 WL 3747846 (D. Utah Aug. 7, 2018); *Uintah County, Utah v. Purdue Pharma, L.P.*, No. 2:18-cv-00585-RJS, 2018 WL 3747847 (D. Utah Aug. 7, 2018); *City of Granite City, Ill. v. AmerisourceBergen Drug Corp.*, No. 18-CV-1367-SMY-DGW, 2018 WL 3408126 (S.D. Ill. July 13, 2018); *Delaware ex rel. Denn v. Purdue Pharma L.P.*, No. 1:18-cv-383-RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018); *West Virginia ex rel. Morrisey v. McKesson Corp.*, No. C16-1772, 2017 WL 357307 (S.D.W. Va. Jan. 24, 2017); Memorandum Opinion and Order, *West Virginia v. McKesson Corp.*, No. 2:17-cv-03555, Doc. 21 (S.D. W.Virg. Feb. 15, 2018); Order, *Oklahoma v. Purdue Pharma L.P.*, No. 5:18-cv-00574-M, Doc. 53 (W.D. Okla. Aug. 3, 2018).

Instead of applying his own ruling, wherein he rejected substantial federal question jurisdiction,[17] to removed cases held in MDL 2804, Judge Polster did something remarkable. Mysteriously, after writing a scholarly opinion rejecting substantial federal question jurisdiction, Judge Polster "withdr[ew his] previous Opinion and Order" because the defendant decided to consent. *See* Exhibit 40, Docket Entry 15. Westlaw ignores Judge Polster's attempt to take back the opinion.[18] When parties lose, they ordinarily do not have the option of erasing the losing opinion, but that is effectively what Judge Polster allowed here, and removing

---

[17] *In re Nat'l Prescription Opiate Litig.*, 2019 WL 180246.
[18] The decision appears at 2019 WL 180246 without negative treatment history.

defendants continued to assert substantial federal question jurisdiction even after this theory was exposed as baseless in a decision by Judge Polster himself.

### 2. Defendants' shifting complete diversity theories have been exposed as baseless.

Removing defendants have never found a single case, much less an applicable or convincing one, whereby severance was used to force a municipal government to abate the same public nuisance in two different cases in two different jurisdictions. But that has not stopped them from demanding this very thing. The two arguments— alleged fraudulent joinder of distributor defendants with other defendants (alleged in Harris County), and alleged fraudulent joinder of local practitioner and pharmacy defendants with any diverse defendants (alleged in New Mexico cases)—have been resoundingly rejected by federal courts across the country. *City of Holly Springs v. Johnson & Johnson*, 477 F. Supp. 3d 547, 552 (N.D. Miss. 2020); *Mecklenburg*, 2019 WL 3207795, at *5; *Dinwiddie*, 2019 WL 2518130, at *5; *Cty. of Anderson, supra*, 2018 WL 8800188, at **4-8; *Anne Arundel Cty., Maryland v. Purdue Pharma L.P.*, No. CV-GLR-18-519, 2018 WL 1963789, at *5 (D. Md. Apr. 25, 2018); *Mayor & City Council of Baltimore v. Purdue Pharma L.P.*, No. CV-GLR-18-800, 2018 WL 1963816, at *5 (D. Md. Apr. 25, 2018); *Cty. of Travis v. Purdue Pharma*, LP, No. 1:18-CV-254-RP, 2018 WL 1518848, at *4 (W.D. Tex. Mar. 28, 2018); *Cty. of Falls v. Purdue Pharma, LP*, No. 6:18-CV-47-RP-JCM, 2018 WL 1518849, at *4 (W.D. Tex. Mar. 28, 2018); *Cty. of Delta v. Purdue Pharma, L.P.*, No. 4:18-CV-

095, 2018 WL 1440485, at *4 (E.D. Tex. Mar. 22, 2018); Mem. Op. & Order, pp. 10-11, *County Bd. of Arlington County, Virg. v. Purdue Pharma L.P., et al.*, No. 1:19-cv-402 (E.D. Virg. May 6, 2019) (filed in *Rockwall*, 1:19-op-45859-DAP, PageID 239-40); Order, pp. 6-7, *County of Dallas v. Purdue Pharma L.P., et al.,* No. 3:18-cv-0426-M (N.D. Tex. March 7, 2018) (filed in *Rockwall*, 1:19-op-45859-DAP, PageID 253-254); Mem. Op. & Order, pp. 7-8, *County of Van Zandt v. Amerisourcebergen Corp.,* No. 6:18-CV-00064-RWS (E.D. Tex. April 16, 2018) (filed at *Rockwall*, 1:19-op-45859-DAP, PageID 288-289).

### 3.  Defendants should be sanctioned for removing under CAFA.

As to two of the three Texas Counties, defendants alleged CAFA jurisdiction. On the face of the statute, this is a sanction-worthy argument, because the cases were not filed under any class action rule and because the numerosity requirements are not met. *See* 28 U.S.C. § 1332(d). The Supreme Court has rejected the removal of governmental entity litigation based on CAFA, finding that the plain statutory language is controlling. *Mississippi ex rel. Hood v. AU Optronics*, 571 U.S. 161 (2014). In the cases where opioid defendants removed on CAFA grounds, courts that considered the issue have remanded to state court. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208 (2d Cir. 2013); *City of Holly Springs*, 477 F. Supp. 3d at 554; *City of Las Vegas,* 2020 WL 223614, at *5; *City of N. Las Vegas*, 2020 WL 109795, at *5; *DCH Health Care Authority*, 2019 WL 6493932, at *6; *Mecklenburg*,

2019 WL 3207795, at *6; *Dinwiddie,* 2019 WL 2518130, at *6; *Town of Randolph,*

*v. Purdue, Pharma, L.P.*, No. 19-CV-10813-ADB, 2019 WL 2394253, at **4-5 (D.

Mass. June 6, 2019); *City of Galax, Virginia v. Purdue Pharma, L.P.*, No. 7:18-CV-

00617, 2019 WL 653010 (W.D. Va. Feb. 14, 2019); *New Hampshire v. Purdue*

*Pharma*, No.17-CV-427-PB, 2018 WL 333824 (D.N.H. Jan. 9, 2018).

### D. Petitioners and the Constituent Communities Are Prejudiced in a Way Not Correctable on Appeal.

While defendants have no incentive to see the limits of federal subject matter

jurisdiction appropriately enforced, the plaintiffs "can suffer without remand, as can

state substantive laws, procedural justice, and democratic participation

opportunities." Elizabeth Chamblee Burch, <u>Remanding Multidistrict Litigation</u>, 75

La. L. Rev. 399, 424 (2014) (hereinafter Burch, <u>Remanding</u>). Years of delays have

been inflicted upon Petitioners while select favorites have been spared. According

to removing Endo defendants, what has happened is unethical. *See* § IV.C *supra*.

In addition to Judge Polster's own admission in a closed-door proceeding, trial

courts have agreed that the never-ending delays imposed by a transfer into federal

MDL 2804 are prejudicial. For example:

> [T]he risk of hardship resulting from a postponement of a jurisdictional
> determination is **great**. . . . **The prospect of indefinitely postponing a**
> **jurisdictional ruling is especially troubling, given that this case**
> **involves Tennessee public officials, charged with representing the**
> **interests of the citizens of their respective judicial districts, seeking**
> **access to the state's courts to assert claims under the state's laws.** .
> . . If . . . jurisdiction is lacking, . . . the case should be returned to the

> state courts as soon as reasonably practicable. Otherwise, the federal courts will not only waste the parties' time but impair the state's interest in the administration of justice.

*Dunaway,* 391 F. Supp. 3d at 808–809 (emphasis added).

> The Court believes that deferring decision on the motion to remand would risk **significant unfairness** to the plaintiff. The judge presiding over the MDL has elected not to rule on any motions for remand or permit discovery for a substantial period of time. Thus to defer ruling now could have the effect of staying the litigation indefinitely.

*Illinois Pub.,* 2019 WL 3080929, at *1 (citing *Dunaway*) (emphasis added).

> [A]ny decision on the motion to remand could take a significant amount of time, maybe even over a year. **This extensive delay is a significant prejudice** to Dinwiddie County as it will not be able to effectively prosecute its case even though there is no federal jurisdiction. Further, judicial efficiency will not be promoted because the case should proceed in state court as soon as possible since there is no federal jurisdiction in this case.

*Dinwiddie County,* 2019 WL 2518130, at *7 (emphasis added).

### E. This Writ Raises Important Problems Plaguing Multidistrict Litigation and Affecting Hundreds of Governmental Entity Plaintiffs.

Petitioners, the citizens living in Petitioners' counties and cities, and hundreds of other plaintiffs and their communities with removed cases languishing in MDL 2804, are being sacrificed. Petitioners' plight exemplifies a pattern of systemic injustice increasingly noted, and criticize, by scholars. "Multidistrict litigation has frequently been described as a 'black hole.'" Burch, Remanding, 400 (citations omitted). "Only about three percent of cases remand to the originator (transferor) district judge. . . . That is a shocking statistic[.] Abbe R. Gluck, Unorthodox Civil

<u>Procedure: Modern Multidistrict Litigation's Place in the Textbook Understandings of Procedure</u>, 165 U. PA. L. REV. 1669, 1673 (2017) (citations omitted). These shocking statistics are attracting scrutiny:

> [I]nterviews with attorneys who have been heavily involved in these cases suggest that "the panel has abdicated its proper role by providing no recourse to remedy or to exit an MDL black hole."
>
> . . . As of 2010, the Panel remanded only 3.425% of cases to their original districts. That number dwindled to 3.1% in 2012, and to a scant 2.9% in 2013. To put this number in perspective, in 2012, the multidistrict litigation docket comprised roughly 15% of all federal civil cases.

Burch, <u>Remanding</u>, at 400-01 (footnotes omitted).[19]

Petitioners, the hundreds of other plaintiffs with cases languishing in MDL 2804 without any ruling on their remand motions, and all of the citizens living in these communities are being sacrificed for the benefit of the defendants who caused the opioid epidemic, the convenience of the MDL Judge, and possibly the future benefit of certain plaintiffs' lawyers who have attempted to profit off of cases on which they have never worked.

Defendants have "near-uniform opposition to remanding cases for trial," and often stand to gain the most through centralization. Burch, <u>Remanding</u>, at 414

---

[19] *See also id.* at 402 ("Although the Panel could remand cases at a party's request, in practice it appears never to have done so."), 420 ("when a transferee judge clings to cases in hopes of coercing a settlement, there is no path around the bottleneck. . . . In theory, the bottleneck should not exist.") (footnotes omitted).

(footnote omitted). Here, the Endo Defendants have behaved particularly dishonorably, making contradictory claims to different courts on the issue of whether, when, and how Judge Polster is remanding cases.[20]

"[L]ead plaintiffs' attorneys and defendants gain little to nothing by having cases remanded to the transferor courts." Burch, Remanding, at 424.[21] One stratagem that has come under increasing criticism is lead plaintiffs' attorneys' attempts to expand their fee base in violation of jurisdictional limits. *See, e.g.,* Elizabeth Chamblee Burch, Monopolies in Multidistrict Litigation, 70 VAND. L. REV. 67, 119 (2017) (critical of a case in which "lead lawyers effectively used their bargaining authority with the defendant to expand both the federal court's jurisdiction and leaders' fee base to include settling state-court cases and unfiled claims."). In multidistrict litigation, plaintiffs' leadership "can act like oligopolies and cartels" by "overreaching in settlement design, flouting ethical obligations, reducing non-leaders' fees, and failing to consider conflicts." *Id.* at 122.

---

[20] *See* notes 9-10 *supra*; Exhibit 41, Chart Quoting Inconsistent Statements of Removing Endo Defendants [1:17-MD-2804, Doc. 8816-12].

[21] Commentators also have noted that, "transferee judges have their own professional and reputational incentives to broker deals and thwart remand." Burch, Remanding, at 418. According to another commentator, "[t]he judge overseeing the opioids MDL took an unusually aggressive pro-settlement stance from the start." Howard M. Erichson, MDL and the Allure of Sidestepping Litigation, 53 GA.L.REV. 1287, 1289 (2019) (footnote 6 citing hearing transcript).

Here, court-appointed plaintiffs' counsel have demanded that *inter alia* Petitioners pay a "common benefit" tax. Specifically, court-appointed counsel demanded that Judge Polster ignore the limits of his authority by ordering a "common benefit" assessment on cases over which the federal judiciary lacks subject matter jurisdiction. *See, e.g., Amended* Motion for Entry of Order Establishing Common Benefit Fund and (Proposed) Order [1:17-MD-2804, Doc. 3112, 3112-1]. Such jurisdictional over-reach is improper.[22] For the time being, the numerous objectors[23] succeeded in preventing entry of such an order, but the District Court only deferred the common benefit demand until a later date, when the issue could be revisited. *See* Order Denying Without Prejudice PEC's Motion for Common Benefit Order [1:17-MD-2804, Doc. 3397]. Petitioners are among hundreds of plaintiffs potentially subjected to future overreaching by court-appointed counsel.[24]

---

[22] Numerous cases have recognized that a "common benefit" assessment should not be imposed on cases over which the federal court lacks jurisdiction. *See, e.g., In re Genetically Modified Rice Litigation*, 764 F.3d 864, 873-74 (8th Cir. 2014); *In re Showa Denko K.K. L–Tryptophan Products Liability Litigation–II*, 953 F.2d 162, 164-66 (4th Cir. 1992); *Hartland v. Alaska Airlines*, 544 F.2d 992, 1001-02 (9th Cir. 1976); *In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2021 WL 2531084, at **9-13 (N.D. Cal. June 22, 2021).

[23] *E.g.*, *see* County of Harris' Response to Professor Rubenstein's R&R [1:17-MD-2804, Doc. 3350].

## VI.   CONCLUSION

These facts are undeniable:

The petitioning Counties and Cities respectfully request that their petition be granted, that the District Court be ordered to rule on Petitioners' remand motions and issue an opinion within thirty days of this Court's order, in the alternative that the Court order that the cases be remanded to the state courts wherein each was filed, or for such other timely relief as may be just.

Date: July 13, 2021                                    Respectfully Submitted,

                                                       /s/ S. Ann Saucer
                                                       S. Ann Saucer
                                                       Texas Bar No. 00797885
                                                       Louisiana Bar No. 21368
                                                       asaucer@fnlawfirm.com
                                                       Matthew R. McCarley
                                                       Texas Bar No. 24041426
                                                       mccarley@fnlawfirm.com
                                                       FEARS NACHAWATI, PLLC
                                                       5473 Blair Road
                                                       Dallas, Texas 75231
                                                       Tel. (214) 890-0711
                                                       Fax (214) 890-0712

                                                       Matthew S. Daniel
                                                       Texas Bar No. 24047575
                                                       mdaniel@lawyerworks.com
                                                       FERRER POIROT & WANSBROUGH
                                                       2603 Oak Lawn Ave. Ste. 300
                                                       Dallas, TX 75219
                                                       Tel. (214) 521-4412
                                                       Fax (866) 513-0115

                                                       *Counsel for Petitioners Ellis and Rockwall Counties, Texas, Cities of Albuquerque and Santa Fe, New Mexico*

Pia Salazar
pia@salazar-sullivanlaw.com
Patrick Sullivan
pat@salazar-sullivanlaw.com
SALAZAR, SULLIVAN & JASIONOWSKI
100 Gold Avenue SW, Suite 201
Albuquerque, New Mexico 87102
Tel. (505) 314-1414
Fax. (505) 31401419

*Counsel for Petitioners City of Albuquerque,
New Mexico; City of Santa Fe, New Mexico*

THE GALLAGHER LAW FIRM
Michael T. Gallagher
SBOT Bar No. 5395
Texas State Bar No.07586000
Pamela McLemore
Texas State Bar No. 24099711
Boyd Smith
Texas State Bar No. 18638400
SDOT Bar No.: 8203
2905 Sackett Street
Houston, Texas 77098
(713) 222-8080
(713) 222-0066 – facsimile
mike@gld-law.com

Tommy Fibich
Texas State Bar No. 06952600
SDOT Bar #: 5482
Jay Henderson
Texas State Bar No. 09424050
Sara J. Fendia
Texas State Bar No. 06898800
FIBICH, LEEBRON, COPELAND BRIGGS
1150 Bissonnet Street
Houston, Texas 77005
Telephone: (713) 751-0025
Facsimile: (713) 751-0030

Email: tfibich@fibichlaw.com

Dan Downey
Dan Downey, P.C.
SBOT Bar # 459
Texas State Bar No. 06085400
1609 Shoal Creek Blvd. #100
Austin, TEXAS 78701
Telephone: (713) 907-9700
Dandowney427@gmail.com

*Counsel for Petitioner County of Harris, Texas*

## CERTIFICATE OF COMPLIANCE

The foregoing petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because it contains 7,795 words, excluding accompanying documents required by Fed. R. App. P. 21(a)(2)(C) and items excluded from any length computation per Fed. R. App. P. 32(f). The words are counted using the word-count function on Microsoft Word 2016 software.

This petition complies with the requirements of Fed. R. App. P. 32(a) and Fed. R. App. P. 32(c)(2) because it has been prepared using Microsoft Word 2016 in Times New Roman, 14-point font.

*/s/ S. Ann Saucer*
S. Ann Saucer

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July 2021, a copy of this petition, appendix, and exhibits was filed electronically through this Court's CM/ECF system.

I further certify that service on counsel for all parties in the district court has been accomplished via notice filed through the district court's CM/ECF system attaching a copy of this filing.

*/s/ S. Ann Saucer*
S. Ann Saucer

**APPENDIX**

| Exhibit No. | Description | Location in Record | Page ID Range |
|---|---|---|---|
| 1 | Excerpts of Transcript of 1/29/20 Status Conference | 1:17-md-02804, Doc. 3113 | 482013-482022 |
| 2 | Docket Sheet, County of Harris v. Purdue Pharma L.P., et al. | 1:18-op-45677-DAP | N/A |
| 3 | Docket Sheet, Rockwall County v. CVS Health Corporation, et al. | 1:19-op-45859-DAP | N/A |
| 4 | Docket Sheet, Ellis County v. Walgreens Boots Alliance Inc., et al. | 1:19-op-45860-DAP | N/A |
| 5 | Harris County Order [non-document] denying Plaintiffs' Motion for leave to File Motion Seeking Suggestion of Remand to JPML, | 1:18-op-45677-DAP | N/A |
| 6 | Rockwall County Order [non-document] denying Plaintiffs' Motion for leave to File Motion Seeking Suggestion of Remand to the JPML, ; | 1:19-op-45859-DAP | N/A |
| 7 | Ellis County Order [non-document] denying Plaintiffs' Motion for leave to File Motion Seeking Suggestion of Remand to JPML | 1:19-op-45860-DAP | N/A |
| 8 | Albuquerque and Santa Fe Order [non-document] denying Motion for leave to File Motion for Remand Procedure or Suggestion of Remand to JPML | 1:17-md-02804 | N/A |
| 9 | Order Regarding Remands | 1:17-md-02804, Doc. 130 | 724-725 |
| 10 | Case Management Order One | 1:17-md-02804, Doc. 232 | 1084-1103 |

| 11 | Order [non-document] granting County of Harris Motion to unseal transcript | 1:17-md-02804 | N/A |
|---|---|---|---|
| 12 | Letter from Honorable Rex Burlison, Judge, Missouri 22nd Judicial Circuit Court, to Honorable Dan Polster | 1:17-md-02804, Doc. 1828-1 | 57062-57063 |
| 13 | Letter from Honorable Barry C. Dozor, Judge, Pennsylvania 32nd Judicial District Court, to Honorable Dan Polster | 1:17-md-02804, Doc. 1708-1 | 50829-50831 |
| 14 | Excerpts of Tr. of Mot. Hr'g, City of Albuquerque v. Teva Pharmaceuticals USA, Inc., et al., 1:19-CIV-01168-JB/JHR (D.N.M. Jan. 24, 2020) | 1:17-md-02804, Doc. 3396-8 | 497553-497582 |
| 15 | Excerpts of Tr. of Proceedings, City of Santa Fe vs. Purdue Pharma LP, et al., D-101-CV-2019-01809 | 1:17-md-02804, Doc. 3396-11 | 497609-497626 |
| 16 | Harris County's Original Petition | 1:18-op-45677-DAP, Doc. 1-2 | 70-108 |
| 17 | Harris County's Motion to Remand | 1:18-op-45677-DAP, Docs. 2, 3 | 238-241, 253-280 |
| 18 | Rockwall County's Motion for Leave to File and Motion Seeking Suggestion of Remand (with Exhibit 6 only) | 1:19-op-45859-DAP, Doc. 41 | 1177-1208, 1514-1525 |
| 19 | Excerpt of Rockwall County's Original Petition | 1:19-op-45859-DAP, Doc. 1-1 | 25-41 |
| 20 | Rockwall County's Motion to Remand and Memorandum in Support (with Exhibits) | 1:19-op-45859-DAP, Docs. 10, 11 | 196-201, 205-290 |
| 21 | Excerpt of Ellis County's Original Petition | 1:19-op-45860-DAP, Doc. 1-1 | 47-64 |
| 22 | Ellis County's Motion to Remand and Memorandum in Support (without exhibits) | 1:19-op-45860-DAP, Docs. 12, 13 | 336-342, 345-373 |

| 23 | Excerpt of City of Albuquerque's Complaint | 1:20-op-45136-DAP, Doc. 1-1 | 162-178 |
|---|---|---|---|
| 24 | City of Albuquerque's Motions to Remand and Expedite (without exhibits) | 1:20-op-45136-DAP, Docs. 11, 16 | 327-358, 405-420 |
| 25 | Excerpt of City of Santa Fe's Complaint | 1:20-op-45137-DAP, Doc. 1-3 | 45-62 |
| 26 | City of Santa Fe's Motions to Remand and Expedite (without exhibits) | 1:20-op-45137-DAP, Docs. 14, 19 | 340-370, 405-420 |
| 27 | Harris County's Motion for Leave to File and Motion Seeking Suggestion of Remand to the JPML (without exhibits) | 1:18-op-45677-DAP, Doc. 114 | 1169-1190 |
| 28 | Ellis County's Motion for Leave to File and Motion Seeking Suggestion of Remand to the JPML (without exhibits) | 1:19-op-45860-DAP, Doc. 39 | 643-674 |
| 29 | City of Albuquerque & Santa Fe's Motion for Leave to File and Motion Seeking Suggestion of Remand to the JPML (without exhibits) | 1:17-md-02804, Doc. 3396 | 496742-496780 |
| 30 | Proposed Order Establishing Remand Procedures (attachment to City of Albuquerque & Santa Fe's Motion) | 1:17-md-02804, Doc. 3396-15 | 497695-497700 |
| 31 | Harris County's Motion to Remand (JPML Court)(without brief in support, without exhibits, and without proof of service) | MDL 2804, Doc. 7989 | Pages 1-5 |
| 32 | Rockwall County Motion to Remand (JPML Court)(without brief in support, without exhibits, and without proof of service) | MDL 2804, Doc. 7990 | Pages 1-6 |

| 33 | Ellis County's Motion to Remand (JPML Court)(without brief in support, without exhibits, and without proof of service) | MDL 2804, Doc. 7991 | Pages 1-6 |
|---|---|---|---|
| 34 | City of Albuquerque and Santa Fe's Motion to Remand (JPML Court)(without brief in support, without exhibits, and without proof of service) | MDL 2804, Doc. 8816 | Pages 1-7 |
| 35 | Order Denying Remand for TX Counties (JPML Court)(Harris, Rockwall, and Ellis) | MDL 2804, Doc. 8582 | Pages 1-3 |
| 36 | Order Denying Remand for NM Cities (Albuquerque and Santa Fe) | MDL 2804, Doc. 9019 | Pages 1-3 |
| 37 | Excerpts of Defendants' Motion to Stay, Ellis County | 1:19-op-45860-DAP, Doc. 28 | 430, 439, 442, 445 |
| 38 | Excerpts of Defendants' Motion to Stay, City of Albuquerque | 1:20-op-45136-DAP, Doc. 23 | 480-481, 486-489, 492 |
| 39 | Excerpts of Defendants' Motion to Stay, City of Santa Fe | 1:20-op-45137-DAP, Doc. 24 | 646-648, 653-654, 656, 659-660 |
| 40 | Order Withdrawing Opinion and Order [Doc 13], Commonwealth of Kentucky et al. v. Walgreens Boots Alliance, Inc. et al. | 1:18-op-46311-DAP, Doc. 15 | 162 |
| 41 | Chart Quoting Inconsistent Statements of Removing Endo Def | MDL 2804, Doc. 8816-12 | Pages 1-7 |