# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>*Track Three Cases* | **MDL No. 2804**<br><br>**Case No. 17-md-2804**<br><br>**Judge Dan Aaron Polster** |

## JOINT SUBMISSION REGARDING JURY INSTRUCTIONS AND VERDICT FORM

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

PART I – AGREED-UPON INSTRUCTIONS............................................................... 9

PART II – PLAINTIFFS' PROPOSED MODIFICATIONS WITH PHARMACY
DEFENDANTS' RESPONSES.................................................................................... 11

PART III – PHARMACY DEFENDANTS' PROPOSED MODIFICATIONS WITH
PLAINTIFFS' RESPONSES....................................................................................... 23

## INTRODUCTION

Pursuant to this Court's order, Dkt. 3758, counsel exchanged proposed jury instructions and proposed modifications to the jury instructions and verdict form circulated by Special Master Cohen to the parties on April 27, 2021, and attached as **Exhibit A**.  Since that time, counsel have conferred and made diligent efforts to reach agreement on their respective proposals.

Although the parties have reached agreement in some areas, areas of disagreement remain.  As the Court instructed, these areas of agreement and disagreement are presented for the Court's ruling in three sections: Part I contains the parties' agreed-upon instructions; Part II contains Plaintiffs' proposed modifications to the Court's verdict form (Plaintiffs do not seek any modification to the Court's circulated jury instructions), along with Defendants' objections; and Part III contains Defendants' proposed modifications to the Court's instructions and verdict form, along with Plaintiffs' objections.  The parties reserve their right to revise their proposed instructions and verdict forms, submit additional instructions at the appropriate time, or withdraw instructions due to developments at trial, legal rulings by the Court, or for any other reason.

To assist the Court in better understanding the parties' disagreements, and to preserve each side's objections and rights, Plaintiffs and Defendants each set out a short statement below.

## PLAINTIFFS' STATEMENT

### Jury Instructions

Plaintiffs find the Court's April 27, 2021 proposed jury instructions satisfactory and therefore are not proposing any modifications to them. In several instances, however, Plaintiffs have offered to Defendants some alternate language to the Court's proposed instructions to address some of Defendants' concerns. This alternate language is set forth in Plaintiffs' objections to the Defendants' proposed changes to the jury instructions in Part 3 below. Just to be absolutely clear, however, Plaintiffs are not advocating for these changes in lieu of the

1

Court's draft language, which Plaintiffs find acceptable. Plaintiffs offered this alternate language in the spirit of compromise, but it did not prove acceptable to Defendants.

**Verdict Form**

By contrast, Plaintiffs do have a serious concern with the Court's April 27, 2021 draft verdict form. In Part 2, *infra,* Plaintiffs propose to delete verdict form questions 3, 4, and 5 from the Court's proposed verdict form and, in one case, to replace the stricken conduct question with a revised one. In Plaintiffs' view, each of the three stricken questions inappropriately demands jury unanimity on a subsidiary factual question that is not an essential element of Plaintiffs' public nuisance cause of action, and therefore each is inappropriate as currently written.

The general rule of jury unanimity is that "[t]he unanimity requirement does not impose a rule that all twelve jurors in a federal criminal [or civil] case must agree on every last detail." *United States v. Lee*, 317 F.3d 26, 36 (1st Cir. 2003). As Justice Blackmun once explained: "Juries are typically called upon to render unanimous verdicts on the ultimate issues of a given case. But it is understood that different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *McKoy v. N. Carolina,* 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring); *see also Richardson v. U.S.,* 526 U.S. 813, 817-18 (1999) ("a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime.") (citations omitted); *Schad v. Arizona,* 501 U.S. 624, 630 (1991) ("Petitioner's jury was unanimous in deciding that the State had proved what, under state law, it had to prove: that petitioner murdered *either* with premeditation *or* in the course of committing a

robbery.") (emphasis added). The Sixth Circuit has said the same thing: "a jury need not be unanimous as to which factual predicate or specification supports the defendant's guilt." *U.S. v. Duncan,* 850 F.2d 1104, 1111 (6th Cir. 1988). "It is thus apparent that, to resolve this dilemma, an inquiring court must distinguish the elements of a charged offense from the brute facts that constitute those elements, mindful that the unanimity requirement attaches only to the former and not to the latter." *Lee,* 317 F.3d at 36 (citing *Richardson v. U.S.,* 526 U.S. at 817-18).

Questions 3, 4, and 5, in the Court's proposed verdict form deal with precisely such "preliminary factual issues," rather than the ultimate questions at issue; therefore, jury unanimity should not be required on any of these issues, contrary to the verdict form's implication. (Nevertheless, because actionable conduct *is* an essential element of Plaintiffs' public nuisance cause of action, Plaintiffs have offered the Court replacement language that does not suffer from the same infirmity.)

**Defendants' Objections to Jury Instructions**

As should be clear from Plaintiffs' acceptance of the Court's proposed jury instructions, Plaintiffs strongly disagree with Defendants' objections to those instructions. The Court's proposed instructions are consistent with both Ohio law and the Court's prior rulings. Nevertheless, despite the Court's instructions, Defendants persist in attempting to relitigate issues that the Court has already resolved against them.

Plaintiffs set forth their disagreement with Defendants' proposed modifications to the jury instructions in their response in Part 3 below. Rather than simply reiterate those critiques here, suffice it to say that Plaintiffs believe that the Court's proposed instructions are fully consistent with Ohio law and therefore oppose each and every one of Defendants' proposed changes for the reasons there set forth.

Moreover, every proposed modification Defendants suggest is one they have proposed before.  Defendants' arguments concerning the Court's proposed instructions and verdict form likewise mimic those they have made in the previous "proposing, drafting, and trading versions of Ohio public nuisance jury instructions."  Dkt. 3758 at 6.  As such, they violate the Court's Order admonishing against adding to the "enormous time" already spent by attempting to revive previously-rejected arguments.  Nevertheless, Plaintiffs have spent time to respond below, and also incorporate herein by reference their previous filings and correspondence concerning Ohio public nuisance jury instructions.  *See* Dkt. 3449 (joint submission); Plf's Response to April 21, 2020 Request for Input (April 29, 2020) (*via* letter from P. Weinberger), filed at Dkt. 3449-1 at 28-34.[1]

## DEFENDANTS' STATEMENT

The Pharmacy Defendants[2] are mindful that the Court has ordered them not to submit materials that are repetitive or that contravene the Court's earlier decisions on jury instructions. To that end, Pharmacy Defendants incorporate by reference all requested jury instructions and all objections to Plaintiffs' or the Court's proposed jury instructions that were submitted previously in Track 1B and Track 3.[3]  Certain of those instructions must be modified due to the differing

---

[1] Exhibit B, *infra*, submitted by Defendants, is a revised version of Defendants' prior objections to the Court's proposed jury instructions in CT1B and CT3, updated to reflect the different parties and issues in the present action. Plaintiffs opposed the inclusion of this exhibit, which is contrary to the Court's instructions. Plaintiffs have not separately responded to Exhibit B, as it is already fully addressed by Plaintiffs' prior submissions incorporated by reference.

[2] The Pharmacy Defendants are CVS Pharmacy, Inc., CVS Rx Services, Inc., CVS TN Distribution, L.L.C., Ohio CVS Stores, L.L.C., CVS Indiana, L.L.C., HBC Service Co. (an operating division of Giant Eagle, Inc.), Rite Aid Hdqtrs. Corp., Rite Aid of Ohio, Inc., Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center, Walgreens Boots Alliance, Inc., Walgreen Co., Walgreen Eastern Co., Inc., and Walmart Inc.

[3] *See, e.g.*, Dkt. 3449 at Part I (Agreed Instructions); *id.* at Part II (Pharmacy Defendants' Objections to Plaintiffs' Proposed Instructions); *id.* at Part III (Pharmacy Defendants' Proposed Instructions and Verdict Form); Dkt. 3449-1 (Exhibit A - Pharmacy Defendants' Objections to

claims and defendants.  Defendants thus attach as **Exhibit B** their proposed instructions for Track 3, with redlines indicating where the instructions differ from those proposed in Track 1B. Pharmacy Defendants expressly reserve the right to withdraw, amend, modify or add to these proposed instructions and verdict form at any time before the close of trial.

The Court has informed the parties that the instructions and verdict form emailed to the parties on April 27, 2021, *see* Exhibit A, are the jury instructions and verdict form the Court intends to use at trial, *see* Dkt. 3758 at 6.  Although Defendants maintain their objections to any deviation from their own proposed instructions and verdict form, *see* Exhibit B, and object to many aspects of the Court's proposed instructions, *see, e.g.*, Dkt. 3449-1, they submit only a limited set of proposed modifications in Part III of this Joint Submission.  These modifications address what Defendants believe to be some of the critical flaws in the Court's proposed instructions and verdict form.  In particular, Defendants ask the Court to consider the following key flaws, which they believe create high risk of reversible error:

*First*, the "Applicable Law – Public Nuisance – Introduction" instruction and Question 1 of the verdict form confusingly define the alleged nuisance as one of "oversupply of prescription opioids, and diversion of those opioids into the illicit market outside of appropriate medical channels."  Exhibit A at ECF Page Nos. 22, 40.  The reference to "oversupply" could confuse or mislead the jury.  As the verdict form and instructions recognize, oversupply of legal prescription opioids does not itself interfere with public health and safety but rather must be paired with a finding that those opioids were diverted outside legitimate medical channels and into the illicit

_____

May 28, 2020 Draft Instructions Circulated by the Court); Dkt. 3550 (Pharmacy Defendants' Response to Special Master Cohen's Oct. 26, 2020 Request Regarding Statutes in Jury Instructions); Dkt. 3616 (Pharmacy Defendants' Objections and Responses to Plaintiffs' Instructions Proposed in Response to Special Master Cohen's Oct. 26, 2020 Request).

market.  As the verdict form and instructions are currently drafted, however, jurors could easily be confused and believe that they can find a Pharmacy Defendant liable merely because it was a substantial factor in an "oversupply" of prescription opioids—regardless of any wrongful conduct or any contribution to actual diversion.  To avoid this error, the definition of nuisance should eliminate references to "oversupply" and instead focus on whether each Pharmacy Defendant was the cause of "diversion" in the Track 3 counties.

*Second*, the Intentional Conduct instruction erroneously informs the jury that "[i]f a person learns that circumstances resulting from their conduct interfere with public health or safety, and the person continues that conduct, then the subsequent conduct is intentional." Exhibit B at __.  The law requires a finding of knowledge or substantial certainty about the future consequences of chosen conduct. however.  RESTATEMENT (SECOND) OF TORTS § 825. While a person's continued conduct after learning about past consequences could, in some circumstances, support an *inference* of actual knowledge or substantial certainty going forward, it is not itself intentional conduct.  The current language creates an irrebuttable (and incorrect) presumption of intent, regardless of changes in circumstances.  The language Pharmacy Defendants propose to delete is also unnecessary.  For *all* conduct, the jury must ultimately determine what a Defendant knew (or was substantially certain) would happen as a result of that conduct.[4]

*Third,* the "Unlawful Conduct" instruction fails to define the specific unlawful conduct upon which the jury is may base its verdict.  *See City of Hamilton v. Dilley*, 120 Ohio St. 127, 131 (1920).  It also improperly adds a heightened requirement of "express authorization" found

---

[4] Should the Court provide a "subsequent conduct" instruction over Pharmacy Defendants' objection, Plaintiffs' alternative proposed language—while still incorrect and unnecessary for the reasons stated above—is an improvement over the deleted language.

6

nowhere in the law.  Conduct can be incidental to (or even necessary for) compliance with the law without being *expressly* authorized.  Where the conduct at issue is governed by a comprehensive regulatory scheme, all the law requires is compliance.  *See* Restatement (Second) of Torts § 821B, cmt. f; OJI § 621.09.  Moreover, countless activities are not "authorized" by any statute, ordinance, or regulation and yet are perfectly lawful because they are not forbidden.  Authorization is a safe harbor against a public nuisance claim based on unlawful conduct; a lack of authorization is not itself proof of unlawful conduct.

*Fourth*, the "Causation" instruction is erroneous and in direct conflict with relevant U.S. Supreme Court and Sixth Circuit precedent.  The instruction entirely omits the but-for causation requirement, which requires Plaintiffs to prove that the injury would not have occurred without any given Defendant's conduct.  *See, e.g., Comcast Corp. v. Nat. Ass'n of African American Owned Media, Inc*. 140 S. Ct. 1009, 1014 (2020); *see also* Dkt. 2204 at 33 (plaintiffs conceding that Ohio law requires proof of both a cause-in-fact and legal/proximate cause).  As for the proximate causation requirement, the instruction fails to instruct that there must be a direct, not remote, causal relation between a Defendant's conduct and the nuisance.  *See Cincinnati v. Beretta USA Corp.*, 95 Oh. St. 3d 416, 426-27 (2002); *Cincinnati v. Deutsche Bank National Trust Co.,* 863, F.3d 474, 480 (6th Cir. 2017).  The instruction also does not inform the jury that intervening causes can break the causal chain.  *See* OJI 405.05(4).  Finally, the instruction fails to explain that the determination of "substantial factor" must be based on considerations of the number and effect of other contributing causes, the continuous nature of Defendants' conduct, and whether the action of other actors is necessary to create the harm and the lapse of time.  *See* Restatement (Second) of Torts § 431, cmt. a; *id.* § 433.

*Fifth*, the Significant and Unreasonable instruction wrongfully focuses only on the harms caused by the alleged conduct, without requiring the jury to balance the gravity of the harm against the utility of the conduct as set forth in Ohio's standard jury instructions.  *See* OJI 621.05.  It thus does not adequately explain to the jury what sort of actions are "greater harm than the public should bear, given all the circumstances."  As a matter of Ohio law, the jury must make that determination in light of the nature and purpose of the Defendant's conduct, its value to the community, the nature, extent, and frequency of the alleged interference with the public right, and whether the interference could be avoided or lessened without undue hardship to the Defendant.  *Id.*; *see also* RESTATEMENT (SECOND) OF TORTS § 822.

Defendants respectfully request that these objections, as laid out in greater detail in Part III—and along with the objections previously noted in other filings—be addressed in the final instructions delivered to the jury.  In particular, Defendants request that the Court adopt the redlines to its proposed instructions and verdict form in Part III.  They further request that the Court consider and adopt their requested instructions in Exhibit B.

## PART I – AGREED-UPON INSTRUCTIONS

The parties agree to the inclusion of the following instructions as circulated by the Court on April 27, 2021 and attached as Exhibit A, as relevant and appropriate for use in this case:

1. Jurors' Duties

2. Burden of Proof – Preponderance of the Evidence

3. Evidence Defined

4. Consideration of Evidence

5. Direct and Circumstantial Evidence

6. Inferences from Evidence

7. Credibility of Witnesses

8. Opinion Testimony

9. Number of Witnesses

10. Charts and Summaries

11. Admissions and Interrogatory Answers

12. Stipulations of Fact

13. Lawyers' Objections

14. Introduction (Case-Specific Instructions)

15. Corporate Defendants (Case-Specific Instructions)

16. Public Nuisance—Conclusion (Case-Specific Instructions)

17. Introduction (Deliberations)

18. Juror Notes (Deliberations)

19. Experiments, Research Investigation and Outside Communications—Admonition (Deliberations)

20. Unanimous Verdict (Deliberations)

9

21. Duty to Deliberate (Deliberations)

22. Interrogatories and Verdict Forms (Deliberations)

23. Juror Questions (Deliberations)

24. The Court Has No Opinion (Deliberations)

**PART II – PLAINTIFFS' PROPOSED MODIFICATIONS[5]**
**WITH PHARMACY DEFENDANTS' RESPONSES**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION** | ) | **MDL No. 2804** |
| **OPIATE LITIGATION** | ) | |
| | ) | **CASE NO. 1:17-MD-2804** |
| **THIS DOCUMENT RELATES TO:** | ) | |
| | ) | **JUDGE DAN AARON POLSTER** |
| *Track Three Cases:* | ) | |
| | ) | |
| *County of Lake, Ohio v.* | ) | |
| *Walgreen Co., et al.,* | ) | |
| *Case No. 18-OP-45032* | ) | |

# VERDICT FORM
# Lake County

---

[5] Plaintiffs are satisfied with the draft jury instructions proposed by the Court and therefore have not submitted any proposed changes to them. Nevertheless, in response to some of the concerns with the draft instructions raised by Defendants, Plaintiffs have in a few instances suggested alternative language that would be acceptable to them. These proposals may be found in Plaintiff's responses and objectives to Defendants' proposed instructions, in Part III below.

**FOR ALL QUESTIONS IN THIS VERDICT FORM,**

**PLEASE CIRCLE YOUR ANSWERS IN INK**.

1.      Did **Lake County** prove, by the greater weight of the evidence, that oversupply of legal prescription opioids, and diversion of those opioids into the illicit market outside of appropriate medical channels, is a public nuisance in **Lake County**?

YES                NO

**If you answered "YES" to Question 1, please go to Question 2.**

**If you answered "NO" to Question 1, then skip Questions 2 ~~through 5~~ and 3, and go directly to Question ~~6~~ 4.**

12

2.  Did Lake County prove, by the greater weight of the evidence, that any of the following

Defendants proximately caused the public nuisance in **Lake County**?

| | | |
|---|---|---|
| **CVS Indiana, L.L.C.** | YES | NO |
| **CVS Rx Services, Inc.** | YES | NO |
| **Giant Eagle/HBC Service Co.** | YES | NO |
| **Rite Aid of Maryland** | YES | NO |
| **Walgreen Co.** | YES | NO |
| **Walmart Inc.** | YES | NO |

**If you answered "YES" at least once in Question 2, please go to Question 3.**

**If your answers were <u>all</u> "NO" to Question 2, then skip Questions 3 ~~through 5~~, and go**

**directly to Question 6 <u>4</u>.**

3. Do you find the circumstances that constitute the public nuisance in **Lake County** include: (1) increased abuse of diverted **prescription** opioids, and/or (2) increased abuse of illicit, **non prescription** opioids (such as heroin or illicit fentanyl)? You *must* circle "YES" at least once.

Increased Abuse of Diverted Prescription Opioids          YES          NO

Increased Abuse of Illicit, Non prescription Opioids          YES          NO

**Please go to Question 4.**

4 **3**.     For each Defendant where you answered "YES" in Question 2, please answer the following additional questions. If you answered "NO" for a Defendant in Question 2, you ***must*** circle "NOT APPLICABLE" for that same Defendant in this Question 4. If you answered "YES" for a Defendant in Question 2, you ***must*** circle "Intentional Conduct," "Unlawful Conduct," or both, for that same Defendant in this Question 4.

a.     Did **CVS Indiana, L.L.C.** proximately cause the public nuisance by engaging in either intentional conduct or unlawful conduct or both:

   Intentional Conduct YES          Unlawful Conduct NO          NOT APPLICABLE

b.     Did **CVS Rx Services, Inc.** proximately cause the public nuisance by engaging in either intentional conduct or unlawful conduct or both:

   Intentional Conduct YES          Unlawful Conduct NO          NOT APPLICABLE

c.     Did **Giant Eagle/HBC Service Co.** proximately cause the public nuisance by engaging in either intentional conduct or unlawful conduct or both:

   Intentional Conduct YES          Unlawful Conduct NO          NOT APPLICABLE

d.     Did **Rite Aid of Maryland** proximately cause the public nuisance by engaging in either intentional conduct or unlawful conduct or both:

   Intentional Conduct YES          Unlawful Conduct NO          NOT APPLICABLE

15

e.      Did **Walgreen Co.** proximately cause the public nuisance by engaging in either intentional conduct or unlawful conduct or both:

~~Intentional Conduct~~ YES            ~~Unlawful Conduct~~ NO            NOT APPLICABLE

f.      Did **Walmart Inc.** proximately cause the public nuisance by engaging in either intentional conduct or unlawful conduct or both:

~~Intentional Conduct~~ YES            ~~Unlawful Conduct~~ NO            NOT APPLICABLE

**Please go to Question ~~5~~ 4.**

5. For each Defendant where you answered "YES" in Question 2, please answer the following additional questions. If you answered "NO" for a Defendant in Question 2, you *must* circle "NOT APPLICABLE" for that same Defendant in this Question 5. If you answered "YES" for a Defendant in Question 2, you *must* circle "Distribution Practices," "Dispensing Practices," or both, for that same Defendant in this Question 5.

a. Did **CVS Indiana, L.L.C.** proximately cause the public nuisance through its:

Distribution Practices        Dispensing Practices        NOT APPLICABLE

b. Did **CVS Rx Services, Inc.** proximately cause the public nuisance through its:

Distribution Practices        Dispensing Practices        NOT APPLICABLE

c. Did **Giant Eagle/HBC Service Co.** proximately cause the public nuisance through its:

Distribution Practices        Dispensing Practices        NOT APPLICABLE

d. Did **Rite Aid of Maryland** proximately cause the public nuisance through its:

Distribution Practices        Dispensing Practices        NOT APPLICABLE

e. Did **Walgreen Co.** proximately cause the public nuisance through its:

Distribution Practices        Dispensing Practices        NOT APPLICABLE

f. Did **Walmart Inc.** proximately cause the public nuisance through its:

Distribution Practices        Dispensing Practices        NOT APPLICABLE

**Please go to Question 6.**

6 4.    Please sign and date the verdict form.

_____      _____

_____      _____

_____      _____

_____      _____

_____      _____

_____      foreperson

_____
Date


***Plaintiffs' Explanation for Proposed Changes to the Court's Verdict Form:***

Plaintiffs propose to delete verdict form questions 3, 4, and 5, from the Court's proposed verdict form and, in one case, to replace the stricken conduct question with a revised one. In Plaintiffs' view, each of the three stricken questions inappropriately demands jury unanimity on a subsidiary factual question that is not an essential element of Plaintiffs' public nuisance cause of action, and therefore each is inappropriate as currently written.

The general rule of jury unanimity is that "[t]he unanimity requirement does not impose a rule that all twelve jurors in a federal criminal [or civil] case must agree on every last detail." *United States v. Lee*, 317 F.3d 26, 36 (1st Cir. 2003). As Justice Blackmun once explained: "Juries are typically called upon to render unanimous verdicts on the ultimate issues of a given case. But it is understood that different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *McKoy v. N. Carolina,* 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (Blackmun, J.,

18

concurring); *see also Richardson v. U.S.,* 526 U.S. 813, 817-18 (1999) ("a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime.") (citations omitted); *Schad v. Arizona,* 501 U.S. 624, 630 (1991) ("Petitioner's jury was unanimous in deciding that the State had proved what, under state law, it had to prove: that petitioner murdered *either* with premeditation *or* in the course of committing a robbery.") (emphasis added). The Sixth Circuit has said the same thing: "a jury need not be unanimous as to which factual predicate or specification supports the defendant's guilt. . . . If the charge is assault and battery, and the evidence is that the defendant hit the victim in the face or on the shoulder, few would insist that the jurors agree on more than the fact of the blow, not on its precise location." *U.S. v. Duncan,* 850 F.2d 1104, 1111 (6th Cir. 1988). "It is thus apparent that, to resolve this dilemma, an inquiring court must distinguish the elements of a charged offense from the brute facts that constitute those elements, mindful that the unanimity requirement attaches only to the former and not to the latter." *Lee,* 317 F.3d at 36 (citing *Richardson,* 526 U.S. at 817-18).

Questions 3, 4, and 5, in the Court's proposed verdict form deal with precisely such "preliminary factual issues," rather than the ultimate questions at issue: was the public nuisance caused by "increased abuse of diverted prescription opioids" and/or by "increased abuse of illicit, non-prescription opioids?"; was the public nuisance caused by a particular defendant's "distribution practices," "dispensing practices," or both?; was defendants' conduct that caused the nuisance "intentional," "unlawful," or both? None of these questions ask for the jury's view on an essential element of the public nuisance cause of action; therefore, jury unanimity should not be required on any of these issues, contrary to the verdict form's implication.

Nor, contrary to Defendants' argument below, do the answers to these questions have much, if anything, to do with the scope of any abatement remedy. Plaintiffs seek to abate the *condition* constituting the public nuisance that Defendants' conduct has caused. For purposes of remedy, it does not matter whether that condition was caused by Defendants' intentional conduct or their unlawful conduct (or both). Nor does it matter whether it was their distribution practices or their dispensing practices (or both) that created that condition.

Plaintiffs therefore object to the inclusion of any of these three questions on the verdict form. (To the extent that the purpose of these questions is to probe the jury's thinking in this bellwether case to provide guidance to the parties for potential settlement purposes or, as Defendants suggest, to guide the Court in shaping an appropriate abatement remedy, Plaintiffs would not object to the Court polling the jurors on these questions *after* the verdict has been rendered.) Plaintiffs acknowledge, however, that the jury may—indeed, must—appropriately be asked to render its judgment on whether the public nuisance was caused by a defendant's *actionable* conduct (whether intentional or unlawful), and therefore would not object to an appropriately reframed question (question 4 in the Court's proposal, question 3 above) that allows the jury to answer yes to the question of actionable conduct if each individual juror finds that the defendant's conduct was intentional, unlawful, or both. Plaintiffs include exemplary language for such a question above.

***Pharmacy Defendants' Response:***

Pharmacy Defendants disagree with Plaintiffs about whether the questions included in the Court's proposed verdict form are properly characterized as "preliminary factual issues" or "different pieces of evidence" rather than ultimate questions.  Because each question involves the jury's application of different legal standards to the evidence, they are not analogous to whether

20

a jury is unanimous about whether it finds an assault based on a blow to the face or a blow to the

shoulder.  For example, "unlawful conduct" and "intentional conduct" are different elements of

an absolute public nuisance claim.  The Court has proposed different instructions for each of

those elements.  The jury's finding whether Plaintiffs have proved either or both theories is a

question of ultimate fact.  Likewise, whether the particular unlawful conduct found is a violation

of statutes and regulations governing distribution or statutes and regulations governing

dispensing are different ultimate questions governed by different legal standards.  Different

causation standards likewise apply to evaluating causation of a nuisance arising from the

diversion of prescription opioids dispensed or distributed by Pharmacy Defendants versus a

nuisance arising from the abuse of illicit non-prescription drugs.

> The Court does not need to resolve the jury unanimity standard, however, to include the

questions in the verdict form under Federal Rule of Civil Procedure 49.  Including such questions

facilitates appellate review of the verdict and judgment and can avoid the need to retry a case due

to an error connected to a theory of liability if the answers make clear that the jury did not

impose liability on that theory.  Pharmacy Defendants have separate challenges to each one of

the theories of public nuisance raised by Plaintiffs.  If only a general verdict were used, without

requiring unanimous jury answers on specific theories of liability, then any deficiency in any

theory of liability would require a new trial.  *See, e.g.*, *Tire Eng'g & Distribution, LLC v.*

*Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 313 (4th Cir. 2012) ("[W]hen a jury issues a

general verdict on multiple theories of liability and one of those theories is overturned on appeal,

the entire verdict falls.").  Pharmacy Defendants have no wish to try this case a second time, and

specificity in the jury's findings could avoid an unnecessary new trial.

Moreover, in the event the jury were to find liability, this Court could not fashion an appropriate remedy without knowing the nature of the conduct that must be abated.  The remedy for nuisance based on the diversion of prescription drugs would be different from one based on the abuse of street drugs.  Likewise, the abatement of a nuisance based on distribution would be very different from one based on dispensing.  The Court has broad discretion to pose questions to the jury under Rule 49(b) for purposes of avoiding a needless retrial and fashioning a remedy proportionate to the nuisance should the jury find liability.

**PART III – PHARMACY DEFENDANTS' PROPOSED MODIFICATIONS
WITH PLAINTIFFS' RESPONSES**

**CASE-SPECIFIC INSTRUCTIONS**

**<u>Applicable Law – Public Nuisance – Introduction</u>**

I will now instruct you on the elements of Plaintiffs' public nuisance claims.

Each Plaintiff alleges that each Defendant distributed or dispensed opioid products in a manner that endangered public health or safety, thereby creating a public nuisance. Specifically, each Plaintiff claims that each Defendant substantially contributed ~~to an oversupply of legal prescription opioids, and~~ to diversion of those opioids into the illicit market outside of appropriate medical channels, thereby endangering public health or safety.

Let me define for you the legal term "***public nuisance***." A "public nuisance" is an unreasonable interference with a right held by the public in common. A public nuisance includes an unreasonable interference with public health or public safety.

A right common to the general public is a right or an interest that belongs to the community-at-large. It is a right that is collective in nature. A public right is different from an individual right that everyone has, like the right not to be assaulted or defrauded. For a Defendant to be held liable for creating a public nuisance, a Plaintiff must show, by the greater weight of the evidence, that the Defendant did one or both of the following two things:

1.      The Defendant engaged in ***intentional conduct*** that caused a significant interference with a public right to health or safety; or

2.      The Defendant engaged in ***unlawful conduct*** that caused a significant interference with a public right to health or safety.

Please remember that you are being asked to determine only whether one or more of the Defendants created a public nuisance. You are not being asked to determine whether there

23

should be a remedy for this claim, or what that remedy should be. If you find that one or more of the Defendants created a public nuisance, the Court will determine the remedy.

***Pharmacy Defendants' Modifications:***

Pharmacy Defendants' modification to the second paragraph is necessary because the definition of the alleged nuisance is confusing and potentially misleading. As the Court's verdict form and instructions recognize, oversupply of legal prescription opioids does not itself interfere with public health and safety but rather must be paired with a finding that those opioids were diverted into the illicit market. But as the verdict form and instructions are currently drafted, the jurors could easily be confused and believe that they can find a Pharmacy Defendant liable merely because that Defendant was a substantial factor in an "oversupply" of prescription opioids—regardless of any wrongful conduct or contribution to actual diversion. To avoid this error, the definition of nuisance should eliminate references to "oversupply" and instead focus on whether each Pharmacy Defendant was the cause of "diversion" in the Track 3 counties.[6]

***Plaintiffs' Response:***

As written, the sentence that defendants quote is clear and non-misleading. It is especially so in context. The preceding line in the Introduction instruction states that the plaintiffs are alleging Defendants distributed and dispensed opioids in a way that endangered public health and safety, creating a public nuisance. The line defendants reference then follows, stating that, more specifically, the plaintiffs allege defendants substantially contributed to an

---

[6] Pharmacy Defendants submit that the nuisance must be defined by the conduct that allegedly caused deleterious effects in the Plaintiff counties, not by the effects themselves. *See* Dkt. 3449-1 at 3 (citing *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013-Ohio-1035, ¶ 9 (8th Dist.)). At minimum, however, the Court's instructions should focus the jury on whether diversion of prescription opioids away from legitimate medical channels and into an illicit market created an unreasonable interference with the right to public health or safety in the Plaintiff counties, and if so, whether any given Pharmacy Defendant's conduct was a substantial factor in such diversion.

24

oversupply of opioids "and" to diversion.  Thus, it says exactly what defendants argue it should say.  In any event, and for avoidance of doubt, it would have been entirely permissible for the court to limit that second sentence to stating only that plaintiffs allege, more specifically, that defendants oversupplied opioids.  In the context of both that specific paragraph and the overall instructions, it would remain clear that the jury still needs to find that defendants' conduct endangered public health or safety.

Plaintiffs noted that the Court's May 28, 2020 instructions omit the line that Defendants critique entirely.  While Plaintiffs disagree with Defendants' position, they advised that they would not oppose simply removing the line if that would moot any dispute.  Plaintiffs do, however, oppose Defendants' proposed changes.  In that regard, Plaintiffs note that Defendants' proposal runs contrary to the Court's Track Three Civil Jury Trial Order, Dkt. 3758.  Therein, the Court admonished that, given the "enormous amounts" of time already spent exchanging drafts and arguments concerning Ohio public nuisance jury instructions, the parties are to refrain from attempting to revive arguments the Court has considered and rejected.  Dkt. 3758 at 6-7 (also assuring parties' previously-raised objections will be preserved).  Defendants' proposed modification contravenes both this Order and the Court's prior ruling in denying a summary-judgment motion concerning public nuisance.  *See* Opinion and Order on the Motion of Plaintiffs Cuyahoga and Summit Counties for Partial Summary Adjudication of their Equitable Claims for Abatement of an Absolute Public Nuisance, *In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804, Dkt. #1890, 2019 WL 4194272, at *1 (N.D. Ohio Sept. 4, 2019) (describing the "harm and conduct elements" of a public nuisance claim as "interrelated" and "intertwined").

25

**CASE-SPECIFIC INSTRUCTIONS**

**<u>Public Nuisance – Intentional Conduct</u>**

Now, let me define some of the terms I just used. One of those terms is "***intentional conduct***."

"Intentional conduct" occurs when a person acts with the purpose to produce a specific result. A person intends an act when that act is done purposely, not accidentally. The intent with which a person acts is known only to that person. There are two ways to prove a person's intentional conduct. One, when a person expresses their intent to others. Or two, when a person somehow indicates their intent by their conduct.

For you to find that a person engaged in intentional conduct, it is enough that the person intended to act and knew, or was substantially certain, that the ~~circumstances resulting from that~~ act <u>would cause the</u> interfere<u>nce</u> with public health or public safety. It is not necessary for you to find that the person intended to cause a public nuisance.

~~If a person learns that circumstances resulting from their conduct interfere with public health or public safety, and the person continues that conduct, then the subsequent conduct is intentional.~~

*Pharmacy Defendants' Modifications:*

Pharmacy Defendants' modifications to the third paragraph are necessary to conform to RESTATEMENT (SECOND) OF TORTS § 825, which states that "an interference with the public right, is intentional if the actor . . . knows that ***it*** [*i.e.*, the interference with the public right] is resulting or is substantially certain to result from his conduct" (emphasis added).  Contrary to Plaintiffs' objection, this proposed modification does not require the jury to find that a person intended to cause a "public nuisance."  As the next line states, "[i]t is not necessary for you to find that the

26

person intended to cause a public nuisance."  The Restatement does not require knowledge of *law* but knowledge of *fact*.  The person must know, or be substantially certain, of the *fact* that his act is interfering with the public right at issue—here, public health and public safety.

Deleting the fourth paragraph is necessary because the law requires a finding of knowledge or substantial certainty about the future consequences of chosen conduct.  *Id.*  While a person's continued conduct after learning about past consequences could, in some circumstances, support an inference of actual knowledge or substantial certainty going forward, it is not itself intentional conduct.  The deleted language creates an irrebuttable (and incorrect) presumption of intent, regardless of changes in circumstances.  The deleted language is also unnecessary.  For *all* conduct, the jury must ultimately determine what the Defendant knew (or was substantially certain) would happen as a result of that conduct.

Should the Court provide a "subsequent conduct" instruction over Pharmacy Defendants' objection, Plaintiffs' proposed language spanning pages 29 and 30—while incorrect and unnecessary—is an improvement over the deleted language. Should the Court adopt Plaintiffs' formulation, it should also inform the jury that their determination of intent must be based on facts known to particular individuals at the time they acted, not based on hindsight or aggregated knowledge, and that they should consider any changed circumstances between the prior and current conduct.[7]

_____

[7] Plaintiffs admit that the final paragraph of their response, which proposes a modification to the Court's instruction that is entirely unrelated to the modifications identified by Defendants, is not "directly responsive" and was identified "late in the review process."  *Infra* at 30.  Plaintiffs' proposed change is unnecessary and departs from the straightforward language of the Ohio pattern jury instruction.  *See* OJI 621.05.  Moreover, it directly contradicts Plaintiffs' repeated representations to the Court—including in this very filing—that they are proposing no changes to the Court's jury instructions.  *See, e.g.*, *supra* at 1 ("Plaintiffs do not seek any modification to the Court's circulated jury instructions"); *id.* ("Plaintiffs find the Court's April 27, 2021 proposed jury instructions satisfactory and therefore are not proposing any modifications to them."); *supra*

***Plaintiffs' Response:***

Both of Defendants' proposed modifications ignore the Order admonishing against attempts to revise previously-rejected arguments and proposals.

Defendants' first proposed modification would create the false impression that defendants had to know that their conduct would cause, or was substantially likely to cause, the public nuisance, which is directly contrary to the Restatement, and case law, and this Court's prior holding, all of which establish that Defendants have engaged in intentional conduct if they intended to bring about the conditions that constitute a nuisance, regardless of whether they knew that those conditions would amount to a public nuisance. Contrary to Defendants' characterization, their revision is not fact-based, but geared to omit the "circumstances" that constitute the unreasonable interference with public health and safety (i.e. the nuisance). Plaintiffs previously proposed language to address any concerns that they had, and the Court has addressed them as well.  *See, e.g.*, Opinion and Order Denying Manufacturer Defendants' Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims, *In re Nat'l Prescription Opiate Litig.*, 406 F. Supp. 3d 672, 675 (N.D. Ohio Sept. 9, 2019) (explaining that: "Intentional, in this context [of absolute public nuisance], means not that a wrong or the existence  of a nuisance was intended but that the creator of it intended to bring about the conditions which are in fact found to be a nuisance," and that, "[s]tated otherwise, 'Where the harm and resulting damage are the necessary consequences of just what the defendant is doing, or is incident to the activity itself or the manner in which it is conducted, *** the rule of absolute liability applies'")

---

at 11 n.5 ("Plaintiffs are satisfied with the draft jury instructions proposed by the Court and therefore have not submitted any proposed changes to them.").

(quoting *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859 at 863 (N.D. Ohio 2017) and *Taylor v. City of Cincinnati*, 55 N.E.2d 724, 727 (Ohio 1944)).

Although Plaintiffs disagree with Defendants' arguments, in another attempt to moot any dispute, Plaintiffs also note alternative language below (which language was part of the Track CT1B Joint Submission, Dkt. 3449.

> For you to find that a person engaged in intentional conduct, it is enough that the person intended to act and knew ~~or should have known~~ that the conditions that constitute an interference with public health or public safety would result, or ~~was~~ were substantially certain to result, from their act(s).  It is not necessary for you to find that the person intended that the act would cause ~~the~~ a public nuisance.

Again, Plaintiffs disagree with Defendants' position concerning whether any changes should be made, and offer this suggestion only in the spirit of compromise. Plaintiffs recognize that "[a] trial court has no obligation to give jury instructions in the language proposed by the parties," but rather "has the discretion to use its own language to communicate the same legal principles." *Schnipke v. Safe-Turf Installation Group, L.L.C.*, 2010-Ohio-4173, ¶ 36, 190 Ohio App. 3d 89, 101, 940 N.E.2d 993, 1002.

Defendants' second modification is likewise both problematic and legally incorrect.  The Court's language is on all fours with the same Restatement section Defendants say that this instruction should track.  Restatement Section 825 on "Intentional Invasion," states that, in the case of continuing or recurrent invasions and conduct:

> In these cases the first invasion resulting from the actor's conduct may be either intentional or unintentional; but when the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional.

Restatement (Second) of Torts § 825 cmt. d.  Although Plaintiffs believe the current language is clear and correct, they would not oppose the following modification if Defendants would prefer: "Whether or not a person's conduct was intentional when first engaged in, if the person continues the conduct after he knows that an interference with public health or public safety is

resulting from it, that subsequent conduct is intentional."  Defendants, however, have advised that this language also would not meet with their approval.

Finally, while not directly responsive to the changes sought by Defendants, Plaintiffs do wish to note one minor concern with the Court's proposed  instruction. The instruction is currently phrased only in terms of a defendant's acts, not its omissions. ("'Intentional conduct' occurs when a person **acts** with the purpose to produce a specific result. A person intends **an act** when that act is done purposely, not accidentally." (emphasis added)). Because this case includes allegations that Defendants failed to take actions they were legally required to take, Plaintiffs would support the addition of references to "failures to act" and/or "omissions," along with reference to affirmative acts, in the second paragraph of this instruction. Plaintiffs regret that they did not identify this concern until late in the review process, which is why we now raise the issue only in response to concerns raised by Defendants with this same instruction.

**CASE-SPECIFIC INSTRUCTIONS**

**Public Nuisance – Unlawful Conduct**

Next, let me define the term "**unlawful conduct**."

"Unlawful conduct" can occur either by acting in a certain way that is prohibited by law, or by failing to act in a certain way that is required by law. Specifically, unlawful conduct occurs when a person engages in conduct that is prohibited by a statute, ordinance, or regulation that controls safety. And unlawful conduct also occurs when a statute, ordinance, or regulation that controls safety requires a person to engage in certain conduct, but the person fails to do so.

The person does not need to know their conduct is unlawful for an unlawful act to occur.

A law controls safety if it imposes specific legal requirements for the protection of the health, safety, or welfare of others. The federal and Ohio Controlled Substances Acts and their accompanying regulations are laws that control safety.

[Insert instructions defining the specific violations that give rise to liability.]

Conduct that is ~~expressly and~~ fully authorized by a statute, ordinance, or regulation cannot create a public nuisance, because it is lawful conduct. ~~But if a person's conduct does not comply with what is authorized by law, then that conduct may be unlawful conduct.~~

Not every act that is in violation of the law can cause a public nuisance. Only unlawful conduct that causes a significant interference with a public right to health or safety can be a public nuisance.

***Pharmacy Defendants' Modifications:***

Pharmacy Defendants' bracketed insertion is necessary because the Court, not the jury, must determine what "unlawful conduct" could support public nuisance liability. *City of Hamilton v. Dilley*, 120 Ohio St. 127, 131 (1920) ("Under all the authorities, it is the province of

the court to define a nuisance and the province of the jury to determine whether the circumstances of the particular cases come within the definition of a nuisance.").

Pharmacy Defendants' first modification to the sixth paragraph is necessary because the instruction improperly adds a heightened requirement of "express authorization" found nowhere in the law.  Conduct can be incidental to (or even necessary for) compliance with the law without being *expressly* authorized.  Where the conduct at issue is governed by a comprehensive regulatory scheme, all the law requires is compliance.  *See* RESTATEMENT (SECOND) OF TORTS § 821B, cmt. f ("[C]onduct that is fully authorized by statute, ordinance or administrative regulations does not subject the actor to tort liability."); *id.* ("[I]f there has been established a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct, the courts are slow to declare an activity to be a public nuisance if it complies with the regulations."); OJI § 621.09, Regulated Activity (same).

Pharmacy Defendants' deletion of the last sentence of the fifth paragraph is necessary because the proposed language is confusing and misleading, suggesting to the jury that any conduct that is not "authorized by law" is unlawful.  But countless activities are not "authorized" by any statute, ordinance, or regulation and yet are perfectly lawful because they are not forbidden.  Authorization is a safe harbor against a public nuisance claim based on unlawful conduct; a lack of authorization is not itself proof of unlawful conduct.

***Plaintiffs' Response:***

Defendants' proposed modifications again ignore the Order's admonition concerning previously-rejected arguments.

First, Defendants' bracketed language should be rejected.  They propose no specific language.  Further, even though Plaintiffs believed (and still believe) inclusion of any language

concerning the case-specific unlawful conduct alleged is unnecessary, Plaintiffs previously went through great lengths to suggest a proposal to accommodate Defendants. *See* Dkt. 3548 & 3615.

Further, the Court has recognized that "[u]nder Ohio law, **"**it is the province of the court to define a nuisance and the province of the [finder of fact] to determine whether the circumstances of the particular case come within the definition of a nuisance." *Id.* at *3 (quoting *City of Hamilton v. Dilley*, 165 N.E. 713, 714 (Ohio 1929). The definition, of course, is well settled: "Ohio follows the Restatement of the Law (Second) Torts, which broadly defines public nuisance as 'an unreasonable interference with a right common to the general public.'" *Id.* (quoting *Cincinnati v. Beretta U.S.A.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (quoting Restatement § 821B(1)). It did not suggest that the Court must define the facts at issue which may constitute a public nuisance.[8] It would only confuse the jury to interject Defendants' vague proposed placeholder regarding the nature of their conduct in this case. Indeed, Defendants suggest that they intend to use language concerning an activity that is "fully authorized by a statute, ordinance, or regulation," to argue that "countless" activities which are *not* so authorized categorically "cannot create a public nuisance." This is both legally incorrect and misleading.

Finally, Defendants' proposed modification of the balanced language concerning statutory compliance, or lack thereof, is merely an attempt to confuse the jury and revive their previously-rejected proposal. Defendants' proposal is incorrect and falsely suggests a caveat that

---

[8] Further, Ohio Pattern Jury Instructions include introductory language, even in the context of damages claims, that omit the type of case-specific nuisance definition Defendants seek here. *See* 1 CV Ohio Jury Instructions 621.05 ("Absolute nuisance–intentional acts") ("1. PLAINTIFF'S CLAIM. The plaintiff claims that the defendant created a nuisance and the nuisance caused damages to the plaintiff."); 1 CV Ohio Jury CV 621.01 (Absolute nuisance– statutory violation) (1. PLAINTIFF'S CLAIM. The plaintiff claims that the defendant created a nuisance and the nuisance caused damages to the plaintiff.). Although the Ohio Pattern Instructions include a subsequent instruction on "Intentional Conduct" which may describe the specific conduct, they do not adopt the approach Defendants suggest.

does not exist. By definition, unlawful conduct is not conduct that complies with a statutory or regulatory scheme. Actions in violation of a statutory scheme, such as the Controlled Substances Act ("CSA"), are not expressly authorized by law, and therefore are not shielded from nuisance liability. The only reason defendants seek to include their proposed language is thus to confuse the jury. This Court rejected the same proposal before issuing the Court's Instructions.

Given that the language Defendants now criticize appears to be an attempt to accommodate, but convert to a legally correct instruction, Defendants' desire to inject language concerning statutory or regulatory schemes, Plaintiffs suggest that the Court simply delete it. Although Plaintiffs, again, are not objecting to the Court's language, it seems to better accommodate both sides to delete the paragraph that reads: "Conduct that is expressly and fully authorized by a statute, ordinance, or regulation cannot create a public nuisance, because it is lawful conduct. But if a person's conduct does not comply with what is authorized by law, then that conduct may be unlawful conduct."

**CASE-SPECIFIC INSTRUCTIONS**

**Public Nuisance – Causation**

Under either of the two ways of proving public nuisance – that is, showing intentional conduct or unlawful conduct – a Plaintiff must prove by the greater weight of the evidence that a Defendant's conduct ***caused*** an interference with a right to public health or safety. Legal causation involves both proof that the defendant's conduct was necessary to bring about the harm and that the connection between the conduct and the harm is direct, foreseeable, and substantial. We call the first idea "but for" cause, and the second idea "proximate cause." Let me explain something about causation.

First, let me explain "***but for causation***."  To find that a Defendant's conduct caused an unreasonable interference with the right to public health, you must find that the injury would not have occurred without the Defendant's conduct.  In this case, if an interference with the right to public health and safety would have occurred even if a Defendant did not distribute opioids to or dispense opioids from pharmacies in Lake and Trumbull counties in a manner that you find to be (1) intentional and unreasonable or (2) unlawful, then that Defendant's conduct is not a but-for cause.

In deciding whether Plaintiffs have proved but for causation, you may consider evidence of reasons other than the Defendant's alleged conduct for any interference with the right to public health.

Prescription opioid medications distributed by a Defendant to a licensed pharmacy, which then dispensed the medication to patients with valid prescriptions, cannot be considered a but-for cause of unreasonable interference with the right to public health.

35

If you find that a Defendant was a but-for cause of a public nuisance, you may then consider whether the Defendant is a *"proximate" or legal cause*. You may find a Defendant liable only if you conclude the Defendant was a proximate cause of a public nuisance.

A proximate cause of a public nuisance is an act or failure to act, which in the natural and unbroken sequence directly produced the injury, and without which it would not have occurred. A Defendant is not responsible for any injury to another if its conduct is a remote cause and not a proximate or direct cause. ~~produces the circumstances that constitute a public nuisance.~~

In addition, to show proximate cause, the Plaintiff must show, by the greater weight of the evidence, that the conduct a Defendant engaged in could reasonably be expected to cause an interference with public health or safety. A Defendant does not, however, need to foresee that their conduct would lead to the specific nuisance that occurred.  Harm is foreseeable if a reasonable person who had the same information available to the defendant would have foreseen or expected the harm to occur as a result of conduct.[9]

You may find that a Defendant's conduct proximately caused a public nuisance if the circumstances that constitute the nuisance are the natural and foreseeable result of that conduct. If you find that the independent and unforeseeable conduct of a person other than the defendant produced the unreasonable interference with the right to public health, the chain of causation beginning with the defendant's conduct is broken and you should find the Defendant not liable.

There may be more than one proximate cause of a public nuisance, but causes that are merely incidental are not proximate causes. To be a proximate cause, the acts or omissions of a Defendant must be a substantial factor in producing circumstances that unreasonably interfere with a public right to health or safety.

_____

[9] This modified paragraph has been moved up from the end of the Court's proposed instruction.

An individual Defendant's conduct need not be independently capable, all by itself, of causing the public nuisance. There may be multiple causes of a public nuisance. The fact that some other cause or causes combined with a Defendant's conduct in creating the public nuisance does not relieve that Defendant from liability if the Plaintiff can prove that the conduct the Defendant engaged in was a substantial factor in creating the public nuisance. Conduct is a substantial factor if it has some effect and that effect is substantial, rather than negligible. A Defendant's conduct is "substantial" if a reasonable person would regard that conduct as the cause or one of the causes of the nuisance. In determining whether a Defendant's conduct is a substantial factor in bringing about harm to another, you should consider: (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; (c) lapse of time. If you find that the conduct of any Defendant proximately caused a public nuisance, it is not a defense to liability that some other entity may also be to blame.

***Pharmacy Defendants' Modifications:***

**But-for Causation.** The Court's draft instruction is legally erroneous because it entirely omits instructions regarding but-for causation, which is required under Ohio law and is a distinct concept from proximate causation. *Comcast Corp. v. Nat. Ass'n of African American Owned Media, Inc.* 140 S. Ct. 1009, 1014 (2020) (black letter requirement of but-for causation); *Cincinnati v. Beretta USA Corp.*, 95 Oh. St. 3d 416, 426-27 (2002) (adopting proximate causation standard from *Holmes v. Security Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992)). Plaintiffs have conceded that both are required. Dkt. 2204 at 33 ("Under Ohio law, a

37

plaintiff must show that a defendant's wrongful conduct was a cause—i.e., both a cause-in-fact and a legal/proximate cause—of damage to Plaintiffs. *In re Gadolinium-Based Contrast Agents Prod. Liab. Litig.*, 2013 WL 593993, at \*3 (N.D. Ohio Feb. 15, 2013).").

It would also be erroneous to disregard alternative causes in determining but-for causation. Defendants reserve the right to propose specific instructions directing the jury to consider evidence at trial pointing to specific alternative causes. Plaintiffs themselves already have identified a number of alternative causes in their complaints. *See* Lake Complaint ¶¶ 11-12 (setting forth allegations of fraudulent marketing by manufacturers); Trumbull Complaint ¶¶ 11-12 (same); Lake Complaint ¶ 273-75 (same); Trumbull Complaint ¶¶ 273-75 (same); Lake Complaint ¶¶ 717-23 (alleging distributor misconduct); Trumbull Complaint ¶¶ 717-23 (same).

Moreover, prescription opioids dispensed to customers to fill valid prescriptions cannot be a but-for cause of a public nuisance. *See* 21 C.F.R. § 1306.04(a). For the same reason, distribution of prescription opioids to a pharmacy cannot be a but-for cause of a public nuisance if the opioids are used to fill valid prescriptions.

**Direct Causation.** The proposed instruction appears to be based on the general Ohio causation instruction, but this Court recognized that "RICO's directness requirement [which applies to Ohio public nuisance] is more stringent than most state-law requirements." *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 789-90 (N.D. Ohio 2020). It would be erroneous to instruct the jury that an "unbroken chain" is sufficient because even an unbroken chain may have too many links to satisfy the direct causation standard applicable to public nuisance. "In a philosophical sense, the consequences of an act go forward to eternity." *CSX Transp., Inc.*, 564 U.S. 685, 706-07 (2011) (Roberts, C.J., dissenting). This is known as the "butterfly effect," where "a butterfly stirring the air today in China can transform storm systems

38

next month in New York." *Aransas Project v. Shaw*, 775 F.3d 641, 657 n.10 (5th Cir. 2014) (per curiam); *see also United States v. Wang*, 222 F.3d 234, 239 n.1 (6th Cir. 2000). "But under the law, a defendant's liability cannot also go forward to eternity. And a butterfly in China is not the proximate cause of New York storms. Instead, proximate cause prevents liability where there is not a sufficient link between the defendant's conduct and the plaintiff's injuries. So proximate cause requires us to draw a line somewhere in the sand—refusing to extend liability beyond a certain point." *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019).

For public nuisance, the law requires direct causation. *City of Cincinnati v. Deutsche Bank National Trust Co.*, 863 F.3d 474, 480 (6th Cir. 2017) (stating that in addition to foreseeability, proximate cause "requires some direct relation between the injury and the injurious conduct"). In *Berretta*, the Ohio Supreme Court adopted the same causation standard for public nuisance that the Supreme Court applied in *Holmes*. 95 Oh. St. 3d at 426-27. Applying that standard, the Sixth Circuit has rejected public nuisance claims where the causal chain is too long. *See, e.g.*, *City of Cincinnati*, 863 F.3d at 480-81; *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 502 (6th Cir. 2010). The Sixth Circuit has noted in the RICO context that, "*Holmes* follows a course marked by a long line of Supreme Court cases denying antitrust standing to plaintiffs who suffer derivative or 'passed-on' injuries." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 613-15 (6th Cir. 2004). And, as this Court recognized, citing *Holmes*: "The general tendency of the law, in regard to damages at least, is not to go beyond the first step." *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 793 (N.D. Ohio 2020). The same rationale applies to the monetary relief Plaintiffs seek here, even though they call it abatement, because an extended causal chain produces the same administrative difficulties identified in *Holmes*. *In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745, 766-67 (N.D.

39

Ohio 2020) (again quoting *Holmes*, 503 U.S. at 269-70). Nothing in the summary judgment ruling Plaintiffs quote below suggests that the Court rejected or even addressed the requirement of direct causation in concluding that different plaintiffs (on a different record) had presented a triable issue. Plaintiffs do not claim that the Court's instruction satisfies the direct causation standard; nor do they dispute that public nuisance requires direct causation.

The proposed instruction also errs in failing to explain foreseeability as a distinct factor in proximate causation. OJI 401.07; *see also Cascone v. Herb Kay Co.*, 6 Ohio St. 3d 155, 160 (1983). Foreseeability overlaps with, but is not identical to, directness. *Crosby v. Twitter, Inc.,* 921 F.3d 617, 623-24 (6th Cir. 2019). "Though foreseeability is an element of the proximate cause analysis, it is distinct from the requirement of a direct injury." *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 850 (6th Cir. 2003).

**Superseding Cause**. The proposed instruction errs by failing to address when an intervening cause interrupts the chain of causation. OJI 405.05(4); *Adams v. Lift-a-Loft Corp.*, 1999 WL 33105610, *3 (S.D. Oh. Nov. 12, 1999); *Federal Steel & Wire v. Ruhlin Constn.*, 45 Ohio St. 3d 171, 175 (1989); *id.* at 177 (discussing RESTATEMENT (SECOND) OF TORTS §§ 448 and 449); *see also* RESTATEMENT (SECOND) OF TORTS § 442 (consideration for determining if an intervening cause is a superseding cause).

**Substantial Factor.** The proposed instruction fails to correctly define "substantial factor" by omitting the relevant considerations under the Restatement. *See* RESTATEMENT (SECOND) TORTS § 433. The deleted sentence confusingly implies that but-for causation is not required, which is contrary to law. Moreover, the confusion is unnecessary, given that the Court already will have instructed the jury that a Defendant may be liable if it is a "substantial factor," even if other causes also contributed to the alleged public nuisance.

***Plaintiffs' Response:***

Incredibly, Defendants' not only propose extensive modifications that merely reassert previously-rejected arguments, they "reserve the right to propose" still more. Given the length and scope of the re-argument, Plaintiffs incorporate by reference all previous objections, *see* Dkt. 3449, and note:

*First,* the proposed modifications are permeated with legal errors, including:

- Asking the Court to instruct on "but for" causation when, as this Court correctly recognized, the issue is whether Defendants were a "substantial factor" in causing the public nuisance. *See, e.g., Pang v. Minch*, 53 Ohio St. 3d 186, 559 N.E.2d 1313 (1990) (quoting Restatement (Second) of Torts § 433B(2)); OJI 405.01(3) (Multiple Contributing Causes); Prosser and Keeton, Law of Torts § 41, p. 267 (5th ed. 1984) (explaining that in such cases the substantial factor test "has found general acceptance" and "is an improvement over the 'but-for' rule").

- Deleting clear and correct language concerning multiple causes.

- Adding a list copied from the Restatement (Second) of Torts § 433 of considerations to evaluate in determining if conduct is a substantial factor which is absent from the Ohio Pattern Jury Instructions and unnecessary.

- Proposing revised proximate cause language that is contrary to this Court's prior Opinion and Order denying summary judgment motions challenging causation: in that earlier ruling, the Court reasoned that "[b]ecause Plaintiffs have presented evidence that shows they have suffered the sort of injury that would be an expected consequence of the alleged wrongful conduct, Plaintiffs have done enough to withstand summary judgment on this issue," showing they could establish causation by meeting this standard. Opinion and Order Regarding Defendants' Summary Judgment Motions on Causation, *In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804, 2019 WL 4178617, at *4 (N.D. Ohio Sept. 3, 2019) (explaining that "a factfinder could reasonably infer these failures were a substantial factor in producing the alleged harm suffered by Plaintiffs"). Contrary to Defendants' characterization, both the prior ruling and the instruction critiqued address proximate cause. *See id.*; *see also, e.g., Empire Title Servs., Inc. v. Fifth Third Mortg. Co.*, 2013 WL 1337629, at *9 (N.D. Ohio Mar. 29, 2013) ("Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, he has done enough to withstand summary judgment on the ground of absence of causation.'") (quoting *BCS Services, Inc. v. Heartwood*, 88, LLC, 637 F.3d 750, 758 (7th Cir. 2011); CV 405.01 Proximate cause [Rev. 2/11/17], 1 CV Ohio Jury Instructions 405.01.

- Including an incorrect and argumentative foreseeability instruction. *See, e.g.*, CV 401.07 Foreseeability [Rev. 8/5/15], 1 CV Ohio Jury Instructions 401.07 ("The test for foreseeability is not whether a person should have foreseen the (injuries) (damages) exactly as it happened

to the specific (person) (property). The test is whether under the circumstances a reasonably careful person would have anticipated that an act or failure to act would likely (result in) (cause) (injuries) (damages).”); *compare Mudrich v. Standard Oil Co.*, 153 Ohio St. 31, 39, 90 N.E.2d 859, 864 (1950) (proposed intervening cause instruction incorrect in failing to recognize that “[t]he test was . . . whether in the light of all the circumstances an injury was likely to result to some one”).

- Adding a confusing and factually unsupported “superseding/intervening” cause instruction, which fails to define relevant terms and ignores that, because Plaintiffs have alleged, and this Court has already found, that the consequences of Defendants’ alleged misconduct were exactly the sorts of consequences that would be expected to follow from the alleged misconduct, there is no reason to include an intervening cause instruction.

*Second*, throughout, Defendants’ proposed instruction is also needlessly long and confusing and includes inappropriate, argumentative commentary.  For example, Defendants propose to add “remote cause” language that does not say what a remote cause is.   (And also ignores that a cause is remote only when “the result could not have been reasonably foreseen or anticipated as being the natural or probable cause of any injury,” *Halloran v. Barnard*, 2017-Ohio-1069, ¶ 5, such that the concept is already covered).  Defendants’ arguments concerning whether they shipped to “licensed pharmacies” and other commentary they attempt to interject is both incorrect and misleading.  *See State v. Guster,* 66 Ohio St. 2d 266, 271, 421 N.E.2d 157 (1981) (“an instruction that draws attention to irrelevant issues may be objectionable”).

42

**CASE-SPECIFIC INSTRUCTIONS**

**<u>Public Nuisance – Significant and Unreasonable</u>**

I have instructed you that a public nuisance is an ***unreasonable*** interference with a right held by the public in common, and I have used the phrase "***significant*** interference with a public right to health or safety." Let me define the terms "significant" and "unreasonable."

~~An interference with a public right may range from a petty annoyance to serious harm.~~

An interference with a public right is not significant or unreasonable if it causes only a relatively slight amount of inconvenience.

<u>Conduct is "**unreasonable**" when the gravity of the harm to Plaintiff outweighs the utility of the Defendant's conduct.</u>

<u>When deciding the **gravity of the harm** to the plaintiff, if any, you should consider factors such as the extent of the harm, the character of the harm, and the ease or difficulty with which the plaintiff could avoid the harm.</u>

<u>When deciding the **utility of the Defendant's conduct**, if any, you should consider factors such as the social value of the primary purpose of the Defendant's conduct and the impracticability of preventing or avoiding the Defendant's conduct.</u>

~~An interference with a public right is significant or unreasonable if it causes greater harm than the public should be required to bear, considering all the circumstances. When you consider whether an interference with a public right is significant or unreasonable, some of the factors you may consider include the nature, extent, and duration of the interference.~~

***Pharmacy Defendants' Modifications:***

Pharmacy Defendants made two changes to this instruction.  First, they struck the second paragraph, because it could be read to conflict with the third paragraph.  As the third paragraph

43

acknowledges, an interference with a public right is not actionable if it amounts to a "relatively slight amount of inconvenience."  Yet, the deleted paragraph wrongfully implies that even a "petty annoyance" could be actionable.  That sentence is unnecessary to understand the concept of "significant" and could lead to juror confusion.  Therefore, it should be deleted.

Second, Pharmacy Defendants have inserted the definition of what makes a harm "unreasonable."  OJI 621.05.  Failure to give this standard instruction will result in the jury failing to properly balance any harms from a Defendant's conduct with the benefits of such conduct.  Most human activities create some sort of harm or externality.  Asking the jury to consider only the extent of the harm is asking the wrong question.  The question they must answer is whether the harm is so unreasonable that it properly forms the basis of absolute nuisance liability. *See Kramer v. Angels Path LLC*, 882 N.E.2d 47 at ¶ 20 (under absolute nuisance theory encompasses activities done "without just cause or excuse, the necessary consequence of which" is to interfere with another's rights); *Kubitz v. City of Sandusky*, 200 N.E.2d 322, 324 (Ohio 1964) (plaintiff failed to allege absolute nuisance because complaint did not allege that fence was "unreasonable interference" undertaken "without just cause or excuse"); OJI 621.05 (specifying that conduct must be "unreasonable" after harms are balanced against benefits).

The deleted language wrongfully focuses only on the harms caused by the alleged conduct, without requiring the jury to balance the gravity of the harm against the utility of the conduct as set forth in Ohio's standard jury instructions.  Thus, it does not adequately explain to the jury what sort of actions are "greater harm than the public should bear, given all the circumstances."  As a matter of Ohio law, the jury must make that determination not just in light of the magnitude of the harm, but also in light of the nature and purpose of the Defendant's

conduct, its value to the community, the nature, extent, and frequency of the alleged interference with the public right, and whether the interference could be avoided or lessened without undue hardship to the Defendant.  OJI 621.05; RESTATEMENT (SECOND) OF TORTS §§ 822, 826-28. While these Restatement sections concern private nuisance, the comments in each section make clear that they apply equally to public nuisance as well.  *See, e.g.*, *id.* § 822, cmt. a (subject to explicit statutory exception, "the tort law of public nuisance is consistent with this section"); *id.* § 826, cmt. a ("***Public Nuisance.*** The rule stated in this Section applies to conduct that results in private nuisance . . . . A similar rule may, and commonly does, apply to conduct that results in public nuisances[.]"); *id.* § 827, cmt. a (same); *id.* § 828, cmt. a (same).

***Plaintiffs' Response:***

Defendants' proposed modifications are both incorrect and, again, and attempt to revive previously-rejected arguments in violation of the Order.

The Court's instruction is correct.  To begin with, the instruction tells the jury that an "interference with a public right is significant or unreasonable if it causes greater harm than the public should be required to bear, *considering all the circumstances."* Thus, the instruction as currently drafted does not direct the jury to consider only the harms caused by Pharmacy Defendants' conduct. Moreover, Defendants appear to rely on a Restatement section that concerns private nuisances.  *See* Restatement (Second) of Torts § 822.  Further, a balancing test is not appropriate for conduct, such as unlawful activity, that is by definition unreasonable.  And, as Restatement Section 829 provides, an interference is unreasonable if "the harm is significant and the actor's conduct is . . . contrary to common standards of decency." Restatement (Second) of Torts § 829.

Even assuming *arguendo* a weighing were appropriate, (1) it would be limited to the utility of *Defendants' alleged misconduct*, and (2) it concerns an issue already decided by the court and adequately addressed in other aspects of the court's instructions. *See In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804, 2019 WL 4194272, at *2 n.3 (N.D. Ohio Sept. 4, 2019) ("This argument ignores the Restatement's express inclusion of 'significant interference with the public health' as one of the '(c)ircumstances that may sustain a holding that an interference with a public right is unreasonable.' Restatement 821B(2)(a)"). Defendants appear to desire this language so as to argue that, as pharmacies, they engage in conduct other than that alleged to cause the nuisance, which has "value to the community."

**FOR ALL QUESTIONS IN THIS VERDICT FORM,**

**PLEASE CIRCLE YOUR ANSWERS IN INK**

1.    Did **Lake County** prove, by the greater weight of the evidence, that ~~oversupply of legal prescription opioids, and~~ diversion of those opioids into the illicit market outside of appropriate medical channels, is a public nuisance in **Lake County**?

YES              NO

**If you answered "YES" to Question 1, please go to Question 2.**

**If you answered "NO" to Question 1, then skip Questions 2 through 5, and go directly to Question 6.**

*Pharmacy Defendants' Modifications:*

Pharmacy Defendants' modification to Question 1 is necessary because the definition of the alleged nuisance is confusing and potentially misleading.  As the Court's verdict form and instructions recognize, oversupply of legal prescription opioids itself does not interfere with public health and safety, but rather must be paired with a finding that those opioids were diverted into the illicit market.  As the verdict form and instructions are currently drafted, however, jurors could easily be confused and believe that they can find a Pharmacy Defendant liable merely because that Defendant was a substantial factor in an "oversupply" of prescription opioids—regardless of any wrongful conduct or any contribution to actual diversion.  To avoid this error,

47

the definition of nuisance should eliminate references to "oversupply" and instead focus on whether each Pharmacy Defendant was the cause of "diversion" in the Track 3 counties.

***Plaintiffs' Response:***

Plaintiffs incorporate by reference their response to Defendants' proposed modifications to the Court's instruction on "Applicable Law – Public Nuisance – Introduction."

Dated:  July 19, 2021

Respectfully submitted,

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4400
Email: kaspar.stoffelmayr@bartlitbeck.com
Email: brian.swanson@bartlitbeck.com
Email: kate.swift@bartlitbeck.com
Email: sharon.desh@bartlitbeck.com
Email: sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Phone: (303) 592-3100
Fax: (303) 592-3140
Email: alex.harris@bartlitbeck.com

*Attorneys for Defendants Walgreens Boots Alliance,
Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*

*/s/ Eric R. Delinsky* (consent)
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel:  (202) 778-1800
Fax:  (202) 822-4106
edelinsky@zuckerman.com
smiller@zuckerman.com

*Attorneys for CVS Pharmacy Inc. and its named
subsidiaries*

49

*/s/ Robert M. Barnes* (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc., and HBC Service Company*

*/s/ Kelly A. Moore* (consent)
Kelly A. Moore, Esq.
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001

John P. Lavelle, Jr., Esq.
John.lavelle@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
T: 215-963-5917
F: 215-963-5001

*Attorneys for Rite Aid Hdqtrs. Corp.; Rite Aid of Ohio, Inc.; Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center; and Rite Aid of*

*Maryland, Inc. d/b/a Mid-Atlantic Customer*
*Support Center*

*/s/   John M. Majoras* (consent)
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*


*s/ Jayne Conroy*
Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com
*Plaintiffs' Co-Lead Counsel*

*s/ Joseph F. Rice*
Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com
*Plaintiffs' Co-Lead Counsel*

*s/ Paul T. Farrell, Jr.*
Paul T. Farrell, Jr.

51

FARRELL & Fuller, LLC
1311 Once de Leon Ave., Suite 202
San Juan, Puerto Rico 00907
(304) 654-8281
paul@farrellfuller.com
*Plaintiffs' Co-Lead Counsel*

*s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com
*Plaintiffs' Liaison Counsel*

*s/ W. Mark Lanier*
W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX 77069-3804
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com
*Lead Trial Counsel*

*/s Frank Gallucci*
PLEVIN & GALLUCCI
Frank Gallucci (0072680)
55 Public Square, Suite 2222
Cleveland, Ohio 44113
fgallucci@pglawyer.com
Phone: (216) 861-0804
*Counsel for Lake and Trumbull Counties*

NAPOLI SKHOLNIK

*/s Hunter J. Shkolnik*
Hunter J. Shkolnik (admitted *pro hac vice*)
270 Muñoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(917) 544-0009

Salvatore C. Badala (admitted *pro hac vice*)
Joseph L. Ciaccio (admitted *pro hac vice*)

52

360 Lexington Avenue
New York, New York 10017
sbadala@napolilaw.com
jciaccio@napolilaw.com
Phone: (212) 397-1000
*Counsel for Lake and Trumbull Counties*