# EXHIBIT B

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:

*Track Three Cases*

**MDL No. 2804**

**Case No. 17-md-2804**

**Judge Dan Aaron Polster**

**PHARMACY DEFENDANTS' PROPOSED TRACK 3 JURY INSTRUCTIONS**

**(REDLINED FROM PROPOSED TRACK 1B INSTRUCTIONS)**

## PREVIOUSLY AGREED-UPON INSTRUCTIONS

In Track 1B, the parties agreed to the inclusion of the following standard form instructions used by the Court, and provided to the parties in an email from Mary Hughes on June 24, 2020, as relevant and appropriate for use in this case.

1. Consideration of Evidence

2. Direct and Circumstantial Evidence

3. Inferences from Evidence

4. Credibility of Witnesses

5. Number of Witnesses

6. Charts and Summaries

7. Admissions and Interrogatory Answers

8. Stipulations of Fact

9. Lawyers' Objections

10. Introduction (Case-Specific Instructions)

11. Introduction (Deliberations)

12. Juror Notes

13. Duty to Deliberate

14. Interrogatories and Verdict Forms

15. Juror Questions

16. The Court Has No Opinion

In addition, the Parties reached agreement on the following instructions, which include the Court's May 28, 2020 Instruction on "Corporate Defendants."  Minimal changes, noted in redline, are appropriate to account for differences between Track 1B and Track 3.

**OPENING INSTRUCTION**

Members of the Jury:

You have heard all of the evidence and it is now time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain the elements, or parts, of the claims that Plaintiffs ~~Summit County and Cuyahoga County~~Lake County and Trumbull County allege Defendants Walgreens Boots Alliance, Inc., Walgreen Co., Walgreen Eastern Co., Inc., CVS Pharmacy, Inc., CVS Indiana L.L.C., CVS Rx Services, Inc., CVS TN Distribution, L.L.C., Ohio CVS Stores L.L.C., -Rite Aid Hdqtrs. Corp., Rite Aid of Ohio, Inc., Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center~~Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support, Center, Inc.,~~ Walmart Inc. ~~(formerly known as Wal-Mart Stores, Inc.)~~, and HBC Service Company, an operating division of Giant Eagle, Inc.~~, and Discount Drug Mart, Inc.~~ are liable for.

After that, the lawyers will present their closing arguments.

Following closing arguments, I will explain the rules that you must follow during your deliberations in the jury room, and the interrogatories and verdicts that you may return.

Please listen very carefully to everything I say.[1]

---

[1] This proposed instruction is a modified version of the "Boilerplate Civil Jury Instructions" provided to the Parties on June 24, 2020.

2

## **Corporate Defendants**

The Defendants are corporations. Corporations can be held liable for their acts or omissions, just as you or I can. As corporations, they can act or fail to act only through their officers and employees. The conduct of an officer or employee acting within the scope of his or her employment should be treated as the conduct of the corporation.

During my summary of the Plaintiffs' claims, I will often use the word "person" or "persons." Please bear in mind that for all of these claims, corporations are considered persons. Each person, including each corporation, is considered a separate person under the law, whose liability must be separately determined.[2]

---

[2] This proposed instruction is identical to the language of the Public Nuisance instructions circulated by the Court on May 28, 2020.

3

## PUBLIC NUISANCE – CONCLUSION

When rendering your verdict on the Plaintiffs' claims of public nuisance, you must consider each claim against each Defendant separately. In other words, you must independently decide each separate Plaintiff's claim against each separate Defendant.

Thus, if you find that a particular Plaintiff has proved its public nuisance claim by the greater weight of the evidence against a particular Defendant, then your verdict must be for that Plaintiff and against that Defendant.

Similarly, if you find that a particular Plaintiff has failed to prove its public nuisance claim by the greater weight of the evidence against a particular Defendant, then your verdict must be against that Plaintiff and for that Defendant.

To repeat: you must independently decide each separate Plaintiff's claim against each separate Defendant, and render your verdict accordingly. Just because you find in favor of one Plaintiff or one Defendant does not mean you must find in favor of any other Plaintiff or any other Defendant.

The verdict form will guide you through this process.[3]

---

[3] This proposed instruction is identical to the language of the Public Nuisance instructions circulated by the Court on May 28, 2020.

4

## **Experiments, Research, Investigation and Outside Communications - Admonition**

Remember that you must make your decision based only on the evidence that you saw and heard here in court.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry, or computer, the Internet, any Internet service, or any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, Instagram, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

You should know that if this Admonition is violated, there could be a mistrial. A mistrial means that the case is stopped before it is finished and must be retried at a later date. This can lead to a great deal of expense for the parties and the Court. No one wants to see money wasted. If a mistrial were to be declared based on a violation of this Admonition, the juror responsible could be required to pay the cost of the first trial and could also be punished for contempt of court.

In summary, make your decision based only on the evidence that you saw and heard here in court.[4]

---

[4] The Parties have agreed that the "Boilerplate Civil Jury Instructions" should be modified to remove references to the jurors as taxpayers.  The Parties have recently entered into an evidentiary stipulation to exclude "[a]ny reference to jurors' self-interest in the outcome of the litigation based on the jurors' status as taxpayers."  *See* Dkt. 3424 at 2.

**DEFENDANTS' PROPOSED INSTRUCTIONS AND VERDICT FORM**

**GENERAL INSTRUCTIONS**

**Jurors' Duties**

It is your duty as jurors to follow the law as stated in the instructions of the Court, and to apply the rules of law so given to the facts as you find them from the evidence in the case.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if Plaintiffs have proven by a preponderance of the evidence that Defendant is liable for [claim(s)]. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

The lawyers will talk about the law during their arguments. But if what they say is different from what I say, you must follow what I say. What I say about the law controls.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. All parties are equal in the eyes of the law. Corporations stand on equal footing, and size is not to be considered. Both the parties and the public expect that you will carefully and impartially consider all of the

evidence in the case, follow the law as stated by the Court, and reach a just decision regardless of the consequences.[5]

---

[5] Authority: Ex. B, Judge Dan Aaron Polster, Jury Instructions - Civil Case, available at https://www.ohnd.uscourts.gov/sites/ohnd/files/DAP-BoilerplateCivilJuryCharge.PDF.

**GENERAL INSTRUCTIONS**

**<u>Burden of Proof – Preponderance of the Evidence</u>**

In a civil action, like this one, Plaintiff is required to prove all the elements of its claim by a preponderance of the evidence. This duty is known as the burden of proof.[6]

To establish something "by a preponderance of the evidence" means to prove that something is more likely true than not true. Preponderance of the evidence is the greater weight of the evidence; that is, evidence that you believe because it outweighs or overbalances in your mind the evidence opposed to it. A preponderance means evidence that is more probable, more persuasive, more likely, or of greater probative value. It is the quality of the evidence that must be weighed. Quality may, or may not, be related to the quantity of witnesses.[7]

This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case. You may have also heard of the term "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases only. It does not apply in civil cases like this one. You should, therefore, put it out of your minds.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

---

[6] Authority: Ex. B, Judge Dan Aaron Polster, Jury Instructions - Civil Case, available at https://www.ohnd.uscourts.gov/sites/ohnd/files/DAP-BoilerplateCivilJuryCharge.PDF.

[7] *Id.*

If the weight of the evidence is equally balanced, or if you are unable to determine which side of an issue has the preponderance, the party who has the burden of proof has not established such issue by a preponderance of the evidence.[8]

---

[8] *Id.*

## GENERAL INSTRUCTIONS

### Evidence Defined

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

Evidence is all the testimony received from the witnesses including depositions and the exhibits that I admitted during the trial, admissions of parties,[9] the stipulations that the lawyers agreed to, and any facts which the Court requires you to accept as true.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. If you remember the facts differently from the way the attorneys have stated them, you should base your decision on what you remember. The lawyers' questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. And I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all these things. Do not even think about them.

Do not speculate about what a witness might have said. You may not draw any inference from an unanswered question nor may you consider testimony which has been stricken in reaching your decision.

---

[9] *See, e.g.*, *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000).

**Case-Specific Instructions**

**Public Nuisance – Admissions**[10]

Plaintiffs have admitted the following, which you should consider as true for purposes of this trial.   When rendering your verdict, you must accept them as true, and you may not consider any evidence to the contrary:

[Pharmacy Defendants intend to treat as judicial admissions Plaintiffs' allegations against manufacturers in their Complaints as well as any other binding admissions that arise before or during trial, including the admissions that the standard of care among physicians for prescribing opioids changed over time.]

~~Through a massive marketing campaign premised on false and incomplete information, companies that manufacture, sell, and market prescription opioid painkillers  including Purdue,~~

---

[10] *Kay v. Minacs Group (USA), Inc.*, 580 F. App'x 327, 331 (6th Cir. 2014) (citation omitted) ("Factual assertions in pleadings . . . , unless amended, are considered judicial admissions conclusively binding on the party who made them."); *accord Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."); *id.* ("A statement in a complaint, answer or pretrial order is a judicial admission[.]"); *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983) ("Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them[.]").

Judicial admissions are the proper subject of jury instructions.  *See Kay v. United of Omaha Life Ins. Co.*, 709 F. App'x 320, 330 (6th Cir. 2017) (noting that a party "did not seek to enforce Plaintiffs' judicial admissions by requesting that the district court instruct the jury that they must accept that the December 19 notice was sent" and forfeited the admissions argument by "introduc[ing] Plaintiffs' pleadings as evidence, and argu[ing] the issue to the jury"); *Volland-Golden v. City of Chicago*, 13 C 1477, 2016 WL 4678299, at *3 (N.D. Ill. Sept. 7, 2016) ("As for publishing those admissions to the jury, that appears to be no more problematic than the publication of a stipulation between litigants. To the extent that the right to respond sought by defendants and referred to in the preceding paragraph is needed to explain the effect of a judicial admission, appropriate language should be included in plaintiff's proposed statement of judicial admissions."); *Hallinan v. Republic Bank & Tr. Co.*, 519 F. Supp. 2d 340, 349 (S.D.N.Y. 2007), aff'd, 306 F. App'x 626 (2d Cir. 2009) ("That language was read to the jury as a judicial admission.").

12

Actavis, Cephalon, Janssen, Endo, Insys, and Mallinckrodt (collectively, "Manufacturers") — engineered a dramatic shift in how and when opioids were prescribed by the medical community and used by patients. These companies relentlessly and methodically, but untruthfully, asserted that the risk of addiction was low when opioids were used to treat chronic pain, and overstated the benefits and trivialized the risk of the long term use of opioids.[11]

The plan by Manufacturers worked.  Through their publications and websites, endless stream of sales representatives, 'education' programs, and other means, Manufacturers dramatically increased their sales of prescription opioids and reaped billions of dollars of profit as a result.[12]

From the day they made the pills to the day those pills were consumed in our communities and on to the present day, these manufacturers have had control over the information regarding addiction they chose to spread and emphasize as part of their massive marketing campaign. By providing misleading information to doctors about addiction being rare and opioids being safe even in high doses, then pressuring them into prescribing their products by arguing, among other things, that no one should be in pain, Manufacturers created a population of addicted patients who sought opioids at never before seen rates. The scheme worked, and through it the companies that manufacture opioids caused their profits to soar as more and more people became dependent on opioids.[13]

---

[11] Summit Complaint ¶ 10; *id.* ¶ 106 (defining "Marketing Defendants"); *see also* Cuyahoga Complaint ¶ 10.  For the Court's convenience, further citations will be to the Summit Complaint.

[12] Summit Complaint ¶ 12.

[13] *Id.* ¶ 15.

13

Each Manufacturer made thousands of payments to physicians nationwide, including in Ohio, ostensibly for activities including participating on speakers' bureaus, providing consulting services, assisting in post marketing safety surveillance and other services, but in fact to deceptively promote and maximize the use of opioids.[14]

Given the history of opioid abuse in the U.S. and the medical profession's resulting wariness, the commercial success of Manufacturers' prescription opioids would not have been possible without a fundamental shift in prescribers' perception of the risks and benefits of long-term opioid use.[15]

Manufacturers made the following misrepresentations to physicians, patients, and the public at large:

a. The risk of addiction from chronic opioid therapy is low

b. To the extent there is a risk of addiction, it can be easily identified and managed

c. Signs of addictive behavior are "pseudoaddiction," requiring more opioids

d. Opioid withdrawal can be avoided by tapering

e. Opioid doses can be increased without limit or greater risks

f. Long-term opioid use improves functioning

g. Alternative forms of pain relief pose greater risks than opioids

h. OxyContin provides twelve hours of pain relief,

i. New formulations of certain opioids successfully deter abuse

---

[14] *Id.* ¶¶ 68, 73, 84, 88, 96, 105.

[15] *Id.* ¶ 146.

Each of the above propositions was false. Manufacturers knew this, but they nonetheless set out to convince physicians, patients, and the public at large of the truth of each of these propositions in order to expand the market for their opioids.[16]

Each Manufacturer, and each misrepresentation, contributed to an overall narrative that aimed to—and did—mislead doctors, patients, and payors about the risk and benefits of opioids.[17]

The false marketing campaign not only targeted the medical community who had to treat chronic pain, but also patients who experience chronic pain.[18]

Manufacturers created a body of false, misleading, and unsupported medical and popular literature about opioids that (a) understated the risks and overstated the benefits of long-term use; (b) appeared to be the result of independent, objective research; and (c) was likely to shape the perceptions of prescribers, patients, and payors. This literature served marketing goals, rather than scientific standards, and was intended to persuade doctors and consumers that the benefits of long-term opioid use outweighed the risks.[19]

Manufacturers spent millions of dollars to market their drugs to prescribers and patients and meticulously tracked their return on that investment. In one recent survey published by the AMA, even though nine in ten general practitioners reported prescription drug abuse to be a moderate to large problem in their communities, 88% of the respondents said they were confident in their prescribing skills, and nearly half were comfortable using opioids for chronic non-cancer

---

[16] *Id.* ¶¶ 177-78.

[17] *Id.* ¶ 179.

[18] *Id.* ¶ 350.

[19] *Id.* ¶ 446.

pain. These results are directly due to the fraudulent marketing campaign focused on several misrepresentations.[20]

Manufacturers worked together to manufacture wide support for their unfounded theories and propositions involving opioids. Due to their sheer numbers and resources, they were able to create a false scientific consensus through their materials and references.[21]

- [*Insert additional admissions and allegations as relevant to issues arising at trial*]

---

[20] *Id.* ¶ 493.

[21] *Id.* ¶ 755.

**Public Nuisance – Introduction**

Each Plaintiff alleges that each Defendant's conduct in distributing and dispensing opioids without adequately maintaining certain, specific controls against diversion constituted a public nuisance.  "Diversion" means the transfer of a controlled substance from legitimate "medical, scientific, research, or industrial channels" (such as prescriptions written by a licensed medical prescriber for a legitimate medical purpose and in the usual course of the prescriber's professional practice),[22] to an illegal channel.

Let me define for you the legal term "public nuisance."  A "public nuisance" is an unreasonable and significant interference with a right held by the public in common, including an unreasonable interference with public health.[23]  A Defendant is not liable for an unreasonable interference with public health that may have existed in the past but does not still exist at the time of your verdict.

---

[22] 21 U.S.C. § 823(b)(1) ("The Attorney General shall register an applicant to distribute a controlled substance in schedule I or II unless he determines that the issuance of such registration is inconsistent with the public interest. In determining the public interest, the following factors shall be considered: (1) maintenance of effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels . . . ."); 21 C.F.R. § 1306.04(a) ("A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.").

[23] Defendants maintain their continuing objection that the Plaintiffs cannot demonstrate that Defendants' alleged conduct interfered with any public right, and incorporate their objection from Footnote 14. *See* Restatement (Second) of Torts § 821B cmt. g ("It is not, however, necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large.")

17

To prevail against any Defendant on this claim, a Plaintiff must prove each of the following elements as to that Defendant by the greater weight of the evidence:

First, the Defendant either (a) engaged in intentional and unreasonable conduct that was intended to cause a significant interference with the right to public health or (b) engaged in certain, specific kinds of unlawful conduct;

Second, the Defendant's conduct proximately caused an unreasonable interference with the right to public health; and

Third, the Defendant, at present, controls the interference with the right to public health.[24]

---

[24] Because the Court has ruled that the only remedy available to Plaintiffs on their nuisance count is abatement (a forward-looking remedy available with respect to a present nuisance), the relevant inquiry is not whether a Defendant had control at the time of the injury but whether the Defendant, at present, controls ongoing interference with public health.  *See In re Lead Paint Litig.*, 924 A.2d 484, 499 (N.J. 2007) ("[A] public entity which proceeds against the one in control of the nuisance may only seek to abate, at the expense of the one in control of the nuisance."); *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 446 (R.I. 2008) (same); *see also Ogle v. Kelly*, 629 N.E.2d 495, 499-500 (Ohio Ct. App. 1993) (a landlord out of possession and control cannot be liable for a nuisance).  California (unlike Ohio) has abandoned the traditional "control" requirement.  *People v. ConAgra Grocery Products Co.*, 227 Cal. Rptr. 3d 499, 549 (Ct. App. 2017) (under California law, nuisance "does not hinge on whether the defendant owns, possesses or controls the property, nor on whether he is in a position to abate the nuisance").  In *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), the Ohio Supreme Court confirmed that Ohio maintains "control" as an element: "Appellant's complaint alleged that appellees created a nuisance through their ongoing conduct of marketing, distributing, and selling firearms in a manner that facilitated their flow into the illegal market.  Thus, appellant alleged that appellees control the creation and supply of this illegal, secondary market for firearms[.]"  *Id.* at 1143.

**Public Nuisance – Conduct**

Plaintiffs allege that the Defendants caused an unreasonable interference with the right to public health by the manner in which they distributed prescription opioids to their affiliated pharmacies ~~so that the pharmacies could fill~~and dispensed prescription opioids in response to prescriptions presented by patients.

~~Plaintiffs' claims in this case are not based on the manner in which pharmacies filled prescriptions or any allegation that pharmacies or their pharmacists violated the law when they dispensed prescription opioid medications.[25]~~

~~Consequently, your verdict must be based on the Defendant's conduct in distributing prescription opioid medications to their affiliated pharmacies, not on the conduct of an affiliated pharmacy in filling prescriptions for opioid medications for patients.  However, i~~In deciding whether the Defendant directly caused an unreasonable interference with the right to public health, you may consider whether there is evidence that ~~the~~ opioids distributed and dispensed by a Defendant or its affiliated pharmacy were actually diverted outside of legitimate medical channels~~ through an affiliated pharmacy~~.

---

~~[25] *See, e.g.*, Dkt. No. 1203 at 2 (This Court noting that "Plaintiffs have disclaimed any cause of action against Retail Pharmacies in their capacity as retailers or dispensers of opioids" and holding that "the Retail Pharmacies may only be held liable as distributors.").~~

19

### Public Nuisance – Public Right

As I mentioned before, a public nuisance is an ***unreasonable interference*** with a ***right common to the general public***.[26]  The right common to the general public involved in a particular case is the right to public health.[27]  But it is for you to decide, based on the evidence you have seen and heard, whether a Defendant engaged in wrongful conduct that unreasonably and significantly interfered with the right to public health, and whether that conduct was the but-for and the proximate cause of the alleged harm to each Plaintiff.

---

[26] Restatement (Second) of Torts § 821B(1).

[27] Defendants believe that Plaintiffs cannot demonstrate that Defendants' alleged conduct interfered with any public right.  Accordingly, this case proceeds only subject to Defendants' continuing objection.  However, should the case proceed, the public right at issue in the case is a question of law, and the jury should be instructed what right is at issue.  *City of Hamilton v. Dilley*, 120 Oh. St. 127, 131-32 (1929)  *Dilley* involved a statutory right to travel on public streets; the question for the jury was whether the safety platform erected to protect pedestrians was, under the circumstances, an unreasonable interference with that statutory right.  Defendants interpret the Court's prior ruling to indicate that it has found the public right at issue in this case to be the right to public health, and has drafted the instruction accordingly.  Dkt. 2578.

### Public Nuisance – Interference

To hold a Defendant liable for public nuisance, each Plaintiff must prove by the greater weight of the evidence that the Defendant engaged in wrongful conduct that unreasonably and significantly interfered with a public right.  As I just instructed you, in this case, the public right at issue is the right to public health.

A public right is a collective right that is common to all members of the general public, as opposed to private rights enjoyed by many (or all) people in their individual capacities. It is a right that belongs to the community at large. A Defendant does not interfere with any public right merely because the Defendant's alleged wrongful conduct interferes with the private rights of a large number of people. Nor does a Defendant interfere with a public right just because the Defendant's alleged wrongful conduct harmed a large number of people.[28]

If you find that a Defendant's alleged wrongful conduct did not interfere with a public right, then you must find that Defendant not liable for public nuisance. If you find that a Defendant engaged in wrongful conduct and that wrongful conduct interfered with a right to public health, then you must next determine whether that Defendant "unreasonably and significantly" interfered with that public right, as explained below.

---

[28] *Kramer v. Angel's Path, L.L.C.,* 2007-Ohio-7099, ¶ 15, 174 Ohio App. 3d 359, 367, 882 N.E.2d 46, 52; *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 768 N.E.2d 1136, 2002–Ohio–2480, ¶ 8; *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App. 3d 704, 712, 622 N.E.2d 1153, 1158 (1993) ("Conduct does not become a public nuisance merely because it interferes with a large number of people. At common law, there must be some interference with a public right which is common to all members of the general public. In addition to common-law public nuisance, Ohio has adopted statutes and administrative regulations which define certain conduct as being a public nuisance. These statutes amount to a legislative declaration that the proscribed conduct is an unreasonable interference with a public right."); Restatement of the Law (Second) Torts § 821B(1) & cmt. g (1979).

21

Whether an interference with a public right is unreasonable and significant is a question of degree, requiring you to balance the need for the Defendant's conduct and its usefulness and social value against the seriousness of the harm that each Plaintiff allegedly suffered as a result of the allegedly unreasonable conduct.[29] In deciding whether a Defendant's conduct was unreasonable and significant, you must consider all of the circumstances, including the nature and purpose of the Defendant's conduct, its value to the community, the nature, extent, and frequency of the alleged interference with the public right, and whether the interference could be avoided or lessened without undue hardship to the Defendant.[30] Specifically, you should consider the benefits to patients in receiving medications lawfully prescribed by a health care provider in deciding whether plaintiffs have proved unreasonable interference with a right common to the general public. No one of these factors is conclusive, but all are to be considered together and in relation to all of the surrounding circumstances.

---

[29] Restatement (Second) of Torts § 822.

[30] *Id.* at §§ 821b, 826-831.

22

## Public Nuisance – Control of the Nuisance[31]

A Plaintiff must also prove that a Defendant presently controls the conditions interfering with public health and safety.  In this case, if a Defendant does not, at present, control the creation or supply of an illegal, secondary market of diverted prescription opioids, the Defendant cannot be liable for public nuisance.  If you find that a Defendant does not currently control those conditions, you should mark "no" for that Defendant for Questions A1a1 and A1a2 and A6a1 and A6a2 of your verdict form.

---

[31] "Appellant's complaint alleged that appellees created a nuisance through their ongoing conduct of marketing, distributing, and selling firearms in a manner that facilitated their flow into the illegal market.  Thus, appellant alleged that appellees control the creation and supply of this illegal, secondary market for firearms, not the actual use of the firearms that cause injury." *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002); *see also* Dkt. 1203 at 34-35.

## Public Nuisance – Intentional Conduct[32]

Plaintiffs can hold a Defendant liable for public nuisance if they prove by the greater weight of the evidence that the Defendant acted **_intentionally_** and **_unreasonably_** to cause a significant interference with the right to public health.

"**_Intentional conduct_** " occurs when a person acts with the purpose to produce a specific result. A person intends an act when that act is done purposely, not accidentally. The intent with which a person acts is known only to that person. There are two ways to prove a person's intentional conduct. One, when a person expresses their intent to others. Or two, when a person somehow indicates their intent by their conduct.

For you to find that a person engaged in intentional conduct, it is enough that the person intended to act and knew that an interference with public health or public safety would result, or was substantially certain to result, from their act.[33] It is not necessary for you to find that the person intended that the act would cause the public nuisance.

---

[32] 1 CV Ohio Jury Instructions 621.05 (Rev. Mar. 18, 2002) (modified); _Nottke v. Norfolk S. Ry. Co_., 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017); _Angerman v. Burick_, 2003 WL 1524505, at *2 (Ohio Ct. App. 2003); _Kramer v. Angel's Path_, LLC, 882 N.E.2d 46, 52 (Ohio Ct. App. 2007); Restatement (Second) of Torts § 825.

[33] Defendants' only substantive change to the Court's proposed instruction on Public Nuisance – Intentional Conduct, as circulated to the parties on May 28, 2020, is the deletion of the phrase "or should have known."  **_Plaintiffs agree that this phrase should be stricken._** Instructing the jury that a Defendant engaged in intentional conduct when they "should have known that an interference with public health or public safety . . . was substantially certain to result" converts the test from one of actual knowledge to one of negligence and is directly at odds with the Restatement.  The Restatement says that "an interference with the public right[] is intentional if the actor (a) acts for the purpose of causing it, or (b) **_knows_** that it is resulting or is substantially certain to result from his conduct."  Restatement (Second) of Torts § 825 (emphasis added).  One of the comments to Section 825 explains further: "It is the **_knowledge_** that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional.  **_It is not enough_** to make an invasion intentional that the actor realizes or should realize that his conduct involves a serious risk or likelihood of causing the invasion.  He must either act for the purpose of causing it or **_know_** that it is resulting or is substantially certain to result from his conduct."  _Id_., cmt. c (emphasis added).

24

### Public Nuisance -- Unreasonable Conduct[34]

Even if a Defendant's conduct was "intentional," to form the basis for nuisance liability, the conduct must also be ***unreasonable.*"**  Conduct is ***"unreasonable"*** when the gravity of the harm to Plaintiff outweighs the utility of the Defendant's conduct.

When deciding the ***gravity of the harm*** to the plaintiff, if any, you should consider factors such as the extent of the harm, the character of the harm, and the ease or difficulty with which the plaintiff could avoid the harm.

When deciding the ***utility of the Defendant's conduct***, if any, you should consider factors such as the social value of the primary purpose of the Defendant's conduct and the impracticability of preventing or avoiding the Defendant's conduct.

---

[34] OJI 621.05(4)-(6) (modified).

25

## Public Nuisance – Compliance with Regulation[35]

A Defendant's activity pursuant to and in compliance with specific statutory authority or a regulatory scheme cannot constitute a public nuisance.

---

[35] OJI 621.09; *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App. 3d 704, 713 (1993) ("Since a pollution control facility operates under the sanction of law, it cannot be a common-law public nuisance. This is but another way of saying that although it would be a nuisance at common law, conduct which is fully authorized by statute or administrative regulation is not an actionable tort." (internal citations omitted)); Restatement (Second) of Torts § 821B, cmt. f ("Although it would be a nuisance at common law, conduct that is fully authorized by statute, ordinance or administrative regulation does not subject the actor to tort liability.").

## Public Nuisance – Unlawful Conduct[36]

Plaintiffs can also prove nuisance liability is by showing that a Defendant acted unlawfully.  A Defendant acts ***unlawfully*** for purposes of this element of Plaintiffs' claim either by acting in a way that is prohibited by, or failing to act in a way that is required by, a "safety statute," which is a statute that imposes a specific legal requirement for the protection of others. To act "unlawfully," a Defendant must act culpably.  Mere negligence is not sufficient. [37]

Not all unlawful conduct can form the basis for a nuisance claim—only violations of particular "safety statutes" can do that.  It is not your function to determine what statutes qualify as a "safety statute" or what any statute requires of Defendants. That function is the Court's alone. Therefore, you may not find liability based on any unlawful conduct other than what I am about to describe to you in this instruction. After I instruct you about what conduct counts as "unlawful conduct" for purposes of Plaintiffs' nuisance claim, it is your function to determine whether each Plaintiff has proven by the greater weight of the evidence that a Defendant acted in the described unlawful manner.

In this case, a Defendant has committed unlawful conduct and violated a safety statute if that Defendant violated the requirements on which I will now instruct you.[38]

---

[36] OJI § 621.01; Taylor v. City of Cincinnati, 55 N.E.2d 724, 728 (Ohio 1944); City of Cincinnati v. Deutsche Bank Nat'l Tr. Co., 863 F.3d 474, 479 (6th Cir. 2017); United States v. Hill, 167 F.3d 1055, 1069 (6th Cir. 1999); OJI § 621.09; Brown v. Scioto Cty. Bd. of Commrs., 87 Ohio App. 3d 704, 713 (1993); Restatement (Second) of Torts § 821B, cmt. f.

[37] *Kramer v. Angels Path LLC*, 882 N.E.2d 47 at ¶ 19 (Ohio Ct. App. 2007) (citing Metzger v. Pennsylvania, Ohio & Detroit RR. Co., 146 Ohio St. 406 (1946)).

[38] In proposing this instruction, Defendants do not waive their argument that the statutes Plaintiffs rely on are not "safety statutes" containing a private right of action, as required to support such a claim.  *See* OJI § 621.01; *Uland v. S.E. Johnson Companies*, No. WM-97-005, 1998 WL 123086, at *5 (Ohio Ct. App. Mar. 13, 1998) (liability for an absolute nuisance based on the violation of a safety statute is equivalent to liability for negligence per se); *Smrtka v. Boote*, 88 N.E.3d 465, 474 (Ohio Ct. App. 2017) ("A negligence per se claim is not appropriate when 'the legislative enactment in question does not define a civil liability but instead only

---

makes provision to secure the safety or welfare of the public.'" (quoting *Moreland v. Oak Creek OB/GYN, Inc.*, 970 N.E.2d 455, 462 (Ohio Ct. App. 2005)).  A statute is a "safety statute" only if it sets forth a "specific legal requirement for the protection of others." *Taylor v. City of Cincinnati*, 55 N.E.2d 724, 728 (Ohio 1944) (emphasis added).  A statute sets forth a "specific" requirement where "a jury may determine whether there has been a violation thereof by finding a single issue of fact." *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 201 (Ohio 1998).  Any "suspicious order" duty is not a "safety statute" for three reasons: *First*, the Court has already held, as to the "suspicious order duties," that the jury would need to make more than a single finding of fact to determine if those duties were violated.  *See* ECF No. 2483 at 29.  *Second*, there is no private right of action under the federal CSA, which cannot form the basis of a negligence *per se* claim.  *See* ECF No. 3177 at 52-53 (dismissing negligence *per se* claims based on the federal CSA and Ohio law); ECF No. 1680 at 23-25; *Smith v. Hickenlooper*, 164 F. Supp. 3d 1286, 1290-91 (D. Colo. 2016).  *Third*, the violation of a regulation is patently insufficient for *per se* liability.  *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 202–03 (Ohio 1998) ("[T]o bestow upon administrative agencies the ability to propose and adopt rules that alter the proof requirements between litigants 'would be tantamount to an unconstitutional delegation of legislative authority, since administrative agencies cannot dictate public policy.'").  Accordingly, while any instruction on absolute public nuisance based on unlawful conduct must identify the specific statutory requirements the Court finds are a proper basis for liability, Plaintiffs are not entitled to any such instruction because they have failed to identify a safety statute.

### Public Nuisance – Controlled Substance Security Requirements[39]

Plaintiffs contend that each Defendant acted unlawfully by failing to monitor and report to the United States Drug Enforcement Administration, or DEA, "suspicious" orders for its prescription opioid medicines. "Suspicious" orders include orders of unusual size, orders deviating substantially from a normal pattern, or orders of unusual frequency, and it is up to the Registrant to determine how it applies these factors to identify suspicious orders in its operations and overall security system. A Defendant's filling of orders that it receives for prescription opioid medications is not, on its own, unlawful.

A Defendant does not have any obligations with respect to suspicious order monitoring unless that Defendant is a DEA Distribution[40] Registrant. Federal regulations governing the registration process state that DEA Distribution Registrants shall "provide effective controls and procedures to guard against theft and diversion" which is called the "Security Requirement."[41] Federal regulations contain various security requirements, including a requirement to "design and operate a system to disclose" to each DEA Distribution Registrant "suspicious orders of controlled

---

[39] Defendants continue to maintain, as a matter of law, that they owe no legal obligation or duty to Plaintiffs to monitor or report suspicious orders or that such a theory can form the basis for Plaintiffs' absolute public nuisance theory, and further that their interpretation of the Controlled Substances Act as set forth in Motions for Summary Judgment and response to Plaintiffs' Motion for Summary Judgment related to duties under the Controlled Substances Act (*e.g.,* Dkts. 1883, 1885, 2159) are correct. Accordingly, Defendants continue to maintain that Plaintiffs' public nuisance theory is legally flawed and continue to object to any holding to the contrary. *See* Dkt. 2159. Defendants also renew their objection to any ruling that they have a "duty" to refuse to ship suspicious orders without first undertaking an investigation. *See, e.g.*, *id.*

[40] Technically, "non-practitioner registrants" but modified for clarity.

[41] 21 C.F.R. § 1301.71(a) ("All applicants and registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances."); 21 U.S.C. §823(b).

substances."[42]  A registrant may be in substantial compliance with the Security Requirement "after evaluation of the overall security system and needs of the applicant or registrant,"[43] taking into consideration multiple factors including: the type of activity being conducted; the type, form and quantity of controlled substances handled; location of the premises; building construction and physical security controls; and the adequacy of the Registrant's system for monitoring the receipt, manufacture, distribution and disposition of controlled substances in its operations.[44]  Whether or not a Distribution Registrant has substantially complied with the Security Requirement therefore depends upon multiple factors and an overall evaluation of the Distribution Registrant's security system and needs.

One of many factors considered for substantial compliance with the Security Requirement is the Registrant's system for disclosing suspicious orders to the Distribution Registrant.

Federal laws and regulations do not specify a particular type of system to be used to disclose suspicious orders to the Distribution Registrant or how that system should be designed or operated.   A DEA Distribution Registrant may "design and operate" any system based upon its own needs that provides effective controls against diversion and discloses to the Distribution Registrant suspicious orders of controlled substances. You have heard evidence that the systems

_____

[42] 21 C.F.R. § 1301.74(b) ("The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances.  The registrant shall inform the Field Division Office of the [DEA] in his area of suspicious orders when discovered by the registrant.  Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.").

[43] 21 C.F.R. § 1301.71(b) ("Substantial compliance with the standards set forth in Secs. 1301.72-1301.76 may be deemed sufficient by the Administrator after evaluation of the overall security system and needs of the applicant or registrant. In evaluating the overall security system of a registrant or applicant, the Administrator may consider any of the following [listed] factors as he may deem relevant . . . .").

[44] *Id.*

designed and operated by the Defendants, in some instances, differed from one another.  This is not evidence that a given system violated any laws.  In determining whether or not a Defendant that is a DEA Distribution Registrant substantially complied with the Security Requirement, you must only consider each such Defendant's overall security system in light of their respective needs, including overall physical and operational controls and whether the system discloses suspicious orders received by that Defendant for its opioid medications.

The federal laws and regulations refer to "diversion."  Diversion means the transfer of a controlled substance from legitimate "medical, scientific, research, or industrial channels"[45] to illegal channels.  Legitimate medical channels include prescriptions written by a licensed medical prescriber for a legitimate medical purpose and in the usual course of the prescriber's professional practice.[46]  Consequently, legitimate medical channels also include the shipping of orders of controlled substances to pharmacies to fill prescriptions for legitimate medical purposes.

A Defendant that is a DEA Distribution Registrant does not have any obligation with respect to orders for prescription opioid medicines that were not placed directly with that Defendant.  You may not find that a Defendant that is a DEA Distribution Registrant unreasonably and substantially interfered with the right to public health by failing to monitor and/or report suspicious orders of prescription opioid medicines that were placed by customers with other Defendants or third parties.

---

[45] 21 U.S.C. § 823(b)(1) ("The Attorney General shall register an applicant to distribute a controlled substance in schedule I or II unless he determines that the issuance of such registration is inconsistent with the public interest. In determining the public interest, the following factors shall be considered: (1) maintenance of effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels . . . .").

[46] 21 C.F.R. § 1306.04(a) ("A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.").

You may find that orders shipped by a Defendant unreasonably and significantly interfered with the right to public health only if you conclude by the greater weight of the evidence that those orders:  (1) were "suspicious" under the directions I have given you; (2) were placed directly with that Defendant; (3) were not reported to the DEA; (4) were ultimately shipped to ~~Cuyahoga~~ Trumbull County or ~~Summit~~ Lake County—depending on which Plaintiff's claim you are considering—without a sufficient investigation by the Defendant; and (5) were subsequently diverted by the pharmacy placing the order from a lawful to an unlawful channel of distribution or use.  You may not rely on orders that do not meet these conditions to find that a Defendant unreasonably and significantly interfered with the right to public health.  Even if you find that these conditions were met as to certain orders placed with a Defendant, you are not required to conclude that the Defendant's conduct unreasonably and significantly interfered with the right to public health.  Rather, it is merely a factor that you may consider in determining, based on the totality of the circumstances and my other instructions, whether the Defendant's conduct unreasonably and significantly interfered with the right to public health.

32

**Public Nuisance – Controlled Substance Dispensing Requirements**[47]

Plaintiffs contend that each Defendant acted unlawfully when it dispensed prescription opioid medications to patients with prescriptions from licensed medical providers.

It is lawful for a licensed pharmacy to provide prescription opioid medications when one of its pharmacists is presented with prescriptions written by a licensed medical prescriber for a legitimate medical purpose and in the usual course of the prescriber's professional practice. Under federal law, the "responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription."[48]  It is unlawful for a pharmacist to fill a prescription she knows was not issued in the usual course of professional treatment.[49]

A pharmacist may not lawfully fill a prescription for opioid medication if she knows that the prescription lacked a legitimate medical purpose [, including if she believes it is highly probable that the prescription does not have a legitimate medical purpose but consciously takes deliberate action to avoiding confirming that belief.][50]  However, a pharmacist is not required to refuse to fill a prescription based on mere suspicion.[51]  It is not the role of a pharmacist to

---

[47] Defendants continue to maintain that Plaintiffs' dispensing-based public nuisance theory is legally flawed and continue to object to any holding to the contrary.  *See* Doc. 3340.

[48] 21 C.F.R. § 1306.04(a)*; see also* Ohio Admin. Code §4729-5-21(A); *id.* §4729-5-30(A).

[49] 21 C.F.R. § 1306.04(a).

[50] "Deliberate avoidance is not a standard less than knowledge; it is simply another way that knowledge may be proven."  *United States v. Mitchell,* 681 F.3d 867, 877 (6th Cir. 2012) (quoting *United States v. Severson*, 569 F.3d 683, 689 (7th Cir.2009)).

The bracketed portion of the instruction should only be read if Plaintiffs introduce evidence sufficient to support a finding that a pharmacist acted with willful blindness.

[51] 21 C.F.R. § 1306.04(a).

independently evaluate whether a prescription, including a prescription for opioid medication, is medically appropriate or to second-guess a prescriber's judgment in that regard.

Only licensed pharmacists may engage in the practice of pharmacy in Ohio—not the companies that employ them.[52]  Under Ohio law, the practice of pharmacy includes "interpreting prescriptions," "[d]ispensing drugs," "[p]erforming drug utilization reviews," "[a]dvising an individual . . . with regard to the individual's drug therapy," and other "pharmacist care requiring specialized knowledge, judgment, and skill derived from the principles of biological, chemical, behavioral, social, pharmaceutical, and clinical sciences."[53]

---

[52] *See* Ohio Rev. Code §4729.27; *see also* 21 C.F.R. §1300.01 (defining pharmacist as an *individual*, not a corporation); Ohio Admin. Code §4729:1-1-01(M) (same).

[53] Ohio Rev. Code §4729.01(B).

### Public Nuisance – Causation

Under either of the two ways of proving public nuisance that I have described to you—that is, intentional conduct or unlawful conduct—a plaintiff must prove by the greater weight of the evidence that a particular defendant's conduct caused an unreasonable interference with the right to public health. Legal causation involves both proof that the defendant's conduct was necessary to bring about the harm and that the connection between the conduct and the harm is direct, foreseeable, and substantial.  We call the first idea "but for" cause, and the second idea "proximate cause."[54]

#### *But-for causation*

To find that a Defendant's conduct caused an unreasonable interference with the right to public health, you must find that the injury would not have occurred without the Defendant's conduct.  In this case, if the unreasonable interference with the right to public health would have occurred even if a Defendant did not distribute opioids to pharmacies in ~~Cuyahoga and Summit~~Lake and Trumbull counties in a manner that you find to be (1) intentional and unreasonable or (2) unlawful, then that Defendant's conduct is not a but-for cause.

---

[54] *Comcast Corp. v. Nat. Ass'n of African American Owned Media, Inc.* 140 S. Ct. 1009, 1014 (2020) (black letter requirement of but for causation); *Cincinnati v. Beretta USA Corp.*, 95 Oh. St. 3d 416, 426-27 (2002) (adopting proximate causation standard from *Holmes v. Security Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992)). Plaintiffs  have conceded that both are required.  ECF 2204 at 33 ("Under Ohio law, a plaintiff must show that a defendant's wrongful conduct was a cause—i.e., both a cause-in-fact and a legal/proximate cause—of damage to Plaintiffs. *In re Gadolinium-Based Contrast Agents Prod. Liab. Litig.*, 2013 WL 593993, at *3 (N.D. Ohio Feb. 15, 2013).").

In deciding whether Plaintiffs have proved but for causation, you may consider evidence of reasons other than the Defendant's alleged conduct for any interference with the right to public health.[55]

Plaintiffs allege that Defendants interfered with the right to public health by wrongfully shipping suspicious orders of prescription opioid medications to their affiliated pharmacies, or by wrongfully dispensing prescription opioid medications when presented with facially valid prescriptions from licensed prescribers.  A Defendant has not caused an unreasonable interference with the right to public health when the prescription opioids it ships are distributed and dispensed to legitimate medical channels.  Similarly, pharmacists are permitted to dispense prescriptions in legitimate medical channels.  Therefore, prescription opioid medications distributed by a Defendant to an affiliated pharmacy, which then dispensed the medication to

---

[55] Defendants reserve the right to propose specific instructions directing the jury to consider evidence at trial pointing to specific alternative causes.  Plaintiffs have already identified alternative causes in their complaints.  *See* ~~Summit County, Second Amended Complaint ¶ 9 (""by a marketing scheme involving the false and deceptive marketing of prescription opioids, which was designed to dramatically increase the demand for and sale of opioids and opioid prescriptions."); id. ¶ 15 ("By providing misleading information to doctors about addiction being rare and opioids being safe even in high doses, then pressuring them into prescribing their products by arguing, among other things, that no one should be in pain, the [opioid manufacturers and non-pharmacy distributors] created a population of addicted patients who sought opioids at never-before-seen rates. The scheme worked, and through it the [opioid manufacturers [and non-pharmacy distributors] caused their profits to soar as more and more people became dependent on opioids."); id. ¶ 17 (""[P]ill mills," often styled as "pain clinics," sprouted nationwide and rogue prescribers stepped in to supply prescriptions for non-medical use. These pill mills, typically under the auspices of licensed medical professionals, issue high volumes of opioid prescriptions under the guise of medical treatment."); see also id. ¶ 710 ((effect of southern Ohio pill mills in Summit County).~~  *See* Lake Complaint ¶11-12 (setting forth allegations of fraudulent marketing by manufacturers); Trumbull Complaint ¶ 11-12 (same); Lake Complaint ¶273-75 (same); Trumbull Complaint ¶273-75 (same); Lake Complaint ¶¶717-723 (alleging distributor misconduct); Trumbull Complaint ¶¶717-723 (same).

patients with valid prescriptions, cannot be considered a but-for cause of unreasonable interference with the right to public health. [56]

*Proximate causation*

In addition to proving but-for causation, each Plaintiffs must prove by the greater weight of the evidence that the Defendant's conduct was a proximate cause of an unreasonable and significant interference with a right to public health.  Proximate cause is an act or failure to act that in the natural and continuous sequence directly produced the injury, and without which it would not have occurred. A Defendant is not responsible for any injury to another if its conduct is a remote cause and not a proximate or direct cause.[57] There must be some direct relation between the injury asserted and the injurious conduct alleged." To find that a Defendant's conduct was a cause of a nuisance, you must find that there is a direct causal relationship between the Defendant's conduct and the nuisance.

If you do not find that a Defendant's conduct was a direct cause of the nuisance, you must find that plaintiffs have failed to prove causation. This is so even if you find that the nuisance was foreseeable, and even if you find that Defendants intentionally caused the course of events leading to the nuisance.

*Intervening causes*

If you find that the independent and unforeseeable conduct of a person other than the defendant produced the unreasonable interference with the right to public health , the chain of causation beginning with the defendant's conduct is broken.[58]  We call that interruption in a

---

[56] *See* 21 C.F.R. § 1306.04(a).

[57] 12-gd-50004-DAP, ECF 161-5 (citing OJI §§ 405.01, 405.03 and ORC § 2307.73); *Berretta*, 95 Oh. St. 3d 416, *Id.* at ¶ 37, 768 N.E.2d 1136.

[58] *Adams v. Lift-a-Loft Corp.*, 1999 WL 33105610, *3 (S.D. Oh.  Nov. 12, 1999); OJI 405.05(4).  *Federal Steel & Wire v. Ruhlin Constn.*, 45 Ohio St.3d 171, 175 (1989); *id.* at 177

chain of causation an "intervening cause."  An intervening cause does not break the chain of

causation unless it was unforeseeable to the defendant when the defendant engaged in the

conduct which plaintiffs alleged caused the unreasonable interference with the right to public

health.[59] Harm is foreseeable if a reasonable person who had the same information available to

the defendant would have foreseen or expected the harm to occur as a result of conduct.[60]

Foreseeability, however, may not be established merely by proof that opioid abuse and addiction

existed in the community.  It must have been foreseeable to Defendants that that the prescription

opioid medications they shipped or dispensed would be diverted from legitimate medical,

scientific, or industrial channels to illegal channels.

If you find an intervening cause in this case, you must find that Defendants were not the

cause of any unreasonable and significant interference with the right to public health in

Plaintiffs' counties.

*Multiple causes*

---

(discussing Restatement (Second of Torts §§ 448 and 449).  *See also Feichtner v. City of Cleveland*, 95 Ohio App. 3d 388 (1994); *Evans v. Ohio State Univ.*, 112 Ohio App. 3d 724 (1996); *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 617 N.E.2d 1068,1071-72 (1993)  (quoting *Cascone v. Herb Kay Co.*, 6 Ohio St. 3d 155, 451 N.E.2d 815, 819 (1983)); *Berdyck v. Shinde*, 66 Ohio St.3d 573, 613 N.E.2d 1014, 1025 (1993); *Thropp v. Bache Halsey Stuart Shields, Inc.*, 650 F.2d 817, 821 (6th Cir. 1981); *Chapman v. Milford Towing & Service*, 499 Fed. Appx. 437, 442-43 (6th Cir. 2012).  *See also* Restatement (Second) of Torts § 442 (considerations to determine if an intervening cause is a superseding cause).

[59] Adapted from OJI, 405.05.4.  *See Cascone v. Herb Kay Co.*, 6 Ohio St. 3d 155, 159, 451 N.E.2d 815, 819 (1983) ("Whether an intervening act breaks the causal connection between the negligence and the injury, thus relieving one of liability for his negligence, depends upon whether that intervening actor was a conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who was guilty of the negligence.") (citing Restatement (Second) of Torts § 440).

[60] Adapted from OJI 401.07.  *See also Cascone v. Herb Kay Co.*, 6 Ohio St. 3d 155, 160, 451 N.E.2d 815, 819 (1983).

If you find that multiple wrongdoers each contributed to a combined harm, a Plaintiff must prove by the greater weight of the evidence that each Defendant's conduct was a substantial factor in creating the unreasonable interference with the right to public health.[61]  A Defendant's conduct is a "substantial" factor if it has such an effect that a reasonable person would regard that conduct as the cause or one of the causes of an unreasonable interference with a right to public health. In determining whether a Defendant's conduct is a substantial factor in bringing about harm to another, you should consider: (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; (c) lapse of time.[62]

---

[61] Ohio has adopted the "substantial factor" causation standard from the Restatement (Second) of Torts.  *See, e.g., Pang v. Minch*, 559 N.E.2d 1313, 1324 (Ohio 1990) ("Where a plaintiff suffers a single injury as a result of the tortious acts of multiple defendants, the burden of proof is upon the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm." (citing Restatement (Second) of Torts § 433B(1)); *Horton v. Harwick Chem. Corp.*, 653 N.E.2d 1196 (Ohio 1995) (adopting § 431); *Person v. Gum*, 455 N.E.2d 713, 716 (Ohio App. 1983) (concluding that a defendant was not liable because its conduct was not "a 'substantial factor' in bringing about appellee's harm" and citing Restatement of Torts 2d § 431); *see also In re Bendectin Litig*. 857 F.2d 290, 310 (6th Cir. 1988).  Plaintiffs acknowledged: "Under Ohio law, when multiple wrongdoers each contribute to a combined harm, courts routinely apply the 'substantial factor' test to the issue of causation." ECF 2204 at 33 (emphasis added); *see id*. at n.8 (collecting authority).

Under these principles, "In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. Except as stated in § 432 (2)  this is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm."  Restatement (Second) Torts § 431, cmt. a (emphases added).  So to hold any particular defendant liable, the jury must find that but for the defendants' combined conduct, the harm would not have occurred, and that the particular defendant's conduct was a substantial rather than negligible factor in causing it.  *See also* OJI 405.01(3)(B).

[62] Restatement (Second) Torts § 431, cmt. a; Restatement (Second) of Torts § 433.

If you find that a Plaintiff has proved that a Defendant's conduct was a substantial factor in directly causing an unreasonable interference with the right to public health, but was not the only cause of the interference, you should find that the Defendant caused the unreasonable interference.  You should next determine whether responsibility can be divided between different causes, under the instructions I will soon give you about apportionment.

**Public Nuisance – Statute of Limitations**[63]

Plaintiffs' claims for public nuisance are subject to a four-year statute of limitations. Because Plaintiffs first sued Defendants~~CVS Indiana, L.L.C., CVS Rx Services, Inc., Rite Aid of Maryland, Walgreens Boots Alliance, Inc., Walgreens Co., Walgreen Eastern Co., Inc., and Walmart Inc. on~~ on ~~April 25, 2018~~March 18, 2019, they may only recover against these Defendants based on conduct that occurred within the previous four years, after ~~April 25, 2014~~March 18, 2015. You may not base any finding of liability against any Defendant on conduct of that Defendant before ~~April 25, 2014~~March 18, 2015.

~~Plaintiffs first sued Giant Eagle/HBC Service Company and Discount Drug Mart, Inc. on May 18, 2018. You may not base any finding of liability against Giant Eagle/HBC Service Company and Discount Drug Mart, Inc. on conduct of that Defendant before May 18, 2014.~~

---

[63] Defendants continue to maintain that Plaintiffs' claims are subject to the Ohio Product Liability Act and (among other effects) governed by a two-year statute of limitations. Without waiving this argument but recognizing that the Court has rejected it, this instruction reflects the four-year limitations period from Ohio Rev. Code § 2305.09.

Defendants also acknowledge this Court's ruling that no statute of limitations applies to claims for public nuisance. Dkt. 2568 at 2. Defendants respectfully disagree and believe that jury should be instructed regarding limitations.

**Noerr-Pennington Doctrine[64]**

Plaintiffs have presented evidence that certain Defendants participated in trade associations, including the Healthcare Distribution Alliance ("HDA"), and engaged in lobbying efforts, including supporting legislation (such as the "Marino Bill"), filing amicus briefs, challenging regulations, and opposing certain DEA actions.  You cannot find any Defendant liable based on that conduct because it is protected by the First Amendment. The Constitution and laws of this country give everyone the right, whether acting alone or with others, to petition or appeal to all government agencies for official governmental action. The law recognizes that, when people petition or appeal to government agencies, they will seek official governmental action that favors them and that may also be unfavorable to others.

The Constitution and laws of this country also give everyone the right, whether acting alone or with others, to participate in groups that take collective action to pursue the interests of their members. The law also recognizes that, when people participate in groups that take collective action to pursue the interests of their members, they might pursue interests that favor them and that may also be unfavorable to others.

Concerted action by trade associations for the purpose of influencing or promoting official legislative, judicial, or administrative action is protected by the First Amendment and is not "unlawful activity" that can support public nuisance liability.  If you find that any of the Plaintiffs' injuries were the result of efforts by a Defendant merely to participate in a trade association, or to

---

[64] *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140 (1961); *United Mine Works of Am. v. Pennington*, 381 U.S. 657, 671 (1965); *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508-11 (1972); *Horsemen's Benev. & Protective Ass'n v. Penn. Horse Racing Comm'n*, 530 F. Supp. 1098, 1099 (E.D. Pa. 1982); 7 Bus. & Com. Litig. Fed. Cts. § 75:111 (4th ed.); 14 Bus. & Com. Litig. Fed. Cts. § 143:60 (4th ed.).

influence or promote official legislative, judicial or administrative action, then your verdict must be for the Defendants as to those injuries.

Finally, you cannot infer any sort of wrongdoing from the fact that Defendants have defended themselves in this litigation.  They have a constitutional right to do so.  You may not draw any negative conclusions about, or base any negative finding upon, the fact that Defendants chose to exercise that right.[65]

---

[65] *See Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2002) (The "Due Process Clause prohibits a State from punishing an individual without first providing that individual with an opportunity to present every available defense." (internal quotations and citations omitted)); *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . ." (citation omitted)).

**Preemption**[66]

During this case you have heard evidence about the role of the FDA and DEA in regulating the conduct of the Defendants. I instruct you that FDA or DEA action or inaction is not dispositive, but is a factor you may consider in your deliberations.

In addition, because of the authority of those agencies and as a matter of federal law, there are certain kinds of conduct for which you may not impose liability.

Because federal law authorizes FDA-approved medications to be sold by licensed entities, and federal law authorizes distributors to distribute prescription opioid medications, you cannot hold a Defendant liable simply because it distributed, or did not stop distributing, prescription opioid medications approved by the DEA and pursuant to DEA registrations and state licenses.[67]  Similarly, you cannot hold a Defendant liable simply because its pharmacists dispensed, or did not stop dispensing, prescription opioid medications approved by the DEA and pursuant to DEA registrations and state licenses.[68]

---

[66] *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 538 (6th Cir. 1993).

[67] *Muscogee*, 1:18-op-45459, ECF No. 109, at 42; *Blackfeet*, 1:18-op-45749, ECF No. 56, at 15, Report and Rec.; *In Re Nat'l Prescription Opiate Litig*., 1:17-md-02804, ECF No. 1680, Order (adopting relevant portions of R&R); 21 U.S.C. § 355(j)(2)(A); *POM Wonderful LLC v. Coca-Cola Co*., 573 U.S. 102, 112 (2014); *Mut. Phar. Co., v. Bartlett*, 570 U.S. 472, 488 (2013); *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 612, 618 (2011); *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig*., 756 F.3d 917, 935-36 (6th Cir. 2014); *Strayhorn v. Wyeth Pharma*., 737 F.3d 378, 391 (6th Cir. 2014).

[68] *Id.*

44

**Public Nuisance – Apportionment**[69]

If you find that one or both Plaintiffs have established by the greater weight of the evidence that one or more Defendants proximately caused an unreasonable and significant interference with the right to public health that caused harm to one or both Plaintiffs, you will be asked to decide what percentage of the overall harm is attributed to: 1) each of the Defendants, 2) the Plaintiffs themselves, and 3) other entities and individuals that are not parties in this trial, but that you find were a substantial factor in causing a significant interference with the right to public health at issue in this trial.  There are two steps to this inquiry.

First, you must decide whether Defendants have shown by the greater weight of the evidence that Plaintiffs' harm can be apportioned among actors other than the Defendants, including, but not limited to, opioid manufacturers, internet pharmacies, non-party pharmacies, other pharmaceutical distributors, physicians, or users of opioids.  A harm can be apportioned if responsibility for the harm can be divided among the substantial factors for that harm in any logical or reasonable basis.[70]

Second, if the harm can be apportioned, you must decide what percentage of fault can be assigned to the people and entities listed on the verdict form.  That list includes the Plaintiffs, the Defendants, and other people and entities that are not party to this lawsuit. The percentages of responsibility you assign to the people and entities listed on the verdict form should add up to

---

[69] ~~*In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 2572~~Defendants recognize the Court's ruling that apportionment is not an issue that will be submitted to the jury, but instead will be decided by the Court in the second phase of trial, assuming the jury finds liability.  *See* Doc. 3579.  Defendants respectfully disagree and believe that jury should be instructed regarding apportionment.

[70] *Pang v. Minch*, 559 N.E.2d 1313, 1323 (Ohio 1990).

100%.  If you do not believe an entity or individual caused any portion of the Plaintiffs' harm, you should assign that entity 0%.

Once you have decided issues concerning apportionment, you will render a verdict on Defendants' affirmative defenses.  Apportionment and the affirmative defenses are all separate issues that should be considered individually.

**Unclean Hands[71]**

Defendants have raised as an affirmative defense the allegation that Plaintiffs have come into court with unclean hands. You should find in favor of Defendants on this defense if you believe that Defendants have proved, by the greater weight of the evidence, that a Plaintiff has acted reprehensibly, unconscionably, or in a grossly unfair manner in connection with the subject matter of its nuisance claim.

The only conduct on which you may make a finding of unclean hands is conduct directly related to the subject matter at issue in this litigation.

Unclean hands does not mean that someone is a bad person in general or in some other respect; you may find unclean hands only if you find a direct connection between any reprehensible, unconscionable, or grossly unfair conduct and the facts of this case.

---

[71] Because Ohio does not have a form jury instruction on this issue, the proposed instruction is a modified version of the California pattern instruction. *See* 2 Cal. Affirmative Def. § 45:18 (2d ed.); *see also Crick v. Starr*, 2009-Ohio-6754, ¶ 38 (Ohio Ct. App. 2009) (to support defense of unclean hands, the plaintiff's conduct must be "reprehensible, grossly inequitable, or unconscionable"); *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 2013-Ohio-3867 ¶ 16 (Ohio 2013) (unclean hands defense requires showing that plaintiff acted "reprehensibly" with respect to subject matter of litigation).

**Waiver by Estoppel**[72]

Defendants have raised as an affirmative defense the doctrine of waiver by estoppel.

Waiver by estoppel applies if Defendants can show by the greater weight of the evidence that a

Plaintiff's actions were inconsistent with an intent to claim a right, and have misled Defendants

to their prejudice.

In order to establish waiver by estoppel, Defendants need not show the intent behind

Plaintiffs' actions.  Waiver by estoppel focuses on Plaintiffs' actions, rather than Plaintiffs' state

of mind.

---

[72] *See Natl. City Bank v. Rini*, 834 N.E.2d 836, 840 (Ohio Ct. App. 2005) (setting forth
elements of the defense).

48

**In Pari Delicto[73]**

Defendants have raised an affirmative defense of the doctrine of *in pari delicto*. The

doctrine of *in pari delicto* applies if the Defendants prove by the greater weight of the evidence

that a Plaintiff knew or should have known of the risk of harm for which it now seeks recovery,

had it within its power to protect the public by preventing the risk of harm, and failed to take

such preventative steps.

---

[73] *See Lattea v. City of Akron*, 458 N.E.2d 868, 876 (Ohio Ct. Ap. 1982) (doctrine of *in pari delicto* applied where government "knew or should have known . . . of the risk of the sidewalk collapsing . . . and it had it within its power to protect the public by stopping Ruhlin's work until adequate safety precautions were taken"); *Sharon Inv. Corp. v. the Spaghetti Place, Inc*, 1981 WL 3923, at *3 (Ohio Ct. App. Apr. 1, 1981) ("The common law defense of 'in pari delicto' is an affirmative defense.").

**Laches[74]**

Defendants have raised as an affirmative defense the doctrine of Laches. Laches applies if Defendants can show by the greater weight of the evidence that Plaintiffs failed to assert a right for an unreasonable and unexplained length of time despite actual or constructive knowledge of the wrongful conduct under circumstances that are prejudicial to Defendants.

---

[74] *See State ex rel. Beard v. Hardin*, 153 Ohio St.3d 571, 2018-Ohio-1286, 109 N.E.3d 1174 (2018); *KB Resources, LLC v. Patriot Energy Partners, LLC,* 7th Dist. No. 17 CO 0002, 2018-Ohio-2771, 116 N.E.3d 728, ¶ 102, *appeal not allowed sub nom. KB Resources, L.L.C. v. Patriot Energy Partners, L.L.C.*, 153 Ohio St.3d 1505, 2018-Ohio-4285, 109 N.E.3d 1260, ¶ 102 (2018).

~~*Summit County v. Purdue Pharma, L.P.* (18-op-5090)~~
~~*Cuyahoga County v. Purdue Pharma, L.P.* (17-op-45004)~~
*Lake County v. Purdue Pharma L.P., et al.* (18-op-45032)
*Trumbull v. Purdue Pharma L.P., et al.* (18-op-45079)

# **Defendants' Proposed Verdict Form**

**PUBLIC NUISANCE**

**A1a1.**

**Has ~~Summit~~ Lake County proven by the greater weight of the evidence that any of the following Defendants are unreasonably and significantly interfering today with a right to public health in ~~Summit~~ Lake County through their distribution of prescription opioid medications?**

| | | |
|---|---|---|
| CVS Pharmacy, Inc. | Yes _____ | No _____ |
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| CVS TN Distribution, L.L.C. | Yes _____ | No _____ |
| Ohio CVS Stores L.L.C. | Yes _____ | No _____ |
| ~~Discount Drug Mart, Inc.~~ | ~~Yes _____~~ | ~~No _____~~ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| ~~Rite Aid of Maryland~~ | ~~Yes _____~~ | ~~No _____~~ |
| Rite Aid Hdqtrs. Corp. | Yes _____ | No _____ |
| Rite Aid of Ohio, Inc. | Yes _____ | No _____ |
| Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center | Yes _____ | No _____ |
| Walgreens Boots Alliance, Inc. | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walgreen Eastern Co., Inc. | Yes _____ | No _____ |
| Walmart Inc. | Yes _____ | No _____ |

**A1a2.**

51

**Has Lake County proven by the greater weight of the evidence that any of the following Defendants are unreasonably and significantly interfering today with a right to public health in Lake County through their dispensing of prescription opioid medications?**

| | | |
|---|---|---|
| CVS Pharmacy, Inc. | Yes _____ | No _____ |
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| CVS TN Distribution, L.L.C. | Yes _____ | No _____ |
| Ohio CVS Stores, L.L.C. | Yes _____ | No _____ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid Hdqtrs. Corp. | Yes _____ | No _____ |
| Rite Aid of Ohio, Inc. | Yes _____ | No _____ |
| Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center | Yes _____ | No _____ |
| Walgreens Boots Alliance, Inc. | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walgreen Eastern Co., Inc. | Yes _____ | No _____ |
| ~~Walgreen Co.~~ | ~~Yes~~ | ~~No~~ |
| Walmart Inc. | Yes _____ | No _____ |

*If you answered "yes," as to any Defendant for either Question A1a1 or A1a2, please move on to Question A1b.  If you marked "no" for any Defendant on both question A1a1 and A1a2, please mark "no" for that Defendant in A1b as well.  If you marked "no" for all Defendants in both Question A1a1 and A1a2, please skip the following questions and proceed to Question A6a.*

**A1b.**

**Has ~~Summit~~ Lake County proven by the greater weight of the evidence that any of the following Defendants are unreasonably and significantly interfering today with a right to public health in ~~Summit~~ Lake County either (a) intentionally and unreasonably; or (b) unlawfully? If you marked "no" for any Defendant on both Question A1a1 and A1a2, you should mark "no" for that Defendant in this question as well.**

| | | |
|---|---|---|
| CVS Pharmacy, Inc. | Yes _____ | No _____ |
| CVS Indiana, L.L.C. | Yes _____ | No _____ |

| | | |
|---|---|---|
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| CVS TN Distribution, L.L.C. | Yes _____ | No _____ |
| Ohio CVS Stores L.L.C. | Yes _____ | No _____ |
| ~~Discount Drug Mart, Inc.~~ | ~~Yes _____~~ | ~~No _____~~ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid Hdqtrs. Corp. | Yes _____ | No _____ |
| Rite Aid of Ohio, Inc. | Yes _____ | No _____ |
| Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center | Yes _____ | No _____ |
| ~~Rite Aid of Maryland~~ | ~~Yes _____~~ | ~~No _____~~ |
| Walgreens Boots Alliance, Inc. | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walgreen Eastern Co., Inc. | Yes _____ | No _____ |
| ~~Walgreen Co.~~ | ~~Yes _____~~ | ~~No _____~~ |
| Walmart Inc. | Yes _____ | No _____ |

*If you answered "yes," as to any Defendant for Question A1b, please move on to Question A2.  If you marked "no" for all Defendants in Questions A1b, please skip the next questions and proceed to Question A6.*

**A2.**

**If you answered question A1b "yes" as to a particular Defendant, has ~~Summit~~ Lake County proven by the greater weight of the evidence that the Defendant's conduct in distributing or dispensing prescription opioid medications is a but-for and proximate cause of the interference with the right to public health in Lake~~Summit~~ County? If you marked "no" for a Defendant in Question A1b, you should mark "no" for that Defendant in this question as well.**

| | | |
|---|---|---|
| CVS Pharmacy, Inc. | Yes _____ | No _____ |
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| CVS TN Distribution, L.L.C. | Yes _____ | No _____ |

| | | |
|---|---|---|
| Ohio CVS Stores L.L.C. | Yes _____ | No _____ |
| ~~Discount Drug Mart, Inc.~~ | ~~Yes _____~~ | ~~No _____~~ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid Hdqtrs. Corp. | Yes _____ | No _____ |
| Rite Aid of Ohio, Inc. | Yes _____ | No _____ |
| Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center | Yes _____ | No _____ |
| ~~Rite Aid of Maryland~~ | ~~Yes _____~~ | ~~No _____~~ |
| Walgreens Boots Alliance, Inc. | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walgreen Eastern Co., Inc. | Yes _____ | No _____ |
| ~~Walgreen Co.~~ | ~~Yes _____~~ | ~~No _____~~ |
| Walmart Inc. | Yes _____ | No _____ |

*If you marked "no" for all Defendants in Question A2, please skip the following questions and proceed to question A6a. If you answered "yes" for any Defendant in Question A2, please continue to Question A3.*

**A3.**[75]

---

[75] It is Defendants' position that neither harm caused by prescription opioids previously distributed by Defendants or illicit opioids are appropriate harm to consider when assessing Plaintiffs' forward-looking claim to abatement.  Because Defendants have ceased distributing opioid medications, this case proceeds only subject to Defendants' continuing objection, and the jury would be allowed to find causation based on prior distribution or illicit opioids only over Defendants' continuing objection.  However, Defendants interpret the Court's prior rulings to indicate that the Court plans to allow Plaintiff to present evidence of harms caused within their

**If you answered Question A2 "yes" for a Defendant, has ~~Summit~~ Lake County proven by the greater weight of the evidence that the Defendant's conduct is the but-for and proximate cause of an interference with the public health in ~~Summit~~ Lake County based on the abuse of <u>diverted prescription opioids</u>?  If you marked "no" for a Defendant in Question A2, you should mark "no" for that Defendant in this question as well.**

| | | |
|---|---|---|
| CVS Pharmacy, Inc. | Yes | No |
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| CVS TN Distribution, L.L.C. | Yes | No |
| Ohio CVS Stores L.L.C. | Yes _____ | No _____ |
| ~~Discount Drug Mart, Inc.~~ | ~~Yes~~ _____ | ~~No~~ _____ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid Hdqtrs. Corp. | Yes | No |
| Rite Aid of Ohio, Inc. | Yes | No |
| Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center | Yes _____ | No _____ |
| ~~Rite Aid of Maryland~~ | ~~Yes~~ _____ | ~~No~~ _____ |
| Walgreens Boots Alliance, Inc. | Yes | No |
| Walgreen Co. | Yes | No |
| Walgreen Eastern Co., Inc. | Yes | No |
| ~~Walgreen Co.~~ | ~~Yes~~ _____ | ~~No~~ _____ |
| Walmart Inc. | Yes _____ | No _____ |

**If you answered Question A2 "yes" for a Defendant, has ~~Summit~~ Lake County proven by the greater weight of the evidence that the Defendant's conduct is the but-for and proximate cause of an interference with the right to public health in ~~Summit~~ Lake County based on the abuse of <u>illicit, non-prescription opioids</u> such as**

---

county by both opioids distributed in their counties by Defendants in the past, as well as harms relating to consumption of illicit opioids such as heroin and Chinese fentanyl.  *See, e.g.,* Dkt. 2561, 2578.  Should such evidence be submitted over Defendants' objection, the jury should be questioned about what sort of harm it finds Defendants responsible to abate.

heroin or illicit fentanyl?  If you marked "no" for a Defendant in Question A2, you should mark "no" for that Defendant in this question as well.

| | | |
|---|---|---|
| CVS Pharmacy, Inc. | Yes _____ | No _____ |
| _____ CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| CVS TN Distribution, L.L.C. | Yes _____ | No _____ |
| Ohio CVS Stores L.L.C. | Yes _____ | No _____ |
| ~~Discount Drug Mart, Inc.~~ | ~~Yes _____~~ | ~~No _____~~ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid Hdqtrs. Corp. | Yes _____ | No _____ |
| Rite Aid of Ohio, Inc. | Yes _____ | No _____ |
| Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center | Yes _____ | No _____ |
| ~~Rite Aid of Maryland~~ | ~~Yes _____~~ | ~~No _____~~ |
| Walgreens Boots Alliance, Inc. | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |
| Walgreen Eastern Co., Inc. | Yes _____ | No _____ |
| _____ ~~Walgreen Co.~~ | ~~Yes _____~~ | ~~No _____~~ |
| Walmart Inc. | Yes _____ | No _____ |

*Please continue to Question A4.*

**A4.**

Did Defendants prove by the greater weight of the evidence that the injury to ~~Summit~~ **Lake** County from the interference with the right to public health can be apportioned to the wrongful conduct of anyone other than Defendants, such as ~~Summit~~ **Lake** County itself, opioid manufacturers, internet pharmacies, other non-party pharmacies, other pharmaceutical distributors, physicians, patients, or illegal opioid suppliers or users of illegal opioids?

Yes _____    No _____

*If you answered yes to Question A4, please proceed to Question A5.  If you answered no to Question A4, please skip Question A5 and proceed to Question A6.*

A5.

**State the percentage of the interference with the right to public health in ~~Summit~~ Lake County that you find is attributable to each of the following.  Your percentages must add up to 100%.  If you answered "no" for any Defendant in Question A2, you should assign that Defendant 0% in this question.**

**~~Summit~~ Lake County** _____

**Opioid
Manufacturers** _____

**Prescribing
Practitioners** _____

**Hospitals** _____

**Patients** _____

**Individuals who abuse opioids
 or use opioids illegally** _____

**Non-party pharmacies
(including
internet pharmacies)** _____

**Criminal opioid suppliers** _____

**Federal, state, and local
government entities, such
as the DEA and
the State Pharmacy Board** _____

**Non-Party Opioid Distributors,
such as AmerisourceBergen Drug Corp.,
Cardinal Health, Inc.,
 and McKesson Corp.** _____

**CVS Pharmacy, Inc.** _____

_____ **CVS Indiana, LLC** _____

**CVS Rx Service, Inc.** _____

**CVS TN Distribution, L.L.C.** _____

Ohio CVS Stores, L.L.C. _____     _____

~~Discount Drug Mart, Inc.~~ _____

Giant Eagle/
HBC Service Co.                              _____

Rite Aid Hdqtrs. Corp. _____     _____

Rite Aid of Ohio, Inc. _____     _____

Eckerd Corporation d/b/a
Rite Aid Liverpool Distribution Center       _____

~~Rite Aid of Maryland~~ _____

Walgreens Boots Alliance, Inc. _____     _____

Walgreen Co.                    _____     _____

Walgreen Eastern Co., Inc. _____     _____

Walmart Inc.                                  _____

Other                                          _____

TOTAL:                                        __100%__

*Please proceed to Question A6a.*

**A6a1.**

**Has ~~Cuyahoga~~ Trumbull County proven by the greater weight of the evidence that any of the following Defendants are unreasonably and significantly interfering today with a right to public health in Trumbull~~Cuyahoga~~ County through their distribution of prescription opioid medications?**

| | | |
|---|---|---|
| CVS Pharmacy, Inc. | Yes _____ | No ____ |
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| CVS TN Distribution, L.L.C. | Yes _____ | No _____ |
| Ohio CVS Stores, L.L.C. | Yes _____ | No _____ |
| ~~Discount Drug Mart, Inc.~~ | ~~Yes _____~~ | ~~No ____~~ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid Hdqtrs. Corp. | Yes _____ | No _____ |

| | | | |
|---|---|---|---|
| Rite Aid of Ohio, Inc. | Yes | No |
| Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center | Yes | No |
| ~~Rite Aid of Maryland~~ | ~~Yes~~ | ~~No~~ |
| Walgreens Boots Alliance, Inc. | Yes | No |
| Walgreen Co. | Yes | No |
| Walgreen Eastern Co., Inc. | Yes | No |
| ~~Walgreen Co.~~ | ~~Yes~~ | ~~No~~ |
| Walmart Inc. | Yes | No |

**A6a2.**

**Has Trumbull County proven by the greater weight of the evidence that any of the following Defendants are unreasonably and significantly interfering today with a right to public health in Trumbull County through their dispensing of prescription opioid medications?**

| | | | |
|---|---|---|---|
| CVS Pharmacy, Inc. | Yes | No |
| CVS Indiana, L.L.C. | Yes | No |
| CVS Rx Services, Inc. | Yes | No |
| CVS TN Distribution, L.L.C. | Yes | No |
| Ohio CVS Stores, L.L.C. | Yes | No |
| Giant Eagle/HBC Service Co. | Yes | No |
| Rite Aid Hdqtrs. Corp. | Yes | No |
| Rite Aid of Ohio, Inc. | Yes | No |
| Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center | Yes | No |
| Walgreens Boots Alliance, Inc. | Yes | No |
| Walgreen Co. | Yes | No |
| Walgreen Eastern Co., Inc. | Yes | No |
| ~~Walgreen Co.~~ | ~~Yes~~ | ~~No~~ |

| Walmart Inc. | Yes | No |
|---|---|---|

*If you answered "yes" as to any Defendant for either Question A6a1 and A6a2, please move on to Question A6b.  If you marked "no" for all Defendants in (1) both Question A6a1 and A6a2 and also A1a1 and A1a2 or A1b, or (2) both Question A6a1, A6a2 and Question A2, please sign and date the verdict form and return it to the bailiff.  If you marked "no" for all Defendants on both Question A6a1 and A6a2 but "yes" for at least one Defendant on Question A2, please proceed to Section B.*

**A6b.**

**Has Trumbull~~Cuyahoga~~ County proven by the greater weight of the evidence that any of the following Defendants are unreasonably and significantly interfering today with a right to public health in Trumbull ~~Cuyahoga~~ County either (a) intentionally and unreasonably; or (b) unlawfully? If you marked "no" for any Defendant on both Question A6a1 and A6a2, please mark "no" for that Defendant in this question as well.**

| CVS Pharmacy, Inc. | Yes | No |
|---|---|---|
| CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| CVS TN Distribution, L.L.C. | Yes | No |
| Ohio CVS Stores, L.L.C. | Yes | No |
| ~~Discount Drug Mart, Inc.~~ | ~~Yes _____~~ | ~~No _____~~ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid Hdqtrs. Corp. | Yes | No |
| Rite Aid of Ohio, Inc. | Yes | No |
| Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center | Yes | No |
| ~~Rite Aid of Maryland~~ | ~~Yes _____~~ | ~~No _____~~ |
| Walgreens Boots Alliance, Inc. | Yes | No |
| Walgreen Co. | Yes | No |
| Walgreen Eastern Co., Inc. | Yes _____ | No |
| ~~Walgreen Co.~~ | ~~Yes _____~~ | ~~No _____~~ |

Walmart Inc.                    Yes _____    No _____

*If you answered "yes" as to any Defendant for Question A6b, please answer Question A7.  If you marked "no" for all Defendants in (1) ~~both~~ Questions A1a 1 and A1a2, or Question A1b **and also** A6b, or (2) both Questions A2 **and** A6b, please sign and date this verdict form and return it to the bailiff. If you marked "no" for all Defendants in Question A6b, but "yes" for at least one defendant in Question A2, please proceed to Section B.*

**A7.**

**If you answered question A6b "yes," as to a particular Defendant, has Trumbull~~Cuyahoga~~ County proven by the greater weight of the evidence that the Defendant's conduct in distributing or dispensing prescription opioid medications is a but-for and proximate cause of the interference with the right to public health in Trumbull~~Cuyahoga~~ County? If you marked "no" for any Defendant on Question A6b, please mark "no" for that Defendant in this question as well.**

_____    CVS Pharmacy, Inc.                          Yes _____    No _____

_____    CVS Indiana, L.L.C.                          Yes _____    No _____

          CVS Rx Services, Inc.                        Yes _____    No _____

_____    CVS TN Distribution, L.L.C.                  Yes _____    No _____

_____    Ohio CVS Stores, L.L.C.                      Yes _____    No _____

          ~~Discount Drug Mart, Inc.~~                 ~~Yes _____    No _____~~

Giant Eagle/HBC Service Co.              Yes _____    No _____

_____    Rite Aid Hdqtrs. Corp.                       Yes _____    No _____

_____    Rite Aid of Ohio, Inc.                       Yes _____    No _____

          Eckerd Corporation d/b/a
_____    Rite Aid Liverpool Distribution Center       Yes _____    No _____

          ~~Rite Aid of Maryland~~                     ~~Yes _____    No _____~~
_____

_____    Walgreens Boots Alliance, Inc.               Yes _____    No _____

          Walgreen Co.                                 Yes _____    No _____

          Walgreen Eastern Co., Inc.                   Yes _____    No _____
_____      ~~Walgreen Co.~~                           ~~Yes _____    No _____~~

Walmart Inc. Yes _____ No _____

*If you marked "yes" for any Defendant in Question A7, please proceed to Question A8.*
*If you marked "no" for all Defendants in (1) ~~both~~ Questions A1a ~~or~~1, A1a2, A1b **and***
*A7, or (2) both Questions A2 **and** A7, please sign and date this verdict form and return it*
*to the bailiff.  If you marked "no" for all Defendants in Question A7, but "yes" for a*
*Defendant in Question A2, please proceed to Section B.*

**A8.**[76]

**If you answered Question A7 "yes" for a Defendant, has Trumbull~~Cuyahoga~~**
**County proven by the greater weight of the evidence that the Defendant's conduct**
**is the but-for and proximate cause of an interference with the public health in**
**Trumbull~~Cuyahoga~~ County based on the abuse of diverted prescription opioids?  If**
**you marked "no" for a Defendant in Question A7, you should mark "no" for that**
**Defendant in this question as well.**

| | | |
|---|---|---|
| CVS Pharmacy, Inc. | Yes _____ | No _____ |
| _____CVS Indiana, L.L.C. | Yes _____ | No _____ |
| CVS Rx Services, Inc. | Yes _____ | No _____ |
| CVS TN Distribution, L.L.C. | Yes _____ | No _____ |
| Ohio CVS Stores, L.L.C. | Yes _____ | No _____ |
| ~~Discount Drug Mart, Inc.~~ | ~~Yes _____~~ | ~~No _____~~ |
| Giant Eagle/HBC Service Co. | Yes _____ | No _____ |
| Rite Aid Hdqtrs. Corp. | Yes _____ | No _____ |
| Rite Aid of Ohio, Inc. | Yes _____ | No _____ |
| Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center | Yes _____ | No _____ |
| ~~Rite Aid of Maryland~~ | ~~Yes _____~~ | ~~No _____~~ |
| Walgreens Boots Alliance, Inc. | Yes _____ | No _____ |
| Walgreen Co. | Yes _____ | No _____ |

_____

[76] Defendants reiterate their continuing objection noted with respect to Question A3.

Walgreen Eastern Co., Inc.                          Yes _____      No _____

~~Walgreen Co.~~                                    ~~Yes _____      No _____~~

Walmart Inc.                                        Yes _____      No _____

**If you answered Question A7 "yes" for a Defendant, has Trumbull~~Cuyahoga~~ County proven by the greater weight of the evidence that the Defendant's conduct is the but-for and proximate cause of an interference with the right to public health in Trumbull~~Cuyahoga~~ County based on the abuse of <u>illicit, non-prescription opioids</u> such as heroin or illicit fentanyl?  If you marked "no" for a Defendant in Question A7, you should mark "no" for that Defendant in this question as well.**

CVS Pharmacy, Inc.                                  Yes _____      No _____

CVS Indiana, L.L.C.                                 Yes _____      No _____

CVS Rx Services, Inc.                               Yes _____      No _____

CVS TN Distribution, L.L.C.                         Yes _____      No _____

Ohio CVS Stores, L.L.C.                             Yes _____      No _____

~~Discount Drug Mart, Inc.~~                        ~~Yes _____      No _____~~

Giant Eagle/HBC Service Co.                         Yes _____      No _____

Rite Aid Hdqtrs. Corp.                              Yes _____      No _____

Rite Aid of Ohio, Inc.                              Yes _____      No _____

Eckerd Corporation d/b/a
Rite Aid Liverpool Distribution Center              Yes _____      No _____

~~Rite Aid of Maryland~~                            ~~Yes _____      No _____~~

~~Walgreens Boots Alliance, Inc.~~                  Yes _____      No _____

Walgreen Co.                                        Yes _____      No _____

Walgreen Eastern Co., Inc.                          Yes _____      No _____

~~Walgreen Co.~~                                    ~~Yes _____      No _____~~

Walmart Inc.                                        Yes _____      No _____

*Please continue to Question A9.*

**A9.**

63

**Did Defendants prove by the greater weight of the evidence that the injury to Trumbull~~Cuyahoga~~ County from the interference with the right to public health can be apportioned to the wrongful conduct of anyone other than Defendants, such as Trumbull~~Cuyahoga~~ County itself, opioid manufacturers, internet pharmacies, other non-party pharmacies, other pharmaceutical distributors, physicians, patients, or illegal opioid suppliers or users of illegal opioids?**

    Yes _____  No _____

*If you answered yes to Question A9, please proceed to Question A10.  If you answered no to Question A9, please skip Question A10 and proceed to Section B.*

**A10.**

   **State the percentage of the interference with the right to public health in Trumbull~~Cuyahoga~~ County that you find is attributable to each of the following. Your percentages must add up to 100%.  If you answered "no" for any Defendant in Question A7, you should assign that Defendant 0% in this question.**

      **Trumbull~~Cuyahoga~~ County**     _____

    **Opioid
Manufacturers**       _____

    **Prescribing
Practitioners**       _____

    **Hospitals**          _____

    **Patients**           _____

    **Individuals who abuse opioids
 or use opioids illegally**   _____

    **Non-party pharmacies
(including
internet pharmacies)**    _____

    **Criminal opioid suppliers**   _____

    **Federal, state, and local
government entities, such
as the DEA and
the State Pharmacy Board**  _____

    **Non-Party Opioid Distributors,
such as AmerisourceBergen Drug Corp.,**

Cardinal Health, Inc.,
   and McKesson Corp.                      _____

   **CVS Pharmacy, Inc.**                  _____

_____ CVS Indiana, LLC         _____

   CVS Rx Service, Inc.                     _____

   **CVS TN Distribution, L.L.C.** _____

_____ **Ohio CVS Stores, L.L.C.**  _____
   ~~Discount Drug Mart, Inc.~~ ~~_____~~

   Giant Eagle/
   HBC Service Co.                          _____

_____ **Rite Aid Hdqtrs. Corp.** _____

_____ **Rite Aid of Ohio, Inc**. _____

_____ **Eckerd Corporation d/b/a
                Rite Aid Liverpool Distribution Center** _____ ~~Rite Aid of
~~Maryland~~ ~~_____~~

   **Walgreens Boots Alliance, Inc.**       _____

   Walgreen Co.                _____         _____

   **Walgreen Eastern Co., Inc.**          _____

   Walmart Inc.                             _____

   Other                                    _____

   **TOTAL:**                              _____**100%**_____

*Please proceed to Section B.*

## B.  <u>AFFIRMATIVE DEFENSES</u>

**B1.  Unclean Hands**

   Have Defendants established by the greater weight of the evidence that ~~Summit~~ Lake
County has acted reprehensibly, unconscionably, or in a grossly unfair manner in connection
with the subject matter of its nuisance claim?

                  Yes _____    No _____

Have Defendants established by the greater weight of the evidence that ~~Trumbull~~Cuyahoga County has acted reprehensibly, unconscionably, or in a grossly unfair manner in connection with the subject matter in connection with its nuisance claim?

Yes _____     No _____

*Please proceed to Question B2.*

**B2.  Waiver by Estoppel**

Have Defendants established by the greater weight of the evidence that ~~Summit~~ Lake County's actions were inconsistent with an intent to claim a right, and that it misled Defendants to their prejudice?

Yes _____     No _____

Have Defendants established by the greater weight of the evidence that Trumbull ~~Cuyahoga~~ County's actions were inconsistent with an intent to claim a right, and that it misled Defendants to their prejudice?

Yes _____     No _____

*Please proceed to Question B3.*

**B3.  In Pari Delicto**

Have Defendants established by the greater weight of the evidence that ~~Summit~~ Lake County knew or should have known of the risk of harm for which it now seeks recovery, had it within its power to protect the public by preventing the risk of harm, and failed to take such preventative steps?

Yes _____     No _____

Have Defendants established by the greater weight of the evidence that ~~Trumbull~~Cuyahoga County knew or should have known of the risk of harm for which it now seeks recovery, had it within its power to protect the public by preventing the risk of harm, and failed to take such preventative steps?

Yes _____     No _____

**B4.  Laches**

Have Defendants established by the greater weight of the evidence that ~~Summit~~ Lake County failed to assert a right for an unreasonable and unexplained length of time despite actual or constructive knowledge of the wrongful conduct under circumstances that are prejudicial to Defendants?

Yes _____     No _____

66

Have Defendants established by the greater weight of the evidence that Trumbull~~Cuyahoga~~ County failed to assert a right for an unreasonable and unexplained length of time despite actual or constructive knowledge of the wrongful conduct under circumstances that are prejudicial to Defendants?

Yes \_\_\_\_\_      No \_\_\_\_\_

*Once you have completed the verdict form, please sign and date it, and return it to the bailiff.*

SO SAY WE ALL, this _____ of _____, 2020,

_____
Foreperson