**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION | ) | **CASE NO. 1:17-MD-2804** |
| OPIATE LITIGATION | ) | |
| | ) | **JUDGE POLSTER** |
| **THIS DOCUMENT RELATES TO:** | ) | |
| *"All Cases"* | ) | |
| | ) | |
| | ) | **ORDER ESTABLISHING** |
| | ) | **COMMON BENEFIT FEE FUND** |
| | ) | **AND DIRECTING CERTAIN** |
| | ) | **PAYMENTS** |

This Order addresses the "hold-back" amounts that the Court ordered the Track One Plaintiffs to place into escrow, and also touches on Common Benefit fees and expenses.

In December of 2019, after several defendants in the Track One trial reached monetary settlements with Plaintiffs Cuyahoga and Summit Counties, the Court directed the Counties to place into escrow a portion of their settlement funds. *See* docket no. 2980. At that time, the Court explained it was "weighing whether it is appropriate to enter an order addressing the issue of MDL common benefit fees and expenses, and if so, the appropriate 'hold-back' assessment amount;" but the Court "had not reached a decision on these issues." *Id.* at 1. Accordingly, the Court directed "the Track One Plaintiffs [to] place into escrow 7.5% of any settlement funds they receive or received from any defendant in this case," from which a common benefit assessment (if any) would later be paid. *Id.* at 2. That money – totaling about $21.3 million – has been sitting in escrow ever since.

About a month after the Court's hold-back Order, the Plaintiffs' Executive Committee

("PEC") moved for entry of an Order establishing a common benefit fee fund.  After receiving substantial briefing from dozens of interested parties, and invaluable counsel from expert consultant Professor William B. Rubenstein, the Court observed:

> there is a wide consensus confirming the accuracy of the PEC's statements that: (1) "scores of attorneys from the PEC firms and others" have "performed [work] for the common benefit of plaintiffs in the [MDL] proceedings," as well as in other opioid cases, reply brief at 3, 1 (docket no. 3212); and (2) those attorneys are entitled to some measure of "reimbursement and compensation of expenses and work incurred and performed for the common benefit" of those plaintiffs, *id.* at 1.  The Court shares in this consensus.

Docket no. 3397 at 2.

Nonetheless, the Court concluded that neither imposing a common benefit assessment or establishing a common benefit fund was appropriate ***at that time***.  *Id.*  Among other reasons, the Court observed that, "[b]ecause of the inordinate complexity of this MDL, the Court is hesitant to enter a 'one-size-fits-all' common benefit order applicable by default to every possible settlement permutation."  *Id.* at 5.  Indeed, the parties agreed it was "likely that a global settlement [would] provide a separate fund and/or other mechanisms for payment of both common benefit and private contractual fees and costs," which could "moot the need for a common benefit order."  *Id.* at 4, 3 (internal quotation marks omitted).

The PEC and the Track One Counties have now submitted a motion asking the Court to allow distribution of the $21.3 Million held in escrow.  *See* docket no. 3762 ("*Agreed Motion*").  The motion reflects an agreement between the Track One Counties and the PEC, alone, on how the fees associated with the Track One settlements should be divided amongst them, and asks the Court to permit that division.  The PEC asks for the following, and the Counties agree:

- a 5% Common Benefit Fee assessment against *only* the settlement funds received by Summit and Cuyahoga Counties in the Track One bellwether trial;

- establishment of a Common Benefit Fee fund to receive the 5% Summit/Cuyahoga fee assessment, as well as possible future fee assessments, to be held pending further Orders of this Court.

- a 2.5% Common Benefit Expense assessment against *only* the settlement funds received by Summit and Cuyahoga Counties in the Track One bellwether trial; and

- payment of the 2.5% Summit/Cuyahoga expense assessment to the PEC MDL Capital Account as partial reimbursement of Track One litigation expenses.[1]

- termination of the escrow requirements.

The PEC also makes clear it is *not* seeking a global common benefit order applicable to any other

case. Specifically, the PEC explains that:

- although it may later seek Orders imposing common benefit fee and expense assessments on future settlements and judgments – and may seek different assessments on different settlements and judgments – the PEC is not requesting any such Orders at this time;

- with regard to any future common benefit Order, the PEC will not seek to make it applicable to settlement proceeds or judgments payable to a State Attorney General, nor to any state court plaintiff that is entirely outside of the Court's jurisdiction (with certain understandable exceptions); and

- with regard to any future common benefit Order, the PEC will not seek to make it applicable to settlement proceeds if the settlement already provides for a separate fund for full payment

---

[1] Regarding the 2.5% expense assessment of $7.1 Million, the PEC asks that it be distributed directly to the PEC MDL Capital Account, instead of first going into the Common Benefit Fund and then being distributed from there. The Court permits this procedure with the understanding, and upon the condition, that none of this money will be used to reimburse any individual attorney or law firm. Given the PEC's averments that the $7.1 Million equals only about half of the amount the PEC advanced for expenses in the Track One bellwether case, and that all of these expenses met the Court's requirements, the Court is not overly concerned that these funds would reimburse an attorney for expenses that were not properly incurred. *See* Declaration of Peter H. Weinberger (docket no. 3761-1); docket no. 358 (Order Regarding Plaintiff Attorneys' Fees and Expenses – Protocol for Work Performed and Expenses Incurred). Nonetheless, reimbursement to individual counsel of common benefit expenses will occur only after formal application and the expenses are audited and approved. The Court will reconcile the $7.1 Million payment as necessary at that time.

3

of common benefit fees and expenses (except with respect to plaintiffs who opt out).
*See* docket no. 3765.

The Court appreciates the narrow purpose of the *Agreed Motion* and agrees that the specific requests made are appropriate at this time.  Accordingly, the Court now **ORDERS** as follows.

1.      **Establishment of MDL No. 2804 Common Benefit Fund.**

An interest-bearing account will be established at a financial institution to be proposed by the PEC, under this Court's ongoing jurisdiction, to receive the Summit/Cuyahoga assessment and any appropriate future assessments, to be held pending further Orders of this Court.  These funds will be held subject to the direction of this Court and are hereinafter referred to as the "Common Benefit Fund."  No party or attorney has any individual right to any of these funds except to the extent of amounts directed to be disbursed to that party or attorney by order of this Court.  These funds do not constitute the separate property of any party or attorney and are not subject to garnishment or attachment for the debts of any party or attorney except when and as directed to be disbursed to a specific person as provided by Court order.

a.      The Court will appoint by subsequent Order upon PEC recommendation a qualified certified public accountant (the "Common Benefit Fund CPA") to maintain this account and act as escrow agent, keep detailed records of all deposits and withdrawals, and to prepare tax returns and other tax filings.

b.      If the Common Benefit Fund ultimately exceeds the amount needed to make all future payments of Court-approved common benefit fees and expenses, the Court will order the remaining funds be returned to those plaintiffs whose settlements have contributed to the

4

Common Benefit Fund, including Summit and Cuyahoga Counties. Any such refund will be made in proportion to the amount of the contributions.

c.        Nothing in this Order shall be deemed to modify, alter, or change the term of any fee contract between plaintiffs' counsel and their individual clients.

**2.        The CT1 Common Benefit Fee Assessment.**

Summit and Cuyahoga Counties shall, within seven (7) days of the Order appointing the Common Benefit Fund CPA, deposit an amount equivalent to five percent (5%) of their recoveries from their bellwether settlement and previously subject to this Court's Order Regarding Track One Settlement Funds (docket no. 2980). Specifically, a payment of 5% ($14.2 million) of the net monetary recovery received by Summit County and Cuyahoga County will be made as a contribution to the MDL No. 2804 Common Benefit Fund, to be based on each County's share of the total recovery. The Common Benefit Fund shall be funded from fees charged pursuant to each counties' contract with private counsel.

**3.        Expense Reimbursement.**

Summit and Cuyahoga Counties shall, within seven (7) days of the Order appointing the Common Benefit Fund CPA, pay to the PEC MDL Capital Account an amount equivalent to two-and-a-half percent (2.5%) of their recoveries from their bellwether settlement and previously subject to this Court's Order Regarding Track One Settlement Funds (docket no. 2980). Specifically, a payment of 2.5% ($7.1 million) of the net monetary recovery received by Summit County and Cuyahoga County will be paid to the PEC MDL Capital Account, to be based on each County's

share of the total recovery.  The unreimbursed portion of these CT1 expenses paid by the PEC may be submitted for payment, as appropriate, from future common benefit assessments ordered by this Court.

4.      **Further Proceedings and Continuing Jurisdiction.**

This Order is without prejudice to any other assessments of or awards of fees and costs as may be ordered by this Court under any jurisdictional mechanism including Rule 23(h), the common benefit doctrine, a Court-approved agreement among the parties to any global or comprehensive settlement with any defendant, or that may be provided by contract between attorneys and clients.

Nothing in this Order precludes the parties from negotiating, agreeing upon, and proposing a different fee structure in a global settlement of claims against any defendant that provides a different fund or mechanism for fairly compensating common benefit work and costs.  Nothing in this Order precludes any party from objecting to or opposing any future proposal regarding common benefit assessments or awards.

Any disputes or requests for relief from or modification of this Order will be decided by this Court in the exercise of its continuing jurisdiction over the parties subject to this Order, and its authority and discretion under the common benefit doctrine.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** July 22, 2021

6