UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*All actions* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

### CASE MANAGEMENT ORDER
### APPLICABLE TO CASES OF "<u>NON-PARTICIPATING SUBDIVISIONS</u>"
### ASSERTING CLAIMS AGAINST SETTLING DEFENDANTS

Defendants McKesson Corporation, Cardinal Health, Inc., AmerisourceBergen Corporation, and Johnson & Johnson[1] (collectively, "Settling Defendants") have announced global settlements with "Participating Subdivisions,"[2] subject to sign-on periods and final approvals by the Parties. The Court now enters this Case Management Order ("CMO") making clear it will lift *in part* the stay issued by this Court in its April 11, 2018 Case Management Order One (docket no. 232). As set forth below, the stay will no longer apply to the extent that, beginning in approximately six months, each Non-Participating Subdivision that is litigating a case in the MDL shall be required to comply with this CMO. The stay shall remain in effect with respect to all other

---

[1] For purposes of this Order, references to Johnson & Johnson include all of its present and former affiliated companies named as defendants in MDL cases, including Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc., Noramco, Inc., and Tasmanian Alkaloids Pty. Ltd.

[2] Any capitalized terms used but not otherwise defined in this CMO shall have the same meaning as in the Distributor Settlement Agreement, including those terms defined in Exhibit R of the Distributor Settlement Agreement. For the avoidance of doubt, the term Distributor Settlement Agreement refers to the Settlement Agreement, dated July 21, 2021, entered into between and among the Settling States, Settling Distributors, and Participating Subdivisions (as those terms are defined therein). Essentially, a "Non-Participating Subdivision" is simply an eligible Subdivision that chooses not to participate in the Settlement Agreements.

litigation activity (including discovery) until authorized by a subsequent CMO to be issued at an appropriate time after full compliance with this CMO.

This CMO applies to MDL cases already filed by any Non-Participating Subdivision, and also to cases brought by a Non-Participating Subdivision that are newly filed in, removed to, or transferred to the MDL after the entry of this CMO (collectively, "NPS Cases"). In all such NPS Cases, the Court orders as follows.

The parties' global settlements were announced on July 21, 2021, and they contain various contingencies such that a final determination of which entities are Participating Subdivisions and which are Non-Participating Subdivisions will not become final until approximately February 1, 2022 (the "Determination Date"). Accordingly, this CMO becomes effective in each MDL case filed by a Non-Participating Subdivision on the later of these two dates: (a) the Determination Date; or (b) the date thirty (30) days after the Non-Participating Subdivision's case is filed in, removed to, or transferred to the MDL, if such date is after the Determination Date (collectively, the "CMO Effective Date").

I. Every Non-Participating Subdivision shall comply with all requirements of this Court's June 19, 2018 Fact Sheet Implementation Order (docket no. 638), including the production of documents and information required by the Plaintiff Fact Sheet. In addition, to the extent necessary to make all information in a Fact Sheet current, every Non-Participating Subdivision shall complete, execute and serve an *updated* Plaintiff Fact Sheet within sixty (60) calendar days of the CMO Effective Date, including production of additional documents as necessary.

II. Within ninety (90) calendar days of the CMO Effective Date:

(A) Each Non-Participating Subdivision shall serve on Settling Defendants a document identifying with specificity, based on facts known or reasonably available to it at the time, the

following: (1) the nature and amount of all damages or other relief sought, including alleged abatement or civil penalties; (2) a computation of any monetary relief sought, including alleged abatement, and the basis for the amounts included in that computation; (3) as to claims for past expenditures, whether the alleged amounts were paid or reimbursed through a grant, insurance, or other third-party source; and (4) as to any claim involving future expenditure of money, including expenditures for the provision of services, the entities that will make the expenditures, when and how long those entities will make the expenditures, and the nature and amount of the expenditures, including how they will address any and all alleged harms.

(B)     Each Non-Participating Subdivision seeking any form of relief based directly or indirectly upon opioid orders that Non-Participating Subdivisions contend the Settling Defendants should not have shipped, pursuant to a suspicious order regulation or alleged common law duty related to suspicious orders, shall serve on Settling Defendants a document identifying: (1) those opioid orders that are within their current knowledge (including the date of the order, the product(s) ordered, and the quantity ordered); (2) the distributor, pharmacy, other dispensing entity, or other entity that placed each such order; and (3) the Non-Participating Subdivision's basis for identifying the orders, including any sources relied upon and algorithms used.

(C)     Each Non-Participating Subdivision shall additionally produce all non-privileged documents relied upon in identifying or calculating the claimed relief.

(D)     Any Non-Participating Subdivision that intends to proffer one or more expert opinions to identify or substantiate the relief sought shall identify its experts and provide a detailed summary of each expected report, including all pertinent calculations and identification of sources relied upon.

III.    Within one hundred twenty (120) calendar days of the CMO Effective Date:

(A) Each Non-Participating Subdivision shall complete and serve an affidavit signed by the Non-Participating Subdivision and its counsel attesting that the Non-Participating Subdivision has complied with all requirements of the MDL Court's Fact Sheet Implementation Order and with all other requirements of this CMO, including the requirements for production of documents.

IV. If a Non-Participating Subdivision has not timely completed and served the affidavit described above, any Settling Defendant may send the Non-Participating Subdivision a deficiency letter. If, after thirty (30) calendar days of the date a deficiency letter was sent, the Non-Participating Subdivision has not cured the relevant defects in compliance with the MDL Court's Fact Sheet Implementation Order and this CMO, any Settling Defendant may request a show cause hearing before the MDL Court as to why the Non-Participating Subdivision's claims should not be dismissed with prejudice or any other appropriate relief should be granted.

V. Nothing in this CMO prohibits, or suspends the obligation of, timely supplementation or amendment of any information supplied based on subsequently-obtained knowledge or factual information that the Non-Participating Subdivision did not have access to and could not reasonably have obtained for inclusion in the required disclosures. This opportunity to supplement does not relieve each Non-Participating Subdivision of its responsibility to comply with this CMO fully and completely on the basis of information within its possession or that reasonably can be obtained at the time it is first required to comply.

VI. Because the goal of the multidistrict litigation statute is to avoid needless duplication of effort and expense, nothing in this CMO prevents reasonable access by each Non-Participating Subdivision to the work product of the PEC. Case-specific discovery obligations for the production of data and information, consistent with those imposed by the Court on the parties in

all of its prior discovery Orders of general application, will apply to all NPS cases. All parties in NPS cases must familiarize themselves with all prior MDL discovery orders of general application. After discovery in NPS cases is authorized by a subsequent CMO, the parties shall conduct discovery as appropriate under the Federal Rules of Civil Procedure. Nothing in this Order relieves any party of its prior or ongoing discovery and production obligations under other Orders of this Court.

    **IT IS SO ORDERED.**

*/s/ Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** July 23, 2021