# EXHIBIT A

## EXHIBIT R

### Agreement on Attorneys' Fees, Expenses and Costs

This Agreement on Attorneys' Fees, Expenses and Costs ("*Fee Agreement*") is entered between McKesson Corporation, Cardinal Health, Inc., and AmerisourceBergen Corporation (collectively, the "*Settling Distributors*"), and the Plaintiffs' Executive Committee appointed in the multidistrict litigation in the Northern District of Ohio, National Prescription Opiate Litigation, No. 1:17-MD-2804 ("*MDL PEC*"), in connection with the Distributor Settlement Agreement ("*Distributor Agreement*"). This Fee Agreement becomes effective on the Effective Date of the Distributor Agreement or the date that the Consent Judgments anticipated under the Distributor Agreement become final in 25 Settling States (whichever is later). However, costs specified in Sections II.I and II.I.4 of this Fee Agreement that are to be funded pre-Effective Date by the Settling Distributors are effective upon agreement in writing with the Settling Distributors.

**I.  Definitions.**

A.  This Fee Agreement incorporates all defined terms in the Distributor Agreement, unless otherwise defined herein, and shall be interpreted in a manner consistent with the Distributor Agreement.

B.  "*Attorney*." Any of the following retained through a legal contract: a solo practitioner, a multi-attorney law firm, or other legal representative of a Participating Subdivision.

C.  "*Attorney Fee Fund*." An account consisting of funds allocated to pay attorneys' fees approved pursuant to Section II of this Fee Agreement established by Order of, and under the ongoing jurisdiction of, the MDL Court, as provided below.

D.  "*Common Benefit Fund*." The sub fund of the Attorney Fee Fund described in Section II.C.

E.  "*Contingency Fee Fund*." The sub fund of the Attorney Fee Fund described in Section II.D.

F.  "*Cost and Expense Fund Administrator*." The administrator appointed by the MDL Court to administer the MDL Expense Fund and Subdivision Cost Fund as provided in the Fee Agreement.

G.  "*Cost Funds*." Collectively, the MDL Expense Fund and Subdivision Cost Fund.

H.  "*Fee Entitlement*." Any right, entitlement or expectation, including but not limited to a fee contract, contingent fee contract, agreement, referral arrangement, co-counsel arrangement, State Back-Stop Agreement, or any other arrangement by which counsel could receive compensation or other consideration.

I.      "*Fee Panel*."  The three-person panel appointed by the MDL Court to administer the Attorney Fee Fund and its sub funds as provided in the Fee Agreement.

J.      "*Litigating Subdivision Cost Fund*."  The cost fund described in <u>Section II.E</u> herein.

K.      "*MDL Court*."  United States District Court for the Northern District of Ohio Eastern Division, Case No. 1:17-md-2804, Judge Dan Aaron Polster.

L.      "*MDL Expense Fund*."  The cost fund described in <u>Section II.F</u> below.

M.      "*MDL PEC*."  The Plaintiffs' Executive Committee appointed by the MDL Court.

N.      "*Non-Participating Litigating Subdivision*."  A Litigating Subdivision that is not a Participating Subdivision.

O.      "*Participating Litigating Subdivision*."  A Litigating Subdivision that is also a Participating Subdivision.

P.      "*Participation Agreement*."  An agreement executed by an Attorney that acknowledges the obligation to pay an appropriate MDL Common Benefit Assessment.

Q.      "*Qualifying Representation*."  Legal services provided for representation of a Participating Litigating Subdivision regarding Released Claims against Released Entities.

R.      "*State Back-Stop Agreement*."  Any agreement by a Settling State and private counsel for Participating Subdivisions in that State (or legislation enacted in that State) to provide, adjust, or guarantee attorneys' fees and costs, whether from the Attorney Fee Fund or any other source recognized in the agreement or legislation.

## II.    Fees and Costs.

A.      *Total Attorneys' Fees and Costs*.

1.      Total attorneys' fees and costs to be paid by Settling Distributors to Attorneys in each of the relevant Payment Years under this Fee Agreement shall be up to the following amounts, subject to the provisions set forth below, including with respect to the division of the Attorney Fee Fund into its sub funds:

|  | **Attorney Fee Fund** *(Contingency Fee Fund and Common Benefit Fund)* | **MDL Expense Fund** | **Litigating Subdivision Cost Fund** |
|---|---|---|---|
| **Payment Year 1** | $136,044,378.70 | $40,384,615.39 | $40,000,000 |
| **Payment Year 2** | $150,934,911.25 |  | $40,000,000 |
| **Payment Year 3** | $270,825,443.80 |  | $40,000,000 |
| **Payment Year 4** | $183,625,739.68 |  |  |

DISTRIBUTORS' 8.9.21
FORMATTING UPDATES

| Payment Year 5 | $183,625,739.69 | | |
|---|---|---|---|
| Payment Year 6 | $183,625,739.69 | | |
| Payment Year 7 | $183,625,739.69 | | |

2.      The sub funds within the Attorney Fee Fund shall include the Common Benefit Fund and the Contingency Fee Fund.  The Cost Funds shall include the MDL Expense Fund, and the Litigating Subdivision Cost Fund.  The State Counsel Fee Fund and the State Cost Fund shall be separate funds under the control of the Settling States.

3.      The Contingency Fee Fund and the Common Benefit Fund shall be administered by a Fee Panel to be appointed by the MDL Court that will be governed by the provisions of this Fee Agreement and shall design the process and procedures for the allocation of fees pursuant to this Fee Agreement and the MDL Court's Order.  The Cost Funds shall be administered by the Cost and Expense Fund Administrator to be appointed by the MDL Court who will be governed by the provisions of this Fee Agreement and shall design the process and procedures for the allocation of costs pursuant to this Fee Agreement and the MDL Court's Order.

4.      The fees and costs to be paid under this Fee Agreement are available for Attorneys engaged in Qualifying Representations only.  Fees and costs to be paid under this Fee Agreement are not available prior to the Effective Date of the Distributor Agreement or if the Distributor Agreement does not proceed past the Settling Distributors' determination in Section VIII.A of the Distributor Agreement.  Fees and costs to be paid under this Fee Agreement are not available for representation of Non-Participating Subdivisions or Non-Litigating Subdivisions and are not available for representation of private hospitals, third-party payors, NAS claimants, personal injury/wrongful death claimants, or any entity other than Participating Litigating Subdivisions.  In addition, fees and costs under this Fee Agreement are not available for representation of any individual or entity in matters other than those claims against Released Entities, but may include a reasonable share of representations that involve development of facts for pursuit of opioid-related claims against multiple defendants in the pharmacy, manufacturing, and distribution chain.

5.      Payments due to the Attorney Fee Fund and the Cost Funds from the Settling Distributors under this <u>Section II</u> will be allocated among the Settling Distributors as follows:  McKesson — 38.1%; Amerisource — 31.0%; Cardinal — 30.9%.  A Settling Distributor's sole responsibility for payments under this Fee Agreement shall be to make its share of each payment.  The obligations of the Settling Distributors in this Fee Agreement are several and not joint.  No Settling Distributor shall be responsible for any portion of another Settling Distributor's share.

B.      *Attorney Fee Fund and Sub Funds*.

1.      There shall be a split of the Attorney Fee Fund into the Contingency Fee Fund and the Common Benefit Fund.  The split shall be 40% to the Contingency Fee Fund and 60% to the Common Benefit Fund.

2.      In no event shall Settling Distributors be required to pay more into the Attorney Fee Fund in any Payment Year than the maximum amount specified for that Payment Year in Section II.A.1, which amounts are reflected in Exhibit M to the Distributor Agreement.  The amounts allocated to the Contingency Fee Fund and the Common Benefit Fund set by the Fee Panel shall be subject to the reductions and offsets set forth below.

3.      Awards of fees from the Contingency Fee Fund shall be available to Attorneys with Qualifying Representations of Participating Litigating Subdivisions eligible to receive an allocation under the Distributor Agreement, as set forth in Exhibit G to the Distributor Agreement, and shall be made applying the Mathematical Model attached as Exhibit A to this Fee Agreement ("*Mathematical Model*").  The collection of the data and calculations for the Mathematical Model has been a cooperative effort among private counsel for a large number of Litigating Subdivisions.  The analysis has been spearheaded by Joseph Tann and Andrew Arnold.  The Fee Panel is encouraged to continue working with those counsel in application of the Model.  The Fee Panel shall oversee the application of the Model and resolve any questions or disputes concerning the eligibility of an Attorney to participate as required in Section II.G.  The Panel is empowered to hear disputes concerning and ensure the accuracy of the mathematical calculation.

4.      As to awards from the Contingency Fee Fund, there shall be no right of appeal.

5.      Any appeal of an award of the Fee Panel from the Common Benefit Fund will be made to the MDL Court and be reviewed under an abuse of discretion standard.

C.      *Common Benefit Fund.* (60% of the Attorney Fee Fund.)

1.      Funds in the Attorney Fee Fund shall be allocated to the Common Benefit Fund according to the schedule set forth below, subject to the adjustments described in Section II.C.5.  The payments are to be made on the following yearly schedule, subject to the adjustments set forth below:

| | |
|---|---|
| Payment Year 1 | $81,626,627.22 |
| Payment Year 2 | $90,560,946.75 |
| Payment Year 3 | $162,495,266.28 |
| Payment Year 4 | $110,175,443.79 |
| Payment Year 5 | $110,175,443.79 |
| Payment Year 6 | $110,175,443.79 |
| Payment Year 7 | $110,175,443.79 |
| **Total:** | **$775,384,615.41** |

2.      The Common Benefit Fund shall be available to compensate Attorneys engaged in Qualifying Representations of Participating Litigating Subdivisions who:

a.      have performed work for the common benefit of all subdivisions pursuant to the guidelines established by Judge Polster set forth in MDL 2804 and the Order dated June 19, 2018, under docket number 636, which is included herein by reference; and

b.      satisfy the eligibility criteria set forth in Section II.G.

For purposes of Common Benefit Fund distribution, notwithstanding Section II.A.4 above, Attorneys representing Tribal Nations litigating against the Settling Distributors that have reached a settlement for Released Claims with Settling Distributors and/or Released Entities and meet the eligibility criteria in Section II.G shall be eligible.

3.      The Common Benefit Fund shall be overseen by the Fee Panel, which shall determine the allocation of funds to eligible Attorneys consistent with this Fee Agreement and the June 19, 2018 Order.

4.      In assessing the benefits that an Attorney has conferred to Participating Subdivisions (including non-Litigating Subdivisions) and/or Tribal Nations for purposes of any compensation decision, the Fee Panel shall give significant weight to the extent to which (i) the Attorney and his or her clients have contributed to increasing (or reducing) the Initial Participation Tier achieved through participation in the Distributor Agreement; (ii) the Attorney and his or her clients have contributed to increasing (or reducing) the amounts achieved under Incentive Payments A-D through participation in the Distributor Agreement; and (iii) the Attorney and his or her clients have contributed to the potential triggering of any suspension, reduction, or offset of Payment amounts under the Distributor Agreement.  The Fee Panel may also consider additional fee recoveries the Attorney may potentially obtain, including, but not limited to, from State Back-Stop Agreements, representations of States or Tribal Nations, representations of other clients in opioids-related matters, or through the representation of Subdivision clients, whether they participated in the Distributor Agreement or not.  It is the intent of this provision to recognize that the goal of the Distributor Agreement is to provide for maximum participation by the Subdivisions, maximum abatement funding for all Subdivisions nationally, and the maximum peace for Released Entities.  Therefore, representing a Non-Participating Subdivision does not further the goal of the Distributor Agreement and should not be considered Common Benefit because it does not increase funds available to Participating Subdivisions' abatement programs.  Representing Later Litigating Subdivisions is antithetical to the Distributor Agreement, detracts from Common Benefit, and is addressed by the ethics opinion discussed in Section II.I.4.  The Fee Panel shall consider this concept of "*common detriment*" set forth in this Section II.C.4 in all of its decisionmaking with respect to the allocation of the Attorney Fee Fund among Attorneys, as well as, in its discretion, any offsets provided to Settling Distributors as set forth in Section II.C.6.  The Fee Panel shall consider the totality of the Attorney's Participating Litigating Subdivisions as compared to the Attorney's Non-Participating Litigating

Subdivisions; the Parties recognize that, although the goal is for 100% participation, Attorneys with a higher number of clients have a higher probability of having one or more Non-Participating Litigating Subdivision client.  As used in this Section II.C.4, "*client*" or "*representing*" a Subdivision shall include any Litigating Subdivision as to which the Attorney has a Fee Entitlement.

5.      As set forth in Section II.C.6, the Fee Panel must consider the factors described in Section II.C.4 to determine how and whether to reduce the amounts to be paid by Settling Distributors under this Fee Agreement and to determine how to allocate funds among Attorneys. They may also, at their discretion, consider other factors.  Any reduction in payment obligation or credit to be given a Settling Distributor in this Fee Agreement shall be applied against Payment Year 7 and working backwards.  Any reduction to an Attorney not credited to Settling Distributors shall be allocated to attorneys whose Litigating Subdivision clients participated in the settlement by the Initial Participation Date.

6.      The amounts to be provided as a credit or offset to Settling Distributors from the Common Benefit Fund shall depend on the relevant Participation Tier achieved, set forth in Exhibit H of the Distributor Agreement, as follows:

       a.      At Participation Tier 1 or below, the Common Benefit Fund payments to be paid by Settling Distributors shall be reduced as follows:

              (i)      With respect to any Attorney seeking payment from the Common Benefit Fund, the Fee Panel shall compare the aggregate allocation that Participating Litigating Subdivisions with which the Attorney has a Fee Entitlement would receive using the negotiating class allocation metrics with the aggregate amount that all Litigating Subdivisions (Participating and Non-Participating) with which the Attorney has a Fee Entitlement would receive using the negotiating class allocation metrics, provided that only Litigating Subdivisions in Settling States shall be considered for this ratio.  The Fee Panel will multiply the amount to be paid to that Attorney from the Common Benefit Fund by that ratio, reduce the Attorney's award by a maximum reduction of 15%, and the dollar amount of such reduction shall be deducted, dollar-for-dollar, from the amount owed by Settling Distributors to the Common Benefit Fund of the Attorney Fee Fund.

              (ii)      In the event that any Non-Participating Subdivision that is (a) under the jurisdiction of the MDL Court or (b) represented by an Attorney that is obligated to pay into the MDL Common Benefit Fund pursuant to a Participation Agreement, an order of the MDL Court, or any other arrangement settles with or wins a judgment against a Released Entity separate from the Distributor Agreement, and such settlement or judgment results in a common benefit fee assessment or fee payment into the MDL Common Benefit Fund during the time of Settling Distributors' obligation to pay fees under this Fee Agreement, Settling Distributors'

obligation to pay into the Common Benefit Fund shall be reduced dollar-for-dollar for any amount of such fee assessments or payments (in the aggregate based on all reductions in this <u>Section II.C.6.a.ii</u> that exceed the reductions in <u>Section II.C.6.a.i</u>).

(iii)    For the avoidance of doubt, in Tier 1 for each settlement or judgment with the Settling Distributors that results in an assessment or payment to the MDL Common Benefit Fund, that payment shall result in an offset for the Settling Distributors, unless the assessment or payment occurs after the Payment Date for Year 7.

b.    At Participation Tier 2, the Common Benefit Fund payments to be made by Settling Distributors shall be reduced only as follows:

(i)    <u>Reduction by the Fee Panel</u>.  With respect to all Attorneys making an application that seeks payment from the Common Benefit Fund, the Fee Panel shall, following a determination that an Attorney is eligible under <u>Section II.G</u>, apply the criteria specified in <u>Section II.C.4</u> in determining whether the lack of participation by Subdivisions with which an Attorney has a Fee Entitlement has resulted in a reduction in the Participation Tier achieved, reduction in benefit to Participating Subdivisions as a result of reductions in Incentive Payments A-D, and/or potential triggering of a suspension, reduction or offset under the Distributor Agreement.  If the Fee Panel concludes that such a reduction has occurred, it must consider (1) the relative size of the Non-Participating Subdivision, as adjusted by the severity measures reflected in Exhibit H (governing the Participation Tiers) of the Distributor Agreement, and the impact of its non-participation on the Distributor Agreement as a whole (including amounts of Incentive Payments and triggering of suspensions, reductions or offsets); (2) whether and by how much the payment to the Attorney from the Common Benefit Fund should be reduced as a result of the impact of such non-participation on Participating Subdivisions; and (3) whether some or all of said reduction should revert to Settling Distributors due to the reduction in peace obtained from the Distributor Agreement.  Consideration of the factors discussed in this <u>Section II.C.6.b.i</u> and <u>Section II.C.4</u> is mandatory.  The decision whether to (and by how much to) reduce payments by Settling Distributors or to reduce the payment to any Attorney based on the factors in <u>Section II.C.4</u> shall be in the sole discretion of the Fee Panel.

(ii)    Offsets.

**(1)**    In the event that any Non-Participating Subdivision that is (a) under the jurisdiction of the MDL Court or (b) represented by an Attorney that is obligated to pay into the MDL Common Benefit Fund pursuant to a Participation Agreement, an order of the MDL Court, or any other arrangement

settles with or wins a judgment against a Released Entity separate from the Distributor Agreement, and such settlement or judgment results in a common benefit fee assessment or fee payment into the MDL Common Benefit Fund during the time of Settling Distributors' obligation to pay Common Benefit Fees under this Fee Agreement, Settling Distributors' obligation to pay into the Common Benefit Fund shall be reduced dollar-for-dollar up to the amount of the fee assessment or payment, except that such amount shall be capped at 7.5% of the amount of the settlement or judgment.  Such reduction shall be taken first from Payment Year 7 of Settling Distributors' payments to the Common Benefit Fund of the Attorney Fee Fund up to the full amount of Settling Distributors' payment obligation in Payment Year 7, then from Payment Year 6, and so on.

        **(2)**    For the avoidance of doubt, for each settlement or judgment with the Settling Distributors that results in an assessment or payment to the MDL Common Benefit Fund, that payment shall result in an offset for the Settling Distributors, unless the assessment or payment occurs after the Payment Date for Payment Year 7.

        c.    At Participation Tier 3, the reductions to the Attorney Fee Fund shall be the same as set forth in Section II.C.6.b, except that the cap on each offset shall be 5% of the amount of such settlement or judgment.

        d.    At Participation Tier 4, there shall be no reductions to the Settling Distributors' obligations to make payment into the Common Benefit Fund, but the principles set forth in Section II.C.4 shall continue to apply.

D.    *Contingency Fee Fund.*  (40% of the Attorney Fee Fund.)

        1.    Funds from the Attorney Fee Fund shall be allocated to the Contingency Fee Fund on the following yearly schedule, subject to the adjustments set forth below:

| | |
|---|---|
| Payment Year 1 | $54,417,751.48 |
| Payment Year 2 | $60,373,964.50 |
| Payment Year 3 | $108,330,177.52 |
| Payment Year 4 | $73,450,295.88 |
| Payment Year 5 | $73,450,295.88 |
| Payment Year 6 | $73,450,295.88 |
| Payment Year 7 | $73,450,295.88 |
| **Total:** | **$516,923,077.32** |

2.      The Contingency Fee Fund shall be available to compensate Attorneys engaged in Qualifying Representations of Participating Litigating Subdivisions that meet the criteria set forth in Section II.G.

3.      The Contingency Fee Fund shall be available to Attorneys who:

    a.      represent Litigating Subdivisions that are Participating Subdivisions, whether their actions are filed in state or federal court; and

    b.      meet the eligibility criteria of Section II.G.

    c.      Participation in the Contingency Fee Fund by counsel that have a case that is not subject to the jurisdiction of the MDL Court shall not create, provide, or waive jurisdiction of the MDL Court over that Litigating Subdivision, that case or Attorneys, other than to oversee the fairness of the distribution process, and enforcement of this Fee Agreement.

4.      The amounts owed by Settling Distributors to the Contingency Fee Fund shall depend on the relevant Participation Tier set forth in Exhibit H of the Distributor Agreement as follows:

    a.      At Participation Tiers 1, 2 and 3, the Contingency Fee Fund payments shall be reduced as follows:

        (i)      For Non-Settling States, the Contingency Fee Fund payments shall first be reduced by the amounts identified by the Fee Panel, pursuant to Section II.H.6, that would have been owed to counsel for Litigating Subdivisions in Non-Settling States, had those States and those Litigating Subdivisions been Settling States and Participating Subdivisions.

        (ii)      Following the calculation in Section II.D.4.a.i, the Contingency Fee Fund payments shall be reduced to reflect the non-joinder of Litigating Subdivisions in Settling States by subtracting the amounts identified by the Fee Panel, pursuant to Section II.H.6, that would have been owed to counsel for Non-Participating Litigating Subdivisions in Settling States had such Litigating Subdivisions been Participating Subdivisions.

    b.      At Participation Tier 4, there shall be no reductions in the Contingency Fee Fund.

    c.      In the event that the Settling Distributors, prior to the Effective Date of the Distributor Agreement, settle with any Litigating Subdivision and, under such settlement agreement pay attorneys' fees, the Fee Panel shall treat those Litigating Subdivisions as Participating Litigating Subdivisions and, applying the same criteria applicable to all Attorneys for Participating Litigating

Subdivisions, determine what amount they would have been paid from the Contingency Fee Fund if they had become Participating Subdivisions under the Distributor Agreement without such prior settlement. That sum, rather than being paid to the Attorney for the previously settled Litigating Subdivision, shall be credited and/or returned to the Settling Defendants as if determined under Section II.D.4.a.ii above, except that such credit shall not be greater than the amount to the Attorneys paid under the Litigating Subdivision's prior settlement agreement.

E.    *Litigating Subdivision Cost Fund.*

1.      The Settling Distributors shall pay $120,000,000 into the Subdivision Cost Fund, according to the schedule set forth below:

| Payment Year 1 | $40,000,000 |
|---|---|
| Payment Year 2 | $40,000,000 |
| Payment Year 3 | $40,000,000 |

2.      The Litigating Subdivision Cost Fund shall be available to compensate Attorneys for costs and expenses arising out of representation of Participating Litigating Subdivisions or to compensate Participating Litigating Subdivisions for direct in-house costs for expenditures related to their litigation against the Settling Distributors, including the cost of in-house employees.  No funds in the Litigating Subdivision Cost Fund may be used to compensate the costs incurred by Non-Participating Subdivisions or Non-Litigating Subdivisions or costs and expenses arising out of representation of any such Subdivision.  In allocating the Litigating Subdivision Cost Fund, the Administrator shall not allocate any funds for costs incurred after July 21, 2021.

3.      During the period between July 21, 2021, and the Effective Date, the MDL PEC, as well as Litigating Subdivisions eligible to claim costs from the Litigating Subdivision Cost Fund shall make best efforts to cease litigation activity against Settling Distributors, including by jointly seeking stays or severance of claims against the Settling Distributors, where feasible, or postponements if a motion to stay or sever is not feasible or is denied, so long as such actions are not otherwise detrimental to the Litigating Subdivision.

4.      In the event that the Settling Distributors, prior to the Effective Date of the Distributor Agreement, settle with any Litigating Subdivision and, under such settlement agreement pay costs to the Litigating Subdivision or its Attorney, the MDL Cost and Expense Fund Administrator shall treat those Litigating Subdivisions as Participating Litigating Subdivisions and, using the same criteria applicable to all applicants to the Subdivision Cost Fund, determine what amount in costs the Litigating Subdivision or its Attorney would have been paid from the Litigating Subdivision Cost Fund if it had settled under the Distributor Agreement. That sum, rather than being paid to the Attorney or the previously settling Litigating Subdivision, shall be credited and/or returned to the Settling Defendants, except that such sum shall not be greater than the amount paid under the previously settled Litigating Subdivision's settlement agreement.

5.     The MDL Court shall appoint a Cost and Expense Fund Administrator, who shall develop a process and criteria, with input from participating counsel, by which to (a) determine the distribution of amounts from the MDL Expense Fund in pursuit of the claims against Settling Distributors; and (b) receive and evaluate applications from Participating Litigating Subdivisions, whether filed in Federal Court or State Court, to seek reimbursement from the Litigating Subdivision Cost Fund for eligible costs under Section II.E.2 in pursuit of the claims against the Settling Distributors. The Cost and Expense Fund Administrator shall require transparency from all applicants as to any other sources for compensating Attorneys for Litigating Subdivisions for costs incurred.  The Cost and Expense Fund Administrator shall be compensated from the Fund.

6.     In the event that the total amount of reimbursements from the Litigating Subdivision Cost Fund approved as reasonable by the Cost and Expense Administrator is less than the $120,000,000, any remaining funds shall revert to the Settling Distributors.

F.     *MDL Expense Fund*.

1.     In Payment Year 1 of the Distributor Agreement, the Settling Distributors shall pay the following amount into the MDL Expense Fund:

| MDL Expense Fund | $40,384,615 |
|---|---|

2.     The MDL Expense Fund shall be released following the Effective Date of this Fee Agreement without any delay to reimburse the MDL Counsel for an agreed-to portion of the expenses incurred, as approved by the Cost and Expense Fund Administrator.  The MDL Expense Fund will be paid directly to the MDL Cost Account, set up by MDL Order and will be administered under the ongoing jurisdiction of the MDL Court, as provided below.  No funds may be used to compensate the costs incurred by Non-Participating Subdivisions or to compensate any Attorney for costs incurred in representing one or more Non-Participating Subdivisions.

3.     In allocating the MDL Expense Fund, the Administrator shall not allocate any funds for costs incurred after July 21, 2021, unless the Administrator determines that there are sufficient funds to cover all subdivision costs incurred prior to July 21, 2021 and that special circumstances exist to justify costs incurred following the public announcement of the Distributor Agreement.

G.     *Eligibility*.

1.     It is the intention of all parties participating in the Fee Panel process that there should be total transparency to the Fee Panel and to all fund participants. In connection with the process to be developed by the Fee Panel, any and all monies in attorney's fees, including referral fees, expenses paid, promises for payment, or any other Fee Entitlement, to any applicant in any opioid litigation shall be disclosed to the Fee Panel as a condition of participating in the Attorney Fee Fund and prior to an award from the Fee Panel.  Any payment, expectation of payment or perceived entitlement to participate in a State Back-Stop Agreement or any other agreement reached with a

Settling State or any Subdivision or any other source regarding payment of fees must be disclosed to the Fee Panel.  Similarly, any right to payment from any other fund, for example a fund for payment to lawyers representing Settling States or Tribal Nations or Subdivisions shall be disclosed to the Fee Panel.  Because it is anticipated that there will be multiple firms listed on contingent fee agreements with Litigating Subdivisions, the Fee Panel shall establish procedures, with input from Attorneys for Participating Litigating Subdivisions, for who should petition for fees from such groups and to whom the fee shall be paid and thereafter distributed to co-counsel in accordance with applicable agreements.  For the avoidance of doubt, all Attorneys that are part of such groups must meet the eligibility criteria in Section II.G, must be subject to the criteria set forth in Section II.C.4, and must be disclosed to the Fee Panel.

2.     An Attorney may apply for and recover attorneys' fees from the Common Benefit Fund, the Contingency Fee Fund, and the Litigating Subdivision Cost Fund and any fund created by a past or future State Back-Stop Agreement, provided the Attorney satisfies the requirements relevant to each such fund and requirements for disclosure to the Fee Panel.

3.     An Attorney may not receive any payment from the Attorney Fee Fund (which includes both the Contingency Fee Fund and the Common Benefit Fund) unless the following eligibility criteria are met and annually certified by the Attorney:

a.     The Attorney must expressly waive the enforcement against the Litigating Subdivision client of all Fee Entitlements (other than under State Back-Stop Agreements) arising out of or related to any or all Qualifying Representations of any Participating Litigating Subdivision prior to applying for attorneys' fees from the Attorney Fee Fund or costs from the Cost Funds.  All applications for attorneys' fees or costs under this Fee Agreement shall include an affirmation by the Attorney of such waiver and notice to the client(s) of such waiver.  Such waiver shall not preclude the Attorney from submitting such Fee Entitlements to the Fee Panel as a factor for consideration in allocating payments from the Attorney Fee Fund or in connection with a State Back-Stop Agreement. For the avoidance of doubt, no Attorney may recover fees under this Fee Agreement unless the Attorney expressly agrees not to enforce Fee Entitlements as to each and every Participating Litigating Subdivision represented by that Attorney, but such Attorneys may participate in and receive funds from a State Back-Stop Agreement.

b.     The Attorney must represent that s/he has no present intent to represent or participate in the representation of any Later Litigating Subdivision or any Releasor with respect to Released Claims against Released Entities.

c.     The Attorney must represent that s/he has not and will not engage in any advertising or solicitation related to Released Claims against Released Entities where such advertising or solicitation relates to a representation that the Attorney could not undertake consistent with the ethics opinion referenced in Section II.I.4.

d.      The Attorney must represent s/he will not charge or accept any referral fees for any Released Claims brought against Released Entities by Later Litigating Subdivisions.  For the avoidance of doubt, this representation shall not prohibit Attorneys from receiving allocated shares of any future common benefit assessments arising out of settlements or judgments with Later Litigating Subdivisions represented by other Attorneys that are the result of the MDL Court's Common Benefit order.

e.      The Attorney may not have and must represent that s/he does not have a Fee Entitlement related to a Later Litigating Subdivision.

f.      The Attorney must certify that s/he has reviewed the ethics opinion referenced in Section II.I.4 and will act in conformity with such opinion.

g.      The Attorney must fully disclose the participation, or the anticipation of participation, in any agreement with a Settling State or Participating Subdivision concerning fees arising out of or related to the Distributor Agreement, including any fees paid or anticipated to be paid or any State Back-Stop Agreement.

h.      The Attorney must identify for the Fee Panel whether s/he utilized state litigation work product or MDL work product, including but not limited to ARCOS data, document repositories, experts developed in the MDL, and deposition transcripts.  The Attorney must identify whether s/he signed the MDL Participation Agreement, and for which case(s) it was signed.

i.      Any Attorney who applies for fees from one or both Funds must represent that, having exercised his/her independent judgment, s/he believes the Distributor Agreement to be fair and will make or has made best efforts to recommend the Distributor Agreement to his or her Subdivision clients in Settling States.  For the avoidance of doubt, each Attorney is expected to exercise his or her independent judgment in the best interest of each client individually before determining whether to recommend joining the settlement.  All applications for attorneys' fees or costs under this Section II shall include an affirmation by the Attorney in compliance with this Section II.G.

4.      No Attorney receiving fees under this Fee Agreement may apply for or recover from the Attorney Fee Fund fees arising from representing a Non-Settling State or a Non-Participating Subdivision.  All applications for attorneys' fees under this Section II shall include an affirmation by the Attorney of compliance with this Section II.

5.      An Attorney who has filed an application under this Section II and received an award of attorneys' fees shall provide a certification of compliance this Fee Agreement annually during the years upon which they are still entitled to receive attorneys' fee payments.

6.      If, at any time, the Attorney is unable to make the representations set forth in this Section II.G.3, such representations become untrue, or the Attorney falsely represents compliance with the eligibility criteria, the Attorney shall cease to be eligible to receive funds from the Attorney Fee Fund until further review by the Fee Panel of the Attorney's eligibility under and compliance with this Section II.

7.      If an Attorney has a Fee Entitlement from a Later Litigating Subdivision or otherwise becomes unable to reaffirm compliance with the eligibility criteria set forth above, the Attorney shall notify Settling Distributors and the Fee Panel.  For the avoidance of doubt, any Attorney who undertakes any new representation of, or has a Fee Entitlement to, a Later Litigating Subdivision shall be prohibited from receiving any future funds from the Attorney Fee Fund.  If an Attorney fails to notify Settling Distributors and the Fee Panel of such Fee Entitlement to a Later Litigating Subdivision, the Attorney shall be required to refund amounts previously paid.

8.      In the event that an Attorney is deemed ineligible by the Fee Panel (whether based on its initial application or subsequent recertification), the Fee Panel shall provide notice to the Attorney and give the Attorney 30 days to provide additional information such that the Fee Panel could reconsider the Attorney's eligibility.

9.      To the extent that an Attorney has a Fee Entitlement with a Participating Subdivision and is authorized to bring Released Claims against Released Entities, but such authorization is, in scope, less broad than the category of Released Claims set forth in the Distributor Agreement, such Attorney may participate fully in both the Contingency Fee Fund and the Common Benefit Fund, without any reduction imposed by the Fee Panel due to the scope of the authorization, so long as the Participating Subdivision fully releases all Released Claims against Released Entities.

10.      Attorneys applying to the Attorney Fee Fund knowingly and expressly agree to be bound by the decisions of the Fee Panel, subject to the limited appeal rights set forth in this Fee Agreement, and waive the ability to assert the lack of enforceability of the allocation reached through the arbitration procedures outlined herein.

H.      *Calculation of Amounts Due.*

1.      The Fee Panel shall be solely responsible for determining the amount of fees to be paid to each Attorney and each Participating Subdivision that applies under this Section II.  None of the Released Entities shall have any responsibility, obligation, or liability of any kind whatsoever with respect to how attorneys' fees are calculated under this Section II, except that the Fee Panel may receive information from the Settling Distributors (a) as to the identity of Participating, Non-Participating, Litigating, Later Litigating, and Non-Litigating Subdivisions; (b) the impact of non-participation by a Litigating Subdivision as is relevant to the Fee Panel's determination in Section II.C.4; and (c) such other information as Settling Distributors may voluntarily elect to provide.

2.      The Fee Panel shall establish procedures for the arbitration process consistent with this Fee Agreement and orders of the MDL Court.  Such procedures may

R-14

include submission of documentary and/or other evidence, interviews with applicants and/or other counsel (including counsel for Settling Distributors) that the Fee Panel deems appropriate, and/or other means of creating a record upon which fee awards will be based.

3.     In making determinations under this Fee Agreement, the Fee Panel must apply the eligibility criteria set forth in <u>Section II.G</u> of this Fee Agreement and the criteria set forth in <u>Section II</u>.  In addition, the Fee Panel will give consideration in regard to Common Benefit awards to the *Johnson* factors, as well as the following factors (which factors may be applied and given relative weight in the Fee Panel's discretion):

a.     The Attorney's contemporaneously recorded time and labor dedicated to Qualifying Representations along with the Attorney's financial commitment to such Qualifying Representations.  Claimed "*time*" will not be automatically accepted by the Fee Panel but will be critically reviewed and given substantially more weight and consideration if such time was subject to the audit process described in any Pretrial Order(s) governing the collection of common benefit time;

b.     The novelty, time, and complexity of the Qualifying Representations;

c.     The skill requisite to perform legal services properly and undesirability of the case;

d.     The preclusion of other employment by the Attorney due to time dedicated to Qualifying Representations;

e.     The "*common benefit*," if any alleged to have been conferred by the Attorney and whether such common benefit work product by that Attorney was used by others in parallel litigations against Released Entities whether within or outside the MDL, provided that for any Attorney claiming that s/he substantially benefited cases other than those in which s/he entered an appearance as counsel must substantiate such claims by proffering factual support, such as proper supporting affidavits or other documents as determined by the Fee Panel with input from Attorneys for Participating Litigating Subdivisions;

f.     Any "*common detriment*," as set forth in <u>Section II.C.4</u>.

g.     Any contingent fee agreements or other Fee Entitlement with Participating Subdivisions, enforcement of which, except for State Back-Stop Agreements, are waived in conjunction with the application, the nature and extent of any work for those Participating Subdivisions, whether such Participating Subdivisions actively litigated and, if so, the nature and procedural history of such case(s);

h.     The experience, reputation, and ability of the Attorney;

i.   Whether the Attorney's clients brought Released Claims against Released Entities;

j.   The status of discovery in cases primarily handled by the Attorney;

k.   The nature of any work by the Attorney on "*bellwether*" cases or cases that were similarly active in litigation;

l.   Any pressure points successfully asserted by the Attorney in cases against Settling Distributors or any risk for Settling Distributors created by the Attorney in cases against them;

m.   Any risk for defendants created by applicants in cases against the Setting Distributors;

n.   Successful and unsuccessful motion practice in cases worked on by the Attorney;

o.   The date of filing of any cases filed by the Attorney;

p.   Obtaining consolidation of the litigation in the Attorney's jurisdiction;

q.   The number and population of entities represented by the Attorney and the fees that would have been awarded under extinguished contingent fee arrangements;

r.   Whether the Attorney's clients brought claims against the Settling Distributors;

s.   Whether the Attorney has had a leadership role in the litigation, whether in state or federal court;

t.   Whether the Attorney has had a leadership role in any negotiations aimed at resolving the litigation;

u.   Whether the Attorney's cases have survived motions to dismiss;

v.   The extent to which the Attorney contributed to the work product user for the common benefits of opioids litigants, including, without limitation, work on ARCOS data, Prescription Data Monitoring Programs, IQVIA data, depositions, document production and analysis experts, motions, briefs and pleadings, trial preparations, and trials;

w.   The extent to which litigation was done prior to and contributed to completion of settlement negotiations, as distinct from litigation that was done litigating after the announcement of the Distributor Agreement, such latter

litigation both being of less value and potentially resulting a common detriment to the settlement process; and

       x.     Any other factors that the Fee Panel finds to be appropriate to consider after input from applicants to the Attorney Fee Fund.

     4.     The Fee Panel shall develop procedures for receiving a single application, which may be updated or amended based on new information (such as participation by additional Litigating Subdivisions) from each Attorney seeking compensation from the Attorney Fee Fund,  procedures shall not be inconsistent with this Fee Agreement.  Any request for attorneys' fees not included on the single application or through the updating/amendment process designed by the Fee Panel shall be deemed waived.  For purposes of transparency and to permit the Fee Panel to conduct its work, the application from each Attorney shall, at a minimum, require each Attorney to:

       a.     Identify all Litigating Subdivisions for which s/he is seeking payment from the Attorney Fee Fund;

       b.     Identify all Subdivisions in both Settling and Non-Settling States with respect to which s/he has a Fee Entitlement with respect to Relevant Claims against Released Entities, and identify all co-counsel in such cases;

       c.     Identify which of those Subdivisions are Participating Subdivisions and which are not;

       d.     Specify the specific fund or funds within the Attorney Fee Fund from which the Attorney is seeking compensation;

       e.     Demonstrate his or her eligibility for compensation from the relevant sub funds within the Attorney Fee Fund pursuant to the criteria set forth for the relevant sub fund; and

       f.     Identify any and all Fee Entitlements from representations of States, Tribal Nations, or other plaintiffs related to Released Claims against Released Entities or in opioids-related matters.

       Notwithstanding Sections II.H.4.a-f above, the Panel may consider a supplemental application if the Attorney shows good cause why circumstances exist that will lead to consideration for additional Common Benefit award.  Examples would include, but are not limited to, an Attorney having Non-Participating Litigating Subdivision clients that subsequently become Participating Subdivisions, a Bar Date passes that increases participation or the Participation Tier or an Allocation Agreement is reached.

     5.     With respect to the Common Benefit Fund, the Fee Panel shall (subject to any applicable MDL Court Order):

       a.       Review the applications of all Attorneys seeking compensation from the Common Benefit Fund, including determining eligibility for each Attorney as set forth in <u>Section II.G</u>.

       b.       Reduce, on an annual basis, the Distributor's payment obligations, as set forth in <u>Section II.C.6</u>.  The Panel shall inform the Settling Distributors and the MDL PEC of all such amounts and adjust the Settling Distributors' payment obligations accordingly.

       c.       Using criteria set forth in <u>Sections II.C</u> and <u>II.G</u>, allocate amounts from the Common Benefit Fund to eligible Attorneys, including payment amounts for each Payment Year.  In making such allocations (regardless of the Participation Tier achieved), the Panel shall apply the principles set forth in <u>Section II.C.4</u> and shall allocate any reduction in the payments of Settling Distributors specified in <u>Section II.C.6</u> to the amounts paid to Attorneys with a Fee Entitlement to Litigating Subdivisions that are not Participating Subdivisions.

6.      With respect to the Contingency Fee Fund, the Fee Panel shall:

       a.       Review the applications of all Attorneys seeking compensation from the Litigating Subdivision Fee Fund, including determining eligibility for each Attorney as set forth in <u>Section II.G</u>.

       b.       Apply the Mathematical Model in <u>Exhibit A</u>.

       c.       Use such allocations to reduce payments, on an annual basis, the payment obligations of the Settling Distributors to the Attorney Fee Fund as set forth in <u>Section II.D.4</u>, and distributions therefrom, and inform the Settling Distributors and MDL PEC of all such adjustments.

7.      To the extent that there is a dispute about the calculations of the Fee Panel related to the amounts that Settling Distributors are required to pay (including application of any reductions or offsets under this Fee Agreement), such disputes shall be presented to the Fee Panel and any disputed funds be paid into/held in escrow.  The Fee Panel shall resolve such disputes expeditiously, with either Party having the right to seek review from the MDL Court.

8.      For purposes of determination of fee or cost awards, allocations, reductions and possible reversions under this Fee Agreement, unless specified otherwise a Subdivision will be considered a Non-Participating Subdivision if it is not a Participating Subdivision as of the deadline for the application for the fee or cost award at issue (or, if the determination does not involve a specific application, the date on which the record for such determination closes).

9.      In the event that the Fee Panel, through the use of the Mathematical Model set forth in Exhibit A, allocates funds from the Contingency Fee Fund for an Attorney based on a Qualifying Representation of a Participating Litigating Subdivision or allocates cost to such Participating Litigating Subdivision and that Subdivision is in a

Settling State in which the Consent Judgment has not been approved, such funds shall be placed into escrow until the Consent Judgment is approved, after which time they shall be released.

I.    *Miscellaneous*.

1.      The costs associated with the Fee Panel prior to the Effective Date of this Fee Agreement shall be funded by Settling Distributors.  The Fee Panel shall charge an hourly rate that has been previously approved by a federal or state court and shall provide a budget and a cap for such work prior to the Effective Date, which shall be approved by Settling Distributors and such approval shall not be unreasonably withheld.  Settling Distributors shall receive a refund for any such payment of pre-Effective Date costs from interest that accrues on the monies in the Attorney Fee Fund (including interest that accrues during such time as the Attorney Fee Fund monies are in escrow prior to the Effective Date of the Distributor Agreement), up to the amount of such costs.  Post-Effective Date, the cost of the Fee Panel shall be charged against the applicable Fee Fund based on allocation by the Fee Panel and shall not be otherwise funded by Settling Distributors.  The costs associated with the Cost and Expense Fund Administrator shall be paid from funds in the MDL Expense Fund and the Litigating Subdivision Cost Fund and shall not be otherwise funded by Settling Distributors.

2.      The MDL PEC will seek, and the Attorneys General for Settling States and the Settling Distributors will not oppose, a Common Benefit Fee Order requiring an assessment of 7.5% on the gross recovery (by judgment or settlement) of any Non-Participating Subdivision that is subject to the federal court jurisdiction, represented by a MDL PEC firm, represented by any Attorney receiving fees from the Common Benefit Fund, represented by any Attorney that signed a Participation Agreement or paid in a case otherwise under the jurisdiction of the MDL Court.

3.      The MDL PEC shall provide to Settling Distributors information they have that identifies Attorneys who represent Litigating Subdivisions who are not Participating Subdivisions and who have an obligation to pay a common benefit assessment, either due to the MDL Court's orders or to having signed a Participation Agreement.

4.      The MDL PEC shall retain ethics counsel of its choice to provide an opinion that addresses the compliance of its ethical obligations, as it relates to the Distributor Agreement.  Such opinion shall address the issue of the potential conflict of interest for an Attorney that had represented a Participating Subdivision also representing a Later Litigating Subdivision as defined in the Distributor Agreement.  This <u>Section II.I</u> shall be enforceable to the extent permitted by the equivalent to Rules 1.16 and 5.6 of the ABA Model Rules of Professional Conduct in the relevant jurisdictions.  The opinion shall be provided to the Settling Distributors as soon as it is completed and, in any event, prior to July 31, 2021 and shall be disseminated to counsel eligible to apply to the Attorney Fee Fund within 30 days of the announcement of the Distributor Agreement.  The MDL PEC represents that it will comply with this opinion until the Reference Date and thereafter if the Distributor Agreement proceeds.  The cost of such expert work done

DISTRIBUTORS  8.9.21
FORMATTING UPDATES

prior to the Effective Date of the Distributor Agreement shall be funded by Settling Distributors.

     5.     Participating Subdivisions agree to instruct their counsel to treat information, work product and expert materials as secret under Rule 1.6 of the ABA Model Rules of Professional Conduct.  Accordingly, an Attorney shall not share information or work product with, or experts or materials to, non-participants (other than the Attorney's own current clients or their lawyers, consultants, experts or other representatives or agents).  However, nothing herein shall prevent MDL Leadership or PEC Counsel from fulfilling their obligations in any MDL and the MDL Court Order.

## III.    Miscellaneous.

     A.     *Termination.*  If the Distributor Agreement does not proceed past the Reference Date, whether because the Settling Distributors do not determine to proceed or for any other reason, this Fee Agreement shall be null and void, Settling Distributors shall have no obligation to make any payments under this Fee Agreement, and the Settling Distributors and the MDL PEC shall take such steps as are necessary to restore the status quo ante.

     B.     *MDL Court Consideration.*  This Fee Agreement shall be attached as an exhibit to the Distributor Agreement. This Fee Agreement shall also be submitted jointly by the Settling Distributors and the MDL PEC to the MDL Court for approval pursuant to the motion that shall be attached, prior to the Preliminary Agreement Date of the Distributor Agreement, to this Fee Agreement as <u>Exhibit B</u>.

     1.     In the event that the MDL Court, through an order, makes any change to the amounts potentially to be paid by Settling Distributors under this Fee Agreement, makes any change to the Fee Panel's consideration of the factors set forth in <u>Section II.C.4</u>, or any other material change to the draft Order attached as part of <u>Exhibit B</u> or the terms of this Fee Agreement, the Settling Distributors and the MDL PEC shall meet and confer concerning such changes.

     2.     If the Settling Distributors and the MDL PEC are unable to reach agreement and revisions to this Fee Agreement in the event discussed in <u>Section III.B.1</u>, this Fee Agreement shall be null and void, Settling Distributors shall have no obligation to make any payments under this Fee Agreement, and the Settling Distributors and the MDL PEC shall take such steps as are necessary to restore the *status quo ante*.

     C.     *Amendment.*  Once the MDL Court has entered an order implementing this Fee Agreement, this Fee Agreement can only be amended by (1) written agreement of the Settling Distributors and the MDL PEC <u>and</u> (2) approval by the MDL Court.

     D.     *Jurisdiction and Enforcement.*  The MDL Court shall have exclusive and ongoing jurisdiction over the enforcement and implementation of this Fee Agreement as set forth herein. The MDL PEC shall be the Authorized Party to enforce this Fee Agreement, as to the payment obligations of the Settling Distributors as set forth in this Fee Agreement, and as to Attorneys making application to the Funds under this Fee Agreement.  Solely for purposes of assessing or

allocating common benefit fees, the MDL Court will continue to have jurisdiction over the work product developed in the MDL Court by and under the direction of the MDL PEC with respect to claims against the Settling Defendants, including data and documents, depositions, expert reports, briefs and pleadings; and the MDL Court's protective orders, management orders, and other decisions regarding such discovery and other work product, including but not limited to, conditions on its use, will continue in full force and effect.  Nothing in this <u>Section III.D</u> authorizes the MDL Court to act contrary to this Fee Agreement or to share any of the work product, or provides the MDL Court with jurisdiction over the Distributor Agreement.

DISTRIBUTORS  8.9.21
FORMATTING UPDATES

Distributor Settlement Agreement

Description of Mathematical Model for the Allocation of the Contingency Fee Fund

This document describes the Mathematical Model for allocation of the Contingency Fee Fund described in Exhibit R (Agreement of Attorney's Fees, Expenses and Costs) to the Distributor Settlement Agreement.[18]  Awards of fees from the Contingency Fee Fund shall be available to Attorneys with Qualifying Representations of Participating Litigating Subdivisions eligible to receive an allocation under the Distributor Agreement.[19]  The Fee Panel shall oversee the application of the Model and resolve any questions or disputes concerning the eligibility of a Counsel to participate. The Panel is empowered to hear disputes concerning and ensure the accuracy of the mathematical calculations.

In general terms, allocation of the Contingency Fee Fund shall be made by (1) determining the amount of the Settlement Fund that is attributable to each Participating Litigating Subdivision; (2) making certain adjustments to these amounts based on when the Subdivision filed suit and the terms of the applicable fee contract; and (3) dividing the Contingency Fee Fund proportionately among counsel for each Participating Litigating Subdivision based on the amounts calculated in subpart 2.

The preceding steps must be performed on a per defendant basis since each Settling Defendant is responsible only for its own share of payments.[20] In other words, to collect a fee award from the Contingency Fee Fund against a Settling Defendant, the Participating Litigating Subdivision must have named the Settling Defendant in its lawsuit. The total amount of the Contingency Fee Fund in the Distributor Settlement Agreement is $516,923,077.32.[21] Amerisource's share is $160,246,153.97 (31.0%), Cardinal's share is $159,729,230.89 (30.9%), and McKesson's share is $196,947,692.46 (38.1%).

More specifically, allocation of each Settling Defendant's share of the Contingency Fee Fund shall be made as follows:

(1) For each Settling State, attribute 50% of the Settlement Funds for that State to its Subdivisions according to the Subdivision Allocation Percentage in Exhibit G to the Distributor Settlement Agreement.

```
Illustrative example:
State A is allocated 1.00000% of $22,971,636,000, 50% of which is
$114,858,180.00.
```

---

[18] See Exhibit R, § II.T.3.

[19] Id.

[20] Exhibit R, § II.S.5.

[21] Exhibit R, § II.V.1.

```
Per Exhibit G, the Subdivision Allocation Percentage for City B in State
A is 5.00000000%.
City B is attributed 5.00000000% of $114,858,180.00, or $5,742,909.00.
```

(2) Adjust the amounts in paragraph 1 as follows:

    a. Increase the amount by 10% for any Litigating Subdivision that named the defendant in a suit before December 5, 2017, the date the National Prescription Opiate Litigation MDL was formed.

```
Illustrative Example:
City C is attributed $1,000,000 under paragraph 1 above.
If City C named the defendant before 12/5/2017, that amount would
be adjusted to $1,100,000.
```

    b. Calculate the amount that would be due to Attorneys with Qualifying Representations of each Participating Litigating Subdivision under the terms of the applicable fee contract if the Participating Litigating Subdivision were to receive the amount calculated in paragraph 2.a.

```
Illustrative Example:
Continuing the example given in paragraph 2.a, if Attorneys have a
20% contingency fee contract with City C, the amount calculated in
this step would be $1,100,000 * 20% = $220,000.
```

(3) Divide the Contingency Fee Fund proportionately among counsel for each Participating Litigating Subdivision in two ways:

    a. *National Fee Pool Calculation.*  Divide the amount calculated for each Subdivision in paragraph 2.b by the total amount calculated for all Subdivisions and multiply that fraction by the defendant's share of the Contingency Fee Fund to figure each Subdivision's share of the same.

```
Illustrative example:
$220,000 [from para. 2.b] ÷ $600,000,000 [nat'l total] = 0.036666%
0.036666% * $159,729,230.89 [Cardinal nat'l share] = $58,567.38
```

    b. *Separate State Fee Pools Calculation.*  Divide the amount calculated for each Subdivision in paragraph 2.b by the total amount calculated for all Subdivisions in the same State and multiply that fraction by the defendant's share of the Contingency Fee Fund for that State to figure each Subdivision's share of the same.

```
Illustrative example:
$220,000 [from para. 2.b] ÷ $30,000,000 [state total] = 0.733333%
0.733333% * $9,000,000 [Cardinal state share] = $66,000
```

R-23

The award of fees to Attorneys with Qualifying Representations of Participating Litigating Subdivisions will be the average of the figures calculated in paragraphs 3.a and 3.b above.[22]

Paragraph 3.a represents allocation based on a proportional share of a National Fee Pool, while paragraph 3.b represents allocation based on a proportional share of the Separate State Fee Pools. In other words, for the National Fee Pool described above in paragraph 3.a, the contingency fee contract rate is compared to all other contingency fee contract rates in the nation. For the Separate State Fee Pools described above in paragraph 3.b, the contingency fee contract terms are compared to the other contingency fee contract terms in that same State. The National Fee Pool and the Separate State Fee Pools are given equal weighting.  This is illustrated below.



Using the first methodology, Attorneys for two Subdivisions <u>in different States</u> with the same amount calculated under paragraph 2.b would be assigned the same amount under paragraph 3.a.  Using the second methodology, Attorneys for the same two Subdivisions would be assigned different amounts under paragraph 3.b because they are in different States.  Specifically, the Subdivision in the State with a smaller proportion of Participating Litigating Subdivisions would be allocated more than the Subdivision in the State with a greater proportion of Participating Litigating Subdivisions.

---

[22] The model also enforces a maximum fee award of 20% of the amount calculated in 2.b.  This rule is designed to prevent windfalls by addressing over-allocation in a small number of states with relatively few Litigating Subdivisions. An estimated 97% of Qualifying Representations are not impacted this rule.

August 9, 2021

**Description of Mathematical Model for the Allocation of the Contingency Fee Funds**

Distributor Settlement Agreement and Janssen Settlement Agreement

This document describes the Mathematical Model for allocation of the Contingency Fee Fund described in Exhibit R (Agreement of Attorney's Fees, Expenses and Costs) to the Distributor Settlement Agreement and the Janssen Settlement Agreement, respectively.[1]  Awards of fees from the Contingency Fee Funds shall be available to Attorneys with Qualifying Representations of Participating Litigating Subdivisions eligible to receive an allocation under the corresponding agreements.[2]  A Fee Panel shall oversee the application of the Model and resolve any questions or disputes concerning the eligibility of a counsel to participate.  The Panel is empowered to hear disputes concerning and ensure the accuracy of the mathematical calculations.

In general terms, allocation of the Contingency Fee Fund shall be made by (1) determining the amount of the Settlement Fund that is attributable to each Litigating Subdivision; (2) making certain adjustments to these amounts based on when the Subdivision filed suit and the terms of the applicable fee contract; and (3) dividing the Contingency Fee Fund proportionately among counsel for each Participating Litigating Subdivision based on the amounts calculated in subpart 2.

Each Settling Defendant is responsible only for its own share of payments.[3]  In other words, to collect a fee award from the Contingency Fee Fund against a Settling Defendant, the Participating Litigating Subdivision must have named the Settling Defendant in its lawsuit.  The total amount of the Contingency Fee Fund in the Distributor Settlement Agreement is $516,923,077.[4]  Amerisource's share is $160,246,153.97 (31.0%), Cardinal's share is $159,729,230.89 (30.9%), and McKesson's share is $196,947,692.46 (38.1%).  The total amount of the Contingency Fee Fund in the Janssen Settlement Agreement is $123,076,923.[5]

More specifically, allocation of each Settling Defendant's share of the corresponding Contingency Fee Fund shall be made according to the following steps.  These steps must be performed separately for each Settlement Agreement, and each Defendant is responsible for paying only its share of the Contingency Fee Fund.  These calculations are made only for purpose of determining the percentage share of the Contingency Fee Fund that Attorneys for each Participating Litigating Subdivision should receive, ***not*** for determining the dollar amount each Subdivision will receive.

---

[1] *See* Distributor Settlement Agreement, Exhibit R § II.B.3; Janssen Settlement Agreement, Exhibit R § II.B.3.

[2] Distributor Settlement Agreement, Exhibit R § II.B.3; Janssen Settlement Agreement, Exhibit R § II.B.3

[3] Distributor Settlement Agreement, Exhibit R § II.A.5.

[4] Distributor Settlement Agreement, Exhibit R § II.D.1.

[5] Janssen Settlement Agreement, Exhibit R § II.D.1.

August 9, 2021

(1) For each Settling State, attribute 50% of the settlement funds for that State to its Subdivisions according to the Subdivision Allocation Percentage in Exhibit G to the Distributor Settlement Agreement or Janssen Settlement Agreement, as appropriate.

```
Illustrative example for the Distributor Agreement:
```

- Assume that State A is allocated 1.00000% of the $18,554,013,691.11 Restitution/Abatement amount [see Exhibit M of the Agreement].
- 50% of the 1% share allocated to State A is $92,770,068.46.
- Assume that, per Exhibit G of the Agreement, the Subdivision Allocation Percentage for City B in State A is 1.00000000%.
- For purposes of determining its counsel's share of the Contingency Fee Fund, City B is attributed 1.00000000% of $92,770,068.46, or $927,700.68.

(2) Adjust the amounts in paragraph 1 as follows:

a. *Upward Adjustment for Early Filers.* Increase the amount calculated in paragraph 1 above by 10% for any Litigating Subdivision that named the defendant(s) in a suit before December 5, 2017, the date the National Prescription Opiate Litigation MDL was formed. This adjustment must be done individually for each defendant. If the Litigating Subdivision did not name a Settling Defendant in a suit before January 1, 2021, then fees from the Contingency Fee Fund for that defendant will not be awarded to Attorneys with otherwise Qualifying Representations of that Participating Litigating Subdivision.

```
Illustrative Example:
```

- Assume City C is attributed $1,000,000 under paragraph 1 above.
- If City C named the defendant(s) before 12/5/2017, the attributed amount would be adjusted to $1,100,000.

b. *Determine Amount Due under Contingency Fee Contract.* Determine the amount that would be due to Attorneys with Qualifying Representations of each Participating Litigating Subdivision under the terms of the applicable fee contract if the Participating Litigating Subdivision were to receive the amount calculated in paragraph 2.a. This amount can be referred to as the Contingency Fee Assumption.

```
Illustrative Example:
Continuing the example given in paragraph 2.a, if Attorneys have a
20% contingency fee contract with City C for the relevant
litigation, the amount calculated in this step would be 20% of
$1,100,000, or $220,000.
```

2

August 9, 2021

In the next step, the Contingency Fee Assumption is used to determine the percentage share of the Contingency Fee Fund due to Attorneys for each Participating Litigating Subdivision.

(3) Divide the Contingency Fee Fund proportionately among Attorneys for each Participating Litigating Subdivision in two ways:

a. *National Fee Pool Calculation.* Determine each Litigating Subdivision's percentage share of all amounts due under contingency fee contracts nationwide by dividing the Contingency Fee Assumption calculated for each Subdivision in paragraph 2.b by the sum of all Contingency Fee Assumptions. Then multiply that percentage by the Contingency Fee Fund to figure each Subdivision's dollar share of the Contingency Fee Fund (but only for Settling Defendants the Subdivision timely named in a lawsuit).[6]

```
Illustrative example for Distributor Settlement Agreement:
```
- $220,000 [from para. 2.b] ÷ $1,800,000,000 [total amount owed under contingency fee contracts nationwide] = 0.012222%[7]
- 0.012222% * $516,923,077.32 [Contingency Fee Fund] = $63,179.49

b. *Separate State Fee Pools Calculation.* Determine each Litigating Subdivision's percentage share of all amounts due under contingency fee contracts statewide by dividing the Contingency Fee Assumption calculated for each Subdivision in paragraph 2.b by the sum of all Contingency Fee Assumptions in the same State. Then multiply that percentage by the portion of the Contingency Fee Fund that corresponds to that State's Overall Allocation Percentage, shown in Exhibit F of the relevant Settlement Agreement, to figure each Subdivision's dollar share of the Contingency Fee Fund (but only for Settling Defendants the Subdivision timely named in a lawsuit).

```
Illustrative example for Distributor Settlement Agreement:
```
- 1% * $516,923,077.32 = $5,169,230.77 [amount of the Contingency Fee Fund corresponding to State A]
- Assume a total of $17,600,000 is owed under contingency fee contracts for State A.

---

[6] Because a few Litigating Subdivisions named only one or two of the Distributors in a lawsuit before January 1, 2021, each Subdivision's share of the Contingency Fee Fund is slightly different for each distributor. Therefore, under the Distributor Settlement Agreement, the calculations described in this step need to be made separately for each Settling Defendant. It is shown in a single calculation here for ease of illustration only.

[7] In this example, $1.8 billion is the amount theoretically owed under all contingency fee contracts for litigation against distributors as calculated in paragraph 2.b. This amount is illustrative only; the actual amount will not be known until all litigating subdivisions are identified and the terms of all of their contingency fee contracts are collected.

August 9, 2021

- $220,000 [from para. 2.b] ÷ $17,600,000 = 1.25%
- 1.25% * $5,169,230.77 = $64,615.38

The award of fees to Attorneys with Qualifying Representations of Participating Litigating Subdivisions will be the average of the final amounts calculated in paragraphs 3.a and 3.b above.[8]

Paragraph 3.a represents allocation based on a proportional share of a National Fee Pool, while paragraph 3.b represents allocation based on a proportional share of the Separate State Fee Pools.  In other words, for the National Fee Pool described above in paragraph 3.a, the contingency fee contract rate is compared to all other contingency fee contract rates in the nation.  For the Separate State Fee Pools described above in paragraph 3.b, the contingency fee contract terms are compared to the other contingency fee contract terms in that same State.  The National Fee Pool and the Separate State Fee Pools are given equal weighting.  This is illustrated below.

**National Fee Pool**          **Separate State Fee Pools**



Using the first methodology, Attorneys for two Subdivisions in different States with the same amount calculated under paragraph 2.b would be assigned the same amount under paragraph 3.a.  Using the second methodology, Attorneys for the same two Subdivisions would be assigned different amounts under paragraph 3.b because they are in different States.  Specifically, the Subdivision in the State with a smaller proportion of Participating Litigating Subdivisions would be allocated more than the Subdivision in the State with a greater proportion of Participating Litigating Subdivisions.

---

[8] The model also enforces a maximum fee award of 20% of the amount calculated in 2.b.  This rule is designed to prevent windfalls by addressing over-allocation in a small number of states with relatively few Litigating Subdivisions. An estimated 97% of Qualifying Representations are not impacted this.  The description in this document of the Mathematical Model is by necessity an abstraction; the precise contours of the calculations are defined in the model itself.