UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*All actions* | MDL No. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

**ORDER TO ESTABLISH QUALIFIED SETTLEMENT FUND, APPOINT PANEL OF COMMON BENEFIT AND CONTINGENCY FEE FUND ARBITERS, APPROVE FEE FUND ALLOCATION AND DISTRIBUTION PROCESS, AND APPROVE COMMON BENEFIT COST PAYMENT AND ASSESSMENT**

The Plaintiffs' Executive Committee ("PEC") appointed by this Court, on behalf of the subdivisions that have reached resolutions (the "Settlement Agreements"[1]) with Defendants McKesson Corporation ("McKesson"), Cardinal Health, Inc. ("Cardinal") AmerisourceBergen Corporation ("AmerisourceBergen") (McKesson, Cardinal, and AmerisourceBergen, (collectively, the "Settling Distributors"), and Janssen[2] (the Settling Distributors and Janssen are collectively the "Settling Defendants"), have moved for entry of an Order:  (i) approving the establishment, under this Court's continuing jurisdiction, of a Qualified Settlement Fund, to be called the Attorney Fee Fund (the "Fund"); (ii) appointing an Administrator for the Fund (the "Administrator"); (iii) determining that the Fund, including its two constituent funds described

---

[1] Any capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreements, including those terms defined in Exhibit R: "Agreement on Attorneys' Fees, Costs, and Expenses" of the Settlement Agreements ("Exhibit R").  For the avoidance of doubt, the term "Settlement Agreements" shall refer to the Settlement Agreements between and among the Settling States, Settling Distributors, and Participating Subdivisions and the Settling States, Janssen, and Participating Subdivisions (as those terms are defined therein), respectively, inclusive of all exhibits (including Exhibit R) thereof.

[2] "Janssen" means Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.

below (the "Common Benefit Fund" and the "Contingency Fee Fund"), constitutes a single qualified settlement fund within the meaning of section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation Sections l.468B-l, et seq.; and (iv) approving a one-time payment into the agreed upon MDL Expense Fund; (v) approving a common benefit assessment of 7.5% on any cases resolved outside the Settlement Agreement and Fee Fund Process against any of the Settling Defendants; (vi) establishing, as a qualified settlement fund, a Costs Fund (as defined below in Section VI) comprised of the MDL Expense Fund and the Litigating Subdivision Fund (as more fully described in Exhibit R), and appointing an administrator for the Costs Fund (the "Costs Fund Administrator").

## I. Creation of the Fund Under MDL Court Jurisdiction

Pursuant to the terms of the Settlement Agreements, the Settling Defendants have agreed, if the conditions to making such payments set forth in the Settlement Agreements are met, to make payments into the Fund, as more specifically described in Exhibit R of the Settlement Agreements, under the continuing jurisdiction of this Court, that will be used to reimburse attorneys' fees that have been incurred in furtherance of the opioid litigation related to these defendants, including, but not limited to, work done and fees incurred with respect to opioid litigation generally and against other defendants. The Fund will consist of the following separate sub-funds, which shall together constitute a single qualified settlement fund, and will remain subject to the continuing and exclusive jurisdiction of this Court:

- The Common Benefit Fund, which shall be 60% of the Fund, and which shall hold and disburse funds intended to cover common benefit work as defined in previous Orders of the Court; and

- The Contingency Fee Fund, which shall be 40% of the Fund, and which shall hold and disburse funds intended to compensate eligible counsel for work on behalf of the Participating Litigating Subdivisions, in lieu of enforcement of contingency fee contracts with such Subdivisions. Eligibility of counsel for both funds shall be determined under the terms of the Settlement Agreements.

Subject to the conditions for making payments set forth in the Distributors Settlement Agreement, as well as Sections IV, XII, and XIII of the Distributors' Settlement Agreement, which allow for certain reductions, suspensions, or offsets, the Settling Distributors, collectively, will pay a total of $1,292,307,693.00 (the "Distributor Total Payment") into the Fund.  The Distributor Total Payment shall be pro-rated in accordance with the Distributors' Settlement Agreement and its Exhibit R (Exhibit A hereto) and in accord with the allocation set forth below among the Settling Distributors, over a period of seven years.  Each Settling Distributor shall pay its pro rata share of the total payment.  Should any provision of the Distributors' Settlement Agreement pertaining to relevant reductions, suspensions, or offsets be triggered, the appropriate amounts shall revert from the Fund to the Settling Distributors or reduce the Distributor Total Payment consistent with the provisions in the Distributors' Settlement Agreement.

The Distributor Total Payment and the Settling Distributors' portion of the one-time payment into the MDL Expense Fund will be allocated among the Settling Distributors as follows: McKesson — 38.1%; AmerisourceBergen — 31.0%; Cardinal — 30.9%.  A Settling Distributor's sole responsibility for payments to the Fund under this Section shall be to make its share of each payment.

Subject to the conditions for making payments set forth in Exhibit B hereto and in the Janssen Settlement Agreement, which allow for certain reductions, suspensions, or offsets, Janssen will pay a total of $307,692,308.00 (the "Janssen Total Payment") into the Fund. The Janssen Total Payment shall be prorated in accordance with the Janssen Agreement and its Exhibit R (Exhibit B hereto) over a period of seven years. Should any provison of the Janssen Settlement Agreement pertaining to relevant reductions, suspensions, or offsets be triggered, the appropriate amounts

shall revert from the Fund to Janssen or reduce the Janssen Total Payment consistent with the provisions in the Janssen Settlement Agreement.

The obligations of the Settling Defendants in these Settlement Agreements are several and not joint. No Settling Defendant shall be responsible for any portion of another Settling Defendant's share.

The obligations of the Settling Defendants in the Settlement Agreements arise out of the claims in this MDL case brought by the Settling States and the Participating Subdivisions related to the alleged past, present, and future financial, societal, and public nuisance harms and related expenditures arising out of the alleged misuse and abuse of opioid products that have allegedly been caused by the Settling Defendants. For the avoidance of doubt, the Distributor Total Payment and Janssen Total Payment are separate and distinct from the Compensatory Restitution Amount (as defined by the Settling Distributors and Janssen Settlement Agreements), which is compensatory restitution (within the meaning of 26 U.S.C. Section 162(f)(2)(A)) paid as damages by the Settling Defendants for the Alleged Harms allegedly suffered by the Settling States and Participating Subdivisions.

## II. Common Benefit Fund and Contingency Fee Fund

Amounts in the Fund shall be allocated to the Common Benefit Fund and the Contingency Fee Fund as set forth in the Settlement Agreements. The payments are to be made in the amounts, on the yearly schedule, and subject to the adjustments set forth in Exhibit R to the Settlement Agreements, and Exhibit R thereto. Each year, 60% of each payment shall be deposited into the Common Benefit Fund and 40% of each payment shall be deposited into the Contingency Fee Fund. Should any condition set forth in the Settlement Agreements for making payments into the Fund or MDL Expense Fund go unmet, the Settling Defendants will be under no obligation to make any payment of any amount.

The Court hereby hereby appoints, as the movants request, three experienced jurists/special masters with prior complex and MDL litigation experience, to oversee and allocate the Common Benefit Fund and the Contingency Fee Fund, and an Administrator to oversee administration and administrative costs of the Fund, as Fee Panel Arbiters.  In the interest of transparency, proportionality, and efficiency, the Court appoints the same Arbiters to oversee the disbursement of the Common Benefit Fund as the Contingency Fee Fund.

With respect to the Contingency Fee Fund, the Fee Panel Arbiters are directed to establish and implement procedures for the distribution of the Contingency Fee Fund consistent with the terms of Exhibit R of the Settlement Agreements attached hereto.  As part of that process, counsel submitting fee petitions for each Participating Litigating Subdivision will represent they waive enforcement rights against the subdivision clients of all contracts entered into in conjunction with the Qualifying Representation prior to applying for attorneys' fees or costs, under the Contingency Fee Fund.  To the extent a State allocation agreement or process provides for a fee fund, such agreements shall be enforceable on their stated terms.

Awards of fees from the Contingency Fee Fund shall be available to Attorneys with Qualifying Representations of Participating Litigating Subdivisions eligible to receive an allocation under the Settlement Agreements, as set forth in Exhibit G to the Settlement Agreements, and shall be made applying the Mathematical Model attached as <u>Exhibit A</u> to the attached Exhibit R Fee Agreements (the "Mathematical Model").  The collection of the data and calculations for the Mathematical Model has been a cooperative effort among private counsel for a large number of Litigating Subdivisions.  The Fee Panel is encouraged to continue working with those counsel in application of the Mathematical Model. The Fee Panel shall oversee the application of the Mathematical Model and resolve any questions or disputes concerning the

eligibility of an Attorney to participate as required in Section I.Y of Exhibit R to the Distributors' Settlement Agreement and Sections II.G-H of Exhibit R to the Janssen Settlement Agreement. The Fee Panel is empowered to hear disputes concerning and ensure the accuracy of the mathematical calculation. As to awards from the Contingency Fee Fund, there shall be no right of appeal. Any appeal of an award of the Fee Panel from the Common Benefit Fund will be made to this Court and be reviewed under an abuse of discretion standard.

The Court hereby: (1) authorizes the Arbiters to commence start-up work which shall be compensated consistent with an agreed budget and cap by the Settling Defendants (which may be reimbursed from interest accruing in the Fund); (2) directs the Arbiters, once the conditions necessary for the Settlement Agreements to come into effect are fulfilled, to set up a process to receive requests for common benefit fees and set forth the required materials to be provided to them in connection with fee petitions; (3) directs the Arbiters to make a preliminary recommendation on the distribution of common benefit fees; and (4) directs the Arbiters to address any requests to be heard regarding that preliminary recommendation by attorneys that sought common-benefit fees and make a final recommendation to the Court. This Court will make the final determination of an approved distribution of any common benefit funds. No distributions shall be made from the Contingency Fee Fund or the Common Benefit Fund except through the process established by this Order and by the Arbiters pursuant to this Order.

All payments into the Fund, and any interest thereon, will be held by the Fund until disbursed by the Arbiters or the Court, or by the Administrator or Trustee acting under the Court's supervision, in accordance with the terms of the Settlement Agreement and any escrow agreement governing the Fund. No parties or their counsel, including the Participating Subdivisions and their

counsel, shall be considered to be in constructive receipt, as determined under federal income tax principles, of any amounts held by the Fund.

The Fund shall be structured and operated in a manner so that it qualifies as a "qualified settlement fund" as described in Treasury Regulations Section 1.468B-1, and shall remain subject to the continuing jurisdiction of this Court.  The Contingency Fee Fund and the Common Benefit Fund shall be established as sub-funds that together constitute a single qualified settlement fund.

The Court appoints David R. Cohen one of the Court-appointed Arbiters to serve as Trustee and as the Administrator of the qualified settlement fund for purposes of Treasury Regulations Section l.468B-2(k)(3) and shall be responsible for making any necessary tax filings and payments of taxes, estimated taxes, and associated interest and penalties, if any, by the Fund. The Administrator or Trustee shall be responsible for responding to any questions from, or audits regarding such taxes by, the Internal Revenue Service or any state or local tax authority, as well as questions from the Department of Labor.  The Administrator or Trustee shall also be responsible for complying with all tax information reporting and withholding requirements with respect to payments made by the Fund, as well as paying any associated interest and penalties. All such tax, interest, and penalty payments and all expenses and costs incurred in connection with taxation of the Fund (including, without limitation, expenses of tax attorneys and accountants) shall be paid from the Fund and shall be considered administrative costs of the settlement.

With respect to work undertaken prior to the fulfillment of the conditions precedent of the Settlement Agreements, the Settling Defendants shall pay such costs up to an agreed amount, but shall be repaid for such expenditures from the first interest generated by the Fund.  In the event that the conditions precedent of the Settlement Agreements are not fulfilled, the Settling Defendants shall not be compensated for these expenditures.

No bond shall be required.  The Fund shall be held under this Court's ongoing jurisdiction, at a financial institution approved by the Court in a subsequent Order.  All amounts deposited in the Fund shall be invested conservatively in a manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk, consistent with the limitations set forth in the Settlement Agreements.  Post the Effective Date, the services of the Court-appointed Arbiters, and any vendors and services they determine to be necessary and appropriate to conduct and complete their work, shall be paid or reimbursed from the Fund.

The Administrator or Trustee will obtain a Federal Taxpayer Identification Number for the Fund upon entry of an order by this Court establishing the Fund.  The Administrator shall be authorized, upon final distribution of all monies paid into the Fund to take appropriate steps to wind down the Fund and thereafter be discharged from any further responsibility with respect to the Fund.

## III.  Appointment of Fee Panel

The Court hereby appoints David R. Cohen, Randi S. Ellis, and Hon. David R. Herndon (ret.) to serve as Arbiters on the Fee Panel, charged with the fair, equitable and reasonable allocation of awards from the Common Benefit Fund and Contingency Fee Fund pursuant to the terms and provisions of the Settlement Agreements.

David R. Cohen is well known to this Court, and intimately familiar with the issues of the Opioids litigation, both generally and as they relate to the claims against the Settling Defendants. He has extensive experience as a special master for federal judges in other MDLs as well, and as a mediator and arbitrator.

Randi S. Ellis has served as a court-appointed mediator, special master, or neutral in over two dozen major MDLs, class actions, and mass torts. This service to numerous courts includes

the allocation of settlement proceeds among claimants, determining the reasonableness of attorneys' fees, and common benefit fund determinations.

Hon. David R. Herndon (ret.) retired recently from 27 years as a judge, including service as an MDL Transferee Judge in major MDLs and other federal complex cases that were successfully resolved through mass tort or class action settlements.

Each of these Arbiters has worked with thousands of lawyers from across the country in the MDL and complex litigation context, and is thoroughly familiar with the interests and issues involved in the fair and reasonable consideration and allocation of common benefit and contingency fees.

## IV. Description of the Fund Conditions and Criteria

The Court hereby directs the Fee Panel to administer the Fund in accordance with the Settlement Agreements and the principles of transparency and equity, the following requirements and conditions for any attorney seeking an award from the Fund:

- A. Amounts disbursed from the Fund are available only to Attorneys engaged in Qualifying Representations. No Attorney may apply for or recover from the Fund any costs incurred or fees arising from representing a Non-Settling State or a Non-Participating Subdivision [or Tribe – if a Tribe fee fund is created and utilizes the same process for administrative purposes.].

- B. Attorneys requesting disbursement from the Fund must disclose to the Fee Panel prior to any award from the Fund: (1) any and all attorneys' fees, including referral fees, expenses paid, promises for payment, or any other Fee Entitlement to any applicant in any opioid litigation; (2) any payment, expectation of payment, or opportunity to participate in a State Back-Stop Agreement or any other agreement regarding payment of fees; and (3) any right to payment from any other fund created under either of the Settlement Agreements or from funds paid under either of them.

- C. In order to receive an award from the Fund, prior to applying for such award, an Attorney must: (1) expressly waive the enforcement against the Litigating Subdivision client of all Fee Entitlements (other than under State Back-Stop Agreements) arising out of or related to any or all Qualifying Representations of any Participating Litigating Subdivision (such waiver shall not preclude the Attorney from submitting such Fee Entitlements to the Fee Panel as a factor for consideration in allocating payments from the Fund or in connection with a State

Back-Stop Agreement; for the avoidance of doubt, no Attorney may recover fees under Exhibit R to the Settlement Agreements unless the Attorney expressly agrees not to enforce Fee Entitlements as to each and every Participating Litigating Subdivision represented by that Attorney, but such Attorneys may participate in and receive funds from a State Back-Stop Agreement); (2) provide notice to the applicable client(s) of the waiver described in subsection (1); (3) represent that s/he has no present intent to represent or participate in the representation of any Later Litigating Subdivision or any Releasor with respect to Released Claims against Released Entities; (4) represent that s/he has not and will not engage in any advertising or solicitation related to Released Claims against Released Entities where such advertising or solicitation relates to a representation that the Attorney could not undertake consistent with the ethics opinion referenced in Section II.I.4 of Exhibit R to the Settlement Agreements and attached hereto as Exhibit C; (5) represent that s/he will not charge or accept any referral fees for any Released Claims brought against Released Entities by Later Litigating Subdivisions; (6) not have and must represent that s/he does not have any Fee Entitlement related to a Later Litigating Subdivision; (7) certify that s/he has reviewed the ethics opinion referenced in Section II.I.4 of Exhibit R to Settlement Agreements and will act in conformity with such opinion; (8) fully disclose the participation, or the anticipation of participation, in any agreement with a Settling State or Participating Subdivision concerning fees arising out of or related to the Settling Distributors' Settlement Agreements, including any fees paid or anticipated to be paid or any State Back-Stop Agreement; (9) identify for the Fee Panel whether s/he utilized state litigation work product or MDL work product, including, but not limited to, ARCOS data, document repositories, experts developed in the MDL, and deposition transcripts, as well as whether s/he signed the MDL participation agreement; and (10) represent and affirm that, having exercised his/her independent judgment, s/he believes the Settlement Agreements to be fair and will make or has made best efforts to recommend the Settlement Agreements to his/her Subdivision clients in Settling States (having exercised his/her independent judgment in the best interest of each client individually before determining whether to recommend joining the settlement).

D. In order to continue receiving awards from the Fund, an attorney must provide an annual certification that he or she continues to meet the eligibility requirements spelled out above in Section IV (C), and in Exhibit R of the Distributors Settlement Agreement.

E. Attorneys applying to the Fund knowingly and expressly agree to be bound by the decisions of the Fee Panel and waive the ability to assert the lack or enforceability of the allocation reached through the arbitration procedures outlined below in Exhibit R of the Settlement Agreements.

Nothing in the Agreements shall preclude an Attorney from applying for compensation from multiple fee funds and cost funds. There are currently at least the following funds:

Contingency Fee Fund, Common Benefit Fund, multiple State Back-Stop Agreements, State Counsel Fee Funds, State Cost Funds and Subdivision Cost Funds. It is anticipated there will be additional fee and costs funds established in the future. Applying to one or multiple fee and costs funds does not preclude an Attorney from applying to additional fee and cost funds if the specific eligibility criteria is met. In applying to the funds that are overseen by the Arbiters as described herein, in an effort to provide full transparency, applicants must disclose any intent and expectation to apply to other funds even if not overseen by the Arbiters, as set forth in Exhibit R of the Settlement Agreements.

In making their determinations, the Arbiters are hereby charged to give consideration to the *Johnson*[3] factors, as these have been applied and interpreted by the federal courts with reference to common benefit and other court-awarded fees, as well as the following factors, which may be applied and given relative weight in the Arbiters' collective discretion:

- A. the applicant's contemporaneously recorded time and labor dedicated to Qualifying Representations along with the applicant's financial commitment to such Qualifying Representations. Claimed "time" will not be automatically accepted by the Fee Panel but will be critically reviewed and given substantially more weight and consideration if such time was subject to the audit process described in any Pretrial Order(s) governing the collection of common benefit time;

- B. the novelty, time, and complexity of the Qualifying Representations;

- C. the skill requisite to perform legal services properly and the undesirability of the case;

- D. the preclusion of other employment by the applicant due to time dedicated to Qualifying Representations;

- E. the "common benefit," if any alleged to have been conferred by the applicant and whether such common benefit work product by that applicant was used by others in parallel litigations against Released Entities whether within or outside of the MDL, provided that for any applicant claiming that s/he substantially benefitted cases other than those in which s/he entered an appearance as counsel must substantiate such claims by proffering factual support, such as proper supporting

---

[3] *Johnson v. Georgia Highway Express, Inc.,* 488 F. 2d 714, 717-19 (5th Cir.1974).

<ul>
<li>affidavits or other documents as determined by the Fee Panel with input from applicants for Participating Litigating Subdivisions;</li>
</ul>

F. any "common detriment," as set forth in Section II.C.4. of Exhibit R to the Settlement Agreements;

G. any contingent fee agreements or other Fee Entitlements with Participating Subdivisions, enforcement of which, except for State Back-Stop Agreements, are waived in conjunction with the application, the nature and extent of any work for those Participating Subdivisions, whether such Participating Subdivisions actively litigated and, if so, the nature and procedural history of such case(s);

H. the experience, reputation, and ability of the applicant;

I. whether the applicant's clients brought claims against the Released Entities;

J. the status of discovery in the cases primarily handled by the applicant;

K. the nature of any work by the applicant on "bellwether" cases or cases that were similarly active in litigation;

L. any pressure points successfully exerted by the applicant in cases against the Settling Defendants or any risk for Settling Defendants created by the applicant in cases against them;

M. any risk for defendants created by applicants in cases against the Settling Defendants;

N. successful and unsuccessful motion practice in cases worked on by the applicant;

O. the date of filing of any cases filed by the applicant;

P. obtaining consolidation of the litigation in the applicant's jurisdiction;

Q. the number and population of entities represented by the applicant and the fees that would have been awarded under the extinguished contingent fee agreements;

R. whether the applicants' clients brought claims against the Settling Defendants;

S. whether the applicant has had a leadership role in the litigation, whether in state or federal court;

T. whether the applicant has had a leadership role in any negotiations aimed at resolving the litigation;

U. whether the applicant's cases have survived motions to dismiss;

V. the extent to which the applicant contributed to the work product used for the common benefit of opioids litigants, including, without limitation, work on

    ARCOS data, Prescription Data Monitoring Programs, IQVIA data, depositions, document production, and analysis experts, briefs and pleadings, trial preparations and trials;

W. the extent to which litigation was done prior to and contributed to completion of settlement negotiations, as distinct from litigation that was done litigating after the announcement of the Settlement Agreements, such latter litigation both being of less value and potentially resulting in a common detriment to the settlement process; and

X. any other factors that the Fee Panel finds to be appropriate to consider after input from applicants to the Attorney Fee Fund.

The Court notes that the goal of the Settlement Agreements is to provide for maximum participation by the Subdivisions, maximum abatement funding for all Subdivisions nationally, and the maximum peace for Released Entities. Therefore, representing a Non-Participating Litigating Subdivision or Later Litigating Subdivision does not further the goal of the Settlements, should not be considered Common Benefit, and shall be considered an adverse impact on the attempt to maximize funds available to Participating Subdivisions' abatement programs. The Fee Panel shall consider this concept of "common detriment" set forth in this paragraph in all of its decision making.

To the extent an applicant has already been paid or expects to be paid a fee in connection with a settlement of opioid litigation, the details of such payment must be disclosed to the Arbiters prior to the issuance of an award. Any applicant claiming that he or she substantially benefited cases other than those in which he or she entered an appearance as counsel must substantiate those claims by proffering factual support, such as proper supporting affidavits and other documents. (See Rubenstein, William B., "Report and Recommendation Addressing Motion for Common Benefit Fund," 4 & 4 n.5, In re: Nat'l Prescription Opiate Litig., Case: 1:17-md-02804, Doc #: 3319 (June 3, 2020).)

Other than as set forth above, fees allocated and awarded to applicants from the Fund outlined herein shall not be subject to any additional common benefit order, including the common benefit order requested below, or other effort to tax recoveries awarded by the Fee Panel.

## V. Description of Fund Procedures

Because it is anticipated that there will be multiple firms listed on contingent fee agreements with Litigating Subdivisions, the Court directs the Fee Panel to establish procedures, with input from Attorneys for Participating Litigating Subdivisions, for who should petition for fees from such groups and to whom the fee shall be paid and thereafter distributed to all co-counsel in accordance with applicable agreements. The Court charges the Fee Panel to: (1) review the applications of all Attorneys seeking compensation from the Common Benefit Fund, including determining eligibility for each Attorney as set forth above in Section II.G. of Exhibit R to the Settlement Agreements; (2) reduce, on an annual basis, the Settling Defendants' payment obligations, as set forth in Section II.C.6 of Exhibit R of the Settlement Agreements, and inform the Settling Defendants and the MDL PEC of all such amounts and adjust the Settling Defendants' payment obligations accordingly; and (3) using criteria set forth in Section II.C. and II.G of Exhibit R of the Settlement Agreements, allocate amounts from the Common Benefit Fund to eligible Attorneys, including payment amounts for each Payment Year. In making such allocations (regardless of the Participation Tier achieved), the Fee Panel shall apply the principles set forth in Section II.C.4 of Exhibit R to the Settling Distributors' Settlement Agreement and shall allocate any reduction in the payments of Settling Defendants specified in Section II.C.6 of Exhibit R to the amounts paid to Attorneys will a Fee Entitlement to Litigating Subdivisions that are not Participating Subdivisions.

With respect to the Contingency Fee Fund, the Court hereby charges the Fee Panel to: (1) review the applications of all applicants seeking compensation from the Contingency Fee Fund,

including determining eligibility for each Attorney as set forth in Section II.G of Exhibit R to the Settlement Agreements; (2) apply the Mathematical Model described in and attached to Exhibit R to the Settlement Agreements; and (3) use such allocations to reduce payments on an annual basis, the payment obligations of the Settling Defendants to the Fund as set forth and in Section II.D.4 of Exhibit R to the Settlement Agreements, and distributions therefrom; and to inform the Settling Defendants and the MDL PEC of all such adjustments.

## VI. Costs Fund

As more fully set forth in Sections II.E and II.F of Exhibit R to the Settlement Agreements, and as summarized herein, the Settling Defendants and the PEC have agreed that certain costs paid by the PEC produced specific common benefit to all, including: (1) costs of Special Masters; (2) cost of processing, managing, and maintaining the ARCOS Data; and (3) cost of creating and maintaining the Document System made available to all litigating parties. The Parties have agreed that the Settling Distributors will make a $40,384,615 payment and Janssen will make a $9,615,385 payment of common benefit costs, for a total of $50,000,000, intended to be directed towards these items, directly into the agreed-upon MDL Expense Fund. The Settling Defendants have likewise agreed to make payments totaling $150,000,000 into a Litigating Subdivision Cost Fund, as set forth in Exhibit R to the Settlement Agreements. Litigating Subdivisions are those subdivisions that have commenced their lawsuits as of the Trigger Date, as defined in the Settlement Agreements.

The MDL Expense Fund and the Litigating Subdivision Cost Fund shall be treated as sub-funds of a qualified settlement fund (the "Costs Fund"). The Court hereby appoints David R. Cohen as the Costs Fund Administrator. The Costs Fund Administrator is authorized to retain and utilize, under his supervision, accountants and/or other professionals and vendors, as necessary

and appropriate, to assist in the administration and distribution of the Costs Fund and its sub-funds, pursuant to the terms of the Settlement Agreements and Exhibit R.  All expenses of Costs Fund administration shall be borne by the Costs Fund.

## VII.  Common Benefit Assessment of Non-Participating Subdivisions

The PEC seeks, and the Attorneys General for Settling States and the Settling Defendants do not oppose, a Common Benefit Fee Order of 7.5% on the gross recovery of any Non-Participating Subdivision that is subject to this Court's jurisdiction, represented by a PEC firm or a firm receiving a Common Benefit Fee, or one in which counsel signed a Participation Agreement but is a Non-Participating Litigating Subdivision.  Such assessments would be paid by such Non-Participating Subdivision into the MDL Common Benefit Fund.[4]

It should be recalled that, early in this MDL, the PEC sought, over the objection of the United States Drug Enforcement Agency ("DEA"), the production to MDL plaintiffs of key data compiled in the DEA's Automated Records and Consolidated Orders System/Diversion Analysis and Detection System ("ARCOS/DADS") database.  The Court ordered the DEA to produce complete transactional ARCOS data for the period of January 1, 2006 through December 31, 2014,

---

[4] *See e.g.*, *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, case no. 08-GD-50000, docket no. 277 (N.D. Ohio Feb. 20, 2009) (setting a 6% common benefit assessment – 5.0% for fees and 1.0% for expenses); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 919 n.19 (N.D. Ohio 2003) (setting a 5.5% common benefit assessment – 4.8% for fees and 0.7% for expenses); *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, 2012 WL 6923367 at *1 (E.D. Pa. Oct. 19, 2012) (awarding common benefit fees and expenses after having set a 7% assessment); *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 661 (E.D. La. 2010) (awarding 6.5% of the total settlement amount for common benefit fees); *In re Juul Labs, Inc., Mktg., Sales Prac., and Prods. Liab. Litig.*, MDL No. 2913 (N.D. Cal.) ECF No. 586 (CMO No. 5(A)) (7%-10%); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, ECF No. 17634 (12% fees, 2.75% expenses); *In re Syngenta AG MIR162 Corn Litig.*, MDL No. 2591 (D. Kan.) ECF No. 936 (7.5%-14%); *In re Davol, Inc./C.R. Bard, Inc. Polypropylene Hernia Mesh Products Liability Litig.*, 2:18-md-02846-EAS-KAJ ("Hernia Mesh") ECF No. 70 (CMO No. 11) (10% fees, 3% expenses); *In re E. I. Dupont De Nemours & Co. C-8 Pers. Injury Litig.*, MDL No. 2433 (S.D. Ohio) 2018 WL 4810290 (S.D. Ohio 2018) (9%); *In re Aredia and Zometa Prods. Liab. Litig.*, MDL 1760 (3:06-md-1760) (M.D. Tenn.) (ECF No. 593, Aug. 30, 2007) (8%).

first for six states (Ohio, West Virginia, Illinois, Alabama, Michigan, and Florida), and then for the remaining States and Territories, in a series of Orders, governing its production and use under its Protective Order (Doc # 167) See, e.g., Order Regarding ARCOS Data ( Doc # 233, 04/11/18); Second Order Regarding ARCOS Data ( Doc # 397, 05/08/18); Third Order Regarding ARCOS Data ( Doc #668, 06/26/18).

The ARCOS data produced to the PEC in essentially raw form was organized, programmed, and analyzed by the PEC and, as this Court has previously observed, the resulting detailed data, which readily shows " the number of opioid pills delivered to each City and County in America, partitioned by manufacturer and distributor and pharmacy," has proved "essential" in enabling the parties to file and amend complaints, design discovery, bring and defend motions, develop damages and abatement models, inform experts, prepare for trial, and engage in meaningful settlement discussions. See Second Order Regarding ARCOS Data, Doc #397 at p. 2. The indispensable nature of this common fund of data, as produced to, organized in, and protected by this Court, vests it with a centrality to the nationwide opioids litigation unmatched in other MDLs.  The initial and ongoing efforts of the PEC to obtain, organize and analyze, and make it available in meaningful and useable form to litigants provides a uniquely beneficial and indispensable resource to opioids litigants.  The costs to develop this common resource may and should be equitably spread among all beneficiaries.

This Court, which has ongoing jurisdiction over the ARCOS data produced by the DEA, as organized, analyzed and made available by the PEC and as made available subject to this Court's protective and case management Orders, has the authority and may exercise the discretion to condition the use of this data by all parties to the MDL and their counsel, and all litigants and their counsel (other than the States) who wish access to it for use in their non-MDL investigations and

cases, upon the imposition of a back-end, contingent assessment of 7.5% of their recoveries from any judgments or settlements not part of settlements otherwise providing for contributions into a Court- supervised MDL Common Benefit Fund, with such 7.5% assessment payable from the attorneys' fee portions of such recoveries.

WHEREFORE, as set forth in detail above, the Court grants the Agreed Motion of the PEC and the Settling Defendants, and hereby:

A. Consents to take continuing jurisdiction over the Fund and the Costs Fund pursuant to Treasury Regulation Section 1.468Bl (c)(1);

B. Appoints Messrs. David R. Cohen and David R. Herndon, and Ms. Randi S. Ellis as Fee Panel to oversee a process for allocation and distribution of the MDL Contingency Fee Fund and the Common Benefit Fund consistent with this agreed motion and the terms of the Settlement Agreements and Exhibits R thereto, which are attached and made a part of this Order;

C. Appoints David R. Cohen as Administrator or Trustee to oversee the Fund;

D. Establishes the Costs Fund, comprised of sub- funds the MDL Expense Fund and the Litigating Subdivision Cost Fund, as described in and pursuant to the Settlement Agreements and Exhibits R, and appoints David R, Cohen as Costs Fund Administrator; and

E. Approves an MDL Common Benefit assessment against the Non-Participating Subdivisions of 7.5% of their gross recoveries from any judgments or settlements not part of settlements otherwise providing for contributions into a Court-supervised MDL Common Benefit Fund, with such 7.5% assessment payable only from the attorneys' fee portions of such gross recoveries.

This Court will enter such further Orders as may be necessary and appropriate regarding future common benefit assessments paid into the Fund.

It is so ORDERED.

DATED: August 12, 2021                    /s/ Dan Aaron Polster
                                          District Judge Dan Aaron Polster