# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> TRACK THREE | MDL No. 2804 <br><br> Case No. 17-md-2804 <br><br> Judge Dan Aaron Polster |

## PHARMACY DEFENDANTS' MOTION IN LIMINE TO EXCLUDE NEWSPAPER ARTICLES

Pursuant to Rules 401, 402, 403, 703, and 802 of the Federal Rules of Evidence, the Pharmacy Defendants[1] hereby move *in limine* to exclude two newspaper articles that appear on Plaintiffs' exhibit list and are discussed by certain of Plaintiffs' expert witnesses: (1) "Pharmacies Miss Half of Dangerous Drug Combinations," Chicago Tribune (Dec. 15, 2016), and (2) "How Chaos at Pharmacy Chains Is Putting Patients at Risk," The New York Times (Jan. 31, 2020) (attached as Exhibit 1 and Exhibit 2, respectively).  News articles are the portrait of inadmissible hearsay.  That is even more so the case here, where the articles at issue contain hearsay within hearsay, including prejudicial and inflammatory quotations purportedly from anonymous persons.  Moreover, these articles are not relevant—they do not relate to prescription opioids, corresponding responsibility, or the resolution of red flags, much less in the Plaintiff jurisdictions.  For these reasons, and the reasons set forth below, the news articles should be excluded.

---

[1] CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., CVS Indiana, L.L.C., Walgreens Boots Alliance, Inc., Walgreen Co., Walgreen Eastern Co., Inc., Rite Aid Hdqtrs. Corp., Rite Aid of Ohio, Inc., Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-Atlantic Customer Support Center, Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center, Giant Eagle, Inc./HBC Service Company, and Walmart Inc.

I.    **BACKGROUND**

In 2016, the Chicago Tribune published an article about a "study" it had conducted at 255 pharmacies, most of which were in the Chicago area.[2]  The article does not mention prescription opioids, corresponding responsibility, or red flags.  It does not involve any pharmacies in Ohio, let alone in Lake or Trumbull counties.  Instead, the article discusses whether pharmacists in the "study" dispensed drugs with possible drug interactions, such as clarithromycin, an antibiotic, and simvastatin, an anti-cholesterol drug, without first mentioning the potential interaction to the patient.  The article states that "[f]ifty-two percent of the pharmacies [which includes independent pharmacies and other chains that are not defendants in this case] sold the medications without mentioning the potential interaction."  Ex. 1 at P-02303_00002.  It then goes on to admit that it "is difficult to say why so many pharmacists failed the same test" but nonetheless concludes that a "possible explanation" is an "emphasis on speed" by pharmacy companies.  *Id.* at P-02303_00007.

The New York Times published a similar article in 2020 regarding medication errors and pharmacy workplace conditions, based largely on anonymous and/or undisclosed letters to, and surveys conducted by, state regulatory boards.  Like the Chicago Tribune article, the New York Times article never mentions prescription opioids, corresponding responsibility, or red flags, and does not involve any pharmacies in Ohio (much less in Lake or Trumbull counties).  It contains inflammatory, anonymous statements unrelated to the issues in this case, in some instances unconnected to any pharmacy in particular.  *E.g.*, Ex. 2 at P-2302_00002 ("'We are afraid to speak up and lose our jobs,' one pharmacist wrote anonymously last year in response to a survey by the Missouri Board of Pharmacy. 'PLEASE HELP.'"); *id.* at P-2302_00005 ("'Any dissent perceived by corporate is met with a target placed on one's back,' an unnamed pharmacist wrote to the South

---

[2] Some of the stores were located in Indiana, Wisconsin, and Michigan.  Ex. 1 at P-02303_00005.

Carolina board last year."); *id.* at P-2302_00001 ("'The amount of busywork we must do while verifying prescriptions is absolutely dangerous,' another wrote to the Pennsylvania board in February.").

## II.  ARGUMENT

### A.  The news articles are inadmissible as hearsay under Rule 802.

Newspaper articles are classic hearsay and cannot be admitted for the truth of the matter asserted.  *See* Fed. R. Evid. 802; *Taylor v. Thomas*, No. 18-cv-269-GKF-FHM, 2020 WL 2114363, at *4 (N.D. Okla. May 4, 2020) ("[T]he fact that the statement was in the form of a newspaper account reinforces its hearsay character . . . ." (citation omitted)); *Lawler v. Richardson*, No. 10-196, 2012 WL 2362383, at *2 (E.D. Pa. June 20, 2012).  The articles in question also contain selected supposed quotations from pharmacists (sometimes anonymously), physicians, state regulatory board employees, and other individuals who have no relation to this trial.  These quotations are double hearsay.  *Reynolds v. Green*, 184 F.3d 589, 596 (6th Cir. 1999) ("'[H]earsay within hearsay' is inadmissible unless both levels of hearsay fall within an exception to the hearsay rule."); *Knotts v. Black & Decker, Inc.*, 204 F. Supp. 2d 1029, 1037 (N.D. Ohio 2002) ("[W]itness statements contained in an investigative report are not admissible under 803(8)").

Plaintiffs cannot evade exclusion of these articles under the hearsay rule by claiming they are not introducing them for the truth and rather to show notice or state of mind.  When a hearsay statement is not offered for the truth, it remains inadmissible if the non-truth purpose is dependent on the truth of the statement.  *See Mahone v. Lehman*, 347 F.3d 1170, 1173 (9th Cir. 2003) ("'[a]lthough [the evidence] was not offered to prove the truth of the matter asserted, it [was] nonetheless hearsay[,]' because the inference the plaintiff sought to draw, 'depend[ed] on the truth of [the third party's] statement.'" (quoting *Orr v. Bank of Am. NT & SA*, 285 F.3d 764, 779 (9th Cir. 2002))); *Lawler*, 2012 WL 2362383, at *2 (finding that a newspaper article was properly

excluded as hearsay even though plaintiff sought to introduce it to show notice because "in order to demonstrate that the City was on notice of these violations, we must assume that the violations and practices described in the articles actually occurred").  That is the case here.  The assertion that these articles should have put the Pharmacy Defendants "on notice" depends entirely on whether the "facts" described in the articles are true: if pharmacists did not *actually* miss drug interactions, if pharmacists did not *actually* feel pressure to fill prescriptions quickly, if pharmacists did not *actually* feel overworked and understaffed, then the articles could not have put the Pharmacy Defendants "on notice" of anything at all.[3]

**B.    The news articles are not relevant, whether for the truth or other purposes, and must excluded under Rules 401 and 402.**

Even if the hearsay rule did not render them inadmissible, which it plainly does, the articles still would be inadmissible on relevance grounds. The question at trial is whether the Pharmacy Defendants substantially contributed to a public nuisance in Lake and Trumbull counties, in part, due to their pharmacists allegedly failing to properly exercise corresponding responsibility when filling opioid prescriptions.  The articles in question have nothing to do with those issues.  They do not relate to Lake and Trumbull counties (or even Ohio).  They do not relate to prescription opioids.  And they do not relate to corresponding responsibility or the resolution of red flags. Indeed, neither article features any information that any pharmacist employed by any pharmacy company anywhere—let alone any in Lake and Trumbull Counties—did not exercise

---

[3] To the extent Plaintiffs may seek to introduce any statements in the articles as opposing party statements, that would also be improper.  *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 512 F. Supp. 3d 803, 813 (S.D. Ohio 2021) (excluding New York Times article even though it contained opposing party statements because the article itself was hearsay); *Taylor*, 2020 WL 2114363, at *4 (finding that even though a quoted statement in an article may be a statement by a party opponent, plaintiff cannot rely on the article because the article itself was hearsay); *see also Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010) ("Even if [the party's] statement is viewed as a non-hearsay admission of a party opponent, the newspaper article reporting the statement is offered to prove the truth of the matter asserted and is not covered by any hearsay exception.").

corresponding responsibility or made errors in exercising corresponding responsibility.  These articles do not tend to "make a fact [of consequence in determining the action] more or less probable" than it would be without the articles.  Fed. R. Evid. 401.  They should be excluded.

> **C.**  **The news articles should also be excluded under Rule 403: any marginal relevance is outweighed by prejudicial statements within the articles.**

Even if the articles were not hearsay (they are) and had any probative value (they do not), they should be excluded under Rule 403.  Both articles are full of prejudicial quotations, from pharmacists and other third parties who will not be at trial.  *E.g.*, Ex. 2 at P-2302_00001 ("I am a danger to the public working for CVS." (citing anonymous letter to the Texas State Board of Pharmacy)); Ex. 1 at P-2303_00007 ("'They're cutting corners where they think they can cut,' said Bob Stout, president of the New Hampshire Board of Pharmacy . . . .").  The Pharmacy Defendants cannot cross-examine these individuals at trial, including the anonymous purported pharmacists who are quoted in the articles or who participated in anonymous surveys then quoted or summarized in the articles.  At the same time, the articles' relevance is, at best, marginal; this case is not about pharmacist workplace conditions or drug interactions between antibiotics and anti-cholesterol drugs.  The articles do not relate to Lake or Trumbull counties.  Admitting these articles into evidence would confuse the jury and require a mini-trial on staffing and workplace conditions at the Pharmacy Defendants' pharmacies in Lake and Trumbull counties (as well as the reliability of both articles and the Chicago Tribune study's methodology), based on purported complaints by (sometimes anonymous) pharmacists about working conditions at pharmacies *outside of Ohio*.  The time allotted for trial simply does not allow for such detours.  The Court should exclude the news articles under Rule 403.

     **D.**     **Plaintiffs cannot use their experts to introduce the news articles into evidence.**

Plaintiffs cannot backdoor these articles into evidence by introducing them through an expert witness.  Where the facts or data relied on by an expert are otherwise inadmissible, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 703.  As demonstrated above, Plaintiffs cannot show that the probative value of these articles "substantially outweighs" the prejudice, as required by Rule 703.

**III.**    <u>**CONCLUSION**</u>

For the reasons stated, the Pharmacy Defendants respectfully request that the Court issue an order excluding from evidence at trial the following news articles: "Pharmacies Miss Half of Dangerous Drug Combinations," Chicago Tribune (Dec. 15, 2016), and "How Chaos at Pharmacy Chains Is Putting Patients at Risk," The New York Times (Jan. 31, 2020).

Dated:  August 12, 2021

                                           Respectfully submitted,

/s/  *Kaspar J. Stoffelmayr*

Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
Bartlit Beck LLP
54 West Hubbard Street
Chicago, Illinois 60654
Phone: (312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
sharon.desh@bartlitbeck.com
sten.jernudd@bartlitbeck.com

/s/ Eric R. Delinsky

Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS*
*Stores, LLC, CVS TN Distribution, L.L.C., CVS*
*Rx Services, Inc., and CVS Indiana, L.L.C.*

Alex J. Harris
Bartlit Beck LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
Phone: (303) 592-3100
alex.harris@bartlitbeck.com

*Attorneys for Walgreens Boots Alliance, Inc.,*
*Walgreen Co., and Walgreen Eastern Co.,*
*Inc.*

/s/ John M. Majoras
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Email: jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/ Robert M. Barnes
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
(412) 471-3490
rbarnes@marcus-shapira.com
livingston@marcus-shapira.com
kobrin@marcus-shapira.com

*Counsel for Giant Eagle, Inc. and HBC*
*Service Company*

/s/ Kelly A. Moore
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6612
kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5917
elisa.mcenroe@morganlewis.com

*Counsel for Rite Aid Hdqtrs. Corp., Rite Aid*
*of Ohio, Inc., Rite Aid of Maryland, Inc. d/b/a*
*Rite Aid Mid-Atlantic Customer Support*
*Center and Eckerd Corp. d/b/a Rite Aid*
*Liverpool Distribution Center*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that the foregoing document was served via the Court's

ECF system to all counsel of record on August 12, 2021.


/s/ Eric R. Delinsky
Eric R. Delinsky