# Exhibit B

Page 1

1               UNITED STATES DISTRICT COURT
2             FOR THE NORTHERN DISTRICT OF OHIO
3                      EASTERN DIVISION
   _____
4
    IN RE: NATIONAL PRESCRIPTION   )
5   OPIATE LITIGATION,             )
                                   ) MDL No. 2804
6                                  )
    THIS DOCUMENT RELATES TO:      ) Case No. 17-md-2804
7                                  )
    Track Three Cases              )
8                                  )
   _____
9
       VIDEO-RECORDED DEPOSITION UPON ORAL EXAMINATION OF
10
                      ANNA LEMBKE, M.D.
11 _____
12
13           11:27 A.M. EDT - 8:27 A.M. PDT
14                    MAY 28, 2021
15
16
17
18
19
20      THIS DEPOSITION IS BEING TAKEN VIA VERITEXT
   VIRTUAL/TELEPHONICALLY, AND ALL PARTIES, THE WITNESS,
21       AND COURT REPORTER ARE APPEARING REMOTELY
22
23
24
25  REPORTED BY:  JUDY BONICELLI, RPR, CCR 2322, CSR 9091

Page 136

1  MR. ARBITBLIT:  Object to form.
2  THE WITNESS:  My publications are
3  directed broadly to various stakeholders inside of
4  medicine, and that would include pharmacists.
5  BY MR. GISLESON:
6     Q.  Did you review any of the prescriptions in
7  this case to determine whether they contained any red
8  flags?
9     A.  By that, do you mean the specific notes
10 regarding specific prescriptions?
11    Q.  The specific prescription itself.
12    A.  No.  Those are not --
13    Q.  Have you reviewed any prescription data?
14            MR. ARBITBLIT:  Object to form.
15            THE WITNESS:  What do you mean by
16 "prescription data"?
17 BY MR. GISLESON:
18    Q.  Data that is maintained by one of the chain
19 pharmacy defendants that identifies opioid medications
20 that have been dispensed by that pharmacy defendant?
21    A.  Yes.
22    Q.  What data did you review?
23    A.  So if you give me a moment to find it, please.
24 Page 84 of my report contains a table with specific
25 data on Walgreens' income due to the sale of OxyContin

Page 150

1  pharmacy defendants has in Trumbull and Lake Counties?
2      A.  No.
3      Q.  Do you know what the average duration was for
4  prescriptions that were filled for controlled
5  substances by any of the chain pharmacy defendants?
6      A.  No.
7      Q.  What was the process that the chain -- strike
8  that.
9          You understand that corresponding
10 responsibility applies only to the pharmacist, right?
11             MR. ARBITBLIT:  Objection.  Misleading.
12             THE WITNESS:  I would disagree with
13 that.  I think the DEA, some of the DEA enforcement
14 rulings have made it very clear that the corresponding
15 responsibility applies not just to the pharmacists but
16 also to the pharmacies.
17 BY MR. GISLESON:
18     Q.  You understand that it's the pharmacist who
19 exercises the judgment whether to dispense an opioid
20 medication, correct?
21             MR. ARBITBLIT:  Object to form.
22             THE WITNESS:  Again, that judgment
23 cannot be adequately exercised in an environment where
24 pharmacists are not given the information or the
25 support or the time or the incentives to exercise their

Page 153

1  A. I haven't seen any evidence to the contrary.
2  I would be happy to evaluate that if you have evidence
3  to the contrary, but again, these were national
4  policies. I have no reason to believe that Lake and
5  Trumbull Counties are an exception in any way.
6  Q. How do we test your theory that pharmacists
7  for the chain defendants in Lake and Trumbull County
8  were disempowered from exercising clinical judgment?
9  MR. ARBITBLIT: Object to form.
10  THE WITNESS: I don't think it's a
11  theory that I have. I think there is plenty of
12  evidence that when you have 3.22 minutes to fill
13  a prescription, it's going to be very difficult to do
14  your due diligence to make sure that you explore red
15  flags.
16  BY MR. GISLESON:
17  Q. Did you do any analysis of the time to fill
18  prescriptions for any of the chain defendants in Lake
19  or Trumbull Counties?
20  A. No, but the University of Cincinnati did.
21  They studied Rite Aid's prescription fill rates in
22  2011.
23  Q. And that involves fill rates for all
24  medications, not just controlled substances, correct?
25  A. That's correct.

Page 159

1  BY MR. GISLESON:
2      Q.  Did you speak with any pharmacists in Ohio?
3      A.  No.
4      Q.  Have you been to either Lake County or
5  Trumbull County?
6      A.  I don't -- I may have.  I may have briefly.
7      Q.  Do you know how many pharmacy stores Rite Aid
8  has in Lake County?
9      A.  I do not.
10     Q.  Do you know how many pharmacists Rite Aid has
11  in Lake County?
12     A.  No.
13     Q.  Do you know how many pharmacy stores Rite Aid
14  has in Trumbull County?
15     A.  No.
16     Q.  Do you know how many pharmacists Rite Aid has
17  in Trumbull County?
18     A.  No.
19     Q.  Do you know how many stores or pharmacists any
20  of the chain pharmacy defendants have in either in Lake
21  or Trumbull County?
22     A.  No.
23         MR. GISLESON:  Mr. Ladd, can you please
24  get Tab 3?  And Dr. Lembke, if you can go to Tab 3,
25  please.

Page 215

1      A.   Yes.
2      Q.   Does your paper copy of your report have notes
3  or margin area?
4      A.   It has post-its to serve as an index so I can
5  try to find things more quickly.
6      Q.   Anything other than post-its?
7      A.   No.
8      Q.   All right.  Switching gears, did any pharmacy
9  in Lake or Trumbull County conduct itself in a way that
10 you consider to be compliant with best practices in the
11 requirements under the Controlled Substances Act?
12             MR. ARBITBLIT:  Object to form.
13             THE WITNESS:  Again, my opinions on Lake
14 and Trumbull County are based on my review of national
15 policies of the defendants' policies and procedures,
16 and so my opinion of those policies and procedures for
17 good and for bad are the same nationally as they are in
18 Lake and Trumbull County because I have no evidence to
19 suggest that Lake and Trumbull County are outliers.
20 BY MR. CARTER:
21     Q.   So with respect to the defendant pharmacies
22 named in this case, is it your opinion that every
23 pharmacy location for one of the defendant pharmacies
24 in Lake or Trumbull County was acting in a
25 non-compliant way?

Page 216

1  A. My opinion is not based on every pharmacy or
2  every pharmacist. My opinion is looking at the
3  aggregate evidence to determine what the policies and
4  procedures were in defendant chains' pharmacies and to
5  form my opinion based on that.
6  Q. Did you conduct any systematic review of the
7  defendant pharmacies in Lake or Trumbull County to
8  identify the good pharmacy locations and distinguish
9  them from bad pharmacy locations?
10  MR. ARBITBLIT: Object to form.
11  THE WITNESS: So my systematic review is
12  my report and my opinion is based on aggregate data,
13  and Trumbull and Lake Counties are not, in my opinion,
14  outliers for what was happening nationally.
15  BY MR. CARTER:
16  Q. Is there any county in the country that you
17  would identify as an outlier from the national pattern?
18  A. Opioid prescribing patterns suggest that there
19  are counties in the country that were more affected by
20  the oversupply of opioids than others, but that the
21  problem extended to everywhere in the United States,
22  that it wasn't localized to any specific state or
23  region, although clearly, there are differences,
24  geographic differences in the severity of the opioid
25  epidemic region to region.