# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track Three Cases | MDL 2804<br><br>Case No. 17-d-2804<br><br>Hon. Dan Aaron Polster |

### DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OR ARGUMENT ABOUT ALLEGED MISCONDUCT AFTER 2010

Defendants[1] move *in limine* to preclude evidence or argument about alleged misconduct by Defendants after 2010—including "suspicious orders" or "flagged" prescriptions—because Plaintiffs' causation expert does not rely on post-2010 conduct and testified that such conduct was not relevant to determining causation in this case. In order to establish the relevance of any Defendant's post-2010 conduct, Plaintiffs must present expert testimony drawing a causal link between such conduct and the harms Plaintiffs allege they suffered. Because Plaintiffs have disclosed no expert to draw that link, any evidence or argument about post-2010 conduct is irrelevant and unduly prejudicial, and the Court should exclude it.

Plaintiffs claim that Defendants caused a public nuisance in Lake and Trumbull Counties by distributing and dispensing prescription opioid medications. To carry their burden on the critical element of causation, Plaintiffs have retained Dr. David Cutler, a health care economist. As Plaintiffs' causation expert, Dr. Cutler opines that  Ex. 1, Report of David Cutler ¶ 10 (April 16, 2021). Dr. Cutler ultimately provides an *id.* ¶ 89, Ex. 2, Supplemental Report of David Cutler, Exhibit 53 (May 19, 2021).[2]

---

[1] Defendants are Walgreens Boots Alliance, Inc., Walgreen Co., Walgreen Eastern Co., Inc.; CVS Indiana, L.L.C., CVS Rx Services, Inc., CVS Pharmacy, Inc., CVS TN Distribution, L.L.C., Ohio CVS Stores, L.L.C.; Rite Aid Hdqtrs. Corp., Rite Aid of Ohio, Inc., Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-Atlantic Customer Support Center, Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center; Giant Eagle, Inc.; HBC Service Company; and Walmart Inc.

[2] Other Plaintiffs' experts purport to offer opinions on "causation." For the reasons explained in Defendants' *Daubert* motions, several of those experts are not qualified to provide those opinions and their opinions are unsupported by any reliable scientific methodology. *See* Dkt.

1

At the heart of Dr. Cutler's causation analysis is [REDACTED] Ex. 1, Report of David Cutler ¶ 46 (April 16, 2021).[3] [REDACTED] *Id.* ¶ 120. [REDACTED] *Id.* ¶¶ 120-21.[4]

Consistent with his approach [REDACTED] *See* Ex. 2, Supplemental Report of David Cutler ¶¶ 194-95 (May 19, 2021). In this analysis, Dr. Cutler purports to identify [REDACTED] Ex. 1, Report of David Cutler

---

3800 (Catizone); Dkt. 3802 (Lembke). Dr. Keyes, an epidemiologist, also purports to offer certain opinions on "causation," but, as she acknowledges, she is not offering any opinions regarding any specific Defendant; indeed, her report does not discuss any Defendant, and she has not reviewed any materials related to any Defendant. Dkt. 3798. None of Plaintiffs' other experts even purport to draw a causal link between Defendants' alleged misconduct and actual harms in Lake or Trumbull Counties. Only Dr. Cutler offers opinions along those lines.

[3] All emphases added unless otherwise noted.

[4] Dr. Cutler also discusses [REDACTED] Ex. 1, Report of David Cutler ¶¶ 48-54 (April 16, 2021). For purposes of his causation opinions, however, [REDACTED] *See, e.g., id.* ¶ 11 [REDACTED]

¶¶ 109-10 (April 16, 2021). According to Dr. Cutler, this allows him to ███████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

*See* Ex. 2, Supplemental Report of David Cutler ¶¶ 191, 194 (May 19, 2021).

Next, Dr. Cutler ███████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████ *See id.* ¶¶ 194-95. ███████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████ Ex. 1, Report of David Cutler ¶ 125 (April 16, 2021). Thus, Dr.

Cutler opines that █████████████████████████████████████████

████████████████████████████████████ *Id.* Put another way, according to Dr.

Cutler, ████████████████████████████████████████████████

█████████████████████ *Id.* ¶ 120.

Critically, Dr. Cutler's causation analysis does not █████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████ *See* Ex. 2, Supplemental Report of David Cutler ¶¶ 191, 194 (May 19, 2021). Dr.

Cutler confirmed all of this at his deposition, agreeing that his causation models do not include

"any distribution or dispensing after 2010," and testifying that Defendants' alleged post-2010

3

misconduct "doesn't matter," that "the appropriate methodology does not have that in that," and that it is "not relevant" to his impact analysis. Ex. 3, Cutler 6/2/21 Dep. Tr. at 156:11-158:12.

In light of Dr. Cutler's report and testimony, the Court should exclude any evidence or argument about alleged misconduct by Defendants after 2010 as irrelevant and more prejudicial than probative. It is irrelevant because expert testimony is necessary to draw a valid causal link between Defendants' post-2010 distribution and dispensing and Plaintiffs' alleged harms, and Plaintiffs' causation expert has offered no such testimony. To the contrary, Dr. Cutler has affirmatively testified that the post-2010 distribution and dispensing is irrelevant, *id.* at 157:20-21, stating unequivocally that an "appropriate methodology" would not include it, *id.* at 158:6-7; *see also id.* at 155:6-21 ("[Y]ou wouldn't want to relate the deaths due to *illegal* opioids to the shipments of *legal* opioids after the crackdown on the shipping occurs [after 2010].").

In this regard, it is important to note that Dr. Cutler confirms what DEA and law enforcement witnesses have repeatedly said throughout this litigation: Volume alone is not enough.[5] The fact that any given Defendant distributed or dispensed a particular volume of prescription opioid medications, or that a certain volume of those shipments or prescriptions should have been "flagged," is not proof of diversion, much less causation (*i.e.*, resulting harm to Plaintiffs). As Dr. Cutler put it, "correlation does not imply causality." *Id.* at 84:25-85:1. "[I]f

---

[5] *See, e.g.*, Ex. 4, Rafalski 6/10/21 Dep. Tr. at 149-53 (testifying that seeing dispensing numbers "outside of the norm . . . doesn't mean that [a pharmacy is] diverting or there's some illicit conduct"); Ex. 5, Buccino-Thomas 12/1/20 Dep. Tr. at 64:7-13 ("I'd have to know more about the facts of the case, not just the volume of pills that it was filling. There has to be more."); Ex. 6, Baker-Stella 5/23/19 Dep. Tr. 412:16-413:13 (agreeing that "the number of prescriptions alone isn't sufficient to reach a judgment about whether there's overprescribing or not"); Ex. 7, Leonard 5/23/19 Dep. Tr. 427:10-428:2 (agreeing that "[v]olume alone can't tell you that something is necessarily wrong" and stating that "[t]here's always more factors that are looked at before an investigation is opened"); Ex. 8, Prince 5/23/19 Dep. Tr. 455:14-456:11 (explaining that, "without a whole lot more information," the fact that "Dr. X has written Y number of prescriptions for oxycodone" does not mean "Dr. X is diverting").

you want to tell a *causal* story," it is "very, very important" to "include controls for quite a number of different reasons why [two variables] may be correlated." *Id.* at 86:2-9.  That is what Dr. Cutler attempted to do in his regression analyses, and "what any reasonable scholar would do." *Id.* at 86:9-10.  That type of analysis requires expert testimony, and such testimony is completely lacking for any post-2010 conduct by any Defendant.

      For the same reasons, admitting evidence of any Defendant's alleged misconduct after 2010 would be unduly prejudicial, allowing the jury to draw unwarranted causal inferences based on volume alone without the aid of expert testimony.  No lay person—witness or juror—can reliably disaggregate distribution and dispensing by Defendants from distribution and dispensing by non-party distributors and dispensers, much less account for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Ex. 1, Report of David Cutler ¶ 113 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

      In fact, the variables necessary to consider and control for in drawing any sort of causal link after 2010 are even more complex and demanding of expert testimony.  As Dr. Cutler explained, the reason he did not use a direct analysis based on shipments after 2010 is because it would have made it "much more difficult to account for" other "factors," including the prevalence of "powder versus black tar" heroin, the strength of "fentanyl supply lines," and other variables that are "difficult to identify," cannot be "readily measured," and would introduce "measurement error."  Ex. 3, Cutler 6/2/21 Dep. Tr. at 102:1-104:5.  Without expert testimony, no jury can reliably account for these factors and draw the necessary causal links.

5

Finally, the exclusion of evidence or argument about alleged misconduct after 2010 is separately justified in light of the highly compressed trial schedule imposed by the Court. Under those constraints—75 hours and 50 witnesses for all Defendants—each Defendant will be limited to a *total* of just 15 hours and 10 fact witnesses to present its own case *and* cross-examine Plaintiffs' witnesses. The current structure of trial demands a reasonable temporal limit on the presentation of evidence. FED. R. EVID. 611 ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth [and] avoid wasting time . . . ."). Dr. Cutler's disavowal of evidence of alleged misconduct after 2010 suggests a clear temporal cutoff consistent with Plaintiffs' own theory of causation and avoids wasting precious trial time on irrelevant and unduly prejudicial evidence.

For these reasons, the Court should exclude any evidence or argument about Defendants' alleged misconduct after 2010, including "suspicious orders" or "flagged" prescriptions.

Dated:      August 12, 2021

Respectfully Submitted,

/s/  *Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
Bartlit Beck LLP
54 West Hubbard Street
Chicago, Illinois 60654
Phone: (312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
sharon.desh@bartlitbeck.com
sten.jernudd@bartlitbeck.com

Alex J. Harris
Bartlit Beck LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
Phone: (303) 592-3100
alex.harris@bartlitbeck.com

*Attorneys for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*


/s/    *John M. Majoras*
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Attorneys for Walmart Inc.*


/s/    *Alexandra W. Miller* (consent)
Alexandra W. Miller
Eric R. Delinsky
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
smiller@zuckerman.com
edelinsky@zuckerman.com

*Attorneys for CVS Indiana, L.L.C., CVS Rx Services, Inc., CVS Pharmacy, Inc., CVS TN Distribution, L.L.C., and Ohio CVS Stores, L.L.C.*

7

/s/    *Robert M. Barnes* (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
rbarnes@marcus-shapira.com
livingston@marcus-shapira.com
kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc. and HBC Service Company*


/s/    *Kelly A. Moore* (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
elisa.mcenroe@morganlewis.com

*Attorneys for Rite Aid Hdqtrs. Corp., Rite Aid of Ohio, Inc., Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-Atlantic Customer Support Center and Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center*

8