# SJ-EXHIBIT 8



**U.S. Department of Justice**
Drug Enforcement Administration
FOI/Records Management Section
8701 Morrissette Drive
Springfield, Virginia 22152

Case Number: 10-00623-F

OCT 2 2 2013

Subject: A COPY OF THE DEA'S CURRENT DIVERSION INVESTIGATORS MANUAL ALONG WITH ANY ACCOMPANYING MATERIAL OR ATTACHMENTS

Robert P. Giacalone
Cardinal Health
7000 Cardinal Place
Dublin, OH 43017

Dear Mr. Giacalone:

This letter responds to your Freedom of Information/Privacy Act (FOI/PA) request dated March 05, 2010, addressed to the Drug Enforcement Administration (DEA), Freedom of Information/Privacy Act Unit (SARF), seeking access to information regarding the above subject.

The processing of your request identified certain materials that will be released to you with this letter. Portions not released are being withheld pursuant to the Freedom of Information Act, 5 U.S.C. 552, and/or the Privacy Act, 5 U.S.C. 552a. Please refer to the list enclosed with this letter that identifies the authority for withholding the deleted material, which is indicated by a mark appearing in the block next to the exemption. An additional enclosure with this letter explains these exemptions in more detail.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c) (2006 & Supp. IV 2010). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you are not satisfied with the response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html. Your appeal must be received within sixty (60) days from the date of this letter. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."



EXHIBIT TUSH 3

DEFENDANT'S DEPOSITION EXHIBIT
**6**
Colosimo

CAH_MDL2804_02145395

should be sought in support of ongoing *nonscheduled* complaint investigations.

## 5241.3 ON-SITE INVESTIGATION

Once the on-site investigation has been initiated the Investigators will work consistently toward completion of this phase of the investigation.

A. *Initial *Procedures*

   1. The Investigators will present their credentials and NOI and AIW to the person who has managerial responsibility for the operation of the firm relating to controlled substances. The investigators will state the purpose and indicate the scope of the investigation. A walk-through inspection of the firm's facility, including controlled substances storage areas, returned goods storage areas, and shipping and receiving areas should be conducted at this time to determine the firm's general procedures for handling controlled substances and whether any controlled substances are being stored in unsecured areas.

   Also during the walk-through inspection, Investigators are to take note of the location of security measures employed/installed by the registrant.

   2. Investigators will query the registrant regarding any known or suspected diversion of its products.*

B. *Background Information*

   1. Names, addresses, dates of birth, and social security numbers of corporate officers and/or owners of the firm should be obtained as well as identification of responsible individuals for record keeping and security. Identification should include whether a firm is a partnership, corporation, etc., where or when incorporated, as well as information regarding any subsidiary or related firms.

   2. Information concerning the location of the firm should include how long the firm has been in business and length of time at the current location.

   3. The percentage of the firm's business in controlled substances should be ascertained from a discussion with the firm's management or from business statistics.

   4. Proper registration of the firm with the appropriate state, local or other Federal agencies should be determined.

   5. The Investigators should determine the number of personnel employed by the firm, and the type of work they perform. The employees with access to controlled substances will be further identified by their social security number and date of birth.

   6. The Investigators will ascertain whether the firm has had any losses or thefts of controlled substances since the last investigation or since they began business, if a new firm. Reporting procedures regarding thefts or losses should be explained. Where losses or thefts have occurred, DEA files will be reviewed to determine if they have been properly reported.

   7. The Investigators should ascertain the firm's procedures for pre-employment checks, verification of DEA numbers, and the firm's system for identifying suspicious/excessive orders.

   8. The Investigators should determine if the firm handles listed chemicals. If so, the Investigators should provide the firm with necessary "notices" and regulations pertaining to the handling of listed chemicals.**

C. *Closing Inventory.* The Investigators will conduct a closing inventory of controlled substances being audited as well as *additional controlled substances currently encountered in the illicit market*. The inventory figures for the additional controlled substances can be used in the event that a follow-up investigation is necessary or in situations where there is

Page 39

3. A sampling of Automation of Reports and Consolidated Orders System (ARCOS) records should be compared to primary records for Schedule I and II substances to verify the accuracy of the records.*

**H. *Sales Records: Schedule III-V Substances***

1. The quantity of Schedule III-V controlled substances distributed may be determined from a number of different types of records. The primary sales record is the distributor's sales invoice. However, if the registrant has another/secondary record keeping system, such as computerized records which contain all required information (i.e., customer's name, address, DEA numbers, substance, strength, quantity, date shipped, and invoice number) and attests to its accuracy, these records may be used in conducting the accountability.

2. If secondary records are used in the accountability, a random cross-verification with primary records should be conducted. In addition, a sampling of Schedule II narcotics sales should also be cross-checked with ARCOS reports. Sales encompass all dispositions from inventory including such withdrawals as documented and properly reported thefts or losses, or properly inventoried destructions. Sales also include complimentary samples or no charge shipments. If the firm being investigated has returned the controlled substance to its supplier, this should be considered a sale. Thus, a credit memorandum with the source document or an order form, if required, would document the transaction.**

I. *Credits and Returns*

1. A review of credit memoranda must be made to ascertain that there was either physical movement of controlled substances or only monetary credit. Returned merchandise should be inspected to ensure that there is documentation showing disposition by destruction or return to inventory for resale.

**2. Records for the disposal of controlled substances should be in accordance with DEA policy.**

J. *General Recordkeeping*

1. Investigators should ensure that responsible individuals have been contacted and they have verified to the Investigator that all of the firm's records pertaining to controlled substances have been seen.

2. A review of the firm's monitoring system for detecting unusual sales should be performed in order to determine whether it complies with regulations.

**3. The Investigators should review the firm's procedures for making a "good faith inquiry" to determine if its customers are properly registered.**

K. *Accountability*

1. Investigator work papers, which substantiate the accountability as summarized on the computation chart, must adequately identify transactions. The work papers should include dates received/shipped, order forms or invoice numbers, supplier/customer names, drug names and strengths, package size, and quantity for each transaction.

2. The initial inventory, usually taken by the firm, is considered to be the starting point *of the accountability audit. This is combined with all receipts of controlled substances, including vendor receipts and customer returns, and represents the total that the firm is accountable for*.

The total accounted for is comprised of the closing inventory plus the sales or other dispositions, such as properly documented losses, destructions, vendor returns, etc. The equation can best be indicated by the following illustration:

Initial Inventory PLUS Purchases PLUS Customer Returns

Page 41

CONFIDENTIAL

CAH_MDL2804_02145554

e. Security precautions employed in shipping and receiving areas, picking areas, and packaging areas must be analyzed to ensure proper security is provided.

f. The Investigators must be concerned with the packaging and sealing of controlled substances for shipping to ensure compliance with appropriate regulations.

g. The Investigators *should ascertain the procedures regarding* key control and combination confidentiality for controlled substance storage areas; procedures for after-hours entry; procedures for changing the locks; badge or identification system; and supervised access. Information should be obtained concerning the frequency of internal alarm checks, how documented, etc.

M. *Discussion with Management*

*1. At the discretion of the Group Supervisor, the Investigators should discuss their findings with him/her prior to discussing the alleged violations with the firm's management. Significant record keeping discrepancies should be supported with documentation. A copy of the computation chart will not be provided to the firm.*

2. The firm should be informed of what courses of action against it are possible but not the specific action the Investigators intend to recommend. It is important for the Investigators to discuss all of the violations noted (including copies of violative documents) and to denote the appropriate section of the CFRs and/or the CSA which was violated. The Investigators should record the firm's explanations for the violations and any immediate corrective action the firm intends to take.

3. The Investigators should suggest changes that could be made in the firm's operation for the purpose of achieving compliance.

4. The Investigators are not to recommend individual or specific security companies or *[name] brands* of equipment which might solve the problems of the registrant. (Such a recommendation might be construed as an endorsement by DEA and should therefore be avoided.)

5. The Investigators will discuss the accountability of controlled substances audited. *Although a copy of the computation chart will not be provided to the registrant, at the Investigators' discretion, the disclosure of figures on the computation sheets may be discussed.* However, under no circumstances will the Investigators tell the firm the figures fall within an allowable percent or quantity deviation.

6. The discussion with management should either reinforce the Investigators' findings by the firm's acceptance of the cited violations and willingness to correct them or challenge the Investigators' findings by nonacceptance of the violations pointed out. If the latter is the case, the Investigators should attempt to understand the firm's opinions and reasons for them. If the firm's position is reasonable, the Investigators should verify the information and take appropriate action. The Investigators must control the direction and tone of this discussion. At no time should it be allowed to degenerate into an uncontrollable argument.

## 5241.4 FOLLOW-UP TO INVESTIGATION

A. *Supplier/Customer Verifications.* After the on-site of the investigation is completed, verifications of purchases and sales should be performed. The extent of the verifications should be conducted within the field office where possible if the Investigators develop minor or no record keeping discrepancies. In an investigation where discrepancies are indicated, verifications will be made as appropriate to the circumstances of the investigation (e.g., the firm's history, investigative findings during the current investigation, and intelligence information concerning suspected illicit activities).

*When verifications are conducted in person informed consent, as explained in 5231.5 of this manual, is required. The investigator should present a Notice of Inspection (NOI) of Controlled Premises (DEA Form 82) to the individual responsible for the operation of the firm. The investigators are to ensure that the person understands his/her rights and

CONFIDENTIAL
CAH_MDL2804_02145556