SJ-EXHIBIT 20

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF OHIO
 2                        EASTERN DIVISION

 3    IN RE:  NATIONAL          :   MDL No. 2804
      PRESCRIPTION OPIATE       :
 4    LITIGATION                :   Case No. 17-md-2804
                                :
 5    APPLIES TO ALL CASES      :   Hon. Dan A. Polster
                                :
 6                              :

 7

 8                     HIGHLY CONFIDENTIAL
 9          SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
10
11                          - - - -
12                      JANUARY 8, 2019
13                          - - - -
14        VIDEOTAPED DEPOSITION OF GREGORY CARLSON,
15    taken pursuant to notice, was held at Marcus &
16    Shapira, One Oxford Center, 35th Floor, Pittsburgh,
17    Pennsylvania 15219, by and before Ann Medis,
18    Registered Professional Reporter and Notary Public in
19    and for the Commonwealth of Pennsylvania, on Tuesday,
20    January 8, 2019, commencing at 9:06 a.m.
21                          - - - -
22                  GOLKOW LITIGATION SERVICES
             877.370.3377 phone | 917.591.5672 fax
23                      deps@golkow.com
24
25
```

 1   was complying with the Controlled Substances Act
 2   between 2009 and 2014 whether HBC had any policies
 3   in writing during that timeframe?
 4            MR. BARNES:  Object to form.
 5            THE WITNESS:  They had procedures in
 6   writing.
 7   BY MR. ROTTINGHAUS:
 8       Q.   Now you're using procedures, not
 9   policies.  So I want to make sure I'm not getting
10   confused.
11       A.   It's a definition from a Giant Eagle
12   definition standpoint.  So you can define policies
13   and procedures however you want.  We had
14   procedures documented.
15            When we went to get our DEA license, we had
16   to have procedures documented.  Otherwise, they
17   would not have approved.  The DEA approved our
18   facility to be licensed.  We had to have the
19   required documentation and procedures put together
20   on paper, and we showed them to the DEA officers
21   who came in and inspected the facility prior to
22   using it.  And all of our procedures matched up
23   with the Controlled Substances Act.
24       Q.   And these are in writing?
25       A.   They were in writing.

Highly Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. ROTTINGHAUS:
 2        Q.   Would one benefit of the documentation
 3   be the ability to show any regulatory body that
 4   HBC did indeed take steps to maintain a system, to
 5   implement, design and operate a system to disclose
 6   the presence of suspicious orders?
 7        A.   When we opened HBC, we received our DEA,
 8   we were inspected by the DEA.  They came in.  They
 9   looked at all of our security features related to
10   this Controlled Substances Act, looked at all of
11   our processes.
12        Our security, according to them, fit all
13   requirements, all the needed necessary steps.  We
14   were acting upon that.  There was nothing in the
15   provision that said we had to keep documentation
16   for any period of time on any investigation.
17        We did our process.  If there was any
18   suspicion come up, we investigated it thoroughly,
19   made our decision.  And I can't even think of a
20   time where we -- maybe there was a couple, but not
21   that I can recall, an example when there was a
22   suspicious order that we actually defined.  I'm
23   not saying it didn't happen, but I can't recall an
24   example.
25             MR. ROTTINGHAUS:  Object and move to
```

```
 1    did you understand that to include an overall

 2    evaluation of the adequacy of the controls at the

 3    HBC and store levels?

 4         A.    Yes.

 5         Q.    Do you understand that the regulation

 6    that you were shown by plaintiffs' counsel is just

 7    one small aspect of the overall security

 8    requirement?

 9         A.    Correct, yes.

10         Q.    And do you understand that 1301.74

11    requires that HBC operated a system to disclose

12    suspicious orders?

13         A.    Yes.

14         Q.    Did you ever understand it to require

15    any type of formulaic or threshold system?

16         A.    No.

17         Q.    At the warehouse level, I just want to

18    explore what you do understand.  You mentioned

19    cages, things of that nature.

20         Were these control IIIs, IVs, and Vs kept in

21    locked cages?

22         A.    Yes, per the DEA requirements of

23    specifically around the cage.

24         Q.    You said the DEA actually reviewed the

25    HBC security system before it opened and started
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   distributing control IIIs, IVs, and Vs?
 2       A.   Yes, before they approved our DEA
 3   license.
 4       Q.   And did they come in from time to time
 5   to reaudit and inspect?
 6       A.   Yes.
 7            MR. ROTTINGHAUS:  Objection.  Leading.
 8   BY MR. BARNES:
 9       Q.   At any time, did the DEA ever advise HBC
10   that there was anything lacking in their control
11   system?
12            MR. ROTTINGHAUS:  Objection.
13   Foundation.
14            THE WITNESS:  There was nothing pointed
15   out within our security measures that didn't meet
16   the requirements.
17   BY MR. BARNES:
18       Q.   Did Giant Eagle ever distribute to
19   internet pharmacies?
20       A.   No.
21       Q.   By Giant Eagle I'm including HBC.
22       A.   No, we did not.
23       Q.   But you've also told us that you don't
24   really know the details -- you said the pickers
25   were regulated in terms of access to the cages; is
```