# SJ-EXHIBIT 22

Highly Confidential - Subject to Further Confidentiality Review

```
 1               IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION
 3   IN RE:  NATIONAL         :   MDL No. 2804
     PRESCRIPTION OPIATE      :
 4   LITIGATION               :   Case No. 17-md-2804
                              :
 5   APPLIES TO ALL CASES     :   Hon. Dan A. Polster
                              :
 6                            :
 7
 8                     HIGHLY CONFIDENTIAL
 9         SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
10
11                         - - - -
12                      JANUARY 4, 2019
13                         - - - -
14       VIDEOTAPED DEPOSITION OF ANTHONY MOLLICA,
15   taken pursuant to notice, was held at Marcus &
16   Shapira, One Oxford Center, 35th Floor, Pittsburgh,
17   Pennsylvania 15219, by and before Ann Medis,
18   Registered Professional Reporter and Notary Public in
19   and for the Commonwealth of Pennsylvania, on Friday,
20   January 4, 2019, commencing at 8:06 a.m.
21                         - - - -
22                 GOLKOW LITIGATION SERVICES
            877.370.3377 phone | 917.591.5672 fax
23                     deps@golkow.com
24
25
```

Golkow Litigation Services                                    Page 1

1    requirements being held based on legal

2    requirements, et cetera.

3         Q.   Let's just, if we could, make a list of

4    these policies.  So the first that I heard was

5    good decisions on dispensing.

6         A.   We supported pharmacists' right to make

7    professional judgments as to what was proper and

8    improper in terms of dispensing, made sure the

9    pharmacists knew that they had the right, final

10   right of decision making when it came to

11   dispensing.

12        We had our controlled substance procedures

13   that we made sure was distributed.  We had audit

14   procedures that were done quarterly and documented

15   in accordance with what our procedures and

16   policies were at the time.  We had practices in

17   terms of document retention and what needed to be

18   done in terms of proper ordering, training,

19   training on -- we had manuals and references

20   regarding not only the DEA, but Pharmacy Act and

21   fraud, waste and abuse policies, CBTs, annual

22   meetings with a lot of discussions of what the

23   obligation of pharmacists were and helped in any

24   way.

25        We've had DEA inspections which were never --

```
 1   never got any feedback that we weren't doing
 2   anything other than what was required from us from
 3   a legal perspective.
 4        Q.   So I just want to make sure I've got an
 5   exhaustive list.  One was good decisions on
 6   dispensing.  Then you said you gave pharmacists or
 7   professionals the ability to make professional
 8   judgments on dispensing controlled substances?
 9        A.   Yeah, supported by the Pharmacy Act,
10   yes.
11        Q.   And then the second one was controlled
12   substance procedures?
13        A.   Again, Giant Eagle had a controlled
14   substance policy that's part of the control box,
15   and the company made sure that we communicated
16   what those procedures are to the pharmacy.
17        Q.   And what were those policies?
18        A.   I can't recite them.  It was part of the
19   control box.
20        Q.   When you say control box, what do you
21   mean by that?
22        A.   There was a physical box in every
23   pharmacy that was a single place to look for
24   procedures, documents, records, that type of
25   thing.  We called it the control box.
```