# SJ-EXHIBIT 28

```
 1      IN THE UNITED STATES DISTRICT COURT
 2        FOR THE NORTHERN DISTRICT OF OHIO
 3                EASTERN DIVISION
 4   IN RE:  NATIONAL PRESCRIPTION  :
     OPIATE LITIGATION              :  MDL No. 2804
 5   _____:  Case No.
                                    :  1:17-md-2804
 6   THIS DOCUMENT RELATES TO:      :
                                    :
 7   The County of Lake, Ohio v.    :  Hon. Dan A. Polster
     Purdue Pharma, LP, et al.      :
 8   Case No. 18-op-45032           :
                                    :
 9   The County of Trumbull, Ohio   :
     v. Purdue Pharma, LP, et al.   :
10   Case No. 1:18-op-45079         :
                                    :
11   Track 3 Cases                  :
     _____:
12
13         - HIGHLY CONFIDENTIAL -
     SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
14
                      - - -
15
                  March 5, 2021
16
                      - - -
17
             Videotaped remote deposition
18   of RICHARD SHAHEEN, taken pursuant to
     notice, was held via Zoom
19   videoconference, beginning at 10:23 a.m.,
     EST, on the above date, before Michelle
20   L. Gray, a Registered Professional
     Reporter, Certified Shorthand Reporter,
21   Certified Realtime Reporter, and Notary
     Public.
22
                      - - -
23        GOLKOW LITIGATION SERVICES
        877.370.3377 ph | 917.591.5672 fax
24              deps@golkow.com
```

```
 1            have added two other individuals
 2            who are also working in the
 3            pharmacy department.  I have two
 4            pharmacy investigators currently.
 5   BY MR. HARRIS:
 6            Q.   Are those the two
 7   individuals that you added?
 8            A.   Yes.
 9            Q.   What are their names?
10            A.   Andrew Gaus.
11            Q.   Is that G-A-U-S-E?
12            A.   G-A-U-S.
13            Q.   Okay.  Thank you.  The other
14   one?
15            A.   Sam Muhieddin.
16            Q.   Okay.  What did you do
17   before you joined Giant Eagle?
18            A.   I was with the Pennsylvania
19   Office of the Attorney General.  I was an
20   agent with the office.
21            Q.   Did you do investigations
22   during that role as well?
23            A.   I did.
24            Q.   Did you ever do
```

```
 1   investigations into controlled
 2   substances?
 3         A.    I did investigations into
 4   pharmacies and into doctors.
 5         Q.    Can you provide me a little
 6   more detail on that?  What was the scope
 7   of some of those investigations?
 8               MR. KOBRIN:  Object to form.
 9               THE WITNESS:  Independent
10         pharmacies were, in general,
11         filling out prescriptions without
12         proper authorization from doctors.
13               Same thing with physicians.
14         Physicians either practicing
15         outside the scope, fraudulently
16         billing Medicare, Medicaid, those
17         types of claims, white collar type
18         of investigations involving
19         practitioners.
20   BY MR. HARRIS:
21         Q.    You mentioned independent
22   pharmacies were in general filling
23   prescriptions without proper
24   authorizations.  Did you ever investigate
```

```
 1   chain pharmacies?
 2         A.    We didn't have that problem
 3   with chain pharmacies.
 4         Q.    Do you believe that problem
 5   exists with chain pharmacies?
 6         A.    Not that I'm aware of.
 7         Q.    Okay.  Have you ever
 8   investigated that issue inside Giant
 9   Eagle in your time working for them?
10         A.    No.
11               MR. KOBRIN:  Object to form.
12   BY MR. HARRIS:
13         Q.    I'm sorry.  It cut out a
14   little bit.  Can you repeat that?
15               MR. KOBRIN:  Yeah, just --
16         Rick, just make sure that you give
17         me a moment to object just in
18         case.
19   BY MR. HARRIS:
20         Q.    Do you want me to repeat my
21   question, Mr. Shaheen?
22         A.    Please.
23         Q.    Okay.  Have you ever
24   investigated that issue, meaning filling
```

```
 1   prescriptions without the proper
 2   authorization inside Giant Eagle in your
 3   time working for them?
 4            MR. KOBRIN:  Object to form.
 5            THE WITNESS:  I didn't hear
 6       you.  I didn't hear you.
 7            MR. KOBRIN:  I just said
 8       object to form.  You can -- you
 9       can still answer the question.
10            THE WITNESS:  Oh, okay.
11            Yes, I did investigate --
12       I'm just referring back to a case,
13       yes.
14   BY MR. HARRIS:
15       Q.   Okay.  Can you provide me a
16   little bit of detail on that
17   investigation?
18       A.   Patient was fraudulently
19   making up and filling -- making up their
20   own prescriptions.  I was alerted by our
21   pharmacist, and we then subsequently
22   contacted the appropriate law enforcement
23   agency, and an arrest was made.
24       Q.   During the course of your
```

```
 1   investigation into that patient, did you
 2   ever learn if any of their fraudulent
 3   scripts were filled?
 4         A.    I would have to look on the
 5   documents.  I do believe -- I do believe
 6   a couple of the scripts were filled
 7   though.
 8         Q.    Those would have been filled
 9   by Giant Eagle pharmacists?
10         A.    It would have been filled by
11   Giant Eagle pharmacists.  But once
12   they -- once they realized a prescription
13   through their due diligence, they
14   contacted me immediately and then we
15   began our case investigation.
16         Q.    Okay.  After they filled the
17   fraudulent prescriptions?
18         A.    I'm sorry?
19         Q.    They contacted you after
20   they filled several fraudulent
21   prescriptions?
22               MR. KOBRIN:  Object to form.
23         Facts not in evidence.
24   BY MR. HARRIS:
```

 1          Q.    You can go ahead and answer,
 2    Mr. Shaheen.
 3          A.    I don't know that.
 4    Sometimes what happens is if a pharmacy
 5    down the street or another pharmacy has
 6    said, "Hey, there's individuals going
 7    around attempting to pass scripts," then
 8    I would be notified by our people, and
 9    they would at that point, if they tried
10    to attempt to pass a script at our
11    pharmacy, we would -- we would certainly
12    try to get these individuals arrested or
13    contact law enforcement.
14          Q.    Okay.  Well, this is a
15    preview.  We'll be talking about some
16    investigations throughout the day.  So
17    we'll table this for now.  But I may
18    refer back to it later on.  Sound good?
19          A.    Yep.
20          Q.    Okay.  Let me ask you some
21    baseline questions before we dig in much
22    deeper.  Do you agree that addiction can
23    start with prescription substances?
24                MR. KOBRIN:  Object to form.

```
 1            No foundation.
 2                 You can answer, Rick.
 3                 THE WITNESS:  Repeat the
 4         question, please.
 5  BY MR. HARRIS:
 6       Q.   Sure.  Do you agree that
 7  addiction can start with prescription
 8  substances?
 9                 MR. KOBRIN:  Same objection.
10                 THE WITNESS:  I am not a
11         licensed pharmacist or a
12         physician.  I don't think I'm
13         adequately able to answer that
14         question.
15  BY MR. HARRIS:
16       Q.   Okay.  How long were you an
17  investigator for the Pennsylvania AG's
18  office?
19       A.   26 years.
20       Q.   I'm not going to ask you for
21  an exact number.  But roughly how many
22  pharmacies or doctors did you investigate
23  in that 26-year period?
24       A.   I don't have an exact
```