SJ-EXHIBIT 40

| | |
|---|---|
| **From:** | Kelly Chappell |
| **Sent:** | Fri, 17 Aug 2018 17:53:39 -0400 |
| **To:** | Chappell, Michael |
| **Cc:** | Rumcik, Bill;Shaheen, Richard |
| **Subject:** | Kelly Chappell - DEA investigator meeting |

EXHIBIT Tsipakis 44

DEA - Investigator - Richard Jones
8/17/18
11:15-12:45 PM

Meeting Attendees: Kelly Chappell and Richard Jones

Richard Jones requested a meeting with me on Monday to discuss a complaint that he needed to investigate involving myself and my company's procedures and guidelines.  He said that he could not provide any details over the phone but would need about 30 minutes of my time to conduct his investigation.  He told me "you are not in any trouble."  I scheduled meeting for Friday August 17th at 11:15PM

Richard met me at Panera for our meeting and starting by opening up a file folder with my name "Kelly Ann Nicole Chappell" label on the outside along with the date February 14, 2018.  He flipped through a packet of papers and asked that I verify the information on the top of the page was mine, including my full name, DOB, address, and social security number.  He then asked me to review my processes in how I would handle a narcotic prescription - for example an Oxycontin RX High quantity.  I told him that I handle every prescription with care, always keeping patient safety in mind - whether red flags exists or not.  If there was concern with this high quantity prescription, I would reach out to the prescriber to check the validity of the prescription, ask for a diagnosis code, and depending on dosage and duration of care, I may ask for clinical notes to support that the patient is following up with the physician for pain management visits, and ask if there is a pain contract and plan in place if necessary.

Upon me asking for more information about the specific complaint, he said that collaboratively a group of Dr.'s were upset that the pharmacies - Giant EAgle, CVS, Rite Aid mentioned -  in that pharmacists were refusing to fill prescriptions and a single individual submitted a complaint, specifically mentioning my name, Kelly Chappell, representing Giant Eagle Pharmacy.  He could not give me the name of who filed the complaint and could not provide any additional information on the case because the information provided to him was limited as well.  He said that he DEA is in a current position where pharmacists are refusing to fill physician's prescriptions, physician's are getting fed up and filing complaints on pharmacies for this and/or they just stop writing for the prescriptions because of it, and then the patient is getting upset with

the physicians because they are going without medication and the patient calls the DEA and files a complaint.

He continued by asking what my company's procedures or guidelines that I am I expected to follow when filling narcotic prescriptions. I referred to the Pennsylvania DEA Narcotic Dispensing Guidelines. He flipped through the folder and I could see that those guidelines were printed out in my file. I reviewed my knowledge of the guidelines, keeping patient safety above all. I said that the guidelines specify that there should be a doctor-pharmacy relationship and understanding about the patient's care. We have called many physicians requesting additional information before filling narcotic prescriptions, and most cooperate, provide what we request and the prescription is filled or we may make suggestions, or inquire if the physician recommended physical therapy, psych therapy, or had a plan to refer to the patient for pain management. Physicans have faxed over pain management contracts, plan for care, made adjustment to the pain therapy, and some have referred their patients to pain management. I have a strict 3 day early rule that I hold true for all of my patients for all of their narcotic medications. I will not fill more than 3 days earlier than the supply they should have left at home.

He asked if I ever had to reach out to a regional supervisor to discuss Giant Eagle's procedures and guidelines on how handle some of these situations. I told him that a physician called me several months ago in reply back to a request for further documentation on one of his patient's prescriptions for a pain medication. He personally called me back to tell me that he would not be providing any documentation because it's a HIPAA violation. I assured him all of my team members were HIPAA certified. He then said it was doctor-patient confidentiality and I did not have the right to see the information. I told him that I have not had issues with obtaining this information from other physicians. My team mailed a HIPAA release form to the patient asking if it was okay for her Dr. to share information with us so we could continue providing her care. The Dr asked for my supervisor's phone number and then wrote a letter to corporate complaining that I was out of line in my request. Richard asked me who the Dr. was that I was referring to and I told him Dr. Wong.

Even after Dr. Wong arrogantly belittled me, I would not be bullied into filling his patient's prescription, he told his patient's to stop bringing their prescriptions to me because I was going to refuse to fill them. I recall one of his patient's who came to me for monthly narcotics was directed by him to contact the DEA for the hasel I was causing. This patient called in a complaint on me to my company and I reviewed my corresponding responsibility to her when filling her medication.

HIGHLY CONFIDENTIAL GE_TL00002049

He asked what my relationship was with the surrounding pharmacies- CVS, Rite Aid - in regards to one of us not filling a prescription.  The question was vague so I said, "If you are asking me that if I refuse to fill a prescription, do I call another pharmacy and tell them not to fill the prescription, No."  If another pharmacists calls me after running a PDMP and asks why am I no longer filling a prescription for a patient after they have been coming to me, I give them the facts.  I have never cut off a patient, without warning and propper counseling  that I am not comfortable continuing to fill this ongoing monthly prescription if I do not have the documentation to support the need for the med for a long duration and higher dosed prescriptions.  I explained to Richard that I have several patients who were referred to pain management after being under their primary care physicians care for years for narcotic pain therapy - many of them are on reduced doses or are no longer on pain therapy at all.

He gave me examples of a young pharmacist who was questioned for filling prescriptions time after time after time gain, putting the patient PDMP profile in front of him and the pharmacists said it did look good.  Pharmacists asked if he was going to get in trouble and he said well why did you keep filling the prescriptions?   He gave me examples of several pharmacists going to jail for filling prescriptions, taking licenses off of nurses and nurse practitioners because they became addicted themself, interfering with their cognitive ability to practice and prescribe medication.  He gave me a personal example of himself being prescribed pain meds after two back to back back surgeries and he said at one point he felt that he kept needing the medication and he didn't want to feel the way he felt, so he quit cold turkey and never took another pain med since - indicating that it wasn't his pain that was causing him to feel the need to take the medication.

He wrapped up the investigation and I questioned where does it go from here.  He said that it is a slow process and I would probably hear something in the next 4 to 5 MONTHS.  I asked him if I should be concerned and try to recall facts on a particular matter in case something were to proceed to court, and he said keep doing what you are doing.  Keep fighting the good fight.

Thanks,
Kelly Chappell

HIGHLY CONFIDENTIAL
GE_TL00002050