# SJ-EXHIBIT 43

Highly Confidential - Subject to Further Confidentiality Review

1              UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF OHIO
2                     EASTERN DIVISION
3
     IN RE: NATIONAL           )
4    PRESCRIPTION              )   MDL No. 2804
     OPIATE LITIGATION         )
5    _____    )   Case No.
                               )   1:17-MD-2804
6                              )
     THIS DOCUMENT RELATES     )   Hon. Dan A.
7    TO ALL CASES              )   Polster
8
               FRIDAY, NOVEMBER 13, 2020
9
       HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
10               CONFIDENTIALITY REVIEW
11                      - - -
12         Remote videotaped deposition of
13   Drug Enforcement Agency 30(b)(6) designee
14   Claire Brennan, held at the location of the
15   witness commencing at 10:05 a.m. Eastern
16   Time, on the above date, before Carrie A.
17   Campbell, Registered Diplomate Reporter
18    and Certified Realtime Reporter.
19
20
21
22                      - - -
23
             GOLKOW LITIGATION SERVICES
24      877.370.3377 ph | 917.591.5672 fax
                deps@golkow.com
25

```
 1                  MR. JACO:  Objection.  Form.
 2                  THE WITNESS:  Yes, we're
 3          required to look at -- investigate
 4          distributors on site.
 5   QUESTIONS BY MS. SWIFT:
 6        Q.     And that's not a sign that a
 7   company is necessarily doing anything wrong.
 8   Everybody gets investigated whether they're
 9   doing anything wrong or not, fair?
10        A.     Yes.
11        Q.     Would you agree with me that
12   it's important -- strike that.
13                  Would you agree that the
14   on-site investigations that diversion
15   investigators conduct are important so that
16   the DEA can make sure distributors are
17   complying with the laws and regulations?
18                  MR. JACO:  Objection.  Form.
19                  THE WITNESS:  Yes, I would
20          agree that it's for all registrants.
21   QUESTIONS BY MS. SWIFT:
22        Q.     Would you agree with me that
23   on-site investigations of distributors are
24   also important to fulfill DEA's mission of
25   preventing diversion?
```

1 yes.
2    Q.    Do you believe that the
3 diversion investigators at the DEA do a
4 careful, thorough job when documenting their
5 findings during investigations?
6    A.    DEA expects that an
7 investigation would be documented.
8    Q.    When a diversion investigator
9 finds a problem at a distribution center, do
10 they document it, typically?
11    MR. JACO:  Objection.  Form.
12    THE WITNESS:  Typically the
13    problem would be documented.
14 QUESTIONS BY MS. SWIFT:
15    Q.    And if a diversion investigator
16 sees a violation of the laws and regulations,
17 is it typical for the diversion investigator
18 to document that as a part of an
19 investigation?
20    MR. JACO:  Objection.  Form.
21    THE WITNESS:  Yes, it's typical
22    that a violation would be documented.
23    (Brennan 30(b)(6) Exhibit 20
24    marked for identification.)
25

Highly Confidential - Subject to Further Confidentiality Review

1  QUESTIONS BY MS. SWIFT:

2      Q.    And when you say "go out every
3  so many years to a registrant," you mean the
4  diversion investigator's actually going to
5  the distribution center and conducting an
6  investigation to make sure they're following
7  the laws, fair?

8          MR. JACO:  Objection.  Form.

9          You can answer.

10         THE WITNESS:  Yes.

11  QUESTIONS BY MS. SWIFT:

12     Q.    And I believe you already
13  testified that the purpose of the cyclic
14  investigations that DEA conducts is to make
15  sure that distributors are following DEA
16  regulations in distributing controlled
17  substances such as opioids; is that fair?

18     A.    Yes.

19     Q.    Is it standard operating
20  procedure at the DEA for the diversion
21  investigator to create a report of the cyclic
22  investigations they conduct?

23     A.    It's a requirement, yes.

24     Q.    Do DEA's investigation reports
25  typically follow a standard format?

Highly Confidential - Subject to Further Confidentiality Review

```
 1           A.      Yes.
 2           Q.      The DEA's investigation reports
 3   typically address a standard set of issues to
 4   make sure the DEA investigator is covering
 5   each of those issues in the investigation; is
 6   that fair?
 7                   MR. JACO:  Objection.  Form.
 8                   You can answer.
 9                   THE WITNESS:  Yes.
10   QUESTIONS BY MS. SWIFT:
11           Q.      Is it a DEA requirement that
12   DEA investigators document certain things
13   when they conduct their investigations?
14           A.      Yes, we have -- that's part of
15   the standard format.
16           Q.      Is one of the goals of the
17   DEA's investigations to try to make sure that
18   pharmacy distributors are following DEA
19   regulations to the letter?
20           A.      It would be to ensure that
21   they're following the regulations.
22           Q.      And DEA wants distributors to
23   do that -- DEA wants distributors to dot
24   every I and cross every T when it comes to
25   following those regulations, right?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1                  MR. JACO:  Objection.  Form.
 2                  THE WITNESS:  Without
 3        knowing -- without seeing every single
 4        investigation, it's hard to say.
 5   QUESTIONS BY MS. SWIFT:
 6        Q.    Is it fair to say that the
 7   diversion investigator is going to document
 8   violations discovered during an investigation
 9   whether they're big or small?
10                  MR. JACO:  Objection.  Form.
11                  THE WITNESS:  The expectation
12        of DEA would be that.
13   QUESTIONS BY MS. SWIFT:
14        Q.    And sometimes the violations
15   that a diversion investigator identifies
16   during an investigation involves things like
17   records not being filled out exactly the
18   right way; is that fair?
19                  MR. JACO:  Objection.  Form.
20                  THE WITNESS:  Yes.
21   QUESTIONS BY MS. SWIFT:
22        Q.    When that happens, the
23   investigator documents it, right?
24        A.    That would be DEA's
25   expectation.
```

```
 1    or documents to verify what Walgreens'
 2    position is during those interviews?
 3                  MR. JACO:  Objection.  Form.
 4                  You can answer.
 5                  THE WITNESS:  A diversion
 6         investigator would have the ability to
 7         review any documents that they're --
 8         that they're required to keep
 9         according to the regulations.
10    QUESTIONS BY MR. MOUGEY:
11         Q.    How long does a -- is there a
12    standard or a typical time period that one of
13    these audits or investigations take place?  I
14    mean, is it a few days?  A week?
15         A.    It can all be dependent upon
16    the size of the company, you know, of the
17    registrant, how many diversion investigators
18    are there and how quickly they're able to
19    provide records.
20         Q.    So let's just take Walgreens,
21    which is -- I would assume is one of the
22    larger companies that the DEA dealt with in
23    its role of performing an audit from the DIs,
24    correct?
25         A.    It would be probably among some
```

1  this morning about what diversion

2  investigators do when they go on site to

3  conduct a cyclic investigation.

4          Do you remember those

5  questions?

6      A.   Yes.

7      Q.   And then plaintiffs' counsel

8  asked you questions about, well, wouldn't you

9  have liked to know about all these other

10 things.

11         Do you remember those

12 questions?

13     A.   Yes.

14     Q.   Is it a fair statement that a

15 diversion investigator who goes on site to

16 investigate a distribution center can ask to

17 talk to whoever they want to talk to?

18     A.   Yes.

19     Q.   Is it a fair statement that the

20 diversion investigators can request whatever

21 documents they need to conduct their

22 investigation?

23     A.   Yes.

24     Q.   Do the diversion investigators

25 have the leeway to ask as many questions as