UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 1:17-md-2804 |
| *Track Three Cases* | Judge Dan Aaron Polster |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF CRAIG MCCANN**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................1

BACKGROUND .................................................................................................................................2

        A.       Plaintiffs identify prescriptions they allege caused them harm ...............................2

        B.       Plaintiffs' initial expert reports double the universe of prescriptions .....................3

        C.       Plaintiffs choose to limit universe to "combination" prescriptions ........................3

ARGUMENT .......................................................................................................................................4

I.       McCann's Dispensing Analyses Necessarily Depend on the Expert Opinions of Catizone and Should be Excluded for the Same Reasons ..................................................................5

II.      McCann's Dispensing Analyses Should be Excluded Because They are Arbitrary and Unreliable and Do Not Fit the Facts at Issue in the Case. ..................................................6

CONCLUSION ....................................................................................................................................7

## **TABLE OF AUTHORITIES**

**CASES**

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993) ............................................................................................4, 5, 6, 7

*Pride v. BIC Corp.*,
 218 F.3d 566 (6th Cir. 2000) ................................................................................................6

*Rink v. Cheminova*,
 400 F.3d 1286 (11th Cir. 2005) ...........................................................................................5

*Sims v. Kia Motors of America, Inc.*,
 839 F.3d 393 (5th Cir. 2016) ................................................................................................5

*United States v. Downing*,
 753 F.2d 1224 (3d Cir. 1985) ...............................................................................................4

**RULES**

FED. R. EVID. 702 .........................................................................................................4, 5, 6

**INTRODUCTION**

Defendants[1] move to exclude the opinions and testimony of Plaintiffs' data expert Dr. Craig McCann.[2] In Track 3, McCann offers new opinions based on his analysis of Defendants' prescription records using "red flag" criteria he received from Plaintiffs' lawyers. Applying various combinations of those criteria to Defendants' dispensing data, McCann flags between roughly 1 million and 2.5 million individual prescriptions. Pursuant to this Court's order on Defendants' motions to strike untimely disclosed "red flag" prescriptions, Plaintiffs already have chosen to limit McCann's dispensing opinions to a "combination set" of 884,166 prescriptions. *See* ECF No. 3726; ECF No. 3743 at 1 ("Plaintiffs elected to, and will, rely on the . . . "Combination Red Flagged Prescriptions" . . . during their case-in-chief. . . . The final tally is 884,166.").

As with his distribution analysis, McCann offers no opinions about the validity of any of the criteria Plaintiffs' lawyers told him to use or the appropriateness of any of the dispensing transactions he flagged, relying entirely on counsel and other experts to make those determinations. For his dispensing analysis, McCann relies exclusively on 27 "red flag" criteria he received from Plaintiffs' lawyers and on 16 additional "red flags" originating with Plaintiffs' pharmacy expert Carmen Catizone. For the reasons set out in a separate motion by Defendants, filed contemporaneously herewith, the Court should exclude all of Catizone's opinions and

---

[1] Defendants (or "Pharmacy Defendants") are Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.; CVS Indiana, L.L.C., CVS Rx Services, Inc., CVS Pharmacy, Inc., CVS TN Distribution, L.L.C., and Ohio CVS Stores, L.L.C.; Rite Aid Hdqtrs. Corp., Rite Aid of Ohio, Inc., Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-Atlantic Customer Support Center, and Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center; Giant Eagle, Inc. and HBC Service Company; and Walmart Inc.

[2] Defendants moved to exclude McCann's distribution opinions and testimony in Track 1. ECF No. 1906. The Court denied that motion. ECF No. 2494. Defendants now move to exclude McCann's distribution opinions in Track 3 by incorporating those arguments by reference.

1

testimony on which McCann relies.  If the Court does so, McCann's dispensing opinions necessarily fail as well.  The Court should exclude McCann's dispensing opinions even if the Court does not grant that motion, however.  Those opinions are inherently arbitrary and unreliable, as they are dependent on "red flag" criteria no expert has disclosed in this case.  As a result, the Court should exclude McCann's dispensing opinions as unreliable and disconnected from the facts at issue in the case.

## BACKGROUND

To understand why McCann's dispensing analyses are unreliable and should be excluded, it is necessary to recount the history of the ever-changing universe of prescriptions Plaintiffs claim Defendants filled improperly and caused Plaintiffs' harm.

### A.     Plaintiffs identify prescriptions they allege caused them harm.

At a December 2019 status conference, the Court ruled that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 1, 12/4/19 Hr'g Tr. at 55:3-6 (Under Seal).

In light of that directive from the Court, the Track 3 schedule included a June 2020 deadline for Plaintiffs to identify "red flag" prescriptions, or any other "prescriptions they (or their experts) conclude caused them the harm for which they seek relief."  ECF No 3329 at 3.  Plaintiffs were not only required to identify those prescriptions, but also the methodologies, electronic scripts, and analytical programs used to implement them.  *Id.*

Accordingly, on June 19, 2020, Plaintiffs produced a "dispensing red flag analysis" based on 27 disclosed "red flag criteria."  *See* Ex. 2 (Red Flag Criteria); Ex. 3 (Dispensing Red Flag Analysis).  The June 2020 analysis applying these 27 criteria flagged 25% of Defendants' prescriptions records—a total of more than a million prescriptions.

2

In his Track 3 deposition, McCann testified that he believed his office supplied the June 2020 analysis to Plaintiffs' counsel.  Ex. 4, 6/11/21 McCann Tr. at 92:2-24.

### B. Plaintiffs' initial expert reports double the universe of prescriptions.

When Plaintiffs served their expert reports in April 2021, McCann's report analyzed Defendants' dispensing data using not only the 27 "red flags" that had been disclosed in June 2020, but also 16 additional "red flags" Catizone identified.  Plaintiffs' new expert analysis now flagged an incredible 54% of Defendants' prescription records—a total of 2.45 million.

Critically, out of all of Plaintiffs' experts, only Catizone identifies any "red flag" criteria.  He identifies *only* the 16 new "red flags" and does not even discuss the 27 "red flags" disclosed by Plaintiffs in June 2020 and analyzed in McCann's initial report.  *Compare* Ex. 5, Expert Report of Carmen Catizone at 36-50 (describing 16 "red flags" in 11 categories), *with* Ex. 6, Expert Report of Craig McCann at 150-56 (listing 43 "red flags," the first 16 of which match Catizone's report); *see also* Ex. 4, 6/11/21 McCann Tr. at 103:13-18 (confirming that "red flags" 17 to 43 match the June 2020 disclosure).

McCann himself attributed the initial 27 "red flags" to Plaintiffs' counsel.  He did not know who specifically drafted the criteria, but testified that "clearly counsel would have contributed to the drafting."  Ex. 4, 6/11/21 McCann Tr. at 89:3-4.

### C. Plaintiffs choose to limit universe to "combination" prescriptions.

After Defendants moved to strike the previously undisclosed prescriptions identified using Catizone's 16 new "red flags," the Court gave Plaintiffs three options for which prescriptions they could use at trial: "(1) the original 1 million prescriptions identified in June 2020; (2) the [estimated] 840,000 overlapping prescriptions; or (3) the 2 million prescriptions identified in April 2021."  ECF No. 3726 at 2.  But "[s]hould Plaintiffs opt to use the universe of

3

2 million prescriptions, then the trial currently set for October 2021 would be postponed . . . to provide Pharmacy Defendants time to conduct fact discovery." *Id.*

Plaintiffs selected the "overlapping prescriptions" option.  ECF No. 3743 at 1.  This means that, to be used at trial, a prescription must have been flagged by at least one of the "red flags" in the new set of 16 from Catizone ***and*** at least one of the "red flags" in the initial set of 27. *Id.* at 1 n.1.  The "final tally" of overlapping prescriptions is 884,166 prescriptions. *Id.* at 1.

Plaintiffs served supplemental expert reports for McCann and Catizone, purportedly reflecting and explaining the new "combination" numbers.  *See* Ex. 7, Second Supplemental Report of Craig McCann at 3-4; Ex. 8, Supplemental Report of Carmen Catizone at 31-51.  However, Catizone's supplemental report merely replaces the actual number of prescriptions flagged by each of his 16 "red flags" with totals reflecting those prescriptions that were also flagged by one of the original 27 "red flags" from Plaintiffs' counsel.  *See id.*  Catizone's supplemental report provides no revised description for any of his "red flag" criteria, nor any reasoned explanation for how he reached the new numbers.[3]

## ARGUMENT

Expert evidence or testimony must be the "product of reliable principles and methods" that are "reliably applied" and that will "help the trier of fact to understand the evidence or to determine a fact in issue."  FED. R. EVID. 702.  Expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (quoting *United States v. Downing*, 753 F.2d 1224, 1242

---

[3] Later in his Supplemental Report, Catizone includes a footnote vaguely stating that "[t]he flagged prescriptions were limited pursuant to the Court's May 10, 2021 order, Doc. #3726 to the prescriptions flagged by the universe of 884,166 prescriptions previously disclosed by Plaintiffs in their June 2020 Response to Interrogatories referred to as the 'Combination Red Flagged Prescriptions.'"  Ex. 8, Catizone Supplemental Report at 51 n.126.

(3d Cir. 1985)).  In other words, there must be "a valid scientific connection to the pertinent inquiry as a precondition to admissibility" of any expert opinion.  *Id.*

**I.      McCann's Dispensing Analyses Necessarily Depend on the Expert Opinions of Catizone and Should be Excluded for the Same Reasons.**

As McCann has testified, he offers no opinions whatsoever about the validity of the "red flags" he was given or their appropriateness for identifying improper prescriptions, including whether they identify prescriptions actually posing any risk of diversion.  Ex. 4, 6/11/21 McCann Tr. at 121:2-123:1; *id.* at 138:3-14.  McCann defers to other experts on pharmacy practice and DEA guidance, describing himself as a sort of "human calculator."  *Id*. at 274:6-10.

For McCann's dispensing opinions, the only relevant expert Plaintiffs disclosed is Catizone, whose reports and testimony are purportedly intended to connect McCann's flagged dispensing transactions to Plaintiffs' allegation that Pharmacy Defendants improperly filled prescriptions in the Track 3 counties and caused harm to Plaintiffs.  *See* Ex. 4, 6/11/21 McCann Tr. at 90:5-13 (stating his understanding that the new set of 16 "red flags" came "ultimately from Mr. Catizone"); *see also* Ex. 5, Expert Report of Carmen Catizone at 32 (opining that "red flags 1-16" in "Dr. McCann's report" are signs of "diversion").

Given the strict limitations of his opinions, the only way McCann's dispensing analyses can assist the trier of fact is if Catizone validates McCann's numbers as evidence of improper dispensing by Pharmacy Defendants.  But Catizone's opinions and testimony are excludable under *Daubert* and Rule 702, for the reasons stated in Defendants' separate motion.  Without Catizone to connect his analyses to relevant conduct, McCann's opinions are entirely unreliable, disconnected from the facts at issue, and should be excluded.  *See Sims v. Kia Motors of America, Inc.*, 839 F.3d 393, 405 (5th Cir. 2016) ("[T]he district court properly excluded [the expert's] theory . . . because it relied on [another expert's] inadmissible . . . theory."); *Rink v.*

5

*Cheminova*, 400 F.3d 1286, 1294 (11th Cir. 2005) (experts were "properly excluded" when the relevance of their opinions relied on the opinions of an excluded expert).

### II. McCann's Dispensing Analyses Should be Excluded Because They are Arbitrary and Unreliable and Do Not Fit the Facts at Issue in the Case.

Even if the Court does not exclude Catizone's reports and testimony, it still should exclude McCann's dispensing opinions because the flagged prescriptions in his Second Supplemental Report are inherently arbitrary and unreliable. The "compilation" numbers McCann intends to present at trial do not reflect the actual universe of prescriptions that Catizone (or any other expert) says were improper or should have been flagged. Instead, they reflect nothing more than Plaintiffs' last-ditch attempt to avoid the consequences of their untimely expert disclosures and the fact that Plaintiffs have not disclosed any expert to validate the 27 "red flags" used to generate their June 2020 list. McCann's resulting "compilation" numbers are certainly ***not*** the product of reliable principles or methods under *Daubert* and Rule 702.

McCann's "compilation" numbers also do not fit the facts of this case. *See Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (requiring a "connection between the . . . test result being offered and the disputed factual issues in the case"). As with his distribution opinions, McCann presents his dispensing analyses only in the aggregate. *See generally* Ex. 7, McCann Second Supplemental Report at 3-9; Ex. 9, Appendix 14 to Second Supplemental Report. In order for such high-level, aggregate numbers to fit the facts at issue and assist the trier of fact, they must accurately represent the universe of prescriptions Pharmacy Defendants should not have filled. They plainly do not, and any contrary characterization is a sham. In reality, McCann's "compilation" numbers are a heavily (and artificially) manipulated universe of transactions that happen to hit on 27 "red flags" that no expert has ever disclosed or explained.

6

In his initial report, McCann states his "understanding" that the critical set of 27 "red flags" can be supported by various industry and governmental sources. Ex. 6, McCann Report at 150 n. 44. McCann's "understanding" is irrelevant. He is not an expert on pharmacy practice or DEA guidance, depending on other experts to validate his "understanding" and connect the "red flags" to the facts. But none of Plaintiffs' other experts have done so. In fact, none of Plaintiffs' experts even *purport* to analyze any individual pharmacy, doctor, patient, or prescription to connect McCann's aggregated charts and "red flag" dispensing analyses to "the pertinent inquiry" of whether any prescription was improperly filled and diverted. *Daubert*, 509 U.S. at 591.

Because there is no reliable basis supporting McCann's application of his "compilation" analyses or connecting them to the facts in this case, they should be excluded.

## CONCLUSION

For these reasons, the Court should exclude McCann's opinions and proposed testimony.

Dated: July 23, 2021                                   Respectfully submitted,

/s/  *Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, Illinois 60654
Phone: (312) 494-4400
E-mail: kaspar.stoffelmayr@bartlitbeck.com
E-mail: brian.swanson@bartlitbeck.com
E-mail: kate.swift@bartlitbeck.com
E-mail: sharon.desh@bartlitbeck.com
E-mail: sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
Phone: (303) 592-3100
E-mail: alex.harris@bartlitbeck.com

*Attorneys for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*

/s/   *John M. Majoras*
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Email: jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

8

/s/    *Alexandra W. Miller* (consent)
Alexandra W. Miller
Eric R. Delinsky
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
E-mail: smiller@zuckerman.com
E-mail: edelinsky@zuckerman.com

*Attorneys for CVS Indiana, L.L.C., CVS Rx Services, Inc., CVS Pharmacy, Inc., CVS TN Distribution, L.L.C., and Ohio CVS Stores, L.L.C.*


/s/    *Robert M. Barnes* (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre 301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Email: rbarnes@marcus-shapira.com
Email: livingston@marcus-shapira.com
Email: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle and HBC Service Company*


/s/    *Kelly A. Moore* (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Phone: (212) 309-6612
E-mail: kelly.moore@morganlewis.com

9

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5917
Email: elisa.mcenroe@morganlewis.com

*Attorneys for Rite Aid Hdqtrs. Corp., Rite Aid of Ohio, Inc., Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-Atlantic Customer Support Center and Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center*