# Attachment A

*In re National Prescription Opiate Litigation: MDL 2804 Track Three*

**PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' DAUBERT MOTION TO EXCLUDE THE OPINIONS OFFERED BY JAMES RAFALSKI**

**SUMMARY SHEET OF CONCISE ISSUES RAISED**

**Motion**: Certain Defendants' Daubert Motion to Exclude the Opinions Offered by James Rafalski (Dkt #3855-2)

**Concise Description of the Issues:**

This Court should not exclude the opinions of James Rafalski as to the Moving Defendants. First, contrary to the Moving Defendants' argument, Mr. Rafalski does not offer the kind of legal opinions this Court excluded in CT1. The opinions he does offer, including opinions about the key components of a system to maintain effective controls against diversion are and his opinion that the Moving Defendants' SOM systems were inadequate to maintain effective control against diversion are within the scope of what this Court permitted in its CT1 order.

Mr. Rafalski's opinions regarding Moving Defendants' SOM systems are reliable for the same reasons this Court found similar opinions admissible in CT1. Mr. Rafalski properly applies his extensive experience as a DEA Diversion Investigator to the facts of this case. That Mr. Rafalski did not perform the physical inspection he would have performed as a DEA investigator does not change the reliability or admissibility of those opinions, especially because Plaintiffs' claims do not pertain to physical security. Defendants' arguments about inspection reports, about the percentage of distributors Mr. Rafalski found to be in compliance while working for the DEA, and about potential confounding factors, go to the weight, not the admissibility, of his testimony.

Mr. Rafalski's causation opinions are similarly reliable and admissible. He identifies one methodology for flagging suspicious orders (Methodology A) that has been endorsed by a federal court and that he believes is reasonable and appropriate, and six others as illustrations of what distributors have used in the past. All seven are useful in understanding what distributors can and have done, although Mr. Rafalski does not endorse any of the methods other than Methodology A. That the seven methodologies would flag different numbers of orders as suspicious does not reflect a weakness in Mr. Rafalski's approach or an "error rate"; rather, it is a reflection of the inconsistency of the methods distributors, including the Moving Defendants, have used. That the Moving Defendants "self-distributed" opioids in no way affects the analysis, because they have the same obligations to know their customers as unrelated distributors and this Court has already found that pharmacy-level analysis is not necessary to support Mr. Rafalski's causation opinion. Rather, as the Court has previously held, given the number of suspicious orders that were shipped without due diligence and given that the harms that occurred were precisely those that one would expect to occur as a result of a failure to control the supply chain, a fact-finder could conclude that the failure to flag and investigate suspicious orders was a substantial contributing factor to the harms Plaintiffs have suffered. The same is true here.