# ATTACHMENT 1

*In re National Prescription Opiate Litigation: MDL 2804 Track Three*

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE ANNA LEMBKE**

**SUMMARY SHEET OF CONCISE ISSUES RAISED**

**Motion**:   Pharmacy Defendants' Motion to Exclude Anna Lembke

**Concise Description of the Issues:**

Defendants' Motion to Exclude the Testimony of Anna Lembke should be denied in its entirety.  To begin with, Defendants fail to identify the portions of Dr. Lembke's testimony they seek to exclude, reason enough for the Court to deny the motion.  But even the Court is able to parse out what Defendants seek to exclude, the motion should nonetheless be denied.

Defendants' primary attack on Dr. Lembke is that she is a medical doctor and therefore, they contend, not qualified to opine about pharmacy practice.  Defendants are wrong.  Medicine and pharmacy practice are closely-related fields.  Specifically, with respect to controlled substances, the duties of doctors and pharmacists are intertwined:  while prescribers are responsible for proper prescribing and dispensing, pharmacies have a "corresponding responsibility" to ensure that controlled substances are dispensed only pursuant to valid prescriptions.  Federal law thus tasks both physicians and pharmacists with identifying and investigating many of the identical signs of potential diversion or illegitimate prescribing, such as co-prescribing of inappropriate drug "cocktails"; "doctor shopping"; early refills; and multiple prescriptions for the same drug or class of drugs.  Medical doctors professionally opine on pharmacy practices in peer-reviewed literature. And courts have allowed pharmacists to testify to a physician's conduct or other matters within the practice of medicine. In addition, Dr. Lembke's own experience as an addiction medicine doctor demonstrates her expertise.  As Dr. Lembke has testified, in the context of addictive drugs, physicians and pharmacists work together collaboratively with the mutual goal of protecting the best interests of patients in receiving the proper medication, and the best interests of the community; she herself has engaged in precisely that kind of collaboration with pharmacists to prevent improper dispensing and diversion.

Defendants' attack Dr. Lembke's use of aggregate data, but this Court has repeatedly rejected this and similar arguments.  Defendants also object to the Dr. Lembke's use of the phrase "Pharmaceutical Opioid Industry," but her word choice is not the proper subject of a *Daubert* motion and can be addressed at trial in the context of her actual testimony.  Defendants misunderstand Dr. Lembke's testimony and federal law with respect to dispensing, when they assert that the touchstone of a proper prescription is the prescriber's subjective mental state; this cannot be so with respect to dispensing, because a pharmacist's duty is to investigate and resolve objective indicia of diversion—that is, "red flags." These include information available from prescription drug monitoring programs of the same type that Dr. Lembke regularly consults with regard to her patients, as well as red flags arising from hazardous drug "cocktails," and Dr. Lembke has published about both of these subjects outside of litigation.

Finally, because the record before the Court now is significantly different from the record in CT1, this Court should reconsider, and not adhere to, its prior ruling, and should allow Dr. Lembke to offer the opinions in her report about marketing causation.