# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | |
| THIS DOCUMENT RELATES TO: | MDL No. 2804 |
| *County of Lake, Ohio v. Purdue Pharma, et al.*, Case No. 18-op-45032 | Case No. 1:17-md-2804 |
| | Judge Dan Aaron Polster |
| *County of Trumbull, Ohio v. Purdue Pharma, et al.*, Case No. 18-op-45079 | |

**PHARMACY DEFENDANTS' OBJECTION TO THE SPECIAL MASTER'S
RULING RE: TRACK THREE DEPOSITION OF JOSEPH RANNAZZISI**

# INTRODUCTION

The Pharmacy Defendants[1] object to Special Master Cohen's ruling granting Plaintiffs' motion to quash a deposition subpoena served on former DEA administrator Joseph Rannazzisi. The Pharmacy Defendants requested the deposition as soon as Plaintiffs disclosed their intent to ask Mr. Rannazzisi about dispensing issues at trial—issues about which the Pharmacy Defendants have never been permitted to question him. The Pharmacy Defendants had no idea prior to Plaintiffs' late-July disclosure that Mr. Rannazzisi, who lives hundreds of miles outside the Court's subpoena power, would voluntarily come to Ohio to testify live at trial, or that Plaintiffs had been working with him to offer testimony on dispensing topics the DEA has never authorized. Mr. Rannazzisi has never been disclosed as an expert in Track 3, and the terms of his agreement with Lake and Trumbull Counties remain a secret.

Neither Plaintiffs nor Mr. Rannazzisi will be prejudiced by allowing this deposition to go forward, assuming the new dispensing topics are authorized by DEA. But the Special Master's ruling deprives the Pharmacy Defendants of critical dispensing discovery, and would allow Plaintiffs to engage in a trial by ambush, with a witness who apparently is working with Plaintiffs behind the scenes. There is good cause to allow this deposition. The Pharmacy Defendants' objection should be sustained.

# ARGUMENT

**I.        The Pharmacy Defendants timely requested Mr. Rannazzisi's deposition.**

The Pharmacy Defendants had no reason to request a dispensing-related deposition of Mr. Rannazzisi any sooner than they did. Plaintiffs did not disclose their intent to seek trial

---

[1] The Pharmacy Defendants objecting to the Special Master's ruling include Giant Eagle, Rite Aid, Walgreens, and Walmart.

2

testimony from Mr. Rannazzisi on dispensing issues until July 30, months after the close of fact discovery in Track 3.  *See* Ex. 1, 7/30/21 Weinberger Email.  Less than one week later, the Pharmacy Defendants requested a deposition on those dispensing issues, consistent with the Court's schedule for seeking additional depositions of trial witnesses.  *See* Doc. 3735 at 4.  The Pharmacy Defendants' request for this deposition was timely.

To this day, however, Plaintiffs have never sought *Touhy* authorization from DEA for Mr. Rannazzisi's new dispensing-related testimony, which would have provided fair notice to Defendants of their intent to obtain such testimony.  *See* Ex. 2 at 2, 8/6/21 Weinberger Email ("We have not yet corresponded with the DOJ seeking Touhy authorization for Mr. Rannazzisi's trial testimony.").  Instead, both Plaintiffs and Defendants deposed Mr. Rannazzisi over two days in Track 1, pursuant to a heavily negotiated *Touhy* authorization that **omitted** all of the dispensing topics Plaintiffs now say they will seek to offer at trial.  *Compare* Ex. 3, Track 1 *Touhy* Authorization (authorizing testimony on distribution topics only) *with* Ex. 1, 7/30/21 Weinberger email (stating Plaintiffs' intent to seek trial testimony on both distribution and multiple new dispensing topics).

At the time of Mr. Rannazzisi's prior MDL deposition, there were no dispensing issues in the case.  The parties therefore did not seek—and DEA did not authorize—dispensing-related testimony from Mr. Rannazzisi in Track 1.  Plaintiffs continue to pursue distribution claims in Track 3.  Therefore, the disclosure of Rannazzisi as a witness, without more, did not in any way signal that Plaintiffs would seek to offer testimony from him at trial beyond the distribution-related testimony he was authorized to provide in Track 1.

If Plaintiffs intended to seek additional testimony from Mr. Rannazzisi in Track 3, it was incumbent upon them to issue a new *Touhy* request.  The Special Master erroneously concludes

3

that the Pharmacy Defendants should have somehow divined Plaintiffs' intent, and served their own *Touhy* request for Mr. Rannazzisi's testimony on dispensing, on the chance that Plaintiffs might at some point seek authorization for such testimony, and that Mr. Rannazzisi might come live to trial.  *See* Doc. 3851 at 2.  But Mr. Rannazzisi is ostensibly a third-party fact witness who lives in Virginia, hundreds of miles outside this Court's subpoena power.  During Track 3 fact discovery, Pharmacy Defendants had no reason to expect that Plaintiffs *could* call him live, much less that Plaintiffs would seek to offer testimony that has never been authorized by DEA.

Of course, Pharmacy Defendants learned *after* the close of fact discovery that Mr. Rannazzisi voluntarily travelled hundreds of miles from his home to testify for plaintiffs at the Track 2 trial in West Virginia.  But the Track 2 plaintiffs agreed (and the Track 2 Court ruled) that **Mr. Rannazzisi's Track 2 trial testimony was limited to the scope of his MDL deposition**. *See* Ex. 4, 6/7/21 Trial Tr. at 160:17-20 (PEC counsel representing to Judge Faber that "the other aspect of Your Honor's ruling is that on defendants' motion and with plaintiffs' agreement, we are not offering Mr. Rannazzisi for anything beyond the scope of his prior deposition in the MDL"); Ex. 5, Track 2 Order, Doc. 1260 at 2 ("Should Rannazzisi's trial testimony start to move outside the bounds of his deposition testimony in the Track 1 cases, defendants should bring it to the court's attention.").  When the same issue arose in New York, Judge Garguilo also **prohibited Mr. Rannazzisi from testifying beyond the scope of his MDL deposition.**  *See* Ex. 6, New York Order, NYSCEF No. 6473.

The Special Master's suggestion that Pharmacy Defendants nonetheless should have served their own *Touhy* request, during fact discovery in Track 3, would turn the *Touhy* process on its head.  It would require parties to try to predict the subjects on which an opposing party **might at some point** seek testimony, and ask DEA to authorize that testimony on the opposing

4

party's behalf, even though it might never be needed. Such a process would impose a significant, unnecessary burden on DEA and DOJ. *Touhy* requests in this litigation have been heavily negotiated among many parties and the DOJ, who often do not see eye to eye on the topics of requested testimony even when those topics are transparently disclosed. Moreover, the party serving such a speculative request very well might fail to predict the topics on which an opposing party ultimately chooses to seek trial testimony, rendering the process useless.[2]

II.     **Plaintiffs and Mr. Rannazzisi will not be prejudiced by a deposition.**

The Special Master asserts that concerns about repeat depositions "weigh even more strongly against allowing repeated deposition of a third party." Doc. 3851 at 2. But Mr. Rannazzisi is not just any third-party witness, operating at arm's length from the case. He has signed on to testify for Plaintiffs repeatedly, including for payment as a hired expert. In June 2021, Mr. Rannazzisi voluntarily testified for ***four days*** on distribution issues in the Track 2 trial (a trial involving the same PEC lawyers involved in Track 3), even though he already had given ***two days*** of deposition testimony on the very same issues in Track 1. PEC counsel also disclosed Mr. Rannazzisi as a witness in the Washington AG case pending against certain distributors that is set for trial this fall. *See* Doc. 3848. And Plaintiffs have retained Mr. Rannazzisi as an expert witness, albeit not in any case pending against the Pharmacy Defendants.[3]

---

[2] In light of the Special Master's ruling, however, the Pharmacy Defendants in MDL Track 7 have attempted to anticipate what Plaintiffs might do at trial in that case, and have served just such a *Touhy* request to protect their interests. DEA has not yet responded, but in a display of brazen obstructionist tactics, the Track 3 Plaintiffs immediately asked the Special Master to quash the Track 7 subpoena, too—and even made a frivolous request for sanctions against the Pharmacy Defendants. It appears that the PEC's goal is to deprive the Pharmacy Defendants of relevant dispensing discovery from their hired testifier at all costs, in this and all cases.

[3] The Track 3 Plaintiffs waited until late June, long after the close of fact discovery, to produce an expert report that Mr. Rannazzisi offered in another case in February 2020, and even then

5

Indeed, Mr. Rannazzisi did not even bother to file his own motion to quash the Pharmacy Defendants' deposition subpoena. He relied on Plaintiffs' counsel to do so for him. Sitting for repeat depositions is not unusual under such circumstances, especially on new issues that were not covered in any prior deposition. It is certainly not unduly prejudicial.[4]

**III.  Denying a deposition would significantly prejudice the Pharmacy Defendants.**

The denial of a deposition on the new dispensing issues would cause significant prejudice to the Pharmacy Defendants, however. Plaintiffs have had the opportunity to work with Mr. Rannazzisi on his trial testimony—including as a hired expert where plaintiffs' counsel were paying him for that testimony—over the course of at least the past two years. Yet Pharmacy Defendants have never had an opportunity to explore *any* of the new dispensing issues Plaintiffs say they seek to cover with him at the Track 3 trial. Pharmacy Defendants have literally been prohibited from asking those questions, because they have never been authorized by DEA.

The Special Master asserts that "any 'new' dispensing-related subject matter will not be so substantively different that Defendants will be surprised by anything Rannazzisi might say at trial in *Track 3*." Doc. 3851 at 2. But Plaintiffs' proposed new dispensing topics are extensive, and they are completely different from the distribution topics DEA previously authorized, which focused on suspicious order monitoring of orders for opioid medications placed with distribution centers. The new dispensing topics relate to Mr. Rannazzisi's understanding of rules,

---

Plaintiffs only produced that report as an attachment to another expert's deposition. Mr. Rannazzisi provided no expert report in Track 3.

[4] The Special Master compares the Pharmacy Defendants' request for Mr. Rannazzisi's deposition to Plaintiffs' requests for repeat depositions of Defendants' own employees. But at least with respect to certain Pharmacy Defendants, Plaintiffs' requests for repeat depositions always have been granted. Far from justifying the denial of Pharmacy Defendants' request, the comparison militates in favor of permitting another deposition of Mr. Rannazzisi on the new dispensing issues.

6

regulations, and guidance for pharmacists, and his own personal recollection of interactions with the Pharmacy Defendants, among other new topics.

Specifically, Plaintiffs' proposed dispensing topics include:

1. His personal recollection regarding interactions with dispensers of opioids during his tenure at the Office of Diversion Control.

2. His personal understanding of DEA's interpretation and enforcement of, and practices related to, 21 U.S.C. § 823 and 21 C.F.R. §§ 1304.22, 1301.71(a), and 1306.04(a), as well as his personal understanding of DEA's interpretation, enforcement, and practices regarding the obligation to monitor orders to the extent covered by the foregoing specific topics.

3. His personal recollection of communications with DEA registrants about 21 U.S.C. § 823 and 21 C.F.R. §§ 1304.22, 1301.71(a), and 1306.04(a) and the dispensing of opioids.

4. His personal recollection of guidance documents provided to pharmacies and pharmacists related to proper dispensing of prescription opioids and/or red flags indicative of potential diversion.

5. His personal recollection of meetings and communications with the National Retail Pharmacies related to the diversion of prescription opioids.

6. His personal recollection of publicly disclosed information related to administrative actions taken against the National Retail Pharmacies or individual pharmacies or pharmacists related to the dispensing of controlled substances under the CSA and the diversion of prescription opioids.

7. His personal recollection of meetings and communications with trade organizations such as the National Association of Chain Retail Drug Stores and the National Association of Board of Pharmacies related to the dispensing of controlled substances under the CSA and the diversion of prescription opioids.

*See* Ex. 1, 7/30/21 Weinberger Email (listing topics Plaintiffs claim they will seek to cover with Mr. Rannazzisi during the Track 3 trial); *cf.* Ex. 3 (previous *Touhy* authorization on distribution topics). Pharmacy Defendants have never been allowed to question Mr. Rannazzisi about ***any*** of Plaintiffs' dispensing topics.

7

To the extent Plaintiffs are allowed to question Mr. Rannazzisi on these new dispensing topics at trial, without first putting him up for a dispensing-related deposition, it will be trial by ambush.  There is no reason to impose such prejudice on the Pharmacy Defendants when a deposition—or an order limiting Mr. Rannazzisi's trial testimony—will cure it.

## CONCLUSION

For each of the foregoing reasons, the Pharmacy Defendants object to the Special Master's ruling granting Plaintiffs' motion to quash the deposition subpoena to Mr. Rannazzisi in Track 3.  Should DEA grant *Touhy* authorization for the new dispensing topics Plaintiffs seek to cover with him at trial, the Court should enforce the Pharmacy Defendants' subpoena and allow them to depose him first.  In the alternative, the Court should order that Mr. Rannazzisi's trial testimony be limited to the scope of his MDL Track 1 deposition.

Dated: August 23, 2021

/s/  *Katherine M. Swift*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, Illinois 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
sharon.desh@bartlitbeck.com
sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
(303) 592-3100
alex.harris@bartlitbeck.com

*Attorneys for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*

<u>/s/ Robert M. Barnes (consent)</u>
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc., and HBC Service Company*


<u>/s/ Kelly A. Moore (consent)</u>
Kelly A. Moore, Esq.
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001

John P. Lavelle, Jr., Esq.
John.lavelle@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
T: 215-963-5917
F: 215-963-5001

*Attorneys for Rite Aid Hdqtrs. Corp.; Rite Aid of Ohio, Inc.; Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center; and Rite Aid of Maryland, Inc. d/b/a Mid-Atlantic Customer Support Center Maryland, Inc. d/b/a Mid-Atlantic Customer Support Center*

9

/s/  *John M. Majoras (consent)*
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of August, 2021, a notice of the foregoing has been served via CM/ECF to all counsel of record.

*/s/ Katherine M. Swift*
Katherine M. Swift

*Counsel for Walgreens Boots Alliance, Inc.,
Walgreen Co., and Walgreen Eastern Co., Inc.*
