# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>All Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

### THE MAYOR AND CITY COUNCIL OF BALTIMORE'S REQUEST AS *AMICUS CURIAE* FOR MODIFICATION OF THE COURT'S AUGUST 12, 2021 ORDER APPROVING COMMON BENEFIT ASSESSMENT

The Mayor and City Council of Baltimore ("the City") requests as *amicus curiae*[1] that the Court modify its August 12, 2021 order approving a common benefit assessment. Doc # 3828. Without requiring notice to state court plaintiffs or giving state court plaintiffs an opportunity to be heard, the Court's August 12 order granted the Plaintiffs' Executive Committee's ("PEC") August 10, 2021 motion, Doc. # 3823, and required non-settling state court plaintiffs to contribute 7.5% of their settlements and judgments to the PEC. The Court lacks jurisdiction over state court plaintiffs and cannot require them to contribute to the PEC from their own settlements and judgments.

---

[1] The City's filing of this request as an "interested party" and *amicus curiae* is made without consenting to this Court's jurisdiction—and without prejudice to the City's and its attorneys' rights to contest this Court's jurisdiction—over the City, its counsel Susman Godfrey LLP, or Case No. 24-C-18-000515 pending in the Circuit Court for Baltimore City, Maryland, and without prejudice to the City's right to seek appellate review of any order the Court enters regarding the common benefit fund.

1

The City thought the PEC understood this. The PEC told this Court as recently as June 2021 that it would not seek to impose common benefit fund assessments on "any state court plaintiff that is not subject to the Court's jurisdiction," Doc. # 3765 at 2, and this Court recognized that commitment in its July 22, 2021 order approving the creation of a common benefit fund, Doc. # 3794 at 3. But with its August 10 motion, the PEC abandoned its past representations and sought an improper cash grab from any state court litigant that accepted ARCOS data from the PEC.

This Court lacks jurisdiction to force state court plaintiffs like the City to contribute to the PEC, and the PEC's attempt to force contribution from state court plaintiffs lacks merit for three additional reasons: (1) Supreme Court case law does not permit the PEC to impose a common benefit fund assessment on litigants that reach their own settlements, (2) the exorbitant 7.5% assessment (which is greater than the 7% assessment the PEC initially sought, Doc. # 3112) bears no relation to the benefit the PEC conferred on state court plaintiffs by providing the ARCOS data a few weeks before the data became publicly available, and (3) the PEC should be estopped from demanding payment for the ARCOS data because the PEC promised state court plaintiffs they would receive the ARCOS data "without charge," and state court plaintiffs detrimentally relied on that promise by withdrawing their own Touhy requests to obtain the data.

The Court should modify and strike the portion of its order that imposes a 7.5% assessment on state court litigants that reach their own settlements or judgments. Like many other state court plaintiffs, the City is actively litigating its own case, taking its own depositions, and developing its own expert work. There is no legal basis for the PEC to expect contribution from the City or any other state court plaintiff that obtains its own settlement or judgment, and the Court lacks jurisdiction to require contribution from state court plaintiffs.

**BACKGROUND**

**I.    In 2018 and 2019, the Court streamlined the process for obtaining ARCOS data, and it did not require litigants obtaining the data to pay the PEC**

In mid-2018, the Court issued a series of orders that required the DEA to produce to the MDL plaintiffs ARCOS data from the period 2006 to 2014. Doc. #s 233, 397, 668. The Court first ordered the production of ARCOS data related to six bellwether states and then expanded its order to cover all ARCOS data for the entire United States. Doc. #s 233, 397.

On April 12, 2019, with the agreement of DOJ, DEA, and the MDL plaintiffs, the Court issued an opinion and consolidated ARCOS protective order, which allowed state court litigants to obtain the ARCOS data. Doc. # 1545. As the PEC explained in its March 15, 2019 motion seeking this order, Doc. # 1447, the order relieved the DOJ and DEA of the burden of having to respond to thousands of Touhy requests and made sure litigants across the country had access to the ARCOS data. This Court did not indicate in its April 12, 2019 order or in any of its rulings that state court litigants or anyone else would have to pay the PEC for the ARCOS data.

A few weeks after the Court's April 12, 2019 order, the PEC made the ARCOS data available to state court litigants. The PEC explained what it was doing in a May 6, 2019 letter to state court litigants, which stated three times that the PEC was providing the data "*without charge*." Ex. 1 (emphasis added). The PEC stated in the first paragraph of its letter that "This letter explains how you may obtain, *without charge*, refined data that shows in detail everything we know from the ARCOS database regarding which opioids flowed into your clients' jurisdictions, and how they got there." Ex. 1 at 1 (emphasis added). The PEC explained that this Court was making the data available free of charge in accordance with an agreement with the DEA: "Pursuant to agreement with the DEA and by order of the federal MDL Judge, the Honorable Dan A. Polster, the MDL PEC is making available to you *without charge* the

unprocessed ARCOS data in the same format it was received from the DEA. This data is what you would receive if you filed a *Touhy Request* with the DEA." Ex. 1 at 1 (emphasis added). The PEC explained that it took certain steps to filter the data and that "[w]e are also providing you, *again without charge*, access to the result of that investment." Ex. 1 at 1 (emphasis added). The PEC even "urged" state court plaintiffs not to do their own data processing: "While you have the right to download the unprocessed ARCOS data and process it yourself, *we urge you to avoid that step* and instead simply access the PEC's processed ARCOS data and reports." Ex. 1 at 1 (emphasis added).

The PEC's letter could not have been clearer about two points: (1) state court litigants would receive the ARCOS data free of charge, and (2) there was no need for state court litigants to obtain or process the data on their own. Now, the PEC is doing an about-face on both points and saying that state court litigants have to pay the PEC because they did not process their own data. The Court should not tolerate this bait and switch.

The City took the PEC's letter at face value and relied on it in making decisions about how to develop its case. At the time the City learned that it would be able to receive the ARCOS data from the PEC, it had a pending Touhy request and had been in communication with the DOJ about obtaining the ARCOS data. After the data became available through the MDL, the DOJ requested that the City withdraw its Touhy request, and the City agreed to do so. The City would not have withdrawn its Touhy request if it had known the MDL PEC planned to charge a 7.5% assessment for using the ARCOS data, contrary to the PEC's representations that the data was available "without charge."

Just a short time after the City received the data from the PEC, the data became publicly available. On July 15, 2019, following a successful appeal by *The Washington Post* and several

other media organizations, the Court lifted the ARCOS protective order as to all pre-2013 ARCOS data. Doc. # 1845. The Court later allowed the release of ARCOS data for 2013 and 2014, the full span of ARCOS data available in the MDL.

By January 17, 2020, the complete 2006 to 2014 ARCOS data was on *The Washington Post*'s website, where it remains today. Visitors to that site are able to download the 2006-2014 raw data for any county they choose (unlike through the MDL-approved process, which only allowed a county to get data for its own county, Doc. # 668). *See Drilling into the DEA's pain pill database*, Washington Post (Jan. 17, 2020), https://www.washingtonpost.com/graphics/2019/investigations/dea-pain-pill-database/. Visitors can also download distributor, manufacturer, and pharmacy data for any county in the country and see with a few clicks of a button the five distributors, manufacturers, and pharmacies that were responsible for the most opioids in any county in the country.

**II.     In 2020, the PEC sought to impose a common benefit fund assessment on all opioid plaintiffs but later accepted that the Court lacked jurisdiction over state court plaintiffs**

On January 28, 2020, the PEC moved for entry of an order establishing a common benefit fund. Doc. # 3112. On February 4, 2020, the Court issued a scheduling order calling for all interested parties to respond to the PEC's motion by February 28, 2020. The City and many other interested parties filed oppositions to the common benefit fund. Doc. # 3191. The City's opposition and several other oppositions explained that the PEC's proposed common benefit fund improperly sought to require contribution from state court plaintiffs that were beyond the Court's jurisdiction. Doc. # 3191 at 3–6. On July 27, 2020, the Court denied the PEC's common benefit fund motion without prejudice to refiling. Doc. # 3397.

A year later, the PEC filed a motion seeking to establish a common benefit fund that would receive funds from the Summit and Cuyahoga settlement holdback. In a June 22, 2021 supplemental brief supporting the common benefit fund motion, the PEC told the MDL Court:

> The PEC clarifies that no common benefit fee or litigation expense reimbursement will be charged against any settlement proceeds or judgment paid to any State Attorney General, or to any state court plaintiff that is not subject to the Court's jurisdiction (unless that plaintiff or counsel executed a participation agreement), consistent with the Court's prior order (Doc. # 358).

Doc. # 3765 at 2. On July 22, 2021, the Court established the common benefit fund. Doc. # 3794. The Court stated in its order that the PEC had explained to the Court that "with regard to any future common benefit Order, the PEC will not seek to make it applicable to settlement proceeds or judgments payable to a State Attorney General, *nor to any state court plaintiff that is entirely outside of the Court's jurisdiction (with certain understandable exceptions)*." Doc. # 3794 at 3 (emphasis added).

**III.  Contrary to its representations, the PEC's August 10 motion sought to impose common-benefit fund assessments on state court plaintiffs, and this Court granted the motion**

Less than two months after the PEC told the Court it would not seek a common benefit fund assessment from "any state court plaintiff that is not subject to the Court's jurisdiction," the PEC sought to do just that. In its August 10, 2021 motion, the PEC asked the Court to impose a 7.5% assessment on any state court plaintiff that received ARCOS data from the PEC, Doc. # 3823 at 17–19, even though the PEC had told state court plaintiffs they would receive the data "without charge." This change of position would be problematic enough if the ARCOS data was proprietary PEC data, but it is sitting on *The Washington Post*'s website for anyone to review and download.

On August 12, 2021, two days after the PEC filed the motion, the Court granted the PEC's motion without requiring notice to state court litigants or providing an opportunity for a

6

response. This procedure violated the due process rights of state court plaintiffs, and at the very least, the Court should call for a response from state court plaintiffs and consider, on the basis of the responses received, modifying the August 12 order and striking the portion of that order that allows the PEC to impose a 7.5% assessment on state court settlements and judgments.

## ARGUMENT

In 2020, this Court received briefing from numerous interested parties on how to structure a common benefit fund. That briefing made clear that this Court lacks jurisdiction over state court plaintiffs like the City, which have non-MDL counsel and did not sign a participation agreement with the MDL plaintiffs. The Court declined to implement a common benefit fund in 2020, and for a time the PEC accepted the uniform case law establishing that this Court lacks jurisdiction over state court plaintiffs. Now that the PEC is trying to secure sufficient support for a $26 billion settlement that will contribute billions in attorney's fees to the PEC, the PEC has had a change in tune. It sought to impose a fine on any state court plaintiff that opts out of the settlement, in an apparent effort to discourage those state court plaintiffs from depriving the PEC of substantial attorney's fees or derailing the settlement altogether.

In its August 10 motion, the PEC still could not show that the Court has jurisdiction over state court plaintiffs—it does not—so the PEC urged the Court to use its jurisdiction over the ARCOS data to assess a "back-end, contingent assessment of 7.5%" on all state court plaintiffs that used the ARCOS data. Doc. # 3823 at 18. The PEC's proposal suffered from numerous defects, and the Court should modify the portion of its August 12 order that required this unjustified post hoc assessment from state court plaintiffs.

**I.    This Court lacks jurisdiction over state court plaintiffs like the City**

In its February 27, 2020 opposition to amended motion for entry of order establishing common benefit fund, the City explained that this Court lacks jurisdiction to impose a common

7

benefit fund assessment on state court litigants, and the City incorporates its opposition here. Doc. # 3191 at 3–6. In its briefing, the City explained that this Court has already recognized that it lacks jurisdiction over state courts, Doc. No. 643 at 4, and that federal appellate courts have repeatedly and uniformly rejected the position that a federal court may exercise jurisdiction over state court proceedings and force state court litigants to contribute to a federal common benefit fund. *In re Genetically Modified Rice Litigation*, 764 F.3d 864, 874 (8th Cir. 2014) (holding that the district court lacked the authority to "order parties in cases not before it to contribute to the Fund"); *In re Showa Denko K.K. L-Trytophan Products Liability Litigation-II*, 953 F.2d 162, 166 (4th Cir. 1992) (holding that the district court "simply has no power to extend the obligations" of its common benefit fund order to state court plaintiffs); *Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976) (holding that the district court "had not even a semblance of jurisdiction—original, ancillary, or pendent—to order anything or anybody, and least of all to compel lawyers who were not parties to the action to pay $3,250 into a fund").

The PEC cannot create jurisdiction over the City and its litigation based on the City's use of ARCOS data. The PEC cites nothing that would allow this Court to establish jurisdiction over any entity that received ARCOS data. The Court certainly never provided notice to state court plaintiffs that they were subjecting themselves to the jurisdiction of the Court because they were receiving ARCOS data, a premise that is not constitutionally sound and derives no support from the case law. The Court does not even have any control over the data at this point given that the Court lifted its ARCOS protective order and allowed the data to become publicly available and disseminated widely. The Court cannot force subdivisions beyond its jurisdictional reach to contribute to the PEC on the basis that the subdivisions received data from the PEC years ago that became publicly available a few weeks after the PEC provided it.

8

The Court's lack of jurisdiction should end the matter, but there are three additional reasons that the Court should modify the portion of its order that imposes a common benefit fund assessment on state court plaintiffs that received ARCOS data from the PEC.

## II. Supreme Court case law does not support the Court imposing a common benefit assessment on litigants that reach their own settlements

In the City's February 27, 2020 opposition, the City explained that exacting a common benefit fund assessment on the City's case would be inconsistent with the Supreme Court's common benefit fund jurisprudence if the City reached its own settlement, and the City incorporates that briefing here. Doc. # 3191 at 6–9. In its February 27, 2020 opposition, the City cited *Boeing Co. v. Van Gemert*, in which the Supreme Court explained:

> Since the decision in *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5. S.Ct. 387, 28 L.Ed. 915 (1885), this Court has recognized consistently that a litigant or a lawyer **who recovers a common fund for the benefit of persons other than himself or his client** is entitled to a reasonable attorney's fee from the fund as a whole. See *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); cf. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

444 U.S. 472, 478 (1980) (emphasis added). The Supreme Court further explained that the "doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense" and "[j]urisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.*

At the time the City filed its February 27, 2020 opposition, it was unknown what the settlement structure would look like, but now it is clear that the PEC's proposed assessment on state court litigants directly conflicts with *Boeing*. The PEC's August 10, 2021 motion sought a 7.5% assessment *only* from "cases resolved outside the Settlement Agreement." Doc. # 3823 at

9

2. The PEC will not generate settlement funds for the cases resolved outside the Settlement Agreement, and contribution is not appropriate under *Boeing*.

If the City opts out of the settlement, the City will not receive the benefits of the PEC's settlement, and no assessment is appropriate under Supreme Court case law. Opt-out state court plaintiffs' attorneys, like the City's attorneys, will have to continue litigating their cases in order to achieve recoveries, so under the common benefit fund jurisprudence, it is inappropriate to apply the common benefit fund requirement to state court plaintiffs. *See also In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019 (5th Cir. 1977) (holding that "[o]ne who hires and pays his own lawyer is not a free rider if the attorney is a contributor to the final results" and approving the district court's decision to "exclud[e] from the 8% contributions attorneys who continued to be active").

### III. The 7.5% assessment impermissibly bears no relation to the benefit state court plaintiffs received from having access to ARCOS data a few weeks before it became publicly available

The 7.5% assessment is also improper because it bears no relationship to the benefit that state court plaintiffs received from obtaining the ARCOS data from the PEC. In *Boeing*, when upholding the common benefit fund, the Supreme Court relied on the guidance of its prior holding in *Alyeska Pipeline Service Co. v. Wilderness Society* that a common benefit fund is appropriate where "the benefits could be traced with some accuracy" and "there was reason for confidence that the costs of litigation could indeed be shifted with some exactitude to those benefiting." 444 U.S. at 479 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 265 n.39 (1980)) (internal quotation marks omitted) (alterations omitted).

The benefits of the PEC providing the ARCOS data to state court plaintiffs are not traceable with any accuracy, and they are certainly not worth a 7.5% assessment, which could amount to tens or hundreds of millions of dollars. The PEC provided the ARCOS data to state

10

court plaintiffs starting in May 2019. Within a few weeks, the data was made publicly available for the years 2006 through 2012, and by January 2020, the full span of ARCOS data was publicly available on *The Washington Post*'s website.

As justification for the substantial assessment, the PEC points to the work they did to "organize and analyze" the data, but they overstate the importance of this work. Doc. No. 3823 at 18. The PEC's work consisted of filtering the data to show which distributors, manufacturers, and pharmacies provided the opioids. It was not complicated work, and if the City had known that the PEC might charge tens of millions of dollars for it (contrary to the PEC's representations that it was provided "without charge"), the City would have done its own work during the two years it has had the data. *The Washington Post*, moreover, has replicated much of the PEC's work, providing a user friendly interface that shows the five distributors, manufacturers, and pharmacies that provided the most opioids in every county in the country, and providing a ranking of all the distributors, manufacturers, and pharmacies that provided opioids to a county. No assessment is appropriate at all, and the 7.5% assessment bears no relationship to the marginal benefit the PEC provided state court plaintiffs. !

IV. **State court plaintiffs detrimentally relied on the PEC's promise that data was available without charge, so the PEC should be estopped from applying a retroactive assessment**

In its May 6, 2019 letter to state court plaintiffs, the PEC told state court plaintiffs ***three times*** they would receive the ARCOS data "without charge," and state court litigants like the City relied on that representation, obtained the data from the PEC, and withdrew their own Touhy requests to get the data. Now that state court plaintiffs have detrimentally relied on the PEC's representations, the PEC should be estopped from assessing a retroactive 7.5% assessment on any litigant that received the ARCOS data from the PEC. *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 557 (6th Cir. 2009) (holding that estoppel arises when a person makes a

11

misrepresentation of a material fact and the party asserting estoppel detrimentally and reasonably relied on the party making the representation).

State court litigants like the City should at least be given the opportunity to delete the ARCOS data they received from the PEC and obtain the ARCOS data on their own before the 7.5% assessment applies to their cases. It will now be easy to obtain the ARCOS data because the City and other state court litigants can download the data directly from *The Washington Post*'s website.

## CONCLUSION

The Court should modify its order and strike the requirement that state court litigants that do not join the settlement must provide 7.5% of their future settlements and judgments to the PEC. The Court lacks jurisdiction to impose the assessment, the assessment is improper under common benefit fund jurisprudence, and the assessment conflicts with the PEC's representation that it would not charge for the ARCOS data.

Dated: August 24, 2021	Respectfully submitted,


*/s/ Seth Ard*

JAMES L. Shea
City Solicitor
Sara Gross, Chief Solicitor
Thomas P.G. Webb, Chief Solicitor
BALTIMORE CITY LAW DEPARTMENT
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
Tel: 410-396-3930
Fax: 410-547-1025
james.shea@baltimorecity.gov
sara.gross@baltimorecity.gov
tom.webb@baltimorecity.gov

William Christopher Carmody
Arun Subramanian
Seth Ard
Jillian Hewitt
Max Straus
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: 212-336-8330
Fax: 212-336-8340
bcarmody@susmangodfrey.com
asubramanian@susmangodfrey.com
sard@susmangodfrey.com
jhewitt@susmangodfrey.com
mstraus@susmangodfrey.com

Ian Crosby
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Tel: 206-516-3880
Fax: 206-516-3883
icrosby@susmangodfrey.com

Sylvanus M. Polky
SUSMAN GODFREY L.L.P.
1000 Lousiana Street, Suite 5100
Houston, TX 77002
Tel: 713-651-5096
Fax: 713-651-9366
spolky@susmangodfrey.com

*Attorneys for Plaintiff Mayor & City Council of Baltimore*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

        */s/ Seth Ard*
        Seth Ard