UNITED STATES DISTRICT
COURT NORTHERN DISTRICT
OF OHIO EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>"Track Eight: Cobb County, Georgia" | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Case No.: 1:18-OP-45817<br><br>Judge Dan Aaron Polster |

**DEFENDANT PUBLIX SUPER MARKETS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF
COBB COUNTY'S COMPLAINT**

Plaintiff Cobb County ("plaintiff") alleges that Publix Super Markets, Inc. ("Publix") (along with five other entities that have pharmacies) should be held liable for the ongoing opioid crisis as a public nuisance under Georgia law. Georgia, however, does not recognize a public nuisance claim when the statute governing the relevant activity does not include such a cause of action. Here, the laws governing the dispensing and distributing of opioids contain a panoply of remedies for violations, but a public nuisance suit is not one of them.

Further, plaintiff's Supplemental and Amended Allegations to Be Added to "Short Form for Supplementing Complaint and Amending Defendants and Jury Demand" ("Complaint") fails to allege any specific wrongdoing by Publix or any actual connection between Publix's actions and Cobb County. Although the Complaint repeatedly asserts in a wholly conclusory fashion that Publix failed to properly monitor the dispensing of opioids, it contains no specific allegations that Publix improperly dispensed a single prescription, let alone one that impacted Cobb County. Ultimately, plaintiff's Complaint seeks to hold Publix liable in this litigation

simply because it dispensed opioids in Cobb County, and, at times, plaintiff retreats to the untenable position that discovery will reveal what exactly it was that Publix improperly did. Because of its reliance on vague and generalized allegations and conclusory assertions, the Complaint cannot support a claim against Publix for public nuisance under Georgia law.  For these reasons, the Complaint against Publix should be dismissed.

I. **Georgia Law Does Not Recognize A Public Nuisance Claim.**

The Georgia legislature—not a court—determines when the actions of a business engaged in a heavily regulated industry constitute a public nuisance.  Georgia statutory law explicitly names certain regulated activities as a public nuisance, such as selling adulterated food.  *See, e.g.*, O.C.G.A. § 26-2-38(d).  When the Georgia legislature does *not* characterize the violation of a regulatory scheme to be a public nuisance, a court in equity has no power to declare it one.  Thus, Cobb County's public nuisance claim fails as a matter of law and should be dismissed.

The Georgia Supreme Court long ago unanimously held that absent a specific suggestion from the legislature, violations of a regulatory scheme do not constitute a nuisance.  Specifically, in *State ex rel. Boykin v. Ball Inv. Co.*, 191 Ga. 382 (Ga. 1940), the court considered whether violations of the regulatory scheme governing small loans could state a claim for a public nuisance.  The Georgia court affirmed the dismissal of the public nuisance claim because "[t]here is no suggestion anywhere in either the wage-buying or the small-loan act that a violation of its provisions shall constitute a nuisance, or that, for repeated violations, equity should issue an injunction."  *Id.* at 395.  Notably, the court explained that "[i]f the penalties [in the statutory scheme] there provided be not a sufficient check to the abuses described in the

2

instant case, the appeal should be made to the lawmakers, and not to a court of equity, whose powers can never be invoked where the law has provided what it deems to be an adequate remedy." *Id.* Thus, if a business runs a loan shark practice that violates codes, the remedy is provided in the regulatory scheme—a misdemeanor action for code violations—not a public nuisance suit. *Id.* Here, if there are allegations that a pharmacy's unlawful distribution and dispensing operations are harming the public at large, the government's remedy is an action through the Board of Pharmacy or as otherwise authorized in the applicable regulatory scheme, not a public nuisance suit by a county government.

The breadth of Georgia's regulation of pharmacy practice cannot be overstated. The Georgia Pharmacy Practice Act ("PPA"), O.C.G.A. § 26-4-1 *et seq.*, broadly governs all aspects of pharmacy operations, including the "practice of pharmacy" (which includes the dispensing of prescription drugs) and pharmacist and pharmacy licensure requirements. *Id.* §§ 26-4-3, 26-4-4. The PPA establishes requirements for the distribution and dispensing of prescription drug orders (including opioids). *See, e.g., id.* §§ 26-4-80, 26-4-115. Even beyond the extensive statutory scheme, Georgia regulations also provide detailed rules for the storage, security, and dispensation of prescription drugs. *See* Ga. Comp. R. & Regs. 480 (Rules of Georgia State Board of Pharmacy).

The PPA authorizes certain private and governmental actors to bring actions for violations, including for alleged failure to adopt appropriate diversion safeguards. *See* O.C.G.A. §§ 26-4-20(b) ("The responsibility for enforcement of the provisions of this chapter shall be vested in the Georgia State Board of Pharmacy."), 26-4-60 (allowing board of pharmacy to refuse to issue or renew a license or to suspend or revoke a license), 26-4-62 ("any violation of

3

this chapter shall constitute a misdemeanor"), 26-4-117(b) (permitting certain entities other than a county to seek limited injunctive relief for violations). Regulations likewise entrust the Board of Pharmacy with enforcing the PPA. *See* Ga. Comp. R. & Regs. § 480-5-.01.

Notably, what the PPA does not do is authorize anyone to seek to enforce its provisions via a public nuisance claim, nor does it define any violation of its provisions as a nuisance. These absences stand in stark contrast with other provisions of Title 26 that define certain violations as nuisances. *See, e.g.*, O.C.G.A. §§ 26-2-38(d) (adulterated food), 26-3-4(d) (adulterated drugs), 26-5-18 (violations of Drug Abuse Treatment and Education Act), 26-5-57 (violations of the Narcotic Treatment Programs Enforcement Act). The Georgia legislature has also expressly allowed for public nuisance claims in numerous other instances. *See, e.g.*, O.C.G.A. §§ 3-10-8 (unlawful sale or disposition of distilled spirits), 41-2-9(a)(1) (unfit buildings or structures), 41-3-1(b) (structures for sexually related crimes). The legislature's decision not to define any violation of the PPA as a public nuisance demonstrates that the remedies for violations are limited to those contained in the PPA, and it is up to the actors—and *only* those actors—authorized by the PPA to enforce its provisions.[1]

---

[1] Plaintiff alleges violations of the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*, *see* Compl. § 490, but violations of this statute and regulations promulgated pursuant to it are also addressed by and constitute violations of the PPA, for which PPA remedies are likewise available. *See, e.g.*, O.C.G.A. §§ 26-4-80(c) ("Provisions for accepting a prescription drug order for a Schedule II controlled substance are set forth in . . . the regulations of the United States Drug Enforcement Administration in 21 C.F.R. 1306."), 26-4-115(a) (registration to sell or distribute drugs "may be suspended or revoked or the registrant may be reprimanded, fined, or placed on probation by the board [of pharmacy] if the registrant fails to comply with any law of . . . the United States . . . having to do with the control of pharmacists, pharmacies, wholesale distribution, or reverse drug distribution of controlled substances or dangerous drugs . . . ."). Moreover, the CSA not only does not recognize a public nuisance claim for a violation, it "is a statute enforceable only by the Attorney General and, by delegation, the Department of Justice."

Under binding Georgia Supreme Court precedent, a public nuisance claim cannot be maintained where there is no suggestion in the regulatory scheme that a public nuisance claim is available.  *See Boykin*, 191 Ga. at 395.  Accordingly, Georgia law does not recognize Cobb County's public nuisance suit against Publix, and it should be dismissed.

## II.    The Complaint Fails To Adequately Plead A Public Nuisance Cause of Action.

Federal Rule of Civil Procedure ("FRCP") Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A Complaint must, however, contain "more than labels and conclusions" that merely recite the elements of a claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, it "must contain sufficient factual matter" to state a plausible claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facts pleaded in a complaint are assumed true on a motion to dismiss, but they must allege "more than the mere possibility of misconduct."  *Id.* at 679; *see also Keys v. Humana*, 684 F.3d 605, 608 (6th Cir. 2012) (Plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Moraine Properties, LLC v. Ethyl Corp.*, No. 3:07-CV-229, 2010 WL 11538466, at *2 (S.D. Ohio Feb. 16, 2010) ("[T]o survive dismissal, the complaint must contain enough facts to establish a 'plausible,' as opposed to merely a 'possible,' entitlement to relief.").  Legal conclusions unsupported by factual allegations are ***not*** assumed true.  *Iqbal*, 556 U.S. at 679.[2]

---

*Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 293 (3d Cir. 2010) (citing 21 U.S.C. § 871).

[2] Federal pleading standards apply in federal court, even over state law claims.  *See, e.g.*, *Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010); *Simmerman v. Ace Bayou Corp.*, 304 F.R.D. 516, 518 (E.D. Ky. 2015).

5

Courts consider only well pleaded factual allegations to determine whether they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664; *see also Twombly*, 550 U.S. at 557 ("[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'").  The Rule 8(a)(2) pleading requirement is designed to put defendants on notice of the specific claims against it and protect defendants against the significant costs of defending against vague or unfounded allegations.  *See Keys*, 684 F.3d at 608 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  The Supreme Court has rejected the notion that "a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management." *Iqbal*, 556 U.S. at 685.  If a complaint fails to allege facts (not conclusions) sufficient to support a cause of action, the complaint must be dismissed.  *See Iqbal*, 556 U.S at 679.

To properly state a claim for public nuisance against Publix under Georgia law, plaintiff must allege *facts* demonstrating that Publix performed specific acts that caused "hurt, inconvenience, or damage" to the citizens of Cobb County.  *See* O.C.G.A. § 41-1-1; *City of Coll. Park v. 2600 Camp Creek, LLC*, 666 S.E.2d 607, 608 (Ga. Ct. App. 2008) (dismissing on summary judgment because proving public nuisance requires "some act or omission which obstructs or causes inconvenience to the public in the exercise of rights common to all"). Regardless of the exact parameters of a public nuisance under Georgia law, Cobb County's Complaint does not come close to alleging that Publix's actions created one.

Of the 754 paragraphs in the Complaint, only 42 specifically address the alleged conduct of Publix.  *See* Compl. ¶¶ 460-502.  These paragraphs jump between conclusory statements,

6

generalized contentions, and irrelevant factual allegations. They begin with the unremarkable allegation that Publix distributed opioids from its own warehouse and also obtained them from other distributors, *see* Compl. ¶¶ 463-64, and that pharmacies in its supermarkets (including in Cobb County) dispensed opioids, *see id.* ¶ 473. That Publix distributed and dispensed legal controlled substances legally is not improper and cannot constitute a public nuisance. *See McBrayer v. Governors Ridge Office Park Ass'n, Inc.*, 860 S.E.2d 58, 62 (Ga. Ct. App. June 14, 2021) ("[T]hat which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance." (quotation marks omitted)). Something more must be alleged to plead a nuisance claim under Georgia law.

The specific factual allegations the Complaint recites are woefully inadequate:

- It alleges that a *Teva* employee allegedly identified "serious red flags" in a Publix order—a legal conclusion in itself—*going to Florida* and that he was pressured by the *Teva* Director of National Accounts to process the order. Compl. ¶ 467. The alleged wrongdoing here—if done by anyone—was by Teva.

- It alleges McKesson granted threshold increases on Publix orders, *id.* ¶¶ 468-69, but provides no basis to conclude that this was improper or led to the improper dispensing of any prescriptions in Cobb County.

- It cites a *Purdue* account manager reporting to others *at Purdue* asserting that Publix pharmacists *in St. Petersburg, Florida*, did not experience resistance when ordering OxyContin or "maximizing their quantities." *Id.* ¶ 471.

Not only is no connection alleged between these allegations and Cobb County,[3] they constitute nothing more than the insinuation that something improper occurred. Insinuation is not a factual

---

[3] Plaintiff includes general allegations that opioids distributed in one jurisdiction were brought into others, *see* Compl. ¶¶ 482, 671-82, but these assertions do not identify a single improperly dispensed prescription, let alone one that ended up in Cobb County.

allegation.  Cf. *Wallace v. Coffee Cty., Tennessee*, 852 F. App'x 871, 877 (6th Cir. 2021) ("But a mere suggestion is not sufficient to survive summary judgment.").

Plaintiff next alleges that the quantity of opioids Publix dispensed in Cobb County was large enough to raise a red flag, and that somehow Publix should have known enough to prevent diversion from legal purchases to illicit use.  Compl. ¶¶ 473-83.  These allegations (which at least involve Cobb County) are filled with conclusory statements, logical fallacies, and unsupported premises; what is not provided are specific factual allegations of actual wrongdoing by Publix.  The claim that the quantity of opioids dispensed was "so high as to raise a red flag," *id.* ¶ 473, is based upon nothing more than plaintiff's say so.[4]  Plaintiff fails to allege that Publix actually acted improperly in filling a single prescription destined for Cobb County.

Although plaintiff also asserts that Publix "ignored other indicia of diversion," *id.* ¶ 476, to support its position, it fails to provide any factual allegations detailing these "indicia."  Such supposition cannot support the public nuisance claim.  Plaintiff ultimately claims that "*[i]t cannot be disputed* that Publix was aware of the suspicious orders," *id.* ¶ 477 (emphasis added).  This supposedly self-evident proclamation is not a fact that can support plaintiff's claim and is not tied in any way to Cobb County; instead, it demonstrates the paucity of actual factual allegations that plaintiff needs in order to survive a motion to dismiss.

Plaintiff goes on to make generic general allegations regarding filling improper prescriptions without any specific examples that are tied to Cobb County, *see id.* ¶¶ 480-81, but plaintiff tries to take the easy way out, alleging that "*discovery will reveal* that Publix knew, or

---

[4] Plaintiff's assertion that Publix dispensed 12% of oxycodone and hydrocodone in Cobb County, Compl. ¶ 473, is completely irrelevant.  Publix's alleged market share cannot *per se* demonstrate an impropriety.

8

should have known" about the filling of improper prescriptions.  *Id.* ¶ 481 (emphasis added).  This is not permitted.  Plaintiff must allege the actual wrongdoing.  It cannot file a complaint and then use discovery to actually determine whether it can support its claim.  *See Patterson v. Novartis Pharms. Corp.*, 451 F. App'x 495, 498 (6th Cir. 2011) ("The Supreme Court's decisions in *Twombly* and *Iqbal* do not permit a plaintiff to proceed past the pleading stage and take discovery in order to cure a defect in a complaint."). The Court should deny plaintiff's stated intent to undertake a fishing expedition without alleging any facts in support of its claim.

Plaintiff's claim that Publix acted in violation of the CSA, *id.* ¶ 490, is premised on the same vague and conclusory statements.  A legal conclusion is not accepted as true in evaluating a motion to dismiss.  *See Iqbal*, 556 U.S. at 679.  There are simply no specific allegations of illegal activity by Publix that would have resulted in the diversion of opioids for illicit use.  In contrast, plaintiff cites to numerous alleged criminal violations and settlements entered into by Publix's co-defendants.[5]  The absence of any similar assertions about Publix is striking.  Plaintiff speculates that Publix *may* have done something that *could* have a connection to illicit opioid use in Cobb County.  But such a disjointed collection of hypothetical proposals does not pass muster under FRCP 8(a)(2).

Plaintiff includes a final allegation that is tied to Cobb County but is so weak that it underscores the overall insufficiency of the claim against Publix.  Plaintiff points to a single Publix job posting for a pharmacist position in Cobb County.  *See* Compl. ¶¶ 495-96.  The posting includes a list of skills needed for an applicant, but, according to the Complaint, "makes

---

[5] *See* Compl. ¶ 624 (allegations regarding CVS); *id.* ¶¶ 171, 246, 646 (allegations regarding Walgreens); *id.* ¶¶ 332, 663 (allegations regarding Rite Aid); *id.* ¶ 670 (allegations regarding Kroger); *id.* ¶ 117 (allegations regarding Walmart).

no mention of a pharmacists' [sic] role in identifying and evaluating potential red flags, suspicious prescribers, and suspicious patients." *Id.* ¶ 497. To presume that the lack of such a mention in a job posting demonstrates that Publix is indifferent to whether a pharmacist would fulfill an obligation to monitor prescriptions would also mean that Publix is indifferent to a pharmacist stealing from it because that too is not mentioned; such a conclusion is absurd. The only thing this job posting does is provide a tenuous connection to Cobb County by claiming that Publix sought to employ pharmacists in the jurisdiction, but as with the rest of the allegations against Publix, it is insufficient to survive a motion to dismiss.

## III. Conclusion

Plaintiff's claim against Publix fails because Georgia law does not recognize a public nuisance claim in light of the applicable statutory scheme and the specific remedies provided therein. The lack of an explicit recognition of a public nuisance cause of action as part of this regulatory framework is, as the Georgia Supreme Court long ago recognized, is fatal to this claim. *See Boykin*, 191 Ga. at 395. Even if such a claim were recognized, the Complaint provides nothing more than conclusory statements, irrelevant facts, and insinuations that point to nothing "more than the mere possibility of misconduct," but this is insufficient to survive dismissal. *Iqbal*, 556 U.S. at 679; *see Moraine Properties*, 2010 WL 11538466, at *2. Beyond the lack of allegations of *specific* wrongdoing, plaintiff simply cannot allege a connection between even its conclusory allegations of Publix's wrongdoing and Cobb County. For the reasons set forth above, Publix respectfully requests that plaintiff's Complaint be dismissed as to Publix.

Dated: August 27, 2021

    Respectfully Submitted,

    <u>/s/ Gregory S. Chernack</u>
    Gregory S. Chernack, Esq., (D.C. Bar No. 472295)
    (gchernack@hollingsworthllp.com)
    Kathryn S. Jensen, Esq., (D.C. Bar No. 494598)
    (kjensen@hollingsworthllp.com)
    Hollingsworth LLP
    1350 I Street N.W.
    Washington, D.C. 20005
    Phone: (202) 898-5800
    Fax: (202) 682-1639

    *Attorneys for Defendant Publix Super Markets, Inc.*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a copy of the foregoing was filed electronically on August 27, 2021. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

/s/ Gregory S. Chernack
Gregory S. Chernack, Esq., (D.C. Bar No. 472295)
(gchernack@hollingsworthllp.com)
Hollingsworth LLP
1350 I Street N.W.
Washington, D.C. 20005
Phone: (202) 898-5800
Fax: (202) 682-1639

*Attorney for Defendant Publix Super Markets, Inc.*