# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | |
| THIS DOCUMENT RELATES TO: | MDL No. 2804 |
| *County of Lake, Ohio v. Purdue Pharma, et al.*, Case No. 18-op-45032 | Case No. 1:17-md-2804 |
| | Judge Dan Aaron Polster |
| *County of Trumbull, Ohio v. Purdue Pharma, et al.*, Case No. 18-op-45079 | |

**PHARMACY DEFENDANTS' REPLY SUPPORTING OBJECTION TO THE SPECIAL MASTER'S RULING RE: TRACK THREE DEPOSITION OF JOSEPH RANNAZZISI**

**INTRODUCTION**

Plaintiffs do not dispute that they have an agreement with Joe Rannazzisi to offer dispensing testimony at trial.  That agreement has not been disclosed.  The Track 3 Plaintiffs did not even suggest such an agreement existed until July 30, well after the close of fact discovery.  Had the Pharmacy Defendants known that Plaintiffs could—and would—transport Rannazzisi to trial in Ohio to testify, they would have sought his deposition much sooner.  But Plaintiffs provided no such notice.  Instead, Plaintiffs now boast that they believe their arrangement will lead to "devastating" testimony from "a senior DEA official"—testimony that Plaintiffs acknowledge DEA has never authorized the Pharmacy Defendants to explore, from a witness Plaintiffs acknowledge they have paid in other cases.

Plaintiffs thereby effectively concede prejudice to the Pharmacy Defendants from denying this deposition.  But Plaintiffs never even suggest that they (or Rannazzisi) will be prejudiced by allowing it.  Rannazzisi is ***not*** a senior DEA official anymore; he left DEA in 2015 under a cloud, for which he blames an entire industry.  *See, e.g.*, Ex. A, Scott Higham and Lenny Bernstein, *Who is Joe Rannazzisi: The DEA man who fought the drug companies and lost* (Wash. Post, Oct. 15, 2017).  Since then, Rannazzisi has offered expert opinions against non-pharmacy opioid defendants, and he has testified at length on behalf of opioid plaintiffs at trial.  He is apparently willing and able to do so again.

Meanwhile, Plaintiffs (like the Pharmacy Defendants) submitted *Touhy* requests for dispensing testimony from ***other*** DEA witnesses during fact discovery, but never from Rannazzisi.  Plaintiffs never disclosed they would seek anything other than ***distribution*** testimony from Rannazzisi until months after the close of fact discovery.  If the Court allows Rannazzisi to testify beyond the scope of his Track 1 deposition on distribution issues, and DEA

2

authorizes additional testimony on dispensing, good cause exists for a dispensing deposition of Rannazzisi, to occur in time for the Track 3 trial.

## ARGUMENT

I.  **Plaintiffs' negotiations with DOJ and the Pharmacy Defendants regarding DEA dispensing depositions in Track 3 contradict their current position.**

The parties and DOJ negotiated several *Touhy* requests for dispensing-related testimony in Track 3.  Plaintiffs' opposition ("Opp.") focuses on one of those requests, for the deposition of another former DEA Official, Demetra Ashley, whose testimony the Pharmacy Defendants sought and obtained during fact discovery.  But Plaintiffs omit that, at the time, (1) Plaintiffs objected to the Pharmacy Defendants' request for Ashley's dispensing testimony as duplicative, and (2) Plaintiffs submitted their own *Touhy* requests for multiple dispensing-related DEA depositions, though never asked for Rannazzisi.  These negotiations contradict Plaintiff's position and support the Pharmacy Defendants' request for Rannazzisi's deposition.

Plaintiffs assert that the Pharmacy Defendants' request for dispensing-related testimony from Demetra Ashley somehow shows that the Pharmacy Defendants knew they needed to request dispensing testimony from Rannazzisi as well.  This is a non sequitur.  If the request for Ashley's dispensing deposition shows anything, it shows that the Pharmacy Defendants believed that ***all parties*** would submit a *Touhy* request for any DEA witness whose testimony ***they would seek to offer at trial***.[1]  Unlike Plaintiffs, the Pharmacy Defendants do not seek to offer Rannazzisi's dispensing testimony at trial—they sought Ashley's testimony instead.

---

[1] Plaintiffs point to the Pharmacy Defendants' position that a *Touhy* authorization is not required for testimony by former DEA employees.  This, too, is a non sequitur.  The Pharmacy Defendants' position does not change the fact that DEA—***and Plaintiffs***—have always taken the position that *Touhy* authorization ***is*** required before any DEA witness can testify.  The Pharmacy Defendants had no reason to expect that Plaintiffs would depart from this position with respect to Rannazzisi.

3

More important, and what Plaintiffs fail to mention, is that Plaintiffs **objected** to the Pharmacy Defendants' request for Ashley's dispensing deposition.  Plaintiffs argued that the deposition was "inappropriate in that Ms. Ashley was deposed by Defendants in the Track 1 cases."  Ex. B at 2, 12/1/20 Singer Letter.  Of course, the same was true of Rannazzisi.  Plaintiffs also objected that Ashley's dispensing deposition would be duplicative, given that the parties had served requests on DEA for dispensing-related Rule 30(b)(6) testimony as well.  *See id.* ("There is no reason to have multiple DEA witnesses testify to as to the same topics, particularly given the short window before the close of fact discovery.").  Plaintiffs' argument now—that Defendants should have sought Rannazzisi's dispensing testimony during fact discovery, as they did for Ashley—directly contradicts their earlier position with respect to Ashley's deposition.

Despite Plaintiffs' objections to Ashley's dispensing testimony, Plaintiffs themselves subsequently submitted requests for the depositions of two additional DEA witnesses on dispensing issues, Susan Langston and Lynette Wingert.  Ex. C, 12/18/20 Elsner Email; Ex. D, 2/2/21 *Touhy* Request.  Those depositions did not go forward.  Yet, the fact that Plaintiffs made the requests in the first place suggests that Plaintiffs knew that **they**—not Pharmacy Defendants—needed to make such requests during fact discovery.  Those requests are also consistent with the Pharmacy Defendants' belief at the time that Plaintiffs would make such requests for any witness from whom they sought to offer dispensing testimony at trial.  At no point during fact discovery did Plaintiffs ever ask DEA to authorize dispensing testimony from Rannazzisi.[2]

---

[2] Plaintiffs waited until after the Pharmacy Defendants filed their Objection, on August 23, 2021, to serve a *Touhy* request for Rannazzisi's dispensing testimony.  *See* Ex. E, 8/23/21 Singer Letter.

Plaintiffs assert (based on a declaration supported only by counsel's memory of a conference call eight months ago, for which there is no recording or transcript) that "Defendants argued [during fact discovery] that they should be entitled to conduct [a] fact witness deposition of Mr. Rannazzisi's successors *because* Plaintiffs would be calling Mr. Rannazzisi as a fact witness to testify at trial."  Opp. 7 (citing Ex. 11, Declaration of Mike Elsner).[3]  But even if it were appropriate to rely on counsel's memory of an un-transcribed teleconference that took place months ago, the parties' correspondence demonstrates otherwise.  The Pharmacy Defendants' argued that Ashley's deposition, and certain others that did not go forward, were appropriate for reasons having nothing to do with Rannazzisi, including that the Pharmacy Defendants had a right to seek DEA dispensing testimony from fact witnesses of their own choosing.  *See* Ex. F, 12/3/20 Delinsky Letter.  Under the circumstances—where Plaintiffs had objected to the Pharmacy Defendants seeking ***any*** DEA testimony beyond a single Rule 30(b)(6) deposition on dispensing topics—the Pharmacy Defendants also argued that if Plaintiffs wanted their own DEA depositions on dispensing, they should request them, instead of trying to prevent the Pharmacy Defendants from taking the depositions that they saw fit.  Ultimately, Plaintiffs did request additional DEA fact depositions on dispensing, though those depositions never went forward, and Plaintiffs never requested a dispensing deposition of Rannazzisi.  *See supra* (citing Ex. C, 12/18/20 Elsner Email to DOJ requesting deposition of DEA witness Susan Langston; Ex. D, 2/2/21 *Touhy* request for deposition of DEA witness Lynette Wingert).

---

[3] Undersigned counsel conferred with the defense attorney who Plaintiffs say made the statement in question.  The attorney, Eric Delinsky, stated that he does not have a perfect memory of the teleconference, but that he is as reasonably certain as his memory will allow that he did ***not*** make the statement attributed to him in Plaintiffs' brief.

Plaintiffs cannot rely on the history of the parties' negotiations with DOJ to support their assertion that the Pharmacy Defendants knew they needed to request a dispensing deposition of Rannazzisi during fact discovery. Those negotiations demonstrate just the opposite.[4]

## II. Plaintiffs failed to disclose their intent to call Rannazzisi on dispensing issues.

Plaintiffs also assert that various disclosures put the Pharmacy Defendants on notice "of Mr. Rannazzisi's relevance as a dispensing witness." Opp. 4. Not so.

*First*, the fact that Rannazzisi's name appears on various witness disclosures says nothing at all about the scope of his testimony. Particularly in light of the *Touhy* negotiations described above, those disclosures revealed little more than that Plaintiffs might seek to offer Rannazzisi's **distribution** testimony at trial—the only testimony for which Plaintiffs had sought *Touhy* authorization, and the only testimony on which the Pharmacy Defendants had an opportunity to question him. As to certain of Plaintiffs' disclosures, even that much is speculative: In addition to Rannazzisi, Plaintiffs' "persons with knowledge" list includes "all individuals" associated with 24 separate defendants who were deposed in the MDL—literally hundreds of witnesses—as well as scores of other people. *See* Opp. Ex. 3. No one would conclude from that disclosure that Plaintiffs actually intended on calling all (or perhaps any one) of those witnesses live at trial.

---

[4] For similar reasons, Plaintiffs' assertions regarding the limitations on Rannazzisi's New York and Track 2 trial testimony—which both courts limited to the scope of his Track 1 deposition— do not withstand scrutiny. Plaintiffs say those limitations are "inapposite" because there were no dispensing claims at issue in New York or Track 2. Opp. 6 at n.4. But the fact that Plaintiffs have additional claims in Track 3 says nothing about whether the Track 3 Plaintiffs did what they were supposed to do during fact discovery—i.e., seek *Touhy* authorization for dispensing testimony—before seeking trial testimony from Rannazzisi that is broader than the testimony he gave in Track 1. The New York and Track 2 courts both rejected attempts by Plaintiffs to offer testimony beyond Rannazzisi's Track 1 deposition, because Defendants had not been afforded the opportunity to depose him beyond the scope of his Track 1 deposition. *See* Doc. 3887-4 (6/7/21 Trial Tr. at 160:17-20); Doc. 3887-5 (Track 2 Order at 2); Doc. 3887-6 (New York Order). This Court should do the same if it does not grant a deposition on dispensing.

Moreover, none of the witness disclosures that Plaintiffs cite say anything at all about seeking ***dispensing***-related testimony from Rannazzisi beyond the scope of his Track 1 deposition. *See* Opp. Exs. 3-6.

*Second*, the interrogatory response that Plaintiffs cite identifies Rannazzisi as someone from whom Plaintiffs "obtained information about alleged diversion…by a pharmacy," but only after objecting that the term "obtained information" was overly broad, vague, and ambiguous. *See* Opp. Ex. 2 at 30. The response also states that Plaintiffs received ARCOS information from DEA, which shows distribution data, not dispensing data. *See id.* The interrogatory response says nothing about Plaintiffs' intent to call Rannazzisi at trial on dispensing issues for which Plaintiffs never sought, and DEA never granted, a *Touhy* authorization.

*Third*, Plaintiffs' Amended Complaint also says nothing about whether Rannazzisi might seek to provide dispensing testimony at trial. Even assuming that the Pharmacy Defendants could ever rely on allegations in a complaint to discern the topics on which Plaintiffs might seek testimony from a particular trial witness, the Amended Complaint only briefly cites a declaration from Rannazzisi. *See* Doc. 3295 at 38, 57. It does not say anything about whether he would testify at trial, or the scope of such testimony.

*Finally*, the fact that Plaintiffs issued a *Touhy* request for Rannazzisi's ***distribution*** testimony before the Track 1 trial—where he had previously been authorized to provide a deposition on the same topics—does not provide notice that Plaintiffs would later seek ***dispensing*** testimony that DEA had never authorized Rannazzisi to give. To the contrary, it underscores the fact that if Plaintiffs intended to seek testimony beyond the scope of the original *Touhy* authorization, they would need to obtain an additional *Touhy* authorization covering the new testimony.

7

Plaintiffs are correct that the Pharmacy Defendants' decision not to seek Rannazzisi's dispensing deposition any sooner than they did was not an "inadvertent omission." Opp. at 3. It was a decision based on the fact that Plaintiffs failed to disclose that they might seek such testimony at trial, and never bothered to seek DEA's authorization for such testimony until after the Pharmacy Defendants filed this objection.

The Pharmacy Defendants had no reason to request a dispensing deposition of Rannazzisi before July 30, when Plaintiffs first disclosed their intent to seek dispensing-related trial testimony from him. The Pharmacy Defendants requested a deposition just days later, on August 5, within the Court's scheduled window for additional depositions of trial witnesses. *See* Doc. 3735 at 4-5. The request was timely, and Plaintiffs' argument that Rule 16(b) limits the Court's discretion in any way is incorrect.

### III. Plaintiffs' agreement with Rannazzisi justifies a deposition.

Plaintiffs do not deny that they have an agreement with Rannazzisi for his dispensing-related trial testimony. The Pharmacy Defendants therefore seek to avoid a situation where Plaintiffs present Rannazzisi as an impartial witness at trial, and the Pharmacy Defendants are handicapped in their ability to cross-examine him on that agreement, and his other biases. Indeed, Plaintiffs already have asserted that the Pharmacy Defendants "falsely alleged" that Rannazzisi is a "hired testifier," and called the Pharmacy Defendants' arguments "bald assertions which are unsupported by any record or evidence." Opp. 9. All of that is demonstrably untrue.

*First*, Plaintiffs' counsel acknowledged in open court during the Track 2 trial that Rannazzisi has offered expert testimony against other defendants in opioids litigation elsewhere. *See* Ex. G, 6/9/21 Track 2 Trial Tr. 20:22-23 (Motley Rice counsel referencing Rannazzisi's "expert deposition in another case"); *see also* Ex. H, 6/24/21 Poerschke Email (email from PEC

8

counsel attaching exhibits to another expert's deposition in the Ohio Attorney General's opioids case, which included Rannazzisi's confidential expert report in that case); Ex. A at 4 ("Today, Rannazzisi is a consultant for a team of lawyers suing the opioid industry.").

*Second*, it is undisputed that Rannazzisi voluntarily traveled hundreds of miles from his home to testify for Plaintiffs (including the same plaintiffs' counsel here) for several days in the Track 2 trial.  It is also undisputed that he is willing to do the same thing in both the Track 3 trial and the Washington AG trial against distributors (again involving the same plaintiffs' counsel here).  And though Plaintiffs attempt to brush past the fact that they have paid Rannazzisi, they acknowledge they have done so.  Opp. 9 at n.6.  He plainly is *not* an arms-length third-party witness.

*Third*, Rannazzisi has been widely quoted in the media, including on 60 Minutes, for wanting to "lock up" corporate officers for their alleged role in the opioids crisis.  Ex. A at 1.

All of these undisputed facts demonstrate Rannazzisi's bias.[5]  Plaintiffs have never denied that Rannazzisi has agreed to testify on their behalf.  The fact that Plaintiffs have never disclosed their arrangement with Rannazzisi for his dispensing-related trial testimony is just one more reason good cause exists for a dispensing deposition.

---

[5] Moreover, Plaintiffs' lead trial counsel is no stranger to secret arrangements with witnesses.  The Fifth Circuit recently reversed a jury verdict in his client's favor and ordered a new trial, concluding that he had "misled the jury in creating the impression that [a trial witness] had neither pecuniary incentive nor motive in testifying."  *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 792 (5th Cir. 2018).  The court held that counsel "manufactured" the impression that two expert witnesses had not been compensated for their testimony, when one "had directed a $10,000 donation to his alma mater before trial" and "both received sizable sums after the verdict."  *Id*. at 789.

**CONCLUSION**

Assuming the DEA authorizes Rannazzisi to offer dispensing testimony, the Court should enforce the Pharmacy Defendants' subpoena and order a dispensing deposition, to take place before the Track 3 trial.  DOJ has objected to conferring on these issues until after the Court rules on this Objection.  *See* Ex. I, 8/30/21 Jaco Email.  Therefore the Pharmacy Defendants request a prompt ruling.  In the alternative, the Court should order that Mr. Rannazzisi's trial testimony be limited to the scope of his MDL Track 1 deposition.

Dated: September 1, 2021

/s/  *Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, Illinois 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
sharon.desh@bartlitbeck.com
sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
(303) 592-3100
alex.harris@bartlitbeck.com
*Attorneys for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*

/s/ *Robert M. Barnes (consent)*
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA, LLP

10

35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Fax: (412) 391-8758
E-mail: rbarnes@marcus-shapira.com
E-mail: livingston@marcus-shapira.com
E-mail: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc., and HBC Service Company*


/s/   John M. Majoras (consent)
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of September, 2021, a notice of the foregoing has been served via CM/ECF to all counsel of record.

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr

*Counsel for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*