# EXHIBIT G

```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT CHARLESTON

_____x
                              :
THE CITY OF HUNTINGTON,       :      Civil Action
                              :
              Plaintiff,      :      No.  3:17-cv-01362
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
              Defendants.     :
_____x
                              :
CABELL COUNTY COMMISSION,     :      Civil Action
                              :
              Plaintiff,      :      No. 3:17-cv-01665
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
              Defendants.     :
_____x


                 BENCH TRIAL - VOLUME 23
   BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
             UNITED STATES DISTRICT COURT
              IN CHARLESTON, WEST VIRGINIA


                      JUNE 9, 2021
```

1  companies shipping and then reporting suspicious orders,
2  correct?
3  **A.** I saw what he said.
4  **Q.** Yes.
5  **A.** It was presented to me in my deposition, but I didn't
6  agree with that.
7  **Q.** I understand you don't agree with that, but you had
8  seen his testimony?
9  **A.** Yes.
10 **Q.** Before it was presented to you, correct?
11 **A.** I don't recall seeing his testimony before it was
12 presented to me in deposition, no.
13 **Q.** Let's cull up the July 16th, 2020 transcript and I'll
14 show you what I'm talking about and, if I'm misunderstanding
15 what you're saying, you can tell me. Page 210, Line 1 to 7,
16 please.
17     Do you see where I had the chance to ask you -- Line 1
18 to 7, please. Did you see that in his testimony that he
19 told plaintiff lawyers, including lawyers in this case, and
20 this is a different case, that DEA accepted companies
21 shipping and then reporting suspicious orders? Did you see
22 that in his testimony? Answer, I saw that in his testimony.
23 **A.** Can I see what was done before that?
24     MR. ACKERMAN: Your Honor --
25     THE WITNESS: Can I see the page before that, Page

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1  209?

2  MR. ACKERMAN: Mr. Schmidt, can you give me the

3  date of that deposition again?

4  MR. SCHMIDT: Yes. It's July 16th, 2020.

5  THE WITNESS: I don't want this taken out of

6  context, so if I could look at 209, that would be great.

7  BY MR. SCHMIDT:

8  Q. My testimony is, do you see that testimony?

9  MR. ACKERMAN: Your Honor, before we go forward,

10 is that the MDL deposition or is that Mr. Rannazzisi's

11 expert deposition in a different case?

12 MR. SCHMIDT: It's the Ohio deposition.

13 MR. ACKERMAN: So, Your Honor, this is -- I need

14 to make a record on this. The defendants filed a motion

15 that said the scope of Mr. Rannazzisi's testimony is limited

16 to information that was in his MDL depositions and we, the

17 plaintiffs, agreed to that and that was the scope of the

18 direct questioning. And when we went outside that scope,

19 defendants objected.

20 This line of questioning is now concerning something

21 that wasn't in the MDL deposition, but was in a totally

22 separate expert deposition in another case involving the

23 Ohio Attorney General. So, we would object to this line of

24 questioning as outside the scope because cross examination

25 necessarily has to be within the scope of the direct

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1  examination.

2  MR. SCHMIDT: Two responses, Your Honor. This is
3  within the scope. He testified about there not being a
4  change in policy. He knows there was testimony from his
5  colleagues, the very person who trained him, that there was
6  a change in policy. So, that's an appropriate question
7  that's well within the scope even if we were limited to the
8  scope of his exam, which I don't believe we are. We're with
9  a fact witness who we can't re-call in our case; but even if
10 we were, it's well within the scope.

11 And as to the point that this is from an expert
12 deposition, yes, it is, but this question is about his
13 knowledge, the expertise he's claiming from being a DEA
14 servant.

15 I'm not going to ask him about any of his expert
16 opinions in Ohio because I agree those are off limits, but
17 when he made factual statements, or talked about his
18 experience, or talked about his knowledge, it's not a
19 get-out-of-jail-free card where that's not usable. That's
20 sworn testimony. And it's based on his experience, not
21 based on his expert opinions in that case.

22 THE COURT: Well, this is cross examination and
23 this is a prior statement that appears to be potentially
24 inconsistent and I think it's fair game, Mr. Ackerman, and
25 I'll overrule your objection.