**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>**Track Three Cases** | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

# PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF REMOTE SHIPMENTS AND PRESCRIPTIONS [DKT. #3837] AND MEMORANDUM IN SUPPORT

September 2, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ II

INTRODUCTION .............................................................................................................................. 1

LEGAL STANDARD .......................................................................................................................... 2

ARGUMENT .................................................................................................................................... 4

CONCLUSION ................................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Air Crash Disaster*,
    86 F.3d 498 (6th Cir. 1996) ................................................................................................ 8

*Ansell v. Green Acres Contracting Co.*,
    347 F.3d 515 (3d Cir. 2003)................................................................................................7

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*,
    No. 2:18-CV-1509, 2021 WL 2643107 (S.D. Ohio June 28, 2021) ....................................9

*Dortch v. Fowler*,
    588 F.3d 396 (6th Cir. 2009) ..............................................................................................2

*Dupre v. Fru-Con Eng'g Inc.*,
    112 F.3d 329 (8th Cir. 1997) ..............................................................................................7

*Fabec v. STERIS Corp.*,
    No. 1:04 CV 2062, 2005 WL 2313916 (N.D. Ohio Sept. 21, 2005) ................................6, 7

*Hurley v. Atl. City Police Dep't*,
    174 F.3d 95 (3d Cir. 1999)..................................................................................................7

*Indiana Ins. Co. v. Gen. Elec. Co.*,
    326 F. Supp. 2d 844 (N.D. Ohio 2004).....................................................................2, 3, 4, 9

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*,
    474 F.3d 288 (6th Cir. 2007) ..............................................................................................6

*Jordan v. John Soliday Fin. Group, LLC*,
    1:09CV0707, 2010 WL 4281807 (N.D. Ohio Oct. 20, 2010) .....................................3, 4, 9

*Koloda v. General Motors Parts Div., General Motors Corp.*,
    716 F.2d 373 (6th Cir. 1983) ..........................................................................................7, 8

*N.L.R.B. v. Ed Chandler Ford, Inc.*,
    718 F.2d 892 (9th Cir. 1983) ..............................................................................................5

*Robinson v. Runyon*,
    149 F.3d 507 (6th Cir. 1998) ..........................................................................................3, 8

*Sperberg v. Goodyear Tire & Rubber Co.*,
    519 F.2d 708 (6th Cir. 1975) ..........................................................................................2, 4

*St.-Gobain Autover USA, Inc. v. Xinyi Glass N.A., Inc.*,
   1:06CV2781, 2009 WL 10689369 (N.D. Ohio Oct. 23, 2009) ................................................. 3

*Thomas v. Schroer*,
   No. 2:13-CV-02987, 2016 WL 4769393 (W.D. Tenn. Sept. 13, 2016) ................................... 9

*United States v. Asher*,
   910 F.3d 854 (6th Cir. 2018) ............................................................................................... 2, 6

**OTHER AUTHORITIES**

FED. R. EVID. 401 ............................................................................................................................ 2

FED. R. EVID. 402 ........................................................................................................................ 2, 7

FED. R. EVID. 403 .............................................................................................................. 2, 7, 8, 9

FED. R. EVID. 611 ............................................................................................................................ 9

RESTATEMENT (SECOND) OF TORTS § 821B .................................................................................... 4

## INTRODUCTION

For decades, Movants[1] distributed and/or dispensed opioids into the Counties without implementing effective controls against diversion. Through this misconduct, Movants helped spawn an ever-growing opioid crisis, which continues to exist in the Counties today. It is this ongoing public nuisance that Plaintiffs seek to abate. Now, through their MIL, Movants ask the Court to impose an entirely arbitrary temporal cutoff, precluding any evidence at trial of problematic opioid shipments or prescriptions distributed or dispensed by them into the Counties prior to 2015 (the "Pre-2015 Evidence").[2] The date they chose is particularly notable, as Movants stopped distributing opioids into the Counties in late 2014.

Movants argue that all Pre-2015 Evidence should be excluded because (i) the evidence is too remote to be material to Plaintiffs' claim that a public nuisance exists in the Counties today, (ii) allowing the evidence would waste time at trial and be needlessly cumulative, unfairly prejudicial, and confusing to the jury, and (iii) "the Court has not allotted Defendants enough time or witnesses to defend tens of thousands of shipments and prescriptions over a fifteen-year period." Ds' MIL, p. 1. These arguments are all without merit and should be rejected. The Pre-2015 Evidence is directly relevant to the ultimate question in this case: whether each Defendant's conduct was a substantial factor in causing an unreasonable interference with a public right in the Counties. The public nuisance that exists today is the result of *all* of the opioids Movants

---

[1] Originally, Movants were CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., CVS Indiana, L.L.C., Rite Aid Hdqtrs. Corp., Rite Aid of Ohio, Inc., Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-Atlantic Customer Support Center, and Eckerd Corp. d/b/a Rite Aid Liverpool Distribution Center. Since the filing of their motion, however, the Rite Aid Defendants have been severed from the Track 3 cases. *See* 8/26/21 Order granting Dkt. #3894 (Joint Motion to Sever).

[2] Defendants, including Movants, have also filed a separate motion *in limine* seeking to preclude all evidence of post-2010 conduct. Dkt. #3843. Plaintiffs explain why that motion has no merit in their response to same, filed contemporaneously herewith.

improperly distributed and dispensed into the Counties, not just those from the past five years. This highly probative evidence is neither unfairly prejudicial, needlessly cumulative, nor confusing.  Finally, Movants' continued complaints about the unfairness of their allotted trial time are disingenuous.  They are well aware that Plaintiffs intend to prove their case through aggregate proof, not by individual shipments or prescriptions.  Movants can certainly choose to defend the case however they want with the time they have been allotted, but their strategic litigation choices do not render the Pre-2015 Evidence "clearly inadmissible" on all potential grounds.  Their motion should be denied in full.

## LEGAL STANDARD

The Sixth Circuit states: "Orders in limine which exclude broad categories of evidence should rarely be employed.  A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  Thus, the Court "has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).  Relevant evidence is generally admissible.  FED. R. EVID. 402.  "Evidence is relevant if: (a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  FED. R. EVID. 401 (emphasis added).  This is an "'extremely liberal'" standard.  *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (citation omitted).

Courts may exclude relevant evidence, however, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.  Rule 403's balancing test "is strongly weighted toward admission." *United States v. Asher*, 910 F.3d

2

854, 860 (6th Cir. 2018). To be excluded on prejudice grounds, the evidence cannot just be prejudicial; it must be *unfairly* prejudicial. *Robinson v. Runyon*, 149 F.3d 507, 514 (6th Cir. 1998). "'Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis.'" *Id*. at 515 (citation omitted). Even when the evidence is "shaky," "'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking' such evidence, not exclusion." *Id*. (citation omitted).

The moving party bears the burden of demonstrating that the evidence sought to be excluded is clearly inadmissible on all potential grounds. *See Jordan v. John Soliday Fin. Group, LLC*, 1:09CV0707, 2010 WL 4281807, at *1 (N.D. Ohio Oct. 20, 2010). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Indiana Ins.*, 326 F. Supp. 2d at 846. *See also Jordan*, 2010 WL 4281807, at *1. The Court has broad discretion in determining whether to grant or deny a motion *in limine*. *St.-Gobain Autover USA, Inc. v. Xinyi Glass N.A., Inc.*, 1:06CV2781, 2009 WL 10689369, at *1 (N.D. Ohio Oct. 23, 2009).

The fact that the Court denies a motion *in limine* "does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." *Indiana Ins.*, 326 F. Supp. 2d at 846. It simply means that, "without the context of trial, the [C]ourt is unable to determine whether the evidence in question should be excluded." *Id.* The movant may still raise objections to the introduction of the evidence during the trial. *Id.*

3

...

## ARGUMENT

Movants have not demonstrated, nor can they demonstrate, that the Pre-2015 Evidence is clearly inadmissible on all potential grounds. *See Indiana Ins.*, 326 F. Supp. 2d at 846; *Jordan*, 2010 WL 4281807, at *1. Putting aside the overly broad nature of the MIL, which is a sufficient basis for denial in and of itself,[3] the evidence Movants seek to exclude is directly material to the central issues in this case.

As this Court has previously held, "Ohio follows the Restatement of the Law (Second) of Torts, which broadly defines public nuisance as 'an unreasonable interference with a right common to the general public.'" Dkt. #2572 (CT1 Order on Ps' Nuisance MSJ) at p. 2 (quoting *Cincinnati v. Beretta U.S.A.,* 7Argument68 N.E.2d 1136, 1142 (Ohio 2002)); *see also* RESTATEMENT (SECOND) OF TORTS § 821B(1). One of the ways Plaintiffs can demonstrate an "unreasonable interference" is through evidence of "'conduct that is of a continuing nature or one which has produced a permanent or long-lasting effect upon the public right, an effect of which the actor is aware or should be aware.'" Dkt. #2572 (CT1 Order on Ps' Nuisance MSJ) at p. 2 (quoting *Cincinnati,* 768 N.E.2d at 1142). *See also* RESTATEMENT (SECOND) OF TORTS § 821B(2)(c). Plaintiffs must also prove that the conduct of each Defendant was a substantial factor in producing the harm suffered by the Counties. Dkt. #2561 (CT1 Causation MSJ Order) at pp. 6, 9. Finally, this Court has explained that there is no limitations period applicable to actions seeking the abatement of a public nuisance. Dkt. #2568 (CT1 Order on SOL MSJ) at pp. 5-6.[4]

---

[3] *See Sperberg*, 519 F.2d at 712; Dkt. #3058 (CT1A Evidentiary Order) at pp. 67-68 (denying overly broad MILs); Dkt. #3546 (CT1B Evidentiary Order) at p. 15 (same).

[4] *Cf.* Dkt. #3058 (CT1A Evidentiary Order) at p. 45 (denying Schein's MIL to preclude references to conduct occurring prior to 5/18/14 with respect to Ps' conspiracy claim; "The Court has ruled that, under Ohio law, no statute of limitations applies to this claim.").

Where, as here, a continuous nuisance still exists, any conduct that creates or contributes to that nuisance (no matter when it occurs) is directly relevant to nuisance liability. Specifically, the Pre-2015 Evidence is highly probative of whether Movants' distribution and dispensing conduct (i) created an unreasonable interference with a public right, and (ii) was a substantial factor in causing Plaintiffs' harm. Notably, in ruling on temporal scope issues related to discovery, the Special Master recognized "that even decades-old procedures, policies, and actions may be highly relevant to show important background, and even the actual causes, of the current tidal wave of opioid use in the United States." Dkt. #762 (DR 3) at p. 5.

Movants claim that because Plaintiffs are seeking to abate the public nuisance as it exists today, the Pre-2015 Evidence is too remote to be material. Ds' MIL, p.1. Not so. "Generally, evidence is remote only when there is no visible, plain, or necessary connection between it and the proposition eventually to be proved." *N.L.R.B. v. Ed Chandler Ford, Inc.*, 718 F.2d 892, 893 (9th Cir. 1983). Here, the connection between Movants' pre-2015 opioid shipments and prescriptions and the current public nuisance in the Counties is clearly visible, plain, and necessary.

Much like the proverbial snowball rolling down hill, Defendants' improper distribution and dispensing of opioids for well over fifteen years has created an opioid crisis that has grown and worsened exponentially over time. Their pre-2015 shipments and prescriptions unquestionably contributed to the public nuisance that exists today. The diversion resulting from those shipments and prescriptions led to increased opioid misuse and addiction, which in turn led to even more diversion, as those who became addicted continued to seek more opioids to feed their addiction. *See, e.g.*, Dkt. #3852-8 (Lembke Rep.) at pp. 14, 19, 213-14, 220-23, 225-26; Dkt. #3852-7 (Keyes Rep.) at pp. 25-27, 41-42. Moreover, as Plaintiffs' experts have explained, there is a gateway effect in which a significant percentage of individuals who have become addicted to

5

prescription opioids eventually move on to heroin and fentanyl.  *See, e.g.,* Dkt. #3852-4 (Cutler Rep.) at pp. 16, 39, 41, 47 & Appx. 10; Dkt. #3852-8 (Lembke Rep.) at pp. 213-20; [Dkt. #3852-7 (Keyes Rep.) at pp. 35-39.  As the population of addicted individuals increased, so too did the amount of diversion in a vicious cycle that has further compounded the harms suffered by the Counties and resulted in the public nuisance that exists in their communities today.  *See, e.g.,* Dkt. #3852-4 (Cutler Rep.) at pp. 8-10, 28-30, 35-58, 63-145; Dkt. #3852-8 (Lembke Rep.) at pp. 220-62; Dkt. #3852-7 (Keyes Rep.) at pp. 30-39, 41-43, 45-61.[5]

Movants claim that courts regularly exclude evidence of remote conduct.  But the cases they cite are entirely distinguishable.  Among other things, the "remote" evidence at issue in those cases was not of conduct that formed the basis of the liability sought, but rather of *other* prior (or subsequent) conduct that was only being offered to prove issues like intent or notice.  *See Asher*, 910 F.3d at 857-59 (in criminal case alleging that defendant jailor assaulted a prisoner, trial court erred in admitting evidence that jailor had previously battered *a different prisoner* and concealed that crime; government introduced the evidence to prove jailor's intent when he assaulted the prisoner at issue in the case); *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 291– 92, 297-98 (6th Cir. 2007) (in personal injury action against bus owner arising from crash, plaintiff sought to introduce reports of prior incidents on defendant's buses to show defendant "had been *on notice* of incidents likely to lead to the kind of injury suffered by

---

[5]  Analogous circumstances exist in the environmental context.  Take the example of a company that continuously dumps toxic chemicals into a lake for 15 years and is then sued to abate the public nuisance created by its pollution.  The current amount of pollution in the lake, and thus the amount of pollution that would need to be abated, is a result of the entirety of the company's dumping, not just the dumping that occurred within a fixed number of years prior to the lawsuit being filed or adjudicated.  Thus, evidence of the company's entire 15 years of dumping would be highly material to (i) whether the interference caused by the pollution is unreasonable, (ii) whether the company's illegal dumping was a substantial factor in causing the unreasonable interference, and (iii) the extent of the abatement needed to remediate the pollution.

[p]laintiff"; trial court "did not abuse its discretion in excluding prior incidents more than four years remote in time" because the "relevance of *similar* incidents depends in part on their proximity in time to the incident at issue in the case before the court") (emphasis added); *Fabec v. STERIS Corp.*, No. 1:04 CV 2062, 2005 WL 2313916, at *1, 4, 6-7 (N.D. Ohio Sept. 21, 2005) (in employment discrimination action, age-biased remarks purportedly made by director of operations approximately eighteen months before plaintiff was fired were nothing "more than isolated remarks which were too remote in time to plaintiff's termination" to be considered "direct evidence" of discrimination; under Sixth Circuit law, one of the established "factors to be evaluated in considering allegedly age-biased remarks" is "'whether they were made proximate in time to the act of termination'") (citation omitted).[6]

Given the direct relevance of the Pre-2015 Evidence to Plaintiffs' nuisance claims, Movants' broad assertions that such evidence would "waste precious trial time," "confuse the jury[,]" and "be needlessly cumulative and unfairly prejudicial" are entirely unconvincing.

---

[6] *See also Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 518, 523-26 (3d Cir. 2003) (in employment discrimination action, trial court did not abuse its discretion in admitting evidence of employer's favorable treatment of another older worker two years after plaintiff was terminated to demonstrate non-discriminatory intent; "A reasonable person could infer that [employer's] hiring and treatment of [other worker] made it less likely that [he] acted with discriminatory intent when he terminated [plaintiff]. The passage of time and purportedly changed circumstances were proper issues for counsel to argue to the jury, and for the jury to consider in weighing the evidence."); *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 103-09, 112 (3d Cir. 1999) (in employment discrimination case based on sexual harassment suffered by female police officer once she was transferred onto the night shift in 1987, it was harmless error for trial court to have admitted evidence of sexual harassment suffered by plaintiff from 1979-1981, while working under a different supervisor; court reasoned that this evidence "was too distant in time from the events at the center of the [police department's] liability" and plaintiff had "not claim[ed] a continuing violation from 1979 to 1992"); *Dupre v. Fru-Con Eng'g Inc.*, 112 F.3d 329, 332, 336-37 (8th Cir. 1997) (in employment discrimination action, trial court did not err in refusing to admit testimony of former employee that defendant's HR director at the time of plaintiff's firing "had made comments several years earlier suggesting that the company's owners would not like a fifty-five-year-old candidate because of his age"; "The temporal remoteness of the remarks in question (four years before [plaintiff's] firing) and the other circumstances of the case support the exclusion of [the evidence]" under either FRE 402 or 403.).

7

Ds' MIL, p. 1. As the Sixth Circuit has explained: "Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair." *Koloda v. General Motors Parts Div., General Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983) (citation and internal quotations marks omitted). "Evidence is only unfairly prejudicial if it "'tends to suggest a decision on an improper basis.'" *Robinson*, 149 F.3d at 515 (citation omitted). *See also In re Air Crash Disaster*, 86 F.3d 498, 538 (6th Cir. 1996) ("Rule 403 does not exclude evidence because it is strongly persuasive or compellingly relevant—the rule only applies when it is likely that the jury will be moved by a piece of evidence in a manner that is somehow unfair or inappropriate. The truth may hurt, but Rule 403 does not make it inadmissible on that account."). Here, it would be neither unfair nor inappropriate for the jury to rely on the highly probative Pre-2015 Evidence when determining Movants' liability for public nuisance.[7] Moreover, presenting evidence that goes to the heart of Plaintiffs' case can hardly be considered a waste of time or needlessly cumulative.

Movants complain that allowing the Pre-2015 Evidence may require them "to call different witnesses or introduce different evidence to defend[,]" because "less was known about the abuse of opioid medications in 2009 than was known in 2019," and "defending an opioid prescription filled in 2009 may require, for example, proof of different guidance from government regulators and proof of an entirely different standard of care." Ds' MIL, p. 5. As a preliminary matter, the standard of care was no different in 2009 than it was in 2006 or 2015.[8] Regardless, what Movants

---

[7] *Cf. Koloda*, 716 F.2d at 378 ("Given the central importance of the issue of actual or implied notice in this case, the prejudicial impact of the disputed evidence would have to be significant in order to substantially outweigh its probative value.").

[8] Movants' duties under the CSA and its implementing regulations did not change during this time period. *See, e.g.,* Dkt. #3859-2 (Ashley Tr.) at 61:12 – 63:11; Dkt. #3859-3 (Brennan [DEA 30(b)(6)] Tr.) at 154:14 – 157:8; Dkt. #3058 (CT1A Evidentiary Order) ("The Court agrees with Plaintiffs that Defendants may not argue or suggest that the CSA and its implementing regulations have not always imposed the duties that this Court has already determined, *i.e.* that registrants must identify, report, and not ship suspicious orders (unless due diligence reasonably dispels the suspicion).").

are arguing, in essence, is that because they committed misconduct for so many years, there is too much evidence of that misconduct and it would be unfair to force them to defend against all of it, no matter how material it may be to Plaintiffs' claims. They are effectively asking to be rewarded for continuing their bad behavior for such a long time. That is not a legitimate basis for precluding directly relevant evidence.

At the very least, Movants' Rule 403 arguments are premature. Courts "are generally reluctant to grant broad exclusions of evidence before trial because 'a court is almost always better situated during the actual trial to assess the value and utility of evidence.'" *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-CV-1509, 2021 WL 2643107, at *2 (S.D. Ohio June 28, 2021) (citation omitted). The balancing test required under Rule 403 is highly context-specific. To the extent Movants believe that a particular piece of evidence is unfairly prejudicial, needlessly cumulative, confusing, or a waste of time, they should make those objections at trial where the Court will have the necessary context to make its decision. *See Indiana Ins.*, 326 F. Supp. 2d at 846 (unless evidence is clearly inadmissible, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context").[9] Movants certainly have not met their burden to prove that the Pre-2015 Evidence is clearly inadmissible under Rule 403. *See Davol*, 2021 WL 2643107, at *2; *Jordan*, 2010 WL 4281807, at *1.

Movants also argue that the Pre-2015 Evidence should be excluded under Rule 611 because the Court is not allowing "enough trial time or witnesses for Defendants to defend shipments made or prescriptions filled many years ago." Ds' MIL, p. 5. They claim that the Court's "constraints

---

[9] *See also Davol*, 2021 WL 2643107, at *2; *Jordan*, 2010 WL 4281807, at *1; *Thomas v. Schroer*, No. 2:13-CV-02987, 2016 WL 4769393, at *4 (W.D. Tenn. Sept. 13, 2016) (issues of "unfair prejudice or confusion" are "better determined in the context of trial").

9

on Defendants' ability to defend themselves prevent any effective determination of the truth for the fifteen years of shipments and prescriptions that Plaintiffs seek to introduce at trial[.]" *Id*. These arguments are similar to the ones Defendants made in their Motion to Enlarge the Time To Present Their Defense, which the Court denied.  Dkt. #3773 (M to Enlarge Time) at pp. 1-3; Minute Order, July 7, 2021.  Movants' efforts to repackage these arguments through a motion *in limine* should also be rejected.

Movants' argument that the admission of Pre-2015 Evidence will "prevent any effective determination of the truth" is entirely unpersuasive.  Indeed, the opposite is true.  Given the direct relevance of such evidence to the central issues in this case, its *preclusion* would prevent the jury from effectively determining the truth regarding Plaintiffs' nuisance claims.  Further, Movants' claim that they will not have enough time to present their defense is speculative and not well taken.  As Movants are well aware, Plaintiffs intend to try their case on the basis of aggregate proof, such that it should not be necessary to delve into certain time intensive and granular evidence, such as each individual red flag prescription or suspicious order.  Moreover, as Movants acknowledge, "Plaintiffs are subject to the same constraints[.]"  Ds' MIL, p. 3 n.3.  They argue that because "there are only two Plaintiffs, . . . each Plaintiff is afforded more time and witnesses than each Defendant." *Id*.  But that simply is not true.  If anything, these time constraints are felt more acutely by Plaintiffs, who bear the burden of proving their case against each separate Defendant.  Additionally, the Rite Aid Defendants were recently severed from the upcoming trial (*supra* at fn.1), so now Defendants' collective ~75 hours of trial time and 50 fact witnesses will be split amongst four Defendant families rather than five.

Finally, Movants' alternative proposed cutoff dates (January 1, 2013, or January 1, 2010) should be rejected for all the same reasons discussed herein.  Movants make much of the fact that

10

the Court imposed the 2010 temporal cutoff with respect to the notes field discovery Defendants were ordered to produce. Ds' MIL, p. 2. But that cutoff was not predicated on the idea that evidence of pre-2010 prescriptions was irrelevant to Plaintiffs' nuisance claims. Rather, the Court limited the scope of the notes field production (both as to timeframe and number of prescriptions) because of Defendants' repeated complaints about the requested discovery being overly burdensome and time-consuming. *See, e.g.,* Dkt. #3723 (5/7/21 Status Conference Tr.) at 18:3-9, 21:6 – 24:11, 28:21-24, 30:1-14;[10] Dkt. #3726 (Amended Red Flag Order) at p. 2.

Importantly, this notes field discovery is *not* designed for a prescription by prescription assessment of Defendants' dispensing practices, but rather to test whether Defendants were actually using their due diligence systems as they claim.[11] The Court recognized the probative

---

[10] Among other things, defense counsel argued that producing notes field information for the earlier years of prescriptions would be more difficult because it would be more likely they would have to pull hard copies of prescriptions. *See, e.g., id*. at 21:18-20 ("So much of the burden, Your Honor, is extracting, going back to 2006, these hard copies so that the sample is complete."), 21:22 – 22:13, 22:20-25 ("The time component's important, Your Honor, for a number of reasons. The first reason is that obviously more recent documents, there's a higher chance that they're easier to collect and that we may not have to dip into archival storage."); *see also* Dkt. #3726 (Amended Red Flag Order) at p. 2 ("During the May 7 teleconference, Pharmacy Defendants explained the burden associated with identifying the notes field data, including potentially needing to retrieve associated hard copy data from archived storage. Accordingly, Pharmacy Defendants argued that the universe of notes field data they should be ordered to produce should be reduced.").

[11] Indeed, the Court rejected Defendants' claims that they would need to conduct extensive individualized discovery to respond to such evidence. Dkt. #3723 (5/7/21 Status Conference Tr.) at 31:14-20 ("We're not going to – you don't need to depose doctors. Again, no one – the issue is not, you know, what the doctors ever did. It's what the pharmacies did, at least what they documented. And it's there or it's not there, so that's it. Nothing that a doctors said or did is going to be responsive to this."), 34:4-18 ("You don't need any depositions for that. The issue is there are certain prescriptions, certain things that don't – that look strange, they look odd, they look like maybe those things didn't happen. So you should have a system to check them, all right, and presumably each pharmacy had them. If you had no system at all, this case is going to be very simple. You could have every doctor come in, parade every doctor in, it's not going to help you. The issue is what system did you have and did you use it, and that's all this random sample is going to show."), 35:20 – 36:2 ("[I]f you want to just parade a bunch of doctors from, you know, Lake and Trumbull County to just say, you know, 'I'm a good doctor, and when I write a prescription it's for a valid reason,' I guess you can do that, just generally. Doesn't matter what individual prescriptions are because the plaintiffs . . . aren't saying that any individual prescription is per se a bad one.") 36:18 – 37:1.

11

value of this evidence. *Id*. at 17:5-6 ("I believe that the sampling of the notes field would be very probative to a jury."), 28:14-16 ("I think a juror would find this very relevant.  It's firsthand evidence of what the defendant – what the pharmacist did."), 30:25 – 31:1 ("I think it will be very probative to a jury, whatever it shows[.]").  Thus, after weighing the purpose for which such evidence would be used against the burdens imposed by its production and the relevant time constraints, the Court ultimately ordered Defendants to produce a limited randomized sampling of this notes field information (200 prescriptions per Defendant per year for ten years).  *Id*. at 17:5-22, 30:10-12.  The Court reasoned that this limited sampling would be enough to show whether or not Defendants were conducting due diligence.  *Id*. at 30:1-12, 34:16-18.  That is a different question, however, than whether evidence of pre-2010 prescriptions and shipments are relevant to Plaintiffs' nuisance claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny in its entirety Certain Defendants' Motion *in Limine* to Exclude Evidence of Remote Shipments and Prescriptions.

Dated:  September 2, 2021

Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304) 654-8281
paul@farrellfuller.com
*Plaintiffs' Co-Lead Counsel*

W. Mark Lanier
LANIER LAW FIRM
10940 W. Sam Houston Pkwy N., Ste 100
Houston, TX  77064
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Trial Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Frank L. Gallucci
PLEVIN & GALLUCCI CO., L.P.A.
55 Public Square, Suite 222
Cleveland, OH 44113 (216)
861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

13

>Hunter J. Shkolnik
>NAPOLI SHKOLNIK
>270 Munoz Rivera Avenue, Suite 201
>Hato Rey, Puerto Rico 00918
>(787) 493-5088, Ext. 2007
>hunter@napolilaw.com
>
>*Counsel for Plaintiffs Lake County and Trumbull County, Ohio*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

>*/s/Peter H. Weinberger*
>Peter H. Weinberger

14