# EXHIBIT G

```
 1                UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION

 3

 4

 5    IN RE:                    )
      NATIONAL PRESCRIPTION     ) MDL No. 2804
 6    OPIATE LITIGATION         )
                                ) Case No. 1:17-md-2804
 7    THIS DOCUMENT RELATES TO:)
                                ) Judge Dan Aaron Polster
 8    ALL CASES                 )
                                ) Mag. Judge David A. Ruiz
 9

10

11
                 TRANSCRIPT OF THE SPECIAL MEETING
12       REGARDING DOCUMENT AUTHENTICATION AND ADMISSIBILITY
                     WEDNESDAY, AUGUST 18, 2021
13                           - - - - -

14

15         The transcript of the Special Meeting

16    Regarding Document Authentication and Admissibility

17    before Special Master David R. Cohen, called by the

18    Plaintiffs pursuant to the Federal Rules of Civil

19    Procedure, taken before me, the undersigned, Jill

20    A. Kulewsky, RPR and Notary Public within and for

21    the State of Ohio, taken at the offices of Jones

22    Day, 1001 Lakeside Avenue East, Cleveland, Ohio,

23    commencing at 10:11 a.m., the day and date above

24    set forth.

25
```

```
 1                MR. WEINBERGER:  In terms of the
 2       defendants' documents or --
 3                SPECIAL MASTER COHEN:  I'm just
 4       taking a pause here.  We can go to the
 5       plaintiffs' documents and then address my
 6       question.  My point is, I'm here, I'm trying to
 7       be helpful to you, I'm trying to get rulings
 8       out, and if there are any other issues that we
 9       should discuss, then we should do it while
10       we're all in the same room.
11                MR. WEINBERGER:  So as I set
12       forth in one of the e-mails to set up this
13       meeting, a very important issue for us is the
14       issue of ARCOS and the defendants'
15       transactional data that has been produced, and
16       it's not just the raw data but it's also the
17       process they gave us.
18            So as everybody in this case knows, this
19       whole ARCOS and defendants' transactional data
20       on both the distribution and dispenser side was
21       processed by Dr. McCann, and it's been laid out
22       in his report, and he's been deposed about it,
23       and as reflected in our recently filed motion
24       in limine, we intend to create 1006 summaries
25       based upon that process data.  So we're putting
```

1        out questions of the admissibility of not only
2        the raw data but the process data.
3                I might add that in the case before Judge
4        Faber, and I realize these defendants were not
5        parties to that case, it took several days of
6        testimony by Dr. McCann to lay the foundation
7        for the admissibility of the process data and
8        1006s created from that process data, and Judge
9        Faber issued a lengthy opinion analyzing that,
10       and that issue I'm admitting into evidence.
11               We've attached a copy of that opinion to
12       the motion in limine that we just filed.  It's
13       actually an affirmative motion in limine to
14       seek the admission of the 1006s in this case.
15       So it's out on the table.
16                        SPECIAL MASTER COHEN:  I mean if
17       you teed it up via a motion in limine, which is
18       probably the better way to do it, then the
19       Court will deal with it that way.  I'm not
20       going to touch it now.
21                        MR. WEINBERGER:  We teed up the
22       1006 issue, and obviously as a foundational
23       part of that is the reps.
24                        SPECIAL MASTER COHEN:  Well, it
25       sounds like it's teed up.  It sounds like it's

1  teed up in a more precise, thorough way via a
2  motion in limine, and so it doesn't make sense
3  to me that we should get into it now,
4  especially without the defendants having had a
5  chance to respond.  In other words, it sounds
6  like that issue is going to get ruled on.
7              MR. WEINBERGER:  Perhaps we don't
8  have a dispute.
9              SPECIAL MASTER COHEN:  We'll find
10 out.
11             MR. LANIER:  Are you all going to
12 fuss with that, that's what Pete is trying to
13 say?
14             MR. STOFFELMAYR:  We've already
15 agreed the 1006 summaries depend on the
16 summary.  Some are good, some are bad, and we
17 have the ones attached to the motion, and we're
18 looking at those to see if they are different
19 than the ones we've seen before.  But no one
20 disagrees there is such a thing as an improper
21 1006 summary, and no one disagrees that there's
22 a bad one, unless you look at the actual
23 summaries.
24             MR. WEINBERGER:  One
25 clarification, Kaspar.  Are we talking about

Case: 1:17-md-02804-DAP Doc #: 3927-7 Filed: 09/02/21 6 of 8. PageID #: 537394
Opiate Litigation Special Meeting
August 18, 2021

88

1     the same language?  Are we talking about the
2     process data or the raw data?
3                MR. STOFFELMAYR:  I don't know
4     what process data means, so I guess I can't
5     answer that.
6                MR. WEINBERGER:  What McCann did
7     to the raw data to come up with his various
8     charts and his opinions in his report.
9                MR. STOFFELMAYR:  So what he did
10    is not a thing.  If there is like a database,
11    something produced, something we're supposed to
12    look at, I guess we could say, yes, we think
13    his manipulation was fine, whatever he did,
14    everyone has to do that to --
15               MR. WEINBERGER:  There's many,
16    many pages of charts and attachments and --
17               MR. STOFFELMAYR:  Right.
18               SPECIAL MASTER COHEN:  I don't
19    understand how that issue doesn't get teed up
20    via Daubert or --
21               MR. WEINBERGER:  They didn't have
22    to deal with Daubert on that issue.
23               SPECIAL MASTER COHEN:  Okay.
24    Well, maybe that answers the question.  But
25    also, to some extent at trial, you're going to

1      have to present to the jury what it is -- first
2      of all, what ARCOS data is and what your
3      experts did with it.  That's just a part of the
4      normal presentation of evidence.
5              I don't -- I'm kind of missing where
6      there's an authentication issue.  It sounds
7      more like a Daubert process question.  But
8      anyway, it's teed up via a motion in limine.
9                      MR. WEINBERGER:  I understand the
10     distinction, Special Master Cohen, and perhaps
11     it is an authentication issue and I should be
12     using that terminology.
13              The question is what he did, was the
14     processing a valid way of processing the data,
15     and to my knowledge, there is no dispute --
16     there is no dispute about it, there hasn't been
17     a Daubert about it, and I don't think that it
18     serves any of us or the Court or the jury to
19     have to spend two days taking this witness
20     through an examination that can't be done by
21     way of some sort of agreement or stipulation or
22     otherwise.
23                     SPECIAL MASTER COHEN:  I don't
24     know how this plays out.  If the defendants
25     believe -- and of course, you don't have to

1    file a Daubert motion as plaintiffs didn't and
2    then attack the process at trial, you know,
3    there's tactical reasons to do that, strategic
4    reasons to do that.  If the defendants believe
5    that the processing of the data was incorrect,
6    they can bring that out at trial.
7         I guess my point is that we're not going
8    to talk any more about this today because I'm
9    not sure it's teed up properly.
10              MR. LANIER:  Okay.
11              SPECIAL MASTER COHEN:  It doesn't
12   mean it doesn't get teed up later.
13       Any other issues?
14              MR. LANIER:  No other issues that
15   we see in terms of what the plaintiffs are
16   seeking to offer as of today, with the
17   exception, of course, I spoke with Mr. Hynes
18   and Mr. Delinsky, and we discussed that they
19   wanted a little more time to look through the
20   affidavit, and I said that's fine, and we'll
21   try and get to that next week.  Beyond that, I
22   think we've dealt with the issues that we
23   brought to the presence of the Court today.
24              MR. STOFFELMAYR:  We have one
25   weird question about the affidavit.  It doesn't