# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>TRACK THREE | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## PHARMACY DEFENDANTS' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE NEWSPAPER ARTICLES

Plaintiffs want an evidentiary shortcut—trial by inflammatory newspaper articles. They have no evidence that any Pharmacy Defendant's[1] pharmacist in Lake or Trumbull County failed to properly exercise corresponding responsibility due to an emphasis on speed when filling prescriptions. So Plaintiffs seek to insinuate such a thing occurred through hearsay newspaper articles (including anonymous complaints by purported pharmacists who may or may not have worked for any Pharmacy Defendant, and certainly did not work in Lake or Trumbull County) that are unrelated to Ohio and do not mention corresponding responsibility or opioids. Introducing these media reports into evidence is flatly barred by the hearsay rule.

Plaintiffs concede that the New York Times article cannot come into evidence for the truth of the matter asserted. But Plaintiffs argue that the Chicago Tribune article, in its entirety, evades the hearsay rule because it is an adopted admission, even though Plaintiffs provide no evidence that any Pharmacy Defendant agreed with the article's conclusions or believed them to be true.

---

[1] CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., CVS Indiana, L.L.C., Walgreens Boots Alliance, Inc., Walgreen Co., Walgreen Eastern Co., Inc., Giant Eagle, Inc./HBC Service Company, and Walmart Inc.

Plaintiffs also argue that the article is admissible not for the truth of the matter asserted, but rather to show knowledge, intent, and course of conduct (albeit based on the purported statements and/or conduct of pharmacists outside of Lake and Trumbull Counties, some of whom worked for other, non-defendant pharmacies, regarding issues that have nothing to do with corresponding responsibility or opioids). But when the proposed non-hearsay use depends on the truth of the document, as it does here, the Sixth Circuit has affirmed the document's exclusion. *See United States v. Hatchett*, 918 F.2d 631, 642 (6th Cir. 1990) (affirming exclusion of *60 Minutes* video even though defendant argued it was not offered for the truth, because "its truthfulness would have to have been assumed by the jury" for the defendant's "proffered explanation to have any validity"). Moreover, Plaintiffs do not explain, for example, what course of conduct by any Pharmacy Defendant the articles tend to show, or what corporate knowledge any of them would have learned from the articles that is relevant to the issues in this case.

Finally, Plaintiffs do little to show how the newspaper articles possibly could survive Rule 403. Admission would waste time, confuse the jury, and require the Pharmacy Defendants to spend precious trial time litigating the validity of at-best tangential studies and news articles about workplace conditions in pharmacies in other states.[2] For the reasons set forth below and in the Pharmacy Defendants' opening motion, the newspaper articles should be excluded.

**I.     ARGUMENT**

**A.     The Tribune article was not adopted by the Pharmacy Defendants and is not admissible under Rule 801(d)(2).**

Plaintiffs do not argue that the New York Times article can be admitted for the truth of the matter asserted, and the Court should therefore preclude them from offering the article for that

---

[2] This is especially true for Giant Eagle, which is not mentioned in the articles but would have to spend some of its limited trial time showing that the articles have nothing to do with it.

2

purpose.  Plaintiffs do argue, however, that the Chicago Tribune article is admissible against CVS, Walgreens, and Walmart[3] under Rule 801(d)(2) because "Defendants took action in direct reliance upon the Tribune article," and thus "they have conceded the trustworthiness of the contents and statements therein."  Opp'n 9.

An adoptive admission under Rule 801(d)(2) requires a party to have "accepted and acted upon the evidence" that the offering party contends is an adoptive admission.  *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 8578945, at *2 (S.D.N.Y. Dec. 9, 2015) (citation omitted).  In other words, the circumstances must demonstrate that CVS, Walgreens, and Walmart each believed the Chicago Tribune article was true.  *See Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) ("[T]he City Manager[] would not have sought Terry Armentrout's resignation had he not believed Berry's report.").

Plaintiffs do not point to any evidence showing that CVS, Walgreens, or Walmart believed the conclusion of the Chicago Tribune article was true—*i.e.*, that the reason why pharmacists supposedly missed drug interactions was because of an "emphasis on speed" and performance metrics.  To the contrary, statements in the article show they disagreed with that conclusion: Walgreens "said it does not use [business metrics] in a manner that emphasizes productivity over patient safety" and CVS stated that "prescriptions do not have to be filled quickly."  Mot., Ex. 1 at P-02303_00010.

The exhibits included with Plaintiffs' Opposition do not show adoption either.  For example, Plaintiffs argue that CVS adopted the articles' findings because CVS undertook a "root cause" analysis.  Opp'n 7–8.  In reality, CVS's actions show the opposite:  CVS did not take the article's findings at face value and conducted its own analysis.  Indeed, although Plaintiffs point

---

[3] Plaintiffs do not argue that the Chicago Tribune article may be admitted for the truth against Giant Eagle.

to Tom Davis' deposition in support of their position, Mr. Davis actually rejected the factual conclusions set forth in the article: "I don't draw any conclusions between, you know, the opinions of the people that are interviewed and what the facts actually are." Opp'n, Ex. 1 at 218:13–219:6; *see also, e.g.*, *id.* at 200:3–14 (disagreeing with premise that CVS emphasizes fast service over patient safety). He also testified that he "can't speak to the validity of [the Chicago Tribune study's] findings." *Id.* at 173:15–17. A "root cause" analysis is a term of art from the federal statutory framework on the patient safety work product privilege. *See* 42 U.S.C. § 229b-21(7)(A) (defining "patient safety work product" to include "root cause analyses"). Special Master Cohen already has held that CVS's root cause analysis is protected by the patient safety work product privilege, ECF No. 3680, and Plaintiffs did not appeal that ruling. That a defendant conducted a privileged analysis and used statutory terms to describe it is, by no means, an admission to the content of a newspaper article.

The exhibits relating to Walgreens and Walmart fare no better. The fact that Walgreens may have "internally discussed the Tribune investigation and article," Opp'n 8, does not mean Walgreens agreed with it. It is hardly surprising that a company would internally discuss media articles mentioning it—perhaps *especially* if it disagreed with the article's conclusions. Indeed, *none* of the exhibits Plaintiffs include related to Walgreens or Walmart suggest that either Defendant adopted, agreed with, or believed the Chicago Tribune's conclusion that pharmacists supposedly missed drug interactions because of an "emphasis on speed" and performance metrics. Simply put, Plaintiffs cannot show that CVS, Walgreens, or Walmart adopted the article's conclusion and thus it is not admissible as an adoptive admission.[4]

---

[4] Plaintiffs' cases are not to the contrary. In many of them, the defendant either prepared or hired a third party to prepare the document that was later found to be an adoptive admission. *See Gen. Motors*, 2015 WL 8578945, at *2–3 (General Motors hired law firm to prepare report); *Wright-Simmons*, 155 F.3d at 1269 (investigative report prepared by defendant's employee); *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 223, 239 (2d Cir. 1999), *as amended on reh'g*

Next, Plaintiffs argue that "[a]t a minimum, Defendants adoptively admitted the statements in the Tribune article that are attributable to their respective companies." Opp'n 9. Plaintiffs do not identify any specific statements that they believe are attributable to any Pharmacy Defendant (let alone any statements that adopt the article's conclusions). Therefore, this argument is not susceptible to analysis and must be rejected.

In any event, even if certain statements in the article may satisfy an exception, the remainder of the article remains hearsay, including such out-of-court statements as those by state regulators that pharmacists are "cutting corners where they think they can cut." Mot., Ex. 1 at P-02303_00007. When a document contains hearsay within hearsay, each level of hearsay must fall within an exception to be admissible. Mot. 3 (citing *Reynolds v. Green*, 184 F.3d 589, 596 (6th Cir. 1999)). As demonstrated below, the Chicago Tribune article does not satisfy any hearsay exception and therefore must be excluded even if it contains statements of a party opponent (which, as noted, Plaintiffs have not demonstrated).[5]  *See* Mot. 4 n.3 (citing *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 512 F. Supp. 3d 803, 813 (S.D. Ohio 2021) (excluding New York Times article even though it contained opposing party statements because the article itself was hearsay); *Taylor v. Thomas*, No. 18-cv-269-GKF-FHM, 2020 WL 2114363, at *4 (N.D. Okla. May 4, 2020) (finding that even though a quoted statement in an article may be

---

(Sept. 29, 1999) (defendant designed and commissioned survey). In two others, the defendants provided the documents at issue to their expert for use in an expert report, *Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, 789 F. Supp. 2d 777, 785 (E.D. Mich. 2011), or distributed them to the press, *Spurlock v. Fox*, No. 3:09-cv-0756, 2010 WL 3807167, at *9 (M.D. Tenn. Sept. 23, 2010). Finally, *United States v. Jinadu*, 98 F.3d 239, 244–45 (6th Cir. 1996), is a criminal case in which the defendant affirmatively agreed with (and thus adopted) the statements of a U.S. Customs Special Agent.

[5] Plaintiffs also argue that the Chicago Tribune article is admissible under Rule 803(18) because their expert, Carmen Catizone, was involved in the study. Opp'n 9–10. Plaintiffs do not seek to have the *study* admitted into evidence; they seek to have *an article about the study* admitted. Even assuming Mr. Catizone could establish the reliability of the study, he has not been identified as a fact or hybrid witness, he did not write the article (which goes beyond the study itself), and Plaintiffs have not demonstrated that he can establish the reliability of the many interviews and out-of-court statements contained throughout.

a statement by a party opponent, plaintiff cannot rely on the article because the article itself was hearsay); *Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010) ("Even if [the party's] statement is viewed as a non-hearsay admission of a party opponent, the newspaper article reporting the statement is offered to prove the truth of the matter asserted and is not covered by any hearsay exception.")).[6]

> **B.  The news articles cannot show "knowledge and awareness" that "pharmacists were complaining about their working conditions."**

Plaintiffs try to get around the many layers of hearsay in the newspaper articles by arguing that the articles put the Pharmacy Defendants "on notice that the media was questioning the working conditions of their pharmacies." Opp'n 4.  According to Plaintiffs, the fact that the "media was questioning the working conditions" of the Pharmacy Defendants' pharmacies "is relevant to the question of Defendants' knowledge, intent, and course of conduct." Opp'n 10.

Putting aside that none of this has anything to do with corresponding responsibility or opioids, Plaintiffs' argument requires the allegations in the newspaper articles *to be taken as true*. The inference Plaintiffs hope the jury will draw is that the Pharmacy Defendants had knowledge that pharmacists *actually* missed drug interactions and that their work *actually* was impacted by working conditions in the Pharmacy Defendants' stores.  In other words, Plaintiffs' notice theory depends on the truth of the articles.[7]  This is impermissible.  *See* Mot. 3–4 (citing *Mahone v.*

---

[6] Plaintiffs' attempt to distinguish these cases misses the mark.  They argue that unlike in the cases cited by the Pharmacy Defendants, here the Chicago Tribune article is properly admitted under Rule 801(d)(2)(B).  But Plaintiffs' argument about the individual statements in the article being opposing party statements "[a]t a minimum," is an alternative argument in case the entire article is *not* an adoptive admission under Rule 801(d)(2)(B).  If only the statements attributable to each defendant are adoptive admissions, then the cases cited by the Pharmacy Defendants are on point: one layer of hearsay is overcome (the party admission) but the other layer is not (the rest of the article) and thus the article should be excluded.  Plaintiffs also argue that the article is admissible for a non-hearsay purpose; as set forth in section I.B, the article is not.

[7] Plaintiffs do not explain how notice of *untrue* allegations by the media about working conditions would be relevant to show knowledge, intent, or course of conduct for any fact of any relevance to the trial.

6

*Lehman*, 347 F.3d 1170, 1173 (9th Cir. 2003) ("'[a]lthough [the evidence] was not offered to prove the truth of the matter asserted, it [was] nonetheless hearsay[,]' because the inference the plaintiff sought to draw, 'depend[ed] on the truth of [the third party's] statement.'" (quoting *Orr v. Bank of Am. NT & SA*, 285 F.3d 764, 779 (9th Cir. 2002)); *Lawler v. Richardson*, No. 10-196, 2012 WL 2362383, at *2 (E.D. Pa. June 20, 2012) (finding that a newspaper article was properly excluded as hearsay even though plaintiff sought to introduce it to show notice because "in order to demonstrate that the City was on notice of these violations, we must assume that the violations and practices described in the articles actually occurred")). If the reporting in the articles is wrong, and pharmacists did not actually miss the drug interactions, did not actually make those (often anonymous) inflammatory statements, and did not have concerns about workplace conditions, then there was nothing for the Pharmacy Defendants to be "on notice" of or have knowledge of. *See Hatchett*, 918 F.2d at 642 (even though the defendant argued that "60 minutes" video segment was not being offered for the truth, it was properly excluded; "its truthfulness would have to have been assumed by the jury in order for [the defendant's] proffered explanation to have had any validity").

Plaintiffs' notice argument also assumes that the "media [] questioning the working conditions" of the Pharmacy Defendants' pharmacies outside Lake and Trumbull County has any relevance to this case. Opp'n 10. Plaintiff does not explain how the fact of media questioning—regardless of the truth of the allegations or conclusions in the articles—tends to show that pharmacists in Lake and Trumbull counties (who are not mentioned in the articles) did not properly exercise corresponding responsibility (which is not mentioned in the articles) when filling opioid prescriptions (which are not mentioned in the articles).[8] Indeed, the newspaper articles in the cases

---

[8] Plaintiffs' argument that the newspaper articles "provide context for the statements made or actions taken by Defendants in response to the articles" suffers from the same problem. Opp'n 5. They do not explain what "statements

7

on which Plaintiffs rely were directly related to the issues of the lawsuit, not issues that are tangential (in both substance and location) like the articles here. *See Z.H. v. Abbott Labs., Inc.*, No. 1:14CV176, 2017 WL 132476, at *1–2 (N.D. Ohio Jan. 13, 2017) (newspaper articles could be used to show notice regarding risks of drug at issue, in a case alleging said drug caused birth defects); *Perez v. Cathedral Buffet, Inc.*, No. 5:15CV1577, 2016 WL 6277235, at *2 (N.D. Ohio Oct. 27, 2016) (in Fair Labor Standards Act case, newspaper article could be admissible to show the Wage and Hour Division was on notice of a possible FLSA violation).[9]

### C.  The newspapers articles do not go to the "heart of this case" and are not relevant under Rule 401.

Plaintiffs argue that "pharmacists' working conditions and performance metrics . . . go to the heart of this case" and can show "knowledge, intent, and course of conduct." Opp'n 10. First, Plaintiffs have already conceded that the New York Times article cannot be admitted for the truth of the matter asserted, and, as the Pharmacy Defendants argue *supra* Section I.A, the Chicago Tribune article must be excluded as well. The articles therefore cannot be used for any of the relevance reasons Plaintiffs offer—knowledge, intent, and course of conduct—because those reasons all depend on the allegations in the article being true, as discussed *supra* Section I.B.

Second, even if the Court were to find that the Chicago Tribune article was admissible in whole or in part under Rule 801(d)(2), it should still exclude the article under Rule 401. Plaintiffs

---

made" or what "actions taken" are relevant to (let alone how they are relevant to) whether pharmacists in Lake and Trumbull counties executed their corresponding responsibility. The cases on which they rely are distinguishable. In each of the cases cited by Plaintiffs, *see* Opp'n 5, the newspaper articles and/or phone call recordings were directly related to the issues in the case. And, while the Sixth Circuit in *Williams v. General Motors Corporation* held that it was not erroneous for the district court to allow testimony about out-of-court conversations the witness had when investigating the plaintiff's sexual harassment claim to show his course of conduct upon learning of plaintiff's complaint, the district court had *excluded* the hearsay document itself. 18 F. App'x 342, 347–48 (6th Cir. 2001).

[9] In *Park West Galleries, Inc. v. Global Fine Art Registry, LLC*, No. 2:08-cv-12247, 2010 WL 987772, at *3 (E.D. Mich. Mar. 12, 2010), the plaintiff did not specifically identify the articles it wished to exclude and the court denied, without much analysis, plaintiff's motion to the extent such articles fell within one of the hearsay exceptions. It therefore provides little guidance for the issue at hand.

8

argue that "it is probable that a pharmacist pressured to work too quickly who misses dangerous drug interactions and does not have sufficient time to perform safety reviews is likewise at risk of missing red flags of diversion." Opp'n 10. This is pure lawyer conjecture—Plaintiffs do not point to any evidence, despite voluminous discovery, suggesting that any pharmacist employed by any Pharmacy Defendant anywhere (much less in Lake or Trumbull County) ever missed a single "red flag[] of diversion" because she was "pressured to work too quickly."

In any event, even if offered for the reasons Plaintiffs point to, the Chicago Tribune article does not tend to show that any pharmacists *in Lake and Trumbull counties* missed any drug interactions, let alone due to time pressure. The act of filling prescriptions is by nature an individualized and localized one—some pharmacies are busier than others, and they have different hours, different amounts of staffing, and serve different patients. The individualized nature is evident by the fact that some of the Pharmacy Defendants' pharmacists apparently passed the Chicago Tribune test while others supposedly did not. The articles—which do not involve any pharmacies in the Track Three counties, do not involve corresponding responsibility, and do not involve opioids—do not make it more probable that pharmacists in Lake and Trumbull counties "miss[ed] red flags of diversion."[10]

### D. The newspaper articles are full of unfairly prejudicial comments, including anonymous complaints purportedly made by the Pharmacy Defendants' pharmacists.

Plaintiffs do not even try to address the facially unfair prejudice contained in the articles: accusations by unnamed pharmacists that they "are afraid to speak up and lose our jobs," Mot.,

---

[10] Plaintiffs invoke the Court's prior evidentiary orders, Opp'n 10–11, to suggest that newspaper articles about pharmacies' workplace conditions outside of Ohio are relevant here. But as the Court stated in its Track One-B evidentiary order, the "Court's prior rulings [on issues of extraterritoriality] were made with broad-scope aggregate evidence in mind." ECF No. 3546 at 33. Pharmacist workplace conditions more closely resemble "evidence that is specific in nature" and if it "does not have a nexus to the Plaintiff Counties, without more, [it] will *generally* not be permitted." *Id.*

Ex. 2 at P-02302_00002 ("PLEASE HELP."), or that they are "a danger to the public," *id.* at P-02302_00001, as well as prejudicial (and unproven) accusations by state regulators ("'They're cutting corners where they think they can cut,' said Bob Stout, president of the New Hampshire Board of Pharmacy . . . ."), Mot., Ex. 1 at P-02303_00007, and former employees (a "former head pharmacist at [] CVS": "this is the worst of the pharmacist's nightmares"), *id.* at P-02303_00010.

Rather than confront these statements, Plaintiffs brush them aside as "quotes contained in the articles from third parties that will not be at trial." Opp'n 11. But it is not merely the fact that the articles contain quotes from third parties, it is the *inflammatory nature* of those quotes that is unduly prejudicial. These accusatory, often anonymous statements by third parties who cannot be cross-examined at trial result in serious prejudice, and that prejudice is far outweighed by the tangential relevance (at best) of two newspaper articles that do not relate to core issues in the case.

Plaintiffs also argue that the articles will not waste time because the Pharmacy Defendants have "nationwide dispensing policies that were the same at every pharmacy." *Id.* at 12. To the contrary, a dive into news articles about purportedly missed drug interactions (unrelated to opioids) at pharmacies outside of Ohio will require the Pharmacy Defendants to litigate the Chicago Tribune study's methodology and conclusions—which do not relate to corresponding responsibility or opioids—as well as the truth of whether there were staffing or workplace concerns at their *Lake and Trumbull* county pharmacies and whether any such concerns impacted their pharmacists' exercise of corresponding responsibility. Given the limited trial time allotted to the parties, the Pharmacy Defendants should not be forced to defend against these tangential issues.

E. **The newspaper articles cannot come into evidence under Rule 703.**

In their opening motion, the Pharmacy Defendants argue that Plaintiffs cannot use Rule 703 to try to admit the newspaper articles *into evidence*. Mot. 6 (citing Fed. R. Evid. 703)). Plaintiffs do not address this evidentiary point. Instead, they argue that it is "reasonable for

10

Plaintiffs' experts to rely on the facts contained in the articles to form their opinions." Opp'n 12. Regardless of whether it is reasonable for Plaintiffs' experts to rely on the newspaper articles, Plaintiffs cannot use Rule 703 to introduce the newspaper articles into evidence, as Plaintiffs cannot show that their probative value "substantially outweighs" their prejudicial effect.  Mot. 6 (quoting Fed. R. Evid. 703)).  Plaintiffs do not argue to the contrary.

## II.     CONCLUSION

For the reasons stated, the Pharmacy Defendants respectfully request that the Court issue an order excluding the following news articles from evidence at trial: "Pharmacies Miss Half of Dangerous Drug Combinations," Chicago Tribune (Dec. 15, 2016), and "How Chaos at Pharmacy Chains Is Putting Patients at Risk," The New York Times (Jan. 31, 2020).

Dated: September 10, 2021                                        Respectfully submitted,

/s/ John M. Majoras
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Email: jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, LLC, CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*

11

| | |
|---|---|
| /s/ *Kaspar J. Stoffelmayr*<br>Kaspar J. Stoffelmayr<br>Brian C. Swanson<br>Katherine M. Swift<br>Sharon Desh<br>Sten A. Jernudd<br>Bartlit Beck LLP<br>54 West Hubbard Street<br>Chicago, Illinois 60654<br>Phone: (312) 494-4400<br>kaspar.stoffelmayr@bartlitbeck.com<br>brian.swanson@bartlitbeck.com<br>kate.swift@bartlitbeck.com<br>sharon.desh@bartlitbeck.com<br>sten.jernudd@bartlitbeck.com<br><br>Alex J. Harris<br>Bartlit Beck LLP<br>1801 Wewatta Street, Suite 1200<br>Denver, Colorado 80202<br>Phone: (303) 592-3100<br>alex.harris@bartlitbeck.com<br><br><br>*Attorneys for Walgreens Boots Alliance, Inc.,*<br>*Walgreen Co., and Walgreen Eastern Co., Inc.* | /s/ Robert M. Barnes<br>Robert M. Barnes<br>Scott D. Livingston<br>Joshua A. Kobrin<br>MARCUS & SHAPIRA LLP<br>35th Floor, One Oxford Centre<br>301 Grant Street<br>Pittsburgh, PA 15219<br>(412) 471-3490<br>rbarnes@marcus-shapira.com<br>livingston@marcus-shapira.com<br>kobrin@marcus-shapira.com<br><br>*Counsel for Giant Eagle, Inc. and HBC*<br>*Service Company* |

12

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system to all counsel of record on September 10, 2021.

/s/ Eric R. Delinsky
Eric R. Delinsky