IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track Three Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
*IN LIMINE* TO PRECLUDE EVIDENCE OR ARGUMENT
ABOUT ALLEGED MISCONDUCT AFTER 2010**

Plaintiffs' opposition is most notable for what it does not say. Nowhere in their lengthy brief do Plaintiffs make any real attempt to dispute that Dr. David Cutler—their own causation expert—does not consider any alleged misconduct by Defendants[1] after 2010 and has opined that post-2010 conduct is irrelevant to present-day harms in Lake or Trumbull County.[2]

Instead, Plaintiffs do exactly what Defendants expected they would, doubling down on an argument that "volume alone is enough." *See* Opp. Br. at 4 (arguing that "the combination of *massive shipments* of prescription opioids" and Defendants' alleged CSA violations is sufficient to support a "causal connection to harm to the communities, like Lake and Trumbull Counties, into which the prescription opioids were shipped/dispensed").[3] Plaintiffs, however, have no answer to Dr. Cutler's cogent explanations—supported by the extensive testimony of DEA and law enforcement witnesses—for why "volume" decidedly is *not* enough.

In the end, Plaintiffs simply disagree with their own expert. If they are unwilling to withdraw expert opinions they now disavow, the Court should hold them to those opinions. In light of Dr. Cutler's report and testimony, evidence or argument about alleged misconduct by Defendants after 2010 would be irrelevant and unduly prejudicial to Defendants. The Court should exclude it under Federal Rules of Evidence 402, 403, and 611.

---

[1] Defendants include CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., CVS Indiana, L.L.C., Walgreens Boots Alliance, Inc., Walgreen Co., Walgreen Eastern Co., Inc., Giant Eagle, Inc./HBC Service Company, and Walmart Inc. This motion was initially filed on behalf of Rite Aid defendants as well. The Rite Aid defendants were severed from Track 3 on August 26, 2021. *See* Dkt. 3894.

[2] In a footnote, Plaintiffs weakly suggest that they "do not agree with the Pharmacies' characterization of Dr. Cutler's opinions." Opp. Br. at 1 n.2. They do not, however, point to even a *single* way in which Defendants have mischaracterized those opinions. Nor could they, given that Dr. Cutler clearly and repeatedly confirmed his opinions on these matters.

[3] All emphases added unless otherwise noted.

1

I. **Plaintiffs' Procedural Objections Are Unavailing**

Plaintiffs' protests notwithstanding, Defendants' motion clearly is a proper subject for a motion *in limine*—seeking to limit Plaintiffs' evidentiary proof at trial to the causation theory they themselves have advanced through their own expert.  The motion does not seek dismissal of Plaintiffs' claims, nor does it seek to resolve any claim or defense in the case.  Instead, it seeks to exclude irrelevant and unduly prejudicial evidence under Rules 402, 403, and 611.[4]  Plaintiffs would still be able to pursue their claims based on alleged misconduct in or before 2010, which Dr. Cutler says caused all of the alleged harms attributable to Defendants after 2010.

Even assuming for sake of argument that Defendants could have advanced these arguments as a motion for summary judgment, that is no reason to deny Defendants' motion. The Sixth Circuit has explained that what ultimately matters is notice to the non-movant, an opportunity to present evidence, and the merits of the dispute—not the procedural vehicle.

For example, in *Petty v. Metropolitan Government of Nashville & Davidson County*, 687 F.3d 710 (6th Cir. 2012), the Sixth Circuit rejected a party's complaint that the district court had "rul[ed] on its affirmative defenses through a motion in limine" and "improperly granted a motion for summary judgment 'masquerading' as a motion in limine." *Id.* at 720.  The Sixth Circuit "reject[ed] this procedural challenge, because Metro fails to demonstrate prejudice from the purportedly improper ruling." *Id.* at 721.  As the court explained, stated concerns over

---

[4] Plaintiffs do not really dispute Defendants' reasons why narrowing the temporal scope of evidence at trial is warranted under Rule 611 as an exercise of the Court's power over the "mode and order of . . . presenting evidence." *See* Dkt. 3843 at 6 (quoting FED. R. EVID. 611).  While they suggest that Rule 611 is not an independent basis for exclusion, they ignore the fact that the effect of Rule 611 will often be to "ensure that the jury never hears certain evidence," including by "eliminating the objectionable aspects of evidence, thus making it admissible." WRIGHT & MILLER, 28 FED. PRAC. & PROC. EVID. § 6163 (2d ed.).  That is precisely what Defendants seek by asking the Court to impose reasonable temporal limits on Plaintiffs' presentation of alleged "suspicious orders" or "flagged" prescriptions after 2010.

district courts making "summary-judgment-type rulings" in the course of resolving motions *in limine* are "grounded . . . on findings that the nonmovant lacked notice and an adequate opportunity to marshal evidence." *Id.* Because "[t]he record suggest[ed] that Metro understood that Petty's motion in limine might dispose of its affirmative defenses," and "fail[ed] to argue that it lacked an opportunity to present evidence in response," its objection failed. *Id.*

Similarly, in *Porter v. AAR Aircraft Services, Inc.*, 790 F. App'x 708 (6th Cir. 2019), the Sixth Circuit again upheld the grant of a substantive motion *in limine*, reiterating that "the primary concern with resolving summary-judgment matters when they are brought forth in a motion in limine is the lack of notice to the nonmovant and the nonmovant's potential inability to gather and present evidence." *Id.* at 713; *see also id.* ("There is nothing to suggest that either party lacked notice of the contract-interpretation issue, nor is there evidence indicating that either party lacked sufficient time to gather and present its evidence.").

Indeed, Plaintiffs' own case acknowledges that what ultimately matters is whether "the district court's rulings . . . were substantively correct." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 563 n.3 (6th Cir. 2013) (citing *Petty*, 687 F.3d at 721).[5] After all, "a [district] court may grant summary judgment sua sponte 'so long as the losing party was on notice that she had to come forward with all of her evidence.'" *Petty*, 687 F.3d at 721 (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998)); *Porter*, 790 F. App'x at 713 (collecting authority).

---

[5] *Porter* makes clear that *Louzon* and *Petty* should not be read to conflict. In any event, in the Sixth Circuit an earlier published precedent controls. *Meeks v. Ill. Central Gulf R.R.*, 738 F.2d 748, 751 (6th Cir. 1984) (describing "the familiar rule that a panel of this court may not overrule a previous panel's decision"); *see also Baynes v. Cleland*, 799 F.3d 600, 616 (6th Cir. 2015) ("Absent a change in the substantive law or an intervening Supreme Court decision which alters the outcome of those cases, it is inappropriate for a panel in this Circuit to break from earlier, controlling precedent."); *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 507 (6th Cir. 2004) ("Under the law-of-the-circuit doctrine, only the Court sitting *en banc* may overrule published circuit precedent, absent an intervening Supreme Court decision or a change in the applicable law.").

3

Consequently, even if the Court accepts Plaintiffs' mischaracterization of Defendants' motion, Plaintiffs' procedural objections fail.  Plaintiffs do not allege any prejudice, much less allege that they lacked notice of the matters in dispute or an opportunity to marshal opposing evidence.  Nor could they, given that their opposition claims to present "[a] wealth of evidence, both expert and not" that Plaintiffs say supports a "causal connection" between Defendants' post-2010 conduct and Plaintiffs' alleged harms.  Opp. Br. at 3; *id.* at 3-11 (presenting evidence).

## II.  Dr. Cutler's Opinions Foreclose Evidence of Post-2010 Alleged Misconduct

### A.  Plaintiffs have no answer to their own expert's opinions.

As detailed in Defendants' opening brief, Dr. Cutler's causation analysis does not consider *any* alleged misconduct by Defendants after 2010.  Dkt. 3843 at 1-4.  More than that, Dr. Cutler testified that Defendants' post-2010 conduct is "not relevant" to present-day opioid-related harms, that it "doesn't matter," and that an "appropriate methodology" does not include it.  Dkt. 3844-3, 6/2/21 Cutler Dep. Tr. ("Cutler Tr.") at 156:11-158:12.  As Dr. Cutler explained, "you wouldn't want to relate the deaths due to *illegal* opioids to the shipments of *legal* opioids after the crackdown on the shipping occurs" around 2010.  *Id.* at 155:6-21.  That is because, after 2010, "we're really looking at deaths due to *illegal* opioids, and the issue is the built-up demand for the *illegal* opioids, not the continuing smaller flow of the *legal* opioid prescriptions" distributed or dispensed by Defendants.  *Id.* at 157:20-25.

Dr. Cutler's opinions are clear and cannot be disputed.  Instead, remarkably, Plaintiffs simply disagree with their own expert witness:

| Dr. Cutler's Opinions | Plaintiffs' Arguments |
|---|---|
| Dr. Cutler testifies that post-2010 misconduct is "not relevant."  Cutler Tr. at 157:20-21. | Plaintiffs insist that "post-2010 misconduct is highly relevant."  Opp. Br. at 3. |

4

| | |
|---|---|
| Dr. Cutler explains that, to tell a valid "causal story," it is "very, very important" to incorporate the types of controls he implemented in his regression analyses. Cutler Tr. at 86:2-10. | Plaintiffs say Dr. Cutler's controls are really not important at all. Opp. Br. at 11 (faulting Defendants for "spend[ing] an inordinate amount of time talking about the role of control variables in causal analysis"). |
| Dr. Cutler carefully details how confounding variables in the post-2010 period—like the prevalence of "white powder versus black tar" heroin or "fentanyl supply lines"—render a connection between post-2010 shipments and dispensing and Plaintiffs' harm unreliable. Cutler Tr. at 102:2-104:5. | Plaintiffs pretend none of the confounding variables matter for causation. Opp. Br. at 12 (arguing that "the jury does not have to disaggregate the causes of the opioid epidemic" like Dr. Cutler has done).[6] |
| Dr. Cutler confirms the testimony of DEA and law enforcement witnesses that volume, by itself, is not enough. *See* Dkt. 3843 at 4-5 & n.5 (collecting testimony). | Plaintiffs say volume is *all* they need. Opp. Br. at 3 (insisting that their allegations that Defendants distributed and dispensed "massive numbers" of opioids into Track 3 without adequate due diligence are "sufficient evidence of the causal link between the Pharmacies' distribution and dispensing practices and the Plaintiffs' harms"). |

If Plaintiffs really believe that Dr. Cutler is so wrong about so many fundamental things, they should withdraw him as an expert and rely on their other "causation" experts and arguments based on mere volume. The reason they do not is because Dr. Cutler is their *only* expert— indeed, their only witness, expert or not—who even purports to draw any connection between Defendants' alleged misconduct and any concrete harms in Lake or Trumbull County.

---

[6] Plaintiffs doubly mischaracterize Defendants' argument on this point, suggesting that the only variables at issue are "economic and demographic" and implying that Defendants seek to use racial, economic, and educational disparities to dodge responsibility. Opp. Br. at 12 n.6. The former is wrong; the latter is wrong and offensive. As detailed in Defendants' opening brief (and the chart above), Dr. Cutler not only controlled for economic and demographic factors, but also identified confounding variables like the relative availability of black tar versus white powder heroin and the strength or weakness of illicit fentanyl supply lines in an area. Dkt. 3843 at 5. More importantly, Defendants disagree with Plaintiffs' allegations about both misconduct *and* causation. It is Plaintiffs' own causation expert who details why any causation theory based on post-2010 conduct fails, and Defendants make no excuses by pointing that out.

5

### B. Drawing a valid causal link between Defendants' alleged misconduct and Plaintiffs' alleged harms requires expert testimony.

The causation story that Plaintiffs want to tell—that distribution and dispensing of prescription opioid medications by each of the Defendants led to an oversupply of prescription opioids, diversion of those prescription opioids into the illicit market, and resulting harm to Lake and Trumbull Counties, *see* Ex. 1, Track 3 Jury Verdict Form—requires expert testimony. While Plaintiffs will not admit it, because it strikes at the heart of their case, volume is not diversion, and diversion is not harm. This is especially so here, where any given Defendant's distribution or dispensing conduct is such a small part of the overall distribution and dispensing picture in Lake or Trumbull County. To show that any given Defendant's conduct was a "substantial factor" in creating present-day opioid-related harms, Plaintiffs must necessarily distinguish that Defendant's conduct from the conduct of other Defendants (and former defendants); numerous non-party distributors and dispensers; and third-party actors like manufacturers, bad prescribers, pill mills, and criminal drug dealers and traffickers. It must also account for the myriad of economic, demographic, and other variables Dr. Cutler attempted to identify and control for in his analyses of each Defendant's conduct—variables that multiply rapidly and are far more complex in the period after 2010. *See* Cutler. Tr. at 102:1-104:5.

Plaintiffs presumably hired Dr. Cutler, a health care economist at Harvard, because they recognized that this type of causal link for a crisis as complex and far-reaching as the current opioid crisis requires "scientific, technical, or other specialized knowledge" far beyond the ability of any lay witness or juror. FED. R. EVID. 702(a). As Dr. Cutler put it, "correlation does not imply causality." Cutler Tr. at 84:25-85:1. "[I]f you want to tell a *causal* story," it is "very, very important" to "include controls for quite a number of different reasons why [two variables] may be correlated." *Id.* at 86:2-9. That is exactly what Dr. Cutler attempted to do, and "what

6

any reasonable scholar would do." *Id.* at 86:9-10.  That type of scholarly analysis is the exclusive province of expert testimony under Rules 701 and 702, and such analysis is completely lacking as to any post-2010 conduct by any Defendant in this case.

### C. None of Plaintiffs' other experts carry Plaintiffs' burden on causation.

Plaintiffs claim they have all the expert testimony they could possibly need on causation for post-2010 conduct through other experts.  Opp. Br. at 3, 7-11.  Not so.  While each of those other experts purports to offer "causation" opinions, most of them are plainly unqualified to offer such opinions.  What is more, their so-called "causation" opinions are narrow and incomplete, if not unreliable, unhelpful, and inadmissible.  And of course, not a single one of them offers any opinion connecting specific conduct by any Defendant to any concrete harms in Lake or Trumbull County.

Rafalski does not do it.  Opp. Br. at 3.  As this Court has held, "Rafalski admits he has not performed any type of analysis to determine the amount of diversion that actually occurred at Defendants' pharmacies, nor how that calculation would compare vis-à-vis the many other factors – such as bad doctors, pill mills, other independent pharmacies, and allegedly misleading marketing by manufacturers – that may also have contributed to causing the opioid epidemic." Dkt. 3929 at 13-14; *id.* at 15-16 (noting that "Rafalski's Report lacks any reference to foundational facts or other evidence to support his conclusion that Defendants' pharmacies actually diverted opiate pills into the illicit market in the Track Three Counties" and holding that Rafalski's "causation" opinions make impermissible "speculative jumps").

Neither do Lembke, Catizone, and Keyes.  Opp. Br. at 7-11.  As Defendants explained in their *Daubert* motions, neither Lembke nor Catizone are qualified to offer their "causation" opinions and those opinions are unsupported by any reliable scientific methodology.  *See* Dkts. 3914 (Catizone) & 3915 (Lembke).  Dr. Keyes purports to offer opinions on "causation," but

7

acknowledges that she is not offering any opinions regarding any specific Defendant; indeed, her report does not discuss any Defendant, and she has not reviewed any materials related to any Defendant.  Dkt. 3858.  Not one of these other experts even attempts to connect specific conduct by any Defendant—at any point in time—to any concrete harm in Lake or Trumbull County.  Only Dr. Cutler purports to do that.  Defendants pointed all of this out in their opening brief, Dkt. 3843 at 1-2 n.2, and Plaintiffs offer no response.

In short, Dr. Cutler is the only expert who purports to trace a complete causal chain between Defendants' alleged misconduct and actual harm to Plaintiffs.  Because Plaintiffs insist on using his report and testimony—despite now disavowing his opinions and methods—the Court should hold them to that choice, excluding evidence about alleged misconduct by Defendants after 2010 as irrelevant and more prejudicial than probative.  *Id.* at 4-5.

## CONCLUSION

For these reasons, and those set out in Defendants' opening brief, the Court should exclude any evidence or argument about Defendants' alleged misconduct after 2010 or, in the alternative, exclude the expert report and opinions of Dr. David Cutler.

Dated: August 12, 2021

Respectfully Submitted,

/s/  *Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
Bartlit Beck LLP
54 West Hubbard Street
Chicago, Illinois 60654
Phone: (312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
sharon.desh@bartlitbeck.com
sten.jernudd@bartlitbeck.com

Alex J. Harris
Bartlit Beck LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
Phone: (303) 592-3100
alex.harris@bartlitbeck.com

*Attorneys for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*


/s/   *John M. Majoras* (consent)
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
jmmajoras@jonesday.com

9

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Attorneys for Walmart Inc.*


/s/    Alexandra W. Miller (consent)
Alexandra W. Miller
Eric R. Delinsky
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036
Phone: (202) 778-1800
smiller@zuckerman.com
edelinsky@zuckerman.com

*Attorneys for CVS Indiana, L.L.C., CVS Rx Services, Inc., CVS Pharmacy, Inc., CVS TN Distribution, L.L.C., and Ohio CVS Stores, L.L.C.*


/s/    Robert M. Barnes (consent)
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre 301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
rbarnes@marcus-shapira.com
livingston@marcus-shapira.com
kobrin@marcus-shapira.com

*Attorneys for Giant Eagle, Inc. and HBC Service Company*