**UNITED STATES OF AMERICA**
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

- - - - -

IN RE: NATIONAL PRESCRIPTION )
)
OPIATE LITIGATION )
) Case No.
THIS DOCUMENT RELATES TO: ) 1:17-MD-2804
)
Track Three Cases ) Honorable
) Dan A. Polster
_____)

- - - - -

TRANSCRIPT OF STATUS VIA TELECONFERENCE

BEFORE JUDGE DAN A. POLSTER, JUDGE OF

SAID COURT, ON FRIDAY, SEPTEMBER 10TH, 2021,

COMMENCING AT 11:30 O'CLOCK A.M.

- - - - -


Court Reporter:              GEORGE J. STAIDUHAR
                             801 W. SUPERIOR AVE.,
                             SUITE 7-184
                             CLEVELAND, OHIO 44113
                             (216) 357-7128

- - - - -

P R O C E E D I N G S

THE COURT: Okay. I will begin. This is our monthly Track Three status call in preparation for the trial, which will commence with voir dire later this month.

First, I want to wish everyone of the Jewish faith a happy and, most importantly, healthy New Year. The status report was clear. Obviously, my staff and I are working through the Daubert motions. I think we issued two opinions. We are working on the others.

We just had, I think, a very informative hearing, discussion, colloquy with Dr. Lembke, which I found very helpful in clarifying things, so we will be working on that as well.

I think the reply to the motions in limine are due by the close of business end of today, so we will be working on those. I am happy to report that we have got a very, very drawn response on the jury questionnaire.

I think I checked, we sent the questionnaire out to about 350 people, and as of a day or two ago, we had at least 320 responses. I think doing it electronically was good.

So on Monday, we will be sending to counsel all the completed questionnaires for you to review and to

1  put into four groups.
2              Group A are the jurors that both sides
3  believe should be excused, and we will excuse them.
4  Group D are the jurors that both sides agree should move
5  forward, and Groups B and C are the ones we are going to
6  examine on the 21st at noon.
7              So Group B will be those jurors that
8  Plaintiffs believe they have a good faith basis to
9  challenge for cause but Defendants believe should move
10 forward, and Group C, the flipside, those jurors the
11 Defendants believe they have a good challenge for cause,
12 and the Plaintiffs disagree.
13             And I am going to limit Group B and C to 20
14 because I want -- you know, candidly, there shouldn't be
15 a lot of disagreement.  We have got the best lawyers in
16 the country, and you know what a meritorious for-cause
17 challenge would be, and it would be one you'd expect me
18 to grant, and candidly, if the Plaintiffs would expect me
19 to grant, the Defendants should feel the same way.  There
20 shouldn't be a lot of disagreement, but there may be
21 some, and so I am going to limit it to 20.
22             So it is going to be, you know, Groups B and
23 C that we will examine one by one when we get together on
24 the 21st.  But I am mindful of everyone's time, so we
25 will limit it 20 and not only -- you know, basically,

1  these are the 50-50 ones because if they are even 60-40,
2  both sides should agree that they should either move
3  forward or not, and again, we have plenty of jurors.
4  　　　　　We only need to clear 20 jurors because
5  remember I am seating 12, and there are now four
6  Defendants.  So the Defendants collectively get four
7  peremptories, and the Plaintiffs get four.  So that's
8  twelve plus four plus four is 20.  We only have to clear
9  20 for cause.
10  　　　　　And I will be bringing in 50 at a time.  We
11  are scheduled to start Wednesday.  My recollection of
12  Track One is that we cleared -- I can't remember if it is
13  18, 19, or 20 on day one.  We only needed to two or three
14  on day two, and we got that done in a couple of hours.
15  　　　　　So I expect the same thing is going to
16  happen because the questionnaire is quite detailed, and I
17  guess -- I have allowed three days for jury selection.  I
18  am sure we will need no more than two.  If there is a
19  strong consensus to start Thursday rather than Wednesday,
20  I can do that.  We are now starting Wednesday, and I am
21  sure we will finish -- we may finish Wednesday.
22  　　　　　We'll certainly finish by Thursday morning,
23  but if everyone for your scheduling and everything you
24  would rather do it Thursday with the Friday for overflow
25  and starting Wednesday, I will do it.  I blocked the

1  three days out, so you can discuss that, and we will
2  obviously finalize it no later than 21st, but you can
3  talk about that.
4  　　　　　　　In terms of the trial, I mean, that's really
5  the only thing I have.  I know -- I think Peter
6  Weinberger's questions highlighted that there is still
7  some ongoing discovery on what we are calling the notes,
8  the notes that individual pharmacies -- when pharmacists
9  did some red-flag analysis, they would note it down in
10 the note section, and that's -- we're doing a sampling of
11 that, so that's ongoing.
12 　　　　　　　So I didn't have anything else to raise
13 other than, you know, to state what I believe -- I'm sure
14 the Plaintiffs know, but I want to make sure the pharmacy
15 Defendants know that the settlement that was reached
16 between the PEC and the AGs and the three distributors
17 and Johnson & Johnson is moving forward.
18 　　　　　　　All four Defendants notified everyone
19 Saturday that there is a critical mass of attorneys
20 general on board, and they are going forward with it,
21 which is very good news.  I think there are at least 42,
22 43 that said yes, and I expect that over the next few
23 weeks it is going to be 45, 46.
24 　　　　　　　So again, if any of the Defendants here want
25 to use that model, it is a very complicated one, but it

1  is by all accounts working and sticking.  Now, it is up
2  to signing on the subdivisions, the cities and counties,
3  but I expect that they are going to follow suit, most of
4  them.
5              So I would encourage all four Defendants
6  here to take a strong look at that and say, all right.
7  It is time to start engaging in some serious discussions,
8  and if you want me to do it, everyone knows how to reach
9  me.
10             If you want someone else to do it, that's
11 fine.  You can contact them, but no one on either side is
12 going to the try their way out of this.  I think that
13 pretty much covered what I have on my list, so is there
14 anything that anyone else wants to bring up?
15             MR. WEINBERGER:  Judge, this is Pete
16 Weinberger.
17             Judge for clarification purposes, with
18 respect to categories B and C, Plaintiffs' objection to
19 certain jurors and certain objections, when you say you
20 are going to limit it to 20, I am assuming that's 20 per
21 category.
22             THE COURT:  Yeah.  You mean that you can
23 have 20 in category B and 20 in category C.  You don't
24 have to have 20, but you can't have more than 20 in each
25 of those.

1                    Again, we have got the best lawyers in the
2     country, and you have tried lots of cases, and you all
3     know me pretty well.  You know, with -- I am not going to
4     seat someone if there is a serious question whether they
5     can be fair and impartial.
6                    One, it would be reversible.  And forget
7     that.  It just isn't fair.
8                    And I know you all have engaged very
9     high-priced jury consultants to try to determine which
10    jurors might be more favorable that would side or not.  I
11    don't care about that.
12                   My job is to screen out and not seat any
13    juror who has made up his or her mind and is not going to
14    listen with an open mind to all of the Plaintiffs'
15    witnesses and all of the Defendants' witnesses and to the
16    arguments of counsel.
17                   I don't want those jurors, and my job is the
18    purpose of the questionnaire and the purpose of the
19    questionnaire to exclude them.
20                   We have got 350 potential jurors, so anyone
21    who is at all close who looks like he or she has really
22    formed a conclusion and that either the Plaintiffs or the
23    Defendants would have a real uphill battle, all right, I
24    don't want those jurors, and neither side should want
25    them and should be out.

1    And it should be obvious from the
2 questionnaire which jurors should be out.  And so I want
3 people to approach this with that in mind, and I think if
4 you do, we shouldn't have more than 20 in bucket B and 20
5 in bucket C, but that's my approach.
6    Anything else anyone wanted to bring up?
7    I know that the Judge in West Virginia has
8 received all of the briefs and is weighing conclusion,
9 and that the trials in California and New York are
10 ongoing.
11    MR. DOLINSKY:  Your Honor, this is Eric
12 Dolinsky.  May I raise a point briefly?
13    THE COURT:  Yes, Eric.
14    MR. DOLINSKY:  Thank you, your Honor.
15    This pertains to jury instructions, and we
16 are in receipt of your instructions.  We have questions,
17 and we have objections.
18    And now is obviously not the time, but
19 we did want to alert you to the fact that we would
20 like to set a time to talk about them and be heard on
21 them.
22    We think some issues were issues we can
23 resolve through a discussion with you.  All issues we
24 probably can't, but we were wondering if we could set
25 aside time during the pretrial conference to address

1  those issues.
2  THE COURT: Well, I mean, if these are -- we
3  spent a lot of time on these instructions, and I am
4  confident I've got the best. They are legally
5  sufficient, and that they are clear. I am not looking to
6  rehash anything.
7  I mean, if you've got -- if the Defendants
8  think that something I've got in there is, A, legally
9  wrong and/or, B, unclear, likely to cause confusion, you
10 ought to talk to the Plaintiff about it, and the same way
11 from the Plaintiffs.
12 And if you can work something out and agree
13 on it, you know, I am almost certainly going follow it.
14 I mean, I would be happy, Eric, to have a discussion, but
15 it would be more helpful if I know in advance what it is
16 you are raising and what -- you know, that you tried to
17 resolve it and if it is something new.
18 I read all the arguments in the cases, and
19 we studied it, and I am satisfied we have the best that I
20 can do. So how are you proposing to do this?
21 MR. DOLINSKY: So, your Honor, I think
22 that's a fair approach. I think there is different
23 buckets of issues. Some are wording issues, and I think
24 that those are ones that I would propose to follow the
25 approach leading up to the pretrial and to communicate

1    with Plaintiffs and see if we can achieve some resolution
2    on those.  I don't think they are necessarily
3    controversial.
4            THE COURT:  My job is to be clear, and if
5    you think there is something ambiguous and the jurors
6    will be confused, I want to help there.
7            MR. DOLINSKY:  I think that's one bucket,
8    and we would endeavor to work with Plaintiffs on that.  I
9    think there is another bucket, and this is the second of
10   three, we just have questions, and I don't know if this
11   is fairly characterized as new or old, but we noticed
12   in your instructions that there isn't an instruction on
13   the requirements of the CSA.  We think there should be
14   one.
15           And by CSA, I mean both the federal and the
16   state analogue.  But we want to know or if the Court has
17   made a decision that there won't be one.  We just -- we
18   are just a little in the dark on that.  We hope to get
19   your guidance.
20           THE COURT:  From memory, I don't recall if
21   the parties had suggested this.  If both suggested it, it
22   would be in there.  One side said it should be in there
23   and the other side said it shouldn't -- I don't recall if
24   there was a disagreement.
25           I think maybe there should be some, telling

1    the jurors what the CSA says, and if there is an
2    agreement on what the requirement is for use, it seems to
3    me there should be an instruction.
4         I don't want to have witnesses testifying to
5    what the law is.  Do the Plaintiffs agree that we should
6    have some instruction on what CSA says?
7         MR. COHEN:  Judge, this is David.  I have to
8    step in here just to observe that there is a fairly and
9    actually lengthy history on this question.
10        I actually sent out an e-mail to the parties
11   asking if they believe that there were any statutes or
12   regulations that should be quoted as a part of the jury
13   instructions.
14        And the short version is that after
15   everybody weighed in on that, it is my recollection --
16   and I can go back and talk to Scott about it, too -- that
17   it was ultimately agreed that there would not be any
18   quotation of statute or regulation.  I am happy to have
19   that changed if the parties agree, but that's where that
20   ended up.
21        THE COURT:  All right. Well, that's sort of
22   what I thought, that there was an agreement not to have
23   it.  But again, I have no problem with an instruction on
24   saying, you know, there is something called the
25   Controlled Substances -- Federal Controlled Substances

1  Act, and it imposes, you know, the following obligations
2  on pharmacies, one, two, three.
3  So I would like the parties to discuss that,
4  and if you have got -- if you agree on something, I will
5  include it.
6  MR. WEINBERGER: Thank you, your Honor. We
7  will follow that process. This is Pete. I just have
8  to --
9  THE COURT: Candidly -- yes, Peter.
10  MR. WEINBERGER: I am intrigued by this
11  issue being brought up at this point in time because we
12  actually, as I think the Court is aware, we were unable
13  to come to in agreement on stipulations, and when we were
14  communicating back and forth on stipulations, one of the
15  stipulations or areas of stipulation that the Plaintiffs
16  proposed was to go through the CSA and the Ohio
17  regulations and agree as to what they provided. But the
18  Defendants did not agree to that. So -- but we are happy
19  to have the conversation.
20  THE COURT: Well, look. All right. I am
21  glad, Eric, you raised this. It seems to me that a
22  stipulation is a good way to do it. I have stipulations
23  in all my trials, everything not in dispute.
24  Everyone knows we have a federal and a state
25  law and imposes obligations on pharmacies and pharmacists

1  or, at least, on pharmacists.  I know that the Defendants
2  have a belief that they had maintained that the CSA
3  doesn't impose a responsibility on corporate pharmacists
4  or credit corporate responsibility on a corporation that
5  owns and runs individual pharmacies.
6          But everyone agrees that there are
7  obligations on individual pharmacists.  There is no
8  reason why the parties can't put that in by stipulation.
9  I will read it to the jury.  I don't want witnesses to
10 testify what federal law is.  It is a waste of time and
11 effort.
12         It is not for everyone to tell the jury what
13 the law is.  It is really for me regarding stipulations,
14 and then the stipulation can be read again and be part of
15 the jury instructions.  That should be for the parties to
16 work on.
17         MR. WEINBERGER:  Thank you, your Honor.
18         THE COURT:  Okay.  And then, presumably,
19 there was a bucket C, Eric.  You said A, B, and there was
20 a third one.
21         MR. DOLINSKY:  There was, your Honor.  I
22 forgot for a second, but I pulled it back.  We do have
23 objections -- somewhat of objections.  I think you've
24 seen them in the submissions that we had put in.
25         Those go to issues like how to define

1  intent, the causation standard and what not.  Our
2  understanding is that you've ruled on them.  To provide
3  notice to you, I believe the pharmacies, just to make
4  sure we have an appropriate record on the docket of our
5  objections, we will put in objections to that effect.
6              THE COURT:  I think that's right.  I think
7  you -- at some point, you've got to have on the record in
8  writing or orally before I give the instructions to
9  preserve your objection, and you can file that anytime
10 you want, and I will make sure, you know, I will look at
11 it.  All right.  I am going to look at it.
12             You know, I keep saying the instructions,
13 and we will keep looking at them up until the end of the
14 trial.  I have changed proposed instructions based on the
15 evidence.  We always have to look at it in the context of
16 what evidence comes in, and I think, ultimately, if there
17 is an objection, I will look at it.  And you can file
18 that anytime you want, and I will look at it.
19             MR. DOLINSKY:  Thank you very much.
20             THE COURT:  And make sure that it is -- you
21 know, you should remind me because I think under the law
22 you have to raise the new or, at least, note it at the
23 end of the case before the instructions are given to give
24 the Court one more opportunity to change it.
25             But you don't have to wait until the end to

1  file it. If you think what I have got is legally
2  incorrect, you should file something.
3  MR. DOLINSKY: Okay. Thank you, your Honor.
4  THE COURT: The wording, you know, if either
5  side thinks that the wording, something is really unclear
6  or confusing, let's change it, get it clear.
7  My objective is to have as little legalese
8  as possible so lay people can understand these
9  instructions, and then, on the stipulations, you know,
10 what the law is. We should be able to work that out.
11 Okay.
12 MR. WEINBERGER: Thank you, your Honor.
13 MR. DOLINSKY: All right. I appreciate
14 that, your Honor.
15 THE COURT: All right. Anything else that
16 anyone can think of?
17 (No response.)
18 THE COURT: All right. I don't think there
19 is any necessity to have another one of these phone
20 conferences when we are going to be getting together next
21 week to go over the juror questionnaires and obviously
22 getting together the following week to pick the jury.
23 So I don't think we need any -- to schedule
24 a phone conference. If things come up, we will be able
25 to have those actual meetings unless someone disagrees

1 with that.
2 (No response.)
3 THE COURT: Okay. Thanks everyone, and stay
4 safe.
5 MR. WEINBERGER: Thank you, your Honor.
6 (Status hearing concluded at 11:55 p.m.)
7 - - - - -
8
9 C E R T I F I C A T E
10 I, George J. Staiduhar, Official Court
11 Reporter in and for the United States District Court,
12 for the Northern District of Ohio, Eastern Division,
13 do hereby certify that the foregoing is a true
14 and correct transcript of the proceedings herein.
15
16
17
18 s/George J. Staiduhar
George J. Staiduhar,
19 Official Court Reporter
20 U.S. District Court
801 W. Superior Ave., Suite 7-184
21 Cleveland, Ohio 44113
(216) 357-7128
22
23
24
25