UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) ) ) ) ) ) ) ) | MDL 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster<br><br>**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF CALEB ALEXANDER** |
| THIS DOCUMENT RELATES TO: |  |  |
| *Track Three Cases* |  |  |

Before the Court is Defendants' Motion to Exclude the Opinions Offered by Dr. Caleb Alexander. Plaintiffs filed a response, and Defendants filed a reply. For the reasons stated below, the Motion is **DENIED**.

### Legal Standard

The Court incorporates by reference the applicable *Daubert* legal standards set forth in its *Track One Order Denying Motion to Exclude Rosenthal* (Doc. #: 2495 at 1-10).[1]

### Analysis

The *Track Three* claims will be tried in two phases. In Phase One, a jury will decide: (1) whether a public nuisance exists; and (2) if so, whether any Defendant was a substantial factor in causing it. *T3 Order re Apportionability and Apportionment* at 3-4 (Doc. #: 3479). If the Phase

---

[1] *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 3934597, at *1-5 (N.D. Ohio Aug. 20, 2019).

One jury finds in favor of Plaintiffs, the Court, in Phase Two, will then determine remedies, including: (1) whether and how the nuisance can be abated; (2) whether the costs of abatement can be apportioned among defendants; and (3) if so, what the apportionment should be. *Id.* at 4.

Defendants seek to exclude the opinions of Dr. Caleb Alexander as irrelevant to issues to be resolved in the Phase One trial, *i.e.* public nuisance liability. Additionally, Defendants ask the Court to exclude Appendix F to Alexander's Report, arguing it lacks a reliable foundation. For the reasons stated below, the Court denies both requests.

Dr. Caleb Alexander is a practicing physician and Professor of Epidemiology and Medicine at John Hopkins Bloomberg School of Public Health. T3 Alexander Report at 3. As a pharmacoepidemiologist,[2] Alexander studies the uses and effects of drugs in well-defined populations. *Id.* Over the past decade, he has devoted much of his work to studying many facets of the opioid epidemic, including evidence-based solutions thereto. *Id.* at 4.

The bulk of Alexander's *Track Three* opinions address the equitable remedy of abatement. *See id.* at 14-69.[3] Additionally, Alexander opines about, *inter alia*, the existence of an opioid epidemic in the *Track Three* Counties. *Id.* at 8-10. The latter opinions address various indicia of the epidemic, including: (1) the increase in volume of opioids prescribed nationally between 1992 and 2010, along with a corresponding increase in opioid-related addiction and harms, including overdose deaths; (2) a clear link between non-medical use of prescription opioids and subsequent

---

[2] Alexander describes pharmacoepidemiology as "a bridge discipline that combines insights and tools from clinical medicine, pharmacology, and epidemiology to generate fundamental new knowledge regarding the utilization, safety, and effectiveness of prescription drugs." T3 Alexander Report at 3.

[3] Alexander offers a wide array of opinions regarding ways to address the Opioid epidemic in the *Track Three* Counties, including: (1) reducing the oversupply of prescription opioids and improving safe opioid use, T3 Alexander Report at 14-30; (2) identifying and treating individuals with opioid use disorder, *id.* at 31-46; (3) enhancing public safety and community reintegration of individuals with opioid addition, *id.* at 47-56; and (4) customizing abatement remedies for specific sub-populations of the Track Three Counties (including pregnant women, new mothers, infants, families, children, young adults, and the homeless), *id.* at 57-67. Alexander also discusses ways to measure the success of abatement efforts and the estimated impact of his proposed abatement remedies. *Id.* at 68-69.

2

heroin or illicit fentanyl use and corresponding overdose death rates; (3) the number of opioid pills per patient during various time frames in the *Track Three* Counties; (4) the number of opioid-related drug overdose deaths in the *Track Three* Counties; and (5) the opioid epidemic's impact on families and children in the *Track Three* Counties. *Id.* at 8-9.

### A.     Relevance to Phase One of the Trial

Defendants seek to exclude Alexander's opinions from the Phase One trial, arguing they "primarily" relate to the remedy of abatement and, therefore, are irrelevant to the jury's determination of public nuisance liability.[4] Motion at 1. The Court notes Defendants do not expressly delineate which opinions they seek to exclude. They assert Alexander's opinions are "almost entirely" about abatement and seek exclusion of "all of Alexander's abatement opinions" and "All Remedies-Related Testimony." Motion at 1; Reply at 1-2.

In response, Plaintiffs concede that evidence regarding abatement is irrelevant to Phase One and state they will not offer remedy-related testimony by Alexander during this phase. Response at 3. Plaintiffs assert, however, that they may call Alexander to testify regarding the "existence and impact of an opioid epidemic nationally and in Lake and Trumbull Counties," which they contend "are highly relevant and would be helpful to the Court in understanding the scope of harms caused by the oversupply of prescription opioids into the [*Track Three*] jurisdictions." *Id.* at 2.

In reply, Defendants assert Plaintiffs' response shows Plaintiffs *do* intend to offer remedies-related testimony by Alexander in Phase One. Reply at 2-3. Specifically, Defendants argue Alexander's opinions about the "scope" or "impact" of the opioid crisis or an "oversupply

---

[4] Defendants do not question Alexander's expertise on these topics; rather, Defendants challenge their relevancy.

3

of prescriptions opioids" relate to a "backward-looking damages-type question" that would be irrelevant in Phase One and merely serve to "inflame" the jury. *Id.* at 3.

Contrary to Defendants' assertion, evidence regarding the existence and impact of the opioid epidemic in the *Track Three* Counties, along with the scope of harms allegedly caused by Defendants' conduct, is directly relevant to the jury's public nuisance liability determination in Phase One – namely, whether Defendants' intentional and/or unlawful conduct proximately caused an unreasonable interference with public health and public safety rights in the *Track Three* Counties. *See, e.g. T1 SJ Order re Public Nuisance*, *In re Nat'l Prescription Opiate Litig.*, 406 F. Supp.3d 672, 674-76 (N.D. Ohio Aug. 20, 2019) (Doc. #: 2578 at 3-7).

More specifically, to determine whether a Defendant's conduct substantially contributed to causing a public nuisance, the jury will necessarily need to consider: (1) whether the Defendant engaged in wrongful or unlawful conduct that was a substantial factor in causing an "oversupply of prescription opioids" in the *Track Three* Counties: (2) whether this oversupply of controlled substances caused Plaintiffs' alleged harm; and (3) whether the alleged harm amounts to an unreasonable interference with public health and public safety interests sufficient to constitute a public nuisance under Ohio law. *See id.*

Resolution of these issues in the Phase One trial will certainly require evidence regarding the existence *vel non* of an opioid epidemic, and the scope and impact of harms allegedly caused by Defendants' conduct. Indeed, information about the scope and scale of the epidemic is essential to the jury's determination of whether the alleged interference with a public right was *unreasonable*. The Court therefore declines to exclude Alexander's opinions on these topics. Further, to the extent Defendants ask the Court to exclude Alexander's opinions regarding abatement, the Court denies the request as moot in light of Plaintiffs' representation that they will

4

not offer his remedy-related testimony during this phase. If Plaintiffs seek to introduce irrelevant opinion testimony at trial, Defendants may object at that time.

Accordingly, the Court denies Defendants' motion to exclude Alexander's opinions from the Phase One trial.

### B. Appendix F

Defendants seek to exclude Appendix F to Alexander's Report, which discusses "potential indicators of high-risk opioid distribution."[5] T3 Alexander Report, Appx. F. Defendants argue Alexander derived this list of potential indicators solely from the opinions of another expert, Carmen Catizone, whom Defendants seek to exclude by separate motion. Motion at 1-2. Defendants assert that, if the Court grants their motion to exclude Catizone, it must also exclude Appendix F, because its list of potential indicators depends entirely on Catizone's opinions. *Id.*

Plaintiffs dispute whether the contents of Appendix F are premised solely on Catizone's opinions. Response at 3-4. But the Court need not decide this issue, because it recently entered an order denying this aspect of Defendants' motion to exclude Catizone. *See* Doc. #: 3947(concluding Catizone's methodology is reliable). In light of this ruling, Defendants' motion to exclude Alexander's opinions in Appendix F is denied as moot.

---

[5] Appendix F discusses "potential indicators of high-risk opioid distribution," including, *inter alia*: (1) frequency, dose, and duration; (2) concomitant prescriptions; (3) prescriber activity; (4) number of pharmacies used; (5) distance traveled; (6) early refills; and (7) method of payment. *See* T3 Alexander Report, Appx. F. The Appendix also provides a chart with examples of selected indicators. For instance, for "Concomitant Prescriptions," the chart lists two examples: "Combinations of opioids, benzodiazepines or other sedatives, and muscle relaxants from one or more provider" and "Concomitant fills of short- or long-acting opioid prescription." *Id.* (Table 1). Also included is a paragraph entitled "Role of pharmacies and pharmacists in addressing the opioid epidemic," which appears to primarily discuss issues of abatement. T3 Alexander Report, Appx. F ¶ 10.

## Conclusion

To the extent Defendants seek to exclude Alexander's non-abatement opinions in the Phase One trial, including his opinions regarding the existence of an opioid epidemic and the scope and impact of harms allegedly caused by Defendants' conduct, Defendants' Motion is **DENIED**.

To the extent Defendants seek to exclude Alexander's abatement opinions in the Phase One trial, because Plaintiffs do not intend to question Alexander about abatement in this phase, Defendants' Motion is **DENIED as moot**. However, if Plaintiffs attempt to question Alexander on topics irrelevant to Phase One, the Court will sustain Defendants' objections at trial.

Further, Defendants' request to exclude Appendix F of Alexander's Report is **DENIED as moot**.

    **IT IS SO ORDERED.**

      /s/ *Dan Aaron Polster  September 13, 2021*
      **DAN AARON POLSTER**
      **UNITED STATES DISTRICT JUDGE**