UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>**This document relates to**:<br><br>*Track Three Cases* | MDL No. 2804<br>Case No. 17-md-2804<br>Judge Dan Aaron Polster |

**MOTION TO STRIKE ERRATA TO**
**JAMES RAFALSKI'S DEPOSITION TESTIMONY**

# I. INTRODUCTION

During his two-day deposition, Plaintiffs' proposed DEA expert, James Rafalski, testified *at least three times* without any hesitation or ambiguity that he had *no opinion* on Giant Eagle's distribution activities after 2016. Indeed, he specifically stated that while his expert report had "some information" about Giant Eagle's post-2016 distribution activities at its GERX facility, he "did not have enough information to make a definitive opinion on [Giant Eagle's] conduct post 2016" and, therefore, *was not offering any opinion* about Giant Eagle's distribution activities at GERX.

Unhappy about his sworn deposition testimony, Mr. Rafalski now seeks to use an "Errata" to completely reverse his prior testimony and offer an opinion about Giant Eagle that is nowhere in his expert report. Ex. 1 (Errata to Rafalski *Track Three*, Vol. I Deposition). Specifically, via the "Errata," Mr. Rafalski now claims that he actually *does* have an opinion about Giant Eagle's distribution activities well beyond 2016—as he now tries to put it, through "at least 2017" and "as late as 2018." As a basis for his new opinion, he cites the exact same "information" in his expert report that he said *was not sufficient* for him to form an opinion. Mr. Rafalski offers no explanation for his 180º—the "reasons" section of the "Errata" form is blank.

The Court should strike Mr. Rafalski's "Errata" for at least three reasons: (1) it constitutes a flagrant abuse of Rule 30(e), which does *not* allow a witness to alter what he said under oath, or otherwise turn depositions into take-home examinations; (2) Mr. Rafalski fails to provide any reason whatsoever for his changes, thus violating Rule 30(e)'s requirement that a witness must specifically articulate the reasons for the changes; and (3) Mr. Rafalski's new testimony exceeds the scope of his expert report and, therefore, also violates Rules 26(a)(2)(B)(i) and 37(c).[1]

---

[1] Giant Eagle first raised this issue in its Reply Brief in Support of Summary Judgment (*see* Reply at 20-23; Notice available at Doc. #3897) after Plaintiffs cited Mr. Rafalski's "Errata" eight (8) times in their Opposition to Giant

## II.     BACKGROUND

One of the many deficiencies in Mr. Rafalski's *Track Three* expert report is that it does not state with any clarity the time frame for which Mr. Rafalski has an opinion about the effectiveness of Giant Eagle's SOM system and due diligence—rather, the report simply describes various components of Giant Eagle's SOM systems and some of the changes made to them over time. *See* Rafalski *Track Three* Report at 147-58 (*available* at Doc. #3852-13).[2] Thus, one of Giant Eagle's critical objectives during Mr. Rafalski's two-day *Track Three* deposition was to ascertain, <u>with specificity</u>, the precise time period for which Mr. Rafalski was offering his opinion(s) about Giant Eagle. The timing issue is critical because Giant Eagle (a) stopped distributing any products at issue from its HBC facility in September 2014; (b) did not distribute any products at issue from October 2014 through February 2016; and (c) then began distributing Schedule II-V controlled substances to Giant Eagle's in-store pharmacies in March 2016 from a new and different facility (GERX) pursuant to a newly granted DEA Schedule II license.

On day one of Mr. Rafalski's *Track Three* deposition (June 10, 2021), Giant Eagle's counsel did not hide the ball, and specifically asked Mr. Rafalski to clarify the time frame for which he was offering opinions about Giant Eagle's systems:

> Q.   Now, your opinion is that Giant Eagle violated the DEA's SOM regulation, correct?
>
> A.   Yes, sir.
>
> Q.   And for what period of time do you claim that Giant Eagle violated the DEA SOM regulation?

---

Eagle's Motion for Summary Judgment, confirming that the so-called "Errata" is deliberately drafted by Plaintiffs' counsel to be a cornerstone of Plaintiffs' affirmative case and not just a correction or clarification to the transcript of Mr. Rafalski's deposition. *See* Opp. at 36, n.102 (citing errata twice); Opp. at 37, n.103; Opp. at 39-40, n.106 (cited twice); Opp. at 40, n.107 (cited three times) (Notice available at Doc. #3877). The Court denied Giant Eagle's Motion for Summary Judgment but did not specifically address the appropriateness of Mr. Rafalski's "Errata." Doc. #3913.

[2] Mr. Rafalski's expert report in *Track One* ignored Giant Eagle completely. Doc. #1884-3.

2

>    A.   **All the way through to 2016. And I don't know further than 2016 because I didn't do an in-depth review post 2016.** I know that they had some issues that brought them -- looked like they appeared to be coming into compliance. But definitely from the time frame of 2000 -- prior to 2009 all the way to 2016.
>
>    Q.   Okay. I am -- yeah. It wasn't clear to me when I read your report what your time frame is for Giant Eagle's purported noncompliance. So you are saying, you are clarifying that Giant Eagle's purported noncompliance only was from 2009 when they first started distributing Schedule 3 drugs, you say, through 2016? …
>
>    A.   Well, they -- so there was two facilities. The first facilities stopped distributing this 2014.
>
>    Q.   Right. When there was a reclassification from hydrocodone from Schedule 3 to 2, correct?
>
>    A.   Correct. And then they did not self-distribute for a couple of years, and then they started back self-distributing in 2016. So my opinion definitely goes from 2009 to 2014 and then when they started to self-distribute again from the GERX DC, I have some information contained in my report, **but I did not have enough information to make a definitive opinion on their conduct post 2016.**

*See* Ex. 2 (Rafalski Tr. Vol. I at 100:10-101:25 (emphasis added) (full transcript at Doc. #3859-27).[3]  Given that Giant Eagle ceased all distribution of opioids in September 2014 when the DEA reclassified HCPs from Schedule III to Schedule II, counsel for Giant Eagle next asked Mr. Rafalski how he could opine that Giant Eagle's SOMS was unlawful or ineffective after that date if Giant Eagle was not actually distributing the drugs at issue. Ex. 2 (Rafalski Tr. at 102).  Mr.

---

[3] Under the Court's recent order granting in part Giant Eagle's Motion to Exclude certain testimony from Mr. Rafalski as to what the law requires and whether Giant Eagle's conduct violated the law, Mr. Rafalski's opinion that Giant Eagle violated the SOMS regulation (or any other law) is inadmissible regardless of the time frame.  *See* Doc. #3929 at 17.  However, to the extent that Mr. Rafalski intends to offer testimony about post-2016 conduct that otherwise would be within the scope of the Court's order—i.e., on "whether particular characteristics of [Giant Eagle's] SOMS and due diligence procedures are effective in preventing diversion" (Doc. #3929 at 8)—he should be precluded from doing so for the reasons stated herein.

3

Rafalski responded unequivocally that he had "**no opinion post 2014 on the SOMs issue**." Ex. 2 (Rafalski Tr. at 102:1-103:22 (emphasis added)).[4]

With clarity about the time frame for which Mr. Rafalski was—and was not—offering an opinion, Giant Eagle's counsel understandably decided not to pursue questions about any post-2016 conduct.[5]  Now, however, via an "Errata," Plaintiffs are attempting to substantively and dramatically change the date range of Mr. Rafalski's opinions to "at least 2017" (and apparently until some still unknown time thereafter), notwithstanding the fact that there is no such opinion in Mr. Rafalski's report and Mr. Rafalski disclaimed having a post-2016 opinion three times during his deposition.  Specifically, the "Errata" purports to add the following to Mr. Rafalski's deposition:

> 100:16-22 and 101:14-25: Each reference to "2016" is replaced with "at least 2017." Additionally, as is addressed in my report, despite adjustments made to Giant Eagle's SOMs policies in 2017, Giant Eagle's SOM system did not result in any reported suspicious orders to the DEA as late as 2018 from CT3 and only resulted in 2 reported suspicious orders nationwide. See pages 156-157. Through at least

---

[4] For the period of September 2014 through March 2016 when Giant Eagle was not operating a SOM system with respect to any relevant drug, Mr. Rafalski conceded that Giant Eagle could not have been violating the SOM regulation when it was not distributing; however, he testified that he "believes" there is a "maintenance of effective controls issue" with respect to McKesson's distribution of controlled substances at issue to Giant Eagle's pharmacies. Ex. 2 (Rafalski Tr. at 102:18-103:12) ("I believe the period between 2014 and 2016, there's a maintenance of effective controls issue with the distribution from I believe it was McKesson that distributed to them. But in regards -- if we are just talking specifically SOMs, I do not have an opinion past 2014 on the SOMs issue. … Q. And you are saying that, as a customer, Giant Eagle had an obligation to have a SOMs system? … A. I don't think the regulation requires that."). As this Court has already held, however, there is no statutory basis for the contention that the "failure to maintain effective controls" regulation at 21 C.F.R. § 1301.71(a) applies to Giant Eagle as a *customer*—*i.e.*, as a pharmacy ordering product from third parties and then dispensing it to customers with a prescription. *See* Doc. #3403 at 22 (describing pharmacies' obligations to "check for and conclusively resolve red flags of possible diversion prior to *dispensing* those substances," which applies only *after* the pharmacy has placed the order with a third party, obtains possession of the controlled substance, and is presented with a prescription.). Likewise, Section 1301.71(a) does not impose any obligation on Giant Eagle as a *distributor* to monitor the orders of its pharmacies from third parties. Section 1301.71(a) requires that distributors substantially comply with the security requirements in 1301.72 through 1301.76, none of which impose anything resembling an obligation for distributors to monitor for suspicious orders placed by affiliated pharmacies with third-party distributors.

[5] Notably, the "Errata" does not purport to change the testimony on page 102 of Mr. Rafalski's transcript that he "has no opinion post 2014 on the SOMs issue." Ex. 2 (Rafalski Tr. at 102:18-24).  This testimony still stands.

4

>> 2017, the system did not flag orders above the internal thresholds until after the orders were shipped. See page 157-158.

*See* Exhibit 1. For the reasons stated below, the Court should strike Mr. Rafalski's "Errata" and preclude him from offering an opinion on Giant Eagle's distribution activities at GERX starting when that facility opened in March 2016.

## III. ARGUMENT

### A. Mr. Rafalski is Altering What He Said Under Oath Via the "Errata"

Fed. R. Civ. P. 30(e) precludes a witness from using the errata process to alter what he said under oath. It provides:

> **(e) Review by the Witness; Changes.**
>
> **(1)** *Review; Statement of Changes*. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
>> **(A)** to review the transcript or recording; and
>>
>> **(B)** if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

F.R.C.P. 30(e). The "obvious" purpose of Rule 30(e) is to correct substantive errors in the transcript (such as where the reporter records an answer as "yes," but the witness said "no") or formal errors (such as misspellings). *EEOC v. Skanska USA Bldg., Inc.*, 278 F.R.D. 407, 411 (W.D. Tenn. 2012) (quoting *Greenway v. International Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)). However, "[t]he Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06-cv-581, 2008 U.S. Dist. LEXIS 12307, at *11 (S.D. Ohio Feb. 7, 2008); *see also Trout v. First Energy*

5

*Generation Corp.*, 339 Fed. Appx. 560, 565 (6th Cir. 2009) (favorably citing the standard set forth in *Tuttle*).

Put simply, and contrary to Plaintiffs' efforts in this case, an errata does not give a witness carte blanche to change or add to his testimony. As one District Court explained:

> It makes no sense to allow a deponent to change sworn testimony merely because after the deposition he wishes that he had said something other than what was said. Indeed, to adopt such an approach would be to set at naught the efficacy of the deposition process.
>
> Nor can the errata process permitted by Rule 30(e) be used to allow post-deposition revision of testimony to conform a witness's testimony to enhance a party's case. That too would undermine the purpose for which depositions are allowed under the federal rule.
>
> …
>
> One of the main purposes of the discovery rules, and the deposition rules in particular, is to elicit the facts before the trial and to memorialize witness testimony before the recollection of events fade or "it has been altered by . . . helpful suggestions of lawyers." *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993). Those purposes are disserved by allowing deponents to "answer questions [at a deposition] with no thought at all" and later to craft answers that better serve the deponent's cause. Indeed, to allow such conduct makes a mockery of the serious and important role that depositions play in the litigation process.

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 277 F.R.D. 286, 297-98 (E.D. Va. 2011) (cleaned up) (cited favorably in this Circuit by *Skanska*, 278 F.R.D. at 411).

Here, Mr. Rafalski abused the errata process to expand the scope of his expert report and change the testimony he provided under oath during his deposition. He was adamant, *three times*, that he was not offering an opinion on Giant Eagle after it opened the GERX facility in 2016. Allowing him to change his testimony to make it look like he *actually* has offered, and will offer at trial, an opinion about GERX into 2018 violates Rule 30(e) and completely undermines the purpose of a pre-trial deposition to probe a witness's complete understanding of the facts and/or

6

opinion. Allowing Mr. Rafalski to change his deposition testimony also provides Plaintiffs an unfair advantage (and prejudices Giant Eagle) because Giant Eagle never had the opportunity to cross-examine Mr. Rafalski on this new opinion—which he expressly disclaimed having at his deposition—before trial. *Kolon Indus.*, 277 F.R.D. at 299 (granting motion to strike errata where, among other problems, there was no "showing that there was a transcription or typographical errors by the court reporter" and "the rule does not allow deponents to augment deposition testimony").

Mr. Rafalski's testimonial about-face has serious consequences for trial. By expanding the scope of his opinion from pre-2016 (and pre-2014 with respect to the SOMS issue) to some indeterminate point in the future, Mr. Rafalski puts at issue several more *years* of conduct, thereby implicating different distribution facilities, exhibits, witnesses, and defenses. Giant Eagle is now in the position of having to prepare for Mr. Rafalski to offer post-2016 opinions at trial without knowing the basis or scope of those opinions.

Lest there be any doubt that Mr. Rafalski's "Errata" is the exact type of lawyerly re-writing of a witness's testimony that courts routinely prohibit, his "Errata" is littered with "*see*" citations, which are appropriate for legal briefs, like this one, and not oral testimony. *See, e.g.*, Ex. 1 (proposing as an errata: "301:4-7 See also Thomas Prevoznik testimony. See page 19 of my Report.").[6] It is completely foreign to Rule 30 for a deponent to circle back after his oral testimony to fill in citations in support of existing or changed testimony. Fed. R. Civ. P. 30(c)(1) ("The examination and cross-examination of a deponent proceed ***as they would at trial*** …" where, of course, witnesses do not get to offer unchallengeable "*see*" citations during their oral testimony)

---

[6] The "Errata's" attempt to incorporate *all* of Mr. Prevoznik's deposition is particularly inappropriate, because it fosters confusion, not clarity. Mr. Prevoznik's *Track One* deposition transcript (occurring over three days) is 1,269 pages and discusses sixty (60) exhibits. It is impossible to know what Mr. Rafalski is referring to and, because he was never subject to cross-examination on this testimony, it is anyone's guess what he will attempt to rely upon from Mr. Prevoznik's 1,269-page deposition at trial.

7

(emphasis added); *Wyeth v. Lupin LTD*, 252 F.R.D. 295, 297 (D. Md. 2008) (striking errata sheet that "did not clarify but materially change[d] the answers" and "represent[ed] lawyerly fixing of potentially problematic testimony" for the deponent because allowing such changes "would encourage and intensify lawyer wordsmithing and parsing" as well as "undermine … and unnecessarily protract discovery.").

### B. The "Errata" Fails to Provide Any *Reason* for the Changes, Which is an Independent Ground for Striking the "Errata" Entirely

Even if the Court were inclined to allow Mr. Rafalski to fundamentally alter his core opinion, the Court must strike the "Errata" for an additional independent reason: it does not comply with Rule 30(e)'s requirement that a deponent making changes sign a statement listing "***the reasons for making them***." Fed. R. Civ. P. 30(e)(1)(B). Mr. Rafalski does not provide *any* reason for the changes—indeed, the errata form is entirely blank in the "reasons" column. Thus, the only conceivable explanation for the "Errata" is that Mr. Rafalski gave testimony that Plaintiffs' counsel did not like, so they changed it. This is not an acceptable basis for an errata. Mr. Rafalski's failure to meet this most basic requirement of Rule 30—explaining the reasons for his changes—is itself an additional and sufficient basis for striking the "Errata" entirely. *EBC, Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 266 (3d Cir. 2010) (holding that if party or deponent proffering changes in form or substance of deposition transcript fails to state reasons for changes, reviewing court may appropriately strike errata sheet).

#### 1. The Court Should Not Afford Plaintiffs Any Leeway from the Requirements of Rule 30(e)

To the extent the Court retains any discretion to overlook Plaintiffs' violation of Rule 30(e) and excuse their gross abuse of the errata process, the Court should not exercise any such discretion for at least four additional reasons. <u>First</u>, Mr. Rafalski is a highly compensated serial expert witness in opioid cases. Mr. Rafalski has testified so many times under oath in so many

8

jurisdictions involving so many SOM systems that he needed a summary "cheat sheet" throughout his deposition to help make sure his answers were right.[7]  With all this practice, Mr. Rafalski knew exactly the types of questions that he was going to be asked and it was his responsibility to answer them fully and completely at the time he is asked.  For this reason alone, Mr. Rafalski is not entitled to a mulligan.

Second, Plaintiffs had the opportunity to question Mr. Rafalski at his deposition about the exact issues raised in the "Errata," including but not limited to the time frame of his opinions about Giant Eagle.  Had they done so, and had Mr. Rafalski contradicted his earlier testimony, Giant Eagle's counsel could then have probed this issue during a re-cross in real time.  But Plaintiffs did not ask him a single question involving GERX despite having a full overnight to prepare.  Plaintiffs' failure to address this issue during the deposition precludes them from changing the testimony via an "Errata."  See Tuttle, 2008 U.S. Dist. LEXIS 12307, at *12 (striking errata where "defense counsel asked the question in several different ways and, Plaintiff's counsel was given the opportunity to rehabilitate Plaintiff and he still testified that he did not intend to pursue emotional damages.").[8]

---

[7] Exhibit 3 (Walmart-Ex. 1 to Rafalski Track Three, Vol. I Deposition (June 10, 2021)).  On the Giant Eagle page of Mr. Rafalski's cheat sheet, his notes, at most, suggest that he is opining about alleged deficiencies in Giant Eagle's SOMS up until 2014, and not beyond.  Indeed, his cheat sheet is broken up into two parts: 1) bullet points suggesting flaws from November 2009 through 2014; and 2) bullet points showing that GERX implemented new policies and with no indication of any inadequacy or wrongdoing.

[8] Notably, Mr. Rafalski also changed his testimony on other issues between days one and two of his deposition.  For example, on day one, Mr. Rafalski testified that he would uncover violations during "at least" fifty percent (50%) of the inspections he performed as a DEA agent.  Ex. 2 (Rafalski Tr. at 85:24-86:4).  Mr. Rafalski had offered the same testimony in opioids litigation in New York.  This testimony was particularly favorable for Giant Eagle, because the DEA never found a violation during any of its inspections between 2009 and 2017 despite—according to Mr. Rafalski—there being at least a coin-flip chance that each inspection would turn up a violation.  However, the next day, Mr. Rafalski claimed that he changed his mind while having dinner alone, so he tried to reframe the fifty percent number as just a "guess" and said that he would not stand by it.  Ex. 2 (Rafalski Tr. at 446-448).  Of course, Mr. Rafalski never retracted his testimony in the New York litigation.  Id.

Third, if Mr. Rafalski's "Errata" is allowed to stand—thus allowing him to pretend that he said precisely the opposite of what he exactly said at his deposition—it will seriously prejudice Giant Eagle's defense.  Giant Eagle will need to spend precious trial time addressing the impropriety of the "Errata" on cross-examination.[9]  And, to the extent the Court allows Mr. Rafalski to testify about Giant Eagle's distribution activities at GERX (which the Court should not do), then Giant Eagle will need to spend even more trial time addressing his post-2016 opinions, all without the benefit of its right to previous cross-examination on this topic.

Fourth and finally, failing to strike the "Errata" will also likely lead to unnecessary confusion for the jury, which will need to parse out the differences between multiple volumes of Mr. Rafalski's deposition transcripts, his lawyer-crafted "Errata," and his trial testimony.  The Court should protect the jury and these proceedings from the needless additional confusion and complexity certain to result from Mr. Rafalski's substantively and procedurally improper "Errata." *Kolon Indus.*, 277 F.R.D. at 298 ("allowing the 'make any changes you want' approach would lead to substantial additional litigation expenses" and would result in "longer trials" and "significant confusion").

### C. Mr. Rafalski's "Errata" Should be Stricken Pursuant to Rule 37(c) Because It Offers an Opinion That Exceeds the Scope of His Expert Report

Mr. Rafalski's "Errata" should also be stricken because the new testimony contained therein exceeds the scope of his expert report and, therefore, is not permissible at trial.  Rule 26(a)(2)(B)(i) requires that an expert report contain "a ***complete*** statement of all opinions the witness will express and the basis and reasons for them."  Rule 37(c) then provides that if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a

---

[9] Giant Eagle maintains its objections to the limitations imposed by the Court on the Defendants' time at trial.

10

trial, unless the failure was substantially justified or is harmless." Together, these rules mean that expert witnesses cannot offer opinions that go beyond the scope of their reports. *See, e.g.*, *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1287 (Fed. Cir. 2011) (discussing interplay of Rules 26 and 37 and holding that "the district court did not abuse its discretion by ruling that Dr. McClellan could not testify on matters not disclosed in his expert report or deposition ….").

Here, there is no reasonable dispute that the testimony Mr. Rafalski seeks to add by "Errata" exceeds the scope of his expert report **because Mr. Rafalski flat-out said so**. At his deposition, Mr. Rafalski testified unambiguously that his report contained "information" about activities at the new GERX facility, but "**I did not have enough information to make a definitive opinion on their conduct post 2016**." Ex. 2 (Rafalski Tr. at 101:17-25 (emphasis added)). Put simply, he explained and admitted that his opinions about Giant Eagle—as articulated in his expert report—applied *only* to pre-GERX conduct.

The only way to excuse Plaintiffs' failure to comply with Rules 26 and 37 is if they can demonstrate that their violations were "harmless" or "substantially justified." Fed. R. Civ. P. 37(c); *Asher v. Unarco Material Handling, Inc.*, Civil Action No. 6:06-548-DCR, 2008 U.S. Dist. LEXIS 48918, at *9 (E.D. Ky. June 24, 2008) (holding that the burden is on the party offering the undisclosed testimony and citing cases for the proposition that "harmless" suggests an "honest mistake."). Plaintiffs cannot meet this burden. As explained throughout, Mr. Rafalski's changed testimony about the scope of his opinion prejudices Giant Eagle and is quite obviously not the product of an "honest mistake."

Moreover, Plaintiffs have offered *no justification whatsoever* for Mr. Rafalski's 180º pivot on what is actually in his report, let alone a substantial justification to get a pass on violating Rules

11

26 and 37. Mr. Rafalski specifically testified that while he had some general information about GERX in his report, that information was not sufficient to enable him to offer any opinions. Yet suddenly, without any justification or explanation, he now cites the exact same information as the basis of his newly expanded position. The Court should see Mr. Rafalski's changes for what they are—a re-write of his report and testimony for no reason other than to help Plaintiffs' case.

## IV. CONCLUSION

The Court should not allow witnesses to fake left at their deposition while under oath and then go right in their "Errata." To do so would make a mockery of the deposition process and Rule 30. Accordingly, the Court should strike the "Errata" to lines 100:16-22 and 101:14-25 of Mr. Rafalski's deposition testimony and hold him to what he testified under oath.

Dated:  September 23, 2021    Respectfully submitted,

*/s/ Robert M. Barnes*
Robert M. Barnes
*rbarnes@marcus-shapira.com*
Scott D. Livingston
*livingston@marcus-shapira.com*
Joshua A. Kobrin
*kobrin@marcus-shapira.com*
Daniel J. Stuart
*stuart@marcus-shapira.com*

MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA  15219
Telephone: (412) 471-3490
Facsimile: (412) 391-8758

*Counsel for Defendants HBC Service Company and Giant Eagle, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, this 23rd day of September, 2021, I served a copy of the foregoing via the Court's ECF system to all counsel of record.

/s/ *Robert M. Barnes*
Robert M. Barnes