## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>TRACK THREE | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

### CVS MOTION FOR RECONSIDERATION REGARDING SETTLEMENTS

Through the Special Master, the Court ruled on September 22, 2021 that plaintiffs may refer to prior settlements with DEA, from other jurisdictions, to show notice of CSA violations. In so doing, the Court made an error of law regarding the scope of Rule 408. Rule 408 excludes settlement agreements themselves, not merely communications about settlement.

In addition, the Court decided open issues—previously reserved for trial—without providing an opportunity for argument. Briefing would have demonstrated to the Court that the settlements at issue here are not admissible to show notice under any permissible notice theory. In this regard, and as set forth below, the notice theory approved by the Court depends on the truth of the allegations contained in the settlements. While some notice theories, in appropriate circumstances, may be permissible under Rule 408, this particular notice theory, which turns on the validity of the allegations, is prohibited by Rule 408.

Because the Court previously deferred decision until trial and did not hear argument on the open issues before changing course, the Court has not considered arguments on the differences between settlements containing no admissions and those that contain them. It has not considered the discrete nature of any of the settlements, the microscopic percentage of CVS pharmacies to which they might pertain, and how that might impact notice. It has not considered arguments on

*how many* settlements are admissible to show notice given that notice presumably is established by the first settlement. And it has not considered any of the immense Rule 403 issues associated with admitting even a single settlement, much less many. The unfair prejudice is self-evident.

For these reasons and those set forth below, CVS seeks reconsideration of the Court's ruling and requests an order excluding CVS's settlements with DEA from trial.

## ARGUMENT

Plaintiffs list in their trial brief 12 settlements between CVS and DEA that they seek to introduce. Doc. 3883 at 8-9. CVS did not admit DEA's contentions in nine of these settlements. This is stated expressly in many of the agreements. Three, however, contain certain admissions (Florida and Maryland, concerning allegations ending in 2012, and California, concerning recordkeeping allegations ending in 2013, which DEA expressly did not contend arose from or caused diversion).

While one argument below does not pertain to these three settlements, the remainder of the arguments do. All 12 settlements therefore are inadmissible. We note at the outset that we are aware of no court ever allowing into evidence even a single settlement for notice that did not involve exact overlap in persons, facilities, or locations, and we have located no decision ever allowing into evidence this number of settlements for notice.

**A. Scope of Rule 408**

As a threshold matter, Rule 408's exclusion of settlement evidence applies equally to "evidence of conduct or statements made in compromise negotiations, as well as the offer or completed compromise itself." Rule 408, Adv. Cmtee. Note on Proposed Rules; *see also id.* ("While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto."). Rule 408 itself makes this clear; it states plainly that evidence of "furnishing" or

2

"promising" consideration, and evidence of "accept[ing]" it, in compromising a claim (*i.e.*, evidence of an agreement to settle) is inadmissible. Thus, in the words of a recognized treatise, "Rule 408 applies . . . to completed compromises when offered against a compromiser." *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 408.03[5] (2d ed. 2017). Or, in the words of the Sixth Circuit, "Rule 408 . . . bars the admission of settlement agreements." *United States v. Tevis*, 593 F. App'x 473, 476–77 (6th Cir. 2014) (affirming exclusion of completed agreement).

Neither of the cases that the Court cited in its Track One-A Evidentiary Order suggests that Rule 408 applies only to negotiations; indeed, neither of the Court's cases ruled on admissibility at all. The Sixth Circuit's decision in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.* addressed "whether settlement communications are privileged" from *discovery*, not whether they are admissible. 332 F.3d 976, 979 (6th Cir. 2003). The court discussed Rule 408 only in rejecting an argument that settlement communications are *discoverable* if they may be potentially admissible under an exception to Rule 408. *See id.* at 979, 981. In that discussion, the court implicitly recognized that "the settlement agreement itself" is ordinarily subject to Rule 408 unless an exception applies. *See id.* at 981 (noting instances where Rule 408's exceptions have been used to admit "the settlement agreement itself").

The other case that the Court cited in its Track One-A Evidentiary Order likewise does not address admissibility; it dealt only with the parties' joint motion "to file their settlement agreement under seal." *Wilson v. Prime Source Healthcare of Ohio*, No. 1:16-cv-1298, 2018 WL 1127653, at \*7 (N.D. Ohio Mar. 2, 2018). In refusing to seal the agreement, the court noted that final settlement terms, unlike settlement negotiations, ordinarily are not protected from *public*

3

*disclosure* when they become the subject of litigation. *Id.* at 7–8 & n. 61–62.  Admissibility was not at issue in the decision.  The court never even mentioned Rule 408.

**B.     Notice**

CVS recognizes that the Court previously determined that settlements may be admissible, notwithstanding Rule 408(a), to show "notice."  The particular settlements at issue here, however, are not relevant to any viable notice theory.  There are four possible notice theories, and we address each below.[1]

1. To start, notice of the CSA regulations at issue in the settlements is not in dispute. CVS does not—and will not—assert that it lacked notice of CSA regulations.  Nor does CVS assert that it lacked notice that its entities could be subject to penalties if its pharmacists violated the CSA in the manner alleged by DEA.  Accordingly, the settlements are neither necessary nor relevant to any disputed issue regarding notice of the CSA requirements addressed in them.  Rule 408 precludes their admission, as do Rules 402 and 403.

2. To the extent plaintiffs alternatively seek to use the settlements to show that CVS was on notice of the potential for harm, none of the settlements addresses whether harm resulted from any of the asserted violations, either to persons or to communities.  The settlements cannot, therefore, provide notice of the potential for such harm.  And in any event, CVS does not—and will not—dispute that it was on notice that Schedule II controlled drugs have "a high potential for abuse" and that abuse "may lead to severe psychological or severe dependence."  21 U.S.C. § 812(b)(2).  The CSA itself says this.  This makes this case different from *In re E.I. DuPont De Nemours & Co. C-8 Personal Injury Litig.*, 2016 WL 659112 (S.D. Ohio Feb. 17, 2016), which

---

[1] We note at the outset that, before any settlement is admitted, plaintiffs must lay a foundation outside the jury's presence concerning exactly what notice, if any, the settlement provided and how, so that the Court can determine if any notice relevant to Lake and Trumbull Counties was in fact provided and, if so, whether it is a form of notice allowed by Rule 408.

4

the Court previously cited. Doc. 3052 at 13 n.74. There, what the defendant knew about the chemical at issue was in dispute. *Dupont*, 2016 WL 659112 at *52.[2]

3. To the extent plaintiffs seek to introduce the settlements to show that CVS was on notice of the *truth* of allegations in the settlements—*i.e.*, notice that its pharmacies or pharmacists *actually* violated the CSA, notice that its controls *actually* were insufficient, or notice that there was an *actual* pattern of violations—such a use is flatly prohibited both by Rule 408 and the hearsay rule. While this appears to be the theory accepted by the Court in its ruling, Rule 408 expressly prohibits the use of settlements to show the "validity" of the allegations that were resolved. Fed. R. Evid. 408(a); *see also Korn, Womack, Stern & Assocs., Inc. v. Fireman's Fund Ins. Co.*, 27 F.3d 566, 1994 WL 264263, at *7 (6th Cir. 1994) (Table Op.) (settlement evidence inadmissible "to show the truth of the allegations" related to the settled claim). This naturally includes any use of a settlement that requires an "inference" of the validity of the compromised claim. *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1294 (6th Cir. 1997) (quoting Federal Practice & Procedure § 5308 (1st ed. 1980)); *see also* Fed. R. Evid. 408 Advisory Committee Notes (Rule 408 makes "evidence of settlement . . . of a disputed claim inadmissible when offered as an admission of liability"). To allow such evidence would be to disregard a core principle underlying Rule 408—that a party may reasonably elect to settle a claim even when it believes the claim to be false. *See* Fed. R. Evid. 408 Advisory Committee Notes (recognizing that settlement "may be motivated by a desire for peace rather than from any concession" on the merits). It not only would violate the plain text of Rule 408, but it would defeat the underlying policy of "favoring the compromise and settlement of disputes that would otherwise be

---

[2] *Dupont* is inapplicable for additional reasons discussed *infra*.

discouraged with the admission of such evidence." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 805 (6th Cir. 2007).

As to settlements where CVS did *not* admit any of DEA's contentions, they are additionally precluded by the hearsay rule. DEA's contentions are not terms of the agreements; to the contrary, they appear in the recitals and are expressly characterized as what DEA alleges. Nor are they admissions—the agreements state expressly that CVS does *not* admit them. And notice provides no exception to the hearsay rule when, as here, notice depends on the truth of the underlying statements. *See Lawler v. Richardson*, No. 10-196, 2012 WL 2362383, at *2 (E.D. Pa. June 20, 2012) (newspaper articles inadmissible to show notice of prior violations because "in order to demonstrate that the City was on notice of these violations, we must assume that the violations and practices described in the articles actually occurred"); *see also United States v. Hatchett*, 918 F.2d 631, 642 (6th Cir. 1990) ("Despite [the defendant's] assertion that he did not intend to offer the videotape for the truth of its contents . . . its truthfulness would have to have been assumed by the jury in order for [the defendant's] proffered explanation to have any validity").

4. Finally, the settlements are not admissible to show notice of what DEA *alleged*. If notice of what DEA alleges about certain CVS pharmacies is relevant, it would only be because those unilateral allegations might be true. Indeed, if they were not true, they would supply no notice at all. Accordingly, because such a notice theory still would depend on the possible *truth* of the allegations, the settlements are barred wholesale by Rule 408.

Moreover, to the extent that notice of what DEA alleged in the settlements could have some marginal relevance even if unproven and possibly untrue, the unfair prejudice of admitting the settlements most certainly would outweigh any probative value.

We recognize that *Dupont* allowed admission of a settlement to show notice to the defendant of what EPA "believed" about the contamination at issue. 2016 WL 659112, at *52-*54 (S.D. Ohio Feb. 17, 2016). The district court opinion simply is wrong. But even if it were not, as discussed *infra* and *supra*, the case is so completely distinguishable on the facts that it is inapplicable.

**C.    Outside of Ohio and Not Involving Allegations About Nationally Applicable "Red Flag" Data Systems**

Even if the settlements could be admitted to show notice of the truth of the underlying allegations (they cannot be), the settlements still are inadmissible as irrelevant under Rule 402.

Unlike settlements by distributors relating to SOM systems, none of the CVS settlements concerns allegations about a "red flag" data system that operates nationally or allegations about the failure to have such a system. Nor do any of the settlements make allegations about the sufficiency of any of CVS's nationally-applicable policies. Rather, they involve allegations about the conduct of particular pharmacists at particular pharmacies in the context of particular prescriptions.[3]

At the same time, none of the settlements was entered in Ohio, and none cites conduct in Ohio. They concern conduct elsewhere. One concerns allegations against two pharmacies in Florida, one concerns allegations about 39 prescriptions in Rhode Island, one concerns allegations against eight pharmacies in Texas, etc.

The settlements therefore provided no notice to CVS about the operation of CVS's pharmacies in Lake and Trumbull Counties. Nor did they provide any notice about the particular pharmacists who work in such pharmacies. Because settlements regarding two pharmacies in

---

[3] Only one settlement arguably alleged conduct outside the jurisdiction where it was entered. That settlement (Oklahoma) concerned prescriber DEA numbers, alleged conduct ending in 2011, and stated expressly that CVS did not admit the allegations.

7

Florida, 39 prescriptions in Rhode Island or eight pharmacies in Texas represent a microscopic percentage of CVS's 10,000 pharmacies, and because none involves allegations about a "red flag" system of nationwide applicability, they do not provide notice about systematic policy failures. They supply no notice about CVS's Track Three pharmacies and are precluded by Rule 402.

This is another reason why *DuPont* is inapplicable.  *Dupont* involved a personal injury claim based on a chemical leak at a single Dupont facility near Parkersburg, West Virginia that allegedly contaminated the plaintiff's drinking water.  At trial, the court admitted one prior settlement between Dupont and EPA based on the *same* chemical, at the *same* Parkersburg facility, resulting in the *same* alleged water contamination and the *same* concomitant health risks, to show notice to Dupont of what EPA "believed" about the Parkersburg contamination.  2016 WL 659112, at *52-54 (S.D. Ohio Feb. 17, 2016).  In contrast, the settlements here involved *different* CVS pharmacists at *different* CVS pharmacies in *different* states and did not address any of the community harms asserted by the counties.  DEA's unproven "beliefs" about *other* pharmacies in *other* communities provided no notice about the Ohio pharmacies at issue in this case.

The other case cited by the Court that admitted a settlement for notice is similarly inapposite.  Doc. 3052 at 13 n.24 (citing *United States v. Austin*, 54 F.3d 394 (7th Cir. 1995)).  It concerned the admission of an FTC settlement regarding forged Chagall prints, among others, that provided notice to the defendant that the Chagall artwork in his inventory was fraudulent.  *Austin*, 54 F.3d at 398.  Only eleven days after entering the settlement, the defendant proceeded to sell several of the Chagall pieces (which he was obligated by the settlement to surrender), and the settlement was admitted in the subsequent criminal trial to show that he knew they were fraudulent. *Id.*  Unlike the situation here, where the settlements concerned pharmacies, pharmacists, patients,

prescriptions, and communities that are not at issue in the case, the settlement in *Austin* addressed the very artwork—and the very salesperson— at issue in the prosecution.  *Id.* at 398, 400.

Further distinguishing *Austin* from the vast majority of the CVS settlements, the defendant in *Austin* admitted the fraud in the settlement.  *Id.* at 400.  This was a key prong of the court's reasoning in affirming the decision to admit and is inapplicable to ten of the CVS settlements.  *Id.*

### D.     Recordkeeping Settlements

Several settlements are irrelevant to notice for an additional reason.  They are unrelated to filling prescriptions.  They involve allegations that certain CVS pharmacies outside of Ohio did not meet CSA recordkeeping requirements.  For example, in one, DEA contended that a CVS pharmacy in Texas failed to keep an accurate inventory record for certain controlled substances, failed to record the date on 18 invoices, and failed to maintain 67 invoices.  In another, DEA contended that a CVS store in Connecticut failed to keep certain paper prescriptions in a "separate or readily retrievable manner from all other records in the pharmacy."  And in yet another, DEA contended that certain CVS pharmacies in Long Island failed to notify the DEA in writing of thefts or significant losses within one business day of discovery.  Such settlements are not relevant to the issues in the case and are precluded by Rule 402.

### E.     Irrelevance of Cumulative Settlements

If the Court allows an exception to Rule 408 for notice, the very first settlement it admits establishes it, and the subsequent settlements not only are needlessly cumulative in violation of Rule 403, they are irrelevant to notice and therefore are inadmissible under both Rule 402 and 408. Once notice is provided to the company by an early settlement, it is on notice.  Subsequent settlements by the same company no longer operate to provide it.

### F. Unfair Prejudice and Risk of Confusion

The unfair prejudice of allowing into evidence just a single past allegation is well established. *See generally Old Chief v. United States*, 519 U.S. 172 (1997). The unfair prejudice associated with the admission of 12 settlements is magnified. And given that CVS disputes the allegations in nine of the settlements and that the allegations in the three other settlements, which contain limited admissions, were restricted to certain pharmacies, the settlements require explanation that the Court's limits on trial time and witnesses do not permit. This makes the settlements even more unfairly prejudicial. Because the settlements involve other CVS pharmacies, other CVS pharmacists, and other doctors, patients, prescriptions, and communities, any remote relevance that notice of them supplies is substantially outweighed by this unfair prejudice. This is even further the case given that the vast majority of the settlements involve conduct from many years ago, when the claim here is for a present-day nuisance. Admission would plainly violate Rule 403.

At a minimum, admission of the settlements will confuse the issues. The only CVS pharmacies at issue in this case are the CVS pharmacies in Lake and Trumbull Counties—not other CVS pharmacies, staffed by other CVS pharmacists, in other states. These settlements are inadmissible under Rule 403 for these reasons as well.

### G. Confusion in Relation to Co-Defendants

The risk of confusion and unfair prejudice associated with the settlements is exacerbated by comparisons to settlements of co-defendants. For example, one defendant entered a single settlement that resolved all investigations by DEA nationwide. But due to the number of settlements, CVS is likely to be viewed by a layperson unfavorably in comparison. Fairly understanding how one broader agreement compares with multiple discrete ones is complex, requires legal analysis, and is not for lay jurors. This only amplifies the impropriety of admitting

settlements at all.  The degree to which this will confuse and mislead the jury—and impose on CVS yet another layer of unfair prejudice—speaks for itself.

## CONCLUSION

For these reasons, CVS respectfully requests that the Court reconsider its ruling regarding the admissibility of settlements and exclude the CVS settlements at issue.

Dated: September 23, 2021

Respectfully submitted,

/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
Graeme W. Bush
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: gbush@zuckerman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, LLC, CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*