UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>"Track Eight: Cobb County, Georgia" | MDL 2804<br><br>Case No. 1:17-MD-2804<br><br>Case No. 1:18-OP-45817<br><br>Judge Dan Aaron Polster |

**Opposition to Defendant Publix Super Markets, Inc.'s Motion to Dismiss Plaintiff Cobb County's Complaint**

## INTRODUCTION

This Court has repeatedly denied motions to dismiss public nuisance claims in this case, and Defendant Publix's motion raises no novel issues that would require a different result here. Contrary to what Defendant Publix suggests, Plaintiff Cobb County's Complaint does not seek to hold Publix liable for causing a public nuisance simply because it dispensed opioids in the County. It alleges that Publix caused a public nuisance by distributing and dispensing a volume of opioids far exceeding what could be justified for legitimate medical use given the County's population and Publix's market share, during a prescription opioid crisis, along with other facts that Publix disregarded red flags of diversion by implementing corporate policies that downplayed safety and pressured pharmacists to fill prescriptions. These allegations state a plausible claim that Publix caused a significant interference with public health and safety, and thus a public nuisance claim under Georgia law. The Court should deny Publix's motion to dismiss.

1

## STATEMENT OF FACTS

The opioid crisis has cut deeply into Georgia, at one point killing on average four of its citizens every day. (Compl., ¶ 704.)[1] It has caused a dramatic increase in opioid-related overdose emergency room visits, hospitalizations, and deaths in Georgia and has torn families apart, with children removed from homes and babies born addicted. (*Id.*, ¶¶ 703-705, 708, 709, 717-718.) Unfortunately, Cobb County stands in the vanguard with some of the highest numbers of overdose deaths in the state, along with "prevalent opioid abuse through the County, including in public places." (*Id.*, ¶ 712, 715, 719.) Oversupplying prescription opioids served as a catalyst for this public health catastrophe; indeed, "overdose deaths rapidly increased in Georgia starting in 2010 driven largely by increased prescription opioids," a fact "widely publicized for years," and that impacted nearly every County department as the County struggles to address a health crisis that has "reshaped daily reality for Cobb County." (*Id.*, ¶ 698, 702-703, 715, 719.)

Publix played a leading role in causing this public nuisance by distributing and dispensing a staggering volume of opioids into Cobb County. Based in Florida, Publix self-distributes opioids from its Orlando, Florida warehouse, a DEA registrant, to its pharmacies in Publix supermarkets located across the southeastern United States, including Cobb County. (*Id.*, ¶¶ 80-82, 461, 463.) The ARCOS data shows that 22 Publix pharmacies in Cobb County alone purchased and dispensed *over* 17,000,000 dosage units of oxycodone and hydrocodone from 2006 to 2014, even though the County only had a population of about 650,000 during that period. (*Id.*, ¶¶ 473, 475.) Even more troubling: Publix's volume represents only 12% of the oxycodone and hydrocodone distributed and dispensed in the County during that period. (*Id.*, ¶ 473.) This high volume of

---

[1] "Compl." refers to Plaintiff Cobb County's Supplemental And Amended Allegations To Be Added To "Short Form For Supplementing Complaint And Amending Defendants And Jury Demand".

2

opioids relative to the population and Publix's market share alone "is so high as to raise a red flag" "that not all the prescriptions being ordered could be for legitimate medical uses," and "is indicative of potential diversion." (*Id.*, ¶¶ 473, 475.) And Publix distributed and dispensed millions of dosage units in the midst of a prescription opioid public health crisis. (*Id.*, ¶¶ 473-475, 702-704.) "Publix knew or should have known" that it was selling "an excessive volume of pills" into Cobb County and "ultimately, onto its streets." (*Id.*, ¶¶ 473, 474.) It just "chose not to utilize this information" to prevent diversion during an opioid epidemic. (*Id.* ¶ 482-483.)

Other allegations drive home how Publix prioritized sales over public safety. Publix allowed its pharmacies to supplement Publix's self-distribution system by ordering opioids from other distributors, including McKesson and AmerisourceBergen. (*Id.* ¶¶ 463-464.) Yet Publix's suspicious order monitoring (SOM) system didn't sufficiently take these outside orders into account, "negating any constraints" from Publix's already lax internal controls. (*Id.* ¶ 470.) Teva commented on how the quantity, strength and intended destination of Publix's opioid orders raised "serious red flags" of diversion but fulfilled them anyway because it worried that Publix would take its business elsewhere. (*Id.* ¶ 466-467, 471.) McKesson told Publix of orders "hitting McKesson [oxycodone] thresholds," but Publix's response was to request "amnesty" so it could sell more, which McKesson granted. (*Id.* ¶ 468.) Even Purdue noted in 2013 how "'[n]ot one [Publix] pharmacist [in St. Petersburg, Florida] has experienced a push back with ordering OxyContin or maximizing their quantities per McKesson/DEA regulations.'" (*Id.* ¶ 471.) In fact, even today Publix doesn't bother to list SOM-related responsibilities in its job posting for a pharmacist in Cobb County, focusing instead on sales-related tasks—a fact further reflecting how Publix "pressured [its] pharmacists to put profits ahead of safety." (*Id.*, ¶¶ 488, 496-499.)

3

## ARGUMENT

The Georgia legislature long ago codified public nuisance, defining it as:

> anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance.  The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man.

O.C.G.A. § 41-1-1. "A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." O.C.G.A. § 41-1-2.

The public nuisance statute, however, simply codifies "claims [that] arise from the common law," *Camelot Club Condo. Ass'n v. Afari-Opoku*, 798 S.E.2d 241, 250 (2017), and "was not intended to change the common-law definition of a nuisance." *State ex rel. Boykin v. Ball Inv. Co.*, 12 S.E.2d 574, 578 (Ga. 1940). Thus, consistent with the common-law, Georgia courts hold that a public nuisance claim requires interference with a common right—"some act or omission which obstructs or causes inconvenience to the public in the exercise of rights common to all." *Cox v. De Jarnette*, 123 S.E.2d 16, 25 (Ga. Ct. App. 1961). "Significant interference with 'the public health, the public safety, the public peace, the public comfort or the public convenience' may support a finding of public nuisance." *City of College Park v. 2600 Camp Creek, LLC*, 666 S.E.2d 607, 608 (Ga. Ct. App. 2008) (quoting Restatement (Second) of Torts, § 821B(2)(a)).

The question Publix's Rule 12(b)(6) motion presents is does the County's complaint sufficiently allege a significant interference with public health and safety that constitutes a public nuisance? As it has in when confronted with motions to dismiss very similar claims involving the distributor and dispensing defendants' distribution of opioids and failures to prevent diversion, the Court should hold that it does.

4

## I. The Complaint states a claim that Publix caused the public nuisance

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Specific facts are not necessary." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). A statement need give "only enough facts to state a claim to relief that is plausible on its face," to comply with Rule 8. *Twombly*, 550 U.S. 544, 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Publix "has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Marcure v. Lynn*, 992 F.3d 625, 630-31 (7th Cir. 2021) ("every circuit … has interpreted Rule 12(b)(6) as requiring the movant to show entitlement to dismissal"). In determining whether Publix meets its burden, the Court (and Publix) "must accept the complaint's well-pleaded factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016).

Publix fails to meet its burden. By any measure, the Complaint "tenders more than the 'naked assertion[s]' devoid of 'further factual enhancement' that *Twombly* and *Iqbal* prohibit." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citation omitted). As set out above, the Complaint alleges that Publix distributed and dispensed a volume of opioids far exceeding what could be justified for legitimate medical use given the County's population and Publix's market

5

share—*over* 17 million dosage units of opioids in a county with a population of about 650,000 people even though Publix's market share was only around 12%—during a prescription opioid crisis, along with other facts further suggesting that Publix maintained lax SOM controls to detect or prevent diversion and pressured pharmacists to prioritize sales over safety. Taken together, these allegations present sufficient "factual content" from which the Court, informed by its "judicial experience and common sense," can "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, that Publix knew or should have known that it was failing to prevent diversion as it distributed and dispensed opioids in Cobb County, thus causing a significant interference with public health and safety. (Compl., ¶¶ 472-83, 488-93.)

      Publix's ARCOS opioid distribution volume into Cobb County is so high that Publix refuses to mention it and provides no Rule 12(b)(6) analysis that accounts for the ARCOS allegations. Yet the ARCOS data clearly "is relevant" to proving Publix's "culpability" for a public nuisance claim as it sheds light on the "extent" it engaged in "filling of suspicious orders, and diversion of drugs." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 U.S. Dist. LEXIS 90002, at *65 & n.8 (N.D. Ohio Apr. 11, 2018). The ARCOS numbers and related allegations thus present "enough factual matter (taken as true) to suggest" that Publix was a cause of the public nuisance alleged in the Complaint. *Twombly*, 550 U.S. at 556.

      Publix's refusal to accept the ARCOS data and related "well-pleaded factual allegations as true," and construe them "in the light most favorable" to Cobb County, *Luis*, 833 F.3d at 626, undermines Publix's remaining Rule 12(b)(6) arguments. For example, Publix states that the Complaint "fails to allege" an "actual connection between Publix's actions and Cobb County." (Mem. at 1.) The ARCOS data, however, provides an "actual connection." Publix claims that

6

allegations about its market share are "completely irrelevant," while allegations about "the quantity of opioids dispensed" being "'so high as to raise a red flag,'" are "based upon nothing more than plaintiff's say so." (Mem. at 8 & n.4 (quoting Compl., ¶ 473).) Allegations that a company with a 12% market share distributing and dispensing 17 million opioid dosages exceeds any medically justifiable amount relative to Cobb County's population and raises red flags, particularly during a prescription opioid epidemic, state specific relevant facts that "are either true or false, no matter what legal conclusions [they] may or may not support." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1197 (11th Cir. 2018). And "no part of the *Twombly-Iqbal* pleading standard requires a plaintiff to provide *evidence* for the factual allegations in a complaint before they are 'entitled to the assumption of truth' at the motion-to-dismiss stage." *Id.* (quoting *Iqbal*, 556 U.S. at 679; emphasis in original).

Publix claims allegations involving Teva, McKesson, and Purdue are purportedly irrelevant because they either involved opioids going to Florida or do not specifically involve opioids distributed and dispensed in Cobb County. (Mem. at 7.) But factual allegations showing that Publix maintained inadequate corporate-level SOM systems in states abutting Georgia— including Florida where Publix keeps its headquarters and where illegal opioid diversion achieved infamous levels— make it plausible, indeed likely, that it did the same in Georgia and Cobb County. That inference becomes even stronger when coupled with Publix's inexplicably high ARCOS distribution and dispensing numbers in Cobb County. *Twombly*, 550 U.S. at 569 n.14 (allegations must be considered "in toto" not in isolation).

Allegations about Publix's distribution and dispensing in neighboring Florida are also relevant given the well-documented migration of millions of illegal prescription opioid pills out of

7

Florida along the I-75 "Blue Highway." (Compl., ¶¶ 671-79.) The "Blue Highway" runs through Cobb County, making the link between Publix's distribution and dispensing activities in Florida and the public nuisance in Cobb County even more plausible.

Publix also contends that a public nuisance claim purportedly requires greater particularity by identifying "specific" improper prescriptions that Publix filled in Cobb County. (Mem. at 1, 8.) Yet this Court has rejected similar arguments when ruling on prior motions to dismiss. *See e.g., In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 811 (N.D. Ohio 2020) ("as this Court has previously noted, the Distributors' argument fails to appreciate that, in a case of massive proportions like this one, there is nothing gained by requiring a Complaint to identify a handful of orders or pharmacy order-recipients the Distributors should have reviewed or refused to fill"); *In re Nat'l Prescription Opiate Litig.*, No. MDL No. 1:17-cv-02804, 2018 U.S. Dist. LEXIS 176260, at *98 n.20 (N.D. Ohio Oct. 5, 2018) ("To the extent Defendants maintain that Plaintiffs were required to name specific prescribers, this court disagrees."). As these cases recognize, plausibility does "not require heightened fact pleading of specifics," *Twombly*, 550 U.S. at 570, and "at this early stage of the proceedings, a plaintiff is not required to set out detailed factual allegations." *El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 735 (6th Cir. 2015). Plus, Publix has yet to even produce its dispensing data in Georgia or Florida and discovery has just begun. In any case, the Complaint alleges a sufficient quantum of facts to state a public nuisance claim.

Publix also argues that dismissal is required by quoting caselaw stating that "'a mere suggestion is not sufficient to survive summary judgment.'" (Mem. at 8, quoting *Wallace v. Coffee Cty.*, 852 F. App'x 871, 877 (6th Cir. 2021). We are at the pleading stage, however, where

8

all Rule 8 requires are allegations "suggesting" Publix is liable. *Twombly*, 550 U.S. at 556 (pleading stage only requires "allegations plausibly suggesting" defendant is liable). As discussed above, the Complaint easily meets *Twombly's* standard, and Defendant's motion must be denied.[2]

**II.     Georgia law recognizes Cobb County's claim for public nuisance against Publix.**

Publix argues that the County's public nuisance claim also "fails as a matter of law" because Georgia courts have purportedly adopted a rule that if "the Georgia legislature does not characterize the violation of a regulatory scheme to be a public nuisance, a court in equity has no power to declare it one." (Mem. at 2.) Publix cites no authority adopting its proposed rule of law, however, because the rule does not exist.

Publix argues that its newly created rule can be teased out of *State ex rel. Boykin v. Ball Inv. Co.*, 12 S.E.2d 574 (Ga. 1940), but it misreads that case, which actually undermines Publix's position. *Boykin* merely held that two men and the company they ran lending money at usurious rates did not constitute a common-law nuisance and that the statutory criminal penalties provided an adequate remedy. *Id.* at 581. Far from holding that violations of a regulatory scheme cannot constitute a public nuisance unless the legislature says so, the court "concede[d] that in a proper case equity will enjoin an existing nuisance, although the acts to be enjoined constitute crimes." *Id.* at 578. In short, *Boykin* stands for the unsurprising position that a simple violation of the law, without more, does not constitute a public nuisance. No less an authority than the Georgia Supreme Court agrees, stating that *Boykin* "in effect" held "that a simple violation of some law without more does not constitute a public nuisance." *Webb v. Alexander*, 43 S.E.2d 668,

---

[2] Publix also inaccurately describes the case of *City of College Park*, 666 S.E.2d at 608, as "dismissing on summary judgment" a public nuisance claim. (Mem. at 6.) Actually, the court reversed a grant of summary judgment. *Id.* at 608-09 (finding road's condition constituted a public nuisance because it interfered with right of public safety).

671 (Ga. 1947); *see also Boykin*, 12 S.E.2d at 581 ("'court of equity will not enjoin the commission of crime generally; but it has jurisdiction, and will in a proper case … restrain an existing or threatened public nuisance, though the offender is amenable to the criminal laws of the State'") (citation omitted). As explained in the previous section, Cobb County alleges that Publix did more than simply violate the law to cause a public nuisance.[3]

Other infirmities hobble Publix's proposed rule beyond an erroneous reading of *Boykin*. Publix cites and quotes various provisions of the Georgia Pharmacy Practice Act, O.C.G.A. § 26-4-1 *et seq*. But none of those provisions state—or even suggest—that the legislature intended the Pharmacy Practice Act to supplant public nuisance claims or that a violation of those statutes cannot also be the basis for a public nuisance claim under Georgia law. *See May v. State*, 761 S.E.2d 38, 45 (Ga 2014) (the "'better view is that statutes will not be interpreted as changing the common law unless they effect the change with clarity'") (citation omitted). This Court has also already rejected similar arguments claiming that the existence of a regulatory framework supplanted public nuisance claims. *See e.g., In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2018 U.S. Dist. LEXIS 213657, at *89 (N.D. Ohio Dec. 19, 2018) (disagreeing that Ohio OPLA abrogated common-law public nuisance claims).

Further, Georgia courts have applied the common-law test for a public nuisance in Section 821B of the Restatement (Second) of Torts. *See e.g., City of Albany v. Stanford*, 815 S.E.2d 322, 328 (Ga. Ct. App. 2018); *City of College Park v. 2600 Camp Creek, LLC*, 666 S.E.2d 607, 608-09 (Ga. Ct. App. 2008); *see also Boykin,* 12 S.E.2d at 578 (statutory definition of nuisance makes no change to common-law definition); *Camelot Club Condo. Ass'n*, 798 S.E.2d at

---

[3] Further, the "the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." O.C.G.A. § 41-1-1.

250 (statute codifies "claims [that] arise from the common law"). Like the *Boykin* and *Webb* cases cited above, Section 821B makes clear that at common law, conduct "proscribed by a statute, ordinance or administrative regulation" can support a public nuisance finding. Restatement (Second) of Torts, § 821B(2)(b). This Court has also previously made this distinction clear. *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2021 WL 3917174, at *2 (N.D. Ohio Sept. 1, 2021) (rejecting claim that regulation of opioids by state and federal law rendered pharmacy defendant immune from public nuisance claims when allegations in complaint show failure to comply with applicable regulatory requirements) (citing prior MDL decisions).

Finally, *Boykin* also premised its holding on the argument that injunctive relief directed at halting the making of the illegal loans was inappropriate because the criminal laws regulating usury were an adequate remedy at law. *Boykin*, 12 S.E.2d at 581. The equitable relief Cobb County seeks here, however, is the abatement of the opioid epidemic in Cobb County caused by Publix's actions. (Compl. ¶¶ 751-52.) Whether criminal penalties for violation of state and federal controlled substances laws might, in certain cases, be sufficient to stop Publix's illegal conduct, none of those laws provide an adequate remedy for Cobb County's abatement claim here that is directed primarily at the public health consequences of the conduct.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant's motion to dismiss.

Dated: September 27, 2021	Respectfully submitted,

*(s) Jayne Conroy*
Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue
New York, NY 10016
(212) 784-6401
jconroy@simmonsfirm.com

-and-

Sarah S. Burns
Jo Anna Pollock
SIMMONS HANLY CONROY
One Court Street
Alton, IL 62002
(618) 259-2222
sburns@simmonsfirm.com
jpollock@simmonsfirm.com

Charles Crueger
Erin Dickinson
Krista Baisch
CRUEGER DICKINSON LLC
4532 N. Oakland Avenue
Whitefish Bay, WI 53211
(414) 210-3868
cjc@cruegerdickinson.com
ekd@cruegerdickinson.com
kkb@cruegerdickinson.com

          COBB COUNTY ATTORNEY'S OFFICE
          H. William Rowling, Jr.
          County Attorney
          GA State Bar No. 617225
          Lauren Bruce
          Assistant County Attorney
          GA State Bar No. 796642
          100 Cherokee Street, Suite 300
          Marietta, GA 30090
          (770) 528-4000
          H.William.Rowling@cobbcounty.org
          Lauren.Bruce@cobbcounty.org

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of September, 2021, I electronically filed the foregoing Opposition with the Clerk of the Court by using the CM/ECF System.

*/s/ Jayne Conroy*