**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track Three Cases | |

# PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTIONS FOR RECONSIDERATION REGARDING ADMISSIBILITY OF SETTLEMENTS

September 27, 2021

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................................... ii

Introduction ................................................................................................................................. 1

Background ................................................................................................................................... 1

Legal Standard ............................................................................................................................. 7

Argument ...................................................................................................................................... 8

Conclusion .................................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brady v. Wal-Mart Stores, Inc.*,
   455 F. Supp. 2d 157 (E.D.N.Y. 2006), *aff'd,* 531 F.3d 127 (2d Cir. 2008)......................14, 15

*Chafflose Corp. v. 3 M Innovation*,
   No. 1:10CV2178, 2010 WL 4318872 (N.D. Ohio Oct. 27, 2010)..............................7, 8, 9, 10

*City of Huntington v. AmerisourceBergen Drug Corp.*,
   No. CV 3:17-01362, 2021 WL 1711381 (S.D.W. Va. Apr. 29, 2021) ...................................16

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*,
   No. 3:11-MD-2244-K, 2017 WL 3841608 (N.D. Tex. June 28, 2017) ...................................15

*Dunkin v. Dorel Asia SRL*,
   No. 5:10-CV-00004 JWS, 2012 WL 1029070 (D. Alaska Mar. 23, 2012) ...........................12

*In re: E. I. Du Pont De Nemours & Co. C-8 Pers. Inj. Litig.*,
   No. 2:13-CV-170, 2016 WL 659112 (S.D. Ohio Feb. 17, 2016) ...........................................14

*Green v. Baca*,
   226 F.R.D. 624 (C.D. Cal. 2005), *order clarified on other grounds,* No. CV 02-
   204744MMMMANX, 2005 WL 283361 (C.D. Cal. Jan. 31, 2005) .....................................15

*Lawler v. Richardson*,
   No. CIV.A. 10-196, 2012 WL 2362383 (E.D. Pa. June 20, 2012) ........................................11

*Lopez v. City of Fontana*,
   No. EDCV191727JGBSPX, 2020 WL 6694337 (C.D. Cal. Sept. 17, 2020) .........................16

*McClellan v. City of Sacramento*,
   No. 220CV00560TLNKJN, 2021 WL 1164487 (E.D. Cal. Mar. 26, 2021)...........................15

*McConocha v. Blue Cross & Blue Shield Mut. of Ohio*,
   930 F. Supp. 1182 (N.D. Ohio 1996)..........................................................................7, 8, 9, 10

*Miller v. Norfolk S. Rwy. Co.*,
   208 F. Supp. 2d 851 (N.D. Ohio 2002) (Carr, J.) ...........................................................7, 8, 9

*In re Nat'l Prescription Opiate Litig.*,
   No. 1:17-MD-2804, 2020 WL 5642173 (N.D. Ohio Sept. 22, 2020)...............................7, 8, 9

*Old Chief v. United States*,
   519 U.S. 172 (1997)........................................................................................................10, 14

*Robertson v. U.S. Bank, N.A.*,
    831 F.3d 757 (6th Cir. 2016) ...................................................................................11

*Silicon Valley Telecom Exch., LLC v. Verio, Inc.*,
    No. C 12-00899 HRL, 2013 WL 4396744 (N.D. Cal. Aug. 13, 2013).....................................11

*Tomas v. Hohlfelder Stamping, Inc.*,
    No. 94-L-156, 1996 WL 649113 (Ohio Ct. App. June 21, 1996)...........................................15

*United States v. Hardin*,
    No. 1:19-CR-240, 2021 WL 514294 (N.D. Ohio Feb. 11, 2021) ...................................7, 8, 10

*United States v. Hatchett*,
    918 F.2d 631 (6th Cir. 1990) .....................................................................................11

*United States v. Jones*,
    No. 16-CR-344, 2020 WL 7350436 (N.D. Ohio Dec. 15, 2020)...................................7, 8, 10

*United States v. Jorgensen*,
    No. CRIM04-169(PAM/RLE), 2004 WL 1774529 (D. Minn. Aug. 8, 2004).........................15

**OTHER AUTHORITIES**

FED. R. EVID. 401 ...........................................................................................................14, 15

FED. R. EVID. 403 .........................................................................................................1, 15, 16

FED. R. EVID. 408 ..................................................................................................... *passim*

FED. R. EVID. 801 ...............................................................................................................11

FED. R. EVID. 803 ...............................................................................................................11

## INTRODUCTION

Defendants CVS, Walmart, and Walgreens (collectively, "Movants") have each moved for reconsideration of the Court's *in limine* rulings regarding the admissibility of their prior settlements with the DEA (the "Motions").  Dkt. #3972 (CVS Motion); Dkt. #3973 (Walmart Joinder); Dkt. #3974 (WAG Motion).  Significantly, Movants do not even mention the legal standard governing motions for reconsideration, let alone satisfy that demanding standard. Instead, they primarily reiterate the same arguments, citing most of the same cases, that this Court has repeatedly rejected.  They offer no new arguments that could not have been raised previously, nor any new evidence or controlling authority warranting reconsideration.  Their Motions are improper, untimely, and substantively without merit.  They should be denied in their entirety.

## BACKGROUND

This Court has addressed the admissibility of settlement agreements at trial several times in this litigation.  In Track One-A, various defendants (including Walgreens) filed motions *in limine* seeking to exclude evidence of their settlements with the DEA at trial.  *See, e.g.,* Dkt. #2648 (WAG CT1A MILs) at pp. 4-8; Dkt. #2666 (Distributors' CT1A MILs) at pp. 1-6; Dkt. #2801 (WAG CT1A MIL Reply) at pp. 3-4; Dkt. #2804 (Distributors' CT1A MIL Reply) at pp. 1-4. They previously argued that such evidence should be excluded because, among other things: (i) it is inadmissible under Federal Rule of Evidence 408; (ii) it is not admissible to prove state of mind, intent, a pattern of conduct, or knowledge; (iii) it is irrelevant because the settlements involve conduct occurring outside of Ohio or the relevant counties; (iv) it is irrelevant because the settlements involve other claims and any reference to them would be based on a "if it happened there, it must be happening here" premise; (v) some of the settlements contain no admission of wrongdoing or expressly disclaim wrongdoing; (vi) it is inadmissible under Federal Rule of Evidence 403 because any minimal probative value the settlements may have is far outweighed by the unfair prejudice that would result if they were admitted; and (vii) the admission of such evidence will distract the jury and be a waste of time because the defendant(s) will be forced to introduce evidence necessary to rebut the DEA's allegations and, with the time limitations on the

trial, there is no time for evidence related to collateral issues.  *Id.*  The Court denied these MILs, finding this evidence was "relevant and permissible."  Dkt. #3058 (CT1A Evidentiary Order) at pp. 13-15.  The Court agreed with the plaintiffs that these settlements "establish a pattern of conduct that demonstrates: (1) Defendants knew their SOM systems were inadequate and likely to cause harm; and (2) Defendants' conduct was intentional and persisted over a lengthy period of time."  Dkt. #3058 (CT1A Evidentiary Order) at p. 13.  Thus, the evidence was admissible for "another purpose" under Rule 408:

> Under Rule 408, evidence of "conduct or a statement made during compromise negotiations" is not admissible "to prove or disprove the validity or amount of a disputed claim or two impeach by a prior inconsistent statement or a contradiction." However, the Court may admit this evidence for "another purpose," such as to show a particular Defendant's knowledge or notice of potential harm.

*Id.* at pp. 12-13 (internal citation and footnote omitted).[1]  The Court also noted that "Rule 408's protection applies only to the communications made during settlement negotiations; existence of the settlement itself is not privileged."  *Id.* at p. 12 n.24.  Moreover, as a general matter, the Court held that: "[E]vidence of what occurred outside the Track One Counties is generally relevant to Defendants' conduct within the Track One Counties . . . .  This is particularly true because there is evidence that Defendants acted pursuant to practices and policies that were national in scope." *Id.* at p. 8.  Finally, the Court emphasized that its Track One-A MIL "rulings w[ould] apply to all future cases in this MDL that are tried by this Court."  *Id.* at p. 1.

In Track One-B, the pharmacy defendants (including Movants) filed a motion *in limine* requesting that the Court reconsider its prior MIL ruling regarding settlements, arguing that the Court's application of Rule 408 was incorrect, including its determination that settlement evidence can be admissible to show knowledge or notice, and that, at a minimum, the plaintiffs should be required to establish a foundation for such evidence at a hearing outside the presence of the jury.

---

[1]  Specifically with respect to Walgreens' settlement with the DEA regarding its conduct in Florida, the Court held such evidence was "both relevant and admissible[,]" reiterating that "[w]hile Rule 408 prohibits evidence of a compromise and settlement of a disputed claim to prove liability, evidence of both the existence and content of a prior settlement agreement is admissible to show another purpose, including Defendant's knowledge or notice of potential harm."  *Id.* at pp. 14-15.

Dkt. #3420 (Ds' CT1B MIL No. 7) at pp. 1-4; *see also* Dkt. #3507 (Ds' CT1B MIL Reply) at p. 16. In the alternative, they asked the Court to modify its prior ruling to exclude certain discrete categories of settlement-related evidence that they claimed was "patently irrelevant, could not possibly establish notice, and can be excluded wholesale before trial ever begins." Dkt. #3420 (Ds' CT1B MIL No. 7) at pp. 1-2, 4-9; *see also* Dkt. #3507 (Ds' CT1B MIL Reply) at pp. 16-20. These categories were: (i) evidence of the dollar amount of any settlements; (ii) evidence of settlements pertaining to dispensing (not distribution) conduct of pharmacies outside the Track One counties; (iii) evidence of settlements reached after a defendant stopped distributing relevant prescription opioids, which could not be relevant to state of mind or notice; (iv) evidence of settlements by corporate entities who were not parties to the case; and (v) evidence of settlements concerning non-opioid medications. Dkt. #3420 (Ds' CT1B MIL No. 7) at pp. 1-2, 4-9; *see also* Dkt. #3507 (Ds' CT1B MIL Reply) at pp. 16-20. They argued that such evidence was not only "irrelevant and prejudicial," it would also "give rise to distracting and irrelevant 'mini-trials' over the validity of the allegations that gave rise to that agreement." Dkt. #3420 (Ds' CT1B MIL No. 7) at p. 2; *see also id.* at pp. 4-9.

In its Track One-B order, the Court first reiterated that it would "adhere to [its prior Track One-A MIL] rulings unless a party show[ed] that the circumstances of this case warrant a revision." Dkt. #3546 (CT1B Evidentiary Order) at p. 2. Turning to the pharmacy defendants' arguments regarding settlement evidence, the Court declined to reconsider its prior ruling:

> In Track One-A, the Court denied Defendants' motions to exclude evidence of civil settlements with governmental entities, finding that, although such evidence was not admissible to prove the validity or amount of a disputed claim, it could be relevant and admissible for another purpose, such as to show, among other things: "the Distributors' knowledge of their duties under the CSA and whether their conduct was in violation of those duties." In other words, the Court ruled such evidence could be admissible for purposes other than to show liability, that is, to show, *inter alia*, a Defendant's knowledge, state of mind, or notice of potential harm.
>
> Pharmacy Defendants ask the Court to reconsider this ruling in Track One-B; however they present no argument or authority demonstrating the ruling is incorrect. Accordingly, the Court declines to alter its previous ruling.

*Id.* at pp. 29-30 (internal citations and footnote omitted).  The Court noted that although the pharmacy defendants "state[d] they 'believe[d]' the Court's ruling is incorrect[,]" "they cite no authority substantiating their belief."  *Id.* at p. 30 n.48.

The Court then addressed the discrete categories of settlement evidence the pharmacy defendants sought to exclude.  First it noted, "[a]s a preliminary matter, . . . that notice is not the only purpose for which this type of evidence may be admitted[,]" so "even if a particular piece of settlement-related evidence 'could not possibly establish notice,' it does not necessarily lead to the conclusion that a blanket exclusion is required."  *Id.* at p. 30 n.49.  Turning to the categories of settlement evidence, the Court ruled as follows:

- **Evidence as to the particular dollar amounts of settlement**:  Notably, the plaintiffs had agreed not to reference the dollar amounts of the settlements, but argued "they should be allowed to reference the general size of the settlement as rebuttal to any argument suggesting Defendants' violations were minor or immaterial."  *Id.* at p. 30 (citing Dkt. #3464 (Ps' CT1A MIL Opp.) at p. 31).  The Court held that "[i]n light of Plaintiffs' response, . . . except for proper rebuttal evidence, the parties shall not refer to the dollar amounts or general size of settlements."  *Id.*

- **Evidence of settlements entered into or involving conduct occurring after the relevant time frame in this case**:  The Court "decline[d] to rule on this issue in the abstract and instead w[ould] address the admissibility of this evidence based on the context in which it arises at trial."  *Id.* at p. 31.

- **Evidence of settlements relating to pharmacies located outside the relevant counties**:  The Court "decline[d] to enter a blanket ruling excluding evidence of settlements involving conduct that occurred outside the Track One Counties and instead will address this issue when it arises in the context of trial."  *Id.*  The Court noted, however, that it had previously found that "'evidence of what occurred outside the Track One Counties is generally relevant to Defendants' conduct within the Track One Counties, and . . . [t]his is

4

particularly true because there is evidence that Defendants acted pursuant to practices and policies that were national in scope[,]'" and, for that reason, "in Track One-A, the Court found settlements occurring in West Virginia and Florida were admissible to demonstrate purposes other than liability, including to show a particular Defendant's knowledge or state of mind with respect to distribution claims involving the Track One Counties." *Id.* (quoting Dkt. #3058 (CT1A Evidentiary Order) at pp. 8, 13-15).

- **<u>Evidence of settlements relating to corporate entities other than the pharmacy defendants in this case</u>**:  The Court held that it could not "determine the admissibility of this evidence in the abstract and instead w[ould] decide the matter as it may arise in the context of trial." *Id.* at p. 32.

- **<u>Evidence of settlements unrelated to opioid medications</u>**:  Based on the plaintiffs' representation that they did not intend to present this evidence, and that if they changed their mind they would first seek leave from the Court outside the jury's presence, the Court held that "absent seeking and obtaining leave of Court beforehand, the parties shall not present evidence regarding settlements unrelated to opioid medications." *Id.* at p. 32.

For Track 3, the Court set a deadline of August 9, 2021, for filing motions *in limine*. Dkt. #3735 (CT3 Revised CMO) at p. 3; Dkt. #3758 (CT3 Trial Order) at p. 5.  The deadline was later extended to August 12, 2021.  On that date, Movants filed motions preserving certain objections to the Court's prior MIL rulings, including their objections to the Court's rulings regarding settlement-related evidence.  Dkt. #3838 (Ds' Omnibus Preservation Motion) at p. 4; Dkt. #3841 (WAG Preservation Motion) at pp. 2, 5.  Significantly, Movants did not file any MIL by the deadline requesting that the Court revisit its prior MIL rulings related to settlement evidence, or exclude any particular settlements, due to any changed circumstances warranting reconsideration.[2]

---

[2]  Although Movants filed several new motions *in limine*, none of them were specific to settlement-related evidence.

5

On September 20, 2021, over one month after the CT3 MIL deadline, CVS's counsel sent an e-mail to the Special Master asking for "guidance on an evidentiary issue that the Court has kept open for trial: which, if any, of the 12 settlement agreements between CVS and DEA that plaintiffs list in their trial brief are admissible to show notice." **Ex. 1** (9/21 E-mail Chain re: Track Three Evidentiary Issue) at pp. 2-3.  He argued that "[t]o avoid unfair prejudice, we want to ensure that plaintiffs do not raise these settlements in opening statements, or with witnesses, until and unless admissibility is determined in their favor." *Id*. at p. 3.  He further indicated that CVS wished to file a brief on the issue and asked how the Court wanted them to proceed. *Id*.

On September 22, 2021, the Special Master responded to CVS's e-mail with the Court's rulings.  *Id*. at pp. 1-2.  The Court reiterated the standard for admissibility under Rule 408 it previously set forth in its CT1A Evidentiary Order,[3] and stated that its prior rulings stood as to (i) the dollar amounts or relative size of settlements, and (ii) settlements unrelated to opioid medications.  *Id*. at p. 1.  With respect to the other three categories of settlement-evidence upon which it had previously deferred judgment, the Court ruled as follows:

> Plaintiffs may, in opening statements and at trial, refer to settlements related to extraterritorial dispensing conduct, because such settlements tend to show "CSA violations . . . in other parts of the country for failure to follow a national policy or protocol also applicable to . . . the Plaintiff Counties," and therefore, demonstrate notice.  Plaintiffs may also refer to settlements pertaining to dispensing conduct that occurred at any time, however, they may not refer to settlements related to distribution conduct that occurred after a Defendant stopped self-distributing prescription opioids. Finally, Plaintiffs may not refer to settlements entered into by other non-related, non-party corporate entities.

*Id*. at p. 2 (internal citation omitted).

---

[3]   "In its Track One-A Evidentiary Order, the Court laid out the general principles for the admission of prior settlements.  Under Federal Rule of Evidence 408, evidence of "conduct or a statement made during compromise negotiations" is not admissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  However, "Rule 408's protection applies only to the communications made during settlement negotiations; existence of the settlement itself is not privileged."  In sum, settlement negotiations are privileged; the existence of settlement agreements is not." *Id*. at p. 1 (internal citations omitted).

On September 23, 2021, Movants filed their Motions seeking reconsideration of the Court's rulings.  Although they refer generally to particular settlement agreements, Movants fail to attach any of these agreements to, or even reference them by bates number in, their Motions.

## LEGAL STANDARD

This Court, in this case and elsewhere, has repeatedly explained that movants face a heavy burden when seeking reconsideration:

> "Traditionally, courts will find justification for reconsidering interlocutory orders [only] when there is . . . a need to correct a clear error or prevent manifest injustice." "Motions for reconsideration are disfavored, and a motion for reconsideration is unfounded unless it either calls . . . attention to an argument or controlling authority that was overlooked or disregarded in the original ruling, presents evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law."

*In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2020 WL 5642173, at *1 (N.D. Ohio Sept. 22, 2020) (internal citations omitted).  *See also United States v. Hardin*, No. 1:19-CR-240, 2021 WL 514294, at *1 (N.D. Ohio Feb. 11, 2021) ("Three situations justify reconsideration: '(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or to prevent manifest injustice.'") (citation omitted); *United States v. Jones*, No. 16-CR-344, 2020 WL 7350436, at *1 (N.D. Ohio Dec. 15, 2020) (same); *Chafflose Corp. v. 3 M Innovation*, No. 1:10CV2178, 2010 WL 4318872, at *1 (N.D. Ohio Oct. 27, 2010) (motions for reconsideration are "disfavored" and "seldom granted"); *see also Miller v. Norfolk S. Rwy. Co.*, 208 F. Supp. 2d 851, 854 (N.D. Ohio 2002) (Carr, J.) ("Where a motion for reconsideration simply repeats the movant's earlier arguments, without showing that something material was overlooked or disregarded, presenting previously unavailable evidence or argument, or pointing to substantial error of fact or law, such motion is frivolous.").

Motions for reconsideration should be denied when they simply renew arguments already considered and rejected by the court.  *See Miller*, 208 F. Supp. 2d at 854-55 (publicly reprimanding counsel for filing frivolous motion for reconsideration that simply repeated movant's earlier arguments); *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D.

7

Ohio 1996) ("It is not the function of a motion to reconsider . . . to renew arguments already considered and rejected by a court[.]"); *Nat'l Prescription*, 2020 WL 5642173, at *1 (denying reconsideration as to a particular argument where defendants did "not raise any new argument nor cite any new controlling precedent that was not offered in the parties' original briefing . . ."); *Chafflose*, 2010 WL 4318872, at *1.  Motions for reconsideration should also be denied when they are based on new arguments or evidence that could have been presented during the court's initial consideration of the issue.  *See McConocha*, 930 F. Supp. at 1184 ("It is not the function of a motion to reconsider . . . 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'") (citation omitted); *Hardin*, 2021 WL 514294, at *1; *Jones*, 2020 WL 7350436, at *1 ("Courts should not reconsider prior decisions where the motion for reconsideration proffers new arguments that could have been discovered and offered during the initial consideration of the issue."); *Chafflose*, 2010 WL 4318872, at *1.  The fact that a party merely disagrees with the court's prior ruling is an issue to be raised on appeal, not on a motion for reconsideration.  *See McConocha*, 930 F. Supp. at 1184 (where "'defendant views the law in a light contrary to that of this Court,' its 'proper recourse' is not by way of a motion for reconsideration 'but appeal to the Sixth Circuit'") (citation omitted); *Miller*, 208 F. Supp. 2d at 853; *Nat'l Prescription*, 2020 WL 5642173, at *1 ("'The Defendants may disagree with the Court's decision, but that is an issue for appeal, not reconsideration.'") (citation omitted).

## ARGUMENT

Movants point to no intervening change in controlling law or new evidence to justify reconsideration.  Nor do they argue that reconsideration is required to prevent manifest injustice. And although they briefly claim, in conclusory fashion, that the Court erred,[4] they do not explain how the Court's rulings constitute "clear error" warranting reconsideration.  Rather, it is apparent

---

[4]     *See, e.g.,* Dkt. #3972 (CVS Motion) at p. 1 ("[T]he Court made an error of law regarding the scope of Rule 408."); Dkt. #3973 (Walmart Joinder) at p. 1 ("[T]he Court's email ruling that prior, extra-jurisdictional settlements with the DEA are admissible to show notice of CSA violations is erroneous in multiple respects.").

that Movants simply disagree with the Court's application of the law.  That is not a sufficient basis

for reconsideration:

> [A] trial court should not be called on to redo work that it did once, and believes that it did thoroughly and properly.  Disappointed counsel might sincerely believe that the Court of Appeals might find the work not to have been done properly.  But that does not justify making the trial court do the work again, unless it disregarded or overlooked a material argument or controlling authority in the original opinion, there is evidence that previously could not have been submitted, or there has been an intervening and controlling decision by a higher court, or the original order contains an indisputable and manifest error of fact or law.  Absent such, unhappy counsel should present his objections to the Court of Appeals, rather than the trial court.

*Miller*, 208 F. Supp. 2d at 854.  *See also McConocha*, 930 F. Supp. at 1184; *Nat'l Prescription*,

2020 WL 5642173, at *1.

As a preliminary matter, Movants complain that the Court changed course on evidentiary

issues it had previously held open for trial without providing an opportunity for argument or further

briefing, and without considering the various arguments raised in the Motions.  Dkt. #3972 (CVS

Motion) at p. 1; Dkt. #3974 (WAG Motion) at p. 2 n.1.  Not so.  First, it was CVS's counsel who

requested that the Court issue further pre-trial rulings on these previously open issues.

**Ex. 1** (9/21 E-mail Chain re: Track Three Evidentiary Issue) at pp. 2-3.  And he waited to do so

until well after the deadline for filing MILs in these cases had passed.  Movants could have easily

filed an MIL raising each and every point raised in their Motions if they believed that the

circumstances warranted a change in the Court's prior rulings.  Having chosen not to do so, they

cannot now complain about not having had an opportunity to be heard.

Moreover, the vast majority of the arguments and the case law set forth in the Motions have

previously been considered and rejected by this Court and, thus, are not an adequate basis on which

to grant reconsideration.  *See Miller*, 208 F. Supp. 2d at 854-55; *McConocha*, 930 F. Supp. at 1184;

*Nat'l Prescription*, 2020 WL 5642173, at *1; *Chafflose*, 2010 WL 4318872, at *1.[5]  For example,

---

[5]   All but three of the cases set forth in the Motion were cited in prior briefing and/or previously considered by the Court.  *Infra* at fn.7.

Movants argue again that their settlements with the DEA: (i) are inadmissible pursuant to Rule 408 and that the Court's prior rulings regarding Rule 408 from Track One-A were incorrect; (ii) are not admissible to show notice; (iii) are inadmissible to the extent they contain no admissions of liability and/or expressly disclaim liability; (iv) are irrelevant and unfairly prejudicial because they involve extra-territorial and/or dissimilar conduct;[6] (v) should not be admitted because they will distract and confuse the jury, and force Movants to spent their limited trial time refuting the allegations set forth therein; and (vi) should not be admitted until Plaintiffs first lay a foundation for their admissibility outside the presence of the jury.  *Compare* Dkt. #3972 (CVS Motion), Dkt. #3973 (Walmart Joinder), and Dkt. #3974 (WAG Motion), *with supra* at pp. 1-5.  In the interests of brevity, Plaintiffs will not relitigate these arguments, but instead incorporate by reference, as if fully set forth herein, the arguments asserted by the Track One plaintiffs in their motion *in limine* briefing.  Dkt. #2815 (Ps' CT1A MIL Opp.) at pp. 31-34, 53-59, 84-85; Dkt. #3464 (Ps' CT1A MIL Opp.) at pp. 28-44.

Movants' remaining arguments could have easily been raised in their prior briefing, and thus, also are not an adequate basis on which to grant reconsideration.  *See McConocha*, 930 F. Supp. at 1184; *Hardin*, 2021 WL 514294, at *1; *Jones*, 2020 WL 7350436, at *1; *Chafflose*, 2010 WL 4318872, at *1.[7]  Moreover, these arguments are substantively without merit.

---

[6]    Movants indicate that there are distinctions to be made between their settlements based on distribution conduct, which were at issue in Track One, and their settlements based on dispensing conduct, which the Court has not specifically analyzed.  *See, e.g.,* Dkt. #3972 (CVS Motion) at pp. 7-8; Dkt. #3974 (WAG Motion) at p. 2 & n.1.  But again, if Movants believed that any particular settlements constituted changed circumstances warranting a pretrial modification of the Court's prior rulings, it was incumbent upon them to file a motion *in limine* on the issue by the established deadline.  Significantly, although they make various assertions in their Motions about what is and is not in the various settlements at issue, they fail to actually attach the settlements to their Motions.  It is unclear how this Court could be expected to determine that a particular settlement must be excluded without seeing the settlements themselves.

[7]    Similarly, the three "new" cases CVS cites in its Motion all pre-date 2019, and thus easily could have been cited in Movants' prior briefing on this subject.  These cases are also entirely distinguishable and do not warrant reconsideration of this Court's prior rulings.  *See Old Chief v. United States*, 519 U.S. 172, 174, 183 n.7 (1997) (in criminal case where defendant was charged under statute prohibiting possession of a firearm by anyone with a prior felony conviction, district court abused its discretion

(footnote continues on next page)

10

For example, Movants now argue that any settlements in which they did not admit the DEA's contentions are excludable as inadmissible hearsay.  Dkt. #3972 (CVS Motion) at p. 6; Dkt. #3973 (Walmart Joinder) at p. 2.  Not so.  As a preliminary matter, the settlement agreements themselves are written contracts, which constitute non-hearsay.  *See, e.g., Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 764 (6th Cir. 2016) ("[U]nder the 'verbal acts' doctrine, writings and statements, such as contracts, that 'affect[ ] the legal rights of the parties' are not [hearsay].") (citations omitted); *Silicon Valley Telecom Exch., LLC v. Verio, Inc.*, No. C 12-00899 HRL, 2013 WL 4396744, at *4 n.2 (N.D. Cal. Aug. 13, 2013) ("The settlement agreement is not hearsay because it is a written contract that memorializes the fact of a legal agreement, and falls outside the definition of hearsay.").  Nor are the settlements (or their contents) considered hearsay if they are offered for a purpose other than the truth of the matter asserted (*e.g.*, to prove notice, state of mind, motive, pattern of conduct, or to provide context for actions taken as a result of the settlements).  FED. R. EVID. 801(c)(2); *see also, e.g.,* Dkt. #3464 (Ps' CT1A MIL Opp.) at p. 22

---

when it spurned defendant's offer to "concede the fact of the prior conviction" and instead admitted "the full record of [the] prior judgment, when the name or nature of the prior offense raise[d] the risk of a verdict tainted by improper considerations, and *when the purpose of the evidence is solely to prove the element of prior conviction*"; court noted that its "holding is limited to cases involving proof of felon status") (emphasis added); *United States v. Hatchett*, 918 F.2d 631, 641–42 (6th Cir. 1990) (in tax evasion case, trial court abused its discretion in excluding as hearsay videotaped segment of television broadcast which focused on purportedly oppressive collection techniques of local IRS office despite defendant's claim that he was not offering the videotape for its truth, but rather to test a government witness's "conclusion that [defendant's] failure to file a joint return for him and his wife was unusual"; "[T]he were no other facts in evidence by which to judge its truthfulness. No independent evidence had been admitted to prove the truth of the allegations made in the '60 Minutes' segment.  In cross examining the government's witness on his opinion that [defendant's] not filing a joint return was unusual, [defendant] needed a basis for his explanation that he was attempting to avoid the alleged pressure tactics of the IRS.  This basis lays only in the videotape; its truthfulness would have to have been assumed by the jury in order for [defendant's] proffered explanation to have had any validity."); *Lawler v. Richardson*, No. CIV.A. 10-196, 2012 WL 2362383, at *2 (E.D. Pa. June 20, 2012) (in § 1983 action, court properly excluded newspaper articles as inadmissible hearsay; "Plaintiff argues that the newspaper articles were not offered for the truth of the matter asserted, but to demonstrate that the City had notice that the police department's customs or policies were resulting in widespread constitutional violations.  However, in order to demonstrate that the City was on notice of these violations, we must assume that the violations and practices described in the articles actually occurred.  Thus, as the Court concluded at trial, it is apparent that Plaintiff was offering these articles for the truth of the matter asserted.").

& n.22.  Moreover, any findings by the DEA as a result of its investigations into Movants would likely fall within the public records exception to the hearsay rule.  FED. R. EVID. 803(8); *see, e.g., Dunkin v. Dorel Asia SRL*, No. 5:10-CV-00004 JWS, 2012 WL 1029070, at *2 (D. Alaska Mar. 23, 2012) (settlement agreement between bed manufacturer and Consumer Product Safety Commission was not inadmissible hearsay; "The agreement meets the criteria of Rule 803(8) . . . and is admissible as a public record.").  Indeed, each of these settlements were publicly announced by the Department of Justice, with hyperlinks to the settlement documents themselves, in order to notify the entire industry of what is expected regarding distribution and dispensing conduct and obligations under the CSA.  Movants certainly have not demonstrated that each of these settlements, and all of their contents, constitute hearsay as a matter of law.  If Movants believe some portion of a particular settlement constitutes hearsay, they can and should make an objection at trial at the time the settlement is offered into evidence.  But they have provided the Court no basis for making such a determination at this time, as they fail to attach any of the settlements to their Motions (or cite to any of the purportedly inadmissible portions of these settlements by bates-number).

Movants also argue that "[t]he particular settlements at issue here . . . are not relevant to any viable notice theory."  Dkt. #3972 (CVS Motion) at p. 4.[8]  Again, their failure to attach the relevant settlements to their Motions prevents the Court from assessing their arguments as to any particular settlement.  As a general matter, however, their arguments are without merit.  Their primary argument appears to be that any "notice"" provided by the settlements would depend on the truth of the allegations contained therein, which is prohibited under Rule 408.  Dkt. #3972

---

[8]   They fail to acknowledge that settlement agreements can also be admitted for purposes other than notice, as this Court has previously recognized.  *See, e.g,* Dkt. #3058 (CT1A Evidentiary Order) at p. 13 (agreeing settlement evidence "is relevant and permissible" to "establish a pattern of conduct that demonstrates: (1 Defendants knew their SOM systems were inadequate and likely to cause harm; and (2) Defendants' conduct was intentional and persisted over a length period of time."); Dkt. #3546 (CT1B Evidentiary Order) at p. 30 n.49 ("As a preliminary matter, the Court notes that 'notice' is not the only purpose for which this type of evidence may be admitted.  Thus, even if a particular piece of settlement-related evidence 'could not possibly establish notice,' it does not necessarily lead to the conclusion that a blanket exclusion is required.") (internal citation omitted).

(CVS Motion) at p. 1.  That is not the case.  Plaintiffs allege that Defendants' violations of the CSA and its regulations, and their failures to implement effective controls against diversion, resulted in a public nuisance in the Counties.  Dkt. #3883 (Ps' Trial Brief) at pp. 3-7.  Plaintiffs further allege that Defendants' conduct was intentional and that they knew their distribution and dispensing policies and practices did not comply with applicable legal standards.  *Id.*  Defendants, on the other hand, claim that their conduct was not only lawful, it often exceeded the legal requirements for distributing and dispensing.  *See, e.g.,* Dkt. #3881 (CVS Trial Brief) at pp. 2, 4; Dkt. #3884 (WAG Trial Brief) at p. 5; Dkt. #3885 (WMT Trial Brief) at p. 2.  They further claim that their pharmacies in the Counties were at all times "in good standing with the DEA and Ohio BOP" and were never "disciplined or sanctioned by the DEA or the Ohio BOP for filling a prescription for an opioid medication that they should not have filled."  Dkt. #3881 (CVS Trial Brief) at pp. 4-5.  Additionally, they argue that they provided their pharmacists with the necessary resources, tools, and data to comply with their CSA obligations.  *See, e.g.,* Dkt. #3881 (CVS Trial Brief) at pp. 5-6; Dkt. #3885 (WMT Trial Brief) at pp. 2-3.

Movants' various settlements with the DEA are therefore relevant to show, *inter alia*, that they were aware: (i)  of the full scope of their obligations under the CSA as it pertains to distributing and dispensing opioids; (ii) that failures to comply with the CSA often lead to diversion and harm to the public; and (iii) that the DEA has alleged that on numerous occasions they had violated the CSA in regards to their dispensing and/or distribution of opioids and failed to appropriately guard against diversion across the country.[9]  The fact that Movants had such knowledge, yet continued to distribute and dispense opioids into the Counties in violation of the CSA, demonstrates that their conduct was intentional and that the interference caused by their conduct was unreasonable.

---

[9]    Just as with their distribution policies and procedures, Movants had various nationwide dispensing policies and procedures that were created by each Movant's corporate office.

Movants claim that the settlement evidence is irrelevant because they do not dispute they had notice of the CSA regulations and the potential for harm when such regulations are violated. Dkt. #3972 (CVS Motion) at p. 4.  This argument is somewhat disingenuous, given that Movants have consistently disputed what specific obligations are imposed on opioid distributors and dispensers under these regulations.  *See, e.g.,* Dkt. #3340 (Ds' CT3 MTD).  Regardless, "[t]he fact to which the evidence is directed need not be in dispute" for the evidence to be relevant. FED. R. EVID. 401, Advisory Comm. Notes (1972 Proposed Rules).  The Supreme Court has recognized that, as a general rule, a plaintiff "is entitled to prove its case free from any defendant's option to stipulate the evidence away[,]" as "a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it."  *Old Chief*, 519 U.S. at 187-89.  Movants further argue any notice of what the DEA alleged could only be relevant if the underlying allegations were true.  Dkt. #3972 (CVS Motion) at p. 6.  Of course, this exact argument was rejected in *In re: E. I. Du Pont De Nemours & Co. C-8 Pers. Inj. Litig.*, No. 2:13-CV-170, 2016 WL 659112, at *54 (S.D. Ohio Feb. 17, 2016), as CVS acknowledges in its Motion.  Dkt. #3972 (CVS Motion) at p. 7.  CVS asserts, in conclusory fashion, that this decision "simply is wrong[,]" but it provides no contravening authority to support its argument.  Dkt. #3972 (CVS Motion) at p. 7.

Movants also argue that even if one settlement was admissible to show notice, it would be unfairly prejudicial to admit multiple settlements for that purpose.  Dkt. #3972 (CVS Motion) at pp. 1-2, 9.[10]  They cite no authority for this proposition.  Instead, CVS claims that it has "located no decision ever allowing into evidence this number of settlements for notice[,]" and further notes that it is "aware of no court ever allowing into evidence even a single settlement for notice that did not involve exact overlap in persons, facilities, or locations[.]"  Dkt. #3972 (CVS Motion) at p. 2. CVS evidently did not look hard enough.  *See, e.g., Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp.

---

[10]  Of course, different settlements may provide notice of different issues.  Moreover, the various settlements evidence the DEA's beliefs that Movants were violating the CSA repeatedly over a long period of time.

2d 157, 179–80 (E.D.N.Y. 2006) (consent decree properly admitted "for another purpose" under Rule 408; "The Consent Decree recites a variety of obligations that Wal–Mart voluntarily undertook before [plaintiff] was hired.  It did so as part of the settlement of a separate case in which it did not admit liability. . . .  I admitted the Consent Decree for the limited purpose of showing that Wal–Mart was aware of its obligations under the ADA; I did not admit it for purposes of showing that Wal–Mart was a poor corporate citizen, or that it had previously violated the ADA."), *aff'd,* 531 F.3d 127 (2d Cir. 2008); *Green v. Baca*, 226 F.R.D. 624, 642 (C.D. Cal. 2005) (holding plaintiff "may admit evidence of the number of settlements into which defendant entered with persons allegedly over-detained at the Los Angeles County Jail to show that defendant was on notice that there was an over-detention problem at the facility"), *order clarified on other grounds,* No. CV 02-204744MMMMANX, 2005 WL 283361 (C.D. Cal. Jan. 31, 2005); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, No. 3:11-MD-2244-K, 2017 WL 3841608, at *4-5 (N.D. Tex. June 28, 2017) (admission at trial of deferred prosecution agreement between defendant and the government that "involved different claims and different questions of liability . . . than those posed in this MDL" did not violate Rules 401, 403 or 408); *United States v. Jorgensen*, No. CRIM04-169(PAM/RLE), 2004 WL 1774529, at *3 (D. Minn. Aug. 8, 2004) (settlement agreements between defendants' employer and Northwest Airlines were admissible "to show [d]efendants' knowledge that Northwest Airlines disapproved of [their employer's] ticketing practices"); *cf. Tomas v. Hohlfelder Stamping, Inc.*, No. 94-L-156, 1996 WL 649113, at *8-9 (Ohio Ct. App. June 21, 1996) (trial court did not err in admitting evidence of informal settlement agreements between defendant and OSHA in 1987 and 1992; defendant's "violation of OSHA regulations was directly related to its claim that it had no knowledge of unsafe working conditions").[11]

---

[11]  In other contexts, courts have also recognized that multiple settlements may be relevant to show notice or knowledge.  *See, e.g., McClellan v. City of Sacramento*, No. 220CV00560TLNKJN, 2021 WL 1164487, at *3 (E.D. Cal. Mar. 26, 2021) (declining to strike allegations in complaint of seven settlements of civil cases in which excessive force was alleged against the city and police department; "Rule 408 'would not preclude *all* mentions' of the prior settlements, such as their 'existence and effect (footnote continues on next page)

15

Notably, in the Track Two trial, Judge Faber rejected similar arguments made by the distributor defendants and admitted multiple settlements between those defendants and the DEA involving distribution facilities outside the relevant jurisdictions. *See, e.g.,* **Ex. 2** (CT2 Trial Transcript Excerpts) at 5/12/21 Trial Tr., 226:18 – 227:3 (admitting P-00009, ABDCMDL00279854, 2007 Settlement and Release Agreement); 5/20/21 Trial Tr., 37:3 – 45:13 (admitting P-08873, CAH_MDL2804_02465968, 2008 and 2012 Cardinal-DOJ MOA), 47:7 – 48:7 (admitting P-02037, CAH_MDL2804_00135211, Cardinal 2016 Settlement Agreement (Lakeland, FL Settlement Agreement)); 5/24/21 Trial Tr., 83:6 – 84:14 (admitting P-23733, MCKMDL00337001, McKesson 2008 Settlement and Release Agreement and Administrative Memorandum of Agreement), 108:15 – 109:7 (admitting P-42554, MCKMDL00355350, McKesson 2017 MOU); 5/25/21 Trial Tr., 119:22 – 121:16 (admitting P-00013, MCKMDL00355350, McKesson 2017 MOA Settlement Agreement); 6/8/21 Trial Tr., 33:1 – 35:14 (admitting, P-00016, MCKMDL00496306, McKesson 2006 Settlement Agreement).[12]

## CONCLUSION

As discussed herein, Movants have failed to demonstrate circumstances warranting reconsideration of the Court's prior rulings. For these reasons, their Motions should be denied.

Dated: September 27, 2021

---

on Defendants' knowledge. Evidence of a city's settlement in an earlier police brutality action may be admitted to show the city is aware of wrongful conduct by its officers.") (internal citations omitted); *Lopez v. City of Fontana*, No. EDCV191727JGBSPX, 2020 WL 6694337, at *4 (C.D. Cal. Sept. 17, 2020) ("Settlements in prior excessive force cases may tend to show the City's knowledge or a developed custom or practice . . . or knowledge that a custom or practice was wrongful[.]") (internal citation omitted).

[12] Prior to the trial, the distributor defendants filed a motion *in limine* with Judge Faber seeking to revisit this Court's prior MIL rulings regarding settlement evidence. *City of Huntington v. AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2021 WL 1711381, at *2 (S.D.W. Va. Apr. 29, 2021). Judge Faber denied their motion: "The court agrees with Judge Polster that evidence regarding prior settlements is not barred by either Federal Rule of Evidence 408 or 403. Nor can the court find that such evidence is necessarily irrelevant to plaintiffs' public nuisance claim." *Id.* at *6.

Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

W. Mark Lanier
LANIER LAW FIRM
10940 W. Sam Houston Pkwy N., Ste 100
Houston, TX  77064
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Trial Counsel*

17

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Frank L. Gallucci
PLEVIN & GALLUCCI CO., L.P.A.
55 Public Square, Suite 222
Cleveland, OH 44113 (216)
861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088, Ext. 2007
hunter@napolilaw.com

*Counsel for Plaintiffs Lake County and
Trumbull County, Ohio*

18

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*<br>Peter H. Weinberger