# EXHIBIT
# 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

_____x
                                :
THE CITY OF HUNTINGTON,         :      Civil Action
                                :
            Plaintiff,          :      No.  3:17-cv-01362
                                :
v.                              :
                                :
AMERISOURCEBERGEN DRUG          :
CORPORATION, et al.,            :
                                :
            Defendants.  :
_____x
                                :
CABELL COUNTY COMMISSION,       :      Civil Action
                                :
            Plaintiff,          :      No. 3:17-cv-01665
                                :
v.                              :
                                :
AMERISOURCEBERGEN DRUG          :
CORPORATION, et al.,            :
                                :
            Defendants.  :
_____x


BENCH TRIAL - VOLUME 8
BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA


MAY 12, 2021

```
 1               THE COURT:  Yes.
 2    BY MR. FARRELL:
 3    Q.   I'm going to hand you what's P-9.  I'll give you a
 4    second to read it.  Is this the Settlement Agreement and
 5    Release that you entered into on behalf of
 6    AmerisourceBergen following the Immediate Suspension
 7    Order?
 8         (Pause)
 9         Mr. Zimmerman, please tell me when you're ready.
10    A.   Yep.
11    Q.   This is a settlement agreement dated June 22, 2007.
12    Have you seen this document before?
13    A.   I have.
14    Q.   Can you verify and validate that this is the settlement
15    agreement entered into between the DEA and AmerisourceBergen
16    following the Immediate Suspension Order we just discussed?
17    A.   Yes.
18              MR. FARRELL:  Judge, I'd ask for the admission of
19    P-9.
20              THE COURT:  Any objection?
21              MR. NICHOLAS:  No objection.
22    BY MR. FARRELL:
23    Q.   As you go to Page 2 --
24              THE COURT:  Wait a minute.
25              MR. HESTER:  No objection, Your Honor.
```

```
 1              MS. MAINIGI:  No objection.

 2              THE COURT:  There being no objection, it's

 3    admitted.

 4    BY MR. FARRELL:

 5    Q.   Let's go to Page 2.  There's no admission of fault

 6    in this, is there, sir?

 7    A.   That's what it says, yeah.

 8    Q.   But if you look at Paragraph 3, "Covered Conduct," it

 9    includes not only the facility -- I wish I had my glasses --

10    in Orlando, but this release also covers all other

11    distribution facilities controlled by AmerisourceBergen with

12    respect to all sales of ARCOS reportable controlled

13    substances.  Correct?

14    A.   Yes.

15    Q.   You negotiated a release on behalf of every

16    distribution center in America; correct?

17    A.    It includes -- the system included all distribution

18    centers, correct.

19    Q.   And, in fact, they list -- on the back page they list

20    an appendix.  And one of those distribution centers included

21    in this release and agreement is the Lockbourne, Ohio, one

22    that shipped to Huntington/Cabell County.  Agreed?

23    A.   I would assume so.

24    Q.   Let's go back to Page 2, "Obligations of

25    AmerisourceBergen."  You negotiated an agreement with the
```

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

_____x
                                :
THE CITY OF HUNTINGTON,         :      Civil Action
                                :
            Plaintiff,          :      No.  3:17-cv-01362
                                :
v.                              :
                                :
AMERISOURCEBERGEN DRUG          :
CORPORATION, et al.,            :
                                :
            Defendants.  :
_____x
                                :
CABELL COUNTY COMMISSION,       :      Civil Action
                                :
            Plaintiff,          :      No. 3:17-cv-01665
                                :
v.                              :
                                :
AMERISOURCEBERGEN DRUG          :
CORPORATION, et al.,            :
                                :
            Defendants.  :
_____x


BENCH TRIAL - VOLUME 14
BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA


MAY 20, 2021

```
 1    have a recollection of those, correct?
 2    A.   I do.
 3              MR. FULLER:  8873.
 4              BY MR. FULLER:
 5    Q.   Mr. Mone, do you recognize this document?
 6    A.   I do not.
 7    Q.   Do you recognize individuals on the document?
 8    A.   I'm sorry?
 9    Q.   Do you recognize the individuals on the document?
10    A.   I do.
11    Q.   Is that Mr. Giacalone again?
12    A.   It is from Mr. Robert Giacalone on January 25th of
13    2016.
14    Q.   And there are some attachments to this document; is
15    that correct?
16    A.   It's a rather large packet, so yes, there are
17    attachments.
18    Q.   And if you look, there are some of the Rannazzisi
19    letters.  If you will turn to Page 15, and if you look at
20    the bottom, there's page numbers down there?
21    A.   Yeah.
22    Q.   See if you recognize that document.
23    A.   The -- the Page 15 is a cover page for a 2012 DEA MOA.
24    Q.   And are you familiar with that document?
25              MS. MAINIGI:  Objection, Your Honor.  Yesterday
```

1    there were some questions that I did not object to at all

2    related to the 2008 action and the 2012 action, but it seems

3    that Mr. Fuller is looking for admission of these documents,

4    as well as to gain testimony related to those two actions,

5    and we've got a number of objections.

6        We've got a hearsay objection, but we have also a

7    personal knowledge objection with respect to Mr. Mone, and

8    then we've got a geographic scope objection.  Both of these

9    actions have nothing to do with West Virginia.

10       The 2008 action relates to four distribution centers

11   outside of West Virginia.  The 2012 action relates to one

12   Distribution Center in Florida, as well as four pharmacies

13   in Florida.  So, there is absolutely no demonstrable nexus

14   to Cabell-Huntington and no other aspects of the tests that

15   you have laid out for geographic scope is met either, Your

16   Honor.

17       And just for the purpose of the record, we also reserve

18   our objections on motion in limine to the Court.

19            THE COURT:  Mr. Fuller?

20            MR. FULLER:  Yes, Your Honor, if I might, let me

21   lay a little more of a predicate, if it's okay with the

22   Court.

23            THE COURT:  All right.  Go ahead.

24            BY MR. FULLER:

25   Q.   Mr. Mone --

```
 1              THE COURT:  I'll reserve ruling on the objection.
 2    Go ahead.
 3              MR. FULLER:  Thank you, Judge.
 4              BY MR. FULLER:
 5    Q.   Mr. Mone, the system that you put in place, was it
 6    limited to any geographical area within the United States?
 7    A.   The system that was put in place was a system that was
 8    designed to identify and report suspicious orders for any
 9    customer of Cardinal Health.
10    Q.   Any customer in the country, right?
11    A.   That is correct.
12    Q.   Shipping out of any Distribution Center, correct?
13    A.   That is correct.
14    Q.   So, it was a centralized system run out of Dublin,
15    Ohio, correct?
16    A.   It was a centralized system that involved the
17    individual orders for individual pharmacies by individual
18    distribution centers.
19    Q.   Operated out of Dublin, Ohio, correct?
20    A.   The operation of the assessment was done in Dublin,
21    Ohio.
22    Q.   You had an electronic system that was maintained in
23    Dublin, correct?
24    A.   I'm going to assume that the computers were in Dublin.
25    I don't know where the computers were, but the technology --
```

1    the team was in Dublin.

2    **Q.**    The team?

3    **A.**    The immediate team.  It expanded into the distribution

4    centers, as well, but with the office.

5    **Q.**    And then, when you arrived in December of 2012, the

6    system that you were revamping was also a nationally based

7    system based on what's called Ingredient Limit Reports,

8    correct?

9    **A.**    Well, I have to correct you when I arrived.  I arrived

10   in 2007, not 2012.

11   **Q.**    I'm sorry.  In December of 2007.

12   **A.**    It was a system that was -- the system that was in

13   place when I arrived was a -- a migration from the ILR

14   system into -- we had already begun the process of

15   integrating into a new electronic system.

16   **Q.**    And the ILR system was a nationally based system,

17   correct?

18   **A.**    The ILR system -- the ILR system occurred at the

19   distribution centers.

20   **Q.**    But it was the same system across the country, right?

21   Each Distribution Center ran an ILR and submitted those on a

22   monthly basis; is that correct?

23   **A.**    My understanding is that each individual Distribution

24   Center ran their own reports and submitted those to the Drug

25   Enforcement Administration.  I do not know whether anything

1    occurred centrally.

2    **Q.**   And Mr. Reardon ran that program; is that right?

3    **A.**   Mr. Reardon was in charge of that program.

4    **Q.**   Mr. Reardon and his team was based in Dublin, Ohio,

5    correct?

6    **A.**   Mr. Reardon's office was in Dublin, Ohio.

7          MR. FULLER:  Your Honor, I think I've now laid the

8    predicate that these are national systems.

9          THE COURT:  Ms. Mainigi?

10          MS. MAINIGI:  I disagree, Your Honor.  I think we

11    just heard testimony -- as it relates to the 2008, I think

12    we just heard testimony from Mr. Mone that they were run out

13    of the distribution centers.  The 2008 action related to

14    Auburn, Washington; Lakeland, Florida; Swedesboro, New

15    Jersey; and Stafford, Texas.  There was nothing that related

16    to Cabell-Huntington.  There is a Distribution Center in

17    Wheeling, West Virginia that was not part of the 2008

18    action.

19          If I go back, Your Honor, to -- to the test you laid

20    out that the plaintiffs have to meet in order to get in

21    evidence beyond Cabell-Huntington, they first need to show a

22    demonstrable nexus to Cabell-Huntington.  These two MOUs

23    have no demonstrable nexus to Cabell-Huntington.  I don't

24    think they would dispute that.

25          Second, they could show national trends in shipment.

 1     MOUs would not show any national trends in shipment.  Third,

 2     systemic failure.  If they are trying to say that these

 3     isolated MOUs that occurred in first four, and then one

 4     Distribution Center well far away from Cabell-Huntington,

 5     when there are 27 distribution centers that Cardinal has all

 6     over the country, that somehow that's evidence of some

 7     failure in Cabell-Huntington, that's absolutely wrong.

 8          There's no way that distribution centers that don't

 9     service Cabell and Huntington in any way, shape or form that

10     were implicated in those MOUs could somehow demonstrate some

11     systemic failure that affected Cabell-Huntington.

12          If they want to show that the system was faulty, then

13     we ought to see some evidence of that in Cabell-Huntington

14     and we welcome them putting on some evidence of that in

15     Cabell-Huntington, but bringing in settlement agreements

16     that have nothing to do with Cabell-Huntington is just a

17     complete waste of time and contrary to what Your Honor has

18     ruled.

19               THE COURT:  It looks to me like, I mean, the -- it

20     is arguably relevant to whether or not there is a systemic

21     failure.  I think it is a -- this goes to the weight rather

22     than the admissibility on that issue and -- and I am going

23     to let it in as it relates to the issue of the systemic

24     failure.

25          The system was designed to cover all of the operations

1     here and it broke down in a couple of instances that were

2     far removed apparently from Cabell-Huntington, but it does

3     relate to the overarching issue of the systemic failure to a

4     certain extent and I'll consider it insofar as it's relevant

5     to that.

6          Mr. Hester?

7          MR. HESTER:  Your Honor, again, we have a hearsay

8     objection to this.  We understand that the statement was

9     made, and -- but we would object to its introduction for the

10    truth of the matter asserted.

11         MS. KEARSE:  And, Your Honor, I think -- I know

12    I've been sitting quietly, but I think we have an objection

13    --

14         COURT REPORTER:  I'm sorry.  I'm having a hard

15    time hearing you.

16         MS. KEARSE:  I'm sorry.  I'm used to having my

17    mask on.

18         Anne Kearse, Your Honor.  I've been sitting here

19    quietly, but I would like to invoke the same rule.  We have

20    one witness, one person who is objecting, and one person who

21    is defending this witness.  This is a Cardinal discussion

22    right now.  We have McKesson raising objections, as well.

23         So, I would like to object and say we have the same

24    rule we have now, one lawyer, one witness defending --

25         THE COURT:  Well, I think one lawyer for each

 1    party with regard to each witness.

 2            MR. KEARSE:  Yeah.  It's not being offered against

 3    McKesson, Your Honor.

 4            MR. HESTER:  Well, Your Honor, Your Honor, I would

 5    say once the document comes in for the truth, it's a

 6    document that would be relevant evidence against McKesson.

 7    So, it seems to me we're entitled to object.

 8            THE COURT:  Mr. Nicholas, you want to say

 9    something?

10            MR. NICHOLAS:  Not really.

11            THE COURT:  Well, you're supposed to stand up when

12    you address the Court, too.

13            MR. NICHOLAS:  I apologize, Your Honor.

14            THE COURT:  Okay.

15            MS. MAINIGI:  Your Honor, just for the purpose of

16    the record, I also maintain our hearsay objection.  Thank

17    you.

18            THE COURT:  All right.  I'm not going to consider

19    it for the hearsay, but I will admit it, for what it's

20    worth, on the issue of the systemic failure, although --

21    well, if we cut out all the hearsay of this, there's not

22    much left, is there, Mr. Fuller?

23            MR. FULLER:  Well, Judge, I've been told to cite

24    the rules on my piece of paper.

25            THE COURT:  Okay.

1            MR. FULLER:  So, under 801(d)(2)(A), a statement

2     made by the party and in the individual purpose of their

3     capacity, Cardinal signed the MOAs.  So, they are admissions

4     by Cardinal.

5         And 801(d)(2)(B), statements of one of the parties

6     manifested, or adopted, or believed to be true, they signed

7     off on these MOAs, Your Honor.

8            MS. MAINIGI:  Your Honor, we disagree with that.

9     We don't think that there are admissions and we think it's

10    barred by 408.

11           THE COURT:  All right.  I'm going to -- I'm going

12    to admit it without -- and try to keep -- not consider the

13    hearsay at this point.

14        Go ahead, Mr. Fuller.

15           MR. FULLER:  Yes, Your Honor.

16           BY MR. FULLER:

17    **Q.**   And, Mr. Mone, in 2012, the next action began with an

18    administrative inspection warrant.  Were you aware of that

19    being served at the Cardinal Distribution Center?

20    **A.**   I was.

21    **Q.**   And were you involved in that process?

22    **A.**   I was not.

23           MS. MAINIGI:  Your Honor, I just want a continuing

24    objection to this line of questioning.

25           THE COURT:  All right.  The record will so show.

```
 1    afield here, Mr. Fuller.  I'm going to sustain the objection

 2    to that.

 3              MR. FULLER:  Your Honor, one last one.

 4              THE COURT:  I'm encouraged by your referring to

 5    this as one last one.

 6              BY MR. FULLER:

 7    Q.   Mr. Mone, do you recognize this document?

 8    A.   I do not.

 9    Q.   Were you aware that Cardinal entered into a Settlement

10    Agreement with the DOJ and DEA in 2016 based on the 2012 MOU

11    action?

12              MS. MAINIGI:  Your Honor, this relates to --

13    objection, I'm sorry.  This relates to the same action that

14    we were just talking about, the Lakeland.  This is the

15    Lakeland settlement.

16              THE COURT:  What's the purpose of this, Mr.

17    Fuller?

18              MR. FULLER:  Your Honor, this is the Settlement

19    Agreement that's related to the second MOU.  If you turn to

20    Page 3, Cardinal specifically signed off on and admits to

21    violations of the Controlled Substance Act based on its

22    system that was in place.  I agree that these violations

23    relate to the Lakeland Distribution Center, but it is a

24    nationally operated system, particularly under Mr. Mone.

25              THE COURT:  Well, I think this relates to the
```

1    issue of the systemic failure and I'm going to admit it, Ms.

2    Mainigi.

3            MS. MAINIGI:  Your Honor, thank you.  I just want

4    to respond to Mr. Fuller's allegation that the --

5            THE COURT:  Okay.

6            MS. MAINIGI:  Any admissions related to Lakeland.

7    Thank you, Your Honor.

8            MR. FULLER:

9    Q.   Mr. Mone, when you came in in December of 2007, you

10   took on to review the system that was in existence, correct?

11   A.   I did.

12   Q.   And did you review how that system operated?

13   A.   I did not review the specifics of how the system

14   operated.

15   Q.   And then you started building your own system, correct?

16   A.   I did not.  I continued the already established -- the

17   already in-process changes that were being made to the

18   system.

19   Q.   I'm sorry.  You did tell me that before.  You mentioned

20   that there was -- you mentioned that there was a Phase 1 in

21   place, I believe?

22   A.   I -- I don't believe I used the term Phase 1.  There --

23   the -- the system was migrating from the ILR system into the

24   new electronic reporting system and it had already begun

25   when I got there.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

_____x
                                :
THE CITY OF HUNTINGTON,         :        Civil Action
                                :
             Plaintiff,         :        No.  3:17-cv-01362
                                :
v.                              :
                                :
AMERISOURCEBERGEN DRUG          :
CORPORATION, et al.,            :
                                :
             Defendants.  :
_____x
                                :
CABELL COUNTY COMMISSION,       :        Civil Action
                                :
             Plaintiff,         :        No. 3:17-cv-01665
                                :
v.                              :
                                :
AMERISOURCEBERGEN DRUG          :
CORPORATION, et al.,            :
                                :
             Defendants.  :
_____x


BENCH TRIAL - VOLUME 16
BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA


MAY 24, 2021

1   dated April 30th, 2008.  Do you see that?

2   **A.**   Yes, I do.

3   **Q.**   So, this is signed by both the President and the Senior

4   Vice President at the time of McKesson, Corp.;  true?

5   **A.**   Yes.

6           MR. RAFFERTY:  At this time, Your Honor, we would

7   move to admit 23733.

8           MR. SCHMIDT:  And, Your Honor, we'll renew the

9   objection we made pretrial and that's been made throughout

10  trial, which is this is inadmissible under 403 and it is

11  simply allegations with no acceptance of responsibility, but

12  also geographic scope because it relates to facilities that

13  did not primarily supply to Huntington-Cabell.

14          THE COURT:  Mr. Rafferty, do you want to respond

15  to that?

16          MR. RAFFERTY:  Yeah.  This is the -- these are the

17  settlements, this one, and then there was a 2017 settlement

18  that was a subject of the motions in limine that Your Honor

19  ruled on pretrial as to their admissibility, agreeing with

20  Judge Polster as to their admissibility and going to notice

21  and is not hearsay.

22          THE COURT:  Mr. Ackerman, we haven't heard from

23  you here.

24          MR. ACKERMAN:  Always happy to jump in, Your

25  Honor.  Well, I would refer you --

1              MR. RAFFERTY:  I didn't convince you?

2              MR. ACKERMAN:  I would refer the Court to

3    801(d)(2)(B), as in broccoli.  A statement the party adopted

4    or believed to be true is our settlement and release

5    agreements, memorandum of agreements, that are signed by

6    McKesson.

7              MR. SCHMIDT:  Yeah.  And under that grounds, I

8    think it especially stays out.  It says this agreement is

9    neither an admission by McKesson of liability or of any

10   allegations made by DEA in the orders and investigation.

11             MR. ACKERMAN:  It's evidence that the allegations

12   were made, Your Honor.

13             THE COURT:  I'll overrule the objection and admit

14   it.

15             MR. RAFFERTY:  Thank you, Your Honor.

16             BY MR. RAFFERTY:

17   **Q.**   And, in fact, you received a copy of this Settlement

18   Agreement?

19   **A.**   Yes, I did.

20   **Q.**   Okay.  So, you're familiar with this Settlement

21   Agreement, correct?

22   **A.**   Somewhat familiar, yes.

23   **Q.**   In fact, if I'm not mistaken, you had a two-day meeting

24   with you and the other Regulatory Affairs -- Regulatory --

25   Regulatory Affairs folks at McKesson about this particular

1    **A.**    Yes, I'm' ready.

2    **Q.**    Okay.  You see at the top of this particular document

3    it says Administrative Memorandum of Agreement.  Do you see

4    that?

5    **A.**    Yes.

6    **Q.**    And it reads the Administrative Memorandum of Agreement

7    as entered into by and between the United States Department

8    of Justice, Drug Enforcement Administration, and McKesson

9    Corporation, each a party and collectively the parties.  Do

10   you see that?

11   **A.**    Yes.

12   **Q.**    And, in fact, you received a copy of this in your -- in

13   the course and scope of your work with McKesson; true?

14   **A.**    Yes, I did.

15          MR. RAFFERTY:  Your Honor, at this time, I would

16   move to enter into evidence P-42554.

17          THE COURT:  Is there any objection to 42554?

18          MR. SCHMIDT:  Yes.  Two, Your Honor.  First, we

19   object to this for the same reason we objected to the 2008

20   ruling, which is probably covered by Your Honor's ruling,

21   but we want to preserve our objection to that.

22          Second, there's an appendix missing to this.  There's

23   several, but there's one that matters a little bit.  And, so

24   if we can just add that appendix with agreement, then that

25   resolves that issue.

```
1              THE COURT:  Well, if you -- I'll accept that, Mr.
2    Rafferty.  I will admit it subject to the same restrictions
3    that I admitted the 2008.
4              MR. RAFFERTY:  Yes, sir.
5              MR. SCHMIDT:  And just with us preserving our
6    objection.
7              THE COURT:  Yes.
8              MR. SCHMIDT:  Thank you, Your Honor.
9              MR. RAFFERTY:  Thank you, Your Honor.
10             BY MR. RAFFERTY:
11   Q.   Okay.  If we look at this particular document, sir, if
12   you'll look first at Page 2, and Paragraph seven, it says on
13   or about November 14th, 2014, McKesson received a letter
14   dated November 4, 2014 from the DEA Office of Chief Counsel,
15   Diversion Regulatory and Litigation Section, stating that
16   DEA was separately pursuing administrative action against
17   McKesson Arora for the conduct outlined in the August 13,
18   2014 letter.  McKesson Arora, that is a Distribution Center
19   of McKesson, is it not, sir?
20   A.   Yes, it is.
21        Excuse me one minute, Your Honor.  Your Honor?  Your
22   Honor?
23             THE COURT:  Yes?
24             THE WITNESS:  My screen went off.
25             THE COURT:  Okay.  Can we -- can we fix that?
```

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

```
_____x
                               :
THE CITY OF HUNTINGTON,        :      Civil Action
                               :
          Plaintiff,           :      No.  3:17-cv-01362
                               :
v.                             :
                               :
AMERISOURCEBERGEN DRUG         :
CORPORATION, et al.,           :
                               :
          Defendants.          :
_____x
                               :
CABELL COUNTY COMMISSION,      :      Civil Action
                               :
          Plaintiff,           :      No. 3:17-cv-01665
                               :
v.                             :
                               :
AMERISOURCEBERGEN DRUG         :
CORPORATION, et al.,           :
                               :
          Defendants.          :
_____x
```

BENCH TRIAL - VOLUME 17
BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

MAY 25, 2021

```
 1                THE WITNESS:  That is correct, Your Honor.

 2    BY MR. SCHMIDT:

 3    Q.   All right.  Let's jump ahead.

 4                MR. SCHMIDT:  If I could just have one moment,

 5    Your Honor.

 6         (Pause)

 7                MR. SCHMIDT:  Your Honor, while I'm having a

 8    document pulled, I'm next going to show the witness the 2017

 9    settlement he was shown yesterday over our objection just

10    with the request that we preserve our objection to its

11    admission --

12                THE COURT:  All right.

13                MR. SCHMIDT:  -- on a running basis.

14         And Your Honor might recall -- counsel will recall that

15    when you introduced this, I said we would ask for a copy to

16    introduce the exhibit with the appendices.  I'm going to go

17    ahead and move that version in now which is a different

18    version from the plaintiffs' list which is P-1320.

19         May I approach and pass that out if I may?

20                THE COURT:  Yes.

21                THE WITNESS:  Thank you.

22                MR. SCHMIDT:  And just with that preservation of,

23    of the objection generally, I move P-13 into evidence which

24    is what was previously marked but just with the agreement we

25    had about attaching the appendices.
```

```
 1              THE COURT:  Any objection to this?

 2              MR. ACKERMAN:  This one looks like it starts with

 3    Appendix B.

 4        So, again, Your Honor, this might be one of those

 5    things that Mr. Schmidt and me and Mr. Rafferty can work out

 6    in the middle of, or at the lunch break just to figure out

 7    whether these pages are in the right order or not.  They may

 8    not be.

 9              MR. SCHMIDT:  I'll represent that they are.  This

10    came from an exhibit that your side marked.

11              MR. ACKERMAN:  Uh-huh.

12              MR. SCHMIDT:  I'll confess I don't know why it has

13    Appendix B.  I think it was probably pulled from

14    attachments.  I'm happy to rip out Appendix B because it's

15    irrelevant to the purpose and we can treat the rest of the

16    document --

17              MR. ACKERMAN:  I see.  I see.  So the first page

18    here can come off.  So I think that's fine.

19              MR. SCHMIDT:  If I may, Your Honor, and we can

20    submit a new copy to the Court after.  We will remove the

21    first page of what I previously requested be marked as

22    Exhibit B -- as Exhibit P-13 and, instead, request that we

23    move in Exhibit P-13 from pages 2 through 67.

24              THE COURT:  So this -- you're substituting a

25    different Appendix B?  Is that what --
```

```
 1              MR. SCHMIDT:  No.  What I'm doing is two things:
 2     Ripping off the first page which I think this was just
 3     attached to some other document.  So the first page goes
 4     away.  And then --
 5              THE COURT:  Is that the page that says Appendix B?
 6              MR. SCHMIDT:  Yes.  That can just come off.
 7              THE COURT:  That that just comes off?
 8              MR. SCHMIDT:  Yes, please.
 9              THE COURT:  All right.
10              MR. SCHMIDT:  And then the rest of the document is
11     the same as what was introduced yesterday with the addition
12     of appendices to the actual settlement agreement itself.
13              THE COURT:  Are you -- do you have any objection
14     to that, Mr. Ackerman?
15              MR. ACKERMAN:  No, Your Honor.
16              THE COURT:  Okay.  It's admitted.
17     BY MR. SCHMIDT:
18     Q.   Do you recognize this as the settlement agreement
19     you discussed with plaintiffs yesterday?
20     A.   Yes.
21     Q.   I want to focus on something on the first page.  If we
22     look at the paragraph on the first page, do you see it
23     references an event on March 12, 2013, where DEA executed an
24     administrative inspection warrant at McKesson Aurora?
25     A.   Yes, I see that.
```

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

```
_____x
                               :
THE CITY OF HUNTINGTON,        :      Civil Action
                               :
            Plaintiff,         :      No.  3:17-cv-01362
                               :
v.                             :
                               :
AMERISOURCEBERGEN DRUG         :
CORPORATION, et al.,           :
                               :
            Defendants.  :
_____x
                               :
CABELL COUNTY COMMISSION,      :      Civil Action
                               :
            Plaintiff,         :      No. 3:17-cv-01665
                               :
v.                             :
                               :
AMERISOURCEBERGEN DRUG         :
CORPORATION, et al.,           :
                               :
            Defendants.  :
_____x
```

BENCH TRIAL - VOLUME 22
BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

JUNE 8, 2021

1          MS. SINGER:  Your Honor, I would move to admit

2     just Pages 4 to 6, the Order to Show Cause that Mr.

3     Rannazzisi signed.

4          MR. SCHMIDT:  Your Honor, we'll object to that

5     motion in terms of, number one, these are simply allegations

6     that were made in a court filing.  Number two, the entire

7     court filing is McKesson's response to these allegations.

8     So, if it was going to come in, it would have to come in,

9     all of it, not just the cherry-picked allegations of the

10    government, but the governmental allegations themselves

11    should not come in.

12         THE COURT:  So, you think I ought to admit the

13    whole file?

14         MR. SCHMIDT:  I think none of it should come in,

15    but if anything comes in, it should all come in.

16         THE COURT:  Ms. Wicht?

17         MS. WICHT:  Your Honor, I'm rising only because I

18    saw Mr. Ackerman rise and I wanted to note that Ms. Singer

19    and Mr. Ackerman represent the same party in this case.

20    They work for the same law firm.  And I believe that it

21    would be proper for there to be only one person objecting

22    and arguing objections during the examination.  Thank you.

23         MR. ACKERMAN:  Can I address that, Your Honor?  I

24    will try to do it quickly.

25         THE COURT:  Okay, go ahead.

```
 1          MR. ACKERMAN:  I don't think there's a rule that

 2     they can cite that says one person can't argue objections.

 3     We're trying to do this in order to keep -- in order to move

 4     the trial along.  We know we've got timing issues and this

 5     is an efficiency issue.

 6          THE COURT:  Well, I took this up a long time ago

 7     way back in the early history of this case and I think I

 8     ruled that it was one lawyer per witness per party and I've

 9     consistently violated that ruling, there being no objection

10     to it, but there's an objection now, so I'm going to sustain

11     Ms. Wicht's objection.

12       And it's up to you, Ms. Singer.

13          MS. SINGER:  Oh, Your Honor, that breaks my heart.

14     All right.  Maybe there could be an exception given that DOJ

15     is here so we've now got one more on that side, but I will

16     try to fill Mr. Ackerman's shoes.

17          THE COURT:  Mr. Farrell?

18          MR. FARRELL:  I'd be willing to lend my proxy to

19     Mr. Ackerman as counsel for Cabell County.

20          THE COURT:  Well, I'm sure that's a generous

21     offer, but I don't think it falls within the purview of the

22     Court's ruling.

23       So, go ahead, Ms. Singer.

24          MS. SINGER:  I will do my best, Your Honor.

25          MS. SINGER:  Under FRE 8038(a)(1), this document
```

1    is a record of a public office that, quote, sets out the

2    office's activities.

3              THE COURT:  Shouldn't the whole file come in

4    rather than just the part you've pulled out?

5              MS. SINGER:  We -- we don't object to that, Your

6    Honor.

7              THE COURT:  Is that what you want, Mr. Schmidt?

8              MR. SCHMIDT:  If any of it comes in, that's what

9    we want.  We maintain our objection to any of it coming in.

10             THE COURT:  You object to all of this, but if I

11   let any of it in at all, you want it all in?

12             MR. SCHMIDT:  Yes, Your Honor.

13             THE COURT:  Okay.  I'm going to admit P-00016.

14   It's admitted, the whole file.

15             BY MS. SINGER:

16   **Q.**  When did DEA issue this Order to Show Cause against

17   McKesson?

18   **A.**  The Order to Show Cause was issued August 4th.

19   **Q.**  Of what year?

20   **A.**  2006.

21   **Q.**  Take a drink, please.

22   **A.**  May I have another bottle of water, please?  Thank you.

23             THE COURT:  Absolutely.  Is there a bottle

24   anywhere?

25             THE WITNESS:  Thank you.