IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: | Case No. 1:17-md-2804 |
| NATIONAL PRESCRIPTION | Cleveland, Ohio |
| OPIATE LITIGATION | |
| | September 28, 2021 |
| CASE TRACK THREE | 12:15 p.m. |

- - - - -

TRANSCRIPT OF FINAL PRETRIAL PROCEEDINGS,

BEFORE THE HONORABLE DAN A. POLSTER,

UNITED STATES DISTRICT JUDGE.

- - - - -

Official Court Reporter: Susan Trischan,RMR,CRR,FCRR,CRC
7-189 U.S. Court House
801 West Superior Avenue
Cleveland, Ohio  44113
216-357-7087
Susan_Trischan@ohnd.uscourts.gov

Proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.

```
 1   APPEARANCES:
     For the Plaintiffs:        Peter H. Weinberger, Esq.
 2                              Spangenberg, Shibley & Liber
                                1001 Lakeside Avenue, Ste. 1700
 3                              1900 East Ninth Street
                                Cleveland, Ohio    44114
 4                              216-696-3232

 5                              W. Mark Lanier, Esq.
                                Rachel Lanier, Esq.
 6                              M. Michelle Carreras, Esq.
                                The Lanier Law Firm
 7                              6810 FM 1960 West
                                Houston, Texas    77069
 8                              813-659-5200

 9                              Frank L. Gallucci, III, Esq.
                                Plevin & Gallucci Company, LPA
10                              The Illuminating Building
                                Suite 2222
11                              55 Public Square
                                Cleveland, Ohio    44113
12                              216-861-0804

13                              Salvatore C. Badala, Esq.
                                Napoli Shkolnik
14                              360 Lexington Ave., 11th Floor
                                New York, New York   10017
15                              212-397-1000

16   For Walgreen Defendants:   Kaspar J. Stoffelmayr, Esq.
                                Brian C. Swanson, Esq.
17                              Katherine M. Swift, Esq.
                                Alex Harris, Esq.
18                              Sharon Desh, Esq.
                                Bartlit Beck LLP
19                              54 West Hubbard Street
                                Suite 300
20                              Chicago, Illinois   60654
                                312-494-4400
21
     For CVS Defendants:        Graeme W. Bush, Esq.
22                              Eric R. Delinsky, Esq.
                                Alexandra W. Miller, Esq.
23                              Paul B. Hynes, Jr., Esq.
                                Zuckerman Spaeder - Washington
24                              Suite 1000
                                1800 M Street, NW
25                              Washington, DC   20036
                                202-778-1831
```

```
 1    For HBC/Giant Eagle
      Defendants:                 Robert M. Barnes, Esq.
 2                                Scott D. Livingston, Esq.
                                  Marcus & Shapira
 3                                35th Floor
                                  One Oxford Centre
 4                                301 Grant Street
                                  Pittsburgh, PA   15219
 5                                412-471-3490

 6                                Diane P. Sullivan, Esq.
                                  Chantale Fiebig, Esq.
 7                                Weil Gotshal & Manges
                                  Suite 600
 8                                2001 M Street NW
                                  Washington, DC   20036
 9                                202-682-7200

10    For Walmart Defendants:     John M. Majoras, Esq.
                                  Jones Day - Columbus
11                                Suite 600
                                  325 John H. McConnell Blvd.
12                                Columbus, Ohio   43215
                                  614-281-3835
13
                                  Tara A. Fumerton, Esq.
14                                Tina M. Tabacchi, Esq.
                                  Jones Day - Chicago
15                                Suite 3500
                                  77 West Wacker
16                                Chicago, Illinois   60601
                                  312-782-3939
17

18    ALSO PRESENT:              Special Master David Cohen

19                                - - - - -

20

21

22

23

24

25
```

<u>TUESDAY, SEPTEMBER 28, 2021, 12:15 P.M.</u>

THE COURT:  All right.  Please be seated, everyone.

All right.  This is a final pretrial in the Track Three case.  Opening statements are set for next Monday.  This is Lake County and Trumbull County against Walmart, Walgreen's, CVS and Giant Eagle.

Counsel are all present and the client reps, some of them are on the phone.

I've got a number of matters I want to cover, and then if there's any additional items from counsel, they can raise those.

All right.  First, we're having jury selection, we're going to be doing it in Courtroom 19-A, in chambers tomorrow.  The gallery is larger and so it's safer to have a large number of prospective jurors.

When we go into chambers for individual questioning, we'll have no more than two lawyers per party so that's -- I guess that's 12 people.

Some months ago I told the parties that my strong preference was to have only fully vaccinated jurors.  The plaintiffs readily agreed.  The defendants objected, arguing that doing so might skew the jury pool against minorities, reduce the minority participation.

So I went forward.

1          The plaintiffs filed a bench brief a week

2      ago, again reiterating their strong argument against

3      seating unvaccinated jurors.

4          The defendants maintained an objection, but

12:17:23  5      then that objection seemed to grow weaker by the minute.

6      Defendants said they were going to file a brief, a motion

7      or argument, a brief, whatever, countering the

8      plaintiffs' brief, but they didn't do so.

9          Yesterday I was required to remove from the

12:17:45  10      jury pool an unvaccinated juror who contracted COVID,

11      which in my opinion validated my initial concern.  And at

12      this point I want to know, do the defendants object to

13      excusing all unvaccinated jurors left in the pool?

14          I mean, what happened yesterday was

12:18:10  15      imminently predictable.  Had it happened next week rather

16      than this week, it might have stopped the trial in its

17      tracks because all the jurors would have been sitting

18      next to someone who tested positive.

19          It's almost certain to occur over six or

12:18:28  20      seven weeks if we have an unvaccinated juror in that

21      pool, in that -- who is actually seated sitting there in

22      my courtroom among the 14 people.

23          So do the defendants object if I just

24      excuse the remaining jurors?  There are about 20 who are

12:18:45  25      unvaccinated.

1           I did a little bit of an analysis myself of

2    these jurors.  Obviously I don't know the race until I

3    see them, but I think there are 15 or 16 remaining

4    unvaccinated jurors in the 50 that we're planning to call

12:19:08 5    tomorrow.

6           I believe all but one is most likely -- one

7    or two -- Caucasian, and that's based on where they live,

8    Mentor, born in Germany, Ashland County, Middlefield,

9    Mentor, Ashland, Medina, Parma Heights, born in Ukraine,

12:19:36 10   Brecksville, South Amherst, Mansfield, Ashtabula, Medina.

11          All right.  There's one

12   unvaccinated -- there's one unvaccinated juror who lives

13   on East 49th in Cleveland.  I think there's a strong

14   likelihood based on that she's African American.  There's

12:19:54 15   one in Euclid who may be African American.  One in

16   Lorain, I'm not sure.

17          But the overwhelming number are Caucasian

18   so excusing them certainly won't skew the pool against

19   minorities.  The overwhelming number, I believe, of the

12:20:12 20   unvaccinated jurors are Caucasian.

21          So do the defendants object to excusing the

22   remaining unvaccinated jurors?  And if so, what is the

23   objection?

24          MR. LIVINGSTON:  Yes, Your Honor.  We

12:20:25 25   object.

1       THE COURT:  Who is speaking?

2            MR. LIVINGSTON:  Scott Livingston for Giant

3   Eagle.

4            And it's not just a question of a proper

5   cross-section racially, it's also a proper cross-section

6   age-wise and political biases.

7            *The New York Times* had an article this week

8   and it's pretty clear that far more conservative folks

9   tend to be unvaccinated than liberal folks.

10           THE COURT:  That may be, but there's no

11  suspect class on being liberal or conservative.

12           MR. LIVINGSTON:  But it's not a

13  cross-section, Your Honor.

14           I mean, imagine if this Court struck

15  everyone who was a registered Republican, that would

16  clearly not be proper.

17           And the same thing is true with respect to

18  age, Your Honor.

19           THE COURT:  Well, I understand, but how do

20  I -- how do I balance the safety of the trial and the

21  likelihood that it will conclude?

22           Okay.  Where does that come in?

23           MR. LIVINGSTON:  We're already taking those

24  precautions, Your Honor.

25           As far as I know, this courthouse is

1　　not -- does not prevent unvaccinated people from entering

2　　the courthouse.

3　　　　　　　　　THE COURT:  Correct.

4　　　　　　　　　MR. LIVINGSTON:  So witnesses could be

12:21:32 5　　unvaccinated.  People today could be unvaccinated.

6　　　　　　　　　THE COURT:  Well, I believe every lawyer is

7　　vaccinated, and someone who is sitting --

8　　　　　　　　　MR. LIVINGSTON:  We don't know.  You're

9　　assuming that.

12:21:43 10　　　　　　　　　THE COURT:  That's up to -- I mean, sir,

11　　that's up to you who you sit with at your table.  If you

12　　don't care, fine, it's up to you.  That's voluntarily.

13　　　　　　　　　MR. LIVINGSTON:  No, but I don't know if

14　　the other lawyers are vaccinated or not.

12:21:55 15　　　　　　　　　I don't have any choice.  I'm in this

16　　courtroom because I have to represent my client for the

17　　next two months.

18　　　　　　　　　THE COURT:  But you choose to be.

19　　　　　　　　　If you're not vaccinated and the people

12:22:03 20　　sitting with you object to that, you wouldn't be here,

21　　sir.

22　　　　　　　　　Another lawyer would be here.

23　　　　　　　　　MR. LIVINGSTON:  All right.  But the Chief

24　　Judge of this Court is not, as a result of safety,

12:22:16 25　　barring people who are unvaccinated, including the

1    jurors.

2                    THE COURT:  Okay.

3                    MR. LIVINGSTON:  Including the jurors.

4                    Why were the jurors summoned if it was true

12:22:26  5    as a safety measure --

6                    THE COURT:  All right.  So your concern is

7    age and political bias.  Again, not suspect class.

8                    MR. LIVINGSTON:  We want a cross-section,

9    Your Honor.

12:22:33 10                    We want -- you're going to -- of the 50

11    jurors tomorrow, you're planning on excusing one-third of

12    them because they're not vaccinated.

13                    I don't see how that's a proper

14    cross-section of the community.  If the real concern --

12:22:46 15                    THE COURT:  All right.  What

16    happens -- what do I do, and if I would -- if I would

17    proceed and if this trial has to be stopped because one

18    of the jurors gets COVID, how do I -- what are

19    your -- what are the defendants willing to accept or do

12:23:10 20    as a result?  Since you're essentially asking all of us

21    to bear that risk.

22                    MR. LIVINGSTON:  Well, the New York trial

23    is in, like, day 40, and the trial in the Track Two went

24    the distance.

12:23:22 25                    I mean, there's always a risk of a COVID

1     outbreak in any situation, vaccinated or unvaccinated.

2               So --

3               THE COURT:  Sir, the vaccination rate in

4     New York was 80 percent.  Here it's 50 percent.

12:23:34    5               MR. LIVINGSTON:  We just have to deal with

6     that situation as it comes.

7               THE COURT:  Why?

8               MR. LIVINGSTON:  I mean, if the real

9     concern is safety, if that's the real concern, then we

12:23:42   10     should hold off on having this trial until we don't have

11     an issue with COVID any more.

12               THE COURT:  We've postponed it twice for a

13     year.

14               COVID is here forever.

12:23:53   15               MR. LIVINGSTON:  We are more anxious, Your

16     Honor.  We are more anxious than you to get to a jury on

17     this.

18               THE COURT:  All right.  Does anyone else

19     want to say anything about any objection to excusing the

12:24:07   20     unvaccinated jurors?

21               (No response).

22               THE COURT:  All right.  So race isn't the

23     issue.  It's now age and political bias.

24               I mean, we've got older jurors,

12:24:19   25     that's -- you know, I don't -- I'm not sure they, from

1    looking, I didn't look at the age but we've got young

2    jurors, we've got old jurors, vaccinated, unvaccinated.

3                    That's -- and can you articulate for me why

4    you think your clients would be prejudiced if -- assuming

12:24:53  5    you're correct, just assuming you're correct that out of

6    the -- say we have 20 jurors, roughly 20 jurors who are

7    unvaccinated, say that splits two-to-one conservative

8    versus liberal, all right, and remember, we're -- you

9    know, how would your client be prejudiced?

12:25:14 10                    MR. LIVINGSTON:  We don't know for sure,

11   but we do know that --

12                    THE COURT:  Well, if you're not prejudiced,

13   then it doesn't matter.  You've got to articulate a

14   prejudice.

12:25:25 15                    MR. LIVINGSTON:  Our jury consultants tell

16   us that people who are very conservative and who are

17   unvaccinated are very big on individual rights and

18   responsibilities, and they view people who -- tend to

19   view people who are, you know, have issues with drugs as

12:25:44 20   having to take responsibility for that -- for their own

21   situation and not try to blame others for their

22   situation.

23                    So we think that that kind of person, all

24   else being equal, might tend to be more favorable to our

12:26:01 25   position.  And, of course, that's why the plaintiffs

1    don't want those folks on the jury.

2              It has nothing to do with safety, in my

3    view.  If people who are -- who come to this courthouse

4    and have been vaccinated are worried about sitting next

12:26:15    5    to an unvaccinated juror, then excuse that person because

6    they obviously have a very big fear of being in a

7    courtroom with people who are unvaccinated, who aren't

8    vaccinated.

9              MR. WEINBERGER:  Your Honor, Peter

12:26:32   10    Weinberger.

11              Can I respond?

12              THE COURT:  Yes.

13              MR. WEINBERGER:  So the argument that

14    you're hearing is that they want jurors who are biased in

12:26:45   15    their favor, and they view the --

16              THE COURT:  Well, I mean to be --

17              MR. WEINBERGER:  Well, I mean, that's what

18    I heard articulated, Your Honor.

19              THE COURT:  Well --

12:26:55   20              MR. WEINBERGER:  Now, as far as --

21              THE COURT:  Mr. Weinberger, if, in

22    questioning, the juror in any way exhibits any

23    bias -- we've already excluded anyone who has a leaning

24    for or against a pharmacy.  Okay?  They've been excluded.

12:27:10   25    Even a mild leaning for or against a pharmacy, they've

1    been excluded.

2                    I don't believe -- and again, what was your

3    name?

4                    MR. LIVINGSTON:  Scott Livingston.

12:27:19 5           THE COURT:  All right.  Mr. Livingston,

6    he's not going to get a juror who in any way manifests a

7    bias toward defendants, they'll be struck, stricken.

8                    But he thinks they may have some general --

9    we'll call it libertarian leanings -- personal

12:27:41 10   responsibility leanings, and they may tend to think that

11   someone who got addicted or died of an overdose, it was

12   their fault as opposed to someone else's.

13                   MR. WEINBERGER:  So --

14                   THE COURT:  I think that's how he

12:27:55 15   articulated it.

16                   MR. WEINBERGER:  So let's look at the other

17   shoe here and let's look at -- and I'm assuming that

18   their jury consultants have analyzed the list of

19   vaccinated jurors, which at this point there are

12:28:11 20   approximately 60 -- 58 of them.

21                   You know, I haven't -- I haven't heard

22   anything --

23                   THE COURT:  Excuse me a second.

24                   Let me asking Mr. Livingston, I'm going to,

12:28:22 25   you know, play Devil's advocate.

1          Liberal jurors, democratic jurors who are

2     vaccinated, they may -- the consultants probably are

3     telling you the opposite, all right?  They, you know, may

4     think it's not necessarily an individual's fault if he or

12:28:44  5     she got addicted, and they might be more willing to look

6     at, say, someone else's responsibility.

7          All right.  Why should those people be

8     stricken, any of those who say "I don't want to sit next

9     to an unvaccinated juror"?  If I strike all of those

12:29:00 10     people, then I'm skewing the jury against the plaintiffs.

11          MR. LIVINGSTON:  No, I think there's a

12     difference, Your Honor.

13          I was only suggesting that if a juror said,

14     "Your Honor, I'd really ask you to excuse me because I

12:29:16 15     just don't feel comfortable," that's different than the

16     Court issuing a rule saying that "Regardless of

17     individual concerns and preferences, if you're not

18     vaccinated, you're out, or if you are vaccinated, but

19     feel concerned, you know, then I'll just automatically

12:29:33 20     take you out."

21          I think you leave it up to the person,

22     right?

23          THE COURT:  Well, I've done that.

24     Anyone -- anyone who has expressed a strong concern for

12:29:42 25     his or her safety, we've already excused.

1         But I'm saying there are still jurors, and

2    I bet that if I bring all those jurors in back into my

3    chambers and look them in the eye and I say, "Are you

4    comfortable sitting next to an unvaccinated juror for six

12:29:57  5    or seven weeks," I bet a whole lot of them are going to

6    say no, and then I'll have to excuse them.

7         And that tips the jury the other way.

8    Right?  That tips the jury the other way.  That isn't

9    right.

12:30:10  10         MR. LIVINGSTON:  I think the difference is,

11    Your Honor, Mr. Weinberger is asking you to excuse a very

12    large segment of the jury pool.

13         We are not asking you to excuse any segment

14    of the jury pool.  You know, a priority, we're saying let

12:30:25  15    them come in.  If they make the cut, they make the cut.

16    If they don't make the cut, they don't make the cut, but

17    don't put out a rule that saying --

18         THE COURT:  I'm not saying there's

19    anything -- they are biased.

12:30:37  20         I'm saying they are creating a safety risk

21    for the other jurors.  I'm not saying that there's

22    anything wrong with their views, that they can't be fair

23    and impartial.

24         That's not why I'm excusing them at all.  I

12:30:50  25    have no idea what their views are.  Maybe some of them

1   are libertarian, maybe some aren't.  I mean, I don't

2   know.

3              But I'm -- the reason I'm excusing them is

4   because they're putting everyone at risk, particularly

12:31:02  5   their fellow jurors.  And given that we now have proof

6   positive one of those people, who very well could have

7   been seated had we done this a week earlier, that person

8   would have been on the jury and infected everyone.

9              MR. LIVINGSTON:  Your Honor,

12:31:17 10  there's -- every day we all encounter these risks.  We

11  encounter vaccinated and nonvaccinated people.

12             THE COURT:  I understand that, but the

13  risk -- the risk of a vaccinated juror getting COVID is

14  about one-tenth of unvaccinated so.

12:31:30 15             MR. LIVINGSTON:  But, Your Honor, basically

16  you're creating a Judge Polster rule for this courtroom

17  that is different than the rule that applies to this

18  courthouse.

19             We don't think that's right, Your Honor.

12:31:42 20             THE COURT:  Well, there's a lot -- a lot

21  difference between a six-week trial and the one and

22  two-day trials that I've been conducting, Mr. Livingston.

23  I've been conducting one, two, three-day criminal trials.

24             MR. LIVINGSTON:  Your Honor, cases have

12:31:56 25  been going on for a lengthy period of time in the

1    courthouse.  They don't have a problem.

2                    THE COURT:  Well, Judge Barker has already

3    lost three, okay.  I don't know if she even inquired

4    about vaccinated or unvaccinated, all right?  But that

12:32:08  5    was -- but she's already lost three jurors.

6                    I don't know if any of them have actually

7    tested positive for COVID, and maybe she did require them

8    to have vaccinations.

9                    Judge Gwin has been requiring -- Judge Gwin

12:32:20 10    required -- I mean, would not seat an unvaccinated juror,

11    right on, you know, on the other side of the hall.  So he

12    took that position himself and he did it.  And those were

13    short criminal trials.

14                    So there is a precedent in our courthouse.

12:32:37 15                    MR. LIVINGSTON:  Your Honor, we're, like I

16    said --

17                    THE COURT:  And that was a criminal case

18    where you've got, you know, the constitutional

19    protections.

12:32:44 20                    So it's --

21                    MR. LIVINGSTON:  You're excusing -- well, I

22    think we are entitled to a cross-section of the

23    community.  And when you exclude 30 percent of the

24    community, you no longer are going to get a cross-section

12:32:56 25    of the community.

1          There's no way around that fact.  And what

2    you're saying is --

3          THE COURT:  I disagree with that.

4          MR. LIVINGSTON:  -- with these concerns of

12:33:04 5    safety, which if it's that big of a concern then we

6    should hold off on the trial.

7          We're not suggesting that.  All we're

8    suggesting is allow jurors who are unvaccinated to be

9    considered.  That's all we're asking.

12:33:15 10          Don't treat them like second-class

11   citizens.

12          THE COURT:  They're not being treated like

13   second-class citizens.

14          All right.  Guess what?  I mean, there are

12:33:29 15   now rules that require, I mean Government employees,

16   federal executive branch employees either have to get

17   vaccinated or tested or they lose their jobs.  Many

18   employers, Metro, okay, you can say they are being

19   treated as second-class citizens or you can say they are

12:33:49 20   being required to shoulder their collective

21   responsibility.

22          MR. LIVINGSTON:  We have a rule in my

23   office:  If you want to continue to work at my law firm

24   you have to get vaccinated.

12:33:57 25          THE COURT:  Okay.

1          MR. LIVINGSTON:  Very different situation.

2     That's a job that's at issue.

3          President says, "If you're going to be a

4     federal employee working for me, you have to get

12:34:05  5     vaccinated."

6          These jurors don't work for the U.S.

7     Government.  They are ordinary citizens.

8          THE COURT:  No, but they are being ordered

9     by the United States Government that they need to serve

12:34:13 10    as jurors.

11         MR. LIVINGSTON:  There is no Federal Rule

12    that says anybody who walks into a federal building,

13    including a Federal Courthouse, must be vaccinated.  And

14    I don't think it would get very far.

12:34:22 15         THE COURT:  There may be one in the future,

16    and if so, it's certainly lawful.

17         I mean, if Judge Gaughan decides or we, we

18    as -- if we as a Court decide that people don't come in

19    unless they're vaccinated, we can do it.

12:34:34 20         MR. LIVINGSTON:  You can do it, and

21    somebody could challenge it and appeal it, and ultimately

22    it would probably go to the Supreme Court.

23         THE COURT:  They'd lose.  They'd lose if we

24    do it for safety.

12:34:44 25         So, all right, Mr. Weinberger, anything

1      else you wanted to say?

2                    MR. WEINBERGER:  No, Your Honor.

3                    THE COURT:  Well, I'm going to think about

4      it.

12:35:07  5          Well, let me ask you this, Mr. Livingston:

6      What consequence should there be against the defendants

7      if I -- if I -- if I accede to your objection and go

8      ahead and we have to stop the trial because an

9      unvaccinated juror gets COVID during this trial, what

12:35:34 10     consequence is Giant Eagle and the other defendants

11     willing to bear?

12                    MR. LIVINGSTON:  We would have to have

13     a -- there would need to be a pause in the trial until we

14     could resume.

12:35:48 15          Judge, what are we going to do if a

16     vaccinated juror gets COVID?

17                    THE COURT:  I don't know.  We'll have to

18     deal with it.

19                    MR. LIVINGSTON:  And who are we going to

12:35:57 20     punish for that?  Nobody, of course.

21                    THE COURT:  Right.

22                    But this is different.  This is something

23     that you're choosing, all right, and you're -- you're

24     pushing hard against me to take a reasonable, what

12:36:09 25     everyone -- look, you're a smart person, Mr. Livingston.

1    You're not telling me that there isn't a far greater risk

2    of a problem and a juror getting COVID if he or she's

3    unvaccinated than vaccinated.

4              Correct?

12:36:24  5         MR. LIVINGSTON:  No, I --

6              THE COURT:  Okay.

7              MR. LIVINGSTON:  I --

8              THE COURT:  Okay.  You know that.

9              So what, what consequence is your client

12:36:36 10   willing to bear, along with the other defendants, if, if

11   a vaccinated -- if an unvaccinated juror gets COVID?

12              You better caucus with -- have you talked

13   to your CEO?

14              MR. LIVINGSTON:  Your Honor, do you have

12:36:51 15   something in mind as to what the consequence would be?

16              THE COURT:  I'm asking you.

17              The consequence could be that this trial

18   has to be stopped, okay.  So certainly -- I mean, I

19   certainly would -- at a minimum, the defendants would

12:37:06 20   have to bear all the costs of the plaintiffs for the

21   trial up to that date because it would have to be redone

22   at a minimum.

23              I mean, that's what I'm -- that's what I'm

24   talking about.

12:37:20 25              Have you talked to your clients?  Are they

 1  willing to bear those costs?

 2              MR. LIVINGSTON:  Well, since we think -- I

 3  mean again, Your Honor --

 4              THE COURT:  Well, have you talked to your

12:37:28  5  client about that?

 6              MR. LIVINGSTON:  A way to avoid this issue

 7  is to delay the trial.

 8              THE COURT:  We're not delaying the trial.

 9  We're going forward.

12:37:38 10              MR. LIVINGSTON:  If a vaccinated juror gets

11  COVID, should the plaintiffs pay the defendants' costs?

12              THE COURT:  I've heard enough.

13              In short order, you've got your clients

14  here, I want to know if the defendants -- if I accede to

12:37:50 15  what -- I mean, let me ask you, is Mr. Livingston

16  speaking alone?  His client is Giant Eagle.

17              What about Walmart, Walgreen's and CVS?  Do

18  you all concur with that?

19              MR. MAJORAS:  Your Honor, John Majoras.

12:38:07 20              We concur with the, if I may, Your Honor,

21  we certainly concur with the idea that you had reached

22  the other day about bringing in jurors and finding out

23  greater circumstances.

24              We're not experts in health and, for

12:38:23 25  example, if a juror were to come in and say they're not

1    vaccinated but they have suffered from COVID before, is

2    that immunity something that makes a difference?  I

3    suspect it does, but I'm not a doctor, I'm not trying to

4    say that.

12:38:38  5              Again, with all due respect, Your Honor,

6    your discussion of the prospective jurors and where they

7    live, I think those are certainly observations.  I know

8    this community as well.  Those are observations one can

9    make, but they are not definitive in terms of identifying

12:38:49 10   whether we're going to get the full cross-section of

11   jurors that we're entitled to or a panel that we're

12   entitled to.

13              In terms of the discussion about is there

14   some punishment the defendants should bear from having

12:39:01 15   their right to have a cross-section of the population for

16   their jurors, I don't think there should be any

17   punishment for exercising that right or asking for that

18   right, Your Honor.

19              I think if someone were to become sick,

12:39:12 20   whether it's any of the lawyers here, whether it's any of

21   the jurors, vaccinated or unvaccinated, I think the Court

22   will be faced with a question of what to do with the

23   trial.

24              We recognize there's a risk of that, but I

12:39:23 25   think, as Mr. Livingston said and even as Mr. Lanier said

        1    the other day, there are people who have been vaccinated

        2    that come down with COVID.

        3                    THE COURT:  Understood.

        4                    MR. MAJORAS:  None of us know that in

12:39:33 5   advance.

        6                    I think trying to assess that some party is

        7    to be blamed for that is not a proper way to determine

        8    whether we have a right to the jurors that are a

        9    cross-section of the community.

12:39:46 10                  MR. BUSH:  Your Honor, Graeme, Graeme Bush

       11    for CVS, and I'm not going to belabor the point.

       12                    I agree with Mr. Majoras.  We want a

       13    cross-section.  We don't think there's any basis for

       14    punishing any party if things turn out badly.

12:40:01 15                  THE COURT:  It's not punishing.  It's

       16    that --

       17                    MR. BUSH:  Well --

       18                    THE COURT:  -- if you required, required

       19    everyone to take an unnecessary risk because you feel

12:40:14 20  that somehow it would -- it would excuse jurors who might

       21    be favorable to you, and then it turns out that that risk

       22    happens, it's just a financial consequence.  All right?

       23                    That's not a punishment.  It's just the

       24    corollary flow from it.

12:40:30 25                  MR. BUSH:  To use your words, Your Honor,

1    we don't think there's any basis for that.

2                    THE COURT:  Well, I do.

3                    MR. BUSH:  And second of all, all that's

4    happening here, as Mr. Livingston said, is we're asking

12:40:39 5    that we have a fair cross-section of the jury pool and

6    see where -- and that's just to bring them in so that we

7    can come listen to what they have to say, listen to what

8    they say in chambers.

9                    THE COURT:  It's probably better to stay

12:41:02 10   seated.  I think it works better if you're seated.  I

11   don't know.

12                    MR. BUSH:  Okay.  Maybe we'll end up with a

13   jury after that process that doesn't present any of these

14   problems, but we don't think we should foreclose people

12:41:14 15   from sitting on the jury on the basis of risk that may or

16   may not exist from being unvaccinated.

17                    But as I said before, I agree with

18   Mr. Majoras.

19                    MR. SWANSON:  Your Honor, just briefly,

12:41:41 20   Brian Swanson for Walgreen's.

21                    I have nothing to add except to say that we

22   join with our co-defendants on this issue.

23                    THE COURT:  Well, Mr. Majoras articulated a

24   slightly different position which is a wait-and-see and

12:42:03 25   bring the jurors in and see if, you know, if, in fact,

1    I'm right, that excluding unvaccinated jurors does not

2    skew the pool against minorities.

3                I agree, it's a -- I've taken a guess, a

4    reasonable guess.  It could be wrong.

12:42:19  5                Well, I will think about it.  I may -- I

6    may just proceed with the 50 we have.

7                We, you know, had to take several off

8    for -- obviously the one juror who had COVID.  There were

9    several who had serious job-related issues.  One juror

12:42:43 10   had serious anxiety issues about being a juror.

11   Obviously I wasn't going to bring her in.

12                I don't know.  We can see what things look

13   like.  Obviously we're taking some risk bringing

14   unvaccinated jurors and sitting in -- I mean, we're going

12:43:00 15   to try and socially distance the jurors several feet

16   apart, but I think the defendants' argument would almost

17   evaporate if I get a substantial number of the vaccinated

18   jurors saying that they are -- feel very uncomfortable

19   serving with vaccinated -- with unvaccinated jurors

12:43:29 20   because then I think we -- you know, I have to do one or

21   the other.

22                I can't be totally unfair to the plaintiffs

23   to excuse all of those people.

24                So --

12:43:38 25                MR. LIVINGSTON:  Your Honor, just so we're

1    making sure, it's not our position -- we are not

2    suggesting that you exclude any group of people,

3    vaccinated or unvaccinated.

4                    And --

12:43:48    5                    THE COURT:  No, but, Mr. Livingston, I

6    can't -- you're suggesting I just say to someone, "Well,

7    tough for you.  You're uncomfortable sitting next to an

8    unvaccinated juror?  Tough.  I'm ordering you to serve."

9                    MR. LIVINGSTON:  I mean, you'll have to see

12:44:02   10    how many people say they are uncomfortable sitting next

11    to an unvaccinated person.

12                    It might only be one or two.

13                    THE COURT:  I understand.  Well, I'll see.

14                    If it turns out to be a substantial number,

12:44:12   15    then it would be unfair to the plaintiffs to keep the

16    unvaccinated jurors and exclude all of those people.

17                    MR. LIVINGSTON:  So there is a fairness

18    issue there.  That's the whole point, Your Honor.

19                    If you exclude one group, then either the

12:44:25   20    plaintiffs or the defendants will be prejudiced.

21                    THE COURT:  That's your theory.  That's

22    your theory.

23                    I'm just saying that under your theory, you

24    have to concede that to do that would be -- would be

12:44:37   25    skewing the jury pool against the plaintiffs and in favor

1    of you.

2                    And you can't -- I mean, you may want that,

3    but that's certainly not a principle that I will do.

4                    MR. LIVINGSTON:  We don't want that.  We're

12:44:48  5    saying the jurors should not be -- no group should be

6    excluded.

7                    THE COURT:  I understand.  I understand.

8    But the direct corollary of what you've said is that if

9    it turns out that there are a substantial number of

12:45:01 10    vaccinated jurors who say they are very, very

11    uncomfortable sitting on a jury with unvaccinated ones,

12    then I have two choices:  I either say "Tough for you,

13    you've got to do it and I'm ordering you to," or I've got

14    to excuse them, and then I'm skewing the jury in your

12:45:20 15    favor.

16                    Now, you may want that, but you

17    can't -- that's a losing argument.

18                    MR. LIVINGSTON:  But you're going to get --

19    the vaccinated people will be a group, and only a small

12:45:29 20    segment, presumably, of that group might have the concern

21    you just articulated.

22                    THE COURT:  Well, but if it's a third of

23    them, then you have 15 and 10, then you've got about the

24    same number.

12:45:40 25                    So I'm just saying, all right, that in the

1    pool of the first 50, 35 I think are vaccinated, 15

2    aren't, so more than two-thirds are vaccinated.

3                All right.  Well, I'll take this under

4    advisement and if, if we proceed with these, I'm going

12:45:58  5    to --

6                MR. LIVINGSTON:  Your Honor, one --

7                THE COURT:  -- adopt Mr. Majoras's view and

8    see, see what they say and see what race they are, and

9    then make a decision at that point.

12:46:10 10                MR. LIVINGSTON:  Your Honor, just one last

11    thought I would leave the Court with on this issue which

12    is that we share the concern that if obviously a COVID

13    outbreak hits this trial, the parties will all have

14    expended a tremendous amount of resource.  And it's

12:46:26 15    possible we will either have to suffer a long delay or

16    redo.

17                But ultimately, Your Honor, if you agree to

18    not exclude any segment of the jury pool, there's no

19    appeal issue there.

12:46:36 20                If you all of a sudden decide, "Nope,

21    anybody who is unvaccinated is off my jury pool" and the

22    Sixth Circuit ultimately later on decides that you were

23    wrong, then we've got to do this all over again.

24                THE COURT:  Well --

12:46:51 25                MR. LIVINGSTON:  And that would be the

1    worst possible outcome.

2                    THE COURT:  No, the worst possible outcome,

3    Mr. Livingston, is if I adopt your view -- and it's not

4    yours, it's substantially joined by the other

12:47:07 5    defendants -- and an unvaccinated juror gets COVID and as

6    a result one of the vaccinated jurors gets COVID and gets

7    real sick and, God forbid, dies.

8                    That's the worst consequence.  And I'd have

9    to live with it because it would be my decision.

12:47:27 10                    Okay?  I'd live with it the rest of my

11    life.  That would be a hell of a lot worse than doing

12    this trial two or three more times.

13                    That's just money.

14                    MR. LIVINGSTON:  And that horrible

12:47:40 15    scenario, Judge, that you just articulated could happen

16    regardless.

17                    THE COURT:  Of course it could happen

18    regardless, but we deal with probabilities.  All right?

19    We make decisions.

12:47:50 20                    You do it all the time.  You get the facts

21    and you try to be as safe as possible, recognizing that

22    there's no -- you can't completely insulate yourself and

23    get perfect safety, which is why I'm sure you got

24    vaccinated.  Okay?  Because it makes sense to do it.

12:48:09 25                    MR. LIVINGSTON:  Right.

1          THE COURT:  Could you get COVID?  Of

2     course.  But you've got a 10 or 20 times more likelihood

3     of getting it if you're not vaccinated, so that's why we

4     got vaccinated; a collective responsibility.

12:48:23  5          MR. LIVINGSTON:  We're balancing a very

6     important right, Your Honor, which is a right when you

7     are in a Federal Courthouse and in a federal courtroom in

8     front of a Federal Judge that you have a right to a jury

9     of your peers; i.e., a cross-section of the community.

12:48:40 10          And if you're saying that because of safety

11    we don't get that, that's just not right, Your Honor.

12          THE COURT:  All right.  I understand the

13    argument, and again it's a balance.  I mean --

14          MR. WEINBERGER:  Your Honor.

12:49:03 15          THE COURT:  I mean, this is why we had no

16    trials at all for a year.  Okay?  We had no trials at

17    all, because, you know, we couldn't do them safely.  We

18    couldn't, you know, couldn't do them safely at all.

19          So it's a balance.  Now we're doing them.

12:49:16 20    We're trying to do them safely.  So, all right.

21          MR. WEINBERGER:  Your Honor, may I just

22    respond for just a moment?

23          THE COURT:  All right.

24          MR. WEINBERGER:  Peter Weinberger.

12:49:24 25          We join in the Court's concern and the

1    balancing that must be -- that must take place in favor

2    of the safety of the jurors and the safety of everyone

3    else in this courtroom.

4                I haven't heard Mr. Livingston or anyone

12:49:44  5    else from the defense state that the non -- that the

6    vaccinated jurors do not represent a cross-section of the

7    community, whatever that means.

8                Now, you know, they can say their jury

9    consultant has told them this or that.  If you look at

12:50:05 10    the jury questionnaires, now that we have landed on about

11    78 total jurors, and you look at the jurors who are

12    vaccinated, there is, as a group, in terms of what

13    communities they come from, in terms of whether -- what

14    jobs they hold, and in terms of any other information

12:50:31 15    that has been obtained, there is not any evidence to

16    suggest that they don't represent a cross-section of the

17    community.

18                THE COURT:  Well, I think you're probably

19    right, but I, you know, I understand.  You know, I read

12:50:52 20    the same things Mr. Livingston has.

21                There's a big article in *The New York Times*

22    today with a line that shows -- that correlates states'

23    vaccination rates with how the majority of those citizens

24    voted in the last presidential election.

12:51:09 25                I saw it.  That's the first thing I read

1    today.  So I understand the argument.

2              So maybe the best thing to do is bring in

3    the 50 and we'll see, and if --

4              MR. WEINBERGER:  I mean, one could argue,

12:51:24  5    Your Honor, that nonvaccinated jurors don't trust

6    pharmaceutical companies.

7              I mean, you can speculate.

8              THE COURT:  Or don't trust doctors.  Again,

9    I threw that out.

12:51:35 10              I don't know why pharmacies that are basing

11    their defense on the fact that their individual

12    pharmacists shouldn't -- or should have trusted doctors

13    would want a whole bunch of people who don't trust

14    doctors, but, you know, I don't know.

12:51:52 15              If I decide to go forward and bring them

16    in, I will take a good, hard look and see, see who we

17    have left after any for-cause challenges tomorrow, and

18    decide what to do.

19              All right.  We had a very unfortunate

12:52:08 20    incident involving a big screen that the plaintiffs

21    wanted to have.  I had made it clear to my staff multiple

22    times that I didn't want it, and I would only consider it

23    if all parties, all defendants wanted it as well.

24              People started putting it up yesterday.

12:52:31 25    It's now down.

```
 1              All right.  I want to make it clear:  I
 2   control everything in this courtroom.  If someone wants
 3   to put something in, install something, whatever, they've
 4   got to get my permission.
 5              If they don't have my permission, it
 6   doesn't happen.
 7              If someone does this again, there's going
 8   to be some very hefty fines, hard and fast.  No hearing,
 9   no nothing, it will just happen.  So we're not having any
10   more of that.
11              MR. WEINBERGER:  Your Honor, may I just
12   address that?
13              THE COURT:  I've moved on.  All right.
14              MR. WEINBERGER:  I just wanted --
15              THE COURT:  It's not going to happen again.
16              MR. WEINBERGER:  I just wanted to express,
17   with all due respect, Your Honor, our sincerest apologies
18   for what occurred yesterday.
19              It was -- it was not because we acted or
20   anyone on our side acted to or intended to contravene any
21   directive of yours or of your staff.
22              We misunderstood, in the context of what
23   you said earlier, which is if all the -- all the parties
24   agreed and you agreed to the large screen, we understood
25   that if we put it up just to see what it looked like, not
```

1    that we were attempting to control the courtroom or in

2    any way contravene your order, that it would be -- it

3    would give everyone an opportunity, including yourself

4    and your staff, to see how it looked and how it operated.

12:54:00  5              We did that as a result of a

6    misunderstanding.  We apologize for that.

7              And I can assure you --

8              THE COURT:  Apology is accepted, but the

9    directives were very clear, and it wasn't to go up.  All

12:54:15 10   right?  So it was unambiguous and it was multiple times.

11   So if it happens again, there will be some direct and

12   dire consequences.

13              All right.  Time limits for opening

14   statements.

12:54:33 15              I want to know how much time each side

16   feels it reasonably needs.

17              All right.  I want to know.  I guess,

18   first, Mr. Lanier, I guess if you're doing the opening,

19   what -- I mean, how much time are you requesting?

12:54:48 20              MR. LANIER:  Your Honor, I would request

21   two-and-a-half hours.

22              And I can break that apart as to why I need

23   it.

24              THE COURT:  No, you don't have to break it

12:55:00 25   apart.

1           Two-and-a-half hours.

2                MR. LANIER:  Yes, sir.

3                THE COURT:  That's a very long opening.  I

4      mean, I know you're a darn good lawyer, but I don't know

12:55:10  5      too many people who can hold anyone's attention for

6      two-and-a-half hours.

7                If you're the first I've seen, more power

8      to you.  But, all right, so you want two-and-a-half

9      hours.

12:55:20 10                Well, I guess from the defendants, I guess

11      how much time do you want, either individually or

12      collectively?  And again we're not going to have

13      repetition so, I mean, each defendant doesn't have to say

14      the same thing.

12:55:45 15                I mean, there are some things that are

16      going to apply to all of you and you don't need to have

17      four people say that.  I'm not going to have that.  But I

18      guess collectively, and again here, you know, if I give

19      the defendants a collective amount, you can split it how

12:55:58 20      much you want.

21                If a person wants to take 50 percent of it

22      because he or she is saying a number of things for all of

23      you, that makes sense.  So collectively, what do you

24      think is reasonable?

12:56:09 25                MR. STOFFELMAYR:  Judge, Kaspar

```
 1        Stoffelmayr.  I'll stay seated, if that's all right.
 2                      THE COURT:  It works better.  The
 3        microphones work better if you do.
 4                      MR. STOFFELMAYR:  Is it all right if I take
 5        my mask off?
 6                      THE COURT:  If the lawyer is speaking, he
 7        or she can take the mask off.
 8                      MR. STOFFELMAYR:  Thank you.
 9                      We were happy with your original proposal
10        that was 45 minutes per party.
11                      As you suggested, we --
12                      THE COURT:  That's three hours.
13                      MR. STOFFELMAYR:  -- talked about
14        reallocating time to avoid repetition, so it wouldn't be
15        literally 45 minutes, 45 minutes.  It might be 45
16        minutes, you know --
17                      THE COURT:  Again, you can -- if I give
18        three hours, I don't care how you split it up or allocate
19        it.  If one person wants to speak for two, and the others
20        15 minutes, that's fine.  I don't care.
21                      MR. STOFFELMAYR:  And we've also discussed,
22        you know, the points you raised that three hours is a
23        very long time for jurors to have to listen to even
24        multiple people, and we would certainly like to try to
25        shorten that.
```

1          I don't know that we could commit today

2     that we'll be able to get it to any particular time, you

3     know, lower than that, but, you know, with the --

4          THE COURT:  All right.  This is a little

12:57:13   5     longer than I had envisioned, but it's, you know, the

6     three hours, which is pretty much what I had allocated

7     anyway for the defendants.

8          All right.  Mr. Lanier, I'll give you up to

9     two-and-a-half hours.

12:57:28  10          I'm urging you to condense it, and I'm not

11    suggesting that you actually speak for two-and-a-half

12    hours, but if you want to, you can do it.  And the

13    defendants will have three hours collectively.  However

14    you allocate it is up to you, and that's fine.

12:57:46  15          We'll figure out, depending I may have, you

16    know, depending how long the first defendant's argument

17    is, I may -- I may have -- may have time to have the

18    first defense argument and then break for the evening.

19          We're obviously -- if we're starting at

12:58:11  20    1:00 o'clock, we're not going to go for five or six

21    hours, so it's obvious that the opening statements will

22    go into Tuesday.

23          This is fine.  Okay.

24          MR. STOFFELMAYR:  Thank you, Judge.

12:58:19  25          I think you just answered this question,

1    but just in case, is there any chance of starting earlier

2    on Monday so we can try to get through all openings?

3                    THE COURT:  Our Judges meet every few

4    months and we have one Monday morning, which is why it

12:58:36  5    was 1:00 o'clock.

6                    And I think it's my obligation, absent an

7    absolute emergency, to be at Judges meetings.  We make

8    important decisions.  I think we're going to probably

9    discuss COVID procedures, among other things.

12:58:52  10                    And I think again obviously if someone gets

11    sick, you have an emergency, okay, but that's why I

12    scheduled this at 1:00 o'clock, and I'm going to continue

13    with that.

14                    MR. STOFFELMAYR:  Okay.  Just thought we'd

12:59:09  15    ask in case your schedule changed.

16                    THE COURT:  We normally start at 9:00 in

17    the morning, but I think I said it is a regularly

18    scheduled meeting and it is going forward so.

19                    MR. STOFFELMAYR:  Thank you.

12:59:18  20                    THE COURT:  All right.  We have an issue

21    now over the admissibility of prior -- prior settlements

22    of at least three of the defendants with Government

23    entities, and there was a motion for reconsideration and

24    a response in opposition.

12:59:52  25                    All right.  My prior ruling was accurate,

1       but -- and I'm not changing it, but my prior ruling

2       didn't address the admissibility of any individual

3       settlement.  It was in the abstract.

4                   All right.  I'm not -- I didn't blanket

5       admit them all, and I'm sure as heck not blanket denying

6       them all, so the parties submit -- you know, briefs don't

7       help me at all.

8                   I need to know specifically which prior

9       settlement agreements against which defendants, which of

10      the defendants, the plaintiffs are seeking to introduce,

11      either through a live witness or through a witness being

12      offered by deposition, and who those witnesses are.  And

13      then I'll figure out -- you know, I may have to deal with

14      them, each one.  I don't know.

15                  Because again, they're not -- they can't be

16      offered for the truth of the matter asserted.  They're

17      not, you know, an admission.  All right.  It may be

18      relevant for notice, notice, notice and intent, and

19      depending on how the questions go.

20                  So I guess, Mr. Lanier, do you have a list

21      or can you supply a list to me and the defendants of

22      which agreements you're seeking to introduce and through

23      which witness, live witness and deponent witnesses?

24                  MR. LANIER:  Yes, Your Honor, I can supply

25      that list to the Court.

1          Tell me -- and the other side.  Tell me

2     when you want the list.

3          THE COURT:  Well, and I'm -- I think it

4     would be best if you not refer to these settlements in

13:01:37  5     your opening statements because at this point no one

6     knows which are coming in and which aren't.

7          And again if you refer to them in opening

8     statements, I'm afraid it's going to sound like the jury

9     should take these statements in some way as substantive

13:01:55 10     evidence of wrongdoing.  And that would be an

11     impermissible hearsay use.

12          A permissible use, I mean it seems to me

13     you can question an executive about a settlement and

14     whether, whether that influenced the company's policies

13:02:13 15     going forward in any way, shape or form.  And if so,

16     fine.  If not, why.

17          I mean, I think that's -- you know,

18     settlement is a fact and it's really what the defendants

19     did or -- did or didn't do as a result.  Okay.  And so

13:02:29 20     there's an argument that, you know, no Court's admitted

21     ten settlements.  I mean, candidly, ten settlements

22     against a company in a five-year period could be far more

23     probative than one.  I mean, one is one.  But if you have

24     ten, you've -- and they are similar and similar to the

13:02:46 25     conduct here, well, it looks like the company just blew

1     them off.

2                    So I think it's best that you not refer to

3     them in opening until I know exactly what they are and we

4     know, and then I'll figure out -- I will start taking a

13:03:03  5     look at how, you know, how you are planning to use them,

6     and maybe just set some general guidelines.

7                    But in the abstract, I mean, I'm not -- I

8     haven't admitted them all, and I'm certainly not going to

9     just randomly say they're all admissible, and I'm

13:03:20 10     certainly not going to say -- take the defendants'

11     position that none of them are admissible or can't be

12     used in any way, shape or form.  I'd be summarily

13     reversed if I did either one.

14                    MR. LANIER:  Your Honor, for clarity's

13:03:35 15     sake, first of all, I'll do exactly as you say, number

16     one.

17                    Number two, I do want the record to reflect

18     and it to be fresh in your mind that Walgreen's and two

19     of the CVS settlements do actually have admissions.

13:03:46 20                    THE COURT:  All right.  An admission, if

21     there's an admission, I think an admission, you know, I

22     don't think the defendants -- I mean, they may not be

23     happy with it, but if it's an admission, it's an

24     admission.  As long as it's something directly related to

13:03:59 25     what we have here.  If it's something unrelated, then

1    it's just prejudicial.

2              If they admitted they did something wrong,

3    that's far more prejudicial than probative, so I'd like

4    to know which had admissions and what the admissions are.

13:04:14  5              MR. LANIER:  Your Honor, by the time we

6    start jury selection tomorrow, I'll have you a list of

7    the ones --

8              THE COURT:  Okay.

9              MR. LANIER:  -- that I had planned on

13:04:20 10    referring to, and I'll segregate out the ones that had

11    admissions and what they are.

12              THE COURT:  Okay.  And give that to

13    defendants, and then we can look at those.

14              All right.  When we start examining

13:04:36 15    witnesses, am I correct, Mr. Lanier, that you're going to

16    have just one lawyer, one plaintiffs' lawyer per witness?

17              You know, of course, we have two counties,

18    we have two parties, you know, Lake County and Trumbull

19    County.

13:04:53 20              You're not going to have one Lake County

21    lawyer and one Trumbull County lawyer examining each

22    witness.

23              MR. LANIER:  You are correct, Your Honor.

24    We will have one lawyer per witness.

13:05:03 25              THE COURT:  Okay.

1          MR. LANIER:  The interests are aligned.

2          THE COURT:  Well, that's what I figured.

3          Okay.  So what I'm going to do after

4     direct, I'm just going to turn to the defense for

13:05:12  5     cross-examination, and you can have whatever order you

6     want.  And I am assuming that you've decided that, you

7     know, Walgreen's is going to take the lead on certain

8     witnesses and Walmart on others, and that's fine.

9          And so when that lawyer finishes, I'll

13:05:29 10     just, you know, ask if any of the other defendants want

11     to cross-examine.  And if you do, fine.  If you say

12     "Nothing further," that's fine.

13          MR. STOFFELMAYR:  Thank you, Judge.

14          THE COURT:  All right.  And at that point

13:05:43 15     I'm going to see if any of the jurors have questions,

16     written questions.  And the procedure is they reduce it

17     to writing, they hand it to my courtroom deputy.  I'll

18     see them eventually, but I don't care.  The courtroom

19     deputy will hand it to counsel so you can quickly look at

13:06:00 20     it.

21          And the idea -- and I'll tell the jurors

22     that they're not to, you know, if their question isn't

23     asked or isn't asked right away, they are not to blame

24     anyone.  There could be a whole lot of reasons.  One, it

13:06:14 25     might not be relevant.  Two, it might be more appropriate

1      for another witness who is coming, and the lawyers know

2      that so they will ask that witness.

3                      And you can ask it on your -- on the

4      follow-up round, either recross, redirect or recross, or

13:06:28  5      not.  But that way you all know that one juror had a

6      question and, you know, I think that's -- I think that

7      makes for a more intelligible trial and so you know what

8      the jurors are thinking.

9                      And then it will just be one round of

13:06:45 10      redirect and recross.

11                      I plan to address the admission of exhibits

12      at the conclusion of each day.  If I wait until the end,

13      we won't be able to keep track of them so I'll address

14      those each day.

13:07:04 15                      I'm assuming virtually all the exhibits are

16      coming in without objection.  I'm not going to waste time

17      on authenticity.  If there are, get those ironed out

18      beforehand.

19                      Have you discussed with Mr. Pitts a vehicle

13:07:18 20      for making admitted exhibits publicly available?  Has

21      that been worked out?

22                      MR. STOFFELMAYR:  Judge, Kaspar Stoffelmayr

23      again for Walgreen's.

24                      We did receive Mr. Pitts' e-mail and we

13:07:31 25      passed that on to the right people on our teams, and as

```
 1    far as I know they know what to do.
 2                   THE COURT:  Okay.
 3                   MR. STOFFELMAYR:  When the tech people are
 4    here tomorrow they can ask questions, if that's all
 5    right.
 6                   THE COURT:  There's another tech setup
 7    tomorrow?
 8                   What time?
 9                   MR. STOFFELMAYR:  I may be confused on
10    that.
11                   THE COURT:  We are all going to be picking
12    the jury on 19.
13                   MR. STOFFELMAYR:  I may be wrong.  I
14    thought there was another tech day.
15                   THE COURT:  I thought that was all
16    yesterday.
17                   Robert, has that all been worked out?
18                   MR. STOFFELMAYR:  I stand corrected.
19                   THE COURT:  Has that all been worked out?
20                   THE CLERK:  There may be some remaining
21    things to take care of while we are picking the jury.
22                   THE COURT:  Well, as long as it's taken
23    care of.  You know, you can come in, but I don't know
24    what tech thing.
25                   This is simply you're going to
```

1    electronically put them on the Court website, whatever,

2    so the media, whatever, you know, can have access to the

3    exhibits.  Just make sure that happens.

4              MR. STOFFELMAYR:  And again, I think

13:08:27  5    everyone has Mr. Pitts' e-mail address and they will

6    address any questions to him, but it sounds like it's

7    straightforward enough.

8              THE COURT:  All right.

9              There's been some back and forth

13:08:37 10    correspondence on some edits or changes to the voir dire

11    questions I'm going to ask and the preliminary jury

12    instructions.

13              All right.  Let's start with the voir dire

14    questions.

13:09:23 15              I guess this, this is on the last paragraph

16    on Page 2 is where we've had a lot of back and forth.

17              All right.  I think this is what I'm going

18    to say.  The pharmacy defendants -- and this is simply a

19    summary of the pharmacy defendants' claims, that's all it

13:10:07 20    is.

21              The pharmacy defendants deny the counties'

22    claims that they caused a public nuisance, period.  The

23    defendants contend that they complied with their legal

24    obligations, violated no duties, and that if a public

13:10:24 25    nuisance exists today in the two counties, it was caused

1    by persons other than the pharmacy defendants.

2                    Do you want to say "persons or entities" or

3    do you just want "persons"?

4                    MR. HARRIS:  Your Honor, Alex Harris for

13:10:42  5    Walgreen's.

6                    "Persons" is language that was used in

7    other instructions and so we would like that for

8    consistency.

9                    THE COURT:  All right.  I will say that

13:10:56 10    "Other than the pharmacy defendants."  So that's what

11    we'll say, so we'll make that change.

12                    Are any of the client reps going to be

13    present at voir dire?  Because if so, I would introduce

14    them.  If not, then I obviously won't.  But I want the

13:11:20 15    jurors to know who is at counsel table.

16                    MR. LANIER:  Your Honor, Mark Lanier for

17    plaintiffs.

18                    We're glad to bring them in.  They are here

19    today.

13:11:29 20                    THE COURT:  You don't have to.

21                    MR. LANIER:  We think that with the number

22    of people already in the courtroom, it makes sense not

23    to.

24                    THE COURT:  Okay.  That's fine.

13:11:37 25                    What about defendants, are you going to

```
 1    have client reps at the jury -- the voir dire?

 2                    MR. STOFFELMAYR:  Judge, no, not during

 3    voir dire.

 4                    THE COURT:  All right.  Fine.

 5                    Remind me, I guess the beginning of the

 6    trial I'll indicate that there may be client

 7    representatives at some time.

 8                    I don't -- unless -- if the parties want me

 9    to introduce a client rep each day, I mean, or if there's

10    a different client rep, I can do that.

11                    If you don't, I'll just say it generally

12    and, you know, I don't know if the jurors -- they'll

13    certainly, by the middle of the trial they will know who

14    the lawyers are and they may suspect someone who is not

15    talking may be the client rep, or they may not care.

16                    But if you want me to introduce those

17    people, I'm happy to do it.  Just pass me a note and I'm

18    happy to do it.

19                    MR. DELINSKY:  Your Honor.

20                    THE COURT:  Yes.

21                    MR. DELINSKY:  May I inquire about a

22    related issue?  But I don't mean to knock you off your

23    agenda, so it can wait.

24                    THE COURT:  Well, let me just see.

25                    Special Master Cohen, is there anything,
```

1     anything that needed to be changed in the preliminary

2     jury charge?

3                    It's the same, we're going to say the same

4     thing, so Page 10 of the preliminary jury charge will say

13:13:17  5     exactly the same, it will be exactly the same paragraph.

6                    All right.  Okay.  Sorry.

7                    Now you can go.  I didn't want to forget

8     that.

9                    MR. DELINSKY:  I apologize for

13:13:46 10     interrupting, Your Honor.

11                    THE COURT:  Not at all, Mr. Delinsky.  I'm

12     just an old guy and I don't want to forget something.

13                    Okay.

14                    MR. DELINSKY:  Eric Delinsky on behalf of

13:13:54 15     CVS.

16                    And, Your Honor, I just wanted to inquire

17     if we might be able to reserve, at least for the first

18     few days of trial but preferably for the entire trial,

19     one seat in the gallery for CVS for an additional client

13:14:11 20     representative, depending on the moment, or an additional

21     attorney.

22                    It's more important, Your Honor, for the

23     first day two and three.  Thereafter, we make the request

24     but it's not as important.

13:14:30 25                    We understand the competing balances on the

1        Court's plate with the gallery.

2                    THE COURT:  It's essential they be in this

3        room rather than an overflow room?

4                    Anyone in the overflow room will see and

13:14:42  5      hear exactly the same thing, and they are obviously not

6        going to be able to pass you a note from back there,

7        Mr. Delinsky, at least during -- you know, wait until a

8        break.

9                    I'm not being facetious but I -- you

13:14:59 10      know --

11                   MR. DELINSKY:  It's a fair, it's a fair

12       point, Your Honor, and I think for openings and I think

13       Your Honor's probably aware that a CVS witness will be

14       the first witness called in plaintiffs' case, through the

13:15:13 15      duration of that witness's testimony, we do make the

16       request for an extra seat here in the courtroom, in the

17       gallery.

18                   We obviously can be flexible thereafter.

19                   THE COURT:  All right.  I'll tell you

13:15:28 20      what --

21                   MR. WEINBERGER:  Your Honor, we have one

22       concern.

23                   I assume there's going to be a separation

24       of witnesses in this -- order in this.

13:15:34 25                   THE COURT:  Yes.

1          MR. WEINBERGER:  And so multiple -- you

2     can't have multiple client representatives who also they

3     intend to call as witnesses, and violate the separation

4     of witness rule.

13:15:48 5          MR. DELINSKY:  They are calling our

6     witnesses, Your Honor.

7          THE COURT:  All right.  That's a good

8     point.

9          I mean, I don't -- I haven't discussed

13:16:01 10    that.

11         Mr. Weinberger, what if one of the client

12    reps is a witness?  I mean, is that -- so the client rep

13    can't be a witness, the person who is sitting in the

14    courtroom?

13:16:12 15         MR. WEINBERGER:  I believe the general

16    procedure is that you have to -- the party has to

17    designate who the client representative is going to be

18    for the entire trial.

19         THE COURT:  Well --

13:16:22 20         MR. WEINBERGER:  And to the extent -- and

21    they can't, they can't have another client representative

22    interchangeably when that client representative is a

23    witness.

24         THE COURT:  All right.  Well, that -- those

13:16:33 25    are two issues.

```
 1                    I haven't insisted that Walmart, if Walmart

 2       wants to have a client rep, that it has to be the same

 3       person every day.

 4                    The person might have --

 5                    MR. WEINBERGER:  No, I understand.

 6                    THE COURT:  They may have some duties at

 7       Walmart some of those days.  Okay?

 8                    So I'm not going to insist -- same with

 9       Lake and Trumbull County.  I mean, for gosh sakes,

10       somebody might have to do something for Lake and Trumbull

11       County on October 30th and that's more important, but you

12       can have different client reps.

13                    The issue of whether you can have a client

14       rep who's going to testify is different.

15                    MR. WEINBERGER:  That was the point I was

16       trying to make, Your Honor.

17                    THE COURT:  And that, I guess, could go

18       both ways.

19                    MR. WEINBERGER:  For sure.

20                    THE COURT:  The same rule is going to apply

21       both ways.

22                    I mean, have you talked about that?  What

23       are you proposing?

24                    MR. WEINBERGER:  If you're asking have we

25       talked about -- have the plaintiffs talked about that
```

1    with the defendants, the answer is no.

2                    THE COURT:  Well, we better talk about it

3    now.

4                    I mean, our -- are the plaintiffs planning

13:17:47  5    to have client reps sitting at counsel table who

6    are -- who are going to be witnesses?

7                    MR. WEINBERGER:  The answer is no.

8                    THE COURT:  All right.  What about the

9    defendants?

13:18:03 10                    MS. SULLIVAN:  Your Honor, Diane Sullivan

11    for Giant Eagle.

12                    I believe the law is, Your Honor, that you

13    can designate one corporate rep who can also be a

14    witness.

13:18:11 15                    THE COURT:  I thought that was the -- I

16    mean, I've done that in criminal cases where the case

17    agent is almost always going to be a witness and he or

18    she is sitting at the Government's table, and clearly,

19    well, the defendant obviously has to be present for

13:18:26 20    constitutional reasons, whether he testifies or not.

21                    MR. MAJORAS:  Your Honor.

22                    THE COURT:  Yes.

23                    MR. MAJORAS:  John Majoras for Walmart.

24                    If I may make a proposal, I'm only making

13:18:42 25    it on behalf of Walmart because I haven't talked to my

1    colleagues.

2                    As Ms. Sullivan pointed out, if -- in terms

3    of if we were to identify an individual client rep who is

4    the single client rep who may be sitting at counsel

13:18:53  5    table, that, that client rep, I believe as Ms. Sullivan

6    pointed out, it would be appropriate that they could

7    testify at times.

8                    If there are other client reps that may

9    come in and out of trial, then I don't think anyone is

13:19:03 10    proposing that those individuals would be someone who

11    would testify.

12                    THE COURT:  All right.  Well, that seems to

13    be -- that to me is consistent with my understanding,

14    that each side may have a client rep.  The client rep

13:19:22 15    doesn't have to be the same client rep every day of the

16    six weeks, and you don't have to have a client rep every

17    day.

18                    But you can only have one client rep who's

19    going to be a witness.  Okay?  So I think that's a fair,

13:19:43 20    fair way to deal with it.

21                    I think that covered the things on my, on

22    my list.

23                    MR. MAJORAS:  Your Honor.

24                    THE COURT:  Yes.

13:20:04 25                    MR. MAJORAS:  John Majoras again.

             1              Going to the very mundane here, I know

             2    there's been --

             3              THE COURT:  Nothing is too mundane,

             4    Mr. Majoras.

13:20:12     5              MR. MAJORAS:  This one is not because it

             6    involves lunch breaks.

             7              We understand that the courtroom cafeteria

             8    is closed, which is a potential hardship for the jurors.

             9              THE COURT:  Right.

13:20:20    10              MR. MAJORAS:  And we didn't know whether

            11    that might have some impact on how your typical daily

            12    schedule might be, and if you've got -- got any thoughts

            13    on that or any changes.

            14              THE COURT:  Well, the cafeteria is closed

13:20:32    15    and I actually tried to do something about that,

            16    Mr. Majoras.

            17              Judges' powers are sometimes limited.

            18    We'll leave it at that.

            19              I typically give an hour for lunch.  I

13:20:52    20    mean, I think a lot of jurors may end up bringing their

            21    lunches.  I mean, Tower City is open.

            22              I think I'm going to start with an hour for

            23    lunch, and if it turns out that just doesn't work, we'll

            24    make it an hour and 15 minutes.

13:21:10    25              I mean, I -- you know, I've thought about

1        that, and I think there are pluses and minuses.

2                   But if we have to make it an hour and 15

3        minutes, that's fine.  I mean, I'm going to be doing

4        other Court, Court proceedings obviously remotely, I

13:21:30  5    expect, during the lunch hour, so I think we'll start

6        with an hour, but if it -- if it's just not working,

7        we'll make it an hour and 15 minutes.

8                   That's not mundane at all.  I mean, I've

9        given that a lot of thought, and I -- I tried, I really

13:21:47 10    worked -- was working on the courthouse cafeteria the

11       last couple weeks.

12                  MR. LIVINGSTON:  Your Honor, one last issue

13       I wanted to bring up.

14                  We're prepared to argue our pending motion.

13:22:01 15    Giant Eagle filed a motion to strike the plaintiffs' DEA

16       experts.

17                  THE COURT:  I understand that.

18                  But the plaintiffs have a response that's

19       due soon, and, you know, I've read it very carefully.  I

13:22:17 20    think I understand your argument.  I think you -- but I'm

21       not going to rule on it without giving the plaintiffs an

22       opportunity to respond.

23                  MR. LIVINGSTON:  Fair enough, Your Honor.

24       I just didn't know if you wanted to hear arguments.

13:22:30 25                  THE COURT:  I'm sure they would be very

```
  1        eloquent, Mr. Livingston, but the motion is very clear.

  2        All right.  It's clear, succinct.  I understand it very

  3        well.  I understand what the purpose of errata sheets

  4        are, but I want to see if -- what the plaintiffs say.

13:22:47  5                   So when -- when will we get a response to

  6        that?

  7                   Again, Mr. Livingston, which witness was

  8        that?

  9                   MR. WEINBERGER:  Mr. Rafalski, Your Honor.

13:23:06 10                   THE COURT:  Rafalski, got it.

 11                   MR. LIVINGSTON:  The DEA, and the only

 12        urgency is we need to know before the openings because it

 13        involves what is the scope of plaintiffs' claim against

 14        Giant Eagle.

13:23:16 15                   THE COURT:  I understand that.

 16                   Well, I was definitely going to rule on it

 17        this week, but when will the plaintiffs' response be?

 18                   MR. WEINBERGER:  We'll have a response by

 19        the end of the day tomorrow, Your Honor.

13:23:32 20                   THE COURT:  Okay.  Well, I will -- I will

 21        rule on it this week, Mr. Livingston.

 22                   Anything else?

 23                   Yes, Mr. Lanier.

 24                   MR. LANIER:  Thank you, Your Honor.

13:23:54 25                   If I could ask a couple of mechanics
```

1 | questions, make sure we're doing this right.

2 | It was indicated to us, I think, at the

3 | walk-through that we could approach you with the idea, as

4 | long as all parties agreed to it, that we might be able

13:24:11 5 | to do opening from somewhere around here, recognizing

6 | that we may have two jurors outside of the box there and

7 | two outside of the box there, which makes it a little

8 | more difficult to give the opening from the back.

9 | I got a call from Mr. Hyne, last night --

13:24:29 10 | Hynes, excuse me, I forgot the S -- telling me that all

11 | of the defendants agreed that this would be a good thing

12 | to do.

13 | THE COURT:  That's okay.

14 | MR. LANIER:  So is that okay with the

13:24:38 15 | Court?

16 | Thank you, Your Honor.

17 | THE COURT:  Yeah, my only -- the only

18 | place -- I don't want you crowding the jurors.  I've seen

19 | some lawyers who go, like, right up into the jury and

13:24:46 20 | it's not -- it makes them uncomfortable because they

21 | can't move.

22 | But I'm fine.  We'll have two -- what I'm

23 | going to do is seat the jurors in every other seat for

24 | obvious reasons, so we'll do a little zigzag and have a

13:25:07 25 | couple on each end for a total of 14.

1          So this is fine.

2                    MR. LANIER:  Okay.  Second, Your Honor, in

3      terms of practicalities, how do we -- how would the Court

4      like us to pass documents to witnesses and the other

5      side?

6                    I've got an idea, but if the Court's got

7      direction already, I'll shut up on my idea.

8                    THE COURT:  Well, let's hear your idea.

9                    MR. LANIER:  I categorize witnesses into

10     two groups:  Those that I will be putting on directly and

11     those that I'll be cross-examining.

12                    For cross-examination, because of the

13     element, to some degree, of surprise or not prepped, it

14     seems to me both sides with their cross-examination

15     documents, if we just brought a set that had numbered

16     folders with the documents already open so that it's easy

17     to do, and just kept a box up there.  Knowing what we

18     were going to be using the next day, we'd put it down

19     there in the morning and the witness has got it.  We give

20     a box to the other side, they've got -- or to each side,

21     they've got them.

22                    That would work for cross-examination so

23     that the lawyer could just say, "Ma'am" or "Sir, would

24     you please pull out folder number 7?  And, Your Honor,

25     this is a document we would mark as Plaintiffs' Exhibit

1    blah, blah, blah that we tender at this time."

2                    THE COURT:  Seems like a good idea.

3                    MR. LANIER:  Just it minimizes walking back

4    and forth.

13:26:38  5                    THE COURT:  Right.

6                    The other option is, you know, you might

7    put it on the screen and then you don't have to

8    actually -- but so you can either put it on the screen,

9    or I think I like that idea of having a box and just say

13:26:50 10    pull file seven.

11                    MR. LANIER:  Okay.

12                    THE COURT:  Okay.

13                    MR. LANIER:  Then with those witnesses that

14    we've got on direct, the Rules say that the night before

13:26:59 15    we need to provide the other side with a list of

16    documents that we would be using on direct.  It allows

17    them to know the scope.

18                    THE COURT:  Right.

19                    MR. LANIER:  And those, it seems to me, we

13:27:08 20    can make sure our own witnesses have their documents.

21                    THE COURT:  Sure.  You just have them up

22    there.

23                    MR. LANIER:  Exactly.

24                    THE COURT:  I've done that.  That's -- I

13:27:15 25    always did that, you know, years before.  I never thought

```
 1    of COVID.  Documents are up there, either in a binder or

 2    whatever.

 3                    MR. LANIER:  Exactly.

 4                    THE COURT:  Okay.

 5                    MR. LANIER:  Thank you.

 6                    THE COURT:  Of course, you can put them on

 7    the Elmo and it pops up on everyone's screen, including

 8    your witness.

 9                    MR. LANIER:  Yeah.  And I'm sure we'll do a

10    lot of that, but some of these documents that are

11    multi-page, especially on cross-examination, the

12    witnesses may want to be able to say, "I'd like to see

13    another page of that document."

14                    THE COURT:  That's fine.

15                    MR. LANIER:  So and then my next question,

16    Your Honor, is not having practiced in your Court, I

17    don't know what your rules are on this.

18                    We are planning on calling as our first

19    witness Mr. Tom Davis who works for CVS.

20                    We had alerted Mr. Delinsky that we would

21    use our Rule 43 -- he was our Rule 43 witness -- in case

22    they wanted to bring him live and gave him a week or so

23    warning, and Mr. Delinsky got back to us and said he will

24    be live in the courtroom, which makes it real easy.

25                    So we anticipate, I anticipate putting him
```

1    on first.  He obviously is a significant person within

2    CVS, and is a hostile witness or, as we call them, an

3    adverse witness.

4                    THE COURT:  "Adverse" is a better word.

13:28:35  5                    MR. LANIER:  Okay.  Thank you.

6                    I would assume then that I'm able to

7    cross-examine him, but I just wanted to -- and ask

8    leading questions, but I just want to make sure that

9    there's not a difference here that because I call him in

13:28:49 10   my case in chief even though he's adverse I'm not allowed

11   to ask leading questions, if that makes sense.

12                    THE COURT:  I think that makes sense.

13                    He's clearly a party -- you know, a

14   representative of one of the defendants, so you can --

13:29:05 15                    MR. LANIER:  I can lead, in other words.

16                    THE COURT:  Yeah.  And then --

17                    MR. LANIER:  Thank you, Judge.

18                    THE COURT:  -- so essentially it will be

19   flipped around, because obviously, I mean, you're

13:29:13 20   going -- you're treating him, just the cross-examination

21   is more than the direct.  Obviously you're not treating

22   him as an adverse witness.

23                    But I don't think it's appropriate for the

24   defendants to then ask a whole lot of leading questions

13:29:25 25   of their own witness.

1          MR. DELINSKY:  Judge.

2          THE COURT:  But I'm not -- I'm not

3     hypertechnical on what's leading or not.

4          MR. LANIER:  Okay.

13:29:33  5          THE COURT:  We've all been around the

6     block.  It's almost impossible to do anything without

7     some leading, or else the trial would take forever.

8          So the only real concern is when you've got

9     someone who you don't think, unless you're leading him or

13:29:47 10     her, he's not going to testify, and then that's why you

11     don't ask leading questions.

12          So I think everyone understands that.

13          MR. LANIER:  Thank you, Judge.

14          MR. DELINSKY:  Your Honor.

13:29:58 15          THE COURT:  Yes, Mr. Delinsky.

16          MR. DELINSKY:  Your Honor, I'd love to tell

17     you that I believe Mr. Lanier is wrong, but unfortunately

18     I think the Rule says he's right, but I think the same

19     Rule also says that you can cross-examine, when you stand

13:30:12 20     up for cross, you can ask leading questions, too,

21     regardless of whom the witness is.

22          You could ask leading questions if the

23     witness is adverse; you could ask leading questions if

24     your posture is on cross.  I'm not saying that will

13:30:24 25     necessarily happen with each and every witness who's one

1    of our own, but I just wanted to note that's the wording

2    of the Rule and that's the right.

3                    THE COURT:  Okay.  Technically, you know,

4    some other defendant could say, well, you know, we're a

13:30:38   5    little bit adverse to CVS on this, and want to cross him.

6                    I mean, that's understood.  I mean,

7    defendants don't -- aren't always a hundred percent

8    aligned so that could come up.

9                    MR. DELINSKY:  I'm saying something a

13:30:50  10    little different, Your Honor.

11                    And again I don't imagine -- I'm in your

12    school; I don't imagine this is going to be an issue, but

13    the person who stands up when it's your turn to cross,

14    the Rule says you can ask leading questions.  It doesn't

13:31:05  15    matter if I'm crossing -- if I'm standing up to question

16    a CVS witness and Mr. Lanier already has called that

17    person, I get to ask leading questions.

18                    I'm not saying I'm going to do that.

19                    I'm saying that's what the Rule says, and I

13:31:16  20    just want to put down a marker that it's in the Rule.

21                    THE COURT:  Well, Mr. Delinsky, there's no

22    way that I'm going to allow you to question Mr. Davis in

23    the same manner that Mr. Lanier is.  Okay?

24                    Okay?  That isn't going to happen, because

13:31:38  25    then it will be your testimony, and I want to hear from

1     the client.

2                  So, you know, clearly you're always leading

3     if you're referring to what the witness already said, you

4     can point, point them and say, "You said this, what do

13:31:51  5     you mean," like that.  But if you start then as you're

6     entitled to, you want to put in -- you know, I assume the

7     idea is to just call Mr. Davis once, right?

8                  Or are you planning to call him again in

9     your case.

13:32:04 10                  MR. DELINSKY:  Just once, Your Honor.

11                  THE COURT:  Precisely.

12                  So at some point you're going to want to be

13     bringing out things that he didn't say on direct, okay,

14     that are helpful to your case, and there it would not be

13:32:25 15     appropriate for you to be leading, okay, because that's

16     not cross-examination and you would be bringing it out as

17     if he were called as your witness.

18                  And that's a different kind of questioning,

19     and at that point it's essentially your direct testimony,

13:32:38 20     exactly what you would ask him if, you know, if

21     Mr. Lanier hadn't called him and you called him as your

22     witness.

23                  So I think that's the way, that's the

24     distinction.

13:32:49 25                  MR. LANIER:  Then, Your Honor, the last

1    thing on my list is I had assured the Court and the other

2    side that we had spare chess clocks around.  I brought

3    one around to give to Mr. Pitts.

4                    THE COURT:  Okay.

13:33:00  5                    MR. LANIER:  If the Court doesn't need it,

6    I don't care, but it's just available should the Court

7    desire.

8                    THE COURT:  All right.  Special Master

9    Cohen advised that if you're sort of moving around or

13:33:31 10    away from the lectern, you need to use the lavaliere mic

11    because otherwise our court reporter won't hear you.

12                    MR. LANIER:  Your Honor, we had discussed

13    among the parties whether or not it would be okay to ask

14    you if we could testify -- not testify -- if we could

13:33:52 15    examine, testify or do examinations from counsel table,

16    but I think that --

17                    THE COURT:  You stay seated.  That's fine.

18                    MR. LANIER:  Is that okay if we do it from

19    counsel table?

13:34:03 20                    But I don't think they agreed to it.  I

21    don't want to misrepresent anything.

22                    THE COURT:  I'm saying it's okay, all

23    right, because we're doing things a little differently

24    because of COVID, and these microphones work much better

13:34:15 25    if you're seated than if you're standing.

1          So if you want to -- if you want to do your

2     questioning from counsel table, that's fine.  If you want

3     to go to the lectern, that's fine.

4               MR. DELINSKY:  Your Honor.

13:34:27  5               MR. LANIER:  Thank you, Judge.

6               MR. DELINSKY:  The complexity with that is

7     as I'm sitting here today, I can barely see the witness.

8               THE COURT:  I'm not saying you have to,

9     Mr. Delinsky.

13:34:36 10               MR. DELINSKY:  I know, but what I'm saying,

11     Your Honor, is the plaintiffs' table is the perfect real

12     estate for cross and direct examination, and unless we're

13     going to be rotating tables for particular examinations,

14     there's an element of unfairness to it that for CVS

13:34:52 15     sitting at this table to have a clean line of sight I

16     need to be, you know, it's like "My Cousin Vinny," I need

17     to be a hundred feet back there, and Mr. Lanier gets to

18     be 15 feet in front of the witness.

19               It's just not altogether fair.

13:35:07 20               MR. LANIER:  Your Honor, they have counsel

21     table that's about three feet from me.  If maybe they

22     could switch when they're questioning if they want to do

23     that, or I'd be glad to let Mr. Delinsky take my seat if

24     that happens.

13:35:18 25               THE COURT:  Well, I don't think he should

1    be -- that's, I don't think that's great.

2              Well, I certainly don't want to be unfair

3    to anyone because of where they're seated in the

4    courtroom.  That's, you know, just a happenstance.

13:35:37  5              So if, if you really feel that way, then I

6    guess we should have questioning be at the lectern, all

7    right?  Obviously the microphone works well there, so do

8    the witness examination there.  Jurors can see you, I can

9    see you.  That's fine.

13:35:56 10              All right.

11              MR. MAJORAS:  Your Honor.

12              THE COURT:  Yes.

13              MR. MAJORAS:  I'm sorry.  John Majoras.

14              Just a follow-up on something Mr. Lanier

13:36:08 15    raised about the documents, the witnesses and we fully

16    agree with that, we think that's appropriate.

17              You had mentioned something about if

18    there's a document that may go up on video and, of

19    course, I think everyone will do that.

13:36:18 20              I just want to make sure that we're all

21    committed that the witness will always have a paper copy.

22    As you know, occasionally in a lengthy trial there's a

23    copy that's either mangled or something that has to be

24    handed up, but if we can all commit that at least the

13:36:32 25    witness will have a full paper copy so they have the

1     ability to flip through it and know what's ahead of them.

2                 THE COURT:  I think that's a good idea,

3     Mr. Majoras, because if you say, "Have you seen this

4     document," and all they have seen is Page 1, they may not

13:36:49   5     intelligently be able to answer that question.  But if

6     they flip through it, they can say yes or no.

7                 So, yes, I think that's only fair to the

8     witness.  We should do that.

9                 All right.  Well, I think we've -- you

13:37:00  10     know, obviously there may be other things that will come

11     up, but I think we've covered everything we need to

12     cover.

13                 We've got the best lawyers in the country

14     in this case.  There's no doubt about it.  It's a very

13:37:12  15     important case to all parties and it's a case of national

16     importance.  So I'm requesting and I need everyone's

17     cooperation to ensure that this case proceeds smoothly

18     and expeditiously with a minimum of disruption.

19                 So I don't want to waste time on document

13:37:32  20     authenticity.  All this stuff has to be worked out in

21     advance.  And we're going to start on time and so don't

22     bring up significant matters at 9:00 a.m.  I'm not going

23     to hear them.  We're just going to start.

24                 If you've got an important issue that's for

13:37:48  25     a Wednesday witness, then bring it up at the close of

1      business Tuesday so I can address it.

2                     All right?  Because if someone waits until

3      Wednesday morning, I'm going to simply charge, charge

4      that side, that party with whatever time is taken up, all

13:38:06  5      right, as if you had used it on direct or cross.  And

6      that's the only fair way to do it.

7                     But I, you know, I want the jurors, if I'm

8      ordering them to be here so we start at 9:00, that's what

9      I want to do and take up all these other things.  And

13:38:21  10      I'll tell you, I've scheduled nothing other than during

11      the noon hours, I think, with this trial, for that

12      reason.

13                     So, okay, the last thing I want to say is

14      this, because we've got client reps here.

13:38:39  15                     MR. MAJORAS:  Your Honor.

16                     THE COURT:  Yes.

17                     MR. MAJORAS:  I'm very sorry to interrupt.

18      John Majoras again.

19                     Our client rep has been texting us

13:38:45  20      throughout that she's not been able to dial in.  She

21      keeps getting booted out.

22                     THE COURT:  I wish you would have said

23      something.

24                     MR. MAJORAS:  I didn't want to bring it up

13:38:53  25      during the lunch question, I didn't think it was that

 1    important, but certainly for this.

 2                    THE COURT:  All right.  What's going on

 3    here?  Let's get the client.

 4                    (Discussion had off the record).

13:39:06  5                    THE COURT:  What dial-in number does your

 6    client rep have, Mr. Majoras?

 7                    MR. MAJORAS:  We're checking, Your Honor.

 8                    THE COURT:  Any other client reps having

 9    trouble or notifying you that they're having trouble?

13:39:24 10                    MS. SULLIVAN:  No, Your Honor.

11                    THE COURT:  Okay.  Maybe she's got the

12    wrong number.  It's happened to me more than once.

13                    MR. MAJORAS:  I'm sorry, Your Honor, we

14    can't find the number she is using.

13:39:47 15                    THE COURT:  Well, let's give her -- let's

16    give her the right number.

17                    MR. MAJORAS:  Excellent suggestion, Your

18    Honor.

19                    MR. STOFFELMAYR:  While we're waiting,

13:40:05 20    could I ask the most mundane question which is tomorrow

21    are we starting at 8:30 or 9:00?

22                    THE COURT:  9:00 o'clock.

23                    MR. STOFFELMAYR:  Thank you.

24                    THE COURT:  9:00 o'clock, Mr. Stoffelmayr.

13:40:16 25    Remember it's 19, 19-A.  It's the ceremonial courtroom,

1    and it has a much larger gallery so we can spread our

2    jurors out.

3                    (Pause).

4                    MR. DELINSKY:  Your Honor, while we're

13:41:58  5    waiting, may I raise another logistical issue?

6                    THE COURT:  Sure.

7                    MR. DELINSKY:  I think we may have a

8    professional disagreement on the documents the night

9    before issue, whether, by way of representative example,

13:42:11 10   if Mr. Lanier and the plaintiffs are calling a CVS

11   witness in their case, do the documents have to be shared

12   the night before?

13                   Our position is yes, if it's plaintiffs'

14   witness.  I don't want to put words in plaintiffs'

13:42:26 15   mouths, but I think their position is "If it's cross, we

16   don't have to."

17                   THE COURT:  Well --

18                   MR. DELINSKY:  Your Honor, and to be clear,

19   our position is they should be passed the night before.

13:42:46 20   We will do the same with their witnesses.  We're not

21   asking for a one-way.

22                   THE COURT:  Obviously, the rule is going to

23   be the same both ways.

24                   MR. WEINBERGER:  Your Honor, this -- I

13:43:01 25   can't point chapter and verse to the CMOs that cover

1    this, but this is a cross-examination of a witness, of an

2    adverse witness.

3                         We are not required, under, you know, the

4    procedures we've set up, to provide exhibits to that

13:43:19   5    witness or to their counsel prior to their testifying any

6    more than it was, you know, a witness who they called on

7    direct and we were cross-examining.

8                         THE COURT:  Well, it does seem to

9    be -- defeat any -- well, some of these people have been

13:43:46 10    deposed so you probably have a pretty good idea of a lot

11    of documents.

12                         It would sort of defeat any element of

13    surprise if you're essentially cross-examining, you know,

14    a key witness for the other side, to tell that witness

13:44:01 15    and counsel all the documents you're going to use.  And

16    it works the same both ways.

17                         I --

18                         MR. DELINSKY:  Your Honor, if I may, the

19    distinction, this is a situation where plaintiffs are

13:44:15 20    electing to exercise their rights to call a witness in

21    their case in chief where there's no limit on the scope.

22    The scope's not restricted in their cross to the subject

23    matter of our direct.

24                         That's what would occur in a conventional

13:44:34 25    cross, if the witness were called in our case.  And under

1    those circumstances, where plaintiffs are making the

2    election, there are some limits on scope.

3              We do think it's appropriate for there to

4    be the exchange.

13:44:51  5              MR. WEINBERGER:  Your Honor, there's

6    no -- if they were to call Mr. Davis under direct,

7    there's no limitation in cross-examination based upon the

8    scope of their direct examination.

9              It may be true with respect to redirect or

13:45:02 10    recross, but that's certainly not the case with respect

11    to cross-examination of a witness who they are calling on

12    direct.

13              And so under these circumstances where

14    we're calling the witness under cross as an adverse

13:45:19 15    witness, we're entitled to ask him --

16              THE COURT:  Well, all right, but if that's

17    the case then, then, you know, then CVS doesn't have to

18    turn over to you any of the documents they're planning to

19    use with Mr. Davis either on their -- their examination.

13:45:37 20              MR. WEINBERGER:  Well, I mean, I understand

21    what you're saying.

22              I don't think that's what our protocols

23    call for, but if that's the ruling, we're okay with it.

24              THE COURT:  Well, I can't -- I mean, we've

13:45:47 25    got to have the same strike zone.

1          MR. WEINBERGER:  Well --

2          THE COURT:  So if you're not turning over

3     your documents on Mr. Davis, then, you know, Mr. Delinsky

4     is not going to turn over his on Mr. Davis.

13:45:59  5          If he called Mr. Davis as a witness, he

6     would have to provide those to you.

7          MR. WEINBERGER:  Right.

8          Well, if they want to wait to call

9     Mr. Davis in their case and direct -- and do a direct

13:46:11 10     examination, that's fine.

11          This is no different, Your Honor.  They are

12     apparently not going to call him back.  They're going to

13     use the opportunity to call him to a direct

14     examination -- to directly examine him, and so they have

13:46:27 15     to follow the rules which require them to turn over the

16     documents in advance.

17          Now, for this particular witness, as long

18     as we're not setting any precedent, if for this witness

19     only that's the way the Court wishes to --

13:46:41 20          THE COURT:  I'm not going to have different

21     rules for different witnesses.  That doesn't make -- I've

22     never had a trial where we have different rules for

23     different witnesses.

24          MR. LANIER:  Your Honor, Mark Lanier

13:46:55 25     interrupting my friend Pete to say we're fine with that,

1    Your Honor.  We'll do it exactly the way you said, and

2    Mr. Delinsky does not need to give us those documents

3    early.

4              THE COURT:  All right.  If that's -- if

5    that's how you want to do it, and then if in the

6    defendants' case they're calling, you know, a Lake County

7    or Trumbull County person, then you don't have to give

8    your documents, but you're not going to get the

9    plaintiffs' documents with all the questioning of their,

10   you know, their persons.

11             So you'll both be doing it sort of blind.

12   If that's how you want to do it, fine.  I mean, you know,

13   if everyone's comfortable with that, then that's what

14   we'll do.

15             MR. DELINSKY:  Your Honor, I believe our

16   position is -- and I have not conferred with the other

17   defendants so we'll call it the CVS position is that we

18   believe that if a party is calling a witness in their

19   case in chief, they should disclose the documents they

20   intend to use the night before.

21             And that said, Your Honor, and I direct

22   Your Honor's attention to Document 3595-2, that's the

23   joint trial exhibit stipulation, and on Page 6 of that

24   document it does say, "In light of the complexity of this

25   litigation, the parties may use on cross-examination

1    exhibits that were not previously identified on an

2    exhibit list only if they disclose those unlisted

3    exhibits by 7:00 p.m. on the prior day."

4              Now, that's documents not on exhibit list.

13:48:34  5    It doesn't address everything I'm pointing out, but I do

6    just want to point that out.

7              THE COURT:  I -- I'm not following this.

8              If this is all covered, if I've issued an

9    order that covers this, then we're going to follow the

13:48:48 10    order.

11              MR. DELINSKY:  Well --

12              THE COURT:  Special Master Cohen, could you

13    come up?

14              Have we covered this in an order?  If the

13:48:57 15    order covers it, it's whatever I ordered.

16              SPECIAL MASTER COHEN:  One and 2-A carves

17    out an exception to the rule, and I think you're right

18    that it must apply, but it's a caveat and doesn't cover

19    what the Judge just ruled otherwise.

13:49:14 20              I think everybody understands that.

21              THE COURT:  I don't really care.  It's just

22    going to be the same for both sides.

23              So if -- either you're going to have to

24    follow the general rule, and the general rule is if you

13:49:29 25    call a witness in your case in chief, you provide the

1    documents you're going to use the night before, that's

2    the general rule.

3                    Mr. Weinberger has said that he wants an

4    exception to that, that if either side is calling an

13:49:44  5    adverse witness, a party, some party rep of the other

6    side in its case in chief, then you don't have to turn

7    over the documents.

8                    And I want to see if that's -- you know, if

9    that's agreeable to defendants.  So we'll carve that out.

13:50:06 10    If it's not, then we'll go back to the, you know, default

11    is that you have to turn them over whether it's your

12    witness or not.

13                    MR. DELINSKY:  That's not agreeable for

14    CVS.

13:50:26 15                    We would prefer that the general rule --

16                    THE COURT:  All right.  We'll go back to

17    the order that I've got in place is that if you call a

18    witness, whether it's your witness, it's the other

19    parties' witness, you're calling him or her in your case

13:50:42 20    in chief, you've got to turn over the documents.

21                    MR. LANIER:  Your Honor, if I could, I've

22    got your order, I've got the joint trial stipulation in

23    front of me, and it doesn't say whether you call the

24    witness or not.

13:50:53 25                    The rule is simple because we negotiated

1       this exhaustively, "Direct examination documents have to

2       be disclosed by 7:00 p.m. the day before.

3       Cross-examination documents do not unless the

4       cross-examination document is not on the exhibit list."

13:51:13    5           If you've come up with a new one not on the

6       exhibit list, you need to disclose it so the other side

7       has it.  But it's not did you call the witness, it's

8       direct examination or cross-examination because you don't

9       provide cross-examination documents to the other side to

13:51:29   10       prepare their witnesses to handle and to -- to, you know,

11       get their trial prep going.

12           Once the witness is on the stand, we can

13       provide them because the rule is the lawyers can't talk

14       to the witness once they've started testifying.

13:51:46   15           But what you've already got in place is not

16       what Mr. Delinsky has indicated.  It divides between

17       direct examination documents and cross-examination

18       documents.

19           MR. DELINSKY:  Your Honor.

13:51:55   20           THE COURT:  All right.  If we've done it,

21       then we're going to stick with that.

22           So it goes the same way, if you're calling

23       in your case in chief a Lake County or Trumbull County

24       person, you don't have to turn over your documents,

13:52:08   25       Mr. Delinsky.  You can cross-examine them cold.

1          MR. DELINSKY:  Your Honor, I believe we're

2     conflating direct examination and leading questions.

3          THE COURT:  Well, I mean it's -- if you're

4     calling a party rep of, you know, the other side,

13:52:22  5     obviously it's an adverse witness and you can -- I've

6     already said you can cross-examine that person.

7          MR. DELINSKY:  But, Your Honor, I think --

8     not to put words in the Court's mouth -- I think what the

9     Rule says is you can ask leading questions.  It doesn't

13:52:35 10     convert it to a direct examination, a direct examination

11     to a cross-examination.

12          This witness, by way of example here, to

13     bring it down to brass tacks is going to be the first

14     witness to testify in the courtroom, that's a direct

13:52:52 15     examination and leading questions are allowed, but the

16     documents have to be produced.

17          THE COURT:  I mean, if you're examining the

18     witness as on cross, it's cross-examination.  That's what

19     it means.  If you're examining them as direct, it's

13:53:12 20     direct.

21          And so the presumption is if it's an

22     employee of an opposing party, I've already said you

23     can -- you can essentially do cross-examination when you

24     call him or whether the other side calls him.

13:53:29 25          So it's cross-examination.  So that's how

1      we'll treat it then.  So you don't have to turn over the

2      documents.

3                     Now, but that suggests that if then, if

4      then the other side wants to bring out a whole lot of

13:53:46  5      direct examination with that witness and you're planning

6      to do that, then you have to provide those because you

7      know you're going to be conducting direct examination,

8      say, of Mr. Davis.  You've got a whole lot of direct

9      examination of Mr. Davis, it's a lot more efficient just

13:54:02 10      to do it now and not call him a second time, well, then

11      you've got to provide those.  All right?

12                     And they have to do the same thing.  If you

13      call a Lake County official, you don't have to provide

14      any of your documents, Mr. Delinsky, on the Lake County

13:54:16 15      official.  But if Mr. Lanier then is going to bring out a

16      whole lot of direct testimony from that Lake County

17      official, the same questions you would ask that person if

18      he called him in the case in chief, he's got to provide

19      those documents to you the night before.  So you'll see

13:54:33 20      that because that's direct testimony that he's going to

21      do.

22                     The fact he does it second doesn't make

23      it -- doesn't change anything.  The order doesn't change

24      anything.

13:54:42 25                     So that's what we'll do.

```
 1                     All right.  Has the Walmart --
 2                     MR. MAJORAS:  Yes, Your Honor.  Apologize
 3        for that delay, but she has been able to join.
 4                     THE COURT:  She has heard some
13:54:53  5        scintillating --
 6                     MR. MAJORAS:  I'll fill her in on the lunch
 7        discussion, Your Honor.
 8                     THE COURT:  -- dialogue here.
 9                     All right.  I believe that there eventually
13:55:06 10        will be a global resolution involving some or all of
11        these pharmacies as there are with many of the other
12        defendants, and the ones who aren't, there are active
13        discussions going on.
14                     I believe that trying this case to
13:55:20 15        conclusion will make resolution harder.  That's my
16        opinion.  All right?
17                     And if this case is tried to conclusion,
18        we'll almost certainly need to try the other five
19        bellwethers to conclusion, and that's another year or
13:55:36 20        more.
21                     So I'm urging all sides, both plaintiff
22        counties, the four defendants, and this is for the
23        clients, all right, evaluate the witnesses and evidence
24        as it comes in.  All right?  And use this trial as an
13:55:50 25        opportunity to engage in the kind of meaningful
```

1    discussions that have not happened over the last couple

2    of years, all right?

3                        My daytime hours are obviously going to be

4    occupied, as all of yours are, but I'm available on the

13:56:05  5    weekends and evenings if people need my help.  But this

6    is for the clients listening in, Lake County and Trumbull

7    County officials and the officials from the four

8    defendants.

9                        So that about concludes it right on time,

13:56:25 10    so we'll see everyone tomorrow at 9:00 a.m. in 19-A.

11                        MS. SULLIVAN:  Thank you, Your Honor.

12                        MR. MAJORAS:  Thank you, Your Honor.

13                        THE COURT:  All right.

14                        (Proceedings concluded at 1:56 p.m.)

13:56:38 15                          -  -  -  -

16                        C E R T I F I C A T E

17                        I certify that the foregoing is a correct

18    transcript from the record of proceedings in the

19    above-entitled matter.

20

21

22    **/s/Susan Trischan**
      /S/ Susan Trischan, Official Court Reporter
      Certified Realtime Reporter
23
      7-189 U.S. Court House
24    801 West Superior Avenue
      Cleveland, Ohio 44113
14:02:08 25    (216) 357-7087