1      IN THE DISTRICT COURT OF THE UNITED STATES
           FOR THE NORTHERN DISTRICT OF OHIO
2                   EASTERN DIVISION

3

       IN RE:                        Case No. 1:17-md-2804
4      NATIONAL PRESCRIPTION          Cleveland, Ohio
       OPIATE LITIGATION
5                                     October 4, 2021
       CASE TRACK THREE               11:30 A.M.
6

7

8                      - - - - -

9

10         TRANSCRIPT OF PRETRIAL PROCEEDINGS,

11      BEFORE THE SPECIAL MASTER DAVID COHEN,

12         UNITED STATES DISTRICT JUDGE,

13

14                     - - - - -

15

16

17   Official Court Reporter: Susan Trischan,RMR,CRR,FCRR,CRC
                                7-189 U.S. Court House
18                              801 West Superior Avenue
                                Cleveland, Ohio  44113
19                              216-357-7087
                                Susan_Trischan@ohnd.uscourts.gov
20

21   Proceedings recorded by mechanical stenography;
     transcript produced by computer-aided transcription.
22

23

24

25

```
 1    APPEARANCES:
      For the Plaintiffs:        Peter H. Weinberger, Esq.
 2                               Spangenberg, Shibley & Liber
                                 1001 Lakeside Avenue, Ste. 1700
 3                               1900 East Ninth Street
                                 Cleveland, Ohio    44114
 4                               216-696-3232

 5                               W. Mark Lanier, Esq.
                                 Rachel Lanier, Esq.
 6                               M. Michelle Carreras, Esq.
                                 Maria Fleming, Esq.
 7                               The Lanier Law Firm
                                 6810 FM 1960 West
 8                               Houston, Texas    77069
                                 813-659-5200
 9
                                 Frank L. Gallucci, III, Esq.
10                               Plevin & Gallucci Company, LPA
                                 The Illuminating Building
11                               Suite 2222
                                 55 Public Square
12                               Cleveland, Ohio    44113
                                 216-861-0804
13
                                 Salvatore C. Badala, Esq.
14                               Napoli Shkolnik
                                 360 Lexington Ave., 11th Floor
15                               New York, New York    10017
                                 212-397-1000
16
      For Walgreen Defendants:   Kaspar J. Stoffelmayr, Esq.
17                               Brian C. Swanson, Esq.
                                 Katherine M. Swift, Esq.
18                               Alex Harris, Esq.
                                 Sharon Desh, Esq.
19                               Bartlit Beck LLP
                                 54 West Hubbard Street, Ste.300
20                               Chicago, Illinois    60654
                                 312-494-4400
21
      For CVS Defendants:        Graeme W. Bush, Esq.
22                               Eric R. Delinsky, Esq.
                                 Alexandra W. Miller, Esq.
23                               Paul B. Hynes, Jr., Esq.
                                 Zuckerman Spaeder - Washington
24                               Suite 1000
                                 1800 M Street, NW
25                               Washington, DC    20036
                                 202-778-1831
```

```
 1    For HBC/Giant Eagle
      Defendants:                   Robert M. Barnes, Esq.
 2                                  Scott D. Livingston, Esq.
                                    Marcus & Shapira
 3                                  35th Floor
                                    One Oxford Centre
 4                                  301 Grant Street
                                    Pittsburgh, PA    15219
 5                                  412-471-3490

 6                                  Diane P. Sullivan, Esq.
                                    Chantale Fiebig, Esq.
 7                                  Weil Gotshal & Manges
                                    Suite 600
 8                                  2001 M Street NW
                                    Washington, DC    20036
 9                                  202-682-7200

10    For Walmart Defendants:       John M. Majoras, Esq.
                                    Jones Day – Columbus
11                                  Suite 600
                                    325 John H. McConnell Blvd.
12                                  Columbus, Ohio    43215
                                    614-281-3835
13
                                    Tara A. Fumerton, Esq.
14                                  Tina M. Tabacchi, Esq.
                                    Jones Day – Chicago
15                                  Suite 3500
                                    77 West Wacker
16                                  Chicago, Illinois    60601
                                    312-782-3939
17

18
                                - - - - -
19

20

21

22

23

24

25
```

1          MONDAY, OCTOBER 4, 2021, 11:34 A.M.

2               SPECIAL MASTER COHEN:  There are some folks

3     that are continuing to work on the tech.  You can go

4     ahead and continue to do that while we hold the hearing.

5               I'm going to ask everybody to continue to

6     identify themselves for the record.  There are a lot of

7     people in the courtroom, and Sue, our Court Reporter,

8     will eventually know everybody, but at least for now, if

9     you could continue to do that, I think --

10               MR. WEINBERGER:  Do you want me to close

11     that door?  There are people outside that are not

12     identified.

13               SPECIAL MASTER COHEN:  Yes.  Does somebody

14     want to close that door?

15               (Pause.)

16               SPECIAL MASTER COHEN:  Is there anybody in

17     the courtroom besides counsel?

18               Okay.  So we're here to discuss objections

19     to the PowerPoint slides in opening statements.

20               I understand that the defendants want to

21     object to plaintiffs' slides and that plaintiffs want to

22     object to some of Giant Eagle's slides.

23               I did receive -- I'm not sure when I

24     received it, but this morning I reviewed the list of

25     objections, and I've spent a little bit of time, not a

1    lot, haven't had time, to look at the slides themselves.

2            And so what we're going to do is just go

3    slide by slide.  We're not going to spend a lot of time

4    arguing each side.  I need a very quick statement of what

5    it is that the defendants object to, and I mean very

6    quick.  I may ask the plaintiffs to respond.  I may not.

7    And we're just going to go through it slide by slide.

8            Before I start, though, this tie used to

9    belong to Francis McGovern.  It's now around my neck and

10   I know that Francis loved doing this and loved being a

11   part of this and I'm sorry that he's not here so I'd like

12   to just have five seconds of silence in honor of the

13   memory of Francis.

14            (Pause.)

15            SPECIAL MASTER COHEN:  Thank you.

16            All right.  So I am now looking at the

17   slides.

18            Who's going to speak for defendants?

19            MS. SWIFT:  Special Master Cohen, it's Kate

20   Swift for Walgreen's.

21            SPECIAL MASTER COHEN:  Can you pull your

22   microphone a little closer?

23            MS. SWIFT:  Certainly.

24            And I'm perfectly happy to go through each

25   side if that's what you want to do but we were hoping to

1    streamline them for you if we could.

2                 We identified a list of objections last

3    night.  Working quickly, we've narrowed it a bit to two

4    categories of objections, which I'm happy to address

11:39:03  5    first.

6                 SPECIAL MASTER COHEN:  That's fine.  Go

7    ahead.

8                 MS. SWIFT:  So the first category is

9    misstatements of the law, and then the second is

11:39:11 10    misstatements of expert testimony.

11                 With respect to the misstatements of the

12    law, we would start with Slide Number 3 and we have extra

13    copies if you need them.

14                 SPECIAL MASTER COHEN: I've got it.

11:39:23 15                 MS. SWIFT:  You've got it?

16                 Slide 3 says that, "It's your job as jurors

17    to figure out if these pharmacy companies are partly to

18    blame for the crisis," which is a misstatement of the

19    legal standard.

11:39:35 20                 The standard is whether the pharmacies were

21    a substantial factor in creating the public nuisance.

22    That's the objection.

23                 SPECIAL MASTER COHEN:  Plaintiffs?

24                 MR. LANIER:  Your Honor, Mark Lanier

11:39:49 25    responding for plaintiffs.

1          Partly to blame is just the way I would

2     word it.  This is in layman's terms and they've got to be

3     a significant part.  There's no doubt about that.  And

4     this is opening statement and I think that I'm entitled

11:40:04  5     to say that.

6          I think I could have said that without

7     putting it on the slide and just said, you know, that's

8     what you're here to do.

9          Are they part of the blame?  To be blamed,

11:40:15 10     you've got to be a significant contributing factor.  Are

11     they one of those?  The defendants have been trying to

12     wage this whole time that there are others who are

13     responsible and they have no culpability, and the trial

14     is one, not to determine damages, not to determine money,

11:40:29 15     but simply to determine if they're part of that blame.

16          And that decision is made by reading the

17     charge and answering the questions.

18          SPECIAL MASTER COHEN: Right.  Thank you.

19          I think you need to change this to read

11:40:41 20     "similarly to," the same as the jury instruction, which

21     Kate quoted.

22          You can say what you want to say.  You can

23     use that language, but this slide needs to set out,

24     because it's written and it's going to be read by the

11:40:53 25     jury, substantial cause of a public nuisance or something

1     like that.

2                    Next.

3                    MS. SWIFT:  The next is on, it's a set of

4     slides that is addressed on Page 2 of the objections.

11:41:07  5     It's Slides 66, 79, 91, and 93.

6                    All of these slides have the same issue.

7     It's a misstatement of the law with respect to the

8     pharmacies's obligations.

9                    These slides say, "Dispensers must dot,

11:41:27 10     dot, dot, provide suitable tools to pharmacists, red flag

11     education, training, tools."

12                    And that's not the standard.  Judge Polster

13     has ruled that the CSA and its regulations do not specify

14     what controls and procedures a pharmacy must use to

11:41:45 15     prevent diversion.  That's in his order on

16     reconsideration at Docket 3499 at Page 7.

17                    SPECIAL MASTER COHEN: Can you hand me that

18     order -- can you hand me that order?

19                    MS. SWIFT:  Yes, sir.

11:41:57 20                    SPECIAL MASTER COHEN: Do you want to

21     respond, Mark?

22                    MR. LANIER:  Sure, Your Honor.

23                    I think this is exactly what the *Holiday*

24     case holds, but I'm glad to change it to provide suitable

11:42:10 25     tools to pharmacists, and then where I have red flag

1    education, training and tools, all I had planned on

2    saying, you know, for example -- thank you -- red flag,

3    education, training, and tools.  I'll be glad to put, you

4    know, "EG" for as an example in front of that.

5          You know, those are good examples.  The

6    law's not precise on exactly what everybody must do

7    beyond providing suitable tools.  And so those are

8    examples that I plan on using.

9          They need to train them.  They need to give

10   them the tools.  Red flags are something that's used by

11   the DEA over and over and over and over.  It's used

12   within the companies themselves.

13         And that's what I think they ought to do.

14         SPECIAL MASTER COHEN:  So what are

15   you -- what are you proposing that you do besides "EG"?

16         MR. LANIER:  I could say "For example,

17   comma."

18         SPECIAL MASTER COHEN:  Anything else?

19         MR. LANIER:  "Up to and including."

20         I mean --

21         SPECIAL MASTER COHEN:  I thought there was

22   something else you were going to say.

23         MR. LANIER:  I was just going to say EG,

24   you know, which is the abbreviation, Latin abbreviation

25   of "for example."

1          SPECIAL MASTER COHEN:  I think that is a

2      good idea to add, "For example."

3                  Otherwise, the objection is overruled.

4                  Next.

11:43:31  5          MR. LANIER:  Okay.

6          MS. SWIFT:  The third category is

7      misstatements as to Craig McCann's expert testimony.

8      This is Slide 118.

9                  And there are two issues with this slide.

11:43:49  10     The first is with the second bullet.

11         SPECIAL MASTER COHEN:  Is this the one -- I

12     just want to make sure we're on the same -- is this the

13     one that says "data analyst" on the top?

14         MS. SWIFT:  Yes.

11:44:00  15        SPECIAL MASTER COHEN:  Go ahead.

16         MS. SWIFT:  The second bullet says that

17     Craig McCann investigated distributor defendants'

18     behavior.  He didn't.  He didn't look at a single

19     defendant system and he has no opinion whatsoever as to

11:44:12  20    whether any defendant did anything wrong.  He didn't look

21     at our behavior and offer opinions on it.

22                 Then the second issue is with the language

23     in the box that says, "He will testify to the amount of

24     the defendants' failures on suspicious orders."

11:44:25  25                 Again, Dr. McCann has unequivocally

1    disclaimed any opinion about whether his flagged orders

2    are actually suspicious.  That's well beyond the scope of

3    his expertise.

4                    SPECIAL MASTER COHEN:  Plaintiffs?

11:44:38  5         MR. LANIER:  Okay.  On the first one,

6    investigated distributor defendants' behavior, that's the

7    data that he has investigated, how many pills did they

8    put out and how many are there, and that's the behavior.

9                    They're in the dispensing business.  I

11:44:53  10  could say, "Investigated distributor defendants'

11   dispensing numbers," if that's better.

12                    As for testifying to the amount of the

13   defendants' failures on suspicious orders, he's

14   bootstrapping from Carmen Catizone and others about what

11:45:09  15  the suspicious orders are.  He's not determining the

16   suspicious orders.

17                    Read properly, this reads that way, too.

18   He'll testify to the amount of the failures on suspicious

19   orders.  He's handed, "Here is the suspicious order

11:45:24  20  criteria.  Can you give us the amounts," and that's what

21   he'll testify to, the amounts.

22                    SPECIAL MASTER COHEN:  Make sure my phone

23   is off.

24                    You know, opening statement is a promise.

11:45:35  25  You're making some promises that defendants think you

1       won't be able to keep but that's up to you.

2                       That objection's overruled.

3                       Next slide.

4                       MS. SWIFT:  Special Master Cohen, that's

11:45:48  5     the last one that I was going to address.  I believe

6       others may have others they want to speak to.

7                       SPECIAL MASTER COHEN:  Okay.

8                       MS. SWIFT:  Maybe.

9                       MS. FUMERTON:  Special Master Cohen -- this

11:46:03 10     is in the way.  Can you hear me?

11                      SPECIAL MASTER COHEN:  Yes.

12                      MS. FUMERTON:  Tara Fumerton on behalf of

13      Walmart.

14                      The only other slide that we wanted to

11:46:12 15     discuss was Slide 87, and that's the slide of Nicole

16      McCallion, who's a foster parent.

17                      We just wanted to remind the Court that we

18      have an objection on file to this witness.  That's docket

19      3941, and we're objecting to her testimony on relevance,

11:46:24 20     402 and 403, and as an improper lay opinion.  It just has

21      not been ruled upon.

22                      SPECIAL MASTER COHEN:  And I haven't looked

23      at it.

24                      What makes it improper?

11:46:45 25                     MS. FUMERTON:  Well, Special Master Cohen,

1    I think for several different reasons.

2                    One, on the relevance front.  The opinion

3    of a particular foster parent on -- without any ties to

4    any of the defendants' products, and with respect to, you

5    know, whether or not a public nuisance exists or we were

6    a substantial cause to it is not probative and is

7    unfairly prejudicial.

8                    SPECIAL MASTER COHEN:  Is she simply and

9    only that, a foster parent, or does she have some role in

10   like a foster parent organization?

11                   MS. FUMERTON:  My understanding is that

12   she's just going to be testifying, excuse me, about her

13   personal experience, but plaintiffs can let us know if

14   that's wrong.

15                   MR. LANIER:  That is correct, Your Honor.

16   She's a foster parent who has fostered these children

17   through a lot of this mess and is here to offer her fact

18   testimony.  She's a fact witness.

19                   SPECIAL MASTER COHEN:  Well, once again, so

20   the Court -- and it might not be me -- will eventually

21   rule on the admissibility of any testimony from this

22   witness.

23                   It's your risk to make a promise during

24   opening statement that you can't keep.

25                   MR. LANIER:  Understood.

1    SPECIAL MASTER COHEN:  So as such, I'll

2    overrule the objection.

3    MS. FUMERTON:  Thank you.

4    SPECIAL MASTER COHEN:  Any other -- go

11:48:03  5    ahead.

6    MR. HYNES:  Paul Hynes for CVS.

7    This is a question for plaintiffs on

8    Slides, I think it is 48 and 49.  Mr. Lanier, are those

9    video clips you're going to play or pictures you're going

11:48:17  10    to show?

11    MR. LANIER:  They're not video clips I'm

12    going to play and it's not anything I'm going to dwell on

13    beyond just mentioning the fact that he's been on TV, 60

14    Minutes, he's testified in front of Congress.  It's just

11:48:30  15    bam, bam, bam.

16    MR. HYNES:  Okay, fine.

17    Then Slides 103 and 104, Slide 103 has the

18    words "Profits" in big letters.  The next slide shows

19    pictures of dollar bills.  The ruling at Docket 3058 at

11:48:47  20    Page 59 says the Court will exclude evidence regarding

21    defendants' overall financial conditions and assets but

22    will allow evidence regarding defendants' revenues and

23    profits related to opioid sales."

24    This slide has no connection to opioids.

11:49:06  25    Defendants have taken no discovery as to profitability as

1    it relates to opioids.  We think those slides are --

2                SPECIAL MASTER COHEN:  That objection is

3    overruled.  Overruled.

4                MR. HYNES:  Okay.

11:49:19  5                MS. FUMERTON:  Special Master Cohen, I have

6    actually one more and I'm not sure, we had raised this

7    with plaintiffs earlier today and, Mark, I don't know if

8    you are still considering that but on Slide 76, there was

9    an improper Walmart logo and we called plaintiffs this

11:49:34 10   morning and asked them to switch it out.

11                MR. LANIER:  I'm -- if you'll give me the

12    proper Walmart logo, I'm glad to use it.

13                MS. FUMERTON:  Well, I think, Mark, that

14    you have used it in other slides so this is just the one

11:49:46 15   slide.

16                MR. LANIER:  Okay.  If you'll show me,

17    Tara, which is the proper one, I'll be glad to change it.

18    How's that?

19                MS. FUMERTON:  Okay.  We'll do so.

11:49:54 20                MR. LANIER:  And you can just look over my

21    shoulder and say, "Move that one over."  I'll do it.

22                MS. FUMERTON:  Okay.  Will do.  Thank you.

23                MR. LANIER:  You bet.

24                MR. HYNES:  Paul Hynes for CVS.

11:50:05 25                We want to note our objection to the

1    documents in Slides 105 and 125 just for reservation of

2    the record.

3              And then we have two objections to some of

4    the exhibits that plaintiffs' sent last night that they,

11:50:22  5    I guess, intend to use in their opening.

6              We can deal with the slides first.  I

7    wasn't sure if there were any other slides.

8              SPECIAL MASTER COHEN:  Did you say 105 and

9    125?

11:50:32 10              MR. HYNES:  Yes.

11              SPECIAL MASTER COHEN:  125 is just the logo

12    of the National Association of Chain Drug Stores?

13              MR. LANIER:  You mean 123, Perdue pains?

14              MR. HYNES:  123 -- ours are misnumbered.

11:50:44 15    Sorry about that.

16              MR. LANIER:  Or 124.

17              SPECIAL MASTER COHEN:  I hope I'm looking

18    at the same slides.  My 123 just says Episode 8.

19              MR. LANIER:  Yeah.  It's 124, Your Honor.

11:50:53 20    It should say CVS and Perdue Partners Against Pain.

21              SPECIAL MASTER COHEN:  Got it.

22              MR. HYNES:  I apologize for the confusion.

23              SPECIAL MASTER COHEN:  Okay.  You said

24    you're objecting for the record.

11:51:03 25              I assume you're not expecting me to rule.

1           MR. HYNES:  Correct.

2           SPECIAL MASTER COHEN:  Go ahead.

3           MR. HYNES:  Anyone else have any other

4      slides?

11:51:11  5           Okay.

6           SPECIAL MASTER COHEN:  So to be clear,

7      defendants, I guess, yesterday or maybe this morning

8      filed a document that says defendants' objections to

9      plaintiffs' opening statement slides and documents

11:51:27 10     intended to be used in opening statements, and it has a

11     whole bunch of slides that you haven't addressed.

12           So are we skipping those?

13           MS. SWIFT:  Special Master Cohen, Kate

14     Swift for Walgreen's.

11:51:43 15          We put those together last night in an

16     abundance of caution, and we were working quite quickly,

17     we've narrowed it down.  The ones we've addressed are the

18     ones we wanted rulings on.

19           SPECIAL MASTER COHEN:  Okay.  Thank you.

11:51:53 20     Very good.  I appreciate your narrowing.

21           Are there any issues, any other issues

22     defendants want to raise with regard to plaintiffs'

23     slides?

24           MS. SWIFT:  I'm sorry.  My partner was

11:52:07 25     speaking to me.  I didn't hear what you said.

1          SPECIAL MASTER COHEN:  I just asked if

2     there were any other issues defendants want to raise with

3     regard to plaintiffs' opening statements slides?

4          MS. SWIFT:  The only other thing I would

11:52:17 5     say is we preserve the objections we raised in the

6     submission to you last night.

7          MS. FIEBIG:  Special Master Cohen, I'm

8     sorry to be late to interject but could we ask about one

9     other slide that was noted on the objection list last

11:52:28 10     night while we have you here?

11          SPECIAL MASTER COHEN:  Yes.

12          MS. FIEBIG:  This is Chantale Fiebig

13     speaking for Giant Eagle.

14          We wanted to draw your attention to Slide 2

11:52:38 15     in which the plaintiffs say this case is about the

16     distribution and dispensing of opioids in Ohio and the

17     United States and we think that is a misstatement of the

18     scope of this case and it should be limited to Lake and

19     Trumbull county.

11:52:50 20          SPECIAL MASTER COHEN:  So I was actually

21     kind of surprised defendants didn't raise this because

22     this was the one slide I looked at and thought it was a

23     little bit problematic.

24          I'm going to sustain that objection.  What

11:53:01 25     I think this needs to say is this is about the

1    distribution and dispensing of opioids in Lake and

2    Trumbull Counties and the resulting community harm.

3                    You're certainly welcome to say that what

4    happened in Lake and Trumbull Counties happened elsewhere

5    in Ohio, the United States, etc., but the slide is

6    different.

7                    Go ahead.

8                    MR. LANIER:  No, Your Honor, that's not

9    our -- our contention is going to be quite different.

10                    Our contention is the evidence from the DEA

11    and the evidence from the Ohio Board of Pharmacy and the

12    evidence from the defendants' records themselves indicate

13    that there was a pipeline of pills that came from Florida

14    up into Ohio.

15                    It's the reciprocal argument in a sense to

16    the argument the defendants make that there's a pipeline

17    of drugs that run from Mexico up here on an illegal basis

18    for illegal drugs.

19                    In the same way, there is an illegal drug

20    pipeline.  In fact, in 2012, there was an Ohio drug ring

21    that was busted for hauling drugs up that were grabbed

22    illegally in Florida from the pill mills down there.

23                    That's in the DEA PowerPoints.  Joe

24    Rannazzisi.  It's in a McKesson slide that is also within

25    these defendants' PowerPoints, at least one of them,

1    CVS's, I believe.

2              It is something that's within the Walmart

3    documents where Walmart talks about how the

4    Florida-to-Ohio pipeline is significant.  And because

11:54:36  5    there is such a problem that these companies had, at

6    least some, CVS certainly, in Florida, that is a direct

7    cause of these issues in Ohio or so we will allege.

8              So this is dead on accurate for the case I

9    plan on presenting.  It's about the distribution and

11:54:57 10    dispensing of opioids in Ohio and the United States, and

11    the resulting community harm.

12              I'm not after the harm anywhere except in

13    these counties.  I can change "community" to "Counties."

14    I can change "Harm" to "Nuisance," but that's what it is.

11:55:14 15              And our case is pretty -- I mean this is an

16    important part of our case.

17              MS. FIEBIG:  Can I respond?

18              SPECIAL MASTER COHEN:  One second, please.

19              I can -- so here's what you're going to do

11:55:32 20    and here's what I'm going to do.

21              First of all, I'm going to take this one to

22    the Court, to Judge Polster, but I definitely want this

23    to say instead of the resulting community harm, the

24    resulting public nuisance in Lake and Trumbull Counties.

11:55:49 25              MR. LANIER:  Okay.

1          SPECIAL MASTER COHEN:  And the extent to

2     which Ohio and the United States remains is something

3     I'll present to the Judge.

4          Did you want to add anything else?

11:55:59  5          MS. FIEBIG:  I would like to add just one

6     point which is Giant Eagle is a regional grocery store

7     that does not operate throughout the United States and it

8     certainly does not dispense opioids throughout the United

9     States, including in Florida or other states where the

11:56:11 10     plaintiffs may intend to introduce evidence.

11          And for that reason, we think that this

12     characterization is unduly prejudicial to Giant Eagle in

13     particular, and I expect that our co-defendants would

14     also join in asking that be changed to specifically refer

11:56:24 15     to distribution and dispensing opioids in the two

16     counties.

17          SPECIAL MASTER COHEN:  Okay.  Let me make

18     clear that I'm not restricting plaintiffs from making

19     assertions with regard to Ohio and the United States and,

11:56:36 20     for example, saying that the evidence will show that what

21     happened in Lake and Trumbull Counties was happening

22     elsewhere and that drugs were flowing from Florida into

23     Lake and Trumbull Counties, but we're talking about the

24     slides.  And as I say, I'll take that secondary question

11:56:51 25     to the Judge.

         1              Anything else from defendants?

         2              MR. HYNES:  Yes, Paul Hynes.

         3              We have two hearsay objections, two hearsay

         4    objections on two documents that may depend on how

11:57:11 5    plaintiffs plan to use those documents.  We need to

         6    address those objections now or later.

         7              First one is P-459, a 30 or 40-page slide

         8    deck.  There are certain slides we have hearsay

         9    objections to.

11:57:25 10             SPECIAL MASTER COHEN:  Do I have those

        11    documents?

        12             MR. HYNES:  Do plaintiffs have an extra

        13    copy?

        14             MR. LANIER:  I'm glad to pass up a copy.

11:57:47 15             MR. HYNES:  Thank you.

        16             MR. LANIER:  You bet.

        17             Do you need one as well?

        18             MR. HYNES:  No, I'm good.

        19             MR. LANIER:  May I approach?

11:57:57 20             SPECIAL MASTER COHEN:  Yes.

        21             This is a document you intend to use during

        22    openings?

        23             MR. LANIER:  Yes.

        24             MR. HYNES:  I don't want to waste your

11:58:04 25   time, Special Master Cohen.

1           So, Mark, there are certain pages you're

2     going to use that might help us decide if we need to

3     discuss this now or at some other time.

4           MR. LANIER:  You bet.

11:58:15  5           My intention is to use what would be

6     labeled with the Bates Number at the end, 3109 and 3110.

7           Those are the only two pages I was going to

8     refer to.

9           SPECIAL MASTER COHEN:  The copy you gave me

11:58:37 10    doesn't have that, those Bates numbers.

11           I have a P number and a CVS NYAG number.

12           MR. LANIER:  It doesn't have a CVS number?

13           SPECIAL MASTER COHEN:  It has a CVS NYAG

14    number but, no, not just a CVS number.

11:58:55 15           MR. LANIER:  CVS NYAG.

16           SPECIAL MASTER COHEN:  Go ahead.

17           MR. LANIER:  000073109.

18           SPECIAL MASTER COHEN:  Sorry, got it.

19           MR. LANIER:  And 3110.

11:59:14 20           SPECIAL MASTER COHEN:  Sorry.

21           MR. HYNES:  All right.  We do have a

22    hearsay objection to 73110.  Those are speaker notes from

23    a particular employee.  She does not have the authority

24    to bind the company.  And these statements were made

11:59:31 25    outside the scope of her employment.  She was just giving

1    her personal feelings.

2              SPECIAL MASTER COHEN:  How is it that these

3    are, quote, unquote, her personal feelings that are

4    contained within a CVS slide deck?

11:59:46  5              Is this Nickie Harrington?

6              MR. HYNES:  It's not Nickie Harrington.

7              SPECIAL MASTER COHEN:  So what am I looking

8    at on Page 110?

9              MR. HYNES:  So if you turn to 73104, the

12:00:05 10   two presenters are Nicole Harrington and Angela Nelson.

11   Nicole Harrington has said these are not her words.

12   These are speaker notes that go along with the slide

13   deck.  We believe they may be Ms. Nelson's, we don't know

14   for sure.  She has not been deposed in this case.

12:00:24 15             But she is giving her own personal

16   feelings.  She talks, when I start to really understand,

17   I realize, I made.  She's not saying CVS.

18             And we'd like to draw the Court's attention

19   to Doc 3759 at Footnote 3 where it talks about how only

12:00:49 20   high-level employees may speak for and bind the company.

21             SPECIAL MASTER COHEN:  Plaintiffs?

22             MR. LANIER:  I mean, this is -- this is

23   their document.  This is an employee.  It's got Nickie

24   Harrington on it as well.  The jury can decide whether to

12:01:08 25  believe Nickie Harrington or not when she testifies that

1    someone else said that in the slide deck, and she just

2    let it slide by or she didn't.

3                    But, I mean, these are -- they are what

4    they are.  It says what it says.  It's the admission of a

12:01:22  5    party opponent so it's not hearsay.  I don't see what the

6    objection is.

7                    SPECIAL MASTER COHEN:  I think it is either

8    an admission against interest or an admission of a party

9    opponent and the objection as to hearsay is overruled.

12:01:34 10                    Next.

11                    MR. HYNES:  Our other objection is to

12    P-42147, and it's the *Holiday* decision.  We would have

13    objections, hearsay objections to certain of that.

14                    SPECIAL MASTER COHEN:  I'm sorry.  I didn't

12:01:49 15    hear you.

16                    MR. HYNES:  We have hearsay objections to

17    certain parts of that ruling.  We recognize that some

18    parts may satisfy the public records exception, but the

19    parts of that ruling that just state or describe what the

12:02:02 20    law is don't apply the law to the facts, we don't think

21    meet the exception and we don't think plaintiffs can use

22    that ruling to displace the role of Judge Polster to

23    instruct the jurors on what the applicable law is.

24                    SPECIAL MASTER COHEN:  Oh, is the green

12:02:23 25    light on?

1          MR. HYNES:  Yes.

2          SPECIAL MASTER COHEN:  Okay.  Response?

3          MR. LANIER:  Yes.  Thank you, Judge.

4          First of all, Judge Polster will direct the

12:02:32  5   jury on what the law is.  That's what Judge Polster will

6    do and he certainly can give any instructions he wants,

7    but this is as clear a notice document as there could

8    ever be.

9          This decision not only formed policies for

12:02:45 10  the defendants based upon how it was written, but I think

11   almost every defendant, with the possible exception of

12   Giant Eagle, references this decision because it does

13   challenge what they're doing.

14         And so, for example, on page that ends with

12:02:59 15  a three, it's got the language, "Exception two, the ALJ's

16   findings that respondents dispensed controlled substances

17   pursuant to prescriptions which raised red flags that

18   could not be resolved and, thus, violated their

19   corresponding responsibility under federal law are not

12:03:19 20  supported by substantial evidence."

21         That's the exception that was raised and

22   then the ALJ answers and says yes, there is adequate

23   evidence.

24         And that's later on down below.

12:03:30 25         That's the reference that I was going to be

 1   making to this, but this is -- I mean, this is -- this

 2   document's in.  I mean, there's -- I don't think -- I'm

 3   stunned that there would be a fuss over this document

 4   coming into evidence.

 5               SPECIAL MASTER COHEN:  I agree that it goes

 6   to notice.

 7               The objection is overruled.

 8               MR. HYNES:  That's all we have.

 9               SPECIAL MASTER COHEN:  Okay.  I think that

10   plaintiffs also --

11               MS. FUMERTON:  I have one.

12               SPECIAL MASTER COHEN:  Yes.

13               MS. FUMERTON:  I'm sorry.  We just want to

14   reserve our objections to P-26699.  It's a Walmart

15   document that we don't think they will be able to lay

16   appropriate foundation for.  It was produced in 2020 but

17   not used with any witness in a deposition so, you know,

18   if Mr. Lanier wants to refer to it in his opening, we are

19   going to object to it later if they try to admit it into

20   evidence.

21               SPECIAL MASTER COHEN:  Okay.

22               MR. STOFFELMAYR:  Special Master Cohen,

23   Kaspar Stoffelmayr for the Walgreen's defendants.

24               I wanted to also just not argue an issue.

25               One of Plaintiffs' Exhibits is a document

1    that we've had privilege disputes over.  You've ruled on

2    it, Judge Polster has ruled on it.

3              The last thing I want to do is argue about

4    it again.  I understand it's going to be part of the

12:04:37  5    opening but I don't want there to be any suggestion that

6    happened except over our objection.

7              SPECIAL MASTER COHEN:  Understood.

8              MR. STOFFELMAYR:  Thank you.

9              SPECIAL MASTER COHEN:  The record is clear

12:04:46 10    on that.

11              Thank you.

12              All right.  My understanding is that

13    plaintiffs also themselves had some objections to some of

14    the Giant Eagle slides.

12:04:54 15              We need to finish it 20 after at the latest

16    so people can get some lunch and get ready for 1:00

17    o'clock, but I don't think I've received, unless it

18    happened within the last ten minutes, a copy of Giant

19    Eagle's slides via e-mail.

12:05:08 20              MS. FIEBIG:  We did ask someone to e-mail

21    them to you but we also have hard copies we can provide.

22              SPECIAL MASTER COHEN:  Thank you.  Okay.

23              Plaintiffs, why don't you go ahead?

24              MR. LANIER:  All right.

12:05:16 25              Your Honor, on the very first one you see,

1    there's a motion in limine ruling on mentioning good

2    deeds of the defendants apart from those on topic.

3                   And the four generations of family values,

4    passion, hard work, innovation and competitive spirit

12:05:35  5    flies in the face of that motion in limine.

6                   MS. FIEBIG:  We disagree.

7                   There isn't a single verb in that clause.

8    There's no reference to actions taken by the company.

9                   The motion in limine ruling was limited to

12:05:53  10   in-store good deeds or corporate conduct, and obviously

11   this slide is not evidence, but it's, you know, at most

12   tantamount to puffery and just a description of the good

13   people of Ohio who work at the store.

14                  SPECIAL MASTER COHEN:  It's a little close

12:06:05  15   to the line but I agree, it's mostly puffery.  The

16   objection is overruled.

17                  MR. LANIER:  The next slide, Your Honor, is

18   the one that seems to have lawyers with a plate for a

19   handout.

12:06:15  20                  SPECIAL MASTER COHEN:  Give me a page.

21                  MR. LANIER:  It's the very next page,

22   Page 2.

23                  SPECIAL MASTER COHEN:  Oh, go ahead.

24                  MR. LANIER:  Lawyers with plates like

12:06:24  25   they're getting a handout, and it lists a number of

1    settling defendants.

2              That's argumentative.  That's got no place

3    in opening.  The settlements, the Judge, I thought, had

4    ruled were not coming into evidence, but maybe I'm wrong

12:06:40  5    on that and lawyers with -- seeking a handout --

6              SPECIAL MASTER COHEN:  What is this?

7              MS. FIEBIG:  It's an animation.  It's not a

8    handout, it's not a collection basket.  It's just a

9    representation of the same plaintiffs' attorneys suing as

12:06:55 10    in filing lawsuits against other defendants in this MDL.

11              SPECIAL MASTER COHEN:  That objection is

12    sustained.

13              It's coming out.  Not even close.

14              MR. LANIER:  The very next slide, Your

12:07:07 15    Honor, is Slide Number 3, and this is again trying to

16    make the case that there have been a lot of other

17    defendants in this case that are not currently in trial.

18              And to put this up here in front of the

19    jury in the complaint, to put this complaint in front of

12:07:28 20    the jury like this and argue that there are these other

21    defendants not present is not relevant and it's

22    prejudicial.

23              MS. FIEBIG:  It's just a demonstrative to

24    contextualize the fact of the suit.

12:07:46 25              SPECIAL MASTER COHEN:  So I don't have a

1     problem with your identifying that there are other

2     defendants, but the way you've identified them in this

3     slide, which presents them in the context of litigation,

4     is going to cause, I think, confusion and a lot of

12:07:59  5     questions for the jury.

6                  So I'm going to sustain the objection.

7     That doesn't mean that you can't redraw this slide in a

8     way that identifies the fact that there are other

9     entities that you believe are responsible, other

12:08:09 10     defendants that are part of the opioid chain and

11     everything else, but not presented this way.

12                  MS. FIEBIG:  So just not with the

13     individual names of the corporate defendants?

14                  SPECIAL MASTER COHEN:  Well, not -- I mean,

12:08:19 15     you've made it look like a lawsuit.

16                  You don't need to make all of that look

17     like a lawsuit.  You can just list those folks as other

18     entities that you believe have a role, and maybe the

19     entire role.

12:08:33 20                  MS. FIEBIG:  Understood.

21                  We'll revise the slide.

22                  MR. LANIER:  The next slide, Your Honor,

23     is -- it's labeled -- the very next slide in order, it's

24     labeled Slide Number 4.  It's got the picture of the

12:08:51 25     foreign drug cartels flooding the illicit drug market.

```
 1                   You know, this is -- I think this is
 2      actually written because there was one juror who made the
 3      jury panel who said that he believes the problem is
 4      foreign drug cartels flooding the illicit drug market, in
12:09:18  5     essence.
 6                   I mean, it just seems a little over the
 7      line the way it's -- the photograph.
 8                   SPECIAL MASTER COHEN:  Overruled.
 9                   Go ahead.
12:09:32 10         MR. LANIER:  All right.  Next, Your Honor,
11      is -- it's still considered Slide 4 but it's the fourth
12      bullet point down, aggressive marketing and promotion, so
13      you have to flip about four pages.
14                   It's got the Perdue pled guilty to fraud
12:09:47 15     and kickback conspiracies, agreed to a $3.5 billion
16      criminal fine and a $2 billion criminal forfeiture, this
17      in a case where we're not allowed to show that the
18      defendants, the amount of money that they have paid in
19      fines and forfeiture.
12:10:05 20         Certainly, what Perdue has pleaded to and
21      what they have paid should not be coming into evidence in
22      this case.
23                   MS. FIEBIG:  We're happy to strike the
24      references to the amounts on that slide.
12:10:24 25         MR. LANIER:  "Pled guilty to fraud and
```

1    kickback conspiracies"?

2              Again, that's not the issue in this case.

3    The issue in this case is whether or not these defendants

4    did something illegal; not whether or not Perdue did

12:10:41  5    something illegal.

6              MS. FIEBIG:  If I may.  Plaintiffs' expert,

7    Dr. Lembke, is the one who refers to the Perdue Pharma

8    Partnership Against Pain.  It's in plaintiffs' report

9    that was submitted in this case.

12:10:55 10             And that's why there's a reference to that

11    material here.

12             MR. LANIER:  And I have no problem

13    referencing that material.

14             I'll be referencing that material myself.

12:11:03 15             The problem I've got is "Perdue pled guilty

16    to fraud and kickback conspiracies."

17             SPECIAL MASTER COHEN:  Well, if -- to put

18    the entity who maintains the most innocence because they

19    haven't had any ammo used at all, if Giant Eagle had pled

12:11:23 20    guilty to fraud and kickback conspiracies, that would be

21    admissible in this case, would it not?

22             MR. LANIER:  Yes, sir.

23             SPECIAL MASTER COHEN:  I think that if you

24    remove the amounts, that the rest of the slide is okay.

12:11:36 25             MS. FIEBIG:  Thank you.

1          MR. LANIER:  The next one is still a Slide

2     4 but it's several slides away.  It's the bullet point of

3     pill mills/bad doctors prescribing for money.

4          SPECIAL MASTER COHEN:  Yes.

5          MR. LANIER:  It's got a picture of

6     Overholt's Pharmacy.

7          SPECIAL MASTER COHEN:  Right.

8          MR. LANIER:  And then it's got a picture of

9     people lined up, looks like sitting down, I guess,

10    waiting to go in and buy illegal narcotics or something.

11         I've been told that the picture may come

12    from a document that's in our possession.  I'm not sure.

13    But I don't know how that comes into evidence.

14         I don't know who could even remotely

15    testify to what that picture is, whether I offer it or

16    someone else does.

17         MS. FIEBIG:  It's just a demonstrative

18    illustration of one of the indicators that DEA

19    enforcement agents will testify that they often look to

20    for purposes of identifying pill mills.  It's just a line

21    outside of the pharmacy.

22         And I believe that there are plaintiffs'

23    experts, including Rafalski, who may testify to it, but

24    it's really just an illustrative demonstration of that.

25         SPECIAL MASTER COHEN:  Is this actually of

1    a line at Overholt's Pharmacy?

2                    MS. FIEBIG:  Yes, and it was produced in

3    discovery and used, I believe, in Track 1 at the McKesson

4    deposition.

12:12:52  5                    SPECIAL MASTER COHEN:  If that's what it

6    is, it can come in.

7                    MR. LANIER:  The next one are the, still on

8    Slide 4 but now we're down at the bottom, socioeconomic

9    mental health and addiction issues.

12:13:05 10                    Certainly they are allowed to raise those

11    as causes of the opioid crisis, but I think the

12    photograph is over the top of the guy shooting the needle

13    into the arm, the woman passed out with open pills, the

14    guy snorting cocaine lines, and the person seemingly

12:13:23 15    drunk with still a drink in their hand.

16                    MS. FIEBIG:  Special Master, we think these

17    are on par with the images that appear in plaintiffs'

18    opening, including of the opium den and the needle with

19    the drugs which you have probably seen in their opening

12:13:43 20    slides as well.

21                    These are just stock images representing

22    the overdose harms that we believe plaintiffs have put at

23    issue in this case.

24                    SPECIAL MASTER COHEN:  Can you point me to

12:13:53 25    the slides in plaintiffs?  Because I don't recall those,

1  but I probably didn't even see them.

2  MS. FIEBIG:  Yes, it's, Slide 15 is this

3  image of the drugs with the needle.

4  SPECIAL MASTER COHEN:  One second.

12:14:07 5  Go ahead.

6  MS. FIEBIG:  Slide 16.

7  SPECIAL MASTER COHEN:  Go ahead.

8  MS. FIEBIG:  Is also an image of illicit

9  drugs.  Slide 116 also features a drug needle and pills.

12:14:22 10  And Slide 117 as well.

11  MR. LANIER:  And to be clear, Your Honor,

12  there are other slides of the defendants that do have

13  needles and do have drugs that I've not objected to

14  because I think they are totally fine.

12:14:41 15  What I'm objecting to here are the people

16  who are in the process of snorting or passed out or on

17  the way to being passed out.

18  That's the objection; not -- I mean, the

19  drugs will come in.  There's no question they come in.

12:14:55 20  And I've not objected to pictures of needles and drugs

21  and things like that that are in the other PowerPoints.

22  SPECIAL MASTER COHEN:  Unfortunately, we're

23  dealing with a very ugly phenomenon, and this is a part

24  of what it looks like.

12:15:09 25  I'm going to overrule that.

1          MR. LANIER:  Okay.

2          Next, Your Honor, is Slide Number 8,

3    doctors -- it's entitled, "Doctors concerned about

4    pharmacists second-guessing their medical decisions."

12:15:22  5          It's the AMA response to the pharmacy

6    intrusion into medical practice.

7          I don't know how this AMA document will

8    even remotely come into evidence.  It's solid hearsay.

9    I've taken a deposition of an AMA fellow who will come

12:15:44  10   into evidence, but I don't see where that comes in.

11         MS. FIEBIG:  We intend to illicit testimony

12   on this topic from Dr. Wailes who is a joint defense

13   expert in pain management.  He's been very involved in

14   the California Medical Board and is also very familiar

12:15:59  15   with the American Medical Association.  He'll testify

16   about his understanding of why the medical community

17   issued the statement at all, and this is not being

18   offered for the truth of the statement asserted herein.

19         It's also not being offered as evidence at

12:16:11  20   this point, obviously.

21         SPECIAL MASTER COHEN:  Wailes is an expert?

22         MS. FIEBIG:  Yes, he is.

23         SPECIAL MASTER COHEN:  Overruled.

24         MR. LANIER:  And then the last one is Slide

12:16:20  25   23.  Slide 23 is a Government agent speaking.  And again,

1      this is -- this is hearsay.

2                  I mean it's plain and simple hearsay, so I

3      don't understand how it can be used.

4                  MS. FIEBIG:  This is taken from the

5      deposition of Agent DiFrangia on January 14th, and the

6      citation is at 6823 to 6910.

7                  And Mr. DiFrangia is on plaintiffs' witness

8      list.

9                  MR. LANIER:  If this is out of his

10     deposition, and it's Q & A from his deposition, I

11     withdraw my objection.  I just didn't know that.

12                 MS. FIEBIG:  It is.

13                 SPECIAL MASTER COHEN:  Okay.

14                 MR. LANIER:  Okay.  Then I withdraw my

15     objection to that.

16                 SPECIAL MASTER COHEN:  Is that everything,

17     Mr. Lanier?

18                 MR. LANIER:  That concludes our objections,

19     Your Honor.

20                 We did not have any objections to the other

21     defendants' slides.

22                 SPECIAL MASTER COHEN:  Okay.  Thank you,

23     everybody, for all of that.

24                 I believe that I owe you an answer still

25     for Plaintiffs' Number 2, Slide Number 2.

1          MR. LANIER:  Judge, I cannot -- I cannot

2     hear you.

3          SPECIAL MASTER COHEN:  I apologize.  I was

4     looking down.

12:17:46  5          I said thank you, everybody, for everything

6     and I believe I owe you an additional answer still with

7     Plaintiffs' Number 2 and the United States/Ohio

8     reference, which I will do immediately as soon as I can

9     get in front of Judge Polster.  I'll figure that out and

12:18:00 10    come back out.

11          Any other issues we need to address?

12          MR. STOFFELMAYR:  David, Kaspar Stoffelmayr

13     for Walgreen's.  I know it's not mission critical but you

14     did mention you might be able to get us some relief on

12:18:14 15    the huge glass barriers.

16          SPECIAL MASTER COHEN:  Yes.  I'll find out

17     right away.

18          MR. HYNES:  Special Master Cohen, if we

19     could also ask for another microphone.  All the other

12:18:23 20    counsel tables have two microphones.

21          We have one.

22          MR. MAJORAS:  We have one.

23          MR. HYNES:  They have one, also.  They need

24     one, too.  We can work with someone.

12:18:34 25          MS. FIEBIG:  We have one to give.

1          MR. MAJORAS:  Your Honor, we're one short

2    as well but if the Plexiglas gets removed, that will

3    accomplish a lot of help.

4          SPECIAL MASTER COHEN:  That's something you

12:18:44  5    should raise with Robert.

6                I don't know what is even possible.

7          MR. HYNES:  We'll do that.

8                Thank you.

9          MR. WEINBERGER:  Special Master Cohen, we

12:18:55 10   have people, lawyers, on our team, who are sitting in the

11   gallery, and we want to make sure that they're able to

12   use their laptops or Smartphones.

13                There was some indication very early on, I

14   think in CT one, where the Court raised a concern about

12:19:16 15   that or maybe did not want that to occur.

16                And rather than passing notes, physical

17   notes, which disrupts the courtroom, we'd like the

18   opportunity to be able to use laptops and Smartphones to

19   do that.

12:19:35 20         SPECIAL MASTER COHEN:  I'll find out.

21         MR. WEINBERGER:  Thank you.

22         SPECIAL MASTER COHEN:  All right.

23   Everybody, thank you very much.

24                Grab some lunch.  We'll see you at 1:00

12:19:46 25   o'clock.

1                    (Recess taken.)

2                    (Proceedings concluded at 12:19 p.m.)

3                         -   -   -   -

4                 C E R T I F I C A T E

5                    I certify that the foregoing is a correct

6       transcript from the record of proceedings in the

7       above-entitled matter.

8

9

10

11      **/s/Susan Trischan**
        Susan Trischan, Official Court Reporter
12      Certified Realtime Reporter

13      7-189 U.S. Court House
        801 West Superior Avenue
14      Cleveland, Ohio 44113
        (216) 357-7087
15

16

17

18

19

20

21

22

23

24

25