UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>"Track Eight: Cobb County, Georgia" | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Case No.: 1:18-OP-45817<br><br>Judge Dan Aaron Polster |

**DEFENDANT PUBLIX SUPER MARKETS, INC.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
<u>PLAINTIFF COBB COUNTY'S COMPLAINT</u>**

Cobb County's Opposition to Defendant Publix Super Markets, Inc.'s Motion to Dismiss Plaintiff Cobb County's Complaint ("Opp.") offers no cure for the fundamental failings of its Complaint. Despite protestations to the contrary, plaintiff's claim is premised on violations of Georgia's Pharmacy Practice Act ("PPA"), a statute that does not recognize a public nuisance remedy to address the violations. As Georgia's Supreme Court held in *State ex rel. Boykin v. Ball Inv. Co.*, 191 Ga. 382 (Ga. 1940), such a remedy is thus unavailable. Separately, plaintiff's allegations against Publix also fail to satisfy the requirements of Rule 8.

I. **Georgia Law Does Not Recognize Cobb County's Public Nuisance Claim.**

Although plaintiff attempts to limit and distinguish *Boykin*, that decision of Georgia's Supreme Court is on all fours with this case. Both *Boykin* and this case claim a company caused significant harm to the general welfare, *see* 191 Ga. at 383-84; Opp. at 1-3, through repeated violations of a detailed regulatory scheme (there Georgia's lending law, *see* 191 Ga. at 388-89; here the PPA, Opp. at 1-3, 11).[1] Critically, both cases involve statutes authorizing misdemeanor penalties, but not public nuisance claims, to address violations. *See Boykin*, 191 Ga. at 395; Defendant Publix Super Markets, Inc.'s Motion to Dismiss ("Mem.") at 3-4.

In *Boykin*, the court rejected the government's public nuisance claim:

> The Code … deals with our statute law on the subject of buying wages or salaries [and] … with the small loan business. Licenses are required, many regulations made respecting the business, penalties provided for their violation, the taking of usury and the violation of various provisions of the small loan act are made misdemeanors. There is no suggestion anywhere in either the wage-buying or the small-loan act that a violation of its provisions shall constitute a nuisance, or that, for repeated violations, equity should issue an injunction. If the penalties there provided be not a sufficient check to the abuses described in the instant case, the appeal should be made to the lawmakers, and not to a court of equity, whose powers can never be invoked where the law has provided what it deems to be an adequate remedy.

---

[1] In *Boykin*, the alleged facts were "in the main supported by the evidence" and the court assumed for purposes of its analysis that the consequences alleged were of a sufficient "public character" to invoke the public nuisance statute. 191 Ga. at 385, 389.

1

191 Ga. at 395. The result of this Motion should be the same as in *Boykin*. Despite more than eighty years of case law since *Boykin*, plaintiff is unable to cite to a single Georgia case where a public nuisance claim premised on violations of a detailed regulatory scheme succeeded when the regulatory scheme did not explicitly afford that remedy.[2]

Plaintiff's attack on *Boykin* fails on every front. Plaintiff argues the holding is limited to the boilerplate principle "that a simple violation of some law without more does not constitute a public nuisance," Opp. at 9-10, and that it has alleged Publix did "more than simply violate the law." *Id.* Plaintiff is wrong on both counts. First, *Boykin* makes clear the required "more" includes, at a minimum, that the detailed statutory scheme makes violations a nuisance or otherwise authorizes a nuisance claim, something the PPA does not do. Second, plaintiff alleges nothing "more" *in regard to Publix* than its failure to establish appropriate controls to prevent diversion in the distribution and dispensing of opioids in violation of the PPA and Controlled Substances Act ("CSA"). Compl. ¶¶ 460-502.[3]

Plaintiff misses *Boykin*'s point a second time when it argues nothing in the PPA indicates it was designed "to supplant public nuisance claims." Opp. at 10. What *Boykin* found dispositive was the *absence* of any provision in the statutory scheme suggesting violations are to be treated as

---

[2] Instead, it cites *City of College Park v. 2600 Camp Creek, LLC*, 293 Ga. App. 207 (Ga. Ct. App. 2008) (involving *no regulatory scheme*) and *City of Albany v. Stanford*, 347 Ga. App. 95 (Ga. Ct. App. 2018) (rejecting a public nuisance claim due to sovereign immunity.). Opp. at 10. These cases provide no assistance. Plaintiff's reliance on *Webb v. Alexander*, 43 S.E.2d 668 (Ga. 1947) also is to no avail. Unlike the statute at issue in *Boykin* and the PPA at issue here, the zoning law at issue in *Webb* explicitly offered a nuisance remedy to address violations and preserved remedies existing outside its remedial scheme. *Id.* at 669-70 ("every violation of the terms of that Act [is] a nuisance, … 'subject to abatement as a nuisance'….."; remedy is "cumulative and … not to be construed as curtailing the right of any person, firm or corporation, resident, property owner or other persons, of bringing any proper action for the enforcement of this Act ….").
[3] Violations of the CSA also constitute violations of, and are addressable via remedies available in, Georgia's PPA. Mem. at n.1.

2

a nuisance, not a provision affirmatively denying a nuisance remedy. 191 Ga. at 395; *see also* Mem. at 3-4 (discussing remedies available under PPA and citing other Georgia statutes that include nuisance remedies). Plaintiff likewise misses *Boykin*'s point when arguing the PPA does not provide an adequate remedy. In *Boykin*, the court made clear the Legislature determines what remedy is adequate to address violations, which it reflects in the applicable statutory scheme. 191 Ga. at 395. Here, "to promote, preserve, and protect the public health, safety, and welfare," O.C.G.A. § 26-4-3, the PPA includes a panoply of remedies including, like in *Boykin*, misdemeanor penalties but no public nuisance remedy.[4] In the end, *Boykin* squarely addresses plaintiff's "no adequate remedy" grievance: "If the penalties there provided be not a sufficient check to the abuses described in the instant case, the appeal should be made to the lawmakers, *and not to a court of equity*." 191 Ga. at 395 (emphasis added).

Finally, this Court cannot accept plaintiff's invitation to cast aside the Georgia Supreme Court's decision in *Boykin* and supplant it with decisions addressing the scope of Ohio nuisance law. *See* Opp. at 10-11. *Boykin* governs the scope of the available nuisance remedy for a claim *premised on Georgia law*, the only state law applicable to this case, and it makes clear such a remedy is unavailable here.

## II. Plaintiff's Complaint Fails to State a Claim against Publix.

To distract from a paucity of actual allegations as to Publix, plaintiff selectively quotes from *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

---

[4] The PPA contemplates misdemeanor penalties, license sanctions, fines, discipline, and enforcement through inspections, hearings, reviews, and investigations supported by discovery via subpoenas and testimony taken under oath. O.C.G.A. §§ 26-4-20(b), 26-4-28, 26-4-60, 26-4-62, 26-4-80, 26-4-113, & 26-4-115; *see also* Mem. at 3.

3

(2007) for the requirements of Rule 8.[5] This Court previously explained the proper contours of the Rule established in these Supreme Court cases:

> A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*In re Nat'l Prescription Opiate Litig.*, 2018 U.S. Dist. LEXIS 176260, at **65-66 (N.D. Ohio Sept. 30, 2018) (Report and Recommendation) (quoting *Iqbal*, 556 U.S. at 678). In the end, plaintiff's Complaint relies upon naked assertions and offers nothing more than possibilities that are consistent both with liability and non-liability. That is not enough.

Plaintiff primarily relies upon ARCOS data, *see* Opp. at 6-7, which does nothing to support its allegations. Its assertion as to the total quantity of opioids Publix's Cobb County pharmacies dispensed over a nine-year period offers nothing more "than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 668; *see also* Mem. at 7-8. Plaintiff provides no context or reference point permitting a non-speculative conclusion that the amount of opioids dispensed establishes liability. This is insufficient. Likewise, plaintiff's conclusory assertion that this quantity "far exceed[s] what could be justified for legitimate medical use" remains unsupported and based solely on plaintiff's say-so. *See* Opp. at 5. Such conclusory allegations cannot demonstrate Publix did anything wrong. *See Iqbal*, 556 U.S. at 678.

---

[5] Although plaintiff claims Publix carries the burden of proving its Motion to Dismiss, Opp. at 5, plaintiff bears the burden of ensuring its Complaint contains sufficient allegations. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.2007) ("To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory."); *see also Bellar v. City of Auburn*, No. 1:15-CV-38-GNS, 2015 WL 5299453, at *3 (W.D. Ky. Sept. 9, 2015) (discussing "Plaintiff's pleading burden"); *Hebshi v. United States*, 32 F. Supp. 3d 834, 841 (E.D. Mich. 2014) (discussing "Plaintiff's burden of pleading").

4

Plaintiff seeks to remedy this defect by alleging Publix's 12% market share is somehow relevant to this analysis, Opp. at 6, but this contention is illogical. Publix's small opioid market share in Cobb County does not indicate whether Publix did anything improper.[6] As with the ARCOS data plaintiff cites, allegations as to Publix's market share, even if "consistent with" Publix's liability, stop well "short of the line between possibility and plausibility of 'entitlement to relief.'" *In re Nat'l Prescription Opiate Litig.*, 2018 U.S. Dist. LEXIS 176260, at **65-66.

Plaintiff again relies on inapposite decisions of this Court in an attempt to avoid the Court scrutinizing its baseless allegations. *See* Opp. at 6, 8. In the first, the Court addressed what data the DEA must produce and noted that ARCOS data is (unsurprisingly) "relevant." *In re Nat'l Prescription Opiate Litig.*, 2018 U.S. Dist. LEXIS 90002, at *65 n.8. That decision in no way holds that such data, alone, suffices to meet a party's Rule 8 obligations. The other cases are used to refute a claim Publix never made—that the Complaint *must* identify specific improper prescriptions it filled in Cobb County. *See* Opp. at 8. Instead, plaintiff must assert facts (which *could* include pointing to improper prescriptions) that Publix engaged in actual wrongdoing and the wrongdoing caused actual harm in Cobb County; plaintiff did not.

Plaintiff's allegations that Publix's co-defendants engaged in wrongdoing, *see* Mem. at 9 & n.5, stand in stark contrast to the utter absence of any such allegations as to Publix. The handful of actual facts addressing Publix do not come close to meeting Rule 8's requirements as they have no connection to Cobb County, *id*. at 7, describe perfectly legal events, *id*. at 6, highlight the

---

[6] Allegations a defendant with 0.1% of the pharmacies in Cobb County had a 20% opioid market share might indicate the defendant sold a disproportionate number of opioids; however, a 12% figure alone provides no indication whether the amount of opioids Publix dispensed was too high, too low, or just right.

5

failures of *other* entities, *id.*, or lack any logical connection to plaintiff's conclusory allegations, *id.* at 8.[7]

Plaintiff's admission that it needs discovery to fully assert its claims, Opp. at 8, underscores the inadequacy of its Complaint. Discovery does not exist to enable deficiencies in a pleading; instead, a plaintiff must allege sufficient facts *at the pleading stage* and cannot bootstrap discovery based on an inadequate complaint. *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

### III. Conclusion.

For the foregoing reasons and those stated in Publix's Motion, plaintiff's nuisance claim against it should be dismissed.

Dated: October 11, 2021

Respectfully Submitted,

/s/ Gregory S. Chernack
Gregory S. Chernack, Esq., (D.C. Bar No. 472295)
(gchernack@hollingsworthllp.com)
Kathryn S. Jensen, Esq., (D.C. Bar No. 494598)
(kjensen@hollingsworthllp.com)
Hollingsworth LLP
1350 I Street N.W.
Washington, D.C. 20005
Phone: (202) 898-5800
Fax: (202) 682-1639

*Attorneys for Defendant Publix Super Markets, Inc.*

---

[7] Plaintiff attempts to link opioid sales in Florida to opioid abuse in Cobb County via reference to the "Blue Highway." Opp. at 8. But the Complaint does not even allege that a single improper sale of opioids in Florida was used in Cobb County (let alone that any such opioid was sold by Publix). *See* ¶¶ 671-82 (Publix is not even mentioned in this section of the Complaint). Instead, its allegations as to the "Blue Highway" involve the purchase of opioids *in Florida* and their relocation to *Ohio* via Interstate 75. Compl. ¶¶ 671-82. They do not address Georgia at all.

6

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a copy of the foregoing was filed electronically on October 11, 2021. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

      /s/ Gregory S. Chernack
      Gregory S. Chernack, Esq., (D.C. Bar No. 472295)
      (gchernack@hollingsworthllp.com)
      Hollingsworth LLP
      1350 I Street N.W.
      Washington, D.C. 20005
      Phone: (202) 898-5800
      Fax: (202) 682-1639

      *Attorney for Defendant Publix Super Markets, Inc.*