# EXHIBIT A

Page 1

```
1              IN THE UNITED STATES DISTRICT COURT
2                  NORTHERN DISTRICT OF OHIO
3                       EASTERN DIVISION
4
                    ~~~~~~~~~~~~~~~~~~~~~
5
6      IN RE:  NATIONAL PRESCRIPTION   MDL No. 2804
       OPIATE LITIGATION
7                                      Case No.
                                       1:17-md-2804
8
                                       Judge Dan Aaron
9      This Document Relates To:   Polster
10
11     The County of Lake, Ohio v.
       Purdue Pharma L.P., et al.
12     Case No. 18-op-45032
13
       The County of Trumbull, Ohio v.
14     Purdue Pharma L.P., et al.,
       Case No. 18-op-45079
15
16     Track 3 Cases
17
                    ~~~~~~~~~~~~~~~~~~~~~
18
19          Remote videotaped deposition of
                   JOSEPH RANNAZZISI
20
21
22             September 22, 2021
                    2:29 p.m.
23
24
            Renee L. Pellegrino, RPR, CLR
25             (Appearing Remotely)
```

Page 14

1  the authorization and the limitations of that
2  authorization.
3      Q.    Mr. Rannazzisi, do you have any
4  personal knowledge based on public information
5  of a Walgreens pharmacist in Ohio ever filling
6  an illegitimate prescription?
7      A.    No.
8      Q.    Do you have any personal
9  recollection, based on your own interactions
10  with dispensers unrelated to DEA activities,
11  of a Walgreens pharmacist in Ohio ever filling
12  an illegitimate prescription?
13      A.    No.
14      Q.    Do you have any personal knowledge
15  based on public information of Walgreens
16  filling illegitimate prescriptions anywhere
17  else in the country?
18      A.    Could you define what you mean by
19  "illegitimate prescriptions"?
20      Q.    You're a pharmacist, correct,
21  Mr. Rannazzisi?
22      A.    Yes.
23      Q.    When I say "illegitimate
24  prescription" to you, what do you understand
25  that term to mean?

Page 15

1        A.    Well, it could mean any number of
2    things; prescriptions that don't meet the
3    elements of a controlled substance
4    prescription, prescriptions that don't have a
5    valid DEA number attached to the doctor who's
6    prescribing it, prescriptions that are not
7    written in the usual course of professional
8    practice and not for legitimate purpose.
9    There's a lot of different things.  If you're
10   asking me that question, I would have to say
11   yes.
12       Q.    What is the personal knowledge
13   that you have related to Walgreens filling
14   illegitimate prescriptions somewhere outside
15   of Ohio?
16       A.    Personal knowledge is based
17   upon -- based upon investigations that were
18   conducted by DEA that were -- where documents
19   were released to the public.
20       Q.    What investigations are you
21   referring to?
22       A.    Florida.
23       Q.    Anything else other than Florida?
24       A.    That's the only one that comes to
25   mind right now as I sit here today.

Page 16

1        Q.    If you think of any others while
2    we're together today, will you please let me
3    know?
4        A.    Sure.
5        Q.    Do you have any personal knowledge
6    based on public information of any other chain
7    pharmacy in Ohio filling illegitimate
8    prescriptions?
9             MR. BENNETT:  Objection.  Vague as
10   to time.
11       Q.    At any time.
12       A.    Personal knowledge based on
13   publicly available information, no.
14       Q.    You don't have any -- strike that.
15            Do you have any personal knowledge
16   based on publicly available information of a
17   Walgreens pharmacist in Ohio filling a
18   prescription that was later diverted?
19       A.    Personal knowledge, no.
20       Q.    What about anywhere else in the
21   country?  Do you have any personal knowledge
22   based on public information of a Walgreens
23   pharmacist filling a prescription that was
24   later diverted?
25       A.    I have knowledge of situations

Page 17

1   where there was diversion, yes, I do.

2        Q.    What is that knowledge?

3        A.    Florida.

4        Q.    When you say "Florida," what

5   personal knowledge do you have about Walgreens

6   pharmacists in Florida filling prescriptions

7   that were later diverted?

8        A.    There was a Florida pharmacy in

9   Oviedo -- Oviedo, Florida, where the police

10  chief notified Walgreens on numerous occasions

11  regarding people who were buying drugs in that

12  particular Walgreens pharmacy and then were

13  dealing them out in the parking lot.  Those

14  documents are actually on the internet.

15  That's how my personal knowledge is.

16       Q.    Is the basis of the knowledge you

17  just related -- does that come from the DEA's

18  order to show cause in the Florida matter

19  against Walgreens?

20       A.    Well, it is in the order to show

21  cause, but that particular knowledge also

22  comes from the documents that were on the

23  internet that were on the Miami field division

24  website about three years ago.

25       Q.    Other than documents that you saw

Page 18

1   on the Miami field division's website and the

2   order to show cause, do you have any personal

3   knowledge at all about DEA's investigation of

4   Walgreens in Florida?

5              MR. BENNETT:  Objection.

6              Counsel, is the qualification of

7   public, based on public knowledge or public

8   information --

9              MS. SWIFT:  Yes.

10             MR. BENNETT:  -- because your

11  question didn't include that?

12             MS. SWIFT:  Well, let me qualify

13  it.  I understand you're going to instruct him

14  not to answer the question if it's not based

15  on public information.  Is that fair, James?

16             MR. BENNETT:  That would be my

17  instruction to the witness, correct.

18             MR. LANIER:  And my request would

19  be that the question itself include that

20  information and limitation so I don't have to

21  redirect to clarify.

22      Q.    Mr. Rannazzisi, before I reask the

23  question, are you going to follow James

24  Bennett's instruction not to answer the one

25  that I just asked?

Page 19

1          A.    Yes.

2          Q.    Do you have -- strike that.

3                Other than information available

4    on the internet from the Miami field division

5    and the order to show cause against Walgreens

6    in the DEA matter in Florida, do you have any

7    other public information, any personal

8    knowledge about any other public information

9    related to a Walgreens pharmacist filling a

10   prescription that was later diverted?

11         A.    I have no public information after

12   that.

13         Q.    Do you have any personal

14   recollection based on your own interactions

15   with anyone at Walgreens of any other

16   information of a Walgreens pharmacist filling

17   a prescription that was later diverted?

18               MR. BENNETT:  Objection.

19               Witness is instructed that he's

20   not authorized to disclose non-public

21   information from DEA investigations or

22   activities.  To the extent you can answer the

23   question without disclosing non-public DEA

24   information from investigations or activities,

25   you may answer the question.

```
                                        Page 20
 1        A.    I only -- my information base is
 2   based on my time at the Office of Diversion
 3   Control, and much of it is non-public.
 4        Q.    Do you have any other information
 5   other than that you've shared already, any
 6   other public information, personal knowledge
 7   about public information related to any
 8   Walgreens pharmacist anywhere filling a
 9   prescription that was later diverted?
10        A.    No.
11        Q.    Have you ever been -- strike that.
12             What about any other chain
13   pharmacy, Walmart, CVS, Giant Eagle, Rite-Aid?
14   Do you have any personal knowledge of any of
15   their pharmacists in Ohio ever filling a
16   prescription that was later diverted?
17             MR. BENNETT:  Objection.
18             Same instruction regarding
19   non-public information from DEA investigations
20   or activities.  To the extent you can answer
21   that question with publicly available
22   information, you may.
23        A.    I don't have any publicly
24   available information pertaining to that.
25        Q.    Have you ever been inside a
```