UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track Three Cases | |

## PLAINTIFFS' BENCH BRIEF REGARDING ADMISSIBILITY OF P-15962

Plaintiffs seek to offer into evidence, and question Mr. Rannazzisi regarding, a May 2015 powerpoint entitled "Controlled Substance and Legend Drug Diversion; A Law Enforcement and Regulatory Perspective[,]" which he prepared and presented at the Virginia Pharmacy Diversion Awareness Conference on behalf of the DEA while he was the Deputy Assistant Administrator, Office of Diversion Control. P-15962.[1] The Court has expressed concerns regarding (i) the relevance of this powerpoint, and (ii) whether the powerpoint, or Mr. Rannazzisi's testimony regarding same, constitutes expert opinion. Dkt. #4017 (10/12/21 Trial Tr.) at 1610:3 – 1611:16. Plaintiffs hereby submit this bench brief to address the Court's concerns.

### A. P-15962 is relevant.

Among other things,[2] P-15962 is directly relevant to notice. As Mr. Rannazzisi testified, while he was at the DEA, he traveled across the country to give presentations to "the regulated community[,]" including pharmacists, to "inform [them] about what's going on" and offer guidance regarding various issues, including controlled substances and diversion. Dkt. #4017 (10/12/21 Trial Tr.) at 1601:24-25, 1602:7-11, 1602:23-25, 1603:23 – 1605:20 ("We also tried to

---

[1] Plaintiffs originally intended to attach P-15962 as an exhibit to this brief, but encountered difficulties when attempting to upload the file through ECF. A copy of the same presentation can be found at https://www.deadiversion.usdoj.gov/mtgs/pharm_awareness/conf_2015/may_2015/rannazzisi.pdf.

[2] Aside from notice, the presentation contains evidence relevant to other material issues in this case, including: the existence of the opioid epidemic and its detrimental impact on public health; opioid migration from Florida and other states into Ohio; the statutory and regulatory obligations imposed on pharmacies and pharmacists; and the red flags that should be considered and resolved before filling prescriptions for opioids.

get the most updated information to them when we were out there. So if we knew that a new drug was emerging as a potential drug of abuse, that would be thrown into the presentation. If we saw things that we didn't – that we hadn't seen since the last presentation, or we learned from those pharmacists about something they were seeing, it would be thrown in the next presentation. We use statistics from that particular state where we're operating from, so when we set up the statistical chart, they would see the rise of prescriptions for Hydrocodone or the rise in distribution of Hydrocodone, the rise in distribution of Oxycodone, little anomalies within their state on the distribution of certain drugs. We talked about red flags for pharmacists. We talk about red flags for doctors. So depending on who we talked to, the presentation was molded so they understood what was going on in their little world and how they could help.").

This particular powerpoint was presented at the Virginia Pharmacy Diversion Awareness Conference in May 2015, which was attended by pharmacists from at least some of the chain pharmacies. P-15962. Additionally, this powerpoint (and similar powerpoints) are publicly available on the DEA's website.[3] The stated "Goals and Objectives" of the presentation were to: (i) provide "[b]ackground of prescription drug and opioid use and abuse—scope of the problem and potential solutions[;]" (ii) "[i]dentify and discuss the pharmacology of commonly diverted and abused pharmaceuticals[;]" (iii) "[i]dentify methods of pharmaceutical diversion and discuss how the pharmacist can prevent diversion in the retail setting[;]" (iv) "[d]iscuss the pharmacist and corresponding responsibility[;]" and (v) "[d]iscuss disposal regulations." P-15962 at 003. Thus, this powerpoint is relevant to demonstrate Defendants' knowledge of, *inter alia*: the opioid epidemic and its detrimental impact on the public health; the fact that diverted opioids were migrating into Ohio from Florida and other states; the statutes and regulations applicable to opioid dispensing; and the obligation to resolve red flags and exercise corresponding responsibility.

---

[3]    https://www.deadiversion.usdoj.gov/mtgs/pharm_awareness/conf_2015/may_2015/rannazzisi.pdf.
       *See also* https://www.deadiversion.usdoj.gov/mtgs/pharm_awareness/.

**B.      Neither P-15962, nor Mr. Rannazzisi's testimony regarding same, constitutes "expert" opinion.**

Mr. Rannazzisi prepared and gave powerpoint presentations as part of his role at the DEA. Dkt. #4017 (10/12/21 Trial Tr.) at 1601:11-23 ("[T]hese are presentations that we do in the normal course of our – our day-to-day employment when I was at DEA.  So we would create the presentations.  Generally I would – I would come up with how I want the presentation to proceed, and I might create slides, and I would provide them to somebody who's a lot better at PowerPoint than I was.  They tweaked the slides, send it back to me.  We go back and forth.  But any – those slides and those presentations were done by my office and my immediate staff.  We worked together to create those presentations.").  This Court has already held that Mr. Rannazzisi "can testify about what he did while he was head of the DEA Office of Diversion[.]"  *Id.* at 1610:19-21; *see also id.* at 1495:4-7 (stating Mr. Rannazzisi can "testify to matters, statements, whatever, within his personal, personal knowledge and experience"), 1495:22-24 ("He can testify since he was a DEA official, he can testify to his understanding of what the DEA's position was at that time."), 1610:24 – 1611:1 ("[H]e can testify as to what he did while he was head of that office at DEA and that he made presentations, that's fine."), 1611:13-14 ("He can testify as to DEA enforcement actions, DEA settlements . . .").[4]

Moreover, nothing contained within the powerpoint presentation constitutes expert opinion.  The vast majority of the presentation consists of factual information and statistics,[5] questions for discussion,[6] media accounts related to prescription drug abuse or diversion,[7] and

---

[4]      Notably, in his recent rulings on the parties' designations from the deposition of another DEA witness, Demetra Ashley, the Special Master overruled objections to a similar powerpoint presentation given during the time period when Ms. Ashley was in charge of the DEA's Chicago field division.  DEF-MDL-04934.

[5]      *See, e.g.,* P-15962 at 014-022, 024-028, 042-045, 047, 049, 057-058, 062, 081, 084, 099, 101-109, 112, 114, 126-127, 129, 138, 144, 147-148, 151-156, 161-163, 172-173, 179-180, 205, 209-211.

[6]      *See, e.g., id.* at 004-009, 013, 041, 139, 149, 201, 204, 208.

[7]      *See, e.g., id.* at 025, 031-034, 037-039, 050-056, 128, 130-131, 206, 213.

guidance/recommendations and information resources.[8]  Even the few statements contained within the presentation that could potentially be characterized as "opinions" merely express certain positions of the DEA as understood by Mr. Rannazzisi in his role as the DEA's Deputy Assistant Administrator, Office of Diversion Control.[9]  Significantly, this Court has expressly held that, because Mr. Rannazzisi "was a DEA official, he can testify to his understanding of what the DEA's position was at that time."  Dkt. #4017 (10/12/21 Trial Tr.) at 1495:22-24.  Thus, to the extent there are any opinions contained within the presentation, they are lay opinions allowable under Rule 701 of the Federal Rules of Evidence.  FED. R. EVID. 701 (lay witnesses can offer "testimony in the form of an opinion . . . that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702").[10]

---

[8]    *Id.* at 0036, 074, 076, 085-093, 095, 098, 110-111, 132-134, 145-146, 164, 169-171, 177, 181-199, 202-203.

[9]    *See, e.g.,* P-15962 at 012 ("Prescription Drug Abuse is driven by Indiscriminate Prescribing Criminal Activity"), 029 ("Why are these statistics outpacing population growth?  We all want to feel good and prescription drug use/abuse is an accepted method of curing whatever ails you.  There is a pill for everything and medication use is encouraged in society.  Our children are following our lead."), 060 ("We will not arrest out way out of this problem!!!!!  Enforcement is just as important as . . . . Prevention/Education Treatment"""), 082 ("So Many Drugs in the Household – Why?  - Unreasonable quantities being prescribed[;] – Insurance rules").

[10]    *Cf. United States v. Whaley,* 860 F. Supp.2d 584, 596 (E.D. Tenn. 2012) (bank employees' testimony was "not based upon scientific, technical, or other specialized knowledge *within the scope of Rule 702*, but [wa]s instead based upon their own 'particularized knowledge,' i.e., their familiarity with the underwriting process and lending policies at their banks, that they have due to their employment at their respective banks"); *United States v. Ayala–Pizarro,* 407 F.3d 25, 28-29 (1st Cir.2005) (police officer, who had investigated, patrolled, or made arrests at drug points on more than 100 occasions, was permitted to offer lay witness testimony on nature of drug points, what happened at those drug points, and on heroin packaging for distribution; such testimony was based on his particularized knowledge by virtue of his position as a police officer assigned to patrol the neighborhood); *Perez-Garcia v. Puerto Rico Ports Auth.*, 874 F. Supp. 2d 70, 73-74 (D.P.R. 2012) (holding that two OSHA employees may testify based on their personal knowledge about OSHA regulations and the legal requirements required for the importation, installation, and operation of large equipment); *Johnson v. Portz,* 707 F. Supp. 2d 494, 498-99 (D. Del. 2010) (witness, employed by the Delaware Division of Services for Aging and Adults with Physical Disabilities, who planned to offer testimony about the eligibility requirements, benefits of, and services available under the Medicaid Acquired Brain Injury Waiver program, was a fact witness).

4

## Conclusion

For the foregoing reasons, Plaintiffs request that the Court admit P-15962 into evidence and permit Plaintiffs to question Mr. Rannazzisi regarding that document.

Dated: October 13, 2021

Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

W. Mark Lanier
LANIER LAW FIRM
10940 W. Sam Houston Pkwy N., Ste 100
Houston, TX  77064
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Trial Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Frank L. Gallucci
PLEVIN & GALLUCCI CO., L.P.A.
55 Public Square, Suite 222
Cleveland, OH 44113 (216)
861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088, Ext. 2007
hunter@napolilaw.com

*Counsel for Plaintiffs Lake County and
Trumbull County, Ohio*


## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*
Peter H. Weinberger