UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>TRACK THREE | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**CVS'S OBJECTION TO CERTAIN RULINGS ON DEPOSITION DESIGNATIONS AND EXHIBITS BY THE SPECIAL MASTER**

CVS hereby seeks review of just one portion of the Special Master's decision overruling CVS's objections to testimony plaintiffs have designated from a CVS deposition. Plaintiffs seek to use testimony from a witness about two documents even though (1) the witness lacked personal and corporate knowledge of the documents, and (2) plaintiffs can play instead the deposition testimony of another witness who actually wrote and has personal knowledge of the documents. For these reasons, the testimony designated by plaintiffs violates Rules 602 and 403. If plaintiffs seek to introduce testimony about the documents, they must use the testimony of the witness who wrote the documents and has knowledge of them.[1] Alternatively, for accuracy and completeness, plaintiffs must be required to play, as well, the testimony on the documents provided by the witness who actually has knowledge of them (amounting to roughly 15 minutes of additional testimony).

In further support of this objection, CVS states as follows:

1. The testimony plaintiffs seek to play is from the Rule 30(b)(6) deposition of CVS on distribution issues. The deposition took place in Track One. At plaintiffs' insistence, it was

---

[1] In raising this objection, CVS has adhered to this Court's directive to limit the issues raised, but it preserves its other objections that were overruled.

the very first deposition taken of CVS in the opioid litigation.  Document production was ongoing at the time of the deposition.

2. The corporate representative who sat for the deposition was Mark Vernazza, an in-house attorney at CVS.  There was no single witness at CVS who had knowledge of the topics noticed by plaintiffs for the deposition—because the topics reached all the way back to 2006, CVS had stopped distributing any relevant opioid several years before the deposition, and one of the suspicious order monitoring systems used by CVS during most of the relevant period also had been replaced several years before the deposition.  CVS's corporate representative devoted four weeks to preparing for the deposition and interviewed in excess of 40 witnesses, some several times.  *See* ECF No. 1985-7 at 39–40.  While CVS's corporate representative was fully prepared to testify on the noticed topics, including but not limited to CVS's policies and procedures on suspicious order monitoring over more than ten years, he was not prepared to testify about every document that had been—or was in the process of being—produced.  Nor should he have been expected to be.

3. At the end of the deposition, after inquiring about policies and procedures, plaintiffs asked CVS's corporate representative about two documents (plus additional versions of those documents) about which he lacked personal and corporate knowledge.  A version of one of the documents is attached as Exhibit A; a version of the other document is attached as Exhibit B.  These documents were not identified in the deposition notices.  Nor did plaintiffs advise in advance of the deposition that they wished to ask questions about these particular documents.

4. The documents were either written by, or incorporated information written by, CVS employee John Mortelliti.  CVS's corporate representative testified that he did not know what Mr. Mortelliti meant when he wrote the documents and that he had not discussed the documents with

2

Mr. Mortelliti when he interviewed him.[2] But plaintiffs later deposed Mr. Mortelliti after the 30(b)(6) deposition and obtained testimony from him about these same documents. *See* Exs. D & F.

5. Now, rather than play Mr. Mortelliti's testimony about the documents, plaintiffs seek to introduce CVS's corporate representative's testimony about the documents even though he lacked personal and corporate knowledge of the documents and was unable to answer questions about the documents. Because the witness lacked knowledge, this is improper under Rule 602. The Rules of Evidence do not permit information about documents to be adduced through attorney questions, parroting their content, to a witness who lacks knowledge of them.

6. Allowing plaintiffs to bypass the testimony of Mr Mortelliti—who wrote the documents and explained them during his deposition—and to use instead the testimony of a witness who lacked knowledge of the documents also would mislead and unfairly prejudice CVS. In their questions to CVS's corporate representative, plaintiffs ascribed meaning to the documents that Mr. Mortelliti, who authored the documents, expressly disavowed in his deposition.[3] CVS's corporate representative was not in a position to clarify what Mr. Mortelliti meant when he wrote the documents because he lacked knowledge of the documents. For these reasons, CVS's corporate

---

[2] *See, e.g.*, Ex. C at 408¬09 ("Mr. Mortelliti is making statements here [in Exhibit 16] that I don't fully understand the basis for and what they're referring to. . . . Mr. Mortelliti and I did not discuss [Exhibit 16] when I spoke with him."); *id.* at 458 ("I do not know what Mr. Motelliti meant when he wrote [Exhibit 125]. I have no knowledge on that whatsoever.").

[3] *Compare, e.g.*, Ex. C at 404 (Q: "And so we have Mr. Mortelliti, . . . and he thinks that CVS is noncompliant with DEA expectations."), and *id.* at 408 (Q: "Do you think you know better, in a four-week review, than Mr. Mortelliti back in 2010, who had been reviewing the IRR for a year?"), *with* Ex. D at 135 (A: "No, we were compliant. I worded this to get it pushed through the system."). *Compare* Ex. E at 458 (questioning whether Mr. Mortelliti's statement in an email that he was reviewing with "common sense" was scary for CVS or the general public), *with* Ex. F at 150–51 ("I was trying to basically poke fun at myself to get friendly with Gary Misiaszek, hoping he would push my . . . request through . . . There was no common sense approach. I was trying to be funny with him, trying to be friendly.").

representative's deposition testimony regarding these documents also should be excluded under Rule 403. *See, e.g.*, *United States v. Rolle*, 631 F. App'x 17, 21 (2d Cir. 2015) (affirming exclusion of documents under Rule 403 because they were "more confusing than probative without a testifying witness to explain their significance").

7. It is no response for plaintiffs to suggest, as they did to Special Master Cohen, that CVS may play testimony from Mr. Mortelliti in its own case to "clarify" CVS's corporate representative's testimony—or, more accurately, to dispel the misleading impression that plaintiffs intend to create through their deposition questions of the corporate representative. That a party may offer proper testimony later is not license to admit improper testimony that violates the Federal Rules of Evidence.

8. Nor would it be fair to allow plaintiffs to adduce testimony from a witness without knowledge and then to require CVS to wait weeks to play the testimony from the witness with knowledge that would complete—or, more accurately, correct—the record. At a bare minimum, plaintiffs should be required to play Mr. Mortelliti's testimony immediately following the 30(b)(6) deposition.

9. For the reasons discussed above, Special Master Cohen's rulings on the deposition designations regarding the exhibits attached as Exhibits A and B should be overruled. For ease of reference:

- Testimony excerpts regarding Exhibit A from CVS's 30(b)(6) witness are attached as Exhibit C.

- Testimony excerpts from Mr. Mortelliti regarding the same exhibit are attached as Exhibit D.

- The testimony excerpts regarding Exhibit B from CVS's 30(b)(6) witness are attached as Exhibit E.

- Testimony excerpts from Mr. Mortelliti regarding a different version of the same exhibit are attached as Exhibit F.[4]

**WHEREFORE,** CVS respectfully requests that the Court (a) sustain this objection and exclude the testimony and exhibits described above, and (b) direct the parties to apply this ruling to similar exhibits and testimony. If this objection is overruled, then Mr. Mortelliti's testimony should be played immediately after the 30(b)(6) testimony to complete the record and to limit the unfair prejudice to CVS.

Dated: October 13, 2021

Respectfully submitted,

/s/ *Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
Graeme W. Bush
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: gbush@zuckerman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, LLC, CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*

---

[4] At Mr. Mortelliti's deposition, plaintiffs used one of the other versions of Exhibit B, Exhibit 23 to his deposition, to question him about the document. This issue also arises with other documents and testimony, including different versions of the same documents, and the parties will apply any ruling to those designations and exhibits as well if the Court sustains this objection. The other exhibits and testimony from CVS's corporate representative's deposition related to this ruling also include, for example, different versions of Exhibit B to this objection (Exhibits 18/18A and 25), and the testimony about them.

5