# **EXHIBIT C**

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    -  -  -
 2   BY MR. KENNEDY:
 3        Q.    I'm showing you Exhibit-16.
 4   From the metadata, this is October 8,
 5   2010.
 6              Does the top say, Business
 7   idea description?
 8              MR. DELINSKY:  I object to
 9        the use of this document on the
10        ground that it disaggregates the
11        document from its parent e-mail.
12   BY MR. KENNEDY:
13        Q.    Does the top say, Business
14   idea description?
15              MR. DELINSKY:  Same
16        objection.
17   BY MR. KENNEDY:
18        Q.    Sir, did it state that?
19        A.    The top of the document
20   states, Business idea description, yes.
21        Q.    Have you seen this before?
22        A.    I believe I have.
23        Q.    All right.  This says,
24   Requested for or on behalf of John
```

Highly Confidential - Subject to Further Confidentiality Review

1  Mortelliti, correct?

2  A. It does.

3  Q. And then under summary
4  description and objectives, it states,
5  DEA expects CVS to prevent suspicious
6  orders from being filled out of our DCs.
7  That's distribution centers,
8  correct?

9  A. I see that.

10  Q. Do you agree with that
11  statement on behalf of CVS?  That first
12  statement, DEA expects CVS to prevent
13  suspicious orders from being filled out
14  of our DCs, do you agree with that
15  statement on behalf of CVS?

16  A. I'm aware of the DEA
17  regulation that requires reporting of
18  suspicious orders.  I'm also aware of the
19  DEA guidance that suspicious orders not
20  be shipped.

21  Q. Well, let me ask you this:
22  CVS wouldn't write that there unless they
23  believed it, would they?

24  A. I presume Mr. Mortelliti

Highly Confidential - Subject to Further Confidentiality Review

```
 1   about their feelings about Mr.
 2   Mortelliti?
 3              MR. DELINSKY:  Object to
 4        form.
 5              THE WITNESS:  Speaking in my
 6        personal capacity, I can't say
 7        that I really did.
 8   BY MR. KENNEDY:
 9        Q.   All right.  Next stated --
10   next thing stated -- so first states, DEA
11   expects CVS to prevent suspicious orders
12   from being filled out of our DCs.
13              Then it states, The current
14   IRR does not provide the proper
15   information to meet the DEA's needs.
16              Do you see that statement?
17        A.   I do.
18        Q.   Next it states, We need
19   controlled drugs to be monitored by
20   active ingredient.  Currently, the
21   controlled drugs are monitored by item.
22   The IRR loses all order history when the
23   info on the item changes causing CVS to
24   be noncompliant with DEA expectations.
```

```
 1                  Did I read that right?
 2         A.    You read that correctly.
 3         Q.    Does CVS agree with this
 4   statement of Mr. Mortelliti in October of
 5   2010?  Does CVS agree with that
 6   statement?
 7               MR. DELINSKY:  Object to
 8         form.
 9               THE WITNESS:  CVS does not
10         agree that it was not compliant
11         with DEA expectations.
12   BY MR. KENNEDY:
13         Q.    At this point in time, Mr.
14   Mortelliti was working with the
15   suspicious order monitoring system and
16   the IRRs on a daily basis, was he not?
17   We just went through everything he does
18   with the IRR.
19         A.    Yeah, I'm just trying to get
20   a sense -- is there a date on the
21   document?
22         Q.    This is 10/8/10.  And up
23   until this point in time, we've been
24   talking for the last 45 minutes, Mr.
```

```
 1    Mortelliti is the one who is reviewing
 2    the IRRs every day, correct?
 3         A.    I'm sorry, I'm looking for
 4    the date on the document.
 5         Q.    There's no date.  I'm
 6    telling you to assume that this is
 7    October 8 of 2010.
 8               And as of this date, since
 9    mid '09, Mr. Mortelliti is the one who
10    has been reviewing the IRRs on behalf of
11    CVS every day; is that true?
12               MR. DELINSKY:  I object to
13         the form of the question.  I
14         further renew my objection to the
15         fact that this document has been
16         disaggregated from its parent
17         e-mail, which would have supplied
18         context and information on date.
19    BY MR. KENNEDY:
20         Q.    Am I right, sir?  Can you
21    answer my question?  Can you answer my
22    question?
23         A.    My understanding is from
24    some point in 2009 through some point in
```

Highly Confidential - Subject to Further Confidentiality Review

1  2010, Mr. Mortelliti was responsible for
2  reviewing the IRR report on a daily
3  basis.
4      Q.   And in -- at this point in
5  time, in 2010, you were at a law firm,
6  you weren't working for CVS, correct?
7      A.   Correct.
8      Q.   And so we have Mr.
9  Mortelliti, who has been looking at the
10 IRRs, being responsible for the IRRs for
11 over a year now, and he thinks that CVS
12 is noncompliant with DEA expectations.
13      And you, who are working at
14 a law firm at this time, disagree; is
15 that -- is that true?
16      MR. DELINSKY:  Object to
17     form.
18 BY MR. KENNEDY:
19      Q.   Is that true, sir?  You are
20 disagreeing -- on behalf of CVS, you're
21 disagreeing with the man who has been
22 reviewing this report every day when, in
23 fact, you were working at a law firm at
24 this point in time?  You disagree?

Highly Confidential - Subject to Further Confidentiality Review

```
 1              MR. DELINSKY:  Object to
 2         form.  Object to the use of this
 3         document in its incomplete form as
 4         it's currently being used.
 5              THE WITNESS:  I have set
 6         forth the corporate position of
 7         CVS with respect to this document,
 8         which is that CVS does not agree
 9         that it was not compliant with DEA
10         regulations.
11    BY MR. KENNEDY:
12         Q.   And can you tell me what is
13    the -- you weren't there, so what is the
14    basis for CVS's position that Mr.
15    Mortelliti is wrong when he says that CVS
16    is noncompliant with DEA expectations in
17    October of 2010?  What is the basis for
18    CVS's disagreement with its employee?
19              MR. DELINSKY:  Object to
20         form.  Object to the use of an
21         incomplete document.
22              THE WITNESS:  Based on the
23         investigation that I have
24         undertaken in preparation for this
```

```
 1              deposition, and based on the
 2              systems and the positions of the
 3              company, as I understand them, it
 4              is CVS's position that CVS was not
 5              noncompliant with DEA regulations.
 6                      I further don't know whether
 7              or not Mr. Mortelliti is referring
 8              to something that occurred for a
 9              very brief period of time or more
10              extended period of time, or what
11              exactly he's referring to or what
12              the basis for his statement is.
13     BY MR. KENNEDY:
14              Q.      Well, you don't know whether
15     this is a brief period of time.
16                      You know, from your review
17     of the documents, that this problem and
18     this noncompliance continues for at least
19     a year, right?  This is -- this is
20     occurring for a year past the date that
21     Mr. Mortelliti declares that CVS is
22     noncompliant, right?  This happens --
23     this goes on for another year, does it
24     not, from your understanding?
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1           A.    To my understanding --
 2                 MR. DELINSKY:  Object to
 3           form.  Object to the use of this
 4           document.  It's unfair, Mr.
 5           Kennedy.
 6     BY MR. KENNEDY:
 7           Q.    This goes on for another
 8     year --
 9                 MR. KENNEDY: You cannot give
10           speeches.  You can object and you
11           can instruct him not to answer,
12           but you cannot give speeches.
13           Please, let it stop.  We are
14           limited in time.  Let us move
15           forward.
16     BY MR. KENNEDY:
17           Q.    What is the specific basis
18     for CVS's disagreement with its employee
19     that CVS is noncompliant with DEA
20     expectations as of October of '10?  What
21     is your basis?
22                 MR. DELINSKY:  Object to
23           form.  Object to the use of the
24           document.
```

Highly Confidential - Subject to Further Confidentiality Review

| | |
|---|---|
| 1 | THE WITNESS:  CVS had a |
| 2 | system in place to detect |
| 3 | suspicious orders.  CVS's position |
| 4 | is that that system was compliant |
| 5 | with DEA regulations. |
| 6 | BY MR. KENNEDY: |
| 7 | Q.   And let me ask you this:  Do |
| 8 | you think you know better, in a four-week |
| 9 | review, than Mr. Mortelliti back in 2010, |
| 10 | who had been reviewing the IRR for a |
| 11 | year? |
| 12 | MR. DELINSKY:  Object to |
| 13 | form.  Object to the use of the |
| 14 | incomplete document. |
| 15 | THE WITNESS:  Mr. Mortelliti |
| 16 | is making statements here that I |
| 17 | don't fully understand the basis |
| 18 | for and what they're referring to. |
| 19 | Mr. Mortelliti is not a |
| 20 | lawyer.  And it is CVS's position |
| 21 | that it had in place a system to |
| 22 | detect suspicious orders, and that |
| 23 | that system was compliant with DEA |
| 24 | regulations. |

Highly Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. KENNEDY:
 2        Q.   When you met with Mr.
 3   Mortelliti, or when you talked to him
 4   these several, two, three times, let's
 5   say, did he tell you, I was wrong, I was
 6   wrong when I filled out that business
 7   idea description, I was wrong when I
 8   filled it out and said that CVS was
 9   noncompliant with DEA expectations?  Did
10   he tell you he was wrong?
11             MR. DELINSKY:  Object to
12        form.
13             THE WITNESS:  Mr. Mortelliti
14        and I did not discuss this
15        particular document when I spoke
16        with him.  I had not reviewed this
17        document at the time that I had
18        spoken to Mr. Mortelliti.
19             He didn't express to me, in
20        any capacity, that he believed
21        that the CVS system was not
22        compliant for any period of time.
23   BY MR. KENNEDY:
24        Q.   After you received this
```

1   document, didn't you call up Mr.
2   Mortelliti again and say, Mr. Mortelliti,
3   John -- you were probably on a first name
4   basis -- John, what did you mean by this?
5   You're stating, in October of 2010, that
6   CVS is noncompliant with DEA
7   expectations. Didn't you call him up and
8   ask him about this?
9            MR. DELINSKY: Object to
10           form.
11  BY MR. KENNEDY:
12       Q.   Did you call him and ask
13  him?
14           MR. DELINSKY: Object.
15           Object to form. Object to the
16           incomplete use of the document.
17           Object to the question to the
18           extent it calls for
19           attorney-client information.
20              To the extent you're able to
21           answer without disclosing
22           attorney-client communication, you
23           may answer. If you can't, you're
24           instructed not to answer.

```
 1                THE WITNESS:  I reviewed
 2      this document --
 3                MR. KENNEDY:  I'm going to
 4      object to the speeches.
 5                But go ahead, please.
 6                THE WITNESS:  I reviewed
 7      this document only very recently
 8      and did not have an opportunity to
 9      discuss it with Mr. Mortelliti.
10   BY MR. KENNEDY:
11      Q.    When did you review it?
12   What day?
13      A.    To the best of my
14   recollection, it was yesterday.  It may
15   have been among some documents I saw on
16   Friday night.
17      Q.    Let's go to the next box
18   down.  Next box down under business
19   drivers, all right?
20                It states, We can be fined
21   or penalized by the DEA due to the
22   current environment.
23                Do you agree -- does CVS
24   agree with that statement by Mr.
```

Highly Confidential - Subject to Further Confidentiality Review

1  Mortelliti?
2  　　　A.　　I don't know what Mr.
3  Mortelliti is referring to there.
4  　　　Q.　　You don't have any idea --
5  you don't think he means that we can be
6  fined for being noncompliant with DEA
7  expectations because our IRR is losing
8  all order history?  You don't think he's
9  referencing the box above?
10 　　　　　　MR. DELINSKY:  Object to
11 　　　form.
12 　　　　　　THE WITNESS:  Based on this
13 　　　document, I'm unable to provide
14 　　　corporate knowledge as to what Mr.
15 　　　Mortelliti meant when he said
16 　　　that.
17 　　　　　　MR. DELINSKY:  Let's take a
18 　　　break.
19 　　　　　　MR. KENNEDY:  Sure.
20 　　　　　　VIDEO TECHNICIAN:  The time
21 　　　is 5:10 p.m.  We're going off the
22 　　　record.
23 　　　　　　　　　-   -   -
24 　　　　　　(Whereupon, a brief recess