# EXHIBIT E

Highly Confidential - Subject to Further Confidentiality Review

1    Q.   All right.  So we've been
2  talking about the IRR drug report and the
3  issue with it not tracking by active
4  ingredient.
5         But I want to -- let's back
6  up to the beginning of the discovery of
7  the problem in October of 2010, all
8  right?
9         We've given you Exhibit --
10        MR. GOETZ:  Exhibit-125.
11              -  -  -
12        (Whereupon, CVS-Vernazza
13    Exhibit-125, CVS-MDLT1-000034172;
14    Native, was marked for
15    identification.)
16              -  -  -
17        MR. GOETZ:  And just so the
18    record is clear, for some reason,
19    when it printed it, has a Bates
20    number of 3417, and the actual
21    Bates number is 34172.  The 2 got
22    cut off.
23  BY MR. KENNEDY:
24    Q.   So this is an e-mail

Highly Confidential - Subject to Further Confidentiality Review

```
 1   that Mr. Mortelliti -- dated October 6,
 2   2010 at 9:30 a.m.
 3           Do you see that e-mail?
 4       A.  You're talking about the
 5   second e-mail down in the chain?
 6       Q.  Yes, sir.
 7           He's copying his boss, Frank
 8   Devlin, is he not?
 9       A.  I believe Mr. Mortelliti
10   reported to Mr. Devlin at this time.
11       Q.  And the subject is,
12   Controlled drug IRR, important info,
13   importance, high.
14           Do you read that?
15       A.  The subject is, Controlled
16   drug IRR important info.  The importance
17   level is rated as high.
18       Q.  And you understand that the
19   IRR report is what we've been talking
20   about that Mr. Mortelliti believed and
21   certainly stated, in October of 2010, the
22   problem with the report made CVS
23   noncompliant with DEA expectations;
24   that's what we're talking about, right?
```

Golkow Litigation Services                                    Page 454

Highly Confidential - Subject to Further Confidentiality Review

```
 1              MR. DELINSKY:  Object to
 2         form.
 3              THE WITNESS:  No, I don't
 4         believe that's consistent with my
 5         testimony.
 6   BY MR. KENNEDY:
 7         Q.   I didn't ask you that.
 8              I asked you, do you
 9   understand that this e-mail is in
10   relation to the IRR report that Mr.
11   Mortelliti has indicated has a problem
12   which is causing CVS to be noncompliant
13   with DEA expectations?  Do you understand
14   this is the same IRR report we're talking
15   about?
16         A.   I'm familiar with the term
17   "IRR."  I have no reason to believe that
18   the term "IRR" means something different
19   in this e-mail than it meant in prior
20   exhibits that we've looked at.
21         Q.   All right.
22         A.   ==I also don't have a basis to==
23   ==understand the statements of Mr.==
24   ==Mortelliti in the prior exhibit that you==
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    just referenced.
 2              And as I mentioned, that's
 3    not the company's position with respect
 4    to its compliance with DEA regulations.
 5              MR. KENNEDY:  And I move to
 6         strike.
 7    BY MR. KENNEDY:
 8         Q.   Mr. Mortelliti states in
 9    this e-mail, in October of 2010, he
10    states, Gary, all but one item in the
11    network -- and network is the entire
12    country, correct?
13         A.   Again, I don't know what Mr.
14    Mortelliti is referring to here.  It
15    certainly could be that when he's saying
16    "the network" that he's referring to
17    chain-wide.  I just don't know.
18         Q.   He states, All but one item
19    in the network was missing three to four
20    items of LAG info on today's report.
21    Something else changed or just about
22    every company we deal with has changed
23    the description on their drugs.  Whatever
24    you can do to help expedite this process
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   would be greatly appreciated.  I am now
 2   reviewing the network controlled drug IRR
 3   on common sense as opposed to IRR
 4   historical data.  I know, that is
 5   scary...be nice.
 6              Did I read that correctly?
 7        A.   I believe you read that
 8   correctly.
 9        Q.   And when he is indicating --
10   first of all, when he's saying, help, can
11   you expedite this process, this is
12   October of 2010, and we don't have a fix
13   of this process for more than a year; is
14   that correct, sir?
15        A.   I don't know that to be
16   true.
17        Q.   And when he states that --
18   Mr. Mortelliti states he is now reviewing
19   the IRR for the entire network based upon
20   common sense as opposed to historical
21   data, and he states that that is scary,
22   do you know whether he meant scary for
23   CVS, or did he mean that that was scary
24   for the general public, the people of the
```

Golkow Litigation Services                    Page 457

```
 1    United States who might be receiving and
 2    consuming opioids because a suspicious
 3    order was sent?
 4              MR. DELINSKY:  Object to
 5         form.
 6              THE WITNESS:  I do not know
 7         what Mr. Mortelliti meant when he
 8         wrote that.  I have no knowledge
 9         on that whatsoever.
10    BY MR. KENNEDY:
11         Q.    You don't know whether he
12    meant scary for CVS or scary for the
13    American public?
14         A.    I don't know if it's either
15    of those or something else or none of
16    those.  I don't know.
17         Q.    Or both?
18         A.    I have no knowledge, sir.
19         Q.    Sir, this IRR report that
20    he's talking about, as we talked about,
21    it's the first step in your suspicious
22    order monitoring policy, correct?  It is
23    the first step?
24              MR. DELINSKY:  Object to
```