## ADMINISTRATIVE MEMORANDUM OF AGREEMENT

This Administrative Memorandum of Agreement ("Agreement") is entered into by and between the United States Department of Justice, Drug Enforcement Administration (hereinafter "DEA") and Wal-Mart Stores, Inc., on its behalf as well as on behalf of its subsidiaries that operate pharmacies registered with DEA in the United States and its territories (hereinafter "Walmart") (each a "Party" and collectively hereinafter referred to as the "Parties").

### I.    APPLICABILITY

This agreement shall be applicable to all current and future Walmart Pharmacy locations registered with the DEA to dispense controlled substances.

### II.   BACKGROUND

On November 13, 2009, the Deputy Assistant Administrator, Office of Diversion Control, DEA, issued an Order to Show Cause ("OTSC"), proposing to revoke DEA Certificate of registration BW4649274 of Walmart Pharmacy #10-2177 located  at 3382 Murphy Canyon Road, San Diego, California 92123.

The OTSC alleged that Walmart Pharmacy #10-2177 (1) improperly dispensed controlled substances to individuals based on purported prescriptions issued by physicians who were not licensed to practice medicine in California; (2) dispensed controlled substances to individuals located in California based on Internet prescriptions issued by physicians for other than a legitimate medical purpose and/or outside the usual course of professional practice in violation of federal and state law; and (3) dispensed controlled substances to individuals that Walmart Pharmacy #10-2177 knew or should have known were diverting the controlled substances. See Appendix A (OTSC dated November 13, 2009).  In addition to the allegations raised in the OTSC, DEA's investigation also revealed that Walmart Pharmacy #10-2177 was allegedly dispensing controlled substances based on prescriptions that contained expired, suspended, and/or invalid DEA numbers and that Walmart Pharmacy #10-2177 was allegedly refilling prescriptions for controlled substances too early.

The OTSC was served via Certified Mail, Return Receipt Requested on November 18, 2009.  On December 16, 2009, Walmart Pharmacy #10-2177, through counsel, filed a hearing request with the Administrative Law Judge, wherein Walmart Pharmacy #10-2177 disputed the factual allegations of the OTSC and disagreed with DEA's position that the DEA registration of Walmart Pharmacy #10-2177 should be revoked.  See Appendix B (Request for Hearing dated December 16, 2009).

The facts alleged above and in the OTSC could, if proven at hearing, constitute a basis to revoke the DEA registration of Walmart Pharmacy #10-2177.  The Parties, however, desire to settle the administrative matter pending against Walmart Pharmacy #10-2177.  Moreover, the



PLAINTIFFS TRIAL EXHIBIT
P-14711_00001

Confidential – Subject to Protective Order

US-DEA-00006101

P-14711 _ 00001

Parties believe that the continued cooperation between the Parties to reduce the potential for diversion is in the public interest.

In consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, and intending to be legally bound hereby, the Parties hereto agree as follows:

## III.   TERMS AND CONDITIONS

1.   Intention of Parties to Effect Settlement.  In order to avoid the uncertainty and expense of litigation, the Parties agree to resolve this matter according to the Terms and Conditions below.

2.   No Admission or Concession.  This Agreement is neither an admission by Walmart of liability or of any allegations made by DEA in the OTSC and its investigation of Walmart Pharmacy #10-2177, nor a concession by DEA that its allegations in OTSC and its investigation of Walmart Pharmacy #10-2177 are not well-founded.

3.   Covered Conduct for Purposes of this Agreement.  "Covered Conduct" shall mean the conduct at Walmart Pharmacy #10-2177 as alleged in the OTSC and conduct discovered during the course of DEA's investigation as described in Section II above.

4.   Obligations of Walmart:

   a.  Walmart agrees to maintain a compliance program, updated as necessary, designed to detect and prevent diversion of controlled substances as required by the Controlled Substances Act ("CSA") and applicable DEA regulations.  This program shall include procedures to identify the common signs associated with the diversion of controlled substances including but not limited to, doctor-shopping, requests for early refills, altered or forged prescriptions, prescriptions written by doctors not licensed to practice medicine in the jurisdiction where the patient is located, and prescriptions written for other than a legitimate medical purpose by an individual practitioner acting outside the usual course of his professional practice.  The program shall also include procedures to report thefts and significant losses of controlled substances pursuant to 21 C.F.R. § 1301.76(b) and the routine and periodic training of all Walmart employees, including new employees, responsible for controlled substances regarding their responsibilities under the CSA and regarding relevant elements of the compliance program.  This compliance program shall apply to all current and future Walmart pharmacies registered with the DEA.  Walmart acknowledges and agrees that the obligations undertaken in this subparagraph do not fulfill the totality of its obligations under the CSA and its implementing regulations.

   b.  Walmart shall notify the local DEA office within seven (7) business days of a refusal to fill a prescription for controlled substances where such refusal is based on the Walmart pharmacist's affirmative conclusion that the prescription was forged, altered, or issued for other than a legitimate medical purpose by a practitioner acting

Confidential – Subject to Protective Order

outside the usual course of professional practice.  Notification by facsimile will be considered sufficient notice for purposes of this paragraph.

c.  Walmart shall implement and maintain policies and procedures designed to ensure that its pharmacies comply with all applicable laws requiring pharmacists to obtain current identification from a person picking up controlled substance prescriptions.  If required to do so by law, Walmart shall record and maintain identifying information.  Such identifying information shall be readily retrievable and maintained for the period required by applicable state law, and Walmart shall make such information available to DEA agents, task force officers and/or investigators upon request for inspection and copying.

d.  Walmart shall comply with all state and federal laws and regulations with regard to dispensing controlled substances based on a prescription written or otherwise transmitted by a prescriber located outside of the state where the patient and pharmacy are located.  Walmart shall require its pharmacists to comply with all applicable federal and state law and satisfy himself or herself that a valid doctor/patient relationship exists before filling a prescription for controlled substances.

e.  Walmart shall implement procedures to routinely verify that the DEA registration number on a prescription is a valid, active DEA registration number, independent of calling the local DEA office.  Such verification may be performed using the NTIS or similarly-reliable third party database where DEA registration changes are recorded or via DEA's Office of Diversion Control website.  This Agreement shall not require Walmart to call the DEA or any local DEA office to verify a DEA registration number.  Walmart understands and acknowledges that 21 C.F.R. §1306.04 applies to all Walmart pharmacists who fill prescriptions.

f.  Walmart shall make the records that it is required to keep pursuant to the CSA and implementing regulations available to DEA agents, task force officers and/or investigators upon request, provided that the agent, officer, or investigator presents his or her DEA credentials.

g.  Dispensing records submitted to Prescription Monitoring Programs (in those states that have or will implement such a system) shall contain a valid, active DEA registration number, verified pursuant to subparagraph (e) above, if state law requires that such number be provided.

h.  Walmart shall maintain and enforce a policy that allows and encourages its pharmacists to obtain and review a patient and/or doctor profile from the Prescription Monitoring Program (if such information is available to the pharmacy) prior to dispensing controlled substances if the pharmacist believes, in the exercise of his or her professional judgment, that the data will assist him or her in determining the appropriateness of filling a prescription for controlled substances.

3 of 7

US-DEA-00006103

P-14711 _ 00003

i.  Walmart shall institute policies and procedures to block the early refill of controlled
substances.  Walmart's system may allow pharmacists to override a block and to refill
a prescription early provided that the pharmacist provides a reasonable explanation
for the override.  Walmart shall direct its pharmacists that, prior to overriding any
block to refill a prescription for a controlled substance, the pharmacist shall satisfy
himself or herself that there are no mitigating factors which counsel against the refill.
In the exercise of his or her professional judgment, pharmacists may, but are not
required to, consult Prescription Monitoring Program information (if such
information is available). Walmart shall maintain a record of the explanation for each
override.  The record of each override will be linked to the original prescription.
These records shall be readily retrievable and maintained for a period of two (2)
years, and Walmart shall make such information available to DEA agents, task force
officers and/or investigators upon request for inspection and copying.  Further,
pursuant to 21 C.F.R. § 1306.12, nothing in this paragraph shall be construed to
permit the early filling of prescriptions for Schedule II controlled substances.

j.  Walmart shall install security cameras in all Walmart Pharmacy locations that capture
images of all transactions at the pharmacy counter, including drive-thru windows, if
applicable.  The recordings from the security cameras shall be maintained for a period
of not less than thirty (30) days, shall be readily retrievable by Walmart, and shall be
produced to DEA agents, task force officers and/or investigators upon request.

k.  Walmart shall report to the local DEA office, within thirty (30) calendar days after
discovery, the initiation of any official legal proceeding known to Walmart conducted
or brought by a government entity or licensing board against Walmart regarding the
dispensing of controlled substances or sale of schedule listed chemical products,
provided that Walmart has not already reported the events underlying the proceeding
to the DEA.

5.  <u>Release by DEA</u>. In consideration of the fulfillment of the obligations of Walmart under
this Agreement, DEA hereby releases Walmart from liability and agrees to refrain from
filing any administrative actions against Walmart's DEA registrations based on the
Covered Conduct or similar conduct at any other Walmart pharmacy on or before the date
of the Agreement, within DEA's enforcement authority under 21 U.S.C. §§ 823 and 824.
Notwithstanding the release by DEA contained in this Paragraph, DEA reserves the right
to seek to admit evidence of the Covered Conduct in any other administrative
proceedings.  Further, nothing in this Paragraph shall prohibit any other agency within
the Department of Justice, any State attorney general, or any other law enforcement,
administrative, or regulatory agency of the United States or any State or political
subdivision thereof ("law enforcement agency"), from initiating administrative, civil, or
criminal proceedings with respect to the Covered Conduct.  DEA shall, as obligated in
fulfilling its statutory duties, assist and cooperate with any law enforcement agency that
initiates an investigation, action, or proceeding, involving the Covered Conduct.  At
Walmart's request, DEA agrees to disclose the terms of this Agreement to any other law

Confidential – Subject to Protective Order

enforcement agency and will represent that Walmart's compliance with this Agreement adequately addressed the allegations raised in the administrative proceedings by DEA as defined in the Covered Conduct.

6. <u>Release by Walmart</u>. Walmart fully and finally releases the United States of America, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which Walmart has asserted, could have asserted, or may assert in the future against the United States of America, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

7. <u>Material Breach</u>. A single, inadvertent or negligent failure by Walmart to perform any of the actions contemplated by this Agreement shall not be considered a breach of this Agreement.

8. <u>Reservation of Claims</u>. Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including Walmart) are the following:

   a. Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

   b. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct or similar conduct subject to paragraph 5 of the Agreement;

   c. Any liability based upon such obligations as are created by this Agreement.

9. <u>Binding on Successors</u>. This Agreement shall inure to the benefit of and is binding on Walmart, and its respective successors, heirs, transferees and assigns.

10. <u>Costs</u>. Each Party to this Agreement shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

11. <u>No Additional Releases</u>. This Agreement is intended to be for the benefit of the Parties and Released Parties only and by this instrument the Parties do not release any claims against any other person or entity other than the Released Parties.

12. <u>Effect of Agreement</u>. This Agreement constitutes the complete agreement between the Parties. All material representations, understandings, and promises of the Parties are contained in this Agreement, and each of the parties expressly agrees and acknowledges that, other than those statements expressly set forth in this Agreement, it is not relying on any statement, whether oral or written, of any person or entity with respect to its entry into this Agreement or to the consummation of the transactions contemplated by this Agreement. Any modifications to this Agreement shall be set forth in writing and signed by all Parties. Each Party represents that this Agreement is entered into with advice of counsel and knowledge of the events described herein. Walmart further represents that this Agreement is voluntarily entered into in order to avoid litigation, without duress or compulsion.

Confidential – Subject to Protective Order

13. **Execution of Agreement**.  This Agreement shall become effective (i.e., final and binding) on the date of signing by the last signatory (the "Effective Date"), and remain in effect for a period of four (4) years from the Effective Date.  DEA agrees to notify Walmart immediately when the final signatory has executed this Agreement.

14. **Execution in Counterparts**.  This Agreement may be executed in counterparts, each of which constitutes an original, and all of which constitute one and the same agreement.

15. **Authorizations**.  The individuals signing this Agreement on behalf of Walmart represent and warrant that they are authorized by Walmart to execute this Agreement.  The individuals signing this Agreement on behalf of DEA represent and warrant that they are signing this Agreement in their official capacities and that they are authorized by DEA to execute this Agreement.

6 of 7

IN WITNESS WHEREOF, the Parties hereto have duly executed this Administrative Memorandum of Agreement.

**WAL-MART STORES, INC.**

Dr. John Agwanobi
Senior VP and President, Health & Wellness
Wal-Mart Stores, Inc.

Dated: 02/18/2011

CATHERINE M. O'NEIL
King & Spalding LLP
Attorneys for Wal-Mart Stores, Inc.

Dated: 2/18/2011

**THE UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION**

JOSEPH T. RANNAZZISI
Deputy Assistant Administrator
Office of Diversion Control

Dated: 3/1/11

WENDY H. GOGGIN
Chief Counsel

Dated: 3/1/11

7 of 7

US-DEA-00006107

P-14711 _ 00007