Message

| | |
|---|---|
| **From**: | Mail, RX [rx.mail@walgreens.com] |
| **Sent**: | 6/11/2012 9:56:55 AM |
| **To**: | MVPs-MPDs-MLPDs-DMs-RxSs-DLPMs. [MVPs-MPDs-MLPDs-DMs-RxSs-DLPMs.@Walgreens] |
| **CC**: | COVPs-EPDs-MarketAdmins-COVPadmins. [COVPs-EPDs-MarketAdmins-COVPadmins.@Walgreens] |
| **BCC**: | Jaime Whited [Jaime Whited/Cent/OPS/Walgreens@Walgreens] |
| **Subject**: | Materials for Today's Controlled Substance Action Plan Videoconference |
| **Attachments**: | CSActionPlan_vF.PDF; FOC Survey - June 2012.pdf; Focus on Compliance June 2012.docx; FOC Pain Management - Job Aid.pdf; GFDpolicyfinalversion.pdf |

Good Morning,
Attached are the materials that will be reviewed during today's videoconference, which include:

- Controlled Substance Action Plan PowerPoint
- Good Faith Dispensing Policy
- Focus on Compliance (FOC) Survey
- FOC Pain Management – Cover Letter and Job Aid

Thank you.

PLAINTIFFS TRIAL EXHIBIT
P-15314_00001

WAGMDL00742641

WAGMDL00742642



# Controlled Substance Action Plan

## June 7, 2012

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

HIGHLY CONFIDENTIAL



# Agenda

- Overview
- Review updated policies & procedures
- Exception store visits
- Future Enhancements
- Call to action and next steps

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

WAGMDL00742643

HIGHLY CONFIDENTIAL



# Overview

- Due to recent action taken by the DEA, select policies and procedures have been updated to ensure our pharmacists and stores are compliant when dispensing controlled substances.

- Corresponding enhancements include:
  - Update to the Good Faith Dispensing Guidelines
  - Revised Ordering Procedures for Controlled Substances
  - Drug Utilization Review Enhancements

- Exception stores have been identified that may require additional action by Market and District leadership.

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

3

WAGMDL00742644

HIGHLY CONFIDENTIAL



- Overview
- Review updated policies & procedures
- Exception store visits
- Future Enhancements
- Call to action and next steps

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

4

WAGMDL00742645

HIGHLY CONFIDENTIAL



# Good Faith Dispensing Policy

- The Good Faith Dispensing Policy has been updated to provide Pharmacists additional resources for making decisions when dispensing controlled substance prescriptions.

- The following components have been updated:
  - Prescription Validation Procedures
  - Roles and Responsibilities of each pharmacy team member

- Pathway to Good Faith Dispensing Policy
  - *Storenet > RxOps > Pharmacy Policies and Procedures > Filling Prescriptions > Controlled Substance Prescriptions and Good Faith Dispensing*

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

5

WAGMDL00742646

HIGHLY CONFIDENTIAL



# Validation Procedures for Good Faith Dispensing (GFD)

## Validation Tools

1. **Patient ID**
   - Verify and Document ID if the patient doesn't have a relationship with the pharmacy
   - Follow state specific guidelines

2. **Prescriber**
   - Verify Prescriber DEA number
   - Use DEA website if necessary

3. **PDMP**
   - Utilize to obtain additional information to help determine validity of prescription
   - State specific

4. **Data/DUR Review**
   - Review patient profile to resolve and document any associated DURs

5. **Evaluate GFD guidelines**
   - Ensure usual course of professional practice
   - Verify noticeable trends with prescribers or patients
   - Verify prescriptions have not been altered or forged

## Actions after Validation

6. **Document**
   - Document all efforts used to validate good faith dispensing

7. **RPh Action**
   - Determine how to proceed after using GFD guidelines:
     - Dispense
     - Not valid to dispense
     - Refuse to dispense

8. **Notify DEA**
   - Notify local DEA office of refusal to fill if prescription is forged, altered or issued outside of usual course of professional practice

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

6

WAGMDL00742647

HIGHLY CONFIDENTIAL



# Everyone Plays a Role in the GFD Process



**Shared Responsibility: Technician**

**Greet Patient, Scan Prescription & Data Entry**

- Technician to verify and scan patient ID (GFD)
- Technician to alert RPh of questionable rxs
- Determine if Prescriber has a valid DEA

**Shared Responsibility: Pharmacist**

**Data Review & DUR**

- Validate Prescriber Scope of Practice
- Review PDMP (state specific) – non-POWER only
- Verify script with PBR
- Evaluate elements of GFD
- Review Patient Profile and resolve DURs
- Document information
- Action: Determine if appropriate to fill

**Ultimate Responsibility: Pharmacist**

**Product Review or POWER-RFP**

- Confirm GFD validation and documentation was completed, including PDMP in POWER
- If not, then complete GFD guidelines to determine if prescription should be dispensed.
- Final Responsibility to complete GFD
- Action: Determine if appropriate to fill

**Shared Responsibility: Pharmacist & Technician**

**Consultation (CAP) & Point of Sale**

- Check/ Verify ID
- Follow up on any open issues related to GFD guidelines.
- Consult patient

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

HIGHLY CONFIDENTIAL

WAGMDL00742648

7



# Ordering Controlled Substances

- Controlled Substance Ordering procedures have been updated to minimize risk.

- The following changes have been implemented:

  - Manual Orders to DC and Cardinal will no longer be accepted.

    - All Controlled Substance orders will be required to be processed through SIMS, including requests for specific manufacturers

    - *StoreNet > SIMS > Rx Inventory Management > Ordering > Controlled Drugs > Ordering Specific Manufacturer*

  - Maximum Ordering Quantities

    - Store specific order limits

    - Chainwide order limits

  - Controlled Substance Order Quantity Override Form

    - The Pharmacy Supervisor will be required to evaluate and complete the override form for orders exceeding the maximum quantity only

    - *RxS and DM StoreNet Homepage > Inventory & Shrink > Controlled Substance Order Quantity Override Form*

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

HIGHLY CONFIDENTIAL

WAGMDL00742649

8



# Enhanced Drug Utilization Review

- A DUR enhancement has been made to alert pharmacists to review a patient's profile and utilize Good Faith Dispensing procedures when dispensing select controlled substances.

  – A **Major DUR** will flag when a patient has been prescribed medications, that in combination, have a high potential for abuse.

  – The following message will appear to the pharmacist: *"A strong association appears to exist between illicit use of Carisoprodol in combination with narcotic analgesics such as oxycodone and benzodiazepines such as alprazolam......."*

- The pharmacist completing the DUR must then adhere to the Good Faith Dispensing policy.

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

WAGMDL00742650

HIGHLY CONFIDENTIAL



- Overview
- Review updated policies & procedures
- Exception store visits
- Future Enhancements
- Call to action and next steps

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

HIGHLY CONFIDENTIAL

WAGMDL00742651



# Exception Stores

- Walgreens has taken a proactive approach to minimize risk for targeted stores that may be impacted in the future

- District and Market Leadership including Loss Prevention will be provided a list of exception stores

- Exception stores were identified using the following criteria:
  - Controlled Substance Volume and Trending
  - Proportionality to total business
  - Payment method

- Working together, District LP Managers and Pharmacy Supervisors for these exceptions stores are required to complete a Focus on Compliance (FOC) Pain Management survey
  - Information gathering tool to better understand current practices
  - Results will be used to develop future best practices for all stores

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

WAGMDL00742652

HIGHLY CONFIDENTIAL



- Overview
- Review updated policies & procedures
- Exception store visits
- **Future Enhancements**
- Call to action and next steps

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

HIGHLY CONFIDENTIAL

WAGMDL00742653



# Future Enhancements

- We will be developing additional tools to assist in our compliance efforts. These include:

  – Index Reporting

  – Updated Inventory Dashboard

  – Additional inventory system controls (SIMS)

  – Controlled Substance investigation process

  – IT enhancements to streamline current manual processes

  – Good Faith Dispensing PPL Policy Acknowledgement and PPL Training

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

13

WAGMDL00742654

HIGHLY CONFIDENTIAL



- Overview
- Review updated policies & procedures
- Exception store visits
- Future Enhancements
- Call to action and next steps

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

14

WAGMDL00742655

HIGHLY CONFIDENTIAL



# Call to Action

- All District Leaders should:

  - Reinforce the following information with all pharmacy team members:

    - Updated Good Faith Dispensing Policy
    - Updated controlled substance ordering procedures
    - Enhanced Drug Utilization Review

  - Support your pharmacists in making good faith decisions

- In addition, select District Leaders:

  - Are required to visit their exception stores

  - Store visits should be completed by at least a RxS and DLPM who will complete FOC Pain Management Survey.

    - DLPM is required to submit the information from the store visit into the online FOC Pain Management Survey.

  - Recommendation: Complete 5 store visits/week

Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

HIGHLY CONFIDENTIAL

WAGMDL00742656



16

WAGMDL00742657

# Questions



Information is confidential and proprietary to Walgreen Co. ©2012 Walgreen Co. All rights reserved.

HIGHLY CONFIDENTIAL

## Focus on Compliance – June 2012

### Store Information

**✱1. Enter the store information:**

Market: _____

District: _____

Store: _____

**✱2. Please enter the date you visited the store.**

       MM  DD  YYYY

Date:   ☐ / ☐ / ☐

**✱3. Is this a 24 hour location?**

◯ Yes            ◯ No

**✱4. What is the average number of prescriptions filled per day?**

# of prescriptions: _____

### Local Prescribers

**✱5. Please list the hospitals and pain management clinics from which the store routinely receives prescriptions.**

_____

**✱6. What are the names and DEA numbers of the top 3 prescribers of controlled substance medications for this store?**

_____

**✱7. Is the pharmacist aware of any recent increase in pain management prescriptions coming into the store?**

◯ Yes            ◯ No

**✱8. When a prescriber is contacted regarding a pain management prescription, is the interaction annotated in Intercom Plus or documented on the prescription hard copy?**

◯ Yes            ◯ No

### Out of State Prescriptions

HIGHLY CONFIDENTIAL

## Focus on Compliance - June 2012

**9. Has the pharmacist seen a lot of pain management prescriptions from prescribers who practice in a different state?**

◯ Yes                    ◯ No

**10. Has the pharmacist seen a lot of patients with pain management prescriptions who reside in a different state?**

◯ Yes                    ◯ No

### LPxRx Review

Access the 52 week report in the LPxRx report in LPD.

**\*11. Does oxycodone 15mg (WIC 422719) or oxycodone 30 mg (WIC 427079) appear on the LPxRx report?**

◯ Yes

◯ No

### LPxRx Review

Click on the WIC to view the 52 week information at the bottom of the screen.

**\*12. Please enter the total 52 week net adjustments and overbuys for oxycodone 15mg and oxycodone 30mg (using a (-) to indicate a negative adjustment).**

Total oxycodone 15 mg adjustments: [＿＿＿]

Total oxycodone 15 mg overbuys: [＿＿＿]

Total oxycodone 30 mg adjustments: [＿＿＿]

Total oxycodone 30 mg overbuys: [＿＿＿]

### General Observations

**\*13. Has the pharmacy staff observed any individuals dropping off pain management prescriptions for multiple patients?**

◯ Yes

◯ No

### Prescription Drug Monitoring Program

WAGMDL00742659

## Focus on Compliance - June 2012

**\*14. Does the state have a prescription drug monitoring program?**

◯ Yes                                    ◯ No

### Prescription Drug Monitoring Program

**\*15. Does the pharmacist(s) on duty have access to the state's prescription drug monitoring program website?**

◯ Yes                                    ◯ No

**\*16. When does the pharmacist use the state prescription drug monitoring program?**

[ text box ]

**\*17. If the prescription is checked against the PDMP and filled, the use of the PDMP......**

◯ Annotated in Intercom Plus                ◯ Printed and attached to the hard copy of the prescription

◯ Noted on the hard copy of the prescription   ◯ Other

Other (please specify):

[ text box ]

### ID Checks

**\*18. Does the pharmacy staff check photo IDs for controlled substance prescriptions?**

◯ Yes                                    ◯ No

### ID Checks

**\*19. When does the pharmacy staff check photo IDs for controlled substance prescriptions?**

◯ Dropoff              ◯ Pickup              ◯ Both

**\*20. Does the pharmacy staff document ID information when ID is checked?**

◯ Yes                                    ◯ No

### ID Checks

HIGHLY CONFIDENTIAL

## Focus on Compliance - June 2012

**\*21. How is photo ID information for controlled substance prescriptions documented?**

### DEA Notifications

**\*22. Is the DEA notified (sent a faxed copy) within 2 business days of any forged or altered controlled substance prescriptions?**

◯ Yes                                    ◯ No

**\*23. Is the DEA notified (sent a faxed copy) within 2 business days of any controlled substance prescriptions the pharmacist(s) refused to fill ?**

◯ Yes                                    ◯ No

**\*24. Although not required, does the pharmacy staff keep a copy of the prescriptions that are refused?**

◯ Yes                                    ◯ No

**\*25. What is the average number of controlled substance prescriptions per day that are refused?**

# of prescriptions
refused:

### Workplace Safety

**\*26. Does the pharmacy staff believe that refusing a controlled substance prescription could create safety concerns?**

◯ Yes                                    ◯ No

### Additional Comments

**27. Please note any additional comments.**

HIGHLY CONFIDENTIAL

# Focus on Compliance

## June 2012: Pain Management Prescriptions

**For Select Markets**

### Why It's Important:

Prescription drug abuse is the nation's fastest growing drug problem. Both the White House and the Center for Disease Control (CDC) have recently referred to this growing concern as an epidemic. Community pharmacy has become a target for individuals seeking these drugs. As part of our commitment to follow good faith dispensing guidelines, a select group of stores has been identified as having potentially higher risk related to their pain management prescription activity. By completing this Focus on Compliance, we ensure we remain compliant with government rules and regulations, and Walgreens can continue to provide critical health care service to the communities we serve.

### Pharmacy Check:

Assess the store's activity in this area by discussing recent controlled dispensing activity with the pharmacy manager and/or other pharmacist on duty using the provided <u>online survey</u> to document your findings. A copy of the survey questions has been provided below.

You can also copy and paste the following link in your browser window to access the survey:

(https://www.surveymonkey.com/s/FOC062012)

### Closing Discussion:

Review findings with the district manager, store manager, and pharmacy manager (if not present), and discuss corrective action where applicable. Routinely follow up to review the store's progress in this area.

HIGHLY CONFIDENTIAL

**Store Information**

*Questions 1-4 request general information that will be used to identify and compare stores when reviewing and analyzing the data.*

1. Enter the store information:

2. Please enter the date you visited the store.

3. Is this a 24 hour location?

4. What is the average number of prescriptions filled per day?

**Local Prescribers**

5. Please list the hospitals and pain management clinics from which the store routinely receives prescriptions.

*Hospital and pain clinic information will be used to better determine whether pain management prescriptions are being filled for legitimate pain patients or are being issued for other than a legitimate medical purpose by prescribers acting outside the usual course of professional practice.*

6. What are the names and DEA numbers of the top 3 prescribers of controlled substance medications for this store?

*Requesting and identifying prescribers that issue large numbers of controlled substance prescriptions will raise awareness to these individuals; the list can potentially be used for facility visits to better understand the nature of the prescriber's medical practice.*

7. Is the pharmacist aware of any recent increase in pain management prescriptions coming into the store?

*Social media is often used by those individuals seeking pain medication for other than a legitimate medical purpose, often leading to a rapid increase in these types of prescriptions.*

8. When a prescriber is contacted regarding a pain management prescription, is the interaction annotated in Intercom Plus or documented on the prescription hard copy?

*This is a best practice for anytime a prescriber is contacted, whether the contact is for a pain management prescription or not, and can be used to verify correspondence with the prescriber.*

**Out of State Prescriptions**

9. Has the pharmacist seen a lot of pain management prescriptions from prescribers who practice in a different state?

*Prescriptions that are written by out-of-state prescribers are often a sign of individuals seeking the medication for other than a legitimate medical purpose.*

10. Has the pharmacist seen a lot of patients with pain management prescriptions who reside in a different state?

*Prescriptions that are brought into the store from patients that are out-of-state are often a sign of individuals seeking the medication for other than a legitimate medical purpose.*

HIGHLY CONFIDENTIAL

WAGMDL00742663

**LPxRx**

11. Does oxycodone 15mg (WIC 422719) or oxycodone 30 mg (WIC 427079) appear on the LPxRx report?
*Immediate release oxycodone has become the number one drug of choice by those individuals seeking pain medication for other than a legitimate medical purpose; the reason for checking the LPxRx report is to ensure there is no internal malfeasance occurring.*

12. Please enter the total 52 week adjustments and overbuys for oxycodone 15mg and oxycodone 30mg.
*Reviewing and comparing negative adjustments to overbuys can potentially rule out, or indicate, internal theft.*

**General Observations**

13. Has the pharmacy staff observed any individuals dropping off pain management prescriptions for multiple patients?
*An individual dropping off pain prescriptions for multiple patients is often a sign of those individuals seeking the medication for other than a legitimate medical purpose.*

**Prescription Drug Monitoring Program**

14. Does the state have a prescription drug monitoring program?
*This is a general information question that will be used to identify and compare stores when reviewing and analyzing the data.*

15. Does the pharmacist(s) on duty have access to the state's prescription drug monitoring program website?
*This question will offer a better understanding of whether the staff is using the program.*

16. When does the pharmacist use the state prescription drug monitoring program?
*This question will offer a better understanding of how the staff is using the program.*

17. If the prescription is checked against the PDMP and filled, the use of the PDMP . . .
*When the monitoring program is reviewed and the decision is subsequently made to fill the prescription, this action should then be documented to verify the use of the program; comparing the various ways this documentation is completed (i.e., annotated in Intercom Plus, noted on the hard copy of the prescription, printed and attached to the hard copy of the prescription, or any other method of documentation) will be used for future best practices for all stores.*

**ID Checks**

18. Does the pharmacy staff check photo IDs for controlled substance prescriptions?
*Many states are now requiring photo identification for individuals requesting controlled substance prescriptions to be filled; additionally, stores in states that do not have this requirement may also be asking for photo identification; this question will be used to identify and compare stores when reviewing and analyzing the data.*

WAGMDL00742664

19. When does the pharmacy staff check photo IDs for controlled substance prescriptions?

*This question will be used to identify and compare stores when reviewing and analyzing the data to determine when in the filling process (i.e., at prescription drop off, pickup or both) photo identification is checked and will be used for future best practices for all stores.*

20. Does the pharmacy staff document ID information when ID is checked?

*When photo identification is checked, this action should then be documented for verification purposes; answers will be used for future best practices for all stores.*

21. How is photo ID information for controlled substance prescriptions documented?

*The various methods stores are using to document when photo identification is checked will be used for future best practices for all stores.*

**DEA Notifications**

22. Is the DEA notified (sent a faxed copy) within 2 business days of any forged or altered controlled substance prescriptions?

*This action is one of the requirements of the Good Faith Dispensing Policy; this question will be used to better understand the basic knowledge of the good faith dispensing at store level.*

23. Is the DEA notified (sent a faxed copy) within 2 business days of any controlled substance prescriptions the pharmacist(s) refused to fill?

*The "forged and altered" reference to prescriptions noted in Question #20 has long been a standard of practice in the industry and profession; in addition to this standard, Question #21 takes this action a step further by the DEA requirement that "Walgreens shall implement a system to notify the local DEA office within two business days of a refusal to fill a prescription for controlled substances where such refusal is based on the Walgreens pharmacist's determination that the prescription was forged, altered, and/or issued for other than a legitimate medical purpose by a practitioner acting outside the usual course of professional practice"; this question will be used to better understand the basic knowledge of this DEA requirement at store level.*

24. Although not required, does the pharmacy staff keep a copy of the prescriptions that are refused?

*This question is similar to the ones above where information regarding documentation is being asked; this action is a variable of documentation for verification purposes; answers will be used for future best practices for all stores.*

25. What is the average number of controlled substance prescriptions per day that are refused?

*This information will be used to identify and compare stores when reviewing and analyzing the data.*

**Workplace Safety**

26. Does the pharmacy staff believe that refusing a controlled substance prescription could create safety concerns?

*Employee and patient safety is always our number one concern; awareness of these concerns is a priority*

**Additional Comments**

27. Please note any additional comments.

*Self-explanatory*

WAGMDL00742665

## Controlled Substance Prescriptions & Good Faith Dispensing Policy

The pharmacist **must** use the elements of Good Faith Dispensing in conjunction with state and federal controlled substance laws when filling **all** prescriptions.

Controlled substances may only be dispensed to patients who have a prescription for a valid medical purpose issued by a practitioner acting in the usual course of professional practice. A **corresponding responsibility** rests with the pharmacist to ensure that controlled substance prescriptions are issued for a legitimate medical purpose by an individual practitioner in the usual course of professional practice.

Any pharmacist who fails to meet his/her "corresponding responsibility" obligation when dispensing a prescription for a controlled substance, or does not follow the validation procedures outlined below, is subject to disciplinary action up to and including termination of employment.

## Prescription Validation Procedures for Good Faith Dispensing of Controlled Substances

Follow these procedures to validate a controlled substance prescription:

1. ***Patient ID***: Ask for government issued identification.  If the pharmacist does not have an established relationship with the patient, verify and document the patient's identity including name and address on the prescription hard copy or scan the ID into Intercom Plus as an "additional image". If your state has more stringent identification requirements, follow those guidelines.

2. ***Prescriber***: Confirm that the prescriber has authority to prescribe controlled substances by verifying the validity of the prescriber's information including the DEA number and state license number.

3. ***Prescription Drug Monitoring Program (PDMP)***: If available in your state, use the PDMP to obtain additional information to help determine the validity and confirm the appropriateness of the prescription. (See link to state specific websites under Additional Resources section below.)

4. ***Data/DUR Review***: Review the patient's profile to resolve and document any associated DURs appropriately.

5. ***Evaluate the Elements of Good Faith Dispensing:*** Contact the prescriber for verification or to clarify the elements of good faith dispensing for the prescription. If the prescriber cannot be reached, do not dispense the prescription.   Even if the prescriber verifies that the prescription is valid, it is the pharmacist's responsibility to confirm that the elements of good faith dispensing are satisfied prior to dispensing.

   The following are examples that should alert a pharmacist to questionable circumstances. This list is not intended to be all inclusive. A 'yes' answer to any of the questions below does not necessarily equate to a refusal to fill. A 'yes' answer means that the pharmacist has a responsibility to follow up with

WAGMDL00742666

either the patient and/or prescriber for additional information to satisfy the good faith requirements. Pharmacists shall use their professional judgment when determining if the elements of good faith are present prior to dispensing controlled substance prescriptions.

### Usual Course of Professional Practice:

- Is the controlled substance prescription written outside the usual course of the prescriber's professional practice or specialization, also known as their scope of practice? For example: a pediatrician prescribing pain medications for an adult, or a pain clinic doctor prescribing the same medication regimen for all of his patients.
- Are there unusual geographical distances between the patient, pharmacist and/or prescriber that cannot be reasonably explained?
- Is there a lack of a consistent prescriber/patient relationship?
- Does the prescription appear to be issued pursuant to an online diagnosis questionnaire? For example, does the prescriber only list a website on the prescription which indicates that he/she has no physical office address where patients can be examined?

### Trends for Prescribers and Patients:

Is there a noticeable trend in controlled substance prescribing by one prescriber or for a large number of patients such as:

- Unusual dosages, directions, or quantities beyond those normally prescribed?
- Dosages or directions that conflict with approved labeling?
- Frequent combination prescriptions for known drug "cocktails" such as a benzodiazepine, opioid and carisoprodol?
- Increased frequency of prescriptions for the same or similar controlled substances?

### Prescribers:

Is the prescriber:
- Unwilling to provide the reason for prescribing the controlled substance in order for the pharmacist to confirm that it is for a legitimate medical purpose?
- Unwilling to partner with the pharmacist and provide necessary documentation such as diagnosis, previous therapies, expected length of therapy, etc?
- Always difficult to reach and/or only willing to communicate through office staff?
- Abusive or threatening?

Does the prescriber:
- Consistently write prescriptions for controlled substances for the same patient or for several different patients?

HIGHLY CONFIDENTIAL

- Frequently authorize early refills without explanation or documentation?

Does the prescriber's practice:
- Operate as a "cash only" business and not accept government or 3rd party insurance payment?
- Have a different phone number on the prescription than found using the "prescriber inquiry" function in Intercom Plus?

### Patients:

Does the patient:
- Consistently request early refills?
- Exhibit 'drug seeking' type behaviors?
- Selectively fill only controlled substance prescriptions?
- Request to pay by cash or by using a cash discount card (in a possible attempt to circumvent third party billing restrictions)?
- Have controlled substance prescriptions from several different prescribers?

- Is the patient unable to provide a valid reason for taking the controlled substance (i.e. a valid diagnosis or legitimate medical purpose)?
- Is the patient or patient's agent unable to present a valid ID?
- Do multiple patients drop off prescriptions around the same time for the same medication from the same prescriber?
- Is the individual picking up controlled substance prescriptions on behalf of multiple patients? Do these individuals reside at different addresses or have no apparent relationship to each other?

### Prescriptions:

Does the prescription:
- Appear to be altered or forged?
- Contain misspellings?
- Contain atypical abbreviations or none at all?
- Have an unusual presentation – prescriber's handwriting is too legible, is written in different color inks, different handwriting, or with erasure marks?

6. **Document**: It is imperative that pharmacists document all efforts used to validate good faith dispensing.
   - Prescriber information: If the prescriber confirms the validity of the prescription, document the date, name of the individual spoken to and any other pertinent information such as diagnosis, previous therapy, length of treatment, etc. on the prescription hard copy and/or annotate the image.
   - Patient information: If the patient provides an ID or other pertinent information such as medical history, health conditions, allergies, previous therapy, etc., scan any images into Intercom Plus as an "additional image", annotate the image, and/or document the information on the

HIGHLY CONFIDENTIAL

prescription hard copy. Update the information in the patient profile or in comments as appropriate.

- Elements of Good Faith: Document any information pertaining to the elements of good faith on the prescription hard copy and/or annotate the image.

7. ***Pharmacist Action***: After reviewing the elements of good faith and following the validation procedures, the pharmacist must use his or her professional judgment to determine how to proceed:

- ***Dispense***: If the prescription is valid <u>and</u> meets the elements of Good Faith, process and dispense the prescription as usual.

- ***Not Valid to Dispense***: If the prescriber indicates that the prescription is not valid, document the prescription with the following: "Rx not valid per prescriber" and do not dispense.

- ***Refusal to Dispense***: If the prescriber informs the pharmacist that a prescription for a controlled substance is valid, but the pharmacist determines that the elements of good faith dispensing are not present, the pharmacist has a responsibility to refuse to dispense.

| NOTES: |
|---|
| • **If you are unable to satisfy the elements of good faith, inform the patient that you are unable to fill the prescription. Do not provide inaccurate information to the patient such as misrepresenting that you are out of stock or stating that the prescriber is under investigation. Any prescription for which the pharmacist is not satisfied that the elements of good faith are met can be refused based on the pharmacist's discretion.** |
| • **Dispensing a prescription that the pharmacist knows is fraudulent is a violation of state and federal law. If asked by law enforcement to dispense a fraudulent prescription, do NOT dispense and inform law enforcement that this is a violation of state and federal law. Knowingly dispensing a prescription with anything other than what is written on the prescription (i.e., candy, OTC medication, etc.) is a violation of company policy. Violation of state and federal law and/or company policy will result in disciplinary action, up to and including termination of employment.** |

8. ***Notify DEA***: The <u>local DEA office</u> must be notified of refusals to fill if such refusal is based on a determination that the prescription was forged, altered, issued outside of the usual course of professional practice, or does not meet the elements of good faith. If a pharmacist refuses to dispense a controlled substance, a copy of the prescription must be faxed to the local DEA office within **two business days** of a pharmacist's refusal to fill.

- Click here for the <u>DEA Fax template</u>.

HIGHLY CONFIDENTIAL

- Print a photo copy or image of the prescription and place in a California folder marked fraudulent/denied prescriptions. File with the other hard copy prescription records for future reference along with any additional documentation.
- Contact local law enforcement if required by your state. A copy of the prescription may be given to local law enforcement upon verbal request.

## Roles and Responsibilities

Everyone in the pharmacy has a role in ensuring that the elements of Good Faith Dispensing are met.  While all pharmacists and technicians have an obligation to assist with validation of Good Faith Dispensing requirements during the dispensing process, the **Product Review/RFP (Retail Fill Process) Pharmacist** has the ***ultimate responsibility*** for ensuring that the elements of Good Faith are present.

During the Product Review/RFP process, the pharmacist is attesting not only that the product is correct but also that Good Faith Dispensing guidelines have been validated and documented appropriately. The goal is that all elements of Good Faith Dispensing have been validated before getting to the Product Review/RFP Pharmacist. The Product Review/RFP Pharmacist should then be able to confirm the elements of Good Faith Dispensing have been met and continue with the dispensing process.

**Summary of Good Faith Dispensing (GFD) Procedures – by Role and Responsibility:**



*Use PDMP –if available in your state

**Notify DEA –if forged, altered, or refusing to fill based on good faith requirements

HIGHLY CONFIDENTIAL

***Assign CAP/Patient Chart Consult –if patient consultation is deemed appropriate

Note: In POWER stores, only a pharmacist should perform the RFP process for CII controlled substances. Technicians should not perform RFP on CIIs and must pass to a pharmacist to complete the RFP process.

## Office-Use Prescriptions

Prescriptions must be issued for a specific patient. Prescriptions written for "office use" are not valid.

## Emergency Schedule II Dispensing

Notify your district pharmacy supervisor if a prescriber fails to provide a hard copy for an emergency Schedule II telephone prescription within the legally required time period. The pharmacy supervisor will evaluate the situation and then contact the appropriate regulatory agencies, if necessary.

## Additional Resources:

1. DEA Diversion Website
   - Pharmacist Guide to Preventing Fraud
   - Pharmacist Responsibility to recognizing drug abuse
2. DEA Fax template Link
3. State Specific Identification Procedures
4. Prescription Drug Monitoring Program (PDMP) Websites (state specific)

Revised 6/07/2012
Revised 11/08/2011
Revised 7/17/2011
Revised 6/20/2011
Revised 3/28/2007
Revised 2/7/2007

HIGHLY CONFIDENTIAL