**From:** Brad Nelson
**To:** Shelley Tustison
**Sent:** 8/7/2013 1:01:41 PM
**Subject:** FW: CO. Board heads up
**Attachments:** Board Policy 40-11 (Proposed).pdf

FYI

---

**From:** Scott Ortolani - scortol
**Sent:** Wednesday, August 07, 2013 7:54 AM
**To:** Brad Nelson; Debbie Mack
**Cc:** Donald White - dswhite
**Subject:** CO. Board heads up

Good morning,

I spent part of yesterday with an inspector and he wanted to give me a heads up that the inspectors collectively feel Walmart is
Starting to become a "funnel" with C-II's due to more liberal policies on dispensing pain meds. I.e. King Soopers . Walgreens, Safeway and Target all have algorithms



Board Policy 40-11 (Proposed).pdf
that determines whether or not they dispense a c-II.

Walgreens and Kings are required to check PMP on all oxy's and hydromorphone med. Target is restricting the quantity each month they can order.

I've attached a policy that is in process for minimum of requirements that the board will present to the members next meeting.

I know Brad you're mindful of this but wanted to let you know what the rumors are from the board.

Thanks for your support.

**C. Scott Ortolani RPh**

**Market H/W Director**
**Market 527 Reg 47**
**Cell 479-586-8448**
**Office 303-231-9865**
**Fax 866-974-9048**

scortol@wal-mart.com

*Its my Pleasure*

Save Money , **Live Better**

PLAINTIFFS TRIAL EXHIBIT
P-20829_00001

HIGHLY CONFIDENTIAL

WMT_MDL_000649191
P-20829    00001

# Colorado State Board of Pharmacy Policy

| | |
|---|---|
| **POLICY NUMBER:** | 40-11 |
| **Title:** | Dispensing Controlled Substances |
| **Date Issued:** | **DRAFT VERSION** |
| **Date(s) Revised:** | |
| **Reference:** | Board Rules 3.00.20, 3.00.21, 3.00.50(a) and (c), and CRS 12-42.5-123 |
| **Purpose:** | To clarify the Board's position on controlled substance dispensing in pharmacies in an effort to reduce the misuse and abuse of controlled substances in Colorado |

**POLICY:** The Board recognizes that the abuse of prescription drugs is a serious social and health problem in the United States. Colorado is no exception to this problem. Yearly deaths in Colorado due to drug-related poisoning more than doubled from 351 in 2000, to 838 in 2011. Deaths involving the use of opioid analgesics, such as oxycodone and hydrocodone, nearly quadrupled from 87 in 2000, to 304 in 2011. According to Colorado's Prescription Drug Monitoring Program ("PDMP"), oxycodone prescriptions for Denver residents increased 53.1% from the 3rd quarter of 2007 through the end of 2011. During that same time, the rate of hydrocodone prescriptions increased 10.6%.

As the access and availability of these habit-forming drugs grows, so too does the likelihood of misuse, and moreover, the costly outcomes related to misuse and abuse. Colorado was ranked the 2nd highest state in the country for prescription drug abuse according to the 2011 National Survey on Drug Use and Health.

As healthcare professionals, pharmacists play a very critical role in helping Colorado solve the prescription drug misuse and abuse problem in the state. This policy is intended to help dispensers reduce the inappropriate use of controlled substances while preserving the vital role of the pharmacy to treat patients with medical conditions.

1. **Check the PDMP before dispensing controlled substances, and specifically in the following circumstances:**

    a) Any prescription for oxycodone 15 mg or 30 mg;

    b) All schedule II or III controlled substances for:

    - Every new or unknown patient;

    - All weekend and late day prescriptions;

    - Prescription orders written far from the location of the pharmacy or the patient's residential address; and

    - Any time suspicious behavior is observed (e.g., nervous, overly talkative, agitated, emotionally volatile, evasive, etc.); and

HIGHLY CONFIDENTIAL

c) Use clinical judgment in these situations:

- Any prescription order written for a controlled substance in high doses or high quantities; and
- Any prescription order considered an outlier to what is normally prescribed (use clinical judgment);

It is recommended that all pharmacists in the pharmacy, including part-time "floaters", receive education on the use of the PDMP. The following is the direct link to the PDMP: http://www.hidinc.com/copdmp.

2. **Use clinical judgment on the appropriateness of communicating with prescribing practitioners prior to dispensing a controlled substance, but should specifically do so in the following circumstances:**

    a) Pharmacist suspects a forged, altered or counterfeit prescription;

    b) Patient is repeatedly requesting early refills of controlled substances;

    c) Patient is specifically requesting early refills of opioids, benzodiazepines or carisoprodol;

    d) Patient presents with a high quantity from an emergency department;

    e) Any time suspicious behavior is observed (e.g., nervous, overly talkative, agitated, emotionally volatile, evasive, etc.);

    f) It is recommended that pharmacists establish and maintain contact with the emergency department director if they receive high traffic from emergency department patients; and

    g) It is recommended that pharmacists call the phone number for the prescribing practitioner listed in the pharmacy's computer system vs. the phone number on the prescription order to detect false numbers on forged prescriptions.

3. **Use clinical judgment on the appropriateness of communicating with other pharmacies prior to dispensing a controlled substance, but should specially contact other pharmacies in the following circumstances:**

    a) If you receive a prescription that has been denied by another pharmacist;

    b) If you deny a prescription, it is recommended that you call/fax all known pharmacies within a 5 mile radius to alert them; and

    c) It is important to note that cross-communication between pharmacies regarding a patient's health and treatment is NOT a violation of the Health Insurance Portability and Accountability Act (HIPAA).

4. **Pharmacists may wish to consider requiring a government issued identification for all new and unknown patients before dispensing any controlled substance.**

HIGHLY CONFIDENTIAL

WMT_MDL_000649193
P-20829   00003

5. **Pharmacists should not dispense a prescription if they believe it is forged, altered, or counterfeited:**

    a) Call the prescriber to verify first – use the phone number for the provider in the pharmacy's computer system vs. on the prescription order;

    b) Be familiar with the types of fraudulent prescriptions and characteristics of forged prescriptions;

    c) If a pharmacist denies a prescription, it is recommended that the pharmacist notify other local pharmacies within a 5 mile radius;

    d) If you believe you have discovered a pattern of prescription abuse, contact your local Drug Enforcement Agency ("DEA") office and your local sheriff's or police department (reporting can be anonymous);

    e) Be familiar with the law and your legal and ethical responsibilities:

    - It is unlawful to knowingly dispense controlled substances for anything other than a "legitimate medical purpose";

    - There is no legal obligation to dispense a prescription, especially one of doubtful, questionable, or suspicious origin; and

    - To do so with a chemically dependent patient may violate federal or state provisions on maintenance of addiction, and you could be liable if the patient later injures oneself or others;

    f) Under these circumstances, it is safer to politely refuse to dispense the prescription and to refer the patient to his/her attending physician for further management. Document any such encounters in their patient files;

    g) If possible, retain the prescription order, however, even a fraudulent prescription order is regarded as private property and should be returned promptly to the individual; and

    h) While there is no legal requirement to contact the police regard a suspected drug seeker, some drug seekers may resort to verbal abuse or acts of violence and therefore, it is advisable that you do so.

6. **Pharmacists may wish to consider educating their patients about proper storage and disposal during the patient consultation prior to dispensing controlled substances:**

    a) This is especially true if there are youth in the home (a 2011 Youth Risk Behavior Survey conducted in Colorado revealed that 29.2% of 12th graders had taken a prescription medication without a doctor's prescription at least once in their lifetime);

    b) Storage tips should include never leaving any controlled substance out "in the open" in locations such as kitchen counters, unlocked medicine cabinets, or even purses or handbags;

    c) Disposal tips should include never flushing prescriptions down a toilet or throwing them in the trash;

    d) Disposal tips should also include information on take-back events and permanent drop box locations;

HIGHLY CONFIDENTIAL

e) If take-back events or drop boxes are unavailable, instruct your patients to use the DEA disposal guidelines and tips from the Federal Food and Drug Administration ("FDA"):

- Take the drugs out of their original containers and mix them with an undesirable substance, such as used coffee grounds or kitty litter; then put them in a sealable bag, empty can, or other container to prevent the medication from leaking out of a garbage bag;

- Before throwing out a medicine container, tell the patient to scratch out all identifying information on the prescription label to protect their identity and personal health information; and

- Tell your patients to not share medication with friends, family or others and remind them that doing so could pose a serious health risk to someone.



HIGHLY CONFIDENTIAL

WMT_MDL_000649195
P-20829   00005