UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | MDL No. 2804 |
| | ) | Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) ) | |
| *Track Three Cases* | ) | Judge Dan A. Polster |

### DEFENDANTS HBC SERVICE COMPANY AND GIANT EAGLE, INC.'S MOTION FOR A MISTRIAL

In complete disregard for this Court's explicit, repeated order, a juror ("Juror Number Four") took it upon herself to conduct an investigation into the testimony of a defense witness and copy and report the findings to *every single member of the jury*. The Court noted that "in 22-some years," it has "never had a juror . . . do anything like this."[1] Tr. 3725:13-16. The jury then sat with that information for more than a full day before the misconduct was discovered. The information shared with the jury went to a core issue in the case, which plaintiffs have emphasized throughout the entire trial—whether the defendants were driven by a profit motive to oversupply opioids in Lake and Trumbull Counties. While Juror Number Four has been dismissed from the jury, thirteen other jurors that received the same information remain on the jury, their minds tainted in favor of plaintiffs by the improper extrinsic evidence they received from Juror Number Four. As plaintiffs' counsel acknowledged in a moment of candor, the evidence provided by Juror Number Four "affects everybody whether they recognize it or not," and accordingly a "mistrial is appropriate." Tr. 3769:11-15. Giant Eagle agrees; the jury is now

---

[1] Transcript citations refer to the Track Three trial transcript for *In re National Prescription Opiate Litigation*.

1

incurably tainted and it would be unduly prejudicial to defendants to continue with this trial. Giant Eagle therefore respectfully requests that this Court order a mistrial.

## I.    BACKGROUND

During the lunch recess on October 22, 2021, the Court was informed that, the morning prior, Juror Number Four brought in copies of her research regarding the availability of free Narcan, an opioid overdose treatment, through a program called Project Dawn and shared it with the other thirteen jurors.[2]  Tr. 3715:4-10.  During questioning by the Court, the juror admitted that her actions were in *direct* response to testimony from a witness employed by Walgreens regarding customers having to pay for Narcan unless it is covered by insurance.  Tr. 3718:20-23. The juror stated that, given the defense witness' testimony, "I felt very strongly that I didn't want anyone to think that they had to pay for Narcan."  Tr. 3718:20-25.  In addition to printing out copies of the information for every single member of the jury, the juror also "told the jury I want everyone to be very clear about this, that you can get Narcan for free."  Tr. 3719:2-4.   When questioned as to her motive for explicitly violating the Court's order, the juror stated that "[t]o me, this feels bigger than this case.  We're talking about people's lives.  And I didn't want people to think they had to pay for a Narcan kit."  Tr. 3720:5-8.

After the Court questioned the juror, plaintiffs' counsel acknowledged that this could be "something in my favor because Walgreens is charging for something that's commercially available for free" and "I don't see how it could be against me, candidly."  Tr. 3723:7-12. Plaintiffs' counsel also expressed concern with "continuing a case where we know that the jury has been discussing something *that is an issue in the case*."  Tr. 3723:13-15 (emphasis added). Giant Eagle agreed that the jury had been incurably tainted and immediately moved for a

---

[2] *See* Exhibit 1 (Juror Number Four extrinsic research).

2

mistrial.  Tr. 3765:16-19.  Plaintiffs' counsel then acknowledged—citing his ethical obligation to the court—that the information shared by the juror "affects everybody [on the jury] whether they recognize it or not, and I think that the mistrial is appropriate."  Tr. 3769:12-15; 3770:1-3.

The Court instructed the parties to consider the prospect of a mistrial further over the weekend in consultation with their clients.  Tr. 3773:22-23.  Plaintiffs subsequently reversed their position, this time citing not their candid belief as to the impact the information had on the jury, but instead the potential waste of resources that would result from a mistrial.[3]

## II. ARGUMENT

### A. The Jury is Incurably Tainted by Extraneous Information Related to a Core Allegation in the Case.

The information that Juror Number Four shared with every single member of the jury goes directly to a question that plaintiffs put squarely at issue during opening statements and have reiterated throughout the entire trial—whether the defendants were motivated by profits to oversupply opioids in Lake and Trumbull Counties.  *See, e.g.*, Tr. at 2447:1-3 (("Sir, in objecting to this change in the regulation on behalf of Walgreens, you were putting profits over safety, weren't you?") (plaintiffs' cross-examination of Brian Joyce));  [4]  This taint is incurable—while the offending juror

---

[3] *See* Exhibit 2 (Oct. 23, 2021 email from M. Lanier to Special Master Cohen).

[4] *See also* Tr. 617:16-18 (("I'm a lawyer.  I own my law firm.  We exist to make a profit, but that doesn't mean we're not still supposed to be socially responsible.  And the same is true with business.  There are right ways to make a profit and there are ways that aren't right to make a profit.") (plaintiffs' opening statement)); *id*. at 1122:15-18 (("But to put profit ahead of patient care is not a good incentive, and that's what creates problems and impacts the pharmacist's ability to perform the things they need to perform.") (Dr. Catizone direct examination by plaintiffs)); *id*. at 2442:22-25 (("I mean, you understand the job of doing this work, being the senior manager of Controlled Substances, it means more than just making sure that Walmart's profitable, doesn't it?") (plaintiffs' cross-examination of Brad Nelson)); *id*. at 2474:4-6 (("In other words, Walmart wasn't just giving these out as a pro bono.  This was something that Walmart was making a profit off of.  They were selling it, right?") (plaintiffs' cross-examination of Brad Nelson)); *id*. at 2549:14-15 (("Those questions, sir, I'm suggesting it's a profit motive by Walmart.  Do you agree or disagree?") (plaintiffs' cross-examination of Brad Nelson)); *id*. at 2870:20-23 (("Okay. So do you have any memory whatsoever of checking on such things as how the stores are going to go about trying to be more profitable in light of the controlled substance business?") (plaintiffs' cross-examination of Tasha Polster)); *id*. at 2965:7-12 (("This is due to a conflict of interest by placing a store manager, trained to safeguard profit, in a

has been removed, thirteen jurors that were exposed to the information provided by Juror Number Four remain on the jury. The Sixth Circuit has recognized that such a taint "can rarely be viewed as harmless" and requires a new trial "unless devoid of any proven influence or the probability of such influence upon the jury's deliberation or verdict." *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 215 (6th Cir. 1982). Where influence on a single juror may be enough to necessitate a new trial, the impact of the juror is particularly grievous where, as here, "a unanimous verdict [is] required and the juror communicated his findings to other jurors." *Id*.

Here, the significance of the issue is clearly not lost on the jurors, who themselves asked a juror question related to whether Walgreens charges for Narcan.[5] The information that Juror Number Four provided to the rest of the jury regarding free Narcan was clearly meant to impeach the defense witness who answered the question and testified that Walgreens charges for Narcan unless it is covered by insurance. Tr. 3292:25-3293:2. The research Juror Number Four provided other members of the jury also referenced a program called "Project Dawn," which plaintiffs' counsel referenced in his direct examination of Captain Villanueva earlier in the week. Tr. 2754:14-16. The information provided by Juror Number Four thus serves to build up the credibility of a witness for plaintiffs (as well as to improperly augment the information available to jurors through witness testimony regarding Project Dawn), while at the same time undermining the credibility of a witness for the defense.

The intentional exposure of extrinsic evidence by a juror to other members of the jury is no technicality. As Justice Ginsburg put it, "[t]he theory of our [trial] system is that the

---

position of authority over a pharmacist who is trained to safeguard the health of patients.") (plaintiffs' cross examination of Tasha Polster)).

[5] Tr. 3292: 22-23 ("Was naloxone offered to patients for free when getting 50 MMEs? If not, how much did it cost?").

4

conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print*.*" *Skilling v. United States*, 561 U.S. 358, 378 (2010) (citing *Patterson v. Colorado ex rel. Attorney General of Colo.*, 205 U.S. 454, 462 (1907)). That fundamental principle has been squarely violated here.

### B. Giant Eagle Will be Unfairly Prejudiced by Proceeding to Verdict with the Now-Tainted Jury.

Where, as here, improper extrinsic evidence has been received by the jury, there is a presumption of unfair prejudice. *See Stiles v. Lawrie*, 211 F.2d 188, 190 (6th Cir. 1954) ("When improper evidence, that may have prejudiced the case, has been received by the jury, the law will so presume."); *see also United States v. Perkins*, 748 F.2d 1519, 1533 (11th Cir.1984) ("Prejudice from extrinsic evidence is assumed in the form of a rebuttable presumption") (citations omitted); *United States v. Hillard*, 701 F.2d 1052, 1064 (2d Cir.) ("[E]xtra-record information that comes to the attention of a juror is 'presumptively prejudicial.'") (citations omitted); *see also United States v. Howard*, 506 F.2d 865, 869 (5th Cir.1975) (when jurors are exposed to extrinsic matters, "prejudice will be assumed in the form of a rebuttable presumption") (citations omitted). The prejudicial effect of external evidence received by the entire jury is "purely a matter of fact and not within the province of the court to determine, for the law has no criterion by which to know or ascertain the effect which the improper evidence may produce upon the verdict." *Stiles*, 211 F.2d at 190.

Plaintiffs have done nothing to rebut this presumption. In fact, plaintiffs' counsel has done the opposite—acknowledging that the information provided by Juror Number Four "affects everybody" on the jury, and admitting he did not "see how it could be against [plaintiffs], candidly." Tr. 3769:12-15; 3723:7-12.

5

Plaintiffs have cited the resources that would be wasted if the court grants a mistrial at this point, but the resources expended by the parties have no place in this Court's inquiry. The only question is whether the undeniable taint of the jury will unfairly prejudice defendants if the trial is allowed to go forward. *See In re Beverly Hills Fire Litig.*, 695 at 207 (noting that where extraneous influences are brought to bear upon the jury, the proper inquiry is whether those influences were prejudicial "to assure that the parties receive a fair trial and the integrity of the system itself is maintained") (internal citations omitted). It is clear that it will, given that Juror Number Four: (1) communicated substantive information relevant to the case that the jurors should not have had because it was not presented in the courtroom; (2) attempted to impeach a defense witness; (3) bolstered the credibility of a witness for plaintiffs; and (4) offered support for plaintiffs' overarching trial theme that defendants put profits ahead of safety in Lake and Trumbull Counties. All four acts are unduly prejudicial to defendants, who will not even have a chance to present their own case to the jury for several more days. During that time, the jurors will be sitting with knowledge and opinions regarding the defendants that they otherwise would not have had if Juror Number Four had not provided them with the improper extrinsic evidence.[6]

Further, plaintiffs' counsel's new-found concern for the resources that would be wasted ignores that far more resources will be wasted if this trial proceeds with a tainted jury. The trial is still in its early stages in the *liability stage*—plaintiffs are still presenting their case and still intend to call nine additional witnesses before they rest. Once plaintiffs rest, there will still likely

---

[6] Earlier this year, a federal district court held a juror in criminal contempt for conducting outside research while serving on a federal criminal jury and sharing his findings with the other jurors, resulting in a mistrial. *See Juror Fined $11,000 for Conducting Outside Research During Criminal Trial and Causing Mistrial*, U.S. Department of Justice, https://www.justice.gov/usao-nj/pr/juror-fined-11000-conducting-outside-research-during-criminal-trial-and-causing-mistrial.

6

be at least several weeks of the four defendants presenting a defense as to *liability*. If there is a finding of liability, there is then an entirely separate stage of these proceedings to determine the remedy, which means it could be a year or more before either party ever has the chance to appeal the liability finding. If the Court refuses to grant a mistrial now, the jury-taint issue will be central to an appeal and stands to waste thousands of hours of party and judicial resources that have not yet been expended.

### C. Plaintiffs' Candor Regarding the Taint of the Jury Should not be Disregarded to Allow for a Tactical About-Face.

In a poignant moment of candor, plaintiffs' counsel—citing his ethical obligations to this Court—conceded that there was no conceivable way that the jury taint could not favor plaintiffs, and agreed that a mistrial was appropriate.[7] The Court should credit the immediate and evident nature of the taint as acknowledged on the record by parties on both sides.

Unsurprisingly, given additional time to consider the magnitude of the taint in his favor, plaintiffs' counsel has now requested to move forward with the trial. This Court should not allow the tactical interests of the Plaintiffs' Executive Committee to override the immediate, apparent, and incurable taint that plaintiffs' counsel—at least previously—felt he owed an ethical duty to the Court to acknowledge. Giant Eagle has not identified a single cases where (1) a juror deliberately exposed every single member of a jury to outside research regarding witness testimony and plaintiffs' core allegations; (2) parties on both sides agreed immediately that there should be a mistrial; and (3) the district court nevertheless allowed the trial to proceed once plaintiffs' counsel reversed his position after he realized that his candid belief toward the obvious

---

[7] *See* Tr. 3769:12-15; 3770:1-3, 3723:7-12.

taint of the jury weighed heavily in his favor.  Allowing this trial to proceed under these circumstances would be entirely unprecedented and improper.

### III.     CONCLUSION

For all of the reasons stated above, Giant Eagle respectfully requests that this Court, in light of the incurable taint of the jury in plaintiffs' favor, order a mistrial.

Dated: October 24, 2021                                  Respectfully submitted,

*/s/ Robert M. Barnes*
Robert M. Barnes
*rbarnes@marcus-shapira.com*
Scott D. Livingston
*livingston@marcus-shapira.com*
Joshua A. Kobrin
*kobrin@marcus-shapira.com*
Daniel J. Stuart
*Stuart@marcus-shapira.com*

MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA  15219
Telephone: (412) 471-3490
Facsimile: (412) 391-8758

8

Diane P. Sullivan
**WEIL, GOTSHAL & MANGES LLP**
17 Hulfish Street, Suite 201
Princeton, NJ 08542
Telephone:  (609) 986-1100
diane.sullivan@weil.com
*Admitted pro hac vice*

Chantale Fiebig
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7200
E-mail: Chantale.Fiebig@Weil.com
*Admitted pro hac vice*


*Attorneys for Defendant Giant Eagle, Inc.*

## CERTIFICATE OF SERVICE

I certify that on October 24, 2021, the foregoing was served via e-mail to the following:

>Judge Dan A. Polster
>*Dan_Polster@ohnd.uscourts.gov*
>
>Special Master David R. Cohen
>*david@specialmaster.law*
>
>Counsel for Plaintiffs
>*mdl2804discovery@motleyrice.com*
>
>Counsel for CT3 Defendants
>*ext-track3defendants@groups.jonesday.com*

*/s/ Robert M. Barnes*