**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br>*This document relates to:*<br>**Track Three Cases** | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR MISTRIAL DUE TO JUROR MISCONDUCT (DKT. #4068) AND DEFENDANTS HBC SERVICE COMPANY AND GIANT EAGLE, INC.'S MOTION FOR MISTRIAL (DKT. #4067)

Defendants have moved for a mistrial based on the actions of one juror ("Juror 4") obtaining and providing certain outside information to her fellow jurors regarding Narcan (the brand name of naloxone), a medication used to treat opioid overdose, in direct violation of the Court's orders to avoid all external information. Upon discovery of the incident, the Court promptly dismissed Juror 4, questioned the remaining jurors, and determined that, in its opinion, no mistrial was warranted. Defendants' counsel maintained that a mistrial was appropriate, and Plaintiffs' counsel also initially expressed some concerns regarding the impact of Juror 4's conduct on the jury. The Court urged all parties to consult their clients over the weekend and "really think it through." Dkt. #4065 (10/22/21 Trial Tr.) at 3766:8-12, 3774:7. Having now done so, and having considered all the relevant facts and law, Plaintiffs are satisfied that Juror 4's conduct did not incurably prejudice any party, that the jury can remain impartial, and that the trial should proceed to conclusion. As the Court noted, whether Narcan is available for free "***has no bearing***" on the question of whether Defendants caused a public nuisance in Lake and Trumbull Counties. *Id*. at 3767:16-17 (emphasis added). The Court's initial inclination to deny Defendants' request for a mistrial was correct. *Id.* at 3766:8-9. Plaintiffs notified the Court of their position on October 23, 2021. Dkt. #4067-2 (10/23/21 Lanier Email to Court). The following day, Defendants filed their mistrial motions. Dkt. #4067-4068. For the reasons set forth below, Defendants' motions should be denied.

## BACKGROUND

On October 20th, a juror submitted a written question that was read to Walgreens' Divisional Vice President of Pharmacy Compliance and Patient Safety, Tasha Polster. The question read: "Was naloxone offered to patients for free when getting 50 MMEs? If not, how much did it cost?" Dkt. #4057 (10/20/21 Trial Tr.) at 3292:21-23. The question related to one of Walgreens' target good faith dispensing checklists that was discussed with Ms. Polster on cross-examination, which stated that "[f]or CDC recommendation, naloxone was offered to the patient in case of an emergency in these prescriptions." *Id*. at 3291:25-3292:10.

In response to the juror's question, Plaintiffs' counsel questioned Ms. Polster to demonstrate that Walgreens offered Narcan to patients for purchase, not for free. *Id.* at 3292:10-3293:15. Ms. Polster responded that patients can purchase Narcan from Walgreens or bill it to their insurance. *Id.* at 3292:19-3293:8. She added that:

> Walgreens has had on occasion worked with departments of health to help distribute Narcan to members in their community, so the departments of health would give their Narcan to a Walgreens pharmacy and ask them to distribute it to patients who are asking for it, ***and those would be free of charge***.

*Id.* (emphasis added). Plaintiffs' line of questioning on this topic lasted approximately two minutes. *Id*.at 3292:3-2393:9.[1]

The next morning, Juror 4 brought in one-page printouts from home about a community program called Project DAWN that provides Narcan to individuals for free. Dkt. #4067-1 (Juror Printout); Dkt. #4065 (10/22/21 Trial Tr.) at 3718:20-3719:12. She provided a copy of the printout to each juror in the jury room. Dkt. #4065 (10/22/21 Trial Tr.) at 3719:13-15. She also told the jurors present in the room that Narcan is free and available in Northeast Ohio through Project DAWN, but the topic was not discussed further. *Id.* at 3721:3-11.

Juror 4's actions were brought to the Court's attention the next day during the lunch recess. *Id.* at 3715:4-12. Upon receipt of this information, the Court questioned Juror 4 in the presence of

---

[1] In total, Ms. Polster's testimony spanned three days of trial.

counsel, and Juror 4 was dismissed from the jury upon agreement of all parties. *Id.* at 3722:5-3723:19. When questioned by the Court, Juror 4 stated that she had not provided any other outside information to the jury during the trial, nor had any other juror done so. *Id.* at 3724:8-24.

After Juror 4 was dismissed, the Court questioned each member of the jury individually in the presence of counsel. The Court asked each juror if they knew of the printout; what they knew about it; what was said about the printout; whether there had been any other instances of jurors bringing in outside information; and admonished the importance of obeying the Court's rule against conducting any outside research or discussing the case with anyone during the trial. Based on their responses, it is clear that the jurors had largely ignored Juror 4's extrinsic research. Specifically, each juror's response with regard to the printout was, in relevant part, as follows:[2]

- **Juror**: Stated she arrived late and the printout was on her notebook. She skimmed it, recalled something about free Narcan, and left it. *Id.* at 3727:14-3729:12.
- **Juror**: Stated she folded the printout and put it in her book without looking at it. She said that Juror 4 said she knew there were free programs available, but she didn't pay much attention to it herself. *Id.* at 3730:7-25.
- **Juror**: Stated: "The papers were set on the table for us to look at it if we wanted to, but I didn't feel like it was the right thing to do since we're not supposed to be researching anything in the case." *Id.* at 3733:20-23. She further stated that there were only a few jurors in the room when the printouts were provided, and "maybe one or two people picked it up, but no one really looked at it." *Id.* at 3734:8-19.
- **Juror**: Stated she did not take a printout, and that Juror 4 told them that Narcan was "available at no cost if needed, and we just started conversating about other things." *Id.* at 3737:5-10.
- **Juror**: Recalled there being a paper about "the availability of Narcan from different projects, but that was it." *Id.* at 3738:23-3739:1.
- **Juror**: Stated that Juror 4 came in and handed out the papers, but he never looked at the printout. *Id.* at 3741:18-21. He also stated that "[t]here was no real conversation about it after that." *Id.* He recalled Juror 4 told them "Narcan was available, that you didn't have to get it at the pharmacies, that it was available if you needed it for any reason." *Id.* at 3741:24-3742:2.
- **Juror**: Stated she did not take a printout, and explained that: "So juror came in with a stack of papers, was like, hey, I researched this about Narcan, and we're like, we're pretty sure you can't do that. And she's like, all right, well, I did. And we're like, okay. And pretty

---

[2] The jurors were not identified by number on the record, but the Court questioned every juror.

3

- much the stack of papers she was attempting to hand them out, but then we're like, ah, we don't want that, and she kind of -- she sat down." *Id.* at 3744:10-19.

- **Juror**: Stated she looked at the printout and put it down, and recalled seeing something about a program for Northeast Ohio to get free Narcan. *Id.* at 3737:25-3748:4. She recalled Juror 4 saying "it was important and for general information," and stated she did not talk with Juror 4 about it. *Id.* at 3747:19-21.

- **Juror**: Stated Juror 4 handed him a printout "and just said it was about Narcan, and that was about it." *Id.* at 3750:9-10. He said that he looked at it but did not read it, and he did not recall what it said. *Id.* at 3750:17-22.

- **Juror**: Stated: "So I got here a little later yesterday, so by the time I had come in the room, there was a paper in my juror book where I take notes. And I say, oh, is this from the Court? And she replied, no, I put that in there. And so I said, well, you can't do that, and she said, well, I was uncomfortable. And then that was it. I just left it on the table." *Id.* at 3753:12-24. She further stated that she saw the printout contained the word naloxone but that was all she saw. *Id.*

- **Juror**: Stated Juror 4 "had a piece of paper and laid it down and says there's a place where you can get free Narcan. That was it." *Id.* at 3756:4-11. He stated he did not take a printout or read it. *Id.*

- **Juror**: Stated the printout was in front of his notepad and he did not keep a copy. *Id.* at 3758:20-3759:2. He recalled Juror 4 saying "I thought this might be helpful or something along those lines. I don't exactly recall because in my mind I was already going to throw it out." *Id.* at 3759:5-8.

- **Juror**: Stated he did not look at the printout and he ignored Juror 4's explanation. *Id.* at 3761:10-16. He also stated that he was "taken aback to see it," and he told Juror 4 that they were not supposed to do that and walked out of the room. *Id.* at 3761:21-23, 3762:8-9.

Additionally, each juror confirmed during individual questioning that there had been no other instances of outside information coming in throughout the trial. Notably, the Court gave all parties the opportunity to question the jurors and/or suggest questions for the Court to ask. *Id.* at 3721:15-22, 3726:16-25, 3729:14-3730:4, 3733:1-4. Upon conclusion of the jury questioning, the Court stated:

> Okay. Well, I am satisfied that this was the only episode like this over the last three weeks. Fortunately, it appears to be on something that is really not relevant to anything the jurors have to decide. I mean, whether or not -- whether you have to pay for Narcan or whatever is very tangential. But I think I've impressed upon each of them that this is an absolute, absolute no-no. So I plan to go forward.

*Id.* at 3764:4-11. The Court also shared its belief that "the problem can be cured," and offered to give a further jury instruction regarding how Narcan is obtained and who pays for it, although it

4

recognized that "of all the very important things that have occurred in this trial for three weeks and will occur the next three weeks, I can't imagine that any juror is going to make his or her mind up over whether anyone charges for Narcan." *Id*. at 3772:18-22, 3733:19-21.  At this point in time, Defendants have not yet requested that any further curative instructions be given.

## ARGUMENT AND AUTHORITIES

### A. The trial court has broad discretion to deny a mistrial, even in cases of alleged jury misconduct.

"A trial judge's decision to declare a mistrial based on her assessment of juror bias is entitled to great deference." *Marshall v. Ohio*, 443 F. Supp.2d 911, 916 (N.D. Ohio 2006) (Polster, J.). "It is well established that 'the trial judge is in the best position to determine the nature of the alleged jury misconduct,' and the 'appropriate remedies for any demonstrated misconduct.'" *United States v. Gaitan-Acevedo*, 148 F.3d 577, 590-91 (6th Cir. 1998) (quoting *United States v. Copeland*, 51 F.3d 611, 613 (6th Cir. 1995)). *See also State v. Phillips*, 74 Ohio St.3d 72, 89, 656 N.E.2d 643 (1995) ("In cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror.").

A mistrial is only proper when a seriously prejudicial error occurs. *United States v. Moore*, 917 F.2d 215, 220 (6th Cir. 1990) (citing *United States v. Dinitz*, 424 U.S. 600, 609-10 (1976)). "Declaration of a mistrial is one of the most 'drastic' alternatives available to a trial court, a remedy of 'last resort.'" *Tamraz v. Lincoln Elec. Co.*, No. 1:04-CV-18948, 2007 WL 4287620, *4 (N.D. Ohio Dec. 4, 2007) (citations omitted).[3]  "Prior to declaring a mistrial, 'the Court should always consider whether the giving of a curative instruction or some less drastic alternative is

---

[3] *See also Hamm*, 706 F.2d at 767 (acknowledging general proposition "that trial courts should, whenever possible, pursue alternatives less drastic than declaration of a mistrial"); *United States v. Lundergan*, No. 5:18-CR-00106-GFVT, 2019 WL 4248971, at *1 (E.D. Ky. Sept. 6, 2019) ("The Court may declare a mistrial only where there is 'manifest necessity' for termination of the proceedings, or where 'the ends of public justice would otherwise be defeated.' Courts must exercise extreme caution in declaring a mistrial, doing so only 'under urgent circumstances, and for very plain and obvious cases.'") (internal citations omitted).

appropriate.'" *Lundergan*, 2019 WL 4248971, at *1 (citation omitted). If the prejudice to the defendant can be relieved by a curative instruction, "it is not an abuse of discretion to deny a motion for a mistrial." *Id.*[4] *See also United States v. Bennett*, 829 F.2d 39, 1987 WL 44755, at *3 (6th Cir. 1987) (where jury exposed to improper testimony at trial, a curative instruction is sufficient to cure prejudice in all but the most exceptional cases) (citing *United States v. Wells*, 432 F.2d 432, 433 (6th Cir. 1970)); *Cousins v. Bray*, No. 2:03-CV-1071, 2005 WL 8161508, *3 (S.D. Ohio Feb. 28, 2005) ("[P]rejudice can be cured by instructions from the court.").

In the face of juror misconduct, the Sixth Circuit has held that no abuse of discretion exists in denying a motion for mistrial where the district court investigated the merits of the charge and rendered the appropriate cautionary instructions. *See, e.g.*, *Gaitan-Acevedo*, 148 F.3d at 590-91 (upholding district court's decision to deny a motion for mistrial where the district court investigated the reported misconduct, examined the jurors, gave appropriate cautionary instructions, and dismissed the juror determined to be undermined); *Copeland*, 51 F.3d at 613-14. Further, "[t]he consideration of extrinsic evidence in the jury room is harmless error if 'the error did not influence the jury, or had but very slight effect. . . .'" *United States v. Farley*, No. 91-3858, 976 F.2d 734 (6th Cir. 1992) (unpublished) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1945)).

"[T]he single most important factor in [deciding a mistrial motion] is the extent to which the defendant has been prejudiced." *United States v. Richmond*, 884 F.2d 581 (6th Cir. 1989). As movants, Defendants must prove *actual* prejudice occurred here. *United States v. Wheaton*, 517 F.3d 350, 362 (6th Cir. 2008). A "serious suspicion" will not suffice, and prejudice may never be presumed by the Court. *United States v. Rugiero*, 20 F.3d 1387, 1390 (6th Cir. 1994) (recognizing

---

[4] There is a presumption that jurors follow the instructions they are given. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (recognizing "the almost invariable assumption of the law that jurors follow their instructions"); *Sparks v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, UAW, 99 F.3d 1140, 1996 WL 487252, *5 (6th Cir. 1996) (unpublished) ("[W]e presume that a jury will understand and adhere to curative instructions.").

when a juror is exposed to outside information regarding a case, "[w]e do not presume prejudice has occurred."). Once the Court determines that no prejudice has occurred—or that any potential prejudice is curable—its decision will be upheld absent a clear abuse of discretion. *Gaitan-Acevedo*, 148 F.3d at 613.

> **B.     The Court should deny Defendants' mistrial motions because the availability of Narcan is not at issue in this case and there is no evidence of incurable prejudice.**

Defendants cannot prove prejudice here for several reasons.  First, this is a public nuisance case in which the jury will be tasked with determining whether and to what extent Defendants' conduct was a substantial factor in creating a public nuisance in the Counties. As the Court has already recognized, "how you get Narcan or who pays for it" is not "ultimately relevant at all to what the jurors have to decide." Dkt. #4065 (10/22/21 Trial Tr.) at 3766:16-18. Because the information shared by Juror 4 is not directly related to any issue the jury will be tasked with deciding, there is no inherent threat of prejudice.

*United States v. Wheaton* is instructive on this point. There, a juror used his personal laptop computer to answer a question that came up during deliberations about the relative distance between three towns in Ohio, despite a clear admonishment from the court not to do any independent investigation related to the case. *Wheaton*, 517 F.3d at 359. After questioning the jurors to find out whether the incident had affected any person's decision-making and being satisfied that it had not, the court asked the jury to proceed with deliberations. *Id*. The Sixth Circuit affirmed, noting the tangential relationship between the issue the juror investigated and the questions on the actual charge and concluding there was "no reasonable likelihood" that the investigation conducted by the juror "could have tainted the jury's deliberations, given the issues framed by the charge." *Id*. at 361.

Second, there is no reason to believe that Juror 4's actions have impacted the impartiality of any other juror. In *Gaitan-Acevedo*, the Sixth Circuit refused to second-guess a trial court satisfied that the jury could remain impartial. 148 F.3d at 590-91. There, a juror was reported to

7

have made disparaging comments on the credibility of witnesses and guilt of defendants to other jurors. *Id*. The court conducted a voir dire of the jurors, discharged the one who made disparaging comments, and gave the remaining jurors a series of cautionary instructions. *Id*. The Sixth Circuit found no abuse of discretion in continuing the trial, recognizing that "[a]bsent additional evidence, whether concrete or circumstantial, and assuming the district court was in the best position to assess the significance of the jurors' comments, we cannot accept the defendants' speculation" regarding prejudice. *Id*.

Third, the information circulated by Juror 4 could only even *arguably* prejudice Walgreens, as the discussion of Narcan was limited to a Walgreens employee testifying about Walgreens company policy.[5] There has been no similar testimony elicited that relates to any other Defendant and no reason to believe that whether Walgreens charges for Narcan will have any impact—positive or negative—on any other Defendant. And even as to Walgreens, there is no actual prejudice. Although Walgreens complains that the jury might now believe it is "essentially tricking people" because "they can get something for free and we're mak[ing] a profit from it[,]" its argument belied by Ms. Polster's own testimony that Walgreens does, at times, work with the health department to provide Narcan for free. Dkt. #4057 (10/21/21 Trial Tr.) at 3292:19-3293:8.

Finally, any potential prejudice is easily curable—and in fact has already been cured. The Court admonished each juror, both individually and as a group, about their duties in this case and the gravity of Juror 4's actions. The Court also recessed early on Friday afternoon to avoid any negative impact the dismissal of Juror 4 may have had on the ability of the remaining jurors to focus on witness testimony. Such timely proceedings do not require a mistrial—they prevent one. As the Sixth Circuit recognized in *United States v. Pennell*, "if a district court views juror

---

[5] Prior discussion of Narcan or Naloxone in this case has been extremely limited. Captain Villanueva testified briefly that all his teams wear tactical vests and carry Narcan pouches. Dkt. #4050 (10/19/21 Trial Tr.) at 2755:3-9. Brian Joyce answered one question about the CDC recommendation that Naloxone be offered to patients for prescriptions exceeding 50 MME. Dkt. #4026 (10/14/21 Trial Tr.) at 2026:4-8. And Dr. Anna Lembke briefly explained that Narcan can be used to reverse an opioid overdose. Dkt. #4000 (10/6/21 Trial Tr.) at 674:9-676:1.

assurances of continued impartiality to be credible, the court may rely upon such assurances in deciding whether a defendant has satisfied the burden of proving actual prejudice." *United States v. Pennell*, 737 F.2d 521, 533 (6th Cir. 1984). Here, those assurances have been given and should be respected. Additionally, as an added protective measure, Plaintiffs request that the Court specifically instruct the jurors that they should disregard the extrinsic information provided to them by Juror 4.

### C. Defendants' cited authority, which considers juror misconduct discovered *after* judgment is rendered, is misplaced here.

Defendants rely heavily on *Beverly Hills Fire*,[6] *Nian v. Warden*,[7] and *Stiles v. Lawrie*[8] to argue that prejudice should be presumed, and a mistrial should be granted. But in each of those cases, the discovery that a juror had considered external evidence was not made until *after* the jury returned its verdict, thereby precluding any opportunity to cure. And in those situations, applying a presumption of harm makes sense because once the trial is over, the court would have to engage in pure, after-the-fact speculation to properly gauge the effect of the misconduct. In contrast, this incident was promptly discovered, Juror 4 was dismissed, and the Court conducted a thorough voir dire of the remaining jurors. The Court can again caution and admonish the jury and issue a curative instruction before deliberations if Defendants desire. Courts within the Sixth Circuit have distinguished *Beverly Hills* on this very ground. *See, e.g.*, *Prasol v. Cattron-Theimeg, Inc.*, No. 09-10248, 2011 WL 2669619, *4-5 (E.D. Mich. July 8, 2011) ("[U]nlike the court in *In re Beverly Hills*, this Court received notice of the juror's misconduct prior to receiving a verdict. After receiving the note from Mr. McClain, the Court took a number of corrective measures, including dismissing Mr. Denomy as a juror, and giving cautionary instructions to the remaining jurors on three separate occasions."). Because the misconduct was discovered during trial and the court had

---

[6] *In re Beverly Hills Fire Litig.*, 695 F.2d 207 (6th Cir. 1982).

[7] *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746 (6th Cir. 2021).

[8] *Stiles v. Lawrie*, 211 F.2d 188 (6th Cir. 1954).

9

an opportunity to cure, no presumption of harm exists. *See Wheaton*, 517 F.3d at 362; *Rugiero*, 20 F.3d at 1390; *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984) ("Prejudice is not to be presumed.").

Moreover, unlike here, the external evidence in *Beverly Hills*, *Nian*, and *Stiles* was relevant to key disputed issues in those case. In *Beverly Hills*, the issue was whether aluminum electrical wiring and connections were likely to corrode and cause a fire; one juror conducted an "experiment" on the aluminum wiring in his home to reject plaintiff's theory of the case. *In re* 695 F.2d at 212. In *Nian*, where the "entire case came down to a credibility determination" between a criminal defendant and his accuser, one juror introduced evidence of the defendant's prior criminal record. 994 F.3d at 757.  And in *Stiles*, a car wreck case involving a speed dispute, a juror brought into the jury room a manual published by the Highway Department, but not introduced at trial, purporting to show the length of skid marks made by automobiles at different speeds. 211 F.2d at 189. In each of those cases, the extrinsic evidence introduced was directly relevant to the claims on the jury's charge.

By contrast, the sale of Narcan and the availability of free Narcan has little to do with the ultimate issues in this case. Defendants implicitly acknowledge this by arguing at a high level of generality that this evidence plays into Plaintiffs' central theme that Defendants put profits over safety. But Plaintiffs' counsel was clear in his opening argument that there is nothing wrong or illegal with trying to run a profit-making business; it's only when that desire to profit causes a business to engage in tortious misconduct that it becomes problematic.

## CONCLUSION

For the foregoing reasons, Defendants' motions for mistrial should be denied.

Dated: October 24, 2021

Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

W. Mark Lanier
LANIER LAW FIRM
10940 W. Sam Houston Pkwy N., Ste 100
Houston, TX  77064
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Trial Counsel*

11

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Frank L. Gallucci
PLEVIN & GALLUCCI CO., L.P.A.
55 Public Square, Suite 222
Cleveland, OH 44113 (216) 861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

Hunter J. Shkolnik
NAPOLI SHKOLNIK
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088, Ext. 2007
hunter@napolilaw.com

*Counsel for Plaintiffs Lake County and Trumbull County, Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*
Peter H. Weinberger