**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION** **OPIATE LITIGATION** | ) ) | **MDL 2804** |
| | ) | **Case No. 1:17-md-2804** |
| **THIS DOCUMENT RELATES TO:** | ) ) | |
| *Track Eight* | ) ) | **Judge Dan Aaron Polster** |
| | ) ) | **Opinion & Order on Publix Super** **Markets, Inc.'s Motion to Dismiss** |

Publix Super Markets, Inc. moves to Dismiss Plaintiff Cobb County's Complaint.  Doc. #: 3906.[1]  Cobb County filed an opposition brief (Doc. #: 3977) and Publix filed a reply brief (Doc. #: 4009).  The motion and this Order address only the viability of Plaintiff's common law public nuisance claim (Count Four) against the sole moving defendant, Publix.[2]  For the reasons stated below, the Motion to Dismiss is **DENIED**.

---

[1] The Complaint at issue is Plaintiff's "Supplemental and Amended Allegations to Be Added to 'Short Form for Supplemented Complaint and Amending Defendants and Jury Demand.'"  Doc. #: 3787.

[2] In an Order dated March 11, 2021, the Court designated five cases, including the Cobb County case, to be "set for bellwether trials against pharmacies only. . . . Each case should have only one cause of action, presumably either public nuisance or RICO."  Doc. #:  3549.  Plaintiff Cobb County is proceeding with its Fourth Claim for Relief, Public Nuisance, against the following Pharmacies (collectively "Chain Pharmacies"): (1) Walgreen Co., Walgreens Boots Alliance, Inc.; Walgreen Co.; and Walgreen Eastern Co., Inc.; (2) CVS Health Corporation; CVS Indiana L.L.C.; CVS Rx Services, Inc.; CVS TN Distribution, LLC; CVS Pharmacy, Inc.; and Georgia CVS Pharmacy, L.L.C.; (3) Publix Super Markets, Inc.; (4) The Kroger Co.; Kroger Limited Partnership I; and Kroger Limited Partnership II; (5) Rite Aid Corporation; Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center; Rite Aid Hdqtrs. Corp.; Rite Aid of Georgia, Inc.; and Eckerd Corporation; (6) Walmart Inc., f/k/a Wal-Mart Stores, Inc., Wal-Mart Stores East, LP; WSE Management, LLC; WSE Investment LLC; Wal-Mart Stores East, LLC (formerly known as Wal-Mart Stores, Inc.); Sam's East, Inc.; and Sam's West, Inc.

Plaintiff's Complaint alleges:

> In addition to the allegations set forth herein, the County expressly adopts and incorporates by reference the allegations and claims set forth in its Complaint and "Short Form for Supplementing Complaint and Amending Defendants and Jury Demand," ("Short Form Complaint") including all claims and allegations against other defendants named in that Short Form Complaint.

Complaint at ¶ 3.

I.      **Legal Standard.**

The Court incorporates by reference the applicable legal standards set forth in its prior

decision, *In re Nat'l Prescription Opiate Litig.,* 440 F. Supp. 3d 773, 783-84 (N.D. Ohio 2020).

II.     **Factual Allegations.**

Plaintiff alleges the opioid epidemic in Cobb County is an ongoing, but abatable, public

nuisance created and maintained by the *Track 8* Defendants (the "Chain Pharmacies"), including

Publix. Complaint ("Compl."), Doc. #: 3787 ¶¶ 1 & n.3, 96-98, 721-722, 751.[3] The Complaint

states that Publix, in its dual capacities as distributor and dispenser of opioid drugs, failed to

comply with anti-diversion obligations under the Controlled Substances Act and its accompanying

regulations. Compl. ¶¶ 460-502, 690-701. Specifically, the County alleges Publix: (1) failed to

implement effective suspicious order monitoring controls; (2) supplemented opioid distribution to

its own pharmacies by placing orders with other distributors; (3) permitted employees to

manipulate order size and thresholds set by third-party distributors; and (4) overlooked red flags

indicating suspicious prescriptions. As an example, the Complaint alleges Teva, a manufacturer,

identified a Publix opioid order placed through distributer Anda as presenting "serious red flags,"

but the order was nevertheless filled and the opioids eventually dispensed. *Id.* ¶¶ 466-467. It also

states McKesson "regularly granted threshold increases" to Publix and that, "upon information and

belief," Publix "did not sufficiently take those orders into account in Publix's self-distribution

SOM system, negating any constraints from Publix's internal controls." *Id.* ¶¶ 468-470.

The County further alleges that, based on available ARCOS data, 17 million doses of

oxycodone and hydrocodone were shipped into and dispensed by the 22 Publix pharmacies in

---

[3] Unless indicated otherwise, all document numbers refer to the MDL docket, Case No. 17-MD-2804. Page numbers refer to the documents' native format pagination.

Cobb County between 2006–2014. Compl. ¶ 473. Approximately 650,000 citizens comprised the entire population of Cobb County during this time, and Publix held a market share of 12%. *Id.* These metrics, the County avers, were sufficient to raise red flags indicating greater distribution and dispensing than could be justified by legitimate medical need, as well as a likelihood of diversion. *Id.* ¶¶ 472-483. The Complaint also alleges Publix: (1) failed to use drug utilization and prescribing pattern data to (a) comply with anti-diversion responsibilities and (b) enable pharmacists to evaluate prescriptions raising red flags; (2) failed to provide adequate pharmacy staff to allow checking for red flags; and (3) incentivized pharmacists with bonuses for quickly filling and increasing the number of prescriptions dispensed. *Id.* ¶¶ 490-502.  Cobb County asserts this conduct significantly interfered with public health and safety by

> Caus[ing] distribution, dispensing, and sales of opioids in Cobb County and the surrounding communities to skyrocket, flooding Cobb County and the surrounding communities with unreasonable quantities of dangerously addictive drugs, and facilitat[ing] and encourage[ing] the flow and diversion of opioids into an illegal, secondary market, resulting in devastating consequences to the County and the residents of Cobb County.

*Id.* ¶ 743.

## III.    Analysis.

Publix advances two arguments for dismissal of the Complaint: (i) Plaintiff "fails to allege any specific wrongdoing by Publix or any actual connection between Publix's actions and Cobb County;" and (ii) Georgia does not recognize a public nuisance claim where the alleged nuisance-causing conduct is regulated by statute. Doc. #: 3906-1 at 1.  The Court finds neither argument well-taken.

### A. Sufficiency of the Factual Allegations.

3

Publix observes correctly that Federal Rule of Civil Procedure 8 requires a pleading to contain "more than labels and conclusions" that merely recite the elements of a claim, "must contain sufficient factual matter" to state a plausible claim, and must allege "more than the mere possibility of misconduct." Motion at 5 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). Publix contends the Complaint does not fulfill what *Twombly, Iqbal,* and their progeny require, so the County's claim against Publix must be dismissed.

The Court finds Publix' arguments unavailing. The allegations specific to Publix set out in ¶¶ 460-502, 690-701 of the Complaint, summarized in Section II above and discussed further below, satisfy the pleading standards. *See also* Compl. ¶¶ 712-730, 742-750. Furthermore, the Court need not constrain its assessment of pleading sufficiency to allegations pertaining to Publix individually, as they are supplemented by allegations referring to the "Chain Pharmacies" collectively and to "Each Chain Pharmacy."[4]

Publix argues that, under Georgia law, a proper claim must allege facts demonstrating that *specific* acts of a defendant caused a public nuisance, and Publix contends the County's pleading is devoid of "specific examples [of filling improper prescriptions] that are tied to Cobb County."[5]

---

[4]  *See In re Nat'l Prescription Opiate Litig.*, 2019 WL 3737023, at *3 (N.D. Ohio June 13, 2019) ("To the extent Defendants raise the issue of group pleading as a proxy for their assertion that Plaintiffs are required to separately reiterate their allegations against each defendant individually, the R&Rs appropriately analyze this issue within the overarching framework of the Federal Rules described above. *See* Doc. #: 1499 at 25-26 ('Those decisions [cited by Defendants] do not stand for the proposition that where [all of the] multiple defendants are alleged to have engaged in the same pattern of conduct or conspired in a fraudulent scheme, that a plaintiff must reiterate its allegations against each defendant individually. Such a finding would exponentially increase the length of pleadings while adding no substantive value.'). Accordingly, the Court **ADOPTS** the R&Rs with respect to the sufficiency of Plaintiffs' pleadings.").

[5]  Publix' reliance on *City of Coll. Park v. 2600 Camp Creek, LLC*, 666 S.E.2d 607, 608-609 (Ga. Ct. App. 2008) misses the mark entirely.  To support its specificity argument, Publix cites this case for the proposition that, because plaintiff failed to allege specific acts that led to creation of a public nuisance, the court "dismiss[ed] [the claim] *on summary judgment*."  Motion at 6 (emphasis added). Clearly, this decision does not concern a pleading standard. Moreover, the Court of Appeals did ***not*** dismiss the plaintiff's claim, but rather ***reversed*** the trial court's summary

Motion at 7-8 & n.3; Reply at 5-6. As the County points out, however, this argument overstates the need for specificity at the pleading stage. *See Twombly,* 550 U.S. at 505 ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"); *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 735 (6th Cir. 2015) ("a plaintiff is not required to set out detailed factual allegations" to demonstrate plausibility) (citing *Twombly*, 559 U.S. at 570). Response, Doc. #: 3977 at 8.

Nor does Publix' assertion that "a mere suggestion is not sufficient to survive summary judgment" advance its case. Motion at 7-8 (quoting *Wallace v. Coffee Cty., Tennessee*, 852 F. App'x 871, 877 (6th Cir. 2021)). To the contrary, at this stage of the proceedings, Rule 8 only requires "a complaint with enough factual matter (taken as true) to suggest" liability. Response at 9 (quoting *Twombly,* 550 U.S. at 556).

Similarly misplaced is Publix' reliance on caselaw concluding that activities authorized by law, such as "distribut[ing] and dispens[ing] legal controlled substances legally," cannot be a public nuisance. *See* Motion at 7 (citing *McBrayer v. Governors Ridge Office Park Ass'n, Inc.*, 860 S.E.2d 58, 62 (Ga. Ct. App. 2021).[6]  Publix fails to recognize the portion of *McBrayer* that states: "Thus, where the act is lawful in itself, it becomes a nuisance only when conducted in an illegal manner to the hurt, inconvenience or damage of another." *Id.*  Publix also ignores the County's numerous allegations asserting it was the failures of "Publix" and "each Defendant" to comply with their anti-diversion obligations under the CSA and Georgia controlled substance laws

---

judgment dismissal, finding material issues of fact for determination by the jury. Publix should be more careful with its characterization of court rulings.

[6] Prior decisions of the Court have rejected similar "safe harbor immunity" arguments. *See, e.g., In re Nat'l Prescription Opiate Litig.,* 477 F. Supp. 3d 613, 634 & n.32 (N.D. Ohio 2020) (citing *In re Nat'l Prescription Opiate Litig.*, 452 F.Supp.3d at 774–75) (allegations of conduct incompatible with defendants' statutory authority stated an actionable public nuisance claim) (Florida law); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 3737023, at *10 (Doc. #: 1680 at 17-18) ("to allege an absolute public nuisance, the Tribe needed only to allege that Distributors exceeded their statutory authority") (Montana law).

that caused a public nuisance. *See, e.g.,* ¶ 472 ("In the County, Publix" failed to "(a) control the supply chain; (b) prevent diversion; (c) report suspicious orders; and (d) halt shipments of opioids in quantities it knew or should have known could not be justified and signaled potential diversion") and ¶ 700 ("Each of the Chain Pharmacies disregarded their reporting and due diligence obligations under federal law and Georgia law. Instead, they consistently failed to report or suspend suspicious orders, deepening the crisis of opioid abuse, addiction, and death in Georgia.").

Publix correctly points out that "[t]he Supreme Court's decisions in *Twombly* and *Iqbal* do not permit a plaintiff to proceed past the pleading stage and take discovery in order to cure a defect in a complaint." *Patterson v. Novartis Pharms. Corp.*, 451 F. App'x 495, 498 (6th Cir. 2011). On this authority, Publix asserts the County "cannot file a complaint and then use discovery to actually determine whether it can support its claim." Motion at 8; Reply at 6. Here, however, accepting the allegations as true and construed in the light most favorable to the County, the Court finds the Complaint is not plagued with defects requiring a cure, and *does* state without defect a plausible claim of public nuisance liability against Publix. The pleading standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of misconduct. *Twombly*, 550 U.S. at 556.

Meeting Publix' challenge to the relevance of allegations pertaining to opioid distribution in locations other than Cobb County, Plaintiff argues "factual allegations showing that Publix maintained inadequate corporate-level SOM systems in states abutting Georgia – including Florida, where Publix keeps its headquarters . . . make it plausible, indeed likely, that it did the same in Georgia and Cobb County." Response at 7. The County further asserts that, coupled with "Publix inexplicably high ARCOS distribution and dispending numbers in Cobb County," the inference is strengthened. *Id*. The Court agrees with Publix that, if it lacked further factual

6

enhancement, the ARCOS data "alone" would fail to satisfy Rule 8 obligations. *See* Reply at 5. Nevertheless, joined with the allegations discussed above and assessing the Complaint in its entirety, the Court concludes Cobb County's Complaint provides Publix with "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957); *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 543 (6th Cir. 2015) ("The court's function is to construe a complaint in order 'to do justice,' Fed. R. Civ. P. 8(e), and in doing so it must look to the complaint 'as a whole' to see if it provides 'sufficient notice' of the claim.").

Where, as here, the Court "can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) ("According to the Supreme Court, 'plausibility' occupies that wide space between 'possibility' and 'probability.'") (citing *Iqbal,* 556 U.S. at 678). In sum, the Court concludes Cobb County states a plausible claim for the relief it seeks.

**B. Public Nuisance Liability for Statutorily-Regulated Activity.**

**a. Georgia Public Nuisance Laws.**

The longstanding codification of Georgia's public nuisance cause of action provides as follows:

> A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man.

O.C.G.A. § 41-1-1. Further, a "public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." *Id.* § 41-1-2**.** As the Georgia Supreme Court has confirmed, the statutory definition of nuisance "was not intended to

change the common-law." *State ex rel Boykin v. Ball Inv. Co*, 12 S.E.2d 574, 578 (Ga. 1940); *see also Camelot Club Condo. Ass'n v. Afari-Opoku*, 798 S.E.2d 241, 250 (Ga. Ct. App. 2017) ("Although the General Assembly has passed laws addressing nuisance, OCGA § 41-1-1 *et seq.*, such claims arise from the common law.") (citing *Boykin*).

Georgia courts assessing public nuisance cases have also referred to the Restatement of Torts (Second) § 821B. *See, e.g., City of College Park v. 2600 Camp Creek, LLC,* 666 S.E.2d 607, 608 (Ga. Ct. App. 2008) ("Significant interference with 'the public health, the public safety, the public peace, the public comfort or the public convenience' may support a finding of public nuisance. *See* Restatement (Second) of Torts, § 821B (2)(a)."); *City of Albany v. Stanford*, 815 S.E.2d 322, 328 & n.2 (Ga. Ct. App. 2018) (Gobeil, J., concurring) (noting "a public nuisance claim . . . is traditionally recognized as an unreasonable interference 'with a right common to the general public' for example, 'interference with public health, safety, or peace'") (citing Restatement (Second) of Torts, § 821B and cmt. (a) (1979)).

The County Attorney of Cobb County brings its public nuisance claim on behalf of its citizens under the statutory authority of O.C.G.A. § 41-2-2 to abate the alleged public nuisance. Compl. ¶ 734. The statute authorizes county attorneys, among others, to seek abatement "of any nuisance that tends to the immediate annoyance of the public in general, is manifestly injurious to the public health or safety, or tends greatly to corrupt the manners and morals of the public . . . ." O.C.G.A §§ 41-2-1 to 41-2-2.

### b.  Public Nuisance Liability for Statutorily-Regulated Entities.

The Georgia Pharmacy Practice Act ("PPA"), O.C.G.A § 26-4-1 *et seq.*, together with its rules and regulations, Ga. Comp. R. & Regs. 480, broadly govern various aspects of pharmacy practice. For example, the provisions cover licensure (O.C.G.A. §§ 26-4-3, -4, & -62), prescription

8

drug distribution and dispensing (*id.* §§ 26-4-4 & -15), and rules for drug storage, security, record keeping, and disposal (Ga. Comp. R. & Regs. 480). The PPA authorizes the Georgia State Board of Pharmacy to, *inter alia,* enforce its provisions, issue, renew, suspend, or revoke a license, and penalize violations of its provisions.  O.C.G.A. §§ 26-4-20(b) & -60. Any violation of the PPA constitutes a misdemeanor. *Id.* § 26-4-62.

The parties' debate regarding the viability of Cobb County's public nuisance claim revolves around the PPA and octogenarian precedent of the Georgia Supreme Court.  *See Boykin*, 12 S.E.2d 574; *Webb v. Alexander*, 43 S.E.2d 668, 671 (Ga. 1947). Publix contends that, if the Georgia legislature has not characterized the violation of a regulatory scheme (such as the PPA) to be a public nuisance, "then a court of equity has no power to declare it one," and remedies under the PPA and authorization to pursue them are limited to those expressly set forth in the statute. Motion at 2-4 (citing provisions of the Georgia Code that define certain violations as nuisances).[7] This argument relies on portions of the *Boykin* decision stating the statutes at issue did not suggest a violation "shall constitute a nuisance." *See Boykin,* 12 S.E.2d at 581; Motion at 2-3. Read in its entirety, however, *Boykin* – the only case cited by Publix – fails to provide persuasive support for Publix' position.

*Boykin* does not announce the rule of law Publix advances, which is that a violation of regulatory statutes does not and cannot constitute a public nuisance absent a specific legislative declaration to that effect.  Rather, the *Boykin* opinion simply recognized the claim before it – a suit in equity under the general nuisance statute, "Code § 72-202"[8] – was properly brought, but could

---

[7] For example, the health commissioner is authorized to declare nuisances and condemn adulterated food (§§26-2-38(d) and adulterated drugs (*id.* 26-e-4(d).

[8] Sections 72-101 and 72-102 of the general nuisance statute cited in *Boykin* are currently O.C.G.A. 41-1-1 and 41-1-2.

only be maintained if the "object which it sought to enjoin [was] a public nuisance." *Boykin,*12 S.E.2d at 574 (*Syllabus by the Court*), 578 (explaining the object of a viable public nuisance claim is one that "damages all persons who come within the sphere of its operation"). Addressing "the major question, whether or not plaintiff has alleged a state of facts which amounts in law to a public nuisance," the *Boykin* Court concluded the alleged nuisance, which was the usurious conduct of one company and three individuals in violation of statutes regulating lending, "is not of such character as to justify a court of equity entering a decree enjoining its maintenance." *Id.* at 578, 581. In other words, although the *Boykin* defendants' conduct was illegal, it did not create a public nuisance under the general nuisance statute by "damaging all that came within the sphere of operation." Nor did the lending statutes declare violations to be a public nuisance. Therefore, plaintiff's nuisance claim could not be sustained.

Publix' arguments for dismissal fail to acknowledge what the *Boykin* Court recognized separately, namely Georgia's general nuisance statute. Publix contends that, under *Boykin,* where business activity violates a code, "the remedy is provided [only] in the regulatory scheme – a misdemeanor for code violations – not a public nuisance suit."[9] Motion at 3; Reply at 1-3. Far from immunizing regulated entities from equitable public nuisance liability, however, the *Boykin* Court specifically acknowledged that, "in a proper case equity will enjoin an existing nuisance *although the acts to be enjoined constitute crimes*" – in other words, *even though* the conduct causing the nuisance is a statutory violation. *Boykin,* 12 S.E.2d at 578 (emphasis added); *see also id.* at 581 ("'A court of equity will not enjoin the commission of crime generally; but it has

---

[9] In its closing remarks regarding the lending statutes at issue, the *Boykin* Court stated that, if the penalties provided by the lending statutes "be not a sufficient check to **the abuses described in the instant case**, the appeal should be made to the lawmakers, and not to a court of equity . . . ." *Boykin,* 12 S.E.2d at 581 (emphasis added). Notably, "the abuses described in the instant case" were held not to be a public nuisance subject to equitable relief, and therefore legislative recourse was the only option. The *Boykin* Court's remarks in no way negate its recognition that properly supported claims brought under Georgia's public nuisance statute are cognizable. *See id.* at 578.

10

jurisdiction, and will in a proper case, at the instance of the state, restrain an existing or threatened public nuisance, though the offender is amenable to the criminal laws of the state.'") (quoting *Dean v. State*, 106 S.E. 792 (Ga. 1921)). Accordingly, the fact that misdemeanor penalties may be imposed for violations of the PPA does not shield Publix from equitable nuisance liability under Title 41 of the Georgia Code.

Moreover, a subsequent decision of the Georgia Supreme Court confirms the conclusion that *Boykin* does not stand for the proposition that public nuisance claims arising from the common law are displaced entirely by regulatory statutes, absent a declaration to the contrary. In *Webb v. Alexander*, the Georgia Supreme Court stated:

> [T]his court has held, in effect, on many occasions that a simple violation of [s]ome law without more does not constitute a public nuisance. In *State ex rel. Boykin v. Ball Investment Co.*, 191 Ga. 382, 12 S.E.2d 574, it was shown that a defendant was violating the law by loaning money at usurious rates of interest. This alleged infraction of the law, however, was insufficient to make the acts complained of a public nuisance so as to authorize the Solicitor-General to proceed on behalf of the State with abatement proceedings.

*Webb v. Alexander*, 43 S.E.2d 668, 671 (Ga. 1947). The necessary implication is that a "sufficient" infraction of the law, one that "damages all persons who come within the sphere of its operation," *could* support a claim for public nuisance. And as discussed below, Webb goes on to make this proposition explicit.

Publix challenges the County's reliance on *Webb*, contending the zoning statute at issue in that case differs materially from the PPA and the lending laws addressed in *Boykin*. Reply at 2 & n.2. Publix reads the zoning law addressed in *Webb* as "explicitly offer[ing] a nuisance remedy to address violations and preserve remedies outside its regulatory scheme." *Id. Webb*, however, states the exact opposite: "the 1939 zoning statute does not expressly make a violation of its provisions

a 'public nuisance.'"[10]  *Id.* at 671 (explaining: "since the violation of a zoning ordinance does not create a public nuisance, ***it is necessary for the pleader to set forth facts which show that such a violation does constitute a public nuisance*.**") (emphasis added). *Webb*, like *Boykin*, found the facts alleged insufficient to constitute a public nuisance and affirmed dismissal of the case. *See id.* at 672-673.  But Webb explicitly recognizes a public nuisance claim *could* be brought, even though a statute addresses the same conduct.

This leads to the question of whether the County sufficiently alleges conduct that goes beyond simple violation of Georgia statutes and regulations, by pleading that "all persons who come within the sphere of the operation of [the] nuisance are damaged." *Webb,* 43 S.E.2d at 671 (citing Code, 72-102).  The County's Complaint amply alleges more than a statutory violation. For example, the Complaint alleges that conduct of the Chain Pharmacies, including Publix, significantly interfered with public health safety and welfare, contributed to the oversupply of opioids, and knowingly facilitated an illegal secondary market. Compl. ¶¶ 742-747. The County further alleges this conduct has resulted in "a public health crisis of epidemic proportions" that "has reshaped daily reality for Cobb County." *Id.* ¶¶ 719, 715. The effects include "increased and intensified emergency medical responses to overdoses; increased drug-related offenses affecting law enforcement, jails, and courts; enormous resources spent on community and social programs

---

[10] Publix refers to a sentence of the *Webb* decision that appears in the Court's recitation of plaintiff's assignments of error: "Section 20 of the Act of 1939 ***does*** make every violation of the terms of that Act a nuisance, and provides that such continuing nuisance may be 'subject to abatement as a nuisance as provided by the laws of this State.'" (Emphasis added). *Webb,* 43 S.E. at 699 (emphasis added). The Court's analysis twice confirms the opposite: "the 1939 zoning statute ***does not*** expressly make a violation of its provisions a 'public nuisance,'" and "since the violation of a zoning ordinance ***does not*** create a public nuisance, it is necessary for the pleader to set forth facts which show that such violation does constitute a public nuisance." *Id.* at 671 (emphasis added).  The conflicting declarations are reasonably synthesized by concluding the first refers to the plaintiff's contention and the latter states the law.

to treat those with opioid use disorders; and higher workers' compensation costs for prescription opioids and opioid-related claims" *Id.* ¶¶ 710-720.

Publix argues the remedies provided by the Legislature in the PPA adequately address these alleged conditions. *See* Motion at 3, Reply at 2-3.[11] This argument is not well taken: the PPA, unlike Title 41 of the O.G.C.A, simply does not provide an abatement remedy for the harm the County pleads.

Finally, Publix argues nothing in the PPA regulatory scheme indicates a public nuisance claim is available. Motion at 4-5. The County counters that nothing in the provisions of the PPA expresses or implies an intent by the Georgia legislature to displace the common law or immunize violations of its provisions from public nuisance liability under Georgia law.  Response at 10. The statutory construction scale tips clearly in the County's favor.  Georgia's highest court counsels: "to the extent that statutory text can be as reasonably understood to conform to the common law as to depart from it, the courts usually presume that the legislature meant to adhere to the common law." *May v. State*, 761 S.E.2d 38, 45 (Ga. 2014) ("'The better view is that statutes will not be interpreted as changing the common law unless they effect the change with clarity.'") (quoting Scalia & Garner, Reading Law: The Interpretation of Legal Texts 167 (West 2012)).  Although the PPA does not state or suggest that a violation of its provisions does or can constitute a public nuisance, Cobb County – unlike the *Boykin* plaintiff – alleges "a state of facts which amounts in law to a public nuisance," *Boykin*, S.E.2d at 578, thereby pleading a plausible public nuisance claim under O.C.G.A. § 41-1-1 *et seq.*

---

[11] Publix states, "The PPA contemplates misdemeanor penalties, license sanctions, fines, discipline, and enforcement through inspections, hearings, reviews, and investigations supported by discovery via subpoenas and testimony taken under oath. O.C.G.A. §§ 26-4-20(b), 26-4-28, 26-4-60, 26-4-62, 26-4-80, 26-4-113, & 26-4-115."

IV.     **Conclusion.**

Publix fails to demonstrate that Georgia law does not recognize a public nuisance claim,

nor that the County does not adequately plead a public nuisance cause of action. *See Total Benefits*

*Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (a party

moving for dismissal under Rule 12(b)(6) "has the burden of proving that no claim exists").

Accordingly, Publix' motion to dismiss Cobb County's Complaint is **DENIED**.

**IT IS SO ORDERED.**

/s/ Dan Aaron Polster
**DAN AARON POSTER**
**UNITED STATES DISTRICT JUDGE**

**October 25, 2021**

14