**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>TRACK THREE | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## MOTION TO EXCLUDE EVIDENCE OF IMS CONTRACTS

CVS moves to exclude evidence of CVS's contracts with IMS America, Ltd. (which, upon information and belief, became QuintilesIMS and later IQVIA following a merger). As set forth below, the evidence should be excluded because: (1) it is not relevant to the issues in this case—whether, intentionally or in violation of law, CVS shipped suspicious orders to or filled illegitimate prescriptions in Lake and Trumbull counties and thereby caused a public nuisance therein; (2) nobody with knowledge of the IMS contracts appears on plaintiffs' witness lists; and (3) even if there is any probative value (there is none), it is substantially outweighed by its potential for unfair prejudice and risk of confusion, especially given the quantity of collateral evidence—unrelated to conduct in Lake and Trumbull counties—already admitted.

### BACKGROUND

Only three witnesses have testified about IMS. First, Tom Davis, a CVS witness, testified that the purpose for accumulating prescription data was not to sell it to IMS. Dkt. 3995 at 375:4-5. He testified:

> **Q.** [D]uring the time of your tenure at CVS, CVS was selling prescription data to I.M.S. True?
>
> **A.** I believe that's true.

> **Q.** And so much of the data that we were being told was being accumulated by CVS, was actually being accumulated to sell to I.M.S. in the past.  True?
>
> **A.** I don't agree with your premise that the purpose for holding our data was to sell to I.M.S., sir.
>
> **Q.** Well, that's not the only purpose.  Y'all used it internally to figure out who shops for what, didn't you?
>
> **A.** We use data to run our business, sir.

*Id.* at 374:21-375:9.

Next, Tasha Polster, a Walgreens witness, testified that she did not know whether Walgreens sold its prescription data to a third party.  Dkt. 4064 at 3357:4-8.  Finally, plaintiffs' expert, Dr. Katherine Keyes, when shown a Centers for Disease Control report that used IMS data, testified that IMS aggregates prescription data and that she uses the data quite often in her research. Dkt.  4065 at 3712:7-3713:10.

## ARGUMENT

We note at the outset that if plaintiffs seek to introduce the IMS contracts simply to show that CVS keeps data, that issue is not in dispute.  CVS's data has been produced in the case, and plaintiffs already have introduced into evidence summaries of that data.  If further clarity were necessary on this uncontroverted point, CVS would stipulate to it.

The IMS contracts are inadmissible for the following additional reasons as well:

First, to the extent that plaintiffs seek to admit the IMS contracts to show something other than the mere possession of data, the contracts are not remotely relevant to the issues in the case— *i.e.,* whether CVS shipped suspicious orders or filled illegitimate prescriptions that caused an ongoing public nuisance in Lake and Trumbull counties.  *See* Dkt. 3991 at 23:7-20.[1]  Indeed,

---

[1] By citing the Court's preliminary instructions about proving a public nuisance, CVS does not concede that the Court's preliminary instructions were correct or waive any of its objections to the jury instructions.

2

whether CVS contracted with IMS to provide data bears no relationship to whether CVS shipped a suspicious order into one of the counties or whether a CVS pharmacist in either of the counties filled an illegitimate prescription. They concern entirely separate subject matters.

The Court has held, correctly, that whether pharmacies dispense Narcan, a medication central to opioid-related harms, "has no bearing on whether or not the plaintiffs can prove a public nuisance." Dkt. 4065 at 3767:16-17. If dispensing a drug that treats opioid overdoses is not relevant to this case, then whether CVS contracts with a third party to provide data most certainly is not relevant.

Second, even if the IMS contracts were relevant (they are not), plaintiffs have no witness to sponsor the IMS contracts and provide testimony to support their asserted theory of relevance. CVS's contracts with IMS were produced over two and a half years ago in January of 2019. *See* CVS-MDLT1-000119294 - CVS-MDLT1-000119399. Plaintiffs never deposed any IMS witness or any CVS witness to support their theory of the IMS contracts' relevance. And even more significantly, plaintiffs have not identified any IMS witnesses or CVS witnesses with knowledge of IMS contracts on their witness lists.

Indeed, in mid-June, plaintiffs served a witness list that included over 100 witnesses. There were no IMS witnesses or knowledgeable CVS witnesses on this list. *See* Ex. A, Plaintiffs' Corrected Witness List (June 16, 2021). Likewise, in late June, plaintiffs served their 50 "most likely to call" witness list. *See* Ex. B. Again, there were no IMS witnesses or knowledgeable CVS witnesses on this list. In late July, plaintiffs filed their witness list. Dkt. 3809. For a third time and final time, there were no IMS witnesses or knowledgeable CVS witnesses on this list.

Without a witness to sponsor the IMS contracts and provide testimony remotely supportive of plaintiffs' theory of relevance (whatever it may be), there is no foundation to admit them. And

if plaintiffs seek to expand their witness list at this very late date, there is no basis to allow them to do so and to expose CVS to the unfair surprise and associated prejudice of doing so.  This is **not** a rebuttal issue made necessary by something CVS said: plaintiffs themselves injected IMS contracts into the case in their opening statement, before CVS or any other defendant uttered a single word at trial.

Third, even if there is any probative value of the IMS contracts (there is none), it is at best marginal, and any such marginal value is substantially outweighed by its potential for unfair prejudice and jury confusion.  *See* Fed. R. Evid. 403.  The subject of selling of data, while of no relevance to the case, is a hot button issue and, undoubtedly, would be potentially inflammatory. And the risk of confusion is particularly acute given that the Court has already admitted, in great volume, collateral evidence (namely, evidence pertaining to CVS pharmacies far outside of the two counties, including evidence of settlements entered by them that are subject to Rule 408).  If the Court allowed evidence of CVS's contracts with IMS, it would further attenuate the evidence from what is at issue: shipments to and prescriptions filled in Lake and Trumbull counties.

## CONCLUSION

For the foregoing reasons, the Court should exclude evidence of CVS contracts with IMS.

Dated:  October 25, 2021            Respectfully submitted,

                                                    */s/ Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
Graeme W. Bush
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: gbush@zucerkman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*