

**U.S. Department of Justice**
Drug Enforcement Administration

8701 Morrissette Drive
Springfield, Virginia 22152

*www.dea.gov*

JUN 1 2 2012

Dear Registrant:

This letter is being sent to every entity in the United States who is registered with the Drug Enforcement Administration (DEA) to manufacture or distribute controlled substances. This letter is to remind controlled substance manufacturers and distributors of their responsibility to inform DEA of suspicious orders in accordance with 21 Code of Federal Regulations (C.F.R.) § 1301.74(b).

On September 27, 2006, DEA sent a letter to this registrant community expressing concerns regarding drug abuse in the United States and highlighted the responsibility of manufacturers and distributors to be vigilant in the distribution of controlled substances. To assist manufacturers and distributors, DEA listed circumstances that might be indicative of diversion. On December 27, 2007, DEA issued another letter which reiterated the responsibility of controlled substance manufacturers and distributors to inform DEA of suspicious orders in accordance with 21 C.F.R. § 1301.74(b). Although DEA's September 2006 letter included a list of factors that might indicate diversion, DEA wants to stress that this was not a comprehensive list of all possible indications of diversion. DEA encourages registrants to take an integrated approach. This point was emphasized in the December 2007 letter, and DEA is once again bringing it to your attention.

Under federal law, all manufacturers and distributors are required to maintain effective controls against diversion. 21 United States Code (U.S.C.) § 823. DEA regulations require all manufacturers and distributors to report suspicious orders of controlled substances. Specifically, 21 C.F.R. § 1301.74(b) states, "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances." This regulation clearly places the responsibility on the registrant to design and operate such a system. Accordingly, DEA does not approve or otherwise endorse any specific system for reporting suspicious orders.

The registrant is also required to inform the local DEA Field Division Office of suspicious orders when discovered. The regulation provides examples of suspicious orders such as orders of an unusual size, orders deviating substantially from a normal pattern, and orders of an unusual frequency. The determination of whether an order is suspicious depends not only on the ordering patterns of the particular customer, but also on the patterns of the registrant's customer base and the patterns throughout the relevant segment of the regulated industry.

Registrants who rely on rigid formulas to identify whether an order is suspicious may fail to detect suspicious orders. For example, this system might not identify suspicious orders placed by a pharmacy, if that pharmacy placed unusually large orders from the beginning of its relationship with the supplier. This system might not identify orders as suspicious if the orders were solely for one highly abused controlled substance. It should be noted that ordering one highly abused controlled substance and little or nothing else may indicate a deviation from the normal pattern of what pharmacies generally order.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

PLAINTIFFS TRIAL EXHIBIT
P-00528_00001

ABDCMDL00269683

When reporting an order as suspicious, registrants must be clear in their communications with the DEA Field Division Office that the registrant is actually characterizing an order as suspicious. Daily, weekly, or monthly reports submitted by a registrant to their local DEA office and labeled as "excessive purchases" do not comply with the requirement to report suspicious orders, even if the registrant calls such reports "suspicious order reports." If the registrant determines the order is suspicious, the order may not be shipped and this suspicion must be reported to the local DEA Field Division Office.

Registrants who routinely report suspicious orders, yet fill these orders without first ascertaining that the order will not be diverted into other than legitimate medical, scientific, or industrial channels, are failing to maintain effective controls against diversion. Failure to maintain effective controls against diversion is inconsistent with the public interest as that term is used in 21 U.S.C. §§ 823 and 824, and may result in the revocation of the registrant's DEA Certificate of Registration. DEA may also pursue civil and criminal sanctions.

For more information regarding your obligation to report suspicious orders pursuant to 21 C.F.R. § 1301.74(b), please review the Final Order issued by the DEA Deputy Administrator in the matter of Southwood Pharmaceuticals, Inc., 72 FR 36487 (2007). This document reiterates the duty to report suspicious orders when discovered by the registrant, and provides some criteria to use when determining whether an order is suspicious. The Final Order also specifically discusses a registrant's obligation to maintain effective controls against the diversion of controlled substances. You may obtain a copy of this Final Order, along with other information provided by the Office of Diversion Control, at www.DEAdiversion.usdoj.gov.

As always, it is DEA's goal to work in cooperation with the regulated community. DEA seeks to educate its registrants on their responsibilities and obligations under federal laws and regulations to ensure that controlled substances are used for legitimate purposes and to prevent diversion. Your role in the proper handling of controlled substances is critical for public safety as it helps to protect society against drug abuse and diversion.

Sincerely,

Joseph T. Rannazzisi
Deputy Assistant Administrator
Office of Diversion Control

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ABDCMDL00269684

# U.S. DEPARTMENT OF JUSTICE

## DRUG ENFORCEMENT ADMINISTRATION

www.dea.gov                                                            Washington, D.C. 20537

December 27, 2007

In reference to registration

Dear Registrant:

This letter is being sent to every entity in the United States registered with the Drug Enforcement Administration (DEA) to manufacture or distribute controlled substances. The purpose of this letter is to reiterate the responsibilities of controlled substance manufacturers and distributors to inform DEA of suspicious orders in accordance with 21 CFR 1301.74(b).

In addition to, and not in lieu of, the general requirement under 21 USC 823, that manufacturers and distributors maintain effective controls against diversion, DEA regulations require all manufacturers and distributors to report suspicious orders of controlled substances. Title 21 CFR 1301.74(b), specifically requires that a registrant "design and operate a system to disclose to the registrant suspicious orders of controlled substances." The regulation clearly indicates that it is the sole responsibility of the registrant to design and operate such a system. Accordingly, DEA does not approve or otherwise endorse any specific system for reporting suspicious orders. Past communications with DEA, whether implicit or explicit, that could be construed as approval of a particular system for reporting suspicious orders, should no longer be taken to mean that DEA approves a specific system.

The regulation also requires that the registrant inform the local DEA Division Office of suspicious orders <u>when discovered</u> by the registrant. Filing a monthly report of completed transactions (e.g., "excessive purchase report" or "high unit purchases") does not meet the regulatory requirement to report suspicious orders. Registrants are reminded that their responsibility does not end merely with the filing of a suspicious order report. Registrants must conduct an independent analysis of suspicious orders prior to completing a sale to determine whether the controlled substances are likely to be diverted from legitimate channels. Reporting an order as suspicious will not absolve the registrant of responsibility if the registrant knew, or should have known, that the controlled substances were being diverted.

The regulation specifically states that suspicious orders include orders of an unusual size, orders deviating substantially from a normal pattern, and orders of an unusual frequency. These criteria are disjunctive and are not all inclusive. For example, if an order deviates substantially from a normal pattern, the size of the order does not matter and the order should be reported as suspicious. Likewise, a registrant need not wait for a "normal pattern" to develop over time before determining whether a particular order is suspicious. The size of an order alone, whether or not it deviates from a normal pattern, is enough to trigger the registrant's responsibility to report the order as suspicious. The determination of whether an order is suspicious depends not only on the ordering patterns of the particular customer, but also on the patterns of the registrant's customer base and the patterns throughout the relevant segment of the regulated industry.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                           ABDCMDL00269685

Page 2

Registrants that rely on rigid formulas to define whether an order is suspicious may be failing to detect suspicious orders. For example, a system that identifies orders as suspicious only if the total amount of a controlled substance ordered during one month exceeds the amount ordered the previous month by a certain percentage or more is insufficient. This system fails to identify orders placed by a pharmacy if the pharmacy placed unusually large orders from the beginning of its relationship with the distributor. Also, this system would not identify orders as suspicious if the order were solely for one highly abused controlled substance if the orders never grew substantially. Nevertheless, ordering one highly abused controlled substance and little or nothing else deviates from the normal pattern of what pharmacies generally order.

When reporting an order as suspicious, registrants must be clear in their communications with DEA that the registrant is actually characterizing an order as suspicious. Daily, weekly, or monthly reports submitted by a registrant indicating "excessive purchases" do not comply with the requirement to report suspicious orders, even if the registrant calls such reports "suspicious order reports."

Lastly, registrants that routinely report suspicious orders, yet fill these orders without first determining that order is not being diverted into other than legitimate medical, scientific, and industrial channels, may be failing to maintain effective controls against diversion. Failure to maintain effective controls against diversion is inconsistent with the public interest as that term is used in 21 USC 823 and 824, and may result in the revocation of the registrant's DEA Certificate of Registration.

For additional information regarding your obligation to report suspicious orders pursuant to 21 CFR 1301.74(b), I refer you to the recent final order issued by the Deputy Administrator, DEA, in the matter of Southwood Pharmaceuticals Inc., 72 FR 36487 (2007). In addition to discussing the obligation to report suspicious orders when discovered by the registrant, and some criteria to use when determining whether an order is suspicious, the final order also specifically discusses your obligation to maintain effective controls against the diversion of controlled substances.

Sincerely,

Joseph T. Rannazzisi
Deputy Assistant Administrator
Office of Diversion Control

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                                   ABDCMDL00269686



# U.S. DEPARTMENT OF JUSTICE

# DRUG ENFORCEMENT ADMINISTRATION

www.dea.gov                                                                 Washington, D.C. 20537

February 7, 2007

In reference to registration

Dear Sir or Madam:

This letter is being sent to every commercial entity in the United States registered with the Drug Enforcement Administration (DEA) to distribute controlled substances. The purpose of this letter is to reiterate the responsibilities of controlled substance distributors in view of the prescription drug abuse problem our nation currently faces.

## Background

As each of you is undoubtedly aware, the abuse (nonmedical use) of controlled prescription drugs is a serious and growing health problem in this country.[1] DEA has an obligation to combat this problem as one of the agency's core functions is to prevent the diversion of controlled substances into illicit channels. Congress assigned DEA to carry out this function through enforcement of the Controlled Substances Act (CSA) and DEA regulations that implement the Act.

The CSA was designed by Congress to combat diversion by providing for a closed system of drug distribution, in which all legitimate handlers of controlled substances must obtain a DEA registration and, as a condition of maintaining such registration, must take reasonable steps to ensure that their registration is not being utilized as a source of diversion. Distributors are, of course, one of the key components of the distribution chain. If the closed system is to function properly as Congress envisioned, distributors must be vigilant in deciding whether a prospective customer can be trusted to deliver controlled substances only for lawful purposes. This responsibility is critical, as Congress has expressly declared that the illegal distribution of controlled substances has a substantial and detrimental effect on the health and general welfare of the American people.[2]

## The Statutory Scheme and Legal Duties of Distributors as DEA Registrants

Although most distributors are already well aware of the following legal principles, they are reiterated here as additional background for this discussion.

The CSA uses the concept of registration as the primary means by which manufacturers, distributors, and practitioners are given legal authority to handle controlled substances. Registration also serves as the primary incentive for compliance with the regulatory requirements of the CSA and DEA regulations, as Congress gave DEA authority under the Act to revoke and suspend registrations for failure to comply with these requirements. (Depending on the circumstances, failure to comply with the regulatory requirements might also provide the basis for criminal or civil action under the CSA.)

---

[1] See National Institute on Drug Abuse Research Report: Prescription Drug Abuse and Addiction (revised August 2005); available at www.drugabuse.gov/PDF/RRPrescription.pdf

[2] 21 U.S.C. 801(2)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                            ABDCMDL00269687

Before taking an action to revoke a registration, DEA must serve the registrant an order to show cause, which advises the registrant of its right to an administrative hearing before the agency (21 U.S.C 824(c)). The CSA also gives DEA discretionary authority to suspend any registration simultaneously with the initiation of revocation proceedings in cases where the agency finds there is an imminent danger to the public health and safety (21 U.S.C. 824(d)).

DEA recognizes that the overwhelming majority of registered distributors act lawfully and take appropriate measures to prevent diversion. Moreover, all registrants - manufacturers, distributors, pharmacies, and practitioners - share responsibility for maintaining appropriate safeguards against diversion. Nonetheless, given the extent of prescription drug abuse in the United States, along with the dangerous and potentially lethal consequences of such abuse, even just one distributor that uses its DEA registration to facilitate diversion can cause enormous harm. Accordingly, DEA will use its authority to revoke and suspend registrations in appropriate cases.

The statutory factors DEA must consider in deciding whether to revoke a distributor's registration are set forth in 21 U.S.C. 823(e). Listed first among these factors is the duty of distributors to maintain effective controls against diversion of controlled substances into other than legitimate medical, scientific, and industrial channels. In addition, distributors must comply with applicable state and local law. Congress also gave DEA authority under this provision to revoke a registration based on the distributor's past experience in the distribution of controlled substances and based on "such other factors as may be relevant to and consistent with the public health and safety."

The DEA regulations require all distributors to report suspicious orders of controlled substances. Specifically, the regulations state in 21 C.F.R. 1301.74(b):

> The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.

It bears emphasis that the foregoing reporting requirement is in addition to, and not in lieu of, the general requirement under 21 U.S.C. 823(e) that a distributor maintain effective controls against diversion.

Thus, in addition to reporting all suspicious orders, a distributor has a statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate medical, scientific, and industrial channels. Failure to exercise such due diligence could, as circumstances warrant, provide a statutory basis for revocation or suspension of a distributor's registration.

In a similar vein, given the requirement under section 823(e) that a distributor maintain effective controls against diversion, a distributor may not simply rely on the fact that the person placing the suspicious order is a DEA registrant and turn a blind eye to the suspicious circumstances. Again, to maintain effective controls against diversion as section 823(e) requires, the distributor should exercise due care in confirming the legitimacy of all orders prior to filling.

In addition, distributors are required to file reports of distributions of certain controlled substances to the DEA ARCOS Unit, in the time and manner specified in the regulations (21 C.F.R. 1304.33). The failure to file ARCOS reports in a complete and timely manner is a potential statutory basis for revocation under section 823(e). Depending on the circumstances, the failure to keep or furnish required records might also be the basis for civil fines or criminal penalties under the CSA, as provided in 21 U.S.C. 842.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ABDCMDL00269688

Circumstances That Might Be Indicative of Diversion

DEA investigations have revealed that certain pharmacies engaged in dispensing controlled substances for other than a legitimate medical purpose often display one or more of the following characteristics in their pattern of ordering controlled substances:

1. Ordering excessive quantities of a limited variety of controlled substances (e.g., ordering only phentermine, hydrocodone, and alprazolam) while ordering few, if any, other drugs

2. Ordering a limited variety of controlled substances in quantities disproportionate to the quantity of non-controlled medications ordered

3. Ordering excessive quantities of a limited variety of controlled substances in combination with excessive quantities of lifestyle drugs

4. Ordering the same controlled substance from multiple distributors

A distributor seeking to determine whether a suspicious order is indicative of diversion of controlled substances to other than legitimate medical channels may wish to inquire with the ordering pharmacy about the following:

1. What percentage of the pharmacy's business does dispensing controlled substances constitute?

2. Is the pharmacy complying with the laws of every state in which it is dispensing controlled substances?

3. Is the pharmacy soliciting buyers of controlled substances via the Internet or is the pharmacy associated with an Internet site that solicits orders for controlled substances?

4. Does the pharmacy, or Internet site affiliated with the pharmacy, offer to facilitate the acquisition of a prescription for a controlled substance from a practitioner with whom the buyer has no pre-existing relationship?

5. Does the pharmacy fill prescriptions issued by practitioners based solely on an on-line questionnaire without a medical examination or bona-fide doctor-patient relationship?

6. Are the prescribing practitioners licensed to practice medicine in the jurisdictions to which the controlled substances are being shipped, if such a license is required by state law?

7. Are one or more practitioners writing a disproportionate share of the prescriptions for controlled substances being filled by the pharmacy?

8. Does the pharmacy offer to sell controlled substances without a prescription?

9. Does the pharmacy charge reasonable prices for controlled substances?

10. Does the pharmacy accept insurance payment for purchases of controlled substances made via the Internet?

These questions are not all-inclusive; nor will the answer to any of these questions necessarily determine whether a suspicious order is indicative of diversion to other than legitimate medical channels. Distributors should consider the totality of the circumstances when evaluating an order for controlled substances, just as DEA will do when determining whether the filling of an order is consistent with the public interest within the meaning of 21 U.S.C. 823(e).

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ABDCMDL00269689

Page 4

We look forward to continuing to work in cooperation with distributors toward our mutual goal of preventing the diversion of pharmaceutical controlled substances.

Sincerely,

Joseph T. Rannazzisi
Deputy Assistant Administrator
Office of Diversion Control

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ABDCMDL00269690

# U.S. DEPARTMENT OF JUSTICE

## DRUG ENFORCEMENT ADMINISTRATION

www.dea.gov

Washington, D.C. 20537

September 27, 2006

||l..ll...ll.ll...l.l.ll..ll..ll..ll..ll..ll..ll..l

In reference to registration #

Dear Sir or Madam:

This letter is being sent to every commercial entity in the United States registered with the Drug Enforcement Administration (DEA) to distribute controlled substances. The purpose of this letter is to reiterate the responsibilities of controlled substance distributors in view of the prescription drug abuse problem our nation currently faces.

Background

As each of you is undoubtedly aware, the abuse (nonmedical use) of controlled prescription drugs is a serious and growing health problem in this country.[1] DEA has an obligation to combat this problem as one of the agency's core functions is to prevent the diversion of controlled substances into illicit channels. Congress assigned DEA to carry out this function through enforcement of the Controlled Substances Act (CSA) and DEA regulations that implement the Act.

The CSA was designed by Congress to combat diversion by providing for a closed system of drug distribution, in which all legitimate handlers of controlled substances must obtain a DEA registration and, as a condition of maintaining such registration, must take reasonable steps to ensure that their registration is not being utilized as a source of diversion. Distributors are, of course, one of the key components of the distribution chain. If the closed system is to function properly as Congress envisioned, distributors must be vigilant in deciding whether a prospective customer can be trusted to deliver controlled substances only for lawful purposes. This responsibility is critical, as Congress has expressly declared that the illegal distribution of controlled substances has a substantial and detrimental effect on the health and general welfare of the American people.[2]

The Statutory Scheme and Legal Duties of Distributors as DEA Registrants

Although most distributors are already well aware of the following legal principles, they are reiterated here as additional background for this discussion.

The CSA uses the concept of registration as the primary means by which manufacturers, distributors, and practitioners are given legal authority to handle controlled substances. Registration also serves as the primary incentive for compliance with the regulatory requirements of the CSA and DEA regulations, as Congress gave DEA authority under the Act to revoke and suspend registrations for failure to comply with these requirements. (Depending on the circumstances, failure to comply with the regulatory requirements might also provide the basis for criminal or civil action under the CSA.)

---

[1] See National Institute on Drug Abuse Research Report: Prescription Drug Abuse and Addiction (revised August 2005); available at www.drugabuse.gov/PDF/RRPrescription.pdf

[2] 21 U.S.C. 801(2)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ABDCMDL00269691

Before taking an action to revoke a registration, DEA must serve the registrant an order to show cause, which advises the registrant of its right to an administrative hearing before the agency (21 U.S.C 824(c)). The CSA also gives DEA discretionary authority to suspend any registration simultaneously with the initiation of revocation proceedings in cases where the agency finds there is an imminent danger to the public health and safety (21 U.S.C. 824(d)).

DEA recognizes that the overwhelming majority of registered distributors act lawfully and take appropriate measures to prevent diversion. Moreover, all registrants - manufacturers, distributors, pharmacies, and practitioners - share responsibility for maintaining appropriate safeguards against diversion. Nonetheless, given the extent of prescription drug abuse in the United States, along with the dangerous and potentially lethal consequences of such abuse, even just one distributor that uses its DEA registration to facilitate diversion can cause enormous harm. Accordingly, DEA will use its authority to revoke and suspend registrations in appropriate cases.

The statutory factors DEA must consider in deciding whether to revoke a distributor's registration are set forth in 21 U.S.C. 823(e). Listed first among these factors is the duty of distributors to maintain effective controls against diversion of controlled substances into other than legitimate medical, scientific, and industrial channels. In addition, distributors must comply with applicable state and local law. Congress also gave DEA authority under this provision to revoke a registration based on the distributor's past experience in the distribution of controlled substances and based on "such other factors as may be relevant to and consistent with the public health and safety."

The DEA regulations require all distributors to report suspicious orders of controlled substances. Specifically, the regulations state in 21 C.F.R. 1301.74(b):

> The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Field Division Office of the Administration in his area of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.

It bears emphasis that the foregoing reporting requirement is in addition to, and not in lieu of, the general requirement under 21 U.S.C. 823(e) that a distributor maintain effective controls against diversion.

Thus, in addition to reporting all suspicious orders, a distributor has a statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate medical, scientific, and industrial channels. Failure to exercise such due diligence could, as circumstances warrant, provide a statutory basis for revocation or suspension of a distributor's registration.

In a similar vein, given the requirement under section 823(e) that a distributor maintain effective controls against diversion, a distributor may not simply rely on the fact that the person placing the suspicious order is a DEA registrant and turn a blind eye to the suspicious circumstances. Again, to maintain effective controls against diversion as section 823(e) requires, the distributor should exercise due care in confirming the legitimacy of all orders prior to filling.

In addition, distributors are required to file reports of distributions of certain controlled substances to the DEA ARCOS Unit, in the time and manner specified in the regulations (21 C.F.R. 1304.33). The failure to file ARCOS reports in a complete and timely manner is a potential statutory basis for revocation under section 823(e). Depending on the circumstances, the failure to keep or furnish required records might also be the basis for civil fines or criminal penalties under the CSA, as provided in 21 U.S.C. 842.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

ABDCMDL00269692

Page 3

## Circumstances That Might Be Indicative of Diversion

DEA investigations have revealed that certain pharmacies engaged in dispensing controlled substances for other than a legitimate medical purpose often display one or more of the following characteristics in their pattern of ordering controlled substances:

1. Ordering excessive quantities of a limited variety of controlled substances (e.g., ordering only phentermine, hydrocodone, and alprazolam) while ordering few, if any, other drugs

2. Ordering a limited variety of controlled substances in quantities disproportionate to the quantity of non-controlled medications ordered

3. Ordering excessive quantities of a limited variety of controlled substances in combination with excessive quantities of lifestyle drugs

4. Ordering the same controlled substance from multiple distributors

A distributor seeking to determine whether a suspicious order is indicative of diversion of controlled substances to other than legitimate medical channels may wish to inquire with the ordering pharmacy about the following:

1. What percentage of the pharmacy's business does dispensing controlled substances constitute?

2. Is the pharmacy complying with the laws of every state in which it is dispensing controlled substances?

3. Is the pharmacy soliciting buyers of controlled substances via the Internet or is the pharmacy associated with an Internet site that solicits orders for controlled substances?

4. Does the pharmacy, or Internet site affiliated with the pharmacy, offer to facilitate the acquisition of a prescription for a controlled substance from a practitioner with whom the buyer has no pre-existing relationship?

5. Does the pharmacy fill prescriptions issued by practitioners based solely on an on-line questionnaire without a medical examination or bona-fide doctor-patient relationship?

6. Are the prescribing practitioners licensed to practice medicine in the jurisdictions to which the controlled substances are being shipped, if such a license is required by state law?

7. Are one or more practitioners writing a disproportionate share of the prescriptions for controlled substances being filled by the pharmacy?

8. Does the pharmacy offer to sell controlled substances without a prescription?

9. Does the pharmacy charge reasonable prices for controlled substances?

10. Does the pharmacy accept insurance payment for purchases of controlled substances made via the Internet?

These questions are not all-inclusive; nor will the answer to any of these questions necessarily determine whether a suspicious order is indicative of diversion to other than legitimate medical channels. Distributors should consider the totality of the circumstances when evaluating an order for controlled substances, just as DEA will do when determining whether the filling of an order is consistent with the public interest within the meaning of 21 U.S.C. 823(e).

Page 4

We look forward to continuing to work in cooperation with distributors toward our mutual goal of preventing the diversion of pharmaceutical controlled substances.

Sincerely,

Joseph T. Rannazzisi
Deputy Assistant Administrator
Office of Diversion Control

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER