UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br>*This document relates to:*<br>**Track Three Cases** | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster |

**PLAINTIFFS' OPPOSITION TO GIANT EAGLE'S BENCH
MEMORANDUM REGARDING INCIDENTS OF EMPLOYEE THEFT**

Giant Eagle has filed a bench brief seeking a ruling that certain settlement agreements between it (or its pharmacists) and the Ohio Board of Pharmacy ("Ohio BOP") are inadmissible because they are irrelevant and unfairly prejudicial. Giant Eagle's arguments should be rejected. Giant Eagle has opened the door to this evidence through statements of its counsel, as well as the testimony of Giant Eagle's Head of Pharmacy, James Tsipakis.

## BACKGROUND

### A. Giant Eagle's opening statements.

During Giant Eagle's opening statements, its counsel emphatically touted the character of Giant Eagle as a company, as well as the character of its pharmacists. She also repeatedly emphasized that the Ohio BOP found no issues with, and even endorsed, Giant Eagle's dispensing practices.

First, Giant Eagle's counsel introduced one of Giant Eagle's pharmacists, Emily Mooney, to the jury and touted the character of all of Giant Eagle's pharmacists:

> And Emily stands here on behalf of the folks at Giant Eagle, and particularly on behalf of the pharmacists at Giant Eagle in Lake and Trumbull County, against whom they have made some of the most horrible allegations that pharmacists and these stores, her store is at the heart of this lawsuit, one of the stores at the heart of

> this lawsuit, and they have made some painful reputation-ruining allegations against these pharmacists, that pharmacists like her who are doing their her [sic] best to help their community, get medicines to them, answer their questions, help their customers, that pharmacists like her have caused the opioid epidemic, have addicted their community, have ruined lives.

***

> And so she stands here for those people at the Giant Eagle pharmacy who work so hard to try to do good jobs for their communities.

Dkt. #3995 (10/5/21 Trial Tr.) at 216:22 – 219:17; *see also id.* at 239:25 – 240:6 ("They stand behind their pharmacists.  Pharmacists, like Emily Mooney and her colleagues that try to do the best they can to get medicines to people, protect the community.  The last thing they want to do is cause opioid addiction, hurt people in the community where they're building their family, raising their kids.").

She further touted Giant Eagle's reputation as a family company who has done nothing wrong:

> And so when they say these pharmacies did something bad here, these pharmacies did something wrong, say, well, you know what?  That's not Giant Eagle. . . .
>
> And Giant Eagle is a family company, family-owned.  They have been in business for over a hundred years.  They're still run by the next generation of the same family.  And when you're a family company, your reputation, your good name, is critical to you. . . .
>
> Giant Eagle has been here for the people of Ohio for over 80 years.  They have been in business for over a hundred in Pennsylvania.  There was Giant Eagle before there was automobiles.  When there were horses, there were Giant Eagle stores, groceries and pharmacies.
>
> And they've been here for the people of Ohio for over 80 years, through the Great Depression, through the unrest of the 60s, through the strife of the last three years, through the pandemic.
>
> They are grocery workers, they are pharmacists, they are specialty workers here in the community and when we needed them most, they are still here today.
>
> They are one of the biggest employers in the State of Ohio.  They employ 19,000 people.  And by and large, I think you're going to see they're a good company.  Not perfect.  And a lot of the other things they talked about, about Giant Eagle – I mean that they talked about, about the other pharmacies don't apply to Giant Eagle.

2

*Id*. at 232:6 – 233:15.

Finally, she emphasized that the Ohio BOP not only gave its pharmacies in the Counties clean inspections (*id*. at 242:3 – 243:1), but also endorsed Giant Eagle's controls and dispensing practices. *Id.* at 243:2-18 ("And you're going to hear some of that evidence, some of the testimony, that they had better controls, more or better controls than required by law.  This is from the Board of Pharmacy.  Complied with Ohio security and recordkeeping, complied with the law, operated lawfully.  Some testimony from a Government agent who inspected Giant Eagle facilities you'll hear, he was asked did you at any time believe that Giant Eagle was itself violating any of the pharmacy rules and regulations and causing diversion?  No.  It's easy to bring high-priced experts in to try to make a case, but I submit to you sometimes the best witnesses are the ones that are not in the case.  Independent Government witnesses who are on the ground looking at Giant Eagle trying to protect the citizens of Ohio, finding that they complied with the law."), 246:15-21 ("So that's why when we sit here at Giant Eagle, we say we had all these inspectors, the Federal Government, the State Government, the DEA, the AG from the state, several times from the Feds and they say we're doing good, we're complying with the law . . ."), 247:5-8 ("So if you find at the end of the case that, in fact, that the Board of Pharmacy and the DEA found again and again that Giant Eagle was complying with the law, well, that's a full defense."), 251:22 – 252:3 ("And ask yourself if they are right and Giant Eagle violated the law, why again and again people who have real interest in this case, the people from the Board of Pharmacy, people trying to do their jobs, the federal agents who inspected Giant Eagle and Giant Eagle and said you're complying with the law, the evidence in this case and your common sense will get you the truth.").

### B. Testimony of James Tsipakis.

On October 28, 2021, Defendants introduced and played for the jury deposition testimony of James Tsipakis, the Head of Pharmacy for Giant Eagle, who testified as the corporate representative of HBC. Among other topics, Mr. Tsipakis testified, over Plaintiffs' objection, about communications between Giant Eagle, the DEA, and State Boards of Pharmacies. Specifically, Mr. Tsipakis testified that Giant Eagle had a "cooperative working relationship" with "local law enforcement, police, Board of Pharmacy inspectors, [and] DEA agents." Dkt. #4041 (10/18/21 Trial Tr.) at 2664:3-8. Mr. Tsipakis went on to testify that Giant Eagle employs a "pharmacy investigator" who has "a lot of experience…in law enforcement, Attorney General's office…the DEA, boards of pharmacy." *Id.* at 2664:13-25. According to the testimony the investigator disseminates information to the stores based on specific knowledge of wrongdoing he learns about, such as if something is stolen, including when hydrocodone is involved. *Id.* at 2665:1-22. Mr. Tsipakis also testified, over objection, that there was no evidence of diversion or illegitimate prescriptions. *Id.* at 2666:18 – 2667:3.

## LEGAL STANDARD

It is well established in the Sixth Circuit that when a party opens up a subject at trial, that party cannot complain "'if the opposing party introduces evidence on the same subject.'" *United States v. Bender*, 265 F.3d 464, 471 (6th Cir. 2001) (citation omitted). *See also Fathera v. Smyrna Police Dep't*, 646 F. App'x 395, 401 (6th Cir. 2016); *Hickson Corp. v. Norfolk S. Ry. Co.*, 124 F. App'x 336, 341–42 (6th Cir. 2005) ("Norfolk Southern waived the right to challenge the admissibility of portions of the National Transportation Safety Board report introduced by Hickson because it knowingly 'opened the door' to such admission."); *Zieman v. City of Detroit*, 81 F.3d 162, 1996 WL 140328, at *4 (6th Cir. 1996). In particular, when a party "opens the door" on an

issue, the opposing party, in the court's discretion, may "'introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission.'"  *United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994) (citations omitted).  *See also Hickson Corp. v. Norfolk S. Ry. Co.*, 124 F. App'x 336, 341–42 (6th Cir. 2005); *Zieman*, 1996 WL 140328, at *4.  Notably, a party may "open the door to rebuttal evidence through 'statements made during his or her oral argument.'"  *Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500, 509 (6th Cir. 2012) (citation omitted).  *See also Fathera*, 646 F. App'x at 401; *Zieman*, 1996 WL 140328, at *4.  Even "'evidence whose probative value might not be thought to outweigh its prejudicial effect if offered on direct examination may well be admitted during redirect examination'" for these purposes. *Segines*, 17 F.3d at 856 (citation omitted).  For example, "[w]hen a party offers evidence of his good character, he opens the door for the opponent to admit rebuttal evidence of his prior bad acts."  *Helfrich*, 497 F. App'x at 509.[1]

---

[1] *See also Bender*, 265 F.3d at 471 ("We conclude that the district court did not abuse its discretion in allowing the government to impeach Bender's credibility with evidence of her prior conviction. Bender's statements on direct examination that she had never sold drugs and did not begin using them until 1992 opened the door to bringing into evidence the nature of her prior conviction for conspiracy to distribute and possession with intent to distribute cocaine."); *Hickson*, 124 F. App'x at 343 ("Under [Federal] Rule [of Evidence] 405, once a party 'opens the door' to reputation or character evidence on direct examination, inquiry is allowed into 'relevant specific instances of conduct' that rebut or impeach that evidence."); *Sec. & Exch. Comm'n v. Jacobs*, No. 1:13 CV 1289, 2014 WL 12597832, at *3 (N.D. Ohio Feb. 25, 2014) (granting MIL to exclude character testimony, but noting that "[i]f Defendants' character for truthfulness is attacked at trial, the court will reconsider admitting evidence of Defendants' character for truthfulness at that time"); *Fathera v. Schoon*, No. 3:10-1013, 2015 WL 13034504, at *7 (M.D. Tenn. June 23, 2015) ("The Court ruled that Plaintiff's own prior reference to his criminal record as 'abysmal,' and to his 'bad character' had opened the door to questions concerning that criminal record.  Such was not error.  That ruling was correct.") (internal citation omitted), *aff'd sub nom. Fathera*, 646 F. App'x 395; *Baskin v. Pepsi MidAmerica Co.*, No. 5:13-CV-00030-TBR, 2015 WL 363906, at *1 (W.D. Ky. Jan. 27, 2015) (same; "Should Baskin attempt to establish his good character through testimony and argument, he will thus open the door to rebuttal character evidence.").

5

**ARGUMENT**

The extensive statements of Giant Eagle's counsel during opening arguments, along with the testimony of Mr. Tsipakis, touting the character and conduct of Giant Eagle and its pharmacists and emphasizing the Ohio BOP's purported approval of its dispensing policies and failure to find evidence of diversion, "opens the door" for Plaintiffs to introduce contradictory evidence that some of Giant Eagle's Ohio pharmacists have, in fact, contributed to diversion and that the Ohio BOP has taken action against Giant Eagle and/or its pharmacists on at least three instances for this misconduct.

First, on or about March 9, 2016, the Ohio BOP initiated an investigation of Giant Eagle Pharmacy #6501 located in Columbus, Ohio. Dkt. #4081-3 (P-15047) at 002. The Board issued a "Notice of Opportunity for Hearing Proposal to Take Disciplinary Action Against Licensee," and alleged that Giant Eagle and one of its pharmacists "were aware of significant losses of controlled substances and failed to notify the Board." *Id*. at 006. On September 12, 2017, the Ohio BOP entered into a settlement agreement with Giant Eagle Pharmacy #6501 in Columbus, OH, and its pharmacist Shawna Ricker, RPh, of New Albany, OH. *Id*. at 001. In the agreement, Giant Eagle Pharmacy #6501 and Ricker neither admitted nor denied allegations against them, but the Ohio BOP found sufficient evidence to sustain allegations against them. *Id*. at 002. As a consequence, Giant Eagle Pharmacy #6501 agreed to:

   a. Continue training staff in Best Practices, quarterly education meetings, and training pharmacy staff in loss prevention measures, including inventory, record keeping and security of controlled substances.

   b. Continue training pharmacy staff on the company's controlled substance dispensing guidelines and other policies and procedures for the filing and dispensing of prescriptions for controlled substances and to the periodically review and revise such policies as appropriate.

   c. Continue to evaluate and monitor the pharmacy's physical theft/loss prevention measures, which include, but are not limited to the following:

      a. Delivery personnel are escorted in and out of the pharmacy premises;

      b. Cell phones are placed on silent and kept only in designated locations;

      c. Personal belongings are stored in clear containers within designated area [that] is under constant video surveillance;

      d. Smocks cannot be worn outside pharmacy; and

      e. All controlled substances will be segregated in the order received and are verified against the invoice by a pharmacist.

   d. Require Giant Eagle Pharmacy #6501 pharmacists to complete and/or repeat DEA continuing education on controlled substances; and

   e. Continue to perform regularly internal audits on controlled substance compliance with federal and state laws and regulations as well as compliance with company policies and procedures.

*Id.* at 002-003. In addition, Giant Eagle #6501 agreed to pay fines and costs associated with the Agreement and withdrew its request for hearing in the matter. *Id*. at 002, 004.

A similar incident was memorialized by the Ohio BOP in November 2, 2009, when it adopted an order in the matter of Justin Allen Bracken, R. Ph. (03-2-26310). Dkt. #4081-1 (P-20751) at 012. The Ohio BOP found that from April 30, 2007 to May 20, 2009, Bracken, a pharmacist for Giant Eagle #4152, stole and diverted various controlled substances, including hydrocodone, from Giant Eagle in order to supply his own addiction. *Id*. at 012. The Ohio BOP additionally found that Bracken "failed to provide supervision and control and adequate safeguard over [the listed] Giant Eagle #4152 dangerous drug stocks" that were ultimately diverted. *Id*. at 015. This list of products includes, among numerous other controlled substances, 513 500mg tablets and 706 750mg tablets of hydrocodone. *Id*. at 016. In total the Ohio BOP found that Bracken diverted more than 3,300 pills of controlled substances from Giant Eagle #4152. *Id*. at 015-16. As a result, the Ohio BOP indefinitely suspended Bracken's pharmacist identification card and imposed monetary fines.

7

Finally, a third incident was memorialized in a 2011 settlement between the Ohio BOP and Giant Eagle after a Giant Eagle technician admitted drugs, including hydrocodone were stolen and diverted to her addicted husband and another individual. Dkt. #4081-2 (P-20752) at 004-005. The Ohio BOP alleged that Giant Eagle failed to provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs. *Id.* at 005-006. Giant Eagle neither admitted or denied the allegations, but agreed to implement responsive policies and pay a monetary fine, allowing the settlement to become public record and waiving its right to a formal hearing. *Id.* at 006-007.

These documents directly contradict the opening statements of Giant Eagle's counsel, along with the testimony of Mr. Tsipakis, (i) that Giant Eagle is a family company that did nothing wrong, (ii) that its pharmacists were of stellar character, acted only to help and protect the community, and never contributed to diversion, and (iii) that the Ohio BOP repeatedly blessed Giant Eagle's dispensing practices and never found any violations. Having put these matters at issue, the probative value of these settlements certainly now outweighs any potential prejudice. *See, e.g., Segines*, 17 F.3d at 856 ("'evidence whose probative value might not be thought to outweigh its prejudicial effect if offered on direct examination may well be admitted during redirect examination'") (citation omitted); *Helfrich*, 497 F. App'x at 509 ("When a party offers evidence of his good character, he opens the door for the opponent to admit rebuttal evidence of his prior bad acts."); *supra* at fn. 1.

## CONCLUSION

For the foregoing reasons, Plaintiff should be allowed to introduce the settlements discussed herein into evidence.

Dated:  October 26, 2021					Respectfully submitted,

                                          Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

W. Mark Lanier
LANIER LAW FIRM
10940 W. Sam Houston Pkwy N., Ste 100
Houston, TX  77064
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Trial Counsel*

>*/s/ Peter H. Weinberger*
>Peter H. Weinberger (0022076)
>SPANGENBERG SHIBLEY & LIBER
>1001 Lakeside Avenue East, Suite 1700
>Cleveland, OH  44114
>(216) 696-3232
>(216) 696-3924 (Fax)
>pweinberger@spanglaw.com
>
>*Plaintiffs' Liaison Counsel*
>
>Frank L. Gallucci
>PLEVIN & GALLUCCI CO., L.P.A.
>55 Public Square, Suite 222
>Cleveland, OH 44113 (216)
>861-0804
>(216) 861-5322 (Fax)
>FGallucci@pglawyer.com
>
>Hunter J. Shkolnik
>NAPOLI SHKOLNIK
>270 Munoz Rivera Avenue, Suite 201
>Hato Rey, Puerto Rico 00918
>(787) 493-5088, Ext. 2007
>hunter@napolilaw.com
>
>*Counsel for Plaintiffs Lake County and Trumbull County, Ohio*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

>*/s/Peter H. Weinberger*
>Peter H. Weinberger