UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>**This document relates to**:<br><br>*Track Three Cases* | MDL No. 2804<br>Case No. 17-md-2804<br>Judge Dan Aaron Polster |

## GIANT EAGLE'S ADDITIONAL BRIEFING ON COURT RULING REGARDING THE ADMISSIBILITY OF OHIO BOARD OF PHARMACY SETTLEMENTS

Giant Eagle submits this additional briefing in support of its Bench Memorandum Regarding Incidents of Employee Theft (Doc. # 4081), in which Giant Eagle asked the Court to exclude evidence of three Settlement Agreements with the Ohio Board of Pharmacy ("Ohio BOP") relating to allegations of employee theft and product loss from Giant Eagle pharmacies outside of Lake and Trumbull Counties ("Settlements").  Plaintiffs opposed Giant Eagle's request (Doc. # 4086).

Giant Eagle understands from the Court's oral ruling on October 26, 2021 that the Court's position is that "ordinarily [the Settlements] wouldn't be admissible," but the Court will allow limited questioning on the Settlements based on what the Court said were "very broad statements about your pharmacists" during opening arguments and because the Settlements are "relevant to counter what [counsel] said."  *See* 10/26/21 Tr. at 4304-4309.  The Court did indicate, however, that it would give a "limiting instruction" relating to the Settlements.  Giant Eagle recognizes the Court's ruling but submits this additional briefing to complete the record and to respond to what are obvious misrepresentations in Plaintiffs' Opposition.

I. **Giant Eagle did not "open the door" to allow for the admission into evidence of irrelevant and prejudicial Settlement Agreements**

Plaintiffs argue that Giant Eagle "opened the door" to the Settlements in two ways: 1) statements by counsel during opening argument; and 2) testimony from Jim Tsipakis (played to the jury on October 18, 2021). Plaintiffs are wrong on both counts.

A. **Giant Eagle did not "open the door" to the Settlements during opening argument**

Giant Eagle's opening argument was very specific that the Ohio Board of Pharmacy conducted random inspections of "[t]he Lake and Trumbull County Giant Eagle pharmacies" 88 times, that 70 of those inspections were "clean," and the remaining times the Ohio BOP had "questions" that were resolved. To give the Court full context, here is counsel's complete statement at issue:

> Another fact that makes Giant Eagle different in this case is that not only didn't Giant Eagle ever have any drug enforcement actions from the Federal Government, you're going to hear that the State Board of Ohio does random inspections of the pharmacies. In other words, agents just show up unexpected to your pharmacy and they cull through your records and see whether you're doing something wrong, whether there's illegal dispensing or you're making mistakes. **The Lake and Trumbull Giant Eagle pharmacies were inspected during the time frame in this case 88 times. 88 times. 70 or so times, no question at all, clean inspection. A couple of times, 20 or so, they had questions.** They give you I think it's called a pink slip. You'll hear about it. They give you notice that we had questions about this and here's this issue and you have two weeks to explain it or fix it. **Every single time Giant Eagle, satisfactory inspection, 88 times.** Now, these are independent inspectors. Not people filing lawsuits, not paid experts for lawsuits. People that are doing their jobs trying to protect the community. And the people on the ground looking at Giant Eagle said again and again you're doing fine. And you're going to hear some of that evidence, some of the testimony, that they had better controls, more or better controls than required by law. This is from the Board of Pharmacy. Complied with Ohio security and recordkeeping, complied with the law, operated lawfully. **Some testimony from a Government agent who inspected Giant Eagle facilities you'll hear, he was asked did you at any time believe that Giant Eagle was itself**

2

>  **violating any of the pharmacy rules and regulations and causing diversion? No**.

Doc. # 3995 (10/5/21 Trial Tr.) at 242:3-243:7 (emphasis added).  These statements are clearly made as part of a discussion of inspections that occurred <u>of the pharmacies in Lake and Trumbull Counties</u>.  Nothing about counsel's opening argument remotely implicates out-of-county inspections, let alone out-of-county settlements that have no nexus to Lake County or Trumbull County and which do not involve the type of conduct at issue in this case.

Lest there be any doubt, the slides shown to the jury contemporaneously with the opening argument make it clear that counsel was referring specifically to inspections of Lake and Trumbull Counties and was <u>not</u> making any broader statement suggesting that Giant Eagle *never* entered into any settlements with the Ohio Board of Pharmacy on unrelated conduct.



Source: Slide 20 of Giant Eagle's Opening Argument.

3

Turning to the specifics of Plaintiffs' Opposition, it amounts to a general complaint that Giant Eagle introduced itself to the jury and noted that it has been a corporate citizen of Ohio for over 80 years.  This is background information that parties in all types of trials routinely present to juries, and it is hardly a sufficient basis to allow Plaintiffs to introduce Settlements that are irrelevant and prejudicial.  Plaintiffs essentially complain about three things from Giant Eagle's opening argument:

**First**, Plaintiffs argue that Giant Eagle's introduction of its corporate representative at trial, a pharmacist named Emily Mooney, opens the door to otherwise irrelevant and prejudicial settlement agreements from other counties.  Doc. # 4086 at 1-2.  Far from it.  Counsel for Giant Eagle clearly introduced Ms. Mooney as there on behalf of the pharmacies and pharmacists *in Lake and Trumbull County*.  Doc. # 4086 at 1-2 (discussing Doc. # 3995 (10/5/21 Trial Tr.) at 216:22-219:17 ("And Emily stands here on behalf of the folks at Giant Eagle, and particularly on behalf of the pharmacists at Giant Eagle *in Lake and Trumbull County*…."))  Of course, none of the Settlements have anything to do with Lake or Trumbull County (or Ms. Mooney)—they involve pharmacies and/or pharmacists in other counties.[1]

**Second**, Plaintiffs argue that Giant Eagle's counsel "touted Giant Eagle's reputation as a family company who has done nothing wrong," (Doc. # 4086 at 2) but that is not what counsel said.  Counsel merely introduced the client, Giant Eagle, as a family-owned corporate citizen of Ohio for over 80 years.  Doc. # 3995 (10/5/21 Trial Tr. at 232:6-233:15).  Counsel never said that Giant Eagle "has done nothing wrong."  Doc. # 4086 at 2.  Rather, counsel contrasted Plaintiffs' evidence against other defendants with Plaintiffs' lack of evidence against Giant Eagle. Doc. # 3995 (10/5/21 Trial Tr. at 233:10-15 ("And by and large, I think you're going to see they're a

---

[1] Plaintiffs first introduced Emily Mooney to the jury as a "real nice pharmacist from Giant Eagle … and she just seems to be so nice and polite as she stood up and greeted us all."  Doc. # 3991 (10/4/21 Trial Tr. at 58:17-19).

good company. Not perfect. And a lot of the other things they talked about … about the other pharmacies don't apply to Giant Eagle.")). This is hardly a blanket statement that Giant Eagle never did anything wrong; rather, it makes the simple point—supported by the Court's instructions—that evidence against *other* defendants does not apply to Giant Eagle. *See* Doc. # 3991 (10/4/21 Trial Tr. at 23:21-24 ("And remember, you must consider the evidence against each of the four defendants separately, and you'll be asked to make a separate decision at the end of the case.")).[2]

**Third**, with respect to counsel purportedly "emphasiz[ing] that the Ohio BOP not only gave its pharmacies in the Counties clean inspections … but also endorsed Giant Eagle's controls and dispensing," Doc. # 4086 at 3 (citing Doc. # 3995 (10/15/21 Trial Tr. at 242:3-243:1), the key phrase, as shown in the full remarks quoted above and on the related slide, is **"in the Counties**." Giant Eagle's counsel is simply stating what the actual relevant evidence from these two counties will show—namely, that Ohio BOP agents inspected the pharmacies in the two counties 88 times, and never found dispensing problems that are even close to rising to the level of a public nuisance. These statements have nothing to do with unrelated Settlements in other counties.

**B. Jim Tsipakis' testimony did not open the door to admission of the Settlements**

While the Court's bench ruling focused exclusively on counsel's statements in opening argument as the basis for admitting the Settlements, Giant Eagle will briefly address Plaintiffs' additional rationale for admission—namely, that Jim Tsipakis' testimony played in court on October 15, 2021 opened the door to the Settlements. *See* Doc. # 4086 at 4. Mr. Tsipakis' testimony hardly supports the "opening the door" argument; in fact, Plaintiffs are blatantly misrepresenting the testimony to the Court.

---

[2] Plaintiffs also first introduced Giant Eagle as a family company "around for four generations." Doc. # 3991 (10/4/21 Trial Tr. at 59:10-25).

5

Plaintiffs complain about three things from Mr. Tsipakis' testimony.

**First**, Plaintiffs cite Tsipakis' testimony that Giant Eagle had a "cooperative working relationship" with "local law enforcement, police, Board of Pharmacy inspectors, [and] DEA agents." Doc. # 4086 at 4 (citing Dkt. #4041 (10/18/21 Trial Tr.) at 2664:3-8). The three Settlements have no bearing on this assertion, and certainly do not *contradict* or impeach Mr. Tsipakis' testimony. If anything, they support the testimony by showing that Giant Eagle *cooperated* with law enforcement to investigate incidents of employee theft.

**Second**, Plaintiffs argue that Mr. Tsipakis opened the door to the Settlements by testifying about how Giant Eagle employs a "pharmacy investigator" who, according to Plaintiffs' misleading description, "disseminates information to the stores based on specific knowledge of wrongdoing he learns about, such as if something is stolen, including when hydrocodone is involved." Doc. # 4086 at 4. To put it bluntly, this is a false portrayal of Mr. Tsipakis' testimony. In this exchange, Mr. Tsipakis is discussing how Giant Eagle's pharmacy investigator works with local law enforcement to issue a BOLO—Be on The Lookout—when there is a ***stolen prescription pad*** presented by a patient Doc. # 4041 (10/18/21 Trial Tr.) at 2665:6-14 ("So he will send out bulletins to the pharmacists when either law enforcement will tell him that there's bad scripts on the street **or a prescription pad, for example, if it's stolen or something** …) (emphasis added)). Mr. Tsipakis was *not* testifying about an employee stealing product from a pharmacy's inventory, and it is misleading for Plaintiffs to suggest otherwise.

**Third**, Plaintiffs misrepresent Mr. Tsipakis' testimony by arguing that he "also testified, over objection, that there was no evidence of diversion or illegitimate prescriptions." Doc. # 4086 at 4 (citing Doc. # 4041 (10/18/21 Trial Tr.) at 2666:18 – 2667:3). This, too, is an outright misrepresentation of the testimony. Here is the full exchange cited:

6

> Q. In fact, what has HBC's and Giant Eagle's experience been <u>with respect to so-called suspicious orders or flagged orders</u>? Have they resulted in uncovering diversion?
>
> A. No.
>
> Q. <u>In your direct questioning today</u>, were you shown at any time any evidence, any document, any piece of paper by plaintiffs' counsel suggesting that any single one of these prescriptions was anything other than a legitimate prescription issued by a doctor who had a legitimate license to issue it?
>
> A. No.

2666:18-2667:3 (emphasis added). Mr. Tsipakis' testimony is limited to the fact that Giant Eagle did not uncover diversion "with respect to so-called suspicious orders or flagged orders"—i.e., from the type of conduct actually at issue in this case—which, of course, is *entirely distinct from* uncovering diversion from employee theft. Moreover, Mr. Tsipakis is not testifying in this exchange (or any other) that no diversion *ever* occurred at any Giant Eagle pharmacy in any location; rather, he is testifying that Plaintiffs, during their "direct questioning" of him at his Track One deposition, had not shown him evidence that "any single one of these <u>prescriptions</u> was anything other than a legitimate prescription issued by a doctor who had a legitimate license to issue it." The Settlements involve employee theft, and have nothing to do with prescriptions, legitimate or otherwise.

## II. The cases Plaintiffs cite to support their "opening the door" argument are not on point

Plaintiffs cite to many cases purportedly to support their argument that Giant Eagle "opened the door" to admission of these irrelevant and prejudicial Settlements, but none of the cases provide any support. *See* Doc. # 4086 at 4-5 (citing cases).

- In the criminal case *United States v. Bender*, 265 F.3d 464, 471 (6th Cir. 2001), the district court allowed government to impeach defendant's credibility ***with evidence of***

7

*her prior conviction*.  The defendant had specifically testified that she had never sold drugs, which opened the door for evidence of her prior conviction for conspiracy to distribute.  Here, by contrast, Giant Eagle is not even a party to one of the Settlement Agreements (*Bracken*), and Giant Eagle never admitted liability in the other two (*Chappell* and *Ricker*).  Moreover, and as explained above, Giant Eagle did not offer argument or testimony that it never entered into settlements with the Ohio BOP.

- In *Fathera v. Smyrna Police Dep't*, 646 F. App'x 395, 401 (6th Cir. 2016) (unpublished), the plaintiff, in opening statements, introduced his *own criminal convictions*.  The Court held that he could not later complain about the defendant introducing more details about the convictions.  This fact pattern bears no resemblance to the present matter.

- *In Hickson Corp. v. Norfolk S. Ry.*, 124 Fed. Appx. 336, 341-42 (6th Cir. 2005) (unpublished), the defendant introduced a letter from the National Transportation Safety Board, in which the NTSB praised the defendant's conduct in response to the specific hazardous waste spill that was the subject of the lawsuit.  The court then allowed the plaintiff to introduce a different report from the NTSB in which the agency criticized the defendant's response to the spill.  The Sixth Circuit held that because the defendant had specifically introduced one agency communication about a specific incident, the plaintiff could introduce a different communication about that <u>same incident</u> even though both letters were hearsay and should have been excluded.  Unlike the present case, where Plaintiffs are trying to introduce irrelevant and isolated incidents from outside of the jurisdictions that have nothing to do with the conduct at

8

issue in this case, the NTSB correspondence specifically related to the exact incident which was the centerpiece of the civil litigation.

- In *Zieman v. City of Detroit*, 1996 WL 140328, 1996 U.S. App. LEXIS 10124, *11-13 (6th Cir. 1996), the plaintiff had been arrested for disorderly conduct, and later sued the city for false arrest and other claims.  In defense, the city argued that that plaintiff was trying to prevent the defendants from arresting her mother pursuant to an arrest warrant.  During her case in chief, the plaintiff challenged the basis for the arrest warrant for her mother (going so far as to say that she was going to show that it was without probable cause) even though it was immaterial to the civil claims against the city.  Because the plaintiff opened the door to evidence about the arrest warrant, the court allowed the defendants to introduce evidence as to the circumstances of the mother's arrest warrant.

- In *Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500, 509 (6th Cir. 2012) (unpublished), an arrestee sued claiming that police used excessive force.  The plaintiff opened the door to testimony about a prior arrest by testifying extensively about his exemplary character and how being arrested was contrary to how he was viewed by his family (who witnessed the arrest).  The district court allowed him to be cross-examined on whether he had previously been arrested.  This is easily distinguishable from the present case, as Giant Eagle has never contended that it has *never* done anything wrong in its 80+ years of existence.  It has only contended that there is no evidence in these two counties that Giant Eagle ever engaged in unlawful dispensing.

- Finally, in *Baskin v. Pepsi MidAmerica Co.*, No. 5:13-cv-00030-TBR, 2015 WL 363906, 2015 U.S. Dist. LEXIS 8868, at *2-3 (W.D. Ky. Jan. 26, 2015), the court

9

granted plaintiff's motion in limine to exclude is criminal record, noting only that the outcome could change if the plaintiff opened the door. This has no relevance here where, for the reasons discussed above, Giant Eagle has not opened the door.[3]

Dated: October 26, 2021                    Respectfully submitted,

/s/ Robert M. Barnes
Robert M. Barnes
*rbarnes@marcus-shapira.com*
Scott D. Livingston
*livingston@marcus-shapira.com*
Joshua A. Kobrin
*kobrin@marcus-shapira.com*
Daniel J. Stuart
*stuart@marcus-shapira.com*

MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre
301 Grant Street
Pittsburgh, PA  15219
Telephone: (412) 471-3490
Facsimile: (412) 391-8758

Diane P. Sullivan
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, NJ 08542
Telephone:  (609) 986-1100
*diane.sullivan@weil.com*
*Admitted pro hac vice*

Chantale Fiebig
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7200
*Chantale.Fiebig@Weil.com*
*Admitted pro hac vice*

*Counsel for Defendants HBC Service Company and Giant Eagle, Inc.*

---

[3] The criminal case of *United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994) involves alleged witness bias in a criminal case and is so far afield of the present matter that it warrants no discussion.

## **CERTIFICATE OF SERVICE**

I hereby certify that, this 26th day of October, 2021, I served a copy of the foregoing via the Court's ECF system to all counsel of record.

/s/ *Robert M. Barnes*
Robert M. Barnes