

**Dwayne Pinon/Corp/Walgreens**
06/28/2010 09:30 AM

To  Cheryl Creek/Corp/Walgreens@Walgreens, Al Carter/Corp/Walgreens@Walgreens, Tomson George/Corp/Walgreens@Walgreens
cc  Tasha Polster/Corp/Walgreens@Walgreens, deborah.platts@walgreens.com
bcc
Subject  Fw: DEA issue at 6094

Per Tasha's request below, the attached contains the DEA guidelines for identifying a fictitious Rx which can be streamlined and incorporated into the training piece.  We can discuss at your convenience.  Thanks.

Dwayne A. Pinon, R.Ph.
Senior Attorney, Litigation & Regulatory Law
Walgreen Co.
104 Wilmot Road, MS #1434
Deerfield, IL 60015
(847) 315-4452
(847) 315-4660 (fax)

This message and any attachments are confidential attorney work product and may also be protected by the attorney-client privilege.  If you have received this message and are not the intended recipient, please delete the information and contact the sender at dwayne.pinon@walgreens.com.



DEA Guidelines for fraudulent prescriptions 0610.doc
----- Forwarded by Dwayne Pinon/Corp/Walgreens on 06/28/2010 05:39 AM -----



**Tasha Polster/Corp/Walgreens**
06/27/2010 05:02 PM

To  "Cheryl Creek" <cheryl.creek@walgreens.com>, Tomson George/Corp/Walgreens@Walgreens, Al Carter/Corp/Walgreens@Walgreens
cc  Deborah Platts, Dwayne Pinon, Karl Meehan/WHP/Walgreens@Walgreens, Brad Wasson/OPS/Walgreens
Subject  Fw: DEA issue at 6094

Cheryl, Tomson and Al-

We are having to enter into an agreement with the DEA based on an issue in a California store.  The document attached is what the DEA wants us to agree to.  When you open the attachment it has various sections lettered a thru m.  Debbie has added a few things in blue.  Below is what we need to accomplish.  I will only put the sections we need to work on.

c.  Cheryl, Al -  "periodic training of all Walgreens retail employees for dispensing controlled substances."
        No such training exists today.  We're looking for ideas of what we could do.  A yearly PPL, add something to the code of conduct? Maybe you guys can come up with something else that we didn't think of?
        **in the meantime**: A powerpoint will need to be put together, that contains the elements that Dwayne will send in a separate document.  The ppt will be presented at a Market Leadership videoconference or live meeting (depending on timing) with instructions to cascade the information down to store level.

d.  Al- this is what Dwayne and I spoke to you about last Friday.  A policy/procedure will need to be put together that explains how the store should fax the DEA a copy of the forged controlled substance prescription that the store refused to fill.

e.  Tomson-  Dwayne mentioned that he got back with you on the state by state procedures of how

PLAINTIFFS TRIAL EXHIBIT

P-19566_00001

selling controlled substances. That was a request from the audit department last year, is that done and posted? If not, when can you get this completed?

f. Cheryl - this one could be tied to 'c' above, include it in the ppt and the training.

g. Al or Cheryl- can one of you put together brief bullet points for me on exactly what a store does to verify a DEA number that shows up on the Governmental NTIS report?

j. Tomson- we need info from you on this one, it relates to PMP

m. Cheryl - add this one to the ppt training

Please touch base with Dwayne in the next week or two and get the info you need if you have questions. Work with Laura to schedule a meeting with you 3, Dwayne, Debbie and me (Karl you are welcome if you want to attend) to update us where you are at sometime the week of July 19.

thanks,
Tasha

----- Forwarded by Tasha Polster/Corp/Walgreens on 06/27/2010 04:36 PM -----



**Deborah Platts/West/OPS/Walgreens**

06/23/2010 11:38 AM

To  Tasha Polster/Corp/Walgreens, Dwayne Pinon/Corp/Walgreens@Walgreens

cc  Brad Wasson

Subject  DEA issue at 6094

Tasha and Dwayne,
I did a little research since our last meeting and put in blue in the attached document where I think we are, or are not, covered with this DEA issue. I wanted to give you a chance to review before our meeting on Friday. Hopefully we can wrap this up soon and review our recommendation with Brad.
dp



DEA 6094.doc

Deborah Platts, RPh
Executive Director, Pharmacy Operations
Walgreens
200 Wilmot Rd- MS 2194
Deerfield, Il 60015
O: 847-914-3605
C: 224-723-3608

### Your Responsibilities

The abuse of prescription drugs—especially controlled substances—is a serious social and health problem in the United States today. As a healthcare professional, you share responsibility for solving the prescription drug abuse and diversion problem.

You have a legal responsibility to acquaint yourself with the state and Federal requirements for dispensing controlled substances. You also have a legal and ethical responsibility to uphold these laws and to help protect society from drug abuse.

You have a personal responsibility to protect your practice from becoming an easy target for drug diversion. You must become aware of the potential situations where drug diversion can occur and safeguards that can be enacted to prevent this diversion.

The dispensing pharmacist must maintain a constant vigilance against forged or altered prescriptions. The law holds the pharmacist responsible for knowingly dispensing a prescription that was not issued in the usual course of professional treatment.

This guide will help you meet these responsibilities.

### Types of Fraudulent Prescriptions

The practiced forger of prescriptions is usually very adept at the job. The forger knows what information is needed on the prescription to make it appear authentic. Pharmacists should be aware of the various kinds of forged prescriptions that may be presented for dispensing.

Some patients, in an effort to obtain additional amounts of legitimately prescribed drugs, alter the physician's prescription. They will also have prescription pads printed using a legitimate doctor's name, but with a different call back number that is answered by an accomplice to verify the prescription. Also, drug seeking individuals will call in their own prescriptions and give their own telephone number as a call back confirmation.

Legitimate prescription pads are stolen from physicians' offices and hospitals and prescriptions are written using fictitious patients names and addresses. In addition, individuals will go to emergency rooms complaining of pain in the hopes of receiving a controlled substance prescription. The prescription can then be altered or copied to be used again. Computers are often used to create prescriptions for nonexistent doctors or to copy legitimate doctors' prescriptions.

**Note**: The quantity of drugs prescribed and frequency of prescriptions filled are not alone indications of fraud or improper prescribing especially if the patient is being treated with opioids for pain management. Pharmacists should also recognize that drug tolerance and physical dependence may develop as a consequence of the patient's sustained use of opioid analgesics for the legitimate treatment of chronic pain.

The following criteria may indicate that a prescription was not issued for a legitimate medical purpose.

> The prescriber writes significantly more prescriptions (or in larger quantities) compared to other practitioners in your area.

> The patient appears to be returning too frequently. Prescription which should last for a month in legitimate use, is being refilled on a biweekly, weekly or even a daily basis.

> The prescriber writes prescriptions for antagonistic drugs, such as depressants and stimulants, at the same time. Drug abusers often request prescriptions for "uppers and downers" at the same time.

> Patient appears presenting prescriptions written in the names of other people.

> A number of people appear simultaneously, or within a short time, all bearing similar prescriptions from the same physician.

> Numerous "strangers," people who are not regular patrons or residents of your community, suddenly show up with prescriptions from the same physician.

### Characteristics of Forged Prescriptions

1.  Prescription looks "too good"; the prescriber's handwriting is too legible;

WAGFLDEA00001862

2.  Quantities, directions or dosages differ from usual medical usage;

3.  Prescription does not comply with the acceptable standard abbreviations or appear to be textbook presentations;

4.  Prescription appears to be photocopied;

5.  Directions written in full with no abbreviations;

6.  Prescription written in different-color inks or written in different handwriting.

7.  Apparent erasure marks.

## Prevention Techniques

Know the prescriber and his/her signature;

Know the prescriber's DEA registration number;

Know the patient;

Check the date on the prescription order. Has it been presented to you in a reasonable length of time since the prescriber wrote it?

When there is a question about any aspect of the prescription order, call the prescriber for verification or clarification. Should there be a discrepancy, the patient must have a plausible reason before the prescription medication is dispensed.

*Any time you are in doubt, require proper identification. Although this procedure isn't foolproof (identification papers can also be stolen/forged), it does increase the drug abuser's risk.*

*If you believe that you have a forged, altered, or bogus prescription--don't dispense it--call your local police.*

*If you believe that you have discovered a pattern of prescription abuses, contact your State Board of Pharmacy or your local DEA office. Both DEA and state authorities consider retail-level diversion a priority issue.*

---

The following recurring patterns indicative of diversion and abuse:

(1) An inordinately large quantity of controlled substances was prescribed.

(2) Large numbers of prescriptions were issued.

(3) No physical examination was given.

(4) The physician warned the patient to fill prescriptions at different drug stores.

(5) The physician issued prescriptions knowing that the patient was delivering the drugs to others.

(6) The physician prescribed controlled drugs at intervals inconsistent with legitimate medical treatment.

(7) The physician involved used street slang rather than medical terminology for the drugs prescribed.

(8) There was no logical relationship between the drugs prescribed and treatment of the condition allegedly existing.

(9) The physician wrote more than one prescription on occasions in order to spread them out.

**Pharmacy Operations**
200 Wilmot Road
Mail Stop 2194
Deerfield, IL  60015



To:        Tasha Polster, Dwayne Pinon
From:      Debbie Platts              Date: 6-20-2010
Subject:

We will provide high quality, personal service that results in a positive healthcare experience.

Obligations of Walgreens:

a.  Walgreens agrees to maintain a compliance program to detect and avoid
    violations of the Controlled Substances Act ("CSA") and applicable DEA
    regulations.

b.  This program shall include procedures to identify the common signs associated
    with the diversion of controlled substances including but not limited to, doctor-
    shopping, and requests for early refills.
    I could not find anything in our procedures that addressed this request.  If we get
    the "alert" in R60 we would meet part of this requirement.
    Suggestion:  We might consider adding something to our pharmacy code of
    conduct with regard to identifying common signs etc.

c.  The program shall also include the routine and periodic training of all Walgreens
    walk-in, retail pharmacy employees responsible for dispensing controlled
    substances on the elements of the compliance program and their responsibilities
    under the CSA.  This compliance program shall apply to all current and future
    Walgreens walk-in, retail pharmacies registered with the DEA in the United
    States and its territories and possessions.
    Current policy:  All such employees are required to read and confirm their
    understanding of and commitment to this Pharmacy Code of Conduct upon
    being hired, and thereafter, once each year.

d.  Walgreens shall promptly notify the local DEA office of a refusal to fill a
    prescription for controlled substances where such refusal is based on the
    Walgreens pharmacist's definitive conclusion that the prescription was forged,
    altered, and/or issued for other than a legitimate medical purpose by a practitioner
    acting outside the usual course of professional practice. However, in  no case shall
    Walgreens be required to maintain a record of such refusals.
    Suggestion:  The stores could scan in a questionable rx and fax it to the DEA.  We
    would need a policy and corresponding procedures put into place.

WALGREENS – PHARMACY OPERATIONS                                    PAGE 1 OF 4
IDENTIFIED AS CONFIDENTIAL BY WALGREENS

WAGEI DEA00001865

**Pharmacy Operations**
200 Wilmot Road
Mail Stop 2194
Deerfield, IL  60015



e. Walgreens shall implement and maintain policies and procedures to ensure that prescriptions for controlled substances are only dispensed to authorized individuals pursuant  to 21 U.S.C. §§ 829, 801(10), and 801(27).  In addition, Walgreens shall require all individuals obtaining prescriptions for controlled substances to present a valid photo identification as required and in accordance with controlling state law where the pharmacy is located. If required by state law, Walgreens shall also annotate the prescription file or other record to document the type of identification presented and the number, if any, associated with the identification.  Documents maintained by Walgreens pursuant to any obligation under applicable state law regarding the verification of an ultimate user's identity shall be readily retrievable by the pharmacy, and shall be produced to DEA agents and/or DEA investigators upon request.  Will maintain procedures we currently have in place that meet these state specific requirements.

f. Walgreens shall not fill a prescription that it reasonably believes was issued for other than a legitimate medical purpose or by a practitioner acting outside the usual course of professional practice. Walgreens shall comply with state law with regard to dispensing controlled substances based on a prescription written by a prescriber located outside of the state where the patient and pharmacy are located. Walgreens pharmacists shall comply with state law, if applicable, and, where circumstances lead the pharmacist in his or her professional judgment to reasonably doubt the validity of the prescription, verify that a valid prescriber/patient relationship exists before filling a prescription for a controlled substance.
From Code of Conduct: Walgreens expects that employees will maintain the highest standards of ethical behavior and professional conduct. Walgreens employees will conduct all of their activities in a manner that complies with the spirit and the intent of all laws, policies and ethical codes under which we operate.

g. Walgreens shall implement procedures to routinely verify that the DEA registration number written on a prescription is a valid, active DEA registration number, independent of calling the local DEA office.  Such verification shall be performed periodically using the NTIS or similarly-reliable third-party database where DEA registration changes are recorded.  Walgreens is not precluded from contacting any DEA office to verify the legitimacy of a DEA registration NTIS report should cover this requirement.

**Pharmacy Operations**
200 Wilmot Road
Mail Stop 2194
Deerfield, IL  60015



h.  In connection with Walgreens's record keeping requirements pursuant to 21
C.F.R. § 1304, Walgreens agrees to maintain records regarding the dispensing of
controlled substances in electronic format, in addition to the regularly-maintained,
official paper files.  These records shall be made available to DEA diversion
investigators, upon demand, without the need for a warrant or subpoena, provided
that the DEA diversion investigator presents an appropriate form of identification.
Walgreens shall provide electronic reports of dispensing on an ad hoc basis in
response to requests by DEA within a reasonable time.  The paper records shall
continue to be the official record and shall be consulted when there is any
question as to the accuracy of the electronic records.

i.  All dispensing records submitted by Walgreens to Prescription Monitoring
Programs (in those states that have or will implement such a system) shall, to the
extent required under applicable state law, contain a prescriber's valid, active
DEA registration number.  Such information submitted to state Prescription
Monitoring Programs shall be extracted from Walgreens electronic records of
dispensing, which shall be available for review by DEA agents and/or
investigators as required by law. Confirmed with Tomson we report based on sold
data.

j.  Walgreens pharmacists shall obtain and review a patient and/or prescriber profile
from the Prescription Monitoring Program (if such information is reasonably
available to the pharmacy) prior to dispensing controlled substances if the
pharmacist believes in his or her professional judgment that the data will assist
him or her in determining the appropriateness of filling a prescription for a
controlled substance. ***Need to get this information from Tomson.***

k.  For refills of schedule III through V controlled substances, Walgreens shall only
dispense refills that are appropriately-authorized and shall design and implement a
system to identify any early refills (more than seven days prior to the exhaustion
of a prior thirty-day fill and without reasonable cause) of controlled substances.
A pharmacist who, in the exercise of his/her professional judgment determines
that such a prescription may be refilled early must provide a reasonable
explanation for the early refill.  Walgreens shall maintain records regarding the
pharmacist's rationale for dispensing such early refill in a manner consistent with
other records required to be kept by the pharmacy.  These records shall be readily
retrievable by the pharmacy and shall be produced to DEA agents and/or
investigators upon demand.  This PPM did NOT make it into R60 Scope.

**Pharmacy Operations**
200 Wilmot Road
Mail Stop 2194
Deerfield, IL  60015



l.   Walgreens currently maintains cameras at every walk-in, retail pharmacy, which capture images of the front door and/or the pharmacy counters.  Walgreens shall continue to maintain all currently-installed security cameras in these locations.  Walgreens understands and takes seriously the need for security in its locations, and will continue to monitor security and make modifications as needed to maintain store security.  Walgreens shall implement and maintain procedures to retain recordings from security cameras for at least 30 days.  These recordings shall be readily retrievable at pharmacy locations, and shall be produced to DEA agents and/or DEA investigators upon request.  Walgreens shall evaluate and consider installation of cameras in the remodeling of existing facilities or construction of new pharmacy's that capture  clear and unobstructed views of customers at drive-thrus r including vehicle model, make and license plate number.

> Dwayne covered with LP

m.   Walgreens shall report to the local DEA office, within twenty days after discovery, the initiation of any adverse  legal proceeding relating to its pharmacy permit, license or registration, known to Walgreens conducted or brought by a government entity or licensing board regarding the dispensing of controlled substances or sale of schedule listed chemical products.  This might need to be added to our policy.  I could not find anything on this.