**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>TRACK THREE | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**CVS DEFENDANTS' RULE 50(a)**
**MOTION FOR JUDGMENT AS A MATTER OF LAW**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

STANDARD OF REVIEW ................................................................................................. 1

ARGUMENT .................................................................................................................... 2

    A.   The Evidence Is Insufficient To Prove Liability Against CVS
        As A Distributor. ...................................................................................... 2

    B.   The Evidence Is Insufficient To Establish Liability Against CVS For Filling
        Prescriptions For Opioid Medications. ..................................................... 5

    C.   The Evidence Is Far Too Remote To Establish Liability. ................................. 8

    D.   The Evidence Is Insufficient To Establish Liability Against CVS Based On Its
        Purported Promotion Of Opioids. ........................................................... 9

    E.   Plaintiffs' Claims Are Barred By The Statute Of Limitations. ........................ 10

    F.   To The Extent Defendants' Other Legal Arguments Raise Evidentiary
        Issues, The Evidence Is Insufficient Against CVS. ..................................... 10

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

## CASES

*Angerman* v. *Burick,*
2003 WL 1524505 (Ohio Ct. App. Mar. 26, 2003) ..................................................... 3

*Ashtabula River Corp.* v. *Conrail, Inc.,*
549 F. Supp. 2d 981 (N.D. Ohio 2008) ..................................................................... 14

*Brown* v. *Cty. Comm'rs of Scioto Cty.,*
622 N.E.2d 1153 (Ohio Ct. App. 1993) ......................................................... 8, 11, 12

*City of Bloomington* v. *Westinghouse Elec. Corp.,*
891 F.2d 611 (7th Cir. 1989) ................................................................................. 16

*City of Chicago* v. *Beretta U.S.A. Corp.,*
821 N.E.2d 1099 (Ill. 2004) .................................................................................. 11

*City of Cleveland* v. *Ameriquest Mort. Sec. Inc.,*
615 F.3d 496, 502 (6th Cir. 2010) ..................................................................... 7, 8, 9

*Cleveland* v. *JP Morgan Chase Bank, N.A.,*
2013 WL 1183332 (Ohio Ct. App. Mar. 21, 2013) ..................................................... 4

*Corporex Dev. & Constr. Mgt., Inc.* v. *Shook,*
835 N.E.2d 701, (Ohio 2005) ................................................................................. 14

*Fed. Ins. Co.* v. *Fredericks,*
29 N.E.3d 313 (Ohio App. 2015) ............................................................................ 14

*Hammond* v. *T.J. Litle & Co.,*
82 F.3d 1166 (1st Cir. 1996) ................................................................................... 1

*Harris* v. *Purdue Pharma, L.P.,*
218 F.R.D. 590 (S.D. Ohio 2003) ........................................................................... 15

*Hemi Group, LLC* v. *City of New York,* 5
59 U.S. 1 (2010) .................................................................................................... 9

*Holmes* v. *Sec. Inv'r Prot. Corp.,*
503 U.S. 258 (1992) ................................................................................................ 8

*In re National Prescription Opiate Litig.,*
440 F. Supp. 3d 773 (N.D. Ohio Feb. 21, 2020) ...................................................... 14

*Kramer* v. *Angel's Path, L.L.C.,*
882 N.E.2d 46 (Ohio Ct. App. 2007) ...................................................................... 12

ii

*Kusens* v. *Pascal Co.*,
  448 F.3d 349 (6th Cir. 2006) .................................................................................. 1

*Nottke v. Norfolk S. Ry. Co.*,
  264 F. Supp. 3d 859 (N.D. Ohio 2017).................................................................... 3

*Pendrey* v. *Barnes*,
  479 N.E.2d 283 (Ohio 1985) ................................................................................. 16

*Queen City Terminals, Inc.* v. *Gen. Am. Transp. Corp.*,
  653 N.E.2d 661(Ohio 1995) .................................................................................... 5

*RWP, Inc.* v. *Fabrizi Trucking & Paving Co.*,
  2006 WL 2777159 (Ohio App. Sept. 28, 2006)..................................................... 14

*Sanek* v. *Duracote Corp.*,
  539 N.E.2d 1114 (Ohio 1989) .................................................................................. 1

*Seley v. G.D. Searle & Co.*,
  423 N.E.2d 831, 840 (Ohio 1981) .......................................................................... 15

*Sexton v. Mason*,
  883 N.E.2d 1013 (Ohio 2008) ......................................................................... 10, 12

*State ex rel. Andersons* v. *Masheter*,
  203 N.E.2d 325 (Ohio 1964) ................................................................................. 11

*State ex rel. Republic Servs.* v. *Pike Twp.*,
  2009 WL 106652 (Ohio App. Jan. 5, 2009) .......................................................... 12

*State ex rel. Schoener v. Board of Comm'rs for Hamilton Cty.*,
  619 N.E.2d 2 (Ohio Ct. App. 1992)................................................................... 11-12

*State ex rel. RTG, Inc.* v. *State*,
  753 N.E.2d 869 (Ohio Ct. App. 2001),
  *rev'd on other grounds*, 780 N.E.2d 998 (Ohio 2002) .......................................... 12

*State v. Lead Indus. Ass'n Inc.*,
  951 A2d 428 (R.I. 2008)......................................................................................... 11

*Sutowski* v. *Eli Lilly & Co.*,
  696 N.E.2d 187 (Ohio 1998) .................................................................................... 7

*Tioga Public Sch. Dist.* v. *U.S. Gypsum*,
  984 F.2d 915 (8th Cir. 1993) ................................................................................. 16

*Tracy* v. *Merrell Dow Pharm., Inc.*,
  569 N.E.2d 875, (Ohio 1991) ........................................................................... 15, 16

iii

**STATUTES**

Ohio Admin. Code § 4729-9-05(A); 4729-5-30(A) ................................................................ 12

Ohio Rev. Code, Ch. 4729 ................................................................................................... 12

**RULES**

Fed. R. Civ. P. 50(a)(1) ......................................................................................................... 8

Fed. R. Civ. P. 50(a)(1)(A) .................................................................................................... 1

Fed. R. Civ. P. 50(a)(1)(B) .................................................................................................... 1

Fed R. Civ. P. 50(a)(2) .......................................................................................................... 5

***REGULATIONS***

21 C.F.R. § 1306.04(a) ......................................................................................................... 15

***OTHER AUTHORITIES***

Restatement (Second) of Torts § 821B .................................................................................. 11

Restatement (Second) of Torts § 825 ..................................................................................... 3

Restatement (Third) of Torts: Liab. for Econ. Harm § 8. ..................................................... 14

iv

7974862.6

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, CVS[1] moves for judgment as a matter of law ("JMOL").  As set forth below, a reasonable jury could not have a legally sufficient evidentiary basis to find that CVS is liable for causing a public nuisance in Lake and Trumbull Counties.  Therefore, the Court should grant JMOL in CVS's favor.  CVS incorporates by reference Defendants' Joint Motion for Judgment as a Matter of Law under Rule 50(a) and offers this brief only to raise additional arguments and to highlight why a reasonable jury could not find CVS liable.

## STANDARD OF REVIEW

"In diversity cases, when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence," the Court of Appeals for the Sixth Circuit "applies the standard of review used by the courts of the state whose substantive law governs the action." *Kusens* v. *Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006).  "Under Ohio law, '[t]he test for granting a directed verdict or a judgment n.o.v. is whether the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the nonmovant.'" *Id.* (quoting *Sanek* v. *Duracote Corp.*, 539 N.E.2d 1114, 1117 (Ohio 1989)).

Under Rule 50(a), the Court may resolve an "issue" against a party who has been fully heard on the issue, Fed. R. Civ. P. 50(a)(1)(A), and may grant JMOL against the party on a "claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1)(B). "A party may move for judgment as a matter of law on an issue by issue basis; it does not have to be all or nothing." *Hammond* v. *T.J. Litle & Co.*, 82 F.3d 1166, 1172 (1st Cir. 1996). For certain arguments set forth below, CVS requests that

---

[1] CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., CVS Indiana, L.L.C.

the Court resolve certain issues against Plaintiffs. For other arguments, CVS requests that the Court grant JMOL on Plaintiffs' claims in their entirety.

## ARGUMENT[2]

### A.     The Evidence is Insufficient to Prove Liability Against CVS as a Distributor.

There is insufficient evidence for a jury to find that CVS's distribution of prescription opioid medications to its pharmacies caused an ongoing public nuisance in Lake and Trumbull counties.  Trial Transcript ("Tr."), [Dkt. 3991] at 23:7-20.

First, despite putting on more than 50 hours of evidence, Plaintiffs failed to introduce evidence of a single shipment by CVS—not even one.  The only evidence Plaintiffs introduced about CVS's distribution activities came through an approximately one-hour video deposition of CVS corporate witness Mark Vernazza.  But he was not asked nor did he testify about a single order that CVS shipped to its pharmacies in Lake and Trumbull Counties.

Mr. Vernazza's testimony also made clear that CVS's distribution activities were limited. He testified that CVS distributed only to its own pharmacies, Tr. [Dkt. 4078] at 3814:5-8, and that CVS did not distribute any Schedule II medications, *id.* at 3815:23-25.  This means that of the eight prescription opioid medications at issue, CVS distributed only one of them, hydrocodone combination products ("HCPs"), and only to its own pharmacies and only when those medications were classified as Schedule III by DEA, *id.* at 3813:22-3814:17.  CVS stopped distributing HCPs

---

[2]  As explained in Defendants' Joint Motion, the Court should have dismissed Plaintiffs' claims for absolute public nuisance long ago; those claims are legally deficient in countless fundamental ways, which means there can be no legally sufficient evidentiary basis for submitting them to the jury.  CVS incorporates the arguments from the Joint Motion by reference.  In advancing arguments based on the Court's legal rulings and jury instructions for purposes of this motion, CVS does not waive its objections to those prior rulings or jury instructions.  Those objections are stated in the Joint Motion and in Defendants' many prior filings.  Those objections will be stated again in Defendants' submission on the Court's final jury instructions.

in October 2014—more than seven years ago—when they were reclassified as Schedule II by DEA.  Tr. [Dkt. 4078] at 3814:3-4; 3815:23-25.  Thus, the vast majority of the prescription opioid medications dispensed by CVS pharmacies in Lake and Trumbull Counties were not supplied by CVS—they were supplied by wholesale distributors.  Without evidence of a single order shipped by CVS to its pharmacies in Lake and Trumbull Counties, a reasonably jury could not find that CVS's distribution of prescription opioid medications caused a public nuisance in the counties.

Second, there is no evidence of intentional or unlawful conduct by CVS in its capacity as a distributor.  Intentional conduct means "that the creator of [the nuisance] intended to bring about the conditions which are in fact found to be a nuisance." *Nottke v. Norfolk S. Ry. Co.,* 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017) (quoting *Angerman* v. *Burick,* 2003 WL 1524505, at *2 (Ohio Ct. App. Mar. 26, 2003)).  As the Restatement explains, "to make an invasion intentional … the actor … must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from his conduct."  Restatement (Second) of Torts § 825 cmt. c.  Unlawful conduct occurs when a person violates the law.

Here, there is no evidence that CVS shipped an order of prescription opioid medications to its pharmacies in Lake and Trumbull Counties that could be characterized as suspicious, or that CVS shipped an order with the intention to cause a public nuisance in the counties.  Plaintiffs previously told the Court that they would prove their distribution case with an "analy[sis of] the ARCOS data from the DEA to determine what suspicious wholesale orders Defendants could have and should have identified at the time the suspicions arose."  Dkt. 3158 at 8.  But Plaintiffs did not elicit any testimony from their data expert, Dr. Craig McCann, about shipments made by CVS, much less any shipments that may be characterized as suspicious.  Plaintiffs also did not call their distribution expert, James Rafalski, to testify.  Plaintiffs' failure to introduce evidence of a single

suspicious order is another reason that a reasonable jury could not find that CVS's distribution activities caused a public nuisance in Lake and Trumbull Counties.

Third, there is no evidence that CVS's systems to detect and report suspicious orders violated the law.  Mr. Vernazza testified that CVS had systems in place to detect and report suspicious orders.  Tr. [Dkt. 4078] at 3822:21-3823:8; 3846:23-3847:2.  There is no evidence that these systems did not comply with the law.  Former DEA official Joseph Rannazzisi did not testify that CVS's suspicious order monitoring systems failed to comply with the law.  And, again, Plaintiffs did not call their distribution expert, James Rafalski, to testify.  Given the absence of any evidence suggesting that CVS acted unlawfully, much less intentionally, a reasonable jury could not find that CVS's distribution of prescription opioid medications caused an ongoing public nuisance in Lake and Trumbull Counties.

Fourth, even assuming a reasonable jury could somehow find that CVS engaged in intentional or unlawful conduct (it cannot), CVS's distribution of prescription opioid medications could not have been a substantial factor in causing an ongoing public nuisance in Lake and Trumbull Counties.  It is axiomatic that "[p]roof of a causal relationship between a defendant's action and a plaintiff's injury is essential in every tort[.]" *Cleveland* v. *JP Morgan Chase Bank, N.A.,* 2013 WL 1183332, at *4 (Ohio Ct. App. Mar. 21, 2013).  But, again, Plaintiffs have failed to introduce evidence of a single order that CVS shipped to its pharmacies in Lake and Trumbull Counties, let alone an order that was suspicious.  They did not elicit such evidence from Mr. Vernazza, Mr. Rannazzisi, Dr. McCann, or any other witness.  And the evidence that is in the record demonstrates that CVS distributed only one of the eight prescription opioid medications at issue, and that CVS has not distributed that one medication since October 2014.  Based on this record, a reasonable jury could not find that CVS's distribution of prescription opioid medications

was a substantial factor in causing an ongoing public nuisance in the counties.  *See Queen City Terminals, Inc.* v. *Gen. Am. Transp. Corp.,* 653 N.E.2d 661, 669 (Ohio 1995).

For the foregoing reasons, the Court should: (1) resolve this issue against Plaintiffs under Rule 50(a)(1) by eliminating from the jury's consideration claims against CVS based on its distribution of prescription opioid medications; and (2) grant JMOL to CVS under Rule 50(a)(2) because Plaintiffs have insufficient evidence to prove their claims for public nuisance based on CVS's distribution of prescription opioid medications without proof of unlawful distribution.

### B.    The Evidence is Insufficient to Establish Liability Against CVS for Filling Prescriptions for Opioid Medications.

There is also insufficient evidence for a reasonable jury to find that CVS's dispensing of prescription opioid medications caused an ongoing public nuisance in Lake and Trumbull Counties.  Tr. [Dkt. 3991] at 23:7-20.

First, there is insufficient evidence of any intentional or unlawful conduct by CVS. Plaintiffs are not accusing CVS's pharmacists of misconduct; they are pointing the "finger at the business."  *Id.* at 58:1-21.  There is no evidence, however, that CVS "as a business" acted intentionally or unlawfully with respect to its pharmacists' dispensing of prescription opioid medications in Lake and Trumbull Counties.

The evidence reflects that CVS had "multiple programs to detect and prevent diversion[.]" Tr. [Dkt. 3995] at 334:14-19.  For example, the evidence shows that CVS provides training to its pharmacists, including training about "red flags" and state prescription drug monitoring programs. *Id.* at 388:9-11; Tr. [Dkt. 4090] at 4075:1-4076:9; P-15632.  The evidence shows that CVS has policies that "speak[] about red flags."  *Id.* at 388:3-5; CVS-MDL-00266; P-08334.  These policies required, among other things, that pharmacists suspend filling prescriptions written by any prescriber who they believe is writing illegitimate prescriptions.  Tr. [Dkt. 4090] at 4072:12-

5

4074:21.  The evidence also shows that CVS has a prescriber suspension program in which CVS investigates and potentially suspends from writing prescriptions that are filled at CVS prescribers who flag on a computer algorithm.  *Id.* at 307:19-308:2; Tr. [Dkt. 4078] 3961:3-7.  It also shows that CVS has a store monitoring program in which CVS runs a computer algorithm on a quarterly basis to analyze its pharmacies' dispensing of prescription opioid medications; CVS personnel review pharmacies that flag on the algorithm, conduct a visit to those pharmacies, and then work to resolve any potential concerns with those pharmacies' dispensing.  Tr. [Dkt. 3995] at 423:18-424:4; Tr. [Dkt. 4078] at 3974:23-3975:1, 3981:11-17.  The evidence also reflects that CVS provides its pharmacists with a computer system—called RxConnect—that provides pharmacists with the information "they need to exercise corresponding responsibility."  *Id.* at 388:12-21.  It also alerts a pharmacist when there are early fills and when there are certain cocktail prescriptions.  Tr. [Dkt. 4090] at 4061:22-24, 4076:19-21.  Plaintiffs' expert Carmen Catizone also did not offer any testimony on these programs or systems.  On this record, there is insufficient evidence to find that CVS "as a business" acted intentionally or unlawfully with respect to the dispensing of prescription opioid medications in Lake and Trumbull Counties.[3]

Second, Plaintiffs have not shown that any prescription opioid medications dispensed by CVS pharmacies in Lake and Trumbull Counties caused an ongoing public nuisance in the counties.  Plaintiffs have relied on an aggregate statistical theory of proof that focuses on identifying so-called "red flag" prescriptions that required due diligence before they could be filled.  But Plaintiffs have not shown—through expert opinion or otherwise—that the prescription

---

[3] Plaintiffs have suggested that Defendants, including CVS, did not act "to the best of [their] ability," Tr. [Dkt. 4057] at 312:1-3, or that they "could have" done more.  But even if that were accurate (it is not), it is insufficient to show that CVS acted intentionally or unlawfully— which is the standard Plaintiffs must meet here.

opioid medications dispensed by CVS pharmacies in Lake and Trumbull Counties were illegitimate or diverted and then were a substantial factor in causing a public nuisance.

Plaintiffs' own expert, Carmen Catizone, admitted that even if a prescription has one of his sixteen red flags, that "does not mean that it was written for an illegitimate medical purpose" or that it was "diverted." Tr. [Dkt. 4008] at 1208:19-1209:2; Tr. [Dkt. 4017] at 1429:10-14; *see also* Tr. [Dkt. 4032] at 2329:22-25 (McCann). Even if his red flags were real (they are not), this admission—and the concomitant absence of evidence that any prescription opioid medications dispensed by CVS pharmacies in Lake and Trumbull Counties caused any harm in the counties— is fatal to Plaintiffs' dispensing claims.[4] *See City of Cleveland* v. *Ameriquest Mort. Sec. Inc.*, 615 F.3d 496, 502 (6th Cir. 2010) (proximate cause is an element of a claim for public nuisance); *Sutowski* v. *Eli Lilly & Co.*, 696 N.E.2d 187, 190 (Ohio 1998) (rejecting market share liability as a causation substitute).

Third, Plaintiffs introduced evidence of a 2015 CVS settlement with DEA related to two CVS pharmacies in Sanford, Florida arising from conduct occurring before 2012. Tr. [Dkt. 4023] at 1682:21-1683:18. As the Court will instruct the jury, this settlement is admissible to show notice, knowledge, or intent, but the jury may not draw any conclusions about CVS's potential liability from the settlement. Moreover, CVS has more than 10,000 pharmacies across the United States. Tr. [Dkt. 3995 at 334:17-19]. The two pharmacies in Sanford, Florida, are *one thousand miles* away from Lake and Trumbull Counties. There is no evidence that prescriptions filled by those pharmacies more than nine years ago were diverted in Lake and Trumbull Counties—let alone that they caused an ongoing public nuisance in the counties. And evidence of a settlement

---

[4] While questioning another witness, Plaintiffs admitted that they've "got no way of knowing" "whether or not the prescription should have gone out." Tr. [Dkt. 4057] at 3050:10-11.

concerning conduct in Florida more than nine years ago is not sufficient to prove that CVS engaged in any intentional or unlawful conduct in Lake and Trumbull Counties. *See City of Cleveland*, 615 F.3d at 502-06 (allegations that lenders' financing of subprime mortgages with knowledge of municipality's foreclosure crisis, which allegedly caused increased municipal expenditures, did not meet "directness" requirement of proximate cause in public nuisance case). The filling of prescriptions many years ago in Florida is also far too attenuated to prove causation in a case about an ongoing present-day public nuisance in two Ohio counties.

There is no evidence of any DEA or Ohio Board of Pharmacy action against any CVS pharmacy in Lake or Trumbull County, and a record of full compliance, as this Court has recognized, provides registrants like CVS with "safe harbor" immunity from absolute nuisance liability. *See* Tr. [Dkt. 3403] at 29-30 (relying upon *Brown* v. *Cty. Comm'rs of Scioto Cty.,* 622 N.E.2d 1153 (Ohio Ct. App. 1993)). No reasonable jury could have a legally sufficient evidentiary basis to find for Plaintiffs based on this evidence.

Accordingly, the Court should: (1) resolve this issue against Plaintiffs under Rule 50(a)(1) by eliminating from the jury's consideration claims against CVS based on dispensing of prescription opioids; and (2) grant JMOL to CVS under Rule 50(a)(2) because Plaintiffs have insufficient evidence to establish their claims for public nuisance without proof of unlawful dispensing.

### C.  The Evidence is Far Too Remote to Establish Liability.

The issue presented for trial is whether CVS was a substantial factor in causing an ongoing public nuisance in Lake and Trumbull Counties by wrongfully distributing and dispensing prescription opioids. The only relief sought by Plaintiffs is abatement of such a nuisance. Plaintiffs must establish a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes* v. *Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 268 (1992). Plaintiffs have not done

that.  "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  *Hemi Group, LLC* v. *City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 271, 274); *see also City of Cleveland*, 615 F.3d at 502.  From their opening statement through the close of their case in chief, Plaintiffs have focused on alleged CVS misconduct that occurred many years ago, often in far-away jurisdictions, that they contend caused harm in Lake and Trumbull Counties that continues today.  As Plaintiffs' counsel stated in opening: "The problems folks face today is not something that happened because of bad policies yesterday.  The bad policies go back into the 2000s; 1999 to 2010, '11, '12, '13, '14."  Tr. [Dkt. 3991] at 77:16-18.  The orders shipped and prescriptions filled many years ago by CVS are too remote to have a direct relation to any public nuisance that exists in Lake and Trumbull Counties today, even assuming Plaintiffs have shown intentional or wrongful conduct (they have not).

Accordingly, the Court should grant JMOL in CVS's favor on all claims.

**D.    The Evidence is Insufficient to Establish Liability Against CVS Based on its Purported Promotion of Opioids.**

Plaintiffs have argued, through an expert witness, that CVS "collaborated" with Purdue and others to promote opioids.  Tr. [Dkt. 4000] at 582:9-13.  The only evidence of any purported relationship between CVS and Purdue is a few documents from 2001, one of which is titled "How to Stop Diversion" and, as even Plaintiffs' expert admitted, contains no "false information."  *Id.* at 717:10-13.  The other document, from 2011, does not even mention "opioids."  *Id.* at 711:5-9.  There is no evidence that any purported "collaboration" was unlawful or was intended to create an ongoing public nuisance.  There is also no evidence that an alleged collaboration was a substantial factor in causing an ongoing public nuisance in Lake and Trumbull Counties. Plaintiffs have introduced no evidence connecting any alleged promotion to the distribution or dispensing of prescription opioid medications in Lake and Trumbull Counties or anywhere else.  Accordingly,

the Court should rule against Plaintiffs on whether CVS collaborated with Purdue or others in the marketing or promotion of prescription opioid medications and should grant JMOL to CVS on any claims predicated on such theories.

**E.    Plaintiffs' Claims are Barred by the Statute of Limitations.**

As explained in Defendants' Joint Motion, either a two or four-year statute of limitations applies to Plaintiffs' claims. Under either limitations period, the distribution claims against CVS are barred in their entirety. CVS stopped distributing any relevant prescription opioid medications more than seven years ago, *see* Tr. [Dkt. 4078] at 3814:3-4; 3815:23-25, and Plaintiffs were on notice of their claims at least as early as 2014. Tr. [Dkt. 4093] at 4361:21- 4362:4 (Fraser); Tr. [Dkt. 4090] 4239:24 - 4240:4 (Caraway). As for their dispensing claims, the bulk of Plaintiffs' evidence is from 2014 and earlier, but even if Plaintiffs had introduced more recent evidence, they cannot recover for claims accruing outside the applicable limitations period. *See Sexton v. Mason*, 883 N.E.2d 1013, 1021 (Ohio 2008) (Plaintiffs are "limited to damages only within the [applicable limitations period].").

Accordingly, the Court should enter JMOL for CVS on all claims; or, alternatively, enter JMOL for CVS on all claims for damages accruing outside the limitations period.

**F.    To the Extent Defendants' Other Legal Arguments Raise Evidentiary Issues, the Evidence is Insufficient Against CVS.**

CVS has joined a separate motion under Rule 50(a) raising numerous legal grounds that entitle CVS and other Defendants to judgment as a matter of law. To the extent those arguments raise any evidentiary issues, the evidence is insufficient against CVS. In particular,

1.    *The evidence is insufficient to establish Article III or prudential standing to sue CVS.* There is no evidence that CVS directly caused harm in Lake and Trumbull Counties.

Accordingly, the Court should enter JMOL for CVS on the ground that Plaintiffs lack standing to pursue public nuisance claims against CVS.

2. *The evidence against CVS is insufficient because the Ohio Product Liability Act abrogates Plaintiffs' claims*. No evidence presented at trial is sufficient to establish a public nuisance claim against CVS in light of the OPLA. The evidence presented relates to the alleged unlawful dispensing and distribution of prescription opioids. Because that evidence relates to a claim expressly abrogated by the Ohio General Assembly, CVS is entitled to JMOL on all claims currently pending at trial.

3. *The evidence is insufficient to establish a violation of a public right by CVS*. Ohio requires that a public nuisance claim involve the violation of a public right. *E.g.*, *Brown*, 622 N.E.2d at 1158. A public right is one shared equally by all members of the public, like access to air, water, and rights of way. *See State ex rel. Andersons* v. *Masheter*, 203 N.E.2d 325, 327 (Ohio 1964); Restatement (Second) of Torts § 821B cmts. b, g ("A public right is . . . collective in nature and not like the individual right that everyone has not to be assaulted[.]"). There is no common-law right to be free from the use of an otherwise legal product in a manner that might create risk. *E.g.*, *City of Chicago* v. *Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004); *State* v. *Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 454 (R.I. 2008). Because Plaintiffs' evidence against CVS relates only to the sale and distribution of lawful products that have been approved by the government, the evidence is insufficient to establish that CVS violated a public right, and the Court should enter JMOL for CVS on all claims.

4. *As a licensed and regulated entity, CVS cannot be liable for absolute public nuisance.* Under Ohio law, licensed entities engaged in legal and highly regulated activity are not subject to absolute nuisance liability. *State ex rel. Schoener* v. *Board of Comm'rs for Hamilton*

11

*Cty.*, 619 N.E.2d 2, 6 (Ohio Ct. App. 1992); *State ex rel. RTG, Inc.* v. *State*, 753 N.E.2d 869, 881 (Ohio Ct. App. 2001), *rev'd on other grounds*, 780 N.E.2d 998, 1010 (Ohio 2002).  The evidence is undisputed that CVS is licensed by Ohio authorities, *see* Dkt. 4050 at 2767:5-9, and the law establishes that CVS, both as a distributor and as a pharmacy, is highly regulated.  *E.g.*, Ohio Rev. Code, Ch. 4729, Title XLVII ("Pharmacists; Dangerous Drugs"); Ohio Admin. Code § 4729-9-05(A); 4729-5-30(A). Accordingly, CVS is entitled to JMOL on all claims of absolute nuisance liability.

5.      *The evidence is insufficient to establish an ongoing or continuing public nuisance, and therefore the claims are barred in whole or in part by limitations, and plaintiffs are not entitled to a remedy of abatement.* As shown in Defendants' Joint Motion, under Ohio law, nuisances are either permanent or continuing. Plaintiffs' evidence does not establish an ongoing nuisance; instead, they claim continuing damages from alleged misconduct that ended long ago.  Tr. [Dkt. 3991] at 77:16-18.  Plaintiffs' claims are based on indirect injuries from past conduct "in the absence of any further activity by the defendant," not on a continuing nuisance.  *Kramer v. Angel's Path, L.L.C.*, 882 N.E.2d 46, 52 (Ohio Ct. App. 2007).  Plaintiffs' evidence is intended to show, however implausibly, that Plaintiffs continue to incur *damages* from CVS's distribution and dispensing of prescription opioids many years ago. But the evidence is insufficient to show that.

The insufficient evidence of a continuing public nuisance has two consequences. First, as discussed above, Plaintiffs' claims are barred in whole or in part by the statute of limitations (whether two or four years). Ohio law establishes that, for a permanent nuisance, the statute of limitations runs when the plaintiff discovered or reasonably should have discovered the damage. *See Sexton*, 883 N.E.2d at 1017, 1021; *Brown*, 622 N.E.2d at 1162; *State ex rel. Republic Servs.* v. *Pike Twp.*, 2009 WL 106652, at *10 (Ohio App. Jan. 5, 2009).  The evidence establishes that

Plaintiffs were aware of, and incurred expense to address, opioid abuse and misuse long before 2014. Tr. [Dkt. 4093] at 4361:21- 4362:4 (Fraser); Tr. [Dkt. 4090] 4239:24 - 4240:4 (Caraway). No reasonable jury could conclude, based on the evidence presented, that Plaintiffs were unaware of their claim until 2014 or later. *See*, *e.g.*, Tr. [Dkt. 4064] at 3460:19-3461:16 (testimony of Dr. Alexander describing sharp increase in opioid dispensing between 1992 and 2010, when rates plateaued and then began declining); Tr. [Dkt 4064] at 3468:19-3469:1 (more than threefold increase in opioid overdose deaths in Lake County from 2001 to 2010); *id.* at 3469:16-21 (same for Trumbull County); Tr. [Dkt. 4050] at 2732:4-2738:5 (testimony of Trumbull County police officer regarding 2010 investigation of individual seeing multiple doctors and filling prescriptions at multiple pharmacies).

Second, Plaintiffs are not entitled to abatement as a remedy. Plaintiffs' evidence suggests that the alleged nuisance at issue—an ostensible "oversupply" of prescription opioids by Defendants—has been abated; *i.e.*, Defendants' alleged misconduct has terminated, even if Plaintiffs' claimed damages from that misconduct continue.

Accordingly, CVS requests:

(a) JMOL on all claims because the evidence is insufficient to establish any unreasonable distribution or dispensing within the limitations period;

(b) JMOL on all distribution claims because the evidence is insufficient to establish any unreasonable distribution within the limitations period.

(c) JMOL on all claims for abatement because the evidence does not support continuing misconduct by CVS.[5]

---

[5] Although the Court has explained that the jury will not decide whether the public nuisance, if any, is abatable, Tr. [Dkt. 4064] 3478:7-8, the Court can still issue JMOL on the abatement remedy based on issues and claims the jury does decide.

6. *The Evidence is Insufficient to Overcome the Economic Loss Doctrine.* "The economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt., Inc.* v. *Shook*, 835 N.E.2d 701, 704 ¶ 6 (Ohio 2005); *Fed. Ins. Co.* v. *Fredericks*, 29 N.E.3d 313, 317 (Ohio App. 2015) ("in the absence of privity or a substitute for privity, the economic loss doctrine prevents recovery in tort of damages for purely economic loss where the defendant breached a duty that even partially arose by contract"). The rule applies to claims of public nuisance. *Ashtabula River Corp.* v. *Conrail, Inc.*, 549 F. Supp. 2d 981, 986-87 (N.D. Ohio 2008) (citing *RWP, Inc.* v. *Fabrizi Trucking & Paving Co.*, 2006 WL 2777159 (Ohio App. Sept. 28, 2006)). Contrary to this Court's pre-trial conclusion, there is no indication in Ohio law that the economic-loss rule does not apply, or applies differently, to "absolute" claims of public nuisance. *See In re National Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 814 (N.D. Ohio Feb. 21, 2020). On the contrary, a fair reading of Ohio law establishes that the economic loss rule applies to all forms of public nuisance. *See*, *e.g.*, Restatement (Third) of Torts: Liab. for Econ. Harm § 8 cmt. g (courts generally reject liability in public nuisance for economic harm caused by products).

The evidence at trial does not establish that CVS caused any direct or personal injury to the Plaintiffs. Nor does the evidence establish any privity or special relationship between CVS and Plaintiffs. The alleged injuries here arose, if at all, because CVS filled prescriptions for opioid medications written by health care providers for use by patients. Plaintiffs contend that the medications were thereafter abused or misused, and the abusers in turn caused economic harm to

---

Alternatively, if there is some evidence showing that Plaintiffs did not discover their claims more than four years before the filing of the Complaints, or that some allegedly improper distribution or dispensing occurred within the limitations period, the jury must be instructed on the statute of limitations and Defendants must be given a fair opportunity to present evidence and argument relevant to limitations.

Plaintiffs. In other words, the alleged injuries to Plaintiffs arose from CVS's contractual relationships with customer-patients. Plaintiffs have identified no other duty in tort that would apply here. Because the evidence shows that Plaintiffs' harm, if any, was purely economic, CVS is entitled to JMOL on all claims.

7. *The Evidence is Insufficient to Establish Proximate Cause Given that Doctors Serve as Learned Intermediaries.* Plaintiffs' evidence is insufficient to establish proximate cause because Plaintiffs' theory depends on the intervening conduct of prescribing physicians and other medical professionals. Under the learned intermediary doctrine, the intervening conduct of these medical professionals breaks the causal chain.

Plaintiffs allege that CVS did not properly train pharmacists to recognize legitimate prescriptions or to conduct adequate reviews of their opioid dispensing. But if physicians were writing prescriptions other than for a "legitimate medical purpose," those physicians were themselves violating the CSA and its implementing regulations. 21 C.F.R. § 1306.04(a). Although pharmacists bear a "corresponding responsibility" when filling a prescription, the responsibility for the proper prescribing and dispensing of controlled substances is "upon the prescribing practitioner." *Id.* Ohio law is clear that the patient is expected to place primary reliance on the physician's judgment, *Seley v. G.D. Searle & Co.*, 423 N.E.2d 831, 840 (Ohio 1981), and others in the supply chain "may reasonably assume that the physician will exercise . . . informed judgment in the patient's best interests." *Tracy* v. *Merrell Dow Pharm., Inc.*, 569 N.E.2d 875, 878-79 (Ohio 1991); *see also Harris* v. *Purdue Pharma, L.P.*, 218 F.R.D. 590, 596 (S.D. Ohio 2003).

Unlawful conduct by physicians provides "a sufficient intervening or superseding cause to break the chain of causation" even if that unlawful conduct could have been foreseen—and even if the defendant in some sense facilitated that unlawful conduct—so long as the defendant did not

15

"induce[] negligent or reckless behavior" on the part of the unlawful actor. *Pendrey* v. *Barnes*, 479 N.E.2d 283, 284 (Ohio 1985). That rule applies here, where the evidence does not show that CVS in any way induced prescribers to write the allegedly unlawful prescriptions that are the focus of Plaintiffs' dispensing claims. Plaintiffs' "evidence" that CVS assisted manufacturers in a misleading marketing campaign is purely speculative, exceedingly remote, and wholly insufficient as a matter of law. *See* Tr. [Dkt. 4005] at 753:25-757:25 (testimony from Dr. Lembke that she relied on a document from 2001 titled "How to Stop Diversion" and a document from 2011 that does not mention opioids).

CVS was entitled to "reasonably assume" that doctors would exercise "informed judgment" in the patient's best interests. *See Tracy*, 569 N.E.2d at 878-79. Because the evidence is insufficient to overcome that reasonable assumption, the Court should grant JMOL in favor of CVS.

8.    *The Evidence is Insufficient to Establish Proximate Cause Because of Numerous Intervening Factors.* A party cannot be liable for public nuisance if it does not control the instrumentality of the nuisance. *E.g.*, *Tioga Public Sch. Dist.* v. *U.S. Gypsum*, 984 F.2d 915, 920 (8th Cir. 1993); *City of Bloomington* v. *Westinghouse Elec. Corp.*, 891 F.2d 611, 614-15 (7th Cir. 1989). No evidence suggests that CVS controls the prescribing of medications or the dosages and quantities of those medications, including prescription opioids. *See* Dkt. 4023 at 1781:5-1781:10, Dkt. 4090 at 4212:2-12 (pharmacists and pharmacy defendants not authorized to write prescriptions); Dkt. 4050 at 2838:6-2836:15. And no evidence suggests that CVS controls the way patients use or store medications after they are dispensed, much less that CVS controls the conduct of persons who might engage in illegal activities to procure opioid medication. *See* Tr. [Dkt. 4078] at 3966:20-24 ("Once they leave the pharmacy we don't know what people do with" controlled

substances). And, of course, no evidence suggests that CVS manufactured or marketed prescription opioids. For these reasons, CVS is entitled to JMOL on all claims.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' Joint Motion, the Court should resolve the issues against the Plaintiffs and grant judgement as a matter of law in favor of CVS on all claims.

Dated:  October 29, 2021            Respectfully submitted,

*/s/ Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
Graeme W. Bush
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: gbush@zuckerman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio*
*CVS Stores, L.L.C., CVS TN Distribution,*
*L.L.C., CVS Rx Services, Inc., and CVS*
*Indiana, L.L.C.*