# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>**BOARD OF EDUCATION OF THORNTON TOWNSHIP HIGH SCHOOLS, DISTRICT 205,** *et al.*, on behalf of themselves and others similarly situated,<br><br>v.<br><br>**CEPHALON, INC.,** *et al.*<br><br>**Defendants.**<br><br>and<br><br>**SCHOOL BOARD OF MIAMI-DADE COUNTY,**<br><br>v.<br><br>**ENDO HEALTH SOLUTIONS, INC.,** *et al.*<br><br>**Defendants.** | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>[1:20-op-45281-DAP, 1:19-op-45913 DAP]<br>Judge Dan Aaron Polster<br><br><br>**AMERISOURCEBERGEN CORPORATION, CARDINAL HEALTH, INC., AND MCKESSON CORPORATION'S OPPOSITION TO CERTAIN PUBLIC SCHOOL DISTRICTS' MOTION FOR LEAVE TO FILE,** *INSTANTER*, **A MOTION TO MODIFY THE JULY 23, 2021, CASE MANAGEMENT ORDER AND TO REQUEST COURT-ORDERED MEDIATION** |

Defendants McKesson Corporation ("McKesson"), Cardinal Health, Inc. ("Cardinal"), and AmerisourceBergen Corporation ("ABC") (collectively and together with their subsidiaries, the "Settling Distributors") respectfully request that this Court deny the October 22, 2021 motion (ECF No. 4066) by certain public school districts ("Moving School Districts") for leave to file a motion (ECF No. 4066-1) asking this Court to modify its July 23, 2021 Case Management Order (ECF No. 3795) ("July 23 CMO") to exclude school districts and requesting court-ordered

mediation. The Court should deny the motion because it is premature, based on a misconstruction the Distributor Settlement Agreement, and the substantive relief requested would be disruptive to the settlement process put in place by the parties with the assistance of this Court.[1]

The Moving School Districts' papers do not accurately describe the role of school districts under the July 21, 2021 Distributor Settlement Agreement ("Distributor Settlement").[2] The proposed motion incorrectly asserts that the Distributor Settlement prohibits school districts from receiving funds from the settlement and implies that school districts' participation or non-participation is irrelevant to the Distributor Settlement. Contrary to the Moving School Districts' assertion, school districts may, in fact, receive allocated funds and, under the incentive structure of the Distributor Settlement, the participation or non-participation of school districts directly impacts the amount of funds that participating states and subdivisions receive from the Distributor Settlement.

Further, the motion is premature because the July 23 CMO does not impose any obligation on any Non-Participating Subdivision until, at the earliest, on or about February 1, 2022. By that time, many school districts may well have become Participating Subdivisions, while others may have had their claims otherwise addressed by states participating in the Distributor Settlement.[3]

For these reasons, and as further discussed below, the Court should deny Movants leave to file their motion.

---

[1] If this Court grants the Moving School Districts leave to file their proposed motion, that motion should be denied for the reasons set forth in this opposition. The Settling Distributors reserve the right to file a response to that motion if the Court grants leave to file it.

[2] The Moving School Districts' motion addresses both the July 21, 2021 Distributor Settlement and the separate Janssen Settlement Agreement, also executed on July 21, 2021. This opposition addresses only the Distributor Settlement.

[3] *See, e.g.*, N.Y. Mental Hyg. L. § 25.18 (extinguishing by operation of law opioid claims brought by local governments on or after June 30, 2019 against entities released in a statewide opioid settlement).

**I.   The Motion Inaccurately Describes The Distributor Settlement.**

The Moving School Districts' proposed motion suggests that school districts cannot receive money under the Distributor Settlement and, indeed, are immaterial to the settlement. These assertions are simply incorrect.

The Distributor Settlement expressly includes school districts in its definition of "Subdivision": "[a]ny (1) General Purpose Government . . ., School District, or Special District within a State[.]" (Distributor Settlement ("DS"), § I.XXX.) As such, school districts are eligible to participate in the settlement by executing participation forms, whether or not they are litigating against any Settling Distributor. (DS §§ VII.B-C.)

Additionally, nothing in the Distributor Settlement prohibits states from distributing funds to school districts, and in fact the settlement grants states substantial discretion to allocate funds among subdivisions, including school districts, or to create regional or other public health entities that will directly benefit school districts. For example, section V.D of the Distributor Settlement allows for the distribution of settlement funds pursuant to an agreement between a given state and its subdivisions (§ V.D.1), pursuant to statute (§ V.D.2), pursuant to a voluntary redistribution (§ V.D.3), or pursuant to the settlement's own default provisions. (*See also* DS Ex. G at G-1 (expressly allowing distribution of settlement funds pursuant to §§ V.D.1-3.))

Additionally, the Moving School Districts' assertion that cities and counties are barred from allocating any of their funds to school districts under the Distributor Settlement is inaccurate. (*See* ECF No. 4066-1 at 7 & n.8.) The Distributor Settlement expressly authorizes a number of school-related expenditures, including, for example, expenditures to "[c]reate and/or support recovery high schools," and all of the following:

> 8.    Funding evidence-based prevention programs in schools or evidence-informed school and community education programs and campaigns for students,

families, school employees, school athletic programs, parent-teacher and student associations, and others.

9.   School-based or youth-focused programs or strategies that have demonstrated effectiveness in preventing drug misuse and seem likely to be effective in preventing the uptake and use of opioids.

10.   Create or support community-based education or intervention services for families, youth, and adolescents at risk for OUD and any co-occurring SUD/MH conditions.

11. Support evidence-informed programs or curricula to address mental health needs of young people who may be at risk of misusing opioids or other drugs, including emotional modulation and resilience skills.

12. Support greater access to mental health services and supports for young people, including services and supports provided by school nurses, behavioral health workers or other school staff, to address mental health needs in young people that (when not properly addressed) increase the risk of opioid or another drug misuse.

(DS Ex. E, Sched. P, Pt. 2 at E-6, E-12.)  The Distributor Settlement also allows for local, regional, and statewide coordination to identify additional school-focused remediation strategies.  (*See* DS § V.D; DS Ex. G.)  There should be absolutely no question that Distributor Settlement funds can support appropriate school-related initiatives.

Further, the participation or non-participation of school districts can affect the payments that participating states and subdivisions receive under the Distributor Settlement.  For example, school districts' participation or non-participation can substantially affect the amounts paid out under the various Incentive Payment provisions, which reward increased subdivision participation with increased settlement payments.  Large school districts[4] must participate in the Distributor Settlement (or otherwise have their claims foreclosed) in order for a state to be eligible for

---

[4] This condition applies to school districts with K-12 enrollments of at least 25,000 or 0.10% of the relevant state's population, whichever is greater.  (DS § IV.F.1.b.)  There are other paths for states to obtain Incentive Payment A, including through statutes barring the claims of non-participating subdivisions.

4

Incentive Payment A, which accounts for 40% of the abatement relief available under the Distributor Settlement. (DS §§ IV.F.1, IV.F.1.b.) Litigating school districts can also affect a state's eligibility for, or the amount it receives under, the Distributor Settlement's other three Incentive Payments. (*See* DS § IV.F.2-4.) Separately, after the Distributor Settlement becomes effective, if a school district then files suit against one or more Settling Distributors on claims like those released under the settlement and the Settling Distributor(s) must make payments to the school district as a result of that litigation, the Settling Distributor(s) will receive a dollar-for-dollar offset against payments owed to that state and its subdivisions up to a yearly cap. Additionally, litigating school districts count toward the calculation of the "Participation Tier" under the Distributor Settlement (DS Ex. H at H-1 n.4.), which in turn determines several important criteria relating to Settling Distributors' obligations under the Distributor Settlement. (DS §§ I.RR, I.WW, I.BBBB, I.CCCC, I.DDDD, VIII.C, XII.B.4-5.)

## II. The CMO Applies To School Districts Because School Districts Are Part Of The Distributor Settlement.

As the discussion above shows, school districts are an integral part of the Distributor Settlement. Whether they participate has meaningful consequences for other participating states and subdivisions. Accordingly, applying the July 23 CMO to non-participating school districts just as it applies to all other non-participating subdivisions is consistent with the settlement's design and goals. The Court's CMO recognizes that those entities who elect not to be part of the Distributor Settlement should fully understand both the possible benefits of the settlement and the reality of litigating these cases when most of the country is resolved. The alternative—hard-fought and burdensome litigation with a very uncertain result many years in future (a reality that was made exceedingly clear by this week's defense judgment for manufacturers in California)—should

be fully understood by any public officials rejecting the Distributor Settlement. The Moving School Districts' motion would undermine goals of this Court in its efforts to bring about a landmark national settlement.

The motion is also premature. The July 23 CMO does not impose any obligation on any Non-Participating Subdivision until, at the earliest, the "Reference Date" as that term is defined the Distributor Settlement, which is anticipated to be on or about February 1, 2022. By that date, it will be clearer which subdivisions, including school districts, are or are not participating in the Distributor Settlement, or have otherwise had their claims foreclosed. (*See* July 23 CMO, § I.) Allowing the settlement process to continue to unfold without the undue complications and obstacles that would be created by granting the proposed exception to the July 23 CMO likely will result in many school districts participating in the Distributor Settlement. There is no need for this Court to rule today on an issue that, for many school districts, will not exist by the time the question becomes ripe.

Given those realities, the relief sought by the Moving School Districts in their proposed motion is unnecessary and premature. That includes not only the exception to the July 23 CMO that the Moving School Districts seek, but also their request that this Court order the parties to engage in mediation to resolve issues that do not exist yet or at all.

## CONCLUSION

For the foregoing reasons, the Settling Distributors request that this court deny the motion in its entirety.

Dated: November 5, 2021          Respectfully submitted,

*/s/ Mark H. Lynch*
Geoffrey E. Hobart
Mark H. Lynch
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com

*Counsel for Defendant McKesson Corporation*

*/s/ Elaine P. Golin*
Elaine P. Golin
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, New York 10019
(212) 403-1000
epgolin@WLRK.com

*Counsel for Defendant Cardinal Health, Inc.*

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation and AmerisourceBergen Corporation*

## CERTIFICATE OF SERVICE

I, Mark H. Lynch, hereby certify that on this the 5th day of November, 2021 the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Mark H. Lynch*
Mark H. Lynch
