# EXHIBIT A

# FEDERAL REGISTER

VOLUME 36 • NUMBER 80

Saturday, April 24, 1971 • Washington, D.C.

PART II

## DEPARTMENT OF JUSTICE

Bureau of Narcotics and Dangerous Drugs

•

REGULATIONS IMPLEMENTING THE COMPREHENSIVE DRUG ABUSE PREVENTION AND CONTROL ACT OF 1970





7776

RULES AND REGULATIONS

# Title 21—FOOD AND DRUGS

## Chapter II—Bureau of Narcotics and Dangerous Drugs, Department of Justice

### REGULATIONS IMPLEMENTING THE COMPREHENSIVE DRUG ABUSE PREVENTION AND CONTROL ACT OF 1970

A notice was published in the FEDERAL REGISTER of March 13, 1971 (36 F.R. 4928) proposing regulations implementing the Comprehensive Drug Abuse Prevention and Control Act of 1970.

In response, a substantial number of comments were received from members of the drug industry through the American Medical Association, the American Pharmaceutical Association, the National Association of Chain Drug Stores, the Pharmaceutical Manufacturers Association, the National Wholesale Druggists Association, the Pharmaceutical Wholesalers Association, the National Association of Retail Druggists, and from many individuals and corporations.

COMMENTS AND OBJECTIONS TO PART 301

1. Various persons, including the American Medical Association and the Pharmaceutical Manufacturers Association, inquired whether agents and employees of registrants were required to register individually. Section 301.24 was revised to clarify the fact that they are generally not required to register.

2. Many manufacturers, through the Pharmaceutical Manufacturers Association and individually, inquired whether separate registrations were necessary to conduct quality control analysis and other activities related to manufacturing. Section 301.22(b) was revised to state what activities are authorized under the registration of a manufacturer.

3. Several persons inquired as to the authority of a person other than an officer of a corporation signing application forms and order form powers of attorney for a corporation. Section 301.32(f) was revised to permit this alternative on the condition that a corporate officer notify the Bureau as to the authority of the other person.

4. Several manufacturers objected to the inclusion of § 301.43(b). The Director, after reviewing the objections and meeting with representatives of various interested groups, has concluded that this paragraph is properly included in the regulations, particularly in light of the legislative history of the Controlled Substances Act and the change in language in section 303(a)(1) of the Act from the earlier language found in section 8(a)(1) of the Narcotics Manufacturing Act of 1960.

5. The Pharmaceutical Manufacturers Association and Pfizer, Inc., questioned the ambiguity in § 301.55(a) and (b) regarding persons entitled to an administrative hearing. This language was revised to point out who could request, or participate in, such hearings under Part 301.

6. Many manufacturers and distributors objected to security controls set forth in §§ 301.91 to 301.97. Most of these paragraphs have been revised to meet the objections filed. Sections 301.92 and 301.93 are not being published at this time, however, pending further discussions between the Bureau and members of the industry. Physical security requirements for nonpractitioners will be published in the near future.

COMMENTS AND OBJECTIONS TO PART 302

1. Several manufacturers, through the Pharmaceutical Manufacturers Association and individually, objected to the size of the symbol required on a label and to the requirement of the overprinting of the symbol on substances listed in schedule V. The Director has concluded that the requirement of overprinting is not necessary for schedule V substances and section 302.04 has been revised accordingly. After reviewing the comments on the size symbol on the label, however, the Director believes that as a general rule the symbol should be at least two times of the largest type otherwise printed on the label. In cases where this is not practicable, manufacturers should apply for an exception from this requirement pursuant to § 307.03, submitting a copy of the existing label and a draft of the proposed label.

2. Several manufacturers, including the Pharmaceutical Manufacturers Association, commented that the language in § 302.06(a) and (b), regarding the effective dates of labeling requirements, was unclear. This language has been revised to clearly state that the labeling requirements apply only to containers packaged after the effective date set forth in each paragraph.

3. Several manufacturers inquired as to the effective date of the sealing requirements contained in Section 302.07. This section shall be effective on May 1, 1971. Any manufacturer who cannot comply on this effective date should file a request for an exception under § 307.03, including the date on which compliance can be achieved.

COMMENTS AND OBJECTIONS TO PART 303

1. Several manufacturers, including Mallinckrodt Chemical Works and Wyeth Laboratories, suggested that the Bureau return to the quota system utilized under the Narcotics Manufacturing Act of 1960. The Director, after reviewing their comments, realizes the system proposed probably will lead to lesser accuracy because of longer range estimates, and more administrative activity to revise quotas as estimates are revised, than the former system. The Director has concluded, however, that the advantages of setting quotas in advance of the year in which the quota is to become effective outweighs these disadvantages. The Director anticipates that adjustments to this system will be required as experience is gained.

2. The American Medical Association urged the Director to consult with recognized medical and scientific authorities in determining aggregate production quotas. The Director will, under section 701(j) of the Act, receive the advice of the Surgeon General of the United States on these matters. In addition, the Director anticipates consulting with other members of the medical community in individual cases in determining such quotas.

3. Several manufacturers requested changes in the procedures for fixing individual manufacturing quotas if the proposed quota system were retained, in order to make the adjustments necessary when estimates are found to be wrong and in order to accommodate special production problems. The regulations have been revised in light of their suggestions.

COMMENTS AND OBJECTIONS TO PART 304

1. The National Association of Chain Drug Stores proposed that special permission be allowed for central record keeping. After discussions with this group, the Bureau has revised § 304.04(a) to permit, under certain conditions, keeping of certain records at a central location.

2. Several manufacturers pointed out that many labels still list weight in avoirdupois units rather than metric units. Section 304.15 was revised to permit 1971 inventories to show avoirdupois weight.

3. Many persons and organizations, including the National Association of Wholesale Druggists, the Pharmaceutical Wholesalers Association, the National Association of Retail Druggists, and the National Association of Chain Drug Stores, objected to the inclusion on an inventory of the total quantity of a substance in all forms in metric weight. After receiving these objections, the Director has concluded that the requirement is not necessary and § 304.15(c)(5) has been deleted.

4. Many groups representing retail pharmacies urged that in taking an inventory of substances listed in schedules III, IV, and V, an estimated count should satisfy. The Director has concluded that the risk of error is small enough to permit estimates when containers hold no more than 1,000 tablets or capsules; in larger containers, however, an exact count is still required.

5. Comments on the reporting requirements were received from the Pharmaceutical Manufacturers Association, the Pharmaceutical Wholesalers Association, and the National Wholesale Druggists Association, as well as from other persons, and certain changes were made accordingly. The Director wishes to point out that these requirements are intended to continue existing reporting requirements until a new system of reporting that more fully accords with the Act can be designed and implemented. It is anticipated that this will require 9 to 12 months and at that time §§ 304.31–304.35 will be replaced.

COMMENTS AND OBJECTIONS TO PART 305

1. An objection was led to the limitation of authorized signatures on an order

form. The purpose is to prevent unauthorized persons from obtaining controlled substances through the use of order forms.

2. The Pharmaceutical Manufacturers Association and Merck and Co., Inc., objected to the 60-day validity limit on order forms. The Director concluded that although a problem might exist, the short time period should be tried. If experience indicates that a significant number of orders are being invalidated by this time limit, the Director, will receive requests for amendment to the rule.

COMMENTS AND OBJECTIONS TO PART 306.

1. The National Association of Retail Druggists objected to the responsibility placed upon a pharmacist under § 306.04 to determine the legitimacy of a prescription. The language has been revised to require knowledge.

2. Several pharmacy groups protested the requirement under § 306.11(c)(4) that, if a doctor fails to provide an authorization for emergency order as required, the pharmacist must so report to the Bureau or be liable for dispensing a substance in schedule II without a written prescription. The Director considered the problems and concluded that only this mechanism assures information to the Bureau about doctors who refuse to comply with the Act.

3. The American Pharmaceutical Association and the National Association of Chain Drug Stores suggested that, in the case of a partial filling of a schedule II substance, the pharmacist notify the doctor only when the remainder cannot be filled, in order for the doctor to issue a new prescription. The language was revised accordingly.

4. All retail druggist associations urged revision in the labeling requirements for prescriptions set forth in §§ 306.14 and 306.23. In response, the Director has had the requirements of inclusion of the patient's address and the doctor's registration number deleted.

5. In response to a comment from the National Association of Retail Druggists, a definition of prescription was added which covers all orders for medication except hospital orders (i.e., orders for medication to be administered immediately and cannot be removed from the hospital either by an out-patient or by an in-patient being discharged). Sections 306.11, 306.21, and 306.31 were revised to indicate that institutional practitioners (e.g., hospitals) can only dispense by prescription or hospital order.

6. Several questions were asked about the status of paregoric. This is a schedule III substance which is not now a prescription drug under the Food, Drug, and Cosmetic Act and therefore not subject to the prescription requirements of the Controlled Substances Act. Until such time as it becomes a prescription drug, the Director has determined to treat it in the same manner as a schedule V substance. Section 306.32 has been revised accordingly.

COMMENTS AND OBJECTIONS TO PART 307.

The Pharmaceutical Manufacturers Association suggested substitution of some synonym for "disposal" and elimination of restrictions on the destruction of controlled substances set forth in §§ 307.21 and 307.22. After considering these suggestions, the Director has concluded that "dispose" is the best word and that the restrictions are necessary. For persons who regularly destroy controlled substance, the Director suggests an application for an exception under § 307.03, including details of the procedures followed and provisions for notice to the Bureau.

COMMENTS AND OBJECTIONS TO PART 308

1. Several manufacturers, through the Pharmaceutical Manufacturers Association and individually, raised questions concerning the function of the Bureau Controlled Substances Code Number. Section 308.03 has been included to set this forth.

2. Mallinckrodt Chemical Works pointed out that the lack of language in § 308.14(b) made it appear that salts of schedule IV substances were in schedule III. This has been corrected to eliminate this confusion.

3. The Pharmaceutical Manufacturers Association and Pfizer, Inc., suggested that no application be required under § 308.21 to exclude a substance from control under section 201(g) of the Act. The Director has concluded that such a change would create greater administrative and legal difficulties in handling such substances than the procedure proposed.

4. A number of manufacturers inquired about individual compounds excepted in § 308.32. This list contains only some of the excepted compounds; those previously excepted as being similar to this list and not listed continue to be expected.

COMMENTS AND OBJECTIONS TO PART 311

Several manufacturers objected strongly to the proposed § 311.42 (b), (c). The Director has reviewed their comments carefully, as well as the comments of the Antitrust Division of the Department of Justice, and has discussed this matter extensively with the firms concerned. After considerable analysis, the Director has concluded that the paragraphs should be retained, with several modifications that emphasize noncompetitive factors to be considered in registering an importer and other factors that affect competition. The standards set forth for determining the adequacy of competition are not exclusive and leave the Bureau with flexibility to consider additional factors in special cases. The factors enumerated, however, focus attention on several of the most important measures of competitive performance and are based on well recognized economic analysis. In particular, the element of substantial differentials between foreign and domestic prices is included because foreign prices provide the only marketplace yardstick available to appraise the efficiency of domestic producers. Substantial differentials, not accounted for by particular factors (such as cost of security requirements, imposed by the Controlled Substances Act), evidence of either excessive profits or insufficient operations, or both, and an absence of adequate competition among domestic manufacturers.

The Director emphasized that the Bureau, by adopting § 311.42, has no intention of lowering its strict requirements of security and safeguards against diversion, and that any prospective importer will be required to show that he maintains effective controls against diversion throughout the process of importation.

COMMENTS AND OBJECTIONS TO PART 312.

1. The Pharmaceutical Manufacturers Association suggested that alternative ports of exportation in different countries be permitted in applications for import permits under § 312.12(b). The purpose of the permit is, in part, to inform the government of the exporting country that importation is authorized; by having more than one potential exporting country listed, the notice to the exporting country is confusing.

2. The Pharmaceutical Manufacturers Association also suggested that § 312.29 be revised to state that release of a shipment to a bonded shipper was proof of adequate security. The Director does not believe that the needs of preventing diversion of controlled substances can be satisfied by a bond to pay in the event of diversion. The burden remains on the exporter to select a carrier that will provide adequate security.

COMMENTS AND OBJECTIONS TO PART 316.

1. The American Medical Association suggested that medical diagnosis and therapy records be excluded from inspection under § 316.04. The Director is reviewing this request.

2. The American Medical Association and the Pharmaceutical Manufacturers Association suggested coordination between the Bureau and the Secretary of Health, Education, and Welfare on jurisdiction and procedures for granting confidentiality to researchers under § 316.21. The Bureau is discussing this matter with the Department of Health, Education, and Welfare.

OTHER COMMENTS AND OBJECTIONS.

Numerous other objections and comments were received, the majority of which were valid and incorporated into the regulations. Others resulted from a misinterpretation of the language of the proposed regulations, and in many cases the language was revised to state more clearly the intent of the Bureau. In a few cases not discussed here the Director did not accept the position of the party.

The Director has instructed the Office of Chief Counsel of the Bureau to reply to each person who filed comments and respond fully to his comments.

Therefore, under the authority vested in the Attorney General by sections 201 (a), 201(g), 202(d), 301, 302(f), 304, 305, 306(f), 307, 308, 501(b), 505, 507, 511, 513, 704(e), 705, 1002, 1003, 1004, 1006, 1007 (b), 1008(d), 1008(e), and 1015 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and redelegated to the Director, Bureau of Narcotics and Dangerous Drugs, by section 0.100 of

Title 28 of the Code of Federal Regulations, the Director hereby orders that Parts 301, 302, 303, 305, 306, 307, 315, 316, 319, 320, and 330 of Title 21 of the Code of Federal Regulations, and Parts 150, 151, and 152 of Title 26 of the Code of Federal Regulations, be rescinded and replaced with the following:

Part 301—Registration of Manufacturers, Distributors, and Dispensers of Controlled Substances.
Part 302—Labeling and Packaging Requirements for Controlled Substances.
Part 303—Quotas.
Part 304—Records and Reports of Registrants.
Part 305—Order Forms.
Part 306—Prescriptions.
Part 307—Miscellaneous.
Part 308—Schedules of Controlled Substances.
Part 309—[Reserved]
Part 310—[Reserved]
Part 311—Registration of Importers and Exporters of Controlled Substances.
Part 312—Importation and Exportation of Controlled Substances.
Part 313—[Reserved]
Part 314—[Reserved]
Part 315—[Reserved]
Part 316—Administrative Functions, Practices, and Procedures.

## PART 301—REGISTRATION OF MANUFACTURERS, DISTRIBUTORS, AND DISPENSERS OF CONTROLLED SUBSTANCES

### GENERAL INFORMATION

Sec.
301.01  Scope of Part 301.
301.02  Definitions.
301.03  Information; special instructions.

### FEES FOR REGISTRATION AND REREGISTRATION

301.11  Free amounts.
301.12  Time and method of payment; refund.
301.13  Persons exempt from fee.

### REQUIREMENTS FOR REGISTRATION

301.21  Persons required to register.
301.22  Separate registration for independent activities.
301.23  Separate registrations for separate locations.
301.24  Exemption of agents and employees; affiliated practitioners.
301.25  Exemption of certain military and other personnel.
301.26  Exemption of law enforcement officials.
301.27  Exemption of civil defense officials.
301.28  Registration regarding ocean vessels.
301.29  Registration regarding commercial aircraft.

### APPLICATIONS FOR REGISTRATION

301.31  Time for application for registration; expiration date.
301.32  Application forms; contents; signature.
301.33  Application to manufacture a new narcotic controlled substance.
301.34  Filing of application; joint filings.
301.35  Acceptance for filing; defective applications.
301.36  Additional information.
301.37  Amendments to and withdrawal of applications.

### ACTION ON APPLICATIONS FOR REGISTRATION; REVOCATION OR SUSPENSION OF REGISTRATION

301.41  Administrative review generally.
301.42  Applications for research in schedule I substances.

Sec.
301.43  Applications for bulk manufacture of schedule I and II substances.
301.44  Certificate of registration; denial of registration.
301.45  Suspension or revocation of registration.
301.46  Suspension of registration pending final order.
301.47  Extension of registration pending final order.
301.48  Order to show cause.

### HEARINGS

301.51  Hearings generally.
301.52  Purpose of hearing.
301.53  Waiver or modification of rules.
301.54  Request for hearing or appearance; waiver.
301.55  Burden of proof.
301.56  Time and place of hearing.
301.57  Final order.

### MODIFICATION, TRANSFER AND TERMINATION OF REGISTRATION

301.61  Modification in registration.
301.62  Termination of registration.
301.63  Transfer of registration.

### SECURITY CONTROLS

301.71  Security requirements generally.
301.72  [Reserved]
301.73  [Reserved]
301.74  Other security controls for non-practitioners.
301.75  Physical security controls for practitioners.
301.76  Other security controls for practitioners.

AUTHORITY: The provisions of this Part 301 issued under secs. 301, 302, 303, 304, 501 (b), 505, 507, 84 Stat. 1253, 1254, 1255, 1256, 1271, 1272, 1273; 21 U.S.C. 821, 822, 823, 824, 871(b), 875, 877.

### GENERAL INFORMATION

§ 301.01  Scope of Part 301.

Procedures governing the registration of manufacturers, distributors, and dispensers of controlled substances pursuant to sections 301 through 304 of the Act (21 U.S.C. 821–824) are set forth generally by those sections and specifically by the sections of this part.

§ 301.02  Definitions.

As used in this part, the following terms shall have the meanings specified:

(a) The term "Act" means the Controlled Substances Act (84 Stat. 1242; 21 U.S.C. 801) and/or the Controlled Substances Import and Export Act (84 Stat. 1285; 21 U.S.C. 951).

(b) The term "basic class" means, as to controlled substances listed in schedules I and II:

(1) each of the opiates, including its isomers, esters, ethers, salts, and salts of isomers, esters, and ethers whenever the existence of such isomers, esters, ethers, and salts is possible within the specific chemical designation, listed in § 308.11 (b) of this chapter;

(2) Each of the opium derivatives, including its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation, listed in § 308.11(c) of this chapter;

(3) Each of the hallucinogenic substances, including its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation, listed in § 308.11(d) of this chapter;

(4) Each of the following substances, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

(i) Opium, including raw opium, opium extracts, opium fluid extracts, powdered opium, granulated opium, deodorized opium and tincture of opium;
(ii) Apomorphine;
(iii) Codeine;
(iv) Ethylmorphine;
(v) Hydrocodone;
(vi) Hydromorphone;
(vii) Metopon;
(viii) Morphine;
(ix) Oxycodone;
(x) Oxymorphone;
(xi) Thebaine;
(xii) Mixed alkaloids of opium listed in § 308.12(b) (2) of this chapter;
(xiii) Cocaine; and
(xiv) Ecgonine.

(5) Each of the opiates, including its isomers, esters, ethers, salts, and salts of isomers, esters, and ethers whenever the existence of such isomers, esters, ethers, and salts is possible within the specific chemical designation, listed in § 308.12 (c) of this chapter; and

(6) Methamphetamine, including its salts, isomers, and salts of isomers, when contained in any injectable liquid.

(c) The term "Bureau" means the Bureau of Narcotics and Dangerous Drugs.

(d) The term "Director" means the Director of the Bureau. The Director has been delegated authority under the Act by the Attorney General (28 CFR 0.100).

(e) The term "hearing" means any hearing held pursuant to this part for the granting, denial, revocation, or suspension of a registration pursuant to sections 303 and 304 of the Act (21 U.S.C. 823–824).

(f) The term "person" includes any individual, corporation, government or governmental subdivision or agency, business trust, partnership, association, or other legal entity.

(g) The terms "register" and "registration" refer only to registration required and permitted by section 303 of the Act (21 U.S.C. 823).

(h) The term "registrant" means any person who is registered pursuant to either section 303 or section 1008 of the Act (21 U.S.C. 823 or 958).

(i) Any term not defined in this section shall have the definition set forth in section 102 of the Act (21 U.S.C. 802).

§ 301.03  Information; special instructions.

Information regarding procedures under these rules and instructions supplementing these rules will be furnished upon request by writing to the Registration Branch, Bureau of Narcotics and Dangerous Drugs, Department of Justice,