IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) ) ) ) ) ) | MDL 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**DEFENDANTS' MOTION FOR MODIFICATION OF THE PROTECTIVE ORDER TO PERMIT EQUAL ACCESS TO MDL DISCOVERY AND EXPERT REPORTS AND TESTIMONY FROM OTHER OPIOID LITIGATION**

From the outset of this MDL, the Court's rulings have provided for two aspects of shared discovery: (1) that the MDL will serve as a repository for documents produced by Defendants related to all state and federal litigation arising out of the marketing or distribution of opioid products (*see, e.g.*, CMO 1 (Doc. No. 232) at 15); and (2) the Plaintiffs Executive Committee ("PEC") may provide plaintiffs in any state or federal case arising out of the marketing or distribution of opioid products access to those documents under certain circumstances, including those designated for protection under the Protective Order in this case, so long as they complete a certification agreeing to be bound by the terms of the Protective Order (CMO 2, Protective Order (Doc. No. 441) at ¶ 33.l, 34.j.).

As time has progressed, third parties and Plaintiffs have produced documents in the MDL that are broadly relevant to the claims and defenses raised in non-MDL cases. For example, certain third parties—*e.g.*, the DEA and FDA—have produced documents that are broadly relevant to non-MDL cases. And, as another example, certain Plaintiff and third-party documents produced in Tracks 1, 1B, 2, and 3 of the MDL concerning various counties in Ohio are relevant to the claims

covering the state of Ohio in *State of Ohio ex rel. Mike DeWine, Ohio Attorney General v. Purdue Pharma L.P., et al.*, Ross County Court of Common Pleas, Case No. CV-17 CI 000261. The MDL protective order permits the MDL Plaintiffs to produce those documents to *plaintiffs* in other non-MDL cases under certain circumstances, but it does not give Defendants reciprocal/parallel rights to seek access to and potentially use these documents in other proceedings. (*See* CMO 2, Protective Order (Doc. No. 441) at ¶¶ 33, 34.)

Similarly, various experts have issued reports and given deposition testimony in opioid litigation within the MDL and in other non-MDL cases. Those reports and depositions may refer to material designated as Confidential or Highly Confidential by one or more parties or third parties pursuant to the protective orders entered in non-MDL cases. As noted above, the underlying Confidential or Highly Confidential material already may be produced to the MDL Repository and to claimants in other non-MDL cases. To the extent that a report refers to such material, there is no reason why the report cannot be produced to Plaintiffs and Defendants in the MDL subject to the MDL protective order without the need for the parties to also execute the protective orders entered in the non-MDL cases.

The purpose of this Motion, therefore, is to request that this Court modify the protective order to ensure that (a) defendants in non-MDL cases have the same ability to access Confidential and Highly Confidential discovery provided in this MDL in non-MDL cases; and (b) parties to the MDL have access to expert reports and deposition testimony submitted in non-MDL cases without limitations caused by the inclusion of information designated as Confidential or Highly Confidential. This request is consistent with basic principles of fairness and this Court's own persistent reasoning throughout this case to date. Accordingly, the undersigned Defendants

2

respectfully request that the Court modify the Protective Order in this case as outlined in the Proposed Amended Protective Order that accompanies this Motion as Exhibit A.

**I.     Background**

>   **A.     The Protective Order imposes broad production obligations on Defendants while allowing attorneys for claimants in non-MDL cases significant access to confidential information produced by Defendants.**

One of the Court's initial steps in this matter was to create a repository of information produced by the undersigned Defendants ("Repository").  In its first Case Management Order, the Court directed Defendants to review a broad swath of documents produced outside the MDL— *i.e.,* "documents previously produced pursuant to any civil investigation, litigation, and/or administrative action by federal (including Congressional), state, or local government entities involving the marketing or distribution of opioids"—and produce "non-privileged documents relevant to the claims in this MDL proceeding" to the PEC. (CMO-1 (Doc. 232) at 15, ¶ 9.k.ii.)

Access to the documents produced by a Defendant is potentially wide-ranging because the Protective Order permits significant access to a Defendant's documents by claimants in non-MDL cases.  The Protective Order provides for two categories of protected documents—"Confidential" and "Highly Confidential"—which generally limits access to individuals with some involvement in the MDL (*e.g.*, counsel, third-party vendors, stenographers, experts). (*See* CMO 2, Protective Order (Doc. No. 441) at ¶ 33, 34.)  Notable exceptions to this strictly controlled access are the provisions that permit production of designated documents to claimants in non-MDL cases. Specifically, the Protective Order allows for disclosure of Confidential and Highly Confidential documents to:

> Counsel for claimants in litigation pending outside this Litigation and arising from one or more Defendants' manufacture, marketing, sale, or distribution of opioid products for use in this or such other action in which the Producing Party is a Defendant in that litigation, provided that the proposed recipient agrees to be bound by this Protective Order and

3

>completes the certification contained in Exhibit A, Acknowledgment and Agreement to Be Bound.

(*Id*. at 12, ¶ 33.l (providing for access to Confidential documents); *see also id*. at 15, ¶ 34.j (providing for access to Highly Confidential documents).)[1]  Notably, claimants in non-MDL cases bear no burden of demonstrating that the documents are relevant to their claims or are otherwise unavailable to them.  The PEC can provide claimants in non-MDL cases access to protected documents as long as they agree to be bound by the Protective Order. *Id*.  Not surprisingly, then, Defendants in the MDL are not even contemporaneously notified of a request for such access.  Instead, the Protective Order requires only that Plaintiffs' Liaison Counsel notify Defendants once per month about requests for access. (*Id*. at 13, ¶ 33.l (addressing requests for access to Confidential documents); *see also id*. at 16, ¶ 34.j (addressing requests for access to Highly Confidential documents).)

Unlike other categories of individuals to whom protected documents may be disclosed, counsel for claimants in non-MDL cases may seek to use protected MDL documents outside of the MDL.  While the Protective Order generally provides that "Confidential Information produced in accordance with the provisions of this Protective Order shall be used solely for purposes of this Litigation," that restriction expressly does not apply to counsel for claimants in non-MDL cases.  (*Id*. at 10, ¶ 33 (providing that "any Confidential Information produced in accordance with the provisions of this Protective Order shall be used solely for purposes of this Litigation (*except as*

---

[1] The broad access to Defendants' documents permitted by the Protective Order is evidenced by the fact that the Protective Order also permits state and federal law enforcement agencies access to Confidential and Highly Confidential documents, even where those agencies have no claims against Defendants.  (*See* CMO 2, Protective Order (Doc. No. 441) at 12, ¶ 33.j (providing for access to Confidential documents); *see also id*. at 15, ¶ 34.h (providing for access to Highly Confidential documents).)

*provided by Paragraph 33.l*) . . . .") (emphasis added); *see also id*. at 13, ¶ 34 (same, as applied to Highly Confidential documents and excepting documents used pursuant to "Paragraph 34.j").)

In short, by the time the original Protective Order was filed, Defendants were required to produce a significant amount of material from a broad category of proceedings and cases, and the PEC had unfettered discretion to provide counsel for claimants in non-MDL matters access to these documents. Defendants now ask for a reciprocal benefit.

> **B.  Subsequent rulings increased Defendants' production obligations, but did not limit access by attorneys for non-MDL claimants.**

Each time Plaintiffs in this matter have sought to broaden Defendants' production obligations, this Court has generally ruled in Plaintiffs' favor. For example, the undersigned Defendants have been instructed to produce copies of sworn statements and testimony (including exhibits referenced in that testimony) from cases or proceedings involving the marketing, sales, or distribution of opioids; and lists of any depositions connected to state court opioid litigation for which Defendants have not requested the transcripts. (*See* Discovery Ruling No. 2 (Doc. No. 693), Discovery Ruling No. 9 (Doc. No. 1118), Discovery Ruling No. 22 (Doc. No. 2576), Amended Discovery Ruling No. 22 (Doc. No. 2576), Order Regarding Document Production to MDL Repository. (Doc. No. 3178). Defendants have also been required to notify the PEC whenever a defendant "receives any notice that a pending federal investigation has concluded. This obligation adheres to: (1) any civil, criminal, administrative or other federal investigation; and (2) any investigation, even if a related investigation is still ongoing (*e.g.*, a defendant must inform Plaintiffs if the defendant receives notice that a criminal investigation has concluded, even if a

5

related civil investigation is still pending.)." (*Nunc Pro Tunc*[2] Order Regarding Requested Modifications to Discovery Ruling No. 22 (Doc. No. 3291) at 3.)

The *Nunc Pro Tunc* Order explains the Court's findings that broad, ongoing production obligations on Defendants and access for claimants in non-MDL cases to Defendants' confidential materials produced pursuant to those obligations promote efficiency.

### C. When Defendants sought similar rights with respect documents produced in the MDL, the PEC refused.

The net effect of these Orders and Rulings is clear: Defendants have ongoing obligations to produce multiple categories of documents and discovery from non-MDL sources into the Repository. Claimants in non-MDL cases may seek access to those documents and any other documents produced in the MDL by third parties in any non-MDL cases, including documents designated Confidential or Highly Confidential. *Defendants* in non-MDL cases, however, do not have reciprocal/parallel rights. Nothing in the Protective Order provides counsel for defendants in both the MDL and non-MDL cases with the same ability to access and seek to use documents produced into the MDL and marked Confidential or Highly Confidential. This issue has become more apparent as numerous non-MDL cases in state court have progressed, with active cases being litigated in West Virginia, Ohio, California, New York, and dozens of other states.

Further, issues that have arisen in discovery in those non-MDL cases reveal the inefficiencies, logistical issues, and unfairness that result from the Protective Order as it currently stands. In a case pending in Arizona state court, a non-MDL plaintiff's expert relied upon documents produced in the MDL by Defendants and third parties. The plaintiff, however, would not produce those documents to the defendants, claiming that because the defendants are also

---

[2] The *Nunc Pro Tunc* Order was issued to add a footnote to correct a statement made in the original order, which was filed at Doc. No. 3286.

6

parties to the MDL, they already have access to those documents and are authorized to use them in the Arizona case. But contrary to the plaintiff's claim, the terms of the Protective Order preclude Defendants in the MDL from using those documents outside the MDL. The circumstances in the Arizona case reveal the incongruous, inequitable effect of the Protective Order: a non-MDL plaintiff has greater access to, and a broader ability to seek to use, documents produced in the MDL than an MDL Defendant.

Similarly, the defendants in the *Ohio Attorney General* case desire to use discovery produced in MDL tracks 1, 1B, 2, and 3, because it relates to communities throughout Ohio implicated within the Attorney General's claims. Given the Attorney General's access to Defendants' MDL documents, defendants in that case should not be forced to engage in protracted discovery with every law enforcement agency, insurance company, government entity and municipality in Cleveland, Lake County, Cuyahoga County, Summit County, and Trumbull County, and other third parties who have produced documents into the MDL just to obtain access to the MDL productions of these entities. But that is precisely the result of the PEC's current refusal to agree to a fair modification of the Protective Order. Requiring the defendants to engage in extensive third-party discovery to obtain documents already produced in the MDL, particularly when no plaintiff bears the same burden, is contrary to this Court's stated purposes in creating the Repository.

Defendants approached the PEC about modifying the Protective Order to allow counsel for defendants in non-MDL cases the same access to, and potential use of, confidential documents produced in the MDL. Defendants sent Plaintiffs a proposed amendment, and Plaintiffs expressed concern about giving third parties notice that documents obtained from them would be produced in a non-MDL case, and about the disclosure of certain categories of documents, such as

7

documents related to Child Services.  To address those concerns, Defendants proposed additional amendments, adding a notice provision and opportunities for both Plaintiffs and third parties to object, and further agreed to carve out certain categories of documents.  Plaintiffs rejected that proposal, without providing any reasoning.[3]

## II.     The Court should amend the Protective Order to allow disclosure to all parties.

This Court's broad discretion with respect to discovery matters includes the decision whether to modify a protective order. *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 235 n.2 (6th Cir. 2016).  Where the party seeking modification bears its burden of establishing good cause, "a protective order is always subject to modification or termination for good cause . . . even where the parties have consented to its entry." *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 914 (E.D. Tenn. 2009) (internal citations omitted).

In exercising its discretion in this context, a "court must 'balance the potential harm to the party seeking protection against the requesting party's need for the information and the public interest served by its release.'" *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d at 914 (quoting *Manual for Complex Litigation* (Fourth) § 11.432 (2004)).  Efficiency is sufficient good cause to allow the modification of a protective order. *See, e.g.,* 8A Charles Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2044.1 (3d ed. 1998) ("Ordinarily, the most forceful case can be made [to modify a protective to provide] for access to use material as evidence in other litigation so that later litigants do not have to "reinvent the wheel.").  Indeed, "[w]here an

---

[3] Plaintiffs' last proposal is unworkable, as it removes all third party documents from the amendment and obviates a substantial part of the exercise.  Under Plaintiffs' proposal, the restrictions on Defendants' ability to access and seek to use protected documents produced in this case essentially nullify the efficiencies to be gained by an equal-access MDL document repository, and stand in stark contrast to the ease of access enjoyed by counsel for claimants in those cases.  Plaintiffs' edits also reveal that the parties are at an impasse on this issue.

8

appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." *Griffith v. Univ. Hosp., L.L.C.*, 249 F.3d 658, 661 (7th Cir. 2001) (quoting *Wilk v. Am. Med. Assoc.*, 635 F.2d 1295, 1299 (7th Cir. 1980)).[4]

Efficiency in discovery is becoming increasingly important to undersigned Defendants. Since the creation of the Repository and the entry of the Protective Order, non-MDL cases involving manufacture, marketing, sale, or distribution of opioid products have proliferated. It follows that the increase in non-MDL litigation is accompanied by an increase in discovery outside the MDL. That discovery involves documents and other information already produced by Plaintiffs and third parties in the MDL, which, as this Court has already acknowledged, is "broadly relevant" in those non-MDL cases.

Requiring Defendants to engage in duplicative discovery in non-MDL cases is inconsistent with this Court's position about the role of MDL discovery throughout this case to date. Indeed, allowing claimants in those cases to benefit from the MDL Repository was sufficient good cause for this Court to approve the Protective Order and grant Plaintiffs' requests with respect to

---

[4] Modifying a protective order to *equally* impose provisions seeking to avoid inefficient, duplicative discovery is also consistent with the purpose of MDL proceedings, which is to "prevent duplication of discovery . . . and to conserve and economize judicial effort." *Whelan v. Merrell-Dow Pharms., Inc.*, 117 F.R.D. 299, 300 (D.D.C. 1987); *see also id.* ("Efficiency and economy of resources are also achieved by eliminating the need to repeatedly depose and re-depose the same experts."); *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114, 116 (6th Cir. 1981) 6 (affirming the MDL court's decision to vacate protective orders entered by the transferor courts "to the extent that they prohibited the use of discovery to litigants who were not parties in the multidistrict litigation").

Defendants' discovery obligations in this case.  Extending equal treatment to defendants in non-MDL cases is sufficient good cause to justify the amendment requested by Defendants here.

This Court has already determined to use discovery in the MDL to create efficiencies in other litigations, as the Court has steadily increased Defendants' obligations to produce documents to the Repository.  From the outset, the Protective Order in this case has permitted attorneys for claimants in cases other than the MDL to not only access protected documents, but to seek to use those documents in their non-MDL cases.  The Court pointed to the anticipated benefits of its various Orders as a basis for declining to grant Defendants' relief from their production obligations with respect to the Repository. (*See, e.g., Nunc Pro Tunc* Order (Doc. No. 3291) at 4-5; Discovery Ruling No. 22 (Doc. 2576) at 1.)  In other words, the Court has already determined that allowing parties in non-MDL cases to use protected discovery produced in the MDL is appropriate and beneficial.

Defendants seek nothing more than the fair extension of this Court's rulings to defendants in non-MDL cases.  Modifying the Protective Order to give non-MDL defendants rights to seek protected MDL discovery is consistent with the Court's reasons for giving claimants in non-MDL cases that access.

The fair application of this Court's principles outweighs any potential harm to Plaintiffs.[5]  All Defendants request is an amendment that permits them to re-produce Confidential and Highly

---

[5] The PEC's purported concerns about the disclosure of certain categories of documents— *e.g.*, HIPAA-protected data and information from Child Services—have no basis.  Use of data protected by HIPAA is already strictly controlled by the Protective Order, which does not allow use of that information outside of the MDL (absent a court order). (*See* CMO 2, Protective Order (Doc. 441) at § XII.)  Documents from Child Services have already been heavily redacted to protect the privacy interests of children and their families, and, even then, Defendants offered to exclude those documents from the proposed amendment, but the PEC refused.  Regardless, the notice provision proposed by Defendants will address any concern about disclosing Child Services information.

Confidential discovery materials in non-MDL cases on the same terms that Plaintiffs may reproduce those materials to claimants in non-MDL cases. Defendants' proposed amendment preserves the requirement that counsel in a non-MDL case who receives protected information must agree to be bound by the terms of the Protective Order, and must execute the acknowledgment evincing that agreement. Thus, even if there is a separate protective order in a non-MDL case, protected information that is produced into that non-MDL case will also remain subject to the Protective Order in the MDL. In other words, Plaintiffs cannot point to any harm that will result from the proposed amendments to the Protective Order. Nor can they point to their reliance on the terms of the Protective Order as a basis for not allowing those amendments.

### III. Conclusion

Defendants' proposed amendments to the Protective Order are consistent with established law, as well as the reasoning that underlies this Court's various rulings with respect to discovery in this case. Every consideration weighs in favor of modifying the Protective Order as proposed by Defendants. Accordingly, Defendants respectfully request that the Court modify the Protective Order in this case as outlined in the Proposed Amended Protective Order that accompanies this Motion as Exhibit A.

Dated:  November 10, 2021    Respectfully submitted,

*/s/ Eric R. Delinsky (consent)*  
Eric R. Delinsky  
Alexandra W. Miller  
ZUCKERMAN SPAEDER LLP  
1800 M Street, NW, Ste. 1000  
Washington, DC 20036  
Tel: (202) 778-1800  
edelinsky@zuckerman.com  
smiller@zuckerman.com  

*Counsel for CVS Indiana L.L.C., CVS Rx Services, Inc., CVS TN Distribution, LLC, CVS Pharmacy, Inc. and Ohio CVS Stores, LLC*

*/s/ Ronda L. Harvey*  
Ronda L. Harvey (WVSB 6326)  
Ashley Hardesty Odell (WVSB 9380)  
Jennifer B. Hagedorn (WVSB 8879)  
BOWLES RICE LLP  
600 Quarrier Street  
Charleston, West Virginia 25301  
Tel:  (304) 347-1100  
rharvey@bowlesrice.com  
ahardestyodell@bowlesrice.com  
jhagedorn@bowlesrice.com

/s/ Kelly A. Moore (consent)
Kelly A. Moore
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6612
kelly.moore@morganlewis.com

Elisa P. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5917
elisa.mcenroe@morganlewis.com

*Counsel for Rite Aid of Maryland, Inc., Rite Aid Hdqtrs. Corp., and Rite Aid of Ohio, Inc.*

/s/ Kaspar J. Stoffelmayr (consent)
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
sharon.desh@bartlitbeck.com
sten.jernudd@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*

*Counsel for The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II*

/s/ Tara A. Fumerton (*consent*)
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Tel: (312) 269-4335
Fax: (312) 782-8585
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/ Francis A. Citera (consent)
Francis A. Citera
Gretchen N. Miller
GREENBERG TRAURIG, LLP
77 West Wacker, Suite 3100
Chicago, IL 60601
(312) 456-8400
citeraf@gtlaw.com
millerg@gtlaw.com

Michele Stocker
GREENBERG TRAURIG, LLP
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
(954) 768-8271
stockerm@gtlaw.com

*Counsel for Albertsons Companies, Inc.*

*/s/ William E. Padgett (consent)*
William E. Padgett (IN No. 18819-49)
Kathleen L. Matsoukas (IN No. 31833-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 236-1313
Fax: (317) 231-7433
william.padgett@btlaw.com
kathleen.matsoukas@btlaw.com

*Counsel for Defendants H. D. Smith, LLC, f/k/a. H. D. Smith Wholesale Drug Co.; H. D. Smith Holdings, LLC and H. D. Smith Holding Company*

*/s/ Donna M. Welch (consent)*
Donna M. Welch, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Tel: (312) 862-2000
donna.welch@kirkland.com

*Attorney for Defendants Allergan Finance, LLC, Allergan Sales, LLC, Allergan USA, Inc. and Allergan, Inc.*

*/s/ Gregory S. Chernack (consent)*
Gregory S. Chernack (Bar No. 472295)
(gchernack@hollingsworthllp.com)
Kathryn S. Jensen (Bar No. 494598)
(kjensen@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street N.W.
Washington, D.C. 20005
Tel: (202) 898-5800
Fax: (202) 682-1639

*Counsel for Publix Super Markets, Inc.*

*/s/ Paul J. Cosgrove (consent)*
Paul J. Cosgrove (0073160)
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Phone: (513) 698-5000
Fax: (513) 698-5001
Email: pcosgrove@ulmer.com

Joshua A. Klarfeld (0079833)
ULMER & BERNE LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
Phone: (216) 583-7000
Fax: (216) 583-7001
Email: jklarfeld@ulmer.com

*Counsel for Amneal Pharmaceuticals LLC and Amneal Pharmaceuticals of New York, LLC*

*/s/ Shannon E. McClure (consent)*
Shannon E. McClure
REED SMITH LLP
Three Logan Square 1717 Arch Street Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420 smcclure@reedsmith.com

*/s/ Rebecca Hillyer (consent)*
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: (215) 963-5000
Fax: (215) 963-5001
Rebecca.hillyer@morganlewis.com

*Counsel for AmerisourceBergen Drug Corporation*

*Counsel for Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Watson Laboratories, Inc.; Actavis, LLC, and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.*

*/s/ Sonya D. Winner (consent)*
Sonya D. Winner
COVINGTON & BURLING
Ste. 5400, Salesforce Tower
415 Mission Street
San Francisco, CA 94105
Tel: 415-591-6000
swinner@cov.com

*Counsel for Defendant McKesson Corporation*

*/s Brandan J. Montminy (consent)*
John P. McDonald
C. Scott Jones
Lauren M. Fincher
Brandan J. Montminy
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Tel: (214) 740-8000
Fax: (214) 756-8758
jpmcdonald@lockelord.com
sjones@lockelord.com
lfincher@lockelord.com
brandan.montminy@lockelord.com

*Counsel for Henry Schein, Inc. and Henry Schein Medical Systems, Inc.*

*/s/ J. Andrew Keyes (consent)*
J. Andrew Keyes
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
akeyes@wc.com

*Counsel for Defendant Cardinal Health, Inc.*

*/s/ Christopher B. Essig (consent)*
Christopher B. Essig (IL Bar No. 6272189)
Scott M. Ahmad (IL Bar No. 6298958)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
CEssig@winston.com
SAhmad@winston.com

*Counsel for Defendant Hikma Pharmaceuticals USA Inc.*

*/s/ James W. Matthews (consent)*
James W. Matthews
Ana M. Francisco
Katy E. Koski
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199

Tel: 617.342.4000
Fax: 617.342.4001
jmatthews@foley.com
afrancisco@foley.com
kkoski@foley.com

*Counsel for Anda, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of November, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

                                              */s Ronda L. Harvey*
                                              Ronda L. Harvey (WVSB 6326)

13238804.1