# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | |
| **This document relates to:** | |
| *County of Lake, Ohio v. Purdue Pharma L.P., et al.*, Case No. 18-op-45032 (N.D. Ohio) | **MDL No. 2804** **Case No. 17-md-2804** **Judge Dan Aaron Polster** |
| *County of Trumbull, Ohio v. Purdue Pharma, L.P., et al.*, Case No. 18-op-45079 (N.D. Ohio) | |
| **"Track 3 Cases"** | |

**PHARMACY DEFENDANTS' OBJECTIONS TO THE COURT'S**
**FINAL JURY INSTRUCTIONS AND VERDICT FORMS**

**Agreed Instructions (No Objections)**

The following instructions are agreed-upon:

1. Jurors' Duties

2. Burden of Proof – Preponderance of the Evidence

3. Consideration of Evidence

4. Direct and Circumstantial Evidence

5. Inferences from Evidence

6. Credibility of Witnesses

7. Opinion Testimony

8. Number of Witnesses

9. Charts and Summaries

10. Lawyers' Objections

11. Introduction (Case-Specific Instructions)

12. Corporate Defendants (Case-Specific Instructions)

13. Public Nuisance—Conclusion (Case-Specific Instructions)

14. Introduction (Deliberations)

15. Juror Notes (Deliberations)

16. Experiments, Research Investigation and Outside Communications—Admonition
    (Deliberations)

17. Unanimous Verdict (Deliberations)

18. Duty to Deliberate (Deliberations)

19. Interrogatories and Verdict Forms (Deliberations)

20. Juror Questions (Deliberations)

21. The Court Has No Opinion (Deliberations)

**Objection 1:  Evidence Defined**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

Evidence is all the testimony received from the witnesses including depositions, the exhibits admitted during the trial, the stipulations that the lawyers agreed to, and any facts which the Court requires you to accept as true.

Nothing else is evidence. The lawyers' statements and arguments are not evidence.  If you remember the facts differently from the way the attorneys have stated them, you should base your decision on what you remember. The lawyers' questions and objections are not evidence. You should not think that something is true just because an attorney's question suggests that it is true. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. And I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all these things. Do not even think about them. Do not speculate about what a witness might have said. You may not draw any inference from an unanswered question nor may you consider testimony which has been stricken in reaching your decision.

***Pharmacy Defendants' Objections*:**

Pharmacy Defendants have a continuing objection to any deviation in the Court's instructions from the instructions proposed by Pharmacy Defendants.  Dkt. 3758 at 7.

In addition, this instruction should make clear that information embedded into attorneys' questions, without any other evidence in the record to support it, should not be considered.  *See*

Judicial Council of California Civil Jury Instruction (2020 ed.), CACI No. 106, *available online at* https://www.justia.com/trials-litigation/docs/caci/100/106/; *see also* Dkts. 4137 & 4138.

**Objection 2:  Applicable Law – Public Nuisance – Introduction**

I will now instruct you on the elements of Plaintiffs' public nuisance claims.

Each Plaintiff alleges that each Defendant dispensed opioid products in a manner that endangered public health or safety, thereby creating a public nuisance.  Specifically, each Plaintiff claims that each Defendant substantially contributed to ~~an oversupply of legal prescription opioids, and to~~ diversion of ~~those~~ prescription opioids into the illicit market outside of appropriate medical channels, thereby endangering public health or safety.

Let me define for you the legal term "***public nuisance***." A "public nuisance" is an unreasonable and significant interference with a right held by the public in common that is ongoing today.  A public nuisance includes an unreasonable and significant interference with public health or public safety.

A right common to the general public is a right or an interest that belongs to the community-at-large.  It is a right that is collective in nature.  It is more than an aggregate of private rights by a large number of injured people.  A public right is different from an individual right that everyone has, like the right not to be assaulted or defrauded.  For a Defendant to be held liable for creating a public nuisance, a Plaintiff must show, by the greater weight of the evidence, that the Defendant did one or both of the following two things:

The Defendant engaged in ***intentional conduct*** that caused a significant and ongoing interference with a public right to health or safety; or

The Defendant engaged in ***unlawful conduct*** that caused a significant and ongoing interference with a public right to health or safety.

Please remember that you are being asked to determine only whether one or more of the Defendants created a public nuisance.  You are not being asked to determine whether there should

be a remedy for this claim, or what that remedy should be.  If you find that one or more of the Defendants created a public nuisance, the Court will determine the remedy.

***Pharmacy Defendants' Objections***:

Pharmacy Defendants have a continuing objection to any deviation in the Court's instructions from the instructions proposed by Pharmacy Defendants.  Dkt. 3758 at 7.

In addition, this instruction does not comport with Ohio law and is thus legally deficient. Consequently, Defendants object to this instruction as set forth in greater detail below.

***First***, Pharmacy Defendants' modification to the second paragraph is necessary because the definition of the alleged nuisance is confusing and potentially misleading.  As the Court's verdict form and instructions recognize, oversupply of legal prescription opioids does not itself interfere with public health and safety but rather must be paired with a finding that those opioids were diverted into the illicit market.  As drafted, this instruction could easily confuse the jury into believing that they can find a Pharmacy Defendant liable merely because that Defendant was a substantial factor in an "oversupply" of prescription opioids—regardless of any wrongful conduct or contribution to actual diversion.  To avoid this error, the general definition of nuisance should eliminate references to "oversupply" and should instead focus on whether each Pharmacy Defendant was the cause of "diversion" in the Track 3 counties.

For similar reasons, the jury should be told, in the Causation instruction, that the Pharmacy Defendants cannot be held liable for filling valid prescriptions.  Without such an express instruction, the jury can hold the Pharmacy Defendants liable for contributing to an "oversupply" of opioids by filling valid prescriptions, although they did nothing wrong.  *See, e.g.*, *People of the State of California v. Purdue Pharma, et al.*, Case No. CGC-13-534108, Slip Op. at 14 (Orange County Superior Court, Nov. 1, 2021) ("[T]he Federal government and the California Legislature

have already determined [] the social utility of medically appropriate prescriptions outweighs the gravity of the harm inflicted by them and so is not 'unreasonable'" such that "any adverse downstream consequences flowing from medically appropriate prescriptions cannot constitute an actionable public nuisance.").

Pharmacy Defendants additionally submit that the nuisance must be defined by the conduct that allegedly caused deleterious effects in the Plaintiff counties, not by the effects themselves. *See* Dkt. 3449-1 at 3 (citing *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013-Ohio-1035, ¶ 9 (8th Dist.)).  At minimum, however, the Court's instructions should focus the jury on whether diversion of prescription opioids away from legitimate medical channels and into an illicit market created a significant and unreasonable interference with the right to public health or safety in the Plaintiff counties, and if so, whether any given Pharmacy Defendant's conduct was a substantial factor in causing such diversion.

**Second**, this instruction erroneously instructs the jury that it may find liability based on an "intentional" theory of nuisance liability.  For the reasons stated in their directed verdict motion, Defendants object to instructing the jury that Defendants may be found liable for absolute public nuisance based on "intentional" conduct that fully complied with the CSA.  Plaintiffs' theory and evidence at trial go solely to conduct governed by the CSA—namely, the dispensing of prescription opioids.  Instructing the jury on "intentional conduct" (i.e., dispensing) that is not unlawful under the CSA risks a verdict contrary to both federal and state law.  *See* Dkt. 4098 at Section 1.C. and authorities cited therein.  The jury should be instructed as to the "unlawful conduct" prong only.

Even if the Court believes it must instruct the jury regarding both "intentional" and "unlawful" theories of nuisance, this instruction omits material elements of the "intentional"

standard.  The instruction fails to inform the jury that to prove public nuisance based on intentional conduct, Plaintiffs must prove that the conduct that they allege constitutes the nuisances is *both* intentional *and* unreasonable.  Both are required elements under Ohio law.  RESTATEMENT (SECOND) OF TORTS § 826, cmt. a ("For the common law crime of public nuisance, it was necessary that the interference with the public interest be unreasonable, in the sense that its utility is outweighed by the gravity of the interference with the public right."); *Soukoup v. Republic Steel Corp.*, 78 Ohio App. 87, 88 (Oh. Ct. App. 1946) (applying "intentional and unreasonable" test to case involving alleged air pollution); OJI 621.05.  Defendants propose instructing the jury that nuisance liability attaches for intentional acts if conduct is both intentional "and unreasonable," which is the correct standard under Ohio law.  *See* OJI 621.05(4)–(6).

*Third*, this instruction also fails to inform the jury that to prove public nuisance, Plaintiffs must prove legal causation (both but-for causation and proximate causation), which is a core element of such claim under Ohio law.  *See, e.g.*, *Comcast Corp. v. Nat. Ass'n of African American Owned Media, Inc.,* 140 S. Ct. 1009, 1014 (2020) (black letter requirement of but-for causation); *City of Cincinnati v. Deutsche Bank Nat'l Trust Co*., 863 F.3d 474, 480 (6th Cir. 2017); *Cincinnati v. Beretta USA Corp.*, 95 Oh. St. 3d 416, 426-27 (2002).

*Fourth*, this instruction also fails to inform the jury that to prove public nuisance, Plaintiffs must prove the "control" element of a public nuisance claim.  Under Ohio law, a plaintiff must prove that the defendant presently controls the conditions interfering with public health and safety. *See Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143 (Ohio 2002); *State ex rel. Hunter v. Johnson & Johnson*, __ P.3d __, 2021 WL 5191372, at *8–9 (Okla. Nov. 9, 2021).

*Fifth*, this instruction should be revised to clarify that each Plaintiff must satisfy its respective burden of proof as to each Defendant before the jury can find in favor of either Plaintiff

against any Defendant.  Defendants propose instructing the jury that nuisance liability attaches to any specific Defendant only if each Plaintiff satisfies its burden of proof on all elements against that specific Defendant, which is the correct standard under Ohio law.

*Sixth*, this instruction is legally incorrect because the alleged interference with "public health or public safety" does not qualify as interference with a true "public right" as required for public nuisance liability.  *See, e.g.*, *State ex rel. Hunter v. Johnson & Johnson*, __ P.3d __, 2021 WL 5191372, at *6–7 (Okla. Nov. 9, 2021); Dkt. 4098 at 23–24.

## Objection 3:  Public Nuisance – Intentional Conduct

Now, let me define some of the terms I just used.  One of those terms is "***intentional conduct***."

"Intentional conduct" occurs when a person acts with the purpose to produce a specific result.  A person intends an act when that act is done purposely, not accidentally.  The intent with which a person acts is known only to that person.  There are two ways to prove a person's intentional conduct.  One, when a person expresses their intent to others.  Or two, when a person somehow indicates their intent by their conduct.

For you to find that a person engaged in intentional conduct, it is enough that the person intended to act and knew, or was substantially certain, that the ~~circumstances resulting from that~~ act would cause the interference with public health or public safety.  It is not necessary for you to find that the person intended to cause a public nuisance.

~~If a person learns that circumstances resulting from their conduct interfere with public health or public safety, and the person continues that conduct, then the subsequent conduct is intentional.~~

***Pharmacy Defendants' Objections*:**

Pharmacy Defendants have a continuing objection to any deviation in the Court's instructions from the instructions proposed by Pharmacy Defendants.  Dkt. 3758 at 7.

In addition, Pharmacy Defendants object to this instruction in its entirety because, now that it is clear that Plaintiffs' claims are based on dispensing conduct that is governed by the Controlled Substances Act and its implementing regulations, the Court should strike the intentional conduct

10

instruction or clarify for the jury that liability for a public nuisance can never be based on intentional conduct that is authorized by a statute, ordinance, or regulation.

Pharmacy Defendants additionally object, assuming the Court does not strike this instruction, because the Court did not make the modifications to the third paragraph, which are necessary to conform to Restatement, as adopted by Ohio courts.  This section states that "an interference with the public right, is intentional if the actor . . . knows that *it* [*i.e.*, the interference with the public right] is resulting or is substantially certain to result from his conduct."  RESTATEMENT (SECOND) OF TORTS § 825 (emphasis added).  This proposed modification does not require the jury to find that a person intended to cause a "public nuisance."  Instead, as the next line states, "[i]t is not necessary for you to find that the person intended to cause a public nuisance." The Restatement, in other words, does not require knowledge of *law* but knowledge of *fact*.  The person must know, or be substantially certain, of the *fact* that his act is interfering with the public right at issue—here, public health and public safety.

Pharmacy Defendants additionally object to the Court's inclusion of the fourth paragraph, which should be deleted in its entirety.  The law requires the jury to find knowledge of or substantial certainty about the future consequences of chosen conduct.  *Id.*  While a person's continued conduct after learning about past consequences could, in some circumstances, support an inference of actual knowledge or substantial certainty going forward, it is not itself enough for intentional conduct.  The deleted language creates an irrebuttable (and incorrect) presumption of intent, regardless of changes in circumstances.  The deleted language is also unnecessary and

therefore confusing.  For *all* conduct, the jury must ultimately determine what the Defendant knew (or was substantially certain) would happen as a result of that conduct.

Pharmacy Defendants further object to this fourth paragraph.  The instruction is redundant and confusing.  To have acted intentionally at any time, the Defendant must know that an unreasonable interference with a public right will result or is substantially certain to result from its conduct *at the time of the act*.  That concept is already explained in a clear and straightforward manner in the paragraph above.  Additional instruction about "continuing conduct" introduces a substantial risk that the jury will be confused and incorrectly think that intent can be created retroactively.  If this paragraph is incorrectly included over Pharmacy Defendants' objection, it should at least be altered:  "Whether or not a person's conduct was intentional when first engaged in, if the person continues the conduct after he knows that an interference with public health or public safety is resulting from it, that subsequent conduct is intentional."  *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 825 cmt. d.  The Court should also inform the jury that their determination of intent must be based on facts known to particular individuals at the time they acted, not based on hindsight or aggregated knowledge, and that they should consider any changed circumstances between the prior and current conduct.

Additionally, whether a person "*learns*" that conduct is interfering (significantly and unreasonably) with a public right may be different from what the person *knows*.  The verb "learn" focuses on what information has been communicated to a person rather than the understanding of the facts that result.  In its current form, the instruction would allow the jury to find that a defendant knew something because certain information had been imparted to various agents or employees without offering any proof of actual corporate knowledge or substantial certainty.

12

### Objection 4: Settlement Agreements

You have heard testimony about settlements that certain defendants entered into with the DEA. This settlement evidence has been admitted for a limited purpose. You may consider these settlements only to the extent you believe they bear on what notice or knowledge the defendant received as a result of the settlements, or to the extent you believe they bear on the defendant's intent. You may *not* infer or conclude that the allegations in the settlements were valid or accurate. You may *not* infer liability or draw any conclusions about a defendant's potential liability in this case based upon the fact that it entered into these settlements. Parties enter into settlements for a variety of reasons that have absolutely no bearing on their liability, and so settlements are irrelevant to the issue of liability.

***Pharmacy Defendants' Objections*:**

Pharmacy Defendants objected to the admission of these agreements and continue to believe they should not have been admitted. Now that they have, Pharmacy Defendants have to settle for a curative instruction. The curative instruction should be stronger, though, as indicated by the redline above. Simply put, settlement agreements are "not relevant to the issue of liability." *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 480 (6th Cir. 2007).

## Objection 5:  Employee Conversations

You have heard testimony ~~from one of more of the Defendants' employees~~ about conversations ~~they testified they had~~ with state and federal officials ~~from State Boards of Pharmacy~~.  This evidence has been admitted for a limited purpose.  You may consider their recollections of those conversations as evidence of ~~the Defendants' own~~ knowledge, motivation, understanding of legal obligations, or intent.  You may not consider the testimony as evidence of any official state or federal policy ~~of any Board of Pharmacy~~.

***Pharmacy Defendants' Objections*:**

Pharmacy Defendants object to this instruction as prejudicial, unnecessary, confusing, and incomplete.  Instead of curing prejudice, the instruction creates it.  It essentially instructs the jury to discount one particular piece of evidence that is particularly unfavorable to Plaintiffs.  The Court has made numerous hearsay rulings, and the only limiting instruction it has given concerns settlement agreements, a special category of evidence that are specifically protected by their own rule of evidence (Rule 408) and that Courts have long acknowledged pose a particular threat of prejudice.  *Cf. Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 805 (6th Cir. 2007) (reversing verdict for admission of settlement offer, but noting that limiting instruction added an (ultimately insufficient) "added veneer of protection").

By contrast, the ruling regarding Defendants' employees' conversations with Board of Pharmacy officials is a garden-variety evidentiary ruling.  Indeed, the Court has made numerous evidentiary rulings admitting evidence for limited purposes or over which Defendants disagree that have not prompted a special limiting instruction.  For example, the Court has admitted hearsay portions of the *Holiday* ruling over objection on notice grounds.  *See* Dkt. 3992 at 25-27; *see also, e.g.*, Trial Tr. vol. 6 at 1343-44 (admitting Catizone statement regarding hearsay views of stakeholder group regarding trinity drugs).  None of those rulings prompted a particular limiting

14

instruction (far less a *sua sponte* one).  Should the Court give a limiting instruction regarding only one particular category of evidence, it is necessarily implying that the evidence at issue in the instruction is somehow less reliable than the evidence at issue in these other rulings.  If the Court is going to give this Board of Pharmacy-related instruction, then, it should give Defendants an opportunity to propose limiting instructions regarding these and other evidentiary rulings with which Defendants disagree.

Indeed, the Court has repeatedly allowed counsel to suggest through questioning the content of hearsay documents, including administrative rulings and the DOJ lawsuit against Walmart, among others, without actually admitting the document.  That has far more potential to mislead the jury than testimony regarding a witness's own conversations with Board of Pharmacy officials.  Thus, if the Court is going to give Plaintiffs' requested limiting instruction, Walmart requests that it also give the following limiting instruction:

### Questions Are Not Evidence

I previously instructed you that the lawyers' statements and arguments are not evidence, and that the lawyers' questions and objections are not evidence.  The only evidence from witness testimony are the answers given by the witness.  You have heard several questions from lawyers in this action regarding what the lawyers contend are actions and determinations of various administrative authorities, what the lawyers contend certain lawsuits say, about certain numbers or data, and other such issues.  I instruct you to disregard the content of those questions and focus only on the witness testimony.  If the witness was not familiar with the lawsuit or administrative action or data to which the questioner referred, there is no evidence that it existed and you cannot base your decision, even in part, on such lawsuit or administrative action or data.  You may not infer liability or draw any conclusions about a defendant's potential liability in this case based upon any suggestions made in questioning, as opposed to facts elicited through witness testimony.

At bare minimum, the Court must modify its proposed limiting instruction as redlined above.  The Court should also broaden the instruction to include all conversations with state and federal officials that have been discussed at trial, not single out one instance of such evidence.  Accordingly, the Court's proposed instruction should be broadened to include all discussions with

state and federal officials.  The Court should also make clear that the evidence is admissible to show the witnesses' motivations and understanding of their legal obligations as well as intent. Accordingly, the instruction would read as redlined above.

**Objection 6:  Public Nuisance – Unlawful Conduct**

Next, let me define the term "***unlawful conduct***."

"Unlawful conduct" can occur either by acting in a certain way that is prohibited by law, or by failing to act in a certain way that is required by law.  Specifically, unlawful conduct occurs when a person engages in conduct that is prohibited by a statute, ordinance, or regulation that controls safety.  And unlawful conduct also occurs when a statute, ordinance, or regulation that controls safety requires a person to engage in certain conduct, but the person fails to do so.

The person does not need to know their conduct is unlawful for an unlawful act to occur.

A law controls safety if it imposes specific legal requirements for the protection of the health, safety, or welfare of others.  The federal and Ohio Controlled Substances Acts and their accompanying regulations are laws that control safety.  I will soon provide more details about the standards that these laws and regulations impose.

Conduct that is ~~fully~~ authorized by a statute, ordinance, or regulation cannot create a public nuisance, because it is lawful conduct.  ~~But if a person's conduct does not comply with what is authorized by law, then that conduct may be unlawful conduct.~~

Plaintiffs contend each Defendant's conduct with respect to their dispensing of controlled substances did not comply with the Federal and Ohio Controlled Substances Acts, and their accompanying regulations.  Prescription opioids are controlled substances within the meaning of Federal and Ohio law and regulations.

The Federal and Ohio Controlled Substances Acts and their accompanying regulations do not require strict or perfect compliance.  Only substantial compliance is required.  In other words, not every act that is in violation of the law can be a public nuisance.  Only unlawful conduct that causes an unreasonable and significant interference with a public right to health or safety can be a public nuisance.

17

***Pharmacy Defendants' Objections*:**

Pharmacy Defendants have a continuing objection to any deviation in the Court's instructions from the instructions proposed by Pharmacy Defendants. Dkt. 3758 at 7.

In addition, Pharmacy Defendants specifically object to this proposed instruction.

***First***, referring the jury to the later instructions federal and Ohio Controlled Substances Acts and their accompanying regulations—"I will soon provide more details about the standards that these laws and regulations impose"—is necessary to avoid confusion and to avoid the jury presuming that Defendants engaged in unlawful conduct. After all, the Court, not the jury, must determine what "unlawful conduct" could support public nuisance liability. *City of Hamilton v. Dilley*, 120 Ohio St. 127, 131 (1920) ("Under all the authorities, it is the province of the court to define a nuisance and the province of the jury to determine whether the circumstances of the particular cases come within the definition of a nuisance."); *see also, e.g.*, *United States v. Hill*, 167 F.3d 1055, 1069 (6th Cir. 1999) ("Furthermore, it is within the sole province of the court to determine the applicable law and to instruct the jury as to that law" (*quoting In re Air Crash Disaster,* 86 F.3d 498, 523 (6th Cir. 1996)) (internal quotation marks omitted). To be an accurate statement of the law, the instruction must make clear that liability can rest only on particular violations previously determined by the Court to be a proper basis for liability.

***Second***, Pharmacy Defendants object to the word "fully" because it improperly adds a heightened requirement found nowhere in the law. Conduct can be incidental to (or even necessary for) compliance with the law without being *fully* authorized. Where the conduct at issue is governed by a comprehensive regulatory scheme, all the law requires is compliance. *See* RESTATEMENT (SECOND) OF TORTS § 821B, cmt. f ("[C]onduct that is fully authorized by statute, ordinance or administrative regulations does not subject the actor to tort liability."); *id.* ("[I]f there

has been established a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct, the courts are slow to declare an activity to be a public nuisance if it complies with the regulations."); OJI § 621.09, Regulated Activity (same).

*Third*, Pharmacy Defendants object to the sentence, "But if a person's conduct does not comply with what is authorized by law, then that conduct may be unlawful conduct." Deletion of this sentence is necessary because the language is confusing and misleading, suggesting to the jury that any conduct that is not "authorized by law" is unlawful. But countless activities are not "authorized" by any statute, ordinance, or regulation and yet are perfectly lawful because they are not forbidden. Authorization is a safe harbor against a public nuisance claim based on unlawful conduct; a lack of authorization is not itself proof of unlawful conduct.

*Fourth*, Pharmacy Defendants reiterate their prior objections to the notion that the federal and Ohio Controlled Substances Acts and each and every one of their regulations are "laws that control safety." They are not. *See* Dkt. 4098 at 26–27.

*Fifth*, Pharmacy Defendants object to this instruction because it erroneously fails to inform the jury that if conduct is authorized by a complex regulatory scheme, it cannot form the basis of nuisance liability. *See* OJI § 621.09; *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App. 3d 704, 713 (1993) ("Since a pollution control facility operates under the sanction of law, it cannot be a common-law public nuisance. This is but another way of saying that although it would be a nuisance at common law, conduct which is fully authorized by statute or administrative regulation is not an actionable tort." (internal citations omitted)); RESTATEMENT (SECOND) OF TORTS § 821B, cmt. f ("Although it would be a nuisance at common law, conduct that is fully authorized by statute, ordinance or administrative regulation does not subject the actor to tort liability."); *see also, e.g.*, *People of the State of California v. Purdue Pharma, et al.*, Case No. CGC-13-534108, Slip Op. at

19

14 (Orange County Superior Court, Nov. 1, 2021).  Such an instruction is legally correct and necessary to prevent that jury from finding that conduct authorized by the Controlled Substances Act can nevertheless supports nuisance liability.

*Sixth*, Pharmacy Defendants object to the line, "The person does not need to know their conduct is unlawful for an unlawful act to occur."  While that is a *generally* true statement of the law in many contexts, it is misleading in this specific context—a pharmacist filling prescriptions. For one thing, the Supreme Court has agreed to decide this Term whether the prescribing physician's subjective state of mind is relevant and determinative to whether a prescription is improper under the CSA.  *See Ruan v. United States*, 2021 WL 5148067 (U.S. Nov. 5, 2021); *Kahn v. United States*, 2021 WL 5148069 (U.S. Nov. 5, 2021).  Without an underlying improper prescription, which could turn on a physician's subjective state of mind, there can be no liability for the pharmacist's breach of a corresponding responsibility.  And even more to the point, liability arises under the regulation at issue only when a pharmacist "knowingly" fills a prescription that was not written for a legitimate medical purpose—itself requiring knowledge (and potentially knowledge of the physician's subjective state of mind).  26 C.F.R. § 1306.04(a).  Without this context, this instruction is only half true, and thus is misleading.

20

**Objection 7: Unlawful Conduct – Dispensing**

Under both Federal and Ohio laws and regulations, ~~entities that are authorized to dispense controlled substances are required to provide effective controls and procedures to guard against theft and diversion.  A~~ a prescription for a controlled substance must be issued for a legitimate medical purpose by a doctor, or other registered prescriber, acting in the usual course of his or her professional practice.  The Federal and Ohio Controlled Substances Acts and their accompanying regulations also provide that a corresponding responsibility rests with the pharmacist who fills the prescription. ~~has a corresponding responsibility for proper dispensing of controlled substances for a legitimate medical purpose.  The corresponding responsibility for proper dispensing of valid prescriptions extends to the pharmacy itself.~~

A violation of the corresponding responsibility occurs only when a person knowingly fills ~~or allows to be filled~~ an illegitimate prescription.  ~~In this context, "knowingly" includes when a person acts with deliberate ignorance or willful blindness to information in their possession.~~

***Pharmacy Defendants' Objections*:**

Pharmacy Defendants have a continuing objection to any deviation in the Court's instructions from the instructions proposed by Pharmacy Defendants.  Dkt. 3758 at 7.

In addition, Pharmacy Defendants object to this instruction for a variety of reasons and on a variety of grounds:

For the reasons stated in Pharmacy Defendants' past briefs and reiterated in the motions for judgment as a matter of law under Rule 50(a), this instruction misstates the requirements placed on a pharmacy for dispensing opioids.

But even taking this Court's understanding as a given, this instruction is erroneous.

The regulation on which this instruction is based is 26 C.F.R. § 1306.04(a).  It provides that a pharmacist fails to exercise corresponding responsibility only when she "knowingly" fills a

prescription that was not written for a legitimate medical purpose.  The full text of the regulation reads:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person ***knowingly*** filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

21 C.F.R. § 1306.04(a) (emphasis added).  The applicable Ohio regulation, Ohio Administrative Code 4729-5-21(A), is virtually identical.  The Court should add the word "only" to make clear that the only way to violate the regulation is *knowingly*.

Pharmacy Defendants also object to the instruction that states "[t]he corresponding responsibility for proper dispensing of valid prescriptions *extends to the pharmacy itself*" (emphasis added).  This incorrectly instructs the jury that the legal obligation to exercise corresponding responsibility extends from the pharmacist to the pharmacy.  The unambiguous language of the regulation states that the corresponding responsibility "rests with the pharmacist who fills the prescription"—without any mention of the *pharmacy*.  *See* Dkt. 4098 at 28–30.

Finally, Pharmacy Defendants object to the instruction on willful blindness, which is not enough to prove the "knowingly" requirement in this context.  This is true regardless of how the Supreme Court decides recently granted *Ruan* or *Kahn*, but it is especially so if knowledge requires *subjective* belief that the script is not for legitimate purpose.  *See Ruan v. United States*, 2021 WL 5148067 (U.S. Nov. 5, 2021); *Kahn v. United States*, 2021 WL 5148069 (U.S. Nov. 5, 2021).  Moreover, the preamble to the corresponding responsibility regulation expressly states that the word "knowingly" was added "to require knowledge" of illegitimacy.  Department of Justice,

Bureau of Narcotics and Dangerous Drugs, "Regulations Implementing the Comprehensive Drug Abuse Prevention and Control Act of 1970, 36 Fed. Reg. 80, 7777 (Apr. 24, 1971).  If this Court persists in instructing the jury on willful blindness, it should instead instruct the jury as follows: "A pharmacist may not lawfully fill an opioid prescription if the pharmacist knows that the prescription lacked a legitimate medical purpose, including if the pharmacist actually believes it is highly probable that the prescription does not have a legitimate medical purpose and the pharmacist consciously takes deliberate action to avoiding confirming that belief."  *See United States v. Mitchell*, 681 F.3d 867, 877 (6th Cir. 2012) ("Deliberate avoidance is not a standard less than knowledge; it is simply another way that knowledge may be proven." (quoting *United States v. Severson*, 569 F.3d 683, 689 (7th Cir. 2009)).)

Finally, Pharmacy Defendants object to this instruction on the ground that it apples the "effective controls against diversion" requirement in 21 C.F.R. § 1301.71(a) to the dispensing of prescription opioid medications.  With respect to pharmacies, this regulation only imposes requirements for in-store physical security controls, and the Court has stated during the trial that the theft or loss of prescription opioid medications is not relevant to Plaintiffs' claims.

## Objection 8:  Public Nuisance – Causation

Under either of the two ways of proving public nuisance – that is, showing intentional conduct or unlawful conduct – a Plaintiff must prove by the greater weight of the evidence that a Defendant's conduct ***caused*** a significant and unreasonable interference with a right to public health or safety that is ongoing today.  Let me explain something about causation.

You may find a Defendant liable only if you conclude the Defendant was a ***proximate cause*** of a public nuisance.  A public nuisance may be proximately caused by a Defendant's act or failure to act.  A Defendant's conduct proximately caused a public nuisance if the circumstances that constitute the nuisance are the natural and foreseeable result of that conduct.  There may be more than one proximate cause of a public nuisance, but causes that are merely incidental are not proximate causes.  To be a proximate cause, the acts or omissions of a Defendant must be a substantial factor in producing circumstances that unreasonably interfere with a public right to health or safety.

An individual Defendant's conduct need not be independently capable, all by itself, of causing the public nuisance.  There may be multiple causes of a public nuisance.  The fact that some other cause or causes combined with a Defendant's conduct in creating the public nuisance does not relieve that Defendant from liability if the Plaintiff can prove that the conduct the Defendant engaged in was a ***substantial factor*** in creating the public nuisance.  A Defendant's conduct is "substantial" if a reasonable person would regard that conduct as the cause, or one of the material, meaningful, or considerable causes, of the nuisance.  ~~If you find that the conduct of any Defendant proximately caused a public nuisance, it is not a defense to liability that some other entity may also be to blame.~~

In addition, the Plaintiff must show, by the greater weight of the evidence, that the conduct a Defendant engaged in could reasonably be expected to cause an interference with public health

24

or safety.  A Defendant does not, however, need to foresee that their conduct would lead to the specific nuisance that occurred.

***Pharmacy Defendants' Objections***:

Pharmacy Defendants have a continuing objection to any deviation in the Court's instructions from the instructions proposed by Pharmacy Defendants.  Dkt. 3758 at 7.

In addition, Pharmacy Defendants object across the board to this erroneous causation instruction.  It is both incomplete and inaccurate.  Pharmacy Defendant's proposed causation instruction should be given instead.  In no particular order:

***First***, Pharmacy Defendants object to the Court's failure to include anything at all on "but for" causation.  But-for causation is required under Ohio law and is a distinct concept from proximate causation.  *Comcast Corp. v. Nat. Ass'n of African American Owned Media, Inc.* 140 S. Ct. 1009, 1014 (2020) (black letter requirement of but-for causation); *Cincinnati v. Beretta USA Corp.*, 95 Oh. St. 3d 416, 426-27 (2002) (adopting proximate causation standard from *Holmes v. Security Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992)).  Plaintiffs have conceded that both are required.  Dkt. 2204 at 33 ("Under Ohio law, a plaintiff must show that a defendant's wrongful conduct was a cause—i.e., both a cause-in-fact and a legal/proximate cause—of damage to Plaintiffs.  *In re Gadolinium-Based Contrast Agents Prod. Liab. Litig.*, 2013 WL 593993, at *3 (N.D. Ohio Feb. 15, 2013).").

It would also be erroneous to disregard alternative causes in determining but-for causation.  Plaintiffs and their experts identified a number of alternative causes dating back to Plaintiffs' complaints.  *See* Dkt. 4064 at 3547:12-14, 3532:23-3533:4, 3588:10-3559:13; Lake Complaint ¶¶ 11-12 (setting forth allegations of fraudulent marketing by manufacturers); Trumbull Complaint ¶¶ 11-12 (same); Lake Complaint ¶ 273-75 (same); Trumbull Complaint ¶¶ 273-75 (same); Lake

Complaint ¶¶ 717-23 (alleging distributor misconduct); Trumbull Complaint ¶¶ 717-23 (same). And the evidence at trial has confirmed and multiplied those alternative causes.  *See* Dkt. 4098 at 15–20.

Moreover, prescription opioids dispensed to customers to fill prescriptions for legitimate medical use cannot be a but-for cause of a public nuisance.  *See* 21 C.F.R. § 1306.04(a).

The jury should be told to apply the "substantial factor" test if and only if it determines that conduct by non-parties caused a nuisance (necessarily raising questions of apportionment).  As the Comment to OJI 405.01 explains: "The substantial factor test is used to determine liability when factors other than the negligence of the tortfeasor may have caused the plaintiff's damages."  *See also Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St. 3d 609 (1995), citing *Pang v. Minch*, 53 Ohio St. 3d 186 (1990); *In re Bendectin Litig.*, 857 F.2d 290, 311 (6th Cir. 1988) (substantial factor applies "where there are simultaneous actors, [any one] of whose acts could have been 'but for' causes of plaintiffs' injuries").  And, substantial factor should only be considered *after* the jury has determined that a Defendant is a but-for and proximate cause of a nuisance. In a decision addressing causation under the federal Controlled Substances Act, the Supreme Court noted that, after the Restatement (Second), "no case has been found where the defendant's act could be called a substantial factor when the event would have occurred without it." *Burrage v. United States*, 571 U.S. 204, 215–16  (2014) (citation omitted).  It is clear legal error to construe the substantial factor test to allow a jury to find a defendant liable for nuisance "when the [nuisance] would have occurred without it."  *Id.*; *see also* RESTATEMENT (SECOND) TORTS § 432; *Springsteel v. Jones & Laughlin Steel Corp.*, 192 N.E.2d 81, 87 (Ohio App. 1963); *Skinner v. N. Mkt. Dev. Auth., Inc.*, 1997 WL 381638, at *3 (Ohio App. 1997).

**Second**, Pharmacy Defendants object to the Court's failure to include Ohio law's directness requirement. The proposed instruction appears to be based on the general Ohio causation instruction, but public-nuisance claims are different. Even this Court recognized that this directness requirement "is more stringent than most state-law requirements." *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 789-90 (N.D. Ohio 2020). Indeed it is.

For public nuisance, the law requires direct causation. *City of Cincinnati v. Deutsche Bank National Trust Co.*, 863 F.3d 474, 480 (6th Cir. 2017) (stating that in addition to foreseeability, proximate cause "requires some direct relation between the injury and the injurious conduct"). In *Berretta*, the Ohio Supreme Court adopted the same causation standard for public nuisance that the Supreme Court applied in *Holmes*. 95 Oh. St. 3d at 426-27. Applying that standard, the Sixth Circuit has rejected public nuisance claims where the causal chain is too long. *See, e.g.*, *City of Cincinnati*, 863 F.3d at 480-81; *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 502 (6th Cir. 2010). The Sixth Circuit has noted in the RICO context (which contains the same directness requirement) that "*Holmes* follows a course marked by a long line of Supreme Court cases denying antitrust standing to plaintiffs who suffer derivative or 'passed-on' injuries." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 613-15 (6th Cir. 2004). And, as this Court recognized, citing *Holmes*: "The general tendency of the law, in regard to damages at least, is not to go beyond the first step." *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 793 (N.D. Ohio 2020). The same rationale applies to the monetary relief Plaintiffs seek here, even though they call it abatement, because an extended causal chain produces the same administrative difficulties identified in *Holmes*. *In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745, 766-67 (N.D. Ohio 2020) (again quoting *Holmes*, 503 U.S. at 269-70).

27

It would therefore be erroneous to instruct the jury that an "unbroken chain" is sufficient because even an unbroken chain may have too many links to satisfy the direct causation standard applicable to public nuisance. "In a philosophical sense, the consequences of an act go forward to eternity." *CSX Transp., Inc.*, 564 U.S. 685, 706-07 (2011) (Roberts, C.J., dissenting). This is known as the "butterfly effect," where "a butterfly stirring the air today in China can transform storm systems next month in New York." *Aransas Project v. Shaw*, 775 F.3d 641, 657 n.10 (5th Cir. 2014) (per curiam); *see also United States v. Wang*, 222 F.3d 234, 239 n.1 (6th Cir. 2000). "But under the law, a defendant's liability cannot also go forward to eternity. And a butterfly in China is not the proximate cause of New York storms. Instead, proximate cause prevents liability where there is not a sufficient link between the defendant's conduct and the plaintiff's injuries. So proximate cause requires us to draw a line somewhere in the sand—refusing to extend liability beyond a certain point." *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019).

The Court's instruction, in short, does not satisfy—indeed, does not even attempt to satisfy—the direct causation standard. It thus fails to convey to the jury two separate causation findings it must make: (1) was the Defendant's conduct a *but-for* cause of the nuisance; and (2) was the Defendant's conduct a *direct* cause.

**Third**, Pharmacy Defendants object to the instruction for failure to explain foreseeability as a distinct factor in proximate causation. The official Ohio instructions contain such an instruction, OJI 401.07, and rightfully so. *See also Cascone v. Herb Kay Co.*, 6 Ohio St. 3d 155, 160 (1983). Foreseeability overlaps with, but is not identical to, directness. *Crosby v. Twitter, Inc.,* 921 F.3d 617, 623-24 (6th Cir. 2019). "Though foreseeability is an element of the proximate cause analysis, it is distinct from the requirement of a direct injury." *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 850 (6th Cir. 2003).

28

The instruction should also properly define foreseeability from the perspective of the Defendant at the time it engaged in the conduct, as in Defendants' proposed instruction.  *See* OJI 401.07; *see also Cascone v. Herb Kay Co*., 6 Ohio St. 3d at 160.  The causation inquiry does not require the Defendant to have actually foreseen the harm (although that is required to prove absolute public nuisance based on intentional conduct), but it does require that the harm be foreseeable to the actor at the time, not to the jury in hindsight.  "[A]n injury is 'foreseeable' if the defendant knew or should have known that his act was likely to result in harm to someone.  70 Ohio Jur. 3d Negligence § 11 (citing *Bailey v. U.S.*, 115 F. Supp. 3d 882, 893 (N.D. Ohio 2015)."  *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 WL 6628898, at *18 (N.D. Ohio Dec. 19, 2018).  "[F]oresight, not retrospect, is the standard of diligence."  70 Ohio Jur. 3d Negligence § 11.  "The foreseeability of harm, which affects the extent of the duty owed, usually depends on the defendant's knowledge."  *Id.*; *see also* Restatement (Second) of Torts § 289.

**Fourth**, and similarly, Pharmacy Defendants object to the instruction for failure to address when an intervening cause interrupts the chain of causation.  Again, the official Ohio instructions contain such an instruction, OJI 401.07, and again rightfully so.  *See, e.g.*, *Adams v. Lift-a-Loft Corp.*, 1999 WL 33105610, *3 (S.D. Oh.  Nov. 12, 1999); *Federal Steel & Wire v. Ruhlin Constn.*, 45 Ohio St. 3d 171, 175 (1989); *id.* at 177 (discussing Restatement (Second) of Torts §§ 448 and 449); *see also* Restatement (Second) of Torts § 442 (consideration for determining if an intervening cause is a superseding cause).  Plaintiffs have conclusively admitted, by alleging in their complaint, that the separate conduct of opioid manufacturers and major distributors to change the standard for prescribing opioids caused the alleged nuisance.  In addition, the evidence has shown that the conduct of numerous independent actors intervenes between the defendants'

conduct and the alleged nuisance.  *See* OJI 405.05.4; *Cascone v. Herb Kay Co.*, 6 Ohio St. 3d 155, 159 (1983) ("Whether an intervening act breaks the causal connection between the negligence and the injury, thus relieving one of liability for his negligence, depends upon whether that intervening actor was a conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who was guilty of the negligence.") (citing RESTATEMENT (SECOND) OF TORTS § 440).

*Fifth*, Pharmacy Defendants object to the instruction on "substantial factor," which the instruction incorrectly and improperly defines.  The instruction omits the relevant considerations under the Restatement.  *See* RESTATEMENT (SECOND) TORTS § 433; *see also Schwartz v. Honeywell Int'l, Inc.*, 102 N.E.3d 477, 482 (Ohio 2018).  It also omits the requirement that a "substantial factor" must be a but-for cause of the alleged harm.  RESTATEMENT (SECOND) TORTS § 432; *Springsteel v. Jones & Laughlin Steel Corp.*, 192 N.E.2d 81, 87 (Ohio App. 1963); *Skinner v. N. Mkt. Dev. Auth., Inc.*, 1997 WL 381638, at *3 (Ohio App. 1997).

This instruction is critical in this case as even plaintiffs' own experts have testified that non-parties such as drug manufacturers, the FDA, and the DEA caused the "opioid epidemic" or were the "major causes."  Dkt. 4064 at 3547:12-14, 3532:23-3533:4, 3588:10-3559:13.

*Sixth*, Pharmacy Defendants object to the following sentence, which should be deleted:  "If you find that the conduct of any Defendant proximately caused a public nuisance, it is not a defense to liability that some other entity may also be to blame."  This confusingly implies that but-for causation is not required, which is contrary to law.  What is more, the confusion is unnecessary, given that the Court already will have instructed the jury that a Defendant may be liable if it is a "substantial factor," even if other causes also contributed to the alleged public nuisance.

30

**Seventh**, Defendants object to the level of generality the jury is asked to determine causation.  The causation question should concern whether the defendant's conduct caused the specific significant and unreasonable interference with public health as described in the substantive instruction defining the alleged nuisance.  The jury must be asked to determine if the defendant caused a specific nuisance, not a generic interference with public health or public safety.

## **Objection 9:  Public Nuisance – Significant and Unreasonable**

I have instructed you that a public nuisance is an *unreasonable* interference with a right held by the public in common, and I have used the phrase "*significant* interference with a public right to health or safety."  Let me define the terms "significant" and "unreasonable."

An interference with a public right may range from a petty annoyance to serious harm.  An interference with a public right is not significant or unreasonable if it causes only a relatively slight amount of inconvenience.  An interference with a public right is significant or unreasonable if it causes greater harm than the public should be required to bear, considering all the circumstances.  When you consider whether an interference with a public right is significant or unreasonable, some of the factors you may consider include the nature, extent, and duration of the interference, and the social value of the Defendant's conduct.

***Pharmacy Defendants' Objections*:**

Pharmacy Defendants object across the board to this erroneous instruction.  The entire second paragraph is wrong and should be replaced with the following:

> Conduct is "*unreasonable*" when the gravity of the harm to Plaintiff outweighs the utility of the Defendant's conduct.
> When deciding the *gravity of the harm* to the Plaintiff, if any, you should consider factors such as the extent of the harm, the character of the harm, and the ease or difficulty with which the Plaintiff could avoid the harm.
> When deciding the *utility of the Defendant's conduct*, if any, you should consider factors such as the social value of the primary purpose of the Defendant's conduct and the impracticability of preventing or avoiding the Defendant's conduct.

The problems with the second paragraph in the Court's instruction are set out below.

***First***, Pharmacy Defendants object to the sentence that reads, "An interference with a public right may range from a petty annoyance to serious harm."  A jury could easily be confused with this sentence, as it appears to conflict with the remainder of the paragraph.  As the rest of this paragraph acknowledges, an interference with a public right is *not* actionable if it amounts to a

"relatively slight amount of inconvenience." Yet, the sentence in question wrongfully implies that even a "petty annoyance" could be actionable. These sentences are in conflict, therefore, and would accordingly confuse the jury and risk a verdict based on the wrong law. Because this sentence is unnecessary to understand the concept of "significant" and could lead to juror confusion, it should be deleted.

*Second*, Pharmacy Defendants object to the failure to incorporate the concept of "unreasonable," set out in the official Ohio instructions. OJI 621.05. Failure to give this standard instruction will result in the jury failing to properly balance any harms from a Defendant's conduct with the benefits of such conduct. Most human activities create some sort of harm or externality. Asking the jury to consider only the extent of the harm is asking the wrong question. The question they must answer is whether the harm is so unreasonable that it properly forms the basis of absolute nuisance liability. *See Kramer v. Angels Path LLC*, 882 N.E.2d 47 at ¶ 20 (under absolute nuisance theory encompasses activities done "without just cause or excuse, the necessary consequence of which" is to interfere with another's rights); *Kubitz v. City of Sandusky*, 200 N.E.2d 322, 324 (Ohio 1964) (plaintiff failed to allege absolute nuisance because complaint did not allege that fence was "unreasonable interference" undertaken "without just cause or excuse"); OJI 621.05 (specifying that conduct must be "unreasonable" after harms are balanced against benefits).

*Third*, Pharmacy Defendants object to the omission of balancing the gravity of the harm against the utility of the conduct as set forth in Ohio's standard jury instructions. Through this omission, the instruction wrongfully focuses only on the harms caused by the alleged conduct. Thus, it does not adequately explain to the jury what sort of actions are "greater harm than the public should bear, given all the circumstances."

As a matter of Ohio law, the jury must make that determination not just in light of the magnitude of the harm, but also in light of the nature and purpose of the Defendant's conduct, its value to the community, the nature, extent, and frequency of the alleged interference with the public right, and whether the interference could be avoided or lessened without undue hardship to the Defendant.  OJI 621.05; RESTATEMENT (SECOND) OF TORTS §§ 822, 826–28.  While these Restatement sections concern private nuisance, the comments in each section make clear that they apply equally to public nuisance as well.  *See, e.g.*, *id.* § 822, cmt. a (subject to explicit statutory exception, "the tort law of public nuisance is consistent with this section"); *id.* § 826, cmt. a ("***Public Nuisance.***  The rule stated in this Section applies to conduct that results in private nuisance . . . .  A similar rule may, and commonly does, apply to conduct that results in public nuisances[.]"); *id.* § 827, cmt. a (same); *id.* § 828, cmt. a (same).

## **Objection 10:  Verdict Form Question 1**

Did [**Lake County/Trumbull County**] prove, by the greater weight of the evidence, that ~~oversupply of legal prescription opioids, and~~ diversion of ~~those~~ legal prescription opioids— dispensed by a Defendant—into the illicit market outside of appropriate medical channels~~,~~ is a public nuisance in [**Lake County/Trumbull County**] today?

***Pharmacy Defendants' Objections*:**

Pharmacy Defendants object to Question 1 because the definition of the alleged nuisance is confusing and potentially misleading.  As the Court's verdict form and instructions recognize, oversupply of legal prescription opioids itself does not interfere with public health and safety, but rather must be paired with a finding that those opioids were diverted into the illicit market.  As the verdict form and instructions are written, however, jurors could easily be confused and believe that they can find a Pharmacy Defendant liable merely because that Defendant was a substantial factor in an "oversupply" of prescription opioids—regardless of any wrongful conduct or any contribution to actual diversion.  To avoid this error, the definition of nuisance should eliminate references to "oversupply" and instead focus on whether each Pharmacy Defendant was the cause of "diversion" in the Track 3 counties.  Moreover, in keeping with the undisputed requirement that Plaintiffs prove that Pharmacy Defendants caused a public nuisance that is ongoing today, Question 1 should make that explicit and not rely on the bare use of the word "is."

### Objection 11:  Verdict Form Question 2

Did [**Lake County/Trumbull County**] prove, by the greater weight of the evidence, that any of the following Defendants engaged in intentional and/or illegal conduct which was a substantial factor in producing the public nuisance that you found exists in Question 1?

***Pharmacy Defendants' Objections***:

Pharmacy Defendants object to combining several elements of the claim into this single question.  These are different elements of proving different kinds of an absolute public nuisance claim, and the Court should separate them out into independent questions on (i) intentional conduct, (ii) illegal conduct, and (iii) causation.

Take the combination of intentional conduct with illegal conduct, for example.  This is not analogous to whether a jury is unanimous about whether it finds an assault based on a blow to the face or a blow to the shoulder.  The Court has proposed different instructions for each of those elements, and there is good reason for doing so.  The jury's finding whether Plaintiffs have proved either or both theories is a question of ultimate fact.  Indeed, this Court could not fashion an appropriate remedy without knowing the nature of the conduct that must be abated.

Nor would including separate questions create any problems or violate any law.  To the contrary, the Court may do so under Federal Rule of Civil Procedure 49.  Including such questions facilitates appellate review of the verdict and judgment and can avoid the need to retry a case due to an error connected to a theory of liability if the answers make clear that the jury did not impose liability on that theory.  Pharmacy Defendants have separate challenges to each one of the theories of public nuisance raised by Plaintiffs.  If only a general verdict were used, without requiring unanimous jury answers on specific theories of liability, then any deficiency in any theory of liability would require a new trial.  *See, e.g.*, *Tire Eng'g & Distribution, LLC v. Shandong*

*Linglong Rubber Co., Ltd.*, 682 F.3d 292, 313 (4th Cir. 2012) ("[W]hen a jury issues a general verdict on multiple theories of liability and one of those theories is overturned on appeal, the entire verdict falls.").  Pharmacy Defendants have no wish to try this case a second time, and specificity in the jury's findings could avoid an unnecessary new trial.

In sum, the Court has broad discretion to pose separate questions to the jury under Rule 49(b) for purposes of avoiding a needless retrial and fashioning a remedy proportionate to the nuisance should the jury find liability.  It should do so here.

Dated:  November 12, 2021                    Respectfully submitted,

                                             */s/ Kaspar J. Stoffelmayr*
                                             Kaspar J. Stoffelmayr
                                             Brian C. Swanson
                                             Katherine M. Swift
                                             Sharon Desh
                                             Sten A. Jernudd
                                             BARTLIT BECK LLP
                                             54 West Hubbard Street
                                             Chicago, IL 60654
                                             Phone: (312) 494-4400
                                             Fax: (312) 494-4400
                                             Email: kaspar.stoffelmayr@bartlitbeck.com
                                             Email: brian.swanson@bartlitbeck.com
                                             Email: kate.swift@bartlitbeck.com
                                             Email: sharon.desh@bartlitbeck.com
                                             Email: sten.jernudd@bartlitbeck.com

                                             Alex J. Harris
                                             BARTLIT BECK LLP
                                             1801 Wewatta Street, 12th Floor
                                             Denver, CO 80202
                                             Phone: (303) 592-3100
                                             Fax: (303) 592-3140
                                             Email: alex.harris@bartlitbeck.com

                                             *Counsel for Defendants Walgreens Boots Alliance,*
                                             *Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*


                                             */s/ Eric R. Delinsky* (consent)
                                             Eric R. Delinsky
                                             Alexandra W. Miller
                                             Graeme W. Bush
                                             Paul B. Hynes, Jr.
                                             ZUCKERMAN SPAEDER LLP
                                             1800 M Street NW, Suite 1000
                                             Washington, DC  20036
                                             Tel: (202) 778-1800
                                             E-mail: edelinsky@zuckerman.com
                                             E-mail: smiller@zuckerman.com
                                             E-mail: gbush@zucerkman.com
                                             E-mail: phynes@zuckerman.com

                                             *Counsel for CVS Pharmacy, Inc., Ohio*

*CVS Stores, L.L.C., CVS TN Distribution,*
*L.L.C., CVS Rx Services, Inc., and CVS*
*Indiana, L.L.C.*

/s/  John M. Majoras (consent)
John M. Majoras
Benjamin C. Mizer
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com
E-mail: bmizer@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*