UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>  *County of Lake, Ohio v. Purdue Pharma L.P., et al.*,<br>    Case No. 18-op-45032 (N.D. Ohio)<br><br>  *County of Trumbull, Ohio v. Purdue Pharma, L.P., et al.*,<br>    Case No. 18-op-45079 (N.D. Ohio)<br><br>"Track 3 Cases" | MDL No. 2804<br>Case No. 17-md-2804<br>Judge Dan Aaron Polster |

### DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants file this notice of supplemental authority to alert the Court to two recent decisions in related opioid litigation that support granting Defendants' pending Rule 50 motions: (1) *Oklahoma v. Johnson & Johnson*, No. 118,474 (Okla. Nov. 9, 2021) (Exs. A and B), and (2) *State v. Purdue Pharma L.P.*, No. 30-2014-00725287 (Cal. Super. Ct. Orange Cnty. Nov. 1, 2021) (Ex. C).

In *Oklahoma v. Johnson & Johnson*, the Oklahoma Supreme Court ruled that opioid manufacturers cannot be found liable for the public health effects of opioid abuse based on a public nuisance theory. The State's court of last resort reversed a $465 million bench trial verdict against Johnson & Johnson, finding the State's public nuisance theory of liability "fundamentally ill-suited to resolve" claims centering on Johnson & Johnson's manufacture and sale of opioids. Ex. A at 15.

The Oklahoma Supreme Court made clear that nuisance is not the appropriate vehicle through which to prosecute claims that are, at heart, products-liability claims.  The court highlighted a "clear national trend" against "products-based public nuisance claims" with courts consistently honoring the "common law criminal and property-based limitations" of public nuisance.  *Id.* at 24, 27.  Without such limitations, "businesses have no way to know whether they might face nuisance liability for manufacturing, marketing, or selling products."  *Id.* at 27.  For example, the fast food industry could not know whether it might be held liable for obesity, an alcohol manufacturer for psychological harms, or a car manufacturer for lung disease.  *Id.*  Indeed, extending public nuisance to the opioid crisis would "allow consumers to convert almost every products liability action into a public nuisance claim."  *Id.* at 24 (citation and alteration omitted).

The court reasoned that allowing public nuisance to address such "policy problems" rather than "discrete, localized problems" would leave Oklahoma's nuisance statute "impermissibly vague" and allow "courts to manage public policy matters that should be dealt with by the legislative and executive branches."  *Id.* at 28.  Stressing that those branches are "more capable than courts to balance the competing interests at play in societal problems," the court rejected the "unprecedented expansion of public nuisance law" that the State's theory of liability required.  *Id*.  Justice Kuehn wrote a separate concurrence to underscore that reimagining public nuisance law to address the opioid epidemic will cause it to "become the newest fictional shape-shifting monster" and allow "courts, not the Legislature, to dictate public policy."  Ex. B at 3.

The court also rejected the State's novel use of nuisance law on the ground the State sought to vindicate a private right, rather than a public right.  Observing that "a public right is

more than an aggregate of private rights by a large number of injured people," the court found that the "damages the State seeks are not for a communal injury but are instead more in line with a private tort action for individual injuries sustained from use of a lawful product and in providing medical treatment or preventative treatment to certain, though numerous, individuals." Ex. A at 16–17.  The case was unlike those involving pollution, sewage, or disease because it involved "lawful products" with "a beneficial use in treating pain." *Id.* at 17.  Absent any violation of a public right, claims regarding the effects of opioids are appropriately viewed through the lens of products liability—with all the attendant limitations developed over decades of statutory and case law to prevent manufacturers and sellers of legal products from becoming de facto insurers to individuals who use those products.

The court likewise refused to expand nuisance law to hold Johnson & Johnson "responsible for the harms caused by opioids that it never manufactured, marketed, or sold," noting that the evidence at trial "demonstrated that J&J sold only 3% of all prescription opioids statewide" but "the district court held J&J responsible for those alleged losses caused by other pharmaceutical companies' opioids." *Id.* at 22.

Finally, the court recognized that Johnson & Johnson "did not control the instrumentality alleged to constitute the nuisance at the time it occurred," *id*. at 19, and could not control "how individual patients used its product or how a patient responded to its product, regardless of any warning or instruction given," *id*. at 21.  In part for that reason, the court held that Johnson & Johnson could not be required to "abate the alleged nuisance"; "opioid use and addiction[] would not cease to exist" even if Johnson & Johnson paid for the State's abatement plan. *Id.* at 22.  The district court's abatement plan—"multiple governmental programs for medical treatment and preventive services for opioid abuse, investigatory and regulatory activities, and prosecutions"—

3

involved "activities over which J&J has no control." *Id.* at 23. The court noted that "over the past 100 years in deciding nuisance cases, [it] has never allowed the State to collect a cash payment from a defendant that the district court line-item apportioned to address social, health, and criminal issues arising from conduct alleged to be a nuisance." *Id.* It would not do so in the novel opioid context.

The Oklahoma Supreme Court's reasoning has direct application to this action and Defendants' Rule 50 motion for judgment as a matter of law. *See* Dkt. 4098 (raising legal infirmities in Plaintiffs' nuisance cause of action). Plaintiffs, like the State of Oklahoma, seek an unprecedented expansion of nuisance law that threatens to swallow products-liability tort law whole. *Id.* at 22–23, 27–28. Their claims, again like Oklahoma's, are premised on private injuries caused by misuse of opioids, not a communal injury or invasion of a public right. *Id.* at 23–24. Plaintiffs seek to hold Defendants responsible for the entire opioid crisis in their communities, even though each Defendant accounts for only a fraction of the prescription opioids dispensed in the two counties. *Id.* at 15. And, like Oklahoma, Plaintiffs seek to hold Defendants liable for the effects caused by abuse of products that were no longer in Defendants' control at the time of the harm, *id.* at 25–26—harms that Defendants cannot abate, *id.* at 38–40 & n.6.

The decision is particularly significant given this Court's ruling upholding a nuisance cause of action under Oklahoma law in the *Muscogee (Creek) Nation v. Purdue Pharma L.P.* matter. In the *Muscogee* case, the Report and Recommendation, as adopted by the Court, *see* Dkt. 1680 (adopting in relevant part Dkt. 1499), incorrectly predicted the Oklahoma Supreme Court's ruling on each of these key arguments. *See In re Nat'l Prescription Opioid Litig.*, No. 17-md-02804, 2019 WL 2468267, at *29 (N.D. Ohio Apr. 1, 2019) (rejecting the products-

4

liability limitation to Oklahoma nuisance law); *id.* (rejecting requirement that defendant have control of the nuisance); *id.* at *30 (rejecting limitation to what constitutes "public right" under Oklahoma law).  The Court, moreover, expressly acknowledged that "the claims presented by Plaintiffs and the arguments brought by Defendants" in that case have "many similarities" to the Ohio nuisance claim at issue in the Track 1 and Track 3 cases. Dkt. 1680 at 2.  As in the *Muscogee* case, the Court's prior rulings in the Track 1 and Track 3 cases stretch Ohio nuisance law too far.  Ohio nuisance law, no less than Oklahoma law, finds its common-law foundation in land and property use, requires invasion of a public right, not a private right, and requires the defendant to control the instrumentality alleged to have caused the nuisance at the time of the nuisance.  The Court should grant judgment as a matter of law to Defendants or, at minimum, certify the important questions raised in Defendants' Rule 50 motion to the Ohio Supreme Court, lest more resources be expended on a fundamentally flawed cause of action.

Indeed, the Oklahoma Supreme Court's rulings are not outliers.  A trial court presiding over nuisance litigation in California reached similar conclusions in a second recent case, casting even further doubt on the underlying legal analysis leading to the Track 3 trial.  In the California litigation, four political subdivision plaintiffs argued that manufacturers of opioid medications engaged in a misleading marketing scheme designed to increase prescriptions for their medications, which, as a result, caused or contributed to the opioid crisis in California.  Ex. C at 3.  The plaintiffs brought claims for public nuisance, false advertising, and unlawful business practices, all under California law.  *Id.* at 4–6.  After a bench trial, the court entered judgment for the defendants on all claims.  *Id.* at 41.

The central flaw in those plaintiffs' case was their failure to "distinguish between medically appropriate and medically inappropriate prescriptions."  *Id.* at 14.  Like Plaintiffs here,

5

the California plaintiffs argued that they "need only prove that the number … of prescriptions increased, without distinguishing between medically appropriate and medically inappropriate prescriptions." *Id.* The court forcefully rejected that approach: "[T]he Federal government and the California Legislature have already determined … the social utility of medically appropriate prescriptions outweighs the gravity of the harm inflicted by them and so is not 'unreasonable' or therefore, enjoinable." *Id.* For that reason, "even if any of the marketing which caused an increase in the number, dose, or duration of opioid prescriptions *did* include false or misleading marketing, any adverse downstream consequences flowing from *medically appropriate* prescriptions cannot constitute an actionable public nuisance." *Id.*

The court conceded that the opioid crisis is "without question *substantial.*" *Id.* at 17. "But with no evidence to demonstrate or suggest that the increased prescriptions were not medically appropriate, and with no evidence that even attempts to quantify how medically inappropriate prescriptions caused or contributed to the opioid crisis," the plaintiff jurisdictions had failed to prove that the defendants' conduct was "*unreasonable.*" *Id.*

Finally, the fact that opioid medications may lead to "foreseeable adverse downstream consequences" was irrelevant. *Id.* "The FDA knew about the risks of opioids; that is precisely why the FDA designated opioids as Schedule II drugs." *Id.* at 15. The FDA "continues to approve these drugs for use where medically appropriate." *Id.* at 15–16. And when there were requests for the FDA to impose dose or duration limits at the height of the crisis, "the FDA declined to do so, leaving such decisions instead to the healthcare practitioner in consultation with his or her patient." *Id.* at 16. The court refused to second-guess that policy judgment as a matter of California nuisance law.

6

The California court's logic is directly relevant to Plaintiffs' public nuisance claims. Dispensing conduct permitted by the CSA cannot be "unreasonable" as a matter of Ohio public nuisance law, Dkt. 4098 at 21, which defeats Plaintiffs' claim because they have not identified even a single pill that left any of Defendants' pharmacies improperly, *id.* at 23—much less adduced any evidence "that even attempts to quantify how [any such] medically inappropriate prescriptions caused or contributed to the opioid crisis" in either county, Ex. C at 17. Like the California plaintiffs, Plaintiffs here have offered no evidence of what portion of the alleged "oversupply" of opioids was not prescribed for legitimate medical use. *See id.*

These recent decisions from Oklahoma and California rest on long-standing and widely adopted principles of common law that apply with equal force in Ohio.[1] They further support Defendants' Rule 50 motions.

---

[1] These recent decisions in Oklahoma and California also build on other decisions rejecting public nuisance claims in the opioid litigation, including courts in Connecticut, Delaware, Illinois, North Dakota, and South Dakota. *See State ex rel. Ravnsborg v. Purdue Pharma, L.P.*, No. 32CIV18-000065 (S.D. Cir. Ct. 6th Jud. Dist. Mar 29, 2021); *State v. Johnson & Johnson*, No. 19 CH 10481 (Ill. Cir. Ct. Cook Cnty. Jan. 8, 2021); *State ex rel. Stenehjem v. Purdue Pharma L.P.*, No. 08-2018-CV-01300, 2019 WL 2245743 (N.D. Dist. Ct. May 10, 2019) (judgment entered May 24, 2019); *State ex rel. Jennings v. Purdue Pharma L.P.*, No. N18C-01-223, 2019 WL 446382 (Del. Super. Ct. Feb. 4, 2019); *City of New Haven v. Purdue Pharma, L.P.*, No. X07HHDCV176086134S, 2019 WL 423990 (Conn. Super. Ct. Jan. 8, 2019).

Dated:  November 15, 2021     Respectfully submitted,

/s/  John M. Majoras
John M. Majoras
Benjamin C. Mizer
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com
E-mail: bmizer@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
Graeme W. Bush
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: gbush@zucerkman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*


/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
sharon.desh@bartlitbeck.com
sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*

## CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system on all counsel of record on November 15, 2021.

      /s/ John M. Majoras
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

*Counsel for Walmart Inc.*